

DELPHI AUTOMOTIVE SYSTEMS

GENERAL TERMS AND CONDITIONS

> *Delphi Automotive Systems seeks to exceed its customers' expectations. Delphi's suppliers are integral to achieving this objective, and Delphi hopes that its suppliers will recognize Delphi as their preferred customer. Delphi will establish high performance expectations for itself and its suppliers, measure performance and reward superior performance.*

## 1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). Seller acknowledges and agrees that it has read and understands these General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and these General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

## 2. SHIPPING AND BILLING

2.1 <u>Shipping.</u>   Seller will (a) properly pack, mark and, ship goods as instructed by Buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) provide packing slips with each shipment that identify Buyer's contract and/or release number and the date of the shipment, and (d) promptly forward the original bill of lading or other shipping receipt with respect to each shipment as Buyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires. The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods. Seller's pickup/delivery order form, a true and correct copy of which has been provided to Buyer, meets Buyer's requirement for packing slips and or bills of lading for pickup and/ or delivery of Buyer's Deposits (as defined herein). Seller shall not modify its pickup/delivery order form without Buyer's written approval, which approval shall not be unreasonably withheld.

2.2 <u>Billing.</u>  Seller will (a) accept payment based upon Buyer's Evaluated Receipt Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer. If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the Multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services. Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the absence of any liens, encumbrances and claims on such goods or services.

2.3 <u>Delivery Schedules</u>. Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract. Time is of the essence with respect to all delivery schedules Buyer establishes. Buyer will not be required to pay for any goods that exceed the quantities specified in Buyer's delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyer's delivery schedules. Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyer's delivery schedules. If Buyer determines that the requirements of Buyer's customers or market, economic or other conditions require changes in delivery schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other modification of this Contract.

2.4 <u>Premium Shipments</u>. If Seller fails to have goods ready for shipment in time to meet Buyer's delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyer's actions caused Seller to fail to meet Buyer's delivery schedules, in which case Buyer will pay any costs for premium shipment. The foregoing shall not apply to "rush" orders requested by the Buyer.

## 3. SPECIFICATION, DESIGN AND SCOPE CHANGES

Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes. Buyer and Seller will equitably determine any adjustment in price or delivery schedules resulting from such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes in Seller's cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

## 4. QUALITY AND INSPECTION

Seller will participate in Buyer's supplier quality and development program(s) upon having the opportunity to review and accept such program(s), which acceptance shall not be unreasonably withheld. Seller will comply with all quality requirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its representatives and consultants to (i) upon forty-eight (48) hours notice, inspect Seller's applicable books and records in order to monitor Seller's compliance with this Contract and (ii) upon twenty-four (24) hours notice, enter Seller's facilities at reasonable times to inspect such facilities and any goods, materials and property that relate to this Contract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

## 5. NON-CONFORMING GOODS

Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections. Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyer's rejection of non-conforming goods

- 2 -

(or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to arrange for the shipment of any non-conforming goods back to Seller at Seller's expense. Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods. Buyer's payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyer's right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

## 6. FORCE MAJEURE

If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such party's fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided, however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without liability. Before any of Seller's labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Seller's facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

## 7. WARRANTY

Seller warrants and guarantees to Buyer, its successors, assigns and customers that the services covered by this Contract will (a) conform to all applicable specifications, descriptions, brochures and manuals furnished by Seller or Buyer and (b) be fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer.

## 8. INGREDIENTS AND HAZARDOUS MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

Buyer shall not store with Seller any material that is highly flammable, explosive or toxic or otherwise dangerous or unsafe to store or handle, or any material which is regulated under any federal or state law or regulation relating to the environment or hazardous materials. For avoidance of doubt, the parties agree that for the purposes of this Agreement paper and paper products are not considered highly flammable, explosive or toxic. Buyer shall not store with Seller negotiable instruments, jewelry or check stock. Buyer shall use reasonable efforts to ensure Buyer's premises where Seller's employees perform services or make deliveries hereunder are free of hazardous substances and any other hazardous or dangerous conditions.

- 3 -

## 9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

## 10. TERMINATION FOR BREACH

Buyer may terminate all or any part of this Contract, without liability to Seller (other than payment of any undisputed invoices for products or services supplied hereunder prior to the termination) at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Seller's warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract; or (c) fails to assure timely and proper completion of services or delivery of goods.

## 11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing and paying all account closing fees specified in Schedule A attached hereto. Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the account closing fees specified in Schedule A attached hereto. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

## 12. TECHNICAL INFORMATION

12.1    Exchange of Information.  Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyer's drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2    Waiver of Claims.  Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyer's customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may hereafter disclose in connection with the goods or services covered by this Contract.

12.3    Repair and Rebuild.  Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyer's customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4    Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, micro code, source code and data structures), and

- 4 -

all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing this Contract (separately or as part of any goods and components) are "works made for hire" and the sole property of Buyer. To the extent that such works of authorship do not qualify under applicable law as works made for hire, Seller agrees to assign and assigns to Buyer all right, title and interest in any intellectual property rights in such works of authorship.

## 13. INDEMNIFICATION

13.1  Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that any such infringement arose out of compliance with Buyer's specifications.

13.2  Activities on Buyer's Premises. Seller will hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyer's or Buyer's customer's premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyer's customer.

13.3  Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyer's specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than Seller.

## 14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyer's request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from or relating to Seller's noncompliance with this Article.

## 15. INSURANCE

Seller shall obtain and maintain consistent with the provisions of this Contract, at its sole expense, the following types of insurance coverages, to remain in force during the term of this Contract, with minimum limits as set forth below:

Uncontrolled Copy

- 5 -

A. Commercial General Liability covering liability arising from premises, operations, independent contractors, products-completed operations, personal and advertising injury, and blanket contractual liability – US$5,000,000 each occurrence;

B. Business Automobile Liability covering all owned, hired, and non-owned vehicles – US$1,000,000 each occurrence, including all applicable statutory coverages;

C. Workers Compensation – statutory limits for all states of operation (U.S. only);

D. Employers Liability – US$1,000,000 each employee for bodily injury by accident and – US$1,000,000 each employee for bodily injury by disease;

E. Blanket Crime coverage including employee dishonesty for acts against or involving Buyer property – US$1,000,000 per occurrence.

All policies of insurance procured by Seller herein shall be written as primary policies; not contributing with or in excess of coverage that Buyer may carry. If Seller's liability policies do not contain the standard separation of insureds provision, or a substantially similar clause, they shall be endorsed to provide cross-liability coverage. Seller shall agree to waive their insurer's right of subrogation under its policies. Buyer shall be an additional insured under Seller's insurance policy (except Worker's Compensation and Employer's Liability), and at Buyer's request, Seller shall provide Buyer with a certificate of insurance evidencing compliance with the limits, insurance requirements and waiver of subrogation set forth above. Such certificate shall be in a form acceptable to, and underwritten by an insurance company reasonably satisfactory to Buyer and with an A.M. Best Company rating of B+ or above. By requiring insurance herein, Buyer does not represent that coverage and limits will necessarily be adequate to protect Seller. The purchase of appropriate insurance coverage by Seller or the furnishing of a certificate of insurance shall not release Seller from its respective obligations or liabilities under this Agreement.

## 16. SELLER'S EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, and other accessories, required for the production of the products covered by this Contract ("Seller's Equipment"). Seller will insure Seller's Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Seller's Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Seller's Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Seller's Equipment. This option will not apply to the extent that Seller's Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Buyer's right to exercise this option is not conditioned on Seller's breach or Buyer's termination of this Contract or upon payment of any other amounts due under this Contract.

## 17. BUYER'S PROPERTY

17.1  Bailment of Property.  All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part ("Buyer's Property"), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyer's Property (such as tooling), Seller will purchase and pay for such Buyer's Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyer's Property (such as tooling) without separate or additional payment or reimbursement by Seller, Seller acknowledges and agrees that Buyer's issuance of this Contract is good and sufficient consideration for such Buyer's Property and that title to such Buyer's Property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyer's Property. Seller shall also execute (i) any bills of sale or other documents of

Uncontrolled Copy

conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyer's Property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyer's ownership of Buyer's Property.   Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment to or incorporation into Buyer's Property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyer's Property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyer's Property.   When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyer's Property for work performed on such property or otherwise.   Goods manufactured based on Buyer's drawings and/or specifications may not be used for Seller's own use or sold to third parties without Buyer's express written authorization.

