# INVOICE

**Bayer MaterialScience**

**PLEASE REMIT TO**
BAYER MATERIALSCIENCE
P.O.BOX 223105
PITTSBURGH PA 15251-2105

100 Bayer Road
PITTSBURGH PA 15205-9741

Page: 1(2)

| BILL TO | ACCOUNT NUMBER 5172817 | SHIP TO | ACCOUNT NUMBER 6528178 |
|---|---|---|---|
| | Delphi Corporation<br>Delphi Interior Systems<br>P.O. BOX 5032<br>Troy MI 48084 | | Delphi Automotive Systems<br>4605 Airport Road<br>Gadsden AL 35904<br>US |

**INVOICE** 25146270   **INVOICE DATE** 09/30/2005   **SHIP FROM:** HEBRON OH US

| ITEM / CUSTOMER CODE | DESCRIPTION | LOT | QUANTITY | UOM | UNIT PRICE USD | AMOUNT |
|---|---|---|---|---|---|---|
| 03541634<br>M101603 | BAYBLEND<br>T 85        901510<br>750 KG RECT BOX,43 13/16"X40 3/4 | 04CB5H021D<br><br>04CB5H021H<br><br>04CB5H021G | 1,654.000<br>(750.241)<br>9,923.998<br>(4,501.446)<br>8,269.998<br>(3,751.205) | LB<br>(KG)<br>LB<br>(KG)<br>LB<br>(KG) | | |
| | **TOTAL FOR LINE** | | **19,847.996<br>(9,002.892)** | **LB<br>(KG)** | | |
| | Cust./Mat. Price<br>12 X 1,654.000 LB BOX<br>Shipment Unit Number: 0020166145 | | | | 1.36/LB | 26,993.27 |

| CUST P.O. 550056312 | FREIGHT TERM   CPT DESTINATION | SUBTOTAL | 26,993.27 |
|---|---|---|---|
| SHIP DATE   09/30/2005 | ORDER NUMBER   1487752 | SALES TAX | 0.00 |
| TERMS   1% 10 Days Net 11 Days | DELIVERY NUMBER   81143911 | | |
| For Billing Inquiries Call | 1-877-229-3778 | INVOICE TOTAL   USD | 26,993.27 |

| DISCOUNT DUE DATE | PAY THIS AMT BY DISCOUNT DUE DATE | PAYMENT IN FULL DUE BY | PAYMENT IN FULL AMT | |
|---|---|---|---|---|
| 10/10/2005 | 26,723.34 | 10/11/2005 | 26,993.27 | USD |

**TERMS AND CONDITIONS:** NOTWITHSTANDING ANY CONTRARY OR INCONSISTENT CONDITIONS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, YOUR ORDER IS ACCEPTED SUBJECT TO THE PRICES, TERMS AND CONDITIONS OF THE MUTUALLY EXECUTED CONTRACT BETWEEN US, OR, IF NO SUCH CONTRACT EXISTS, YOUR ORDER IS ACCEPTED SUBJECTED TO OUR REGULAR SCHEDULED PRICE AND TERMS IN EFFECT AT TIME OF SHIPMENT AND SUBJECT TO THE TERMS AND CONDITIONS PRINTED ON THE SECOND PAGE OF THE INVOICE HEREOF.

# CONDITIONS OF SALE

## 1. AGREEMENT

1.1 The conditions of the sales agreement (AGREEMENT) shall supercede any conflicting terms in these Conditions. If BUYER and SELLER have not entered into a written sales agreement, these conditions shall constitute the AGREEMENT. Terms defined herein are capitalized. Except as otherwise specified in the AGREEMENT, no other conditions shall be applicable to the AGREEMENT or otherwise accepted by SELLER. All other terms and conditions are hereby expressly rejected. SELLERS acceptance of BUYERS offer to purchase or BUYERS purchase order is expressly made conditional on BUYERS assent to SELLERS terms and conditions as set forth herein and the rejection of any other terms.

1.2 Acceptance by BUYER of PRODUCT(S) or payment for same shall constitute unequivocal acceptance of the terms and conditions contained herein. None of any past practice, industry standards, course of dealing or usage of trade shall constitute a modification of any term or condition contained herein, nor shall same add any term not contained herein.

