Brian T. FitzGerald (BF-9411)
Senior Assistant County Attorney
Florida Bar No. 484067
Post Office Box 1110
Tampa, Florida 33601-1110
(813) 272-5670
Fax: (813) 272-9231
Attorney for Doug Belden,
Hillsborough County Tax Collector

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re           :

DELPHI CORPORATION, et al.           :
                                     :     Case No.: 05-44481 (RDD)
        Debtors.                     :
                                     :     (Jointly Administered)
_____/

## RESPONSE OF HILLSBOROUGH COUNTY TAX COLLECTOR TO DEBTORS THIRTEENTH OMNIBUS CLAIMS OBJECTION

Doug Belden, Hillsborough County, Florida Tax Collector (the "Tax Collector"), through his undersigned counsel, files this Response to the Thirteenth Omnibus Claims Objection of the Debtors and Debtors-in-Possession (Doc. No. 7825) (the "Objection") and the Notice of Objection to Claim which was directed to the Tax Collector, and states:

1. On or about May 9, 2006, the Tax Collector filed Claim No. 5372 in the amount of $860.67 in Debtors' Case No. 05-44640 (attached Exhibit "A").

2. The Tax Collector's Claim was filed as a secured claim for delinquent *ad valorem* business tangible personal property taxes for tax year 2005, for property located at 5201 South Westshore Blvd. in Tampa, Florida and owned by Delphi Automotive Systems LLC.

3. Pursuant to §§197.122(1) and 192.053, Florida Statutes, copies of which are attached as Exhibits "B" and "C", the Tax Collector's claim is given first lien secured status, superior to any and all other liens on the subject tangible personal property.

4. Under Florida law, the Tax Collector's secured lien status and priority is provided for by statute, and no further instrument evidencing or creating this security interest is required.

5. The Objection seeks to reclassify the Tax Collector's claim as a general unsecured claim. However, the Objection does not introduce any evidence whatsoever to rebut the presumption of validity of the Tax Collector's claim pursuant to Fed. R. Bankr. P. 3001(f), nor does the Objection set forth any basis for reclassifying the Tax Collector's claim to general unsecured status in contravention of the secured status granted by §§197.122(1) and 192.053, Florida Statutes.

WHEREFORE, the Tax Collector respectfully requests that the Court overrule and deny the Objection as it relates to the Tax Collector's Claim No. 5372.

Dated this 18 day of June, 2007.

Brian T. FitzGerald (BF-9411)
Senior Assistant County Attorney
Florida Bar No. 484067
Post Office Box 1110
Tampa, Florida 33601-1110
(813) 272-5670
Fax: (813) 272-5231
Attorney for Doug Belden, the
Hillsborough County Tax Collector

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Response has been furnished this 18 day of June , 2007, by Federal Express to **Delphi Corporation**, 5725 Delphi Drive, Troy, Michigan 48098 (Attn: General Counsel); **Skadden, Arps, Slate, Meagher & Flom LLP**, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (**Attn: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton**); and **The Honorable Robert D. Drain**, United States Bankruptcy Judge, Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

Brian T. FitzGerald (BF-9411)
Senior Assistant County Attorney

2

# PROOF OF CLAIM

UNITED STATES BANKRUPTCY COURT Southern DISTRICT OF New York

**Name of Debtor:** Delphi Automotive Systems LLC
**Case Number:** 05-44640

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):
Hillsborough County Tax Collector

**Name and address where notices should be sent:**
Hillsborough County Tax Collector
PO Box 172920
Tampa FL 33602

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

The Debtor has listed your claim as Contingent, Unliquidated, and Disputed on Schedule E as a Priority claim in an Unknown amount. If you believe that you have a claim against the Debtor, you are required to complete and return this form.

**Master Code:** 10000344

THIS SPACE IS FOR COURT USE ONLY

**Telephone number:**

**Account or other number by which creditor identifies debtor:**
42000.2452

Check here ☐ replaces
if this claim       a previously filed claim, dated:
         ☐ amends

**1. Basis for Claim**
☐ Goods Sold / Services Performed
☐ Customer Claim
☒ Taxes
☐ Money Loaned
☐ Personal Injury
☐ Other

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
   Last four digits of SS #: _____
   Unpaid compensation for services performed
   from _____ to _____
     (date)      (date)

**2. Date debt was incurred:** JAN 1, 2005

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ _____ (unsecured)  $860.67 (secured)  _____ (priority)  $860.67 (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☒ Other Tangible Taxes

Value of Collateral: $ 46500

Amount of arrearage and other charges at time case filed included in secured claim, if any: $

b☐6. Unsecured Nonpriority Claim $ _____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

