TOGUT, SEGAL & SEGAL LLP
Conflicts Counsel for Delphi Corporation, *et al.*,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Lara Sheikh (LS-0879)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br>DELPHI CORPORATION, *et al.*,<br>　　　　　　　　　　　　　　Debtors.<br>------------------------------------------------------------x | HEARING DATE: July 19, 2007<br>　　　　　　　AT: 10:00 a.m.<br><br>Chapter 11<br>Case No. 05-44481 [RDD]<br><br>Jointly Administered |

**DEBTORS' MOTION FOR AN ORDER
PURSUANT TO BANKRUPTCY RULE 9019 APPROVING SETTLEMENT
AGREEMENT WITH WACHOVIA BANK, N.A., AND LEXTRON CORPORATION**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

　　　　　Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors in possession, including Delphi Automotive Systems, LLC ("DAS LLC", together with Delphi, the "Debtors") in the above-captioned cases, by their undersigned counsel, as and for their motion (the "Motion") for an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement annexed hereto as Exhibit "1" (the "Settlement Agreement") by and among Wachovia Bank, N.A., as successor by merger to

SouthTrust Bank ("Wachovia") and Lextron Corporation ("Lextron") (together, the "<u>Claimants</u>") and the Debtors, respectfully represent that:

## BACKGROUND

**A.    The Debtors' Bankruptcy Cases**

1. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' Chapter 11 cases.

2. On October 17, 2005, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases. On April 28, 2006 the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

3. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicate for the relief requested herein is Rule 9019 of the Bankruptcy Rules.

**B.    Current Business Operations of the Debtors**

5. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of approximately $26.4 billion

and global assets of approximately $15.4 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6. The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

7. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of

---

[1] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates, as discussed in the Company's Form 10-k filed on February 27, 2007.

[2] On March 20, 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plan in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding. The application was approved by the Spanish Court on April 13, 2007. The Concurso proceeding does not affect other Delphi legal entities in Spain or elsewhere and is an isolated event that is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

3

customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

**C.    Events Leading To The Chapter 11 Filing**

8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

9.    The Debtors believe that the Company's financial performance has deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

**D.    The Debtors' Transformation Plan**

11.    On March 31, 2006, the Company outlined five key tenets of its transformation plan. First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business. Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company. Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus. Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[4] Finally, the Debtors must devise a workable solution to their current pension situation.

12.    On December 18, 2006, the Debtors marked another milestone in their chapter 11 cases with the announcement of two significant agreements. The first of these was an equity purchase and commitment agreement (the "Equity Purchase and Commitment Agreement") with affiliates of Appaloosa Management L.P., Cerberus Capital Management, L.P., and Harbinger Capital Partners Master Fund I, Ltd., as well

---

[4]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

5

as Merrill Lynch & Co. and UBS Securities LLC (collectively, the "Plan Investors"). Under the Equity Purchase and Commitment Agreement, the Plan Investors have agreed to invest up to $3.4 billion in preferred and common equity in the reorganized Delphi to support the Debtors' transformation plan. The Equity Purchase and Commitment Agreement is subject to the completion of due diligence, satisfaction or waiver of numerous other conditions (including Delphi's achievement of consensual agreements with its principal U.S. labor unions and GM), and the non-exercise by either Delphi or the Plan Investors of certain termination rights. The second agreement was a plan framework support agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM. The Plan Framework Support Agreement outlines certain proposed terms of the Debtors' anticipated plan of reorganization, including the distributions to be made to creditors and shareholders, the treatment of GM's claims, the resolution of certain pension funding issues, and the corporate governance of the reorganized Debtors. The terms of the Plan Framework Support Agreement are expressly conditioned on the Debtors' reaching consensual agreements with their U.S. labor unions and GM.

