UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
    DELPHI CORPORATION,                          :
                                                    :    Case No. 05-44481(RDD)
                 *et al.*,                          :
                                                    :    Jointly Administered
                Debtors.                       :
---------------------------------------------------------- x

**FIRST INTERIM APPLICATION OF W.Y. CAMPBELL & COMPANY FOR
COMPENSATION AND REIMBURSEMENT EXPENSES**

| | |
|---|---|
| Name of Applicant: | W.Y. Campbell & Company |
| Authorized to Provide Professional Services to: | DELPHI CORPORATION, et al. |
| Date of Retention: | As of September 1, 2006 |
| Period for which compensation and reimbursement are sought: | September 1, 2006 through May 31, 2007 |
| Amount of compensation sought as actual, reasonable, and necessary: | $ 450,000.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $ 53,778.18 |

This is a(n):  ___ Monthly    _X_ Interim    ___ Final Application

If this is not the first application filed, disclose the following for prior application:

| Date Filed | Period Covered | Requested Fees | Requested Fees | Approved Fees | Approved Fees |
|---|---|---|---|---|---|
| NA | NA | NA | NA | NA | NA |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
In re:                                        :    Chapter 11
                                              :
    DELPHI CORPORATION,                       :
                                              :    Case No. 05-44481(RDD)
        *et al.*,                             :
                                              :    Jointly Administered
              Debtors.                        :
———————————————————————— x

### FIRST INTERIM APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT EXPENSES

W.Y. Campbell & Company ("W.Y. Campbell") as financial advisor and investment banker for Delphi Corporation and its Subsidiaries and Affiliates (collectively, "Delphi") as Debtors and Debtors-in-Possession in the above captioned cases (the "Reorganization Cases"), submits this Interim Application (the "Interim Application") seeking interim allowance and payment of compensation for the period from September 1, 2006 through May 31, 2007 (the "Application Period") under (i) 11 U.S.C. §§ 330 and 331 (the "Bankruptcy Code"), (ii) Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Case (the "Amended Guideline"), (iv) the Order of this Court dated November 4, 2005 as amended (the "Fee Order") establishing Monthly Compensation and Reimbursement of Expenses of Chapter 11 Professionals, and (v) the Order of this Court, dated December 4, 2006 (the "Retention Order") Authorizing Retention of W.Y. Campbell & Company as Investment Banker and Financial Advisor for the Debtors, *nunc pro tunc* to September 1, 2006. See **Exhibit A**, Retention Order.

05-44481-rdd    Doc 8511    Filed 07/10/07    Entered 07/10/07 15:27:50    Main Document
Pg 3 of 15

As more fully described below, W.Y. Campbell submits this Interim Application for allowance of compensation for professional services as financial advisors and investment bankers rendered by W.Y. Campbell to Delphi. W.Y. Campbell certifies that the Debtors and their reorganization counsel have received a copy of this Interim Application and that a copy has been served on the office of the U.S. Trustee and Counsel for the Official Committee of Unsecured Creditors. In support of this Interim Application, W.Y. Campbell respectfully represents as follows:

## BACKGROUND

1. On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1130, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code. This court entered orders directing the joint administration of the Debtor's chapter 11 cases (docket nos. 28 and 404).

2. On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases.

3. On May 5, 2006 the Bankruptcy Court entered its Order (Docket No. 3630) establishing a Fee Committee, which thereafter established its Fee Protocol.

## RETENTION OF W.Y. CAMPBELL

4. By letter agreement dated October 17, 2006, and amended as of November 16, 2006 (the "Engagement Letter"), the Debtors retained W.Y. Campbell to assist Debtors with the formulation, analysis, negotiation, and implementation of the divestiture or other strategic initiatives relating to the Debtors' Mount Business. A copy of the Engagement Letter is attached as **Exhibit B**.

