TOGUT, SEGAL & SEGAL LLP
Co-Counsel for Delphi Corporation, *et al.*,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Sean McGrath (SM-4676)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re:<br><br>DELPHI CORPORATION, *et al.*,<br><br>                      Debtors.<br>-----------------------------------------------------------x | HEARING DATE: July 19, 2007<br>                    AT: 10:00 a.m.<br><br>Chapter 11<br>Case No. 05-44481 [RDD]<br><br>Jointly Administered |

**DEBTORS' SURREPLY TO MOTION BY FURUKAWA
ELECTRIC NORTH AMERICA APD AND FURUKAWA ELECTRIC
CO., LTD. FOR (A) ABSTENTION PURSUANT TO 28 U.S.C.
§ 1334(c); (B) RELIEF FROM AUTOMATIC STAY PURSUANT TO
11 U.S.C. 362(d); AND (C) AN ORDER LIMITING THE SCOPE
<u>OF THE THIRD OMNIBUS CLAIM OBJECTION HEARING</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases"), by their undersigned counsel, as and for their surreply to the motion dated March 23, 2007 (the "Motion") of Furukawa Electric North America APD ("Furukawa North America") and Furukawa Electric Co., Ltd. (jointly,

"Furukawa" or the "Claimant") for an Order for (a) abstention pursuant to 28 U.S.C. 1334(c); (b) relief from the automatic stay pursuant to 362(d) of title 11 of the United States Code (the "Bankruptcy Code"); and (c) for an order limiting the scope of the claim objection hearing scheduled for July 19, 2007, respectfully state:

**PRELIMINARY STATEMENT**

1.  The Debtors' April 13, 2007 Objection (the "Objection") to the Motion, established that Furukawa is not entitled to relief because (a) neither mandatory nor discretionary abstention is warranted and (b) Furukawa has failed to establish cause for relief for the automatic stay.

2.  In its Reply to Debtors' Objection [Docket No. 7966] (the "Reply"), Furukawa made an abrupt about-face: it seemingly abandoned its earlier position that this dispute is too complex for this Court to address and instead devoted its entire "Background" section of its Reply to a very specific discussion of the underlying dispute.

3.  Although neither the Motion nor the Objection seeks an adjudication of the parties' underlying claim dispute, it is important to demonstrate that Furukawa's characterization of the underlying dispute is erroneous because Furukawa's errors belie its argument that a Michigan state court is somehow better qualified than this Court to resolve this relatively straightforward contract dispute.

4.  The legal argument advanced by Furukawa, that: (i) this is not a core proceeding; (ii) concerns of comity and predominance of state law issues militate in favor of abstention; (iii) the absence of diversity strongly favors abstention; and (iv) the Debtors' state court jury demand, are all either unsupported by the facts, unsupported by controlling authority, or both.

2

5.  Furukawa erroneously contends that the litigation regarding the counterclaim is not core. However, on July 28, 2006, Furukawa filed its Proof of Claim[1] in this case and submitted itself to the equitable jurisdiction of this Court. Furukawa was aware of the State Court Action and fully cognizant that its outcome was predicated upon the same transaction as the Proof of Claim.

6.  Moreover, Furukawa's argument that it was forced to file the Proof Claim to satisfy a time bar is without merit. The Second Circuit has held "that a creditor subjects itself to the bankruptcy court's jurisdiction even where filing a proof of claim is statutorily mandated." Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 233 (2d Cir. 2002). Consequently, Furukawa voluntarily submitted itself to the equitable jurisdiction of this Court when it filed its Proof of Claim.

7.  For the reasons set forth in the Objection and below, this Court should deny Furukawa's Motion in its entirety.

## BACKGROUND

8.  The background of the parties' dispute is set forth extensively in the Objection and is respectfully incorporated by reference herein.

## FACTS

9.  In the Background section of its Reply, Furukawa asserts – for the first time – that it is not liable to Delphi because: (1) Delphi approved of the defective sensors at issue; and (2) the failures of the steering system giving rise to liability were caused by negligent installation by Delphi. None of these contentions are supported by the facts.

---

[1]  Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the
*(footnote continued on the following page)*

3

        10.      Delphi manufactures and sells steering columns to automotive customers. Included in certain Delphi manufactured steering columns is a part designated as the E-Steer Sensor (Sensor). Affidavit of Douglas M. Schuller, sworn to June 29, 2007 ("Schuller Aff.") at ¶ 2, annexed hereto as Exhibit "1".

