**HODGSON RUSS LLP**
Attorneys for Conestoga-Rovers & Associates, Inc.
60 East 42nd Street, 37th floor
New York, New York 10165
(212) 661-3535
Gary I. Selinger (GIS-3555)

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Return Date and Time: |
| SOUTHERN DISTRICT OF NEW YORK | July 19, 2007 at 10:00 a.m. |

-----------------------------------------------------------x

In re:

                                                      Chapter 11

DELPHI CORPORATION, et al.,                  Case No. 05-44481 (RDD)

                 Debtors.                           Jointly Administered

-----------------------------------------------------------x

**RESPONSE AND OPPOSITION OF CONESTOGA-ROVERS & ASSOCIATES, INC.
TO DEBTORS' OBJECTION TO CLAIM, MADE WITHIN DEBTORS'
<u>SEVENTEENTH OMNIBUS CLAIMS OBJECTION</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

       Conestoga-Rovers & Associates, Inc. ("CRA"), by its attorneys Hodgson Russ LLP, submits this response and opposition to the Seventeenth Omnibus Claims Objection (the "Claims Objection") of the debtors and debtors in possession, Delphi Corporation, et al. (the "Debtors"), to the extent that the Debtors have, by their Claims Objection, sought to disallow and expunge CRA's amended proof of claim no. 16604, filed May 21, 2007, in the sum of $140,195.09 (the "Amended Claim"), which Amended Claim amends CRA's previous proof of claim filed on March 14, 2006 in the sum of $63,642.38 (the "Original Claim"), and in support of its response and opposition, respectfully represents and shows this Court as follows:

<u>**Preliminary Statement**</u>

       1.      This Court should overrule the Debtors' Claim Objection to the extent that it

seeks to disallow and expunge the Amended Claim. That Amended Claim incorporated additional invoices for CRA's services provided to the Debtors prior to the chapter 11 filing date of October 8, 2005 (the "Petition Date"). The Amended Claim is simply an amendment of the CRA Original Claim, pursuant to Federal Rule of Civil Procedure 15(c) (made applicable by Federal Rule of Bankruptcy Procedure 7015), as it increases the amounts due to CRA under the parties' ongoing business relationship. The Amended Claim is *not* an impermissible "attempt to file a new claim under the guise of amendment," *In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993), and, as this response will show, a balancing of the equities favors CRA.

## Background and Relevant Facts

2.      CRA is an environmental consulting firm. Since the mid-to-late 1990's, CRA has performed services for several of the various Debtor entities. Indeed, it has continued providing services to the Debtors to this day, and has received payment from the Debtors on account of these post-petition services. Moreover, and as further evidence of the solid business relationship between the Debtors and CRA, the Debtors asked CRA to be one of its Ordinary Course Professionals. Accordingly, CRA is listed in the Third Revised List of Debtors' Ordinary Course Professionals, dated June 14, 2006; a copy of the Debtors' Notice, together with the Third Revised List, is annexed hereto as Exhibit A. (See page 7, towards the bottom of the page.)

3.      Pursuant to this Court's order dated April 12, 2006 (the "Bar Order"), the last day for creditors to file their proofs of claim with the Clerk of the Court was July 31, 2006 (the "Bar Date"). On March 14, 2006, well in advance of the Bar Date, CRA filed the Original Claim with the Bankruptcy Court, including documentation of those pre-petition invoices for which CRA then sought payment. (A copy of the Original Claim is annexed hereto as Exhibit B.)

4.      In early May 2007, CRA discovered that certain of its invoices to the Debtors -- although bearing dates in 2006 that suggested they were for post-petition services -- were actually for pre-petition services, and should have been included in the CRA Original Claim. As far as CRA can tell, it appears that some of CRA's project managers may not have promptly billed the work for their projects related to the Debtors. This delay, while prejudicing no one but CRA -- the Debtors did *not* pay CRA, post-petition, for pre-petition services -- prevented these invoices, which indicated that they were "For Professional Services Rendered through" various dates in 2006 (i.e., post-petition services), from being incorporated in the CRA Original Claim.

