**Hearing Date And Time: August 16, 2007 at 10:00 a.m.**
**Response Date And Time: August 9, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
                            :
       In re                      :     Chapter 11
                            :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                            :
                            :     (Jointly Administered)
           Debtors.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

DEBTORS' EIGHTEENTH OMNIBUS OBJECTION (PROCEDURAL) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN
DUPLICATE OR AMENDED CLAIMS

("EIGHTEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Eighteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate Or Amended Claims (the "Eighteenth Omnibus Claims Objection"), and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the Creditors' Committee, the "Statutory Committees").

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding. The application was approved by the Spanish court on April 13, 2007. The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

9.      The Debtors believe that the Company's financial performance has deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its

transformation plan.[4]  First, Delphi must modify its labor agreements to create a competitive

arena in which to conduct business.[5]  Second, the Debtors must conclude their negotiations with

GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement (the "Equity Purchase and Commitment
Agreement") with affiliates of Appaloosa Management L.P. ("Appaloosa"), Cerberus Capital Management, L.P.
("Cerberus"), and Harbinger Capital Partners Master Fund I, L.P. ("Harbinger"), as well as Merrill Lynch & Co.
("Merrill") and UBS Securities LLC ("UBS") (collectively, the "Plan Investors"), and a plan framework support
agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.  On April 19, 2007,
Delphi confirmed that it anticipated negotiating changes to the Equity Purchase and Commitment Agreement
and related Plan Framework Support Agreement.  Delphi said that any changes would be made primarily as a
result of addressing differences in views regarding the Company's reorganization enterprise value among the
Plan Investors, GM, the Statutory Committees, and the Company.  Delphi also said that it expected that under
amended framework agreements, the Appaloosa and Harbinger affiliates, Merrill, and UBS would continue to
participate as Plan Investors (together with possible additional investors that may include members of the
Statutory Committees), and that Cerberus might participate in the Company's exit financing, as part of a
competitive process, but not as a Plan Investor.  As part of the process of negotiating amended framework
agreements, on July 9, 2007, Delphi confirmed that it had formally terminated the Equity Purchase and
Commitment Agreement and related Plan Framework Support Agreement but that it expects to enter into new
framework agreements with plan investors later this month.

[5]    Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union,
United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a)
modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the
UAW, and its various locals, (b) provides that GM will undertake certain financial obligations to Delphi's
UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare
benefits for certain UAW-represented retirees of the Debtors.  The agreement, which is subject to approval by
this Court, should facilitate the Debtors' reaching consensual resolutions of their labor issues with the remaining
unions and GM and permit the Debtors to continue to implement their transformation plan and to develop,
prosecute, confirm, and consummate a plan of reorganization.  Delphi is currently engaged in settlement
discussions with its second and third largest U.S. labor unions and is working to conclude discussions with
those unions as well as three smaller unions as soon as possible.

GM's business commitment to the Company.[6]  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.[7]  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[8]  Finally, the Debtors must devise a workable solution to their current pension situation.[9]

12.     Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

---

[6]     On July 9, 2007, Delphi confirmed that its discussions with GM on a comprehensive settlement agreement had entered the documentation phase and that it expected that a settlement with GM would be incorporated into the Debtors' plan of reorganization rather than filed with this Court for separate approval.

[7]     Indeed, during the 2006 and 2007 calendar years, the Debtors sold substantially all of the assets related to MobileAria, Inc., its chapter 11 affiliate, they obtained court approval for the sale of substantially all of the assets of their brake hose business, and they obtained court approval of bid procedures related to the upcoming sale of substantially all assets used in their catalyst business and their Saltillo, Mexico brake plant business.  In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[8]     As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

[9]     To that end, on May 31, 2007, the Bankruptcy Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees.  Should certain events not occur prior to September 30, 2007, the Debtors may need to seek an additional pension waiver or other relief from the IRS.

E.      Bar Date, Proofs Of Claim, And Omnibus Claims Objections

13.      On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),
501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)
Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice
Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order
established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or
wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),
against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such
Claim.

14.      On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the
claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date
by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a
proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets
and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and
subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and
Statements") and (b) the persons and entities included in the notice database compiled by the
Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided
Bar Date Notices to more than 500,000 persons and entities.

