**Hearing Date And Time: August 16, 2007 at 10:00 a.m.**
**Response Date And Time: August 9, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                              :
           In re                              :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :      Case No. 05-44481 (RDD)
                                              :
                                              :      (Jointly Administered)
                   Debtors.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' NINETEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY
DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) UNTIMELY CLAIM, AND (D) CLAIMS SUBJECT TO MODIFICATION, TAX
CLAIMS SUBJECT TO MODIFICATION, MODIFIED CLAIMS ASSERTING RECLAMATION,
AND CONSENSUALLY MODIFIED AND REDUCED CLAIMS

("NINETEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject to Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (the "Nineteenth Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the Creditors' Committee, the "Statutory Committees").

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.[2]

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L., whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.        Events Leading To The Chapter 11 Filing

8.        In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.        The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

10.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

11.     On March 31, 2006, the Company outlined five key tenets of its

transformation plan.[4]  First, Delphi must modify its labor agreements to create a competitive

arena in which to conduct business.[5]  Second, the Debtors must conclude their negotiations with

---

[4]     In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement (the "Equity Purchase and Commitment
Agreement") with affiliates of Appaloosa Management L.P. ("Appaloosa"), Cerberus Capital Management, L.P.
("Cerberus"), and Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger"), as well as Merrill Lynch & Co.
("Merrill") and UBS Securities LLC ("UBS") (collectively, the "Plan Investors"), and a plan framework support
agreement (the "Plan Framework Support Agreement") with the Plan Investors and GM.  On April 19, 2007,
Delphi confirmed that it anticipated negotiating changes to the Equity Purchase and Commitment Agreement
and related Plan Framework Support Agreement.  Delphi said that any changes would be made primarily as a
result of addressing differences in views regarding the Company's reorganization enterprise value among the
Plan Investors, GM, the Statutory Committees, and the Company.  Delphi also said that it expected that under
amended framework agreements, the Appaloosa and Harbinger affiliates, Merrill, and UBS would continue to
participate as Plan Investors (together with possible additional investors that may include members of the
Statutory Committees), and that Cerberus might participate in the Company's exit financing, as part of a
competitive process, but not as a Plan Investor.  As part of the process of negotiating amended framework
agreements, on July 9, 2007, Delphi confirmed that it had formally terminated the Equity Purchase and
Commitment Agreement and related Plan Framework Support Agreement but that it expects to enter into new
framework agreements with plan investors later this month.

[5]     Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union,
United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a)
modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the
UAW, and its various locals, (b) provides that GM will undertake certain financial obligations to Delphi's
UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare
benefits for certain UAW-represented retirees of the Debtors.  The agreement, which is subject to approval by

*(cont'd)*

GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

GM's business commitment to the Company.[6]  Third, the Debtors must streamline their product

portfolio to capitalize on their world-class technology and market strengths and make the

necessary manufacturing alignment with their new focus.[7]  Fourth, the Debtors must transform

their salaried workforce to ensure that the Company's organizational and cost structure is

competitive and aligned with its product portfolio and manufacturing footprint.[8]  Finally, the

Debtors must devise a workable solution to their current pension situation.[9]

        12.      Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

_____

*(cont'd from previous page)*

    this Court, should facilitate the Debtors' reaching consensual resolutions of their labor issues with the remaining unions and GM and permit the Debtors to continue to implement their transformation plan and to develop, prosecute, confirm, and consummate a plan of reorganization.  Delphi is currently engaged in settlement discussions with its second and third largest U.S. labor unions and is working to conclude discussions with those unions as well as three smaller unions as soon as possible.

[6]    On July 9, 2007, Delphi confirmed that its discussions with GM on a comprehensive settlement agreement had entered the documentation phase and that it expected that a settlement with GM would be incorporated into the Debtors' plan of reorganization rather than filed with this Court for separate approval.

