**Hearing Date And Time: July 20, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtor. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF WILLIAM COSNOWSKI, JR. IN SUPPORT OF DEBTORS'
OBJECTION TO ROBERT BOSCH GMBH'S MOTION TO AMEND PROOF OF CLAIM

("COSNOWSKI DECLARATION – OBJECTION TO BOSCH MOTION")

I, William Cosnowski, Jr., declare as follows:

1.  I serve as Divisional Counsel for Delphi Electronic and Safety, the business unit responsible for manufacture and sale of the accused products of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in these chapter 11 cases (collectively, the "Debtors"). I am also litigation and intellectual property counsel to the Debtors. I have been employed by the Debtors for the past five years.

2.  I submit this declaration in support of the Debtors' Objection To Robert Bosch GmbH's Motion To Amend Proof Of Claim (the "Objection"), dated July 13, 2007. Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Objection.

3.  Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, and my experience with and knowledge of the following patents: US-5,482,314, US-6.422.596, EP-434.679, DE-199.581.61, EP-458.796, DE-4.040.927, DE-196.514.52, DE-3.729.785, EP-1066174, EP-757.635, and US 6,272,411. If I were called upon to testify, I could and would testify to the facts set forth herein.

Patents – Unique Inventions

4.  A patent for an invention is the grant of a property right to the inventor that is issued by the United States Patent and Trademark Office. The right conferred by the patent grant is not the right to make, use, sell, or import, but "the right to exclude others from making, using, offering for sale, or selling" the invention in the United States or "importing" the invention into the United States.

2

        5.       Inventors may obtain patents with claims directed to protect (i) devices or apparatuses or (ii) processes and methods. Device/apparatus claims cover inventions directed to the structural and functional aspects of physical products, objects, and/or systems. Process/method claims cover inventions directed to steps for using and performing an arrangement of tasks to accomplish a defined purpose.

        6.       Bosch GmbH's Motion identifies the products that allegedly infringe the patents as electronic control units or "ECUs." ECU is a generic and overly simplistic term which does not properly identify or classify the Debtors' products. Instead, the products that Bosch GmbH alleges infringe its patents relate to either occupant detection systems or airbag control modules, which are two distinct product lines. The occupant detection devices are installed within the seat of a vehicle and are designed to identify whether the occupant in the front passenger seat is the size of a child or an adult and accordingly determine whether the passenger airbag should be suppressed. The airbag control module is a computer that evaluates vehicle safety data and that triggers air bag system deployment when there is an impact.

        7.       Three of the eleven patents allegedly infringed apply to occupant detection devices (patents US-5,482,314, EP-757.635, and US-6,272,411 (the "New Patent"), collectively, the "Occupant Detection Patents"), while the other eight patents cover air bag control modules, (patents US-6,422,596, EP-434.679, DE-199.581.61, EP-458.796, DE-4.040.927, DE-196.514.52, DE-3.729.785, and EP-1066174, the "Airbag Control Module Patents"). Although patent US-5,482,314, a copy of which is attached hereto as Exhibit A, and patent US-6,272,411, a copy of which is attached here to as Exhibit B, cover occupant detection processes, they are unique inventions. See Comparison Of Patents Chart, attached hereto as Exhibit C. Generally, patent US 5,482,314 includes at least a six-step process to use sensors to develop a set of electrical signals and then evaluates those signals to potentially generate a de-activate signal for

3

the passive restraint signal in a specific manner using confidence values, fused features, empirical relationships, and other criteria.  See Exhibit A at 25.  In contrast, the New Patent generally uses at least a three-step process in which sensors periodically provide data that is then compared with a historical database to determine if there is a change in occupancy that may correspond to preselected criteria for signals to the passive restraint system.  See Exhibit B at 26.

        8.      Infringement is determined by the language of the claims, which are the parts of a patent which define the boundaries of the patent's protection.  If a product or method does not fall within the specific language of all properly interpreted claim elements of the patent, there is no literal infringement.  Even where no literal infringement exists, an accused product may infringe a patent under the doctrine of equivalents. The doctrine of equivalents permits courts to extend the scope of protection beyond the claim's literal meaning in certain circumstances where a substitute element in the accused product matches the function, way, and result of the claimed element and where the substitute element in the accused product is only insubstantially different from the claimed element in the asserted patent. In both cases, under either literal infringement or infringement under the doctrine of equivalents, the determination of infringement requires fact intensive analysis.

        9.      Here, the New Patent is distinct from the other patents listed in the Bosch GmbH Claim. The six claims of the New Patent are unique, distinct, and cover different inventions from all of the other claims set forth in the other asserted patents.  To demonstrate infringement on the New Patent, Bosch GmbH would need to establish a completely different set of facts than those needed to prove other patent infringement claims asserted in the Bosch GmbH Claim.  For Bosch GmbH to successfully prosecute a patent infringement claim with respect to the New Patent, Bosch GmbH must at least demonstrate that the Debtors' occupant detection product falls within the language of the three elements identified in the first claim of the New

Patent.  These three elements in the first claim define the boundaries of the claimed invention and the New Patent's protection, which does not overlap with the factual analysis that would be necessary to determine infringement of any other patents held by Bosch GmbH and identified in the Bosch GmbH Claim.  Additionally, to defend against the alleged infringement of the New Patent will require the Debtors to develop and introduce unique facts to support its defenses of patent invalidity and inequitable conduct, which will be different from the facts to be raised by the Debtors to prove invalidity of the other patents asserted in the Bosch GmbH Claim.

10. The evidence necessary to establish infringement of the New Patent will likely include facts relating to construction/interpretation of the elements of the claims in the patent, proofs of the alleged literal infringement (i.e., comparing each element of each asserted patent claim to the corresponding feature or structure in the accused products), and proofs of alleged infringement under the doctrine of equivalents (i.e., identifying equivalents to the claim elements in the accused product and determining if insubstantial differences exist).

11. To defend each patent infringement claim, the Debtors will present unique evidence to support the Debtors' interpretations of the claims in the patent and to demonstrate that the characteristics of the various accused products differ from the required elements of the asserted patent either literally or under the doctrine of equivalents.

12. The Debtors will be able to assert statutory and equitable defenses, including but not limited to patent invalidity, inequitable conduct, and latches, all of which will require facts exclusive to challenge the New Patent that are different from the facts the Debtors would offer against the patents identified in the Bosch GmbH Claim.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.


           */s/ William Cosnowski, Jr.*
           William Cosnowski, Jr.

Dated this 13th day of July, 2007