**Hearing Date: August 30, 2007**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

Malani J. Sternstein (MS 3882)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza, Suite 2400
New York, New York 10112
Telephone: 212-332-3800 • Facsimile: 212-332-3888
Email: msternstein@sheppardmullin.com

Theodore A. Cohen (TC-4164) (admitted pro hac vice)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Telephone: 213-620-1780 • Facsimile: 213-620-1398
Email: tcohen@sheppardmullin.com

Andrew H. Friedman, P.C. (AF-8323) (pro hac vice application pending)
HELMER FRIEDMAN LLP
723 Ocean Front Walk
Venice, California 90291
Telephone: 310-396-7714 • Facsimile: 310-396-9215
Email: afriedman@helmerfriedman.com

*Attorneys for Creditor Gary Whitney*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>**DELPHI CORPORATION, <u>et al.</u>,**<br>**Debtors.** | Chapter 11<br>Case No. 05-44481 (RDD)<br>Jointly Administered |
| GARY WHITNEY,<br>      Claimant and Plaintiff,<br>    v.<br>DELPHI CORPORATION,<br>      Debtor and Defendant. | Contested Matter (Bankruptcy Rule 9014)<br>Claim No. 10157<br><br>Claim Filed:    July 21, 2006 |

## CLAIMANT GARY WHITNEY'S SUPPLEMENTAL RESPONSE

## TABLE OF CONTENTS

I.    BRIEF FACTUAL BACKGROUND .............................................. 1

II.   RESPONSE TO DEBTOR'S STATEMENT OF DISPUTED ISSUES ................ 7

      A.   Delphi Incorrectly States That Mr. Whitney Has No Direct or
           Circumstantial Evidence of Discrimination; Mr. Whitney Has Both .............. 7

           1.   Mr. Whitney Possesses Sufficient Direct Evidence of
                Discrimination to Prevail on His Age Discrimination Claim .............. 7

           2.   Mr. Whitney Possesses Sufficient Indirect or Circumstantial
                Evidence of Discrimination to Prevail on His Age Discrimination
                Claim ...................................................... 8

                a.   Mr. Whitney Can Establish a *Prima Facie* Case of
                     Age Discrimination ........................................ 9

                b.   Mr. Whitney Can Demonstrate That The Purportedly
                     Legitimate Reasons Offered by Delphi Were Not True,
                     but Were a Pretext for Discrimination ........................ 12

                     i.    Mr. Whitney Can Prove Pretext by Demonstrating
                           that the Purportedly Legitimate, Non-Discriminatory
                           Reasons Articulated By Delphi Are False .............. 12

                     ii.   Mr. Whitney Can Also Prove Pretext By
                           Showing that Delphi Failed to Follow Its Own
                           Termination Policies When Firing Him ................ 14

                     iii.  Mr. Whitney Can Also Prove Pretext by Showing
                           That Delphi Offered to Pay Him to Release
                           Any Claims – Including Age Discriminations
                           – That He Had Against It ........................... 15

                c.   Mr. Whitney's Refutation of Delphi's Articulated
                     Reasons for His Termination in Combination with
                     His Other Evidence Is More than Enough to Prove
                     Intentional Age Discrimination ............................. 15

      B.   Delphi Erroneously Attempts to Rely on the Hirer-Firer Theory ................ 16

      C.   Delphi Falsely Argues that Mr. Whitney Failed to Mitigate His
           Damages ...................................................... 18

III.  IDENTIFICATION OF WITNESSES AND PRODUCTION OF
      DECLARATIONS ..................................................... 19

## TABLE OF AUTHORITIES

### CASE AUTHORITIES

Ainsworth v. Independent School Dist., – F.3d – , 2007 WL 1180420 (2007) . . . . . . . . . . . . . . . 14

Caldwell v. Paramount Unified School Dist., 41 Cal.App.4th 189 (1995) . . . . . . . . . . . . . . . . . 9

Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cassino v. Reichhold Chem., Inc., 817 F.2d 1338 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18

Coleman v. City of Omaha, 714 F.2d 804 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

Coleman v. Quaker Oats Co., 232 F.3d 1271 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Donald Schriver, Inc. v. Fair Employment & Housing Com., 220 Cal. App. 3d 396 (1986)  18, 19

Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Hersant v. California Dept. of Social Services, 57 Cal. App. 4th 997 (1997) . . . . . . . . . . . . 9, 10

Hodgens v. General Dynamics Corp., 144 F.3d 151 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286 (2006) . . . . . . . . . . . . . . . . . . 14

Johnson v. Trustees of Durham Technical Community College, 139 N. C. App. 676 (2000)  . . 18

Jones v. Consolidated Rail Corp., 800 F.2d 590 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Morgan v. Hilti, Inc., 108 F.3d 1319 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

O'Mary v. Mitsubishi Electronics America, Inc., 59 Cal.App.4th 563 (1997) . . . . . . . . . . . . . . 8

Oest v. Illinois Dep't of Corrections, 240 F.3d 605 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Proud v. Stone, 945 F.2d 796 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . 9, 15

Rudin v. Lincoln Land Community Coll., 420 F.3d 712 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46 (2000) . . . . . . . . . . . . . . . . . 12

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) . . . . . . . . . . . . . . . . . . . . . . . 12, 15

ii

Swanks v. Washington Metropolitan Area Transit Authority, 179 F.3d 929 (1999) . . . . . . . . . . 17

U.S. v. Tocco, 135 F.3d 116 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


**STATUTORY AND REGULATORY AUTHORITIES**

California Fair Employment and Housing Act, Cal. Gov. Code, § 12940(a)  . . . . . . . . . . . . . . . 1

Federal Rule of Evidence 801(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


