# DECLARATION OF ROBERT KUSTASZ

I, Robert Kustasz, declare:

1.  I was Gary Whitney's immediate supervisor at Delphi. As such, I have personal knowledge of the facts stated herein and, if sworn as a witness, I could and would testify competently thereto.

2.  I am 57 years old. I was born on February 2, 1950.

3.  I have been involved in sales and marketing in the retail consumer electronics field since 1972. Indeed, over the years I have worked for, among others, the following companies that are involved in the sale and marketing of retail electronics to consumers: Eyetop (Director of Consumer Electronics - responsible for setting up a national sales force of manufacturers representatives similar to my responsibilities at Delphi), Sharp Electronics (Regional Sales Manager for Consumer Electronics), Timex (Regional Sales Manager for Consumer Electronics), and J. Malcom Flora, Inc. (Vice-President of Consumer Electronic Sales).

4.  In the fall of 2002, I was recruited by Delphi's Vice-President of Human

1

Declaration of Robert Kustasz

Resources, Mr. John Passante, and by Delphi's Director of Consumer Electronics Division, Don LaDieu, to become National Sales Manager for Delphi's Consumer Electronics Division. I held this position until my employment was terminated in the late summer of 2003.

5. As the National Sales Manager, my primary duty was to work with Mr. LaDieu to build and then run Delphi's Consumer Electronics Division. The Consumer Electronics Division was responsible for selling the then brand new XM satellite radio receiver (Skyfi) and supporting accessories that Delphi was manufacturing. Among other things, I helped Mr. LaDieu recruit for the Division's Western Regional Sales Manager position.

6. In late 2002, Mr. LaDieu and I hired Gary Whitney to become the Division's Western Regional Sales Manager.

7. Neither Joe Damato, Mike Roberts, nor Burt Valanty played any role whatsoever in the decision to hire Mr. Whitney.

8. Mr. Whitney began his employment as the Consumer Electronics Division's Western Regional Sales Manager during the first week or so of January 2003.

9. Mr. LaDieu and I were very excited to be able to hire Mr. Whitney as our Western Regional Sales Manager because Mr. Whitney had significant experience working with the "big boys" in the major retail electronics industry, including places like Best Buy,

Circuit City, The Good Guys, Fred Meyer Department Stores, Ultimate Electronics, and Costco to name a few.

10. As the National Sales Manager, I was Mr. Whitney's immediate supervisor. Mr. LaDieu was my immediate supervisor and Mr. Whitney's second level supervisor.

11. As our Western Regional Sales Manager, Mr. Whitney had a significant amount of work to do for us in terms of the roll out of our Skifi XM satellite radio receivers and related accessories. Mr. Whitney played a key role in our ability to dramatically exceed our sales expectations. Indeed, Mr. Whitney was a major factor in our ability to take our sales from nothing to over $100 Million in a relatively short amount of time.

12. Based upon my supervision of him, I would describe Mr. Whitney as a self-starter, someone with significant self-initiative, someone who had invaluable connections with and knowledge of the major consumer electronic retail stores and the manufacturing representatives who sold to those stores, and an individual with great business acumen. In short, Mr. Whitney was the consummate consumer electronics sales professional.

13. Based upon my own personal observations of his performance and my knowledge of Delphi's expectations for his performance, I would rate Mr. Whitney's performance as "excellent" and "outstanding." Mr. Whitney met all of the objectives that we set

for him. Indeed, during the time that I supervised him, I told Mr. Whitney that I thought he was doing a great job.

14. Don LaDieu (who was my immediate supervisor and Mr. Whitney's second level supervisor) told me that he also thought that Mr. Whitney's performance was "outstanding" and "excellent."

15. I read in a document entitled "Debtor's Statement of Disputed Issues," that Delphi is now saying that Mr. Whitney's skills were not suited to the Consumer Electronics Division's strategic direction of selling products in major consumer electronics retail stores like Best Buy and Circuit City. This statement is absolutely false. When Mr. LaDieu and I considered hiring for the position of Western Regional Sales Manager, we were looking for someone with the experience and proven ability to sell products in major consumer electronics retail stores like Best Buy and Circuit City. Mr. Whitney had that experience and ability. After he was hired, Mr. Whitney's performance was outstanding; he exceeded every expectation that Delphi had for him, including our expectations regarding his sales in the major consumer electronics retail stores like Best Buy (as Mr. Whitney was our *Western* Regional Sales Manager and he was located in California, his job duties and responsibilities did not encompass Circuit City which had its corporate headquarters in Richmond, Virginia). As explained above, Mr. Whitney played a major role in our extremely successful roll out of our then brand new Skifi XM satellite radio receivers helping us take sales from nothing to approximately $100 Million in a very short period of time.

