

Not Reported in N.W.2d                                                                                          Page 1
2003 WL 460222 (Mich.App.)
**(Cite as: 2003 WL 460222 (Mich.App.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.
Paul THOMAS, the Hipple Insurance Agency, d/b/a Hipple Insurance Agency, d/b/a Hipple and Associates, and HJ & D Inc., d/b/a Hipple Insurance Agency, d/b/a Hipple and Associates, Plaintiffs-Appellants,
v.
David COSTA, Rho-Mar Agency Inc., and Raider-Smith Inc., Defendant-Appellees
and
Bradford BOYER, Defendant.
**No. 235031.**

Feb. 21, 2003.

Before: WHITBECK, C.J., and GRIFFIN and OWENS, JJ.

[UNPUBLISHED]

PER CURIAM.

**\*1** The trial court granted summary disposition pursuant to MCR 2.116(C)(5) to corporate defendants Rho-Mar Agency Inc. and Raider-Smith Inc., and granted summary disposition pursuant to MCR 2.116(C)(10) to defendant David Costa. Plaintiffs Paul Thomas, The Hipple Insurance Agency Inc., and HJ & D Insurance Agency now appeal as of right. Defendant Bradford Boyer is not participating in this appeal. We affirm.

I. Basic Facts And Procedural History

The Hipple Insurance Agency Inc. (HIA) and HJ & D Insurance Agency (collectively, HJ & D/HIA) were two separate corporations that acted as a single insurance agency out of a single office selling credit life insurance and warranty products to car dealerships. Although HJ & D and HIA each had a different number of outstanding shares, each shareholder essentially owned the same percentage of shares in both corporations. Thomas and Eric Hipple (Hipple) each owned thirty-three percent of the corporations, Richard Pybus and Bradford Boyer owned 12.5 percent of each corporation, and Hoyt Hipple owned nine percent of the corporations. Hipple, by agreement, was in charge of HJ & D/HIA. For the most part, these five men also acted as salespeople for HJ & D/HIA, serving as intermediaries for car dealers and the insurance and warranty underwriters selling their products to the dealers. HJ & D/HIA would receive a commission from the underwriters when they sold the products to car dealers, but was not involved in selling the products directly to car purchasers.

In 1996, HJ & D/HIA sought a relationship with a new underwriter by sending Pybus and Boyer to a training conference the new underwriter sponsored. Allegedly, however, Pybus and Boyer decided to form their own corporation before going to the conference, and then signed that corporation as the new underwriter's exclusive agent in Michigan. When Hipple learned of Pybus and Boyer's actions, he fired them from HJ & D/HIA. In return, Pybus and Boyer sued Hipple and the corporations comprising HJ & D/HIA in Oakland Circuit Court. This was the beginning of the end for HJ & D/HIA.

According to Thomas, with Pybus and Boyer gone, he and Hipple agreed that they needed to expand their sales force by acquiring a competitor. As a result, Hipple began negotiating with Rho-Mar and Raider-Smith. However, in late summer 1997, Hipple reportedly told Thomas that there was not going to be a deal with Rho-Mar and Raider-Smith. Instead, Hipple, a former football player for the Detroit Lions, said he was going to take a job as a sportscaster with the Fox television network. Thomas then wrote Hipple a letter wishing him well and expressing that he would not take any "legal action" against Hipple or his new employer "provided" that he (Thomas) was "afforded the same and that the financial obligations that you [Hipple] and I [Thomas] have personally guaranteed on behalf of HJ & D, Inc. are fulfilled." However, Thomas subsequently learned that Hipple had signed a personal service contract with Rho-Mar and Raider-Smith on September 17, 1997. On that same day, Costa, who had acted as HJ & D/HIA's attorney, had opened an Interest on Lawyer Trust account (IOLTA) for Hipple and had received $50,000 in the account from Rho-Mar. Costa deposited an additional $50,000 in the IOLTA for Hipple from Rho-Mar on October 10, 1997. Four days later, Hipple arranged to have HJ & D/HIA's mail forwarded to a post office box near Rho-Mar

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                                               Page 2
2003 WL 460222 (Mich.App.)
**(Cite as: 2003 WL 460222 (Mich.App.))**

and Raider-Smith's office.

**\*2** While Thomas was still in the dark about this course of events, Hipple called a shareholder meeting for HJ & D on October 24, 1997, to discuss HJ & D/HIA's poor financial condition. At the meeting, Hipple did not mention his arrangement with Rho-Mar and Raider-Smith. Costa attended the meeting, but later claimed that he did not do so in his former role of attorney for HJ & D/HIA. The shareholders voted to dissolve HJ & D/HIA and appointed Hipple to liquidate the assets. Following the vote, the two corporations comprising HJ & D/HIA did not file their annual reports with the state.

