Counsel for Nu-Tech Plastics Engineering
SCHWARTZ LAW FIRM, P.C.
Jay A. Schwartz (P45268)
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DELPHI CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**AFFIDAVIT OF GARY LEEMAN**

Under penalty of perjury, I, Gary Leeman, do solemnly swear to the following facts of which I have personal knowledge and to which I will testify if called:

1. I am a Certified Public Accountant licensed in the State of Michigan.

2. I am accredited in Business Valuation and I am also a Certified Management Consultant. My curriculum vitae is attached as Exhibit 14.

3. I have been providing Forensic Accounting Services since 1978.

4. I was engaged by Jay A. Schwartz, Esq. of the Schwartz Law Firm P.C. to determine the amount of damages, if any Nu-Tech Plastics Engineering, Inc. incurred.

5. Procedures and Findings:

   A. I read the Plaintiff's Complaint which indicated the ending point of the damage period – December 31, 2000. It also provided background data.

B. I Read the Standard Blanket Contract prepared by Delphi. The base selling price of $1.86 per unit was established. Any lost sales would be computed at $1.86 per unit not produced per the contract terms.

C. I reviewed the independently prepared income tax returns for Nu-Tech for the years1996 through 1998 attached hereto as Exhibit 1, Nu-Tech's Statement of Revenue Expenses and Retained Earnings for 1997 and 1998 (attached hereto as Exhibit 2), Nu-Tech's 1998 Monthly Sales by Product for 1998 (attached hereto as Exhibit 3), Nu-Tech's 1998 Statement of Income (attached hereto as Exhibit 4), Nu-Tech's 1998 and 1999 Balance Sheet (attached hereto as Exhibits 5 and 6), Nu-Tech's 1998 Cost of Sales (attached hereto as Exhibit 7), Nu-Tech's Summary of Lease Payments (attached hereto as Exhibit 8). Based upon my review I learned:

1. 1996 and 1997 were not representative years.

2. Controllable and non controllable costs needed further classification as fixed or variable.

3. Payroll also needed further determination of fixed or variable.

4. Determination of fixed or variable costs was necessary because a variable cost takes place when a sale is made. Fixed costs within a relevant range remain the same.

D. I determined the estimated basis for each variable expense and fixed expense.

1. Variable expense at a percentage of sales.

2. Fixed expenses as an amount per year.

E. I isolated Delphi revenues and costs related to Delphi based upon the outside C.P.A.'s financial statement data.

F. The aforementioned provided sufficient relevant information regarding the relationship between the factors included in Nu-tech's financial statements. However, to determine any projected losses the information on lost production (lost sales) for the contract period in question was necessary.

G. I requested legal counsel to obtain production information from the defendants. The defendants never provided the information. A visit to the office of BBK resulted in insufficient relevant information. I contacted CSM. CSM maintains worldwide production data for the automotive industry. CSM is widely depended upon. I have previously utilized its data. I obtained the automotive production data from them for the years 1998 – 2002.

Representatives of Nu-Tech identified to me the vehicles using the part 0694. I now had the number of unsold parts to be multiplied by $1.86 per unit to determine the lost sales which is set forth in Exhibit 9 a true copy of the CSM data and Exhibit 10 a true copy of the summary I prepared based upon my review of the CSM data.

H. I then applied my findings of the relationship of costs, be they variable or fixed, to the amount of lost sales. The lost sales amounted to the $1.86 per the contract times the production of automobiles for 1999 and 2000 using the contract part based upon the CSM data. I calculated that lost sales for 1999 were $5,848,445, for 2000 lost sales were $5,611,114 for a total loss of sales in the amount of $11,459,559. See Exhibit 11, a true copy of my calculations of lost sales.

