SCHWARTZ LAW FIRM, P.C.
Jay A. Schwartz (P45268)
37887 West Twelve Mile Rd., Suite A
Farmington Hills, MI 48331
(248) 553-9400

Counsel for Nu-Tech Plastics Engineering

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 11 |
|---|---|
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD)<br>(Jointly Administered) |
| Debtors. | |

## AFFIDAVIT OF TRENIA PATRICK

STATE OF MICHIGAN    )
                     ) §
COUNTY OF GENESEE    )

I, Trenia Patrick, under oath do solemnly attest that I have personal knowledge of the facts contained in this affidavit and, if called to testify in the above captioned matter, can and will testify competently in accordance with the contents of this affidavit.

1. I was formerly known as Trenia Turner.

2. I was employed as a Senior Buyer/Minority Supplier by General Motors Corporation from 1990 until approximately March, 1998 when Delphi Automotive Systems was

spun off by General Motors at which time I became employed as a Senior Buyer for Delphi. My duties and responsibilities did not change.

3. As part of my duties for both General Motors and Delphi, I entered into purchase orders and contracts with parts suppliers to both General Motors and Delphi on behalf of my employers and with full authority to contract on their behalves.

4. During my employment with General Motors and with Delphi, I acted as a Mentor Liaison to Nu-Tech Plastics Engineering, Inc. which was a minority owned parts supplier business that had been accepted into the General Motors/Delphi Equal Partner/Minority Program.

5. As a Mentor Liaison, I worked closely with Nu-Tech to help insure its financial stability by assisting with the development and implementation of a business plan, introducing Nu-Tech to potential purchasers of Nu-Tech's products and by entering into purchase agreements with Nu-Tech on behalf of General Motors and Delphi.

6. I was the Buyer on behalf of General Motors who signed the first amendment to purchase order 8C934 and purchase order 9C941 and was responsible for the terms and conditions of those contracts, true and accurate copies of which are attached hereto as Exhibits 1 and 2 respectively.

7. I was the Buyer on behalf of Delphi who entered into Standard Blanket Order N580000B and Line Item Detail to that order dated August 17, 1998, a true and accurate copy of which is attached hereto as Exhibit 3.

8. I am personally knowledgeable and familiar with the terms and conditions of each of the above-referenced contracts and am competent to testify as to their contents and requirements.

9.      I am also familiar with the General Terms and Conditions General Motors and, later, Delphi applied to each of the above referenced contracts a true and accurate copy of which is attached hereto as Exhibit 4.

10.     Part number 25160694 was a part used in fuel pump reservoirs for numerous General Motors car and truck models including but not limited to the Chevrolet S-10 Truck from at least 1997 through at least 2000.

11.     In 1997, General Motors accepted Nu-Tech's properly submitted bid to manufacture part 25160694 and issued an amendment to Purchase Order 8C934 which added that part to a previously issued purchase order for other General Motors parts.

12.     That amendment to Purchase Order 8C934 was issued on 11/5/97 and had effective dates of 11/17/97 to 7/31/98 when it expired of its own terms. That purchase order was a "factory assist" requirements contract as set forth in the express terms of the order. The "factory assist" language in purchase order 8C934 indicates that Nu-Tech was to produce all parts listed in that order required by General Motors that were not produced by General Motors itself. In other words, the only two producers of part 25160694 from 11/17/97 through 7/31/98 were Nu-Tech and General Motors.

13.     On March 5, 1998, Nu-Tech submitted a bid to me for the sale of a number of parts, including part 25160694 a true and accurate copy of which is attached hereto as Exhibit 5.

14.     Because Nu-Tech was a minority partner/mentee of General Motors, the bid included the provision that the materials (resin) required to manufacture the parts would be supplied to Nu-Tech by Delphi at Delphi's expense. See Exhibit 5.

15.     Also, in order to produce the parts ordered from Nu-Tech by General Motors/Delphi, because Nu-Tech was a minority partner, General Motors assisted Nu-Tech in

acquiring four 1500 Ton Molders from General Motors as set forth in Exhibit 6 hereto which is a true and accurate copy of documents generated by General Motors regarding Nu-Tech's minority program arrangements with General Motors. Exhibit 6 also reflects the agreement that all of the materials (resin) used to by Nu-Tech to manufacture parts for General Motors/Delphi would be paid for and supplied to Nu-Tech by Delphi. Exhibit 6 also reflects that General Motors had, as of the date of Exhibit 6, March 30, 1998, already awarded contracts to Nu-Tech with values of $10,800,000 for 1998 and $14,000,000 for 1999 and $16,000,000 for 2000. The projected production by Nu-Tech for 1998-2002 included the production of 4,200,000 parts 25160694 (see bates stamp page number 030047-000225 of Exhibit 6).

