SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan III (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

— and —

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- — — - — — - — — - — — - — — - — — - — — - — —    x
                                            :
  In re                                     :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                                            :    (Jointly Administered)
        Debtors.                            :
- — — - — — - — — - — — - — — - — — - — — - — —    x

DEBTORS' RESPONSE TO DAMAGES BRIEF OF JOSEPH
RENO WITH RESPECT TO PROOF OF CLAIM NUMBER 9956

("DAMAGES RESPONSE — JOSEPH RENO")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively the "Debtors"),

hereby submit their Response to Damages Brief Of Joseph Reno With Respect To Proof Of Claim No. 9956 (Joseph Reno) (the "Damages Response") and respectfully represent as follows:[1]

Introduction

1. During the liability phase of this bifurcated proceeding, Claimant Joseph Reno ("Reno") raised against the Debtors seven claims: (i) a claim under the antiretaliatory provisions of Ohio's whistleblower statute; (ii) a wrongful discharge claim; (iii) a wage payment claim; (iv) a defamation claim; (v) a Fair Credit Reporting Act claim; (vi) a claim under the Consolidated Omnibus Reconciliation Act ("COBRA"); and (vii) a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"). Reno alleged nearly $16 million in damages stemming from these seven claims. During the March 21, 2007, claims objection hearing, this Court disallowed and expunged all of Reno's claims except those arising under COBRA and ERISA.

2. Now, during the damages phase of the proceeding, Reno seeks to recover not only the mutually agreed-upon ERISA damages but also the maximum per diem penalty under COBRA and 100 percent of his attorney's fees and costs for prosecuting all seven claims. Reno overreaches. The maximum COBRA penalty is reserved only for the most egregious cases, in particular those where the defendant exhibited bad faith. Where, as here, the defendant proceeded in good faith and the plaintiff suffered no resultant prejudice, a statutory penalty is inappropriate. Similarly, Reno is not entitled to recover his attorney's fees and costs both because Delphi exhibited good faith and because Reno failed to meet his burden to prove any entitlement to such fees.

---

[1] The Debtors have not engaged in formal discovery on damages issues on the agreement that Reno, in his opening damages brief, would articulate any basis for and present any evidence regarding his claim for damages.

2

### Mutually Agreed-Upon ERISA Damages

3. Debtors agree that the value of Reno's ERISA claim is $5,433.52 plus interest.[2]  Reno requests interest at the "statutory rate from the date of April 12, 2004." (Reno Br. at 2.)  However, "[t]here is no federal statute that controls the rate of pre-judgment interest." Klimbach, 467 F. Supp. 2d at 334.  Courts often utilize the postjudgment interest rate provided for in 28 U.S.C. § 1961 to determine prejudgment interest in the ERISA context.  See id. at 334-35; see also Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998) ("[T]he statutory postjudgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards.").  Section 1961 provides that interest "shall be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System . . . ."  28 U.S.C. § 1961(a).  Accordingly, the Debtors agree that the value of Reno's ERISA claim is $5,433.52 plus interest under Section 1961 from April 12, 2004, to the present.

### COBRA Penalty

4. Reno claims that he is entitled to $60,225 in connection with his COBRA claim, based on a statutory daily "penalty" that he maintains should be asserted against Delphi at the maximum $110 level for every day for eighteen months.  The assessment of a statutory penalty for an employer's violation of the COBRA notification requirements is not automatic;

---

[2] "Whether to award pre-judgment interest in a suit to recover benefits under ERISA is ordinarily left to the discretion of the . . . court." Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 334 (W.D.N.Y. 2006).  In determining whether prejudgment interest is appropriate, the court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and relative equities of the award, (iii) the remedial purposes of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." Id.  In the interests of judicial economy and as a show of good faith, Delphi does not dispute an award of prejudgment interest in this case.

