IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :
    In re                   :    Chapter 11
                 :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                 :
            Debtors.   :    (Jointly Administered)
                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

       I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

       On July 13, 2007, I caused to be served the documents listed below (i) upon the parties listed on <u>Exhibit A</u> hereto via overnight delivery, (ii) upon the parties listed on <u>Exhibit B</u> hereto via electronic notification and (iii) upon the parties listed on <u>Exhibit C</u> hereto via postage pre-paid U.S. mail:

1)  Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 8914 (Klash, Inc.) (Docket No. 8598) [a copy of which is attached hereto as <u>Exhibit D</u>]

2)  Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 2440 (Sierra Liquidity Fund, LLC As Assignee Of Applied Tech Industries, Inc.) (Docket No. 8604) [a copy of which is attached hereto as <u>Exhibit E</u>]

3)  Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 14663 (Sierra Liquidity Fund, LLC, As Assignee Of Fair-Rite Products Corporation) (Docket No. 8605) [a copy of which is attached hereto as <u>Exhibit F</u>]

4)  Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 9402 (Bona Vista Programs, Inc.) (Docket No. 8607) [a copy of which is attached hereto as <u>Exhibit G</u>]

5)  Notice Of Further Adjournment Of Claims Objection Hearing With Respect To Debtors' Objection To Proofs Of Claim Nos. 837 And 838 (H.E. Services Company And Robert Backie) (Docket No. 8615) [a copy of which is attached hereto as <u>Exhibit H</u>]

On July 13th, 2007, I caused to be served the documents listed below (i) upon the parties listed on Exhibit I hereto via overnight delivery and (ii) upon the parties listed on Exhibit J hereto via electronic notification:

6) Debtors' Objection To Robert Bosch GmbH's Motion To Amend Proof Of Claim (Docket No. 8618) [a copy of which is attached hereto as Exhibit K]

7) Declaration Of William Cosnowski, Jr. In Support Of Debtors' Objection To Robert Bosch GmbH's Motion To Amend Proof Of Claim ("Cosnowski Declaration - Objection To Bosch Motion") (Docket No. 8619) [a copy of which is attached hereto as Exhibit L]

On July 13th, 2007, I caused to be served the document listed below upon the party listed on Exhibit M hereto via overnight delivery:

8) Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 8914 (Klash, Inc.) (Docket No. 8598) [a copy of which is attached hereto as Exhibit D]

On July 13th, 2007, I caused to be served the document listed below upon the parties listed on Exhibit N hereto via overnight delivery:

9) Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 2440 (Sierra Liquidity Fund, LLC As Assignee Of Applied Tech Industries, Inc.) (Docket No. 8604) [a copy of which is attached hereto as Exhibit E]

On July 13th, 2007, I caused to be served the document listed below upon the parties listed on Exhibit O hereto via overnight delivery:

10) Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 14663 (Sierra Liquidity Fund, LLC, As Assignee Of Fair-Rite Products Corporation) (Docket No. 8605) [a copy of which is attached hereto as Exhibit F]

On July 13th, 2007, I caused to be served the document listed below upon the party listed on Exhibit P hereto via overnight delivery:

11) Notice Of Presentment Of Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 9402 (Bona Vista Programs, Inc.) (Docket No. 8607) [a copy of which is attached hereto as Exhibit G]

On July 13th, 2007, I caused to be served the document listed below upon the party listed on Exhibit Q hereto via overnight delivery:

12) Notice Of Further Adjournment Of Claims Objection Hearing With Respect To Debtors' Objection To Proofs Of Claim Nos. 837 And 838 (H.E. Services Company And Robert Backie) (Docket No. 8615) [a copy of which is attached hereto as Exhibit H]

Dated: July 20, 2007

_____ */s/ Evan Gershbein*_____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 20th day of July, 2007, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____ */s/ Shannon J. Spencer*_____

Commission Expires: ___*6/20/10*____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

7/16/2007 12:44 PM
Master Service List Overnight Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth Z. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonscl@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

7/16/2007 12:44 PM
Master Service List Overnight Mail

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L. Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivin@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc. | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason C. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

7/16/2007 12:45 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

7/16/2007 12:45 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

7/16/2007 12:45 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1º | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Counsel to Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 00039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Dephi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America); Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc. |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Procter LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Procter LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

7/16/2007 12:50 PM
Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| Intermet Corporation | Alan Miller | 301 Commerce Street | Ste 2901 | Fort Worth | TX | 76102 | | | | amiller@intermet.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

7/16/2007 12:50 PM
Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com erliey@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Manufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah N. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to  Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritt.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| | Peggy Housner | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadrangleqroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Place | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3500 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202.3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Legal Department of The Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

7/16/2007 12:50 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

7/16/2007 12:50 PM
Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

7/16/2007 12:50 PM
US MAIL

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | 202-339-8400 | Counsel to Westwood Associates, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

7/16/2007 12:50 PM
US MAIL

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

7/16/2007 12:50 PM
US MAIL

# EXHIBIT D

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
         In re                            :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                      Debtors.            :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF JOINT STIPULATION AND AGREED ORDER
COMPROMISING AND ALLOWING PROOF OF CLAIM NUMBER 8914
(KLASH, INC.)

PLEASE TAKE NOTICE that on February 15, 2007, Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), objected to proof of claim number 8914 (the "Proof of Claim") filed by Klash, Inc. (the "Claimant") pursuant to the Debtors' Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) (the "Ninth Omnibus Claims Objection").

PLEASE TAKE FURTHER NOTICE that the Debtors and the Claimant have agreed to settle the Ninth Omnibus Claims Objection with respect to the Proof of Claim, and because the claim (the "Claim") asserted in the Proof of Claim involves an ordinary course controversy and pursuant to the Amended And Restated Order Under 11 U.S.C. §§ 363, 502 And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401), the Debtors and the Claimant have (i) entered into a Settlement Agreement dated as of July 13, 2007 (the "Settlement Agreement") and (ii) executed a Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 8914 (Klash, Inc.) (the "Joint Stipulation").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Settlement Agreement and the Joint Stipulation, the Debtors and the Claimant have agreed to allow the Claim as a general unsecured non-priority claim in the amount of $15,246.00 and the Claimant shall withdraw its response (Docket No. 7321) to the Ninth Omnibus Claims Objection with prejudice.

2

PLEASE TAKE FURTHER NOTICE that the Debtors will present the Joint

Stipulation for consideration at the hearing scheduled for July 20, 2007 at 10:00 a.m. (prevailing

Eastern time) in the United States Bankruptcy Court for the Southern District of New York.


Dated:  New York, New York
          July 13, 2007

                                 SKADDEN, ARPS, SLATE, MEAGHER &
                                   FLOM LLP

                                 By:  /s/ John Wm. Butler, Jr.
                                       John Wm. Butler, Jr. (JB 4711)
                                       John K. Lyons (JL 4951)
                                       Ron E. Meisler (RM 3026)
                                 333 West Wacker Drive, Suite 2100
                                 Chicago, Illinois  60606
                                 (312) 407-0700

                                 By: /s/ Kayalyn A. Marafioti
                                       Kayalyn A. Marafioti (KM 9632)
                                       Thomas J. Matz (TM 5986)
                                 Four Times Square
                                 New York, New York 10036
                                 (212) 735-3000

                                 Attorneys for Delphi Corporation, et al.,
                                       Debtors and Debtors-in-Possession

3

# EXHIBIT E

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                                Debtors.    :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF JOINT STIPULATION AND AGREED ORDER
COMPROMISING AND ALLOWING PROOF OF CLAIM NUMBER 2440
(SIERRA LIQUIDITY FUND, LLC AS ASSIGNEE OF APPLIED TECH INDUSTRIES, INC.)

PLEASE TAKE NOTICE that on February 15, 2007, Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), objected to proof of claim number 2440 (the "Proof of Claim") filed by Sierra Liquidity Fund, LLC as assignee of Applied Tech Industries, Inc. (the "Claimant") pursuant to the Debtors' Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) (the "Ninth Omnibus Claims Objection").

PLEASE TAKE FURTHER NOTICE that the Debtors and the Claimant have agreed to settle the Ninth Omnibus Claims Objection with respect to the Proof of Claim, and because the claim (the "Claim") asserted in the Proof of Claim involves an ordinary course controversy and pursuant to the Amended And Restated Order Under 11 U.S.C. §§ 363, 502 And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401), the Debtors and the Claimant have (i) entered into a Settlement Agreement dated as of July 13, 2007 (the "Settlement Agreement") and (ii) executed a Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 2440 (Sierra Liquidity Fund, LLC As Assignee Of Applied Tech Industries, Inc.) (the "Joint Stipulation").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Settlement Agreement and the Joint Stipulation, the Debtors and the Claimant have agreed to allow the Claim as a general unsecured non-priority claim in the amount of $3,690.68 and the Claimant shall withdraw its Response To Ninth Omnibus Objection To Claims By Delphi Corporation, Et Al;

2

Sierra Liquidity Fund, LLC (Assignee); Applied Tech Industries, Inc. (Assignor), Claim No.

2440 (Docket No. 7233) with prejudice.

PLEASE TAKE FURTHER NOTICE that the Debtors will present the Joint

Stipulation for consideration at the hearing scheduled for July 20, 2007 at 10:00 a.m. (prevailing

Eastern time) in the United States Bankruptcy Court for the Southern District of New York.

Dated:  New York, New York
        July 13, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM LLP

                              By: /s/ John Wm. Butler, Jr.
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 4951)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                              By: /s/ Kayalyn A. Marafioti
                                  Kayalyn A. Marafioti (KM 9632)
                                  Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

3

# EXHIBIT F

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF JOINT STIPULATION AND AGREED ORDER
COMPROMISING AND ALLOWING PROOF OF CLAIM NUMBER 14663
(SIERRA LIQUIDITY FUND, LLC, AS ASSIGNEE
OF FAIR-RITE PRODUCTS CORPORATION)

PLEASE TAKE NOTICE that on February 15, 2007, Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), objected to proof of claim number 14663 (the "Proof of

Claim") filed by Sierra Liquidity Fund, LLC as assignee of Fair-Rite Products Corporation (the

"Claimant") pursuant to the Debtors' Ninth Omnibus Objection (Substantive) Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims,

(b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims

Subject To Modification (Docket No. 6968) (the "Ninth Omnibus Claims Objection").

PLEASE TAKE FURTHER NOTICE that the Debtors and the Claimant have

agreed to settle the Ninth Omnibus Claims Objection with respect to the Proof of Claim, and

because the claim (the "Claim") asserted in the Proof of Claim involves an ordinary course

controversy and pursuant to the Amended And Restated Order Under 11 U.S.C. §§ 363, 502 And

503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain

Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401),

the Debtors and the Claimant have (i) entered into a Settlement Agreement dated as of July 13,

2007 (the "Settlement Agreement") and (ii) executed a Joint Stipulation And Agreed Order

Compromising And Allowing Proof Of Claim Number 14663 (Sierra Liquidity Fund, LLC, As

Assignee Of Fair-Rite Products Corporation) (the "Joint Stipulation").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Settlement Agreement

and the Joint Stipulation, the Debtors and the Claimant have agreed to allow the Claim as a

general unsecured non-priority claim in the amount of $16,262.96 and the Claimant shall

withdraw its Response To Ninth Omnibus Objection To Claims By Delphi Corporation, Et Al;

2

Sierra Liquidity Fund, LLC (Assignee); Fair-Rite Products Corporation (Assignor), Claim No.

14663 (Docket No. 7237) with prejudice.

PLEASE TAKE FURTHER NOTICE that the Debtors will present the Joint

Stipulation for consideration at the hearing scheduled for July 20, 2007 at 10:00 a.m. (prevailing

Eastern time) in the United States Bankruptcy Court for the Southern District of New York.

Dated:  New York, New York
        July 13, 2007

SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

3

# EXHIBIT G

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
            In re                         :      Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :      Case No. 05-44481 (RDD)
                                          :
                       Debtors.           :      (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF JOINT STIPULATION AND AGREED ORDER
COMPROMISING AND ALLOWING PROOF OF CLAIM NUMBER 9402
(BONA VISTA PROGRAMS, INC.)

PLEASE TAKE NOTICE that on March 16, 2007, Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), objected to proof of claim number 9402 (the "Proof of

Claim") filed by Bona Vista Programs, Inc. (the "Claimant") pursuant to the Debtors' Eleventh

Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007

To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books

And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 7301)

(the "Eleventh Omnibus Claims Objection").

PLEASE TAKE FURTHER NOTICE that the Debtors and the Claimant have

agreed to settle the Eleventh Omnibus Claims Objection with respect to the Proof of Claim, and

because the claim (the "Claim") asserted in the Proof of Claim involves an ordinary course

controversy and pursuant to the Amended And Restated Order Under 11 U.S.C. §§ 363, 502 And

503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain

Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401),

the Debtors and the Claimant have (i) entered into a Settlement Agreement dated as of July 13,

2007 (the "Settlement Agreement") and (ii) executed a Joint Stipulation And Agreed Order

Compromising And Allowing Proof Of Claim Number 9402 (Bona Vista Programs, Inc.) (the

"Joint Stipulation").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Settlement Agreement

and the Joint Stipulation, the Debtors and the Claimant have agreed to allow the Claim as a

general unsecured non-priority claim in the amount of $15,383.14 and the Claimant shall

withdraw its letter response (Docket No. 7650) to the Eleventh Omnibus Claims Objection with

prejudice.

2

PLEASE TAKE FURTHER NOTICE that the Debtors will present the Joint

Stipulation for consideration at the hearing scheduled for July 20, 2007 at 10:00 a.m. (prevailing

Eastern time) in the United States Bankruptcy Court for the Southern District of New York.


Dated:  New York, New York
       July 13, 2007

                    SKADDEN, ARPS, SLATE, MEAGHER &
                      FLOM LLP

                    By: /s/ John Wm. Butler, Jr.
                      John Wm. Butler, Jr. (JB 4711)
                      John K. Lyons (JL 4951)
                      Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                    By: /s/ Kayalyn A. Marafioti
                      Kayalyn A. Marafioti (KM 9632)
                      Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                            Debtors.      :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF FURTHER ADJOURNMENT OF CLAIMS OBJECTION HEARING WITH
RESPECT TO DEBTORS' OBJECTION TO PROOFS OF CLAIM NOS. 837 AND 838

(H.E. SERVICES COMPANY AND ROBERT BACKIE)

PLEASE TAKE NOTICE that on October 31, 2006, Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), objected to proofs of claim numbers 2237 and 2238[1] (the

"Proofs of Claim") filed by Robert Backie and H.E. Services (the "Claimants") pursuant to the

Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims

Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And

(ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c)

(Docket No. 5452) (the "Objection").

PLEASE TAKE FURTHER NOTICE that on December 11, 2006, the Debtors

filed the Notices Of Claims Objection Hearing With Respect To Debtors' Objection To Proofs

Of Claim Nos. 2237 and 2238 (Docket Nos. 6128 and, 6127) scheduling a claims objection

hearing (the "Claims Objection Hearing") for purposes of holding an evidentiary hearing on the

merits of the Proofs of Claim for February 14, 2007, at 10:00 a.m. (prevailing Eastern time).  On

February 2, 2007, the Debtors filed the Notice Of Adjournment Of Claims Objection Hearing

With Respect To Debtors' Objection To Proof of Claim Nos. 2237, 2238 and 14762 (Robert

Backie, H.E. Services Company, and Richard Janes) (Docket No. 6822) setting the Claims

Objection Hearing for April 27, 2007.  On April 20, 2007, the Debtors filed the Notice Of

Adjournment Of Claims Objection Hearing With Respect to Debtors' Objection To Proofs Of

---

[1]     By agreement of the parties, after the original Notices of Claims Objection Hearing were filed, proofs of
claim numbers 2237 and 2238 were expunged as duplicate claims pursuant to the Order Pursuant To 11
U.S.C. Section 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging (I) Equity Claims, (II)
Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (III) Duplicate And Amended Claims
Identified In Second Omnibus Claims Objection, entered December 21, 2006 (Docket No. 6255), leaving
proofs of claim numbers 837 and 838 as the surviving claims.

Claim Nos. 837, 838, and 14762 (H.E. Services Company, Robert Backie, and Richard Janes[2])
(Docket No. 7767) setting the Claims Objection Hearing for June 22, 2007.

      PLEASE TAKE FURTHER NOTICE that pursuant to Paragraph 9(a)(ii) of the
Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006,
9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii)
Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006
(Docket No. 6089) (the "Order"), and with the consent of the Claimants, the Claims Objection
Hearing is hereby further adjourned to August 30, 2007, at 10:00 a.m. (prevailing Eastern time)
in the United States Bankruptcy Court for the Southern District of New York (the "Court").

      PLEASE TAKE FURTHER NOTICE that the Claims Objection Hearing will
proceed in accordance with the procedures provided in the Order, unless such procedures are
modified in accordance with Paragraph 9(k) thereof.  All provisions and deadlines set forth in the
Order shall remain in full force and effect.  Those outstanding deadlines calculated based on the
hearing date shall be calculated based on the August 30, 2007 hearing date rather than the
original June 22, 2007 hearing date.  Please review the Order carefully – failure to comply with
the procedures provided in the Order (or as modified pursuant to Paragraph 9(k)) could result in
the disallowance and expungement of the Proof of Claim.  A copy of the Order is attached hereto
for your convenience.

---

[2]     Mr. Janes has since withdrawn his claim.

PLEASE TAKE FURTHER NOTICE that the Debtors may further adjourn the

Claims Objection Hearing at any time at least five business days prior to the scheduled hearing

upon notice to the Court and the Claimant.

Dated:  New York, New York
        July 13, 2007

> SKADDEN, ARPS, SLATE, MEAGHER &
>     FLOM LLP
>
> By:  /s/ John Wm. Butler, Jr.          __
>     John Wm. Butler, Jr. (JB 4711)
>     John K. Lyons (JL 4951)
>     Ron E. Meisler (RM 3026)
> 333 West Wacker Drive, Suite 2100
> Chicago, Illinois  60606
> (312) 407-0700
>
> By:  /s/ Kayalyn A. Marafioti
>     Kayalyn A. Marafioti (KM 9632)
>     Thomas J. Matz (TM 5986)
> Four Times Square
> New York, New York 10036
> (212) 735-3000
>
> Attorneys for Delphi Corporation, et al.,
>     Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
          In re                           :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                         Debtors.         :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 2002(m),
3007, 7016, 7026, 9006, 9007, AND 9014 ESTABLISHING (I) DATES FOR
HEARINGS REGARDING OBJECTIONS TO CLAIMS AND (II) CERTAIN
NOTICES AND PROCEDURES GOVERNING OBJECTIONS TO CLAIMS

("CLAIM OBJECTION PROCEDURES ORDER")

Upon the Motion For Order Pursuant To 11 U.S.C. §§ 502(b) And 502(c) And

Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For

Hearings Regarding Disallowance Or Estimation Of Claims And (ii) Certain Notices And

Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims, dated

October 31, 2006 (the "Motion"), of Delphi Corporation and certain of its subsidiaries and

affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"); and upon the objections to the Motion and the record of the hearing held on the

Motion; and after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

A.      Proper, timely, adequate, and sufficient notice of the Motion has been provided, such notice was good, sufficient and appropriate under the particular circumstances, and no other or further notice of the Motion is or shall be required.

B.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion is a core proceeding under 28 U.S.C. § 157 (b)(2).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The relief requested in the Motion and granted herein is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      This Court shall conduct special periodic hearings on contested claims matters in these cases (the "Claims Hearing Dates"), to be held in Courtroom 610, United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 unless the Debtors and the parties whose claims are affected are otherwise notified by the Court. The following dates and times have been scheduled as Claims Hearing Dates in these chapter 11 cases:

> December 13, 2006 at 10:00 a.m. (prevailing Eastern time)
>
> January 12, 2007 at 10:00 a.m. (prevailing Eastern time)
>
> February 14, 2007 at 10:00 a.m. (prevailing Eastern time)
>
> March 1, 2007 at 10:00 a.m. (prevailing Eastern time)

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

March 21, 2007 at 10:00 a.m. (prevailing Eastern time)

April 5, 2007 at 10:00 a.m. (prevailing Eastern time)

April 27, 2007 at 10:00 a.m. (prevailing Eastern time)

May 10, 2007 at 10:00 a.m. (prevailing Eastern time)

May 24, 2007 at 10:00 a.m. (prevailing Eastern time)

June 1, 2007 at 10:00 a.m. (prevailing Eastern time)

June 14, 2007 at 10:00 a.m. (prevailing Eastern time)

June 22, 2007 at 10:00 a.m. (prevailing Eastern time)

July 12, 2007 at 10:00 a.m. (prevailing Eastern time)

July 20, 2007 at 10:00 a.m. (prevailing Eastern time)

August 2, 2007 at 10:00 a.m. (prevailing Eastern time)

August 17, 2007 at 10:00 a.m. (prevailing Eastern time)

August 30, 2007 at 10:00 a.m. (prevailing Eastern time)

September 28, 2007 at 10:00 a.m. (prevailing Eastern time)

October 11, 2007 at 10:00 a.m. (prevailing Eastern time)

October 26, 2007 at 10:00 a.m. (prevailing Eastern time)

November 8, 2007 at 10:00 a.m. (prevailing Eastern time)

November 30, 2007 at 10:00 a.m. (prevailing Eastern time)

December 6, 2007 at 10:00 a.m. (prevailing Eastern time)

2.      Any response to a claims objection or an omnibus claims objection (a

"Response") must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure,

the Local Bankruptcy Rules for the Southern District of New York, and the Amended Eighth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

3

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,
And Administrative Procedures, entered on October 26, 2006 (the "Amended Eighth
Supplemental Case Management Order") (Docket No. 5418), (c) be filed with the Bankruptcy
Court in accordance with General Order M-242 (as amended) – registered users of the
Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest
must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or
any other Windows-based word processing format), (d) be submitted in hard copy form directly
to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United
States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,
New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive,
Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps,
Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:
John Wm. Butler, Jr., John K. Lyons, and Randall G. Reese), in each case so as to be received no
later than 4:00 p.m. (prevailing Eastern time) on the seventh calendar day prior to the Omnibus
Hearing for which the relevant claims objection or omnibus claims objection is scheduled.

        3.        Every Response must contain at a minimum the following:

        (a)        the title of the claims objection to which the Response is directed;

        (b)        the name of the claimant (each holder of a proof of claim, a
"Claimant") and a brief description of the basis for the amount of the claim;

        (c)        a concise statement setting forth the reasons why the claim should
not be disallowed, expunged, reduced, or reclassified, including, but not limited to, the specific
factual and legal bases upon which the Claimant will rely in opposing the claims objection;

        (d)        unless already set forth in the proof of claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant shall disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be

4

confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints;

(e)     to the extent that the claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such claim upon liquidation of the claim or occurrence of the contingency, as appropriate; and

(f)     the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

4.     Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose proof of claim is subject to a claims objection and who is served with the relevant claims objection fails to file and serve a timely Response in compliance with the foregoing procedures, the Debtors may present to the Court an appropriate order seeking relief with respect to such claim consistent with the relief sought in the relevant claims objection without further notice to the claimant, provided that, upon entry of such an order, the claimant shall receive notice of the entry of such order as provided below; provided, however, that if the claimant files a timely Response, which does not include the required minimum information provided in paragraph 3 above, the Debtors shall seek disallowance and expungement of the relevant claim or claims only in accordance with the Claims Hearing Procedures provided in paragraph 9 below.

5.     To the extent that a Response is filed with respect to any claim listed in a claims objection (each, a "Contested Claim"), each such Claim and the objection to such Claim asserted in the claims objection shall be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.

6.     The Debtors are hereby authorized and directed to serve each Claimant whose proof of claim is listed in any omnibus claims objection with (a) a personalized Notice Of Objection To Claim which specifically identifies the Claimant's proof of claim that is subject to objection and the basis for such objection and (b) a complete copy of the relevant omnibus

5

claims objection without exhibits.  Service of omnibus claims objections in such manner shall

constitute good and sufficient notice and no other or further notice to claimants of an omnibus

claims objection shall be required.

> 7.    Kurtzman Carson Consultants, LLC (the "Claims Agent") is hereby

authorized and directed to serve all orders entered with respect to any omnibus claims objections,

including exhibits, upon only the master service list and the 2002 list.  The Claims Agent is

hereby further authorized and directed to serve all claimants whose proofs of claim are the

subject of an order entered with respect to an omnibus claims objection with a copy of such order,

without exhibits, and a personalized Notice Of Entry Of Order in the form attached hereto as

Exhibit A specifically identifying such Claimant's proof of claim that is subject to the order, the

Court's treatment of such proof of claim, and the basis for such treatment, and advising the

Claimant of its ability to view the order with exhibits free of charge on the Debtors' Legal

Information Website.  Without limiting the foregoing, the Court hereby directs the Claims Agent

to serve the First Omnibus Claims Order in the manner provided hereby.

> 8.    Any order entered by the Court with respect to an objection asserted in an

omnibus claims objection shall be deemed a separate order with respect to each claim covered by

such order.

> 9.    The following procedures shall apply with respect to the determination of

Contested Claims (the "Claims Hearing Procedures"):

> (a)    Adjournment Of Claims Hearing.

> > (i)    All Contested Claims for which a timely Response is filed shall be
automatically adjourned to a future hearing, the date of which shall be determined by the Debtors,
in their sole discretion, by serving the Claimant with notice as provided herein.  The Debtors
may send such notice to each Claimant when they deem it appropriate to do so, subject to the
requirements of the Bankruptcy Code, the Bankruptcy Rules, and any further order of this Court.

6

The Debtors shall schedule the further hearing upon each Contested Claim to a Claims Hearing of the Debtors' election:

(A)     for a non-evidentiary hearing to address the legal sufficiency of the particular proof of claim and whether the proof of claim states a claim against the asserted Debtor under Bankruptcy Rule 7012 (a "Sufficiency Hearing"), by serving upon the relevant Claimant by facsimile or overnight delivery, and filing with this Court, a notice substantially in the form attached hereto as <u>Exhibit B</u> (a "Notice Of Sufficiency Hearing") and a copy of this Order at least 20 business days prior to the date of such Sufficiency Hearing, or

(B)     for an evidentiary hearing on the merits of such Contested Claim (a "Claims Objection Hearing"), by serving upon the relevant Claimant by facsimile or overnight delivery, and filing with this Court, a notice substantially in the form attached hereto as <u>Exhibit C</u> (a "Notice Of Claims Objection Hearing" and, collectively with the Notice of Sufficiency Hearing, the "Notices of Hearing") and a copy of this Order at least 65 calendar days prior to the date of such Claims Objection Hearing.

(ii)     The Debtors, in their sole discretion, are authorized to further adjourn a hearing scheduled in accordance herewith at any time by providing notice to the Court and the Claimant at least five business days prior to the date of the scheduled hearing; <u>provided</u>, <u>however</u>, that the hearing on any Contested Claim shall not be adjourned for more than a total of 180 calendar days from date of service of the initial Notice of Hearing set forth in paragraph 9(a)(i)(A) and (B) above without consent of the Claimant with respect thereto, unless otherwise ordered by the Court.

(b)     <u>Sufficiency Hearing Procedures</u>.

(i)     To the extent that a Contested Claim is adjourned to a Sufficiency Hearing, if the Debtors wish to file a supplemental pleading, they shall file and serve their pleading no later than ten calendar days before the scheduled Sufficiency Hearing. The supplemental pleading shall not exceed fifteen single-sided, double-spaced pages.

(ii)     To the extent that a Contested Claim is adjourned to a Sufficiency Hearing, if the Claimant wishes to file a supplemental response, the Claimant shall file and serve its response no later than two business days before the scheduled Sufficiency Hearing. The supplemental response shall not exceed fifteen single-sided, double-spaced pages.

(iii)     To the extent that this Court determines upon conclusion of the Sufficiency Hearing that a Contested Claim cannot be disallowed in whole or in part without further proceedings, the Debtors shall provide to the Claimant a Notice Of Claims Objection Hearing pursuant to the procedures set forth above.

(c)     <u>Mandatory Meet And Confer</u>.

(i)     If (A) (1) the amount in dispute for a Contested Claim exceeds $1,000,000 or (2) a Contested Claim asserts unliquidated claims (unless the Claimant irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $1,000,000), (B) the Claimant (if an individual) or the Claimant's principal place of

business (if a governmental unit or a person, as defined in section 101(41) of the Bankruptcy Code, other than an individual) is located within 90 miles of Troy, Michigan, and (C) such Contested Claim is scheduled by the Debtors for a Claims Objection Hearing, the Debtors and the relevant Claimant  shall hold an in-person meet and confer (an "In-Person Meet and Confer") at a neutral location in Troy, Michigan, or such other location as is reasonably acceptable to the Debtors, within ten business days of service of the Notice Of Claims Objection Hearing.

        (ii)      If (A) (1) the amount in dispute for a Contested Claim is less than or equal to $1,000,000, (2) a Contested Claim asserts unliquidated claims and the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $1,000,000, or (3) the Claimant (if an individual) or the Claimant's principal place of business (if a governmental unit or a person, as defined in section 101(41) of the Bankruptcy Code, other than an individual) is located more than 90 miles from Troy, Michigan, and (B) such Contested Claim is scheduled by the Debtors for a Claims Objection Hearing, the Debtors and the relevant Claimant shall hold a telephonic meet and confer (a "Telephonic Meet and Confer" and, collectively with In-Person Meet and Confers, the "Meet and Confers") within ten business days of service of the Notice Of Claims Objection Hearing.

        (iii)     The following representatives of each of the Debtors and the Claimant shall attend the Meet and Confer: (A) counsel for each of the parties, except for a Claimant proceeding pro se, who shall be prepared to discuss the matter described in paragraph 9 (k) below, and (B) a person possessing ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim on behalf of the Debtors and the Claimant, respectively; provided, however, that counsel for each of the parties may participate in the Meet and Confer telephonically.

        (iv)     The Court will consider appropriate sanctions, including allowance or disallowance of the Contested Claim, if either party does not follow the foregoing procedures or conduct the Meet and Confer in good faith.

        (d)     Debtors' Statement Of Disputed Issues.  Within five business days after service of the Notice Of Claims Objection Hearing, the Debtors shall file and serve a written statement of disputed issues (the "Statement Of Disputed Issues") upon the Claimant.  The Statement Of Disputed Issues shall contain a concise statement summarily setting forth the primary reasons why the claim should be disallowed, expunged, reduced, or reclassified as set forth in the claims objection, including, but not limited to, the material factual and legal bases upon which the Debtors will rely in prosecuting the claims objection, without prejudice to the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Contested Claim.  The Statement of Disputed Issues shall also include documentation supporting the disallowance, expungement, reduction, or reclassification of the Contested Claim, without prejudice to the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Contested Claim; provided, however, that the Debtors need not disclose confidential, proprietary, or otherwise protected information in the Statement of Disputed Issues; provided further, however, that the Debtors shall disclose to the Claimant all information and

provide copies of all documents that the Debtors believe to be confidential, proprietary, or otherwise protected, subject to appropriate confidentiality constraints.

        (e)    <u>Claimant's Supplemental Response</u>.  The following procedures apply to the Claimant's written supplemental response (the "Supplemental Response"), subject to modification pursuant to paragraph 9(k), filed in connection with a Claims Objection Hearing for a Contested Claim:

        (i)    The Claimant may file and serve its Supplemental Response (with a copy to chambers) no later than 30 business days prior to commencement of the Claims Objection Hearing.  The Supplemental Response shall not exceed 20 single-sided, double-spaced pages (exclusive of exhibits or affidavits).

        (ii)    If the Claimant relies on exhibits, the Claimant shall include such exhibits in its Supplemental Response (other than those previously included with either its Proof of Claim or its Response); <u>provided</u>, <u>however</u>, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Supplemental Response; <u>provided</u> <u>further</u>, <u>however</u>, that the Claimant shall disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Contested Claim, subject to appropriate confidentiality constraints.  The Claimant shall include a certificate of counsel or a declaration or affidavit authenticating any documents attached to the Supplemental Response, as appropriate.

        (iii)    The Supplemental Response may include affidavits or declarations from no more than two witnesses setting forth the basis of the Contested Claim and evidence supporting the Contested Claim; <u>provided</u>, <u>however</u>, that if the Claimant intends to call a person not under such Claimant's control at the hearing, the Claimant shall, in lieu of an affidavit or declaration of such person, identify such person, the Claimant's basis for calling such person as a witness, and the reason that it did not file an affidavit or declaration of such person.  If an affiant or declarant does not attend the Claims Objection Hearing, such affiant or declarant's affidavit or declaration shall be stricken.  The Claimant shall not be permitted to elicit any direct testimony at the Claims Objection Hearing; instead, the affidavit or declaration submitted with the Supplemental Response, or such witnesses' deposition transcript if the witnesses were not under the Claimant's control, shall serve as the witnesses' direct testimony and the Debtors may cross examine the witnesses at the Claims Objection Hearing, or counter-designate deposition testimony.  No other or additional witnesses may introduce evidence at the hearing on behalf of the Claimant.

        (iv)    No later than three business days prior to commencement of the Claims Objection Hearing, if the Claimant timely filed a Supplemental Response, the Claimant may file and serve (with a copy to chambers) an amended Supplemental Response and a supplemental affidavit or declaration on behalf of each of its witnesses solely for the purpose of supplementing the Supplemental Response and the witnesses' prior affidavits or declarations with respect to matters adduced through the discovery provided by these Claims Hearing Procedures; <u>provided</u> that the amended Supplemental Response shall be subject to the page limitations set forth above.

(f)     Debtors' Supplemental Reply.  The following procedures shall apply to the Debtors' written supplemental reply, if any (the "Supplemental Reply"), subject to modification pursuant to paragraph 9(k) below, filed in connection with a Claims Objection Hearing with respect to a Contested Claim:

(i)     The Debtors may file and serve (with a copy to chambers) a Supplemental Reply no later than 20 business days prior to commencement of the Claims Objection Hearing.  The Supplemental Reply shall not exceed 20 single-sided, double-spaced pages (exclusive of exhibits or affidavits).

(ii)     If the Debtors rely on exhibits, the Debtors shall include such exhibits in their Supplemental Reply (other than those previously included with either their objection or reply); provided, however, that the Debtors need not disclose confidential, proprietary, or otherwise protected information in the Supplemental Reply; provided further, however, that the Debtors shall disclose to the Claimant all information and provide copies of all documents that the Debtors believe to be confidential, proprietary, or otherwise protected and upon which the Debtors intend to rely in support of their objection, subject to appropriate confidentiality constraints.  The Debtors shall include a certificate of counsel or a declaration or affidavit authenticating any documents attached to the Supplemental Reply.

(iii)     The Supplemental Reply may include affidavits or declarations from no more than two witnesses setting forth the Debtors' basis for objecting to the Contested Claim and evidence in support of such objection to the Contested Claim; provided, however, that if the Debtors intend to call a person not under the Debtors' control at the hearing, the Debtors shall, in lieu of an affidavit or declaration of such person, identify such person, the Debtors' basis for calling such person as a witness, and the reason that it did not file an affidavit or declaration of such person.  If an affiant or declarant does not attend the Claims Objection Hearing, as appropriate, such affiant or declarant's affidavit or declaration shall be stricken.  The Debtors shall not be permitted to elicit any direct testimony at the Claims Objection Hearing, instead, the affidavit or declaration submitted with the Supplemental Reply, or such witnesses' deposition transcript if the witnesses were not under the Debtors' control, shall serve as the witnesses' direct testimony and the Claimant may cross examine the witnesses at the Claims Objection Hearing or counter-designate deposition testimony.  No other or additional witnesses may introduce evidence at the hearing on behalf of the Debtors.

(iv)     No later than three business days prior to commencement of the Claims Objection Hearing, if the Debtors timely filed a Supplemental Reply, the Debtors may file and serve (with a copy to chambers) an amended Supplemental Reply and a supplemental affidavit or declaration on behalf of each of their witnesses solely for the purpose of supplementing the Supplemental Reply and the witnesses' prior affidavits or declarations with respect to matters adduced through the discovery provided by these Claims Hearing Procedures; provided that the amended Supplemental Reply shall be subject to the page limitations set forth above.

(g)     Mandatory Non-Binding Summary Mediation.  Except as set forth below, at least 15 business days prior to commencement of the Claims Objection Hearing, the Debtors and the Claimant shall submit to mandatory non-binding summary mediation (each, a

10

"Mediation") in an effort to consensually resolve the Contested Claim. The Mediation shall be governed by General Order M-143 except as follows. The following procedures shall apply to each Mediation, subject to modification pursuant to paragraph 9(k) below:

(i)     Each Mediation shall be assigned to one of the mediators listed by the Debtors on Exhibit D hereto (each, a "Mediator"). The Debtors and the Claimant shall agree upon the Mediator at the Meet and Confer; provided that, if the Debtors and the Claimant are unable to agree upon a Mediator, the parties shall promptly report such inability to agree to the Court.

