**Hearing Date And Time: August 16, 2007 At 10:00 A.M.**
                                     **Objection Deadline: August 9, 2007 At 4:00 P.M.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :
     In re                               :        Chapter 11
                                       :
DELPHI CORPORATION, et al.,     :        Case No. 05-44481 (RDD)
                                       :
                                       :        (Jointly Administered)
             Debtors.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                       MOTION FOR ORDER UNDER 11 U.S.C. § 365(d)(4)
                     FURTHER EXTENDING DEADLINE TO ASSUME OR
                 REJECT LEASES OF NONRESIDENTIAL REAL PROPERTY

                 ("THIRD 365(d)(4) DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 365(d)(4) further extending the deadline to assume or reject unexpired leases of nonresidential real property, and respectfully represent as follows:

Background

A.  The Chapter 11 Filings

1. On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. The Court has ordered joint administration of these cases.

2. No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the official committee of unsecured creditors, the "Statutory Committees").

3. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicate for the relief requested herein is section 365(d)(4) of the Bankruptcy Code.

2

B.     Current Business Operations Of The Debtors

5.     Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court. [2]

6.     The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

7.     Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]    On March 20 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding.  The application was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]  Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

9.    The Debtors believe that the Company's financial performance has deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

Pg 5 of 13

portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined five key tenets of its transformation plan.[4] First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.[5] Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

---

[4] In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with certain investors, and a plan framework support agreement with those investors and GM. On April 19, 2007, Delphi confirmed that it anticipated negotiating changes to the agreements, primarily as a result of addressing differences in views regarding the Company's reorganization enterprise value among the investors, GM, the Statutory Committees, and the Company. On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and commitment agreement and related plan framework support agreement but that it expected to enter into new framework agreements with plan investors presently. Subsequently, on July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as, Goldman Sachs & Co. and an affiliate of Pardus Capital Management, L.P. (collectively, the "New Plan Investors"). Under the Delphi-Appaloosa EPCA, which is subject to Court approval, the New Plan Investors would invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's transformation plan and plan of reorganization.

[5] Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a) modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the UAW, and its various locals, (b) provides that GM will undertake certain financial obligations to Delphi's UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare benefits for certain UAW-represented retirees of the Debtors. This agreement, which was approved by this Court on July 19, 2007, should facilitate the Debtors' reaching consensual resolutions of their labor issues with the remaining unions and GM and permit the Debtors to continue to implement their transformation plan and to develop, prosecute, confirm, and consummate a plan of reorganization. Delphi is currently engaged in settlement discussions with its second and third largest U.S. labor unions and is working to conclude discussions with those unions as well as three smaller unions as soon as practicable.

GM's business commitment to the Company.[6] Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.[7] Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.[8] Finally, the Debtors must devise a workable solution to their current pension situation.[9]

12. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of

---

[6] On July 9, 2007, Delphi confirmed that its discussions with GM on a comprehensive settlement agreement had entered the documentation phase and that it expected that a settlement with GM would be incorporated into the Debtors' plan of reorganization rather than filed with this Court for separate approval.

[7] In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to maximize the value of the estate for stakeholders. During the 2006 and 2007 calendar years, for example, the Debtors sold substantially all of the assets related to MobileAria, Inc., its chapter 11 affiliate, obtained court approval for the sale of substantially all of the assets of their brake hose and Saltillo, Mexico brake plant businesses, and obtained court approval of bid procedures related to the upcoming sale of substantially all assets used in their catalyst business. In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[8] As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan. The Debtors also made significant progress in ensuring that their organizational and cost structure is competitive in obtaining the entry of this Court's Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order"). The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9] To that end, on May 31, 2007, the Bankruptcy Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Plans"). On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 28, 2008, respectively.

its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

### Relief Requested

13. The Debtors request entry of an order, under section 365(d)(4) of the Bankruptcy Code, further extending the date on or before which the Debtors may assume or reject unexpired leases of nonresidential real property to and including the earlier of the date when a plan of reorganization in Delphi's chapter 11 cases is confirmed and February 29, 2008, a date which is approximately five months from the current deadline. The relief requested is without prejudice to the Debtors' right to seek a further extension of the deadline and without prejudice to a lessor's right to seek a shortening of the deadline.

