Hearing Date And Time:  August 16, 2007 At 10:00 a.m.
Objection Deadline:  August 9, 2007 At 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
        In re                                               :    Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :    Case No. 05-44481 (RDD)
                                                            :
                            Debtors.                        :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION TO FURTHER EXTEND TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

("FOURTH REMOVAL DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 28 U.S.C. § 1452 and Rules 9006 and 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to further extend the time period within which the Debtors may remove pending proceedings, and respectfully represent as follows:

<u>Background</u>

A.       The Chapter 11 Filings

1.       On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  The Court has ordered joint administration of these cases.

2.       No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the official committee of unsecured creditors, the "Statutory Committees").

3.       This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.       The statutory predicates for the relief requested herein are 28 U.S.C. § 1452 and rules 9006(b)(1) and 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as
of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately
$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public
company business reorganization in terms of revenues and the thirteenth largest public company
business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11
debtors and continue their business operations without supervision from the Bankruptcy Court. [2]

6.      The Company is a leading global technology innovator with significant
engineering resources and technical competencies in a variety of disciplines, and is one of the
largest global suppliers of vehicle electronics, transportation components, integrated systems and
modules, and other electronic technology.  The Company supplies products to nearly every
major global automotive original equipment manufacturer ("OEM").

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned
subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the
Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the
assets and liabilities of these divisions and subsidiaries were transferred to the Company in
accordance with the terms of a Master Separation Agreement between Delphi and GM.  In
connection with these transactions, Delphi accelerated its evolution from a North American-
based, captive automotive supplier to a global supplier of components, integrated systems, and

---

[1]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
      and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
      2007.

[2]   On March 20 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
      automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
      proceeding.  The application was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its
      Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the
      funding of which was approved by this Court on July 19, 2007.  The Concurso proceeding is consistent with
      Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

3

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006, the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

9.      The Debtors believe that the Company's financial performance has

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

10.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions
with its major stakeholders had not progressed sufficiently by the end of the third quarter of
2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its
transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

        11.    On March 31, 2006, the Company outlined five key tenets of its
transformation plan.[4]  First, Delphi must modify its labor agreements to create a competitive
arena in which to conduct business.[5]  Second, the Debtors must conclude their negotiations with
GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors, and a plan framework
support agreement with those investors and GM.  On April 19, 2007, Delphi confirmed that it anticipated
negotiating changes to the agreements, primarily as a result of addressing differences in views regarding the
Company's reorganization enterprise value among the investors, GM, the Statutory Committees, and the
Company.  On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and
commitment agreement and related plan framework support agreement but that it expected to enter into new
framework agreements with plan investors presently.  Subsequently, on July 18, 2007, Delphi announced that it
had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa
EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa
Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc.,
and UBS Securities LLC) as well as, Goldman Sachs & Co. and an affiliate of Pardus Capital Management,
L.P. (collectively, the "New Plan Investors").  Under the Delphi-Appaloosa EPCA, which is subject to Court
approval, the New Plan Investors would invest up to $2.55 billion in preferred and common equity in the
reorganized Delphi to support the Company's transformation plan and plan of reorganization.

[5]    Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union,
United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a)
modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the
UAW, and its various locals, (b) provides that GM will undertake certain financial obligations to Delphi's
UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare
benefits for certain UAW-represented retirees of the Debtors.  This agreement, which was approved by this
Court on July 19, 2007, should facilitate the Debtors' reaching consensual resolutions of their labor issues with
the remaining unions and GM and permit the Debtors to continue to implement their transformation plan and to
develop, prosecute, confirm, and consummate a plan of reorganization.  Delphi is currently engaged in
settlement discussions with its second and third largest U.S. labor unions and is working to conclude
discussions with those unions as well as three smaller unions as soon as practicable.

GM's business commitment to the Company.[6]  Third, the Debtors must streamline their product

portfolio to capitalize on their world-class technology and market strengths and make the

necessary manufacturing alignment with their new focus.[7]  Fourth, the Debtors must transform

their salaried workforce to ensure that the Company's organizational and cost structure is

competitive and aligned with its product portfolio and manufacturing footprint.[8]  Finally, the

Debtors must devise a workable solution to their current pension situation.[9]

12.     Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

---

[6]     On July 9, 2007, Delphi confirmed that its discussions with GM on a comprehensive settlement agreement had entered the documentation phase and that it expected that a settlement with GM would be incorporated into the Debtors' plan of reorganization rather than filed with this Court for separate approval.

[7]     In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants.  The Debtors have been working to divest non-core assets so as to maximize the value of the estate for stakeholders.  During the 2006 and 2007 calendar years, for example, the Debtors sold substantially all of the assets related to MobileAria, Inc., its chapter 11 affiliate, obtained court approval for the sale of substantially all of the assets of their brake hose and Saltillo, Mexico brake plant businesses, and obtained court approval of bid procedures related to the upcoming sale of substantially all assets used in their catalyst business.  In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[8]     As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.  The Debtors also made significant progress in ensuring that their organizational and cost structure is competitive in obtaining the entry of this Court's Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement On April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]     To that end, on May 31, 2007, the Bankruptcy Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 28, 2008, respectively.

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

Relief Requested

13.    The Debtors request entry of an order under Bankruptcy Rule 9006(b)(1)

extending the time by which the Debtors may remove an action in accordance with 28 U.S.C.

§ 1452 and Bankruptcy Rule 9027 to the later of (i) February 29, 2008, a date which is

approximately five months after the current deadline, and (ii) 30 days after entry of an order

terminating the automatic stay with respect to the action, without prejudice to the Debtors' right

to seek further extensions.

