# Exhibit B

As of October 8, 2005

John Sheehan
Chief Restructuring Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098-2815

Dear Mr. Sheehan:

Reference is made to the letter agreement, dated as of  May 1, 2005 (as amended by that letter agreement, dated as of October 2, 2005, the "Prepetition Engagement Letter"), by and among Delphi Corporation (together with its direct and indirect subsidiaries, the "Company"), Rothschild Inc. ("Rothschild") and Rohatyn Associates LLC ("Rohatyn").    This Agreement (this "Agreement") shall amend and restate the terms and conditions of the Prepetition Engagement Letter regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with a possible Transaction, M&A Transaction, New Capital Raise (each as defined below) and/or other transaction or series of transactions involving the Company, effective as of the date hereof.

Section 1    Services to be Rendered.   In connection with the formulation, analysis, negotiation and implementation of strategic alternatives relating to the Company, whether pursuant to a Transaction, an M&A Transaction, a New Capital Raise, any series or combination of transactions or otherwise, Rothschild will perform the following services, and, in connection therewith advise the Company, as requested by the Company (collectively, the "Services"):

(a)        to the extent deemed desirable by the Company, identify, review, evaluate and initiate potential Transactions, M&A Transactions, New Capital Raises or other transactions;

(b)        to the extent Rothschild deems necessary, appropriate and feasible, or as the Company may request, review and analyze the Company's assets and the operating and financial strategies of the Company;

(c)        assist the Company in developing and evaluating a range of strategic alternatives to restructure the Company's legacy liabilities, including without limitation the Company's current labor costs, liabilities for pension and other post-employment benefits (collectively, the "Legacy Liabilities");

(d)        review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(e)        evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(f)        assist the Company and its other professionals in reviewing and evaluating the

Rothschild Inc.                                      David L. Resnick
1251 Avenue of the Americas                          Managing Director
New York, NY 10020                                   Telephone 212 403-5252
www.rothschild.com                                   Facsimile 212 403-5454
22077895v7                                           Email david.resnick@us.rothschild.com

Delphi Corporation
As of October 8, 2005
Page 2

terms of any proposed Transaction, M&A Transaction, New Capital Raise or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for a Transaction, M&A Transaction, New Capital Raise or other transaction, whether in connection with a Plan (as defined below) or otherwise;

(g)     determine values and/or ranges of values (as appropriate) for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction, M&A Transaction, New Capital Raise or other transaction;

(h)     determine and evaluate the risks and benefits of considering, initiating and consummating any Transaction, M&A Transaction, New Capital Raise or other transaction, including, without limitation, the risks and benefits with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company, whether pursuant to a Plan or otherwise;

(i)     review and analyze any proposals the Company receives from third parties in connection with a Transaction, M&A Transaction, New Capital Raise or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(j)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction, M&A Transaction, New Capital Raise or other transaction;

(k)     advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

(l)     participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below);

(m)     assist the Company's internal and external counsel to enable such counsel to provide legal advice to the Company, as contemplated under Section 7 hereof; and

(n)     render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

As used herein, the term "Transaction" shall mean, collectively, (a) any transaction or series of related transactions that effects material amendments to or other material changes in the Company's outstanding indebtedness, trade claims, leases (both on and off balance sheet) or other

22077895v7

Delphi Corporation
As of October 8, 2005
Page 3

liabilities, taken as a whole, pursuant to a plan of reorganization (a "<u>Plan</u>") confirmed in connection with the Chapter 11 cases (the "<u>Chapter 11 Case</u>") commenced on October 8, 2005 and October 14, 2005 by the Debtors listed on Exhibit A hereto (the "<u>Debtors</u>"); (b) whether pursuant to a Plan or Section 363 Title 11 of the United States Code §§ 101 <u>et seq</u>. (the "<u>Bankruptcy Code</u>") (<u>i</u>) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "<u>Acquirer</u>") or (<u>ii</u>) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting in concert together with an Acquirer pursuant to a written agreement or otherwise), whether in a single transaction, multiple related transactions or a series of related transactions, of (<u>A</u>) a majority of the assets or operations of the Company or (<u>B</u>) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company; (<u>c</u>) any restructuring, reorganization or similar transaction involving a majority of the assets or operations of the Company, whether or not pursuant to a Plan; or (<u>d</u>) any transaction similar to any of the foregoing; <u>provided</u>, that in the case of (a), (c) and (d), such Transaction shall immediately effect, or will effect over time (as evidenced by a binding agreement), a material reduction of the Legacy Liabilities, taken as a whole.

