**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------x
                                     :
                                     :
         In re:                      :          Chapter 11
                                     :
DELPHI CORPORATION, et al.,          :          Case No. 05-44481 (RDD)
                                     :
                      Debtors.       :          (Jointly Administered)
                                     :
------------------------------------------------------x
```

**SUMMARY SHEET PURSUANT TO THE UNITED STATES TRUSTEE GUIDELINES**
**FOR REVIEWING APPLICATION FOR COMPENSATION AND REIMBURSEMENT**
**OF EXPENSES UNDER 11 U.S.C. 330**

**FIFTH INTERIM APPLICATION OF**

Name of Applicant:                              FTI Consulting, Inc.

Authorized to provide
Professional Services to:                       Delphi Corporation, et al.

Date of Retention Order[1]:                     November 4, 2005

Period for which compensation
and reimbursement is sought:                    Feb 1, 2007 through May 31, 2007

Amount of Compensation requested:               $ 5,619,490.87

Amount of Expense Reimbursement requested:      $ 487,504.98

Voluntary Reductions:                           $ 482,765.25

This is an (a): __X__ Interim ____ Final Application

---

[1] Pursuant to an order of the Court dated November 4, 2005 (the "Final Retention Order"), the Debtors were authorized to retain
  FTI as their restructuring and financial advisor to render advisory services in connection with these Chapter 11 cases.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                                    :
                                                    :
In re:                            :            Chapter 11
                                                    :
DELPHI CORPORATION, et al.,       :            Case No. 05-44481 (RDD)
                                                    :
                    Debtors.      :            (Jointly Administered)
                                                    :
---------------------------------------------------------x

**FIFTH INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES INCURRED BY FTI CONSULTING, INC.**
**AS RESTRUCTURING AND FINANCIAL ADVISOR TO THE DEBTORS**
**FOR THE PERIOD FEBRUARY 1, 2007 THROUGH MAY 31, 2007**

### INDEX

**Application**

**Exhibits:**

A.    Certification of Randall S. Eisenberg
B.    Credentials and Summary of Fees by Professional
C.    Summary of Fees and Expenses by Month
D.    Summary of Fees and Hours by Project Category by Month
E.    Summary of Expenses by Category by Month
F.    Final and Supplemental Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Restructuring and Financial Advisor to the Debtors.
G.    Detail of Professional Fees for the Period February 1, 2007 through February 28, 2007; March 1, 2007 through March 31, 2007; April 1, 2007 through April 30, 2007; and May 1, 2007 through May 31, 2007.
H.    Detail of Out-of-Pocket Expenses by Professional for the Period February 1, 2007 through February 28, 2007; March 1, 2007 through March 31, 2007; April 1, 2007 through April 30, 2007; and May 1, 2007 through May 31, 2007.

---

Pursuant to the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Administrative Order") dated November 4, 2005, FTI Consulting, Inc. is filing this Application with this Court, including Exhibits A-H.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
:
In re: : Chapter 11
:
DELPHI CORPORATION, et al., : Case No. 05-44481 (RDD)
:
Debtors. : (Jointly Administered)
:
---------------------------------------------------------x

**FIFTH INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES INCURRED BY FTI CONSULTING, INC.**
**AS RESTRUCTURING AND FINANCIAL ADVISOR TO THE DEBTORS**
**FOR THE PERIOD FEBRUARY 1, 2007 THROUGH MAY 31, 2007**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

FTI Consulting, Inc. (hereinafter referred to as "FTI" or the "Applicant") moves pursuant to Sections 330 and 331 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Administrative Order establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated November 4, 2005 (the "Administrative Order"), for an Order awarding reasonable interim compensation for professional services as Restructuring and Financial Advisor to the Debtors and Debtors-in-Possession (the "Debtors" or the "Company") in the amount of $5,619,490.87 together with reimbursement for actual and necessary expenses in the amount of $487,504.98 for the period of February 1, 2007 through May 31, 2007, inclusive (the "Fifth Interim Fee Period" or the "Application Period"). In support of this application, FTI represents as follows:

## OVERVIEW

1. These Chapter 11 cases commenced with the filing by the Debtors of Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on October 8, 2005 in the United States Bankruptcy Court, Southern District of New York (the "Court"). These Chapter 11 cases

are being jointly administered for procedural purposes.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  No trustee or examiner has been appointed in the Debtors' Chapter 11 cases.  A statutory committee of unsecured creditors (the "UCC") was appointed on October 17, 2005.  On April 28, 2006, an official committee of equity security holders was appointed (the "Equity Committee").

3.  Pursuant to an Order of the Court dated October 14, 2005 (the "Interim Retention Order"), the Debtors were authorized to retain FTI as their restructuring and financial advisor to render advisory services in connection with these Chapter 11 cases on an interim basis, with the retention to become final following a hearing to consider any objections filed against the Debtors' application for authority to employ FTI.  A hearing on FTI's retention was conducted on October 27, 2005; thereafter, the Court entered an order dated November 4, 2005 (the "Final Retention Order"), authorizing the Debtors to retain FTI as their restructuring and financial advisor in these Chapter 11 cases.  The Court entered a supplemental order dated October 19, 2006 (the "Supplemental Retention Order"), authorizing the Debtors' retention of FTI as their restructuring and financial advisor to be expanded to provide economic consulting services to the Debtors, with such expansion being effective as of May 25, 2006.  Copies of the Final Retention Order and the Supplemental Retention Order are attached hereto as Exhibit F.  FTI also filed its First Supplemental Affidavit of Randall S. Eisenberg in support of the Retention of FTI Consulting, Inc. on February 27, 2006, its Second Supplemental Affidavit of Randall S. Eisenberg in support of the Retention of FTI Consulting, Inc. on April 26, 2006,  its Third Supplemental Affidavit of Randall S. Eisenberg in support of the Retention of FTI Consulting, Inc. on July 31, 2006, its Fourth Supplemental Affidavit of Randall S. Eisenberg in support of the Retention of FTI Consulting, Inc. on September 25, 2006, its Fifth Supplemental Affidavit of Randall S. Eisenberg in support of the Retention of FTI Consulting, Inc. on March 19, 2007, and its Sixth Supplemental Affidavit of Randall S. Eisenberg in support of the Retention of FTI

Consulting, Inc. on July 27, 2007.

4.    This is FTI's Fifth interim application for compensation and expense reimbursement filed in these cases.  The first, second, third and fourth interim applications for compensation and expense reimbursement were filed with the Court on April 27, 2006, July 31, 2006, November 28, 2006 and March 30, 2007 respectively.

5.    FTI's total fees in the fifth interim fee application were $6,102,256.12 and total expenses were $487,504.98.  FTI has taken a voluntary fee accommodation of $482,765.25, reducing its fees to $5,619,490.87. Included in the $5,619,490.87 fee amount is $1,123,898.17 that represents the 20% professional fee holdback as required in the Administrative Order for the period of February 1, 2007 through May 31, 2007.  FTI seeks interim allowance of the fees and expenses in total and authorization for payment of any amounts outstanding, including the 20% holdback on professional fees.

6.    Prior to the Petition Date, FTI received and continues to hold a retainer from the Debtors in the amount of $510,256.07.

| Fee Period | Period Covered | Requested | | Paid | |
|---|---|---|---|---|---|
| | | Fees (1,2) | Expenses | Fees | Expenses |
| 1 | October 8, 2005 - January 31, 2006 | $  8,482,442.86 | $  687,569.02 | $  8,482,442.86 | $  687,569.02 |
| 2 | February 1, 2006 - May 31, 2006 | 6,116,101.55 | 605,524.84 | 6,116,101.55 | 605,524.84 |
| 3 | June 1, 2006 - September 30, 2006 | 7,463,126.56 | 553,976.43 | 7,463,126.56 | 553,976.43 |
| 4 | October 1 2006 - January 31 2007 | 6,767,132.17 | 621,771.79 | 5,413,705.21 | 621,771.79 |
| 5 | February 1, 2007 - May 31, 2007 | 5,619,490.87 | 487,504.98 | 3,264,486.60 | 374,425.40 |
| **Total** | | $  34,448,294.01 | $  2,956,347.06 | $  30,739,862.78 | $  2,843,267.48 |

(1) Including Holdback.
(2) Interim Fee Applications 1 - 3 include a further voluntary reduction of $20,000.00 each.

## SUMMARY OF SERVICES RENDERED BY FTI

7.    The Applicant has provided extensive and valuable services, contributing substantial value to the Debtors' Estate as its Restructuring and Financial Advisor.  The following is a

3

summary of the significant professional services rendered by FTI during the Application Period.

## 3 - BUSINESS OPERATIONS:

### Cash Management & Reporting

FTI assisted the Debtors in updating the 13-week cash flow analysis used to monitor and project the Debtors' short-term cash flow position. As noted in prior interim fee applications, FTI transitioned the production of this monthly analysis to the Delphi Treasury group. FTI maintained an active role during this fee period in reviewing drafts of preliminary projections and providing comments and guidance to management prior to finalization of these monthly reports. Through these efforts, the Debtors are able to more accurately and cost-effectively project anticipated cash inflows and outflows, manage overall liquidity and report anticipated cash flows on a regular basis to various constituents.

