**Hearing Date:  October 25, 2007, 10:00 a.m. (EST)**
**Objection Deadline:  October 18, 2007, 4:00 p.m. (EST)**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
In Re:                                            :          Chapter 11  Case Nos.
                                                  :
Delphi Corporation., <u>et al.</u>,              :          05-44481  (RDD)
                                                  :
                                                  :          (Jointly Administered)
                                                  :
        Debtors.                                  :          Honorable Robert D. Drain
-------------------------------------------------------X

## COVER SHEET FOR APPLICATION FOR
## <u>PROFESSIONAL COMPENSATION</u>

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Howard & Zukin Capital ("<u>Houlihan Lokey</u>") |
| Authorized To Provide Professional Services To: | Official Equity Committee of Equity Security Holders of Delphi Corporation, et al., (the "<u>Official Equity Committee</u>") |
| Date of Order Authorizing Employment: | October 11, 2006 (nunc pro tunc to July 31, 2006) |
| Period for Which Compensation is Sought: | February 1, 2007 through May 31, 2007 |
| Amount of Fees Sought: | $ 700,000.00 |
| Amount of Expense Reimbursement Sought: | $ 37,128.08 |
| Fees Previously Paid: | $ 280,000.00 |
| Expenses Previously Reimbursed (including expense credits): | $ 24,273.16 |
| Net Unpaid: | $ 432,854.92 |
| This is an: | <u>X</u> Interim Application<br>_ Final Application |

## HOURS EXPENDED BY CATEGORY

| Project Category | Total Hours for Current Period |
|---|---|
| Labor Matters | 354.8 |
| General Motors Corporation | 331.6 |
| Divestitures & Closings | 331.7 |
| Financial Analysis, Due Diligence & Other Matters | 1,197.4 |
| Case Administration & Correspondence | 128.0 |
| **TOTAL** | **2,343.5** |

### CUMULATIVE FEE SUMMARY

| Fee Statement Date(s) | Fee Periods | Fees Requested | Expenses Requested [2] | Amount of Fees Paid | Amount of Expenses Paid |
|---|---|---|---|---|---|
| 11/30/06 | 07/31/06-09/30/06 | $355,645.16 | $28,061.94 | $320,080.65 | $28,061.94 |
| 12/14/06 | 10/01/06-10/31/06 | $175,000.00 | $7,753.04 | $140,000.00 | $7,753.04 |
| 01/12/07 | 11/01/06-12/31/06 | $350,000.00 | $13,229.44 | $280,000.00 | $13,229.44 |
| 02/12/07 | 01/01/07-01/31/07 | $175,000.00 | $5,654.32 | $140,000.00 | $5,654.32 |
| 05/30/07 | 02/01/07-02/28/07 | $175,000.00 | $12,526.25 | $140,000.00 | $12,771.10 |
| 05/30/07 | 03/01/07-03/31/07 | $175,000.00 | $11,352.78 | $140,000.00 | $11,502.06 |
| 07/03/07 | 04/01/07-04/30/07 | $175,000.00 | $9,732.28 | $0.00 | $0.00 |
| 07/11/07 | 05/01/07-05/31/07 | $175,000.00 | $3,516.77 | $0.00 | $0.00 |
| **Total** | **07/31/06-05/31/07** | **$1,755,645.16** | **$91,826.82** | **$1,160,080.65** | **$78,971.90** |

[2] Expenses Requested are shown net of credits made to Monthly Invoices submitted to the Debtor.  For the months that have been adjusted, gross expenses requested are as follows: February 2007 - $12,771.10; March 2007 - $11,502.16; April 2007 - $9,784.45.

## EXPENSE SUMMARY

| Expense Category | Total Expenses for Current Period [1] |
|---|---|
| Airfare | $23,645.02 |
| Lodging | 5,400.00 |
| Ground Transportation | 3,105.75 |
| Meals | 1,825.39 |
| Telephone | 26.75 |
| Delivery / Messenger | 95.31 |
| Duplication / Office Expense | 1,012.60 |
| Information Resources | 2,017.26 |
| **TOTAL** | **$37,128.08** |

(1) Total Expenses for Current Period is shown net of credits made to initial Monthly Invoices submitted to the Debtor by Houlihan Lokey.

HOULIHAN LOKEY respectfully requests that this Court enter an order awarding Houlihan Lokey an interim allowance of compensation and expenses in the amount of $737,128.08 as set forth below and as indicated in the attached Affidavit of Tanja I. Aalto, an officer of the firm.  Houlihan Lokey further respectfully requests that the Debtors pay to Houlihan Lokey $32,854.92 from the assets of their estates as an administrative expense and that the Court provide such other and further relief as may be just and equitable.

| | |
|---|---|
| *Professional Fees* | *$700,000.00* |
| *Out-of-Pocket Expenses* | *$37,128.08* |
| *Total Fees and Expenses* | *$737,128.08* |
| *Less: Amounts Received (including expense credits)* | *($304,273.16)* |
| *Net Unpaid* | *$432,854.92* |

Dated: July 30, 2007
New York, New York
Houlihan Lokey Howard & Zukin Capital
245 Park Avenue, 20th Floor
New York, NY  10167


By      */s/ Tanja I. Aalto*_____
        Tanja I. Aalto
        Director
        Houlihan Lokey Howard & Zukin Capital

Hearing Date:  October 25, 2007, 10:00 a.m. (EST)
Objection Deadline:  October 18, 2007, 4:00 p.m. (EST)

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| Delphi Corporation., <u>et al.</u>, : | | Case No. 05-44481  (RDD) |
| | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors | : | Honorable Robert D. Drain |

----------------------------------------------------------- X

### THIRD INTERIM APPLICATION OF HOULIHAN LOKEY
### HOWARD & ZUKIN CAPITAL FOR ALLOWANCE
### OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Houlihan Lokey Howard & Zukin Capital ("<u>Houlihan Lokey</u>"), as financial advisor to the Official Equity Committee of Equity Security Holders of Delphi Corporation et al., (the "<u>Official Equity Committee</u>"), hereby submits this third interim application (the "<u>Application</u>") for allowance of monthly compensation and reimbursement of expense for services rendered from February 1, 2007 through May 31, 2007 (the "<u>Application Period</u>"), and respectfully represents:

<u>INTRODUCTION</u>

1.     By this Application, Houlihan Lokey requests an order of this Court, pursuant to Sections 328(a) and 1103 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 2014 of the Federal Rule of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), allowing the amounts requested herein as compensation for professional services rendered as financial advisor to the Official Equity Committee during the Application Period.

<u>RETENTION OF HOULIHAN LOKEY</u>

2.     On October 8, 2005, Delphi Corporation and thirty-eight of its domestic subsidiaries (collectively, "<u>Delphi</u>" or the "<u>Company</u>") filed voluntary petitions for relief under chapter

11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").  On October 14, 2005, three additional domestic subsidiaries of Delphi filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession.

3.      On October 17, 2005, the Office of the United States Trustee for the Southern District of New York (the "UST") appointed an official committee of unsecured creditors (the "Creditors' Committee").

