**Hearing Date and Time: October 25, 2007 at 10:00 a.m.**
**Objection Deadline: October 18, 2007 at 4:00 p.m.**

SHEARMAN & STERLING LLP

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179
Douglas P. Bartner (DB-2301)
Jill Frizzley (JF-8174)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
                                                             :
                                                             :
In re:                                                       :      Chapter 11
                                                             :
DELPHI CORPORATION, et al.,                                  :      Case No.  05 – 44481 (RDD)
                                                             :
                    Debtors.                                 :      (Jointly Administered)
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------x
```

COVER SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR INTERIM COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

NAME OF APPLICANT:        Shearman & Sterling LLP

TIME PERIOD:              February 1, 2007 through May 31, 2007

ROLE IN THE CASE:         Special Counsel to the Debtors and the Debtors in Possession

DATE OF FINAL RETENTION:  November 4, 2005

APPLICATION:              Fees Requested:                          $366,152.65
                          Voluntary Fee Reductions:                  $8,299.50
                          Expenses Requested:                       $14,177.27
                          Existing Holdback (20%):                  $73,230.53
                          Holdback Requested
                          (inclusive of voluntary reductions):      $64,931.03

PRIOR APPLICATION:        March 2, 2007

THIS IS A(N):             X  Interim      ___ Final Application

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179
Douglas P. Bartner (DB-2301)
Jill Frizzley (JF-8174)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
:
:
:
In re:                                                          :          **Chapter 11**
:
**DELPHI CORPORATION, et al.,**                                 :          **Case No.  05 – 44481 (RDD)**
:
                              **Debtors.**                      :          **(Jointly Administered)**
:
:
:
-------------------------------------------------------------x

**FIFTH APPLICATION OF SHEARMAN & STERLING LLP, AS
SPECIAL COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF INTERIM
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FROM FEBRUARY 1, 2007 THROUGH MAY 31, 2007**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Shearman & Sterling LLP ("S&S"), special counsel to Delphi Corporation and

certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors"), submits this application (this "Application"),

pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the interim allowance of compensation for professional services performed by S&S for the

period from February 1, 2007 through May 31, 2007 (the "Compensation Period"), and for

reimbursement of actual and necessary expenses incurred during the Compensation Period and

respectfully represent:

**Professional Compensation**
**and Reimbursement of Expenses Requested**

1.        S&S prepared this application in accordance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"),

the Order Under 11 U.S.C. § 331 Establishing Procedures for Monthly Compensation and

Reimbursement of Expenses of Professionals (Docket No. 869) (the "Monthly Compensation

Order,") the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals (Docket No. 2147)(the

"Supplemental Compensation Order"), the Second Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (Docket No. 2986)(the "Second Supplemental Compensation Order"), the Third

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals (Docket No. 3630)(the "Third Supplemental

Compensation Order") including the Fee Committee And Fee Procedures Protocol approved by

the Court (the "Fee Protocol"), the Fourth Supplemental Order Under 11 U.S.C. § 331

Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals (Docket No. 4545)(the "Fourth Supplemental Compensation Order"), the Fifth

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals (Docket No. 5310)(the "<u>Fifth Supplemental Compensation Order</u>") and the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 6145)(the "<u>Sixth Supplemental Compensation Order</u>" together with the Local Guidelines, UST Guidelines, Monthly Compensation Order, Supplemental Compensation Order, Second Supplemental Compensation Order, Third Supplemental Compensation Order, Fee Protocol, Fourth Supplemental Compensation Order and the Fifth Supplemental Compensation Order, the "<u>Guidelines</u>").  Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as <u>Exhibit A</u>.

2.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

3.      S&S seeks allowance of the interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $357,853.15[1] and for reimbursement of expenses incurred in connection with the rendition of such services in the aggregate amount of $14,177.27   During the Compensation Period, S&S attorneys and paraprofessionals expended a total of 702.9 hours for which compensation is requested.

4.      Pursuant to Bankruptcy Rule 2016(b), there is no agreement or understanding between S&S and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases.

---

[1] Pursuant to this Application S&S voluntarily is reducing the amount of compensation sought for professional services rendered to the Debtors from $366,152.65 to $357,853.15.  The voluntary reductions, totaling $8,299.50, are further described in paragraph 43 herein and set out in detail in Exhibit D hereto.

