**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re:                                                           :     **Chapter 11**
                                                                 :
**DELPHI CORPORATION, et al**                                   :     **Case No. 05-44481 (RDD)**
                                                                 :
        Debtors.                                                 :     **(Jointly Administered)**
---------------------------------------------------------------- x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**FIFTH INTERIM FEE APPLICATION**

| NAME OF APPLICANT: | KPMG LLP |
|---|---|
| | |
| PERIOD FOR WHICH COMPENSATION IS SOUGHT: | February 1, 2007 through and including May 31, 2007 |
| | |
| ROLE IN THE CASE: | Tax and Transaction Services Advisors and Advisory and Valuation Services Advisors for the Debtors |
| | |
| DATE OF ORIGINAL RETENTION ORDER: | March 3, 2006 |
| DATE OF FIRST SUPPLEMENTAL RETENTION ORDER: | May 2, 2006 |
| DATE OF SECOND SUPPLEMENTAL RETENTION ORDER: | December 6, 2006 |
| DATE OF THIRD SUPPLEMENTAL RETENTION ORDER: | March 30, 2007 |
| | |
| AMOUNT OF COMPENSATION SOUGHT : | $13,751,307.25 |
| | |
| AMOUNT OF REIMBURSEMENT SOUGHT: | $1,023,285.08 |
| | |
| TOTAL AMOUNT SOUGHT: | $14,774,592.33 |

05-44481-rdd    Doc 8815    Filed 07/31/07    Entered 07/31/07 16:36:56    Main Document
Hearing Date and Time: October 25, 2007, at 10:00 am (prevailing Eastern Time)
Pg 2 of 43
Objection Deadline: October 18, 2007, at 4:00 pm (prevailing Eastern Time)

**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                           :

**In re:**                               :        **Chapter 11**
                                            :

**DELPHI CORPORATION, et al**       :       **Case No. 05-44481 (RDD)**
                                            :

         **Debtors.**                     :       **(Jointly Administered)**
                                            :

------------------------------------------------------------ x

**FIFTH APPLICATION OF KPMG LLP, AS TAX AND TRANSACTION**
**SERVICES ADVISORS AND ADVISORY AND VALUATION SERVICES**
**ADVISORS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM FEBRUARY 1, 2007 THROUGH MAY 31, 2007**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

           KPMG LLP ("KPMG"), a professional services firm, serves as tax and

transaction services advisors and advisory and valuation services advisors to Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession

in the above-captioned cases (collectively, the "Debtors"). KPMG submits its fifth

application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code") and rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for interim allowance of reasonable

compensation for professional services performed by KPMG in the aggregate amount of $13,751,307.25 for the period commencing February 1, 2007 through and including May 31, 2007 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses in the aggregate amount of $1,023,285.08 incurred during the Compensation Period, for a total of $14,774,592.33 and respectfully represents:

## Background

1.    On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, commenced their respective cases under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    This Court entered orders directing the joint administration of the Debtors' chapter 11 cases under Bankruptcy Rule 1015(b) (Docket Nos. 28 and 404).

3.    On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.  On May 11, 2006, the US Trustee appointed the committee of equity security holders (the "Equity Committee").

## Jurisdiction

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

5.    The statutory predicate for the relief requested herein are sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

## KPMG LLP Retention

6.    On February 14, 2006, the Debtors filed an application pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, for authorization to retain KPMG as Tax and Transaction Services Advisors to the Debtors, effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Application"), pursuant to the terms of the engagement letters as described therein (the "Engagement Letters").  On March 3, 2006, the Court entered an order approving the KPMG Retention Application pursuant to the terms and conditions of such order, effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Order").

7.    On April 20, 2006, the Debtors filed a supplemental application (the "KPMG Supplemental Retention Application") for authorization to retain KPMG as Advisory and Valuation Services Advisors to the Debtors effective nunc pro tunc to February 16, 2006, and for authorization to expand the retention of the scope of KPMG to include the matters set forth in certain additional engagement letters, by and between the Debtors and KPMG, each as described therein (the "First Supplemental Engagement Letters").  On May 2, 2006, this Court entered an order approving the KPMG Supplemental Retention Application pursuant to the terms of such order, effective nunc pro tunc to (i) February 16, 2006 for the employment and retention of KPMG as Advisory and Valuation Services Advisors to the Debtors, (ii) January 1, 2006 for the continued retention of KPMG as Tax Advisors to the Debtors, and (iii) January 18, 2006 for the additional International Executive Tax Services effective nunc pro tunc to

3

January 18, 2006 to be rendered by KPMG to the Debtors (the "KPMG Supplemental Retention Order").

8.      On November 10, 2006, the Debtors filed a supplemental application (the "KPMG Second Supplemental Application") for authorization to retain KPMG to provide the Debtors with (i) certain improvements to the International Tax Reporting Package and Process effective nunc pro tunc to August 1, 2006, (ii) certain Internal Reporting Initiatives effective nunc pro tunc to July 10, 2006, (iii) a certain Special Investigation, (iv) certain Transfer Pricing Services effective nunc pro tunc to May 19, 2006, (v) certain improvements to the Financial Close, Consolidation, and Management Reporting Processes, and (vi) certain Additional Services, each as described therein (the "Second Supplemental Engagement Letters").  On December 6, 2006, this Court entered an order approving the KPMG Second Supplemental Retention Application pursuant to the terms of such order (the "KPMG Second Supplemental Retention Order").

9.      On March 16, 2007, the Debtors filed a supplemental application (the "KPMG Third Supplemental Retention Application") for authorization to employ and retain KPMG to (i) enter into the Master Professional Services Agreement (the "Master Agreement") and the applicable Statements of Work ("SOWs") with the Debtors effective nunc pro tunc to February 9, 2007, (ii) provide the Debtors with certain Global Mobility Services related to international assignees effective nunc pro tunc to February 9, 2007, (iii) continue to provide the Debtors with certain Tax Consulting Services effective nunc pro tunc to February 9, 2007, (iv) continue to provide the Debtors with certain International Assignment Services related to the Debtors' international assignees effective nunc pro tunc to January 31, 2007, (v) provide the Debtors with certain Fresh

4

Start Services effective <u>nunc</u> <u>pro</u> <u>tunc</u> to November 16, 2006, and (vi) provide the

Debtors with certain Additional Services (including the renewal and extension of

existing services, additional phase services under existing engagements, and additional

services under future SOWs between the Debtors and KPMG in accordance with the

Master Agreement).   On March 30, 2007, this Court entered an order approving the

KPMG Third Supplemental Retention Application pursuant to the terms of such order

(the "KPMG Third Supplemental Retention Order").

### Procedures and Monthly Fee Statements

10.   The Application has been prepared in accordance with (i) the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New

York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local

Guidelines"), (ii) the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted

on January 30, 1996 (the "UST Guidelines") and (iii) the (A) Order Under 11 U.S.C. §

331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses

of Professionals, dated November 4, 2005 (the "Interim Compensation Order"), (B) the

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006

(the "Supplemental Interim Compensation Order"), (C) the Second Supplemental Order

Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second

Supplemental Interim Compensation Order), (D) the Third Supplemental Order Under

11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order"), (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order"), and (G) the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (the "Sixth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders", and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as Exhibit "A."

11.    On April 28, 2006, KPMG filed its first interim fee application (the "First Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 5, 2005 through January 31, 2006 (the "First Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the First Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the First Interim Fee Period in the aggregate amount of $1,439,122.50 and for reimbursement of expenses incurred in connection with these services in the amount of $17,631.00.

12.     On August 6, 2006, KPMG filed its second interim fee application (the "Second Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing February 1, 2006 through May 31, 2006 (the "Second Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Second Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Second Interim Fee Period in the aggregate amount of $7,383,043.00 and for reimbursement of expenses incurred in connection with these services in the amount of $430,790.04.

13.     On November 30, 2006, KPMG filed its third interim fee application (the "Third Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing June 1, 2006 through September 30, 2006 (the "Third Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Third Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Third Interim Fee Period in the aggregate amount of $1,969,703.80 and for reimbursement of expenses incurred in connection with these services in the amount of $176,339.61.

14.     After taking a voluntary reduction of $275,000.00 in fees, KPMG has been paid $10,701,373.30 in compensation for professional services rendered and $624,760.63 for reimbursement of expenses for the First, Second and Third Interim Fee Periods.

