**Hearing Date and Time: October 25, 2007 at 10:00 a.m.**
**Objection Deadline: October 18, 2007 at 4:00 p.m.**

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Robert A. Siegel (RS 0922)
Tom A. Jerman (TJ 1129)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
    In re                                   :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                        Debtors.            :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COVER SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**O'MELVENY & MYERS LLP's FIFTH INTERIM APPLICATION FOR ALLOWANCE**
**OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

| | |
|---|---|
| **NAME OF APPLICANT:** | O'Melveny & Myers LLP |
| **TIME PERIOD:** | February 1, 2007 through May 31, 2007 (4 months) |
| **ROLE IN THE CASE:** | Special Labor Counsel to Debtors |

| DATE OF FINAL RETENTION ORDER: | November 4, 2005 |
|---|---|
| | |
| **CURRENT APPLICATION:** | |
| | |
| Fees Incurred: | $   258,751.00 |
| Expenses Incurred: | $   347,012.84 |
| | |
| **PRIOR APPLICATIONS:** | |
| | |
| Fees Previously Requested: | $ 5,551,207.00 |
| Fees Previously Awarded: | $ 5,432,449.99 |
| Expenses Previously Requested: | $ 1,804,820.61 |
| Expenses Previously Awarded: | $ 1,804,820.61 |
| | |
| **INTERIM OR FINAL APPLICATION:** | Interim |

## SCHEDULE OF HOURS AND COMPENSATION

| NAME OF PROFESSIONAL<br><br>PARTNERS | YEAR ADMITTED | DEPARTMENT | BILLING RATES | HOURS BILLED[1] | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jeffrey Kohn | 1985 | Adversarial/Labor | $ 875.00 | 58.70 | $       51,362.50 |
| Tom A. Jerman | 1981 | Adversarial/Labor | $ 795.00 | 110.50 | $       87,847.50 |
| Gordon Krischer | 1972 | Adversarial/Labor | $ 795.00 | 0.80 | $            636.00 |
| Barry H. Goldstein | 1990 | Adversarial | $ 740.00 | 0.30 | $            222.00 |
| **Total Partners** | | | | **170.30** | **$   140,068.00** |

**Blended Hourly Rate = $ 822.48**

| NAME OF PROFESSIONAL<br><br>COUNSEL & ASSOCIATES | YEAR ADMITTED | DEPARTMENT | BILLING RATES | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Rachel S. Janger | 1999 | Adversarial/Labor | $ 550.00 | 11.20 | $         6,160.00 |
| Jessica Kastin | 2002 | Adversarial/Labor | $ 550.00 | 100.90 | $       55,495.00 |
| Jennifer Merzon | 2003 | Adversarial/Labor | $ 525.00 | 35.60 | $       18,690.00 |
| Melissa Janiak-Oliver | 2006 | Adversarial/Labor | $ 390.00 | 16.70 | $         6,513.00 |
| Deepa Ambekar | 2005 | Adversarial/Labor | $ 390.00 | 38.10 | $       14,859.00 |
| Stacy Hauf | 2006 | Adversarial | $ 360.00 | 31.60 | $       11,376.00 |
| Mark Kanaga | 2007 | Adversarial/Labor | $ 330.00 | 14.50 | $         4,785.00 |

---

[1]    Although all professionals record time in increments of one-tenth of an hour, due to O'Melveny's voluntary write-off of one-half of travel time, the total hours billed for certain professionals are expressed in one-hundredths of an hour.

| NAME OF PROFESSIONAL COUNSEL & ASSOCIATES | YEAR ADMITTED | DEPARTMENT | BILLING RATES | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Total Counsel & Associates | | | | 248.60 | $ 117,878.00 |

Blended Hourly Rate = $ 474.17

| NAME OF PARA-PROFESSIONAL | DEPARTMENT | BILLING RATES | HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Michelle Woo | Adversarial | $ 175.00 | 4.40 | $     770.00 |
| Michael Montalto | Court Services | $  35.00 | 1.00 | $      35.00 |
| Total Paraprofessionals | | | 5.40 | $     805.00 |

Blended Hourly Rate = $149.07

**Hearing Date and Time: October 25, 2007 at 10:00 a.m.**
**Objection Deadline: October 18, 2007 at 4:00 p.m.**

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
Robert A. Siegel (RS 0922)
Tom A. Jerman (TJ 1129)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### FIFTH INTERIM APPLICATION OF O'MELVENY & MYERS LLP
### FOR ORDER AUTHORIZING AND APPROVING COMPENSATION AND
### REIMBURSEMENT OF EXPENSES

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

O'Melveny & Myers LLP ("O'Melveny"), special labor counsel for Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors, and debtors-in-possession in the

1

above-captioned case (collectively, the "Debtors"), hereby submits its fifth interim application

for the interim allowance of compensation and reimbursement of expenses (the "Fifth Interim

Application"), pursuant to sections 330(a)(1) and 331 of Chapter 11, Title 11 of the United States

Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), the proposed form of which is attached hereto as Exhibit "A".

