```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :
   In re                                         :   Chapter 11
                                                 :
DELPHI CORPORATION, et al.,                      :   Case No.  05 - 44481 (RDD)
                                                 :
                         Debtors.                :   (Jointly Administered)
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

ORDER AUTHORIZING AND APPROVING DELPHI-APPALOOSA
EQUITY PURCHASE AND COMMITMENT AGREEMENT
<u>PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b), AND 507(a)</u>

("DELPHI-APPALOOSA INVESTMENT AND PLAN SUPPORT ORDER")

Upon the motion (the "Motion")[1], dated July 18, 2007, of Delphi Corporation ("Delphi") and certain of its domestic subsidiaries and affiliates, debtors and debtor-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), for an order authorizing and approving the entry into the Equity Purchase and Commitment Agreement (the "Delphi-Appaloosa EPCA") and associated Investment Proposal Letter (the "Proposal Letter") and Commitment Letters (the "Commitment Letters," and together with the Proposal Letter and Delphi-Appaloosa EPCA, the "Investment Agreements")[2] pursuant to sections 105(a), 363(b), 503(b), and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"); and the Court having reviewed the Motion and having heard the statements of counsel and the evidence presented regarding the relief requested in the Motion at a hearing before the Court (the "Hearing"); and <u>the Court having determined that its approval of the Investment Agreements would not constitute approval of a sub rosa or de facto</u>

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2]  The Investment Agreements are attached to this order as <u>Exhibit 1</u>.

<u>reorganization plan; and</u> due and appropriate notice of the Motion having been given in accordance with this Court's Order To Show Cause Why Motion For Order Authorizing And Approving Delphi-Appaloosa Equity Purchase And Commitment Agreement Pursuant To 11 U.S.C. §§ 105(a), 363(b), 503(b), And 507(a) Should Not Be Granted, entered on July ~~[19]~~,<u>19,</u> 2007; and sufficient cause appearing therefor; now, therefore,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

1. <u>Jurisdiction</u>. This Court has core jurisdiction over the Chapter 11 Cases, the Motion, this order, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 503(b), 507(a), and 1125(e) of the Bankruptcy Code.

2. <u>Notice</u>. The notice given by the Debtors of the Motion and the Hearing constitutes proper, timely, adequate, and sufficient notice thereof and complies with the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules, and no other or further notice is necessary.

3. <u>Findings</u>.

(a) On October 8 and October 14, 2005, the Debtors commenced the Chapter 11 Cases for the purpose of restructuring their businesses and related financial obligations pursuant to an overall transformation strategy (the "Transformation Plan") that would incorporate the following structural components:

(i) Modification of the Debtors' labor agreements;

---

[3] This ~~O~~<u>o</u>rder constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

2   DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.

    (ii)  Resolution of all issues and disputes between the Debtors and General Motors Corporation ("GM") and its subsidiaries and affiliates regarding (A) certain legacy obligations, including allocating responsibility for various pension and other post-employment benefit obligations; (B) all alleged claims and causes of action arising from the spin off of Delphi from GM; (C) costs associated with the transformation of the Debtors' businesses (including the establishment of support to be provided by GM in connection with certain of those businesses that the Debtors intend to shut down or otherwise dispose of); (D) the restructuring of ongoing contractual relationships with respect to continuing operations; and (E) the amount and treatment of GM's claims in the Chapter 11 Cases (together, the "Designated Issues");

    (iii)  Development of a strategically focused product portfolio and realignment of production capacity to support it;

    (iv)  Transformation of the Debtors' work force in keeping with a sustainable cost structure and streamlined product portfolio;

    (v)  Resolution of the Debtors' pension issues; and

    (vi)  Restructuring of the Debtors' balance sheet to accommodate the transformed business.

  (b)  The Debtors continue to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.  Pursuant to an Order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

---

3  DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.

(c) Pursuant to its authority under section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York appointed the Creditors' Committee and the Equity Committee in the Chapter 11 Cases.

(d) In the summer of 2006, Appaloosa Management L.P. ("Appaloosa") and Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger"), as significant stakeholders of the Debtors, and other potential investors negotiated and entered into non-disclosure agreements with the Debtors pursuant to which they obtained certain information from and about the Debtors and their businesses and engaged in discussions regarding various potential reorganization structures and related matters, including the potential requirement for a substantial equity investment in Delphi to facilitate the Debtors' restructuring.

