1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DELPHI CORPORATION,

9

10          Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              July 19, 2007

19              10:08 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2   HEARING re Debtors' Motion for an Order Under Section 105 and

3   363 Authorizing Implementation of Key Employee Compensation

4   Program

5

6   HEARING re Motion for an Order Authorizing Official Committee

7   of Unsecured Creditors to Prosecute Debtors' Claims and

8   Defenses Against General Motors Corporation and Certain Former

9   Officers of the Debtors

10

11  HEARING re Ex Parte Motion for Order Authorizing Official

12  Committee of Equity Security Holders to File Under Seal

13  Supplemental Objection to the Motion for an Order Authorizing

14  Official Committee of Unsecured Creditors to Prosecute Debtors'

15  Claims and Defenses Against General Motors Corporation and

16  Certain Former Officers of the Debtors

17

18

19

20

21

22

23

24

25

3

1

2  HEARING re Expedited Motion for Orders Under 11 U.S.C. Section

3  363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014

4  (A) (i) Approving Bidding Procedures, (ii) Granting Certain Bid

5  Protections, (iii) Approving Form and Manner of Sale Notices,

6  and (iv) Setting Sale Hearing Date and (B) Authorizing and

7  Approving (I) Sale of Delphi Automotive Systems LLC's Mexico

8  Brake Plant Assets Free and Clear of Liens, Claims, and

9  Encumbrances, (ii) Assumption and Assignment of Certain

10 Executory Contracts and Unexpired Leases, and (iii) Assumption

11 of Certain Liabilities

12

13 HEARING re Motion for an Order Pursuant to B.R. 9019 Approving

14 Settlement Agreement Between Wachovia Bank and Lextron

15 Corporation

16

17 HEARING re UAW 1113/1114 Settlement Approval Motion

18

19 HEARING re DASE Funding Motion

20

21 HEARING re Motion of Furukawa Electric North American APD and

22 Furukawa Electric Co., Ltd. for a) Abstention Pursuant to 28

23 U.S.C. Section 1334(c); b) Relief from Automatic Stay Pursuant

24 to 11 U.S.C. Section 362(d); and c) an Order Limiting Scope of

25 Third Omnibus Claim Objection Hearing

4

1

2   HEARING re Debtors' Sixteenth Omnibus Objection Pursuant to 11

3   U.S.C. Section 502(b) and Fed. R. of Bank. P. 3007 to Certain

4   a) Duplicate or Amended Claims; and b) Protective Claims

5

6   HEARING re Debtors' Seventeenth Omnibus Objection (Substantive)

7   Pursuant to 11 U.S.C. Section 502(b) and Fed. R. of Bank. P.

8   3007 to Certain a) Insufficiently Documented Claims; b) Claims

9   Not Reflected on Debtors' Books and Records; c) Insurance Claim

10  Not Reflected on Debtors' Books and Records; d) Untimely Claims

11  and Untimely Tax Claims; and e) Claims Subject to

12  Modifications, Tax Claims Subject to Modification and Modified

13  Claims Asserting Reclamation

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Lisa Bar-Leib

5

1

2   A P P E A R A N C E S :

3

4   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

5        Attorneys for Debtor

6        333 West Wacker Drive

7        Chicago, IL 60606

8

9   BY:   JOHN WM. BUTLER, JR.

10        RON E. MEISLER, ESQ.

11

12   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

13        Attorneys for Debtor

14        Four Times Square

15        New York, NY 10036

16

17   BY:   KAYALYN A. MARAFIOTI, ESQ..

18        THOMAS J. MATZ, ESQ.

19

20   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

21        Attorneys for Debtor

22        40 Bank Street Canary

23        Wharf London, E14 5DS ENGLAND

24

25   BY:   N. LYNN HIESTAND, ESQ.

6

1

2   TOGUT, SEGAL & SEGAL, LLP

3        Attorneys for Debtor

4        One Penn Plaza

5        Suite 3335

6        New York, NY 10119

7

8   BY:   NEIL BERGER, ESQ.

9

10  COHEN, WEISS AND SIMON LLP

11       Attorneys for UAW

12       330 West 42nd Street

13       New York, NY 10036

14

15  BY:   BABETTE CECCOTTI, ESQ.

16

17  WEIL, GOTSHAL & MANGES LLP

18       Attorneys for General Motors

19       767 Fifth Avenue

20       New York, NY 10153

21

22  BY:   ROBERT J. LEMONS, ESQ.

23

24

25

7

1

2 FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP

3       Attorneys for the Official Committee of

4       Equity Holders

5       One New York Plaza

6       New York, NY 10004

7

8 BY:   BONNIE STEINGART, ESQ.

9

10 LATHAM & WATKINS

11       Attorneys for the Official Committee of

12       Unsecured Creditors

13       855 Third Avenue

14       New York, New York 10022

15

16 BY:   ROBERT ROSENBERG, ESQ.

17       HENRY P. BAER, JR.

18

19 CRESAPARTNERS

20       Attorneys for Furukawa Electric

21       5910 North Central Expressway

22       Suite 800

23       Dallas, TX 75206

24

25 BY:   MIKE McELWEE, PRINCIPAL

8

1

2    PREVIANAT, GOLDBERG, UELMEN, GRATZ, MILLER & BRUEGGEMAN, S.C.

3         Attorneys for IBEW and IAM

4         1555 North River Center Drive

5         Suite 202

6         Milwaukee, Wisconsin 53212

7

8    BY:   MARIANNE GOLDSTEIN ROBBINS, ESQ.

9         (TELEPHONICALLY)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

9

1                    P R O C E E D I N G S

2            THE COURT:  Please be seated.  Okay.  Delphi

3    Corporation?

4            MR. BUTLER:  Your Honor, good morning.  Jack Butler

5    and Kayalyn Marafioti and Tom Matz with other of our colleagues

6    here from the Skadden firm on behalf of Delphi Corporation for

7    its proposed omnibus hearing.  We filed that agenda, Your

8    Honor, with the Court.  We'd like to take the matters in the

9    order of the agenda.

10           THE COURT:  Okay.  That's fine.

11           MR. BUTLER:  Your Honor, the first matter on the

12   agenda, matter number 1, is our motion for an order under

13   Section 105 and Section 363 authorizing the implementation of a

14   key employee compensation program.  This was originally filed

15   at docket number 213.  And this is the date and time that was

16   in a previously scheduled -- entered scheduling order that

17   was -- the court indicated we should come back for the second

18   half of 2007 performance payment program.  That was a date that

19   was included in the March 29th, 2007 order filed at docket

20   7474.  And Your Honor may recall that in the subsequent

21   discussions with the Court and some of the chambers meetings,

22   we'd indicated that depending on the timing of the plan that

23   those issues would be addressed under a plan of reorganization.

24           Given our current timetable and the expectation to

25   emerge from Chapter 11 at the end of this year which would call

10

1    for a confirmation hearing into the mid to late part of the

2    fourth quarter, we concluded -- the company, that's too far

3    into this period to wait to deal with the performance elements

4    of this period.  So we are meeting with -- the subcommittee of

5    the creditors' committee is responsible for dealing with these

6    issues and we would expect to have, as we have in the past, a

7    consensual program to bring before the Court, and we've

8    concluded that it's appropriate to do that at the September

9    27th omnibus hearing if that's acceptable to Your Honor.

10              THE COURT:  Okay.  That's fine.

11              MR. BUTLER:  Your Honor, matters number 2 and 3 on

12   the agenda deal with the STN litigation.  Matter 2 is the

13   creditors' committee GM claims and defenses motion at docket

14   number 4718.  And matter number 3 is the companion motion from

15   the equity committee involving procedural matters at docket

16   number 5229.  And we've agreed to adjourn the STN matters again

17   and carry them this time to the August 16th omnibus hearing.

18              THE COURT:  Okay.  As previously, you'll let us know,

19   though, if it's -- with appropriate warning if that's really

20   going to be a live issue at that hearing?

21              MR. BUTLER:  Your Honor, you'd indicated to the

22   parties in prior times that if in fact that's going to go

23   forward that we need to come talk with you in chambers -- have

24   a chambers conference before that would actually go forward and

25   we would -- Mr. Rosenberg and I are aware of that.  We would

11

1    notify you and consult with Ms. Steingart and schedule

2    something in advance of that hearing.

3            THE COURT:  Okay.  That's fine.

4            MR. BUTLER:  Your Honor, that takes us to a series of

5    uncontested matters.  The first that I'd like to deal with is

6    the Mexico Brake asset sale motion at docket number 8249.  This

7    is the second part of a two-step process to approve the sale of

8    these assets.  The -- Bosch is the purchaser.  The price is 15

9    million dollars subject to the adjustments in the purchase

10   agreement.  Your Honor, we have followed the scheduling

11   requirements of your prior order.  There were no alternative

12   bids so there was no auction held.  We have given notice of the

13   assumption and assignment to approximately twenty-four

14   contracts.  We've given notice of cure with respect to

15   approximately ten cure amounts.  There have been no objections

16   to cure filed in connection with that matter.

17           THE COURT:  Or to assumption and assignment?

18           MR. BUTLER:  Excuse me?  Or to the assumption and

19   assignment.

20           THE COURT:  Okay.

21           MR. BUTLER:  So we've had no objections to any of

22   these matters and as a result of that, Your Honor, and given

23   the fact this has been reviewed with the statutory committees

24   we rely on the papers that we filed and ask Your Honor to enter

25   the relief that would allow us to complete the sale of these

12

1    assets.

2            THE COURT:  Okay.  Does anyone have anything to say

3    on this motion?  All right.  I'll grant the motion for approval

4    of the sale as well as for approval of the assumption and

5    assignment of the contracts pursuant to the sale agreement.

6    The motion itself sets forth the business reasons for the

7    transaction and I previously approved an auction process.  This

8    is the highest and best bid.  And the lack of any objection by

9    any party in interest confirms that the debtors' business

10   judgment is appropriate here.

