FORM B10 (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT  Southern  DISTRICT OF  New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Delphi Automotive Systems, LLC | Case Number: 05-44640 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Benecke-Kaliko AG

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
Continental AG
Daniel Felden
Strawinskylaan 3111, 6th Floor
1077ZX Amsterdam, Netherlands
Telephone number: + 31 20 4420 607

☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
Customer No. 21596

Check here ☐ replaces
if this claim        a previously filed claim, dated:_____
         ☐ amends

**1. Basis for Claim**
- ☒ Goods Sold / Services Performed
- ☐ Customer Claim
- ☐ Taxes
- ☐ Money Loaned
- ☐ Personal Injury
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)          (date)

**2. Date debt was incurred:** 7/8/2005 - 10/20/2005

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 72,359.49 _____ _____ $72,359.49
 (unsecured) (secured) (priority) (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $ 72,359.49

☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 6/15/2006 | Felden, Daniel Felden, Corporate Credit Manager, Continental AG |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Debit note

Page 1/2

| Customer address<br>Delphi Safety & Interiors<br>Attn.: Camiel Murray<br>1401 Crooks Rd., Mail Code 480-009<br>TROY, MI.48084<br>USA | 21596<br>Supplier number<br>315557231 | No.<br>29904441<br>Date<br>20.10.2005<br>Delivery note no.<br><br>Our order no.<br>1172199    ZL2<br>02 44072 |
|---|---|---|
| Your reference | Your order no./Date<br>PO.450140602/23.09.2005 | Our department<br>Mrs. Töpfer | Extension<br>375 |
| Type of shipping<br>see below | Customer | Net weight<br>827 KG | Gross weight<br>0 KG |
| Delivered to<br>Delphi Automotive Systems<br>CMM Plant, Attn.: Elisa Lara<br>1900 Billy Mitchell Blvd.<br>BROWNSVILLE, TX 78521<br>USA | | Place of discharge | |

Obsolescence Claim #04-25
note/post petition invoice

| Item | Material-No., inclusive Width / mm<br>Marking<br>   Customer ref. number<br>   Marking<br>Width / Quantity | Price | per Unit | Value |
|---|---|---|---|---|
| 1 | E6150157A0530A<br>TEPEO-KF 8037 IT ORIONGRAU MITTEL<br>Part no.: M101252<br>P.O.: INL-E6317<br>  M101252 OR.GRA. #80-308-0860<br>Width: 53,0 CM / 886,00 YDS | 4,42 USD | 1 YDS | 3.916,12 USD |
| 2 | E6150156A0530A<br>TEPEO-KF 8037 IT JAVA<br>Part no.: M101253<br>P.O.: INL-E6317<br>  M101253 JAVA #80-308-0860<br>Width: 53,0 CM / 1.417,00 YDS | 4,42 USD | 1 YDS | 6.263,14 USD |
| | Total items | | | 10.179,26 USD |
| | *Total amount* | | | *10.179,26 USD* |

**tax exempt export delivery**

Benecke-Kaliko AG
Beneckeallee 40
D-30419 Hannover
Phone 0049-511-6302-0
Fax 0049-511-6302-206
UST-ID Nr. DE115677636
St-Nr-FA 25/200/00079

Chairman of the Supervisory Board:
Manfred Wennemer

Board of Directors:
Dr. Dirk Leiß, Chairman
Ulrich Kepper

Commercial register:
Hannover HRB 50 169

Dresdner Bank AG, Hannover
Account 1 046 767 (BLZ 250 800 20)
IBAN-Nr. DE70 2508 0020 0104 6767 00
SWIFT-address: DRES DE FF 250

Unternehmensgruppe ContiTech
CONTITECH

Conditions of Business (Export) for Benecke-Kaliko AG (individually hereinafter referred to as "Company"), dated 1 January 2002

1. Invoicing shall be done at the prices and terms and conditions established on the date of dispatch. In the event of unforeseen changes in the price of raw materials, labour, energy and other items, the Company is entitled to adjust accordingly those prices previously quoted on offers, confirmations of orders or elsewhere. The Company is obliged to complete an order only after the Customer has been notified in writing that such order has been accepted

