UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           In re                                            :        Chapter 11

DELPHI CORPORATION, et al.,              :        Case No. 05-44481 (RDD)

                                  Debtors.    :        (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OBJECTION OF A-1 SPECIALIZED SERVICES & SUPPLIES, INC.
TO ASSUMPTION AND/OR ASSIGNMENT OF CONTRACTS
BY/TO CATALYTIC SOLUTIONS, INC.

Introduction

1.      A-1 Specialized Services & Supplies, Inc. ("A-1") is a supplier of platinum, palladium and rhodium ("platinum group metals" or "PGM") to industrial users.  Throughout its existence, Delphi Corporation ("Delphi") has purchased PGM from A-1 for use in the manufacturing of automotive components.  A-1 also reclaims PGM from industrial manufacturing scrap.  Throughout its existence, Delphi has purchased the reclamation services of A-1 to recover PGM from its automotive manufacturing scrap.  Delphi has continued during the administration of the bankruptcy to purchase PGM and reclamation services from A-1.

2.      Delphi now proposes to sell substantially all of the assets used in its automotive catalyst business, with an auction to be held on August 8, 2007.  A-1 has previously objected to assignment of its contracts Umicore S.A., a Belgian limited liability corporation.  A-1 now objects to assignment of those contracts to Catalytic Solutions, Inc. ("CSI").

3.      As with Umicore, there is an anti-competitive aspect to a proposed assignment of PGM contracts to CSI.  Indeed, the proposed sale of the Delphi automotive catalyst business to CSI raises anti-trust implications.  A major owner of CSI is BASF Venture Capital GMBH, with a

4.89% share of CSI stock.  BASF is also the owner of Engelhard Corporation, already a major supplier of PGM catalyst coatings with a high world market share.  Engelhard is also a major supplier of PGM and reclaimer of PGM from scrap, in direct competition with A-1.  The existing contracts between A-1 and Delphi are confidential and should not be made known to major competitors.  The execution of the existing contracts between A-1 and Delphi, with their inter-relationship between reclamation of PGM and subsequent availability of PGM supply, have involved very frequent discussions of price and market availability, and inventory repurchases by A-1, with consequent adjustments and pricing decisions.  Such a relationship, if it is assigned to CSI, is necessarily revealing of the prices, terms and conditions offered by A-1, and of confidential business practices, is subject to substantial manipulation in world markets, is not appropriate, and would be a probable violation of EU and United States anti-trust laws.  The Court should not create or force an unwilling business relationship and circumstances through assignment of these contracts.

4.      PGM are extremely rare.  The sources of almost all mined PGM in the world are in South Africa and Russia, and are politically and sociologically vulnerable to supply disruptions.  A-1 is a recycler of PGM from scrap and waste.  It has no mines or interests in mining operations.  A-1 entered into PGM supply and PGM reclaim contracts with Delphi, and with its predecessor General Motors, because the two contracts operate in parallel.  That is, the reclamation of PGM from manufacturing scrap of Delphi was the primary source of supply for PGM subsequently supplied to Delphi.  Delphi is one of the largest users of PGM, and perhaps the world's largest individual user, and also one of the largest suppliers of PGM scrap, perhaps the world's largest individual supplier.  There was always an agreement between the companies that the two contracts were mutually dependant, both in terms and conditions and for sourcing of supply.  The

proposal to assign the supply and reclaim contracts to CSI does not recognize this mutual dependency.  CSI, if assigned the supply and reclaim contracts with A-1, might claim a right to continue the supply contract with A-1 while allowing the reclaim contract to end at the end of 2007.  This will present a commercially impossible circumstance to A-1, and violates the totality of agreements that exist between A-1 and Delphi.

