OTTERBOURG, STEINDLER, HOUSTON &
ROSEN, P.C.
230 Park Avenue
New York, New York 10169
Stanley L. Lane, Jr. (SL 8400)
Jenette A. Barrow-Bosshart (JB 5117)

Hearing Date and Time:
August 16, 2007 at 10:00 a.m.

Response Date and Time:
August 9, 2007 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x

In re:                                                  :    Chapter 11
                                                        :
       Delphi Corporation, et al.,                      :    Case No. 05-44481 (RDD)
                                                        :    (Jointly Administered)
                                                        :
                              Debtors.                  :
----------------------------------------------------- x

## RESPONSE OF CLAIMANT MILLIKEN & COMPANY TO DEBTORS' NINETEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 SEEKING, IN PART, TO MODIFY THE AMOUNT OF MILLIKEN'S FILED CLAIM

1.     Claimant Milliken & Company ("Milliken") is a pre- and post-petition
supplier to the Debtors of various styles of airbag cushions and covers. Milliken hereby
files its Response in opposition to that portion of the Debtors' Nineteenth Omnibus
Objection ("Debtors' Objection") which seeks to reduce, without reason or justification,
the aggregate amount of Milliken's filed claim from $1,190,981.30 to only $894,607.47 -
- a reduction of $296,373.83. Rather than have its Claim reduced, Milliken asserts that is
claim should be allowed in the increased amount of **$2,073,343.85** as follows:

| Reconciled Reclamation Claim | Unsecured Non-Priority Claim | Aggregate Unsecured Claim |
|---|---|---|
| $202,412.11 | $1,870,931.74 | $2,073,343.85 |

2.     While the Debtors have raised alleged, but unsubstantiated, evidentiary issues with respect to $86,590.38 in open and unpaid Milliken receivables representing a relatively small portion of Milliken's overall claim, and while Milliken has discovered a $34,354.46 arithmetic error in the filed amount of its claim, the balance of the reduction sought by the Debtors (*i.e.*, $196,373.83) remains entirely unexplained, arbitrary, and is unsupported by any basis in law or fact.  In addition, the Debtors and Milliken have been engaged in prolonged discussions concerning Milliken's prior application in reduction of its outstanding pre-petition receivables of $916,717.20 from a wire transfer in the amount of $1,092,146 that Milliken received from the Debtors on the eve of their bankruptcy filing.   Since the filing of their petitions, the Debtors have repeatedly insisted that Milliken reverse its application of these funds to its pre-petition receivables balance, and permit the Debtors to apply these funds to their ongoing post-petition purchases.  As Milliken is willing to do so, rather than *reduce* Milliken's claim as Debtors' Objection requests, the Court should instead approve Milliken's issuance of a $916,717.20 post-petition credit to the Debtors, and *increase* the allowed amount of Milliken's filed pre-petition claim (after adjustment) by the same amount.[1]

3.     Unsure precisely which debtor entity was responsible for the payment of Milliken's open and outstanding pre-petition receivables, on or about July 26, 2006 Milliken filed identical Proofs of Claim, each in the aggregate amount of $1,190,981.30, against debtors Delphi Corporation ("Delphi Corp.") and Delphi Automotive Systems LLC ("DAS").  With Milliken's consent, its filed claim against Delphi Corp. was thereafter conditionally disallowed, subject to reinstatement if it was ultimately

---

[1]  This will have the same effect as if these funds were recovered pursuant to Chapter 5 of the Bankruptcy Code, which in turn would afford Milliken a § 502(h) general unsecured claim in the same amount.

determined that the claim should properly have been asserted against Delphi Corp. rather than DAS. As such, Milliken's Claim No. 11646 against DAS remains of record and is the claim that Debtors' Objection seeks to reduce.

