# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 05-44481-RDD |
| | ) | Jointly Administered |
| DELPHI CORPORATION, et al., | ) | Chapter 11 |
| | ) | Hon. Robert D. Drain |
| Debtors. | ) | |

## FIFTH INTERIM APPLICATION FOR APPROVAL OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RADER, FISHMAN & GRAUER PLLC, INTELLECTUAL PROPERTY COUNSEL TO DEBTORS, FOR SERVICES RENDERED FROM FEBRUARY 1, 2007 THROUGH MAY 31, 2007

Rader, Fishman & Grauer PLLC (the "Applicant" or "RFG"), intellectual property counsel for Delphi Corporation ("Delphi"), debtors and debtors-in-possession in the above- captioned cases (collectively, the "Debtors", "Delphi" or the "Company"), submits this Fifth interim application (the "Interim Application") seeking interim allowance and payment of compensation and reimbursement of expenses under 11 U.S.C. §§ 330 and 331 for the period from February 1, 2007 through May 31, 2007 (the "Application Period"). RFG submits this Interim Application for (a) allowance of compensation for professional services rendered by RFG to the Debtors, and (b) reimbursement of actual and necessary charges and disbursements incurred by RFG in the rendition of required professional services on behalf of the Debtors. In support of this Interim Application, RFG represents as follows:

## BACKGROUND

### A. The Chapter 11 Filings

1. On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

2. On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in the Debtors' cases.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are sections 330, 331 and 503(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016.

**B. Current Business Operations Of The Debtors**

5. Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion[1], Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6. Delphi has become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and the Company (as defined

---

[1] The aggregated financial data used in this Application generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

below) is today arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. As of the Initial Filing Date, the Debtors employed approximately 180,000 employees worldwide. The Debtors' 50,600 U.S. employees worked in approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy, Michigan headquarters. Approximately 34,750 of the Debtors' U.S. employees were hourly employees as of the Initial Filing Date, and 96% of these were represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employed more than 134,000 people on the Initial Filing Date, supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based,

captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

**C. Events Leading To Chapter 11 Filing**

10. In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005, with net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same time period a year earlier[2].

---

[2] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

11. The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements. Because discussions with its unions and GM were not progressing sufficiently, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

14. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to

advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## STATUS

15. On March 9, 2006, the Court entered an order authorizing the employment and retention of RFG as intellectual property counsel to the Debtors (Docket No. 2770) (the "Rader, Fishman Retention Order").

16. By this Application, RFG is seeking, <u>inter alia</u>, compensation and reimbursement of expenses pursuant to the Rader, Fishman Retention Order and pursuant to 11 U.S.C. §§ 330, 331 and 503(b) for the period of February 1, 2007 through May 31, 2007.

17. RFG charges professional fees on the basis of hourly rates, which are set in accordance with each professional's seniority and experience and are adjusted from time to time. RFG also charges the Debtors for its actual-out-of-pocket expenses incurred such as, payments made to the U.S. Patent and Trademark Office, payments made to associates for work performed at the request of RFG for the benefit of Delphi, travel, overnight mail, computer research, and other disbursements. RFG's fee structure and expense reimbursement policies were disclosed in RFG's Retention application, to which no party objected and which this court approved.

18. The names of all RFG attorneys, legal assistants, patent agents, illustrators and administrative assistants who have worked on Delphi matter's and their respective hourly rates are set forth on <u>Exhibit B</u> hereto.

19. To the best of RFG's knowledge, information and belief, the Debtors have paid postpetition operating expenses in the ordinary course, and there are currently no unpaid, undisputed ordinary course, postpetition operating expenses in these cases.

20. The Debtors have sufficient funds on hand to pay the compensation and reimbursement of expenses requested herein.

21. To the best of RFG's knowledge, information and belief, the Debtors have filed with the United States Trustee all monthly operating reports presently due, and have paid all quarterly fees to the United States Trustee that are presently due.

## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

22. On November 4, 2005, this Court entered an Interim Compensation Order Pursuant to 11 U.S.C. § 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 0869) (the "Interim Compensation Order"). Pursuant to paragraph 2(J) of the Interim Compensation Order, RFG is submitting this Application to the Debtors, counsel for the Debtors, counsel for the official committee of unsecured creditors, counsel for the agent under the Debtors' prepetition credit facility, counsel for the agent under the Debtors' postpetition credit facility and postpetition lenders, and the United States Trustee. In accordance with The Third Supplemental Interim Compensation Order this application is also being submitted to the Joint Fee Review Committee (the "Fee Committee"). Notice of the Application has been served pursuant to the Case Management Order dated October 14, 2005 (Docket No. 0242).

23. Pursuant to the Interim Compensation Order, RFG has submitted monthly statements to the parties described in the Interim Compensation Order. The parties have fifteen (15) days to review any such statements. As of the date of the filing of this Application, no objections have been filed concerning RFG's monthly statements. Accordingly, RFG has been paid 80% of its total requested fees and 100% of its expenses for the period February 1, 2007 thru April 30, 2007. As of

the date of this application, RFG has not been paid any fees or services rendered or expenses paid on behalf of Delphi for the period May 1, 2007 through May 31, 2007. In accordance with the Interim Compensation Order, RFG has been paid 80% of fees and 100% of expenses within 45 days after submission of its monthly statement for fees and expenses, and RFG submitted its Monthly Fee Statement for May to Delphi on June 29th. Thus, RFG expects that payment for 80% of May fees and 100% of May expenses will be received on or about August 15th. A chart summarizing payments and the monthly statements is attached hereto as <u>Exhibit A</u>.

