**Hearing Date: August 16, 2007**
                                  **Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,

Debtors and Debtors-in-Possession
Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
      In re                                          :        Chapter 11
                                                  :
DELPHI CORPORATION, et al.,          :        Case No. 05-44481 (RDD)
                                                 :
                            Debtors.      :        (Jointly Administered)
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' (I) SUMMARY OF MODIFICATIONS TO SALE APPROVAL ORDER IN
CONNECTION WITH SALE OF THE DEBTORS' CATALYST BUSINESS AND (II)
OMNIBUS REPLY TO OBJECTIONS TO (A) NOTICES OF
ASSUMPTION AND/OR ASSUMPTION AND (B) CURE NOTICES

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this summary of modifications to the Sale Approval Order[1] and omnibus reply (the "Reply") in support of the Debtors' Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All The Assets Primarily Used In Debtors' Catalyst Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No. 8179) (the "Sale Motion").

Preliminary Statement

1.    On June 29, 2007, the Court entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (Docket No. 8436) (the "Bidding Procedures Order").  Under the Bidding Procedures Order, the Debtors originally established July 24, 2007 as the deadline to submit bids for the Catalyst Business and August 1, 2007 as the date for the auction.  On July 18, 2007, the Debtors, pursuant to the Bidding Procedures Order and the Agreement with Umicore, the stalking horse bidder, extended the bid deadline to July 31, 2007 and re-set the date of the auction to August 8, 2007.

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Sale Motion.

2. On July 31, 2007, the Selling Debtor Entities received the bid of Catalytic Solutions, Inc. ("CSI"), in which CSI offered $58.1 million and other consideration for substantially all the assets of the Catalyst Business. After an independent evaluation by the Selling Debtor Entities and their advisors and in accordance with Bidding Procedures, the Selling Debtor Entities determined that the CSI competing proposal was a Qualified Bid as defined in the Bid Procedures. As a result, in accordance with the Bidding Procedures Order, on August 8, 2007, the Debtors held an auction for the sale of the assets of the Catalyst Business. A transcript of the auction for the sale of the assets of the Catalyst Business is attached hereto as Exhibit A (the "Auction Transcript").

3. After reviewing the final bids received at the auction from Umicore and CSI, the Debtors, after consultation with representatives from the Creditors' Committee and the Equity Committee, determined that the final bid received from Umicore was the highest and best bid. The final bid submitted by Umicore included a purchase price and bid value of $75 million – an increase of approximately $19.4 million from the Preliminary Purchase Price included in the stalking horse bid attached to the Sale Motion, most of which is being allocated to the Selling Debtor Entities[2] – which purchase price is (i) subject to a reduction based upon additional U.S. salaried employees that may be hired by Umicore above what Umicore committed to on June 5, 2007, and (ii) includes enhanced terms with respect to net working capital and precious metal targets and improved terms reducing certain risks that could have effected value or closing. The final bid received from CSI, which included a cash purchase price and certain cost savings to the Sellers, had a value of approximately $70.5 million.

---

[2] See Schedule 2 to the proposed Sale Approval Order attached hereto for the purchase price allocation.

4.      At the conclusion of the auction, the Sellers announced that Umicore's $75 million bid was the "Successful Bid" and the final bid submitted by CSI was deemed by the Sellers to be the "Alternate Bid," as each is defined under the Bidding Procedures Order. The revised Master Sale and Purchase Agreement between Sellers and Umicore, marked to reflect changes made to the agreement submitted with the Sale Motion, is attached hereto as <u>Exhibit B</u>. In addition, as further described below, the Sale Approval Order was revised to reflect, among other things, comments received by certain parties-in-interest and the selection of Umicore as the Successful Bidder and CSI as the Alternate Bidder. A marked version of the Sale Approval Order reflecting the modifications made to the form of proposed order submitted with the Sale Motion is attached hereto as <u>Exhibit C</u>. Other than certain objections to the assumption and assignment of certain executory contracts, there are no objections to the sale of the Catalyst Business to Umicore.

A.    <u>Modifications To The Sale Approval Order</u>

5.      After filing the Sale Motion, the Debtors received comments from the Department of Justice (the "DOJ") regarding the proposed Sale Approval Order's treatment of environmental liabilities. As a result of discussions with the DOJ, the parties, including Umicore, agreed to add a provision to the end of paragraph 12 which protects governmental agencies' rights related to environmental laws and regulations.

