Page 1

1

2

3    DELPHI CATALYST AUCTION,              )

4                                          )

5    ------------------------------)

6

7

8

9                    AUCTION PROCEEDINGS

10                   New York, New York

11              Wednesday, August 8, 2007

12

13

14

15

16

17

18

19

20

21

22

23    Reported by:

      Philip Rizzuti

24    JOB NO. 12623

25

Page 2

```
1
2
3                    August 8, 2007
4                    5:30 p.m.
5
6            AUCTION PROCEEDINGS, held at the
7    offices of Skadden Arps, 4 Times
8    Square, New York, New York, before
9    Philip Rizzuti, a Notary Public of the
10   State of New York
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1
2    A P P E A R A N C E S:
3
4       SKADDEN, ARPS, SLATER, MEAGHER & FLOM,
5       LLP
6    Attorneys for Delphi
7       4 Times Square
8       New York, New York 10036
9    BY:  JOHN LYONS, ESQ.
10      DENISE KALOUDIS, ESQ.
11      BRIAN FERN, ESQ.
12      JASON KETCHENS, ESQ.
13      RON E. MEISLER, ESQ.
14
15   GOODWIN PROCTOR, LLP
16   Attorneys for Umicore
17      901 New York Avenue, N.W.
18      Washington, D.C. 20001
19   BY:  J. HOVEY KEMP, ESQ.
20      JOSHUA N. KLATZKIN, ESQ.
21      EMANUEL C. GRILLO, ESQ.
22
23
24
25
```

Page 4

```
1
2    A P P E A R A N C E S:
3
4       SQUIRE SANDERS & DEMPSEY, LLP
5       Attorneys for CSI
6          4900 Key Tower
7          127 Public Square
8          Cleveland, Ohio 44114-1304
9    BY:  DAVID A. ZAGORE, ESQ.
10         JEFFREY A. MARKS, ESQ.
11
12   ALSO PRESENT:
13      JOHN FUERST, Delphi
14      STEVE DeRAEDT, Delphi
15      ERIC CREECH, Delphi
16      MARGARET FUKUDA, Delphi
17      PAUL ROTH, Delphi
18      JOHN WEBER, Delphi
19      RICK KAY, Delphi
20      ALI AZIM, CSFB
21      MARC GRYNBERG, Umicore
22      BILL STARON, Umicore
23      JOERG von RODEN, Umicore
24      MICHAEL LACHMANN, Umicore
25      DOUG PUGLIESE, Bear Stearns
```

Page 5

```
1
2    ALSO PRESENT:
3       KIRK McINTOSH, Bear Stearns
4       ANDREW SAMETT, Bear Stearns
5       JOSEPH LEE, Bear Stearns
6       DAVE POWLEN, Western Reserve Partners
7       CHARLIE CALL, CSI
8       RON RUDOLPH, CSI
9       DAVID SHEA, CSI
10      JOHN MUELLER, CapitalWorks
11      JUDE GORMAN, Latham & Watkins
12      DAVID GROBAN, Jeffries
13      NATE BRAWN, Jeffries
14      KATIE DANG, Fried Frank
15      DAN CROWLEY, Houlihan Lokey
16
17
18
19
20
21
22
23
24
25
```

1       Auction Proceedings
2    MR. LYONS: Everybody ready. Good
3 afternoon. My name is John Lyons of
4 Skadden, Arps, Slate, Meagher & Flom,
5 LLP. Skadden is counsel to Delphi
6 Corporation and its affiliate debtors and
7 debtors in possession in their Chapter XI
8 cases which are pending in the United
9 States Bankruptcy Court in the Southern
10 District of New York before the Honorable
11 Robert D. Drain, and are being jointly
12 administered under case number 05-44481.
13    On June 6, 2007 Delphi filed a
14 motion seeking approval of certain bid
15 procedures and certain bid protections
16 for the stalking horse bidder Umicore,
17 and approval of a sale of substantially
18 all of the assets of the Catalyst
19 business to Umicore pursuant to a master
20 asset sale and purchase agreement dated
21 June 5, 2007 by and between Delphi and
22 Umicore subject to completion of a
23 competitive bidding process. I will
24 refer to the motion as the sale motion.
25 The sale motion was entered on the

1       Auction Proceedings
2 docket, docket entry number 8179.
3    After a hearing held on June 26,
4 2007 the court entered an order approving
5 certain bidding procedures. The order
6 was entered on June 29, 2007 at docket
7 8436. I will refer to this order as the
8 bidding procedures order.
9    On July 18, 2007 pursuant to the
10 bidding procedures the debtors extended
11 the bid deadline from July 24, 2007 to
12 July 31, 2007, and reset the date of the
13 auction from August 1, 2007 to today.
14 The notice of this extension is a docket
15 number 8653. This is the time and place
16 for the auction of the assets of the
17 Catalyst business pursuant to the bidding
18 procedures order and the notice of
19 extension.
20    As you are aware we have a court
21 reporter here. The auction is being
22 transcribed and we will file the complete
23 transcript of this auction with the
24 bankruptcy court.
25    We have marked several exhibits

1       Auction Proceedings
2 which we have distributed to the parties
3 prior to this auction. I will go rather
4 quickly through the exhibits.
5    Exhibit 1 is the sale motion that
6 I already described.
7    (Exhibit 1, sale motion, marked
8    for identification, as of this date.)
9    MR. LYONS: Exhibit 2 is a black
10 line of the sale order that black lines
11 the original order attached to the sale
12 motion against certain changes. That is
13 Exhibit 2.
14    (Exhibit 2, black line of the sale
15    order, marked for identification, as
16    of this date.)
17    MR. LYONS: Exhibit 3 is the
18 bidding procedures order.
19    (Exhibit 3, bidding procedures
20    order, marked for identification, as
21    of this date.)
22    MR. LYONS: Exhibit 4 is the bid
23 submitted by Umicore including a master
24 asset and sale purchase dated June 5,
25 2007, and disclosure schedules.

1       Auction Proceedings
2    (Exhibit 4, bid distributed by
3 Umicore including master asset and sale
4 purchase dated June 5, 2007, and
5 disclosure schedules, marked for
6 identification, as of this date.)
7    MR. LYONS: Exhibit 5 is the bid
8 submitted by Catalyst Solutions, CSI,
9 including all the materials in Exhibit 5
10 that you can review.
11    (Exhibit 5, bid submitted by
12 Catalyst Solutions, marked for
13 identification, as of this date.)
14    MR. LYONS: Exhibit 6 is this
15 morning's sign in sheet which is a record
16 of the attendees at this auction. It
17 will obviate the need for all of you to
18 state your name and title.
19    (Exhibit 6, sign in sheet,
20    marked for identification, as of this
21    date.)
22    MR. LYONS: Exhibit 7 is a bid
23 sheet, which is a final bid sheet from
24 various drafts that were circulated
25 amongst the parties.

1    Auction Proceedings
2    (Exhibit 7, bid sheet, marked
3    for identification, as of this date.)
4    MR. LYONS:  Exhibit 8 is a black
5    line MSPA, master sale and purchase
6    agreement, reflecting modifications from
7    the asset sale and purchase agreement
8    between CSI and Delphi dated July 31,
9    2007 to the current version of the master
10    sale and purchase agreement dated today
11    by and between CSI and Delphi.
12    (Exhibit 8, black line master sale
13    and purchase agreement reflecting
14    modifications from asset sale and
15    purchase agreement between CSI and Delphi
16    dated July 31, 2007, marked for
17    identification, as of this date.)
18    MR. LYONS:  Exhibit 9 is schedule
19    3.2 to that agreement, revised schedule
20    3.2.1 to that agreement.
21    (Exhibit 9, revised schedule 3.2.1
22    to agreement, marked for
23    identification, as of this date.)
24    MR. LYONS:  Exhibit 10 is a
25    certain lease governing real property in

1    Auction Proceedings
2    Luxembourg.
3    (Exhibit 10, certain lease
4    governing real property in Luxembourg,
5    marked for identification, as of this
6    date.)
7    MR. LYONS:  Exhibit 11 is a
8    certain lease governing property in
9    Shanghai, China.
10    (Exhibit 11, certain lease
11    governing property in Shanghai, China,
12    marked for identification, as of this
13    date.)
14    MR. LYONS:  Exhibit 12 is a red
15    line of the Umicore agreement dated
16    today against the original agreement
17    filed with the sale motion.
18    (Exhibit 12, red line of Umicore
19    agreement against the original agreement
20    filed with the sale motion, marked for
21    identification, as of this date.)
22    MR. LYONS:  As everyone is aware
23    competing proposals for the asset of the
24    Catalyst business were to have been
25    received by Delphi, its advisors, and

1    Auction Proceedings
2    certain other statutory committee
3    advisors by the bid deadline which as I
4    noted before pursuant to the bid
5    procedures was extended in accordance
6    therewith.
7    On July 31st only one competing
8    bid had been received which is the bid of
9    CSI, which is marked as Exhibit number 5.
10    Pursuant to CSI's binding bid letter and
11    master sale and purchase agreement CSI
12    offered 58.1 million consideration for
13    substantially all the assets of
14    Catalyst's business.
15    The other material terms of CSI's
16    proposed asset sale of master sale and
17    purchase agreement are substantially
18    similar to the material terms of the
19    original master sale and purchase
20    agreement between Delphi and Umicore with
21    exceptions that I am going to note
22    further, and also as we note on a bid
23    sheet that has been previously marked.
24    After independent evaluation by
25    Delphi and its advisors and in accordance

1    Auction Proceedings
2    with bidding procedures Delphi determined
3    that the CSI competing proposal was a
4    qualified bid as defined in the bid
5    procedures attached as Exhibit 1 to the
6    bidding procedures order.
7    Therefore on August 3, 2007 my
8    colleague Brian Fern contacted all
9    parties entitled to attend this auction
10    by E-mail and advised them that an
11    auction would be going forward.
12    After reviewing the bids of
13    Umicore and CSI on August 7, 2007 Delphi
14    concluded that the CSI bid was the
15    highest or otherwise best offer submitted
16    prior to the auction, and in accordance
17    with the bid procedures order Delphi
18    distributed the CSI bid letter, a marked
19    copy of the agreement, and the memorandum
20    of ancillary agreement memorandum to
21    Umicore and other relevant parties.
22    Subsequently we did distribute a redacted
23    version of the agreement letter as well
24    as the underwriting agreement to Umicore.
25    There are no other parties who

Page 14

1          Auction Proceedings
2   have submitted a qualified bid and
3   therefore pursuant to the bid procedures
4   order only Umicore and CSI are entitled
5   to bid for the Catalyst assets at today's
6   auction.
7          As each of you know each of the
8   bidders has been assigned their own
9   conference room to use for caucusing in
10  private. The creditor's committee and
11  the equity committee and other creditor
12  constituents and representatives are
13  sharing one room. The agent for the DIP
14  lenders advised the debtor that they
15  would not be attending the auction.
16         Shortly we are going to open the
17  floor to allow an opportunity for
18  additional competing bids which I hope to
19  get to very shortly. I am not going to
20  read into the record all the other
21  procedures for the bidding procedures, we
22  have admitted those documents into the
23  record and each party here has a copy of
24  those documents to review.
25         Before we begin bidding I remind

Page 15

1          Auction Proceedings
2   the parties that additional bids are to
3   be made in $500,000 increments. At this
4   point in time there is no specific
5   additional procedures today, although we
6   reserve the right to add them.
7          We encourage each of you, Umicore
8   and CSI, to put on the table today your
9   highest and best bid, and we will do
10  everything we can to provide to each of
11  you guidance on the issues that we or the
12  creditor constituencies may have as they
13  relate to your respective bids.
14         When neither bidder desires to
15  make any further bid we will recess the
16  auction and meet privately. First Delphi
17  will meet with its own representatives,
18  and later with our constituencies to
19  consult with them.
20         After that as quickly as possible,
21  depending on the time, Delphi and its
22  advisors will meet, deliberate and
23  determine in the exercise of its business
24  judgement which party it believes to be
25  the successful bidder, and which party

Page 16

1          Auction Proceedings
2   will be the alternate bidder.
3          At that point Delphi will advise
4   the parties to the bid who it has
5   determined to the successful bid, and the
6   bid that has been determined to be the
7   alternate bid, and Delphi with formally
8   close the auction at that time.
9          However as you know in the bid
10  procedures no bid has been accepted by
11  Delphi until the Bankruptcy Court
12  approves of it in the sale hearing and an
13  order to that effect is entered by the
14  Bankruptcy Court.
15         Okay. We would like to request
16  that each of the two bidders designate a
17  representative to speak on your behalf
18  when and if you decide you want to speak
19  on the record for purposes of the
20  auction. Therefore I ask the designated
21  representative of Umicore to state his or
22  her name and title for the record, and
23  affirm that such person is the authorized
24  representative of Umicore for purposes of
25  this auction.

