UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
       In re                                   :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :    Case No. 05-44481 (RDD)
                                                    :
              Debtors.                       :    (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004, 6006,
AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF DEBTORS'
ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS OF THE CATALYST
BUSINESS OF CERTAIN OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND
(III) ASSUMPTION OF CERTAIN LIABILITIES

("CATALYST BUSINESS SALE APPROVAL ORDER")

           Upon the motion, dated June 6, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i)

the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising

substantially all the assets that comprise the catalyst business (the "Catalyst Business"), free and

clear of liens, claims, and encumbrances, to Umicore and certain of its affiliates (the "Purchasers")

pursuant to the Master Sale and Purchase Agreement, originally dated June 5, 2007 (as amended

on the record at the auction held on August 8, 2007 to, inter alia, increase the purchase price to be

provided by the Purchasers to $75 million (subject to adjustments), the "Agreement"), by and

between Delphi and certain of its affiliates, including certain affiliated Debtors as set forth in the

Agreement (the "Selling Debtor Entities"),[1] and the Purchasers or to the party submitting who

submitted the highest or otherwise best bid at the auction held on August 8, 2007 (the "Successful

Bidder"), (ii) the assumption and assignment of certain prepetition executory contracts and

unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory

contracts and unexpired leases (the "Postpetition Contracts," and collectively with the Assumed

Contracts, the "Assigned Contracts") to the Purchasers or the Successful Bidder, and (iii) the

assumption of certain liabilities (the "Assumed Liabilities") by the Purchasers or the Successful

Bidder; and the Court having entered an order on June ——,29, 2007 (the "Bidding Procedures

Order") (a) approving bidding procedures, (b) granting certain bid protections, (c) approving the

form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having

been held on August 16, 2007, at which time all interested parties were offered an opportunity to

be heard with respect to the Motion; and the Court having reviewed and considered (x) the Motion,

(y) the objections thereto, if any, and (z) the arguments of counsel made, and the evidence

proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is

in the best interests of the Selling Debtor Entities, their estates, their creditors, and all other

parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

---

[1]   Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems (Holding) Inc.,
Exhaust Systems Corporation, Environmental Catalysts, LLC, ASEC Manufacturing General Partnership, and
ASEC Sales General Partnership.  Certain assets will be sold under the Agreement by non-debtor affiliates of the
Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling
non-Debtor affiliates are collectively referred to as the "Sellers."

2       DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22.
Performed on 8/15/2007.

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.     The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in

this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are sections 363,

365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.     As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and

sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the

Assumed Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C.     §§

102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good,

sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the

Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts or

assignment of the Postpetition Contracts is or shall be required.

D.     As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale

process in compliance with the Bidding Procedures Order and the Auction was duly noticed and

conducted in a non-collusive, fair, and good faith manner.

---

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
*(cont'd)*

3     DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22.
Performed on 8/15/2007.

E.    The Purchasers waived their right to assert any and all claims against the Debtors and their estates related to the process by which the Selling Debtor Entities have sold the Purchased Assets, including but not limited to, the bidding procedures and the auction.

F.    Catalytic Solutions, Inc. and certain of its affiliates (collectively, the "Alternate Bidder") submitted a final bid at the auction consisting of: (a) the following documents: the Alternate Bidder's bid submission documents delivered to the Selling Debtor Entities on July 31, 2007 and marked at the auction as Exhibit 5, as amended by the documents marked at the auction as Exhibit 8 (a blacklined Master Sale and Purchase Agreement), Exhibit 9 (Schedule 3.2.1 to Exhibit 8 at the auction), Exhibit 10 (a lease governing real property in Luxembourg), and Exhibit 11 (a lease governing real property in Shanghai) and (b) cash purchase price and certain cost savings to the Sellers which the Selling Debtor Entities determined to have a combined value of $70.5 million and which final bid (the "CSI Final Bid") was determined by the Debtors to be the Alternate Bid (as defined by the Bidding Procedures Order) to be submitted to this Court for approval in accordance with the Bidding Procedures Order.

