UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                     :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, <u>et al.</u>, | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004,
6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF
DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS OF THE
CATALYST BUSINESS OF CERTAIN OF THE DEBTORS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
<u>(III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("CATALYST BUSINESS SALE APPROVAL ORDER")

Upon the motion, dated June 6, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i)

the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising

substantially all the assets that comprise the catalyst business (the "Catalyst Business"), free and

clear of liens, claims, and encumbrances, to Umicore and certain of its affiliates (the

"Purchasers") pursuant to the Master Sale and Purchase Agreement, originally dated June 5,

2007 (as amended on the record at the auction held on August 8, 2007 to, <u>inter</u> <u>alia</u>, increase the

purchase price to be provided by the Purchasers to $75 million (subject to adjustments), the

"Agreement," a copy of which is attached hereto as <u>Exhibit A</u>), by and between Delphi and

certain of its affiliates, including certain affiliated Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] and the Purchasers (who submitted the highest or otherwise best bid

at the auction held on August 8, 2007 and are the "Successful Bidder"), (ii) the assumption and

assignment of certain prepetition executory contracts and unexpired leases (the "Assumed

Contracts") and the assignment of certain postpetition executory contracts and unexpired leases

(the "Postpetition Contracts," and collectively with the Assumed Contracts, the "Assigned

Contracts") to the Purchasers, and (iii) the assumption of certain liabilities (the "Assumed

Liabilities") by the Purchasers; and the Court having entered an order on June 29, 2007 (the

"Bidding Procedures Order") (a) approving bidding procedures, (b) granting certain bid

protections, (c) approving the form and manner of sale notices, and (d) setting the Sale Hearing;

and the Sale Hearing having been held on August 16, 2007, at which time all interested parties

were offered an opportunity to be heard with respect to the Motion; and the Court having

reviewed and considered (x) the Motion, (y) the objection thereto and (z) the arguments of

counsel made, and the evidence proffered or adduced, at the Sale Hearing, including with respect

to the withdrawal or resolution of the other objections to the Motion; and it appearing that the

relief requested in the Motion is in the best interests of the Selling Debtor Entities, their estates,

their creditors, and all other parties-in-interest; and after due deliberation thereon, and sufficient

cause appearing therefor,

---

[1]    Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems (Holding) Inc.,
Exhaust Systems Corporation, Environmental Catalysts, LLC, ASEC Manufacturing General Partnership, and
ASEC Sales General Partnership. Certain assets will be sold under the Agreement by non-debtor affiliates of
the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling
non-Debtor affiliates are collectively referred to as the "Sellers."

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assumed Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts or assignment of the Postpetition Contracts is or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

E.      The Purchasers waived their right to assert any and all claims against the Debtors and their estates related to the process by which the Selling Debtor Entities have sold the Purchased Assets, including but not limited to, the bidding procedures and the auction.

F.      Catalytic Solutions, Inc. and certain of its affiliates (collectively, the "Alternate Bidder") submitted a final bid at the auction consisting of: (a) the following documents: the Alternate Bidder's bid submission documents delivered to the Selling Debtor Entities on July 31, 2007 and marked at the auction as Exhibit 5, as amended by the documents marked at the auction as Exhibit 8 (a blacklined Master Sale and Purchase Agreement), Exhibit 9 (Schedule 3.2.1 to Exhibit 8 at the auction), Exhibit 10 (a lease governing real property in Luxembourg), and Exhibit 11 (a lease governing real property in Shanghai) and (b) cash purchase price and certain cost savings to the Sellers which the Selling Debtor Entities determined to have a combined value of $70.5 million and which final bid (the "CSI Final Bid") was determined by the Debtors to be the Alternate Bid (as defined by the Bidding Procedures Order) to be submitted to this Court for approval in accordance with the Bidding Procedures Order.

G.      The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other documents contemplated thereby, and the transfer and conveyance of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken all corporate action necessary to authorize and approve the Agreement and the consummation by the Selling Debtor Entities of the transactions contemplated thereby, and no consents or

4

approvals, other than those expressly provided for in the Agreement, are required for the Selling

Debtor Entities to consummate such transactions.

H.    The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purposes and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Purchased Assets and determined that the terms and

conditions set forth in the Agreement, and the transfer to Purchasers of the Purchased Assets

pursuant thereto, represent a fair and reasonable purchase price and constitute the highest or

otherwise best value obtainable for the Purchased Assets and (ii) compelling circumstances for

the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization because,

among other things, absent the Sale the value of the Purchased Assets will be substantially

diminished.

