IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :

In re                   :     Chapter 11
                     :

DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                     :

            Debtors.  :     (Jointly Administered)
                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

    I, Elizabeth Adam, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

    On August 15, 2007, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification and (iii) upon the parties listed on Exhibit C hereto via facsimile:

    1) Proposed Twenty-First Omnibus Hearing Agenda (Docket No. 9087) [a copy of which is attached hereto as Exhibit D]

    On August 15, 2007, I caused to be served the document listed below upon the parties listed on Exhibit E hereto via overnight delivery:

    2) Debtors' Omnibus Reply in Support of Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) Insurance Claim Not Reflected on Debtors' Books and Records, (D) Untimely Claims and Untimely Tax Claims, and (E) Claims Subject to Modification, Tax Claims Subject to Modification, and Modified Claims Asserting Reclamation with Respect to Claims Listed on Exhibit E-2) (Docket No. 9090) [a copy of which is attached hereto as Exhibit F]

    On August 15, 2007, I caused to be served the document listed below upon the parties listed on Exhibit G hereto via overnight delivery:

3) Debtors' Omnibus Reply in Support of Debtors' Eighteenth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain Duplicate or Amended Claims ("Debtors' Omnibus Reply in Support of Eighteenth Omnibus Claims Objection") (Docket No. 9093) [a copy of which is attached hereto as <u>Exhibit H</u>]

On August 15, 2007, I caused to be served the document listed below upon the parties listed on <u>Exhibit I</u> hereto via overnight delivery:

4) Debtors' Omnibus Reply in Support of Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) Untimely Claim, and (D) Claims Subject to Modification, Tax Claims Subject to Modification, Modified Claims Asserting Reclamation, and Consensually Modified and Reduced Claims ("Debtors' Omnibus Reply in Support of Nineteenth Omnibus Claims Objection") (Docket No. 9094) [a copy of which is attached hereto as <u>Exhibit J</u>]

On August 15, 2007, I caused to be served the document listed below (i) upon the parties listed on <u>Exhibit K</u> hereto via overnight delivery, (ii) upon the parties listed on <u>Exhibit L</u> hereto via electronic notification and (iii) upon the parties listed on <u>Exhibit M</u> hereto via postage pre-paid U.S. mail:

5) Debtors' (I) Summary of Modifications to Sale Approval Order in Connection with Sale of the Debtors' Catalyst Business and (II) Omnibus Reply to Objections to (A) Notices of Assumption and/or Assumption and (B) Cure Notices (Docket No. 9097) [a copy of which is attached hereto as <u>Exhibit N</u>]

Dated: August 17, 2007

_____*/s/ Elizabeth Adam*_____
Elizabeth Adam

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 17th day of August, 2007, by Elizabeth Adam, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____*/s/ Leanne V. Rehder*_____

Commission Expires:___*3/2/08*_____

# EXHIBIT A

Page 1 of 3
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/16/2007 2:41 PM
Master Service List Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/16/2007 2:41 PM
Master Service List Overnight Mail

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/16/2007 2:41 PM
Master Service List Overnight Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Ccompany |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/16/2007 2:33 PM
Overnight All

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|------|--------------------|----------|----------|------|-------|-----|
| Knox County Trustee Fred Sisk | Hodges Doughty & Carson PLLC | Dean B Farmer | PO Box 869 | Knoxville | TN | 37901-0869 |
| Miami Dade County Tax Collector | Melinda S Thornton Murray A Greenberg RA Cuevas Jr | Stephen P Clark Ctr | 111 NW First St Ste 2810 | Miami | FL | 33128-1993 |
| Montgomery County Treasurer | Douglas M Tout Assistant Prosecuting Attny | 301 W Third St | PO Box 972 | Dayton | OH | 45422 |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 |
| Tuscaloosa County | Tuscaloosa County Tax Collector | Peyton C Cochrane | 714 Greensboro Ave Rm 124 | Tuscaloosa | AL | 35401 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/16/2007 2:27 PM
17th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Beaver Valley Manufacturing Inc | Ira Rubin | Goldman Rubin & Shapiro | 1340 Woodman Dr | Dayton | OH | 45432 |
| Metalforming Technologies Inc | Pauline K Morgan<br>Michael R Nestor<br>Curtis J Crowther<br>Sean M Beach | Young Conaway Stargatt & Taylor LLP | The Brandywine Bldg 1000 W St 17th Fl | Wilmington | DE | 19899-0931 |
| Metalforming Technologies Inc | Pauline K Morgan<br>Michael R Nestor<br>Curtis J Crowther<br>Sean M Beach | Young Conaway Stargatt & Taylor LLP | PO Box 391 | Wilmington | DE | 19899-0931 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/16/2007 2:28 PM
18th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Agent for CDW Computer Centers Inc | Phyllis A Hayes | Receivable Management Services | 307 Intl Cir Ste 720 | | Hunt Valley | MD | 21030 |
| Akzo Nobel Coatings Inc | Byron C Starcher Esq | Nelson Mullins Riley & Scarborough LLP | 999 Peachtree St NE Ste 1400 | | Atlanta | GA | 30309 |
| Akzo Nobel Coatings Inc | Michelle L Meiselman Esq | 5555 Spalding Dr | | | Norcross | GA | 30092 |
| Ametek Inc | Anne Marie Aaronson & J Gregg Miller | Pepper Hamilton LLP | 3000 Two Logan Sq | 18th and Arch Streets | Philadelphia | PA | 19103 |
| Angelina County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Arbogast Michael A And Rebecca C Arbogast | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Arnold Center Inc | Susan M Cook | Lambert Leser Isackson Cook & Giunta PC | 916 Washington Ave Ste 309 | | Bay City | MI | 48708 |
| ATS Ohio Inc | Robert D Gordon | Clark Hill PLC | 500 Woodward Ave Ste 3500 | | Detroit | MI | 48226-3435 |
| Bellsouth Communications Inc | Eric H Horn & Vincent A DAgostino Esq | Lowenstein Sandler PC | 65 Livingston Ave | | Roseland | NJ | 07068 |
| Benecke Kaliko AG | Daniel Felden | Continental AG | Strawinskylaan 3111 6th Fl | | Amsterdam | | 1077ZX |
| Benecke Kaliko AG | James M Lawniczak & Nathan A Wheatly | Calfee Halter & Griswold LLP | 1400 McDonald Investment Center | 800 Superior Ave | Cleveland | OH | 44114 |
| Beuke Robert L | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Bex Russell And Barbara A | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Bueke Robert L And Norma J | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Buis James And Jacqueline | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Callanan Industries Inc dba Manitou Concrete Company | Christopher H Corcoran | Wiedman Vazzana Corcoran & Volta PC | 5 S Fitzhugh St | | Rochester | NY | 14614 |
| Cameron County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Cameron County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Cameron County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Canter Richard And Louanna | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Cingular Wireless nka AT&T Mobility | Eric H Horn | Vincent A DAgostino Esq | Lowenstein Sandler PC | 65 Livingston Ave | Roseland | NJ | 07068 |
| Circle Broach Company | Howard A Larson | Couzens Lansky Feakl Ellis Roeder & Lazar PC | 39395 W 12 Mile Rd Ste 200 | | Farmington Hills | MI | 48331 |
| City of El Paso | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of El Paso | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of El Paso | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Harlingen | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Harlingen | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Harlingen | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of San Marcos | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of San Marcos | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Vandalia Ohio | Sarah B Chapman Carter | Pickrel Schaeffer & Ebeling Co LPA | 2700 Kettering Tower | | Dayton | OH | 45423 |
| Cloncs Donald And Carole L | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Computer Patent Annuities Limited | Calinoff & Katz LLP | Dorothy H De Marinis Riggio | 140 E 45th St 17th Fl | | New York | NY | 10017 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 1 of 4                    8/17/2007 1:47 PM
                                                                                         19th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|------|--------------------|----------|----------|----------|------|-------|-----|
| Computer Patent Annuities Limited | Gill David | Accounts Receivable Manager | CPA House | 11-15 Seaton Pl | St Helier | Jersey | JE1 1BL |
| Computer Patent Annuities Limited | Thomas D Renda & Kerry Hopkins | Miles & Stockbridge PC | 11 N Washington St Ste 700 | | Rockville | MD | 20850-4229 |
| Contrarian Funds LLC | Jeffrey R Gleit & Adam L Shiff | David S Rosner & Daniel A Fliman | Kasowitz Benson Toerres & Friedman LLP | 1633 Broadway | New York | NY | 10019 |
| CTP Carrera Inc dba Carclo Technical Plastics | | 600 Depot St | | | Latrobe | PA | 15650 |
| Cypress Fairbanks ISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Dallas County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Davis Ii Robert E Plaintiff V | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| DC Coaters | Max K McNeal | DC Coaters Inc | 550 W Industrial Dr | | Tipton | IN | 46072 |
| DC Coaters | Paul R Hage | Jaffe Raitt Heuer & Weiss PC | 27777 Franklin Rd Ste 2500 | | Southfield | MI | 48034 |
| Demag Plastics Group Corporation dba Van Dorn Demag Corporation | Attn Karen Freemean | 11792 Alameda Dr | | | Strongsville | OH | 44136 |
| Demag Plastics Group Corporation dba Van Dorn Demag Corporation | Daniel A Demarco & Christopher W Peer | Hahn Loeser & Parks LLP | 200 Public Sq Ste 3300 | | Cleveland | OH | 44114-2301 |
| Demag Plastics Group Corporation dba Van Dorn Demag Corporation | Leslie A Berkoff | Moritt Hock Hamroff & Horowitz LLP | 400 Garden City Plz | | Garden Cty | NY | 11530 |
| Empresas Ca Le Tlaxcala Sa De Cv | Elena Lazarou | Reed Smith LLP | 599 Lexington Ave | | New York | NY | 10022 |
| Empresas Ca Le Tlaxcala Sa De Cv | Stephen T Bobo | Reed Smith LLP | 10 S Wacker Dr 40th Fl | | Chicago | IL | 60606 |
| Ennis Donald And Carol | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Freudenberg Nok General Partnership | Ralph E McDowell | Bodman LLP | 6th Fl at Ford Field | 1901 St Antoine St | Detroit | MI | 48226 |
| Freudenberg Nok Inc | Ralph E McDowell | Bodman LLP | 6th Fl at Ford Field | 1901 St Antoine St | Detroit | MI | 48226 |
| Freudenberg Nonwovens LP | Freudenberg Nonwovens LP Eft | 2975 Pembroke Rd | | | Hopkinsville | KY | 42240 |
| Freudenberg Nonwovens LP | Ralph E McDowell | Bodman LLP | 6th Fl t Ford Field | 1901 St Antoine St | Detroit | MI | 48226 |
| Furukawa Electric North America APD and Furukawa Electric Co Ltd | Gerard DiConza | DiConza Law PC | 630 Third Ave 7th Fl | | New York | NY | 10017 |
| Furukawa Electric North America APD and Furukawa Electric Co Ltd | Michael S McElwee | Varnum Riddering Schmidt & Howlett LLP | 333 Bridge St NW Ste 1700 | | Grand Rapids | MI | 49504 |
| Furukawa Electric North America APD and Furukawa Electric Co Ltd | Michael S McElwee | Varnum Riddering Schmidt & Howlett LLP | Bridgewater Place | PO Box 352 | Grand Rapids | MI | 49501 |
| GE Fanuc Automation North America Inc | Michael R Enright | Robinson & Cole LLP | 280 Trumbull St | | Hartford | CT | 06103 |
| Harlingen CISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Harris County City of Houston | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Hoyt Arthur And Vivian | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Hubbard Clarence E | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Kiefel Technologies Inc | Attn Steven E. Grill | Devine Millimet & Branch PA | 111 Amherst St | | Manchester | NH | 03101 |
| Kiefel Technologies Inc | | 5 Merrill Industrial Dr | | | Hampton | NH | 03842 |
| Liquidity Solutions Inc as Assignee | Michael Handler | One University Plz Ste 312 | | | Hackensack | NJ | 07601 |
| Marquardt Switches Inc | Attn Rodney Mayette | 2711 Rte 20 E | | | Cazenovia | NY | 13035 |
| Marquardt Switches Inc | Karen V DeFio & Camille W Hill | Bond Schoeneck & King PLLC | One Lincoln Center | | Syracuse | NY | 13202 |
| Merritt James And Bonnie | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 4

8/17/2007 1:47 PM
19th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|------|--------------------|----------|----------|----------|------|-------|-----|
| Microsys Technologies | Jane Goodyear | 3710 Nashua Dr Unit 1 | | | Mississauga | ON | L4V 1M5 |
| Microsys Technologies | Paige E Barr | Jaffe Raitt Heuer & Weiss PC | 27777 Franklin Rd Ste 2500 | | Southfield | MI | 48034 |
| Milliken & Company | Stanley L Lane Jr & Jenette A Barrow Bosshart | Otterbourg, Steindler, Houston & Rosen PC | 230 Park Ave | | New York | NY | 10169 |
| Milliken & Company | | 1045 Sixth Ave | | | New York | NY | 10018 |
| Minnick Ralph D | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Montague County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Montgomery County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Nueces County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Nueces County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| NXP Semiconductors USA Inc | Robert N Michaelson | Kirkpatrick & Lockhart Preston Gates Ellis LLP | 599 Lexington Ave | | New York | NI | 10022 |
| NXP Semiconductors USA Inc | Robert N Michaelson Esq | Kirkpatrick & Lockhart Preston Gates Ellis LLP | 599 Lexington Ave | | New York | NY | 10022 |
| Obrien Michael And Ingrid Obrien | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Parkview Metal Products Inc | Thomas P Sarb Robert D Wolford | Miller Johnson | 250 Parkview Ave NW Ste 800 | PO Box 306 | Grand Rapids | MI | 49501-0306 |
| PBR Australia Party Ltd | Attn Peter Valentine | PO Box 176 | | | Bentleigh East | VI | 3165 |
| PBR Australia Party Ltd | David G Dragich | 500 Woodward Ave Ste 2700 | | | Detroit | MI | 48226 |
| PBR Australia Party Ltd | Lori V Vaughan | 90 Park Ave | | | New York | NY | 10016 |
| Phelps John W And Deborah J Phelps | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Phillips Robert | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| PIC Productivity Improvement Center | Attn Cathy Burgess | 199 Wentworth St E | | | Oshawa | ON | L1H 3V6 |
| PIC Productivity Improvement Center | Dennis W Loughlin & Lynn M. Brimer | Strobl & Sharp PC | 300 E Long Lake Rd Ste 200 | | Bloomfield Hills | MI | 48304-2376 |
| Proud Douglas And Esther | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Quality Synthetic Rubber Inc | c o Patrick J Keating Esq | Buckingham Doolittle & Burroughs LLP | PO Box 1500 | | Akron | OH | 44309-1500 |
| Quality Synthetic Rubber Inc | Patrick J Keating | Buckingham Doolittle & Burroughs LLP | 3800 Embassy Pkwy Ste 300 | | Akron | OH | 44333 |
| Russell Thomas And Norma | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| San Marcos CISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| San Marcos CISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Schaeffler KG | Matthew B Stein Esq | Sonnenschein Nath & Rosenthal LLP | 1221 Ave of the Americas | | New York | NY | 10020 |
| Secretay of the United States Department of Labor | Jonathan Snare Joan Gestrin Patricia Rodenhausen & Phyllis Dolinko | US Dept of Labor | Office of the Solicitor | 230 S Dearborn St Rm 844 | Chicago | IL | 60604 |
| Secretay of the United States Department of Labor | Jonathan Snare William Everheart Patricia Rodenhausen & Robert Colberg | US Dept of Labor | Office of the Solicitor | 525 S Griffin St Ste 501 | Dallas | TX | 75202 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                Page 3 of 4                8/17/2007 1:47 PM
19th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Secretay of the United States Department of Labor | Phyllis Dolinko | Senior Trial Attorney US | Dept of Labor Office of the Solicitor | 230 S Dearborn St 8th Fl | Chicago | IL | 60604 |
| Select Industries Inc | W Timothy Miller | Taft Stettinius & Hollister LLP | 425 Walnut St Ste 1800 | | Cincinnati | OH | 45202 |
| Sherwin Williams Automotive Finishes Corp | Dennis W Loughlin & Lynn M. Brimer | Strobl & Sharp PC | 300 E Long Lake Rd Ste 200 | | Bloomfield Hills | MI | 48304-2376 |
| Sherwin Williams Automotive Finishes Corp | | 4440 Warrensville Center Rd | | | Warrensville Heights | OH | 44128 |
| Sherwin Williams Company | Dennis W Loughlin & Lynn M Brimer | Strobel & Sharp PC | 300 E Long Lake Rd Ste 200 | | Bloomfield Hills | MI | 48304-2376 |
| Siemens Building Technologies Inc | Lauren Newman | Fagel Haber LLC | 55 E Monroe St 40th Fl | | Chicago | IL | 60603 |
| Siemens Energy & Automation Inc | c o Elizabeth L Gunn & Aaron G McCollough | McGuirewoods LLP | One James Center 901 East Cary St | | Richmond | VA | 23219 |
| Sierra International Inc | Anne Marie Aaronson & Francis J Lawall | Pepper Hamilton LLP | 3000 Two Logan Sq | 18th and Arch Streets | Philadelphia | PA | 19103 |
| Sierra Liquidity Fund | as Assgnee to Showers Group Inc Shepard Mfg Co Inc | 2699 White Rd Ste 255 | | | Irvine | CA | 92614 |
| Sierra Liquidity Fund LLC Assignee Dynamic Corporation Assignor | Scott August Tammy Garza & Jim Riley | Sierra Liquidity Fund LLC | 2699 White Rd Ste 255 | | Irvine | CA | 92614 |
| Sierra Liquidity Fund LLC Assignee SMK Electronics Corp USA | Scott August Tammy Garza & Jim Riley | 2699 White Rd Ste 255 | | | Irvine | CA | 92614 |
| Smith James O And Betty J | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Solectron Corporation | Howard Koh Esq | Meister Seeling & Fein LLP | 2 Grand Central Tower | 140 E 45th St 19th Fl | New York | NY | 10017 |
| Solectron Corporation | Patrick M Costello & Lawrence M Schwab | Bialson Bergen & Schwab | 2600 El Camino Real Ste 300 | | Palo Alto | CA | 94306 |
| SPCP Group LLC | Maura I Russell & Paul Traub | Anthony B Stmbo & Brett J Nizzo | Dreier LLP | 449 Park Ave 14th Fl | New York | NY | 10022 |
| Stansbury Ii Robert L | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| State of New Jersey Division of Taxation | Anne Milgram Attorney General of New Jersey | RJ Hughes Justice Complex | 25 Market St | PO Box 106 | Trenton | NJ | 08625-0106 |
| Stuck Ronald P Shelley A Stuck | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| TPG Credit Opportunities Fund LP & TPG Credit Opportunities Investors LP | Tara Hannon Siu Lan Chan & Jay N Heinrich | Mandel Katz & Brosnan LLP | The Law Bldg | 210 Rte 303 | Valley Cottage | NY | 10989 |
| United States Steel Corporation | Richard L Ferrell & Timothy J Hurley | Taft Stettinius & Hollister LLP | 425 Walnut St Ste 1800 | | Cincinnati | OH | 45240 |
| Vector Cantech Inc | Jonathan S Green & Eric D Carlson | Miller Canfield Paddock & Stone PLC | 150 W Jefferson Ave Ste 2500 | | Detroit | MI | 48226 |
| Vector Cantech Inc | Lindsey Stetson | Miller Canfield Paddock & Stone PLC | 101 N Main St 7th Fl | | Ann Arbor | MI | 48103 |
| Waldo Richard L And Gwendolyn A Waldo Plaintiffs V | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Yates Dale A And Jacqueline R Yates | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 4

8/17/2007 1:47 PM
19th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Andrew J. Flame; David P. Primack | Drinker, Biddle & Reath LLP | 1100 N. Market Street | Suite 1000 | Wilmington | DE | 19801 | | Counsel for QEK Global Solutions (US) LP |
| Ashok Kumar | A-1 Specialized Services & Supplies, Inc. | P.O. Box 270 | | Croydon | PA | 19021 | | Owner of A-1 Specialized Services & Supplies, Inc. |
| Barbara Lee Caldwell | Hebert Schenk, P.C. | 4742 North 24th Street | Suite 100 | Phoenix | AZ | 85016 | | Counsel for Maricopa County Treasurer |
| Dennis J. Drebsky; William Thomas | Nixon Peabody LLP | 437 Madison Avenue | | New York | NY | 10022 | | Counsel for Corning Incorporated |
| DG Englebrecht | Impala Platinum Limited | No. 2 Fricker Road | | Illovo | | 2196 | South Africa | Marketing Executive for Impala Platinum Limited |
| Douglas C. Bernstein | Plunkett Cooney PC | 38505 Woodward Avenue | | Bloomfield | MI | 48304 | | Co-Counsel for Denso International America, Inc. |
| Frank F. Velocci | Drinker, Biddle & Reath LLP | 140 Broadway | 39th Floor | New York | NY | 10005 | | Counsel for QEK Global Solutions (US) LP |
| Fumio Koma | Baker & McKenzie | The Prudential Tower | 13-10 Nagatacho 2-Chome | Chiyoda | Tokyo | 100-0014 | Japan | Counsel for Tosch Corporation |
| Jay Selanders | Kutak Rock LLP | 1010 Grand Blvd. | Suite 500 | Kansas City | MO | 64106-2220 | | Counsel for Chrysler |
| Jeffrey R. Gleit; David S. Rosner; Adam L. Schiff; Daniel A. Fliman | Kasowitz, Benson, Torres & Friedman LLP | 1633 Broadway | | New York | NY | 10019 | | Counsel for Contrarian |
| Marc E. Richards | Blank Rome LLP | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174-0208 | | Co-Counsel for Denso International America, Inc. |
| Mike O'Hayer | Law Offices of Michael O'Hayer | 22 North Walnut St. | | West Chester | PA | 19380 | | Counsel for A-1 Specialized Services & Supplies, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481

Page 1 of 1

8/16/2007 2:37 PM
Catalyst Special Parties

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/16/2007 2:41 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/16/2007 2:41 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | |
| Barack, Ferrazzano, Kirshbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirshbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Demolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605 529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Dephi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-222-6300 | 516-222-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| Intermet Corporation | Alan Miller | 301 Commerce Street | Ste 2901 | Fort Worth | TX | 76102 | | | | amiller@intermet.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko<br>Cari Campen Laufenberg<br>Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com<br>claufenberg@kellerrohrback.com<br>eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr.<br>Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com<br>bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel<br>DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com<br>dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert, Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mintz, Levin, Cohn, Ferris Glovsky and Pecpo, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte. Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-intenst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.co m | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte. Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte. Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com  mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadrangegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Campbell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co- Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

8/16/2007 2:34 PM
Email

# EXHIBIT C

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/16/2007 3:10 PM
Master Service List Fax - Agenda Only

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Brendan G Best Esq | 39577 Woodward Ave Ste 300 | | Bloomfield Hills | MI | 48304 | 248-203-0523 | Attorneys for Tremond City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

8/16/2007 2:34 PM
Fax

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | 202-339-8400 | Counsel to Westwood Associates, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Gentral Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

8/16/2007 2:34 PM
Fax

# EXHIBIT D

**Hearing Date: August 16, 2007**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
    In re                               :   Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :   Case No. 05-44481 (RDD)
                                        :
                        Debtors.        :   (Jointly Administered)
                                        :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## PROPOSED TWENTY-FIRST OMNIBUS HEARING AGENDA

Location Of Hearing:        United States Bankruptcy Court for the Southern District of New York,
                            Alexander Hamilton Custom House, Room 610, 6th Floor, One
                            Bowling Green, New York, New York 10004-1408

The matters set for hearing are divided into the following categories for the purposes of this Proposed Agenda:

      A.      Introduction

      B.      Continued Or Adjourned Matters (2 Matters)

      C.      Uncontested, Agreed, Or Settled Matters (5 Matters)

      D.      Contested Matters (4 Matters)

      E.      Adversary Proceeding (1 Matter)

**B.      Continued Or Adjourned Matters***

      1.      **"Creditors' Committee GM Claims And Defenses Motion"** – Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4718)

          *Responses Filed:*      *Debtors' Preliminary Objection To Motion For Order Authorizing Official Committee Of Unsecured Creditors To Prosecute Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of Debtors (Docket No. 4859)*

                                    *Objection Of The Official Committee Of Equity Security Holders Of The Motion For Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 5070)*

---

\*      Motions found at the following docket numbers that appeared on previous Proposed Hearing Agendas have been voluntarily withdrawn from the agenda and would need to be re-noticed under the Case Management Order to be reinstated on an agenda: Docket Nos. 213, 4778, 4912, 5153, 6723, and 6690 (KECP Emergence Incentive Program, Mercedes-Benz U.S. International, Inc.'s Motion to File Claims, Methode Electronics, Inc.'s Setoff Motion, Computer Patent Annuities Limited's Motion To Assume Or Reject Executory Contract, Motion Of Sumida America Inc. To Allow Setoff/Recoupment And For Relief From Automatic Stay, and ATEL Leasing Corporation's Motion To Allow Administrative Claim respectively). In addition, the following adversary proceedings have also been withdrawn from the agenda and would be subject to re-noticing to be reinstated on a hearing agenda: NYCH LLC d/b/a RCS Computer Experience Adv. Pro. No. 06-01902, Docket No. 1 (Complaint To Recover Property Of The Estate), L&W Engineering Adv. Pro. No. 06- 01136, Docket No. 22 (Motion For Summary Judgment), and Aksys Ltd. Adv. Pro. No. 06-01677, Docket No. 2 (Summons And Notice).

*Reply Filed:*          *None.*

*Related Filings:*      *Ex Parte Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4689)*

*Affidavit In Support Of Ex Parte Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4690)*

*Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4691)*

*Exhibits A & B To Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4738)*

*Stipulation And Agreed Order Amending Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4831)*

*So Ordered Stipulation And Agreed Order Amending Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4837)*

3

*Proposed Second Stipulation And Agreed Order Amending Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtor's Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4902)*

*Second Stipulation And Agreed Order Amending Order Authorizing The Official Committee Of Unsecured Creditors To File Under Seal Exhibits To The Committee's Motion For An Order Authorizing It To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4928)*

*Status:*    *By agreement of the parties this matter is being adjourned to the October 25, 2007 omnibus hearing.*

2.    **"Ex Parte Motion To File Supplemental Objection Under Seal"**– Ex Parte Motion For Order Authorizing The Official Committee Of Equity Security Holders To File Under Seal A Supplemental Objection In Further Support Of The Equity Committee's Objection To The Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 5229)

*Response Filed:*    *Comment Of The Official Committee Of Unsecured Creditors To Ex Parte Motion For Order Authorizing The Official Committee Of Equity Security Holders To File Under Seal A Supplemental Objection To Motion For Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 5230)*

*Reply Filed:*    *None.*

*Related Filings:*    *Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 4718)*

4

*Objection Of The Official Committee Of Equity Security Holders To The Motion For An Order Authorizing The Official Committee Of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation And Certain Former Officers Of The Debtors (Docket No. 5070)*

*Status:*    *This matter is being adjourned to the October 25, 2007 omnibus hearing.*

## C.    Uncontested, Agreed, Or Settled Matters

3.    **"Third 365(d)(4) Deadline Extension Motion" -** Motion For Order Under 11 U.S.C. § 365(d)(4) Further Extending Deadline To Assume Or Reject Leases Of Nonresidential Real Property (Docket No. 8760)

*Response Filed:*    *None.*

*Reply Filed:*    *None.*

*Related Filings:*    *None.*

*Status:*    *The hearing with respect to this matter will be proceeding.*

4.    **"Fourth Removal Deadline Extension Motion" -** Motion To Further Extend Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. § 1452 And Fed. R. Bankr. P. 9006 And 9027 (Docket No. 8761)

*Response Filed:*    *None.*

*Reply Filed:*    *None.*

*Related Filings:*    *None.*

*Status:*    *The hearing with respect to this matter will be proceeding.*

5.    **"Preservation Of Estate Claims Procedures Motion" -** Expedited Motion For Order Under 11 U.S.C. §§ 102(1)(a), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), And 9018 (i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, And (iii) Establishing Procedures For

5

Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, Or 553 (Docket No. 8905)

*Responses Filed:*      *None.*

*Reply Filed:*      *None.*

*Related Filings:*      *None.*

*Status:*      *The hearing with respect to this matter will be proceeding.*

6.      **"IUOE, IBEW, And IAM 1113/1114 Settlement And Retiree Benefit Approval Motion"** - Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees (Docket No. 8906)

*Responses Filed:*      *None.*

*Reply Filed:*      *None.*

*Related Filings:*      *None.*

*Status:*      *The hearing with respect to this matter will be proceeding.*

7.      **"IUE-CWA 1113/1114 Settlement Approval Motion"** - Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving Memorandum Of Understanding Among IUE-CWA, Delphi, And General Motors Corporation Including Modification Of IUE-CWA Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUE-CWA-Represented Retirees (Docket No. 8907)

*Responses Filed:*      *None.*

*Reply Filed:*      *None.*

*Related Filings:*      *None.*

*Status:*      *The hearing with respect to this matter will be proceeding.*

6

**D.      Contested Matters**

8.     **"Catalyst Sale Motion"**– Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All The Assets Primarily Used In Debtors' Catalyst Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No. 8179)

Response Filed:            *Notice Of Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All The Assets Primarily Used In Debtors' Catalyst Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No. 8180)*

*Limited Objection Of Corning Incorporated To The Assumption Of, And The Cure Amounts Asserted By Debtor, For Contracts 50186, 50187, 50188 And 50189 In Debtor's Notices Of Assumption And Asserted Cure Amounts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 8592)*

*Maricopa County's Notice Of Perfected Lien And Objection To The "Catalyst Business Sale Motion" If The Taxes Are Not Paid From The Proceeds (Docket No. 8655)*

*Objection To Assumption And/Or Assignment Of Contracts By A-1 Specialized Services & Supplies, Inc. (Docket No. 8670)*

7

*Objection By A-1 Specialized Services & Supplies, Inc. To Notice Of Cure Amount (Docket No. 8669 and 8674)*

*Letter To Judge Drain From Varroc Exhaust Systems, Pvt. Ldt. Regarding Assumption/ Assignment of Executory Contract Or Unexpired Lease To Purchasers In Connection With Sale Of Catalyst Business Of Delphi Corporation (Docket No. 8681)*

*Limited Objection Of Contrarian Funds, LLC To Debtors' Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With The Sale Of Catalyst Business (Docket No. 8877)*

*Amended Limited Objection Of Corning Incorporated To The Assumption Of, And The Cure Amounts Asserted By Debtor, For Contracts 50186, 50187, 50188 And 50189 In Debtor's Notices Of Assumption And Asserted Cure Amounts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 8894)*

*Limited Objection By Denso International America, Inc. To Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Qualified Bidder In Connection With Sale Of Catalyst Business (Docket No. 8904)*

*Objection Of A-1 Specialized Services & Supplies, Inc. To Assumption And/Or Assignment Of Contracts By/To Catalytic Solutions, Inc. (Docket No. 8977)*

*Objection Of Chrysler LLC To  Assumption And/Or Assignment Of Contracts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 9040)*

*Limited Objection Of QEK Global Solutions (US), LP To Assumption And/Or Assignment Of Unexpired Lease To Qualified Bidder In Connection With Sale Of Catalyst Business (Docket No. 9060)*

8

*Impala Platinum's Objection To Assumption Or Assignment Of Contract (Docket No. 9084)*

*Letter from Tosoh Corporation, dated August 9, 2007 (Not filed)*

Reply Filed:    *An omnibus reply will be filed.*

Related Filings:    *Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing In Connection With Sale Of Catalyst Business (Docket No. 8436)*

*Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Purchasers In Connection With Sale Of Catalyst Business (Docket No. 8487)*

*Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With The Sale Of Catalyst Business (Docket No. 8488)*

*Notice Of Extension Of Bid Deadline And Auction In Connection With Sale Of Catalyst Business (Docket No. 8653)*

*Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Purchasers In Connection With Sale Of Catalyst Business (Docket No. 8672)*

*Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With The Sale Of Catalyst Business (Docket No. 8726)*

*Withdrawal Of Maricopa County's Objection To The Debtor's "Catalyst Business Sale Motion" If The Taxes Are Not Paid From The Proceeds (Docket No. 8731)*

*Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Purchasers In Connection With Sale Of Catalyst Business (Docket No. 8816)*

9

*Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Qualified Bidder In Connection To Sale Of Catalyst Business (Docket No. 8837)*

*Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Purchasers In Connection With Sale Of Catalyst Business (Docket No. 8903)*

*Notice Of Withdrawal Of Limited Objection By Denso International America, Inc. To Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Qualified Bidder In Connection With Sale Of Catalyst Business (Docket No. 9071)*

*Withdrawal Of Objection Of Chrysler LLC To Assumption And/Or Assignment Of Contracts In Connection With The Sale Of Debtor's Catalyst Business (Docket No. 9072)*

*Memorandum In Support Of Objection To Assumption Of Executory Contract Filed By A-1 Specialized Services And Supplies, Inc. (Docket No. 9085)*

*Status:*          *The hearing with respect to this matter will be proceeding.*

9.    **"Seventeenth Omnibus Claims Objection"** – Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation (Docket No. 8270)

*Responses Filed:*    *Response Of Hoover Precision Products, Inc. To Debtors' Seventeenth Omnibus Claims Objection (Docket No. 8388)*

*Response To Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C)*

10

*Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation (Docket No. 8460)*

*Response And Objection Of Fraenkische USA, LP To Debtors' Seventeenth Omnibus Claims Objection With Respect To Claim Number 16511 (Docket No. 8473)*

*Response Of Motorola, Inc. To The Debtors' Seventeenth Omnibus Objection To Claims (Docket No. 8482)*

*Response Of Temic Automotive Of North America, Inc. To The Debtors' Seventeenth Omnibus Objection To Claims (Docket No. 8483)*

*Joint Response To Motion Of Barnes Group Canada Corp., As Claimant, And Longacre Master Fund, Ltd., As Assignee (Docket No. 8493)*

*Response Of Datwyler Rubber & Plastics, Inc. To The Debtors' Seventeenth Omnibus Objection To Claims (Claim Number 10907) (Docket No. 8495)*

*Response And Objection Of ZF Boge Elastmetall LLC To Debtor's Seventeenth Omnibus Claims Objection (Docket No. 8507)*

*Response Of Contrarian Funds, LLC To Debtors' Seventeenth Omnibus Claims Objections (Docket No. 8508)*

*Eaton Corporation's Response To Debtors' Seventeenth Omnibus Claims Objection (Docket No. 8509)*

*Holset Engineering Company's Response To Debtors' Seventeenth Omnibus Claims Objection (Docket No. 8512)*

*Response Of ON Semiconductor Components Industries LLC To Debtors' 17th Omnibus Objection To Claims (Docket No. 8513)*

11

*Claimant's Response To Debtors' Objection To
Proofs Of Claim Filed By RLI Insurance Company
(Docket No. 8523)*

*Miami-Dade County Tax Collector's Response To
Debtors' Seventeenth Omnibus Claims Objection
(Docket No. 8527)*

*Response On Behalf Of Knox County To Debtors'
Seventeenth Omnibus Objection (Docket No. 8528)*

*Response Of City Of McAllen And South Texas
College To Debtor's Seventeenth Omnibus Objection
(Substantive) Pursuant To 11 U.S.C. §502(b) And
Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently
Documented Claims, (B) Claims Not Reflected On
Debtor's Books And Records, (C) Insurance Claim
Not Reflected On Debtors' Books And Records,(D)
Untimely Claims And Untimely Tax Claims, And (E)
Claims Subject To Modification, Tax Claims Subject
To Modification, And Modified Claims Asserting
Reclamation (Docket No. 8530)*

*Response Of Liquidity Solutions, Inc., As Assignee,
To Debtors' Seventeenth Omnibus Objection
(Substantive) Pursuant To 11 U.S.C. § 502(b) And
Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently
Documented Claims, (B) Claims Not Reflected On
Debtors' Books And Records, (C) Insurance Claim
Not Reflected On Debtors' Books And Records, (D)
Untimely Claims And Untimely Tax Claims, And (E)
Claims Subject To Modification, Tax Claims Subject
To Modification, And Modified Claims Asserting
Reclamation (Docket No. 8531)*

*Objection To Debtors' Seventeenth Omnibus
Objection (Substantive) Pursuant To 11 U.S.C. §
502(b) And Fed. R. Bankr. P. 3007 To Certain
Claims Subject to Modification, Tax Claims Subject
To Modification And Modified Claims Asserting
Reclamation (Docket No. 8535)*

*Response To Debtors' Seventeenth Omnibus
Objection (Substantive) Pursuant To 11 U.S.C.
§502(b) And Fed. R. Bank. P. 3007 To Certain (A)
Insufficiently Documented Claims, (B) Claims Not
Reflected On Debtors' Books And Records, (C)*

12

*Insurance Claims Not Reflected On Debtors' Books
And Records, (D) Untimely Claims And Untimely
Tax Claims, And (E) Claims Subject To Modification,
Tax Claims Subject To Modification, And Modified
Claims Asserting Reclamation (Docket No. 8538)*

*Response of Contech LLC To Debtors' Seventeenth
Omnibus Claims Objection (Docket No. 8542)*

*Response Of Motion Industries, Inc. To Debtors'
Seventeenth Omnibus Objection (Substantive)
Pursuant To 11 U.S.C. § 502(B) And Fed. R. Bankr.
P. 3007 To Certain (A) Insufficiently Documented
Claims, (B) Claims Not Reflected On Debtors' Books
And Records, (C) Insurance Claim Not Reflected On
Debtors' Books And Records, (D) Untimely Claims
And Untimely Tax Claims, And (E) Claims Subject
To Modification, Tax Claims Subject To
Modification, And Modified Claims Asserting
Reclamation (the "Seventeenth Omnibus Claims
Objection")  (Docket No. 8545)*

*Response Of Vanguard Distributors, Inc. To
Debtors' Seventeenth Omnibus Objection To Proofs
Of Claim (Docket No. 8547)*

*Response Of Rothrist Tube Inc. To The Debtors'
Seventeenth Omnibus Objection To Claims (Claim
Number 2680) (Docket No. 8552)*

*Response Of NEC Electronics America, Inc. To
Debtors' Objection To Claim No. 16368 (Docket No.
8553)*

*Response Of Cleo Inc. To Debtors' Seventeenth
Omnibus Objection To Claims (Docket No. 8554)*

*Response Of Siemens PLC (A&D Division) To
Debtors' Seventeenth Omnibus Objection
(Substantive) Pursuant To 11 U.S.C. Section 502(B)
And Fed. R. Bankr. P. 3007 To Certain (A)
Insufficiently Documented Claims, (B) Claims Not
Reflected On Debtors' Books And Records, (C)
Insurance Claim Not Reflected On Debtors' Books
And Records, (D) Untimely Claims And Untimely
Tax Claims, And (E) Claims Subject To Modification,*

13

*Tax Claims Subject To Modification, And Modified
Claims Asserting Reclamation (Docket No. 8566)*

*Response Of E.I. Du Pont De Nemours And
Company To Debtors' Seventeenth Omnibus
Objection To Claims (Docket No. 8569)*

*Collins & Aikman Corporation, et al.'s Response To
Debtors' Seventeenth Omnibus Objection (Docket
No. 8572)*

*United States Of America's Response To Debtors'
Objection To The Claim Of The Internal Revenue
Service (Docket No. 8573)*

*Response And Opposition Of Conestoga-Rovers &
Associates, Inc. To Debtors' Objection To Claim,
Made Within Debtors' Seventeenth Omnibus Claims
Objection (Docket No. 8576)*

*Response Of Contitech Elastomer Coatings To
Debtors' Seventeenth Omnibus Objection To Claim
No. 9079 (Docket No. 8577)*

*Response Of Benecke-Kaliko AG To Debtors'
Seventeenth Omnibus Objection To Claim No. 9080
(Docket No. 8578)*

*Response Of Harco Brake Systems, Inc. To
Seventeenth Omnibus Claim Objection (Docket No.
8580)*

*L&W Engineering Co.'s Response To Debtors'
Seventeenth Omnibus Objection (Docket No. 8581)*

*Joint Response Of United Plastics Group, As
Claimant, And Longacre Master Fund, LTD., As
Assignee, To Debtors' Seventeenth Omnibus
Objection (Substantive) Pursuant To 11 U.S.C. §
502(d) And Fed. R. Bankr. P. 3007 To Certain (A)
Insufficiently Documented Claims, (B) Claims Not
Reflected On Debtors' Books And Records, (C)
Insurance Claim Not Reflected On Debtors' Books
And Records, (D) Untimely Claims And Untimely
Tax Claims, And (E) Claims Subject To Modification,
Tax Claims Subject To Modification, And Modified
Claims Asserting Reclamation (Docket No. 8585)*

14

*Response Of A. Schulman, Inc. In Opposition To Debtors' Seventeenth Omnibus Claims Objection (Docket No. 8586)*

*Ohio Department Of Taxation's Response To Debtors' Seventeenth Objection To Claims (Docket No. 8587)*

*Response Of Viasystems To Debtors' Objection To Claim No. 12383 (Docket No. 8591)*

*Response And Objection Of SPCP Group, L.L.C. To Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Related On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification And Modified Claims Asserting Reclamation (Docket No. 8599)*

*Response To Seventeenth Omnibus Claims Objection By Knox County Trustee Scheduled Exhibit D-2 (Docket No. 8896)*

*Response Of Montgomery County, Ohio To Debtors' Seventeenth Omnibus Objection (Docket No. 9010)*

| | |
|---|---|
| *Reply Filed:* | *Debtors' Omnibus Reply In Support Of Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation (Docket No. 8668)* |
| *Related Filings:* | *Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors' Books* |

15

*And Records, (D) Untimely Claims And Untimely*
*Tax Claims, And (E) Claims Subject To Modification,*
*Tax Claims Subject To Modification, And Modified*
*Claims Asserting Reclamation Identified In*
*Seventeenth Omnibus Claims Objection (Docket No.*
*8737)*

Status:        *The hearing will proceed with respect to claims for*
               *which no responses have been filed.  The hearing*
               *will be adjourned with respect to all other responses*
               *to future claims hearing dates in accordance with*
               *this Court's Order Pursuant To 11 U.S.C.§ 502(b)*
               *And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026,*
               *9006, 9007, And 9014 Establishing (I) Dates For*
               *Hearings Regarding Objections To Claims And (II)*
               *Certain Notices And Procedures Governing*
               *Objections To Claims, entered December 7, 2006*
               *(Docket No. 6089).*

10.    **"Eighteenth Omnibus Claims Objection" -** Debtors' Eighteenth
       Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed.
       R. Bankr. P. 3007 To Certain Duplicate Or Amended Claims (Docket No.
       8616)

       Responses Filed:    *Motion Of Beaver Valley Manufacturing, Inc. For*
                           *An Order Granting It Leave To Amend Its Claim, No.*
                           *11186, Filed July 26, 2006 And Response To*
                           *Objection To Amended Proof Of Claim Together*
                           *With Notice Thereof To Parties In Interest Of*
                           *Opportunity Or Need To Be Heard (Docket No.*
                           *8995)*

                           *Metalforming Technologies, Inc.'s Response To*
                           *Debtors' Eighteenth Omnibus Objection*
                           *(Procedural) Pursuant To 11 U.S.C. § 502(b) And*
                           *Fed. R. Bankr. P. 3007 To Certain Duplicate Or*
                           *Amended Claims (Docket No. 9042)*

       Reply Filed:        *An omnibus reply will be filed.*

       Related Filings:    *None.*

       Status:             *The hearing will proceed with respect to claims for*
                           *which no responses have been filed.  The hearing*
                           *will be adjourned with respect to all other responses*
                           *to future claims hearing dates in accordance with*
                           *this Court's Order Pursuant To 11 U.S.C.§ 502(b)*

16

*And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089).*

11.   **"Nineteenth Omnibus Claims Objection"** - Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8617)

*Responses Filed:*          *Response Of GE Fanuc Automation North America, Inc. To: Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C.§ 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8723)*

*Response Of Angelina County, Bexar County, Cameron County, City Of El Paso, City Of Harlingen, City Of San Marcos, Cypress-Fairbanks ISD, Dallas County, Harlingen CISD, Harris County/City Of Houston, Hidalgo County, Montague County, Montgomery County, Nueces County, San Marcos CISD & Tarrant County To Debtor's Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtor's Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8857)*

*Response Of Akzo Nobel Coatings Inc., To The Debtors' Nineteenth Omnibus Objection To Claims (Docket No. 8902)*

17

*Response Of Quality Synthetic Rubber, Inc. To
Debtors' Nineteenth Omnibus Objection
(Substantive) To Certain Claims (Docket No. 8917)*

*Response Of United States Steel Corporation To
Debtors' Nineteenth Omnibus Claims Objection
(Substantive) Pursuant To 11 U.S.C. 502(b) And Fed.
R. Bankr. P. 3007 To Certain (A) Insufficiently
Documented Claims, (B) Claims Not Reflected On
Debtors' Books And Records, (C) Untimely Claims,
And (D) Claims Subject To Modification, Tax Claims
Subject To Modification, Modified Claims Asserting
Reclamation, And Consensually Modified And
Reduced Claims (Docket No. 8921)*

*Response Of Ametek Inc. To Debtors' Nineteenth
Omnibus Objection To Claims (Docket No. 8923)*

*Response Of Sierra Inc. To Debtors' Nineteenth
Omnibus Objection To Claims (Docket No.8924)*

*Response Of Siemens Energy & Automation, Inc. To
Debtors' Nineteenth Omnibus Objection
(Substantive) Pursuant To 11 U.S.C. Section 502(b)
And Fed. R. Bankr. P. 3007 To Certain (A)
Insufficiently Documented Claims, (B) Claims Not
Reflected On Debtors' Books And Records, (C)
Untimely Claims, And (D) Claims Subject To
Modification, Tax Claims Subject To Modification,
Modified Claims Asserting Reclamation, And
Consensually Modified And Resolved Claims
(Docket No. 8925)*

*Response Of Solectron Corporation To Nineteenth
Omnibus Objection To Claims (Docket No. 8927)*

*Response Of Liquidity Solutions, Inc., As Assignee,
To Debtors' Nineteenth Omnibus Objection
(Substantive) Pursuant To 11 U.S.C. § 502(b) And
Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently
Documented Claims, (B) Claims Not Reflected On
Debtors' Books And Records, (C) Untimely Claim,
And (D) Claims Subject To Modification, Tax Claims
Subject To Modification, Modified Claims Asserting
Reclamation, And Consensually Modified And
Reduced Claims (Docket No. 8928)*

18

*Response Of Bellsouth Telecommunications Inc. To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8929)*

*Response Of Demag Plastics Group, Corporation. Dba Van Dorn Demag Corporation To The Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8931)*

*Response Of Computer Patent Annuities Limited To The Debtors' Nineteenth Omnibus Claims Objection (Docket No. 8932)*

*Response Of Cingular Wireless N/K/A AT&T Mobility To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8933)*

*NXP Semiconductors USA Inc.'s Response To The Debtors' Nineteenth Omnibus Objection (Docket No. 8935)*

*Response Of DC Coaters, Inc. To The Debtors' Nineteenth Omnibus Objection To Claims (Docket No. 8938)*

*Response Of PBR Australia Party Ltd. To Debtors'
Nineteenth Omnibus Objection (Substantive)
Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr.
P. 3007 To Certain (A) Insufficiently Documented
Claims, (B) Claims Not Reflected On Debtors' Books
And Records, (C) Untimely Claim, And (D) Claims
Subject To Modification, Tax Claims Subject To
Modification, Modified Claims Asserting
Reclamation, And Consensually Modified And
Reduced Claims (Docket No. 8939)*

*Response Of Arnold Center, Inc. To Debtors'
Nineteenth Omnibus Objection (Substantive)
Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P.
3007 To Certain (A) Insufficiently Documents
Claims, (B) Claims Not Reflected On Debtors' Books
And Records, (C) Untimely Claim, And (D) Claims
Subject To Modification, Tax, Claims Subject To
Modification, Modified Claims Asserting
Reclamation, And Consensually Modified And
Reduced Claims (Docket No. 8940)*

*NXP Semiconductors USA, Inc.'s Corrected
Response To The Debtors' Nineteenth Omnibus
Objection (Docket No. 8941)*

*Response Of Microsys Technologies, Inc. To The
Debtors' Nineteenth Omnibus Objection To Claims
(Docket No. 8949)*

*Response Of Parkview Metal Products, Inc. To
Debtors' Nineteenth Omnibus Objection
(Substantive) Pursuant To 11 U.S.C. § 502(b) And
Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently
Documented Claims, (B) Claims Not Reflected On
Debtors' Books And Records, (C) Untimely Claims
And (D) Claims Subject To Modification, Tax Claims
Subject To Modification, Modified Claims Asserting
Reclamation, And Consensually Modified And
Reduced Claims (Docket No. 8950)*

*Response Of Contrarian Funds, LLC To Debtors'
Nineteenth Omnibus Claims Objections (Docket No.
8953)*

*The State Of New Jersey, Division Of Taxation's
Opposition To Debtors' Nineteenth Omnibus*

20

*Objection (Substantive) To Claims (Docket No. 8956)*

*Response Of Benecke-Kaliko AG To Debtors' Nineteenth Omnibus Objection To Claim No. 9081 (Docket No. 8959)*

*Sherwin Williams Automotive Finishes Corp's Response To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502 (b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation And Consensually Modified And Reduced Claims (Docket No. 8961)*

*Marquardt Switches Inc.'s Response To Debtors' Nineteenth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. Bankr. P. 3007 (Docket No. 8965)*

*Response And Objection Of SPCP Group, L.L.C. To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502 (b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Claim No. 14134) (Docket No. 8967)*

*PIC Productivity Improvement Center's Response To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502 (b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation And Consensually Modified And Reduced Claims (Docket No. 8969)*

21

*Limited Joinder Of TPG Credit Opportunities Fund, L.P. And TPG Credit Opportunities Investors, L.P. To The Response Of Solectron Corporation To Nineteenth Omnibus Objection To Claims (Docket No. 8973)*

*Secretary OF Labor's Response To The Debtors' Nineteenth Omnibus Claims Objection To Her Proof Of Claim Filed On Behalf Of The Delphi Personal Savings Plan For Hourly Employees In The United States (Docket No. 8975)*

*Response Of Freudenberg Nonwovens LP To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502 (b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims; (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8976)*

*Response Of Siemens Building Technologies, Inc. To Debtors' Nineteenth Omnibus Objection To Claims (Docket No. 8978)*

*Kiefel Technologies, Inc.'s Response To Notice Of Objection To Claim (Docket No. 8979)*

*Response of CPT Carrera, Inc. dba Carclo Technical Plastics To Debtors' Nineteenth Omnibus Claims Objection (Docket No. 8980)*

*Response Of Empresas Ca Le Tlaxcala SA De CV (Claim Number 15511) To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8981)*

22

*Response To 19th Omnibus Objection To Claims By Delphi Corporation, et al; Sierra Liquidity Fund, LLC (Assignee); Showers Group Inc. – Shepard Mfg Co., Inc. (Assignor), Claim No. 4211 (Docket No. 8982)*

*Response To 19th Omnibus Objection To Claims By Delphi Corporation, et al; Sierra Liquidity Fund, LLC (Assignee); Dynamic Corporation (Assignor), Claim No. 14669 (Docket No. 8984)*

*Response Of Furukawa Electric North America APD And Furukawa Electric Co., Ltd. To Debtors' 19th Omnibus Claims Objection (Regarding Claim No. 10574) (Docket No. 8986)*

*Response Of City Of Vandalia, Ohio To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax, Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8987)*

*Response Of Freudenberg-NOK, Inc. To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims; (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8989)*

*Response Of George & Sipes, LLP Claimants To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting*

23

*Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8990)*

*Response Of Vector Cantech, Inc. To Debtors' Nineteenth Omnibus Objection (Substantive) To Certain Claims (Docket No. 8991)*

*Affidavit In Response To The United States Bankruptcy Court To The Objection Of Defendant Delphi Corporation, et al. To Disallow, Expunge Or Modify Claims (Docket No. 8992)*

*Response Of Freudenberg-NOK General Partnership To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims; (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8993)*

*Response Of Select Industries Corporation In Opposition To Debtors' Nineteenth Omnibus Claims Objection (Docket No. 8994)*

*Response Of Schaeffler KG To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8996)*

*Response Of Claimant Milliken & Company To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Seeking, In Part, To Modify The Amount Of Milliken's Filed Claim (Docket No. 8997)*

24

*Secretary Of Labor's Response To The Debtors' Nineteenth Omnibus Claims Objection To Her Proof Of Claim Filed On Behalf Of The ASEC Manufacturing Sponsored Employee Benefit Plans (Docket No. 9000)*

*Sherwin Williams Company's Response To Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation And Consensually Modified And Reduced Claims (Docket No. 9007)*

*Response Of Circle Broach Company To 19th Omnibus Claims Objection (Docket No. 9011)*

*Response To Debtor's Nineteenth Omnibus Objection To Claims by Phyllis A. Hayes On Behalf Of CDW Computer Centers, Inc. (Docket No. 9012)*

*Response To 19th Omnibus Objection To Claims By Delphi Corporation, et al.; Sierra Liquidity Fund, LLC (Assignee); SMK Electronics Corp USA (Assignor), Claim No. 11615 (Docket No. 9041)*

*Response Of ATS Ohio Inc. To Debtors' Nineteenth Omnibus Objection To Claims (Docket No. 9075)*

| | |
|---|---|
| *Reply Filed:* | *An omnibus reply will be filed.* |
| *Related Filings:* | *None.* |
| *Status:* | *The hearing will proceed with respect to claims for which no responses have been filed. The hearing will be adjourned with respect to all other responses to future claims hearing dates in accordance with this Court's Order Pursuant To 11 U.S.C.§ 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089).* |

25

E.    **Adversary Proceeding**

12.    **"National Union Fire Insurance Company Of Pittsburgh, PA, Declaratory Judgment"**– Complaint For Declaratory Judgment
Adversary Proceeding No. 07-01435 (Docket  No. 1)

| | |
|---|---|
| *Response Filed:* | *None.* |
| *Reply Filed:* | *None.* |
| *Related Filings:* | *Summons And Notice of Pretrial Conference In An Adversary Proceeding (Docket No. 2)* |
| | *Stipulation Extending Time To Answer Or Move (Docket No. 4)* |
| *Status:* | *By agreement of the parties this matter is being adjourned to the September 27, 2007 omnibus hearing.* |

Dated:  New York, New York
August 15, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

26

# EXHIBIT E

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Knox County Trustee Fred Sisk | Hodges Doughty & Carson PLLC | Dean B Farmer | PO Box 869 | Knoxville | TN | 37901-0869 |
| Miami Dade County Tax Collector | Melinda S Thornton Murray A Greenberg RA Cuevas Jr | Stephen P Clark Ctr | 111 NW First St Ste 2810 | Miami | FL | 33128-1993 |
| Montgomery County Treasurer | Douglas M Tout Assistant Prosecuting Attny | 301 W Third St | PO Box 972 | Dayton | OH | 45422 |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 |
| Tuscaloosa County | Tuscaloosa County Tax Collector | Peyton C Cochrane | 714 Greensboro Ave Rm 124 | Tuscaloosa | AL | 35401 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/16/2007 2:27 PM
17th Omnibus Objection reply parties

# EXHIBIT F

**Hearing Date: August 16, 2007**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

            - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :
          In re                                                 :          Chapter 11
                                                                :
DELPHI CORPORATION, et al.,                                     :          Case No. 05-44481 (RDD)
                                                                :
                              Debtors.                          :          (Jointly Administered)
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS' SEVENTEENTH OMNIBUS OBJECTION
(SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A)
INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS
AND RECORDS, (C) INSURANCE CLAIM NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS,
(D) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIMS, AND (E) CLAIMS SUBJECT TO
MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, AND MODIFIED CLAIMS
ASSERTING RECLAMATION WITH RESPECT TO CLAIMS LISTED ON EXHIBIT E-2

("DEBTORS' OMNIBUS REPLY IN SUPPORT OF SEVENTEENTH
OMNIBUS CLAIMS OBJECTION – EXHIBIT E-2")

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby submit

this omnibus reply in support of the Seventeenth Omnibus Objection (Substantive) Pursuant To

11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented

Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not

Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims,

And (E) Claims Subject To Modification, Tax Claims Subject to Modification, And Modified

Claims Asserting Reclamation (Docket No. 8270) (the "Seventeenth Omnibus Claims Objection")

with respect to claims (as that term is defined below) listed on Exhibit E-2 thereto, and

respectfully represent as follows:

1.      The Debtors filed the Seventeenth Omnibus Claims Objection on June 15,

2007, seeking entry of an order (a) disallowing and expunging certain "Claims," as that term is

defined in 11 U.S.C. § 101(5), because they contain insufficient documentation in support of the

Claims asserted, (b) disallowing and expunging certain Claims because they assert liabilities or

dollar amounts that are not reflected on the Debtors' books and records, (c) disallowing and

expunging one Claim, which was filed by an insurance company, because it asserts liabilities that

are not reflected on the Debtors' books and records, (d) disallowing and expunging certain

Claims because they were untimely pursuant to the Bar Date Order, (e) disallowing and

expunging one Claim because it was filed by a taxing authority and was untimely pursuant to the

Bar Date Order, (f) revising the asserted amount or classification, and/or changing the identity of

---

[1]      Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the
Seventeenth Omnibus Claims Objection.

the alleged Debtor with respect to certain Claims, (g) revising the asserted amount or

classification, and/or changing in the identity of the alleged Debtor, with respect to certain

Claims filed by taxing authorities, or (h) revising the asserted amount or classification, and/or

changing the identity of the alleged Debtor, with respect to certain Claims, some of which are

subject to an agreement between the claimant and the Debtors relating to the valid amount of

each claimant's reclamation demand, subject to certain reserved defenses, and some of which are

held by claimants who are deemed to have consented to the Debtors' determination of the valid

amount of the reclamation demand.

   2.  The Debtors sent to each claimant whose proof of claim is subject to an

objection pursuant to the Seventeenth Omnibus Claims Objection a personalized Notice Of

Objection To Claim, which specifically identified such claimant's proof of claim that is subject to

an objection and the basis for such objection.  Responses to the Seventeenth Omnibus Claims

Objection were due by 4:00 p.m. (prevailing Eastern time) on July 12, 2007.

   3.  Due to an error with the customized mail file that was provided to the

Debtors' noticing agent to generate the personalized Notices Of Objection To Claim, the

personalized Notices Of Objection To Claims that were sent to claimants whose Claims are listed

on Exhibit E-2 to the Seventeenth Omnibus Claims Objection mislabeled the claims

classification headings.  To correct this error, the Debtors sent a revised personalized Notice Of

Objection To Claim to each claimant whose Claim is listed on Exhibit E-2 to the Seventeenth

Omnibus Claims Objection, setting the hearing on the Debtors' objection to such Claim for the

August 16, 2007 omnibus hearing and extending the deadline for such claimants to respond to

the Seventeenth Omnibus Claims Objection to 4:00 p.m. (prevailing Eastern time) on August 9,

2007.  ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007

4.       Pursuant to the Order Disallowing And Expunging Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation Identified In Seventeenth Omnibus Claims Objection (Docket No. 8737) entered July 26, 2007, this Court adjourned the hearing with respect to all Claims listed on Exhibit E-2 to the Seventeenth Omnibus Claims Objection to August 16, 2007.

5.       As of August 14, 2007 at 12:00 p.m. (prevailing Eastern time), the Debtors had received four timely-filed formal docketed responses and one untimely-filed formal docketed response (collectively, the "Responses") to the Seventeenth Omnibus Claims Objection from Claimants whose Claims are listed on Exhibit E-2 thereto.  In the aggregate, the five Responses cover 27 Claims.  A chart summarizing each of the Responses is attached hereto as Exhibit A.

6.       Pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims (Docket No. 6089) entered December 6, 2006 (the "Claims Objection Procedures Order"), the hearing with respect to each of the Claims for which a Response was filed will be adjourned to a sufficiency hearing or claims objection hearing, as appropriate, to determine the disposition of each such Claim.

7.       As set forth on Exhibit A hereto, the Debtors have agreed to adjourn to a future date the claims hearing with respect to the 27 Claims for which Responses were filed.  The

4

revised proposed order, a copy of which is attached hereto as <u>Exhibit B</u> (the "Revised Order"),[2] reflects the adjournment of the hearings with respect to the Claims for which Responses were filed, <u>provided</u>, <u>however</u>, that such adjournment will be without prejudice to the Debtors' right to assert that any of such Responses was untimely or otherwise deficient under the Claims Objection Procedures Order.

8.    In addition to the Responses, the Debtors also received informal letters, e-mails, and telephone calls from various parties questioning the relief requested with the Seventeenth Omnibus Claims Objection and seeking to reserve certain of their rights with respect thereto (the "Informal Responses").  The Debtors believe that all the concerns expressed by the Informal Responses have been adequately resolved.

9.    Except for those Claims that have been adjourned to future hearing dates, the Debtors believe that the Revised Order adequately addresses the issues raised by the respondents.  Thus, the Debtors request that the Court grant the relief requested by the Debtors and enter the Revised Order.

---

[2]    Attached hereto as <u>Exhibit C</u> is a copy of the Revised Order marked to show revisions to the form of proposed order that was submitted with the Seventeenth Omnibus Claims Objection.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) sustaining the Seventeenth Omnibus Claims Objection with respect to the Claims listed on Exhibit E-2 thereto, subject to the modifications made to the Revised Order, (b) adjourning the hearing with respect to all Claims for which a Response was filed pursuant to the Claims Objection Procedures Order, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
         August 15, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By: /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr. (JB 4711)
                                   John K. Lyons (JL 4951)
                                   Ron E. Meisler (RM 3026)
                                 333 West Wacker Drive, Suite 2100
                                 Chicago, Illinois  60606
                                 (312) 407-0700

                                 - and -

                              By: /s/ Kayalyn A. Marafioti
                                   Kayalyn A. Marafioti (KM 9632)
                                   Thomas J. Matz (TM 5986)
                                 Four Times Square
                                 New York, New York  10036
                                 (212) 735-3000

                                 Attorneys for Delphi Corporation, et al.,
                                   Debtors and Debtors-in-Possession

6

**Exhibit A**

**In re Delphi Corporation, et al., Case No. 05-44481 (RDD)**

*Responses To The Debtors' Seventeenth Omnibus Claims Objection - Exhibit E-2
Organized By Respondent[1]*

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| 1. | Miami-Dade County Tax Collector (Docket No. 8527) | 1108 | The Miami-Dade County Tax Collector (the "Miami Tax Collector") filed proof of claim no. 1108 for ad valorem taxes with respect to personal property. At the time the claim was filed, the amount owed, including statutory interest, totalled $17,534.38. The Miami Tax Collector asserts that its claim is secured pursuant to Section 197.122(1), Florida Statutes. Although the Miami Tax Collector acknowledges that a partial payment was made, it asserts that the amount to which the Debtors seek to modify the claim does not account for statutory interest or for amounts owed for certain 2003-2005 taxes. The Miami Tax Collector asserts that the amount owed through July 31, 2007 is $16,736.31. | Tax claim subject to modification | Adjourn |

---

[1] This chart reflects all Responses entered on the docket as of Tuesday, August 14, 2007 at 12:00 p.m. (prevailing Eastern time).

[2] This chart reflects all resolutions or proposals as of Tuesday, August 14, 2007 at 12:00 p.m. (prevailing Eastern time).

1

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| 2. | Knox County (Docket No. 8528) | 197 | Knox County ("Knox") filed proof of claim no. 197 for 2005 taxes in the amount of $23,130.99. Knox acknowledges that this amount was paid in full on February 27, 2007, but asserts that the payments were late and that the Debtors paid more than what was owed for 2005 taxes. Knox asserts that, after applying this excess payment to the 2006 taxes, $22,366.74 remains due for 2006 taxes. Such amount, asserts Knox, should be an administrative claim. (See Knox's supplemental response at Docket No. 8896, summarized below). | Tax claim subject to modification | Adjourn |
| 3. | Tuscaloosa County (Docket No. 8535) | 2661 | Tuscaloosa County ("Tuscaloosa") filed proof of claim no. 2661 for 2005 ad valorem taxes in the amount of $22,464.47. Tuscaloosa asserts that its claim is secured pursuant to Alabama Code Section 40-1-3, and that interest accrues at a rate of 12% pursuant to Alabama Code Section 40-5-9. Tuscaloosa's claim included $21,600.45 as the base amount of the taxes and $864.02 in accrued interest. | Tax claim subject to modification | Adjourn |
| 4. | Knox County (Docket No. 8896) | 197 | Knox asserts that 2005 taxes in the amount of $23,130.99 remain due. Knox asserts that it received payment from the Debtors and initially applied that payment to the 2005 taxes, leaving 2006 taxes unpaid. Knox subsequently adjusted the application of that payment to cover 2006 taxes, leaving the 2005 taxes unpaid. Knox asserts that its claim should be paid in full as a priority claim. | Tax claim subject to modification | Adjourn |
| 5. | Montgomery County Treasurer (Docket No. 9010) (untimely) | 8535, 8540, 8541, 8542, 8543, 8545, 8546, 8547, 8548, 8549, 8550, 8551, 8552, 8553, 8554, 8555, 8557, 8558, 8559, 8560, 8561, 8562, 8563 | Montgomery County Treasurer ("Montgomery County") asserts that it filed proofs of claim nos. 8535, 8540, 8541, 8542, 8543, 8545, 8546, 8547, 8548, 8549, 8550, 8551, 8552, 8553, 8554, 8555, 8557, 8558, 8559, 8560, 8561, 8562, and 8563 for real | Tax claims subject to modification | Adjourn |

2

| Response | Proof of Claim Nos. | Summary of Response | Basis for Objection | Treatment[2] |
|---|---|---|---|---|
| | | estate tax liabilities.  Montgomery Court does not oppose changing the Debtor entity that its claim is asserted against.  However, Montgomery County disputes the Debtors' proposed reduction of the claim amounts.  Montgomery County contends that some of the proofs of claim may be for postpetition liabilities and therefore requests the opportunity to file amended claims if necessary. | | |

3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
       In re                         :        Chapter 11
                                            :
DELPHI CORPORATION, <u>et al.</u>,          :        Case No. 05-44481 (RDD)
                                            :
           Debtors.      :        (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007
MODIFYING CERTAIN CLAIMS IDENTIFIED IN SEVENTEENTH
<u>OMNIBUS CLAIMS OBJECTION ON EXHIBIT E-2</u>

("SEVENTEENTH OMNIBUS CLAIMS OBJECTION ORDER – EXHIBIT E-2")

        Upon the Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B)

Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On

Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claim, And (E) Claims

Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting

Reclamation, dated June 15, 2007 (the "Seventeenth Omnibus Claims Objection"),[1] of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"); and upon the record of the hearing held on

the Seventeenth Omnibus Claims Objection with respect to the Claims listed on Exhibit E-2

thereto; and after due deliberation thereon; and good and sufficient cause appearing therefor,

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
Seventeenth Omnibus Claims Objection.

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.     Each holder of a claim, as such term is defined in 11 U.S.C. § 101(5) (as to each, a "Claim") listed on Exhibit D-2[3] attached hereto was properly and timely served with a copy of the Seventeenth Omnibus Claims Objection, a personalized Notice Of Objection To Claim, a copy of the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"), the proposed order granting the Seventeenth Omnibus Claims Objection, and notice of the deadline for responding to the Seventeenth Omnibus Claims Objection.  No other or further notice of the Seventeenth Omnibus Claims Objection is necessary.

B.     This Court has jurisdiction over the Seventeenth Omnibus Claims Objection pursuant to 28 U.S.C. §§ 157 and 1334.  The Seventeenth Omnibus Claims Objection is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the Seventeenth Omnibus Claims Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     The Tax Claims listed on Exhibit D-2 hereto (a) are overstated and/or (b) were filed and docketed against the wrong Debtors (the "Tax Claims Subject To Modification").

D.     The relief requested in the Seventeenth Omnibus Claims Objection is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

---

[2]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

[3]     Each Claim listed on Exhibit E-2 to the Seventeenth Omnibus Claims Objection is listed on Exhibit D-2 hereto.

2

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

1.        Each "Claim As Docketed" amount and Debtor listed on Exhibit D-2[4]

hereto is hereby revised to reflect the amount and Debtor listed as the "Claim As Modified."  No

Claimant listed on Exhibit D-2 shall be entitled to (a) a recovery for any Tax Claim Subject To

Modification in an amount exceeding the dollar value listed as the "Modified Total" of the Claim

and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified"

column on Exhibit D-2, and/or (c) assert a Claim against a Debtor whose case number is not

listed in the "Claim As Modified" column on Exhibit D-2, subject to the Debtors' right to further

object to each such Tax Claim Subject To Modification.  The Tax Claims Subject To

Modification shall remain on the claims register, and shall remain subject to future objection by

the Debtors and other parties-in-interest.  For clarity, Exhibit F hereto displays the formal name

of each of the Debtor entities and their associated bankruptcy case numbers referenced in Exhibit

D-2.

2.        With respect to each Claim for which a Response to the Seventeenth

Omnibus Claims Objection has been filed and served, all of which Claims are listed on Exhibit

E-9 hereto, the hearing regarding the objection to such Claims is adjourned to a future hearing

date to be noticed by the Debtors consistent with and subject to the Claims Objection Procedures

---

[4]    The Claims listed on Exhibits A-1, A-2, B-1, B-2, B-3, C, D-1, D-2, E-1, and E-3 to the Seventeenth Omnibus
Claims Objection were disallowed and expunged, modified, or adjourned to a future hearing date, as the case
may be, pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And
Expunging Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And
Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And
Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And
Modified Claims Asserting Reclamation Identified In Seventeenth Omnibus Claims Objection (Docket No.
8737) entered July 26, 2007 (the "Seventeenth Omnibus Claims Objection Order").  Pursuant to the Seventeenth
Omnibus Claims Objection Order, this Court adjourned the hearing with respect to all Claims listed on Exhibit
E-2 to the Seventeenth Omnibus Claims Objection to August 16, 2007.

3

Order; provided, however, that such adjournment shall be without prejudice to the Debtors' right

to assert that any such Responses were untimely filed or otherwise deficient under the Claims

Objection Procedures Order.

3.      Entry of this order is without prejudice to the Debtors' right to object, on

any grounds whatsoever, to any other claims in these chapter 11 cases or to further object to

Claims that are the subject of the Seventeenth Omnibus Claims Objection.

4.      Nothing contained herein shall constitute, nor shall it be deemed to

constitute, the allowance of any Claim asserted against any of the Debtors.

5.      This Court shall retain jurisdiction over the Debtors and the holders of

Claims subject to the Seventeenth Omnibus Claims Objection to hear and determine all matters

arising from the implementation of this order.

6.      Each of the objections by the Debtors to each Claim addressed in the

Seventeenth Omnibus Claims Objection attached hereto as Exhibits D-2 and E-9 constitutes a

separate contested matter as contemplated by Fed. R. Bankr. P. 9014.  This order shall be

deemed a separate order with respect to each Claim that is the subject of the Seventeenth

Omnibus Claims Objection.  Any stay of this order shall apply only to the contested matter

which involves such Claim and shall not act to stay the applicability or finality of this order with

respect to the other contested matters covered hereby.

7.      Kurtzman Carson Consultants LLC is hereby directed to serve this order,

including exhibits, in accordance with the Claims Objection Procedures Order.

4

8.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Seventeenth Omnibus Claims

Objection.

Dated: New York, New York
           August ___, 2007

_____
           UNITED STATES BANKRUPTCY JUDGE

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Seventeenth Omnibus Claims Objection

## EXHIBIT D-2 – TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 2234 <br> Date Filed: 03/09/2006 <br> Docketed Total: $1,013.04 <br> Filing Creditor Name and Address: <br> BOULDER COUNTY TREASURER <br> PO BOX 471 <br> BOULDER, CO 80306 | BOULDER COUNTY TREASURER <br> PO BOX 471 <br> BOULDER, CO 80306 <br><br> Case Number* <br> 05-44481 | $1,013.04 <br> **$1,013.04** <br> Docketed Total: | | $1,013.04 | Case Number* <br> 05-44640 | $777.13 <br> **$777.13** <br> Modified Total: | | $777.13 |
| Claim: 671 <br> Date Filed: 11/18/2005 <br> Docketed Total: $37.00 <br> Filing Creditor Name and Address: <br> DYER COUNTY TRUSTEE <br> PO BOX 220 <br> DYERSBURG, TN 38025 | DYER COUNTY TRUSTEE <br> PO BOX 220 <br> DYERSBURG, TN 38025 <br><br> Case Number* <br> 05-44481 | $37.00 <br> **$37.00** <br> Docketed Total: | | $37.00 | Case Number* <br> 05-44640 | $28.38 <br> **$28.38** <br> Modified Total: | | $28.38 |
| Claim: 11372 <br> Date Filed: 07/27/2006 <br> Docketed Total: $218,106.97 <br> Filing Creditor Name and Address: <br> ERIE COUNTY TREASURER <br> 247 COLUMBUS AVE STE 115 <br> SANDUSKY, OH 44870 | ERIE COUNTY TREASURER <br> 247 COLUMBUS AVE STE 115 <br> SANDUSKY, OH 44870 <br><br> Case Number* <br> 05-44481 | $218,106.97 <br> **$218,106.97** <br> Docketed Total: | | $218,106.97 | Case Number* <br> 05-44640 | $188,837.20 <br> **$188,837.20** <br> Modified Total: | | $188,837.20 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Seventeenth Omnibus Claims Objection**

## EXHIBIT D-2 – TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | | Secured | Priority | Unsecured | |
| **Claim: 7182** Date Filed: 05/31/2006 Docketed Total: $359.23 Filing Creditor Name and Address: GILES CO TN GILES COUNTY TRUSTEE PO BOX 678 COURTHOUSE PULASKI, TN 38478 | GILES CO TN GILES COUNTY TRUSTEE PO BOX 678 COURTHOUSE PULASKI, TN 38478 **Docketed Total:** $359.23 | | | $359.23 | | **Modified Total:** $268.49 | | | $268.49 | |
| | Case Number*: 05-44481 | $359.23 | | | | Case Number*: 05-44640 | $268.49 | | | |
| | | **$359.23** | | | | | **$268.49** | | | |
| **Claim: 3655** Date Filed: 05/01/2006 Docketed Total: $8.75 Filing Creditor Name and Address: HAYWOOD COUNTY TRUSTEE COURTHOUSE BROWNSVILLE, TN 38012 | HAYWOOD COUNTY TRUSTEE COURTHOUSE BROWNSVILLE, TN 38012 **Docketed Total:** $8.75 | | $8.58 | $0.17 | | **Modified Total:** $8.58 | | $8.58 | $0.00 | |
| | Case Number*: 05-44481 | | | | | Case Number*: 05-44481 05-44640 | | $8.58 | | |
| | | | **$8.58** | **$0.17** | | | | **$8.58** | **$0.00** | |
| **Claim: 16116** Date Filed: 08/09/2006 Docketed Total: $22.25 Filing Creditor Name and Address: LAPORTE COUNTY IN LAPORTE COUNTY TREASURER 813 LINCOLNWAY STE 205 LAPORTE, IN 46360-3491 | LAPORTE COUNTY IN LAPORTE COUNTY TREASURER 813 LINCOLNWAY STE 205 LAPORTE, IN 46360-3491 **Docketed Total:** $22.25 | | $22.25 | | | **Modified Total:** $20.23 | | $20.23 | $20.23 | |
| | Case Number*: 05-44481 | | | | | Case Number*: 05-44640 | | $20.23 | | |
| | | | **$22.25** | | | | | **$20.23** | | |

*See Exhibit F for a listing of debtor entities by case number.

Page 2 of 5

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

## EXHIBIT D-2 – TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 8415<br>Date Filed: 06/23/2006<br>Docketed Total: $455.00<br>Filing Creditor Name and Address:<br>MONTGOMERY CO TN<br>MONTGOMERY COUNTY<br>TRUSTEES OFFICE<br>350 PAGEANT LN<br>STE 101 A<br>CLARKSVILLE, TN 37041 | Claim Holder Name and Address<br>MONTGOMERY CO TN<br>MONTGOMERY COUNTY TRUSTEES OFFICE<br>350 PAGEANT LN<br>STE 101 A<br>CLARKSVILLE, TN 37041<br><br>Case Number*: 05-44640<br>Docketed Total: $455.00<br>Secured: ___<br>Priority: $455.00<br>Unsecured: ___<br>Total: $455.00 | Case Number*: 05-44640<br>Modified Total: $422.68<br>Secured: ___<br>Priority: $422.68<br>Unsecured: ___<br>Total: $422.68 |
| Claim: 8537<br>Date Filed: 06/26/2006<br>Docketed Total: $13,321.05<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 817600<br>DAYTON, OH 45481 | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 817600<br>DAYTON, OH 45481<br><br>Case Number*: 05-44640<br>Docketed Total: $13,321.05<br>Secured: $13,321.05<br>Priority: ___<br>Unsecured: ___<br>Total: $13,321.05 | Case Number*: 05-44640<br>Modified Total: $4,787.82<br>Secured: $4,787.82<br>Priority: ___<br>Unsecured: ___<br>Total: $4,787.82 |
| Claim: 1681<br>Date Filed: 01/26/2006<br>Docketed Total: $1,290.10<br>Filing Creditor Name and Address:<br>PALM BEACH COUNTY TAX<br>COLLECTOR<br>PO BOX 3715<br>WEST PALM BEACH, FL 33402-3715 | Claim Holder Name and Address<br>PALM BEACH COUNTY TAX<br>COLLECTOR<br>PO BOX 3715<br>WEST PALM BEACH, FL 33402-3715<br><br>Case Number*: 05-44640<br>Docketed Total: $1,290.10<br>Secured: $1,290.10<br>Priority: ___<br>Unsecured: ___<br>Total: $1,290.10 | Case Number*: 05-44640<br>Modified Total: $989.67<br>Secured: $989.67<br>Priority: ___<br>Unsecured: ___<br>Total: $989.67 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Seventeenth Omnibus Claims Objection**

## EXHIBIT D-2 – TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | | | | | | | |
| Claim: 8661 | PEYTON C COCHRANE TAX COLLECTOR | | | | | | | |
| Date Filed: 06/27/2006 | 714 GREENSBORO AVE RM 124 | | | | | | | |
| Docketed Total: $47,271.82 | TUSCALOOSA, AL 35401 | Docketed Total: $47,271.82 | | | | Modified Total: $906.59 | | |
| Filing Creditor Name and Address: | | | | | | | | |
| PEYTON C COCHRANE TAX COLLECTOR | Case Number*: 05-44640 | Secured | Priority | Unsecured | Case Number*: 05-44640 | Secured | Priority | Unsecured |
| 714 GREENSBORO AVE RM 124 | | $47,271.82 | | | | $906.59 | | |
| TUSCALOOSA, AL 35401 | | $47,271.82 | | | | $906.59 | | |
| | Claim Holder Name and Address | | | | | | | |
| Claim: 1783 | PINAL COUNTY TREASURER | | | | | | | |
| Date Filed: 02/06/2006 | PO BOX 729 | | | | | | | |
| Docketed Total: $569.53 | FLORENCE, AZ 85232-0729 | Docketed Total: $569.53 | | | | Modified Total: $557.21 | | |
| Filing Creditor Name and Address: | | | | | | | | |
| PINAL COUNTY TREASURER | Case Number*: 05-44640 | Secured | Priority | Unsecured | Case Number*: 05-44640 | Secured | Priority | Unsecured |
| PO BOX 729 | | $569.53 | | | | $557.21 | | |
| FLORENCE, AZ 85232-0729 | | $569.53 | | | | $557.21 | | |
| | Claim Holder Name and Address | | | | | | | |
| Claim: 559 | SHELBY COUNTY TRUSTEE | | | | | | | |
| Date Filed: 11/14/2005 | PO BOX 2751 | | | | | | | |
| Docketed Total: $502.98 | MEMPHIS, TN 38101-2751 | Docketed Total: $502.98 | | | | Modified Total: $385.85 | | |
| Filing Creditor Name and Address: | | | | | | | | |
| SHELBY COUNTY TRUSTEE | Case Number*: 05-44481 | Secured | Priority | Unsecured | Case Number*: 05-44640 | Secured | Priority | Unsecured |
| PO BOX 2751 | | $502.98 | | | | $385.85 | | |
| MEMPHIS, TN 38101-2751 | | $502.98 | | | | $385.85 | | |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Seventeenth Omnibus Claims Objection**

## EXHIBIT D-2 – TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED / CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|
| Claim Holder Name and Address | Secured | Priority | Unsecured | Case Number* | Secured | Priority | Unsecured |
| **Claim:** 560 | | | | | | | |
| Date Filed: 11/14/2005 | | | | | | | |
| Docketed Total: $153.92 | | | | | | | |
| Filing Creditor Name and Address: | | | | | | | |
| SHELBY COUNTY TRUSTEE | | | | | | | |
| PO BOX 2751 | | | | | | | |
| MEMPHIS, TN 38101-2751 | | | | | | | |
| Docketed Total: | $153.92 | | $153.92 | Case Number* 05-44640 | | | Modified Total: $118.08 |
| | **$153.92** | | | | $118.08 | | |
| | | | | | **$118.08** | | |
| **Claim:** 9302 | | | | | | | |
| Date Filed: 07/11/2006 | | | | | | | |
| Docketed Total: $761,504.21 | | | | | | | |
| Filing Creditor Name and Address: | | | | | | | |
| TRUMBULL COUNTY TREASURER | | | | | | | |
| 160 HIGH ST NW | | | | | | | |
| WARREN, OH 44481-1090 | | | | | | | |
| Docketed Total: | $761,504.21 | | $761,504.21 | Case Number* 05-44481 | $661,150.94 | | Modified Total: $661,150.94 |
| | **$761,504.21** | | | | **$661,150.94** | | |
| **Claim:** 13581 | | | | | | | |
| Date Filed: 07/31/2006 | | | | | | | |
| Docketed Total: $1,058.87 | | | | | | | |
| Filing Creditor Name and Address: | | | | | | | |
| YAZOO CO MS | | | | | | | |
| YAZOO COUNTY TAX COLLECTOR | | | | | | | |
| PO BOX 108 | | | | | | | |
| YAZOO, MS 39194 | | | | | | | |
| Docketed Total: | | $1,058.87 | | Case Number* 05-44640 | | $998.94 | Modified Total: $998.94 |
| | | **$1,058.87** | | | | **$998.94** | |

**Total Claims to be Modified: 15**

**Total Amount as Docketed:** $1,045,674.72

**Total Amount as Modified:** $860,257.79

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

**EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED / CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|

**Claim: 197**
Date Filed: 10/28/2005
Docketed Total: $23,130.99

Claim Holder Name and Address
KNOX COUNTY TRUSTEE
C O ATTORNEY DEAN B FARMER
HODGES DOUGHTY CARSON PLLC
PO BOX 869
KNOXVILLE, TN 37901-0869

Filing Creditor Name and Address:
KNOX COUNTY TRUSTEE
C O ATTORNEY DEAN B FARMER
HODGES DOUGHTY CARSON PLLC
PO BOX 869
KNOXVILLE, TN 37901-0869

Case Number*: 05-44481
Docketed Total: $37,170.22
Secured | Priority $23,130.99 | Unsecured
$37,170.22

Case Number*: 05-44640
Modified Total: $16,644.73
Secured | Priority $17,744.32 | Unsecured $16,644.73
$16,644.73

---

**Claim: 1108**
Date Filed: 12/12/2005
Docketed Total: $17,534.38

Claim Holder Name and Address
MIAMI DADE COUNTY TAX COLLECTOR
140 W FLAGLER ST STE 1403
MIAMI, FL 33130

Filing Creditor Name and Address:
MIAMI DADE COUNTY TAX COLLECTOR
140 W FLAGLER ST STE 1403
MIAMI, FL 33130

Case Number*: 05-44481
Docketed Total: $16,574.78
Secured $17,534.38 | Priority | Unsecured $16,574.78
$16,574.78

Case Number*: 05-44640
Modified Total: $17,326.03
Secured $13,297.02 | Priority | Unsecured $17,326.03
$17,326.03

---

**Claim: 8541**
Date Filed: 06/26/2006
Docketed Total: $583,848.54

Claim Holder Name and Address
MONTGOMERY COUNTY TREASURER
451 W THIRD ST
DAYTON, OH 45422-0476

Filing Creditor Name and Address:
MONTGOMERY COUNTY TREASURER
451 W THIRD ST
DAYTON, OH 45422-0476

Case Number*: 05-44481
Docketed Total: $587,848.54
Secured $583,848.54 | Priority | Unsecured $587,848.54
$587,848.54

Case Number*: 05-44640
Modified Total: $302,844.75
Secured $209,844.35 | Priority | Unsecured $302,844.75
$302,844.75

---

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

**EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 8545<br>Date Filed: 06/26/2006<br>Docketed Total: $182,850.01<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476<br><br>Docketed Total: $183,850.01<br><br>Case Number*: 05-44481<br>Secured: $182,850.01   Priority:   Unsecured:<br>$183,850.01 | Modified Total: $95,612.74<br><br>Case Number*: 05-44640<br>Secured: $65,719.34   Priority:   Unsecured:<br>$95,612.74 |
| Claim: 8547<br>Date Filed: 06/26/2006<br>Docketed Total: $578,440.64<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476<br><br>Docketed Total: $568,440.94<br><br>Case Number*: 05-44481<br>Secured: $578,440.64   Priority:   Unsecured:<br>$568,440.94 | Modified Total: $306,200.23<br><br>Case Number*: 05-44640<br>Secured: $207,900.92   Priority:   Unsecured:<br>$306,200.23 |
| Claim: 8559<br>Date Filed: 06/26/2006<br>Docketed Total: $1,165.11<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476<br><br>Docketed Total: $1,195.11<br><br>Case Number*: 05-44481<br>Secured: $1,165.11   Priority:   Unsecured:<br>$1,195.11 | Modified Total: $385.97<br><br>Case Number*: 05-44640<br>Secured: $285.63   Priority:   Unsecured:<br>$385.97 |

*See Exhibit F for a listing of debtor entities by case number.

Page 2 of 9

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

**EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 8561<br>Date Filed: 06/26/2006<br>Docketed Total: $26,607.06<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476<br><br>Docketed Total: $39,906.09<br><br>Secured: $26,607.06<br>Priority: ___<br>Unsecured: ___<br>**$39,906.09**<br><br>Case Number*<br>05-44481 | Case Number*<br>05-44640<br><br>Modified Total: $2,830.63<br><br>Secured: $9,820.72<br>Priority: ___<br>Unsecured: ___<br>**$2,830.63** |
| Claim: 8563<br>Date Filed: 06/26/2006<br>Docketed Total: $279,130.73<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476<br><br>Docketed Total: $362,170.67<br><br>Secured: $279,130.73<br>Priority: ___<br>Unsecured: ___<br>**$362,170.67**<br><br>Case Number*<br>05-44481 | Case Number*<br>05-44640<br><br>Modified Total: $100,797.00<br><br>Secured: $100,363.00<br>Priority: ___<br>Unsecured: ___<br>**$100,797.00** |
| Claim: 8549<br>Date Filed: 06/26/2006<br>Docketed Total: $1,179,183.93<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W. THIRD ST.<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W. THIRD ST.<br>DAYTON, OH 45422-0476<br><br>Docketed Total: $1,162,187.27<br><br>Secured: $1,179,183.93<br>Priority: ___<br>Unsecured: ___<br>**$1,162,187.27**<br><br>Case Number*<br>05-44481 | Case Number*<br>05-44640<br><br>Modified Total: $444,949.28<br><br>Secured: $444,646.98<br>Priority: ___<br>Unsecured: ___<br>**$444,949.28** |

*See Exhibit F for a listing of debtor entities by case number.

Page 3 of 9

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

## EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 8551 Date Filed: 06/26/2006 Docketed Total: $1,089.88 Filing Creditor Name and Address: MONTGOMERY COUNTY TREASURER 451 W. THIRD ST. DAYTON, OH 45422-0476 | MONTGOMERY COUNTY TREASURER 451 W. THIRD ST. DAYTON, OH 45422-0476  Docketed Total: $1,082.88 | $1,089.88 $1,082.88 | | | Modified Total: $721.64 | $391.74 $721.64 | | $721.64 |
| | Case Number*: 05-44481 | | | | Case Number*: 05-44640 | | | |
| Claim: 8553 Date Filed: 06/26/2006 Docketed Total: $72,963.37 Filing Creditor Name and Address: MONTGOMERY COUNTY TREASURER 451 W. THIRD ST. DAYTON, OH 45422-0476 | MONTGOMERY COUNTY TREASURER 451 W. THIRD ST. DAYTON, OH 45422-0476  Docketed Total: $63,297.76 | $72,963.37 $63,297.76 | | | Modified Total: $39,334.18 | $26,224.18 $39,334.18 | | $39,334.18 |
| | Case Number*: 05-44481 | | | | Case Number*: 05-44640 | | | |
| Claim: 8555 Date Filed: 06/26/2006 Docketed Total: $237.40 Filing Creditor Name and Address: MONTGOMERY COUNTY TREASURER 451 W. THIRD ST. DAYTON, OH 45422-0476 | MONTGOMERY COUNTY TREASURER 451 W. THIRD ST. DAYTON, OH 45422-0476  Docketed Total: $376.40 | $237.40 $376.40 | | | Modified Total: $85.75 | $85.35 $85.75 | | $85.75 |
| | Case Number*: 05-44481 | | | | Case Number*: 05-44640 | | | |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

**EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

---

Claim: 8557
Date Filed: 06/26/2006
Docketed Total:    $1,516.63
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
451 W. THIRD ST.
DAYTON, OH 45422-0476

**CLAIM AS DOCKETED**
Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
451 W. THIRD ST
DAYTON, OH 45422-0476

Docketed Total:    $1,519.97

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $1,516.63 | | $1,519.97 |
| | **$1,519.97** | | |

**CLAIM AS MODIFIED**

Modified Total:    $542.16

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $549.17 | | $542.16 |
| | **$542.16** | | |

---

Claim: 8535
Date Filed: 06/26/2006
Docketed Total:    $9,984.48
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Docketed Total:    $2,284.48

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $9,984.48 | | $2,284.48 |
| | **$2,284.48** | | |

Modified Total:    $7,900.91

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $3,600.61 | | $7,900.91 |
| | **$7,900.91** | | |

---

Claim: 8540
Date Filed: 06/26/2006
Docketed Total:    $55.96
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Docketed Total:    $55.29

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $55.96 | | $55.29 |
| | **$55.29** | | |

Modified Total:    $17.61

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $13.71 | | $17.61 |
| | **$17.61** | | |

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Seventeenth Omnibus Claims Objection**

## EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS MODIFIED |
|---|---|
| **Claim: 8542**<br>Date Filed:  06/26/2006<br>Docketed Total:    $4,329.83<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 972<br>DAYTON, OH 45422-0475<br><br>Docketed Total:    $4,732.87<br><br>Case Number*<br>05-44481<br>Secured    $4,329.83<br>Priority<br>Unsecured    $4,732.87<br>**$4,732.87** | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 972<br>DAYTON, OH 45422-0475<br><br>Modified Total:    $1,052.63<br><br>Case Number*<br>05-44640<br>Secured    $1,059.72<br>Priority<br>Unsecured    $1,052.63<br>**$1,052.63** |
| **Claim: 8543**<br>Date Filed:  06/26/2006<br>Docketed Total:    $9,370.62<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 972<br>DAYTON, OH 45422-0475<br><br>Docketed Total:    $2,760.93<br><br>Case Number*<br>05-44481<br>Secured    $9,370.62<br>Priority<br>Unsecured    $2,760.93<br>**$2,760.93** | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 972<br>DAYTON, OH 45422-0475<br><br>Modified Total:    $7,796.24<br><br>Case Number*<br>05-44640<br>Secured    $3,367.94<br>Priority<br>Unsecured    $7,796.24<br>**$7,796.24** |
| **Claim: 8546**<br>Date Filed:  06/26/2006<br>Docketed Total:    $2,628.90<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 972<br>DAYTON, OH 45422-0475<br><br>Docketed Total:    $3,938.20<br><br>Case Number*<br>05-44481<br>Secured    $2,628.90<br>Priority<br>Unsecured    $3,938.20<br>**$3,938.20** | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>PO BOX 972<br>DAYTON, OH 45422-0475<br><br>Modified Total:    $244.88<br><br>Case Number*<br>05-44640<br>Secured    $944.88<br>Priority<br>Unsecured    $244.88<br>**$244.88** |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 8548**
Date Filed: 06/26/2006
Docketed Total: $35,659.30
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Docketed Total:    $75,952.70

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $35,659.30 | | $75,952.70 |
| | **$75,952.70** | | |

Modified Total:    $13,819.90

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $12,816.60 | | $13,819.90 |
| | **$13,819.90** | | |

---

**Claim: 8550**
Date Filed: 06/26/2006
Docketed Total: $78,139.90
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Docketed Total:    $68,172.20

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $78,139.90 | | $68,172.20 |
| | **$68,172.20** | | |

Modified Total:    $38,084.61

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $28,084.71 | | $38,084.61 |
| | **$38,084.61** | | |

---

**Claim: 8552**
Date Filed: 06/26/2006
Docketed Total: $938.16
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Docketed Total:    $278.19

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $938.16 | | $278.19 |
| | **$278.19** | | |

Modified Total:    $776.31

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $337.21 | | $776.31 |
| | **$776.31** | | |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Seventeenth Omnibus Claims Objection**

## EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | CLAIM AS MODIFIED | | |
|---|---|---|---|---|---|---|
| | | Secured | Priority | Unsecured | | |

**Claim: 8554**
Date Filed: 06/26/2006
Docketed Total: $32,104.56
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

CLAIM AS DOCKETED — Docketed Total: $73,104.59
Case Number*: 05-44481
Secured: $32,104.56 / $73,104.59
Priority:
Unsecured:

CLAIM AS MODIFIED — Modified Total: $37,132.63
Case Number*: 05-44640
Secured: $23,129.72 / $37,132.63
Priority:
Unsecured:

**Claim: 8558**
Date Filed: 06/26/2006
Docketed Total: $882.12
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

CLAIM AS DOCKETED — Docketed Total: $883.13
Case Number*: 05-44481
Secured: $882.12 / $883.13
Priority:
Unsecured:

CLAIM AS MODIFIED — Modified Total: $712.10
Case Number*: 05-44640
Secured: $319.10 / $712.10
Priority:
Unsecured:

**Claim: 8560**
Date Filed: 06/26/2006
Docketed Total: $492.69
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

CLAIM AS DOCKETED — Docketed Total: $423.92
Case Number*: 05-44481
Secured: $492.69 / $423.92
Priority:
Unsecured:

CLAIM AS MODIFIED — Modified Total: $747.52
Case Number*: 05-44640
Secured: $343.59 / $747.52
Priority:
Unsecured:

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Seventeenth Omnibus Claims Objection

**EXHIBIT E-2 – ADJOURNED TAX CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**CLAIM AS DOCKETED**

Claim: 8562
Date Filed:  06/26/2006
Docketed Total:  $97.46
Filing Creditor Name and Address:
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Claim Holder Name and Address
MONTGOMERY COUNTY
TREASURER
PO BOX 972
DAYTON, OH 45422-0475

Docketed Total:    $26.49

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $97.46 | | |
| | **$26.49** | | **$26.49** |

**CLAIM AS MODIFIED**

Modified Total:    $75.17

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $35.13 | | |
| | **$75.17** | | **$75.17** |

Claim: 2661
Date Filed:  04/17/2006
Docketed Total:  $22,464.47
Filing Creditor Name and Address:
PEYTON C COCHRANE TAX
COLLECTOR
714 GREENSBORO AVE RM 124
TUSCALOOSA, AL 35401

Claim Holder Name and Address
PEYTON C COCHRANE TAX
COLLECTOR
714 GREENSBORO AVE RM 124
TUSCALOOSA, AL 35401

Docketed Total:    $33,494.46

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $22,464.47 | | |
| | **$33,494.46** | | **$33,494.46** |

Modified Total:    $31,900.45

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $21,600.45 | | |
| | **$31,900.45** | | |

Total Claims to be Modified: 39

Total Amount as Docketed:    $7,144,846.13

Total Amount as Modified:    $1,123,539.02

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, <u>et al.</u>                                    Seventeenth Omnibus Claims Objection

**Case No. 05-44481 (RDD)**

**Exhibit F - Debtor Entity Reference**

| CASE NUMBER | DEBTOR ENTITY |
|---|---|
| 05-44481 | DELPHI CORPORATION |
| 05-44482 | ASEC MANUFACTURING GENERAL PARTNERSHIP |
| 05-44507 | DELPHI MEDICAL SYSTEMS COLORADO CORPORATION |
| 05-44511 | DELPHI MEDICAL SYSTEMS TEXAS CORPORATION |
| 05-44567 | DELPHI TECHTRONIC SYSTEMS, INC. |
| 05-44610 | DELCO ELECTRONICS OVERSEAS CORPORATION |
| 05-44612 | DELPHI DIESEL SYSTEMS CORP. |
| 05-44624 | DELPHI CONNECTION SYSTEMS |
| 05-44640 | DELPHI AUTOMOTIVE SYSTEMS LLC |
| 05-47474 | MOBILE ARIA, INC. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
     In re                              :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :      Case No. 05-44481 (RDD)
                                              :
                 Debtors.       :      (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007
~~DISALLOWING AND EXPUNGING~~ MODIFYING CERTAIN ~~(A) INSUFFICIENTLY
DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (C) INSURANCE CLAIM NOT REFLECTED ON DEBTORS' BOOKS AND
RECORDS, (D) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIMS, AND (E) CLAIMS
SUBJECT TO MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, AND
MODIFIED CLAIMS ASSERTING RECLAMATION~~ CLAIMS IDENTIFIED IN
SEVENTEENTH
OMNIBUS CLAIMS OBJECTION ON EXHIBIT E-2

("SEVENTEENTH OMNIBUS CLAIMS OBJECTION ORDER – EXHIBIT E-2")

        Upon the Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims

Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors'

Books And Records, (D) Untimely Claims And Untimely Tax Claim, And (E) Claims Subject To

Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation,

dated June 15, 2007 (the "Seventeenth Omnibus Claims Objection"),[1] of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"); and upon the record of the hearing held on the Seventeenth

Omnibus Claims Objection with respect to the Claims listed on Exhibit E-2 thereto; and after due

deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

        A.      Each holder of a claim, as such term is defined in 11 U.S.C. § 101(5)

(as to each, a "Claim") listed on Exhibits A-1, A-2, B-1, B-2, B-3, C, D-1, D-2, E-1, E-2,

and E-3 Exhibit D-2[3] attached hereto was properly and timely served with a copy of the

Seventeenth Omnibus Claims Objection, a personalized Notice Of Objection To Claim, a

copy of the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007,

7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To

Claims (Docket No. 6089) (the "Claims Objection Procedures Order"), the proposed order

granting the Seventeenth Omnibus Claims Objection, and notice of the deadline for

responding to the Seventeenth Omnibus Claims Objection.  No other or further notice of

the Seventeenth Omnibus Claims Objection is necessary.

        B.      This Court has jurisdiction over the Seventeenth Omnibus Claims

Objection pursuant to 28 U.S.C. §§ 157 and 1334.  The Seventeenth Omnibus Claims

Objection is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the

Seventeenth Omnibus Claims Objection in this district is proper under 28 U.S.C. §§ 1408

and 1409.

------

*(cont'd from previous page)*

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
Seventeenth Omnibus Claims Objection.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate.  See Fed. R. Bankr. P. 7052.

2    DeltaView comparison of pcdocs://chisr02a/642480/1 and pcdocs://chisr02a/642480/3.
Performed on 8/15/2007.

C.    The Claims listed on Exhibit A-1 hereto contain insufficient documentation to support the Claims asserted (the "Insufficiently Documented Claims").

D.    The Claim listed on Exhibit A-2 hereto contains insufficient documentation to support the Claim asserted and was also untimely filed pursuant to the Bar Date Order (the "Untimely Insufficiently Documented Claim").

E.    The Claims listed on Exhibit B-1 hereto contain liabilities or dollar amounts that are not reflected on the Debtors' books and records (the "Books And Records Claims").

F.    The Claim listed on Exhibit B-2 hereto, which was filed by a taxing authority, contains liabilities and dollar amounts that are not reflected on the Debtors' books and records (the "Books And Records Tax Claim").

G.    The Claims listed on Exhibit B-3 hereto contain liabilities or dollar amounts that are not reflected on the Debtors' books and records and were also untimely filed pursuant to the Bar Date Order (the "Untimely Books And Records Claims").

H.    The Claim listed on Exhibit C hereto contains liabilities and dollar amounts that are not reflected on the Debtors' books and records (the "Books And Records Insurance Claim").

I.    The Claims listed on Exhibit D-1 hereto were untimely filed pursuant to the Bar Date Order (the "Untimely Claims").

J.    The Tax Claims listed on Exhibit D-2 hereto were untimely filed pursuant to the Bar Date Order (the "Untimely Tax Claims").

_____

*(cont'd from previous page)*

[3]    Each Claim listed on Exhibit E-2 to the Seventeenth Omnibus Claims Objection is listed on Exhibit D-2 hereto.

3    DeltaView comparison of pcdocs://chisr02a/642480/1 and pcdocs://chisr02a/642480/3. Performed on 8/15/2007.

K.    The Claims listed on Exhibit E-1 hereto (a) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured or priority status (the "Claims Subject To Modification").

L.    The Tax Claims listed on Exhibit E-2 hereto (a) are overstated and/or (b) were filed and docketed against the wrong Debtors (the "Tax Claims Subject To Modification").

M.    The Claims listed on Exhibit E-3 hereto (a) (i) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and docketed against the wrong Debtors, and/or (iii) incorrectly assert secured or priority status and (b) assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and notwithstanding the Claimant's agreement or consent to the amount pursuant to the relevant Reclamation Agreement, a judicial determination that certain reserved defenses with respect to the reclamation demand are valid (the "Modified Claims Asserting Reclamation").

D.    N. The relief requested in the Seventeenth Omnibus Claims Objection is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Each Insufficiently Documented Claim listed on Exhibit A-1 hereto is hereby disallowed and expunged in its entirety.

2.      The Untimely Insufficiently Documented Claim listed on Exhibit A-2

hereto is hereby disallowed and expunged in its entirety.

3.      Each Books And Records Claim listed on Exhibit B-1 hereto is hereby

disallowed and expunged in its entirety.

4.      The Books And Records Tax Claim listed on Exhibit B-2 hereto is hereby

disallowed and expunged in its entirety.

5.      Each Untimely Books And Records Claim listed on Exhibit B-3 hereto is

hereby disallowed and expunged in its entirety.

6.      The Books And Records Insurance Claim listed on Exhibit C hereto is

hereby disallowed and expunged in its entirety.

7.      Each Untimely Claim listed on Exhibit D-1 hereto is hereby disallowed and

expunged in its entirety.

8.      Each Untimely Tax Claim listed on Exhibit D-2 hereto is hereby disallowed

and expunged in its entirety.

9.      Each "Claim As Docketed" amount, classification, and Debtor listed on

Exhibit E-1 hereto is hereby revised to reflect the amount, classification, and Debtor listed as the

"Claim As Modified."  No Claimant listed on Exhibit E-1 shall be entitled to (a) a recovery for any

Claim Subject to Modification in an amount exceeding the dollar value listed as the "Modified

Total" of the Claim, and/or (b) assert a classification that is inconsistent with that listed in the

"Claim As Modified" column, and/or (c) assert a Claim against a Debtor whose case number is not

listed in the "Claim As Modified" column on Exhibit E-1, subject to the Debtors' right to further

object to each such Claim Subject to Modification.  The Claims Subject to Modification shall

remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest.

1.        10. Each "Claim As Docketed" amount and Debtor listed on Exhibit ED-2[4] hereto is hereby revised to reflect the amount and Debtor listed as the "Claim As Modified." No Claimant listed on Exhibit ED-2 shall be entitled to (a) a recovery for any Tax Claim Subject toTo Modification in an amount exceeding the dollar value listed as the "Modified Total" of the Claim and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column on Exhibit ED-2, and/or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit ED-2, subject to the Debtors' right to further object to each such Tax Claim Subject toTo Modification. The Tax Claims Subject toTo Modification shall remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest. For clarity, Exhibit F hereto displays the formal name of each of the Debtor entities and their associated bankruptcy case numbers referenced in Exhibit D-2.

11.        Each "Claim As Docketed" amount, classification, and Debtor listed on Exhibit E-3 hereto is hereby revised to the amount and classification listed as the "Claim As Modified." No Claimant listed on Exhibit E-3 shall be entitled to (a) a recovery for any Modified Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified

---

[4]    The Claims listed on Exhibits A-1, A-2, B-1, B-2, B-3, C, D-1, D-2, E-1, and E-3 to the Seventeenth Omnibus Claims Objection were disallowed and expunged, modified, or adjourned to a future hearing date, as the case may be, pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation Identified In Seventeenth Omnibus Claims Objection (Docket No. 8737) entered July 26, 2007 (the "Seventeenth Omnibus Claims Objection Order"). Pursuant to the Seventeenth Omnibus Claims Objection Order, this Court adjourned the hearing with respect to all Claims listed on Exhibit E-2 to the Seventeenth Omnibus Claims Objection to August 16, 2007.

Total" of the Claim, and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column on Exhibit E-3, and/or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit E-3, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  The Modified Claims Asserting Reclamation shall remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest.

2.    With respect to each Claim for which a Response to the Seventeenth Omnibus Claims Objection has been filed and served, all of which Claims are listed on Exhibit E-9 hereto, the hearing regarding the objection to such Claims is adjourned to a future hearing date to be noticed by the Debtors consistent with and subject to the Claims Objection Procedures Order; provided, however, that such adjournment shall be without prejudice to the Debtors' right to assert that any such Responses were untimely filed or otherwise deficient under the Claims Objection Procedures Order.

3.    12. Entry of this order is without prejudice to the Debtors' right to object, on any grounds whatsoever, to any other claims in these chapter 11 cases or to further object to Claims that are the subject of the Seventeenth Omnibus Claims Objection.

4.    13. Nothing contained herein shall constitute, nor shall it be deemed to constitute, the allowance of any Claim asserted against any of the Debtors.

5.    14. This Court shall retain jurisdiction over the Debtors and the holders of Claims subject to the Seventeenth Omnibus Claims Objection to hear and determine all matters arising from the implementation of this order.

6.    15. Each of the objections by the Debtors to each Claim addressed in the Seventeenth Omnibus Claims Objection attached hereto as Exhibits A-1, A-2, B-1, B-2, B-3 C,

~~D-1, D-2, E-1, E-2,~~D-2 and E-~~3~~9 constitutes a separate contested matter as contemplated by Fed. R.

Bankr. P. 9014.  This order shall be deemed a separate order with respect to each Claim that is the

subject of the Seventeenth Omnibus Claims Objection.  Any stay of this order shall apply only to

the contested matter which involves such Claim and shall not act to stay the applicability or finality

of this order with respect to the other contested matters covered hereby.

       7.     ~~16.~~Kurtzman Carson Consultants LLC is hereby directed to serve this order,

including exhibits, in accordance with the Claims Objection Procedures Order.

       8.     ~~17.~~

The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States

Bankruptcy Court for the Southern District of New York for the service and filing of a separate

memorandum of law is deemed satisfied by the Seventeenth Omnibus Claims Objection.

Dated: New York, New York
        ~~July~~August ___, 2007

_____
UNITED STATES BANKRUPTCY JUDGE

9       DeltaView comparison of pcdocs://chisr02a/642480/1 and pcdocs://chisr02a/642480/3.
Performed on 8/15/2007.

Document comparison done by DeltaView on Wednesday, August 15, 2007 11:54:30 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://chisr02a/642480/1 |
| Document 2 | pcdocs://chisr02a/642480/3 |
| Rendering set | Option 3a strikethrough double score no moves |

| Legend: |
|---|
| Insertion |
| Deletion |
| <Moved from> |
| >Moved to< |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 24 |
| Deletions | 43 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 67 |

# EXHIBIT G

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Beaver Valley Manufacturing Inc | Ira Rubin | Goldman Rubin & Shapiro | 1340 Woodman Dr | Dayton | OH | 45432 |
| Metalforming Technologies Inc | Pauline K Morgan<br>Michael R Nestor<br>Curtis J Crowther<br>Sean M Beach | Young Conaway Stargatt & Taylor LLP | The Brandywine Bldg 1000 W St 17th Fl | Wilmington | DE | 19899-0931 |
| Metalforming Technologies Inc | Pauline K Morgan<br>Michael R Nestor<br>Curtis J Crowther<br>Sean M Beach | Young Conaway Stargatt & Taylor LLP | PO Box 391 | Wilmington | DE | 19899-0931 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

8/16/2007 2:28 PM
18th Omnibus Objection reply parties

# EXHIBIT H

**Hearing Date: August 16, 2007**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

            - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
         In re                               :          Chapter 11
                                             :
DELPHI CORPORATION, et al.,                  :          Case No. 05-44481 (RDD)
                                             :
                           Debtors.          :          (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS' EIGHTEENTH OMNIBUS
OBJECTION (PROCEDURAL) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P.
3007 TO CERTAIN DUPLICATE OR AMENDED CLAIMS

("DEBTORS' OMNIBUS REPLY IN SUPPORT OF
EIGHTEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby submit

this omnibus reply in support of the Eighteenth Omnibus Objection (Procedural) Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate Or Amended Claims (Docket

No. 8616) (the "Eighteenth Omnibus Claims Objection"), and respectfully represent as follows:

1.      The Debtors filed the Eighteenth Omnibus Claims Objection on July 13,

2007, seeking to disallow and expunge certain "Claims," as that term is defined in 11 U.S.C. §

101(5), because such Claims are duplicative of other Claims or have been amended or

superseded by later-filed Claims.  The Debtors sent to each claimant whose proof of claim is

subject to an objection pursuant to the Eighteenth Omnibus Claims Objection a personalized

Notice Of Objection To Claim, which specifically identified such claimant's proof of claim that

is subject to an objection and the basis for such objection.  Responses to the Eighteenth Omnibus

Claims Objection were due by 4:00 p.m. (prevailing Eastern time) on August 9, 2007.

2.      As of August 15, 2007 at 12:00 p.m. (prevailing Eastern time), the Debtors

had received two timely-filed formal responses and one undocketed response to the Eighteenth

Omnibus Claims Objection (collectively, the "Responses").  In the aggregate, the three

Responses cover three claims.  A chart summarizing each of the Responses by respondent is

attached hereto as <u>Exhibit A</u>.

3.      Pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr.

P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings

---

[1]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the
Eighteenth Omnibus Claims Objection.

2

Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections

to Claims (Docket No. 6089) entered December 6, 2006 (the "Claims Objection Procedures

Order"), the hearing with respect to each of the Claims for which a Response was filed will be

adjourned to a sufficiency hearing or claims objection hearing, as appropriate, to determine the

disposition of each such Claim; provided, however, that such adjournment will be without

prejudice to the Debtors' right to assert that any such Responses were untimely-filed or otherwise

deficient under the Claims Objection Procedures Order.

       4.      As set forth on Exhibit A hereto, the Debtors have agreed to adjourn to a

future date the claims hearing with respect to the three Claims for which Responses were filed or

served.  The revised proposed order, a copy of which is attached hereto as Exhibit B (the

"Revised Order"),[2] reflects the adjournment of the hearings with respect to the Claims for which

Responses were filed.

       5.      Except for those Claims with respect to which a hearing has been

adjourned to a future hearing date, the Debtors believe that the Revised Order adequately

addresses the concerns of the respondents.  Thus, the Debtors request that the Court grant the

relief requested by the Debtors and enter the Revised Order.

---

[2]      Attached hereto as Exhibit C is a copy of the Revised Order marked to show revisions to the form of
proposed order that was submitted with the Eighteenth Omnibus Claims Objection.

3

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

sustaining the Eighteenth Omnibus Claims Objection, subject to the modifications reflected in

the Revised Order, (b) adjourning the hearing with respect to all Claims for which a Response

was filed pursuant to the Claims Objection Procedures Order, and (c) granting the Debtors such

other and further relief as is just.

Dated: New York, New York
      August 15, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700


-and-


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

**Exhibit A**

**In re Delphi Corporation, et al., Case No. 05-44481 (RDD)**

*Responses To The Debtors' Eighteenth Omnibus Claims Objection
Organized By Respondent[1]*

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| 1. | Beaver Valley Manufacturing, Inc. (Docket No. 8995) | 16615 | Beaver Valley Manufacturing, Inc. ("Beaver Valley") asserts that it filed proof of claim no. 16615 (the "Amended Claim") in the amount of $180,633.39 to amend its original claim, proof of claim no. 11186 (the "Original Claim"). According to Beaver Valley, it contested the Debtors' Fifteenth Omnibus Claims Objection to the Original Claim. Beaver Valley states that it filed the amended claim to submit a purchase order that was not issued by the Debtor until March 29, 2007. Beaver Valley contends that the amount of the purchase order was included in the Original Claim. | Duplicate and amended claim | Adjourn |

[1] This chart reflects all Responses entered on the docket as of Tuesday, August 14, 2007 at 12:00 p.m. (prevailing Eastern time).

[2] This chart reflects all resolutions or proposals as of Tuesday, August 14, 2007 at 12:00 p.m. (prevailing Eastern time).

1

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| 2. | Metalforming Technologies, Inc. (Docket No. 9042) | 16612 | Metalforming Technologies, Inc. ("MTI") asserts that it filed proof of claim no. 9190 (the "Original Claim") in the amount of $315,746.36. The Debtors objected to the Original Claim in the Fifteenth Omnibus Claims Objection. MTI asserts that it subsequently filed proof of claim no. 16612 (the "Amended Claim") to amend the Original Claim before the order granting the Fifteenth Omnibus Claims Objection was entered. Therefore, MTI asserts the Debtors have no basis for objecting to the Amended Claim. | Duplicate and amended claim | Adjourn |
| 3. | MacArthur Corporation (undocketed) | 16616 | MacArthur Corporation ("MacArthur") asserts that it filed proof of claim no. 16616 for consumable products that it supplied to Delphi Corporation prior to October 8, 2005. MacArthur Corporation attaches invoices and purchase orders to its response in support of its claim. MacArthur asserts that it filed proof of claim no. 16616 as an amended claim to proof of claim no. 11599, and its claim should be allowed in the amount of $414,063.61. | Duplicate and amended claim | Adjourn |

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                                     :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007
DISALLOWING AND EXPUNGING DUPLICATE OR AMENDED CLAIMS
IDENTIFIED IN EIGHTEENTH OMNIBUS CLAIMS OBJECTION

("EIGHTEENTH OMNIBUS CLAIMS OBJECTION ORDER")

Upon the Eighteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate Or Amended Claims, dated July 13,

2007 (the "Eighteenth Omnibus Claims Objection"),[1] of Delphi Corporation and certain of its

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"); and upon the record of the hearing held on the Eighteenth Omnibus

Claims Objection; and after due deliberation thereon; and good and sufficient cause appearing

therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      Each holder of a claim, as such term is defined in 11 U.S.C. § 101(5) (as

to each, a "Claim") listed on Exhibit A attached hereto was properly and timely served with a

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
       Eighteenth Omnibus Claims Objection.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
       of fact when appropriate.  See Fed. R. Bankr. P. 7052.

copy of the Eighteenth Omnibus Claims Objection, a personalized Notice Of Objection To Claim,

a copy of the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016,

7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To

Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No.

6089) (the "Claims Objection Procedures Order"), the proposed order granting the Eighteenth

Omnibus Claims Objection, and the notice of the deadline for responding to the Eighteenth

Omnibus Claims Objection.  No other or further notice of the Eighteenth Omnibus Claims

Objection is necessary.

        B.      This Court has jurisdiction over the Eighteenth Omnibus Claims Objection

pursuant to 28 U.S.C. §§ 157 and 1334.  The Eighteenth Omnibus Claims Objection is a core

proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the Eighteenth Omnibus

Claims Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

        C.      The Claims listed on Exhibit A hereto under the column heading "Claim

To Be Expunged" are either duplicates of other Claims filed with this Court or have been

amended or superseded by later-filed Claims.

        D.      The relief requested in the Eighteenth Omnibus Claims Objection and

granted herein is in the best interests of the Debtors, their estates, their creditors, and other

parties-in-interest.

      NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

        1.      Each "Claim To Be Expunged" listed on Exhibit A hereto is hereby

disallowed and expunged in its entirety.  Those Claims identified on Exhibit A as "Surviving

2

Claims" shall remain on the Debtors' claims register, but shall remain subject to future objection by the Debtors and other parties-in-interest.

2.      With respect to each Claim for which a Response to the Eighteenth Omnibus Claims Objection has been filed and served, and which has not been resolved by the parties, all of which Claims are listed on Exhibit B hereto, the hearing regarding the objection to each such Claim is adjourned to a future hearing date to be noticed by the Debtors consistent with and subject to the Claims Objection Procedures Order; provided, however, that such adjournment shall be without prejudice to the Debtors' right to assert that any such Responses were untimely filed or otherwise deficient under the Claims Objection Procedures Order.

3.      Entry of this order is without prejudice to the Debtors' right to object, on any grounds whatsoever, to any other claims in these chapter 11 cases, or to further object to Claims that are the subject of the Eighteenth Omnibus Claims Objection; provided, however, that solely to the extent that (a) a claimant filed duplicative claims against different Debtors for the same asserted obligation (the "Multiple Debtor Duplicative Claims") and (b) certain of such claimant's Multiple Debtor Duplicative Claims are being disallowed and expunged hereby, if one of the Multiple Debtor Duplicative Claims was originally filed against the correct Debtor, the Debtors shall not seek to have the claimant's remaining Multiple Debtor Duplicative Claim (the "Remaining Claim") disallowed and expunged solely on the basis that such Remaining Claim is asserted against the incorrect Debtor.  For the avoidance of doubt, except as expressly provided in the preceding sentence, the Remaining Claims shall remain subject to further objection on any grounds whatsoever, including, without limitation, that any such Remaining Claim is asserted against the incorrect Debtor if the claimant did not file a Multiple Debtor Duplicative Claim against the correct Debtor.  Nothing contained herein shall restrict the Debtors from objecting to

3

any Remaining Claim or restrict any holder of a Remaining Claim from seeking relief from this

Court for the purposes of requesting that this Court modify the Remaining Claim to assert such

Remaining Claim against a different Debtor.

4.    Nothing contained herein shall constitute, nor shall it be deemed to

constitute, the allowance of any Claim asserted against any of the Debtors.

5.    This Court shall retain jurisdiction over the Debtors and the holders of

Claims subject to the Eighteenth Omnibus Claims Objection to hear and determine all matters

arising from the implementation of this order.

6.    Each of the objections by the Debtors to each Claim addressed in the

Eighteenth Omnibus Claims Objection and set forth on Exhibits A and B hereto constitutes a

separate contested matter as contemplated by Fed. R. Bankr. P. 9014.  This order shall be

deemed a separate order with respect to each Claim that is the subject of the Eighteenth Omnibus

Claims Objection.  Any stay of this order shall apply only to the contested matter which involves

such Claim and shall not act to stay the applicability or finality of this order with respect to the

other contested matters covered hereby.

7.    Kurtzman Carson Consultants LLC is hereby directed to serve this order,

including exhibits, in accordance with the Claims Objection Procedures Order.

8.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Eighteenth Omnibus Claims

Objection.

Dated: New York, New York
       August ___, 2007

_____
UNITED STATES BANKRUPTCY JUDGE

4

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Eighteenth Omnibus Claims Objection**

## EXHIBIT A - DUPLICATE AND AMENDED CLAIMS

| CLAIM TO BE EXPUNGED | SURVIVING CLAIM |
|---|---|
| **Claim Number:** 16617<br>**Date Filed:** 06/25/2007<br>**Creditor's Name and Address:**<br>BOULDER COUNTY TREASURER<br>PO BOX 471<br>BOULDER, CO 80306<br><br>**Debtor:** DELPHI CORPORATION (05-44481)<br>Secured:<br>Priority:<br>Administrative:<br>Unsecured: $885.93<br>**Total:** $885.93 | **Claim Number:** 2234<br>**Date Filed:** 03/09/2006<br>**Creditor's Name and Address:**<br>BOULDER COUNTY TREASURER<br>PO BOX 471<br>BOULDER, CO 80306<br><br>**Debtor:** DELPHI CORPORATION (05-44481)<br>Secured: $1,013.04<br>Priority:<br>Administrative:<br>Unsecured:<br>**Total:** $1,013.04 |
| **Claim Number:** 11604<br>**Date Filed:** 07/27/2006<br>**Creditor's Name and Address:**<br>FREUDENBERG NOK GENERAL PARTNERSHIP<br>BODMAN LLP<br>6TH FL AT FORD FIELD<br>1901 ST ANTOINE ST<br>DETROIT, MI 48226<br><br>**Debtor:** DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640)<br>Secured: $277,525.00<br>Priority:<br>Administrative:<br>Unsecured:<br>**Total:** $277,525.00 | **Claim Number:** 11603<br>**Date Filed:** 07/27/2006<br>**Creditor's Name and Address:**<br>FREUDENBERG NOK GENERAL PARTNERSHIP<br>BODMAN LLP<br>6TH FL AT FORD FIELD<br>1901 ST ANTOINE ST<br>DETROIT, MI 48226<br><br>**Debtor:** DELPHI CORPORATION (05-44481)<br>Secured: $358,851.00<br>Priority: $80,742.02<br>Administrative:<br>Unsecured: $60,066.20<br>**Total:** $499,659.22 |
| **Claim Number:** 16595<br>**Date Filed:** 04/12/2007<br>**Creditor's Name and Address:**<br>LOCKPORT CITY TREASURER CITY OF LOCKPORT<br>1 LOCKS PLAZA<br>LOCKPORT, NY 14094<br><br>**Debtor:** DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640)<br>Secured:<br>Priority:<br>Administrative:<br>Unsecured: $93,707.30<br>**Total:** $93,707.30 | **Claim Number:** 12442<br>**Date Filed:** 07/28/2006<br>**Creditor's Name and Address:**<br>LOCKPORT CITY TREASURER<br>CITY OF LOCKPORT<br>1 LOCKS PLAZA<br>LOCKPORT, NY 14094<br><br>**Debtor:** DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640)<br>Secured:<br>Priority:<br>Administrative: $23,738.72<br>Unsecured: $69,968.61<br>**Total:** $93,707.33 |
| **Claim Number:** 16607<br>**Date Filed:** 06/04/2007<br>**Creditor's Name and Address:**<br>POPE COUNTY ARKANSAS<br>100 W MAIN<br>RUSSELLVILLE, AR 72801<br><br>**Debtor:** DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640)<br>Secured:<br>Priority: $77.18<br>Administrative:<br>Unsecured:<br>**Total:** $77.18 | **Claim Number:** 3556<br>**Date Filed:** 05/01/2006<br>**Creditor's Name and Address:**<br>POPE COUNTY AR<br>POPE COUNTY TAX COLLECTOR<br>100 WEST MAIN ST<br>RUSSELLVILLE, AR 72801<br><br>**Debtor:** DELPHI CORPORATION (05-44481)<br>Secured:<br>Priority: $100.61<br>Administrative:<br>Unsecured:<br>**Total:** $100.61 |
| **Claim Number:** 16455<br>**Date Filed:** 12/15/2006<br>**Creditor's Name and Address:**<br>TROSTEL LTD<br>901 MAXWELL ST<br>LAKE GENEVA, WI 53147<br><br>**Debtor:** DELPHI CORPORATION (05-44481)<br>Secured:<br>Priority:<br>Administrative:<br>Unsecured: $208,432.35<br>**Total:** $208,432.35 | **Claim Number:** 12693<br>**Date Filed:** 07/28/2006<br>**Creditor's Name and Address:**<br>CONTRARIAN FUNDS LLC AS ASSIGNEE OF TROSTEL LTD<br>CONTRARIAN FUNDS LLC<br>411 W PUTNAM AVE STE 225<br>GREENWICH, CT 06830<br><br>**Debtor:** DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640)<br>Secured:<br>Priority: $16,213.43<br>Administrative:<br>Unsecured: $1,478,358.39<br>**Total:** $1,494,571.82 |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

**Eighteenth Omnibus Claims Objection**

**EXHIBIT A - DUPLICATE AND AMENDED CLAIMS**

| CLAIM TO BE EXPUNGED | SURVIVING CLAIM |
| --- | --- |

Total Claims to be Expunged:
Total Asserted Amount to be Expunged:     $580,627.1

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Eighteenth Omnibus Claims Objection**

## EXHIBIT B - ADJOURNED DUPLICATE AND AMENDED CLAIMS

| CLAIM TO BE EXPUNGED | | | SURVIVING CLAIM | | |
|---|---|---|---|---|---|
| Claim Number: 16615 | Debtor: | DELPHI CORPORATION (05-44481) | Claim Number: 11186 | Debtor: | DELPHI CORPORATION (05-44481) |
| Date Filed: 06/15/2007 | | | Date Filed: 07/26/2006 | | |
| Creditor's Name and Address: | | | Creditor's Name and Address: | | |
| BEAVER VALLEY MANUFACTURING INC | | | BEAVER VALLEY MANUFACTURING INC | | |
| GOLDMAN RUBIN & SHAPIRO | Administrative: | | GOLDMAN RUBIN & SHAPIRO | Administrative: | |
| 1340 WOODMAN DR | Unsecured: | $180,633.39 | 1340 WOODMAN DR | Unsecured: | $180,633.39 |
| DAYTON, OH 45432 | | | DAYTON, OH 45432 | | |
| | Secured: | | | Secured: | |
| | Priority: | | | Priority: | |
| | Total: | $180,633.39 | | Total: | $180,633.39 |
| Claim Number: 16616 | Debtor: | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) | Claim Number: 11599 | Debtor: | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) |
| Date Filed: 06/22/2007 | | | Date Filed: 07/27/2006 | | |
| Creditor's Name and Address: | | | Creditor's Name and Address: | | |
| MACARTHUR CORPORATION | | | MAC ARTHUR CORPORATION | | |
| WINEGARDEN HALEY LINDHOLM & | Administrative: | | 3190 TRI PARK DR | Administrative: | |
| ROBERSTON PLC | Unsecured: | $414,063.61 | GRAND BLANC, MI 48439-0010 | Unsecured: | $432,705.04 |
| G 9460 S SAGINAW ST STE A | | | | | |
| GRAND BLANC, MI 48439 | Secured: | | | Secured: | |
| | Priority: | | | Priority: | |
| | Total: | $414,063.61 | | Total: | $432,705.04 |
| Claim Number: 16612 | Debtor: | DELPHI CORPORATION (05-44481) | Claim Number: 9190 | Debtor: | DELPHI CORPORATION (05-44481) |
| Date Filed: 06/11/2007 | | | Date Filed: 07/10/2006 | | |
| Creditor's Name and Address: | | | Creditor's Name and Address: | | |
| METALFORMING TECHNOLOGIES INC | | | METALFORMING TECHNOLOGIES INC | | |
| 980 N MICHIGAN AVE | Administrative: | | 980 N MICHIGAN AVE | Administrative: | |
| STE 1900 | Unsecured: | $257,482.41 | STE 1900 | Unsecured: | $315,746.36 |
| CHICAGO, IL 60611 | | | CHICAGO, IL 60611 | | |
| | Secured: | | | Secured: | |
| | Priority: | | | Priority: | |
| | Total: | $257,482.41 | | Total: | $315,746.36 |

**Total Claims to be Expunged:**          3

**Total Asserted Amount to be Expunged:**          $852,179.41

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
             In re                        :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                    Debtors.              :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007  DISALLOWING
AND EXPUNGING DUPLICATE OR AMENDED CLAIMS
IDENTIFIED IN EIGHTEENTH OMNIBUS CLAIMS OBJECTION

("EIGHTEENTH OMNIBUS CLAIMS OBJECTION ORDER")

Upon the Eighteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate Or Amended Claims, dated July 13, 2007

(the "Eighteenth Omnibus Claims Objection"),[1] of Delphi Corporation and certain of its

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"); and upon the record of the hearing held on the Eighteenth Omnibus

Claims Objection; and after due deliberation thereon; and good and sufficient cause appearing

therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      Each holder of a claim, as such term is defined in 11 U.S.C. § 101(5)

(as to each, a "Claim") listed on Exhibit A attached hereto was properly and timely served

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
Eighteenth Omnibus Claims Objection.

with a copy of the Eighteenth Omnibus Claims Objection, a personalized Notice Of

Objection To Claim, a copy of the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr.

P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings

Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"), the

proposed order granting the Eighteenth Omnibus Claims Objection, and the notice of the

deadline for responding to the Eighteenth Omnibus Claims Objection.  No other or further

notice of the Eighteenth Omnibus Claims Objection is necessary.

        B.      This Court has jurisdiction over the Eighteenth Omnibus Claims

Objection pursuant to 28 U.S.C. §§ 157 and 1334.  The Eighteenth Omnibus Claims

Objection is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the

Eighteenth Omnibus Claims Objection in this district is proper under 28 U.S.C. §§ 1408

and 1409.

        C.      The Claims listed on <u>Exhibit A</u> hereto under the column heading

"Claim To Be Expunged" are either duplicates of other Claims filed with this Court or have

been amended or superseded by later-filed Claims.

        D.      The relief requested in the Eighteenth Omnibus Claims Objection

and granted herein is in the best interests of the Debtors, their estates, their creditors, and

other parties-in-interest.

---

*(cont'd from previous page)*

[2]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

2     DeltaView comparison of pcdocs://chisr01a/555270/4 and pcdocs://chisr01a/555270/5. Performed on 8/15/2007.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

1.    Each "Claim To Be Expunged" listed on Exhibit A hereto is hereby

disallowed and expunged in its entirety.  Those Claims identified on Exhibit A as

"Surviving Claims" shall remain on the Debtors' claims register, but shall remain subject to

future objection by the Debtors and other parties-in-interest.

2.    With respect to each Claim for which a Response to the Eighteenth

Omnibus Claims Objection has been filed and served, and which has not been resolved by the

parties, all of which Claims are listed on Exhibit B hereto, the hearing regarding the objection to

each such Claim is adjourned to a future hearing date to be noticed by the Debtors consistent with

and subject to the Claims Objection Procedures Order; provided, however, that such adjournment

shall be without prejudice to the Debtors' right to assert that any such Responses were untimely

filed or otherwise deficient under the Claims Objection Procedures Order.

3.    2. Entry of this order is without prejudice to the Debtors' right to object, on

any grounds whatsoever, to any other claims in these chapter 11 cases, or to further object to

Claims that are the subject of the Eighteenth Omnibus Claims Objection; provided, however, that

solely to the extent that (a) a claimant filed duplicative claims against different Debtors for the

same asserted obligation (the "Multiple Debtor Duplicative Claims") and (b) certain of such

claimant's Multiple Debtor Duplicative Claims are being disallowed and expunged hereby, if one

of the Multiple Debtor Duplicative Claims was originally filed against the correct Debtor, the

Debtors shall not seek to have the claimant's remaining Multiple Debtor Duplicative Claim (the

"Remaining Claim") disallowed and expunged solely on the basis that such Remaining Claim is

asserted against the incorrect Debtor.  For the avoidance of doubt, except as expressly provided in

3    DeltaView comparison of pcdocs://chisr01a/555270/4 and pcdocs://chisr01a/555270/5.
Performed on 8/15/2007.

the preceding sentence, the Remaining Claims shall remain subject to further objection on any

grounds whatsoever, including, without limitation, that any such Remaining Claim is asserted

against the incorrect Debtor if the claimant did not file a Multiple Debtor Duplicative Claim

against the correct Debtor.  Nothing contained herein shall restrict the Debtors from objecting to

any Remaining Claim or restrict any holder of a Remaining Claim from seeking relief from this

Court for the purposes of requesting that this Court modify the Remaining Claim to assert such

Remaining Claim against a different Debtor.

       4.      3. Nothing contained herein shall constitute, nor shall it be deemed to

constitute, the allowance of any Claim asserted against any of the Debtors.

       5.      4. This Court shall retain jurisdiction over the Debtors and the holders of

Claims subject to the Eighteenth Omnibus Claims Objection to hear and determine all matters

arising from the implementation of this order.

       6.      5. Each of the objections by the Debtors to each Claim addressed in the

Eighteenth Omnibus Claims Objection and set forth on Exhibit A Exhibits A and B hereto

constitutes a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.  This order shall

be deemed a separate order with respect to each Claim that is the subject of the Eighteenth

Omnibus Claims Objection.  Any stay of this order shall apply only to the contested matter which

involves such Claim and shall not act to stay the applicability or finality of this order with respect

to the other contested matters covered hereby.

       7.      6. Kurtzman Carson Consultants LLC is hereby directed to serve this order,

including exhibits, in accordance with the Claims Objection Procedures Order.

       8.      7. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Eighteenth Omnibus Claims

Objection.

Dated: New York, New York
          August ___, 2007

_____
          UNITED STATES BANKRUPTCY JUDGE

---

5        DeltaView comparison of pcdocs://chisr01a/555270/4 and pcdocs://chisr01a/555270/5.
Performed on 8/15/2007.

Document comparison done by DeltaView on Wednesday, August 15, 2007 11:33:57 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://chisr01a/555270/4 |
| Document 2 | pcdocs://chisr01a/555270/5 |
| Rendering set | Option 3a strikethrough double score no moves |

| Legend: |
|---|
| Insertion |
| Deletion |
| <Moved from> |
| >Moved to< |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 3 |
| Deletions | 7 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 10 |

# EXHIBIT I

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|------|-------------------|----------|----------|----------|------|-------|-----|
| Agent for CDW Computer Centers Inc | Phyllis A Hayes | Receivable Management Services | 307 Intl Cir Ste 720 | | Hunt Valley | MD | 21030 |
| Akzo Nobel Coatings Inc | Byron C Starcher Esq | Nelson Mullins Riley & Scarborough LLP | 999 Peachtree St NE Ste 1400 | | Atlanta | GA | 30309 |
| Akzo Nobel Coatings Inc | Michelle L Meiselman Esq | 5555 Spalding Dr | | | Norcross | GA | 30092 |
| Ametek Inc | Anne Marie Aaronson & J Gregg Miller | Pepper Hamilton LLP | 3000 Two Logan Sq | 18th and Arch Streets | Philadelphia | PA | 19103 |
| Angelina County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Arbogast Michael A And Rebecca C Arbogast | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Arnold Center Inc | Susan M Cook | Lambert Leser Isackson Cook & Giunta PC | 916 Washington Ave Ste 309 | | Bay City | MI | 48708 |
| ATS Ohio Inc | Robert D Gordon | Clark Hill PLC | 500 Woodward Ave Ste 3500 | | Detroit | MI | 48226-3435 |
| Bellsouth Communications Inc | Eric H Horn & Vincent A DAgostino Esq | Lowenstein Sandler PC | 65 Livingston Ave | | Roseland | NJ | 07068 |
| Benecke Kaliko AG | Daniel Felden | Continental AG | Strawinskylaan 3111 6th Fl | | Amsterdam | | 1077ZX |
| Benecke Kaliko AG | James M Lawniczak & Nathan A Wheatly | Calfee Halter & Griswold LLP | 1400 McDonald Investment Center | 800 Superior Ave | Cleveland | OH | 44114 |
| Beuke Robert L | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Bex Russell And Barbara A | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Bueke Robert L And Norma J | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Buis James And Jacqueline | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Callanan Industries Inc dba Manitou Concrete Company | Christopher H Corcoran | Wiedman Vazzana Corcoran & Volta PC | 5 S Fitzhugh St | | Rochester | NY | 14614 |
| Cameron County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Cameron County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Cameron County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Canter Richard And Louanna | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Cingular Wireless nka AT&T Mobility | Eric H Horn | Vincent A DAgostino Esq | Lowenstein Sandler PC | 65 Livingston Ave | Roseland | NJ | 07068 |
| Circle Broach Company | Howard A Larson | Couzens Lansky Feakl Ellis Roeder & Lazar PC | 39395 W 12 Mile Rd Ste 200 | | Farmington Hills | MI | 48331 |
| City of El Paso | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of El Paso | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of El Paso | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Harlingen | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Harlingen | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Harlingen | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of San Marcos | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of San Marcos | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| City of Vandalia Ohio | Sarah B Chapman Carter | Pickrel Schaeffer & Ebeling Co LPA | 2700 Kettering Tower | | Dayton | OH | 45423 |
| Cloncs Donald And Carole L | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Computer Patent Annuities Limited | Calinoff & Katz LLP | Dorothy H De Marinis Riggio | 140 E 45th St 17th Fl | | New York | NY | 10017 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                Page 1 of 4                                8/17/2007 1:47 PM
                                                                                                 19th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|------|-------------------|----------|----------|----------|------|-------|-----|
| Computer Patent Annuities Limited | Gill David | Accounts Receivable Manager | CPA House | 11-15 Seaton Pl | St Helier | Jersey | JE1 1BL |
| Computer Patent Annuities Limited | Thomas D Renda & Kerry Hopkins | Miles & Stockbridge PC | 11 N Washington St Ste 700 | | Rockville | MD | 20850-4229 |
| Contrarian Funds LLC | Jeffrey R Gleit & Adam L Shiff | David S Rosner & Daniel A Fliman | Kasowitz Benson Toerres & Friedman LLP | 1633 Broadway | New York | NY | 10019 |
| CTP Carrera Inc dba Carclo Technical Plastics | | 600 Depot St | | | Latrobe | PA | 15650 |
| Cypress Fairbanks ISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Dallas County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Davis Ii Robert E Plaintiff V | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| DC Coaters | Max K McNeal | DC Coaters Inc | 550 W Industrial Dr | | Tipton | IN | 46072 |
| DC Coaters | Paul R Hage | Jaffe Raitt Heuer & Weiss PC | 27777 Franklin Rd Ste 2500 | | Southfield | MI | 48034 |
| Demag Plastics Group Corporation dba Van Dorn Demag Corporation | Attn Karen Freemean | 11792 Alameda Dr | | | Strongsville | OH | 44136 |
| Demag Plastics Group Corporation dba Van Dorn Demag Corporation | Daniel A Demarco & Christopher W Peer | Hahn Loeser & Parks LLP | 200 Public Sq Ste 3300 | | Cleveland | OH | 44114-2301 |
| Demag Plastics Group Corporation dba Van Dorn Demag Corporation | Leslie A Berkoff | Moritt Hock Hamroff & Horowitz LLP | 400 Garden Cty Plz | | Garden Cty | NY | 11530 |
| Empresas Ca Le Tlaxcala Sa De Cv | Elena Lazarou | Reed Smith LLP | 599 Lexington Ave | | New York | NY | 10022 |
| Empresas Ca Le Tlaxcala Sa De Cv | Stephen T Bobo | Reed Smith LLP | 10 S Wacker Dr 40th Fl | | Chicago | IL | 60606 |
| Ennis Donald And Carol | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Freudenberg Nok General Partnership | Ralph E McDowell | Bodman LLP | 6th Fl at Ford Field | 1901 St Antoine St | Detroit | MI | 48226 |
| Freudenberg Nok Inc | Ralph E McDowell | Bodman LLP | 6th Fl at Ford Field | 1901 St Antoine St | Detroit | MI | 48226 |
| Freudenberg Nonwovens LP | Freudenberg Nonwovens LP Eft | 2975 Pembroke Rd | | | Hopkinsville | KY | 42240 |
| Freudenberg Nonwovens LP | Ralph E McDowell | Bodman LLP | 6th Fl t Ford Field | 1901 St Antoine St | Detroit | MI | 48226 |
| Furukawa Electric North America APD and Furukawa Electric Co Ltd | Gerard DiConza | DiConza Law PC | 630 Third Ave 7th Fl | | New York | NY | 10017 |
| Furukawa Electric North America APD and Furukawa Electric Co Ltd | Michael S McElwee | Varnum Riddering Schmidt & Howlett LLP | 333 Bridge St NW Ste 1700 | | Grand Rapids | MI | 49504 |
| Furukawa Electric North America APD and Furukawa Electric Co Ltd | Michael S McElwee | Varnum Riddering Schmidt & Howlett LLP | Bridgewater Place | PO Box 352 | Grand Rapids | MI | 49501 |
| GE Fanuc Automation North America Inc | Michael R Enright | Robinson & Cole LLP | 280 Trumbull St | | Hartford | CT | 06103 |
| Harlingen CISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Harris County City of Houston | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Hoyt Arthur And Vivian | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Hubbard Clarence E | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Kiefel Technologies Inc | Attn Steven E. Grill | Devine Millimet & Branch PA | 111 Amherst St | | Manchester | NH | 03101 |
| Kiefel Technologies Inc | | 5 Merrill Industrial Dr | | | Hampton | NH | 03842 |
| Liquidity Solutions Inc as Assignee | Michael Handler | One University Plz Ste 312 | | | Hackensack | NJ | 07601 |
| Marquardt Switches Inc | Attn Rodney Mayette | 2711 Rte 20 E | | | Cazenovia | NY | 13035 |
| Marquardt Switches Inc | Karen V DeFio & Camille W Hill | Bond Schoeneck & King PLLC | One Lincoln Center | | Syracuse | NY | 13202 |
| Merritt James And Bonnie | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 4

8/17/2007 1:47 PM
19th Omnibus Objection reply parties

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|------|--------------------|----------|----------|----------|------|-------|-----|
| Microsys Technologies | Jane Goodyear | 3710 Nashua Dr Unit 1 | | | Mississauga | ON | L4V 1M5 |
| Microsys Technologies | Paige E Barr | Jaffe Raitt Heuer & Weiss PC | 27777 Franklin Rd Ste 2500 | | Southfield | MI | 48034 |
| Milliken & Company | Stanley L Lane Jr & Jenette A Barrow Bosshart | Otterbourg, Steindler, Houston & Rosen PC | 230 Park Ave | | New York | NY | 10169 |
| Milliken & Company | | 1045 Sixth Ave | | | New York | NY | 10018 |
| Minnick Ralph D | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Montague County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Montgomery County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Nueces County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Nueces County | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| NXP Semiconductors USA Inc | Robert N Michaelson | Kirkpatrick & Lockhart Preston Gates Ellis LLP | 599 Lexington Ave | | New York | NI | 10022 |
| NXP Semiconductors USA Inc | Robert N Michaelson Esq | Kirkpatrick & Lockhart Preston Gates Ellis LLP | 599 Lexington Ave | | New York | NY | 10022 |
| Obrien Michael And Ingrid Obrien | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Parkview Metal Products Inc | Thomas P Sarb Robert D Wolford | Miller Johnson | 250 Parkview Ave NW Ste 800 | PO Box 306 | Grand Rapids | MI | 49501-0306 |
| PBR Australia Party Ltd | Attn Peter Valentine | PO Box 176 | | | Bentleigh East | VI | 3165 |
| PBR Australia Party Ltd | David G Dragich | 500 Woodward Ave Ste 2700 | | | Detroit | MI | 48226 |
| PBR Australia Party Ltd | Lori V Vaughan | 90 Park Ave | | | New York | NY | 10016 |
| Phelps John W And Deborah J Phelps | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Phillips Robert | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| PIC Productivity Improvement Center | Attn Cathy Burgess | 199 Wentworth St E | | | Oshawa | ON | L1H 3V6 |
| PIC Productivity Improvement Center | Dennis W Loughlin & Lynn M. Brimer | Strobl & Sharp PC | 300 E Long Lake Rd Ste 200 | | Bloomfield Hills | MI | 48304-2376 |
| Proud Douglas And Esther | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Quality Synthetic Rubber Inc | c o Patrick J Keating Esq | Buckingham Doolittle & Burroughs LLP | PO Box 1500 | | Akron | OH | 44309-1500 |
| Quality Synthetic Rubber Inc | Patrick J Keating | Buckingham Doolittle & Burroughs LLP | 3800 Embassy Pkwy Ste 300 | | Akron | OH | 44333 |
| Russell Thomas And Norma | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| San Marcos CISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| San Marcos CISD | Diane W Sanders | Linebarger Goggan Blair & Sampson LLP | 1949 South IH 35 | PO Box 17428 | Austin | TX | 78760 |
| Schaeffler KG | Matthew B Stein Esq | Sonnenschein Nath & Rosenthal LLP | 1221 Ave of the Americas | | New York | NY | 10020 |
| Secretay of the United States Department of Labor | Jonathan Snare Joan Gestrin Patricia Rodenhausen & Phyllis Dolinko | US Dept of Labor | Office of the Solicitor | 230 S Dearborn St Rm 844 | Chicago | IL | 60604 |
| Secretay of the United States Department of Labor | Jonathan Snare William Everheart Patricia Rodenhausen & Robert Colberg | US Dept of Labor | Office of the Solicitor | 525 S Griffin St Ste 501 | Dallas | TX | 75202 |

Delphi Corporation
Special Parties

| Name | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|------|--------------------|----------|----------|----------|------|-------|-----|
| Secretay of the United States Department of Labor | Phyllis Dolinko | Senior Trial Attorney US | Dept of Labor Office of the Solicitor | 230 S Dearborn St 8th Fl | Chicago | IL | 60604 |
| Select Industries Inc | W Timothy Miller | Taft Stettinius & Hollister LLP | 425 Walnut St Ste 1800 | | Cincinnati | OH | 45202 |
| Sherwin Williams Automotive Finishes Corp | Dennis W Loughlin & Lynn M. Brimer | Strobl & Sharp PC | 300 E Long Lake Rd Ste 200 | | Bloomfield Hills | MI | 48304-2376 |
| Sherwin Williams Automotive Finishes Corp | | 4440 Warrensville Center Rd | | | Warrensville Heights | OH | 44128 |
| Sherwin Williams Company | Dennis W Loughlin & Lynn M Brimer | Strobel & Sharp PC | 300 E Long Lake Rd Ste 200 | | Bloomfield Hills | MI | 48304-2376 |
| Siemens Building Technologies Inc | Lauren Newman | Fagel Haber LLC | 55 E Monroe St 40th Fl | | Chicago | IL | 60603 |
| Siemens Energy & Automation Inc | c o Elizabeth L Gunn & Aaron G McCollough | McGuirewoods LLP | One James Center 901 East Cary St | | Richmond | VA | 23219 |
| Sierra International Inc | Anne Marie Aaronson & Francis J Lawall | Pepper Hamilton LLP | 3000 Two Logan Sq | 18th and Arch Streets | Philadelphia | PA | 19103 |
| Sierra Liquidity Fund | as Assgnee to Showers Group Inc Shepard Mfg Co Inc | 2699 White Rd Ste 255 | | | Irvine | CA | 92614 |
| Sierra Liquidity Fund LLC Assignee Dynamic Corporation Assignor | Scott August Tammy Garza & Jim Riley | Sierra Liquidity Fund LLC | 2699 White Rd Ste 255 | | Irvine | CA | 92614 |
| Sierra Liquidity Fund LLC Assignee SMK Electronics Corp USA | Scott August Tammy Garza & Jim Riley | 2699 White Rd Ste 255 | | | Irvine | CA | 92614 |
| Smith James O And Betty J | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Solectron Corporation | Howard Koh Esq | Meister Seeling & Fein LLP | 2 Grand Central Tower | 140 E 45th St 19th Fl | New York | NY | 10017 |
| Solectron Corporation | Patrick M Costello & Lawrence M Schwab | Bialson Bergen & Schwab | 2600 El Camino Real Ste 300 | | Palo Alto | CA | 94306 |
| SPCP Group LLC | Maura I Russell & Paul Traub | Anthony B Stmbo & Brett J Nizzo | Dreier LLP | 449 Park Ave 14th Fl | New York | NY | 10022 |
| Stansbury Ii Robert L | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| State of New Jersey Division of Taxation | Anne Milgram Attorney General of New Jersey | RJ Hughes Justice Complex | 25 Market St | PO Box 106 | Trenton | NJ | 08625-0106 |
| Stuck Ronald P Shelley A Stuck | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| TPG Credit Opportunities Fund LP & TPG Credit Opportunities Investors LP | Tara Hannon Siu Lan Chan & Jay N Heinrich | Mandel Katz & Brosnan LLP | The Law Bldg | 210 Rte 303 | Valley Cottage | NY | 10989 |
| United States Steel Corporation | Richard L Ferrell & Timothy J Hurley | Taft Stettinius & Hollister LLP | 425 Walnut St Ste 1800 | | Cincinnati | OH | 45240 |
| Vector Cantech Inc | Jonathan S Green & Eric D Carlson | Miller Canfield Paddock & Stone PLC | 150 W Jefferson Ave Ste 2500 | | Detroit | MI | 48226 |
| Vector Cantech Inc | Lindsey Stetson | Miller Canfield Paddock & Stone PLC | 101 N Main St 7th Fl | | Ann Arbor | MI | 48103 |
| Waldo Richard L And Gwendolyn A Waldo Plaintiffs V | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |
| Yates Dale A And Jacqueline R Yates | Linda George & Kathleen A Farinas | George & Sipes LLP | 151 N Delaware St Ste 1700 | | Indianapolis | IN | 46204 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 4

8/17/2007 1:47 PM
19th Omnibus Objection reply parties

# EXHIBIT J

**Hearing Date: August 16, 2007**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
        In re                                 :        Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :        Case No. 05-44481 (RDD)
                                              :
                        Debtors.              :        (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS' NINETEENTH OMNIBUS
OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007
TO CERTAIN (A) INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED
ON DEBTORS' BOOKS AND RECORDS, (C) UNTIMELY CLAIM, AND (D) CLAIMS SUBJECT TO
MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, MODIFIED CLAIMS
ASSERTING RECLAMATION, AND CONSENSUALLY MODIFIED AND REDUCED CLAIMS

("DEBTORS' OMNIBUS REPLY IN SUPPORT OF
NINETEENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] hereby submit

this omnibus reply in support of the Nineteenth Omnibus Objection (Substantive) Pursuant To 11

U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims,

(B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D)

Claims Subject To Modification, Tax Claims Subject to Modification, Modified Claims

Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8617)

(the "Nineteenth Omnibus Claims Objection"), and respectfully represent as follows:

1.    The Debtors filed the Nineteenth Omnibus Claims Objection on July 13,

2007, seeking entry of an order (a) disallowing and expunging certain "Claims," as that term is

defined in 11 U.S.C. § 101(5), because they contain insufficient documentation in support of the

Claims asserted, (b) disallowing and expunging certain Claims because they assert liabilities or

dollar amounts that are not reflected on the Debtors' books and records, (c) disallowing and

expunging certain Claims, which were filed by taxing authorities, because they assert liabilities

that are not reflected on the Debtors' books and records (d) disallowing and expunging certain

Claims, which were filed by taxing authorities, because they assert liabilities that are not

reflected on the Debtors' books and records and were untimely filed pursuant to the Bar Date

Order, (e) disallowing and expunging a Claim because it was untimely pursuant to the Bar Date

Order, (f) revising the asserted amount or classification, and/or changing the identity of the

alleged Debtor with respect to certain Claims, (g) revising the asserted amount or classification,

---

[1]    Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the
Seventeenth Omnibus Claims Objection.

2

and/or changing in the identity of the alleged Debtor with respect to certain Claims filed by

taxing authorities, (h) revising the asserted amount or classification, and/or changing the identity

of the alleged Debtor with respect to certain Claims, some of which are subject to an agreement

between the claimant and the Debtors relating to the valid amount of each claimant's reclamation

demand, subject to certain reserved defenses, and some of which are held by claimants who are

deemed to have consented to the Debtors' determination of the valid amount of the reclamation

demand, or (i) revising the asserted amount, and/or changing the identity of the alleged Debtor,

with respect to certain Claims, which assert certain tort liabilities.

        2.      The Debtors sent to each claimant whose proof of claim is subject to an

objection pursuant to the Nineteenth Omnibus Claims Objection a personalized Notice Of

Objection To Claim, which specifically identified such claimant's proof of claim that is subject to

an objection and the basis for such objection.  Responses to the Nineteenth Omnibus Claims

Objection were due by 4:00 p.m. (prevailing Eastern time) on August 9, 2007.

        3.      As of August 14, 2007 at 12:00 p.m. (prevailing Eastern time), the Debtors

had received 50 timely-filed formal docketed responses and one undocketed response

(collectively, the "Responses") to the Nineteenth Omnibus Claims Objection.  In the aggregate,

the Responses cover 103 Claims.  A chart summarizing each of the Responses is attached hereto

as Exhibit A.

        4.      Pursuant to the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr.

P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings

Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections

to Claims (Docket No. 6089) entered December 6, 2006 (the "Claims Objection Procedures

Order"), the hearing with respect to each of the Claims for which a Response was filed will be

3

adjourned to a sufficiency hearing or claims objection hearing, as appropriate, to determine the disposition of each such Claim.

5.        As set forth on <u>Exhibit A</u> hereto, the Debtors have agreed to adjourn to a future date the claims hearing with respect to the 103 Claims for which Responses were filed. The revised proposed order, a copy of which is attached hereto as <u>Exhibit B</u> (the "Revised Order"),[2] reflects the adjournment of the hearings with respect to the Claims for which Responses were filed.

6.        The Revised Order reflects the adjournment of the hearing with respect to each of the Claims for which a Response was filed to a future hearing date pursuant to the Claims Objection Procedures Order, <u>provided</u>, <u>however</u>, that such adjournment will be without prejudice to the Debtors' right to assert that any of such Responses was untimely or otherwise deficient under the Claims Objection Procedures Order.

7.        In addition to the Responses, the Debtors also received informal letters, e-mails, and telephone calls from various parties questioning the relief requested with the Nineteenth Omnibus Claims Objection and seeking to reserve certain of their rights with respect thereto (the "Informal Responses").  The Debtors believe that all the concerns expressed by the Informal Responses have been adequately resolved.

8.        Except for those Claims that have been adjourned to future hearing dates, the Debtors believe that the Revised Order adequately addresses the issues raised by the

---

[2]        Attached hereto as <u>Exhibit C</u> is a copy of the Revised Order marked to show revisions to the form of proposed order that was submitted with the Nineteenth Omnibus Claims Objection.

respondents.  Thus, the Debtors request that the Court grant the relief requested by the Debtors and enter the Revised Order.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) sustaining the Nineteenth Omnibus Claims Objection, subject to the modifications made to the Revised Order, (b) adjourning the hearing with respect to all Claims for which a Response was filed pursuant to the Claims Objection Procedures Order, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
     August 15, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -


By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**Exhibit A**

**In re Delphi Corporation, et al., Case No. 05-44481 (RDD)**

*Responses To The Debtors' Nineteenth Omnibus Claims Objection*
*Organized By Respondent[1]*

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| 1. | GE Fanuc Automation North America, Inc. (Docket No. 8723) | 500 | GE Fanuc Automation North America, Inc. ("GE Fanuc") asserts that it timely filed proof of claim no. 500 in the amount of $6,837.48 for services performed for Delphi Corporation prior to October 8, 2005 (the "Petition Date"), GE Fanuc disagrees with the Debtors' objection and states that the amount asserted in its proof of claim remains outstanding, undisputed, and due. GE Fanuc requests that this Court allow its claim unless that Debtors provide evidence contradicting the prima facie validity of its claim. | Books and records | Adjourn |
| 2. | Angelina County, Bexar County, Cameron County, City of El Paso, City of Harlingen, City of San Marcos, Cypress-Fairbanks ISD, Dallas County, Harlingen CISD, Harris County/City of Houston, Hidalgo County, Montague | 1330, 1267, 1288, 5520, 14187, 1289, 5300, 853, 1283, 5301, 7914, 6470, 1266, 1284, 5521, 854 | Angelina County, Bexar County, Cameron County, City of El Paso, City of Harlingen, City of San Marcos, Cypress-Fairbanks ISD, Dallas County, Harlingen CISD, Harris County/City of Houston, Hidalgo County, Montague County, Montgomery County, Nueces County, San Marcos CISD, and Tarrant County (collectively, the "Texas Taxing Authorities") assert that it is not necessary to file a response to the Debtors' objection because their proofs of claim constitute prima facie evidence and they | Tax claims subject to modification | Adjourn |

---

[1] This chart reflects all Responses entered on the docket as of Tuesday, August 14, 2007 at 12:00 p.m. (prevailing Eastern time).

[2] This chart reflects all resolutions or proposals as of Tuesday, August 14, 2007 at 12:00 p.m. (prevailing Eastern time).

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | County, Montgomery County, Nueces County, San Marcos CISD, and Tarrant County (Docket No. 8857) | | further argue that the burden is on the Debtors to rebut their proofs of claim. The Texas Taxing Authorities contend that they are filing their response to reassert their claims out of an abundance of caution. The Texas Taxing Authorities request that this Court deny the Debtors' objection to their claims. | | |
| 3. | Akzo Nobel Coatings Inc. (Docket No. 8902) | 15234 | Akzo Nobel Coatings Inc. ("Akzo") asserts that it filed proof of claim no. 15234 in the amount of $425,367.33 for amounts owed on goods and services it provided to Delphi Automotive Systems LLC ("DAS LLC"). Akzo asserts that its proofs of claim establishes prima facie evidence of the validity of its claim. Akzo argues that the Debtors have failed to provide evidence to rebut its claim. Akzo contends that the amounts asserted in its claim remain unpaid. | Claim subject to modification | Adjourn |
| 4. | Quality Synthetic Rubber, Inc. (Docket No. 8917) | 15230, 15231 | Quality Synthetic Rubber, Inc. ("QSR") asserts that it filed proof of claim no. 15230 in the amount of $826,312.04 and proof of claim no. 15231 in the amount of $614,058.16. According to QSR, it negotiated an agreement with the Debtors that its reclamation claim has priority status in the amount of $187,197.76. QSR attaches its proofs of claim to its response and asserts that each of its claims should be reclassified to show which amount is subject to priority and which amount is a general unsecured claim. QSR disagrees, however, with the reduction of the total amount of the claims. | Claims subject to modification and reclamation agreement | Adjourn |
| 5. | United States Steel Corporation (Docket No. 8921) | 8657 | United States Steel Corporation ("US Steel") asserts that it timely filed proof of claim no. 8657 in the amount of $399,548 for goods sold and delivered to Delphi Corporation. US Steel agrees that the Debtor entity against | Claim subject to modification | Adjourn |

2

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | which the claim is asserted should be changed to DAS LLC. US Steel disputes the Debtors' objection that the amount asserted in its proof of claim is overstated and should be reduced. US Steel argues that the invoices attached to its proof of claim have not been paid, and that its proof of claim constitutes prima facie evidence of the validity of its claim. US Steel argues that the Debtors bear the burden to produce sufficient evidence to rebut the presumption of such validity. | | |
| 6. | Ametek, Inc. (Docket No. 8923) | 11900 | Amtek, Inc. ("Amtek") asserts that it timely filed proof of claim no. 11900 in the amount of $32,498.64 for goods sold and delivered to Delphi Corporation. Amtek further asserts that the unpaid invoices, shipping documentation, bills of lading, and other documentation attached to its proof of claim establish the prima facie evidence of the validity of the amount asserted. Amtek argues that the Debtors have not provided any evidence to support the objection to its claim and therefore requests that this Court overrule the objection to its claim. | Claim subject to modification | Adjourn |
| 7. | Sierra International, Inc. (Docket No. 8924) | 1726 | Sierra International, Inc. ("Sierra International") asserts that it timely filed proof of claim no. 1726 in the amount of $5,849.70 for goods sold and delivered to Delphi Corporation. Sierra International further explains that it also timely served notice of its reclamation demand in the amount of $629.00, which amount is included in the proof of claim. Sierra International asserts that the invoices attached to its proof of claim support the prima facie validity of its claim. Sierra International argues that the Debtors have not provided any evidence to support the | Claim subject to modification | Adjourn |

3

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | objection to its claim and therefore requests that this Court overrule the objection to its claim. | | |
| 8. | Siemens Energy & Automation, Inc. (Docket Nos. 8925, 8978) | a. 8674<br>b. 8675 | Siemens Energy & Automation, Inc. ("Siemens") asserts that it timely filed proof of claim no. 8674 in the amount of $416,511.60 and proof of claim no. 8675 in the amount of $12,639.39. Siemens asserts that its proofs of claim and the supporting documentation attached to the claims constitute prima facie validity of the claims. Siemens argues that the Debtors' objection does not provide affirmative evidence to rebut the prima facie validity of its claims. | a. Claim subject to modification<br>b. Insufficiently documented claim | Adjourn |
| 9. | Solectron Corporation (Docket No. 8927) | 10914 | Solectron Corporation, on behalf of itself and its various subsidiaries and affiliates, including Solectron Manufactura de Mexico SA (collectively, "Solectron") asserts that it timely filed proof of claim no. 10914 in the amount of $10,382,335.46 for goods sold to Delphi Corporation pursuant to a long-term supply and manufacturing contract. Solectron asserts that $2,133,185.60 of the total amount asserted in the proof of claim is subject to priority treatment because of reclamation demands made prior to the commencement of the Debtors' Chapter 11 cases. Solectron explains that it transferred $7,850,161.53 of its claim to TPG Credit Opportunities Funds, L.P. and TPG Credit Opportunities Investors L.P. (collectively, "TPG") on November 20, 2006. Solectron disagrees with the Debtors' proposed aggregate reduction in the amount of $2,659,655.36. Solectron argues that Debtors provide no explanation for such reduction to overcome the prima facie validity of its claim. Solectron also requests that the undisputed | Claim subject to modification and reclamation agreement | Adjourn |

4

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | portions of its claim should first be allocated to the amount transferred to TPG up to $7,850,161.53. | | |
| 10. | Liquidity Solutions, Inc. d/b/a/ Revenue Management (Docket No. 8928) | a. 432 b. 2710 c. 1748 | Liquidity Solutions, Inc. d/b/a Revenue Management ("Liquidity Solutions") asserts that it was assigned proof of claim no. 432 in the amount of $155,995.20 from Elkhart Products Corporation, proof of claim no. 2710 in the amount of $149,746.96 from Metal Powder Products Company, and proof of claim no. 1748 in the amount of $72,097.93 from Michigan Rubber Products ("Michigan Rubber"). Liquidity Solutions disagrees with the Debtors' objection to modify its claims and attaches documentation to its response. Furthermore, Liquidity Solutions attaches invoices from Michigan Rubber in the amount of $59,715.02, which is $12,382.91 less than the asserted claim amount. Liquidity Solutions states that it will consent to the reduction and allowance of Michigan Rubber's claim to $59,715.02, because Michigan Rubber recognized the difference of $12, 382.91 as being paid. Liquidity Solutions asserts that the Debtors provide no evidence to support their objection and to overcome the validity of Liquidity Solutions' claims. Liquidity Solutions also argues that the Debtor's objection provides no claim-specific rationale for objecting to the claims. | a. Claim subject to modification b. Claim subject to modification and reclamation agreement c. Claim subject to modification | Adjourn |
| 11. | Bellsouth Telecommunications, Inc. (Docket No. 8929) | 1570 | Bellsouth Telecommunications, Inc. ("Bellsouth") asserts that it filed proof of claim no. 1570 in the amount of $1,621.57 for telecommunications services and related services provided to Delphi Corporation prior to the Petition Date. Bellsouth disagrees with the Debtors' objection to reduce its claim | Claim subject to modification | Adjourn |

5

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | amount to $1,429.20. Bellsouth asserts that it provided invoices to the Debtors in the ordinary course of business that support its claim. Bellsouth states that it is reviewing its records and gathering support for its claim. Furthermore, Bellsouth states that it is reviewing its records to determine whether it objects to the change of the Debtor entity against which its claim is asserted. | | |
| 12. | Demag Plastics Group, Corporation dba Van Dorn Demag Corporation (Docket No. 8931) | 10284 | Demag Plastics Group, Corporation d/b/a Van Dorn Demag Corporation ("Demag") asserts that it timely filed identical proofs of claim in the amount of $22,268.60 each, including proof of claim no. 10284, against DAS LLC, Delphi Corporation, and Packard Hughes Interconnect Co. for goods shipped and services provided. Demag states that it attached invoices to the proofs of claim to support the amount asserted. Demag disputes the Debtors' objection to reduce its claim to $9,596.80. Demag contends that it should not be paid more than once for goods and services, provided only that it should be paid the valid amount of its claim. Demag argues that the Debtors do not provide evidence to rebut the prima facie validity of its claim. | Claim subject to modification | Adjourn |
| 13. | Computer Patent Annuities Limited (Docket No. 8932) | 15379 | Computer Patent Annuities Limited ("CPA") asserts that it timely filed proof of claim no. 15379 in the amount of $617,204.24 for services provided to Delphi Corporation pursuant to a quarterly patent and design patent renewal services contract (the "Contract"). CPA disputes the Debtors' proposed modification of its claim to $602,481.60. CPA explains that the discrepancy between the amount asserted and the Debtors' proposed modification may be | Claim subject to modification | Adjourn |

6

| | Response | Proof of Claim Nos. | Summary of Response | Basis for Objection | Treatment[2] |
|---|---|---|---|---|---|
| | | | due to late fees that were not cured by the Debtor. CPA contends that its proof of claim, which includes a copy of the Contract and a spreadsheet listing outstanding invoices, constitutes prima facie evidence of the validity of the amount asserted in its proof of claim. | | |
| 14. | Cingular Wireless, n/k/a AT&T Mobility LLC (Docket No. 8933) | a. 5084, 5085<br>b. 5086 | Cingular Wireless, n/k/a AT&T Mobility LLC ("Cingular"), asserts that it filed proof of claim no. 5084 in the amount of $1,370.20, proof of claim no. 5085 in the amount of $1,011.99, and proof of claim no. 5086 in the amount of $7,831.58 against Delphi Corporation. Cingular asserts that it has provided the Debtors with invoices in support of proofs of claim nos. 5084 and 5085 and disagrees with the Debtors' objection to disallow and expunge these claims. Cingular does not, however, object to the modification of proof of claim no. 5086. | a. Insufficiently documented claims<br>b. Claim subject to modification | 5084 and 5085 adjourned only |
| 15. | DC Coaters, Inc. (Docket No. 8938) | 5723 | DC Coaters, Inc. ("DC Coaters") asserts that it timely filed proof of claim no. 5723 in the amount of $11,422.93 as a general unsecured and liquidated claim. DC Coaters disagrees with the Debtors' proposed reduction of its claim to $4,254.37 and argues that the invoices attached to its proof of claim support the amount asserted. DC Coaters states that it will not object to a reduction of its claim to $7,048.29 against DAS LLC. DC Coaters attaches creditor data regarding proof of claim no. 5723 listed at www.delphidocket.com, indicating that the amount owed is $7,168.56. DC Coaters argues that the Debtors have failed to provide evidence to support their objection. | Claim subject to modification | Adjourn |
| 16. | PBR Australia Party | 2548 | PBR Australia Party Ltd. ("PBR") asserts that | Claim subject to | Adjourn |

7

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | Ltd. (Docket No. 8939) | | it filed proof of claim no. 2548 in the amount of $562,192.18 against DAS LLC. PBR asserts that it filed a similar claim against Delphi Corporation out of an abundance of caution. PBR asserts that the Debtors have provided no evidence or specific bases to support the reduction of PBR's claim to $39,766.37 and overcome the *prima facie* evidence of the validity of PBR's claim. PBR attaches documentation to the responses and contends that the amount asserted remains due and owing. | modification | |
| 17. | Arnold Center, Inc. (Docket No. 8940) | 12197 | Arnold Center, Inc. ("Arnold Center") asserts that it filed proof of claim no. 12197 in the amount of $135,298.72. Arnold Center disagrees with the Debtors' objection to disallow the invoice in the amount of $59,905.57. Arnold argues that the full amount asserted in its proof of claim remains due and owing and that the invoices attached to its proof of claim support the amount asserted. | Claim subject to modification | Adjourn |
| 18. | NXP Semiconductors USA Inc. (Docket No. 8941) | 14347 | NXP Semiconductors USA Inc. ("NXP") asserts that it filed proof of claim no. 14347 in the amount of $5,486,881.18 for goods sold to Delphi Corporation. According to NXP, the Debtors and NXP entered into an Amended Statement of Reclamation on July 27, 2006, which reconciled NXP's reclamation claim to the amount of $194,274.52. NXP disagrees with the Debtors' proposed reduction of the unsecured portion of its claim by $315,155.26 to $4,977,451.40. NXP contends that its claim is currently undergoing a reconciliation process with a claim analyst. Therefore, NXP argues that the Debtors' objection should be overruled because the reconciliation of its | Claim subject to modification and reclamation agreement | Adjourn |

8

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | claim is incomplete and the reconciliation will account for the $315,155.26 difference. | | |
| 19. | Microsys Technologies, Inc. (Docket No. 8949) | 2053, 2054 | Microsys Technologies, Inc. ("Microsys") asserts that it timely filed proof of claim no. 2053 in the amount of $5,836.37 CAD ($4,860.00 USD) and proof of claim no. 2054 in the amount of $1,755.00 USD for goods and services provided to Delphi Corporation. Microsys states that proof of claim no. 2053 was modified to a sum of $9,044.19 USD pursuant to the Third Omnibus Claims Objection Order. Microsys states that its claims should not be disallowed or expunged because the invoices attached to the proofs of claim constitute evidence of the asserted amounts. Also, Microsys argues that the Debtors have failed to present evidence to overcome the presumptive validity of the claims. | Books and records claims | Adjourn |
| 20. | Parkview Metal Products, Inc. (Docket No. 8950) | 13929 | Parkview Metal Products, Inc. ("Parkview") asserts that it filed proof of claim no. 13929 in the amount of $187,374.96 for goods sold to Delphi Corporation. According to Parkview, the Debtors and Parkview agreed that Parkview's reclamation claim is entitled to priority status in the amount of $17,050.64, subject to certain reserved defenses. Parkview does not disagree with the Debtors' proposed modification to the extent that it identifies the reclamation claim as an administrative priority claim. Parkview objects to the Debtors' proposed modification, however, to the extent that it seeks to reduce the claim amount. Parkview attaches invoices for goods that were delivered and remain unpaid and invoices that were incorrectly or improperly underpaid by Delphi Corporation | Claim subject to modification and reclamation agreement | Adjourn |

9

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | and their corresponding proofs of delivery. Parkview asserts that the claim amounts remain unpaid and should be allowed in full. | | |
| 21. | Contrarian Funds, LLC (Docket No. 8953) | a) 6147, 12693 b) 8718, 9109, 10184 c) 12667 | Contrarian Funds, LLC ("Contrarian") asserts that the Debtors do not provide legal or factual basis to overcome the presumption of validity of their claims.  Contrarian also argues that there is no authority justifying the Debtors' request to reduce the claims and not allow the claims in the modified amounts.<br><br>a) and b)  Contrarian states that it consents to the modification of proofs of claim no. 6147, 12693, 8718, 9109, and 10184, if this Court enters an order allowing the Debtors' proposed modified amount in full.  If this Court does not allow these claims, Contrarian opposes any modification to these claims.<br><br>c) Contrarian disagrees with the Debtors' modification to the claim amount, classification, and asserted Debtor entity for proof of claim no. 12667.  Contrarian requests that this Court enter an order allowing the claim for the amount asserted in the proof of claim. | a)  Claims subject to modification and reclamation agreement b)  Claims subject to modification c)  Claim subject to modification | Adjourn |
| 22. | State of New Jersey, Division of Taxation (Docket No. 8956) | a) 1515 b) 16476 c) 16610 d) 16611 | State of New Jersey, Division of Taxation ("N.J. Division") asserts that the Debtors do not provide information or evidence to overcome the prima facie validity of its claims.<br><br>a) and b)  N.J. Division consents to the expungement of proof of claim no. 1515 in the amount of $944,045.04 because it was later amended and superseded by proofs of claim nos. 16476 and 16611.  N.J. Division | a)  Books and records tax claim b)  Untimely books and records tax claim c)  Untimely books and records tax claims d)  Untimely books and records tax claims | 16610, 16611 adjourned only |

10

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | also consents to the expungement of proof of claim no. 16476 in the amount of $949,212.04 because it was later amended and superseded by proof of claim no. 16611.<br><br>c)  N.J. Division asserts that proof of claim no. 16610 was filed in the amount of $171,000.00 as a third amended administrative claim for Gross Income Tax-Employer Withholding ("GIT-ER") and Sale and Use Tax ("S&U") liabilities for quarters in 2005 and 2006.  N.J. Division contends that this claim is an administrative claim and therefore not subject to the July 31, 2006 bar date.<br><br>d)  N.J. asserts that proof of claim no. 16611 was filed in the amount of $448,527.31 as a second amended priority claim for GIT-ER, S&U, Spill Tax, and Petroleum Fuel Tax liabilities for periods from 1997 through 2005.  N.J. Division asserts that proof of claim no. 16611 is not untimely because it amends and supersedes proof of claim no. 16476, which amended and superseded the original claim, proof of claim no. 1515, which was timely filed on January 11, 2006.  N.J. Division asserts that the amended claim(s) reflect payments made or the filing of returns. | | |
| 23. | Benecke-Kaliko AG (Docket No. 8959) | 9081 | Benecke-Kaliko AG ("Benecke") asserts that it filed proof of claim no. 9081 in the amount of $72,359.49 against DAS LLC.  Benecke attaches invoices in the amount of $10,179.26 and $62,180.23 to its proof of claim to support the amount asserted.  Benecke asserts that the Debtors fail to offer any evidence to modify its claim.  Therefore, Benecke requests that this Court enter an order allowing its claim in | Claim subject to modification | Adjourn |

11

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | the amount of $72,359.49. | | |
| 24. | Sherwin Williams Automotive Finishes Corp. (Docket No. 8961) | 2274 | Sherwin Williams Automotive Finishes Corp. ("Sherwin Williams Automotive") asserts that it filed proof of claim no. 2274 in the amount of $222,238.45 for goods sold and shipped to Delphi Corporation from June 2005 through October 2005. Sherwin Williams Automotive argues that the Debtors have provided no proof of payment and argues that the Debtors have failed to pay the amount asserted. | Claim subject to modification | Adjourn |
| 25. | Marquardt Switches Inc. (Docket No. 8965) | 12162 | Marquardt Switches Inc. ("Marquardt") asserts that it filed proof of claim no. 12162 against DAS LLC for goods sold in the amount of $89,372.32. Marquardt disagrees with the Debtors' proposed modification of its claim to $78,154.17. Marquardt asserts that it has not received payment for the invoices that support its claim. Furthermore, Marquardt clarifies that its claim does not include postpetition liabilities. Marquardt argues that the Debtors have not provided a basis nor does a basis exist to modify its claim. | Claim subject to modification | Adjourn |
| 26. | SPCP Group, L.L.C., as Agent for Silver Point Capital Fund, L.P. and Silver Point Capital Offshore Fund, Ltd., as assignee of Key Plastics LLC (Docket No. 8967) | 14134 | SPCP Group, L.L.C., as Agent for Silver Point Capital Fund, L.P. and Silver Point Capital Offshore Fund, Ltd., as assignee of Key Plastics LLC (collectively, "SPCP Group") asserts that Key Plastics LLC ("Key Plastics") filed proof of claim no. 14134 in the amount of $511,656.31. Key Plastics transferred its claim to SPCP Group and such notice of transfer is attached to SPCP Group's response. SPCP Group asserts that the Debtors' objection to reduce and/or reclassify the claim must be denied because the Debtors fail to provide a factual or legal justification supporting the modification. | Claim subject to modification and reclamation agreement | Adjourn |
| 27. | PIC Productivity | 2173 | PIC Productivity Improvement Center ("PIC") | Claim subject to | Adjourn |

12

| | Response | Proof of Claim Nos. | Summary of Response | Basis for Objection | Treatment[2] |
|---|---|---|---|---|---|
| | Improvement Center (Docket No. 8969) | | asserts that it filed proof of claim no. 2173 in the amount of $550,320.80 for services provided from October 2003 through October 7, 2005. PIC asserts that the Debtors have failed to pay the amount owed and that Debtors have failed to provide any proof of payment. PIC requests that this Court deny the Debtors' objection and allow its claim in the full asserted amount. | modification | |
| 28. | TPG Credit Opportunities Fund, L.P. and TPG Credit Opportunities Investors, L.P. (Docket No. 8973) | 10914 | TPG joins in the response of Solectron to the Nineteenth Omnibus Claims Objection (see summary of Solectron's response (Docket No. 8927) above). On November 20, 2006, Solectron transferred a total of $7,850,161.53 of proof of claim no. 10914 to TPG, with Solectron retaining the remaining balance. Solectron and TPG have agreed that the undisputed portions of proof of claim no. 10914 shall be allocated first to that portion of the claim transferred to TPG. Thus, the Debtors' records should reflect that the undisputed portion of proof of claim no. 10914, up to the aggregate amount of $7,850,161.53, belongs to TPG in the following allocations: $5,652,116.30 to TPG Credit Opportunities Fund, L.P. and $2,198,045.23 to TPG Credit Opportunities Investors, L.P. TPG defers to Solectron with respect to the legal and factual basis for disputing the relief sought in the Nineteenth Omnibus Claims Objection, but reserves all rights to assert further responses to the Nineteenth Omnibus Claims Objection or any other objections asserted against proof of claim no. 10914. | Claim subject to modification and reclamation agreement | Adjourn |
| 29. | Secretary of the | 15135 | The Secretary of the United States | Books and records | Adjourn |

13

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | United States Department of Labor on behalf of the Delphi Personal Savings Plan for Hourly Employees in the United States (Docket No. 8975) | | Department of Labor on behalf of the Delphi Personal Savings Plan for Hourly Employees in the United States ("Delphi Plan") (collectively, the "Secretary") asserts that it filed proof of claim no. 15135 because of Delphi Corporation's failure to comply with the fiduciary provisions of Title I of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), which resulted in Delphi Plan's participants incurring $3,233,417.50 in losses. The Secretary contends that such liability would not be apparent on the Debtors' books and records, and therefore the Debtors' objection should be denied. | claim | |
| 30. | Freudenberg Nonwovens LP (Docket No. 8976) | 5463 | Freudenberg Nonwovens LP ("Freudenberg") asserts that it filed proof of claim no. 5463 in the amount of $17,971.26. Freudenberg asserts that the Debtors fail to provide evidence to support the disallowance of its claim or to rebut the prima facie validity of its claim. | Books and records claim | Adjourn |
| 31. | Kiefel Technologies, Inc. (Docket No. 8979) | 10593 | Kiefel Technologies, Inc. ("Kiefel") asserts that it filed proof of claim no. 10593 in the amount of $44,876.00 for goods and services it provided to DAS LLC from August 2004 to June 2005. Kiefel disputes the Debtors' proposed reduction of its claim to $22,368.04. Kiefel contends that the Debtors fail to identify the specific basis for its objection and asserts that the documentation attached to its response reaffirms and supports the status of the claim as liquidated, non-contingent, accurate, and valid. | Claim subject to modification | Adjourn |
| 32. | CTP Carrera, Inc. d/b/a Carclo Technical Plastics | 7310 | CTP Carrera, Inc. d/b/a Carclo Technical Plastics ("Carclo") asserts that it filed proof of claim no. 7310 in the amount of $789,854.35 | Claim subjection to modification | Adjourn |

14

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | (Docket No. 8980) | | for goods sold and delivered to Delphi Corporation prepetition. Carelo contends that the Debtors' objection is a general assertion and that it fails to provide any specific evidence or documentation to support the objection. Carelo further asserts that its claim is based on prices that the Debtors agreed to pay. | | |
| 33. | Empresas Ca Le Tlaxcala SA de CV (Docket No. 8981) | 15511 | Empresas Ca Le Tlaxcala SA de CV ("Empresas") asserts that if filed proof of claim no. 15511 as a general unsecured claim in the amount of $184,306.40 for goods provided to Delphi Corporation during 2005. Empresas asserts that it has reviewed its invoices and has determined that the outstanding amount owed is $180,169.92, which is comprised of new invoices in the amount of $115,823.52 and the scheduled amount of $64,346.40. Therefore, Empresas does not object to the reduction of its claim to $180,169.92, but does oppose the Debtors' proposed reduction of its claim to $64,346.40. | Claim subject to modification | Adjourn |
| 34. | Sierra Liquidity Fund, LLC (Docket No. 8982) | 4211 | Sierra Liquidity Fund, LLC as assignee of Showers Group Inc. – Shepard Mfg Co., Inc. ("Sierra/Showers Group") requests that this Court allow its claim in the amount of $7,528.00, which is the full amount asserted in proof of claim no. 4211. Sierra/Showers Group asserts that at a minimum its claim should be allowed for the scheduled amount of $2,137.38. Sierra/Showers Group attaches documentation in support of the claim, including invoices, purchase orders, and proof of delivery. Sierra/Showers Group asserts that it sees no basis for disallowing or expunging its claim. | Books and records | Adjourn |
| 35. | Sierra Liquidity Fund, | 14669 | Sierra Liquidity Fund, LLC as assignee of | Claim subject to | Adjourn |

15

| | Response | Proof of Claim Nos. | Summary of Response | Basis for Objection | Treatment[2] |
|---|---|---|---|---|---|
| | LLC<br>(Docket No. 8984) | | Dynamic Corporation ("Sierra/Dynamic") requests that this Court allow its claim in the amount of $216,301.71, which is the full amount asserted in proof of claim no. 14669. Sierra/Dynamic attaches documentation in support of the claim, including invoices, purchase orders, and proof of delivery. Sierra/Dynamic asserts that it sees no basis for the proposed reduction in the amount of the claim. Sierra/Dynamic does not object to the proposed change in Debtor entity against which the claim is asserted. | modification | |
| 36. | Furukawa Electric North America ADP, Inc. and Furukawa Electric Co., Ltd.<br>(Docket No. 8986) | 10574 | Furukawa Electric North America ADP, Inc. and Furukawa Electric Co., Ltd. (collectively "Furukawa") asserts that it filed proof of claim no. 10574 as an unsecured non-priority claim in the amount of $4,756,206.56 and a secured claim in the amount of $312,926.79, for a total amount of $5,069,133.35. Furukawa states that the it has no ability to respond to the Debtors' proposed reduction of its unsecured claim to $4,063,031.97 and its secured claim to $266,332.33 because the Debtors fail to provide a basis for its objection. Furukawa contends that the Debtors have failed to rebut the presumption that the claim is valid. | Claim subject to modification and reclamation agreement | Adjourn |
| 37. | City of Vandalia, Ohio<br>(Docket No. 8987) | 7219 | City of Vandalia, Ohio ("Vandalia") asserts that it filed proof of claim no. 7219 in the amount of $46,961.95 for withheld taxes for the year 2004. Vandalia requests that its claim be amended so that it is asserted against DAS LLC (case no. 05-44632) and not Delphi Corporation (case no. 05-44481). Vandalia requests that this Court deny the Debtors' objection to its claim. | Books and records tax claim | Adjourn |
| 38. | Freudenberg-NOK, | 11602 | Freudenberg-NOK, Inc. ("Freudenberg- | Books and records | Adjourn |

16

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | Inc.<br>(Docket No. 8989) | | NOK") asserts that it filed proof of claim no. 11602 in the amount of $4,638.17. Freudenberg-NOK asserts that the Debtors fail to provide evidence to support the disallowance of its claim or to rebut the prima facie validity of its claim. | claim | |
| 39. | Claimants represented by George & Sipes, LLP<br>(Docket No. 8990) | 12032, 12033, 15756, 12034, 12035, 12036, 12037, 12038, 12039, 12040, 12041, 12042, 12043, 12044, 12045, 12046, 12047, 12048, 12049, 12050, 12051, 12052, 12053 | Certain tort claimants represented by George & Sipes, LLP (the "George & Sipes Claimants") assert that they timely filed proofs of claim on or before July 28, 2006. The George & Sipes Claimants filed their claims to request the valuation of their tort action to be set at $30,000 each. The George & Sipes Claimants contend that they have negotiated with Debtors' counsel to consensually modify the claims at a reduced value. | Consensually modified and reduced claims | Adjourn |
| 40. | Vector CANtech, Inc.<br>(Docket No. 8991) | 14065 | Vector CANtech, Inc. ("Vector") asserts that it filed proof of claim no. 14065 in the amount of $267,735.70, and attached unpaid invoices, purchase orders, and proofs of delivery to its proof of claim. Vector asserts that it also negotiated a reclamation claim in the amount of $28,846.40 and such amount is included in its proof of claim. Vector agrees that the claim should be reclassified to show the amount of the claim which is a reclamation claim entitled to priority and the amount which is a general unsecured claim. Vector disagrees, however, with the reduction of its total claim amount. Vector requests that this Court deny the Debtors' objection that pertains to the reduction of the total amount of its claim and the unsecured portion of its claim. | Claim subject to modification and reclamation agreement | Adjourn |
| 41. | Freudenberg-NOK General Partnership<br>(Docket No. 8993) | 11603 | Freudenberg-NOK General Partnership ("FNGP") asserts that it filed proof of claim no. 11603 in the amount of $80,742.02. | Books and records claim | Adjourn |

17

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | FNGP asserts that the Debtors fail to provide evidence to support the disallowance of its claim or to rebut the prima facie validity of its claim. | | |
| 42. | Select Industries Corporation f/k/a Select Tool & Die Corporation (Docket No. 8994) | 10014 | Select Industries Corporation f/k/a Select Tool & Die Corporation ("Select") asserts that it timely filed its proof of claim no. 10014 as a secured claim in the amount of $507,337.84 for goods sold to Delphi Corporation in the ordinary course of business. Select asserts that the Debtors have not made a payment on the claim amount. Select contends that the Debtors fail to establish the reason for the proposed reduction of its claim to a secured claim in the amount of $252,075.90 and a priority claim of $20,736.60. Select asserts that its proof of claim and supporting documentation constitute prima facie validity of the amount of the claim. | Claim subject to modification and reclamation agreement | Adjourn |
| 43. | Schaeffler KG (Docket No. 8996) | 5907 | Schaeffler KG ("Schaeffler") asserts that it filed proof of claim no. 5907 in the amount of $64,430.50 for debts incurred between November 6, 2004 and September 14, 2005. Schaeffler disagrees with the Debtors' proposed reduction of the claim amount of $9,452.04. Schaeffler further asserts that the true and correct amount of its claim is 19,800 EUR or $23,987.70, based on the exchange rate between Euro and U.S. Dollar on October 7, 2005. Schaeffler further requests that the Debtors provide evidence supporting their objection and that this Court approve its claim in the amount of $23,987.70. | Claim subject to modification | Adjourn |
| 44. | Milliken & Company (Docket No. 8997) | 11646 | Milliken & Company ("Milliken") asserts that it filed proof of claim no. 11646 in the amount of $1,190,981.30 against DAS LLC, including the reclamation claim amount of $202,412.10, | Claim subject to modification and reclamation agreement | Adjourn |

18

| RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|
| | | which was finalized in an agreement dated June 28, 2006.  Milliken states that the Debtors, in their objection, incorrectly list Milliken's reclamation amount as an addition to the asserted claim amount, for a total amount of $1,393,393.41.  Milliken disagrees with the Debtors' proposed reduction of its unsecured claim amount from $988,569.19 to $692,195.36.  Milliken explains that it provided the Debtors with a spreadsheet listing 71 invoices.  According to Milliken, these 71 invoices consist of 50 invoices that the Debtors claimed to have been overstated in the amount of $24,525.15 and 21 invoices in the aggregate amount of $62,065.23 that the Debtors claimed are not on the Debtors' books and records.  Milliken states that the Debtors have asked Milliken to provide proofs of delivery for these 21 invoices.  Milliken claims that even if the Debtors' books and records are correct, the Debtors have not explained the full proposed reduction of $296,373.83.  Milliken attaches an affidavit asserting that the invoices overstated by $24,525.15 are for price reductions claimed by the Debtors and to which Milliken never agreed.  Milliken also attaches proofs of delivery for seven invoices, accounting for $32,757.32 of the $62,065.23.  Milliken states that it cannot locate the proofs of delivery for the remaining balance of $29,307.91, but that those goods were received by the Debtors.  Milliken further asserts that the prepetition wire transfer of $916,717.20 which was applied to prepetition receivables will now be re-applied as a credit against postpetition purchases.  Milliken requests that its claim be allowed in an increased amount of | | |

19

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | $2,073,343.85, which includes the original claim amount of $1,190,981.30 minus a $34,354.65 arithmetic error plus a $916,717.20 re-application of a wire transfer. | | |
| 45. | Secretary of United States Department of Labor on behalf of the ASEC Manufacturing Sponsored Employee Benefit Plans (Docket No. 9000) | 9826 | The Secretary of United States Department of Labor on behalf of the ASEC Manufacturing Sponsored Employee Benefit Plans (the "ASEC Plans") (collectively, the "Secretary") asserts that it filed proof of claim no. 9826 as an unliquidated claim for liability of violations under the ERISA. The Secretary states that she is investigating whether the Debtors imprudently continued to invest Plan assets or allowed others to invest Plan assets in Delphi Corporation common stock. The Secretary contends that such potential liability is not apparent from the Debtors' books and records, but that the Debtors' objection to its claim should be denied. | Books and records claim | Adjourn |
| 46. | Sherwin Williams Company (Docket No. 9007) | 1472 | Sherwin Williams Company ("Sherwin Williams Co.") asserts that it filed proof of claim no. 1472 in the amount of $161,816.60 for goods sold and shipped to Delphi Corporation prepetition. Sherwin Williams Co. argues that the Debtors have provided no proof of payment and argues that the Debtors have failed to pay the amount asserted. | Claim subject to modification and reclamation agreement | Adjourn |
| 47. | Circle Broach Company (Docket No. 9011) | 9541 | Circle Broach Company ("Circle Broach") asserts that it filed proof of claim no. 9541 in the amount of $30,818.00 for completed and accepted involute spline and round pull broach work. Circle Broach states that, based on the assumption that the Debtors' objection to change the Debtor entity against which the claim is asserted to DAS LLC is correct, its claim should be allowed in the amount of $30,818.00. | Claim subject to modification | Adjourn |

20

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| 48. | Receivable Management Services as agent for CDW Computer Centers, Inc. (Docket No. 9012) | 88, 420 | Receivable Management Services as agent for CDW Computer Centers, Inc. ("CDW") agrees that proof of claim no. 88 should be reduced to $3,335.24. However, CDW disagrees with the Debtors' proposed reduction of proof of claim no. 420 from $14,748.55 to $8,964.94. | Claims subject to modification | Adjourn |
| 49. | Sierra Liquidity Fund, LLC (Docket No. 9041) | 11615 | Sierra Liquidity Fund, LLC as assignee of SMK Electronics Corp USA ("Sierra/SMK") requests that this Court allow its claim in the amount of $12,665.01, which is the full amount asserted in proof of claim no. 11615. Sierra/Dynamic attaches documentation in support of the claim, including invoices, purchase orders, and proof of delivery. Sierra/Dynamic asserts that it sees no basis for the proposed reduction in the amount of the claim. Sierra/Dynamic does not object to the proposed change in Debtor entity against which the claim is asserted. | Claim subject to modification | Adjourn |
| 50. | ATS Ohio Inc. (Docket no. 9075) | 15671 | According to ATS Ohio Inc. ("ATS Ohio"), the Debtors seek to reduce the allowed amount of ATS Ohio's claim to $360,854.00. Apparently, states ATS Ohio, the Debtors' objection was based on the Debtors' belief that a prepetition payment in the amount of $1,260,205.00 was made by the Debtors with respect to invoices comprised by ATS Ohio's claim. In fact, however, the payment had been applied, pursuant to agreement of the parties, against other invoices. ATS apprised the Debtors of the foregoing, and the Debtors have indicated their agreement with ATS' position. ATS anticipates that the parties will shortly submit a stipulation for approval by the Court whereby ATS Ohio's claim will be allowed in full as a general unsecured claim, | Claim subject to modification | Adjourn |

21

| | RESPONSE | PROOF OF CLAIM NOS. | SUMMARY OF RESPONSE | BASIS FOR OBJECTION | TREATMENT[2] |
|---|---|---|---|---|---|
| | | | as filed. | | |
| 51. | Crowley Tool Company (undocketed) | 16132 | Crowley Tool Company ("Crowley") asserts that it filed proof of claim no. 16132 in the amount of $13,590.50 for tools specifically made for Delphi. Crowley argues that its claim should not be disallowed nor expunged, and that the invoices attached to its proof of claim are owed either by Delphi Corporation or its agents and subsidiaries. | Claim subject to modification | Adjourn |

22

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                       :
     In re               :     Chapter 11
                       :
     DELPHI CORPORATION, et al.,   :     Case No. 05-44481 (RDD)
                       :
           Debtors.     :     (Jointly Administered)
                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007
DISALLOWING AND EXPUNGING CERTAIN (A) INSUFFICIENTLY DOCUMENTED
CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C)
UNTIMELY CLAIM, AND (D) CLAIMS SUBJECT TO MODIFICATION, TAX CLAIMS
SUBJECT TO MODIFICATION, MODIFIED CLAIMS ASSERTING RECLAMATION, AND
CONSENSUALLY MODIFIED AND REDUCED CLAIMS IDENTIFIED IN NINETEENTH
<u>OMNIBUS CLAIMS OBJECTION</u>

("NINETEENTH OMNIBUS CLAIMS OBJECTION ORDER")

Upon the Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B)

Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims

Subject To Modification, Tax Claims Subject to Modification, Modified Claims Asserting

Reclamation, And Consensually Modified And Reduced Claims, dated July 13, 2007 (the

"Nineteenth Omnibus Claims Objection"),[1] of Delphi Corporation and certain of its subsidiaries

and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"); and upon the record of the hearing held on the Nineteenth Omnibus Claims

Objection; and after due deliberation thereon; and good and sufficient cause appearing therefor,

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the
Nineteenth Omnibus Claims Objection.

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      Each holder of a claim, as such term is defined in 11 U.S.C. § 101(5) (as

to each, a "Claim") listed on Exhibits A, B-1, B-2, B-3, C, D-1, D-2, D-3, E-1, E-2, E-3, E-4, E-5,

E-6, E-7, and E-8 hereto was properly and timely served with a copy of the Nineteenth Omnibus

Claims Objection, a personalized Notice Of Objection To Claim, a copy of the Order Pursuant to

11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices

And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection

Procedures Order"), the proposed order granting the Nineteenth Omnibus Claims Objection, and

notice of the deadline for responding to the Nineteenth Omnibus Claims Objection.  No other or

further notice of the Nineteenth Omnibus Claims Objection is necessary.

B.      This Court has jurisdiction over the Nineteenth Omnibus Claims

Objection pursuant to 28 U.S.C. §§ 157 and 1334.  The Nineteenth Omnibus Claims Objection is

a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and the Nineteenth

Omnibus Claims Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The Claims listed on Exhibit A hereto contain insufficient documentation

to support the Claims asserted (the "Insufficiently Documented Claims").

D.      The Claims listed on Exhibit B-1 hereto contain liabilities or dollar

amounts that are not reflected on the Debtors' books and records (the "Books And Records

Claims").

---

[2]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

E.    The Claims listed on <u>Exhibit B-2</u> hereto, which were filed by taxing authorities, contain liabilities and dollar amounts that are not reflected on the Debtors' books and records (the "Books And Records Tax Claims").

F.    The Claims listed on <u>Exhibit B-3</u> hereto, which were filed by taxing authorities, contain liabilities or dollar amounts that are not reflected on the Debtors' books and records and were also untimely filed pursuant to the Bar Date Order (the "Untimely Books And Records Tax Claims").

G.    The Claim listed on <u>Exhibit C</u> hereto was untimely filed pursuant to the Bar Date Order (the "Untimely Claim").

H.    The Claims listed on <u>Exhibit D-1</u> hereto (a) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured or priority status (the "Claims Subject To Modification").

I.    The Tax Claims listed on <u>Exhibit D-2</u> hereto (a) are overstated and/or (b) were filed and docketed against the wrong Debtors (the "Tax Claims Subject To Modification").

J.    The Claims listed on <u>Exhibit D-3</u> hereto (a) (i) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b) assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and

3

notwithstanding the Claimant's agreement or consent to the amount pursuant to the relevant

Reclamation Agreement, a judicial determination that certain reserved defenses with respect to

the reclamation demand are valid (the "Modified Claims Asserting Reclamation").

K.    The relief requested in the Nineteenth Omnibus Claims Objection and

granted herein is in the best interests of the Debtors, their estates, their creditors, and other

parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

1.    Each Insufficiently Documented Claim listed on <u>Exhibit A</u> hereto is

hereby disallowed and expunged in its entirety.

2.    Each Books And Records Claim listed on <u>Exhibit B-1</u> hereto is hereby

disallowed and expunged in its entirety.

3.    Each Books And Records Tax Claim listed on <u>Exhibit B-2</u> hereto is

hereby disallowed and expunged in its entirety.

4.    Each Untimely Books And Records Tax Claim listed on <u>Exhibit B-3</u>

hereto is hereby disallowed and expunged in its entirety.

5.    The Untimely Claim listed on <u>Exhibit C</u> hereto is hereby disallowed and

expunged in its entirety.

6.    Each "Claim As Docketed" amount, classification, and Debtor listed on

<u>Exhibit D-1</u> hereto is hereby revised to reflect the amount, classification, and Debtor listed as the

"Claim As Modified."  No Claimant listed on <u>Exhibit D-1</u> shall be entitled to (a) recover for any

Claim Subject to Modification in an amount exceeding the dollar value listed as the "Modified

Total" of the Claim, and/or (b) assert a classification that is inconsistent with that listed in the

4

"Claim As Modified" column, and/or (c) assert a Claim against a Debtor whose case number is

not listed in the "Claim As Modified" column on Exhibit D-1, subject to the Debtors' right to

further object to each such Claim Subject to Modification.  The Claims Subject to Modification

shall remain on the claims register, and shall remain subject to future objection by the Debtors

and other parties-in-interest.

       7.     Each "Claim As Docketed" amount and Debtor listed on Exhibit D-2

hereto is hereby revised to reflect the amount and Debtor listed as the "Claim As Modified."  No

Claimant listed on Exhibit D-2 shall be entitled to (a) recover for any Tax Claim Subject to

Modification in an amount exceeding the dollar value listed as the "Modified Total" of the Claim

and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified"

column on Exhibit D-2, and/or (c) assert a Claim against a Debtor whose case number is not

listed in the "Claim As Modified" column on Exhibit D-2, subject to the Debtors' right to further

object to each such Tax Claim Subject to Modification.  The Tax Claims Subject to Modification

shall remain on the claims register, and shall remain subject to future objection by the Debtors

and other parties-in-interest.

       8.     Each "Claim As Docketed" amount, classification, and Debtor listed on

Exhibit D-3 hereto is hereby revised to the amount and classification listed as the "Claim As

Modified."  No Claimant listed on Exhibit D-3 shall be entitled to (a) recover for any Modified

Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified

Total" of the Claim, unless the Debtors obtain an order of this Court providing that any Reserved

Defense is valid and denying priority status to such Claimant's reclamation demand, and/or (b)

assert a classification that is inconsistent with that listed in the "Claim As Modified" column on

Exhibit D-3, and/or (c) assert a Claim against a Debtor whose case number is not listed in the

"Claim As Modified" column on Exhibit D-3, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  The Modified Claims Asserting Reclamation shall remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest.

9.    With respect to each Claim for which a Response to the Nineteenth Omnibus Claims Objection has been filed and served, all of which Claims are listed on Exhibits E-1, E-2, E-3, E-4, E-5, E-6, E-7, and E-8 hereto, the hearing regarding the objection to such Claims shall be adjourned to a future hearing date to be noticed by the Debtors consistent with and subject to the Claims Objection Procedures Order; provided, however, that such adjournment shall be without prejudice to the Debtors' right to assert that any such Responses were untimely or otherwise deficient under the Claims Objection Procedures Order.

10.    Entry of this order is without prejudice to the Debtors' right to object, on any grounds whatsoever, to any other claims in these chapter 11 cases or to further object to Claims that are the subject of the Nineteenth Omnibus Claims Objection.

11.    Nothing contained herein shall constitute, nor shall it be deemed to constitute, the allowance of any Claim asserted against any of the Debtors.

12.    This Court shall retain jurisdiction over the Debtors and the holders of Claims subject to the Nineteenth Omnibus Claims Objection to hear and determine all matters arising from the implementation of this order.

13.    Each of the objections by the Debtors to each Claim addressed in the Nineteenth Omnibus Claims Objection and attached hereto as Exhibits A, B-1, B-2, B-3, C, D-1, D-2, D-3, E-1, E-2, E-3, E-4, E-5, E-6, E-7, and E-8 constitutes a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.  This order shall be deemed a separate order with

6

respect to each Claim that is the subject of the Nineteenth Omnibus Claims Objection.  Any stay

of this order shall apply only to the contested matter which involves such Claim and shall not act

to stay the applicability or finality of this order with respect to the other contested matters

covered hereby.

14.    Kurtzman Carson Consultants LLC is hereby directed to serve this order,

including exhibits, in accordance with the Claims Objection Procedures Order.

15.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Nineteenth Omnibus Claims

Objection.

Dated: New York, New York
       August ___, 2007


_____
        UNITED STATES BANKRUPTCY JUDGE

**In re Delphi Corporation, et al.**                                    **Nineteenth Omnibus Claims Objection**

**Case No. 05-44481 (RDD)**

## EXHIBIT A - INSUFFICIENTLY DOCUMENTED CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| LE JOINT FRANCAIS<br>17 RUE ANDRE BUILLE BP700<br>CHATTELLERAULT CEDEX, 86107<br>FRANCE | 1511 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$23,920.00<br>$23,920.00 | 01/10/2006 | DELPHI CORPORATION (05-44481) |
| RIVIERA FINANCE OF TEXAS INC<br>ASSIGNEE HOOKED UP TRUCKING<br>PO BOX 100272<br>PASADENA, CA 91189-0272 | 4849 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$1,952.50<br>$1,952.50 | 05/05/2006 | DELPHI DIESEL SYSTEMS CORP (05-44612) |
| Total: | 2 | | $25,872.50 | | |

**In re Delphi Corporation, et al.**                                   **Nineteenth Omnibus Claims Objection**
**Case No. 05-44481 (RDD)**

## EXHIBIT B-1 - BOOKS AND RECORDS CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| 3CI COMPLETE COMPLIANCE CORP AMERICAN 3CI 713 OAKDALE GRAND PRAIRIE, TX 75050 | 3545 | Secured: Priority: Administrative: Unsecured: Total: | $37.00 $37.00 | 05/01/2006 | DELPHI CORPORATION (05-44481) |
| ALL THE WAY INC PO BOX 2675 LAREDO, TX 78044-2675 | 307 | Secured: Priority: Administrative: Unsecured: Total: | $475.00 $475.00 | 11/03/2005 | DELPHI MECHATRONIC SYSTEMS, INC (05-44567) |
| BOWIE AUDIO VISUAL ENTERPRISES 290 HIGHPOINT DR RIDGELAND, MS 39157 | 5323 | Secured: Priority: Administrative: Unsecured: Total: | $169.64 $169.64 | 05/08/2006 | DELPHI CORPORATION (05-44481) |
| E2V TECHNOLOGIES INC 4 WESTCHESTER PLZ ELMSFORD, NY 10523 | 3334 | Secured: Priority: Administrative: Unsecured: Total: | $39,191.91 $39,191.91 | 04/28/2006 | DELPHI CORPORATION (05-44481) |
| EMPAQUE Y CELDAS DEL GOLFO EFT S A DE C V 805 W PRICE RD STE A 1 HLD PER RICHARD SANDOVAL BROWNSVILLE, TX 78521 | 15596 | Secured: Priority: Administrative: Unsecured: Total: | $160,741.71 $160,741.71 | 07/31/2006 | DELPHI CORPORATION (05-44481) |
| EMPAQUE Y CELDAS DEL GOLFO EFT S A DE C V 805 W PRICE RD STE A 1 BROWNSVILLE, TX 78521 | 15597 | Secured: Priority: Administrative: Unsecured: Total: | $59,555.76 $59,555.76 | 07/31/2006 | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) |
| HARDING UNIVERSITY BUSINESS OFFICE BOX 10770 SEARCY, AR 72149 | 400 | Secured: Priority: Administrative: Unsecured: Total: | $2,730.00 $2,730.00 | 11/07/2005 | DELPHI CORPORATION (05-44481) |
| JAMESTOWN CONTAINER LOCKPORT I 85 GRAND ST LOCKPORT, NY 14094-2299 | 14919 | Secured: Priority: Administrative: Unsecured: Total: | $9,236.72 $9,236.72 | 07/31/2006 | DELPHI CORPORATION (05-44481) |

In re Delphi Corporation, et al.   Nineteenth Omnibus Claims Objection
Case No. 05-44481 (RDD)

## EXHIBIT B-1 - BOOKS AND RECORDS CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| JAMESTOWN CONTAINER LOCKPORT I 85 GRAND ST LOCKPORT, NY 14094-2299 | 14916 | Secured: Priority: Administrative: Unsecured: Total: | $39,660.52 $39,660.52 | 07/31/2006 | DELPHI CORPORATION (05-44481) |
| JON C COX RUSSELL & SHIVER 3102 OAK LAWN STE 600 DALLAS, TX 75219 | 374 | Secured: Priority: Administrative: Unsecured: Total: | $1,000,000.00 $1,000,000.00 | 11/07/2005 | DELPHI CORPORATION (05-44481) |
| KUNTZMAN R INC 1805 W STATE ST ALLIANCE, OH 44601 | 9602 | Secured: Priority: Administrative: Unsecured: Total: | $13,934.50 $13,934.50 | 07/17/2006 | DELPHI CORPORATION (05-44481) |
| LEE UNIVERSITY BUSINESS OFFICE PO BOX 3450 CLEVELAND, OH 37320-3450 | 4879 | Secured: Priority: Administrative: Unsecured: Total: | $1,500.00 $1,500.00 | 05/05/2006 | DELPHI CORPORATION (05-44481) |
| MALONE SUSAN 132 NEWFIELD DR ROCHESTER, NY 14616 | 3036 | Secured: Priority: Administrative: Unsecured: Total: | $450.00 $450.00 | 04/28/2006 | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) |
| MARTIN L SHANNON SHAW PO BOX 428 CLARKSDALE, MS 38614 | 1926 | Secured: Priority: Administrative: Unsecured: Total: | $40,000,000.00 $40,000,000.00 | 01/06/2006 | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) |
| MATHESON TRI GAS INC 6225 N STATE HWY 161 STE 200 IRVING, TX 75038 | 2060 | Secured: Priority: Administrative: Unsecured: Total: | $580.57 $580.57 | 02/21/2006 | DELPHI MEDICAL SYSTEMS TEXAS CORPORATION (05-44511) |
| METRO DETROIT CPA REVIEW BLS ENTERPRISES 34366 LANCASHIRE LIVONIA, MI 48152 | 3374 | Secured: Priority: Administrative: Unsecured: Total: | $1,100.00 $1,100.00 | 04/28/2006 | DELPHI CORPORATION (05-44481) |

In re Delphi Corporation, et al.                                              Nineteenth Omnibus Claims Objection
Case No. 05-44481 (RDD)

## EXHIBIT B-1 - BOOKS AND RECORDS CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| SERVICE TECH TOOL & EQUIPMENT 90 WEST EASY ST UNIT 1 SIMI VALLEY, CA 93065 | 2083 | Secured: Priority: Administrative: Unsecured: Total: | $13,833.43 $13,833.43 | 02/21/2006 | DELPHI INTEGRATED SERVICE SOLUTIONS, INC (05-44623) |
| STAR SU STAR CUTTER COMPANY AKA STAR CUT SALES GOLD STAR COATING AND STAR SU LLC 23461 INDUSTRIAL PARK DR FARMINGTON HILLS, MI 48335 | 207 | Secured: Priority: Administrative: Unsecured: Total: | $5,510.00 $5,510.00 | 10/31/2005 | DELPHI CORPORATION (05-44481) |
| STAR SU STAR CUTTER COMPANY AKA STAR CUT SALES GOLD STAR COATING AND STAR SU LLC 23461 INDUSTRIAL PARK DR FARMINGTON HILLS, MI 48335 | 212 | Secured: Priority: Administrative: Unsecured: Total: | $7,954.42 $7,954.42 | 10/31/2005 | DELPHI CORPORATION (05-44481) |
| STAR SU STAR CUTTER COMPANY AKA STAR CUT SALES GOLD STAR COATING AND STAR SU LLC 23461 INDUSTRIAL PARK DR FARMINGTON HILLS, MI 48335 | 216 | Secured: Priority: Administrative: Unsecured: Total: | $3.89 $3.89 | 10/31/2005 | DELPHI CORPORATION (05-44481) |
| STAR SU STAR CUTTER COMPANY AKA STAR CUT SALES GOLD STAR COATING AND STAR SU LLC 23461 INDUSTRIAL PARK DR FARMINGTON HILLS, MI 48335 | 210 | Secured: Priority: Administrative: Unsecured: Total: | $43,960.51 $43,960.51 | 10/31/2005 | DELPHI CORPORATION (05-44481) |
| THE ENERGY MANAGEMENT GROUP 1621 BROWNING IRVINE, CA 92606 | 4520 | Secured: Priority: Administrative: Unsecured: Total: | $878.97 $878.97 | 05/02/2006 | DELPHI CORPORATION (05-44481) |
| THE WORTHINGTON STEEL COMPANY 200 OLD WILSON BRIDGE RD COLUMBUS, OH 43085 | 9041 | Secured: Priority: Administrative: Unsecured: Total: | $400,782.24 $400,782.24 | 07/05/2006 | DELPHI CORPORATION (05-44481) |
| UW PARKSIDE PO BOX 2000 KENOSHA, WI 53141 | 787 | Secured: Priority: Administrative: Unsecured: Total: | $912.75 $912.75 | 11/22/2005 | DELPHI CORPORATION (05-44481) |

**In re Delphi Corporation, et al.**  **Nineteenth Omnibus Claims Objection**
**Case No. 05-44481 (RDD)**

### EXHIBIT B-1 - BOOKS AND RECORDS CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| ZUMSTEIN INC EF<br>SCAC ZUMQ<br>PO BOX 700<br>524 N WATER ST<br>LEWISBURG, OH 45338-0700 | 6129 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$154.34<br>$154.34 | 05/17/2006 | DELPHI CORPORATION (05-44481) |

|  | Total: | 25 | $41,803,353.88 |
|---|---|---|---|

**In re Delphi Corporation, et al.**                    Nineteenth Omnibus Claims Objection
**Case No. 05-44481 (RDD)**

**EXHIBIT B-2 - BOOKS AND RECORDS TAX CLAIMS**

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| STATE OF NEW JERSEY COMPLIANCE ACTIVITY PO BOX 245 TRENTON, NJ 08695 | 1515 | Secured: Priority: Administrative: Unsecured: Total: | $944,045.04 $944,045.04 | 01/11/2006 | DELPHI CORPORATION (05-44481) |
| | **Total: 1** | | **$944,045.04** | | |

**In re Delphi Corporation, et al.**                    **Nineteenth Omnibus Claims Objection**
**Case No. 05-44481 (RDD)**

## EXHIBIT B-3 - UNTIMELY BOOKS AND RECORDS TAX CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| STATE OF NEW JERSEY COMPLIANCE ACTIVITY PO BOX 245 TRENTON, NJ 08695 | 16476 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | $949,212.04<br><br><br>$949,212.04 | 01/09/2007 | DELPHI CORPORATION (05-44481) |
| | **Total:  1** | | **$949,212.04** | | |

**In re Delphi Corporation, et al.**                    **Nineteenth Omnibus Claims Objection**
**Case No. 05-44481 (RDD)**

## EXHIBIT C - UNTIMELY CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| PRECISION SOUTHEAST INC<br>4900 HWY 501 WEST<br>MYRTLE BEACH, SC 29578-1405 | 16605 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$81,198.75<br>$81,198.75 | 05/29/2007 | DELPHI CORPORATION<br>(05-44481) |

|  | Total: | 1 | $81,198.75 | | |

Page 1 of 1

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

Claim: 14087
Date Filed: 07/31/2006
Docketed Total: $109,872.00
Filing Creditor Name and Address:
3D SYSTEMS
26081 AVE HALL
VALENCIA, CA 91355

Claim Holder Name and Address
3D SYSTEMS
26081 AVE HALL
VALENCIA, CA 91355

Docketed Total: $109,872.00

| Secured | Priority | Unsecured |
|---|---|---|
| | | $109,872.00 |
| | | **$109,872.00** |

Case Number*
05-44554

Modified Total: $31,327.83

| Secured | Priority | Unsecured |
|---|---|---|
| | | $31,327.83 |
| | | **$31,327.83** |

Case Number*
05-44640

---

Claim: 3964
Date Filed: 05/01/2006
Docketed Total: $12,566.40
Filing Creditor Name and Address:
AGAPE PLASTICS INC EFT
O 11474 FIRST AVE NW
GRAND RAPIDS, MI 49544

Claim Holder Name and Address
AGAPE PLASTICS INC EFT
O 11474 FIRST AVE NW
GRAND RAPIDS, MI 49544

Docketed Total: $12,566.40

| Secured | Priority | Unsecured |
|---|---|---|
| | | $12,566.40 |
| | | **$12,566.40** |

Case Number*
05-44481

Modified Total: $12,566.40

| Secured | Priority | Unsecured |
|---|---|---|
| | | $12,566.40 |
| | | **$12,566.40** |

Case Number*
05-44640

---

Claim: 8395
Date Filed: 06/22/2006
Docketed Total: $639,529.99
Filing Creditor Name and Address:
AGILENT TECHNOLOGIES INC
3750 BROOKSIDE PARKWAY
ALPHARETTA, GA 30022

Claim Holder Name and Address
AGILENT TECHNOLOGIES INC
3750 BROOKSIDE PARKWAY
ALPHARETTA, GA 30022

Docketed Total: $639,529.99

| Secured | Priority | Unsecured |
|---|---|---|
| | | $639,529.99 |
| | | **$639,529.99** |

Case Number*
05-44640

Modified Total: $411,538.67

| Secured | Priority | Unsecured |
|---|---|---|
| | | $411,538.67 |
| | | **$411,538.67** |

Case Number*
05-44640

---

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

### CLAIM TO BE MODIFIED / CLAIM AS DOCKETED / CLAIM AS MODIFIED

**Claim: 9376**
Date Filed: 07/11/2006
Docketed Total: $20,135.31
Filing Creditor Name and Address:
AIM FABRICATION
9100 HENRI BOURASSA E
MONTREAL QUEBEC, H1E 2S4
CANADA

CLAIM AS DOCKETED — Claim Holder Name and Address:
AIM FABRICATION
9100 HENRI BOURASSA E
MONTREAL QUEBEC, H1E 2S4
CANADA

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $20,135.31 |
| Docketed Total: | | | $20,135.31 |
| | | | $20,135.31 |

CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $10,894.50 |
| Modified Total: | | | $10,894.50 |
| | | | $10,894.50 |

---

**Claim: 1651**
Date Filed: 01/24/2006
Docketed Total: $1,381.12
Filing Creditor Name and Address:
AIR LIQUIDE AMERICA LP
ATTN GWENDOLYN YOUNG
SMITHHEART
2700 POST OAK BLVD
HOUSTON, TX 77056

CLAIM AS DOCKETED — Claim Holder Name and Address:
AIR LIQUIDE AMERICA LP
ATTN GWENDOLYN YOUNG
SMITHHEART
2700 POST OAK BLVD
HOUSTON, TX 77056

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $1,381.12 |
| Docketed Total: | | | $1,381.12 |
| | | | $1,381.12 |

CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44482 | | | $1,324.42 |
| Modified Total: | | | $1,324.42 |
| | | | $1,324.42 |

---

**Claim: 2609**
Date Filed: 04/11/2006
Docketed Total: $27,316.10
Filing Creditor Name and Address:
AIR LIQUIDE INDUSTRIAL US LP
ATTN GWENDOLYN YOUNG
SMITHHEART
2700 POST OAK BLVD
HOUSTON, TX 77056

CLAIM AS DOCKETED — Claim Holder Name and Address:
AIR LIQUIDE INDUSTRIAL US LP
ATTN GWENDOLYN YOUNG
SMITHHEART
2700 POST OAK BLVD
HOUSTON, TX 77056

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $27,316.10 |
| Docketed Total: | | | $27,316.10 |
| | | | $27,316.10 |

CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $1,160.00 |
| 05-44482 | | | $21,211.22 |
| Modified Total: | | | $22,371.22 |
| | | | $22,371.22 |

*See Exhibit F for a listing of debtor entities by case number.

Page 2 of 36

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 6972<br>Date Filed: 05/30/2006<br>Docketed Total: $40,658.32<br>Filing Creditor Name and Address:<br>ALL AMERICAN<br>SEMICONDUCTOR<br>10805 HOLDER ST STE 100<br>CYPRESS, CA 90630 | Claim Holder Name and Address<br>ALL AMERICAN SEMICONDUCTOR<br>10805 HOLDER ST STE 100<br>CYPRESS, CA 90630<br><br>Case Number* 05-44481<br>Docketed Total: $40,658.32<br>Secured / Priority / Unsecured $40,658.32<br>$40,658.32 | Case Number* 05-44507<br>Modified Total: $38,282.67<br>Secured / Priority / Unsecured $38,282.67<br>$38,282.67 |
| Claim: 11573<br>Date Filed: 07/27/2006<br>Docketed Total: $165,938.35<br>Filing Creditor Name and Address:<br>AMPHENOL PRECISION CABLE<br>MFG<br>PO BOX 1448<br>ROCKWALL, TX 75087 | Claim Holder Name and Address<br>AMPHENOL PRECISION CABLE MFG<br>PO BOX 1448<br>ROCKWALL, TX 75087<br><br>Case Number* 05-44640<br>Docketed Total: $165,938.35<br>Secured / Priority / Unsecured $165,938.35<br>$165,938.35 | Case Number* 05-44640<br>Modified Total: $25,570.41<br>Secured / Priority / Unsecured $25,570.41<br>$25,570.41 |
| Claim: 11577<br>Date Filed: 07/27/2006<br>Docketed Total: $89,607.01<br>Filing Creditor Name and Address:<br>AMROC INVESTMENTS LLC AS<br>ASSIGNEE OF DEKALB METAL<br>FINISHING<br>535 MADISON AVE 15TH FL<br>NEW YORK, NY 10022 | Claim Holder Name and Address<br>AMROC INVESTMENTS LLC<br>535 MADISON AVE 15TH FL<br>NEW YORK, NY 10022<br><br>Case Number* 05-44640<br>Docketed Total: $89,607.01<br>Secured / Priority / Unsecured $89,607.01<br>$89,607.01 | Case Number* 05-44640<br>Modified Total: $82,350.06<br>Secured / Priority / Unsecured $82,350.06<br>$82,350.06 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured | |
| **Claim:** 11576<br>Date Filed: 07/27/2006<br>Docketed Total: $155,624.26<br>Filing Creditor Name and Address:<br>AMROC INVESTMENTS LLC AS ASSIGNEE OF DYNAMIC TECHNOLOGY INC<br>ATTN DAVID S LEINWAND<br>535 MADISON AVE 15TH FL<br>NEW YORK, NY 10022 | AMROC INVESTMENTS LLC<br>535 MADISON AVE 15TH FL<br>NEW YORK, NY 10022 | | Docketed Total: | $155,624.26 | | | Modified Total: | | $124,635.08 |
| | **Case Number\*** | | Priority | Unsecured | **Case Number\*** | | Priority | Unsecured | |
| | 05-44640 | | | $155,624.26 | 05-44640<br>05-44612 | | | $122,028.20<br>$2,606.88 | |
| | | | | $155,624.26 | | | | $124,635.08 | |
| **Claim:** 10638<br>Date Filed: 07/25/2006<br>Docketed Total: $262,877.22<br>Filing Creditor Name and Address:<br>APPLIED INDUSTRIAL TECHNOLOGIE<br>ONE APPLIED PLAZA<br>CLEVELAND, OH 44115-5056 | APPLIED INDUSTRIAL TECHNOLOGIE<br>ONE APPLIED PLAZA<br>CLEVELAND, OH 44115-5056 | | Docketed Total: | $262,877.22 | | | Modified Total: | | $210,171.57 |
| | **Case Number\*** | | Priority | Unsecured | **Case Number\*** | | Priority | Unsecured | |
| | 05-44640 | | | $262,877.22 | 05-44640 | | | $210,171.57 | |
| | | | | $262,877.22 | | | | $210,171.57 | |
| **Claim:** 10631<br>Date Filed: 07/25/2006<br>Docketed Total: $192,374.01<br>Filing Creditor Name and Address:<br>APPLIED INDUSTRIAL TECHNOLOGIES & FOLLOWING SUBSIDIARIES APP IN TECH TX LP APPLIED MICHIGAN AND APPLIED IND TECH INDIANA<br>ONE APPLIED PLZ<br>E 36TH ST & EUDLID AVE<br>CLEVELAND, OH 44115-5056 | APPLIED INDUSTRIAL TECHNOLOGIES & FOLLOWING SUBSIDIARIES APP IN TECH TX LP APPLIED MICHIGAN AND APPLIED IND TECH INDIANA<br>ONE APPLIED PLZ<br>E 36TH ST & EUDLID AVE<br>CLEVELAND, OH 44115-5056 | | Docketed Total: | $192,374.01 | | | Modified Total: | | $162,793.89 |
| | **Case Number\*** | | Priority | Unsecured | **Case Number\*** | | Priority | Unsecured | |
| | 05-44481 | | | $192,374.01 | 05-44640 | | | $162,793.89 | |
| | | | | $192,374.01 | | | | $162,793.89 | |

\*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

### EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**Claim: 10632**
Date Filed: 07/25/2006
Docketed Total: $3,094.33
Filing Creditor Name and Address:
APPLIED INDUSTRIAL
TECHNOLOGIES DIXIE INC
ONE APPLIED PLZ
EAST 36TH ST & EUCLID AVE
CLEVELAND, OH 44115-5056

Claim Holder Name and Address
APPLIED INDUSTRIAL
TECHNOLOGIES DIXIE INC
ONE APPLIED PLZ
EAST 36TH ST & EUCLID AVE
CLEVELAND, OH 44115-5056

| Case Number* | Secured | Priority | Unsecured | Docketed Total: $3,094.33 |
|---|---|---|---|---|
| 05-44626 | | | $3,094.33 | |
| | | | **$3,094.33** | |

Case Number*
05-44640

| Secured | Priority | Unsecured | Modified Total: $2,631.20 |
|---|---|---|---|
| | | $2,631.20 | |
| | | **$2,631.20** | |

---

**Claim: 2166**
Date Filed: 03/01/2006
Docketed Total: $288,900.67
Filing Creditor Name and Address:
ASM CAPITAL AS ASSIGNEE FOR
EVERETT CHARLES
TECHNOLOGIES
7600 JERICHO TPKE STE 302
WOODBURY, NY 11797

Claim Holder Name and Address
ASM CAPITAL AS ASSIGNEE FOR
EVERETT CHARLES TECHNOLOGIES
7600 JERICHO TPKE STE 302
WOODBURY, NY 11797

| Case Number* | Secured | Priority | Unsecured | Docketed Total: $288,900.67 |
|---|---|---|---|---|
| 05-44640 | | | $288,900.67 | |
| | | | **$288,900.67** | |

Case Number*
05-44640

| Secured | Priority | Unsecured | Modified Total: $270,876.29 |
|---|---|---|---|
| | | $270,876.29 | |
| | | **$270,876.29** | |

---

**Claim: 2167**
Date Filed: 03/01/2006
Docketed Total: $272,579.43
Filing Creditor Name and Address:
ASM CAPITAL AS ASSIGNEE FOR
UNIVERSAL INSTRUMENTS CORP
7600 JERICHO TPKE STE 302
WOODBURY, NJ 11797

Claim Holder Name and Address
ASM CAPITAL AS ASSIGNEE FOR
UNIVERSAL INSTRUMENTS CORP
7600 JERICHO TPKE STE 302
WOODBURY, NJ 11797

| Case Number* | Secured | Priority | Unsecured | Docketed Total: $272,579.43 |
|---|---|---|---|---|
| 05-44640 | | | $272,579.43 | |
| | | | **$272,579.43** | |

Case Number*
05-44640

| Secured | Priority | Unsecured | Modified Total: $260,078.21 |
|---|---|---|---|
| | | $260,078.21 | |
| | | **$260,078.21** | |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED / CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Claim: 7203 <br> Date Filed: 05/31/2006 <br> Docketed Total: $10,695.33 <br> Filing Creditor Name and Address: <br> ATKINS & PEARCE INC <br> 1 BRAID WAY <br> COVINGTON, KY 41017-9702 | Docketed Total: | $10,695.33 | | | Claim Holder Name and Address <br> ATKINS & PEARCE INC <br> 1 BRAID WAY <br> COVINGTON, KY 41017-9702 | Modified Total: | $2,280.91 | | |
| Case Number* <br> 05-44481 | Secured | Priority | Unsecured <br> $10,695.33 <br> **$10,695.33** | | Case Number* <br> 05-44640 | Secured | Priority | Unsecured <br> $2,280.91 <br> **$2,280.91** | |
| Claim: 7204 <br> Date Filed: 05/31/2006 <br> Docketed Total: $13,597.57 <br> Filing Creditor Name and Address: <br> ATKINS & PEARCE INC <br> 1 BRAID WAY <br> COVINGTON, KY 41017-9702 | Docketed Total: | $13,597.57 | | | Claim Holder Name and Address <br> ATKINS & PEARCE INC <br> 1 BRAID WAY <br> COVINGTON, KY 41017-9702 | Modified Total: | $8,277.75 | | |
| Case Number* <br> 05-44481 | Secured | Priority | Unsecured <br> $13,597.57 <br> **$13,597.57** | | Case Number* <br> 05-44640 | Secured | Priority | Unsecured <br> $8,277.75 <br> **$8,277.75** | |
| Claim: 5233 <br> Date Filed: 05/08/2006 <br> Docketed Total: $1,425.00 <br> Filing Creditor Name and Address: <br> AVERY DENNINSON VITAL <br> 17700 FOLTZ IND PKWY <br> STRONGSVILLE, OH 44077 | Docketed Total: | $1,425.00 | | | Claim Holder Name and Address <br> AVERY DENNINSON VITAL <br> 17700 FOLTZ IND PKWY <br> STRONGSVILLE, OH 44077 | Modified Total: | $1,425.00 | | |
| Case Number* <br> 05-44481 | Secured | Priority | Unsecured <br> $1,425.00 <br> **$1,425.00** | | Case Number* <br> 05-44640 | Secured | Priority | Unsecured <br> $1,425.00 <br> **$1,425.00** | |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**CLAIM TO BE MODIFIED**

Claim: 14027
Date Filed:    07/31/2006
Docketed Total:    $513,080.99
Filing Creditor Name and Address:
AXON CABLE INC
FREEBORN & PETERS LLP
311 S WACKER DR STE 3000
CHICAGO, IL 60606

**CLAIM AS DOCKETED**

Claim Holder Name and Address
GOLDMAN SACHS CREDIT
PARTNERS LP
ATTN PEDRO RAMIREZ
30 HUDSON 17TH FL
JERSEY CITY, NJ 07302

Docketed Total:    $513,080.99

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $513,080.99 |
| | | | **$513,080.99** |

**CLAIM AS MODIFIED**

Modified Total:    $501,065.06

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $501,065.06 |
| | | | **$501,065.06** |

---

**CLAIM TO BE MODIFIED**

Claim: 2056
Date Filed:    02/17/2006
Docketed Total:    $20,637.70
Filing Creditor Name and Address:
BAJA TAPE & SUPPLY INC
12773 GRAND RIVER DR
EL PASO, TX 79928

**CLAIM AS DOCKETED**

Claim Holder Name and Address
BAJA TAPE & SUPPLY INC
12773 GRAND RIVER DR
EL PASO, TX 79928

Docketed Total:    $20,637.70

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $20,637.70 |
| | | | **$20,637.70** |

**CLAIM AS MODIFIED**

Modified Total:    $10,318.85

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $10,318.85 |
| | | | **$10,318.85** |

---

**CLAIM TO BE MODIFIED**

Claim: 145
Date Filed:    10/28/2005
Docketed Total:    $48,243.00
Filing Creditor Name and Address:
BOOTH INC
PO BOX 487
MIO, MI 48647

**CLAIM AS DOCKETED**

Claim Holder Name and Address
BOOTH INC
PO BOX 487
MIO, MI 48647

Docketed Total:    $48,243.00

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | $48,243.00 | |
| | | **$48,243.00** | |

**CLAIM AS MODIFIED**

Modified Total:    $45,786.00

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $45,786.00 |
| | | | **$45,786.00** |

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 6683<br>Date Filed: 05/23/2006<br>Docketed Total: $43,850.88<br>Filing Creditor Name and Address:<br>BOURNS INC<br>1200 COLUMBIA AVE<br>RIVERSIDE, CA 92507 | Claim Holder Name and Address<br>BOURNS INC<br>1200 COLUMBIA AVE<br>RIVERSIDE, CA 92507<br><br>Docketed Total: $43,850.88<br>Secured<br>Priority<br>Unsecured $43,850.88<br>$43,850.88<br>Case Number* 05-44641 | Modified Total: $26,969.88<br>Secured<br>Priority<br>Unsecured $26,969.88<br>$26,969.88<br>Case Number* 05-44640 |
| Claim: 13882<br>Date Filed: 07/31/2006<br>Docketed Total: $4,164.75<br>Filing Creditor Name and Address:<br>BP PRODUCTS NORTH AMERICA INC<br>ATTN TOM W STRATTAN<br>28100 TORCH PKWY STE 300<br>WARRENVILLE, IL 60555 | Claim Holder Name and Address<br>BP PRODUCTS NORTH AMERICA INC<br>ATTN TOM W STRATTAN<br>28100 TORCH PKWY STE 300<br>WARRENVILLE, IL 60555<br><br>Docketed Total: $4,164.75<br>Secured<br>Priority<br>Unsecured $4,164.75<br>$4,164.75<br>Case Number* 05-44640 | Modified Total: $4,164.75<br>Secured<br>Priority<br>Unsecured $4,164.75<br>$4,164.75<br>Case Number* 05-44640 |
| Claim: 9808<br>Date Filed: 07/17/2006<br>Docketed Total: $49,258.57<br>Filing Creditor Name and Address:<br>BURNEX CORP<br>703 W ALGONQUIN RD<br>ALGONQUIN, IL 60102 | Claim Holder Name and Address<br>BURNEX CORP<br>703 W ALGONQUIN RD<br>ALGONQUIN, IL 60102<br><br>Docketed Total: $49,258.57<br>Secured<br>Priority<br>Unsecured $49,258.57<br>$49,258.57<br>Case Number* 05-44640 | Modified Total: $21,206.64<br>Secured<br>Priority<br>Unsecured $21,206.64<br>$21,206.64<br>Case Number* 05-44640 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

### EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Claim: 1628<br>Date Filed: 01/23/2006<br>Docketed Total: $14,003.86<br>Filing Creditor Name and Address:<br>CALLANAN INDUSTRIES INC DBA<br>MANITOU CONCRETE COMPANY<br>5 S FITZHUGH ST<br>ROCHESTER, NY 14614 | Claim Holder Name and Address<br>CALLANAN INDUSTRIES INC DBA<br>MANITOU CONCRETE COMPANY<br>5 S FITZHUGH ST<br>ROCHESTER, NY 14614 | | Docketed Total: | | $14,003.86 | | | Modified Total: | | $4,042.88 |
| | Case Number* | Secured | Priority | Unsecured | | Case Number* | Secured | Priority | Unsecured | |
| | 05-44481 | | | $14,003.86 | | 05-44640 | | | $4,042.88 | |
| | | | | $14,003.86 | | | | | $4,042.88 | |
| Claim: 9681<br>Date Filed: 07/17/2006<br>Docketed Total: $122,735.46<br>Filing Creditor Name and Address:<br>CHEVRON PRODUCTS CO<br>PO BOX F<br>CONCORD, CA 94524 | Claim Holder Name and Address<br>CHEVRON PRODUCTS CO<br>PO BOX F<br>CONCORD, CA 94524 | | Docketed Total: | | $122,735.46 | | | Modified Total: | | $105,386.78 |
| | Case Number* | Secured | Priority | Unsecured | | Case Number* | Secured | Priority | Unsecured | |
| | 05-44640 | | | $122,735.46 | | 05-44640 | | | $105,386.78 | |
| | | | | $122,735.46 | | | | | $105,386.78 | |
| Claim: 5086<br>Date Filed: 05/08/2006<br>Docketed Total: $7,831.58<br>Filing Creditor Name and Address:<br>CINGULAR WIRELESS<br>PO BOX 309<br>PORTLAND, OR 97207-0309 | Claim Holder Name and Address<br>CINGULAR WIRELESS<br>PO BOX 309<br>PORTLAND, OR 97207-0309 | | Docketed Total: | | $7,831.58 | | | Modified Total: | | $7,831.58 |
| | Case Number* | Secured | Priority | Unsecured | | Case Number* | Secured | Priority | Unsecured | |
| | 05-44481 | | | $7,831.58 | | 05-44640 | | | $7,831.58 | |
| | | | | $7,831.58 | | | | | $7,831.58 | |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 15602<br>Date Filed: 07/31/2006<br>Docketed Total: $48,145.89<br>Filing Creditor Name and Address:<br>CIT COMMUNICATIONS FINANCE<br>CORPORATION DBA AVAYA<br>FINANCIAL SERVICES FKA AT&T<br>CREDIT CORPORATION<br>ATTN BANKRUPTCY DEPT<br>1 CIT DR STE 4104A<br>LIVINGSTON, NJ 07039 | Claim Holder Name and Address<br>CIT COMMUNICATIONS FINANCE<br>CORPORATION DBA AVAYA<br>FINANCIAL SERVICES FKA AT&T<br>CREDIT CORPORATION<br>ATTN BANKRUPTCY DEPT<br>1 CIT DR STE 4104A<br>LIVINGSTON, NJ 07039<br><br>Docketed Total: $48,145.89<br><br>Secured / Priority / Unsecured $48,145.89<br><br>Case Number*: 05-44612<br>$48,145.89 | Modified Total: $48,145.89<br><br>Secured / Priority / Unsecured $48,145.89<br><br>Case Number*: 05-44640<br>$48,145.89 |
| Claim: 712<br>Date Filed: 11/21/2005<br>Docketed Total: $9,554.69<br>Filing Creditor Name and Address:<br>COMPAGNIE DEUTSCH ORLEANS<br>22 RUE DES CHAISES<br>45142 ST JEAN DE LA RUELLE<br>CEDEX<br>BP 96FRANCE | Claim Holder Name and Address<br>COMPAGNIE DEUTSCH ORLEANS<br>22 RUE DES CHAISES<br>45142 ST JEAN DE LA RUELLE<br>CEDEX<br>BP 96FRANCE<br><br>Docketed Total: $9,554.69<br><br>Secured / Priority / Unsecured $9,554.69<br><br>Case Number*: 05-44481<br>$9,554.69 | Modified Total: $9,554.69<br><br>Secured / Priority / Unsecured $9,554.69<br><br>Case Number*: 05-44640<br>$9,554.69 |
| Claim: 7044<br>Date Filed: 05/30/2006<br>Docketed Total: $10,860.00<br>Filing Creditor Name and Address:<br>COMPONENT DISTRIBUTORS INC<br>PO BOX 13017<br>DENVER, CO 80201-3017 | Claim Holder Name and Address<br>COMPONENT DISTRIBUTORS INC<br>PO BOX 13017<br>DENVER, CO 80201-3017<br><br>Docketed Total: $10,860.00<br><br>Secured / Priority / Unsecured $10,860.00<br><br>Case Number*: 05-44481<br>$10,860.00 | Modified Total: $7,240.00<br><br>Secured / Priority / Unsecured $7,240.00<br><br>Case Number*: 05-44640<br>$7,240.00 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 2530 <br> Date Filed: 04/03/2006 <br> Docketed Total: $2,956,707.11 <br> Filing Creditor Name and Address: <br> CONSUMERS ENERGY COMPANY <br> ONE ENERGY PLAZA <br> JACKSON, MI 49201 | CONSUMERS ENERGY COMPANY <br> ONE ENERGY PLAZA <br> JACKSON, MI 49201 | | | Docketed Total: $2,956,707.11 | | | Modified Total: $42,993.95 | |
| | Case Number* <br> 05-44481 | | | Unsecured <br> $2,956,707.11 <br> **$2,956,707.11** | Case Number* <br> 05-44640 | | | Unsecured <br> $42,993.95 <br> **$42,993.95** |
| Claim: 1211 <br> Date Filed: 12/19/2005 <br> Docketed Total: $2,599.00 <br> Filing Creditor Name and Address: <br> CROWLEY LINER SERVICES INC <br> PO BOX 2110 <br> JACKSONVILLE, FL 32203-2110 | CROWLEY LINER SERVICES INC <br> PO BOX 2110 <br> JACKSONVILLE, FL 32203-2110 | | | Docketed Total: $2,599.00 | | | Modified Total: $2,599.00 | |
| | Case Number* <br> 05-44481 | | | Unsecured <br> $2,599.00 <br> **$2,599.00** | Case Number* <br> 05-44640 | | | Unsecured <br> $2,599.00 <br> **$2,599.00** |
| Claim: 10599 <br> Date Filed: 07/25/2006 <br> Docketed Total: $46,506.23 <br> Filing Creditor Name and Address: <br> CS BUSINESS SYSTEMS INC <br> 1236 MAIN ST <br> BUFFALO, NY 14209 | CS BUSINESS SYSTEMS INC <br> 1236 MAIN ST <br> BUFFALO, NY 14209 | | | Docketed Total: $46,506.23 | | | Modified Total: $44,803.23 | |
| | Case Number* <br> 05-44640 | | | Unsecured <br> $46,506.23 <br> **$46,506.23** | Case Number* <br> 05-44640 | | | Unsecured <br> $44,803.23 <br> **$44,803.23** |
| Claim: 1183 <br> Date Filed: 12/19/2005 <br> Docketed Total: $5,555.00 <br> Filing Creditor Name and Address: <br> DAYTON ICE MACHINE INC <br> 3463 SUCCESSFUL WY <br> DAYTON, OH 45414 | DAYTON ICE MACHINE INC <br> 3463 SUCCESSFUL WY <br> DAYTON, OH 45414 | | | Docketed Total: $5,555.00 | | | Modified Total: $5,555.00 | |
| | Case Number* <br> 05-44481 | | | Unsecured <br> $5,555.00 <br> **$5,555.00** | Case Number* <br> 05-44640 | | | Unsecured <br> $5,555.00 <br> **$5,555.00** |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | | Secured | Priority | Unsecured | |
| Claim: 10149<br>Date Filed: 07/21/2006<br>Docketed Total: $80,378.48<br>Filing Creditor Name and Address:<br>DEKKO TECHNOLOGIES INC<br>HALLER & COLVIN PC<br>444 E MAIN ST<br>FORT WAYNE, IN 46802 | DEKKO TECHNOLOGIES INC<br>HALLER & COLVIN PC<br>444 E MAIN ST<br>FORT WAYNE, IN 46802 | | Docketed Total: | $80,378.48<br>$80,378.48 | | | | Modified Total: | $80,378.48<br>$80,378.48 | |
| | Case Number*<br>05-44481 | | | $80,378.48 | | Case Number*<br>05-44640 | | | $80,378.48 | |
| Claim: 5108<br>Date Filed: 05/08/2006<br>Docketed Total: $14,586.67<br>Filing Creditor Name and Address:<br>DEWITT ROSS & STEVENS SC<br>2 E MIFFLIN ST STE 600<br>MADISON, WI 53703 | DEWITT ROSS & STEVENS SC<br>2 E MIFFLIN ST STE 600<br>MADISON, WI 53703 | | Docketed Total: | $14,586.67<br>$14,586.67 | | | | Modified Total: | $14,586.67<br>$14,586.67 | |
| | Case Number*<br>05-44481 | | | $14,586.67 | | Case Number*<br>05-44640 | | | $14,586.67 | |
| Claim: 116<br>Date Filed: 10/25/2005<br>Docketed Total: $289,004.91<br>Filing Creditor Name and Address:<br>DRAKA AUTOMOTIVE GMBH<br>DICKESTR 23<br>WUPPERTAL, D 42369<br>GERMANY | DRAKA AUTOMOTIVE GMBH<br>DICKESTR 23<br>WUPPERTAL, D 42369<br>GERMANY | | Docketed Total: | $289,004.91<br>$289,004.91 | | | | Modified Total: | $330,559.89<br>$330,559.89 | |
| | Case Number*<br>05-44481 | | | $289,004.91 | | Case Number*<br>05-44640 | | | $330,559.89 | |

*See Exhibit F for a listing of debtor entities by case number.

Page 12 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 2319<br>Date Filed: 03/16/2006<br>Docketed Total: $2,448.00<br>Filing Creditor Name and Address:<br>DRAKE MANUFACTURING SERVICES INC<br>4371 N LEAVITT RD<br>WARREN, OH 44485 | Claim Holder Name and Address<br><br>DRAKE MANUFACTURING SERVICES INC<br>4371 N LEAVITT RD<br>WARREN, OH 44485<br><br>Case Number*: 05-44481<br>Docketed Total: $2,448.00<br>Secured / Priority / Unsecured $2,448.00 / $2,448.00 | Case Number*: 05-44640<br>Modified Total: $2,448.00<br>Secured / Priority / Unsecured $2,448.00 / $2,448.00 |
| Claim: 1220<br>Date Filed: 12/19/2005<br>Docketed Total: $18,479.84<br>Filing Creditor Name and Address:<br>DRAPER CHEVROLET CO<br>4200 BAY RD<br>PO BOX 2139<br>SAGINAW, MI 48603 | Claim Holder Name and Address<br><br>DRAPER CHEVROLET CO<br>4200 BAY RD<br>PO BOX 2139<br>SAGINAW, MI 48603<br><br>Case Number*: 05-44481<br>Docketed Total: $18,479.84<br>Secured / Priority / Unsecured $18,479.84 / $18,479.84 | Case Number*: 05-44640<br>Modified Total: $18,436.43<br>Secured / Priority / Unsecured $18,436.43 / $18,436.43 |
| Claim: 2761<br>Date Filed: 04/25/2006<br>Docketed Total: $221,546.49<br>Filing Creditor Name and Address:<br>DTE ENERGY (DETROIT EDISON & MICHCON)<br>3200 HOBSON ST LOWER LEVEL<br>DETROIT, MI 48201-2927 | Claim Holder Name and Address<br><br>DTE ENERGY (DETROIT EDISON & MICHCON)<br>3200 HOBSON ST LOWER LEVEL<br>DETROIT, MI 48201-2927<br><br>Case Number*: 05-44481<br>Docketed Total: $221,546.49<br>Secured / Priority / Unsecured $221,546.49 / $221,546.49 | Case Number*: 05-44640<br>Modified Total: $216,969.48<br>Secured / Priority / Unsecured $216,969.48 / $216,969.48 |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 2901**
Date Filed: 04/27/2006
Docketed Total:    $16,138.00
Filing Creditor Name and Address:
DYNALENE HEAT TRANSFER
FLUIDS
PO BOX A
COPLAY, PA 18037

Claim Holder Name and Address
DYNALENE HEAT TRANSFER
FLUIDS
PO BOX A
COPLAY, PA 18037

Docketed Total:    $16,138.00

| Secured | Priority | Unsecured |
|---|---|---|
| | | $16,138.00 |
| | | $16,138.00 |

Case Number*
05-44481

Modified Total:    $15,018.00

| Secured | Priority | Unsecured |
|---|---|---|
| | | $15,018.00 |
| | | $15,018.00 |

Case Number*
05-44640

---

**Claim: 3951**
Date Filed: 05/01/2006
Docketed Total:    $21,055.17
Filing Creditor Name and Address:
EDWARDS MEDICAL SUPPLY INC
EFT
PO BOX 1639
BOLINGBROOK, IL 60440

Claim Holder Name and Address
EDWARDS MEDICAL SUPPLY INC
EFT
PO BOX 1639
BOLINGBROOK, IL 60440

Docketed Total:    $21,055.17

| Secured | Priority | Unsecured |
|---|---|---|
| | | $21,055.17 |
| | | $21,055.17 |

Case Number*
05-44640

Modified Total:    $9,676.11

| Secured | Priority | Unsecured |
|---|---|---|
| | | $9,676.11 |
| | | $9,676.11 |

Case Number*
05-44640

---

**Claim: 182**
Date Filed: 10/28/2005
Docketed Total:    $21,460.00
Filing Creditor Name and Address:
ENMARK TOOL & GAGE CO INC
18100 CROSS LANE
FRASER, MI 48026

Claim Holder Name and Address
KT TRUST
ONE UNIVERSITY PLZ STE 312
HACKENSACK, NJ 07601

Docketed Total:    $21,460.00

| Secured | Priority | Unsecured |
|---|---|---|
| | | $21,460.00 |
| | | $21,460.00 |

Case Number*
05-44481

Modified Total:    $21,460.00

| Secured | Priority | Unsecured |
|---|---|---|
| | | $21,460.00 |
| | | $21,460.00 |

Case Number*
05-44640

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

### CLAIM TO BE MODIFIED

Claim: 15032
Date Filed: 07/31/2006
Docketed Total: $1,840,554.00
Filing Creditor Name and Address:
EQ HERITAGE LLC
HONIGMAN MILLER SCHWARTZ & COHN LLP
2290 FIRST NATIONAL BUILDING
660 WOODWARD AVE
DETROIT, MI 48226

### CLAIM AS DOCKETED

Claim Holder Name and Address:
AMROC INVESTMENTS LLC
535 MADISON AVE 15TH FL
NEW YORK, NY 10022

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $867,780.00 | | $971,774.00 |
| Docketed Total: $1,839,554.00 | $867,780.00 | | $971,774.00 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $0.00 | | $1,014,281.00 |
| Modified Total: $1,014,281.00 | $0.00 | | $1,014,281.00 |

---

### CLAIM AS DOCKETED

Claim Holder Name and Address:
EQ HERITAGE LLC
HONIGMAN MILLER SCHWARTZ & COHN LLP
2290 FIRST NATIONAL BUILDING
660 WOODWARD AVE
DETROIT, MI 48226

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $1,000.00 |
| Docketed Total: $1,000.00 | | | $1,000.00 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $0.00 | | $0.00 |
| Modified Total: $0.00 | $0.00 | | $0.00 |

---

### CLAIM TO BE MODIFIED

Claim: 1543
Date Filed: 01/17/2006
Docketed Total: $204,771.15
Filing Creditor Name and Address:
EXPORT DEVELOPMENT CANADA EDC
151 O CONNOR ST 18TH FLR
OTTAWA, ON K1A 1K3
CANADA

### CLAIM AS DOCKETED

Claim Holder Name and Address:
EXPORT DEVELOPMENT CANADA EDC
151 O CONNOR ST 18TH FLR
OTTAWA, ON K1A 1K3
CANADA

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $204,771.15 |
| Docketed Total: $204,771.15 | | | $204,771.15 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $187,324.48 |
| Modified Total: $187,324.48 | | | $187,324.48 |

---

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 12232**
Date Filed: 07/28/2006
Docketed Total: $31,230.88
Filing Creditor Name and Address:
FANUC ROBOTICS AMERICA INC
3900 W HAMLIN RD
ROCHESTER HILLS, MI
48309-3253

CLAIM AS DOCKETED:
Claim Holder Name and Address
FANUC ROBOTICS AMERICA INC
3900 W HAMLIN RD
ROCHESTER HILLS, MI 48309-3253

| Case Number* | Secured | Priority | Unsecured | Docketed Total: |
|---|---|---|---|---|
| 05-44481 | | | $31,230.88 | $31,230.88 |
| | | | $31,230.88 | |

CLAIM AS MODIFIED:

| Case Number* | Secured | Priority | Unsecured | Modified Total: |
|---|---|---|---|---|
| 05-44640 | | | $31,230.88 | $31,230.88 |
| | | | $31,230.88 | |

---

**Claim: 7476**
Date Filed: 06/05/2006
Docketed Total: $17,775.69
Filing Creditor Name and Address:
GOLDSMITH TR AND SON INC
ANN MARIE STENGEL
16 PEUQUET PKY
TONAWANDA, NY 14150-2413

CLAIM AS DOCKETED:
Claim Holder Name and Address
GOLDSMITH TR AND SON INC
ANN MARIE STENGEL
16 PEUQUET PKY
TONAWANDA, NY 14150-2413

| Case Number* | Secured | Priority | Unsecured | Docketed Total: |
|---|---|---|---|---|
| 05-44481 | | | $17,775.69 | $17,775.69 |
| | | | $17,775.69 | |

CLAIM AS MODIFIED:

| Case Number* | Secured | Priority | Unsecured | Modified Total: |
|---|---|---|---|---|
| 05-44640 | | | $17,538.35 | $17,538.35 |
| | | | $17,538.35 | |

---

**Claim: 4294**
Date Filed: 05/01/2006
Docketed Total: $1,415.04
Filing Creditor Name and Address:
GREAT LAKES POWER LIFT INC
7455 TYLER BLVD
MENTOR, OH 44060

CLAIM AS DOCKETED:
Claim Holder Name and Address
GREAT LAKES POWER LIFT INC
7455 TYLER BLVD
MENTOR, OH 44060

| Case Number* | Secured | Priority | Unsecured | Docketed Total: |
|---|---|---|---|---|
| 05-44481 | | | $1,415.04 | $1,415.04 |
| | | | $1,415.04 | |

CLAIM AS MODIFIED:

| Case Number* | Secured | Priority | Unsecured | Modified Total: |
|---|---|---|---|---|
| 05-44640 | | | $1,415.04 | $1,415.04 |
| | | | $1,415.04 | |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.,
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

### CLAIM TO BE MODIFIED / CLAIM AS DOCKETED

**Claim: 3780**
Date Filed: 05/01/2006
Docketed Total: $576.26
Filing Creditor Name and Address:
HOBART SALES AND SERVICE
181 INDUSTRIAL PKWY
MANSFIELD, OH 44903

Claim Holder Name and Address
HOBART SALES AND SERVICE
181 INDUSTRIAL PKWY
MANSFIELD, OH 44903

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $576.26 |
| Docketed Total: | | | $576.26 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $576.26 |
| Modified Total: | | | $576.26 |

---

**Claim: 15220**
Date Filed: 07/31/2006
Docketed Total: $321,256.00
Filing Creditor Name and Address:
HUTCHINSON SEAL
CORPORATION
PO BOX 1886
GRAND RAPIDS, MI 49501

Claim Holder Name and Address
HUTCHINSON SEAL CORPORATION
PO BOX 1886
GRAND RAPIDS, MI 49501

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $321,256.00 |
| Docketed Total: | | | $321,256.00 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $201,945.43 |
| Modified Total: | | | $201,945.43 |

---

**Claim: 15341**
Date Filed: 07/31/2006
Docketed Total: $15,304.24
Filing Creditor Name and Address:
HYDRO ELLAY ENFIELD
LIMITED ENGLAND
JOSEPH NOBLE RD
LILLYHALL INDUSTRIAL EST
WORKINGTON CUMBRIA, CA14
4JX
UNITED KINGDOM

Claim Holder Name and Address
HYDRO ELLAY ENFIELD LIMITED
ENGLAND
JOSEPH NOBLE RD
LILLYHALL INDUSTRIAL EST
WORKINGTON CUMBRIA, CA14 4JX
UNITED KINGDOM

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $15,304.24 |
| Docketed Total: | | | $15,304.24 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $6,196.24 |
| Modified Total: | | | $6,196.24 |

*See Exhibit F for a listing of debtor entities by case number.

Page 17 of 36

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 680 Date Filed: 11/18/2005 Dockoted Total: $514,319.83 Filing Creditor Name and Address: IBM CORPORATION TWO LINCOLN CTR OAKBROOK TERRACE, IL 60181 | IBM CORPORATION TWO LINCOLN CTR OAKBROOK TERRACE, IL 60181 | Docketed Total: | | $514,319.83 | Modified Total: | | | $438,719.83 |
| | Case Number* 05-44481 | | | $514,319.83 $514,319.83 | Case Number* 05-44624 05-44640 05-44567 05-44612 | | | $90.61 $22,777.05 $15,863.77 $399,988.40 $438,719.83 |
| Claim: 2203 Date Filed: 03/07/2006 Dockoted Total: $4,196.78 Filing Creditor Name and Address: ICS CUSTOMS SERVICE INC 1099 MORSE AVE ELK GROVE VILLAGE, IL 60007 | ICS CUSTOMS SERVICE INC 1099 MORSE AVE ELK GROVE VILLAGE, IL 60007 | Docketed Total: | $1,057.66 | $3,139.12 | Modified Total: | | | $3,890.01 |
| | Case Number* 05-44481 | | $1,057.66 | $3,139.12 | Case Number* 05-44640 | | | $3,890.01 $3,890.01 |
| Claim: 10279 Date Filed: 07/24/2006 Dockoted Total: $1,456,361.79 Filing Creditor Name and Address: INTEGRATED SILICON SOLUTION EF INC 2231 LAWSON LN SANTA CLARA, CA 95054 | INTEGRATED SILICON SOLUTION EF INC 2231 LAWSON LN SANTA CLARA, CA 95054 | Docketed Total: | | $1,456,361.79 | Modified Total: | | | $1,398,447.10 |
| | Case Number* 05-44640 | | | $1,456,361.79 $1,456,361.79 | Case Number* 05-44640 | | | $1,398,447.10 $1,398,447.10 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**CLAIM TO BE MODIFIED**

Claim: 5404
Date Filed: 05/09/2006
Docketed Total: $429,262.62
Filing Creditor Name and Address:
JADA PRECISION PLASTICS CO
EFT INC
1667 EMERSON ST
ROCHESTER, NY 14606

**CLAIM AS DOCKETED**

Claim Holder Name and Address
JADA PRECISION PLASTICS CO EFT
INC
1667 EMERSON ST
ROCHESTER, NY 14606

Docketed Total: $429,262.62

| Secured | Priority | Unsecured |
|---|---|---|
| | | $429,262.62 |

Case Number*
05-44640

$429,262.62

**CLAIM AS MODIFIED**

Modified Total: $420,062.84

| Secured | Priority | Unsecured |
|---|---|---|
| | | $420,062.84 |

Case Number*
05-44640

$420,062.84

---

**CLAIM TO BE MODIFIED**

Claim: 14915
Date Filed: 07/31/2006
Docketed Total: $468,786.87
Filing Creditor Name and Address:
JAMESTOWN CONTAINER CORP
SPECIALTY PRODUCTS DIV
2345 WALDEN AVE
BUFFALO, NY 14225

**CLAIM AS DOCKETED**

Claim Holder Name and Address
JAMESTOWN CONTAINER CORP
SPECIALTY PRODUCTS DIV
2345 WALDEN AVE
BUFFALO, NY 14225

Docketed Total: $468,786.87

| Secured | Priority | Unsecured |
|---|---|---|
| | | $468,786.87 |

Case Number*
05-44481

$468,786.87

**CLAIM AS MODIFIED**

Modified Total: $407,193.80

| Secured | Priority | Unsecured |
|---|---|---|
| | | $407,193.80 |

Case Number*
05-44640

$407,193.80

---

**CLAIM TO BE MODIFIED**

Claim: 15982
Date Filed: 08/09/2006
Docketed Total: $181,540.86
Filing Creditor Name and Address:
KENMODE TOOL & ENGR INC
EFT
820 W ALGONQUIN RD
ALGONQUIN, IL 60102

**CLAIM AS DOCKETED**

Claim Holder Name and Address
KENMODE TOOL & ENGR INC EFT
820 W ALGONQUIN RD
ALGONQUIN, IL 60102

Docketed Total: $181,540.86

| Secured | Priority | Unsecured |
|---|---|---|
| | | $181,540.86 |

Case Number*
05-44640

$181,540.86

**CLAIM AS MODIFIED**

Modified Total: $161,180.85

| Secured | Priority | Unsecured |
|---|---|---|
| | | $161,180.85 |

Case Number*
05-44640

$161,180.85

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 3641<br>Date Filed: 05/01/2006<br>Docketed Total: $3,140.80<br>Filing Creditor Name and Address:<br>KORTEN QUALITY SYSTEMS LIMITED<br>PO BOX 454<br>ROMEO, MI 48065 | MADISON NICHE OPPORTUNITIES FUND LLC<br>6143 S WILLOW DR STE 200<br>GREENWOOD VILLAGE, CO 80111 | | Docketed Total: | $3,140.80 | | | Modified Total: | $2,675.25 |
| | Case Number*<br>05-44640 | | | $3,140.80<br>**$3,140.80** | Case Number*<br>05-44640 | | | $2,675.25<br>**$2,675.25** |
| Claim: 2895<br>Date Filed: 04/27/2006<br>Docketed Total: $14,399.78<br>Filing Creditor Name and Address:<br>LDMI<br>311 N MAIN ST<br>BOX 7820<br>ANN ARBOR, MI 48107 | ASM CAPITAL II LP<br>7600 JERICHO TURNPIKE STE 302<br>WOODBURY, NY 11797 | | Docketed Total: | $14,399.78 | | | Modified Total: | $9,022.00 |
| | Case Number*<br>05-44481 | | | $14,399.78<br>**$14,399.78** | Case Number*<br>05-44640 | | | $9,022.00<br>**$9,022.00** |
| Claim: 1178<br>Date Filed: 12/16/2005<br>Docketed Total: $116,317.23<br>Filing Creditor Name and Address:<br>LE JOINT FRANCAIS<br>17 RUE ANDRE BUILLE BP700<br>CHATTELLERAULT CEDEX, 86107<br>FRANCE | LE JOINT FRANCAIS<br>17 RUE ANDRE BUILLE BP700<br>CHATTELLERAULT CEDEX, 86107<br>FRANCE | | Docketed Total: | $116,317.23 | | | Modified Total: | $58,805.98 |
| | Case Number*<br>05-44481 | | | $116,317.23<br>**$116,317.23** | Case Number*<br>05-44640 | | | $58,805.98<br>**$58,805.98** |

*See Exhibit F for a listing of debtor entities by case number.

Page 20 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | | Secured | Priority | Unsecured | | | Secured | Priority | Unsecured |
| Claim: 1179<br>Date Filed: 12/16/2005<br>Docketed Total: $57,976.00<br>Filing Creditor Name and Address:<br>LE JOINT FRANCAIS<br>17 RUE ANDRE BUILLE BP700<br>CHATTELLERAULT CEDEX,<br>86107<br>FRANCE | LE JOINT FRANCAIS<br>17 RUE ANDRE BUILLE BP700<br>CHATTELLERAULT CEDEX, 86107<br>FRANCE<br><br>Case Number*<br>05-44481 | Docketed Total: | | | $57,976.00<br><br>**$57,976.00** | | Case Number*<br>05-44640 | Modified Total: | | $40,176.00<br><br>**$40,176.00** |
| Claim: 635<br>Date Filed: 11/17/2005<br>Docketed Total: $3,100.00<br>Filing Creditor Name and Address:<br>M & S SPRING CO INC<br>34137 DOREKA DR<br>FRASIER, MI 48026 | M & S SPRING CO INC<br>34137 DOREKA DR<br>FRASER, MI 48026<br><br>Case Number*<br>05-44481 | Docketed Total: | | | $3,100.00<br><br>**$3,100.00** | | Case Number*<br>05-44640 | Modified Total: | | $3,100.00<br><br>**$3,100.00** |
| Claim: 6450<br>Date Filed: 05/22/2006<br>Docketed Total: $130,697.79<br>Filing Creditor Name and Address:<br>MAGID GLOVE & SAFETY MFG<br>CO LLC<br>2060 N KOLMAR AVE<br>CHICAGO, IL 60639 | MAGID GLOVE & SAFETY MFG CO<br>LLC<br>2060 N KOLMAR AVE<br>CHICAGO, IL 60639<br><br>Case Number*<br>05-44481 | Docketed Total: | $100,407.40<br><br>**$100,407.40** | | $30,290.39<br><br>**$30,290.39** | | Case Number*<br>05-44640 | Modified Total: | | $130,697.79<br><br>**$130,697.79** |

*See Exhibit F for a listing of debtor entities by case number.

Page 21 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

### EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|

**CLAIM TO BE MODIFIED**

Claim: 936
Date Filed: 11/29/2005
Docketed Total: $768.52
Filing Creditor Name and Address:
MATHESON TRI-GAS INC
6225 N STATE HWY 161 STE 200
IRVING, TX 75038

**CLAIM AS DOCKETED**

Claim Holder Name and Address
MATHESON TRI-GAS INC
6225 N STATE HWY 161 STE 200
IRVING, TX 75038

Case Number*: 05-44481

| Secured | Priority | Unsecured |
|---|---|---|
| | | $768.52 |

Docketed Total: $768.52

**CLAIM AS MODIFIED**

Case Number*: 05-44640

| Secured | Priority | Unsecured |
|---|---|---|
| | | $133.26 |

Modified Total: $133.26

---

**CLAIM TO BE MODIFIED**

Claim: 5306
Date Filed: 05/08/2006
Docketed Total: $53,842.15
Filing Creditor Name and Address:
MATSUO ELECTRONICS OF AMERICA
2134 MAIN ST STE 100
HUNTINGTON BEACH, CA 92648

**CLAIM AS DOCKETED**

Claim Holder Name and Address
MATSUO ELECTRONICS OF AMERICA
2134 MAIN ST STE 100
HUNTINGTON BEACH, CA 92648

Case Number*: 05-44481

| Secured | Priority | Unsecured |
|---|---|---|
| | | $53,842.15 |

Docketed Total: $53,842.15

**CLAIM AS MODIFIED**

Case Number*:
05-44640
05-44610

| Secured | Priority | Unsecured |
|---|---|---|
| | | $35,158.60 |
| | | $9,416.25 |

Modified Total: $44,574.85

---

**CLAIM TO BE MODIFIED**

Claim: 9652
Date Filed: 07/17/2006
Docketed Total: $1,243,150.59
Filing Creditor Name and Address:
MEANS INDUSTRIES INC
SCHIFF HARDIN LLP
6600 SEARS TOWER
CHICAGO, IL 60606

**CLAIM AS DOCKETED**

Claim Holder Name and Address
MEANS INDUSTRIES INC
SCHIFF HARDIN LLP
6600 SEARS TOWER
CHICAGO, IL 60606

Case Number*: 05-44481

| Secured | Priority | Unsecured |
|---|---|---|
| | | $1,243,150.59 |

Docketed Total: $1,243,150.59

**CLAIM AS MODIFIED**

Case Number*: 05-44640

| Secured | Priority | Unsecured |
|---|---|---|
| | | $681,145.20 |

Modified Total: $681,145.20

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 10008<br>Date Filed: 07/20/2006<br>Docketed Total: $714,233.39<br>Filing Creditor Name and Address:<br>MITTAL STEEL USA INC FKA<br>ISPAT INLAND STEEL<br>1 S DEARBORN<br>CHICAGO, IL 60603 | Claim Holder Name and Address<br><br>MITTAL STEEL USA INC FKA ISPAT<br>INLAND STEEL<br>1 S DEARBORN<br>CHICAGO, IL 60603<br><br>Docketed Total: $714,233.39 | Modified Total: $238,077.39 |
| Case Number*<br>05-44481 | Secured<br><br>Priority<br><br>Unsecured $714,233.39<br>$714,233.39 | Case Number*<br>05-44640 | Secured<br><br>Priority<br><br>Unsecured $238,077.39<br>$238,077.39 |
| Claim: 2779<br>Date Filed: 04/26/2006<br>Docketed Total: $67,031.00<br>Filing Creditor Name and Address:<br>MOLDING CONCEPTS<br>6700 SIMS<br>STERLING HEIGHTS, MI<br>48313-3727 | Claim Holder Name and Address<br><br>MADISON INVESTMENT TRUST<br>SERIES 38<br>6310 LAMAR AVE STE 120<br>OVERLAND PARK, KS 66202<br><br>Docketed Total: $67,031.00 | Modified Total: $64,031.00 |
| Case Number*<br>05-44567 | Secured<br><br>Priority<br><br>Unsecured $67,031.00<br>$67,031.00 | Case Number*<br>05-44567 | Secured<br><br>Priority<br><br>Unsecured $64,031.00<br>$64,031.00 |
| Claim: 6764<br>Date Filed: 05/24/2006<br>Docketed Total: $467,395.85<br>Filing Creditor Name and Address:<br>MORAT GEAR TECHNOLOGY INC<br>K N A IMS GEAR INC<br>SMITH GAMBRELL & RUSSELL<br>LLP<br>1230 PEACHTREE ST NE STE<br>3100<br>ATLANTA, GA 30309 | Claim Holder Name and Address<br><br>AMROC INVESTMENTS LLC<br>535 MADISON AVE 15TH FL<br>NEW YORK, NY 10022<br><br>Docketed Total: $467,395.85 | Modified Total: $453,438.26 |
| Case Number*<br>05-44640 | Secured $51,768.59<br><br>Priority<br><br>Unsecured $415,627.26<br>$415,627.26 | Case Number*<br>05-44640 | Secured<br><br>Priority<br><br>Unsecured $453,438.26<br>$453,438.26 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 1512<br>Date Filed: 01/11/2006<br>Docketed Total: $8,859.49<br>Filing Creditor Name and Address:<br>MOSIER AUTOMATION INC<br>9247 N MERIDIAN ST STE 200<br>INDIANAPOLIS, IN 46260 | Claim Holder Name and Address<br>MOSIER AUTOMATION INC<br>9247 N MERIDIAN ST STE 200<br>INDIANAPOLIS, IN 46260<br><br>Docketed Total: $8,859.49 | Modified Total: $3,861.29 |
| | Case Number*<br>05-44481 | Case Number*<br>05-44640 |
| | Secured<br>_____ | Secured<br>_____ |
| | Priority | Priority |
| | Unsecured<br>$8,859.49<br>**$8,859.49** | Unsecured<br>$3,861.29<br>**$3,861.29** |
| Claim: 4303<br>Date Filed: 05/01/2006<br>Docketed Total: $2,679.95<br>Filing Creditor Name and Address:<br>MSJ TRUCKING INC<br>1118 HWY 84 EAST<br>OPP, AL 36467 | Claim Holder Name and Address<br>MSJ TRUCKING INC<br>1118 HWY 84 EAST<br>OPP, AL 36467<br><br>Docketed Total: $2,679.95 | Modified Total: $2,679.95 |
| | Case Number*<br>05-44481 | Case Number*<br>05-44640 |
| | Secured<br>_____ | Secured<br>_____ |
| | Priority | Priority |
| | Unsecured<br>$2,679.95<br>**$2,679.95** | Unsecured<br>$2,679.95<br>**$2,679.95** |
| Claim: 7563<br>Date Filed: 06/06/2006<br>Docketed Total: $47,094.44<br>Filing Creditor Name and Address:<br>ORTHODYNE ELECTRONICS<br>CORP<br>16700 RED HILL AVE<br>IRVINE, CA 92606-4802 | Claim Holder Name and Address<br>ORTHODYNE ELECTRONICS CORP<br>16700 RED HILL AVE<br>IRVINE, CA 92606-4802<br><br>Docketed Total: $47,094.44 | Modified Total: $46,524.44 |
| | Case Number*<br>05-44481 | Case Number*<br>05-44640 |
| | Secured<br>_____ | Secured<br>_____ |
| | Priority | Priority |
| | Unsecured<br>$47,094.44<br>**$47,094.44** | Unsecured<br>$46,524.44<br>**$46,524.44** |

*See Exhibit F for a listing of debtor entities by case number.

Page 24 of 36

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**Claim: 1134**
Date Filed: 12/13/2005
Docketed Total:    $73,142.59
Filing Creditor Name and Address:
PACKAGING ENGINEERING LLLC
2620 CENTENNIAL RD SUITES
TOLEDO, OH 43613

Claim Holder Name and Address
PACKAGING ENGINEERING LLC
2620 CENTENNIAL RD SUITES
TOLEDO, OH 43613

Docketed Total:    $73,142.59

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $73,142.59 |
| | | | $73,142.59 |

Modified Total:    $58,765.09

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $52,818.49 |
| 05-44482 | | | $5,946.60 |
| | | | $58,765.09 |

**Claim: 16376**
Date Filed: 10/20/2006
Docketed Total:    $590,769.00
Filing Creditor Name and Address:
PANASONIC ELECTRIC WORKS
CORP OF AMERICA FKA
AROMAT CORP
629 CENTRAL AVE
NEW PROVIDENCE, NJ 07974

Claim Holder Name and Address
LONGACRE MASTER FUND LTD
810 SEVENTH AVE 22ND FL
NEW YORK, NY 10019

Docketed Total:    $590,769.00

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $590,769.00 |
| | | | $590,769.00 |

Modified Total:    $574,127.00

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $574,127.00 |
| | | | $574,127.00 |

**Claim: 13459**
Date Filed: 07/25/2006
Docketed Total:    $370,568.92
Filing Creditor Name and Address:
PAR FOAM PRODUCTS INC
239 VAN RENSSELAER ST
BUFFALO, NY 14210

Claim Holder Name and Address
LONGACRE MASTER FUND LTD
810 SEVENTH AVE 22ND FL
NEW YORK, NY 10019

Docketed Total:    $370,568.92

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $370,568.92 |
| | | | $370,568.92 |

Modified Total:    $361,682.12

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $361,682.12 |
| | | | $361,682.12 |

*See Exhibit F for a listing of debtor entities by case number.

Page 25 of 36

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 7229<br>Date Filed: 05/31/2006<br>Docketed Total: $58,733.72<br>Filing Creditor Name and Address:<br>PAUL HASTINGS JANOFSKY AND<br>WALKER LLP<br>515 S FLOWER ST 25TH FL<br>LOS ANGELES, CA 90071 | Claim Holder Name and Address<br>PAUL HASTINGS JANOFSKY AND<br>WALKER LLP<br>515 S FLOWER ST 25TH FL<br>LOS ANGELES, CA 90071<br><br>Docketed Total: **$58,733.72**<br><br>Secured   Priority   Unsecured<br>                  $58,733.72<br>Case Number*<br>05-44481<br><br>**$58,733.72** | Modified Total: **$57,957.92**<br><br>Secured   Priority   Unsecured<br>                 $814.06<br>                 $690.00<br>            $50,283.05<br>             $6,170.81<br>Case Number*<br>05-44567<br>05-44624<br>05-44640<br>05-44554<br><br>**$57,957.92** |
| Claim: 3997<br>Date Filed: 05/01/2006<br>Docketed Total: $29,291.56<br>Filing Creditor Name and Address:<br>PEERLESS STEEL COMPANY INC<br>2450 AUSTIN AVE<br>TROY, MI 48083-2030 | Claim Holder Name and Address<br>PEERLESS STEEL COMPANY INC<br>2450 AUSTIN AVE<br>TROY, MI 48083-2030<br><br>Docketed Total: **$29,291.56**<br><br>Secured   Priority   Unsecured<br>                 $29,291.56<br>Case Number*<br>05-44481<br><br>**$29,291.56** | Modified Total: **$25,472.23**<br><br>Secured   Priority   Unsecured<br>                 $25,472.23<br>Case Number*<br>05-44640<br><br>**$25,472.23** |
| Claim: 11446<br>Date Filed: 07/27/2006<br>Docketed Total: $39,944.00<br>Filing Creditor Name and Address:<br>PETERSON TOOL CO<br>739 FESSLERS LN<br>NASHVILLE, TN 37210 | Claim Holder Name and Address<br>PETERSON TOOL CO<br>739 FESSLERS LN<br>NASHVILLE, TN 37210<br><br>Docketed Total: **$39,944.00**<br><br>Secured   Priority   Unsecured<br>                 $39,944.00<br>Case Number*<br>05-44640<br><br>**$39,944.00** | Modified Total: **$13,301.00**<br><br>Secured   Priority   Unsecured<br>                 $13,301.00<br>Case Number*<br>05-44640<br><br>**$13,301.00** |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 16602<br>Date Filed: 05/15/2007<br>Docketed Total: $16,679.09<br>Filing Creditor Name and Address:<br>PRECISION HARNESS INC EFT<br>340 TRANSFER DR STE A<br>INDIANAPOLIS, IN 46214 | PRECISION HARNESS INC EFT<br>340 TRANSFER DR STE A<br>INDIANAPOLIS, IN 46214 | Docketed Total: | | $16,679.09 | | Modified Total: | | $16,283.76 |
| | Case Number*<br>05-44481 | | | $16,679.09<br>$16,679.09 | Case Number*<br>05-44640 | | | $16,283.76<br>$16,283.76 |
| Claim: 9957<br>Date Filed: 07/19/2006<br>Docketed Total: $43,229.50<br>Filing Creditor Name and Address:<br>PREMACARE<br>ODDEN 1 MAILBOX 115<br>GRIMSTAD, 4891<br>NORWAY | PREMACARE<br>ODDEN 1 MAILBOX 115<br>GRIMSTAD, 4891<br>NORWAY | Docketed Total: | | $43,229.50 | | Modified Total: | | $18,456.85 |
| | Case Number*<br>05-44529 | | | $43,229.50<br>$43,229.50 | Case Number*<br>05-44507 | | | $18,456.85<br>$18,456.85 |
| Claim: 10624<br>Date Filed: 07/25/2006<br>Docketed Total: $511,659.39<br>Filing Creditor Name and Address:<br>QUANEX CORP<br>MACSTEEL<br>ONE JACKSON SQ STE 500<br>JACKSON, MI 49201 | QUANEX CORP<br>MACSTEEL<br>ONE JACKSON SQ STE 500<br>JACKSON, MI 49201 | Docketed Total: | | $511,659.39 | | Modified Total: | | $127,914.39 |
| | Case Number*<br>05-44481 | | | $511,659.39<br>$511,659.39 | Case Number*<br>05-44640 | | | $127,914.39<br>$127,914.39 |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**Claim: 833**
Date Filed: 11/23/2005
Docketed Total: $9,352.72
Filing Creditor Name and Address:
RAITHEL & CO GMBH
GOETHESTRASSE 6
WEISSENSTADT, 95163
GERMANY

Claim Holder Name and Address
RAITHEL & CO GMBH
GOETHESTRASSE 6
WEISSENSTADT, 95163
GERMANY

Case Number*
05-44481

Docketed Total: $9,352.72

| Secured | Priority | Unsecured |
|---|---|---|
| | | $9,352.72 |
| | | $9,352.72 |

Case Number*
05-44640

Modified Total: $5,288.78

| Secured | Priority | Unsecured |
|---|---|---|
| | | $5,288.78 |
| | | $5,288.78 |

**Claim: 10194**
Date Filed: 07/21/2006
Docketed Total: $15,361.12
Filing Creditor Name and Address:
RB & W CORPORATION EFT
5190 BRADCO BLVD
MISSISSAUGA, ON L4W 1G7
CANADA

Claim Holder Name and Address
RB & W CORPORATION EFT
5190 BRADCO BLVD
MISSISSAUGA, ON L4W 1G7
CANADA

Case Number*
05-44481

Docketed Total: $15,361.12

| Secured | Priority | Unsecured |
|---|---|---|
| | | $15,361.12 |
| | | $15,361.12 |

Case Number*
05-44640

Modified Total: $13,051.04

| Secured | Priority | Unsecured |
|---|---|---|
| | | $13,051.04 |
| | | $13,051.04 |

**Claim: 2243**
Date Filed: 03/10/2006
Docketed Total: $50,107.99
Filing Creditor Name and Address:
RIVERSIDE CLAIMS LLC AS
ASSIGNEE FOR LOWRY HOLDING
COMPANY INC DBA LOWRY
COMPUTER PRODUCTS
PO BOX 626 PLANETARIUM
STATION
NEW YORK, NY 10024

Claim Holder Name and Address
RIVERSIDE CLAIMS LLC AS
ASSIGNEE FOR LOWRY HOLDING
COMPANY INC DBA LOWRY
COMPUTER PRODUCTS
PO BOX 626 PLANETARIUM
STATION
NEW YORK, NY 10024

Case Number*
05-44481

Docketed Total: $50,107.99

| Secured | Priority | Unsecured |
|---|---|---|
| | | $50,107.99 |
| | | $50,107.99 |

Case Number*
05-44640

Modified Total: $45,943.30

| Secured | Priority | Unsecured |
|---|---|---|
| | | $45,943.30 |
| | | $45,943.30 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**Claim: 8862**
Date Filed: 06/30/2006
Docketed Total: $724,499.86
Filing Creditor Name and Address:
RIVERSIDE CLAIMS LLC AS
ASSIGNEE FOR MPS GROUP
PO BOX 626 PLANETARIUM
STATION
NEW YORK, NY 10024

Claim Holder Name and Address
RIVERSIDE CLAIMS LLC AS
ASSIGNEE FOR MPS GROUP
PO BOX 626 PLANETARIUM
STATION
NEW YORK, NY 10024

Docketed Total: $724,499.86

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $724,499.86 |
| | | | **$724,499.86** |

Modified Total: $716,457.80

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $716,457.80 |
| | | | **$716,457.80** |

**Claim: 15030**
Date Filed: 07/27/2006
Docketed Total: $31,425.99
Filing Creditor Name and Address:
SAEGERTOWN MANUFACTURING
CORP
SAEGERTON MFG CORP
ONE CRAWFORD ST
PO BOX 828
SAEGERTOWN, PA 16433

Claim Holder Name and Address
SAEGERTOWN MANUFACTURING
CORP
SAEGERTON MFG CORP
ONE CRAWFORD ST
PO BOX 828
SAEGERTOWN, PA 16433

Docketed Total: $31,425.99

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $31,425.99 |
| | | | **$31,425.99** |

Modified Total: $31,425.99

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $31,425.99 | | |
| | **$31,425.99** | | |

**Claim: 11263**
Date Filed: 07/27/2006
Docketed Total: $8,031.02
Filing Creditor Name and Address:
SAEGERTOWN MANUFACTURING
CORPORATION
ONE CRAWFORD ST
PO BOX 828
SAEGERTOWN, PA 16433

Claim Holder Name and Address
SAEGERTOWN MANUFACTURING
CORPORATION
ONE CRAWFORD ST
PO BOX 828
SAEGERTOWN, PA 16433

Docketed Total: $8,031.02

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $8,031.02 |
| | | | **$8,031.02** |

Modified Total: $8,031.02

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $8,031.02 |
| | | | **$8,031.02** |

*See Exhibit F for a listing of debtor entities by case number.

Page 29 of 36

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 3293**
Date Filed: 04/28/2006
Docketed Total: $33,851.52
Filing Creditor Name and Address:
SEALED AIR CORPORATION
19440 ARENTH AVE
CITY OF INDUSTRY, CA 91748

Claim Holder Name and Address
SEALED AIR CORPORATION
19440 ARENTH AVE
CITY OF INDUSTRY, CA 91748

Docketed Total:                        $33,851.52

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $33,851.52 |
| | | | $33,851.52 |

Modified Total:                        $8,727.25

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $8,727.25 |
| | | | $8,727.25 |

**Claim: 15692**
Date Filed: 07/31/2006
Docketed Total: $12,209.13
Filing Creditor Name and Address:
SIEMENS BUILDING
TECHNOLOGIES INC
FAGELHABER LLC
55 E MONROE ST 40TH FL
CHICAGO, IL 60603

Claim Holder Name and Address
SIEMENS BUILDING TECHNOLOGIES
INC
FAGELHABER LLC
55 E MONROE ST 40TH FL
CHICAGO, IL 60603

Docketed Total:                        $12,209.13

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $12,209.13 | | |
| | $12,209.13 | | |

Modified Total:                        $5,506.56

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $5,506.56 |
| | | | $5,506.56 |

**Claim: 14688**
Date Filed: 07/31/2006
Docketed Total: $11,218.89
Filing Creditor Name and Address:
SIERRA LIQUIDITY FUND LLC
ASSIGNEE ENGEL MACHINERY
INC ASSIGNOR
2699 WHITE RD STE 255
IRVINE, CA 92614

Claim Holder Name and Address
SIERRA LIQUIDITY FUND LLC
ASSIGNEE ENGEL MACHINERY INC
ASSIGNOR
2699 WHITE RD STE 255
IRVINE, CA 92614

Docketed Total:                        $11,218.89

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $11,218.89 |
| | | | $11,218.89 |

Modified Total:                        $10,488.14

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44624 | | $892.50 | |
| 05-44640 | | | $9,595.64 |
| | | | $10,488.14 |

*See Exhibit F for a listing of debtor entities by case number.

Page 30 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

### CLAIM TO BE MODIFIED / CLAIM AS DOCKETED

**Claim: 5856**
Date Filed: 05/15/2006
Docketed Total: $226,825.26
Filing Creditor Name and Address:
SUPPLY SOLUTION INC ITS
SUCCESSOR TRADEBEAM INC
TRADEBEAM INC
TWO WATERS PARK DR STE 200
SAN MATEO, CA 94403
Case Number*: 05-44567

Docketed Total: $226,825.26

| Secured | Priority | Unsecured |
|---|---|---|
| | | $226,825.26 |
| | | **$226,825.26** |

**CLAIM AS MODIFIED**

Claim Holder Name and Address:
SUPPLY SOLUTION INC ITS
SUCCESSOR TRADEBEAM INC
TRADEBEAM INC
TWO WATERS PARK DR STE 200
SAN MATEO, CA 94403
Case Number*: 05-44640, 05-44567

Modified Total: $226,825.26

| Secured | Priority | Unsecured |
|---|---|---|
| | | $222,426.00 |
| | | $4,399.26 |
| | | **$226,825.26** |

---

**Claim: 7180**
Date Filed: 05/31/2006
Docketed Total: $1,458.32
Filing Creditor Name and Address:
TAPESWITCH CORP OF AMERICA
100 SCHMITT BLVD
FARMINGDALE, NY 11735
Case Number*: 05-44481

Docketed Total: $1,458.32

| Secured | Priority | Unsecured |
|---|---|---|
| | | $1,458.32 |
| | | **$1,458.32** |

**CLAIM AS MODIFIED**

Claim Holder Name and Address:
TAPESWITCH CORP OF AMERICA
100 SCHMITT BLVD
FARMINGDALE, NY 11735
Case Number*: 05-44640

Modified Total: $1,458.32

| Secured | Priority | Unsecured |
|---|---|---|
| | | $1,458.32 |
| | | **$1,458.32** |

---

**Claim: 2563**
Date Filed: 04/05/2006
Docketed Total: $92,338.09
Filing Creditor Name and Address:
HAIN CAPITAL HOLDINGS LLC
301 RTE 17 6TH FL
RUTHERFORD, NJ 07070
THE CROWN GROUP
INCORPORATED
2111 WALTER REUTHER DR
WARREN, MI 48091
Case Number*: 05-44481

Docketed Total: $92,338.09

| Secured | Priority | Unsecured |
|---|---|---|
| | | $92,338.09 |
| | | **$92,338.09** |

**CLAIM AS MODIFIED**

Claim Holder Name and Address:
HAIN CAPITAL HOLDINGS LLC
301 RTE 17 6TH FL
RUTHERFORD, NJ 07070
Case Number*: 05-44640

Modified Total: $84,558.77

| Secured | Priority | Unsecured |
|---|---|---|
| | | $84,558.77 |
| | | **$84,558.77** |

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

### Claim 16555

**CLAIM TO BE MODIFIED**

Claim: 16555
Date Filed: 02/26/2007
Docketed Total: $48,067.68
Filing Creditor Name and Address:
THE FURUKAWA ELECTRIC CO LTD
600 HANSEN WY
PALO ALTO, CA 94304-1043

**CLAIM AS DOCKETED**

Claim Holder Name and Address:
THE FURUKAWA ELECTRIC CO LTD
SQUIRE SANDERS & DEMPSEY LLP
600 HANSEN WY
PALO ALTO, CA 94304-1043

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $48,067.68 |
| Docketed Total: | | | $48,067.68 |

**CLAIM AS MODIFIED**

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $32,356.14 |
| Modified Total: | | | $32,356.14 |

### Claim 6613

**CLAIM TO BE MODIFIED**

Claim: 6613
Date Filed: 05/22/2006
Docketed Total: $40,360.73
Filing Creditor Name and Address:
THERMALEX INC
2758 GUNTER PK DR W
MONTGOMERY, AL 36109

**CLAIM AS DOCKETED**

Claim Holder Name and Address:
THERMALEX INC
2758 GUNTER PK DR W
MONTGOMERY, AL 36109

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $40,360.73 |
| Docketed Total: | | | $40,360.73 |

**CLAIM AS MODIFIED**

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $31,118.59 |
| Modified Total: | | | $31,118.59 |

### Claim 8523

**CLAIM TO BE MODIFIED**

Claim: 8523
Date Filed: 06/26/2006
Docketed Total: $56,537.23
Filing Creditor Name and Address:
TWIN CORPORATION
WINEGARDEN HALEY LINDHOLM & ROBERTSON PLC
G 9460 S SAGINAW ST STE A
GRAND BLANC, MI 48439

**CLAIM AS DOCKETED**

Claim Holder Name and Address:
TWIN CORPORATION
WINEGARDEN HALEY LINDHOLM &
ROBERTSON PLC
G 9460 S SAGINAW ST STE A
GRAND BLANC, MI 48439

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $56,537.23 |
| Docketed Total: | | | $56,537.23 |

**CLAIM AS MODIFIED**

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44567 | | | $1,368.00 |
| 05-44640 | | | $25,186.67 |
| Modified Total: | | | $26,554.67 |

*See Exhibit F for a listing of debtor entities by case number.

Page 32 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 12396<br>Date Filed: 07/28/2006<br>Docketed Total: $148,325.65<br>Filing Creditor Name and Address:<br>TYZ ALL PLASTICS INC<br>120 EXPRESS ST STE 1<br>PLAINVIEW, NY 11803 | Claim Holder Name and Address<br>LONGACRE MASTER FUND LTD<br>810 SEVENTH AVE 22ND FL<br>NEW YORK, NY 10019<br><br>Docketed Total: $148,325.65<br><br>Case Number\*    Secured    Priority    Unsecured<br>05-44640                                        $148,325.65<br>                                                        $148,325.65 | Claim Holder Name and Address<br>LONGACRE MASTER FUND LTD<br>810 SEVENTH AVE 22ND FL<br>NEW YORK, NY 10019<br><br>Modified Total: $143,989.26<br><br>Case Number\*    Secured    Priority    Unsecured<br>05-44640                                        $143,989.26<br>                                                        $143,989.26 |
| Claim: 1744<br>Date Filed: 02/01/2006<br>Docketed Total: $70,521.92<br>Filing Creditor Name and Address:<br>UNITED ELECTRONICS CORP<br>5321 N PEARL ST<br>ROSEMONT, IL 60018 | Claim Holder Name and Address<br>UNITED ELECTRONICS CORP<br>5321 N PEARL ST<br>ROSEMONT, IL 60018<br><br>Docketed Total: $70,521.92<br><br>Case Number\*    Secured    Priority    Unsecured<br>05-44567                                        $70,521.92<br>                                                        $70,521.92 | Modified Total: $64,403.80<br><br>Case Number\*    Secured    Priority    Unsecured<br>05-44567                                        $64,403.80<br>                                                        $64,403.80 |
| Claim: 1098<br>Date Filed: 12/09/2005<br>Docketed Total: $54,912.75<br>Filing Creditor Name and Address:<br>UNIVERSAL METAL PRODUCTS INC<br>29980 LAKELAND BLVD<br>PO BOX 130<br>WICKLIFFE, OH 44092-0130 | Claim Holder Name and Address<br>UNIVERSAL METAL PRODUCTS INC<br>29980 LAKELAND BLVD<br>PO BOX 130<br>WICKLIFFE, OH 44092-0130<br><br>Docketed Total: $54,912.75<br><br>Case Number\*    Secured    Priority    Unsecured<br>05-44481                                        $54,912.75<br>                                                        $54,912.75 | Modified Total: $47,481.64<br><br>Case Number\*    Secured    Priority    Unsecured<br>05-44640                                        $47,481.64<br>                                                        $47,481.64 |

\*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED / CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Claim Holder Name and Address | Secured | Priority | Unsecured | | | Secured | Priority | Unsecured | |
| Claim: 2069<br>Date Filed: 02/21/2006<br>Docketed Total: $14,704.15<br>Filing Creditor Name and Address:<br>UNIVERSAL METAL PRODUCTS INC<br>29980 LAKELAND BLVD<br>PO BOX 130<br>WICKLIFFE, OH 44092-0130<br><br>Claim Holder Name and Address<br>UNIVERSAL METAL PRODUCTS INC<br>29980 LAKELAND BLVD<br>PO BOX 130<br>WICKLIFFE, OH 44092-0130 | | | | Docketed Total: $14,704.15 | | | | | Modified Total: $14,704.15 |
| Case Number*<br>05-44481 | $77,637.34 | | $14,704.15 | $14,704.15 | Case Number*<br>05-44640 | | | $14,704.15 | $14,704.15 |
| | $77,637.34 | | $14,704.15 | | | | | $14,704.15 | |
| Claim: 16249<br>Date Filed: 08/22/2006<br>Docketed Total: $79,765.09<br>Filing Creditor Name and Address:<br>VALIANT TOOL & MOLD INC<br>KERR RUSSELL & WEBER PLC<br>500 WOODWARD AVE STE 2500<br>DETROIT, MI 48226<br><br>Claim Holder Name and Address<br>AMROC INVESTMENTS LLC<br>535 MADISON AVE 15TH FL<br>NEW YORK, NY 10022 | | | | Docketed Total: $79,765.09 | | | | | Modified Total: $65,985.78 |
| Case Number*<br>05-44640 | $77,637.34 | | $2,127.75 | $2,127.75 | Case Number*<br>05-44640 | | | $65,985.78 | $65,985.78 |
| | $77,637.34 | | $2,127.75 | | | | | $65,985.78 | |
| Claim: 1760<br>Date Filed: 02/03/2006<br>Docketed Total: $1,215.00<br>Filing Creditor Name and Address:<br>WHITESIDE COMMUNICATION<br>MANAGEMENT<br>1938 BURDETTE<br>FERNDALE, MI 48220<br><br>Claim Holder Name and Address<br>WHITESIDE COMMUNICATION<br>MANAGEMENT<br>1938 BURDETTE<br>FERNDALE, MI 48220 | | | | Docketed Total: $1,215.00 | | | | | Modified Total: $1,215.00 |
| Case Number*<br>05-44481 | | | $1,215.00 | $1,215.00 | Case Number*<br>05-44640 | | | $1,215.00 | $1,215.00 |
| | | | $1,215.00 | | | | | $1,215.00 | |

*See Exhibit F for a listing of debtor entities by case number.

Page 34 of 36

**In re Delphi Corporation, et al.,**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 7652<br>Date Filed: 06/08/2006<br>Docketed Total: $61,254.66<br>Filing Creditor Name and Address:<br>WILLOW HILL INDUSTRIES LLC<br>37611 EUCLID AVE<br>WILLOUGHBY, OH 44094 | Claim Holder Name and Address<br>WILLOW HILL INDUSTRIES LLC<br>37611 EUCLID AVE<br>WILLOUGHBY, OH 44094<br><br>Secured<br><br>Docketed Total:  $61,254.66<br>Priority<br>Unsecured  $61,254.66<br>$61,254.66<br>Case Number*<br>05-44481 | Secured<br><br>Modified Total:  $49,792.47<br>Priority<br>Unsecured  $49,792.47<br>$49,792.47<br>Case Number*<br>05-44640 |
| Claim: 9528<br>Date Filed: 07/14/2006<br>Docketed Total:  $33,270.43<br>Filing Creditor Name and Address:<br>WIX FILTRATION PRODUCTS<br>EUROPE LTD FKA DANA SPICER<br>EUROPE LTD<br>C O AFFINIA GROUP INC<br>ATTN C MENDELJIAN<br>1101 TECHNOLOGY DR 100<br>ANN ARBOR, MI 48108 | Claim Holder Name and Address<br>WIX FILTRATION PRODUCTS<br>EUROPE LTD FKA DANA SPICER<br>EUROPE LTD<br>C O AFFINIA GROUP INC<br>ATTN C MENDELJIAN<br>1101 TECHNOLOGY DR 100<br>ANN ARBOR, MI 48108<br><br>Secured<br><br>Docketed Total:  $33,270.43<br>Priority<br>Unsecured  $33,270.43<br>$33,270.43<br>Case Number*<br>05-44481 | Secured<br><br>Modified Total:  $30,470.47<br>Priority<br>Unsecured  $30,470.47<br>$30,470.47<br>Case Number*<br>05-44640 |
| Claim: 9943<br>Date Filed: 07/05/2006<br>Docketed Total:  $11,002.13<br>Filing Creditor Name and Address:<br>XPEDX<br>4510 READING RD<br>PO BOX 29460<br>CINCINNATI, OH 45229-0460 | Claim Holder Name and Address<br>XPEDX<br>4510 READING RD<br>PO BOX 29460<br>CINCINNATI, OH 45229-0460<br><br>Secured<br><br>Docketed Total:  $11,002.13<br>Priority<br>Unsecured  $11,002.13<br>$11,002.13<br>Case Number*<br>05-44481 | Secured<br><br>Modified Total:  $9,291.53<br>Priority<br>Unsecured  $9,291.53<br>$9,291.53<br>Case Number*<br>05-44640 |

*See Exhibit F for a listing of debtor entities by case number.

Page 35 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT D-1 – CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 4293<br>Date Filed:   05/01/2006<br>Docketed Total:    $98,455.53<br>Filing Creditor Name and Address:<br>XPEDX A DIV OF INTL PAPER<br>1059 W RIDGE RD<br>ROCHESTER, NY 14615 | XPEDX A DIV OF INTL PAPER<br>1059 W RIDGE RD<br>ROCHESTER, NY 14615 | | | Docketed Total:   $98,455.53 | | | Modified Total:   $98,455.53 | |
| | Case Number*<br>05-44481 | | | $98,455.53<br>$98,455.53 | Case Number*<br>05-44640 | | | $98,455.53<br>$98,455.53 |

Total Claims to be Modified: 106

Total Amount as Docketed:    $18,984,134.31

Total Amount as Modified:    $12,373,079.71

*See Exhibit F for a listing of debtor entities by case number.

Page 36 of 36

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s Oue$ion

## EXHIBIT D-U-TAX CLAIMS SJ BnfÉCT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 7106**
Date Filed: 05/30/2006
Docketed Total: $151.44
Filing Creditor Name and Address:
BARTHOLOMEW COUNTY IN
TREASURER
PO BOX 1986
COLUMBUS, IN 47202

Claim Holder Name and Address
BARTHOLOMEW COUNTY IN
BARTHOLOMEW COUNTY IN
TREASURER
PO BOX 1986
COLUMBUS, IN 47202

Docketed Total: 9151.44

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | $151.44 | |
| | | 9151.44 | |

Modified Total: 9171.48

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | $131.48 | |
| | | 9171.48 | |

---

**Claim: 1282**
Date Filed: 12/27/2005
Docketed Total: $3,675.75
Filing Creditor Name and Address:
BROWNSVILLE ISD
LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
1949 SOUTH IH 35
PO BOX 17428
AUSTIN, TX 78760-7428

Claim Holder Name and Address
BROWNSVILLE ISD
LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
1949 SOUTH IH 35
PO BOX 17428
AUSTIN, TX 78760-7428

Docketed Total: 97,235.35

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $3,675.75 | | |
| | 97,235.35 | | |

Modified Total: 91,816.35

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $2,819.75 | | |
| | 91,816.35 | | |

---

**Claim: 2003**
Date Filed: 02/14/2006
Docketed Total: $8,872.60
Filing Creditor Name and Address:
CARROLLTON FARMERS BRANCH
INDEPENDENT SCHOOL
DISTRICT
LAW OFFICES OF ROBERT E
LUNA PC
4411 N CENTRAL EXPRESSWAY
DALLAS, TX 75205

Claim Holder Name and Address
CARROLLTON FARMERS BRANCH
INDEPENDENT SCHOOL DISTRICT
LAW OFFICES OF ROBERT E LUNA
PC
4411 N CENTRAL EXPRESSWAY
DALLAS, TX 75205

Docketed Total: 98,831J20

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $8,872.60 | | |
| | 98,831J20 | | |

Modified Total: 92,802.78

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $6,806.38 | | |
| | 92,802.78 | | |

*See Exhibit F for a listing of debtor entities by case number.

Page 1 of 6

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Ob niuj s Claib s Oue$ion

## EXHIBIT D-U-TAX CLAIMS SJ BnECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 2005<br>Date Filed:  02/14/2006<br>Docketed Total:  $356.05<br>Filing Creditor Name and Address:<br>CARROLLTON FARMERS BRANCH<br>INDEPENDENT SCHOOL<br>DISTRICT<br>LAW OFFICES OF ROBERT E<br>LUNA PC<br>4411 N CENTRAL EXPRESSWAY<br>DALLAS, TX 75205 | Claim Holder Name and Address<br>CARROLLTON FARMERS BRANCH<br>INDEPENDENT SCHOOL DISTRICT<br>LAW OFFICES OF ROBERT E LUNA<br>PC<br>4411 N CENTRAL EXPRESSWAY<br>DALLAS, TX 75205<br><br>Case Number*: 05-44640<br>Docketed Total: 9752.05<br>Secured: $356.05<br>Priority:<br>Unsecured:<br>9752.05 | Case Number*: 05-44640<br>Modified Total: 9137.17<br>Secured: $273.13<br>Priority:<br>Unsecured:<br>9137.17 |
| Claim: 511<br>Date Filed:  11/14/2005<br>Docketed Total:  $1,018.83<br>Filing Creditor Name and Address:<br>COLLIN COUNTY TAX<br>777 E 15TH ST<br>PLANO, TX 75074 | Claim Holder Name and Address<br>COLLIN COUNTY TAX<br>777 E 15TH ST<br>PLANO, TX 75074<br><br>Case Number*: 05-44481<br>Docketed Total: 91,018.87<br>Secured: $1,018.83<br>Priority:<br>Unsecured:<br>91,018.87 | Case Number*: 05-44640<br>Modified Total: 9381.53<br>Secured: $781.57<br>Priority:<br>Unsecured:<br>9381.53 |
| Claim: 2269<br>Date Filed:  03/13/2006<br>Docketed Total:  $264.13<br>Filing Creditor Name and Address:<br>COUNTY OF COMAL<br>MCCREARY VESELKA BRAGG &<br>ALLEN PC<br>5929 BALCONES DR STE 200<br>PO BOX 26990<br>AUSTIN, TX 78755 | Claim Holder Name and Address<br>COUNTY OF COMAL<br>MCCREARY VESELKA BRAGG &<br>ALLEN PC<br>5929 BALCONES DR STE 200<br>PO BOX 26990<br>AUSTIN, TX 78755<br><br>Case Number*: 05-44481<br>Docketed Total: 9124.17<br>Secured: $264.13<br>Priority:<br>Unsecured:<br>9124.17 | Case Number*: 05-44640<br>Modified Total: 9101I21<br>Secured: $202.62<br>Priority:<br>Unsecured:<br>9101I2U |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s Oue$Sion

### EXHIBIT D-U–TAX CLAIMS SJ BnÉCT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 2270**
Date Filed: 03/13/2006
Docketed Total:    $335.36
Filing Creditor Name and Address:
COUNTY OF DENTON
5929 BALCONES DR STE 200
PO BOX 26990
AUSTIN, TX 78755

Claim Holder Name and Address
COUNTY OF DENTON CITY OF
SANGER
MCCREARY VESELKA BRAGG &
ALLEN PC
5929 BALCONES DR STE 200
PO BOX 26990
AUSTIN, TX 78755

Docketed Total:    9775.72

| Secured | Priority | Unsecured |
|---|---|---|
| $335.36 | | |
| **9775.72** | | |

Case Number*
05-44481

Modified Total:    9UU4.04

| Secured | Priority | Unsecured |
|---|---|---|
| $224.04 | | |
| **9UU4.04** | | |

Case Number*
05-44640

---

**Claim: 2271**
Date Filed: 03/13/2006
Docketed Total:    $223.15
Filing Creditor Name and Address:
COUNTY OF HAYS
MCCREARY VESELKA BRAGG &
ALLEN PC
5929 BALCONES DR STE 200
PO BOX 26990
AUSTIN, TX 78755

Claim Holder Name and Address
COUNTY OF HAYS
MCCREARY VESELKA BRAGG &
ALLEN PC
5929 BALCONES DR STE 200
PO BOX 26990
AUSTIN, TX 78755

Docketed Total:    9U7.15

| Secured | Priority | Unsecured |
|---|---|---|
| $223.15 | | |
| **9U7.15** | | |

Case Number*
05-44481

Modified Total:    9131.18

| Secured | Priority | Unsecured |
|---|---|---|
| $171.18 | | |
| **9131.18** | | |

Case Number*
05-44640

---

**Claim: 3619**
Date Filed: 05/01/2006
Docketed Total:    $361.26
Filing Creditor Name and Address:
DUBOIS COUNTY IN
DUBOIS COUNTY TREASURER
1 COURTHOUSE SQ
JASPER, IN 47546

Claim Holder Name and Address
DUBOIS COUNTY IN
DUBOIS COUNTY TREASURER
1 COURTHOUSE SQ
JASPER, IN 47546

Docketed Total:    9721.12

| Secured | Priority | Unsecured |
|---|---|---|
| $361.26 | | |
| **9721.12** | | |

Case Number*
05-44640

Modified Total:    9J33.14

| Secured | Priority | Unsecured |
|---|---|---|
| $277.14 | | |
| **9J33.14** | | |

Case Number*
05-44640

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Ob niuj s Claib s Oue$ion

**EXHIBIT D-U–TAX CLAIMS SJ BnÉCT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|

**Claim: 15808**
Date Filed: 08/03/2006
Docketed Total:   $300,836.22
Filing Creditor Name and Address:
FRANKLIN COUNTY OHIO
TREASURER
373 S HIGH ST 17TH FL
COLUMBUS, OH 43215

Claim Holder Name and Address
FRANKLIN COUNTY OHIO
TREASURER
373 S HIGH ST 17TH FL
COLUMBUS, OH 43215

Docketed Total:   9700,872.1U

| Secured | Priority | Unsecured |
|---|---|---|
| $300,836.22 | | 9700,872.1U |
| 9700,872.1U | | |

Case Number*
05-44481

Modified Total:   9120,424.12

| Secured | Priority | Unsecured |
|---|---|---|
| $260,464.26 | | 9120,424.12 |
| 9120,424.12 | | |

Case Number*
05-44640

---

**Claim: 2297**
Date Filed: 03/15/2006
Docketed Total:   $40,151.05
Filing Creditor Name and Address:
HENRY COUNTY TREASURER
101 S MAIN ST
NEW CASTLE, IN 47362

Claim Holder Name and Address
HENRY COUNTY TREASURER
101 S MAIN ST
NEW CASTLE, IN 47362

Docketed Total:   940,151.05

| Secured | Priority | Unsecured |
|---|---|---|
| $40,151.05 | | 940,151.05 |
| 940,151.05 | | |

Case Number*
05-44481

Modified Total:   913,420.12

| Secured | Priority | Unsecured |
|---|---|---|
| $27,460.26 | | 913,420.12 |
| 913,420.12 | | |

Case Number*
05-44640

---

**Claim: 16506**
Date Filed: 02/02/2007
Docketed Total:   $7,146,906.58
Filing Creditor Name and Address:
HOWARD COUNTY INDIANA
BARNES & THORNBURG LLP
11 SOUTH MERIDIAN ST
INDIANAPOLIS, IN 46204

Claim Holder Name and Address
HOWARD COUNTY INDIANA
BARNES & THORNBURG LLP
11 SOUTH MERIDIAN ST
INDIANAPOLIS, IN 46204

Docketed Total:   93,142,602.58

| Secured | Priority | Unsecured |
|---|---|---|
| $2,069,991.66 | $5,076,914.92 | 93,142,602.58 |
| 91,026,661.22 | 95,032,614.6U | |

Case Number*
05-44640

Modified Total:   92,463,163.73

| Secured | Priority | Unsecured |
|---|---|---|
| $1,881,810.60 | $4,615,386.77 | 92,463,163.73 |
| 91,881,810.20 | 94,215,782.33 | |

Case Number*
05-44640

*See Exhibit F for a listing of debtor entities by case number.

Nineteenth Ob niuj s Claib s Oue$Sion

## EXHIBIT D-U-TAX CLAIMS SJ BnECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 8544<br>Date Filed: 06/26/2006<br>Docketed Total: $132,479.24<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476 | Claim Holder Name and Address<br>MONTGOMERY COUNTY<br>TREASURER<br>451 W THIRD ST<br>DAYTON, OH 45422-0476<br><br>Case Number* 05-44481<br>Secured $132,479.24  Priority ___  Unsecured ___<br>Docketed Total: 917Ll436.U4<br>917Ll436.U4 | Case Number* 05-44640<br>Secured $32,423.82  Priority ___  Unsecured ___<br>Modified Total: 971Ll4l7.8l<br>971Ll4l7.8U |
| Claim: 3784<br>Date Filed: 05/01/2006<br>Docketed Total: $262.76<br>Filing Creditor Name and Address:<br>NACOGDOCHES COUNTY CAD<br>220 W HOSPITAL ST<br>NACOGDOCHES, TX 75963-1668 | Claim Holder Name and Address<br>NACOGDOCHES COUNTY CAD<br>220 W HOSPITAL ST<br>NACOGDOCHES, TX 75963-1668<br><br>Case Number* 05-44640<br>Secured $262.76  Priority ___  Unsecured ___<br>Docketed Total: 9l2Ll32<br>9l2Ll32 | Case Number* 05-44640<br>Secured $232.12  Priority ___  Unsecured ___<br>Modified Total: 9l7UlU<br>9l7UlU |
| Claim: 8768<br>Date Filed: 06/29/2006<br>Docketed Total: $62,517.67<br>Filing Creditor Name and Address:<br>SPARTANBURG CO TAX<br>COLLECTOR<br>DRAWER 3060<br>SPARTANBURG, SC 29304 | Claim Holder Name and Address<br>SPARTANBURG CO TAX<br>COLLECTOR<br>DRAWER 3060<br>SPARTANBURG, SC 29304<br><br>Case Number* 05-44481<br>Secured $62,517.67  Priority ___  Unsecured ___<br>Docketed Total: 92Ll5l3.23<br>92Ll5l3.23 | Case Number* 05-44539<br>05-44640<br>Secured $47,374.63  Priority ___  Unsecured ___<br>$5,542.40<br>Modified Total: 95Ll6l3.07<br>95Ll6l3.07 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s Oue$Sion

## EXHIBIT D-U--TAX CLAIMS SJ BnÉCT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |
| Claim: 7846 | | | | | | | | |
| Date Filed: 06/12/2006 | UNITED INDEPENDENT SCHOOL | | | | | | | |
| Dockted Total:   $30,158.42 | DISTRICT | | | | | | | |
| Filing Creditor Name and Address: | 401 EAST HILLSIDE RD 2ND FLOOR | | | | | | | |
| UNITED INDEPENDENT SCHOOL | LAREDO, TX 78041 | | | | | | | |
| DISTRICT | | | | | | | | |
| 401 EAST HILLSIDE RD 2ND | Case Number* | Secured | Priority | Unsecured | Case Number* | Secured | Priority | Unsecured |
| FLOOR | 05-44481 | $30,158.42 | | 970,158.4U | 05-44640 | $26,688.87 | | 912,288.83 |
| LAREDO, TX 78041 | | | Docketed Total: | 970,158.4U | | | Modified Total: | 912,288.83 |
| Claim: 4171 | | | | | | | | |
| Date Filed: 05/01/2006 | WABASH COUNTY IN | | | | | | | |
| Dockted Total:   $22.08 | WABASH COUNTY TREASURER | | | | | | | |
| Filing Creditor Name and Address: | COURTHOUSE 1 W HILL ST | | | | | | | |
| WABASH COUNTY IN | STE 4B | | | | | | | |
| WABASH COUNTY TREASURER | WABASH, IN 46992 | | | | | | | |
| COURTHOUSE 1 W HILL ST | | | | | | | | |
| STE 4B | Case Number* | Secured | Priority | Unsecured | Case Number* | Secured | Priority | Unsecured |
| WABASH, IN 46992 | 05-44640 | $22.08 | | 9LL08 | 05-44640 | $16.94 | | 912.64 |
| | | | Docketed Total: | 9LL08 | | | Modified Total: | 912.64 |
| Claim: 2077 | | | | | | | | |
| Date Filed: 02/21/2006 | WICHITA COUNTY | | | | | | | |
| Dockted Total:   $18,530.81 | PERDUE BRANDON FIELDER | | | | | | | |
| Filing Creditor Name and Address: | COLLINS & MOTT LLP | | | | | | | |
| WICHITA COUNTY | PO BOX 8188 | | | | | | | |
| PERDUE BRANDON FIELDER | WICHITA FALLS, TX 76307 | | | | | | | |
| COLLINS & MOTT LLP | | | | | | | | |
| PO BOX 8188 | Case Number* | Secured | Priority | Unsecured | Case Number* | Secured | Priority | Unsecured |
| WICHITA FALLS, TX 76307 | 05-44640 | $18,530.81 | | 918,570.81 | 05-44640 | $17,318.51 | | 913,718.51 |
| | | | Docketed Total: | 918,570.81 | | | Modified Total: | 913,718.51 |

Total Claib s to ue Modified: 18
Total Ab oj nt as DoSketed:   93,343,1U7.40
Total Ab oj nt as Modified:   92,6t2,402.43

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-3 – MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 2654<br>Date Filed: 04/14/2006<br>Docketed Total: $96,201.43<br>Filing Creditor Name and Address:<br>AMERICHEM INC<br>225 BROADWAY E<br>CUYAHOGA FALLS, OH 44221 | Claim Holder Name and Address:<br>AMERICHEM INC<br>225 BROADWAY E<br>CUYAHOGA FALLS, OH 44221<br><br>Case Number*: 05-44481<br>Secured —   Priority —   Unsecured $96,201.43<br>Docketed Total: $96,201.43    $96,201.43 | Case Number*: 05-44640<br>Secured —   Priority $6,797.43   Unsecured $50,893.49<br>Modified Total: $57,690.92    $6,797.43   $50,893.49 |
| Claim: 12346<br>Date Filed: 07/28/2006<br>Docketed Total: $215,079.82<br>Filing Creditor Name and Address:<br>ANGELL DEMMEL NORTH AMERICA INC<br>1516 STANLEY AVE<br>DAYTON, OH 45404 | Claim Holder Name and Address:<br>LONGACRE MASTER FUND LTD<br>810 SEVENTH AVE 22ND FL<br>NEW YORK, NY 10019<br><br>Case Number*: 05-44640<br>Secured —   Priority $46,948.73   Unsecured $168,131.09<br>Docketed Total: $215,079.82    $46,948.73   $168,131.09 | Case Number*: 05-44640<br>Secured —   Priority $13,807.69   Unsecured $179,538.87<br>Modified Total: $193,346.56    $13,807.69   $179,538.87 |
| Claim: 14296<br>Date Filed: 07/31/2006<br>Docketed Total: $62,288.96<br>Filing Creditor Name and Address:<br>ASSEMBLEON AMERICA INC<br>KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP<br>599 LEXINGTON AVE<br>NEW YORK, NY 10022 | Claim Holder Name and Address:<br>LATIGO MASTER FUND LTD<br>590 MADISON AVE 9TH FL<br>NEW YORK, NY 10022<br><br>Case Number*: 05-44481<br>Secured —   Priority —   Unsecured $62,288.96<br>Docketed Total: $62,288.96    $62,288.96 | Case Number*: 05-44640<br>Secured —   Priority $13,170.09   Unsecured $49,118.87<br>Modified Total: $62,288.96    $13,170.09   $49,118.87 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT D-3 - MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured | |
| **Claim: 6670** Date Filed: 05/23/2006 Docketed Total: $293,357.43 Filing Creditor Name and Address: EMHART TEKNOLOGIES LLC 49201 GRATIOT AVE CHESTERFIELD, MI 48051 | EMHART TEKNOLOGIES LLC 49201 GRATIOT AVE CHESTERFIELD, MI 48051 | | | | | | Modified Total: | | $188,345.08 |
| | | | Docketed Total: | $293,357.43 | | | | | |
| | Case Number* 05-44481 | | | Unsecured $293,357.43 | Case Number* 05-44640 05-44567 | | Priority $27,128.77 | Unsecured $150,416.31 $10,800.00 | |
| | | | | **$293,357.43** | | | **$27,128.77** | **$161,216.31** | |
| **Claim: 10396** Date Filed: 07/24/2006 Docketed Total: $126,239.42 Filing Creditor Name and Address: GLEASON WORKS THE 1000 UNIVERSITY AVE ROCHESTER, NY 14607-1239 | Claim Holder Name and Address HAIN CAPITAL HOLDINGS LLC 301 RTE 17 6TH FL RUTHERFORD, NJ 07070 | | | | | | Modified Total: | | $125,398.20 |
| | | | Docketed Total: | $126,239.42 | | | | | |
| | Case Number* 05-44481 | Secured | Priority $27,955.00 | Unsecured $98,284.42 | Case Number* 05-44640 | Secured | Priority $27,955.00 | Unsecured $97,443.20 | |
| | | | **$27,955.00** | **$98,284.42** | | | **$27,955.00** | **$97,443.20** | |
| **Claim: 10421** Date Filed: 07/24/2006 Docketed Total: $53,587.08 Filing Creditor Name and Address: ITW FILTRATION PRODUCTS 18531 SPRING CREEK DR TINLEY PK, IL 60477 | Claim Holder Name and Address ITW FILTRATION PRODUCTS 18531 SPRING CREEK DR TINLEY PK, IL 60477 | | | | | | Modified Total: | | $42,486.78 |
| | | | Docketed Total: | $53,587.08 | | | | | |
| | Case Number* 05-44481 | Secured | Priority $26,219.78 | Unsecured $27,367.30 | Case Number* 05-44640 | Secured | Priority $2,190.61 | Unsecured $40,296.17 | |
| | | | **$26,219.78** | **$27,367.30** | | | **$2,190.61** | **$40,296.17** | |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-3 - MODIFIED CLAIMS ASSERTING RECLAMATION

### CLAIM TO BE MODIFIED

**Claim: 13454**
Date Filed: 07/31/2006
Docketed Total: $225,224.02
Filing Creditor Name and Address:
LAKE ERIE PRODUCTS INC
MCDONALD HOPKINS CO LPA
600 SUPERIOR AVE E STE 2100
CLEVELAND, OH 44114

### CLAIM AS DOCKETED

Claim Holder Name and Address:
LAKE ERIE PRODUCTS INC
MCDONALD HOPKINS CO LPA
600 SUPERIOR AVE E STE 2100
CLEVELAND, OH 44114

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $225,224.02 |
| Docketed Total: | | | $225,224.02 |
| | | | $225,224.02 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | $14,082.57 | $19,783.67 |
| Modified Total: | | | $33,866.24 |
| | | $14,082.57 | $19,783.67 |

---

### CLAIM TO BE MODIFIED

**Claim: 7816**
Date Filed: 06/12/2006
Docketed Total: $351,868.14
Filing Creditor Name and Address:
MADISON INVESTMENT TRUST
SERIES 38
MNP CORPORATION EFT
44225 UTICA RD
PO BOX 189002
UTICA, MI 48318-9002

### CLAIM AS DOCKETED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $351,868.14 |
| Docketed Total: | | | $351,868.14 |
| | | | $351,868.14 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | $25,163.47 | $35,138.35 |
| Modified Total: | | | $60,301.82 |
| | | $25,163.47 | $35,138.35 |

---

### CLAIM TO BE MODIFIED

**Claim: 2229**
Date Filed: 03/09/2006
Docketed Total: $360,413.11
Filing Creditor Name and Address:
NICHICON AMERICA
CORPORATION
CO GARY D SANTELLA
203 N LASALLE ST STE 2500
CHICAGO, IL 60601

### CLAIM AS DOCKETED

Claim Holder Name and Address:
SPCP GROUP LLC
2 GREENWICH PLZ 1ST FL
GREENWICH, CT 06830

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $360,413.11 |
| Docketed Total: | | | $360,413.11 |
| | | | $360,413.11 |

### CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44567 | | | $11,497.88 |
| 05-44640 | | $5,052.44 | $329,423.01 |
| Modified Total: | | | $345,973.33 |
| | | $5,052.44 | $340,920.89 |

---

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT D-3 – MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 12359<br>Date Filed: 07/28/2006<br>Docketed Total: $631,500.50<br>Filing Creditor Name and Address:<br>PLYMOUTH RUBBER COMPANY INC<br>BURNS & LEVINSON LLP<br>125 SUMMER ST<br>BOSTON, MA 21101624 | Claim Holder Name and Address<br>PLYMOUTH RUBBER COMPANY INC<br>BURNS & LEVINSON LLP<br>125 SUMMER ST<br>BOSTON, MA 21101624<br><br>Docketed Total: $631,500.50<br><br>Secured: $631,500.50 / $631,500.50<br>Priority: $0.00 / $0.00<br>Unsecured: $631,500.50<br><br>Case Number*: 05-44481 | Modified Total: $384,286.33<br><br>Secured:<br>Priority: $4,290.58 / $4,290.58<br>Unsecured: $379,995.75 / $379,995.75<br><br>Case Number*: 05-44640 |
| Claim: 2482<br>Date Filed: 04/03/2006<br>Docketed Total: $1,495,516.58<br>Filing Creditor Name and Address:<br>ROHM ELECTRONICS USA LLC<br>KLEHR HARRISON HARVEY<br>BRANZBURG<br>260 S BROAD ST<br>PHILADELPHIA, PA 19102-5003 | Claim Holder Name and Address<br>ROHM ELECTRONICS USA LLC<br>KLEHR HARRISON HARVEY<br>BRANZBURG<br>260 S BROAD ST<br>PHILADELPHIA, PA 19102-5003<br><br>Docketed Total: $1,495,516.58<br><br>Secured:<br>Priority:<br>Unsecured: $1,495,516.58 / $1,495,516.58<br><br>Case Number*: 05-44640 | Modified Total: $1,415,844.09<br><br>Secured:<br>Priority: $107,101.70 / $107,101.70<br>Unsecured: $1,282,960.82 / $25,781.57 / $1,308,742.39<br><br>Case Number*: 05-44640<br>05-44567 |
| Claim: 1470<br>Date Filed: 01/09/2006<br>Docketed Total: $37,398.75<br>Filing Creditor Name and Address:<br>SHERWIN WILLIAMS COMPANY<br>101 PROSPECT AVE NW<br>625 REPUBLIC BLDG<br>CLEVELAND, OH 44115 | Claim Holder Name and Address<br>SHERWIN WILLIAMS COMPANY<br>101 PROSPECT AVE NW<br>625 REPUBLIC BLDG<br>CLEVELAND, OH 44115<br><br>Docketed Total: $37,398.75<br><br>Secured:<br>Priority:<br>Unsecured: $37,398.75 / $37,398.75<br><br>Case Number*: 05-44481 | Modified Total: $37,181.05<br><br>Secured:<br>Priority: $5,146.69 / $5,146.69<br>Unsecured: $32,034.36 / $32,034.36<br><br>Case Number*: 05-44640 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT D-3 - MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured | |
| **Claim: 12258** Date Filed: 07/28/2006 Docketed Total: $1,040,216.50 Filing Creditor Name and Address: STANLEY ELECTRIC SALES OF AMERICA INC AFRCT LLP 199 S LOS ROBLES AVE STE 600 PASADENA, CA 91101 | STANLEY ELECTRIC SALES OF AMERICA INC AFRCT LLP 199 S LOS ROBLES AVE STE 600 PASADENA, CA 91101 | | Docketed Total: | $1,040,216.50 | | | Modified Total: | | $1,031,144.01 |
| | Case Number* 05-44640 | | $124,235.47 | $915,981.03 | Case Number* 05-44567 05-44640 | | $102,426.47 | $6,457.00 $922,260.54 |
| | | | **$124,235.47** | **$915,981.03** | | | **$102,426.47** | **$928,717.54** |
| **Claim: 2065** Date Filed: 02/21/2006 Docketed Total: $126,918.43 Filing Creditor Name and Address: TRANS MATIC MFG CO INC MILLER JOHNSON PO BOX 306 GRAND RAPIDS, MI 49501-0306 | REDROCK CAPITAL PARTNERS LLC 475 17TH ST STE 544 DENVER, CO 80202 | | Docketed Total: | $126,918.43 | | | Modified Total: | | $125,305.36 |
| | Case Number* 05-44640 | | | $126,918.43 | Case Number* 05-44640 | | $6,207.62 | $119,097.74 |
| | | | | **$126,918.43** | | | **$6,207.62** | **$119,097.74** |
| **Claim: 10207** Date Filed: 07/21/2006 Docketed Total: $208,704.95 Filing Creditor Name and Address: WAMCO INC AKIN GUMP STRAUSS HAUER & FELD 2029 CENTURY PARK E 24TH FL LOS ANGELES, CA 90067 | AMROC INVESTMENTS LLC 535 MADISON AVE 15TH FL NEW YORK, NY 10022 | | Docketed Total: | $208,704.95 | | | Modified Total: | | $208,499.95 |
| | Case Number* 05-44567 | | | $208,704.95 | Case Number* 05-44567 | | $22,402.52 | $186,097.43 |
| | | | | **$208,704.95** | | | **$22,402.52** | **$186,097.43** |

**Total Claims to be Modified: 15**

**Total Amount as Docketed:** $5,324,515.12

**Total Amount as Modified:** $4,311,958.68

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.                                    Nineteenth Omnibus Claims Objection
Case No. 05-44481 (RDD)

## EXHIBIT E-1 - ADJOURNED INSUFFICIENTLY DOCUMENTED CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| CINGULAR WIRELESS<br>PO BOX 309<br>PORTLAND, OR 97207-0309 | 5084 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$1,370.20<br>$1,370.20 | 05/08/2006 | DELPHI CORPORATION (05-44481) |
| CINGULAR WIRELESS<br>PO BOX 309<br>PORTLAND, OR 97207-0309 | 5085 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$1,011.99<br>$1,011.99 | 05/08/2006 | DELPHI CORPORATION (05-44481) |
| SIEMENS ENERGY & AUTOMATION INC<br>MCGUIRE WOODS LLP<br>ONE JAMES CENTER<br>901 E CARY ST<br>RICHMOND, VA 23219 | 8675 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$12,639.39<br>$12,639.39 | 06/27/2006 | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) |
| Total: | 3 | | $15,021.58 | | |

In re Delphi Corporation, et al.                    Nineteenth Omnibus Claims Objection
Case No. 05-44481 (RDD)

## EXHIBIT E-2 - ADJOURNED BOOKS AND RECORDS CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| FREUDENBERG NOK GENERAL PARTNERSHIP BODMAN LLP 6TH FL AT FORD FIELD 1901 ST ANTOINE ST DETROIT, MI 48226 | 11603 | Secured: Priority: Administrative: Unsecured: Total: | $358,851.00 $80,742.02 $60,066.20 $499,659.22 | 07/27/2006 | DELPHI CORPORATION (05-44481) |
| FREUDENBERG NOK INC BODMAN LLP 6TH FL AT FORD FIELD 1901 ST ANTOINE ST DETROIT, MI 48226 | 11602 | Secured: Priority: Administrative: Unsecured: Total: | $1,759.31 $2,878.86 $4,638.17 | 07/27/2006 | DELPHI CORPORATION (05-44481) |
| FREUDENBERG NONWOVENS LP EFT 2975 PEMBROKE RD HOPKINSVILLE, KY 42240 | 5463 | Secured: Priority: Administrative: Unsecured: Total: | $17,971.26 $17,971.26 | 05/10/2006 | DELPHI CORPORATION (05-44481) |
| GENERAL ELECTRIC COMPANY GE FANUC AUTOMATION NORTH AMERICA INC ROBINSON & COLE LLP 280 TRUMBULL ST HARTFORD, CT 06103 | 500 | Secured: Priority: Administrative: Unsecured: Total: | $6,837.48 $6,837.48 | 11/10/2005 | DELPHI CORPORATION (05-44481) |
| MICROSYS TECHNOLOGIES INC 3710 NASHUA DRIVE UNIT 1 MISSISSAUGA, ON L4V 1M5 CANADA | 2053 | Secured: Priority: Administrative: Unsecured: Total: | $9,044.19 $9,044.19 | 02/17/2006 | DELPHI CORPORATION (05-44481) |
| MICROSYS TECHNOLOGIES INC 3710 NASHUA DRIVE UNIT 1 MISSISSAUGA, ON L4V 1M5 CANADA | 2054 | Secured: Priority: Administrative: Unsecured: Total: | $1,775.00 $1,775.00 | 02/17/2006 | DELPHI CORPORATION (05-44481) |
| SECRETARY OF LABOR ON BEHALF OF THE DELPHI PERSONAL SAVINGS PLAN FOR HOURLY RATE EMPLOYEES IN THE UNITED STATES US DEPT OF LABOR OFFICE OF THE SOLICITOR 230 S DEARBORN ST 8TH FLOOR CHICAGO, IL 60604 | 15135 | Secured: Priority: Administrative: Unsecured: Total: | $0.00 $0.00 | 07/31/2006 | DELPHI CORPORATION (05-44481) |

**In re Delphi Corporation, et al.**                                    **Nineteenth Omnibus Claims Objection**

**Case No. 05-44481 (RDD)**

**EXHIBIT E-2 - ADJOURNED BOOKS AND RECORDS CLAIMS**

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| SIERRA LIQUIDITY FUND<br>2699 WHITE RD STE 255<br>IRVINE, CA 92614 | 4211 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br><br><br>$7,528.00<br>$7,528.00 | 05/01/2006 | DELPHI CORPORATION (05-44481) |
| US LABOR SECRETARY ON BEHALF OF ASEC MANUFACTURING SPONSORED EMPLOYEE BENEFIT PLANS<br>USDOL 525 S GRIFFIN ST STE 501<br>DALLAS, TX 75202 | 9826 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | <br>$0.00<br><br><br>$0.00 | 07/18/2006 | ASEC MANUFACTURING GENERAL PARTNERSHIP (05-44482) |
| **Total:** | **9** | | **$547,453.32** | | |

**In re Delphi Corporation, et al.**  **Nineteenth Omnibus Claims Objection**
**Case No. 05-44481 (RDD)**

## EXHIBIT E-3 - ADJOURNED BOOKS AND RECORDS TAX CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| VANDALIA CITY OF OH<br>333 JAMES E BOHANAN MEMORIAL DR<br>VANDALIA, OH 45377 | 7219 | Secured:<br>Priority:<br>Administrative:<br>Unsecured:<br>Total: | $46,961.95<br><br>————<br>$46,961.95 | 05/31/2006 | DELPHI AUTOMOTIVE SYSTEMS LLC (05-44640) |
| **Total:** | **1** | **$46,961.95** | | | |

**In re Delphi Corporation, et al.**                                          **Nineteenth Omnibus Claims Objection**
**Case No. 05-44481 (RDD)**

## EXHIBIT E-4 - ADJOURNED UNTIMELY BOOKS AND RECORDS TAX CLAIMS

| CREDITOR'S NAME AND ADDRESS | CLAIM NUMBER | ASSERTED CLAIM AMOUNT | | DATE FILED | DOCKETED DEBTOR |
|---|---|---|---|---|---|
| STATE OF NEW JERSEY COMPLIANCE ACTIVITY PO BOX 245 TRENTON, NJ 08695 | 16610 | Secured: Priority: Administrative: Unsecured: Total: | $171,000.00 $171,000.00 | 06/04/2007 | DELPHI CORPORATION (05-44481) |
| STATE OF NEW JERSEY DIVISION OF TAXATION PO BOX 245 TRENTON, NJ 08695 | 16611 | Secured: Priority: Administrative: Unsecured: Total: | $448,527.31 $448,527.31 | 06/04/2007 | DELPHI CORPORATION (05-44481) |
| Total: | 2 | | $619,527.31 | | |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| **Claim: 15234**<br>Date Filed: 07/31/2006<br>Docketed Total: $425,367.33<br>Filing Creditor Name and Address:<br>AKZO NOBEL COATINGS INC<br>5555 SPALDING DR<br>NORCROSS, GA 30092 | Claim Holder Name and Address<br>AKZO NOBEL COATINGS INC<br>5555 SPALDING DR<br>NORCROSS, GA 30092<br><br>Docketed Total: $495,723.77<br><br>Case Number* 05-44640<br>Secured<br>Priority<br>Unsecured $425,367.33<br>**$495,723.77** | Modified Total: $726,296.32<br><br>Case Number* 05-44640<br>Secured<br>Priority<br>Unsecured $369,629.76<br>**$726,296.32** |
| **Claim: 11900**<br>Date Filed: 07/28/2006<br>Docketed Total: $32,498.64<br>Filing Creditor Name and Address:<br>AMETEK INC<br>3000 TWO LOGAN SQ 18TH & ARCH STREETS<br>PHILADELPHIA, PA 19103 | Claim Holder Name and Address<br>AMETEK INC<br>3000 TWO LOGAN SQ 18TH & ARCH STREETS<br>PHILADELPHIA, PA 19103<br><br>Docketed Total: $79,468.24<br><br>Case Number* 05-44640<br>Secured<br>Priority<br>Unsecured $32,498.64<br>**$79,468.24** | Modified Total: $95,735.00<br><br>Case Number* 05-44640<br>Secured<br>Priority<br>Unsecured $25,375.00<br>**$95,735.00** |
| **Claim: 12197**<br>Date Filed: 07/28/2006<br>Docketed Total: $135,298.72<br>Filing Creditor Name and Address:<br>ARNOLD CENTER INC<br>LAMBERT LESER ISACKSON COOK & GIUNTA PC<br>916 WASHINGTON AVE STE 309<br>BAY CITY, MI 48708 | Claim Holder Name and Address<br>ARNOLD CENTER INC<br>LAMBERT LESER ISACKSON COOK & GIUNTA PC<br>916 WASHINGTON AVE STE 309<br>BAY CITY, MI 48708<br><br>Docketed Total: $175,968.39<br><br>Case Number* 05-44640<br>Secured<br>Priority<br>Unsecured $135,298.72<br>**$175,968.39** | Modified Total: $33,512.92<br><br>Case Number* 05-44640<br>Secured<br>Priority<br>Unsecured $77,516.26<br>**$33,512.92** |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 15671<br>Date Filed: 07/31/2006<br>Docketed Total: $1,621,059.30<br>Filing Creditor Name and Address:<br>ATS OHIO INC<br>250 ROYAL OAK RD<br>CAMBRIDGE, ON N3H 4R6<br>CANADA | Claim Holder Name and Address<br>LONGACRE MASTER FUND LTD<br>810 SEVENTH AVE 22ND FL<br>NEW YORK, NY 10019<br><br>Case Number*: 05-44640<br>Docketed Total: $1,291,056.70<br>Secured: ___<br>Priority: ___<br>Unsecured: $1,621,059.30<br>**$1,291,056.70** | Case Number*: 05-44640<br>Modified Total: $720,854.70<br>Secured: ___<br>Priority: ___<br>Unsecured: $360,854.30<br>**$720,854.70** |
| Claim: 1570<br>Date Filed: 01/17/2006<br>Docketed Total: $1,621.57<br>Filing Creditor Name and Address:<br>BELLSOUTH<br>TELECOMMUNICATIONS INC<br>301 W BAY ST RM 29EF1<br>JACKSONVILLE, FL 32202 | Claim Holder Name and Address<br>BELLSOUTH<br>TELECOMMUNICATIONS INC<br>301 W BAY ST RM 29EF1<br>JACKSONVILLE, FL 32202<br><br>Case Number*: 05-44481<br>Docketed Total: $1,291.53<br>Secured: ___<br>Priority: ___<br>Unsecured: $1,621.57<br>**$1,291.53** | Case Number*: 05-44640<br>Modified Total: $1,496.90<br>Secured: ___<br>Priority: ___<br>Unsecured: $1,429.20<br>**$1,496.90** |
| Claim: 9081<br>Date Filed: 07/06/2006<br>Docketed Total: $72,359.49<br>Filing Creditor Name and Address:<br>BENECKE KALIKO AG<br>CONTINENTAL AG<br>STRAWINSKYLAAN 3111 6TH FL<br>AMSTERDAM, 1077ZX<br>NETHERLANDS | Claim Holder Name and Address<br>LONGACRE MASTER FUND LTD<br>810 SEVENTH AVE 22ND FL<br>NEW YORK, NY 10019<br><br>Case Number*: 05-44640<br>Docketed Total: $39,756.46<br>Secured: ___<br>Priority: ___<br>Unsecured: $72,359.49<br>**$39,756.46** | Case Number*: 05-44640<br>Modified Total: $10,236.92<br>Secured: ___<br>Priority: ___<br>Unsecured: $10,679.26<br>**$10,236.92** |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

### Claim: 7310

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Date Filed: 06/01/2006 | Claim Holder Name and Address | |
| Docketed Total: $789,854.35 | CARCLO TECHNICAL PLASTICS | |
| Filing Creditor Name and Address: | 600 DEPOT ST | |
| CARCLO TECHNICAL PLASTICS | LATROBE, PA 15650 | |
| 600 DEPOT ST | | |
| LATROBE, PA 15650 | | |
| Case Number* 05-44640 | Case Number* 05-44640 | Case Number* 05-44640 |
| | Docketed Total: $386,854.75 | Modified Total: $509,795.59 |
| | Secured / Priority | Secured / Priority |
| | Unsecured $789,854.35 | Unsecured $502,325.52 |
| | **$386,854.75** | **$509,795.59** |

### Claim: 88

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Date Filed: 10/24/2005 | Claim Holder Name and Address | |
| Docketed Total: $5,813.57 | CDW COMPUTER CENTERS INC | |
| Filing Creditor Name and Address: | PO BOX 5126 | |
| CDW COMPUTER CENTERS INC | TIMONIUM, MD 21094 | |
| PO BOX 5126 | | |
| TIMONIUM, MD 21094 | | |
| Case Number* 05-44481 | Case Number* 05-44481 | Case Number* 05-44640 |
| | Docketed Total: $5,817.53 | Modified Total: $7,775.94 |
| | Secured / Priority | Secured / Priority |
| | Unsecured $5,813.57 | Unsecured $3,335.24 |
| | **$5,817.53** | **$7,775.94** |

### Claim: 420

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Date Filed: 11/08/2005 | Claim Holder Name and Address | |
| Docketed Total: $14,748.55 | CDW COMPUTER CENTERS INC | |
| Filing Creditor Name and Address: | PO BOX 5126 | |
| CDW COMPUTER CENTERS INC | TIMONIUM, MD 21094 | |
| PO BOX 5126 | | |
| TIMONIUM, MD 21094 | | |
| Case Number* 05-44567 | Case Number* 05-44567 | Case Number* 05-44567 |
| | Docketed Total: $14,348.55 | Modified Total: $8,624.64 |
| | Secured / Priority | Secured / Priority |
| | Unsecured $14,748.55 | Unsecured $8,964.94 |
| | **$14,348.55** | **$8,624.64** |

### Claim: 9541

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Date Filed: 07/14/2006 | Claim Holder Name and Address | |
| Docketed Total: $30,818.00 | CIRCLE BROACH COMPANY INC | |
| Filing Creditor Name and Address: | 38358 ABRUZZI DR | |
| CIRCLE BROACH COMPANY INC | WESTLAND, MI 48185 | |
| 38358 ABRUZZI DR | | |
| WESTLAND, MI 48185 | | |
| Case Number* 05-44481 | Case Number* 05-44481 | Case Number* 05-44640 |
| | Docketed Total: $70,818.00 | Modified Total: $70,818.00 |
| | Secured / Priority $30,818.00 | Secured / Priority |
| | Unsecured $0.00 | Unsecured $30,818.00 |
| | **$70,818.00** | **$70,818.00** |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

---

**Claim: 15379**
Date Filed: 07/31/2006
Docketed Total: $617,204.24
Filing Creditor Name and Address:
COMPUTER PATENT ANNUITIES
LP
CPA HOUSE
11 15 SEATON PLACE
ST HELIER JERSEY, JE1 1BL
CHANNEL ISLANDS

Case Number*: 05-44554

**CLAIM AS DOCKETED**
Claim Holder Name and Address
COMPUTER PATENT ANNUITIES LP
CPA HOUSE
11 15 SEATON PLACE
ST HELIER JERSEY, JE1 1BL
CHANNEL ISLANDS

Case Number*: 05-44554
Docketed Total: $213,904.94
Secured | Priority | Unsecured $617,204.24
$213,904.94

**CLAIM AS MODIFIED**
Case Number*: 05-44554
Modified Total: $209,481.20
Secured | Priority | Unsecured $602,481.60
$209,481.20

---

**Claim: 9109**
Date Filed: 07/07/2006
Docketed Total: $1,254,290.43
Filing Creditor Name and Address:
CONTRARIAN FUNDS LLC AS
ASSIGNEE OF BLISSFIELD
MANUFACTURING COMPANY
411 WEST PUTNAM AVE
STE 225
GREENWICH, CT 06830

Case Number*: 05-44640

**CLAIM AS DOCKETED**
Claim Holder Name and Address
CONTRARIAN FUNDS LLC AS
ASSIGNEE OF BLISSFIELD
MANUFACTURING COMPANY
411 WEST PUTNAM AVE
STE 225
GREENWICH, CT 06830

Case Number*: 05-44640
Docketed Total: $1,254,290.43
Secured | Priority | Unsecured $1,254,290.43
$1,954,960.47

Modified Total: $1,957,185.23
Secured | Priority | Unsecured $1,253,185.67
$1,957,185.23

Case Number*: 05-44640
$1,954,960.47

---

**Claim: 12667**
Date Filed: 07/28/2006
Docketed Total: $3,585,701.25
Filing Creditor Name and Address:
CONTRARIAN FUNDS LLC AS
ASSIGNEE OF CEP PRODUCTS
LLC FKA CARLISLE ENGINEERED
PRODUCTS
ATTN ALPA JIMENEZ
411 WEST PUTNAM AVE STE 225
GREENWICH, CT 06830

Case Number*: 05-44640

**CLAIM AS DOCKETED**
Claim Holder Name and Address
CONTRARIAN FUNDS LLC AS
ASSIGNEE OF CEP PRODUCTS LLC
FKA CARLISLE ENGINEERED
PRODUCTS
ATTN ALPA JIMENEZ
411 WEST PUTNAM AVE STE 225
GREENWICH, CT 06830

Case Number*: 05-44640
Docketed Total: $7,585,301.95
Secured | Priority | Unsecured $3,585,701.25
$7,585,301.95

Modified Total: $9,289,443.14
Secured | Priority | Unsecured $2,682,447.14
$9,289,443.14

Case Number*: 05-44640

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 16132**
Date Filed: 08/09/2006
Docketed Total: $22,475.50
Filing Creditor Name and Address:
CROWLEY TOOL CO
190 MOLLY WALTON RD
HENDERSONVILLE, TN 37075

Claim as Docketed:
Case Number* 05-44481
Docketed Total: $99,435.50
Secured
Priority
Unsecured $22,475.50
$99,435.50

Claim as Modified:
Case Number* 05-44640
Modified Total: $99,435.50
Secured
Priority
Unsecured $22,475.50
$99,435.50

---

**Claim: 5723**
Date Filed: 05/12/2006
Docketed Total: $11,422.93
Filing Creditor Name and Address:
DC COATERS INC
550 W INDUSTRIAL DR
TIPTON, IN 46072

Claim as Docketed:
Case Number* 05-44481
Docketed Total: $11,499.67
Secured
Priority
Unsecured $11,422.93
$11,499.67

Claim as Modified:
Case Number* 05-44640
Modified Total: $4,954.73
Secured
Priority
Unsecured $4,254.37
$4,954.73

---

**Claim: 10284**
Date Filed: 07/24/2006
Docketed Total: $22,268.60
Filing Creditor Name and Address:
DEMAG PLASTICS GROUP CORP
1792 ALAMEDA DR
STRONGSVILLE, OH 44149

Claim as Docketed:
Case Number* 05-44640
Docketed Total: $99,928.20
Secured
Priority
Unsecured $22,268.60
$99,928.20

Claim as Modified:
Case Number* 05-44640
Modified Total: $6,562.80
Secured
Priority
Unsecured $9,596.80
$6,562.80

---

**Claim: 432**
Date Filed: 11/08/2005
Docketed Total: $155,995.20
Filing Creditor Name and Address:
ELKHART PRODUCTS
CORPORATION
1255 OAK ST
PO BOX 1008
ELKHART, IN 46515

Claim as Docketed:
Case Number* 05-44481
Docketed Total: $155,665.90
Secured
Priority
Unsecured $155,995.20
$155,665.90

Claim as Modified:
Case Number* 05-44640
Modified Total: $178,545.98
Secured
Priority
Unsecured $138,545.28
$178,545.98

---

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Secured | Priority | Unsecured |

**Claim: 15511**
Date Filed: 07/31/2006
Docketed Total: $184,306.40
Filing Creditor Name and Address:
EMPRESAS CA LE TLAXCALA SA DE CV
SACHNOFF & WEAVER LTD
10 S WACKER DR STE 4000
CHICAGO, IL 60606

*CLAIM AS DOCKETED*
Claim Holder Name and Address:
EMPRESAS CA LE TLAXCALA SA DE CV
SACHNOFF & WEAVER LTD
10 S WACKER DR STE 4000
CHICAGO, IL 60606
Case Number*: 05-44640
Docketed Total: $184,702.40
Unsecured: $184,306.40
$184,702.40

*CLAIM AS MODIFIED*
Case Number*: 05-44640
Modified Total: $24,742.40
Priority: $64,346.40
$24,742.40

---

**Claim: 8718**
Date Filed: 06/28/2006
Docketed Total: $234,631.11
Filing Creditor Name and Address:
HOWARD & HOWARD ATTORNEYS P C
39400 WOODWARD AVE STE 101
BLOOMFIELD HILLS, MI 48304-5151

*CLAIM AS DOCKETED*
Claim Holder Name and Address:
CONTRARIAN FUNDS LLC
411 W PUTNAM AVE STE 225
GREENWICH, CT 06830
Case Number*: 05-44554
Docketed Total: $974,271.11
Secured: $1,346.50
Unsecured: $233,284.61
$1,742.50    $977,984.21

*CLAIM AS MODIFIED*
Case Number*: 05-44554
Modified Total: $974,754.82
Priority: $234,354.86
$974,754.82

---

**Claim: 10184**
Date Filed: 07/21/2006
Docketed Total: $193,926.15
Filing Creditor Name and Address:
KEYSTONE INDUSTRIES LTD
2501 THUNDERHAWK CT
DAYTON, OH 45414

*CLAIM AS DOCKETED*
Claim Holder Name and Address:
CONTRARIAN FUNDS LLC
411 W PUTNAM AVE S 225
GREENWICH, CT 06830
Case Number*: 05-44640
Docketed Total: $167,692.15
Unsecured: $193,926.15
$167,692.15

*CLAIM AS MODIFIED*
Case Number*: 05-44640
Modified Total: $187,179.56
Priority: $183,132.59
$187,179.56

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**Claim: 10593**
Date Filed:    07/25/2006
Docketed Total:    $44,876.00
Filing Creditor Name and Address:
KIEFEL TECHNOLOGIES INC
5 MERRILL INDUSTRIAL DR
HAMPTON, NH 03842

Claim Holder Name and Address
KIEFEL TECHNOLOGIES INC
5 MERRILL INDUSTRIAL DR
HAMPTON, NH 03842

Docketed Total:    $44,832.00

| Secured | Priority | Unsecured |
|---|---|---|
| | | $44,876.00 |

Case Number*
05-44640    **$44,832.00**

Modified Total:    $99,728.04

| Secured | Priority | Unsecured |
|---|---|---|
| | | $22,368.04 |

Case Number*
05-44640    **$99,728.04**

---

**Claim: 12162**
Date Filed:    07/28/2006
Docketed Total:    $89,372.32
Filing Creditor Name and Address:
MARQUARDT SWITCHES INC
2711 ROUTE 20 E
CAZENOVIA, NY 13035

Claim Holder Name and Address
MARQUARDT SWITCHES INC
2711 ROUTE 20 E
CAZENOVIA, NY 13035

Docketed Total:    $86,739.79

| Secured | Priority | Unsecured |
|---|---|---|
| | | $89,372.32 |

Case Number*
05-44640    **$86,739.79**

Modified Total:    $38,154.13

| Secured | Priority | Unsecured |
|---|---|---|
| | | $78,154.17 |

Case Number*
05-44640    **$38,154.13**

---

**Claim: 1748**
Date Filed:    02/02/2006
Docketed Total:    $72,097.93
Filing Creditor Name and Address:
MICHIGAN RUBBER PRODUCTS INC
1200 EIGHTH AVE
CADILLAC, MI 49601

Claim Holder Name and Address
LIQUIDITY SOLUTIONS INC
ONE UNIVERSITY PLAZA STE 312
HACKENSACK, NJ 07601

Docketed Total:    $39,063.67

| Secured | Priority | Unsecured |
|---|---|---|
| | | $72,097.93 |

Case Number*
05-44481    **$39,063.67**

Modified Total:    $48,304.46

| Secured | Priority | Unsecured |
|---|---|---|
| | | $48,704.49 |

Case Number*
05-44640    **$48,304.46**

---

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 2548<br>Date Filed: 04/04/2006<br>Docketed Total: $562,192.18<br>Filing Creditor Name and Address:<br>PBR AUSTRALIA PTY LTD<br>ATTN PETER VALENTINE<br>PO BOX 176<br>BENTLEIGH E VI 3165,<br>AUSTRALIA | Claim Holder Name and Address<br><br>PBR AUSTRALIA PTY LTD<br>ATTN PETER VALENTINE<br>PO BOX 176<br>BENTLEIGH E VI 3165, AUSTRALIA<br><br>Case Number*    Secured    Priority    Unsecured    Docketed Total:<br>05-44640                                            $223,390.20    $997,760.90<br>                                                                    $997,760.90 | Case Number*    Secured    Priority    Unsecured    Modified Total:<br>05-44640                                            $39,766.37    $76,322.73<br>                                                                   $76,322.73 |
| Claim Holder Name and Address<br><br>SPECIAL SITUATIONS INVESTING<br>GROUP INC<br>C O GOLDMAN SACHS & CO<br>85 BROAD ST 27TH FL<br>NEW YORK, NY 10004<br><br>Case Number*    Secured    Priority    Unsecured    Docketed Total:<br>05-44640                                            $338,801.98    $778,801.68<br>                                                                   $778,801.68 | Case Number*    Secured    Priority    Unsecured    Modified Total:<br>05-44640                                            $338,801.98    $778,801.68<br>                                                                   $778,801.68 | |
| Claim: 2173<br>Date Filed: 03/03/2006<br>Docketed Total: $550,320.80<br>Filing Creditor Name and Address:<br>PIC PRODUCTIVITY<br>IMPROVEMENT CTR<br>199 WENTWORTH ST E<br>OSHAWA, ON L1H 3V6<br>CANADA | Claim Holder Name and Address<br><br>LONGACRE MASTER FUND LTD<br>810 SEVENTH AVE 22ND FL<br>NEW YORK, NY 10019<br><br>Case Number*    Secured    Priority    Unsecured    Docketed Total:<br>05-44640                                            $550,320.80    $550,790.80<br>                                                                   $550,790.80 | Case Number*    Secured    Priority    Unsecured    Modified Total:<br>05-44640                                            $355,828.83    $755,898.87<br>                                                                   $755,898.87 |

*See Exhibit F for a listing of debtor entities by case number.

Page 8 of 11

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

### Claim: 5907

**CLAIM TO BE MODIFIED**

Date Filed: 05/16/2006
Docketed Total: $64,430.50
Filing Creditor Name and Address:
SCHAEFFLER KG
SCHAEFFLER ACCOUNTING SERVICES
GEORG SCHAFER STR 30
SCHWEINFURT, 97421
GERMANY

**CLAIM AS DOCKETED**

Claim Holder Name and Address
SCHAEFFLER KG
SCHAEFFLER ACCOUNTING SERVICES
GEORG SCHAFER STR 30
SCHWEINFURT, 97421
GERMANY

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $64,430.50 |

Docketed Total: $24,470.50

$24,470.50

**CLAIM AS MODIFIED**

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $9,452.04 |

Modified Total: $6,459.04

$6,459.04

### Claim: 2274

**CLAIM TO BE MODIFIED**

Date Filed: 03/13/2006
Docketed Total: $222,238.45
Filing Creditor Name and Address:
SHERWIN WILLIAMS AUTOMOTIVE FINISHES CORP
4440 WARRENSVILLE CENTER RD
WARRENSVILLE HEIGHTS, OH 44128

**CLAIM AS DOCKETED**

Claim Holder Name and Address
SHERWIN WILLIAMS AUTOMOTIVE FINISHES CORP
4440 WARRENSVILLE CENTER RD
WARRENSVILLE HEIGHTS, OH 44128

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $222,238.45 |

Docketed Total: $999,978.45

$999,978.45

**CLAIM AS MODIFIED**

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $112,748.03 |

Modified Total: $119,348.07

$119,348.07

### Claim: 8674

**CLAIM TO BE MODIFIED**

Date Filed: 06/27/2006
Docketed Total: $416,511.60
Filing Creditor Name and Address:
SIEMENS ENERGY & AUTOMATION INC SUCCESSOR BY WAY OF MERGER TO SIEMENS LOGISTICS & ASSEMBLY SYSTEMS INC
MCGUIRE WOODS LLP
ONE JAMES CENTER
901 E CARY ST
RICHMOND, VA 23219

**CLAIM AS DOCKETED**

Claim Holder Name and Address
SIEMENS ENERGY & AUTOMATION INC SUCCESSOR BY WAY OF MERGER TO SIEMENS LOGISTICS & ASSEMBLY SYSTEMS INC
MCGUIRE WOODS LLP
ONE JAMES CENTER
901 E CARY ST
RICHMOND, VA 23219

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $416,511.60 |

Docketed Total: $412,511.20

$412,511.20

**CLAIM AS MODIFIED**

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $338,318.55 |

Modified Total: $778,718.55

$778,718.55

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Claim Holder Name and Address | Secured | Priority | Unsecured | | Case Number* | Secured | Priority | Unsecured | |
| **Claim:** 1726 Date Filed: 01/31/2006 Docketed Total: $5,849.70 Filing Creditor Name and Address: SIERRA INTERNATIONAL INC 155 SOUTH LIMERICK RD LIMERICK, PA 19468-1699 | BEAR STEARNS INVESTMENT PRODUCTS INC 383 MADISON AVE NEW YORK, NY 10179 Docketed Total: $5,846.30 Case Number* 05-44640 | $629.00 $296.00 | | $5,220.70 $5,990.30 | | Modified Total: $7,777.30 Case Number* 05-44640 | | | $3,333.70 $7,777.30 | |
| **Claim:** 14669 Date Filed: 07/31/2006 Docketed Total: $216,301.71 Filing Creditor Name and Address: SIERRA LIQUIDITY FUND LLC ASSIGNEE DYNAMIC CORPORATION ASSIGNOR 2699 WHITE RD STE 255 IRVINE, CA 92614 | SIERRA LIQUIDITY FUND LLC ASSIGNEE DYNAMIC CORPORATION ASSIGNOR 2699 WHITE RD STE 255 IRVINE, CA 92614 Docketed Total: $912,701.31 Case Number* 05-44640 | | | $216,301.71 $912,701.31 | | Modified Total: $904,329.38 Case Number* 05-44640 | | $204,762.78 | $3,333.70 $904,329.38 | |
| **Claim:** 11615 Date Filed: 07/27/2006 Docketed Total: $12,665.01 Filing Creditor Name and Address: SMK ELECTRONICS CORP USA 1055 TIERRA DEL REY CHULA VISTA, CA 91910 | SMK ELECTRONICS CORP USA 1055 TIERRA DEL REY CHULA VISTA, CA 91910 Docketed Total: $19,225.01 Case Number* 05-44481 | | | $12,665.01 $19,225.01 | | Modified Total: $1,155.00 Case Number* 05-44640 | | | $1,155.00 $1,155.00 | |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT E-5 – ADJOURNED CLAIMS SUBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

**CLAIM TO BE MODIFIED**

Claim: 8657
Date Filed: 06/27/2006
Docketed Total: $399,548.00
Filing Creditor Name and Address:
UNITED STATES STEEL CORP
US STEEL AUTOMOTIVE CTR
5850 NEW KING CT
TROY, MI 48098

**CLAIM AS DOCKETED**

Claim Holder Name and Address

UNITED STATES STEEL CORP
US STEEL AUTOMOTIVE CTR
5850 NEW KING CT
TROY, MI 48098

Docketed Total: $766,548.00

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | | | $399,548.00 |
| | | | $766,548.00 |

**CLAIM AS MODIFIED**

Modified Total: $79,320.10

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | | | $32,760.10 |
| | | | $79,320.10 |

Total Claims to be Modified: 79

Total Amount as Docketed:    $19,028,025.57

Total Amount as Modified:    $8,131,601.33

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s OuceSion

**EXHIBIT E-U-ADJOmRNED TAX CLAIMS SmßJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 1267<br>Date Filed: 12/23/2005<br>Docketed Total: $16,528.09<br>Filing Creditor Name and Address:<br>ANGELINA COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>PO BOX 3064<br>HOUSTON, TX 77253-3064 | Claim Holder Name and Address<br><br>ANGELINA COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>PO BOX 3064<br>HOUSTON, TX 77253-3064 | |
| | Docketed Total: 91L578.02 | Modified Total: 917,132.02 |
| | Case Number*    Secured    Priority    Unsecured<br>05-44481    $16,528.09<br>    91L578.02 | Case Number*    Secured    Priority    Unsecured<br>05-44640    $12,679.09<br>    917,132.02 |
| Claim: 1288<br>Date Filed: 12/27/2005<br>Docketed Total: $18,673.95<br>Filing Creditor Name and Address:<br>BEXAR COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>711 NAVARRO STE 300<br>SAN ANTONIO, TX 78205 | Claim Holder Name and Address<br><br>BEXAR COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>711 NAVARRO STE 300<br>SAN ANTONIO, TX 78205 | |
| | Docketed Total: 918,l36.25 | Modified Total: 914,675.77 |
| | Case Number*    Secured    Priority    Unsecured<br>05-44481    $18,673.95<br>    918,l36.25 | Case Number*    Secured    Priority    Unsecured<br>05-44640    $14,325.22<br>    914,675.77 |
| Claim: 14187<br>Date Filed: 07/25/2006<br>Docketed Total: $199,010.90<br>Filing Creditor Name and Address:<br>CAMERON COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Claim Holder Name and Address<br><br>CAMERON COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | |
| | Docketed Total: 9122,010.20 | Modified Total: 9115,128.36 |
| | Case Number*    Secured    Priority    Unsecured<br>05-44481    $199,010.90<br>    9122,010.20 | Case Number*    Secured    Priority    Unsecured<br>05-44640    $165,698.73<br>    9115,128.36 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s OueeSion

**EXHIBIT E-1--ADJOmRNED TAX CLAIMS SmBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | CLAIM AS MODIFIED | | |
|---|---|---|---|---|---|---|
| Claim: 1289<br>Date Filed: 12/27/2005<br>Docketed Total: $268,433.18<br>Filing Creditor Name and Address:<br>CITY OF EL PASO<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>711 NAVARRO STE 300<br>SAN ANTONIO, TX 78205 | Claim Holder Name and Address<br><br>CITY OF EL PASO<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>711 NAVARRO STE 300<br>SAN ANTONIO, TX 78205 | Docketed Total: 9718,466.18 | | | Modified Total: 9705,271.65 | |
| | Case Number*<br>05-44481 | Secured<br>$268,433.18<br>9718,466.18 | Priority | Unsecured | Case Number*<br>05-44640 | Secured<br>$205,921.35<br>9705,271.65 | Priority | Unsecured |
| Claim: 1330<br>Date Filed: 12/27/2005<br>Docketed Total: $53.65<br>Filing Creditor Name and Address:<br>CITY OF HARLINGEN<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Claim Holder Name and Address<br><br>CITY OF HARLINGEN<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Docketed Total: 956.15 | | | Modified Total: 941.1l | |
| | Case Number*<br>05-44481 | Secured<br>$53.65<br>956.15 | Priority | Unsecured | Case Number*<br>05-44640 | Secured<br>$41.16<br>941.1U | Priority | Unsecured |
| Claim: 5520<br>Date Filed: 05/10/2006<br>Docketed Total: $176.75<br>Filing Creditor Name and Address:<br>CITY OF SAN MARCOS<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Claim Holder Name and Address<br><br>CITY OF SAN MARCOS<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Docketed Total: 913U35 | | | Modified Total: 913U35 | |
| | Case Number*<br>05-44481 | Secured<br>$176.75<br>913U35 | Priority | Unsecured | Case Number*<br>05-44640 | Secured<br>$176.75<br>913U35 | Priority | Unsecured |

*See Exhibit F for a listing of debtor entities by case number.

Page 2 of 6

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Ob niuj s Claib s OueeSion

**EXHIBIT E-U–ADJOmRNED TAX CLAIMS SmBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED / CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|
| **Claim: 5300**<br>Date Filed: 05/08/2006<br>Docketed Total: $59.65<br>Filing Creditor Name and Address:<br>CYPRESS FAIRBANKS ISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>PO BOX 3064<br>HOUSTON, TX 77253-3064<br><br>Claim Holder Name and Address<br>CYPRESS FAIRBANKS ISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>PO BOX 3064<br>HOUSTON, TX 77253-3064<br><br>Docketed Total: 952.15<br>Secured $59.65   Priority   Unsecured 952.15<br>952.15<br>Case Number*<br>05-44481 | Modified Total: 952.15<br>Secured $59.65   Priority   Unsecured 952.15<br>952.15<br>Case Number*<br>05-44640 |
| **Claim: 853**<br>Date Filed: 11/28/2005<br>Docketed Total: $23,488.83<br>Filing Creditor Name and Address:<br>DALLAS COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>2323 BRYAN STREET STE 1600<br>DALLAS, TX 75201<br><br>Claim Holder Name and Address<br>DALLAS COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>2323 BRYAN STREET STE 1600<br>DALLAS, TX 75201<br><br>Docketed Total: 976,488.86<br>Secured $23,488.83   Priority   Unsecured 976,488.86<br>976,488.86<br>Case Number*<br>05-44481 | Modified Total: 93,1U133<br>Secured $7,616.77   Priority   Unsecured 93,1U133<br>93,1U133<br>Case Number*<br>05-44640 |
| **Claim: 1283**<br>Date Filed: 12/27/2005<br>Docketed Total: $140.82<br>Filing Creditor Name and Address:<br>HARLINGEN CISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35<br>PO BOX 17428<br>AUSTIN, TX 78760-7428<br><br>Claim Holder Name and Address<br>HARLINGEN CISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35<br>PO BOX 17428<br>AUSTIN, TX 78760-7428<br><br>Docketed Total: 9140.87<br>Secured $140.82   Priority   Unsecured 9140.87<br>9140.87<br>Case Number*<br>05-44481 | Modified Total: 9108.06<br>Secured $108.03   Priority   Unsecured 9108.06<br>9108.06<br>Case Number*<br>05-44640 |

*See Exhibit F for a listing of debtor entities by case number.

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Ob niuj s Claib s Oue$ion

## EXHIBIT E-1--ADJOmRNED TAX CLAIMS SmBJECT TO MODIFICATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 5301<br>Date Filed:   05/08/2006<br>Docketed Total:   $902.84<br>Filing Creditor Name and Address:<br>HARRIS COUNTY CITY OF HOUSTON<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>PO BOX 3064<br>HOUSTON, TX 77253-3064 | Claim Holder Name and Address<br>HARRIS COUNTY CITY OF HOUSTON<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>PO BOX 3064<br>HOUSTON, TX 77253-3064 | |
| | Docketed Total:   9207.84 | Modified Total:   9207.84 |
| | Secured   Priority   Unsecured<br>$902.84<br>9207.84 | Secured   Priority   Unsecured<br>$902.84<br>9207.84 |
| | Case Number*   05-44481 | Case Number*   05-44640 |
| Claim: 7914<br>Date Filed:   06/13/2006<br>Docketed Total:   $7,726.30<br>Filing Creditor Name and Address:<br>HIDALGO COUNTY<br>DIANE W SANDERS<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741  PO BOX 17428<br>AUSTIN, TX 78760-7428 | Claim Holder Name and Address<br>HIDALGO COUNTY<br>DIANE W SANDERS<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741  PO BOX 17428<br>AUSTIN, TX 78760-7428 | |
| | Docketed Total:   93,37Ll60 | Modified Total:   93,37Ll60 |
| | Secured   Priority   Unsecured<br>$7,726.30<br>93,37Ll60 | Secured   Priority   Unsecured<br>$7,726.30<br>93,37Ll60 |
| | Case Number*   05-44481 | Case Number*   05-44640 |
| Claim: 6470<br>Date Filed:   05/22/2006<br>Docketed Total:   $55.11<br>Filing Creditor Name and Address:<br>MONTAGUE COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>2323 BRYAN ST STE 1600<br>DALLAS, TX 75201 | Claim Holder Name and Address<br>MONTAGUE COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>2323 BRYAN ST STE 1600<br>DALLAS, TX 75201 | |
| | Docketed Total:   955.11 | Modified Total:   947.78 |
| | Secured   Priority   Unsecured<br>$55.11<br>955.11 | Secured   Priority   Unsecured<br>$42.28<br>947.78 |
| | Case Number*   05-44481 | Case Number*   05-44640 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s OueeSion

**EXHIBIT E-U-ADJOmRNED TAX CLAIMS SmBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 1266<br>Date Filed:   12/23/2005<br>Docketed Total:    $93.64<br>Filing Creditor Name and Address:<br>MONTGOMERY COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON<br>PO BOX 3064<br>HOUSTON, TX 77253-3064 | Claim Holder Name and Address<br><br>MONTGOMERY COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON<br>PO BOX 3064<br>HOUSTON, TX 77253-3064 | |
| | Docketed Total:        926.U4 | Modified Total:        926.U4 |
| | Secured        Priority        Unsecured | Secured        Priority        Unsecured |
| | $93.64 | $93.64 |
| Case Number*<br>05-44481 | 926.U4 | Case Number*<br>05-44640    926.U4 |
| Claim: 1284<br>Date Filed:   12/27/2005<br>Docketed Total:    $880.28<br>Filing Creditor Name and Address:<br>NUECES COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 S IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Claim Holder Name and Address<br><br>NUECES COUNTY<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 S IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | |
| | Docketed Total:        9880.78 | Modified Total:        9135.78 |
| | Secured        Priority        Unsecured | Secured        Priority        Unsecured |
| | $880.28 | $675.28 |
| Case Number*<br>05-44481 | 9880.78 | Case Number*<br>05-44640    9135.78 |
| Claim: 5521<br>Date Filed:   05/10/2006<br>Docketed Total:    $687.88<br>Filing Creditor Name and Address:<br>SAN MARCOS CISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | Claim Holder Name and Address<br><br>SAN MARCOS CISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLP<br>1949 SOUTH IH 35 78741<br>PO BOX 17428<br>AUSTIN, TX 78760-7428 | |
| | Docketed Total:        9183.88 | Modified Total:        9183.88 |
| | Secured        Priority        Unsecured | Secured        Priority        Unsecured |
| | $687.88 | $687.88 |
| Case Number*<br>05-44481 | 9183.88 | Case Number*<br>05-44640    9183.88 |

*See Exhibit F for a listing of debtor entities by case number.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Ob niuj s Claib s Oue$tion

**EXHIBIT E-U-ADJOmRNED TAX CLAIMS SmBJECT TO MODIFICATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

| CLAIM TO BE MODIFIED | Claim Holder Name and Address | Docketed Total: | | 9444.31 | | Modified Total: | | 9618.16 |
|---|---|---|---|---|---|---|---|---|

Claim: 854
Date Filed:  11/28/2005
Docketed Total:   $414.71
Filing Creditor Name and Address:
TARRANT COUNTY
LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
2323 BRYAN ST STE 1600
DALLAS, TX 75201

CLAIM AS DOCKETED:
Claim Holder Name and Address
TARRANT COUNTY
LINEBARGER GOGGAN BLAIR &
SAMPSON LLP
2323 BRYAN ST STE 1600
DALLAS, TX 75201

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44481 | $414.71 | | |
| | 9444.31 | | |

CLAIM AS MODIFIED

| Case Number* | Secured | Priority | Unsecured |
|---|---|---|---|
| 05-44640 | $318.13 | | |
| | 9618.16 | | |

**Total Claib s to ue Modified: 1U**

**Total Ab oj nt as DoSketed:**    9563,67L58

**Total Ab oj nt as Modified:**    9413,036.10

*See Exhibit F for a listing of debtor entities by case number.

Page 6 of 6

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

**EXHIBIT E-7 – ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 15234<br>Date Filed:    6. 15\15\6\6\2<br>Docketed Total:    u\\S3\S9. 1\l8\5<br><br>Filing Creditor Name and Address:<br>CRNTZAZOAN FBNDE LLC AE<br>AE\0 NGG\KF TZK\ETG\L LTD<br>CRNTZAZOAN FBNDE LLC<br>S\l1 P RB\TNA,. A\0 G\ETG\559<br>1 Z\GGNP 0\07 / CT 62\546 | Claim 7 \older Name and Address<br><br>CRNTZAZOAN FBNDE LLC AE<br>AE\0 NGG\KF TZK\ETG\L LTD<br>CRNTZAZOAN FBNDE LLC<br>S\l1 P RB\TNA,. A\0 G\ETG\559<br>1 Z\GGNP 0\07 / CT 62\546<br><br>Docketed Total:    $1,494,571.82 | , odified Total:    $1,374,018.29 |
| | **Case N\*myerU**<br>69\N8\S2\S6 | **Esc\*red** | **Priorit-**<br>u\\12\,514\b\4 | **Bnsec\*red**<br>u\\S. \$495\b\43 | | **Case N\*myerU**<br>69\N8\S2\S6 | **Esc\*red** | **Priorit-**<br>u\\12\/13\S\b\94 | **Bnsec\*red**<br>u\\149. /\S\S4b 2 |
| | | $16,213.43 | $1,478,358.39 | | | $16,194.53 | $1,357,823.76 |

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT E-7 – ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Claim 7 older Name and Address | Securi- | Priori- | Bnsec*red | | Case N*mverU | Fce*red | Priori- | Bnsec*red |
| Claim: 169. S | FBZIB8 AP A GLGCTZ0Ë NKZT7 | | | | | 69NISZS6 | | u3S5H S | u522/445I84 |
| Date Filed:  6. 1I9I5662 | A,  GZŒA ARD OŃC AND | Docketed Total: | | $312,926,79 | | | | | |
| Docketed Total:    u96I23/14II89 | FBZIB8 AP A GLGCTZ0Ë CK,  RAN& | | | | , odified Total: | | | | $267,320,51 |
| Filing Creditor Name and Address: | 0 AZNB,  Z0DGZ0NI  EC7 ,  ODT V | | | | | | | $988.18 | $266,332,33 |
| FBZIB8 AP A GLGCTZ0Ë NKZT7 | 7 KP LGTT LLR | | | | | | | | |
| A,  GZŒA ARD OŃC AND | RK YKx  495 | Fce*red | | | | | | | |
| FBZIB8 AP A GLGCTZ0Ë | I ZAND ZAR0Ë/,  OS3961M495 | u415/352b 3 | | | | | | | |
| CK,  RAN& | | $312,926,79 | | | | | | | |
| 0 AZNB,  Z0DGZ0NI  EC7 ,  ODT V | Case N*mverU | | | | | | | | |
| 7 KP LGTT LLR | 69NISZS6 | | | | | | | | |
| RK YKx  495 | | | | | | | | | |
| I ZAND ZAR0Ë/,  OS3961M495 | Claim 7 older Name and Address | | | | | Case N*mverU | Fce*red | Priori- | Bnsec*red |
| | 1 KLD,  AN EAC7 E CZGDOT | | | | | 69NISZS6 | | | u4S6/666066 |
| | RAZ7NGZ1E LR | Docketed Total: | | $4,000,000.00 | | | | | $3,417,035.76 |
| | C K I KLD,  AN EAC7 E V CK | | | | , odified Total: | | | | |
| | 46 7 BDEKN 1. 17 FL | | | | | | | u4/SI,/649b 2 | |
| | IGZEG& CCI&/ Nh6. 465 | Fce*red | | | | | | | $3,417,035.76 |
| | | | | Bnsec*red | | | | | |
| | Case N*mverU | | | u5666/666066 | | | | | |
| | 69NISZS6 | | | $4,000,000.00 | | | | | |
| | | | | | | Case N*mverU | Fce*red | Priori- | Bnsec*red |
| | Claim 7 older Name and Address | | | | | 69NISZS6 | | | u289/33251 |
| | | | | | | | | | $645,996.21 |
| | ERCR1 ZKB9 R LLC | Docketed Total: | | $756,206.56 | | | | | |
| | 5 I ZGGNP 0Ë7 RLJ 1ET FL | | | | , odified Total: | | | | |
| | I ZGGNP 0Ë7 / CT 62S46 | | | | | | | | |
| | | Fce*red | | Bnsec*red | | | | | |
| | Case N*mverU | | | u. 92/562I92 | | | | | |
| | 69NISZS6 | | | $756,206.56 | | | | | |
| | | | | | | | | | $645,996.21 |

Ufec OM0yit F for a listing of deptor entities y- case n*mverb

Page 5 of .

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT E-7–ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|

**Claim: 21S.**
Date Filed:    69H. 15662
Docketed Total:    u5532/429846
Filing Creditor Name and Address:
LOTTGLFBEG0&C
LOTTGLFBEG0&C
S66 NKZ2T7 P GET 7 0 7 P A&
DGE RLA0KGE/ 0, 26612

Claim 7 older Name and Address
YAN8 KF A, GZ0&A N A
166 N TZ&K&N ET 5677 FL
, A0, CKDGNCO66, 56 61
C7 AZLKTTG/ NC 58599

Docketed Total:    $22,350.37

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | | u55.49604 |
| | | | $22,350.37 |

, odified Total:

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | u94493H8 | |
| | | $53,359.18 | |

Docketed Total:    $53,359.18

---

**Claim: 5. 16**
Date Filed:    6S16915662
Docketed Total:    u1S3/. S2B62
Filing Creditor Name and Address:
, GTAL RKP DGZ RZKDBCTE
CK, RAN&
1. 669 A P GETF6LD RAZ8 ZD
P GETF6LD O\ S26. SM4. 4

Claim 7 older Name and Address
CKNTZ/AZ0AN FBNDE LLC
S11 P RBTNA, A0 G ETG 559
1 ZGGNP 6l7 / CT 62S46

Docketed Total:    $2,974,014.73

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | | u5/3. S61Sb 4 |
| | | | $2,974,014.73 |

, odified Total:    $2,920,073.34

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | | u5/356/6. 4l4&5 |
| | | | $2,920,073.34 |

---

**Claim: 112S2**
Date Filed:    6. 1S. 15662
Docketed Total:    u1434/434l8i
Filing Creditor Name and Address:
, 0LL0\ GN V CK, RAN&
1659 EQ T7 A0 G
NGP &KZ8 / N& 1661S

Claim 7 older Name and Address
LOXB0DT & EKLB TO&NE 0&C
KNGBN6&GZE0T & RLAJ A ETG 415
7 AC8 GNEAC8 / Nh 6, 261

Docketed Total:    $149,746.96

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8SS1 | | | u1S3/. S2B2 |
| | | | $149,746.96 |

, odified Total:    $145,323.07

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | u1/.S3SH5 | u194/.S5SB3 |
| | | $1,498.18 | $143,824.89 |

---

Filing Creditor Name and Address:
, 0LL0\ GN V CK, RAN&
1659 EQ\ T7 A0G
NGP &KZ8 / N& 1661S

Claim 7 older Name and Address
, 0LL0\ GN V CK, RAN&
1659 EQ\ T7 A0 G
NGP &KZ8 / N& 1661S

Docketed Total:    $1,393,393.41

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | u565/S15H 1 | u1/136/3S1l66 |
| | | $202,412.11 | $1,190,981.30 |

, odified Total:    $894,607.47

| Case N*myerU | Ecc*red | Rtiorit- | Bnsec*red |
|---|---|---|---|
| 69N8S2S6 | | u565/S15H 1 | u235/139l42 |
| | | $202,412.11 | $692,195.36 |

Ufec GMQyit F for a listing of deytor entities y- case n*myerb

Page 4 of.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

## EXHIBIT E-7 – ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 14353<br>Date Filed: 6. I4I I5662<br>Docketed Total: uI5. /4. SB2<br>Filing Creditor Name and Address:<br>RAZ8 0 GP , GTAL RZKDBCTE<br>. ØLGZ I7 NEKN<br>RK YKx 462<br>I ZAND ZARDE/ , OS3961M462 | Claim 7 older Name and Address<br>RAZ8 0 GP , GTAL RZKDBCTE<br>, ØLGZ I7 NEKN<br>RK YKx. 462<br>I ZAND ZARDE/ , OS3961M462<br><br>Docketed Total: **$187,374.96**<br>Priorit-<br>Fec*red<br>Case N*mverU<br>69MS256<br>Bnsec*red u1S. 4. SB2<br>**$187,374.96** | Docketed Total: **$109,722.72**<br>Priorit- uI. 6960BS<br>Fec*red<br>Case N*mverU<br>69MS256<br>Bnsec*red uS2. SI6S<br>**$17,050.64**    **$92,672.08** |
| Claim: I56S.<br>Date Filed: 6. I4I I5662<br>Docketed Total: u9/SS2/SS1I6S<br>Filing Creditor Name and Address:<br>R7 0L0E/ EG, ØIKNDBCTKZE ØAC<br>8 IZ8 RATZ4Ø8 V LKC8 7 AZT<br>N0E7 KLEKN I ZA7A, LLR<br>933 LGx ØNl TKN A0 G<br>NGP &KZ8 / N& I6655 | Claim 7 older Name and Address<br>Nx R EG, ØIKNDBCTKZE BEA ØAC<br>1163 , C8 A& DZ<br>EAN I8EG/ CA 39I4I<br><br>Docketed Total: **$5,486,881.18**<br>Priorit-<br>Fec*red<br>Case N*mverU<br>69MSS51<br>Bnsec*red u9/SS2/SS1I6S<br>**$5,486,881.18** | , odified Total: **$5,171,725.92**<br>Priorit- u13S5. SB5<br>Fec*red<br>Case N*mverU<br>69MS92.<br>69MS256<br>Bnsec*red u4S9SS96<br>uS/3S5/36236<br>**$194,274.52**    **$4,977,451.40** |
| Claim: I9546<br>Date Filed: 6. I4I I5662<br>Docketed Total: uS52/4I56S<br>Filing Creditor Name and Address:<br>XBALCIt& E&NT7 GT0E Z B YYGZ<br>0AC<br>YBC8 0NI 7 A, DKKLØTTLGV<br>YBZZKBI 7 ELLR<br>RK YKx 1966<br>A8 ZKN/ K7 SS463M966 | Claim 7 older Name and Address<br>XBALCIt& E&NT7 GT0E Z B YYGZ 0AC<br>YBC8 0NI 7 A, DKKLØTTLGV<br>YBZZKBI 7 ELLR<br>RK YKx 1966<br>A8 ZKN/ K7 SS463M966<br><br>Docketed Total: **$826,312.04**<br>Priorit-<br>Fec*red<br>Case N*mverU<br>69MS256<br>Bnsec*red uS52/4I56S<br>**$826,312.04** | , odified Total: **$742,729.51**<br>Priorit- uSS/1I9b 2<br>Fec*red<br>Case N*mverU<br>69MS256<br>Bnsec*red u29S/2I4b 9<br>**$84,115.76**    **$658,613.75** |

UEcc ØMØyit F for a listing of deptor entities y- case n*myerb

Rage S of .

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-7 – ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

**Claim: 19541**
Date Filed: 6. 14115662
Docketed Total: u21S695812

Filing Creditor Name and Address:
X8ALC8 E&N7 Gf0E Z1BYYGZ ONC
Y8C8 ONl 7 A, DKKLCTLLGV
Y8ZZKBI 7 ELLR
RK YKx 1966
A8 ZKN/ K7 SS463M966

Claim 7 older Name and Address
X8ALC8 E&N7 Gf0E Z1BYYGZ ONC
Y8C8 ONl 7 A, DKKLCTLLGV
Y8ZZKBI 7 ELLR
RK YKx 1966
A8 ZKN/ K7 SS463M966

Case N*mverU 69M89S.

Docketed Total: $614,058.16

Exc*red

Priorit-

Bnsec*red u21S695812
$614,058.16

Case N*mverU 69M89S.

, odified Total:

Exc*red

Priorit- u164/6S5l66
$103,082.00

Bnsec*red uS. S/2S3l86
$478,689.40

$581,771.40

---

**Claim: 16615**
Date Filed: 6. 15615662
Docketed Total: u96./44.l8S

Filing Creditor Name and Address:
EGLGCT ONDBETZ0E
CKZRKZATOKN F8 A EGLGCT
TKKL V D0l/CKZR
S59 P ALNBT ETT ETG1S66
CONCONNATOK7 S9565

Claim 7 older Name and Address
EGLGCT ONDBETZ0E CKZRKZATOKN
F8 A EGLGCT TKKL V D0l/CKZR
S59 P ALNBT ETT ETG1S66
CONCONNATOK7 S9565

Case N*mverU 69M82S6

Docketed Total: $507,337.84

Exc*red u96./44.l8S
$507,337.84

Priorit-

Bnsec*red

Case N*mverU 69M82S6

, odified Total:

Exc*red u59S/6. 9l86
$252,075.90

Priorit- u56/. 42l26
$20,736.60

Bnsec*red
$272,812.50

---

**Claim: 1S. 5**
Date Filed: 616l15l662
Docketed Total: u121/S12l26

Filing Creditor Name and Address:
E7 GZP OK P 0LLO,. ECK,. RAN&
161 RZKERGCT A0 GNP
259 ZGRBYL0E YLDI
CLG0 GLAND/ K7 SS119

Claim 7 older Name and Address
E7 GZP OK P 0LLO,. ECK,. RAN&
161 RZKERGCT A0 GNP
259 ZGRBYL0E YLDI
CLG0 GLAND/ K7 SS119

Case N*mverU 69M8SS1

Docketed Total: $161,816.60

Exc*red

Priorit-

Bnsec*red u121/S12l26
$161,816.60

Case N*mverU 69M82S6

, odified Total:

Exc*red

Priorit- uS/1. 3l69
$2,179.25

Bnsec*red ulS3/9S2l29
$149,546.65

$151,725.90

UEcc GMQyit f for a listing of deytor entities y- case n*myerb

**In re Delphi Corporation, et al.**
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-7 – ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | CLAIM AS MODIFIED | | | |
|---|---|---|---|---|---|---|---|---|

Claim: 16318
Date Filed:    6. 1B216662
Docketed Total:    u16485449862
Filing Creditor Name and Address:
EKLGCTZKN CKZRKZATOKN
EKLGCTZKN , ANBFACTBZA DG
, Gx 0K EA AND 0 AZOKBE KF T7 GZ
AFF0L0ATGE AND EBYt0D0AZ0GE
T7 GZ AFF0L0ATGE AND
EBYt0D0AZ0GE
YOALEKN YGZ1 GN V EC7 P AY
5266 GL CA, OIK ZGAL ETG 466
RALK ALTK/ CA 35462

Claim 7 older Name and Address
EKLGCTZKN CKZRKZATGKN
EKLGCTZKN , ANBFACTBZA DG
, Gx 0K EA AND 0 AZOKBE KF T7 GZ
AFF0L0ATGE AND EBYt0D0AZ0GE
YOALEKN YGZ1 GN V EC7 P AY
5266 GL CA,  OIK ZGAL ETG 466
RALK ALTK/ CA 35462

Docketed Total:    **$2,532,173.93**

Bnsec*red    u15945/1. 4B4
**$2,532,173.93**

Case N*myerU    69N8S2S6

Bnsec*red    u1/S92/23263
**$1,856,696.29**

Case N*myerU    69N8S2S6

Priorit-    u49/S9Sb S
**$35,454.74**

, odified Total:    **$1,892,151.03**

---

Claim 7 older Name and Address
TRI  CZGDOT KRBKZ7TBNGT6EE FBND
LR
C K TRI  CZGDOT ,  ANAI G,  GNT LR
S266 P GLLE FAZI K CTZ
36 E EG0 GNT7 ET
, ONGARKLOE/ ,  N 99565

Docketed Total:    **$7,850,161.53**

Bnsec*red    u. S96/1219t4
**$7,850,161.53**

Case N*myerU    69N8S2S6

Bnsec*red    u9/S29/3S4t51
**$5,865,983.81**

Case N*myerU    69N8S2S6

Priorit-

, odified Total:    **$5,865,983.81**

---

Claim: 1SI4S
Date Filed:    6. I4I16662
Docketed Total:    u911/292I41
Filing Creditor Name and Address:
ERCR1 ZKBR LLLC AE AEE0 NGG KF
KF 8 Gx RLAET0E LLC
TP K 1 ZGGNP 0I7 RLJ 1ET FL
1 ZGGNP 0I7 / CT 62S46

Claim 7 older Name and Address
ERCR1 ZKBR LLLC AE AEE0 NGG KF
8 Gx RLAET0E LLC
TP K 1 ZGGNP 0I7 RLJ 1ET FL
1 ZGGNP 0I7 / CT 62S46

Docketed Total:    **$511,656.31**

Bnsec*red    u911/292I41
**$511,656.31**

Case N*myerU    69N8S2S6

Bnsec*red    u121/64608.
**$161,030.87**

Case N*myerU    69N8S2S6

Priorit-    uS/61116.
**$4,011.27**

, odified Total:    **$165,042.14**

---

Ufec GMQyit F for a listing of deytor entities y-  case n*myerb

Page 2 of .

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

**EXHIBIT E-7 – ADJOURNED MODIFIED CLAIMS ASSERTING RECLAMATION**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | | | | CLAIM AS MODIFIED | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Claim 7 older Name and Address | Case N*myerU | Fcc*red | Briorti- | Bnsec*red | | Case N*myerU | Fcc*red | Briorti- | Bnsec*red |
| Claim: 1S629 | | | | | | | | | | |
| Date Filed:  6. I411I5662 | 0 GCTKZ CANTGC7 0AC | | | | u52. /. 49b 6 | | | | u55/SS2l\|6 | u556/S6. l\|6 |
| Docketed Total:   u52. /. 49b 6 | 196 P. hGfFGZEKN ETG 5966 | Docketed Total: | | | $267,735.70 | , odified Total: | | | | $249,253.70 |
| Filing Creditor Name and Address: | DGT7ZKO7 /. O8S5S2\|8S19 | | | | | | | | | |
| 0 GCTKZ CANTGC7 0AC | | Case N*myerU | | Briorti- | Bnsec*red | | Case N*myerU | | Briorti- | Bnsec*red |
| 196 P. hGfFGZEKN ETG 5966 | | 69\|8S2S6 | | | $267,735.70 | | 69\|8S2S6 | | $28,846.40 | $220,407.30 |
| DGT7ZKO7 /. O8S5S2\|8S19 | | | | | | | | | | |

**Total Claims to be Modified: 14**

**Total Amount as Docketed:**     $30,048,718.89

**Total Amount as Modified:**     $24,920,652.46

Ufcc GMQyit F for a listing of deotor entities y- case n*myerb

Rage.  of.

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

## EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 71061<br>Date Filed:    04/25/200P<br>Docketed Total:    / 60800300<br>Filing Creditor Name and Address:<br>ABRHOALT MICWAUY A AND<br>BURUCCA C ABRHOALT<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8IN , P10, | Claim Wolder Name and Address<br>ABRHOALT MICWAUY A AND<br>BURUCCA C ABRHOALT<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8IN , P10, | |
| Case NSm. eru<br>0Sṭ , P, 0 | Docketed Total:    $30,000.00<br>LeeSred    9riortb    * nsecSred<br>/ 60800300<br>$30,000.00 | Modi-ied Total:    $5,000.00<br>LeeSred    9riortb    * nsecSred<br>/S00300<br>$5,000.00 |
| | | Case NSm. eru<br>0Sṭ , P, 0 |
| Claim: 7106,<br>Date Filed:    04/25/200P<br>Docketed Total:    / 60800300<br>Filing Creditor Name and Address:<br>RU* XU BHRUBT Y<br>YA* DIO OUHBOUB* TWLBFHBD<br>f LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8IN , P10, | Claim Wolder Name and Address<br>RU* XU BHRUBT Y<br>YA* DIO OUHBOUB* TWLBFHBD f<br>LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8IN , P10, | |
| Case NSm. eru<br>0Sṭ , , 57 | Docketed Total:    $30,000.00<br>LeeSred    9riortb    * nsecSred<br>/ 60800300<br>$30,000.00 | Modi-ied Total:    $5,000.00<br>LeeSred    9riortb    * nsecSred<br>/S00300<br>$5,000.00 |
| | | Case NSm. eru<br>0Sṭ , P, 0 |
| Claim: 71066<br>Date Filed:    04/25/200P<br>Docketed Total:    / 60800300<br>Filing Creditor Name and Address:<br>RUV B* LLUYY AND RABRABA A<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8IN , P10, | Claim Wolder Name and Address<br>RUV B* LLUYY AND RABRABA A<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8IN , P10, | |
| Case NSm. eru<br>0Sṭ , P, 0 | Docketed Total:    $30,000.00<br>LeeSred    9riortb    * nsecSred<br>/ 60800300<br>$30,000.00 | Modi-ied Total:    $5,000.00<br>LeeSred    9riortb    * nsecSred<br>/S00300<br>$5,000.00 |
| | | Case NSm. eru<br>0Sṭ , P, 0 |

In re Delphi Corporation, **et al.**
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

## EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 7S8SP<br>Date Filed: 04252100P<br>Docketed Total:  / 60800300<br>Filing Creditor Name and Address:<br>R* UXU BHRUBT Y AND NHBMA x<br>YINDA OLHBOUULI<br>7SP UMABXUT LT<br>P00<br>INDBANA9HYL8IN , P10,<br><br>Case NSm. eru<br>0Sy., P, 0 | Claim Wolder Name and Address<br>R* UXU BHRUBT Y AND NHBMA x<br>YINDA OLHBOUULI<br>7SP UMABXUT LT<br>P00<br>INDBANA9HYL8IN , P10,<br><br>Docketed Total:  $30,000.00<br><br>LeeSred    9riortb    * nsecSred<br>                              / 60800300<br>                        / S800300<br>                   $30,000.00<br><br>Case NSm. eru<br>0Sy., P, 0 | Modi-ied Total:  $5,000.00<br><br>LeeSred    9riortb    * nsecSred<br>                              / S800300<br>                   $5,000.00<br><br>Case NSm. eru<br>0Sy., P, 0 |
| Claim: 7106S<br>Date Filed: 04252100P<br>Docketed Total:  / 60800300<br>Filing Creditor Name and Address:<br>R* IL xAMUL AND xACI * UYRU<br>YINDA OLHBOUULI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Case NSm. eru<br>0Sy., P, 0 | Claim Wolder Name and Address<br>R* IL xAMUL AND xACI * UYRU<br>YINDA OLHBOUULI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Docketed Total:  $30,000.00<br><br>LeeSred    9riortb    * nsecSred<br>                              / 60800300<br>                   $30,000.00<br><br>Case NSm. eru<br>0Sy., P, 0 | Modi-ied Total:  $5,000.00<br><br>LeeSred    9riortb    * nsecSred<br>                              / S800300<br>                   $5,000.00<br><br>Case NSm. eru<br>0Sy., P, 0 |
| Claim: 7106P<br>Date Filed: 04252100P<br>Docketed Total:  / 60800300<br>Filing Creditor Name and Address:<br>CANTUB BICWABD AND YH* ANNA<br>YINDA OLHBOUULI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Case NSm. eru<br>0Sy., P, 0 | Claim Wolder Name and Address<br>CANTUB BICWABD AND YH* ANNA<br>YINDA OLHBOUULI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Docketed Total:  $30,000.00<br><br>LeeSred    9riortb    * nsecSred<br>                              / 60800300<br>                   $30,000.00<br><br>Case NSm. eru<br>0Sy., P, 0 | Modi-ied Total:  $5,000.00<br><br>LeeSred    9riortb    * nsecSred<br>                              / S800300<br>                   $5,000.00<br><br>Case NSm. eru<br>0Sy., P, 0 |

uLce UG&  it F -or a listing o- or entities .  b case nSm. er3

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | | CLAIM AS MODIFIED | |
|---|---|---|---|---|
| Claim: 71064<br>Date Filed: 04252200P<br>Docketed Total: / 60800300<br>Filing Creditor Name and Address:<br>CVHNCL DHNAYD AND CABHYU Y<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNA9HYL8IN , P10, | Claim Wolder Name and Address<br><br>CVHNCL DHNAYD AND CABHYU Y<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNA9HYL8IN , P10, | Docketed Total: | | Modi-ied Total: |
| | Case NSm. eru<br>0Sy , P, 0 | LeeSred      9riorith<br>———————   * nsecSred<br>/ 60800300<br>**$30,000.00** | Case NSm. eru<br>0Sy , P, 0 | LeeSred      9riorith<br>———————   * nsecSred<br>/ S800300<br>**$5,000.00** |
| | | $30,000.00 | | $5,000.00 |
| Claim: 71065<br>Date Filed: 04252200P<br>Docketed Total: / 60800300<br>Filing Creditor Name and Address:<br>DAh fL fEBHRUBT U 9YAfNTfFF h<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNA9HYL8IN , P10, | Claim Wolder Name and Address<br><br>DAh fL fEBHRUBT U 9YAfNTfFF h<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNA9HYL8IN , P10, | Docketed Total: | | Modi-ied Total: |
| | Case NSm. eru<br>0Sy , P, 0 | LeeSred      9riorith<br>———————   * nsecSred<br>/ 60800300<br>**$30,000.00** | Case NSm. eru<br>0Sy , P, 0 | LeeSred      9iorith<br>———————   * nsecSred<br>/ S800300<br>**$5,000.00** |
| | | $30,000.00 | | $5,000.00 |
| Claim: 71O6K<br>Date Filed: 04252200P<br>Docketed Total: / 60800300<br>Filing Creditor Name and Address:<br>UNNfL DHNAYD AND CABHIY<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNA9HYL8IN , P10, | Claim Wolder Name and Address<br><br>UNNfL DHNAYD AND CABHY<br>YINDA OLHBOULLI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNA9HYL8IN , P10, | Docketed Total: | | Modi-ied Total: |
| | Case NSm. eru<br>0Sy , P, 0 | LeeSred      9riorith<br>———————   * nsecSred<br>/ 60800300<br>**$30,000.00** | Case NSm. eru<br>0Sy , P, 0 | LeeSred      9iorith<br>———————   * nsecSred<br>/ S800300<br>**$5,000.00** |
| | | $30,000.00 | | $5,000.00 |

uLce UC6G it F -or a listing o- de- tor entities .  b case nSm. er3

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 710. 0<br>Date Filed:<br>Docketed Total: / 60800030<br>Filing Creditor Name and Address:<br>WHQT ABTW* B AND h lh BAN<br>YINDA OLHBOU ULI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10, | Claim Wolder Name and Address<br>WHQT ABTW* B AND h lh BAN<br>YINDA OLHBOU ULI<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Docketed Total: $30,000.00<br><br>LeeSred        9riortb<br>*nseeSred<br>/ 60800030<br>/ S800030<br>$30,000.00<br><br>Case NSm. eru<br>0Sy, , - 57 | Modi-ied Total: $5,000.00<br><br>LeeSred        9riortb<br>*nseeSred<br>/ S800030<br>$5,000.00<br><br>Case NSm. eru<br>0Sy, , P, 0 |
| Claim: 710. 7<br>Date Filed:<br>Docketed Total: / 60800030<br>Filing Creditor Name and Address:<br>W RRABD CYABlNCU U<br>YA* DIO OUHBOU B* TWABFHBD f<br>f LBUL<br>7SP U MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10, | Claim Wolder Name and Address<br>W* RRABD CYABlNCU U<br>YA* DIO OUHBOU B* TWABFHBD f<br>LBUL<br>7SP U MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Docketed Total: $30,000.00<br><br>LeeSred        9riortb<br>*nseeSred<br>/ 60800030<br>/ S800030<br>$30,000.00<br><br>Case NSm. eru<br>0Sy, , P, 0 | Modi-ied Total: $5,000.00<br><br>LeeSred        9riortb<br>*nseeSred<br>/ S800030<br>$5,000.00<br><br>Case NSm. eru<br>0Sy, , P, 0 |
| Claim: 710. 1<br>Date Filed:<br>Docketed Total: / 60800030<br>Filing Creditor Name and Address:<br>MLBBET xAMLL AND RHNNIU<br>XATWYUN A M* LOBAh U ULI<br>7SP U MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10, | Claim Wolder Name and Address<br>MLBBET xAMLL AND RHNNIU<br>XATWYUN A M* LOBAh U ULI<br>7SP U MABXUT LT<br>LTU P00<br>INDBANA9HYL8IN , P10,<br><br>Docketed Total: $30,000.00<br><br>LeeSred        9riortb<br>*nseeSred<br>/ 60800030<br>/ S800030<br>$30,000.00<br><br>Case NSm. eru<br>0Sy, , P, 0 | Modi-ied Total: $5,000.00<br><br>LeeSred        9riortb<br>*nseeSred<br>/ S800030<br>$5,000.00<br><br>Case NSm. eru<br>0Sy, , P, 0 |

uLee UG& it F -or a listing o- de: or entities - b case nSm. er3

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 710, 6<br>Date Filed: 04/25/200P<br>Docketed Total: / 60800/300<br>Filing Creditor Name and Address:<br>MBNNEX BAY9WD<br>YA* DIO OUHBOU B* TWLBFHBD<br>f LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8I8N , P10, | Claim Wolder Name and Address<br>MBNNEX BAY9WD<br>YA* DIO OUHBOU B* TWLBFHBD f<br>LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8I8N , P10,<br><br>Docketed Total:  $30,000.00<br><br>9riori‌tb    LecSred    * nsecSred / 60800/300<br><br>Case NSm. em<br>0Sy, , 57    $30,000.00 | Modi-ied Total:    $5,000.00<br><br>9riori‌tb    LecSred    * nsecSred / S800/300<br><br>Case NSm. em<br>0Sy, , P, 0    $5,000.00 |
| Claim: 710, ,<br>Date Filed: 04/25/200P<br>Docketed Total: / 60800/300<br>Filing Creditor Name and Address:<br>HRBUN MICWAUY AND INOBD<br>HRBUN<br>YINDA OLHBOU<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8I8N , P10, | Claim Wolder Name and Address<br>HRBUN MICWAUY AND INOBD<br>HRBUN<br>YINDA OLHBOU<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8I8N , P10,<br><br>Docketed Total:  $30,000.00<br><br>9riori‌tb    LecSred    * nsecSred / 60800/300<br><br>Case NSm. em<br>0Sy, , P, 0    $30,000.00 | Modi-ied Total:    $5,000.00<br><br>9riori‌tb    LecSred    * nsecSred / S800/300<br><br>Case NSm. em<br>0Sy, , P, 0    $5,000.00 |
| Claim: 710, S<br>Date Filed: 04/25/200P<br>Docketed Total: / 60800/300<br>Filing Creditor Name and Address:<br>9WL9YL xHWN J  AND DLRHBAWx<br>9WL9YL<br>Y OLHBOU J  B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8I8N , P10, | Claim Wolder Name and Address<br>9WL9YL xHWN J  AND DLRHBAWx<br>9WL9YL<br>Y OLHBOU J  B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8I8N , P10,<br><br>Docketed Total:  $30,000.00<br><br>9riori‌tb    LecSred    * nsecSred / 60800/300<br><br>Case NSm. em<br>0Sy, , P, 0    $30,000.00 | Modi-ied Total:    $5,000.00<br><br>9riori‌tb    LecSred    * nsecSred / S800/300<br><br>Case NSm. em<br>0Sy, , P, 0    $5,000.00 |

uLcc UG&  it F -or a listing o- de- tor entities .  b case nSm. er3

9age S-o- 5

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Nineteenth Omnibus Claims Objection

**EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 710, P<br>Date Filed:  04252J00P<br>Docketed Total:   / 60800J30<br>Filing Creditor Name and Address:<br>9WEYBPL BHRLBT<br>YINDA OLHHOULLI J  B* LLOYY LJ9UL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8JN , P10, | Claim Wolder Name and Address<br>9WEYBPL BHRLBT<br>YINDA OLHHOULLI J  B* LLOYY LJ9UL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNANA9HYL8JN , P10,<br><br>Docketed Total:   $30,000.00 | Modi-ied Total:   $5,000.00 |
| Case NSm_ eru<br>0Sy , P, 0 | 9riorith        LecSred        * nsecSred<br>                                / 60800J30<br>                                        $30,000.00 | Case NSm_ eru     9riorith        LecSred        * nsecSred<br>0Sy , P, 0                                      / S800J00<br>                                                              $5,000.00 |
| Claim: 710, 4<br>Date Filed:  04252J00P<br>Docketed Total:   / 60800J30<br>Filing Creditor Name and Address:<br>9BH* D DH* OYAL AND ULTWJB<br>Y OLHBOUJ   B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8JN , P10, | Claim Wolder Name and Address<br>9BH* D DH* OYAL AND ULTWJB<br>Y OLHBOUJ   B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8JN , P10,<br><br>Docketed Total:   $30,000.00 | Modi-ied Total:   $5,000.00 |
| Case NSm_ eru<br>0Sy , P, 0 | 9riorith        LecSred        * nsecSred<br>                                / 60800J30<br>                                        $30,000.00 | Case NSm_ eru     9riorith        LecSred        * nsecSred<br>0Sy , P, 0                                      / S800J00<br>                                                              $5,000.00 |
| Claim: 710, 5<br>Date Filed:  04252J00P<br>Docketed Total:   / 60800J30<br>Filing Creditor Name and Address:<br>B* LLOYY TWHMAL AND NHBMA<br>Y OLHBOUJ   B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8JN , P10, | Claim Wolder Name and Address<br>B* LLOYY TWHMAL AND NHBMA<br>Y OLHBOUJ   B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBNANA9HYL8JN , P10,<br><br>Docketed Total:   $30,000.00 | Modi-ied Total:   $5,000.00 |
| Case NSm_ eru<br>0Sy , P, 0 | 9riorith        LecSred        * nsecSred<br>                                / 60800J30<br>                                        $30,000.00 | Case NSm_ eru     9riorith        LecSred        * nsecSred<br>0Sy , P, 0                                      / S800J00<br>                                                              $5,000.00 |

uLee UG&  it F -or a listing o- de- tor entities-  b case nSm. er3

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

Nineteenth Omnibus Claims Objection

**EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS**

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 710, K<br>Date Filed:   04252)00P<br>Docketed Total:   / 60800)300<br>Filing Creditor Name and Address:<br>LMEfWsAMUL H AND RUTTQ x<br>YOLHBOUJ   B LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNA\9HYL8lN , P10, | Claim Wolder Name and Address<br><br>LMEfWsAMUL H AND RUTTQ x<br>YOLHBOUJ   B LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNA\9HYL8lN , P10, | Claim Wolder Name and Address |
| | Docketed Total:                           $30,000.00 | Modi-ied Total:                           $5,000.00 |
| | LeeSred          9 riorith       * nsecSred<br>                                          / 60800)300 | LeeSred          9 riorith       * nsecSred<br>                                          / S800)300 |
| | Case NSm_ eru<br>0Sj , , 57 | Case NSm_ eru<br>0Sj , P, 0 |
| | $30,000.00 | $5,000.00 |
| Claim: 710S0<br>Date Filed:   04252)00P<br>Docketed Total:   / 60800)300<br>Filing Creditor Name and Address:<br>LTANLR* BQ JEBHRUBT Y<br>Y* DIO OLHBOU B* TWJBFHBD f<br>LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNA\9HYL8lN , P10, | Claim Wolder Name and Address<br><br>LTANLR* BQ JEBHRUBT Y<br>Y* DIO OLHBOU B* TWJBFHBD f<br>LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNA\9HYL8lN , P10, | |
| | Docketed Total:                           $30,000.00 | Modi-ied Total:                           $5,000.00 |
| | LeeSred          9 riorith       * nsecSred<br>                                          / 60800)300 | LeeSred          9 riorith       * nsecSred<br>                                          / S800)300 |
| | Case NSm_ eru<br>0Sj , P, 0 | Case NSm_ eru<br>0Sj , P, 0 |
| | $30,000.00 | $5,000.00 |
| Claim: 710S7<br>Date Filed:   04252)00P<br>Docketed Total:   / 60800)300<br>Filing Creditor Name and Address:<br>LT* CX BHNAYD 9 LMUYYLQ A<br>LT* CX<br>YOLHBOUJ   B LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNA\9HYL8lN , P10, | Claim Wolder Name and Address<br><br>LT* CX BHNAYD 9 LMUYYLQ A<br>LT* CX<br>YOLHBOUJ   B LBUL<br>7SP UMABXUT LT<br>LTU P00<br>INDBNA\9HYL8lN , P10, | Claim Wolder Name and Address |
| | Docketed Total:                           $30,000.00 | Modi-ied Total:                           $5,000.00 |
| | LeeSred          9 riorith       * nsecSred<br>                                          / 60800)300 | LeeSred          9 riorith       * nsecSred<br>                                          / S800)300 |
| | Case NSm_ eru<br>0Sj , P, 0 | Case NSm_ eru<br>0Sj , P, 0 |
| | $30,000.00 | $5,000.00 |

uLce UC6& it F -or a listing o- de- ter entities .  b case nSm, er3

**In re Delphi Corporation, et al.**
**Case No. 05-44481 (RDD)**

**Nineteenth Omnibus Claims Objection**

### EXHIBIT E-8 – ADJOURNED CONSENSUALLY MODIFIED AND REDUCED CLAIMS

| CLAIM TO BE MODIFIED | CLAIM AS DOCKETED | CLAIM AS MODIFIED |
|---|---|---|
| Claim: 710S1<br>Date Filed: 04/25/2006<br>Docketed Total: /60800030<br>Filing Creditor Name and Address:<br>J AYDH BICWABD Y AND<br>OJ UNDHYQN A J AYDH<br>9YAINTfFL h<br>YOUHBOU J B LBUL<br>7SP U MABXUT LT<br>LTU P00<br>INDBANA9HYBL8IN , P10, | Claim Wolder Name and Address<br>J AYDH BICWABD Y AND<br>OJ UNDHYQN A J AYDH<br>9YAINTfFL h<br>YOUHBOU J B LBUL<br>7SP U MABXUT LT<br>LTU P00<br>INDBANA9HYBL8IN , P10,<br><br>Docketed Total: **$30,000.00**<br><br>Lee$red    9riortib    * nsec$red<br>/ 60800030<br>**$30,000.00**<br><br>Case N$m. eru<br>0Sy. , P. 0 | Modi-ied Total: **$5,000.00**<br><br>Lee$red    9riortib    * nsec$red<br>/ S800030<br>**$5,000.00**<br><br>Case N$m. eru<br>0Sy. , P. 0 |
| Claim: 710S6<br>Date Filed: 04/25/2006<br>Docketed Total: /60800030<br>Filing Creditor Name and Address:<br>QATUL DAYUA AND xACI * UYBNU B<br>QATUL<br>YOUHBOU J B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYBL8IN , P10, | Claim Wolder Name and Address<br>QATUL DAYUA AND xACI * UYBNU B<br>QATUL<br>YOUHBOU J B LBUL<br>7SP UALT MABXUT LT<br>LTU P00<br>INDBANA9HYBL8IN , P10,<br><br>Docketed Total: **$30,000.00**<br><br>Lee$red    9riortib    * nsec$red<br>/ 60800030<br>**$30,000.00**<br><br>Case N$m. eru<br>0Sy. , P. 0 | Modi-ied Total: **$5,000.00**<br><br>Lee$red    9riortib    * nsec$red<br>/ S800030<br>**$5,000.00**<br><br>Case N$m. eru<br>0Sy. , P. 0 |
| | | Total Claims to be Modified: 23<br>Total Amount as Docketed:    **$690,000.00**<br>Total Amount as Modified:    **$115,000.00** |

**In re Delphi Corporation, et al.**                    **Nineteenth Omnibus Objection**

**Case No. 05-44481 (RDD)**

**Exhibit F - Debtor Entity Reference**

| CASE NUMBER | DEBTOR ENTITY |
|---|---|
| 05-44481 | DELPHI CORPORATION |
| 05-44482 | ASEC MANUFACTURING GENERAL PARTNERSHIP |
| 05-44507 | DELPHI MEDICAL SYSTEMS COLORADO CORPORATION |
| 05-44567 | DELPHI MECHATRONIC SYSTEMS, INC. |
| 05-44610 | DELCO ELECTRONICS OVERSEAS CORPORATION |
| 05-44612 | DELPHI DIESEL SYSTEMS CORP. |
| 05-44624 | DELPHI CONNECTION SYSTEMS |
| 05-44640 | DELPHI AUTOMOTIVE SYSTEMS LLC |
| 05-44554 | DELPHI TECHNOLOGIES, INC. |
| 05-44539 | SPECIALTY ELECTRONICS, INC. |
| 05-44547 | DELPHI ELECTRONICS (HOLDING) LLC |
| 05-44626 | PACKARD HUGHES INTERCONNECT COMPANY |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
      In re                        :    Chapter 11
                                          :
DELPHI CORPORATION, <u>et al.</u>,            :    Case No. 05-44481 (RDD)
                                          :
             Debtors.      :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007
DISALLOWING AND EXPUNGING CERTAIN (A) INSUFFICIENTLY DOCUMENTED
CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C)
UNTIMELY CLAIM, AND (D) CLAIMS SUBJECT TO MODIFICATION, TAX CLAIMS
SUBJECT TO MODIFICATION, MODIFIED CLAIMS ASSERTING RECLAMATION, AND
CONSENSUALLY MODIFIED AND REDUCED CLAIMS IDENTIFIED IN NINETEENTH
<u>OMNIBUS CLAIMS OBJECTION</u>

("NINETEENTH OMNIBUS CLAIMS OBJECTION ORDER")

Upon the Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims

Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To

Modification, Tax Claims Subject to Modification, Modified Claims Asserting Reclamation, And

Consensually Modified And Reduced Claims, dated July 13, 2007 (the "Nineteenth Omnibus

Claims Objection"),[1] of Delphi Corporation and certain of its subsidiaries and affiliates, debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"); and upon the

record of the hearing held on the Nineteenth Omnibus Claims Objection; and after due deliberation

thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

    A.    Each holder of a claim, as such term is defined in 11 U.S.C. § 101(5) (as to each, a "Claim") listed on <u>Exhibits</u> <u>A</u>, <u>B-1</u>, <u>B-2</u>, <u>B-3</u>, <u>C</u>, <u>D-1</u>, <u>D-2</u>, <u>D-3</u>, <u>E-1, E-2, E-3, E-4, E-5, E-6, E-7,</u> and <s>D</s><u>E-4</u>8 hereto was properly and timely served with a copy of the Nineteenth Omnibus Claims Objection, a personalized Notice Of Objection To Claim, a copy of the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"), the proposed order granting the Nineteenth Omnibus Claims Objection, and notice of the deadline for responding to the Nineteenth Omnibus Claims Objection. No other or further notice of the Nineteenth Omnibus Claims Objection is necessary.

    B.    This Court has jurisdiction over the Nineteenth Omnibus Claims Objection pursuant to 28 U.S.C. §§ 157 and 1334. The Nineteenth Omnibus Claims Objection is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Nineteenth Omnibus Claims Objection in this district is proper under 28 U.S.C. §§ 1408 and 1409.

    C.    The Claims listed on <u>Exhibit A</u> hereto contain insufficient documentation to support the Claims asserted (the "Insufficiently Documented Claims").

---

*(cont'd from previous page)*

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Nineteenth Omnibus Claims Objection.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

2    DeltaView comparison of pcdocs://chisr01a/555267/4 and pcdocs://chisr01a/555267/8. Performed on 8/15/2007.

D.      The Claims listed on Exhibit B-1 hereto contain liabilities or dollar amounts that are not reflected on the Debtors' books and records (the "Books And Records Claims").

E.      The Claims listed on Exhibit B-2 hereto, which were filed by taxing authorities, contain liabilities and dollar amounts that are not reflected on the Debtors' books and records (the "Books And Records Tax Claims").

F.      The Claims listed on Exhibit B-3 hereto, which were filed by taxing authorities, contain liabilities or dollar amounts that are not reflected on the Debtors' books and records and were also untimely filed pursuant to the Bar Date Order (the "Untimely Books And Records Tax Claims").

G.      The Claim listed on Exhibit C hereto was untimely filed pursuant to the Bar Date Order (the "Untimely Claim").

H.      The Claims listed on Exhibit D-1 hereto (a) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured or priority status (the "Claims Subject To Modification").

I.      The Tax Claims listed on Exhibit D-2 hereto (a) are overstated and/or (b) were filed and docketed against the wrong Debtors (the "Tax Claims Subject To Modification").

J.      The Claims listed on Exhibit D-3 hereto (a) (i) state the incorrect amount or are overstated, including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b) assert a reclamation demand and either

(i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and notwithstanding the Claimant's agreement or consent to the amount pursuant to the relevant Reclamation Agreement, a judicial determination that certain reserved defenses with respect to the reclamation demand are valid (the "Modified Claims Asserting Reclamation").

~~K.       The Claims listed on Exhibit D-4 hereto(a) are overstated and/or (b) were filed and docketed against the wrong Debtors (the "Consensually Modified And Reduced Claims").~~

K.       ~~L.~~ The relief requested in the Nineteenth Omnibus Claims Objection and granted herein is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.       Each Insufficiently Documented Claim listed on <u>Exhibit A</u> hereto is hereby disallowed and expunged in its entirety.

2.       Each Books And Records Claim listed on <u>Exhibit B-1</u> hereto is hereby disallowed and expunged in its entirety.

3.       Each Books And Records Tax Claim listed on <u>Exhibit B-2</u> hereto is hereby disallowed and expunged in its entirety.

4.      Each Untimely Books And Records Tax Claim listed on <u>Exhibit B-3</u> hereto is hereby disallowed and expunged in its entirety.

5.      The Untimely Claim listed on <u>Exhibit C</u> hereto is hereby disallowed and expunged in its entirety.

6.      Each "Claim As Docketed" amount, classification, and Debtor listed on <u>Exhibit D-1</u> hereto is hereby revised to reflect the amount, classification, and Debtor listed as the "Claim As Modified."  No Claimant listed on <u>Exhibit D-1</u> shall be entitled to (a) recover for any Claim Subject to Modification in an amount exceeding the dollar value listed as the "Modified Total" of the Claim, and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on <u>Exhibit D-1</u>, subject to the Debtors' right to further object to each such Claim Subject to Modification.  The Claims Subject to Modification shall remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest.

7.      Each "Claim As Docketed" amount and Debtor listed on <u>Exhibit D-2</u> hereto is hereby revised to reflect the amount and Debtor listed as the "Claim As Modified."  No Claimant listed on <u>Exhibit D-2</u> shall be entitled to (a) recover for any Tax Claim Subject to Modification in an amount exceeding the dollar value listed as the "Modified Total" of the Claim and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column on <u>Exhibit D-2</u>, and/or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on <u>Exhibit D-2</u>, subject to the Debtors' right to further object to each such Tax Claim Subject to

5      DeltaView comparison of pcdocs://chisr01a/555267/4 and pcdocs://chisr01a/555267/8.
Performed on 8/15/2007.

Modification.  The Tax Claims Subject to Modification shall remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest.

8.        Each "Claim As Docketed" amount, classification, and Debtor listed on Exhibit D-3 hereto is hereby revised to the amount and classification listed as the "Claim As Modified."  No Claimant listed on Exhibit D-3 shall be entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified Total" of the Claim, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand, and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column on Exhibit D-3, and/or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit D-3, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  The Modified Claims Asserting Reclamation shall remain on the claims register, and shall remain subject to future objection by the Debtors and other parties-in-interest.

9.        ~~Each "Claim As Docketed" amount, classification, and Debtor listed on Exhibit D-4 hereto is hereby revised to the amount and classification listed as the "Claim As Modified."  No Claimant listed on Exhibit D-4 shall be entitled to (a) recover for any Consensually Modified And Reduced Claim in an amount exceeding the dollar value listed as the "Modified Total" of the Claim and/or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column on Exhibit D-4, and/or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit D-4.  The Consensually Modified And Reduced Claims shall remain on~~

the claims register. With respect to each Claim for which a Response to the Nineteenth Omnibus Claims Objection has been filed and served, all of which Claims are listed on Exhibits E-1, E-2, E-3, E-4, E-5, E-6, E-7, and E-8 hereto, the hearing regarding the objection to such Claims shall be adjourned to a future hearing date to be noticed by the Debtors consistent with and subject to the Claims Objection Procedures Order; provided, however, that such adjournment shall be without prejudice to the Debtors' right to assert that any such Responses were untimely or otherwise deficient under the Claims Objection Procedures Order.

10.     Entry of this order is without prejudice to the Debtors' right to object, on any grounds whatsoever, to any other claims in these chapter 11 cases or to further object to Claims that are the subject of the Nineteenth Omnibus Claims Objection.

11.     Nothing contained herein shall constitute, nor shall it be deemed to constitute, the allowance of any Claim asserted against any of the Debtors.

12.     This Court shall retain jurisdiction over the Debtors and the holders of Claims subject to the Nineteenth Omnibus Claims Objection to hear and determine all matters arising from the implementation of this order.

13.     Each of the objections by the Debtors to each Claim addressed in the Nineteenth Omnibus Claims Objection and attached hereto as Exhibits A, B-1, B-2, B-33, C, D-1, D-2, D-3, E-1, E-2, E-3, E-4, E-5, E-6, E-7, and DE-48 constitutes a separate contested matter as contemplated by Fed. R. Bankr. P. 9014.  This order shall be deemed a separate order with respect to each Claim that is the subject of the Nineteenth Omnibus Claims Objection.  Any stay of this order shall apply only to the contested matter which

involves such Claim and shall not act to stay the applicability or finality of this order with respect to the other contested matters covered hereby.

        14.    Kurtzman Carson Consultants LLC is hereby directed to serve this order, including exhibits, in accordance with the Claims Objection Procedures Order.

15.     The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for the

service and filing of a separate memorandum of law is deemed satisfied by the Nineteenth

Omnibus Claims Objection.

Dated: New York, New York
       August ___, 2007


_____
       UNITED STATES BANKRUPTCY JUDGE

---

9       DeltaView comparison of pcdocs://chisr01a/555267/4 and pcdocs://chisr01a/555267/8.
Performed on 8/15/2007.

Document comparison done by DeltaView on Wednesday, August 15, 2007 12:18:09 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://chisr01a/555267/4 |
| Document 2 | pcdocs://chisr01a/555267/8 |
| Rendering set | Option 3a strikethrough double score no moves |

| Legend: |
|---|
| Insertion |
| Deletion |
| <Moved from> |
| >Moved to< |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 10 |
| Deletions | 8 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 1 |
| Total changes | 19 |

# EXHIBIT K

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/16/2007 2:41 PM
Master Service List Overnight Mail

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/16/2007 2:41 PM
Master Service List Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/16/2007 2:41 PM
Master Service List Overnight Mail

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Andrew J. Flame; David P. Primack | Drinker, Biddle & Reath LLP | 1100 N. Market Street | Suite 1000 | Wilmington | DE | 19801 | | Counsel for QEK Global Solutions (US) LP |
| Ashok Kumar | A-1 Specialized Services & Supplies, Inc. | P.O. Box 270 | | Croydon | PA | 19021 | | Owner of A-1 Specialized Services & Supplies, Inc. |
| Barbara Lee Caldwell | Hebert Schenk, P.C. | 4742 North 24th Street | Suite 100 | Phoenix | AZ | 85016 | | Counsel for Maricopa County Treasurer |
| Dennis J. Drebsky; William Thomas | Nixon Peabody LLP | 437 Madison Avenue | | New York | NY | 10022 | | Counsel for Corning Incorporated |
| DG Englebrecht | Impala Platinum Limited | No. 2 Fricker Road | | Illovo | | 2196 | South Africa | Marketing Executive for Impala Platinum Limited |
| Douglas C. Bernstein | Plunkett Cooney PC | 38505 Woodward Avenue | | Bloomfield | MI | 48304 | | Co-Counsel for Denso International America, Inc. |
| Frank F. Velocci | Drinker, Biddle & Reath LLP | 140 Broadway | 39th Floor | New York | NY | 10005 | | Counsel for QEK Global Solutions (US) LP |
| Fumio Koma | Baker & McKenzie | The Prudential Tower | 13-10 Nagatacho 2-Chome | Chiyoda | Tokyo | 100-0014 | Japan | Counsel for Tosch Corporation |
| Jay Selanders | Kutak Rock LLP | 1010 Grand Blvd. | Suite 500 | Kansas City | MO | 64106-2220 | | Counsel for Chrysler |
| Jeffrey R. Gleit; David S. Rosner; Adam L. Schiff; Daniel A. Fliman | Kasowitz, Benson, Torres & Friedman LLP | 1633 Broadway | | New York | NY | 10019 | | Counsel for Contrarian |
| Marc E. Richards | Blank Rome LLP | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174-0208 | | Co-Counsel for Denso International America, Inc. |
| Mike O'Hayer | Law Offices of Michael O'Hayer | 22 North Walnut St. | | West Chester | PA | 19380 | | Counsel for A-1 Specialized Services & Supplies, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481

Page 1 of 1

8/16/2007 2:37 PM
Catalyst Special Parties

# EXHIBIT L

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/16/2007 2:41 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/16/2007 2:41 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/16/2007 2:41 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, LLC |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605 529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelph@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-222-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute
Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbeler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| Intermet Corporation | Alan Miller | 301 Commerce Street | Ste 2901 | Fort Worth | TX | 76102 | | | | amiller@intermet.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.co m | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay_hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte. Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte. Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William P. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11553 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles J. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

8/16/2007 2:34 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennessee Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Campbell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

8/16/2007 2:34 PM
Email

# EXHIBIT M

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Brendan G Best Esq | 39577 Woodward Ave Ste 300 | | Bloomfield Hills | MI | 48304 | 248-203-0523 | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/16/2007 2:33 PM
US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | 202-339-8400 | Counsel to Westwood Associates, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/16/2007 2:33 PM
US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Gentral Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/16/2007 2:33 PM
US Mail

# EXHIBIT N

**Hearing Date: August 16, 2007**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,

Debtors and Debtors-in-Possession
Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re                                   :    Chapter 11
: 
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
: 
                          Debtors.       :    (Jointly Administered)
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' (I) SUMMARY OF MODIFICATIONS TO SALE APPROVAL ORDER IN
CONNECTION WITH SALE OF THE DEBTORS' CATALYST BUSINESS AND (II)
OMNIBUS REPLY TO OBJECTIONS TO (A) NOTICES OF
ASSUMPTION AND/OR ASSUMPTION AND (B) CURE NOTICES

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this summary of modifications to the Sale Approval Order[1] and omnibus reply (the "Reply") in support of the Debtors' Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All The Assets Primarily Used In Debtors' Catalyst Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No. 8179) (the "Sale Motion").

<u>Preliminary Statement</u>

1.      On June 29, 2007, the Court entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting A Sale Hearing (Docket No. 8436) (the "Bidding Procedures Order").  Under the Bidding Procedures Order, the Debtors originally established July 24, 2007 as the deadline to submit bids for the Catalyst Business and August 1, 2007 as the date for the auction.  On July 18, 2007, the Debtors, pursuant to the Bidding Procedures Order and the Agreement with Umicore, the stalking horse bidder, extended the bid deadline to July 31, 2007 and re-set the date of the auction to August 8, 2007.

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Sale Motion.

2.    On July 31, 2007, the Selling Debtor Entities received the bid of Catalytic

Solutions, Inc. ("CSI"), in which CSI offered $58.1 million and other consideration for

substantially all the assets of the Catalyst Business.  After an independent evaluation by the

Selling Debtor Entities and their advisors and in accordance with Bidding Procedures, the Selling

Debtor Entities determined that the CSI competing proposal was a Qualified Bid as defined in

the Bid Procedures.  As a result, in accordance with the Bidding Procedures Order, on August 8,

2007, the Debtors held an auction for the sale of the assets of the Catalyst Business.  A transcript

of the auction for the sale of the assets of the Catalyst Business is attached hereto as <u>Exhibit A</u>

(the "Auction Transcript").

3.    After reviewing the final bids received at the auction from Umicore and

CSI, the Debtors, after consultation with representatives from the Creditors' Committee and the

Equity Committee, determined that the final bid received from Umicore was the highest and best

bid.  The final bid submitted by Umicore included a purchase price and bid value of $75 million

– an increase of approximately $19.4 million from the Preliminary Purchase Price included in the

stalking horse bid attached to the Sale Motion, most of which is being allocated to the Selling

Debtor Entities[2] – which purchase price is (i) subject to a reduction based upon additional U.S.

salaried employees that may be hired by Umicore above what Umicore committed to on June 5,

2007, and (ii) includes enhanced terms with respect to net working capital and precious metal

targets and improved terms reducing certain risks that could have effected value or closing.  The

final bid received from CSI, which included a cash purchase price and certain cost savings to the

Sellers, had a value of approximately $70.5 million.

---

[2]    See Schedule 2 to the proposed Sale Approval Order attached hereto for the purchase price allocation.

3

4.      At the conclusion of the auction, the Sellers announced that Umicore's $75 million bid was the "Successful Bid" and the final bid submitted by CSI was deemed by the Sellers to be the "Alternate Bid," as each is defined under the Bidding Procedures Order.  The revised Master Sale and Purchase Agreement between Sellers and Umicore, marked to reflect changes made to the agreement submitted with the Sale Motion, is attached hereto as <u>Exhibit B</u>. In addition, as further described below, the Sale Approval Order was revised to reflect, among other things, comments received by certain parties-in-interest and the selection of Umicore as the Successful Bidder and CSI as the Alternate Bidder.  A marked version of the Sale Approval Order reflecting the modifications made to the form of proposed order submitted with the Sale Motion is attached hereto as <u>Exhibit C</u>.  Other than certain objections to the assumption and assignment of certain executory contracts, there are no objections to the sale of the Catalyst Business to Umicore.

A.    <u>Modifications To The Sale Approval Order</u>

5.      After filing the Sale Motion, the Debtors received comments from the Department of Justice (the "DOJ") regarding the proposed Sale Approval Order's treatment of environmental liabilities.  As a result of discussions with the DOJ, the parties, including Umicore, agreed to add a provision to the end of paragraph 12 which protects governmental agencies' rights related to environmental laws and regulations.

6.      In addition, the Debtors inserted additional findings of fact (paragraphs E and F) and ordering provisions (paragraphs 41 and 42) to address issues and events related to the Bidding Procedures and the auction.  Paragraph E contains a finding reflecting Umicore's agreement at the auction to waive its right to assert any claim against the Debtors and their estates related to the sale process and the auction.  <u>See</u> Auction Transcript, Page 46, Lines 9-15. Paragraph F contains a finding that the Selling Debtor Entities selected the CSI bid as the

4

Alternate Bid.  See Auction Transcript, Page 47, Line 9-13.  Consistent with the Bidding

Procedures, paragraph 41 states that the final offer made by CSI at the auction would be

submitted for approval as the Alternate Bid.  Lastly, paragraph 42 grants the Debtors authority to

close on CSI's Alternate Bid if they cannot close with Umicore.

B.      Assumption And Assignment Of Executory Contracts

7.      On July 6, 2007, July 18, 2007, July 24, 2007, July 31, 2007, and August 1,

2007, the Debtors served (i) notices of assumption and assignment of certain executory contracts

to Umicore and to CSI (collectively, the "Notices of Assumption/Assignment"), and (ii) notices

of cure of executory contracts (the "Cure Notices" and, collectively with the Notices of

Assumption/Assignment, the "Notices").  The Debtors served approximately 252 Notices of

Assumption/Assignment and 83 Cure Notices.  The Debtors received five timely and properly

filed and served objections and four late objections.[3]  Of the nine objections to the Notices, eight

of the objections have been resolved, withdrawn or otherwise moot.

C.      Resolved, Withdrawn Or Otherwise Moot

8.      Below is a brief summary of each resolved objection:

(a)      A-1 Specialized Services & Supplies, Inc.  A-1 Specialized Services &

Supplies, Inc. ("A-1") filed the (a) Objection By A-1 Specialized Services & Supplies, Inc. To

Notice Of Cure Amount (Docket No. 8669), (b) Objection To Assumption And/Or Assignment

Of Contracts By A-1 Specialized Services & Supplies, Inc. (Docket No. 8670), (c) Objection Of

A-1 Specialized Services & Supplies, Inc. To Assumption And/Or Assignment Of Contracts

By/To Catalytic Solutions, Inc. (Docket No. 8977), and (d) Memorandum in Support of

---

[3]      The Debtors also received a letter from Varroc Exhaust Systems, Pct. Ldt. ("Varroc") (Docket No. 8681) in
which Varroc states it does not object to the assumption and/or assignment of its various agreements.

Objection to Assumption of Executory Contract (Docket No. 9085). A-1's pleadings were filed

to oppose the Debtors' request to assume and assign to Umicore (or CSI, as applicable), pursuant

to section 365 of the Bankruptcy Code, a supply contract and a reclamation contract (the "A-1

Contracts"). Under the A-1 Contracts, the Debtors purchase platinum, palladium and rhodium

("platinum group metals" or "PGM") from A-1 for use in the manufacturing of automotive

components and reclamation services of A-1 to recover PGM from its automotive manufacturing

scrap. In its pleadings, A-1 alleges that the Debtors cure amount is insufficient and that due to

certain anti-trust and anti-money laundering concerns, the Debtors should not be able to assume

and assign the A-1 Contracts to Umicore (or CSI, as applicable). While the Debtors vigorously

dispute A-1's allegations, following the filing of the foregoing pleadings, Umicore elected to

remove the A-1 Contracts from the schedule of assumed contracts attached to the Master Sale

and Purchase Agreement ("Schedule of Assumed Contracts"). Accordingly, the A-1 objections

are now moot.

        (b)    <u>Chrysler LLC</u>. Chrysler LLC ("Chrysler") filed the Objection Of Chrysler

LLC To Assumption And/Or Assignment Of Contracts In Connection With The Sale Of

Debtor's Catalyst Business (Docket No. 9040) (the "Chrysler Objection"), in which it objected to

the assumption and assignment of the Noble Metal Stock Account Agreement (the "Noble Metal

Agreement"). Chrysler withdrew the Chrysler Objection upon receiving confirmation from the

Debtors that the Noble Metal Agreement would not be assumed and/or assigned and would be

removed from the Schedule of Assumed Contracts because it did not govern the ongoing

relationship between the Selling Debtor Entities and Chrysler.

        (c)    <u>Contrarian Funds, LLC</u>. Contrarian Funds, LLC ("Contrarian") filed its

Limited Objection of Contrarian Funds, LLC to Debtors' Notice of Cure Amount with Respect to

6

Executory Contract or Unexpired Lease to be Assumed and Assigned in Connection with the

Sale of Catalyst Business (Docket No. 8877) (the "Contrarian Objection"). Contrarian purchased

the claim associated with a certain contract (the "Aramark Contract") from Aramark Uniform

and Career Apparel Inc. ("Aramark") and Contrarian filed an objection to protect its contractual

right to the cure amount. The Contrarian Objection has been resolved pursuant to a tri-partite

stipulation (between the Aramark, Contrarian, and the Debtors) to be executed, that provides for,

among other things, the cure amount to be paid directly Contrarian.

       (d)    <u>Corning Incorporated.</u>  Corning Incorporated ("Corning") filed the

Limited Objection of Corning Incorporated to the Assumption of, and the Cure Amounts

Asserted by Debtor, for Contracts 50186, 50187, 50188, 50189 in Debtor's Notices of

Assumption and Asserted Cure Amounts in Connection With the Sale of Debtor's Catalyst

Business (Docket No. 8592) (the "Corning Assumption/Assignment Objection"). Initially

Corning filed a protective objection. The Corning Assumption/Assignment Objection was

superseded by the Amended Limited Objection Of Corning Incorporated To The Assumption Of,

And The Cure Amounts Asserted By Debtor, For Contracts 50186, 50187, 50188 And 50189 In

Debtor's Notices Of Assumption And Asserted Cure Amounts In Connection With The Sale Of

Debtor's Catalyst Business (Docket No. 8894). This objection acknowledged that Corning had

no issue with its contract being assigned to Umicore filed a protective objection with respect to

cure. On August 15, 2007, Corning filed a withdrawal of its objection. <u>See</u> Withdrawal Of

Amended Limited Objection Of Corning Incorporated ("Corning") To The Assumption Of, And

The Cure Amounts Asserted By Debtor, For Contracts 50186, 50187, 50188 And 50189 In

Debtor's Notices Of Assumption And Asserted Cure Amounts In Connection With The Sale Of

Debtor's Catalyst Business (Docket No. 9086).

7

(e)  <u>Denso International America, Inc</u>.  Denso International America, Inc. filed a Limited Objection By Denso International America, Inc. To Assumption And/Or Assignment of Executory Contract Or Unexpired Lease To Qualified Bidder In Connection With Sale of Catalyst Business (Docket No. 8904) (the "Denso Objection").  The Denso Objection was withdrawn after the Debtors confirmed that they would remove an expired purchase order from the Schedule of Assumed Contracts.

(f)  <u>Maricopa County</u>.  Maricopa County filed an objection to the Sale Motion (Docket No. 8655) (the "Maricopa County Objection").  Following the filing of the Maricopa County Objection, Maricopa County understood that it had no interest in the Sale and thus the Maricopa County Objection was withdrawn.  <u>See</u> Withdrawal of Maricopa County's Objection to the Debtor's "Catalyst Business Sale Motion" (Docket No. 8731).

(g)  <u>Tosoh Corporation</u>.  Counsel for the Debtors received a letter objection from Tosoh Corporation ("Tosoh"), dated August 9, 2007 (the "Tosoh Objection").  The Tosoh Objection was never filed with this Court, and thus a courtesy copy of Tosoh Objection is attached hereto as <u>Exhibit D</u>.  As part of the Sale process, Delphi identified certain contracts with Tosoh that it seeks to assign to Umicore.  The Tosoh Objection sought clarification regarding whether the Debtors intend to assume and assign a certain September 6, 2006 Memorandum of Understanding between Delphi and Tosoh (the "Tosoh MOU").  Upon receiving clarification from the Debtors that they would not assign the Tosoh MOU to Umicore, on August 13, 2007, Tosoh indicated that it would withdraw its objection.

(h)  <u>QEK Global Solutions (US), LP</u>.  QEK Global Solutions (US), LP filed its Limited Objection of QEK Global Solutions (US), LP To Assumption And/Or Assignment of Unexpired Lease to Qualified Bidder In Connection With Sale of Catalyst Business (Docket No.

8

9060) (the "QEK Objection").  The QEK Objection was resolved upon confirmation from the

Debtors that certain contracts with QEK associated with certain vehicles of concern to QEK

(specifically, the Leased VEL Test Vehicles) would not be assumed and/or assigned and would

be removed from the Schedule of Assumed Contracts.  See Notice Of Withdrawal Of QEK

Global Solutions (US), LP's Limited Objection To Assumption And/Or Assignment Of

Unexpired Lease To Qualified Bidder In Connection With Sale Of Catalyst Business (Docket No.

9088).

D.    Unresolved Objection – Impala Platinum Limited

9.    As stated above, of the nine objecting parties, only Impala Platinum Limited's

objection remains contested.  Specifically, on August 14, 2007, counsel to the Debtors received a

letter (the "Impala Letter") from Impala Platinum Limited ("Impala"), informally objecting to the

assignment of the agreement between Impala and Delphi (Docket No. 9084) (the "Impala

Agreement").  For the reasons set forth below, the Debtors request that the objection filed by

Impala be overruled and that the Debtors be authorized, but not directed, to assume and assign

the Impala Agreement to Umicore pursuant to 11 U.S.C. § 365.

Argument

10.    Impala objects on the ground that the Impala Agreement contains a provision

conditioning any assignment of the agreement on the counterparty's consent, and Impala does not

consent to the proposed assignment.  Impala's objection should be overruled for at least three

independent reasons.

11.    First, Impala's contention that its withholding consent is sufficient to preclude

assignment of the Impala Agreement is simply off the mark.  The plain language of section

365(f)(1) of the Bankruptcy Code provides that terms or conditions in a contract or lease that

9

prohibit, restrict, or condition the assignment of such contract or lease are not enforceable –

subject to limited exceptions.   Section 365(f) "works by operation of law to invalidate" contract

assignment restrictions.  See e.g., In re Jamesway Corp., 201 B.R. 73, 78 (Bankr. S.D.N.Y. 1996)

(emphasis added) (citing In re Office Prod. of Am., Inc., 140 B.R. 407, 410 (Bankr. W.D. Tex.

1992); In re Howe, 78 B.R. 226, 229 (Bankr. S.D. 1987)).  Indeed, that section assumes, as a

matter of law, that the free "assignment of unexpired leases will assist the debtor in its

reorganization or liquidation efforts." In re Bradlees Stores, Inc.,  No. 00-16033, 2001 WL

1112308, *11 (S.D.N.Y. Sept. 20, 2001) (internal citations omitted).  Impala has not satisfied any

exception contained under section 365(f).  Indeed, the Impala Agreement is a traditional

executory contract that does not fall into any of the section 365(f) exceptions.  Accordingly,

despite the restrictive assignment clause, section 365 trumps and Impala's objection should be

overruled.

12.     Second, the Debtors provided Impala notice of their intention to assume and

assign the Impala Agreement to Umicore on July 5, 2007 (Docket No. 8487).  The notice stated

that objections must be filed with the Court in accordance with the procedures set forth in the

Case Management Orders.  The Impala Letter should be stricken because it was not filed with

this Court, or, for that matter, in accordance with the Case Management Orders entered in this

case.  Moreover, the Bidding Procedures Order provided that objections must be served so that

they are received within ten days after the date of the notice, which in this instance (taking into

account rule 9006 of the Federal Rules of Bankruptcy Procedure) was July 16, 2007.  The Impala

Letter was received approximately 28 days after the objection deadline expired.  On this basis

alone, the Impala Letter should be stricken.  Accordingly, the Impala objection should be

overruled.

10

WHEREFORE the Debtors respectfully request that the Court enter an order (i) granting the Motion, (ii) overruling all objections to the Motion, and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
      August 15, 2007

           SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP

           By:  /s/ John Wm. Butler, Jr.
              John Wm. Butler, Jr. (JB 4711)
              John K. Lyons (JL 4951)
              Ron E. Meisler (RM 3026)
           333 West Wacker Drive, Suite 2100
           Chicago, Illinois 60606
           (312) 407-0700

                 –and –

           By:  /s/ Kayalyn A. Marafioti
              Kayalyn A. Marafioti (KM 9632)
              Thomas J. Matz (TM 5986)
           Four Times Square
           New York, New York 10036
           (212) 735-3000

           Attorneys for Delphi Corporation, et al.,
            Debtors and Debtors-in-Possession

11

Page 1

1

2

3    DELPHI CATALYST AUCTION,          )

4                                      )

5    ------------------------------)

6

7

8

9                    AUCTION PROCEEDINGS

10                   New York, New York

11               Wednesday, August 8, 2007

12

13

14

15

16

17

18

19

20

21

22

23    Reported by:

      Philip Rizzuti

24    JOB NO. 12623

25

Page 2

```
 1
 2
 3                   August 8, 2007
 4                   5:30 p.m.
 5
 6          AUCTION PROCEEDINGS, held at the
 7   offices of Skadden Arps, 4 Times
 8   Square, New York, New York, before
 9   Philip Rizzuti, a Notary Public of the
10   State of New York
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2   A P P E A R A N C E S:
 3
 4      SKADDEN, ARPS, SLATER, MEAGHER & FLOM,
 5      LLP
 6   Attorneys for Delphi
 7        4 Times Square
 8        New York, New York 10036
 9   BY:  JOHN LYONS, ESQ.
10        DENISE KALOUDIS, ESQ.
11        BRIAN FERN, ESQ.
12        JASON KETCHENS, ESQ.
13        RON E. MEISLER, ESQ.
14
15   GOODWIN PROCTOR, LLP
16   Attorneys for Umicore
17        901 New York Avenue, N.W.
18        Washington, D.C. 20001
19   BY:  J. HOVEY KEMP, ESQ.
20        JOSHUA N. KLATZKIN, ESQ.
21        EMANUEL C. GRILLO, ESQ.
22
23
24
25
```

Page 4

```
 1
 2   A P P E A R A N C E S:
 3
 4      SQUIRE SANDERS & DEMPSEY, LLP
 5   Attorneys for CSI
 6        4900 Key Tower
 7        127 Public Square
 8        Cleveland, Ohio 44114-1304
 9   BY:  DAVID A. ZAGORE, ESQ.
10        JEFFREY A. MARKS, ESQ.
11
12   ALSO PRESENT:
13    JOHN FUERST, Delphi
14    STEVE DeRAEDT, Delphi
15    ERIC CREECH, Delphi
16    MARGARET FUKUDA, Delphi
17    PAUL ROTH, Delphi
18    JOHN WEBER, Delphi
19    RICK KAY, Delphi
20    ALI AZIM, CSFB
21    MARC GRYNBERG, Umicore
22    BILL STARON, Umicore
23    JOERG von RODEN, Umicore
24    MICHAEL LACHMANN, Umicore
25    DOUG PUGLIESE, Bear Stearns
```

Page 5

```
 1
 2   ALSO PRESENT:
 3    KIRK McINTOSH, Bear Stearns
 4    ANDREW SAMETT, Bear Stearns
 5    JOSEPH LEE, Bear Stearns
 6    DAVE POWLEN, Western Reserve Partners
 7    CHARLIE CALL, CSI
 8    RON RUDOLPH, CSI
 9    DAVID SHEA, CSI
10    JOHN MUELLER, CapitalWorks
11    JUDE GORMAN, Latham & Watkins
12    DAVID GROBAN, Jeffries
13    NATE BRAWN, Jeffries
14    KATIE DANG, Fried Frank
15    DAN CROWLEY, Houlihan Lokey
16
17
18
19
20
21
22
23
24
25
```

Page 6

Auction Proceedings

1          Auction Proceedings
2          MR. LYONS: Everybody ready.  Good
3    afternoon.  My name is John Lyons of
4    Skadden, Arps, Slate, Meagher & Flom,
5    LLP.  Skadden is counsel to Delphi
6    Corporation and its affiliate debtors and
7    debtors in possession in their Chapter XI
8    cases which are pending in the United
9    States Bankruptcy Court in the Southern
10   District of New York before the Honorable
11   Robert D. Drain, and are being jointly
12   administered under case number 05-44481.
13         On June 6, 2007 Delphi filed a
14   motion seeking approval of certain bid
15   procedures and certain bid protections
16   for the stalking horse bidder Umicore,
17   and approval of a sale of substantially
18   all of the assets of the Catalyst
19   business to Umicore pursuant to a master
20   asset sale and purchase agreement dated
21   June 5, 2007 by and between Delphi and
22   Umicore subject to completion of a
23   competitive bidding process.  I will
24   refer to the motion as the sale motion.
25   The sale motion was entered on the

TSG Reporting - Worldwide    877-702-9580

Page 7

Auction Proceedings

1          Auction Proceedings
2    docket, docket entry number 8179.
3          After a hearing held on June 26,
4    2007 the court entered an order approving
5    certain bidding procedures.  The order
6    was entered on June 29, 2007 at docket
7    8436.  I will refer to this order as the
8    bidding procedures order.
9          On July 18, 2007 pursuant to the
10   bidding procedures the debtors extended
11   the bid deadline from July 24, 2007 to
12   July 31, 2007, and reset the date of the
13   auction from August 1, 2007 to today.
14   The notice of this extension is a docket
15   number 8653.  This is the time and place
16   for the auction of the assets of the
17   Catalyst business pursuant to the bidding
18   procedures order and the notice of
19   extension.
20         As you are aware we have a court
21   reporter here.  The auction is being
22   transcribed and we will file the complete
23   transcript of this auction with the
24   bankruptcy court.
25         We have marked several exhibits

TSG Reporting - Worldwide    877-702-9580

Page 8

Auction Proceedings

1          Auction Proceedings
2    which we have distributed to the parties
3    prior to this auction.  I will go rather
4    quickly through the exhibits.
5          Exhibit 1 is the sale motion that
6    I already described.
7          (Exhibit 1, sale motion, marked
8    for identification, as of this date.)
9          MR. LYONS:  Exhibit 2 is a black
10   line of the sale order that black lines
11   the original order attached to the sale
12   motion against certain changes.  That is
13   Exhibit 2.
14         (Exhibit 2, black line of the sale
15   order, marked for identification, as
16   of this date.)
17         MR. LYONS:  Exhibit 3 is the
18   bidding procedures order.
19         (Exhibit 3, bidding procedures
20   order, marked for identification, as
21   of this date.)
22         MR. LYONS:  Exhibit 4 is the bid
23   submitted by Umicore including a master
24   asset and sale purchase dated June 5,
25   2007, and disclosure schedules.

TSG Reporting - Worldwide    877-702-9580

Page 9

Auction Proceedings

1          Auction Proceedings
2          (Exhibit 4, bid submitted by
3    Umicore including master asset and sale
4    purchase dated June 5, 2007, and
5    disclosure schedules, marked for
6    identification, as of this date.)
7          MR. LYONS:  Exhibit 5 is the bid
8    submitted by Catalyst Solutions, CSI,
9    including all the materials in Exhibit 5
10   that you can review.
11         (Exhibit 5, bid submitted by
12   Catalyst Solutions, marked for
13   identification, as of this date.)
14         MR. LYONS:  Exhibit 6 is this
15   morning's sign in sheet which is a record
16   of the attendees at this auction.  It
17   will obviate the need for all of you to
18   state your name and title.
19         (Exhibit 6, sign in sheet,
20   marked for identification, as of this
21   date.)
22         MR. LYONS:  Exhibit 7 is a bid
23   sheet, which is a final bid sheet from
24   various drafts that were circulated
25   amongst the parties.

TSG Reporting - Worldwide    877-702-9580

1         Auction Proceedings
2         (Exhibit 7, bid sheet, marked
3    for identification, as of this date.)
4         MR. LYONS:  Exhibit 8 is a black
5    line MSPA, master sale and purchase
6    agreement, reflecting modifications from
7    the asset sale and purchase agreement
8    between CSI and Delphi dated July 31,
9    2007 to the current version of the master
10   sale and purchase agreement dated today
11   by and between CSI and Delphi.
12        (Exhibit 8, black line master sale
13   and purchase agreement reflecting
14   modifications from asset sale and
15   purchase agreement between CSI and Delphi
16   dated July 31, 2007, marked for
17   identification, as of this date.)
18        MR. LYONS:  Exhibit 9 is schedule
19   3.2 to that agreement, revised schedule
20   3.2.1 to that agreement.
21        (Exhibit 9, revised schedule 3.2.1
22   to agreement, marked for
23   identification, as of this date.)
24        MR. LYONS:  Exhibit 10 is a
25   certain lease governing real property in

1         Auction Proceedings
2    Luxembourg.
3         (Exhibit 10, certain lease
4    governing real property in Luxembourg,
5    marked for identification, as of this
6    date.)
7         MR. LYONS:  Exhibit 11 is a
8    certain lease governing property in
9    Shanghai, China.
10        (Exhibit 11, certain lease
11   governing property in Shanghai, China,
12   marked for identification, as of this
13   date.)
14        MR. LYONS:  Exhibit 12 is a red
15   line of the Umicore agreement dated
16   today against the original agreement
17   filed with the sale motion.
18        (Exhibit 12, red line of Umicore
19   agreement against the original agreement
20   filed with the sale motion, marked for
21   identification, as of this date.)
22        MR. LYONS:  As everyone is aware
23   competing proposals for the asset of the
24   Catalyst business were to have been
25   received by Delphi, its advisors, and

1         Auction Proceedings
2    certain other statutory committee
3    advisors by the bid deadline which as I
4    noted before pursuant to the bid
5    procedures was extended in accordance
6    therewith.
7         On July 31st only one competing
8    bid had been received which is the bid of
9    CSI, which is marked as Exhibit number 5.
10   Pursuant to CSI's binding bid letter and
11   master sale and purchase agreement CSI
12   offered 58.1 million consideration for
13   substantially all the assets of
14   Catalyst's business.
15        The other material terms of CSI's
16   proposed asset sale of master sale and
17   purchase agreement are substantially
18   similar to the material terms of the
19   original master sale and purchase
20   agreement between Delphi and Umicore with
21   exceptions that I am going to note
22   further, and also as we note on a bid
23   sheet that has been previously marked.
24        After independent evaluation by
25   Delphi and its advisors and in accordance

1         Auction Proceedings
2    with bidding procedures Delphi determined
3    that the CSI competing proposal was a
4    qualified bid as defined in the bid
5    procedures attached as Exhibit 1 to the
6    bidding procedures order.
7         Therefore on August 3, 2007 my
8    colleague Brian Fern contacted all
9    parties entitled to attend this auction
10   by E-mail and advised them that an
11   auction would be going forward.
12        After reviewing the bids of
13   Umicore and CSI on August 7, 2007 Delphi
14   concluded that the CSI bid was the
15   highest or otherwise best offer submitted
16   prior to the auction, and in accordance
17   with the bid procedures order Delphi
18   distributed the CSI bid letter, a marked
19   copy of the agreement, and the memorandum
20   of ancillary agreement memorandum to
21   Umicore and other relevant parties.
22   Subsequently we did distribute a redacted
23   version of the agreement letter as well
24   as the underwriting agreement to Umicore.
25        There are no other parties who

Page 14

```
 1            Auction Proceedings
 2   have submitted a qualified bid and
 3   therefore pursuant to the bid procedures
 4   order only Umicore and CSI are entitled
 5   to bid for the Catalyst assets at today's
 6   auction.
 7            As each of you know each of the
 8   bidders has been assigned their own
 9   conference room to use for caucusing in
10   private.  The creditor's committee and
11   the equity committee and other creditor
12   constituents and representatives are
13   sharing one room.  The agent for the DIP
14   lenders advised the debtor that they
15   would not be attending the auction.
16            Shortly we are going to open the
17   floor to allow an opportunity for
18   additional competing bids which I hope to
19   get to very shortly.  I am not going to
20   read into the record all the other
21   procedures for the bidding procedures, we
22   have admitted those documents into the
23   record and each party here has a copy of
24   those documents to review.
25            Before we begin bidding I remind
```

Page 15

```
 1            Auction Proceedings
 2   the parties that additional bids are to
 3   be made in $500,000 increments.  At this
 4   point in time there is no specific
 5   additional procedures today, although we
 6   reserve the right to add them.
 7            We encourage each of you, Umicore
 8   and CSI, to put on the table today your
 9   highest and best bid, and we will do
10   everything we can to provide to each of
11   you guidance on the issues that we or the
12   creditor constituencies may have as they
13   relate to your respective bids.
14            When neither bidder desires to
15   make any further bid we will recess the
16   auction and meet privately.  First Delphi
17   will meet with its own representatives,
18   and later with our constituencies to
19   consult with them.
20            After that as quickly as possible,
21   depending on the time, Delphi and its
22   advisors will meet, deliberate and
23   determine in the exercise of its business
24   judgement which party it believes to be
25   the successful bidder, and which party
```

Page 16

```
 1            Auction Proceedings
 2   will be the alternate bidder.
 3            At that point Delphi will advise
 4   the parties to the bid who it has
 5   determined to the successful bid, and the
 6   bid that has been determined to be the
 7   alternate bid, and Delphi with formally
 8   close the auction at that time.
 9            However as you know in the bid
10   procedures no bid has been accepted by
11   Delphi until the Bankruptcy Court
12   approves of it in the sale hearing and an
13   order to that effect is entered by the
14   Bankruptcy Court.
15            Okay.  We would like to request
16   that each of the two bidders designate a
17   representative to speak on your behalf
18   when and if you decide you want to speak
19   on the record for purposes of the
20   auction.  Therefore I ask the designated
21   representative of Umicore to state his or
22   her name and title for the record, and
23   affirm that such person is the authorized
24   representative of Umicore for purposes of
25   this auction.
```

Page 17

```
 1            Auction Proceedings
 2            MR. KEMP:  My name is Hovey Kemp,
 3   I am a partner at Goodwin Proctor.  I
 4   will be speaking on behalf of Umicore.  I
 5   would reserve the right to allow others
 6   to speak however, John, to the extent
 7   that that is appropriate.
 8            MR. LYONS:  Very well.
 9            I will ask the designated
10   representative of CSI to state his or her
11   name and title for the record, and affirm
12   that such person is the authorized
13   representative of CSI for purposes of the
14   auction.
15            MR. CALL:  I am the designated
16   representative, Charles Call, I am the
17   CEO of Catalyst Solutions.
18            MR. LYONS:  For the authorized
19   representatives of both bidders, please
20   confirm that both of you have the full
21   authority to speak for each of your
22   respective companies.
23            MR. KEMP:  Yes, I have that
24   authority.
25            MR. CALL:  Yes, I have that
```

1          Auction Proceedings
2    authority.
3          MR. LYONS:  Please confirm that
4    your participation at the auction and
5    anything that you say on behalf of your
6    company is binding upon your respective
7    companies.
8          MR. KEMP:  On behalf of Umicore I
9    agree.
10          MR. CALL:  Same, I agree.
11          MR. LYONS:  Thank you.
12          We also believe that it will be
13    helpful for the primary creditor and
14    other constituencies who are present
15    today to be free to ask questions on the
16    record to insure that the terms put on
17    the record by the bidders are clear and
18    fully understood by the parties.
19    Therefore we welcome the participation of
20    the representatives of the creditor's
21    committee and the equity committee and
22    UAW and others who are here today in that
23    capacity.
24          Okay.  At this point I would ask
25    the Umicore representative to affirm that

1          Auction Proceedings
2    to the best of his knowledge Exhibit
3    number 4 contains the master asset sale
4    and purchase agreement dated June 4, 2007
5    as agreed by and between Delphi and
6    Umicore, and that the schedules are to
7    the best of his of knowledge the final
8    versions of such schedules.
9          MR. KEMP:  I agree.
10          MR. LYONS:  I would ask that the
11    CSI representative affirm that to the
12    best of his knowledge Exhibit number 5
13    represents CSI's offer dated July 31,
14    2007 for the Catalyst business.
15          MR. CALL:  We agree to the best of
16    our knowledge.
17          MR. LYONS:  With respect to both
18    parties, and again we will take Umicore
19    first, CSI next.
20          Umicore, please confirm that there
21    have been no discussions or other
22    communications, nor any agreements,
23    formal or informal, verbal or written, to
24    the best of your knowledge between
25    Umicore and its representatives on the

1          Auction Proceedings
2    one hand, and CSI and its representatives
3    on the other hand regarding Delphi's sale
4    of the Catalyst business.
5          MR. KEMP:  I agree, that is right.
6          MR. LYONS:  Okay, the same
7    representation on behalf of CSI.
8          MR. CALL:  I agree.
9          MR. LYONS:  First Umicore.  Does
10    Umicore have any objections to this
11    auction or sale process?
12          MR. KEMP:  No.
13          MR. LYONS:  CSI.  Does CSI have
14    any objections to this auction or the
15    sale process?
16          MR. CALL:  No, we do not.
17          MR. LYONS:  Prior to the auction
18    Delphi representatives met with both
19    Umicore and CSI to discuss clarifications
20    and enhancements to both bids pursuant to
21    draft bid sheets that Delphi prepared
22    that outlined the material differences
23    between the two bids and monetary values
24    ascribed to the differences.
25          Following these discussions Delphi

1          Auction Proceedings
2    received the following enhancements
3    and/or clarifications from the parties.
4          With respect to CSI the parties
5    have negotiated first a further black
6    line revised MSPA, a copy of which has
7    been marked as Exhibit 8; a revised
8    schedule 3.2.1 to the agreement, a copy
9    of which was marked as Exhibit 9; a
10    certain lease relating to the Luxembourg
11    facility, a copy of which was marked as
12    Exhibit 10; and a certain lease relating
13    to the Shanghai, China facility, a copy
14    of which was marked as Exhibit 11 that
15    contains certain clarifications and
16    enhancements to CSI's July 31st bid.
17          CSI, do you confirm that CSI
18    hereby amends its July 31st bid to
19    include the agreements set forth in
20    Exhibits 8, 9, 10 and 11, together with
21    the other obligations contained in the
22    July 31st bid, not inconsistent
23    therewith, and that such agreement
24    constitutes CSI's current bid?
25          MR. CALL:  Yes, we do confirm it.

Page 22

1          Auction Proceedings
2          MR. LYONS:  I will refer to this
3    bid as CSI's opening current bid.
4          With respect to Umicore, the
5    parties negotiated a further black lined
6    revised master sale and purchase
7    agreement, a copy of which was marked as
8    Exhibit 12 that contains certain
9    clarifications and enhancements to the
10   June 5th agreement.
11         Umicore, do you confirm that
12   Umicore hereby amends the June 5th
13   agreement to reflect black line changes
14   in Exhibit 12, together with obligations
15   contained in the June 5, 2007 agreement,
16   not inconsistent therewith, and that such
17   agreement constitutes Umicore's current
18   bid?
19         MR. KEMP:  It does, yes.
20         MR. LYONS:  I will call the
21   current bid Umicore's opening current
22   bid.
23         Based upon the above confirmations
24   Delphi prepared a revised bid sheet,
25   Exhibit 7, that reflects the monetization

Page 23

1          Auction Proceedings
2    of the differences in terms between CSI's
3    opening current bid and Umicore's opening
4    current bid.
5          Before we begin bidding I want to
6    make three clarifications.  As indicated
7    in the revised bid sheet Delphi ascribes
8    a bid value of $55.6 million to the
9    Umicore current opening bid, and a bid
10   value of $60 million to the CSI current
11   opening bid.
12         Now, when I use the term value it
13   is expressly subject to other
14   considerations as I will discuss in more
15   detail later that Delphi will consider in
16   determining who ultimately is the
17   successful bidder.  For purposes of
18   clarity I will use bid value.
19         As reflected in the revised bid
20   sheet, when valuing bids that will be
21   made, any subsequent bid that CSI makes
22   will reflect net credits set forth in the
23   revised bid sheet.  In addition the
24   amount that CSI will bid, CSI will have
25   to add an additional $2 million to

Page 24

1          Auction Proceedings
2    reflect the amount necessary to pay
3    Umicore in a break up fee in the event
4    that Umicore is not the successful bidder
5    and the transaction closes with CSI.
6          I have an example that may further
7    clarify this, but I understand that CSI
8    may want to make a comment.
9          MR. ZAGORE:  Yes.  This is David
10   Zagore, partner at Squire Sanders,
11   counsel to CSI.
12         I believe the bid value at the
13   bottom already reflects the $2 million
14   break up fee.  End of the comment.
15         MR. LYONS:  Yes.  So let me go
16   through an example, that may be the
17   easiest way to do this.
18         Currently Umicore has a bid value
19   of 55.6, this is all hypothetical.  CSI's
20   current bid value is $60 million, and
21   that is all indicated in the bottom
22   portion of the bid sheet.
23         In the event Umicore makes a
24   subsequent bid, assuming it bids $60.5
25   million.  If CSI were to make a

Page 25

1          Auction Proceedings
2    subsequent bid of $61 million, that $61
3    million would be comprised of the
4    following:
5          3.9 million in net credits due to
6    the differences in terms between the
7    parties, and $59.1 million which would be
8    comprised of the amount necessary to
9    compensate Umicore for the break up fee
10   of 2 million, plus an additional 57.1
11   million.
12         Now I ask both parties, do you
13   understand and confirm the manner in we
14   will bid; first to Umicore and -- pardon
15   me, and the way in which we will
16   calculate the bid?
17         MR. KEMP:  Yes.
18         MR. CALL:  Yes, we understand.
19         MR. LYONS:  Second clarification:
20         In accordance with the bid
21   procedures, submission of a subsequent
22   bid by either bidder constitutes an
23   irrevocable offer to purchase the
24   Catalyst business at the price, terms and
25   conditions of the subsequent bid, and

1          Auction Proceedings
2    such bid must remain open through two
3    business days after closing of the sale
4    to the other bidder.  Delphi then can
5    receive court approval of and may in
6    enforce both the successful bid and the
7    alternative bid.
8          Thus for example if bidder X
9    submits a bid of $60 million in the first
10   round, topped by bidder Y with a bid of
11   62 million, and bidder X subsequently
12   submits a higher bid of 64 million, and
13   bidder Y submits a final ultimately
14   winning bid of 66 million, Delphi will
15   seek approval of, and will be able to
16   close on both the highest bid of 66
17   million with bidder Y, and if unable to
18   close on this bid, Delphi would be able
19   to close on the next highest bid of 64
20   million with bidder X without need for
21   further court approval.
22         Do both bidders clearly understand
23   and confirm this requirement?
24         MR. KEMP:  Yes, we do.
25         MR. CALL:  Yes, we do.

1          Auction Proceedings
2          MR. LYONS:  Finally Delphi will
3    use and has used the bid sheet as a means
4    to monetize differences in terms between
5    subsequent bids by the parties to
6    facilitate comparison between subsequent
7    bids and determine whether a subsequent
8    bid is higher than the previous bid by
9    the other party.
10         Please be aware that Delphi's
11   declaration that a subsequent bid is
12   higher under this calculation does not
13   mean that such bid will be the successful
14   bid under the bidding procedures if no
15   higher bid is received.
16         Rather as I informed both parties
17   prior to the auction, once there is no
18   further bidding Delphi will determine
19   which bid constitutes the highest or
20   otherwise best bid, and therefore the
21   successful bid in light of all relevant
22   considerations, including among other
23   things closing risks, execution risks and
24   other factors.
25         Delphi will also consult with its

1          Auction Proceedings
2    representative constituents present at
3    this auction before making such
4    determination.
5          Do both bidders clearly understand
6    and confirm this requirement, Umicore?
7          MR. KEMP:  Yes.
8          MR. LYONS:  CSI?
9          MR. CALL:  Yes, we do.
10         MR. LYONS:  Now, based upon the
11   revised bid sheet CSI is the highest
12   bidder at a bid value of $60 million.
13   Does Umicore wish to submit a higher bid?
14         MR. KEMP:  Yes.
15         MR. LYONS:  Please put on the
16   record the terms of your bid.
17         MR. KEMP:  Umicore would like to
18   submit a subsequent bid that would raise
19   the cash purchase price by $9.4 million
20   dollars, so that the 55.6 bid value shown
21   in your bid sheet would now be 65
22   million.
23         We confirm the terms of our MSPA
24   as reflected in Exhibit 12 for purposes
25   of this subsequent bid with two changes.

1          Auction Proceedings
2          The first is that we would insert
3    a new section, we think it would be
4    4.6.9, which would be a purchase price
5    adjustment to be made at closing.  That
6    purchase price adjustment would effect a
7    downward adjustment to Umicore's purchase
8    price for employees in Troy or Flynt that
9    Umicore takes on in its employ at the
10   closing.
11         That adjustment would be
12   calculated at a rate of $75,000 per such
13   person in Troy and Flynt.  That would
14   also apply to employees that Umicore
15   takes on in Tulsa in excess of the 66 2/3
16   percent of such Tulsa employees that
17   Umicore has in its previous MSPA already
18   agreed to take on.
19         In the case of the Tulsa employees
20   the downward purchase price adjustment
21   that would thus be triggered to the
22   extent that Umicore took on more Tulsa
23   employees than the 66 2/3 percent would
24   be calculated at a rate of either
25   $100,000 per should employee, or $40,000

Auction Proceedings
1
2    per such employee, depending upon the
3    stature and status rather of such
4    employees.
5        Again to reiterate, we are using
6    the formula for a value in respect of
7    those employees in Flynt and Troy and in
8    Tulsa as it is reflected on your Exhibit
9    7, namely the bid sheet.
10        The second change in the MSPA
11    would be to the following effect.  The
12    increase in Umicore's cash purchase price
13    from 55.6 million to 65 million that is
14    reflected in this subsequent bid, that
15    purchase price of 65 million will remain
16    in effect provided that Umicore's bid and
17    our revised MSPA is approved as the
18    successful bid by a final sale approval
19    order on or before close of business on
20    August 16th.
21        To the extent that that condition
22    is not met the cash purchase price in
23    Umicore's bid will revert to the 55.6
24    million in the original submission.
25        That concludes what I have to say

Auction Proceedings
1
2    about our subsequent bid.
3        MR. LYONS:  Okay, we would like to
4    take a recess.  Off the record.
5        (Recess taken.)
6        MR. LYONS:  Okay, we are back on
7    the record.  I believe the authorized
8    representative for Umicore would like to
9    make a statement.
10        MR. KEMP:  All right, yes, I
11    would.  Thank you John.
12        Following the subsequent bid we
13    made Mr. Lyons approached us and
14    indicated that it was Delphi and
15    Skadden's, its counsel's view that the
16    bid that we submitted could not be
17    considered a qualified bid or a
18    subsequent bid because it did not comply
19    with the bidding requirements.
20        We disagree, and we will get into
21    that, and we would like to go on record
22    to underscore why we did what we did and
23    put that in the record.
24        I would like to start by
25    expressing that what we are about to say

Auction Proceedings
1
2    and the way we have conducted ourselves
3    today is with all due respect to CSI, to
4    the amount of effort that you put into
5    this in a very short period of time, been
6    forced to review a whole lot of
7    documentation and due diligence and
8    everything else that we have been at for
9    some time in a very short period of time.
10        We also appreciate that CSI sees
11    value in these assets and has an
12    appropriate vision for what it could do
13    with these assets.
14        Having said that Umicore was
15    provided a copy of your financing
16    documents very late in the game.  We
17    believe that in accepting your bid,
18    subject to those financing documents,
19    that indeed we didn't find and we don't
20    find that the CSI bid should have been
21    qualified.
22        We believe that it is so
23    conditional due to the financing
24    arrangements that you have in place that
25    Delphi was wrong in accepting it as a

Auction Proceedings
1
2    qualified bid.  There are numerous things
3    that we can point to to support this
4    view.
5        While it may be true that CSI
6    submitted an executed copy of the MSPA as
7    required by 11.5.2 of the bid
8    requirements, what we were told was that
9    we could not see that bid initially
10    because it was still being negotiated.
11    That Delphi was seeking additional
12    clarifications and enhancements to that
13    bid well after the bid deadline.
14        In addition in our view an
15    unwaivable bid requirement in 11.5.4 of
16    our MSPA indicated that any qualified bid
17    needed to provide evidence of ability to
18    consummate the proposed transaction.  It
19    is true that the standard of that is
20    satisfactory to Delphi.  But in our view
21    we think it was unreasonable for Delphi
22    to accept that evidence in the form of
23    your financing requirements.
24        In addition since the date of the
25    bid deadline has passed we are aware

Auction Proceedings

1
2 because Delphi has told us that they have
3 waived a number of provisions of the
4 MSPA's bid requirements in order to
5 qualify your bid.
6        11.6.3 requires that Delphi
7 determine in good faith that the
8 qualified bid is not materially more
9 burdensome or conditional than the terms
10 of our MSPA, and again this I will get to
11 in a minute, I believe that the
12 conditional nature of the financing
13 package that CSI has brought to the table
14 makes it so materially more conditional
15 than the terms of our MSPA that it should
16 not have been accepted and we don't think
17 it was reasonable for Delphi to waive
18 that provision.
19        I could go on about the waivers,
20 but I would like to move to the financing
21 commitments.  We believe that both your
22 debt and your equity commitments, when I
23 say you, I mean the CSI bid, that the
24 debt and equity commitments that support
25 that bid are extremely conditional.

Auction Proceedings

1
2        Starting with the Hilco debt
3 commitment, as we all recognize it is a
4 commitment letter.  It is therefore just
5 a commitment, it is subject to definitive
6 documentation which has not been
7 negotiated.
8        Further the closing conditions
9 that are set forth in the Hilco
10 commitment are stated to include, but may
11 ultimately in the definitive
12 documentation include other or additional
13 conditions.  But the ones that are
14 listed, and in particularly I would like
15 to draw attention to the fact that it is
16 subject to a material adverse effect,
17 that is a small M, small A and a small E,
18 that a material adverse effect in the
19 Hilco document is not defined.
20        Moreover the standard by which a
21 material adverse effect can be triggered
22 is that Delphi not suffer a material
23 adverse effect after May 31st.  We would
24 like to point out that when Delphi put
25 forth the July projections, the so-called

Auction Proceedings

1
2 6 plus 6 projections which are now a part
3 of our MSPA, and yours, that is and
4 CSI's, we believe, Umicore believes that
5 those July projections indicated that
6 there had been under the terms of our
7 MSPA a material adverse effect subsequent
8 to May 31st.
9        We have agreed to waive that.  We
10 are not pursuing that as a material
11 adverse change under our MSPA by having
12 agreed today to accept the July
13 projections as the starting point.  So
14 our document is still subject to a
15 material adverse effect, but it is as of
16 today, as of the July projections that
17 is.
18        Your equity documents -- back on
19 the debt for one moment.  Another
20 condition obviously is that the equity
21 offering be completed, and that the
22 equity amount is raised thereunder.  We
23 think that is highly conditional.  If you
24 look at the Canaccord placement agreement
25 we believe that first and foremost it is

Auction Proceedings

1
2 subject to the debt closing.  So it is
3 highly conditional in the respects that
4 we just spoke about.
5        It also is subject to a material
6 adverse effect since May 31st.  It
7 reserves, unlike the debt document, it
8 reserves changes that might be reflected
9 in the merger model that was apparently
10 agreed to as between CSI and Canaccord.
11 We have not seen that so we can't really
12 assess what that does to the material
13 adverse effect since May 31st, but we
14 point out that in our view that MAC makes
15 the equity financing highly conditional.
16        Finally the equity commitment with
17 Canaccord indicates that the acquisition
18 agreement, i.e. your MSPA, the CSI MSPA
19 needs to be unconditional except for the
20 payment of the purchase price by
21 September 15th.  There is a provision to
22 extend that to November 15th and
23 supposedly Canaccord can't unreasonably
24 withhold their consent to that, but it is
25 subject to their consent, and therefore

Page 38

Auction Proceedings

1  even the extension of the equity
2  commitment in our view is highly
3  conditional.
4        In sum we reiterate that our view
5  is that the CSI bid should not have been
6  qualified, and it is for that reason that
7  we insisted earlier this afternoon with
8  our subsequent bid, it is for that reason
9  that we impose what we have called the
10  purchase price toggle mechanism that
11  would enable that purchase price to be
12  reduced to our original bid price in the
13  event that you don't close.
14        If we are not the successful
15  bidder and CSI is the successful bidder,
16  but you don't close, we think because of
17  the highly conditional nature of CSI's
18  financing package that the end result
19  would be that we think that the price
20  should go back.
21        The justification for that is that
22  we don't think we should be here today
23  with all due respect. We don't think
24  there should have been an auction in this

Page 39

Auction Proceedings

1  instance because of the unqualified
2  nature of your bid.
3        Mr. Lyons after we submitted our
4  subsequent bid this morning indicated
5  that Delphi and Skadden do not agree with
6  our ability to have that type of a toggle
7  mechanism in our purchase price.
8        We for purposes of going forward
9  with the auction are willing to try to
10  put that issue aside. We would like on
11  the record to reserve our rights to
12  revisit that issue at the sale hearing in
13  the event that in the course of the
14  auction today Umicore ends up as the
15  second or unsuccessful bidder.
16        In other words we would like the
17  right at the hearing to discuss with the
18  Bankruptcy Court the reasons why we had
19  the toggle mechanism in there, and to
20  reinsert it in our bid if the court will
21  allow us to.
22        However for purposes of the
23  auction and going forward we will drop
24  the toggle and we will amend our

Page 40

Auction Proceedings

1  subsequent bid to have all of the
2  features that I outlined earlier this
3  afternoon, with the exception that we
4  will remove the toggle price mechanism so
5  that our purchase price, cash purchase
6  price or bid value if you will, Mr.
7  Lyons, in the context of our subsequent
8  bid is 65 million.
9        I would ask Mr. Lyons permission
10  just to make sure that no one else on the
11  Umicore side has any interest in
12  supplementing my remarks.
13        Then we are done.
14        MR. LYONS: We would like to take
15  a brief recess.
16        (Recess taken.)
17        MR. LYONS: We are back on the
18  record.
19        I believe that Umicore's
20  representative would like to make a
21  further statement.
22        MR. KEMP: During the adjournment
23  it was brought to our attention by Mr.
24  Lyons that we needed to clarify our prior

Page 41

Auction Proceedings

1  statement, and I would like to make it
2  clear that our $65 million subsequent
3  bid, while we reserve our rights as we
4  discussed, it does not include the toggle
5  mechanism. We have waived and we are
6  removing the toggle mechanism.
7        MR. LYONS: Thank you.
8        On behalf of Delphi, Delphi
9  contests the facts and arguments that
10  Umicore has made on the record. However
11  in the interest of moving this auction
12  forward we are going to just reserve our
13  rights. I spoke with counsel for Umicore
14  about this, we are not going to make a
15  specific denial of each and every
16  statement. We are going to have a
17  general reservation of all arguments,
18  defenses, claims, objections or anything
19  else under the sun in response to the
20  statement.
21        Also I would like to clarify with
22  Umicore that by proceeding forward with
23  the auction Delphi and its constituencies
24  and frankly any other party in interest

Page 42

1        Auction Proceedings
2  has not waived any such defenses, claims,
3  arguments and the like.
4        MR. KEMP:  We confirm.
5        MR. LYONS:  Is that acceptable to
6  CSI?
7        MR. ZAGORE:  That is acceptable.
8        MR. LYONS:  Okay, now to clarify
9  the terms of the last offer, I believe
10  they are on the record, I believe we
11  understand them.  And with that having
12  been said, Delphi believes the bid on the
13  table, the revised subsequent bid by
14  Umicore is a higher bid.
15        Now I would like to invite CSI to
16  respond.
17        MR. ZAGORE:  In connection with
18  our subsequent bid and prior to making
19  the bid CSI does object to the statements
20  made by counsel to Umicore.  The
21  statements mischaracterize the CSI bid as
22  being subject to financing conditions.
23        It is not subject to financing
24  conditions.  In our view there were no
25  waived bid procedures, and the material

Page 43

1        Auction Proceedings
2  adverse change provisions of our bid ran
3  off the six plus six analysis, not off of
4  the earlier January projections that were
5  referenced.
6        That being said, we are making our
7  bid in the understanding that the $65
8  million was a $65 million bid value bid
9  in accordance with the bid valuation
10  sheet which was distributed earlier.
11        MR. LYONS:  That certainly is the
12  debtor's understanding.  Is that
13  Umicore's understanding as well?
14        MR. KEMP:  Exhibit 7.
15        MR. LYONS:  Exhibit 7.
16        Would CSI like to submit a
17  subsequent bid?
18        MR. CALL:  CSI's bid is $65.5
19  million bid value.
20        MR. LYONS:  Delphi believes that
21  is a higher bid.  We would like to turn
22  the floor back to Umicore to invite a
23  subsequent bid.
24        MR. KEMP:  Umicore increases its
25  bid to 70 million.

Page 44

1        Auction Proceedings
2        MR. LYONS:  Delphi believes that
3  to be a higher bid in conformity with the
4  bid procedures.  Would CSI like to
5  respond?
6        MR. ZAGORE:  Can we recess for a
7  minute.
8        MR. LYONS:  Brief recess.
9        (Recess taken.)
10        MR. LYONS:  Back on the record.
11  CSI.
12        MR. CALL:  CSI increases its bid
13  value to 70.5.
14        MR. LYONS:  Delphi believes CSI's
15  70.5 bid is a higher bid.  Would Umicore
16  like to respond?
17        MR. KEMP:  Umicore will increase
18  its bid to 75 million.
19        MR. LYONS:  Delphi believes
20  Umicore's bid of $75 million is a higher
21  bidder.  Would CSI like to respond?
22        MR. CALL:  No.  That was our final
23  bid.
24        MR. LYONS:  Okay.  Pursuant to the
25  bidding procedures Delphi will adjourn --

Page 45

1        Auction Proceedings
2  will not adjourn the hearing, we will
3  take a recess to consider which bid will
4  be designated as the successful bid and
5  which bid will be designated the
6  alternate bid.
7        (Recess taken.)
8        MR. LYONS:  Back on the record.
9        Pursuant to the bidding procedures
10  Delphi during the recess did deliberate
11  to determine of the two bids, the one $75
12  million bid proposed by Umicore, and the
13  $70.5 million bid proposed by CSI, as to
14  which bid would be designated the
15  successful bid and which bid would be
16  designated the alternate bid.
17        After considering a number of
18  considerations, other considerations,
19  including the bid value as discussed
20  during the auction, the closing risks,
21  execution risks and other factors, and
22  after consulting with our various estate
23  constituents, and also pending
24  confirmation from Umicore of the
25  following, and I will ask for the

Page 46

1          Auction Proceedings
2    confirmation right now:
3          Umicore, please confirm that all
4    competition approvals have been obtained?
5          MR. KEMP:  Yes, that is correct.
6          MR. LYONS:  Umicore has obtained
7    board approval?
8          MR. KEMP:  Yes.
9          MR. LYONS:  Does Umicore agree to
10   waive any litigation or claims regarding
11   the sale process and the matters
12   discussed on the record here today at the
13   hearing.
14         MR. KEMP:  Yes, only as to the
15   debtor's estate.
16         MR. LYONS:  The debtors and their
17   estates.
18         MR. KEMP:  Yes.
19         MR. LYONS:  Finally does Umicore
20   confirm that the calculation of the
21   higher bid regarding the reimbursement
22   of -- I am sorry, the deduction of the
23   purchase price for employees ultimately
24   hired in Flynt, Troy and Tulsa as
25   described in your bid shall be consistent

Page 47

1          Auction Proceedings
2    with the bidding credit calculation,
3    notes and methodology contained in the
4    bid sheet which is reflected at Exhibit
5    7, applied in a reasonable manner and not
6    to exceed the numbers contained in the
7    examples in the notes to Exhibit 7?
8          MR. KEMP:  Yes, that is correct.
9          MR. LYONS:  Based upon those
10   confirmations the debtors designate
11   Umicore's bid as the successful bid, and
12   designate CSI's bid as the alternate bid
13   pursuant to the procedures.
14         Does anyone have anything further
15   to say?
16         MR. KEMP:  No.
17         MR. ZAGORE:  No.
18         MR. LYONS:  Thank you for your
19   participation and we look forward to
20   having this approved at the sale hearing.
21         This concludes the auction.
22         (Time noted:  9:00 p.m.)
23
24
25

Page 48

1
2          C E R T I F I C A T E
3    STATE OF NEW YORK    )
4                  : ss.
5    COUNTY OF NEW YORK    )
6
7          I, Philip Rizzuti, a Notary
8    Public within and for the State of New
9    York, do hereby certify:
10         That the within proceedings are
11   a true and accurate record.
12         I further certify that I am not
13   related to any of the parties to this
14   action by blood or marriage, and that I am
15   in no way interested in the outcome of this
16   matter.
17         IN WITNESS WHEREOF, I have
18   hereunto set my hand this 9th day of
19   August, 2007.
20         _____
21             PHILIP RIZZUTI
22
23
24
25

Page 49

1
2    ----------------- I N D E X ----------------
3    WITNESS        EXAMINATION BY        PAGE
4    None
5
6    ------------ INFORMATION REQUESTS -----------
7    None
8
9    ----------------- EXHIBITS -----------------
10   Exhibit 1, sale motion,          8
11   Exhibit 2, black line of the sale    8
12   order,
13   Exhibit 3, bid procedures order,    8
14   Exhibit 4, bid submitted by Umicore  9
15   including master asset and sale
16   purchase dated June 5, 2007, and
17   disclosure schedules,
18   Exhibit 5, bid submitted by          9
19   Catalyst Solutions,
20   Exhibit 6, sign in sheet,          9
21   Exhibit 7, bid sheet,          10
22   Exhibit 8, black line MSPA        10
23   reflecting modifications from asset
24   sale and purchase agreement between
25   CSI and Delphi dated July 31, 2007,

Page 50

```
 1
 2    Exhibit 9, revised schedule 3.2.1    10
 3    to agreement,
 4    Exhibit 10, certain lease governing    11
 5    real property in Luxembourg,
 6    Exhibit 11, certain lease governing    11
 7    property in Shanghai, China,
 8    Exhibit 12, red line of Umicore    11
 9    agreement against the original
10    agreement filed with the sale
11    motion,
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**A**

**ability (2)**
33:17 39:7
**able (2)**
26:15,18
**accept (2)**
33:22 36:12
**acceptable (2)**
42:5,7
**accepted (2)**
16:10 34:16
**accepting (2)**
32:17,25
**accurate (1)**
48:11
**acquisition (1)**
37:17
**action (1)**
48:14
**add (2)**
15:6 23:25
**addition (3)**
23:23 33:14,24
**additional (7)**
14:18 15:2,5 23:25
25:10 33:11 35:12
**adjourn (2)**
44:25 45:2
**adjournment (1)**
40:23
**adjustment (5)**
29:5,6,7,11,20
**administered (1)**
6:12
**admitted (1)**
14:22
**adverse (10)**
35:16,18,21,23 36:7
36:11,15 37:6,13
43:2
**advise (1)**
16:3
**advised (2)**
13:10 14:14
**advisors (4)**
11:25 12:3,25 15:22
**affiliate (1)**
6:6
**affirm (4)**
16:23 17:11 18:25
19:11
**afternoon (3)**
6:3 38:8 40:4
**agent (1)**
14:13
**agree (8)**
18:9,10 19:9,15 20:5
20:8 39:6 46:9

**agreed (5)**
19:5 29:18 36:9,12
37:10
**agreement (34)**
6:20 10:6,7,10,13,15
10:19,20,22 11:15
11:16,19,19 12:11
12:17,20 13:19,20
13:23,24 19:4 21:8
21:23 22:7,10,13,15
22:17 36:24 37:18
49:24 50:3,9,10
**agreements (2)**
19:22 21:19
**ALI (1)**
4:20
**allow (3)**
14:17 17:5 39:22
**alternate (5)**
16:2,7 45:6,16 47:12
**alternative (1)**
26:7
**amend (1)**
39:25
**amends (2)**
21:18 22:12
**amount (5)**
23:24 24:2 25:8 32:4
36:22
**analysis (1)**
43:3
**ancillary (1)**
13:20
**ANDREW (1)**
5:4
**and/or (1)**
21:3
**apparently (1)**
37:9
**applied (1)**
47:5
**apply (1)**
29:14
**appreciate (1)**
32:10
**approached (1)**
31:13
**appropriate (2)**
17:7 32:12
**approval (7)**
6:14,17 26:5,15,21
30:18 46:7
**approvals (1)**
46:4
**approved (2)**
30:17 47:20
**approves (1)**
16:12

**approving (1)**
7:4
**arguments (3)**
41:10,18 42:3
**Arps (3)**
2:7 3:4 6:4
**arrangements (1)**
32:24
**ascribed (1)**
20:24
**ascribes (1)**
23:7
**aside (1)**
39:11
**assess (1)**
37:12
**asset (10)**
6:20 8:24 9:3 10:7,14
11:23 12:16 19:3
49:15,23
**assets (6)**
6:18 7:16 12:13 14:5
32:11,13
**assigned (1)**
14:8
**assuming (1)**
24:24
**attached (2)**
8:11 13:5
**attend (1)**
13:9
**attendees (1)**
9:16
**attending (1)**
14:15
**attention (2)**
35:15 40:24
**Attorneys (3)**
3:6,16 4:5
**auction (75)**
1:3,9 2:6 6:1 7:1,13
7:16,21,23 8:1,3 9:1
9:16 10:1 11:1 12:1
13:1,9,11,16 14:1,6
14:15 15:1,16 16:1
16:8,20,25 17:1,14
18:1,4 19:1 20:1,11
20:14,17 21:1 22:1
23:1 24:1 25:1 26:1
27:1,17 28:1,3 29:1
30:1 31:1 32:1 33:1
34:1 35:1 36:1 37:1
38:1,25 39:11,15
39:24 40:1 41:1,12
41:24 42:1 43:1
44:1 45:1,20 46:1
47:1,21
**August (7)**
1:11 2:3 7:13 13:7,13

30:20 48:19
**authority (3)**
17:21,24 18:2
**authorized (4)**
16:23 17:12,18 31:7
**Avenue (1)**
3:17
**aware (4)**
7:20 11:22 27:10
33:25
**AZIM (1)**
4:20

**B**

**back (7)**
31:6 36:18 38:21
40:18 43:22 44:10
45:8
**bankruptcy (5)**
6:9 7:24 16:11,14
39:19
**based (3)**
22:23 28:10 47:9
**Bear (4)**
4:25 5:3,4,5
**behalf (6)**
16:17 17:4 18:5,8
20:7 41:9
**believe (12)**
18:12 24:12 31:7
32:17,22 34:11,21
36:4,25 40:20 42:9
42:10
**believes (7)**
15:24 36:4 42:12
43:20 44:2,14,19
**best (8)**
13:15 15:9 19:2,7,12
19:15,24 27:20
**bid (177)**
6:14,15 7:11 8:22 9:2
9:7,11,22,23 10:2
12:3,4,8,8,10,22
13:4,4,14,17,18
14:2,3,5 15:9,15
16:4,5,6,7,9,10
20:21 21:16,18,22
21:24 22:3,3,18,21
22:22,24 23:3,4,7,8
23:9,9,11,18,19,21
23:23,24 24:12,18
24:20,22,24 25:2,14
25:16,20,22,25 26:2
26:6,7,9,10,12,14
26:16,18,19 27:3,8
27:8,11,13,14,15,19
27:20,21 28:11,12
28:13,16,18,20,21
28:25 30:9,14,16,18

**bidder (19)**
6:16 15:14,25 16:2
23:17 24:4 25:22
26:4,8,10,11,13,17
26:20 28:12 38:16
38:16 39:16 44:21
**bidders (6)**
14:8 16:16 17:19
18:17 26:22 28:5
**bidding (18)**
6:23 7:5,8,10,17 8:18
8:19 13:2,6 14:21
14:25 23:5 27:14,18
31:19 44:25 45:9
47:2
**bids (11)**
13:12 14:18 15:2,13
20:20,23 23:20
24:24 27:5,7 45:11
**BILL (1)**
4:22
**binding (2)**
12:10 18:6
**black (10)**
8:9,10,14 10:4,12
21:5 22:5,13 49:11
49:22
**blood (1)**
48:14
**board (1)**
46:7
**bottom (2)**
24:13,21
**BRAWN (1)**
5:13
**break (3)**
24:3,14 25:9
**Brian (2)**
3:11 13:8
**brief (2)**
40:16 44:8
**brought (2)**
34:13 40:24

**burdensome (1)**
34:9
**business (10)**
6:19 7:17 11:24 12:14
15:23 19:14 20:4
25:24 26:3 30:19

---
**C**
---

**C (5)**
3:2,21 4:2 48:2,2
**calculate (1)**
25:16
**calculated (2)**
29:12,24
**calculation (3)**
27:12 46:20 47:2
**call (16)**
5:7 17:15,16,25 18:10
19:15 20:8,16 21:25
22:20 25:18 26:25
28:9 43:18 44:12,22
**called (1)**
38:10
**Canaccord (4)**
36:24 37:10,17,23
**capacity (1)**
18:23
**CapitalWorks (1)**
5:10
**case (2)**
6:12 29:19
**cases (1)**
6:8
**cash (4)**
28:19 30:12,22 40:6
**Catalyst (12)**
1:3 6:18 7:17 9:8,12
11:24 14:5 17:17
19:14 20:4 25:24
49:19
**Catalyst's (1)**
12:14
**caucusing (1)**
14:9
**CEO (1)**
17:17
**certain (15)**
6:14,15 7:5 8:12
10:25 11:3,8,10
12:2 21:10,12,15
22:8 50:4,6
**certainly (1)**
43:11
**certify (2)**
48:9,12
**change (3)**
30:10 36:11 43:2
**changes (4)**

8:12 22:13 28:25 37:8
**Chapter (1)**
6:7
**Charles (1)**
17:16
**CHARLIE (1)**
5:7
**China (4)**
11:9,11 21:13 50:7
**circulated (1)**
9:24
**claims (3)**
41:19 42:2 46:10
**clarification (1)**
25:19
**clarifications (6)**
20:19 21:3,15 22:9
23:6 33:12
**clarify (4)**
24:7 40:25 41:22 42:8
**clarity (1)**
23:18
**clear (2)**
18:17 41:3
**clearly (2)**
26:22 28:5
**Cleveland (1)**
4:8
**close (7)**
16:8 26:16,18,19
30:19 38:14,17
**closes (1)**
24:5
**closing (7)**
26:3 27:23 29:5,10
35:8 37:2 45:20
**colleague (1)**
13:8
**comment (2)**
24:8,14
**commitment (6)**
35:3,4,5,10 37:16
38:3
**commitments (3)**
34:21,22,24
**committee (5)**
12:2 14:10,11 18:21
18:21
**communications (1)**
19:22
**companies (2)**
17:22 18:7
**company (1)**
18:6
**comparison (1)**
27:6
**compensate (1)**
25:9

**competing (4)**
11:23 12:7 13:3 14:18
**competition (1)**
46:4
**competitive (1)**
6:23
**complete (1)**
7:22
**completed (1)**
36:21
**completion (1)**
6:22
**comply (1)**
31:18
**comprised (2)**
25:3,8
**concluded (1)**
13:14
**concludes (2)**
30:25 47:21
**condition (2)**
30:21 36:20
**conditional (10)**
32:23 34:9,12,14,25
36:23 37:3,15 38:4
38:18
**conditions (5)**
25:25 35:8,13 42:22
42:24
**conducted (1)**
32:2
**conference (1)**
14:9
**confirm (13)**
17:20 18:3 19:20
21:17,25 22:11
25:13 26:23 28:6,23
42:4 46:3,20
**confirmation (2)**
45:24 46:2
**confirmations (2)**
22:23 47:10
**conformity (1)**
44:3
**connection (1)**
42:17
**consent (2)**
37:24,25
**consider (2)**
23:15 45:3
**consideration (1)**
12:12
**considerations (4)**
23:14 27:22 45:18,18
**considered (1)**
31:17
**considering (1)**
45:17

**consistent (1)**
46:25
**constituencies (4)**
15:12,18 18:14 41:24
**constituents (3)**
14:12 28:2 45:23
**constitutes (4)**
21:24 22:17 25:22
27:19
**consult (2)**
15:19 27:25
**consulting (1)**
45:22
**consummate (1)**
33:18
**contacted (1)**
13:8
**contained (4)**
21:21 22:15 47:3,6
**contains (3)**
19:3 21:15 22:8
**contests (1)**
41:10
**context (1)**
40:8
**copy (9)**
13:19 14:23 21:6,8,11
21:13 22:7 32:15
33:6
**Corporation (1)**
6:6
**correct (2)**
46:5 47:8
**counsel (4)**
6:5 24:11 41:14 42:20
**counsel's (1)**
31:15
**COUNTY (1)**
48:5
**course (1)**
39:14
**court (10)**
6:9 7:4,20,24 16:11
16:14 26:5,21 39:19
39:21
**credit (1)**
47:2
**creditor (3)**
14:11 15:12 18:13
**creditor's (2)**
14:10 18:20
**credits (2)**
23:22 25:5
**CREECH (1)**
4:15
**CROWLEY (1)**
5:15
**CSFB (1)**

4:20
**CSI (59)**
4:5 5:7,8,9 9:8 10:8
10:11,15 12:9,11
13:3,13,14,18 14:4
15:8 17:10,13 19:11
19:19 20:2,7,13,13
20:19 21:4,17,17
23:10,21,24,24 24:5
24:7,11,25 28:8,11
32:3,10,20 33:5
34:13,23 37:10,18
38:6,16 42:6,15,19
42:21 43:16 44:4,11
44:12,21 45:13
49:25
**CSI's (13)**
12:10,15 19:13 21:16
21:24 22:3 23:2
24:19 36:4 38:18
43:18 44:14 47:12
**current (11)**
10:9 21:24 22:3,17,21
22:21 23:3,4,9,10
24:20
**Currently (1)**
24:18

---
**D**
---

**D (2)**
6:11 49:2
**DAN (1)**
5:15
**DANG (1)**
5:14
**date (14)**
7:12 8:8,16,21 9:6,13
9:21 10:3,17,23
11:6,13,21 33:24
**dated (11)**
6:20 8:24 9:4 10:8,10
10:16 11:15 19:4,13
49:16,25
**DAVE (1)**
5:6
**David (4)**
4:9 5:9,12 24:9
**day (1)**
48:18
**days (1)**
26:3
**deadline (4)**
7:11 12:3 33:13,25
**debt (6)**
34:22,24 35:2 36:19
37:2,7
**debtor (1)**
14:14
**debtors (5)**

6:6,7 7:10 46:16
47:10
**debtor's (2)**
43:12 46:15
**decide (1)**
16:18
**declaration (1)**
27:11
**deduction (1)**
46:22
**defenses (2)**
41:19 42:2
**defined (2)**
13:4 35:19
**definitive (2)**
35:5,11
**deliberate (2)**
15:22 45:10
**Delphi (61)**
1:3 3:6 4:13,14,15,16
4:17,18,19 6:5,13
6:21 10:8,11,15
11:25 12:20,25 13:2
13:13,17 15:16,21
16:3,7,11 19:5
20:18,21,25 22:24
23:7,15 26:4,14,18
27:2,18,25 31:14
32:25 33:11,20,21
34:2,6,17 35:22,24
39:6 41:9,9,24
42:12 43:20 44:2,14
44:19,25 45:10
49:25
**Delphi's (2)**
20:3 27:10
**DEMPSEY (1)**
4:4
**denial (1)**
41:16
**DENISE (1)**
3:10
**depending (2)**
15:21 30:2
**DeRAEDT (1)**
4:14
**described (2)**
8:6 46:25
**designate (3)**
16:16 47:10,12
**designated (7)**
16:20 17:9,15 45:4,5
45:14,16
**desires (1)**
15:14
**detail (1)**
23:15
**determination (1)**
28:4
**determine (5)**
15:23 27:7,18 34:7
45:11
**determined (3)**
13:2 16:5,6
**determining (1)**
23:16
**differences (5)**
20:22,24 23:2 25:6
27:4
**diligence (1)**
32:7
**DIP (1)**
14:13
**disagree (1)**
31:20
**disclosure (3)**
8:25 9:5 49:17
**discuss (3)**
20:19 23:14 39:18
**discussed (3)**
41:5 45:19 46:12
**discussions (2)**
19:21 20:25
**distribute (1)**
13:22
**distributed (3)**
8:2 13:18 43:10
**District (1)**
6:10
**docket (4)**
7:2,2,6,14
**document (3)**
35:19 36:14 37:7
**documentation (3)**
32:7 35:6,12
**documents (5)**
14:22,24 32:16,18
36:18
**dollars (1)**
28:20
**DOUG (1)**
4:25
**downward (2)**
29:7,20
**draft (1)**
20:21
**drafts (1)**
9:24
**Drain (1)**
6:11
**draw (1)**
35:15
**drop (1)**
39:24
**due (5)**
25:5 32:3,7,23 38:24
**D.C (1)**

3:18

---

**E**

**E (9)**
3:2,2,13 4:2,2 35:17
48:2,2 49:2
**earlier (4)**
38:8 40:3 43:4,10
**easiest (1)**
24:17
**effect (12)**
16:13 29:6 30:11,16
35:16,18,21,23 36:7
36:15 37:6,13
**effort (1)**
32:4
**either (2)**
25:22 29:24
**EMANUEL (1)**
3:21
**employ (1)**
29:9
**employee (2)**
29:25 30:2
**employees (8)**
29:8,14,16,19,23 30:4
30:7 46:23
**enable (1)**
38:12
**encourage (1)**
15:7
**ends (1)**
39:15
**enforce (1)**
26:6
**enhancements (5)**
20:20 21:2,16 22:9
33:12
**entered (4)**
6:25 7:4,6 16:13
**entitled (2)**
13:9 14:4
**entry (1)**
7:2
**equity (10)**
14:11 18:21 34:22,24
36:18,20,22 37:15
37:16 38:2
**ERIC (1)**
4:15
**ESQ (10)**
3:9,10,11,12,13,19,20
3:21 4:9,10
**estate (2)**
45:22 46:15
**estates (1)**
46:17
**evaluation (1)**

12:24
**event (4)**
24:3,23 38:14 39:14
**Everybody (1)**
6:2
**evidence (2)**
33:17,22
**EXAMINATION (1)**
49:3
**example (3)**
24:6,16 26:8
**examples (1)**
47:7
**exceed (1)**
47:6
**exception (1)**
40:4
**exceptions (1)**
12:21
**excess (1)**
29:15
**executed (1)**
33:6
**execution (2)**
27:23 45:21
**exercise (1)**
15:23
**Exhibit (55)**
8:5,7,9,13,14,17,19
8:22 9:2,7,9,11,14
9:19,22 10:2,4,12
10:18,21,24 11:3,7
11:10,14,18 12:9
13:5 19:2,12 21:7,9
21:12,14 22:8,14,25
28:24 30:8 43:14,15
47:4,7 49:10,11,13
49:14,18,20,21,22
50:2,4,6,8
**exhibits (4)**
7:25 8:4 21:20 49:9
**expressing (1)**
31:25
**expressly (1)**
23:13
**extend (1)**
37:22
**extended (2)**
7:10 12:5
**extension (2)**
7:14,19 38:2
**extent (3)**
17:6 29:22 30:21
**extremely (1)**
34:25
**E-mail (1)**
13:10

**F**

**F (1)**
48:2
**facilitate (1)**
27:6
**facility (2)**
21:11,13
**fact (1)**
35:15
**factors (2)**
27:24 45:21
**facts (1)**
41:10
**faith (1)**
34:7
**features (1)**
40:3
**fee (3)**
24:3,14 25:9
**Fern (2)**
3:11 13:8
**file (1)**
7:22
**filed (4)**
6:13 11:17,20 50:10
**final (5)**
9:23 19:7 26:13 30:18
44:22
**Finally (3)**
27:2 37:16 46:19
**financing (10)**
32:15,18,23 33:23
34:12,20 37:15
38:19 42:22,23
**find (2)**
32:19,20
**first (8)**
15:16 19:19 20:9 21:5
25:14 26:9 29:2
36:25
**Flom (2)**
3:4 6:4
**floor (2)**
14:17 43:22
**Flynt (4)**
29:8,13 30:7 46:24
**following (6)**
20:25 21:2 25:4 30:11
31:12 45:25
**forced (1)**
32:6
**foremost (1)**
36:25
**form (1)**
33:22
**formal (1)**
19:23
**formally (1)**

16:7
**formula (1)**
30:6
**forth (4)**
21:19 23:22 35:9,25
**forward (6)**
13:11 39:9,24 41:13
41:23 47:19
**Frank (1)**
5:14
**frankly (1)**
41:25
**free (1)**
18:15
**Fried (1)**
5:14
**FUERST (1)**
4:13
**FUKUDA (1)**
4:16
**full (1)**
17:20
**fully (1)**
18:18
**further (11)**
12:22 15:15 21:5 22:5
24:6 26:21 27:18
35:8 40:22 47:14
48:12

**G**

**game (1)**
32:16
**general (1)**
41:18
**go (5)**
8:3 24:15 31:21 34:19
38:21
**going (9)**
12:21 13:11 14:16,19
39:9,24 41:13,15,17
**good (2)**
6:2 34:7
**Goodwin (2)**
3:15 17:3
**GORMAN (1)**
5:11
**governing (6)**
10:25 11:4,8,11 50:4
50:6
**GRILLO (1)**
3:21
**GROBAN (1)**
5:12
**GRYNBERG (1)**
4:21
**guidance (1)**
15:11

**H**

**hand (3)**
20:2,3 48:18
**hearing (7)**
7:3 16:12 39:13,18
45:2 46:13 47:20
**held (2)**
2:6 7:3
**helpful (1)**
18:13
**hereunto (1)**
48:18
**higher (11)**
26:12 27:8,12,15
28:13 42:14 43:21
44:3,15,20 46:21
**highest (6)**
13:15 15:9 26:16,19
27:19 28:11
**highly (5)**
36:23 37:3,15 38:3,18
**Hilco (3)**
35:2,9,19
**hired (1)**
46:24
**Honorable (1)**
6:10
**hope (1)**
14:18
**horse (1)**
6:16
**Houlihan (1)**
5:15
**Hovey (2)**
3:19 17:2
**hypothetical (1)**
24:19

**I**

**identification (12)**
8:8,15,20 9:6,13,20
10:3,17,23 11:5,12
11:21
**impose (1)**
38:10
**include (4)**
21:19 35:10,12 41:5
**including (6)**
8:23 9:3,9 27:22
45:19 49:15
**inconsistent (2)**
21:22 22:16
**increase (2)**
30:12 44:17
**increases (2)**
43:24 44:12
**increments (1)**
15:3

**independent (1)**
12:24
**indicated (6)**
23:6 24:21 31:14
33:16 36:5 39:5
**indicates (1)**
37:17
**informal (1)**
19:23
**INFORMATION (1)**
49:6
**informed (1)**
27:16
**initially (1)**
33:9
**insert (1)**
29:2
**insisted (1)**
38:8
**instance (1)**
39:2
**insure (1)**
18:16
**interest (3)**
40:12 41:12,25
**interested (1)**
48:15
**invite (2)**
42:15 43:22
**irrevocable (1)**
25:23
**issue (2)**
39:11,13
**issues (1)**
15:11
**i.e (1)**
37:18

**J**

**J (1)**
3:19
**January (1)**
43:4
**JASON (1)**
3:12
**JEFFREY (1)**
4:10
**Jeffries (2)**
5:12,13
**JOB (1)**
1:24
**JOERG (1)**
4:23
**John (7)**
3:9 4:13,18 5:10 6:3
17:6 31:11
**jointly (1)**
6:11

**JOSEPH (1)**
5:5
**JOSHUA (1)**
3:20
**JUDE (1)**
5:11
**judgement (1)**
15:24
**July (15)**
7:9,11,12 10:8,16
12:7 19:13 21:16,18
21:22 35:25 36:5,12
36:16 49:25
**June (11)**
6:13,21 7:3,6 8:24 9:4
19:4 22:10,12,15
49:16
**justification (1)**
38:22

**K**

**KALOUDIS (1)**
3:10
**KATIE (1)**
5:14
**KAY (1)**
4:19
**Kemp (26)**
3:19 17:2,2,23 18:8
19:9 20:5,12 22:19
25:17 26:24 28:7,14
28:17 31:10 40:23
42:4 43:14,24 44:17
46:5,8,14,18 47:8
47:16
**KETCHENS (1)**
3:12
**Key (1)**
4:6
**KIRK (1)**
5:3
**KLATZKIN (1)**
3:20
**know (2)**
14:7 16:9
**knowledge (5)**
19:2,7,12,16,24

**L**

**LACHMANN (1)**
4:24
**late (1)**
32:16
**Latham (1)**
5:11
**lease (8)**
10:25 11:3,8,10 21:10
21:12 50:4,6

**LEE (1)**
5:5
**lenders (1)**
14:14
**letter (4)**
12:10 13:18,23 35:4
**light (1)**
27:21
**line (11)**
8:10,14 10:5,12 11:15
11:18 21:6 22:13
49:11,22 50:8
**lined (1)**
22:5
**lines (1)**
8:10
**listed (1)**
35:14
**litigation (1)**
46:10
**LLP (4)**
3:5,15 4:4 6:5
**Lokey (1)**
5:15
**look (2)**
36:24 47:19
**lot (1)**
32:6
**Luxembourg (4)**
11:2,4 21:10 50:5
**Lyons (61)**
3:9 6:2,3 8:9,17,22
9:7,14,22 10:4,18
10:24 11:7,14,22
17:8,18 18:3,11
19:10,17 20:6,9,13
20:17 22:2,20 24:15
25:19 27:2 28:8,10
28:15 31:3,6,13
39:4 40:8,10,15,18
40:25 41:8 42:5,8
43:11,15,20 44:2,8
44:10,14,19,24 45:8
46:6,9,16,19 47:9
47:18

**M**

**M (1)**
35:17
**MAC (1)**
37:14
**making (3)**
28:3 42:18 43:6
**manner (2)**
25:13 47:5
**MARC (1)**
4:21
**MARGARET (1)**

4:16
**marked (21)**
7:25 8:7,15,20 9:5,12
9:20 10:2,16,22
11:5,12,20 12:9,23
13:18 21:7,9,11,14
22:7
**MARKS (1)**
4:10
**marriage (1)**
48:14
**master (12)**
6:19 8:23 9:3 10:5,9
10:12 12:11,16,19
19:3 22:6 49:15
**material (13)**
12:15,18 20:22 35:16
35:18,21,22 36:7,10
36:15 37:5,12 42:25
**materially (2)**
34:8,14
**materials (1)**
9:9
**matter (1)**
48:16
**matters (1)**
46:11
**McINTOSH (1)**
5:3
**Meagher (2)**
3:4 6:4
**mean (2)**
27:13 34:23
**means (1)**
27:3
**mechanism (6)**
38:11 39:8,20 40:5
41:6,7
**meet (3)**
15:16,17,22
**MEISLER (1)**
3:13
**memorandum (2)**
13:19,20
**merger (1)**
37:9
**met (2)**
20:18 30:22
**methodology (1)**
47:3
**MICHAEL (1)**
4:24
**million (36)**
12:12 23:8,10,25
24:13,20,25 25:2,3
25:5,7,10,11 26:9
26:11,12,14,17,20
28:12,19,22 30:13

30:13,15,24 40:9
41:3 43:8,8,19,25
44:18,20 45:12,13
**minute (2)**
34:11 44:7
**mischaracterize (1)**
42:21
**model (1)**
37:9
**modifications (3)**
10:6,14 49:23
**moment (1)**
36:19
**monetary (1)**
20:23
**monetization (1)**
22:25
**monetize (1)**
27:4
**morning (1)**
39:5
**morning's (1)**
9:15
**motion (11)**
6:14,24,24,25 8:5,7
8:12 11:17,20 49:10
50:11
**move (1)**
34:20
**moving (1)**
41:12
**MSPA (16)**
10:5 21:6 28:23 29:17
30:10,17 33:6,16
34:10,15 36:3,7,11
37:18,18 49:22
**MSPA's (1)**
34:4
**MUELLER (1)**
5:10

_____

**N**

**N (4)**
3:2,20 4:2 49:2
**name (5)**
6:3 9:18 16:22 17:2
17:11
**NATE (1)**
5:13
**nature (1)**
34:12 38:18 39:3
**necessary (2)**
24:2 25:8
**need (2)**
9:17 26:20
**needed (2)**
33:17 40:25
**needs (1)**

37:19
**negotiated (4)**
21:5 22:5 33:10 35:7
**neither (1)**
15:14
**net (2)**
23:22 25:5
**new (13)**
1:10,10 2:8,8,10 3:8,8
3:17 6:10 29:3 48:3
48:5,8
**Notary (2)**
2:9 48:7
**note (2)**
12:21,22
**noted (2)**
12:4 47:22
**notes (2)**
47:3,7
**notice (2)**
7:14,18
**November (1)**
37:22
**number (8)**
6:12 7:2,15 12:9 19:3
19:12 34:3 45:17
**numbers (1)**
47:6
**numerous (1)**
33:2
**N.W (1)**
3:17

_____

**O**

**object (1)**
42:19
**objections (3)**
20:10,14 41:19
**obligations (2)**
21:21 22:14
**obtained (2)**
46:4,6
**obviate (1)**
9:17
**obviously (1)**
36:20
**offer (4)**
13:15 19:13 25:23
42:9
**offered (1)**
12:12
**offering (1)**
36:21
**offices (1)**
2:7
**Ohio (1)**
4:8
**Okay (7)**

16:15 18:24 20:6 31:3
31:6 42:8 44:24
**once (1)**
27:17
**ones (1)**
35:13
**open (2)**
14:16 26:2
**opening (6)**
22:3,21 23:3,3,9,11
**opportunity (1)**
14:17
**order (18)**
7:4,5,7,8,18 8:10,11
8:15,18,20 13:6,17
14:4 16:13 30:19
34:4 49:12,13
**original (7)**
8:11 11:16,19 12:19
30:24 38:13 50:9
**outcome (1)**
48:15
**outlined (2)**
20:22 40:3

_____

**P**

**P (4)**
3:2,2 4:2,2
**package (2)**
34:13 38:19
**PAGE (1)**
49:3
**pardon (1)**
25:14
**part (1)**
36:2
**participation (3)**
18:4,19 47:19
**particularly (1)**
35:14
**parties (17)**
8:2 9:25 13:9,21,25
15:2 16:4 18:18
19:18 21:3,4 22:5
25:7,12 27:5,16
48:13
**partner (2)**
17:3 24:10
**Partners (1)**
5:6
**party (5)**
14:23 15:24,25 27:9
41:25
**passed (1)**
33:25
**PAUL (1)**
4:17
**pay (1)**

24:2
**payment (1)**
37:20
**pending (2)**
6:8 45:23
**percent (2)**
29:16,23
**period (2)**
32:5,9
**permission (1)**
40:10
**person (3)**
16:23 17:12 29:13
**Philip (4)**
1:23 2:9 48:7,21
**place (2)**
7:15 32:24
**placement (1)**
36:24
**please (6)**
17:19 18:3 19:20
27:10 28:15 46:3
**plus (3)**
25:10 36:2 43:3
**point (7)**
15:4 16:3 18:24 33:3
35:24 36:13 37:14
**portion (1)**
44:22
**possession (1)**
6:7
**possible (1)**
15:20
**POWLEN (1)**
5:6
**prepared (2)**
20:21 22:24
**present (4)**
4:12 5:2 18:14 28:2
**previous (2)**
27:8 29:17
**previously (1)**
12:23
**price (19)**
25:24 28:19 29:4,6,8
29:20 30:12,15,22
37:20 38:11,12,13
38:20 39:8 40:5,6,7
46:23
**primary (1)**
18:13
**prior (6)**
8:3 13:16 20:17 27:17
40:25 42:18
**private (1)**
14:10
**privately (1)**
15:16

**procedures (25)**
6:15 7:5,8,10,18 8:18
8:19 12:5 13:2,5,6
13:17 14:3,21,21
15:5 16:10 25:21
27:14 42:25 44:4,25
45:9 47:13 49:13
**proceeding (1)**
41:23
**proceedings (45)**
1:9 2:6 6:1 7:1 8:1 9:1
10:1 11:1 12:1 13:1
14:1 15:1 16:1 17:1
18:1 19:1 20:1 21:1
22:1 23:1 24:1 25:1
26:1 27:1 28:1 29:1
30:1 31:1 32:1 33:1
34:1 35:1 36:1 37:1
38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1
46:1 47:1 48:10
**process (4)**
6:23 20:11,15 46:11
**Proctor (2)**
3:15 17:3
**projections (6)**
35:25 36:2,5,13,16
43:4
**property (6)**
10:25 11:4,8,11 50:5
50:7
**proposal (1)**
13:3
**proposals (1)**
11:23
**proposed (4)**
12:16 33:18 45:12,13
**protections (1)**
6:15
**provide (2)**
15:10 33:17
**provided (2)**
30:16 32:15
**provision (2)**
34:18 37:21
**provisions (2)**
34:3 43:2
**Public (3)**
2:9 4:7 48:8
**PUGLIESE (1)**
4:25
**purchase (31)**
6:20 8:24 9:4 10:5,7
10:10,13,15 12:11
12:17,19 19:4 22:6
25:23 28:19 29:4,6
29:7,20 30:12,15,22
37:20 38:11,12 39:8
40:6,6 46:23 49:16

49:24
**purposes (7)**
16:19,24 17:13 23:17
28:24 39:9,23
**pursuant (10)**
6:19 7:9,17 12:4,10
14:3 20:20 44:24
45:9 47:13
**pursuing (1)**
36:10
**put (7)**
15:8 18:16 28:15
31:23 32:4 35:24
39:11
**p.m (2)**
2:4 47:22

---

**Q**

**qualified (8)**
13:4 14:2 31:17 32:21
33:2,16 34:8 38:7
**qualify (1)**
34:5
**questions (1)**
18:15
**quickly (2)**
8:4 15:20

---

**R**

**R (3)**
3:2 4:2 48:2
**raise (1)**
28:18
**raised (1)**
36:22
**ran (1)**
43:2
**rate (2)**
29:12,24
**read (1)**
14:20
**ready (1)**
6:2
**real (3)**
10:25 11:4 50:5
**really (1)**
37:11
**reason (2)**
38:7,9
**reasonable (2)**
34:17 47:5
**reasons (1)**
39:19
**receive (1)**
26:5
**received (4)**
11:25 12:8 21:2 27:15
**recess (11)**

15:15 31:4,5 40:16,17
44:6,8,9 45:3,7,10
**recognize (1)**
35:3
**record (21)**
9:15 14:20,23 16:19
16:22 17:11 18:16
18:17 28:16 31:4,7
31:21,23 39:12
40:19 41:11 42:10
44:10 45:8 46:12
48:11
**red (3)**
11:14,18 50:8
**redacted (1)**
13:22
**reduced (1)**
38:13
**refer (3)**
6:24 7:7 22:2
**referenced (1)**
43:5
**reflect (3)**
22:13 23:22 24:2
**reflected (6)**
23:19 28:24 30:8,14
37:8 47:4
**reflecting (3)**
10:6,13 49:23
**reflects (2)**
22:25 24:13
**regarding (3)**
20:3 46:10,21
**reimbursement (1)**
46:21
**reinsert (1)**
39:21
**reiterate (2)**
30:5 38:5
**relate (1)**
15:13
**related (1)**
48:13
**relating (2)**
21:10,12
**relevant (2)**
13:21 27:21
**remain (2)**
26:2 30:15
**remarks (1)**
40:13
**remind (1)**
14:25
**remove (1)**
40:5
**removing (1)**
41:7
**Reported (1)**

1:23
**reporter (1)**
7:21
**representation (1)**
20:7
**representative (11)**
16:17,21,24 17:10,13
17:16 18:25 19:11
28:2 31:8 40:21
**representatives (7)**
14:12 15:17 17:19
18:20 19:25 20:2,18
**represents (1)**
19:13
**request (1)**
16:15
**REQUESTS (1)**
49:6
**required (1)**
33:7
**requirement (3)**
26:23 28:6 33:15
**requirements (4)**
31:19 33:8,23 34:4
**requires (1)**
34:6
**reservation (1)**
41:18
**reserve (6)**
5:6 15:6 17:5 39:12
41:4,13
**reserves (2)**
37:7,8
**reset (1)**
7:12
**respect (6)**
19:17 21:4 22:4 30:6
32:3 38:24
**respective (3)**
15:13 17:22 18:6
**respects (1)**
37:3
**respond (4)**
42:16 44:5,16,21
**response (1)**
41:20
**result (1)**
38:19
**revert (1)**
30:23
**review (3)**
9:10 14:24 32:6
**reviewing (1)**
13:12
**revised (13)**
10:19,21 21:6,7 22:6
22:24 23:7,19,23
28:11 30:17 42:13

50:2
**revisit (1)**
39:13
**RICK (1)**
4:19
**right (6)**
15:6 17:5 20:5 31:10
39:18 46:2
**rights (3)**
39:12 41:4,14
**risks (4)**
27:23,23 45:20,21
**Rizzuti (4)**
1:23 2:9 48:7,21
**Robert (1)**
6:11
**RODEN (1)**
4:23
**RON (2)**
3:13 5:8
**room (2)**
14:9,13
**ROTH (1)**
4:17
**round (1)**
26:10
**RUDOLPH (1)**
5:8

---

**S**

**S (2)**
3:2 4:2
**sale (38)**
6:17,20,24,25 8:5,7
8:10,11,14,24 9:3
10:5,7,10,12,14
11:17,20 12:11,16
12:16,19 16:12 19:3
20:3,11,15 22:6
26:3 30:18 39:13
46:11 47:20 49:10
49:11,15,24 50:10
**SAMETT (1)**
5:4
**Sanders (2)**
4:4 24:10
**satisfactory (1)**
33:20
**schedule (5)**
10:18,19,21 21:8 50:2
**schedules (5)**
8:25 9:5 19:6,8 49:17
**second (3)**
25:19 30:10 39:16
**section (1)**
29:3
**see (1)**
33:9

**seek (1)**
26:15
**seeking (2)**
6:14 33:11
**seen (1)**
37:11
**sees (1)**
32:10
**September (1)**
37:21
**set (4)**
21:19 23:22 35:9
48:18
**Shanghai (4)**
11:9,11 21:13 50:7
**sharing (1)**
14:13
**SHEA (1)**
5:9
**sheet (19)**
9:15,19,23,23 10:2
12:23 22:24 23:7,20
23:23 24:22 27:3
28:11,21 30:9 43:10
47:4 49:20,21
**sheets (1)**
20:21
**short (2)**
32:5,9
**shortly (2)**
14:16,19
**shown (1)**
28:20
**side (1)**
40:12
**sign (3)**
9:15,19 49:20
**similar (1)**
12:18
**six (2)**
43:3,3
**Skadden (5)**
2:7 3:4 6:4,5 39:6
**Skadden's (1)**
31:15
**Slate (1)**
6:4
**SLATER (1)**
3:4
**small (3)**
35:17,17,17
**Solutions (4)**
9:8,12 17:17 49:19
**sorry (1)**
46:22
**Southern (1)**
6:9
**so-called (1)**

35:25
**speak (4)**
16:17,18 17:6,21
**speaking (1)**
17:4
**specific (2)**
15:4 41:16
**spoke (2)**
37:4 41:14
**Square (3)**
2:8 3:7 4:7
**Squire (2)**
4:4 24:10
**ss (1)**
48:4
**stalking (1)**
6:16
**standard (2)**
33:19 35:20
**STARON (1)**
4:22
**start (1)**
31:24
**starting (2)**
35:2 36:13
**state (6)**
2:10 9:18 16:21 17:10
48:3,8
**stated (1)**
35:10
**statement (5)**
31:9 40:22 41:2,17,21
**statements (2)**
42:19,21
**States (1)**
6:9
**stature (1)**
30:3
**status (1)**
30:3
**statutory (1)**
12:2
**Stearns (4)**
4:25 5:3,4,5
**STEVE (1)**
4:14
**subject (11)**
6:22 23:13 32:18 35:5
35:16 36:14 37:2,5
37:25 42:22,23
**submission (2)**
25:21 30:24
**submit (3)**
28:13,18 43:16
**submits (3)**
26:9,12,13
**submitted (11)**
8:23 9:2,8,11 13:15

14:2 31:16 33:6
39:4 49:14,18
**subsequent (25)**
23:21 24:24 25:2,21
25:25 27:5,6,7,11
28:18,25 30:14 31:2
31:12,18 36:7 38:9
39:5 40:2,8 41:3
42:13,18 43:17,23
**subsequently (2)**
13:22 26:11
**substantially (3)**
6:17 12:13,17
**successful (13)**
15:25 16:5 23:17 24:4
26:6 27:13,21 30:18
38:15,16 45:4,15
47:11
**suffer (1)**
35:22
**sum (1)**
38:5
**sun (1)**
41:20
**supplementing (1)**
40:13
**support (2)**
33:3 34:24
**supposedly (1)**
37:23
**sure (1)**
40:11

                T

**T (2)**
48:2,2
**table (3)**
15:8 34:13 42:13
**take (5)**
19:18 29:18 31:4
40:15 45:3
**taken (4)**
31:5 40:17 44:9 45:7
**takes (2)**
29:9,15
**term (1)**
23:12
**terms (13)**
12:15,18 18:16 23:2
25:6,24 27:4 28:16
28:23 34:9,15 36:6
42:9
**Thank (4)**
18:11 31:11 41:8
47:18
**thereunder (1)**
36:22
**therewith (3)**

12:6 21:23 22:16
**things (2)**
27:23 33:2
**think (8)**
29:3 33:21 34:16
36:23 38:17,20,23
38:24
**three (1)**
23:6
**time (8)**
7:15 15:4,21 16:8
32:5,9,9 47:22
**Times (2)**
2:7 3:7
**title (3)**
9:18 16:22 17:11
**today (13)**
7:13 10:10 11:16 15:5
15:8 18:15,22 32:3
36:12,16 38:23
39:15 46:12
**today's (1)**
14:5
**toggle (7)**
38:11 39:7,20,25 40:5
41:5,7
**told (2)**
33:8 34:2
**topped (1)**
26:10
**Tower (1)**
4:6
**transaction (2)**
24:5 33:18
**transcribed (1)**
7:22
**transcript (1)**
7:23
**triggered (2)**
29:21 35:21
**Troy (4)**
29:8,13 30:7 46:24
**true (3)**
33:5,19 48:11
**try (1)**
39:10
**Tulsa (6)**
29:15,16,19,22 30:8
46:24
**turn (1)**
43:21
**two (5)**
16:16 20:23 26:2
28:25 45:11
**type (1)**
39:7

                U

**UAW (1)**
18:22
**ultimately (4)**
23:16 26:13 35:11
46:23
**Umicore (69)**
3:16 4:21,22,23,24
6:16,19,22 8:23 9:3
11:15,18 12:20
13:13,21,24 14:4
15:7 16:21,24 17:4
18:8,25 19:6,18,20
19:25 20:9,10,19
22:4,11,12 23:9
24:3,4,18,23 25:9
25:14 28:6,13,17
29:9,14,17,22 31:8
32:14 36:4 39:15
40:12 41:11,14,23
42:14,20 43:22,24
44:15,17 45:12,24
46:3,6,9,19 49:14
50:8
**Umicore's (11)**
22:17,21 23:3 29:7
30:12,16,23 40:20
43:13 44:20 47:11
**unable (1)**
26:17
**unconditional (1)**
37:19
**underscore (1)**
31:22
**understand (6)**
24:7 25:13,18 26:22
28:5 42:11
**understanding (3)**
43:7,12,13
**understood (1)**
18:18
**underwriting (1)**
13:24
**United (1)**
6:8
**unqualified (1)**
39:2
**unreasonable (1)**
33:21
**unreasonably (1)**
37:23
**unsuccessful (1)**
39:16
**unwaivable (1)**
33:15
**use (4)**
14:9 23:12,18 27:3

                V

**valuation (1)**

43:9
**value (16)**
23:8,10,12,18 24:12
24:18,20 28:12,20
30:6 32:11 40:7
43:8,19 44:13 45:19
**values (1)**
20:23
**valuing (1)**
23:20
**various (2)**
9:24 45:22
**verbal (1)**
19:23
**version (2)**
10:9 13:23
**versions (1)**
19:8
**view (8)**
31:15 33:4,14,20
37:14 38:3,5 42:24
**vision (1)**
32:12
**von (1)**
4:23

**W**

**waive (3)**
34:17 36:9 46:10
**waived (4)**
34:3 41:6 42:2,25
**waivers (1)**
34:19
**want (3)**
16:18 23:5 24:8
**Washington (1)**
3:18
**Watkins (1)**
5:11
**way (4)**
24:17 25:15 32:2
48:15
**WEBER (1)**
4:18
**Wednesday (1)**
1:11
**welcome (1)**
18:19
**Western (1)**
5:6
**WHEREOF (1)**
48:17
**willing (1)**
39:10
**winning (1)**
26:14
**wish (1)**
28:13

**withhold (1)**
37:24
**WITNESS (2)**
48:17 49:3
**words (1)**
39:17
**written (1)**
19:23
**wrong (1)**
32:25

**X**

**X (4)**
26:8,11,20 49:2
**XI (1)**
6:7

**Y**

**Y (3)**
26:10,13,17
**York (12)**
1:10,10 2:8,8,10 3:8,8
3:17 6:10 48:3,5,9

**Z**

**Zagore (7)**
4:9 24:9,10 42:7,17
44:6 47:17

**$**

**$100,000 (1)**
29:25
**$2 (2)**
23:25 24:13
**$40,000 (1)**
29:25
**$500,000 (1)**
15:3
**$55.6 (1)**
23:8
**$59.1 (1)**
25:7
**$60 (4)**
23:10 24:20 26:9
28:12
**$60.5 (1)**
24:24
**$61 (2)**
25:2,2
**$65 (3)**
41:3 43:7,8
**$65.5 (1)**
43:18
**$70.5 (1)**
45:13
**$75 (2)**
44:20 45:11
**$75,000 (1)**

29:12
**$9.4 (1)**
28:19

**0**

**05-44481 (1)**
6:12

**1**

**1 (5)**
7:13 8:5,7 13:5 49:10
**10 (8)**
10:24 11:3 21:12,20
49:21,22 50:2,4
**10036 (1)**
3:8
**11 (8)**
11:7,10 21:14,20 50:4
50:6,6,8
**11.5.2 (1)**
33:7
**11.5.4 (1)**
33:15
**11.6.3 (1)**
34:6
**12 (6)**
11:14,18 22:8,14
28:24 50:8
**12623 (1)**
1:24
**127 (1)**
4:7
**15th (2)**
37:21,22
**16th (1)**
30:20
**18 (1)**
7:9

**2**

**2 (5)**
8:9,13,14 25:10 49:11
**2/3 (2)**
29:15,23
**20001 (1)**
3:18
**2007 (22)**
1:11 2:3 6:13,21 7:4,6
7:9,11,12,13 8:25
9:4 10:9,16 13:7,13
19:4,14 22:15 48:19
49:16,25
**24 (1)**
7:11
**26 (1)**
7:3
**29 (1)**
7:6

**3**

**3 (4)**
8:17,19 13:7 49:13
**3.2 (1)**
10:19
**3.2.1 (4)**
10:20,21 21:8 50:2
**3.9 (1)**
25:5
**31 (5)**
7:12 10:8,16 19:13
49:25
**31st (8)**
12:7 21:16,18,22
35:23 36:8 37:6,13

**4**

**4 (7)**
2:7 3:7 8:22 9:2 19:3
19:4 49:14
**4.6.9 (1)**
29:4
**44114-1304 (1)**
4:8
**4900 (1)**
4:6

**5**

**5 (11)**
6:21 8:24 9:4,7,9,11
12:9 19:12 22:15
49:16,18
**5th (2)**
22:10,12
**5:30 (1)**
2:4
**55.6 (4)**
24:19 28:20 30:13,23
**57.1 (1)**
25:10
**58.1 (1)**
12:12

**6**

**6 (6)**
6:13 9:14,19 36:2,2
49:20
**62 (1)**
26:11
**64 (2)**
26:12,19
**65 (4)**
28:21 30:13,15 40:9
**66 (4)**
26:14,16 29:15,23

**7**

**7 (10)**

9:22 10:2 13:13 22:25
30:9 43:14,15 47:5
47:7 49:21
**70 (1)**
43:25
**70.5 (2)**
44:13,15
**75 (1)**
44:18

**8**

**8 (10)**
1:11 2:3 10:4,12 21:7
21:20 49:10,11,13
49:22
**8179 (1)**
7:2
**8436 (1)**
7:7
**8653 (1)**
7:15

**9**

**9 (8)**
10:18,21 21:9,20
49:14,18,20 50:2
**9th (1)**
48:18
**9:00 (1)**
47:22
**901 (1)**
3:17

**MASTER SALE AND PURCHASE AGREEMENT**

**BETWEEN**

**UMICORE AND THE OTHER AFFILIATED PURCHASERS
TO BE SET FORTH ON SCHEDULE 1**

**AND**

**DELPHI CORPORATION AND THE OTHER AFFILIATED SELLERS TO BE
SET FORTH ON THE SIGNATURE PAGES AND SCHEDULE 1**

**June 5,August 16, 2007**

**TABLE OF CONTENTS**

**PAGE**

1.  **CONVEYANCE OF THE ACQUIRED ASSETS AND SALE SECURITIES:** ..................... **20**
    1.1.    General. ................................................................................................. 20
        1.1.1.    Transfer of Purchased Assets. ............................................... 20
        1.1.2.    Identity of Purchasers. ........................................................... 20
        1.1.3.    Governing Documents. ........................................................... 20
    1.2.    Sale Securities. ................................................................................... ~~20~~21
    1.3.    Acquired Assets Transactions. ........................................................ 21
        1.3.1.    Acquired Assets. ..................................................................... 21
        1.3.2.    Carved-Out Location Assets. ................................................ 21
    1.4.    Excluded Assets. ................................................................................. 22
        1.4.1.    Bailed Assets. .......................................................................... ~~22~~23
        1.4.2.    Personnel and Medical Records. ......................................... 23
        1.4.3.    Certain Financial Assets. ...................................................... 23
        1.4.4.    Certain Financial Contracts. ................................................ 23
        1.4.5.    Tax Refunds, Etc. ................................................................... 23
        1.4.6.    Excluded Intellectual Property ............................................ 23
        1.4.7.    Excluded Canning Business. ................................................. 24
        1.4.8.    Assets of the Chinese Joint Venture. ................................... 24
        1.4.9.    Assets of the Australian and Mexican Operations. ........... 24
        1.4.10.  Technical Centers. ................................................................. 24
        1.4.11.  Sales Offices. .......................................................................... 24
        1.4.12.  Privileged Information and Materials. ................................ 24
        1.4.13.  Insurance. ................................................................................ 24
        1.4.14.  Certain Rights. ....................................................................... 24
        1.4.15.  Real Property. ........................................................................ 24
        1.4.16.  Benefit Plans. .......................................................................... 24
        1.4.17.  Collective Bargaining Agreements. ..................................... 25
        1.4.18.  Excluded Trade Receivables. ............................................... 25
        1.4.19.  Certain Contracts. ................................................................. 25
        1.4.20.  Other Assets. .......................................................................... 25
    1.5.    Post-Closing Asset Deliveries. ......................................................... 25
    1.6.    Non-Assignable Permits and Contracts: .......................................... 25
        1.6.1.    Non-Assignability. .................................................................. 25
        1.6.2.    Efforts to Obtain Consents and Waivers. ........................... ~~26~~25
        1.6.3.    If Waivers or Consents Cannot Be Obtained. ..................... 26
        1.6.4.    Obligation of Purchasers to Perform. ................................. 26
    1.7.    Certain Assigned Contracts. ............................................................. 26

2.  **ASSUMPTION OF LIABILITIES REGARDING ACQUIRED ASSETS TRANSACTIONS; RETAINED LIABILITIES:** ................................................................................... **26**
    2.1.    Assumed Liabilities. ........................................................................... 26
    2.2.    No Expansion of Third Party Rights. ............................................... 28
    2.3.    Retained Liabilities. ........................................................................... 28

| | | |
|---|---|---|
| **3.** | **ACQUIRED ASSETS - PERSONNEL MATTERS - TRANSFERRED EMPLOYEES:** | **29** |
| | 3.1. Current Employees. | 29 |
| | 3.2. Offer of Employment: | 29 |
| | 3.3. Purchasers' U.S. Benefit Plans. | ~~31~~30 |
| | 3.4. WARN Act. | 31 |
| | 3.5. Sellers' U.S. Pension Plans. | 31 |
| | 3.6. Non-U.S. Benefit Plans. | 31 |
| | 3.7. Continuation of U.S. Health Plans by Sellers after the Closing. | 31 |
| | 3.8. U.S. Benefit Plans For Retired Employees. | 32 |
| | 3.9. Collective Bargaining Agreements. | 32 |
| | 3.10. Severance; Stay/Retention Bonuses. | 32 |
| | 3.11. Cooperation. | ~~33~~32 |
| | 3.12. No Third Party Rights. | ~~33~~32 |
| | 3.13. PTO Obligations. | ~~33~~32 |
| | 3.14. Workers' Compensation. | 33 |
| **4.** | **PURCHASE PRICE:** | **33** |
| | 4.1. Preliminary Purchase Price. | 33 |
| | 4.2. Deposit Amount. | 33 |
| | 4.2.1. Deposit Instructions. | 33 |
| | 4.2.2. Violation of Agreement. | 33 |
| | 4.2.3. Other Reason. | 33 |
| | 4.3. Escrow Amount. | ~~34~~33 |
| | 4.4. Delivery of Purchase Price. | 34 |
| | 4.5. Pre-Closing Review of PGM Inventory Levels. | 34 |
| | 4.6. Adjustments to Purchase Price. | 34 |
| | 4.6.1. Net Working Capital. | ~~35~~34 |
| | 4.6.2. Adjustments for Changes in Owned PGMs: | 35 |
| | 4.6.3. Adjustment Related to Unfulfilled Restitution Commitments. | 36 |
| | 4.6.4. Adjustments for PGM Leases or Borrowings. | 36 |
| | 4.6.5. Adjustments for Non-U.S. Pension and Benefit Liabilities. | 36 |
| | 4.6.6. Adjustments for Assumed PTO Obligations. | ~~37~~36 |
| | 4.6.7. Adjustments for Sale Company. | 37 |
| | 4.6.8. Capital Leases. | 37 |
| | 4.6.9. Adjustment for U.S. Employee-Related Credit. | 37 |
| | 4.7. Post-Closing Purchase Price Adjustments. | ~~37~~38 |
| | 4.7.1. General: | ~~37~~38 |
| | 4.7.2. Objections by Sellers; Consequence of No Objections. | 39 |
| | 4.7.3. Negotiated Settlement of Objections. | 39 |
| | 4.7.4. Arbitrated Settlement of Objections. | 39 |
| | 4.7.5. Payment Mechanics for Post-Closing Price Adjustments Generally. | 39 |
| | 4.8. Allocation of Purchase Price: | 40 |
| **5.** | **REPRESENTATIONS AND WARRANTIES:** | **40** |
| | 5.1. Warranties of Delphi and each Seller. | 40 |
| | 5.1.1. Organization and Good Standing. | ~~40~~41 |
| | 5.1.2. Corporate Power; Due Authorization. | 41 |
| | 5.1.3. No Violations. | 41 |
| | 5.1.4. Sufficiency of Acquired Assets. | 41 |
| | 5.1.5. Personal Property; Condition of Personal Property: | 41 |
| | 5.1.6. Litigation. | 42 |
| | 5.1.7. Intellectual Property Assets: | 42 |

5.1.8.   Insurance. ......................................................................................... 43
5.1.9.   Compliance with Other Instruments and Laws; Permits. ...................... 43
5.1.10.  Brokers. ............................................................................................ 44
5.1.11.  Consents and Approvals. .................................................................. 44
5.1.12.  July (6+6) Projections. ..................................................................... 44
5.1.13.  Events Subsequent to ~~January~~July Projections. ................................ 44
5.1.14.  Contracts: ..................................................................................... ~~44~~45
5.1.15.  Regulatory Matters. ...................................................................... ~~45~~46
5.1.16.  Real Property: ................................................................................ 46
5.1.17.  Tax Matters: ................................................................................... 47
5.1.18.  Capitalization of the Sale Company and Related Matters: ................... 48
5.1.19.  Employee Issues: ........................................................................... 49
5.1.20.  Environmental Representations and Warranties. ............................... 51
5.1.21.  Product Claims. .............................................................................. 52
5.1.22.  Accounts Receivable. ..................................................................... 52
5.1.23.  Absence of Other Representations or Warranties. ............................ 52
5.2.     Warranties of Purchasers. ......................................................................... 52
5.2.1.   Corporate Data. .............................................................................. 52
5.2.2.   Corporate Power; Due Authorization. ............................................ ~~52~~53
5.2.3.   No Violations. ................................................................................. 53
5.2.4.   Consents and Approvals. ................................................................ 53
5.2.5.   Litigation. ....................................................................................... 53
5.2.6.   Brokers. ........................................................................................ ~~53~~54
5.2.7.   Solvency. ...................................................................................... ~~53~~54
5.2.8.   Availability of Funds. ...................................................................... 54
5.2.9.   Investment Intent: .......................................................................... 54
5.2.10.  Compliance with Law. ................................................................... ~~54~~55
5.2.11.  Anti-Money Laundering. ............................................................... ~~54~~55
5.2.12.  Adequate Assurance of Future Performance. .................................. 55
5.2.13.  Shelf Tulsa Collective Bargaining Agreement. ............................... 55

6.       CONDITIONS TO CLOSING: .................................................................. 55
6.1.     Conditions to Obligations of Sellers and Purchasers. ................................... 55
6.1.1.   Sale Approval Order. ...................................................................... 55
6.1.2.   No Law, Judgments, etc. ................................................................ 55
6.1.3.   Approvals by Antitrust Authorities ................................................. 56
6.1.4.   Other Approvals. ............................................................................ 56
6.2.     Conditions to Obligations of Purchasers. ................................................... 56
6.2.1.   Accuracy of Warranties. ................................................................. 56
6.2.2.   Material Adverse Effect. ................................................................. 56
6.2.3.   Ancillary Agreements and Performance of Covenants. ...................... 56
6.2.4.   Other Approvals; Cure Amounts. ................................................... ~~56~~57
6.2.5.   CBA. ............................................................................................. 57
6.2.6.   Sale Company Debt. ....................................................................... 57
6.2.7.   Florange Pre-emptive Right. ........................................................... 57
6.2.8.   Closing Deliveries. ......................................................................... 57
6.3.     Conditions to Obligations of Sellers. ......................................................... 57
6.3.1.   Accuracy of Warranties. ................................................................. 57
6.3.2.   Ancillary Agreements Performance of Covenants. ............................ 57
6.3.3.   Closing Deliveries. ......................................................................... 57

7.    CLOSING:..................................................................................................... ~~57~~58
     7.1.    The Closing. ........................................................................................ ~~57~~58
     7.2.    Ancillary Agreements. ......................................................................... 58
     7.3.    Sellers' Other Deliveries. .................................................................... 59
     7.4.    Purchasers' Deliveries. ........................................................................ 60
     7.5.    Post-Closing Deliveries. ...................................................................... 60
     7.6.    Sale Company. ..................................................................................... 60

8.    CERTAIN ADDITIONAL COVENANTS:..................................................... 61
     8.1.    Certain Pre-Closing Matters: ............................................................... 61
     8.2.    Joinder of Additional Seller Parties. .................................................... 62
     8.3.    Bankruptcy Actions: ............................................................................ 62
     8.4.    Registrations, Filings and Consents; Further Actions:........................... 63
     8.5.    Operation of the Business Pending Closing: ......................................... 64
     8.6.    Assumed U.S. Contracts; Cure Amounts. ............................................. 65
     8.7.    Hired Current Employees. .................................................................... 65
     8.8.    Assumed PTO Obligations. .................................................................. 65
     8.9.    Guarantee by Umicore. ........................................................................ 65
     8.10.   Post-Closing Covenants. ...................................................................... 65
            8.10.1.  Seller Post-Closing Covenants: ............................................... 66
            8.10.2.  Technical Documentation. ....................................................... 67
            8.10.3.  Books and Records and Litigation Assistance From and After Closing:............. 67
            8.10.4.  Payment and Collections. ........................................................ 68
            8.10.5.  Intellectual Property Transition Rights. ................................... 68
            8.10.6.  Change of Name of the Sale Company. .................................... 69
            8.10.7.  Catalyst Co-Development and Supply ...................................... 69
     8.11.   Further Assurances. ............................................................................. 69
     8.12.   Certain Transactions. .......................................................................... 69
     8.13.   Communications with Customers and Suppliers. ................................... 69
     8.14.   Permit Transfers. ................................................................................ 70
     8.15.   Pre-Closing Transfer of Intellectual Property. ...................................... 70

9.    TERMINATION:......................................................................................... 70
     9.1.    Termination. ........................................................................................ 70
     9.2.    Notice of Termination. ......................................................................... 71
     9.3.    Break-Up Fee; Expense Reimbursement; Return of Deposit: ................. 72
            9.3.1.   Break-Up Fee. ........................................................................ 72
            9.3.2.   Expense Reimbursement .......................................................... 72
            9.3.3.   Payments. ............................................................................... 72
            9.3.4.   Limitations. ............................................................................ 72
            9.3.5.   Return of Deposit. ................................................................... 73
     9.4.    Procedure and Effect of Termination. .................................................. 73
     9.5.    Conflicts. ............................................................................................ 73

10.   OTHER TAX MATTERS:............................................................................ 73
     10.1.   General. .............................................................................................. 73
     10.2.   Sale Company Taxes. .......................................................................... 73
            10.2.1.  Sellers' Liability. .................................................................... ~~74~~73
            10.2.2.  Purchasers' Liability. .............................................................. 74
            10.2.3.  Straddle Period Allocations. ................................................... 74
            10.2.4.  Tax Sharing Agreements. ........................................................ 74
            10.2.5.  Refunds and Tax Benefits. ...................................................... 74

10.3. Tax Returns:...................................................................................................75
    10.3.1. Taxable Periods Ending on or Before the Closing Date:.................................75
    10.3.2. Taxable Periods Beginning Before and Ending After the Closing Date (Straddle Periods).......................................................................................75
10.4. Audits and Adjustments............................................................................76
10.5. Sales or Transfer Taxes.............................................................................76
10.6. Purchasers Covenants and Indemnity........................................................77
10.7. Sellers Covenants and Indemnity..............................................................77
10.8. Purchase Price Adjustment........................................................................77
10.9. Customs Duties.........................................................................................77

**11. BIDDING PROCEDURES:**.............................................................................77
11.1. Delphi Initial Bankruptcy Actions.............................................................77
11.2. Qualified Bidder.......................................................................................77
11.3. Due Diligence...........................................................................................78
11.4. Bid Deadline.............................................................................................78
11.5. Bid Requirements......................................................................................79
11.6. Qualified Bids...........................................................................................79
11.7. Bid Protection...........................................................................................80
11.8. Auction Bidding Increments and Bids Remaining Open.............................80
11.9. Acceptance of Qualified Bids....................................................................81
11.10. Sale Hearing.............................................................................................82
11.11. Return of Good Faith Deposit....................................................................82
11.12. Modifications............................................................................................82

**12. SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS; INDEMNIFICATION:**.............................................................................82
12.1. Sellers' Agreement to Indemnify...............................................................82
12.2. Specific Performance.................................................................................83
12.3. Purchasers' Agreement to Indemnify.........................................................83
12.4. Third Party Indemnification.......................................................................83
12.5. Limitations................................................................................................84
12.6. Environmental Matters:.............................................................................87
    12.6.1. Indemnification of Seller and Purchaser:.........................................87
    12.6.2. Limitations on Liability........................................................................87
    12.6.3. Remediation of Environmental Damage:............................................88

**13. MISCELLANEOUS:**.....................................................................................89
13.1. Bulk Sales Laws.......................................................................................89
13.2. Notices......................................................................................................89
13.3. Assignment...............................................................................................90
13.4. Entire Agreement......................................................................................90
13.5. Waiver......................................................................................................90
13.6. Severability...............................................................................................90
13.7. Amendment...............................................................................................90
13.8. Expenses...................................................................................................90
13.9. Third Parties.............................................................................................90
13.10. Headings...................................................................................................90
13.11. Counterparts.............................................................................................90
13.12. Governing Law.........................................................................................91
13.13. Public Announcements..............................................................................91
13.14. Venue and Retention of Jurisdiction..........................................................91

13.15.   Risk of Loss. ............................................................................................................... 91
13.16.   Enforcement of Agreement. ........................................................................................ 91
13.17.   Dispute Resolution. ..................................................................................................... 91
13.18.   No Right of Setoff. ...................................................................................................... 91
13.19.   Limitation on Damages. .............................................................................................. 91

## MASTER SALE AND PURCHASE AGREEMENT

**THIS MASTER SALE AND PURCHASE AGREEMENT** dated June 5, **August 16,** **2007,** by and between **UMICORE**, a Belgian corporation ("**Umicore**") on behalf of itself and each of its affiliates to be listed on Schedule 1 hereto (each of Umicore and such affiliates a "**Purchaser**", and collectively "**Purchasers**"), and **DELPHI CORPORATION**, a Delaware corporation ("**Delphi**"), on behalf of itself and each of its affiliates listed as a signatory hereto and on Schedule 1 hereto (each of Delphi and such affiliates a "**Seller**", and collectively "**Sellers**").

### R E C I T A L S :

**WHEREAS,** Sellers are engaged in the Business (as hereinafter defined).

**WHEREAS,** on October 8, 2005 (the "**Petition Date**"), the Filing Affiliates (as hereinafter defined) filed voluntary petitions for relief (the "**Bankruptcy Cases**") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq. (as amended as of the Petition Date) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

**WHEREAS,** upon the terms and subject to the conditions set forth in this Agreement, and as authorized under Sections 363, 365 and 1146 of the Bankruptcy Code, Sellers wish to sell to Purchasers, all right, title and interest of Sellers in and to the Purchased Assets (as hereinafter defined), and Purchasers wish to make such purchase, subject to Purchasers' assumption of the Assumed Liabilities (as hereinafter defined) and the conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

### DEFINITIONS

The following terms, as used in this Agreement, shall have the meanings set forth below whether used in the singular or plural.  For purposes of this "Definitions" section only, a "—" followed by a reference to a specific section of this Agreement, shall be understood to reference the section of this Agreement in which such term is defined.  Unless otherwise indicated, all figures preceded by "$" refer to U.S. dollars.

"**Accounts Payable**" means all trade accounts payable including all Trade Payables and other obligations to pay suppliers and third parties to the extent arising from the conduct of the Business or relating to the Acquired Assets.

"**Accounts Receivable**" means all trade accounts receivable including all Trade Receivables and other rights to payment from customers and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of Products delivered to customers, all other accounts receivable and the full benefit of all security for such accounts and any claim, remedy or other right related to any of the foregoing.

"**Acquired Assets**" — Section 1.3.

"**Acquired Carved-Out Location Assets**" — Section 1.3.2.2.

"**Acquired Carved-Out Manufacturing Location Assets**" — Section 1.3.2.1.

"**Acquired Carved-Out Technical Center Assets**" — Section 1.3.2.2.

"**Administrative Assets**" means books, records and other administrative assets including advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, sales materials and records, purchasing materials and records, personnel records of employees, billing records, accounting records, other financial records, sale order files, tool routings, labor routings, facility blueprints, service blueprints, plant layouts and Technical Documentation.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity.  For purposes of this definition, control means ownership of more than fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function.

"**Agreement**" means this Master Sale and Purchase Agreement, including its Schedules.

"**Allocation**" — Section 4.8.1.

"**Alternate Bid(s)**" — Section 11.10.

"**Alternate Bidder(s)**" — Section 11.10.

"**Alternative Transaction**" — Section 9.3.1.

"**Ancillary Agreements**" means the Transfer Agreements, the Transition Services Agreement(s), the Toll Manufacturing Agreements, Fuel Reformer Patent License, the Atmospheric Catalyst License, the Testing Services Agreements, the Canning Supply Agreements and other agreements referred to in Section 7.2.

"**Antitrust Authority**" shall mean any national, supranational, or state entity having antitrust or competition jurisdiction with respect to the Sale, including, but not limited to, the Federal Trade Commission, the Antitrust Division of the United States Department of Justice, the attorneys general of the several states of the United States, the European Commission, the governments of its member states, or any other jurisdiction pursuant to applicable Antitrust Laws.

"**Antitrust Laws**" shall mean the Sherman Act, as amended, the Clayton Act, as amended, the HSR Act, the Federal Trade Commission Act, as amended, and all other federal, state, and non-U.S. statutes, regulations, or other binding legal requirements including Council Regulation (EC) No. 139/2004, as amended, rules, regulations, orders, and decrees and all other such Laws governing antitrust and competition matters as are applicable to the Business or the Purchased Assets.

"**Arbitrator**" — Section 4.7.4.

"**Asset Purchasers**" means each Purchaser to be set forth on Schedule 1 prior to Closing, with respect to the Acquired Assets described on such Schedule.

"**Asset Seller(s)**" means Sellers set forth on Schedule 1, with respect to the Acquired Assets described on such Schedule.

2

"**Assumed Liabilities**" — Section 2.1.

"**Assumed PTO Obligation Calculation Methodology**" means the methodology for calculating the Assumed PTO Obligations at Closing as set forth on Schedule 4.6.6 hereto.

"**Assumed PTO Obligations**" — Section 2.1.5.

"**Assumed U.S. Contracts**" means assumed Contracts of the Filing Affiliates as further described in Section 8.6.

"**Atmospheric Catalyst License**" means that certain agreement between the Sellers and the Purchasers pursuant to which one or more Sellers shall license U.S. Patent No. 6,924,249 and European Patent Application No. 03077909.4, Publication No. EP 140 5 670 A1, Date of Publication April 7, 2004 to one or more Purchasers all on the terms and conditions set forth therein.

"**Auction**" — Section 11.8.

"**Auditor of Closing Date Statement**" means Deloitte and Touche; provided, however, that if Deloitte and Touche cannot or will not fill this role, such other recognized auditing firm as the Parties shall mutually agree will.

"**Australia Pro Forma Trade Receivables**" means Accounts Receivable which are owing to the Clayton, Australia operations of the Business by the Clayton, Australia canning operations (as opposed to a financing transaction).

"**Australian and Mexican Operations**" — Section 1.4.9.

"**Bankruptcy Cases**" — the Recitals.

"**Bankruptcy Code**" — the Recitals.

"**Bankruptcy Court**" — the Recitals.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Baseline Environmental Conditions**" — Section 12.6.1.C.

"**Benefit Plans**" means any pension, thrift, savings, profit-sharing, retirement, bonus, incentive, health, dental, accident, disability (short or long-term), stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, "parachute," severance, termination indemnity (in respect of non-U.S. jurisdictions) or other termination benefits, whether pension or lump sum payment-based, payable on retirement, death or cessation of service, vacation, service leave, sabbatical or jubilee benefits or leave, sick leave, life insurance (including post-retirement life insurance), food coupon, automotive subsidy or transportation, fringe or other welfare benefits, plans, policies or practices in which (or at which) the current or former employees (individually or as a group or groups) of the Business or their beneficiaries participate or participated (or are entitled), including those listed and briefly described on Schedule 5.1.19.C.

"**Bid Deadline**" — Section 11.4.

"**Bidding Procedures**" — Section 11.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures and certain provisions of this Agreement including Purchasers' right, under the terms and conditions set forth hereafter, to a Break-Up Fee or Expense Reimbursement.

"**Bidding Process**" — Section 11.1.

"**Break-Up Fee**" — Section 9.3.1.

"**Business**" means the business of Sellers and the Sale Company relating to the design, testing, manufacture, remanufacture, development, marketing, sale, installation and service of Catalytic Materials as currently conducted at production facilities located in Tulsa, Oklahoma; San Luis Potosí, Mexico; Florange, France; Port Elizabeth, South Africa; Clayton-Melbourne, Australia; Shanghai, China (where Sellers own a controlling 81% interest in the Chinese Joint Venture); and Maharashtra, India (where Sellers have entered into the Indian License and Equipment Lease Arrangements); and technical centers located at Flint, Michigan and Bascharage, Luxembourg, as conducted at the date of this Agreement. The Business does not include Sellers' Fuel Reformer activities, including rights to the Fuel Reformer Patents that will be transferred to Purchaser at Closing subject to a license back to Seller in accordance with the terms of the Fuel Reformer Patent License. The Business also includes various overhead-type services performed at the Listed Real Property and Sales Offices exclusively for the Asset Sellers and Sale Company (such as financial accounting, budget preparation and financial forecasting, cost estimating, cost accounting, invoicing and accounts receivable processing and management, accounts payable processing and management, payroll processing, local tax compliance and management, human resources services, indirect material purchasing, logistics, quality control, plant maintenance and security), but shall not include corporate headquarters-type services that are not exclusively provided to the Business (such as treasury, legal, group level tax, corporate public relations, internal audit services and certain group finance and accounting services such as consolidated financial statement preparation).

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in Brussels, Belgium, London, England or New York, New York, are authorized or obligated by law or executive order to close.

"**Canning Supply Agreements**" — Section 7.2.9.

"**Cap Amount**" — Section 12.5.6.

"**Capital Lease**" means any lease by any Person of any property (whether real, personal or mixed) which would, in accordance with GAAP, be required to be accounted for as a capital lease.

"**Carved-Out Locations**" — Section 1.3.2.

"**Carved-Out Locations Acquired Equipment and Machinery**" means production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, model shop equipment, laboratory test fixtures and all other machinery and equipment used in washcoat making or preparation and located at a Carved-Out Manufacturing Location, but with the exception of the most recently acquired gas-fired furnace at the Shanghai, China location, specifically does not include furnaces used in the production process at any Carved-Out Manufacturing Location.

"**Carved-Out Manufacturing Locations**" — Section 1.3.2.

"**Catalytic Materials**" shall mean chemical emission control devices in the form of catalysts, catalytic coatings deposited on filter substrates, catalytic formulations, manufacturing methods and substrate coating processes relating to such catalysts, information concerning the functionality of such devices (including relationships, models or data about kinetics, thermodynamics or transport phenomena), in each case for the primary purpose of the catalytic treatment of engine exhaust gas by contact of the engine exhaust gas with catalysts and not for the primary purpose of creating reformate (an H2 and CO mixture) or Fuel Reformers.

"**China Pro Forma Trade Receivables**" means Accounts Receivable which are owing to the Shanghai, China operations of the Business by the Shanghai, China canning operations (as opposed to a financing transaction).

"**Chinese Joint Venture**" means Shanghai Delphi Emission Control Systems Company, Ltd. (China), a legal entity organized under Chinese law, controlling equity interest in which is owned by a Delphi Affiliate.

"**Claims**" mean Losses, Liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Claims Incurred**" — Section 3.7.

"**Closing**" — Section 7.1.

"**Closing Date**" means the date of Closing.

"**Closing Date Assumed PTO Obligations Schedule**" — Section 8.8.

"**Closing Date Statement**" — Section 4.7.1.2.

"**Closing Escrow Agreement**" — Section 7.2.11.

"**Closing PGM Inventory**" — Section 4.7.1.1.

"**COBRA**" — Section 3.7.

"**Collective Bargaining Agreements**" — Section 3.9.

"**Committee**" — Section 11.4.

"**Competitive Business**" — Section 8.10.1.A.

"**Consigned PGMs**" means, as of the Closing Date, metals owned by direct or indirect customers of the Business which have been consigned to Sellers.

"**Contract Modification**" — Section 8.1.2.

"**Contracts**" mean purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases (including Capital Leases), product warranty or service agreements and other commitments, agreements and undertakings, including

quotations and bids outstanding on the Closing Date including the Indian License and Equipment Lease Arrangements.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registered, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein, provided by international treaties or conventions; (ii) moral rights (including rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) maskworks and similar protection, (v) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (vi) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (vii) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Covered Employees**" — Section 3.7.

"**Cure Amounts**" means all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code, or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Purchasers of Assumed U.S. Contracts under the Sale Approval Order.

"**Current Employees**" means: (i) employees of any Asset Seller or Affiliate that perform services primarily related to the Business; (ii) employees of the Sale Company; and (iii) U.S. Corporate Employees.

"**DASHI**" means Delphi Automotive Systems (Holding), Inc., the Seller of the Sale Securities of the Sale Company.

"**DDS France**" means Delphi Diesel Systems France SAS, the Seller of the Acquired Assets in Florange, France.

"**Debt**" means financing-type indebtedness consisting of obligations for borrowed money as evidenced by bonds, debentures, notes, or other similar instruments, and obligations upon which interest charges are customarily paid or discounted (other than ordinary course Trade Payables), and including principal and interest thereon, and all guaranties of such obligations.

"**Deductible Amount**" — Section 12.5.4.

"**Defending Party**" — Section 13.17.

"**Delphi**" — Preamble.

"**Demanding Party**" — Section 13.17.

"**Deposit Amount**" — Section 4.2.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement, dated as of the date hereof, executed by and among Purchasers, Sellers and the Escrow Agent concurrently with this Agreement.

"**Disclosure Schedule**" means, collectively, the Schedules to Sellers' Representations and Warranties referenced in Article 5.

"**Environment**" means any and all organisms (including humans), biota, ecosystems, land, natural resources, indoor or outdoor air, soil, soil gas, sediment, water, groundwater and buildings and fixtures.

"**Environmental Claim**" means any claim, cause of action, governmental information request, notice of potential responsibility, investigation or written notice by any Governmental Entity arising under Environmental Law and any notice, claim or cause of action-alleging Liability by any other person or entity under Environmental Law or the common law or other Law, including those arising out of, based on or resulting from: (i) the presence or Release of or exposure to any Hazardous Materials at any location, whether or not owned or operated by a Seller; or (ii) circumstances forming the basis of any violation, or alleged violation, of any Environmental Law.

"**Environmental Compliance Matter**" means a condition, event, activity, practice, action or omission at the Listed Real Property which gives rise to an actual or alleged breach or violation of an Environmental Law, but which excludes Environmental Contamination.

"**Environmental Contamination**" means the presence, in violation of applicable Environmental Laws or that requires reporting or any response action under any Environmental Laws, of a Hazardous Material at, in, under, on or about the Environment at the Listed Real Property or migrating from the Listed Real Property.

"**Environmental Damages**" means Losses arising out of an Environmental Law or relating to a Hazardous Material, but in all cases excluding Losses deemed consequential or loss of profit, and also excluding expenses of investigating information solely for the purposes of making a claim for indemnification under this Agreement.

"**Environmental Laws**" means, in each case as in force and effect on or prior to the date of this Agreement, all federal, state, local and foreign Laws, all applicable supranational laws (including European Union laws and directives, and NAFTA rules), and applicable permits, codes, guidance, directives, decrees and orders, in each case relating to or having the purpose or effect of prevention or remediation of Releases or threatened Releases of Hazardous Materials or the exposure of any person, property, ecosystem or natural resources to Hazardous Materials (but excluding OSHA and similar worker safety Laws applying to employers), and the protection of the ecosystem or the Environment, including the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq.

"**Equityholders' Committee**" — Section 11.4.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended.

"**ERISA Affiliate**" shall mean any trade or business (whether or not incorporated) that is part of the same controlled group, or under common control with, or part of an affiliated service group that includes a Seller, within the meaning of Code Section 414(b), (c), (m), or (o) or ERISA Section 4001(a)(14).

"**Escrow Agent**" means the escrow agent under the Deposit Escrow Agreement and the Closing Escrow Agreement.

"**Escrow Amount**" — Section 4.3.

"**Excess Cash**" means amounts of cash (net of Debt) of the Sale Company for periods prior to the Closing.

7

"**Excluded Assets**" means assets not included in the Acquired Assets, as set forth in Section 1.4.

"**Excluded Canning Business**" — Section 1.4.7.

"**Excluded Carved-Out Location Assets**" — Section 1.3.2.1.

"**Excluded Carved Out Location Trade Payables**" means with respect to the operations of the Business located in: (i) Shanghai, China (1) Third Party Trade Payables and (2) Trade Payables owed to the Business' Tulsa, Oklahoma operations; (ii) Clayton, Australia and San Luis Potosi, Mexico, Third Party Trade Payables.

"**Excluded Financial Contracts**" — Section 1.4.4.

"**Excluded Intellectual Property**" — Section 1.4.6.

"**Excluded Inventory**" means all work-in-process in China.

"**Excluded Trade Payables**" means all: (i) Excluded Carved Out Location Trade Payables; and (ii) Pro Forma Tulsa Trade Payables.

"**Excluded Trade Receivables**" means all: (i) Overdue Trade Receivables; (ii) Account Receivables generated by the Shanghai, China operations of the Business, including the China Pro Forma Trade Receivables; (iii) Australia Pro Forma Trade Receivables; and (iv) Trade Receivables of the Tulsa, Oklahoma operations of the Business that represent Trade Payables of the Shanghai, China operations of the Business.

"**Existing Tulsa Collective Bargaining Agreement**" means that certain Third Agreement, dated as of July 22, 2006, between ASEC Manufacturing General Partnership and the International Union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Unit, Local Union No. 286 governing workers at Seller's 1300 Main Parkway, Catoosa, Rogers County, Oklahoma (*e.g.*, Tulsa) facility.

"**Expense Reimbursement**" — Section 9.3.2.

"**Filing Affiliates**" means Delphi, DASHI and the following Affiliates of Delphi, which are included in the Bankruptcy Cases and operate certain portions of the Business or are Asset Sellers:  Delphi Automotive Systems LLC, Exhaust Systems Corporation, Environmental Catalysts, LLC, Delphi Automotive Systems (Holding), Inc., Delphi Technologies, Inc., ASEC Manufacturing General Partnership and ASEC Sales General Partnership.

"**Final Closing Date Statement**" — Sections 4.7.2, 4.7.3 or 4.7.4, as applicable.

"**Final Order**" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending; or (ii) if an appeal, writ of certiorari, reargument or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or reargument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the

8

Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

**"Foreign Operations"** means the operations of the Business other than by any of the Filing Affiliates.

**"Fuel Reformer"** means a device having the principal function to convert fuels (hydrocarbons, alcohols, other chemical compounds containing chemically bound hydrogen or mixtures thereof) to produce mixtures containing free hydrogen that can be used within such mixtures or, after full or partial separation, for applications using hydrogen (e.g. as a chemical reactant), and containing other chemical compounds (e.g. carbon monoxide). A device having the above-described principal function shall be considered to be a Fuel Reformer notwithstanding the fact that engine exhaust may be introduced thereto as a reactant instead of fuel during some phases of its operating cycle or as a secondary reactant in addition to fuel.

**"Fuel Reformer Patent License"** – Section 7.2.2.

**"Fuel Reformer Patents"** – Section 7.2.1.

**"GAAP"** means United States generally accepted accounting principles as in effect from time to time consistently applied.

**"Good Faith Deposit"** — Section 11.5.3.

**"Governmental Entity"** means any United States federal, state or local or any supranational or non-United States court, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality, governmental authority or regulatory body including all Antitrust Authorities.

**"Governmental Order"** means, with respect to any Person, any judgment, order, writ, injunction, decree, stipulation, agreement, determination or award entered or issued by or with any Governmental Entity and binding on such Person.

**"Governmental Requirements"** — Section 5.1.3.

**"Hazardous Materials"** means all matter or the effect of matter including any substances listed, defined or regulated under an Environmental Law or which has the characteristic of being explosive, radioactive, noxious, infectious, mutagenic, corrosive, carcinogenic, hazardous or toxic to human health, the ecosystem or the Environment.

**"Hired Current Employees"** means those Current Employees hired by Purchasers on or promptly after the Closing Date and those Current Employees who become employees of a Purchaser on the Closing Date by operation of Law or contract as a result of the Sale.

**"HSR Act"** means the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended.

**"Improvements"** — Section 5.1.16.A.

**"Including"** means, whether or not initially capitalized, including, without limitation.

"**Indemnifiable Losses**" — Section 12.1.

"**Indemnified Party**" — Section 12.3.

"**Indemnified Real Property**" — Section 12.6.1.A.

"**Indemnifying Party**" — Section 12.4.

"**Indian License and Equipment Lease Arrangements**" means the arrangement between Sellers and Varroc Exhaust Systems Pvt. Ltd. under which Sellers license technical information, lease equipment and provide advice, assistance and support services to Varroc.

"**Individual Claim Amount**" — Section 12.5.5.

"**Intellectual Property**" means the Patent Rights, Trademark Rights, Copyrights, Software, Trade Secrets, Know-How and registered domain names and IP addresses.

"**Inventory**" means raw materials (including substrates), work-in-process, finished goods and packaging that is usable in the Ordinary Course of Business, owned by Sellers and valued at the lower of cost or market value in accordance with GAAP and past practices of the Business.

"**IRC**" means the Internal Revenue Code of 1986, as amended.

"**~~January~~July Projections**" means those certain financial projections of the Business as of ~~January 2007 provided to the Purchasers by the Sellers in March 2007.~~ July (6+6) 2007 attached as Schedule 5.1.12.

"**Know-How**" means proprietary technical and business knowledge and information, including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

"**Laws**" means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable federal, state, local or foreign governmental authority.

"**Liability**" or "**Liabilities**" mean any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on- or off- balance sheet or otherwise, or due or to become due, including those arising under any Law, Claim, Governmental Order, Contract or otherwise.

"**Licensed Intellectual Property**" means Sellers' rights with respect to all Intellectual Property licensed or sublicensed to any Seller or its Affiliates from an affiliated or unaffiliated third party which is Used in Connection with the Business, including the Licensed Intellectual Property listed on Schedule 5.1.7.A.2.

"**Lien**" means any lien, charge, claim, interest, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction).

"**Listed Contracts**" — Section 5.1.14.A.

"**Listed Real Property**" — Section 5.1.16.A.

"**Loss**" or "**Losses**" means any and all claims, losses, Liabilities, sanctions, penalties, damages, costs and expenses; in each case including reasonable, actual, out-of-pocket expenses (including reasonable attorneys' fees).

"**Marked Agreement**" — Section 11.5.2.

"**Material**" or "**material**" shall mean, with respect to the Business, the Acquired Assets or the Sale Company, having, or reasonably likely to have, an impact thereon or a value thereto in excess of $1,000,000.

"**Material Adverse Effect**" shall mean, with respect to the Business, the Acquired Assets or the Sale Company, an adverse change or effect on the assets, properties, operations, Liabilities or financial condition of the Business, any of the Acquired Assets or the Sale Company whether arising out of a single event or circumstance or a series of related events or circumstance and resulting in a monetary Loss (including a (1) loss related to income from operations or (2) in the case of an actual or intended reduction in a commitment by a customer (measured by contribution margin in any twelve month period), an actual or reasonably expected Loss) in excess of U.S. $3,000,000; provided, however, that any change or effect resulting from, relating to or arising directly out of (i) the public announcement of the transactions contemplated by this Agreement or actions required by this Agreement including by reason of the identity of Purchaser or communication by Purchaser of its plans or intentions regarding operation of the Business; (ii) any act or omission of a Seller taken with the prior written consent of the Purchaser; (iii) any action taken by Seller or Purchaser or any of their respective representatives required by the terms of this Agreement or necessary to consummate the transactions contemplated by this Agreement; (iv) conditions affecting the industry and markets in which the Business generally operates, to the extent that such conditions do not disproportionately affect the Business as compared to other participants in the industry and markets in which the Business generally operates; (v) changes in United States generally accepted accounting principles or generally accepted accounting principles of any foreign jurisdiction in which any of the Acquired Assets are located, or (vi) changes in any Law, in each case, shall not be considered to have a Material Adverse Effect.

"**Net Working Capital**" means the total amount of all Inventory (other than Excluded Inventory or Owned PGMs) *plus* all Accounts Receivables of the Business (other than Excluded Trade Receivables) *plus* certain other current assets relating to the Purchased Assets; *minus* the sum of the total amount of all Accounts Payables of the Business (other than Excluded Trade Payables) *plus* the sum of all certain other current liabilities relating to the Purchased Assets, in each case as set forth in Schedule 4.6.1.

"**Net Working Capital Methodology**" means the methodology to be employed by the Purchasers and the Sellers in calculating the Net Working Capital of the Business set forth on Schedule 4.6.1. Schedule 4.6.1 sets forth a demonstration of the Net Working Capital Methodology. Attached hereto as Schedule 4.6.1 are several spreadsheets setting forth the quantitative expression of the Net Working Capital Methodology.

"**Net Working Capital Target**" means U.S. $~~57.9~~55.0 million; provided, however, that if the Closing does not occur prior to September 30, 2007, the Parties shall work together in good faith to update the Net Working Capital Target using the same Net Working Capital Methodology as was employed to set the target as of the date hereof.   For purposes of clarification, and not limitation, the Net Working Capital

Target is independent of, and in addition to, the Owned PGM Target Value without any duplication of the elements thereof.

"**Non-Filing Affiliate**" means the: (i) Sale Company; and (ii) each Seller other than Delphi and the Filing Affiliates.

"**Notice**" — Section 13.17.

"**OEM**" means original equipment manufacturer.

"**OFAC**" — Section 5.2.11.

"**Ordinary Course of Business**" means: (i) with respect to the U.S. Operations of the Filing Affiliates, the ordinary course of business consistent with custom and practice of the Business prior to the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases thereafter; and (ii) with respect to the Foreign Operations, the ordinary course of business consistent with past custom and practice of the Business.

"**Other Book Assets**" means: all other assets including general intangible assets of the Sellers which are Used in Connection with the Business but which are not otherwise covered by the definitions of the various categories of assets included in the Acquired Assets identified in Section 1.3.1, including: (i) all rights to or in connection with prepaid expenses (other than the prepaid expenses related to the Excluded Canning Business or other Excluded Assets); and (ii) all claims and similar rights (and benefits arising from such claims or rights) owing to any Asset Seller, whether or not yet due and payable, including the benefit of all security therefor and of all guarantees, indemnities and rights (including warranty rights against suppliers) in respect of the same.

"**Overdue Trade Receivable**" means a Trade Receivable that has not been paid by the account debtor at least thirty (30) days after such Trade Receivable was due. The due date of any particular Trade Receivable shall be determined based on the terms which the Business has established with the applicable customer (including Delphi or any of its Affiliates) as the date when the subject invoice is due to be paid by such customer (whether based on an invoice date, delivery date or other date associated with the customer and the relevant Contract or applicable terms and conditions of Sale).

"**Owned Intellectual Property**" means all Intellectual Property in and to which a Seller holds, or has a right to hold, in whole or in part, right, title and interest which is Used in Connection with the Business and the Reformer Patents, including such Intellectual Property listed on Schedules 5.1.7.A.1 and 5.1.7.A.3.

"**Owned PGM Shortfall**" — Section 4.6.2.1.

"**Owned PGM Surplus**" — Section 4.6.2.2.

"**Owned PGM Target Value**" means U.S. $1,200 per troy ounce for platinum, U.S. $350 per troy ounce for palladium and U.S. $5,650 per troy ounce for rhodium, determined in accordance with the methodology set forth in Schedule 4.6.2. The total Owned PGM Target Value is approximately U.S. $~~30,769,000~~ 26,000,000; provided, however, that if the Closing does not occur prior to September 30, 2007 the Parties shall work together in good faith to update the Owned PGM Target Value using the same methodology as was employed to set the target as of the date hereof.

"**Owned PGM Volume Target**" means ~~5,834~~4,292 troy ounces for platinum, ~~22,226~~19,560 troy ounces for palladium and ~~2,830~~2,465 troy ounces for rhodium, determined in accordance with the methodology set forth in Schedule ~~4.6.2.~~ 4.6.2; provided, however, that if the Closing does not occur prior to September 30, 2007, the Parties shall work together in good faith to update the Owned PGM Volume Target using the same methodology as was employed to set the target as of the date hereof.

"**Owned PGMs**" means PGMs owned by the Sellers.

"**Party**" or "**Parties**" means any Purchaser or Purchasers and/or any Seller or Sellers.

"**Patent Rights**" means: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including any patent disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention registrations, patents, patent registrations and patent applications (including all provisionals, substitutions, reissues, divisions, continuations, continuation-in-part, extensions and reexaminations) and all rights therein provided by international treaties or conventions, and all patentable improvements to the inventions disclosed in each such registration, patent or application; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing; (vi) without limiting the foregoing, all patent rights included in the Acquired Assets or underlying the Atmospheric Catalyst License.

"**Permit Transfer Liabilities**" shall mean Losses incurred by Purchasers due to the inability to transfer any Permit required under Environmental Law to Purchasers as of the Closing Date despite Purchasers' reasonable best efforts to transfer such permits in full cooperation with Sellers.

"**Permits**" means permits, concessions, grants, franchises, licenses and other governmental authorizations and approvals issued to any Seller and that are currently used for the purpose of carrying on the Business or that relate to the Acquired Assets.

"**Permitted Encumbrances**" means, with respect to the Real Property: (i) Liens for any current real estate or ad valorem taxes or assessments not yet delinquent or being contested in good faith by appropriate proceedings; (ii) inchoate mechanic's, materialmen's, laborer's and carrier's liens and other similar inchoate liens arising by operation of law or statute in the Ordinary Course of Business for obligations which are not delinquent and which will be paid or discharged in the Ordinary Course of Business; (iii) rights of the public and adjoining property owners in streets and highways abutting and adjacent to the Real Property; (iv) easements, covenants, restrictions and other encumbrances of public record; and (v) such other matters, the existence of which, in the aggregate, would not materially interfere with or materially affect the use of the respective underlying asset to which such encumbrances relate as used on the Closing Date.

"**Permitted Lien**" means: (i) purchase money security interests arising in the Ordinary Course of Business; (ii) security interests relating to progress payments created or arising pursuant to government contracts set forth on Schedule 5.1.5.A; and (iii) Liens of any Seller's pre-Petition Date secured lenders and post-Petition Date secured lenders which such lenders have agreed to release in connection with the Sale to the extent such Liens are actually released at Closing.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other IT assets other than Intellectual Property, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Real Property, at the place of business of a vendor or elsewhere, together with any interest as lessee in any leases with respect to the foregoing.

"**Petition Date**" — the Recitals.

"**PGM**" means platinum group metals, including platinum, palladium and rhodium.

"**PGM Inventory**" means Sellers' PGM inventory.

"**PGM Inventory Methodology**" means the methodology to be employed by the Purchasers and the Sellers for calculating the PGM Inventory and set forth on Schedule 4.7.1.1 hereto.

"**PGM Leases or Borrowings**" — Section 4.6.4.

"**PGM Physical Inventory Report**" — Section 4.7.1.1.

"**PGM Pricing Methodology**" means applying the first London fixing for platinum and palladium and the Johnson Mathey 9:00 a.m. base price for rhodium.

"**Post-Closing Environmental Compliance Matter**" means an Environmental Compliance Matter occurring on or after the Closing Date.

"**Post-Closing Environmental Contamination**" means Environmental Contamination occurring on or after the Closing Date.

"**Post-Closing Severance Obligations**" — Section 2.1.10.

"**Post-Petition Contracts**" means the Contracts of the Filing Affiliates entered into on or after the Petition Date relating to the Business in the Ordinary Course of Business or approved by the Bankruptcy Court.

"**Potential Bidder**" — Section 11.2.

"**Pre-Closing Environmental Compliance Matter**" means an Environmental Compliance Matter occurring prior to the Closing Date.

"**Pre-Closing Environmental Contamination**" means Environmental Contamination occurring prior to the Closing Date.

"**Pre-Petition Contracts**" means the Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates before the Petition Date.

"**Preliminary Closing Date Net Working Capital Calculation**" — Section 4.6.1.

"**Preliminary Closing Owned PGMs**" — Section 4.6.2.1.

"**Preliminary Closing PGM Inventory Statement**" — Section 4.5.

"**Preliminary Purchase Price**" — Section 4.1.

"**Preliminary Restitution Commitments**" — Section 4.6.3.

"**Products**" means ceramic or metallic monolith substrates coated with catalytically active components, designed, manufactured, marketed, sold, installed or serviced by the Business.

"**Pro Forma Tulsa Trade Payables**" means certain Trade Payables reflected in the accounting books and records of the Business' Tulsa operations that reflects the reconciliation of the actual Trade Payables of the Business' Tulsa location with the Trade Payables that would have been reflected on the Tulsa balance sheet if the Filing Affiliates had not sought bankruptcy protection (e.g., were not subject to the amended payment terms required by suppliers and vendors of the Filing Affiliates).

"**Proposed Hired Current Employees**" — Section 8.7.

"**PTO Obligations**" means all Liabilities related to or arising from accrued paid-time-off, vacation, holiday and sick leave obligations to Current Employees.

"**Purchase Price**" — Section 4.1.

"**Purchased Assets**" means the Acquired Assets and the Sale Securities.

"**Purchased Intellectual Property**" means all Owned Intellectual Property and Licensed Intellectual Property in each instance, other than the Patent Rights subject to the Atmospheric Catalyst License.

"**Purchaser**" and "**Purchasers**" shall have the meanings set forth in the preamble to this Agreement.

"**Purchaser Confidentiality Agreement**" means that certain Confidentiality Agreement dated as of June 21, 2005 between Delphi and Umicore, as amended by that certain letter agreement dated as of February 20, 2007 between Delphi and Umicore and as further amended by that second letter agreement dated as of February 27, 2007 between Delphi and Umicore.

"**Purchaser Indemnified Parties**" — Section 12.1.

"**Qualified Bid**" — Section 11.6.

"**Qualified Bidder**" — Section 11.2.

"**Real Property**" means the real property at the facilities described in Schedule 5.1.16.A and all Improvements located thereon, including all rights to leases of such Real Property.

"**Release**" means any release, spill, emission, discharge, leaking, pumping, injection, deposit, disposal, dispersal, or leaching or migration into the indoor or outdoor environment (including ambient air,

surface water, groundwater and surface or subsurface strata) or into or out of any property, including the movement of Hazardous Materials through or in the air, soil, surface water, groundwater or property.

"**Remedial Works**" means the works, designs, investigations, Remediation and activities carried out by a Party in relation to Environmental Contamination or Environmental Compliance Matters, but excluding expenses of investigating information solely for the purposes of making a claim for indemnification under this Agreement.

"**Remediation**" means any investigation, clean-up, removal action, remedial action, restoration, repair, response action, corrective action, monitoring, sampling and analysis, installation, reclamation, closure, or post-closure in connection with the suspected, threatened or actual Release of Hazardous Materials.

"**Remediation Standards**" means standards which are: (i) the minimum criteria or standards under Environmental Laws, including use of risk assessment methodologies where permitted, in existence as of date of the Remediation; and (ii) applicable to the industrial use and operations at the Listed Real Property as carried out as of the date of the Remediation.

"**Remedy**" — Section 12.6.3.A.

"**Required Bid Documents**" — Section 11.5.

"**Restitution Commitments**" means, as of any date of determination, Sellers' aggregate commitments (measured by weight as opposed to value) to return or make restitution to customers of Consigned PGMs.

"**Retained Liabilities**" — Section 2.3.

"**Retired Employees**" means: (i) former employees of any Asset Seller or Affiliate that performed services primarily related to the Business; (ii) former employees of the Sale Company; and (iii) former U.S. Corporate Employees and their dependents, who as of the Closing Date were either retired and were covered by, or are eligible for or are receiving benefits under any "employee welfare benefit plan" (as that term is defined in ERISA) sponsored by Sellers that provides health, medical, drug, or other form of welfare benefit.

"**Return Date**" — Section 11.11.

"**Sale**" means the sale of the Business in accordance with the Bidding Procedures.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court issued pursuant to Sections 363 and 365 of the Bankruptcy Code: (i) in form and substance reasonably satisfactory to Purchasers; (ii) authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets and Assumed Liabilities and the Sale Securities to the Purchasers in accordance with the terms and conditions of this Agreement, free and clear of all Liens other than Permitted Encumbrances, Permitted Liens and Liens encompassed within Assumed Liabilities assumed by Purchasers pursuant to Section 2.1; (iii) including a specific finding that Purchasers are good faith purchasers of the Acquired Assets and the Sale Company and are entitled to the protections afforded by Section 363(m) of the Bankruptcy Code; and (iv) approving Sellers' assumption and assignment of the Assumed U.S. Contracts to the Purchasers pursuant to Section 365 of the Bankruptcy Code and, subject to and in accordance with

Section 8.6, ordering Sellers to pay the Cure Amounts to the other parties to the Assumed U.S. Contracts as a condition to such assignment and assumption.

**"Sale Company"** means Delphi Catalyst South Africa (Proprietary) Ltd., a South African Affiliate of Delphi engaged in the Business, all of the Sale Securities of which are owned by DASHI.

**"Sale Company Current Tax Amount"** — Section 4.6.7.

**"Sale Company Retained Liability Amount"** — Section 4.6.7.

**"Sale Hearing"** — Section 11.9.

**"Sale Motion"** means one or more motions filed by Sellers with the Bankruptcy Court for approval of the Bidding Procedures Order and the Sale Approval Order.

**"Sale Securities"** means the shares or other equity of the Sale Company listed on <u>Schedule 5.1.18</u>.

**"Sales Offices"** means the Business' sales offices listed on <u>Schedule 1</u>.

**"SDN List"** — Section 5.2.11.

**"Securities Act"** means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

**"Securities Purchasers"** means the Purchasers to be set forth on <u>Schedule 1</u> prior to Closing, with respect to the Sale Securities set forth opposite its name.

**"Seller"** and **"Sellers"** — the preamble to this Agreement.

**"Seller U.S. Health Plans"** — Section 3.7.

**"Sellers' Knowledge"** means the actual knowledge after reasonable investigation of the individuals listed on <u>Schedule A</u> in each of their respective functional areas listed on such schedule, without imputation of the knowledge of any other Person.

**"Shelf Tulsa Collective Bargaining Agreement"** means that certain Agreement, dated effective as of the Closing Date and ratified as of May 23, 2007, between Umicore Autocat USA Inc. and the International Union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Unit, Local Union No. 286 governing workers at Seller's 1300 Main Parkway, Catoosa, Rogers County, Oklahoma (*e.g.*, Tulsa) facility, as set forth in <u>Schedule 5.2.13</u>.

**"Software"** means computer software and programs, including source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

**"Special Claim Matters"** — Section 12.5.5.

**"Straddle Period"** — Section 10.2.1.

**"Subsequent Bid"** — Section 11.6.

**"Successful Bid(s)"** — Section 11.8.6.

**"Successful Bidder(s)"** — Section 11.8.6.

**"Tax Return"** means any return, declaration, report, claim for refund or information return, or statement, or any other similar filings, related to Taxes, including any schedule or attachment thereto.

**"Tax(es)"** means any tax or similar governmental charge, impost or levy whatsoever (including income, profits, franchise, transfer, use, gross receipts, value added, employment, excise, ad valorem, property, withholding, payroll, social contribution, customs duty,  trade, license, severance, stamp, occupation, premium, environmental, capital stock, social security (or similar), unemployment, disability, real property, personal property, sales, registration, alternative or add-on minimum, estimated or windfall profit taxes or transfer fees), together with any related penalties, fines, additions to tax or interest, imposed by the United States or any state, county, local or foreign government or subdivision or agency thereof.

**"Taxable Period"** means any period for which Taxes are owed to a federal, state, local or foreign taxing authority, or for which a Tax Return is required to be filed by any of the Sellers, Sale Company or Purchasers with respect to the Business.

**"Technical Centers"** — Section 1.3.2.

**"Technical Documentation"** means all documented technical information currently in the files of the Business primarily used in the Business and owned by Sellers, in each case pertaining to the design or manufacture of the Products of the Business or the Purchased Intellectual Property.

**"Termination Date"** — Section 9.1.1.D.

**"Testing Services Agreement(s)"** — Section  7.2.8.

**"Third Party Bailed Assets"** — Section 1.4.1.

**"Third Party Indemnification Claim"** — Section 12.4.

**"Third Party Trade Payables"** means Accounts Payable which arise from and relate to the Business and are: (i) between Sellers or the Sales Company, on the one hand, and non-affiliate third parties, on the other hand; or (ii) between the Seller and/or the Sale Company, on the one hand, and another Delphi Affiliate that is not a Seller or the Sale Company, on the other hand and in the case of (ii) reflects a legitimate arm's length trade obligation as opposed to a financing transaction among such parties.

**"Toll Manufacturing Agreement(s)"** — Section 7.2.10.

**"Trade Payables"** means Accounts Payable which arise from and relate to the Business and are: (i) between Sellers or the Sales Company, on the one hand, and non-Affiliate third parties, on the other hand; (ii) between the Seller and/or the Sale Company, on the one hand, and another Seller, Sale Company or other Delphi Affiliate, on the other hand; or (iii) between the portion of any Seller that relates to the Business and any other portion of such Seller (*i.e.*, such as the canning operations of such Seller) and in the case of (ii) or (iii) reflect a legitimate arm's length trade obligation as opposed to a financing transaction among such parties.

"**Trade Receivables**" means Accounts Receivable which arise from and relate to the Business and are: (i) between Sellers or the Sales Company, on the one hand, and non-Affiliate third parties, on the other hand; (ii) between the Seller and/or the Sale Company, on the one hand, and another Seller, Sale Company or other Delphi Affiliate, on the other hand; or (iii) between the portion of any Seller that relates to the Business and any other portion of such Seller (*i.e.*, such as the canning operations of such Seller) and in the case of (ii) or (iii) reflect a legitimate arm's length trade obligation as opposed to a financing transaction among such parties.

"**Trade Secrets**" means: (i) all forms and types financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, test results, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or unpatentable and whether or not reduced to practice); (ii) all copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (iii) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (iv) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" means: (i) trademarks, trade names and service marks; (ii) the good will associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Transfer Agreement(s)**" — Section 1.1.2.

"**Transfer Documents**" means such bills of sale, assignments and other good and sufficient instruments of transfer conveying and transferring to Purchasers title to the Acquired Assets and the Sale Securities as provided in this Agreement or any Transfer Agreement and as Purchasers may reasonably request, including executed assignments for the Owned Intellectual Property, where applicable.

"**Transfer Taxes**" — Section 10.5.

"**Transition Services Agreement**" means any Transition Services Agreement between Sellers and Purchasers referred to in Section 7.2.6.

"**U.S. Corporate Employees**" means those Current Employees specifically designated as such on Schedule 5.1.19.A.

"**U.S. Employee-Related Credit**" – Section 4.6.9.

"**U.S. Operations**" means the operations of the Business by the Filing Affiliates including the manufacturing operations in Tulsa, Oklahoma, the Flint, Michigan, technical center and the sales and other business activities in Troy, Michigan.

19

"**Umicore**" — Preamble.

"**United States**" or "**U.S.**" means the fifty (50) states and the District of Columbia of the United States of America.

"**USA PATRIOT Act**" — Section 5.2.11.

"**Used in Connection with the Business**" — Section 1.3.1.

"**WARN Act**" means the Workers Adjustment and Retraining Notification Act of 1989, as amended, and the regulations promulgated thereunder.

"**Warranties**" refers to the representations and warranties provided by Sellers to Purchasers, or by Purchasers to Sellers, as the case may be, in each case as referred to in Article 5 of this Agreement or expressly set forth in any Transfer Agreement.

"**Works Council**" means any organization formed by, and comprised of, employees of the Business, any Seller or the Sale Company that represent the interests of, and negotiates on behalf of, such employees with respect to employment and benefit matters.

1.     <u>**CONVEYANCE OF THE ACQUIRED ASSETS AND SALE SECURITIES:**</u>

    **1.1.**   <u>**General.**</u>  Subject to the terms and conditions of this Agreement, at the Closing, the Sellers described on <u>Schedule 1</u> shall sell, transfer and assign the Purchased Assets sold by such Seller to the corresponding Purchasers described on <u>Schedule 1</u> in accordance with this Section 1.1. The Parties agree that the transfer of the Purchased Assets shall be governed by this Agreement.

        **1.1.1.**   <u>**Transfer of Purchased Assets.**</u>  Subject to Section 1.1.3 below, at Closing, the transfer of the Purchased Assets may be effected through one or more transfers embodied in and pursuant to the applicable Transfer Agreements as may be necessary or advisable under applicable local Laws.

        **1.1.2.**   <u>**Identity of Purchasers.**</u>  Attached hereto is a preliminary <u>Schedule 1</u> reflecting the identity of certain of the Umicore affiliates who are anticipated to be the Purchasers hereunder. Umicore may make changes to the identities of any of such Purchasers (other than Purchasers of Purchased Assets from any of the Filing Affiliates) on or before five (5) days prior to the date of the Auction, provided that it may make changes to the identity of any Purchaser purchasing assets in France at any time on or before ten (10) Business Days prior to the Closing Date or such earlier date as may be reasonably requested by Delphi and agreed by Umicore as may be necessary in connection with the transfer of Contracts relating to the Business in France. Each such Umicore affiliate shall be a direct or indirect wholly-owned subsidiary of Umicore. Consistent with Section 7.2, the Parties agree to cooperate to finalize any Transfer Agreements required by or advisable under applicable local Law to transfer the Purchased Assets consistent with the transferors and transferees and Purchased Assets described on <u>Schedule 1</u> (collectively, such local country, non-U.S. agreements under which the Acquired Assets and Sale Securities may be transferred by the Asset Sellers and Securities Sellers to the Asset Purchasers and Securities Purchasers are referred to herein as the "**Transfer Agreement(s)**").

        **1.1.3.**   <u>**Governing Documents.**</u>  To the extent that there is an inconsistency between a Transfer Agreement (or its effect) and this Agreement, this Agreement shall control, except to the

extent that the intent for a Transfer Agreement to control is expressly stated in such Transfer Agreement. The Parties agree to cooperate with each other in effecting the multiple transfers required to effect the transactions contemplated by this Agreement, and to enter into any additional Contracts reasonably necessary or advisable under applicable Law to effect and document the desired transfer.

**1.2.    Sale Securities.**  With respect to the Sale Company, upon the terms and subject to the conditions set forth in this Agreement (subject to Section 1.1.3 above), on the Closing Date, DASHI shall sell, transfer, assign, convey and deliver to the Securities Purchaser the Sale Securities; and Umicore shall cause the Securities Purchaser to purchase, accept and acquire the Sale Securities.

**1.3.    Acquired Assets Transactions.**  Upon the terms and subject to the conditions set forth in this Agreement, as modified or supplemented by any applicable Transfer Agreement (subject to Section 1.1.3 above), at Closing, Delphi shall, and shall cause each of the Asset Sellers to, and each of the Asset Sellers shall, sell, transfer, assign, convey and deliver to the Asset Purchasers, and Purchasers shall, or shall cause each of the Asset Purchasers to purchase, accept and acquire from the Asset Sellers, free and clear of all Liens except: (i) Permitted Encumbrances; (ii) Permitted Liens; and (iii) Liens included in the Assumed Liabilities assumed by Purchasers pursuant to Article 2, all of the assets and properties described in Section 1.3.1 below, subject in each case to Section 1.4 in respect of Excluded Assets (collectively, the "**Acquired Assets**").

**1.3.1.    Acquired Assets.**  The Acquired Assets consist of all of Sellers' right, title and interest in and to the rights and assets Used in Connection with the Business (as defined below) by the Sellers (other than the Excluded Assets) including: Accounts Receivable (other than Excluded Trade Receivables); Other Book Assets; Real Property; Personal Property; Permits; Inventory (wherever located and including all Inventory in transit or on order and not yet delivered, and all rights with respect to the processing and completion of any work-in-process, including the right to collect and receive charges for the Products and services performed by the Asset Sellers or the Sale Company with respect thereto); Contracts (including the Indian License and Equipment Lease Arrangements, and Capital Leases); Administrative Assets; and Purchased Intellectual Property, in each case to the extent Used in Connection with the Business, together with all other property and assets of every kind or nature Used in Connection with the Business (other than the Excluded Assets); provided that: (i) with respect to the Sales Offices, the Acquired Assets shall consist only of the Assets specifically set forth in Schedule 1.3.1; and (ii) with respect to the Carved-Out Locations, the Acquired Assets shall consist only of the assets set forth in Sections 1.3.2 below. The term "**Used in Connection with the Business**" as used herein shall mean all of those assets comprising the foregoing asset categories including any other assets owned, leased, licensed or otherwise held by a Seller or the Sale Company which were acquired for use or held for use by such Seller or Sale Company primarily in connection with the Business as currently conducted and which are necessary for the continued operation of the Business after the Closing in substantially the same manner as before the Closing, and including all current and total assets which would be reflected on the books of account of the Business if such accounts were: (i) presented on a carved-out or stand-alone basis; and (ii) audited by an independent accounting firm as of the Closing Date. It is specifically understood and agreed that the Purchasers are acquiring, and the Sellers are selling, all of the tangible and intangible assets Used in Connection with the Business by the Asset Sellers or the Sale Company, except to the extent any such assets are included in the definition of the Excluded Assets.

**1.3.2.    Carved-Out Location Assets.**  Notwithstanding Section 1.3.1 above and consistent with the terms of Sections 1.4.8, 1.4.9 and 1.4.10 below relating to certain Excluded

Assets, the Sellers are only selling and the Purchasers are only purchasing certain specific assets Used in Connection with the Business in respect of the Sellers' catalyst operations in Clayton-Melbourne, Australia, San Luis Potosí, Mexico and Shanghai, China (the "**Carved-Out Manufacturing Locations**") and catalyst technical and testing centers in Flint, Michigan and Bascharage, Luxembourg (the "**Technical Centers**" and, together with the Carved-Out Manufacturing Locations, collectively the "**Carved-Out Locations**") as set forth below.

1.3.2.1.    In respect of the Carved-Out Manufacturing Locations, the applicable Asset Purchasers shall only acquire at the Closing the Accounts Receivables (but excluding any Excluded Trade Receivables), Inventory (other than work-in-process at the Shanghai location), Contracts with customers of the Business, direct material supplier Contracts of the Shanghai, China operations as required for the performance of its material purchase obligation under the Shanghai Toll Manufacturing Agreement, Administrative Assets used in connection with such Acquired Assets, Purchased Intellectual Property, Carved-Out Locations Acquired Equipment and Machinery (including those items to be selected by Purchaser at a mutually agreed time before Closing from among the Assets set forth on Schedule 1.3.2.1, such list to be completed by Purchaser) and Other Book Assets Used in Connection with the Business at such locations (collectively, the "**Acquired Carved-Out Manufacturing Location Assets**"). For purposes of this Section 1.3.2.1, Contracts shall only *include* any open or pending Contracts with customers and any Capital Leases for Carved-Out Locations Acquired Equipment and Machinery and shall specifically *exclude* any Contracts: (x) with suppliers or vendors of the Business; (y) governing the provision of utilities (*i.e.*, water, electricity, gas) services to any Seller; and (z) for the acquisition or purchase of raw materials by any Seller (other than in respect of the Shanghai, China location as described above). Consistent with the foregoing and Sections 1.4.8 and 1.4.9 below, the Sellers shall retain and the Purchasers shall not acquire all of the other tangible and intangible assets of the Business at the Carved-Out Locations, including any Real Property, Personal Property (other than the Carved-Out Locations Acquired Equipment and Machinery), Permits, and other tangible assets (including production furnaces other than the most recently acquired gas furnace in Shanghai) of the Business at the Carved-Out Locations (collectively, the "**Excluded Carved-Out Location Assets**"). The arrangements pertaining to the fulfillment of such open or pending Contracts and other matters among the relevant Purchasers and Sellers (as well as the Chinese Joint Venture in respect of the Shanghai, China operations) shall be governed by the Toll Manufacturing Agreements and Transition Services Agreement.

1.3.2.2.    In respect of the Sellers' Technical Centers, the Sellers are only selling and the applicable Asset Purchasers are only purchasing the Purchased Intellectual Property Used in Connection with the Business at the Technical Centers and certain confidentiality agreements included in the Listed Contracts with respect to the Luxembourg testing center (the "**Acquired Carved-Out Technical Center Assets**" and, together with the Acquired Carved-Out Manufacturing Location Assets, the "**Acquired Carved-Out Location Assets**"). Consistent with the foregoing and Section 1.4.10 below, the Sellers shall retain and the Purchasers shall not acquire any of the Excluded Carved-Out Location Assets located at the Carved-Out Technical Centers. At the Closing, the appropriate Sellers and Asset Purchasers shall enter into Testing Services Agreements with respect to each Technical Center.

1.4.    **Excluded Assets.** Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, the following properties and assets shall not be included in the Acquired Assets:

**1.4.1.  Bailed Assets.**  Any machinery, equipment, tools, Inventory (including Consigned PGMs), tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by an OEM or a Tier 1 Supplier thereto or any other third party, including such items referred to in Schedule 1.4.1 ("**Third Party Bailed Assets**"); provided, however, that any Contracts pertaining to such bailment arrangements shall be transferred as part of the Acquired Assets in accordance with Section 1.3.1 and Section 1.3.2 above.

**1.4.2.  Personnel and Medical Records.**  All work histories, personnel and medical records of employees and former employees of any Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, privacy or similar Laws, Purchasers will be provided the originals of all personnel and medical records of all Hired Current Employees, after posted written notice or other appropriate notice to such employees if legally required or if Sellers so elect.  All such personnel and medical records of such employees shall be books and records governed by Section 8.10.3 of this Agreement.  Upon written request of a Seller (or an Affiliate of a Seller), Purchasers shall promptly return any and all of these records to such Seller (or an Affiliate of such Seller as directed) at which time such Seller shall provide Purchasers with copies of the personnel and medical records of such employees.  If an employee objects to provision of personnel or medical records to Purchasers, the records will not be provided, except to the extent Sellers determine that provision of the records to Purchasers over the objections by the employee is permitted by the applicable local Law without adverse consequences to Sellers.

**1.4.3.  Certain Financial Assets.**  Cash, cash equivalents and bank accounts; provided, however, that to the extent any local or other bank accounts are held by the Sale Company and are necessary for the operation of the Business activities of such entity, Sellers agree to cause the transfers of such accounts with the Sale and Purchasers shall reimburse Sellers to the extent of any cash (net of any overdraft obligations) contained in such operating accounts as of the Closing Date.

**1.4.4.  Certain Financial Contracts.**  Contracts or commitments relating to Debt (other than Capital Leases) including Contracts or commitments for the borrowing or lending of money, credit cards, lines of credit or guarantees of indebtedness; letters of credit, performance or payment bonds or guarantees of performance; or contracts or commitments with any investment banker, financial advisor, finder or broker and those contracts specifically listed in Schedule 1.4.4 ("**Excluded Financial Contracts**"); provided, that any Contracts pertaining to PGM Leases or Borrowings Used in Connection with the Business shall be transferred in accordance with Section 1.3.1 and Section 1.3.2 above and subject to the operation of the Purchase Price adjustment provisions of Article 4.

**1.4.5.  Tax Refunds, Etc.**  Consistent with Article 10, any refund of Taxes, or claim for refund of Taxes, or deferred Taxes (other than deferred Taxes of the Sale Company) of any kind relating to the Acquired Assets, for any period prior to the Closing Date.

**1.4.6.  Excluded Intellectual Property.**  (i) All Intellectual Property owned by Sellers or their Affiliates (except for Software, which to the extent excluded is listed on Schedule 1.4.6), which, in the case of each such item of Intellectual Property, is not Used in Connection with the Business; (ii) that Intellectual Property listed on Schedule 1.4.6; (iii) the underlying Patent Rights of Sellers that are the subject of the Atmospheric Catalyst License; and (iv) also the trademarks and/or names "Delphi" and "Delphi Catalyst" and all other trademarks, service marks and trade names of Sellers or their Affiliates not listed on Schedule 5.1.7.A.1, Schedule 5.1.7.A.2 and Schedule 5.1.7.A.3 (collectively, the "**Excluded Intellectual Property**") subject to the limited

rights granted to Purchasers and their Affiliates pursuant to Section 8.10.5; provided, however, that as of the Closing Date, the Sellers agree to grant Purchasers a worldwide, perpetual, assignable (to Affiliates), royalty bearing, non-exclusive license to certain atmospheric catalyst Patent Rights on the terms set forth in the Atmospheric Catalyst License.

**1.4.7.    Excluded Canning Business.**    Sellers' catalyst canning operations (i.e., the encapsulation of a coated catalyst within a sheet metal container) (the "**Excluded Canning Business**") and all assets relating thereto.

**1.4.8.    Assets of the Chinese Joint Venture.**    Other than the assets pertaining to the Chinese Joint Venture which are described in Section 1.3.2 above as being part of the Acquired Carved-Out Manufacturing Location Assets, all assets of the Chinese Joint Venture including the Excluded Carved-Out Manufacturing Location Assets pertaining to the Chinese Joint Venture.

**1.4.9.    Assets of the Australian and Mexican Operations.**    Other than the assets pertaining to Sellers' catalyst operations in Clayton, Australia and San Luis Potosí, Mexico (the "**Australian and Mexican Operations**") which are described in Section 1.3.2 above as being part of the Acquired Carved-Out Manufacturing Location Assets, all assets of the Australian and Mexican Operations including the Excluded Carved-Out Manufacturing Location Assets pertaining to the Australian Operations.

**1.4.10.    Technical Centers.**    Other than assets pertaining to Technical Centers described in Section 1.3.2 above as being part of the Acquired Carved-Out Technical Center Assets, all assets of the Technical Centers including the Excluded Carved-Out Technical Center Assets pertaining to the Technical Centers.

**1.4.11.    Sales Offices.**    All assets of the Sales Offices of any kind whatsoever other than those listed on Schedule 1.3.1.

**1.4.12.    Privileged Information and Materials.**    Information and materials protected by the attorney-client privilege (or its equivalent in jurisdictions outside the United States); and the lack of which excluded information and materials are not material to the operation of the Business.

**1.4.13.    Insurance.**    The benefit of any of Sellers' or Sellers' Affiliates' insurance policies relating to the operation of the Business (including any right to proceeds thereunder).

**1.4.14.    Certain Rights.**    All of the rights and claims of the Filing Affiliates available to Filing Affiliates under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including claims against a certain PGM supplier referred to in Schedule 5.1.14.B. including any and all proceeds of the foregoing.

**1.4.15.    Real Property.**    All real property which is neither Listed Real Property nor any Improvements located thereon.

**1.4.16.    Benefit Plans.**    Any assets held on behalf of a Benefit Plan covering current or former employees of the U.S. Operations and any other Benefit Plan not required to be assumed by Purchasers as set forth in Section 2.1.4.

**1.4.17. Collective Bargaining Agreements.**    Except as required to be assumed by applicable Laws and consistent with Section 3.9, all Collective Bargaining Agreements (including the Existing Tulsa Collective Bargaining Agreement).

**1.4.18. Excluded Trade Receivables.**    All Excluded Trade Receivables.

**1.4.19. Certain Contracts.**    With respect to any Carved-Out Manufacturing Location, any Contracts governing the provision of utility (e.g., water, electricity, gas) services to any Seller or Contracts for the acquisition or purchase of any supplies, including raw materials by any Seller (other than Chinese raw material Contracts addressed in Section 1.3.2).

**1.4.20. Other Assets.**    (i) All finished goods Inventory and all inventories, products, rights, properties, assets and businesses of the Business which shall have been transferred or disposed of by Sellers prior to Closing not in breach of this Agreement; (ii) any document, information, Permit, Contract, Intellectual Property or other asset the transfer of which is prohibited by any Law or referred to in Schedule 1.4.20; and (iii) all computer hardware, equipment, computer Software and the other assets listed on Schedule 1.4.20; provided, however, that, to the extent that Sellers' foregoing exclusion of computer hardware, equipment and software is anticipated to result in a loss or disruption to the Business of its continuing functionality, the Parties will include the necessary arrangements to avoid such loss or disruption in a Transition Services Agreement, as contemplated by Section 7.2.6.

**1.5. Post-Closing Asset Deliveries.**    Should any Seller, in its reasonable discretion, determine after the Closing that books, records or other materials constituting Acquired Assets are still in the possession of such Seller or any of its Affiliates, such Seller shall or shall cause such Affiliates to promptly deliver them to the applicable Purchaser at no cost to such Purchaser.  Should Sellers or Purchasers, in their reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to Purchasers, Purchasers shall promptly return them to the applicable Seller at no cost to such Seller.

**1.6. Non-Assignable Permits and Contracts:**

**1.6.1. Non-Assignability.**    To the extent that any Contract or Permit (except for certain critical Contracts and Permits identified in writing by a Purchaser to a Seller) included in the Acquired Assets is not capable of being assigned to Purchasers at the Closing without the consent or waiver of the issuer thereof or the other party thereto or any third party (including a Governmental Entity) that has not yet been obtained by the Parties, or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law, this Agreement shall not constitute an assignment thereof, or an attempted assignment, unless any such consent or waiver is obtained.  Schedules 5.1.11 and 5.1.14.A expressly denotes which of the Listed Contracts and Permits are not capable of being assigned to Purchasers at the Closing, but that would otherwise be considered Acquired Assets provided that noting that a consent is required to effect the transfer of Contract or Permit does not, by itself, place such Contract or Permit within this sentence.

**1.6.2. Efforts to Obtain Consents and Waivers.**    At Purchaser's request, Sellers shall, at their expense, use commercially reasonable efforts, and Purchasers shall, at their expense, cooperate with Sellers, to obtain the consents and waivers and to resolve the impracticalities of assignment referred to in Section 1.6.1 after the Closing.

25

**1.6.3.    If Waivers or Consents Cannot Be Obtained.**  To the extent that the consents and waivers referred to in Section 1.6.1 are not obtained by Sellers, or until the impracticalities of assignment referred to therein are resolved, Sellers' sole responsibility with respect to such matters, notwithstanding Section 1.2, shall be to use, during the twelve (12) month period commencing with the Closing, all commercially reasonable efforts, at no cost to Sellers, to: (i) provide to the applicable Purchaser the benefits of any Permit or Contract, all as referred to in Section 1.6.1, included in the Acquired Assets; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to such Purchaser, without incurring any financial obligation to such Purchaser; and (iii) enforce for the account of such Purchaser and at the cost of such Purchaser any rights of Sellers arising from the Permits or Contracts included in the Acquired Assets referred to in Section 1.6.1 against such issuer thereof or other party or parties thereto.

**1.6.4.    Obligation of Purchasers to Perform.**  To the extent that any Purchaser is provided the benefits pursuant to Section 1.6.3 of any Permit or Contract included in the Acquired Assets, such Purchaser shall perform, on behalf of the applicable Seller, for the benefit of the issuer thereof or the other party or parties thereto, the obligations of such Seller thereunder or in connection therewith, and if such Purchaser shall fail to perform to the extent required herein, the applicable Seller, without waiving any rights or remedies that it may have under this Agreement or applicable Laws, may suspend its performance under Section 1.6.3 in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or such Seller may perform at such Purchaser's sole cost and expense, in which case such Purchaser shall reimburse such Seller's costs of such performance immediately upon receipt of an invoice therefor.

**1.7.    Certain Assigned Contracts.**  With respect to those Contracts for goods or services included in the Acquired Assets and used by both the Business and the other operations of Delphi or its affiliates that are set forth on Schedule 1.7 and will be transferred to Purchasers at Closing, Purchasers shall provide Sellers with the benefits of such Contracts in substantially the manner described in Section 1.6.3 above, and Sellers shall reimburse Purchasers for such benefits in substantially the manner described in Section 1.6.4 above, until the earlier of such time as separate contracts for such goods or services have been agreed between the applicable Seller and the other party to such contracts or the termination of such Contract.

2.    **ASSUMPTION OF LIABILITIES REGARDING ACQUIRED ASSETS TRANSACTIONS; RETAINED LIABILITIES:**

**2.1.    Assumed Liabilities.**  At and as of the Closing, Umicore shall cause the applicable Asset Purchasers or Securities Purchaser to assume and agree to pay, perform and discharge when due, and shall be liable only with respect to the following obligations, Liabilities and responsibilities relating to the operation of the Business (the "**Assumed Liabilities**"):

**2.1.1.**    The obligations of Sellers arising subsequent to the Closing under the Contracts, licenses, Permits and leases included in the Acquired Assets and assigned or otherwise transferred to Purchasers pursuant to this Agreement or the Transfer Agreements.

**2.1.2.**    Accounts Payable (other than Excluded Trade Payables) that have been incurred in the Ordinary Course of Business, including Trade Payables to any Seller or Seller Affiliate that are not Excluded Trade Payables.

**2.1.3.**    Claims and other obligations relating to Purchasers' ownership, operation or use of the Acquired Assets after the Closing.

**2.1.4.**    Obligations which Purchasers are required to assume by operation of Law as a result of the Sale or by virtue of Purchasers' acquisition of the Sale Securities, under Benefit Plans covering current or former employees of the Sale Company and the Foreign Operations in Florange, France (i.e., other than the Assumed PTO Obligations described in Section 2.1.5, the Purchasers are assuming no such Liabilities or obligations in respect of Benefit Plans relating to the U.S. Operations or the Foreign Operations outside of the Sale Company and Florange, France), together with obligations with respect to Purchasers' employment after the Closing of the Hired Current Employees, all as described in Article 3 of this Agreement.

**2.1.5.**    All PTO Obligations with respect to each Hired Current Employee (the "**Assumed PTO Obligations**").

**2.1.6.**    The obligation to pay for assets, goods or services relating to the Business and acquired pursuant to a Contract that is an Acquired Asset pursuant to this Agreement, which are ordered by any Seller on or prior to the Closing in the Ordinary Course of Business and that are received by the relevant Purchaser after Closing.

**2.1.7.**    Liabilities and obligations arising out of, resulting from, or relating to Products manufactured subsequent to the Closing, including all Product warranty, Product returns, Product Liability and Product recall Liability (recognizing that Sellers are assigning to Purchasers their rights against third party manufacturers in respect of Products manufactured subsequent to the Closing in accordance with the provisions of Section 1.3.1); provided, however, that subject to the understanding that such matters are not a Retained Liability, Purchasers' assumption of any such Product-related warranty or Liability shall be limited to the extent that it was warranted directly to a customer of the Business, that such Product met the specific specifications and test conditions mandated by such customer and, on no account shall Purchasers assume or be liable for any Product warranty, Product return, Product Liability or Product recall Liability under any Product warranty extended by a Seller or any other Delphi Affiliate to an OEM, Tier 1 supplier or other customer which covers any performance- or durability-related features of any exhaust systems-level, canning or other non-catalyst products, whether arising before, on or after the Closing Date.

**2.1.8.**    Any and all Environmental Claims or Liabilities as allocated in accordance with the principles set forth in Section 12.6 of this Agreement; provided, however, that Permit Transfer Liabilities are not an Assumed Liability hereunder.

**2.1.9.**    Any and all Claims: (i) arising after the Closing Date under health and safety Laws (such as the Occupational Safety and Health Act) applicable to employers; and (ii) for "toxic tort" for exposure of any person or property to Hazardous Material under a Law or common law to the extent the exposure giving rise to the "toxic tort" Claim occurred after the Closing Date.

**2.1.10.**    Subject to Sellers' retention of Liabilities related to Benefit Plans covering current and former employees of the U.S. Operations and non-U.S. Benefit Plans which Purchasers are not required to assume by operation of Law or by virtue of Purchasers' acquisition of the Sale Securities, all severance obligations owed or owing to any Hired Current Employees or which become due and payable to Hired Current Employees, in each case after the Closing Date, in respect of employment following the Closing Date, which results from any post-Closing transfer, attempted transfer, other condition of, or termination of employment of one or more Hired Current Employees by a Purchaser ("**Post-Closing Severance Obligations**").

     **2.2.**   **No Expansion of Third Party Rights.**  The assumption by Purchasers of the Assumed Liabilities shall in no way expand the rights or remedies of any third party against any Purchaser or Seller as compared to the rights and remedies which such third party would have had against the applicable Seller absent the Bankruptcy Cases, had Purchasers not assumed such Assumed Liabilities.  Without limiting the generality of the preceding sentence, the assumption by Purchasers of the Assumed Liabilities shall not create any third party beneficiary rights other than with respect to the Person that is the obligee of such Assumed Liability.

     **2.3.**   **Retained Liabilities.**  Notwithstanding anything in this Agreement to the contrary, other than the Assumed Liabilities, Purchasers shall not assume or be deemed to have assumed, and shall have no Liability or obligation with respect to, any other Liabilities and obligations of any Seller or the Business and the appropriate Seller shall continue to be responsible for such Liabilities and obligations (collectively, "**Retained Liabilities**").  Without limiting the generality of the foregoing, the Sellers expressly acknowledge and agree that, other than the Assumed Liabilities, the appropriate Seller shall retain, and the Purchasers shall not assume or otherwise be obligated to pay, perform, defend or discharge any: (i) Liabilities (including Liabilities relating to social security (or similar) disability, or unemployment taxes) in respect of employment or services performed by any employee of the Business or any Seller or Affiliate on or prior to the Closing Date, including Retired Employees, other than any Post-Closing Severance Obligations in accordance with Section 2.1.10 or as otherwise set forth in Article 3; (ii) Product warranty, Product return, Product Liability and Product recall Liability claims relating to Products manufactured prior to the Closing Date; (iii) Liabilities in the nature of general and automobile Liability arising prior to Closing; (iv) litigation for which a claim has been made to Sellers on or before the Closing Date or to the extent it relates to an act or omission by any Seller or Affiliate prior to such date; (v) consistent with Article 10, Tax Liabilities for periods or portions of periods ending on or before the Closing Date; (vi) Liability of the Sellers to any person or entity (including Retired Employees) in connection with any Benefit Plan covering current and former employees of the U.S. Operations and non-U.S. Benefit Plans which Purchasers are not required to assume by operation of Law or by virtue of Purchasers' acquisition of the Sale Securities, including any Liability of Delphi or any other Seller under ERISA, whether directly or as an ERISA Affiliate; (vii) to the extent not captured by the preceding clause (vi), Liability for any PTO Obligations pertaining to Current Employees (other then Hired Current Employees) or former employees of the U.S. Operations, or for any severance or stay/retention bonuses which Liabilities are for the account of the Sellers as provided in Section 3.10 below; (viii) Liability of the Sellers to any person or entity (including Retired Employees) in connection with any Benefit Plan covering the current or former employees of the Foreign Operations insofar as the Australian, Chinese, Mexican, Indian, non-U.S. Sales Offices or Luxembourg operations of the Business are concerned; (ix) any and all Environmental Claims or Liabilities as allocated in accordance with the principles set forth in Section 12.6 of this Agreement, and any and all Claims: (a) arising prior the Closing Date under health and safety Laws (such as the Occupational Safety and Health Act) applicable to employers; and (b) for "toxic tort" for exposure of any person or property to Hazardous Materials under a Law or common law to the extent the exposure giving rise to the "toxic tort" Claim occurred prior to the Closing Date; (x) any Liability or obligation of any Seller relating to any default under any of the Contracts included in the Acquired Assets or under any of the Assumed Liabilities, to the extent such default takes place or pertains to acts or omissions of any Seller or Affiliate during the period prior to the Closing Date, including any Cure Amounts related to any Assumed U.S. Contract; (xi) any Liability or obligation of any Seller for administrative fees and expenses, including "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code; (xii) any Liability or obligation of any Seller for transaction fees and expenses and fees and expenses payable to lenders, brokers, financial advisors, legal counsel, accountants and other professionals in connection with this Agreement, the Ancillary Agreements and the transactions contemplated hereby and thereby; (xiii) any Liabilities owed to a Seller or any of its Affiliates by any Asset Seller or Sales Company which arose before the Closing Date (other than Included Trade Payables); (xiv) all Debt owed by a Seller or a Sale Company or any of their respective Affiliates; and

(xv) Excluded Trade Payables; (xvi) all Collective Bargaining Agreements (including the Existing Tulsa Collective Bargaining Agreement) and obligations thereunder except: (A) as required to be assumed by Purchasers by applicable Laws; and (B) to which the Sale Company is a party.  Sellers further agree to satisfy and discharge as the same shall become due all obligations and Liabilities of the Sellers (including the Retained Liabilities) not specifically assumed by Purchasers hereunder.

**3.**    **ACQUIRED ASSETS - PERSONNEL MATTERS - TRANSFERRED EMPLOYEES:**

**3.1.    Current Employees.**  Schedule 5.1.19.A lists all Current Employees. With respect to each Current Employee, Schedule 5.1.19.A lists: (i) each such person's title or job/position; (ii) each such person's job designation (i.e., salaried or hourly); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed or not actively at work (due to, e.g., illness, short-term disability, sick leave, authorized leave of absence, etc.)); (v) each such person's annual base rate of compensation; and, if applicable, any bonus; (vi) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, employment agreements, deferred compensation agreement, golden parachute, etc.) to the extent permitted to be disclosed under applicable Law (including local privacy laws); (vii) with respect to hourly employees, an indication of such employee's union or non-union status, and an identification of any relevant union; (viii) a description of the Benefit Plans in which each such employee participates providing the legal name of such plan, such employee's date of birth and date of hire; and (ix) with respect to those current and deferred beneficiaries of Benefit Plans which will be assumed by Purchasers by operation of law or as a result of acquisition of the Sale Company, a description of the benefit entitlement of each such beneficiary and whether such beneficiary is a current or deferred beneficiary and, if deferred, the date on which such benefit will become due; provided, however, that in respect of the information referred to in clause (vi), if such information is not on Schedule 5.1.19.A, Sellers may provide such information to Purchasers under separate cover.  Purchaser will make offers of employment to all active hourly Current Employees of the Tulsa operations. From the date of this Agreement until five (5) days prior to Closing, Purchaser will provide Sellers with monthly updates as to status of Purchaser's discussions with U.S. salaried Current Employees.  Not later than thirty-five (35) days prior to the Closing Date, Sellers will provide Purchasers with an updated Schedule 5.1.19.A, marked to show changes from the original list.  With respect to those Current Employees of an Asset Seller (other than those who will automatically become Hired Current Employees by operation of Law or contract as a result of the Sale), no later than five (5) days prior to Closing, Purchasers will provide Sellers with a list of Current Employees to whom any Purchaser has made an offer of employment that has been accepted to be effective on the Closing Date.  On the Closing Date, Schedule 5.1.19.A will be updated to include only Hired Current Employees.

**3.2.    Offer of Employment:**

**3.2.1.**    Set forth on Schedule 3.2.1 is the agreement among the Parties with respect to certain matters relating to the Current Employees.

**3.2.2.**    The following provisions of this Section 3.2.2 apply only to Current Employees of Shanghai, China and San Luis Potosi, Mexico locations, since Purchaser has agreed not to contact Seller's Current Employees in Australia with respect to offers of employment.  Notwithstanding the foregoing, with respect to employees of the Business located at the Sellers' Shanghai, China or San Luis Potosi, Mexico locations (but not Clayton, Australia), at any time prior to the termination of the applicable Toll Manufacturing Agreement covering such location, Purchasers shall provide Sellers with a list of employees to whom Seller intends to make an offer of employment effective upon the termination of such Toll Manufacturing Agreement (or such sooner date as such Seller and such Purchaser shall agree).  During the term of the relevant Toll Manufacturing Agreement,

Purchasers and Sellers shall reasonably consult regarding, and Sellers shall provide reasonable access to, employees providing services under the relevant Toll Manufacturing Agreements each for the purpose of allowing Purchasers to evaluate such employees for potential employment with Purchasers.  For a period of three (3) months following the Closing, or at any time with respect to the persons named on a list (following their being placed on such list) provided to the Sellers pursuant to the second sentence of this subsection, Sellers shall take no action, or fail to take any action, intended to cause any such employee to not accept employment with any Purchaser (or its Affiliates) including transferring or reassigning any such employee to, or offering any, alternative positions with the Seller or any of its Affiliates.  In the event the Purchaser offers employment to any such employee and the employee accepts such employment, the applicable Purchaser and Seller shall reasonably cooperate to transfer the employment of such employee(s) to the Purchaser at the end of the relevant Toll Manufacturing Agreement.

     **3.2.3.**    Subject to applicable Laws and to the longer period with respect to certain Current Employees as set forth in Section 3.2.2 above, Sellers agree to provide, through the Closing Date, Purchasers with reasonable access to all Current Employees (and related personnel and medical records and facilities), including but not limited to facilitating interviews of, and offers of employment to, such employees.  Sellers will release to, or obtain release of and deliver to Purchasers experience records from Sellers' insurer to allow Purchasers to pursue and seek bids for health and risk benefit plans.

     **3.2.4.**    Purchasers will set their own initial terms and conditions of employment for the Hired Current Employees and others it may hire, including work rules, benefits and salary and wage structure, all in accordance and consistent with such Purchaser's own policies and plans and as permitted by applicable Laws.  Other than merit programs and annual wage increases in the Ordinary Course of Business and benefits set forth on <u>Schedule 3.2.4</u>, no Seller has made any announcement in the past twelve (12) months to any Current Employee regarding any continuation, introduction, increase or improvement of any Benefit Plan, and no Seller will make any such announcement prior to Closing without the prior written consent of Purchasers.  Except as explicitly provided in this Agreement or by operation of Law, Purchasers will assume no Liabilities with respect to any Benefit Plan of any Seller.  It is understood and agreed that: (i) Purchasers' intention to extend certain offers of employment as set forth in this Section 3.2 will not constitute a contract (express or implied) on the part of any Purchaser to any post-Closing employment relationship of any fixed term or duration or upon any terms or conditions other than those that a Purchaser may establish pursuant to individual offers of employment; and (ii) any employment offered by any Purchaser is "at will" and may be terminated by Purchaser or by an employee at any time for any reason (subject to any written commitments to the contrary made by a Purchaser or an employee and applicable Laws governing employment).  Nothing in this Agreement will be deemed to prevent or restrict in any way the right of any Purchaser to terminate, reassign, promote or demote any of the Hired Current Employees after the Closing, or to change adversely or favorably the title, powers, duties, responsibilities, functions, locations, salaries, other compensation or terms or conditions of employment of such employees; <u>provided</u>, <u>however</u>, that Purchasers' may be subject to Post-Closing Severance Obligations pursuant to Section 2.1.10 above.  Notwithstanding the foregoing, the Purchasers shall recognize the seniority status (*e.g.,* years of service) of all Hired Current Employees for all purposes of the employment of such Hired Current Employees with such Purchaser; <u>provided</u>, <u>however</u>, that Purchasers shall not be obligated to factor seniority status into any initial hiring decisions.

   **3.3.**    **<u>Purchasers' U.S. Benefit Plans.</u>**    U.S. Hired Current Employees' and their eligible dependents and beneficiaries participation in and eligibility for benefits under Purchasers' Benefit Plans

will commence no later than two (2) months following the Closing Date.  Purchasers will recognize each Hired Current Employees' pre-Closing service with Seller for eligibility and vesting purposes under Purchasers' Benefit Plans; provided, however, that such recognition will not cause a duplication of benefits being provided to the Hired Current Employees by Sellers and Purchasers.

**3.4.    WARN Act.**  In respect of the U.S. Operations, Sellers shall be responsible for and shall pay all Liabilities or obligations arising under the WARN Act, if any, arising out of or resulting from layoffs of Current Employees or any termination of their employment which occurs prior to or on the Closing Date. The applicable Purchasers shall be responsible for and shall pay all Liabilities or obligations arising under the WARN Act, if any, arising out of or resulting from layoffs of Hired Current Employees or any termination of their employment which occurs after the Closing Date.

**3.5.    Sellers' U.S. Pension Plans.**  Consistent with Sections 2.1.4 and 2.3(v), Sellers are retaining and Purchasers are not assuming any assets or Liabilities relating to Benefit Plans covering current or former employees of, or otherwise sponsored by, the U.S. Operations.  Accordingly, all Hired Current Employees in the U.S. who are participants in the Benefit Plans that are pension plans as defined in ERISA Section 3(2) will be fully vested in their accounts under such Benefit Plans as of the Closing Date; provided, however, that the applicable Seller (or the applicable Benefit Plan) will retain sole Liability for the payment of such benefits as and when such Hired Current Employees become eligible for such benefits under such U.S. Benefit Plans, and Purchasers will assume no Liabilities with respect to such U.S. Benefit Plans.

**3.6.    Non-U.S. Benefit Plans.**  Consistent with Section 2.1.4, Sellers are not retaining and Purchasers are assuming Liabilities relating to Benefit Plans covering current or former employees of the Sale Company and the Foreign Operations in Florange, France which Purchasers are required to assume by operation of Law or by virtue of Securities Purchasers' acquisition of the Sale Securities.  Accordingly, all Hired Current Employees who are participants in the non-U.S. Benefit Plans covering current or former employees of the Sale Company or of the Foreign Operations in Florange, France which are so assumed by Purchasers will retain their benefits under such Benefit Plans as of the Closing Date in accordance with applicable Laws, the applicable Purchaser (or the applicable non-U.S. Benefit Plan so assumed by Purchasers) will assume (or retain) sole Liability for further payment of such benefits as when such Hired Current Employees became eligible for such benefits under such non-U.S. Benefit Plans.  Seller shall retain and Purchasers will assume no Liabilities with respect to any other non-U.S. Benefit Plans.  Purchasers' are not assuming any Liabilities or assets with respect to any non-U.S. Benefit Plans that the Purchasers are not required to assume by operation of Law or by virtue of the securities acquisition of the Sale Securities.

**3.7.    Continuation of U.S. Health Plans by Sellers after the Closing.**  Sellers shall maintain, keep in good standing (including make all required regulatory filings), and not terminate each of the Benefits Plans listed on Schedule 5.1.19.C (collectively, the "**Seller U.S. Health Plans**") until the earlier of: (i) the date that is two (2) months after the Closing Date; and (ii) written notification from Purchasers that a Purchaser has established health plans providing coverage for Hired Current Employees.   During such two (2) month period, unless Sellers continue to provide coverage for all Hired Current Employees under the Seller U.S. Health Plans, Sellers shall make available to any such Hired Current Employees as are located in the U.S. continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("**COBRA**"), to such Hired Current Employees (the "**Covered Employees**") (and their "qualified beneficiaries," as such term is defined by COBRA) and to the "M&A qualified beneficiaries" (as such term is defined in Treasury Regulation § 54.4980B-9 Q&A-4(a)), all in accordance with the terms of the Transition Services Agreement.  Except for reimbursing Seller's costs as set forth in the Transition Services Agreement, Purchasers shall not have any obligation to collect or pay to Sellers the COBRA premium payments of the Covered Employees (and their qualified beneficiaries) or the M&A qualified beneficiaries, or to make available COBRA continuation coverage to any covered Employee or M&A

qualified beneficiaries or any other current or former employee of Seller.  Purchasers' reimbursement of Sellers for the costs associated with the foregoing shall be reimbursed by such Purchaser(s) in accordance with the terms of the Transition Services Agreement.  Purchasers shall not have any responsibilities, obligations or Liabilities for the Seller U.S. Health Plans or to extend or administer COBRA continuation coverage to Covered Employees or to M&A qualified beneficiaries as a consequence of the sale of Purchased Assets described herein. Sellers shall retain all responsibility for and shall satisfy all Claims Incurred (as defined below) under the Seller U.S. Health Plans on or prior to Closing Date.  For purposes of this Section 3.7, the term "**Claims Incurred**" means that the medical services giving rise to such medical plan claims have actually been performed.  Sellers will not take any action without the prior written consent of Purchasers that would result in the termination of the Seller U.S. Health Plans or otherwise result in Sellers being unable to provide continuation coverage to the Covered Employees (and their qualified beneficiaries) and the M&A qualified beneficiaries in accordance with this Section 3.7.

     **3.8.**   **U.S. Benefit Plans For Retired Employees**.  Except for benefits to Retired Employees under Benefit Plans required to be assumed by Purchasers by operation of Law or by virtue of Securities Purchaser's acquisition of the Sale Securities, Sellers will retain sole Liability for the continued payment of benefits for Retired Employees, and Purchasers will assume no Liabilities to provide any employee welfare benefits, or pay for any employee welfare benefit plans (or any other Benefit Plans) with respect to such Retired Employees.

     **3.9.**   **Collective Bargaining Agreements**.  Schedule 5.1.19.D lists all material collective bargaining agreements with any labor union, Works Council or other representative of Current Employees (including material local agreements, amendments, supplements, letters and memoranda of understanding of any kind) (collectively, the "**Collective Bargaining Agreements**").  Except as required by applicable Laws, Purchasers are not obligated to assume any Collective Bargaining Agreements under this Agreement (including the Existing Tulsa Collective Bargaining Agreement).  As and to the extent required by law, Purchasers will negotiate in good faith with the counterparties to the Collective Bargaining Agreements with respect to the status of all Hired Current Employees who were employed in accordance with a Collective Bargaining Agreement.

     **3.10.**   **Severance; Stay/Retention Bonuses**.  Except in respect of Post-Closing Severance Obligations, Sellers retain all obligations and Liabilities relating to any claims for severance, termination (actual or constructive), change in control agreements, stay or retention bonuses or other payments or benefits of Current Employees deriving from Purchasers' purchase of the Business or the Purchased Assets. In the event that following the Closing any Seller is required to pay any stay or retention bonuses or make other payments or provide any benefits to any employees at one or more Carved-Out Locations to incentivize such employees to fulfill Seller's obligations under any Ancillary Agreement, such Seller shall bear the entire cost of any such payments, benefits or incentives, except as otherwise expressly agreed by Purchaser in connection with the Toll Manufacturing Agreement for the Shanghai, China Carved-Out Manufacturing Location.

     **3.11.**   **Cooperation**. Sellers and Purchasers will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Article 3.

     **3.12.**   **No Third Party Rights**.  No provision of this Agreement confers rights or remedies upon any person, including Current Employees, other than the Parties to this Agreement.

     **3.13.**   **PTO Obligations**.  Subject to the related Purchase Price adjustment mechanism in Section 4.6.6, the Purchasers shall assume, and the Sellers shall have no obligation for, Assumed PTO Obligations

with respect to each Hired Current Employee. The Sellers shall retain Liability for PTO Obligations owed to each Current Employee or former employee who is not a Hired Current Employee.

**3.14.    Workers' Compensation.**  Seller's will retain responsibility for all Liabilities, for worker's compensation benefits related to injuries or illnesses to the extent incurred by U.S. Hired Current Employees prior to the Closing Date. Purchaser's will have responsibility for all Liabilities, for worker's compensation benefits related to injuries or illnesses to the extent incurred by U.S. Hired Current Employees following the Closing Date.

# 4.    PURCHASE PRICE:

**4.1.    Preliminary Purchase Price.**  Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Acquired Assets, Assumed Liabilities and Sale Securities shall be the amount of ~~Fifty~~Seventy-Five Million ~~Six Hundred Thousand~~ U.S. Dollars (U.S. $~~55,600,000.00~~75,000,000.00) ("**Preliminary Purchase Price**") subject to the escrow provisions set forth below in Sections 4.2 and 4.3 and to the adjustments which may occur by operation of the other provisions of this Section 4 below.  The final aggregate, adjusted purchase price, as so determined, is referred to herein as the "**Purchase Price**".

**4.2.    Deposit Amount.**  Upon execution of this Agreement by the Parties and the issuance by the Bankruptcy Court of the Bidding Procedures Order, Purchaser will deliver to the Escrow Agent pursuant to the terms of the Deposit Escrow Agreement ONE MILLION U.S. Dollars (U.S $1,000,000) in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), to be held by the Escrow Agent in an interest bearing account of the Escrow Agent to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures:

**4.2.1.    Deposit Instructions.**  The Escrow Agent shall deposit the Deposit Amount in an account of the Escrow Agent (and such amount shall be applied towards the payment of the Purchase Price);

**4.2.2.    Violation of Agreement.**  Upon any breach by a Purchaser of this Agreement which results in termination by Sellers of this Agreement pursuant to Section 9.1.3.B, the Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Delphi on behalf of the Sellers in the Deposit Escrow Agreement, to be retained by Sellers; and

**4.2.3.    Other Reason.**  Upon termination of this Agreement for any other reason, Delphi (on behalf of the Sellers) and Umicore (on behalf of the Purchasers) shall jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Umicore on behalf of the Purchasers in the Deposit Escrow Agreement, to be retained by Purchasers.

**4.3.    Escrow Amount.**  At the Closing, and in accordance with the terms of a mutually acceptable escrow agreement (the "**Closing Escrow Agreement**"), Purchasers shall deliver to the Escrow Agent Seven Million U.S. Dollars (U.S. $7,000,000) of the Purchase Price in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Escrow Amount**"), to be held by the Escrow Agent in an interest-bearing account of the Escrow Agent which shall serve as an escrow in case: (i) the Preliminary Purchase Price is reduced pursuant to adjustments following the Closing by the operation of Sections 4.6 and 4.7 below; or (ii) there are indemnification claims pursuant to Article

33

12 below, and which shall be released in accordance with the terms of the Closing Escrow Agreement, including:

      **A.**      Up to Five Million U.S. Dollars (U.S. $5,000,000) shall be released following the conclusion of the post-Closing Purchase Price adjustment process established by the other provisions of this Article 4 below;

      **B.**      On each of the six (6) and twelve (12) month anniversaries of the Closing, U.S. $750,000, net of any amounts to be held in reserve for pending indemnification claims as to which Sellers have received notice from Purchasers prior to such anniversary date, shall be released to Delphi on behalf of the Non-Filing Affiliates; and

      **C.**      On the eighteen (18) month anniversary of the Closing, all amounts remaining in escrow, net of any amounts held in reserve for pending indemnification Claims as to which Sellers have received notice from Purchasers prior to such anniversary date, shall be released to Delphi on behalf of the Non-Filing Affiliates.

In the event of a conflict between this Section 4.3 and the Closing Escrow Agreement, the terms of the Closing Escrow Agreement shall govern.

      **4.4.**    **Delivery of Purchase Price.**  At Closing, and subject to the other terms and conditions of this Agreement: (i) Purchasers shall pay to Sellers an aggregate amount equal to the Preliminary Purchase Price as adjusted pursuant to Section 4.6 below, *less* the sum of: (a) the Deposit Amount; (b) the Escrow Amount; and (c) the amount of any Preliminary Purchase Price paid by the Purchaser of the Shanghai, China Acquired Assets to the Seller of the Shanghai, China Acquired Assets in local currency; and (ii) the Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer in immediately available funds to Delphi on behalf of the Sellers to an account designated by Delphi.

      **4.5.**    **Pre-Closing Review of PGM Inventory Levels.**  Not less than (6) Business Days prior to Closing, Sellers will produce and deliver to Purchasers a written statement, in form and substance reasonably satisfactory to the Purchasers (the "**Preliminary Closing PGM Inventory Statement**") summarizing the volumes by weight of the Owned PGMs (and also showing actual, verifiable cost for such Owned PGMs), Consigned PGMs and Restitution Commitments and PGM Leases and Borrowings, if any, as of end of the month preceding the expected Closing Date as updated to reflect any projections for the period until the anticipated Closing Date. The Preliminary Closing PGM Inventory Statement shall form the basis for the calculation of the Closing adjustments set forth in Sections 4.6.2 through 4.6.4 below.

      **4.6.**    **Adjustments to Purchase Price.**  The Purchase Price shall be adjusted at Closing as set forth below in this Section 4.6. The Parties agree that any adjustments to the Purchase Price required pursuant to this Article 4 shall not be double counted in connection with any other adjustment to the Purchase Price under any other provisions of this Agreement.

      **4.6.1.**    **Net Working Capital.**  Not less than six (6) Business Days prior to Closing, Sellers shall deliver to the Purchasers an estimate, calculated in accordance with the Net Working Capital Methodology and otherwise reasonably satisfactory to the Purchasers, of the Business' Net Working Capital as of the Closing (the "**Preliminary Closing Date Net Working Capital Calculation**") together with appropriate supporting documentation (e.g., a schedule of Trade Payables and Trade Receivables, etc.) necessary to support such calculation. At the Closing, if the Business' Net Working Capital as set forth in the Preliminary Closing Date Net Working Capital

Calculation is less than or greater than the Net Working Capital Target by more than U.S. $500,000, then the Purchase Price shall be adjusted (on a dollar-for-dollar basis): (i) upward by the amount that the Business' Net Working Capital (calculated in accordance with the Net Working Capital Methodology) exceeds the Net Working Capital Target; or (ii) downward by the amount that the Business' Net Working Capital (calculated in accordance with the Net Working Capital Methodology) is less than the Net Working Capital Target. For purposes of clarification, and not limitation, the adjustment based on Net Working Capital set forth in this Section 4.6.1 is in addition to, without duplication of any of the elements of, the adjustment for changes in Owned PGMs set forth in Section 4.6.2.

    **4.6.2.**    **Adjustments for Changes in Owned PGMs:**

      **4.6.2.1.**   If and to the extent that the volume of Owned PGMs shown on the Preliminary Closing PGM Inventory Statement (the "**Preliminary Closing Owned PGMs**") fall short of the volume of the Owned PGM Volume Targets with respect to any particular PGM (with respect to such PGM, an "**Owned PGM Shortfall**"), the Preliminary Purchase Price shall be decreased by the dollar amount necessary for Purchasers to acquire sufficient volumes of such PGM to satisfy such Owned PGM Shortfall at market prices as of the Closing Date (calculated using the PGM Pricing Methodology as of the Closing Date).

      **4.6.2.2.**   If and to the extent the volume of the Preliminary Closing Owned PGMs exceeds the Owned PGM Volume Targets with respect to any particular PGM (with respect to such PGM, an "**Owned PGM Surplus**"), the Purchase Price shall be increased by the value of the Owned PGM Surplus (calculated using Delphi's actual cost verified by customer commitments for Owned PGM Surplus).

      **4.6.2.3.**   In the event of an Owned PGM Shortfall with respect to one or more PGMS as well as an Owned PGM Surplus with respect to one or more PGMs, the Purchase Price shall be adjusted, upward or downward by the net amount of such Owned PGM Surplus and Owned PGM Shortfall adjustments.

      **4.6.2.4.**   **(a)**   Once the quantitative adjustments have been completed under Sections 4.6.2.1 through 4.6.2.3 above, then if and to the extent that the actual costs verified by customer commitments reflected on the Preliminary Closing PGM Inventory Statement with respect to any particular Owned PGM Target exceeds the PGM Target Value for such PGM, the Purchase Price shall be increased by the differential. If, on the other hand, the actual costs verified by customer commitments reflected in the Preliminary Closing PGM Inventory Statement in respect of any particular Owned PGM Target is less than the Owned PGM Target Value for such Owned PGM, the Purchase Price shall be reduced by the differential. Adjustments shall be made pursuant to this Section 4.6.2.4 only to the extent the actual costs verified by customer commitments referenced in the preceding two sentences can be reconciled to Contracts with customers of the Business.

      **(b)**   For any Owned PGM not covered by the proceeding paragraph, then if and to the extent that the verified actual costs reflected on the Preliminary Closing PGM Inventory Statement with respect to these Owned PGM exceeds the PGM Target Value for such Owned PGM, the Purchase Price shall be increased by the differential. If, on the other hand, the verified actual costs reflected in the Preliminary Closing PGM Inventory

Statement in respect to these Owned PGM is less than the Owned PGM Target Value for such Owned PGM, the Purchase Price shall be reduced by the differential.

The Parties agree that any adjustment to the Purchase Price required as a result of a change in volume of the Owned PGMs pursuant to the terms of this Section 4.6.2 shall not be double counted in connection with any adjustment to the Purchase Price under any other provision of this Agreement (e.g., under Section 4.6.1 in connection with Net Working Capital (calculated in accordance with the Net Working Capital Methodology) to the extent of any change in Inventory that resulted from a change in PGM Inventory).

Notwithstanding the foregoing, no adjustment shall be made to the Purchase Price pursuant to this Section 4.6.2 unless the adjustment (upwards or downwards) called for by this Section 4.6.2 is at least U.S. $250,000 (and, if so, any adjustment shall be back to dollar one).

**4.6.3.    Adjustment Related to Unfulfilled Restitution Commitments.**  If and to the extent the calculation of the Business' Consigned PGMs and Restitution Commitments set forth on the Preliminary Closing PGM Inventory Statement (the "**Preliminary Restitution Commitments**") shows that as of the Closing Date there is a negative discrepancy between volumes of Consigned PGMs, on the one hand, and Restitution Commitments of the Business, on the other (e.g., the level of Consigned PGMs of the Business as of the Closing Date are insufficient to satisfy the outstanding Restitution Commitments as of such date), the Purchase Price shall be decreased by the amount necessary for Purchasers to acquire sufficient volumes of PGMs as needed to satisfy such uncovered Restitution Commitments at market prices as of the Closing Date (calculated using the PGM Pricing Methodology as of the Closing Date).

**4.6.4.    Adjustments for PGM Leases or Borrowings.**  If and to the extent that the PGM Leases or Borrowings calculation set forth on the Preliminary Closing PGM Inventory Statement indicates that the Business is subject to any PGM Leases or Borrowings as of the Closing Date, the PGM Leases or Borrowings shall be treated as Debt and the Purchase Price shall be reduced on a dollar-for-dollar basis by the amount of such PGM Leases or Borrowings at the Closing.  For purposes of this Agreement: (i) the term "**PGM Leases or Borrowings**" means the total amount of all PGM Leases or Borrowings where a Seller has acted as lessee or borrower including any termination or similar type fees, costs and expenses, measured in U.S. Dollars (as opposed to weight); and (ii) the monetary amount of any PGM Lease or Borrowing shown on such statement shall be calculated using the PGM Pricing Methodology as of the Closing Date.

**4.6.5.    Adjustments for Non-U.S. Pension and Benefit Liabilities.**  Purchasers acknowledge and agree that, by operation of Law or by virtue of their acquisition of the Sale Securities, the Purchasers are required to assume certain Liabilities under certain non-U.S. Benefit Plans with the provisions of this Agreement (e.g., Sections 2.1.4 and 3.6).  Notwithstanding such assumption of those Liabilities, however, it is agreed that the Purchase Price shall be adjusted downward at the Closing to reflect such assumption of Liabilities in accordance with the provisions of this Section 4.6.5.  However, since the exact amount of such non-U.S. pension and benefit Liabilities has not yet been determined, the mechanism set forth on Schedule 4.6.5 is designed to allow the Parties to reach such an agreement and settle on an appropriate Purchase Price adjustment with respect to such matters.

**4.6.6.    Adjustments for Assumed PTO Obligations.**  No later than six (6) Business Days prior to the anticipated Closing, the Sellers shall deliver a calculation of the Assumed PTO Obligations calculated in accordance with the Assumed PTO Obligation Calculation Methodology

set forth in <u>Schedule 4.6.6</u>. The Purchase Price shall be adjusted downwards by an amount equal to the Assumed PTO Obligations.

**4.6.7.  Adjustments for Sale Company.** The Purchase Price shall be adjusted upward or downward, as appropriate, at the Closing by an amount equal to the Sale Company Retained Liability Amount minus the amount of the Sale Company's cash and cash equivalents as of the Closing.  For purposes of clarification, if the foregoing calculation results in a: (i) negative number, then the adjustment will be upwards (e.g., if the Sale Company's cash and cash equivalents exceed the Sale Company Retained Liability Amount); and (ii) positive number, then the adjustment will be downwards (e.g., if the Sale Company Retained Liability Amount exceeds the Sales Company's cash and cash equivalents).  For purposes of this Agreement, the "**Sale Company Retained Liability Amount**" means that amount, which the parties agree in good faith approximates the dollar value of all Liabilities of the Sale Company that would be "Retained Liabilities" under this Agreement if the sale of the Sale Company was structured as an asset sale rather than a sale of the Sale Securities. The parties shall work together to agree upon the Sale Company Retained Liability Amount (including any portion of the Sale Company Retained Liability Amount attributable to Taxes that are accrued on the balance sheet of the Company but not yet due and payable net of any current Value Added Tax assets which amount shall be specified in the agreement between the parties with respect to the Sale Company Retained Liability Amount (the "**Sale Company Current Tax Amount**")) no later than six (6) Business Days prior to the anticipated Closing Date. Notwithstanding the foregoing, in no event shall the Sale Company Retained Liability Amount include any amounts that were the subject of an adjustment pursuant to Section 4.6.5.  In addition, the amount of any deferred tax liabilities included in the Sale Company Retained Liability Amount shall be offset by the amount of any deferred tax assets of the Sale Company.  For purposes of clarification, and not limitation, the Sellers make no representation or warranty regarding the size of the deferred tax asset of the Sale Company as of December 31, 2006.

**4.6.8.  Capital Leases.** The Purchase Price shall be adjusted downward (other than for Capital Leases in which a Seller is the lessor) on a dollar-for-dollar by the total amount of the Liability under any Capital Leases assumed by the Purchasers as of the Closing.

**4.6.9.  Adjustment for U.S. Employee-Related Credit.** No later than two (2) Business Days prior to Closing, the Parties will agree as to the estimated amount of a downward reduction in the Preliminary Purchase Price ("**U.S. Employee-Related Credit**"), calculated pursuant to Schedule 4.6.9 of this Agreement and using the list of salaried Current Employees of the U.S. Operations to whom Purchaser has made offers of employment that have been accepted to be effective on the Closing Date (to be provided to Sellers by Purchaser under Section 3.1 of this Agreement) or that are otherwise reasonably expected to become a Hired Current Employee; subject to reasonable confirmation by Sellers following Closing that each such employee has become a Hired Current Employee.  The Purchase Price shall be adjusted downward at the Closing in the aggregate amount of the estimated U.S. Employee-Related Credit.  Following Closing, Purchaser will provide Seller with reasonable evidence confirming that each employee upon whose hiring the U.S. Employee-Related Credit was based became a Hired Current Employee. The Closing Date Statement delivered pursuant to Section 4.7.1.2 shall include a calculation of the actual U.S. Employee-Related Credit and such calculation shall be included for all purposes in determining the adjustment, if any, that should be made to the Purchase Price (as adjusted at Closing) as a result of the Closing Date Statement.  Any credit calculated under this Section 4.6.9 shall be allocated directly to a reduction in the purchase price allocated to the Filing Affiliates (other than DASHI) for purposes of Section 4.8 and Schedule 4.8.1.

**4.7.    Post-Closing Purchase Price Adjustments.**    The Purchase Price shall be adjusted following the Closing pursuant to, and in accordance with, the procedures set forth in this Section 4.7.

### 4.7.1.    General:

4.7.1.1.    Immediately following the Closing, Sellers and Purchasers will cooperate to conduct a joint physical inventory of the PGM Inventory (including substrates) and the volumes by weight of Owned PGMs, Consigned PGMs, Restitution Commitments and PGM Leases or Borrowings (the "**Closing PGM Inventory**") as of the Closing Date. Based on such physical review, the Sellers and Purchasers shall produce a report summarizing the results of such physical PGM Inventory with the details of the volumes by weight of the Owned PGMs, Consigned PGMs and Restitution Commitments and PGM Leases and Borrowings, if any, as of the Closing PGM Inventory date (the "**PGM Physical Inventory Report**"). Such physical inventory shall be conducted, and such PGM Physical Inventory Report shall be prepared, using the same procedures and appropriate methodologies as shown on Schedule 4.7.1.1 (including with respect to the timing set forth therein) provided that the Parties agree Schedule 4.7.1.1 is substantially complete but remains subject to further discussion and mutual refinement by the Parties. The Sellers and Purchasers shall mutually cooperate pre-Closing to prepare for the immediate post-Closing inventory. The PGM Physical Inventory Report shall form the basis for the calculation of the post-Closing adjustments 4.7.1.2 below. For clarity, it is understood that in respect of any physical inventory of the PGM Inventory called for by the terms of this Article 4 it shall not include a physical inventory of non-PGM Inventory (other than substrates) (e.g., fuel, spare parts, other consumables)

4.7.1.2.    Promptly after the Closing Date (but in any event no later than ninety (90) days after the Closing Date) Purchasers will prepare and deliver to Sellers a draft written statement as of the Closing Date for the Business on a combined, stand-alone basis showing the: (v) levels of Net Working Capital calculated in accordance with the Net Working Capital Methodology; (w) in respect of the PGM Inventory, of Owned PGMs (including Owned PGM Volume Targets and actual costs verified by customer commitments for all Owned PGMs), Consigned PGMs, Restitution Commitments and PGM Leases or Borrowings of the Business as of the Closing Date; (x) the actual Assumed PTO Obligations; (y) the Sale Company Retained Liability Amount as of the Closing Date; and (z) the total amount of the Liabilities assumed by Purchasers under the Capital Leases as of the Closing Date (the "**Closing Date Statement**") and the adjustment, if any, that should be made to the Purchase Price (as adjusted at the Closing) as a result of the Closing Date Statement. Such statement shall be prepared on a consistent basis with Schedules 4.6.1, 4.6.6 and 4.7.1.1. The Closing Date Statement shall be audited/reviewed as appropriate by the Auditor of the Closing Date Statement pursuant to a scope of limited audit or review and fee estimate which shall be mutually agreeable to the Parties prior to the commencement of such audit/review. The Parties shall cooperate in requesting that the Auditor of the Closing Date Statement complete such audit as soon as practicable following receipt of Closing Date Statement with a target completion date of not more than forty-five (45) days thereafter. The expense of this audit/review shall be shared equally by the Parties. It is the intent of the Parties under this Section 4.7 that based on the information contained in the Closing Date Statement, the Parties shall derive the final Closing Date figures for Net Working Capital (calculated in accordance with the Net Working Capital Methodology), Assumed PTO Obligations and the volume of Owned PGMs (and the actual costs verified by customer commitments), Consigned PGMs,

Restitution Commitments and PGM Leases and Borrowing, which figures and volumes may trigger post-Closing adjustments to the Purchase Price under the terms of Section 4.8 below.  The Purchasers shall grant Sellers and the auditors of the aforementioned items all necessary assistance and access to all relevant documents and Persons in order to audit and review the preparation of the Closing Date Statement.

**4.7.2.   Objections by Sellers; Consequence of No Objections.**  Within fifteen (15) days after receipt of the Closing Date Statement Sellers may notify Purchasers of an objection.  Any objection by Sellers shall only be deemed effective if and to the extent that the objection specifies the item against which the objection is raised.  If Sellers do not object within such fifteen (15) day period, the Closing Date Statement shall be deemed to be final and binding as against the Parties and accordingly shall constitute the "**Final Closing Date Statement**" for purposes of the post-Closing adjustments to be made to the Purchase Price under this Section 4.7.

**4.7.3.   Negotiated Settlement of Objections.**  If Sellers do object, Purchasers and Sellers shall meet or otherwise attempt in good faith to agree on the Closing Date Statement.  If the Parties do so agree, then the Closing Date Statement shall be deemed final and binding on the parties and accordingly shall constitute the "**Final Closing Date Statement**" for purposes of the post-Closing adjustments to be made to the Purchase Price under the terms of this Sections 4.7.

**4.7.4.   Arbitrated Settlement of Objections.**  If Sellers and Purchasers cannot agree on the Closing Date Statement within fifteen (15) days after Sellers have objected against items therein, the points in dispute shall be referred to an independent auditor to be mutually agreed by the Parties prior to the Closing Date to act as an independent arbitrator (the "**Arbitrator**").  The Arbitrator shall be a nationally or regionally recognized firm that is neither (i) then providing financial audit services to any Purchaser or Seller nor (ii) Deloitte and Touche.  The Arbitrator shall give Sellers and Purchasers adequate opportunity to present their arguments in writing and at a hearing or hearings (as the Arbitrator may decide) to be held in the presence of the Parties and their advisers (such arguments to be presented, and such hearing or hearings to be held, within thirty (30) days of the Arbitrator's appointment).

If and to the extent that the Arbitrator determines that objections by Sellers that could not be resolved by agreement between Purchasers and Sellers are justified, the Arbitrator shall amend the Closing Date Statement to assure that the Closing Date Statement has been prepared in a manner consistent with the provisions of this Article 4; provided, however, that the Arbitrator shall be bound by those items upon which Sellers and Purchasers have agreed, and further provided that with respect to each particular item the Arbitrator shall not exceed the range of dispute between Sellers and Purchasers.  The Arbitrator shall give a written decision addressing all such disputed issues. The Closing Date Statement reflecting any adjustments made as a result of the Arbitrator's decisions shall be deemed final and binding on the Parties and, accordingly, shall constitute the "**Final Closing Date Statement**" for purposes of the post-Closing adjustments to the Purchase Price to be made under the terms of this Section 4.7.  The Arbitrator shall render its decision no later than sixty (60) days from the date of its appointment.  The costs associated with the Arbitrator shall be shared equally by the Parties.

**4.7.5.   Payment Mechanics for Post-Closing Purchase Price Adjustments Generally.** Within three (3) Business Days following the date on which the Final Closing Date Statement is settled in accordance with the preceding provisions of this Section 4.7, final adjustments to the Purchase Price (as adjusted at Closing) and any further payments shall be made as follows.

**A.**     To the extent the aggregate or net amount of any such adjustments increases the Preliminary Purchase Price paid to Sellers at the Closing: (i) the Closing Escrow Agreement shall provide that the Escrow Agent shall release $5,000,000 of the Escrow Amount; plus (ii) Purchasers shall pay any additional amount needed to cover the balance of such increase in Purchase Price; in each case to Delphi on behalf of all the Sellers by wire transfer in immediately available funds (in U.S. Dollars) to the account designated by Delphi.

**B.**     To the extent any such adjustments decrease the Preliminary Purchase Price paid to Sellers at the Closing, the Closing Escrow Agreement shall provide that the Escrow Agent shall promptly pay up to $5,000,000 of the amount of such decrease to Umicore by wire transfer in immediately available funds to the account designated by Umicore on behalf of the Purchasers; provided, however, that, if the decrease is less than $5,000,000, an amount equal to the difference between $5,000,000 and the amount of such decrease shall be similarly disbursed to an account designated by Delphi on behalf of the Sellers.

**C.**     To the extent the aggregate amount of any such decrease in the Purchase Price as a result of the adjustments is greater than $5,000,000, Sellers shall promptly pay the amount by which such decrease exceeds $5,000,000 to Purchasers by wire transfer in immediately available funds in U.S. Dollars to the account designated by Umicore on behalf of the Purchasers.

**4.8.**   **Allocation of Purchase Price:**

**4.8.1.**   The Parties agree to allocate the Purchase Price (as adjusted pursuant to this Article 4) among the Purchased Assets and the agreements provided herein for transfer of the Business to Purchasers, for all purposes (including financial, accounting and tax purposes) (the "**Allocation**") in a manner consistent with the Allocation Schedule attached hereto as <u>Schedule 4.8.1</u>.

**4.8.2.**   Purchasers and Sellers shall each report the federal, state, local and foreign income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable Law.  Sellers shall provide Purchasers and Purchasers shall provide Sellers with a copy of any information required to be furnished either to the Secretary of the Treasury under Internal Revenue Code Section 1060, including Internal Revenue Service Form 8594 and any attachments or schedules relating thereto, or to any other relevant Tax authority in a non-U.S. jurisdiction.

**4.8.3.**   Any adjustments to the Purchase Price made in accordance with the foregoing provisions of this Section 4 shall be treated for income tax purposes as an adjustment to the Purchase Price and allocated in a mutually acceptable manner.

**5.**     **REPRESENTATIONS AND WARRANTIES:**

**5.1.**   **Warranties of Delphi and each Seller.**  (i) Each Seller that is a Non-Filing Affiliate, severally represents with respect solely to such Seller; and (ii) Delphi and each Seller that is a Filing Affiliate, jointly and severally represent with respect to each such Filing Affiliate as well as the Sale Company, to Purchasers as follows:

**5.1.1.    Organization and Good Standing.** Each Seller and the Sale Company is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization, and has all requisite corporate or other organizational power and, subject to any required Bankruptcy Court approval, authority to own, lease and operate its properties and assets and to carry on the Business as presently conducted, and is in good standing in all jurisdictions where it owns or leases real property or maintains stocks of business inventories relating to the Business or otherwise conducts the Business, except where the failure so to qualify or to be so licensed would not have a Material Adverse Effect.

**5.1.2.    Corporate Power; Due Authorization.** Subject to Bankruptcy Court approval, each Seller has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements, including the Transfer Documents, to which such Seller is a party, and to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated herein and therein.  Subject to Bankruptcy Court approval, the execution, delivery and performance of this Agreement and the Ancillary Agreements to which such Seller is a party, including the Transfer Documents by each of the Sellers party thereto and the consummation by each of the Sellers of the contemplated transactions have been duly authorized by all necessary action on the part of each Seller.  Subject to the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, this Agreement has been duly and validly executed and delivered by or on behalf of each of the Sellers and (assuming this Agreement constitutes a valid and binding obligation of Purchasers) constitutes a legal, valid and binding agreement of Sellers, enforceable against Sellers in accordance with its terms, and the Ancillary Agreements, including the Transfer Documents will be, when executed and delivered by the applicable Sellers who are parties thereto, the legal, valid and binding obligations of the Sellers parties thereto, enforceable against the Sellers parties thereto in accordance with their respective terms, in each case subject to applicable bankruptcy, reorganization, insolvency, moratorium and other Laws affecting creditors' rights generally from time to time in effect and to general equitable principles.

**5.1.3.    No Violations.** Except as set forth on Schedule 5.1.3, no consent, approval, authorization of, declaration, filing or registration with any Governmental Entity is required to be made or obtained by any of the Sellers in connection with the execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements, except for:  (i) consents, approvals, authorizations of, declarations or filings with, the Bankruptcy Court; and (ii) the filing of required notifications with Antitrust Authorities under applicable foreign Antitrust Laws and the receipt of any necessary approvals thereunder.  The items referred to in clauses (i) and (ii) of this Section 5.1.3 are hereinafter referred to as the "**Governmental Requirements**."

**5.1.4.    Sufficiency of Acquired Assets.** The Acquired Assets and the assets of the Sale Company comprise all of the assets Used in Connection with the Business, except for the Excluded Assets.

**5.1.5.    Personal Property; Condition of Personal Property:**

**A.    Title to Personal Property**. Except for the Personal Property leases and other Personal Property referred to in Schedule 5.1.5.A, each relevant Asset Seller has good, valid and marketable title to the Personal Property and Inventory included in the Acquired Assets, and the Sale Company has good, valid and marketable title to the

Personal Property and Inventory Used in Connection with the Business by the Sale Company, in each case free and clear of any Liens, except Permitted Liens.

        **B.**     **Condition of Personal Property.**  The Personal Property included in the Acquired Assets of each Asset Seller and of the Sale Company are in good condition or repair reasonably suitable and adequate for its present and intended use, reasonable wear and tear and routine maintenance excepted.

        **C.**     **Inventory.**  The Inventory included in the Acquired Assets or of the Sale Company will, as of the Closing, be located at the Listed Real Property, or at such other locations as are identified on Schedule 5.1.5.C and will be fit for the purpose for which it is ordinarily acquired, and, in the case of finished goods Inventory, merchantable in the Ordinary Course of Business in all material respects.

        **D.**     **Machinery, Equipment and Tools.**  Schedule 5.1.5.D sets forth a true and correct list of all machinery, equipment and capitalized tools with an acquisition value greater than U.S. $25,000, which are included in the Acquired Assets or owned by the Sale Company, or located at a Carved-Out Manufacturing Location, and in any case, Used in Connection with the Business.

        **5.1.6.**     **Litigation.** (i) Except for Claims raised in connection with the pendency of the Bankruptcy Cases and any Claims referred to in Schedule 5.1.6, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any Governmental Entity, or before any arbitrator) pending or, to any of the Sellers' Knowledge, threatened against or affecting any Seller or the Sale Company, the outcome of which would have, individually or in the aggregate, a Material Adverse Effect, nor is there any Order outstanding against any Seller or the Sale Company that would have a Material Adverse Effect, nor is there any suit, action, proceeding or investigation pending or, to any Sellers' Knowledge, threatened that challenges or seeks to enjoin, alter or delay the Sale; and (ii) assuming the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, no Purchaser (or any of its respective Affiliates) shall be subject to Claims, litigation or Liabilities in connection with the consummation of the sale of the Acquired Assets and Sale Securities.  For purposes of clarification, the phrase "consummation of the Sale of the Acquired Asset and Sale Securities" relates to the transactions contemplated by this Agreement and not to the Purchaser's post-closing operation of the Business.

        **5.1.7.**     **Intellectual Property Assets:**

        **A.**     Schedule 5.1.7.A.1 sets forth a true and complete list, including a complete identification of each patent, trademark registration, copyright registration and application therefor included in the Owned Intellectual Property.  Schedule 5.1.7.A.2 sets forth a true and complete list of all Licensed Intellectual Property; in each case included in the Acquired Assets or, in respect of the Sale Company, Used in Connection with Business. Schedule 5.1.7.A.3 sets forth a true and complete list, in all material respects, of all Software that is part of the Purchased Intellectual Property included in the Acquired Assets or in respect of the Sale Company, Used in Connection with the Business.  None of such Software contains any open source or copy left code.  The Purchased Intellectual Property constitutes all of the intellectual property Used in Connection with the Business as currently conducted, except for the Excluded Intellectual Property.  As of the date of this Agreement, there are no impediments to the ability of any Seller to maintain in effect or renew their respective rights, in all material respects, in and to the Purchased Intellectual

Property.  Sellers have taken commercially reasonable efforts to protect and maintain the confidentiality of the Trade Secrets and Know-How included in the Purchased Intellectual Property.  There are no impediments to the ability of any Seller under applicable Law to grant to Purchasers all material rights to the Purchased Intellectual Property that are contemplated in this Agreement.  Upon consummation of the transactions contemplated by this Agreement, Purchasers shall have the same rights in and to the Purchased Intellectual Property that Sellers had prior to the Closing.

**B.**     As of the date of this Agreement, Sellers are conducting the Business in a manner that does not, and the Products and services of the Business do not, infringe, misappropriate or violate the Intellectual Property right of another Person, which violation would reasonably be expected to result in a material Claim or loss.

**C.**     No Seller has granted any material license, sub-license or other permission to use the Owned Intellectual Property or the Licensed Intellectual Property to any third party, except as set forth on Schedule 5.1.7.C.

**D.**     Except as referred to in Schedule 5.1.7.D, Sellers have no Knowledge of any material Claim pending or threatened by any third party against any Seller or its Affiliates of Intellectual Property infringement or misappropriation resulting from the operation of the Business or the ownership or use by Sellers of the Purchased Intellectual Property during the two (2) years prior to the date on which the Bidding Procedures Order is issued by the Bankruptcy Court.

**E.**     Subject to Section 8.15, all Owned Intellectual Property is owned solely and exclusively by or on behalf of the applicable Asset Seller or the Sale Company, as the case may be, free and clear of any Liens thereon, other than Permitted Liens.

**F.**     Except as set forth in Schedule 5.1.7.F to the Knowledge of the Sellers, no third party is infringing, misappropriating, or violating any of the Purchased Intellectual Property.

**G.**     Neither the execution, delivery, or performance of this Agreement (or any of the Ancillary Agreements) nor the consummation of any of the transactions contemplated by this Agreement (or any of the Ancillary Agreements) will result in, or give any other Person the right or option to cause or declare, an impairment to the Purchased Intellectual Property or cause the release or distribution of any Purchased Intellectual Property to any third party.

**5.1.8.   Insurance.**   Schedule 5.1.8 contains a complete and correct list, in all material respects, of all material policies of insurance covering any of the assets primarily used in or relating to the Business, other than Excluded Assets, and any Seller Benefit Plans related to Current Employees indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder.  All such policies are outstanding and in full force and effect.

**5.1.9.   Compliance with Other Instruments and Laws; Permits.**   Except as provided in Schedule 5.1.9, the Business is in compliance with all Laws applicable to the conduct of the Business and all Permits, except where the failure to be in compliance would not have a Material Adverse Effect.  All Permits that are necessary for the conduct of the Business and the ownership

and operation of the Acquired Assets or the assets of the Sale Company have been duly obtained, and, except as indicated on Schedule 5.1.9, are in full force and effect, and there are no proceedings pending or, to Sellers' Knowledge, threatened, which may result in the revocation, cancellation or suspension, or any materially adverse modification, of any such Permit, except in each case as would not, individually or in the aggregate, result in a Material Adverse Effect.  The execution, delivery and performance of, and compliance with, this Agreement and the Ancillary Agreements by Sellers will not result in any such violation or be in conflict with or constitute a default under any Permit.

     **5.1.10.  Brokers.** Sellers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which any Purchaser would be liable.

     **5.1.11.  Consents and Approvals.** Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, assuming that the Governmental Requirements will be satisfied, made or obtained and will remain in full force and effect, and upon receipt of the consents, approvals and authorizations listed in Schedule 5.1.11, neither the execution, delivery or performance of this Agreement and the Ancillary Agreements by the Sellers parties thereto, nor the consummation by any Seller of the Sale, nor compliance by any Seller with any of the provisions hereof and of the Ancillary Agreements, will:  (i) result in any breach of any provisions of the articles of incorporation or bylaws or similar organizational documents of any Seller or the Sale Company; (ii) result in a violation, or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, amendment, vesting, payment, exercise, acceleration, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, loan or credit agreement, license, permit, contract, lease, agreement, plan or other instrument, commitment or obligation to which any Seller or the Sale Company is a party or by which such entity's properties or assets may be bound or affected; (iii) violate any order, writ, governmental authorization, injunction, decree, statute, rule or regulation applicable to any Seller or the Sale Company or to any properties or assets of any such entity; or (iv) result in the creation or imposition of any Lien other than Permitted Encumbrances on any asset of a Seller or the Sale Company, except in the case of clauses (ii), (iii) and (iv) above, for violations, breaches, defaults, terminations, cancellations, accelerations, creations, impositions, suspensions or revocations that are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

     **5.1.12.  ~~January~~July (6+6) Projections.** ~~The January~~ As set forth on Schedule 5.1.12, the July Projections represent the reasonable, good faith estimates of the Seller.  To the Knowledge of the Seller, the ~~January~~July Projections are not materially inaccurate (e.g., meaning inaccurate with respect to projections of contribution margin by a factor greater than Three Million Dollars (U.S. $3,000,000)).  The foregoing is not a guarantee of the ~~January~~July Projections.

     **5.1.13.  Events Subsequent to ~~January~~July Projections.**  Except as set forth on Schedule ~~5.1.13~~5.1.12 since the date of the ~~January~~July Projections or in the ~~January~~July Projections: (i) there has not been any event which had or could reasonably be expected to have a Material Adverse Effect; and (ii) the Business has been conducted and carried on only in the Ordinary Course of Business.

### 5.1.14. Contracts:

A.     Schedule 5.1.14.A lists all Contracts included in the Acquired Assets or to which the Sale Company is a party and that are used in or related to the Business, and: (i) which involve payment or performance obligations that individually exceed $250,000; (ii) are material agreements to which Sellers or any of their Affiliates is a party or by which any of them or any of their properties is bound that primarily relate to the Business (including license and distribution agreements and arrangements among any such Sellers, Affiliates and intra-divisional facilities or third parties), other than Accounts Receivable; (iii) are PGM leases to which the Sale Company is a party or to which a Seller is a party and that are used in or related to the Business; and (iv) are joint venture, stockholder and partnership agreements to which the Sale Company is a party or to which a Seller is a party and that are Used in Connection with the Business; and (v) all Capital Leases (all Contracts required to be listed on Schedule 5.1.4.A hereafter referred to as the "**Listed Contracts**"). Sellers have delivered or made available to Purchasers either: (i) true, correct and complete copies in all material respects; or (ii) accurate written descriptions in all material respects, of the Listed Contracts.

B.     Each of the Listed Contracts is valid, binding and, subject to payment of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchasers of such Listed Contracts under the Sale Approval Order, if applicable, enforceable against the applicable Seller, to the extent set forth therein, and, to Sellers' Knowledge, the other parties thereto, in accordance with its terms, and is in full force and effect.  Except as set forth on Schedule 5.1.14.B , and other than with respect to monetary defaults by Sellers under Listed Contracts that are curable by payment by Sellers of all Cure Amounts, if applicable, the applicable Seller, and to Sellers' Knowledge each of the other parties thereto, has performed all obligations required to be performed by it to date under, and is not in default in respect of, any of such Listed Contracts, and there is not a default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Sellers to assume and assign such Material Contracts to Purchaser, if applicable) thereunder or claim of default and there has not occurred any event which, with the passage of time or the giving of notice or both, would constitute a default thereunder, whether on the part of the applicable Seller or any of its Affiliates, or to Sellers' Knowledge, on the part of any other party thereto; in each case, other than where the failure to perform or such default would not have a material impact in respect of the individual Listed Contract or where such failures to perform or defaults would not, in respect of all of such Listed Contracts, measured in the aggregate, reasonably be expected to have a Material Adverse Effect.  Except as set forth in Schedule 5.1.14.B, and other than with respect to monetary defaults by Sellers under Listed Contracts that are curable by payment by Sellers of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchasers of such Listed Contracts under the Sale Approval Order, if applicable, to Sellers' Knowledge, Sellers have received no claim or notice from any other party to any such Listed Contract that any Delphi Affiliate has breached any obligations to be performed by it thereunder, or is otherwise in default or delinquent in performance thereunder, where the consequence of such breach or default would be reasonably expected to have a Material Adverse Effect.  Schedule 5.1.14.B identifies all Post-Petition Contracts included within the Listed Contracts other than open purchase orders  or other Contracts that do not meet the requirements of Listed Contracts and which were entered into in the Ordinary Course of Business.  Except as set forth on Schedule 5.1.14.B, none of the Post-Petition Contracts included within the Listed

Contracts contains any provisions restricting its assumption and assignment to Purchasers pursuant to the terms of this Agreement.

**5.1.15.  Regulatory Matters.** Except as set forth in Schedule 5.1.15, or to the extent not material to the operation of the Business or the manufacture or sale of the Product, no Seller is required to file or otherwise provide reports or data, other information or applications with respect to the Products with any federal, state or local governmental authorities with jurisdiction over the manufacture, use or sale of such Products, and no material regulatory approvals are required with respect to the manufacture or sale of such Products.

**5.1.16.  Real Property:**

**A.    Generally.**   Schedule 5.1.16.A lists all Real Property included in the Acquired Assets or that is owned, used or occupied by the Sale Company, is Used in Connection with the Business and which will be transferred to or leased by a Purchaser pursuant to this Agreement or any Ancillary Agreements (the "**Listed Real Property**"). Except as set forth on Schedule 5.1.16.A, all buildings, structures and other improvements to the Listed Real Property (the "**Improvements**") are in good condition and repair, adequate to operate such facilities as currently used and in compliance with all applicable Laws.  Except for those matters to be covered by the Transition Services Agreement  in accordance with Section 7.2.6, all utilities and other similar systems serving the Listed Real Property and the Improvements are installed and operating and are sufficient to enable the Listed Real Property and the Improvements to be used and operated in the manner currently being used and operated.  The use of the Listed Real Property used for manufacturing activities as currently used is a permitted use by right in the applicable zoning classification and is not a nonconforming use or a conditioned use, and no variances are needed and none have been granted with respect to such Real Property.  There are currently in full force and effect duly issued certificates of occupancy permitting the Listed Real Property to be legally used and occupied as the same are currently constituted.  The Listed Real Property has rights of access to dedicated public highways.  To Sellers' Knowledge, no fact or condition exists that would prohibit or adversely affect the ordinary rights of access to and from the Listed Real Property from and to the existing highways and roads, and there is no pending or, to Sellers' Knowledge, threatened restriction or denial, governmental or otherwise, upon such ingress and egress.  No Seller has received notice of: (a) any claim of adverse possession or prescriptive rights involving or affecting any Listed Real Property; (b) any structure located on any Listed Real Property that encroaches on or over the boundaries of neighboring or adjacent properties; or (c) any structure of any other person or entity that encroaches on or over the boundaries of any Listed Real Property. None of the Listed Real Property is located in a flood plain, flood hazard area, wetland or lakeshore erosion area within the meaning of any Law or order.

**B.    Marketable Title.** Except as set forth on Schedule 5.1.16.B, the applicable Seller has good and marketable fee title or equivalent title rights in non-U.S. jurisdictions or leasehold title (as applicable) to all of the Listed Real Property free and clear of all Liens except for Permitted Encumbrances.  None of the Listed Real Property is subject to any material restrictions with respect to the transferability or divisibility thereof. At the Closing, Sellers will convey to Purchasers good and marketable fee title or leasehold title (or local equivalent, as applicable) to all of the Listed Real Property, free and clear of all Liens other than the Permitted Encumbrances.

46

**C.**    **No Condemnation, Expropriation or Similar Action**. Neither the whole nor any portion of the Real Property included in the Acquired Assets is subject to any order to be sold and Sellers have received no notice, and have no Knowledge, that any of such Real Property is being condemned, expropriated or otherwise taken by any Governmental Entity with or without payment of compensation therefore and to the Sellers' Knowledge no such condemnation, expropriation or taking has been planned, scheduled or proposed.

**5.1.17.    Tax Matters:**

**A.**    The Sellers and the Sale Company have: (i) duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all Tax Returns required to be filed with respect to the Business and, when filed, each such Tax Return was true, correct and complete; (ii) timely paid all Taxes shown thereon as due and owing; and (iii) timely paid all other Taxes due with respect to the Business except where the failure to pay any such Taxes would not in the aggregate have a Material Adverse Effect on the financial condition of the Business.

**B.**    The Sellers and the Sale Company have withheld all Taxes required to have been withheld in connection with amounts paid or owing to any employee working within the Business and have timely paid all withholding and other employment and payroll Taxes to the appropriate federal, state, local and foreign authorities or governmental agencies, except where the failure to file or to pay such taxes would not in the aggregate have a Material Adverse Effect.

**C.**    Neither any Seller nor the Sale Company is a party to any Tax allocation, Tax sharing agreement or Tax indemnity arrangement, except as provided in this Agreement, under which a Purchaser could be subject to Tax or other Liability after the Closing, and the Sale Company is not liable for the Taxes of any other person or entity.

**D.**    Except as disclosed in Schedule 5.1.17.D, no claim has ever been made by an authority in a jurisdiction in which the Sale Company does not file Tax Returns that it is or may be subject to taxation by that jurisdiction or authority with respect to, in connection with, associated with or related to, the Sale Company; no agreements or waivers are outstanding extending the statutory period of limitations applicable to any Tax Return of the Sale Company; and the Sale Company has not received any: (i) notice of underpayment of Taxes or other deficiency that has not been paid with respect to, in connection with, associated with or related to, the Sale Company; or (ii) any objection to any Tax Return, with respect to, in connection with, associated with or related to, the Sale Company that would have a Material Adverse Effect on the Business.  Except as disclosed in Schedule 5.1.17.D, all deficiencies asserted or assessments made as a result of any examinations with respect to, in connection with, associated with or related to, the Sale Company have been fully paid or are fully reflected as a Liability in the financial statements of the Sale Company or the Sellers.

**E.**    The Sale Company is not a party to any agreement, contract arrangement or plan that has resulted or would result, separately or in the aggregate, in the payment of any excess parachute payments within the meaning of IRC Code Section 280G.

**F.**      There are no tax liens imposed upon the Sale Company or any of the Purchased Assets, except in the case of Filing Affiliate Taxes the payment of which may have been prohibited by the Bankruptcy Code.

**G.**      No transaction contemplated by this Agreement is subject to withholding tax under Section 1445 of the Code.  For purposes of disclosure only, to the Sellers' Knowledge <u>Schedule 5.1.17.G</u>, sets forth all sales Taxes, use Taxes, value added Taxes, stamp Taxes, excise Taxes, real estate transfer Taxes, withholding Taxes or other similar Taxes that might be imposed on the transfer of the Purchased Assets pursuant to this Agreement.

**H.**      None of the Purchased Assets is properly treated as owned by persons other than the relevant Seller for income Tax purposes, and none of the Purchased Assets is "tax-exempt use property" within the meaning of Section 168(h) of the Code.

**I.**      Neither the Sale Company nor any Seller with respect to the Business has participated in or cooperated with an international boycott within the meaning of Section 999 of the Code, nor have they had operations that are or may be reportable under Section 999 of the Code.

**J.**      All transactions and dealings between or among the Sale Company and any persons or entities related directly or indirectly to the Sale Company have occurred on arm's-length terms, as if between and among unrelated parties.  The Sale Company has complied in all material respects with any and all tax-related requirements that the arm's-length nature of the terms of such transactions and dealings be documented.

**K.**      Except as attached to <u>Schedule 5.1.17.K</u> regarding the Sale Company, there are no Tax rulings, request for rulings or closing agreements to which any Seller or the Sale Company is a party which relates or is applicable to the Business, the Acquired Assets or the Sale Company that could affect the Purchasers' Liability for Taxes for any period after the Closing Date.  During the period which Sellers owned the Sale Company, no Seller nor the Sale Company has taken any action not in accordance with past practice and not in the Ordinary Course of Business that would have the effect of deferring any Tax Liability for the Sale Company from any Taxable Period ending on or before the Closing Date to any taxable period ending after the Closing Date.

**L.**      The Sale Company has not been either a "distributing corporation" or a "controlled corporation" in a distribution of stock intended to qualify for tax-free treatment under Section 355 of the Code: (i) in the two (2) years prior to the date of this Agreement; or (ii) which otherwise could constitute part of a "plan" or "series of related transactions" (within the meaning of Section 355(e) of the Code) in conjunction with the transactions contemplated by this Agreement.

**M.**      The Sale Company is not a "passive foreign investment company" within the meaning of Section 1297(a) of the Code.

**5.1.18.** <u>**Capitalization of the Sale Company and Related Matters**</u>**:**

**A.**      The Sale Securities are owned by DASHI as set forth on <u>Schedule 5.1.18</u> to this Agreement.  The Sale Securities are duly authorized, validly issued, fully paid and

non-assessable (in those jurisdictions in which such concepts are applicable) and are not subject to any preemptive rights.  There are no voting trust agreements or other contracts, agreements or arrangements, to which DASHI is a party, restricting voting or dividend rights or transferability with respect to the Sale Securities.

**B.**     There is no outstanding security, right, subscription, warrant, option, privilege or other agreement, commitment or contract, preemptive, contractual or otherwise that gives the right to: (i) purchase or otherwise receive or be issued any share capital of the Sale Company or any security of any kind convertible into or exchangeable or exercisable for any share capital of the Sale Company; or (ii) receive or exercise any benefits or rights similar to any rights enjoyed by or accruing to a holder of share capital of the Sale Company, including any rights to participate in the equity or income of the Sale Company, or to participate in or direct the election of any directors of the Sale Company or the manner in which any share capital of the Sale Company are voted.

**C.**     DASHI owns and has good and valid title to the relevant Sale Securities free and clear of all Liens other than Permitted Liens of the type described in clause (iv) of the definition of Permitted Lien.

**5.1.19.  Employee Issues:**

**A.**     **Current Employees.**  Schedule 5.1.19.A contains a true and complete list of all Current Employees, and the information included on such Schedule as required by Section 3.1 above with respect to each such employee is true and complete.

**B.**     **Sellers' Performance.**  Each Seller (as applicable) has performed and discharged, in all material respects, its obligations with respect to all of the Current Employees and U.S. Corporate Employees, including working time, payment of wages and salaries, employer's contributions to any relevant social security, health, welfare and occupational pension scheme and payment of all other costs and expenses relating to the employment of such employees (any taxation, accrued bonus or other sums payable with respect to employment) or Retired Employees up to and including the Closing Date, except as otherwise set forth on Schedule 5.1.19.B.

**C.**     **Benefit Plans.**  Schedule 5.1.19.C lists all Benefit Plans in which the Current Employees or Retired Employees participate.  Except as set forth on Schedule 5.1.19.C, none of the Sellers nor the Sale Company maintains or has any obligation to contribute or provide benefits pursuant to an employee benefit plan applicable to any of the Current Employees, other than an obligation to contribute to a government required and/or collectively bargained program in accordance with applicable Laws or a Collective Bargaining Agreement.

(i)     **Delivery of Documents.**  Sellers have given access or delivered to Purchasers true, correct and complete copies of the following information with respect to each of the Benefit Plans: (a) the written plan document, if any, including all amendments thereto; (b) if there is not a written plan document, a written summary of the material terms and conditions of such Benefit Plan; and (c) if the Benefit Plan is funded through insurance or a trust, insurance or any third party funding vehicle, the insurance policy or contract of the trust or other funding agreement and the latest financial statements thereof.  Seller has provided

49

Purchasers with true and correct copies of any announcement to Current Employees regarding changes to any Benefit Plan not reflected in the applicable Benefit Plan documentation.

(ii)     **Compliance.**  Except as may be set forth in Schedule 5.1.19.C(ii): (a) with respect to each such Benefit Plan, all material reports and information relating to the Benefit Plan required to be filed with any Governmental Entity or provided to participants or their beneficiaries have been timely filed or disclosed and, when filed or disclosed, were true, correct and complete in all material respects, and all records related to such Benefit Plan have been accurately maintained in all material respects; (b) each Benefit Plan is and has been operated and maintained in compliance with all applicable Laws and in accordance with the provisions of such plan in all material respects; and (c) to the extent that any Benefit Plan provides for benefits which, under applicable Laws, must be reserved on the balance sheet of a Seller or the Sale Company or for which funds must be set aside or reserved, such reserves or funds for each such Benefit Plan meet the requirements under all applicable Laws or under the generally accepted accounting principles of the relevant jurisdiction.  No Benefit Plan is a multiemployer plan within the meaning of Section 4001(a)(3) of ERISA, nor has any Seller nor the Sale Company, or other element of the Business made, or been obligated to make, contributions to any multiemployer plan, either directly or as an ERISA Affiliate.

(iii)     **No Triggering of Obligations.**  Except for as set forth on Schedule 5.1.19.C(iii), the consummation of the transactions contemplated hereby will not: (a) entitle any current or former employee, director or independent contractor to severance pay, unemployment compensation or any other payment, except as expressly provided in this Agreement; or (b) accelerate the time of payment or vesting or increase the amount of compensation due to any current or former employee, director or independent contractor.

(iv)     **Funding of Benefit Plans.**  Except as set forth in Schedule 5.1.19.C(iv): (a) all contributions required to be made to a Benefit Plan by any plan document, any contractual undertaking or Laws, and all premiums due or payable with respect to any insurance policy funding any Benefit Plan and any required accumulated book reserves (e.g., pension accruals) have been made timely or paid in full; and (b) there exists no "accumulated funding deficiency" as defined in Section 302(a)(2) of ERISA or Section 412 of the Code, whether or not waived, and no "unfunded current liability" as determined under Section 412(l) of the Code exists with respect to any Benefit Plan.  Sellers have provided Purchasers with true and correct copies of the most recent actuarial valuations of any Benefit Plan.

**D.     Collective Bargaining Agreements.**     Schedule 5.1.19.D lists all Collective Bargaining Agreements.  Sellers have given access or delivered to Purchasers true, correct and complete copies of each of the Collective Bargaining Agreements.  Except for the Collective Bargaining Agreements, and except as disclosed on Schedule 5.1.19.D, neither any Seller nor any of its Affiliates has entered into any material written employment or consulting agreements that are obligations of the Business.  Sellers are in compliance in all material respects with each Collective Bargaining Agreement.

**E.**    **Grievance, Labor Negotiations.**    Except as disclosed on Schedule 5.1.19.E, or as reflected in the Collective Bargaining Agreements, with respect to the Business: (i) there is no labor strike, dispute, slowdown or stoppage relating to any of the employees actually pending or, to Sellers' Knowledge, threatened against or involving any Seller or the Sale Company relating to any of the Current Employees; (ii) neither any Seller nor the Sale Company has in the past three (3) years experienced any work stoppage or other labor difficulty or organizational activity relating to any of the Current Employees; (iii) no material labor grievance relating to any of the Current Employees is pending as of the date of Schedule 5.1.19.E; and (iv) neither any Seller nor any Affiliate has any labor negotiations in process with any labor union works council or other labor organization relating to the Business.    Except as set forth on Schedule 5.1.19.E, there are no pending material claims against any Seller or the Business whether under applicable Laws, employment agreements or otherwise asserted by any present employee or former employee of any other Person as relates to the Business, including claims on account of or for: (w) overtime pay, other than overtime pay for work done during the current payroll period; (x) wages or salary for any period other than the current payroll period; (y) any amount of vacation pay or pay in lieu of vacation or time off; or (z) any violation of any statute, ordinance or regulation relating to minimum wages or maximum hours at work, and, to Sellers' Knowledge, there are no such claims which have not been so asserted.

**F.**    **Works Councils and Other Staff Representative Bodies.**    Sellers have performed and discharged in all material respects its obligations with respect to Works Councils and other staff representatives, staff representative bodies and institutions representing all or part of the Current Employees.

**5.1.20.**    **Environmental Representations and Warranties.**    Except as otherwise set forth in Schedule 5.1.20, since January 1, 1999:

**A.**    At the time of Closing, the Listed Real Property and operations at such Listed Real Property are in material compliance with all applicable Environmental Laws.

**B.**    No Seller has received notice of, or has knowledge that any Environmental Claim relating to the Business or any Listed Real Property is pending or threatened.

**C.**    There have been no Releases of Hazardous Materials at, on, from or underneath any of the Listed Real Properties that would be reasonably likely to result in material Liability or require Remediation under Environmental Law.

**D.**    No aboveground or underground storage tanks have been located, stored, used, abandoned or disposed of on or under any Listed Real Property.

**E.**    Sellers have delivered or otherwise made available to the Purchasers copies of any Phase I or Phase II environmental assessments and any material reports, Governmental Entities' inspection reports, studies, analyses or test results or material correspondence with Governmental Entities in the possession or control of any Seller pertaining to Hazardous Materials in, at, on, beneath or adjacent to any Listed Real Property, or non-privileged reports regarding the Sellers' compliance with Environmental Laws in connection with the Business.

51

**F.**     No Listed Real Property, and, to Seller's Knowledge, no property to which Hazardous Materials originating on or from the Listed Real Property or from the Sale Company has been sent for treatment or disposal to a facility that is listed or proposed to be listed on the National Priority List or CERCLIS or on any other similar database or list maintained by a Governmental Entity.

**G.**     (i)  A list of all Permits required under Environmental Law to operate the Business as currently operated at the Listed Real Property is set forth in Schedule 5.1.20. The Sellers are in compliance with all such Permits required to be set forth on Schedule 5.1.20.

(ii)    Except as set forth in Schedule 5.1.20, Sellers have timely filed applications for such Permits at the Listed Real Property required under Environmental Laws.

**5.1.21.  Product Claims.**  In the three (3)-year period prior to the date of this Agreement, no Seller nor the Sale Company has received in connection with any product manufactured, sold or distributed by any of them related to the Business any material claim in writing of personal injury, death or property damage, any material claim for punitive or exemplary damages, any material claim for contribution or indemnification or any material claim for injunctive relief other than claims that were resolved at the business level by credit or replacement of goods or allowance therefor.

**5.1.22.  Accounts Receivable.**  The Accounts Receivable (including all of the Trade Receivables other than the Excluded Trade Receivables) of the Business and of the Sale Company and included in the Purchased Assets represent or will represent valid obligations arising from sales of Products or services performed in the Ordinary Course of Business.  Six (6) Business Days prior to the anticipated Closing Date, Sellers shall deliver to the Purchasers Schedule 5.1.22 setting forth an Account Receivables aging report of the Business as of such date.

**5.1.23.  Absence of Other Representations or Warranties.** Except for the Warranties expressly set forth in this Agreement and the Ancillary Agreements, no Seller makes any representations or warranties, express or implied, with respect to the Acquired Assets, the Assumed Liabilities, the sale of the Sale Securities or the Business, and in particular but without limitation Sellers are making no representations with respect to any plan(s) of Purchasers for the future conduct of the Business.  For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or other information not contained in this Agreement or the Ancillary Agreements, or on any projected volumes of the Business (other than the January Projections as expressly set forth herein), all which were produced only for information purposes.

**5.2.    Warranties of Purchasers.** Purchasers warrant and represent, jointly and severally, to Sellers as follows:

**5.2.1.    Corporate Data.**  Each Purchaser is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and has all requisite corporate or other organization power and authority to own, lease and operate its properties and assets.  Each Purchaser has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted and is duly qualified or licensed to do business and is in good standing in the jurisdictions in which the

ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Purchasers to consummate the transactions contemplated by this Agreement.

**5.2.2.   Corporate Power; Due Authorization.**   Each Purchaser has the requisite corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements to which such Purchaser is a party, including the Transfer Documents, and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated herein and therein.  The execution, delivery and performance of this Agreement and the Ancillary Agreements, including the Transfer Documents, have been duly authorized by all necessary action on the part of each Purchaser that is a party thereto.  This Agreement is, and the Ancillary Agreements, including the Transfer Documents, to which a Purchaser is a party, will be, when executed and delivered (assuming this Agreement constitutes a legal, valid and binding obligation of the Sellers), valid and legally binding obligations of such Purchaser, enforceable against such Purchaser in accordance with their respective terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or proceedings affecting the enforcement of creditors' rights generally and by the availability of equitable remedies and defenses.

**5.2.3.   No Violations.**   Neither the execution, delivery or performance of this Agreement by Purchasers, nor the consummation by Purchasers of the transactions contemplated herein, nor compliance by Purchasers with any of the provisions hereof, will:  (i) except for the Governmental Requirements, require Purchasers to obtain any consent, approval or action of, or make any filing with or give notice to, any domestic or foreign governmental or regulatory body or any other Person; (ii) conflict with or result in any breach of any provisions of the certificate of incorporation or bylaws of any Purchasers; (iii) result in a violation or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, acceleration, vesting, payment, exercise, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, license, contract, agreement, plan or other instrument or obligation to which any Purchaser is a party or by which any Purchaser or its properties or assets may be bound or affected; (iv) violate any order, writ, injunction, decree, statute, rule or regulation applicable to any Purchaser or its properties or assets; or (v) result in the creation or imposition of any Lien on any asset of Purchasers.

**5.2.4.   Consents and Approvals.**   Except for Governmental Requirements, no consent, approval or authorization of, or declaration, filing or registration with, any domestic or foreign government or regulatory authority is required to be made or obtained by Purchasers in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated herein.

**5.2.5.   Litigation.**   Except for Claims raised in connection with the pendency of the Bankruptcy Cases, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any Governmental Entity, or before any arbitrator) pending or, to the knowledge of Purchasers, threatened against or affecting Purchasers which could reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchasers from consummating the transactions contemplated by this Agreement.

**5.2.6.**   **Brokers.**  Purchasers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which any Seller would be liable.

**5.2.7.**   **Solvency.**   Upon the consummation of the transactions contemplated by this Agreement: (i) none of the Purchasers will be insolvent; (ii) none of the Purchasers or other legal entities constituting the Business will be left with unreasonably small capital; (iii) none of the Purchasers or the Business will have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of the Purchasers and the other legal entities constituting the Business will not be impaired; and (v) immediately following Closing, Purchasers, individually and in the aggregate, will have sufficient capital to continue the Business as a going concern (it being understood that Purchasers will have no obligation to continue all or any portion of the Business as a going concern, subject to Purchasers' obligations to perform covenants and otherwise fulfill its commitments made pursuant to this Agreement).

**5.2.8.**   **Availability of Funds.**  Purchasers have the financial ability and will have available, at Closing, sufficient cash in immediately available funds to pay the Preliminary Purchase Price and thereafter to pay the Purchase Price if greater than the Preliminary Purchase Price, and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement.  Purchasers expressly acknowledge and agree that its obligation to consummate the transactions contemplated by this Agreement and the Ancillary Agreements is not subject to any condition or contingency with respect to financing.

**5.2.9.**   **Investment Intent:**

**5.2.9.1.**   The applicable Purchaser who is acquiring the Sale Securities is acquiring the Sale Securities for its own account, solely for the purpose of investment and not with a view to, or for sale in connection with, any distribution thereof in violation of the Securities Act or any applicable securities Laws of any other jurisdiction.

**5.2.9.2.**   Umicore is an "accredited investor" as defined in Rule 501(a) promulgated under the Securities Act.

**5.2.9.3.**   Umicore understands that the acquisition of the Sale Securities to be acquired by it pursuant to the terms of this Agreement involves substantial risk.  Umicore and its officers have experience as an investor in securities and equity interests of companies such as the ones being transferred pursuant to this Agreement and acknowledges that it can bear the economic risk of its investment and has such knowledge and experience in financial or business matters that Purchaser is capable of evaluating the merits and risks of its investment in the Sale Securities to be acquired by it pursuant to the transactions contemplated hereby.

**5.2.9.4.**   The applicable Purchaser understands that the Sale Securities to be acquired by it hereunder have not been registered under the Securities Act of 1933, as amended, on the basis that the sale provided for in this Agreement is exempt from the registration provisions thereof, and agrees that such securities may not be transferred unless such transfer is pursuant to an effective registration statement under the Securities Actor under the applicable securities Laws of any other jurisdiction, or, in each case, an applicable exemption therefrom.

**5.2.10.  Compliance with Law.**  Purchasers are in compliance with all Laws applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting any Purchaser from consummating the transactions contemplated by this Agreement.

**5.2.11.  Anti-Money Laundering.**  Each Purchaser is in material compliance with all applicable provisions of: (i) the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C.  1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemy Act ( 50 U.S.C.  50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which such Purchaser operates or does business.  Neither any Purchaser nor any of their directors, officers or Affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and no Purchaser is affiliated in any way with, or providing financial or material support to, any such persons or entities.  Purchasers agree that should they, or any of their  respective directors, officers or affiliates be named at any time prior to the Closing on the SDN List, Purchasers shall inform Sellers in writing immediately.

**5.2.12.  Adequate Assurance of Future Performance.**  Purchaser has provided or will be able to provide, at or prior to the Sale Hearing, adequate assurance of its future performance under each Assumed U.S. Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance will be necessary thereunder with respect to any Assumed U.S. Contract.

**5.2.13.  Shelf Tulsa Collective Bargaining Agreement.**  The Shelf Tulsa Collective Bargaining Agreement is attached hereto as Schedule 5.2.13.

**6.  CONDITIONS TO CLOSING:**

**6.1.  Conditions to Obligations of Sellers and Purchasers.** The respective obligations of each Party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver by both Parties at or prior to the Closing Date of the following conditions precedent:

**6.1.1.  Sale Approval Order.**  The Sale Approval Order, in form and substance reasonably satisfactory to Purchasers, shall be entered by the Bankruptcy Court onto the court docket and shall not be subject to a stay or injunction.

**6.1.2.  No Law, Judgments, etc.**  Subject to Section 9.1.2 and other than matters within the scope of Section 6.1.3, (a) no Law, injunction, judgment or ruling enacted, promulgated, issued, entered amended or enforced by any Governmental Authority shall be in effect enjoining, restraining, preventing or prohibiting consummation of the transactions or making the consummation of the transactions contemplated by this Agreement illegal;  (b) Sellers shall have completed any required information and consultation process with the Works Councils and (c) Purchasers and Sellers shall each be reasonably satisfied (I) that the sale of the Acquired Assets and

Sale Securities will not be rescinded or voided, and (II) that no Purchaser (or any of its respective Affiliates) is reasonably likely to be subject to Claims, litigation or Liabilities in connection with the consummation of the transactions contemplated by this Agreement for which such Purchaser (or its respective Affiliates) has not received adequate indemnification or other reasonable protection. In the event that the Purchaser is not reasonably satisfied that it (or its Affiliates) has received such adequate indemnification (including with respect to the limits on such coverage and/or the types of damages for which the Purchaser (or its Affiliates) shall be covered) or other reasonable protection, then the parties shall work together in good faith to provide for such indemnification or other reasonable protection as the Purchaser reasonably believes is adequate.

6.1.3. **Approvals by Antitrust Authorities.** All competition filings, required to be made under any Antitrust Law by the Parties jointly, or individually by either of the Parties or any of their Affiliates, in any jurisdiction in connection with the transactions contemplated by this Agreement shall have been made and the consents, approvals and authorizations shall have been obtained and remain in full force and effect or required waiting periods shall have expired or been terminated.

6.1.4. **Other Approvals.** Any and all Governmental Entity consents, approvals, authorizations, declarations, filings and registrations required to assign the Purchased Assets to the appropriate Purchasers shall have been duly obtained.

6.2. **Conditions to Obligations of Purchasers.** The obligation of Purchasers to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Purchasers):

6.2.1. **Accuracy of Warranties.** Except as otherwise permitted by this Agreement or a Transfer Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Sellers contained in this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein) shall be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time) except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect. Subject to the preceding sentence, Sellers may update or supplement the Disclosure Schedule prior to Closing by notice to Purchasers, but any such update or supplement shall not be taken into account in determining whether the condition set forth in this Section 6.2.1 has been satisfied. Any claim that Purchasers may have based on matters disclosed by Sellers in such updated and supplemented Disclosure Schedule will be deemed waived by Purchasers if Purchasers nonetheless complete the transactions contemplated herein or in the Transfer Agreements.

6.2.2. **Material Adverse Effect.** Since the date of the ~~January~~July Projections and up to and including the Closing, there shall not have been any event, circumstance, change or effect that, individually or in the aggregate, has, had or likely will have a Material Adverse Effect and the Sellers shall have conducted the Business in the Ordinary Course of Business.

6.2.3. **Ancillary Agreements and Performance of Covenants.** Each of the Ancillary Agreements to which any Seller is a party shall have been executed and delivered by such Sellers to Purchasers on terms reasonably satisfactory to Purchasers, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by any Seller on or before the Closing shall have been performed in all material respects, subject to Purchaser's performance of its obligations under Section 5.2.12.

**6.2.4.**   **Other Approvals; Cure Amounts.** The third party and Governmental Entity consents, approvals, authorizations, declarations, filings and registrations required to assign the Purchased Assets to the appropriate Purchasers including those required to be set forth in Schedules 5.1.3, 5.1.11 or 5.1.14.A and that the Purchasers reasonably believe are necessary or otherwise material to the Business shall have been received and all consents, approvals and filings in connection with non-competition related Governmental Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Purchasers and any Cure Amounts required to be paid for effective assignment and assumption of the U.S. Assumed Contracts shall have been paid, otherwise resolved by Sellers with the consent of the other parties to such Assumed U.S. Contracts, or absent such consent, by Final Order of the Bankruptcy Court. As used in this section, "material" shall *not* mean having or reasonably likely to have an impact of more than $1,000,000.

**6.2.5.**   **CBA.**   That certain Shelf Collective Bargaining Agreement shall be put in full force and effect effective as of the Closing Date and shall not have been amended, modified, terminated or waived in any respect without Purchasers' consent.

**6.2.6.**   **Sale Company Debt.**   The Sale Company's Debt shall be retired, exhausted or repaid in a mutually agreeable manner.

**6.2.7.**   **Florange Pre-emptive Right.**   The *declaration d'intention d'aliéner* shall have been properly filed as soon as practicable following the date hereof and, in any event, no later than June 15, 2007, with respect to the Listed Real Property located in Florange, France and such Listed Real Property shall no longer be subject to a pre-emptive or similar right in favor of any French Governmental Entity.

**6.2.8.**   **Closing Deliveries.**   Purchasers shall have received from Sellers all of the instruments, documents and considerations described in Sections 7.2 and 7.3 other than any of such items not received solely due to Purchasers' failure to perform under Section 5.2.12.

**6.3.**   **Conditions to Obligations of Sellers.** Except as otherwise permitted by this Agreement or a Transfer Agreement, the obligation of Sellers to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Sellers):

**6.3.1.**   **Accuracy of Warranties.**   The representations and warranties of Purchasers contained in this Agreement shall be true and correct in all material respects as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on Purchasers' ability to consummate the transactions contemplated by this Agreement.

**6.3.2.**   **Ancillary Agreements Performance of Covenants.** Each of the Ancillary Agreements to which any Purchaser is a party shall have been executed and delivered by such Purchaser to Sellers on terms reasonably satisfactory to Sellers, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by any Purchaser on or before the Closing shall have been performed in all material respects.

**6.3.3.**   **Closing Deliveries.**   Sellers shall have received from Purchasers all of the instruments, documents and considerations described in Sections 7.2 and 7.4.

7.    **CLOSING:**

    **7.1.**    **The Closing.** Subject to the terms and conditions of this Agreement, the closing (the "**Closing**") of the transactions contemplated hereby shall take place at the offices of Delphi at 10:00 a.m. on the second (2nd) Business Day after the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree.  For tax and accounting purposes, the effective time of the transaction shall be 11:59 p.m. ET on the Closing Date.  The Parties shall use commercially reasonable efforts to schedule the Closing for the last Business Day of the month. The Closing of the Ancillary Agreements shall take place simultaneously with the Closing or on a later date if mutually agreed by the relevant Seller and relevant Purchaser.

    **7.2.**    **Ancillary Agreements.** The Parties shall execute and deliver to each of the applicable Sellers and Purchasers the following agreements on mutually agreeable terms and other documents necessary to effect the transactions contemplated by this Agreement (the "**Ancillary Agreements**").

    **7.2.1.**    Transfer Agreements and/or assignments necessary for the Sellers to transfer to Purchasers the Purchased Intellectual Property and the Fuel Reformer Patent Rights set forth on Schedule 7.2.1 (the "**Fuel Reformer Patents**"), including any forms required to be filed with any applicable Governmental Entity in respect of Intellectual Property transfers and assignments.

    **7.2.2.**    Fuel Reformer Patent License between certain Purchasers and certain Sellers pursuant to which Purchasers shall grant Sellers a non-exclusive, worldwide license, with limited rights to sublicense those certain Fuel Reformer Patents on the terms set forth in Schedule 7.2.2 (the "**Fuel Reformer Patent License**").

    **7.2.3.**    To the extent that equity interests of the Sale Company are represented by stock certificates, DASHI shall deliver to the Securities Purchaser original certificates evidencing the Sale Securities (to the extent applicable in the respective jurisdiction), which certificates shall be duly endorsed for transfer or accompanied by duly executed stock transfer powers or other appropriate instruments of assignment and transfer in favor of such Purchasers or their permitted assigns.

    **7.2.4.**    Transfer Agreements for Acquired Assets of certain Business locations (including France and China) in each case in form and substance to the reasonable satisfaction of the parties.

    **7.2.5.**    Transfer Documents, including for: (i) Listed Real Property (e.g., lease assignments or special warranty deeds in the U.S. or their equivalent in other jurisdictions); (ii) Contracts; (iii) Permits; and (iv) the Acquired Carved-Out Location Assets in each case reasonably satisfactory to the Parties in form and substance.

    **7.2.6.**    Transition Services Agreement substantially in the form attached hereto as Schedule 7.2.6 ("**Transition Services Agreement**").

    **7.2.7.**    The Atmospheric Catalyst License substantially in the form of Schedule 7.2.7.

    **7.2.8.**    Testing Services Agreements covering the provision by the Sellers of long-term testing services to the Purchasers at the Bascharage, Luxembourg site and short-term testing services to the Purchaser at the Flint, Michigan site (each such agreement a "**Testing Services Agreement**", and, collectively, the "**Testing Services Agreements**") containing the terms set forth

in the draft agreements attached as Schedule 7.2.8(i) (Luxembourg) and Schedule 7.2.8(ii) (Flint) and such additional terms as the Parties shall agree.

7.2.9.    Canning Supply Agreements pursuant to which the Purchasers supply Products to the Sellers' canning operations in: (i) Shanghai, China; and (ii) Clayton, Australia (each a "**Canning Supply Agreement**"), containing the terms set forth in the draft agreements attached as Schedule 7.2.9(i) (Shanghai) and Schedule 7.2.9(ii) (Clayton) and such additional terms as the Parties shall agree.

7.2.10.    Toll Manufacturing Agreements covering each of Shanghai, China, Clayton, Australia and San Luis Potosi, Mexico between the Purchasers and Sellers pursuant to which the Sellers shall provide certain manufacturing services at such location, to the Purchasers (each such agreement a "**Toll Manufacturing Agreement**", and, collectively, the "**Toll Manufacturing Agreements**"), containing the terms set forth in the draft agreements attached as Schedule 7.2.10(i) (Shanghai), Schedule 7.2.10(ii) (Clayton) and Schedule 7.2.10(iii) (San Luis Potosi) and such additional terms as the Parties shall agree.

7.2.11.    The Closing Escrow Agreement between Sellers, Purchasers and the Escrow Agent, substantially in the form of Schedule 7.2.11.

7.2.12.    To the extent Sellers require a separate assumption agreement or other document(s) pursuant to which the relevant Purchasers assume the Assumed Liabilities under Section 7.4.2 below, the form of same shall be reasonably satisfactory to Purchasers and Sellers.

7.3.    **Sellers' Other Deliveries.**  At the Closing, in addition to the Ancillary Agreements covered by Section 7.2, Sellers shall deliver to Purchasers the following, in proper form for recording where appropriate, and in each case, in form and substance reasonably satisfactory to the Purchasers:

7.3.1.    An officer's certificate, dated as of the Closing Date, executed by Delphi on behalf of all the Sellers, certifying that the conditions specified in Section 6.2 have been fulfilled.

7.3.2.    A certificate, dated as of the Closing Date, executed by Delphi on behalf of all the Sellers by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of each Seller's Organizational Documents; (ii) a true and correct copy of the resolutions of each Seller's board authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which such Seller is a party and the consummation of the transactions contemplated hereby and thereby; and (iii) incumbency matters.

7.3.3.    Certified copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

7.3.4.    Appropriate receipts.

7.3.5.    The minute books and other corporate, partnership or limited liability company record books of the Sale Company.

7.3.6.    Resignations of all directors (or equivalent) and officers of the Sale Company, except as otherwise requested by Purchasers no less than six (6) Business Days prior to the Closing Date.

**7.3.7.**    Releases from any third party having a Lien on any of the Purchased Assets other than Permitted Liens.

**7.3.8.**    All Technical Documentation in accordance with the provisions of Section 8.6 below.

**7.3.9.**    A certificate of non-foreign status pursuant to Treasury Regulation Section 1.1445-2(b)(2) with respect to each Seller transferring a United States real property interest (within the meaning of Section 897(c) of the Code).

**7.3.10.**  All other documents and papers reasonably requested by Purchasers to effect the transactions contemplated hereby.

**7.4.**    **Purchasers' Deliveries.**    At the Closing, Purchasers shall deliver to Sellers, in proper form for recording where appropriate, and in each case, in form and substance reasonably satisfactory to the Sellers:

**7.4.1.**    The Purchase Price to be paid at Closing as required by, and in accordance with, Section 4.4.

**7.4.2.**    An appropriate assumption agreement or other document or documents pursuant to which the relevant Purchasers assume the Assumed Liabilities.

**7.4.3.**    An officer's certificate, dated as of the Closing Date, executed by Umicore on behalf of all the Purchasers, certifying that the conditions specified in Section 6.3 have been fulfilled.

**7.4.4.**    A certificate, dated as of the Closing Date, executed by Umicore on behalf of all the Purchasers by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Purchasers' Organizational Documents; (ii) a true and correct copy of the resolutions of the Purchasers' board authorizing the execution, delivery and performance of this Agreement by Purchasers and the consummation of the transactions contemplated hereby; and (iii) incumbency matters.

**7.4.5.**    All other documents and papers reasonably requested by Sellers to effect the transactions contemplated hereby.

**7.5.**    **Post-Closing Deliveries.**    Promptly following the Closing, Seller shall deliver signature cards from all banks or financial institutions with which the Sale Company has any account, designating signatures approved by the Purchasers.

**7.6.**    **Sale Company.**  At Closing, the Sellers shall perform the following obligations, in each case, with effect from Closing:

**7.6.1.**    Seller shall deliver to Purchaser definitive certificates for the Shares, together with a share transfer form, in a mutually agreeable form, in respect of the shares duly executed by the registered holder in favor of the relevant Purchaser; and

**7.6.2.**    Seller shall deliver to Purchaser written resignation(s) of any Seller representatives as directors of the Company (to take effect from the Closing).

60

**7.6.3.**    Seller shall obtain the approval of the directors of the Company which: (i) accepts the resignations of the director(s) whose resignation is required in terms of Section 7.6.2 and duly appoints Purchaser representatives whose names have been provided to Seller at least five (5) Business Days before Closing as additional directors of the Company; (ii) approves the transfers of the shares from Seller to Purchaser (subject to their being duly stamped); and (iii) approves the placing of Purchaser's name on the Company's register of members in accordance with the share transfer form delivered and authorizes the issue of a new share certificate to Purchaser.

## 8.    **CERTAIN ADDITIONAL COVENANTS**:

### 8.1.    **Certain Pre-Closing Matters**:

**8.1.1.**    Prior to the Closing, Sellers shall afford the officers, employees, accountants, attorneys and authorized representatives of Purchasers reasonable access at reasonable business hours and upon reasonable prior request to the facilities, properties, books, personnel, and records of the Sellers and the Sale Company in order that Purchasers may have the opportunity to determine the amounts of the Purchase Price adjustments set forth in Article 4 (including a financial audit to determine the Sale Company Retained Liability Amount) and to facilitate Day 1 readiness and integration planning.

**8.1.2.**    Prior to the Closing, Sellers shall: (i) furnish Purchasers with such additional material, including financial and operating data and other information relating to the Business, as Purchasers may reasonably request from time to time including access to all Contracts (including Contracts with customers, suppliers and consultants) and any amendments, modifications or waivers with respect thereto (each a, "**Contract Modification**"); and (ii) upon the request of any Purchaser, cooperate with Purchasers (including by waiving any applicable confidentiality restrictions) to arrange meetings between Purchasers and customers or suppliers of any Seller in accordance with the Purchaser Confidentiality Agreement.  Purchasers shall be permitted to disclose the terms of this Agreement to any such customer or supplier, as appropriate, to provide assurances to such customer or supplier with respect to the continued viability of the Business after the Closing.

**8.1.3.**    Prior to the Closing and as soon as reasonably practicable, the Parties will finalize all steps needed to organize the transactions contemplated by this Agreement and facilitate the drafting and negotiation of all of the Ancillary Agreements which, by the terms of Section 7.2 above, are required to effect the Closing.

**8.1.4.**    Prior to the Closing, Sellers shall allow the Purchasers and its representatives, in accordance with the terms of an Environmental Right of Access Agreement dated on or about March 30, 2007 between the Parties, access to its facilities, real property, books, records and personnel for purposes of completing the Purchasers' environmental, health and safety review, including, without limitation, such Phase I and Phase II assessments as required by the Purchasers; provided, however, that the results of such Phase I and Phase II assessments will not specifically provide any Purchaser with a right to rescind this Agreement and provided further that the foregoing shall not limit, modify or amend any other provision of this Agreement or any Purchaser's rights with respect thereto.

**8.1.5.**    Within fifteen (15) Business Days following the last day of each calendar month prior to Closing, the Sellers shall provide in a form reasonably acceptable to the Purchaser: (i) a summary of the Sellers' Net Working Capital (calculated in accordance with the Net Working

Capital Methodology) and PGM inventory as of the last Business Day of the preceding calendar month; and (ii) a reasonably detailed summary of the Seller's capital investments during the prior calendar month.

~~8.1.6.    If, prior to the Closing, the Sellers demonstrate the effectiveness of operational initiatives that have the effect of decreasing the volumes of PGM required to operate in the Ordinary Course of Business, then the Parties shall work together in good faith to determine appropriate adjustments to target levels.  Any resulting change in the Owned PGM Volume Target shall be reflected in an amendment to the Agreement adopted pursuant to Section 13.7.  For information purposes only, Schedule 8.1.6 sets forth further background information on currently contemplated initiatives and possible adjustment methodology to be applied in such situation.~~

**8.1.6.**    ~~8.1.7.~~  The Parties will use all commercially reasonable efforts to complete all Ancillary Agreements as soon as practicable.

**8.1.7.**    ~~8.1.8.~~ The Parties agree that the definition of Net Working Capital includes certain other current assets and other current liabilities of the type that are set forth on the attached Schedule ~~8.1.8~~8.1.7, but that have yet to be finally determined.  All of the assets and liabilities set forth on Schedule ~~8.1.8~~8.1.7 were taken into account in setting the Net Working Capital Target. The Parties shall work together in good faith as soon as reasonably practicable  to determine which of such assets and liabilities on Schedule ~~8.1.8~~8.1.7 are properly included within the definition of the Net Working Capital and, if appropriate, to adjust the Net Working Capital Target to reflect such discussions.

**8.1.8.**    ~~8.1.9.~~ The Parties shall work together in good faith to consider any amendments or modifications to this Agreement as are required in connection with Delphi's possible transition of any portion of the operations of the Business from one existing location to any other existing location of the Business.

**8.2.**    **Joinder of Additional Seller Parties.**  Notwithstanding anything to the contrary contained herein, no later than five (5) Business Days prior to the Closing, Delphi shall cause each Delphi Affiliate listed in Schedule 1 that is not a signatory hereto as of the date hereof, to execute and deliver to Umicore counterpart signature pages to this Agreement in the form of Schedule 8.2.  Upon Umicore's execution and delivery of each counterpart signature page, each such Person shall be considered a "Seller" for all purposes under this Agreement effective as of the date hereof.  Notwithstanding the foregoing, in the event that the Parties mutually agree that applicable Law or other considerations require an alternative approach to ensuring that the appropriate Delphi Affiliates are bound to the obligations set forth with respect to such Affiliates hereunder, the Parties shall work together in good faith to adopt an alternative approach to this Section 8.2 including through agreement on the terms of mutually satisfactory local transfer agreements.

**8.3.**    **Bankruptcy Actions:**

**8.3.1.**    The Bidding Procedures are set forth in Section 11.  Promptly after the execution of this Agreement, Delphi shall, and shall cause the other Sellers that are Filing Affiliates to, file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking, and thereafter diligently pursue and defend, approval of the Bidding Procedures Order and the Sale Approval Order.  In the event that the Bidding Procedures Order is not entered on or before July 9, 2007 absent any material default by Purchasers hereunder, Purchasers may choose to withdraw this Agreement, and neither party hereto will have any further Liability to the other arising from this Agreement.

**8.3.2.**    Delphi shall use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Bankruptcy Rules, as modified by order, if any, of the Bankruptcy Court, in connection with obtaining approval of the sale of the Purchased Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Approval Motion, the Sale Hearing (as hereinafter defined) and all applicable objection deadlines in accordance with Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**8.3.3.**    With respect to any and all proceedings before the Bankruptcy Court, Sellers agree: (i) that they will take no action inconsistent with the terms of this Agreement; (ii) that they will take any actions and make any filings with the Bankruptcy Court necessary and prudent to ensure that the indemnification obligations of any Seller under this Agreement are fully funded and are not impacted or mitigated in any respect by the Bankruptcy Court; (iii) that such indemnification obligations survive in full any bankruptcy reorganization of any Seller; and (iv) that any Plan of Reorganization filed with or approved by the Bankruptcy Court with respect to any Seller will contain no provisions inconsistent with such Seller's obligations and duties under this Agreement.

**8.4.    Registrations, Filings and Consents; Further Actions:**

**8.4.1.**    As soon as practicable after the date hereof as requested by a Purchaser, each of the Parties shall: (i) promptly file all notifications, filings and other documents required in connection with all Antitrust Authorities and other regulatory approvals referred to in Sections 6.1.3 and 6.2.4, and to respond as promptly as practicable to any inquiries or requests received from any Antitrust Authority or other Governmental Entity, including for additional information or documentation; (ii) promptly furnish the other Party with copies of all documents (except documents or portions thereof for which confidential treatment has been requested of or by any Antitrust Authority which may be furnished to the other Party's legal counsel only) and correspondence: (a) prepared by or on behalf of it for submission to any Antitrust Authority or other Governmental Entity; and (b) received by or on behalf of it or its counsel from any Antitrust Authority or other any Governmental Entity, in each case in connection with the transactions contemplated by this Agreement, and limited to, in the case of competitively sensitive information, such Party's outside antitrust counsel who have signed or agreed to abide by that certain Joint Defense Agreement, effective as of December 12, 2006; and (iii) use its commercially reasonable efforts to consult with and keep the other Party informed as to the status of such matters (except that documents or portions thereof dealing with competitively sensitive information such as the price that Purchaser would pay for the Business or that Seller would accept for the Business may be withheld even from the other Party's outside antitrust counsel).  Notwithstanding the foregoing, Purchasers and Sellers agree that neither of them will make any voluntary filing under applicable foreign Antitrust Laws unless advised by legal counsel in such jurisdiction that the failure to make a filing could result in a Material Adverse Effect or otherwise be in violation of applicable Law.  Each Party hereto shall promptly inform the other of any oral communication from any Antitrust Authority or other Governmental Entity regarding any of the transactions contemplated by this Agreement and the Ancillary Agreements. If the Antitrust Authority in any such country: (i) determines that it will impose conditions to its approval of the transactions contemplated by this Agreement or does impose such; or (ii) determines that it will file a suit, action or other proceeding before a court or governmental agency seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement or does file such, either Party shall have the right to terminate the transaction pursuant to Section 9.1.1.B (notwithstanding

anything to the contrary in Section 9.1.1.B) if such conditions, suits, actions or other proceedings are not resolved within ninety (90) days from the date of such determination. Notwithstanding anything in this Agreement to the contrary, in no event shall Purchasers or Sellers be obligated to propose or agree to accept any undertaking or condition, to enter into any consent decree, to make any divestiture, to accept any operational restriction, or take any other action that, in the reasonable judgment of the Purchasers or Sellers, could be expected to: (1) limit the right of the Purchasers or Sellers to own or operate all or any portion of the Purchased Assets or of Purchasers to own or operate any portion of their existing businesses or assets; or (2) require Purchasers or Sellers to license any of the Intellectual Property rights or to modify any existing license or their Intellectual Property rights. With regard to any Antitrust Authority or Governmental Authority, no Seller shall, without Purchasers' prior written consent (not to be unreasonably withheld) propose, opine on the advisability of or commit to any divestiture transaction, or propose, opine on the advisability of or commit to alter any of their business or commercial practices in any way, or otherwise take or commit to any action that limits Purchasers' freedom of action with respect to, or Purchasers' ability to retain any of, the Purchased Assets or receive the full benefits of this Agreement.

**8.4.2.** Within three (3) Business Days after the entry of an unstayed Sale Approval Order upon the terms and subject to the conditions of this Agreement, each of the parties hereto shall use its reasonable best efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including using their reasonable best efforts to cause the satisfaction of all conditions to Closing. At all times prior to the Closing: (i) Delphi will notify Umicore in writing of any fact, condition, event or occurrence that is reasonably expected to result in the failure of any of the conditions contained in Article 6 to be satisfied, promptly upon becoming aware of the same; and (ii) Umicore will notify Delphi in writing of any fact, condition, event or occurrence that is reasonably expected to result in the failure of any of the conditions contained in Article 6 to be satisfied, promptly upon becoming aware of the same.

**8.5.** **Operation of the Business Pending Closing:**

**8.5.1.** Except: (i) as otherwise provided herein; (ii) as disclosed in Schedule 8.5 of the Disclosure Schedule; (iii) as required by, arising out of, relating to or resulting from the Bankruptcy Cases (including Delphi's Section 1113 and 1114 Motion, consensual resolutions between Delphi and any of its U.S. unions and an approved plan of reorganization); (iv) subject to any changes that may be required under applicable Laws or that may result from the disclosure of this Agreement or the transactions contemplated hereby; (v) in connection with Delphi's possible transition of any portion of the operations of the Business from one existing location to any other existing location of the Business and (vi) as set forth in the following sentence, until the Closing, Sellers will carry on the Business in the Ordinary Course of Business; perform in all material respects all of its obligations under all Listed Contracts and not amend, alter or modify in any material respect that is adverse to the Business any provision of any Listed Contract; keep in full force and effect insurance comparable in amount and scope to coverage maintained by it on the date of this Agreement; use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relations with the Business; endeavor to maintain the goodwill of the Business; and promptly advise Purchaser of any material and adverse change in the business condition (financial or other) of the Business or the Acquired Assets, any event or occurrence that would reasonably be expected to restrain, enjoin, substantially delay or otherwise prohibit the Closing under this Agreement, or that would be likely to result in a breach of any

representation, warranty or covenant in this Agreement.  Notwithstanding any implication to the contrary, Excess Cash may be distributed by the Sale Company prior to Closing.

8.5.2.  Notwithstanding the foregoing, except as otherwise contemplated by this Agreement, or as described in Section 8.5.1 and Schedule 8.5 of the Disclosure Schedule, no Asset Seller or DASHI, as applicable, shall, without the prior written consent of Purchasers, which consent shall not be unreasonably withheld or delayed: (i) waive or modify any rights material to any of the Sellers relating to the Acquired Assets; (ii) enter into any material transaction not contemplated by the January Projections; provided, however, that nothing herein shall require Sellers to inform or seek consent from Purchasers prior to bidding on competitive opportunities before Closing; (iii) knowingly do any act, omit to do any act, or permit any omission to act within its control, that is reasonably expected to cause: (x) a material breach or default in any of the Listed Contracts; (y) any of the Permits to lapse; or (z) for any other reason, a breach of any representation or warranty in this Agreement or a Material Adverse Effect; (iv) except in the Ordinary Course of Business, change or increase the rate of compensation paid by any of the Sellers to any of its Current Employees or agents, except for payments or bonuses that are payable by such Seller before the Closing Date; (v) make any change in the authorized or outstanding capital stock, charter or governing bylaws or regulations of the Sale Company, or merge or consolidate the Sale Company; or (vi) enter into any agreement, authorize, or commit to do any of the foregoing. Notwithstanding the foregoing, in the event the Sellers are legally required to undertake any of the actions listed in this Section 8.5.2 in the course of the Bankruptcy Cases, the Sellers shall provide advance written notice to the Purchasers and such action by Sellers shall not constitute a breach of this Section 8.5.2.

8.6.  **Assumed U.S. Contracts; Cure Amounts.**  Promptly after the Bidding Procedures Order has been issued by the Bankruptcy Court, Sellers shall, pursuant to a motion or other appropriate notice in form and substance reasonably acceptable to Purchasers (which motion may be incorporated into the Sale Motion), move to assume and assign to Purchasers the Pre-Petition Contracts and other Contracts with a Filing Affiliate that the Purchasers have identified for assumption and assignment to the Purchasers (collectively, the "**Assumed U.S. Contracts**") and shall provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by any orders of the Bankruptcy Court.  Sellers shall pay all Cure Amounts required to effect assumption and assignment of the Assumed U.S. Contracts as agreed to by the Sellers and each party to a Assumed U.S. Contract or, absent such agreement, by Final Order of the Bankruptcy Court in the time and manner specified by the Sale Approval Order.

8.7.  **Hired Current Employees.**  No later than thirty (30) days prior to the Closing, Purchasers shall provide the Sellers with a list setting forth each proposed Current Employee to whom the Asset Purchasers intend to offer employment as of the Closing ("**Proposed Hired Current Employees**").

8.8.  **Assumed PTO Obligations.**  Not less then three (3) Business Days prior to the Closing, the Sellers shall provide the Purchasers with a true and complete copy of Schedule 8.8 setting forth the Assumed PTO Obligations for each Hired Current Employee as of the Closing Date (the "**Closing Date Assumed PTO Obligations Schedule**").

8.9.  **Guarantee by Umicore.**  Umicore agrees to unconditionally guarantee all obligations of Purchasers pursuant to the terms of this Agreement, including, without limitation, to pay the Purchase Price and any indemnification obligations of Purchasers.  Umicore shall also reimburse Sellers for reasonable fees and expenses (including reasonable fees of counsel) incurred in successfully enforcing the guarantee obligations set forth in this Section 8.9.

**8.10.** **Post-Closing Covenants.** From and after the Closing, each of the Parties will perform its respective covenants and agreements set forth below:

**8.10.1.** **Seller Post-Closing Covenants:**

**A.** **Non-Competition.** Sellers have at Closing, established the reputation of the Business. Each Seller undertakes and agrees with Purchasers that for a period of five (5) years after the Closing Date, except with the consent of Purchasers, Sellers shall not, and shall ensure that each Affiliate of Sellers shall not, either on its own account or in conjunction with or on behalf of any person, firm or company whether by sales, marketing or other activities, carry on or be engaged, concerned or interested, directly or indirectly, whether as a shareholder, director, employee, partner, agent or otherwise in carrying on any business which is engaged in the research, design, development, manufacture, remanufacture or sale of Products as conducted by the Business (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 8.10.1 will not prohibit: (i) the acquisition of a controlling interest or merger with any person, or a division or business unit thereof, which is not primarily engaged in a Competitive Business, acquired by or merged, directly or indirectly, into a Seller or any of its Affiliated companies after the Closing Date, provided that Delphi will use commercially reasonable efforts to divest, as soon as practicable after such acquisition or merger, any portion of the business of such Person that constitutes a Competitive Business if the Competitive Business accounts for the lesser of: (1) $10 million in sales; or (2) ten percent (10%) of the total sales of the person, division or business unit being acquired; (ii) the acquisition by Seller or any of its Affiliated companies, directly or indirectly, of a non-controlling ownership interest in any person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen percent (15%) or less of the sales or ten percent (10%) or less of the value of the acquired business at the date of such acquisition (whichever is the greater); (iii) the acquisition by a Seller or any of its Affiliated companies, directly or indirectly, of less than five percent (5%) of the publicly traded stock of any person engaged in a Competitive Business; (iv) provision of non-Business-related consulting services to, the license of any technology that a Seller or any Seller Affiliate owns or has the right to sublicense to, or the financing (on its own behalf or on behalf of any other Person) of any Person for the purpose of designing or manufacturing on behalf of a Seller or any Seller Affiliate or selling to a Seller or any Seller Affiliate components and parts for automotive applications which are outside the scope of the Business, the Purchased Intellectual Property or the design, development, manufacture, remanufacture, sale or purchase of Products; (v) Sellers or any of their Affiliates by themselves or with others and, in each case, consistent with the obligation to pay any royalties that may be owed under the provisions of the Fuel Reformer Patent License: (a) designing, developing (including making catalyst prototypes for Fuel Reformers but not themselves manufacturing any Fuel Reformer catalysts for commercial production), testing and/or purchasing Fuel Reformer catalysts; (b) allowing a third party to manufacture Fuel Reformer catalysts; (c) selling Fuel Reformers containing Fuel Reformer catalysts; and (d) technical interchanges with catalyst suppliers consistent with Delphi's Fuel Reformer activities; (vi) activities under the Toll Manufacturing Agreement; (vii) consistent with Sellers' generally applicable troubled supplier practices, direct or indirect activities of a Seller or any Seller Affiliate to advise a troubled supplier of a Seller or its Affiliates; and (viii) any business or activity conducted by any Affiliate, subsidiary or division of a Seller (excluding the Business) as of the Closing Date (each of which shall be

deemed not to breach this Section 8.10.1.A), including any activity conducted by the operations referred to as Excluded Canning Business or other Excluded Assets.

      **B.**     While the restrictions contained in this Section 8.10.1 are considered by the parties to be reasonable in all the circumstances for the protection of the interests of Purchasers and/or the Business, it is recognized that restrictions of the nature in question may fail for technical reasons and, accordingly, it is hereby agreed and declared that if any of such restrictions shall be adjudged to be void but would be valid if part of the wording thereof were deleted or the periods thereof reduced or the range of activities or area dealt with thereby reduced in scope, the said restriction shall apply with such modifications as may be necessary to make it valid and effective.

**8.10.2.**  **Technical Documentation.**  Sellers shall, or cause their Affiliates to, deliver, or will deliver on or before the Closing, to the relevant member of Purchasers, all Technical Documentation included in the Acquired Assets.  For a period of not less than ten (10) years commencing at Closing, Purchasers shall use reasonable efforts to maintain all Technical Documentation applicable to pre-Closing Date product design, test, release and validation it acquires from Sellers in connection with the purchase of the Acquired Assets or the Sale Company under Article 1 of this Agreement at a location at which they shall be reasonably accessible to Sellers upon request.  During such ten (10) year period, Purchasers shall not destroy or give up possession of its final copy of such documentation without offering Sellers the opportunity, at Sellers' expense but without any payment to Purchasers, to obtain a copy of such documentation.

**8.10.3.**  **Books and Records and Litigation Assistance From and After Closing:**

      **A.**     Purchasers shall, and shall cause and their Affiliates to, preserve and keep all books, records, computer files, software programs and any data processing files delivered to Purchasers by Sellers pursuant to this Agreement for a period of not less than five (5) years from the Closing Date, or for any longer period as may be required by any Governmental Entity, ongoing litigation, law, regulation, audit or appeal of Taxes, or Tax examination at Purchasers' sole cost and expense.  During such period, Purchasers shall: (i) provide Sellers with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of each facility included within the Business as of the Closing Date; and (ii) make such books and records available to Sellers and their Affiliates as may be reasonably required by Sellers and their Affiliates in connection with any legal proceedings against or governmental investigations of Sellers and their Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Sellers and their Affiliates, the Business or the Acquired Assets.  Sellers or their Affiliates shall reimburse Purchasers for the reasonable out-of-pocket expenses incurred in connection with any request by Sellers to make available records pursuant to the foregoing sentence.  In the event Purchasers wish to destroy or dispose of such books and records after five (5) years from the Closing Date, it shall first give not less than ninety (90) days' prior written notice to Sellers, and Sellers shall have the right, at its option, upon prior written notice given to Purchasers within sixty (60) days of receipt of Purchasers' notice, to take possession of said records within ninety (90) days after the date of Purchasers' notice to Sellers hereunder.

      **B.**     Purchasers shall, from time to time, at the reasonable request of Sellers, cooperate fully with Sellers in providing Sellers and their Affiliates (as appropriate), to the extent possible through employees formerly employed by Sellers, with technical assistance

and information in respect to any claims brought against Sellers and their Affiliates involving the conduct of the Business prior to Closing, including consultation and/or the appearance(s) of such persons on a reasonable basis as expert or fact witnesses in trials or administrative proceedings.  Sellers shall reimburse Purchasers and their Affiliates for their reasonable, actual direct out-of-pocket costs (including travel, employee time, hotels, etc.) of providing such services.  In particular, Purchasers agree to: (i) retain all documents required to be maintained by federal, state, national or local legislation or regulations and all documents that may be reasonably required to establish due care or to otherwise assist Sellers and their Affiliates in pursuing, contesting or defending such claims; (ii) make available its documents and records in connection with any pursuit, contest or defense, including documents that may be considered to be "confidential" or subject to trade secret protection (except that:  (a) no documents or records protected by the attorney client privilege in favor of Purchasers must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Purchasers must notify Sellers of the existence of such privileged documents); and (b) Sellers agree to keep confidential documents and records that are confidential or are subject to trade secret protection); (iii) promptly respond to discovery requests in connection with such claim, understanding and acknowledging that the requirements of discovery in connection with litigation require timely responses to interrogatories, requests to produce and depositions and also understanding and acknowledging that any delays in connection with responses to discovery may result in sanctions; (iv) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to interfere materially with Purchasers' business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Sellers and their Affiliates in connection with such claim, including investigation into claims and occurrences described in this section and preparing for and giving factual and expert testimony at depositions, court proceedings, inquiries, hearings and trial; and (v) make available facilities and exemplar parts for the sole and limited use of assisting Sellers and their Affiliates in the contest or defense.

**8.10.4.  <u>Payment and Collections</u>.**  Sellers shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Purchasers after Closing, and Purchasers shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Sellers after Closing, in order to ensure that the cost of the related Liability or the benefits of the related assets accrue to the appropriate Party in accordance with the terms of this Agreement.  To the extent that any such collections are received after Closing in the form of checks or other negotiable instruments payable to the other Party, Sellers or Purchasers, as appropriate, shall promptly take all necessary action to endorse such checks or instruments to permit the appropriate Party to collect the proceeds of such checks and instruments. Sellers shall promptly send Purchasers copies of all remittance advices and checks related to payments received by Sellers with respect to such items.  Purchasers shall notify the Business' customers of the change in address of the owner of the Acquired Assets as may be required in order for such customers to properly remit any payments required under any applicable Acquired Asset and Sellers shall cooperate with Purchaser as is reasonably necessary to so notify such customers.

**8.10.5.  <u>Intellectual Property Transition Rights</u>.**  Purchasers will have the right (including the right to authorize relevant Affiliates) to continue to sell or dispose of any existing inventories or service materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of Delphi or any Affiliate of Delphi for a period of up to three (3) months after the Closing Date; provided that Purchasers and their Affiliates shall clearly indicate on any written materials related to such sale or disposition,

including business cards, stationery, purchase orders, invoices and the like, that the Business is owned by Purchasers and their Affiliates and is no longer affiliated with, and Purchasers and their Affiliates do not represent, the Sellers or any Affiliate of Sellers.

**8.10.6. Change of Name of the Sale Company.** Purchasers shall cause the applicable Securities Purchaser to change the name of the Sale Company, as necessary, immediately following Closing to a name not containing the word "Delphi", such change to take effect pursuant to the terms of the respective Transfer Agreement governing the sale of the Sale Company.

**8.10.7. Catalyst Co-Development and Supply.** Following the Closing, the Parties intend to discuss in good faith possible catalyst co-development and supply arrangements beyond those contemplated in the Ancillary Agreements.

**8.11. Further Assurances.** If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement or any of the Ancillary Agreements, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement). Notwithstanding the foregoing, in the event that following the Closing Sellers are required to pay any stay or retention bonuses or make other payments or provide any benefits to any employees at one or more Carved-Out Locations to incentivize such employees to fulfill Sellers' obligations under any Ancillary Agreement, the Seller shall bear the entire cost of any such payments, benefits or incentives.

**8.12. Certain Transactions.** Purchasers shall not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any material delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Entity necessary to consummate the transactions contemplated by this Agreement or the Ancillary Agreements or the expiration or termination of any applicable waiting period; (ii) significantly increase the risk of any Governmental Entity entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) materially delay or prevent the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.13. Communications with Customers and Suppliers.** Subject to applicable Law, prior to the Closing, Purchaser shall not, and shall cause its Affiliates and representatives not to, contact, engage in any substantive discussions or otherwise communicate with any of the Business' customers, suppliers and others with whom, to Purchaser's knowledge, the Seller has material commercial dealings regarding the Sale (including post-Closing plans for the Business) without obtaining the prior written consent of Seller (which shall not be unreasonably withheld provided, that, except with respect to General Motors and at all times prior to the entry of the Sale Approval Order, such consent may be conditioned upon Seller having the right to designate a representative who is reasonably acceptable to Umicore to participate in any meetings or discussion with any such customers, suppliers or others who is reasonably acceptable to Umicore). Purchasers shall be permitted to disclose the terms of this Agreement to any such customer or supplier, as appropriate, to provide assurances to such customer or supplier with respect to the continued viability of the Business after the Closing. Notwithstanding the foregoing (but subject to applicable Law, and Purchaser's obligations under the Purchaser Confidentiality Agreement), nothing contained herein shall prevent

Purchaser, its Affiliates or representatives from contacting, engaging in discussions with or otherwise communicating with any Person (including the Business' customers, suppliers and others with whom, to Purchaser's knowledge, the Seller has material commercial dealings) regarding any other matter including: (i) program development, sales or purchases by any Purchaser or any of their respective Affiliates to or from such Persons; or (ii) matters that may be competitive with Seller or its Affiliates. Without limiting the foregoing, nothing contained in this Agreement shall prevent or limit the ability of each Purchaser and their respective Affiliates) from competing with each Seller and their respective Affiliates with respect to any matter, including the Business.

**8.14.**  **Permit Transfers.**  Sellers shall assist and cooperate with Purchasers with respect to the transfer of or application for any  environmental Permits listed pursuant to Section 5.1.20.G that require transfer to Purchasers or procurement of new Permits by Purchasers in connection with the transaction contemplated hereby.

**8.15.**  **Pre-Closing Transfer of Intellectual Property.**  Prior to the Closing Date, Delphi will cause all of the Owned Intellectual Property and Licensed Intellectual Property (if any) of Delphi Automotive Systems LLC and Delphi Technologies, Inc. to be transferred, pursuant to documentation (including any necessary registrations of same that need to be filed with any Governmental Entity) in form and substance reasonably satisfactory to Purchasers, to ASEC Manufacturing  or another ASEC (as defined on Schedule 1) Filing Affiliate, so that the transfer of  the Purchased Intellectual Property to Umicore may be effected as set forth in Schedule 1; provided that such ASEC Filing Affiliate may cause the transfer to be consummated by means of a direct transfer from the record holder of the Purchased Intellectual Property to Umicore, subject to Umicore's consent.

**9.**   **TERMINATION:**

**9.1.**  **Termination.**  Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date:

**9.1.1.**  By either Party:

**A.**  By mutual written consent of Delphi on behalf of the Sellers and Umicore on behalf of the Purchasers.

**B.**  Provided the terminating Party is not in default of its obligations under this Agreement, if consummation of the Sale would violate any non-appealable Final Order of any Antitrust Authority or other Governmental Entity, or as such termination is otherwise permitted under Section 8.4.1.

**C.**  If Sellers consummate an Alternative Transaction.

**D.**  Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Bankruptcy Court has not entered a Sale Approval Order that is a Final Order on or before the date that is one hundred twenty (120) days after the date of this Agreement (either, a "**Termination Date**").

**E.**  Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Closing shall not have occurred within one hundred twenty (120) days after entry of the Sale Approval Order for any reason other than failure to meet

the conditions set forth in Sections 6.1.3 (Approvals) or 6.2.4 (Other Approvals; Collective Bargaining Agreements; Cure Amounts).

    **F.**    Provided the terminating Party is not in default of its obligations under this Agreement by either Sellers or Purchasers, if the Closing shall not have occurred within two hundred forty (240) days after entry of the Sale Approval Order for any reason.

    **9.1.2.** By Purchasers (provided that no Purchaser is in material breach of any representation, warranty, covenant or other agreement contained herein):

    **A.**    At any time prior to Closing, if a Material Adverse Effect shall have occurred Purchaser may terminate if, in the good faith judgment of Purchaser, such Material Adverse Effect has not been cured and is not capable of being cured within forty-five (45) days of the date of the event giving rise to such Material Adverse Effect; or

    **B.**    If the Antitrust Authority in any country: (i) determines that it will impose conditions to its approval of the transactions contemplated by this Agreement or does impose such; or (ii) determines that it will file a suit, action or other proceeding before a court or Governmental Entity seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement or does file such, within twenty (20) Business Days after becoming aware of such event so long as such event is continuing at the time of any such termination.

    **C.**    If (i) Sellers shall have breached or failed to perform in any significant respect any of the covenants or obligations applicable to Sellers under this Agreement and such breach or failure to perform cannot be cured within thirty (30) days from notice of such breach or failure to perform; or (ii) Sellers shall have breached in any significant respect any representation or warranty of Sellers contained in this Agreement and such breach cannot be cured within thirty (30) days from notice of such breach.

    **9.1.3.**    By Sellers:

    **A.**    If Sellers accept a Qualified Bid at the Auction other than that of Purchasers, provided that such termination shall be of no effect if Seller does not: (i) enter into an agreement with respect to such Qualified Bid within two (2) Business Days after termination hereunder; and (ii) subsequently complete the Sale to an Alternative Transaction within thirty (30) calendar days of such termination.

    **B.**    If (provided that no Seller is in material breach of any representation, warranty, covenant or other agreement contained herein): (i) Purchasers shall have breached or failed to perform in any significant respect any of the covenants or obligations applicable to Purchasers under this Agreement and such breach or failure to perform cannot be cured within thirty (30) days from notice of such breach or failure to perform; or (ii) Purchasers shall have breached in any significant respect any representation or warranty of Purchasers contained in this Agreement and such breach cannot be cured within thirty (30) days from notice of such breach.

    **9.2.**  **Notice of Termination.**  In the event of any termination pursuant to this Article 9, written notice thereof setting forth the reasons therefor shall promptly be given to the other Party and the transactions contemplated by this Agreement shall be terminated, without further action by any Party.

**9.3.    Break-Up Fee; Expense Reimbursement; Return of Deposit:**

**9.3.1.    Break-Up Fee.**  In the event that any Seller sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, all or substantially all or a material portion of the Business or the Acquired Assets in a transaction or a series of related transactions with one or more parties other than Purchaser in accordance with the Bidding Procedures (such event being an "**Alternative Transaction**"), Sellers shall, within two (2) Business Days after the consummation of the Alternative Transaction(s), pay to Umicore on behalf of the Purchasers an amount equal to Two Million U.S. Dollars (U.S. $2,000,000) (the "**Break-Up Fee**"), unless the Agreement is then terminable under Section 9.1.1.B, 9.1.2.B or 9.1.3.B; in which case no Break-Up Fee shall be payable.   Purchasers shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code in the amount of the Break-Up Fee or Expense Reimbursement, as the case may be.

**9.3.2.    Expense Reimbursement.**  In the event this Agreement is terminated pursuant to Sections, 9.1.1.D, 9.1.1.E, 9.1.1.F, 9.1.2.A or 9.1.2.C or and provided that: (i) no Purchaser is then in material breach of this Agreement for which Sellers had previously notified Purchasers; (ii) in the case of Section 9.1.1.F, this Agreement is not then terminable under Section 9.1.1.B; and (iii) and, in the case of Section 9.1.1.E, the failure or occurrence of the event giving rise to any such termination results solely from the status of Sellers or any action or conduct of a Seller and not from the status of Purchasers or any action or conduct of Purchasers, then Sellers shall be obligated to pay Purchasers an amount equal to Purchasers' reasonable, actual out-of-pocket fees and expenses (including reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement including, but not limited to, the conduct of pre-contract due diligence and the negotiation and drafting of this Agreement and the other documents contemplated herein (the "**Expense Reimbursement**") up to a maximum of One Million Seven Hundred and Fifty Thousand U.S. Dollars (U.S. $1,750,000).   Purchasers shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code in the amount of the Break-Up Fee or Expense Reimbursement, as the case may be.   Any Expense Reimbursement payable upon termination of this Agreement shall be immediately earned upon such termination and payable by Sellers to Purchasers promptly upon the delivery of an invoice related to such Expense Reimbursement to Sellers by Purchasers to be delivered to Sellers within thirty (30) days of termination of this Agreement; provided, however, that if Sellers believe, in good faith, that the amount of the Expense Reimbursement sought by Purchasers is not reasonable, then Sellers shall have the right, within thirty (30) days of receipt of Purchasers' invoice, to seek Bankruptcy Court review thereof prior to paying such amount.

**9.3.3.    Payments.**  Payments to Purchasers pursuant to this Section 9.3 shall be by wire transfer of immediately available funds in U.S. Dollars, to such account or accounts as Umicore shall designate in writing.

**9.3.4.    Limitations.**  Purchasers acknowledge and agree that, in the event that a Purchaser terminates this Agreement or a Seller terminates this Agreement and Purchasers become entitled to receive or receives any Expense Reimbursement, Purchasers shall not be entitled to receive nor shall they receive the Break-Up Fee or any portion thereof, and, conversely, that in the event that Purchasers become entitled to receive or receives any Break-Up Fee, they shall not be entitled to receive nor shall they receive the Expense Reimbursement or any portion thereof.

**9.3.5.** **Return of Deposit.** In the event this Agreement is terminated for any reason (including an Alternative Transaction) other than pursuant to 9.1.3.B, Escrow Agent shall, pursuant to the Deposit Escrow Agreement, within two (2) Business Days of such termination, pay to Umicore on behalf of the Purchasers the Deposit Amount.

**9.4.** **Procedure and Effect of Termination.** In the event of termination and abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Parties to this Agreement, and this Agreement shall terminate (subject to the provisions of this Article 9) and the transactions contemplated by this Agreement shall be abandoned, without further action by any of the parties hereto. If this Agreement is terminated as provided herein no Party shall have any Liability or further obligation to any other Party resulting from such termination except for the provisions of: (i) Purchasers' obligations under the Purchaser Confidentiality Agreement; (ii) Article 9 (Termination); (iii) Sections 4.2 (Deposit Amount), 13.2 (Notice), 13.3 (Assignment), 13.4 (Entire Agreement), 13.5 (Waiver), 13.8 (Expenses), 13.12 (Governing Law), 13.13 (Public Announcements), 13.14 (Venue and Retention of Jurisdiction) and 13.17 (Dispute Resolution), all of which shall remain in full force and effect; and (iv) no party waives any claim or right against a breaching party in respect of any of its representations, warranties, covenants or agreements set forth in this Agreement occurring prior to such termination; provided, however, that in the event Purchasers are entitled to and do receive the Deposit Amount, the Break-Up Fee or Expense Reimbursement, as the case may be, the right of Purchasers to receive such amounts shall constitute Purchaser's sole remedy for (and such amounts shall constitute liquidated damages in respect of) any breach by any Seller of any of its representations, warranties, covenants or agreements set forth in this Agreement. In connection with any termination of this Agreement, all filings, applications and other submissions made pursuant to the transactions contemplated by this Agreement shall, to the extent practicable, be withdrawn from the agency or Person to which made.

**9.5.** **Conflicts.** To the extent there exists any conflict or ambiguity between Section 9.1.1.D, on the one hand, and Sections 11.10 and 11.11, on the other hand, in respect of Purchasers' right to terminate this Agreement, (a) Section 9.1.1.D shall control with respect to Purchasers' initial bid as represented by this Agreement, and (b) Sections 11.10 and 11.11 shall control with respect to any subsequent bid submitted by the Purchasers in connection with the Auction.

## 10. **OTHER TAX MATTERS:**

**10.1.** **General.** Except as provided below with respect to the Sale Company, Sellers will be liable for and pay all Taxes imposed on the Business for all periods or portions of periods before and through the Closing Date (including all capital gain, income or similar Taxes (and specifically not including transfer Taxes) triggered by this Agreement and/or the consummation of the transactions contemplated by this Agreement), and Purchasers will be liable for and pay all transfer Taxes triggered by the consummation of the transactions contemplated by this Agreement and Taxes imposed on the Business for all periods or portions of periods after the Closing Date. For example, and not by way of limitation, the Purchaser agrees to reimburse the Seller for any tax professionelle, tax fonchière and other taxes that have been paid by the Sellers and relate to any taxable year or period after the Closing Date.

**10.2.** **Sale Company Taxes.** With respect to the Sale Company:

**10.2.1.** **Sellers' Liability.** Sellers will be liable for and pay all Taxes imposed on the Sale Company, or for which the Sale Company may be liable: (i) for any taxable year or period that ends on or before the Closing Date; and (ii) with respect to any period commencing before and ending after the Closing Date (a "**Straddle Period**"), the portion of such Straddle Period ending on and including the Closing Date net of the Sale Company Current Tax Amount (including any capital

gain, income or similar tax triggered by this Agreement and/or the consummation of the transactions contemplated by this Agreement, and any obligations to contribute to the payment of a Tax determined on a consolidated, combined or unitary basis with respect to any group of corporations that includes any Seller and any Taxes resulting from the Sale Company ceasing to be a member of such group).  Notwithstanding the foregoing, in the event that the Taxes of the Sale Company for the Straddle Period are less than the Sale Company's Current Tax Amount, the Purchasers shall refund such positive differential to the Sellers subject to offset for any other amount owed by Sellers pursuant to this Article 10.  For avoidance of doubt, Sellers will receive the benefit of the utilization of any tax loss carryover existing at December 31, 2006 during the portion of the Straddle Period ending on and including the Closing Date for purposes of determining the Sale Company Current Tax Amount.  For purposes of clarification and not limitation, Sellers are responsible for all Straddle Period Taxes that exceed the Sale Company Current Tax Amount.

     **10.2.2.  Purchasers' Liability**.  Purchasers will be liable for and pay all Taxes imposed on the Sale Company for any taxable year or period that begins after the Closing Date and, with respect to any Straddle Period, the portion of such Straddle Period beginning after the Closing Date provided, however, that Purchasers will not be liable for or pay, and will not indemnify Sellers against, any Taxes for which Sellers are liable under this Agreement.

     **10.2.3.  Straddle Period Allocations**.  For purposes of this Section 10.2, Taxes for a Straddle Period will be allocated between the portion of the Straddle Period that ends at the end of the Closing Date and the remaining portion of the Straddle Period in the following manner:

        **A.**      Any Tax based upon or related to income, revenue, receipts or wage and salary payments will be allocated based on a "closing of the books" as of the end of the Closing Date.

        **B.**      Real and personal property Taxes with respect to any assets of the Sale Company will be prorated based on the ratio of the number of days in the portion of the Straddle Period ending on the Closing Date to the total number of days in the Straddle Period.  Sales and use taxes will be deemed to accrue as property is purchased, sold, used, or transferred.  All other taxes (other than those specified in this Section 10.2.3) will accrue in accordance with local generally accepted accounting principles.

     **10.2.4.  Tax Sharing Agreements**.  All tax sharing agreements or similar agreements with respect to or involving the Sale Company will be terminated as of the Closing Date and, after the Closing Date, the Sale Company will not be bound thereby or have any Liability thereunder.

     **10.2.5.  Refunds and Tax Benefits**.  Any Tax refunds with respect to the Sale Company that are received by Purchasers or the Sale Company, and any amounts credited against Tax of the Sale Company to which Purchasers or the Sale Company becomes entitled, that relate to Taxable Periods or portions thereof ending on or before the Closing Date will be for the account of Sellers, and Purchasers will pay over to Sellers any such refund or the amount of any such credit (to the extent such refund or credit is within the control of the Purchasers or any Subsidiary) within sixty (60) days after receipt or entitlement thereto.

**10.3.  Tax Returns:**

**10.3.1.  Taxable Periods Ending on or Before the Closing Date:**

**A.**      Sellers will prepare or cause to be prepared and file or cause to be filed all Tax Returns that are required to be filed for the Sale Company for all Taxable Periods ending on or prior to the Closing Date that are required to be filed on or prior to the Closing Date.  All Tax Returns which Sellers are required to file or cause to be filed in accordance with this section will be prepared and filed in a manner consistent with past practice and, on such Tax Returns, no position will be taken, election made or method adopted that is inconsistent with positions taken, elections made or methods used in preparing and filing similar Tax Returns in prior periods.  Without limiting the generality of the foregoing, Sellers will not, in such Tax Returns, adopt a new position, election or method which would have the effect of deferring income to periods for which Purchasers are liable under this Article 10 or accelerating deductions to periods for which Sellers is liable under this Article 10 unless required by applicable Laws without the prior consent of Purchasers, which consent will not be unreasonably withheld.  Sellers will provide to Purchasers copies of income tax returns reasonably in advance of their filing and at least thirty (30) calendar days before such returns are required to be filed.  Purchasers will notify Sellers of any proposed revisions within fifteen (15) calendar days after receipt of such income tax returns from Sellers.  Purchasers and Sellers agree to attempt to resolve in good faith any dispute concerning the reporting of any item on such income tax returns in a timely fashion before filing date.  Nothing in this Agreement will be construed as preventing Sellers or Sale Company from timely filing of any income tax returns.

**B.**      Purchasers will prepare or cause to be prepared and file or cause to be filed all Tax Returns that are required to be filed for the Sale Company for all Taxable Periods ending on or prior to the Closing Date that are required to be filed after the Closing Date.  Without limiting the generality of the foregoing, Purchasers will not, in such Tax Returns, adopt a new position, election or method which would have the detrimental effect in a period for which Sellers are liable under this Article 10, unless required by applicable Laws, without the prior consent of Sellers which consent will not unreasonably be withheld.

**10.3.2.  Taxable Periods Beginning Before and Ending After the Closing Date (Straddle Periods).**  Purchasers will prepare or cause to be prepared and file or cause to be filed any Tax Returns of the Sale Company that are required to be filed for Straddle Periods.  Purchasers will provide to Sellers copies of all such Tax Returns for Straddle Periods (together with a calculation of the allocation pursuant to Section 10.2.3 of the Tax shown on each such Tax Return between the portion of the Straddle Period ending on the Closing Date and the portion of the Straddle Period starting on the day after the Closing Date) at least thirty (30) calendar days before such Tax Returns are required to be filed.  Sellers will notify Purchasers of any proposed revisions to such Tax Returns (or such allocation) within fifteen (15) calendar days after receipt of such Tax Returns from Purchasers.  Purchasers and Sellers agree to attempt to resolve in good faith any dispute concerning the reporting of any item on such Tax Return in a timely fashion before filing date.  Nothing in this Agreement will be construed as preventing Purchasers or the Sale Company from timely filing of any Tax Returns.  Sellers will pay to Purchasers within fifteen (15) calendar days after an agreement is reached on the above-mentioned allocation of Straddle Period taxes (as determined pursuant to Section 10.2.3).

**10.4.  Audits and Adjustments.**  The Purchasers will inform Sellers of any pending or threatened Tax audits or assessments of, or with respect to, Taxes for which Sellers are responsible under this Agreement; provided, however, that the failure of Purchasers to provide timely notice will not affect the obligations of Sellers hereunder except to the extent (if any) that Sellers' ability to contest such Tax assessment has been prejudiced by such failure.  For tax periods ending on and including the Closing Date, Sellers will control the conduct of any such audit or proceeding but will not dispose of any such audit or proceeding in a manner that would result in the Sale Company adopting a position or method or election which could have the effect of deferring income to periods for which Purchasers are liable under this Article 10 or accelerating deductions to period for which Sellers are liable under this Article 10 or could reasonably result in an adverse consequence to Purchasers in respect of a tax period for which Purchasers are liable under this Article 10 without the consent of the Purchasers which shall not be unreasonably withheld.  For tax periods ending on and including the Closing Date, Purchasers and their legal or tax advisor will have the right to attend and participate in all relevant meetings with the authorities and Purchasers will provide all information which sellers may reasonably request in connection therewith.  For the Straddle Period, Purchasers will control the conduct of any such audit or proceeding but will not dispose of any such audit or proceeding in a manner that would result in the Sale Company adopting a position or method or election which could reasonably result in adverse consequences on Taxes for which Sellers are liable during the Straddle Period under this Article 10 or could reasonably result in an adverse consequence to Sellers in respect of a tax period for which Sellers are liable under this Article 10 without the consent of the Sellers which shall not be unreasonably withheld.  For the Straddle Period, Sellers and their legal or tax advisor will have the right to attend and participate in all relevant meetings with the authorities and Purchasers will provide all information which Sellers may reasonably request in connection therewith.  Each party will bear its own expenses in connection with such audits or proceedings.  Sellers will be responsible for the payment of any Tax deficiency resulting from such audit insofar as and to the extent  provided herein and in all cases without any offset against any deferred tax assets.

**10.5.  Sales or Transfer Taxes.**  Sellers and Purchasers will use commercially reasonable efforts and cooperate in good faith to exempt (including by the Seller seeking approval of such exception in the Sale Motion) the sale, conveyance, assignments, transfers and deliveries to be made to the Purchasers hereunder from any sales taxes, documentary and stamp taxes, transfer, documentary, sales, use, registration, recording, stamp, use, gross receipts, excise, value-added, and other such taxes (including all applicable real estate transfer taxes, but excluding any taxes based on or attributable to income or gains) and related fees (including notarial fees as well as any penalties, interest and additions to tax) ("**Transfer Taxes**") payable in connection with such sale, conveyance, assignments, transfers and deliveries, to the extent provided in the Sale Approval Order, in accordance with Section 1146(c) of the Bankruptcy Code.  If Bankruptcy Court approval is granted for such exemption, then any instrument transferring the acquired assets to the Purchasers will contain the following endorsement:

> Because this [instrument] has been authorized pursuant to Order of the United States Bankruptcy Court for the Southern District of New York relating to a chapter 11 plan of [Seller], it is exempt from transfer taxes, stamp taxes, or similar taxes pursuant to 11 U.S.C. § 1146(c).

To the extent not exempt under Section 1146 of the Bankruptcy Code and approved in the Sale Approval Order, such Transfer Taxes arising out of or incurred in connection with this Agreement will be borne solely by Purchasers.  The party that is legally required to file a Tax Return relating to Transfer Taxes will be responsible for preparing and timely filing such Tax Return.  Delphi will prepare the Transfer Tax returns for which Delphi is responsible as soon as is practicable and provide Umicore with a copy to review not less than fifteen (15) days in advance of the deadline for such return.  Umicore agrees to provide Delphi with comments in sufficient time to enable Delphi to timely file the return and pay the Transfer Tax and

Delphi shall use commercially reasonable efforts to incorporate such comments. Purchaser will also be liable for the Chinese recapture duty and VAT on tangible assets retained by Seller and sold to Purchaser that have not been used more than five (5) years at their current location.

**10.6. Purchasers Covenants and Indemnity.** Except as otherwise provided herein, Purchasers agree that they will pay when due all Taxes for which they are responsible pursuant to this Agreement and will indemnify and hold Sellers (or any entity that is controlled directly or indirectly by Sellers) harmless from and against Liability for such Taxes and any Loss related to such Liability. Payment by Purchasers of any amount due to Sellers under this Section 10.6 will be made within thirty calendar days following written notice by Sellers that payment of such amounts to the appropriate taxing authority is due, provided that Sellers will provide to Purchasers reasonable and sufficient documentation establishing the amount of any such Loss.

**10.7. Sellers Covenants and Indemnity.** Except as otherwise provided herein, Sellers agree that they will pay when due all Taxes for which any Seller is responsible pursuant to the provisions of this Agreement and will indemnify and hold Purchasers (or the Sale Company or other entity that is controlled directly or indirectly by any Purchaser) harmless from and against Liability for such Taxes and any Loss related to such Liability. Payment by any Seller of any amount due under this Section 10.7 will be made within thirty calendar days following written notice by Purchasers to Sellers that payment of such amounts to the appropriate taxing authority is due, provided that Purchasers will provide to Sellers reasonable and sufficient documentation establishing the amount of any such Loss.

**10.8. Purchase Price Adjustment.** Any payments made pursuant to the provisions of this Article 10 will be treated for income tax purposes as an adjustment to the Purchase Price consistent with Section 4.8.3.

**10.9. Customs Duties.** The Purchasers expressly agree to reimburse Sellers for all customs-related duties, fees and associated costs incurred by Sellers with respect to the Acquired Assets following the Closing, including all such duties, fees and costs incurred in connection with co-loaded containers that clear customs intentionally or unintentionally under Sellers' importer/exporter identification numbers and bonds/guarantees post-Closing.

## 11. BIDDING PROCEDURES:

**11.1. Delphi Initial Bankruptcy Actions.** This Article 11 sets forth the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the Agreement and the sale (the "**Sale**") of the Purchased Assets. The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order. The following overbid provisions and related bid protections are designed to compensate the Purchasers for their efforts and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Purchased Assets for the benefit of Sellers' and their Affiliates' creditors, shareholders and bankruptcy estate.

**11.2. Qualified Bidder.** Unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi, in order to participate in the Bidding Process, each person (a "**Potential Bidder**"), other than the Purchaser, must deliver (unless previously delivered) to Sellers no later than 4 P.M. (EST) on the fifth (5th) Business Day following the entry of the Bidding Procedures Order:

**11.2.1.** An executed confidentiality agreement substantially similar to the Purchaser Confidentiality Agreement.

**11.2.2.** Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets and the Business, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Sellers and their financial advisors; and

**11.2.3.** A preliminary (non-binding) proposal regarding: (i) the purchase price range; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale if selected as a successful bidder, and that the Sellers determine in their sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement shall be deemed a "**Qualified Bidder**".  Notwithstanding the foregoing, Purchasers shall be deemed a Qualified Bidder for purposes of the Bidding Process.

**11.3.  Due Diligence.**  Sellers shall afford each Qualified Bidder due diligence access to the Purchased Assets and the Business.  Due diligence access may include management presentations as may be scheduled by Sellers, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Sellers, in their sole discretion, may agree to.  Sellers shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence shall not continue after the Bid Deadline.  Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither Sellers nor any of its Affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to Purchased Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

**11.4.  Bid Deadline.**  A Qualified Bidder that desires to make a bid shall deliver the Required Bid Documents to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steven P. DeRaedt, Director, Mergers & Acquisitions, with copies to: (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention John K. Lyons and Brian M. Fern; (ii) Sellers' financial advisor, Credit Suisse First Boston, at 11 Madison Avenue, New York, New York 10010-3629, Attention Spyros Svoronos; (iii) counsel to the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "**Committee**"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention:  Robert J.  Rosenberg; and (iv) counsel for the agent under Delphi's post petition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received not later than 11:00 A.M. (EST), on a date to be determined by Delphi that is at least five (5) Business Days before the date of Sale Hearing (the "**Bid Deadline**").  As soon as reasonably practicable following receipt of each Qualified Bid, Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the Official Committee of Equity Security Holders (the "**Equityholders' Committee**").  At the same time that Sellers notify the Potential Bidder that it is a

Qualified Bidder, Sellers shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Purchased Assets and the Business as provided in Section 11.3 above.

**11.5.**  **Bid Requirements.**  All bids must include the following documents (the "**Required Bid Documents**"):

**11.5.1.**  A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Sale of the Purchased Assets.

**11.5.2.**  An executed copy of this Agreement, together with all schedules marked (a "**Marked Agreement**") to show those amendments and modifications to such agreement and schedules that the Qualified Bidder proposes, including this Purchase Price (as defined in this Agreement).

**11.5.3.**  A good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Sellers in their sole discretion) payable to the order of Delphi (or such other party as Sellers may determine) in an amount equal to 1.75% of such bidder's gross (pre-adjustment) Purchase Price (rounded to the nearest $100,000).

**11.5.4.**  Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Sellers and its advisors.

**11.6.**  **Qualified Bids.**  A bid will be considered only if the bid:

**11.6.1.**  Is on terms and conditions (other than the amount of the consideration and the particular Liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Sellers than, those contained in the Agreement.

**11.6.2.**  Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**11.6.3.**  Proposes a transaction that Delphi determines, in the good faith opinion of its senior management, after consultation with its financial advisors, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus $1,000,000: (i) in the case of the initial Qualified Bid; and (ii) in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

**11.6.4.**  Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

**11.6.5.**  Contains an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of

79

any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**11.6.6.** Includes a commitment to consummate the purchase of the Purchased Assets (including the receipt of any required governmental or regulatory approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within sixty (60) days after entry of such order.

**11.6.7.** Is received by the Bid Deadline; provided, however, that Delphi shall have a one-time right to extend the Bid Deadline up to a maximum of five (5) Business Days, but Delphi is not obligated to do so. If Delphi extends the Bid Deadline, it will promptly inform all of the Qualified Bidders of such extension.

A bid received from a Qualified Bidder will constitute a **"Qualified Bid"** only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, Delphi will have the right, in its sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of the Purchasers is referred to as a **"Subsequent Bid"**.

If Sellers do not receive any Qualified Bids other than the Agreement received from the Purchasers, Sellers will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

**11.7. Bid Protection.** Recognizing the Purchasers' expenditure of time, energy and resources, Sellers have agreed to provide certain bidding protections to the Purchaser. Specifically, Sellers have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor for which all other Qualified Bids must exceed. As a result, Sellers have agreed that if Umicore and the other Purchasers are not the Successful Bidder, Sellers shall, in certain circumstances, pay to the Purchasers a Break-Up Fee. In the event the Agreement is terminated pursuant to certain other provisions thereof, then Sellers shall be obligated to pay only the Purchasers' Expense Reimbursement. The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) shall be governed by the provisions of this Agreement and the Bidding Procedures Order.

**11.8. Auction Bidding Increments and Bids Remaining Open.** If Sellers receive one (1) or more Qualified Bids in addition to this Agreement, Sellers will conduct an auction (the **"Auction"**) of the Purchased Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (at Delphi's election) or other place as Delphi shall notify all Qualified Bidders who have submitted Qualified Bids, at a time to be determined by Delphi (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

**11.8.1.** Only Delphi, Umicore, any representative of the Committee and the Equityholder's Committee, any representative of Delphi's post-petition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely

submitted a Qualified Bid shall be entitled to attend the Auction, and only Umicore and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

**11.8.2.**  At least three (3) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least two (2) Business Day prior to the Auction, Delphi shall provide copies of the Qualified Bid or combination of Qualified Bids which Sellers believe is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction.

**11.8.3.**  All Qualified Bidders who have timely submitted Qualified Bids shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

**11.8.4.**  Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

**11.8.5.**  Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $1,000,000 higher than the previous bid or bids.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), Sellers shall give effect to any Break-Up Fee or Expense Reimbursement that may be payable to Purchaser under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

**11.8.6.**  At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, Sellers, in consultation with their advisors, shall:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "**Successful Bid(s)**" and the bidder(s) making such bid, the "**Successful Bidder(s)**").

**11.9.  <u>Acceptance of Qualified Bids</u>.**  Sellers shall sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after a hearing (the "**Sale Hearing**").  If, after an Auction in which the Purchasers: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee.

Sellers' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Sellers' acceptance of the bid.  Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**11.10.** **Sale Hearing.**  The Sale Hearing shall be held before the Honorable Judge Robert Drain on August 16, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing (subject, however to Section 9.1.1.E. above).  If Delphi does not receive any Qualified Bids (other than the Qualified Bid of the Purchasers), Delphi will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to the Purchasers following entry of the Sale Order.  If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi shall seek approval of the Successful Bid(s) and, at Delphi's election, one or more next highest or best Qualified Bid(s) (the "**Alternate Bid(s)**" and such bidder(s), the "**Alternate Bidder(s)**").  Sellers' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute Sellers' acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either Sellers or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and Sellers shall effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

**11.11.** **Return of Good Faith Deposit.**  Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the closing of the Sale (the "**Return Date**").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder will forfeit its Good Faith Deposit, and such Good Faith Deposit shall irrevocably become property of Sellers in full and final satisfaction of any and all Liabilities of defaulting Successful Bidder to Seller with respect to the Sale.  On the Return Date, Sellers shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**11.12.** **Modifications.**  Sellers, after consultation with the agents for their secured lenders and the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than the Purchasers' bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale; or (c) contrary to the best interests of Sellers, their estate and creditors as determined by Sellers in their sole discretion.

**12.** **SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS; INDEMNIFICATION:**

**12.1.** **Sellers' Agreement to Indemnify.**  If the Closing occurs, subject to the terms and limitations of this Article 12, from and after the Closing: (i) each Seller that is a Non-Filing Affiliate, severally, with respect solely to such Seller; and (ii) in the case of the Sale Company only, Delphi and DASHI, jointly and severally, shall indemnify and hold harmless each Purchaser and its Affiliates, directors, members, managers, officers, employees and their respective Affiliates (collectively, the "**Purchaser Indemnified Parties**") from and against all Losses incurred by a Purchaser Indemnified Party (such Losses actually incurred by either a Purchaser Indemnified Party or a Seller Indemnified Party are referred to as "**Indemnifiable Losses**"), as a result of or arising out of: (A) any misrepresentation, breach, default or

82

failure to perform or satisfy by any Non-Filing Affiliate or, with respect to the Sale Company, DASHI under any of the representations and warranties of such Non-Filing Affiliate, DASHI or the Sale Company set forth in this Agreement or in any document, agreement or certificate delivered by any Non-Filing Affiliate, DASHI (with respect to the Sale Company) or the Sale Company to any such Purchaser at Closing; (B) Retained Liabilities or Excluded Assets that are retained by any such Non-Filing Affiliate; or (C) a breach or default of any agreement or covenant of any such Non-Filing Affiliate in this Agreement that, by its terms, is intended to be performed by such Seller after the Closing Date. Purchasers agree that, except as contemplated by this Article 12, from and after the Closing, the indemnification provided in this Article 12 is the exclusive remedy for a breach by any Seller of any agreement or covenant contained in this Agreement that, by its terms, is intended to be performed by such Non-Filing Affiliate at or after the Closing.

**12.2. Specific Performance.** Sellers acknowledge that the Purchased Assets to be sold and delivered to Purchasers pursuant to this Agreement and the covenants and agreements of Sellers contained herein, including with respect to non-competition in Section 8.10.1.A, are unique and that Purchasers have no adequate remedy at law if Sellers shall fail to perform any of their obligations hereunder intended to be performed by any Seller after the Closing, and Sellers therefore confirm and agree that Purchasers' right to specific performance is essential to protect the rights and interests of Purchasers. Accordingly, in addition to any other remedies which Purchasers may have, Purchasers shall have the right to seek equitable remedies, including specific performance in any of the courts of the United States, any state or other political subdivision thereof or any foreign jurisdiction.

**12.3. Purchasers' Agreement to Indemnify.** If the Closing occurs, subject to the terms of this Article 12, from and after the Closing, Purchasers shall indemnify and hold harmless each Seller and its Affiliates, directors, members, managers, officers, employees and their respective Affiliates (together with the Purchaser Indemnified Parties, each an **"Indemnified Party"**) from and against all Indemnifiable Losses incurred by Sellers as a result of or arising out of: (i) any misrepresentation, breach, default or failure to perform or satisfy by any Purchaser under any of the representations and warranties set forth in this Agreement or in any document, agreement or certificate delivered by any Purchaser to any such Seller at Closing; (ii) the Assumed Liabilities, the Acquired Assets or the Sale Securities; (iii) a breach of any agreement or covenant of any Purchaser contained herein that, by its terms, is intended to be performed after the Closing Date; or (iv) except as otherwise provided in Section 12.1, the conduct of the Business or the ownership of the Acquired Assets after Closing, other than Liabilities relating to environmental matters, for which Section 12.6 shall provide the exclusive basis for indemnification. Sellers agree that, except as contemplated by this Article 12, from and after the Closing the indemnification provided in this Article 12 is the exclusive remedy for a breach by any Purchaser of any agreement or covenant contained in this Agreement that, by its terms, is intended to be performed after the Closing, and that there shall be no remedy for breach by any Purchaser of a representation or warranty or any breach of a covenant or agreement that, by its terms, is intended to be performed prior to the Closing.

**12.4. Third Party Indemnification.** The obligations of any Party (such Party, the **"Indemnifying Party"**) to indemnify any Indemnified Party under Sections 12.1 or 12.3 with respect to Indemnifiable Losses incurred by the Indemnified Party, resulting from the assertion of Liability by third parties (including Governmental Entities) (a **"Third Party Indemnification Claim"**), shall be subject to the following terms and conditions:

**12.4.1.** Any Indemnified Party against whom any Third Party Indemnification Claim is asserted shall give the Indemnifying Party written notice of any such Third Party Indemnification Claim promptly after learning of such Third Party Indemnification Claim (with such notice satisfying the requirements of Section 13.2, as the case may be), and the Indemnifying Party may,

at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the Indemnified Party. Failure to give prompt written notice of an Third Party Indemnification Claim hereunder shall not affect the Indemnifying Party's obligations under this Article 12, except to the extent that the Indemnifying Party is actually prejudiced by such failure to give prompt written notice. The Indemnified Party shall, and shall cause its employees and representatives to, cooperate with the Indemnifying Party in connection with the settlement or defense of such Third Party Indemnification Claim and shall provide the Indemnifying Party with all available information and documents concerning such Third Party Indemnification Claim. If the Indemnifying Party, within thirty (30) days after written notice of any such Third Party Indemnification Claim, fails to assume the defense of such Third Party Indemnification Claim, the Indemnified Party against whom such claim has been made shall (upon further written notice to the Indemnifying Party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the Indemnifying Party, subject to the right of the Indemnifying Party to assume the defense of such Third Party Indemnification Claim at any time prior to settlement, compromise or final determination thereof upon written notice to the Indemnified Party. For purposes of clarification, the term "party" as used in the first sentence of this paragraph means, collectively, each of the Purchasers or each of the Non-Filing Affiliates, as the case may be.

**12.4.2. Escrow Claim.** If any claim for indemnification is made by a Purchaser Indemnified Party pursuant to this Article 12 prior to the eighteen (18) month anniversary of the Closing, such a Purchaser Indemnified Party shall first apply to the Escrow Agent for reimbursement of such claim in accordance with the provisions of the Closing Escrow Agreement prior to seeking reimbursement for such claim provided that nothing herein shall change any of Purchaser's obligation to follow the procedures for indemnification hereunder.

**12.4.3.** Anything in this Section 12.4 to the contrary notwithstanding: (i) the Indemnified Party shall not settle a claim for which it is indemnified without the prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the Indemnifying Party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne by the Indemnifying Party, without the prior written consent of the Indemnified Party, which consent shall not be unreasonably withheld, conditioned or delayed.

**12.5. Limitations.** Each Purchaser's and Seller's right to seek indemnification pursuant to this Section 12 shall be subject to the following limitations.

**12.5.1.** Except as expressly provided in Section 12.5.2 or 12.5.3, the respective representations and warranties and related indemnities of the Non-Filing Affiliates and, with respect to the Sale Company, DASHI and Delphi set forth in this Agreement, and the post-Closing indemnity obligations of the Non-Filing Affiliates and DASHI and Delphi with respect to the Sale Company for breach of such representations and warranties as set forth in this Article 12, shall survive for a period of eighteen (18) months following the Closing. Except as expressly set forth in the preceding sentence with respect to DASHI and Delphi, the representations and warranties of the Filing Subsidiaries will not survive Closing. All other covenants contained in Section 8.10 hereof to be performed after Closing, shall survive the Closing in accordance with their terms until expiration of the applicable statute of limitations unless otherwise set forth herein.

**12.5.2.** Notwithstanding Section 12.5.1 above, the representations and warranties set forth in (and the post-Closing indemnity obligations as set forth in this Article 12 of Non-Filing

Affiliates, and with respect to the Sale Company, DASHI and Delphi or Purchasers, as the case may be, for breach of such representations and warranties): Sections 5.1.2 (Corporate Power; Due Authorization), 5.1.5.A (Title to Personal Property), 5.1.16.B (Marketable Title) and 5.2.2 (Corporate Power; Due Authorization) shall survive the Closing indefinitely.

**12.5.3.**  Notwithstanding Section 12.5.1 above, the representations and warranties set forth in (and the post-Closing indemnity obligations as set forth in this Article 12 of Non-Filing Affiliates and, with respect to the Sale Company, DASHI and Purchasers, as the case may be, for breach of such representations and warranties): (i) Sections 5.1.7 (Intellectual Property Assets), 5.1.15 (Regulatory Matters), 5.1.17 (Tax Matters), 5.1.21 (Product Claims) and 5.2.11 (Anti-Money Laundering) will survive until expiration of the applicable statute of limitations; and (ii) Section 5.1.20 (Environmental Representations and Warranties) will survive for three (3) years after Closing.

**12.5.4.**  In the case of Claims under Sections 12.1(i) or 12.2(i) (representations), an Indemnifying Party will only be responsible for the amount of all Indemnifiable Losses which, in the aggregate exceeds Three Hundred Twenty-Five Thousand Dollars ($325,000.00) ("**Deductible Amount**"), after which point an Indemnifying Party will be obligated to indemnify an Indemnified Party from and against Indemnifiable Losses that are in excess of the Deductible Amount, subject to the Individual Claim Amounts, if applicable; provided, however, any Liability of the: (x) Non-Filing Affiliates under subsections (B) of Section 12.1; or (y) the Purchasers under subsection (ii) of Section 12.3 shall be dollar-for-dollar without regard to the Deductible Amount or the Indemnification Cap. In determining whether or not the threshold for the Deductible Amount has been met, the amount of all Special Claim Matters shall be counted without regard to whether the amount of any particular Special Claim Matter meets or exceeds the Individual Claim Amount. Furthermore, in determining whether the threshold for the Deductible Amount or Indemnification Cap has been met for purposes of this Section 12.5.4 the indemnification obligation of all of the Purchasers and all of the Sellers, respectively, shall be aggregated without regard to the particular Purchaser or Seller against whom indemnification was sought.  For example, if Purchaser A has a claim against Seller 1 for $200,000 and Purchaser B has a claim against Seller 2 for $200,000, the total Indemnifiable Losses would exceed $325,000 and, thus, the Purchasers could seek indemnification hereunder for $75,000.

**12.5.5.**  Notwithstanding any provision of Section 12.5.4 to the contrary, in the case of Claims under Section 12.6 (Environmental Matters), or relating to Excluded Liabilities relating solely to Product warranty or Product returns (the "**Special Claim Matters**"), the Purchaser shall not be permitted to make a Claim for indemnification pursuant to this Article 12 unless the individual Claim or series of related Claims relates to an Indemnifiable Loss equal to or greater than Twenty-Five Thousand Dollars ($25,000.00) ("**Individual Claim Amount**").  For purposes of clarification, except as set forth in the preceding sentence, no other type of Claim shall be subject to any minimum amount or size.

**12.5.6.**  The aggregate amount of Indemnifiable Losses indemnified by the combined Indemnifying Parties that are Purchasers or Sellers, as the case may be, shall not exceed an amount equal to fifty percent (50%) of the Purchase Price (not taking into account any adjustments thereto), after which point such Indemnifying Party(s) will have no further obligation with respect to Indemnifiable Losses under this Agreement; provided, however, that no individual Indemnifying Party shall be obligated to indemnify any Indemnified Party from and against Indemnifiable Losses in excess of one hundred percent (100%) of the Purchase Price for the Acquired Assets sold by such

Indemnifying Party.  The term **"Cap Amount"** refers to the maximum amount payable by an Indemnifying Party or all Indemnifying Parties that are Purchasers or Sellers, as the case may be.

**12.5.7.**  In the absence of fraud by any Seller, the Purchasers shall not be entitled to rescission.

**12.5.8.**  Claims made by one Party against the other Party for failure to pay an amount owed by one Party pursuant to Article 4 shall not be subject to any of the provisions or the limitations set forth in Section 12.5.  Notwithstanding the foregoing, no Party to the Agreement shall be entitled to make any claim under this Article 12 to the extent, but only to such extent, that the item for which such claim was made resulted in a Preliminary Purchase Price adjustment pursuant to Sections 4.6 or 4.7 that was paid in full by the other Party.

**12.5.9.**  In calculating amounts payable to the Indemnified Party, the amount of any Indemnifiable Losses shall be determined without duplication of any other Indemnifiable Losses for which an Indemnified Party has made a claim for indemnification pursuant to this Agreement.

**12.5.10.**  Any written notice delivered by an Indemnified Party to an Indemnifying Party seeking indemnification pursuant to this Agreement with respect to Indemnifiable Losses suffered by the Indemnified Party shall set forth, with as much specificity as is reasonably practicable, the basis of the claim for Indemnifiable Losses, the sections of this Agreement which form the basis for the claim, copies of all material written materials relating to such claim and, to the extent reasonably practicable, a reasonable estimate of the amount of the Indemnifiable Losses that have been or may be sustained by the Indemnified Party.

**12.5.11.**  Any indemnity amounts payable by the Indemnifying Party to or on behalf of an Indemnified Party pursuant to this Agreement (including any indemnity payment made under this Article 12) shall be reduced by any Tax benefit arising from the claim, loss or damage for which the indemnity is being paid, including any increase in deductions, credits or losses of such Indemnified Party (or any of its Affiliates) but shall be increased to make such Indemnified Party (and any of its Affiliates) whole for any Tax detriment arising from the indemnification payment itself.  In the case of Tax benefits consisting of depreciation, amortization or other similar deductions, the Tax benefit amount will be based on the net present value of such deductions using a discount rate equal to the mid-term applicable federal rate in effect on the day on which the indemnification payments are due.  Any calculations of the Tax benefit under this Section 12.5.11 shall be determined assuming such Indemnified Party pays Taxes at the highest combined marginal Tax rate for applicable U.S. federal, foreign, state and local Taxes.

**12.5.12.**  Notwithstanding any other provision of this Agreement, in no event shall any Indemnified Party be entitled to indemnification pursuant to this Agreement to the extent any Indemnified Party's Indemnifiable Losses were attributable to Indemnified Party's own gross negligence or willful misconduct.

**12.5.13.**  Nothing in this Article 12 shall limit any party in exercising or securing any remedies provided by applicable statutory or common law in connection with this Agreement or in the amount of damages that it can recover from the other in the event that any party successfully proves fraud, intentional misconduct, or fraudulent conduct in connection with this Agreement and/or the Transactions.

**12.6.  Environmental Matters:**

**12.6.1.  Indemnification of Seller and Purchaser:**

    **A.**    Subject to the provisions of this Agreement, and solely with respect to the Listed Real Property included in the Acquired Assets or real property held by the Sale Company ("**Indemnified Real Property**"), the appropriate Seller shall indemnify the appropriate Purchaser solely for Environmental Damages arising from Pre-Closing Environmental Contamination and Pre-Closing Environmental Compliance Matters at the Indemnified Real Property.

    **B.**    Subject to the provisions of this Agreement, and solely with respect to the Indemnified Real Property, Purchaser shall indemnify Sellers for Environmental Damages arising from Post-Closing Environmental Contamination and Post-Closing Environmental Compliance Matters.

    **C.**    To the extent feasible, Pre-Closing Environmental Contamination and Pre-Closing Environmental Compliance Matters shall be determined based on the Phase I and Phase II environmental investigations to be conducted prior to Closing by Purchasers at the Indemnified Real Property, and the reports from such investigations shall document pre-Closing baseline conditions ("**Baseline Environmental Conditions**").

    **D.**    Subject to the provisions of this Agreement, including, without limitation, the next sentence, for those Environmental Damages arising from circumstances that may be considered both: (i) Pre-Closing Environmental Contamination and Post-Closing Environmental Contamination; or (ii) Pre-Closing Environmental Compliance Matters and Post-Closing Environmental Compliance Matters, such Environmental Damages shall be allocated between the Parties in proportion to the extent that such Environmental Damages arose pre- or post-Closing, and each Party shall indemnify the other for its share as determined by such allocation.

    **E.**    Section 12.4 shall apply to any third party environmental claims.

    **F.**    Section 13.17 shall apply to any disputes between the parties as to environmental matters.

**12.6.2.  Limitations on Liability.**  Claims relating to environmental matters that are Retained Liabilities are not subject to the limitations of this Article 12 regarding the Deductible Amounts and Cap Amounts.  Claims relating to the environmental matters that are based on a breach of Section 5.1.20 are subject to the limitations of this Article 12 regarding the Deductible Amounts and Cap Amounts.  In addition, neither Party shall be liable under this Agreement for Environmental Damages:

    **A.**    In the case of Environmental Claims arising from Pre-Closing Environmental Compliance Matters or Post-Closing Environmental Compliance Matters (as the case may be), unless written notice of such claim has been served on the non-claiming Party on or before three (3) years following the Closing Date.

    **B.**    In the case of Environmental Claims arising from a Pre-Closing Environmental Contamination or Post-Closing Environmental Contamination (as the case

may be), unless written notice of such claim has been served on the non-claiming Party on or before three (3) years following the Closing Date.

**C.**    Where the indemnified party uses the Indemnified Real Property for a use other than an industrial use substantially similar to such use in effect at the Closing, or seeks to or changes the zoning or land use classification of the Indemnified Real Property to a classification more sensitive than the industrial classification in effect at Closing.

### 12.6.3.  <u>Remediation of Environmental Damage</u>:

**A.**    Where an Environmental Damage arises out of Environmental Contamination, the non-claiming Party shall be responsible for Remedial Works or the redressing of an Environmental Compliance Matter ("**Remedy**") to no less but no more than the Remediation Standards allowed by applicable Environmental Laws; such Remedial Works may be determined, in compliance with applicable Environmental Laws using risk assessment and related risk evaluation methods.  Remedial Work shall be conducted using the commercially reasonable methods of investigation, corrective measures, remediation and/or containment (including the use of institutional controls or deed restrictions for use of the property for industrial purposes only).

**B.**    The non-claiming Party shall, where a Remedy is required pursuant to this Agreement, shall conduct such Remedy in a reasonably expeditious manner.

**C.**    The conduct of a Remedy shall be as follows:

(i)    The non-claiming Party shall prepare appropriate work plans or scopes of work to satisfactorily undertake and complete the Remedy under this Agreement; such Party will provide the other Party with an opportunity to review and comment on such work plans or scopes of work, which comments the non-claiming Party should adopt where such comments do not materially increase any cost or Liability of the Remedy;

(ii)    When requested, the claiming Party shall cooperate with the non-claiming Party in any communications with the appropriate Competent Authority;

(iii)    Where a Seller is the non-claiming Party, such Seller will take all reasonable steps to avoid interfering with Purchaser's operation or use of the Indemnified Real Property, and Purchaser will reasonably cooperate with such Seller including providing access to the Indemnified Real Property and the use of utilities in the conduct of the Remedy;

(iv)    Where applicable the non-claiming Party shall provide copies of all relevant correspondence sent to and received from a Competent Authority, and keep the non-claiming Party reasonably apprised of the progress of the conduct of the Remedy;

(v)    The claiming Party shall have the right to observe all Remediation work; and

(vi)    The conduct of the Remedy shall be deemed complete when, as the case may be:

(1)    The non-claiming Party has received approval regarding the Remedy by an applicable Governmental Entity; or

(2)    Subject to Section 12.6.3.A of this Agreement, the remedy meets the Remediation Standards which are allowed by applicable Environmental Laws.

## 13.    MISCELLANEOUS:

**13.1.  Bulk Sales Laws.**  Each Seller and Purchaser hereby waive compliance by Sellers with the provisions of the bulk sales Law of any state or foreign jurisdiction.

**13.2.   Notices.**  Except as otherwise provided in Article 11 hereto, all notices, requests, consents or other communications permitted or required under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first Business Day after being sent by reputable overnight carrier, or on the third Business Day after being sent by registered or certified first class mail (with receipt confirmed), to the following:

| | |
|---|---|
| **If to Sellers:** | **DELPHI CORPORATION**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  President - Delphi Energy & Chassis Systems<br>Fax No.:  248-813-4301 |
| **With a copy to:** | **DELPHI CORPORATION**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  Deputy General Counsel - Transactional & Restructuring<br>Fax No.:  248-813-2491 |
| **If to Purchasers:** | **UMICORE**<br>Broekstraat 31 Rue du Marais<br>Brussels B-1000<br>Belgium<br>Attn:  Alain Godefroid<br>Fax No.:  (IAC) 32-2-227-7913 |
| **With a copy to:** | **GOODWIN | PROCTER LLP**<br>901 New York Avenue, N.W.<br>Washington, DC 20001<br>Attn:  J. Hovey Kemp<br>Fax No.:  202-346-4444 |

provided, however, if either Party shall have designated a different addressee by notice, then to the last addressee so designated.

**13.3.  Assignment.**  This Agreement shall be binding and inure to the benefit of the successors and assigns of each of the Parties, but no rights, obligations, duties or Liabilities of either Party may be assigned without the prior written consent of the other, which shall not be unreasonably withheld.

**13.4.  Entire Agreement.**  This Agreement, together with the Ancillary Agreements and the Purchaser Confidentiality Agreement, represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein.  This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

**13.5.  Waiver.**  Any waiver by any Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) shall be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) shall not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement.  At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein.  Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

**13.6.  Severability.**  Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision shall not affect the validity or enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, shall remain in full force and effect, and the application of such invalid or unenforceable provision, or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by Law.

**13.7.  Amendment.**  This Agreement may only be amended only in writing by duly authorized representatives or officers of Delphi and Umicore.

**13.8.  Expenses.**  Except as otherwise expressly provided in Section 9.3 of this Agreement or an Ancillary Agreement, each Party shall be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

**13.9.  Third Parties.**  Nothing contained in this Agreement, express or implied, is intended to or shall be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

**13.10.  Headings.**  The headings contained in this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

**13.11.  Counterparts.**  More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart shall be deemed an original.  Signatures may be sent by facsimile or other form of electronic transmission.

**13.12.  Governing Law.**  This Agreement shall be construed and enforced in accordance with the laws of the State of New York and, to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**13.13.  Public Announcements.**  Sellers and Purchasers will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and shall not issue any press release or make any public statement without mutual consent, except as may be required by Law and then only with such prior consultation, or in connection with the Bankruptcy Cases.

**13.14.  Venue and Retention of Jurisdiction.**  All actions brought, arising out of or related to the transactions contemplated in this Agreement shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to determine any and all such actions.

**13.15.  Risk of Loss.**  Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business shall be borne exclusively by the Sellers.

**13.16.  Enforcement of Agreement.**  The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached.  It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

**13.17.  Dispute Resolution.**  Sellers and Purchasers will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Transfer Agreement by good faith negotiations by senior management of each party.  If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute.  Within fifteen (15) business days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response.  The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties.  Within fifteen (15) Business Days after such written response, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute.  All reasonable requests for information made by one party to the other will be honored promptly.  All negotiations pursuant to this Section 13.17 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.  In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 13.14 above.

**13.18.  No Right of Setoff.**  Neither party hereto nor any Affiliate thereof may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it hereunder or pursuant to any Ancillary Agreement against any amounts owed hereunder or pursuant to any Ancillary Agreement by such Persons to the other party hereto or any of such other party's Affiliates.

**13.19.  Limitation on Damages.**  NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, INCLUDING ARTICLE 12, IN NO EVENT SHALL PURCHASER OR SELLER BE LIABLE FOR, OR BEAR ANY OBLIGATION IN RESPECT OF, ANY PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND OR

CHARACTER OR ANY DAMAGES RELATING TO, OR ARISING OUT OF, DIMINUTION IN VALUE, LOST PROFITS OR CHANGES IN RESTRICTIONS ON BUSINESS PRACTICES.

**[Signature Pages to Follow]**

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized officers.

<u>**PURCHASERS**</u>:

**UMICORE** (on behalf of itself and its Affiliates to be signatories hereto)

By:_____
    **Thomas Leysen**
    Chief Executive Officer

By: _____
    **Marc Grynberg**
    Executive Vice President

<u>**SELLERS:**</u>

**DELPHI CORPORATION**

By: _____
    **John P. Arle**
    Vice President and Treasurer

**DELPHI AUTOMOTIVE SYSTEMS (HOLDING), INC.**

By: _____
    **John P. Arle**
    Chief Financial Officer and Treasurer

**EXHAUST SYSTEMS CORPORATION**

By: _____
    **John P. Arle**
    Assistant Treasurer

**ENVIRONMENTAL CATALYSTS, LLC**

By: _____
    **John P. Arle**
    Assistant Treasurer

**ASEC MANUFACTURING (ASEC)**

By:   **ENVIRONMENTAL CATALYSTS, LLC**

**ASEC SALES (ASEC)**

By:   **ENVIRONMENTAL CATALYSTS, LLC**

By: _____

**John P. Arle**
Assistant Treasurer

**By:**  **EXHAUST SYSTEMS**
**CORPORATION**

By: _____

**John P. Arle**
Assistant Treasurer

By: _____

**John P. Arle**
Assistant Treasurer

**By:**  **EXHAUST SYSTEMS**
**CORPORATION**

By: _____

**John P. Arle**
Assistant Treasurer

**LIST OF SCHEDULES**

| DESIGNATION | DESCRIPTION |
|---|---|
| Schedule A | Sellers' Knowledge |
| Schedule 1 | Detail of Sellers and Purchasers |
| Schedule 1.3.1 | Sales Office Acquired Assets |
| Schedule 1.3.2.1 | Acquired Carved-Out Manufacturing Location Assets |
| Schedule 1.4.1 | Third Party Bailed Assets |
| Schedule 1.4.4 | Excluded Financial Contracts |
| Schedule 1.4.6 | Excluded Intellectual Property |
| Schedule 1.4.20 | Other Excluded Assets |
| Schedule 1.7 | Certain Assigned Contracts |
| Schedule 3.2.1 | Offer of Employment |
| Schedule 3.2.4 | Recent Benefit Announcements |
| Schedule 4.6.1 | Net Working Capital Methodology |
| Schedule 4.6.2 | Adjustments for Changes in Owned PGMs |
| Schedule 4.6.5 | Methodology for Determining Benefits Adjustment |
| Schedule 4.6.6 | Assumed PTO Calculation Methodology |
| Schedule 4.7.1.1 | Closing PGM Inventory Methodology |
| Schedule 4.8.1 | Allocation of Purchase Price |
| Schedule 4.6.9 | U.S. Employee-Related Credit |
| Schedule 5.1.3 | No Violations |
| Schedule 5.1.5.A | Title to Personal Property |
| Schedule 5.1.5.C | Other Inventory Locations |
| Schedule 5.1.5.D | Machinery, Equipment and Capitalized Tools (Value Greater than U.S. $25,000) |
| Schedule 5.1.6 | Litigation |
| Schedule 5.1.7.A.1 | Owned Intellectual Property |
| Schedule 5.1.7.A.2 | Licensed Intellectual Property |
| Schedule 5.1.7.A.3 | Software |
| Schedule 5.1.7.C | Rights Granted to Third Parties |
| Schedule 5.1.7.D | Intellectual Property Litigation Claims |
| Schedule 5.1.7.F | Infringement of Purchased Intellectual Property |
| Schedule 5.1.8 | Insurance |
| Schedule 5.1.9 | Compliance and Permit Exceptions |
| Schedule 5.1.11 | Third Party Consents |
| Schedule 5.1.13 5.1.12 | Absence of Certain Changes July Projections |
| Schedule 5.1.14.A | Listed Contracts |
| Schedule 5.1.14.B | Listed Contracts - Exceptions |
| Schedule 5.1.15 | Regulatory Matters |
| Schedule 5.1.16.A | Real Property |
| Schedule 5.1.16.B | Title Exceptions to Real Property |
| Schedule 5.1.17.D | Tax Returns |
| Schedule 5.1.17.G | Other Tax |
| Schedule 5.1.17.K | Tax Rulings |
| Schedule 5.1.18 | Sale Securities |
| Schedule 5.1.19.A | Current Employees |
| Schedule 5.1.19.B | Exceptions to Sellers' Performance |
| Schedule 5.1.19.C | Benefit Plans |
| Schedule 5.1.19.C(ii) | Compliance |
| Schedule 5.1.19.C(iii) | Triggering of Obligations |

| **DESIGNATION** | **DESCRIPTION** |
|---|---|
| Schedule 5.1.19.C(iv) | Funding of Seller Benefit Plans |
| Schedule 5.1.19.D | Collective Bargaining Agreements |
| Schedule 5.1.19.E | Grievance, Labor Negotiations |
| Schedule 5.1.20 | Environmental |
| Schedule 5.1.22 | Accounts Receivable |
| Schedule 5.2.13 | Shelf Tulsa Collective Bargaining Agreement |
| Schedule 7.2.1 | Fuel Reformer Patents |
| Schedule 7.2.2 | Fuel Reformer Patent License |
| Schedule 7.2.6 | Transition Services Agreement |
| Schedule 7.2.7 | Atmospheric Catalyst License |
| Schedule 7.2.8(i) | Testing Services Agreement – Luxembourg |
| Schedule 7.2.8.(ii) | Testing Services Agreement – Flint |
| Schedule 7.2.9(i) | Canning Supply Agreement Term Sheet – Shanghai |
| Schedule 7.2.9(ii) | Canning Supply Agreement Term Sheet – Clayton |
| Schedule 7.2.10(i) | Toll Manufacturing Agreement Term Sheet – Shanghai |
| Schedule 7.2.10(ii) | Toll Manufacturing Agreement Term Sheet – Clayton |
| Schedule 7.2.10(iii) | Toll Manufacturing Agreement Term Sheet – San Luis Potosi |
| Schedule 7.2.11 | Closing Escrow Agreement |
| ~~Schedule 8.1.6~~ | ~~Currently Contemplated PGM Initiatives~~ |
| Schedule ~~8.1.8~~8.1.7 | Other Current Assets and Liabilities |
| Schedule 8.2 | Counterpart Signature Page to Master Sale and Purchase Agreement |
| Schedule 8.5 | Operation of the Business Pending Closing |
| Schedule 8.8 | Closing Date Assumed PTO Obligations Schedule |
| Annex I | Sample Calculation of Purchase Price Adjustments |

**SCHEDULE 1**

**DETAILS OF SELLERS AND PURCHASERS**

| Manufacturing Facility | Asset/ Stock | Sale Company | Seller | Purchaser |
|---|---|---|---|---|
| San Luis Potosi, Mexico | Asset | | AS Catalizadores Ambientales, S.A. de C.V. **(ASCA)** | Umicore Autocat USA Inc. (USA) or Unimet S.A. de C.V.(Mexico) |
| Port Elizabeth, South Africa | Stock (100%) | Delphi Catalyst South Africa (Proprietary) Ltd. | Delphi Automotive Systems (Holding), Inc. | Umicore Finance Luxembourg S.A. (Luxembourg) |
| Shanghai, China | Asset | N/A | Shanghai Delphi Emission Control Systems Company, Ltd. (China) | UMS (Shanghai) Ltd (China) or Umicore Autocat China Ltd |
| Florange, France | Asset | N/A | Delphi Diesel Systems France SAS | NewCo SAS (France) |
| Clayton, Australia | Asset | N/A | Delphi Automotive Systems Australia Ltd. | Umicore Autocat USA (USA) or UMS Australia Ltd (Australia) |
| Tulsa, Oklahoma | Asset | N/A | Exhaust Systems Corporation; Environmental Catalysts, LLC; ASEC Man and ASEC Sales **(ASEC)**\*\* | Umicore Autocat USA Inc. (USA)<br><br>Umicore[1] |
| Maharashtra, India | Asset | N/A | Delphi Automotive Systems Pvt. Ltd. | To be decided for each agreement what non-Indian Umicore company will take it over |
| | | | | |
| **Technical Centers** | | | | |
| Flint, Michigan | Asset | N/A | ASEC | Umicore Autocat USA Inc. (USA)<br><br>Umicore[1] |
| Bascharage, Luxembourg | Asset | N/A | Delphi Automotive Systems Luxembourg S.A. | NewCo S.A. (Luxembourg) |

---

[1]    All Intellectual Property included in the Acquired Assets shall be acquired by Umicore.

| Manufacturing Facility | Asset/ Stock | Sale Company | Seller | Purchaser |
|---|---|---|---|---|
| | | | | |
| **Sales Offices**\*\*\* | | | | |
| Italy | Asset | N/A | | Local Umicore company |
| Germany | Asset | N/A | | Local Umicore company |
| Japan | Asset | N/A | | Local Umicore company |
| India | Asset | N/A | | Local Umicore company |
| Troy, Michigan | Asset | N/A | | Local Umicore company |

\*\*ASEC Man is 50% owned by Environmental Catalysts, LLC (**EC LLC**) and 50% owned by Exhaust Systems Corporation (**ESC**); ASEC Sales is 50.1% owned by EC LLC and 49.9% owned by ESC.

\*\*\* Assets consist of computers and, in some cases, vehicles.  The following employees supporting technical and sales activities are Employees of the Sales Offices: India - 1; Italy – 1; Japan – 2; Troy, MI - 4; and Germany – 1, and would need to be relocated on or before the Closing Date.

Document comparison done by Workshare DeltaView on Wednesday, August 15, 2007 2:45:34 PM

| Input: | |
|---|---|
| Document 1 | file://C:/Documents and Settings/bz9z0l/My Documents/Winword/Margaret/Miscellaneous/PEGASUS/MSA/UMICORE/FINAL/MSA Umicore-Delphi 060507 - FINAL-Bankruptcy.doc |
| Document 2 | file://C:/Documents and Settings/bz9z0l/My Documents/Winword/Margaret/Miscellaneous/PEGASUS/MSA/UMICORE/MSA Umicore-Delphi 0081507 - POST-AUCTION REVISIONS.doc |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 84 |
| Deletions | 79 |
| Moved from | 6 |
| Moved to | 6 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 175 |

## SCHEDULE 4.6.9

## U.S. EMPLOYEE-RELATED CREDIT

**Tulsa Severance Reimbursement:**

For each employee on the Tulsa payroll, who becomes a Hired Current Employee in excess of 66-2/3% of the aggregate number of active (as of the Closing Date) hourly and salaried employees at the Business' Tulsa, Oklahoma location (which, in no event, shall be greater than 295 total employees), Umicore shall be entitled to a U.S. Employee-Related Credit equal to $52,000 per Hired Current Employee up to a maximum of 100 additional Hired Current Employees.

**Flint/Troy Severance Reimbursement:**

For each U.S. Corporate Employee or employee at the Business' Michigan location that becomes a Hired Current Employee, Umicore  shall be entitled to a U.S. Employee-Related Credit equal to $75,000 per Hired Current Employee up to a maximum of 28 Hired Current Employees.

**SCHEDULE 4.8.1**

**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

|  |  | **Purchase Price Allocation $ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V. Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd. Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of Assets | 0.4 |
|  | **Total** | 75.0 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                 :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, <u>et al.</u>, | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004, 6006,
AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF DEBTORS'
ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS OF THE CATALYST
BUSINESS OF CERTAIN OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND
(III) ASSUMPTION OF CERTAIN LIABILITIES

("CATALYST BUSINESS SALE APPROVAL ORDER")

          Upon the motion, dated June 6, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i)

the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising

substantially all the assets that comprise the catalyst business (the "Catalyst Business"), free and

clear of liens, claims, and encumbrances, to Umicore and certain of its affiliates (the "Purchasers")

pursuant to the Master Sale and Purchase Agreement, originally dated June 5, 2007 (as amended

on the record at the auction held on August 8, 2007 to, inter alia, increase the purchase price to be

provided by the Purchasers to $75 million (subject to adjustments), the "Agreement"), by and

between Delphi and certain of its affiliates, including certain affiliated Debtors as set forth in the

Agreement (the "Selling Debtor Entities"),[1] and the Purchasers or to the party submitting who

submitted the highest or otherwise best bid at the auction held on August 8, 2007 (the "Successful

Bidder"), (ii) the assumption and assignment of certain prepetition executory contracts and

unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory

contracts and unexpired leases (the "Postpetition Contracts," and collectively with the Assumed

Contracts, the "Assigned Contracts") to the Purchasers or the Successful Bidder, and (iii) the

assumption of certain liabilities (the "Assumed Liabilities") by the Purchasers or the Successful

Bidder; and the Court having entered an order on June —,29, 2007 (the "Bidding Procedures

Order") (a) approving bidding procedures, (b) granting certain bid protections, (c) approving the

form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having

been held on August 16, 2007, at which time all interested parties were offered an opportunity to

be heard with respect to the Motion; and the Court having reviewed and considered (x) the Motion,

(y) the objections thereto, if any, and (z) the arguments of counsel made, and the evidence

proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is

in the best interests of the Selling Debtor Entities, their estates, their creditors, and all other

parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

---

[1]   Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems (Holding) Inc.,
Exhaust Systems Corporation, Environmental Catalysts, LLC, ASEC Manufacturing General Partnership, and
ASEC Sales General Partnership.  Certain assets will be sold under the Agreement by non-debtor affiliates of the
Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling
non-Debtor affiliates are collectively referred to as the "Sellers."

2      DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22.
Performed on 8/15/2007.

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assumed Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C.    §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts or assignment of the Postpetition Contracts is or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
(cont'd)

3    DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

E.      The Purchasers waived their right to assert any and all claims against the Debtors and their estates related to the process by which the Selling Debtor Entities have sold the Purchased Assets, including but not limited to, the bidding procedures and the auction.

F.      Catalytic Solutions, Inc. and certain of its affiliates (collectively, the "Alternate Bidder") submitted a final bid at the auction consisting of: (a) the following documents: the Alternate Bidder's bid submission documents delivered to the Selling Debtor Entities on July 31, 2007 and marked at the auction as Exhibit 5, as amended by the documents marked at the auction as Exhibit 8 (a blacklined Master Sale and Purchase Agreement), Exhibit 9 (Schedule 3.2.1 to Exhibit 8 at the auction), Exhibit 10 (a lease governing real property in Luxembourg), and Exhibit 11 (a lease governing real property in Shanghai) and (b) cash purchase price and certain cost savings to the Sellers which the Selling Debtor Entities determined to have a combined value of $70.5 million and which final bid (the "CSI Final Bid") was determined by the Debtors to be the Alternate Bid (as defined by the Bidding Procedures Order) to be submitted to this Court for approval in accordance with the Bidding Procedures Order.

G.      ~~E.~~ The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other documents contemplated thereby, and the transfer and conveyance of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken all corporate action necessary to authorize and approve the Agreement and the consummation by the Selling Debtor Entities of the transactions contemplated thereby, and no consents or approvals, other than

_____
*(cont'd from previous page)*
      fact when appropriate.  See Fed. R. Bankr. P. 7052.

4      DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

those expressly provided for in the Agreement, are required for the Selling Debtor Entities to consummate such transactions.

H.    F.  The Selling Debtor Entities have demonstrated (i) good, sufficient, and sound business purposes and justification for the Sale because, among other things, the Selling Debtor Entities and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Purchased Assets and determined that the terms and conditions set forth in the Agreement, and the transfer to Purchasers of the Purchased Assets pursuant thereto, represent a fair and reasonable purchase price and constitute the highest or otherwise best value obtainable for the Purchased Assets and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization because, among other things, absent the Sale the value of the Purchased Assets will be substantially diminished.

I.    G.  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Purchasers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as defined below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (viii) all parties to

Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of

Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities ~~that~~as are

required to be served with notices under the Supplemental Case Management Order.

> J.    ~~H.~~The Purchasers are not "insiders" of any of the Debtors as that term is
defined in 11 U.S.C. § 101(31).

> K.    ~~I.~~The Agreement was negotiated, proposed, and entered into by the Selling
Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Purchasers have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

> L.    ~~J.~~The Purchasers are good faith purchasers under 11 U.S.C. § 363(m) and,
as such, are entitled to all of the protections afforded thereby.  The Purchasers will be acting in

good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by

the Agreement at all times after the entry of this Sale Approval Order.

> M.    ~~K.~~The consideration provided by the Purchasers for the Purchased Assets
pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities' creditors

than would be provided by any other practical available alternative, and (iv) constitutes reasonably

equivalent value and fair consideration under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession, or the District of Columbia.

N.    L. The Sale must be approved and consummated promptly to preserve the viability of the Catalyst Business as a going concern. The Sale is in contemplation of, and a necessary condition precedent to, a reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

O.    M. The transfer of the Purchased Assets to the Purchasers will be a legal, valid, and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the Selling Debtor Entities, will vest the Purchasers with all right, title, and interest to the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the Petition Date commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including, but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Catalyst Business prior to the Closing Date, including the transfer of the Purchased Assets to the Purchasers (collectively, the "Interests and/or Claims").

P.    N. If the Sale of the Purchased Assets with respect to the Selling Debtor Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, or if the Purchasers would, or in the future could, be liable for any of the

Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, the Purchasers would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their creditors.

Q. O. The Selling Debtor Entities may sell their interests in the Purchased Assets free and clear of all Interests and/or Claims because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. All holders of Interests and/or Claims who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2). Those holders of Interests and/or Claims who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest or Claim with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale.

R. P. Except as expressly provided in the Agreement, the (i) transfer of the Purchased Assets to the Purchasers and (ii) assumption and/or assignment to the Purchasers of the Assigned Contracts and Assumed Liabilities will not subject the Purchasers to any liability whatsoever with respect to the operation of the Catalyst Business prior to the Closing of the Sale, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

S.    Q. The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts as applicable to the Purchasers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities are is reasonable, enhance and enhances the value of the Selling Debtor Entities' estates, and do not constitute unfair discrimination.

T.    R. The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasers have provided adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchasers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

U.    ~~S.~~ Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests of

the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

<u>General Provisions</u>

1.    The Motion is GRANTED, and all objections to the Motion or the

relief requested therein that have not been withdrawn, waived, or settled, and all

reservations included therein, are hereby overruled on the merits.

<u>Approval Of The Agreement</u>

2.    Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms

and conditions thereof are hereby approved.

3.    Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are

authorized to perform their obligations under the Agreement and comply with the terms

thereof and consummate the Sale in accordance with and subject to the terms and

conditions of the Agreement.

4.    Each of the signatories to the Agreement is <u>authorized, but not</u>

directed, to take all actions necessary or appropriate to effectuate the terms of this Sale

Approval Order.

5.    The Selling Debtor Entities are authorized ~~and~~<u>, but not</u> directed, to

execute and deliver, and empowered to perform under, consummate, and implement, the

Agreement, together with all additional instruments and documents ~~that~~as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchasers for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.      This Sale Approval Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, the Purchasers, all successors and assigns of the Purchasers and the Selling Debtor Entities, all affiliates and subsidiaries of the Purchasers and the Selling Debtor Entities, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

7.      The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment, or supplement is not material.

<u>Sale And Transfer Of The Purchased Assets</u>

8.      Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Approval Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Purchased Assets of the Selling Debtor

Entities shall be transferred to the Purchasers free and clear of all Interests and/or Claims, with all such Interests and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets, subject to any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.    The transfer of the Purchased Assets to the Purchasers pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchasers with all right, title, and interest of the Selling Debtor Entities in and to the Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.    If any person or entity which has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or Claims against or in the Purchased Assets with respect to the Selling Debtor Entities shall not have delivered the foregoing to the Selling Debtor Entities prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Selling Debtor Entities are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Purchasers are hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature whatsoever.

12    DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

11.    This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

12.    Except as expressly permitted or otherwise specifically provided by the Agreement or this Sale Approval Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature whatsoever against or in the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Selling Debtor Entities, the Purchased Assets of the Selling Debtor Entities, the operation of the Catalyst Business by the Selling Debtor Entities prior to the Closing of the Sale, or the transfer of

13    DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

the Purchased Assets to the Purchasers, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchasers, their successors or assigns, their property, or the Purchased Assets, such persons' or entities' Interests and/or Claims.

13.    Upon the consummation of the transactions contemplated by the Agreement, the Purchasers shall not be deemed to (a) be the successor of the Selling Debtor Entities, (b) have, de facto or otherwise, merged with or into the Selling Debtor Entities, (c) be a mere continuation or substantial continuation of the Selling Debtor Entities or the enterprise(s) of the Selling Debtor Entities, or (d) be liable for any acts or omissions of the Selling Debtor Entities in the conduct of the Catalyst Business. Nothing in this Sale Approval Order or the Agreement releases or nullifies any Liability to a governmental agency under any environmental laws and regulations that any entity would be subject to as owner or operator of any Purchased Assets after the date of entry of this Sale Approval Order. Nothing in this Sale Approval Order or Agreement bars, estops, or enjoins any governmental agency from asserting or enforcing, outside the Court, any Liability described in the preceding sentence. Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to obtain penalties from the Purchasers for days of violation of environmental laws and regulations prior to Closing.

<u>Assumption And Assignment To The Purchaser Of The Assumed Contracts</u>

13.    14. Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the Purchasers, and the Purchasers' assumption on the terms set forth in the Agreement, of the Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied.

14.    ~~15.~~ The Selling Debtor Entities are hereby authorized in accordance with 11 U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Purchasers, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Purchasers such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to the Purchasers.

15.    ~~16.~~ The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchasers in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entities shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption of such contracts by the Purchasers.

16.    ~~17.~~ All defaults or other obligations of the Selling Debtor Entities under the Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms of the Agreement, and the Purchasers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-debtor party to any Assumed Contracts ~~is~~shall be deemed to have consented to the assumption and assignment of the Assumed Contracts to the Purchasers and ~~is~~shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entities or the Purchasers, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing

15    DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

or any purported written or oral modification to the Assumed Contracts.  The failure of the Debtors

or the Purchasers to enforce prior to the Closing of the Sale one or more terms or conditions of any

Assumed Contracts shall not be a waiver of such terms or conditions or of the Debtors' or

Purchasers' rights to enforce every term and condition of any such Assumed Contracts.

Additional Provisions

17.    18. The transactions contemplated by the Agreement, and the execution,

delivery, and/or recordation of any and all documents or instruments necessary or desirable to

consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt

from the imposition and payment of all stamp, transfer, or any other similar taxes, pursuant to

section 1146 of the Bankruptcy Code.

18.    19. The consideration provided by the Purchasers for the Purchased Assets

under the Agreement is hereby deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, and any state, territory,

possession, or the District of Columbia.

19.    20. Upon the Closing of the Sale, this Sale Approval Order shall be

construed as and shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale

transferring good and marketable title in such Purchased Assets and Assigned Contracts to the

Purchasers pursuant to the terms of the Agreement.

20.    21. The transfer of the Purchased Assets pursuant to the Agreement is a

transfer pursuant to section 1146(c) of the Bankruptcy Code, and thus the Sale and the execution,

delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Sale shall be, and hereby are, exempt from the imposition and payment of all recording fees and taxes, stamp taxes and/or sales, use, transfer, documentary, registration, or any other similar taxes.

21.    22. Except as otherwise provided in the Agreement, upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is directed to execute such documents and take all such other actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

22.    23. Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

23.    24. All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchasers upon the Closing of the Sale.

24.    25. The Purchasers shall have no liability or responsibility for any liability or other obligation of the Selling Debtor Entities arising under or related to the Purchased Assets other than for the Assumed Liabilities and the Permitted Liens.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, the Purchasers shall not be liable for any claims against the Selling Debtor Entities or any of their predecessors or affiliates, and the Purchasers shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing of the Sale, whether now existing

17    DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

or hereafter arising, or whether fixed or contingent, with respect to the Catalyst Business or any

obligations of the Selling Debtor Entities arising prior to the Closing of the Sale, except as

expressly provided in the Agreement, including, but not limited to, liabilities on account of any

taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the

operation of the Catalyst Business prior to the Closing of the Sale.

25.    26. All persons holding Interests and/or Claims against or in the Selling

Debtor Entities or the Purchased Assets held by the Selling Debtor Entities of any kind or nature

whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from

asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature

whatsoever against the Purchasers, their property, their successors and assigns, or the Purchased

Assets with respect to any Interest or Claim of any kind or nature whatsoever which such person or

entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers,

their directors, their shareholders, or the Purchased Assets held by the Selling Debtor Entities.

Following the Closing of the Sale, no holder of an Interest in or Claim against the Selling Debtor

Entities shall interfere with the Purchasers' title to or use and enjoyment of the Purchased Assets

based on or related to such Interest or Claim or any actions that the Selling Debtor Entities may

take in their chapter 11 cases.

26.    27. The transactions contemplated by the Agreement are undertaken by the

Purchasers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Purchasers, unless such authorization is duly stayed pending such appeal.  The Purchasers are

purchasers in good faith of the Purchased Assets, and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

27.    28. The consideration provided by the Purchasers for the Purchased Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

28.    29. The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this Sale Approval Order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Approval Order.

29.    30. The Selling Debtor Entities are authorized to continue and complete the retention bonus program for the twelve affected employees at the Tulsa facility, as described in the Motion; provided that such employees is are still employed by the Selling Debtor Entities as of the closing date of the Sale.  Any affected employee who resigns prior to the closing of the Sale willshall not be entitled to the foregoing retention bonus.

30.    31. Delphi Automotive Systems (Holding) Inc. is authorized, but not directed, to satisfy, retire, or forgive, as necessary, the outstanding liabilities of Delphi Catalyst South Africa (Proprietary) Limited as required by the Agreement.

31.    32. The transfer of certain of the Catalyst Business' intellectual property by Delphi Automotive Systems, LLC and Delphi Technologies, Inc. to ASEC Manufacturing General

Partnership (or another Selling Debtor Entity) or its designee by quit-claim deed or otherwise in consideration for fair value is hereby approved.

32.    33. The terms and provisions of the Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their estates, and their creditors, the Purchasers, and their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest and/or Claim against or in the Purchased Assets to be sold to the Purchasers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding.

33.    34. The Selling Debtor Entities shall not propose or seek confirmation of a plan of reorganization that is inconsistent with or derogate from the terms of the Agreement.

34.    35. Notwithstanding anything contained herein to the contrary, the term "Purchased Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates (except to the extent that certain Purchased Assets are property of the Sellers other than the Selling Debtor Entities), such as funds that are trust funds under any applicable state lien laws.

35.    36. To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

36.   ~~37.~~ The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

37.   ~~38.~~ The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities' estates.

~~39.   The provisions of this Sale Approval Order are nonseverable and mutually dependent.~~

38.   ~~40.~~ Nothing in this Sale Approval Order shall alter or amend the Agreement and the obligations of the Sellers and the Purchasers thereunder.

39.   ~~41.~~ This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchasers, (b) compel delivery of the purchase price or performance of other obligations owed to the Selling Debtor Entities pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Sale Approval Order, (e) protect the Purchasers against any Interests and/or Claims against or in the Selling Debtor

Entities or the Purchased Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (f) determine all disputes among the Selling Debtor Entities, the Purchasers, and any non-Debtor parties to any Assigned Contracts concerning, inter alia, the Selling Debtor Entities' assumption and/or assignment of any Assigned Contract to the Purchaser under the Agreement.

40.    42. The Purchase Price will The purchase price shall be and hereby is allocated between the Selling Debtor Entities and the non-Debtor Sellers as set forth on the schedule filed and served by the Debtors on June [●], 2007. Schedule 2.  To the extent that indemnification obligations arise under the Agreement on account of the liability of a non-Debtor Seller, such indemnity will shall be paid from the proceeds of the Sale allocated to such non-Debtor Seller.

41.    The CSI Final Bid is hereby approved as the Alternate Bid (as defined by the Bidding Procedures Order).

42.    Following entry of this Order, if the Purchasers fail to consummate the Sale because of the failure of a condition precedent beyond the control of either the Sellers or the Purchasers or a breach or failure to perform on the part of the Purchasers, then the Alternate Bid shall be deemed to be the Successful Bid (as defined in the Bidding Procedures Order); the Alternate Bidder shall have all of the rights, protections, and status as if it were the "Purchaser," as defined in this Order, including, without limitation, the status of a purchaser in good faith within the meaning of 11 U.S.C. § 363(m); and the Selling Debtor Entities shall be authorized, but not directed, to effectuate a sale of the Catalyst Business to the Alternate Bidder subject to the terms of the Alternate Bid without further order of this Court.

43.     The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for the

service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       [August    ], 2007


_____
        UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Corning, Inc. | Purchase Order Nos. 50186, 50187, 50188, and 50189 | $2,126,226.63 |
| First American Capital Mgmt. | Purchase Order Nos. 12999, 12834, 15588, and M29398 | $0.00 |
| Heraeus Chemicals Sa Pty | Contract between Heraeus Chemicals and Delphi Automotive Systems LLC ("DAS LLC"), dated July 24, 2004 | $0.00 |
| Heraeus Metal Processing, Inc. / Heraeus Precious Metals Management LLC | Purchase Order No. 50112 | $306,172.40 |
| Impala Platinum Limited ("Impala") | Precious Metals Supply Agreement, dated November 2004, between Impala and DAS LLC and Precious Metals Supply Agreement, dated December 2000, between Impala and DAS LLC | $0.00 |
| Johnson Mathey, Inc. / Johnson Mathey Alfa Aesar / Johnson Mathey PLC | Bailment Agreement, dated October 29, 2004, between DAS LLC and Johnson Mathey, Inc. | $0.00 |
| MDIS Inc. | Agreement #2427 between ASEC and MDIS – CHESS, dated September 29, 1995 | $0.00 |
| NGK Automotive Ceramics USA Inc. | Purchase Order No. 50028 | $2,914,235.42 |
| Prime Systems Incorporated ("Prime") | Software License Agreement, dated, September 16, 1996, between ASEC and Prime | $0.00 |
| Sabin Metal Corporation ("Sabin") | Letter Agreement , dated October 23, 2002, between Delphi and Sabin | $10,583.35 |
| Shanin LLC | Purchase Order No. 19545 | $0.00 |
| University of New Mexico ("UNM") | UNM Industrial Sponsored Research Agreement between Delphi and the Regents of UNM, dated March 1, 2005 | $0.00 |
| WC Heraeus GmbH & Co. KG | Bailment Agreement, dated July 1, 2003, between DAS LLC and W.C. Heraeus GmbH & Co. KG | $0.00 |
| All American Fire Systems, Inc. | Purchase Order No. M411384 | $0.00 |
| AlliedSignal, Inc. | Sales Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 and Manufacturing Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 | $0.00 |
| Applied Controls Corporation | Confidentiality Agreement, dated June 30, 2002, between Delphi Automotive Systems and Applied Controls Corp. | $0.00 |
| Bruker Axis Inc. | Purchase Order No. 22388 | $0.00 |
| BSI Inspectorate Precious Metals | Purchase Order No. 21046 | $0.00 |
| Cleintele | Purchase Order No. 21893 | $0.00 |
| Contrarian Funds LLC, as assignee of Aramark Uniform & Career Apparel Inc. | Purchase Order No. 18316 | $11,532.14 |
| Corning, Inc. | Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005, Addendum to Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis | $0.00 |

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| | Division, dated May 1, 2005 | |
| David Matthews Construction Company | Purchase Order No. 22257 and Delphi Automotive Systems Confidentiality Agreement with Joe Mayfield Construction Company, Inc., dated June 3, 2002 | $0.00 |
| Dell Financial Services | Purchase Order No. 22748 | $0.00 |
| General Motors Corp. | Purchase and Sale Agreement among GM, Exhaust Systems Corporation, Environmental Catalysts, LLC, AlliedSignal Environmental Catalysts, Inc. and AlliedSignal, Inc., dated June 22, 1998 | $0.00 |
| GM Corporation Powertrain | Consignment Agreement for Platinum Group Metal between GMC and ASEC owned by Exhaust Systems Inc. and Environmental Catalyst, LLC, dated December 20, 2000; First Amendment to Consignment Agreement for Platinum Group Metals, dated March 24, 2001 | $0.00 |
| Harley Financial Services | Purchase Order No. 19516 | $0.00 |
| Hasler Leasing/GE Capital Corp. | Purchase Order No. 19218 | $0.00 |
| Heritage Crystal Clean | Purchase Order No. M41277 | $0.00 |
| Holly Equipment Sales | Purchase Order No. 21226 | $0.00 |
| Jet Specialty | Delphi Automotive Systems Confidentiality Agreement with Jet Specialty, dated May 22, 2002 | $0.00 |
| Kelly Temporary Services | Purchase Order No. 19938 | $0.00 |
| Kunz Janitorial | Purchase Order No. M41402 | $0.00 |
| Lester Associates | Purchase Order No. 19513 | $0.00 |
| Midland Recycling | Purchase Order No. 15982 | $0.00 |
| Mitsubishi Motors Corp. | General Agreement For Purchase Of Catalyst between Automotive Products Division, UOP Inc. and Mitsubishi Motors Corp., dated July 12, 1982, along with Amendments thereto, dated January 6, 1988 and October 21, 1994 | $0.00 |
| Nanostellar, Inc. | Proprietary Information Agreement between Nanostellar, Inc. and Delphi Corporation (along with its affiliates ASEC Manufacturing General Partnership) dated January 5, 2006 | $0.00 |
| Perkin Elmer LLC | Purchase Order No. 19863 | $0.00 |
| Premier Manufacturing Support Svc. | Purchase Order No. M41284 | $0.00 |
| Sebring Systems Technical, Inc. | Purchase Order No. 22420 | $0.00 |
| Securenet Inc. | Purchase Order No. 22625 | $0.00 |
| Securitas Companies | Purchase Order No. 22017 | $0.00 |
| Siemens Water Technology Corp. | Purchase Order Nos. 19270, 19278, and 19279 | $0.00 |
| Southern Material Handling Co. | Purchase Order No. 17846 | $0.00 |
| Starsource Management Services | Purchase Order No. 18316 | $0.00 |
| Starcycle Inc. | Purchase Order NO. 20638 | $0.00 |
| T Mobile Wireless | Account No. 313-858-725 | $0.00 |
| Tro-Pro Consulting | Purchase Order No. 22127 | $0.00 |
| U.S. Cellular | Account No. 940-304-883 | $0.00 |
| Varroc Engineering Pvt. Ltd. | Side Letter Agreement between Varroc Engineering Pvt. Ltd.; Varroc Exhaust Systems Pvt. Ltd; Delphi Automotive Systems Pvt. Ltd., Delphi Automotive Systems LLC; Delphi Technologies, Inc. dated May 12, 2005; First Amendment dated July 15, 2006 to the Side Letter Agreement concerning production of catalysts from Delphi to Varroc Engineering | $0.00 |

2    DeltaView comparison of pcdocs://chisr02a/619378/18 and pcdocs://chisr02a/619378/22. Performed on 8/15/2007.

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Verde Vista Resources Inc. | Pvt. Ltd. and Varroc Exhaust Systems Pvt. Ltd. Purchase Order No. M41417 | $0.00 |
| Vinson Process Controls | Delphi Automotive Systems Confidentiality Agreement with Vinson Process Controls dated October 29, 2002 | $0.00 |

**Schedule 2**

**SCHEDULE 4.8.1 TO AGREEMENT**
**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

|  |  | **Purchase Price Allocation $ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V.  Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd.  Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of  Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.4 |
|  | **Total** | 75.0 |

BAKER & McKENZIE

東京青山・青木・狛法律事務所

Baker & McKenzie GJBJ
Tokyo Aoyama Aoki Koma Law Office
(Gaikokuho Joint Enterprise)
The Prudential Tower
13-10, Nagatacho 2-chome
Chiyoda-ku, Tokyo 100-0014, Japan

Tel : +81 3 5157 2700
Fax: +81 3 5157 2900
www.taalo-bakernet.com
www.bakernet.com

RECEIVED
BY MAIL ☐
BY HAND ☐

AUG 13 2007

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM

August 9, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr, Esq.
John K. Lyons, Esq.
Ron E. Meisler, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti, Esq.
Thomas J. Matz, Esq.

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

Dear Sirs,

        We are writing this letter to you on behalf of Tosoh Corporation in relation to Delphi Corporation's Notice of Assumption and/or Assignment of Executory Contract or Unexpired Lease to Qualified Bidder in Connection to The Sale of Catalyst Business (The "Notice") dated August 1, 2007.

        We inform on behalf of our client Tosoh Corporation that Tosoh would reserve the right to say positive or negative to the Notice at least 2 weeks from the date of this letter, for the following reasons:

a.      the Notice was just received by our client a couple of days ago at the time (and still is) when most of the personnel including management take leave for *Obon* (traditional period for remembrance of ancestry in Japan) and is not fully possible to communicate with the persons in charge;

b.      we have questions before we could determine our position such as ,while Confidential Agreement is listed in Exhibit to the Notice, there is no mention of the Memorandum of Understanding dated September 25, 2006 (attached hereto) between Delphi Corporation as the buyer and Tosoh Corporation as the seller. Does this mean that the Memorandum of Understanding is out of scope of the Notice or is it simply an oversight?  Does this mean that the Delphi Corporations subsidiary in France, Shanghai and South Africa are no longer subsidiaries of Delphi Corporation?  Does this mean that the Memorandum of Understanding continues with the subsidiaries mentioned therein without being affected by the Notice?

Baker & McKenzie GJBJ Tokyo Aoyama Aoki Koma Law Office (Gaikokuho Joint Enterprise) is a

**BAKER & McKENZIE**

東京青山・青木・狛法律事務所

If it is necessary to express opposition to the Notice in order to reserve the right to say positive or negative to the Notice, this letter should be understood to be an official expression of our opposition to the Notice until we withdraw the same.  Given such situation of our client, we appreciate it if you could respond to this letter at your earliest convenience.

Very truly yours

Fumio Koma
Shinichiro Abe

## Memorandum of Understanding

Date ☐ September 25, 2006, 2005

Delphi Corporation, ("Buyer") and Tosoh Corporation ("Seller") have been negotiating terms of transaction of the Materials (as listed below) which is planned to be renewed as of January 1st, 2006 between the parties. Therefore, the parties hereby prepare this Memorandum of Understanding which lists the mutual understanding of the parties.

### 1. MATERIALS

Materials to be sold by Seller and to be purchased by Buyer are as follows:

Beta Zeolite - Delphi Part 1525 – Tosoh HSZ940NHA

### 2. DURATION

The term of the transaction will commence on January 1, 2007 and terminate on December 31, 2008.

### 3. SPECIFICATIONS

Per previously agreed and established specifications subject to revision only by mutual agreement of both Buyer and Seller.

### 4. QUANTITY

For shipment to Buyer's facilities, the parties' estimated annual purchasing and selling quantity of Materials are as forecasted as follows for 2007. For subsequent years Buyer has to provide forecast of demand in Q4 of the prior year.

| Product | Total | Region | | | |
|---|---|---|---|---|---|
| | | France | China | United States | South Africa |
| 1525/HSZ940NHA | 26,000 kg | 20,000 kg | 4,000 kg | 2,000 kg | TBD |

TBD - To Be Determined

### 5. PRICING:

| | |
|---|---|
| 1525 - 940NHA (Wet Basis) | $24.74/kg |
| 1525 - 940NHA (Dry Basis) | $29.85/kg |

Pricing is firm thru December 31, 2008 as long as JPY/USD exchange rate stays above 115. If exchange rate falls below 115 for more than 60 days then pricing will be renegotiated.

### 6. DELIVERY, PAYMENT and OTHER TERMS

Each order of the Materials and payment thereof will be made between the parties' subsidiaries in each region as follows:

Delphi France/Tosoh Europe B.V.
Delphi Shanghai/Tosoh (Shanghai) Co., Ltd.
Delphi U.S. (ASEC Manufacturing)/Tosoh USA, Inc.
Other locations can be added as mutually agreed by Buyer and Seller.

Detailed contracts/agreements on delivery, payment and other terms to be negotiated and agreed on a regional basis between the parties listed above.

Buyer    :    Delphi Corporation              Seller    :    Tosoh Corporation

By    :                                        By    :
Name :    BK Terhune                          Name :    S. Suzuki
Title :    Plant Manager - Tulsa              Title:    General Manger
           Delphi Catalyst                             Zeolites and Ceramics
                                                       Specialty Materials Division