17.2   <u>Seller's Duties with Respect to Buyer's Property</u>. Within the limits set forth hereunder in Section 34, while Buyer's Property is in Seller's possession and until Seller delivers Buyer's Property back to Buyer, Seller bears the risk of loss and damage to Buyer's Property.   Seller will at all times: (a) perform all records management and storage services specified in Schedule A in accordance with the highest professional and industry standards and in full accordance with the standards specified in Schedule A, (b) use Buyer's Property only for the performance of this Contract, (c) deem Buyer's Property to be personal property, (d) not move Buyer's Property from Seller's premises without Buyer's written approval, and (e) use Buyer's Property in compliance with Buyer's or the manufacturer's instructions and in compliance with all federal, state and local laws, ordinances and regulations.   Upon twenty-four (24) hours notice, Buyer will have the right to enter Seller's premises at all reasonable times to inspect Buyer's Property and Seller's records with respect thereto.

17.3   <u>Disclaimer of Warranties</u>.   Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyer's Property nor the manufacturer's agent nor a dealer therein, (ii) Buyer is bailing Buyer's Property to Seller for Seller's benefit, (iii) Seller is satisfied that Buyer's Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYER'S PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.   Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyer's Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits or any other indirect, special or consequential damages.

17.4   <u>Development, Engineering And Consulting Services</u>.   Engineering, consulting or development services ("Development Services") funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property ("IP") shall be the sole property of Buyer.   Seller agrees to assign all right, title and interest in and to IP that results from Development Services ("Developed IP") to Buyer.   Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

## 18.   SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyer's service and replacement parts requirements to Buyer's customers at the then current production price(s) under this Contract.   If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyer's and its

customers' service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the "Post-Production Period"), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyer's service activities.

## 19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

## 20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licensees or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

## 21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, Buyer may (i) setoff such obligations against any sums owing to Seller or Seller's affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Seller's affiliates by Buyer or Buyer's affiliates.

## 22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials unless Buyer consents in writing.

## 23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Seller's obligations under this Contract.

## 24. ASSIGNMENT

Each party may assign its rights and obligations under this Contract to any of its subsidiaries or affiliates, or to any successor to any or all of its business.

## 25. RELATIONSHIP OF PARTIES

Uncontrolled Copy

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

## 26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

## 27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Contract will remain in full force and effect.

## 28. RIGHT TO AUDIT AND INSPECT

Upon twenty-four (24) hours notice, Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Seller's administrative and accounting policies, guidelines, practices and procedures, in order to substantiate the performance of services as invoiced under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Buyer has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Seller's performance of this Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

## 29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of Buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyer's claims, rights, or remedies.

## 30. AUTHORIZATION; BUYER INSTRUCTIONS

Buyer's documents, records and other assets stored at Seller's facilities pursuant to this Agreement ("Deposits") may be delivered pursuant to direction of Buyer's agent(s) identified pursuant to standards agreed upon in writing by Seller and Buyer. Authority granted to any persons on standard authorization forms shall

constitute Buyer's representation that the identified persons have full authority to order any service for, or disposal or removal of, Buyer's Deposits. Such orders must be given in writing (fax, electronically or hard-copy), unless otherwise advised by Delphi in writing. Deliveries of Deposits to Buyer at Buyer's request must be made by Seller only to Delphi employees or representatives at Delphi facilities and Seller must obtain the signature of the recipient on the delivery receipt and retain such receipt as evidence of the delivery. All Destruction and Permanent Withdrawal orders must be made in writing to Seller, and Seller shall comply with all agreed upon standards in response to such orders.

## 31. OPERATIONAL PROCEDURES

Buyer shall comply with Seller's reasonable operational requirements for Seller's facilities, as modified from time to time, regarding containers, delivery/pick-up volumes, security, access and similar matters. Overtime rates shall only be charged to Buyer upon prior notice and agreement of Buyer.

## 32. GOVERNMENTAL ORDERS

Seller will immediately notify Buyer should any third party (including, but not limited to, any governmental agency or private litigant) attempt to obtain Buyer's Deposits or copies of Buyer's Deposits by way of subpoena or other legal process and under no circumstances will Seller comply with any subpoena or other legal process without first notifying Buyer and allowing Buyer an opportunity to intervene unless such notification is prohibited by law or impossible (e.g., Seller is served with a valid search warrant). Seller will cooperate with Buyer in any effort by Buyer to quash or limit any subpoena or other process which may be received by Seller with respect to Buyer's Deposits, and Buyer will reimburse Seller with respect to any reasonable expenses incurred by Seller in connection with such cooperation.

## 33. CONFIDENTIAL INFORMATION

"Confidential Information" means any information concerning or relating to the property, business and affairs of Buyer that is furnished to Seller, except for information that was previously known to Seller free of any obligation to keep it confidential, is subsequently made public by Buyer or is disclosed by a third party having a legal right to make such disclosure. Confidential Information shall be held in confidence by Seller and shall be used only in the manner contemplated by this Agreement. Seller recognizes that Buyer's Property contained in boxes or other containers could be confidential, proprietary or privileged and Seller shall not open such boxes or containers or otherwise view any of Buyer's Property contained therein without written approval of Buyer.

## 34. LIABILITY IN EVENT OF LOSS OR DAMAGE TO STORED MATERIAL/VALUE OF DEPOSITS

Seller shall not be liable for any and all loss or destruction of, or damage to, Deposits, however caused, except to the extent such loss or damage resulted from the failure by Seller to exercise such care a reasonably careful person would exercise under like circumstances. If liable, the amount of Seller's damages is limited as provided herein. Deposits are not insured by Seller against loss or damage, however caused. Buyer may insure Deposits through third party insurers for any amount, including amounts in excess of the limitation of liability. If Deposits are placed in the custody of a common carrier for transportation, the common carrier shall be solely responsible for any loss or destruction of, or damage to, such Deposits while in the custody of the common carrier. Seller's liability, if any, for any and all loss or destruction of, or damage to, Deposits, shall be limited to $1.00 per carton, linear foot of open shelf files, container, disk pack or other deposit item.

## 35. NEGLIGENCE OR WILLFUL MISCONDUCT

Seller hereby agrees to indemnify Buyer for any actual damages arising out of Sellers negligence or willful misconduct.

Uncontrolled Copy

## 36. NOTICE OF LOSS

When Deposits have been lost, damaged or destroyed, notice thereof shall be given by Seller by mailing a certified letter (return receipt requested) to Buyer.

## 37. OWNERSHIP WARRANTY

Buyer warrants that it is the owner or legal custodian of the Deposits and has full authority to store the Deposits and direct their disposition in accordance with the terms of this Agreement. Buyer shall reimburse Seller for any expenses reasonably incurred by Seller (including reasonable legal fees) by reason of Seller's compliance with the instruction of Buyer in the event of a dispute concerning the ownership, custody or disposition of Deposits stored by Buyer with Seller.

## 38. SOFTWARE LICENSE

If access to or use of Seller inventory management software and computer programs (the "Software") is provided hereunder as set forth in a schedule, Seller hereby grants Buyer a limited, nonexclusive license to use the Software solely in conjunction with records storage services provided by Seller during the term of this Agreement, Buyer acknowledges that all Software and the inventory management system comprised of the Software belong to Seller. During the term of this Agreement, Seller shall have the right to use Deposit inventory information to provide records management services to Buyer; upon expiration of the Agreement, Seller shall have the right to maintain inventory information for record keeping purposes.

## 39. MODIFICATION TO ADD BUYER LOCATIONS, SERVICE

In the event that Buyer locations or lines of service are added to or deleted from the Agreement, the term of this Agreement shall not change unless the parties so agree.

## 40. PERFORMANCE OF SERVICES BY SUBSIDIARIES

Certain lines of service may be performed by a subsidiary of Seller other than the entity identified as the contracting party at the head of this Agreement. In such event, such other subsidiary will perform such service in accordance with the terms of this Agreement as a subcontractor to the Seller contracting entity. The subcontracting entity may invoice Buyer directly, but the original Seller contracting entity will remain liable for all services performed for Buyer.

## 42. MISCELLANEOUS

Notices to Seller shall be sent to the attention of its General Manager at such address.