## 2. DELIVERY

2.1 BUYER will provide to SELLER written, detailed shipping instructions within a reasonable time prior to shipment. BUYER will be responsible for any increased costs or delays in delivery resulting from BUYERS failure to supply such instructions in a timely manner.
2.2 BUYER may not withhold payment in the event of delay caused by BUYER.
2.3 SELLER shall not be required to deliver in any month more than the monthly QUANTITY specified, or if no monthly QUANTITY is specified, more than the monthly pro rata amount of the maximum annual QUANTITY specified.
2.4 All shipments of PRODUCT(S) shall be made CPT (as defined by Incoterms 2000) place of manufacture, unless otherwise stated in the AGREEMENT.
2.5 All specified delivery dates refer to the completion of manufacture and availability for shipment of PRODUCT(S) and are SELLERS best estimates. SELLER reserves the right to modify the delivery dates with notice to BUYER.
2.6 Title shall pass to BUYER upon delivery to carrier.
2.7 In the event BUYER is unable to take delivery of any shipment or refuses delivery of a scheduled shipment, SELLER will store the shipment at BUYERS sole risk and expense and payment for such delayed shipment shall immediately become due.
2.8 BUYER warrants there will be no diversion of any PRODUCT(S) that is a) contrary to any applicable law; b) for resale and/or transfer to any party not a party to the AGREEMENT unless approved in writing by SELLER; or c) for shipment or use outside of the U.S., unless approved by SELLER in writing, and if so approved, BUYER warrants it will comply with all applicable laws, restrictions and regulations of the U.S. and other governments, including without limitation, the Export Administration Regulations, as amended, the U.S. Foreign Corrupt Practices Act of 1977, as amended, and the Office of Foreign Asset Control Regulations.
2.9 In instances of bulk carload, tank truck or tank car shipments, shippers weights, certified to by sworn weighmaster, shall govern. Unless otherwise specified, PACKING shall be Sellers standard packing.
2.10 If SELLERS railcars are utilized, BUYER shall use railcars only for transport of PRODUCT(S) from SELLER to BUYERS facilities and/or transfer and discharge of PRODUCT(S) at BUYERS facilities ("DESTINATION"). BUYER is allowed maximum free time of fifteen (15) consecutive days for each railcar following the first 7:00 a.m. after the agreed to and scheduled date of arrival of the loaded railcar at the DESTINATION ("MFT"). Unless there is a delay caused by SELLER, BUYER will pay SELLER a daily rental charge per railcar of $35 for each full day in excess of MFT until BUYER returns the railcar to the railroad. Such charge will be in addition to any demurrage charge levied by any third Party transportation company such as, but not limited to, railroad railcar storage charge. Payment will be due and payable upon receipt of an invoice specifying such car, period and charges. BUYER agrees to deliver the railcars in a safe condition, in good repair, in the same condition as when first received, and completely evacuated. BUYER shall return every railcar to the railroad at Destination or to reasonable location(s) designated in writing by SELLER. BUYER shall report to SELLER promptly in writing all loss or damage that may be sustained by any railcar or its tanks. BUYER shall visually inspect the railcars exterior(s) before return. BUYER is not responsible for any damages to railcars unless such damage results from BUYERS fault, willful misconduct or gross negligence. If BUYER is responsible, all railcar repair shall be for BUYERS account. BUYER will facilitate such repairs upon mutual agreement. BUYER agrees that in the event any railcar is ordered by BUYER to be loaded at less than a volume of 180,000 pounds, BUYER shall be required to pay deadfreight at the actual rate charged by the carrier.

## 3. FORCE MAJEURE

3.1 Neither party shall be held responsible for any loss, damage, delay or lack of delivery arising from fire; strikes, lockouts, injunction or other labor troubles; governmental intervention; war; riots; acts of terrorism; explosion; weather; flood; acts of God or nature; inability to obtain on terms acceptable to SELLER or a shortage of, fuel, power, raw materials, labor, containers or transportation; accident; breakage of machinery or other apparatus; disruption of normal supplier channels of distribution; or any other act or force beyond the affected partys reasonable control.
3.2 BUYER may cancel, without liability, deliveries suspended for at least thirty (30) days by SELLER for reasons stated in the previous section, but the AGREEMENT shall otherwise remain in effect.
3.3 SELLER reserves the right to allocate and fairly apportion PRODUCT(S) among its internal and external customers during force majeure events in any manner SELLER, in its sole discretion, deems appropriate.
3.4 SELLER shall have no obligation to acquire by purchase or otherwise any PRODUCT(S) that SELLER is unable to supply to BUYER due to force majeure events.