EXHIBIT
A

**Date:** 4-24-06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
KAREN ISHAM

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

0544640060207175241000343

SCANNED

| | |
|---|---|
| 197.552 | Tax deeds. |
| 197.562 | Grantee of tax deed entitled to immediate possession. |
| 197.572 | Easements for public service purposes or for drainage or ingress and egress survive tax sales and deeds. |
| 197.573 | Survival of restrictions and covenants after tax sale. |
| 197.582 | Disbursement of proceeds of sale. |
| 197.592 | County delinquent tax lands; method and procedure for sale by county; certain lands conveyed to municipalities; extinction of liens. |
| 197.593 | Corrective county deeds without consideration or further notice. |
| 197.602 | Party recovering land must refund taxes paid and interest. |

**197.102 Definitions.**—As used in this chapter, the following definitions apply, unless the context clearly requires otherwise:

(1) "Department," unless otherwise specified, means the Department of Revenue.

(2) "Omitted taxes" means those taxes which have not been extended on the tax roll against a parcel of property after the property has been placed upon the list of lands available for taxes pursuant to s. 197.502.

(3) "Tax certificate" means a legal document, representing unpaid delinquent real property taxes, non-ad valorem assessments, including special assessments, interest, and related costs and charges, issued in accordance with this chapter against a specific parcel of real property and becoming a first lien thereon, superior to all other liens, except as provided by s. 197.573(2).

(4) "Tax notice" means the tax bill sent to taxpayers for payment of any taxes or special assessments collected pursuant to this chapter, or the bill sent to taxpayers for payment of the total of ad valorem taxes and non-ad valorem assessments collected pursuant to s. 197.3632.

(5) "Tax receipt" means the paid tax notice.

(6) "Tax rolls" and "assessment rolls" are synonymous and mean the rolls prepared by the property appraiser pursuant to chapter 193 and certified pursuant to s. 193.122.

(7) When a local government uses the method set forth in s. 197.3632, the following definitions shall apply:

(a) "Ad valorem tax roll" means the roll prepared by the property appraiser and certified to the tax collector for collection.

(b) "Non-ad valorem assessment roll" means a roll prepared by a local government and certified to the tax collector for collection.

History.—s. 127, ch. 85-342; s. 64, ch. 88-130; s. 3, ch. 88-216; s. 5, ch. 90-343.

**197.103 Deputy tax collectors; appointment.**—Tax collectors may appoint deputies to act in their behalf in carrying out the duties prescribed by law.

History.—s. 1, ch. 80-366; s. 9, ch. 81-284; s. 128, ch. 85-342.

Note.—Former s. 197.0122.

**197.122 Lien of taxes; dates; application.**—

(1) All taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year the taxes were levied until discharged by payment or until barred under chapter 95. All personal property tax liens, to the extent that the property to which the lien applies cannot be located in the county or to the extent that the sale of the property is insufficient to pay all delinquent taxes, interest, fees, and costs due, shall be liens against all other personal property of the taxpayer in the county. However, such liens against other personal property shall not apply against such property which has been sold, and such liens against other personal property shall be subordinate to any valid prior or subsequent liens against such other property. No act of omission or commission on the part of any property appraiser, tax collector, board of county commissioners, clerk of the circuit court, or county comptroller, or their deputies or assistants, or newspaper in which any advertisement of sale may be published shall operate to defeat the payment of taxes; but any acts of omission or commission may be corrected at any time by the officer or party responsible for them in like manner as provided by law for performing acts in the first place, and when so corrected they shall be construed as valid ab initio and shall in no way affect any process by law for the enforcement of the collection of any tax. All owners of property shall be held to know that taxes are due and payable annually and are charged with the duty of ascertaining the amount of current and delinquent taxes and paying them before April 1 of the year following the year in which taxes are assessed. No sale or conveyance of real or personal property for nonpayment of taxes shall be held invalid except upon proof that:

(a) The property was not subject to taxation;

(b) The taxes had been paid before the sale of personal property; or

(c) The real property had been redeemed before the execution and delivery of a deed based upon a certificate issued for nonpayment of taxes.

(2) A lien created through the sale of a tax certificate may not be foreclosed or enforced in any manner except as prescribed in this chapter.

(3) A property appraiser may also correct a material mistake of fact relating to an essential condition of the subject property to reduce an assessment if to do so requires only the exercise of judgment as to the effect on assessed or taxable value of that mistake of fact.

(a) As used in this subsection, the term "an essential condition of the subject property" means a characteristic of the subject parcel, including only:

1. Environmental restrictions, zoning restrictions, or restrictions on permissible use;

2. Acreage;

3. Wetlands or other environmental lands that are or have been restricted in use because of such environmental features;

4. Access to usable land;

EXHIBIT B

attributable to ad valorem taxes and special assessments.

(6)(a) Funds received by a managing entity or its successors or assigns from timeshare titleholders for ad valorem taxes or special assessments shall be placed in escrow as provided in this section for release as provided herein.