    13.  On January 12, 2007, this Court authorized the Debtors to execute, deliver, and implement the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement (Docket No. 6589). On February 28, 2007, Delphi entered into an amendment to the Equity Purchase and Commitment Agreement with the Plan Investors to extend the date by which the Company, the Cerberus Capital Management, L.P. affiliate, or the Appaloosa Management L.P. affiliate had the right to terminate the agreement on account of not yet having completed tentative labor agreements with Delphi's principal U.S. labor unions and a consensual settlement of legacy issues with GM. The amendment extended the termination right pursuant to a

14-day notice mechanism. The amendment also extended the deadline to make certain regulatory filings under the federal antitrust laws in connection with the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement.

14.     On April 19, 2007, Delphi announced that the Debtors anticipated negotiating changes to the Equity Purchase and Commitment Agreement and the Plan Framework Support Agreement. The Debtors do not believe that these developments will preclude the Debtors from filing a joint plan of reorganization and related documents with the Court prior to the current expiration of the exclusivity period on July 31, 2007 or emerging from chapter 11 reorganization this year. The Debtors also confirmed that none of the parties entitled to give notice of termination of the framework agreements has done so as of the date of this filing and that these agreements remain effective as previously filed until modified or terminated.

15.     Although much remains to be accomplished in the Debtors' reorganization cases, the Debtors and their stakeholders are together navigating a course that should lead to a final, consensual resolution with their U.S. labor unions and GM while providing an acceptable financial recovery framework for the Debtors' stakeholders. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

**RELIEF REQUESTED**

16.     The Debtors seek approval of the Settlement Agreement in the form attached hereto as Exhibit "1" with Wachovia and Lextron pursuant to Bankruptcy Rule 9019.  As described below, the Settlement Agreement resolves all of the disputes among the Debtors and the Claimants, including the elimination of more than $7 million in claims that have been asserted against the Debtors' estates and certain of the Debtors' employees.  Because the Settlement Agreement provides for mutual releases of the Debtors and the Claimants with respect to the claims and actions being settled, notice of this Motion is being provided to the parties to the Mississippi State Court Action (as defined below) and the Mississippi Federal Court Action (defined below) and the Internal Revenue Service, which has asserted claims against Lextron.  For the reasons set forth below, the Debtors have concluded that the settlement embodied in the Settlement Agreement is fair and equitable, falls well within the range of reasonableness, is in the best interest of the Debtors' estates and should be approved.

**BASIS FOR RELIEF**

A.     Background to the Proposed Settlement Agreement

   (i)     The Lextron and Wachovia Claims

17.     On July 14, 2006, Lextron filed proofs of claim numbers 9524 ("Claim 9524") and 9807 ("Claim 9807") (together, the "Lextron Claims") against Delphi and DAS LLC, respectively, and asserted an unsecured non-priority claim in the amount of $800,000, plus incidental and punitive damages in amounts to be determined.  Lextron has asserted that Delphi and DAS LLC wrongfully terminated Lextron as a supplier, and Lextron asserted its claims for damages in counterclaims against DAS LLC in a replevin action that DAS LLC commenced against Lextron in the

8

United States District Court for the Southern District of Mississippi (Jackson) (the "Mississippi Federal Court Action") during March 2003 to recover certain equipment and monetary damages from Lextron.

18. On July 31, 2006, Wachovia filed proofs of claim numbers 14912 ("Claim 14912") and 14913 ("Claim 14913") (together, the "Wachovia Claims") against Delphi and DAS LLC, respectively, as unsecured non-priority claims, each in the amount of $6,656,624.92. Wachovia first asserted its Claims in a Complaint, as amended, in its action against the Debtors and one of the Debtors' employees[5], in the Circuit Court for the Second Judicial District of Hinds County Mississippi (the "Mississippi State Court Action") to recover compensatory damages, attorneys' fees and costs, and punitive damages.

19. On October 31, 2006, the Debtors objected to the Lextron Claims pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection").

20. On November 22, 2006, Lextron filed its Response to Debtors' Third Omnibus Claims Objection (Docket No. 5757) (the "Lextron Response").

21. Subsequently, on April 27, 2007, the Debtors objected to Wachovia's Claim 14912 pursuant to the Debtors' (i) Twelfth Omnibus Objection

---

[5] Wachovia sought to further amend its Complaint to include additional employees of the Debtors. That request was denied.