5. W.Y. Campbell refers this Court to the Engagement Letter for a full recitation of its terms. In sum, Debtors retained W.Y. Campbell to:

    a. to the extent deemed desirable by the Debtors, identify, review, evaluate, and initiate potential M&A Transactions or other transactions;

    b. to the extent W.Y. Campbell deems necessary, appropriate, and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Mount Business;

    c. assist in the definition of objectives related to value and terms of divestiture;

    d. assist in identification of the Mount Business' proprietary attributes;

    e. assist in the identification and solicitation of appropriate transaction parties;

    f. prepare and distribute confidentiality agreements and appropriate descriptive selling materials (to include Offering Memorandums, Management Presentations, and other documentation as may be required or appropriate);

    g. the initiation of discussions and negotiations with prospective transaction parties;

    h. assist the Company and its other professionals in reviewing and evaluating the terms of any proposed M&A Transactions or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for an M&A Transaction or other transaction, whether in connection with a Plan or otherwise;

    i. review and analyze any proposals the Company receives from third parties in connection with an M&A Transaction and other transactions;

j.     assist or participate in negotiations with the parties in interest in connection with an M&A Transaction or other transaction;

k.     advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company may determine to be necessary or desirable;

l.     if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed Plan;

m.     assist the Debtors' internal and external counsel to enable counsel to provide legal advise to the Company; and

n.     render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

## COMPENSATION

6.     Pursuant to the Engagement Letter and as more fully set forth in Retention Order, in consideration for the services provided to the Debtors, the Debtors have agreed to pay W.Y. Campbell the following amounts, pursuant to Section 328 of the Bankruptcy Code, and subject to the final approval of the Bankruptcy Court:

a.     Commencing as of the effective date of the Engagement letter, and whether or not a M&A Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the first day of each month.

b.     A fee (the "M&A Fee") equal to the greater of (i) product of (A) the Aggregate Consideration as defined on Exhibit C to the Engagement letter times (b) 1.75%, or (ii) $1,250,00.00. The M&A Fee shall be due and payable upon the closing of such M&A Transaction.

c.     To the extent that services of the type described in Paragraph 5(L) are requested, representative of W.Y. Campbell shall be paid $750 per hour for all time spent testifying at such hearings and shall not be paid for preparation time or time spent in court while not testifying.

4

    d.    To the extent the Debtors request W.Y. Campbell to perform additional services not contemplated by this Agreement, such additional fees shall be mutually agreed upon by W.Y. Campbell and the Debtors, in writing, in advance.

7.    Pursuant to the Engagement Letter and the Retention Order, the Debtors will reimburse W.Y. Campbell for reasonable out-of-pocket expenses incurred in connection with the provision of services under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of W.Y. Campbell's outside counsel. Out-of-pocket expense include expenses incurred in connection with travel and lodging, data processing and communication charges, database, research, postage and courier services.

8.    W.Y. Campbell recently submitted a statement of fees and disbursements covering the period from September 1, 2006 through May 31, 2007 seeking $360,000.00 representing 80% of its Monthly Advisory Fees from September 2006 through May 2007 and $53,778.18 in out-of-pocket expenses to (i) the Debtors, (ii) counsel for the Debtors, (iii) counsel for the official committee of unsecured creditors, (iv) the Office of the United States Trustee, (v) counsel for the agent under the Debtors' pre-petition credit facility, (vi) counsel for the agent under the Debtors' post-petition credit facility and (vii) members of any Committee appointed in these cases for the purpose of reviewing fees and expenses.

## RELIEF REQUESTED

9.    By this Application, W.Y. Campbell seeks an Order (i) granting interim allowance and approval of compensation for services rendered during the period September 1, 2006 though and including May 31, 2007 (the "Relevant Period") consisting of $450,000 of fees plus the reimbursement of reasonable and necessary expenses incurred by W.Y. Campbell during the relevant period in the amount of $53,778.18, (ii) authorizing and directing the Debtors to make payments in respect of 100% of such fees, to the extent not yet received by W.Y. Campbell

5

for the Relevant Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order, and (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by W.Y. Campbell for the Relevant Period.