        11.      Delphi outsourced the manufacture of the sensor for a certain vehicle program to Furukawa. Delphi specified the sensor performance requirements to Furukawa. Thereafter, Furukawa designed and built sensors that were provided to Delphi with the understanding that the sensors would meet Delphi's performance requirements. Schuller Aff. at ¶ 3.

        12.      Delphi engineers performed product validation tests of the sensors that Furukawa provided to Delphi for testing. The slip rings that Furukawa provided for the Sensor had solid gold plating. The product validation testing and other technical evaluations which were performed as part of the production part approval process (PPAP) led to the purchase of sensors from Furukawa for installation in saleable steering columns. Schuller Aff. at ¶ 4.

        13.      Subsequent to the product validation testing and performance approval, Furukawa changed from a pure gold slip ring plating to a gold plating design which included a PTFE (polytetrafluoroethylene, commonly referred to as Teflon) additive. This material change was made without the knowledge or engineering consent of Delphi. Schuller Aff. at ¶ 5.

        14.      Furukawa knew that it was obligated to submit a Supplier Change Review Request (SCRR) to Delphi before it altered the slip ring plating because

---

Objection.

Furukawa made a SCRR to Delphi unrelated to the Sensors before it began to use the PTFE additive. Schuller Aff. at ¶ 6 and Ex. A-1.

15. Furukawa then began to provide Sensors to Delphi, which were intended for installation into steering columns for sale to its customer, but significantly, Furukawa supplied the Sensors with the PTFE additive without Delphi's prior knowledge or consent. It was unknown to Delphi that these Sensors included the PTFE additive. Schuller Aff. at ¶ 7.

16. On December 12, 2002, Furukawa initiated a proposal to Delphi pertaining to a Furukawa-proposed change in the plating (this is now known to be the change to include the PTFE additive). Furukawa provided some initial data regarding this proposal, and in March, 2003 it was agreed that a change could eventually be made, "provided" the necessary testing and approval process was successfully completed. Schuller Aff. at ¶ 8 and Ex. A; Reply, Ex. 1[2] (emphasis added).

17. The testing mandated in the Halstead e-mail that is cited by Furukawa did not occur, and no final approval was provided by Delphi to Furukawa. Delphi never indicated to Furukawa that such final approval had been obtained. In fact, through two subsequent face-to-face meetings in Saginaw, Michigan between the key Furukawa and Delphi engineering representatives, it was made clear to Furukawa that Delphi had ultimately rejected Furukawa's proposal to change the plating for the Epsilon E-Steer Sensor. The primary objections to the proposal, as stated at the time, were the specific concern for electrical performance due to potential contaminating affects of PTFE, and the fact that it was too late to introduce sufficient system-level and vehicle-level testing for such a significant change. This proposal was rejected during a

5

September 17, 2003 face-to-face meeting. At that meeting, Furukawa failed to disclose that saleable Sensors already in customer vehicles included the PTFE. Furukawa had repeated opportunities to make this disclosure over a nine-month period subsequent to the initial proposal, including the parties' two face-to-face meetings, but instead chose to continue to build and deliver "saleable" Sensors that included the PTFE. Schuller Aff. at ¶ 8. This demonstrates that when Furukawa introduced the Halstead e-mail to this Court, it did so in a manner that failed to fully disclose all of the relevant facts.

18. The steering columns failed during routine and regular use by vehicle owners and, during the months following the September 17, 2003 meeting, Delphi reported to Furukawa that there were repeated steering column failures related to the Sensor. Delphi and Furukawa jointly performed analysis of a number of sensors, which had been returned from customer vehicles and they were confirmed to exhibit electrical noise resulting from the slip ring interface within the Sensors. Schuller Aff. at ¶ 9.

19. Parallel to an analysis performed by Delphi and Furukawa, Delphi employed the services of Deringer Ney, an outside laboratory, to perform analysis on a failed sensor that was returned by General Motors from a customer vehicle. The initial test report from Deringer Ney, dated January 23, 2004, provided the first evidence to Delphi that the PTFE additive had been included in the Furukawa Sensors which were sold by Delphi to its customer. Schuller Aff. at ¶ 10 and Ex. E.