5.      Accordingly, CRA filed the Amended Claim on or about May 18, 2007, in the sum of $140,195.09, and clearly marked on the face of that Amended Claim that it amended the previous claim of March 14, 2006 (the Original Claim, a copy of which CRA attached to its Amended Claim). A copy of the Amended Claim, absent the Original Claim as an attachment, is annexed hereto as Exhibit C, together with the additional invoices for CRA's pre-petition services that had not been attached to the Original Claim.

6.      On or about June 15, 2007, the Debtors filed and served their Claims Objection, asserting that CRA's Amended Claim should be disallowed and expunged, with the stated basis for objection being "Untimely Claim." A copy of the Debtors' "Notice of Objection to Claim" is annexed hereto as Exhibit D.[1]

7.      CRA opposes the Claims Objection, as the Amended Claim was not untimely. Rather, the Amended Claim is simply an amendment of the Original Claim, and for the reasons

---

[1] It also appears that, as part of the Claims Objection, the Debtors are seeking to reduce the CRA Original Claim to the sum of $56,221.90. As the CRA Amended Claim has added and incorporated additional invoices for CRA's pre-petition services provided to the Debtors, and as CRA takes the position herein that its Amended Claim amends and supersedes the Original Claim, CRA will rely on the documentation (including its invoices to the Debtors) included with and annexed to the Original Claim. To the extent that the Debtors' Claims Objection seeks to reduce the Original Claim to the sum of $56,221.90, CRA opposes such relief, on the basis of the documentation it supplied with the filing of the Original Claim.

- 3 -

set forth herein, this Court should overrule the Debtors' objection to the Amended Claim, and should instead allow the Amended Claim in its entirety.

### The Legal Standard for Allowing Post-Bar Date Amendments to Proofs of Claim

8. In this District, the standard for allowing amendments to proofs of claim in bankruptcy is found in *In re Integrated Resources, Inc.*, 157 B.R. 66, 70-71 (S.D.N.Y. 1993):

> [A]mendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim. However, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment. [Citations omitted.]
>
> When making this decision courts are guided by a two-pronged test espoused in *Black & Geddes* [58 B.R. 547 (Bankr. S.D.N.Y. 1983)]. A court must "first look to whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable." *Black & Geddes, Inc.*, *supra*, at 553 (citations omitted). The court should then examine each fact within the case and determine whether it would be equitable to allow the amendment. *Id.*
>
> When balancing the equities, important factors include:
>
>> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed.
>
> See *McLean Industries [In re McLean Industries, Inc.,* 121 B.R. 704 (Bankr. S.D.N.Y. 1990), *supra*, at 708.
>
> While Federal Rule 15, which governs amendment to pleadings, is not directly applicable to claims proceedings under Bankruptcy Rule 9014, the determination regarding amendment parallels considerations under that rule. "The critical consideration is whether the opposing party will be unduly prejudiced by the amendment. "Ordinarily, to be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first but also reasonably within the amount to which the first claim provided notice." "The test under Rule 15 is basically the same as that developed in the case law for amending claims in bankruptcy; the original pleadings must give notice of the transaction or occurrence giving rise to the plaintiff's cause of action in the amended pleading

and the amendment must not substantially prejudice the opposing party."
[Citations omitted.]

9. Moreover, the First Circuit Court of Appeals has noted that "as a general rule, amendments intended merely to increase the amount of a claim grounded in the same right to payment are not considered `new' claims under the Code." *In re Hemingway Transport, Inc.*, 954 F.2d 1, 10 (1st Cir. 1992); *accord In re Northeast Office and Commercial Properties, Inc.*, 178 B.R. 915, 923 (Bankr. D.Mass. 1995) (citing above statement from *Hemingway Transport*):

> Numerous decisions involving proofs of claims for taxes illustrate this point. Courts permit late amendments increasing the amount of a tax claim so long as the increased claim is for the same type of tax, even though the amendment relates to different tax periods. Bankruptcy Rule 7015(c) is merely a more specific statement of these same principles.