15.      In addition, the Debtors published the Bar Date Notice in the New York
Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),
USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions
of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo
News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,
Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

7

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the Vindicator, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

      16.     Approximately 16,600 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed nine omnibus Claims

objections which objected to Claims on procedural grounds[10] and eight omnibus Claims

objections which objected to Claims on substantive grounds.[11]  Pursuant to such omnibus Claims

---

[10]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006; the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15, 2007; the Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16, 2007; the Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7824) on April 27, 2007; the Fourteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 7998) on May 22, 2007; and the Sixteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 8271) on June 15, 2007.

[11]    The Debtors filed the (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (II) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; the Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records (Docket No. 6100) on December 8, 2006; the Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C.

*(cont'd)*

objections, the Court has disallowed and expunged 9,037 Claims.  In addition, the hearings with

respect to approximately 722 Claims have been adjourned pursuant to the Claims Objection

Procedures Order (as defined below) and another 283 Claims are subject to pending objections.

      17.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

this Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

---

*(cont'd from previous page)*

§ 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not
Reflected On Debtors' Books And Records, And (C) Untimely Claims (Docket No. 6585) on January 12, 2007;
the Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records,
(C) Untimely Claims, And (D) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; the
Eleventh Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books and Records,
(C) Untimely Claims And An Untimely Tax Claim, (D) Claims Subject To Modification (Docket No. 6968) on
March 16, 2007; the Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books
And Records, (c) Protective Insurance Claims, (d) Insurance Claims Not Reflected On Debtors' Books And
Records, (e) Untimely Claims And Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims
Subject To Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825)
on April 27, 2007; the Fifteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books
And Records, (C) Untimely Claims And Untimely Tax Claim, And (D) Claims Subject To Modification, Tax
Claims Subject To Modification, and Modified Claims Asserting Reclamation (Docket No. 7999) on May 22,
2007; and the Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.
Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books
And Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And
Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And
Modified Claims Asserting Reclamation (Docket No. 8270) on June 15, 2007.

9

18.    In this Eighteenth Omnibus Claims Objection, the Debtors are objecting to nine Proofs of Claim.[12]

Relief Requested

19.    By this objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging those Claims set forth on Exhibit A hereto as "Claims To Be Expunged" because they are duplicative of other Claims or have been amended or superseded by later-filed Claims.  Pursuant to such an order, those Claims identified on Exhibit A hereto as "Surviving Claims" would remain on the Debtors' claims register, but would remain subject to future objection by the Debtors and other parties-in-interest.

F.    Duplicate Or Amended Claims

20.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim in fact assert duplicate Claims (each, a "Duplicate Claim") for a single liability.  In some instances, Duplicate Claims arose when a Claimant filed Proofs of Claim against multiple Debtor entities for the same liability.  In an effort to eliminate the Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation

---

[12]    Contemporaneously with this Eighteenth Omnibus Claims Objection, the Debtors are filing the Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification, Tax Claims Subject to Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (the "Nineteenth Omnibus Claims Objection").  In the Nineteenth Omnibus Claims Objection, the Debtors object to Claims on substantive grounds and are seeking (i) to expunge and disallow Claims that (a) are insufficiently documented, (b) are not reflected on the Debtors' books and records, including certain Claims filed by taxing authorities, and (c) were not timely filed pursuant to the Bar Date Order and (ii) to modify certain Claims, including (a) Claims filed by taxing authorities, (b) Claims in which the claimant asserted a reclamation demand and the claimant and the Debtors entered into a letter agreement regarding the valid amount of the reclamation demand, with such agreement being subject to certain reserved defenses, and (c) Claims asserting certain tort liabilities.  The Debtors are objecting to 270 Proofs of Claim in the Nineteenth Omnibus Claims Objection.

provided for those Proofs of Claim, and the Debtors' Schedules and Statements to determine

which duplicate claim should be the surviving claim.

21.    Additionally, the Debtors determined that many Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities (the "Amended Claims").  For instance, many

Amended Claims were filed to amend an amount previously claimed in an earlier Proof of Claim

(the "Original Claim").  Other Amended Claims were filed to amend the classification of part or

all of an earlier Original Claim.

22.    It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate

Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original

Claims for which Amended Claims were subsequently filed (collectively, the "Duplicate Or

Amended Claims").