[7]    Indeed, during the 2006 and 2007 calendar years, the Debtors sold substantially all of the assets related to MobileAria, Inc., its chapter 11 affiliate, they obtained court approval for the sale of substantially all of the assets of their brake hose business, and they obtained court approval of bid procedures related to the upcoming sale of substantially all assets used in their catalyst business and their Saltillo, Mexico brake plant business.  In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[8]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.

[9]    To that end, on May 31, 2007, the Bankruptcy Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees.  Should certain events not occur prior to September 30, 2007, the Debtors may need to seek an additional pension waiver or other relief from the IRS.

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

E.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

13.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

14.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

15.    In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>, <u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the <u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>, the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester Democrat and Chronicle</u>, the <u>Saginaw News</u>, the <u>Sandusky</u>, the <u>Tribune Chronicle</u>, the <u>Tulsa World</u>, the <u>Tuscaloosa News</u>, and the <u>Vindicator</u>, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

16.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been filed against the Debtors in these cases.  The Debtors have filed nine omnibus procedural Claims objections[10] and eight omnibus substantive Claims objections.[11]  Pursuant to such omnibus

---

[10]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006; the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15, 2007; the Tenth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16, 2007; the Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7824) on April 27, 2007; the Fourteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 7998) on May 22, 2007; and the Sixteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 8271) on June 15, 2007.

[11]    The Debtors filed the (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By

*(cont'd)*

Claims objections, the Court has disallowed and expunged 9,037 Claims.  In addition, the

hearings with respect to approximately 772 Claims have been adjourned to future claims

hearings pursuant to the Claims Objection Procedures Order (as defined below) and another 283

Claims are subject to pending objections.

       17.     On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

---

*(cont'd from previous page)*

Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate
Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006;
the Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And
Records  (Docket No. 6100) on December 8, 2006; the Seventh Omnibus Objection (Substantive) Pursuant To
11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims
Not Reflected On Debtors' Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12,
2007; the Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007
To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records,
(c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; the
Eleventh Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (a) Insufficiently Documented Claims (B) Claims Not Reflected On Debtors' Books and Records, (c)
Untimely Claims, and (D) Claims Subject To Modification (Docket No. 7301) on March 16, 2007; the
Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To
Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c)
Protective Insurance Claims, (d) Insurance Claims Not Reflected On Debtors' Books And Records, (e)
Untimely Claims An Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims Subject To
Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825) on April
27, 2007; the Fifteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P.
3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And
Records, (C) Untimely Claims And Untimely Tax Claim, And (D) Claims Subject To Modification, Tax Claims
Subject To Modification, and Modified Claims Asserting Reclamation (Docket No. 7999) on May 22, 2007;
and the Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P.
3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And
Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And
Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And
Modified Claims Asserting Reclamation (Docket No. 8270) on June 15, 2007.

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

18.    In this Nineteenth Omnibus Claims Objection, the Debtors are objecting to

270 Proofs of Claim.[12]

<u>Relief Requested</u>

19.    By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (a) disallowing and expunging those

Claims set forth on <u>Exhibit A</u> hereto because they contain insufficient documentation in support

of the Claims asserted, (b) disallowing and expunging those Claims set forth on <u>Exhibit B-1</u>

hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors'

books and records, (c) disallowing and expunging the Claims set forth on <u>Exhibit B-2</u> hereto,

which were filed by taxing authorities, because they assert liabilities and dollar amounts that are

not reflected on the Debtors' books and records, (d) disallowing and expunging those Claims set

forth on <u>Exhibit B-3</u> hereto, which were filed by taxing authorities, because they assert liabilities

or dollar amounts that are not reflected on the Debtors' books and records and were untimely

filed pursuant to the Bar Date Order, (e) disallowing and expunging the Claim set forth on

<u>Exhibit C</u> hereto because it was untimely filed pursuant to the Bar Date Order, (f) revising the

asserted amount or classification, and/or changing the identity of the alleged Debtor, with respect

to the Claims set forth on <u>Exhibit D-1</u> hereto, (g) revising the asserted amount or classification,