**OTHER AUTHORITIES**

Friedman, Litigating Employment Discrimination Cases (James Publishing 2007)
        §8:124.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Friedman, Litigating Employment Discrimination Cases (James Publishing 2007)
        §8:131.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Friedman, Litigating Employment Discrimination Cases (James Publishing 2007)
        §8:134  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wegner et al., Cal. Pract. Guide: Civ. Trials and Evid. (The Rutter Group 2002)
        ¶ 8:1164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pursuant to the Court's Claim Objection Procedures Order (the "Procedures Order") and in accordance with Section 9(e) thereof, claimant Gary Whitney respectfully hereby submits his Supplemental Response as follows:

## I.
## BRIEF FACTUAL BACKGROUND

1.       This case involves California employment law on a non-bankruptcy issue. Specifically, claimant Gary Whitney alleges that Delphi discriminated against him because of his age in violation of the California Fair Employment and Housing Act, Cal. Gov. Code, § 12940(a). Mr. Whitney's Claim is **not** under the federal Age Discrimination in Employment Act.

2.       Mr. Whitney is 60 years old. See G. Whitney Decl., p. 1, ¶ 2. Mr. Whitney has more than 30 years of experience marketing and selling consumer electronics products to major electronics retail stores. Id. at p. 1, ¶ 5 . He has worked in sales and marketing management positions for such consumer electronic companies as Sylvania Electric Co., GTE Automatic Electric, Sanyo Electronics, Toshiba America, Aiwa America, Inc., Galaxy Brands, and Konka USA selling consumer electronics products such as televisions, home stereo equipment, car audio equipment, videocassette recorders ("VCRs"), digital video disc recorders ("DVD players"), personal stereo equipment (e.g., Walkman-type devices, boom boxes, personal CD players, etc...), microwaves, and telephones to major electronics retail stores such as: Best Buy, Circuit City, The Good Guys, The Sharper Image, Fred Meyer Dept. Stores, Ultimate Electronics, Costco, May Co. Dept. Stores, Federated Dept. Stores, Car Toys, LA Tronics, Cowboy Maloney's, Brandsmart, HH Gregg, Tweeter, MusicLand, and Sam Goody. Id. at pp. 1 - 5, ¶ 5.

3.       In late 2002, Mr. Whitney was hired by the Director of Delphi's Consumer

1

Electronics Division, Don LaDieu, and his National Sales Manager, Robert Kustasz. See G. Whitney Decl., p. 7, ¶¶ 8-9; see also R. Kustasz Decl., p. 2, ¶ 6. At that time, Mr. LaDieu was in his late-50s and Mr. Kustasz was in his mid-50s. See G. Whitney Decl., p. 7, ¶¶ 8-9; see also R. Kustasz Decl., p. 1, ¶ 2. Mr. Whitney began his employment at Delphi in early January 2003. Id. at p. 8, ¶ 10; see also R. Kustasz Decl., p. 2, ¶ 8. Mr. Whitney's immediate supervisor was Mr. Kustasz. Id; see also R. Kustasz Decl., p. 3, ¶ 10. Mr. LaDieu, who was Mr. Kustasz's immediate supervisor, was Mr. Whitney's second level supervisor. Id.

4.     At the time he was hired, Delphi informed Mr. Whitney that, pursuant to company policy, Delphi rated employee performance on the following scale: Outstanding, Satisfactory, Diminishing Performance, and Unsatisfactory. See G. Whitney Decl., p. 9, ¶ 12; see also, R. Kustasz Decl., p. 7, ¶ 20. Mr. Whitney was further informed that if his performance were ever rated as Diminishing Performance, his supervisors would tell him of that fact and develop a plan to assist him in the improvement of his performance. Id. at pp. 9-10, ¶ 13; see also, R. Kustasz Decl., p. 7, ¶ 20. Delphi also informed Mr. Whitney that if his performance ever dipped below Diminishing Performance to Unsatisfactory, that his supervisors and human resources would inform him of that fact and develop a Performance Improvement Plan ("PIP") providing him with specific objectives that would be monitored to insure that he knew where he stood with respect to the expected accomplishments. Id. at p.10, ¶ 14; see also, R. Kustasz Decl., p. 7, ¶ 20. Finally, Delphi informed Mr. Whitney that if, with his supervisor's assistance, he was unable to meet the expectations set forth in the PIP within a reasonable amount of time (which Delphi defined as "historically 6 months"), he could be terminated. Id; see also, R. Kustasz Decl., p. 7, ¶ 20. Delphi never informed Mr. Whitney that these policies were altered or rescinded. Id. As

2

explained in more detail below, Mr. Whitney's performance was never rated as Diminishing

Performance or Unsatisfactory. Id. Nor was Mr. Whitney ever placed on a PIP or given any

instruction that he had to improve his performance. Id. To the contrary, both Mr. LaDieu (Mr.

Whitney's second level supervisor) and Mr. Kustasz (Mr. Whitney's immediate supervisor)

contemporaneously told Mr. Whitney that his performance was "excellent" and "outstanding. Id;

see also R. Kustasz Decl., pp. 3 -4 , ¶ 13, 20.

5.      Beginning in the late summer of 2003, Delphi began to get rid of the older

workers in the Consumer Electronics Division and replace them with younger workers. In the

late summer of 2003, Delphi fired Mr. Kustasz (in his mid-50s) and subsequently replaced him

with the significantly younger Mike Roberts. G. Whitney Decl., p. 11, ¶ 16. Mr. Roberts was in

his 30s. Id. At the time Mr. Kustasz's employment was terminated, he believed that Mr.

Whitney's performance was "excellent" and that Mr. Whitney had met or exceeded every

expectation that Delphi had for him. Id.; see also Kustasz Decl., p. 3, ¶ 13.