4

16.    I read in a document entitled "Debtor's Statement of Disputed Issues," that Delphi is now saying that Mr. Whitney was not effective in his sales position. This statement is absolutely false. After he was hired, Mr. Whitney's performance was outstanding; he exceeded every expectation that Delphi had for him including our expectations regarding sales in the major consumer electronics retail stores like Best Buy (as Mr. Whitney was our *Western Regional Sales Manager* and he was located in California, his job duties and responsibilities did not encompass Circuit City which had its corporate headquarters in Richmond, Virginia). As explained above, Mr. Whitney played a major role in our extremely successful roll out of our then brand new Skifi XM satellite radio helping us take sales from nothing to approximately $100 Million in a very short period of time.

17.    I read in a document entitled "Debtor's Statement of Disputed Issues," that Delphi is now saying that Mr. Whitney did not appear to have the connections and ability to successfully operate in the major retail electronics field. This statement is absolutely false. As explained above, Mr. Whitney had significant experience working with the "big boys" in the major retail electronics industry and he had the necessary connections at consumer electronics retail store such as Best Buy, The Good Guys, Fred Meyer Department Stores, Ultimate Electronics, and Costco to name a few. As I also explained above, Mr. Whitney's actual performance at Delphi, exceeding our expectations, demonstrated not only that he had the connections and ability to successfully operate in the major retail electronics field, but also that he was successfully operating in the major retail electronics field.

\\\

18.     I read in a document entitled "Debtor's Statement of Disputed Issues," that Delphi is saying that Mr. Whitney "did not appear to have a level of self-initiative or timeliness that was required and expected for his position." This statement is absolutely false. I spoke with Mr. Whitney on an almost daily basis and whenever I needed information from him, he always had the answers to my questions. In fact, Mr. Whitney frequently anticipated my needs and provided me with timely and relevant information *before* I even asked him for it. Mr. Whitney was a self-starter; he did not need someone to tell him what to do before it did it. For example, after he had been with Delphi for less than a week, Mr. Whitney, Mr. LaDieu and I attended the Consumer Electronics Show ("CES") in Las Vegas, Nevada. Throughout the time that we were at CES it was apparent that Mr. Whitney was making good contacts. A day or two after CES concluded, I called Mr. Whitney to see if he had had a chance to begin contacting any of the people that we had met. As it turned out, Mr. Whitney had, in fact, already initiated the sales calls even before I asked him about it. Similarly, at CES, Mr. LaDieu and I mentioned to Mr. Whitney that we needed a manufacturers representative for, I believe, the Rocky Mountain Corridor. Mr. Whitney said that he would see what he could do. By coincidence, I ran into someone at CES later that day or the next day who said that he was a manufacturers representative in, I believe, the Rocky Mountain Corridor. Shortly thereafter, when I informed Mr. Whitney that I located a candidate for our open manufacturers representative slot, Mr. Whitney told me that he had already located an experienced manufacturers representative whom he thought would do a great job. We retained the manufacturers representative that Mr. Whitney had located for us. These are just a few of the many examples that demonstrate that Mr. Whitney not only had the requisite self-initiative and timeliness for the position but also that Mr.

6

---

Whitney was more than capable of handling anything that was thrown at him in the consumer electronics realm.

19.  Following the termination of my employment from Delphi in the late summer of 2003, I stayed in contact with Mr. Whitney and Mr. LaDieu. I recall that even after that time, Mr. Ladieu had nothing but extremely complimentary statements to make about Mr. Whitney and his performance.

20.  Pursuant to Delphi policy and practice, employee performance was rated on the following scale: Outstanding, Satisfactory, Diminishing Performance, and Unsatisfactory. Pursuant to Delphi policy and practice, if an employee's performance fell to Diminishing Performance, the employee's supervisor was required to: (a) notify the employee that his or her performance was lacking; and (b) develop a plan to assist employee in improvements to his or her performance. If the employee's performance fell to Unsatisfactory, the employee's supervisor, in conjunction with Human Resources, was required to: (a) notify the employee that his or her performance was lacking; and (b) develop a Performance Improvement Plan ("PIP") with specific instruction and expectations with objectives that are monitored to insure the employee knows where he or she is with respect to meeting these accomplishments. If the employee, with the supervisor's assistance, cannot meet the expectations agreed upon by Human Resources, the supervisor and the employee within a "reasonable period of time" historically 6 months, the employee could be terminated. As indicated above, Mr. Whitney's performance was Outstanding.

21. I believe that Mr. Whitney was discriminated against and terminated by Delphi because of his age.

22. I am making this declaration voluntarily and of my own free choice. Neither Mr. Whitney, his attorneys, nor anyone else has forced me to make this declaration. No one has made any threats of any kind against me in an effort to make me sign this declaration. Similarly, no one has made any promises of any kind to me in an effort to convince me to sign this declaration.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 7th day of July 2007 at 3:30, PM EDT.

*Robert Kustasz*
Robert Kustasz