Several months after this vote, as creditors were beginning to demand payment from Thomas, Thomas learned about Hipple's arrangement with Rho-Mar and Raider-Smith. Thomas also learned that another shareholder had also begun working for Rho-Mar and Raider-Smith before the meeting to dissolve HJ & D. Thomas concluded that Hipple had sold HJ & D/HIA's accounts receivable, customer lists, good will, and other assets to Rho-Mar and Raider-Smith, and had done so for less than fair market value and without sharing any of the proceeds of the sale or repaying any of HJ & D/HIA's debts. Consequently, Thomas filed suit on November 5, 1999, in the Oakland Circuit Court on his own behalf and for the corporations that had comprised HJ & D/HIA. By that time, Hipple had already filed for bankruptcy.

The first amended complaint described HJ & D and the Hipple Insurance Agency each as a Michigan corporation that "was ... in good standing at the time the events complained of took place." Thomas, who also sued as an individual, claimed the legal authority under M.C.L. § 450.1492a to bring a derivative action on behalf of HJ & D/HIA. The first amended complaint alleged eight causes of action: actual fraud by all defendants; "fraud or defalcation while acting as a fiduciary" [FN1] by Costa; malpractice by Costa; intentional misrepresentation by Costa; civil conspiracy by all defendants concerning the transfer of assets from HJ & D/HIA to Rho-Mar and Raider-Smith; conversion of HJ & D/HIA's assets by all defendants; interference with HJ & D/HIA's business opportunities by all defendants; and unjust enrichment by Rho-Mar and Raider-Smith.

> FN1. The *Random House Webster's College Dictionary* (2d ed), p 345, defines "defalcation" as "misappropriation of funds held by a trustee or other fiduciary[.]"

Rho-Mar and Raider-Smith's first response to the first amended complaint was a motion for summary disposition pursuant to MCR 2.116(C)(5) because, they claimed, HJ & D/HIA lacked the legal capacity to sue, having been dissolved approximately fifteen months before they filed the complaint. Rho-Mar and Raider-Smith also maintained that summary disposition was appropriate under MCR 2.116(C)(8) because Thomas had failed to state a claim on which relief could be granted when he failed to allege that he had complied with all the prerequisites for a shareholder derivative action. Those prerequisites are stated, in part, in M.C.L. § 450.1492a:

> A shareholder may not commence or maintain a derivative proceeding unless the shareholder meets all of the following criteria:
> **\*3** (a) The shareholder was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time.
> (b) The shareholder fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.
> (c) The shareholder continues to be a shareholder until the time of judgment, unless the failure to continue to be a shareholder is the result of corporate action in which the former shareholder did not acquiesce and the derivative proceeding was commenced prior to the termination of the former shareholder's status as a shareholder.

MCL 450.1493a states additional prerequisites:
> A shareholder may not commence a derivative proceeding until all of the following have occurred:
> (a) A written demand has been made upon the corporation to take suitable action.
> (b) Ninety days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

Rho-Mar and Raider-Smith specifically argued that Thomas had failed to follow the demand process required by M.C.L. § 450.1493a, and that Thomas did not represent HJ & D/HIA's interest as required in M.C.L. § 450.1492a because those corporations no longer existed and he would not be a shareholder through a judgment in this case. They also claimed that Thomas brought this action to avoid any limitations on his ability to recover lost profits because of Hipple's bankruptcy proceeding.

Before Thomas responded to the motion for summary disposition, he alone filed the annual

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d  
2003 WL 460222 (Mich.App.)  
**(Cite as: 2003 WL 460222 (Mich.App.))**

Page 3

reports and paid the fees necessary to return HJ & D/HIA to good standing with the state. He obtained certificates from the Department of Consumer and Industry Services dated January 31, 2000, for HJ & D and HIA, both of which stated that the respective corporation was "in good standing" and "duly authorized to transact business or conduct affairs in Michigan" as of that date. Though Thomas took this action without convening the shareholders of either corporation to vote to reverse the dissolutions, he contended in the brief opposing the motion for summary disposition that M.C.L. § 450.1925(2) allowed him to cure the technical defects in HJ & D/HIA's status with the state, and therefore press these claims. Thomas pointed out that he was a shareholder at the time the alleged fraud took place, and now could remain a shareholder until the trial court issued a judgment, as M.C.L. § 450.1492a required. Further, he did not need to follow the demand process in M.C.L. § 450.1493a because it would have been futile. Nevertheless, in a supplemental brief, Rho-Mar and Raider-Smith emphasized to the trial court that Thomas, a minority shareholder, had acted to update HJ & D/HIA's standing with the state even though he had not received permission from the other shareholders to revive the corporations.