I. Two additional items still required recognition in determining the loss of income. These items were the additional rent expenses specific to Delphi part "0694" for:

1. Equipment Rental.

2. Building Rental.

J. The additional equipment rental was based upon equipment leased for the production of part "60694" I reviewed two equipment lease agreements and one amendment to equipment lease agreement. Each agreement was with ABX Leasing.

| | | |
|---|---|---|
| 1. | Agreement for Battenfeld Injection Molding Machine #4500/2800 Plus a cooling tower | 5,964.12 per month |
| 2. | Agreement for Cincinnati Elektra ES 550 - 6 plus tilt table plus 1 MFCH – 300 plus one GT-8 Loader | 10,484.21 per month |
| 3. | Amended Agreement for Cincinnati Milicron Plastic Injected Molding Machine, Plus 2 –MFCH – 300 Accessories plus One GT – 8 Loader | 14,629.05 per month |
| 4. | The additional fixed assets Equipment Expense was $745,857 for two years | |

K. The additional building rental expense was based upon adding space rented the production of part "0694". I reviewed two lease agreements.

1. One lease was for space rented at 4068 Baldwin Road, Building B. The lease was between Air Design, L.C. and Nu-Tech. Base rent was $9,993.33 per month or $119,920 per year.

2. The second lease was for space rented at G-6437 Lennon Road. The lease was between John G. Cooper and Nu-Tech. Base rent was $31,833.33 per month or $382,000 per year.

L. It was also necessary to allocate a portion of the fixed expenses to Delphi. The fixed expenses allocated to Delphi was 27.52% of the total fixed expenses before equipment and building rent. The allocated percentage is based upon the ratio of Delphi sales to total sales in 1998 (1,592,520 fixed expenses x 27.52%). The allocated fixed expenses were $438,261 per year shown with the enclosed schedule.

M. The resulting loss of income was $2,311,777.

N. During deposition testimony, John Cooper of Nu-Tech stated there should be no cost of goods sold for Delphi part "0694" based upon contract terms. That fact has been corroborated by the buyer for Delphi. This means the financial statements includes costs that should be accounts receivable. As such the revised loss of income would be $7,638,671 as set forth in Exhibit 12.

O. The estimated lost value of the business represents the loss of income adjusted for excess expenses capitalized at a rate of 3.91 times after tax earnings. The capitalization amount was determined by the build up method based upon risk free rates, large company earnings rates, small company return and the specific company risk rate less any anticipated growth rate. Available rates are published by Ibbotson and Associates. The Company provides detailed analyses of historical market yields. The lost value of the business is reduced by the amount already included in the loss of income and the amount of the January 11, 2000 sale of the business. The net loss from the sale of the business as originally determined was $684,870. The loss from the sale of business assuming no Delphi costs in cost of sales was $4,981,901. Neither amount includes any loss of income figure as a duplication. See Exhibit 12 a true copy of my schedules based upon information provided demonstrating damages to Nu-Tech and Exhibit 13, Closing Statement Regarding Purchase of Assets of Nu-Tech Plastics Engineering, Inc. by Rapid Product Technologies, LLC.

P. Excess costs include

1. Excess building rental paid in 1999.

2. Excess equipment rental paid in 1999.

3. Excess wages and related payroll taxes, and health insurance.

The excess building rent is based upon the 1999 base rents for the leases at 4068 Baldwin Road Building B and G-6437 Lennon Road.

The excess equipment rental is based upon the equipment leases previous discussed in this affidavit.

The lease costs were previously handled as a fixed expense and as such were shown as reducing loss of income. Here, the excess cost as having been incurred, is considered as a separate damage amount. These amounts are shown on the excess cost schedule. The excess wages represent the estimated wages that would not have been incurred based upon the historical sales and wages – other that being 6.74% of sales according to the books and records of the company as adjusted by the outside C.P.A. firm. The wages have related to it the employer portion of payroll taxes and the estimated cost of health insurance to the employees. These amounts are shown on the excess cost schedule.

Q. No damages are included for expert fees.

R. No damages are included for legal fees.

S. No damages are included for opportunity costs.

6. If called to testify I would testify to the statements in this affidavit.

Gary Leeman, C.P.A., A.B.V., C.M.C.

Subscribed and sworn before me this 19 ~~18th~~ day of July, 2007.

WENDY L. JONES, Notary Public
Wayne County, Michigan
My Commission Expires: 7/18/11
Acting in Oakland County, Michigan