16. Just before purchase order 8C934 was set to expire, General Motors, through me, issued Purchase Order 9C941 on 6/23/98 with effective dates of 8/1/98 (the day after PO 8C934 expired by its own terms) through 7/31/99 a true and accurate copy of which is attached hereto as Exhibit 2.

17. Purchase Order 9C941 replaced Purchase Order 8C934 which expired on 7/31/98 and was not extended.

18. The "factory assist" language was deleted by General Motors from purchase order 9C941.

19. Purchase Order 9C941 is a "Requirements Contract" for 100% of GM's requirements for part 25160694, among other parts, at a per part price of $1.86 from 8/1/98 through 7/31/99 as expressly stated in the contract.

20. Each page of purchase order 9C941 indicates that it is a "Requirements Contract".

21. Page 1 states, in the "effective date" box that the contract became effective on 8/1/98.

22. Page 9 of Purchase Order 9C941 states, under the column entitled "APRX % of Bus." that Nu-Tech is to provide 100% of part number 25160694, the price column indicates a per part price of $1.86 and the "Dates Effective Expiration" column states that Nu-Tech was to produce 100% of General Motors' requirements for that part from 8/1/98 through 7/31/99. This contract is consistent with my understanding that we were relying upon Nu-Tech to supply us with 100% of this part, at this price, for this time period.

23. Purchase order 9C941 also states that Nu-Tech must have the capacity to produce up to 14,000 parts 25160694 per day. See "Daily Capacity/Hours" column, page 9 of Purchase Order 9C941, Exhibit 2.

24. When Delphi was spun off by General Motors, I issued Delphi Line Item Detail to Blanket PO No. N580000B to Nu-Tech a true and accurate copy of which is Purchase Order 9C941 for part number 25160694 and reflects that Delphi assumed General Motors Purchase Order 9C941 as the Buyer of the parts reflected in General Motors Purchase Order 9C941.

25. Exhibit 3 was issued by me on behalf of Delphi on 8/17/98 and became effective that same date. It stated an expiration date of 7/31/99, the same expiration date as General Motors Purchase Order 9C941.

26. On 5/3/99, Delphi (through Buyer Lynn Arens) issued an Amendment to Exhibit 3, a true and accurate copy of which is attached hereto as Exhibit 7 which I have reviewed, understand and can identify.

27. The purpose of Exhibit 7 as expressly stated after the heading "Amendment Reason" was to extend the expiration date of Exhibit 8 to 12/31/00.

28. The labor strike, which had been on-going through part of 1998, had been settled by 5/3/99.

29. General Motors' Purchase Order General Terms and Conditions, attached hereto as Exhibit 4, applied to Delphi's assumption of purchase order 9C941.

30. The "termination for convenience" section, paragraph 13 of Exhibit 4 required both General Motors and Delphi to give written notice to Nu-Tech of any termination of all or part of a purchase order. A true and accurate copy of an example of such a termination notice sent by Delphi to Nu-Tech for parts not including 25160694 is attached hereto as Exhibit 8.

31. As part of the minority partnership program, General Motors consigned to Nu-Tech 2 tools necessary for the manufacture of part 25160694 true and accurate copies of which consignments are set forth in Exhibit 9 and 10 hereto, designated as Purchase Orders AES59090 and AES61826.

32. Nu-Tech was not required to pay for the use of these tools.

33. As a former buyer for Delphi, I am familiar with "spot buy" contracts which simply order a particular, limited number of parts. A true and accurate example of such a contract is attached hereto as Exhibit 11.

34. As a former buyer for Delphi, I am also familiar with "strike protection" offers a true and accurate copy of an example of such offer is attached hereto as Exhibit 12.

35. Exhibits 2, 3 and 7 were not spot buy contracts nor were they strike protection contracts. Rather, they were contracts for the purchase by General Motors/Delphi of 100% of General Motors' need for part number 25160694 (among others) for the full length of each contract that is from the "effective date" to the "expiration date" unless the termination provisions contained in the Purchase Order General Terms and Conditions were complied with by the buyer.

36.   I am aware that, in 1999, Delphi stopped ordering any parts 25160694 from Nu-Tech and that Delphi was aware of the fact that its failure to order any such parts caused a severe financial downturn to Nu-Tech.

37.   I do not recall telling anyone at Delphi that Nu-Tech's financial distress was caused by "mis-management."

38.   John Cooper did tell me that General Motors had promised to provide to Nu-Tech a replacement part for part 0694 though I am not personally aware of such a promise.

Further Affiant saith not.

_____
TRENIA PATRICK

Subscribed and sworn before me this
15th day of June, 2007.

_____
Tesha F. Bush, Notary Public
Genesee County, Michigan
My Commission Expires: 7/24/2007
Acting in Genesee County, Michigan