3

rather, whether to award any penalty is a discretionary matter for the court. See 29 U.S.C. § 1132(c)(1).³

5.      In determining whether to exercise discretion to assess a penalty, courts, including the Second Circuit, consider various factors, including, among others, "'bad faith or intentional conduct on the part of the administrator . . . and the existence of any prejudice to the participant. . . .'" Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 90 (2d Cir. 2001) (quoting Pagovich v. Moskowitz, 865 F. Supp. 130, 137 (S.D.N.Y. 1994)). Indeed, many courts refuse to assess penalties in the absence of a showing of bad-faith action by the defendant or prejudice to the plaintiff. See De Nicola v. Adelphi Acad., No. CV-05-4231, 2006 WL 2844384, at *9 (E.D.N.Y. Sept. 29, 2006) (collecting cases); Chambers v. European Am. Bank & Trust Co., 601 F. Supp 630, 638-39 (E.D.N.Y. 1985) ("The weight of authority indicates that penalties are not imposed when a plaintiff has failed to demonstrate that his rights were harmed or otherwise prejudiced by the delay in receipt of the information." (collecting cases)).

6.      Here the factors weigh strongly against the assessment of any COBRA penalty. This Court conclusively found that Beth Patrick had a legitimate reason for terminating Reno on March 17, 2004, and that Reno did not show that the reason she articulated for firing him was a pretext. (Tr. at 93:4-5.)⁴ Moreover the only evidence here is that Patrick believed in good faith that Reno's misconduct constituted gross misconduct making Reno ineligible for continued coverage. (Declaration of Elizabeth Patrick ("Patrick Decl.") ¶ 13(g), attached hereto as Exhibit 2.) Accordingly, on April 5, 2004, nineteen days after Reno's termination, the plan

---

3   "Penalties under ERISA were increased to $110 per day pursuant to the Federal Civil Penalties Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996." De Nicola, 2006 WL 2844384, at *7 (citing 29 C.F.R. 2575.502c-1).

4   All citations to "Tr. at __" refer to the transcript of the March 21, 2007, claims objection hearing. A copy of the portion of the transcript containing the Court's ruling is attached hereto as Exhibit 1.

4

administrator sent out a timely COBRA notice that it believed to satisfy the notification requirements. (Notice dated Apr. 5, 2004, attached hereto as <u>Exhibit 3</u>.) The notice provided information concerning how Reno could seek further clarification regarding Delphi's determination, and Reno did seek such clarification. (<u>Id.</u>) On May 24, 2004, Reno received even more information concerning Delphi's determination of his COBRA status. (Letter dated May 24, 2004, attached as <u>Exhibit 4</u>.) Thus, the notification function envisioned in the statute was clearly met here: Delphi based its eligibility determination on its good-faith interpretation of the facts and gave full notice and information concerning that determination. Under these circumstances, a statutory COBRA penalty is not warranted.[5]

       7.     Even if some penalty were appropriate — which the Debtors strongly dispute — Reno's proposed maximum $110 per day penalty for an eighteen-month period should be rejected as excessive and unreasonable. Indeed, in factually comparable circumstances where courts awarded some penalty — as opposed to *no* penalty, as is often the case — nominal penalties of $10 per day were usually awarded. <u>See, e.g.</u>, <u>Disabatino v. Disabatino Bros.</u>, 894 F. Supp. 810, 816-17 (D. Del. 1995) (assessing a penalty of $10 per day where the administrator proceeded in good faith and the participant suffered no cognizable injury as a result of the failure to notify); <u>Paris v. F. Korbel & Bros.</u>, 751 F. Supp. 834, 840 (N.D. Cal. 1990) (assessing a penalty of $10 per day where the administrator proceeding on the good-faith belief that the participant was terminated for gross misconduct); <u>Cooper v. Harbour Inns of Baltimore, Inc.</u>, No. L-98-2173, 2000 WL 351373, at *6 (D. Md. Mar. 20, 2000) (assessing a penalty of $10 per day where the administrator proceeded in good faith and any harm to participant was subsequently cured). As to the duration of any penalty, it would run — if at all — from the forty-fifth day

---

[5] Reno suggests that "when Delphi denied Reno a COBRA continuation of his family insurance plan, he was not the only one touched by Delphi's animus." (Reno Br. at 2.) However, there is absolutely no evidence that Reno or any of his family members were prejudiced by the content of the notification.