(ii)    The Mediator shall not have the authority to require either the Debtors or the Claimant to provide any additional briefing with respect to the Mediation.

(iii)   If (A) (1) the amount in dispute for a Contested Claim exceeds $1,000,000 or (2) a Contested Claim asserts unliquidated claims (unless the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $1,000,000) and (B) the Claimant (if an individual) or the Claimant's principal place of business (if a governmental unit or a person, as defined in section 101(41) of the Bankruptcy Code, other than an individual) is located within 90 miles of Troy, Michigan, the Mediation shall be held at a neutral location in Troy, Michigan.

(iv)    If (A) (1) the amount in dispute for a Contested Claim exceeds $1,000,000 or (2) a Contested Claim asserts unliquidated claims (unless the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $1,000,000), and (B) the Claimant (if an individual) or the Claimant's principal place of business (if a governmental unit or a person, as defined in section 101(41) of the Bankruptcy Code, other than an individual) is located more than 90 miles from Troy, Michigan, the Mediation shall be held at a neutral location reasonably acceptable to the Debtors and the Claimant; provided that, if the Debtors and the Claimant are unable to agree upon a neutral location at the Meet and Confer, the parties shall promptly report such inability to agree to the Court.

(v)     If (A) the amount in dispute for a Contested Claim is less than or equal to $1,000,000 or (B) the Contested Claim asserts unliquidated claims and the Claimant with respect thereto irrevocably agrees in writing that the allowed amount of such Contested Claim shall be limited to a maximum of $1,000,000, participation in Mediation shall be voluntary and any Mediation may be held telephonically at either the Debtors' or the Claimant's request.

(vi)    A person possessing ultimate authority to reconcile, settle, or otherwise resolve the Contested Claim on behalf of each of the Debtors and the Claimant shall attend an in-person Mediation or participate in a telephonic Mediation, if any; provided, however, that the Debtors' counsel will not be precluded from attending and participating in a Mediation in the event that the claimant elects not to have its counsel attend or participate in a Mediation.

(vii)   Absent consent of each of the Claimant and the Debtors, the length of the Mediation shall be limited to one day.

(viii)    The Court will consider appropriate sanctions, including allowance or disallowance of the Contested Claim, if either party does not follow the foregoing procedures or conduct the Mediation in good faith.

(ix)    The Debtors and the Claimant shall each bear its own costs in participating in the Mediation.  The Debtors are hereby authorized to pay the Mediator's fees.

(h)    <u>Claims Objection Hearing Discovery</u>.  If a Claims Objection Hearing is scheduled for a particular Contested Claim, the Debtors and the Claimant shall be bound by the following discovery procedures, which shall otherwise be governed by the Bankruptcy Rules, subject to modification pursuant to paragraph 9(k) below:

(i)    No later than five business days after service of the Supplemental Response, the Debtors may request:

(A)    That the Claimant produce documents relevant to the Contested Claim.  Documents shall be produced at least ten business days prior to commencement of the Claims Objection Hearing.

(B)    That the Claimant respond to no more than 15 interrogatories, including discrete subparts.  Responses shall be produced at least ten business days prior to commencement of the Claims Objection Hearing.

(C)    That the Claimant respond to no more than ten requests for admission.  Responses shall be produced at least ten business days prior to commencement of the Claims Objection Hearing.

(ii)    No later than five business days after service of the Supplemental Reply, the Claimant may request:

(A)    That the Debtors produce documents relevant to the Contested Claim.  Documents shall be produced at least ten business days prior to commencement of the Claims Objection Hearing.

(B)    That the Debtors respond to no more than 15 interrogatories, including discrete subparts.  Responses shall be produced at least ten business days prior to commencement of the Claims Objection Hearing.

(C)    That the Debtors respond to no more than ten requests for admission.  Responses shall be produced at least ten business days prior to commencement of the Claims Objection Hearing.

(iii)    No earlier than fifteen business days prior to the commencement of the Claims Objection Hearing, but at least five business days prior to commencement of the Claims Objection Hearing, the Debtors may, at their election, take the deposition upon oral examination of each witness whose affidavit or declaration was proffered in support of the Claimant's Supplemental Response.  Each deposition shall not exceed three hours.

(iv)    No earlier than fifteen business days prior to the commencement of the Claims Objection Hearing, but at least five business days prior to commencement of the Claims Objection Hearing, the Claimant may, at its election, take the deposition upon oral examination of each witness whose affidavit or declaration was proffered in support of the Debtors' Supplemental Reply.  Each deposition shall not exceed three hours.

(v)    Except as provided in paragraph 9(g)(vi) above, nothing in this Order alters any obligation of opposing counsel with regard to communications with non-counsel opponents or any applicable law regarding corporations or other business entities to be represented by counsel.

(i)    <u>Conduct Of The Claims Objection Hearing</u>.  The Debtors and the Claimant shall each be permitted, subject to modification pursuant to paragraph 9(k) below, no more than one hour to present their respective cases, inclusive of time cross-examining their opponent's witnesses and making argument to the Court.  The parties shall coordinate with each other in advance of the hearing with respect to, joint exhibit binders, stipulated admission of evidence, anticipated disputes regarding the admission of particular evidence and any designated deposition testimony.

(j)    <u>Estimation Based Upon Claimant's Asserted Estimated Amount</u>.  To the extent that a Contested Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code and the Debtors have sought authority to estimate such Contested Claim pursuant to an omnibus claims objection and/or a motion to estimate claims, if the Claimant has filed a Response in accordance with the procedures outlined above which (i) acknowledges that the Contested Claim is contingent or fully or partially unliquidated and (ii) provides the amount that the Claimant believes would be the allowable amount of such Contested Claim upon liquidation of the Contested Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), the Debtors are hereby authorized, in their sole discretion, to elect to provisionally accept the Claimant's Asserted Estimated Amount as the estimated amount of such Contested Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code.  The Debtors' election shall be made by serving the Claimant with a Notice Of Election To Accept Claimant's Asserted Estimated Amount in the form attached hereto as <u>Exhibit E</u>.  The Contested Claim will otherwise remain subject in all respects to the procedures outlined herein.

(k)    <u>Ability To Modify Procedures By Agreement Or Order Of Court</u>.  At the Meet and Confer, the parties shall discuss discovery parameters, briefing, evidence to be presented, the timing outlined herein, and any modifications thereto that are necessary due to the facts and circumstances of the relevant Contested Claim.  Should the parties be unable to agree on reasonable modifications to these Claim Hearing Procedures, if any, either party may request that the Court promptly schedule a teleconference to consider such proposed modifications.  No discovery, testimony, or motion practice other than that described herein, as modified, shall be permitted, unless otherwise agreed by the parties or ordered by the Court.

13

10.     The procedures approved herein shall not apply to claims filed by Banc of America Securities LLC (as to proof of claim number 10758), Barclays Capital Inc. (as to proof of claim number 11658), Bear, Stearns & Co. Inc. (as to proof of claim number 10732), Cadence Innovation LLC, Citigroup Global Markets, Inc. (as to proof of claim number 10731), Credit Suisse Securities (USA) LLC (as to proof of claim number 10763), Merrill Lynch, Peirce, Fenner & Smith Inc. (as to proof of claim number 10761), Morgan Stanley & Co. Inc. (as to proof of claim number 10762), the Pension Benefit Guaranty Corporation, Robert Bosch GmbH, the State of California Environmental Protection Agency, the State of Michigan Environmental Protection Agency, the State of Ohio Environmental Protection Agency, Technology Properties, Ltd., UBS Securities LLC (as to proof of claim number 10759), the United States Environmental Protection Agency, and Wachovia Capital Markets, LLC (as to proof of claim number 10760) (collectively, the "Excluded Parties") for any purpose, including, but not limited to, any objections to such claims or other litigation in respect of such claims; provided, however, that nothing contained herein shall preclude any of the Excluded Parties or the Debtors, after notice and an opportunity to be heard, from seeking to establish appropriate alternative claims resolution procedures.

11.     With respect to the claim of Gary Whitney ("Mr. Whitney") (claim number 10157) and NuTech Plastics Engineering, Inc. ("NuTech") (claim number 1279 against Delphi Automotive Systems LLC), nothing in this Order shall limit Mr. Whitney's or NuTech's ability to request relief from the automatic stay provisions under section 362 of the Bankruptcy Code subject to the Debtors' right to object to such request.

12.     The Debtors shall not serve a Notice of Hearing on Orix Warren, LLC ("Orix Warren") with respect to proof of claim number 10202 until the earliest of the following

14

to occur: (a) the Debtors assume the lease between Delphi Automotive Systems LLC and Orix

Warren with respect to property located at 4551 Research Parkway in Warren, Ohio (the "Orix

Lease"), (b) the Debtors reject the Orix Lease, or (c) the Orix Lease terminates or is terminated

pursuant to its terms.

13.    Nothing in this Order shall preclude any right to seek estimation of a claim

under section 502(c) of the Bankruptcy Code, any right to seek relief from the automatic stay

under section 362 of the Bankruptcy Code to liquidate a claim in a different forum, any right to

seek protection of information under section 107(b) of the Bankruptcy Code or any right not

specifically addressed in this Order.

14.    This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this order.

15.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
        December 6, 2006


                            _____/s/Robert D. Drain_____
                            UNITED STATES BANKRUPTCY JUDGE

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ENTRY OF ORDER WITH RESPECT
TO [_____] OMNIBUS CLAIMS OBJECTION

        PLEASE TAKE NOTICE that on _____ _, 200_, the United States Bankruptcy

Court for the Southern District of New York entered a [title of order] (the "Order").

PLEASE TAKE FURTHER NOTICE THAT a copy of the Order, excluding exhibits, is attached hereto.

PLEASE TAKE FURTHER NOTICE that the proof of claim listed below, which you filed against Delphi Corporation and/or other of its subsidiaries and affiliates that are debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), was the subject of the Order and was listed on Exhibit __ to the Order and was accordingly disallowed and expunged, unless otherwise provided below in the column entitled "Treatment Of Claim."

| Date Filed | Claim Number | Asserted Claim Amount[1] | Basis For Objection | Treatment Of Claim | Surviving Claim Number (if any) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

---

[1] Asserted Claim Amounts listed as $0.00 generally reflect that the claim amount asserted is unliquidated.

2

PLEASE TAKE FURTHER NOTICE that you may view the complete exhibits to the Order by requesting a copy from the claims and noticing agent in the above-captioned chapter 11 cases, Kurtzman Carson Consultants LLC, at 1-888-259-2691 or by accessing the Debtors' Legal Information Website at www.delphidocket.com.

Dated: New York, New York
          _____ _, 200_

                                        BY ORDER OF THE COURT

                                        John Wm. Butler, Jr. (JB 4711)
                                        John K. Lyons (JL 4951)
                                        Ron E. Meisler (RM 3026)
                                        SKADDEN, ARPS, SLATE, MEAGHER
                                             & FLOM LLP
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois  60606
                                        (312) 407-0700

                                           - and -

                                        Kayalyn A. Marafioti (KM 9632)
                                        Thomas J. Matz (TM 5986)
                                        SKADDEN, ARPS, SLATE, MEAGHER
                                             & FLOM LLP
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                             Debtors and Debtors-in-Possession

3

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF HEARING WITH RESPECT TO
DEBTORS' OBJECTION TO PROOF OF CLAIM NO. [_____]

        PLEASE TAKE NOTICE that on _____ _, 200_, Delphi Corporation and certain

of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), objected to proof of claim number _____ (the "Proof of Claim")

filed by _____ (the "Claimant") pursuant to the [Title Of Applicable Omnibus Claims

Objection] (the "Objection").

PLEASE TAKE FURTHER NOTICE that pursuant to the Order Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices

And Procedures Governing Objections To Claims, entered December __, 2006 (the "Order"), a

sufficiency hearing (the "Sufficiency Hearing") to address the legal sufficiency of the Proof of

Claim and whether the Proof of Claim states a colorable claim against the asserted Debtor is

hereby scheduled for _____, 200_, at 10:00 a.m. (prevailing Eastern time) in the United

States Bankruptcy Court for the Southern District of New York (the "Court").

PLEASE TAKE FURTHER NOTICE that the Sufficiency Hearing will proceed

in accordance with the procedures provided in the Order, unless such procedures are modified in

accordance with Paragraph 9(k) thereof.  Please review the Order carefully – failure to comply

with the procedures provided in the Order (or as modified pursuant to Paragraph 9(k)) could

result in the disallowance and expungement of the Proof of Claim.  A copy of the Order is

attached hereto for your convenience.

2

PLEASE TAKE FURTHER NOTICE that the Debtors may further adjourn the

Hearing at any time at least five business days prior to the scheduled hearing upon notice to the

Court and the Claimant.


Dated:  New York, New York
        _____ _, 200_

SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP

By:_____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

By:_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

3

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF CLAIMS OBJECTION HEARING WITH
RESPECT TO DEBTORS' OBJECTION TO PROOF OF CLAIM NO. [_____]

        PLEASE TAKE NOTICE that on _____ _, 200_, Delphi Corporation and certain

of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), objected to proof of claim number _____ (the "Proof of Claim")

filed by _____ (the "Claimant") pursuant to the [Title Of Applicable Omnibus Claims

Objection] (the "Objection").

PLEASE TAKE FURTHER NOTICE that pursuant to the Order Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices

And Procedures Governing Objections To Claims, entered December __, 2006 (the "Order"), a

claims objection hearing (the "Claims Objection Hearing") for purposes of holding an

evidentiary hearing on the merits of the Proof of Claim is hereby scheduled for _____, 200_,

at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern

District of New York (the "Court").

PLEASE TAKE FURTHER NOTICE that the Claims Objection Hearing will

proceed in accordance with the procedures provided in the Order, unless such procedures are

modified in accordance with Paragraph 9(k) thereof.  Please review the Order carefully – failure

to comply with the procedures provided in the Order (or as modified pursuant to Paragraph 9(k))

could result in the disallowance and expungement of the Proof of Claim.  A copy of the Order is

attached hereto for your convenience.

2

PLEASE TAKE FURTHER NOTICE that the Debtors may further adjourn the

Hearing at any time at least five business days prior to the scheduled hearing upon notice to the

Court and the Claimant.


Dated:  New York, New York
       _____ _, 200_


                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM LLP

                              By:_____
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 4951)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                              By:_____
                                  Kayalyn A. Marafioti (KM 9632)
                                  Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

3

<u>EXHIBIT D</u>

## <u>LIST OF MEDIATORS</u>

Lawrence Abramcyzk
Marc Abrams
Ronald Barliant
Michael Baum
Morton Collins
Susan Cook
Samuel Damren
Eugene Driker
Jonathan Flaxer
Rozanne Giunta
Erwin Katz
Edward Moran
Alan Nisselson
Thomas Plunkett
Marty Reisig

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF DEBTORS' ELECTION TO ACCEPT CLAIMANT'S
ASSERTED ESTIMATED AMOUNT FOR PROOF OF CLAIM NUMBER [_____]

        PLEASE TAKE NOTICE that on _____ _, 200_, Delphi Corporation and certain

of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), objected to proof of claim number _____ (the "Proof of Claim")

filed by _____ (the "Claimant") pursuant to the [Title Of Applicable Omnibus Claims

Objection] (the "Objection").

PLEASE TAKE FURTHER NOTICE that on _____ _, 200_, the Claimant filed

its response to the objection, wherein Claimant (i) acknowledged that the Proof of Claim asserts

claims that are contingent or fully or partially unliquidated and (ii) stated that the Claimant

believes that the allowable amount of the Proof of Claim upon liquidation of the Contested

Claim or occurrence of the contingency, as appropriate, is $_____ (the "Claimant's Asserted

Estimated Amount").

PLEASE TAKE FURTHER NOTICE that pursuant to the Order Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices

And Procedures Governing Objections To Claims, entered December __, 2006 (the "Order"), the

Debtors hereby provide notice that the Debtors elect to accept the Claimant's Asserted Estimated

Amount as the estimated amount of the Proof of Claim pursuant to section 502(c) of the

Bankruptcy Code as set forth in the Objection.  A copy of the Order is attached hereto.

PLEASE TAKE FURTHER NOTICE that any hearing scheduled pursuant to the

Order is hereby cancelled.

2

PLEASE TAKE FURTHER NOTICE that the Debtors' election to accept the

Claimant's Asserted Estimated Amount is without prejudice to the Debtors' right to object to any

other claims in these chapter 11 cases, or to further object to the Proof of Claim, on any grounds

whatsoever.

Dated:  New York, New York
          _____ _, 200_

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM LLP

                              By:_____
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 4951)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                              By:_____
                                  Kayalyn A. Marafioti (KM 9632)
                                  Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

3

# EXHIBIT I

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | | Counsel to United States Trustee |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Duanne Morris LLP | Walter J Greenhalgh Joseph H Lemkin | 744 Broad St Ste 1200 | | Newark | NJ | 07102-3889 |
| Warner Norcross & Judd LLP | Gordon J Toering | 900 Fifth Third Ctr | 111 Lyon St NW | Grand Rapids | MI | 49503-2487 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/16/2007 12:49 PM
Robert Bosch Special Parties Overnight

# EXHIBIT J

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/16/2007 1:03 PM
Response Service List 070530 Email

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Email |
|---------|---------|----------|----------|------|-------|-----|-------|
| Duanne Morris LLP | Walter J Greenhalgh Joseph H Lemkin | 744 Broad St Ste 1200 | | Newark | NJ | 07102-3889 | WJGreenhalgh@duanemorris.com JHLemkin@duanemorris.com |
| Warner Norcross & Judd LLP | Gordon J Toering | 900 Fifth Third Ctr | 111 Lyon St NW | Grand Rapids | MI | 49503-2487 | gtoering@wnj.com |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

7/16/2007 12:49 PM
Robert Bosch Special Parties Email

# EXHIBIT K

**Hearing Date And Time: July 20, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
          In re                                 :    Chapter 11
                                                :
DELPHI CORPORATION, et al.,                     :    Case No. 05-44481 (RDD)
                                                :
                         Debtor.                :    (Jointly Administered)
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO ROBERT BOSCH GMBH'S MOTION TO
AMEND PROOF OF CLAIM

("OBJECTION TO BOSCH MOTION TO AMEND")

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases, including Delphi Automotive Systems LLC

("DAS LLC") (collectively, the "Debtors"), hereby object (the "Objection"), pursuant to rule 15

of the Federal Rules of Civil Procedure (the "Federal Rules") and rules 7015 and 9014 of the

Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") as applied through case law,

to the Motion To Amend Proof Of Claim (Docket No. 8412) (the "Motion") filed by Robert

Bosch GmbH ("Bosch GmbH"), and respectfully represent as follows:

<div align="center">Preliminary Statement</div>

1.      Bosch GmbH's proposed amendment does not relate back to its previously

filed claims, and is an attempt to add an entirely new claim after the bar date in these cases has

passed.  Both the law and the equities demand that the amendment not be allowed.

2.      On July 31, 2006, which was the bar date (the "Bar Date") in these cases,

Bosch GmbH filed a proof of claim on account of alleged infringement of ten particular patents

and asserting a claim "in excess of $15 million."  Also on July 31, 2006, Robert Bosch

Corporation ("Bosch U.S."), an affiliate of Bosch GmbH, filed a proof of claim asserting a claim

more than $1.3 million on account of trade debt.  On December 27, 2006, without leave of this

Court and five months after the Bar Date, Bosch U.S. sought to amend its trade debt claim to

allege infringement of three patents, two of which were previously included in Bosch GmbH's

claim and one of which – the "New Patent Claim" – was never asserted in any prior claim filed

by Bosch GmbH or Bosch U.S.  The Debtors objected to both Bosch GmbH's and Bosch U.S.'s

claims, challenging the validity of the claims and also challenging the timeliness of Bosch U.S.'s

<div align="center">2</div>

late-filed claim.  The hearing on those contested matters has been adjourned and will take place

at a later time in accordance with the claims objection procedures approved by this Court.[1]

3.       Furthermore, almost a year after the Bar Date, at least seven months after

discovering that it may have an additional claim against the Debtors, and only after the Debtors

had objected to Bosch U.S.'s claim as being untimely, among other things, Bosch GmbH for the

first time filed a motion seeking authority to amend the Bosch GmbH Claim to include the New

Patent Claim and "designate" Bosch U.S. as the holder of the two other patent claims in the

Bosch GmbH proof of claim.

4.       Through its Motion, Bosch is attempting to add an entirely new and

distinct patent claim almost one year after the bar date has passed without any demonstration of

why its neglect in failing to include the New Patent Claim in its original filing was excusable.

Moreover, by seeking immediate relief from the Court, Bosch ignores the established claims

procedures by demanding an immediate adjudication as to whether the late filed New Patent

Claim should be allowed to stand. This matter is already the subject of an omnibus objection that

the Debtors filed more than two months ago and is currently slated to be resolved in accordance

with the claims procedures.

5.       The Second Circuit has stated that courts must engage in a two-part

inquiry when considering amendments to claims.  First, they must examine whether the

amendment relates back to a timely-filed claim.  Second, if the amendment does relate back,

courts must examine whether it would be equitable to allow the amendment.  See Midland

Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F. 3d 115, 133 (2d Cir.

---

[1]      See Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And
9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And
Procedures Governing Objections to Claims (Docket No. 6089).

3

2005) (hereafter, "Enron Corp. (Midland)").  As more fully explained below, Bosch GmbH's

motion to amend its claim fails both of these inquiries.  Accordingly, the Motion should be

denied.

<div align="center">Statement Of Facts</div>

A.    Procedural History

6.    On July 31, 2006, Bosch GmbH timely filed proof of claim no. 13623

("Proof of Claim 13623") against DAS LLC, asserting claims "in excess of $15 million" for

alleged prepetition patent infringement of ten patents (US-5,482,314, US-6.422.596, EP-434.679,

DE-199.581.61, EP-458.796, DE-4.040.927, DE-196.514.52, DE-3.729.785, EP-1066174; EP-

757.635).  Also on July 31, 2006, Bosch U.S. filed proof of claim no. 13620 ("Proof of Claim

13620"), asserting a trade debt claim in the amount of $1,333,984.29 for parts sold and delivered

to DAS LLC.  On August 16, 2006, Bosch GmbH amended Proof of Claim 13623 by filing proof

of claim number 16220 (the "Bosch GmbH Claim").[2]

7.    On October 31, 2006 the Debtors objected to the Bosch GmbH Claim on

the grounds that the Debtors believe they owe no liability to Bosch GmbH.  On November 22,

2006, Bosch GmbH responded to the Debtors' objection.  As a result, the hearing on the merits of

the Bosch GmbH claim was adjourned pursuant to the claims objection procedures.

8.    By its own admission,[3] some time after the Bar Date and prior to

November 22, 2006 Bosch GmbH came to believe the Debtors may have also infringed another

---

[2]    The Debtors entered into a stipulation with Bosch GmbH to disallow and expunge duplicative claims filed by
Bosch GmbH, leaving the Bosch GmbH Claim (proof of claim no. 16220) as the surviving claim. In the
stipulation, the parties agreed that, if Bosch GmbH amended its claim to assert additional or different
obligations, it need only amend the surviving claim.  In all stipulations between the Debtors and Bosch GmbH
or Bosch U.S., however, the Debtors have specifically reserved their rights to object to any new claims or
amendments on any basis, including but not limited to timeliness.  See Docket Nos. 6637, 7598, 7691.

[3]    See Motion at ¶ 23.

<div align="center">4</div>

patent, US 6,272,411 (the "New Patent"), which previously was not listed on the Bosch GmbH

Claim.  Bosch GmbH apparently also discovered that three patents (the New Patent and two of

the patents included in the Bosch GmbH Claim) were actually held by Bosch U.S. rather than

Bosch GmbH.  Without seeking leave of this Court, on December 27, 2006, Bosch U.S. filed

proof of claim no. 16467 (the "Amended Bosch U.S. Claim"), purporting to amend Proof of

Claim 13620, a trade debt claims asserting a claim in excess of $1.3 million, to include a claim

of more than $15 million for alleged patent infringement by the Debtors.  The Amended Bosch

U.S. Claim alleged infringement of the three patents discovered to be held by Bosch U.S.,

including the New Patent and two of the patents that were included in the Bosch GmbH Claim.

9.    On April 27, 2007, the Debtors objected to the Amended Bosch U.S.

Claim as untimely and unsubstantiated, and on May 23, 2007, Bosch U.S. filed a response

thereto.  Accordingly, pursuant to the claims objection procedures approved by this Court, the

Amended Bosch U.S. Claim is currently adjourned to a future date to be noticed by the Debtors.

The identity of the holder and owner of the patents and the merits of the infringement claims will

be decided by this Court at a hearing to be noticed by the Debtors.

10.    Not until June 28, 2007, after waiting more than ten months after filing the

Bosch GmbH Claim, almost a year after the Bar Date, and only after the Debtors had objected to

the Amended Bosch U.S. Claim, did Bosch GmbH file the Motion to seek leave to amend the

Bosch GmbH Claim to include the New Patent and "designate" Bosch U.S. as the holder of three

patents.

11.    By the Motion, Bosch GmbH seeks to (i) revise the name of the claimant

for certain patent infringement claims and (ii) add the New Patent to the list of patents allegedly

infringed by the Debtors.  As a threshold matter, the issue of whether Bosch U.S. can assert a

claim against the Debtors for infringement of the three patents that it holds, including the New

5

Patent, is already pending before this Court. This issue was raised in the Debtors' objection to

the Amended Bosch U.S. Claim and will be addressed by the Debtors in accordance with the

claims objection procedures approved by this Court. Therefore, it is the second issue, i.e.,

whether Bosch GmbH can assert a claim for the New Patent, that has not previously been raised

before this Court.[4] As discussed below, such claim should not be permitted.

B.    The Relevant Patents

12.    The ten patents included in the Bosch GmbH Claim generally relate to two

different product lines, occupant detection devices and airbag control modules. See Supporting

Declaration of William Cosnowski, Jr. (the "Cosnowski Decl."), at ¶ 6. These two product lines

are entirely different. The occupant detection devices are installed within the seat of a vehicle

and are designed to identify whether the occupant in the front passenger seat is the size of a child

or an adult and accordingly determine whether the airbag should be suppressed. The airbag

control module is a computer that evaluates vehicle safety data and controls airbag deployment

when an impact occurs. Id.

13.    Even within each product line, each patent each covers a separate device

or process. Although Patent US-5,482,314 and the New Patent both cover occupant detection

processes; these patents set forth claims on unique inventions. See id. at ¶ 7. Generally, Patent

US-5,482,314 includes at least a six-step process to use sensors to develop a set of electrical

signals and then evaluates those signals to potentially generate a de-activate signal for the

passive restraint signal in a specific manner using specific criteria. See id. at ¶ 7. In contrast, the

---

[4]    It is unclear what legal effect Bosch GmbH intends by "designating" Bosch U.S. as the holder of certain claims.
Even if Bosch GmbH is allowed to "designate" Bosch U.S. as the holder of the two patents already included in
the Bosch GmbH Claim, the issue of whether that designation allows Bosch GmbH to recover damages for any
alleged infringement of those patents is one to be decided by this Court on the merits and pursuant to the claims
objection procedures. Moreover, regardless of whether the New Patent is designated as held by Bosch GmbH
or Bosch U.S., the claim on account of the New Patent is an untimely, new claim and therefore should not be
allowed.

New Patent generally uses at least a three-step process in which sensors periodically provide data that is then compared with a historical database to determine if there is a change in occupancy that may correspond to preselected criteria for signals to the passive restraint system.  See id. at ¶ 7 .

<div align="center">Argument</div>

14.    Bosch GmbH's proposed amendment to its claim fails to satisfy the Second Circuit's two-step inquiry to determine whether a post-bar date amendment to a proof of claim should be permitted.  To allow an amendment to a proof of claim after the bar date has passed, courts first look to whether the amendment relates back to a timely-filed claim.  See Enron Corp. (Midland), 419 F.3d at 134.  The party asserting the relation-back bears the burden of proof.  See Enron Creditors Recovery Corp., __ B.R. __, 2007 WL 1705653, at *4 (Bankr. S.D.N.Y. June 13, 2007) (hereafter, "Enron Creditors Recovery").  If an amendment relates back, then the court "will examine each fact within the case and determine whether it would be equitable to allow the amendment."  Enron Corp. (Midland), 419 F.3d at 133.  Bosch GmbH's proposed amendment does not relate back to the Bosch GmbH Claim.  As discussed above, Bosch GmbH's proposed amendment would add a new, unique patent infringement claim for which Bosch GmbH would need to demonstrate a completely different set of facts than those needed to prove infringement of the other patents asserted in the Bosch GmbH Claim. Additionally, to defend the alleged infringement of the New Patent, the Debtors will need to develop and introduce unique facts to support their defenses of patent invalidity and inequitable conduct, which will be different from the facts to be raised by the Debtors to prove invalidity of the other patents asserted in the Bosch GmbH Claim.  Moreover, even if the proposed amendment is found to relate back to the Bosch GmbH Claim, it would be inequitable to allow

<div align="center">7</div>

the proposed amendment because both the Debtors and other creditors would be prejudiced by

the amendment.  Therefore, Bosch GmbH's Motion should be denied.

A.    Bosch GmbH's Proposed Amendment Arises From Different Facts And Thus Cannot
      Relate Back To The Bosch GmbH Claim

        15.    In determining whether a proposed amendment relates back to an original

claim, courts must "take care that an amendment would truly amend a timely filed proof of claim

rather than assert a new claim."  Enron Creditors Recovery, 2007 WL 1705653 at *3; see also

Enron Corp. (Midland), 419 F.3d at 133 (quoting In re Integrated Res., Inc. v. Amertrust Co.

Nat'l Ass'n (In re Integrated Res., Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993)) ("the court must

subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a

new claim under the guise of an amendment").  A proposed amendment may be allowed if it

corrects a defect of form in the original claim, describes the original claim with greater

particularity, or pleads a new theory of recovery on the facts set forth in the original claim.  See

Enron Corp. (Midland), 419 F.3d at 133 (quoting In re McLean Indus., Inc., 121 B.R. 704, 708

(Bankr. S.D.N.Y. 1990)); In re Asia Global Crossing, Ltd., 325 B.R. 503, 507 (Bankr. S.D.N.Y.

2005) (hereafter, "Asia Global Crossing").

        16.    To analyze whether an amendment relates back to the original timely-filed

claim, courts have applied rule 15(c) of the Federal Rules ("Rule 15(c)") pursuant to Bankruptcy

Rules 7015 and 9014(c).  See Enron Creditors Recovery, 2007 WL 1705653 at *4; see also

Enron Corp. (Midland), 419 F.3d at 133; Asia Global Crossing., 324 B.R. at 508; In re Enron

Corp., 328 B.R. 75, 87 (Bankr. S.D.N.Y. 2005).  Rule 15(c) provides that an amendment relates

back when "the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."  Fed.

R. Civ. P. 15(c)(2).  This means that "the court must decide whether there is a sufficient

8

commonality of facts between the allegations relating to the two causes of action to preclude the

claim of unfair surprise."  Asia Global Crossing, 324 B.R. at 508 (citing Benfield v. Mocatta

Metals Corp., 26 F.3d 19, 23 (2d Cir. 1994)).  "The court should also consider whether the

defendant had notice of the claim now being asserted, and whether the plaintiff will rely on the

same type of evidence to prove both claims."  Id.

17.     By attempting to add the New Patent to the list of patents included in the

Bosch GmbH Claim, Bosch GmbH is asserting a new claim that does not relate back to a prior

one.  The claim on account of the alleged infringement of the New Patent does not "arise out of

the same occurrence set forth in the original pleading," as required by Rule 15(c).  Thus, it

cannot relate back to a timely-filed claim.  Although Bosch GmbH asserts in the Motion that its

proposed amendment "simply . . . [adds] a related patent that was previously omitted from the

list of airbag technology patents" in the Bosch GmbH Claim, the New Patent actually applies to a

process not covered by any of the patents named in the Bosch GmbH Claim.

18.     Bosch GmbH attempts to generalize by asserting that all of the patents

were infringed by "the Debtors' sale of Electronic Control Units and/or detection devices

(collectively, 'ECUs')," Motion at ¶ 1.  However, each patent covers a separate and distinct

device or process.  Thus, Bosch GmbH will need to provide different evidence against each

allegedly infringing product with respect to each patent that has allegedly been infringed.  See

Cosnowski Decl. at ¶ 9, 10.  Furthermore, to defend each patent infringement claim, the Debtors

will likely present unique evidence to support the Debtors' interpretations of the claims in the

patent and demonstrate that the various allegedly infringing products differ from the required

elements of the asserted patent claims.  See id. at ¶ 11.  Even if the underlying products produced

by the Debtors were the same in each case (which they are not), comparing the products to each

patent requires demonstration of different facts to determine whether any alleged infringement

9

has occurred.  Moreover, the Debtors also possess different statutory and equitable defenses,

including patent invalidity, inequitable conduct, and laches, all of which will require facts

particular to the New Patent and different from the facts the Debtors would offer against the

patents identified in the Bosch GmbH Claim.  See Cosnowski Decl. at ¶ 12.  The lack of

commonality of facts necessary to establish or defend against a claim of infringement on both the

New Patent and the various other patents included in the Bosch GmbH Claim demonstrate that

the proposed amendment does not relate back the original claim.

19.     A claim does not relate back to an earlier claim if both claims require

proof of different facts, even if there are similarities on the surface of both claims.  In In re W.T.

Grant Co., 53 B.R. 417 (Bankr S.D.N.Y. 1985), the claimant negotiated a financing transaction

with the debtor and leased two properties to the debtor.  The debtor separately rejected each of

the two leases before the bar date.  The claimant timely filed a rejection damages claim for one

of the rejected leases and then, 16 months after the bar date, sought to amend the claim to include

rejection damages for the second lease.  Although both claims arose from the same financing

arrangement and both claims were for lease rejection damages, albeit for different properties, the

court did not permit the post-bar date amendment.  The court found that the lease provisions

were distinct from one another:  they were not coterminous, rent was separate, notice of

termination of one lease did not terminate the other, and the leases were separately assignable or

could be sublet to different parties.  Id. at 421.

20.     Here, the alleged infringement of the New Patent may give rise to a cause

of action similar to the alleged infringement of one of the patents listed in the Bosch GmbH

Claim, just as the rejection of the two leases gave rise to a similar cause of action for rejection

10

damages.[5]  Yet, the <u>W.T. Grant</u> court noted that the claims were "separate and distinct" from one another.  <u>Id.</u> at 420.  Furthermore, the court reasoned that the terms and provisions contained in each lease were different and "lead [the] court to conclude that they are distinct from each other." <u>Id.</u> at 421.  Here, the processes protected by the New Patent are separate and distinct from the other patents included in the Bosch GmbH Claim.  To prove an infringement of the New Patent, Bosch GmbH would need to establish different facts than with respect to the patents asserted in the Bosch GmbH Claim.

21.    Like the claimant in <u>W.T. Grant</u>, Bosch GmbH seeks to add a similar, but unique, claim to its original proof of claim.  The Bosch GmbH Claim and the proposed amendment both allege patent infringement, but the claims arise from different patents covering unique inventions.  Some of the ten patents included in the Bosch GmbH Claim apply to a product line of occupant detection devices (patents US-5,482,314, EP-757.635, and the New Patent, US-6,272,411, together, the "Occupant Detection Patents"), while others relate to air bag control modules (patents US-6,422,596, EP-434.679, DE-199.581.61, EP-458.796, DE-4.040.927, DE-196.514.52, DE-3.729.785, and EP-1066174, together, the "Airbag Control Module Patents").[6]  <u>See</u> Cosnowski Decl. at ¶¶ 6, 7.  As described above, these two products lines are completely different.

---

[5]    Patent rights are often equated to real property deeds and contracts:  "[A] patent may be thought of as a form of deed which sets out the metes and bounds of the property the inventor owns for the term and puts the world on notice to avoid trespass or to enable one to purchase all or part of the property right it represents. The public holds a vested future interest in the property. Accordingly, patents should be interpreted under the same rules as govern interpretation of kindred documents."  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 997 (Fed. Cir. 1995).

[6]    Bosch GmbH's Motion identifies the allegedly infringing product as electronic control units or "ECUs".  ECU is a generic and overly simplistic term which does not properly identify or classify Debtor's accused products.  <u>See</u> Cosnowski Decl. at ¶ 6.

22.    Within those two product lines, some patents cover processes and others cover particular devices.  Even among those that cover processes, the processes protected by each patent are different from each other and require a showing of distinct infringing actions or elements.  Here, the New Patent covers inventions relating to an occupant detection process which is in an entirely different technology area than the inventions covered by the Airbag Control Module Patents.  Id. at ¶¶ 5, 6.  Among the Occupant Detection Patents, Patent EP-757.635 covers devices and methods (and applies only in Europe), while Patents US-5,482,314 and the New Patent cover distinct processes.  Id. at ¶ 7.