### Basis For Relief

14. The Debtors are lessors or lessees with respect to approximately 80 unexpired leases of nonresidential real property (the "Real Property Leases"). Pursuant to this Court's Order Pursuant To 11 U.S.C. § 365(d)(4) Further Extending Deadline To Assume Or Reject Unexpired Leases Of Nonresidential Real Property, entered April 23, 2007 (Docket No. 7769), the current deadline ("Current Deadline") for the Debtors to assume or reject unexpired leases of nonresidential real property is the earlier of plan confirmation and September 30, 2007.

15. The Debtors continue to implement their transformation plan. Among other things, the Debtors recently gained this Court's approval of an agreement with the UAW and GM which resolves labor issues among Delphi and the UAW. This is also a significant step toward the Debtors' resolving labor issues with all of its other unions. Until the Debtors have reached a consensus with all of their labor unions, it would be premature for the Debtors to assume or reject any of the Real Property Leases. In addition, the Debtors announced on July 18, 2007 that they

7

had accepted the Delphi-Appaloosa EPCA, which details the New Plan Investors' commitment to invest in the reorganized Delphi and attaches the Debtors' proposed framework for a plan of reorganization. The transformation plan, as supported by the UAW Settlement Agreement and the new framework agreements, contemplates a realignment of the Debtors' product portfolio and manufacturing footprint. The Debtors must determine which leased properties fit within this realignment when they emerge from bankruptcy. Accordingly, the Current Deadline is premature.

16. The proposed new deadline to assume or reject the Debtors' Real Property Leases coincides with the Debtors' current deadline to solicit acceptances of a reorganization plan.[10] In early June 2007, the Debtors requested and obtained the February 29, 2008 solicitation extension. Although the Debtors have since reached an agreement with the UAW and negotiated new framework agreements, their transformation is not complete and the Debtors lack all of the information necessary to decide whether to assume or reject their Real Property Leases.

17. Thus, by this Motion, the Debtors request an extension of the section 365(d)(4) deadline to allow them to determine whether to assume or reject particular Real Property Leases. If the Current Deadline is not extended beyond September 30, 2007, the Debtors may be compelled, prematurely, to assume substantial, long-term liabilities under the Real Property Leases or forfeit benefits associated with some Real Property Leases to the detriment of the Debtors' ability to operate and preserve the going-concern value of their business for the benefit of all creditors and other parties-in-interest. The extension proposed by this Motion is modest at approximately five months, or even less if the Debtors confirm a reorganization plan before February 29, 2008. The non-debtor parties to the Real Property

---

[10] The February 29, 2008 deadline for the Debtors to solicit acceptances for a plan of reorganization was set under this Court's Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, entered on July 9, 2007 (Docket No. 8490).

Leases will not be prejudiced by the proposed extension because the Debtors are making payments under the Real Property Leases as they come due.

<u>Applicable Authority</u>

18. Section 365(d)(4) of the Bankruptcy Code provides:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

1 1 U.S.C. § 365(d)(4).

19. The term "cause" as used in section 365(d)(4) is not defined in the Bankruptcy Code. In <u>South Street Seaport L.P. v. Burger Boys, Inc.</u>, 94 F.3d 755 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit held that the following factors would establish whether "cause" existed to extend the statutory period under section 365(d)(4) of the Bankruptcy Code:

(a) whether the debtor was paying for the use of the property;

(b) whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

(c) whether the lease is the debtor's primary asset; and

(d) whether the debtor has had sufficient time to formulate a plan of reorganization.

<u>Id.</u> at 761. The court enumerated additional factors that may merit consideration, including the complexity of the case and the number of leases that the debtor must evaluate. <u>Id.</u>; <u>see also</u> 130 Cong. Rec. S8891, 58,894-95 (daily ed. June 29, 1984) ("cause" includes large number of leases) (statement of Sen. Hatch), <u>reprinted in</u> 1984 U.S.C.C.A.N. 590, 597; <u>In re Enron Corp.</u>, 279 B.R. 695, 703 (Bankr. S.D.N.Y. 2002).

20.    The Debtors satisfy all of these requirements. First, in compliance with section 365(d)(3) of the Bankruptcy Code, the Debtors have remained and fully intend to remain current with respect to all outstanding postpetition rental obligations under the Real Property Leases.