Basis For Relief

14.    The Debtors are parties to more than 200 judicial and administrative

proceedings (collectively, the "Actions") pending in various courts or administrative agencies

throughout the United States.  The Actions involve a wide variety of claims.  The Court has

granted three prior extensions of the removal deadline, the most recent of which expires on the

later of (a) September 30, 2007 and (b) 30 days after entry of an order terminating the automatic

stay with respect to any particular action.  By this Motion, the Debtors request a further

extension to February 29, 2008.  Because of the number of pending Actions and the wide variety

of claims asserted in those Actions, the Debtors need additional time to determine which, if any,

Actions should be removed and, if appropriate, transferred to this district.  The proposed new

7

deadline coincides with the Debtors' current deadline to solicit acceptances of a plan of

reorganization.[10]

15.     The Debtors submit that the relief requested is in the best interests of their

estates and creditors.  The extension sought will afford the Debtors an opportunity to make fully

informed and prudent decisions concerning the possible removal of the Actions, protecting the

Debtors' valuable right to adjudicate lawsuits economically if the circumstances warrant removal.

Moreover, this extension will not prejudice any of the litigants because the Actions are stayed

through confirmation of the Debtors' reorganization plan absent relief from the automatic stay.

Furthermore, no part of the requested relief will prejudice any Party whose proceeding is

removed from seeking remand under 11 U.S.C. § 1452(b).  Accordingly, the proposed extension

requested herein will not prejudice the rights of other parties to any of the Actions.

<u>Applicable Authority</u>

16.     28 U.S.C. § 1452 and Bankruptcy Rule 9027 govern the removal of

pending civil actions.  Section 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other
> than a proceeding before the United States Tax Court or a civil action by a
> governmental unit to enforce such governmental unit's police or regulatory
> power, to the district court for the district where such civil action is
> pending, if such district court has jurisdiction of such claim or cause of
> action under section 1334 of this title.

28 U.S.C. § 1452(a).  Bankruptcy Rule 9027(a)(2) further provides, in pertinent part:

> If the claim or cause of action in a civil action is pending when a case under the
> [Bankruptcy] Code is commenced, a notice of removal may be filed [in the bankruptcy
> court] only within the longest of (A) 90 days after the order for relief in the case under
> the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of

---

[10]    The February 29, 2008 deadline for the Debtors to solicit acceptances for a reorganization plan was set under
this Court's Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And
Solicit Acceptances Of Reorganization Plan, entered on July 9, 2007 (Docket No. 8490).

action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

17.    Bankruptcy Rule 9006(b)(1), in turn, provides that the Court can extend

unexpired time periods:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . . .

Fed. R. Bankr. P. 9006(b)(1).

18.    It is well settled that this Bankruptcy Rule 9006(b)(1) authorizes courts to

expand the removal period as requested herein.  See Jandous Elec. Constr. Corp. v. City of New

York (In re Jandous Elec. Constr. Corp.), 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989) (removal

deadline may be extended under Bankruptcy Rule 9006(b)); Doan v. Loomis (In re Fort Dodge

Creamery Co.), 117 B.R. 438, 443 (N.D. Iowa 1990) (noting that trustee could have moved for

extension of removal period); Stamm v. Rapco Foam, Inc., 21 B.R. 715, 718 (Bankr. W.D. Pa.

1982) (court may extend removal deadline in appropriate circumstances); Circle Litho, Inc., v.

Ryder Truck Lines, Inc. (In re Circle Litho, Inc.), 12 B.R. 752, 756 (Bankr. D. Conn. 1981) ("All

time limitations in the rules are subject to Bankruptcy Rule 9006 which generally permits time

limits set by the rules to be enlarged or reduced").

19.    Furthermore, courts in this district have regularly granted other debtors'

requests to extend the removal deadline to plan confirmation and beyond.  See, e.g., In re Delaco

Company, Case No. 04-10899 (Bankr. S.D.N.Y. April 21, 2004) (extending removal deadline to

30th day after plan effective date); In re Twinlab Corp., Case No. 03-15564 (Bankr. S.D.N.Y.

05-44481-rdd    Doc 8761    Filed 07/27/07    Entered 07/27/07 17:26:05    Main Document
Pg 10 of 11

Dec. 4, 2003) (90-day extension); In re Genuity Inc., Case No. 02-43558 (Bankr. S.D.N.Y.

Feb. 26, 2003) (30th day after plan effective date); In re Global Crossing Ltd., et al., Case Nos.

02-40187 through 02-40241, 02-11982 (Bankr. S.D.N.Y. May 1, 2002) (extending removal

deadline through plan confirmation); In re WorldCom, Inc., et al., Case No. 02-13533 (Bankr.

S.D.N.Y. Oct. 8, 2002) (same).

Notice Of Motion

20.     Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

Memorandum Of Law

21.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the period set forth in Bankruptcy Rule 9027(a)(2)(A) during which they may remove any Action through and including the later of (i) February 29, 2008 and (ii) 30 days after entry of an order terminating the automatic stay with respect to the action, without prejudice to the Debtors' right to seek further extensions, and (b) granting the Debtors such other and further relief as is just.

Dated:          New York, New York
                July 27, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                               & FLOM LLP

                          By:   /s/ John Wm. Butler, Jr.
                                John Wm. Butler, Jr. (JB 4711)
                                John K. Lyons (JL 4951)
                                Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606
                              (312) 407-0700

                                      - and -

                          By:   /s/ Kayalyn A. Marafioti
                                Kayalyn A. Marafioti (KM 9632)
                                Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                               Debtors and Debtors-in-Possession