As used herein, the term "<u>M&A Transaction</u>" shall mean, collectively, whether pursuant to a Plan or otherwise, any transaction or series of transactions, involving, at the written request of the Company, the services of Rothschild in which the Company sells or acquires assets, equity interests or any securities convertible into, or options, warrants or other rights to acquire, such equity interests, which sale or acquisition does not constitute a Transaction, and in connection with which Rothschild is designated by the Company as the Company's primary advisor and investment banker.

Rothschild recognizes and acknowledges that a key inducement for the Company's selection of Rothschild pursuant to this Agreement was the assurance that the senior management of Rothschild identified on Exhibit B hereto will participate, to the extent appropriate and as reasonably requested by the Company, in the performance and delivery of the Services as requested by the Company during the engagement of Rothschild in order to satisfy the Company's requirement that the Services be performed in accordance with the standards of highly experienced, world-class investment banking firms.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction, M&A Transaction, New Capital Raise or other transaction; <u>provided</u> that nothing contained herein shall increase the Company's obligations set forth in Exhibit C hereto. Rothschild shall not have any

Delphi Corporation
As of October 8, 2005
Page 4

obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

       Section 2       Information Provided by the Company.

       (a)       The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information reasonably available to the Company which Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently any such information; (ii) does not assume responsibility for the accuracy or completeness of the Information provided by the Company and such other information, and (iii) will not act in the official capacity of appraiser of specific assets of the Company or any other party. Each party confirms that the information to be furnished by it, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will, to the knowledge of the delivering party, not contain any material misstatement of fact or omit to state any material fact. Each party will promptly notify the other party if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore it delivered to the other party. The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically.

       (b)       Each party acknowledges that although it will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees that the other party shall have no liability with respect to any error or omission arising from or in connection with: (i) the electronic communication of information; or (ii) the other party's reliance on such information.

       Section 3    Application for Retention of Rothschild. Rothschild and the Company hereby acknowledge that the Debtors have applied promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of the Prepetition Engagement Letter and Rothschild's retention by the Debtors under the terms of the Prepetition Engagement Letter, *nunc pro tunc* to the date of the Prepetition Engagement Letter, and that the Debtors and their counsel are each satisfied in their reasonable judgment that Rothschild is a

Delphi Corporation
As of October 8, 2005
Page 5

"disinterested person" as such term is defined in Section 101(14) of the Bankruptcy Code. The Debtors shall continue to use their best efforts to obtain Bankruptcy Court approval and authorization of this Agreement, which restates the Prepetition Engagement Letter, subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. Rothschild hereby acknowledges that the Debtors supplied Rothschild and its counsel with a draft of such application and the proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall not have any obligation to provide any services under this Agreement unless its retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild. Notwithstanding any provision to the contrary contained herein, in the event that the Debtors designate Rothschild, as contemplated by Section 4(e) hereof, as primary advisor and investment banker to the Debtors in connection with a New Capital Raise by the Debtors, the Debtors shall be required to obtain approval for such additional advisory role from the Bankruptcy Court upon application to the Bankruptcy Court to approve such designation and Rothschild's compensation in respect thereof and on no less than twenty days' notice to (a) the Office of the United States Trustee, (b) each of the members of and counsel for the Official Committee of Unsecured Creditors, (c) counsel for the agent under the Debtors' postpetition credit facility and (d) counsel for the agent under the Debtors' prepetition credit facility.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Debtors pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses hereunder shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving such Advisor's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any. In so seeking Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothchild's general professional experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, M&A Transaction, New Capital Raise or other transaction, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fees, the Completion Fee, the M&A Fee, the New Capital Fee (as each is defined below), the expense reimbursements provided for herein and the indemnification and exculpation provisions provided herein and in Exhibit C hereto are reasonable regardless of the number of

Delphi Corporation
As of October 8, 2005
Page 6

hours to be expended by Rothschild's professionals in performance of the services to be provided hereunder.

    <u>Section 4</u>    <u>Rothschild's Fees</u>. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay to Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash. All amounts to which Rothschild becomes entitled under this Agreement, including all fees payable under this Section 4 and Exhibit D hereto, all expense reimbursements payable under Section 6 hereof and any amounts that become payable under Section 8 hereof and Exhibit C hereto, shall be paid directly to Rothschild.