### First Day Orders related to Suppliers – Implementation and Compliance

FTI provided assistance to the Debtors in connection with the First Day Orders related to suppliers. Such assistance was critical to maintaining an uninterrupted flow of necessary parts, supplies, and services to the Debtors' operations. Since the October 8, 2005 filing date, the Debtors have received over 1,700 requests for payment under the various supplier-related orders relating to Contract Labor (pursuant to the Human Capital Order); Essential Suppliers; Foreign Creditors; Lienholders; and Shippers, Warehousemen & Customs Brokers, approximately 20 of which were still being analyzed and resolved during the Fifth Interim Fee Period. FTI assisted the Debtors in examining supplier requests as applicable to each of the Orders, routing the claims to the appropriate personnel for resolution, and monitoring the case backlog and payments by Order. Guidance to the Debtors was provided regarding criteria to be used in determining whether a supplier was eligible for payment of its prepetition claim under one of these Orders and assistance was provided in analyzing each supplier's specific situation. FTI also participated

in a review committee that evaluated and approved requests for payment under various supplier-related Orders entered by the Court.  In addition, FTI coordinated the collection of data used to track open, rejected, and approved claims, reviewed the accuracy and completeness of the tracking data, and prepared reports as to the status of open claims and payments as defined in the Orders.

FTI's efforts in this category supported the Debtors in closely monitoring and properly evaluating requests under the key supplier-related First Day Orders, which substantially aided the Estate in maintaining a stabilized supply chain.

### *First Day Orders related to all Other Motions (Non-Supplier) – Implementation and Compliance*

During this fee period, FTI continued to assist the Debtors with implementation of various First Day Orders.  FTI coordinated with the Debtors and the Debtors' Counsel to administer and track prepetition payments made pursuant to the First Day Orders granted by the Court.  In doing so, assistance was provided to the Debtors and Debtors' Counsel with defining and implementing an internal approval process for payment of prepetition amounts pursuant to First Day Orders and then evaluating various requests for consideration.

FTI's efforts in this category allowed the Debtors to appropriately use the relief granted, continue operations without interruption in the postpetition environment, and manage its operations in accordance with the authority granted under the First Day Orders.

### *Supplier Relations*

FTI continued to assist the Debtors in working with suppliers on a post-petition basis.  Parts supplied by the Debtors must undergo lengthy and rigorous certification processes and validation tests.  Since nearly all of the Debtors' direct suppliers are the sole source of certain materials and parts used in operations, the maintenance of supply with these vendors is critical to the preservation of value of the Debtors' estates.  During the Application Period, FTI participated

in specific supplier negotiations with the Debtors and Debtors' Counsel and facilitated the resolution of priority supply chain issues.

FTI provided assistance in communicating with various suppliers regarding specific supplier issues, such as extensions of trade terms and a return to prepetition price downs and performance measures. FTI provided support to the various Delphi commodity teams and divisional personnel to assist the Delphi Global Supply Management team in addressing these issues, as well as to coordinate responses to requests for payment under the various First Day Orders and the reconciliation of prepetition payable balances.

Additionally, FTI assisted the Debtors and Debtor Counsel in the analysis of financial issues associated with the preparation of a draft expert report as it related to a supplier situation and in negotiation for trade terms.

In addition, FTI provided guidance and assistance to the Debtors with the development of a supplier term extension initiative whose objective is to return suppliers to more normal trade terms. FTI performed analyses to support supplier negotiations and assist in prioritizing these efforts. FTI also assisted with the development and further refinement of a supplier database designed to assist the Debtors in achieving their working capital improvement targets and the creation of training materials to support these efforts. This project is important to enhancing the Debtors' cash flow, which will reduce debt requirements and enhance value to the constituencies.

### *Supplier Contract Assumption/Extension*

During the Application Period, FTI assisted the Debtors with developing and analyzing information required to support the assessment of business cases for contract assumption during the period February 1, 2007 through May 1, 2007. Specifically, FTI personnel assisted the Debtors' lead negotiators in quantifying the impact on the Estate of various contract assumption options, including the impact of term changes, resourcing costs, and price changes. FTI assisted the Debtors in preparing summaries describing the goods supplied under the contracts to be

assumed, their criticality to the Debtors' operations, the supplier relationship and history of negotiations, and the terms of the assumption. Assistance was provided to the Debtors in estimating the value of preference waivers to the Estate and in reconciling prepetition claims under the contracts to be assumed.

FTI also participated in regular contract assumption review meetings with the Debtors, Debtors' Counsel, and Advisors to the UCC. FTI assisted the Debtors in providing data on the number of conforming and non-conforming settlements, settlement amounts, annual purchasing volumes, and estimated preference waivers to Delphi personnel and the UCC.

An essential component of the Debtors' transformation strategy is the sale of non-core businesses. To maximize the value of such sales, it is important to ensure that contracts relating to these operations are assumed and transferred along with the assets. During this fee period, FTI assisted the Debtors in further refining the process to identify contracts eligible for assumption related to certain of the non-core businesses and to estimate the associated cure costs of those contracts. FTI participated in planning and strategy sessions associated with the contract assumption and cure calculation process, including the development of presentation materials. Finally, FTI analyzed purchase order, accounts payable and other supplementary data in order to identify contracts eligible for assumption and to assist in the cure costs estimation process.

FTI's work with respect to the business operations area has greatly benefited the Estate. Our efforts have assisted the Debtors in appropriately using the relief granted by the Court to ensure continuation of supply and operations. In particular, FTI's assistance in communicating and negotiating with suppliers and in the supplier contract assumption process has been a significant contributor to an uninterrupted supply chain. In addition, our work has also benefited the Debtors' cash flow management process. FTI's involvement has enhanced the Company's ability to project and manage liquidity, improve working capital, and to ensure that appropriate contracts relating to the sale businesses are assumed and transferred to the buyers.

7

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Behnke, Thomas | Managing Director | $    590.00 | 2.7 | $     1,593.00 |
| Concannon, Joseph | Consultant | $    365.00 | 10.6 | 3,869.00 |
| Eisenberg, Randall | Senior Managing Director | $    675.00 | 3.5 | 2,362.50 |
| Emrikian, Armen | Managing Director | $    545.00 | 1.6 | 872.00 |
| Fletemeyer, Ryan | Director | $    480.00 | 7.4 | 3,552.00 |
| Gildersleeve, Ryan | Director | $    480.00 | 5.5 | 2,640.00 |
| Guglielmo, James | Managing Director | $    590.00 | 6.8 | 4,012.00 |
| Gujral, Pankaj | Consultant | $    325.00 | 3.5 | 1,137.50 |
| Karamanos, Stacy | Director | $    450.00 | 10.7 | 4,815.00 |
| Kuby, Kevin | Senior Managing Director | $    615.00 | 208.6 | 128,289.00 |
| McKeighan, Erin | Associate | $    250.00 | 3.2 | 800.00 |
| Schondelmeier, Kathryn | Consultant | $    290.00 | 6.0 | 1,740.00 |
| Stevning, Johnny | Consultant | $    420.00 | 104.4 | 43,848.00 |
| Weber, Eric | Director | $    405.00 | 377.2 | 152,766.00 |
| Wehrle, David | Director | $    535.00 | 240.1 | 128,453.50 |
| Total | | | 991.8 | $    480,749.50 |

## 4 - CASE ADMINISTRATION:

### Assistance with various Motions

FTI assisted the Debtors and Debtors' Counsel with reviewing and analyzing certain financial analyses and other data related to various motions and notices that have been filed during this fee period or in a subsequent period.  During this fee period, in addition to various lease-related renewals and rejection notices, FTI assisted the Debtors with analyzing and reviewing the financial support and business cases for the certain key motions and matters that will continue to further the Debtor's transformation plan.  Such motions included the Lease Transaction Motion which will strategically consolidate Delphi's engineering footprint in southeast Michigan and provide benefits resulting from lower operating costs and lower required headcount; the IT Application Maintenance and Support Motion which comprises a portion of

the Debtor's overall plan to consolidate and outsource the IT functions and transition to common processes and systems; and the Financial Transaction Outsourcing Motion which provides for the outsourcing of certain "back-office" functions such as the Debtor's accounts receivable, accounts payable and other processes.

In performing these analyses, FTI met with the appropriate Debtor personnel and Counsel, discussed the costs and benefits of the relief being sought, and reviewed the underlying calculations and supporting data. The inclusion of this financial data within these motions was important in providing accurate facts and circumstances to the Court and provide assurance and examples to parties in interest of the Debtor's positive steps toward a successful transformation

### Monthly Operating Reports

During the Fifth Interim Fee Period, FTI worked closely with the Debtors to review and analyze each of the Monthly Operating Reports required to be filed with the Bankruptcy Court. As part of this process, analysis was performed on significant variances from prior months, and footnotes and disclosures were reviewed.