4.      On December 22, 2005, Appaloosa Management L.P. filed a motion seeking an order directing the UST to appoint a committee of equity security holders (the "Equity Committee Motion") pursuant to section 1102 of the Bankruptcy Code.  A hearing on the Equity Committee Motion was held on March 21 and March 22, 2006.  On March 22, 2006 the Court issued an oral ruling on the Equity Committee Motion (the "Bench Decision") and, by order dated March 30, 2006 (the "Equity Committee Order"), the Court granted the Equity Committee Motion and directed the UST to appoint the Official Equity Committee.

5.      Pursuant to the terms set forth in the Equity Committee Order, which did not provide for the retention by the Official Equity Committee of "any professionals, including, investment bankers, accountants, or actuaries, other than a law firm" without prior leave of the Court, the Official Equity Committee submitted a motion on July 31, 2006 to approve a Motion for Order Granting the Official Committee of Equity Security Holders Leave to File an Application to Retain and Employ a Financial Advisor, which was approved without objection on August 17, 2006.

6.      On or about July 31, 2006, the Official Equity Committee and Houlihan Lokey executed a letter agreement (the "Retainer Agreement") memorializing the terms of the Official Equity Committee's engagement of Houlihan Lokey effective as of July 31, 2006, as attached hereto as **Exhibit A**.

7.     On September 21, 2006, the Official Equity Committee filed its Application of the Official Equity Committee of Equity Security Holders of Delphi Corporation, et al. to retain Houlihan Lokey Howard & Zukin Capital as Financial Advisor nunc pro tunc to July 31, 2006 (the "Retention Application").

8.     On October 11, 2006, having received no objections thereto, the Court signed an order granting the Retention Application (the "Retention Order").

9.     The Retention Application and the Retainer Agreement provide, among other things, for the payment of fees to Houlihan Lokey for services rendered during this bankruptcy case of $175,000.00 per month (the "Monthly Fee") plus reimbursement of reasonable out-of-pocket expenses, subject to Court approval.  The terms of the Retention Agreement do not provide for incremental fees above and beyond the Monthly Fee.

10.     On November 4, 2005, the Court signed an Administrative Order under Section 331 of title 11 of the United States Code, 11 U.S.C.§§ 101-1330, establishing procedures for interim compensation and reimbursement of expenses of court-approved professionals (the "Compensation Order").  In accordance with the Compensation Order, Houlihan Lokey respectfully submits, in this Application, monthly statements of fees and expenses for the Application Period and requests approval of compensation in the aggregate amounts of $700,000.00 in fees for services rendered and $37,128.08 for the reimbursement of expenses incurred.  A copy of Houlihan Lokey's monthly fee statement, covering the period from February 1, 2007 through May 31, 2007 are attached hereto as **Exhibit B**.

11.     Houlihan Lokey has not received payment or promise of payment for services rendered in this Case other than pursuant to the Retainer Agreement and under the Retention Order and Compensation Order.

12.     No agreement or understanding exists between Houlihan Lokey and any other entity for sharing compensation to be received for services rendered in connection with this Case.

13.     Due to the time delay in receiving invoices from third-party service firms, Houlihan Lokey is unable, at this time, to account for all expenses incurred during the Application Period. Ensuing applications for compensation will include certain out-of-pocket expenses incurred in this Application Period, and Houlihan Lokey respectfully requests that the Court allow such expenses in such subsequent periods.

14.     Out-of-pocket expenses incurred by Houlihan Lokey are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client.  Houlihan Lokey does not factor general overhead expenses into disbursements charged to its clients in connection with Chapter 11 cases.  Houlihan Lokey has followed internal policies with respect to out-of-pocket expenses billed as set forth below.

(a)     Houlihan Lokey's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints.  Houlihan Lokey employees are permitted to order meals in the office if the employee is required to work after 8:00 p.m.

(b)     Messengers and couriers are used by Houlihan Lokey to deliver hard copy documents relating to the client matter that require receipt on an expedited basis; otherwise, Houlihan Lokey uses the regular postal system.  Any charges for messengers and couriers are billed to a client at cost.

(c)     Research and other expenses include charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to Houlihan Lokey.  The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to Houlihan Lokey.

(d)     With respect to local travel, Houlihan Lokey's general policy enables employees to travel by private car service, taxi, or subway to and from meetings while rendering services to a client on a client related matter, for which the client is charged.  Further, Houlihan Lokey employees are permitted to charge personal commuting expenses to a client as long as the employee is traveling after 8:00 p.m., primarily due to safety reasons.

4

PROFESSIONAL SERVICES RENDERED DURING THE APPLICATION PERIOD

15.    The Official Equity Committee selected Houlihan Lokey because of Houlihan Lokey's extensive knowledge and reputation in financial restructuring, because of its familiarity with the issues involved in this case and because the Official Equity Committee believes that Houlihan Lokey possesses the requisite resources and is well qualified to represent the Official Equity Committee in this case.

16.    The services that Houlihan Lokey has been required to perform and has performed have been substantial and necessary in these Chapter 11 cases.  Houlihan Lokey has attempted to perform such services with the minimum amount of duplication with the Official Equity Committee's other advisors.

17.    Throughout the duration of Houlihan Lokey's retention by the Official Equity Committee, Houlihan Lokey has staffed the engagement consistent with the Official Equity Committee's objectives and in a manner that provided for thorough and efficient representation of the interests of the Official Equity Committee.  Houlihan Lokey's activities in this case have been supervised on a day-to-day basis by Tanja I. Aalto, Director.  In addition, the following professionals have also provided services: P. Eric Siegert, Senior Managing Director; David R. Hilty, Managing Director; Steve E. Hughes, Director; David Burns, Senior Vice President; Richard Miller, Associate; Scott Alford, Associate; Alvin Tan, Associate; Oliver Mathews, Associate; and Daniel F. Crowley III, Financial Analyst.

18.    During the time period covered by this Application, Houlihan Lokey has worked extensively with other professionals retained by the Official Equity Committee, certain members of the senior management of the Debtors, and other parties in interest in the case.  Houlihan Lokey's work has covered the specific issues for which it is engaged, as well as a broad variety of financial, operational and other issues relevant to these Chapter 11 cases.

19.    Houlihan Lokey does not ordinarily bill clients on an hourly basis for financial restructuring services and does not typically track the time spent by professionals on a specific engagement.  However, Houlihan Lokey has instructed the professionals working on this matter to keep summary time records that approximate the time spent on the case by major

5

categories. Although these time records do not include all time spent by professionals of Houlihan Lokey on this matter, they do provide a summary of the critical involvement of Houlihan Lokey in these cases. Houlihan Lokey believes that all time entries and requested expenses are in substantial compliance with the Local Rules of this Court. A summary of the hours spent, the names of each professional rendering services to the Official Equity Committee, and a summary of the scope of Houlihan Lokey's services are reflected in time records, which have been maintained by each of Houlihan Lokey's employees involved in this case during this Application Period, which monthly summary time records are attached hereto as **Exhibit C**. In addition, Houlihan Lokey has included each of its professional's biographies in **Exhibit D** attached hereto.