5.       S&S's fees in these cases are billed in accordance with its existing billing rates and procedures in effect for the representation of the Debtors in relation to the chapter 11 cases (the "Bankruptcy Matters") and for the representation of Delphi Corporation, affiliated non-debtors, certain current and former officers and certain current and former directors in relation to an investigation and several litigation matters (the "Litigation Matters," and together with the Bankruptcy Matters, "Delphi Matters") during the Compensation Period.  The rates S&S charges for the services rendered by its professionals and paraprofessionals in relation to the Bankruptcy Matters are generally the same rates S&S charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.  The rates S&S charges for the services rendered by its professionals and paraprofessionals in relation to the Litigation Matters were discounted through a specified date pursuant to a separate agreement between Debtors and S&S as further described herein.

6.       Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule setting forth all S&S professionals and paraprofessionals who have performed services in relation to the Delphi Matters during the Compensation Period, the capacities in which each such individual is employed by S&S, the department in which each individual practices, the hourly billing rate charged by S&S for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefor, and the year in which each professional was first licensed to practice law.

7.      Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of expenses for which S&S is seeking reimbursement and the total amount for each such expense category.

8.      Pursuant to Section II.D of the UST Guidelines, annexed hereto as <u>Exhibit D</u> is a summary by project categories of the services performed by S&S during the Compensation Period.

9.      S&S maintains computerized records of the time spent by all S&S attorneys and paraprofessionals in connection with the Delphi Matters.  Subject to redaction for the attorney-client privilege or confidential information where necessary to protect the Debtors' estates, copies of these computerized records have been furnished to the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), the attorneys for the official committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Creditors Committee</u>"), the attorneys for the committee of equity security holders appointed in these chapter 11 cases (the "<u>Equity Committee</u>"), the attorneys for the Debtors prepetition lenders (the "<u>Prepetition Lenders</u>"), the attorneys for the Debtors' postpetition lenders (the "<u>DIP Lenders</u>") and the joint fee review committee (the "<u>Fee Review Committee</u>") in connection with S&S's monthly fee statements.

10.     As of the date hereof, S&S maintains a retainer in the amount of $325,324.92 for professional service performed and to be performed, and expenses incurred and to be incurred, in connection with the Delphi Matters.

11.     Also in accordance with the Monthly Compensation Order, S&S submitted monthly statements to the Debtors (and certain other parties-in-interest as set forth in

the Monthly Compensation Order), and received payments on account of monthly statements submitted during the Compensation Period, as follows:

| Monthly Statement | Total Fees | 80% of Fees | 20% of Fees | Expenses (100%) |
|---|---|---|---|---|
| February 1, 2007 – February 28, 2007 | $90,309.40 | $72,247.52 Payment Received | $18,061.88 | $3,507.71 Payment Received |
| March 1, 2007 – March 31, 2007 | $95,844.75 | $76,675.80 Payment Received | $19,168.95 | $5,177.00 Payment Received |
| April 1, 2007 – April 30, 2007 | $74,724.50 | $59,779.60 Payment Received | $14,944.90 | $2,695.07 Payment Received |
| May 1, 2007 – May 31, 2007 | $105,274.00 | $84,219.20 **Payment Outstanding** | $21,054.80 | $2,797.49 **Payment Outstanding** |
| **TOTAL** | $366,152.65 | $292,922.12 | $73,230.53 | $14,177.27 |

12.     As set forth above, S&S has received payments totaling $220,082.70 representing payment of eighty percent (80%) of the fees for professional services and one hundred percent (100%) of the expenses incurred by S&S for the period February 1, 2007 through April 30, 2007.

13.     On or about June 28, 2007, S&S submitted to the Debtors its monthly fee statement for the period from May 1, 2007 to May 31, 2007 seeking payment of 80% of the fees requested and 100% of the expenses requested in accordance with the Monthly Compensation Order.  Since the 45-day objection period provided for in the Monthly Compensation Order has not expired as of the date hereof, S&S has not received any payments on account of this monthly fee statement.

14.     Accordingly, the Debtors hereby seek approval of a total of $357,853.15[2] in fees during the Compensation Period.  The Debtors hereby also seek approval of a total of

---

[2] As outlined in footnote 1 and paragraph 43 herein, the amount of fees being sought for approval pursuant to this Application represents total fees of $366,152.65 minus voluntary reductions totaling $8,299.50.

$14,177.27 in expenses for the Compensation Period.  The total of the 20% holdback of fees for the Compensation Period is $73,230.53, which is outstanding as of the date hereof.

15.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, S&S reserves the right to request additional compensation for such services and reimbursement of such expenses in a future fee application.

## Background

16.      On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under chapter 11 of the Bankruptcy Code.

17.     On October 17, 2005, the U.S. Trustee appointed the Creditors' Committee.  As of the date hereof, no request has been made for the appointment of a trustee or examiner in these cases.

18.     Pursuant to the Court's order dated March 30, 2006, the U.S. Trustee appointed the Equity Committee on April 28, 2006.