15.     On April 2, 2007, KPMG filed its fourth interim fee application (the "Fourth Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 1, 2006 through

7

January 31, 2007 (the "Fourth Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Fourth Interim Fee Period. KPMG sought allowance of fees for services to the Debtors during the Fourth Interim Fee Period in the aggregate amount of $2,994,667.15 and for reimbursement of expenses incurred in connection with these services in the amount of $265,285.42. After taking a voluntary reduction of $56,103.00 in fees, KPMG has been paid $2,397,735.72 in compensation for professional services rendered and $265,285.42 for reimbursement of expenses during the Fourth Interim Fee Period.

16.    On or about April 2, 2007, KPMG served its February 2007 Monthly Fee Statement seeking an award of compensation in the amount of $5,745,890.75 for professional services rendered and reimbursement of $207,185.29 in expenses actually and necessarily incurred by KPMG during the period from February 1, 2007 through February 28, 2007. The Debtors paid KPMG $4,564,712.60 in compensation for professional services rendered and $207,185.29 for reimbursement of expenses during the period from February 1, 2007 through February 28, 2007.

17.    On or about April 30, 2007, KPMG served its March 2007 Monthly Fee Statement seeking an award of compensation in the amount of $2,884,414.50 for professional services rendered and reimbursement of $363,145.62 in expenses actually and necessarily incurred by KPMG during the period from March 1, 2007 through March 31, 2007. On June 25, 2007, the Debtors paid KPMG $2,307,531.60 in compensation for professional services rendered and $363,145.62 for reimbursement of expenses during the period from March 1, 2007 through March 31, 2007.

18.    On or about May 31, 2007, KPMG served its April 2007 Monthly Fee Statement seeking an award of compensation in the amount of $2,918,778.25 for professional services rendered and reimbursement of $154,227.42 in expenses actually and necessarily incurred by KPMG during the period from April 1, 2007 through April 30, 2007. [1]    To date, KPMG has not received payment on account of professional services rendered to the Debtors for this period.

19.    On or about June 29, 2007, KPMG served its May 2007 Monthly Fee Statement seeking an award of compensation in the amount of $2,202,223.75 for professional services rendered and reimbursement of $298,726.75 in expenses actually and necessarily incurred by KPMG during the period from May 1, 2007 through May 31, 2007.  To date, KPMG has not received payment on account of professional services rendered to the Debtors for this period.

### Requested Fees and Reimbursement of Expenses

20.    By its Application, KPMG respectfully requests (i) an interim allowance for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $13,751,307.25, (ii)  an interim allowance for expenses incurred in connection with the rendering of such services in the aggregate amount of $1,023,285.08, and (iii) payment to KPMG in the total amount of $7,332,017.22 of outstanding fees and expenses in connection with KPMG's representation of the Debtors during the Compensation Period.  During the Compensation Period, KPMG

---

[1]    On or about July 2, 2007, KPMG served its Amended April monthly fee statement to reflect corrections to clerical errors which were inadvertently submitted in the original April monthly fee statement.

professionals expended a total of 40,288.2 hours for which compensation is requested.

KPMG's request for compensation is broken down as follows:

| Billing Period | Hours Billed | Fees | Expenses | Monthly Total | Fees Paid | Expenses Paid | Balance Due |
|---|---|---|---|---|---|---|---|
| February 1 through February 28, 2007 | 15,906.8 | $5,745,890.75 | $207,185.29 | $5,953,076.04 | $4,564,712.60 | $207,185.29 | $1,181,178.15 |
| March 1 through March 31, 2007 | 10,222.1 | $2,884,414.50 | $363,145.62 | $3,247,560.12 | $2,307,531.60 | $363,145.62 | $576,882.90 |
| April 1 through April 30, 2007 | 7,462.2 | $2,918,778.25 | $154,227.42 | $3,073,005.67 | $0.00 | $0.00 | $3,073,005.67 |
| May 1 through May 31, 2007 | 6,697.1 | $2,202,223.75 | $298,726.75 | $2,500,950.50 | $0.00 | $0.00 | $2,500,950.50 |
| Total | 40,288.2 | $13,751,307.25 | $1,023,285.08 | $14,774,592.33 | $6,872,244.20 | $570,330.91 | $7,332,017.22 |

21.    KPMG is the United States member firm of KPMG International.  The KPMG global network encompasses independent professional services practices conducted by separate legal entities throughout the world.  KPMG International, a Swiss cooperative, serves as a coordinating entity for a network of member firms operating under the KPMG name.   KPMG International is a member-based entity with no shareholders and no permanent capital.   Each of the member firms of KPMG International ("KPMG Member Firms") is separate and legally distinct.

22.    Prior to the Petition Date, KPMG subcontracted with certain other KPMG Member Firms to provide services to the Debtors as set forth in the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and applicable SOWs).  Pursuant to the KPMG Retention Order, the

10

KPMG Supplemental Retention Order, the KPMG Second Supplemental Order, and the KPMG Third Supplemental Retention Order, during the Compensation Period, KPMG Member Firms have continued to assist KPMG in the provision of services under the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, the Third Supplemental Engagement Letters (including the Master Agreement and the applicable SOWs).

23.    KPMG charges its fees in these cases in accordance with billing rates and procedures in effect during the Compensation Period. The rates KPMG charges for the services rendered by its professionals in these chapter 11 cases are the same rates KPMG charges for professional services rendered in comparable nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases.

24.    Pursuant to the UST Guidelines, annexed hereto as Exhibit "B" is a schedule setting forth all KPMG professionals who have performed services in these chapter 11 cases during the Compensation Period, the capacities in which each such individual is employed by KPMG, the hourly billing rate charged by KPMG for services performed by such individual, aggregate number of hours expended in this matter and fees billed therefor.

25.    Annexed hereto as Exhibit "C" is a schedule specifying the categories of expenses for which KPMG is seeking reimbursement and the total amount for each such expense category.

26.     Pursuant to section II.D of the UST Guidelines, annexed hereto as Exhibit "D" is a summary of KPMG's time records billed during the Compensation Period, including the utilization of project categories as described below.

27.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of the Application, KPMG reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

<strong><u>Summary of Services</u></strong>

28.     In accordance with the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and the applicable SOWs), KPMG has provided such services as KPMG and the Debtors deemed appropriate and feasible in order to advise the Debtors and their subsidiaries and affiliates in the course of these chapter 11 cases, including, but not limited to, the following:

i.      International Tax Package Improvement;

ii.     International Executive Services provided to Debtors and its Expatriates assigned to and from the United States, Expatriates assigned to and from non-U.S. countries, employees assigned to the Mexican Border and Mechatronics;

iii.    Fee Statements and Fee Applications;

iv.     Non-Working Travel Time;

v.      Tax Consulting Services;

vi.     Financial Close, Consolidation and Management;

vii.    Electronics & Safety – Assess Product Line Reporting;

viii.   Transaction Services – Project Rhodes/Evergreen III;

ix.     Transaction Services - Project KDAC Steering;

x.      Fresh Start Services;

xi.     Impairment Services – Fourth Quarter 2006;

xii.    Project Shark "Target";

xiii.   Impairment Services – First Quarter 2007;

xiv.    Discontinued Operations – Project Rhodes; and

xv.     Electronics & Safety - PBU – Product Line Performance
        Reporting.

29.     The services provided by KPMG to the Debtors are not unnecessarily duplicative of those provided by any other of the Debtors' professionals, and KPMG has coordinated any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors, accountants, and counsel, as appropriate, to avoid duplication of efforts.

30.     The following is a summary of certain of the significant professional services rendered by KPMG during the Compensation Period, as well as the compensation sought for such services:

| CATEGORY | HOURS | | FEES | |
|----------|-------|---|------|---|
| Tax - International Tax Package Improvement | 558.3 | | $    175,974.50 | |
| Tax - International Executive Services | 9.0 | [2] | $  1,677,236.00 | |

---

[2]     Under the terms of the International Executive Services Engagement Letter dated October 5, 2004 (the "International Executive Services Engagement Letter"), compensation for services rendered to the Debtors is based in part on hourly

| | | | |
|---|---|---|---|
| Fee Statements and Fee Applications | 1,309.5 | $ | 177,001.50 |
| Travel Time | 2,637.5 | $ | 426,148.25 [3] |
| Tax Consulting Services | 42.5 | $ | 18,620.00 |
| Financial Close, Consolidation and Management | 3,030.3 | $ | 1,328,257.50 |
| Electronics & Safety - Assess Product Line Reporting | 89.1 | $ | 29,115.00 |
| Transaction Services - Project Rhodes/Evergreen III | 3,010.8 | $ | 1,107,968.00 |
| Transaction Services - Project KDAC Steering | 152.4 | $ | 47,205.00 |
| Fresh Start Services | 22,256.1 | $ | 6,690,284.00 |
| Impairment Services - Q04 | 4,871.5 | $ | 1,492,836.00 |
| Project Shark "Target" | 1,103.2 | $ | 165,000.00 |
| Impairment Services - Q01 07 | 597.0 | $ | 204,097.00 |
| Discontinued Operations – Project Rhodes | 424.2 | $ | 138,577.50 |
| Electronics & Safety-PBU-Product Line Performance Reporting | 196.8 | $ | 72,987.00 |
| Total Hours and Fees | 40,288.2 | | $13,751,307.25 |

## Description of Services Provided

31.     The following is a more detailed description of the significant professional services rendered by KPMG during the Compensation Period.