O'Melveny submits this Fifth Interim Application for (a) allowances of compensation for

professional services rendered by O'Melveny to the Debtors, and (b) reimbursement of actual

and necessary disbursements incurred by O'Melveny in rendition of required professional

services on behalf of the Debtors.  In support of the Fifth Interim Application, O'Melveny

respectfully represents as follows:

## I.
## PRELIMINARY STATEMENT

    1.    As hereinafter set forth in detail, the activities performed by O'Melveny, in

conjunction with the Debtors and the Debtors' other retained professionals, were extensive

during the period from February 1, 2007 through May 31, 2007 (the "Fifth Interim Period"), and

yielded significant benefits to the estates and their creditors.

    2.    O'Melveny requests that this Court authorize total compensation to

O'Melveny in the amount of $605,763.84, which includes reimbursement of fees in the amount

of $258,751.00, including the 20 percent holdback in the amount of $51,750.20, and expenses in

the amount of $347,012.84 for the Fifth Interim Period.[1]

---

[1]    The aggregate total sought for compensation during the Fifth Interim Period reflects O'Melveny's
voluntary write-off in the amount of $6.00 for fees billed by administrative staff and inadvertently charged to the
Debtors.

2

## II.
## BACKGROUND

A.    The Chapter 11 Filings

3.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S.

subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief

under chapter 11 of the Bankruptcy Code.  On October 14, 2005, three additional U.S.

subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought

reorganization relief.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  On October 8, 2005 and October 19, 2005, this Court entered orders directing the joint

administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404 respectively).

4.    On October 17, 2005, the Office of the United States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the

U.S. Trustee appointed an official committee of equity security holders (the "Equity

Committee").  No trustee or examiner has been appointed in the Debtors' cases.

5.    The Debtors have not yet filed a plan of reorganization or disclosure

statement.

6.    This Court has jurisdiction over this Fifth Interim Application pursuant to 28

U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.    The statutory predicates for relief requested herein are §§ 330 and 331 of the

Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Local Rule 2014-1.

B.    Current Business Operations Of The Debtors

8.    Delphi had global 2005 net sales of approximately $26.9 billion and global

assets as of August 31, 2005 of approximately $17.1 billion.[2]  At the time of its chapter 11 filing,

Delphi ranked as the fifth largest public company business reorganization in terms of revenues,

and the thirteenth largest public company business reorganization in terms of assets.  Delphi's

non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without

supervision from the Bankruptcy Court.

9.    Delphi is a leading global technology innovator with significant engineering

resources and technical competencies in a variety of disciplines, and is one of the largest global

suppliers of vehicle electronics, transportation components, integrated systems and modules, and

other electronic technology.  Delphi supplies products to nearly every major global automotive

original equipment manufacturer.

10.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees

worked in approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy,

Michigan headquarters.  Approximately 34,750 of the Debtors' U.S. employees were hourly

employees as of the Initial Filing Date, and 96 percent of these were represented by

approximately 49 different international and local unions.  Outside the United States, Delphi's

foreign entities employed more than 134,000 people on the Initial Filing Date, supporting 120

manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

---

[2]    The aggregated financial data used in this Fifth Interim Application generally consists of consolidated
information from Delphi and its worldwide subsidiaries and affiliates.

4

11.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted Delphi's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still Delphi's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading to Chapter 11 Filing

12.    In the first two years following Delphi's separation from GM, Delphi generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, Delphi has suffered losses. In calendar year 2004, Delphi reported a net operating loss of $482 million on $28.6 billion in net sales.[3] Reflective of a downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.8 billion on net sales of $26.9 billion.

13.    The Debtors believe that Delphi's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs; (b) a competitive U.S. vehicle production environment for domestic OEMs

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

resulting in the reduced number of motor vehicles that GM produces annually in the United

States and related pricing pressures; and (c) increasing commodity prices.

14.    In light of these factors, Delphi determined that it would be imprudent and

irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,

operational issues, and forward looking revenue requirements. Because discussions with its

unions and GM were not progressing sufficiently, Delphi commenced these chapter 11 cases for

its U.S. businesses to complete the Debtors' transformation plan and preserve value for its

stakeholders.

15.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve Delphi's core

businesses. This requires negotiation with key stakeholders over their respective contributions to

the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process

to achieve the necessary cost savings and operational effectiveness. The Debtors believe that a

substantial segment of Delphi's U.S. business operations must be divested, consolidated, or

wound-down during these cases.