(e) As a result of those discussions, on December 18, 2006, Delphi filed a motion (the "Original Approval Motion") seeking approval of the plan framework support agreement among Delphi, Appaloosa, Cerberus Capital Management, L.P. ("Cerberus"), Harbinger, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill"), GM, and UBS Securities LLC ("UBS"), dated as of December 18, 2006 (as amended by the Amendment and Supplement to the Plan Framework Support Agreement, dated as of January 18, 2007, the "Original PSA"), and equity purchase and commitment agreement among Delphi, affiliates of Appaloosa, Harbinger, and Cerberus, Merrill, and UBS, dated as of January 18, 2007 (as amended by (i) a Supplement to the Equity Purchase and Commitment Agreement dated as of January 18, 2007 and (ii) an Amendment to the Equity Purchase and Commitment Agreement, dated February 29, 2007, the "Original EPCA").

(f) After holding a contested evidentiary hearing on the Original Approval Motion on January 11 and 12, 2007, and considering the evidentiary record, the objections

---

4   DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.

to the relief requested, and the arguments of counsel, the Bankruptcy Court overruled all objections not withdrawn or settled and entered its order granting the relief requested by the Debtors in the Original Approval Motion as it was modified at the hearing (the "Original Approval Order").

(g) On July 7, 2007, the Original EPCA was terminated pursuant to section 12(g) and the Original PSA was correspondingly terminated. Due the Delphi's termination of the Original EPCA under section 12 (g), no Alternate Transaction Fee (as defined in the Original EPCA) is due and owing to the Original Plan Investors. After the termination of the Original EPCA, Delphi continued discussions with potential investors.

(h) The parties subsequently agreed on a proposed equity investment by certain affiliates of Appaloosa, Harbinger, Pardus Capital Management L.P. ("Pardus"), Merrill, UBS, and Goldman Sachs & Co.("GS") (GS, together with Merrill, UBS, and certain affiliates of Appaloosa, Harbinger, and Pardus, the "Investors") in Delphi (the "Investment").

(i) The Investment, which would be an integral component of the Plan, will be made pursuant to the Delphi-Appaloosa EPCA, which sets forth the terms and conditions under which the Investors would (i) purchase any unsubscribed shares issued under a rights offering of new common stock of Delphi to be issued pursuant to the Plan and (ii) purchase newly issued shares of common stock and preferred stock of Delphi.

(j) In connection with the Delphi-Appaloosa EPCA, Appaloosa, Harbinger, and Pardus (collectively, the "Commitment Parties," and together with the Investors, the "Plan Investors") will provide the Commitment Letters to the Investors and Delphi,

5   DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.

pursuant to which each Commitment Party will provide funding to the Investors under the terms and subject to the limitations set forth in the Commitment Letters.

(k)     The Investment Agreements are fair and equitable to all parties.

(l)     The Debtors' decision to enter into the Investment Agreements is a sound exercise of their business judgment, is consistent with their fiduciary duties, and is based on good, sufficient, and sound business purposes and justifications.

(m)     The Investment Agreements were negotiated at arms' length and in good faith.

(n)     The Investment Agreements are fair, reasonable, and in the best interests of the Debtors, their estates, shareholders, creditors, and all parties-in-interest.

(o)     The provisions in the Delphi-Appaloosa EPCA for the payment of the indemnities provided in Section 10 of the EPCA (the "Indemnity"), the Transaction Expenses, the Commitment Fees, the Arrangement Fee, and the Alternate Transaction Fee (each as defined in the Delphi-Appaloosa EPCA) are integral parts of the transactions contemplated by the Delphi-Appaloosa EPCA, without any one of which the Plan Investors would not enter into the Investment Agreements.

(p)     The incurrence of the Indemnity, the Transaction Expenses, the Commitment Fees, the Arrangement Fee, the Alternate Transaction Fee, and any damage claims ("Damage Claims") that may arise against the Debtors pursuant to the terms of the Delphi-Appaloosa EPCA shall be deemed to have been incurred in good faith, as such term is used in section 363(m) of the Bankruptcy Code, and the priorities extended to the Plan Investors pursuant to this order (as described below) shall be entitled to all of the protections provided herein or otherwise contemplated hereby.

    (q)  The relief requested in the Motion is in the best interests of the Debtors, their estates, shareholders, creditors, and all parties-in-interest.

    NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

    1.  The Motion is GRANTED in its entirety, and shall not be subject to stay under Bankruptcy Rule 6004(g).

    2.  Any objection to the Motion not withdrawn or otherwise resolved as set forth in this order is hereby overruled.

    3.  Pursuant to sections 105(a), 363(b), 503(b), and 507(a) of the Bankruptcy Code, the Debtors and the applicable Plan Investors are hereby authorized, but not directed, to execute, deliver, and implement the Investment Agreements and all exhibits and attachments thereto, and to take any and all actions necessary and proper to implement the terms of the Investment Agreements, and such agreements and documents shall be binding and enforceable against the Debtors, their estates, and the other parties thereto in accordance with their terms and subject to the conditions contained therein. *The Debtors and the Plan Investors are authorized to amend the Investment Agreements without further order of the Bankruptcy Court to the extent that either such amendments are not material to the Investment Agreements or such amendments have not been objected to by either the Creditors' Committee or the Equity Committee following five (5) business days prior notice (or such shorter period as the Statutory Committees and the Debtors may agree).*

    4.  The Debtors are authorized to pay the Indemnity (if applicable), the Transaction Expenses, the Commitment Fees, the Arrangement Fee, the Alternate Transaction Fee (if applicable), and any Damage Claim (if applicable, and to the extent allowed), each in accordance

---