11           MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

12   next matter on the agenda, matter number 5, is the Wachovia

13   Bank and Lextron Corporation settlement at docket number 8434.

14   Mr.  Berger represented Delphi in connection with the

15   settlement and is here to present it to the Court.

16           MR. BERGER:  Good morning, Judge.  Neil Berger,

17   Togut, Segal & Segal.  On Your Honor's calendar this morning is

18   the motion by the debtors for an order pursuant to Bankruptcy

19   Rule 9019 for an order approving the settlement agreement among

20   the debtors, Wachovia and Lextron Corporation.  Notice of this

21   motion was given to all the parties on the masters service

22   list, the Internal Revenue Service and the U.S. Attorney, for

23   reasons that I'll describe in a moment.

24           Your Honor, just by way of short background, you may

25   recall that Wachovia and Lextron both filed proofs of claim in

13

1    this case.  Wachovia came before the Court seeking relief from

2    the stay to have its claim liquidated in a Mississippi state

3    court.  Your Honor denied that motion.  We returned to

4    mediation under the supervision of retired bankruptcy judge

5    Francis Conrad, this time with Lextron.  Together Wachovia and

6    Lextron had claims to the face amounts of about seven million

7    dollars although Lextron asserted in its state court proceeding

8    that its claim could exceed that by some far multiple.

9          In the end, Your Honor, as a result of good faith

10   negotiations during the mediation, the parties were able to

11   reach a settlement.  The Wachovia claim is being reduced from

12   approximately 6.6 million dollars to 500,000 dollars.  The

13   Lextron claims are being withdrawn with prejudice in their

14   entirety.

15         The Lextron proof of claim in this case was subject

16   to a lien in favor of the Internal Revenue Service.  Delphi and

17   the other parties to the settlement agreement wanted to

18   confront any collateral issue or objection from the Internal

19   Revenue Service, U.S. Attorney representing them, now rather

20   than after consummation of the settlement agreement.  For that

21   reason, Your Honor, we did serve the Internal Revenue Service

22   and the assistant United States attorney who represented the

23   government in connection with the liens against Lextron.  There

24   is a substantial reduction of unsecured claims.  That was

25   achieved in this Court and in mediation.  Claims were being

14

1   withdrawn.  The appeal from Your Honor's stay order is going to

2   be withdrawn.  The federal and state court proceedings in

3   Mississippi will be terminated and the parties are going to

4   exchange mutual releases as to these issues.  We did serve

5   notice and we have no objections, Judge.

6            THE COURT:  And the releases will cover the

7   individual defendants as well --

8            MR. BERGER:  Yes, Judge.

9            THE COURT:  -- the present and former Delphi

10   employees?

11            MR. BERGER:  Correct, Judge, yes.

12            THE COURT:  Okay.  All right.  Does anyone want to

13   address this settlement?  I'll approve the settlement in light

14   of its being reasonable and unopposed by any party in interest.

15            MR. BERGER:  Thank you, Judge.  I have an order I can

16   hand up at the end of the hearing.

17            THE COURT:  That's fine.

18            MR. BUTLER:  Your Honor, the next matter on the

19   agenda, matter number 6, is the UAW 1113/1114 settlement

20   motion.  This is filed at docket number 8445.  Other than a

21   letter response from a Ms. Kelly Hurley, which is at docket

22   number 8613, this matter is uncontested.  Your Honor, in terms

23   of the evidentiary record, I would like to pass up and ask Your

24   Honor to move into evidence the declaration of John Sheehan,

25   the company's chief restructuring officer, and the declaration

15

1    of Kevin M. Butler, the company's lead bargainer in connection

2    with this matter.

3            THE COURT:  Those were filed the other day?

4            MR. BUTLER:  These were provided to the Court the

5    other day.  We don't file the declarations in this --

6            THE COURT:  All right.

7            MR. BUTLER:  -- matter.  And I would point out, Your

8    Honor, in the actual declaration here, there was a

9    typographical -- in Mr. Butler's declaration, there was a

10   typographical mistake so we changed a word from -- "should be

11   read to" to "should be clarified."  Just a small word but it

12   was an important one.

13           THE COURT:  Okay.  Does anyone have any objection to

14   the introduction of these two declarations?

15           MS. CECCOTTI:  No, Your Honor.  With those

16   clarifications, it's fine with UAW.

17           THE COURT:  Okay.  That's fine.  So they'll be

18   admitted.

19           MR. BUTLER:  Your Honor, I do, at this point having

20   presented those, I do want to introduce to the Court Mr.

21   Sheehan and Mr. Butler who the Court knows from prior hearings.

22   Mr. Sheehan, please stand and, Mr. Berger, the bargainer, and

23   Your Honor, they are available for cross-examination with

24   respect to their declarations.

25           THE COURT:  Okay.  Does anyone want to cross-examine

16

1    either Mr. Sheehan or Mr. Butler on their declarations in

2    support of the settlement?  Okay.  Hearing no one, I'll accept

3    the declarations, which I've read.

4              MR. BUTLER:  Thank you, Your Honor.

5              THE COURT:  I also read the revised proposed order

6    that was submitted.

7              MR. BUTLER:  And, Your Honor, there is, with respect

8    to the revised proposed order, again, one typographical matter

9    that we sorted out with Wilmington Trust.  At paragraph 10, in

10   the seventh line, there was a reference to any interested party

11   and it should have read any "party interest" as it did in the

12   attrition orders.  That's the only change from the blacklined

13   order that we had put in place.

14             THE COURT:  Okay.

15             MR. BUTLER:  Your Honor, I also indicated I would

16   state on the record something that's been of particular

17   interest to Wilmington Trust over these proceedings.  And I'd

18   simply acknowledge that the statements in our motion regarding

19   the ownership of assets involving Delphi Corporation are not in

20   and of themselves binding on all the parties simply because we

21   stated them in our motion.

22             THE COURT:  Okay.

23             MR. BUTLER:  Your Honor, in terms of the proposed

24   form of order, it is a requirement of the settlement that the

25   form of order that's presented to the bankruptcy court be

17

1    acceptable in all respects to each of the UAW and General

2    Motors.  I'd ask their counsel to please indicate on the record

3    the acceptability of the proposed order.

4              MS. CECCOTTI:  Your Honor, Babette Ceccotti, Cohen,

5    Weiss and Simon again for the UAW.  The proposed form of order

6    including Mr. Butler's representation concerning the typos is

7    acceptable to the UAW.

8              THE COURT:  Okay.

9              MR. ROSENBERG:  Good morning, Your Honor.  Robert

10   Lemons from Weil Gotshal & Manges on behalf of General Motors.

11   The proposed order as amended by Mr. Butler's comments this

12   morning is acceptable to General Motors.

13             THE COURT:  Okay.

14             MR. BUTLER:  Your Honor, in terms of presenting the

15   bona fides of the settlement of the Court, this is the

16   settlement of an 1113/1114 process that began with motions

17   filed last year and with a contested hearing conducted by the

18   Court over a series of weeks that while suspended was suspended

19   at a time where at that point in time the company's case-in-

20   chief had been submitted to the Court.  So there is before the

21   Court and as part of this process, there is a record and a lot

22   of evidence in terms of the cross-examination by the UAW and

23   other issues relating to that.  But there is a record that

24   leads to the bona fides underlying some of the business reasons

25   for this.

18

1          This is a settlement and it's intended to be a

2    comprehensive settlement of that motion that was filed.  From

3    the company's perspective, we think we have laid out in the

4    motion the business reasons for it as well as in the

5    declarations.  They have been reviewed in detail with both

6    General Motors and with the UAW.  Unless Your Honor has

7    questions as to those specific issues, I frankly think in a

8    labor settlement that less is more in terms of trying to

9    characterize what's been a very carefully discussed set of

10   papers that all parties agreed to.

11         I would point out, Your Honor, one thing which I

12   think is important and which is an element of the settlement.

13   And that is, that the UAW and General Motors and Delphi

14   Corporation, for reasons that were important to each of them

15   and serving each of their individual interests, carefully

16   negotiated what would become immediately effective and what

17   would become effective upon certain conditions subsequent

18   including the completion of the definitive GM settlement and

19   the consummation -- the confirmation and consummation of the

20   plan of reorganization that would implement supplement and the

21   balance of the UAW settlement.  And there were distinct reasons

22   why each element was either to go effective immediately now or

23   later.

24         I would point out that in terms of the company's

25   transformation objectives, one of the things that the parties

1    all agreed to is that the site plans and the site agreements

2    and the undertakings of all three parties with respect to the

3    twenty-one sites that are in Exhibits A and A-1 to the

4    Memorandum of Understanding become immediately effective.  And

5    that's an important part of the transformation and there were

6    assurances from both Delphi and the General Motors to the UAW

7    with respect to those locations that were an integral part

8    obviously of the settlement.  And those, among other things,

9    become immediately effective as do the amendments to the

10   collective bargaining agreement.  And just to, from my

11   perspective, Your Honor, that causes us -- one other element I

12   should point out with respect to the settlement is that the

13   settlement and the order that's being entered today, Your

14   Honor, does not cause these agreements to be assumed, the

15   rights of the parties are preserved for the balance of the case

16   and these would become effective on the effective -- it would

17   be assumed on the effective date of a plan pursuant to the

18   terms of the settlement.  And I wanted to point that out to

19   Your Honor.

20           Obviously, under 1113 --

21           THE COURT:  I assume, under 1123 and 365?

22           MR. BUTLER:  Yes, Your Honor.

23           THE COURT:  Okay.

24           MR. BUTLER:  And obviously, Your Honor, I wanted to

25   point out to the Court, having agreed that the amendments to

20

1   the collective bargaining agreement would become immediately

2   effective even though that contract is not assumed, means that

3   under 1113/1114 from the debtors' perspective, as to the

4   obligations that debtors have under each of those statutes --

5   provisions of the Bankruptcy Code, we'll continue to have those

6   obligations as it relates to the now modified agreements if

7   Your Honor approves that.

8           So, I think, Your Honor, we have created a set of

9   circumstances that permits this settlement to be presented to

10  Your Honor.  We're very pleased that after having gone through

11  due diligence and reviewed matters with both of our statutory

12  committees that the committees believe this is an appropriate

13  settlement and they have not objected to it.  This is obviously

14  the progress of a lot of work that, in some respects, has

15  become transparent to Your Honor over the series of meetings

16  and hearings we've had over the year -- the last eighteen

17  months or so.  And we're pleased to be in a position to be able

18  to present this to the Court for its consideration.