2. Unless not agreed otherwise agreed, all goods supplied by the Company shall be transported at the risk of the Customer, regardless of which party bears the freight charges All goods supplied by the Company shall be transported according to the relevant INCOTERM, established by the Company, as defined by the ICC from time to time, to the extent not in conflict with these Conditions of Business (Export), in which case the provisions hereof shall prevail
In case the Customer is responsible for contracting the carrier or the shipping company the Company is entitled to approve such carrier or shipping company

3. The Company is not bound by any data or information given in its pricelists or other publications; all weights and measurements are subject to reasonable tolerances of up to 10% (ten percent), and any minor and deviations, reasonably acceptable to the Customer, in the colour of any article supplied must be accepted

4. In the event of orders which can be divided into more than one delivery, the Company is entitled to make partial deliveries and with appropriate prior notification to make delivery before the specified delivery date.
Deliveries of quantities 10% greater or less than the ordered quantities of each individual item of the delivery for regular goods and up to 20% greater or less than the ordered quantities of special production goods are permissible

5. Acts of force majeure or similar events such as breakdowns, fires, floods, shortages of labour , power or raw materials, strikes, lockouts, or governmental restrictions affecting the operation of the Company itself or of its suppliers or carriers, shall exonerate the Company from its obligations to supply or to provide the performance of the date quoted. In the case that specific intent or gross negligence are imputable to the Company's legal representatives or senior executives, the Company shall be liable according to the law. In no instance shall the Company be held responsible for any damage or inconvenience resulting, or purporting to result, from ordinary negligence, unless such damage is a foreseeable typical damage resulting from the violation of essential contractual obligations Any legal right of rescission by the Customer shall remain unaffected, provided that the relevant qualifications are fulfilled.
In the event of orders with performance consisting of more than one delivery, the non-fulfillmentfulfilment, deficient or late fulfillmentfulfilment of one delivery shall have no effect on other deliveries comprising the order

6. All goods supplied are to be paid for in Euro plus the applicable value-added tax Payments shall discharge debts only when made to a bank or other institution stipulated by the Company.
If a date or period for payment is fixed, the Customer shall be liable for the delay from the day following this date or period of payment. In all other cases the Customer shall be liable for the delay in payment 30 days following the legal date of payment and receipt of the Company's invoice. If the date of the receipt of the invoice is uncertain, the Customer shall be liable for the delay 30 days after the due date of delivery and receipt of the Company's goods. The Company shall be entitled to charge interest for the period of delay for which the Customer is liable for 8%(eight percent) per annum above the level of the prime lending rate of the "Deutsche Bundesbank" (the "Basiszinssatz") prevailing from time to time. The Company's right to assert a further claim for damages arising from default shall not be limited by this regulation. The Customer shall only be entitled to set off or withhold payments only if agreed to by the Company or if his such counterclaim is undisputed or declared final and binding by a court without possibility for appeal. The Customer is entitled to other counterclaims, especially the defence of non-performance of the contract. Deductions that have not been expressly agreed upon shall not be recognized.
Payment shall be made by cheque or by electronic wire transfer to the Company#s account on the invoice. Cash discounts, bonuses or other allowances shall be granted only when all financial obligations arising out of previous deliveries have been met, and/or the invoiced sum has been paid in cash to the Company or has been credited to the Company's account by the due dates. The presentation of bills of exchange shall thus not entitle the Customer to cash discount In the case of cashless payment, in particular by cheque, the date on which the sum is credited to the Company is decisive in all cases The Customer shall bear the risk arising out of the form of payment.
Bills of exchange and cheques, whose acceptance can be agreed upon, shall be credited only upon due receipt of the full amount. The Company's claim expires only when the full due amount has been irrevocably received for the Company's free disposal. Costs and discount fees shall be debited to the Customer. The Company gives no guarantee for the correct presentation and/or the protesting of bills. Any protests entered against promissory notes issued by the Customer or any delay in the repayment of such disputed bills of exchange issued by third parties shall entitle the Company to return all bills receivable; all the Company's claims shall then fall due immediately.
The Company reserves the right to revoke at any time any credit granted, even in the form of time granted for payment The Company shall also be entitled to demand at any time adequate security to be determined by the Company. If such security is not provided at the request of the Company, the Company's claims shall fall due immediately.
The Company shall not pay interest on advance payments, payments on account or other credit balances