5.    A-1 is a financial institution under the Bank Secrecy Act, 31 USC Sections 5311 et. seq., 5312(a)(2)(N), as a Dealer in Precious Metals, Stones or Jewels.  As amended by the USA PATRIOT Act, Section 352, and implemented by the United States Treasury at 31 CFR 103.140, The Bank Secrecy Act requires A-1 to establish and maintain its contractual dealings in precious metals under an Anti-Money Laundering (AML) Program, and it has done so.  A-1 has not approved an assignment of its contracts with Delphi, pursuant to its AML Program, to any other party.  The Court can not assign those contracts involving the purchase and/or sale of covered precious metals in the absence of approval by A-1 under its AML program.

6.    Delphi is also subject to the same legal classification as a dealer in precious metals, and to the same AML obligations under the Bank Secrecy Act.  Although Delphi's ordinary course of business involves the use of PGM in industrial manufacturing, for which it would be exempt from the AML requirements applicable to dealers in precious metals, Delphi in fact engages in many precious metals purchases and sales unrelated to manufacturing, including sales of pure metals that it acquires pursuant to its supply contracts with A-1 in excess of its actual manufacturing requirements.  Delphi is thus a dealer in precious metals under the Bank Secrecy Act, as that term is defined in 31 CFR 103.140, and its assignment of PGM supply contracts is also subject to Bank Secrecy Act requirements.  Upon information and belief, Delphi is now and has been since January 1, 2006, in violation of its statutory and regulatory AML requirements by

failing to have and maintain an AML program. Because PGM that A-1 supplies to Delphi, pursuant to the contracts that are proposed to be assigned, is being directly resold to other and unknown persons without AML accountability, A-1 further objects to an assignment of its contracts through which such unknown and unapproved transactions are taking place and/or are facilitated. If the supply contract between A-1 and Delphi is assigned to CSI, A-1 will further object to such assignment under its AML program, and in any case will not supply PGM under that contract that is not proven to be solely for manufacturing purposes.

7. There are other sources of PGM, including suppliers with mining interests, with more than sufficient resources to fully supply the manufacturing needs and fully service the reclamation needs of the PGM catalyst manufacturing operations that Delphi seeks to sell. Indeed, some of these sources also have existing contracts with Delphi that are proposed to be assigned, and no objections have been filed, so the purchaser of the automotive catalyst business should be able to meet its needs from existing suppliers, and neither Delphi nor its purchaser will be harmed in any way by the refusal of the Court to assign the PGM contracts currently in existence between Delphi and A-1.

Dated: Croydon, Pennsylvania               A-1 Specialized Services & Supplies, Inc.
       August 3rd, 2007

                                           By: _____
                                               Ashok Kumar, Owner
                                               P.O. Box 270
                                               Croydon, PA 19021
                                               (215) 788-9200

Certification of Service

The foregoing response of A-1 Specialized Services & Supplies, Inc. was sent to the following on August 3rd, 2007:

Original in paper form, and as a Microsoft Word file on a 3.5 inch disk
by Federal Express

United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Copies in paper form
by Federal Express and United States mail

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
Room 610
One Bowling Green
New York, NY 10004

Delphi Automotive Systems LLC
5725 Delphi Drive
Troy, MI 48098

Attn: Legal Staff

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Attn: Deputy General Counsel, Transactions and Structuring

Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606

Attn: John K. Lyons and Brian M. Fern

Davis, Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Attn: Donald Bernstein and Brian Resnick

Latham & Watkins LLP
885 Third Avenue
New York, NY 10022

Attn: Robert J. Rosenberg and Mark A. Broude

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

Attn: Bonnie Steingart

Goodwin Proctor LLP
901 New York Avenue N.W.
Washington, DC 20001

Attn: J. Hovey Kemp

Office of the United States Trustee
 for the Southern District of New York
33 Whitehall Street
Suite 2100
New York, NY 10004

Attn: Alicia M. Leonhard

                                                                                    _____
                                                                                      Ashok Kumar
                                                                                      P.O. Box 270
                                                                                      Croydon, PA 19021
                                                                                      (215) 788-9200