4.    As is clear from Claim No. 11646 itself (a copy of which is annexed hereto as Exhibit 1), Milliken's filed claim is *not* in the amount of $1,393,393.41 as referenced in Debtors' Objection, but rather is in the amount of only **$1,190,981.30**. Of this amount, $202,412.11 represents the previously reconciled amount of Milliken's reclamation claim as confirmed by the Reclamation Claim Reconciliation Agreement entered into between Milliken and Delphi on June 28, 2006, a copy of which is attached to Milliken's Proof of Claim. Debtors' Objection apparently misconstrues Milliken's claim and assumes (incorrectly) that the $202,412.11 reconciled reclamation claim is *in addition to* Milliken's general unsecured claim for $1,190,981.30, rather than comprising *a portion* of that unsecured claim, as clearly reflected in Section 4 of Milliken's filed Proof of Claim itself. The correct amount of the non-reclamation portion of Milliken's unsecured claim (as filed) is therefore $988,569.19 -- not the $1,190,981.30 mistakenly referenced in Exhibit D-3 (page 4 of 9) to the Debtors' Objection.

5.    The Debtors' Objection seeks to reduce the non-priority unsecured portion of Milliken's non-reclamation general unsecured claim (as filed) from $988,569.19 to only $692,195.36. The Debtors, however, have failed to provide Milliken (or the Court) with any explanation for a reduction of this magnitude, and such reduction is entirely unjustified. A complete set of all of the open and outstanding invoices comprising Milliken's claim (against which Milliken applied a $916,717.20 credit to arrive at the net

- 3 -

amount of its filed claim)[2] is attached hereto collectively as Exhibit 2. These invoices were all received and accepted by the Debtors without objection and constitute *prima facia* proof of the amount of Milliken's claim.

6.    Prior to filing the Debtors' Objection, the Debtors did provide Milliken with an "excel" spreadsheet that identified 71 specific invoices included in Milliken's claim with respect to which the Debtors requested additional information.    These 71 invoices consist of 50 invoices that the Debtors claimed to have been *overstated* in the aggregate amount of $24,525.15 (that is, according to the Debtors, these invoices reflected variances in quantity or unit costs in excess of amounts reflected on the Debtors' internal books and records amounting to $24,525.15 in the aggregate), and an additional 21 invoices aggregating $62,065.23 that the Debtors claimed not to have any record of, and for which the Debtors therefore requested that Milliken provide proofs of delivery ("PODs") to substantiate the transactions reflected in these invoices for which Milliken is making claim.    A copy of the spreadsheet provided by the Debtors to Milliken's counsel reflecting the $24,525.15 in "Price Variance Invoices" and the $62,065.23 in alleged "Missing POD Invoices" is attached hereto as Exhibit 3.    The sum total of the 71 invoices questioned by the Debtors (*which are the **only** invoices as to which the Debtors have heretofore raised any issue*) is *only* $86,590.38.    Even if the Debtors' objections to these invoices were proved, they could in no way support the claimed reduction of $296,373.83 sought in Debtors' Objection.

---

[2] Although never raised by the Debtors and not discussed in Debtors' Objection, Milliken has discovered in the course of trying to reconcile Debtors' Objection to its claim that Milliken's filed Proof of Claim contains an arithmetic error in that the sum total of the scheduled invoices referenced in the claim, after application of the $916,717.20 credit referred to above and in paragraphs 12 through 14 below, is only $1,156,626.25, and not $1,190,981.30 as reflected in Milliken's Proof of Claim. Milliken, therefore, would not object to the adjustment of its allowed claim to take into account this **$34,354.65** arithmetic error.

**The Price Variance Invoices**

7.     Prior to filing Debtors' Objection, the Debtors' representatives requested that Milliken furnish Debtors with copies of all of the *Debtors' own purchase orders* applicable to the 50 Price Variance Invoices so that the Debtors could confirm the "correctness" of the invoiced amounts and prices claimed by Milliken (as opposed to amounts presumably claimed to be reflected on the Debtors' internal books and records). As discussed in the accompanying affidavit of Milliken's Market Credit Manager, Thomas D. Casey (annexed hereto as Exhibit 4, the "Casey Affidavit"), Milliken's analysis of the 50 Price Variance Invoices confirms that all 50 were issued by Milliken in connection with sales of airbag cushions and covers made under a "requirements contract" that was negotiated between Milliken and the Debtors in the fall of 2004, and confirmed by the Debtors to Milliken under Delphi's Purchase Order no. 550063123 dated November 15, 2004.   A copy of Delphi's purchase order form confirming the agreed requirements contract ("Delphi P.O. 550063123"), *which form was never signed by Milliken and is inconsistent with Milliken's own form of order confirmation*, is attached to the Casey Affidavit as Exhibit A.