## SERVICES PERFORMED

24. The Debtors have requested that RFG render services in connection with intellectual property matters which will include the following:

> (a) Patent Preparation: Review of invention disclosures, preparation of patentability opinions, and preparation and filing of patent applications with U.S. Patent and Trademark Office focusing on the following areas of technical expertise: sophisticated automotive electronics systems;
>
> (b) Patent Prosecution: Review of correspondence from U.S. Patent and Trademark Office and preparation of amendments to patent applications in order to secure patents focusing on, among others, patents relating to sophisticated automotive electronics systems;
>
> (c) Foreign Patent Prosecution: Review correspondence from foreign patent offices and consult with the Debtors concerning appropriate responses and interface with foreign law firms concerning the filing of responses in foreign jurisdictions focusing on, among others, sophisticated automotive electronics systems;
>
> (d) Intellectual Property Litigation: Representing Delphi in litigation in United States District Courts and U.S. Courts of Appeal and overseeing litigation and administrative proceedings in foreign countries involving patents and/or trademarks with a focus on local litigation issues;
>
> (e) Non-Infringement & Clearance Opinions: Review of potential products and inventions, conduct searches for relevant patents and publications, review and analyze uncovered patents and publications, and preparation of opinions focusing on, among others, sophisticated automotive electronics systems; and
>
> (I) Miscellaneous intellectual property advice and counsel related to copyrights, trademarks and know-how and contractual matters involving intellectual property.

## REQUESTED FEES AND REIMBURSEMENTS OF EXPENSES

25. RFG has played an important role in advising the Debtors, and maintaining and pursuing intellectual property assets during the restructuring period. As a result of its efforts during the Application Period, RFG now seeks interim allowance of $218,619.76 in fees calculated at the applicable guideline hourly billing rates of the firm's personnel who have worked on Delphi matters, and $76,155.32 in charges and disbursements actually and necessarily incurred by RFG while providing services to the Debtors during the Application Period. The detail of these fees and expenses are outlined by category in Exhibit C.

26. In accordance with the Interim Compensation Order, RFG has submitted Monthly Fee Statements for the period from February 1, 2007, through May 31, 2007, and now submits this Interim Application covering the Application Period.

27. In staffing these Delphi matters, in budgeting and incurring charges and disbursements, and in preparing and submitting this Interim Application, RFG has been mindful of the need to be efficient while providing full and vigorous representation to the Debtors. RFG also has been especially cognizant of the standards established by this Court for compensation of professionals and reimbursement of charges and disbursements. As described in detail herein, RFG believes that the requests made in this Interim Application comply with this Court's standards in the context of the unique circumstances surrounding this unusually large and complex case.

28. The Interim Compensation Order provides that in order to seek interim compensation, professionals must submit Monthly Fee Statements to the Debtors, counsel for the Debtors, counsel for the official committee of unsecured creditors, counsel for the agent under the Debtors' prepetition credit facility, counsel for the agent under the Debtors' postpetition credit facility and postpetition lenders, the Joint Fee Review Committee, and the United States Trustee. If no objection to a Monthly Fee Statement is made within 45 days following the month for which

compensation is sought, the Debtors are authorized to pay 80% of the fees requested (with the remaining 20% of the fees requested referred to herein as the "Holdback") and 100% of the charges and disbursements requested. In accordance with the Interim Compensation Order, RFG has submitted Monthly Fee Statements for each of the months covered by the Application Period

29. As of the filing of this Application, no party has filed an objection to RFG's Monthly Fee Statements. Accordingly, with respect to the Monthly Fee Statements covering the Application Period, RFG has received **$125,846.61** on account of billed fees and **$54,845.53** on account of billed charges and disbursements. No payment has been received, as of the date of this application, for the Monthly Fee Statement for the period May 1, 2007 thru May 31, 2007. RFG is requesting full settlement of the fees and expenses described in the May Monthly Fee Statement totaling **$82,621.29** in addition to the Holdback for the period February 1, 2007 thru April 30, 2007, in the amount of **$31,461.65.** The total amount of the settlement being requested is **$114,082.94.**

## COMPLIANCE WITH GUIDELINES

30. As set forth in the Certification of Leigh C. Taggart with Respect to the Fifth Interim Application For Approval of Compensation and Reimbursement of Expenses of Rader, Fishman & Grauer PLLC (Attached hereto as Exhibit E), Rader, Fishman & Grauer PLLC has complied fully with the Guidelines, to the extent applicable.

## NOTICE

31. RFG has served copies of the Application on the Debtors, counsel for the Debtors, counsel for the official committee of unsecured creditors, counsel for the agent under the Debtors' prepetition credit facility, counsel for the agent under the Debtors' postpetition credit facility and postpetition lenders, the Joint Fee Review Committee, and the United States Trustee. In addition,

RFG has served notice of the filing of the Application on the parties as required by the Case Management Order. The Debtors submit that no other or further notice need be given.

## CONCLUSION

WHEREFORE, RFG respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit D approving the compensation and reimbursement of expenses requested herein on an interim basis, authorizing and directing the Debtors to pay such amounts, and for such other and further relief as the Court deems appropriate.

Dated: July 30, 2007  
Bloomfield Hills, Michigan

Respectfully Submitted,

_____  
Leigh C. Taggart  
Rader, Fishman & Grauer PLLC  
39533 Woodward Ave., Suite 140  
Bloomfield Hills, MI 48304  
(248) 594-0600 (office)  
(248) 594-0610 (fax)  
Intellectual Property Counsel for Debtors