6.      In addition, the Debtors inserted additional findings of fact (paragraphs E and F) and ordering provisions (paragraphs 41 and 42) to address issues and events related to the Bidding Procedures and the auction. Paragraph E contains a finding reflecting Umicore's agreement at the auction to waive its right to assert any claim against the Debtors and their estates related to the sale process and the auction. <u>See</u> Auction Transcript, Page 46, Lines 9-15. Paragraph F contains a finding that the Selling Debtor Entities selected the CSI bid as the

4

Alternate Bid.  See Auction Transcript, Page 47, Line 9-13.  Consistent with the Bidding Procedures, paragraph 41 states that the final offer made by CSI at the auction would be submitted for approval as the Alternate Bid.  Lastly, paragraph 42 grants the Debtors authority to close on CSI's Alternate Bid if they cannot close with Umicore.

B.   Assumption And Assignment Of Executory Contracts

7.   On July 6, 2007, July 18, 2007, July 24, 2007, July 31, 2007, and August 1, 2007, the Debtors served (i) notices of assumption and assignment of certain executory contracts to Umicore and to CSI (collectively, the "Notices of Assumption/Assignment"), and (ii) notices of cure of executory contracts (the "Cure Notices" and, collectively with the Notices of Assumption/Assignment, the "Notices").  The Debtors served approximately 252 Notices of Assumption/Assignment and 83 Cure Notices.  The Debtors received five timely and properly filed and served objections and four late objections.[3]  Of the nine objections to the Notices, eight of the objections have been resolved, withdrawn or otherwise moot.

C.   Resolved, Withdrawn Or Otherwise Moot

8.   Below is a brief summary of each resolved objection:

(a)   A-1 Specialized Services & Supplies, Inc.  A-1 Specialized Services & Supplies, Inc. ("A-1") filed the (a) Objection By A-1 Specialized Services & Supplies, Inc. To Notice Of Cure Amount (Docket No. 8669), (b) Objection To Assumption And/Or Assignment Of Contracts By A-1 Specialized Services & Supplies, Inc. (Docket No. 8670), (c) Objection Of A-1 Specialized Services & Supplies, Inc. To Assumption And/Or Assignment Of Contracts By/To Catalytic Solutions, Inc. (Docket No. 8977), and (d) Memorandum in Support of

---

[3] The Debtors also received a letter from Varroc Exhaust Systems, Pct. Ldt. ("Varroc) (Docket No. 8681) in which Varroc states it does not object to the assumption and/or assignment of its various agreements.

5

Objection to Assumption of Executory Contract (Docket No. 9085).  A-1's pleadings were filed to oppose the Debtors' request to assume and assign to Umicore (or CSI, as applicable), pursuant to section 365 of the Bankruptcy Code, a supply contract and a reclamation contract (the "A-1 Contracts").  Under the A-1 Contracts, the Debtors purchase platinum, palladium and rhodium ("platinum group metals" or "PGM") from A-1 for use in the manufacturing of automotive components and reclamation services of A-1 to recover PGM from its automotive manufacturing scrap.  In its pleadings, A-1 alleges that the Debtors cure amount is insufficient and that due to certain anti-trust and anti-money laundering concerns, the Debtors should not be able to assume and assign the A-1 Contracts to Umicore (or CSI, as applicable).  While the Debtors vigorously dispute A-1's allegations, following the filing of the foregoing pleadings, Umicore elected to remove the A-1 Contracts from the schedule of assumed contracts attached to the Master Sale and Purchase Agreement ("Schedule of Assumed Contracts").  Accordingly, the A-1 objections are now moot.

    (b) <u>Chrysler LLC</u>.  Chrysler LLC ("Chrysler") filed the Objection Of Chrysler LLC To Assumption And/Or Assignment Of Contracts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 9040) (the "Chrysler Objection"), in which it objected to the assumption and assignment of the Noble Metal Stock Account Agreement (the "Noble Metal Agreement").  Chrysler withdrew the Chrysler Objection upon receiving confirmation from the Debtors that the Noble Metal Agreement would not be assumed and/or assigned and would be removed from the Schedule of Assumed Contracts because it did not govern the ongoing relationship between the Selling Debtor Entities and Chrysler.