Page 17

1          Auction Proceedings
2          MR. KEMP: My name is Hovey Kemp,
3   I am a partner at Goodwin Proctor. I
4   will be speaking on behalf of Umicore. I
5   would reserve the right to allow others
6   to speak however, John, to the extent
7   that that is appropriate.
8          MR. LYONS: Very well.
9          I will ask the designated
10  representative of CSI to state his or her
11  name and title for the record, and affirm
12  that such person is the authorized
13  representative of CSI for purposes of the
14  auction.
15         MR. CALL: I am the designated
16  representative, Charles Call, I am the
17  CEO of Catalyst Solutions.
18         MR. LYONS: For the authorized
19  representatives of both bidders, please
20  confirm that both of you have the full
21  authority to speak for each of your
22  respective companies.
23         MR. KEMP: Yes, I have that
24  authority.
25         MR. CALL: Yes, I have that

Auction Proceedings

1  Auction Proceedings
2  authority.
3      MR. LYONS:  Please confirm that
4  your participation at the auction and
5  anything that you say on behalf of your
6  company is binding upon your respective
7  companies.
8      MR. KEMP:  On behalf of Umicore I
9  agree.
10     MR. CALL:  Same, I agree.
11     MR. LYONS:  Thank you.
12     We also believe that it will be
13 helpful for the primary creditor and
14 other constituencies who are present
15 today to be free to ask questions on the
16 record to insure that the terms put on
17 the record by the bidders are clear and
18 fully understood by the parties.
19 Therefore we welcome the participation of
20 the representatives of the creditor's
21 committee and the equity committee and
22 UAW and others who are here today in that
23 capacity.
24     Okay.  At this point I would ask
25 the Umicore representative to affirm that

1  Auction Proceedings
2  to the best of his knowledge Exhibit
3  number 4 contains the master asset sale
4  and purchase agreement dated June 4, 2007
5  as agreed by and between Delphi and
6  Umicore, and that the schedules are to
7  the best of his of knowledge the final
8  versions of such schedules.
9      MR. KEMP:  I agree.
10     MR. LYONS:  I would ask that the
11 CSI representative affirm that to the
12 best of his knowledge Exhibit number 5
13 represents CSI's offer dated July 31,
14 2007 for the Catalyst business.
15     MR. CALL:  We agree to the best of
16 our knowledge.
17     MR. LYONS:  With respect to both
18 parties, and again we will take Umicore
19 first, CSI next.
20     Umicore, please confirm that there
21 have been no discussions or other
22 communications, nor any agreements,
23 formal or informal, verbal or written, to
24 the best of your knowledge between
25 Umicore and its representatives on the

1  Auction Proceedings
2  one hand, and CSI and its representatives
3  on the other hand regarding Delphi's sale
4  of the Catalyst business.
5      MR. KEMP:  I agree, that is right.
6      MR. LYONS:  Okay, the same
7  representation on behalf of CSI.
8      MR. CALL:  I agree.
9      MR. LYONS:  First Umicore.  Does
10 Umicore have any objections to this
11 auction or sale process?
12     MR. KEMP:  No.
13     MR. LYONS:  CSI.  Does CSI have
14 any objections to this auction or the
15 sale process?
16     MR. CALL:  No, we do not.
17     MR. LYONS:  Prior to the auction
18 Delphi representatives met with both
19 Umicore and CSI to discuss clarifications
20 and enhancements to both bids pursuant to
21 draft bid sheets that Delphi prepared
22 that outlined the material differences
23 between the two bids and monetary values
24 ascribed to the differences.
25     Following these discussions Delphi

1  Auction Proceedings
2  received the following enhancements
3  and/or clarifications from the parties.
4      With respect to CSI the parties
5  have negotiated first a further black
6  line revised MSPA, a copy of which has
7  been marked as Exhibit 8; a revised
8  schedule 3.2.1 to the agreement, a copy
9  of which was marked as Exhibit 9; a
10 certain lease relating to the Luxembourg
11 facility, a copy of which was marked as
12 Exhibit 10; and a certain lease relating
13 to the Shanghai, China facility, a copy
14 of which was marked as Exhibit 11 that
15 contains certain clarifications and
16 enhancements to CSI's July 31st bid.
17     CSI, do you confirm that CSI
18 hereby amends its July 31st bid to
19 include the agreements set forth in
20 Exhibits 8, 9, 10 and 11, together with
21 the other obligations contained in the
22 July 31st bid, not inconsistent
23 therewith, and that such agreement
24 constitutes CSI's current bid?
25     MR. CALL:  Yes, we do confirm it.

Page 22

1          Auction Proceedings
2          MR. LYONS:  I will refer to this
3    bid as CSI's opening current bid.
4          With respect to Umicore, the
5    parties negotiated a further black lined
6    revised master sale and purchase
7    agreement, a copy of which was marked as
8    Exhibit 12 that contains certain
9    clarifications and enhancements to the
10   June 5th agreement.
11         Umicore, do you confirm that
12   Umicore hereby amends the June 5th
13   agreement to reflect black line changes
14   in Exhibit 12, together with obligations
15   contained in the June 5, 2007 agreement,
16   not inconsistent therewith, and that such
17   agreement constitutes Umicore's current
18   bid?
19         MR. KEMP:  It does, yes.
20         MR. LYONS:  I will call the
21   current bid Umicore's opening current
22   bid.
23         Based upon the above confirmations
24   Delphi prepared a revised bid sheet,
25   Exhibit 7, that reflects the monetization

Page 23

1          Auction Proceedings
2    of the differences in terms between CSI's
3    opening current bid and Umicore's opening
4    current bid.
5          Before we begin bidding I want to
6    make three clarifications.  As indicated
7    in the revised bid sheet Delphi ascribes
8    a bid value of $55.6 million to the
9    Umicore current opening bid, and a bid
10   value of $60 million to the CSI current
11   opening bid.
12         Now, when I use the term value it
13   is expressly subject to other
14   considerations as I will discuss in more
15   detail later that Delphi will consider in
16   determining who ultimately is the
17   successful bidder.  For purposes of
18   clarity I will use bid value.
19         As reflected in the revised bid
20   sheet, when valuing bids that will be
21   made, any subsequent bid that CSI makes
22   will reflect net credits set forth in the
23   revised bid sheet.  In addition the
24   amount that CSI will bid, CSI will have
25   to add an additional $2 million to

Page 24

1          Auction Proceedings
2    reflect the amount necessary to pay
3    Umicore in a break up fee in the event
4    that Umicore is not the successful bidder
5    and the transaction closes with CSI.
6          I have an example that may further
7    clarify this, but I understand that CSI
8    may want to make a comment.
9          MR. ZAGORE:  Yes.  This is David
10   Zagore, partner at Squire Sanders,
11   counsel to CSI.
12         I believe the bid value at the
13   bottom already reflects the $2 million
14   break up fee.  End of the comment.
15         MR. LYONS:  Yes.  So let me go
16   through an example, that may be the
17   easiest way to do this.
18         Currently Umicore has a bid value
19   of 55.6, this is all hypothetical.  CSI's
20   current bid value is $60 million, and
21   that is all indicated in the bottom
22   portion of the bid sheet.
23         In the event Umicore makes a
24   subsequent bid, assuming it bids $60.5
25   million.  If CSI were to make a

Page 25

1          Auction Proceedings
2    subsequent bid of $61 million, that $61
3    million would be comprised of the
4    following:
5          3.9 million in net credits due to
6    the differences in terms between the
7    parties, and $59.1 million which would be
8    comprised of the amount necessary to
9    compensate Umicore for the break up fee
10   of 2 million, plus an additional 57.1
11   million.
12         Now I ask both parties, do you
13   understand and confirm the manner in we
14   will bid; first to Umicore and -- pardon
15   me, and the way in which we will
16   calculate the bid?
17         MR. KEMP:  Yes.
18         MR. CALL:  Yes, we understand.
19         MR. LYONS:  Second clarification:
20         In accordance with the bid
21   procedures, submission of a subsequent
22   bid by either bidder constitutes an
23   irrevocable offer to purchase the
24   Catalyst business at the price, terms and
25   conditions of the subsequent bid, and

Auction Proceedings

1        Auction Proceedings
2 such bid must remain open through two
3 business days after closing of the sale
4 to the other bidder.  Delphi then can
5 receive court approval of and may in
6 enforce both the successful bid and the
7 alternative bid.
8        Thus for example if bidder X
9 submits a bid of $60 million in the first
10 round, topped by bidder Y with a bid of
11 62 million, and bidder X subsequently
12 submits a higher bid of 64 million, and
13 bidder Y submits a final ultimately
14 winning bid of 66 million, Delphi will
15 seek approval of, and will be able to
16 close on both the highest bid of 66
17 million with bidder Y, and if unable to
18 close on this bid, Delphi would be able
19 to close on the next highest bid of 64
20 million with bidder X without need for
21 further court approval.
22        Do both bidders clearly understand
23 and confirm this requirement?
24        MR. KEMP:  Yes, we do.
25        MR. CALL:  Yes, we do.