G.    E. The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other documents contemplated thereby, and the transfer and conveyance of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken all corporate action necessary to authorize and approve the Agreement and the consummation by the Selling Debtor Entities of the transactions contemplated thereby, and no consents or approvals, other than

_____

*(cont'd from previous page)*
    fact when appropriate. See Fed. R. Bankr. P. 7052.

those expressly provided for in the Agreement, are required for the Selling Debtor Entities to

consummate such transactions.

H.    F. The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purposes and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Purchased Assets and determined that the terms and

conditions set forth in the Agreement, and the transfer to Purchasers of the Purchased Assets

pursuant thereto, represent a fair and reasonable purchase price and constitute the highest or

otherwise best value obtainable for the Purchased Assets and (ii) compelling circumstances for the

Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization because,

among other things, absent the Sale the value of the Purchased Assets will be substantially

diminished.

I.    G. A reasonable opportunity to object or be heard with respect to the

Motion and the relief requested therein has been afforded to all interested persons and entities,

including without limitation: (i) the Office of the United States Trustee for the Southern District of

New York, (ii) counsel for the Purchasers, (iii) counsel for the official committee of unsecured

creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the

official committee of equity security holders appointed in these chapter 11 cases, (v) all entities

known to have expressed an interest in a transaction with respect to the Purchased Assets during

the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as defined

below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or taxing

authorities or recording offices, including but not limited to environmental regulatory authorities,

which have a reasonably known interest in the relief requested by the Motion, (viii) all parties to

Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of

Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities ~~that~~as are

required to be served with notices under the Supplemental Case Management Order.

        J.      ~~H.~~ The Purchasers are not "insiders" of any of the Debtors as that term is

defined in 11 U.S.C. § 101(31).

        K.      ~~I.~~ The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Purchasers have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

        L.      ~~J.~~ The Purchasers are good faith purchasers under 11 U.S.C. § 363(m) and,

as such, are entitled to all of the protections afforded thereby.  The Purchasers will be acting in

good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by

the Agreement at all times after the entry of this Sale Approval Order.

        M.      ~~K.~~ The consideration provided by the Purchasers for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities' creditors

than would be provided by any other practical available alternative, and (iv) constitutes reasonably

equivalent value and fair consideration under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession, or the District of Columbia.

N.    L. The Sale must be approved and consummated promptly to preserve the viability of the Catalyst Business as a going concern. The Sale is in contemplation of, and a necessary condition precedent to, a reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

O.    M. The transfer of the Purchased Assets to the Purchasers will be a legal, valid, and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the Selling Debtor Entities, will vest the Purchasers with all right, title, and interest to the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the Petition Date commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including, but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Catalyst Business prior to the Closing Date, including the transfer of the Purchased Assets to the Purchasers (collectively, the "Interests and/or Claims").

P.    N. If the Sale of the Purchased Assets with respect to the Selling Debtor Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, or if the Purchasers would, or in the future could, be liable for any of the

Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, the Purchasers would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their creditors.

Q. O. The Selling Debtor Entities may sell their interests in the Purchased Assets free and clear of all Interests and/or Claims because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest or Claim with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale.

R. P. Except as expressly provided in the Agreement, the (i) transfer of the Purchased Assets to the Purchasers and (ii) assumption and/or assignment to the Purchasers of the Assigned Contracts and Assumed Liabilities will not subject the Purchasers to any liability whatsoever with respect to the operation of the Catalyst Business prior to the Closing of the Sale, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

S.    Q. The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts as applicable to the Purchasers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities are is reasonable, enhance and enhances the value of the Selling Debtor Entities' estates, and do not constitute unfair discrimination.