I.    A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchasers, (iii) counsel for the official committee of unsecured

creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the

official committee of equity security holders appointed in these chapter 11 cases, (v) all entities

known to have expressed an interest in a transaction with respect to the Purchased Assets during

the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as

defined below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or

taxing authorities or recording offices, including but not limited to environmental regulatory

authorities, which have a reasonably known interest in the relief requested by the Motion, (viii)

all parties to Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities as are required to be served with notices under the Supplemental Case Management Order.

J.     The Purchasers are not "insiders" of any of the Debtors as that term is defined in 11 U.S.C. § 101(31).

K.     The Agreement was negotiated, proposed, and entered into by the Selling Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Selling Debtor Entities nor the Purchasers have engaged in any conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

L.     The Purchasers are good faith purchasers under 11 U.S.C. § 363(m) and, as such, are entitled to all of the protections afforded thereby.  The Purchasers will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Agreement at all times after the entry of this Sale Approval Order.

M.     The consideration provided by the Purchasers for the Purchased Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities' creditors than would be provided by any other practical available alternative, and (iv) constitutes

reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

N.      The Sale must be approved and consummated promptly to preserve the viability of the Catalyst Business as a going concern. The Sale is in contemplation of, and a necessary condition precedent to, a reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

O.      The transfer of the Purchased Assets to the Purchasers will be a legal, valid, and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the Selling Debtor Entities, will vest the Purchasers with all right, title, and interest to the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Catalyst Business prior to the Closing Date, including the transfer of the Purchased Assets to the Purchasers (collectively, the "Interests and/or Claims").

7

P.        If the Sale of the Purchased Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this Sale Approval Order, or if the Purchasers would, or in the future could, be liable for any of

the Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, the

Purchasers would not have entered into the Agreement and would not consummate the Sale or

the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor

Entities, their estates, and their creditors.

Q.        The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Interests

and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to

the cash proceeds of the Sale ultimately attributable to the property against or in which they

claim an Interest or Claim with the same priority, validity, force, and effect as they attached to

such property immediately before the closing of the Sale.

R.        Except as expressly provided in the Agreement, the (i) transfer of the

Purchased Assets to the Purchasers and (ii) assumption and/or assignment to the Purchasers of

the Assigned Contracts and Assumed Liabilities will not subject the Purchasers to any liability

whatsoever with respect to the operation of the Catalyst Business prior to the Closing of the Sale,

or by reason of such transfer under the laws of the United States, any state, territory, or

possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly,

8

on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

S.      The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts as applicable to the Purchasers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

T.      The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasers have provided adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchasers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

U.      Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests

of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

### General Provisions

1.      The Motion is GRANTED, and except as otherwise provided for in

paragraph 17 of this Order, all objections to the Motion or the relief requested therein that have

not been withdrawn, waived, or settled, and all reservations included therein, are hereby

overruled on the merits.

### Approval Of The Agreement

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

3.      Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized

to perform their obligations under the Agreement and comply with the terms thereof and

consummate the Sale in accordance with and subject to the terms and conditions of the

Agreement.

4.      Each of the signatories to the Agreement is authorized, but not directed, to

take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.      The Selling Debtor Entities are authorized, but not directed, to execute and

deliver, and empowered to perform under, consummate, and implement, the Agreement, together

10

with all additional instruments and documents as may be reasonably necessary or desirable to

implement the Agreement, and to take all further actions as may be requested by the Purchasers

for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or

reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary

or appropriate to the performance of the obligations as contemplated by the Agreement.

6.      This Sale Approval Order and the Agreement shall be binding in all

respects upon all creditors (whether known or unknown) of the Debtors, the Purchasers, all

successors and assigns of the Purchasers and the Selling Debtor Entities, all affiliates and

subsidiaries of the Purchasers and the Selling Debtor Entities, and any subsequent trustees

appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this

Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order

shall govern.

7.      The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court; <u>provided</u> that any such modification,

amendment, or supplement is not material.