BUYER NAME: M GERDY
BUYER CODE: DWO4
VENDOR : IRON MOUNTAIN INC

DELPHI CORPORATION                                    PAGE    2
BLANKET ORDER ALTERATION ATTACHMENT FORM
ALTERATION NUMBER DWB00380 001 ISSUE DATE 02/25/03

| ITEM VENDOR ITEM | NOUN NAME | DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE PRICE BUY |
| SEQ PERCENT IDENTIFICATION | | | | MULTI U/M |
| --- | --- | --- | --- | --- |

FOR SERVICES PERFORMED UNDER THIS PURCHASE ORDER THE
INVOICE MUST BE MAILED TO THE REQUESTOR WHOSE NAME
APPEARS UNDER THE DISCRIPTION OF THE SERVICES BELOW.
INVOICES MAILED TO THE BUYER WILL BE RETURNED TO THE
SUPPLIER.
*********************************************

*********SALES AND USE TAX EXEMPTION***********
DO NOT BILL SALES OR USE TAX ON ITEMS DELIVERED TO
ALL SHIPPED TO LOCATIONS WITHIN THE STATES LISTED
BELOW. DELPHI AUTOMOTIVE SYSTEMS, LLC ("DELPHI")
HOLDS DIRECT PAY AUTHORITY WITH THESE STATES. AS A
RESULT, IN ALL OF THE IDENTIFIED STATES DELPHI WILL
REMIT DIRECTLY TO TAXING AUTHORITIES ALL SALES OR
USE TAX LIABILITY RELATED TO ITS PURCHASE AND USE OF
TANGIBLE PERSONAL PROPERTY AND SERVICES. THEREFORE,
EFFECTIVE IMMEDIATELY, THIS TAX CLAUSE SUPERSEDES
ALL TAX CODE INFORMATION FOUND ON THIS ORDER EXCEPT
FOR THOSE STATES NOT IDENTIFIED BELOW. FOR THOSE
STATES NOT IDENTIFIED BELOW, PLEASE CONTINUE TO
FOLLOW THE SPECIFIC TAX CODE INSTRUCTIONS FOUND ON
THIS ORDER. LISTED BELOW ARE DIRECT PAY PERMIT OR
SALES TAX LICENSE NUMBERS FOR THE ELEVEN (11) STATES,
OR DELPHI LOCATIONS WITHIN A STATE, WHERE DELPHI
HOLDS DIRECT PAY AUTHORITY.

ALABAMA        805          NEW JERSEY  383-431-131/000
GEORGIA        300-45870-8  NEW YORK    DP-3487
INDIANA        118170213001 OHIO        98-002667
KANSAS         98-0003A     TEXAS       1-38-3431131-1
MICHIGAN       38-3431131   WISC.       WDP-99-01-010037
MISSISSIPPI    4375

FURTHER, IF THIS ORDER RELATES TO THE CONSTRUCTION
CONTRACT FOR REAL PROPERTY, ALL APPLICABLE SALES AND
USE TAXES ARE THE RESPONSIBILITY OF THE CONTRACTOR,
AND SHOULD BE INCLUDED IN THE CONTRACTOR'S BID AS
REQUIRED PURSUANT TO SECTION 7 OF THE DELPHI 1638
(12/95 REV 1) "CONSTRUCTION GENERAL CONDITIONS."
UNLESS THE RESPONSIBILITY FOR PAYMENT OF SALES & USE
TAXES ARE OTHERWISE SPECIFICALLY OUTLINED IN THE
CONTRACT.

ANY QUESTIONS ON THE ABOVE SHOULD BE DIRECTED TO:

CONTINUE PAGE    3

M000000  USER: MARC GERDY

DELPHI CORPORATION
BLANKET ORDER ALTERATION ATTACHMENT FORM
ALTERATION NUMBER DWBOO3BO 001 ISSUE DATE 02/25/03

PAGE 3

BUYER NAME: M GERDY
BUYER CODE: DW04
VENDOR : IRON MOUNTAIN INC

| ITEM VENDOR ITEM SEQ PERCENT IDENTIFICATION | NOUN NAME   DESCRIPTION   RFQ NUMBER | BASE UNIT PRICE PRICE BUY MULT U/M |
| --- | --- | --- |

DELPHI DISBUSEMENTS-CUSTOMER CENTER
PHONE: (248) 874-4636

THE PAYMENT DATE SHALL BE THE DATE ESTABLISHED
BY BUYER'S MULTILATERAL NETTING SYSTEM (MNS-2).
OR WHICH PROVIDES ON AVERAGE, THAT PAYMENT SHALL
BE ISSUED ON THE SECOND DAY OF THE SECOND MONTH
FOLLOWING RECEIPT OF GOODS OR SERVICES.

SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL
TERMS AND CONDITIONS ARE
INCORPORATED IN, AND A PART OF, THIS CONTRACT AND
EACH PURCHASE ORDER.
RELEASE, REQUISITION, WORK ORDER, SHIPPING
INSTRUCTION, SPECIFICATION AND
OTHER DOCUMENT ISSUED BY BUYER OR ACCEPTED IN WRITING
BY BUYER, WHETHER
EXPRESSED IN WRITTEN FORM OR BY ELECTRONIC DATA
INTERCHANGE, RELATING TO THE
GOODS AND/OR SERVICES TO BE PROVIDED BY SELLER
PURSUANT TO THIS CONTRACT
(SUCH DOCUMENTS ARE COLLECTIVELY REFERRED TO AS THIS
"CONTRACT"). A COPY OF
BUYER'S GENERAL TERMS AND CONDITIONS IS AVAILABLE
UPON WRITTEN REQUEST TO
BUYER OR VIA THE INTERNET AT DELPHI'S WEBSITE,
DELPHIAUTO.COM. SELLER
ACKNOWLEDGES AND AGREES THAT IT HAS READ AND
UNDERSTANDS BUYER'S GENERAL
TERMS AND CONDITIONS. IF SELLER ACCEPT THIS CONTRACT
IN WRITING OR
COMMENCES ANY OF THE WORK OR SERVICES WHICH ARE THE
SUBJECT OF THIS
CONTRACT, SELLER WILL BE DEEMED TO HAVE ACCEPTED
THIS CONTRACT AND BUYER'S
GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY
WITHOUT MODIFICATION. ANY
ADDITIONS, CHANGES IN, MODIFICATIONS OF, OR
REVISIONS OF THIS CONTRACT
(INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS)
WHICH SELLER PROPOSES WILL

CONTINUE PAGE 4

MOOOOOO USER: MARC GERDY

BUYER NAME: M GERDY
BUYER CODE: DW04
VENDOR : IRON MOUNTAIN INC

DELPHI CORPORATION
BLANKET ORDER ALTERATION ATTACHMENT FORM
ALTERATION NUMBER DWBOO380 OO1 ISSUE DATE 02/25/03

PAGE    4

| ITEM SEQ | VENDOR PERCENT | ITEM IDENTIFICATION | NOUN NAME | DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE | BUY MULT U/M |
|---|---|---|---|---|---|---|---|

BE DEEMED TO BE REJECTED BY BUYER EXCEPT TO THE
EXTENT THAT BUYER EXPRESSLY
AGREES TO ACCEPT ANY SUCH PROPOSALS IN WRITING.

VERBAL COMMITMENTS TO SUPPLIERS, MADE BY OTHER THAN
AUTHORIZED AGENTS, COULD EXPOSE DELPHI TO BUSINESS
RISKS THAT ARE NOT ACCEPTABLE. IT IS APPROPRIATE,
THEREFORE, TO REMIND YOU THAT THE SOLE AGENT FOR
SUPPLIER COMMITMENTS IS THE PURCHASING DEPARTMENT.

***** RIGHT TO AUDIT *****
BY ACCEPTANCE OF THIS PURCHASE ORDER THE SELLER
GRANTS TO DELPHI AUTOMOTIVE ACCESS TO ALL PERTINENT
LEDGERS, PAYROLL DATA, BOOKS, RECORDS, CORRESPONDENCE
WRITTEN INSTRUCTIONS, DRAWINGS, RECEIPTS,
VOUCHERS AND OTHER DOCUMENTS FOR THE PURPOSE OF
AUDITING THE CHARGES AND/OR ALL ALLOCATIONS
RELATED TO THIS PURCHASE ORDER. SELLER FURTHER
AGREES, FOR THIS PURPOSE, TO PRESERVE ALL THE
ABOVE ENUMERATED DOCUMENTS FOR A PERIOD OF ONE
YEAR BEYOND FINAL PAYMENT HEREUNDER.

SUPPLIER AGREES TO A CHARGE OF 1.00% PER WEEK
FOR EACH WEEK THE SUPPLIER IS LATE FOR THE
AGREED UPON DELIVERY DATE. ADDITIONAL CHARGES
INCURRED BY THE SUPPLIER TO ACHIEVE AGREED UPON
DELIVERY DATE ARE THE SUPPLIERS RESPONSIBILITY
AND WILL NOT BE REIMBURSED BY DELPHI.

LAST PAGE

MOOOOOO    USER: MARC GERDY

PAGE    2

DELPHI CORPORATION
BLANKET ORDER ALTERATION ATTACHMENT FORM
ALTERATION NUMBER DWBOO3BO O03 ISSUE DATE O5/05/03

BUYER NAME: M  GERDY
BUYER CODE: DWO4
VENDOR  : IRON MOUNTAIN INC

| ITEM  VENDOR ITEM | NOUN NAME    DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE PRICE BUY |
| --- | --- | --- | --- |
| SEQ PERCENT IDENTIFICATION | | | MULT U/M |

SERVICES FROM OTHERS, IN BUYERS SOLE DISCRETION.