## 4. WARRANTY

4.1 SELLER warrants PRODUCT(S) will conform only to SELLERS standard specifications for same, unless otherwise agreed to herein. This warranty applies only to the original purchaser of the PRODUCT(S).
4.2 BUYER shall inspect all PRODUCT(S) for conformance to this warranty. BUYER shall notify SELLER of any non-conformance no later than the earlier of a) thirty (30) days from date of shipment by SELLER; or b) the date of use of the PRODUCT(S) by BUYER.
4.3 BUYERS sole remedy and SELLERS sole liability for claims of breach of warranty shall be SELLERS choice of either a) replacement by SELLER of conforming for non-conforming PRODUCT(S); or b) refund of monies paid by BUYER to SELLER for the non-conforming PRODUCT(S).
4.4 SELLER assumes no liability for any errors that are caused by the inaccuracy or incompleteness of BUYER-supplied data.
4.5 SELLER shall have the opportunity to inspect all PRODUCT(S) that BUYER claims are non-conforming. BUYER shall hold, at no cost to SELLER, the PRODUCT(S) pending such inspection. The conditions of any test of the PRODUCT(S) for conformance with any specification shall be mutually agreed upon and SELLER shall be notified of, and may be represented at, all tests that may be made by or for BUYER.
4.6 BUYER assumes all risk for misuse of the PRODUCT(S).
4.7 THIS WARRANTY IS GIVEN IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, STATUTORY OR OTHERWISE, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE WHICH ARE EXPRESSLY DISCLAIMED.
4.8 SELLER warrants that the PRODUCT(S) furnished hereunder shall be delivered free of any rightful claim of any unaffiliated third party for infringement of any U.S. patent. To the extent that any claim, suit, or proceeding is brought or threatened against BUYER based on an allegation that any PRODUCT(S) furnished hereunder infringes any claim of a third party's U.S. patent or if SELLER shall determine that such PRODUCT(S) could reasonably become the subject of such a claim, suit or proceeding, then SELLER, at its own expense and at its sole option, agrees: a) to defend BUYER and pay all damages and costs finally awarded, or b) to settle any threat, claim, suit, or proceeding, or c) to procure for BUYER the right to continue using said PRODUCT(S) or d) to replace the PRODUCT(S) with noninfringing PRODUCT(S), or e) to modify the PRODUCT(S) so it (they) becomes noninfringing, or f) to refund the purchase price, and f), then remove the PRODUCT(S). The foregoing states the entire liability of SELLER for patent infringement by the PRODUCT(S). This obligation shall be effective only if BUYER shall have made all payments then due hereunder and if SELLER is notified promptly in writing of any claim, suit, proceeding or threat thereof and is given the sole authority, information and assistance for the defense of said claim, suit, or proceeding. As to i) any PRODUCT(S) manufactured to BUYER'S specification or design, or ii) any combination or mixture of the PRODUCT(S) with other materials, or iii) any processes performed by or on the PRODUCT(S) furnished hereunder or the PRODUCT produced from such process, or iv) any modification or change to any PRODUCT(S) furnished hereunder, SELLER assume no liability whatsoever for patent infringement and BUYER will hold SELLER harmless against any infringement claim arising therefrom.

## 5. TERMINATION FOR DEFAULT

In the event BUYER commits a material breach of the AGREEMENT, SELLER may terminate the AGREEMENT upon thirty (30) days written notice; provided that during such notice period, BUYER shall have the opportunity to cure its default. If BUYER is in default, SELLER may suspend shipments during such cure period without liability.

## 6. LIMITATION OF LIABILITY

6.1 NOTWITHSTANDING ANY PROVISION IN THIS AGREEMENT OR ELSEWHERE TO THE CONTRARY: A) SELLERS MAXIMUM LIABILITY HEREUNDER AT ANY TIME FOR ANY CAUSE WHATSOEVER SHALL NOT EXCEED THE PRICE PAID FOR THE PRODUCT(S) AT ISSUE; AND B) SELLER SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL LOSS OR DAMAGE OF ANY KIND OR NATURE, ARISING AT ANY TIME, FROM ANY CAUSE WHATSOEVER, INCLUDING LOSS OF REVENUE OR PROFIT.
6.2 These limitations of liability shall apply notwithstanding any finding that any remedy fails its essential purpose.