(b) If the managing entity is a condominium association subject to the provisions of chapter 718 or a cooperative association subject to the provisions of chapter 719, the control of which has been turned over to owners other than the developer, the escrow account must be maintained by the association; otherwise, the escrow account must be placed with an independent escrow agent, who shall comply with the provisions of chapter 721 relating to escrow agents.

(c) The principal of such escrow account shall be paid only to the tax collector of the county in which the timeshare development is located or to his or her deputy.

(d) Interest earned upon any sum of money placed in escrow under the provisions of this section shall be paid to the managing entity or its successors or assigns for the benefit of the owners of timeshare units; however, no interest may be paid unless all taxes on the timeshare development have been paid.

(e) On or before May 1 of each year, a statement of receipts and disbursements of the escrow account must be filed with the Division of Florida Land Sales, Condominiums, and Mobile Homes of the Department of Business and Professional Regulation, which may enforce this paragraph pursuant to s. 721.26. This statement must appropriately show the amount of principal and interest in such account.

(f) Any managing entity or escrow agent who intentionally fails to comply with this subsection concerning the establishment of an escrow account, deposits of funds into escrow, and withdrawal therefrom is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The failure to establish an escrow account or to place funds therein as required in this section is prima facie evidence of an intentional violation of this section.

(7) The tax collector shall accept only full payment of the taxes and special assessments due on the timeshare development.

(8) The managing entity shall have a lien pursuant to s. 718.121 or s. 721.16 on the timeshare periods for the taxes and special assessments.

(9) All provisions of law relating to enforcement and collection of delinquent taxes shall be administered with respect to the timeshare development as a whole and the managing entity as an agent of the timeshare period titleholders; if, however, an application is made pursuant to s. 197.502, the timeshare period titleholders shall receive the protections afforded by chapter 197.

(10) In making his or her assessment of timeshare real property, the property appraiser shall look first to the resale market.

(11) If there is an inadequate number of resales to provide a basis for arriving at value conclusions, then the property appraiser shall deduct from the original purchase price "usual and reasonable fees and costs of the sale." For purposes of this subsection, "usual and reasonable fees and costs of the sale" for timeshare real property shall include all marketing costs, atypical financing costs, and those costs attributable to the right of a timeshare unit owner or user to participate in an exchange network of resorts. For timeshare real property, such "usual and reasonable fees and costs of the sale" shall be presumed to be 50 percent of the original purchase price; provided, however, such presumption shall be rebuttable.

(12) Subsections (10) and (11) apply to fee and nonfee timeshare real property.

**History.**—s. 54, ch. 82-226; s. 28, ch. 83-264; s. 204, ch. 85-342; s. 1, ch. 86-300; s. 15, ch. 88-216; s. 12, ch. 91-236; s. 10, ch. 94-218; s. 1462, ch. 95-147.

**192.042　Date of assessment.**—All property shall be assessed according to its just value as follows:

(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed.

(2) Tangible personal property, on January 1, except construction work in progress shall have no value placed thereon until substantially completed as defined in s. 192.001(11)(d).

**History.**—s. 4, ch. 70-243; s. 57, ch. 80-274; s. 9, ch. 81-308; s. 5, ch. 2006-312.

**192.047　Date of filing.**—

(1) For the purposes of ad valorem tax administration, the date of an official United States Postal Service postmark of an application for exemption, an application for special assessment classification, or a return filed by mail shall be considered the date of filing the application or return.

(2) When the deadline for filing an ad valorem tax application or return falls on a Saturday, Sunday, or legal holiday, the filing period shall extend through the next working day immediately following such Saturday, Sunday, or legal holiday.

**History.**—s. 1, ch. 78-185.

**192.053　Lien for unpaid taxes.**—A lien for all taxes, penalties, and interest shall attach to any property upon which a lien is imposed by law on the date of assessment and shall continue in full force and effect until discharged by payment as provided in chapter 197 or until barred under chapter 95.

**History.**—s. 3, ch. 4322, 1895; GS 430; s. 3, ch. 5596, 1907; RGS 696; CGL 896; s. 1, ch. 18297, 1937; ss. 1, 2, ch. 69-55; s. 5, ch. 70-243; s. 30, ch. 74-382.
**Note.**—Former ss. 192.04, 192.021.

**192.071　Administration of oaths.**—For the purpose of administering the provisions of this law or of any other duties pertaining to the proper administration of the duties of the office of property appraiser, or of the filing of applications for tax exemptions as required by law, the property appraisers or their lawful deputies may administer oaths and attest same in the same manner and with the same effect as other persons authorized by law to administer oaths by the laws of the state.

**History.**—s. 9, ch. 17060, 1935; CGL 1936 Supp. 897(10); ss. 1, 2, ch. 69-55; s. 6, ch. 70-243; s. 1, ch. 77-102.
**Note.**—Former s. 192.20.

EXHIBIT
C