9

(Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Duplicate and Amended Claims and (b) Equity Claims (Docket No. 7824) (the "Twelfth Omnibus Claims Objection").

22. On April 27, 2007, the Debtors objected to Wachovia's Claim 14913 pursuant to the Debtors' (i) Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims; (b) Claims Not Reflected on Debtors' Books and Records; (c) Protective Insurance Claims; (d) Insurance Claims Not Reflected on Debtors' Books and Records; (e) Untimely Claims and Untimely Tax Claims; and (f) Claims Subject to Modification, Tax Claims Subject to Modification, and Claims Subject to Modification and Reclamation Agreement (Docket No. 7825) (the "Thirteenth Omnibus Claims Objection").

23. On May 24, 2007, Wachovia filed its Response to Debtors' Thirteenth Omnibus Claims Objection (Docket No. 8025) (the "Wachovia Response").

(ii) <u>Wachovia's Motion for Relief From the Automatic Stay and Appeal</u>

24. On November 29, 2006, Wachovia filed its Motion (the "Stay Relief Motion") for an Order pursuant to 11 U.S.C. § 362 modifying the automatic stay, if applicable, to proceed with litigation against Larry Graves ("Graves"), a non-Debtor Delphi employee, in the Mississippi "State Court Action (Docket No. 5951).[6]

25. On May 2, 2007, this Court entered its Order denying the Stay Relief Motion in its entirety (the "Order Denying Stay Relief") (Docket No. 7840).

---

[6]    A more expansive description of the State Court Action is contained in the Stay Relief Motion.

10

26. On May 3, 2007, Graves filed his Motion for Expenses and Fees against Wachovia in the Mississippi State Court Action (the "Sanctions Motion"). On June 1, 2007, Wachovia filed its Response to the Sanctions Motion.

27. By a Notice of Appeal, dated May 11, 2007, Wachovia appealed (the "Wachovia Appeal") from the Order Denying Stay Relief to the United States District Court for the Southern District of New York (the "New York District Court").

28. In light of the parties' proposed settlement, on June 25, 2007, the New York District Court entered its Consent Order and stayed the Wachovia Appeal and tolled all briefing deadlines.

(iii) The Mediation

29. Delphi advised Wachovia that the Debtors objected to the Wachovia claims. Delphi and Wachovia agreed to attempt to mediate a settlement of that objection and they selected the Honorable Francis G. Conrad (Retired) to serve as mediator; the Parties submitted written mediation statements to Judge Conrad.

30. On March 16, 2007, Wachovia and Delphi attended a mediation session in Jackson, Mississippi. However, that mediation session ended without a settlement having been reached.

31. Judge Conrad presided over continued negotiations which occurred by telephone conferences and other communications throughout March and April 2007. Ultimately, the Parties were unable to settle because Wachovia was unwilling to compromise its claims and the Lextron Claims, even though Wachovia has rights to the Lextron Claims pursuant to its Collateral Assignment agreement with Lextron.

32.     On June 18, 2007, the Parties attended a continued mediation (the "Mediation") that this time included Lextron, and which was conducted and supervised by Judge Conrad in New York City.[7]

33.     The mediation was successful and Delphi, Wachovia and Lextron reached a global settlement which resolves:  the Third, Twelfth and Thirteenth Omnibus Claims Objections with respect to the Wachovia Claims and the Lextron Claims;  the Mississippi State Court Action;  the Mississippi Federal Court Action;  the Wachovia Appeal;  and the Sanctions Motion.