10. W.Y. Campbell performed all services for which it seeks compensation for and on behalf of the Debtors. W.Y. Campbell has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

11. Attached as **Exhibit C** are invoices for the total compensation and expenses sought by W.Y. Campbell for the Relevant Period and a breakdown of W.Y. Campbell's expenses incurred during the Relevant Period. Attached as **Exhibit D** are daily time logs detailing the activities and services performed by W.Y. Campbell on behalf of the Debtors during the Relevant Period. The resumes of key professional of W.Y. Campbell providing services to the Debtors are attached as **Exhibit E**.

## LEGAL BASIS FOR REQUESTED COMPENSATION

12. W.Y. Campbell is entitled to receive the fees requested in accordance with the express terms of the Engagement Letter and the provisions of Section 328(a) of the Bankruptcy Code which permits a debtor, with the Court's approval, to employ a professional person "on reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

13. Moreover, Section 330 of the Bankruptcy Code provides for the award of compensation to professionals "subject to" the provisions of Section 328 of the Bankruptcy Code. 11 U.S.C. § 330.

6

14. Congress intended Section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). See also *Donaldson, Lufkin, & Jenrette Sec. Corp. v. Nat'l Gypsum Co.*, 123 F.3d 861, 862-63 (5th Cir. 1997)("[I]f the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

15. Pursuant to the Retention Order, this Court approved the retention of W.Y. Campbell under the terms of the Engagement Letter, subject to the standard of review provided under Section 328(a). See Exhibit A at ¶ 4.

16. The compensation for services rendered during the Relevant Period has been earned and is due and payable in full under the terms of the Engagement Letter. W.Y. Campbell submits that there have been no developments since the entry of the Retention Order that were "not capable of being anticipated" and that would justify any modification to the terms of W.Y. Campbell's retention. Thus, W.Y. Campbell submits that the fees and expense reimbursements sought should be allowed and approved by the Court under Sections 328(a) and 330 of the Bankruptcy Code.

17. Senior level professionals with extensive experience in the area of investment banking and bankruptcy have directed W.Y. Campbell's team. The services rendered by W.Y. Campbell have been performed by Andre A. Augier, Managing Director; Kurt Haras, Director; Gregory McGowan, Senior Associate; and Alexander Schroeder, Analyst. W.Y. Campbell's assigns seniors bankers, experienced junior bankers, and financial analysts to each restructuring

assignment. In this case, Andre A. Augier has overall responsibility for the case. His responsibilities include developing strategy with respect to the case, directing negotiations, and interfacing with other senior professionals involved with the case. Kurt Haras is responsible for the day-to-day coordination of the case and the review of the financial analyses. As the experienced junior banker on the case, Gregory McGowan assists in the day-to-day coordination of the case and performs, with the analyst Alexander Schroeder, extensive financial analyses. Mr. Augier, Mr. Haras, Mr. McGowan, and Mr. Schroeder coordinate their actions so as not to duplicate efforts. Given the different roles of these professionals and overlapping responsibilities, there are times where it is appropriate for two or more bankers to be present at a meeting.

18. The amount of fees and expenses sought in this application and W.Y. Campbell's billing process are consistent with market practices for investment banking firms both in and out of a bankruptcy context.

19. W.Y. Campbell does not bill its clients based on the number of hours expended by its professionals. It generally bills its client on a retainer basis (generally monthly), plus a transaction fee or fee based upon completion. As a result, W.Y. Campbell does not have hourly rates for its professionals and W.Y. Campbell's professionals generally do not maintain time records for the work performed for its client. Consistent with the terms of the Retention Order, however, W.Y. Campbell has maintained daily time logs detailing the activities and services performed by its professionals on behalf of the Debtors, in half-hour increments, during the Relevant Period. A copy of these records is attached as **Exhibit D**.