20. The specific presence of PTFE can only be detected by sophisticated chemical analysis, including electron microscopic analysis. Before providing this evidence to Furukawa, Delphi engineering personnel immediately asked Furukawa by

---

[2] Exhibit 1 to the Furukawa Reply is an e-mail from Kirk Halstead to various individuals at Delphi and
*(footnote continued on the following page)*

6

phone whether PTFE was included in "saleable" Sensors; Furukawa did not disclose the use of PTFE. Then, on January 24, 2004, Delphi engineering personnel forwarded the Deringer Ney findings to Furukawa. Furukawa stated that key management representatives would immediately fly from Japan to Saginaw, Michigan for a meeting. Schuller Aff. at ¶ 11.

21. On January 28, 2004 Furukawa representatives from Japan traveled to Saginaw, Michigan. At this time, they acknowledged that PTFE had been added to the "saleable" Sensors. During the time Delphi and Furukawa were performing exhaustive testing to determine the cause or causes of the steering column failures, Furukawa failed to disclose that PTFE had been included in all "saleable" Sensors that it shipped to Delphi from and after December 17, 2002. Schuller Aff. at ¶ 12.

22. On April 8, 2004, Furukawa submitted a "5-phase Problem-Solving Report." This document states Furukawa's reasons for not disclosing the presence of PTFE in the "saleable" Sensors. The report stated: "Since Furukawa did not have expertise/knowledge of plating, we did not refer to the details including composition. We did not activate the formal change process due to lack of knowledge." Further, Furukawa's report stated: "In December, 2002, when the plating characteristic was discussed between Delphi and Furukawa again, we realized the necessity of the authorization. But is was difficult at that time to bring up the history and fact because it was after the implementation." Schuller Aff. at ¶ 13 and Ex. B.

23. The facts clearly demonstrate that Furukawa is liable for the Sensor failure at issue and any argument it makes to the contrary must be denied.

---

Furukawa dated March 28, 2003 (the "Halstead E-Mail").

7

**ARGUMENT**

**I.      This Is A "Core" Proceeding And Mandatory Abstention Is Unavailable.**

24.     Furukawa first contends that its filing of a proof of claim is not relevant to the consideration of whether this is a core proceeding and that "[t]he bankruptcy court has no power (absent consent) to hear and determine purely state law breach of contract claims."  Reply at 8.  There are two distinct fatal errors in this contention.  First, Furukawa did in fact consent to adjudication of the dispute in this Court when it filed its Proof of Claim.  Second, in making this argument, Furukawa cites to authority that is either factually inapposite or has been specifically rejected in the Second Circuit.

25.     Furukawa cites Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), for the proposition that this Court lacks jurisdiction to adjudicate all of the state law causes of action related to the State Court Action.  In Marathon, the defendant never filed a proof of claim.  Here, Furukawa filed a Proof of Claim and voluntarily submitted itself to this Court's jurisdiction.  Furukawa, not the Debtors, brought the parties' dispute to this Court by filing its Proof of Claim.  Moreover, Furukawa was aware that the Debtors' obvious defense to its Proof of Claim would be based upon the State Court Action and that the Debtors' would have to implicate their affirmative claims to defend themselves and their estates in this Court.

26.     Furukawa also cites In re Wood, 825 F.2d 90, 97 (5th Cir. 1987) for the proposition that a proceeding does not arise under chapter 11 if it does not invoke a substantive right created by Title 11.  Furukawa overlooks that this Circuit has expressly rejected the reasoning in Wood:  "The Wood test with respect to this not only has never been applied by the Second Circuit; it has been expressly rejected by the

8

Second Circuit." In re PSINet, Inc., 271 B.R. 1, 29 (Bankr. S.D.N.Y. 2001) (citing In re Ben Cooper, Inc., 896 F.2d 1394, 1400 (2d Cir. 1990)) ("We hold that the timing of a dispute may render it uniquely a bankruptcy case. To the extent that Wood conflicts with our holding, we decline to follow it").

27.    Significantly, the Wood Court noted that if the plaintiff in that case had filed a proof of claim, the Court would have had jurisdiction.

28.    It is notable that Furukawa cites no authority from within the Second Circuit in its argument that this claim dispute is non-core, including the cases that were cited in the Reply. This is because Furukawa must recognize that the holdings in such cases are fatal to its position. See, e.g., Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 2001 WL 826122, at *6 (S.D.N.Y. July 19, 2001), aff'd, 304 F.3d 223, 232 (2d Cir. 2002) ("when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract arising under state law") (citing In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 705 (2d Cir. 1995)).