10. In *Midland Cogeneration Venture Limited Partnership v. Official Committee of Unsecured Creditors (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005), the Second Circuit Court of Appeals restated the *Integrated Resources* standard, and noted that if an amendment meets the initial threshold such that there was previously "a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable," i.e., the amendment is obviously intended to "relate back" to the timely-filed claim,

> courts will "examine each fact within the case and determine whether it would be equitable to allow the amendment." *Integrated Resources*, 157 B.R. at 70. Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment, or whether, instead, other creditors would "receive a windfall" from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified. *See id.*; *see also McLean Industries,* 121 B.R. at 708. Of these, however, "the critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Integrated Resources*, 157 B.R. at 70.

**CRA's Amended Claim is a Proper and Permissible Amendment of its Original Claim**

11. Under these standards, CRA's Amended Claim is clearly a permissible

amendment of its timely Original Claim.  First, the Original Claim put the Debtors on notice that CRA was asserting a claim against them based upon CRA's right to payment for its pre-petition services rendered to the Debtors.  As such, the Debtors cannot plausibly assert surprise or prejudice on account of the Amended Claim, which asserts no new basis for relief, no novel theory of recovery, but seeks only to include additional post-petition invoices not incorporated in the Original Claim.  (Recall the First Circuit's statement in *Hemingway Transport* that "as a general rule, amendments intended merely to increase the amount of a claim grounded in the same right to payment are not considered `new' claims under the Code.")

12. Secondly, the equities favor CRA: the Debtors, who have listed CRA on their list of Ordinary Course Professionals, and who continue to employ CRA as of the date of this response, should not receive a windfall (in the form of services CRA rendered to the Debtors before the Petition Date, but for which CRA remains unpaid) at CRA's expense.  Similarly, the Debtor's other creditors should not profit from a disallowance of CRA's Amended Claim.  Moreover, given the size of this case (in their chapter 11 petitions, the Debtors estimated their assets at more than $17 billion, with debts estimated at more than $22 billion), there is no prejudice to the Debtors, or to the creditor body as a whole, in permitting CRA to amend its Original Claim with the Amended Claim.

13. Finally, CRA has not acted inequitably or in bad faith.  It did not, for example, bill the previously unbilled pre-petition services under the rubric of post-petition services, and seek 100% payment from the Debtors -- notwithstanding CRA's status as one of the Debtor's Ordinary Course Professionals.  Rather, CRA filed its Amended Claim, seeking to supplement the Original Claim, as soon as it realized that some of its project managers had not yet billed certain pre-petition services on their projects to the Debtors.  Under these circumstances, where

CRA has unquestionably acted in good faith, it would be inequitable to penalize CRA by disallowing its Amended Claim as untimely.

14. Accordingly, CRA respectfully asks this Court to overrule the Debtors' Claims Objection as it concerns the CRA Amended Claim, and asks the Court to allow the Amended Claim in its entirety.

## Conclusion

**WHEREFORE,** for all of the foregoing reasons, Conestoga-Rovers & Associates, Inc., respectfully requests that this Court (i) overrule the Debtors' Seventeenth Omnibus Claims Objection, to the extent that such Claims Objection seeks to disallow and expunge the CRA Amended Claim (in the sum of $140,195.09) as untimely, and (ii) allow the CRA Amended Claim in its entirety, together with such other and further relief as the Court may find just, proper and equitable.

Dated: New York, New York
July 12, 2007

**HODGSON RUSS LLP**
Attorneys for Conestoga-Rovers & Associates, Inc.

By:  /s/ Gary I. Selinger
Gary I. Selinger (GIS-3555)
60 East 42nd Street, 37th floor
New York, New York 10165
Telephone: (212) 661-3535
*gselinger@hodgsonruss.com*