23.    Set forth on <u>Exhibit A</u> hereto is a list of Claims that the Debtors have

identified as Duplicate Or Amended Claims.  For each Duplicate Or Amended Claim, <u>Exhibit A</u>

classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a

"Surviving Claim" (the "Surviving Claim").[13]  Generally, the Surviving Claims reflect the

classifications of the liabilities as reflected on the Debtors' Schedules and Statements.  The

Debtors request that the Claims marked as Expunged Claims on <u>Exhibit A</u> be disallowed and

expunged.  With respect to the Claims on <u>Exhibit A</u> marked as Surviving Claims, the Debtors do

not seek any relief at this time.  The inclusion of the Surviving Claims on <u>Exhibit A</u>, however,

---

[13]    Certain of the Claims on <u>Exhibit A</u> may be listed in the amount of $0.00.  This reflects the fact that the Claim
amount asserted by the Claimant is unliquidated.

does not reflect any view by the Debtors as to the ultimate validity of any such Claims. The Debtors therefore expressly reserve all of their rights to further object to any or all of the Surviving Claims at a later date on any basis whatsoever, except as expressly provided in paragraph 30 below.

24.    Accordingly, the Debtors (a) object to the Duplicate Or Amended Claims and (b) seek entry of an order disallowing and expunging the Duplicate Or Amended Claims in their entirety.

## Separate Contested Matters

25.    Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Eighteenth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Eighteenth Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Eighteenth Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

## Reservation Of Rights

26.    The Debtors expressly reserve the right to amend, modify, or supplement this Eighteenth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity. Should one or more of the grounds for objection stated in this Eighteenth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on

other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.

27.    Notwithstanding the foregoing, solely to the extent that (a) a Claimant filed duplicative claims against different Debtors for the same asserted obligation (the "Multiple Debtor Duplicative Claims") and (b) the Debtors by this motion are seeking to have certain of such Claimant's Multiple Debtor Duplicative Claims disallowed and expunged, if one of the Multiple Debtor Duplicative Claims was originally filed against the correct Debtor, the Debtors would not seek to have the Claimant's remaining Multiple Debtor Duplicative Claim (the "Remaining Claim") disallowed and expunged solely on the basis that such Remaining Claim is asserted against the incorrect Debtor.  For the avoidance of doubt, except as expressly provided in the preceding sentence, the Remaining Claims would remain subject to further objection on any grounds whatsoever, including, without limitation, that any such Remaining Claim is asserted against the incorrect Debtor if the Claimant did not file a Multiple Debtor Duplicative Claim against the correct Debtor.  Furthermore, the Debtors reserve the right to object to any Remaining Claim and any holder of a Remaining Claim may seek relief from this Court for the purposes of requesting that this Court modify the Remaining Claim to assert such Remaining Claim against a different Debtor.

## Responses To Objections

28.    Responses to the Eighteenth Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that order, but are qualified in all respects by the express terms thereof.

G.    Filing And Service Of Responses

29.    To contest an objection, responses (each, a "Response"), if any, to the Eighteenth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules

of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York,
and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in
accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's
case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch
disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based
word processing format), (d) be submitted in hard copy form directly to the chambers of the
Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court
for the Southern District of New York, One Bowling Green, Room 632, New York, New York
10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098
(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom
LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,
John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00
p.m. (prevailing Eastern time) on August 9, 2007**.

H.    Contents Of Responses

30.    Every Response to this Eighteenth Omnibus Claims Objection must
contain at a minimum the following:

(a)    the title of the Claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be

14

confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints; and

(e)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the Claim.

I.    Timely Response Required

31.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on August 16, 2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Eighteenth Omnibus Claims Objection.

32.    Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Eighteenth Omnibus Claims Objection and who is served with the Eighteenth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Eighteenth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order, provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

15

### Replies To Responses

33.      Replies to any Responses will be governed by the Claims Objection

Procedures Order.

### Service Of Eighteenth Omnibus Claims Objection Order

34.      Service of any order with regard to this Eighteenth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

### Further Information

35.      Questions about this Eighteenth Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed to

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

### Notice

36.      Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418), and

16

the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026,

9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And

(II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

        37.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this

Eighteenth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection, as well as a copy of the Claims Objection Procedures Order.  A form of

Notice Of Objection To Claim is attached hereto as Exhibit B.  Claimants will receive a copy of

this Eighteenth Omnibus Claims Objection without Exhibit A hereto.  Claimants will nonetheless

be able to review Exhibit A hereto free of charge by accessing the Debtors' Legal Information

Website (www.delphidocket.com).  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

## Memorandum Of Law

        38.     Because the legal points and authorities upon which this objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          July 13, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 9331)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

   - and -

By:   /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

18