---

[12]    Contemporaneously with the Nineteenth Omnibus Claims Objection, the Debtors are filing the Eighteenth
Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain
Duplicate Or Amended Claims (the "Eighteenth Omnibus Claims Objection"). In the Eighteenth Omnibus
Claims Objection, the Debtors object to claims on procedural grounds and are seeking to expunge and disallow
Claims that are duplicative of other Claims or have been amended or superseded by later filed Claims. The
Debtors are objecting to nine Proofs of Claim in the Eighteenth Omnibus Claims Objection.

and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on Exhibit D-2 hereto, which were filed by taxing authorities, (h) revising the asserted amount and/or classification with respect to the Claims set forth on Exhibit D-3 hereto, some of which are subject to a letter agreement pursuant to which the Debtors and the Claimant agreed upon the valid amount of such Claimant's reclamation demand, subject to certain reserved defenses, and others of which are held by Claimants who are deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand, subject to certain reserved defenses, and (i) revising the asserted amount, and/or changing the identity of the alleged Debtor, with respect to the Claims set forth on Exhibit D-4 hereto, which assert certain tort liabilities.

Objections To Claims

F.    Insufficiently Documented Claims

20.    During their Claims review, the Debtors discovered that certain Proofs of Claim do not include sufficient documentation to support the claim asserted (the "Insufficiently Documented Claims").  This deficiency in documentation has made it impossible for the Debtors meaningfully to review the asserted Claims.  Although the Debtors contacted each Claimant which filed an Insufficiently Documented Claim (other than those Claimants which filed a blank proof of claim form), the Debtors received no additional documentation from such Claimants.[13]

21.    The burden of proof to establish a claim against an estate rests on the claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

---

[13]    Claimants which responded to the Debtors' communications and provided additional information are not included as part of this objection.

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibit A to provide sufficient documentation to permit an understanding of the basis for

their Claims, those Claims do not make out a prima facie case against the Debtors.

   22.  The Insufficiently Documented Claims either (a) fail to assert a Claim, (b)

fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against

the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence

of the Debtors' liability for the Claim.

   23.  Attached hereto as Exhibit A is a list of the Insufficiently Documented

Claims which the Debtors have identified as Claims that do not contain sufficient documentation

to permit an understanding of the basis for the Claim.[14]  Accordingly, the Debtors (a) object to

the Insufficiently Documented Claims and (b) seek entry of an order disallowing and expunging

the Insufficiently Documented Claims in their entirety.  In the event that this Court does not

---

[14] Certain of the Claims on Exhibits A, B-1, B-2, B-3, C, D-1, D-2, D-3, and D-4 may be listed in the amount of
  $0.00.  This reflects the fact that the Claim amounts asserted by the Claimants in those instances is unliquidated.

disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Insufficiently Documented Claims at a later date on any basis whatsoever.

G.    Claims Not Reflected On The Debtors' Books And Records

24.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books And Records Claims").  In addition, the Debtors determined that certain Proofs of Claim filed by taxing authorities also assert liabilities and dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books And Records Tax Claims").  The Debtors have also determined that certain Proofs of Claim filed by taxing authorities assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant to the Bar Date Order (the "Untimely Books And Records Tax Claims").  The Debtors believe that the parties asserting the Books And Records Claims, the Books And Records Tax Claims, and the Untimely Books And Records Tax Claims are not creditors of the Debtors.

25.    The bases for determining that the Debtors are not liable for an asserted Claim include, but are not limited to, the following: (a) the Debtors' books and records do not reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this Court, (c) the Debtors' books and records reflect that the asserted Claim was properly paid prior to the commencement of the Debtors' cases, and (d) the Claim constitutes a postpetition liability that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

26.    A claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at

13

*4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  <u>Id</u>.