6.      In or about late 2003, Mr. LaDieu became ill and went on a medical leave of

absence. Delphi replaced Mr. LaDieu (late 50s) with the significantly younger Joe Damato. See

G. Whitney Decl., p. 12, ¶ 17. Mr. Damato was in his 30s. Id. In early 2004, Mr. Damato and

Mr. Roberts hired two new employees – both in their 30s. Id. at p. 13, ¶ 23. As explained in

detail below, Mr. Roberts subsequently fired Mr. Whitney (late 50s) and replaced him with a

significantly younger employee who was in his 30s. Id. at p. 14, ¶ 26, p. 16, ¶ 32. In or about

February 2004, Mr. LaDieu returned from his leave and became the Sub-Director of the

Consumer Electronics Division reporting to Mr. Damato. See G. Whitney Decl., p. 12, ¶ 19. Mr.

LaDieu was Mr. Robert's first level supervisor and Mr. Whitney's second level supervisor. Id.

3

7.    In April 2004, Mr. Roberts held a meeting with his new sales team (all of whom were significantly younger than Mr. Whitney) and learned Mr. Whitney's age (57). See G. Whitney Decl., pp. 13 - 14, ¶ 24. Upon learning Mr. Whitney's age, Mr. Roberts made age-based discriminatory comments about Mr. Whitney including commenting that he was "old." Id.

8.    In or about June 2004, Mr. LaDieu had to go on another medical leave of absence. See G. Whitney Decl., p. 13, ¶ 20. At the time he went on this leave of absence, Mr. LaDieu (who remained Mr. Whitney's second level supervisor) continued to believe that Mr. Whitney's performance was "excellent" and that Mr. Whitney had met or exceeded every expectation that Delphi had for him. Id; see also R. Kustasz Decl., p. 4, ¶ 14 & p. 7, ¶ 19.

9.    Shortly after Mr. LaDieu went on his second medical leave of absence, Mr. Roberts fired Mr. Whitney (in his late 50s) and replaced him with an individual in his 30s. See G. Whitney Decl., p. 14, ¶ 26, p. 16, ¶ 32.  At no time did Mr. Roberts, Mr. Damato, or anyone else place Mr. Whitney on a PIP, criticize his performance, or indicate any dissatisfaction with Mr. Whitney's performance. See G. Whitney Decl., p. 15, ¶ 27.

10.    At Mr. Whitney's termination meeting, which took place on or about June 23, 2004, Mr. Roberts summoned Mr. Whitney to a meeting at the Century Crown Plaza Hotel in Los Angeles, California. See G. Whitney Decl., p. 14 - 16, ¶¶ 26 - 30. Mr. Roberts falsely told Mr. Whitney that the purpose of the meeting was to go over planning for meetings that they would be having with their customers later in the day. Id. At the meeting, Mr. Roberts told Mr. Whitney that he had some "bad news" – he was firing Mr. Whitney. Id. Mr. Whitney asked Mr. Roberts why he was firing him. In response, Mr. Roberts asked Mr. Whitney: "do we have to go there?" Id. Mr. Whitney nodded in the affirmative and Mr. Roberts asked Mr. Whitney whether

4

Mr. Whitney had ever met Burt Valanty (Delphi's new Director of Human Resources). Id.
When Mr. Whitney said that he had heard of Mr. Valanty but that he had never met him, an
individual walked over and introduced himself to Mr. Whitney as "Burt Valanty." Id.

11.    With Mr. Valanty at the table, Mr. Whitney again asked Mr. Roberts what he
had done wrong. See G. Whitney Decl., p. 14 - 16, ¶ 26 - 30. Mr. Roberts replied: "Gary, you
haven't done anything wrong. Id. In fact, you have done everything I have asked of you. You
haven't done anything wrong, Gary. And I know that all of your dealers really like you." Id.
Incredulous, Mr. Whitney said:

> Is this because I don't fit in with the new team? I
> know that I am a lot older than all of the new team
> members. **This about my age, isn't it?**

Id. Neither Mr. Roberts nor Mr. Valanty denied Mr. Whitney's statement. Id. Instead, Mr.
Roberts looked at Mr. Valanty and Mr. Valanty said: "let's just say that you do not have the fit
and finish for the new team." Id. Mr. Whitney took this to mean he didn't "fit" in a 30-
something group and he didn't have the same "finish" as the younger team members because his
appearance was old. Id.

12.    Although Mr. Whitney had never asserted any type of legal claim against Delphi,
Mr. Valanty handed Mr. Whitney a Separation Agreement and Release which contained a release
of, among other things, Mr. Whitney's rights under various anti age discrimination statutes
including "the age discrimination and employment act." See G. Whitney Decl., p. 16, ¶ 31.

13.    After he was fired, Mr. Whitney spoke with Mr. LaDieu who told Mr. Whitney
that he had been fired because of his age and the fact that Mr. Damato and Mr. Roberts wanted to
work with a younger crew. See G. Whitney Decl., p. 16, ¶ 33.

5

14.    As a result of his firing, Mr Whitney began to suffer from emotional distress including, among other symptoms: anxiety, apprehension, depression and worry. See G. Whitney Decl., pp. 17 - 18, ¶ 36 - 40; see also P. Whitney Decl., pp. 2 - 4, ¶¶ 5 - 6. As a result of his emotional distress, Mr. Whitney began to have trouble falling asleep at night. Id. He would also regularly wake up around Midnight on many nights and not be able to fall back asleep until around 5:00 a.m. Id. As a result, he began taking Ambien. Id. Because he wasn't sleeping well at night, he was often tired and irritable during the day. Id. His irritability from being tired and angry at Delphi spilled over into his marriage causing he and his wife to become angry with one another and to have unnecessary and frequent arguments or disagreements. Id. Because of his termination, he and his wife were forced to sell their home and move to a less expensive city where they had to buy a less expensive home. Id. All of this placed a great deal of stress on their marriage. Id. As a further result of his depression/stress, he began seeing a psychiatrist. Id. The psychiatrist prescribed Lexapro (an anti-depressant/anxiety medication). Id. Mr. Whitney continues to have feelings of depression and anxiety from worrying about the future and his ability to support his wife and himself. Id.