**\*4** Following a hearing, and even though the trial court had not consolidated the *Pybus* case with the instant case, it issued a single opinion and order ruling on motions for summary disposition in both cases. After restating the parties' arguments, the trial court explained its conclusions, albeit while mistakenly calling those conclusions "findings":

> The Court finds, pursuant to MCR 2.116(C)(5) that [HJ & D/HIA] lack standing in this matter because the corporations were not in existence at the time the lawsuit was filed.... Although under certain circumstances a corporation may be reinstated by the filing of annual reports and the payment of fees, in this case the corporations were dissolved by a majority shareholder vote and the dissolution was not revoked in compliance with statute. See MCR 450.1811. It appears that Plaintiff Paul Thomas, a minority shareholder, filed documents with the Michigan Corporation and Securities Bureau [FN2] in order to reinstate the corporations. However, the Court cannot find any authority which permits a minority shareholder, acting alone, to reinstate a dissolved corporation. Based on these circumstances, pursuant to MCR 2.116(C)(5), [Rho-Mar and Raider-Smith's] Motions for Summary Disposition are granted as to [HJ & D/HIA].

> FN2. Now the Department of Consumer and Industry Services.

> The Court further finds, pursuant to MCR 2.116(C)(8) that the individual Plaintiffs as both individuals and shareholders have failed to state a claim because their claims do not fall within the provisions of M.C.L. § 450.1489, M.C.L. § 450.1491a, or any other section of the Business Corporation Act.

MCL 450.1489 provides, in relevant part:
> "(1) A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder. If the shareholder establishes grounds for relief, the circuit court may make an order or grant relief as it considers appropriate, including, without limitation, an order providing for any of the following:
> (a) The dissolution and liquidation of the assets and business of the corporation.
> (b) The cancellation or alteration of a provision contained in the articles of incorporation, an amendment of the articles of incorporation, or the bylaws of the corporation.
> (c) The cancellation, alteration, or injunction against a resolution or other act of the corporation.
> (d) The direction or prohibition of an act of the corporation or of shareholders, directors, officers, or other persons party to the action.
> (e) The purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or other shareholders responsible for the wrongful acts.
> (f) An award of damages to the corporation or a shareholder.[ ... ]"

> The Court finds, based on the language in M.C.L. § 450.1489, that the statute contemplates an action for a corporation that exists because it provides for a shareholder to bring an action in order to seek certain remedies against an existing corporation. In this case, the Court has found that the corporate entities did not exist at the time these actions were filed.

**\*5** After quoting the language of M.C.L. § 450.1492a, the trial court noted that M.C.L. § 450.1491a(a) defines a "derivative proceeding" as "a civil suit in the right of a domestic corporation ... that is authorized to or does transact business in this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                                              Page 4
2003 WL 460222 (Mich.App.)
**(Cite as: 2003 WL 460222 (Mich.App.))**

state." [FN3] The trial court then indicated that it looked at this definition as further evidence supporting its legal conclusion that derivative suits may be instituted only when the corporation at issue remains in existence, reiterating that there was no evidence that HJ & D or HIA remained in existence following their dissolution by shareholder vote. The trial court thus concluded that "the individual Plaintiffs and shareholders have failed to state a claim against the Defendants."

> FN3. Alterations in the opinion.

The trial court's opinion and order also addressed a motion for summary disposition by Costa. However, this evidently was a motion he filed in the *Pybus* case, because he had yet to file a motion for summary disposition in the instant case. In any event, the trial court ended its opinion and order by indicating that it was granting the defense motions for summary disposition without prejudice. This aspect of the trial court's ruling sparked additional debate from the parties. Defendants filed a motion asking the trial court to clarify the effect of its ruling granting the motions for summary disposition which the trial court did not address until later that summer.