5

following Reno's termination (May 1, 2004) to eighteen months after his termination (September 17, 2005), or 504 days. See Disabatino, 894 F. Supp. at 817; Rodriguez v. Int'l College of Bus. & Tech., Inc., 356 F. Supp. 2d 92, 94-95 (D. P.R. 2005). If any penalty is awarded to Reno, it should be commensurate both with Delphi's minimal fault and good faith and with penalties assessed in analogous cases: no more than $10 per day for 504 days. Accordingly, the maximum penalty that Reno should be awarded is $5,040.00.[6]

### Statutory Attorney's Fees and Costs

8.      The evidence does not support any discretionary award of attorney's fees and costs in this case. The Second Circuit weighs five factors in assessing the propriety of an award of attorney's fees under 29 U.S.C. § 1132(g)(1):

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

Salovaara v. Eckert, 222 F.3d 19, 27-28 (2d Cir. 2000); see Paris, 751 F. Supp. at 840 (weighing the same factors and concluding that the plaintiff was not entitled to recover attorney's fees because administrator "truly, although erroneously, believed that [the plaintiff] committed gross misconduct").

---

[6]   The sole case upon which Reno relies in his brief regarding the COBRA penalty, Cooper, 2000 WL 351373, observed that "it would be highly inconsistent for the defendants to have reinstated [the employee's] health insurance coverage . . . at their own expense while at the same time believing that she had been terminated for gross misconduct." Id. at *6 n.15. Yet that "highly inconsistent" behavior is the very behavior that Reno seeks to have this Court sanction. To adopt such a rule would create a Hobson's choice for employers and virtually force employers to continue health coverage for all employees, including for employees the employer correctly believes were fired for gross misconduct, for fear of the maximum statutory penalty if the employer's good-faith belief turns out later to be mistaken.

6

9.      Here the factors weigh against an award of attorney's fees. *First*, as discussed above, Delphi did not act with bad faith in its refusal to notify Reno of continuation coverage. To the contrary, the only admissible evidence is that Delphi properly terminated Reno and believed — in good faith — that his termination was based on gross misconduct obviating the need for notice under 29 U.S.C. § 1166. Supra ¶ 6. *Second*, although Delphi is able to pay attorney's fees and costs, such ability to pay should be discounted because Delphi is a bankruptcy debtor. *Third*, an award of attorney's fees in this case will not deter Delphi — or any other employer — from acting similarly under like circumstances. See De Nicola, 2006 WL 2844384, at *9 ("The goal of deterrence is not to compel employers who believe that their former employees have committed gross misconduct to provide COBRA notices solely out of fear of large penalties."); Cooper, 2000 WL 351373 at *6 n.15. *Fourth*, as to the relative merits of the parties' positions, Debtors prevailed on five of the seven claims Reno raised, evidencing that Debtors' position had more merit than Reno's. Even as to the COBRA claim, the Court declined to rule that Reno did *not* engage in gross misconduct, but the Court found only that it did not have enough of a factual record to make a determination on the issue. (Tr. at 92:3 – 93:11.) Thus, it cannot be said that Delphi's position on the COBRA claim was without merit, especially because the Court found that Reno was terminated for a nonretaliatory reason. (Tr. at 92:23-25.) *Fifth and finally*, Reno's action did not confer a common benefit on plan participants; rather, litigation of the discrete, individual circumstances surrounding Reno's termination was personal to Reno. Moreover, resolution of Reno's claims did not provide any guidance to future litigants by, for example, defining gross misconduct. Because the factors weigh in Debtors' favor, the Court should decline to award attorney's fees and costs to Reno. See De Nicola, 2006 WL 2844384, at *12 ("Because defendant has limited culpability with respect to the COBRA notices

7

and has acted in good faith during this litigation, the plaintiffs' request for attorneys' fees and costs is denied.").