23.    Even between Patent US-5,482,314 and the New Patent, the patented processes are completely distinct and require proof of entirely different steps that comprise the patented process.  See id. at ¶ 7.  The methods behind these two patents, as described above, are completely different and would require Bosch GmbH to prove the existence of unique features for each patent claim and defend against unique challenges against the validity of each of the patents that will be raised by the Debtors.  Thus, the proposed amendment to include a claim based on this New Patent does not relate back to the Bosch GmbH Claim.

B.    The Equitable Factors Preclude Bosch GmbH's Proposed Amendment

24.    The Debtors maintain that Bosch GmbH's proposed amendment does not relate back to the Bosch GmbH Claim, and therefore the court need not even consider the equitable factors.  See Enron Creditors Recovery, 2007 WL 1705653 at *3; Asia Global Crossing, 324 B.R. at 507.  Even if this Court finds, however, that Bosch GmbH's proposed amendment relates back to the Bosch GmbH Claim, the equitable balancing factors weigh in favor of the Debtors and should preclude allowing the proposed amendment to the original claim.  See, e.g., Enron Corp. (Midland), 419 F.3d at 134 (even assuming that claim related back, amendment must fail when factors under equitable test weigh heavily against it).

12

25.    If the first prong of the analysis is satisfied and the claim is found to "relate back" to the timely filed claim, a court must then balance the equities by considering the following five factors: (1) undue prejudice to the opposing party, (2) bad faith or dilatory behavior on the part of the claimant, (3) whether other creditors would receive a windfall if the amendment is not allowed, (4) whether other claimants might be harmed or prejudiced, and (5) the justification for the inability to file the amended claim at the time the original claim was filed. See Enron Creditors Recovery, 2007 WL 1705653 at *3; In re Integrated Res., Inc., 157 B.R. at 70; In re PT-1 Communications, Inc., 292 B.R. 482, 487 (Bankr. E.D.N.Y. 2003).  Here, at least four of the five factors weigh heavily in favor of the Debtors and against allowing the amendment.  Thus Bosch GmbH's Motion must be denied.

(i)    The Debtors Will Be Prejudiced If Bosch GmbH's Amendment Is Allowed

26.    When balancing the equities, the Second Circuit has emphasized that "the critical consideration is whether the opposing party will be unduly prejudiced by the amendment."  Enron Corp. (Midland), 419 F.3d at 133 (quoting In re Integrated Res., Inc., 157 B.R. at 70).  The considerations in weighing the prejudice to the Debtors include the size of the claim, the Debtors' knowledge of the claim, and the threat of a flood of similar claims.  Enron Corp. (Midland), 419 F.3d at 130, 133-34 (explaining the prejudice factor in the context of a late claim but noting that a similar analysis applies for an amended claim).

27.    Bosch GmbH summarily concludes that the Debtors will suffer no prejudice by allowance of the amendment.  This is not true.  Allowing Bosch GmbH to amend its claim would likely "precipitate a flood of similar claims" for several reasons.  See Enron Corp. (Midland), 419 F.3d at 130.  Although the size of Bosch GmbH's claim may be small in relation to the total value of the claims filed in the bankruptcy cases, a claim in excess of $15 million is

13

large in absolute terms.  See id. (noting that claim of $12.5 million in a $900 billion bankruptcy

is "no small amount" in absolute terms; see also In re Kmart Corp., 381 F.3d 709, 714 (7th Cir.

2004) (finding that allowing $750,000 claim with claim pool of approximately $6 billion could

easily cause debtor "to find itself faced with a mountain of such claims, with a corresponding

price tag in the millions of dollars").  Also, adding the New Patent, another avenue of recovery,

increases Bosch GmbH's total potential recovery, notwithstanding Bosch's assertion that it has

not changed the claimed amount in the Bosch GmbH Claim, an amount the Debtors believe is

wildly inflated.[7]  Moreover, the aggregate value of all additional patent claims, not to mention

claims in general, that might be asserted as amendments modeled after the Motion could be quite

substantial.

28.        Courts have often looked primarily to concerns about opening the

floodgates to similar late-filed claims as a reason not to allow an amendment.  See, e.g., Enron

Corp. (Midland), 419 F.3d at 132; In re Kmart Corp., 381 F.3d at 714 (noting that if court

allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain of

such claims"); Enron Creditors Recovery, 2007 WL 1705653 at *10-11 ("It can be presumed in a

case of this size with tens of thousands of filed claims, there are other similarly-situated potential

claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors'

reorganization process." (citation omitted)).

29.        Furthermore, allowing Bosch GmbH to amend a timely-filed claim after

the Debtors objected to a related claim as untimely could open the floodgates for all claimants

who face a similar timeliness objection to seek leave to amend after the fact.  The monetary

consequences of such a flood of motions to amend claims and the potentially significant

---

[7]    If Bosch GmbH believed that the addition of the New Patent to its claim would not yield any additional
recovery, it would likely not have taken the time to seek leave to do so.

administrative burden on the Debtors would pose a threat of severe undue prejudice to the

Debtors, thus weighing against allowing Bosch GmbH's proposed amendment.

(ii)    Other Creditors Would Not Receive A Windfall If
The Amendment Is Not Allowed

30.    As noted above, Bosch GmbH would likely recover a greater amount if it

could amend its claim to include the New Patent than it would without adding that claim.

Although other creditors may receive an increased distribution if the amendment is not allowed,

such a distribution would not constitute a windfall given the expected size of the claims pool in

these cases.  Therefore, this factor weighs in favor of the Debtors.  See Enron Creditors

Recovery, 2007 WL 1705653 at *6.

(iii)    Other Creditors May Be Prejudiced If The Debtors
Are Prevented From Administering The Estate

31.    In addition to the Debtors being prejudiced by both the financial cost and

administrative burden of facing a flood of motions to amend claims, other claimants in these

cases would also be prejudiced by allowance of Bosch GmbH's proposed amendment.  Litigating

such motions before the merits of pending objections have been determined, which may obviate

the need for amendment, is a waste of the Debtors' resources.  Not only is that a costly prospect,

but it prevents the Debtors from administering the claims process according to their plan to reach

their goal of determining the value of the claims pool to obtain their exit financing and emerge

from chapter 11.  See Enron Creditors Recovery, 2007 WL 1705653 at *6 (noting that prejudice

to Debtors "would also impede the administration of the estate, thus causing harm and prejudice

to other claimants, and therefore weighs in favor of the Debtors").

(iv)    Bosch GmbH Has Provided No Justification For Its
Delay In Seeking To Amend Its Claim

15

32.    Bosch GmbH points out that Bosch U.S. filed an amendment to its original claim more quickly after learning of the possibility that certain patents were held by Bosch U.S. rather than Bosch GmbH.  Bosch GmbH, however, provides no explanation for why it did not seek to amend its own claim until now.  Bosch GmbH states that the Motion was filed now "because Bosch does not know when the Debtors will schedule the hearing on the objection [to the Amended Bosch U.S. Claim].  It may be months or even years from now.  The longer Bosch GmbH waits to amend its claim, the more it will appear at first blush to be untimely.  Bosch GmbH simply cannot risk waiting any longer."  Motion at ¶ 44.  This unpersuasive effort to justify Bosch GmbH's filing the Motion now does not explain why the Motion was not filed sooner.  The Bar Date passed more than eleven months ago.  Bosch GmbH admitted in its Motion that it realized in November 2006 that it might have an infringement claim based on the New Patent.  Nevertheless, Bosch GmbH does not explain why it waited seven months to seek to amend its claim to account for this new information.

33.    The fact that the Motion was filed before the Debtors have filed a plan of reorganization is also inconclusive.  The suggestion that adding a claim after the bar date, but before a plan has been filed, is not a disruption "ignores the arduous process of valuing assets, validating claims, and negotiating a compromise among a host of creditors," because the claim is "nonetheless submitted long after the negotiations required to develop [a] plan ha[ve] begun." Enron Corp. (Midland), 419 F.3d at 129.  Bosch GmbH's delay, therefore, weighs against allowing the amendment.

34.    Without addressing Bosch GmbH's motives or good faith in filing the Motion, four of the five equitable factors set forth in the second part of the Second Circuit analysis to determine whether an amended proof of claim should be allowed weigh against allowing the amendment.  Even if this Court finds that the proposed amendment relates back to a

16

timely-filed proof of claim, Bosch GmbH's amendment fails the second prong of the amendment test.

## Conclusion

35.    Bosch GmbH seeks to amend its claim to add a completely new claim eleven months after the Bar Date and approximately seven months after it became aware of the facts giving rise to the requested amendment.  Bosch GmbH fails both prongs of the Second Circuit's test for amending claims because Bosch GmbH's proposed amended claim does not relate back to the Bosch GmbH Claim and the equitable factors do not favor amendment. Accordingly, the Motion should be denied.

## Memorandum Of Law

36.    Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

denying the Motion and (b) granting them such other and further relief as is just.

Dated: New York, New York
        July 13, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: _/s/ John Wm. Butler, Jr._____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

                        - and –


By: _/s/ Kayalyn A. Marafioti_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

18

# EXHIBIT L

**Hearing Date And Time: July 20, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :
In re                          :     Chapter 11
                                  :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                  :
             Debtor.      :     (Jointly Administered)
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF WILLIAM COSNOWSKI, JR. IN SUPPORT OF DEBTORS'
OBJECTION TO ROBERT BOSCH GMBH'S MOTION TO AMEND PROOF OF CLAIM

("COSNOWSKI DECLARATION – OBJECTION TO BOSCH MOTION")

I, William Cosnowski, Jr., declare as follows:

1.      I serve as Divisional Counsel for Delphi Electronic and Safety, the business unit responsible for manufacture and sale of the accused products of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in these chapter 11 cases (collectively, the "Debtors").  I am also litigation and intellectual property counsel to the Debtors.  I have been employed by the Debtors for the past five years.

2.      I submit this declaration in support of the Debtors' Objection To Robert Bosch GmbH's Motion To Amend Proof Of Claim (the "Objection"), dated July 13, 2007. Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Objection.

3.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, and my experience with and knowledge of the following patents: US-5,482,314, US-6.422.596, EP-434.679, DE-199.581.61, EP-458.796, DE-4.040.927, DE-196.514.52, DE-3.729.785, EP-1066174, EP-757.635, and US 6,272,411.  If I were called upon to testify, I could and would testify to the facts set forth herein.

Patents – Unique Inventions

4.      A patent for an invention is the grant of a property right to the inventor that is issued by the United States Patent and Trademark Office.  The right conferred by the patent grant is not the right to make, use, sell, or import, but "the right to exclude others from making, using, offering for sale, or selling" the invention in the United States or "importing" the invention into the United States.

5.      Inventors may obtain patents with claims directed to protect (i) devices or apparatuses or (ii) processes and methods.  Device/apparatus claims cover inventions directed to the structural and functional aspects of physical products, objects, and/or systems.  Process/method claims cover inventions directed to steps for using and performing an arrangement of tasks to accomplish a defined purpose.

6.      Bosch GmbH's Motion identifies the products that allegedly infringe the patents as electronic control units or "ECUs."  ECU is a generic and overly simplistic term which does not properly identify or classify the Debtors' products.  Instead, the products that Bosch GmbH alleges infringe its patents relate to either occupant detection systems or airbag control modules, which are two distinct product lines.  The occupant detection devices are installed within the seat of a vehicle and are designed to identify whether the occupant in the front passenger seat is the size of a child or an adult and accordingly determine whether the passenger airbag should be suppressed.  The airbag control module is a computer that evaluates vehicle safety data and that triggers air bag system deployment when there is an impact.

7.      Three of the eleven patents allegedly infringed apply to occupant detection devices (patents US-5,482,314, EP-757.635, and US-6,272,411 (the "New Patent"), collectively, the "Occupant Detection Patents"), while the other eight patents cover air bag control modules, (patents US-6,422,596, EP-434.679, DE-199.581.61, EP-458.796, DE-4.040.927, DE-196.514.52, DE-3.729.785, and EP-1066174, the "Airbag Control Module Patents").  Although patent US-5,482,314, a copy of which is attached hereto as <u>Exhibit A</u>, and patent US-6,272,411, a copy of which is attached here to as <u>Exhibit B</u>, cover occupant detection processes, they are unique inventions.  <u>See</u> Comparison Of Patents Chart, attached hereto as <u>Exhibit C</u>.  Generally, patent US 5,482,314 includes at least a six-step process to use sensors to develop a set of electrical signals and then evaluates those signals to potentially generate a de-activate signal for

3

the passive restraint signal in a specific manner using confidence values, fused features, empirical relationships, and other criteria.  <u>See</u> <u>Exhibit A</u> at 25.  In contrast, the New Patent generally uses at least a three-step process in which sensors periodically provide data that is then compared with a historical database to determine if there is a change in occupancy that may correspond to preselected criteria for signals to the passive restraint system.  <u>See</u> <u>Exhibit B</u> at 26.

8.    Infringement is determined by the language of the claims, which are the parts of a patent which define the boundaries of the patent's protection.  If a product or method does not fall within the specific language of all properly interpreted claim elements of the patent, there is no literal infringement.  Even where no literal infringement exists, an accused product may infringe a patent under the doctrine of equivalents. The doctrine of equivalents permits courts to extend the scope of protection beyond the claim's literal meaning in certain circumstances where a substitute element in the accused product matches the function, way, and result of the claimed element and where the substitute element in the accused product is only insubstantially different from the claimed element in the asserted patent. In both cases, under either literal infringement or infringement under the doctrine of equivalents, the determination of infringement requires fact intensive analysis.

9.    Here, the New Patent is distinct from the other patents listed in the Bosch GmbH Claim. The six claims of the New Patent are unique, distinct, and cover different inventions from all of the other claims set forth in the other asserted patents.  To demonstrate infringement on the New Patent, Bosch GmbH would need to establish a completely different set of facts than those needed to prove other patent infringement claims asserted in the Bosch GmbH Claim.  For Bosch GmbH to successfully prosecute a patent infringement claim with respect to the New Patent, Bosch GmbH must at least demonstrate that the Debtors' occupant detection product falls within the language of the three elements identified in the first claim of the New

4

Patent.  These three elements in the first claim define the boundaries of the claimed invention

and the New Patent's protection, which does not overlap with the factual analysis that would be

necessary to determine infringement of any other patents held by Bosch GmbH and identified in

the Bosch GmbH Claim.  Additionally, to defend against the alleged infringement of the New

Patent will require the Debtors to develop and introduce unique facts to support its defenses of

patent invalidity and inequitable conduct, which will be different from the facts to be raised by

the Debtors to prove invalidity of the other patents asserted in the Bosch GmbH Claim.

   10. The evidence necessary to establish infringement of the New Patent will

likely include facts relating to construction/interpretation of the elements of the claims in the

patent, proofs of the alleged literal infringement (i.e., comparing each element of each asserted

patent claim to the corresponding feature or structure in the accused products), and proofs of

alleged infringement under the doctrine of equivalents (i.e., identifying equivalents to the claim

elements in the accused product and determining if insubstantial differences exist).

   11. To defend each patent infringement claim, the Debtors will present unique

evidence to support the Debtors' interpretations of the claims in the patent and to demonstrate

that the characteristics of the various accused products differ from the required elements of the

asserted patent either literally or under the doctrine of equivalents.

12.      The Debtors will be able to assert statutory and equitable defenses, including but not limited to patent invalidity, inequitable conduct, and latches, all of which will require facts exclusive to challenge the New Patent that are different from the facts the Debtors would offer against the patents identified in the Bosch GmbH Claim.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.


_____*/s/ William Cosnowski, Jr.*_____
William Cosnowski, Jr.

Dated this 13th day of July, 2007

6

**<u>EXHIBIT A</u>**

**Patent US-5,482,314**

US005482314A

# United States Patent [19]

## Corrado et al.

| [11] | Patent Number: | 5,482,314 |
|---|---|---|
| [45] | Date of Patent: | Jan. 9, 1996 |

[54] **AUTOMOTIVE OCCUPANT SENSOR SYSTEM AND METHOD OF OPERATION BY SENSOR FUSION**

[75] Inventors: **Anthony P. Corrado**, Upland; **Stephen W. Decker**, La Cresenta; **Paul K. Benbow**, Upland, all of Calif.

[73] Assignee: **Aerojet General Corporation,** Fairlawn, Ohio

[21] Appl. No.: **227,531**

[22] Filed: **Apr. 12, 1994**

[51] Int. Cl.$^6$ ............................................... **B60R 21/32**
[52] U.S. Cl. ........................ 280/735; 364/424.05; 307/10.1
[58] Field of Search ........................ 280/735, 734, 280/728 R, 730 R, 731, 732, 728.1, 730.1; 180/272; 307/10.1; 364/424.05; 340/565

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,166,580 | 7/1939 | Caldwell ......................... 188/110 |
| 3,512,155 | 5/1970 | Bloice ......................... 343/3 |
| 3,672,699 | 6/1972 | De Windt . |
| 3,748,639 | 7/1973 | Dobedoe et al. ......................... 340/52 B |
| 3,767,002 | 10/1973 | Gillund ......................... 180/102 |
| 3,774,151 | 11/1973 | Lewis et al. ......................... 180/91 |
| 3,860,904 | 1/1975 | Andersen ......................... 340/52 B |
| 3,898,472 | 8/1975 | Long ......................... 180/82 C |
| 3,935,470 | 1/1976 | Cake ......................... 307/105 B |
| 3,981,518 | 9/1976 | Pulling ......................... 280/730 |
| 4,166,641 | 9/1979 | Okada et al. ......................... 280/735 |
| 4,418,335 | 11/1983 | Genahr ......................... 340/565 |
| 4,476,461 | 10/1984 | Carubia ......................... 340/667 |
| 4,625,329 | 11/1986 | Ishikawa et al. ......................... 382/1 |
| 4,740,701 | 4/1988 | Wuthrich et al. ......................... 250/342 |
| 4,790,190 | 12/1988 | Bambara et al. ......................... 73/660 |
| 4,795,905 | 1/1989 | Zierhut ......................... 250/338.1 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 2134590 | 1/1972 | Germany . |
| 2516185 | 10/1975 | Germany . |
| 3635644 | 4/1987 | Germany . |

| | | | |
|---|---|---|---|
| 3802159 | 8/1989 | Germany . | |
| 3805887 | 9/1989 | Germany . | |
| 3809074 | 10/1989 | Germany . | |
| 4023109 | 1/1992 | Germany . | 280/734 |
| 4137719 | 9/1992 | Germany . | |
| 2243533 | 4/1991 | United Kingdom . | |

OTHER PUBLICATIONS

Shannon, C. E., A Mathematical Theory of Communication, Key Papers in the Development of Information Theory, Slepian, Ed., IEEE Press 1973, pp. 19–29, reprinted with permission from Bell Syst. Tech. J., pp. 623–656, Oct. 1948.

(List continued on next page.)

*Primary Examiner*—Margaret A. Focarino
*Assistant Examiner*—Peter C. English
*Attorney, Agent, or Firm*—Jacques M. Dulin

[57] **ABSTRACT**

A system for sensing the presence, position and type of an occupant in a passenger seat of a vehicle, as well as for sensing the presence of a rear-facing child seat therein, for use in enabling or disabling a related airbag activator. The sensor system employs sensor-fusion, a process of combining information provided by two or more sensors, each of which "sees" the world in a unique sense. In a preferred embodiment, occupancy sensor samples two detectable properties, a first being a thermal signature and associated motion, and a second is acoustically measured distance and the associated motion. Infrared sensor inputs and an ultrasonic sensor input are combined in a microprocessor circuit by means of a sensor fusion algorithm to produce an output signal to the air bag controller. The output signal results from preselected confidence weighing for feature parameters generated by the two sensors and upon a fusion process which ultimately makes a decision which is extremely reliable. The sensor fusion matrix processes the sensor outputs in a decision making operation which includes weighing inputs to guarantee reliability. All sensor outputs, along with calibration data, initial conditions and historical reference data are considered in the process of making a decision of whether or not to deploy the passenger-side air bag in a collision.

**65 Claims, 17 Drawing Sheets**



SIGNAL PROCESSOR FUNCTIONAL BLOCK DIAGRAM

**5,482,314**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,796,013 | 1/1989 | Yasuda et al. | 340/562 |
| 4,804,859 | 2/1989 | Swart | 307/105 |
| 4,845,377 | 7/1989 | Swart | 307/10.1 |
| 4,849,635 | 7/1989 | Sugimoto | 250/342 |
| 4,886,295 | 12/1989 | Browne | 280/777 |
| 4,948,976 | 8/1990 | Baliga | 250/370.06 |
| 4,951,963 | 8/1990 | Behr et al. | 280/753 |
| 4,973,843 | 11/1990 | Murata et al. | 250/338.3 |
| 4,985,835 | 1/1991 | Sterler et al. | 364/424.05 |
| 5,005,147 | 4/1991 | Krishen et al. | 364/578 |
| 5,071,160 | 12/1991 | White et al. | 280/735 |
| 5,073,860 | 12/1991 | Blackburn et al. | 364/424.05 |
| 5,074,583 | 12/1991 | Fujita et al. | 280/735 |
| 5,118,134 | 6/1992 | Mattes et al. | 280/735 |
| 5,161,820 | 11/1992 | Vollmer | 280/730 |
| 5,172,790 | 12/1992 | Ishikawa et al. | 180/268 |
| 5,184,844 | 2/1993 | Goor | 280/733 |
| 5,218,440 | 6/1993 | Mathur | 358/213.27 |
| 5,232,243 | 8/1993 | Blackburn et al. | 280/732 |
| 5,287,110 | 2/1994 | Tran | 342/13 |
| 5,293,455 | 3/1994 | Castelaz | 395/24 |
| 5,307,289 | 4/1994 | Harris | 364/516 |
| 5,324,071 | 6/1994 | Gotomyo et al. | 280/730.1 |
| 5,330,226 | 7/1994 | Gentry et al. | 280/735 |
| 5,341,459 | 8/1994 | Backes | 395/95 |
| 5,398,185 | 3/1995 | Omura | 280/735 |
| 5,413,378 | 5/1995 | Steffens, Jr. et al. | 280/735 |

### OTHER PUBLICATIONS

Gioutsos, T., A Predictive Based Algorithm for Actuation of an Airbag, SAE Technical Paper Series 920479, Reprinted from Sensors and Actuators 1992 (SP–903), International Congress & Exposition, Detroit, Michigan, Feb. 24–28, 1992, SAE International, Warrendale, Pa., pp. 61–66.

Gillis, E. and Gioutsos, T., The Use of Signal Processing Techniques in an Occupant Detection System, SAE Technical Paper Series 940906, Reprinted from Safety Technology (SP–1041), International Congress & Exposition, Detroit, Michigan, Feb. 28–Mar. 3, 1994, SAE International, Warrendale, Pa., pp. 65–70.

Gillis, E. and Gioutsos, T., Occupant Position Sensing Systems: Functional Requirements and Technical Means, SAE Technical paper Series 932915, Worldwide Passenger Car Conference and Exposition, Dearborn, Michigan, Oct. 25–27, 1993, SAE International, Warrendale, Pa., pp. 1–5.

Fukinaga, K., and Mantock, J. M., Nonparametric Discriminant Analysis, IEEE Transactions vol. PAMI–5, No. 6 Nov. 1983 pp. 671–678.

16–Step Range–Finder IC H2476–01, Hamatsu Technical Data, Jan. 1990–Aug. 1988; 3 pages.

PIR 180–100 Pyroelectric IR Detector, Penwalt Kynar Piezo Film Sensor Division, Valley Forge, Pa.; 2 pages.

Database Search Report for Patents on Sensor Fusion, Mar. 2, 1995, Dialog Information Services, 4 pages.

Northrop's BAT Passes Design Review, Flight International Magazine, Jul. 1, 1993, p. 13.

Database Search Report, ("BAT Warhead Passes Tests"), Dialog database version of of article in Flight International Magazine, Jul. 7, 1992, p. 13, Dialog Information Services, 1 page.

JSOW: (AF, 7 Jan. '94), 3. BAT Footprint, (AF 14 Jan. '95) 4. BAT Sensor, Air Force, a journal published by the United States Air Force.

BAT Brilliant Anti–Armor Submunition, a View Graph Summary from the U.S. Army Missile Command, Huntsville, Ala., 24 Mar. 1993.

Database Search Report for Sensor Fusion (Technical Papers and Reports), Mar. 2, 1995, Dialog Information Services, 24 pages.

Database Search Report for DTIC Sensor Fusion, Mar. 2, 1995, Dialog Information Services, 46 pages.

Database Search Report for Sensor Fusion and BAT (Marketing), Mar. 2, 1995, Dialog Information Services, 15 pages.



*Fig.1*

*Fig.2*

*Fig.3*

*Fig.4*

**U.S. Patent**     Jan. 9, 1996     Sheet 2 of 17     5,482,314



Fig._5

Fig._6

Fig.7

Fig.8



↑ REAR OF VEHICLE



Fig. 9A

↓ FRONT OF VEHICLE



Fig. 9B



Fig. 9C



Fig_10

Fig_11a

Fig_11b





ASIC FUNCTIONAL DESCRIPTION  Fig. 13



**Fig. 14**    SIGNAL PROCESSOR FUNCTIONAL BLOCK DIAGRAM



Fig-15a



Fig-15b



# Figure 16



Figure 17



*Fig. 18*



*Fig. 19*

PROGRESSION OF CONFIDENCE LEVEL
OVER TIME FOR ONE STATE OF A
VECTOR COMPONENT



Fig_20    CONFIDENCE LEVELS FOR FEATURE
VECTOR COMPONENTS



Fig_21



# Figure 22



$P_D = .3$  $P_{FA} = 10^{-1}$

SENSOR 1    R = .27

DETECT
REAR FACING
CHILD SEAT                                    R = .98

SENSOR 2    R = .98

$P_D = .99$  $P_{FA} = 10^{-6}$

$P_D = .90$  $P_{FA} = 10^{-3}$

SENSOR 1    R = .89

DETECT
OCCUPANT                                      R = .988

SENSOR 2    R = .89

$P_D = .90$  $P_{FA} = 10^{-3}$

LEGEND:

$P_D$ = PROBABILITY OF CORRECT DETECTION
$P_{FA}$ = PROBABILITY OF AN INCORRECT DETECTION
(FALSE ALARM)

*Fig. 23*  R  = RELIABILITY, 1.00 = 100%

| AOS Detection Condition | Range Motion | Range Abs | R Motion | R Abs | Detection Pd |
|---|---|---|---|---|---|
| | | | | | |
| RFCS | 0.9959 | 0.9959 | 0.3760 | 0.2747 | 0.999992 |
| Occupant | 0.9163 | 0.9519 | 0.9959 | 0.7026 | 0.999995 |
| Empty Seat | 0.9163 | 0.9519 | 0.9959 | 0.7924 | 0.999997 |
| RFCS under | | | | | |
| 2 Thick Blankets | 0.9591 | 0.9742 | 0.1892 | 0.2747 | 0.999379 |
| | | | | | |
| AOS Diagnostic Condition | R Sensor | US Sensor | ASIC Circuits | Circuit Controller | Diagnostic Pd |
| | | | | | |
| Blockage | 0.9742 | 0.9959 | 0.0000 | 0.0000 | 0.999894 |
| Part Failure | 0.9591 | 0.9591 | 0.9742 | 0.9742 | 0.999999 |
| Out of Spec Part | 0.9163 | 0.9163 | 0.9591 | 0.9519 | 0.999986 |
| | | | | | |

**Fig. 26**



*Fig_24a*

*Fig_24b*

*Fig.25a*

**U.S. Patent**          Jan. 9, 1996          Sheet 17 of 17          5,482,314



*Fig. 25b*



| VEHICLE: | 93 LH | VEHICLE: | 93 LH |
|----------|-------|----------|-------|
| SENSOR: | P-1 OVERHEAD | SENSOR: | P-1 OVERHEAD MOUNT |
| STATUS: | RFCS | STATUS: | RFCS UNDER 2 BLANKETS |
| AIR TEMPERATURE: | 22.6°C | AIR TEMPERATURE: | 22.6°C |
| SURFACE TEMPERATURE: | 25°C | SURFACE TEMPERATURE: | 25°C |

*Fig. 27a*          *Fig. 27b*

5,482,314

| 1 | 2 |

# AUTOMOTIVE OCCUPANT SENSOR SYSTEM AND METHOD OF OPERATION BY SENSOR FUSION

## SPECIFICATION

### 1. Field

The present invention relates to sensor systems and methods of operation for use in automotive interiors to sense the presence, position and type of object in a seat and provide a condition signal for use with other automotive systems, and more particularly in conjunction with air bag activation or other type of safety restraint system for protection of passengers in the event of a collision. One embodiment of the present invention is directed to a multi-sensor occupant detection system for use in conjunction with air bag activation for determining by sensor fusion the presence or absence of a human or animal occupant, the presence and orientation of child seat (front or rear-facing), an out-of-position occupant or other types of occupancy to signal the appropriateness to deploy (or not) the air bag, thereby increasing the reliability and safety of an air bag activation system.

### 2. Background

Virtually all modern vehicles, autos, vans and trucks, on the American road now have air bag deployment systems. An increasing fraction of the air bag deployment systems currently available includes a passenger-side air bag as well as a driver-side air bag.

However, a passenger-side air bag deployment system presents problems in regard to criteria for deployment. That is, it is not simply an issue of always deploying a passenger air bag, as injury to occupants passengers can occur by deployment in certain situations. For example, the airbag should deploy only if a passenger is in fact occupying the passenger seat, and should not deploy when the seat is empty. However, even more importantly is the problem of deploying a passenger side air bag when there is present in the passenger seat a rear-facing child seat (RFCS), because the deployment of an air bag against the back portion of an RFCS occupied by a child can cause serious injury to the child by catapulting the child into the back of the car seat, thus defeating the safety advantages of both the air bag and the RFCS during a collision.

Accordingly, it is very important to provide a means for determining when the passenger seat is occupied and when it is not occupied. It is even more important to determine when the passenger seat is occupied by a child in a RFCS so that such information can be used to prevent deployment of the airbag when the child seat is present in that orientation. Of course, any means for determining the status of an occupant in the passenger seat, including the presence and orientation of a child seat, must be highly reliable in order to signal deployment of the air bag when the passenger seat is occupied by a passenger and prevent deployment of the air bag when the passenger seat is occupied by a child in a RFCS.

However, it is no easy task to provide a sensor system, meaning sensor units and methods of operation and signal processing, to reliably detect change of state from an empty to an occupied seat and determine the nature, position (location) and/or orientation of a passenger in the vehicle. By way of example, if a thermal sensor is used, its reliability may be reduced by thermal conditions within the vehicle which can change dramatically with the seasons, weather, vehicle interior configuration, rapidly changing exterior shading, passenger clothing and/or size and driver's choice of interior climate, smoking, etc. Thus, a thermal sensor acting alone can lead to falsely declared occupant presence, and more importantly, failure to detect the presence of an occupant. Furthermore, there may be cases where the thermal signature of a rear-facing child seat blends so well with the seat upholstery that a thermal sensor does not see it, allowing the airbag system to deploy despite the presence of a child-occupied RFCS.

Conversely, if one were to use instead distance measurements, such as by the use of acoustic sensors, such sensor must be capable of distinguishing between the presence of an RFCS and the presence of a passenger holding an object which can result in distance measurements which mimic the presence of a rear-facing child seat.

There are other scenarios as well that require a sensor system to recognize and take appropriate action, such as a forward-facing child seat, inanimate objects, a passenger holding an inanimate object, an out-of-position passenger, and so on.

In addition to these basic sensor requirements, the system for determining the presence of a passenger in the passenger seat and the presence or absence of a rear-facing child seat, must be cost effective and must be in a sufficiently small package to prevent interference with normal vehicle operation. Such systems must be compatible with the aesthetics of the vehicle so as not to affect a vehicle's salability particularly as it relates to new passenger cars. Furthermore, the cost of installing such system in the vehicle must remain simple to keep manufacturing cost low. Preferably, all the sensors should be kept in a single unit to ease the assembly of the vehicle in production or retrofitting older vehicles.

There is no currently available sensor system known to the Applicants which can reliably distinguish the presence and absence of a passenger in the passenger seat as well as the presence or absence of a rear-facing child seat in the passenger seat.

There is also no currently available sensor system that can account for a wide variety of possible variations in both thermal and distance parameters that are encountered in the actual wide range of circumstances of occupancy, nor one that is sufficiently versatile to be adaptable to the wide range of vehicle interior configurations.

An example of a system for actuating a driver airbag restraint is shown in White et al U.S. Pat. No. 5,071,160 (Automotive Systems Laboratory) which employs an ultrasonic acoustic sensor for sensing the position of the driver, a "pyrotechnic" sensor for sensing the presence of the driver, and a pressure transducer within the seat to sense the approximate weight of the driver and an airbag control module to trigger deployment of the airbag. As best understood, when an impending crash is sensed by a crash sensor, a control module samples the sensed position of the passenger at fixed time intervals to calculate the rate of movement of the passenger relative to the various fixed motion structures of the vehicle. This rate of relative passenger movement is used to corroborate the acceleration data from the crash sensor and ensure deployment of the airbag where the passenger is at substantial risk of injury. That is, the interior passenger acceleration is apparently used to prevent false crash signals from the crash sensor. Early crash sensors may trigger airbag deployment during a minor bump in close slow moving traffic or during parking. This " is-the-passenger-being-accelerated-at-the-same-time" system is directed to correcting false signals from the crash sensor.

5,482,314

**3**

The patent describes the desired results but does not detail the process or circuitry to achieve these results beyond stating that the airbag control circuit uses error correction methods such as a plurality of each type of sensors (crash sensor, pyrotechnic, ultrasonic, acoustic, and pressure transducer) for each assigned monitoring task to prevent falsing. Accordingly, the control circuit is said to employ redundant sensors for each monitoring task and the instructions executed by the control module are said to include error correction subroutines known to one skilled in the art. A dashboard signal lamp can be lit when the airbag effectiveness is too low, or the likelihood of passenger injury by the airbag is greater than the injury if he hit the steering wheel, dash or knee bolster, the latter being consistent with the slow bump situation described above.

Accordingly, there is a need in the art for a reliable occupant sensor system for use in conjunction with vehicle air bag deployment systems. There is also a need for a sensor system that can meet the enhanced requirements for reliability in detecting the presence or absence of a passenger or RFCS in a wide range of circumstances, irrespective of whether a passenger is holding an object and irrespective of the thermal conditions that may be found in the vehicle. Such a sensor system must also be a cost effective component of the vehicle that does not detract from the aesthetics of the vehicle interior or unduly increase the cost of manufacturing or assembling a vehicle.

## THE INVENTION

### OBJECTS

It is an object of the present invention to provide an automotive occupancy sensor system to reliably detect the presence or absence of a passenger in the passenger seat and the presence or absence of a rear-facing child seat in the passenger seat and to provide a signal to the airbag system to either inhibit or permit the deployment of a passenger side air bag during a collision.

It is another object of the invention to provide a vehicle passenger sensing system which relies upon multiple sensors utilizing different physical phenomena to provide signals which are processed by sensor fusion to significantly enhance the reliability of passenger detection while permitting the use of relatively low cost conventional sensors.

It is another object of the invention to provide a vehicle occupancy sensing system adapted for use with a passenger seat of a vehicle to control the deployment of an air bag, and specifically to inhibit the deployment of an air bag when a passenger seat is unoccupied, or occupied by inanimate objects, or the occupant is out-of-position, or when an RFCS is present in the passenger seat, in order to prevent unneeded deployment or unsafe deployment which might otherwise cause injury.

It is another object of the invention to provide a passenger occupancy sensor system which utilizes both thermal and acoustic sensors, the signals from which are processed in a fusing algorithm to produce an output signal permitting deployment of a passenger side air bag only when the passenger seat is occupied by a passenger properly positioned in the seat and inhibiting deployment of an air bag in other preselected conditions of occupancy.

It is another object of the invention to provide a multiple sensor occupancy detection system which processes by sensor fusion certain preselected features extracted from signals provided by different certain sensors which sense different physical parameters to increase the reliability of the individual sensing characteristics of the individual sensors.

**4**

It is another object of the invention to provide a multiple sensor occupancy detection system while maintaining low cost in manufacturing of the vehicle by locating sensors in a single unit to ease the task of mounting the sensor system to the vehicle.

It is another object of the present invention to provide a multiple sensor occupancy detection system while maintaining aesthetics of the vehicle by producing a sensor system of minimal size.