21.    Second, the relief requested herein will not affect any lessor's rights in a manner inconsistent with the provisions of the Bankruptcy Code. See Edward J. Debartolo Corp. v. Child World, Inc., 146 B.R. 89, 92 (S.D.N.Y. 1992) (holding that extension of debtors' time to assume or reject its unexpired leases of nonresidential real property is appropriate when leaseholders are not "irreparably injured in the interim"). The Debtors have the financial ability to and intend to continue to perform all of their obligations under the Real Property Leases as required by section 365(d)(3) of the Bankruptcy Code. The significant cash revenues from the Debtors' operations afford the Debtors this financial ability. The Debtors' $4.5 billion debtor-in-possession financing facility gives the Debtors liquidity and provides additional comfort to creditors and other stakeholders that the Debtors will continue to meet their obligations as they come due. Moreover, lessors may seek to shorten the deadline if circumstances warrant such a shortening.

22.    Third, certain of the Real Property Leases are among the Debtors' primary assets and are vital to their reorganization efforts. The Debtors' manufacturing sites, technical centers, and sales offices are fundamental to their reorganization efforts. These premises consequently comprise an integral component of the Debtors' strategic business plans.

23.    Fourth, given the complexity of theses cases, the Debtors require additional time to formulate a plan of reorganization and assess the assumption or rejection of their leaseholds.

24. Additionally, as stated above, if the Current Deadline is not extended, the Debtors may be compelled to assume liabilities prematurely under the Real Property Leases or risk forfeiting benefits associated with certain Real Property Leases. To prevent this difficult choice with insufficient information, this Court should exercise its discretion to extend the Current Deadline to the earlier of confirmation of a plan of reorganization or February 29, 2008, a date consistent with the Debtors' outside projection regarding the timing of plan confirmation.

25. Courts in this circuit and others have granted similar relief to the relief requested herein in other large, complex chapter 11 cases. See, e.g., In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Sept. 19, 2002, Sept. 24, 2003) (lease assumption/rejection deadline extended through plan confirmation); In re Enron Corp., Ch. 11 Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 31, 2002, Dec. 19, 2002) (deadline initially extended for approximately 11 months; later extended for additional year); In re Ames Dep't Stores, Inc., Case No. 01-4227 (REG) (Bankr. S.D.N.Y. Oct. 3, 2001, Dec. 5, 2001) (deadline extended through confirmation); In re Nextwave Personal Commc'ns Inc., Case No. 98 B 21529 (ASH) (Bankr. S.D.N.Y. July 10, 1998) (same); In re Maidenform Worldwide, Inc., Case No. 97 B 44869 (CB) (Bankr. S.D.N.Y. Sept. 12, 1997) (same); In re UAL Corp., Case No. 02-B-48191 (ERW) (Bankr. N.D. Ill. Feb. 6, 2003, July 21, 2003, Sept. 21, 2005) (same).

26. Accordingly, this Court should extend the time within which the Debtors may assume or reject any Real Property Lease to and including the earlier of the date when a plan of reorganization in these cases is confirmed and February 29, 2008, without prejudice to the Debtors' right to seek a further extension of such deadline or a lessor's right to seek a shortening of the deadline.

11

Notice Of Motion

27.   Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Amended Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

28.   Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the deadline to assume or reject unexpired leases of nonresidential real property to and including the earlier of the date when a plan of reorganization is confirmed in these cases and February 29, 2008, without prejudice to the Debtors' right to seek a further extension of such deadline or a lessor's right to seek a shortening of the deadline, and (b) granting the Debtors such other and further relief as is just.

Dated:     New York, New York
           July 27, 2007

          SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP

          By:   /s/ John Wm. Butler, Jr.
              John Wm. Butler, Jr. (JB 4711)
              John K. Lyons (JL 4951)
              Ron E. Meisler (RM 3026)
          333 West Wacker Drive, Suite 2100
          Chicago, Illinois 60606
          (312) 407-0700

                - and -

          By:   /s/ Kayalyn A. Marafioti
              Kayalyn A. Marafioti (KM 9632)
              Thomas J. Matz (TM 5986)
          Four Times Square
          New York, New York 10036
          (212) 735-3000

          Attorneys for Delphi Corporation, et al.,
           Debtors and Debtors-in-Possession