    (a)    A retainer (the "<u>Retainer</u>") of $250,000, which was paid upon the execution of the Prepetition Engagement Letter, and is to be applied by Rothschild against Rothschild's fees and expenses under this Agreement.

    (b)    Commencing as of May 1, 2005, and whether or not a Transaction is proposed or consummated, a cash advisory fee (the "<u>Monthly Fee</u>") of $250,000 per month payable by the Company in advance on the first day of each month.

    (c)    A fee (the "<u>Completion Fee</u>") of $15,000,000, due and payable in cash upon the earlier of (<u>i</u>) the effective date of a Plan that provides for, pursuant to the terms of a binding written agreement, the consummation of a Transaction or (<u>ii</u>) the closing of another Transaction.

    (d)    In the case of any M&A Transaction for which Rothschild is designated by the Company as the Company's primary advisor and investment banker, and which does not arise out of a Transaction for which a Completion Fee is due under Section 4(c) above, a fee (the "<u>M&A Fee</u>") equal to the product of (<u>i</u>) the Aggregate Consideration or Consolidated Aggregate Consideration, as applicable, as provided in Exhibit D hereto, <u>times</u> (<u>ii</u>) the applicable M&A Fee Percentage, each as specified in Exhibit D hereto, which M&A Fee shall be due and payable in cash upon the closing of such M&A Transaction.

    (e)    A new capital fee (the "<u>New Capital Fee</u>") equal to (<u>i</u>) 1.0% of any senior secured debt raised; (<u>ii</u>) 3.0% of the face amount of any junior secured or senior or subordinated unsecured debt (including any convertible debt) raised and (<u>iii</u>) 5.0% of any equity or hybrid capital raised (each, a "<u>New Capital Raise</u>"), in each case, in which Rothschild is designated by the Company as the Company's primary advisor and investment banker. The New Capital Fee shall be due and payable in cash at the closing of any New Capital Raise; <u>provided</u>, that no New Capital Fee shall become payable in respect of any new capital raised (<u>x</u>) with respect to any debtor-in-possession financing arrangements; (<u>y</u>) from an entity not otherwise participating in or having expressed an interest in participating in a Transaction; or (z) from an Acquirer or an entity having expressed an interest in becoming an Acquirer in connection with the consummation of a Transaction which is intended to occur simultaneously with or within a reasonable period after the closing of such New Capital Raise.

22077895v7

Delphi Corporation
As of October 8, 2005
Page 7

(f)    To the extent the Company requests Rothschild to perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (i) the hours worked, (ii) the results achieved and (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder; provided, however, that with respect to the hours worked, Rothschild shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

Section 5    Credit.  Rothschild shall credit against the Completion Fee (a) 50% of any M&A Fees indefeasibly paid (the "M&A Fee Credit"); (b) 50% of any New Capital Fees indefeasibly paid (the "New Capital Fee Credit") and (c) to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of this Agreement, the Retainer; provided that the sum of the M&A Fee Credit and the New Capital Fee Credit shall not exceed the Completion Fee.

Section 6    Expenses.  Without in any way reducing or affecting the provisions of Exhibit C hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including without limitation the reasonable fees, disbursements and other charges of Rothschild's counsel; provided, that the retention of any such counsel shall only be made with the Company's consent, which shall not be unreasonably withheld except in the case of legal services which are not customarily required in connection with the performance of the Services. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. Consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.  The Company has advised Rothschild regarding its expense reimbursement guidelines, and Rothschild agrees to make reasonable efforts, as appropriate (but shall not be obligated), to incur expenses consistent with such guidelines.

Section 7    Sharing of Information with Counsel.  As you are aware, the Company has also retained the law firms of Shearman & Sterling LLP ("Shearman") and Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to provide legal advice to the Company in connection with the Legacy Liabilities and in connection with legal aspects of the Chapter 11 Case and the Transactions or M&A Transactions that may occur. The Company also employs inside counsel to advise the Company on those same matters.  The Company believes that from time to time information or analyses prepared by Rothschild may be required to enable Shearman, Skadden

Delphi Corporation
As of October 8, 2005
Page 8

and/or the Company's inside counsel to render appropriate legal services and advice to the Company. The Company also anticipates that from time to time privileged communications may need to be shared with Rothschild in order to permit Rothschild to provide the most comprehensive advice to the Company and to counsel to the Company in order to support such counsel's provision of legal advice to the Company. In addition, the Company and Rothschild share a common interest for this purpose, and the Company intends that any such sharing of privileged information will occur only in pursuit of such common interest and without waiver of the attorney-client privilege or of any other privileges that may apply.