### Case Administration

FTI established project teams and developed reporting protocols to facilitate engagement management. Time expended in this category includes reviewing case calendars and case administration materials filed with the Court, updating FTI's conflict checks and preparing Supplemental Affidavits of Disinterestedness. In addition, FTI incurred hours to maintain compliance with certain guidelines established by the Delphi Fee Review Committee. These hours were limited and valuable to the overall project planning of this engagement and ensured services were provided in the most efficient and effective manner.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

9

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Behnke, Thomas | Managing Director | $    590.00 | 0.5 | $        295.00 |
| Dana, Steven | Director | $    450.00 | 1.5 | 675.00 |
| Eaton, Mark | Managing Director | $    545.00 | 0.4 | 218.00 |
| Eisenberg, Randall | Senior Managing Director | $    675.00 | 24.6 | 16,605.00 |
| Emrikian, Armen | Managing Director | $    545.00 | 4.9 | 2,670.50 |
| Fletemeyer, Ryan | Director | $    480.00 | 25.6 | 12,288.00 |
| Frankum, Adrian | Senior Managing Director | $    630.00 | 23.4 | 14,742.00 |
| Guglielmo, James | Managing Director | $    590.00 | 38.2 | 22,538.00 |
| Johnston, Cheryl | Paraprofessional | $    180.00 | 2.1 | 378.00 |
| Karamanos, Stacy | Director | $    450.00 | 15.7 | 7,065.00 |
| Kuby, Kevin | Senior Managing Director | $    615.00 | 44.5 | 27,367.50 |
| McDonagh, Timothy | Consultant | $    295.00 | 0.3 | 88.50 |
| O'Neill, John | Consultant | $    250.00 | 3.9 | 975.00 |
| Schondelmeier, Kathryn | Consultant | $    290.00 | 3.0 | 870.00 |
| Swanson, David | Consultant | $    290.00 | 11.7 | 3,393.00 |
| Weber, Eric | Director | $    405.00 | 32.5 | 13,162.50 |
| Wehrle, David | Director | $    535.00 | 0.6 | 321.00 |
| Wu, Christine | Director | $    510.00 | 10.2 | 5,202.00 |
| Concannon, Joseph | Consultant | $    365.00 | 0.3 | 109.50 |
| Sub-Total | | | 243.9 | $    128,963.50 |
| Less: Fee Accomodation | | | | (2,500.00) |
| Total | | | 243.9 | $    126,463.50 |

## 5 - CLAIMS ADMINISTRATION AND OBJECTIONS:

### Claims Management

FTI is assisting the Debtors' Claims Resolution Team in their efforts to reconcile, object to, estimate allowed values, and resolve proofs of claims filed against the Debtors in these Chapter 11 proceedings. In order to maximize the cost-effectiveness of the claims management process, the Claims Resolution Team is primarily comprised of Debtor personnel, as well as staff from a temporary employment agency, and supported by a smaller group of professionals from Skadden and FTI. Due to the complexity of these cases, the large number of creditors who filed proofs of claim against the Debtors and a high number of cross functional issues that need to be considered as part of the reconciliation (including creditor settlements, postpetition payments, reclamations, etc.), FTI assembled a team of professionals with significant experience in the

complex bankruptcy claims reconciliation process to assist the Debtors in this area.  To-date, creditors have filed over 16,600 proofs of claim that require reconciliation and analysis.

FTI's assistance in the claims management area includes all aspects of claims management and claims resolution.  Utilizing our bankruptcy Claims Management System ("CMS"), FTI has established a multi-user, computer information system environment designed to manage the Debtors' scheduled liabilities and proofs of claim.  The Debtors use and rely on CMS to track the progress and status of each proof of claim, perform analysis of claims, object to claims and generate various management reports.  The CMS database server and software is available via a secure internet protected environment that provides the Debtors and their advisors access to claims related information.

In addition to maintaining CMS for the Debtors, FTI also assisted the Debtors in establishing and managing the claims resolution process.  This includes (i) assisting in the preparation of and modification to claims resolution protocols and training materials describing in detail the claims resolution process and resolution tasks to be completed;  (ii) training the Claims Resolution Team members on the process and the tasks associated with claims reconciliation, including tracking claim resolutions, identifying claims for objection and reporting on claims; (iii) participation in working sessions with the Debtors and counsel to resolve issues and develop strategies regarding case specific complexities; and iv) updating and reporting on preliminary estimates of allowed claim amounts which are critical to development of a Plan of Reorganization and continued negotiations with constituencies.

FTI also performed various analytical and database management tasks including, (i) generating reports on each claim batch, including duplication and schedule matching reports, nature of claim triage reports and claim status used by the Claims Resolution Team to manage the resolution process; (ii) developing and generating management reports that summarize the claims population and identify the status and progress of the reconciliation process; (iii) performing data analytics, such as complex database queries to identify data exceptions,

identification of proof of claim to schedule matching, identification of claims requiring objection, and adding additional data fields into CMS, as required.

Also during this Application Period, FTI assisted the Debtors and their counsel in filing eight omnibus claims objections and in performing additional complex analyses pertaining to claims. The assistance that FTI's Claim Management professionals provided the Debtors included (i) development of protocols to determine proper treatment of claims to be objected to; (ii) identification of claims meeting the objection criteria; (iii) performing due diligence on claims that were the subject to the objection; and (iv) generating objection exhibits and mail files for the almost 3,800 claims associated with these objections. In addition, FTI assisted the Debtors in creating claim exhibits and mail files associated with eight omnibus claim objection orders, expunging over 650 claims with a total asserted claim value of almost $46 million and ordering almost 2,400 claims modified with a claim amount reduction of almost $18 million.

Additionally, FTI assisted the Debtors in performing a proofs of claim analysis to support the Debtors', Debtors' counsel and analyses related to substantive consolidation.

### *Reclamations*

During the Fifth Interim Fee Period, FTI worked with the Debtors to continue the reclamations process. FTI assisted the Debtors in: (i) supervising the claims management process; (ii) responding to supplier inquiries and disputes; (iii) evaluating and reconciling claims; (iv) reviewing claim amendments to ensure consistency and accuracy; (v) preparing amended Statements of Reclamation; (vi) negotiating settlement agreements; and (vii) coordinating data retrieval from other supplier-related processes to incorporate into the reclamations process. Throughout the Application Period, FTI was actively involved in supplier negotiations, including discussions with suppliers, suppliers' counsel, Debtors' Counsel and Delphi Global Supply Management representatives. In addition, FTI provided regular support to 3 reclamation case managers and related support teams, and coordinated activities with the claims management process.

Throughout the reclamations process, FTI provided regular status updates on the reclamations process. Weekly tracking, monitoring and reporting was prepared and distributed regarding the reclamations process. In addition, FTI participated in meetings with the Debtors' reclamation team to ensure that issues were identified and addressed in a timely manner.

Delphi's reclamation claims process is one of the largest in history. The Debtors received 855 reclamation claims, which represented over 100,000 invoice lines of data and $287 million of potential administrative claims. FTI's work on the reclamations process has been essential to the smooth and equitable resolution (still subject to Court order) of approximately 91% of the claims received.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Hours | Fees |
|---|---|---|---|---|
| Behnke, Thomas | Managing Director | $ 590.00 | 506.4 | $ 298,776.00 |
| Cartwright, Emily | Consultant | $ 250.00 | 3.3 | $ 825.00 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 19.3 | $ 13,027.50 |
| Emrikian, Armen | Managing Director | $ 545.00 | 2.9 | $ 1,580.50 |
| Fletemeyer, Ryan | Director | $ 480.00 | 0.8 | $ 384.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 6.5 | $ 4,095.00 |
| Gildersleeve, Ryan | Director | $ 480.00 | 213.8 | $ 102,624.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 4.1 | $ 2,419.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 3.3 | $ 2,029.50 |
| Lewandowski, Douglas | Consultant | $ 335.00 | 1.8 | $ 603.00 |
| Li, Danny | Director | $ 510.00 | 0.4 | $ 204.00 |
| McDonagh, Timothy | Consultant | $ 295.00 | 40 | $ 11,800.00 |
| McKeighan, Erin | Consultant | $ 250.00 | 389.7 | $ 97,425.00 |
| Robinson, Josh | Director | $ 480.00 | 3.1 | $ 1,488.00 |
| Stevning, Johnny | Consultant | $ 420.00 | 0.5 | $ 210.00 |
| Triana, Jennifer | Consultant | $ 395.00 | 504.2 | $ 199,159.00 |
| Uhl, Michael | Consultant | $ 365.00 | 1.0 | $ 365.00 |
| Wu, Christine | Director | $ 510.00 | 16.1 | $ 8,211.00 |
| Total | | | 1,717.20 | $ 745,225.50 |

## 7 - FEE/EMPLOYMENT APPLICATIONS:

### Fee Application Process

FTI expended necessary resources to ensure the timely filing of monthly fee statements in accordance with the Administrative Order Pursuant to 11 U.S.C. Sections 105(a) and 331 Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals dated November 4, 2005.

Time expensed in this category includes preparing the Monthly Fee Statements for the fee periods of February 2007 through May 2007. FTI also prepared the Fourth Interim Fee Application that was filed with the Court on March 30, 2007.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Crisalli, Paul | Managing Director | $    545.00 | 2.2 | $      1,199.00 |
| Eisenberg, Randall | Senior Managing Director | $    675.00 | 18.6 | 12,555.00 |
| Emrikian, Armen | Managing Director | $    545.00 | 1.5 | 817.50 |
| Frankum, Adrian | Senior Managing Director | $    630.00 | 13.5 | 8,505.00 |
| Guglielmo, James | Managing Director | $    590.00 | 2.3 | 1,357.00 |
| Johnston, Cheryl | Paraprofessional | $    180.00 | 256 | 46,080.00 |
| Kuby, Kevin | Senior Managing Director | $    615.00 | 99.5 | 61,192.50 |
| Li, Danny | Director | $    510.00 | 0.9 | 459.00 |
| O'Neill, John | Consultant | $    250.00 | 466.0 | 116,500.00 |
| Swanson, David | Consultant | $    290.00 | 124.7 | 36,163.00 |
| Wu, Christine | Director | $    510.00 | 0.4 | 204.00 |
| Sub-Total | | | 985.6 | $   285,032.00 |
| Less: Fee Accomodation | | | | (80,000.00) |
| Total | | | 985.6 | $   205,032.00 |

## 9 - FINANCING:

### DIP Financing/Treasury

As noted in our prior fee applications, FTI transitioned the analysis utilized for the review and evaluation of variances between the monthly actual results and the DIP projections to the Company.  The smooth transitioning of both the variance analysis and DIP projection model helped to ensure continued compliance with the DIP requirements, while reducing the costs of maintaining these analyses to the Estate.  FTI also assisted the Company in preparing and

reviewing a revised DIP projection model for its lending group in March 2007 that more closely corresponded to the relevant assumptions and estimates utilized in the business plan forecasts developed in early 2007. FTI continued to provide management with guidance on the preparation of the variance explanations that accompany the DIP projection reports during the Fourth Interim Fee Period.