20.     In summary, Houlihan Lokey has provided financial advisory services to the Official Equity Committee in the following categories during the Application Period:

### A.     Labor Matters

Houlihan Lokey was retained in part to advise the Official Equity Committee in analyzing matters relating to the Company's workforce. During the Application Period, Houlihan Lokey spent considerable time studying the Company's labor issues and reviewing voluminous supporting documents, including, but not limited to, documents contained in the Company's electronic data room pertaining to plant-level employment statistics, general hourly employee information and data related to the Company's pension and retiree obligations; news articles regarding labor issues between and/or among General Motors Corporation ("GM") and Delphi as well as news articles and court motions related to Dana Corporation's labor negotiations with its unions, and various Delphi court motions relating to section 1113/1114 issues. In addition, Houlihan Lokey conducted detailed analysis on the Memorandum of Understanding among the Debtors, GM, and the United Automobile, Aerospace & Agricultural Implement Workers of America International Union ("UAW") and provided its clients with a comprehensive overview of the impact of that understanding upon the Debtor and the Debtor's pro forma financial and economic profile. Houlihan Lokey also reviewed voluminous amounts of detail relating to Delphi's labor structure contained in the confidential diligence

presentations provided by PriceWaterhouseCoopers (the "PWC Reports"). Houlihan Lokey had extensive correspondence in the form of e-mail, face-to-face meetings and conference calls with the Debtors and their advisors relating to the Company's labor issues, including numerous discussions about the driving labor assumptions embedded in the Company's various financial model scenarios.

Houlihan Lokey performed extensive analysis related to, among other things, the historical cash flow impact of Delphi's labor contracts with GM, proposed severance payments to union employees and other costs of transitioning to a wage-competitive workforce, and wind-down costs associated with the closure of certain Company plants. Houlihan Lokey also analyzed the potential impact on the Company's operations that would arise from the various labor settlement scenarios contemplated in the closure of the Delphi's facility in Cadiz, Spain. Finally, Houlihan Lokey expended considerable time and resources in review of the Company's various iterations of its proposed operational restructuring goals relating to, among other things, modifications to Delphi's pension and retiree funding and accrual obligations, GM labor cost subsidies, and timing of proposed layoffs and plant closures.

**B.     General Motors Corporation**

Houlihan Lokey was retained in part to advise the Official Equity Committee in analyzing matters relating to the relationship and business arrangements between the Company and GM. Houlihan Lokey has monitored and participated in numerous weekly update conference calls between representatives of the Debtors, the Debtors' advisors, the Creditors' Committee and the Official Equity Committee.

During the Application Period, the focus of Houlihan Lokey's efforts in this area mainly related to analysis of GM-related aspects contained in the framework agreement negotiations between the Debtors and the various involved parties, including GM. Houlihan Lokey analyzed the economic consideration payable to GM under the various plan investor proposals set forth by Appaloosa Management L.P., Highland Capital Management L.P., and other interested parties. Such analyses related to questions of how much value, and in what consideration, GM should receive in a restructuring of Delphi, and conversely what consideration Delphi

should receive for its claims against GM.  Such analysis hinged on issues regarding pension sharing obligations, labor and pricing subsidies, and Delphi's pro forma operational footprint (as related to long-term supply contracts with GM).  Houlihan Lokey also reviewed the PWC Reports in great detail, including the detail pertaining to GM.

### C.      Divestitures & Closings

Houlihan Lokey was retained in part to assist the Official Equity Committee in analyzing matters relating to the Company's efforts to divest material property and/or businesses and the impact thereof.  During the Application Period, Houlihan Lokey reviewed presentation materials provided by the Debtors and their advisors related to sale process updates of certain of the Company's divisions, including Debtors' Steering, Cockpit & Interior and Integrated Closure Systems businesses. Most recently, Houlihan Lokey analyzed the terms of and participated in conference calls with the Debtors' advisors to better understand the recently announced sale transaction for the Debtors' Steering business between Delphi and Platinum Equity. Houlihan Lokey also reviewed and analyzed the terms of closure of Delphi's facility in Cadiz, Spain.

### D.      Financial Analysis, Due Diligence & Other Matters

Due to the complexity of these chapter 11 cases, Houlihan Lokey found it necessary to perform incremental work not reflected in paragraphs 20(a), 20(b) and 20(c) of this application in order to provide effective counsel to the Official Equity Committee regarding the issues for which Houlihan Lokey was engaged.  The majority of this work has taken the form of financial analyses and review of due diligence materials in areas deemed critical to provide the services contemplated in the Retention Application.  In addition, Houlihan Lokey performs and regularly updates extensive analysis on publicly traded companies that operate in the automotive supplier industry in order to maintain comprehension of market valuation dynamics and industry outlook.  Performing such analyses is critical as Houlihan Lokey must have a thorough understanding of the automotive industry as a whole in order to provide sound strategic advice to its clients.

During the Application Period, Houlihan Lokey reviewed extensive volumes of due diligence material provided by the Company including the PWC Reports, which regarded, among other things, the Company's various operating divisions, and which Houlihan Lokey used to evaluate both the Company's business plan and the proposed investment terms set forth by the various potential investors groups. In addition, Houlihan Lokey performed and distributed to the Equity Committee numerous analyses evaluating the distributions to equity holders under the many various proposed investments by potential investor groups. Houlihan Lokey also represented the Equity Committee in several in-person negotiations regarding proposed investments in the Debtors among the Debtors, the Delphi Statutory Committees, and potential investors in the reorganized Debtor. Finally, Houlihan Lokey regularly analyzed the Debtors' monthly operating reports as they were filed with the court as well as the Debtors' SEC filings.

### E.    Case Administration & Correspondence

This category includes various services related to these Chapter 11 cases generally, including correspondence with parties-of-interest pertaining to these Chapter 11 proceedings, as well as items such as retention matters, addressing questions of individual members of the Official Equity Committee, and reviewing documents filed with the Court with regard to these Chapter 11 cases. This category also includes other Chapter 11 procedures, communications and administrative functions and matters not falling into any of the other categories listed above. During the Application Period, Houlihan Lokey participated in regularly scheduled weekly conference calls with the Equity Committee to keep the Equity Committee current on the process of the chapter 11 proceedings.

26.    Based on the above and in accordance with the Retainer Agreement, Houlihan Lokey respectfully requests Court allowance of compensation and expenses in the amount of $737,128.08 for services rendered by Houlihan Lokey during the Application Period.

DISBURSEMENTS

27.    Attached hereto as **Exhibit E** is a summary of the out-of-pocket expenses incurred by Houlihan Lokey in connection with its services on behalf of the Debtors and for which it is requesting reimbursement by the Debtors at this time in the aggregate amount of $37,128.08. These out-of-pocket expenses consist of expenses incurred during this Application Period and may also include expenses that were incurred in prior application periods but for which reimbursement was not sought due to delays in Houlihan Lokey's receipt of such billing information from various third-parties.  Houlihan Lokey respectfully requests the right to seek reimbursement in subsequent interim applications for additional expenses actually incurred during the Application Period but not yet invoiced as of the filing of this Application.