19.     On May 5, 2006, the Court appointed the Fee Review Committee consisting of representatives of the Office of the U.S. Trustee, the Debtors and the Creditors' Committee.

20.     The Debtors have continued in possession of their respective properties and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

21.    Pursuant to an order of this Court dated November 4, 2005 (Docket No. 1376), the Debtors were authorized to retain S&S on a final basis as their special counsel to render legal services in the prosecution of these chapter 11 cases (the "S&S Retention Order").

22.    S&S does not hold or represent any interest adverse to the estates, and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code.  S&S has previously filed affidavits with this Court attesting to its disinterestedness (Docket Nos. 49, 845 and 6741).

23.    No disclosure statement or plan of reorganization has been filed with this Court as of the date hereof.  The Debtors have the exclusive right to file a chapter 11 plan through December 31, 2007 and the Debtors may exclusively solicit acceptances on such a plan through February 29, 2008.

### Summary of Services

24.    The Debtors' chapter 11 cases are large and complex.  Since the inception of these chapter 11 cases S&S has dedicated significant resources to help the Debtors finance and stabilize their ongoing business operations.  During the Compensation Period, S&S assisted – consistent with its role as 327(e) special counsel and at the request of the Debtors' 327(a) restructuring counsel – in legal research and the preparation of memoranda, presentations for the board of directors, and other relevant documents on behalf of the Debtors.  As of the date hereof, over a year and a half from the commencement of these chapter 11 cases, there are over 8738 docket entries for these cases.  These figures evidence the size of these chapter 11 cases and, accordingly, the magnitude of the professional services that these cases have demanded.

25.    During the Compensation Period, S&S spent significant time and expended considerable efforts in advising Delphi with respect to various board issues.  S&S also has devoted time and effort in advising the Debtors with respect to its postpetition financing

facility (the "DIP Facility") and rendering related services to the Debtors throughout these chapter 11 cases.

26.    In addition, S&S represents Delphi Corporation, affiliated non-debtors and certain current and former officers and directors in connection with the Litigation Matters with respect to numerous putative class actions in federal court alleging violations of, among other things, the federal securities laws and the Employee Retirement Income Securities Act of 1974 ("ERISA") and both federal and state derivative actions alleging, among other things, breaches of various fiduciary duties.  The federal securities, ERISA and derivative actions have been transferred to the United States District Court for the Eastern District of Michigan for coordinated or consolidated pretrial proceedings before Judge Gerald E. Rosen.  The federal and state derivative actions have been administratively closed in light of the bankruptcy stay.  S&S also represents Delphi Corporation with respect to an investigation by the United States Securities and Exchange Commission ("SEC") in connection with issues relating to Other Postemployment Benefits ("OPEB").

27.    Given the complexity of the chapter 11 cases and the litigation matters in which S&S represents the Debtors, certain matters required the attention of two or more S&S attorneys with expertise in different areas of law.  For example, attorneys in S&S's bankruptcy and finance groups coordinated their efforts in preparing documents in connection with the postpetition financing facility and S&S's litigation attorneys consult with bankruptcy attorneys as required.

28.    To ensure that the legal fees were appropriate given the nature of the matter or dispute at issue, attorneys with lower billing rates were assigned to handle certain matters, such as researching and preparing initial drafts of documents.  In order to utilize S&S

attorneys in this cost-effective manner, more senior attorneys reviewed the work of junior attorneys and, when necessary, meetings were held among attorneys to coordinate their efforts. Absent meetings of this nature, all matters would have been handled by the senior attorney – at a higher cost to the estate – who more often had direct contact with the Debtors and other parties in interest and their respective counsel.

29.    To facilitate effective review of this Application, in accordance with the UST Guidelines and the Fee Protocol, S&S has utilized the following separate billing categories and project codes during the compensation period as appropriate:

| Litigation Matters | S&S Matter | Delphi Project Code |
|---|---|---|
| * Securities Class Action Litigation | 20 | 23 S&S |
| * Derivative Lawsuits | 21 | 24 S&S |
| * ERISA Class Action Litigation | 22 | 25 S&S |
| | | |
| Bankruptcy Matters | | |
| * Case Administration | 26 | 4 |
| * DIP Financing | 28 | 9 |
| * Employment Applications & Objections | 31 | 8 |
| * Fee Applications & Objections | 33 | 7 |
| * General Corporate | 36 | 10 |
| * Non-Working Travel | 38 | 30 S&S |
| * Expenses | 46 | 34 S&S |
| * Securities Advice | 48 | 36 S&S |
| * Board Advice | 49 | 37 S&S |

30.    Set forth below is a brief summary of certain of the matters on which S&S spent a significant number of hours and it is not meant to be a detailed description of all of the work performed, nor does it necessarily reflect all of the separate billing categories established by S&S.  A complete summary of the fees attributable to each category is provided in Exhibit D hereto.  The time details which fully describe the day-to-day services provided by S&S, and the time expended performing such services in each of the categories, have been served upon those

parties set forth in the Monthly Compensation Order and are available for review by any other interested party upon request to S&S.