(a)     **International Tax Process Improvement**

i.     collaborating with Delphi to identify improvements to the international tax reporting package and process;

ii.     assisting with the development, implementation, and testing of improvements to the international tax reporting package and processes;

iii.     assisting with the development of training materials for the improved international tax reporting package and processes;

iv.     assisting with training of Delphi personnel on the new

---

compensation and in part on a fixed amount per tax return prepared, as more fully set forth therein.  A total of 9.0 hours were billed, giving rise to total fees of $2,142.00. The remaining compensation charges are based on fixed tax return rates.

[3]     Due to an inadvertent billing error that was discovered after the fee statement was filed, KPMG is providing the Debtors with a Non Working Travel Time credit of $4,931.50.

international tax reporting package and process;

v.    assisting Delphi with reviewing the implementation of the international tax reporting package and processes; and

vi.    providing other services related to the development and implementation of the improved international tax reporting package and processes as appropriate.

**(b)    International Executive Services provided to Debtors and its expatriates assigned to and from the United States, Expatriates assigned to and from non-U.S. countries, employees assigned to the Mexican Border and Trainees/J Visa holders**

i.    collecting tax data;

ii.    calculating annual hypothetical tax withholding;

iii.    preparing required home and host country individual income tax returns during, and one year after, assignment;

iv.    preparing requests for extension of time to file tax return(s) where required;

v.    preparing US estimated tax vouchers, if required;

vi.    preparing year end withholding calculations;

vii.    reconciling tax advance accounts;

viii.    preparing tax equalization calculations;

ix.    conducting pre-departure and/or post-arrival tax consultation, as requested;

x.    determining and arranging for timely payment of local taxes in the host countries, where applicable;

xi.    handling routine correspondence with the IRS and foreign tax authorities, including review of tax assessments;

xii.    providing additional services as requested by the Debtors or its counsel to assist the Debtors regarding its expatriate employees;

xiii.    prior to assignment of services, (a) preparing cost projection including revisions, (b) preparing draft expatriate agreement,

and (c) preparing draft pay calculations;

xiv.   at the beginning of assignment services, (a) preparing final expatriate agreement and pay calculations and participate in orientation, (b) calculating relocation allowance and mobility premium to be paid in month prior to assignment and provide to payroll, and (c) calculating first year spending account to be paid in first month of assignment and provide to payroll;

xv.   calculating annual spending account on assignment anniversary date and provide to payroll; and

xvi.   calculating relocation allowance less outstanding tax and pro-rata spending account due from employee.

**(c)    Fee Statements and Fee Applications**

i.   preparing monthly fee statements and quarterly fee applications.

**(d)    Non-Working Travel Time**

i.   time incurred for necessary non-working travel time.

**(e)    Tax Consulting Services**

i.   providing advice and assistance to the Debtors regarding various tax issues.

**(f)    Financial Close, Consolidation and Management**

i.   developing and presenting executive level communication packages to a) Audit Committee: March 26, 2007, May 21, 2007, b) Controllers Roundtable: May 9, 2007, c) FTT: March 14, 2007, April 24, 2007, May 23, 2007;

ii.   preparing detailed work stream statements of work for the next phase;

iii.   reviewing statements of work with the Delphi work stream stakeholders;

iv.   establishing PMO infrastructure for the next phase;

16

v.      identifying and securing resources (Delphi and KPMG) for the next phase;

vi.     scheduling and conducting meetings with additional key stakeholders for next phase: Tax, SAP, Hyperion, Outsourcing and E&Y;

vii.    preparing weekly status update for Delphi's CAO and Controller and his direct reports;

viii.   conducting weekly status update meeting with Delphi's CAO and Controller and his direct reports;

ix.     preparing and reviewing bi-weekly updates for Delphi's CFO;

x.      preparing for and conducting workshop with Controller and FTT members to summarize the client's decisions, options and issues identified for Delphi's proposed future state Controller's Organization;

xi.     assisting Delphi team in drafting the following for management's review and approval a) skills matrix for future organization model, b) career development plans within the Controller's organization, c) gap analysis of current Controller's staff skills against skills required for future state Controller's organization, d) a draft plan to remediate the identified skill gaps, e) an overall draft implementation plan for realignment and hiring of staff, and f) communications strategy and identify forums to inform and educate the global organization;

xii.    drafting functional specifications design for the proposed future state sub-consolidation processes;

xiii.   assessing Delphi's current consolidation environment to meet the proposed future functional specification design;

xiv.    initial drafting of the Sub Consolidation Process Manual;

xv.     drafting plan for implementation of the sub consolidation and global consolidation architecture;

xvi.    drafting report identifying potential process, organizational and technology improvements that are needed to help support Delphi's current business model:

xvii.   drafting the conceptual design of the proposed future state Allied processes (e.g. settlement, imbalances, fiscal close process, invoicing);

xviii.  drafting proposed future state roles and responsibilities for the Allied processes (e.g. settlement, imbalances, fiscal close process, invoicing;

xix.    drafting an integrated close calendar and tracking process;

xx.     drafting a plan for implementation of a close calendar management tool to facilitate a monthly pre/post close review process;

xxi.    drafting a plan for communicating the implementation of the Corporate Controller's Management Book;

xxii.   drafting a plan to integrate a Balance Sheet Integrity Program (by employing reconciliations of accounts, validation of policies & procedures and verification of assets and liabilities) independent of the close process;

xxiii.  drafting a list of potential updates to the close related policies and procedures (e.g. warranty accounting, reserve analysis, etc.) to support a monthly 'hard' close;

xxiv.   providing comments regarding the completeness of the Transition Plan for both Fixed Assets & General Accounting. (This report will also highlight the critical success factors necessary for Outsourcing Fixed Assets and General Accounting);

xxv.    reviewing the Fixed Assets and General accounting Master

Service Agreement Schedule, 10-A and 10-B respectively;

xxvi. identifying ongoing projects and initiatives that may impact the Outsourcing of Fixed Assets and General Accounting;

xxvii. working with the General Accounting Tower Lead to develop an evaluation scorecard that assists Delphi in selecting and ranking entities for Delphi's transition evaluation and planning. (KPMG will assist Delphi Tower Leads in evaluating the data gathered in the ID solution exercise);

xxviii. providing semi-monthly status update to CFO and project sponsors for the SAP FI/CO workstream; and

xxix. developing a final report that will address the following a) document our findings, observations and recommendations for potential changes or improvements to Delphi's SAP 4.6 Vega template   b)  a gap analysis between the current VEGA configuration and a proposed future state configuration  and c) high level next steps plan to move from the current state to a proposed future state configuration to potential increase the use of the SAP FI/CO modules.

**(g)  Electronics & Safety – Assess Product Line Reporting**

i. gathering information and determine requirements of key data elements; and

ii. identifying opportunities for immediate improvement to product line reporting.

**(h)  Transaction Services – Project Rhodes/Evergreen III**

i. assisting in the identification and collection of financial information related to the 2006 carve-out of the DS businesses from Delphi corporation ("Delphi");

ii. assisting with the project coordination with DS, Delphi and other advisors;

19

iii.    assisting with the identification of potential transaction issues relating to the 2006 financials (e.g., carve-out issues, allocation issues, redundant/stranded costs), if any;

iv.    assisting in the organization and management of 2006 financial information and workpapers used to support DS's stand-alone business line financial statements;

v.    inquiring and challenging information provided by management relating to the carve-out of DS business lines from Delphi for 2006 financials;

vi.    assisting in the organization and management of 2006 financial information and workpapers in the data room, and;

vii.    researching disclosure requirements and drafting example disclosures commonly required for SEC registrants that are relevant to the financial statements to enable Delphi to populate those disclosures with DS-specific amounts.