16.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of

its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, Delphi will preserve and continue the strategic growth of its non-U.S. operations

and maintain its prominence as the world's premier auto supplier.

6

## III.
## RETENTION OF O'MELVENY

17.   The Debtors filed their application to employ O'Melveny with the Court on

October 8, 2005.  O'Melveny charges legal fees on an hourly basis at its attorneys' individual

hourly rates, which are based on the attorney's seniority and experience, and which are adjusted

from time to time.  O'Melveny also charges the Debtors for reasonable and actual out-of-pocket

expenses incurred, such as court services, computerized research, delivery services, photocopies,

long distance phone calls, fees associated with ongoing litigation, travel and other costs

necessarily incurred in connection with its representation of the Debtors.[4]  O'Melveny's fee

structure and reimbursement policies were disclosed in the Debtors' application to employ

O'Melveny, to which no party objected and this Court approved by order entered on November

4, 2005, a copy of which is attached hereto as Exhibit "B".

## IV.
## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

18.   On November 4, 2005, this Court entered an Order Under 11 U.S.C. § 331

Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of

Professionals (Docket No. 869) (the "Initial Interim Compensation Order").  On March 8, 2006,

this Court entered a Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for

Interim Compensation and Reimbursement of Expense of Professionals (Docket No. 2747) (the

"Supplemental Interim Compensation Order"), which, among other things, clarified the

deadlines for retained professionals to submit interim and final fee applications.  On March 28,

2006, this Court entered a Second Supplemental Order Under 11 U.S.C. § 331 Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket

---

[4]        As discussed more fully below, O'Melveny provides discounts to the Debtors, as regards certain expenses.
Specifically, O'Melveny does not charge the Debtors for outgoing facsimiles and charges the Debtors for only one-
half of total travel time and $0.10 per copy.

7

No. 2986) (the "Second Supplemental Interim Compensation Order") extending the deadline for

retained professionals to (a) file and serve their first interim fee applications and (b) serve

monthly fee statements. On May 5, 2006, this Court entered its Third Supplemental Order Under

11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of

Expenses of Professionals (Docket No. 3630) (the "Third Supplemental Interim Compensation

Order"), which established a Fee Review Committee (as defined below), approved a protocol for

reviewing fees and reimbursement of expenses sought by retained professionals and further

extended the deadline (a) to file and serve the first interim fee application and (b) to serve

monthly fee statements. On July 12, 2006, this Court entered its Fourth Supplemental Order

Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses of Professionals (Docket No. 4545) (the "Fourth Supplemental Interim

Compensation Order"), which rescheduled the hearing on the First and Second Interim Fee

Applications and further authorized and directed the Debtors to release one-half of the holdback

for all periods ended on or before May 31, 2006. On October 13, 2006, this Court entered its

Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals (Docket No. 5310) (the "Fifth

Supplemental Interim Compensation Order"), which again rescheduled the hearing on the First

and Second Interim Fee Applications. On December 11, 2006, this Court entered its Sixth

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals (Docket No. 6145) (the "Sixth Supplemental

Interim Compensation Order," together with the Initial Interim Compensation Order,

Supplemental Interim Compensation Order, Second Supplemental Interim Compensation order,

the Third Supplemental Interim Compensation Order, the Fourth Supplemental Interim

Compensation Order, and the Fifth Supplemental Interim Compensation, the "Interim
Compensation Order"), which rescheduled the hearing on the First, Second and Third Interim
Fee Applications, set forth the hearing schedule for the Fourth and Fifth Interim Fee
Applications, and further authorized and directed the Debtors to release additional holdback
amounts for the First, Second and Third Interim Periods.  Additionally, the Sixth Interim
Compensation Order provided a procedure for the Fee Review Committee (defined below) and
the Retained Professionals to negotiate the allowance of specific fee applications and further
authorized and directed the release of all remaining holdback amounts for the First, Second and
Third Interim Periods for those professionals who were able to reach consensual settlement.

19.    Pursuant to the UST Guidelines, O'Melveny certifies that the Debtors have
received a copy of this Fifth Interim Application but have not yet completed their review.  In
addition, pursuant to paragraph 2(a) and 2(j) of the Interim Compensation Order, as
supplemented, as well as the Fee Review Protocol (as defined below), O'Melveny certifies that a
copy of this Fifth Interim Application is being served via overnight mail upon (i) the Debtors, (ii)
co-counsel for the Debtors, (iii) the United States Trustee for the Southern District of New York,
(iv) the Creditors' Committee, (v) counsel for the agent under the Debtors' prepetition credit
facility, (vi) counsel for the agent under the Debtors' postpetition credit facility, (vii) counsel to
the Equity Committee, (viii) the members of the Fee Review Committee, and (ix) Legal Cost
Control ("LCC"), the Fee and Expense Analyst to the Fee Review Committee.  O'Melveny is
also serving, concurrently with this filing, notice of the filing of and the hearing on the Fifth
Interim Application on parties as required by paragraph 8 of the Interim Compensation Order.
O'Melveny submits that no other or further notice need be given.