7  DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.

with its terms and as and when required by the Investment Agreements, except as otherwise provided below, without further order of the Court.  The Debtors are authorized to make all other payments to or for the benefit of the Plan Investors as and when required by the Investment Agreements and any exhibit, schedule or attachment thereto, on the terms set forth therein, without further order of the Court.  Any such payments shall be fully earned when paid, non-refundable, and not subject to avoidance or disgorgement under any theory at law or in equity; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, so long as the Creditors' Committee shall support the Investment Agreements and the transactions contemplated thereby, the Plan Investors shall provide to the Creditors' Committee an itemization of any Transaction Expenses for which payment is being sought, together with appropriate back-up therefor, and 90% of such Transaction Expenses shall be paid in accordance with the terms of the Investment Agreements as and when required thereby without further order of the Court, with the remaining 10% (the "Holdback") to be paid ten days subsequent to the delivery of such itemization and backup to the Creditors' Committee, unless prior to the expiration of such ten-day period, the Creditors' Committee objects to any of the amounts submitted for payment, in which case an amount equal to the amount of Transaction Expenses objected to (up to the maximum amount of the Holdback) shall be retained and not paid to the Investors pending resolution of the dispute with the Creditors' Committee or further order of the Court, and subject to further to the U.S. Trustee's review.

    5.  Each of the Indemnity (if applicable), the Transaction Expenses, the Commitment Fees, the Arrangement Fee, the Alternate Transaction Fee (if applicable), and any Damage Claim against the Debtors (if applicable) provided for or permitted by the Investment Agreements shall constitute allowed claims pursuant to sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be paid as and when provided for in the Investment Agreements without further

8  DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.

application to or order of the Bankruptcy Court except that (i) in the case of any Damage Claim against the Debtors provided for or permitted by the Investment Agreements, such Damage Claim shall be allowed in the amount determined by the Bankruptcy Court after notice and a hearing, (ii) in the case of any Indemnity claim against the Debtors provided for or permitted by the Investment Agreements, such claim shall be resolved in a manner pursuant to the Investment Agreement with any disputes to be resolved by the Bankruptcy Court, and (iii) in the case of the Transaction Expenses incurred by A-D Acquisition Holdings, LLC (an affiliate of Appaloosa) ("ADAH") or its affiliates on or prior to May 17, 2006 (see Delphi-Appaloosa EPCA § 2(j)), as set forth in the transcript of the hearing of the Original Approval Motion (Transcript of January 12, 2007 Hearing at 79:16-84:18). In addition, to the extent permitted under any order authorizing the Debtors to obtain postpetition financing and/or to utilize cash collateral then or thereafter in effect (each, a "Financing Order"), the Transaction Expenses incurred from and after the date of entry of the Initial Approval Order shall be protected by and entitled to the benefits of the carve-out for professionals as provided in any such Financing Order.

6. If the Committee of Delphi Trade Claim Holders has not subsequently withdrawn, qualified or modified in a manner adverse to the Plan Investors (or resolved to do any of the foregoing) its support for the entry of this ~~O~~order, the implementation of the Investment Agreements, or any of the transactions contemplated by the Investment Agreements, the Plan Investors, the Debtors, and the Creditors' Committee shall not oppose any application by the Committee of Delphi Trade Claim Holders for the payment of fees and expenses of their professionals pursuant to section 503(b) of the Bankruptcy Code provided that the Plan Investors, the Creditors' Committee and the Debtors may oppose the reimbursement of fees and expenses in excess of $750,000.

7. Nothing in this order shall limit the rights of any party-in-interest to object or present any evidence or argument in opposition to the confirmation of any plan of reorganization that may be filed in the Chapter 11 Cases, or the approval of any disclosure statement filed in connection therewith, which are reserved in all respects.

8. ~~7.~~ This ~~O~~order is a final and non-interlocutory order and is immediately subject to appeal pursuant to 28 U.S.C. § 158(a).

9. Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure or any other Bankruptcy Rule, this order shall take effect immediately upon its entry.

10. ~~8.~~ This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

11. ~~9.~~ The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: _____, 2007
      New York, New York

                                                 _____
                                                 UNITED STATES BANKRUPTCY JUDGE

---

10    DeltaView comparison of pcdocs://chisr01a/557365/2 and pcdocs://chisr01a/557365/3. Performed on 8/1/2007.