19          THE COURT:  Okay.  All right.  I had two relatively

20  small questions about the order and I guess, relatedly, the

21  settlement.  I don't believe this is -- I think I understand

22  the meaning of this but I want to just make sure it's clear on

23  the record.  Paragraph 8 of the order describes the treatment

24  of the CHR claim and, you know, sort of the ongoing obligation

25  in respect of that.  And it says that the UAW will have an

21

1   allowed claim of 140 million subject to adjustment.  And then

2   further in the paragraph, after talking about the allowed claim

3   and how it's to be paid pursuant to a plan, there's a sentence

4   that says the amount of thirty million will be directed to the

5   CHR.  Now I just want to -- my assumption is that that thirty

6   million comes out of the recovery on the 140 million dollar

7   claim?

8        MR. BUTLER:  That's correct, Your Honor.

9        THE COURT:  It's not a separate thirty million?

10        MR. BUTLER:  No, Your Honor.  It's part of the total

11   recovery and it represents a division of how that will be

12   allocated.  There's a separate obligation that both -- that all

13   three parties have actually to cause the CHR to enter into a

14   stipulation which we brought to you separately concurring in

15   this settlement.

16        THE COURT:  okay.  So it's an allocation?

17        MR. BUTLER:  Correct, Your Honor.

18        THE COURT:  Okay.  Then my other question was more of

19   a process question.  Paragraph 11 of the order refers to the

20   settlement involving Manufacturing Products Company, MPC, in --

21   this is described in the motion, too.  Was MPC involved in

22   this?  To some -- as far as I can tell, they may have -- they

23   may have asserted some sort of claim or was this really a claim

24   asserted only by the union?

25        MR. BUTLER:  The UAW, Your Honor, filed a claim

22

1    against Delphi -- I'll give you a little bit of background.

2    Filed a claim against Delphi in connection with MPC, which is a

3    third party, second-tier distress supplier to Delphi.

4            THE COURT:  Okay.

5            MR. BUTLER:  In connection with dealing with that

6    distress supplier situation, Delphi, along with certain other

7    suppliers entered into an accommodation agreement is common in

8    this  -- sort of that aspect of this industry and essentially

9    worked with the unions and with MPC and others to actually

10   cause MPC to be able to produce parts that were needed to be

11   produced until they could be wound down and resourced to

12   others.  And then ultimately at the completion of that, and

13   it's my understanding that Delphi was the last supplier

14   standing in terms of that whole process.  And when that was

15   done MPC ceased to doing business and the UAW represented

16   workers lost their jobs.  And the question was whether Delphi

17   was responsible for certain of the payments there both in terms

18   of the budgets that had been agreed to in connection with the

19   accommodation agreement and just general assertion of claims

20   based on the facts and circumstances.  That claim was

21   separately brought in this Court.  It's claim number 13270.  It

22   has been also -- there have been other proceedings outside of

23   this court in connection with that and it was an integral part

24   of the fabric of the settlement.  The UAW took the position

25   that there was going to be a global settlement here.  There was

23

1    going to be a settlement of all claims that the UAW believed

2    that they had against the estate.  And that's the reason that

3    this is in here.  It's about -- it's something -- I think a

4    million dollars or less.  993,000 in cash severance and

5    vacation payments.  And there is a process that's been agreed

6    to between the company and the UAW and how we're going to

7    process each of those individual claims.  I will tell Your

8    Honor, behind that part of it there's actually a schedule, sort

9    of social security number by social security number of every

10   employee and what they're entitled to.  That documentation, I

11   believe, was shared with the creditors' committee when they did

12   their diligence on this particular issue.  So there's a

13   specific --

14             THE COURT:  Okay.

15             MR. BUTLER:  -- backup --

16             THE COURT:  I don't have any problem with the

17   rationale for the resolution.  My only issue was this releases

18   the debtors not only from liability to UAW and the employees

19   represented by them, but also to MPC --

20             MR. BUTLER:  Right.

21             THE COURT:  Was this pre-petition activity?  Was this

22   a pre-petition claim?

23             MR. BUTLER:  Yes.

24             THE COURT:  So -- okay.  So, in essence, MPC would be

25   barred --

24

1          MR. BUTLER:  Right.

2          THE COURT:  -- because they haven't filed a claim

3    themselves.

4          MR. BUTLER:  Yes, Your Honor.

5          THE COURT:  So it's kind of ice in winter as far as

6    getting release from MPC is concerned.  Was MPC given notice of

7    this motion?

8          MR. BUTLER:  I don't know that they were.  I'm not

9    even sure that MPC is operating.

10          THE COURT:  They may not exist.

11          MR. BUTLER:  I know it's not operating.  I don't know

12    what the legal condition of MPC is at the moment, Your Honor.

13          THE COURT:  All right.  But in any event, the only

14    claim filed has been by the UAW?

15          MR. BUTLER:  That's correct, Your Honor.

16          THE COURT:  All right.  Okay.  Okay, does anyone want

17    to say anything on the motion for approval of the settlement?

18          MS. CECCOTTI:  Your Honor, Babette Ceccotti for the

19    UAW.  Again, keeping with the theme less is more, which I agree

20    in this instance, the UAW supports approval of the agreement.

21    Also by prior agreement with counsel, I would like to just

22    confirm, as we did already, the UAW's approval of the form of

23    order including the recitals contained in paragraph 8

24    concerning payment of the allowed claim pursuant to a plan

25    following substantial consummation of the plan.

25

1          THE COURT:  Okay.

2          MR. ROSENBERG:  Your Honor, Robert Rosenberg on

3   behalf of the creditors' committee.  I will not violate the

4   less is more rule here because I agree with it and I do want to

5   congratulate the parties on reaching a settlement under very

6   difficult circumstances that I think is clearly in the best

7   interest of all concerned.

8          I do want to put a couple of issues on the record,

9   however, one of which was nicely clarified by Mr. Butler, which

10  is that there is no assumption of this agreement until the

11  second half is in place which means an agreement with GM and

12  confirmation of a plan.  Obviously, much of the economics in

13  this deal makes sense only if an appropriate agreement is

14  reached with GM for support going forward while other

15  provisions, as Mr. Butler suggested, are appropriately affirmed

16  right now and that's to everyone's advantage.

17         I was a little bit concerned about the language in

18  paragraph 7 of the proposed order because, perhaps only in my

19  own head, it seemed to be perhaps a little bit mutually

20  inconsistent settling while at the same time dismissing without

21  prejudice.  But Mr. Butler clarified that as to what it was

22  intended to mean and I'd like that -- that record to be

23  consistent with what is in people's minds with respect to that

24  order.

25         Similarly, while both halves of this UAW deal are, as

26

1    I suggest, in the best interest of the estate, and that which

2    goes into effect now is essential for moving forward and

3    therefore we're very much on board with this bifurcation, I

4    again emphasize that the whole economic picture only makes

5    sense in the context of an appropriate GM deal.  I have every

6    assumption or every belief and confidence that that deal will

7    be reached.  But life being what it is, it could either fall

8    apart or end up not being quite as favorable as the assumptions

9    that were built in to this deal.  Accordingly, all of that is a

10   longwinded way of saying that while the committee is very

11   supportive of the entry of this order, we are certainly

12   reserving our rights to reconsider whether the agreement should

13   be assumed based upon what does or doesn't come out of a GM

14   settlement.

15          THE COURT:  Okay.  And by agreement, you're referring

16   to the underlying collective bargaining agreement and by

17   assumption, you're referring to assumption under 365 and 1123?

18          MR. ROSENBERG:  That is correct, Your Honor.

19          THE COURT:  Okay.  All right.

20          MS. STEINGART:  Good morning.  Bonnie Steingart from

21   Fried Frank on behalf of the equity committee.  We fully

22   support the motion that has been made here and the agreements

23   that have been reached with the UAW.  We think that the debtor

24   has done an admirable job and we are pleased to support the

25   motion.  Thank you.

27

1          THE COURT:  Okay.  All right.  I will approve the

2    settlement and grant the motion.  It's clear to me that the

3    settlement meets all of the test of T&T Trailer Ferry and

4    subsequent case law that it's fair and reasonable and in the

5    best interest of the debtors and their estate, their creditors

6    and their shareholders.  It's clearly the result of arms length

7    negotiations not only between the debtor and the UAW but also

8    both of those parties and GM represented by experienced counsel

9    in each instance.

10          It also appears to me to be very thoughtfully

11   negotiated and drafted in respect of the issues that the

12   parties have just discussed, i.e., the parts that are effective

13   immediately and the parts that require and hopefully will lead

14   to the next step in this case, which is the implementation of a

15   Chapter 11 plan, and related settlements with, one hopes, GM

16   and the debtor as well as with the other unions.

17          I did review Ms. Hurley's objection but in

18   considering it, it seemed to me that in addition to the points

19   that I just made, I should note that while the Court's approval

20   of a settlement is one in which the Court considers whether the

21   settlement is in the best interest of the debtor and its

22   constituents and in only the most limited sense should the

23   Court consider the effect on the other party to the settlement

24   and only there in connection with issues of whether there was

25   an arms length negotiation or some other public policy that the

28

1    Court should be concerned about was violated.

2            It's very clear to me that the UAW here acted very

3    diligently and forcefully to protect its constituents' rights

4    and that that bargaining was ratified by the union through its

5    own democratic processes.  So, again, I want to reiterate, this

6    is clearly to my mind an arms length and heavily negotiated

7    settlement.  So the order as only very minimally clarified by

8    you on the record today will be entered today.