7. The Company shall retain the legal title to and the copyright on estimates, merchandise samples, drafts, drawings and other documents; such documents shall be made accessible to third parties only with the prior consent of the Company.
In the event of the Company having supplied objects in accordance with drawings, models, samples or other sources provided by the Customer, the latter shall guarantee that patent rights held by third parties are not infringed. If the Company is prohibited by third parties, with reference to patent rights, from manufacturing and supplying such objects in particular, the Company is entitled to suspend any further activity to this extent and to demand compensation or to be released from all claims by third parties arising from this.
The Customer shall be held liable under this section 6 where the infringement of third party patent rights becomes apparent within three yearsas from the date when the Customer was aware, or could not reasonably be unaware of the infringement.
The Company reserves the right to charge for prototype parts and for tools required for the production of such parts (moulds, rollers etc ) Tools required for series production are charged pro rata by the Company All tools remain in all events the property of the Company

8. The Company shall retain the title to goods supplied to the Customer until such time as all claims against the Customer, including conditional claims arising out of business with the Company, shall have been settled and the sum paid by bills of exchange and cheques accepted for this purpose shall have been credited to the Company for its free disposal. The foregoing shall apply to future claims, as well.
In the event of processing or conversion, combination or incorporation of the Company's goods with other goods not belonging to the Company, the Company shall acquire joint ownership of the new resultant product proportional to the ratio of the value of the Company's goods used by the Customer at the time of processing or conversion, combination or incorporation The new resultant product shall remain inthe custody of the Customer, who, limited to this respect, shall act on the Company's behalf.
Claims on the part of the Customer arising out of the resale of such product shall be forthwith assigned to the Company to the extent of the selling price thereof, to serve as security for the Company for claims referred to in paragraph 1 of this section 8 If so requested by the Company, the Customer shall advise its debtors of the assignment and provide the Company with all relevant information
During such time as the Company retains title to the goods supplied, the Customer shall be entitled to resell the goods or the products derived therefrom only in the normal course of business and to collect the assigned claims until this right of the Customer is withdrawn by the Company. Financial difficulties being encountered or a considerable deterioration in the financial circumstances of the Customer shall entitle the Company to suspend all deliveries immediately. At the same time the Company's authorization to resell the property and to collect claims assigned to the Company shall expire. If the Customer fails to meet its obligations arising from the property reservation or otherwise defaults, the Company shall be entitled to reclaim its goods under property reservation from the Customer Upon request of the Customer, the Company undertakes to release securities, at its own option, to the extent that the value of existing securities exceeds by a total of 10% (ten percent) that of the claims to be secured.
In the event of the retention of title not being valid in the above-stated form according to the legal provisions of the country to which goods are delivered, then upon request the Customer shall act assist the Company in establishing a comparable security in an amount and in a form acceptable to the Company

9. The Company shall be liable to the Customer for any lack of conformity with the particular contract regarding its goods and services with the following provisions:

As far as the Company is liable for any such lack of conformity, the Customer shall be entitled to have the goods brought into conformity free of charge by repair or replacement as the Company thinks fit. In the event of repairs or replacements proving a failure, the Customer shall be entitled to make an proportioned deduction from the payment due or to rescind the contract; claims for damages instead of performance shall not be affected thereby. For any further claims the Company shall be liable according to the law, in the event that specific intent of gross negligence is imputable to the Company's legal representatives or senior executives. In no instance shall the Company be held responsible for any damage or inconvenience resulting from ordinary negligence, unless such damage is a foreseeable typical damage from the violation of essential contractual obligations Any legal right of recession by the Customer shall remains unaffected, provided that the relevant qualifications are fulfilled.
Statements made by the Company relating to the delivery and performance of the goods, and on the applications of the goods themselves (e g dimensions, weight, hardness, service values) represent only descriptions or designations and not guaranteed properties; they are to be regarded as only approximate and are subject to the variations customary in the industry, unless otherwise agreed. Guaranteed properties exist only if the Company has accepted such properties as such in writing.
Deviations from samples or from previous deliveries, in particular deviations in quality, weight, color, width, length and features, shall be avoided as far as technically feasible. The Company reserves the right to make modifications that the Customer can reasonably be expected to accept, in particular if such modifications assist technical progress and insofar as the object in question is not substantially changed. The Company accepts no liability for defects arising from natural wear and tear or from damage due to inexpert handling by other than the Company's own employees, in particular due to warehousing, or if the defect becomes manifest when the goods are used in a way, other than that especially agreed in writing.
The Company's deliveries and performances shall be subject to the Company's statutory obligations relating to inspections and complaints and to the statutory limitation periods on liability claims. This means that the Company shall be informed in writing of all claims against the Company's deliveries and performances, including incorrect deliveries, within one week after receipt of goods or rendering of services, or in the case of concealed flaws within one week after discovery of said flaw. The Customer shall return rejected goods to the Company carriage paid at the Company's request; if the complaint proves in such case to be justified, the costs of the cheapest means of reshipment may be charged to the Company

10. In accordance with long-standing custom in this branch of industry, no claims on the part of the Customer for damages of any kind whatsoever and under any title whatever, including claims arising out of a lack of conformity with the particular contract or tort, may be brought against the Company, its legal representatives, servants and employees, unless specific intent or gross negligence are imputable to its legal representatives or senior executives, in which case the Company shall be liable according to the law. In no instance may the Company be held responsible for any damages or loss resulting from ordinary negligence on the part of the Company, its legal representatives, servants and employees, unless such damage is a foreseeable typical damage resulting from the infringement of essential contractual obligations. This liability provision shall also apply to advice given orally or in writing by the Company; the Customer shall in particular not be released from its obligation to checkthe suitability of goods for the intended application itself. The foregoing limitation of liability shall not apply to claims under the German Product Liability Act as well as to claims for loss of life, physical injury and personal injury

11. The place of execution hereof and place of jurisdiction in respect of all claims arising out of commercial relations with the Company as well as the origin and effectiveness of such agreements or relations shall be Hannover, Germany. However, the Company reserves the right to have recourse to litigation at the domicile of the Customer . These Conditions of Business shall be governed by and construed in accordance with the laws of the Federal Republic of Germany, to the exclusion of the uniform law on Contracts of Sale (the United Nations' Convention on Contracts for the International Sale of Goods dated April 11, 1980) The invalidity of any provision herein contained shall not affect the validity of the remaining provisions.
The foregoing conditions of business, on which all offers and agreements are based, shall be regarded as having been accepted by the Customer through his placing an order with the Company or by taking delivery of goods supplied. Conditions other than the foregoing are inapplicable even if the Company does not expresslylodge an objection to them No such conditions will be applicable unless the Company gives its prior consent in writing in each instance

Copy                                                                                     Page 1/3

| Customer address | Customer number | No. |
|---|---|---|
| Delphi Safety & Interiors<br>Attn.:Camiel Murray<br>1401 Crooks Rd., Mail Code 480-009<br>TROY, MI.48084<br>USA | 21596<br>Supplier number<br>315557231 | 20273961<br>Date<br>08.07.2005<br>Delivery note no<br>3339586/08.07.05<br>Our order no<br>1167711   ZAEA<br>02 44072 |

| Your reference | Your order no./Date<br>obsolescence claim/30.06.2005 | Our department<br>Mrs.Töpfer | Extension<br>375 |
|---|---|---|---|

| Type of shipping    Customer<br>see below | Net weight<br>5.276 KG | Gross weight<br>5.624 KG |
|---|---|---|

| Delivered to | Place of discharge |
|---|---|
| Delphi Safety & Interiors<br>Attn.:Camiel Murray<br>1401 Crooks Rd., Mail Code 480-009-<br>TROY, MI.48084<br>USA | |