8.     Under the Requirements Contract referenced by Delphi P.O. 550063123, Milliken agreed to sell the Debtors open-ended quantities of certain styles of airbag cushions and covers pursuant to periodic "Pull Signals" (to be transmitted electronically by the Debtors to Milliken) which would designate the specific items required for purchase and the timeframes for their delivery. Delphi P.O. 550063123 further provided, *but Milliken never agreed*, that beginning August 1, 2005, certain price reductions would take effect with respect to the airbag cushions and covers subject thereto.

- 5 -

9.      In analyzing the 50 Price Variance Invoices identified by the Debtors
before the filing of Debtors' Objection, Milliken and its counsel were able to determine
that the $24,525.15 price variance objected to by the Debtors resulted from Milliken's
having invoiced its post-August 1, 2005 sales to the Debtors of items specified in Delphi
P.O. 550063123 at the higher pre-August 1, 2005 *original* purchase order prices, and the
Debtors having allegedly recorded those purchases in their books and records at the lower
*post-August 1, 2005* reduced prices.  A schedule reflecting Milliken's reconciliation of
the $24,525.15 price variance adjustment claimed by the Debtors (based upon the
differences between the prices invoiced by Milliken and the reduced prices claimed by
the Debtors to be in effect after August 1, 2005) is annexed hereto as Exhibit 5 (together
with copies of the invoices listed on the schedule).

10.     The Casey Affidavit makes clear, however, that Milliken *never agreed* to
the price reductions claimed by the Debtors. In fact, Milliken specifically informed the
Debtors of its intention to continue selling its airbag cushions and covers at the original
Requirements Contract prices after August 1, 2005, and not to implement the price
reductions requested by the Debtors as referenced in Delphi P.O. 550063123. The
Debtors understood that the original pricing structure would remain in effect after August
1, 2005 and continued to order goods from Milliken on this basis. This was confirmed in
a letter from Milliken's Kip Johnson to Mr. Tom Niveas at Delphi Safety Systems, dated
July 21, 2005, and subsequent correspondence (copies of which are annexed, collectively,
as Exhibit B to the attached Casey Affidavit).  Moreover, as the Casey Affidavit also
makes clear, the original pre-August 1, 2005 product prices were never reduced and
Milliken has continued to sell these products to the Debtors at the original prices *or*

- 6 -

*higher.* Thus, there is no basis for the $24,525.15 claim reduction sought by the Debtors with respect to the 50 Price Various Invoices.

## The Alleged Missing POD Invoices

11.    Of the $62,065.23 in unpaid Milliken invoices as to which the Debtors claim to be missing PODs, Milliken is herewith producing copies of the PODs for seven (7) of those invoices, aggregating $32,757.32. A schedule listing the seven invoices, together with copies of the invoices themselves and the PODs pertaining thereto, is annexed hereto collectively as Exhibit 6. There is, therefore, no basis for these seven (7) invoices, aggregating $32,757.32 not to be allowed in full as part of Milliken's general unsecured trade claim.

12.    The remaining fourteen (14) Missing POD Invoices (aggregating $29,307.91) are listed on the scheduled annexed hereto as Exhibit 7 (to which copies of the 14 invoices are also attached). Six (6) of these invoices, aggregating $15,678, relate to the Debtors' purchases from Milliken of different styles of laser cut One Piece Woven (OPW) airbag curtains. As discussed in the Casey Affidavit, this particular product was woven and silicone coated by Milliken in LaGrange Georgia and then shipped by Milliken to its plant in Winfield Tennessee to be laser cut into the individual cushions for shipment to the Debtors. Milliken, however, ceased all operations at, and closed down, its Winfield Tennessee facility in March, 2004. As a result of the closure of that facility, the PODs for these several transactions are simply no longer available to Milliken.

13.    Milliken notes, however, that the "excel" spreadsheet that the Debtors provided identifying the various invoices for which PODs were being requested (Exhibit 3 hereto) lists Bill of Lading ("B/L") numbers for *each* of these shipments that do not

- 7 -

appear on the faces of the invoices themselves. The Debtors, therefore, have to have had records of the B/L numbers for these shipments which they no doubt obtained upon receipt. Milliken's invoices for these goods were shipped in 2004, and were received and accepted without objection. The Debtors have not proffered any correspondence reflecting, nor have they even alleged, that they did not receive these goods. Accordingly, there is no justification for not allowing the portion of Milliken's claim represented by the 14 invoices aggregating $29,307.91 for which PODs have not been located or are no longer available to Milliken.