    (c) <u>Contrarian Funds, LLC</u>. Contrarian Funds, LLC ("Contrarian") filed its Limited Objection of Contrarian Funds, LLC to Debtors' Notice of Cure Amount with Respect to

Executory Contract or Unexpired Lease to be Assumed and Assigned in Connection with the Sale of Catalyst Business (Docket No. 8877) (the "Contrarian Objection").  Contrarian purchased the claim associated with a certain contract (the "Aramark Contract") from Aramark Uniform and Career Apparel Inc. ("Aramark") and Contrarian filed an objection to protect its contractual right to the cure amount.  The Contrarian Objection has been resolved pursuant to a tri-partite stipulation (between the Aramark, Contrarian, and the Debtors) to be executed, that provides for, among other things, the cure amount to be paid directly Contrarian.

           (d)       <u>Corning Incorporated.</u>  Corning Incorporated ("Corning") filed the Limited Objection of Corning Incorporated to the Assumption of, and the Cure Amounts Asserted by Debtor, for Contracts 50186, 50187, 50188, 50189 in Debtor's Notices of Assumption and Asserted Cure Amounts in Connection With the Sale of Debtor's Catalyst Business (Docket No. 8592) (the "Corning Assumption/Assignment Objection").  Initially Corning filed a protective objection.  The Corning Assumption/Assignment Objection was superseded by the Amended Limited Objection Of Corning Incorporated To The Assumption Of, And The Cure Amounts Asserted By Debtor, For Contracts 50186, 50187, 50188 And 50189 In Debtor's Notices Of Assumption And Asserted Cure Amounts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 8894).  This objection acknowledged that Corning had no issue with its contract being assigned to Umicore filed a protective objection with respect to cure.  On August 15, 2007, Corning filed a withdrawal of its objection. <u>See</u> Withdrawal Of Amended Limited Objection Of Corning Incorporated ("Corning") To The Assumption Of, And The Cure Amounts Asserted By Debtor, For Contracts 50186, 50187, 50188 And 50189 In Debtor's Notices Of Assumption And Asserted Cure Amounts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 9086).

(e) <u>Denso International America, Inc</u>.  Denso International America, Inc. filed a Limited Objection By Denso International America, Inc. To Assumption And/Or Assignment of Executory Contract Or Unexpired Lease To Qualified Bidder In Connection With Sale of Catalyst Business (Docket No. 8904) (the "Denso Objection").  The Denso Objection was withdrawn after the Debtors confirmed that they would remove an expired purchase order from the Schedule of Assumed Contracts.

(f) <u>Maricopa County</u>.  Maricopa County filed an objection to the Sale Motion (Docket No. 8655) (the "Maricopa County Objection").  Following the filing of the Maricopa County Objection, Maricopa County understood that it had no interest in the Sale and thus the Maricopa County Objection was withdrawn.  <u>See</u> Withdrawal of Maricopa County's Objection to the Debtor's "Catalyst Business Sale Motion" (Docket No. 8731).

(g) <u>Tosoh Corporation</u>.  Counsel for the Debtors received a letter objection from Tosoh Corporation ("Tosoh"), dated August 9, 2007 (the "Tosoh Objection").  The Tosoh Objection was never filed with this Court, and thus a courtesy copy of Tosoh Objection is attached hereto as <u>Exhibit D</u>.  As part of the Sale process, Delphi identified certain contracts with Tosoh that it seeks to assign to Umicore.  The Tosoh Objection sought clarification regarding whether the Debtors intend to assume and assign a certain September 6, 2006 Memorandum of Understanding between Delphi and Tosoh (the "Tosoh MOU").  Upon receiving clarification from the Debtors that they would not assign the Tosoh MOU to Umicore, on August 13, 2007, Tosoh indicated that it would withdraw its objection.

(h) <u>QEK Global Solutions (US), LP</u>.  QEK Global Solutions (US), LP filed its Limited Objection of QEK Global Solutions (US), LP To Assumption And/Or Assignment of Unexpired Lease to Qualified Bidder In Connection With Sale of Catalyst Business (Docket No.