1        Auction Proceedings
2        MR. LYONS:  Finally Delphi will
3 use and has used the bid sheet as a means
4 to monetize differences in terms between
5 subsequent bids by the parties to
6 facilitate comparison between subsequent
7 bids and determine whether a subsequent
8 bid is higher than the previous bid by
9 the other party.
10        Please be aware that Delphi's
11 declaration that a subsequent bid is
12 higher under this calculation does not
13 mean that such bid will be the successful
14 bid under the bidding procedures if no
15 higher bid is received.
16        Rather as I informed both parties
17 prior to the auction, once there is no
18 further bidding Delphi will determine
19 which bid constitutes the highest or
20 otherwise best bid, and therefore the
21 successful bid in light of all relevant
22 considerations, including among other
23 things closing risks, execution risks and
24 other factors.
25        Delphi will also consult with its

1        Auction Proceedings
2 representative constituents present at
3 this auction before making such
4 determination.
5        Do both bidders clearly understand
6 and confirm this requirement, Umicore?
7        MR. KEMP:  Yes.
8        MR. LYONS:  CSI?
9        MR. CALL:  Yes, we do.
10        MR. LYONS:  Now, based upon the
11 revised bid sheet CSI is the highest
12 bidder at a bid value of $60 million.
13 Does Umicore wish to submit a higher bid?
14        MR. KEMP:  Yes.
15        MR. LYONS:  Please put on the
16 record the terms of your bid.
17        MR. KEMP:  Umicore would like to
18 submit a subsequent bid that would raise
19 the cash purchase price by $9.4 million
20 dollars, so that the 55.6 bid value shown
21 in your bid sheet would now be 65
22 million.
23        We confirm the terms of our MSPA
24 as reflected in Exhibit 12 for purposes
25 of this subsequent bid with two changes.

1        Auction Proceedings
2        The first is that we would insert
3 a new section, we think it would be
4 4.6.9, which would be a purchase price
5 adjustment to be made at closing.  That
6 purchase price adjustment would effect a
7 downward adjustment to Umicore's purchase
8 price for employees in Troy or Flynt that
9 Umicore takes on in its employ at the
10 closing.
11        That adjustment would be
12 calculated at a rate of $75,000 per such
13 person in Troy and Flynt.  That would
14 also apply to employees that Umicore
15 takes on in Tulsa in excess of the 66 2/3
16 percent of such Tulsa employees that
17 Umicore has in its previous MSPA already
18 agreed to take on.
19        In the case of the Tulsa employees
20 the downward purchase price adjustment
21 that would thus be triggered to the
22 extent that Umicore took on more Tulsa
23 employees than the 66 2/3 percent would
24 be calculated at a rate of either
25 $100,000 per should employee, or $40,000

1          Auction Proceedings
2   per such employee, depending upon the
3   stature and status rather of such
4   employees.
5          Again to reiterate, we are using
6   the formula for a value in respect of
7   those employees in Flynt and Troy and in
8   Tulsa as it is reflected on your Exhibit
9   7, namely the bid sheet.
10         The second change in the MSPA
11  would be to the following effect.  The
12  increase in Umicore's cash purchase price
13  from 55.6 million to 65 million that is
14  reflected in this subsequent bid, that
15  purchase price of 65 million will remain
16  in effect provided that Umicore's bid and
17  our revised MSPA is approved as the
18  successful bid by a final sale approval
19  order on or before close of business on
20  August 16th.
21         To the extent that that condition
22  is not met the cash purchase price in
23  Umicore's bid will revert to the 55.6
24  million in the original submission.
25         That concludes what I have to say

1          Auction Proceedings
2   about our subsequent bid.
3          MR. LYONS:  Okay, we would like to
4   take a recess.  Off the record.
5          (Recess taken.)
6          MR. LYONS:  Okay, we are back on
7   the record.  I believe the authorized
8   representative for Umicore would like to
9   make a statement.
10         MR. KEMP:  All right, yes, I
11  would.  Thank you John.
12         Following the subsequent bid we
13  made Mr. Lyons approached us and
14  indicated that it was Delphi and
15  Skadden's, its counsel's view that the
16  bid that we submitted could not be
17  considered a qualified bid or a
18  subsequent bid because it did not comply
19  with the bidding requirements.
20         We disagree, and we will get into
21  that, and we would like to go on record
22  to underscore why we did what we did and
23  put that in the record.
24         I would like to start by
25  expressing that what we are about to say

1          Auction Proceedings
2   and the way we have conducted ourselves
3   today is with all due respect to CSI, to
4   the amount of effort that you put into
5   this in a very short period of time, been
6   forced to review a whole lot of
7   documentation and due diligence and
8   everything else that we have been at for
9   some time in a very short period of time.
10         We also appreciate that CSI sees
11  value in these assets and has an
12  appropriate vision for what it could do
13  with these assets.
14         Having said that Umicore was
15  provided a copy of your financing
16  documents very late in the game.  We
17  believe that in accepting your bid,
18  subject to those financing documents,
19  that indeed we didn't find and we don't
20  find that the CSI bid should have been
21  qualified.
22         We believe that it is so
23  conditional due to the financing
24  arrangements that you have in place that
25  Delphi was wrong in accepting it as a

1          Auction Proceedings
2   qualified bid.  There are numerous things
3   that we can point to to support this
4   view.
5          While it may be true that CSI
6   submitted an executed copy of the MSPA as
7   required by 11.5.2 of the bid
8   requirements, what we were told was that
9   we could not see that bid initially
10  because it was still being negotiated.
11  That Delphi was seeking additional
12  clarifications and enhancements to that
13  bid well after the bid deadline.
14         In addition in our view an
15  unwaivable bid requirement in 11.5.4 of
16  our MSPA indicated that any qualified bid
17  needed to provide evidence of ability to
18  consummate the proposed transaction.  It
19  is true that the standard of that is
20  satisfactory to Delphi.  But in our view
21  we think it was unreasonable for Delphi
22  to accept that evidence in the form of
23  your financing requirements.
24         In addition since the date of the
25  bid deadline has passed we are aware

Auction Proceedings

1
2 because Delphi has told us that they have
3 waived a number of provisions of the
4 MSPA's bid requirements in order to
5 qualify your bid.
6     11.6.3 requires that Delphi
7 determine in good faith that the
8 qualified bid is not materially more
9 burdensome or conditional than the terms
10 of our MSPA, and again this I will get to
11 in a minute, I believe that the
12 conditional nature of the financing
13 package that CSI has brought to the table
14 makes it so materially more conditional
15 than the terms of our MSPA that it should
16 not have been accepted and we don't think
17 it was reasonable for Delphi to waive
18 that provision.
19     I could go on about the waivers,
20 but I would like to move to the financing
21 commitments. We believe that both your
22 debt and your equity commitments, when I
23 say you, I mean the CSI bid, that the
24 debt and equity commitments that support
25 that bid are extremely conditional.

Auction Proceedings

1
2     Starting with the Hilco debt
3 commitment, as we all recognize it is a
4 commitment letter. It is therefore just
5 a commitment, it is subject to definitive
6 documentation which has not been
7 negotiated.
8     Further the closing conditions
9 that are set forth in the Hilco
10 commitment are stated to include, but may
11 ultimately in the definitive
12 documentation include other or additional
13 conditions. But the ones that are
14 listed, and in particularly I would like
15 to draw attention to the fact that it is
16 subject to a material adverse effect,
17 that is a small M, small A and a small E,
18 that a material adverse effect in the
19 Hilco document is not defined.
20     Moreover the standard by which a
21 material adverse effect can be triggered
22 is that Delphi not suffer a material
23 adverse effect after May 31st. We would
24 like to point out that when Delphi put
25 forth the July projections, the so-called

Auction Proceedings

1
2 6 plus 6 projections which are now a part
3 of our MSPA, and yours, that is and
4 CSI's, we believe, Umicore believes that
5 those July projections indicated that
6 there had been under the terms of our
7 MSPA a material adverse effect subsequent
8 to May 31st.
9     We have agreed to waive that. We
10 are not pursuing that as a material
11 adverse change under our MSPA by having
12 agreed today to accept the July
13 projections as the starting point. So
14 our document is still subject to a
15 material adverse effect, but it is as of
16 today, as of the July projections that
17 is.
18     Your equity documents -- back on
19 the debt for one moment. Another
20 condition obviously is that the equity
21 offering be completed, and that the
22 equity amount is raised thereunder. We
23 think that is highly conditional. If you
24 look at the Canaccord placement agreement
25 we believe that first and foremost it is

Auction Proceedings

1
2 subject to the debt closing. So it is
3 highly conditional in the respects that
4 we just spoke about.
5     It also is subject to a material
6 adverse effect since May 31st. It
7 reserves, unlike the debt document, it
8 reserves changes that might be reflected
9 in the merger model that was apparently
10 agreed to as between CSI and Canaccord.
11 We have not seen that so we can't really
12 assess what that does to the material
13 adverse effect since May 31st, but we
14 point out that in our view that MAC makes
15 the equity financing highly conditional.
16     Finally the equity commitment with
17 Canaccord indicates that the acquisition
18 agreement, i.e. your MSPA, the CSI MSPA
19 needs to be unconditional except for the
20 payment of the purchase price by
21 September 15th. There is a provision to
22 extend that to November 15th and
23 supposedly Canaccord can't unreasonably
24 withhold their consent to that, but it is
25 subject to their consent, and therefore

Auction Proceedings

1
2 even the extension of the equity
3 commitment in our view is highly
4 conditional.
5     In sum we reiterate that our view
6 is that the CSI bid should not have been
7 qualified, and it is for that reason that
8 we insisted earlier this afternoon with
9 our subsequent bid, it is for that reason
10 that we impose what we have called the
11 purchase price toggle mechanism that
12 would enable that purchase price to be
13 reduced to our original bid price in the
14 event that you don't close.
15     If we are not the successful
16 bidder and CSI is the successful bidder,
17 but you don't close, we think because of
18 the highly conditional nature of CSI's
19 financing package that the end result
20 would be that we think that the price
21 should go back.
22     The justification for that is that
23 we don't think we should be here today
24 with all due respect. We don't think
25 there should have been an auction in this

Auction Proceedings

1
2 instance because of the unqualified
3 nature of your bid.
4     Mr. Lyons after we submitted our
5 subsequent bid this morning indicated
6 that Delphi and Skadden do not agree with
7 our ability to have that type of a toggle
8 mechanism in our purchase price.
9     We for purposes of going forward
10 with the auction are willing to try to
11 put that issue aside. We would like on
12 the record to reserve our rights to
13 revisit that issue at the sale hearing in
14 the event that in the course of the
15 auction today Umicore ends up as the
16 second or unsuccessful bidder.
17     In other words we would like the
18 right at the hearing to discuss with the
19 Bankruptcy Court the reasons why we had
20 the toggle mechanism in there, and to
21 reinsert it in our bid if the court will
22 allow us to.
23     However for purposes of the
24 auction and going forward we will drop
25 the toggle and we will amend our

Auction Proceedings

1
2 subsequent bid to have all of the
3 features that I outlined earlier this
4 afternoon, with the exception that we
5 will remove the toggle price mechanism so
6 that our purchase price, cash purchase
7 price or bid value if you will, Mr.
8 Lyons, in the context of our subsequent
9 bid is 65 million.
10     I would ask Mr. Lyons permission
11 just to make sure that no one else on the
12 Umicore side has any interest in
13 supplementing my remarks.
14     Then we are done.
15     MR. LYONS: We would like to take
16 a brief recess.
17     (Recess taken.)
18     MR. LYONS: We are back on the
19 record.
20     I believe that Umicore's
21 representative would like to make a
22 further statement.
23     MR. KEMP: During the adjournment
24 it was brought to our attention by Mr.
25 Lyons that we needed to clarify our prior