T.    R. The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasers have provided adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchasers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

U.    S. Approval of the Agreement and consummation of the Sale of the Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.    The Motion is GRANTED, and all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations included therein, are hereby overruled on the merits.

### Approval Of The Agreement

2.    Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3.    Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized to perform their obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.    Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.    The Selling Debtor Entities are authorized and, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the

Agreement, together with all additional instruments and documents ~~that~~as may be

reasonably necessary or desirable to implement the Agreement, and to take all further

actions as may be requested by the Purchasers for the purpose of assigning, transferring,

granting, conveying, and conferring to the Purchaser or reducing to possession the

Purchased Assets and the Assigned Contracts, or as may be necessary or appropriate to the

performance of the obligations as contemplated by the Agreement.

6.      This Sale Approval Order and the Agreement shall be binding in all

respects upon all creditors (whether known or unknown) of the Debtors, the Purchasers, all

successors and assigns of the Purchasers and the Selling Debtor Entities, all affiliates and

subsidiaries of the Purchasers and the Selling Debtor Entities, and any subsequent trustees

appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of

this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale

Approval Order shall govern.

7.      The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in

accordance with the terms thereof without further order of the Court; <u>provided</u> that any

such modification, amendment, or supplement is not material.

<u>Sale And Transfer Of The Purchased Assets</u>

8.      Except as expressly permitted or otherwise specifically provided for

in the Agreement or this Sale Approval Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f),

upon the consummation of the Agreement, the Purchased Assets of the Selling Debtor

Entities shall be transferred to the Purchasers free and clear of all Interests and/or Claims, with all such Interests and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.    The transfer of the Purchased Assets to the Purchasers pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchasers with all right, title, and interest of the Selling Debtor Entities in and to the Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.    If any person or entity which has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or Claims against or in the Purchased Assets with respect to the Selling Debtor Entities shall not have delivered the foregoing to the Selling Debtor Entities prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Selling Debtor Entities are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Purchasers are hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature whatsoever.

11.    This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12.    Except as expressly permitted or otherwise specifically provided by the Agreement or this Sale Approval Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature whatsoever against or in the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Selling Debtor Entities, the Purchased Assets of the Selling Debtor Entities, the operation of the Catalyst Business by the Selling Debtor Entities prior to the Closing of the Sale, or the transfer of

the Purchased Assets to the Purchasers, hereby are forever barred, estopped, and

permanently enjoined from asserting against the Purchasers, their successors or assigns,

their property, or the Purchased Assets, such persons' or entities' Interests and/or Claims.

13.     Upon the consummation of the transactions contemplated by the
Agreement, the Purchasers shall not be deemed to (a) be the successor of the Selling Debtor
Entities, (b) have, de facto or otherwise, merged with or into the Selling Debtor Entities, (c) be a
mere continuation or substantial continuation of the Selling Debtor Entities or the enterprise(s) of
the Selling Debtor Entities, or (d) be liable for any acts or omissions of the Selling Debtor Entities
in the conduct of the Catalyst Business. Nothing in this Sale Approval Order or the Agreement
releases or nullifies any Liability to a governmental agency under any environmental laws and
regulations that any entity would be subject to as owner or operator of any Purchased Assets after
the date of entry of this Sale Approval Order. Nothing in this Sale Approval Order or Agreement
bars, estops, or enjoins any governmental agency from asserting or enforcing, outside the Court,
any Liability described in the preceding sentence. Notwithstanding the above, nothing herein shall
be construed to permit a governmental agency to obtain penalties from the Purchasers for days of
violation of environmental laws and regulations prior to Closing.

Assumption And Assignment To The Purchaser Of The Assumed Contracts

13.     14. Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Purchasers, and the Purchasers' assumption on the terms set forth in the Agreement, of the

Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f)

with respect thereto are hereby deemed satisfied.

14. 15. The Selling Debtor Entities are hereby authorized in accordance with 11 U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Purchasers, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Purchasers such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to the Purchasers.