### Sale And Transfer Of The Purchased Assets

8.      Except as expressly permitted or otherwise specifically provided for in the

Agreement or this Sale Approval Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the

consummation of the Agreement, the Purchased Assets of the Selling Debtor Entities shall be

transferred to the Purchasers free and clear of all Interests and/or Claims, with all such Interests

11

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they now have as against the Purchased Assets, subject to

any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.      The transfer of the Purchased Assets to the Purchasers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall

vest the Purchasers with all right, title, and interest of the Selling Debtor Entities in and to the

Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets with respect to the Selling Debtor Entities shall not

have delivered the foregoing to the Selling Debtor Entities prior to the Closing of the Sale, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has

with respect to the Purchased Assets, or otherwise, then (a) the Selling Debtor Entities are hereby

authorized to execute and file such statements, instruments, releases, and other documents on

behalf of the person or entity with respect to the Purchased Assets and (b) the Purchasers are

hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval

Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature

whatsoever.

11.      This Sale Approval Order (a) shall be effective as a determination that,

upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever

existing as to the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12.     Except as expressly permitted or otherwise specifically provided by the Agreement or this Sale Approval Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature whatsoever against or in the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Selling Debtor Entities, the Purchased Assets of the Selling Debtor Entities, the operation of the Catalyst Business by the Selling Debtor Entities prior to the Closing of the Sale, or the transfer of the Purchased Assets to the Purchasers, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchasers, their successors or assigns, their property, or the Purchased Assets, such persons' or entities' Interests and/or Claims. Nothing in this Sale Approval Order or the Agreement releases or nullifies any Liability to a

13

governmental agency under any environmental laws and regulations that any entity would be

subject to as owner or operator of any Purchased Assets after the date of entry of this Sale

Approval Order. Nothing in this Sale Approval Order or Agreement bars, estops, or enjoins any

governmental agency from asserting or enforcing, outside the Court, any Liability described in

the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit a

governmental agency to obtain penalties from the Purchasers for days of violation of

environmental laws and regulations prior to Closing.

<u>Assumption And Assignment To The Purchaser Of The Assumed Contracts</u>

13.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Purchasers, and the Purchasers' assumption on the terms set forth in the Agreement, of the

Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and

365(f) with respect thereto are hereby deemed satisfied.

14.     The Selling Debtor Entities are hereby authorized in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Purchasers, effective upon the

Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any

kind or nature whatsoever and (b) execute and deliver to the Purchasers such documents or other

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Purchasers.

15.     The Assumed Contracts shall be transferred to, and remain in full force

and effect for the benefit of, the Purchasers in accordance with their respective terms,

notwithstanding any provision in any such Assumed Contract (including those of the type

14

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer, and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor

Entities shall be relieved from any further liability with respect to the Assumed Contracts after

such assignment to and assumption of such contracts by the Purchasers.

16.    All defaults or other obligations of the Selling Debtor Entities under the

Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to

any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of

the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms

of the Agreement, and the Purchasers shall have no liability or obligation arising or accruing

prior to the date of the Closing of the Sale, except as otherwise expressly provided in the

Agreement.  Each non-debtor party to any Assumed Contracts shall be deemed to have

consented to the assumption and assignment of the Assumed Contracts to the Purchasers and

shall be forever barred, estopped, and permanently enjoined from asserting against the Selling

Debtor Entities or the Purchasers, or the property of any of them, any default existing, arising, or

accruing as of the date of the Closing or any purported written or oral modification to the

Assumed Contracts.  The failure of the Debtors or the Purchasers to enforce prior to the Closing

of the Sale one or more terms or conditions of any Assumed Contracts shall not be a waiver of

such terms or conditions or of the Debtors' or Purchasers' rights to enforce every term and

condition of any such Assumed Contracts.

17.    The Limited Objection Of Contrarian Funds, LLC To Debtors' Notice Of

Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And

Assigned In Connection With The Sale Of Catalyst Business (Docket No. 8877) shall be

adjourned to the September 6, 2007 claims hearing.

15

Additional Provisions

18.     The transactions contemplated by the Agreement, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

19.     The consideration provided by the Purchasers for the Purchased Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, possession, or the District of Columbia.

20.     Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale transferring good and marketable title in such Purchased Assets and Assigned Contracts to the Purchasers pursuant to the terms of the Agreement.

21.     The transfer of the Purchased Assets pursuant to the Agreement is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and thus the Sale and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Sale shall be, and hereby are, exempt from the imposition and payment of all stamp taxes and any other similar taxes to the fullest extent contemplated by section 1146(c) of the Bankruptcy Code.

16

22.     Except as otherwise provided in the Agreement, upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is directed to execute such documents and take all such other actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

23.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

24.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchasers upon the Closing of the Sale.