DELPHI'S GENERAL TERMS AND CONDITIONS AS AMMENDED BY
BUYER AND SUPPLIER (ATTACHED HERTO AS EXHIBIT A)
AND SCHEDULE A HAVE BEEN ADDED AS PART OF THIS
BLANKET AND SUPERSEDE DELPHI'S GENERAL TERMS AND
CONDITIONS. REFERENCES TO BUYERS GENERAL TERMS AND
CONDITIONS HERIN SHALL BE DEEMED AS REFERENCES TO
SUCH AMENDED GENERAL TERMS AND CONDITIONS AS ATTACHED
HERTO AS EXHIBIT A.

LAST PAGE

MOOOOOO  USER: MARC GERDY

From:

09/24/2003 08:30 #936 P.002/005

*Page 1*

# SCHEDULE A TO PURCHASE ORDER NUMBER DWB00380

This Schedule A is made part of the Purchase Order Number DWB00380 between Iron Mountain
Records Management, Inc. ("Seller") and Delphi Automotive Systems, L.L.C. ("Buyer").

Effective Date:      May 01, 2003
District Name:       Detroit
District Number:     522
Customer Name:       Delphi
Customer Number:     DM700, DM701, DM669, DM699 L4700

## STORAGE PRICING

Seller shall provide secure space for the storage of records. All boxes
shall be stored on industrial shelving. All record centers shall have
security, heat, and smoke detection systems. All facilites in which Seller
stores Buyer's records shall conform to Ansi fire protection standards.

$.18 per cubic foot per month

**Storage Minimum:**

$75.00 per month

Storage charges will be billed monthly in advance.

## MANAGEMENT SERVICES PRICING

Services during normal business hours, Monday through Friday 8:00
a.m. to 5:00 p.m., excluding holidays. Any services requested before or
after normal business hours will be charged applicable rates detailed in
this Schedule A.

**New Records (receiving and entry)**—The receipt of additional
customer records resulting in an increase to the customer storage
balance:

$1.00 per cubic foot, plus on demand pickup charge.

**Retrievals/Refiles**—The temporary retrieval of records from, or return
to, storage. Retrieval requests made by 3:00 pm shall be delivered the
following business day. Rush retrievals apply to any services performed
sooner than the timeframe specified above (request made before 3:00 pm
for next business day delivery). Rush does not apply to Refiles:

*Standard*   $1.95 per cubic foot
*Standard*   $1.95 per file from cubic foot

*Confidential*


RECEIVED
MAY 27 2005
CONTRACTS ADMINISTRATION

*Page 2*

| | |
|---|---|
| *Rush* | $4.15 per cubic foot |
| *Rush* | $4.15 per file from cubic foot |

**Destruction**—The preparation, documentation, and physical destruction of records. Seller shall process all Buyer destruction requests within 60 business days from receipt of final destruction request. Boxes will be confidentially destroyed and sent to the mill for recycling:

$2.40 per cubic foot plus retrieval

**Permanent Withdrawal**—The preparation, documentation, and permanent withdrawal of records:

$2.20 per cubic foot plus retrieval

**Miscellaneous Services-** The Seller will charge the Buyer a labor fee to provide special services to Buyer. Any special projects will need to be approved by Buyer before the start of the project.

*Labor*    $32.00 per hour

**Individual List**—Initial data entry of carton or file descriptions (beyond first line). Buyer will need to request Seller to perform Individual List for specific boxes. Buyer will need to establish and approve Individual List charges before the start of any Individual List project:

$.30 per line/file upto three fields of data entry.

**Service Minimum:** Seller shall charge Buyer a minimum fee of $1.95 for any service transaction that does not exceed $1.95.

$1.95 per transaction

Management services will be invoiced after they occur.

## TRANSPORTATION PRICING

**Delivery**

*Next Day*

$15.20 per transportation visit, $1.00 per cubic foot
Call by 3:00 p.m. for next day delivery between 8:00a.m. and 5:00 p.m.

*Half Day*

$30.40 per transportation visit, $1.00 per cubic foot
Call by 10:00 a.m. for delivery same day by 5:00 p.m.

*Emergency Visit (Rush)*

$60.80 per transportation visit, $1.00 per cubic foot
Delivery shall be made within 3 hours of request

*Confidential*

RECEIVED
MAY 2 7 2005
CONTRACTS ADMINISTRATION

From:                                        09/24/2003 08:30 #936 P.004/005

*After Hours/Weekends/Holidays*

$121.60 per transportation visit, $1.00 per cubic foot
Delivery shall be made within 4 hours of request

Pickup

*On Demand (Scheduled within 48 hours of request)*

$15.20 per transportation visit, $1.00 per cubic foot

Transportation charges will be invoiced after they occur.

Service activity volumes substantially exceeding customer norms may result in overtime charges, such overtime charges must be agreed upon by buyer in writing in advance of such charges by Seller.

All other services, not specifically listed, will be charged at Seller's then current rates, provided such rates have been approved in advance by Buyer.

## COMPUTER AND REPORTING CHARGES

Included in the customer's storage rate are the Monthly Supplemental Reports. All other reports (including special sorting and special file listings) are subject to the computer listing charge and/or initial setup, reporting, or download fees, quoted by job scope. Any such additional charges must be advised by Seller and agreed upon by Buyer prior to Seller's preparation of such reports.

## INITIAL TRANSFER/RECEIVING AND ENTRY (ONE TIME CHARGE)

**Initial Transfer/Receiving and Entry**—The pickup, transport, receipt and data entry of customer records establishing the initial storage balance. Initial transfer costs apply to the estimated initial transfer volume indicated below, transferred within three months of program implementation. Initial Transfer charges will apply to all new Departments not previously storing boxes at Iron Mountain:

$1.25 per cubic foot; Initial Volume will be based on the amount of boxes that Buyer sends to Seller for secure storage:

**Labor**—Initial labor to prepare cartons or files for transfer to storage:

$32.00 per labor hour

**Supplies/Cartons**—Initial new supplies:

$1.65 per 1.2 cf cartons

RECEIVED
MAY 2 7 2005
CONTRACTS ADMINISTRATION

*Confidential*

*Page 4*

## TERM

The term of the Agreement of which this Schedule A is a part will commence on the Effective Date indicated above and, unless terminated earlier pursuant to the terms of the contract, continue until the end of the month that is the 35th month anniversary. Storage and Service prices set forth above shall remain in effect for the first 36 months of this Agreement.

**Payment terms shall be Delphi's standard MNS2 terms. Notwithstanding anything else contained in this Agreement. MNS2 terms provide for payment on the second day of the second month following delivery of the complete good or service.**

Example:  A good/service is delivered in January 2002; payment would be scheduled for March 2, 2002.

*Confidential*



RECEIVED
MAY 2 7 2005
CONTRACTS ADMINISTRATION

## Delphi Ventures 01146.0SF046

| Number | Transaction Date | Class | Original | | Balance Due |
|---|---|---|---|---|---|
| CM02251 | 30-Sep-05 | Invoice | $ 148.02 | $ | 148.02 |
| | | **TOTAL PRE-PETITION** | | $ | **148.02** |
| | | | | $ | - |
| | | **TOTAL POST-PETITION** | | $ | - |
| | | **TOTAL OPEN INVOICES** | | $ | **148.02** |

CMO5N601    placlta                IRON MOUNTAIN                296      10/28/05

```
───────────────── Customer Statistics Display ─────────────────
         Cust Id: SF046      Cust Name: DELPHI VENTURES
         As of: 10/01/2005          MTD New Cub Ft: 1.20
Number of Boxes: 109          MTD Withdrawn Cub Ft: .00
 Cubic Footage: 130.80        MTD Destroyed Cub Ft: .00

Dist            Media          Total      Adds   Withdrawn   Destroyed
Id   Dept Id    Type          Cub Ft    Cub Ft     Cub Ft      Cub Ft      C

>SS                           130.80     1.20        .00         .00
```

<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Thermal  04119.0AD123

| Number | Transaction Date | Class | Original | | Balance Due | |
|--------|------------------|-------|----------|---|------------|---|
| CC59989 | 31-Aug-05 | Invoice | $ | 470.28 | $ | 470.28 |
| CJ37369 | 30-Sep-05 | Invoice | $ | 364.44 | $ | 364.44 |
| | TOTAL PRE-PETITION | | | | $ | 834.72 |
| | | | | | $ | - |
| | TOTAL POST-PETITION | | | | $ | - |
| | TOTAL OPEN INVOICES | | | | $ | 834.72 |

CM05N601     placlta                    IRON MOUNTAIN                  296      10/28/05

```
──────── Customer Statistics Display ────────
        Cust Id: AD123        Cust Name: DELPHI THERMAL INTERIOR TUSCALOOSA
         As of: 10/01/2005         MTD New Cub Ft: .00
Number of Boxes: 793            MTD Withdrawn Cub Ft: .00
  Cubic Footage: 1,351.20       MTD Destroyed Cub Ft: .00

Dist             Media          Total      Adds    Withdrawn   Destroyed
Id    Dept Id    Type          Cub Ft    Cub Ft     Cub Ft      Cub Ft      C

>AB                           1,351.20      .00        .00         .00
```