## 7. LAWS

The AGREEMENT shall be construed, interpreted and controlled by the laws of the Commonwealth of Pennsylvania, and all claims arising out of or related to the parties relationship created by the AGREEMENT, whether in contract, tort or otherwise, shall be governed and decided pursuant to the laws of the Commonwealth of Pennsylvania, including Pennsylvanias statutes of limitations but not including its choice of laws rules. BUYER agrees to subject itself to the courts of said jurisdiction and that such venue shall be exclusive regarding disputes arising out of the AGREEMENT.

## 8. PRICES; PAYMENT TERMS

8.1 Unless otherwise stated herein, PAYMENT TERMS shall be Net 30 Days from the date of SELLERS invoice, and payments shall be made in U. S. dollars. All PRICES shown are exclusive of any applicable tax. Any tax that SELLER is required to collect pursuant to the sale of PRODUCT(S) hereunder shall be in addition to the PRICE and shall be entirely for BUYERS account.
8.2 SELLER may revise the PRICE, PAYMENT TERMS or SHIPPING TERMS by written notice dispatched not less than thirty (30) days prior to the effective date of such change. Failure of BUYER to provide written objection to such change within fifteen (15) days of receipt of notice from SELLER shall be considered acceptance of such change.
8.3 If in the sole judgment of SELLER, BUYERS financial ability to perform hereunder is altered, SELLER reserves the right, among any other right or remedy, to change PAYMENT TERMS, require full or partial advance payment or to cancel any outstanding order, without liability.
8.4 Any discount or rebate provided for in the AGREEMENT shall be accounted for exclusively on the basis of sales made to BUYER.
8.5 Notwithstanding any other provision in the AGREEMENT or elsewhere to the contrary, SELLER shall have the unilateral right to pass on to BUYER all fuel, freight, energy and/or similar surcharges.
8.6 Should BUYER at any time any shipment is due under the AGREEMENT receive a bona fide offer from another supplier at a lower price on equivalent or substitutable material of equal quality, in like quantity as the shipment involved, BUYER shall first provide written proof (reasonably satisfactory to SELLER) of same and SELLER shall then either supply such shipment at the lower price, or (if applicable) permit BUYER to purchase the specified quantity elsewhere, and the quantity so purchased elsewhere will be deducted from the minimum QUANTITY that BUYER is required to purchase under the AGREEMENT, however, the AGREEMENT shall otherwise remain unaffected. Adjustments resulting from the SELLERS having met a good faith offer from another supplier will be made with BUYER within thirty (30) days.
8.7 All PRICES in the AGREEMENT are exclusively for PRODUCTS sold directly to BUYER or BUYERS agent by SELLER.
8.8 SELLER shall retain a purchase money security interest in the PRODUCT(S) sold hereunder until all payments (including deferred payments, whether evidenced by notes or otherwise) shall have been received in full by SELLER and, if requested in writing to do so, BUYER agrees to do all acts necessary to perfect and maintain such security interest in SELLER.

## 9. PROPRIETARY INFORMATION

9.1 Any information disclosed by SELLER to BUYER incident to the performance of the AGREEMENT, including but not limited to information related to pricing, volumes or the financial terms of the AGREEMENT and the existence of the AGREEMENT itself is disclosed in confidence for the sole and exclusive use of BUYER. BUYER shall not publish or otherwise disclose such information to others without the express written consent of SELLER.
9.2 Nothing herein shall limit the BUYERS right to disclose any information provided by the SELLER hereunder which a) was furnished by the SELLER prior to the AGREEMENT without restriction; b) legitimately becomes knowledge available within the public domain; or c) is received by BUYER from a third party without restriction and without breach of this or any other AGREEMENT.
9.3 In the absence of a signed agreement to the contrary, no information disclosed by BUYER to SELLER shall be considered confidential.

## 10. AUTHORIZED MOLDERS

AUTHORIZED MOLDER shall be defined as a third party entity designated solely by BUYER as authorized to purchase PRODUCT(S) from SELLER during the TERM, by and on behalf of BUYER pursuant to the Conditions of Sale set forth herein. If SELLER, in its sole judgment, elects to sell PRODUCT(S) to an AUTHORIZED MOLDER, BUYER agrees to enter into a written agreement with such AUTHORIZED MOLDER that obligates AUTHORIZED MOLDER to (i) be bound by and comply with the Conditions of Sale set forth herein; and (ii) use PRODUCT(S) purchased by AUTHORIZED MOLDER hereunder solely for the manufacture of products/components for BUYER. At SELLERS request, BUYER shall provide SELLER with a copy of such written agreement. All AUTHORIZED MOLDERS must be listed on an ATTACHMENT attached hereto. Such list may be revised by BUYER from time to time by written notice to SELLER.