B.     The Proposed Settlement Agreement

34.     After diligence and extensive arms-length negotiations among the Debtors, Wachovia and Lextron, and under the supervision of Judge Conrad, the Parties have negotiated the Settlement Agreement, subject to Bankruptcy Court approval, the significant portions of which are[8]:

a)  Condition Precedent.  The Settlement Agreement will be effective upon the entry of an Order by this Court approving the Settlement Agreement and such Order becoming a Final Order (the "Effective Date");[9]

b)  Wachovia's Allowed General Unsecured Non-Priority Claim and Waiver Of Rights.  The Debtors acknowledge and agree that Claim 14193 will be allowed against DAS LLC in the amount of five hundred thousand dollars ($500,000.00).  Claim 14193 will be treated as a pre-petition general unsecured non-priority claim.  Wachovia, on its behalf and on behalf of each of its predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents (the "Wachovia Releasing Parties"), acknowledges that the allowance of Claim 14193 is in full satisfaction of the Wachovia Claims and Wachovia waives any and all rights to assert

---

[7]     A Declaration by Judge Conrad concerning the parties' mediation is annexed hereto as Exhibit "2."

[8]     This Motion provides a summary of the Settlement Agreement.  The provisions of the Settlement Agreement attached hereto as Exhibit 1 govern the Parties' agreement.

[9]     The Parties agreed that approval of the Settlement Agreement by this Court would be sought by Delphi upon notice to parties in interest, including, without limitation, the Internal Revenue Service, which has asserted liens against the Lextron Claims.

12

that Claim 14193 is anything but a pre-petition general unsecured non-priority claim against any and all of the Debtors other than DAS LLC and any of their officers, directors owners, employees and agents.  The Wachovia Releasing Parties further release and waive any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Wachovia Claims and which the Wachovia Releasing Parties have, ever had, or thereafter will have against the Debtors and each of their predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents, including, without limitation, Graves and Building Business Knowledge ("BBK") based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission occurring before the Petition Date which relate to the Wachovia Claims, the Lextron Claims, the Mississippi State Court Action and/or the Mississippi Federal Court Action.  On the Effective Date, Claim 14192 will be expunged;

  c) <u>Withdrawal of Lextron Claims</u>. Lextron, on its behalf and on behalf of each of its predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents (the "<u>Lextron Releasing Parties</u>"), acknowledges and agrees that the Lextron Claims will be deemed withdrawn, with prejudice, on the Effective Date.  The Lextron Releasing Parties release and waive any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Lextron Claims and which the Lextron Releasing Parties have, ever had, or thereafter shall have against the Debtors and each of their current, former and future officers, directors, owners, employees, including, without limitation, Graves, and the Debtors' agents, including, without limitation, BBK, based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission relating or in any way connected to the Lextron Claims;

  d) <u>Withdrawal of Responses</u>.  On the Effective Date, each of the Claimants' respective Responses to the Third, Twelfth and Thirteenth Omnibus Claims Objection will be deemed withdrawn, with prejudice, and without the need for any further writing;

  e) <u>Withdrawal of Sanctions Motion</u>.  Promptly after the Effective Date, the Debtors will cause the Sanctions Motion to be withdrawn, with prejudice;

  f) <u>Withdrawal of Mississippi State Court Action</u>.  Promptly after the Effective Date, each of the Parties will file such documents and do such things necessary to withdraw, with prejudice, the Mississippi State Court Action, including, without limitation, all complaints, counter-claims and cross-claims, and they will stipulate to the discontinuance of the Mississippi State Court Action with prejudice, with each Party to bear its own costs and expenses, including, without limitation, attorneys' fees;

  g) <u>Withdrawal of Mississippi Federal Court Action</u>.  Promptly after the Effective Date, each of the Parties will stipulate to and will cooperate with the filing of

13

any papers necessary to discontinue the Federal Court Action, with prejudice, with each Party to bear its own costs and expenses, including, without limitation, attorneys' fees;

       h)  <u>The Stay Relief Appeal</u>.  Promptly after the Effective Date, Wachovia will withdraw the Wachovia Appeal, with prejudice, with each Party to bear its own costs and expenses, including, without limitation, attorneys' fees;  and

       i)  <u>Mutual Releases</u>.  Other than as expressly set forth in the Settlement Agreement, the Parties on their own behalf and on behalf of each of their predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents release and waive any right to assert any claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at the time of the Settlement Agreement, which relate to the Lextron Claims, the Wachovia Claims, the Mississippi State Court Action, the Mississippi Federal Court Action, the Wachovia Appeal and the Sanction Motion, against any of the Parties or any of their respective predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents, including, without limitation every party to the Mississippi State Court Action and the Mississippi Federal Court Action and BBK.