20. In light of the complexity of this case, as well as the corporate and financial structure of the Debtors, the amount of activity during the Relevant period, and the level of

8

services rendered by W.Y. Campbell to the Debtors, W.Y. Campbell considers the compensation sought both fair and reasonable. In addition, it is consistent with the terms of the Engagement Letter.

## SUMMARY OF SERVICES RENDERED

21. All services rendered by W.Y. Campbell during the Relevant Period were performed at the request or direction of the Debtors or legal professionals of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") or O'Melveny & Myers LLC ("O'Melveny").

22. During the Relevant Period, W.Y. Campbell has provided a broad range of necessary financial advisory services with respect to the formulation, analysis, negotiation, and implementation of the divestiture or other strategic initiatives relating to the Debtors' Mount Business. Major areas of effort performed during the Relevant Period can be summarized into the following general categories:

A. Formulating and Analyzing Strategic Initiatives Relating to the Debtors' Mount Business

23. From September 2006 through December 2006, W.Y. Campbell formulated and analyzed various strategic initiatives relating to the Debtors' Mount Business. W.Y. Campbell then began executing the transaction process which included drafting the offering memorandum, preparing and refining the strategic and financial buyers lists, and drafting the confidential profile to be distributed to interested parties. Furthermore, W.Y. Campbell collaborated with management during this time to review and refine proforma financials to be distributed to interested parties.

B.   Marketing the Mount Business and Negotiating with Prospective Buyers

24. In January 2007, W.Y. Campbell began actively marketing the Debtors' Mount Business to interested parties. W.Y. Campbell made initial contact with interested parties and

9

subsequently sent confidential profiles to 120 of these parties resulting in 36 prospective buyers receiving offering memorandum.

25.  In addition to drafting the offering memorandum received by the interested parties, W.Y. Campbell prepared other appropriate descriptive selling materials including Management Presentations to be conducted for the management of prospective buyers. As a result of W.Y. Campbell's efforts, in April 2007, W.Y. Campbell coordinated and conducted 8 management presentations with prospective buyers. W.Y. Campbell then facilitated factory tours, distributed draft term sheets, and facilitated data room access and additional requested data to these prospective buyers. Finally, W.Y. Campbell coordinated due diligence requests between prospective buyers and Delphi management.

26.  In sum, W.Y. Campbell formulated and analyzed various strategic initiative for the Debtors' Mount Business. W.Y. Campbell then actively marketed the Debtors' Mount Business to prospective buyers and engaged in negotiations with these prospective buyers. Through this process, W.Y. Campbell has successfully narrowed the interested parties into concrete prospective buyers ready and willing to actively negotiate the best offer for the Debtors' Mount Business which will result in the highest and best offer for this estate of the Debtors' estate.

### EXPENSES INCURRED DURING THE RELEVANT PERIOD

27.  W.Y. Campbell incurred reasonable and necessary out-of-pocket expenses aggregating $53,778.18. Details of the expenses incurred during the Relevant Period are also provided in **Exhibit C**. W.Y. Campbell submits that all such expenses were necessarily incurred, are reasonable in the amount and represent only the actual costs incurred.

28.  W.Y. Campbell charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by W.Y.

Campbell are charged to a client or are otherwise necessary in connection with services rendered for such particular client. W.Y. Campbell does not factor general overhead expenses into disbursements charged to clients in connection with Chapter 11 cases. W.Y. Campbell follows its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions fully explained:

    (a)    W.Y. Campbell's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints. W.Y. Campbell's employees are permitted to order meals in the office if required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays. Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost.

    (b)    Messengers and couriers are used by W.Y. Campbell to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise W.Y. Campbell uses the regular postal system. Any charges for either messengers or couriers are billed to the client at cost.

    (c)    All airfare and other transportation charges incurred by W.Y. Campbell's employees directly in connection with services to the client are billed to client at cost.