29.    Moreover, this Court has previously adjudicated liability claim disputes that were governed by Michigan state law. See, e.g., Order Disallowing Claim of Laborsource 2000 Inc., dated March 8, 2007 [Docket No. 7173].

**II.    Abstention Is Appropriate Only In Certain Narrow
        and Exceptional Circumstances, Not Present Here**

30.    Furukawa argues that this Court's discretion to abstain is broader than stated in the Objection. Once again, Furukawa cites no authority from this Circuit and ignores controlling authority from this Court.

31.    Furukawa argues that where state law predominates, it need not be unsettled for a bankruptcy court to abstain, citing In re Republic Reader's Service, Inc.,

9

81 B.R. 422, 426-27 (Bankr. S.D. Tex. 1987). However, the reasoning of <u>Republic</u> is predicated upon the holding in <u>Wood</u>, which, as discussed above, has been rejected by the Second Circuit. Therefore, <u>Republic</u> is not appropriate or binding authority.

32. Furukawa does not even attempt to distinguish <u>In re Calpine Corp.</u>, 361 B.R. 665 (Bankr. S.D.N.Y. 2007), a case discussed extensively in the Debtors' Objection; rather it tacitly suggests that the reasoning therein is wrong. Reply at 10, n.4. In <u>Calpine</u>, Bankruptcy Judge Lifland reviewed the 12-factor test for abstention and held that "abstention is appropriate only in certain narrowly-tailored, exceptional circumstances" and that "[f]ederal courts have a 'virtually unflagging obligation' to exercise the jurisdiction given them." <u>Accord</u> <u>Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)</u>, 2001 WL 826122, at *8 (S.D.N.Y. July 19, 2001), <u>aff'd</u>, 304 F.3d 223, 232 (2d Cir. 2002).

33. Furukawa's disregard of controlling precedent in this Circuit is significant. The controlling precedent in this Circuit holds that abstention is appropriate only under "exceptional circumstances" which are not present here.

### III. Abstention Is Not Appropriate Even if Diversity Jurisdiction Is Not Present

34. In its State Court Complaint[3] Delphi alleged that both of the Furukawa entities were foreign corporations. In its Answer to that Complaint, Furukawa admitted those allegations. Declaration of Sean P. McGrath, dated July 11, 2007, at ¶ 3 and Ex. 1, annexed hereto as Exhibit "2". Furukawa now claims that Furukawa North American APD, Inc. is a citizen of Michigan and that as a result, diversity jurisdiction does not exist.

---

[3] Motion, Ex. 2 at ¶¶ 2 and 3.

10

35. Even if Furukawa is not estopped from making this argument, the absence of an independent basis for federal jurisdiction is merely one of twelve factors to be considered by a Court that is asked to address an abstention request, and an application of that test, as set forth extensively in the Objection, militates strongly against abstention. The 12 factors commonly used to consider abstention are not a strict calculus. Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004) ("Of course, the list of factors is non-exclusive and was developed simply as a guide to the required inquiry; the wise exercise of discretion is rarely a matter of score-keeping or bean-counting. Ultimately, the pursuit of 'equit[y],' 'justice' and 'comity' involves a thoughtful, complex assessment of what makes good sense in the totality of the circumstances.")

36. As set forth extensively in the Objection and herein, concerns of equity, justice and comity weigh against abstention.

### IV. The Presence of State Law Claims Does Not Weigh Heavily in Favor Of Abstention When the Law Is Neither Complex Nor Unsettled

37. Furukawa does not assert that the legal issues here are either complex or unsettled. Thus, that prong of the test set forth in Calpine militates against abstention.

38. Instead Furukawa argues – again without citation to any authority within the Second Circuit – that a predominance of state law issues weighs in favor of abstention.

39. The Second Circuit has noted that the most important factor to be considered regarding permissive abstention is the existence of a novel or unsettled area of state law. This element is one of the major underpinnings of any abstention analysis. In re Pan American Corp., 950 F.2d 839, 846 (2d Cir. 1991) ("'Given the genesis of

11

05-44481-rdd    Doc 8537    Filed 07/11/07    Entered 07/11/07 17:20:47    Main Document
Pg 12 of 15

section 1334(c)(1), it is not surprising that the primary determinant for the exercise of discretionary abstention is whether there exist unsettled issues of state law.'") (quoting General Am. Comm. Corp v. Landsell, 130 B.R. 136, 146 (S.D.N.Y. 1991)).