27.    Attached hereto as <u>Exhibit B-1</u> is a list of the Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Identified on <u>Exhibit B-2</u> hereto are the Books And Records Tax Claims that the Debtors have identified as Claims for which the Debtors are not liable.   Attached hereto as <u>Exhibit B-3</u> is a list of the Untimely Books And Records Tax Claims that the Debtors have also identified as Claims for which the Debtors are not liable.[15]  The Debtors object to the Untimely Books And Records Tax Claims not only because the Debtors have no liability in respect thereof, but also because the Claims were not timely filed pursuant to the Bar Date Order.[16]  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books And Records Claims, the Books And Records Tax Claims, and the Untimely Books And Records Tax Claims at a later date on any basis whatsoever.

28.    Accordingly, the Debtors (a) object to the Books And Records Claims, the Books And Records Tax Claims, and the Untimely Books And Records Tax Claims and (b) seek

---

[15]    The Untimely Books And Records Tax Claims listed on <u>Exhibit B-3</u> hereto were not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

[16]    The Bar Date Order provides, in relevant part:

Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

14

entry of an order disallowing and expunging the Books And Records Claims, the Books And

Records Tax Claims, and the Untimely Books And Records Tax Claims in their entirety.

H.    Untimely Claim

29.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that a certain Proof of Claim was received by the Debtors after the Bar Date (the "Untimely

Claim").  The Debtors object to such Untimely Claim on the basis that it was not timely filed

pursuant to the Bar Date Order.  The Untimely Claim is identified on Exhibit C hereto.

Accordingly, the Debtors (a) object to the Untimely Claim[17] and (b) seek entry of an order

disallowing and expunging the Untimely Claim.

I.    Claims Subject To Modification

30.    During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims (a) state the incorrect amount or are overstated, including as a

result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against

the wrong Debtors, and/or (c) incorrectly assert secured or priority status (collectively, the

"Claims Subject To Modification").

31.    Although in this Nineteenth Omnibus Claims Objection the Debtors do not

seek to disallow and expunge the Claims Subject To Modification, based on an initial review, the

Debtors have determined that their liability with respect to each such Claim does not exceed the

dollar amount set forth on Exhibit D-1 hereto.  Moreover, in some cases, the Debtors have

determined that such Claims should be reclassified in the manner set forth on Exhibit D-1 hereto.

Finally, in some cases, the Debtors have determined that such Claims should be asserted against

---

[17]    The Untimely Claim listed on Exhibit C hereto was not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

a different Debtor entity, as indicated on Exhibit D-1 hereto by a change in the applicable case

number.  The bases for placing a Claim in the Claims Subject To Modification category of

objection include, but are not limited to, the following: the asserted Claim (a) does not account

for amounts that may have been paid or credited against such Claim prior to the commencement

of these cases, (b) may include postpetition liabilities, (c) does not account for amounts that may

have been paid or credited against such Claim following the commencement of these cases, (d)

was docketed and filed against the wrong Debtor entity, and/or (e) is misclassified as a priority

or secured claim.  Thus, the Debtors seek to (i) convert the amount of each Claim Subject To

Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors'

books and records and/or the liquidated amount requested by the Claimant (thus eliminating the

unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the

Claim is asserted, and/or (iii) appropriately reclassify the Claim.

        32.     As stated above, a Claimant's Proof of Claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims,

the Debtors' books and records refute that the claims asserted in each Claim Subject To

Modification are actually owed by any of the Debtors.

        33.     Set forth on Exhibit D-1 hereto is a list of Claims Subject To Modification

that the Debtors believe should be modified solely to assert a properly classified, fully liquidated

claim amount against a different Debtor than the one identified by the Claimant.  For each Claim

Subject To Modification, Exhibit D-1 reflects the amount, classification, and Debtor asserted in

the Claimant's Proof of Claim in a column titled "Claim As Docketed,"[18] and the proposed

modified dollar amount and classification for the Claim and the Debtor against which the Claim

should be asserted, in a column titled "Claim As Modified."