15.    As a result of his firing, Mr. Whitney has lost $80,000.00 (plus a comprehensive employment benefits package) annually since he was fired, see Whitney Decl., p. 19, ¶¶ 41-42, suffered significant emotional distress, see G. Whitney Decl., pp. 17-18, ¶ 36- 40; see also P. Whitney Decl., pp. 2-4, ¶¶ 5-6, and incurred attorneys' fees and costs.

16.    Mr. Whitney exhausted his administrative remedies and timely filed his lawsuit in Los Angeles Superior Court. On July 21, 2006, Mr. Whitney timely filed his Proof of Claim in

6

accordance with the Bar Date Order entered in the case. [1]

## II.
## RESPONSE TO DEBTOR'S STATEMENT OF DISPUTED ISSUES

17.    As explained in detail below, Delphi's Statement of Disputed Issues contains

numerous errors of both fact and law.

**A.    Delphi Incorrectly States That Mr. Whitney Has No Direct or Circumstantial Evidence of Discrimination; Mr. Whitney Has Both.**

18.    In its Statement of Disputed Issues, Delphi states that "Whitney has no direct or

circumstantial evidence of discrimination." See Statement of Disputed Issues, p. 3, ¶ 9.  Delphi

is incorrect.  As explained in more detail below, Mr. Whitney possesses both direct and

circumstantial evidence of age discrimination. [2]

**1.    Mr. Whitney Possesses Sufficient Direct Evidence of Discrimination to Prevail on His Age Discrimination Claim.**

19.    In this case, Delphi's Sub-Director of Consumer Electronics and Mr. Whitney's

second level supervisor, Mr. LaDieu, **admitted** that Mr. Whitney was fired because of his age.

See G. Whitney Decl., p. 16, ¶ 33.  This admission constitutes direct evidence of discrimination.

In addition, when Mr. Whitney accused his immediate supervisor (Mr. Roberts) and Delphi's

Director of Human Resources (Mr. Valanty) of firing him because of his age, neither one of them

---

[1] Although Delphi initially took the erroneous position that Mr. Whitney failed to timely file his Proof of Claim (See Delphi's Statement of Disputed Issues, p. 2, ¶ 1), Delphi conceded on June 26, 2007 that its position was wrong and that Mr. Whitney did timely file his Proof of Claim.

[2] While the evidence of age discrimination proffered herein is sufficient for a judgment in favor of Mr. Whitney, Mr. Whitney reserves the right to proffer additional evidence of discrimination obtained through discovery.  As the Court is aware, pursuant to the Procedures Order, Mr. Whitney is not be able to take depositions or obtain responses to written discovery until after he files this Supplemental Response.

disputed Mr. Whitney's accusation.  See Whitney Decl., p. 15, ¶ 29.  Their failure to dispute Mr.

Whitney's accusation of age discrimination is an adoptive **admission** by silence. [3]  Hence, this

admission also constitutes direct evidence of discrimination.  Moreover, Mike Roberts (Mr.

Whitney's immediate supervisor and one of the individuals who made the decision to fire Mr.

Whitney) commented, shortly before firing Mr. Whitney, that Mr. Whitney was "old."  See G.

Whitney Decl., pp. 13 - 14, ¶ 24.

20.    The California courts have recognized that because direct evidence of

discrimination is extremely rare, such evidence is overwhelmingly probative. [4]

### 2.    Mr. Whitney Possesses Sufficient Indirect or Circumstantial Evidence of Discrimination to Prevail on His Age Discrimination Claim.

21.    In its Statement of Disputed Issues, Delphi states that Mr. Whitney is unable to

"establish discrimination through an indirect method of proof" purportedly because Mr. Whitney

has "no evidence that similarly situated younger employees were treated more favorably, that his

---

[3] Both California and federal law recognize the "adoptive admission by silence" exception to the
hearsay rule.  In California, that exception is expressed in Evidence Code Section1221 and
Instruction No. 214 of the Judicial Council of California Civil Jury Instructions.  See also
Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2002) ¶ 8:1164
("Silence may be treated as an adoptive admission if, under the circumstances, a reasonable
person would speak out to clarify or correct the statement of another were it untrue.").  Under
Federal law, that exception is expressed in Federal Rule of Evidence 801(d)(2)(B).  See also U.S.
v. Tocco, 135 F.3d 116, 128-29 (2nd Cir. 1998)(recognizing that a person's silence is admissible
against him if it is more probable that a person would respond to an accusation than not).

[4] See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 378 (2000) ("direct evidence of intentional
discrimination is rare"); O'Mary v. Mitsubishi Electronics America, Inc., 59 Cal.App.4th 563,
575 (1997)("On those occasions when there is evidence of clear discriminatory intent, it is like a
gold nugget which just happens to be lying on the ground. You do not throw it away as if it were
so much dross. To put the idea in typical evidentiary terms, evidence of clear discriminatory
intent is overwhelmingly probative in a discrimination case because it shines a spotlight on the
very thing which is the focus of the litigation.")(emphasis added).