Meanwhile, this dismissal without prejudice also provided an opening in which Thomas, Pybus, and Boyer could take further steps to revive HJ & D/HIA for the *Pybus* case. Thomas made a written demand on June 26, 2000, "to convene a special meeting of the shareholders and Board of Directors of the Hipple Insurance Agency, Inc. and H.J.D., Inc." This demand did not specify the purpose of the meeting, nor to whom the demand was being sent. However, it was evidently intended to go to the other shareholders to solicit their votes to revoke their decision to dissolve HJ & D/HIA. Further, according to an affidavit from Thomas's attorney, Shari Heddon, Pybus and Boyer's attorney, John Polasky, sent her a letter by facsimile on June 30, 2000. The letter demanded to convene a special meeting of HJ & D/HIA's shareholders, including Thomas. In a follow-up telephone call, Polasky indicated that Pybus and Boyer were seeking to revoke the dissolution of HJ & D and HIA. Heddon, Thomas's attorney, added in the affidavit that

> [d]uring a further telephone conversation on July 14, 2000 with Mr. Polasky, he read to me a letter that he had just received by telefax by David Costa's attorney. That letter confirmed that Costa had agreed to purchase Boyer's shares in The Hipple Insurance Agency, Inc. and HJ & D, Inc[.] for $15,000 so long as Boyer agreed not to "attend

the special meeting of the shareholders and further assure that he would not allow his shares to be voted in favor of revocation and any shareholder meeting."

Heddon also secured a copy of the letter demanding a shareholder meeting, which said in its entirety:

> **\*6** Now comes RICHARD PYBUS and BRADFORD BOYER shareholders, by their attorney, JOHN C. POLASKY and demands [sic] a special meeting of the Shareholders of the HIPPLE INSURANCE AGENCY, HIPPLE AND ASSOCIATES, and HJ & D, INC. all Michigan corporations, for the purpose of recinding [sic] the vote to disolve [sic] said corporations and to reinstate the corporate existence with the State of Michigan.

Thomas prepared a notice of the special shareholders meetings for HJ & D/HIA, to be held at the same time and same place on July 13, 2000. The notice revealed that "[t]he purpose of the meeting is to appoint a Board of Directors, to do all things necessary to revoke the vote for dissolution of the corporation which took place on November 7, 1997 and to ratify the actions of Paul Thomas on behalf of the corporation[s]." The agenda he prepared for both meetings consisted of four items:

> 1. Appoint Board of Directors
> 2. Board resolution: revocation of corporate dissolution of November 7, 1997
> 3. Board resolution: ratify corporate reinstatement with State of Michigan
> 4. Shareholder vote to affirm Board Resolutions thereby revoking corporate dissolution

The minutes from the July 13, 2000, HIA meeting indicated that Thomas, Pybus, and Hipple had appeared. Collectively, they owned 2,375 shares of the 3,000 outstanding shares of HIA, and therefore constituted a majority of the shareholders. Boyer, who owned 375 shares, and Bond, who owned 250 shares, did not attend the meeting. The minutes from the July 13, 2000, HJ & D meeting indicated that Thomas, Pybus, and Hipple had appeared. Collectively, they owned 14,250 shares of the 18,000 outstanding shares of HJ & D, and therefore constituted a majority of the shareholders. Boyer, who owned 2,250 shares, and Bond, who owned 1,500 shares, did not attend the meeting. The minutes from both meetings included the same substantive text of what occurred:

> Director, Paul Thomas moved to adopt a Board resolution that the dissolution voted for on November 7, 1997 be revoked for the reason that the corporation needs to commence legal action for the return of, or compensation for, its assets. The Board of Directors approved and adopted said

Not Reported in N.W.2d  
2003 WL 460222 (Mich.App.)  
**(Cite as: 2003 WL 460222 (Mich.App.))**

Page 5

resolution unanimously. The adopted resolution was then submitted to the Shareholders for approval.

A majority of the shares represented by the Shareholders in attendance voted to approve the Board resolution and specifically to revoke the dissolution of the corporation that resulted from a special meeting of the Shareholders on November 7, 1997. The shareholders specifically authorized Paul Thomas to file a certificate of revocation of dissolution with the State of Michigan forthwith.

The Shareholders further ratified all acts of acting Director and acting President, Paul Thomas in reinstating the corporation with the State of Michigan in January 2000, filing past due annual reports and in convening this special meeting acting as President and Chairman of the Board.

**\*7** The Shareholders appointed Paul Thomas as Director for one year, until the next annual meeting or until such time as he is removed pursuant to the By-Laws, whichever occurs first.

The shareholders also elected Thomas as the President and Treasurer/Secretary of both corporations.

At a hearing on August 2, 2000, the trial court finally clarified its earlier ruling concerning the motion for summary disposition. The trial court explained that none of the claims against Rho-Mar and Raider-Smith had survived the motion; the only remaining claims in this case were against Costa. However, the trial court evidently maintained that dismissal was without prejudice and "[s]o that case would probably be refiled ... if the corporation gets back together. The case goes on." This remark prompted plaintiffs' counsel to volunteer the information that the case would likely continue in Livingston Circuit Court, where she had filed an additional suit on the same factual and legal bases.