10. Even if the Court determines that some award of attorney's fees is appropriate in this case, an award totaling $85,334.04 is incongruous with the results Reno obtained. Attorney's fees are awarded based upon a determination of the "presumptively reasonable fee" (traditionally called the "lodestar"),[7] which is a "reasonable hourly rate" multiplied by the number of hours reasonably expended on the litigation. See Arbor Hill, --- F.3d ---, 2007 WL 2004106, at *7; Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 330 (W.D.N.Y. 2006) (citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)). Courts "must exclude any hours that were 'excessive, redundant, or otherwise unnecessary.'" Klimbach, 467 F. Supp. 2d at 331 (citations omitted).

11. As an initial matter, courts must "consider the 'critical factor' of the 'results obtained' and adjust the [fees requested] upward or downward accordingly." Id. at 330-31 (citations omitted); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 760 (2d Cir. 1998) ("The most important factor in determining a reasonable fee for a prevailing plaintiff is 'the degree of success obtained.'"(citations omitted)). In this analysis, courts "exclude any hours dedicated to severable, unsuccessful claims." Klimbach, 467 F. Supp. 2d at 331 (citations omitted); see also Knoll v. Equinox Fitness Clubs, No. 02 Civ. 9120 (SAS) (DFE), 2006 WL 2998754, at *1 (S.D.N.Y. Oct. 20, 2006) (explaining that work on unsuccessful claims must be severed from an award of attorney's fees where such claims were based on different facts and

---

[7] The Second Circuit only recently introduced the term "presumptively reasonable rate," abandoning use of the term "lodestar," which has traditionally signified the product of the number of hours reasonably expended on litigation and a reasonable hourly rate. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, --- F.3d ---, 2007 WL 2004106, at *7 (2d Cir. 2007). In Arbor Hill, the Second Circuit clarified the method by which courts are to determine the reasonable hourly rate. See generally id. Because the reasonableness of the hourly rate assessed by Reno's attorney is not in dispute here, it is unnecessary to consider the analysis approved in Arbor Hill.

8

legal theories).  Attorney's fees may be awarded for unsuccessful claims, but only if they are "'inextricably intertwined' and 'involve a common core of facts.'"  Klimbach, 467 F. Supp. 2d at 331 (citation omitted).  Thus, when a plaintiff puts forth alternative grounds for obtaining relief, and ultimately obtains the *desired* relief based on some — but not all — of plaintiff's legal theories, the unsuccessful theories are not severable from the successful theories for purposes of obtaining attorney's fees and costs.

        12.     Here Reno did not obtain his desired relief.  To the contrary, during the liability phase of this proceeding, the Debtors won on 5 out of the 7 claims and succeeded in eliminating over 99% of the damages Reno sought in his proof of claim.  Moreover, under the "common core of facts" test, Reno overlooks that this Court previously recognized that Reno's COBRA and ERISA claims did not arise from the same common core of facts as those underlying his disallowed claims.  (Tr. at 73:17-22.)  Accordingly, the COBRA and ERISA claims are severable, and, at most, Reno may recover only those fees and costs that directly relate to those claims.  See, e.g., Nero v. Univ. Hosp. Mgmt. Servs. Org., No. 1:04CV1833, 2006 WL 2933957, at *6 (N.D. Ohio Oct. 12, 2006) (finding that plaintiff was not entitled to all attorney's fees where the majority of the litigation arose from discrimination claims on which plaintiff did not prevail; plaintiff was entitled only to fees for work exclusively related to the COBRA claim on which she prevailed).[8]