It is another object of the invention to provide a sensor system that can be tuned to individual vehicle interior configurations with unparalleled precision of discrimination by sensor fusion signal processing to produce state, condition or decision signals that may be used as input to a wide variety of automotive systems, including but not limited to occupant safety, vehicle integrity and safety, vehicle operating systems condition or position (e.g. seat position and load adjusting systems), unusual conditions, interior temperature control, unauthorized entry (Passive Theft Detergency), near object detection systems, and the like.

Still other objects will be evident from a review of the Summary, Drawings, Detailed Description and claims hereof.

### BRIEF DESCRIPTION OF DRAWINGS:

The invention will be more fully understood hereinafter by reference to the drawings in which:

FIGS. 1–8 show various conditions illustrative of the variety and range of real conditions that must be detected and accurately discriminated amongst by a fully-functional automotive occupant sensor system which, by way of example, is focused on a passenger seat of a vehicle, with: FIG. 1 showing the seat being occupied by a passenger; FIG. 2 showing the passenger seat unoccupied and sensed as "empty"; FIG. 3 showing a child in a rear-facing child seat ("RFCS"); FIG. 4 showing a passenger holding a bag of groceries; FIG. 5 showing a child in a forward-facing child seat ("FFCS"); FIG. 6 showing a dog in the seat; FIG. 7 showing an out-of-position passenger ("OOP"); and FIG. 8 showing a moderate sized package on the seat;

FIG. 9A is an enlarged front view of the sensor taken along line 9—9 of FIG. 2 having an infrared sensor and an ultrasound sensor contained in a single unit, and illustrating a multi-element Fresnel lens system over a dual-detector infrared sensor;

FIG. 9b is a longitudinal section view of the IR sensor taken along line 9B—9B of FIG. 9A;

FIG. 9C is a transverse section view of the IR sensor taken along line 9C—9C of FIG. 9A;

FIG. 10 is a view of the passenger seat and the sensor unit in relative relationship, illustrating the infrared detector zoning of the seat and seat back areas as sensed through the Fresnel lens;

FIG. 11a is a side view illustrating the infrared detectors fields of view coverage on the passenger seat;

FIG. 11b is a side view illustrating a typical ultrasound transducer field of view coverage on the passenger seat;

FIG. 12 is a schematic diagram of the electronic circuit of an embodiment of the sensor system of the present invention;

FIG. 13 is a functional block diagram of an application specific integrated chip ("ASIC") means for carrying out the sensor fusion methods of the present invention;

5,482,314

5

FIG. 14 is a signal processor functional block diagram illustrating the processing steps used in the operation of the presently preferred best mode embodiment of the sensor system of the present invention;

FIG. 15a and 15b are feature processing block diagrams showing the steps of processing raw data from the sensors to produce infrared (FIG. 15a) and ultrasound (FIG. 15b) feature vectors;

FIG. 16 is a fused feature processing block diagram illustrating the process of fusing infrared features and ultrasound features to produce a fused feature vector;

FIG. 17 is a detection processing block diagram showing the processing of the infrared feature vector, ultrasound feature vector, and fused feature vector to produce a feature state;

FIG. 18 is a graph illustrating the relationship between a feature vector component and confidence levels of various occupancy states by way of example: OOP state, RFCS state, inanimate object state, occupant state, and empty state;

FIG. 19 is a graph illustrating the progression of confidence levels for a given state and a given feature vector component over time;

FIG. 20 is a graph showing confidence level upon fusion of two feature vector components;

FIG. 21 is a graphically illustrated matrix of the relationship between vector components, and fused vector components, states, and confidence levels; and

FIG. 22 is decision processing block diagram illustrating factors considered in a state change decision process.

FIG. 23 is a diagram of sensor decision reliability in a case of discriminating between a normal occupant and an RFCS;

FIG. 24a shows a signature trace from an automobile;

FIG. 24b shows the physical layout of the vehicle giving the trace of FIG. 24a;

FIG. 25a shows a signature trace from a truck;

FIG. 25b shows the physical layout of the vehicle giving the trace of FIG. 25a;

FIG. 26 is a table of test data from actual testing of a sensor system of the invention; and

FIGS. 27a and 27b are comparative traces showing sensibility of the discrimination between an RFCS and the same RFCS covered with two blankets.

## SUMMARY

The present invention is directed to an automotive interior occupant sensor system employing sensor-fusion signal processing which combines information provided by two or more sensors, each of which "sees" the world in an unique sense. The multi-sensor fusing process of this invention greatly enhances performance and reliability in much the same way as human ability to visually distinguish and classify objects is greatly enhanced with the addition of sound. While the invention is described in detail with respect to sensing the presence (or absence) of a variety of seat occupants for the purpose of sending a signal to an airbag deployment system thus enabling or disenabling the airbag system to permit or prevent deployment in preselected situations, the "decision" or state signal produced by the sensor system apparatus and sensor signal fusion method of this invention may be applied to also, or alternately, check, affect or trigger other systems, such as automatic safety belts, seat positioning systems, interior climate controls,

6

lighting, dashboard or other signal or warning lights, audio alert or status signals (buzzers, recordings, or synthesized voices), door locks, load adjusting systems, reminder systems crash conditions recording systems, and the like.

In a preferred embodiment, the automobile passenger seat occupancy sensor of the present invention relies on two detectable properties: One such property is the thermal signature and associated motion, and the second is the acoustic distance and the associated acoustic motion. By relying on two distinct sensors in which a plurality of independent features (or characteristics) are extracted and fusing some of these features, the accuracy and reliability of sensing is vastly improved as compared to single sensor or even multiple sensors not employing sensor fusion. For example, in cases where the thermal signature of a rear-facing child seat blends with seat upholstery and provides no motion signal, the distance measurement may be able to detect that something is in the seat with suitable reliability. However, in cases where passengers are holding objects or are much larger than normal, an ultrasonic sensor will provide ambiguous distance measurements which "look" like an RFCS. By the fusion method of this invention, combining features extracted from IR detectors angled and zoned to "look" at different fields and from an ultrasound sensor can ensure proper identification and output of an appropriate decision signal.

In accord with the present invention, measurements of conditions are taken continuously and compared to prior conditions to provide a current state profile. At least initially, the updates are compared to initial conditions obtained at the start-up of the vehicle, and later the comparison is with prior state conditions. If initial conditions indicate a recognized (or "valid") occupant, this condition will tend to prevail throughout operation of the vehicle with the sensor algorithm always erring on the side of safety. If initial conditions indicate an empty seat, a "wake up" mode ensures that passengers changing seats during vehicle operation are detected. A standby mode while ignition is off may be provided in order to draw less power and perform only the minimum required periodic checks and maintenance functions.

Individual sensors will make incorrect decisions by themselves under certain conditions but in unrelated, non-overlapping ways. The fused sensor approach of the present invention covers these failure modes to assure reliable performance by requiring analysis of many different signal features before making a recognition decision. Ordinarily, to compensate for its own area of marginal performance, an individual sensor must become more and more sophisticated, driving up costs. In contrast, the system of the present invention employs fused data from two or more inexpensive sensors, thus achieving the required sophistication level, yet at a significantly reduced cost. Further, in dual sensor operation, self-diagnosis is enhanced by correlating data in one sensor with data from the other.

Although the preferred embodiment of the present invention utilizes passive thermal and active acoustic sensing for their inherent design, simplicity, and safety features, it will be understood that the present invention is not necessarily limited to the use of multiple sensors of the particular type disclosed. While the selected sensors are non-radiative and present no electromagnetic, electro-optic exposure or other exposure hazards to the occupants, it will be understood that other combinations of two or more sensors of different types for occupancy sensing can be readily used to achieve the simplicity and yet high reliability, of the present invention by the sensor fusion method of the present invention. In any

5,482,314

7

case, the sensors disclosed herein do not present any exposure hazards to occupants; for example the ultrasonic unit operates at a frequency well above the hearing range of humans and dogs.

It should be understood that the present invention is not necessarily limited to use in conjunction with an air bag system. It can also be used for security and safety purposes because the combination of two distinct sensor characteristics such as the combination of thermal contrast and motion with acoustic distance and motion as shown herein, prove highly advantageous for its reliability and simplicity in a number of applications outside a vehicle as well as other applications with a vehicle. It may be used as a security system for the premise of a piece of property, both inside of a building as well as outside of the building.

In the preferred embodiment of the invention, infrared sensor inputs and an ultrasonic sensor input are combined in a microprocessor circuit by means of a sensor fusion algorithm to produce an output signal to the air bag controller. The signal results from preselected confidence weighting for the various parameters extracted from the two sensors (called features), and upon a fusion process which ultimately makes a decision which is extremely reliable. An empirical profile, in the form of a lookup table, matrix of values, or empirical relationships, or algorithm is provided for a plurality of known objects (e.g. human occupant, empty seat, rear and forward facing child seat, animal, packages, etc.) either as a generic interior profile or as developed (empirically determined) for a particular interior. During operation the fusion processing compares the signals to a matrix of known condition confidence values to produce a set of confidence weighted values. By way of example, some 14 selected IR features and 13 selected ultrasound features are compared either directly or after fusion to arrive at an overall confidence level that results in triggering the enable/disenable signal (or absence of signal) to the airbag deployment system. The output signals are compatible with AECM interfaces.

The IR sensor unit advantageously includes dual detection elements that look at different areas of the seat, e.g. the seat back and the seat itself. In addition, the "view" of these sensor elements are zoned into vertically oriented parallel zones by means of one or more Fresnel type lenses so that "thermal motion" features can be extracted from the change in thermal signatures from zone to zone.

The occupant sensor algorithm performs the sensor fusion matrix processing and decision making operation on the selected sensor outputs. The fusion matrix has inputs weighted to guarantee reliability in the decision making process. All sensor outputs along with empirical "known" condition data, calibration data, initial conditions and updated historical reference data are considered in the process of making a decision (outputting an enable or disenable signal) whether or not to suppress the deployment of the passenger-side air bag in a collision. By fusing the features and feature vectors to make the decision, each individual parameter has only a partial effect, or "vote", on the ultimate fusion decision. The final decision is based on several conditions or states reinforcing that decision by requiring several independent phenomena or aspects thereof to occur simultaneously.

The fusion process of the invention produces decision with a higher reliability than a single phenomena sensor or non-fused multiple sensors. In addition to performing the multi-sensor fusion decision making, the process requires periodic analysis of the sensor outputs to make certain that all sensors are functioning properly. In addition to normal

8

electrical condition checks, conditions from each sensor output are compared with the output from the other sensor to be sure that all sensors confirm proper operation. In the unlikely scenario where the sensor system fails entirely due to power failure, component failure, or otherwise, the air bag deployment system controller defaults to deployment condition to ensure passenger safety. A diagnostic warning indicator of a failure condition may be provided to the vehicle's indicator panel.

All the sensors of the present invention can be provided in a single unit to maintain low manufacturing cost and simplify the task of assembling the sensor system to a new vehicle or retrofit it to a previously-assembled vehicle. In addition, the aesthetics of the vehicle is maintained by keeping the sensor system unit to a minimal size.

Having two or more sensors in the fusion mode enhances self-diagnostic correlation between the two, for if there is a failure of one but not the other, even in scenarios where no or little signal is expected from the failed sensor, still some of the expected features will be missing and analysis and fusion will identify the failed sensor. For example, if US indicates an occupant, the IR can be polled. If it indicates no occupant, then a potential sensor malfunction is indicated. If there are some features from the IR, say weak signal IR, then the IR may be working but it is not clear what is in the seat until other polled features are analyzed by the fusion process algorithm of the invention.

While a fixed sensor system with angled lenses (for the IR) are shown, a mechanical sweep scan can be employed by mounting one or more sensors on a moving element. Likewise while a fixed US transducer and receiver is shown using pulsing to toggle or poll the sensor, a separate transducer and receiver may be employed. The acoustic signal profile may be shaped to the interior for maximum or narrowly focused coverage in a specific area.

The IR sensor may be an uncooled electric device that responds to IR radiation from the near to far IR (2–12 micrometers wavelength), and the US may be an electrostatic type sensor with a typical frequency range of 40 KHz to 150 KHz. The typical field of view will be approximately 30°×34° for the IR, and 20° to 30° (conical direct or offset) for the US. The US is highly immune to interference because the pulse echo must be received within a preselected time window to be valid. The US beam may be asymmetric for better coverage. A separate IR sensor can be added to the unit oriented to look at the center (middle) passenger location.

Without additional hardware the system of the invention can automatically cycle "on" to measure the interior temperature of the vehicle in which it is installed and send a signal to automatically adjust or cause the cooling fan to operate whenever the interior temperature exceeds a preselected (design selected) maximum value. Additionally, the system can automatically, at "power up", measure the characteristic interior "signature" of the particular vehicle in which it is installed, and by comparing these values to predetermined reference tables imbedded in the ASIC, determine which type of platform it is installed in, e.g., auto or truck. It can then transmit the vehicle identification type to the body controller thus automatically verifying correct and proper functioning at the final installation/assembly point.

The ASIC of this invention permits several additional features to be optionally incorporated into the sensor system of this invention as desired. These include: 1) Center Passenger Occupant Detection (CPOD) employing an additional IR sensor and lens to detect center seat occupancy. 2) Four Quadrant Temperature Control (FQTC). This system

5,482,314

9                                                                                                  10

replaces presently used sun sensor and environmental con-
trol unit. It not only controls the vehicular interior tempera-
ture, but also enables automatic selection and control from
one to four quadrants of directed HVAC (permitting up to
four individual interior temperature settings). 3) Passive
Theft Detergency (PTD). The automatic temperature control
sensors can be used to detect the presence of a person in the
vehicle and through communication with the body controller
can decide if entry was proper or not, i.e. was a key used to
gain entry (proper) or not (improper entry). 4) Near Object
Detection Sensors (NODS). This system utilizes an
extremely low power microwave radar which mounted
behind a plastic cover (taillight or bumper), and tailored to
detect objects within a preselected field-of-view.

The FQTC is similar to the occupant sensor, and uses a
"multi-apertured" lens to facilitate motion detection. Fur-
ther, the sensors are effectively "multiplexed" into the cen-
tral network processor where sample timing, duty cycle, and
sensor select sequence are all programmable.

PTD employs thermistor bolometer (TB) detectors,
instead of pyro-electrics, and is thus capable of sensing both
the motion of a warm object as well as being able to
determine its approximate temperature. This PTD imple-
mentation is electronically configured to provide continuous
or selected intermittent vehicle monitoring. The electronics
(Signal Conditioner, Power Regulator, Motion Sense Logic,
etc.) are configured for extremely low (less than 100 micro-
amps) current drain on the vehicle's battery during security
"system on" status, such as when the vehicle is unattended
with the ignition off. This configuration permits active
temperature monitoring of each zone while the automobile
is in use. Further, when the vehicle is left unattended, the
sensor suite is capable of detecting and reporting unwanted
intrusion associated with vehicular theft or possibly a person
hiding in the rear seat area.

NODS utilizes microwave (impulse) radar rather than the
classical IR and Acoustic sensing, but employs sensor fusion
as disclosed herein. Microwave radar is employed due to its
ability to operate (invisibly) while protected from an exterior
hostile environment by mounting it in a bumper or tail light
assembly location. This system possesses a reliable range
detection of on the order of 15+ feet. The hardware concept
incorporates voltage protection, J1850 Bus interfacing and
one or more ASIC(s) for control and algorithm implemen-
tation in accord with the principles of the invention. The
specific frequency employed is in the range of from about
1.7 to 94 GHz.

The sensor system and methods of the invention key on
the following properties: Thermal signatures or contrasts
coupled with motion to establish the presence of a warm
object; and Acoustic signatures via wave propagation
coupled with motion to establish object status, i.e. the
distance from dashboard or headliner location of occupants,
objects, empty seat, etc. and if animated or stationary.

Both sensor properties are required to meet the reliability
requirements because: 1) The need to inhibit the airbag when
a rear-facing child seat is more reliably accomplished
through dimensional measurements; these are more reliably
derived from the acoustic sensor. 2) Thermal conditions
within a vehicle change dramatically with seasons, weather,
vehicle interior, passenger clothing, and driver use. Using an
IR sensor only may lead to higher rate of falsely-declared
seat status condition and, more importantly, the failure to
detect an occupant present. 3) The self diagnostic capability
of the system requires sensor interaction/confirmation to
enhance it's reliability.

The signal processing employed in the multi-sensor
fusion of this invention is preferably implemented in an
Application Specific Integrated Circuit (ASIC). In addition
to the signal processor ASIC, a micro-controller provides
additional decision making power and system control func-
tions. The ASIC is a mixed signal analog and digital device.
It performs signal conditioning, sensor signal detection,
non-volatile storage, bus interface, status signal interface,
and clock generation functions. The confidence weighting
and fusion matrix parameter processing is conveniently
performed in software running on the micro-controller or
can be implemented using hard-wired logic circuitry. The
software can be implemented by one skilled in the art
following the Figures as described in detail herein.

DETAILED DESCRIPTION OF THE BEST
MODE

The following detailed description illustrates the inven-
tion by way of example, not by way of limitation of the
principles of the invention. This description will clearly
enable one skilled in the art to make and use the invention,
and describes several embodiments, adaptations, variations,
alternatives and uses of the invention, including what we
presently believe is the best mode of carrying out the
invention.

Referring now to the accompanying drawings, FIGS. 1
through 7 illustrate a variety of occupancy scenarios to
which the present invention is generally directed in its
preferred automotive occupancy sensing embodiment. As
shown in FIG. 1, this embodiment of the invention com-
prises a sensor suite 1 mounted in the overhead area above
and slightly to the center of the passenger seat 12 of the
vehicle 14. As described in more detail below, the micro-
processor controller, including an ASIC having the firmware
described herein is conveniently located in the sensor unit
assembly 1 mounted in the headliner 16 or dash 28. The
sensor unit 1 is connected to a conventional airbag controller
2, which in turn activates an airbag 4 in an appropriate
crash-sensed situation. The system is conveniently powered
by the auto battery 6, or alternately by the alternator or a
separate trickle-charged gell cell (not shown).

Various possible scenarios are represented by way of
example in the following figures. FIG. 1 depicts the pas-
senger seat 12 occupied by an average adult person 8, while
FIG. 2 depicts an empty seat. FIG. 3 depicts the presence of
a child 10 in a rear-facing child seat (RFCS) 11 mounted on
the passenger seat 12. The RCFS will have an unusual
thermal pattern as well as distance and vibration signatures
due to the possibility that the child may in part be obscured
by the seat, thus masking natural thermal radiation. FIG. 4
depicts an adult person holding a bag of groceries 18, which
will also have unusual sensor readings. FIG. 5 shows the
presence of a child 10 in a forward-facing child seat (FFCS)
20. Unlike the RFCS, this FFCS scenario will have a more
nearly normal thermal signature for a small child as well as
normal motion and distance readings. FIG. 6 shows the
presence of a pet such as a dog 13. Depending on the size
and activity of the pet, there will be variation in the thermal,
motion, and distance readings and the rate of change thereof.
FIG. 7 depicts an illustrative out-of-position (OOP) passen-
ger scenario, where a child 10 is standing up on the
passenger seat and holding onto or leaning against the dash
board. It could also be a passenger adjusting the radio, or
looking out of the front windshield or with his legs or feet
up on the dash. In this scenario, the sensor system needs to
determine the feasibility of deploying the air bag which

5,482,314

11

depends on the distance of the passenger to the location of the air bag. If the passenger is too close to the air bag location, air bag deployment may not serve any useful purpose, and indeed, might injure the occupant in the process.

It should be noted that in certain scenarios, the location of the sensors unit in the headliner is an advantage. Comparing for example, FIGS. 3 and 7, if the sensors are located at position X and/or Y as compared to the more universal, wide-angled headliner position 16, the RFCS 11 or OOP occupant 15 may obscure or overload one or more of the sensors by coming in contact with the sensor unit face.

The seat may also be occupied by passengers of different size, such as a small child or a larger person. An occupant may be reclined in the passenger seat or sleeping in the passenger seat without giving off much movement, and both cases will have unusual motion, distance, and thermal signature. Referring to FIG. 8, there may be inanimate objects 17 of various size on the seat which may or may not give off thermal and/or motion signatures.

In addition to these scenarios, the weather and shading conditions may affect the interior environment of the vehicle, especially the interior temperature of the vehicle. On a hot summer day, the passenger seat will be extremely hot after the vehicle has been sitting closed in the sun, and this condition can affect sensor readings. In addition, driving along a tree lined highway can lead to thermal flicker, which could mimic a motion signature, due to intermittent shading and exposure of the seat. The present invention is not limited to the detection of the above-discussed scenarios, as others can be detected as well.

Given this wide variety of occupant and external and internal conditions, the present invention must be able to detect, discriminate and make a decision to permit transmission of an air bag enable signal, or generate a disenable signal to the air bag controller to maximize passenger safety in the event of a collision. In the preferred embodiment of the present invention, these scenarios are categorized into one of the following five states: Empty state, Occupant state, Inanimate Object ("IO") state, Rear-Facing Child Seat ("RFCS") state, and Occupant Out-Of-Position ("OOP") state. For the detected Empty state, IO state, RFCS state, and OOP state, an air bag disenable signal will be sent or supplied to the air bag controller. For the Occupant state, an enable air bag signal will be supplied to the air bag controller or, in the event that the default condition of the air bag controller is to signal the air bag to deploy, no interrupt signal will be sent from the sensor unit to the air bag controller (or air bag). Other embodiments may include more or less states with variation in the scenarios.

The Occupant state is the state where air bag deployment will enhance the safety of a passenger in case of an accident. The Occupant state includes the scenarios of an average adult person, a small child, a child in a forward facing child seat, a passenger holding a bag of groceries, a standing child in some positions, and the like. Note that in the standing child scenario, the air bag will be deployed if the child is sufficiently far away from the air bag deployment location to allow an effective and non-injurious deployment of the air bag. The air bag will not be deployed if the child is too close to the air bag deployment location, since deployment of the air bag might injure the child by knocking it back into the seat. The same consideration applies to the OOP state, a passenger positioned too close to an air bag can be sensed to prevent an injuring deployment.

12

Typically, it is desirable to disenable the air bag in the RFCS state, the Empty state, the OOP state, and the IO state, e.g. by sending an interrupt signal or interrupting the deploy signal from the airbag controller. It is especially important in the RFCS scenario that the air bag is not deployed in case of an accident. A deploying air bag striking the back of a rear facing child seat could catapult the child and seat backward, possibly injuring the child in the process. In the case of an Empty state or IO state, deploying the air bag in case of an accident ordinarily does not serve any useful purpose, and only adds to the repair cost of re-installing a new air bag in the vehicle. However, the system of the invention is biased toward deployment to ensure the highest level of safety and reliability.

In the preferred embodiment of the invention, the air bag controller is designed to default to the air bag deployment condition. For the appropriate states, such as the Empty state, the IO state, the RFCS state, and the OOP state, the sensor system sends a disenable or interrupt signal to the air bag controller. The present invention is also adaptable for use with a multi-canister controlled pressure air bag deployment system where the air bag is inflated by a number of canisters to the desired pressure. With this system, instead of sending an "on" or "off" type of signal, a quantitative serial, or multiple parallel type of signal can be transmitted to the air bag controller to indicate the desired pressure, or the number of canisters to release depending on the sensed state.

In order to recognize the various scenarios and conditions, this embodiment utilizes two sensors, an infrared ("IR") sensor and an ultrasound ("US") sensor. The infrared sensor used in this embodiment is a commercially available thermistor type of infrared sensor unit, and there are preferably two or more detector elements contained within the infrared sensor unit to allow sensor detection in or from two different regions. Although pyro-electric and photovoltaic types of infrared sensors may be used as well, the thermistor type of sensor presently provides the best cost/performance ratio. In the presently preferred embodiment, the infrared detectors sense the targeted areas continuously with an interrogation period of between about 2 Hz and 10 Hz.

The ultrasound sensor used in this embodiment is a commercially available ultrasound sensor circuit package where the ultrasound frequency and pulse can be externally controlled. The sensor operates in the ultrasonic range above the bearing range of humans and animals such as dogs, and the typical frequency ranges are from 40 KHz to 150 KHz. Frequency selection is determined by requirements such as acoustic losses, range, power, cost, and transducer size. For example, air attenuation and absorption by seats and clothing are increased with frequency; however, the required sensing range here is short, and as a result, the higher end of the frequency range can be selected. The higher frequency also provides the advantage that a small transducer head (sensing element) can be used. In the presently preferred embodiment, the interrogation period varies between 2 Hz and 20 Hz during actual operation depending on the amount or quality of information needed.

FIGS. 9A–9C are enlarged views of the sensor unit of the present invention shown in place in headliner 16 of FIG. 1. The sensors may be placed separately at different locations, but in the preferred embodiment, as shown in FIG. 9A, the infrared sensor 24 and the ultrasound sensor 26 are placed next to each other in a single unit 22. The infrared sensor preferably has two or more detectors 21a, 21b separated by a vertical baffle 19 and covered by a multi-element Fresnel lens 23. Each detector 21a (D-1) and 21b (D2) view different positions of the seat, 21a looking at seat back area 12b, and

5,482,314

13

21b looking at seat area 12a (see FIG. 10) through, in this example two rows of Fresnel lens elements, Fla and Flb, which form a lens set Ls-1 and Ls-2 respectively. Each row in this example has six individual lens elements 50a, 50b . . . 50n, which look at the corresponding zones 50a, 50b . . . 50n on the seat as seen in FIG. 10. The fields of view of the lens row Fla overlaps the row Flb, but the individual zones 50a in 50n do not overlap. The baffle 19 is generally aimed at the seat belt when worn properly by the passenger, as shown by arrow Q in FIG. 9B.

FIG. 9B is a longitudinal schematic cross section of the IR sensor 24 along line 9B—9B in FIG. 9A showing its orientation with respect to the horizontal in the headliner 16. While the angle θ can be 0° it preferably ranges from about 5°–45° with 10°–30° being preferred. FIG. 9C is a transverse section view of IR 24 taken along line 9C—9C of FIG. 9A. It shows the generally faceted orientation of the zones of Fresnel lens elements 50a . . . 50b. In the alternative, the elements may be stepped with respect to each other.

The Fresnel lens allows the signal strength of a signal source from the middle of the zones to fully pass through. However, as the signal source moves toward the edges of the zones, the Fresnel lens proportionally reduces the strength of the signal passing through.

Although these sensor units can be placed in a number of places in the vehicle, it is preferred to be placed in the headliner 16 above the passenger seat as seen in FIG. 1. The sensor unit can also be placed on the dash board directly in front of the passenger seat or on the passenger side A-pillar. It is anticipated that in the future rear passenger seats may be equipped with air bag protection as well. In this case, a sensor unit placed forward and above the targeted passenger seat in the headliner or in the B pillar can be used to sense rear seat occupancy.

FIG. 10 is a top view of the passenger seat 12 and the sensor unit 1. The passenger seat has a back area 12b and a seat area 12a. Each area (back and seat) is sensed in multiple zones 50a, 50b . . . 50n created by the Fresnel lens elements of the infrared sensor as shown in FIGS. 9A–9C. Note that the infrared sensor uses a Fresnel lens of the type in which each of the infrared detector field of view is divided into, for example, five to eight zones. The infrared detector converts photons (heat) into a change in conductance of the device which results in a sinusoidal wave voltage when an object laterally crosses each zone.

FIG. 11a illustrates a side view of the orientation of the two detectors 21a, 21b (FIG. 9) of the infrared sensor, looking at the passenger seat 12. One detector 21b is oriented to view the seating area 12a while the other detector 21a views the back 12b of the seat. In addition to receiving zoned thermal signature data, each infrared detector senses lateral motion of the occupant or object crossing the zones 50a . . . 50n in its designated area 12a or 12b of the passenger seat. By combining data from the two infrared detectors, "longitudinal" motion of the passenger can be determined as well. By "longitudinal" motion is meant motion by a passenger (e.g. a passenger's hand) that crosses from the area detected by one detector to the area detected by the other detector, and includes both fore/aft or front/back (with respect to the vehicle) motion and vertical or up/down motion, or compound motion having both fore/aft and vertical components. FIG. 11b depicts the area scanned by the ultrasound sensor 26 when aimed at the seat, and portions of the floor and dash 28.

14

Referring now to the hardware aspects, FIG. 12 illustrates a circuit schematic for the preferred embodiment of the present invention. An application specific integrated circuit ("ASIC"), 30, is designed to receive data from the infrared detector assembly 24 (S1) and the ultrasound detector 26 (S2). The ASIC processes the data by controlling a commercially available microprocessor 32, and produces outputs to the Inhibit line at pin 28, the vehicle on-board computer system data bus, J1850, at pin 27, and the Diagnostic line at pin 26. The ASIC controls ultrasound transmission by modulating an "on" or "off" voltage through pin 20 of the ASIC to the transistor, 34. The transistor in turn is turned on for a short time period to allow current to flow through the primary winding of the transformer T1, which creates a current flow through the secondary winding of the transformer. The current flows to the transducer 27, which in turn transmits an ultrasonic pulse. The returning ultrasonic signals are received by the transducer 27 and returned to pin 19 of the ASIC. Infrared signals from the two IR detectors 21a, 21b (FIG. 9) of unit 24 (S1) are received through pins 22 and 21 of the ASIC.

The incoming signals are amplified and filtered via capacitors, C5 and C6. The ASIC embodies an algorithm in its hardware and software in memory to process the signals and uses a commercially available micro-controller, 32, to do the calculations. The resulting output is transmitted via the inhibit line to the air bag controller. The ASIC also provides a diagnostic signal regarding the integrity of the sensor system through pin 26 of the ASIC to the air bag controller (ABC 2 FIG. 1) and the vehicle's indicator panel 28 (FIG. 1). In the event of a system failure, the air bag controller defaults to the air bag enable state. The ASIC may receive inputs from the vehicle's on-board computer system 3 (FIG. 1) through the J1850 data bus, the J1850, regarding the various system conditions and environmental conditions which may allow the sensor system to consider certain environmental factors and vehicle conditions in its overall calculations. The ASIC can also transmit to the vehicle's standard on-board computer its status or output. The ASIC provides an oscillating clock signal to the rest of the board through pin 16.

The ASIC functional description is illustrated in FIG. 13. Although the preferred embodiment is to have one ASIC chip, the described functions may be contained in two or more ASIC chips. The ASIC contains a J1850 Bus Interface 40, Analog Outputs 42, a Non-Volatile RAM 44, a Digital I/O RAM 46, a Clock Generator & Precision Oscillator 48, and a Timing & Control subsystem 49. The Digital I/O RAM 46 provides AGC (automatic gain control) 51 and BIAS to AC Gain 53a, 53b and DC Gain 54a, 54b in the processing of infrared signals, and Ultrasound Control to an Ultrasound Transmit Control 56 in the control of ultrasound through pin 20. The Timing & Control subsystem 49 harmonizes the processing of data among an IR Feature Processor & FIFO 57, a US Feature Processor & FIFO 58, a US Detection 59, a US Xmit Control 56, and the Digital I/O RAM 46.

There are two infrared inputs and they are processed in the same manner. The DC Gain 54a, 54b detects and accumulates infrared signals to allow level detection by the Level Detector 60a, 60b. The fluctuating portion of the infrared signal is sent to the AC Gain 53a, 53b for motion detection and sent to the Motion Detector 61a, 61b. The Level Detector 60 determines the amplitude and sends the information to the IR Feature Processor & FIFO 57. The AC Gain block 53 filters the fluctuating signal with the assistance of a capacitor (C5 or C6) and sends the data to a Motion Detector 61, which sends the processed data to the IR Feature Processor

5,482,314

## 15

& FIFO 57. The IR Feature Processor & FIFO produces IR Features 62.

The ultrasound signal is received through pin 19, amplified and filtered by a Gain & Filter 63, and sent to the US Detector 59. The magnitude 64 and range 65 is extracted from the ultrasound data and sent to the US Feature Processor & FIFO 58, which produces US Features 67. Both the IR Features 62 and US Features 67 are sent to the Feature Combination Processor 66 to produce Fused Features 68.

The IR Features 62, US Features 67, and Fused Features 68 are sent to the Digital I/O Ram block 46 for processing. The Digital I/O Ram 46 accesses a micro-controller through pins 2 through 14 of the ASIC (FIG. 12) to do the necessary calculations to process the data, and it accesses the Non-Volatile Ram 44 for information. The results are sent out via the Bus Interface 40 and the Analog Outputs 42.

In operation, the detection process is generally as follows: Incoming IR and US signals in a given interrogation time-period are analyzed for features (or characteristics) such as motion, frequency of motion, level of motion, temperature level, distance of objects, increasing or decreasing trends, and so on. There is a set of features for the infrared signals and a set of features for the ultrasound signal. Certain features from each set are combined ("fused") to produce a third set of fused features. Each of the three sets, or vectors, are compared to a predetermine matrix of confidence levels and empirical relationships to determine a just-sensed feature state. A feature state is one of the five possible states described above and is the state determined by the sensor system for this interrogation period. The just-sensed feature state is compared to the current state. The current state is one of the five states discussed above, and is what the sensor system indicates is the actual (near present) condition of the passenger seat. If the just-sensed feature state and the current state are different, a set of criteria is used to determine if the feature state should become the current state. The current state determines whether a disenable or interrupt signal should or should not be sent to the air bag controller.

Confidence levels, or the confidence criteria matrix, are determined as follows: Confidence levels are data obtained from analytical and empirical studies of predetermined known possible passenger seat scenarios. Each such scenario is enacted in the passenger seat under a variety of conditions, and features are obtained and analyzed. Some of the features are fused to obtain fused features. Generally, a confidence level is assigned to each feature and state combination. For example, in the presently preferred embodiment, five confidence levels are used for most features. Some of the features are not good indicators of some of the states for certain scenarios so these particular features have reduced or zero confidence levels for those states.

In more detail, from each scenario, there is a set of infrared features and ultrasound features (or appropriate readings from additional sensors, or from other types of sensors, if used). These features from each scenario are compared to features from other scenarios. After examining all of these scenarios and their features, values are assigned to each feature for each state. These values are called confidence levels, and they are assigned according to the feature's strength in indicating the particular state. For example, in the case of a thermal level (quantitative amount) feature from the infrared sensor, five confidence levels from 1 to 5, with 1 being low confidence and 5 being high confidence, may be conveniently assigned this feature's 65 possible values. After examining thermal level features from all the scenarios, the following observations are made: A

## 16

thermal level of 1 (low thermal level) is a strong indicator of both the IO state and Empty state; at the same time it is a medium indicator of both the OOP state and RFCS state, and a weak indicator of the Occupant state. A thermal level of 3 (medium thermal level) would perhaps be a high indicator of the RFCS state and OOP state, a medium indicator of the Occupant state, and a weak indicator of the IO state and Empty state; A thermal level of 5 (high thermal level) would be a high indicator of the Occupant state, a medium indicator of the OOP state and RFCS state, and a weak indicator of the Empty state and the IO state. After examining this feature, confidence levels are assigned according to the strength of the indicators for each of the states. Through this process, all of the features are assigned confidence levels. Note that some of the features may be combined ("fused") to provide additional information about the scenarios and confidence levels are assigned to the fused features as well.

Conceptually, these confidence levels are placed in a two dimensional matrix with rows and columns, the columns being the features or fused features and the rows being the states. This matrix is referred-to as the confidence criteria matrix.

In examining all the features and scenarios, empirical relationships can be deduced between the confidence levels developed from the feature and state combinations, and sets of empirical formulas can be derived to convert the confidence levels to probability levels for each of the states. More specifically, in the empirical studies all the related features are gathered and analyzed for that state. The inter-relationship(s) of the confidence levels for the features are analyzed to determine how they are related in order to produce a high probability value for a particular state. From this examination, the empirical formulas are determined for this state. Then, using this set of empirically-derived formulas in actual (real-time) scenarios, a probability value (or confidence level) is obtained for the state. A set of formulas is derived for each of the states. A confidence criteria matrix and sets of empirical formulas are developed for each model of vehicle because of the variations in the interior area and passenger seat configuration for each of the vehicles.

In FIG. 14, a signal processing functional block diagram for the preferred embodiment of the present invention is illustrated. Infrared raw data from each of the detectors 21a, 21b (FIG. 9) from the Infrared Sensor 24 (IR 1 Raw Data 70 and IR 2 Raw Data 71) are processed through Infrared Feature Processing 74, which produces an Infrared Feature Vector (A') 76. Similarly, Ultrasound Raw Data 75 from the Ultrasound Transducer 26 are processed through Ultrasound Feature Processing 77, which produces an Ultrasound Feature Vector (B') 88. The ultrasound Transducer can also transmit an ultrasonic pulse via the Ultrasound Transmit Pulse Timing & Control 87. A subset of the Infrared Feature Vector (A") 78 and a subset of the Ultrasound Feature Vector (B") 79 are processed through Fused Feature Processing 80, which produces a Fused Feature Vector (C') 81. These three vectors, Infrared Feature Vector, Ultrasound Feature Vector, and Fused Feature Vector are processed by Detection Processing 82, which produces a Feature State (D') 83. The Feature State is processed by Decision Processing 84 with inputs F" from a Diagnostic Controller 86, and the Feature State is evaluated to determine a Current State (E') 85. Depending on the Current State, a signal disenabling the air bag may be sent to the air bag controller as shown. The Diagnostic Controller 86 also indicates via $F^1$ system health of the sensor system e.g. ok or malfunction, and in the latter case the air bag is enabled.