This letter will confirm Rothschild's agreement that, to the extent directed by the Company, Rothschild will provide information or advice within its fields of expertise to assist Shearman, Skadden and the Company's inside counsel in rendering legal services or advice to the Company.

This letter will also confirm the parties' agreement that, to the extent privileged information is shared with Rothschild, such sharing is made solely for the purpose of facilitating Rothschild's provision of services pursuant to this Agreement and in recognition that Rothschild and the Company share a common interest for that purpose. Rothschild will maintain the confidentiality of all privileged communications that are shared with it and will not disclose such privileged matters to any other person without the consent of the Company or as required by law or by court order. In order to assist Rothschild in this regard, the Company agrees that privileged communications that are shared with Rothschild will be labeled as such.

Section 8    Indemnity. The Company agrees to the provisions of Exhibit C hereto which provides for indemnification and exculpation by the Company of Rothschild and certain related persons. Such indemnification and exculpation is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification and exculpation shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 9    Term. The term of Rothschild's engagement shall extend until the later of the consummation of a Transaction or the confirmation and effectiveness of a Plan, provided that this Agreement may be terminated by either the Company or Rothschild after one hundred twenty (120) days from the effective date hereof by providing thirty (30) days advance notice in writing. If terminated, Rothschild shall be entitled to payment of any fees for any monthly period which are due and owing to Rothschild upon the effective date of termination; however, such amounts will be pro-rated for any incomplete monthly period of service, and Rothschild will be entitled to reimbursement of any and all reasonable expenses described in Section 6. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit C. Without limiting any of the foregoing, if this Agreement is terminated by the Company (other than for a material

22077895v7

Delphi Corporation
As of October 8, 2005
Page 9

breach thereof which is not cured within a reasonable period of time, after receipt by Rothschild of written notice thereof), the Completion Fee, any M&A Fee and any New Capital Fee shall be payable in the event that, in the case of the Completion Fee, a Plan or other Transaction or, in the case of any M&A Fee, an M&A Transaction for which an M&A Fee would otherwise be due under this Agreement or, in the case of any New Capital Fee, a New Capital Raise, is closed at any time prior to the expiration of eighteen (18) months after such termination, or a letter of intent or definitive agreement with respect thereto is executed at any time prior to eighteen (18) months after such termination (which letter of intent or definitive agreement subsequently results in the consummation at any time of a Plan or other Transaction, M&A Transaction and/or New Capital Raise).

    Section 10  Miscellaneous.

    (a)    *Administrative Expense Priority.*  The Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such Chapter 11 Cases pursuant to one or more financing orders entered by the Bankruptcy Court.

    (b)    *Survival, Successors & Assigns.*  Sections 4 through 10 hereof, inclusive, including the provisions set forth in Exhibits A, B, C, D and E hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit C hereto shall inure to the respective permitted successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit C by the parties hereto and thereto shall be binding upon their respective successors and assigns. Rothschild shall not have the right to assign any of its rights under this Agreement without the prior written consent of the Company.

    (c)    *Benefit of Agreement; No Reliance by Third Parties.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its affiliates, and their respective officers and directors in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild, which shall not be unreasonably withheld or delayed, provided that nothing contained herein shall prohibit disclosure of such advice in the event and only to the extent the Company has been advised by counsel that such disclosure is necessary to satisfy applicable legal or regulatory requirements.

22077895v7

Delphi Corporation
As of October 8, 2005
Page 10

(d)    *Nature of Relationship.*  The relationship of Rothschild to the Company hereunder shall be that of independent contractors and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company.  The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company.

(e)    *Required Information.*  Since recently enacted Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable Rothschild to comply with applicable law.  For your information, Rothschild may also screen the Company against various databases to verify its identity.