Furthermore, advice was provided related to the ongoing day-to-day Treasury functions, which included assistance with required borrowing base reporting, development of various covenant and liquidity analyses based on sensitivities, as well as other general support.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|------|----------|-----------|-------------|------------|
| Concannon, Joseph | Consultant | $   365.00 | 74.6 | $   27,229.00 |
| Eisenberg, Randall | Senior Managing Director | $   675.00 | 5.6 | 3,780.00 |
| Emrikian, Armen | Managing Director | $   545.00 | 11.9 | 6,485.50 |
| Fletemeyer, Ryan | Director | $   480.00 | 0.4 | 192.00 |
| Frankum, Adrian | Senior Managing Director | $   630.00 | 0.5 | 315.00 |
| Guglielmo, James | Managing Director | $   590.00 | 25.9 | 15,281.00 |
| Sub-Total | | | 118.9 | $   53,282.50 |
| Less: Fee Accomodation | | | | (5,000.00) |
| Total | | | 118.9 | $   48,282.50 |

## 10 - LITIGATION:

### 1113/1114 Analysis and Negotiations Pertaining to Collective Bargaining Agreements

FTI assisted the Debtors in negotiations with its Unions during this interim fee period. FTI has continued to assist the Debtors in keeping certain Union's financial advisors informed of new developments in the case and fulfilling information requests from the Unions and their advisors for financial, operational and labor-related data, all of which has assisted in lending to constructive dialogue and negotiations between the Debtors and the Unions. FTI has been tasked to coordinate information sharing with both Chanin Capital Partners for the IUE-CWA and Potok Co., Inc. for the USW. In this process, FTI reviewed specific information requests from

these two firms, determined who at the Company could best fulfill the request, reviewed proposed replies for responsiveness and accuracy, scheduled and conducted meetings between Company personnel and the requesting party, and followed-up to ensure that all information requests were appropriately fulfilled in a timely fashion.

During this period, FTI arranged for and participated in at least 10 separate meetings or conference calls with Chanin representatives and reviewed and forwarded approximately 15 documents and/or data files relative to their specific information requests. Similarly, FTI arranged for and participated in several conference calls with Potok to update them on significant case matters, including updated Delphi forecasts and divestiture activity. During this fee period, FTI was particularly active in advising the Debtors on labor negotiations with the IUE-CWA national and local bargaining teams. FTI's role in advising the Debtors and interacting with the Debtors' unions and their advisors has brought significant benefits to the estate by assisting in the bargaining efforts to arrive at an anticipated consensual resolution of the Company's labor issues, a key aspect of the transformation plan.

### Economic Consulting Services

During the Application Period, FTI provided economic consulting services to the Debtors related to securities and ERISA class action suits filed against the Debtors. In order to advise the Debtors, FTI conducted extensive industry research, collected a wide array of data, developed analytical models, and performed various analyses on industry trends, market performance, security transactions and other related matters. FTI's economic consulting professionals have years of experience advising clients in similar cases and has used this experience to provide significant insight to the Debtors in the evaluation of these cases. Furthermore, FTI utilized its integrated system of computer, data handling and data analysis capabilities to effectively manage and analyze the large quantity of data relevant to these litigation proceedings.

A summary of the hours incurred and total fees by each professional for the foregoing services are provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Affelt, Amy | Consultant | $ 315.00 | 3.0 | $ 945.00 |
| Balakrishnan, Rithvik | Consultant | $ 285.00 | 16.9 | $ 4,816.50 |
| Brighoff, Benjamin | Consultant | $ 300.00 | 7.0 | $ 2,100.00 |
| Clayburgh, Peter | Director | $ 325.00 | 25.9 | $ 8,417.50 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 24.9 | $ 16,807.50 |
| Fischel, Daniel | Senior Managing Director | $ 1,000.00 | 2.0 | $ 2,000.00 |
| Fletemeyer, Ryan | Director | $ 480.00 | 25.0 | $ 12,000.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 1.8 | $ 1,134.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 88.4 | $ 52,156.00 |
| Hong, Donald | Consultant | $ 300.00 | 1.0 | $ 300.00 |
| Maffei, Jeffrey | Consultant | $ 315.00 | 72.5 | $ 22,837.50 |
| Park, Jaewan | Consultant | $ 280.00 | 7.0 | $ 1,960.00 |
| Tolocka, Eric | Consultant | $ 260.00 | 90.7 | $ 23,582.00 |
| Vinogradsky, Eugenia | Director | $ 365.00 | 11.4 | $ 4,161.00 |
| Warther, Vincent | Senior Managing Director | $ 540.00 | 38.5 | $ 20,790.00 |
| Zimmermann, Deborah | Consultant | $ 390.00 | 0.5 | $ 195.00 |
| Computer Capability Fees | | | | 15,689.62 |
| Total | | | 416.5 | $ 189,891.62 |

## 11 - MEETINGS OF CREDITORS:.

### Fulfill Information Requests and Participate in Meetings with Unsecured Creditors Committee ("UCC") and its Advisors

FTI provided significant value to the Estate in advising the Debtors on numerous matters involving the UCC. FTI's role included coordinating and fulfilling numerous requests from the UCC and its advisors for financial and operational data pertaining to the Debtors. On a monthly basis, FTI assisted the Debtors and Counsel in the preparation and presentation of extensive materials for the scheduled monthly meetings with the UCC and its advisors regarding the status of the Debtors' reorganization, significant case updates and key issues.

On an ongoing basis, FTI also worked with the Company to efficiently and effectively manage, coordinate and fulfill the requests for information and meetings/conference calls received from the financial advisors to the UCC. FTI reviewed specific information requests,

determined who at the Company could best fulfill the request, scheduled and conducted meetings between Company personnel and the requesting party, and followed up to ensure that information requests were appropriately responded to.  During this four-month fee period ending May 2007, FTI had, on behalf of the Debtors, reviewed and provided to the UCC's advisors approximately 180 individual documents (over 1,200 documents since inception of the case) related to various information requests received on topics including, but not limited to, First Day Order Compliance, supplier management, framework negotiations, Transformation Plan, 2007-2011 Budget Business Plan projections and analyses, claims information and estimates, reclamations data, customer setoff materials, and settlement and lift-stay procedures reporting.

FTI has also organized and created presentations for numerous on-site and telephonic conference meetings with the UCC advisors and various key personnel in the Debtors' organization to respond to inquiries.  FTI's efforts in this area have assisted the Debtors in keeping the UCC and their advisors informed of new developments in the case and helped to maintain an effective working relationship with the UCC and their advisors.


### Information Requests/Meetings with Other Stakeholder Groups (AD Hoc Trade Committee)

FTI provided value to the Estate in coordinating communication efforts and fulfilling requests from several other stakeholder groups regarding financial and operational data pertaining to the Debtors.  On an ongoing basis, FTI worked with the Company to efficiently and effectively manage, coordinate and fulfill the requests for information and meetings/conference calls received from the financial advisors to the Ad Hoc Trade Committee.

During the Application Period, FTI has continued to fulfill a critical role with respect to advising on matters pertaining to various stakeholders, and coordinating and managing information requests from the various stakeholders and their respective advisors in these cases. This aspect of FTI's involvement was essential to ensuring that continuous and constructive progress can be made towards a consensual plan of reorganization.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Behnke, Thomas | Managing Director | $ 590.00 | 65.8 | $ 38,822.00 |
| Concannon, Joseph | Consultant | $ 365.00 | 12.5 | $ 4,562.50 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 66.2 | $ 44,685.00 |
| Emrikian, Armen | Managing Director | $ 545.00 | 2.3 | $ 1,253.50 |
| Fletemeyer, Ryan | Director | $ 480.00 | 163.1 | $ 78,288.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 50.3 | $ 31,689.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 157.6 | $ 92,984.00 |
| Karamanos, Stacy | Director | $ 450.00 | 3.8 | $ 1,710.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 2.0 | $ 1,230.00 |
| McDonagh, Timothy | Consultant | $ 295.00 | 6.4 | $ 1,888.00 |
| McKeighan, Erin | Consultant | $ 250.00 | 5.4 | $ 1,350.00 |
| Triana, Jennifer | Consultant | $ 395.00 | 0.7 | $ 276.50 |
| Weber, Eric | Director | $ 405.00 | 27 | $ 10,935.00 |
| Wehrle, David | Director | $ 535.00 | 3.2 | $ 1,712.00 |
| Wu, Christine | Director | $ 510.00 | 40.9 | $ 20,859.00 |
| Total | | | 607.2 | $ 332,244.50 |

## 12 - PLAN AND DISCLOSURE STATEMENT:.

FTI provided valuable support to the Debtors during this fee period by assisting in many aspects of the framework negotiations and the development of the underlying financial projections and analyses supporting these stakeholder negotiations. The framework term sheet and associated projections will form the foundation for a plan of reorganization, thus, FTI's support and advice to the Debtor in this key area has been essential to the prospects of a successful reorganization. In addition, we continued to perform and refine various analyses necessary for the Disclosure Statement.