28.    In accordance with the applicable factors enumerated in the Bankruptcy Code, it is respectfully submitted that the amount requested by Houlihan Lokey is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services, both financial and otherwise, agreed to by Houlihan Lokey and other investment bankers in similar engagements, both inside and outside of bankruptcy.  Moreover, Houlihan Lokey has reviewed the requirements of the Compensation Order and believes that this Application complies with that Order.

WHEREFORE, HOULIHAN LOKEY respectfully requests that this Court enter an order awarding Houlihan Lokey an interim allowance of compensation and expenses in the amount of $737,128.08 as set forth below and as indicated in the attached Affidavit of Tanja I. Aalto, an officer of the firm. Houlihan Lokey further respectfully requests that the Debtors pay to Houlihan Lokey $432,854.92 from the assets of their estates and that the Court provides such other and further relief as may be just and equitable.

| | |
|---|---|
| **Professional Fees:** | ***$700,000.00*** |
| **Out-of-Pocket Expenses:** | ***$37,128.08*** |
| **Total Fees and Expenses:** | ***$737,128.08*** |
| **Less: Amounts Received (including expense credits):** | ***($304,273.16)*** |
| **Net Unpaid:** | ***$432,854.92*** |

Dated:  July 30, 2007
New York, New York
Houlihan Lokey Howard & Zukin Capital
245 Park Avenue, 20th Floor
New York, NY  10167


By        */s/ Tanja I. Aalto_____*
            Tanja I. Aalto
            Director
            Houlihan Lokey Howard & Zukin Capital

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| **DELPHI CORPORATION, et al.,** | : | |
| | : | **Jointly Administered** |
| | : | **05-44481 (RDD)** |
| **Debtors.** | : | |
| | : | |

**AFFIDAVIT PURSUANT TO SECTION 504**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014**

Tanja I. Aalto, being duly sworn, deposes and says:

1.      I am a Director of the firm of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), which maintains offices at, among other locations, 245 Park Avenue, 20th Floor, New York, New York 10167.

2.      This affidavit is submitted pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2014 in connection with and in support of Houlihan Lokey's fee application (the "Application") for allowance of interim compensation and reimbursement of expenses incurred for services rendered as financial advisor to the Official Equity Committee of Equity Security Holders of Delphi Corporation et al., (the "Official Equity Committee") for the period from October 1, 2006 through January 31, 2007 (the "Application Period"). The facts contained in the foregoing Application are true and correct to the best of my knowledge, information and belief.

3.      The Application respectfully requests that this Court enter an Order awarding Houlihan Lokey $700,000.00 as compensation for services rendered during the Application Period and $37,128.08 as reimbursement of reasonable actual and necessary expenses incurred in connection with such services.

4.      No agreement or understanding exists between Houlihan Lokey and any other persons or parties to share in any compensation received in connection with this Case other than as among members of Houlihan Lokey.

5.      The fees and disbursement requested in the Application are billed at rates in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients.

6.      Houlihan Lokey has at all times, to the extent practicable, minimized disbursements incurred in connection with its representation of the Official Equity Committee. In providing a reimbursable service, Houlihan Lokey does not make a profit on that service. In charging for a particular service, Houlihan Lokey does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for service that is justifiably purchased or contracted for from a third party, Houlihan Lokey requests reimbursement only for the amount billed to Houlihan Lokey by the third-party vendor and paid by Houlihan Lokey to such vendor.

Dated: July 30, 2007                              */s/ Tanja I. Aalto*
                                                  Tanja I. Aalto
                                                  Director
                                                  Houlihan Lokey Howard & Zukin Capital

Affirmed to and subscribed before
me this 30th day of July, 2007.


/s/ Kelly Hallahan
Notary Public

My Commission Expires:
September 25, 2010

# Exhibit A:

# Retainer Agreement

July 31, 2006

To:    The Official Committee of Equity Security Holders    (the "<u>Committee</u>") of Delphi
       Corporation (together with its subsidiaries, the "<u>Debtors</u>" or the "<u>Company</u>")


<u>Committee Counsel</u>                          <u>Committee Chair</u>
Mr. Brad Eric Scheler, Esq., Partner              Mr. Doug Dethy
Fried, Frank, Harris, Shriver & Jacobson LLP      D.C. Capital Partners, L.P.
One New York Plaza                                800 Third Avenue
New York, NY 10004                                40th Floor
                                                  New York, NY  10022


Dear Messrs. Scheler and Dethy:

This letter confirms the terms of the agreement (the "<u>Agreement</u>") between Houlihan Lokey
Howard & Zukin Capital, Inc. ("<u>Houlihan Lokey</u>") and the Committee concerning the
Committee's engagement of Houlihan Lokey to provide financial advisory and related services to
the Committee in connection with the restructuring of the Company.

1.     **Scope of Engagement**.  In connection with Houlihan Lokey's exclusive representation of
the Committee, the scope of Houlihan Lokey's engagement shall be as follows:

   a.  Labor Matters:  Assist the Committee in analyzing matters relating to the Company's
       transformation of its workforce and the impact thereof on the Company on a pro forma
       basis including, (i) the Debtors' efforts to modify and/or reject (or terminate) collective
       bargaining agreements and retiree benefits under sections 1113 and 1114 of the
       Bankruptcy Code, (ii) the Debtors' attrition programs, including any future attrition or
       buydown programs, and (iii) the resulting costs and claims of such labor transformation
       efforts and programs, including assistance in evaluating the Company's financial models;

   b.  General Motors Corporation:  Assist the Committee in analyzing matters relating to the
       relationship and business arrangements between the Company and General Motors
       Corporation ("GM") including, evaluating and understanding legacy contracts, GM
       claims, claims against GM and go-forward business arrangements with GM pertaining to
       the transformation and the impact of go forward business arrangements on the Company
       on a pro forma basis, and evaluating potential settlements with GM including assessment
       of the value of possible debt, equity or other securities of the reorganized company to be
       received by GM; and

   c.  Divestitures and Closings:  Assist the Committee in analyzing matters relating to the
       Company's efforts to divest material property or business and the impact thereof on the
       Company on a pro forma basis, including the proposed transaction and cash flow
       impacts.

The Official Committee of Equity Security
Holders of Delphi Corporation
July 31, 2006                                                                                          -2-

For the avoidance of doubt, the following are excluded from the scope of services to be rendered
to the Committee:

    a.  Determination or evaluation of the Debtors' enterprise value, on a consolidated and
        division basis, provided that the Committee shall be permitted to engage in the evaluation
        and analysis contemplated by (a), (b) and (c) above;

    b.  Monitoring and reviewing the business, management, operations, properties, financial
        condition and prospects of the Debtors;

    c.  Analyzing and reviewing the Debtors' claims process, including plan classification
        modeling, negotiation, and claim estimation (except for claims of GM and the unions
        representing employees of the Debtors arising out of the Company's transformation or
        those arising out of divestitures and closings); and

    d.  Participating in negotiations on behalf of the Committee other than with the Debtors.