## LITIGATION MATTERS

A. <u>Securities Class Action</u> (Fees: $253,244.10 Hours: 483.5)

- Reviewed materials regarding status of litigation and participated in numerous teleconferences and communications with Debtors' counsel and co-defendants' counsel concerning general operational issues related to the litigation.

- Reviewed materials regarding economic consultant analyses and communications regarding same.

- Reviewed materials regarding related SEC complaint and communications regarding same.

- Conducted legal research and reviewed materials regarding PSLRA discovery stay and communications regarding same.

- Prepared motion papers for reconsideration of Court's lift-stay order and communications regarding same.

- Reviewed materials regarding entry of confidentiality order and communications regarding same.

- Reviewed materials regarding mediation and communications regarding same.

B. <u>ERISA Class Action Litigation</u> (Fees: $26,277.80 Hours: 43.4)

- Reviewed materials regarding status of litigation and participated in teleconferences and communications with Debtors' counsel and co-defendants' counsel concerning general operational issues related to the litigation.

- Reviewed materials regarding economic consultant analyses and communications regarding same.

- Reviewed materials regarding entry of confidentiality order and communications regarding same.

C. <u>Derivative Lawsuits</u> (Fees: $5,113.50 Hours: 9.2)

- Reviewed materials regarding status of pending and new litigation and communications regarding same.

- Prepared suggestion of bankruptcy papers for new lawsuit.

## BANKRUPTCY MATTERS

D.  <u>Debtor In Possession Financing</u> (Fees: $14,473.00; Hours: 24.7)

- Rendered advice to the Debtors with respect to the Debtors' use of and compliance with t     he DIP Facility.

- Advised Debtors, participated in meetings and teleconferences regarding and drafted an amendment to the ISDA Agreement.

- Negotiated and obtained amendments to the DIP Facility as necessary.

- Prepared 8-K filings with respect to amendments to the DIP Facility.

- Advised Debtors regarding collateral access agreements to the DIP Facility.

E.  <u>Fee Applications & Objections</u> (Fees: $13,080.00; Hours: 51.9)

- Reviewed and revised monthly invoices in order to ensure compliance with the Guidelines.

- Prepared monthly fee statements and served the same in compliance with the Guidelines.

- Prepared, filed and served the Fourth Application of Shearman & Sterling LLP, as Special Counsel to the Debtors, for Allowance of Interim Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from October 1, 2006 through January 31, 2007 (the "<u>Fourth Interim Fee Application</u>").

- Revised billing procedures in order to comply with the Fee Protocol.

- Reviewed the Fee Review Committee's report, as prepared by Legal Cost Control, regarding S&S's Fourth Interim Fee Application and prepared response to same.

- Attended teleconference with the Fee Review Committee regarding the report on S&S's Fourth Interim Fee Application.

- Prepared budget for the period from February 1, 2007 through May 31, 2007 in compliance with the Fee Protocol.

F. <u>Board Advice</u> (Fees: $36,335.00; Hours: 45.1)

- Prepared for and attended board meetings.

- Advised Debtors and participated in meetings and teleconferences regarding certain director and officers' liability issues.

- Conducted research and case law analysis regarding director and officers' liability coverage and claim settlements.

- Prepared a legal memoranda with respect to the director and officers' liability issues presented.

31.     S&S submits that the professional services performed by S&S were necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and other parties in interest.  Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

32.     Pursuant to a separate arrangement between S&S and the Debtors those services performed through February 28, 2007 in relation to the Litigation Matters were billed with the application of certain discounts to fees and expenses (the "<u>Discounted Rate</u>").  In accordance with the Discounted Rate, the rates charged through the date indicated above, with respect to the Litigation Matters were discounted by 10%.  In addition, the Debtors were not billed for non-working travel time relating to the Litigation Matters while the Discounted Rate was in effect.  As of March 1, 2007, the rates S&S charges for the services rendered by its professionals and paraprofessionals in relation to the Litigation Matters are generally the same rates S&S charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation

charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

33.    The professional services performed by S&S on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 702.9 recorded hours by S&S's members, counsel, associates, and paraprofessionals.  Of the aggregate time expended, 369.2 recorded hours were expended by partners and counsel of S&S, 197.1 recorded hours were expended by associates, and 136.6 recorded hours were expended by paraprofessionals of S&S. The professional services were performed with expedience and in an efficient manner.