**(i)    Transaction Services - Project KDAC Steering**

i.    assisting in the identification and collection of financial information related to the carve-out of the KDAC Steering businesses from KDAC financials for the years ended 2004, 2005, and 2006;

ii.    assisting with the identification of potential transaction issues relating to the 2004 through 2006 financials (e.g.,. carve-out issues, allocation issues, redundant/stranded costs), if any;

iii.    inquiring and challenging information provided by management relating to the carve-out of KDAC Steering business from KDAC for the 2004 through 2006 financial information;

iv.    reading and commenting on any US to Korean GAAP adjustments identified by Delphi and or KDAC

Management; and

v.    assisting in the organization and management of 2006 financial information and workpapers in the data room.

**(j)    Fresh Start Services**

i.    assisting management with planning an approach, consideration of alternatives, research, analysis, implementation assistance and assistance with preparing documentation related to Delphi's accounting and reporting the emergence from Bankruptcy and adopting Fresh Start reporting;

ii.    holding discussions with certain Delphi officers, employees and outside consultants;

iii.    assisting with gathering data, analyzing data and provide advice related to Delphi's analyses;

iv.    assisting Delphi in developing accounting and financial reporting and tax planning and reporting;

v.    allocating to Delphi's assets and liabilities the reorganization value of Delphi in accordance with the procedures specified in Statement of Financial Accounting Standards No. 141 ("FAS141");

vi.    providing data services to assist in planning for embedding the "fresh start" adjustments into the financial reporting processes of Delphi; and

vii.    providing project management services to Delphi senior management and its fresh start project manager, this service is designed to advise Delphi regarding project timelines, milestones, deliverables, interdependencies, risks and resources.

**(k)    Impairment Services – Q04**

i.    following Delphi's identification of the plants that will be

21

further evaluated, KPMG will be further assessing under Step 1 of SFAS144 for those plants identified by Delphi management to be included in our studies;

ii.    assisting in evaluation of undiscounted cash flows compared with the carrying value of the underlying asset groups under the guidance of SFAS 144;

iii.    for plants failing Step 1 of SFAS 144, KPMG will be performing the valuation studies necessary to determine fair values of assets within the asset groups;

iv.    researching and documenting (memoranda, discussions with Ernst & Young as required, etc.) to support for the accounting and reporting conclusions; and

v.    identifying tax related issues with regard to the procedures and assist Delphi with quantifying the related impact.

**(l)    Project Shark "Target"**

i.    meeting with target's officers and management in order to develop an understanding of Target including its organizational structure and management reporting relationships, marketing and distribution channels, products and services, business risks and opportunities and information systems;

ii.    reading Target's financial statements and discussing them with management to gain an understanding of Target's accounting policies and practices;

iii.    obtaining, reading an analysis and inquiring as regards to Target's revenues, expenses, accounts receivable, other current assets, fixed assets, capital expenditures, other assets, and accrued liabilities;

iv.    inquiring into Target's relationship with its employees including union contracts, pension and profit-sharing plans,

employment contracts, and banking relationships;

v.    interviewing Target's management team and business partners and comment on the risks and opportunities inherent in management's business plan assumptions and the possible impact of these risks and opportunities on management's financial projections;

vi.    summarizing potential adjustments regarding the profit and loss performance of Target in the form of quality of earnings analysis and summarizing the risks that may impact earnings before interest, taxes, depreciation and amortization (EBITDA); and

vii.    regarding purchase accounting, commenting on initial potential value for each intangible assets, potential implications of FAS 141 in the opening balance sheet including commenting on estimates to arrive at the Fair Market Value of the opening balance sheet for each of the specific balance sheet accounts.

**(m)    Impairment Services – Q01**

i.    analyzing potential impairment charges as of the quarter ended March 31, 2007 under SFAS 144 including assessment under Step 1 of SFAS 144 for those plants identified by Delphi management to be included in our studies;

ii.    assisting in evaluation of undiscounted cash flows compared with the carrying value of the underlying asset groups under the guidance of SFAS 144;

iii.    for plants failing Step 1 of SFAS 144, KPMG will be performing the valuation studies necessary to determine fair values of assets within the asset groups;

iv.    research and documenting (memoranda, discussions with

Ernst & Young as required, etc.) to support for the accounting and reporting conclusions; and

    v.    identifying tax related issues with regard to the procedures and assist Delphi with quantifying the related impact.

**(n)    Rhodes Discontinued Operations Reporting Assistance**

    i.    finalizing detailed work plan with Delphi DSD and Delphi Corporate;

    ii.    building and populating the discontinued operations templates with the historical allocations identified;

    iii.    documenting the allocations and assumptions in the template in a manner that facilitates the audit process;

    iv.    interviewing DSD and corporate personnel regarding historical allocations and corporate journal vouchers recorded;

    v.    conducting interviews with specific groups and individuals to collect historical information and document methodologies;

    vi.    assisting with the assessment of allocations and corporate journal vouchers relative to the requirements of discontinued operations reporting and disclosure;

    vii.    assisting with the preparation of a carve out balance sheet, profit and loss, and cash flow statement for the periods to be presented; and

    viii.    assisting with Delphi's technical accounting memorandum on the application of discontinued operations accounting for the Steering Division and support in the audit process.

**(o)    Electronics & Safety Product Business Units' Product Line Performance Reporting**

    i.    validating Delphi E&S PBUs/DEG Product Line Performance Reporting (PLPR) report dimensions and

attributes;

ii.    began development of prototype requirements for Delphi E&S PBUs/DEG prototype PLPR solution;

iii.    preparing division pre-workshop communication package for workshop to be held on 6/26/07;

iv.    began creation of PLPR report inventory depicting required data elements, sample views by customer and opportunity to identify KPI's;

v.    began creation of PLPR report layout examples outlining report dimensions and attributes;

vi.    developing a high level technical landscape document to illustrate the transformation from Access to a data warehouse environment; and

vii.    analyzing current PLPR process with process owners.

32.    The foregoing professional services performed by KPMG were necessary and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by KPMG were in the best interests of the Debtors and other parties-in-interest. Compensation for the foregoing services, as requested, is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. The professional services were performed expediently and in an efficient manner.

33.    The professional services performed by KPMG on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 40,288.2 recorded hours by KPMG's professionals. Of the aggregate time expended, 39,732.4 recorded hours were expended by partners and associates of KPMG.

34.    During the Compensation Period, KPMG billed the Debtors for time expended by professionals based on hourly rates ranging from $165.00 to $660.00 per

hour. Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $302.54 (based on 39,732.4 recorded hours for professionals at KPMG's billing rates in effect at the time of the performance of services).[4] As noted above, annexed hereto as Exhibit B is a schedule listing each KPMG professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by KPMG for services performed by each such individual and the aggregate number of hours and charges by each such individual.

### Actual and Necessary Disbursements of KPMG LLP

35.    As set forth in Exhibit "C", KPMG has disbursed $1,023,285.08 for expenses incurred in providing professional services during the Compensation Period. The actual expenses incurred in providing professional services were necessary, reasonable, and justified to serve the needs of the Debtors, their estates, and creditors and KPMG has made every effort to minimize its disbursements in these cases.

### The Requested Compensation Should Be Allowed

36.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.* § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

---

[4]        *See supra* note 2.

26

In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

    (A)    the time spent on such services;

    (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial to, at the time at which the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

37.    The services for which KPMG seeks compensation and the expenditures for which KPMG seeks reimbursement in this Application were necessary for and beneficial to the orderly administration of the Debtors' estates and their rehabilitation and reorganization effort. KPMG worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 processes. These services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors. Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

38.    In sum, the services rendered by KPMG were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, and approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## Conclusion

WHEREFORE, KPMG respectfully requests that the Court enter an order: (i) allowing KPMG interim compensation for actual and necessary professional services rendered during the Compensation Period in the aggregate amount of $13,751,307.25; (ii) allowing KPMG interim reimbursement for actual and necessary expenses incurred during the Compensation Period in the aggregate amount of $1,023,285.08; (iii) directing the Debtors to pay KPMG the total amount of $7,332,017.22 of outstanding fees and expenses in connection with KPMG's representation of the Debtors during the Compensation Period; (iv) holding that the allowance of such interim compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to KPMG's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (v) granting KPMG such other and further relief as is just.

Dated: July 31, 2007
New York, New York

KING & SPALDING LLP


By: /s/ H. Slayton Dabney, Jr.
  H. Slayton Dabney, Jr., Esq.