20.    To minimize costs to the Debtors' estates and avoid duplicative efforts in the review of fee applications filed in these Reorganization Cases, the Debtors, the official committee of unsecured creditors (the "Creditors' Committee"), and the U.S. Trustee negotiated the formation of a joint fee review committee (the "Fee Review Committee") to review, comment on, and if necessary, object to the various fee applications filed in these Reorganization Cases. As part of the Third Supplemental Interim Compensation Order, this Court authorized the establishment of the Fee Review Committee and approved a protocol regarding the Fee Review Committee, its composition, mandate, and procedures (the "Fee Review Protocol").[5] The Fee Review Committee held its initial meeting on May 17, 2006. The Fee Review Committee also filed reports providing certain recommendations concerning the Retained Professionals' fee applications and suggesting a schedule for future fee applications.[6] Additionally, LCC issued audit reports containing individualized recommendations concerning each Retained Professionals' fee applications for the First, Second, Third, and Fourth Interim Periods. In compliance with the Sixth Interim Compensation Order, O'Melveny has conferred with the Fee Review Committee and reached a consensual settlement with regard to the Committee's recommendation to this Court regarding allowance of the First, Second Third, and Fourth Fee

---

[5]    One aspect of the Fee Review Protocol instituted a series of procedures (the "Budget Procedures") with regard to the submission and review of budgets (each, a "Budget") for professionals working on these Reorganization Cases. Pursuant to the Budget Procedures each professional was required to prepare and submit to the Fee Review Committee a Budget for professional fees for each application period. As directed by the Fee Review Committee, application of the Budget Procedures was waived through the Third Interim Period, with the first required Budget submission due October 31, 2006 for the time period of October 1, 2006 through January 31, 2007 and the second submission due February 28, 2007 for the time period of February 1, 2007 through May 31, 2007, both of which O'Melveny timely submitted to LCC. O'Melveny was subsequently notified, on June 12, 2007, that the quarterly Budget submission would no longer be required by the Fee Review Committee.

[6]    Report Of The Delphi Joint Fee Review Committee Regarding Applications For Award Of Compensation And Reimbursement Of Expenses For The Periods From October 8, 2005 Through January 31, 2006 And February 1, 2006 Through May 31, 2006, And Request That The Court Resolve Dispute With Respect To Fee Committee Statements (Docket No. 5559); Supplemental Report Of The Delphi Joint Fee Review Committee Regarding Applications For Award Of Compensation And Reimbursement Of Expenses For The Periods From October 8, 2005 Through January 31, 2006 And February 1, 2006 Through May 31, 2006, And Request That The Court Resolve Dispute With Respect To Fee Committee Statements (Docket No. 5887).

Applications. This Court has since approved the agreed settlements, and authorized and directed

the Debtors to release all approved, remaining holdback amounts for professional fees incurred

during the First, Second, Third, and Fourth Interim Periods.[7]

        21.   In compliance with the Interim Compensation Order, on or before the last

day of the month following each calendar month for which compensation was sought,

O'Melveny served by overnight delivery to (i) the Debtors, (ii) co-counsel for the Debtors, (iii)

the United States Trustee for the Southern District of New York, (iv) counsel for the official

committee of unsecured creditors, (v) counsel for the agent under the Debtors' prepetition credit

facility, (vi) counsel for the agent under the Debtors' postpetition credit facility, and (vii) the

members of the Fee Review Committee a monthly statement of all professional fees and

disbursements incurred during the preceding calendar month. The parties had at least 15 days

after receipt to review any such statement. In the event any party had an objection to the

compensation or reimbursement sought in a particular statement, such person was required to

serve the objection no later than the 45th day following the month for which compensation was

sought. If there were no objections, at the expiration of the 45 day period, the Debtors were

ordered to promptly pay 80 percent of the fees and 100 percent of the expenses identified in each

monthly statement. O'Melveny submitted monthly statements for each month during the Fifth

Interim Period and no objections were received.