9            MR. BUTLER:  Your Honor, thank you.

10           THE COURT:  And I note that it is intended to go

11   effective immediately.  And given the overwhelming support for

12   the relief sought and the very clear and beneficial reasons why

13   it should go into effect immediately, I'm going to approve that

14   portion of the motion as well.

15           MR. BUTLER:  Thank you, Your Honor.

16           MS. CECCOTTI:  Thank you, Your Honor.

17           MR. BUTLER:  Your Honor, one -- I had an opportunity

18   with my colleagues to take a look at the MPC timeline and I do

19   want to correct the record that at least a portion of this MPC

20   activity occurred post-petition.  It occurred back in January

21   of 2006 which would have been a couple of months after that.

22           THE COURT:  But the agreement was based on a -- the

23   agreement that this all stems from was a pre-petition

24   agreement?

25           MR. BUTLER:  Well, the accommodation agreement

29

1    itself, Your Honor, was dated January 24th, 2006 which we

2    disclosed in footnote number 6 to the motion, so --

3           THE COURT:  Okay.  All right.

4           MR. BUTLER:  -- so part of this activity occurred

5    pre, part of it occurred post and I just wanted to make that

6    disclosure to Your Honor.

7           THE COURT:  All right.  Well, as you say, MPC seems

8    to be out of existence.  If the company has any known record of

9    who could receive service of this if they haven't received it,

10   I'd like you to settle the order.  Just that portion, that

11   paragraph, of the order on MPC on ten days notice.

12          MR. BUTLER:  All right.  Your Honor, what I would

13   propose to do is to add a provision to the order, if I may,

14   that would simply require that the relief as to MPC would

15   become effective ten days after service --

16          THE COURT:  That's fine.  And again, it's just MPC.

17   I just didn't want to

18          MR. BUTLER:  Right.

19          THE COURT:  -- have someone on who claims to be a

20   trustee or receiver or some entity for MPC come back and say

21   you released us but we didn't agree to it.

22          MR. BUTLER:  Thank you, Your Honor.

23          THE COURT:  Okay.

24          MR. BUTLER:  Your Honor, the next matter that's on

25   the agenda is matter number 7.  This is the DASE funding motion

30

1    matter at docket number 8501.  And this involves determination

2    by DASHI in its business judgment to provide up to 130 million

3    euro, approximately 177 million, to its wholly owned

4    subsidiary, Delphi Automatic Systems Espana S.L. which we tend

5    to refer to as DASE in dealing with this motion.  And as I'll

6    describe in more detail, Your Honor, of the 130 million euro,

7    120 million of that is to fund a separation allowance for

8    employees in a plant that's being closed in Cadiz, Spain and up

9    to ten million euro is to fund payments of the claims of DASE's

10   suppliers and other non-labored creditors.

11          The first thing, Your Honor, I'd like to do here is

12   to present to Your Honor an agreement and stipulation of the

13   receivers of DASE that were appointed by the Spanish court in a

14   Concurso filed in the Spanish court.  And I have an agreement

15   and stipulation relating to the separation plan and to the DASE

16   funding motion that is before Your Honor and an agreement and

17   stipulation by them to the jurisdiction of the United States

18   Bankruptcy Court for the southern district of New York.  This

19   jurisdictional matter, in my understanding, has been reviewed

20   with the Spanish judge in connection with the Concurso and

21   there is a submission to jurisdiction and an agreement to abide

22   by and comply with all orders and judgments Your Honor may

23   enter in connection with this matter with the limitation that

24   they do not submit to the jurisdiction, that is, the DASE

25   receivers do not submit to the jurisdiction if it would be

31

1    contrary to the exclusive jurisdiction of the Concurso court,

2    certain matters being reserved simply to the Spanish court or

3    they're contrary to any order the Concurso court directing the

4    actions of those receivers.

5         But I have that stipulation, Your Honor.  We will

6    actually file this formally --

7         THE COURT:  Okay.

8         MR. BUTLER:  -- but I'd like to present it to Your

9    Honor, if I could.

10        THE COURT:  Okay.

11        MR. BUTLER:  I'd also like to mark it Exhibit A.

12        THE COURT:  All right.  Does anyone have any

13   objection to that?  All right.  So that will be admitted.  Do

14   they in this document confirm the agreement that's referred to

15   in the motion --

16        MR. BUTLER:  Yes, Your Honor.

17        THE COURT:  -- that they'll grant the releases if the

18   four conditions are met?

19        MR. BUTLER:  Yes, they do, Your Honor.

20        THE COURT:  Okay.  Right.  I see that now.  Okay.

21        MR. BUTLER:  Your Honor, the second item I'd like to

22   deal with is to present and mark as Exhibit B to the record the

23   declaration of John D. Sheehan, our chief restructuring

24   officer.  In support of this, Mr. Sheehan, in addition to being

25   the company's chief restructuring officer is the president of

32

1    DASHI and was directly involved obviously both in his capacity

2    as CRO and as president of the subsidiary that desires to make

3    this investment in terms of trying to deal with the funding of

4    this as described in the motion.  And so, Mr. Sheehan, who the

5    Court's familiar with, is here in court.  I'd like to move

6    admission of his declaration.  I do note that it's marked

7    highly confidential in connection with the confidentiality

8    provisions we've used with respect to the Court.  And I'd like

9    to present Mr. Sheehan for cross-examination by any party.

10            THE COURT:  All right.  Does anyone want to cross-

11   examine Mr. Sheehan on his declaration in support of the

12   settlement?  Okay.  Hearing no one I'll accept the

13   declaration --

14            MR. BUTLER:  Thank you, Your Honor.

15            THE COURT:  -- as a proffer of his testimony.

16            MR. BUTLER:  Your Honor, the third matter I'd like to

17   deal with on the record is to make a statement revolving the

18   mechanics of funding of this settlement.  And we had indicated

19   both indirectly in the order and directly in the motion that

20   this settlement is going to be funded by funds that are not in

21   the U.S. domestic subsidiaries but in fact are offshore in

22   Europe and Asia.  And the statement I'd like to make is as

23   follows.  The mechanics that we have agreed on for purposes of

24   funding are that DASHI will receive the funds necessary to make

25   the funding contemplated in this motion through the

33

1    repatriation of dividends from cash currently on hand at non-

2    debtor entities in Asia and Europe.  Because the 120 million

3    euro must be paid no later than August 7th, 2007, it is

4    expected that a portion will be funded up front through

5    dividend repatriations while the balance will be funded through

6    a short term inter company bridge loan to be made to DASHI by

7    non-debtor, non-U.S. affiliate.  This inter company bridge loan

8    will be made in compliance with both the DIP refinancing order

9    and a cash management order and will be repaid upon receipt of

10   repatriated dividends which is expected to occur over the next

11   seventy-five days.  The funding for payment of the claims of

12   DASE's suppliers and other non-labor creditors to the extent

13   required in the settlement agreement will be in an amount up to

14   ten million euros, will be funded through dividend

15   repatriations, although this amount may also be funded

16   initially by way of an inter company bridge loan from an

17   overseas non-debtor affiliate.

18          Your Honor, we spent a lot of time in connection with

19   the mechanics, as you can imagine, with our statutory

20   committees on how to deal with this issue and explaining the

21   company's business judgment in connection with this and I am

22   pleased that both of our committees have chosen to support or

23   at least not object to the settlement that we wish to proceed

24   with.

25          I also, Your Honor, would like to point out to the

34

1    Court that we had filed an errata notice in connection with

2    paragraph 14 of the DASE funding motion which inadvertently

3    stated that the cost to DASE to fund forty-five days to sixty

4    days of salary per year of service with respect to each of his

5    employees would cost between 115 and 155 million euro, which we

6    said was approximately between 156 million and 211 million

7    dollars, U.S. dollars.  These numbers were based on

8    calculations that were made earlier this year and did not

9    include among other things the accrual of wages for the last

10   month under the social plans in Spain.  Until we're able to

11   deal with this in the Concurso, these obligations accrue.  And

12   the errata sheet indicated that the expected range of cost to

13   DASE to fund forty-five to sixty days of severance would be

14   between 123 million and 164 million, which is approximately --

15   excuse me, million euro, which is approximately 167 million to

16   223 million U.S. dollars.  Obviously, the settlement is for

17   less than that but we wanted to make sure that the record was

18   clear as to the appropriate dollars in paragraph 14, euro and

19   dollar calculations, and we filed that errata sheet on Monday,

20   July 16th to correct that matter.

21        Your Honor, I also would indicate to Your Honor that

22   in the draft order there is a provision that has been put in

23   for the immediate effectiveness of this order.  This matter is

24   uncontested.  There are further proceedings that have to occur

25   yet this month in Spain with respect to the Spanish Concurso.

35

1    We believe it is in the best interest of this estate and our

2    stakeholders that the judge in the Spanish Concurso, when she

3    considers this matter, is able to understand that Your Honor's

4    order, if you choose to enter it, is in fact effective.

5           THE COURT:  Okay.  And is it the debtors' reasonable

6    belief that the three conditions to the full release that are

7    set forth in the receiver's agreement and stipulation will be

8    met?

9           MR. BUTLER:  Your Honor, it certainly is our

10   reasonable expectation.  It was one of the things that I know

11   because I participated along with my colleague, Ms. Hiastand,

12   who's present in court today who coordinates our European

13   restructuring practice and is here from London for this

14   hearing.  We spent a great deal of time with Delphi's European

15   management and with the global management team reviewing these

16   matters and I think -- and Mr. Sheehan certainly can reaffirm

17   his judgment in this.  I think it is Delphi's expectation that

18   we will -- the course of action designed in this settlement is

19   in everyone's best interest and that we will meet those

20   thresholds.