| Item | Material-No.,inclusive Width / mm<br>Marking<br>    Customer ref. number<br>    Marking<br>Width / Quantity | Price | per Unit | V.A.T. No.<br><br><br><br>Value |
|---|---|---|---|---|
| 1 | E6140311A1720A<br>TEPEO-SF 503525 IT UNTERTEIL<br>ANTHRAZIT<br>Part no.:101152<br>P.O. :INL-E6317<br>  M101152<br>2.551,312 YDS | 39211900<br><br><br><br><br><br>11,51 USD | <br><br><br><br><br><br>1 YDS | <br><br><br><br><br><br>29.365,60 USD |
| 2 | E6140309A1720A<br>TEPEO-SF 503525 IT UNTERTEIL<br>JAVA<br>Part no.:101153<br>P.O.:INL-E6317<br>  M101153<br>948,71 YDS | 39211900<br><br><br><br><br><br>12,10 USD | <br><br><br><br><br><br>1 YDS | <br><br><br><br><br><br>11.479,39 USD |
| 3 | E6140310A1720A<br>TEPEO-SF 503525 IT UNTERTEIL<br>FARBE ORIONGRAU MITTEL<br>Part no.:101154<br>P.O.:INL-E6317<br>  M101154<br>577,428 YDS | 39211900<br><br><br><br><br><br>12,10 USD | <br><br><br><br><br><br>1 YDS | <br><br><br><br><br><br>6.986,88 USD |

Benecke-Kaliko AG                Chairman of the Supervisory Board:    Commercial register:              Unternehmensgruppe ContiTech
Beneckeallee 40                  Manfred Wennemer                      Hannover HRB 50 169               CONTITECH
D-30419 Hannover
Phone  0049-511-6302-0           Board of Directors:                   Dresdner Bank AG, Hannover
Fax    0049-511-6302-206         Dr. Dirk Leiß, Chairman               Account 1 046 767 (BLZ 250 800 20)
UST-ID Nr DE115677636            Ulrich Kepper                         IBAN-Nr. DE70 2508 0020 0104 6767 00
St-Nr-FA 25/200/00079                                                  S W I F T-address: DRES DE FF 250

Conditions of Business (Export) for Benecke-Kaliko AG (individually hereinafter referred to as "Company"), dated 1 January 2002

1. Invoicing shall be done at the prices, terms and conditions established by the Company on the date of dispatch (Invoicing). Unforeseeable changes in the cost of raw materials, labour and other items the Company is filled upon accordingly those entered by Company's offers, confirmations of orders, and elsewhere. The Company is obliged to complete an order only after the Customer has been notified, in writing that such order has been accepted.

2. Unless not agreed otherwise agreed, all goods supplied by the Company shall be transported at the risk of the Customer, regardless of which party bears the freight charges. All goods supplied by the Company shall be transported according to the relevant INCOTERM, established by the Company, as defined by the ICC from time to time, to the extent not in conflict with these Conditions of Business (Export), in which case the provisions hereof shall prevail.
In case the Customer is responsible for contracting the carrier or the shipping company the Company is entitled to approve such carrier or shipping company

3. The Company is not bound by any data or information given in its pricelists or other publications; all weights and measurements are subject to reasonable tolerances of up to 10% (ten percent), and any minor and deviations, reasonably acceptable to the Customer, in the colour of any article supplied must be accepted

4. In the event of orders which can be divided into more than one delivery, the Company is entitled to make partial deliveries and with appropriate prior notification to make delivery before the specified delivery date.
Deliveries of quantities 10% greater or less than the ordered quantities of each individual item of the delivery for regular goods and up to 20% greater or less than the ordered quantities of special production goods are permissible