**Milliken's Prior Application Against Its Outstanding Pre-Petition
Receivables of $916,717.20 from the Debtors' "Eve of Filing" Payment**

14.    As is clear from the unpaid invoice schedule attached to Milliken's Proof of Claim, in arriving at the net amount of Milliken's Proof of Claim, Milliken applied against its outstanding pre-petition receivables **$916,717.20** from the $1,092,146 wire transfer that Milliken received from the Debtors just prior to their filing for bankruptcy. This payment was made by the Debtors with the original intention that it be used by Milliken to pay for approximately $175,000 of current orders, and that the balance be held by Milliken as cash security for future orders. The Debtors, however, obtained Milliken's consent to such arrangement without disclosing their intention to file for protection from their creditors under Chapter 11. As a result, when the Debtors filed for bankruptcy Milliken was justifiably concerned that any portion of the wired funds not applied in payment of contemporaneously delivered orders could be subject to avoidance as a preferential pre-petition payment (and therefore represented no real "security" for Milliken's future shipments). Milliken, therefore, refused to treat the $916,717.20

- 8 -

surplus amount as cash collateral for future shipments, demanded that the Debtors furnish

additional cash collateral before agreeing to ship any goods post-petition, and applied the

$916,717.20 against the sum total of its then outstanding pre-petition receivables.

15.     While the Debtors ultimately agreed to, and did, furnish Milliken with

replacement cash collateral to support their post-petition purchases, since the inception of

these cases the Debtors have, from time to time, voiced renewed objection to Milliken's

prior application of the $916,717.20 from the Debtors' "eve of filing" payment to its

outstanding pre-petition receivables.    While the amount of cash collateral for future

purchases demanded by Milliken has gradually been reduced since the Debtors' filing,

the Debtors have repeatedly claimed that the proceeds of their pre-petition payment

should have be made available to the Debtors by Milliken as a credit against the Debtors'

post-petition purchases.

16.     In connection with the objection to Milliken's pre-petition unsecured

claim asserted as part of the Debtors' Objection, Milliken is prepared to accede to the

Debtors' request that the $916,717.20 previously applied by Milliken in reduction of the

Debtor's outstanding pre-petition receivables be re-applied now as a credit against the

Debtors' post-petition purchases.    Milliken would then make these funds immediately

available to the Debtors as a credit against open and future post-petition purchases,

provided that the Debtors consent to increase the amount of Milliken's allowed general

unsecured claim by $916,717.20 to account for the reversal of Milliken's prior

application of these funds in reduction of its outstanding pre-petition receivables.

17.     Accordingly, Milliken requests that the claim reduction sought in the

Debtors' Objection be denied in its entirety (except for an adjustment on account of the

$34,354.65 arithmetic error explained in footnote 2 above), and proposes that the amount of Milliken's filed claim be fully allowed in the increased amount of **$2,073,343.85**, which consists of Milliken's original claim amount of $1,190,981.30 *minus* a $34,354.65 adjustment on account of Milliken's arithmetic error (discussed in footnote 2 above) *plus* $916,717.20 on account of Milliken's re-application of the Debtors' eve-of-filing payment. In consideration of the foregoing, Milliken would issue an immediate $916,717.20 credit to the Debtors for application against their ongoing and future post-petition purchases. Of Milliken's allowed **$2,073,343.85** general unsecured claim, **$202,412.11** would consist of Milliken's fully reconciled reclamation priority claim and **$1,870,931.74** would consist of the *non-priority* portion of Milliken's general unsecured claim.

18.     Milliken therefore requests that its Claim No. 11646 be allowed in the amount of **$2,073,343.85**, together with such other further and/or different relief as to the Court may seem just and proper.

Respectfully submitted,

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.

By: _____
Stanley L. Lane, Jr. (SL 6400)
Jenette A. Barrow-Bosshart (JB 5117)
Members of the Firm
230 Park Avenue
New York, New York 10169
(212) 661-9100

Counsel for Unsecured Trade Creditor
Milliken & Company

- 10 -