9060) (the "QEK Objection"). The QEK Objection was resolved upon confirmation from the Debtors that certain contracts with QEK associated with certain vehicles of concern to QEK (specifically, the Leased VEL Test Vehicles) would not be assumed and/or assigned and would be removed from the Schedule of Assumed Contracts. See Notice Of Withdrawal Of QEK Global Solutions (US), LP's Limited Objection To Assumption And/Or Assignment Of Unexpired Lease To Qualified Bidder In Connection With Sale Of Catalyst Business (Docket No. 9088).

D. <u>Unresolved Objection – Impala Platinum Limited</u>

9. As stated above, of the nine objecting parties, only Impala Platinum Limited's objection remains contested. Specifically, on August 14, 2007, counsel to the Debtors received a letter (the "Impala Letter") from Impala Platinum Limited ("Impala"), informally objecting to the assignment of the agreement between Impala and Delphi (Docket No. 9084) (the "Impala Agreement"). For the reasons set forth below, the Debtors request that the objection filed by Impala be overruled and that the Debtors be authorized, but not directed, to assume and assign the Impala Agreement to Umicore pursuant to 11 U.S.C. § 365.

Argument

10. Impala objects on the ground that the Impala Agreement contains a provision conditioning any assignment of the agreement on the counterparty's consent, and Impala does not consent to the proposed assignment. Impala's objection should be overruled for at least three independent reasons.

11. First, Impala's contention that its withholding consent is sufficient to preclude assignment of the Impala Agreement is simply off the mark. The plain language of section 365(f)(1) of the Bankruptcy Code provides that terms or conditions in a contract or lease that

prohibit, restrict, or condition the assignment of such contract or lease are not enforceable – subject to limited exceptions. Section 365(f) "works by operation of law to invalidate" contract assignment restrictions. See e.g., In re Jamesway Corp., 201 B.R. 73, 78 (Bankr. S.D.N.Y. 1996) (emphasis added) (citing In re Office Prod. of Am., Inc., 140 B.R. 407, 410 (Bankr. W.D. Tex. 1992); In re Howe, 78 B.R. 226, 229 (Bankr. S.D. 1987)). Indeed, that section assumes, as a matter of law, that the free "assignment of unexpired leases will assist the debtor in its reorganization or liquidation efforts." In re Bradlees Stores, Inc., No. 00-16033, 2001 WL 1112308, *11 (S.D.N.Y. Sept. 20, 2001) (internal citations omitted). Impala has not satisfied any exception contained under section 365(f). Indeed, the Impala Agreement is a traditional executory contract that does not fall into any of the section 365(f) exceptions. Accordingly, despite the restrictive assignment clause, section 365 trumps and Impala's objection should be overruled.

12. Second, the Debtors provided Impala notice of their intention to assume and assign the Impala Agreement to Umicore on July 5, 2007 (Docket No. 8487). The notice stated that objections must be filed with the Court in accordance with the procedures set forth in the Case Management Orders. The Impala Letter should be stricken because it was not filed with this Court, or, for that matter, in accordance with the Case Management Orders entered in this case. Moreover, the Bidding Procedures Order provided that objections must be served so that they are received within ten days after the date of the notice, which in this instance (taking into account rule 9006 of the Federal Rules of Bankruptcy Procedure) was July 16, 2007. The Impala Letter was received approximately 28 days after the objection deadline expired. On this basis alone, the Impala Letter should be stricken. Accordingly, the Impala objection should be overruled.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) granting the Motion, (ii) overruling all objections to the Motion, and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
August 15, 2007

          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

          By: /s/ John Wm. Butler, Jr.
              John Wm. Butler, Jr. (JB 4711)
              John K. Lyons (JL 4951)
              Ron E. Meisler (RM 3026)
         333 West Wacker Drive, Suite 2100
         Chicago, Illinois 60606
         (312) 407-0700

                –and –

          By: /s/ Kayalyn A. Marafioti
              Kayalyn A. Marafioti (KM 9632)
              Thomas J. Matz (TM 5986)
         Four Times Square
         New York, New York 10036
         (212) 735-3000

         Attorneys for Delphi Corporation, et al.,
          Debtors and Debtors-in-Possession