Auction Proceedings

1
2 statement, and I would like to make it
3 clear that our $65 million subsequent
4 bid, while we reserve our rights as we
5 discussed, it does not include the toggle
6 mechanism. We have waived and we are
7 removing the toggle mechanism.
8     MR. LYONS: Thank you.
9     On behalf of Delphi, Delphi
10 contests the facts and arguments that
11 Umicore has made on the record. However
12 in the interest of moving this auction
13 forward we are going to just reserve our
14 rights. I spoke with counsel for Umicore
15 about this, we are not going to make a
16 specific denial of each and every
17 statement. We are going to have a
18 general reservation of all arguments,
19 defenses, claims, objections or anything
20 else under the sun in response to the
21 statement.
22     Also I would like to clarify with
23 Umicore that by proceeding forward with
24 the auction Delphi and its constituencies
25 and frankly any other party in interest

1        Auction Proceedings
2  has not waived any such defenses, claims,
3  arguments and the like.
4        MR. KEMP:  We confirm.
5        MR. LYONS:  Is that acceptable to
6  CSI?
7        MR. ZAGORE:  That is acceptable.
8        MR. LYONS:  Okay, now to clarify
9  the terms of the last offer, I believe
10  they are on the record, I believe we
11  understand them.  And with that having
12  been said, Delphi believes the bid on the
13  table, the revised subsequent bid by
14  Umicore is a higher bid.
15        Now I would like to invite CSI to
16  respond.
17        MR. ZAGORE:  In connection with
18  our subsequent bid and prior to making
19  the bid CSI does object to the statements
20  made by counsel to Umicore.  The
21  statements mischaracterize the CSI bid as
22  being subject to financing conditions.
23        It is not subject to financing
24  conditions.  In our view there were no
25  waived bid procedures, and the material

1        Auction Proceedings
2  adverse change provisions of our bid ran
3  off the six plus six analysis, not off of
4  the earlier January projections that were
5  referenced.
6        That being said, we are making our
7  bid in the understanding that the $65
8  million was a $65 million bid value bid
9  in accordance with the bid valuation
10  sheet which was distributed earlier.
11        MR. LYONS:  That certainly is the
12  debtor's understanding.  Is that
13  Umicore's understanding as well?
14        MR. KEMP:  Exhibit 7.
15        MR. LYONS:  Exhibit 7.
16        Would CSI like to submit a
17  subsequent bid?
18        MR. CALL:  CSI's bid is $65.5
19  million bid value.
20        MR. LYONS:  Delphi believes that
21  is a higher bid.  We would like to turn
22  the floor back to Umicore to invite a
23  subsequent bid.
24        MR. KEMP:  Umicore increases its
25  bid to 70 million.

1        Auction Proceedings
2        MR. LYONS:  Delphi believes that
3  to be a higher bid in conformity with the
4  bid procedures.  Would CSI like to
5  respond?
6        MR. ZAGORE:  Can we recess for a
7  minute.
8        MR. LYONS:  Brief recess.
9        (Recess taken.)
10        MR. LYONS:  Back on the record.
11  CSI.
12        MR. CALL:  CSI increases its bid
13  value to 70.5.
14        MR. LYONS:  Delphi believes CSI's
15  70.5 bid is a higher bid.  Would Umicore
16  like to respond?
17        MR. KEMP:  Umicore will increase
18  its bid to 75 million.
19        MR. LYONS:  Delphi believes
20  Umicore's bid of $75 million is a higher
21  bidder.  Would CSI like to respond?
22        MR. CALL:  No.  That was our final
23  bid.
24        MR. LYONS:  Okay.  Pursuant to the
25  bidding procedures Delphi will adjourn --

1        Auction Proceedings
2  will not adjourn the hearing, we will
3  take a recess to consider which bid will
4  be designated as the successful bid and
5  which bid will be designated the
6  alternate bid.
7        (Recess taken.)
8        MR. LYONS:  Back on the record.
9        Pursuant to the bidding procedures
10  Delphi during the recess did deliberate
11  to determine of the two bids, the one $75
12  million bid proposed by Umicore, and the
13  $70.5 million bid proposed by CSI, as to
14  which bid would be designated the
15  successful bid and which bid would be
16  designated the alternate bid.
17        After considering a number of
18  considerations, other considerations,
19  including the bid value as discussed
20  during the auction, the closing risks,
21  execution risks and other factors, and
22  after consulting with our various estate
23  constituents, and also pending
24  confirmation from Umicore of the
25  following, and I will ask for the

1       Auction Proceedings
2 confirmation right now:
3       Umicore, please confirm that all
4 competition approvals have been obtained?
5       MR. KEMP:  Yes, that is correct.
6       MR. LYONS:  Umicore has obtained
7 board approval?
8       MR. KEMP:  Yes.
9       MR. LYONS:  Does Umicore agree to
10 waive any litigation or claims regarding
11 the sale process and the matters
12 discussed on the record here today at the
13 hearing.
14       MR. KEMP:  Yes, only as to the
15 debtor's estate.
16       MR. LYONS:  The debtors and their
17 estates.
18       MR. KEMP:  Yes.
19       MR. LYONS:  Finally does Umicore
20 confirm that the calculation of the
21 higher bid regarding the reimbursement
22 of -- I am sorry, the deduction of the
23 purchase price for employees ultimately
24 hired in Flynt, Troy and Tulsa as
25 described in your bid shall be consistent

1       Auction Proceedings
2 with the bidding credit calculation,
3 notes and methodology contained in the
4 bid sheet which is reflected at Exhibit
5 7, applied in a reasonable manner and not
6 to exceed the numbers contained in the
7 examples in the notes to Exhibit 7?
8       MR. KEMP:  Yes, that is correct.
9       MR. LYONS:  Based upon those
10 confirmations the debtors designate
11 Umicore's bid as the successful bid, and
12 designate CSI's bid as the alternate bid
13 pursuant to the procedures.
14       Does anyone have anything further
15 to say?
16       MR. KEMP:  No.
17       MR. ZAGORE:  No.
18       MR. LYONS:  Thank you for your
19 participation and we look forward to
20 having this approved at the sale hearing.
21       This concludes the auction.
22       (Time noted:  9:00 p.m.)
23
24
25

1
2      C E R T I F I C A T E
3 STATE OF NEW YORK   )
4       : ss.
5 COUNTY OF NEW YORK   )
6
7       I, Philip Rizzuti, a Notary
8 Public within and for the State of New
9 York, do hereby certify:
10       That the within proceedings are
11 a true and accurate record.
12       I further certify that I am not
13 related to any of the parties to this
14 action by blood or marriage, and that I am
15 in no way interested in the outcome of this
16 matter.
17       IN WITNESS WHEREOF, I have
18 hereunto set my hand this 9th day of
19 August, 2007.
20      _____
21       PHILIP RIZZUTI
22
23
24
25

1
2 ---------------- I N D E X ----------------
3 WITNESS     EXAMINATION BY     PAGE
4 None
5
6 ------------ INFORMATION REQUESTS -----------
7 None
8
9 ----------------- EXHIBITS -----------------
10 Exhibit 1, sale motion,     8
11 Exhibit 2, black line of the sale  8
12 order,
13 Exhibit 3, bid procedures order,   8
14 Exhibit 4, bid submitted by Umicore  9
15 including master asset and sale
16 purchase dated June 5, 2007, and
17 disclosure schedules,
18 Exhibit 5, bid submitted by     9
19 Catalyst Solutions,
20 Exhibit 6, sign in sheet,     9
21 Exhibit 7, bid sheet,     10
22 Exhibit 8, black line MSPA    10
23 reflecting modifications from asset
24 sale and purchase agreement between
25 CSI and Delphi dated July 31, 2007,

Page 50

1
2    Exhibit 9, revised schedule 3.2.1    10
3    to agreement,
4    Exhibit 10, certain lease governing    11
5    real property in Luxembourg,
6    Exhibit 11, certain lease governing    11
7    property in Shanghai, China,
8    Exhibit 12, red line of Umicore    11
9    agreement against the original
10    agreement filed with the sale
11    motion,
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**A**

**ability (2)**
33:17 39:7
**able (2)**
26:15,18
**accept (2)**
33:22 36:12
**acceptable (2)**
42:5,7
**accepted (2)**
16:10 34:16
**accepting (2)**
32:17,25
**accurate (1)**
48:11
**acquisition (1)**
37:17
**action (1)**
48:14
**add (2)**
15:6 23:25
**addition (3)**
23:23 33:14,24
**additional (7)**
14:18 15:2,5 23:25
25:10 33:11 35:12
**adjourn (2)**
44:25 45:2
**adjournment (1)**
40:23
**adjustment (5)**
29:5,6,7,11,20
**administered (1)**
6:12
**admitted (1)**
14:22
**adverse (10)**
35:16,18,21,23 36:7
36:11,15 37:6,13
43:2
**advise (1)**
16:3
**advised (2)**
13:10 14:14
**advisors (4)**
11:25 12:3,25 15:22
**affiliate (1)**
6:6
**affirm (4)**
16:23 17:11 18:25
19:11
**afternoon (3)**
6:3 38:8 40:4
**agent (1)**
14:13
**agree (8)**
18:9,10 19:9,15 20:5
20:8 39:6 46:9

**agreed (5)**
19:5 29:18 36:9,12
37:10
**agreement (34)**
6:20 10:6,7,10,13,15
10:19,20,22 11:15
11:16,19,19 12:11
12:17,20 13:19,20
13:23,24 19:4 21:8
21:23 22:7,10,13,15
22:17 36:24 37:18
49:24 50:3,9,10
**agreements (2)**
19:22 21:19
**ALI (1)**
4:20
**allow (3)**
14:17 17:5 39:22
**alternate (5)**
16:2,7 45:6,16 47:12
**alternative (1)**
26:7
**amend (1)**
39:25
**amends (2)**
21:18 22:12
**amount (5)**
23:24 24:2 25:8 32:4
36:22
**analysis (1)**
43:3
**ancillary (1)**
13:20
**ANDREW (1)**
5:4
**and/or (1)**
21:3
**apparently (1)**
37:9
**applied (1)**
47:5
**apply (1)**
29:14
**appreciate (1)**
32:10
**approached (1)**
31:13
**appropriate (2)**
17:7 32:12
**approval (7)**
6:14,17 26:5,15,21
30:18 46:7
**approvals (1)**
46:4
**approved (2)**
30:17 47:20
**approves (1)**
16:12

**approving (1)**
7:4
**arguments (3)**
41:10,18 42:3
**Arps (3)**
2:7 3:4 6:4
**arrangements (1)**
32:24
**ascribed (1)**
20:24
**ascribes (1)**
23:7
**aside (1)**
39:11
**assess (1)**
37:12
**asset (10)**
6:20 8:24 9:3 10:7,14
11:23 12:16 19:3
49:15,23
**assets (6)**
6:18 7:16 12:13 14:5
32:11,13
**assigned (1)**
14:8
**assuming (1)**
24:24
**attached (2)**
8:11 13:5
**attend (1)**
13:9
**attendees (1)**
9:16
**attending (1)**
14:15
**attention (2)**
35:15 40:24
**Attorneys (3)**
3:6,16 4:5
**auction (75)**
1:3,9 2:6 6:1 7:1,13
7:16,21,23 8:1,3 9:1
9:16 10:1 11:1 12:1
13:1,9,11,16 14:1,6
14:15 15:1,16 16:1
16:8,20,25 17:1,14
18:1,4 19:1 20:1,11
20:14,17 21:1 22:1
23:1 24:1 25:1 26:1
27:1,17 28:1,3 29:1
30:1 31:1 32:1 33:1
34:1 35:1 36:1 37:1
38:1,25 39:1,10,15
39:24 40:1 41:1,12
41:24 42:1 43:1
44:1 45:1,20 46:1
47:1,21
**August (7)**
1:11 2:3 7:13 13:7,13