15. 16. The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchasers in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entities shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption of such contracts by the Purchasers.

16. 17. All defaults or other obligations of the Selling Debtor Entities under the Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms of the Agreement, and the Purchasers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement. Each non-debtor party to any Assumed Contracts is shall be deemed to have consented to the assumption and assignment of the Assumed Contracts to the Purchasers and is shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entities or the Purchasers, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing

or any purported written or oral modification to the Assumed Contracts.  The failure of the Debtors

or the Purchasers to enforce prior to the Closing of the Sale one or more terms or conditions of any

Assumed Contracts shall not be a waiver of such terms or conditions or of the Debtors' or

Purchasers' rights to enforce every term and condition of any such Assumed Contracts.

### Additional Provisions

17.    18. The transactions contemplated by the Agreement, and the execution,

delivery, and/or recordation of any and all documents or instruments necessary or desirable to

consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt

from the imposition and payment of all stamp, transfer, or any other similar taxes, pursuant to

section 1146 of the Bankruptcy Code.

18.    19. The consideration provided by the Purchasers for the Purchased Assets

under the Agreement is hereby deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, and any state, territory,

possession, or the District of Columbia.

19.    20. Upon the Closing of the Sale, this Sale Approval Order shall be

construed as and shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale

transferring good and marketable title in such Purchased Assets and Assigned Contracts to the

Purchasers pursuant to the terms of the Agreement.

20.    21. The transfer of the Purchased Assets pursuant to the Agreement is a

transfer pursuant to section 1146(c) of the Bankruptcy Code, and thus the Sale and the execution,

delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Sale shall be, and hereby are, exempt from the imposition and payment of all recording fees and taxes, stamp taxes and/or sales, use, transfer, documentary, registration, or any other similar taxes.

21.    22. Except as otherwise provided in the Agreement, upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is directed to execute such documents and take all such other actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

22.    23. Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

23.    24. All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchasers upon the Closing of the Sale.

24.    25. The Purchasers shall have no liability or responsibility for any liability or other obligation of the Selling Debtor Entities arising under or related to the Purchased Assets other than for the Assumed Liabilities and the Permitted Liens.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, the Purchasers shall not be liable for any claims against the Selling Debtor Entities or any of their predecessors or affiliates, and the Purchasers shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing of the Sale, whether now existing

or hereafter arising, or whether fixed or contingent, with respect to the Catalyst Business or any

obligations of the Selling Debtor Entities arising prior to the Closing of the Sale, except as

expressly provided in the Agreement, including, but not limited to, liabilities on account of any

taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the

operation of the Catalyst Business prior to the Closing of the Sale.

25.    26. All persons holding Interests and/or Claims against or in the Selling

Debtor Entities or the Purchased Assets held by the Selling Debtor Entities of any kind or nature

whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from

asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature

whatsoever against the Purchasers, their property, their successors and assigns, or the Purchased

Assets with respect to any Interest or Claim of any kind or nature whatsoever which such person or

entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers,

their directors, their shareholders, or the Purchased Assets held by the Selling Debtor Entities.

Following the Closing of the Sale, no holder of an Interest in or Claim against the Selling Debtor

Entities shall interfere with the Purchasers' title to or use and enjoyment of the Purchased Assets

based on or related to such Interest or Claim or any actions that the Selling Debtor Entities may

take in their chapter 11 cases.

26.    27. The transactions contemplated by the Agreement are undertaken by the

Purchasers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Purchasers, unless such authorization is duly stayed pending such appeal.  The Purchasers are

purchasers in good faith of the Purchased Assets, and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

27.   28. The consideration provided by the Purchasers for the Purchased Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

28.   29. The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this Sale Approval Order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Approval Order.