25.     All persons holding Interests and/or Claims against or in the Selling Debtor Entities or the Purchased Assets held by the Selling Debtor Entities of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Purchasers, their property, their successors and assigns, or the Purchased Assets with respect to any Interest or Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers, their directors, their shareholders, or the Purchased Assets held by the Selling Debtor Entities.  Following the Closing of the Sale, no holder of an Interest in or Claim against the Selling Debtor Entities shall interfere with the Purchasers' title to or use and enjoyment of the

17

Purchased Assets based on or related to such Interest or Claim or any actions that the Selling

Debtor Entities may take in their chapter 11 cases.

26.     The transactions contemplated by the Agreement are undertaken by the

Purchasers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Purchasers, unless such authorization is duly stayed pending such appeal.  The Purchasers are

purchasers in good faith of the Purchased Assets, and are entitled to all of the protections

afforded by section 363(m) of the Bankruptcy Code.

27.     The consideration provided by the Purchasers for the Purchased Assets

under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n)

of the Bankruptcy Code.

28.     The Selling Debtor Entities, including, but not limited to, their officers,

employees, and agents, are hereby authorized to execute such documents and do such acts as are

necessary or desirable to carry out the transactions contemplated by the terms and conditions of

the Agreement and this Sale Approval Order.  The Selling Debtor Entities shall be, and they

hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this

Sale Approval Order.

29.     The Selling Debtor Entities are authorized to continue and complete the

retention bonus program for the twelve affected employees at the Tulsa facility, as described in

the Motion; <u>provided</u> that such employees are still employed by the Selling Debtor Entities as of

18

the closing date of the Sale.  Any affected employee who resigns prior to the closing of the Sale

shall not be entitled to the foregoing retention bonus.

30.    Delphi Automotive Systems (Holding) Inc. is authorized, but not directed,

to satisfy, retire, or forgive, as necessary, the outstanding liabilities of Delphi Catalyst South

Africa (Proprietary) Limited as required by the Agreement.

31.    The transfer of certain of the Catalyst Business' intellectual property by

Delphi Automotive Systems, LLC and Delphi Technologies, Inc. to ASEC Manufacturing

General Partnership (or another Selling Debtor Entity) or its designee by quit-claim deed or

otherwise in consideration for fair value is hereby approved.

32.    The terms and provisions of the Agreement and this Sale Approval Order

shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities,

their estates, and their creditors, the Purchasers, and their respective affiliates, successors, and

assigns, and any affected third parties, including, but not limited to, all persons asserting an

Interest and/or Claim against or in the Purchased Assets to be sold to the Purchasers pursuant to

the Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or

other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee,

party, entity, or other fiduciary such terms and provisions likewise shall be binding.

33.    The Selling Debtor Entities shall not propose or seek confirmation of a

plan of reorganization that is inconsistent with or derogate from the terms of the Agreement.

34.    Notwithstanding anything contained herein to the contrary, the term

"Purchased Assets" as defined herein does not include property that is not property of the Selling

19

Debtor Entities' estates (except to the extent that certain Purchased Assets are property of the
Sellers other than the Selling Debtor Entities), such as funds that are trust funds under any
applicable state lien laws.

35.    To the extent permitted by section 525 of the Bankruptcy Code, no
governmental unit may revoke or suspend any permit or license relating to the operation of the
Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or
pendency of these chapter 11 cases or the consummation of the Sale.

36.    The failure specifically to include or to reference any particular provision
of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of
such provision, it being the intent of the Court that the Agreement be authorized and approved in
its entirety.

37.    The Agreement and any related agreements, documents, or other
instruments may be modified, amended, or supplemented by the parties thereto in accordance
with the terms thereof without further order of the Court, _provided_ that any such modification,
amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'
estates.

38.    Nothing in this Sale Approval Order shall alter or amend the Agreement
and the obligations of the Sellers and the Purchasers thereunder.

39.    This Court retains exclusive jurisdiction to interpret, construe, enforce,
and implement the terms and provisions of this Sale Approval Order, the Agreement, all
amendments thereto, any waivers and consents thereunder, and of each of the agreements

20

executed in connection therewith in all respects, including, but not limited to, retaining

jurisdiction to (a) compel delivery of the Purchased Assets to the Purchasers, (b) compel delivery

of the purchase price or performance of other obligations owed to the Selling Debtor Entities

pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement,

except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this

Sale Approval Order, (e) protect the Purchasers against any Interests and/or Claims against or in

the Selling Debtor Entities or the Purchased Assets, of any kind or nature whatsoever, attaching

to the proceeds of the Sale, and (f) determine all disputes among the Selling Debtor Entities, the

Purchasers, and any non-Debtor parties to any Assigned Contracts concerning, inter alia, the

Selling Debtor Entities' assumption and/or assignment of any Assigned Contract to the Purchaser

under the Agreement.