<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Packard  01322.0A3954

| Number | Transaction Date | Class | Original | | Balance Due | |
|--------|------------------|-------|----------|---|-------------|---|
| BY45948 | 31-Jul-05 | Invoice | $ | 10.29 | $ | 10.29 |
| BY45949 | 31-Jul-05 | Invoice | $ | 74.47 | $ | 74.47 |
| BY45950 | 31-Jul-05 | Invoice | $ | 4.54 | $ | 4.54 |
| BY45951 | 31-Jul-05 | Invoice | $ | 215.08 | $ | 215.08 |
| CN18528 | 30-Sep-05 | Invoice | $ | 5.29 | $ | 5.29 |
| CN18529 | 30-Sep-05 | Invoice | $ | 74.47 | $ | 74.47 |
| CN18530 | 30-Sep-05 | Invoice | $ | 4.54 | $ | 4.54 |
| CN18531 | 30-Sep-05 | Invoice | $ | 215.08 | $ | 215.08 |

|  | | | | | |
|--|--|--|--|--|--|
| | **TOTAL PRE-PETITION** | | $ | 603.76 | |
| | | | $ | - | |
| | **TOTAL POST-PETITION** | | $ | - | |
| | **TOTAL OPEN INVOICES** | | $ | 603.76 | |

```
CM05N601   placlta                IRON MOUNTAIN                296      10/28/05

                   ┌─── Customer Statistics Display ───────────────────────┐
              Cust Id: A3954     Cust Name: DELPHI PACKARD ELECTRIC SYSTEMS
              As of: 10/01/2005        MTD New Cub Ft: .00
   Number of Boxes: 774          MTD Withdrawn Cub Ft: .00
      Cubic Footage: 950.40      MTD Destroyed Cub Ft: .00

   Dist                         Media        Total      Adds   Withdrawn  De
   Id    Div Id     Dept Id      Type       Cub Ft    Cub Ft     Cub Ft

  >AZ                                         16.80       .00        .00
   AZ    ACCT SVCS  EXP REPORT               236.40       .00        .00
   AZ    CENTER MGMT FACILITIES               14.40       .00        .00
   AZ    INV/REC    NV INVOICE               682.80       .00        .00

```

        <NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Thermal  03221.0OV744

| Number | Transaction Date | Class | Original | | Balance Due | |
|--------|------------------|-------|----------|---|----|---|
| CF83202 | 31-Aug-05 | Invoice | $ | 117.00 | $ | 117.00 |
| CL77976 | 30-Sep-05 | Invoice | $ | 117.00 | $ | 117.00 |
| | | **TOTAL PRE-PETITION** | | | $ | 234.00 |
| | | | | | $ | - |
| | | **TOTAL POST-PETITION** | | | $ | - |
| | | **TOTAL OPEN INVOICES** | | | $ | 234.00 |

CMO5N601    placlta              IRON MOUNTAIN              296    10/28/05

```
┌─────────────── Customer Statistics Display ───────────────
│        Cust Id: OV744      Cust Name: DELPHI THERMAL SYSTEMS
│        As of: 10/01/2005        MTD New Cub Ft: .00
│ Number of Boxes: 65        MTD Withdrawn Cub Ft: .00
│   Cubic Footage: 117.00    MTD Destroyed Cub Ft: .00
│
│ Dist         Media       Total      Adds  Withdrawn  Destroyed
│ Id  Dept Id  Type       Cub Ft    Cub Ft    Cub Ft    Cub Ft      C
│
│ >CI                     117.00      .00       .00       .00
│
│
│
│
└───────────────────────────────────────────────────────────
```

       <NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Harrison Thermal  03221.0OH744

| Number | Transaction Date | Class | Original | Balance Due |
|--------|------------------|-------|----------|-------------|
| CF82990 | 31-Aug-05 | Invoice | 1240.43 | 1240.43 |
| CF82994 | 31-Aug-05 | Invoice | 0.17 | 0.17 |
| CF82996 | 31-Aug-05 | Invoice | 0.67 | 0.67 |
| CF82998 | 31-Aug-05 | Invoice | 40.15 | 40.15 |
| CF83000 | 31-Aug-05 | Invoice | 63.17 | 63.17 |
| CF82999 | 31-Aug-05 | Invoice | 30.07 | 30.07 |
| CF82997 | 31-Aug-05 | Invoice | 48.72 | 48.72 |
| CF82995 | 31-Aug-05 | Invoice | 27.55 | 27.55 |
| CF82993 | 31-Aug-05 | Invoice | 0.17 | 0.17 |
| CF82991 | 31-Aug-05 | Invoice | 383.98 | 383.98 |
| CF82992 | 31-Aug-05 | Invoice | 30.24 | 30.24 |
| CL77767 | 30-Sep-05 | Invoice | 183.14 | 183.14 |
| CL77774 | 30-Sep-05 | Invoice | 48.72 | 48.72 |
| CL77777 | 30-Sep-05 | Invoice | 63.17 | 63.17 |
| CL77776 | 30-Sep-05 | Invoice | 30.07 | 30.07 |
| CL77775 | 30-Sep-05 | Invoice | 40.15 | 40.15 |
| CL77773 | 30-Sep-05 | Invoice | 0.67 | 0.67 |
| CL77768 | 30-Sep-05 | Invoice | 422.52 | 422.52 |
| CL77770 | 30-Sep-05 | Invoice | 0.17 | 0.17 |
| CL77771 | 30-Sep-05 | Invoice | 0.17 | 0.17 |
| CL77772 | 30-Sep-05 | Invoice | 27.55 | 27.55 |
| CL77769 | 30-Sep-05 | Invoice | 50.26 | 50.26 |

| | |
|---|---|
| **TOTAL PRE-PETITION** | **$ 2,731.91** |
| | $          - |
| **TOTAL POST-PETITION** | **$          -** |
| **TOTAL OPEN INVOICES** | **$ 2,731.91** |

CM05N601    placlta                IRON MOUNTAIN                    296        10/28/05

```
─────────────── Customer Statistics Display ───────────────
       Cust Id: OH744       Cust Name: DELPHI HARRISON THERMAL SYSTEMS
        As of: 10/01/2005          MTD New Cub Ft: 25.20
Number of Boxes: 2,762       MTD Withdrawn Cub Ft: 31.20
  Cubic Footage: 4,558.32    MTD Destroyed Cub Ft: .00
```

| Dist Id | Dept Id | Media Type | Total Cub Ft | Adds Cub Ft | Withdrawn Cub Ft | Destroyed Cub Ft | C |
|---------|---------|------------|--------------|-------------|------------------|------------------|---|
| >CI     |         |            | 92.40        | 14.40       | 7.20             | .00              |   |
| CI      | 58      |            | 2,745.12     | 10.80       | 24.00            | .00              | 1 |
| CI      | 71      |            | 216.00       | .00         | .00              | .00              |   |
| CI      | 72      |            | 1.20         | .00         | .00              | .00              |   |
| CI      | 73      |            | 1.20         | .00         | .00              | .00              |   |
| CI      | 160     |            | 196.80       | .00         | .00              | .00              |   |
| CI      | 163     |            | 4.80         | .00         | .00              | .00              |   |