## 11. ADDITIONAL TERMS

11.1 This AGREEMENT may not be assigned by either party to any other party without the prior written consent of the other party hereto; provided, however, that (a) SELLER may assign its rights and obligations hereunder to any AFFILIATE of SELLER by written notice to BUYER; and (b) SELLER may assign its rights and obligations hereunder, by written notice to BUYER, to a third party successor or transferee (whether by merger, consolidation, purchase or otherwise) of either (1) all or substantially all of the assets of SELLER or (2) all or substantially all of the assets of the particular division of SELLER identified with this AGREEMENT. "AFFILIATE" shall mean, with respect to a party, any individual, corporation or other business entity that, either directly or indirectly, controls such party, is controlled by such party, or is under common control with such party. "Control" means possession of the power to direct, or cause the direction of the management and policies of a corporation or other entity whether through the ownership of voting securities, by contract or otherwise.
11.2 Return of PRODUCT for any reason whatsoever shall require prior written approval of SELLER.
11.3 BUYER warrants that no PRODUCT or part of any PRODUCT shall be utilized in any type of a) nuclear use whatsoever; b) weapons systems or other similar military use; or c) medical, food processing or FDA regulated use; unless otherwise agreed to herein by SELLER.
11.4 BUYER represents and warrants that a) it understands the nature and characteristics of the PRODUCT(S) and any hazards associated with its use; b) it will adequately instruct and warn all    persons, including all third parties, who may come in contact with, or be in the vicinity of, the PRODUCT(S) in the proper safe use and handling of the PRODUCT(S); c) it is not relying upon any representation, statement or other assertion made by SELLER or its representatives or agents, with respect to the suitability of the PRODUCT(S) for any purpose and that BUYER has made its own independent inquiry and testing and has formed an independent opinion concerning the suitability of the PRODUCT(S) for the end use, conversion or application intended; and d) it will not assert any claim against SELLER or hold SELLER liable, with respect to any information, testing or design furnished, or failure to be furnished, by SELLER, including, without limitation, technical advice or recommendations. SELLER assumes no obligation or liability for any technical assistance rendered incident to the AGREEMENT. Appropriate literature has been assembled which provides information concerning the health and safety precautions that must be observed when handling PRODUCTS. Before working with PRODUCTS, BUYER must read and become familiar with the available information on PRODUCT hazards, proper use, and handling. This cannot be overemphasized. Information is available in several forms. Consult SELLER representative for additional information.
11.5 BUYER acknowledges that PRODUCT(S) may not meet applicable government procurement requirements and that SELLER may not be able to provide information required by government procurement regulations; and SELLER shall have no liability whatsoever with respect to any requirements relating to, or arising from, any government procurement regulations, unless first agreed to in writing, signed by an authorized representative of SELLER.
11.6 No type of contractual obligation between BUYER and its customer(s) shall be applicable to, or create any liability with respect to, SELLER, whether via "pass-through", flow-down" or otherwise, and BUYER shall not otherwise represent to its customer(s) such purported SELLER liability.
11.7 The rights and obligations under Articles 4, 6, 7, 9 and 11 herein shall survive the cancellation, termination or expiration of the AGREEMENT.
11.8 Should any part of the AGREEMENT be deemed invalid by a court of law, it shall not constitute an invalidation of any other part of the AGREEMENT, which shall otherwise remain in effect.
11.9 Failure of SELLER to effect, or any delay by SELLER to effect, any available right or remedy shall not be construed to operate as a waiver of same.
11.10 Except as otherwise expressly provided, the AGREEMENT supercedes all prior agreements, understandings or otherwise, whether oral or written, between BUYER and SELLER concerning the subject matter of the AGREEMENT.
11.11 BUYER and SELLER expressly agree and acknowledge that the United Nations Convention for the International Sale of Goods shall not apply to the AGREEMENT.
11.12 SELLERS acceptance of a) payment; or b) specially endorsed checks shall not waive or limit any right or remedy of SELLER.
11.13 Nothing contained herein is intended nor shall be construed as creating a partnership, joint venture, agency, distributorship or any other relationship except buyer and seller.
11.14 All headings herein are for reference only.