       35.     Given the significant cost of litigation regarding the Wachovia Claims and the Lextron Claims, the results of which are not certain, the reduction of Claim 14193 by $6,156,625.00, the elimination of duplicate Claim No. 14192, and the elimination of the Lextron Claims totaling at least $800,000[10] along with the dismissal of the Wachovia Appeal and Mississippi litigation, the Debtors have concluded that the Settlement Agreement is fair and reasonable and in the best interests of the Debtors and their creditors.

## Applicable Authority

       36.     The Debtors respectfully request the entry of an Order pursuant to Rule 9019(a) of the Bankruptcy Rules approving the Settlement Agreement and the settlement terms contained therein.  Bankruptcy Rule 9019 provides, in relevant part,

---

[10]    Lextron has informally asserted that its claims for consequential and punitive damages is a multiple of the $800,000 principle claim that it has asserted.  Delphi has asserted that those claims are precluded by its General Terms and Conditions which governed its contractual relationship with Lextron.

14

that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are "a normal part of the process of reorganization …." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Comm'ns Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

37. Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate. See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Comm'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it."). In general, compromises in the bankruptcy context should be approved unless they "'fall below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

38. The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate: (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors. TMT Trailer Ferry, 390 U.S. at 424-

15

25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

39.   Courts in this district have further elaborated on these factors to consider, including: (a) the balance between the likelihood of plaintiffs' or defendants' success should the case go to trail vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the competency and experience of counsel who support the settlement, and (d) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. Adelphia Comm'ns, 327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 802 (Bankr. S.D.N.Y. 1988).

40.   The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances. See Adelphia Comm'ns, 327 B.R. at 159-60; see also Penn Centr., 596 F.2d at 1114. Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable, "In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities'". In re Telesphere Comm'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted). To that end, courts should not substitute their own judgment for that of the debtor, but rather should "'canvas the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'" Adelphia Comm'ns, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17 F.3D 600 (2d Cir. 1994).

16

05-44481-rdd    Doc 8434-1    Filed 06/29/07    Entered 06/29/07 12:33:15    Pleading
9019 Motion    Pg 17 of 18

41. The Settlement Agreement provides for the immediate consensual resolution of the objections to the Wachovia and Lextron Claims and related litigation in this Court, the New York District Court and the Mississippi State and Federal Courts and obviates the cost and delay of those litigations.

42. The proposed settlement eliminates more than $7 million claims against the Debtors' estates (in principle) and the risks attendant to litigation of objections of those Claims. Moreover, the proposed Settlement Agreement eliminates the litigation risk concerning the Wachovia Appeal and the Sanctions Motion. Prosecution of the Debtors' objections to the Wachovia and Lextron Claims, the Wachovia Appeal and the Sanctions Motion would also necessarily divert the Debtors' time and resources away from their efforts to conclude their reorganization efforts.

43. Based upon the foregoing, the Debtors respectfully submit that the Settlement Agreement is an appropriate exercise of the their business judgment and represents a fair, reasonable and extensively negotiated settlement that falls within the range of reasonableness, and which is in the best interests of the Debtors' estates.

## Notice

44. Notice of this Motion has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. Sections 102(a) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures (Docket No. 5418) and the Settlement Procedures Order. Notice of this Motion has also been provided to the Internal Revenue Service and the parties to the Mississippi State Court Action and the Mississippi Federal Court Action. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum of Law

45. Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (a) authorizing and approving the Settlement Agreement and (b) granting them such other and further relief as is just.

Dated:  New York, New York
         June 29, 2007

                                DELPHI CORPORATION, *et al.*
                                By their attorneys,
                                TOGUT, SEGAL & SEGAL LLP
                                By:

                                 /s/ Neil Berger
                                ALBERT TOGUT (AT-9759)
                                NEIL BERGER (NB-3599)
                                Members of the Firm
                                One Penn Plaza
                                New York, New York 10119
                                (212) 594-5000