    (d)    The research/database category consists of the cost of using databases to which W.Y. Campbell subscribes to search for and obtain information used in W.Y. Campbell's financial analyses. W.Y. Campbell pays the vendor's standard rate for such database services. In certain instances, W.Y. Campbell has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis. Such annual or monthly services are allocated to clients based on such clients' use of each service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by W.Y. Campbell.

    (e)    W.Y. Campbell bills photocopying charges at the rate of $.10 per page for black and white copies and $1.00 per page for color copies.

    (f)    With respect to local travel, W.Y. Campbell's general policy enables employees to travel by car, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. W.Y. Campbell's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 8:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters.

11

(g)     Telephone expenses are charged based on W.Y. Campbell's actual costs of telephone charges with respect to client matters. Cellular phone charges are based on vendor's actual invoices.

## CONCLUSION

W.Y. Campbell rendered substantial services to Debtors related to the Debtors' Mount Business including formulating, analyzing, negotiating, and implementing strategic initiatives which were substantial and instrumental to Debtors in furtherance of their restructuring efforts. W.Y. Campbell respectfully submits that the compensation requested by this application is reasonable in light of the nature and value of the services provided to the Debtors.

WHEREFORE, W.Y. Campbell respectfully requests that this Court enter an order (i) granting interim allowance and approval of compensation for services rendered during the Relevant Period, consisting of $450,000.00 of fees plus the reimbursement of reasonable and necessary expenses incurred by W.Y. Campbell during the Relevant Period in the amount of $53,778.18, for a total of $503,778.18, (ii) authorizing and directing the Debtors to make payment in respect of 100% of such fees, to the extent not yet received by W.Y. Campbell for the Relevant Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order; (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by W.Y. Campbell for the Relevant Period; and (iv) granting such other and further relief as this court deems just and proper.

Dated: Detroit, MI
~~June       , 2007~~
July 9, 2007

W.Y. CAMPBELL & CO

By: _____
Andre Augier, Managing Director

DETROIT 21924-17 994706v1

12

## CERTIFICATION

ANDRÉ A. AUGIER, under penalty of perjury, certifies and says:

1. I am a Managing Director of W.Y. Campbell & Company ("W.Y. Campbell"), which firm maintains offices for providing financial advisory and investment banking services at 1 Woodward Avenue, 26th Floor, Detroit, Michigan 48226. W.Y. Campbell has acted as financial advisor and investment banker to and rendered professional services on behalf of Delphi Corporation and its affiliated debtors and debtors in possession (the "Debtors").

2. This certification is submitted in support of W.Y. Campbell's First Interim Application for Compensation and Reimbursement of Expenses (the "Application"), pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure and Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Amended Guidelines").

3. I hereby certify that:

    (a) I have read the Application.

    (b) To the best of my knowledge, information and belief formed after a reasonable inquiry, and except as specifically noted in this Certification and in the Application, the fees and disbursements sought in the Application fall within the Amended Guidelines and the guidelines promulgated by the Office of the United States Trustee applicable to the Application (the "UST Guidelines"), as modified by the order authorizing the retention of W.Y. Campbell in these cases and any other applicable administrative orders entered herein.

    (c) The fees and disbursements sought are billed at rates and in accordance with practices customarily employed by W.Y. Campbell and generally accepted by W.Y. Campbell's clients.

    (d) In providing a reimbursable service, W.Y. Campbell does not make a profit on that service, whether the service is performed by W.Y. Campbell in-house or through a third party.

4.  Subject to the terms of applicable procedural orders of this Court and any order or orders of this Court approving the retention of W.Y. Campbell, this Application is being served upon this Court, the U.S. Trustee, the Debtors and counsel to the Creditors' Committee appointed in the Debtors' Chapter 11 case.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: Detroit, Michigan
June 25, 2007

_____
André A. Augier

DETROIT 21924-17 995925v1