40.     While the parties' dispute may implicate some state law issues, this claim dispute can be resolved by this Court's application of settled Michigan law. See Luan Investment S.E., 2001 WL 826122, at *8 ("Principles of comity were satisfied because the bankruptcy court applied the law of the Commonwealth of Puerto Rico in interpreting the Lease.").

41.     Consequently, Furukawa's argument that a predominance of state law issues requires abstention is unsupported and must be rejected.

## V.     Delphi's Demand for a Jury Trial Does Not Require Abstention

42.     Furukawa next contends – again without reference to any Second Circuit Authority – that the demand for a jury trial in the State Court Action "virtually requires" abstention. This argument ignores Supreme Court authority.

43.     In Langenkamp v. Culp, 498 U.S. 42 (1990), another case discussed in the Objection but ignored by Furukawa, the Supreme Court dispositively addressed this issue. A creditor who had filed a proof claim argued that it did not subject itself to the Bankruptcy Court's equitable jurisdiction and the creditor maintained its right for jury trial regarding the debtor's fraudulent conveyance claim. The Supreme Court held that while creditors who did not file a proof of claim could challenge the bankruptcy court's equitable jurisdiction, creditors who had filed proofs of claim brought themselves within the bankruptcy court's equitable jurisdiction and as such, these creditors did not have a right to a jury trial.

44. Furukawa, having waived the right to a jury trail when its filed its Proof of Claim, cannot step into the Debtor's state court jury demand after the Debtors waived that right by seeking an adjudication of the claim dispute by this Court.

45. The only case cited by Furukawa, <u>Bricker v. Martin</u>, 348 B.R. 28, 37 (W.D. Pa.) is fundamentally distinguishable because the claimants there <u>opposed</u> permissible abstention and <u>Langenkamp</u> was therefore inapplicable.

46. Furukawa has never requested a jury trial and it waived its right to a jury by filing its Proof of Claim. Based upon the foregoing, the facts militate against abstention.

### V. This Court Can Effectively Resolve This Dispute

47. Furukawa's final arguments are that Michigan is a more convenient forum and that this Court's December 6, 2006 Claims Procedures Order (the "Procedures Order") is insufficient to address this claim objection.

48. As a legal matter, these arguments cannot serve as support for permissive abstention. <u>International Fidelity Ins. v. Robb (In Re Robb),</u> 139 B.R. 791, 796 (Bankr. S.D.N.Y. 1992) (holding that abstention is inappropriate in core proceedings and that a party seeking abstention in a core proceeding must show exceptional circumstances warranting such relief.).

49. Furukawa's argument is also factually baseless. In the briefing of this Motion, the parties have already identified most of the witnesses and evidence that would be required to resolve this dispute. Sending the matter to the Michigan state court now could result in a delay of months or years to the detriment of the Debtors and would result in piecemeal resolution of this claims objection. Clearly, this weighs against abstention.

13

50. Furukawa's argument that the parties' ability to resolve the matter would be hindered by the Procedures Order is also unavailing. Should either of the parties determine that a departure from the Procedures Order is necessary, it may seek appropriate relief by agreement or by a motion to this Court. Procedures Order, § 9(k). This argument cannot support abstention.

**[concluded on the following page]**

**CONCLUSION**

51.     Based on the foregoing, Furukawa has failed to establish any basis for abstention or relief from the automatic stay, and its Motion should be denied in its entirety.

**NOTICE**

52.     Notice of this Surreply has been provided in accordance with the Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e), which was entered by this Court on December 7, 2006 (Docket No. 6089).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order denying the Motion, together with such other and further relief as may be just and proper.

Dated:   New York, New York
         July 11, 2007

                                              DELPHI CORPORATION, *et al.*
                                              By their attorneys,
                                              TOGUT, SEGAL & SEGAL LLP
                                              By:

                                              /s/ Neil Berger
                                              ALBERT TOGUT (AT-9759)
                                              NEIL BERGER (NB-3599)
                                              Members of the Firm
                                              One Penn Plaza
                                              New York, New York 10119
                                              (212) 594-5000