34.    The Debtors object to the amount, classification, and/or identity of the

Debtor for each Claim Subject To Modification listed on Exhibit D-1 and request that each such

Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

Modified" column of Exhibit D-1.  Thus, no Claimant listed on Exhibit D-1 would be entitled to

(a) recover for any Claim Subject To Modification in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on Exhibit D-1, (b) assert a classification that is

inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against

a Debtor other than that whose case number is listed in the "Claim As Modified" column on

Exhibit D-1, subject to the Debtors' right to further object to each such Claim Subject To

Modification.  For clarity, Exhibit D-1 refers to the Debtor entities by case number and Exhibit E

displays the formal name of twelve Debtor entities and their associated bankruptcy case numbers

referenced in Exhibit D-1.

35.    The inclusion of the Claims Subject To Modification on Exhibit D-1,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims

Subject To Modification at a later date on any basis whatsoever.

36.    Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or identity of the Debtor for each Claim Subject To Modification and (b) seek an order

modifying the Claims Subject To Modification to reflect the Modified Total, classification for

---

[18]    The Asserted Claim Amount on Exhibits D-1, D-2, D-3, and D-4 reflects only asserted liquidated claims.

the Claim, and/or the Debtor against which such Claim should be asserted, as set forth on <u>Exhibit D-1</u>.

J.    <u>Tax Claims Subject To Modification</u>

37.    In addition, the Debtors have also determined that certain Proofs of Claim filed by taxing authorities (the "Tax Claims") (a) are overstated and/or (b) were filed and docketed against the wrong Debtors (collectively, the "Tax Claims Subject To Modification").

38.    Set forth on <u>Exhibit D-2</u> hereto is a list of Tax Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For each Tax Claim Subject To Modification, <u>Exhibit D-2</u> reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and classification for the Tax Claim, and the Debtor against which the Tax Claim should be asserted in a column titled "Claim As Modified."

39.    The Debtors object to the amount and/or identity of the Debtor for each Tax Claim Subject To Modification listed on <u>Exhibit D-2</u> and request that each such Claim be revised to reflect the amount and Debtor listed in the "Tax Claim As Modified" column of <u>Exhibit D-2</u>.  Thus, no Claimant listed on <u>Exhibit D-2</u> would be entitled to (a) recover for any Tax Claim Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on <u>Exhibit D-2</u>, and/or (b) asserts a classification that is inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against a Debtor other than that whose case number is listed in the "Claim As Modified" column on <u>Exhibit D-2</u>, subject to the Debtors' right to further object to each such Tax Claim Subject To Modification.  For clarity, <u>Exhibit D-2</u> refers to the Debtor entities by case number and <u>Exhibit E</u>

18

displays the formal name of twelve Debtor entities and their associated bankruptcy case numbers

referenced in Exhibit D-2.

40.    Accordingly, the Debtors (a) object to the asserted amount and/or Debtor

for each Tax Claim Subject To Modification and (b) seek an order modifying the Tax Claims

Subject To Modification to reflect the Modified Total and/or Debtor against which such Claims

should be asserted, as set forth on Exhibit D-2.

K.    Modified Claims Asserting Reclamation

41.    In addition, the Debtors have also determined that certain Claims (the

"Modified Claims Asserting Reclamation") (a)(i) state the incorrect amount or are overstated,

including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and

docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b)

assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter

agreement whereby the Debtors and the Claimant agreed upon the valid amount of the

reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors'

determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each,

a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and

notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation

Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses")

with respect to the reclamation demand are valid.

42.    Set forth on Exhibit D-3 hereto is a list of Modified Claims Asserting

Reclamation that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim

Asserting Reclamation, Exhibit D-3 reflects the amount, classification, and Debtor asserted in

the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar

amount and classification for Modified Claim Asserting Reclamation, and the Debtor against which such Claim should be asserted, in a column titled "Claim As Modified."

      43.    The Debtors object to the amount, classification, and/or identity of the Debtor for each Modified Claim Asserting Reclamation listed on Exhibit D-3 and request that each such Claim be revised to reflect the amount, classification, and identity of the Debtor listed in the "Claim As Modified" column of Exhibit D-3.  Thus, no Claimant listed on Exhibit D-3 would be entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit D-3, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand, or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit D-3, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  For clarity, Exhibit D-3 refers to the Debtor entities by case number and Exhibit E displays the formal name of twelve Debtor entities and their associated bankruptcy case numbers referenced in Exhibit D-3.