8

job performance met Delphi's legitimate expectations, that Delphi's nondiscriminatory reasons

for his discharge are false, and that the real reason Delphi discharged him was his age." See

Statement of Disputed Issues, p. 3-4, ¶ 9. Again, Delphi is incorrect. As explained in more

detail below, Delphi is wrong on the law and wrong on the facts.

        a.    **Mr. Whitney Can Establish a *Prima Facie* Case of Age Discrimination.**

    22.    Delphi incorrectly states the law regarding what an age discrimination plaintiff

must show in order to establish discrimination through an indirect method of proof. There is no

necessity that an age discrimination plaintiff show that "similarly situated younger employees

were treated more favorably" as Delphi argues. Rather, in California, as under federal law,

courts utilize the McDonnell Douglas burden-shifting analysis to evaluate age discrimination

cases brought under the Fair Employment and Housing Act by plaintiffs who lack direct evidence

of discrimination. See Guz v. Bechtel Nat'l, Inc., Cal. 4th 317, 353 (2000). [5] The McDonnell

Douglas three-stage burden-shifting test provides:

(1)    The plaintiff/employee must set forth sufficient evidence to establish a *prima facie* case of discrimination;

(2)    The defendant/employer must then articulate a legitimate, nondiscriminatory reason for the adverse employment action; and

(3)    The burden then shifts back to the employee to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

See Hersant v. California Dept. of Social Services, 57 Cal. App. 4th 997, 1002-1003 (1997). See

---

[5] As Mr. Whitney possesses direct evidence of discrimination, he does not have to satisfy the McDonnell Douglas burden-shifting test.

also <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000). [6]

23.    In the usual case, the employee is able to establish a *prima facie* case of age

discrimination by showing:

(1)    At the time of the adverse action he was 40 years of age or older,
(2)    An adverse employment action was taken against the employee,
(3)    At the time of the adverse action the employee was satisfactorily performing his job and
(4)    The employee was replaced in his position by a significantly younger person.

<u>Hersant v. California Dept. of Social Services</u>, 57 Cal. App. 4th 997, 1002-1003 (1997).

24.    Here, Delphi must concede elements 1 (that Mr. Whitney was over 40; he was

57), 2 (that an adverse employment action was taken against Mr. Whitney; he was fired), and 4

(that Mr. Whitney was replaced someone younger; his replacement was some 20 years younger).

25.    Delphi apparently only contests element 3 (that Mr. Whitney was satisfactorily

performing his job). However, in cases where the alleged discriminators (*e.g.,* Mr. Damato, Mr.

Roberts, and Mr. Valanty) are the ones who evaluated the performance of the plaintiff (*e.g.,* Mr.

Whitney) as unsatisfactory, the courts do <u>not</u> require the plaintiff to demonstrate satisfactory

performance. [7] Notwithstanding the foregoing, Mr. Whitney has overwhelming evidence that

---

[6] While state and federal legislation concerning age discrimination differs in some respects, their objectives are identical, and California courts look to federal law to aid in the interpretation of analogous provisions of California statutes. <u>See</u> e.g., <u>Hersant v. California Dept. of Social Services</u>, 57 Cal. App. 4th 997, 1002 fn. 1 (1997); <u>Caldwell v. Paramount Unified School Dist.</u>, 41 Cal.App.4th 189, 195 (1995).

[7] <u>See</u> <u>Oest v. Illinois Dep't of Corrections</u>, 240 F.3d 605, 612 (7th Cir. 2001) ("The district court correctly held that the second prong, meeting the employer's legitimate business expectations, was not necessary to the analysis; the people judging Ms. Oest's performance were the same she accused of discriminating against her."). <u>See</u> also Friedman, Litigating Employment Discrimination Cases (James Publishing 2007) §8:131.3 ("The courts have held that a plaintiff need not demonstrate satisfactory job performance where the alleged discriminator is the same individual who judged the plaintiff's job performance inadequate.").

10

his job performance was "excellent."

26.    First, at the meeting in which he was terminated, Mr. Whitney's immediate supervisor (Mike Roberts) and Delphi's Human Resources Director (Burt Valanty) **admitted** that Mr. Whitney's performance was satisfactory. See G. Whitney Decl., p. 15, ¶ 29.

27.    Second, Delphi policy and practice require that an employee whose performance is diminishing or unsatisfactory be notified of that fact and then be placed on a Performance Improvement Plan and given 6 months to improve his or her performance before being terminated. See G. Whitney Decl., p. 9 - 11, ¶¶ 12 - 15; see also Kustasz Decl., p. 7, ¶ 20. Mr. Whitney was never told that his performance was diminishing or unsatisfactory and he was never placed on a PIP. Id. Nor did Mr. Whitney ever receive any criticisms of his job performance or any oral or written warning or poor performance reviews. Id. Hence, because Delphi must admit that it never informed Mr. Whitney that his performance was unsatisfactory (as it would have been required to do by its own policies had Mr. Whitney's performance truly been unsatisfactory), it must be presumed that Mr. Whitney's performance was satisfactory.

28.    Third, Mr. Whitney's second level supervisor (Don LaDieu) **admitted** that Mr. Whitney's performance was not simply satisfactory but that it was, in fact, "excellent." See G. Whitney Decl., p. 10 - 11, ¶ 14 & p. 12, ¶ 17& p. 13, ¶ 20; see also R. Kustasz Decl., p. 7, ¶ 19.

29.    Fourth, Mr. Whitney's immediate past supervisor (Bob Kustasz) also **admitted** that Mr. Whitney's was not simply satisfactory but that it was, in fact, "excellent" and "outstanding." See G. Whitney Decl., p. 13, ¶ 22. See also R. Kustasz Decl., p. 3 - 4, ¶¶ 11 - 13.