Two months after the trial court granted Rho-Mar and Raider-Smith's motion for summary disposition in this case, Costa filed his own motion for summary disposition pursuant to MCR 2.116(C)(5), (8), and (10). In the motion Costa raised the same arguments that Rho-Mar and Raider-Smith had advanced in their own motion for summary disposition. Costa added that the deposition testimony in the *Pybus* case demonstrated that the contracts HJ & D/HIA had with its clients were terminable at the clients' will, and therefore plaintiffs had "no reasonable expectation of continued revenue from it's [sic] customers." Further, Costa asserted, he did not possess any of the corporate assets that plaintiffs alleged had been taken from HJ & D/HIA, and there was no evidence countering Hipple's assertion that the $100,000 that passed through the IOLTA was anything other than a signing bonus for his new job. On August 11, 2000, the trial court entered an order granting Costa's motion pursuant to MCR 2.116(C)(5) and (8) without prejudice.

Though the trial court had dismissed all the claims, the case proceeded for some time before the trial court entered its last substantive order. On February 14, 2001, the trial court entered an order indicating that it was amending its August 11, 2000, order, as well as its June 21, 2000, opinion and order "to provide that the dismissal persuant [sic] to MCR 2.116(C)(8) is with prejudice and that the dismissal persuant [sic] to MCR 2.116(C)(5) remains without prejudice." [FN4] On appeal, plaintiffs now challenge the trial court's decision to grant summary disposition to all defendants.

> FN4. Capitalization altered.

II. Standard Of Review

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. [FN5]

> FN5. See *Spiek v. Dep't of Transportation,* 456 Mich. 331, 337; 572 NW2d 201 (1998).

III. Corporate Dissolution

Plaintiffs argue that the trial court erred when it granted Rho-Mar and Raider-Smith's motion for summary disposition pursuant to MCR 2.116(C)(5). Plaintiffs contend that, contrary to the trial court's conclusion, HJ & D/HIA had not been dissolved because M.C.L. § 450.1804(7) required a certificate of dissolution to be filed with the state to accomplish the dissolution. In this case, though the shareholders of HJ & D/HIA had voted to dissolve, they never filed this certificate with the state. Plaintiffs add that the trial court had "equity jurisdiction" to hear the case because M.C.L. § 450.1851(1) grants the circuit courts jurisdiction to liquidate the assets of a dissolved corporation and M.C.L. § 450.1489 permits a circuit court considering a derivative action to invalidate an "act of the corporation."

**\*8** A motion for summary disposition under MCR 2.116(C)(5) is appropriate when "[t]he party asserting the claim lacks the legal capacity to sue." "[A]ffidavits, depositions, admissions, or other documentary evidence may be submitted by a party to support or oppose the grounds asserted in the motion." [FN6] In fact, these materials "are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                    Page 6
2003 WL 460222 (Mich.App.)
**(Cite as: 2003 WL 460222 (Mich.App.))**

required" [FN7] when "when the grounds asserted do not appear on the face of the pleadings." [FN8] The trial court must "consider" these materials in ruling on the motion, [FN9] but only "to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." [FN10]

> FN6. MCR 2.116(G)(2).
>
> FN7. MCR 2.116(G)(3).
>
> FN8. MCR 2.116(G)(3)(a).
>
> FN9. MCR 2.116(G)(5).
>
> FN10. MCR 2.116(G)(6).

In this case, in November 1997, the shareholders of HJ & D/HIA attempted to carry out voluntary dissolutions. As a result, the shareholders had to follow M.C.L. § 450.1804, which states in relevant part:

> (1) A corporation may be dissolved by action of its board and shareholders as provided in this section.
>
> * * *
>
> (5) The proposed dissolution shall be submitted for approval at a meeting of shareholders. Notice shall be given to each shareholder of record whether or not entitled to vote at the meeting within the time and in the manner as provided in this act for the giving of notice of meetings of shareholders, and shall state that a purpose of the meeting is to vote on dissolution of the corporation.
> (6) At the meeting a vote of shareholders shall be taken on the proposed dissolution. The dissolution shall be approved upon receiving the affirmative vote of the holders of a majority of the outstanding shares of the corporation entitled to vote thereon.
> (7) If the dissolution is approved, it shall be effected by the execution and filing of a certificate of dissolution on behalf of the corporation, setting forth all of the following:
> (a) The name of the corporation.
> (b) The date and place of the meeting of shareholders approving the dissolution.
> (c) A statement that dissolution was proposed and approved by the requisite vote of the board and shareholders.