---

[8] Although the Court noted that the Debtors' defense of Reno's COBRA claim was related to the facts of the other claims (Tr. at 73:17-22), the Debtors do not believe their discrete defense — that Reno's misconduct constituted gross misconduct obviating the need for a COBRA notice — involves the "common core of facts" at issue in Reno's failed claims.  The facts that Reno tried to prove were that he was engaged in protected activity and intentionally terminated as a result.  Indeed, Reno's trial brief does not advance any argument whatsoever regarding his COBRA or ERISA claims.  See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (plaintiff's successful Age Discrimination in Employment Act ("ADEA") claim did not involve "common core of facts" as his unsuccessful labor law claim because "[t]he key issue for the labor law claim was whether [plaintiff] was an employee or an independent contractor in that pre-1990 period, which was not an issue with respect to his ADEA claim").  (A copy of Reno's trial brief is attached to his Motion for Leave to File Claimant Joseph Reno's Trial Brief and Declaration (Docket No. 7103).)

9

13.     The party seeking attorney's fees bears the burden of "'establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999) (quoting Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994)). Reno fails to meet this burden because the Application and Affidavit Regarding Bill of Costs and Statutory Attorney Fees for Claimant Joseph Reno (Docket No. 8315) (the "Application") does not clearly delineate the hours devoted to the COBRA and ERISA claims. Indeed, where severable claims such as the alleged wage payment violation for Delphi's alleged failure to pay Reno's wages due and for vacation time accrued — a claim that was not allowed — have no associated breakout of fees, there is no way to eliminate such fees and costs. Because Reno has not met his burden to demonstrate, with any degree of precision, the attorney's fees relevant to the claims on which he prevailed, this Court should decline to award fees, except for work described as "pension" or COBRA-related. See id. (declining to award fees where the applicant did not break out those fees that were related to the relevant work).[9]

14.     Alternatively, in the event that this Court determines that Reno's ERISA and COBRA claims are inextricably intertwined with his remaining, unsuccessful claims, any award of attorney's fees still should not be fully compensatory. As an initial matter, the Supreme Court recognizes that an award of attorney's fees for unsuccessful claims may be unreasonable even though such claims arise from facts common to the successful claims. See

---

[9]     The Application includes only seven entries specifically relevant to work on the pension (ERISA) claim and one entry specifically relevant to the COBRA claim. Additionally, each of these entries refers to other work that is performed contemporaneously and unrelated to the ERISA and COBRA claims. Taken together, these entries represent only $2,062.50 in attorney's fees prior to reductions for work unrelated to the ERISA and COBRA claims and reductions for vague and duplicative entries. Notably, because Reno invites the Court to either "(1) award fees for all time billed [in this case]; or (2) review *on its own* all the time records in order to ascertain how many hours were spent on [relevant claims]," this Court may decline to award fees entirely. Savoie, 166 F.3d at 463 (declining to any award fees accrued after settlement announcement because the applicant did not delineate which hours were devoted to reimbursable matters).

Hensley, 461 U.S. at 435-36 (explaining that if a plaintiff achieved only partial or limited success, recovery of fully compensatory attorney's fees is excessive); see also Grant v. Martinez, 973 F.2d 96, 101-02 (2d Cir. 1992) (courts may reduce fees based on limited success in prosecuting related claims); Avila v. Coca-Cola Co., 849 F.2d 511 (11th Cir. 1988) (refusing to award attorney's fees for related but unsuccessful discrimination claim because plaintiff achieved considerably less relief by prevailing only on his retaliation claim).[10] Reno lost the case he was trying to prove, to wit: a case that Reno was engaged in protected activity and that Delphi intentionally retaliated against him for such protected activity by firing him. Indeed, the damages amounts listed in Reno's trial brief for his ERISA loss ($6,099.59) and COBRA penalty ($18,590) amount to less than $25,000 of the nearly $16 million he sought.[11] It is therefore no wonder that Reno did not even develop an argument in his trial brief regarding these two nominal claims, which amounted to less than one-fifth of 1% of the total damages he sought. Because Reno's success was extremely limited, this Court should reduce substantially Reno's attorney fees award to the extent one is awarded. See Knoll, 2006 WL 2998754, at *1 n.11 (citing Harris v. Marhoefer, 24 F.3d 16, 18-19 (9th Cir. 1994) (approving district court's 50 percent reduction based on the partial success of the prevailing party, a comparison of relief