5,482,314

**17**

Sets of features are extracted from the signals for the given interrogation period. In FIG. 15a, the Infrared Feature Processor 74, raw infrared data is digitized by a Digitizer 100 with reference to Gain Calibration Data 101 obtained at the start-up of the vehicle and stored in Memory 102. Gain Calibration Data is used to calibrate sensor readings. From this digitized raw data, the frequency of the lateral motion of object or objects in the passenger seat is extracted and is calculated by a Frequency Processor 104 to obtain an IR 1 Lateral Motion Frequency component 106. From the same digitized raw data, the thermal level of the object at the passenger seat is converted to one of the predetermined levels by a Comparator 108 to obtain an Infrared 1 Thermal Level component 110. The predetermined levels are levels that correspondingly group analog signal values to a set of discrete n-equal levels. This component is compared against previously obtained thermal levels stored in Memory 112 by a Temporal Processor 114 to determine the trend of the thermal level (increasing or decreasing thermal level), and produces an Infrared 1 Thermal Temporal component 116. The digitized raw data is also filtered by a Pre-Filter 118 to enhance motion property of the data, and the data is compared to predetermined levels of motion by using a Comparator 120 and an Infrared Lateral Motion Level component 122 is determined. This component is compared by a Temporal Processor 126 against previously obtained motion levels stored in Memory 124 to determine the trend of the motion level, an Infrared Lateral Motion Temporal component 128.

Raw data from the second detector is processed in the same manner to obtain an IR 2 Lateral Motion Level component 130, an IR 2 Lateral Motion Temporal component 132, an IR 2 Thermal Level component 134, an IR 2 Thermal Temporal component 136, and an IR 2 Lateral Motion Frequency component 138.

The motion levels from the two infrared detectors are correlated by a Motion Correlator 140 to determine a Longitudinal Motion Level component 142, which shows any longitudinal motion of the occupant. The longitudinal information obtained from each detector is contrasted against each other to obtain an Infrared Differential Longitudinal Motion Level component 144, which is significant when there is motion from one detector but not from the other detector. This component is compared by a Temporal Processor 148 against previously obtained components stored in Memory 146 to determine the trend of the motion level or an Infrared Differential Motion Temporal component 150. The frequency of the longitudinal motion of the occupant is calculated by a Frequency Processor 152 to obtain an Infrared Differential Motion Frequency component 154. The Infrared Feature Vector (A') 76 is comprised of the above described infrared components, while only features 106, 110, 128, 154, 132, 134 and 138 are used to form the IR Feature Vector subset A", 78.

Now referring to FIG. 15b, which illustrate the Ultrasound Feature Processor 77, when an ultrasound pulse is transmitted to the targeted area, the ultrasound transducer may receive several ultrasonic returns shortly after the pulse bounces off several objects. These returns are digitized by a Digitizer 160 with reference to Ultrasound Calibration Data 163 obtained at the start-up of the vehicle and stored in Memory 162. Each of these returns will have a point in time when the return first begins, called an edge, which is detected by an Edge Detector 164. And each of the returns will have a point in time when its amplitude is at the highest level (or peak level) and this point in time is detected by a Peak Detector 166. The amplitude is compared to predeter-

**18**

mined levels by a Comparator 168 to obtain return levels. From the edge and peak level time of the returns, Absolute Ranges 170 (or distances) of the objects from the sensor unit are determined. The first return from the transmitted pulse usually indicates the object of interest in the passenger seat area and is the First Return Level component 176. The trend (increasing or decreasing) of the First Return Level component is the First Return Level Rate of Change component 174, which is determined with reference to previous return levels stored in Memory 172. The Absolute Range—First Return component 178 is the absolute distance of the first object from the sensor. The rate of movement of all the returns from one pulse is the Range Motion component 180 found by using a Differentiator 182, and the rate of movement of the Range Motion component is the Range Motion Rate of Change component 184 found by using a Differentiator 186. Range Motion shows the radial component of motion and vibration of an object. The trend of Range Motion, faster or slower over time, is the Range Motion Temporal component 188 determined with reference to previous range motion values stored in Memory 190 and by using a Temporal Processor 192. The frequency of Range Motion is the Range Motion Frequency component 194 determined by a Frequency Processor 196. The relative values between the returns are determined by a Range Correlator 198 to find Relative Range Values components 200, the corresponding levels or the Relative Range Levels components 202, and the trend of Relative Range Levels or the Relative Range Levels Rate of Change component 204, which is determined by a Differentiator 206.

The relative range level components tend to indicate how objects change in relation to each other and may indicate movement of the object in interest. The range motion components indicate whether there is a constant frequency of movement which would tend to indicate an inanimate object, e.g. a vibration or flutter, or if there are random movements which would tend to indicate an occupant.

The Multipath Triangulation component 208 is where the ultrasonic pulse bounces off several objects before it is received by the transducer, and this value is compared by the Range Correlator 210 to the Range Calibration Data 162 obtained at the start-up of the vehicle. This component is helpful in determining whether there is clarity in the scene being scanned. If this component's value is low, it tends to indicate clarity in the scene and a corresponding high confidence in the scan. If this component's value is high, it tends to indicate confusion in the scene and a corresponding low confidence in the scan. The Air Temperature 212 is obtained from the fact that the air is denser at lower temperature than higher temperature, and there is a faster rate of return of the signal at lower temperature because it transmits through denser air. The Ultrasound Feature Vector (B') 88 is comprised of all of the above described ultrasound components, while the ultrasound feature vector subset comprises features 170, 178, 188, 194, 200 and 208 only.

Now, referring to block C in FIG. 16, the Fused Feature Processing 80, a subset of the Infrared Feature Vector (A") 78 comprises the IR 1,2 Differential Motion Frequency component 144, the IR 1 Lateral Motion Frequency component 106, the IR 2 Lateral Motion Frequency component 138, the IR 1 Thermal Level component 110, the IR 2 Thermal Level component 134, the IR 1 Lateral Motion Temporal component 128, and the IR 2 Lateral Motion Temporal component 132. A subset of the Ultrasound Feature Vectors (B") 79 for this embodiment comprise the Absolute Ranges components 170, the Absolute Range—1st Return component 178, the Multipath Triangulation com-

5,482,314

**19**

ponent 208, the Relative Range Values components 200, the Range Motion Temporal component 128, and the Range Motion Frequency component 194. The two subsets are used to extract fused features components for the Fused Feature Vector (C') 81. Infrared Spatial Frequency Components 300 are sets of distance, frequency, and levels of the objects calculated by the Spatial Correlation Processor 302, which determines the distance, frequency of movement, and size of the objects detected by the two sensors. The IR 1 Absolute Surface Temperature component 304, the IR 2 Absolute Surface Temperature component 306, and the IR Differential Absolute Surface Temperature component 308 are, respectively, temperatures and the difference in temperature found by using the Temperature Processor 310. The Infrared/Ultrasound Motion Level Correlation component 312, the Infrared/Ultrasound Motion Level Temporal Correlation component 314, and the Infrared/Ultrasound Frequency Correlation component 316 are levels of movement, the trend of the movement (slower or faster), and the frequency of movement as determined by the Correlation Processor block 318. Note, all components of the Fused Feature Vector (C') 81 are calculated by fusing features from both the infrared and ultrasound sensors.

Now referring to FIG. 17, depicting the Detection Processor 82, each of the vectors is processed by its own respective feature confidence processor and confidence criteria matrix. The feature components are processed individually and some of the feature components are fused for processing. Referring first to Infrared Feature Vector processing, the components, individual or fused, of the Infrared Feature Vector (A') 76 are processed by an Infrared Feature And Infrared Feature Fusion confidence Processor 400. In processing the components, references are made to an Infrared Confidence Criteria Matrix stored in Memory 402, which is modified by previously processed data stored in a History Buffer 404. This process produces an Infrared Feature Detection and Confidence Matrix 406, which is processed by an Infrared 1st Level Fusion Detection Processor 408 to produce an Infrared Detect Decision Confidence Vector 410. The Infrared/Ultrasound Detect Decision Confidence Vector 412 and the Ultrasound Detect Decision Confidence Vector 414 are produced in the same manner with their respective processing blocks, history buffers, and memory.

The Detection Fusion Processor 416, with reference to previously processed data stored in its History Buffer 418 and by using empirical formulas and relationships between and among the three detect decision confidence vectors (described above), produces a Feature State (D') 83. A Feature State is one of the states previously mentioned: Occupant state, Empty state, RFCS state, OOP state, and IO state.

The three vectors, Infrared Feature Vector (A') 76, Ultrasound Feature Vector (B') 88, and Fused Feature Vector (C') 81, are used to produce a Feature State (D') 83 as follows: Using the Infrared Feature Vector as an example, let Infrared Feature Vector={IRF1, IRF2, IRF3, . . . , IRF14}, where each of the IRF#represents a component, and where the Infrared Feature Vector has fourteen vector components (as shown in FIG. 18). In processing the components of the Infrared Feature Vector, the confidence processor (e.g. Infrared Feature and Infrared Feature Fusion Confidence Processor 400) refers to a confidence criteria matrix (e.g. Infrared Confidence Criteria Matrix 402), which is data empirically developed through testing under various conditions and scenarios, as described above. The confidence criteria matrix contains the confidence levels, which may be and are usually

**20**

modified by previously processed data. The confidence levels indicate the likelihood of the states for the given feature component values. For each pertinent feature component or fused feature component, there is a set of confidence levels for each state.

For example, referring now to FIG. 18, for a particular Infrared Feature Vector Component ("IRFi") and states, an IRFi component value of 5 has an associated confidence level of 1.3 for the RFCS state, a confidence level of 1.3 for the OOP state, and confidence level of 0 for other states. For an IRFi value of 9, it has a confidence level of 3.3 for the IO state and 0 for other states. The confidence levels may be modified by previously processed vectors stored in the History Buffer, and may be modified to account for environmental and other changes. For example, should recent history show that the vehicle interior has changing thermal characteristics, e.g. starting the vehicle in cold weather with heater on full blast and later maintaining a consistent and warm temperature, the confidence criteria matrix is adjusted to account for this change. Since there is an overall higher thermal level in the vehicle, a higher thermal level is required to indicate the presence of occupants or their movement. Thus, over time, the confidence level for each of the states may vary. FIG. 19 shows a plot of the confidence level for one state of a particular vector component changing over time.

There are also fused features confidence levels, where two or more vector components can indicate confidence levels for the states. For example, in referring to FIG. 20, an IRF5 value of 1.2 and an IRF1 value of 1.2 would result in a high confidence value for the OOP state and 0 for other states; an IRF5 value of 3 and an IRF1 value of 1 will have a confidence level of 0 for all the states; and an IRF5 value of 2 and an IRF1 value of 3.3 will have a low confidence value for the RFCS state and 0 for other states. For each feature vector, there are a number of these possible fused vector components and their associated confidence levels. The output of the feature and fused feature processing block is a matrix, called the detection and confidence matrix (e.g. Infrared Feature Detection and Confidence Matrix), shown graphically in FIG. 21. Note that a fused vector may fuse two or more feature vector components.

The Infrared Feature Detection and Confidence Matrix 406 (FIG. 17) is input to the Infrared 1st Level Fusion Detection Processor 408. In the previous step, confidence level calculations provide each individual Infrared feature or fused features with its own detection 'decision'. These individual decisions are now factored together by state in empirically derived functional relationships and formulas, as described above, i.e.:

IR confidence (RFCS)=Function of {IRF1(RFCS), IRF2(RFCS), . . . IRFn(RFCS), IRF3,4,5(RFCS), IRF1,10,11 (RFCS), IRF8,12(RFCS), . . . };

IR confidence (Occupied)=Function of {IRF1(Occupied), IRF2 (Occupied), . . . , IRF8,12 (Occupied), . . . };

IR confidence (OOP)=Function of {IRF1(OOP), IRF2 (OOP), . . . , IRF9,11 (OOP), . . . };

IR confidence (IA)=Function of {IRF1(IA), IRF2 (IA), . . . , IRF8,12 (IA), . . . }; and

IR confidence (Empty)=Function of {IRF1(Empty), IRF2 (Empty), . . . , IRF9,11 (Empty), . . . }.

Each of the above functional relationship will produce a value which indicates the confidence level (or probability value) for the associated state. The output of this process is a vector, called detect decision confidence vector (e.g. Infrared Detection Decisions Confidence Vector 410 in FIG.

5,482,314

21

17), where each state has an associated confidence value. An example of the Detect Decision Confidence Vector is: Infrared Detection Decision Confidence Vector ={OOP state: 0.02, Empty state: 0.90, RFCS state: 0.04, IO state: 0.0, Occupant state: 0.20}. In the same fashion, the Ultrasound Detect Decision Confidence Vector 414 is produced from the Ultrasound Feature Vector 88, and the Infrared/Ultrasound Detect Decision Confidence Vector is produced from the Fused Feature Vector 81.

Continuing in reference to FIG. 17, these three independent detect decision confidence vectors, Infrared 410, Infrared/Ultrasound 412, and Ultrasound 414, are inputs to a Detection Fusion Processor 416, which produces a Feature State 83. The manner in which the Feature State decision is arrived at includes weighing functions associated with each confidence vector and weighting of recent decision history stored in a History Buffer 418. For example, in the case of an RFCS, from analytical and empirical studies, we have found that the infrared feature is a "weak" indicator, the ultrasound feature is a "strong" indicator, and the combined infrared/ultrasound fused feature is a "moderately strong" indicator. With these three features, more weight will be applied to an ultrasound declared RFCS state, less weight will be applied to the fused feature declared RFCS state, and even less weight to a infrared declared RFCS state. In this fashion, the three detect decision vectors, the IR Detect Decision Confidence Vector, the US Detect Decision Confidence Vector, The IR/US Detect Decision Confidence Vector, are weighed and combined to produce a single vector with a corresponding confidence value for each of the states. The state with highest confidence value is selected as the feature state.

To summarize Feature state processing, by using the feature vector and the time-adjusted confidence criteria matrix as input, the processor performs essentially a look-up table function for the confidence levels on each vector component or fused vector component for each state. In this manner, decision making is made independently at the infrared, ultrasound, and infrared/ultrasound feature level. Furthermore, in this process, some features do not provide information on some of the states because these features alone are not dependable to make correct decisions for these states. Although some features are not reliable to make correct decisions for some of the states, in combination, these features are reliable to cover all the states, and this is the power behind the use of multiple feature fusion from the different sensors.

Note the above described preferred process involves first extracting features from raw sensory data, then producing fused features, associating confidence levels with the features and fused features to produce confidence levels for the predefined states, and determining a feature state from the confidence levels of the states. This process employs fusion at the feature level and at the detection level; it is not simple error correction routines. Other fusion methods can be employed within the principles of the present invention. An algorithm can also be used under certain circumstances to fuse the raw sensory data before any feature is extracted. An algorithm can be employed to extract features and produce a feature state from all the features extracted. Similarly, an algorithm can be utilized to extract features from each sensor, produce a state for each sensor, and fuse the states to produce a feature state. In other words, fusion of data can be done at the raw data level, feature level, decision level, or combination thereof, and any one of the above algorithm or combination thereof can be used for the present invention. The preferred embodiment utilizes a combination of fusion

22

at the feature level and at the detection level, and the empirical comparison studies demonstrate this preferred combination provides superior accuracy in detection and discrimination for highly reliable decision.

Referring now to Decision Processing 84 (E) in FIGS. 14 and 22, the Decision Confidence Processor 500 compares the Feature State (D') against a Current State 502, State Change Criteria 503 stored in Memory 504, a History Buffer 506, and a System Health Status Buffer 508. The Current State is the state condition as determined by the sensor system, i.e. what the sensor system indicates is the state of the passenger seat, and the corresponding signal to maintain an enable or disenable signal to the air bag controller. If the presently sensed Feature State is the same as the Current State, the Current State is not changed and the History Buffer store the Feature State. If the Feature State is different from the Current State, the Decision Confidence Processor determines whether the Feature State should become the Current State. For the Current State to become the Feature State, it must satisfy the State Change Criteria stored in Memory, which is a set of predetermined criteria to ensure the highest level of safety and reliability in the decision to enable or disenable air bag deployment. The set of predetermined criteria generally requires that more confirmations be made before changing from a deployment state to a non-deployment state, and less confirmations be made in going from a non-deployment state to a deployment state. The Decision Confidence Processor also looks at the history (since start-up of the vehicle) of the Current States stored in the History Buffer and considers what Current State decisions has been made and how often has the Current State been changed. The History Buffer is updated by the Decision Confidence Processor.

In addition, a Diagnostic Controller 510 checks sensor system integrity and updates the System Health Status Buffer. The Diagnostic Controller provides a System Health 512 indicator to the air bag controller and the vehicle's indicator panel. In case of system failure, the air bag controller defaults to the air bag deployment condition, e.g., by not sending an interrupt to the air bag controller. The Decision Confidence Processor checks the System Health Status Buffer and the other system conditions to ensure the sensor system is functioning properly.

As an example of a state change decision process, if the Current State is the Empty state with the corresponding signal to disenable the air bag and the Feature State is the Occupant state, the Decision Confidence Processor will check the System Health Status Buffer to ensure proper system integrity. It will also check the History Buffer to see how many of the previous consecutive periods has the Feature State been the Occupant state or how often has the Current State been changed. The Decision Confidence Processor will change the Current State from Empty state to Occupant state if, during the last two periods, for example, the Feature State has been the Occupant state. On the other hand, if the Current State has been the Occupant state, it will take much more than two periods to change the Current State from the Occupant state to the Empty state. If the current state has been changed quite a few times previously, it will be increasingly more difficult to change the current state from occupant to empty state. This is because the preferred embodiment biases decisions regarding state change toward safety.

FIG. 23 shows, in the case of detecting a front facing occupant and permitting the air bag to deploy, while inhibiting deployment if an RFCS is detected, that the dual sensor system of the invention provides very high functional reli-

5,482,314

## 23

ability. The reliability, R, of 0.98 (98%) or greater is obtained using sensor fusion even where the probability of detection $P_{Ds}$ for Sensor 1 is as low as 0.3 and the probability of false detection, $P_{FM}$, is as high as $10^{-4}$ (R of 0.27), single Sensor 2 has a $P_D$ of 0.99 and $P_{FM}$ is $10^{-6}$.

The AOS of this invention can even recognize the vehicle it is in by measuring the relative position of the module and the interior attributes of the vehicle. FIG. 24a shows actual measurements performed by the above-described AOS system in a Chrysler LH vehicle. The scope trace shows the actual time referenced acoustic returns from the test vehicle, the layout of which is shown in FIG. 24b. FIG. 25a shows actual measurements performed in a 1989 Dodge pickup truck of layout shown in FIG. 25b. Table 1 below shows the actual timing values measured by the AOS system. These results show a signal margin of 1060 μs at the IP measurement mark, 257 μs at the seat position mark and 543 μs at the floor mark. The total time difference is 1860 μs. With a time resolution of better than 20 μs, the AOS has a large signal processing margin when identifying the difference between vehicles such as a Chrysler LH and RAM truck. Comparison of the traces of FIGS. 24a and 25a show the unique signatures of the vehicle interior configurations by which the AOS of this invention can recognize the vehicle, and a normal state thereof.

TABLE 1

|  | LH | TRUCK |
|---|---|---|
| IP Return | 2804 μs | 3864 μs |
| Seat Return | 5297 μs | 5040 μs |
| Floor Return | 6933 μs | 7476 μs |

we have measured several types of significant data to evaluate the potential performance of the AOS. This data shows excellent signal to noise ratios (SNR) and a large design performance margin from the sensor suite. The signal to noise values and resulting predicted performance are summarized in FIG. 26. The Pd numbers in FIG. 26 were calculated using the 4-feature fused probability equation shown below.

$$R_{1,2,3,4} = R_1 + R_2 + R_3 + R_4 - R \cdot (R_2 + R_3 + R_4) - R_2(R_3 + R_4) - R_3 R_4 + R_1(R_2 R_4 + R_3 R_4) + R_2(R_3 R_4 + R_1 R_3) - R_1 R_2 R_3 R_4$$

The individual probability inputs to the equation were derived from actual measurements and worst case analysis.

Testing conducted on typical IR detectors yielded SNR in the range of 12:1 from a normal occupant in an 83° F. vehicle. The ultrasound sensor yields a SNR of 16:1 during the same type of test. By way of comparison, the ultrasound sensor return from a rear facing child seat was measured with the RFCS both uncovered and covered with two wool blankets. The child seat was a Century brand and was placed in a 1993 Eagle Vision. The uncovered child seat gave an SNR of 20:1 while the seat covered under two blankets generated a SNR of 11:1. These signal traces are shown in FIGS. 27a and 27b, respectively. This data indicates that the system of the invention can easily discriminate even between these two subtly different occupant states.

The measurements reflected in FIGS. 22–27 were taken under static conditions in the laboratory. Assuming that under worst case conditions, the signals would be degraded by about a factor of 4, all SNR data was divided by 4. With only small gains in signal processing, the data was increased by a factor of 2. This small signal processing gain does not include using any adaptive thresholding or historical inputs in the detection process which are standard techniques that

## 24

can provide substantially increased signal processing gain. Because this is a worst case analysis, such adaptive and historical gains are not included.

Using the adjusted worst case system performance numbers, detection probabilities for each sensing mode were calculated. The calculation assumptions used here were simple envelope detection using fixed thresholds in a Gaussian noise distribution, whereas the AOS of the invention uses more sophisticated detection processes and has higher individual detection probabilities to ensure adequate Pd under all conditions. The individual sensor mode detection probabilities are shown in FIG. 26, and were used to calculate the fused detection probability shown in the right hand column of FIG. 26. For this analysis a life of 15 million cycles was assumed. The probability of false alarm for this analysis was set at one in a million cycles. The false alarm probability will be reduced to an even smaller number when history and adaptive processing gains are considered. Not including these gains shows worst case system performance.

Diagnostic reliability also benefits from multi-sensor fusion much the same way that detection benefits. As shown in FIG. 26 when each sensor diagnostic probability is fused, the resultant system diagnostic probability is increased. As was done for the detection analysis, the diagnostic probability numbers began as lab measurements that were adjusted downward for worst case conditions., then adjusted for worst case signal processing gain. These individual probabilities were taken from Gaussian noise and a false alarm rate of one in a 100 million cycles.

Both IP (Instrument Panel or Dashboard) and overhead locations were evaluated and tested for operability. High reliability occupant and rear facing child seat detection can be performed from both the IP and the overhead position. Both the IR and the ultrasonic sensor performance has been determined to be location independent.

The overhead sensor position offers system performance advantages over the instrument panel (IP) mounting position. The overhead position is much harder to intentionally block by normal occupant behavior. In the overhead position, the relative geometry of the vehicle is much more easily measured. This feature allows an overhead mounted AOS to measure the relative position of the IP, the seat and the floor, and determine the type of vehicle the AOS has been placed in.

it should be understood that various modifications within the scope of this invention can be made by one of ordinary skill in the art without departing from the spirit thereof. For example, the memory and history buffers can be used to store the state decision for a predetermined period (say 60 to 600 seconds depending on size of memory supplied in the ASIC or microprocessor) prior to a crash in order to determine what the occupants did prior to or during the crash. Was a dog out of position, a passenger make unusual motions indicative of distractions or intrusions, etc? This may be dumped from time to time into a special memory in a crash "black box" along with other vital vehicle operating data, fuel level, speed, acceleration/deceleration, change of direction, braking, lights and/or wipers-on, interior climate and the like. We therefore wish our invention to be defined by the scope of the appended claims as broadly as the prior art will permit, and in view of the specification if need be.

We claim:

1. A method for determining whether or not to de-activate a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known

5,482,314

25

occupancy scenarios and a set of state change criteria, comprising the steps of:

(a) sensing the characteristics of occupancy of a particular passenger seat within the vehicle using a plurality of sensors functionally associated with said passenger seat and developing a set of corresponding electrical signals;

(b) evaluating said electrical signals to determine a plurality of signal features included in each of said signals;

(c) combining certain ones of said signal features to obtain a plurality of fused features;

(d) associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value;

(e) identifying the feature state value as the current state value if the set of state change criteria is met; and

(f) generating a de-activate signal if said current state value is one of a predetermined subset of state values for which said passive restraint system is to be de-activated.

2. A method according to claim 1, wherein said passenger passive restraint system includes an air bag deployment system having an air bag that is located for deployment proximate said passenger seat and that can be de-activated in response to said de-activate signal.

3. A method according to claim 2, wherein said predetermined set of state values includes values corresponding to an empty seat state, an occupied seat state, a rear-facing child seat state, an out-of-position passenger state, and an inanimate object state.

4. A method according to claim 3, wherein:

(a) the occupied seat state corresponds to the scenarios of a person seated in said seat, a person seated in said seat holding a grocery bag, a child in a forward-facing child seat disposed in said seat, a child standing in said seat at a distance from the air bag deployment location, and a pet disposed in said seat;

(b) the rear-facing child seat state corresponds to the scenario of a child in a rear-facing child seat disposed in said seat;

(c) the out-of-position passenger state corresponds to the scenario of a person positioned in close proximity to the air bag deployment location;

(d) the inanimate object state corresponds to the scenario of an inanimate object disposed in said seat; and

(e) the empty seat state corresponds to the scenario of an empty seat.

5. A method according to claim 2, wherein said occupancy scenarios include a person seated in said passenger seat, a person seated in said seat holding a grocery bag, a child in a rear-facing child seat disposed in said seat, a child in a forward-facing child seat disposed in said seat, a child in a forward-facing child seat disposed in said seat, a person positioned in close proximity to the air bag deployment location, a child standing in said seat at a distance from the air bag deployment location, a standing child in close proximity to the air bag deployment location, an empty seat, an inanimate object disposed in said seat, a pet disposed in said seat, and an empty seat.

6. A method according to claim 1, wherein said plurality of sensors is selected from the group consisting of infrared sensors, ultrasound sensors, weight sensors, microwave sensors, light sensors, and laser sensors.

7. A method according to claim 6, wherein said sensing step includes the use of two infrared detectors placed close to each other and separated by a baffle.

26

8. A method according to claim 7, wherein said sensing step further includes using a multi-element Fresnel lens to focus one detector on a seat back of the passenger seat and to focus the other detector on a seat surface of the passenger seat.

9. A method according to claim 1, wherein said signal features include indicia of (a) motion, (b) frequency of motion, (c) levels of motion, (d) difference in motion levels, (e) distance, (f) relative distance, (g) thermal levels, and (h) difference in thermal levels.

10. A method according to claim 9, wherein said indicia of motion include indicia of lateral motion and longitudinal motion.

11. A method according to claim 1, wherein said fused features include indicia of (a) temperature, (b) temperature differences, (c) approximate size of objects, (d) distance, (e) motion, (f) frequency of motion, and (g) levels of motion.

12. A method according to claim 1, wherein said associating step (d) comprises the substeps of:

i) using predetermined confidence values and said signal features and fused features to produce (1) a decision confidence matrix of confidence values for the signal features of the signals of each sensor, and (2) a decision confidence matrix of confidence values for said fused features;

ii) using the empirical relationships to calculate a decision confidence vector corresponding to each of said decision confidence matrices;

iii) weighing each decision confidence vector in a predetermined manner to produce weighted vectors; and

iv) combining the weighted vectors to produce a resultant vector having state values from which the feature state value is selected.

13. A method according to claim 1, wherein said set of state change criteria includes consideration of previous feature state values and previous current state values.

14. A method according to claim 1, wherein the subset of said predetermined set of state values, for which said passive restraint system is to be de-activated, includes state values corresponding to a rear-facing child seat state, an empty seat state, an inanimate object state, and an out-of-position state.

15. A method according to claim 1, wherein said passive restraint system includes a single canister air bag deployment system.

16. A method according to claim 1, wherein said passive restraint system includes a multi-canister air bag deployment system capable of partially pressurizing an air bag to various degrees of pressure.

17. A method according to claim 12, further comprising modifying said confidence values over time to correspond to changes in environmental conditions of the vehicle.

18. A method according to claim 1, wherein said sensing step includes using an ultrasound sensor to transmit ultrasonic pulses and to receive ultrasonic return signals.

19. A method according to claim 18, further comprising varying the transmission times between said ultrasonic pulses.

20. A method as recited in claim 1, wherein said plurality of sensors include:

(a) a first infrared detector for generating a first raw data signal;

(b) a second infrared detector for generating a second raw data signal; and

(c) an ultrasound detector for generating a third raw data signal; and wherein said evaluating step (b) includes:

5,482,314

27

i) processing said first and second raw data signals to develop a first set of signals representing a first group of signal features and defining an infrared feature vector signal;

ii) processing said third raw data signal to develop a second set of signals representing a second group of signal features and defining an ultrasound feature vector signal;

iii) selecting a subset of said first group of signal features to develop a third group of signal features defining an infrared feature vector subset signal; and

iv) selecting a subset of said second group of signal features to develop a fourth group of signal features defining an ultrasound feature vector subset signal.

21. A method as recited in claim 20 wherein said combining step includes processing said infrared feature vector subset signal and said ultrasound feature vector subset signal to develop a fused feature vector signal.

22. A method as recited in claim 21, wherein the processing of said infrared feature vector subset signal and said ultrasound feature vector subset signal includes:

(a) correlating a first subset of said third group of signal features with a first subset of said fourth group of signal features to develop an infrared spatial frequency components signal;

(b) processing a second subset of said third group of signal features with a second subset of said fourth group of signal features to develop an infrared first absolute surface temperature signal, an infrared second absolute surface temperature signal, and an infrared differential absolute surface temperature signal;

(c) processing a third subset of said third group of signal features with a third subset of said fourth group of signal features to develop an infrared/ultrasound motion level correlation signal, an infrared/ultrasound motion level temporal correlation signal, and an infrared/ultrasound motion frequency correlation signal; and

(d) the infrared spatial frequency components signal, the infrared first absolute surface temperature signal, the infrared second absolute surface temperature signal, the infrared differential absolute surface temperature signal, the infrared/ultrasound motion level correlation signal, the infrared/ultrasound motion level temporal correlation signal, and the infrared/ultrasound motion frequency correlation signal are to form said fused feature vector signal.

23. A method as recited in claim 22, wherein the signals representing the first group of said signal features include a first infrared lateral motion frequency signal, a first infrared thermal level signal, a first infrared thermal level temporal signal, a first infrared lateral motion temporal signal, a first infrared lateral motion level signal, an infrared longitudinal motion level signal, an infrared differential motion level signal, an infrared differential motion temporal signal, an infrared differential motion frequency signal, a second infrared lateral motion frequency signal, a second infrared thermal temporal signal, a second infrared thermal level signal, a second infrared lateral motion temporal signal, and a second infrared lateral motion level signal.

24. A method as recited in claim 23, wherein the signals representing the second group of said signal features include an absolute range signal, a first return level rate of change signal, a first return level signal, an absolute range-1st return signal, a range motion signal, a range motion rate of change signal, a range motion temporal signal, a range motion

28

frequency signal, a relative range level rate of change signal, a relative range level signal, a relative range value signal, a multipath triangulation signal, and an air temperature signal.

25. A method as recited in claim 24, wherein the signals representing the third group of said signal features include the first infrared lateral motion frequency signal, the first infrared thermal level signal, the first infrared lateral motion temporal signal, the infrared differential motion frequency signal, the second infrared thermal level signal, the second infrared lateral motion temporal signal, and the infrared differential motion frequency signal.

26. A method as recited in claim 25, wherein the signals representing the fourth group of said signal features include the absolute range signal, the absolute range-1st return signal, the range motion temporal signal, the range motion frequency signal, the relative range value signal, and the multipath triangulation signal.

27. A method as recited in claim 26, wherein the signals representing the first subset of said third group includes the first infrared lateral motion frequency signal, the second infrared lateral motion frequency signal, and the infrared differential motion frequency signal.

28. A method as recited in claim 27, wherein the signals representing second subset of said third group include the first infrared thermal level signal and the second infrared thermal level signal.

29. A method as recited in claim 28, wherein the signals representing the third subset of said third group include the first infrared lateral motion frequency signal, the second infrared lateral motion temporal signal, the first infrared lateral motion temporal signal, and the second infrared lateral motion temporal signal.

30. A method as recited in claim 29, wherein the signals representing the first subset of said fourth group include the absolute range signal, the absolute range-1st return signal, the relative range value signal, and the multipath triangulation signal.

31. A method as recited in claim 30, wherein the signals representing the second subset of said fourth group include the absolute range signal, and the absolute range-1st return signal.

32. A method as recited in claim 31, wherein the signals representing the third subset of said fourth group include the range motion temporal signal and range motion frequency signal.

33. Apparatus for determining whether or not to control a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known occupancy scenarios and a set of state change criteria, comprising:

(a) means for sensing the characteristics of occupancy of a passenger seat within the vehicle using a plurality of sensors functionally associated with said passenger seat and a set of corresponding electrical signals;

(b) means for evaluating said electrical signals to determine a plurality of signal features included in each of said signals;

(c) means for combining certain ones of said signal features to obtain a plurality of fused features;

(d) means for associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value;

(e) means for identifying the feature state value as the current state value if the set of state change criteria is met; and

5,482,314

**29**

(f) means for generating a state of control signal if said current state value is one of a predetermined set of state values for which said passive restraint system is to be controlled, including possible deactivation of said restraint system.

34. Apparatus according to claim 33, wherein said passenger passive restraint system includes an air bag deployment system having an air bag that is poised for deployment proximate said passenger 'seat and that can be de-activated or inflation controlled in response to said state of control signal.

35. Apparatus according to claim 34, wherein said predetermined set of state values includes values corresponding to an empty seat state, an occupied seat state, a rear-facing child seat state, an out-of-position passenger state, and an inanimate object state.

36. Apparatus according to claim 35, wherein:

(a) the occupied seat state corresponds to the scenarios of a person seated in said seat, a person seated in said seat holding a grocery bag, a child in a forward-facing child seat disposed in said seat, a child standing in said seat at a distance from the air bag deployment location, and a pet disposed in said seat;

(b) the rear-facing child seat state corresponds to the scenario of a child in a rear-facing child seat disposed in said seat;

(c) the out-of-position passenger state corresponds to the scenario of a person positioned in close proximity to the air bag deployment location;

(d) the inanimate object state corresponds to the scenario of an inanimate object disposed in said seat; and

(e) the empty seat state corresponds to the scenario of an empty seat.

37. Apparatus according to claim 34, wherein said occupancy scenarios include a person seated in said passenger seat, a person seated in said seat holding a grocery bag, a child in a rear-facing child seat disposed in said seat, a child in a forward-facing child seat disposed in said seat, a person positioned in close proximity to the air bag deployment location, a child standing in said seat at a distance from the air bag deployment location, a standing child in close proximity to the air bag deployment location, an empty seat, an inanimate object disposed in said seat, a pet disposed in said seat, and an empty seat.

38. Apparatus according to claim 33, wherein said plurality of sensors is selected from the group consisting of infrared sensors, ultrasound sensors, weight sensors, microwave sensors, light sensors, and laser sensors.

39. Apparatus according to claim 38, wherein said means for sensing includes two infrared detectors placed close to each other and separated by a baffle.

40. Apparatus according to claim 39, wherein said means for sensing further includes a multi-element Fresnel lens for focusing one detector on the seat back of the passenger seat and for focusing the other detector on the seat surface of the passenger seat.

41. Apparatus according to claim 33, wherein said signal features include indicia of (a) motion, (b) frequency of motion, (c) levels of motion, (d) difference in motion levels, (e) distance, (f) relative distance, (g) thermal levels, and (h) difference in thermal levels.

42. Apparatus according to claim 41, wherein said indicia of motion include indicia of lateral motion and longitudinal motion.

43. Apparatus according to claim 33, wherein said fused features include indicia of (a) temperature, (b) temperature differences, (c) approximate size of objects, (d) distance, (e)

**30**

motion, (f) frequency of motion, and (g) levels of motion.

44. Apparatus according to claim 33, wherein said means for associating comprises:

i) means for using predetermined confidence values and said signal features and fused features to produce (1) a decision confidence matrix of confidence values for the signal features of the signals of each sensor, and 2 a decision confidence matrix of confidence values for said fused features;

ii) means for using the empirical relationships to calculate a decision confidence vector corresponding to each of said decision confidence matrices;

iii) means for weighing each decision confidence vector in a predetermined manner to produce weighted vectors; and

iv) means for combining the weighted vectors to produce a resultant vector having state values from which the feature state value is selected.