(f)    *Public Announcements.*  With the prior written consent of the Company, which shall not be unreasonably withheld, the Company acknowledges that Rothschild may at its option and expense, after announcement of a Transaction, M&A Transaction, New Capital Raise or other transaction, place announcements and advertisements or otherwise publicize such transaction in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor and investment banker to the Company in connection with such transaction.  The Company further consents to Rothschild's public use or display of the Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities after the announcement of a Transaction or M&A Transaction, provided that such use or display is in the nature of a public record or tombstone announcement in relation to such transaction, and, provided further, that the Company approves of such announcements, advertising or other publication, which approval shall not be unreasonably withheld.

(g)    *CHOICE OF LAW; JURISDICTION.*  THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN ANY OF (A) ANY

22077895v7

Delphi Corporation
As of October 8, 2005
Page 11

STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT THE GENERAL COUNSEL AND THE SECRETARY OF THE COMPANY SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(h)     *Waiver of Jury Trial.*  Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction, M&A Transaction, New Capital Raise or other transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(i)     *Entire Agreement.*  This Agreement (together with the confidentiality agreement dated April 15, 2005) embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein, provided, however, that this Agreement shall not be construed to terminate or reduce (a) the amount of any payments due and owing to Rothschild or Rohatyn, (b) the Company's continuing indemnification and exculpation obligations with respect to Rothschild or Rohatyn under Section 8 and 10(b) of the Prepetition Engagement Letter, including the provisions of Exhibit B thereto or (c) any obligations of Rothschild or Rohatyn arising prior to the date of this Agreement pursuant to the terms of the Prepetition Engagement Letter. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(j)     *Authority.*  Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement, including Exhibits A, B, C, D and E attached hereto and to consummate the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are

Delphi Corporation
As of October 8, 2005
Page 12

given or purported to be given by a director, officer, employee or authorized agent of the Company, or by a person that is reasonably believed by Rothschild to be a director, officer, employee or authorized agent of the Company.

(k)    *Counterparts*.  This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

The Remainder of this Page intentionally left blank

22077895v7

Delphi Corporation
As of October 8, 2005
Page 13

If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _David L. Resnick_
David L. Resnick
Managing Director

Accepted and Agreed to as of
The date first written above:

DELPHI CORPORATION

By: _____
Name: John D. Sheehan
Title: CRO.

22077895v6

**Exhibit A**

**Debtors**

Delphi Corporation, ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., Specialty Electronics International Ltd., Delphi Furukawa Wiring Systems LLC, Delphi Receivables LLC and MobileAria, Inc.

## Exhibit B

### Responsible Senior Management

Gerald Rosenfeld
David Resnick

**Exhibit C**

Delphi Corporation (collectively with its direct and indirect subsidiaries, the "Company") agrees to indemnify and hold harmless Rothschild Inc. ("Rothschild") and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including without limitation stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, reasonable costs, reasonable fees and reasonable expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity (except to the extent that Confidential Information (as defined in the Confidentiality Agreement dated April 15, 2005 between the Company and Rothschild) is provided by an Indemnified Person to any person or entity in breach of Rothschild's obligations to the Company under such agreement) or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to the letter agreement (the "Agreement") entered into between the Company and Rothschild regarding the retention of Rothschild as financial advisor and investment banker to the Company, the retention of and services provided by Rothschild under the Agreement, or any Transaction, M&A Transaction, New Capital Raise or other transaction pursuant to the Agreement; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify an Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party, in each case to the extent relating to Losses for which indemnification is available hereunder (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under the Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (i) if the Company had actual notice of such Action or (ii) unless and only to the extent that the Company is prejudiced thereby. The Company shall have the right to assume the

22077895v7

Delphi Corporation
As of October 8, 2005
Exhibit C - 2

defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild (which shall not be unreasonably withheld or delayed), settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (a) contains an express, unconditional release of each Indemnified Party which is a party to the Action from all liability relating to such Action and (b) does not include an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which the Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided, that the Company shall not in such event be responsible under the Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party or because of a material breach of a term or condition of the Agreement by such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under the Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with the Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to the Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen (x) because of the gross negligence, willful misconduct or fraud of, or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party in connection with any such advice, actions, inactions or services.

22077895v7

Delphi Corporation
As of October 8, 2005
Exhibit C - 3

The rights of the Indemnified Parties and the Company hereunder shall be in addition to any other rights that any Indemnified Party or the Company may have at common law, by statute or otherwise. Except as otherwise expressly provided for in the Agreement, if any term, provision, covenant or restriction contained in the Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in the Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of the Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, the Agreement.