FTI provided value-added assistance to the Debtors in relation to the framework negotiations between various stakeholders. The updated framework analyses developed by the Debtors, with the assistance of both Rothschild and FTI, utilized the Company's current financial forecasts, and the negotiated term sheet between the Debtors and key constituents. FTI's

guidance and advice was essential during this process due to our familiarity with the Debtors' existing business models, recent financial results and liquidity trends, as well as our active participation in negotiations with key stakeholders and our efforts relating to the Plan Sponsors' due diligence process.   FTI assisted the Debtor with its modeling efforts, performed sensitivity analyses on working capital and liquidity trends and developed specific cash analyses to support the negotiations.    In addition, FTI provided constructive advice and analyses relating to proposals from and negotiations with various Unions, General Motors and the Plan Investors.

FTI was also actively involved in the Plan of Reorganization and Disclosure Statement development process during this fee period.  In this role, FTI participated in numerous strategic meetings with counsel and management regarding the Plan of Reorganization and provided analyses to support the discussions and decision making process.  FTI worked with the Debtors to commence the development of the financial projection format and continued to refine and update both the Hypothetical Liquidation and Substantive Consolidation analyses for use in developing the Plan of Reorganization.

During the Application Period, FTI assisted in continuing to prepare a preliminary draft of a hypothetical Chapter 7 liquidation analysis, the final version of which will ultimately be included in the Disclosure Statement as required by the Bankruptcy Code.  While still a work-in-process, this detailed analysis included the development of a comprehensive and iterative model to calculate expected distributions that would be made to class of creditors for Debtors in a Chapter 7 liquidation.  .

In performing the hypothetical liquidation analyses, FTI assisted with developing assumptions through consultation with the Debtors, its counsel and other advisors. In this process, FTI conducted numerous interviews with Company personnel, reviewed and evaluated Company financial statements and supporting schedules, analyzed various third party information, and utilized its industry experience.   During this fee Application Period, FTI performed various updates and refinements to the hypothetical liquidation analysis.

During this Application Period and under direction of Debtors' Counsel, FTI continued preparation of a preliminary substantive consolidation analysis. As part of this effort, FTI focused on specific areas in collaboration with Debtors' Counsel and assembled information, held discussions with Delphi personnel, performed various analyses, and prepared preliminary summaries evaluating factors related to substantive consolidation. Regular telephonic conferences were held with Debtors' Counsel throughout the process to discuss progress, key findings and subsequent required analyses.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Behnke, Thomas | Managing Director | $ 590.00 | 14.7 | $ 8,673.00 |
| Cartwright, Emily | Consultant | $ 250.00 | 120.7 | $ 30,175.00 |
| Concannon, Joseph | Consultant | $ 365.00 | 50.9 | $ 18,578.50 |
| Dana, Steven | Director | $ 450.00 | 0.4 | $ 180.00 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 145.5 | $ 98,212.50 |
| Emrikian, Armen | Managing Director | $ 545.00 | 29.7 | $ 16,186.50 |
| Fletemeyer, Ryan | Director | $ 480.00 | 320.7 | $ 153,936.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 232.1 | $ 146,223.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 200.4 | $ 118,236.00 |
| Hofstad, Ivo | Director | $ 450.00 | 0.5 | $ 225.00 |
| Imburgia, Basil | Senior Managing Director | $ 600.00 | 1.5 | $ 900.00 |
| Ingle, Suaan | Director | $ 300.00 | 0.5 | $ 150.00 |
| Karamanos, Stacy | Director | $ 450.00 | 78.5 | $ 35,325.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 106.4 | $ 65,436.00 |
| Li, Danny | Director | $ 510.00 | 61.6 | $ 31,416.00 |
| McDonagh, Timothy | Consultant | $ 295.00 | 14.6 | $ 4,307.00 |
| McKeighan, Erin | Consultant | $ 250.00 | 3.0 | $ 750.00 |
| Meyers, Glenn | Managing Director | $ 475.00 | 81.8 | $ 38,855.00 |
| Swanson, David | Consultant | $ 290.00 | 67.7 | $ 19,633.00 |
| Weber, Eric | Director | $ 405.00 | 24.5 | $ 9,922.50 |
| Whitford, Scott | Consultant | $ 225.00 | 3.5 | $ 787.50 |
| Wu, Christine | Director | $ 510.00 | 58.3 | $ 29,733.00 |
| Sub-Total | | | 1617.5 | $ 827,840.50 |
| Less: Fee Accomodation | | | | (25,000.00) |
| Total | | | 1617.5 | $ 802,840.50 |

## 16 - BUSINESS ANALYSIS:

### Business Plan Modeling and Analysis

The development and presentation of financial projections, scenarios and analyses has been essential to many facets of this case, from developing a strategy for reorganization to educating various stakeholders about the Company and its Transformation Plan to critical court proceedings and negotiations.  During the Fifth Interim Fee Period, FTI worked intensively to complete the Preliminary Budget Business Plan ("BBP") financial model and outputs in the various modules (Consolidation module, Regional OCF module, and Product Business Unit P&L module) of the Product Business Unit model.  This work involved the review, analysis and incorporation of multiple income statement, balance sheet and cash flow overlays into the modules, as well as revisions to the modules to accommodate business plan changes.  Upon completion of the Preliminary BBP financial projections, FTI also assisted in preparing various associated management and Board of Directors' presentations.

As part of the business planning process, we continued to engage in periodic meetings with the Company to discuss the treatment of various items in the PBU model and to conduct comprehensive review sessions.

Following the completion of the Preliminary BBP, FTI continued to work with key Company personnel to address information needs for updates and for the Final BBP.  We worked with Company tax, accounting, and employee benefits professionals to refine tax, cancellation of debt, and fresh start accounting assumptions to be included in the Final BBP.

FTI also worked to incorporate relevant 2007 forecast items into the consolidation module.  We reviewed the Company's divisional 3 + 9 income statement forecast to assist in determining its impact upon the 2007 and subsequent year projections.   The 3+9 forecast was subsequently incorporated into the Consolidation module and also select balance sheet accounts and cash flow items were adjusted to account for the impact of first quarter actual results.

FTI also assisted in various other business plan related efforts during the Fifth Interim Fee Period at the Company's request.  For example, we were involved in an analysis of various non-continuing site level working capital projections for purposes of negotiations of the sale of non-core businesses.  In addition, summary analyses of each division's regional Preliminary BBP projections were developed for use in discussions with plan investors and key constituents.  At the Company's request, various summary analyses were also prepared highlighting key elements of each Product Business Unit's financial results for use by management.

The Product Business Unit model is a critical tool to the Debtors that will continue to support operational and strategic management decision making, negotiations with various constituencies, exit financing, and the Plan of Reorganization and Disclosure Statement.  FTI has made substantial, value-added contributions to the Debtors' business plan modeling efforts that will allow for the availability of timely and critical financial projection information during the course of the Company's business planning cycle and through the process of formulating its Plan of Reorganization.

***Budget Development and Business Plan Analysis Support***

During the course of the Fifth Interim Fee Period, FTI played a pivotal role in refining, updating and analyzing the 2007–2011 Budget Business Plan financial projections, which has been integral to  most of the significant aspects of the Debtors reorganization, including labor negotiations, plan sponsor diligence efforts, framework discussions, valuation calculations, and the Plan of Reorganization and Disclosure Statement.  As part of this process, FTI assisted in analyzing and compiling information to develop and refine key assumptions for the Preliminary BBP.  Significant activities included: preparing detailed working capital analyses by division by region for review with divisional finance personnel, analyzing cash and expense impacts of various restructuring initiatives by division and by region, and analyzing the income statement and balance sheet impact of joint venture activity.

Following the distribution of the Preliminary BBP, FTI assisted in developing presentations regarding and communicating certain elements of the Preliminary BBP to Plan Investors and other constituents. FTI participated in calls with the Plan Investors and their advisors to explain key balance sheet assumptions, including working capital and restructuring impacts. FTI also developed various analyses requested by the Plan Investors, including, but not limited to, the quantification of customer contributions to the Preliminary BBP and the comparison of working capital assumptions to historical performance.

Once first quarter actual results were finalized, FTI performed a detailed analysis of actual income statement, balance sheet, and cash flow statement performance relative to the Preliminary BBP. After completing this analysis, we followed up extensively with each division to understand key performance variances to the Preliminary BBP, with an emphasis on working capital variances. As part of this process, FTI assisted the divisions in identifying and quantifying the reasons behind observed variances. This plan to actual analysis was critical for supporting the validity of the projected results and for identifying assumptions for further refinement in the Final BBP.

FTI was also closely involved in the assessment of headquarters cost allocations to the divisions. We assisted the Company develop allocation methodologies for the Final BBP based on analyses of historical methodologies and conversations with divisional finance personnel.

FTI also assisted in various other important business planning activities, as requested by the Company. These activities included: compiling a comprehensive back-up book including summary and support schedules highlighting key assumptions in the Preliminary BBP, assessing unsecured claims estimations relative to liabilities subject to compromise to support the future modeling of liability settlement in the Final BBP, and maintaining a master list of potential overlays for the Final BBP.

The business plan development services rendered by FTI during the Fifth Fee Period were essential to the overall reorganization process. As noted above, the Debtors' Budget Business Plan is critical to the most significant aspects of the reorganization. It is also an

essential operational tool that enables management to form  strategic plans, establish budgets and to manage the business.

### 2008 Budget Planning Process

During the Fifth Interim Fee Period, FTI assisted with various aspects of the 2008 budget planning process, including evaluation of the current budgeting process, preparation of an integrated model and detailed templates for purposes of streamlining and improving the current budgeting process.  Initial assessment of the existing budgeting process allowed FTI to determine areas which could be streamlined or improved in efficiency.  FTI managed the project, establishing timelines and deliverables and gathering information within the Company to understand the financial mapping requirements.  To facilitate the process, FTI participated in regular meetings with Company staff and management as they are integral to the process and the development of budgeting requirements. FTI regularly prepared presentations for meetings with various company personnel to drive progress, illustrate strategic options and apprise the Company of the model's status and issues.  FTI established and mapped the model structure and also prepared an initial draft of the various divisional submission templates.  FTI also assisted in preparing a revised detailed restructuring submission template for the divisions to assist the Company in analyzing its restructuring cash and expenses in the 2008 budget.