2.    **Representation**.  Neither the Committee, the members thereof, their constituents, nor
any of their advisors or professionals (including, but not limited to, counsel for the Committee),
shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder
whether arising under the indemnification provisions hereunder or otherwise.  Notwithstanding
such arrangement, Houlihan Lokey's duties hereunder run solely to the Committee, and
Houlihan Lokey is not authorized to be, and will not purport to be, acting on behalf of, or at the
direction of the Company for any purpose unless otherwise agreed to by the Committee and the
Company. All financial advice, written or oral, provided by Houlihan Lokey to the Committee
pursuant to this Agreement is intended solely for the use and benefit of the Committee, and the
Committee agrees that such advice may not be disclosed publicly or made available to
third-parties without the prior written consent of Houlihan Lokey, which consent shall not be
unreasonably withheld.   It is understood and agreed that certain communication and
correspondence between Houlihan Lokey and the Committee, and work product and analyses
will be considered prepared by Houlihan Lokey for the Committee at the direction of the
Committee's counsel in connection with this matter, will be considered in preparation for
litigation over the restructuring of the Company, and will be subject to the attorney-client
privilege and work-product privilege between Committee Counsel, Houlihan Lokey and the
Committee.

3.    **Advisor**.  Houlihan Lokey's services are limited to those specifically provided in this
Agreement or subsequently agreed-upon by the parties hereto, and Houlihan Lokey shall have no
obligation or responsibility for any other services.  Houlihan Lokey is providing its services
hereunder as an independent contractor, and the parties agree that this Agreement does not create
an agency or fiduciary relationship between Houlihan Lokey and the parties to this Agreement.

4.    **Consideration**.  In consideration of its services pursuant to this Agreement, and subject
to the orders and procedures of the Bankruptcy Court, Houlihan Lokey shall be entitled to
receive, and the Company shall pay to Houlihan Lokey, a monthly fee (the "Monthly Fee") each
month in advance for its services of $175,000 per month, plus reasonable expenses that are

The Official Committee of Equity Security
Holders of Delphi Corporation
July 31, 2006                                                                                    -3-

incurred by Houlihan Lokey on behalf of the Committee.  Such out-of-pocket expenses shall
include, but not be limited to, all documented and reasonable travel expenses, duplicating
charges, computer charges, messenger services, long-distance telephone calls and reasonable
fees of outside counsel not in excess of $75,000 incurred by Houlihan Lokey before termination
(or related to Houlihan Lokey's pre-termination services) in connection with the matters
contemplated by this Agreement.  Upon execution of this Agreement, the Company shall pay
Houlihan Lokey its initial monthly fee of $175,000.  The Company shall pay the Monthly Fee on
each monthly anniversary of the date of this Agreement (the "Effective Date"), in advance.
Payment shall be made to Houlihan Lokey at the address above, Attention: David R. Hilty, in
accordance with the wire instructions provided.

The parties acknowledge that the rendering of services hereunder will require a substantial
professional commitment of time and effort by Houlihan Lokey and its professionals, and that
such commitment may foreclose other opportunities for Houlihan Lokey.  Moreover, the actual
time and commitment required for the engagement may vary substantially from week to week or
month to month, creating "peak load" issues for Houlihan Lokey.  Given the numerous issues
which may arise in these cases, Houlihan Lokey's commitment to the variable level of time and
effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will
be required in this engagement, and the market rate for Houlihan Lokey's services of this nature
(whether in or out of court), the parties agree that the fee arrangement hereunder is reasonable,
fairly compensates Houlihan Lokey and provides certainty to the Company and the Committee.

5.      **Bankruptcy Court**.   The Committee shall, promptly after the execution of this
Agreement by all parties hereto, seek an order from the Bankruptcy Court authorizing the
employment of Houlihan Lokey pursuant to the terms of this Agreement, as professional persons
pursuant to (and subject to the standard of review of) sections 328(a) and 1103 of the Bankruptcy
Code, the Bankruptcy Rules, applicable local rules and orders of the Bankruptcy Court.  The
Committee will use its best efforts to obtain the Bankruptcy Court's approval of the Company's
payment of Houlihan Lokey's fees and expenses *nunc pro tunc* to the Effective Date of this
Agreement and of the other obligations of the Company provided in this Agreement.  If the order
authorizing the employment of Houlihan Lokey is obtained, the Company shall pay all fees and
expenses as promptly as possible in accordance with the terms of this Agreement, the
Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders of the Bankruptcy
Court.  The terms of this paragraph are solely for the benefit of Houlihan Lokey and may be
waived, in whole or in part, only by Houlihan Lokey.

6.      **Termination**.  This Agreement is terminable upon thirty (30) days written notice by the
Committee or Houlihan Lokey, provided, however, that if the Agreement is terminated, Houlihan
Lokey shall be paid all previously unpaid Monthly Fees and the pro-rata portion of the Monthly
Fee for the month in which the Agreement is terminated.  The termination of this Agreement will
not affect (a) the indemnification, reimbursement, contribution and other obligations of the
Company set forth in this Agreement and (b) Houlihan Lokey's right to receive any and all fees
and expenses accrued as of the effective date of termination of this Agreement.

7.      **Information**.  The Company acknowledges and agrees that, in rendering its services
hereunder, Houlihan Lokey will be using and relying on information made available to it by the

The Official Committee of Equity Security
Holders of Delphi Corporation
July 31, 2006                                                                                                  -5-

understanding relating to the matters provided for herein.  No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

14.    **Indemnification**.  Subject to the approval of the Bankruptcy Court, and as a material part of the consideration for Houlihan Lokey to furnish its services under this Agreement, the Company shall indemnify Houlihan Lokey and shall hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages, expenses (legal or otherwise) or liabilities (or actions in respect thereof) (collectively, the "Liabilities"), joint or several, arising out of or related to the Agreement, any actions taken or omitted to be taken by an Indemnified Party in connection with Houlihan Lokey's provision of services to the Committee pursuant to this Agreement prior to the termination of this Agreement. In addition, the Company shall reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, there shall be no liability under the foregoing indemnity and reimbursement agreement for any Liabilities which are finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such Liabilities in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Committee and the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection therewith, as well as any other relevant equitable considerations.   Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to any such Liabilities shall not exceed the amount of fees actually received by Houlihan Lokey pursuant to the Agreement.

The Committee and the Company shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Company, unless such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.  The Company shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the prior written consent of the Company.

Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other

The Official Committee of Equity Security
Holders of Delphi Corporation
July 31, 2006                                                                                    -6-

distribution or liquidation of all or a significant proportion of its assets, or (ii) significant
recapitalization or reclassification of its outstanding securities that does not directly or indirectly
provide for the assumption of the obligations of the Company set forth in this Agreement, the
Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if
requested by Houlihan Lokey, shall arrange in connection therewith alternative means of
providing for the obligations of the Company set forth herein, including the assumption of such
obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in
an amount and upon terms and conditions reasonably satisfactory to Houlihan Lokey.

The Committee and the Company further agree that neither Houlihan Lokey nor any other
Indemnified Party shall have any liability, regardless of the legal theory advanced, to the
Committee, the Company or any other person or entity (including the Company's equity holders
and creditors) related to or arising out of Houlihan Lokey's engagement, except for any liability
for losses, claims, damages, liabilities or expenses incurred by the Committee and/or the
Company that are finally judicially determined to have resulted from the willful misconduct or
gross negligence of any Indemnified Party. The indemnity, reimbursement, contribution and
other obligations and agreements of the Company set forth herein shall apply to any
modifications of this Agreement, shall be in addition to any liability which these parties may
otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns,
heirs and personal representatives of these parties and each Indemnified Party. The foregoing
indemnification and other provisions shall survive the consummation of any termination of the
relationship established by this Agreement.