34.    During the Compensation Period, S&S's hourly billing rates for attorneys ranged from $414.00 to $875.00 per hour.  Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $594.06 (based on 566.3 recorded hours for attorneys at S&S's regular and negotiated billing rates in effect at the time of the performance of services).  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy cases in a competitive national legal market.  As noted, attached hereto as Exhibit B is a schedule listing each S&S professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by S&S for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

**Actual and Necessary Disbursements of S&S**

35.    As set forth in Exhibit C hereto, S&S has disbursed $14,177.27 in expenses incurred in providing professional services during the Compensation Period.  These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases. For example, in order for S&S to properly analyze and address the complex issues that have arisen in these chapter 11 cases, S&S attorneys performed considerable electronic research

during the Compensation Period, all of which was necessary to facilitate the Debtors' reorganization and in the best interests of the Debtors' estates.

36.     S&S's regular practice is not to include components for expense charges in overhead when establishing billing rates and to charge its clients for those out-of-pocket disbursements incurred during the regular course of the rendition of services on their behalf.  The reimbursement amounts do not exceed those set forth in the Guidelines.

37.     In accordance with the Fee Protocol, attorneys and other employees who worked late into the evening and who billed at least 8 hours to the Delphi Matters during that day were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.  Prior to the effectiveness of the Fee Protocol and in accordance with firm policy and the Local Guidelines and UST Guidelines, S&S had reimbursed employees for reasonable meal and transportation costs when it was necessary for them to work late into the evening on Delphi matters although they may have billed less than eight hours in that day to the Delphi Matters.

38.     Consistent with firm policy, attorneys and other employees of S&S who worked on weekends also were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.

39.     Pursuant to the Fee Protocol, as of September 1, 2006 S&S has charged $0.10 per page for photocopying expenses with respect to all of the Delphi Matters.

40.     In compliance with the Guidelines S&S does not charge for in-coming facsimiles.  With respect to out-going facsimile expenses, as permitted in the Guidelines, S&S charges $1.25 per page for domestic facsimile transmissions and $2.50 per page for international facsimile transmissions.  These charges are intended to cover S&S's direct operating costs, which costs are not incorporated into the S&S hourly billing rates.  Only clients who actually use

services of the types set forth in Exhibit C hereto are charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose unfairly such costs upon clients who do not require extensive photocopying and other facilities and services.

41.    In addition, because of the multiple locations of the Debtors' businesses, long distance telephone calls were required.  On several occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in S&S's overhead for the purpose of setting billing rates.  S&S has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

42.    Throughout these cases, S&S has expended a considerable effort to "self police" its fees by critically reviewing all time charges entered into its billing system.  S&S's vigilance in scrutinizing the time billed to the Debtors' has led to the following voluntary reductions.

43.    In light of discussions with the Debtor and the Fee Review Committee regarding the Fourth Interim Fee Application S&S voluntarily is reducing the amounts charged in association with compliance with the fee protocol and responding to LCC requests as well as amounts in association with the functions performed by S&S's Managing Attorney's office such as the retrieval and routing of updated docket reports and calendar management.  This results in a voluntary fee reduction in the amount $7,380.00 with respect to protocol compliance fees and $919.50 with respect to docket and calendar related fees.  Such voluntary reductions total

$8,299.50, in the aggregate for the Fee Period and have been applied to reduce the amount of fees sought pursuant to this application.  These reductions are detailed in Exhibit D hereto.

44.      The Fee Protocol also mandates that non-working travel time be billed at 50% effective as of September 1, 2006.  From the outset of these cases S&S voluntarily has billed its non-working travel time for the Bankruptcy Matters at 50%.  For the Fee Period, this results in a fee reduction of $7,393.75.  These reductions were taken on a monthly basis and are already incorporated into the exhibits hereto.

45.      The fee reductions set forth above are in addition to efforts usually expended by S&S to ensure that its clients are not charged for unnecessary services.  In that regard, as is the firm's policy, S&S carefully managed staffing in a manner to avoid overstaffing and, where possible (after taking into consideration the nature and complexity of a matter or dispute), utilized attorneys with lower billing rates.

## The Requested Compensation Should Be Allowed

46.      Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern this Court's award of such compensation.  11 U.S.C. § 331.  Section 330 of the Bankruptcy Code, provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, extent and the value of such services, taking into account all relevant factors, including –
>
> > the time spent on such services;
> >
> > the rates charged for such services;

> whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

> whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and

> whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than in cases under this title.