1185 Avenue of the Americas
New York, NY  10036-4003
Tel:  (212) 556-2100
Fax:  (212) 556-2222

Attorneys for KPMG LLP

## EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| **In re:** | : |  |
|  | : | **Chapter 11** |
| **DELPHI CORPORATION, et al** | : | **Case No. 05-44481 (RDD)** |
|  | : |  |
|  | : | **(Jointly Administered)** |
|  | : |  |
| **Debtors.** | : |  |

--------------------------------------------------------------- X

### CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIFTH APPLICATION OF KPMG LLP FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Gary A. Silberg, hereby certify that:

1.      I am a partner with the applicant firm, KPMG LLP ("KPMG"), with responsibility for the chapter 11 cases of Delphi Corporation and its above-captioned affiliated debtors (collectively, the "Debtors"), in respect of compliance with (i) the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), (ii) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") and (iii) the (A) Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (the "Interim Compensation Order"), (B) the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (the "Supplemental Interim Compensation Order"), (C) the Second Supplemental

Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second Supplemental Interim Compensation Order"), (D) the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order," (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order"), and (G) the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (the "Sixth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders", and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").

2.      This certification is made in respect of KPMG's Fifth Application, dated July 31, 2007 (the "Application"), for interim allowance of reasonable compensation for actual and necessary services performed by KPMG and for reimbursement of actual and necessary expenses incurred for the period commencing February 1, 2007 through and including May 31, 2007 (the "Compensation Period"), in accordance with the Guidelines.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

a.      I have read the Application;

b.    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

c.    the fees and disbursements sought are billed at rates in accordance with those customarily charged by KPMG and generally accepted by KPMG's clients; and

d.    in providing the reimbursable services reflected in the Application, KPMG did not make a profit on those services, whether performed by KPMG in-house or through a third party.

4.    In respect of section B.2 of the Local Guidelines and as required by the Administrative Orders, I certify that KPMG has complied with these provisions requiring it to provide (i) the United States Trustee for the Southern District of New York, (ii) the Debtors, (iii) the attorneys for the Debtors, (iv) the attorneys for the statutory committee of unsecured creditors appointed in these cases, (v) counsel for the agent under Debtors' prepetition facility, (vi) counsel for the agent under the Debtor's postpetition credit facility, (vii) the Fee Committee, and (viii) the Fee Examiner with a monthly fee statement, following each month for which compensation is sought, with a statement of KPMG's fees and disbursements accrued during the previous month.    As required by the Interim Compensation Order, each such monthly fee statement contains a list of professionals and paraprofessionals providing services, their respective billing rates, the aggregate hours spent by each professional and paraprofessional, a reasonably detailed breakdown of the disbursements incurred and contemporaneously maintained time entries for each individual in increments of tenths of an hour.

5.    In respect of section B.3 of the Local Guidelines, I certify that the United States Trustee for the Southern District of New York, the Debtors, the attorneys for the Debtors and the attorneys for the statutory committee of unsecured creditors appointed in these cases are each being provided with a copy of the Application.

Dated: Chicago, Illinois
      July 31, 2007

Gary A. Silberg
KPMG LLP
303 East Wacker Drive
Chicago, IL 60601
Telephone: (312) 665-1916

**EXHIBIT B**

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | | Hourly Billing Rate | Total Billed Hours | | Total Compensation |
|---|---|---|---|---|---|---|
| Garcia, Fernando | Partner - Spain | $ | 660 | 1.9 [1] | $ | 1,254.00 |
| Reynoldson, Ryan | Partner - China | $ | 610 | 9.5 | $ | 5,795.00 |
| Sosna, Marek | Partner - Poland | $ | 600 | 7.0 [1] | $ | 4,200.00 |
| Khan, Adil | Partner | $ | 525 | 143.1 | $ | 75,127.50 |
| Heckler, Brian | Partner | $ | 525 | 10.0 | $ | 5,250.00 |
| Reyes, Victor | Principal | $ | 500 | 6.1 [1] | $ | 3,050.00 |
| Smith, Andrew W. | Partner | $ | 500 | 234.2 | $ | 117,100.00 |
| Silberg, Gary | Partner | $ | 500 | 8.0 | $ | 4,000.00 |
| Musur, Robert | Partner | $ | 500 | 306.1 | $ | 153,050.00 |
| Liquerman, Robert | Partner | $ | 500 | 1.0 [1] | $ | 500.00 |
| Klinker, Klaus | Partner | $ | 500 | 13.8 | $ | 6,900.00 |
| Heckler, Brian | Partner | $ | 500 | 274.3 | $ | 137,150.00 |
| Gary, Daniel | Partner | $ | 500 | 584.2 | $ | 292,100.00 |
| Gartin, Tim | Partner | $ | 500 | 36.8 | $ | 18,400.00 |
| French, Mark | Partner | $ | 500 | 3.0 [1] | $ | 1,500.00 |
| Forsythe, Duncan | Partner | $ | 500 | 99.5 | $ | 49,750.00 |
| Bailey, Carmen | Partner | $ | 500 | 1.0 [1] | $ | 500.00 |
| Stoffregen, Phil | Partner | $ | 385 | 15.0 | $ | 5,775.00 |
| Dabrowski, Ron | Partner | $ | 385 | 1.5 [1] | $ | 577.50 |
| Stoffregen, Phil | Partner | $ | 480 | 17.5 | $ | 8,400.00 |
| Orlando, Joe | Partner | $ | 480 | 168.0 | $ | 80,640.00 |
| Dabrowski, Ron | Partner | $ | 480 | 6.0 [1] | $ | 2,880.00 |
| Chang, V. | Partner - Taiwan | $ | 475 | 50.5 | $ | 23,987.50 |
| Hernandez, Mario A. | Tax Partner - Mexico | $ | 470 | 7.0 [1] | $ | 3,290.00 |
| Karakaş, Murat | Partner - Turkey | $ | 470 | 4.0 [1] | $ | 1,880.00 |
| Kratz, Johan | Partner - Sweden | $ | 470 | 12.5 | $ | 5,875.00 |
| Gibbins, M. | Partner - Slovakia | $ | 470 | 6.7 [1] | $ | 3,149.00 |
| Engels, T. | Partner - S. Africa | $ | 470 | 6.1 [1] | $ | 2,867.00 |
| Gajdziński, Marek | Partner - Poland | $ | 470 | 2.6 [1] | $ | 1,222.00 |
| Crawford, Mark | Partner - Japan | $ | 470 | 4.0 [1] | $ | 1,880.00 |
| László, Csaba | Partner - Hungary | $ | 470 | 2.6 [1] | $ | 1,222.00 |
| Meyring, Norbert | Partner - China | $ | 470 | 15.0 | $ | 7,050.00 |
| Andrade, Rogerio | Partner - Brazil | $ | 470 | 3.9 [1] | $ | 1,833.00 |
| Forsythe, Duncan | Partner | $ | 470 | 52.0 | $ | 24,440.00 |
| Voigt, Kevin | Managing Director | $ | 525 | 5.1 [1] | $ | 2,677.50 |
| Voigt, Kevin | Managing Director | $ | 500 | 917.6 | $ | 458,800.00 |
| Merritt, Thomas | Managing Director | $ | 500 | 5.9 [1] | $ | 2,950.00 |
| Laures, Paul | Managing Director | $ | 500 | 50.7 | $ | 25,350.00 |
| Harmening, Thomas | Managing Director | $ | 500 | 552.2 | $ | 276,100.00 |
| Cassidy, James | Managing Director | $ | 500 | 20.0 | $ | 10,000.00 |
| Cameron, Archie | Managing Director | $ | 500 | 32.5 | $ | 16,250.00 |
| Brickley, Douglas | Managing Director | $ | 500 | 9.5 | $ | 4,750.00 |
| Delechambre, Alex | Managing Director | $ | 465 | 23.0 | $ | 10,695.00 |
| Dailey, Bill | Managing Director | $ | 465 | 336.0 | $ | 156,240.00 |
| Canter, Ralph | Managing Director | $ | 465 | 3.0 [1] | $ | 1,395.00 |
| Canter, Ralph | Managing Director | $ | 465 | 0.5 [1] | $ | 232.50 |
| LaRocca, Leonard | Director | $ | 465 | 220.1 | $ | 102,346.50 |

## EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | | Hourly Billing Rate | Total Billed Hours | | Total Compensation |
|---|---|---|---|---|---|---|
| Kahn, Pierre | Director | $ | 465 | 242.4 | $ | 112,716.00 |
| Gorski, Tom | Director | $ | 465 | 328.0 | $ | 152,520.00 |
| Chan, David | Director | $ | 465 | 33.6 | $ | 15,624.00 |
| Weldishofer, Walfred | Director | $ | 440 | 22.8 | $ | 10,032.00 |
| Tirona, Chris | Director | $ | 440 | 541.2 | $ | 238,128.00 |
| Steciak, William | Director | $ | 440 | 12.0 | $ | 5,280.00 |
| McNamara, Neal | Director | $ | 440 | 928.3 | $ | 408,452.00 |
| Hogan, Brian J | Director | $ | 440 | 638.3 | $ | 280,852.00 |
| Colwill, Matthew | Director | $ | 440 | 160.3 | $ | 70,532.00 |
| Allen, Lester | Director | $ | 440 | 168.2 | $ | 74,008.00 |
| Champion, Jon | Director | $ | 435 | 328.0 | $ | 142,680.00 |
| Champion, Jon | Director | $ | 405 | 10.0 | $ | 4,050.00 |
| Kim, Jin Man | Director - Korea | $ | 400 | 11.9 | $ | 4,760.00 |
| Lahiri, R. Lahiri | Director - India | $ | 310 | 5.0 (1) | $ | 1,550.00 |
| Gonzalez Escandell, Carlos | Sr. Manager - Spain | $ | 575 | 12.5 | $ | 7,187.50 |
| Schroeder, Christopher | Sr. Manager | $ | 465 | 24.8 | $ | 11,532.00 |
| Paquette, P. | Sr. Manager | $ | 465 | 34.2 | $ | 15,903.00 |
| Mellentine, Jay | Sr. Manager | $ | 465 | 370.8 | $ | 172,422.00 |
| Hori, David | Sr. Manager | $ | 465 | 114.6 | $ | 53,289.00 |
| Montoya, Miguel | Sr. Manager - China | $ | 460 | 36.0 | $ | 16,560.00 |
| Bradford, Davis | Sr. Manager | $ | 450 | 185.8 | $ | 83,610.00 |
| Yeoman, Steve | Sr. Manager | $ | 440 | 485.2 | $ | 213,488.00 |
| Wollmeringer, Peter | Sr. Manager | $ | 440 | 1.8 (1) | $ | 792.00 |
| Schroeder, Christopher | Sr. Manager | $ | 440 | 920.5 | $ | 405,020.00 |
| Ryan, Daniel | Sr. Manager | $ | 440 | 197.8 | $ | 87,032.00 |
| Reid, Catherine | Sr. Manager | $ | 440 | 164.1 | $ | 72,204.00 |
| Powell, Leland | Sr. Manager | $ | 440 | 9.0 | $ | 3,960.00 |
| Palmer, Bradley | Sr. Manager | $ | 440 | 114.7 | $ | 50,468.00 |
| Mulligan, Michael | Sr. Manager | $ | 440 | 657.5 | $ | 289,300.00 |
| Marshall, Jon J. | Sr. Manager | $ | 440 | 304.8 | $ | 134,112.00 |
| Loy, Jason | Sr. Manager | $ | 440 | 712.9 | $ | 313,676.00 |
| Avichai, Samuel | Sr. Manager | $ | 440 | 18.7 | $ | 8,228.00 |
| Shin, Yun Seo | Sr. Manager - Korea | $ | 400 | 24.8 | $ | 9,920.00 |
| Robinson, Stephanie | Sr. Manager | $ | 395 | 1.5 (1) | $ | 592.50 |
| Lueck, Michael | Sr. Manager | $ | 395 | 1.0 (1) | $ | 395.00 |
| Lespron, Fernando | Sr. Tax Manager - Mexico | $ | 375 | 10.0 | $ | 3,750.00 |
| Romanenko, Alexei | Sr. Manager - Russia | $ | 375 | 10.0 | $ | 3,750.00 |
| Koekkoek, Herko | Sr. Manager - Netherlands | $ | 375 | 4.0 (1) | $ | 1,500.00 |
| Modicom, Helene | Sr. Manager - Morocco | $ | 375 | 16.2 | $ | 6,075.00 |
| Dobbins, Simon | Sr. Manager - Japan | $ | 375 | 21.8 | $ | 8,175.00 |
| Beer, Gábor | Sr. Manager - Hungary | $ | 375 | 27.4 | $ | 10,275.00 |
| Moernken, Bernhard | Sr. Manager - Belgium | $ | 375 | 10.0 | $ | 3,750.00 |
| Reid, Catherine | Sr. Manager | $ | 375 | 2.0 (1) | $ | 750.00 |
| Mulligan, Michael | Sr. Manager | $ | 375 | 2.5 (1) | $ | 937.50 |
| Pérez Pérez, Susana | Manager - Spain | $ | 500 | 50.3 | $ | 25,150.00 |
| Bartolome Monge, Susana | Manager - Spain | $ | 500 | 101.0 | $ | 50,500.00 |
| Tetrault, Paul | Manager | $ | 435 | 218.5 | $ | 95,047.50 |

## EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Siewert, J. M. | Manager | $ 435 | 102.7 | $ 44,674.50 |
| Ricafort, Mike | Manager | $ 435 | 304.0 | $ 132,240.00 |
| Muldoon, Charles | Manager | $ 435 | 144.0 | $ 62,640.00 |
| McStravick, Mark | Manager | $ 435 | 368.0 | $ 160,080.00 |
| Duffy, Kevin | Manager | $ 435 | 200.0 | $ 87,000.00 |
| Augier, Marc | Manager | $ 435 | 215.0 | $ 93,525.00 |
| Anstett, Peter | Manager | $ 435 | 60.0 | $ 26,100.00 |
| Ricafort, Mike | Manager | $ 405 | 8.0 | $ 3,240.00 |
| Klacking, Don | Manager | $ 400 | 404.8 | $ 161,920.00 |
| Hayes, Brad | Manager | $ 400 | 46.3 | $ 18,520.00 |
| Frymann, Franziska | Manager | $ 400 | 320.2 | $ 128,080.00 |
| Baumgartner, John | Manager | $ 400 | 112.4 | $ 44,960.00 |
| Bo, Grant | Manager - China | $ 390 | 100.3 | $ 39,117.00 |
| Waibel, Kirk | Manager | $ 360 | 319.2 | $ 114,912.00 |
| Pittman, John | Manager | $ 360 | 396.2 | $ 142,632.00 |
| Morrissey, Chad | Manager | $ 360 | 273.2 | $ 98,352.00 |
| Lofing, Melissa | Manager | $ 360 | 16.0 | $ 5,760.00 |
| Kaestner, Martin | Manager | $ 360 | 526.2 | $ 189,432.00 |
| Jacobson, Scott | Manager | $ 360 | 219.9 [2] | $ 79,164.00 |
| Hasbach, Dieter | Manager | $ 360 | 30.0 | $ 10,800.00 |
| Harris, Patrick | Manager | $ 360 | 402.5 | $ 144,900.00 |
| Fan, Rui | Manager | $ 360 | 7.5 [1] | $ 2,700.00 |
| Bambrick, James | Manager | $ 360 | 280.3 | $ 100,908.00 |
| Aglira, David | Manager | $ 360 | 271.9 | $ 97,884.00 |
| Yang, I. | Manager - Taiwan | $ 350 | 229.4 | $ 80,290.00 |
| Tsai, C. | Manager - Taiwan | $ 350 | 115.5 | $ 40,425.00 |
| Wochna, Kamil | Manager - Poland | $ 350 | 47.3 | $ 16,555.00 |
| Pasecki, Sergiusz | Manager - Poland | $ 350 | 55.0 | $ 19,250.00 |
| Jung, Woo Jong | Manager - Korea | $ 350 | 33.0 | $ 11,550.00 |
| Jang, Hyun Min | Manager - Korea | $ 350 | 3.0 [1] | $ 1,050.00 |
| Massey, L | Tax Manager - United Kingdom | $ 265 | 7.1 [1] | $ 1,881.50 |
| Soysal, Şirin | Manager - Turkey | $ 265 | 25.0 | $ 6,625.00 |
| Blazejova, Z. | Manager - Slovakia | $ 265 | 10.7 | $ 2,835.50 |
| Lombaard, E. | Manager - S. Africa | $ 265 | 8.9 | $ 2,358.50 |
| Wolniakowski, Karol | Manager - Poland | $ 265 | 10.5 | $ 2,782.50 |
| Freeke, Jan | Manager - Netherlands | $ 265 | 11.0 | $ 2,915.00 |
| Muehlenbrock, Sven | Manager - Luxembourg | $ 265 | 6.7 [1] | $ 1,775.50 |
| Huang, Kevin | Manager - China | $ 265 | 60.0 | $ 15,900.00 |
| Amanda Pereira | Manager - Brazil | $ 265 | 2.0 [1] | $ 530.00 |
| Frucci, Jay | Manager | $ 265 | 75.9 | $ 20,113.50 |
| Vyas, V. Vyas | Manager - India | $ 200 | 11.0 | $ 2,200.00 |
| Illingworth, R | Tax Assistant Manager - United Kingdom | $ 265 | 11.0 | $ 2,915.00 |
| Wilson, Bill | Sr. Associate | $ 300 | 161.7 | $ 48,510.00 |
| Shariff, Tanya | Sr. Associate | $ 300 | 313.5 | $ 94,050.00 |
| Sellers, Monica | Sr. Associate | $ 300 | 560.6 | $ 168,180.00 |
| Lang, Tim | Sr. Associate | $ 300 | 231.2 | $ 69,360.00 |
| Jochenson, Silvia | Sr. Associate | $ 300 | 70.2 | $ 21,060.00 |