        22.   O'Melveny received from Debtors a retainer of $300,000 prepetition.

Pursuant to the terms of its Engagement Letter, a copy of which is attached hereto as Exhibit

---

[7]      Omnibus Order Granting First Interim Applications Of Certain Professionals For Allowance Of
Compensation And Reimbursement Of Expenses (October 8, 2005 Through January 31, 2006) (Docket No. 6986);
Omnibus Order Granting Second Interim Applications Of Certain Professionals For Allowance Of Compensation
And Reimbursement Of Expenses (February 1, 2006 Through May 31, 2006) (Docket No. 6997); Omnibus Order
Granting Third Interim Applications Of Certain Professionals For Allowance Of Compensation And Reimbursement
Of Expenses (June 1, 2006 Through September 30, 2006) (Docket No. 7019); Omnibus Order Granting Fourth
Interim Applications Of Certain Professionals For Allowance Of Compensation And Reimbursement Of Expenses
(October 1, 2006 Through January 31, 2007) (Docket Nos. 8446 & 8450).

"C," O'Melveny applied $190,886.56 of that retainer in the First Interim Period and an

additional $21,588.19 of that retainer during the Second Interim Period to pay certain invoices of

Paycraft Consulting LLC.[8] No monies, however, were used from the retainer during the Third,

Fourth or Fifth Interim Period, and the retainer balance remains $87,525.25.

23.    To the best of O'Melveny's knowledge, information and belief, the Debtors

have paid all postpetition expenses in the ordinary course, and there are currently no unpaid,

undisputed ordinary course, prepetition operating expenses in these cases.

24.    To the best of O'Melveny's knowledge, information and belief, the Debtors

have sufficient funds on hand to pay the compensation and reimbursement of expenses requested

herein.

25.    To the best of O'Melveny's knowledge, information and belief, the Debtors

have filed with the United States Trustee all monthly operating reports presently due, and have

paid all quarterly fees to the United States Trustee which are presently due.

26.    O'Melveny is providing in this Fifth Interim Application a general

description of services rendered during the Fifth Interim Period. Moreover, the actual time

records of each professional are appended as Exhibit "D" to the Fifth Interim Application,

thereby providing a detailed accounting of the services provided for consideration by the United

States Trustee and this Court.

---

[8]    Paycraft Consulting LLC ("Paycraft") was retained by O'Melveny to provide labor costing services to Delphi and, as a result, Paycraft's invoices are sent to O'Melveny and then forwarded to Delphi as a bankruptcy expense on O'Melveny's invoices. In order to expedite payment to Paycraft, O'Melveny paid certain Paycraft invoices out of its retainer with the intent of replenishing the retainer when Delphi reimbursed O'Melveny for the payments. While Delphi has since reimbursed O'Melveny for most of the Paycraft invoices, there are still two invoices outstanding. It is O'Melveny's intent, upon receipt of the funds from Delphi, to replenish the retainer, and seek approval during the applicable fee application period.

## V.
## SUMMARY OF COMPENSATION REQUESTED AND SERVICES
## RENDERED TO THE ESTATES DURING THIS PERIOD[9]

27.    O'Melveny seeks approval of professional fees in the amount of

$258,751.00 and reimbursement of expenses in the amount of $347,012.84 for the Fifth Interim

Period.  In accordance with the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (Appendix A to 28

C.F.R. § 58), dated May 17, 1996 (the "UST Guidelines"), O'Melveny has classified all services

performed for which compensation is sought for this period.  Exhibit "E" is a table listing the

names of all attorneys and paraprofessionals who have worked for the Debtors during the Fifth

Interim Period, and their respective hourly rates and amounts billed, in addition to other

summary information required by the UST Guidelines.  Exhibit "F" to this Fifth Interim

Application sets forth with particularity each category of expenses incurred by O'Melveny on

behalf of the Debtors.

28.    In staffing this case, in budgeting and incurring charges and disbursements,

and in preparing and submitting this Fifth Interim Application, O'Melveny has been mindful of

the need to be efficient while providing adequate and vigorous representation to the Debtors.  As

described in detail herein, O'Melveny believes that the requests made in this Fifth Interim

Application comply with this Court's standards in the context of the unique circumstances

surrounding these unusually large and complex cases.

29.    Pursuant to the Fee Review Protocol, effective October 1, 2006, O'Melveny

has recorded all work under using the U.S. Trustee's Project Codes.  All O'Melveny

professionals keep a record of the time spent rendering such services in billing increments of

---

[9]    O'Melveny has taken every effort to ensure that this Fifth Interim Application is prepared in accordance
with the Guidelines for Reviewing Applications For Compensation & Reimbursement of Expenses filed under 11
U.S.C. § 330 (the "UST Guidelines") to the extent applicable.

13

one-tenth of an hour.[10]  As noted above, Exhibit "D" contains O'Melveny's detailed invoices for
this matter number, as sent to the Debtors.

      30.  The tasks to which O'Melveny gave attention during the Fifth Interim
Period are summarized more fully below.  Although recitation of every item of professional
services that O'Melveny performed would unduly burden the Court, the following summary
highlights the major tasks to which O'Melveny devoted substantial time and attention during the
Fifth Interim Period.