21          THE COURT:  Okay.  Does anyone want to address this

22   motion?  All right.  I'll note again that it was unopposed.  My

23   only concern about the motion was answered quite clearly by the

24   submission of the agreement and stipulation by the

25   Administradores Concursales since I was concerned that I would

36

1    not necessarily except through the doctrine of comity have the

2    ability to cause the other parties to this agreement in a sense

3    to live up to their portion of it although I would expect that

4    they would in any event.  But with the submission of that

5    agreement and stipulation, it's now clear to me that I would

6    have the ability to enforce the agreement if in fact one got to

7    that point.  Consequently, I'll approve the settlement and

8    grant the motion, first, because it's unopposed, second,

9    because it sets forth a fair settlement of this dispute and

10   good business reasons for the payments contemplated by the

11   settlement.

12            MR. BUTLER:  Thank you, Your Honor.  Your Honor, at

13   this point in time, with the Court's permission, there are a

14   number of people here who were here for the uncontested

15   matters.  We thought it was very important that Mr. Butler, our

16   lead bargainer, be in court today to present this motion to

17   Your Honor.  We are involved, as Your Honor knows, actively as

18   we speak in collective bargaining that is going on back in

19   Michigan right now and with the Court's permission, we'd like

20   to take just a very brief recess to allow people perhaps five

21   minutes to allow us to allow some of our representatives to

22   leave, including Mr. Sheehan and others who need to attend to

23   those matters, and if that's acceptable to Your Honor, we would

24   take about a five minute recess and then deal with the

25   contested matters.

37

```
1              THE COURT:  That's fine.  We just have the Furukawa

2     matter and then the --

3              MR. BUTLER:  And the claims objections.  It shouldn't

4     be a much longer time.  We're just trying to get --

5              THE COURT:  The omnibus claim objection.  Okay.

6     That's fine.  So I'll come back at, say five of eleven.

7              MR. BUTLER:  Thank you, Your Honor.

8              THE COURT:  Thank you.

9              (Recess from 10:48 a.m. until 10:58 a.m.)

10             THE COURT:  Please be seated.  Okay, back on the

11    record in Delphi.

12             MR. BUTLER:  Thank you, Your Honor.  Your Honor, we

13    have three contested matters on today's agenda.  The first is

14    the Furukawa Electric relief from automatic stay, a contested

15    matter at docket number 7410.  Mr. Berger represents the

16    company in connection with this contested hearing and I will

17    cede the podium to him and to counsel for Furukawa.

18             THE COURT:  Okay.

19             MR. MCELWEE:  Michael McElwee for Furukawa, Your

20    Honor.  May I proceed?

21             THE COURT:  Yes.  I was just going to say, you should

22    go near a microphone.

23             MR. MCELWEE:  Oh, I will.  Given the amount of

24    briefing that's been done in this case, Your Honor, I'd like to

25    restrict myself to really two basic points and they are these.
```

38

1    First question is, did Delphi present its 25 million dollar

2    breach of warranty claim to this court in a procedurally

3    correct way.  And the second question is, even if Delphi did

4    present its 25 million dollar claim in a correct way, do any of

5    the traditional convenience factors justify adjudicating that

6    case in New York as opposed to Michigan.  We think these issues

7    are related for reasons that I'll explain.

8         It is useful, I think, Your Honor, to mention what

9    really are many of the undisputed facts in this case.  It's

10   undisputed that Delphi filed its 25 million dollar claim

11   against Furukawa in the state court in Michigan.  It's

12   undisputed that they filed that law suit approximately eleven

13   months before they sought protection under the Bankruptcy Code

14   in this court.  It's undisputed that that case raises only

15   state law claims.  It's also undisputed that Furukawa

16   Corporation and Delphi Corporation are both Delaware

17   corporations and both have their headquarters literally within

18   approximately thirty miles of each other in the suburbs of

19   Detroit.

20        Virtually, every fact that the case has applied to

21   determine the convenience of litigation warrants litigating

22   this case in Detroit or in the Detroit area and not in the

23   Southern District of New York.  Both parties are in the suburbs

24   of Detroit.  Literally all of the documentary evidence is in

25   Detroit.  All of the physical evidence is in Detroit.  The

39

1    lawyers who represent the parties in the Michigan case are both

2    from Michigan.  There really is none of the convenience factors

3    that would warrant transferring the case here.  Which raises

4    the question how then did Delphi justify filing a duplicate

5    case in this bankruptcy proceeding.

6              THE COURT:  Well, could -- maybe I misunderstand the

7    current state of the litigation here but aren't I right that a

8    claim was filed here by Furukawa for breach of contract, the

9    two Furukawa entities, --

10             MR. MCELWEE:  Furukawa --

11             THE COURT:  There was an objection to the claim.

12             MR. MCELWEE:  Yes.

13             THE COURT:  There've been or there was at least one

14   meet and confer and maybe more meet and confer sessions after

15   Furukawa responded to the objection.  And Delphi has provided

16   its issues list, right?

17             MR. MCELWEE:  That's correct.

18             THE COURT:  Delphi has not asserted a counterclaim

19   yet, has it?

20             MR. MCELWEE:  Well, in its issues list, it very

21   specifically indicated that it wanted the Court to decide its

22   25 million dollar claim here.

23             THE COURT:  All right.  But it has not teed up the

24   counterclaim for me yet, right?  I don't normally get the --

25   the issues list is really for the parties.

40

1          MR. MCELWEE:  Well, Delphi has indicated that it

2     intends to proceed.

3          THE COURT:  But it hasn't done that yet, right?  And

4     that's an important step because when a debtor formally asserts

5     a counterclaim as part of an objection to a claim, that

6     triggers under Bankruptcy Rule 3007 the adversary proceeding

7     rules.

8          MR. MCELWEE:  Correct.

9          THE COURT:  That doesn't seem to have happened yet.

10         MR. MCELWEE:  Well, if there is no claim pending here

11    on this twenty-five million dollar breach of warranty claim by

12    Delphi in this court, then this is really a very different

13    proceeding today.

14         THE COURT:  Well, there's an objection to your claim

15    and there may be a res judicata effect or a collateral estoppel

16    effect as a result of the litigation of that objection.  But I

17    just wanted to make sure I understood the current procedural

18    context that I'm operating under.

19         MR. MCELWEE:  Well, all of that's right.  I mean, I

20    do think some of the details matter for the two.  There was the

21    third omnibus objection where Delphi objected only on a books

22    and records basis to Furukawa's claim.  They raised no other

23    objection in that third omnibus objection to Furukawa's claim.

24    They then asserted in their response and in the description of

25    the issues in connection with the response that they were going

41

1    to raise not a books and records objection but that the claim

2    itself lacked merit on the substance of the claim, which is

3    very different than the books and records objection they

4    originally submitted.  And when they submitted that proposal to

5    the Court, they indicated in the proposal that they want the

6    Court to decide the twenty-five million dollar claim that's

7    pending in Michigan.  Now you are correct, that might not

8    constitute the correct way of placing that claim in front of

9    the Court.  In fact, that's one of the points we argue.  But

10   that nevertheless is clearly what Delphi's intention is in this

11   case.

12          THE COURT:  Okay.

13          MR. MCELWEE:  So our point is this.  That if Delphi

14   wants to initiate duplicate litigation in New York that it

15   already has on file in Detroit, it should file a removal

16   petition under Section 1452.  It should not attempt to append

17   that claim as part of the claims objection procedure under the

18   third omnibus objection.

19          THE COURT:  But isn't it just a flip side of -- they

20   terminated the contract --

21          MR. MCELWEE:  That's correct.

22          THE COURT:  -- because they say your clients breached

23   the contract.  You filed a proof of claim saying they breached

24   the contract by terminating it.  It's the flip side, isn't it?

25          MR. MCELWEE:  That's correct.  And we had to file

42

1    that proof of claim by the bar date or the allowance of our

2    claim in state court would be barred under the claims

3    adjudication rule, procedures under the Code.

4              THE COURT:  But the Second Circuit's been pretty

5    clear that that doesn't matter as far as the bankruptcy court's

6    jurisdiction or whether the claim litigation is core or the

7    like, does it?

8              MR. MCELWEE:  That's true.  The courts have held that

9    that doesn't matter in terms of determining the court's core

10   jurisdiction.  But it does matter in terms of the voluntary

11   abstention standards.  I mean, under the voluntary abstention

12   standards, this case is pending in state court.  Furukawa has

13   the right to a trial by jury and all of the convenience factors

14   warrant maintaining the case in the Eastern District of

15   Michigan

16             THE COURT:  Having filed the claim, doesn't the jury

17   trial right go away?

18             MR. MCELWEE:  -- rather than the Southern District of

19   New York.  Excuse me, Your Honor?

20             THE COURT:  Having filed the claim doesn't the jury

21   trial right as to breach go away?

22             MR. MCELWEE:  If the case comes here it does.  Not if

23   it stays in state court.

24             THE COURT:  Well, but the case is here because the

25   claim is filed.

43

1             MR. MCELWEE:  Excuse me, Your Honor?

2             THE COURT:  But the issue is here because the claim

3    is filed.  The claim of breach.

4             MR. MCELWEE:  There is a claim here and the question

5    then is whether the Court will allow the case to be adjudicated

6    in Michigan --

7             THE COURT:  But all I'm saying on the jury trial

8    point, having filed a proof of claim here, I can try the case,

9    right?  I can try the breach of contract case asserted in the

10   proof of claim?

11            MR. MCELWEE:  If there is an objection made on the

12   basis that the contract is unenforceable or that we breached

13   the warranty, that's correct.

14            THE COURT:  Okay.  Okay.

15            MR. MCELWEE:  So, essentially, our argument, Your

16   Honor, is that if you look at what Delphi offered to justify

17   presenting the case here even if it's not properly filed here,

18   is that it gets to adjudicate its twenty-five million dollar

19   claim under the Court's December 6th, 2006 procedural order

20   which is an order that limits the parties to one hour each and

21   to not calling parties --

22            THE COURT:  But you know it doesn't do that.  You've

23   read the --

24            MR. MCELWEE:  I would presume not.  But if you look

25   at their papers, there's no other justification for their

44

1    motion.

2           THE COURT:  Well, I assume at the meet and confer you

3    discussed, as paragraph K on page 14 of the procedures makes it

4    very clear you're supposed to, modifications to deal with the

5    specifics of the claim.  I assume you discussed that at the

6    meet and confer session.