5. Acts of force majeure or similar events such as breakdowns, fires, floods, shortages of labour, power or raw materials, strikes, lockouts, or governmental restrictions affecting the operation of the Company itself or of its suppliers or carriers, shall exonerate the Company from its obligations to supply or to provide the performance by the date quoted. In the case that specific intent or gross negligence are imputable to the Company's legal representatives or senior executives, the Company shall be liable according to the law. In no instance shall the Company be held responsible for any damage or inconvenience resulting, or purporting to result, from ordinary negligence, unless such damage is a foreseeable typical damage resulting from the violation of essential contractual obligations. Any legal right of rescission by the Customer shall remain unaffected, provided that the relevant qualifications are fulfilled.
In the event of orders with performance consisting of more than one delivery, the non-fulfillmentfulfilment, deficient or late fulfillmentfulfilment of one delivery shall have no effect on other deliveries comprising the order

6. All goods supplied are to be paid for in Euro plus the applicable value-added tax. Payments shall discharge debts only when made to a bank or other institution stipulated by the Company.
If a date or period for payment is fixed, the Customer shall be liable for the delay from the day following this date or period of payment. In all other cases the Customer shall be liable for the delay in payment 30 days following the legal date of payment and receipt of the Company's invoice. If the date of the receipt of the invoice is uncertain, the Customer shall be liable for the delay 30 days after the due date of delivery and receipt of the Company's goods. The Company shall be entitled to charge interest for the period of delay for which the Customer is liable for 8%(eight percent) per annum above the level of the prime lending rate of the "Deutsche Bundesbank" (the "Basiszinssatz") prevailing from time to time. The Company's right to assert a further claim for damages arising from default shall not be limited by this regulation. The Customer shall only be entitled to set off or withhold payments only if agreed to by the Company or if his such counterclaim is undisputed or declared final and binding by a court without possibility for appeal. The Customer is entitled to other counterclaims, especially the defence of non-performance of the contract. Deductions that have not been expressly agreed upon shall not be recognized.
Payment shall be made by cheque or by electronic wire transfer to the Company#s account on the invoice. Cash discounts, bonuses or other allowances shall be granted only when all financial obligations arising out of previous deliveries have been met, and/or the invoiced sum has been paid in cash to the Company or has been credited to the Company's account by the due dates. The presentation of bills of exchange shall thus not entitle the Customer to cash discount. In the case of cashless payment, in particular by cheque, the date on which the sum is credited to the Company is decisive in all cases. The Customer shall bear the risk arising out of the form of payment.
Bills of exchange and cheques, whose acceptance can be agreed upon, shall be credited only upon due receipt of the full amount. The Company's claim expires only when the full due amount has been irrevocably received for the Company's free disposal. Costs and discount fees shall be debited to the Customer. The Company gives no guarantee for the correct presentation and for the protesting of bills. Any protests entered against promissory notes issued by the Customer or any delay in the repayment of such disputed bills of exchange issued by third parties shall entitle the Company to return all bills receivable; all the Company's claims shall then fall due immediately.
The Company reserves the right to revoke at any time any credit granted, even in the form of time granted for payment. The Company shall also be entitled to demand at any time adequate security to be determined by the Company. If such security is not provided at the request of the Company, the Company's claims shall fall due immediately.
The Company shall not pay interest on advance payments, payments on account or other credit balances.

7. The Company shall retain the legal title to and the copyright on estimates, merchandise samples, drafts, drawings and other documents; such documents shall be made accessible to third parties only with the prior consent of the Company.
In the event of the Company having supplied objects in accordance with drawings, models, samples or other sources provided by the Customer, the latter shall guarantee that patent rights held by third parties are not infringed. If the Company is prohibited by third parties, with reference to patent rights, from manufacturing and supplying such objects in particular, the Company is entitled to suspend any further activity to this extent and to demand compensation or to be released from all claims by third parties arising from this.
The Customer shall be held liable under this section 6 where the infringement of third party patent rights becomes apparent within three yearsas from the date when the Customer was aware, or could not reasonably be unaware of the infringement.
The Company reserves the right to charge for prototype parts and for tools required for the production of such parts (moulds, rollers etc.) Tools required for series production are charged pro rata by the Company. All tools remain in all events the property of the Company