30:20 48:19
**authority (3)**
17:21,24 18:2
**authorized (4)**
16:23 17:12,18 31:7
**Avenue (1)**
3:17
**aware (4)**
7:20 11:22 27:10
33:25
**AZIM (1)**
4:20

**B**

**back (7)**
31:6 36:18 38:21
40:18 43:22 44:10
45:8
**bankruptcy (5)**
6:9 7:24 16:11,14
39:19
**based (3)**
22:23 28:10 47:9
**Bear (4)**
4:25 5:3,4,5
**behalf (6)**
16:17 17:4 18:5,8
20:7 41:9
**believe (12)**
18:12 24:12 31:7
32:17,22 34:11,21
36:4,25 40:20 42:9
42:10
**believes (7)**
15:24 36:4 42:12
43:20 44:2,14,19
**best (8)**
13:15 15:9 19:2,7,12
19:15,24 27:20
**bid (177)**
6:14,15 7:11 8:22 9:2
9:7,11,22,23 10:2
12:3,4,8,8,10,22
13:4,4,14,17,18
14:2,3,5 15:9,15
16:4,5,6,7,9,10
20:21 21:16,18,22
21:24 22:3,3,18,21
22:22,24 23:3,4,7,8
23:9,9,11,18,19,21
23:23,24 24:12,18
24:20,22,24 25:2,14
25:16,20,22,25 26:2
26:6,7,9,10,12,14
26:16,18,19 27:3,8
27:8,11,13,14,15,19
27:20,21 28:11,12
28:13,16,18,20,21
28:25 30:9,14,16,18

30:23 31:2,12,16,17
31:18 32:17,20 33:2
33:7,9,13,13,15,16
33:25 34:4,5,8,23
34:25 38:6,9,13
39:3,5,21 40:2,7,9
41:4 42:12,13,14,18
42:19,21,25 43:2,7
43:8,8,9,17,18,19
43:21,23,25 44:3,4
44:12,15,15,18,20
44:23 45:3,4,5,6,12
45:13,14,15,15,16
45:19 46:21,25 47:4
47:11,11,12,12
49:13,14,18,21
**bidder (19)**
6:16 15:14,25 16:2
23:17 24:4 25:22
26:4,8,10,11,13,17
26:20 28:12 38:16
38:16 39:16 44:21
**bidders (6)**
14:8 16:16 17:19
18:17 26:22 28:5
**bidding (18)**
6:23 7:5,8,10,17 8:18
8:19 13:2,6 14:21
14:25 23:5 27:14,18
31:19 44:25 45:9
47:2
**bids (11)**
13:12 14:18 15:2,13
20:20,23 23:20
24:24 27:5,7 45:11
**BILL (1)**
4:22
**binding (2)**
12:10 18:6
**black (10)**
8:9,10,14 10:4,12
21:5 22:5,13 49:11
49:22
**blood (1)**
48:14
**board (1)**
46:7
**bottom (2)**
24:13,21
**BRAWN (1)**
5:13
**break (3)**
24:3,14 25:9
**Brian (2)**
3:11 13:8
**brief (2)**
40:16 44:8
**brought (2)**
34:13 40:24

**burdensome (1)**
34:9
**business (10)**
6:19 7:17 11:24 12:14
15:23 19:14 20:4
25:24 26:3 30:19

_____

**C**

**C (5)**
3:2,21 4:2 48:2,2
**calculate (1)**
25:16
**calculated (2)**
29:12,24
**calculation (3)**
27:12 46:20 47:2
**call (16)**
5:7 17:15,16,25 18:10
19:15 20:8,16 21:25
22:20 25:18 26:25
28:9 43:18 44:12,22
**called (1)**
38:10
**Canaccord (4)**
36:24 37:10,17,23
**capacity (1)**
18:23
**CapitalWorks (1)**
5:10
**case (2)**
6:12 29:19
**cases (1)**
6:8
**cash (4)**
28:19 30:12,22 40:6
**Catalyst (12)**
1:3 6:18 7:17 9:8,12
11:24 14:5 17:17
19:14 20:4 25:24
49:19
**Catalyst's (1)**
12:14
**caucusing (1)**
14:9
**CEO (1)**
17:17
**certain (15)**
6:14,15 7:5 8:12
10:25 11:3,8,10
12:2 21:10,12,15
22:8 50:4,6
**certainly (1)**
43:11
**certify (2)**
48:9,12
**change (3)**
30:10 36:11 43:2
**changes (4)**

8:12 22:13 28:25 37:8
**Chapter (1)**
6:7
**Charles (1)**
17:16
**CHARLIE (1)**
5:7
**China (4)**
11:9,11 21:13 50:7
**circulated (1)**
9:24
**claims (3)**
41:19 42:2 46:10
**clarification (1)**
25:19
**clarifications (6)**
20:19 21:3,15 22:9
23:6 33:12
**clarify (4)**
24:7 40:25 41:22 42:8
**clarity (1)**
23:18
**clear (2)**
18:17 41:3
**clearly (2)**
26:22 28:5
**Cleveland (1)**
4:8
**close (7)**
16:8 26:16,18,19
30:19 38:14,17
**closes (1)**
24:5
**closing (7)**
26:3 27:23 29:5,10
35:8 37:2 45:20
**colleague (1)**
13:8
**comment (2)**
24:8,14
**commitment (6)**
35:3,4,5,10 37:16
38:3
**commitments (3)**
34:21,22,24
**committee (5)**
12:2 14:10,11 18:21
18:21
**communications (1)**
19:22
**companies (2)**
17:22 18:7
**company (1)**
18:6
**comparison (1)**
27:6
**compensate (1)**
25:9

**competing (4)**
11:23 12:7 13:3 14:18
**competition (1)**
46:4
**competitive (1)**
6:23
**complete (1)**
7:22
**completed (1)**
36:21
**completion (1)**
6:22
**comply (1)**
31:18
**comprised (2)**
25:3,8
**concluded (1)**
13:14
**concludes (2)**
30:25 47:21
**condition (2)**
30:21 36:20
**conditional (10)**
32:23 34:9,12,14,25
36:23 37:3,15 38:4
38:18
**conditions (5)**
25:25 35:8,13 42:22
42:24
**conducted (1)**
32:2
**conference (1)**
14:9
**confirm (13)**
17:20 18:3 19:20
21:17,25 22:11
25:13 26:23 28:6,23
42:4 46:3,20
**confirmation (2)**
45:24 46:2
**confirmations (2)**
22:23 47:10
**conformity (1)**
44:3
**connection (1)**
42:17
**consent (2)**
37:24,25
**consider (2)**
23:15 45:3
**consideration (1)**
12:12
**considerations (4)**
23:14 27:22 45:18,18
**considered (1)**
31:17
**considering (1)**
45:17

**consistent (1)**
46:25
**constituencies (4)**
15:12,18 18:14 41:24
**constituents (3)**
14:12 28:2 45:23
**constitutes (4)**
21:24 22:17 25:22
27:19
**consult (2)**
15:19 27:25
**consulting (1)**
45:22
**consummate (1)**
33:18
**contacted (1)**
13:8
**contained (4)**
21:21 22:15 47:3,6
**contains (3)**
19:3 21:15 22:8
**contests (1)**
41:10
**context (1)**
40:8
**copy (9)**
13:19 14:23 21:6,8,11
21:13 22:7 32:15
33:6
**Corporation (1)**
6:6
**correct (2)**
46:5 47:8
**counsel (4)**
6:5 24:11 41:14 42:20
**counsel's (1)**
31:15
**COUNTY (1)**
48:5
**course (1)**
39:14
**court (10)**
6:9 7:4,20,24 16:11
16:14 26:5,21 39:19
39:21
**credit (1)**
47:2
**creditor (3)**
14:11 15:12 18:13
**creditor's (2)**
14:10 18:20
**credits (2)**
23:22 25:5
**CREECH (1)**
4:15
**CROWLEY (1)**
5:15
**CSFB (1)**

4:20
**CSI (59)**
4:5 5:7,8,9 9:8 10:8
10:11,15 12:9,11
13:3,13,14,18 14:4
15:8 17:10,13 19:11
19:19 20:2,7,13,13
20:19 21:4,17,17
23:10,21,24,24 24:5
24:7,11,25 28:8,11
32:3,10,20 33:5
34:13,23 37:10,18
38:6,16 42:6,15,19
42:21 43:16 44:4,11
44:12,21 45:13
49:25
**CSI's (13)**
12:10,15 19:13 21:16
21:24 22:3 23:2
24:19 36:4 38:18
43:18 44:14 47:12
**current (11)**
10:9 21:24 22:3,17,21
22:21 23:3,4,9,10
24:20
**Currently (1)**
24:18

_____

**D**

**D (2)**
6:11 49:2
**DAN (1)**
5:15
**DANG (1)**
5:14
**date (14)**
7:12 8:8,16,21 9:6,13
9:21 10:3,17,23
11:6,13,21 33:24
**dated (11)**
6:20 8:24 9:4 10:8,10
10:16 11:15 19:4,13
49:16,25
**DAVE (1)**
5:6
**David (4)**
4:9 5:9,12 24:9
**day (1)**
48:18
**days (1)**
26:3
**deadline (4)**
7:11 12:3 33:13,25
**debt (6)**
34:22,24 35:2 36:19
37:2,7
**debtor (1)**
14:14
**debtors (5)**

6:6,7 7:10 46:16
47:10
**debtor's (2)**
43:12 46:15
**decide (1)**
16:18
**declaration (1)**
27:11
**deduction (1)**
46:22
**defenses (2)**
41:19 42:2
**defined (2)**
13:4 35:19
**definitive (2)**
35:5,11
**deliberate (2)**
15:22 45:10
**Delphi (61)**
1:3 3:6 4:13,14,15,16
4:17,18,19 6:5,13
6:21 10:8,11,15
11:25 12:20,25 13:2
13:13,17 15:16,21
16:3,7,11 19:5
20:18,21,25 22:24
23:7,15 26:4,14,18
27:2,18,25 31:14
32:25 33:11,20,21
34:2,6,17 35:22,24
39:6 41:9,9,24
42:12 43:20 44:2,14
44:19,25 45:10
49:25
**Delphi's (2)**
20:3 27:10
**DEMPSEY (1)**
4:4
**denial (1)**
41:16
**DENISE (1)**
3:10
**depending (2)**
15:21 30:2
**DeRAEDT (1)**
4:14
**described (2)**
8:6 46:25
**designate (3)**
16:16 47:10,12
**designated (7)**
16:20 17:9,15 45:4,5
45:14,16
**desires (1)**
15:14
**detail (1)**
23:15
**determination (1)**
28:4