29.   30. The Selling Debtor Entities are authorized to continue and complete the retention bonus program for the twelve affected employees at the Tulsa facility, as described in the Motion; provided that such employees is are still employed by the Selling Debtor Entities as of the closing date of the Sale.  Any affected employee who resigns prior to the closing of the Sale will shall not be entitled to the foregoing retention bonus.

30.   31. Delphi Automotive Systems (Holding) Inc. is authorized, but not directed, to satisfy, retire, or forgive, as necessary, the outstanding liabilities of Delphi Catalyst South Africa (Proprietary) Limited as required by the Agreement.

31.   32. The transfer of certain of the Catalyst Business' intellectual property by Delphi Automotive Systems, LLC and Delphi Technologies, Inc. to ASEC Manufacturing General

Partnership (or another Selling Debtor Entity) or its designee by quit-claim deed or otherwise in consideration for fair value is hereby approved.

32.    33. The terms and provisions of the Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their estates, and their creditors, the Purchasers, and their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest and/or Claim against or in the Purchased Assets to be sold to the Purchasers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding.

33.    34. The Selling Debtor Entities shall not propose or seek confirmation of a plan of reorganization that is inconsistent with or derogate from the terms of the Agreement.

34.    35. Notwithstanding anything contained herein to the contrary, the term "Purchased Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates (except to the extent that certain Purchased Assets are property of the Sellers other than the Selling Debtor Entities), such as funds that are trust funds under any applicable state lien laws.

35.    36. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

36.    37. The failure specifically to include or to reference any particular
provision of the Agreement in this Sale Approval Order shall not diminish or impair the
effectiveness of such provision, it being the intent of the Court that the Agreement be authorized
and approved in its entirety.

37.    38. The Agreement and any related agreements, documents, or other
instruments may be modified, amended, or supplemented by the parties thereto in accordance with
the terms thereof without further order of the Court, provided that any such modification,
amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'
estates.

39.    The provisions of this Sale Approval Order are nonseverable and mutually
dependent.

38.    40. Nothing in this Sale Approval Order shall alter or amend the Agreement
and the obligations of the Sellers and the Purchasers thereunder.

39.    41. This Court retains exclusive jurisdiction to interpret, construe, enforce,
and implement the terms and provisions of this Sale Approval Order, the Agreement, all
amendments thereto, any waivers and consents thereunder, and of each of the agreements executed
in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a)
compel delivery of the Purchased Assets to the Purchasers, (b) compel delivery of the purchase
price or performance of other obligations owed to the Selling Debtor Entities pursuant to the
Agreement, (c) resolve any disputes arising under or related to the Agreement, except as otherwise
provided therein, (d) interpret, implement, and enforce the provisions of this Sale Approval Order,
(e) protect the Purchasers against any Interests and/or Claims against or in the Selling Debtor

Entities or the Purchased Assets, of any kind or nature whatsoever, attaching to the proceeds of the

Sale, and (f) determine all disputes among the Selling Debtor Entities, the Purchasers, and any

non-Debtor parties to any Assigned Contracts concerning, <u>inter alia</u>, the Selling Debtor Entities'

assumption and/or assignment of any Assigned Contract to the Purchaser under the Agreement.

40.   ~~42. The Purchase Price will~~<u>The purchase price shall</u> be and hereby is

allocated between the Selling Debtor Entities and the non-Debtor Sellers as set forth on ~~the~~

~~schedule filed and served by the Debtors on June [●], 2007.~~<u>Schedule 2.</u>  To the extent that

indemnification obligations arise under the Agreement on account of the liability of a non-Debtor

Seller, such indemnity ~~will~~<u>shall</u> be paid from the proceeds of the Sale allocated to such non-Debtor

Seller.