40.    The purchase price shall be and hereby is allocated between the Selling

Debtor Entities and the non-Debtor Sellers as set forth on Schedule 2.  To the extent that

indemnification obligations arise under the Agreement on account of the liability of a non-

Debtor Seller, such indemnity shall be paid from the proceeds of the Sale allocated to such non-

Debtor Seller.

41.    The CSI Final Bid is hereby approved as the Alternate Bid (as defined by

the Bidding Procedures Order).

42.    Following entry of this Order, if the Purchasers fail to consummate the

Sale because of the failure of a condition precedent beyond the control of either the Sellers or the

Purchasers or a breach or failure to perform on the part of the Purchasers, then the Alternate Bid

shall be deemed to be the Successful Bid (as defined in the Bidding Procedures Order); the

21

Alternate Bidder shall have all of the rights, protections, and status as if it were the "Purchaser,"

as defined in this Order, including, without limitation, the status of a purchaser in good faith

within the meaning of 11 U.S.C. § 363(m); and the Selling Debtor Entities shall be authorized,

but not directed, to effectuate a sale of the Catalyst Business to the Alternate Bidder subject to

the terms of the Alternate Bid without further order of this Court, subject to any additional notice

and opportunity for a hearing required in respect of the assumption and assignment of the

Assigned Contracts to CSI pursuant to the CSI Final Bid.

       43.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       August 16, 2007


               _____/s/ Robert D. Drain_____
                    UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Corning, Inc. | Purchase Order Nos. 50186, 50187, 50188, and 50189 | $2,126,226.63 |
| First American Capital Mgmt. | Purchase Order Nos. 12999, 12834, 15588, and M29398 | $0.00 |
| Heraeus Chemicals Sa Pty | Contract between Heraeus Chemicals and Delphi Automotive Systems LLC ("DAS LLC"), dated July 24, 2004 | $0.00 |
| Heraeus Metal Processing, Inc. / Heraeus Precious Metals Management LLC | Purchase Order No. 50112 | $306,172.40 |
| Impala Platinum Limited ("Impala") | Precious Metals Supply Agreement, dated November 2004, between Impala and DAS LLC and Precious Metals Supply Agreement, dated December 2000, between Impala and DAS LLC | $0.00 |
| Johnson Mathey, Inc. / Johnson Mathey Alfa Aesar / Johnson Mathey PLC | Bailment Agreement, dated October 29, 2004, between DAS LLC and Johnson Mathey, Inc. | $0.00 |
| MDIS Inc. | Agreement #2427 between ASEC and MDIS – CHESS, dated September 29, 1995 | $0.00 |
| NGK Automotive Ceramics USA Inc. | Purchase Order No. 50028 | $2,914,235.42 |
| Prime Systems Incorporated ("Prime") | Software License Agreement, dated, September 16, 1996, between ASEC and Prime | $0.00 |
| Sabin Metal Corporation ("Sabin") | Letter Agreement , dated October 23, 2002, between Delphi and Sabin | $10,583.35 |
| Shanin LLC | Purchase Order No. 19545 | $0.00 |
| University of New Mexico ("UNM") | UNM Industrial Sponsored Research Agreement between Delphi and the Regents of UNM, dated March 1, 2005 | $0.00 |
| WC Heraeus GmbH & Co. KG | Bailment Agreement, dated July 1, 2003, between DAS LLC and W.C. Heraeus GmbH & Co. KG | $0.00 |
| All American Fire Systems, Inc. | Purchase Order No. M411384 | $0.00 |
| AlliedSignal, Inc. | Sales Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 and Manufacturing Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 | $0.00 |
| Applied Controls Corporation | Confidentiality Agreement, dated June 30, 2002, between Delphi Automotive Systems and Applied Controls Corp. | $0.00 |
| Bruker Axis Inc. | Purchase Order No. 22388 | $0.00 |
| BSI Inspectorate Precious Metals | Purchase Order No. 21046 | $0.00 |
| Cleintele | Purchase Order No. 21893 | $0.00 |