<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Thermal 03141.0L470D

| Number | Transaction Date | Class | Original | Balance Due |
|--------|------------------|-------|----------|-------------|
| CG04956 | 31-Aug-05 | Invoice | 111.26 | 111.26 |
| CG04958 | 31-Aug-05 | Invoice | 13.82 | 13.82 |
| CG04960 | 31-Aug-05 | Invoice | 582.77 | 582.77 |
| CG04962 | 31-Aug-05 | Invoice | 39.17 | 39.17 |
| CG04964 | 31-Aug-05 | Invoice | 36.02 | 36.02 |
| CG04966 | 31-Aug-05 | Invoice | 18.79 | 18.79 |
| CG04968 | 31-Aug-05 | Invoice | 139.1 | 139.1 |
| CG04972 | 31-Aug-05 | Invoice | 365 | 365 |
| CG04971 | 31-Aug-05 | Invoice | 77.98 | 77.98 |
| CG04970 | 31-Aug-05 | Invoice | 5.18 | 5.18 |
| CG04969 | 31-Aug-05 | Invoice | 47.02 | 47.02 |
| CG04967 | 31-Aug-05 | Invoice | 2.81 | 2.81 |
| CG04965 | 31-Aug-05 | Invoice | 146.95 | 146.95 |
| CG04963 | 31-Aug-05 | Invoice | 242.9 | 242.9 |
| CG04961 | 31-Aug-05 | Invoice | 407.47 | 407.47 |
| CG04959 | 31-Aug-05 | Invoice | 1424.84 | 1424.84 |
| CG04957 | 31-Aug-05 | Invoice | 7.56 | 7.56 |
| CM19117 | 30-Sep-05 | Invoice | 7.56 | 7.56 |
| CM19120 | 30-Sep-05 | Invoice | 1443.24 | 1443.24 |
| CM19122 | 30-Sep-05 | Invoice | 326.49 | 326.49 |
| CM19124 | 30-Sep-05 | Invoice | 101.3 | 101.3 |
| CM19126 | 30-Sep-05 | Invoice | 117.07 | 117.07 |
| CM19128 | 30-Sep-05 | Invoice | 37.65 | 37.65 |
| CM19133 | 30-Sep-05 | Invoice | 224.01 | 224.01 |
| CM19132 | 30-Sep-05 | Invoice | 77.98 | 77.98 |
| CM19131 | 30-Sep-05 | Invoice | 5.18 | 5.18 |
| CM19130 | 30-Sep-05 | Invoice | 47.02 | 47.02 |
| CM19129 | 30-Sep-05 | Invoice | 139.1 | 139.1 |
| CM19127 | 30-Sep-05 | Invoice | 21.19 | 21.19 |
| CM19125 | 30-Sep-05 | Invoice | 36.02 | 36.02 |
| CM19123 | 30-Sep-05 | Invoice | 39.17 | 39.17 |
| CM19121 | 30-Sep-05 | Invoice | 582.77 | 582.77 |
| CM19119 | 30-Sep-05 | Invoice | 13.82 | 13.82 |
| CM19118 | 30-Sep-05 | Invoice | 7.56 | 7.56 |

TOTAL PRE-PETITION          $  6,895.77

$       -

TOTAL POST-PETITION        $       -

TOTAL OPEN INVOICES        $  6,895.77

CM05N6O1    placlta                IRON MOUNTAIN                    296      10/28/05

```
───────────────── Customer Statistics Display ─────────────────
        Cust Id: L470D      Cust Name: DELPHI THERMAL & INTERIOR SYSTEMS
         As of: 10/01/2005          MTD New Cub Ft: 33.60
Number of Boxes: 10,534       MTD Withdrawn Cub Ft: .00
  Cubic Footage: 17,300.50    MTD Destroyed Cub Ft: .00
```

| Dist Id | Dept Id | Media Type | Total Cub Ft | Adds Cub Ft | Withdrawn Cub Ft | Destroyed Cub Ft | C |
|---------|---------|------------|--------------|-------------|------------------|------------------|---|
| >MI     |         |            | 42.00        | .00         | .00              | .00              |   |
| MI      | 26007   |            | 42.00        | .00         | .00              | .00              |   |
| MI      | 26019   |            | 76.80        | .00         | .00              | .00              |   |
| MI      | 26020   |            | 7,915.75     | .00         | .00              | .00              | 5 |
| MI      | 26050   |            | 3,237.60     | .00         | .00              | .00              | 2 |
| MI      | 26083   |            | 1,813.85     | .00         | .00              | .00              |   |
| MI      | 26112   |            | 217.60       | .00         | .00              | .00              |   |

```
<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>
```

## Delphi Energy and Chassis  03141.0DM701

| Number | Transaction Date | Class | Original | | Balance Due | |
|--------|------------------|-------|----------|---|-------------|---|
| CM14499 | 30-Sep-05 | Invoice | $ | 279.29 | $ | 279.29 |
| CM14500 | 30-Sep-05 | Invoice | $ | 340.64 | $ | 340.64 |
| CM14501 | 30-Sep-05 | Invoice | $ | 121.47 | $ | 121.47 |
| CM14502 | 30-Sep-05 | Invoice | $ | 54.22 | $ | 54.22 |
| CM14503 | 30-Sep-05 | Invoice | $ | 132.14 | $ | 132.14 |

|  |  |
|--|--|
| TOTAL PRE-PETITION | $ 927.76 |
|  | $ - |
| TOTAL POST-PETITION | $ - |
| TOTAL OPEN INVOICES | $ 927.76 |

CMO5N601    placlta                    IRON MOUNTAIN                    296        10/28/05

```
 ---------------------- Customer Statistics Display ----------------------
|        Cust Id: DM701          Cust Name: DELPHI ENERGY AND CHASSIS      |
|        As of: 10/01/2005              MTD New Cub Ft: 19.20              |
| Number of Boxes: 2,174          MTD Withdrawn Cub Ft: .00               |
|   Cubic Footage: 4,619.20       MTD Destroyed Cub Ft: .00               |
|                                                                         |
|  Dist               Media          Total        Adds   Withdrawn  Destroyed   |
|  Id    Dept Id       Type         Cub Ft      Cub Ft    Cub Ft     Cub Ft   C |
|                                                                         |
| >MI    AHGFW                     1,551.60        .00       .00        .00 |
|  MI    FINANCE                   1,740.00        .00       .00        .00 |
|  MI    P C AND L                   620.40        .00       .00        .00 |
|  MI    PURCHASING                  301.20        .00       .00        .00 |
|  MI    SALES AND MK                406.00      19.20       .00        .00 |
|                                                                         |
 -------------------------------------------------------------------------
```

<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Diesel Aftermarket  03141.0DM669

| Number | Transaction Date | Class | Original | Balance Due |
|--------|------------------|-------|---------|-------------|
| CG00244 | 31-Aug-05 | Invoice | 0.86 | 0.86 |
| CG00249 | 31-Aug-05 | Invoice | 1.08 | 1.08 |
| CG00251 | 31-Aug-05 | Invoice | 2.59 | 2.59 |
| CG00253 | 31-Aug-05 | Invoice | 13.61 | 13.61 |
| CG00256 | 31-Aug-05 | Invoice | 2.59 | 2.59 |
| CG00255 | 31-Aug-05 | Invoice | 3.89 | 3.89 |
| CG00254 | 31-Aug-05 | Invoice | 4.54 | 4.54 |
| CG00252 | 31-Aug-05 | Invoice | 14.26 | 14.26 |
| CG00250 | 31-Aug-05 | Invoice | 9.29 | 9.29 |
| CG00248 | 31-Aug-05 | Invoice | 39.1 | 39.1 |
| CG00245 | 31-Aug-05 | Invoice | 42.98 | 42.98 |
| CG00246 | 31-Aug-05 | Invoice | 17.93 | 17.93 |
| CG00247 | 31-Aug-05 | Invoice | 3.89 | 3.89 |
| CM14386 | 30-Sep-05 | Invoice | 0.86 | 0.86 |
| CM14388 | 30-Sep-05 | Invoice | 17.93 | 17.93 |
| CM14390 | 30-Sep-05 | Invoice | 39.1 | 39.1 |
| CM14392 | 30-Sep-05 | Invoice | 9.29 | 9.29 |
| CM14394 | 30-Sep-05 | Invoice | 14.26 | 14.26 |
| CM14396 | 30-Sep-05 | Invoice | 30.73 | 30.73 |
| CM14398 | 30-Sep-05 | Invoice | 2.59 | 2.59 |
| CM14397 | 30-Sep-05 | Invoice | 3.89 | 3.89 |
| CM14395 | 30-Sep-05 | Invoice | 64.79 | 64.79 |
| CM14393 | 30-Sep-05 | Invoice | 2.59 | 2.59 |
| CM14391 | 30-Sep-05 | Invoice | 1.08 | 1.08 |
| CM14389 | 30-Sep-05 | Invoice | 3.89 | 3.89 |
| CM14387 | 30-Sep-05 | Invoice | 208.12 | 208.12 |

|  |  |
|--|--|
| TOTAL PRE-PETITION | $ 555.73 |
|  | $ - |
| TOTAL POST-PETITION | $ - |
| TOTAL OPEN INVOICES | $ 555.73 |

CMO5N601   placlta                  IRON MOUNTAIN                296      10/28/05

```
──────────────── Customer Statistics Display ────────────────
         Cust Id: DM669      Cust Name: DELPHI DIESEL AFTERMARKET
         As of: 10/01/2005         MTD New Cub Ft: 24.00
Number of Boxes: 712        MTD Withdrawn Cub Ft: .00
   Cubic Footage: 854.40     MTD Destroyed Cub Ft: 39.60
```

| Dist Id | Dept Id | Media Type | Total Cub Ft | Adds Cub Ft | Withdrawn Cub Ft | Destroyed Cub Ft | C |
|---------|---------|------------|-------------|-------------|------------------|------------------|---|
| >MI | ADMINISTRA |  | 4.80 | .00 | .00 | .00 | |
| MI | COA |  | 199.20 | .00 | .00 | 39.60 | |
| MI | CREDIT CASH |  | 99.60 | .00 | .00 | .00 | |
| MI | CREDIT CREDI |  | 21.60 | .00 | .00 | .00 | |
| MI | FINANCE |  | 217.20 | .00 | .00 | .00 | |
| MI | FINANCE GENE |  | 6.00 | .00 | .00 | .00 | |
| MI | GENERAL MGR |  | 51.60 | .00 | .00 | .00 | |