      44.    Accordingly, the Debtors (a) object to the amount, classification, and/or identity of the Debtor for the Modified Claims Asserting Reclamation and (b) seek an order modifying the Modified Claims Asserting Reclamation to reflect the Modified Total, classification, and/or identity of the Debtor against which such Claim should be asserted, as set forth on Exhibit D-3.

L.    Consensually Modified And Reduced Claims

      45.    In addition, the Debtors have reached agreements with certain Claimants that their Proofs of Claim asserting certain tort liabilities (the "Tort Claims") should be reduced

and, in some cases, the identity of the Debtor against which the Tort Claim is asserted should be

changed (collectively, the "Consensually Modified And Reduced Claims").

46.     The Debtors do not seek to disallow and expunge the Consensually

Modified And Reduced Claims.  The Debtors have determined that their liability with respect to

each such Claim does not exceed the dollar amount set forth in the column titled "Claim As

Modified" on Exhibit D-4 hereto.  Moreover, the Debtors have determined that all such Claims

should be asserted against Delphi Automotive Systems LLC ("DAS LLC"), as indicated on

Exhibit D-4 hereto.  Thus, the Debtors seek to (i) convert the amount of each Consensually

Modified And Reduced Claim to a fully liquidated, U.S. dollar-denominated amount and, as

appropriate, (ii) change the identity of the Debtor for which the Claim is asserted from Delphi to

DAS LLC.

47.     Set forth on Exhibit D-4 hereto is a list of Consensually Modified And

Reduced Claims that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against DAS LLC.  For each Consensually Modified And Reduced

Claim, Exhibit D-4 reflects the amount, classification, and Debtor asserted in the Claimant's

Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar

amount and classification for the Claim, and the Debtor against which the Claim should be

asserted, in a column titled "Claim As Modified."

48.     The Debtors object to the amount and/or identity of the Debtor for each

Consensually Modified And Reduced Claim listed on Exhibit D-4 and request that each such

Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

Modified" column of Exhibit D-4.  Thus, no Claimant listed on Exhibit D-4 would be entitled to

(a) recover for any Consensually Modified And Reduced Claim in an amount exceeding the

dollar value listed as the "Modified Total" for such Claim on Exhibit D-4, (b) assert a

classification that is inconsistent with that listed in the "Claim As Modified" column, and/or (c)

assert a Claim against a Debtor other than DAS LLC.

49.    Accordingly, the Debtors (a) object to the amount and/or identity of the

Debtor for the Consensually Modified And Reduced Claims and (b) seek an order modifying the

Consensually Modified And Reduced Claims to reflect the Modified Total and that DAS LLC is

the correct Debtor entity against which such Claims should be asserted, as set forth on Exhibit D-

4.

Separate Contested Matters

50.    Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Nineteenth Omnibus Claims Objection,

each such Claim and the objection to such Claim asserted in this Nineteenth Omnibus Claims

Objection will be deemed to constitute a separate contested matter as contemplated by

Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered

by the Court with respect to an objection asserted in this Nineteenth Omnibus Claims Objection

will be deemed a separate order with respect to each Claim.

Reservation Of Rights

51.    The Debtors expressly reserve the right to amend, modify, or supplement

this Nineteenth Omnibus Claims Objection and to file additional objections to the Proofs of

Claim or any other Claims (filed or not) which may be asserted against the Debtors, including

without limitation the right to object to any Claim on the basis that it has been asserted against

the wrong Debtor entity.  Should one or more of the grounds for objection stated in this

Nineteenth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on

22

other stated grounds or on any other grounds that the Debtors discover during the pendency of
these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to
the extent that such Claim has been paid.

Responses To Objections

52.    Responses to the Nineteenth Omnibus Claims Objection are governed by
the provisions of the Claims Objection Procedures Order.  The following summarizes the
provisions of that Order, but is qualified in all respects by the express terms thereof.