\\\

\\\

11

      b.    **Mr. Whitney Can Demonstrate That The Purportedly Legitimate Reasons Offered by Delphi Were Not True, but Were a Pretext for Discrimination.**

30.    Delphi has articulated the following purportedly legitimate, nondiscriminatory reasons for Mr. Whitney's termination: (a) Mr. Whitney's skills were not suited to the Division's strategic direction; (b) Mr. Whitney was not effective in his sales position; (c) Mr. Whitney did not appear to have the connection and ability to successfully operate in the major retail electronics field; and (d) Mr. Whitney did not appear to have a level of self-initiative or timeliness that was required and expected for his position.  As discussed below, Mr. Whitney can demonstrate that Delphi's purportedly legitimate, nondiscriminatory reasons for Mr. Whitney's termination are merely pretexts for age discrimination.

      i.    **Mr. Whitney Can Prove Pretext by Demonstrating that the Purportedly Legitimate, Non-Discriminatory Reasons Articulated By Delphi Are False.**

31.    One way in which a plaintiff employee can show that the defendant's purportedly legitimate, nondiscriminatory reason for its adverse employment action is actually pretext for discrimination is to show that the defendant's articulated reason is false.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). [8] Another way in which a plaintiff employee can show that the defendant's purportedly legitimate, nondiscriminatory reason for its adverse employment action is actually pretext for discrimination is to show that the defendant's articulated reason is weak, implausible or incoherent.  See e.g., Santiago-Ramos v. Centennial

---

[8] See also Friedman, Litigating Employment Discrimination Cases (James Publishing 2007) §8:124.2 ("A plaintiff can show that defendant's purportedly legitimate, nondiscriminatory reason for the adverse employment action is really pretext for discrimination by showing that the reason is false.").

P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000)(plaintiff "can also establish pretext by

showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did

not act for the asserted non-discriminatory reasons.' ")(internal quotations and citations omitted);

Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (plaintiff can show pretext by

revealing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could

rationally find them unworthy of credence and hence infer that the employer did not act for the

asserted non-discriminatory reason.")(quotations omitted). [9]  Here, Mr. Whitney can do both.

32.    In this case, Delphi's purportedly legitimate, nondiscriminatory reasons for Mr.

Whitney's termination essentially boil down to Delphi's arguing that Mr. Whitney's performance

was unsatisfactory. This argument, however, is completely belied by the facts. All of Mr.

Whitney's supervisors indicated that his performance was satisfactory or significantly better than

satisfactory (e.g., "excellent"). For example, Mr. Whitney's last supervisor (Mike Roberts - who

only supervised Mr. Whitney for a short period of time) and Delphi's Human Resources Director

(Burt Valanty) **admitted** that Mr. Whitney's performance was satisfactory. See G. Whitney

Decl., p. 15, ¶ 29. Similarly, Mr. Whitney's last second level supervisor (Mr. LaDieu - who

supervised Mr. Whitney for nearly the entire length of his employment) and his second to last

---

[9] See also Friedman, Litigating Employment Discrimination Cases (James Publishing 2007)
§8:124.2 ("A plaintiff also can show that the defendant's purportedly legitimate,
nondiscriminatory reason for the adverse employment action is really a pretext for discrimination
by showing that the reason is so weak, implausible, and/or incoherent that a reasonable factfinder
could find it unworthy of credence and, hence, infer that the employer did not act for that
reason.").

first level supervisor (Mr. Kustasz) **admitted** that Mr. Whitney's performance was "excellent"

See G. Whitney Decl., p. 10 - 11, ¶ 14 & p. 12, ¶ 17 & p. 13, ¶ 20 & p. 13, ¶ 22. See also R.

Kustasz Decl., p. 3 - 4, ¶¶ 11 - 13 & p. 7, ¶ 19. Significantly, Delphi's failure to notify Mr.

Whitney that his performance was unsatisfactory and place him on a PIP (as it was required to do

by its own policy) also strongly suggests that Delphi's current argument is false.

### ii.    Mr. Whitney Can Prove Pretext By Showing that Delphi Failed to Follow Its Own Termination Policies When Firing Him.

33.    Another way in which a plaintiff employee can prove pretext is by showing that

defendant employer failed to follow its own internal policies. [10]

34.    In this case, Delphi had a written policy requiring that an employee whose

performance was unsatisfactory had to be notified and placed on a PIP. See G. Whitney Decl., p.

9 - 11, ¶¶ 12 - 15; see also Kustasz Decl., p. 7, ¶ 20. Delphi admittedly neither notified Mr.

Whitney that his performance was unsatisfactory nor placed him on a PIP as it was required to do

if his performance were truly unsatisfactory. Delphi's failure to follow its own policy regarding

how it was required to deal with unsatisfactory performance demonstrates that its argument that

his performance was unsatisfactory is simply wrong.

\\\

\\\

---

[10] See e.g., Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282 (10th Cir 2007)("An employer's failures to follow written or unwritten policy may support a showing of pretext"); Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286 (11th Cir. 2006) ("Similarly, an employer's deviation from its own standard procedures may serve as evidence of pretext.");Rudin v. Lincoln Land Community Coll., 420 F.3d 712, 727 (7th Cir.2005) ("An employer's failure to follow its own internal employment procedures can constitute evidence of pretext."). Ainswoth v. Independent School Dist., – F.3d – , 2007 WL 1180420 (10th Cir. 2007)("a]n employer's failures to follow written or unwritten policy may support a showing of pretext").