The parties do not dispute that the shareholders of HJ & D and HIA complied with the notice requirements in subsection 5 and the majority voting requirement in subsection 6. However, as plaintiffs argue, the record is settled that no one filed a certificate of dissolution for either HJ & D or HIA. Case law confirms that the plain language in subsection 7, which requires this certificate of dissolution to be filed before the dissolution becomes "effect[ive]," is enforced as written. [FN11] In fact, this certificate is not considered "filed" until an appropriate state agency determines that the certificate "substantially conforms to the requirements of the" [FN12] Business Corporation Act. [FN13] Neither HJ & D nor HIA attempted to file a certificate with dissolution with the state. Therefore, as a matter of law, the shareholders' votes to dissolve HJ & D and HIA did not actually dissolve those corporations.

> FN11. See *Freeman v. Hi Temps Products, Inc,* 229 Mich.App 92, 98; 580 NW2d 918 (1998); see also *Hurd v. Meyer,* 259 Mich. 190, 192; 242 NW2d 882 (1932) (corporation was dissolved when judicial decree dissolving corporation was filed with the state); *OAG,* 1955, No 2200, p 551-552 (October 20, 1955).
>
> FN12. *Freeman, supra* at 99.
>
> FN13. See M.C.L. § 450.1101 *et seq.*

**\*9** The Legislature, however, has provided other mechanisms for dissolving a corporation. [FN14] As is relevant to this case, M.C.L. § 450 .1911 imposes a duty on corporations to file annual reports no later than May 15 of each year. MCL 450.1801(1)(f) allows a corporation to be dissolved "[a]utomatically, under section 922 [MCL 450.1922], for failure to file an annual report or pay the filing fee." Critically, however, M.C.L. § 450.1922(1) provides a grace period for corporations that fail to file an annual report or pay a filing fee:

> FN14. See M.C.L. § 450.1801.

If a domestic corporation neglects or refuses to file any annual report or pay any annual filing fee or a penalty added to the fee required by law, and the neglect or refusal *continues for a period of 2 years from the date on which the annual report or filing fee was due, the corporation shall be automatically dissolved 60 days after the expiration of the 2-year period.* The administrator shall notify the corporation of the impending dissolution not later than 90 days before the 2-year period has expired. *Until a corporation has been dissolved, it is entitled to issuance by the administrator, upon request, of a certificate of good standing* setting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                                             Page 7
2003 WL 460222 (Mich.App.)
**(Cite as: 2003 WL 460222 (Mich.App.))**

forth that it has been validly incorporated as a domestic corporation and that it is validly in existence under laws of this state. [FN15]

> FN15. Emphasis added.

In short, this automatic dissolution can occur *only* after two years plus sixty days. If that period has not yet elapsed, the corporation can file the missing annual reports or pay whatever fee it owes to have its good standing with the state restored because, to paraphrase the statute, the corporation has not yet been dissolved.

In this case, HJ & D/HIA failed to file on time their annual reports for 1998 and 1999, and to pay the accompanying fees. However, evidently, two years and sixty days had *not* passed since the initial filing and payment delinquencies. As a result, HJ & D and HIA were able to acquire their certificates of good standing, dated January 31, 2000. Although this is not the only way to acquire a certificate of good standing, [FN16] the sketchy record in this case [FN17] leads us to infer from the fact that HJ & D and HIA were able to acquire these certificates of good standing that they had not yet been dissolved automatically; they existed, but were not in good standing with the state when they filed this lawsuit.

> FN16. See M.C.L. § 450.1925.
>
> FN17. Evidently, the parties acted as if this case had been consolidated with the *Pybus* case. As a result, though there are references to various materials in the pleadings, those materials do not always exist in the trial court's record.

Defendants nevertheless contend that HJ & D/HIA had been dissolved on July 15, 1998, before they filed suit. Defendants present this Court with a copy of a certificate issued October 6, 1999, from the Department of Consumer and Industry services that states that HJ & D "was automatically dissolved on July 15, 1998, pursuant to the provisions of Section 922(1)...." Defendants do not provide a similar certificate for HIA. More importantly, while they claimed to have submitted this form and a similar certificate for HIA as attachments to the motion for summary disposition, we have not been able to find any such certificates in the record. The copy of the certificate attached to defendants' brief does not reveal a stamp or any other mark that would lead us to believe that the trial court ever saw it. Our concern in analyzing the trial court's decision to grant summary disposition is that we do so on the basis of the original record that existed at the time the trial court decided the motion, not on the basis of additional materials. [FN18] This is the essence of our de novo review. [FN19] Thus, without any reason to conclude that *evidence* that the corporations had been dissolved was presented to the trial court in time for the motion for summary disposition, the question of law we must address is whether an existing corporation not in good standing with the state has the legal capacity to sue. [FN20]