---

[10] The authority cited by Reno is in accord. See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, Tennessee, 421 F.3d 417, 423-24 (6th Cir. 2005), cert. denied, 126 S. Ct. 2916 (2006) (finding that because plaintiff obtained its preferred, and an undeniably "excellent," result — a permanent injunction against the defendant — plaintiff was entitled to recover its full attorney's fees even though it had not prevailed on some alternative theories for achieving the same relief); Hollingsworth v. Time Warner Cable, 861 N.E.2d 580, 600 (Ohio Ct. App. 2006), appeal not allowed, 861 N.E.2d 145 (2007) (acknowledging that a court may adjust attorney's fees based on the "'significance of the overall relief obtained by the plaintiff'" (citation omitted)). Here Reno's result of obtaining a very small percentage of the nearly $16 million relief sought and victory on two claims with respect to which he did not even develop an argument in his trial brief can hardly be considered an "excellent" result justifying a full attorney's fees and costs award.

[11] Page 11 of Reno's Motion for Leave to File Reno's Trial Brief and Declaration (attached as Exhibit 5) lists the damages Reno sought to prove at trial.

requested versus relief obtained, and the number of successful claims versus unsuccessful claims).[12]

15.     Moreover, most of Reno's counsel's entries are generic, making it impossible to determine whether the entries are necessary and not duplicative.  See Klimbach, 467 F. Supp. 2d at 332 (imposing a 10 percent reduction on vague billing entries where it was impossible to tell whether the hours were duplicative or justifiably billed); Anderson v. Rochester-Genesee Reg'l Transp. Auth., 388 F. Supp. 2d 159, 167 (W.D.N.Y. 2005) (imposing a 20 percent reduction of hours claimed due to, among other reasons, generic descriptions of work performed).  This Court should further reduce an attorney's fees and costs award because of the generic nature of the entries.

## Conclusion

16.     The Court should award Reno only the agreed-upon ERISA damages of $5,433.52 plus interest.  Because Delphi proceeded on the good-faith belief that it terminated Reno for gross misconduct and because Reno has offered no evidence that he was injured as a result of the COBRA violation, Reno should not be entitled to recover a statutory COBRA penalty or attorney's fees or costs.

---

[12]   The Debtors believe that, given the various ways of thinking about a reasonable attorney fee award, no reasonable attorney fee award could exceed 15% of the total attorney fees in this case based on Reno's extremely limited success.  This percentage fits comfortably between the percentage of claims Reno won – 29% (2 claims out of the 7 asserted) – and the percentage of damages, before attorney fees, Reno sought in his trial brief for which he was successful – nearly 0% ($25,000 out of almost $16 million).

12

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) awarding Reno $5,433.52 for ERISA damages plus interest on that amount from April 12, 2004, to the present, (ii) denying Reno any statutory COBRA penalty, (iii) denying Reno attorney's fees and costs, and (iv) granting such further and other relief the Court deems just and proper.

Dated: New York, New York
       July 20, 2007

          SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP

          By: /s/ Albert L. Hogan III
           John Wm. Butler, Jr. (JB 4711)
           Albert L. Hogan III (AH 8807)
           John K. Lyons (JL 4951)
           Ron E. Meisler (RM 3026)
           333 West Wacker Drive, Suite 2100
           Chicago, Illinois 60606
           (312) 407-0700

            – and –

          SKADDEN, ARPS, SLATE,
           MEAGHER & FLOM LLP

          By: /s/ Kayalyn A. Marafioti
           Kayalyn A. Marafioti (KM 9632)
           Thomas J. Matz (TM 5986)
           Four Times Square
           New York, New York 10036
           (212) 735-3000

          Attorneys for Delphi Corporation, et al.,
           Debtors and Debtors-in-Possession