45. Apparatus according to claim 33, wherein said set of state change criteria includes consideration of previous feature state values and previous current state values.

46. Apparatus according to claim 33, wherein the subset of said predetermined set of state values, for which said passive restraint system is to be de-activated, includes state values corresponding to a rear-facing child seat state, an empty seat state, an inanimate object state, and an out-of-position state.

47. Apparatus according to claim 33, wherein said passive restraint system includes a single canister air bag deployment system.

48. Apparatus according to claim 33, wherein said passive restraint system includes a multi-canister air bag deployment system capable of partially pressurizing an air bag to various degrees of pressure.

49. Apparatus according to claim 33, further comprising means for modifying said confidence values over time to correspond to changes in environmental conditions of the vehicle.

50. Apparatus according to claim 33, wherein said means for sensing includes an ultrasound sensor for transmitting ultrasonic pulses and for receiving ultrasonic return signals.

51. Apparatus according to claim 50, further comprising means for varying the transmission times between said ultrasonic pulses.

52. Apparatus as recited in claim 33, wherein said plurality of sensors of element (a) include:

i) a first infrared detector for generating a first raw data signal;

ii) a second infrared detector for generating a second raw data signal; and

iii) at least one ultrasound detector for generating at least one third raw data signal; and wherein said means for evaluating (b) includes:

i) means for processing said first and second raw data signals and for developing a first set of signals representing a first group of signal features and defining an infrared feature vector signal;

ii) means for processing said third raw data signal and for developing a second set of signals representing a second group of signal features and defining at least one ultrasound feature vector signal;

iii) means for selecting a subset of said first group of signal features to develop a third group of signal features defining an infrared feature vector subset signal; and

iv) means for selecting a subset of said second group of signal features to develop a fourth group of signal features defining at least one ultrasound feature

5,482,314

31

vector subset signal.

53. Apparatus as recited in claim 52 wherein said means for combining includes means for processing said infrared feature vector subset signal and said ultrasound feature vector subset signal to develop a fused feature vector signal.

54. Apparatus as recited in claim 53, wherein said means for processing said infrared feature vector subset signal and said ultrasound feature vector subset signal includes

(a) means for correlating a first subset of said third group of signal features with a first subset of said fourth group of signal features and for developing an infrared spatial frequency components signal;

(b) means for processing a second subset of said third group of signal features with a second subset of said fourth group of signal features and for developing an infrared first absolute surface temperature signal, an infrared second absolute surface temperature signal, and an infrared differential absolute surface temperature signal;

(c) means for processing a third subset of said third group of signal features with a third subset of said fourth group of signal features and for developing at least one infrared/ultrasound motion level correlation signal, an infrared/ultrasound motion level temporal correlation signal, and an infrared/ultrasound motion frequency correlation signal; and

(d) the infrared spatial frequency components signal, the infrared first absolute surface temperature signal, the infrared second absolute surface temperature signal, the infrared differential absolute surface temperature signal, the infrared/ultrasound motion level correlation signal, the infrared/ultrasound motion level temporal correlation signal, and the infrared/ultrasound motion frequency correlation signal are combined to form said fused feature vector signal.

55. Apparatus as recited in claim 54, wherein the signals representing the first group of said signal features include a first infrared lateral motion frequency signal, a first infrared thermal temporal signal, a first infrared thermal level signal, a first infrared lateral motion temporal signal, a first infrared lateral motion level signal, an infrared longitudinal motion level signal, an infrared differential motion level signal, an infrared differential motion temporal signal, an infrared differential motion frequency signal, a second infrared lateral motion frequency signal, a second infrared thermal temporal signal, a second infrared thermal level signal, a second infrared lateral motion temporal signal, and a second infrared lateral motion level signal.

56. Apparatus as recited in claim 55, wherein the signals representing the second group of said signal features include an absolute range signal, a first return level rate of change signal, a first return level signal, an absolute range-1st return signal, a range motion signal, a range motion rate of change signal, a range motion temporal signal, a range motion frequency signal, a relative range level rate of change signal, a relative range level signal, a relative range value signal, a multipath triangulation signal, and an air temperature signal.

57. Apparatus as recited in claim 56, wherein the signals representing the third group of said signal features include the first infrared lateral motion frequency signal, the first infrared thermal level signal, the first infrared lateral motion temporal signal, the infrared differential motion frequency signal, the second infrared lateral motion frequency signal, the second infrared thermal level signal, the second infrared

32

lateral motion temporal signal, and the infrared differential motion frequency signal.

58. Apparatus as recited in claim 57, wherein the signals representing the fourth group of said signal features include at least one of: the absolute range signal, the absolute range-1st return signal, the range motion temporal signal, the range motion frequency signal, the relative range value signal, and the multipath triangulation signal.

59. Apparatus as recited in claim 58, wherein the signals representing the first subset of said third group includes the first infrared lateral motion frequency signal, the second infrared lateral motion frequency signal, and the infrared differential motion frequency signal.

60. Apparatus as recited in claim 59, wherein the signals representing second subset of said third group include the first infrared thermal level signal and the second infrared thermal level signal.

61. Apparatus as recited in claim 60, wherein the signals representing the third subset of said third group include the first infrared lateral motion frequency signal, the second infrared lateral motion frequency signal, the first infrared lateral motion temporal signal, and the second infrared lateral motion temporal signal.

62. Apparatus as recited in claim 61, wherein the signals representing the first subset of said fourth group include the absolute range signal, the absolute range-1st return signal, the relative range value signal, and the multipath triangulation signal.

63. Apparatus as recited in claim 62, wherein the signals representing the second subset of said fourth group include the absolute range signal, and the absolute range-1st return signal.

64. Apparatus as recited in claim 63, wherein the signals representing the third subset of said fourth group include the range motion temporal signal and range motion frequency signal.

65. An application specific integrated circuit device for processing sensory input signals received from sensors adapted to sense the characteristics of occupancy of a particular passenger seat within a vehicle, and for determining whether or not to de-activate a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known occupancy scenarios and a set of state change criteria, comprising in one or more chips:

(a) means for evaluating said input signals to determine a plurality of signal features;

(b) means for combining certain ones of said signal features to obtain a plurality of fused features;

(c) means for associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value;

(d) means for identifying the feature state value as the current state value if the set of state change criteria is met; and

(e) means for generating a de-activate signal if said current state value is one of a predetermined set of state values for which said passive restraint system is to be de-activated.

*  *  *  *  *

## EXHIBIT B

**Patent US-6,272,411**

US005482314A

# United States Patent [19]

## Corrado et al.

[11] Patent Number: **5,482,314**

[45] Date of Patent: **Jan. 9, 1996**

[54] **AUTOMOTIVE OCCUPANT SENSOR SYSTEM AND METHOD OF OPERATION BY SENSOR FUSION**

[75] Inventors: **Anthony P. Corrado**, Upland; **Stephen W. Decker**, La Cresenta; **Paul K. Benbow**, Upland, all of Calif.

[73] Assignee: **Aerojet General Corporation**, Fairlawn, Ohio

[21] Appl. No.: **227,531**

[22] Filed: **Apr. 12, 1994**

[51] Int. Cl.⁶ .................................................. **B60R 21/32**

[52] U.S. Cl. .................... **280/735**; 364/424.05; 307/10.1

[58] Field of Search .......................... 280/735, 734, 280/728 R, 730 R, 731, 732, 728.1, 730.1; 180/272; 307/10.1; 364/424.05; 340/565

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,166,580 | 7/1939 | Caldwell | 188/110 |
| 3,512,155 | 5/1970 | Bloice | 343/3 |
| 3,672,699 | 6/1972 | De Windt | |
| 3,748,639 | 7/1973 | Dobedoe et al. | 340/52 B |
| 3,767,002 | 10/1973 | Gillund | 180/102 |
| 3,774,151 | 11/1973 | Lewis et al. | 180/91 |
| 3,860,904 | 1/1975 | Andersen | 340/52 B |
| 3,898,472 | 8/1975 | Long | 180/82 C |
| 3,935,470 | 1/1976 | Cake | 307/105 B |
| 3,981,518 | 9/1976 | Pulling | 280/730 |
| 4,166,641 | 9/1979 | Okada et al. | 280/735 |
| 4,418,335 | 11/1983 | Genahr | 340/565 |
| 4,476,461 | 10/1984 | Carubia | 340/667 |
| 4,625,329 | 11/1986 | Ishikawa et al. | 382/1 |
| 4,740,701 | 4/1988 | Wuthrich et al. | 250/342 |
| 4,790,190 | 12/1988 | Bambara et al. | 73/660 |
| 4,795,905 | 1/1989 | Zierhut | 250/338.1 |

(List continued on next page.)

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 2134590 | 1/1972 | Germany . |
| 2516185 | 10/1975 | Germany . |
| 3635644 | 4/1987 | Germany . |
| 3802159 | 8/1989 | Germany . |
| 3805887 | 9/1989 | Germany . |
| 3809074 | 10/1989 | Germany . |
| 4023109 | 1/1992 | Germany . ................ 280/734 |
| 4137719 | 9/1992 | Germany . |
| 2243533 | 4/1991 | United Kingdom . |

### OTHER PUBLICATIONS

Shannon, C. E., A Mathematical Theory of Communication, Key Papers in the Development of Information Theory, Slepian, Ed., IEEE Press 1973, pp. 19–29, reprinted with permission from Bell Syst. Tech. J., pp. 623–656, Oct. 1948.

(List continued on next page.)

*Primary Examiner*—Margaret A. Focarino
*Assistant Examiner*—Peter C. English
*Attorney, Agent, or Firm*—Jacques M. Dulin

[57] **ABSTRACT**

A system for sensing the presence, position and type of an occupant in a passenger seat of a vehicle, as well as for sensing the presence of a rear-facing child seat therein, for use in enabling or disabling a related airbag activator. The sensor system employs sensor-fusion, a process of combining information provided by two or more sensors, each of which "sees" the world in a unique sense. In a preferred embodiment, occupancy sensor samples two detectable properties, a first being a thermal signature and associated motion, and a second is acoustically measured distance and the associated motion. Infrared sensor inputs and an ultrasonic sensor input are combined in a microprocessor circuit by means of a sensor fusion algorithm to produce an output signal to the air bag controller. The output signal results from preselected confidence weighing for feature parameters generated by the two sensors and upon a fusion process which ultimately makes a decision which is extremely reliable. The sensor fusion matrix processes the sensor outputs in a decision making operation which includes weighing inputs to guarantee reliability. All sensor outputs, along with calibration data, initial conditions and historical reference data are considered in the process of making a decision of whether or not to deploy the passenger-side air bag in a collision.

**65 Claims, 17 Drawing Sheets**



SIGNAL PROCESSOR FUNCTIONAL BLOCK DIAGRAM

**5,482,314**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,796,013 | 1/1989 | Yasuda et al. | 340/562 |
| 4,804,859 | 2/1989 | Swart | 307/105 |
| 4,845,377 | 7/1989 | Swart | 307/10.1 |
| 4,849,635 | 7/1989 | Sugimoto | 250/342 |
| 4,886,295 | 12/1989 | Browne | 280/777 |
| 4,948,976 | 8/1990 | Baliga | 250/370.06 |
| 4,951,963 | 8/1990 | Behr et al. | 280/753 |
| 4,973,843 | 11/1990 | Murata et al. | 250/338.3 |
| 4,985,835 | 1/1991 | Sterler et al. | 364/424.05 |
| 5,005,147 | 4/1991 | Krishen et al. | 364/578 |
| 5,071,160 | 12/1991 | White et al. | 280/735 |
| 5,073,860 | 12/1991 | Blackburn et al. | 364/424.05 |
| 5,074,583 | 12/1991 | Fujita et al. | 280/735 |
| 5,118,134 | 6/1992 | Mattes et al. | 280/735 |
| 5,161,820 | 11/1992 | Vollmer | 280/730 |
| 5,172,790 | 12/1992 | Ishikawa et al. | 180/268 |
| 5,184,844 | 2/1993 | Goor | 280/733 |
| 5,218,645 | 6/1993 | Mathur | 358/213.27 |
| 5,232,243 | 8/1993 | Blackburn et al. | 280/732 |
| 5,287,110 | 2/1994 | Tran | 342/13 |
| 5,293,455 | 3/1994 | Castelaz | 395/24 |
| 5,307,289 | 4/1994 | Harris | 364/516 |
| 5,324,071 | 6/1994 | Gotomyo et al. | 280/730.1 |
| 5,330,226 | 7/1994 | Gentry et al. | 280/735 |
| 5,341,459 | 8/1994 | Backes | 395/95 |
| 5,398,185 | 3/1995 | Omura | 280/735 |
| 5,413,378 | 5/1995 | Steffens, Jr. et al. | 280/735 |

## OTHER PUBLICATIONS

Gioutsos, T., A Predictive Based Algorithm for Actuation of an Airbag, SAE Technical Paper Series 920479, Reprinted from Sensors and Actuators 1992 (SP–903), International Congress & Exposition, Detroit, Michigan, Feb. 24–28, 1992, SAE International, Warrendale, Pa., pp. 61–66.

Gillis, E. and Gioutsos, T., The Use of Signal Processing Techniques in an Occupant Detection System, SAE Technical Paper Series 940906, Reprinted from Safety Technology (SP–1041), International Congress & Exposition, Detroit, Michigan, Feb. 28–Mar. 3, 1994, SAE International, Warrendale, Pa., pp. 65–70.

Gillis, E. and Gioutsos, T., Occupant Position Sensing Systems: Functional Requirements and Technical Means, SAE Technical paper Series 932915, Worldwide Passenger Car Conference and Exposition, Dearborn, Michigan, Oct. 25–27, 1993, SAE International, Warrendale, Pa., pp. 1–5.

Fukinaga, K., and Mantock, J. M., Nonparametric Discriminant Analysis, IEEE Transactions vol. PAMI–5, No. 6 Nov. 1983 pp. 671–678.

16–Step Range–Finder IC H2476–01, Hamatsu Technical Data, Jan. 1990–Aug. 1988; 3 pages.

PIR 180–100 Pyroelectric IR Detector, Penwalt Kynar Piezo Film Sensor Division, Valley Forge, Pa.; 2 pages.

Database Search Report for Patents on Sensor Fusion, Mar. 2, 1995, Dialog Information Services, 4 pages.

Northrop's BAT Passes Design Review, Flight International Magazine, Jul. 1, 1993, p. 13.

Database Search Report, ("BAT Warhead Passes Tests"), Dialog database version of of article in Flight International Magazine, Jul. 7, 1992, p. 13, Dialog Information Services, 1 page.

JSOW: (AF, 7 Jan. '94), 3. BAT Footprint, (AF 14 Jan. '95) 4. BAT Sensor, Air Force, a journal published by the United States Air Force.

BAT Brilliant Anti–Armor Submunition, a View Graph Summary from the U.S. Army Missile Command, Huntsville, Ala., 24 Mar. 1993.

Database Search Report for Sensor Fusion (Technical Papers and Reports), Mar. 2, 1995, Dialog Information Services, 24 pages.

Database Search Report for DTIC Sensor Fusion, Mar. 2, 1995, Dialog Information Services, 46 pages.

Database Search Report for Sensor Fusion and BAT (Marketing), Mar. 2, 1995, Dialog Information Services, 15 pages.

**U.S. Patent**          Jan. 9, 1996      Sheet 1 of 17          5,482,314



Fig_1

Fig_2

Fig_3

Fig_4

**U.S. Patent**          Jan. 9, 1996          Sheet 2 of 17          5,482,314



Fig. 5

Fig. 6

Fig. 7

Fig. 8



↑REAR OF VEHICLE



Fig. 9A

↓FRONT OF VEHICLE



Fig. 9B



Fig. 9C

**U.S. Patent**        Jan. 9, 1996        Sheet 4 of 17        5,482,314



*Fig._10*

*Fig._11a*

*Fig._11b*



Fig. 12



Fig. 13

ASIC FUNCTIONAL DESCRIPTION



**Fig. 14**    SIGNAL PROCESSOR FUNCTIONAL BLOCK DIAGRAM



Fig_15a



Fig.-15b



Figure 16



Figure 17



*Fig. 18*



*Fig. 19*

PROGRESSION OF CONFIDENCE LEVEL
OVER TIME FOR ONE STATE OF A
VECTOR COMPONENT

U.S. Patent        Jan. 9, 1996        Sheet 13 of 17        5,482,314



*Fig_20*        CONFIDENCE LEVELS FOR FEATURE
VECTOR COMPONENTS



*Fig_21*



# Figure 22



$P_D = .3$ $P_{FA} = 10^{-1}$

DETECT REAR FACING CHILD SEAT

SENSOR 1   R = .27

SENSOR 2   R = .98

$P_D = .99$ $P_{FA} = 10^{-6}$

R = .98

$P_D = .90$ $P_{FA} = 10^{-3}$

DETECT OCCUPANT

SENSOR 1   R = .89

SENSOR 2   R = .89

$P_D = .90$ $P_{FA} = 10^{-3}$

R = .988

LEGEND:

$P_D$ = PROBABILITY OF CORRECT DETECTION
$P_{FA}$ = PROBABILITY OF AN INCORRECT DETECTION (FALSE ALARM)
R = RELIABILITY, 1.00 = 100%

*Fig. 23*

| AOS Detection | Range | Range | R | R | Detection |
|---|---|---|---|---|---|
| Condition | Motion | Abs | Motion | Abs | Pd |
|  |  |  |  |  |  |
| RFCS | 0.9959 | 0.9959 | 0.3760 | 0.2747 | 0.999992 |
| Occupant | 0.9163 | 0.9519 | 0.9959 | 0.7026 | 0.999995 |
| Empty Seat | 0.9163 | 0.9519 | 0.9959 | 0.7924 | 0.999997 |
| RFCS under |  |  |  |  |  |
| 2 Thick Blankets | 0.9591 | 0.9742 | 0.1892 | 0.2747 | 0.999379 |
|  |  |  |  |  |  |
| AOS Diagnostic | R | US | ASIC | Circuit | Diagnostic |
| Condition | Sensor | Sensor | Circuits | Controller | Pd |
|  |  |  |  |  |  |
| Blockage | 0.9742 | 0.9959 | 0.0000 | 0.0000 | 0.999894 |
| Part Failure | 0.9591 | 0.9591 | 0.9742 | 0.9742 | 0.999999 |
| Out of Spec Part | 0.9163 | 0.9163 | 0.9591 | 0.9519 | 0.999986 |
|  |  |  |  |  |  |

**Fig. 26**



Fig_24a

Fig_24b

Fig.25a

**U.S. Patent**        Jan. 9, 1996        Sheet 17 of 17        **5,482,314**



*Fig. 25b*



| VEHICLE: | 93 LH | VEHICLE: | 93 LH |
|---|---|---|---|
| SENSOR: | P-1 OVERHEAD | SENSOR: | P-1 OVERHEAD MOUNT |
| STATUS: | RFCS | STATUS: | RFCS UNDER 2 BLANKETS |

| AIR TEMPERATURE: | 22.6°C | AIR TEMPERATURE: | 22.6°C |
|---|---|---|---|
| SURFACE TEMPERATURE: | 25°C | SURFACE TEMPERATURE: | 25°C |

*Fig. 27a*                    *Fig. 27b*

5,482,314

# 1

## AUTOMOTIVE OCCUPANT SENSOR SYSTEM AND METHOD OF OPERATION BY SENSOR FUSION

### SPECIFICATION

### 1. Field

The present invention relates to sensor systems and methods of operation for use in automotive interiors to sense the presence, position and type of object in a seat and provide a condition signal for use with other automotive systems, and more particularly in conjunction with air bag activation or other type of safety restraint system for protection of passengers in the event of a collision. One embodiment of the present invention is directed to a multi-sensor occupant detection system for use in conjunction with air bag activation for determining by sensor fusion the presence or absence of a human or animal occupant, the presence and orientation of child seat (front or rear-facing), an out-of-position occupant or other types of occupancy to signal the appropriateness to deploy (or not) the air bag, thereby increasing the reliability and safety of an air bag activation system.

### 2. Background

Virtually all modern vehicles, autos, vans and trucks, on the American road now have air bag deployment systems. An increasing fraction of the air bag deployment systems currently available includes a passenger-side air bag as well as a driver-side air bag.

However, a passenger-side air bag deployment system presents problems in regard to criteria for deployment. That is, it is not simply an issue of always deploying a passenger air bag, as injury to occupants passengers can occur by deployment in certain situations. For example, the airbag should deploy only if a passenger is in fact occupying the passenger seat, and should not deploy when the seat is empty. However, even more importantly is the problem of deploying a passenger side air bag when there is present in the passenger seat a rear-facing child seat (RFCS), because the deployment of an air bag against the back portion of an RFCS occupied by a child can cause serious injury to the child by catapulting the child into the back of the car seat, thus defeating the safety advantages of both the air bag and the RFCS during a collision.

Accordingly, it is very important to provide a means for determining when the passenger seat is occupied and when it is not occupied. It is even more important to determine when the passenger seat is occupied by a child in a RFCS so that such information can be used to prevent deployment of the airbag when the child seat is present in that orientation. Of course, any means for determining the status of an occupant in the passenger seat, including the presence and orientation of a child seat, must be highly reliable in order to signal deployment of the air bag when the passenger seat is occupied by a passenger and prevent deployment of the air bag when the passenger seat is occupied by a child in a RFCS.

However, it is no easy task to provide a sensor system, meaning sensor units and methods of operation and signal processing, to reliably detect change of state from an empty to an occupied seat and determine the nature, position (location) and/or orientation of a passenger in the vehicle. By way of example, if a thermal sensor is used, its reliability may be reduced by thermal conditions within the vehicle which can change dramatically with the seasons, weather, vehicle interior configuration, rapidly changing exterior

# 2

shading, passenger clothing and/or size and driver's choice of interior climate, smoking, etc. Thus, a thermal sensor acting alone can lead to falsely declared occupant presence, and more importantly, failure to detect the presence of an occupant. Furthermore, there may be cases where the thermal signature of a rear-facing child seat blends so well with the seat upholstery that a thermal sensor does not see it, allowing the airbag system to deploy despite the presence of a child-occupied RFCS.

Conversely, if one were to use instead distance measurements, such as by the use of acoustic sensors, such sensor must be capable of distinguishing between the presence of an RFCS and the presence of a passenger holding an object which can result in distance measurements which mimic the presence of a rear-facing child seat.

There are other scenarios as well that require a sensor system to recognize and take appropriate action, such as a forward-facing child seat, inanimate objects, a passenger holding an inanimate object, an out-of-position passenger, and so on.

In addition to these basic sensor requirements, the system for determining the presence of a passenger in the passenger seat and the presence or absence of a rear-facing child seat, must be cost effective and must be in a sufficiently small package to prevent interference with normal vehicle operation. Such systems must be compatible with the aesthetics of the vehicle so as not to affect a vehicle's salability particularly as it relates to new passenger cars. Furthermore, the cost of installing such system in the vehicle must remain simple to keep manufacturing cost low. Preferably, all the sensors should be kept in a single unit to ease the assembly of the vehicle in production or retrofitting older vehicles.

There is no currently available sensor system known to the Applicants which can reliably distinguish the presence and absence of a passenger in the passenger seat as well as the presence or absence of a rear-facing child seat in the passenger seat.

There is also no currently available sensor system that can account for a wide variety of possible variations in both thermal and distance parameters that are encountered in the actual wide range of circumstances of occupancy, nor one that is sufficiently versatile to be adaptable to the wide range of vehicle interior configurations.

An example of a system for actuating a driver airbag restraint is shown in White et al U.S. Pat. No. 5,071,160 (Automotive Systems Laboratory) which employs an ultrasonic acoustic sensor for sensing the position of the driver, a "pyrotechnic" sensor for sensing the presence of the driver, and a pressure transducer within the seat to sense the approximate weight of the driver and an airbag control module to trigger deployment of the airbag. As best understood, when an impending crash is sensed by a crash sensor, a control module samples the sensed position of the passenger at fixed time intervals to calculate the rate of movement of the passenger relative to the various fixed motion structures of the vehicle. This rate of relative passenger movement is used to corroborate the acceleration data from the crash sensor and ensure deployment of the airbag where the passenger is at substantial risk of injury. That is, the interior passenger acceleration is apparently used to prevent false crash signals from the crash sensor. Early crash sensors may trigger airbag deployment during a minor bump in close slow moving traffic or during parking. This " is-the-passenger-being-accelerated-at-the-same-time" system is directed to correcting false signals from the crash sensor.

5,482,314

**3**

The patent describes the desired results but does not detail the process or circuitry to achieve these results beyond stating that the airbag control circuit uses error correction methods such as a plurality of each type of sensors (crash sensor, pyrotechnic, ultrasonic, acoustic, and pressure transducer) for each assigned monitoring task to prevent falsing. Accordingly, the control circuit is said to employ redundant sensors for each monitoring task and the instructions executed by the control module are said to include error correction subroutines known to one skilled in the art. A dashboard signal lamp can be lit when the airbag effectiveness is too low, or the likelihood of passenger injury by the airbag is greater than the injury if he hit the steering wheel, dash or knee bolster, the latter being consistent with the slow bump situation described above.

Accordingly, there is a need in the art for a reliable occupant sensor system for use in conjunction with vehicle air bag deployment systems. There is also a need for a sensor system that can meet the aforementioned requirements for reliability in detecting the presence or absence of a passenger or RFCS in a wide range of circumstances, irrespective of whether a passenger is holding an object and irrespective of the thermal conditions that may be found in the vehicle. Such a sensor system must also be a cost effective component of the vehicle that does not detract from the aesthetics of the vehicle interior or unduly increase the cost of manufacturing or assembling a vehicle.

### THE INVENTION

### OBJECTS

It is an object of the present invention to provide an automotive occupancy sensor system to reliably detect the presence or absence of a passenger in the passenger seat and the presence or absence of a rear-facing child seat in the passenger seat and to provide a signal to the airbag system to either inhibit or permit the deployment of a passenger side air bag during a collision.

It is another object of the invention to provide a vehicle passenger sensing system which relies upon multiple sensors utilizing different physical phenomena to provide signals which are processed by sensor fusion to significantly enhance the reliability of passenger detection while permitting the use of relatively low cost conventional sensors.

It is another object of the invention to provide a vehicle occupancy sensing system adapted for use with a passenger seat of a vehicle to control the deployment of an air bag, and specifically to inhibit the deployment of an air bag when a passenger seat is unoccupied, or occupied by inanimate objects, or the occupant is out-of-position, or when an RFCS is present in the passenger seat, in order to prevent unneeded deployment or unsafe deployment which might otherwise cause injury.

It is another object of the invention to provide a passenger occupancy sensor system which utilizes both thermal and acoustic sensors, the signals from which are processed in a fusing algorithm to produce an output signal permitting deployment of a passenger side air bag only when the passenger seat is occupied by a passenger properly positioned in the seat and inhibiting deployment of an air bag in other preselected conditions of occupancy.

It is another object of the invention to provide a multiple sensor occupancy detection system which processes by sensor fusion certain preselected features extracted from signals provided by different certain sensors which sense different physical parameters to increase the reliability of the individual sensing characteristics of the individual sensors.

**4**

It is another object of the invention to provide a multiple sensor occupancy detection system while maintaining low cost in manufacturing of the vehicle by locating sensors in a single unit to ease the task of mounting the sensor system to the vehicle.

It is another object of the present invention to provide a multiple sensor occupancy detection system while maintaining aesthetics of the vehicle by producing a sensor system of minimal size.

It is another object of the invention to provide a sensor system that can be tuned to individual vehicle interior configurations with unparalleled precision of discrimination by sensor fusion signal processing to produce state, condition or decision signals that may be used as input to a wide variety of automotive systems, including but not limited to occupant safety, vehicle integrity and safety, vehicle operating systems condition or position (e.g. seat position and load adjusting systems), unusual conditions, interior temperature control, unauthorized entry (Passive Theft Detergency), near object detection systems, and the like.

Still other objects will be evident from a review of the Summary, Drawings, Detailed Description and claims hereof.

### BRIEF DESCRIPTION OF DRAWINGS:

The invention will be more fully understood hereinafter by reference to the drawings in which:

FIGS. 1–8 show various conditions illustrative of the variety and range of real conditions that must be detected and accurately discriminated amongst by a fully-functional automotive occupant sensor system which, by way of example, is focused on a passenger seat of a vehicle, with: FIG. 1 showing the seat being occupied by a passenger; FIG. 2 showing the passenger seat unoccupied and sensed as "empty"; FIG. 3 showing a child in a rear-facing child seat ("RFCS"); FIG. 4 showing a passenger holding a bag of groceries; FIG. 5 showing a child in a forward-facing child seat ("FFCS"); FIG. 6 showing a dog in the seat; FIG. 7 showing an out-of-position passenger ("OOP"); and FIG. 8 showing a moderate sized package on the seat;

FIG. 9A is an enlarged front view of the sensor taken along line 9—9 of FIG. 2 having an infrared sensor and an ultrasound sensor contained in a single unit, and illustrating a multi-element Fresnel lens system over a dual-detector infrared sensor;

FIG. 9b is a longitudinal section view of the IR sensor taken along line 9B—9B of FIG. 9A;

FIG. 9C is a transverse section view of the IR sensor taken along line 9C—9C of FIG. 9A;

FIG. 10 is a view of the passenger seat and the sensor unit in relative relationship, illustrating the infrared detector zoning of the seat and seat back areas as sensed through the Fresnel lens;

FIG. 11a is a side view illustrating the infrared detectors fields of view coverage on the passenger seat;

FIG. 11b is a side view illustrating a typical ultrasound transducer field of view coverage on the passenger seat;

FIG. 12 is a schematic diagram of the electronic circuit of an embodiment of the sensor system of the present invention;

FIG. 13 is a functional block diagram of an application specific integrated chip ("ASIC") means for carrying out the sensor fusion methods of the present invention;

5,482,314

5

FIG. 14 is a signal processor functional block diagram illustrating the processing steps used in the operation of the presently preferred best mode embodiment of the sensor system of the present invention;

FIG. 15a and 15b are feature processing block diagrams showing the steps of processing raw data from the sensors to produce infrared (FIG. 15a) and ultrasound (FIG. 15b) feature vectors;

FIG. 16 is a fused feature processing block diagram illustrating the process of fusing infrared features and ultrasound features to produce a fused feature vector;

FIG. 17 is a detection processing block diagram showing the processing of the infrared feature vector, ultrasound feature vector, and fused feature vector to produce a feature state;

FIG. 18 is a graph illustrating the relationship between a feature vector component and confidence levels of various occupancy states by way of example: OOP state, RFCS state, inanimate object state, occupant state, and empty state;

FIG. 19 is a graph illustrating the progression of confidence levels for a given state and a given feature vector component over time;

FIG. 20 is a graph showing confidence level upon fusion of two feature vector components;

FIG. 21 is a graphically illustrated matrix of the relationship between vector components, and fused vector components, states, and confidence levels; and

FIG. 22 is decision processing block diagram illustrating factors considered in a state change decision process.

FIG. 23 is a diagram of sensor decision reliability in a case of discriminating between a normal occupant and an RFCS;

FIG. 24a shows a signature trace from an automobile;

FIG. 24b shows the physical layout of the vehicle giving the trace of FIG. 24a;

FIG. 25a shows a signature trace from a truck;

FIG. 25b shows the physical layout of the vehicle giving the trace of FIG. 25a;

FIG. 26 is a table of test data from actual testing of a sensor system of the invention; and

FIGS. 27a and 27b are comparative traces showing sensibility of the discrimination between an RFCS and the same RFCS covered with two blankets.

SUMMARY

The present invention is directed to an automotive interior occupant sensor system employing sensor-fusion signal processing which combines information provided by two or more sensors, each of which "sees" the world in an unique sense. The multi-sensor fusing process of this invention greatly enhances performance and reliability in much the same way as human ability to visually distinguish and classify objects is greatly enhanced with the addition of sound. While the invention is described in detail with respect to sensing the presence (or absence) of a variety of seat occupants for the purpose of sending a signal to an airbag deployment system thus enabling or disenabling the airbag system to permit or prevent deployment in preselected situations, the "decision" or state signal produced by the sensor system apparatus and sensor signal fusion method of this invention may be applied to also, or alternately, check, affect or trigger other systems, such as automatic safety belts, seat positioning systems, interior climate controls,

6

lighting, dashboard or other signal or warning lights, audio alert or status signals (buzzers, recordings, or synthesized voices), door locks, load adjusting systems, reminder systems crash conditions recording systems, and the like.

In a preferred embodiment, the automobile passenger seat occupancy sensor of the present invention relies on two detectable properties: One such property is the thermal signature and associated motion, and the second is the acoustic distance and the associated acoustic motion. By relying on two distinct sensors in which a plurality of independent features (or characteristics) are extracted and fusing some of these features, the accuracy and reliability of sensing is vastly improved as compared to single sensor or even multiple sensors not employing sensor fusion. For example, in cases where the thermal signature of a rear-facing child seat blends with seat upholstery and provides no motion signal, the distance measurement may be able to detect that something is in the seat with suitable reliability. However, in cases where passengers are holding objects or are much larger than normal, an ultrasonic sensor will provide ambiguous distance measurements which "look" like an RFCS. By the fusion method of this invention, combining features extracted from IR detectors angled and zoned to "look" at different fields and from an ultrasound sensor can ensure proper identification and output of an appropriate decision signal.

In accord with the present invention, measurements of conditions are taken continuously and compared to prior conditions to provide a current state profile. At least initially, the updates are compared to initial conditions obtained at the start-up of the vehicle, and later the comparison is with prior state conditions. If initial conditions indicate a recognized (or "valid") occupant, this condition will tend to prevail throughout operation of the vehicle with the sensor algorithm always erring on the side of safety. If initial conditions indicate an empty seat, a "wake up" mode ensures that passengers changing seats during vehicle operation are detected. A standby mode with ignition is off may be provided in order to draw less power and perform only the minimum required periodic checks and maintenance functions.

Individual sensors will make incorrect decisions by themselves under certain conditions but in unrelated, non-overlapping ways. The fused sensor approach of the present invention covers these failure modes to assure reliable performance by requiring analysis of many different signal features before making a recognition decision. Ordinarily, to compensate for its own area of marginal performance, an individual sensor must become more and more sophisticated, driving up costs. In contrast, the system of the present invention employs fused data from two or more inexpensive sensors, thus achieving the required sophistication level, yet at a significantly reduced cost. Further, in dual sensor operation, self-diagnosis is enhanced by correlating data in one sensor with data from the other.

Although the preferred embodiment of the present invention utilizes passive thermal and active acoustic sensing for their inherent design, simplicity, and safety features, it will be understood that the present invention is not necessarily limited to the use of multiple sensors of the particular type disclosed. While the selected sensors are non-radiative and present no electromagnetic, electro-optic exposure or other exposure hazards to the occupants, it will be understood that other combinations of two or more sensors of different types for occupancy sensing can be usefully used to achieve the simplicity and yet high reliability, of the present invention by the sensor fusion method of the present invention. In any

5,482,314

**7**

case, the sensors disclosed herein do not present any exposure hazards to occupants; for example the ultrasonic unit operates at a frequency well above the hearing range of humans and dogs.

It should be understood that the present invention is not necessarily limited to use in conjunction with an air bag system. It can also be used for security and safety purposes because the combination of two distinct sensor characteristics such as the combination of thermal contrast and motion with acoustic distance and motion as shown herein, prove highly advantageous for its reliability and simplicity in a number of applications outside a vehicle as well as other applications with a vehicle. It may be used as a security system for the premise of a piece of property, both inside of a building as well as outside of the building.

In the preferred embodiment of the invention, infrared sensor inputs and an ultrasonic sensor input are combined in a microprocessor circuit by means of a sensor fusion algorithm to produce an output signal to the air bag controller. The signal results from preselected confidence weighting for the various parameters extracted from the two sensors (called features), and upon a fusion process which ultimately makes a decision which is extremely reliable. An empirical profile, in the form of a lookup table, matrix of values, or empirical relationships, or algorithm is provided for a plurality of known objects (e.g. human occupant, empty seat, rear and forward facing child seat, animal, packages, etc.) either as a generic interior profile or as developed (empirically determined) for a particular interior. During operation the fusion processing compares the signals to a matrix of known condition confidence values to produce a set of confidence weighted values. By way of example, some 14 selected IR features and 13 selected ultrasound features are compared either directly or after fusion to arrive at an overall confidence level that results in triggering the enable/disenable signal (or absence of signal) to the airbag deployment system. The output signals are compatible with AECM interfaces.

The IR sensor unit advantageously includes dual detection elements that look at different areas of the seat, e.g. the seat back and the seat itself. In addition, the "view" of these sensor elements are zoned into vertically oriented parallel zones by means of one or more Fresnel type lenses so that "thermal motion" features can be extracted from the change in thermal signatures from zone to zone.