Nothing contained in this letter agreement is intended to obligate the Company to enter into the Agreement, it being understood and agreed that the Company will not execute the Agreement unless and until the Company is satisfied, in its sole discretion, with the terms and conditions of the Agreement, and all internal approvals which the management of the Company determines are necessary or desirable have been obtained.

22077895v7

**Exhibit D**

**ROTHSCHILD INC.**

**M&A Fee Schedule**

(Dollars In Millions)

| Aggregate Consideration[a] or Consolidated Aggregate Consideration [b] | M&A Fee Percentage [c] |
|---|---|
| Up to $100.0 | 1.75% |
| 200.0 | 1.50 |
| 300.0 | 1.25 |
| 400.0 | 1.00 |
| 500.0 | 0.90 |
| 600.0 | 0.85 |
| 700.0 | 0.80 |
| 800.0 | 0.77 |
| 900.0 | 0.74 |
| 1,000.0 and above | 0.70 |

(a) For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any put or call agreements) and other properties paid or payable, directly or indirectly in connection with an M&A Transaction (including (i) amounts paid pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) amounts paid to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in an effort to consummate an M&A Transaction or (y) existing on the Company's balance sheet at the time of an M&A Transaction (if such M&A Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with an M&A Transaction (if such M&A Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the M&A Transaction will be used. In the event such M&A Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such M&A Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security

22077895\V7

Delphi Corporation
As of October 8, 2005
Exhibit D - 2

holders following such M&A Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such M&A Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such M&A Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a M&A Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by Rothschild and the Company. Aggregate Consideration shall be deemed to include the face amount of any indebtedness for borrowed money, including, without limitation, obligations assumed, retired or defeased, directly or indirectly, in connection with, or which survive the closing of, such M&A Transaction. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable.

(b)  In the event that the Company designates Rothschild, as contemplated by Section 4(d) hereof, as the Company's primary advisor and investment banker in connection with M&A Transactions pursuant to which the Company sells (each a "Consolidated Sale" and, together, the "Consolidated Sales") assets, equity interests or any securities convertible into equity interests, or options, warrants or other rights to acquire such equity interests in two or more Product Lines of a single Major Business Line (each as defined on Exhibit E), the Aggregate Consideration payable in connection with each of the Consolidated Sales (the "Consolidated Aggregate Consideration") shall be aggregated for purposes of calculating the M&A Fee. Such use of Consolidated Aggregate Consideration shall not reduce or otherwise impact the M&A Fee payable in connection with any M&A Transaction that is later deemed a Consolidated Sale by virtue of a subsequent sale(s) of a Product Line(s) within the same Major Business Line, provided, however, that the M&A Fee of each subsequent Consolidated Sale within such Major Business Line shall be calculated using the Consolidated Aggregate Consideration and only the difference between (a) the M&A Fee(s) paid to Rothschild on account of a previously closed Consolidated Sale(s) and (b) the M&A Fee calculated using the Consolidated Aggregate Consideration, shall be due and payable to Rothschild upon the Closing of such subsequent Consolidated Sale.

(c)  Percentages rounded to two decimal places. The applicable M&A Fee Percentage for Aggregate Consideration value amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in the M&A Fee Schedule.

# DELPHI

May 17, 2006

Mr. David L. Resnick
Managing Director
Rothschild Inc.
1251 Avenue of the Americas
New York, New York  10020

Dear Mr. Resnick:

Pursuant to the terms of our letter agreement (the "Engagement Letter") dated as of May 1, 2005 and confirming our earlier oral instructions, Delphi Corporation (the "Company") hereby requests that Rothschild Inc. ("Rothschild') serve as the Company's primary financial advisor and investment banker in connection with the Company's proposed sale, transfer or other disposition in one or more transactions of all or a portion of its equity interests, assets and/or liabilities of the Company's:

(i)    Steering Division which includes the Company's Steering Systems and Halfshafts businesses; and

(ii)   Interior Division which includes the Company's Instrument Panels and Consoles, Cockpits, Door Modules and Latching Systems businesses.

Very truly yours,

DELPHI CORPORATION

By: _____
John D. Sheehan
Vice President & Chief Restructuring Officer

Acknowledged and Accepted:

ROTHSCHILD INC.