### Restructuring Strategy

Senior professionals at FTI participated in regular meetings with key advisors and senior management to discuss and advise them on a multitude of strategic restructuring issues throughout the case.  FTI professionals also assisted the Debtors in preparing certain information and analyses for meetings held among the senior management and its advisors.

During the Application Period, FTI contributed significant value in the business analysis area.  In particular, FTI provided substantial contributions to the Debtor's business planning process, related presentations and analyses.  The business plan is central to the Company's

restructuring and will serve as the basis for many of the most significant restructuring aspects of the case, including labor negotiations, plan sponsor diligence efforts, framework discussions, valuation calculations and the Plan of Reorganization and Disclosure Statement.  FTI played a critical role in virtually every aspect of the Company's business planning process, from constructing and refining the business plan model to analyzing, assembling and vetting an enormous amount of data to support and refine the plan.  In addition, FTI participated in numerous business planning and restructuring meetings with senior management and key advisors to address strategic issues during the fee period, further enhancing the value of the Estate.

FTI's participation in these meetings with key advisors and senior management as well as their development of supplemental analyses to support these discussions were essential to ensure that issues were thoroughly presented, that views relating to them were formed after discussing appropriate strategic and tactical considerations, and that actions taken with respect to them were consistent in approach.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Beal, Brandon | Director | $ 480.00 | 292.2 | $ 140,256.00 |
| Behnke, Thomas | Managing Director | $ 590.00 | 3.7 | $ 2,183.00 |
| Concannon, Joseph | Consultant | $ 365.00 | 5.3 | $ 1,934.50 |
| Crisalli, Paul | Managing Director | $ 545.00 | 101.5 | $ 55,317.50 |
| Dana, Steven | Director | $ 450.00 | 415.4 | $ 186,930.00 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 95.2 | $ 64,260.00 |
| Emrikian, Armen | Managing Director | $ 545.00 | 505.7 | $ 275,606.50 |
| Fletemeyer, Ryan | Director | $ 480.00 | 8.6 | $ 4,128.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 167.0 | $ 105,210.00 |
| Gildersleeve, Ryan | Director | $ 480.00 | 1.2 | $ 576.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 4.9 | $ 2,891.00 |
| Karamanos, Stacy | Director | $ 450.00 | 659.0 | $ 296,550.00 |
| Krieg, Brett | Consultant | $ 395.00 | 10.8 | $ 4,266.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 45.0 | $ 27,675.00 |
| Lyman, Scott | Consultant | $ 335.00 | 83.2 | $ 27,872.00 |
| McDonagh, Timothy | Consultant | $ 295.00 | 403.7 | $ 119,091.50 |
| Quentin, Michele | Consultant | $ 395.00 | 446.5 | $ 176,367.50 |
| Swanson, David | Consultant | $ 290.00 | 222.3 | $ 64,467.00 |
| Weinsten, Mark | Senior Managing Director | $ 615.00 | 1.5 | $ 922.50 |
| Wu, Christine | Director | $ 510.00 | 348.0 | $ 177,480.00 |
| Sub-Total | | | 3820.7 | $ 1,733,984.00 |
| Less: Fee Accomodation | | | | (10,000.00) |
| Total | | | 3820.7 | 1,723,984.00 |

## 17 - CORPORATE FINANCE:

### Due Diligence Support

FTI professionals assisted various Delphi divisions, in coordinating and fielding numerous information requests from Plan Investors, and PwC.  FTI professionals worked on-site directly with the divisional financial professionals to prepare various analyses and presentations necessary to address questions, analyze and track data requests, coordinate diligence process and review financial information and reports responsive to various requests.

During the Application Period, FTI worked closely with headquarters and divisional financial professionals to assist with and support the comprehensive due diligence process undertaken both by the Plan Investors and PwC.  At the onset of the process, we participated in initial due diligence sessions with the Plan Investors and management from each division.  Following these initial sessions, FTI placed resources on-site at multiple divisions to work

locally with the management and finance teams to support due diligence at the divisional level. FTI worked directly with the Plan Investors and PwC to coordinate and manage extensive data requests and to filter and route requests to the appropriate divisional personnel.  We performed numerous analyses (related to both historical performance and Preliminary BBP projections) as requested.  FTI also actively participated in meetings with PwC on various elements of divisional business plans, including detailed sessions regarding site restructuring initiatives.  In addition, we worked closely with divisional management to prepare and refine comprehensive business plan presentations.  Finally, FTI, along with divisional management, conducted detailed reviews of the content and accuracy of PwC's draft comprehensive divisional reports prior to distribution of such reports to the Plan Investors and other key constituents.

The due diligence support services rendered by FTI during the Fifth Interim Fee Period were essential to the overall reorganization and plan negotiation process.  FTI's work and guidance in this area dramatically improved the efficiency and effectiveness of the due diligence process to aid Plan Investors in their due diligence efforts and facilitated the development by PwC of comprehensive reports that could be shared with potential plan investors and key constituents, further reducing the costs to the estates of the diligence process.  In part, as a result of the successful due diligence process, the Company was subsequently able to make substantial progress towards reaching agreements with General Motors, the Plan Investors and its various constituents.


***Sell-Side Transaction Support - AHG Cockpit & Instrument Panels ("CIS") and Integrated Closure Systems ("ICS")***

A significant aspect of the Debtors' Transformation Plan is effectuating the sale of certain non-core product lines.  The development of financial data for such businesses was essential to begin the marketing process.  FTI assisted the Debtors with respect to sell-side due diligence on certain product lines that the Debtor intends to sell, specifically Cockpit & Interior Systems ("CIS") and Integrated Closure Systems ("ICS").

28

As part of this work, FTI created a comprehensive financial model that mapped the product line "as reported" operating results (on a plant by plant basis), divisional and corporate allocations and various due diligence adjustments to arrive at the historical and forecasted pro forma stand-alone operating results, together with projected working capital requirements. The overall financial model was utilized by Delphi's investment banker, Rothschild, to populate the offering memorandums, and by Delphi's AHG group for incorporation into management presentations.

During the Fee Application Period, FTI assisted the Debtors in the sales process by participating in a conference call with potential buyers to address questions relating to the due diligence efforts.

A summary of the hours incurred and total fees by each professional for the foregoing services are provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|------|----------|-----------|-------------|------------|
| Abbott, Jason | Consultant | $ 395.00 | 226.4 | $ 89,428.00 |
| Beal, Brandon | Director | $ 480.00 | 11.6 | 5,568.00 |
| Concannon, Joseph | Consultant | $ 365.00 | 42.9 | 15,658.50 |
| Crisalli, Paul | Managing Director | $ 545.00 | 133.8 | 72,921.00 |
| Cristiano, John | Managing Director | $ 545.00 | 123.5 | 67,307.50 |
| Dana, Steven | Director | $ 450.00 | 26.2 | 11,790.00 |
| Eaton, Mark | Managing Director | $ 545.00 | 37.6 | 20,492.00 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 6.0 | 4,050.00 |
| Emrikian, Armen | Managing Director | $ 545.00 | 30.6 | 16,677.00 |
| Farrell, David | Managing Director | $ 545.00 | 0.9 | 490.50 |
| Fletemeyer, Ryan | Director | $ 480.00 | 12.8 | 6,144.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 77.9 | 49,077.00 |
| Gonzalez, Robert | Consultant | $ 275.00 | 18.5 | 5,087.50 |
| Guglielmo, James | Managing Director | $ 590.00 | 0.2 | 118.00 |
| Ho, Rocky | Senior Managing Director | $ 615.00 | 50.2 | 30,873.00 |
| Karamanos, Stacy | Director | $ 450.00 | 7.9 | 3,555.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 0.9 | 553.50 |
| McDonagh, Timothy | Consultant | $ 295.00 | 8.2 | 2,419.00 |
| Quentin, Michele | Consultant | $ 395.00 | 6.5 | 2,567.50 |
| Smalstig, David | Senior Managing Director | $ 615.00 | 1.9 | 1,168.50 |
| Wahl, Dustin | Managing Director | $ 565.00 | 79.5 | 44,917.50 |
| Weinstein, Mark | Senior Managing Director | $ 615.00 | 185.6 | 114,144.00 |
| Wu, Christine | Director | $ 510.00 | 14.0 | 7,140.00 |
| Sub-Total | | | 1103.6 | $ 572,147.00 |
| Less: Fee Accomodation | | | | (10,466.00) |
| Total | | | 1103.6 | $ 561,681.00 |

## *19 - LITIGATION CONSULTING:*

### Court Hearing Support

FTI prepared for and attended various Omnibus and motion specific Bankruptcy Court hearings during the Fifth Interim Fee Period. FTI advised the Debtors and Counsel as part of various strategic discussions held before, during and immediately after hearings. Various documents and certain demonstrative exhibits filed with the Court were also developed and reviewed, as needed, to prepare for hearings and to advise the Debtors, as necessary.