The obligations of Houlihan Lokey are solely corporate obligations, and no officer, director,
employee, agent, shareholder or controlling person of Houlihan Lokey shall be subjected to any
personal liability whatsoever to any person, nor will any such claim be asserted by or on behalf
of any other party to this Agreement or any person relying on the services provided hereunder.
The Company's obligations with respect to any and all payments owing to Houlihan Lokey and
the indemnification, reimbursement, contribution and other similar obligations of the Company
under this Agreement shall survive any termination of this Agreement.

The Official Committee of Equity Security
Holders of Delphi Corporation
July 31, 2006

-7-

The undersigned have agreed to the foregoing terms of this Agreement, which shall be effective as of the Effective Date set forth above.

**THE OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS OF DELPHI CORPORATION**
    by: DC Capital Partners LP, solely in its capacity as Chair of the Committee and not in its individual capacity

By: _Douglas L. Dethy_  8/24/06
    DOUGLAS L. DETHY

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**

By: _____
    P. Eric Siegert
    Senior Managing Director

**Exhibit B:**

**Monthly Fee Statements**



HOULIHAN LOKEY HOWARD & ZUKIN

INVESTMENT BANKING SERVICES

www.hlhz.com

**Invoice: 9365**

**PERSONAL & CONFIDENTIAL**                                      April 4, 2007

Delphi Corporation                                              Client #: 39076
5725 Delphi Drive                                               Case #: 81056
M/C 483-400-603
Troy, MI 48098

| | | |
|---|---|---|
| Monthly Advisory Fees For the Period of February 1, 2007 - February 28, 2007: | $ | 175,000.00 |
| Less 20% Holdbacks: | | (35,000.00) |
| Subtotal: | $ | 140,000.00 |

Out of pocket expenses:

| | | | |
|---|---:|---|---:|
| Airfare | $ 9,376.00 | | |
| Lodging | 900.00 | | |
| Ground Transportation | 1,247.22 | | |
| Meals | 367.47 | | |
| Telephone | 12.90 | | |
| Delivery/Messenger | 49.55 | | |
| Information Resources | 817.96 | | |
| Subtotal: | | $ | 12,771.10 |

| | | |
|---|---|---:|
| *Outstanding balance due for invoice dated December 14, 2006, #7871:* | *$* | *35,564.51* |
| *Outstanding balance due for invoice dated December 14, 2006, #7925:* | *$* | *35,000.00* |
| *Outstanding balance due for invoice dated January 12, 2007, #8091:* | *$* | *70,000.00* |
| *Outstanding balance due for invoice dated February 12, 2007, #9161:* | *$* | *35,000.00* |

**TOTAL AMOUNT DUE AND PAYABLE:**                              **$    328,335.61**

### PAYMENT DUE UPON RECEIPT

Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Accoun
Beneficiary Account No:
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:
Swift Code (International Wires only):
Federal ID #

Los Angeles   New York   Chicago   San Francisco   Washington, D.C.   Minneapolis   Dallas   Atlanta   London
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



HOULIHAN  LOKEY  HOWARD  &  ZUKIN

INVESTMENT BANKING SERVICES

www.hlhz.com

**Invoice: 9509**

**PERSONAL & CONFIDENTIAL**                                            May 17, 2007

Delphi Corporation                                                    Client #: 39076
5725 Delphi Drive                                                     Case #: 81056
M/C 483-400-603
Troy, MI 48098

| | | |
|---|---|---|
| Monthly Advisory Fees For the Period of March 1, 2007 - March 31, 2007: | $ | 175,000.00 |
| Less 20% Holdbacks: | | (35,000.00) |
| Subtotal: | $ | 140,000.00 |

Out of pocket expenses:

| | | | |
|---|---|---|---|
| Airfare | $ 5,938.60 | | |
| Lodging | 2,250.00 | | |
| Ground Transportation | 952.71 | | |
| Meals | 1,042.26 | | |
| Duplication | 885.80 | | |
| Delivery/Messenger | 16.91 | | |
| Information Resources | 415.78 | | |
| Subtotal: | | $ | 11,502.06 |

| | | |
|---|---|---|
| *Outstanding balance due for invoice dated December 14, 2006, #7871:* | $ | *35,564.51* |
| *Outstanding balance due for invoice dated December 14, 2006, #7925:* | $ | *35,000.00* |
| *Outstanding balance due for invoice dated January 12, 2007, #8091:* | $ | *70,000.00* |
| *Outstanding balance due for invoice dated February 12, 2007, #9161:* | $ | *35,000.00* |

**TOTAL AMOUNT DUE AND PAYABLE:**                             **$    327,066.57**

**PAYMENT DUE UPON RECEIPT**

Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Accoun
Beneficiary Account No:
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:
Swift Code (International Wires only):
Federal ID .

Los Angeles  New York  Chicago  San Francisco  Washington, D.C.  Minneapolis  Dallas  Atlanta  London
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



## HOULIHAN LOKEY HOWARD & ZUKIN

### INVESTMENT BANKING SERVICES
www.hlhz.com

**Invoice: 9649**

**PERSONAL & CONFIDENTIAL**                                        June 22, 2007

Delphi Corporation                                                Client #: 39076
5725 Delphi Drive                                                   Case #: 81056
M/C 483-400-603
Troy, MI 48098

| | | |
|---|---|---|
| Monthly Advisory Fees For the Period of April 1, 2007 - April 30, 2007: | $ | 175,000.00 |
| Less 20% Holdbacks: | | (35,000.00) |
| Subtotal: | $ | 140,000.00 |

Out of pocket expenses:

| | | | |
|---|---|---|---|
| Airfare | $ 6,843.00 | | |
| Lodging | 900.00 | | |
| Ground Transportation | 1,030.48 | | |
| Meals | 217.65 | | |
| Duplication | 68.60 | | |
| Information Resources | 724.72 | | |
| Subtotal: | | $ | 9,784.45 |

**TOTAL AMOUNT DUE AND PAYABLE:**                           **$    149,784.45**

**PAYMENT DUE UPON RECEIPT**
Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No: .
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:
Swift Code (International Wires only):
Federal ID #

Los Angeles  New York  Chicago  San Francisco  Washington, D.C.  Minneapolis  Dallas  Atlanta  London
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.    Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.