11 U.S.C. § 330(a)(3).

47.     Applying these factors, S&S respectfully submits that the services for which it seeks compensation in this Application were beneficial and necessary to the Debtors' cases and reorganization.  Moreover, S&S submits that the compensation sought for these services is reasonable in light of the nature, extent and value of those services to the Debtor, its estate and all parties in interest.

48.     Throughout the Compensation Period, S&S worked diligently to anticipate obstacles to the Debtors' reorganization and to respond to the problems it faced -- from emergent crises to more mundane matters.  These services, in addition to the services more directly focused on the reorganization process, were necessary and beneficial to the Debtors' estate and were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved.  Accordingly, allowance of the compensation sought herein is warranted.

49.     In addition to time and labor devoted, other factors may be considered in awarding fees for legal services.  In considering the reasonableness of fees, courts often consider the standards established in In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904 (1977), and then to determine what a reasonable fee would be under the circumstances.  See also D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383

(9th Cir. 1990); <u>Kerr v. Screen Extras Guild, Inc</u>., 526 F.2d 67, 70 (9th Cir. 1976).  Accordingly, these factors generally considered in determining the reasonableness of a fee application are: (i) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (ii) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (iii) the fee customarily charged in the locality for similar services; (iv) the amount involved and the results obtained; (v) the time limitations imposed by the client or by circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the experience, reputation and ability of the lawyer or lawyers performing the services; and (viii) whether the fee is fixed or contingent.  All of these factors justify the compensation sought herein.

## No Duplication of Service Among Counsel

50.    S&S has developed a cooperative working relationship with other firms retained by the Debtors, including, among others, Skadden, Arps, Slate, Meagher & Flom LLP, Togut, Segal & Segal LLP, the Groom Law Group Chartered and O'Melveney & Myers LLP. Because each firm is aware of each of the other's role and scope of services being provided to the Debtors, S&S believes that no unnecessary duplication of services has occurred.  As a result, the Debtors' law firms were able to provide the necessary legal services to the Debtors in an expeditious and efficient manner.

## Review of Application by Debtors

51.    As provided in section II.A.5 of the UST Guidelines, the officer designated by the Debtors to be responsible for such matters, David Sherbin, has been provided with a copy of this Application.  Mr. Sherbin has approved the amounts requested for

compensation for professional services and reimbursement of actual and necessary expenses as set out in this Application.

## Requirements of Local Rule 9013-1(b)

52.    Given that there are no novel issues of law presented herein and that the legal authority for the relief being sought is set forth herein, S&S respectfully requests that this Court waive the requirement that S&S file a memorandum of law in support of this Application as provided in Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

## No Prior Request

53.    No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE S&S respectfully requests (i) allowance of compensation for professional services rendered during the Compensation Period in the amount of $357,853.15, inclusive of voluntary fee reductions, and reimbursement for actual and necessary expenses S&S incurred during the Compensation Period in the amount of $14,177.27 (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to S&S's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (iii) this Court grant S&S such other and further relief as is just.

Dated:    New York, New York
          July 31, 2007


                              By:    /s/ Douglas P. Bartner
                                     Douglas P. Bartner (DB-2301)
                                     Jill Frizzley (JF-8174)


                                     SHEARMAN & STERLING LLP
                                     599 Lexington Avenue
                                     New York, New York  10022
                                     Telephone: (212) 848-4000
                                     Facsimile:  (212) 848-7179

                                     Special Counsel to the Debtors and
                                     Debtors in Possession

**EXHIBIT A**

SHEARMAN & STERLING LLP

599 Lexington Avenue

New York, New York 10022

Telephone: (212) 848-4000

Facsimile: (212) 848-7179

Douglas P. Bartner (DB-2301)

Jill Frizzley (JF-8174)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                   :

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **DELPHI CORPORATION, et al.,** | **Case No. 05 – 44481 (RDD)** |
| Debtors. | **(Jointly Administered)** |

---------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND
DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIFTH INTERIM
APPLICATION OF SHEARMAN & STERLING LLP FOR ALLOWANCE OF
INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES**

       I, Douglas P. Bartner, hereby certify that:

       I am a partner with the applicant firm, Shearman & Sterling LLP ("S&S"), with

responsibility for the engagement of S&S as special counsel in the chapter 11 cases of Delphi

Corporation and its affiliated debtors (collectively, the "Debtors"), in respect of compliance with

the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of

New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"),

the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the

1

"UST Guidelines"), and the Order Under 11 U.S.C. § 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (Docket No. 869) (the "Monthly Compensation Order,") the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 2147)(the "Supplemental Compensation Order"), the Second Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 2986)(the "Second Supplemental Compensation Order"), the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 3630)(the "Third Supplemental Compensation Order") including the Fee Committee And Fee Procedures Protocol approved by the Court (the "Fee Protocol"), the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 4545)(the "Fourth Supplemental Compensation Order") and the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 5310)(the "Fifth Supplemental Compensation Order") and the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 6145)(the "Sixth Supplemental Compensation Order" together with the Local Guidelines, UST Guidelines, Monthly Compensation Order, Supplemental Compensation Order, Second Supplemental Compensation Order, Third Supplemental Compensation Order, Fee Protocol, Fourth Supplemental Compensation Order and the Fifth Supplemental Compensation Order, the "Guidelines").