**EXHIBIT B**

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Jhaveri, Jigar | Sr. Associate | $ 300 | 152.0 | $ 45,600.00 |
| Hopkins, Victoria | Sr. Associate | $ 300 | 15.8 | $ 4,740.00 |
| Zhang, Yiling | Sr. Associate - China | $ 280 | 82.9 | $ 23,212.00 |
| Zhang, Arthur | Sr. Associate - China | $ 280 | 4.0 (1) | $ 1,120.00 |
| Xu, Susana | Sr. Associate - China | $ 280 | 41.4 | $ 11,592.00 |
| Li, Cassie | Sr. Associate - China | $ 280 | 83.7 | $ 23,436.00 |
| Liu, C. | Sr. Associate - Taiwan | $ 250 | 67.1 | $ 16,775.00 |
| Shim, Sean | Sr. Associate - Korea | $ 250 | 14.8 | $ 3,700.00 |
| Ko, Ju Hyun | Sr. Associate - Korea | $ 250 | 9.7 | $ 2,425.00 |
| Kim, Byung Uk | Sr. Associate - Korea | $ 250 | 55.2 | $ 13,800.00 |
| Wall, Lucas | Sr. Associate | $ 250 | 634.6 | $ 158,650.00 |
| Von Restorff, Kai-Uwe | Sr. Associate | $ 250 | 3.5 | $ 875.00 |
| Taylor, Robert | Sr. Associate | $ 250 | 146.3 | $ 36,575.00 |
| Stango, Nicole | Sr. Associate | $ 250 | 184.7 | $ 46,175.00 |
| Spencer, Tom | Sr. Associate | $ 250 | 205.3 | $ 51,325.00 |
| Schweitzer, Nathan | Sr. Associate | $ 250 | 92.2 | $ 23,050.00 |
| Sassen, Timm | Sr. Associate | $ 250 | 43.3 | $ 10,825.00 |
| San Filippo, Jamie | Sr. Associate | $ 250 | 351.6 | $ 87,900.00 |
| Olapojoye, O. Victor | Sr. Associate | $ 250 | 40.0 | $ 10,000.00 |
| O'Hara, Brendan | Sr. Associate | $ 250 | 134.2 | $ 33,550.00 |
| Nizhnikov, Alexander | Sr. Associate | $ 250 | 190.3 | $ 47,575.00 |
| Nemitz, Haydn | Sr. Associate | $ 250 | 217.6 | $ 54,400.00 |
| Naidu, Sujit | Sr. Associate | $ 250 | 151.3 | $ 37,825.00 |
| Mordini, Richard | Sr. Associate | $ 250 | 344.0 (3) | $ 86,000.00 |
| McMann, John | Sr. Associate | $ 250 | 304.1 | $ 76,025.00 |
| Markos, Abedi | Sr. Associate | $ 250 | 93.0 | $ 23,250.00 |
| Macapagal, Catherine | Sr. Associate | $ 250 | 874.1 | $ 218,525.00 |
| Lindow, Torben | Sr. Associate | $ 250 | 53.0 | $ 13,250.00 |
| Leitner, Richard Justin | Sr. Associate | $ 250 | 82.9 | $ 20,725.00 |
| Kielkucki, Cynthia | Sr. Associate | $ 250 | 1,006.3 | $ 251,575.00 |
| Jacobson, Scott | Sr. Associate | $ 250 | 324.5 | $ 81,125.00 |
| Huelsmann, Derek | Sr. Associate | $ 250 | 82.5 | $ 20,625.00 |
| Holloway, Brian | Sr. Associate | $ 250 | 339.0 | $ 84,750.00 |
| Harrison, Brent | Sr. Associate | $ 250 | 70.8 | $ 17,700.00 |
| Gress, Brian | Sr. Associate | $ 250 | 383.7 | $ 95,925.00 |
| Gotsch, Jason | Sr. Associate | $ 250 | 241.1 | $ 60,275.00 |
| Gardiner, Collin | Sr. Associate | $ 250 | 115.1 | $ 28,775.00 |
| Elder, Michael D. | Sr. Associate | $ 250 | 635.1 | $ 158,775.00 |
| Dellaloglu, Defne | Sr. Associate | $ 250 | 341.5 | $ 85,375.00 |
| Cranor, Traci | Sr. Associate | $ 250 | 155.9 | $ 38,975.00 |
| Cepkauskaite, Lina | Sr. Associate | $ 250 | 27.3 | $ 6,825.00 |
| Caffrey, Ryan | Sr. Associate | $ 250 | 702.7 | $ 175,675.00 |
| Bunnell, Brian | Sr. Associate | $ 250 | 174.2 | $ 43,550.00 |
| Brandt, Cody | Sr. Associate | $ 250 | 133.5 | $ 33,375.00 |
| Bodie, Matthew | Sr. Associate | $ 250 | 465.1 | $ 116,275.00 |
| Bergman, Beth | Sr. Associate | $ 250 | 787.2 | $ 196,800.00 |
| Abiose, Olumide | Sr. Associate | $ 250 | 98.5 | $ 24,625.00 |

**EXHIBIT B**

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | Hourly Billing Rate | | Total Billed Hours | Total Compensation | |
|---|---|---|---|---|---|---|
| Murray, Jennifer | Sr. Associate | $ | 238 | 9.0 | $ | 2,142.00 |
| Nowicki, Jaroslaw | Sr. Associate - Poland | $ | 225 | 48.5 | $ | 10,912.50 |
| Nagórko, Katarzyna | Supervisor - Poland | $ | 210 | 10.5 | $ | 2,205.00 |
| Sabol, M. | Senior Associate - Slovakia | $ | 210 | 25.7 | $ | 5,397.00 |
| Chillet, L | Senior Associate - Morocco | $ | 210 | 29.5 | $ | 6,195.00 |
| Ayukawa, Hanae | Senior Associate - Japan | $ | 210 | 12.0 | $ | 2,520.00 |
| Yacu, Christopher | Associate | $ | 200 | 280.5 | $ | 56,100.00 |
| Tatum, Pamela | Associate | $ | 200 | 29.1 | $ | 5,820.00 |
| Rush, Jennifer | Associate | $ | 200 | 74.6 | $ | 14,920.00 |
| Reid, Carol | Associate | $ | 200 | 20.6 | $ | 4,120.00 |
| Houde, Ryan | Associate | $ | 200 | 2.5 [1] | $ | 500.00 |
| Gwinn, Cameron | Associate | $ | 200 | 423.4 | $ | 84,680.00 |
| Wang, J. | Associate - Taiwan | $ | 175 | 174.0 | $ | 30,450.00 |
| Kang, K. | Associate - Taiwan | $ | 175 | 273.0 | $ | 47,775.00 |
| Huang, S. | Associate - Taiwan | $ | 175 | 180.5 | $ | 31,587.50 |
| Tsipursky, Olga | Associate | $ | 170 | 5.5 [1] | $ | 935.00 |
| Kammann, Michael W | Associate | $ | 170 | 16.5 | $ | 2,805.00 |
| Adetayo, Valerie | Associate | $ | 170 | 9.5 | $ | 1,615.00 |
| Wilson Gnanamuthu, Diana | Associate | $ | 165 | 532.3 | $ | 87,829.50 |
| Whipple, Sara | Associate | $ | 165 | 605.1 | $ | 99,841.50 |
| Wachter, Ryan | Associate | $ | 165 | 40.0 | $ | 6,600.00 |
| Vogel, Eric | Associate | $ | 165 | 29.2 | $ | 4,818.00 |
| Streib III, William | Associate | $ | 165 | 79.1 | $ | 13,051.50 |
| Sona, Edward | Associate | $ | 165 | 12.0 | $ | 1,980.00 |
| Siebert, Thomas A | Associate | $ | 165 | 376.9 | $ | 62,188.50 |
| Sawica, Patrick | Associate | $ | 165 | 724.2 | $ | 119,493.00 |
| Sadagopan, Ragu | Associate | $ | 165 | 23.1 | $ | 3,811.50 |
| Riaz, Yasir | Associate | $ | 165 | 93.7 | $ | 15,460.50 |
| Popovic, Thomas | Associate | $ | 165 | 338.3 | $ | 55,819.50 |
| Park, Youngbin | Associate | $ | 165 | 316.1 | $ | 52,156.50 |
| Mutemba, Muposeni K. | Associate | $ | 165 | 718.0 | $ | 118,470.00 |
| Murray, Alan | Associate | $ | 165 | 526.0 | $ | 86,790.00 |
| Mordini, Richard | Associate | $ | 165 | 486.3 | $ | 80,239.50 |
| Monforte Vila, Elisenda | Associate | $ | 165 | 34.8 | $ | 5,742.00 |
| Martin, Hershel | Associate | $ | 165 | 43.2 | $ | 7,128.00 |
| Luneburg, Jorg | Associate | $ | 165 | 13.0 | $ | 2,145.00 |
| Lee, Regina (Jong-Min) | Associate | $ | 165 | 86.8 | $ | 14,322.00 |
| Law, Chi | Associate | $ | 165 | 74.5 | $ | 12,292.50 |
| Lane, Robert | Associate | $ | 165 | 341.6 | $ | 56,364.00 |
| Jain, Nitin | Associate | $ | 165 | 168.5 | $ | 27,802.50 |
| Jain, Niti | Associate | $ | 165 | 95.4 | $ | 15,741.00 |
| Hoder, John | Associate | $ | 165 | 13.0 | $ | 2,145.00 |
| Hirsch, Randy | Associate | $ | 165 | 69.8 | $ | 11,517.00 |
| Henrickson, Kyle | Associate | $ | 165 | 52.1 | $ | 8,596.50 |
| Guth, Anthony | Associate | $ | 165 | 545.6 | $ | 90,024.00 |
| Ettmore, Mark | Associate | $ | 165 | 10.2 | $ | 1,683.00 |
| Duan, Lei | Associate | $ | 165 | 242.3 | $ | 39,979.50 |