      31.  <u>Sections 1113/1114 Advice – Labor (Project Code 10)</u>.  During the Fifth
Interim Period, O'Melveny continued to advise the Debtors regarding all labor aspects of its
bankruptcy proceedings, including the Debtors' ongoing efforts to negotiate significant labor
cost and employee benefit savings with unions representing the Debtors' hourly employees.  As
discussions with the unions and other stakeholders continued during the Fifth Interim Period,
O'Melveny worked closely with numerous financial, operational and labor relations personnel of
the client, as well as advisors to the client, to assist in negotiations strategy, information sharing,
and to direct continuing efforts to secure relief from the various bargaining agreements under
Sections 1113 and 1114.  Specifically, as a part of these efforts, O'Melveny provided extensive
advice and counseling on the legal requirements of Sections 1113 and 1114 of the Bankruptcy
Code, the National Labor Relations Act, strategic labor planning, and labor aspects of the
Debtors' restructuring and transformation plans.  Additionally, O'Melveny analyzed and
counseled the Debtors regarding potential union bankruptcy claims.  Finally, O'Melveny
attended status conferences relevant to the labor aspects of the Debtors' bankruptcy proceedings,
as well as internal meetings with the Debtors and other advisors, at the Debtors' request.

---

[10]  Although all professionals record time in increments of one-tenth of an hour, due to O'Melveny's voluntary
write-off of one-half of travel time as discussed below, the total hours billed for certain professionals are expressed
in one-hundredths of an hour.

14

32.    Fee Application – Labor (Project Code 07).  During the Fifth Interim

Period, O'Melveny prepared the relevant applications for interim allowance of compensation and

reimbursement of expenses and communicated with the Fee Review Committee and LCC

regarding fees and expenses.  In particular, O'Melveny billed 27.1 hours and $9,881.00 in fees in

preparing and filing O'Melveny's Fourth Interim Application, which application totaled

$151,934.25 in fees and $288,188.20 in expenses.  Further, in compliance with the Fee

Committee Guidelines, O'Melveny reviewed and timely submitted required monthly and

quarterly electronic billing submissions as well as quarterly budget estimates to the Fee Review

Committee and LCC.  Additionally, O'Melveny worked with the Fee Review Committee and

LCC to ensure O'Melveny's compliance with all Fee Committee Protocols and to discuss certain

fee and expense issues regarding the Third and Fourth Interim Applications.

33.    In aggregate, attorneys and paraprofessionals at O'Melveny billed an

aggregate of 424.30 hours working on behalf of the Debtors during the Fifth Interim Period.  As

noted above, Exhibit "E" sets forth the name, hourly rate, hours billed, and total fees incurred by

each O'Melveny attorney and paraprofessional during this time.

## VI.
## LIST OF EXPENSES

34.    In connection with its representation of the Debtors during the Fifth Interim

Period, O'Melveny advanced necessary expenses totaling $347,012.84.  A detailed description of

expenses incurred during the case is attached hereto as Exhibit "F".

35.    O'Melveny requests reimbursement for expenses including costs advanced

for computerized research, delivery services, photocopies, long distance phone calls, fees

associated with ongoing litigation, travel, and other costs necessarily incurred in connection with

15

its representation of the Debtors. O'Melveny made every effort to limit expenditures and to use the most economical means available for accomplishing the tasks requiring such expenditures.

36.    Of the expenses, copying charges total $976.25. O'Melveny's standard in-house charge for photocopying is $0.15 per page. The Debtors, however, are charged only $0.10 per page.

37.    O'Melveny also incurred costs for sending correspondence regarding the case. O'Melveny charges $1.25 per page for outgoing facsimiles plus long distance phone charges, if applicable, but does not charge for incoming facsimiles. The Debtors, however, have not been charged for facsimiles other than for long distance charges associated with the transmissions. O'Melveny attempted to avoid overnight delivery expenses whenever possible.

38.    In addition to the above expenses, O'Melveny incurred expenses in connection with the travel of its attorneys, including travel to relevant status conferences before this Court in New York City, as well as in connection with travel from its offices in Washington, D.C. and New York City to Michigan for meetings with the client and others at the client's request. These airfare and travel-related expenses totaled $3,804.25.[11] In addition, O'Melveny's standard practice is to charge for 100 percent of travel time, which is also the charge for non-bankruptcy clients generally. The Debtors, however, are charged for only 50 percent of travel time.[12]

---

[11]    As shown in Exhibit "F", this figure includes $657.19 for general travel expenses (which includes charges for hotel lodging as well as parking and taxi expenses), $42.69 for meals while on travel, $2,868.40 in direct bill airfare, and $235.97 in local overtime taxi costs.