7           MR. MCELWEE:  Well, that's correct.  I think the two-

8    hour hearing is plenty fine to adjudicate the original books

9    and records objection that they made.  It's not adequate to

10   deal with their twenty-five million dollar counterclaim.

11   That's our point.

12          THE COURT:  Well, is it adequate to deal with the

13   breach claim that your client asserted?

14          MR. MCELWEE:  Clearly not.  And if they were to

15   present an objection to the claim outside the context of the

16   third omnibus objection, the Court would have to deal with that

17   question.  But the third omnibus objection was only a books and

18   records objection.  It was not an objection to the substance of

19   the claim.

20          THE COURT:  You don't think you've had adequate

21   notice of the basis for their objection?

22          MR. MCELWEE:  They have indicated in their

23   description of the issues they intend to present, they intend

24   to present those breach of claims to the Court.  They've also

25   indicated clearly they want them resolved under the two-hour

45

1    limitation under the December 6th order.

2            THE COURT:  Is that right, Mr. Berger?

3            MR. BERGER:  Your Honor, in fact we have discussed

4    paragraph 9(k) of the procedures order and a proposed

5    modification of the discovery, time before Your Honor, number

6    of witnesses, confirmed to Furukawa that if depositions need to

7    happen in Michigan we'll do depositions in Michigan.  Documents

8    have already been passed back and forth.  All we're talking

9    about happening here is what Your Honor has observed, is a

10   trial on the breach issue.  We're fully willing to be

11   accommodative on those other issues.

12           THE COURT:  Have you discussed the mediation that's

13   contemplated by the procedures order?

14           MR. BERGER:  Not yet, Your Honor.  I'm going to be

15   careful about how I describe negotiations other than to say

16   that we were approaching that issue and haven't had response to

17   that.

18           THE COURT:  Am I right that from the papers that

19   that's a first step in the -- if the matter were to be brought

20   to Michigan, mediation is a first step?

21           MR. BERGER:  Absolutely, yes, Your Honor.

22           THE COURT:  Okay.  All right.  I guess I don't

23   understand why this isn't just a delay tactic.

24           MR. BERGER:  Again, I'm having a hard time hearing

25   you.

46

1           THE COURT:  I don't understand why this motion by

2    Furukawa isn't just a delay tactic.  You're -- it seems to me

3    you're on full notice of the claim objection.  The claim

4    objection procedures contemplate -- and if the debtor for some

5    reason doesn't live up to them you can come back to the court

6    and say they're not living up to them -- adjustments to deal

7    with the particular aspects of the litigation that may require

8    more than the streamlined procedures that generally apply.  And

9    the order provides for the very type of mediation that would be

10   the first step in the place where you want to go.  And you're

11   wanting to put that off.  I don't -- why isn't this just a

12   delay tactic?

13          MR. MCELWEE:  Because the case in the state court was

14   pending for eleven months before the bankruptcy filed --

15          THE COURT:  And what's happened in it?  Have they had

16   the mediation?

17          MR. MCELWEE:  We have not had mediation yet in state

18   court --

19          THE COURT:  Have they had any discovery?

20          MR. MCELWEE:  Yes.  We're completed with written

21   discovery, interrogatories --

22          THE COURT:  Have you asserted the counterclaim?

23          MR. MCELWEE:  We couldn't assert the counterclaim

24   because of the automatic stay.

25          THE COURT:  And you've had any -- what fact discovery

1    have you had?

2              MR. MCELWEE:  Excuse me, Your Honor?

3              THE COURT:  What fact discovery have you had?

4              MR. MCELWEE:  We've completed all of the written

5    discovery, interrogatories have been exchanged, document

6    requests have been exchanged, we're tying up the last details

7    about the exchanging of certain engineering reports that are

8    important to the outcome of the case.  And we're ready to start

9    depositions.

10             THE COURT:  Has the court had any involvement in the

11   matter?

12             MR. MCELWEE:  The court has had involvement.  I'm not

13   sure exactly what the court means.  But the court has entered a

14   pre-trial order.  It's established deadlines.  The parties have

15   agreed to extend those deadlines from time to time.  The courts

16   have sort of --

17             THE COURT:  So it's been pending for how long?

18             MR. MCELWEE:  It's been pending since, I think, late

19   October of 2005.

20             THE COURT:  Has there been any activity since the

21   petition date?

22             MR. MCELWEE:  Very little since the petition date.

23   The case has been consistently adjourned since the petition

24   date because Delphi represented at the parties that it was too

25   busy with its reorganization to attend the case.

48

```
 1              THE COURT:  Well, why would it be going forward in

 2     any event given the automatic stay?

 3              MR. MCELWEE:  Well, it is an affirmative claim filed

 4     by Delphi in state court.  There isn't any automatic stay that

 5     prevents the case from going forward.

 6              THE COURT:  It was pre-petition.

 7              MR. MCELWEE:  Excuse me, Your Honor?

 8              THE COURT:  It's pre-petition but there's been no --

 9     there's been very little activity since the petition date, you

10     say?

11              MR. MCELWEE:  It's been adjourned several times since

12     the petition date because Delphi has told us they don't have

13     the time to attend to the case because they're so busy with

14     their reorganization.

15              THE COURT:  Okay.  And there's been no counterclaim

16     asserted?

17              MR. MCELWEE:  No.  The counterclaim was asserted by

18     way of a proof of claim filed in this case.

19              THE COURT:  How could you have completed document

20     discovery if you haven't asserted the counterclaim?

21              MR. MCELWEE:  Because we're producing and discovering

22     documents related to Delphi's affirmative claims against

23     Furukawa.

24              THE COURT:  Okay.

25              MR. MCELWEE:  That's really all I have, Your Honor.
```

49

1          THE COURT:  Okay.

2          MR. MCELWEE:  Thank you.

3          MR. BERGER:  Your Honor, I'll be very brief.  The

4    reason that our omnibus claim objection was a books and records

5    objection is that we didn't have anything on record as an

6    obligation to Furukawa.  Furukawa never filed a counterclaim in

7    the state court action.  It filed its counterclaim by way of

8    the proof of claim.  I think as Your Honor has observed from

9    our papers and from the comments I hear today, there is, from

10   the debtor's opinion, no way to adjudicate the claim objection

11   without consideration of Delphi's defense, which Furukawa must

12   have anticipated to have been our affirmative claim against

13   Furukawa.

14          The action was stayed.  It did not proceed.  The

15   debtors chose instead to challenge the Furukawa claim as part

16   of the claim objection process.  I think what Mr. McElwee is

17   trying to articulate to Your Honor is that a part of what I

18   represented to the Court the last time I was here is that we

19   worked through the Memorial Day weekend to get through

20   confidentiality issues pertaining to certain engineering

21   reports.  We've agreed to confidentiality.  We provided those

22   engineering reports to Furukawa.  That's the document

23   production that's been going on.  We heard nothing since two

24   days after that weekend.

25          THE COURT:  I'm sorry.  So the document production

50

1    was

2            MR. BERGER:  In connection with the claim objection

3    proc --

4            THE COURT:  -- in connection with this claim

5    objection not the

6            MR. BERGER:  Here, Your Honor.

7            THE COURT:  -- Michigan action?

8            MR. BERGER:  Yes.

9            THE COURT:  Is that right?

10           MR. MCELWEE:  No.  We asked for the -- they're called

11   (indiscernible) reports.  We asked for both of those reports in

12   our state court discovery.  Delphi consistently indicated that

13   they refused to supply the report because they were

14   confidential.  We agreed to a protective order in the state

15   court case to facilitate the production of those reports.  They

16   still weren't produced.  So then we engaged in lengthy

17   negotiations with Delphi to get the documents produced.  But I

18   was operating under the assumption given that lengthy history

19   that those documents were produced in the context of the state

20   court case not in the bankruptcy case.

21           THE COURT:  Notwithstanding the discussions that

22   resolved this were done as a result of the meet and confer

23   sessions under the claims procedure order?

24           MR. MCELWEE:  We did have meetings under the claims

25   procedure order, that's correct.

51

1          THE COURT:  Okay.

2          MR. MCELWEE:  The parties then conferred as part of

3    the --

4          MR. BERGER:  Your Honor, I have nothing left to

5    address concerning statements that Mr. McElwee said.  I think

6    our papers are clear.  We think this is a core proceeding.  We

7    don't think that there's any basis for abstention.  There's no

8    basis for relief from the automatic stay.  If we need to, we

9    will confront abstention issues in connection with removal or

10   counterclaims under 157(b)(2)(C).  But I did want to finish my

11   statement by referring to the agreement of confidentiality.  We

12   produced those documents two days after that holiday weekend.

13   We heard nothing in exchange until forty-eight hours ago.  And

14   we got a letter from Mr. McElwee for the first time identifying

15   eight witnesses.  So we've joined in Your Honor's observation

16   that, at least from the debtors' perspective, this is just

17   sidewise movement.  We'd like to move forward, agree on a

18   discovery schedule, take depositions wherever it's convenient

19   for the parties and then come back to Your Honor and have this

20   claim resolved.

21         THE COURT:  Okay.  Well, when you say this claim, let

22   me make sure I understand that.  When you say this claim, you

23   mean the claim that Furukawa has filed?

24         MR. BERGER:  Yes, Your Honor.  But as part of that,

25   Your Honor, we think, would have to consider the affirmative

52

1    claim asserted by Delphi against Furukawa.  I understand the

2    procedural issue whether or not, not that I doubt that, in the

3    context of a claim objection process Your Honor could be asked

4    to enter a judgment for an affirmative monetary recovery

5    against Furukawa.

6         THE COURT:  Well, you can join the objection.  You

7    could --

8         MR. BERGER:  I could.

9         THE COURT:  You could with the demand for relief, you

10   know, affirmative demand for relief.  But that hasn't been done

11   yet, I gather.