8. The Company shall retain the title to goods supplied to the Customer until such time as all claims against the Customer, including conditional claims arising out of business with the Company, shall have been settled and the sum paid by bills of exchange and cheques accepted for this purpose shall have been credited to the Company for its free disposal. The foregoing shall apply to future claims, as well.
In the event of processing or conversion, combination or incorporation of the Company's goods with other goods not belonging to the Company, the Company shall acquire joint ownership of the new resultant product proportional to the ratio of the value of the Company's goods used by the Customer at the time of processing or conversion, combination or incorporation. The new resultant product shall remain inthe custody of the Customer, who, limited to this respect, shall act on the Company's behalf.
Claims on the part of the Customer arising out of the resale of such product shall be forthwith assigned to the Company to the extent of the selling price thereof, to serve as security for the Company for claims referred to in paragraph 1 of this section 8. If so requested by the Company, the Customer shall advise its debtors of the assignment and provide the Company with all relevant information
During such time as the Company retains title to the goods supplied, the Customer shall be entitled to resell the goods or the products derived therefrom only in the normal course of business and to collect the assigned claims until this right of the Customer is withdrawn by the Company. Financial difficulties being encountered or a considerable deterioration in the financial circumstances of the Customer shall entitle the Company to suspend all deliveries immediately. At the same time the Company's authorization to resell the property and to collect claims assigned to the Company shall expire. If the Customer fails to meet its obligations arising from the property reservation or otherwise defaults, the Company shall be entitled to reclaim its goods under property reservation from the Customer. Upon request of the Customer, the Company undertakes to release securities, at its own option, to the extent that the value of existing securities exceeds by a total of 10% (ten percent) that of the claims to be secured.
In the event of the retention of title not being valid in the above-stated form according to the legal provisions of the country to which goods are delivered, then upon request the Customer shall act assist the Company in establishing a comparable security in an amount and in a form acceptable to the Company

9. The Company shall be liable to the Customer for any lack of conformity with the particular contract regarding its goods and services with the following provisions:

As far as the Company is liable for any such lack of conformity, the Customer shall be entitled to have the goods brought into conformity free of charge by repair or replacement as the Company thinks fit. In the event of repairs or replacements proving a failure, the Customer shall be entitled to make an proportioned deduction from the payment due or to rescind the contract; claims for damages instead of performance shall not be affected thereby. For any further claims the Company shall be liable according to the law, in the event that specific intent or gross negligence is imputable to the Company's legal representatives or senior executives. In no instance shall the Company be held responsible for any damage or inconvenience resulting from ordinary negligence, unless such damage is a foreseeable typical damage from the violation of essential contractual obligations. Any legal right of recession by the Customer shall remains unaffected, provided that the relevant qualifications are fulfilled.
Statements made by the Company relating to the delivery and performance of the goods, and on the applications of the goods themselves (e.g. dimensions, weight, hardness, service values) represent only descriptions or designations and not guaranteed properties; they are to be regarded as only approximate and are subject to the variations customary in the industry, unless otherwise agreed. Guaranteed properties exist only if the Company has accepted such properties as such in writing.
Deviations from samples or from previous deliveries, in particular deviations in quality, weight, color, width, length and features, shall be avoided as far as technically feasible. The Company reserves the right to make modifications that the Customer can reasonably be expected to accept, in particular if such modifications assist technical progress and insofar as the object in question is not substantially changed. The Company accepts no liability for defects arising from natural wear and tear or from damage due to inexpert handling by other than the Company's own employees, in particular due to warehousing, or if the defect becomes manifest when the goods are used in a way, other than that especially agreed in writing
The Company's deliveries and performances shall be subject to the Customer's statutory obligations relating to inspections and complaints and to the statutory limitation periods on liability claims. This means that the Company shall be informed in writing of all claims against the Company's deliveries and performances, including incorrect deliveries, within one week after receipt of goods or rendering of services, or in the case of concealed flaws within one week after discovery of said flaw. The Customer shall return rejected goods to the Company carriage paid at the Company's request; if the complaint proves in such case to be justified, the costs of the cheapest means of reshipment may be charged to the Company