**determine (5)**
15:23 27:7,18 34:7
45:11
**determined (3)**
13:2 16:5,6
**determining (1)**
23:16
**differences (5)**
20:22,24 23:2 25:6
27:4
**diligence (1)**
32:7
**DIP (1)**
14:13
**disagree (1)**
31:20
**disclosure (3)**
8:25 9:5 49:17
**discuss (3)**
20:19 23:14 39:18
**discussed (3)**
41:5 45:19 46:12
**discussions (2)**
19:21 20:25
**distribute (1)**
13:22
**distributed (3)**
8:2 13:18 43:10
**District (1)**
6:10
**docket (4)**
7:2,2,6,14
**document (3)**
35:19 36:14 37:7
**documentation (3)**
32:7 35:6,12
**documents (5)**
14:22,24 32:16,18
36:18
**dollars (1)**
28:20
**DOUG (1)**
4:25
**downward (2)**
29:7,20
**draft (1)**
20:21
**drafts (1)**
9:24
**Drain (1)**
6:11
**draw (1)**
35:15
**drop (1)**
39:24
**due (5)**
25:5 32:3,7,23 38:24
**D.C (1)**

3:18

---

### E

**E (9)**
3:2,2,13 4:2,2 35:17
48:2,2 49:2
**earlier (4)**
38:8 40:3 43:4,10
**easiest (1)**
24:17
**effect (12)**
16:13 29:6 30:11,16
35:16,18,21,23 36:7
36:15 37:6,13
**effort (1)**
32:4
**either (2)**
25:22 29:24
**EMANUEL (1)**
3:21
**employ (1)**
29:9
**employee (2)**
29:25 30:2
**employees (8)**
29:8,14,16,19,23 30:4
30:7 46:23
**enable (1)**
38:12
**encourage (1)**
15:7
**ends (1)**
39:15
**enforce (1)**
26:6
**enhancements (5)**
20:20 21:2,16 22:9
33:12
**entered (4)**
6:25 7:4,6 16:13
**entitled (2)**
13:9 14:4
**entry (1)**
7:2
**equity (10)**
14:11 18:21 34:22,24
36:18,20,22 37:15
37:16 38:2
**ERIC (1)**
4:15
**ESQ (10)**
3:9,10,11,12,13,19,20
3:21 4:9,10
**estate (2)**
45:22 46:15
**estates (1)**
46:17
**evaluation (1)**

12:24
**event (4)**
24:3,23 38:14 39:14
**Everybody (1)**
6:2
**evidence (2)**
33:17,22
**EXAMINATION (1)**
49:3
**example (3)**
24:6,16 26:8
**examples (1)**
47:7
**exceed (1)**
47:6
**exception (1)**
40:4
**exceptions (1)**
12:21
**excess (1)**
29:15
**executed (1)**
33:6
**execution (2)**
27:23 45:21
**exercise (1)**
15:23
**Exhibit (55)**
8:5,7,9,13,14,17,19
8:22 9:2,7,9,11,14
9:19,22 10:2,4,12
10:18,21,24 11:3,7
11:10,14,18 12:9
13:5 19:2,12 21:7,9
21:12,14 22:8,14,25
28:24 30:8 43:14,15
47:4,7 49:10,11,13
49:14,18,20,21,22
50:2,4,6,8
**exhibits (4)**
7:25 8:4 21:20 49:9
**expressing (1)**
31:25
**expressly (1)**
23:13
**extend (1)**
37:22
**extended (2)**
7:10 12:5
**extension (3)**
7:14,19 38:2
**extent (3)**
17:6 29:22 30:21
**extremely (1)**
34:25
**E-mail (1)**
13:10

---

### F

**F (1)**
48:2
**facilitate (1)**
27:6
**facility (2)**
21:11,13
**fact (1)**
35:15
**factors (2)**
27:24 45:21
**facts (1)**
41:10
**faith (1)**
34:7
**features (1)**
40:3
**fee (3)**
24:3,14 25:9
**Fern (2)**
3:11 13:8
**file (1)**
7:22
**filed (4)**
6:13 11:17,20 50:10
**final (5)**
9:23 19:7 26:13 30:18
44:22
**Finally (3)**
27:2 37:16 46:19
**financing (10)**
32:15,18,23 33:23
34:12,20 37:15
38:19 42:22,23
**find (2)**
32:19,20
**first (8)**
15:16 19:19 20:9 21:5
25:14 26:9 29:2
36:25
**Flom (2)**
3:4 6:4
**floor (2)**
14:17 43:22
**Flynt (4)**
29:8,13 30:7 46:24
**following (6)**
20:25 21:2 25:4 30:11
31:12 45:25
**forced (1)**
32:6
**foremost (1)**
36:25
**form (1)**
33:22
**formal (1)**
19:23
**formally (1)**

16:7
**formula (1)**
30:6
**forth (4)**
21:19 23:22 35:9,25
**forward (6)**
13:11 39:9,24 41:13
41:23 47:19
**Frank (1)**
5:14
**frankly (1)**
41:25
**free (1)**
18:15
**Fried (1)**
5:14
**FUERST (1)**
4:13
**FUKUDA (1)**
4:16
**full (1)**
17:20
**fully (1)**
18:18
**further (11)**
12:22 15:15 21:5 22:5
24:6 26:21 27:18
35:8 40:22 47:14
48:12

**G**
**game (1)**
32:16
**general (1)**
41:18
**go (5)**
8:3 24:15 31:21 34:19
38:21
**going (9)**
12:21 13:11 14:16,19
39:9,24 41:13,15,17
**good (2)**
6:2 34:7
**Goodwin (2)**
3:15 17:3
**GORMAN (1)**
5:11
**governing (6)**
10:25 11:4,8,11 50:4
50:6
**GRILLO (1)**
3:21
**GROBAN (1)**
5:12
**GRYNBERG (1)**
4:21
**guidance (1)**
15:11

**H**
**hand (3)**
20:2,3 48:18
**hearing (7)**
7:3 16:12 39:13,18
45:2 46:13 47:20
**held (2)**
2:6 7:3
**helpful (1)**
18:13
**hereunto (1)**
48:18
**higher (11)**
26:12 27:8,12,15
28:13 42:14 43:21
44:3,15,20 46:21
**highest (6)**
13:15 15:9 26:16,19
27:19 28:11
**highly (5)**
36:23 37:3,15 38:3,18
**Hilco (3)**
35:2,9,19
**hired (1)**
46:24
**Honorable (1)**
6:10
**hope (1)**
14:18
**horse (1)**
6:16
**Houlihan (1)**
5:15
**Hovey (2)**
3:19 17:2
**hypothetical (1)**
24:19

**I**
**identification (12)**
8:8,15,20 9:6,13,20
10:3,17,23 11:5,12
11:21
**impose (1)**
38:10
**include (4)**
21:19 35:10,12 41:5
**including (6)**
8:23 9:3,9 27:22
45:19 49:15
**inconsistent (2)**
21:22 22:16
**increase (2)**
30:12 44:17
**increases (2)**
43:24 44:12
**increments (1)**
15:3

**independent (1)**
12:24
**indicated (6)**
23:6 24:21 31:14
33:16 36:5 39:5
**indicates (1)**
37:17
**informal (1)**
19:23
**INFORMATION (1)**
49:6
**informed (1)**
27:16
**initially (1)**
33:9
**insert (1)**
29:2
**insisted (1)**
38:8
**instance (1)**
39:2
**insure (1)**
18:16
**interest (3)**
40:12 41:12,25
**interested (1)**
48:15
**invite (2)**
42:15 43:22
**irrevocable (1)**
25:23
**issue (2)**
39:11,13
**issues (1)**
15:11
**i.e (1)**
37:18

**J**
**J (1)**
3:19
**January (1)**
43:4
**JASON (1)**
3:12
**JEFFREY (1)**
4:10
**Jeffries (2)**
5:12,13
**JOB (1)**
1:24
**JOERG (1)**
4:23
**John (7)**
3:9 4:13,18 5:10 6:3
17:6 31:11
**jointly (1)**
6:11

**JOSEPH (1)**
5:5
**JOSHUA (1)**
3:20
**JUDE (1)**
5:11
**judgement (1)**
15:24
**July (15)**
7:9,11,12 10:8,16
12:7 19:13 21:16,18
21:22 35:25 36:5,12
36:16 49:25
**June (11)**
6:13,21 7:3,6 8:24 9:4
19:4 22:10,12,15
49:16
**justification (1)**
38:22

**K**
**KALOUDIS (1)**
3:10
**KATIE (1)**
5:14
**KAY (1)**
4:19
**Kemp (26)**
3:19 17:2,2,23 18:8
19:9 20:5,12 22:19
25:17 26:24 28:7,14
28:17 31:10 40:23
42:4 43:14,24 44:17
46:5,8,14,18 47:8
47:16
**KETCHENS (1)**
3:12
**Key (1)**
4:6
**KIRK (1)**
5:3
**KLATZKIN (1)**
3:20
**know (2)**
14:7 16:9
**knowledge (5)**
19:2,7,12,16,24

**L**
**LACHMANN (1)**
4:24
**late (1)**
32:16
**Latham (1)**
5:11
**lease (8)**
10:25 11:3,8,10 21:10
21:12 50:4,6

**LEE (1)**
5:5
**lenders (1)**
14:14
**letter (4)**
12:10 13:18,23 35:4
**light (1)**
27:21
**line (11)**
8:10,14 10:5,12 11:15
11:18 21:6 22:13
49:11,22 50:8
**lined (1)**
22:5
**lines (1)**
8:10
**listed (1)**
35:14
**litigation (1)**
46:10
**LLP (4)**
3:5,15 4:4 6:5
**Lokey (1)**
5:15
**look (2)**
36:24 47:19
**lot (1)**
32:6
**Luxembourg (4)**
11:2,4 21:10 50:5
**Lyons (61)**
3:9 6:2,3 8:9,17,22
9:7,14,22 10:4,18
10:24 11:7,14,22
17:8,18 18:3,11
19:10,17 20:6,9,13
20:17 22:2,20 24:15
25:19 27:2 28:8,10
28:15 31:3,6,13
39:4 40:8,10,15,18
40:25 41:8 42:5,8
43:11,15,20 44:2,8
44:10,14,19,24 45:8
46:6,9,16,19 47:9
47:18

**M**
**M (1)**
35:17
**MAC (1)**
37:14
**making (3)**
28:3 42:18 43:6
**manner (2)**
25:13 47:5
**MARC (1)**
4:21
**MARGARET (1)**

4:16
**marked (21)**
7:25 8:7,15,20 9:5,12
9:20 10:2,16,22
11:5,12,20 12:9,23
13:18 21:7,9,11,14
22:7
**MARKS (1)**
4:10
**marriage (1)**
48:14
**master (12)**
6:19 8:23 9:3 10:5,9
10:12 12:11,16,19
19:3 22:6 49:15
**material (13)**
12:15,18 20:22 35:16
35:18,21,22 36:7,10
36:15 37:5,12 42:25
**materially (2)**
34:8,14
**materials (1)**
9:9
**matter (1)**
48:16
**matters (1)**
46:11
**McINTOSH (1)**
5:3
**Meagher (2)**
3:4 6:4
**mean (2)**
27:13 34:23
**means (1)**
27:3
**mechanism (6)**
38:11 39:8,20 40:5
41:6,7
**meet (3)**
15:16,17,22
**MEISLER (1)**
3:13
**memorandum (2)**
13:19,20
**merger (1)**
37:9
**met (2)**
20:18 30:22
**methodology (1)**
47:3
**MICHAEL (1)**
4:24
**million (36)**
12:12 23:8,10,25
24:13,20,25 25:2,3
25:5,7,10,11 26:9
26:11,12,14,17,20
28:12,19,22 30:13