41.   <u>The CSI Final Bid is hereby approved as the Alternate Bid (as defined by</u>

<u>the Bidding Procedures Order).</u>

42.   <u>Following entry of this Order, if the Purchasers fail to consummate the Sale</u>

<u>because of the failure of a condition precedent beyond the control of either the Sellers or the</u>

<u>Purchasers or a breach or failure to perform on the part of the Purchasers, then the Alternate Bid</u>

<u>shall be deemed to be the Successful Bid (as defined in the Bidding Procedures Order); the</u>

<u>Alternate Bidder shall have all of the rights, protections, and status as if it were the "Purchaser," as</u>

<u>defined in this Order, including, without limitation, the status of a purchaser in good faith within</u>

<u>the meaning of 11 U.S.C. § 363(m); and the Selling Debtor Entities shall be authorized, but not</u>

<u>directed, to effectuate a sale of the Catalyst Business to the Alternate Bidder subject to the terms of</u>

<u>the Alternate Bid without further order of this Court.</u>

43.     The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for the

service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       [August    ], 2007

_____
    UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Corning, Inc. | Purchase Order Nos. 50186, 50187, 50188, and 50189 | $2,126,226.63 |
| First American Capital Mgmt. | Purchase Order Nos. 12999, 12834, 15588, and M29398 | $0.00 |
| Heraeus Chemicals Sa Pty | Contract between Heraeus Chemicals and Delphi Automotive Systems LLC ("DAS LLC"), dated July 24, 2004 | $0.00 |
| Heraeus Metal Processing, Inc. / Heraeus Precious Metals Management LLC | Purchase Order No. 50112 | $306,172.40 |
| Impala Platinum Limited ("Impala") | Precious Metals Supply Agreement, dated November 2004, between Impala and DAS LLC and Precious Metals Supply Agreement, dated December 2000, between Impala and DAS LLC | $0.00 |
| Johnson Mathey, Inc. / Johnson Mathey Alfa Aesar / Johnson Mathey PLC | Bailment Agreement, dated October 29, 2004, between DAS LLC and Johnson Mathey, Inc. | $0.00 |
| MDIS Inc. | Agreement #2427 between ASEC and MDIS – CHESS, dated September 29, 1995 | $0.00 |
| NGK Automotive Ceramics USA Inc. | Purchase Order No. 50028 | $2,914,235.42 |
| Prime Systems Incorporated ("Prime") | Software License Agreement, dated, September 16, 1996, between ASEC and Prime | $0.00 |
| Sabin Metal Corporation ("Sabin") | Letter Agreement , dated October 23, 2002, between Delphi and Sabin | $10,583.35 |
| Shanin LLC | Purchase Order No. 19545 | $0.00 |
| University of New Mexico ("UNM") | UNM Industrial Sponsored Research Agreement between Delphi and the Regents of UNM, dated March 1, 2005 | $0.00 |
| WC Heraeus GmbH & Co. KG | Bailment Agreement, dated July 1, 2003, between DAS LLC and W.C. Heraeus GmbH & Co. KG | $0.00 |
| All American Fire Systems, Inc. | Purchase Order No. M411384 | $0.00 |
| AlliedSignal, Inc. | Sales Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 and Manufacturing Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 | $0.00 |
| Applied Controls Corporation | Confidentiality Agreement, dated June 30, 2002, between Delphi Automotive Systems and Applied Controls Corp. | $0.00 |
| Bruker Axis Inc. | Purchase Order No. 22388 | $0.00 |
| BSI Inspectorate Precious Metals | Purchase Order No. 21046 | $0.00 |
| Cleintele | Purchase Order No. 21893 | $0.00 |
| Contrarian Funds LLC, as assignee of Aramark Uniform & Career Apparel Inc. | Purchase Order No. 18316 | $11,532.14 |
| Corning, Inc. | Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005, Addendum to Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis | $0.00 |