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Contrarian Funds LLC, as assignee of Aramark Uniform & Career Apparel Inc. | Purchase Order No. 18316 | $11,532.14 [3] |
| Corning, Inc. | Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005, Addendum to Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005 | $0.00 |
| David Matthews Construction Company | Purchase Order No. 22257 and Delphi Automotive Systems Confidentiality Agreement with Joe Mayfield Construction Company, Inc., dated June 3, 2002 | $0.00 |
| Dell Financial Services | Purchase Order No. 22748 | $0.00 |
| General Motors Corp. | Purchase and Sale Agreement among GM, Exhaust Systems Corporation, Environmental Catalysts, LLC, AlliedSignal Environmental Catalysts, Inc. and AlliedSignal, Inc., dated June 22, 1998 | $0.00 |
| GM Corporation Powertrain | Consignment Agreement for Platinum Group Metal between GMC and ASEC owned by Exhaust Systems Inc. and Environmental Catalyst, LLC, dated December 20, 2000; First Amendment to Consignment Agreement for Platinum Group Metals, dated March 24, 2001 | $0.00 |
| Harley Financial Services | Purchase Order No. 19516 | $0.00 |
| Hasler Leasing/GE Capital Corp. | Purchase Order No. 19218 | $0.00 |
| Heritage Crystal Clean | Purchase Order No. M41277 | $0.00 |
| Holly Equipment Sales | Purchase Order No. 21226 | $0.00 |
| Jet Specialty | Delphi Automotive Systems Confidentiality Agreement with Jet Specialty, dated May 22, 2002 | $0.00 |
| Kelly Temporary Services | Purchase Order No. 19938 | $0.00 |
| Kunz Janitorial | Purchase Order No. M41402 | $0.00 |
| Lester Associates | Purchase Order No. 19513 | $0.00 |
| Midland Recycling | Purchase Order No. 15982 | $0.00 |
| Mitsubishi Motors Corp. | General Agreement For Purchase Of Catalyst between Automotive Products Division, UOP Inc. and Mitsubishi Motors Corp., dated July 12, 1982, along with Amendments thereto, dated January 6, 1988 and October 21, 1994 | $0.00 |
| Nanostellar, Inc. | Proprietary Information Agreement between Nanostellar, Inc. and Delphi Corporation (along with its affiliates ASEC Manufacturing General Partnership) dated January 5, 2006 | $0.00 |
| Perkin Elmer LLC | Purchase Order No. 19863 | $0.00 |
| Premier Manufacturing Support Svc. | Purchase Order No. M41284 | $0.00 |
| Sebring Systems Technical, Inc. | Purchase Order No. 22420 | $0.00 |
| Securenet Inc. | Purchase Order No. 22625 | $0.00 |
| Securitas Companies | Purchase Order No. 22017 | $0.00 |

---

[3]    The Cure Amount for Contrarian Funds LLC ("Contrarian"), as assignee of Aramark Uniform & Career Apparel Inc. ("Aramark"), is subject to the execution of a stipulation by and among the applicable Selling Debtor Entities, Contrarian, and Aramark.

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Siemens Water Technology Corp. | Purchase Order Nos. 19270, 19278, and 19279 | $0.00 |
| Southern Material Handling Co. | Purchase Order No. 17846 | $0.00 |
| Starsource Management Services | Purchase Order No. 18316 | $0.00 |
| Starcycle Inc. | Purchase Order NO. 20638 | $0.00 |
| T Mobile Wireless | Account No. 313-858-725 | $0.00 |
| Tro-Pro Consulting | Purchase Order No. 22127 | $0.00 |
| U.S. Cellular | Account No. 940-304-883 | $0.00 |
| Varroc Engineering Pvt. Ltd. | Side Letter Agreement between Varroc Engineering Pvt. Ltd.; Varroc Exhaust Systems Pvt. Ltd; Delphi Automotive Systems Pvt. Ltd., Delphi Automotive Systems LLC; Delphi Technologies, Inc. dated May 12, 2005; First Amendment dated July 15, 2006 to the Side Letter Agreement concerning production of catalysts from Delphi to Varroc Engineering Pvt. Ltd. and Varroc Exhaust Systems Pvt. Ltd. | $0.00 |
| Verde Vista Resources Inc. | Purchase Order No. M41417 | $0.00 |
| Vinson Process Controls | Delphi Automotive Systems Confidentiality Agreement with Vinson Process Controls dated October 29, 2002 | $0.00 |

3

**Schedule 2**

**SCHEDULE 4.8.1 TO AGREEMENT**
**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

| | | **Purchase Price Allocation $ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V.  Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd.  Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of  Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.4 |
| | **Total** | 75.0 |