<NEXT(F1)>  <JUMP(F3)>  <TOTALS(F8)>  <PRINT(F9)>  <MENU(F12)>

## Delphi AHG  03141.0DMACB

| Number | Transaction Date | Class | Original | Balance Due |
|--------|------------------|-------|----------|-------------|
| CB21409 | 31-Jul-05 | Invoice | 6458.88 | 6458.88 |
| CB21411 | 31-Jul-05 | Invoice | 309.7 | 309.7 |
| CB21412 | 31-Jul-05 | Invoice | 222.7 | 222.7 |
| CB21410 | 31-Jul-05 | Invoice | 206.76 | 206.76 |
| CB21413 | 31-Jul-05 | Invoice | 27.85 | 27.85 |
| CB21415 | 31-Jul-05 | Invoice | 105.7 | 105.7 |
| CB21417 | 31-Jul-05 | Invoice | 904.38 | 904.38 |
| CB21419 | 31-Jul-05 | Invoice | 2503.7 | 2503.7 |
| CB21418 | 31-Jul-05 | Invoice | 258.94 | 258.94 |
| CB21416 | 31-Jul-05 | Invoice | 685.55 | 685.55 |
| CB21414 | 31-Jul-05 | Invoice | 465.28 | 465.28 |
| CG01037 | 31-Aug-05 | Invoice | 803.02 | 803.02 |
| CG01038 | 31-Aug-05 | Invoice | 38.88 | 38.88 |
| CG01039 | 31-Aug-05 | Invoice | 19.22 | 19.22 |
| CG01041 | 31-Aug-05 | Invoice | 1.73 | 1.73 |
| CG01043 | 31-Aug-05 | Invoice | 5.62 | 5.62 |
| CG01045 | 31-Aug-05 | Invoice | 77.65 | 77.65 |
| CG01047 | 31-Aug-05 | Invoice | 884.88 | 884.88 |
| CG01046 | 31-Aug-05 | Invoice | 40.32 | 40.32 |
| CG01044 | 31-Aug-05 | Invoice | 42.55 | 42.55 |
| CG01042 | 31-Aug-05 | Invoice | 27.86 | 27.86 |
| CG01040 | 31-Aug-05 | Invoice | 13.82 | 13.82 |
| CM15189 | 30-Sep-05 | Invoice | 152.41 | 152.41 |
| CM15196 | 30-Sep-05 | Invoice | 42.55 | 42.55 |
| CM15199 | 30-Sep-05 | Invoice | 724.46 | 724.46 |
| CM15198 | 30-Sep-05 | Invoice | 37.3 | 37.3 |
| CM15197 | 30-Sep-05 | Invoice | 77.65 | 77.65 |
| CM15195 | 30-Sep-05 | Invoice | 5.62 | 5.62 |
| CM15190 | 30-Sep-05 | Invoice | 10.8 | 10.8 |
| CM15192 | 30-Sep-05 | Invoice | 13.82 | 13.82 |
| CM15193 | 30-Sep-05 | Invoice | 1.73 | 1.73 |
| CM15194 | 30-Sep-05 | Invoice | 27.86 | 27.86 |
| CM15191 | 30-Sep-05 | Invoice | 19.22 | 19.22 |

**TOTAL PRE-PETITION**  $15,218.41

$    -

**TOTAL POST-PETITION**  $    -

**TOTAL OPEN INVOICES**  $15,218.41

CMO5N601    placlta                IRON MOUNTAIN                296        10/28/05

```
 ─────────────────── Customer Statistics Display ───────────────────
           Cust Id: DMACB        Cust Name: DELPHI AHG
           As of: 10/01/2005         MTD New Cub Ft: 2.40
 Number of Boxes: 2,620        MTD Withdrawn Cub Ft: .00
  Cubic Footage: 6,157.40      MTD Destroyed Cub Ft: .00

 Dist              Media        Total      Adds    Withdrawn  Destroyed
 Id   Dept Id      Type        Cub Ft    Cub Ft     Cub Ft     Cub Ft       C

>MI                            818.40      2.40        .00        .00
 MI    AHG AN ENV               60.00       .00        .00        .00
 MI    AHG AN FIN              106.80       .00        .00        .00
 MI    AHG AN MED               76.80       .00        .00        .00
 MI    AHG AN MFG                9.60       .00        .00        .00
 MI    AHG AN PCL              154.80       .00        .00        .00
 MI    AHG AN PUR               31.20       .00        .00        .00
```

<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Headquarters  03141.0DM700

| Number | Transaction Date | Class | Original | | Balance Due | |
|---|---|---|---|---|---|---|
| AS67735 | 31-Jan-05 | Invoice | $ | 6.48 | $ | 6.48 |
| AS67736 | 31-Jan-05 | Invoice | $ | 6.48 | $ | 6.48 |
| AS67737 | 31-Jan-05 | Invoice | $ | 2.38 | $ | 2.38 |
| AS67738 | 31-Jan-05 | Invoice | $ | 9.94 | $ | 9.94 |
| AS67742 | 31-Jan-05 | Invoice | $ | 45.75 | $ | 45.75 |
| AS67744 | 31-Jan-05 | Invoice | $ | 1.30 | $ | 1.30 |
| AS67746 | 31-Jan-05 | Invoice | $ | 3.02 | $ | 3.02 |
| AS67747 | 31-Jan-05 | Invoice | $ | 132.98 | $ | 132.98 |
| AS67745 | 31-Jan-05 | Invoice | $ | 8.21 | $ | 8.21 |
| AS67743 | 31-Jan-05 | Invoice | $ | 6.91 | $ | 6.91 |
| AS67741 | 31-Jan-05 | Invoice | $ | 57.27 | $ | 57.27 |
| AS67740 | 31-Jan-05 | Invoice | $ | 1.08 | $ | 1.08 |
| AS67739 | 31-Jan-05 | Invoice | $ | 1.73 | $ | 1.73 |
| BK34724 | 30-Apr-05 | Invoice | $ | 6.48 | $ | 6.48 |
| BK34725 | 30-Apr-05 | Invoice | $ | 6.48 | $ | 6.48 |
| BK34726 | 30-Apr-05 | Invoice | $ | 2.38 | $ | 2.38 |
| BK34727 | 30-Apr-05 | Invoice | $ | 9.94 | $ | 9.94 |
| BK34728 | 30-Apr-05 | Invoice | $ | 1.73 | $ | 1.73 |
| BK34729 | 30-Apr-05 | Invoice | $ | 1.08 | $ | 1.08 |
| BK34730 | 30-Apr-05 | Invoice | $ | 23.33 | $ | 23.33 |
| BK34731 | 30-Apr-05 | Invoice | $ | 131.52 | $ | 131.52 |
| BK34732 | 30-Apr-05 | Invoice | $ | 6.91 | $ | 6.91 |
| BK34733 | 30-Apr-05 | Invoice | $ | 1.30 | $ | 1.30 |
| BK34734 | 30-Apr-05 | Invoice | $ | 20.86 | $ | 20.86 |
| BK34735 | 30-Apr-05 | Invoice | $ | 8.21 | $ | 8.21 |
| BK34736 | 30-Apr-05 | Invoice | $ | 3.46 | $ | 3.46 |
| BK34737 | 30-Apr-05 | Invoice | $ | 141.60 | $ | 141.60 |
| BK34738 | 30-Apr-05 | Invoice | $ | 252.04 | $ | 252.04 |
| BK34739 | 30-Apr-05 | Invoice | $ | 181.24 | $ | 181.24 |
| BK34740 | 30-Apr-05 | Invoice | $ | 22.66 | $ | 22.66 |
| BK34741 | 30-Apr-05 | Invoice | $ | 365.32 | $ | 365.32 |
| BK34742 | 30-Apr-05 | Invoice | $ | 88.84 | $ | 88.84 |
| BK34743 | 30-Apr-05 | Invoice | $ | 557.90 | $ | 557.90 |
| BK34744 | 30-Apr-05 | Invoice | $ | 132.98 | $ | 132.98 |
| BM21609 | 31-May-05 | Invoice | $ | 6.48 | $ | 6.48 |
| BM21611 | 31-May-05 | Invoice | $ | 2.38 | $ | 2.38 |
| BM21613 | 31-May-05 | Invoice | $ | 45.25 | $ | 45.25 |
| BM21615 | 31-May-05 | Invoice | $ | 23.33 | $ | 23.33 |
| BM21617 | 31-May-05 | Invoice | $ | 6.91 | $ | 6.91 |
| BM21629 | 31-May-05 | Invoice | $ | 132.98 | $ | 132.98 |
| BM21621 | 31-May-05 | Invoice | $ | 3.46 | $ | 3.46 |
| BM21620 | 31-May-05 | Invoice | $ | 8.21 | $ | 8.21 |
| BM21619 | 31-May-05 | Invoice | $ | 1.30 | $ | 1.30 |
| BM21618 | 31-May-05 | Invoice | $ | 0.43 | $ | 0.43 |
| BM21616 | 31-May-05 | Invoice | $ | 26.78 | $ | 26.78 |
| BM21614 | 31-May-05 | Invoice | $ | 39.98 | $ | 39.98 |
| BM21612 | 31-May-05 | Invoice | $ | 9.94 | $ | 9.94 |