M.    Filing And Service Of Responses

53.    To contest an objection, responses (each, a "Response"), if any, to the
Nineteenth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules
of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York,
and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in
accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's
case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch
disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based
word processing format), (d) be submitted in hard copy form directly to the chambers of the
Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court
for the Southern District of New York, One Bowling Green, Room 632, New York, New York
10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098
(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom
LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,
John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00
p.m. (prevailing Eastern time) on August 9, 2007.**

N.    <u>Contents Of Responses</u>

54.    Every Response to this Nineteenth Omnibus Claims Objection must

contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; <u>provided</u>,
<u>however</u>, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; <u>provided further</u>, <u>however</u>, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

O.    <u>Timely Response Required</u>

55.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on August 16,

2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection

Procedures Order will apply to all Responses and hearings arising from this Nineteenth Omnibus

Claims Objection.

24

56.     Only those Responses made in writing and timely filed and received will

be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Nineteenth

Omnibus Claims Objection and who is served with the Nineteenth Omnibus Claims Objection

fails to file and serve a timely Response in compliance with the Claims Objection Procedures

Order, the Debtors may present to the Court an appropriate order seeking relief with respect to

such Claim consistent with the relief sought in the Nineteenth Omnibus Claims Objection

without further notice to the Claimant, provided that, upon entry of such an order, the Claimant

will receive notice of the entry of such order as provided in the Claims Objection Procedures

Order; provided further, however, that if the Claimant files a timely Response which does not

include the required minimum information required by the Claims Objection Procedures Order,

the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in

accordance with the Claims Hearing Procedures Order.

57.     To the extent that a Claim would be subject to estimation pursuant to

section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with

the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or

partially unliquidated and (b) provides the amount that the Claimant believes would be the

allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,

as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection

Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted

Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the

Bankruptcy Code for all purposes other than allowance, but including voting and establishing

reserves for purposes of distribution, subject to further objection and reduction as appropriate

and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

<u>Replies To Responses</u>

58.    Replies to any Responses will be governed by the Claims Objection Procedures Order.

<u>Service Of Nineteenth Omnibus Claims Objection Order</u>

59.    Service of any order with regard to this Nineteenth Omnibus Claims Objection will be made in accordance with the Claims Objection Procedures Order.

<u>Further Information</u>

60.    Questions about this Nineteenth Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims hereunder should be directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton). Questions regarding the amount of a Claim or the filing of a Claim should be directed to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

61.    Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418), and

the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026,

9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And

(II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

      62.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this

Nineteenth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A, B-1, B-2, B-3,

and C is attached hereto as Exhibit F.  A form of the Notice Of Objection To Claim to be sent to

the Claimants listed on Exhibits D-1, D-2, D-3, and D-4 is attached hereto as Exhibit G.

Claimants will receive a copy of this Nineteenth Omnibus Claims Objection without Exhibits A

through D-4 hereto.  Claimants will nonetheless be able to review Exhibits A through D-4 hereto

free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).

In light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

<u>Memorandum Of Law</u>

      63.     Because the legal points and authorities upon which this objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

              WHEREFORE the Debtors respectfully request that the Court enter an order (a)

granting the relief requested herein and (b) granting the Debtors such other and further relief as is

just.

Dated:  New York, New York
       July 13, 2007

                           SKADDEN, ARPS, SLATE, MEAGHER
                              & FLOM LLP

                           By:  /s/ John Wm. Butler, Jr.
                              John Wm. Butler, Jr. (JB 4711)
                              John K. Lyons (JL 9331)
                              Ron E. Meisler (RM 3026)
                           333 West Wacker Drive, Suite 2100
                           Chicago, Illinois 60606

                               - and -

                           By:  /s/ Kayalyn A. Marafioti
                              Kayalyn A. Marafioti (KM 9632)
                              Thomas J. Matz (TM 5986)
                           Four Times Square
                           New York, New York 10036

                           Attorneys for Delphi Corporation, et al.,
                              Debtors and Debtors-in-Possession