14

      iii.     **Mr. Whitney Can Also Prove Pretext by Showing That Delphi Offered to Pay Him to Release Any Claims – Including Age Discrimination – That He Had Against It.**

35.     Prior to the time that Delphi fired Mr. Whitney, it prepared a severance agreement providing that Mr. Whitney would release any claims that he had against it – specifically including age discrimination claims – in exchange for a monetary payment. During and contemporaneously with his termination, Delphi presented him with this termination agreement and sought the release of any clams – including any age discrimination – that he might have against it. The fact that Delphi unilaterally prepared such a document and contemporaneously with his termination offered Mr. Whitney a severance package in exchange for the release of his age discrimination claims constitutes evidence of discrimination.[11]

      c.     **Mr. Whitney's Refutation of Delphi's Articulated Reasons for His Termination in Combination with His Other Evidence Is More than Enough to Prove Intentional Age Discrimination.**

36.     The courts have unanimously held that the trier of fact's rejection of the defendant's articulated reasons for termination in combination with the plaintiff's *prima facie* case may be enough to demonstrate intentional discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the

---

[11] See, e.g., Cassino v. Reichhold Chem., Inc., 817 F.2d 1338, 1342 (9th Cir. 1987) ("[W]hen an employment relationship is terminated and the employer offers a contemporaneous severance pay package in exchange for a release of all potential claims, including claims for discriminatory acts that may have occurred at or before the termination, . . . [s]uch termination agreements are . . . probative on the issue of discrimination"); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1290 (9th Cir. 2000)("In Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338 (9th Cir.1987), we created an exception to the general rule against admitting offers to settle a case. In Cassino, we held that it is not an abuse of discretion for the trial judge to admit evidence of an employer's offer of a 'severance pay package in exchange for a release of all potential claims' when the offer is 'contemporaneous' with the termination of the employment relationship. *Id*. at 1342.").

15

defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together

with the elements of the prima facie case, suffice to show intentional discrimination. Thus,

rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact

of intentional discrimination."); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147

(2000)("it is permissible for the [factfinder] to infer the ultimate fact of discrimination from the

falsity of the employer's explanation."). Hence, because Mr. Whitney has made out his *prima*

*facie* case of age discrimination <u>and</u> presented evidence of pretext (in addition to his direct

evidence of discrimination) including that evidence that his immediate supervisor (Mr. Roberts)

called Mr. Whitney "old," he has established more than enough evidence from which the Court

can determine that he was discriminated on the basis of his age.

**B.    Delphi Erroneously Attempts to Rely on the Hirer-Firer Theory.**

37.    In its Statement of Disputed Issues, Delphi states that Delphi hired Whitney when

he was fifty-six years old and discharged him just over a year later." See Statement of Disputed

Issues, p. 4, ¶ 9. [12] Although Delphi does not explain the significance of this fact, it appears that

Delphi is attempting to rely on the so-called "hirer-firer" theory (also known as the "same actor"

---

[12] Delphi also indicates that "at about the same time" that it fired Mr. Whitney it also fired a
younger sales manager for "essentially the same reasons" that it fired Mr. Whitney. See
Statement of Disputed Issues, p. 4, ¶ 9. Delphi does not attempt to explain the significance of this
fact because it is irrelevant to Mr. Whitney's ability to prove his prima facie case and that
Delphi's articulated reasons for his firing are pretextual. Moreover, to the extent Delphi is
referring to Tyler Ortin, Mr. Whitney disputes that Mr. Ortin was fired "at about the same time"
as Mr. Whitney (Mr. Whitney believes that Mr. Ortin was fired months before Mr. Whitney).
Moreover, Mr. Whitney also disputes that Mr. Ortin was fired for "essentially the same reasons"
as Mr. Whitney. Mr. Whitney believes that Mr. Ortin was hired without having any experience
in the consumer retail electronics field (versus Mr. Whitney's 30+ plus years of experience in the
industry) solely because Mr. Ortin's father worked at Delphi and, in contrast to Mr. Whitney's
"excellent" performance (as rated by his supervisors), Mr. Ortin's performance was poor.

defense or inference). This theory is illustrated in <u>Proud v. Stone</u>, 945 F.2d 796 (4th Cir. 1991),

in which a 68-year-old man, who was terminated and replaced by a 32-year-old, sued his former

employer for age discrimination. At the close of the plaintiff's evidence at trial, the district court

granted the defendant's motion for dismissal pursuant to FRCP 41. On appeal, the Fourth Circuit

decided that it was unnecessary to conduct "a point-by-point rebuttal of each of plaintiff's

manifold contentions" as to why dismissal was inappropriate. Instead, the court found it unlikely

that discrimination could have played any role in the adverse employment action because the

hirer and the firer were the exact same individual:

> In assessing whether Proud established that age was a motivating factor for his
> discharge, **we focus on the undisputed fact that the individual who fired
> Proud is the same individual who hired him less than six months earlier with
> full knowledge of his age.**
>
> . . .
>
> [I]n cases **where the hirer and the firer are the same individual** and the
> termination of employment occurs within a relatively short time span following
> the hiring, a strong inference exists that discrimination was not a determining
> factor for the adverse action taken by the employer.

945 F.2d at 797-798 (emphasis added).

38.    Delphi's reliance on the hirer-firer theory is completely misplaced as **Mr.**

**Whitney was <u>not</u>, in fact, hired and fired by the same individuals**. Mr. Whitney was hired by

Mr. LaDieu (in his late 50s) and Mr. Kustasz (in his mid-50s). <u>See</u> G. Whitney Decl., p. 7, ¶¶ 8-

9; <u>see also</u> R. Kustasz Decl., p. 2, ¶ 6. [13]   Mr. Whitney was fired by Mr. Roberts (in his 30s) and

Mr. Damato (in his 30s). Hence, the hirer-firer doctrine is not applicable. Indeed, in <u>Proud</u> the

court specifically held that the hirer and the firer **must** be the same individual.  Moreover,

---

[13] Mr. Roberts and Mr. Damato played no role whatsoever in Mr. Whitney's hiring. <u>See</u> G.
Whitney Decl., p. 8, ¶ 9; <u>see also</u> R. Kustasz Decl., p. 2, ¶ 7.