> FN18. See MCR 7.210(A)(1).
>
> FN19. See *Spiek, supra.*
>
> FN20. This obviates any need to examine whether a corporation, automatically dissolved pursuant to M.C.L. § 450.1922, can file suit before it is "renewed" pursuant to M.C.L. § 450.1925.

*10 The classic rule of law under predecessors to the Business Corporation Act [FN21] was that a corporation that fails to file an annual report or pay its fees is not in good standing with the state, and its powers to act during that time are suspended. [FN22] Accordingly, under that rule, while a corporation was not in good standing with the state, it had no "power to institute and maintain suit." [FN23] However, as this Court explained in *George Morris Cruises v. Irwin Yacht & Marine Corp,* [FN24] that rule derived from explicit statutory language that does not exist in the current Business Corporation Act. Currently, "suspension of powers is no longer a penalty for noncompliance with the requirements of filing annual reports...." [FN25] Instead, short of the noncompliance that warrants dissolution under M.C.L. § 450.1922, corporations now pay financial penalties for their failure to comply with filing requirements. [FN26]

> FN21. See M.C.L. § 450.1101 *et seq.*
>
> FN22. See *Motor City Engineering Co v. Fred E Holmes, Co,* 241 Mich. 446, 447-448; 217 NW2d 25 (1928).
>
> FN23. *George Morris Cruises v. Irwin Yacht & Marine Corp,* 191 Mich.App 409, 418; 478 NW2d 693 (1991).
>
> FN24. See M.C.L. § 450.87, repealed by 1972 PA 284, § 1098.

Not Reported in N.W.2d  
2003 WL 460222 (Mich.App.)  
**(Cite as: 2003 WL 460222 (Mich.App.))**

Page 8

>FN25. *George Morris Cruises, supra* at 418, n 4.
>
>FN26. See M.C.L. § 450.1921.

More importantly, *George Morris Cruises* holds that if an entity is not in good standing with the state when it files suit, it may survive a motion for summary disposition under MCR 2.116(C)(5) if it corrects whatever defect exists before the trial court rules on the motion. [FN27] Notably, though *George Morris Cruises* concerned a partnership's failure to file necessary papers, it explicitly adopted this holding on the basis of the law applicable to corporations under the more restrictive statutory scheme predating the Business Corporation Act. [FN28] Thus, in light of the Legislature's decision to eliminate the suspension-of-powers penalty from the Business Corporation Act, we think that holding in *George Morris Cruises* is particularly relevant in this case.

>FN27. See *id.* at 417-419.
>
>FN28. See *id.* at 418-419, citing *Industrial Coordinators, Inc v Artco, Inc,* 366 Mich. 313; 115 NW2d 123 (1962); *Michigan Rural Development, Inc v El Mac Hills Resort, Inc,* 34 Mich.App 505, 509; 191 NW2d 733 (1971).

The record demonstrates that Thomas acquired the certificates of good standing for both HJ & D and HIA from the state more than four months before the trial court ruled on either motion for summary disposition. Though the trial court was concerned that Thomas lacked the authority to seek to revive HJ & D and HIA on his own initiative because he was a minority shareholder in each corporation, the trial court's concern stemmed from its erroneous legal conclusion that the shareholder votes to dissolve HJ & D and HIA were effective in the first place. As we have explained, a corporation must file a certification of dissolution in order to make a vote to dissolve the corporation effective. That did not happen in this case. Therefore, the trial court erred in granting the two motions for summary disposition pursuant to MCR 2.116(C)(5) because Thomas was able to correct HJ & D's and HIA's defective filings before the ruling. In any event, even if defendants correctly asserted that HJ & D and HIA had been dissolved automatically on July 15, 1998, [FN29] and did not legally exist when they filed suit, our holding in the following issue means that any error in this part of the trial court's ruling was harmless because the trial court had other, proper grounds to grant summary disposition.

>FN29. Plaintiffs' argument in the trial court that Thomas acted pursuant to M.C.L. § 450.1925 to renew the corporate plaintiffs' existence lends credence to this argument even in the absence of supporting documentation in the record.