The occupant sensor algorithm performs the sensor fusion matrix processing and decision making operation on the selected sensor outputs. The fusion matrix has inputs weighted to guarantee reliability in the decision making process. All sensor outputs along with empirical "known" condition data, calibration data, initial conditions and updated historical reference data are considered in the process of making a decision (outputting an enable or disenable signal) whether or not to suppress the deployment of the passenger-side air bag in a collision. By fusing the features and feature vectors to make the decision, each individual parameter has only a partial effect, or "vote", on the ultimate fusion decision. The final decision is based on several conditions or states reinforcing that decision by requiring several independent phenomena or aspects thereof to occur simultaneously.

The fusion process of the invention produces decision with a higher reliability than a single phenomena sensor or non-fused multiple sensors. In addition to performing the multi-sensor fusion decision making, the process requires periodic analysis of the sensor outputs to make certain that all sensors are functioning properly. In addition to normal

**8**

electrical condition checks, conditions from each sensor output are compared with the output from the other sensor to be sure that all sensors confirm proper operation. In the unlikely scenario where the sensor system fails entirely due to power failure, component failure, or otherwise, the air bag deployment system controller defaults to deployment condition to ensure passenger safety. A diagnostic warning indicator of a failure condition may be provided to the vehicle's indicator panel.

All the sensors of the present invention can be provided in a single unit to maintain low manufacturing cost and simplify the task of assembling the sensor system to a new vehicle or retrofit it to a previously-assembled vehicle. In addition, the aesthetics of the vehicle is maintained by keeping the sensor system unit to a minimal size.

Having two or more sensors in the fusion mode enhances self-diagnostic correlation between the two, for if there is a failure of one but not the other, even in scenarios where no or little signal is expected from the failed sensor, still some of the expected features will be missing and analysis and fusion will identify the failed sensor. For example, if US indicates an occupant, the IR can be polled. If it indicates no occupant, then a potential sensor malfunction is indicated. If there are some features from the IR, say weak signal IR, then the IR may be working but it is not clear what is in the seat until other polled features are analyzed by the fusion process algorithm of the invention.

While a fixed sensor system with angled lenses (for the IR) are shown, a mechanical sweep scan can be employed by mounting one or more sensors on a moving element. Likewise while a fixed US transducer and receiver is shown using pulsing to toggle or poll the sensor, a separate transducer and receiver may be employed. The acoustic signal profile may be shaped to the interior for maximum or narrowly focused coverage in a specific area.

The IR sensor may be an uncooled electric device that responds to IR radiation from the near to far IR (2–12 micrometers wavelength), and the US may be an electrostatic type sensor with a typical frequency range of 40 KHz to 150 KHz. The typical field of view will be approximately 30°×34° for the IR, and 20° to 30° (conical direct or offset) for the US. The US is highly immune to interference because the pulse echo must be received within a preselected time window to be valid. The US beam may be asymmetric for better coverage. A separate IR sensor can be added to the unit oriented to look at the center (middle) passenger location.

Without additional hardware the system of the invention can automatically cycle "on" to measure the interior temperature of the vehicle in which it is installed and send a signal to automatically adjust or cause the cooling fan to operate whenever the interior temperature exceeds a preselected (design selected) maximum value. Additionally, the system can automatically, at "power up", measure the characteristic interior "signature" of the particular vehicle in which it is installed, and by comparing these values to predetermined reference tables imbedded in the ASIC, determine which type of platform it is installed in, e.g., auto or truck. It can then transmit the vehicle identification type to the body controller thus automatically verifying correct and proper functioning at the final installation/assembly point.

The ASIC of this invention permits several additional features to be optionally incorporated into the sensor system of this invention as desired. These include: 1) Center Passenger Occupant Detection (CPOD) employing an additional IR sensor and lens to detect center seat occupancy. 2) Four Quadrant Temperature Control (FQTC). This system

5,482,314

9

replaces presently used sun sensor and environmental control unit. It not only controls the vehicular interior temperature, but also enables automatic selection and control from one to four quadrants of directed HVAC (permitting up to four individual interior temperature settings). 3) Passive Theft Detergency (PTD). The automatic temperature control sensors can be used to detect the presence of a person in the vehicle and through communication with the body controller can decide if entry was proper or not, i.e. was a key used to gain entry (proper) or not (improper entry). 4) Near Object Detection Sensors (NODS). This system utilizes an extremely low power microwave radar which mounted behind a plastic cover (taillight or bumper), and tailored to detect objects within a preselected field-of-view.

The FQTC is similar to the occupant sensor, and uses a "multi-apertured" lens to facilitate motion detection. Further, the sensors are effectively "multiplexed" into the central network processor where sample timing, duty cycle, and sensor select sequence are all programmable.

PTD employs thermistor bolometer (TB) detectors, instead of pyro-electrics, and is thus capable of sensing both the motion of a warm object as well as being able to determine its approximate temperature. This PTD implementation is electronically configured to provide continuous or selected intermittent vehicle monitoring. The electronics (Signal Conditioner, Power Regulator, Motion Sense Logic, etc.) are configured for extremely low (less than 100 micro-amps) current drain on the vehicle's battery during security "system on" status, such as when the vehicle is unattended with the ignition off. This configuration permits active temperature monitoring of each zone while the automobile is in use. Further, when the vehicle is left unattended, the sensor suite is capable of detecting and reporting unwanted intrusion associated with vehicular theft or possibly a person hiding in the rear seat area.

NODS utilizes microwave (impulse) radar rather than the classical IR and Acoustic sensing, but employs sensor fusion as disclosed herein. Microwave radar is employed due to its ability to operate (invisibly) while protected from an exterior hostile environment by mounting it in a bumper or tail light assembly location. This system possesses a reliable range detection of on the order of 15+ feet. The hardware concept incorporates voltage protection, J1850 Bus interfacing and one or more ASIC(s) for control and algorithm implementation in accord with the principles of the invention. The specific frequency employed is in the range of from about 1.7 to 94 GHz.

The sensor system and methods of the invention key on the following properties: Thermal signatures or contrasts coupled with motion to establish the presence of a warm object; and Acoustic signatures via wave propagation coupled with motion to establish object status, i.e. the distance from dashboard or headliner location of occupants, objects, empty seat, etc. and if animated or stationary.

Both sensor properties are required to meet the reliability requirements because: 1) The need to inhibit the airbag when a rear-facing child seat is more reliably accomplished through dimensional measurements; these are more reliably derived from the acoustic sensor. 2) Thermal conditions within a vehicle change dramatically with seasons, weather, vehicle interior, passenger clothing, and driver use. Using an IR sensor only may lead to higher rate of falsely-declared seat status condition and, more importantly, the failure to detect an occupant present. 3) The self diagnostic capability of the system requires sensor interaction/confirmation to enhance it's reliability.

10

The signal processing employed in the multi-sensor fusion of this invention is preferably implemented in an Application Specific Integrated Circuit (ASIC). In addition to the signal processor ASIC, a micro-controller provides additional decision making power and system control functions. The ASIC is a mixed signal analog and digital device. It performs signal conditioning, sensor signal detection, non-volatile storage, bus interface, status signal interface, and clock generation functions. The confidence weighting and fusion matrix parameter processing is conveniently performed in software running on the micro-controller or can be implemented using hard-wired logic circuitry. The software can be implemented by one skilled in the art following the Figures as described in detail herein.

DETAILED DESCRIPTION OF THE BEST MODE

The following detailed description illustrates the invention by way of example, not by way of limitation of the principles of the invention. This description will clearly enable one skilled in the art to make and use the invention, and describes several embodiments, adaptations, variations, alternatives and uses of the invention, including what we presently believe is the best mode of carrying out the invention.

Referring now to the accompanying drawings, FIGS. 1 through 7 illustrate a variety of occupancy scenarios to which the present invention is generally directed in its preferred automotive occupancy sensing embodiment. As shown in FIG. 1, this embodiment of the invention comprises a sensor suite 1 mounted in the overhead area above and slightly to the center of the passenger seat 12 of the vehicle 14. As described in more detail below, the microprocessor controller, including an ASIC having the firmware described herein is conveniently located in the sensor unit assembly 1 mounted in the headliner 16 or dash 28. The sensor unit 1 is connected to a conventional airbag controller 2, which in turn activates an airbag 4 in an appropriate crash-sensed situation. The system is conveniently powered by the auto battery 6, or alternately by the alternator or a separate trickle-charged gell cell (not shown).

Various possible scenarios are represented by way of example in the following figures. FIG. 1 depicts the passenger seat 12 occupied by an average adult person 8, while FIG. 2 depicts an empty seat. FIG. 3 depicts the presence of a child 10 in a rear-facing child seat (RFCS) 11 mounted on the passenger seat 12. The RCFS will have an unusual thermal pattern as well as distance and vibration signatures due to the possibility that the child may in part be obscured by the seat, thus masking natural thermal radiation. FIG. 4 depicts an adult person holding a bag of groceries 18, which will also have unusual sensor readings. FIG. 5 shows the presence of a child 10 in a forward-facing child seat (FFCS) 20. Unlike the RFCS, this FFCS scenario will have a more nearly normal thermal signature for a small child as well as normal motion and distance readings. FIG. 6 shows the presence of a pet such as a dog 13. Depending on the size and activity of the pet, there will be variation in the thermal, motion, and distance readings and the rate of change thereof. FIG. 7 depicts an illustrative out-of-position (OOP) passenger scenario, where a child 10 is standing up on the passenger seat and holding onto or leaning against the dash board. It could also be a passenger adjusting the radio, or looking out of the front windshield or with his legs or feet up on the dash. In this scenario, the sensor system needs to determine the feasibility of deploying the air bag which

5,482,314

## 11

depends on the distance of the passenger to the location of the air bag. If the passenger is too close to the air bag location, air bag deployment may not serve any useful purpose, and indeed, might injure the occupant in the process.

It should be noted that in certain scenarios, the location of the sensors unit in the headliner is an advantage. Comparing for example, FIGS. 3 and 7, if the sensors are located at position X and/or Y as compared to the more universal, wide-angled headliner position 16, the RFCS 11 or OOP occupant 15 may obscure or overload one or more of the sensors by coming in contact with the sensor unit face.

The seat may also be occupied by passengers of different size, such as a small child or a larger person. An occupant may be reclined in the passenger seat or sleeping in the passenger seat without giving off much movement, and both cases will have unusual motion, distance, and thermal signature. Referring to FIG. 8, there may be inanimate objects 17 of various size on the seat which may or may not give off thermal and/or motion signatures.

In addition to these scenarios, the weather and shading conditions may affect the interior environment of the vehicle, especially the interior temperature of the vehicle. On a hot summer day, the passenger seat will be extremely hot after the vehicle has been sitting closed in the sun, and this condition can affect sensor readings. In addition, driving along a tree lined highway can lead to thermal flicker, which could mimic a motion signature, due to intermittent shading and exposure of the seat. The present invention is not limited to the detection of the above-discussed scenarios, as others can be detected as well.

Given this wide variety of occupant and external and internal conditions, the present invention must be able to detect, discriminate and make a decision to permit transmission of an air bag enable signal, or generate a disenable signal to the air bag controller to maximize passenger safety in the event of a collision. In the preferred embodiment of the present invention, these scenarios are categorized into one of the following five states: Empty state, Occupant state, Inanimate Object ("IO") state, Rear-Facing Child Seat ("RFCS") state, and Occupant Out-Of-Position ("OOP") state. For the detected Empty state, IO state, RFCS state, and OOP state, an air bag disenable signal will be sent or supplied to the air bag controller. For the Occupant state, an enable air bag signal will be supplied to the air bag controller or, in the event that the default condition of the air bag controller is to signal the air bag to deploy, no interrupt signal will be sent from the sensor unit to the air bag controller (or air bag). Other embodiments may include more or less states with variation in the scenarios.

The Occupant state is the state where air bag deployment will enhance the safety of a passenger in case of an accident. The Occupant state includes the scenarios of an average adult person, a small child, a child in a forward facing child seat, a passenger holding a bag of groceries, a standing child in some positions, and the like. Note that in the standing child scenario, the air bag will be deployed if the child is sufficiently far away from the air bag deployment location to allow an effective and non-injurious deployment of the air bag. The air bag will not be deployed if the child is too close to the air bag deployment location, since deployment of the air bag might injure the child by knocking it back into the seat. The same consideration applies to the OOP state, a passenger positioned too close to an air bag can be sensed to prevent an injuring deployment.

## 12

Typically, it is desirable to disenable the air bag in the RFCS state, the Empty state, the OOP state, and the IO state, e.g. by sending an interrupt signal or interrupting the deploy signal from the airbag controller. It is especially important in the RFCS scenario that the air bag is not deployed in case of an accident. A deploying air bag striking the back of a rear facing child seat could catapult the child and seat backward, possibly injuring the child in the process. In the case of an Empty state or IO state, deploying the air bag in case of an accident ordinarily does not serve any useful purpose, and only adds to the repair cost of re-installing a new air bag in the vehicle. However, the system of the invention is biased toward deployment to ensure the highest level of safety and reliability.

In the preferred embodiment of the invention, the air bag controller is designed to default to the air bag deployment condition. For the appropriate states, such as the Empty state, the IO state, the RFCS state, and the OOP state, the sensor system sends a disenable or interrupt signal to the air bag controller. The present invention is also adaptable for use with a multi-canister controlled pressure air bag deployment system where the air bag is inflated by a number of canisters to the desired pressure. With this system, instead of sending an "on" or "off" type of signal, a quantitative serial, or multiple parallel type of signal can be transmitted to the air bag controller to indicate the desired pressure, or the number of canisters to release depending on the sensed state.

In order to recognize the various scenarios and conditions, this embodiment utilizes two sensors, an infrared ("IR") sensor and an ultrasound ("US") sensor. The infrared sensor used in this embodiment is a commercially available thermistor type of infrared sensor unit, and there are preferably two or more detector elements contained within the infrared sensor unit to allow sensor detection in or from two different regions. Although pyro-electric and photovoltaic types of infrared sensors may be used as well, the thermistor type of sensor presently provides the best cost/performance ratio. In the presently preferred embodiment, the infrared detectors sense the targeted areas continuously with an interrogation period of between about 2 Hz and 10 Hz.

The ultrasound sensor used in this embodiment is a commercially available ultrasound sensor circuit package where the ultrasound frequency and pulse can be externally controlled. The sensor operates in the ultrasonic range above the hearing range of humans and animals such as dogs, and the typical frequency ranges are from 40 KHz to 150 KHz. Frequency selection is determined by requirements such as acoustic losses, range, power, cost, and transducer size. For example, air attenuation and absorption by seats and clothing are increased with frequency; however, the required sensing range here is short, and as a result, the higher end of the frequency range can be selected. The higher frequency also provides the advantage that a small transducer head (sensing element) can be used. In the presently preferred embodiment, the interrogation period varies between 2 Hz and 20 Hz during actual operation depending on the amount or quality of information needed.

FIGS. 9A–9C are enlarged views of the sensor unit of the present invention shown in place in headliner 16 of FIG. 1. The sensors may be placed separately at different locations, but in the preferred embodiment, as shown in FIG. 9A, the infrared sensor 24 and the ultrasound sensor 26 are placed next to each other in a single unit 22. The infrared sensor preferably has two or more detectors 21a, 21b separated by a vertical baffle 19 and covered by a multi-element Fresnel lens 23. Each detector 21a (D-1) and 21b (D2) view different positions of the seat, 21a looking at seat back area 12b, and

5,482,314

13

21b looking at seat area 12a (see FIG. 10) through, in this example two rows of Fresnel lens elements, Fla and Flb, which form a lens set Ls-1 and Ls-2 respectively. Each row in this example has six individual lens elements 50a, 50b . . . 50n, which look at the corresponding zones 50a, 50b . . . 50n on the seat as seen in FIG. 10. The fields of view of the lens row Fla overlaps the row Flb, but the individual zones 50a in 50n do not overlap. The baffle 19 is generally aimed at the seat belt when worn properly by the passenger, as shown by arrow Q in FIG. 9B.

FIG. 9B is a longitudinal schematic cross section of the IR sensor 24 along line 9B—9B in FIG. 9A showing its orientation with respect to the horizontal in the headliner 16. While the angle θ can be 0° it is preferably ranges from about 5°–45° with 10°–30° being preferred. FIG. 9C is a transverse section view of IR 24 taken along line 9C—9C of FIG. 9A. It shows the generally faceted orientation of the zones of Fresnel lens elements 50a . . . 50b. In the alternative, the elements may be stepped with respect to each other.

The Fresnel lens allows the signal strength of a signal source from the middle of the zones to fully pass through. However, as the signal source moves toward the edges of the zones, the Fresnel lens proportionally reduces the strength of the signal passing through.

Although these sensor units can be placed in a number of places in the vehicle, it is preferred to be placed in the headliner 16 above the passenger seat as seen in FIG. 1. The sensor unit can also be placed on the dash board directly in front of the passenger seat or on the passenger side A-pillar. It is anticipated that in the future rear passenger seats may be equipped with air bag protection as well. In this case, a sensor unit placed forward and above the targeted passenger seat in the headliner or in the B pillar can be used to sense rear seat occupancy.

FIG. 10 is a top view of the passenger seat 12 and the sensor unit 1. The passenger seat has a back area 12b and a seat area 12a. Each area (back and seat) is sensed in multiple zones 50a, 50b . . . 50n created by the Fresnel lens elements of the infrared sensor as shown in FIGS. 9A–9C. Note that the infrared sensor uses a Fresnel lens of the type in which each of the infrared detector field of view is divided into, for example, five to eight zones. The infrared detector converts photons (heat) into a change in conductance of the device which results in a sinusoidal wave voltage when an object laterally crosses each zone.

FIG. 11a illustrates a side view of the orientation of the two detectors 21a, 21b (FIG. 9) of the infrared sensor, looking at the passenger seat 12. One detector 21b is oriented to view the seating area 12a while the other detector 21a views the back 12b of the seat. In addition to receiving zoned thermal signature data, each infrared detector senses lateral motion of the occupant or object crossing the zones 50a . . . 50n in the designated area 12a or 12b of the passenger seat. By combining data from the two infrared detectors, "longitudinal" motion of the passenger can be determined as well. By "longitudinal" motion is meant motion by a passenger (e.g. a passenger's hand) that crosses from the area detected by one detector to the area detected by the other detector, and includes both fore/aft or front/back (with respect to the vehicle) motion and vertical or up/down motion, or compound motion having both fore/aft and vertical components. FIG. 11b depicts the area scanned by the ultrasound sensor 26 when aimed at the seat, and portions of the floor and dash 28.

14

Referring now to the hardware aspects, FIG. 12 illustrates a circuit schematic for the preferred embodiment of the present invention. An application specific integrated circuit ("ASIC"), 30, is designed to receive data from the infrared detector assembly 24 (S1) and the ultrasound detector 26 (S2). The ASIC processes the data by controlling a commercially available microprocessor 32, and produces outputs to the Inhibit line at pin 28, the vehicle on-board computer system data bus, J1850, at pin 27, and the Diagnostic line at pin 26. The ASIC controls ultrasound transmission by modulating an "on" or "off" voltage through pin 20 of the ASIC to the transistor, 34. The transistor in turn is turned on for a short time period to allow current to flow through the primary winding of the transformer T1, which creates a current flow through the secondary winding of the transformer. The current flows to the transducer 27, which in turn transmits an ultrasonic pulse. The returning ultrasonic signals are received by the transducer 27 and returned to pin 19 of the ASIC. Infrared signals from the two IR detectors 21a, 21b (FIG. 9) of unit 24 (S1) are received through pins 22 and 21 of the ASIC.

The incoming signals are amplified and filtered via capacitors, C5 and C6. The ASIC embodies an algorithm in its hardware and software in memory to process the signals and uses a commercially available micro-controller, 32, to do the calculations. The resulting output is transmitted via the inhibit line to the air bag controller. The ASIC also provides a diagnostic signal regarding the integrity of the sensor system through pin 26 of the ASIC to the air bag controller (ABC 2 FIG. 1) and the vehicle's indicator panel 28 (FIG. 1). In the event of a system failure, the air bag controller defaults to the air bag enable state. The ASIC may receive inputs from the vehicle's on-board computer system 3 (FIG. 1) through the J1850 data bus, the J1850, regarding the various system conditions and environmental conditions which may allow the sensor system to consider certain environmental factors and vehicle conditions in its overall calculations. The ASIC can also transmit to the vehicle's standard on-board computer its status or output. The ASIC provides an oscillating clock signal to the rest of the board through pin 16.

The ASIC functional description is illustrated in FIG. 13. Although the preferred embodiment is to have one ASIC chip, the described functions may be contained in two or more ASIC chips. The ASIC contains a J1850 Bus Interface 40, Analog Outputs 42, a Non-Volatile RAM 44, a Digital I/O RAM 46, a Clock Generator & Precision Oscillator 48, and a Timing & Control subsystem 49. The Digital I/O RAM 46 provides AGC (automatic gain control) 51 and BIAS to AC Gain 53a, 53b and DC Gain 54a, 54b in the processing of infrared signals, and Ultrasound Control to an Ultrasound Transmit Control 56 in the control of ultrasound through pin 20. The Timing & Control subsystem 49 harmonizes the processing of data among an IR Feature Processor & FIFO 57, a US Feature Processor & FIFO 58, a US Detection 59, a US Xmit Control 56, and the Digital I/O RAM 46.

There are two infrared inputs and they are processed in the same manner. The DC Gain 54a, 54b detects and accumulates infrared signals to allow level detection by the Level Detector 60a, 60b. The fluctuating portion of the infrared signal is sent to the AC Gain 53a, 53b for motion detection and sent to the Motion Detector 61a, 61b. The Level Detector 60 determines the amplitude and sends the information to the IR Feature Processor & FIFO 57. The AC Gain block 53 filters the fluctuating signal with the assistance of a capacitor (C5 or C6) and sends the data to a Motion Detector 61, which sends the processed data to the IR Feature Processor

5,482,314

15

& FIFO 57. The IR Feature Processor & FIFO produces IR Features 62.

The ultrasound signal is received through pin 19, amplified and filtered by a Gain & Filter 63, and sent to the US Detector 59. The magnitude 64 and range 65 is extracted from the ultrasound data and sent to the US Feature Processor & FIFO 58, which produces US Features 67. Both the IR Features 62 and US Features 67 are sent to the Feature Combination Processor 66 to produce Fused Features 68.

The IR Features 62, US Features 67, and Fused Features 68 are sent to the Digital I/O Ram block 46 for processing. The Digital I/O Ram 46 accesses a micro-controller through pins 2 through 14 of the ASIC (FIG. 12) to do the necessary calculations to process the data, and it accesses the Non-Volatile Ram 44 for information. The results are sent out via the Bus Interface 40 and the Analog Outputs 42.

In operation, the detection process is generally as follows: Incoming IR and US signals in a given interrogation time-period are analyzed for features (or characteristics) such as motion, frequency of motion, level of motion, temperature level, distance of objects, increasing or decreasing trends, and so on. There is a set of features for the infrared signals and a set of features for the ultrasound signal. Certain features from each set are combined ("fused") to produce a third set of fused features. Each of the three sets, or vectors, are compared to a predetermine matrix of confidence levels and empirical relationships to determine a just-sensed feature state. A feature state is one of the five possible states described above and is the state determined by the sensor system for this interrogation period. The just-sensed feature state is compared to the current state. The current state is one of the five states discussed above, and is what the sensor system indicates is the actual (near present) condition of the passenger seat. If the just-sensed feature state and the current state are different, a set of criteria is used to determine if the feature state should become the current state. The current state determines whether a disenable or interrupt signal should or should not be sent to the air bag controller.

Confidence levels, or the confidence criteria matrix, are determined as follows: Confidence levels are data obtained from analytical and empirical studies of predetermined known possible passenger seat scenarios. Each such scenario is enacted in the passenger seat under a variety of conditions, and features are obtained and analyzed, Some of the features are fused to obtain fused features. Generally, a confidence level is assigned to each feature and state combination. For example, in the presently preferred embodiment, five confidence levels are used for most features. Some of the features are not good indicators of some of the states for certain scenarios so these particular features have reduced or zero confidence levels for those states.

In more detail, from each scenario, there is a set of infrared features and ultrasound features (or appropriate readings from additional sensors, or from other types of sensors, if used). These features from each scenario are compared to features from other scenarios. After examining all of these scenarios and their features, values are assigned to each feature for each state. These values are called confidence levels, and they are assigned according to the feature's strength in indicating the particular state. For example, in the case of a thermal level (quantitative amount) feature from the infrared sensor, five confidence levels from 1 to 5, with 1 being low confidence and 5 being high confidence, may be conveniently assigned this feature's 5 possible values. After examining thermal level features from all the scenarios, the following observations are made: A

16

thermal level of 1 (low thermal level) is a strong indicator of both the IO state and Empty state; at the same time it is a medium indicator of both the OOP state and RFCS state, and a weak indicator of the Occupant state. A thermal level of 3 (medium thermal level) would perhaps be a high indicator of the RFCS state and OOP state, a medium indicator of the Occupant state, and a weak indicator of the IO state and Empty state; A thermal level of 5 (high thermal level) would be a high indicator of the Occupant state, a medium indicator of the OOP state and RFCS state, and a weak indicator of the Empty state and the IO state. After examining this feature, confidence levels are assigned according to the strength of the indicators for each of the states. Through this process, all of the features are assigned confidence levels. Note that some of the features may be combined ("fused") to provide additional information about the scenarios and confidence levels are assigned to the fused features as well.

Conceptually, these confidence levels are placed in a two dimensional matrix with rows and columns, the columns being the features or fused features and the rows being the states. This matrix is referred-to as the confidence criteria matrix.

In examining all the features and scenarios, empirical relationships can be deduced between the confidence levels developed from the feature and state combinations, and sets of empirical formulas can be derived to convert the confidence levels to probability values for each of the states. More specifically, in the empirical studies all the related features are gathered and analyzed for that state. The inter-relationship(s) of the confidence levels for the features are analyzed to determine how they are related in order to produce a high probability value for a particular state. From this examination, the empirical formulas are determined for this state. Then, using this set of empirically-derived formulas in actual (real-time) scenarios, a probability value (or confidence level) is obtained for the state. A set of formulas is derived for each of the states. A confidence criteria matrix and sets of empirical formulas are developed for each model of vehicle because of the variations in the interior area and passenger seat configuration for each of the vehicles.

In FIG. 14, a signal processing functional block diagram for the preferred embodiment of the present invention is illustrated. Infrared raw data from each of the detectors 21a, 21b (FIG. 9) from the Infrared Sensor 24 (IR 1 Raw Data 70 and IR 2 Raw Data 71) are processed through Infrared Feature Processing 74, which produces an Infrared Feature Vector (A') 76. Similarly, Ultrasound Raw Data 75 from the Ultrasound Transducer 26 are processed through Ultrasound Feature Processing 77, which produces an Ultrasound Feature Vector (B') 88. The ultrasound Transducer can also transmit an ultrasonic pulse via the Ultrasound Transmit Pulse Timing & Control 87. A subset of the Infrared Feature Vector (A") 78 and a subset of the Ultrasound Feature Vector (B") 79 are processed through Fused Feature Processing 80, which produces a Fused Feature Vector (C') 81. These three vectors, Infrared Feature Vector, Ultrasound Feature Vector, and Fused Feature Vector are processed by Detection Processing 82, which produces a Feature State (D') 83. The Feature State is processed by Decision Processing 84 with inputs F'' from a Diagnostic Controller 86, and the Feature State is evaluated to determine a Current State (E') 85. Depending on the Current State, a signal disenabling the air bag may be sent to the air bag controller as shown. The Diagnostic Controller 86 also indicates via F$^1$ system health of the sensor system e.g. ok or malfunction, and in the latter case the air bag is enabled.

5,482,314

17

Sets of features are extracted from the signals for the given interrogation period. In FIG. 15a, the Infrared Feature Processor 74, raw infrared data is digitized by a Digitizer 100 with reference to Gain Calibration Data 101 obtained at the start-up of the vehicle and stored in Memory 102. Gain Calibration Data is used to calibrate sensor readings. From this digitized raw data, the frequency of the lateral motion of object or objects in the passenger seat is extracted and is calculated by a Frequency Processor 104 to obtain an IR 1 Lateral Motion Frequency component 106. From the same digitized raw data, the thermal level of the object at the passenger seat is converted to one of the predetermined levels by a Comparator 108 to obtain an Infrared 1 Thermal Level component 110. The predetermined levels are levels that correspondingly group analog signal values to a set of discrete n-equal levels. This component is compared against previously obtained thermal levels stored in Memory 112 by a Temporal Processor 114 to determine the trend of the thermal level (increasing or decreasing thermal level), and produces an Infrared 1 Thermal Temporal component 116. The digitized raw data is also filtered by a Pre-Filter 118 to enhance motion property of the data, and the data is compared to predetermined levels of motion by using a Comparator 120 and an Infrared Lateral Motion Level component 122 is determined. This component is compared by a Temporal Processor 126 against previously obtained motion levels stored in Memory 124 to determine the trend of the motion level, an Infrared Lateral Motion Temporal component 128.

Raw data from the second detector is processed in the same manner to obtain an IR 2 Lateral Motion Level component 130, an IR 2 Lateral Motion Temporal component 132, an IR 2 Thermal Level component 134, an IR 2 Thermal Temporal component 136, and an IR 2 Lateral Motion Frequency component 138.

The motion levels from the two infrared detectors are correlated by a Motion Correlator 140 to determine a Longitudinal Motion Level component 142, which shows any longitudinal motion of the occupant. The longitudinal information obtained from each detector is contrasted against each other to obtain an Infrared Differential Longitudinal Motion Level component 144, which is significant when there is motion from one detector but not from the other detector. This component is compared by a Temporal Processor 148 against previously obtained components stored in Memory 146 to determine the trend of the motion level or an Infrared Differential Motion Temporal component 150. The frequency of the longitudinal motion of the occupant is calculated by a Frequency Processor 152 to obtain an Infrared Differential Motion Frequency component 154. The Infrared Feature Vector (A') 76 is comprised of the above described infrared components, while only features 106, 110, 128, 154, 132, 134 and 138 are used to form the IR Feature Vector subset A", 78.

Now referring to FIG. 15b, which illustrate the Ultrasound Feature Processor 77, when an ultrasound pulse is transmitted to the targeted area, the ultrasound transducer may receive several ultrasonic returns shortly after the pulse bounces off several objects. These returns are digitized by a Digitizer 160 with reference to Ultrasound Calibration Data 163 obtained at the start-up of the vehicle and stored in Memory 162. Each of these returns will have a point in time when the return first begins, called an edge, which is detected by an Edge Detector 164. And each of the returns will have a point in time when its amplitude is at the highest level (or peak level) and this point in time is detected by a Peak Detector 166. The amplitude is compared to predeter-

18

mined levels by a Comparator 168 to obtain return levels. From the edge and peak level time of the returns, Absolute Ranges 170 (or distances) of the objects from the sensor unit are determined. The first return from the transmitted pulse usually indicates the object of interest in the passenger seat area and is the First Return Level component 176. The trend (increasing or decreasing) of the First Return Level component is the First Return Level Rate of Change component 174, which is determined with reference to previous return levels stored in Memory 172. The Absolute Range—First Return component 178 is the absolute distance of the first object from the sensor. The rate of movement of all the returns from one pulse is the Range Motion component 180 found by using a Differentiator 182, and the rate of movement of the Range Motion component is the Range Motion Rate of Change component 184 found by using a Differentiator 186. Range Motion shows the radial component of motion and vibration of an object. The trend of Range Motion, faster or slower over time, is the Range Motion Temporal component 188 determined with reference to previous range motion values stored in Memory 190 and by using a Temporal Processor 192. The frequency of Range Motion is the Range Motion Frequency component 194 determined by a Frequency Processor 196. The relative values between the returns are determined by a Range Correlator 198 to find Relative Range Values components 200, the corresponding levels or the Relative Range Levels components 202, and the trend of Relative Range Levels or the Relative Range Levels Rate of Change component 204, which is determined by a Differentiator 206.

The relative range level components tend to indicate how objects change in relation to each other and may indicate movement of the object in interest. The range motion components indicate whether there is a constant frequency of movement which would tend to indicate an inanimate object, e.g. a vibration or flutter, or if there are random movements which would tend to indicate an occupant.

The Multipath Triangulation component 208 is where the ultrasonic pulse bounces off several objects before it is received by the transducer, and this value is compared by the Range Correlator 210 to the Range Calibration Data 162 obtained at the start-up of the vehicle. This component is helpful in determining whether there is clarity in the scene being scanned. If this component's value is low, it tends to indicate clarity in the scene and a corresponding high confidence in the scan. If this component's value is high, it tends to indicate confusion in the scene and a corresponding low confidence in the scan. The Air Temperature 212 is obtained from the fact that the air is denser at lower temperature than higher temperature, and there is a faster rate of return of the signal at lower temperature because it transmits through denser air. The Ultrasound Feature Vector (B') 88 is comprised of all of the above described ultrasound components, while the ultrasound feature vector subset comprises features 170, 178, 188, 194, 200 and 208 only.

Now, referring to block C in FIG. 16, the Fused Feature Processing 80, a subset of the Infrared Feature Vector (A") 78 comprises the IR 1,2 Differential Motion Frequency component 144, the IR 1 Lateral Motion Frequency component 106, the IR 2 Lateral Motion Frequency component 138, the IR 1 Thermal Level component 110, the IR 2 Thermal Level component 134, the IR 1 Lateral Motion Temporal component 128, and the IR 2 Lateral Motion Temporal component 132. A subset of the Ultrasound Feature Vectors (B") 79 for this embodiment comprise the Absolute Ranges components 170, the Absolute Range—1st Return. component 178, the Multipath Triangulation com-

5,482,314

**19**

ponent **208**, the Relative Range Values components **200**, the Range Motion Temporal component **128**, and the Range Motion Frequency component **194**. The two subsets are used to extract fused features components for the Fused Feature Vector (C') **81**. Infrared Spatial Frequency Components **300** are sets of distance, frequency, and levels of the objects calculated by the Spatial Correlation Processor **302**, which determines the distance, frequency of movement, and size of the objects detected by the two sensors. The IR 1 Absolute Surface Temperature component **304**, the IR 2 Absolute Surface Temperature component **306**, and the IR Differential Absolute Surface Temperature component **308** are, respectively, temperatures and the difference in temperature found by using the Temperature Processor **310**. The Infrared/Ultrasound Motion Level Correlation component **312**, the Infrared/Ultrasound Motion Level Temporal Correlation component **314**, and the Infrared/Ultrasound Frequency Correlation component **316** are levels of movement, the trend of movement (slower or faster), and the frequency of movement as determined by the Correlation Processor block **318**. Note, all components of the Fused Feature Vector (C') **81** are calculated by fusing features from both the infrared and ultrasound sensors.

Now referring to FIG. **17**, depicting the Detection Processor **82**, each of the vectors is processed by its own respective feature confidence processor and confidence criteria matrix. The feature components are processed individually and some of the feature components are fused for processing. Referring first to Infrared Feature Vector processing, the components, individual or fused, of the Infrared Feature Vector (A') **76** are processed by an Infrared Feature And Infrared Feature Fusion Confidence Processor **400**. In processing the components, references are made to an Infrared Confidence Criteria Matrix stored in Memory **402**, which is modified by previously processed data stored in a History Buffer **404**. This process produces an Infrared Feature Detection and Confidence Matrix **406**, which is processed by an Infrared 1st Level Fusion Detection Processor **408** to produce an Infrared Detect Decision Confidence Vector **410**. The Infrared/Ultrasound Detect Decision Confidence Vector **412** and the Ultrasound Detect Decision Confidence Vector **414** are produced in the same manner with their respective processing blocks, history buffers, and memory.

The Detection Fusion Processor **416**, with reference to previously processed data stored in its History Buffer **418** and by using empirical formulas and relationships between and among the three detect decision confidence vectors (described above), produces a Feature State (D') **83**. A Feature State is one of the states previously mentioned: Occupant state, Empty state, RFCS state, OOP state, and IO state.

The three vectors, Infrared Feature Vector (A') **76**, Ultrasound Feature Vector (B') **88**, and Fused Feature Vector (C') **81**, are used to produce a Feature State (D') **83** as follows: Using the Infrared Feature Vector as an example, let Infrared Feature Vector={IRF1, IRF2, IRF3, . . . , IRF14}, where each of the IRF# represents a component, and where the Infrared Feature Vector has fourteen vector components (as shown in FIG. **18**). In processing the components of the Infrared Feature Vector, the confidence processor (e.g. Infrared Feature and Infrared Feature Fusion Confidence Processor **400**) refers to a confidence criteria matrix (e.g. Infrared Confidence Criteria Matrix **402**), which is data empirically developed through testing under various conditions and scenarios, as described above. The confidence criteria matrix contains the confidence levels, which may be and are usually

**20**

modified by previously processed data. The confidence levels indicate the likelihood of the states for the given feature component value. For each pertinent feature component or fused feature component, there is a set of confidence levels for each state.