By: _____
David L. Resnick
Managing Director

259169

July 19, 2006

Mr. John D. Sheehan
Chief Restructuring Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098-2815

**❋ Ⓡ ROTHSCHILD**

Dear John:

As you know, on May 17, 2006 Delphi Corporation (together with its direct and indirect subsidiaries, the "Company") requested Rothschild Inc. ("Rothschild") to assist in the sale of the Company's (i) Steering Division which includes the Company's Steering Systems and Halfshafts businesses; and (ii) Interior Division which includes the Company's Instrument Panels and Consoles, Cockpits, Door Modules and Latching Systems businesses. Because of the current and historical financial performance of the Steering and Interior Divisions and the inter-relationship of the possible sales of the Steering and Interior Divisions with the Company's negotiations with General Motors Corporation and the United Auto Workers on a plan of reorganization, we have discussed that the fee structure for a M&A Transaction set forth in our letter agreement dated as of October 8, 2005 (the "Engagement Letter") is not appropriate for these transactions.

To address this concern, we have estimated an illustrative value for the Steering and Interior Divisions (based on revenues and adjusted EBITDA) and proposed a minimum fee consistent with the fee schedule included with the Engagement Letter (see attached exhibit). Accordingly, this letter (the "Letter Agreement") will amend the Engagement Letter between the Company and Rothschild as follows (capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Engagement Letter). Section 4(d) of the Engagement Letter is hereby amended to read in its entirety as follows:

"(d)  In the case of any M&A Transaction for which Rothschild is designated by the Company as the Company's primary advisor and investment banker, and which does not arise out of a Transaction for which a Completion Fee is due under Section 4(c) above, a fee (the "M&A Fee") equal to the product of (i) the Aggregate Consideration or Consolidated Aggregate Consideration, as applicable, as provided in Exhibit D hereto, times (ii) the applicable M&A Fee Percentage, each as specified in Exhibit D hereto, which M&A Fee shall be due and payable in cash upon the closing of such M&A Transaction; provided, that, notwithstanding anything to the contrary contained herein, the applicable M&A Fee for any M&A Transaction involving the Company's Steering Division (which includes the Company's Steering Systems and Halfshafts businesses) shall not be less than:

- $5 million, if such M&A Transaction involves both the Company's Steering Systems and Halfshafts businesses and is consummated in a single transaction;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

David L. Resnick
Managing Director
Telephone 212 403-5252
Facsimile 212 403-5454
Email david.resnick@us.rothschild.com

Delphi Corporation
July 19, 2006
Page 2



- $3.50 million, if such M&A Transaction involves only the Company's Steering Systems business; or

- $1.50 million, if such M&A Transaction involves only the Company's Halfshafts business.

In addition, notwithstanding anything to the contrary contained herein, the applicable M&A Fee for any M&A Transaction involving the Company's Interior Division (which includes the Company's Instrument Panels and Consoles, Cockpits, Door Modules and Latching Systems businesses), shall not be less than:

- $4 million, if such M&A Transaction involves all four (4) of the Company's Interior Division business lines in a single transaction;

- $3 million, if such M&A Transaction involves any three (3) of the Company's Interior Division business lines in a single transaction;

- $2 million, if such M&A Transaction involves any two (2) of the Company's Interior Division business lines in a single transaction; or

- $1.25 million, if such M&A Transaction involves any one (1) of the Company's Interior Division business lines in a single transaction.

If the Company decides not to complete a M&A Transaction for the Steering Division or Interiors Division as a result of the negotiations on and agreement with its stakeholders on a plan of reorganization, the Company and Rothschild will agree in good faith at that time on a fee to reflect Rothschild's work on such M&A Transactions.

Except as expressly amended hereby, the Engagement Letter is in all respects ratified and confirmed and all the terms thereof shall be and remain in full force and effect.

In addition, the parties hereto expressly agree that Exhibit C to the Engagement Letter providing for the indemnification by the Company of Rothschild and certain related persons and entities shall remain in full force and effect and shall be deemed to cover the engagement as amended hereby.

Delphi Corporation
July 19, 2006
Page 3



      If you are in agreement with the above amendment, please so indicate by signing the enclosed copy of this Letter Agreement in the space designated below and returning it to us whereupon this amendment shall be binding upon the parties hereto.

Sincerely,

ROTHSCHILD INC.

By: _____

David L. Resnick
Managing Director

Agreed and Accepted:

DELPHI CORPORATION

By: _____

John D. Sheehan
Chief Restructuring Officer

274312v2