### Set-off Analysis

As part of the DIP Financing Order, the Court established procedures for the Debtors to follow with respect to customer set-off claims. Since the filing date, the Debtors have received over 105 set-off claims. FTI participated in weekly meetings with the Debtors and Counsel to monitor and respond to these numerous set-off requests. FTI worked with the Debtors at these meetings to ascertain the appropriateness of the set-off requests and assisted in developing summary reconciliations between the Debtors' detailed transaction records and set-off requests from claimants. In addition, FTI worked with the Debtors and counsel in reviewing the setoff amounts included in the final settlement agreements between the parties. As a result of these efforts, the Debtors have been able to resolve 79 of the setoff requests, of which approximately 17 were resolved during this fee application period. FTI's assistance in this process was instrumental to the Debtors in carefully evaluating and resolving these claims through the Court approval process.

### Virtual Data Room

FTI established virtual data rooms for the Debtors in order to effectively respond to numerous but similar requests for data and information in several critical areas of the

30

restructuring process, including 1113/1114 labor negotiations, management incentive programs and claims management.  The virtual data rooms were initiated in prior fee periods and have continued to be maintained and updated with additional information flow in these areas.

During this fee period, FTI expended efforts to maintain all of the data rooms, as well as to load documents and handle user-access related issues.  A key benefit of the data rooms is that they allow for a central electronic repository to house voluminous records and documents that have been requested by many of Delphi's labor union representatives and advisors; objecting parties to the AIP motions; and key stakeholder groups examining certain filed proof of claims in these proceedings.  The data rooms are available 24 hours a day, 7 days a week to authorized users, and allow the Debtors to provide timely and equal access to users.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|---|---|---|---|---|
| Banas, Nathan | Consultant | $ 200.00 | 1.1 | $ 220.00 |
| Band, Alexandra | Consultant | $ 280.00 | 3.1 | $ 868.00 |
| Behnke, Thomas | Managing Director | $ 590.00 | 3.6 | $ 2,124.00 |
| Concannon, Joseph | Consultant | $ 365.00 | 4.6 | $ 1,679.00 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 8.9 | $ 6,007.50 |
| Fletemeyer, Ryan | Director | $ 480.00 | 62.2 | $ 29,856.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 0.3 | $ 189.00 |
| Gildersleeve, Ryan | Director | $ 480.00 | 4.4 | $ 2,112.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 1.6 | $ 944.00 |
| Jackson, Duane | Consultant | $ 150.00 | 2.0 | $ 300.00 |
| Jones, Jr., Curtis | Consultant | $ 250.00 | 0.6 | $ 150.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 4.7 | $ 2,890.50 |
| Lewandowski, Douglas | Consultant | $ 335.00 | 1.2 | $ 402.00 |
| Pereida, Ruben | Consultant | $ 250.00 | 0.3 | $ 75.00 |
| Robinson, Josh | Director | $ 480.00 | 11.0 | $ 5,280.00 |
| Wagner, Cory | Consultant | $ 200.00 | 1.0 | $ 200.00 |
| Total | | | 110.6 | $ 53,297.00 |

As is customary with all of its Clients, FTI has charged amounts as reimbursable expenses for the establishment and maintenance of the virtual data rooms. The total charges in the Application period were $8,000.00.

*Travel*

Fees for travel time have been charged at one half (50%) of the actual time incurred, not to exceed a maximum limit as set based upon home locations.  Such travel time consists of: (i) travel to and from the client site in Troy, Michigan; (ii) travel to New York to attend various hearings and meetings; (iii) travel to and from various plant locations to assist with due diligence services; and (iv) travel to various locations for purposes of assisting with bankruptcy proceedings and related items.

A summary of the hours incurred and total fees by each professional for the foregoing services is provided in the following table:

| Name | Position | Bill Rate | Total Hours | Total Fees |
|------|----------|-----------|-------------|------------|
| Abbott, Jason | Consultant | $ 395.00 | 34.5 | $ 13,627.50 |
| Beal, Brandon | Director | $ 480.00 | 88.0 | $ 42,240.00 |
| Behnke, Thomas | Managing Director | $ 590.00 | 101.5 | $ 59,885.00 |
| Cartwright, Emily | Consultant | $ 250.00 | 12.0 | $ 3,000.00 |
| Concannon, Joseph | Consultant | $ 365.00 | 53.4 | $ 19,491.00 |
| Crisalli, Paul | Managing Director | $ 545.00 | 21.0 | $ 11,445.00 |
| Cristiano, John | Managing Director | $ 545.00 | 15.0 | $ 8,175.00 |
| Dana, Steven | Director | $ 450.00 | 63.0 | $ 28,350.00 |
| Eaton, Mark | Managing Director | $ 545.00 | 6.0 | $ 3,270.00 |
| Eisenberg, Randall | Senior Managing Director | $ 675.00 | 78.0 | $ 52,650.00 |
| Emrikian, Armen | Managing Director | $ 545.00 | 66.0 | $ 35,970.00 |
| Fletemeyer, Ryan | Director | $ 480.00 | 95.5 | $ 45,840.00 |
| Frankum, Adrian | Senior Managing Director | $ 630.00 | 87.0 | $ 54,810.00 |
| Gildersleeve, Ryan | Director | $ 480.00 | 12.0 | $ 5,760.00 |
| Gonzalez, Robert | Consultant | $ 275.00 | 4.0 | $ 1,100.00 |
| Guglielmo, James | Managing Director | $ 590.00 | 105.0 | $ 61,950.00 |
| Ho, Rocky | Senior Managing Director | $ 615.00 | 12.0 | $ 7,380.00 |
| Karamanos, Stacy | Director | $ 450.00 | 64.0 | $ 28,800.00 |
| Krieg, Brett | Consultant | $ 395.00 | 3.0 | $ 1,185.00 |
| Kuby, Kevin | Senior Managing Director | $ 615.00 | 72.0 | $ 44,280.00 |
| Li, Danny | Director | $ 510.00 | 6.0 | $ 3,060.00 |
| Lyman, Scott | Consultant | $ 335.00 | 9.0 | $ 3,015.00 |
| McDonagh, Timothy | Consultant | $ 295.00 | 75.0 | $ 22,125.00 |
| McKeighan, Erin | Consultant | $ 250.00 | 20.0 | $ 5,000.00 |
| Quentin, Michele | Consultant | $ 395.00 | 48.0 | $ 18,960.00 |
| Swanson, David | Consultant | $ 290.00 | 48.0 | $ 13,920.00 |
| Triana, Jennifer | Consultant | $ 395.00 | 28.0 | $ 11,060.00 |
| Wahl, Dustin | Managing Director | $ 565.00 | 12.0 | $ 6,780.00 |
| Weber, Eric | Director | $ 405.00 | 46.0 | $ 18,630.00 |
| Wehrle, David | Director | $ 535.00 | 34.0 | $ 18,190.00 |
| Weinsten, Mark | Senior Managing Director | $ 615.00 | 26.0 | $ 15,990.00 |
| Wu, Christine | Director | $ 510.00 | 66.0 | $ 33,660.00 |
| Sub-Total | | | 1410.9 | $ 699,598.50 |
| Less: Fee Accomodation | | | | (349,799.25) |
| Total | | | 1410.9 | $ 349,799.25 |

8.    Pursuant to the Local Guidelines, a certification regarding compliance with same is attached hereto as Exhibit A.

9.    Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule setting forth all FTI professionals and paraprofessionals who have performed services in these Chapter 11 cases during the Application Period, the capacities in which each such individual is employed by FTI, the department in which each individual practices, the hourly billing rate charged by FTI

for services performed by such individual, and the aggregate number of hours expended in this matter and fees billed.

10. Attached as Exhibit C is a Summary of Fees and Expenses by Month which also provides voluntary fee accommodations taken by FTI on a monthly basis. Payments made by the Debtors to FTI for fees and expenses incurred during the Application Period are also reflected.

11. Attached hereto as Exhibit D is a Summary of Fees and Hours by Project Category of the services performed by FTI during the Application Period.

12. Attached hereto as Exhibit E is a Summary of Expenses by Month specifying the categories of expenses for which FTI is seeking reimbursement, and the total amount for each such expense category.

13. Attached hereto as Exhibit F is a copy of the Final Retention Order incorporating the terms of an engagement dated as of October 19, 2005 between FTI Consulting, Inc. and the Debtors as well as a copy of the Supplemental Retention Order expanding the terms of engagement to incorporate FTI's Economic Consulting Services.

14. Attached hereto as Exhibit G and H are the exhibits which were prepared in support of the February, March, April and May Fee Statements. Contained therein, are FTI's detailed fees by date by professional for each of the four fee statement periods encompassed in the Application Period. FTI's itemized time records include: (i) the date each service was rendered, (ii) the professional who performed the service, (iii) a description of the service rendered, (iv) the time spent performing the service in increments of tenths of an hour. FTI's expenses, for which reimbursement is being sought, are disclosed in detail by individual and by expense category.

15. As set forth in summary in Exhibit E and in detail in Exhibit H attached hereto, FTI has incurred $487,504.98 in expenses on behalf of the Debtors in providing professional services during the Application Period. The actual expenses incurred in providing professional services

were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these Chapter 11 cases. FTI states as follows regarding these expenses: external copying charges are at the provider's cost without markup; actual cost for overnight delivery and postage are billed at provider's cost without markup; charges for office supplies purchased for on-site work at the client are at the provider's cost without markup. The location of the Debtors and the need to be on-site to administer many of the duties on behalf of the Debtors caused FTI to travel extensively to provide advisory services. All air travel to and from the Debtors' location was necessary and billed at coach airfare.

16. FTI has not requested reimbursement for certain out-of-pocket expenses when it would not be possible to assemble the billing details for reimbursement under the Guidelines. These unbilled out-of-pocket expenses typically include telephone charges for calls placed from FTI's offices, postage costs and copying and facsimile charges incurred at FTI's offices in connection with these cases. Additionally, FTI voluntarily limited meal charges on a per meal basis and did not seek reimbursement for lunch charges.