H O U L I H A N   L O K E Y   H O W A R D   &   Z U K I N

INVESTMENT BANKING SERVICES

www.hlhz.com

**Invoice: 9796**

**PERSONAL & CONFIDENTIAL**                                                              July 10, 2007

Delphi Corporation                                                                   Client #: 39076
5725 Delphi Drive                                                                    Case #: 81056
M/C 483-400-603
Troy, MI 48098

| | | |
|---|---|---|
| Monthly Advisory Fees For the Period of May 1, 2007 - May 31, 2007: | $ | 175,000.00 |
| Less 20% Holdbacks: | | (35,000.00) |
| Subtotal: | $ | 140,000.00 |

Out of pocket expenses:

| | | | |
|---|---|---|---|
| Airfare | $ 1,487.42 | | |
| Lodging | 1,350.00 | | |
| Ground Transportation | 321.64 | | |
| Meals | 198.01 | | |
| Duplication | 58.20 | | |
| Information Resources | 58.80 | | |
| Subtotal: | | $ | 3,516.77 |

**TOTAL AMOUNT DUE AND PAYABLE:**                                      **$     143,516.77**

**PAYMENT DUE UPON RECEIPT**

Wire Transfer Instructions:
Beneficiary Account Name:  Houlihan Lokey Howard & Zukin Capital, Inc. General Account
Beneficiary Account No:
Beneficiary Bank Name:  Union Bank of California
ABA/Routing Number/Bank ID:
Swift Code (International Wires only):
Federal ID #

Los Angeles   New York   Chicago   San Francisco   Washington, D.C.   Minneapolis   Dallas   Atlanta   London
Broker/dealer services through Houlihan Lokey Howard & Zukin Capital.     Investment advisory services through Houlihan Lokey Howard & Zukin Financial Advisors.

**Exhibit C:**

**Summary Time Records**

# Delphi Corporation
*Monthly Summary of Hours Expended*                                    **Exhibit C**

### KEY

| | | |
|---|---|---|
| **A** | = | *Labor Matters* |
| **B** | = | *General Motors Corporation* |
| **C** | = | *Divestitures & Closings* |
| **D** | = | *Financial Analysis, Due Diligence & Other Matters* |
| **E** | = | *Case Administration & Correspondence* |

### February 2007 Allocation

| Name | A | B | C | D | E | Total |
|------|------|------|------|------|------|-------|
| Eric Siegert | 14.1 | 10.8 | 10.6 | 3.0 | 1.5 | **40.0** |
| Tanja Aalto | 13.8 | 10.3 | 10.8 | 49.6 | 5.6 | **90.0** |
| Steve Hughes | 2.1 | 2.1 | 2.1 | 18.1 | 2.1 | **26.5** |
| Richard Miller | 7.8 | 7.8 | 7.8 | 69.6 | 3.1 | **96.0** |
| Scott Alford | 2.0 | 2.0 | 2.0 | 17.0 | 1.5 | **24.5** |
| Oliver Mathews | 11.4 | 8.9 | 12.9 | 42.6 | 16.1 | **92.0** |
| Daniel Crowley | 16.9 | 15.4 | 15.5 | 96.3 | 4.8 | **149.0** |
| **Total** | **68.1** | **57.3** | **61.7** | **296.2** | **34.7** | **518.0** |

### March 2007 Allocation

| Name | A | B | C | D | E | Total |
|------|------|------|------|------|------|-------|
| Eric Siegert | 11.0 | 11.0 | 11.0 | 9.0 | 0.0 | **42.0** |
| Tanja Aalto | 22.1 | 20.1 | 19.9 | 93.2 | 11.7 | **167.0** |
| Steve Hughes | 1.8 | 1.8 | 1.8 | 31.8 | 1.8 | **39.0** |
| Richard Miller | 33.7 | 33.7 | 33.7 | 85.2 | 1.8 | **188.0** |
| Scott Alford | 1.9 | 1.9 | 1.9 | 7.2 | 0.7 | **13.5** |
| Oliver Mathews | 37.8 | 32.8 | 32.1 | 55.6 | 25.1 | **183.5** |
| Daniel Crowley | 35.6 | 35.6 | 35.6 | 99.8 | 10.8 | **217.5** |
| **Total** | **143.9** | **136.9** | **136.0** | **381.8** | **51.9** | **850.5** |

### April 2007 Allocation

| Name | A | B | C | D | E | Total |
|------|------|------|------|------|------|-------|
| Eric Siegert | 8.3 | 8.3 | 8.3 | 12.5 | 0.0 | **37.5** |
| Tanja Aalto | 19.0 | 17.5 | 18.0 | 91.7 | 3.2 | **149.5** |
| Steve Hughes | 2.2 | 2.2 | 2.2 | 10.0 | 0.0 | **16.5** |
| Richard Miller | 14.7 | 14.7 | 14.7 | 38.2 | 1.2 | **83.5** |
| Scott Alford | 6.5 | 6.5 | 6.5 | 1.5 | 0.0 | **21.0** |
| Oliver Mathews | 6.7 | 6.7 | 6.7 | 48.0 | 17.0 | **85.0** |
| Daniel Crowley | 11.8 | 11.8 | 11.8 | 65.8 | 0.0 | **101.0** |
| **Total** | **69.2** | **67.7** | **68.2** | **267.7** | **21.4** | **494.0** |

# Delphi Corporation

*Monthly Summary of Hours Expended*                                          **Exhibit C**

| KEY | | |
|---|---|---|
| **A** | = | *Labor Matters* |
| **B** | = | *General Motors Corporation* |
| **C** | = | *Divestitures & Closings* |
| **D** | = | *Financial Analysis, Due Diligence & Other Matters* |
| **E** | = | *Case Administration & Correspondence* |

| *May 2007 Allocation* | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **A** | **B** | **C** | **D** | **E** | **Total** |
| Eric Siegert | 5.5 | 5.5 | 5.5 | 12.0 | 1.0 | **29.5** |
| Tanja Aalto | 15.7 | 13.2 | 11.2 | 77.0 | 2.0 | **119.0** |
| Steve Hughes | 8.5 | 8.5 | 8.5 | 9.0 | 0.0 | **34.5** |
| Richard Miller | 16.3 | 16.3 | 16.3 | 40.3 | 2.5 | **91.5** |
| Scott Alford | 9.0 | 9.0 | 9.0 | 0.0 | 0.0 | **27.0** |
| Oliver Mathews | 12.3 | 9.8 | 8.5 | 8.0 | 13.5 | **52.0** |
| Daniel Crowley | 6.5 | 7.5 | 7.0 | 105.5 | 1.0 | **127.5** |
| **Total** | **73.7** | **69.7** | **65.9** | **251.8** | **20.0** | **481.0** |

| *February 2007 - May 2007 Allocation* | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **A** | **B** | **C** | **D** | **E** | **Total** |
| Eric Siegert | 38.9 | 35.7 | 35.4 | 36.5 | 2.5 | **149.0** |
| Tanja Aalto | 70.6 | 61.1 | 59.8 | 311.5 | 22.5 | **525.5** |
| Steve Hughes | 14.6 | 14.6 | 14.6 | 68.9 | 3.9 | **116.5** |
| Richard Miller | 72.4 | 72.4 | 72.4 | 233.2 | 8.6 | **459.0** |
| Scott Alford | 19.4 | 19.4 | 19.4 | 25.7 | 2.2 | **86.0** |
| Oliver Mathews | 68.2 | 58.2 | 60.2 | 154.2 | 71.7 | **412.5** |
| Daniel Crowley | 70.8 | 70.3 | 69.9 | 367.4 | 16.6 | **595.0** |
| **Total** | **354.8** | **331.6** | **331.7** | **1197.4** | **128.0** | **2,343.5** |