    This certification is made in respect of S&S's fifth interim fee application, dated

July 31, 2007 (the "Application"), for approval of interim compensation and reimbursement of

expenses for the period commencing February 1, 2007 through and including May 31, 2007 (the

"Fifth Compensation Period") in accordance with the Guidelines.

In respect of Section B.1 of the Local Guidelines, I certify that:

a.    I have read the Application;

b.    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

c.    the fees and disbursements sought are billed at rates in accordance with practices customarily employed by S&S and generally accepted by S&S's clients; and

d.    in providing a reimbursable service, S&S does not make a profit on that service, whether the service is performed by S&S in-house or through a third party.

In respect of section B.2 of the Local Guidelines and as required by the Interim

Compensation Order, I certify that S&S has complied with the provision requiring it to provide

the Debtors, counsel for the Official Committee of Unsecured Creditors appointed in these cases

(the "Creditors' Committee"), the attorneys for the committee of equity security holders

appointed in these chapter 11 cases (the "Equity Committee"), the attorneys for the Debtors'

prepetition lenders (the "Prepetition Lenders"), the attorneys for the Debtors' postpetition lenders

(the "DIP Lenders"), the joint fee review committee (the "Fee Review Committee") and the

United States Trustee for the Southern District of New York (the "United States Trustee"), on a

monthly basis, with a statement of S&S's fees and disbursements accrued during the previous

month.

In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the

Creditors' Committee and the United States Trustee are each being provided with a copy of the

Application.

Dated: New York, New York
      July 31, 2007

                                   /s/ Douglas P. Bartner
                                   Douglas P. Bartner (DB-2301)

**EXHIBIT B**

February 1, 2007 – May 31, 2007

# TIMEKEEPER SUMMARY

| Name of Professional Person | *Position of the Applicant, Area of Expertise, Date of Initial Employment, Year of Obtaining License to Practice | Hourly Billing Rate♦ (including changes) | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Baker, Michael S. | Partner since 2006, F 1998 1999 | $650.00 | 13.4 | $8,710.00 |
| Bartner, Douglas P. | Partner since 1991, BR 1982 1983 | $875.00 | 56.5 | $42,175.00 |
| Baskin, Stuart | Partner since 1989, LT 1989 1976 | $858.64 | 44.2 | $37,951.80 |
| Greene, Nathan | Partner since 2007, AM 2001 2000 | $650.00 | 1.1 | $715.00 |
| Polovoy, Brian H. | Partner since 2003, LT 1992 1993 | $734.46 | 96.5 | $70,875.00 |
| Ashley, Marc D. | Associate LT 2002 1995 | $560.20 | 157.5 | $88,232.00 |
| Chanda, Parthapratim | Associate LT 2004 2005 | $414.00 | 124.6 | $56,317.80 |
| Frizzley, Jill K. | Associate BR 2000 2002 | $550.00 | 8.8 | $4,840.00 |
| Gruber, Alan S. | Associate LT 2003 2004 | $414.00 | 0.7 | $289.80 |
| Heath, Wesley J. | Associate LT 2003 2004 | $414.95 | 24.3 | $10,083.20 |
| Jackson, John D. | Associate AM 2003 2004 | $460.00 | 3.8 | $1,748.00 |
| Kieval, Michael | Associate LT 2006 2005 (VA) | $364.86 | 22.5 | $8,209.35 |
| Nguyen, Henry | Associate BR 2003 2004 | $460.00 | 1.1 | $506.00 |
| Spraggs, Cherie L. | Associate BR 2001 2002 | $510.00 | 11.3 | $5,763.00 |
| Luketic, Marian D. | Specialist BR 2000 1997 | $250.00 | 70.3 | $17,575.00 |

| Weiner, Ira | Managing Attorney 1993 | $323.00 | 0.8 | $258.40 |
| Marcopoulos, Alexander | Summer Associate 2005 | $235.00 | 4.0 | $940.00 |
| Bodly, Jill | Legal Assistant LT 2005 | $178.09 | 41.5 | $7,390.80 |
| Ko, Jae | Legal Assistant LT 2005 | $230.00 | 5.0 | $1,150.00 |
| Guzman, Jessica | Analyst GTS 2000 | $200.00 | 6.0 | $1,200.00 |
| Quintos, Jose | Analyst GTS 2005 | $120.00 | 3.8 | $456.00 |
| Molinelli, Maria | Law Clerk Supervisor 1988 | $170.29 | 2.6 | $442.75 |
| Feliciano, Luis | Law Clerk 2004 | $175.00 | 1.5 | $131.25 |
| Jankay, Brian | Law Clerk 2006 | $175.00 | 0.5 | $87.50 |
| Sheopaul, Ruth | Law Clerk 2006 | $175.00 | 0.6 | $105.00 |
| Grand Total Fees: $366,152.65 | | | | |
| Total Hours: 702.9 | | | | |
| Total Professional Hours: 566.3 | | | | |
| Blended Rate for Professionals: $594.06 | | | | |

AM    -    Asset Management
BR    -    Bankruptcy & Reorganization
F    -    Finance
GTS   -    Global Technology Solutions
LT    -    Litigation

*All attorneys are licensed in New York State unless otherwise indicated.