**EXHIBIT B**

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Domb, Lauren | Associate | $ 165 | 63.0 | $ 10,395.00 |
| Desalu, Adebola | Associate | $ 165 | 90.6 | $ 14,949.00 |
| DeCaro, Robert | Associate | $ 165 | 118.2 | $ 19,503.00 |
| Crossway, David | Associate | $ 165 | 45.5 | $ 7,507.50 |
| Cook, Julie | Associate | $ 165 | 8.3 | $ 1,369.50 |
| Bhandari, Kali | Associate | $ 165 | 558.2 | $ 92,103.00 |
| Luna, Frank | Paraprofessional | $ 100 | 38.6 | $ 3,860.00 |
| Gruich, Bridget | Paraprofessional | $ 100 | 26.3 | $ 2,630.00 |
| Frame, Juanita | Paraprofessional | $ 100 | 490.9 | $ 49,090.00 |
| Total Hours and Fees | | | **40,288.2** | $ 12,743,586.00 |

***TAX - International Executive Services***

| Category | Number of Employees | Payments at Host | Global Reconciliation | Monthly Calculations | Completed Tax Return (50%) | Tax Returns in Progress | Cost Estimate | Total Compensation |
|---|---|---|---|---|---|---|---|---|
| US Inbound Expatriates | 57 | $ 375 | | | | | | $ 21,375.00 |
| US Inbound Expatriates | 207 | | | | $ 875 | | | $ 181,125.00 |
| US Inbound Expatriates | 15 | | | | | | $ 850 | $ 12,750.00 |
| US Outbound Expatriates | 214 | $ 375 | | | | | | $ 80,250.00 |
| US Outbound Expatriates | 467 | | | | $ 875 | | | $ 408,625.00 |
| US Outbound Expatriates | 30 | | | | | | $ 850 | $ 25,500.00 |
| US Outbound Expatriates | 291 | | $ 91,088 | | | | | $ 91,088.00 |
| Non-US Expatriates | 4 | | | | $ 875 | | | $ 3,500.00 |
| Non-US Expatriates | 267 | $ 375 | | | | | | $ 100,125.00 |
| Non-US Expatriates | 19 | | | | | | $ 850 | $ 16,150.00 |
| Non-US Expatriates | 297 | | | | $ 375 | | | $ 111,375 |
| Non-US Expatriates | 294 | | $ 210,036 | | | | | $ 210,036 |
| J-1 Trainees | 108 | | | | | $ 375 | | $ 40,500.00 |
| Trainees (Non-US) | 17 | $ 375 | | | | | | $ 6,375.00 |
| Mexico Border Employees | 555 | | | | | $ 375 | | $ 208,125.00 |
| Mexico Border Employees | 165 | | | | $ 375 | | | $ 61,875.00 |
| Mexico Border Employees Monthly | 2408 | | | $40/month | | | | $ 96,320.00 |
| | | | | | | | | $ 1,675,094.00 |

| | |
|---|---|
| Subtotal Fees | $ 14,418,680.00 |
| Voluntary Reduction in Project Shark Fees, Fee Statement Preparation Fees and Non-Working Travel Time [4] | $ (667,372.75) |
| Total Fees | $ 13,751,307.25 |
| Out of Pocket Expenses | $ 1,023,285.08 |
| **Total of Fees and Out of Pocket Expenses** | $ **14,774,592.33** |

Notes:

[1] - Although these timekeepers billed eight hours or less during any one month period, they are not Transitory Timekeepers because of (i) the nature of the services that they provided, (ii) the timing of the services they provided relative to the time of the month, or (iii) their supervisory role dictated a limited but valuable

**EXHIBIT B**

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
February 1, 2007 through May 31, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|

participation in the project.

(2) - Scott Jacobson was promoted from the position of Sr. Associate to Manager on April 1, 2007.

(3) - Richard Mordini was promoted from the position of Associate to Sr. Associate on April 1, 2007.

(4) - Due to an inadvertent billing error, KPMG will provide Delphi with a credit of $4,931.50.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                     :

In re:                                                        :        **Chapter 11**
                                     :

**DELPHI CORPORATION, et al.,**                               :        **Case No. 05-44481 (RDD)**
                                     :

              **Debtors.**                             :        **(Jointly Administered)**
                                     :

                                     :
------------------------------------------------------------ x

**ORDER APPROVING FIFTH APPLICATION OF KPMG LLP,
AS TAX AND TRANSACTION SERVICES ADVISORS AND ADVISORY AND
VALUATION SERVICES ADVISORS FOR THE DEBTORS, FOR INTERIM
ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
<u>INCURRED FROM FEBRUARY 1, 2007 THROUGH MAY 31, 2007</u>**

This matter comes before the Court upon the Fifth Application (the "Application") of

KPMG LLP ("KPMG"), as Tax and Transaction Services Advisors and Advisory and Valuation

Services Advisors for the Debtors, for Interim Compensation for Professional Services Rendered

and for Reimbursement of Actual and Necessary Expenses for the Period from February 1, 2007

through May 31, 2007 (the "Compensation Period").

This Court having reviewed the Application; and no objections or comments to the

Application having been filed; and this Court having determined that the legal and factual bases

set forth in the Application establish just cause for the relief granted herein,

THIS COURT HEREBY FINDS THAT:

(1)     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue of this Chapter 11

case and Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the Local

Bankruptcy Rules.

(2)    KPMG is a duly appointed professional in the above-captioned Debtors' chapter 11 cases.

(3)    KPMG served the Application with all exhibits by overnight mail to all Notice Parties referenced at Paragraph 2.a of the Order establishing compensation procedures (Docket No. #869).  KPMG served a Notice of filing and objection/hearing dates by electronic mail (or by fax when no email address provided) upon all persons on the Master Service List and the 2002 List.

(4)    No objections were filed.

(5)    Based upon this Court's review of the Application and the schedules attached thereto, the fees and expenses are reasonable, actual and necessary.

IT IS, THEREFORE, ORDERED, that:

1.    The Application is APPROVED AND GRANTED.

2.    The fees and reimbursable expenses for the Compensation Period are approved and allowed in the following amounts, and Debtors may pay KPMG such amounts to the extent not already paid:

| | |
|---|---|
| Fees (100%) | $13,751,307.25 |
| Expenses (100%) | $  1,023,285.08 |
| Subtotal | $14,774,592.33 |
| Payments Received | $(7,442,575.11) |
| Total Balance Due | $  7,332,017.22 |

Dated: New York, New York
_____, 2007

_____
United States Bankruptcy Judge