[12]    This 50 percent discount is taken into account up-front, with O'Melveny's invoices to the client reflecting only one-half of total travel time.

## VII.
## HOURLY RATES

39.    The hourly rates of all professionals and paraprofessionals rendering services in this case for the Fifth Interim Period are set forth in Exhibit "E". O'Melveny submits that these rates are reasonable and within the range of customary rates in the Southern District of New York for professionals of similar experience and expertise in cases other than those under title 11. Exhibit "E" also sets forth the year of admittance to each attorney's bar, the number of hours billed during the Fifth Interim Period, and the total fees attributable to each professional and paraprofessional, as well as other summary information required by the UST Guidelines.

40.    O'Melveny sought to control its fees by administering the case efficiently and coordinating the efficient prosecution of matters. Staffing of matters within the case was done with the intent to provide the optimal level of representation given the importance and complexity of a particular matter, and to avoid duplication of other professional efforts, including those of bankruptcy counsel Skadden, Arps, Slate, Meagher & Flom (Illinois).

## VIII.
## LEGAL ARGUMENT

A.    The Legal Standard

41.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330, as applies to final allowances, to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

17

> In determining the amount of reasonable compensation to be
> awarded . . . the court should consider the nature, the extent, and
> the value of such services, taking into account all relevant factors,
> including –
>
> (A)   the time spent on such services;
>
> (B)   the rates charged for such services;
>
> (C)   whether the services were necessary to the administration of, or
>       beneficial at the time at which the service was rendered toward the
>       completion of, a case under this title;
>
> (D)   whether the services were performed within a reasonable amount
>       of time commensurate with the complexity, importance, and nature
>       of the problem, issue, or task addressed; [and] . . .
>
> (F)   whether the compensation is reasonable based on the customary
>       compensation charged by comparably skilled practitioners in cases
>       other than cases under this title.

11 U.S.C. § 330(a)(3).

42.    To grant a request for compensation, this Court must find that such request

is reasonable. The Second Circuit, in evaluating the reasonableness of a requested fee, has

adopted the twelve-factor test of <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th

Cir. 1974), which includes such factors as the time and labor involved; the novelty and difficulty

of the questions; the skill requisite to perform the legal service properly; customary fee; the

amount involved and the results obtained; experience, reputation, and ability of the attorneys;

and awards in similar cases. See <u>United States Football League v. Nat'l Football League</u>, 887

F.2d 408, 425 (2d Cir. 1989) (awarding plaintiffs-appellees attorney's fees against defendants-

appellants for work done in connection with an antitrust suit). The reasonableness of a

compensation request is determined by taking into account the nature, extent and value of the

services provided by the professional and the cost of comparable services. See <u>Colbert v.</u>

<u>Furumoto Realty, Inc.</u>, 144 F. Supp. 2d 251, 260 (S.D.N.Y. 2001); <u>see also</u> <u>Zolfo, Cooper & Co.</u>

18

v. Sunbeam-Oster Co., 50 F.3d 253 (3d Cir. 1995); In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d

833, 849 (3d Cir. 1994).[13]

B.    O'Melveny's Fees Are Reasonable

43.    The professional services rendered by O'Melveny during the Fifth Interim

Period required a high degree of professional competence and expertise. The provision of such

services, therefore, has required the expenditure of substantial time and effort. O'Melveny

submits that the services rendered were performed efficiently, effectively and economically and

that the results obtained thus far have provided a significant benefit to the estates of the Debtors

and their creditors.

44.    In accordance with its practice in other matters, O'Melveny has utilized the

lodestar method for calculating its compensation requested in this Fifth Interim Application.

There is a strong presumption that the lodestar product is reasonable. See Pennsylvania v.

Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); In re Drexel

Burnham Lambert Group, Inc., 133 B.R. 13, 22 (Bankr. S.D.N.Y. 1991).

45.    In awarding attorneys' fees, courts will also consider whether the services

rendered were reasonably likely to benefit the debtor's estate. See e.g., In re Ames Dep't Stores,

Inc., 76 F.3d 66, 71 (2d Cir. 1996), rev'd on other grounds, Lamie v. United States Trustee, 540

U.S. 526 (2004); In re Granite Partners, L.P., 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997); In re

Drexel Lambert Group, 133 B.R. at 22. Thus, the Court should focus on what a reasonable

lawyer would have done at the time and not invoke a hindsight analysis.