12        MR. BERGER:  It has not been yet but I think that it

13   could happen and one of the things we would obviously explore

14   is 157(b)(2)(C) which expressly provides that counterclaims by

15   the debtor against parties that file claims in the estate can

16   be considered to be core.  But we're not there yet, Your Honor.

17   We're in a claim objection process.

18        THE COURT:  Okay.  So right now, the process you're

19   dealing with is one where you, simply, on the merits or through

20   a settlement, want to defeat the proof of claim that's been

21   filed for breach?

22        MR. BERGER:  That's right.

23        THE COURT:  You're reserving your rights as to

24   whether that may at some point translate through res judicata

25   or collateral estoppel or some other preclusive doctrine on the

53

1   merits --

2            MR. BERGER:  Correct, Judge.

3            THE COURT:  -- of the affirmative relief that you

4   think that you may be entitled to.

5            MR. BERGER:  That's correct, Judge.

6            THE COURT:  And you're reserving your rights whether

7   you want to join a request for affirmative relief with the

8   claim objection?

9            MR. BERGER:  That is correct, as well, Your Honor.

10           THE COURT:  Okay.

11           MR. MCELWEE:  Can I make just one additional

12   comment -- well, actually, two, Your Honor?

13           THE COURT:  Yes.  Sure.

14           MR. MCELWEE:  First of all, I hope the Court

15   understands that Delphi's papers are full of representations

16   that it is now pressing the twenty-five million dollar claim as

17   part of this case.

18           THE COURT:  I didn't see that.

19           MR. MCELWEE:  If that's not true, then that's fine.

20           THE COURT:  I just didn't see that.  I really don't

21   see it in their papers.  In any event, it's not.

22           MR. MCELWEE:  The other issue we are now going to

23   have two cases involving the same substantive breach argument,

24   one pending in New York and one pending in Michigan which is

25   going to involve a res judicata.  The question is which court

54

1    is going to get to a judgment first and therefore which court's

2    judgment will be res judicata from the other -- there are lots

3    of comity reasons why that kind of proceeding is not favored

4    under American law.

5             THE COURT:  Well, you don't believe that your claim

6    is a compulsory counterclaim for breach?

7             MR. MCELWEE:  Not under Michigan's purpose --

8             THE COURT:  No?  Okay.  All right.  I have a motion

9    before me by Furukawa Electric North America APD. and Furukawa

10   Electric Company Ltd. for abstention on both a mandatory and

11   alternatively a discretionary basis.  And in addition, for

12   relief from the automatic stay for cause under Section

13   362(d)(1) to permit Furukawa to be sued in a pre-petition state

14   court action and, I gather, to permit Furukawa to raise a

15   counterclaim in that action.  And finally, for an order

16   "limiting the scope of the claim objection hearing" scheduled

17   by the debtors previously in the case.

18            The movant Furukawa appears at oral argument to have

19   abandoned its claim that mandatory abstention is required here

20   under 28 U.S.C. Section 1334(c)(2) but in any event, to be

21   clear, it's not required here because the claim objection is an

22   objection to a filed proof of claim by Furukawa of the two

23   Furukawa entities in this case and as a result, under 28 U.S.C.

24   157(b)(2), that matter, that claim objection is a core matter

25   arising under the Bankruptcy Code and under well-established

55

1    case law that fact precludes mandatory abstention.

2         Furukawa argued that it should be relieved of that

3    result because it filed its proof of claim as a consequence of

4    the bar date and would otherwise be precluded from filing its

5    breach of contract claim.  But that argument is unavailing in

6    light of clear second circuit precedent, including In re S.G.

7    Philips Constructor's, Inc., 45 F.3d 702 (2d Cir. 1995).

8         A clear example of how the filing of the proof of

9    claim changes the abstention analysis can be found in In re

10   Asousa Partnership, A-S-O-U-S-A, 276 BR 55 (Bankruptcy ED

11   Pennsylvania 2002) in which there had been a pre-petition state

12   court law suit based on state court causes of action brought by

13   the debtor.  The bankruptcy court consequently abstained.

14   Thereafter, in response to a bar date order, the defendant in

15   that action filed a proof of claim arising out of the same

16   facts and the Court determined because the objection to the

17   proof of claim was a core matter, and indeed the counterclaim

18   was a core matter, that is, the original claim brought by the

19   debtor and now a counterclaim to the proof of claim brought by

20   the debtor was a core matter under 28 U.S.C. 157(b)(3) that it

21   would not abstain as to the adjudication of the claim objection

22   and the related counterclaim.

23        There is an alternative reason for denying the

24   request for mandatory abstention is that is I did not believe

25   that the request is timely made given that the litigation in

56

1   the state court has been proceeding for well over a year.  But

2   more importantly, that as did the claimant in S.G. Philips,

3   Furukuwa here did not seek either state relief or abstention

4   until well after the implementation of the claims procedures

5   put in place by my prior order in this case that we're dealing

6   with this its claim.

7           Furukawa also requests discretionary abstention, also

8   under 28 U.S.C. Section 1334.  The Court may exercise its

9   discretion under 1334(c) to abstain on a discretionary basis

10  even in a non-core matter.  However, abstention under Section

11  1334(c)(1) should be used rarely or invoked by the Court

12  rarely, particularly where the proceeding is a core matter.

13  Contrary to Furukawa's suggestion in its surreply papers, Judge

14  Lifland didn't invent that notion in his recent opinion in In

15  re Cow Pine Corporation.  Rather, it's been well-settled under

16  the law of the southern district.  See, for example, In re Rob,

17  139 BR 791 (Bank. S.D.N.Y. 1992).

18          Here where the basis for the request for

19  discretionary abstention under 1334(c)(1) is that there's a

20  pending state court law suit to which Furukawa would join its

21  claim here as a counterclaim.  I have considered the factors

22  laid out by the Courts in determining whether one should

23  permissibly abstain, which are also laid out at Judge Lifland's

24  Cow Pine opinion, 2007 WL 39124 at page 3 (Bank. S.D.N.Y.

25  2007).  And I concluded that those factors do not support

57

1    permissive abstention.  Obviously, the debtor has to deal with

2    the claims process here in its case.  The Court has previously

3    on notice to all claimants adopted claims management procedures

4    to permit the efficient yet fair liquidation of claims asserted

5    against the estate, including Furukawa's claim which is in

6    excess of 2.5 million dollars.

7            And so, therefore, as far as the affect on the estate

8    and the efficient administration of the estate, consistent with

9    this matter being a core proceeding, the bankruptcy court is

10   the proper court for the liquidation of Furukawa's claim.

11           Moreover, other considerations do not support

12   abstaining in light of the action pending in Michigan state

13   court.  First, the Michigan action and its flip side, the claim

14   here, do not appear to turn on state law issues that are

15   unsettled as opposed to state law issues that involve the

16   interpretation of contracts and weighing disputed factual

17   assertions as to breach.  The Courts in this circuit have

18   focused on the unsettled nature of state law as a primary

19   reason for it deferring to a pending state court action under

20   1334(c)(1).  See In re Pan Am Corporation, 950 F.2d 839 (2d

21   Cir. 1991).

22           I do not believe that trying the claim objection will

23   unduly burden the Court's docket.  The question of whether the

24   issue of burden is particularly appropriate for me to consider

25   in the first place given that this is a core matter, given that

58

1   Furukawa filed a proof of claim here, the claim objection can

2   be tried without a jury.

3            And finally, it does not appear to me that the state

4   court action has progressed in any meaningful way and that the

5   only real breakthrough in connection with document exchange

6   occurred as a result of the meet and confer procedures

7   contemplated by my claims management order.  I'll also note

8   that that order contemplates, for a claim of this size,

9   mandatory non-binding mediation before trial of the action

10  which is also contemplated under Michigan law.  It's clear to

11  me that that mediation would occur promptly here and that if

12  there's any sense of forum shopping, I believe it's on

13  Furukawa's part.  Not so much forum shopping but in a sense of

14  desiring to delay both mediation and trial which I believe

15  would ensue as a result of abstention.

16           I also note that Furukawa has presented no evidence

17  that the Michigan action would proceed expeditiously and would

18  determine its counterclaim, its claim here and it's clear there

19  would be a counterclaim in the Michigan action.  And it's its

20  burden to do so under Section 1334.

21           So for those reasons, I'll deny the motion to abstain

22  either on a mandatory or permissive basis.

23           As far as the request for limiting the scope of the

24  debtors' claim objection, the request, I think, falls into two

25  categories.  The first, I think, was dealt with at oral

59

1    argument but let me reiterate.  The procedural posture of the

2    claim objection at this point is that it is just that, a claim

3    objection.  It may end up having a preclusive affect if tried

4    and decided against either party in respect of any affirmative

5    recovery that the debtor would seek from Furukawa.  But at this

6    point it is simply a claim objection.  The debtor has the

7    option of joining in that claim objection a request for

8    affirmative relief similar to their request that it made of the

9    Michigan court pre-petition.  But I don't believe it has done

10   that yet.  If and when it does that, under Rule 3007, that

11   triggers the adversary proceeding rules.

12           Frankly, given the nature of this claim objection

13   itself, I believe and I believe the record on the claim

14   objection procedures motion and the order that ensued from that

15   made this clear as well, that order contemplates that the

16   parties will meet and confer in light of the nature of the

17   objection and the nature of the proof that would be required in

18   the claim objection litigation to modify the discovery and

19   trial procedures laid out in the claim procedures motion -- I'm

20   sorry, the claim procedures order as set forth in paragraph

21   9(k).  And that if that exercise were conducted in good faith,

22   the adversary rules would in essence be followed in any event.

23   And if there was no agreement, the parties under the claim

24   objection procedures order could come back to me as well as

25   they can assert rule 3007.

60

1          The fact that there is a pending state court

2    litigation brought by Delphi has been suggested by Furukawa to

3    mean that there will be a potential for dual track litigation,

4    inefficiency and ultimately contradictory court rulings.  I

5    don't believe that is the case.  As I noted, Furukawa has yet

6    to assert its counterclaim in the state court litigation.  It

7    seeks relief from the automatic stay here to do so.  And it's

8    hard for me to see that litigation proceeding without that

9    counterclaim being asserted.