10. In accordance with long-standing custom in this branch of industry, no claims on the part of the Customer for damages of any kind whatsoever and under any title whatever, including claims arising out of a lack of conformity with the particular contract or tort, may be brought against the Company, its legal representatives, servants and employees, unless specific intent or gross negligence are imputable to its legal representatives or senior executives, in which case the Company shall be liable according to the law. In no instance may the Company be held responsible for any damages or loss resulting from ordinary negligence on the part of the Company, its legal representatives, servants and employees, unless such damage is a foreseeable typical damage from the infringement of essential contractual obligations. This liability provision shall also apply to advice given orally or in writing by the Company; the Customer shall in particular not be released from its obligation to checkthe suitability of goods for the intended application itself. The foregoing limitation of liability shall not apply to claims under the German Product Liability Act as well as to claims for loss of life, physical injury and personal injury

11. The place of execution hereof and place of jurisdiction in respect of all claims arising out of commercial relations with the Company as well as the origin and effectiveness of such agreements or relations shall be Hannover, Germany. However, the Company reserves the right to have recourse to litigation at the domicile of the Customer. These Conditions of Business shall be governed by and construed in accordance with the laws of the Federal Republic of Germany, to the exclusion of the uniform law on Contracts of Sale (the United Nations' Convention on Contracts for the International Sale of Goods dated April 11, 1980). The invalidity of any provision herein contained shall not affect the validity of the remaining provisions.
The foregoing conditions of business, on which all offers and agreements are based, shall be regarded as having been accepted by the Customer through his placing an order with the Company or by taking delivery of goods supplied. Conditions other than the foregoing are inapplicable even if the Company does not expresslylodge an objection to them. No such conditions will be applicable unless the Company gives its prior consent in writing in each instance

| Customer address | Customer number | No. |
|---|---|---|
| Delphi Safety & Interiors<br>Attn.: Camiel Murray<br>1401 Crooks Rd., Mail Code 480-009<br>TROY, MI.48084<br>USA | 21596<br>Supplier number<br>315557231 | 20273961<br>Date<br>08.07.2005<br>Delivery note no.<br>3339586/08.07.05<br>Our order no.<br>1167711   ZAEA<br>02 44072 |

| Item | Material-No., inclusive Width / mm<br>Marking<br>   Customer ref. number<br>   Marking<br>   Width / Quantity | V.A.T. No.<br><br><br><br>Price | per Unit | Value |
|---|---|---|---|---|
| 4 | E6150158A0530A                         39219090<br>TEPEO-KF 8037 IT ANTHRAZIT<br>Part no.: M101251<br>P.O.: INL-E6317<br>   M101251 ANTHR.#80-308-0860<br>   1.148,294 YDS | 4,11 USD | 1 YDS | 4.719,49 USD |
| 5 | E6150157A0530A                         39219090<br>TEPEO-KF 8037 IT ORIONGRAU MITTEL<br>Part no.: M101252<br>P.O.: INL-E6317<br>   M101252 OR.GRA. #80-308-0860<br>   1.082,677 YDS | 4,42 USD | 1 YDS | 4.785,43 USD |
| 6 | E6150156A0530A                         39219090<br>TEPEO-KF 8037 IT JAVA<br>Part no.: M101253<br>P.O.: INL-E6317<br>   M101253 JAVA #80-308-0860<br>   1.095,801 YDS | 4,42 USD | 1 YDS | 4.843,44 USD |

Total items                                                                                62.180,23 USD
*Total amount*                                                                            *62.180,23 USD*

# tax exempt export delivery

Payment conditions:
60 days net
Terms of delivery:
EXW/ Ex works


Country of origin: Federal Republic of Germany.

Benecke-Kaliko AG            Chairman of the Supervisory Board:   Commercial register:                Unternehmensgruppe ContiTech
Beneckeallee 40              Manfred Wennemer                    Hannover HRB 50 169                 CONTITECH
D-30419 Hannover
Phone  0049-511-6302-0       Board of Directors:                 Dresdner Bank AG, Hannover
Fax    0049-511-6302-206     Dr. Dirk Leiß, Chairman             Account 1 046 767 (BLZ 250 800 20)
                             Ulrich Kepper                       IBAN-Nr. DE70 2508 0020 0104 6767 00
                                                                 S W I F T.-address: DRES DE FF 250