30:13,15,24 40:9
41:3 43:8,8,19,25
44:18,20 45:12,13
**minute (2)**
34:11 44:7
**mischaracterize (1)**
42:21
**model (1)**
37:9
**modifications (3)**
10:6,14 49:23
**moment (1)**
36:19
**monetary (1)**
20:23
**monetization (1)**
22:25
**monetize (1)**
27:4
**morning (1)**
39:5
**morning's (1)**
9:15
**motion (11)**
6:14,24,24,25 8:5,7
8:12 11:17,20 49:10
50:11
**move (1)**
34:20
**moving (1)**
41:12
**MSPA (16)**
10:5 21:6 28:23 29:17
30:10,17 33:6,16
34:10,15 36:3,7,11
37:18,18 49:22
**MSPA's (1)**
34:4
**MUELLER (1)**
5:10

_____
**N**
_____
**N (4)**
3:2,20 4:2 49:2
**name (5)**
6:3 9:18 16:22 17:2
17:11
**NATE (1)**
5:13
**nature (1)**
34:12 38:18 39:3
**necessary (2)**
24:2 25:8
**need (2)**
9:17 26:20
**needed (2)**
33:17 40:25
**needs (1)**

37:19
**negotiated (4)**
21:5 22:5 33:10 35:7
**neither (1)**
15:14
**net (1)**
23:22 25:5
**new (13)**
1:10,10 2:8,8,10 3:8,8
3:17 6:10 29:3 48:3
48:5,8
**Notary (2)**
2:9 48:7
**note (2)**
12:21,22
**noted (2)**
12:4 47:22
**notes (2)**
47:3,7
**notice (2)**
7:14,18
**November (1)**
37:22
**number (8)**
6:12 7:2,15 12:9 19:3
19:12 34:3 45:17
**numbers (1)**
47:6
**numerous (1)**
33:2
**N.W (1)**
3:17

_____
**O**
_____
**object (1)**
42:19
**objections (3)**
20:10,14 41:19
**obligations (2)**
21:21 22:14
**obtained (2)**
46:4,6
**obviate (1)**
9:17
**obviously (1)**
36:20
**offer (4)**
13:15 19:13 25:23
42:9
**offered (1)**
12:12
**offering (1)**
36:21
**offices (1)**
2:7
**Ohio (1)**
4:8
**Okay (7)**

16:15 18:24 20:6 31:3
31:6 42:8 44:24
**once (1)**
27:17
**ones (1)**
35:13
**open (2)**
14:16 26:2
**opening (6)**
22:3,21 23:3,3,9,11
**opportunity (1)**
14:17
**order (18)**
7:4,5,7,8,18 8:10,11
8:15,18,20 13:6,17
14:4 16:13 30:19
34:4 49:12,13
**original (7)**
8:11 11:16,19 12:19
30:24 38:13 50:9
**outcome (1)**
48:15
**outlined (2)**
20:22 40:3

_____
**P**
_____
**P (4)**
3:2,2 4:2,2
**package (2)**
34:13 38:19
**PAGE (1)**
49:3
**pardon (1)**
25:14
**part (1)**
36:2
**participation (3)**
18:4,19 47:19
**particularly (1)**
35:14
**parties (17)**
8:2 9:25 13:9,21,25
15:2 16:4 18:18
19:18 21:3,4 22:5
25:7,12 27:5,16
48:13
**partner (2)**
17:3 24:10
**Partners (1)**
5:6
**party (5)**
14:23 15:24,25 27:9
41:25
**passed (1)**
33:25
**PAUL (1)**
4:17
**pay (1)**

24:2
**payment (1)**
37:20
**pending (2)**
6:8 45:23
**percent (2)**
29:16,23
**period (2)**
32:5,9
**permission (1)**
40:10
**person (3)**
16:23 17:12 29:13
**Philip (4)**
1:23 2:9 48:7,21
**place (2)**
7:15 32:24
**placement (1)**
36:24
**please (6)**
17:19 18:3 19:20
27:10 28:15 46:3
**plus (3)**
25:10 36:2 43:3
**point (7)**
15:4 16:3 18:24 33:3
35:24 36:13 37:14
**portion (1)**
24:22
**possession (1)**
6:7
**possible (1)**
15:20
**POWLEN (1)**
5:6
**prepared (2)**
20:21 22:24
**present (4)**
4:12 5:2 18:14 28:2
**previous (2)**
27:8 29:17
**previously (1)**
12:23
**price (19)**
25:24 28:19 29:4,6,8
29:20 30:12,15,22
37:20 38:11,12,13
38:20 39:8 40:5,6,7
46:23
**primary (1)**
18:13
**prior (6)**
8:3 13:16 20:17 27:17
40:25 42:18
**private (1)**
14:10
**privately (1)**
15:16

**procedures (25)**
6:15 7:5,8,10,18 8:18
8:19 12:5 13:2,5,6
13:17 14:3,21,21
15:5 16:10 25:21
27:14 42:25 44:4,25
45:9 47:13 49:13
**proceeding (1)**
41:23
**proceedings (45)**
1:9 2:6 6:1 7:1 8:1 9:1
10:1 11:1 12:1 13:1
14:1 15:1 16:1 17:1
18:1 19:1 20:1 21:1
22:1 23:1 24:1 25:1
26:1 27:1 28:1 29:1
30:1 31:1 32:1 33:1
34:1 35:1 36:1 37:1
38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1
46:1 47:1 48:10
**process (4)**
6:23 20:11,15 46:11
**Proctor (2)**
3:15 17:3
**projections (6)**
35:25 36:2,5,13,16
43:4
**property (6)**
10:25 11:4,8,11 50:5
50:7
**proposal (1)**
13:3
**proposals (1)**
11:23
**proposed (4)**
12:16 33:18 45:12,13
**protections (1)**
6:15
**provide (2)**
15:10 33:17
**provided (2)**
30:16 32:15
**provision (2)**
34:18 37:21
**provisions (2)**
34:3 43:2
**Public (3)**
2:9 4:7 48:8
**PUGLIESE (1)**
4:25
**purchase (31)**
6:20 8:24 9:4 10:5,7
10:10,13,15 12:11
12:17,19 19:4 22:6
25:23 28:19 29:4,6
29:7,20 30:12,15,22
37:20 38:11,12 39:8
40:6,6 46:23 49:16

49:24
**purposes (7)**
16:19,24 17:13 23:17
28:24 39:9,23
**pursuant (10)**
6:19 7:9,17 12:4,10
14:3 20:20 44:24
45:9 47:13
**pursuing (1)**
36:10
**put (7)**
15:8 18:16 28:15
31:23 32:4 35:24
39:11
**p.m (2)**
2:4 47:22

---

**Q**

**qualified (8)**
13:4 14:2 31:17 32:21
33:2,16 34:8 38:7
**qualify (1)**
34:5
**questions (1)**
18:15
**quickly (2)**
8:4 15:20

---

**R**

**R (3)**
3:2 4:2 48:2
**raise (1)**
28:18
**raised (1)**
36:22
**ran (1)**
43:2
**rate (2)**
29:12,24
**read (1)**
14:20
**ready (1)**
6:2
**real (3)**
10:25 11:4 50:5
**really (1)**
37:11
**reason (2)**
38:7,9
**reasonable (2)**
34:17 47:5
**reasons (1)**
39:19
**receive (1)**
26:5
**received (4)**
11:25 12:8 21:2 27:15
**recess (11)**

15:15 31:4,5 40:16,17
44:6,8,9 45:3,7,10
**recognize (1)**
35:3
**record (21)**
9:15 14:20,23 16:19
16:22 17:11 18:16
18:17 28:16 31:4,7
31:21,23 39:12
40:19 41:11 42:10
44:10 45:8 46:12
48:11
**red (3)**
11:14,18 50:8
**redacted (1)**
13:22
**reduced (1)**
38:13
**refer (3)**
6:24 7:7 22:2
**referenced (1)**
43:5
**reflect (3)**
22:13 23:22 24:2
**reflected (6)**
23:19 28:24 30:8,14
37:8 47:4
**reflecting (3)**
10:6,13 49:23
**reflects (2)**
22:25 24:13
**regarding (3)**
20:3 46:10,21
**reimbursement (1)**
46:21
**reinsert (1)**
39:21
**reiterate (2)**
30:5 38:5
**relate (1)**
15:13
**related (1)**
48:13
**relating (2)**
21:10,12
**relevant (2)**
13:21 27:21
**remain (2)**
26:2 30:15
**remarks (1)**
40:13
**remind (1)**
14:25
**remove (1)**
40:5
**removing (1)**
41:7
**Reported (1)**

1:23
**reporter (1)**
7:21
**representation (1)**
20:7
**representative (11)**
16:17,21,24 17:10,13
17:16 18:25 19:11
28:2 31:8 40:21
**representatives (7)**
14:12 15:17 17:19
18:20 19:25 20:2,18
**represents (1)**
19:13
**request (1)**
16:15
**REQUESTS (1)**
49:6
**required (1)**
33:7
**requirement (3)**
26:23 28:6 33:15
**requirements (4)**
31:19 33:8,23 34:4
**requires (1)**
34:6
**reservation (1)**
41:18
**reserve (6)**
5:6 15:6 17:5 39:12
41:4,13
**reserves (2)**
37:7,8
**reset (1)**
7:12
**respect (6)**
19:17 21:4 22:4 30:6
32:3 38:24
**respective (3)**
15:13 17:22 18:6
**respects (1)**
37:3
**respond (4)**
42:16 44:5,16,21
**response (1)**
41:20
**result (1)**
38:19
**revert (1)**
30:23
**review (3)**
9:10 14:24 32:6
**reviewing (1)**
13:12
**revised (13)**
10:19,21 21:6,7 22:6
22:24 23:7,19,23
28:11 30:17 42:13

50:2
**revisit (1)**
39:13
**RICK (1)**
4:19
**right (6)**
15:6 17:5 20:5 31:10
39:18 46:2
**rights (3)**
39:12 41:4,14
**risks (3)**
27:23,23 45:20,21
**Rizzuti (1)**
1:23 2:9 48:7,21
**Robert (1)**
6:11
**RODEN (1)**
4:23
**RON (2)**
3:13 5:8
**room (2)**
14:9,13
**ROTH (1)**
4:17
**round (1)**
26:10
**RUDOLPH (1)**
5:8

---

**S**

**S (2)**
3:2 4:2
**sale (38)**
6:17,20,24,25 8:5,7
8:10,11,14,24 9:3
10:5,7,10,12,14
11:17,20 12:11,16
12:16,19 16:12 19:3
20:3,11,15 22:6
26:3 30:18 39:13
46:11 47:20 49:10
49:11,15,24 50:10
**SAMETT (1)**
5:4
**Sanders (2)**
4:4 24:10
**satisfactory (1)**
33:20
**schedule (5)**
10:18,19,21 21:8 50:2
**schedules (5)**
8:25 9:5 19:6,8 49:17
**second (3)**
25:19 30:10 39:16
**section (1)**
29:3
**see (1)**
33:9