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| | Division, dated May 1, 2005 | |
| David Matthews Construction Company | Purchase Order No. 22257 and Delphi Automotive Systems Confidentiality Agreement with Joe Mayfield Construction Company, Inc., dated June 3, 2002 | $0.00 |
| Dell Financial Services | Purchase Order No. 22748 | $0.00 |
| General Motors Corp. | Purchase and Sale Agreement among GM, Exhaust Systems Corporation, Environmental Catalysts, LLC, AlliedSignal Environmental Catalysts, Inc. and AlliedSignal, Inc., dated June 22, 1998 | $0.00 |
| GM Corporation Powertrain | Consignment Agreement for Platinum Group Metal between GMC and ASEC owned by Exhaust Systems Inc. and Environmental Catalyst, LLC, dated December 20, 2000; First Amendment to Consignment Agreement for Platinum Group Metals, dated March 24, 2001 | $0.00 |
| Harley Financial Services | Purchase Order No. 19516 | $0.00 |
| Hasler Leasing/GE Capital Corp. | Purchase Order No. 19218 | $0.00 |
| Heritage Crystal Clean | Purchase Order No. M41277 | $0.00 |
| Holly Equipment Sales | Purchase Order No. 21226 | $0.00 |
| Jet Specialty | Delphi Automotive Systems Confidentiality Agreement with Jet Specialty, dated May 22, 2002 | $0.00 |
| Kelly Temporary Services | Purchase Order No. 19938 | $0.00 |
| Kunz Janitorial | Purchase Order No. M41402 | $0.00 |
| Lester Associates | Purchase Order No. 19513 | $0.00 |
| Midland Recycling | Purchase Order No. 15982 | $0.00 |
| Mitsubishi Motors Corp. | General Agreement For Purchase Of Catalyst between Automotive Products Division, UOP Inc. and Mitsubishi Motors Corp., dated July 12, 1982, along with Amendments thereto, dated January 6, 1988 and October 21, 1994 | $0.00 |
| Nanostellar, Inc. | Proprietary Information Agreement between Nanostellar, Inc. and Delphi Corporation (along with its affiliates ASEC Manufacturing General Partnership) dated January 5, 2006 | $0.00 |
| Perkin Elmer LLC | Purchase Order No. 19863 | $0.00 |
| Premier Manufacturing Support Svc. | Purchase Order No. M41284 | $0.00 |
| Sebring Systems Technical, Inc. | Purchase Order No. 22420 | $0.00 |
| Securenet Inc. | Purchase Order No. 22625 | $0.00 |
| Securitas Companies | Purchase Order No. 22017 | $0.00 |
| Siemens Water Technology Corp. | Purchase Order Nos. 19270, 19278, and 19279 | $0.00 |
| Southern Material Handling Co. | Purchase Order No. 17846 | $0.00 |
| Starsource Management Services | Purchase Order No. 18316 | $0.00 |
| Starcycle Inc. | Purchase Order NO. 20638 | $0.00 |
| T Mobile Wireless | Account No. 313-858-725 | $0.00 |
| Tro-Pro Consulting | Purchase Order No. 22127 | $0.00 |
| U.S. Cellular | Account No. 940-304-883 | $0.00 |
| Varroc Engineering Pvt. Ltd. | Side Letter Agreement between Varroc Engineering Pvt. Ltd.; Varroc Exhaust Systems Pvt. Ltd; Delphi Automotive Systems Pvt. Ltd., Delphi Automotive Systems LLC; Delphi Technologies, Inc. dated May 12, 2005; First Amendment dated July 15, 2006 to the Side Letter Agreement concerning production of catalysts from Delphi to Varroc Engineering | $0.00 |

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Verde Vista Resources Inc. | Pvt. Ltd. and Varroc Exhaust Systems Pvt. Ltd. Purchase Order No. M41417 | $0.00 |
| Vinson Process Controls | Delphi Automotive Systems Confidentiality Agreement with Vinson Process Controls dated October 29, 2002 | $0.00 |

**Schedule 2**

**SCHEDULE 4.8.1 TO AGREEMENT
ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

|  |  | **Purchase Price Allocation $ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V.  Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd.  Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of  Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.4 |
|  | **Total** | 75.0 |