| | | | | | | |
|---|---|---|---|---|---|---|
| BM21610 | 31-May-05 | Invoice | $ | 6.48 | $ | 6.48 |
| BT75213 | 30-Jun-05 | Invoice | $ | 18.14 | $ | 18.14 |
| BT75216 | 30-Jun-05 | Invoice | $ | 2.38 | $ | 2.38 |
| BT75218 | 30-Jun-05 | Invoice | $ | 3.89 | $ | 3.89 |
| BT75220 | 30-Jun-05 | Invoice | $ | 23.33 | $ | 23.33 |
| BT75235 | 30-Jun-05 | Invoice | $ | 132.98 | $ | 132.98 |
| BT75226 | 30-Jun-05 | Invoice | $ | 3.46 | $ | 3.46 |
| BT75225 | 30-Jun-05 | Invoice | $ | 8.21 | $ | 8.21 |
| BT75224 | 30-Jun-05 | Invoice | $ | 84.14 | $ | 84.14 |
| BT75223 | 30-Jun-05 | Invoice | $ | 0.43 | $ | 0.43 |
| BT75222 | 30-Jun-05 | Invoice | $ | 6.91 | $ | 6.91 |
| BT75221 | 30-Jun-05 | Invoice | $ | 26.78 | $ | 26.78 |
| BT75219 | 30-Jun-05 | Invoice | $ | 46.07 | $ | 46.07 |
| BT75217 | 30-Jun-05 | Invoice | $ | 9.94 | $ | 9.94 |
| BT75215 | 30-Jun-05 | Invoice | $ | 6.48 | $ | 6.48 |
| BT75214 | 30-Jun-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CB20710 | 31-Jul-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CB20712 | 31-Jul-05 | Invoice | $ | 6.62 | $ | 6.62 |
| CB20714 | 31-Jul-05 | Invoice | $ | 3.89 | $ | 3.89 |
| CB20716 | 31-Jul-05 | Invoice | $ | 23.33 | $ | 23.33 |
| CB20718 | 31-Jul-05 | Invoice | $ | 6.91 | $ | 6.91 |
| CB20723 | 31-Jul-05 | Invoice | $ | 132.98 | $ | 132.98 |
| CB20722 | 31-Jul-05 | Invoice | $ | 3.46 | $ | 3.46 |
| CB20721 | 31-Jul-05 | Invoice | $ | 250.04 | $ | 250.04 |
| CB20720 | 31-Jul-05 | Invoice | $ | 19.30 | $ | 19.30 |
| CB20719 | 31-Jul-05 | Invoice | $ | 0.43 | $ | 0.43 |
| CB20717 | 31-Jul-05 | Invoice | $ | 26.78 | $ | 26.78 |
| CB20715 | 31-Jul-05 | Invoice | $ | 37.89 | $ | 37.89 |
| CB20713 | 31-Jul-05 | Invoice | $ | 480.46 | $ | 480.46 |
| CB20711 | 31-Jul-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CG00345 | 31-Aug-05 | Invoice | $ | 0.43 | $ | 0.43 |
| CG00346 | 31-Aug-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CG00347 | 31-Aug-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CG00348 | 31-Aug-05 | Invoice | $ | 1.94 | $ | 1.94 |
| CG00349 | 31-Aug-05 | Invoice | $ | 70.20 | $ | 70.20 |
| CG00350 | 31-Aug-05 | Invoice | $ | 3.89 | $ | 3.89 |
| CG00351 | 31-Aug-05 | Invoice | $ | 24.87 | $ | 24.87 |
| CG00352 | 31-Aug-05 | Invoice | $ | 119.24 | $ | 119.24 |
| CG00353 | 31-Aug-05 | Invoice | $ | 26.78 | $ | 26.78 |
| CG00354 | 31-Aug-05 | Invoice | $ | 6.91 | $ | 6.91 |
| CG00355 | 31-Aug-05 | Invoice | $ | 0.43 | $ | 0.43 |
| CG00356 | 31-Aug-05 | Invoice | $ | 23.94 | $ | 23.94 |
| CG00357 | 31-Aug-05 | Invoice | $ | 5.23 | $ | 5.23 |
| CG00358 | 31-Aug-05 | Invoice | $ | 3.46 | $ | 3.46 |
| CG00359 | 31-Aug-05 | Invoice | $ | 132.98 | $ | 132.98 |
| CM14484 | 30-Sep-05 | Invoice | $ | 0.22 | $ | 0.22 |
| CM14485 | 30-Sep-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CM14486 | 30-Sep-05 | Invoice | $ | 6.48 | $ | 6.48 |
| CM14487 | 30-Sep-05 | Invoice | $ | 36.84 | $ | 36.84 |
| CM14488 | 30-Sep-05 | Invoice | $ | 70.20 | $ | 70.20 |
| CM14489 | 30-Sep-05 | Invoice | $ | 3.89 | $ | 3.89 |

| | | | | | |
|---|---|---|---|---|---|
| CM14490 | 30-Sep-05 | Invoice | $ | 62.87 | $ 62.87 |
| CM14491 | 30-Sep-05 | Invoice | $ | 263.97 | $ 263.97 |
| CM14492 | 30-Sep-05 | Invoice | $ | 26.78 | $ 26.78 |
| CM14493 | 30-Sep-05 | Invoice | $ | 6.91 | $ 6.91 |
| CM14494 | 30-Sep-05 | Invoice | $ | 0.43 | $ 0.43 |
| CM14495 | 30-Sep-05 | Invoice | $ | 117.12 | $ 117.12 |
| CM14496 | 30-Sep-05 | Invoice | $ | 113.08 | $ 113.08 |
| CM14497 | 30-Sep-05 | Invoice | $ | 3.46 | $ 3.46 |
| CM14498 | 30-Sep-05 | Invoice | $ | 132.98 | $ 132.98 |

**TOTAL PRE-PETITION**        $ 5,233.34

$    -

**TOTAL POST-PETITION**        $    -

**TOTAL OPEN INVOICES**        $ 5,233.34

CMO5Ñ601    placlta                    IRON MOUNTAIN                    296        10/28/05

```
─────────────── Customer Statistics Display ───────────────
        Cust Id: DM700      Cust Name: DELPHI-HEADQUARTERS
        As of: 10/01/2005          MTD New Cub Ft: 96.00
Number of Boxes: 964        MTD Withdrawn Cub Ft: .00
   Cubic Footage: 1,746.80   MTD Destroyed Cub Ft: .00
```

| Dist Id | Dept Id | Media Type | Total Cub Ft | Adds Cub Ft | Withdrawn Cub Ft | Destroyed Cub Ft | C |
|---------|---------|------------|--------------|-------------|-------------------|-------------------|---|
| >MI     |         |            | 1.20         | 1.20        | .00               | .00               |   |
| MI      | 105     |            | 36.00        | .00         | .00               | .00               |   |
| MI      | 130     |            | 36.00        | .00         | .00               | .00               |   |
| MI      | 155     |            | 10.80        | .00         | .00               | .00               |   |
| MI      | 170     |            | 390.00       | .00         | .00               | .00               |   |
| MI      | 185     |            | 21.60        | .00         | .00               | .00               |   |
| MI      | 200     |            | 14.40        | .00         | .00               | .00               |   |

<NEXT(F1)> <JUMP(F3)> <TOTALS(F8)> <PRINT(F9)> <MENU(F12)>

## Delphi Interior and Lighting  02301.06760Z

| Number | Transaction Date | Class | Original | | Balance Due |
|--------|------------------|-------|----------|---|-------------|
| CJ39553 | 30-Sep-05 | Invoice | $ 210.00 | $ | 210.00 |
| | | **TOTAL PRE-PETITION** | | $ | **210.00** |
| | | | | $ | - |
| | | **TOTAL POST-PETITION** | | $ | - |
| | | **TOTAL OPEN INVOICES** | | $ | **210.00** |