17

numerous additional cases stand for the proposition that the hirer and firer must be the same

individual and not merely the same company. See, Swanks v. Washington Metropolitan Area

Transit Authority, 179 F.3d 929, 936 n. 7 (D.C. Cir. 1999) ("WMATA contends that it would be

irrational for it to hire Swanks knowing of his disability only to fire him because of that same

condition. This argument is specious, however, for unlike the facts in Proud, different individuals

hired Swanks in 1989 than fired him several years later in 1992.") [14]

C.    **Delphi Falsely Argues that Mr. Whitney Failed to Mitigate His Damages.**

39.    In its Statement of Disputed Issues, Delphi argues that Mr. Whitney "failed to

mitigate any potential damages." See Statement of Disputed Issues, p. 4, ¶ 11.  Delphi is wrong.

Under California law, the defendant employer bears the burden of proving that the plaintiff

employee failed to mitigate his or her damages.  See e.g., Donald Schriver, Inc. v. Fair

Employment & Housing Com., 220 Cal. App. 3d 396, 407 (1986)("The burden of proving a

failure to mitigate damages in an employment discrimination suit is on defendant."). [15]  This

---

[14] See also Johnson v. Trustees of Durham Technical Community College, 139 N. C. App. 676, 689-690, 535 S.E.2d 357 (N.C. 2000) ("[T]he evidence, construed in the light most favorable to the plaintiff, demonstrates that the same person did not hire and fire plaintiff, and therefore, defendant was not entitled to an inference of nondiscrimination."); Friedman, Litigating Employment Discrimination Cases (James Publishing 2007) §8:134 (hirer-firer theory unavailable where same individual did not hire and fire).

[15] Federal employment and anti-discrimination law also puts the burden on the employer to produce evidence sufficient to show that a plaintiff has failed to avoid the consequences of the employer's wrongful conduct. See e.g., Cassino v. Reichhold Chemicals, Inc., 817 F2d 1338, 1346 (9th Cir. 1987)(holding that the employer bears the burden of proving that an employee failed to mitigate damages); Jones v. Consolidated Rail Corp., 800 F.2d 590, 594 (6th Cir.1986)(a Federal Employers' Liability Act (FELA) case where the court saw "no reason ... to create in FELA cases an exception to the general rule that the defendant has the burden of proving that the plaintiff could, with reasonable effort, have mitigated his damages."); Coleman v. City of Omaha, 714 F.2d 804, 808 (8th Cir.1983)(an Age Discrimination in Employment Act (ADEA) case, where the court stated: "The burden is on the defendant to prove failure to mitigate

18

burden requires that the defendant employer affirmatively prove, by a preponderance of the evidence, both of the following two elements: First, that the damage suffered by the plaintiff employee could have been avoided, i.e., that there were suitable positions available which the plaintiff employee could have discovered and for which he was qualified.  Second, that the plaintiff employee failed to use reasonable care and diligence in seeking such a position. [16]

40.    Delphi's Statement of Disputed Issues fails to offer a single fact in support of its argument that Mr. Whitney failed to mitigate his damages. See Statement of Disputed Issues, p. 4, ¶ 11.  Hence, Delphi has not carried it burden of proof and must lose on this issue.  As a result of Delphi's failure and due to page length limitations, Mr. Whitney will neither waste space nor the Court's time by offering facts to dispute a legal argument bereft of any factual support.  Mr. Whitney reserves his right, however, to rebut Delphi's argument and offer additional facts should Delphi put forward any facts in an attempt to meet its burden.

### III.
### IDENTIFICATION OF WITNESSES AND PRODUCTION OF DECLARATIONS

41.    As required by the Procedures Order, and as modified by agreement of the parties pursuant to Section 9(k), claimant Gary Whitney identifies the following witnesses and produces the following declarations:

---

damages. The defendant has to show that the plaintiff failed to use reasonable care and diligence and that there were jobs available which the plaintiff could have discovered and for which the plaintiff was qualified.").

[16] See e.g., Donald Schriver, Inc. v. Fair Employment & Housing Com., 220 Cal. App. 3d 396, 407 (1986)("To satisfy [its burden of proving that the plaintiff failed to mitigate damages], defendant must establish (1) that the damage suffered by plaintiff could have been avoided, i.e., that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.").

19

1.   **Gary Whitney** - <u>See</u> Declaration of Gary Whitney attached as "G. Whitney Decl."

2.   **Patrice Whitney** - <u>See</u> Declaration of Patrice Whitney attached as "P. Whitney Decl."

3.   **Robert Kustasz** - <u>See</u> Declaration of Robert Kustasz attached as "Kustasz Decl."

4.   **Don LaDieu** - Mr. Whitney has identified Mr. LaDieu because Mr. LaDieu is a material

witness whom, Mr. Whitney believes, will be able to testify competently to, among other

things: (1) Direct evidence that Mr. Whitney was terminated because of his age; (2)

Indirect or circumstantial evidence that Mr. Whitney was terminated because of his age

(*e.g.*, each element of Mr. Whitney's *prima facie* case of age discrimination and the

falsity of Delphi's purportedly legitimate non-discriminatory reasons for Mr. Whitney's

termination); (3) Other evidence that Mr. Whitney was terminated because of his age.

Mr. Whitney is unable to provide a declaration or affidavit from Mr. LaDieu because Mr.

LaDieu is not under Mr. Whitney's control.  Consequently, Mr. Whitney will have to

depose Mr. LaDieu.

Dated: Los Angeles, California
        July 18, 2007

HELMER FRIEDMAN LLP

By: _____
    Andrew H. Friedman, P.C.
    723 Ocean Front Walk
    Venice, California 90291
    Telephone: 310-396-7714

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    Theodore Cohen
    333 South Hope Street, 48th Floor
    Los Angeles, California  90071-1448
    Telephone: 213-620-1780
    Attorneys for Creditor Gary Whitney

20