### IV. Derivative Claims

**\*11** Plaintiffs argue that the trial court erred in granting defendants' motions for summary disposition of the shareholder derivative claims pursuant to MCR 2.116(C)(8). Plaintiffs maintain that the trial court relied on its erroneous conclusion that HJ & D/HIA had been dissolved to conclude that a derivative action may be maintained only when a corporation is in existence. To be clear, while the trial court ruled on these alternative grounds, Rho-Mar and Raider-Smith's motion for summary disposition under MCR 2.116(C)(8) alleged that plaintiffs had failed to allege that they had completed all the procedural prerequisites for a derivative action in M.C.L. § 450.1492a and M.C.L. § 450.1493a.

A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of a claim. [FN30] In other words, the court deciding the motion "determines whether the plaintiff's pleadings allege a prima facie case." [FN31] Pursuant to MCR 2.116(G)(5), this Court may only consider the pleadings, "accepting all well pleaded facts as true." [FN32] The pertinent inquiry is whether "the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." [FN33] In its analysis the Court may make reasonable inferences from the allegations in the pleadings. [FN34]

>FN30. *Stott v. Wayne County,* 224 Mich.App 422, 426; 569 NW2d 633 (1997), aff'd on other grounds 459 Mich. 992 (1999).
>
>FN31. *Garvelink v. Detroit News,* 206 Mich.App 604, 608; 522 NW2d 883 (1994).
>
>FN32. *New Hampshire Ins Group v. Labombard,* 155 Mich.App 369, 372; 399 NW2d 527 (1986).
>
>FN33. *Harrison v. Dep't of Corrections,* 194 Mich.App 446, 450; 487 NW2d 799 (1992).
>
>FN34. *Id.* at 449-450.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                                                                   Page 9
2003 WL 460222 (Mich.App.)
**(Cite as: 2003 WL 460222 (Mich.App.))**

In this case, when we examine plaintiffs' first amended complaint, we see at least one fatal flaw. Plaintiffs essentially alleged in the first amended complaint that Thomas was a shareholder who met the criteria for a shareholder derivative suit in M.C.L. § 450.1492a. However, at no place in the complaint did plaintiffs allege that Thomas or anyone else made the demand required in M.C.L. § 450.1493a. Plaintiffs later argued that a demand would have been futile. However, they never moved to amend the complaint for a second time to address the demand issue, even though the court rules governing summary disposition permit amendment when a motion is granted for failure to state a claim. [FN35] Despite our authority to make reasonable inferences, we see nothing in the first amended complaint that even suggests that anyone made this sort of demand. Thus, even assuming that they had valid reason for failing to comply with M.C.L. § 450.1493a, the derivative claims--meaning those claims to enforce HJ & D/HIA's rights [FN36]--in the first amended complaint were facially deficient. The trial court properly granted summary disposition of HJ & D/HIA's claims under MCR 2.116(C)(8), even if it did so for different reasons. [FN37]

> FN35. See MCR 2.116(I)(5).
>
> FN36. See M.C.L. § 450.1491a(a).
>
> FN37. See *Glazer v. Lamkin,* 201 Mich.App 432, 437; 506 NW2d 570 (1993).

### V. Individual Claims

Plaintiffs contend that the trial court erroneously granted the motions for summary disposition under MCR 2.116(C)(8) as they related to Thomas's individual claims because it mistakenly believed those claims to be merely derivative. Plaintiffs accurately cite case law for the proposition that shareholders may press individual claims for a direct injury distinct from injuries generally sustained by all shareholders. [FN38] What plaintiffs fail to do is to identify which of the claims and facts in the first amended complaint state Thomas's separate injuries. As far as we can see, the allegations of fraud, misappropriation, malpractice, misrepresentation, civil conspiracy, conversion, and unjust enrichment noted in the first amended complaint affected all the shareholders, except for Hipple, equally. The facts of this case as related in the first amended complaint are, therefore, distinguishable from the facts of cases in which a particular set of circumstances affect a single shareholder differently than all other shareholders, thereby justifying an individual claim. [FN39] Further, the claim of tortious interference with business opportunity appears to have no relationship with Thomas's individual rights because the facts alleged concern the relationship between HJ & D/HIA and its customers, not Thomas. Consequently, the trial court properly granted defendants' motion for summary disposition under MCR 2.116(C)(8) despite Thomas's contention that he had the right to press individual claims.

> FN38. See, e.g., *Christner v. Anderson, Nietzke & Co, PC,* 433 Mich. 1; 444 NW2d 279 (1989).
>
> FN39. See *id.* at 9.

***12** Affirmed.

2003 WL 460222 (Mich.App.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.