For example, referring now to FIG. **18**, for a particular Infrared Feature Vector Component ("IRFi") and states, an IRFi component value of 5 has an associated confidence level of 1.3 for the RFCS state, a confidence level of 1.3 for the OOP state, and confidence level of 0 for other states. For an IRFi value of 9, it has a confidence level of 3.3 for the IO state and 0 for other states. The confidence levels may be modified by previously processed vectors stored in the History Buffer, and may be modified to account for environmental and other changes. For example, should recent history show that the vehicle interior has changing thermal characteristics, e.g. starting the vehicle in cold weather with heater on full blast and later maintaining a consistent and warm temperature, the confidence criteria matrix is adjusted to account for this change. Since there is an overall higher thermal level in the vehicle, a higher thermal level is required to indicate the presence of occupants or their movement. Thus, over time, the confidence level for each of the states may vary. FIG. **19** shows a plot of the confidence level for one state of a particular vector component changing over time.

There are also fused features confidence levels, where two or more vector components can indicate confidence levels for the states. For example, in referring to FIG. **20**, an IRF5 value of 1.2 and an IRF1 value of 1.2 would result in a high confidence value for the OOP state and 0 for other states; an IRF5 value of 3 and an IRF1 value of 1 will have a confidence level of 0 for all the states; and an IRF5 value of 2 and an IRF1 value of 3.3 will have a low confidence value for the RFCS state and 0 for other states. For each feature vector, there are a number of these possible fused vector components and their associated confidence levels. The output of the feature and fused feature processing block is a matrix, called the detection and confidence matrix (e.g. Infrared Feature Detection and Confidence Matrix), shown graphically in FIG. **21**. Note that a fused vector may fuse two or more feature vector components.

The Infrared Feature Detection and Confidence Matrix **406** (FIG. **17**) is input to the Infrared 1st Level Fusion Detection Processor **408**. In the previous step, confidence level calculations provide each individual Infrared feature or fused features with its own detection 'decision'. These individual decisions are now factored together by state in empirically derived functional relationships and formulas, as described above, i.e.:

IR confidence (RFCS)=Function of {IRF1(RFCS), IRF2(RFCS), . . . IRFn(RFCS), IRF3,4,5(RFCS), IRF1,10,11 (RFCS), IRF8,12(RFCS), . . . };

IR confidence (Occupied)=Function of {IRF1(Occupied), IRF2 (Occupied), . . . , IRF8,12 (Occupied), . . . };

IR confidence (OOP)=Function of {IRF1(OOP), IRF2 (OOP), . . . , IRF9,11 (OOP), . . . };

IR confidence (IA)=Function of {IRF1(IA), IRF2 (IA), . . . , IRF8,12 (IA), . . . }; and

IR confidence (Empty)=Function of {IRF1(Empty), IRF2 (Empty), . . . , IRF9,11 (Empty), . . . }.

Each of the above functional relationship will produce a value which indicates the confidence level (or probability value) for the associated state. The output of this process is a vector, called detect decision confidence vector (e.g. Infrared Detection Decisions Confidence Vector **410** in FIG.

5,482,314

| 21 | 22 |

17), where each state has an associated confidence value. An example of the Detect Decision Confidence Vector is: Infrared Detection Decision Confidence Vector ={OOP state: 0.02, Empty state: 0.90, RFCS state: 0.04, IO state: 0.0, Occupant state: 0.20}. In the same fashion, the Ultrasound Detect Decision Confidence Vector 414 is produced from the Ultrasound Feature Vector 88, and the Infrared/Ultrasound Detect Decision Confidence Vector is produced from the Fused Feature Vector 81.

Continuing in reference to FIG. 17, these three independent detect decision confidence vectors, Infrared 410, Infrared/Ultrasound 412, and Ultrasound 414, are inputs to a Detection Fusion Processor 416, which produces a Feature State 83. The manner in which the Feature State decision is arrived at includes weighing functions associated with each confidence vector and weighting of recent decision history stored in a History Buffer 418. For example, in the case of an RFCS, from analytical and empirical studies, we have found that the infrared feature is a "weak" indicator, the ultrasound feature is a "strong" indicator, and the combined infrared/ultrasound fused feature is a "moderately strong" indicator. With these three features, more weight will be applied to an ultrasound declared RFCS state, less weight will be applied to the fused feature declared RFCS state, and even less weight to a infrared declared RFCS state. In this fashion, the three detect decision vectors, the IR Detect Decision Confidence Vector, the US Detect Decision Confidence Vector, The IR/US Detect Decision Vector, are weighed and combined to produce a single vector with a corresponding confidence value for each of the states. The state with highest confidence value is selected as the feature state.

To summarize Feature state processing, by using the feature vector and the time-adjusted confidence criteria matrix as input, the processor performs essentially a look-up table function for the confidence levels on each vector component or fused vector component for each state. In this manner, decision making is made independently at the infrared, ultrasound, and infrared/ultrasound feature level. Furthermore, in this process, some features do not provide information on some of the states because these features alone are not dependable to make correct decisions for these states. Although some features are not reliable to make correct decisions for some of the states, in combination, these features are reliable to cover all the states, and this is the power behind the use of multiple feature fusion from the different sensors.

Note the above described preferred process involves first extracting features from raw sensory data, then producing fused features, associating confidence levels with the features and fused features to produce confidence levels for the predefined states, and determining a feature state from the confidence levels of the states. This process employs fusion at the feature level and at the detection level; it is not simple error correction routines. Other fusion methods can be employed within the principles of the present invention. An algorithm can also be used under certain circumstances to fuse the raw sensory data before any feature is extracted. An algorithm can be employed to extract features and produce a feature state from all the features extracted. Similarly, an algorithm can be utilized to extract features from each sensor, produce a state for each sensor, and fuse the states to produce a feature state. In other words, fusion of data can be done at the raw data level, feature level, decision level, or combination thereof, and any one of the above algorithm or combination thereof can be used for the present invention. The preferred embodiment utilizes a combination of fusion

at the feature level and at the detection level, and the empirical comparison studies demonstrate this preferred combination provides superior accuracy in detection and discrimination for highly reliable decision.

Referring now to Decision Processing 84 (E) in FIGS. 14 and 22, the Decision Confidence Processor 500 compares the Feature State (D') against a Current State 502, State Change Criteria 503 stored in Memory 504, a History Buffer 506, and a System Health Status Buffer 508. The Current State is the state condition as determined by the sensor system, i.e. what the sensor system indicates is the state of the passenger seat, and the corresponding signal to maintain an enable or disenable signal to the air bag controller. If the presently sensed Feature State is the same as the Current State, the Current State is not changed and the History Buffer store the Feature State. If the Feature State is different from the Current State, the Decision Confidence Processor determines whether the Feature State should become the Current State. For the Current State to become the Feature State, it must satisfy the State Change Criteria stored in Memory, which is a set of predetermined criteria to ensure the highest level of safety and reliability in the decision to enable or disenable air bag deployment. The set of predetermined criteria generally requires that more confirmations be made before changing from a deployment state to a non-deployment state, and less confirmations be made in going from a non-deployment state to a deployment state. The Decision Confidence Processor also looks at the history (since start-up of the vehicle) of the Current States stored in the History Buffer and considers what Current State decisions has been made and how often has the Current State been changed. The History Buffer is updated by the Decision Confidence Processor.

In addition, a Diagnostic Controller 510 checks sensor system integrity and updates the System Health Status Buffer. The Diagnostic Controller provides a System Health 512 indicator to the air bag controller and the vehicle's indicator panel. In case of system failure, the air bag controller defaults to the air bag deployment condition, e.g., by not sending an interrupt to the air bag controller. The Decision Confidence Processor checks the System Health Status Buffer and the other system conditions to ensure the sensor system is functioning properly.

As an example of a state change decision process, if the Current State is the Empty state with the corresponding signal to disenable the air bag and the Feature State is the Occupant state, the Decision Confidence Processor will check the System Health Status Buffer to ensure proper system integrity. It will also check the History Buffer to see how many of the previous consecutive periods has the Feature State been the Occupant state or how often has the Current State been changed. The Decision Confidence Processor will change the Current State from Empty state to Occupant state if, during the last two periods, for example, the Feature State has been the Occupant state. On the other hand, if the Current State has been the Occupant state, it will take much more than two periods to change the Current State from the Occupant state to the Empty state. If the current state has been changed quite a few times previously, it will be increasingly more difficult to change the current state from occupant to empty state. This is because the preferred embodiment biases decisions regarding state change toward safety.

FIG. 23 shows, in the case of detecting a front facing occupant and permitting the air bag to deploy, while inhibiting deployment if an RFCS is detected, that the dual sensor system of the invention provides very high functional reli-

5,482,314

<div style="display:flex">
<div>

## 23

ability. The reliability, R, of 0.98 (98%) or greater is obtained using sensor fusion even where the probability of detection $P_D$, for Sensor 1 is as low as 0.3 and the probability of false detection, $P_{FA}$, is as high as $10^{-4}$ (R of 0.27), single Sensor 2 has a $P_D$ of 0.99 and $P_{FA}$ is $10^{-6}$.

The AOS of this invention can even recognize the vehicle it is in by measuring the relative position of the module and the interior attributes of the vehicle. FIG. 24a shows actual measurements performed by the above-described AOS system in a Chrysler LH vehicle. The scope trace shows the actual time referenced acoustic returns from the test vehicle, the layout of which is shown in FIG. 24b. FIG. 25a shows actual measurements performed in a 1989 Dodge pickup truck of layout shown in FIG. 25b. Table 1 below shows the actual timing values measured by the AOS system. These results show a signal margin of 1060 μs at the IP measurement mark, 257 μs at the seat position mark and 543 μs at the floor mark. The total time difference is 1860 μs. With a time resolution of better than 20 μs, the AOS has a large signal processing margin when identifying the difference between vehicles such as a Chrysler LH and RAM truck. Comparison of the traces of FIGS. 24a and 25a show the unique signatures of the vehicle interior configurations by which the AOS of this invention can recognize the vehicle, and a normal state thereof.

### TABLE 1

|  | LH | TRUCK |
|---|---|---|
| IP Return | 2804 μs | 3864 μs |
| Seat Return | 5297 μs | 5040 μs |
| Floor Return | 6933 μs | 7476 μs |

we have measured several types of significant data to evaluate the potential performance of the AOS. This data shows excellent signal to noise ratios (SNR) and a large design performance margin from the sensor suite. The signal to noise values and resulting predicted performance are summarized in FIG. 26. The Pd numbers in FIG. 26 were calculated using the 4-feature fused probability equation shown below.

$$R_{1,2,3,4}=R_1+R_2+R_3+R_4-R_1(R_2+R_3+R_4)-R_2(R_3+R_4)-R_3R_4+R_1(R_2R_4+R_3R_4)+R_2(R_3R_4+R_1R_3)-R_1R_2R_3R_4$$

The individual probability inputs to the equation were derived from actual measurements and worst case analysis.

Testing conducted on typical IR detectors yielded SNR in the range of 12:1 from a normal occupant in an 83° F. vehicle. The ultrasound sensor yields a SNR of 16:1 during the same type of test. By way of comparison, the ultrasound sensor return from a rear facing child seat was measured with the RFCS both uncovered and covered with two wool blankets. The child seat was a Century brand and was placed in a 1993 Eagle Vision. The uncovered child seat gave an SNR of 20:1 while the seat covered under two blankets generated a SNR of 11:1. These signal traces are shown in FIGS. 27a and 27b, respectively. This data indicates that the system of the invention can easily discriminate even between these two subtly different occupant states.

The measurements reflected in FIGS. 22–27 were taken under static conditions in the laboratory. Assuming that under worst case conditions, the signals would be degraded by about a factor of 4, all SNR data was divided by 4. With only small gains in signal processing, the data was increased by a factor of 2. This small signal processing gain does not include using any adaptive thresholding or historical inputs in the detection process which are standard techniques that

</div>
<div>

## 24

can provide substantially increased signal processing gain. Because this is a worst case analysis, such adaptive and historical gains are not included.

Using the adjusted worst case system performance numbers, detection probabilities for each sensing mode were calculated. The calculation assumptions used here were simple envelope detection using fixed thresholds in a Gaussian noise distribution, whereas the AOS of the invention uses more sophisticated detection processes and has higher individual detection probabilities to ensure adequate Pd under all conditions. The individual detection probabilities are shown in FIG. 26, and were used to calculate the fused detection probability shown in the right hand column of FIG. 26. For this analysis a life of 15 million cycles was assumed. The probability of false alarm for this analysis was set at one in a million cycles. The false alarm probability will be reduced to an even smaller number when history and adaptive processing gains are considered. Not including these gains shows worst case system performance.

Diagnostic reliability also benefits from multi-sensor fusion much the same way that detection benefits. As shown in FIG. 26 when each sensor diagnostic probability is fused, the resultant system diagnostic probability is increased. As was done for the detection analysis, the diagnostic probability numbers began as lab measurements that were adjusted downward for worst case conditions., then adjusted for worst case signal processing gain. These individual probabilities were taken from Gaussian noise and a false alarm rate of one in a 100 million cycles.

Both IP (Instrument Panel or Dashboard) and overhead locations were evaluated and tested for operability. High reliability occupant and rear facing child seat detection can be performed from both the IP and the overhead position. Both the IR and the ultrasonic sensor performance has been determined to be location independent.

The overhead sensor position offers system performance advantages over the instrument panel (IP) mounting position. The overhead position is much harder to intentionally block by normal occupant behavior. In the overhead position, the relative geometry of the vehicle is much more easily measured. This feature allows an overhead mounted AOS to measure the relative position of the IP, the seat and the floor, and determine the type of vehicle the AOS has been placed in.

it should be understood that various modifications within the scope of this invention can be made by one of ordinary skill in the art without departing from the spirit thereof. For example, the memory and history buffers can be used to store the state decision for a predetermined period (say 60 to 600 seconds depending on size of memory supplied in the ASIC or microprocessor) prior to a crash in order to determine what the occupants did prior to or during the crash. Was a dog out of position, a passenger make unusual motions indicative of distractions or intrusions, etc? This may be dumped from time to time into a special memory in a crash "black box" along with other vital vehicle operating data, fuel level, speed, acceleration/deceleration, change of direction, braking, lights and/or wipers-on, interior climate and the like. We therefore wish our invention to be defined by the scope of the appended claims as broadly as the prior art will permit, and in view of the specification if need be.

We claim:

1. A method for determining whether or not to de-activate a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known

</div>
</div>

5,482,314

25

occupancy scenarios and a set of state change criteria, comprising the steps of:

(a) sensing the characteristics of occupancy of a particular passenger seat within the vehicle using a plurality of sensors functionally associated with said passenger seat and developing a set of corresponding electrical signals;

(b) evaluating said electrical signals to determine a plurality of signal features included in each of said signals;

(c) combining certain ones of said signal features to obtain a plurality of fused features;

(d) associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value;

(e) identifying the feature state value as the current state value if the set of state change criteria is met; and

(f) generating a de-activate signal if said current state value is one of a predetermined subset of state values for which said passive restraint system is to be de-activated.

2. A method according to claim 1, wherein said passenger passive restraint system includes an air bag deployment system having an air bag that is located for deployment proximate said passenger seat and that can be de-activated in response to said de-activate signal.

3. A method according to claim 2, wherein said predetermined set of state values includes values corresponding to an empty seat state, an occupied seat state, a rear-facing child seat state, an out-of-position passenger state, and an inanimate object state.

4. A method according to claim 3, wherein:

(a) the occupied seat state corresponds to the scenarios of a person seated in said seat, a person seated in said seat holding a grocery bag, a child in a forward-facing child seat disposed in said seat, a child standing in said seat at a distance from the air bag deployment location, and a pet disposed in said seat;

(b) the rear-facing child seat state corresponds to the scenario of a child in a rear-facing child seat disposed in said seat;

(c) the out-of-position passenger state corresponds to the scenario of a person positioned in close proximity to the air bag deployment location;

(d) the inanimate object state corresponds to the scenario of an inanimate object disposed in said seat; and

(e) the empty seat state corresponds to the scenario of an empty seat.

5. A method according to claim 2, wherein said occupancy scenarios include a person seated in said passenger seat, a person seated in said seat holding a grocery bag, a child in a rear-facing child seat disposed in said seat, a child in a forward-facing child seat disposed in said seat, a child in a forward-facing child seat disposed in said seat, a person positioned in close proximity to the air bag deployment location, a child standing in said seat at a distance from the air bag deployment location, a standing child in close proximity to the air bag deployment location, an empty seat, an inanimate object disposed in said seat, a pet disposed in said seat, and an empty seat.

6. A method according to claim 1, wherein said plurality of sensors is selected from the group consisting of infrared sensors, ultrasound sensors, weight sensors, microwave sensors, light sensors, and laser sensors.

7. A method according to claim 6, wherein said sensing step includes the use of two infrared detectors placed close to each other and separated by a baffle.

26

8. A method according to claim 7, wherein said sensing step further includes using a multi-element Fresnel lens to focus one detector on a seat back of the passenger seat and to focus the other detector on a seat surface of the passenger seat.

9. A method according to claim 1, wherein said signal features include indicia of (a) motion, (b) frequency of motion, (c) levels of motion, (d) difference in motion levels, (e) distance, (f) relative distance, (g) thermal levels, and (h) difference in thermal levels.

10. A method according to claim 9, wherein said indicia of motion include indicia of lateral notion and longitudinal motion.

11. A method according to claim 1, wherein said fused features include indicia of (a) temperature, (b) temperature differences, (c) approximate size of objects, (d) distance, (e) motion, (f) frequency of motion, and (g) levels of motion.

12. A method according to claim 1, wherein said associating step (d) comprises the substeps of:

i) using predetermined confidence values and said signal features and fused features to produce (1) a decision confidence matrix of confidence values for the signal features of the signals of each sensor, and (2) a decision confidence matrix of confidence values for said fused features;

ii) using the empirical relationships to calculate a decision confidence vector corresponding to each of said decision confidence matrices;

iii) weighing each decision confidence vector in a predetermined manner to produce weighted vectors; and

iv) combining the weighted vectors to produce a resultant vector having state values from which the feature state value is selected.

13. A method according to claim 1, wherein said set of state change criteria includes consideration of previous feature state values and previous current state values.

14. A method according to claim 1, wherein the subset of said predetermined set of state values, for which said passive restraint system is to be de-activated, includes state values corresponding to a rear-facing child seat state, an empty seat state, an inanimate object state, and an out-of-position state.

15. A method according to claim 1, wherein said passive restraint system includes a single canister air bag deployment system.

16. A method according to claim 1, wherein said passive restraint system includes a multi-canister air bag deployment system capable of partially pressurizing an air bag to various degrees of pressure.

17. A method according to claim 1, further comprising modifying said confidence values over time to correspond to changes in environmental conditions of the vehicle.

18. A method according to claim 1, wherein said sensing step includes using an ultrasound sensor to transmit ultrasonic pulses and to receive ultrasonic return signals.

19. A method according to claim 18, further comprising varying the transmission times between said ultrasonic pulses.

20. A method as recited in claim 1, wherein said plurality of sensors include:

(a) a first infrared detector for generating a first raw data signal;

(b) a second infrared detector for generating a second raw data signal; and

(c) an ultrasound detector for generating a third raw data signal; and wherein said evaluating step (b) includes:

5,482,314

**27**

i) processing said first and second raw data signals to develop a first set of signals representing a first group of signal features and defining an infrared feature vector signal;

ii) processing said third raw data signal to develop a second set of signals representing a second group of signal features and defining an ultrasound feature vector signal;

iii) selecting a subset of said first group of signal features to develop a third group of signal features defining an infrared feature vector subset signal; and

iv) selecting a subset of said second group of signal features to develop a fourth group of signal features defining an ultrasound feature vector subset signal.

21. A method as recited in claim 20 wherein said combining step includes processing said infrared feature vector subset signal and said ultrasound feature vector subset signal to develop a fused feature vector signal.

22. A method as recited in claim 21, wherein the processing of said infrared feature vector subset signal and said ultrasound feature vector subset signal includes:

(a) correlating a first subset of said third group of signal features with a first subset of said fourth group of signal features to develop an infrared spatial frequency components signal;

(b) processing a second subset of said third group of signal features with a second subset of said fourth group of signal features to develop an infrared first absolute surface temperature signal, an infrared second absolute surface temperature signal, and an infrared differential absolute surface temperature signal;

(c) processing a third subset of said third group of signal features with a third subset of said fourth group of signal features to develop an infrared/ultrasound motion level correlation signal, an infrared/ultrasound motion level temporal correlation signal, and an infrared/ultrasound motion frequency correlation signal; and

(d) the infrared spatial frequency components signal, the infrared first absolute surface temperature signal, the infrared second absolute surface temperature signal, the infrared differential absolute surface temperature signal, the infrared/ultrasound motion level correlation signal, the infrared/ultrasound motion level temporal correlation signal, and the infrared/ultrasound motion frequency correlation signal are to form said fused feature vector signal.

23. A method as recited in claim 22, wherein the signals representing the first group of said signal features include a first infrared lateral motion frequency signal, a first infrared thermal level signal, a first infrared thermal level signal, a first infrared lateral motion temporal signal, a first infrared lateral motion level signal, an infrared longitudinal motion level signal, an infrared differential motion level signal, an infrared differential motion temporal signal, an infrared differential motion frequency signal, a second infrared lateral motion frequency signal, a second infrared thermal temporal signal, a second infrared thermal level signal, a second infrared lateral motion temporal signal, and a second infrared lateral motion level signal.

24. A method as recited in claim 23, wherein the signals representing the second group of said signal features include an absolute range signal, a first return level rate of change signal, a first return level signal, an absolute range-1st return signal, a range motion signal, a range motion rate of change signal, a range motion temporal signal, a range motion

**28**

frequency signal, a relative range level rate of change signal, a relative range level signal, a relative range value signal, a multipath triangulation signal, and an air temperature signal.

25. A method as recited in claim 24, wherein the signals representing the third group of said signal features include the first infrared lateral motion frequency signal, the first infrared thermal level signal, the first infrared lateral motion temporal signal, the infrared differential motion frequency signal, the second infrared thermal level signal, the second infrared thermal level signal, the second infrared lateral motion temporal signal, and the infrared differential motion frequency signal.

26. A method as recited in claim 25, wherein the signals representing the fourth group of said signal features include the absolute range signal, the absolute range-1st return signal, the range motion temporal signal, the range motion frequency signal, the relative range value signal, and the multipath triangulation signal.

27. A method as recited in claim 26, wherein the signals representing the first subset of said third group includes the first infrared lateral motion frequency signal, the second infrared lateral motion frequency signal, and the infrared differential motion frequency signal.

28. A method as recited in claim 27, wherein the signals representing second subset of said third group include the first infrared thermal level signal and the second infrared thermal level signal.

29. A method as recited in claim 28, wherein the signals representing the third subset of said third group include the first infrared lateral motion frequency signal, the second infrared lateral motion temporal signal, the first infrared lateral motion temporal signal, and the second infrared lateral motion temporal signal.

30. A method as recited in claim 29, wherein the signals representing the first subset of said fourth group include the absolute range signal, the absolute range-1st return signal, the relative range value signal, and the multipath triangulation signal.

31. A method as recited in claim 30, wherein the signals representing the second subset of said fourth group include the absolute range signal, and the absolute range-1st return signal.

32. A method as recited in claim 31, wherein the signals representing the third subset of said fourth group include the range motion temporal signal and range motion frequency signal.

33. Apparatus for determining whether or not to control a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known occupancy scenarios and a set of state change criteria, comprising:

(a) means for sensing the characteristics of occupancy of a passenger seat within the vehicle using a plurality of sensors functionally associated with said passenger seat and a set of corresponding electrical signals;

(b) means for evaluating said electrical signals to determine a plurality of signal features included in each of said signals;

(c) means for combining certain ones of said signal features to obtain a plurality of fused features;

(d) means for associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value;

(e) means for identifying the feature state value as the current state value if the set of state change criteria is met; and

5,482,314

29

(f) means for generating a state of control signal if said current state value is one of a predetermined set of state values for which said passive restraint system is to be controlled, including possible deactivation of said restraint system.

34. Apparatus according to claim 33, wherein said passenger passive restraint system includes an air bag deployment system having an air bag that is poised for deployment proximate said passenger 'seat and that can be de-activated or inflation controlled in response to said state of control signal.

35. Apparatus according to claim 34, wherein said predetermined set of state values includes values corresponding to an empty seat state, an occupied seat state, a rear-facing child seat state, an out-of-position passenger state, and an inanimate object state.

36. Apparatus according to claim 35, wherein:

(a) the occupied seat state corresponds to the scenarios of a person seated in said seat, a person seated in said seat holding a grocery bag, a child in a forward-facing child seat disposed in said seat, a child standing in said seat at a distance from the air bag deployment location, and a pet disposed in said seat;

(b) the rear-facing child seat state corresponds to the scenario of a child in a rear-facing child seat disposed in said seat;

(c) the out-of-position passenger state corresponds to the scenario of a person positioned in close proximity to the air bag deployment location;

(d) the inanimate object state corresponds to the scenario of an inanimate object disposed in said seat; and

(e) the empty seat state corresponds to the scenario of an empty seat.

37. Apparatus according to claim 34, wherein said occupancy scenarios include a person seated in said passenger seat, a person seated in said seat holding a grocery bag, a child in a rear-facing child seat disposed in said seat, a child in a forward-facing child seat disposed in said seat, a person positioned in close proximity to the air bag deployment location, a child standing in said seat at a distance from the air bag deployment location, a standing child in close proximity to the air bag deployment location, an empty seat, an inanimate object disposed in said seat, a pet disposed in said seat, and an empty seat.

38. Apparatus according to claim 33, wherein said plurality of sensors is selected from the group consisting of infrared sensors, ultrasound sensors, weight sensors, microwave sensors, light sensors, and laser sensors.

39. Apparatus according to claim 38, wherein said means for sensing includes two infrared detectors placed close to each other and separated by a baffle.

40. Apparatus according to claim 39, wherein said means for sensing further includes a multi-element Fresnel lens for focusing one detector on the seat back of the passenger seat and for focusing the other detector on the seat surface of the passenger seat.

41. Apparatus according to claim 33, wherein said signal features include indicia of (a) motion, (b) frequency of motion, (c) levels of motion, (d) difference in motion levels, (e) distance, (f) relative distance, (g) thermal levels, and (h) difference in thermal levels.

42. Apparatus according to claim 41, wherein said indicia of motion include indicia of lateral motion and longitudinal motion.

43. Apparatus according to claim 33, wherein said fused features include indicia of (a) temperature, (b) temperature differences, (c) approximate size of objects, (d) distance, (e)

30

motion, (f) frequency of motion, and (g) levels of motion.

44. Apparatus according to claim 33, wherein said means for associating comprises:

i) means for using predetermined confidence values and said signal features and fused features to produce (1) a decision confidence matrix of confidence values for the signal features of the signals of each sensor, and 2 a decision confidence matrix of confidence values for said fused features;

ii) means for using the empirical relationships to calculate a decision confidence vector corresponding to each of said decision confidence matrices;

iii) means for weighing each decision confidence vector in a predetermined manner to produce weighted vectors; and

iv) means for combining the weighted vectors to produce a resultant vector having state values from which the feature state value is selected.

45. Apparatus according to claim 33, wherein said set of state change criteria includes consideration of previous feature state values and previous current state values.

46. Apparatus according to claim 33, wherein the subset of said predetermined set of state values, for which said passive restraint system is to be de-activated, includes state values corresponding to a rear-facing child seat state, an empty seat state, an inanimate object state, and an out-of-position state.

47. Apparatus according to claim 33, wherein said passive restraint system includes a single canister air bag deployment system.

48. Apparatus according to claim 33, wherein said passive restraint system includes a multi-canister air bag deployment system capable of partially pressurizing an air bag to various degrees of pressure.

49. Apparatus according to claim 33, further comprising means for modifying said confidence values over time to correspond to changes in environmental conditions of the vehicle.

50. Apparatus according to claim 33, wherein said means for sensing includes an ultrasound sensor for transmitting ultrasonic pulses and for receiving ultrasonic return signals.

51. Apparatus according to claim 50, further comprising means for varying the transmission times between said ultrasonic pulses.

52. Apparatus as recited in claim 33, wherein said plurality of sensors of element (a) include:

i) a first infrared detector for generating a first raw data signal;

ii) a second infrared detector for generating a second raw data signal; and

iii) at least one ultrasound detector for generating at least one third raw data signal; and wherein said means for evaluating (b) includes:

i) means for processing said first and second raw data signals and for developing a first set of signals representing a first group of signal features and defining an infrared feature vector signal;

ii) means for processing said third raw data signal and for developing a second set of signals representing a second group of signal features and defining at least one ultrasound feature vector signal;

iii) means for selecting a subset of said first group of signal features to develop a third group of signal features defining an infrared feature vector subset signal; and

iv) means for selecting a subset of said second group of signal features to develop a fourth group of signal features defining at least one ultrasound feature

5,482,314

31

vector subset signal.

53. Apparatus as recited in claim 52 wherein said means for combining includes means for processing said infrared feature vector subset signal and said ultrasound feature vector subset signal to develop a fused feature vector signal.

54. Apparatus as recited in claim 53, wherein said means for processing said infrared feature vector subset signal and said ultrasound feature vector subset signal includes

(a) means for correlating a first subset of said third group of signal features with a first subset of said fourth group of signal features and for developing an infrared spatial frequency components signal;

(b) means for processing a second subset of said third group of signal features with a second subset of said fourth group of signal features and for developing an infrared first absolute surface temperature signal, an infrared second absolute surface temperature signal, and an infrared differential absolute surface temperature signal;

(c) means for processing a third subset of said third group of signal features with a third subset of said fourth group of signal features and for developing at least one infrared/ultrasound motion level correlation signal, an infrared/ultrasound motion level temporal correlation signal, and an infrared/ultrasound motion frequency correlation signal; and

(d) the infrared spatial frequency components signal, the infrared first absolute surface temperature signal, the infrared second absolute surface temperature signal, the infrared differential absolute surface temperature signal, the infrared/ultrasound motion level correlation signal, the infrared/ultrasound motion level temporal correlation signal, and the infrared/ultrasound motion frequency correlation signal are combined to form said fused feature vector signal.

55. Apparatus as recited in claim 54, wherein the signals representing the first group of said signal features include a first infrared lateral motion frequency signal, a first infrared thermal temporal signal, a first infrared thermal level signal, a first infrared lateral motion temporal signal, a first infrared lateral motion level signal, an infrared longitudinal motion level signal, an infrared differential motion level signal, an infrared differential motion temporal signal, an infrared differential motion frequency signal, a second infrared lateral motion temporal signal, a second infrared thermal temporal signal, a second infrared thermal level signal, a second infrared lateral motion temporal signal, and a second infrared lateral motion level signal.

56. Apparatus as recited in claim 55, wherein the signals representing the second group of said signal features include an absolute range signal, a first return level rate of change signal, a first return level signal, an absolute range-1st return signal, a range motion signal, a range motion rate of change signal, a range motion temporal signal, a range motion frequency signal, a relative range level rate of change signal, a relative range level signal, a relative range value signal, a multipath triangulation signal, and an air temperature signal.

57. Apparatus as recited in claim 56, wherein the signals representing the third group of said signal features include the first infrared lateral motion frequency signal, the first infrared thermal level signal, the first infrared lateral motion temporal signal, the infrared differential motion frequency signal, the second infrared lateral motion frequency signal, the second infrared thermal level signal, the second infrared

32

lateral motion temporal signal, and the infrared differential motion frequency signal.

58. Apparatus as recited in claim 57, wherein the signals representing the fourth group of said signal features include at least one of: the absolute range signal, the absolute range-1st return signal, the range motion temporal signal, the range motion frequency signal, the relative range value signal, and the multipath triangulation signal.

59. Apparatus as recited in claim 58, wherein the signals representing the first subset of said third group includes the first infrared lateral motion frequency signal, the second infrared lateral motion frequency signal, and the infrared differential motion frequency signal.

60. Apparatus as recited in claim 59, wherein the signals representing second subset of said third group include the first infrared thermal level signal and the second infrared thermal level signal.

61. Apparatus as recited in claim 60, wherein the signals representing the third subset of said third group include the first infrared lateral motion frequency signal, the second infrared lateral motion frequency signal, the first infrared lateral motion temporal signal, and the second infrared lateral motion temporal signal.

62. Apparatus as recited in claim 61, wherein the signals representing the first subset of said fourth group include the absolute range signal, the absolute range-1st return signal, the relative range value signal, and the multipath triangulation signal.

63. Apparatus as recited in claim 62, wherein the signals representing the second subset of said fourth group include the absolute range signal, and the absolute range-1st return signal.

64. Apparatus as recited in claim 63, wherein the signals representing the third subset of said fourth group include the range motion temporal signal and range motion frequency signal.

65. An application specific integrated circuit device for processing sensory input signals received from sensors adapted to sense the characteristics of occupancy of a particular passenger seat within a vehicle, and for determining whether or not to de-activate a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known occupancy scenarios and a set of state change criteria, comprising in one or more chips:

(a) means for evaluating said input signals to determine a plurality of signal features;

(b) means for combining certain ones of said signal features to obtain a plurality of fused features;

(c) means for associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value;

(d) means for identifying the feature state value as the current state value if the set of state change criteria is met; and

(e) means for generating a de-activate signal if said current state value is one of a predetermined set of state values for which said passive restraint system is to be de-activated.

*  *  *  *  *

**<u>EXHIBIT C</u>**

**Comparison of Patents**

## EXHIBIT C
Comparison of Patents

| U.S. Patent No. 5,482,314 | U.S. Patent No. 6,272,411 |
|---|---|
| **A method for determining whether or not to de-activate a vehicle's passenger passive restraint system as a function of a current state value determined by comparing measured signal features to a predetermined set of confidence values and empirical relationships obtained using various known occupancy scenarios and a set of state change criteria, comprising the steps of:** | **The method of operating a vehicle occupancy state sensor system comprising:** |
| (a) sensing the characteristics of occupancy of a particular passenger seat within the vehicle using a plurality of sensors functionally associated with said passenger seat and developing a set of corresponding electrical signals; | (a) interrogating sensors of said system periodically to provide current data; |
| (b) evaluating said electrical signals to determine a plurality of signal features included in each of said signals; | (b) comparing current data to a history database to determine if there is a change in occupancy state; and |
| (c) combining certain ones of said signal features to obtain a plurality of fused features; | (c) providing a signal for an airbag control system if the occupancy state corresponds to a preselected occupancy state criteria for said signal output. |
| (d) associating said signal features and said fused features with the confidence values and empirical relationships to determine a feature state value; | |
| (e) identifying the feature state value as the current state value if the set of state change criteria is met; and | |
| (f) generating a de-activate signal if said current state value is one of a predetermined subset of state values for which said passive restraint system is to be de-activated. | |

# EXHIBIT M

Delphi Corporation
Special Party

| Company | Contact | ADDRESS1 | CITY | STATE | ZIP |
|---------|---------|----------|------|-------|-----|
| Karl Hopper | Klash, Inc. | 286 East Second Avenue | Alexandria | IN | 46001 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

1 of 1

7/16/2007 12:44 PM
Klash Inc special party

# EXHIBIT N

Delphi Corporation
Special Parties

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Sierra Liquidity Fund as assignee for Applied Tech Industries, Inc. | Scott August Jim Riley | 2699 White Road | Suite 255 | Irvine | CA | 92614 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

1 of 1

7/16/2007 12:41 PM
Applied Tech, Sierra Liquidity special parties

# EXHIBIT O

Delphi Corporation
Special Parties

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Sierra Liquidity Fund as assignee for Fair-Rite Products Corporation | Scott August Jim Riley | 2699 White Road | Suite 255 | Irvine | CA | 92614 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

1 of 1

7/16/2007 12:43 PM
Fair Rite, Sierra Liquidity special parties

# EXHIBIT P

Delphi Corporation
Special Party

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| James Milner | Bona Vista Programs, Inc. | 1220 East Laguna | P.O. Box 2496 | Kokomo | IN | 46904- |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

1 of 1

7/16/2007 12:43 PM
Bona Vista special party

# EXHIBIT Q

Delphi Corporation
Special Party

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| H E Services Comp Robert Backie | Victor Mastromarco Jr | The Mastromarco Firm | 1024 N Michigan Ave PO Box 3197 | Saginaw | MI | 48605 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

1 of 1

7/16/2007 12:43 PM
HE Services special party