17. FTI elected to make certain voluntary fee accommodations within the Application Period. These reductions resulted from eliminating time incurred that FTI believes to be valuable to the efficient and effective execution of its responsibilities, but recognizes that the direct benefit may be less than obvious. For this reason, and in a good faith effort to ensure that its compensation request represents proper value and complies with the U.S. Trustee Guidelines for the Southern District of New York, FTI eliminated these fees from its request. Such voluntary reductions total $482,765.25 in professional fees, inclusive of reducing all travel fees by 50% during the Application Period. The reductions are permanent, with prejudice, and indicate our best effort to ensure that our fees represent appropriate value.

18. FTI believes that this Fifth Interim Application, together with the attachments hereto,

substantially complies in all material respects with Local and United States Trustee Guidelines. To the extent this Fifth Interim Application does not comply in every respect with the requirements of such guidelines, FTI respectfully requests a waiver for any such technical non-compliance.

## RELIEF REQUESTED

19.   Section 330 of the Bankruptcy Code, as amended by the Bankruptcy Reform Act of 1994, governs compensation of professionals in a bankruptcy case and empowers the Court to award reasonable compensation for actual and necessary services and reimbursement for actual and necessary expenses. Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement.  The time and fees incurred by FTI in rendering professional services on behalf of the Debtors should be considered in light of: (a) the novelty and complexity of issues presented and the amounts and results achieved; (b) the time and labor required; (c) the skills required to properly perform the financial advisory services; (d) the customary fee to a client for the services rendered outside of bankruptcy; (e) the time constraints imposed by the urgency of the case; (f) the experience, reputation and ability of the professionals rendering services; (g) the efficient administration of the Estate; and (h) the avoidance of duplicate fees.  FTI believes that the consideration of these criteria more than justifies the compensation requested.

(a) *Novelty and complexity of issues presented and the amounts and results achieved* – This case involves multi-faceted questions and issues regarding the complex legal structure of the Debtors with forty-two (42) entities filing for the largest manufacturer to have filed for Chapter 11.   During the Application Period, FTI provided extensive

services to the Debtors in developing, analyzing and vetting the Company's 2007-2011 Budget Business Plan.  In this role, FTI conducted analyses pertaining to each of the division's business plan submissions, assisted the Debtors in developing and integrating additional adjustments into the forecast and developed preliminary balance sheet and cash flow projections.  We also provided significant support to the Debtors in developing and updating estimates of claims, which was used in furthering the framework negotiations.  In addition, FTI provided valuable assistance in the claims management area spanning most aspects of claims management and resolution.  FTI was actively engaged in the filing of six claims objections involving over 5,300 claims with aggregate liquidated amounts of $7.2 billion.  We also continued to maintain and operate a multi-user, computer information system environment, utilizing FTI's Claims Management System ("CMS"), to manage and resolve the Debtors' scheduled liabilities and proofs of claim.  In addition to claims work, we assisted the Debtors in numerous facets of the framework negotiations and the underlying financial analyses supporting these stakeholder discussions.  FTI's involvement and guidance was essential in developing a credible and reliable set of financial projections and analyses in support of such discussions.  FTI was also instrumental in assisting the Debtors in maintaining a stable supply chain through its continuing support of the contract assumption/extension process.  Lastly, FTI played a key role in preparing and communicating important information to various parties-in-interest in the case matters (such as the UCC, the Equity Committee, and their respective advisors); has helped the Debtors to manage, evaluate and negotiate the 855 reclamation demands it has received in these cases (representing over 100,000 invoice lines, one of the largest reclamation resolution efforts in U.S. history); and, has provided extensive advice and guidance regarding a myriad of strategic, operational and financial issues.  Overall, FTI asserts that the professional services provided have been invaluable to the progression of these proceedings.

(b) *Time and labor required* – The efforts expended by FTI has been commensurate with the size and complexity of the case. FTI made a dedicated effort to avoid duplication of effort and to leverage staff appropriately. The complex issues of the case required staff professionals to conference and collaborate at certain times to ensure the efficient allocation of resources and to plan strategies effectively. While essential to the effective administration of the engagement, to the extent possible these conferences were kept to a minimum. FTI kept management informed of its activities and has not commenced any work or analysis without the consent, knowledge and approval of the Debtors' management team. To this end, FTI professionals and paraprofessionals expended 13,144.4 hours during the Application Period rendering professional services on behalf of the Debtors and their Estates.

(c) *Skills required to properly perform the financial advisory services* – FTI was instrumental in providing facts and reporting results that enabled the Debtors to make informed decisions on complex issues. The specialized and complex nature of these issues require professionals with demonstrated skill and experience to appropriately address the issues, and to potentially provide relevant testimony.  As such and where appropriate, FTI utilized certain professionals with substantial experience and expertise for the work associated with this assignment. FTI has spent considerable time and resources over the past several years in developing and refining its reorganization and restructuring experience, and the professionals who have worked on this case have demonstrated the skill required to provide the services necessary to assist the Debtors throughout these proceedings.

(d) *Customary fee to a client for the services rendered outside of bankruptcy* - The compensation requested in this Application reflects the usual and customary fees charged by FTI for similar services in this marketplace. The hourly fees charged to clients are dependent upon the experience of the individuals assigned to the engagement. The fees requested herein are not in excess of those charged to our non-bankruptcy

clients. Upon FTI's knowledge and belief, the rates sought for approval herein are commensurate or below the usual and customary rates charged for services performed by comparable experts in bankruptcy cases.

(e) *Time constraints imposed by the urgency of the case* – The case has moved rapidly, and at times required substantial effort by FTI in completing work to meet specific Court deadlines and specific case issues.  Examples, as noted above, include FTI's efforts required to meet established timelines with respect to (i) the development and refinement of the Debtors' Budget Business Plan; (ii) the filing of eight claims objections; and (iii) the development of analyses, necessary for framework negotiations. FTI adapted its staffing to appropriately address these and other urgent matters.

(f) *Experience, reputation and ability of the professionals rendering services* - The Debtors selected FTI due to the experience and expertise of its professionals both in bankruptcy proceedings and for its particular industry knowledge. The combination of FTI's industry expertise and bankruptcy experience has greatly contributed to the Debtors making informed decisions during the proceedings. Over the past several years, FTI has been involved in numerous large and complex bankruptcy cases and, as a result, has many professionals who are extremely knowledgeable with respect to the specialized work and analyses required in a Chapter 11 proceeding.

(g) *Efficient administration of the Estate* - The services in this case were rendered, whenever possible, by those professionals with the lowest billing rates and with the degree of experience and specialization needed to perform the services required efficiently and properly.  In addition, FTI sought Debtor personnel to assist with services whenever possible. For example, FTI utilized and trained numerous Debtor and temporary personnel to work alongside the professionals in the reclamations and claims management processes.  Further to this point, all claims management work was carefully considered ahead of time by the Debtors as to whether it should be performed by Delphi personnel, a temporary service agency hired specifically by the Debtors to perform more

basic, clerical work, or FTI.   In addition, FTI has transferred the 13-week cash flow analysis, DIP variance analysis and DIP projection model to the Debtors during the prior interim Application Periods.

(h) *The avoidance of duplicate fees* - To the best of FTI's knowledge and belief, there has been no duplication of professional services rendered between FTI and any other professionals of the Estates.

20. In sum, the services rendered by FTI were necessary and beneficial to the Debtors and their Estates, and were consistently performed in a timely manner commensurate with the complexity, importance, novelty, and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

21. There is no agreement or understanding between FTI and any other person, other than employees of the firm, for the sharing of compensation to be received for services rendered in these Chapter 11 cases.

22. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, FTI reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

23. FTI respectfully submits that the relevant legal authorities are set forth herein and that this Application presents no novel issues of law.   Thus, FTI respectfully submits that this Application satisfies the requirement set forth in the Southern District of New York Local Bankruptcy Rule 9013-1 that a separate memorandum of law be filed in support of this Application.

24.   In compliance with the Interim Compensation Order, notice of the filing of this Interim Application will be provided to all parties who have filed a notice of appearance with the

Clerk of this Court and requested notice of pleadings in these chapter 11 cases.  In addition, the

Interim Application in its entirety will be served on the following parties: (i) Delphi Corporation,

(ii) counsel to the Debtors, (iii) the Office of the United States Trustee for the Southern District

of New York, (iv) counsel for the Official Committee of Unsecured Creditors, (v) counsel for the

Official Committee of Equity Security Holders, (vi) counsel for the agent under the Debtors'

former prepetition credit facility, (vii) counsel for the agent under the postpetition credit facility,

(viii) Valerie Venable, GE Plastics, Americas, (ix) Legal Cost Control, Inc.

## <u>CONCLUSION</u>

WHEREFORE, FTI Consulting, Inc. respectfully requests this Court to: (i)

approve its Fifth Interim Application for compensation for the period from February 1, 2007

through May 31, 2007 in the amount of $5,619,490.87 and reimbursement of necessary out-of-

pocket expenses in the full amount of $487,504.98; (ii) authorize payment of any portion of these

fees and expenses that remain unpaid, including the amount of $1,123,898.17 that represents the

20% holdback of professional fees for the period of February 1, 2007 through May 31, 2007; and

(iii) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 31, 2007

Respectfully submitted

/s/ Randall S. Eisenberg
Randall S. Eisenberg
Senior Managing Director
FTI Consulting, Inc.
3 Times Square, 11th Floor
New York, New York 10036
(212) 499-3614
(212) 841-9350 facsimile


Restructuring and Financial Advisor for the
Debtors and Debtors-in-Possession