# Exhibit D:

# Professional Biographies

**P. Eric Siegert**

Mr. Siegert is a Senior Managing Director in Houlihan Lokey's Financial Restructuring Group. Since joining Houlihan in 1987, Mr. Siegert has worked on over 100 restructuring transactions including many of the largest and most complex in the world. Recent examples include, on the creditor-side, Enron, Conseco, NRG, Mirant, Chiquita, Polaroid, Solutia and Laidlaw, and, on the company-side, Payless Cashways, Purina Mills, C.R. Anthony, AEI Coal and Westmoreland Coal. Mr. Siegert has testified as an expert in Bankruptcy Court on valuation and financial restructuring matters and is a frequent speaker on financial restructuring topics. Mr. Siegert also serves on the board of directors of Alabama River Group (the largest market pulp producer in the U.S.) and Joy Global (NASDAQ: JOYG), both of which he helped guide through financial restructurings. Mr. Siegert has a B.A. in Economics from the University of California at Berkeley.

**Tanja I. Aalto**

Ms. Aalto is a Director in Houlihan Lokey's Financial Restructuring Group and has been a member of Houlihan Lokey's New York team since 1997. Prior to joining Houlihan Lokey, Ms. Aalto's work experience included three years at a boutique consulting firm specializing in new market entry, acquisition strategy and competitive positioning. Ms. Aalto graduated with a B.A. in economics from Princeton University in 1992 and received her M.A. in business administration from the Darden School of Business at the University of Virginia in 1997.

**Steven E. Hughes**

Mr. Hughes is a Director in Houlihan Lokey's Chicago office, where he works primarily on mergers and acquisitions in the automotive, plastics, and diversified industrials sectors. Other assignments have included software, telecommunications, and healthcare mergers and acquisitions, as well as private placements of debt and equity and fairness opinion engagements. Prior to joining Houlihan Lokey, Mr. Hughes was an associate with BT.Alex Brown (now Deutsche Bank) where he was involved in raising over $2.0 billion in the high yield bond and leveraged syndicated loan markets in a variety of industries. Mr. Hughes graduated with honors from the University of Chicago Graduate School of Business receiving a M.B.A. in finance and accounting, and holds a bachelors degree in business from the University of Iowa. He is licensed with the NASD as a General Securities Registered Representative (Series 7, 63).

### Richard Miller

Mr. Miller joined Houlihan Lokey's New York office as an Associate in 2005. Prior to that, he spent three years in the Recapitalization and Restructuring Group of Jefferies & Company, Inc. in both the New York and London offices. During his time at Jefferies, Mr. Miller worked on various large creditor assignments and cross-boarder restructurings including: Budget Group, Revlon, AMERCO, Viasystems, Exide Technologies, Formica and High Voltage Engineering. Prior to joining Jefferies, he worked at Lazard Frères & Co., focusing on restructurings as well as mergers and acquisitions. Mr. Miller has also worked at Lehman Brothers in New York where he held positions in equity research and investment banking. Mr. Miller received a B.A. in Economics, summa cum laude, from Emory University.

### Scott E. Alford

Mr. Alford is an Associate in Houlihan Lokey's Chicago office, where he works on a wide range of merger and acquisition and financing transactions in the automotive, metals, and diversified industrial sectors. Prior to joining Houlihan Lokey, Mr. Alford was an associate with Century Capital Group, a boutique investment bank focusing on middle market merger, acquisition and corporate finance advisory services for companies in a wide range of industries. Previously he worked as a senior associate for Scudder Investments, the asset management subsidiary of Deutsche Bank. Mr. Alford received a B.B.A. in finance from the University of Iowa and an M.B.A. in analytic finance and accounting from the University of Chicago's Graduate School of Business. He is licensed with the Securities and Exchange Commission through the NASD as a General Securities Registered Representative (Series 7, 63).

### Oliver Mathews

Mr. Mathews is an Associate in Houlihan Lokey's New York office. Since joining Houlihan Lokey in 2004, Mr. Mathews has worked on a variety of restructuring engagements, including creditor and equity committee advisory in Chapter 11 cases, in- and out-of-court distressed mergers and acquisitions, special situation financings and valuations of distressed companies. Selected engagements include High Voltage Engineering, PRG Schultz, SunCruz Casinos, TIMCO Aviation Services, Tony Roma's and Tower Automotive,. Mr. Mathews received a B.S. in business administration, magna cum laude, from the University of Vermont.

### Daniel F. Crowley III

Mr. Crowley is a Financial Analyst in the Financial Restructuring Group in the New York office of Houlihan Lokey. Prior to joining Houlihan Lokey in 2006, Mr. Crowley worked for a boutique investment fund in Greenwich, CT that specialized in managing institutional money. Mr. Crowley received his B.A. in economics from Columbia College, and graduated cum laude from Phillips Academy in Andover, MA.

# Exhibit E:

# Summary of Out of Pocket Expenses

**Delphi Corporation**
*Detailed Breakout of Expenses*

### February 1, 2007 - February 28, 2007

| | |
|---|---|
| Airfare | $9,376.00 |
| Lodging | 900.00 |
| Ground Transportation | 1,002.37 |
| Meals | 367.47 |
| Telephone | 12.90 |
| Delivery/Messenger | 49.55 |
| Duplication/Office Expense | 0.00 |
| Information Resources | 817.96 |
| **Total** | **$12,526.25** |

### March 1, 2007 - March 31, 2007

| | |
|---|---|
| Airfare | $5,938.60 |
| Lodging | 2,250.00 |
| Ground Transportation | 803.43 |
| Meals | 1,042.26 |
| Telephone | 0.00 |
| Delivery/Messenger | 16.91 |
| Duplication/Office Expense | 885.80 |
| Information Resources | 415.78 |
| **Total** | **$11,352.78** |

### April 1, 2007 - April 30, 2007

| | |
|---|---|
| Airfare | $6,843.00 |
| Lodging | 900.00 |
| Ground Transportation | 978.31 |
| Meals | 217.65 |
| Telephone | 0.00 |
| Delivery/Messenger | 0.00 |
| Duplication/Office Expense | 68.60 |
| Information Resources | 724.72 |
| **Total** | **$9,732.28** |

### May 1, 2007 - May 31, 2007

| | |
|---|---|
| Airfare | $1,487.42 |
| Lodging | 1,350.00 |
| Ground Transportation | 321.64 |
| Meals | 198.01 |
| Telephone | 13.85 |
| Delivery/Messenger | 28.85 |
| Duplication/Office Expense | 58.20 |
| Information Resources | 58.80 |
| **Total** | **$3,516.77** |

### February 1, 2007 - May 31, 2007

| | |
|---|---|
| Airfare | $23,645.02 |
| Lodging | 5,400.00 |
| Ground Transportation | 3,105.75 |
| Meals | 1,825.39 |
| Telephone | 26.75 |
| Delivery/Messenger | 95.31 |
| Duplication/Office Expense | 1,012.60 |
| Information Resources | 2,017.26 |
| **Total** | **$37,128.08** |