♦Due to changes in billing rates and previously agreed upon rate reductions, where applicable, an Average Hourly Billing Rate has been calculated by dividing total compensation of the professional or paraprofessional by their total hours billed.

**EXHIBIT C**

## SHEARMAN & STERLING LLP

February 1, 2007 –
May 31, 2007

| DISBURSEMENTS | LITIGATION | BANKRUPTCY |
|---|---|---|
| Inhouse Photocopies | $878.90 | $475.70 |
| Conference Room Dining | $89.41 | |
| Federal Express | $159.62 | $1,010.10 |
| Messengers | $35.00 | $64.00 |
| Other Information Services | $1,244.48 | |
| Other Outside Services | $3,251.53 | $101.00 |
| Overtime Taxis | $211.23 | |
| Parking Costs for Clients | $31.00 | |
| Postage & Courier | $110.67 | $.39 |
| Offsite Photocopies | $10.25 | |
| Telephone Charges | $183.00 | $9.95 |
| Travel & Incidental | | $1,700.68 |
| Travel Meals | | $14.92 |
| Radio Taxis | $37.42 | $221.66 |
| Velo Binding | $123.00 | $30.00 |
| WestLaw | $4,183.36 | |
| **SUBTOTALS:** | **$10,548.87** | **$3,628.40** |
| **TOTAL DISBURSEMENTS:** | | **$14,177.27** |

# EXHIBIT D

## APPLICATION SUMMARY

**SHEARMAN & STERLING LLP**                              February 1, 2007 -
                                                        May 31, 2007

**SUMMARY**

| | |
|---|---|
| Total Fees | $366,152.65 |
| Total Voluntary Fee Reductions | $8,299.50 |
| Total Disbursements | $14,177.27 |
| Existing Holdback | $73,230.53 |
| Holdback Requested After Voluntary Fee Reductions | $64,931.03 |

## PROJECT SUMMARY

**SHEARMAN & STERLING LLP**

February 1, 2007 –
May 31, 2007

| PROJECT CATEGORY | HOURS | FEES | VOLUNTARY REDUCTIONS | REDUCED FEES |
|---|---|---|---|---|
| Matter 20 – Securities Class Action | 483.5 | $253,244.10 | - $639.50 | $252,604.60 |
| Matter 21 – Derivative Lawsuits | 9.2 | $5,113.50 | - $52.50 | $5,061.00 |
| Matter 22 – ERISA Class Action | 43.4 | $26,277.80 | - $52.50 | $26,225.30 |
| Matter 26 – Case Administration | 5.6 | $1,400.00 | | |
| Matter 28 – DIP Financing | 24.7 | $14,473.00 | | |
| Matter 31 – Fee/Employment Objections | 14.7 | $4,895.00 | - $4,895.00 | $0.00 |
| Matter 33 – Fee/Employment Applications | 51.9 | $13,080.00 | - $2,660.00 | $10,420.00 |
| Matter 35 – General Corporate | 6.4 | $3,775.50 | | |
| Matter 38 – Non-Working Travel | 18.1 | $7,393.75 | | |
| Matter 48 – Securities Advice | 0.3 | $165.00 | | |
| Matter 49 – Board Advice | 45.1 | $36,335.00 | | |
| **TOTAL:** | **702.9** | **$366,152.65** | | |

**TOTAL VOLUNTARY REDUCTIONS:**        **- $8,299.50**

**TOTAL REDUCED FEES REQUESTED:**        **$357,853.15**