---

[13]    In the "market-driven approach" to compensation requests, the primary focus of the inquiry is the cost of
comparable services in non-bankruptcy contexts. See Zolfo, Cooper, & Co., v. Sunbean-Oster Co., 50 F.3d 253,
258; see also In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849-50; In re Fine Paper Antitrust Litig., 751 F.2d
562, 583 (3d Cir. 1984) ("[t]he value of an attorney's time generally is reflected in his normal billing rate"). This
market-based approach permits flexibility in billing arrangements. The "lodestar" method (hourly rate multiplied by
hours worked) is currently the most widely utilized method for compensation arrangements, but regardless of the
manner in which compensation is calculated, "[t]he baseline rule is for firms to receive their customary rates."
Zolfo, Cooper, 50 F.3d at 259.

[I]t is important for a court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the debtor] would not have enjoyed the success it did had its counsel managed matters differently.

Boston & Maine Corp. v Moore, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

46.    O'Melveny's fees during the Fifth Interim Period were reasonable under the prevailing legal standard and should be allowed. The amount of these fees is not unusual given the size of the Debtors' business and the capacity in which O'Melveny served as special counsel. These fees are commensurate with fees that O'Melveny and other attorneys of comparable experience and expertise have charged for similar services.

C.    O'Melveny's Expenses Were Actual And Necessary

47.    Section 330(a)(1)(B) of the Bankruptcy Code permits reimbursement for actual, necessary expenses. Moreover, reimbursement for actual, necessary expenses is permitted in the Second Circuit. Accordingly, attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients. See United States Football League, 887 F.2d at 416; see also Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987) see also Zolfo, Cooper, 50 F.3d at 258. As noted above, O'Melveny has conducted a review to ensure compliance of expenses with the UST Guidelines. Accordingly, those expenses for which reimbursement is sought in this Application satisfy the standards set forth in section 330(a)(1)(B) of the Bankruptcy Code as well as in United States Football League and Kuzma, and should therefore be allowed.

**IX.**
**DESCRIPTION OF PROFESSIONAL EDUCATION AND EXPERIENCE**

48.   The biographies of the primary attorneys[14] employed by O'Melveny who

rendered services in this case are attached as Exhibit "G".

**X.**
**NO SHARING OF COMPENSATION**

49.   No agreement has been made, directly or indirectly, and no understanding

exists, for a division of compensation herein between O'Melveny and any other person or

persons, contrary to any applicable provisions of the Bankruptcy Code, the Bankruptcy Rules,

the local rules or state law.

**XI.**
**COMPLIANCE WITH THE UNITED STATES TRUSTEE GUIDELINES, THE LOCAL
GUIDELINES, AND THE INTERIM COMPENSATION ORDER**

50.   As set forth in the Certification of Tom A. Jerman With Respect To The

Fifth Interim Application of O'Melveny & Myers LLP For Order Authorizing And Approving

Compensation And Reimbursement Of Expenses (attached hereto as Exhibit "H"), O'Melveny

has complied fully with the UST Guidelines, the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

the Court on April 19, 1995 (the "Local Guidelines"), and the Interim Compensation Order, to

the extent applicable.

**XII.**
**NOTICE OF THIS FIFTH INTERIM APPLICATION**

51.   In compliance with the Interim Compensation Order, notice of the filing of

this Fifth Interim Application will be provided to all parties who have filed a notice of

appearance with the Clerk of this Court and requested notice of pleadings in these chapter 11

---

[14]      As noted in Exhibit "G", biographies are provided for only those primary attorneys employed by
O'Melveny who billed more than $10,000 in fees to the Debtors during the Fifth Interim Period.

cases. In addition, the Fifth Interim Application in its entirety will be served on the following

parties: (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: David

Sherbin), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West

Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425

Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the

agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the

Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New

York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) the Office of the

United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100,

New York, New York 10004 (Att'n: Alicia M. Leonhard), (vii) counsel to the Equity

Committee, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York,

New York, 10004 (Attn: Bonnie Steingart), (viii) the members of the Delphi Fee Review

Committee, and (ix) LCC, 255 Kings Highway East, Haddonfield, New Jersey, 08033 (Attn:

John J. Marquess). In light of the nature of the relief requested, the Debtors submit that no other

or further notice is required.

## XIII.
## MEMORANDUM OF LAW

52.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

## XIV.
## <u>CONCLUSION</u>

**WHEREFORE**, O'Melveny requests that this Court authorize and approve the

compensation in the amount of $258,751.00, including the 20 percent Holdback in the amount of

$51,750.20, and reimbursement of expenses in the amount of $347,012.84 for the Fifth Interim

Period. O'Melveny also requests that this Court grant such further relief as may be deemed just

and proper.

DATED:  July 31, 2007

ROBERT A. SIEGEL (RS 0922)
TOM A. JERMAN (TJ 1129)
O'MELVENY & MYERS LLP


By ____/s/ Tom A. Jerman_____
   Tom A. Jerman
   Attorney for Delphi Corporation,
   <u>et al.</u>, Debtors and Debtors-in-
      Possession