10          Moreover, given the exigencies of this bankruptcy

11   case, which is on a relatively fast track at this point, and

12   the creditors' concern in negotiating the framework for a plan

13   on the prompt liquidation of claims and even the liquidation of

14   claims so that they -- the allowed claims fall within a certain

15   threshold number, it appears likely to me that either the

16   debtor will succeed in withdrawing or staying the Michigan

17   action or withdrawing it without prejudice in light of the

18   process here or that this process will be completed first.

19          In that regard, I do not see a basis on the record

20   before me for lifting the automatic stay to permit Furukawa to

21   raise its counterclaims in litigation in Michigan that the

22   debtor is not pursuing.  And I do that for the same reasons

23   that I denied permissive abstention which overlap with the

24   Sonax factors.

25          So, Mr. Berger, you can submit an order denying the

61

1    motion for those reasons.

2              Okay.  So this leaves the omnibus objection?

3              MR. BUTLER:  Yes, Your Honor.  There are two omnibus

4    objections to deal with in connection with the remaining

5    matters on the agenda.  The first of those is matter number 9,

6    the sixteenth omnibus claims objection filed at docket number

7    8271.  This related to twenty-six claims.  They're either

8    duplicative of other claims or have been amended or superseded

9    by later filed claims or protective in nature.

10             With respect to these claims, Your Honor, the debtors

11   received five timely filed formal responses which covers twenty

12   of the twenty-six claims as a result under the protocol we've

13   been using with respect to these omnibus claims objections.

14   Today we're seeking relief only with respect to the uncontested

15   claims.  Those involve six claims asserting liquidated claims

16   of approximately 1.2 million and we are prepared to adjourn the

17   hearing with respect to the twenty claims covered by the five

18   response and put those on the claims track.  We filed an

19   omnibus reply with respect to -- and have the charts indicating

20   where those are and I've submitted a proposed order to Your

21   Honor.

22             THE COURT:  Okay.  Does anyone have anything to say

23   in respect of the sixteenth omnibus claim objection as

24   modified?  That is, the relief that's being sought today.

25   Okay, in light of the fact that the debtors are just going

62

1      forward with respect to claim objections that are unopposed,

2      I'll grant the sixteenth omnibus as modified.

3              MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

4      last matter on the agenda --

5              THE COURT:  Can I --

6              MR. BUTLER:  I'm sorry.

7              THE COURT:  Let me make sure.  The claimants have

8      gotten a copy of your -- or will get a copy of your revised --

9      or your reply that has the revised chart?

10             MR. BUTLER:  Yes.  That's sent out to everybody who

11     objected, Your Honor.

12             THE COURT:  Very well.  Thank you.

13             MR. BUTLER:  Okay.  Your Honor, matter number 10 on

14     the agenda is the seventeenth omnibus claims objection filed at

15     docket number 8270.  This one deals with 257 claims on a broad

16     number of substantive bases.  Of the 257 claims, Your Honor may

17     recall that t here were forty-one claims on Exhibit E-2 of the

18     seventeenth claims objection listing certain claims filed by

19     taxing authorities or asserting the modification that had the

20     claims classification headings mislabeled.  We have reserved

21     those out and we noticed those and adjourned those to the next

22     omnibus hearing in August.  I described that earlier to Your

23     Honor.  So that of the 257 claims, take the forty-one claims

24     off that were at E-2, that takes us down to 216 claims that are

25     before the Court today.  And of those 216 claims, we received

63

1    responses that covered sixty-six of those claims and raised one

2    or more level of substantive objections or we received

3    objections or in the case of a couple of the claims, we've had

4    discussions with claimants and agreed to move those

5    objections -- to move those matters to a subsequent hearing.

6          So, as a result of that, Your Honor, we're dealing,

7    in terms of going forward today, with 150 claims asserting

8    liquidated claims of approximately 27.6 million.  Of those, we

9    seek to expunge twenty-seven claims with an estimated asserted

10   claims of about 1.6 million.  With respect to the remaining 123

11   claims that assert 26 million, we're seeking various bases of

12   relief including reducing some of those claims to a total of

13   17.6 million in the aggregate.  Therefore, there is a base

14   reduction here of about 8.4 million if Your Honor grants the

15   relief today.

16         THE COURT:  Okay.  Then again, this is -- you've

17   carved out of the relief that you're seeking today any claimant

18   who has responded and also claimants who you've agreed to give

19   an adjournment to?

20         MR. BUTLER:  Correct.

21         THE COURT:  Okay.  All right.

22         MR. BUTLER:  So with respect to those who gave a

23   response, Your Honor, there were forty-two responses filed,

24   those -- covering sixty-four proofs of claim, those will go

25   over to the omnibus claims track and be dealt with on the

64

1    claims track process.  We did agree with respect to Tyco (ph.)

2    Electronics Corporation, for example, with respect to claim

3    10707, to extend their response deadline to August 4th and

4    their portion of this claims objection to the August 16th

5    omnibus hearing, we're continuing to have negotiations with

6    that.  We did the same thing with respect to a claimant by the

7    name of Conestoga -- Conestoga, I think it's called -- Rovers

8    and Associates, Inc. C-O-N-E-S-T-O-G-A---R-O-V-E-R-S &

9    Associates, Inc.  They asserted a liquidated claim of about

10   63,000 and we've agreed to adjourn that to next one as well.

11               THE COURT:  Okay.

12               MR. BUTLER:  So there's two really going forward next

13   month.  There are sixty-four that are going over into the

14   claims track.  The relief we're seeking is to the 150 claims as

15   I described them to Your Honor.

16               THE COURT:  And you've sent a copy of your revised

17   chart or your response to the claimants?

18               MR. BUTLER:  To the objectors.

19               THE COURT:  To the objectors?

20               MR. BUTLER:  Yes, Your Honor.  They got served in

21   connection with the omnibus reply.

22               THE COURT:  All right.  Does anyone have anything to

23   say on this seventeenth omnibus -- not actually -- not the

24   seventeenth omnibus, the adjourned omnibus.  All right.  In

25   light of the nature of the relief the debtors are seeking today

65

1    which is uncontested relief, I'll grant the omnibus objection.

2            MR. BUTLER:  Thank you, Your Honor.  Your Honor, two

3    other quick matters for the Court that I wanted to advise Your

4    Honor.  On one with respect to the Catalyst sales motion which

5    Your Honor approved at the last -- in terms of bidding

6    procedures with respect to the last omnibus hearing and it's

7    scheduled to come up for approval at the next omnibus hearing

8    in August, I did want to advise Your Honor that after the

9    deadline in that order for the service of cure notices and

10   assumptions and assignments, we identified an additional forty

11   contracts that had not been -- the vendors to which had not

12   been given any notice.  We served notices on them on July 18th

13   under the procedures order but for the fact that there was a

14   deadline for service, they're actually receiving twelve days

15   notice which is more than the procedures require, which is ten

16   days to provide a response.  So they will have until July 30th

17   to object to the notices we gave them as it relates to

18   assumption and assignment.  There are some of them that may get

19   cure notices.  They'll have those notices as well and that will

20   be well in advance of the August 16th hearing.  I just wanted

21   to indicate to Your Honor and I'll indicate again at the

22   Catalyst hearing next month, that the actual service date was

23   somewhat later than Your Honor's order had indicated but I

24   don't think there's any prejudice because people still have the

25   same period of time to consider the notices.

66

1          THE COURT:  And there's basically a month before the

2     hearing, too?

3          MR. BUTLER:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MR. BUTLER:  So I just wanted you to be aware of

6     that.

7          THE COURT:  That's fine.

8          MR. BUTLER:  The other thing, Your Honor, just to

9     confirm, we're back here at 2:00 for a chambers conference on

10    1113/1114, on the 365 matters and on the required EPCA chambers

11    conference based on the prior orders of the Court.

12         THE COURT:  Right.  Okay.  So I'll see you then.  At

13    2:00.

14         MR. BUTLER:  Thank you.

15         (Whereupon these proceedings were concluded at 11:47

16    a.m.)

17

18

19

20

21

22

23

24

25

```
                                                                    67
 1

 2

 3

 4                           I N D E X

 5

 6                         E X I B I T S

 7   DEBTORS'  DESCRIPTION                              ID.   EV.

 8

 9             Declaration of John Sheehan & Kevin            15

10             Butler in support of UAW 1113/1114

11             settlement

12   A         Stipulation and agreement of           31    31

13             Concurso Court relating to separation

14             plan and DASE funding motion

15   B         Declaration of John Sheehan,           31    32

16             president of DASHI, Inc. in support

17             of DASE settlement

18

19                         R U L I N G S

20   DESCRIPTION                                     PAGE   LINE

21   Mexico Brake sale motion approved               12     3

22

23   Motion for an order pursuant B.R. 9019          14     13

24   Approving Settlement Between Wachovia

25   Bank and Lextron Corporation granted
```

68

1

2

3                    I N D E X,  CONT'D

4

5                      R U L I N G S

6   UAW 1113/1114 settlement approval          27        2

7   motion granted

8

9   DASE funding motion granted               60        23

10

11  Furukuwa Electric North American APD

12  and Furukawa Electric Co., Ltd.'s

13  motions for abstention pursuant to 28

14  U.S.C. Section 362(d), relief from

15  automatic stay and limiting scope of

16  third omnibus claim objection hearing

17  all denied

18

19  16th omnibus objection granted with       61        25

20  respect to uncontested claims

21

22  17th omnibus objection granted with       64        24

23  respect to uncontested claims

24

25

69

C E R T I F I C A T I O N

I Lisa Bar-Leib, court-approved transcriber, certify that the

foregoing is a correct transcript from the official electronic

sound recording of the proceedings in the above-entitled

matter, except where, as indicated, the Court has modified its

bench ruling.


                                        July 20, 2007

Signature of Transcriber              Date


Lisa Bar-Leib

typed or printed name