**seek (1)**
26:15
**seeking (2)**
6:14 33:11
**seen (1)**
37:11
**sees (1)**
32:10
**September (1)**
37:21
**set (4)**
21:19 23:22 35:9
48:18
**Shanghai (4)**
11:9,11 21:13 50:7
**sharing (1)**
14:13
**SHEA (1)**
5:9
**sheet (19)**
9:15,19,23,23 10:2
12:23 22:24 23:7,20
23:23 24:22 27:3
28:11,21 30:9 43:10
47:4 49:20,21
**sheets (1)**
20:21
**short (2)**
32:5,9
**shortly (2)**
14:16,19
**shown (1)**
28:20
**side (1)**
40:12
**sign (3)**
9:15,19 49:20
**similar (1)**
12:18
**six (2)**
43:3,3
**Skadden (5)**
2:7 3:4 6:4,5 39:6
**Skadden's (1)**
31:15
**Slate (1)**
6:4
**SLATER (1)**
3:4
**small (3)**
35:17,17,17
**Solutions (4)**
9:8,12 17:17 49:19
**sorry (1)**
46:22
**Southern (1)**
6:9
**so-called (1)**

35:25
**speak (4)**
16:17,18 17:6,21
**speaking (1)**
17:4
**specific (2)**
15:4 41:16
**spoke (2)**
37:4 41:14
**Square (3)**
2:8 3:7 4:7
**Squire (2)**
4:4 24:10
**ss (1)**
48:4
**stalking (1)**
6:16
**standard (2)**
33:19 35:20
**STARON (1)**
4:22
**start (1)**
31:24
**starting (2)**
35:2 36:13
**state (6)**
2:10 9:18 16:21 17:10
48:3,8
**stated (1)**
35:10
**statement (5)**
31:9 40:22 41:2,17,21
**statements (2)**
42:19,21
**States (1)**
6:9
**stature (1)**
30:3
**status (1)**
30:3
**statutory (1)**
12:2
**Stearns (4)**
4:25 5:3,4,5
**STEVE (1)**
4:14
**subject (11)**
6:22 23:13 32:18 35:5
35:16 36:14 37:2,5
37:25 42:22,23
**submission (2)**
25:21 30:24
**submit (3)**
28:13,18 43:16
**submits (3)**
26:9,12,13
**submitted (11)**
8:23 9:2,8,11 13:15

14:2 31:16 33:6
39:4 49:14,18
**subsequent (25)**
23:21 24:24 25:2,21
25:25 27:5,6,7,11
28:18,25 30:14 31:2
31:12,18 36:7 38:9
39:5 40:2,8 41:3
42:13,18 43:17,23
**subsequently (2)**
13:22 26:11
**substantially (3)**
6:17 12:13,17
**successful (13)**
15:25 16:5 23:17 24:4
26:6 27:13,21 30:18
38:15,16 45:4,15
47:11
**suffer (1)**
35:22
**sum (1)**
38:5
**sun (1)**
41:20
**supplementing (1)**
40:13
**support (2)**
33:3 34:24
**supposedly (1)**
37:23
**sure (1)**
40:11

—————————
**T**
—————————
**T (2)**
48:2,2
**table (3)**
15:8 34:13 42:13
**take (5)**
19:18 29:18 31:4
40:15 45:3
**taken (4)**
31:5 40:17 44:9 45:7
**takes (2)**
29:9,15
**term (1)**
23:12
**terms (13)**
12:15,18 18:16 23:2
25:6,24 27:4 28:16
28:23 34:9,15 36:6
42:9
**Thank (4)**
18:11 31:11 41:8
47:18
**thereunder (1)**
36:22
**therewith (3)**

12:6 21:23 22:16
**things (2)**
27:23 33:2
**think (8)**
29:3 33:21 34:16
36:23 38:17,20,23
38:24
**three (1)**
23:6
**time (8)**
7:15 15:4,21 16:8
32:5,9,9 47:22
**Times (2)**
2:7 3:7
**title (3)**
9:18 16:22 17:11
**today (13)**
7:13 10:10 11:16 15:5
15:8 18:15,22 32:3
36:12,16 38:23
39:15 46:12
**today's (1)**
14:5
**toggle (7)**
38:11 39:7,20,25 40:5
41:5,7
**told (1)**
33:8 34:2
**topped (1)**
26:10
**Tower (1)**
4:6
**transaction (2)**
24:5 33:18
**transcribed (1)**
7:22
**transcript (1)**
7:23
**triggered (2)**
29:21 35:21
**Troy (4)**
29:8,13 30:7 46:24
**true (3)**
33:5,19 48:11
**try (1)**
39:10
**Tulsa (6)**
29:15,16,19,22 30:8
46:24
**turn (1)**
43:21
**two (5)**
16:16 20:23 26:2
28:25 45:11
**type (1)**
39:7

—————————
**U**
—————————

**UAW (1)**
18:22
**ultimately (4)**
23:16 26:13 35:11
46:23
**Umicore (69)**
3:16 4:21,22,23,24
6:16,19,22 8:23 9:3
11:15,18 12:20
13:13,21,24 14:4
15:7 16:21,24 17:4
18:8,25 19:6,18,20
19:25 20:9,10,19
22:4,11,12 23:9
24:3,4,18,23 25:9
25:14 28:6,13,17
29:9,14,17,22 31:8
32:14 36:4 39:15
40:12 41:11,14,23
42:14,20 43:22,24
44:15,17 45:12,24
46:3,6,9,19 49:14
50:8
**Umicore's (11)**
22:17,21 23:3 29:7
30:12,16,23 40:20
43:13 44:20 47:11
**unable (1)**
26:17
**unconditional (1)**
37:19
**underscore (1)**
31:22
**understand (6)**
24:7 25:13,18 26:22
28:5 42:11
**understanding (3)**
43:7,12,13
**understood (1)**
18:18
**underwriting (1)**
13:24
**United (1)**
6:8
**unqualified (1)**
39:2
**unreasonable (1)**
33:21
**unreasonably (1)**
37:23
**unsuccessful (1)**
39:16
**unwaivable (1)**
33:15
**use (4)**
14:9 23:12,18 27:3

—————————
**V**
—————————
**valuation (1)**

43:9
**value (16)**
23:8,10,12,18 24:12
24:18,20 28:12,20
30:6 32:11 40:7
43:8,19 44:13 45:19
**values (1)**
20:23
**valuing (1)**
23:20
**various (2)**
9:24 45:22
**verbal (1)**
19:23
**version (2)**
10:9 13:23
**versions (1)**
19:8
**view (8)**
31:15 33:4,14,20
37:14 38:3,5 42:24
**vision (1)**
32:12
**von (1)**
4:23

**W**

**waive (3)**
34:17 36:9 46:10
**waived (4)**
34:3 41:6 42:2,25
**waivers (1)**
34:19
**want (3)**
16:18 23:5 24:8
**Washington (1)**
3:18
**Watkins (1)**
5:11
**way (4)**
24:17 25:15 32:2
48:15
**WEBER (1)**
4:18
**Wednesday (1)**
1:11
**welcome (1)**
18:19
**Western (1)**
5:6
**WHEREOF (1)**
48:17
**willing (1)**
39:10
**winning (1)**
26:14
**wish (1)**
28:13

**withhold (1)**
37:24
**WITNESS (2)**
48:17 49:3
**words (1)**
39:17
**written (1)**
19:23
**wrong (1)**
32:25

**X**

**X (4)**
26:8,11,20 49:2
**XI (1)**
6:7

**Y**

**Y (3)**
26:10,13,17
**York (12)**
1:10,10 2:8,8,10 3:8,8
3:17 6:10 48:3,5,9

**Z**

**Zagore (7)**
4:9 24:9,10 42:7,17
44:6 47:17

**$**

**$100,000 (1)**
29:25
**$2 (2)**
23:25 24:13
**$40,000 (1)**
29:25
**$500,000 (1)**
15:3
**$55.6 (1)**
23:8
**$59.1 (1)**
25:7
**$60 (4)**
23:10 24:20 26:9
28:12
**$60.5 (1)**
24:24
**$61 (2)**
25:2,2
**$65 (3)**
41:3 43:7,8
**$65.5 (1)**
43:18
**$70.5 (1)**
45:13
**$75 (2)**
44:20 45:11
**$75,000 (1)**

29:12
**$9.4 (1)**
28:19

**0**

**05-44481 (1)**
6:12

**1**

**1 (5)**
7:13 8:5,7 13:5 49:10
**10 (8)**
10:24 11:3 21:12,20
49:21,22 50:2,4
**10036 (1)**
3:8
**11 (8)**
11:7,10 21:14,20 50:4
50:6,6,8
**11.5.2 (1)**
33:7
**11.5.4 (1)**
33:15
**11.6.3 (1)**
34:6
**12 (6)**
11:14,18 22:8,14
28:24 50:8
**12623 (1)**
1:24
**127 (1)**
4:7
**15th (2)**
37:21,22
**16th (1)**
30:20
**18 (1)**
7:9

**2**

**2 (5)**
8:9,13,14 25:10 49:11
**2/3 (2)**
29:15,23
**20001 (1)**
3:18
**2007 (22)**
1:11 2:3 6:13,21 7:4,6
7:9,11,12,13 8:25
9:4 10:9,16 13:7,13
19:4,14 22:15 48:19
49:16,25
**24 (1)**
7:11
**26 (1)**
7:3
**29 (1)**
7:6

**3**

**3 (4)**
8:17,19 13:7 49:13
**3.2 (1)**
10:19
**3.2.1 (4)**
10:20,21 21:8 50:2
**3.9 (1)**
25:5
**31 (5)**
7:12 10:8,16 19:13
49:25
**31st (8)**
12:7 21:16,18,22
35:23 36:8 37:6,13

**4**

**4 (7)**
2:7 3:7 8:22 9:2 19:3
19:4 49:14
**4.6.9 (1)**
29:4
**44114-1304 (1)**
4:8
**4900 (1)**
4:6

**5**

**5 (11)**
6:21 8:24 9:4,7,9,11
12:9 19:12 22:15
49:16,18
**5th (2)**
22:10,12
**5:30 (1)**
2:4
**55.6 (4)**
24:19 28:20 30:13,23
**57.1 (1)**
25:10
**58.1 (1)**
12:12

**6**

**6 (6)**
6:13 9:14,19 36:2,2
49:20
**62 (1)**
26:11
**64 (2)**
26:12,19
**65 (4)**
28:21 30:13,15 40:9
**66 (4)**
26:14,16 29:15,23

**7**

**7 (10)**

9:22 10:2 13:13 22:25
30:9 43:14,15 47:5
47:7 49:21
**70 (1)**
43:25
**70.5 (2)**
44:13,15
**75 (1)**
44:18

**8**

**8 (10)**
1:11 2:3 10:4,12 21:7
21:20 49:10,11,13
49:22
**8179 (1)**
7:2
**8436 (1)**
7:7
**8653 (1)**
7:15

**9**

**9 (8)**
10:18,21 21:9,20
49:14,18,20 50:2
**9th (1)**
48:18
**9:00 (1)**
47:22
**901 (1)**
3:17