IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
     In re                    :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                                          :
                Debtors.   :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

     I, Elizabeth Adam, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

     On August 20, 2007, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

    1)  Order Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All The Assets Of The Catalyst Business Of Certain Of The Debtors Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities ("Catalyst Business Sale Approval Order") (Docket No. 9111) [a copy of which is attached hereto as Exhibit D]

     On August 21, 2007, I caused to be served the document listed below upon the parties listed on Exhibit E hereto via postage pre-paid U.S. mail:

    2)  Order Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All The Assets Of The Catalyst Business Of Certain Of The Debtors Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities ("Catalyst Business Sale Approval Order") [a copy of which is attached hereto as Exhibit F]

Dated:  August 23, 2007

_____ */s/ Elizabeth Adam*_____
Elizabeth Adam

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23rd day of August, 2007, by
Elizabeth Adam, personally known to me or proved to me on the basis of satisfactory
evidence to be the person who appeared before me.

Signature:  _____*/s/ Leanne V. Rehder*_____

Commission Expires:___*3/2/08*_____

# EXHIBIT A

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivi@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/23/2007 1:02 PM
Master Service List Overnight Mail

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/23/2007 1:02 PM
Master Service List Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/23/2007 1:02 PM
Master Service List Overnight Mail

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/23/2007 1:02 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra R. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/23/2007 1:02 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/23/2007 1:02 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to  ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Demolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Dephi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-222-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute  Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| Intermet Corporation | Alan Miller | 301 Commerce Street | Ste 2901 | Fort Worth | TX | 76102 | | | | amiller@intermet.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotheroof of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | schnabel@klettrooney.com dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel to Ideal Tool Company, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 / 214-855-7561 / 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy R Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.co m | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte. Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte. Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszyjw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl Young Jones & Weintraub LLP | William J. Weintraub | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | wweintraub@pszyjw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11553 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Campbell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and Oki Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel to Furukawa Electric North America APD and Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

8/23/2007 1:11 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|-------------------|
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

8/23/2007 1:11 PM
Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD; and Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Brendan G Best Esq | 39577 Woodward Ave Ste 300 | | Bloomfield Hills | MI | 48304 | 248-203-0523 | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

8/23/2007 1:11 PM
US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | 202-339-8400 | Counsel to Westwood Associates, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423 | | |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

8/23/2007 1:11 PM
US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Gentral Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

8/23/2007 1:11 PM
US Mail

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
          In re                           :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004,
6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF
DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS OF THE
CATALYST BUSINESS OF CERTAIN OF THE DEBTORS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
(III) ASSUMPTION OF CERTAIN LIABILITIES

("CATALYST BUSINESS SALE APPROVAL ORDER")

Upon the motion, dated June 6, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i)

the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising

substantially all the assets that comprise the catalyst business (the "Catalyst Business"), free and

clear of liens, claims, and encumbrances, to Umicore and certain of its affiliates (the

"Purchasers") pursuant to the Master Sale and Purchase Agreement, originally dated June 5,

2007 (as amended on the record at the auction held on August 8, 2007 to, inter alia, increase the

purchase price to be provided by the Purchasers to $75 million (subject to adjustments), the "Agreement," a copy of which is attached hereto as Exhibit A), by and between Delphi and certain of its affiliates, including certain affiliated Debtors as set forth in the Agreement (the "Selling Debtor Entities"),[1] and the Purchasers (who submitted the highest or otherwise best bid at the auction held on August 8, 2007 and are the "Successful Bidder"), (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and collectively with the Assumed Contracts, the "Assigned Contracts") to the Purchasers, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchasers; and the Court having entered an order on June 29, 2007 (the "Bidding Procedures Order") (a) approving bidding procedures, (b) granting certain bid protections, (c) approving the form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held on August 16, 2007, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered (x) the Motion, (y) the objection thereto and (z) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing, including with respect to the withdrawal or resolution of the other objections to the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Selling Debtor Entities, their estates, their creditors, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

---

[1]   Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems (Holding) Inc., Exhaust Systems Corporation, Environmental Catalysts, LLC, ASEC Manufacturing General Partnership, and ASEC Sales General Partnership.  Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

2

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections 363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.      As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assumed Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed Contracts or assignment of the Postpetition Contracts is or shall be required.

D.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

E.    The Purchasers waived their right to assert any and all claims against the

Debtors and their estates related to the process by which the Selling Debtor Entities have sold the

Purchased Assets, including but not limited to, the bidding procedures and the auction.

F.    Catalytic Solutions, Inc. and certain of its affiliates (collectively, the

"Alternate Bidder") submitted a final bid at the auction consisting of: (a) the following

documents: the Alternate Bidder's bid submission documents delivered to the Selling Debtor

Entities on July 31, 2007 and marked at the auction as Exhibit 5, as amended by the documents

marked at the auction as Exhibit 8 (a blacklined Master Sale and Purchase Agreement), Exhibit 9

(Schedule 3.2.1 to Exhibit 8 at the auction), Exhibit 10 (a lease governing real property in

Luxembourg), and Exhibit 11 (a lease governing real property in Shanghai) and (b) cash

purchase price and certain cost savings to the Sellers which the Selling Debtor Entities

determined to have a combined value of $70.5 million and which final bid (the "CSI Final Bid")

was determined by the Debtors to be the Alternate Bid (as defined by the Bidding Procedures

Order) to be submitted to this Court for approval in accordance with the Bidding Procedures

Order.

G.    The Selling Debtor Entities (i) have full power and authority to execute

the Agreement and all other documents contemplated thereby, and the transfer and conveyance

of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by

all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority

necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken

all corporate action necessary to authorize and approve the Agreement and the consummation by

the Selling Debtor Entities of the transactions contemplated thereby, and no consents or

4

approvals, other than those expressly provided for in the Agreement, are required for the Selling

Debtor Entities to consummate such transactions.

        H.     The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purposes and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Purchased Assets and determined that the terms and

conditions set forth in the Agreement, and the transfer to Purchasers of the Purchased Assets

pursuant thereto, represent a fair and reasonable purchase price and constitute the highest or

otherwise best value obtainable for the Purchased Assets and (ii) compelling circumstances for

the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization because,

among other things, absent the Sale the value of the Purchased Assets will be substantially

diminished.

        I.     A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchasers, (iii) counsel for the official committee of unsecured

creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the

official committee of equity security holders appointed in these chapter 11 cases, (v) all entities

known to have expressed an interest in a transaction with respect to the Purchased Assets during

the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as

defined below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or

taxing authorities or recording offices, including but not limited to environmental regulatory

authorities, which have a reasonably known interest in the relief requested by the Motion, (viii)

5

all parties to Assigned Contracts, (ix) the United States Attorney's office, (x) the United States

Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue

Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")),

and (xiv) such other entities as are required to be served with notices under the Supplemental

Case Management Order.

J.    The Purchasers are not "insiders" of any of the Debtors as that term is

defined in 11 U.S.C. § 101(31).

K.    The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Purchasers have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

L.    The Purchasers are good faith purchasers under 11 U.S.C. § 363(m) and,

as such, are entitled to all of the protections afforded thereby.  The Purchasers will be acting in

good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by

the Agreement at all times after the entry of this Sale Approval Order.

M.    The consideration provided by the Purchasers for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

creditors than would be provided by any other practical available alternative, and (iv) constitutes

6

reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

N.    The Sale must be approved and consummated promptly to preserve the viability of the Catalyst Business as a going concern. The Sale is in contemplation of, and a necessary condition precedent to, a reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

O.    The transfer of the Purchased Assets to the Purchasers will be a legal, valid, and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the Selling Debtor Entities, will vest the Purchasers with all right, title, and interest to the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Catalyst Business prior to the Closing Date, including the transfer of the Purchased Assets to the Purchasers (collectively, the "Interests and/or Claims").

7

P.      If the Sale of the Purchased Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this Sale Approval Order, or if the Purchasers would, or in the future could, be liable for any of

the Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, the

Purchasers would not have entered into the Agreement and would not consummate the Sale or

the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor

Entities, their estates, and their creditors.

Q.      The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Interests

and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to

the cash proceeds of the Sale ultimately attributable to the property against or in which they

claim an Interest or Claim with the same priority, validity, force, and effect as they attached to

such property immediately before the closing of the Sale.

R.      Except as expressly provided in the Agreement, the (i) transfer of the

Purchased Assets to the Purchasers and (ii) assumption and/or assignment to the Purchasers of

the Assigned Contracts and Assumed Liabilities will not subject the Purchasers to any liability

whatsoever with respect to the operation of the Catalyst Business prior to the Closing of the Sale,

or by reason of such transfer under the laws of the United States, any state, territory, or

possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly,

8

on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

S.      The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts as applicable to the Purchasers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

T.      The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasers have provided adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchasers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

9

U.       Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests

of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

<u>General Provisions</u>

1.       The Motion is GRANTED, and except as otherwise provided for in

paragraph 17 of this Order, all objections to the Motion or the relief requested therein that have

not been withdrawn, waived, or settled, and all reservations included therein, are hereby

overruled on the merits.

<u>Approval Of The Agreement</u>

2.       Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

3.       Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized

to perform their obligations under the Agreement and comply with the terms thereof and

consummate the Sale in accordance with and subject to the terms and conditions of the

Agreement.

4.       Each of the signatories to the Agreement is authorized, but not directed, to

take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.       The Selling Debtor Entities are authorized, but not directed, to execute and

deliver, and empowered to perform under, consummate, and implement, the Agreement, together

10

with all additional instruments and documents as may be reasonably necessary or desirable to

implement the Agreement, and to take all further actions as may be requested by the Purchasers

for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or

reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary

or appropriate to the performance of the obligations as contemplated by the Agreement.

6.      This Sale Approval Order and the Agreement shall be binding in all

respects upon all creditors (whether known or unknown) of the Debtors, the Purchasers, all

successors and assigns of the Purchasers and the Selling Debtor Entities, all affiliates and

subsidiaries of the Purchasers and the Selling Debtor Entities, and any subsequent trustees

appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this

Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order

shall govern.

7.      The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court; <u>provided</u> that any such modification,

amendment, or supplement is not material.

<u>Sale And Transfer Of The Purchased Assets</u>

8.      Except as expressly permitted or otherwise specifically provided for in the

Agreement or this Sale Approval Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the

consummation of the Agreement, the Purchased Assets of the Selling Debtor Entities shall be

transferred to the Purchasers free and clear of all Interests and/or Claims, with all such Interests

11

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they now have as against the Purchased Assets, subject to

any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.      The transfer of the Purchased Assets to the Purchasers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall

vest the Purchasers with all right, title, and interest of the Selling Debtor Entities in and to the

Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets with respect to the Selling Debtor Entities shall not

have delivered the foregoing to the Selling Debtor Entities prior to the Closing of the Sale, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has

with respect to the Purchased Assets, or otherwise, then (a) the Selling Debtor Entities are hereby

authorized to execute and file such statements, instruments, releases, and other documents on

behalf of the person or entity with respect to the Purchased Assets and (b) the Purchasers are

hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval

Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature

whatsoever.

11.      This Sale Approval Order (a) shall be effective as a determination that,

upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever

12

existing as to the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities

prior to the Closing of the Sale have been unconditionally released, discharged, and terminated

(other than any surviving obligations), and that the conveyances described herein have been

effected and (b) shall be binding upon and shall govern the acts of all entities including, without

limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies, governmental departments,

secretaries of state, federal, state, and local officials, and all other persons and entities who may

be required by operation of law, the duties of their office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any of the Purchased Assets.

        12.      Except as expressly permitted or otherwise specifically provided by the

Agreement or this Sale Approval Order, all persons and entities, including, but not limited to, all

debt security holders, equity security holders, governmental, tax, and regulatory authorities,

lenders, trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature

whatsoever against or in the Selling Debtor Entities or the Purchased Assets of the Selling

Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Selling Debtor Entities, the Purchased Assets of the Selling Debtor

Entities, the operation of the Catalyst Business by the Selling Debtor Entities prior to the Closing

of the Sale, or the transfer of the Purchased Assets to the Purchasers, hereby are forever barred,

estopped, and permanently enjoined from asserting against the Purchasers, their successors or

assigns, their property, or the Purchased Assets, such persons' or entities' Interests and/or Claims.

Nothing in this Sale Approval Order or the Agreement releases or nullifies any Liability to a

13

governmental agency under any environmental laws and regulations that any entity would be

subject to as owner or operator of any Purchased Assets after the date of entry of this Sale

Approval Order. Nothing in this Sale Approval Order or Agreement bars, estops, or enjoins any

governmental agency from asserting or enforcing, outside the Court, any Liability described in

the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit a

governmental agency to obtain penalties from the Purchasers for days of violation of

environmental laws and regulations prior to Closing.

<u>Assumption And Assignment To The Purchaser Of The Assumed Contracts</u>

13.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Purchasers, and the Purchasers' assumption on the terms set forth in the Agreement, of the

Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and

365(f) with respect thereto are hereby deemed satisfied.

14.    The Selling Debtor Entities are hereby authorized in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Purchasers, effective upon the

Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any

kind or nature whatsoever and (b) execute and deliver to the Purchasers such documents or other

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Purchasers.

15.    The Assumed Contracts shall be transferred to, and remain in full force

and effect for the benefit of, the Purchasers in accordance with their respective terms,

notwithstanding any provision in any such Assumed Contract (including those of the type

14

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entities shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption of such contracts by the Purchasers.

16.    All defaults or other obligations of the Selling Debtor Entities under the Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms of the Agreement, and the Purchasers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-debtor party to any Assumed Contracts shall be deemed to have consented to the assumption and assignment of the Assumed Contracts to the Purchasers and shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entities or the Purchasers, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing or any purported written or oral modification to the Assumed Contracts.  The failure of the Debtors or the Purchasers to enforce prior to the Closing of the Sale one or more terms or conditions of any Assumed Contracts shall not be a waiver of such terms or conditions or of the Debtors' or Purchasers' rights to enforce every term and condition of any such Assumed Contracts.

17.    The Limited Objection Of Contrarian Funds, LLC To Debtors' Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With The Sale Of Catalyst Business (Docket No. 8877) shall be adjourned to the September 6, 2007 claims hearing.

15

<u>Additional Provisions</u>

18.     The transactions contemplated by the Agreement, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

19.     The consideration provided by the Purchasers for the Purchased Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, possession, or the District of Columbia.

20.     Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale transferring good and marketable title in such Purchased Assets and Assigned Contracts to the Purchasers pursuant to the terms of the Agreement.

21.     The transfer of the Purchased Assets pursuant to the Agreement is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and thus the Sale and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Sale shall be, and hereby are, exempt from the imposition and payment of all stamp taxes and any other similar taxes to the fullest extent contemplated by section 1146(c) of the Bankruptcy Code.

16

22.     Except as otherwise provided in the Agreement, upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is directed to execute such documents and take all such other actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

23.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

24.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchasers upon the Closing of the Sale.

25.     All persons holding Interests and/or Claims against or in the Selling Debtor Entities or the Purchased Assets held by the Selling Debtor Entities of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Purchasers, their property, their successors and assigns, or the Purchased Assets with respect to any Interest or Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers, their directors, their shareholders, or the Purchased Assets held by the Selling Debtor Entities.  Following the Closing of the Sale, no holder of an Interest in or Claim against the Selling Debtor Entities shall interfere with the Purchasers' title to or use and enjoyment of the

17

Purchased Assets based on or related to such Interest or Claim or any actions that the Selling

Debtor Entities may take in their chapter 11 cases.

26.    The transactions contemplated by the Agreement are undertaken by the

Purchasers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Purchasers, unless such authorization is duly stayed pending such appeal.  The Purchasers are

purchasers in good faith of the Purchased Assets, and are entitled to all of the protections

afforded by section 363(m) of the Bankruptcy Code.

27.    The consideration provided by the Purchasers for the Purchased Assets

under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n)

of the Bankruptcy Code.

28.    The Selling Debtor Entities, including, but not limited to, their officers,

employees, and agents, are hereby authorized to execute such documents and do such acts as are

necessary or desirable to carry out the transactions contemplated by the terms and conditions of

the Agreement and this Sale Approval Order.  The Selling Debtor Entities shall be, and they

hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this

Sale Approval Order.

29.    The Selling Debtor Entities are authorized to continue and complete the

retention bonus program for the twelve affected employees at the Tulsa facility, as described in

the Motion; provided that such employees are still employed by the Selling Debtor Entities as of

18

the closing date of the Sale.  Any affected employee who resigns prior to the closing of the Sale

shall not be entitled to the foregoing retention bonus.

30.    Delphi Automotive Systems (Holding) Inc. is authorized, but not directed,

to satisfy, retire, or forgive, as necessary, the outstanding liabilities of Delphi Catalyst South

Africa (Proprietary) Limited as required by the Agreement.

31.    The transfer of certain of the Catalyst Business' intellectual property by

Delphi Automotive Systems, LLC and Delphi Technologies, Inc. to ASEC Manufacturing

General Partnership (or another Selling Debtor Entity) or its designee by quit-claim deed or

otherwise in consideration for fair value is hereby approved.

32.    The terms and provisions of the Agreement and this Sale Approval Order

shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities,

their estates, and their creditors, the Purchasers, and their respective affiliates, successors, and

assigns, and any affected third parties, including, but not limited to, all persons asserting an

Interest and/or Claim against or in the Purchased Assets to be sold to the Purchasers pursuant to

the Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or

other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee,

party, entity, or other fiduciary such terms and provisions likewise shall be binding.

33.    The Selling Debtor Entities shall not propose or seek confirmation of a

plan of reorganization that is inconsistent with or derogate from the terms of the Agreement.

34.    Notwithstanding anything contained herein to the contrary, the term

"Purchased Assets" as defined herein does not include property that is not property of the Selling

19

Debtor Entities' estates (except to the extent that certain Purchased Assets are property of the Sellers other than the Selling Debtor Entities), such as funds that are trust funds under any applicable state lien laws.

35.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

36.    The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

37.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, _provided_ that any such modification, amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities' estates.

38.    Nothing in this Sale Approval Order shall alter or amend the Agreement and the obligations of the Sellers and the Purchasers thereunder.

39.    This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements

20

executed in connection therewith in all respects, including, but not limited to, retaining

jurisdiction to (a) compel delivery of the Purchased Assets to the Purchasers, (b) compel delivery

of the purchase price or performance of other obligations owed to the Selling Debtor Entities

pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement,

except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this

Sale Approval Order, (e) protect the Purchasers against any Interests and/or Claims against or in

the Selling Debtor Entities or the Purchased Assets, of any kind or nature whatsoever, attaching

to the proceeds of the Sale, and (f) determine all disputes among the Selling Debtor Entities, the

Purchasers, and any non-Debtor parties to any Assigned Contracts concerning, inter alia, the

Selling Debtor Entities' assumption and/or assignment of any Assigned Contract to the Purchaser

under the Agreement.

40.     The purchase price shall be and hereby is allocated between the Selling

Debtor Entities and the non-Debtor Sellers as set forth on Schedule 2.  To the extent that

indemnification obligations arise under the Agreement on account of the liability of a non-

Debtor Seller, such indemnity shall be paid from the proceeds of the Sale allocated to such non-

Debtor Seller.

41.     The CSI Final Bid is hereby approved as the Alternate Bid (as defined by

the Bidding Procedures Order).

42.     Following entry of this Order, if the Purchasers fail to consummate the

Sale because of the failure of a condition precedent beyond the control of either the Sellers or the

Purchasers or a breach or failure to perform on the part of the Purchasers, then the Alternate Bid

shall be deemed to be the Successful Bid (as defined in the Bidding Procedures Order); the

21

Alternate Bidder shall have all of the rights, protections, and status as if it were the "Purchaser,"

as defined in this Order, including, without limitation, the status of a purchaser in good faith

within the meaning of 11 U.S.C. § 363(m); and the Selling Debtor Entities shall be authorized,

but not directed, to effectuate a sale of the Catalyst Business to the Alternate Bidder subject to

the terms of the Alternate Bid without further order of this Court, subject to any additional notice

and opportunity for a hearing required in respect of the assumption and assignment of the

Assigned Contracts to CSI pursuant to the CSI Final Bid.

      43.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
      August 16, 2007

                         _____/s/ Robert D. Drain_____
                            UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Corning, Inc. | Purchase Order Nos. 50186, 50187, 50188, and 50189 | $2,126,226.63 |
| First American Capital Mgmt. | Purchase Order Nos. 12999, 12834, 15588, and M29398 | $0.00 |
| Heraeus Chemicals Sa Pty | Contract between Heraeus Chemicals and Delphi Automotive Systems LLC ("DAS LLC"), dated July 24, 2004 | $0.00 |
| Heraeus Metal Processing, Inc. / Heraeus Precious Metals Management LLC | Purchase Order No. 50112 | $306,172.40 |
| Impala Platinum Limited ("Impala") | Precious Metals Supply Agreement, dated November 2004, between Impala and DAS LLC and Precious Metals Supply Agreement, dated December 2000, between Impala and DAS LLC | $0.00 |
| Johnson Mathey, Inc. / Johnson Mathey Alfa Aesar / Johnson Mathey PLC | Bailment Agreement, dated October 29, 2004, between DAS LLC and Johnson Mathey, Inc. | $0.00 |
| MDIS Inc. | Agreement #2427 between ASEC and MDIS – CHESS, dated September 29, 1995 | $0.00 |
| NGK Automotive Ceramics USA Inc. | Purchase Order No. 50028 | $2,914,235.42 |
| Prime Systems Incorporated ("Prime") | Software License Agreement, dated, September 16, 1996, between ASEC and Prime | $0.00 |
| Sabin Metal Corporation ("Sabin") | Letter Agreement , dated October 23, 2002, between Delphi and Sabin | $10,583.35 |
| Shanin LLC | Purchase Order No. 19545 | $0.00 |
| University of New Mexico ("UNM") | UNM Industrial Sponsored Research Agreement between Delphi and the Regents of UNM, dated March 1, 2005 | $0.00 |
| WC Heraeus GmbH & Co. KG | Bailment Agreement, dated July 1, 2003, between DAS LLC and W.C. Heraeus GmbH & Co. KG | $0.00 |
| All American Fire Systems, Inc. | Purchase Order No. M411384 | $0.00 |
| AlliedSignal, Inc. | Sales Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 and Manufacturing Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 | $0.00 |
| Applied Controls Corporation | Confidentiality Agreement, dated June 30, 2002, between Delphi Automotive Systems and Applied Controls Corp. | $0.00 |
| Bruker Axis Inc. | Purchase Order No. 22388 | $0.00 |
| BSI Inspectorate Precious Metals | Purchase Order No. 21046 | $0.00 |
| Cleintele | Purchase Order No. 21893 | $0.00 |

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Contrarian Funds LLC, as assignee of Aramark Uniform & Career Apparel Inc. | Purchase Order No. 18316 | $11,532.14 [3] |
| Corning, Inc. | Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005, Addendum to Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005 | $0.00 |
| David Matthews Construction Company | Purchase Order No. 22257 and Delphi Automotive Systems Confidentiality Agreement with Joe Mayfield Construction Company, Inc., dated June 3, 2002 | $0.00 |
| Dell Financial Services | Purchase Order No. 22748 | $0.00 |
| General Motors Corp. | Purchase and Sale Agreement among GM, Exhaust Systems Corporation, Environmental Catalysts, LLC, AlliedSignal Environmental Catalysts, Inc. and AlliedSignal, Inc., dated June 22, 1998 | $0.00 |
| GM Corporation Powertrain | Consignment Agreement for Platinum Group Metal between GMC and ASEC owned by Exhaust Systems Inc. and Environmental Catalyst, LLC, dated December 20, 2000; First Amendment to Consignment Agreement for Platinum Group Metals, dated March 24, 2001 | $0.00 |
| Harley Financial Services | Purchase Order No. 19516 | $0.00 |
| Hasler Leasing/GE Capital Corp. | Purchase Order No. 19218 | $0.00 |
| Heritage Crystal Clean | Purchase Order No. M41277 | $0.00 |
| Holly Equipment Sales | Purchase Order No. 21226 | $0.00 |
| Jet Specialty | Delphi Automotive Systems Confidentiality Agreement with Jet Specialty, dated May 22, 2002 | $0.00 |
| Kelly Temporary Services | Purchase Order No. 19938 | $0.00 |
| Kunz Janitorial | Purchase Order No. M41402 | $0.00 |
| Lester Associates | Purchase Order No. 19513 | $0.00 |
| Midland Recycling | Purchase Order No. 15982 | $0.00 |
| Mitsubishi Motors Corp. | General Agreement For Purchase Of Catalyst between Automotive Products Division, UOP Inc. and Mitsubishi Motors Corp., dated July 12, 1982, along with Amendments thereto, dated January 6, 1988 and October 21, 1994 | $0.00 |
| Nanostellar, Inc. | Proprietary Information Agreement between Nanostellar, Inc. and Delphi Corporation (along with its affiliates ASEC Manufacturing General Partnership) dated January 5, 2006 | $0.00 |
| Perkin Elmer LLC | Purchase Order No. 19863 | $0.00 |
| Premier Manufacturing Support Svc. | Purchase Order No. M41284 | $0.00 |
| Sebring Systems Technical, Inc. | Purchase Order No. 22420 | $0.00 |
| Securenet Inc. | Purchase Order No. 22625 | $0.00 |
| Securitas Companies | Purchase Order No. 22017 | $0.00 |

---

[3]    The Cure Amount for Contrarian Funds LLC ("Contrarian"), as assignee of Aramark Uniform & Career Apparel Inc. ("Aramark"), is subject to the execution of a stipulation by and among the applicable Selling Debtor Entities, Contrarian, and Aramark.

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Siemens Water Technology Corp. | Purchase Order Nos. 19270, 19278, and 19279 | $0.00 |
| Southern Material Handling Co. | Purchase Order No. 17846 | $0.00 |
| Starsource Management Services | Purchase Order No. 18316 | $0.00 |
| Starcycle Inc. | Purchase Order NO. 20638 | $0.00 |
| T Mobile Wireless | Account No. 313-858-725 | $0.00 |
| Tro-Pro Consulting | Purchase Order No. 22127 | $0.00 |
| U.S. Cellular | Account No. 940-304-883 | $0.00 |
| Varroc Engineering Pvt. Ltd. | Side Letter Agreement between Varroc Engineering Pvt. Ltd.; Varroc Exhaust Systems Pvt. Ltd; Delphi Automotive Systems Pvt. Ltd., Delphi Automotive Systems LLC; Delphi Technologies, Inc. dated May 12, 2005; First Amendment dated July 15, 2006 to the Side Letter Agreement concerning production of catalysts from Delphi to Varroc Engineering Pvt. Ltd. and Varroc Exhaust Systems Pvt. Ltd. | $0.00 |
| Verde Vista Resources Inc. | Purchase Order No. M41417 | $0.00 |
| Vinson Process Controls | Delphi Automotive Systems Confidentiality Agreement with Vinson Process Controls dated October 29, 2002 | $0.00 |

3

**Schedule 2**

**SCHEDULE 4.8.1 TO AGREEMENT**
**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

|  |  | **Purchase Price Allocation $ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V.  Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd.  Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of  Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.4 |
|  | **Total** | 75.0 |

**MASTER SALE AND PURCHASE AGREEMENT**

**BETWEEN**

**UMICORE AND THE OTHER AFFILIATED PURCHASERS
TO BE SET FORTH ON SCHEDULE 1**

**AND**

**DELPHI CORPORATION AND THE OTHER AFFILIATED SELLERS TO BE
SET FORTH ON THE SIGNATURE PAGES AND SCHEDULE 1**

**~~June 5,~~<u>August 16,</u> 2007**

# TABLE OF CONTENTS

**PAGE**

| | | |
|---|---|---|
| **1.** | **CONVEYANCE OF THE ACQUIRED ASSETS AND SALE SECURITIES:** | **20** |
| | 1.1. General. | 20 |
| | 1.1.1. Transfer of Purchased Assets. | 20 |
| | 1.1.2. Identity of Purchasers. | 20 |
| | 1.1.3. Governing Documents. | 20 |
| | 1.2. Sale Securities. | ~~20~~21 |
| | 1.3. Acquired Assets Transactions. | 21 |
| | 1.3.1. Acquired Assets. | 21 |
| | 1.3.2. Carved-Out Location Assets. | 21 |
| | 1.4. Excluded Assets. | 22 |
| | 1.4.1. Bailed Assets. | ~~22~~23 |
| | 1.4.2. Personnel and Medical Records. | 23 |
| | 1.4.3. Certain Financial Assets. | 23 |
| | 1.4.4. Certain Financial Contracts. | 23 |
| | 1.4.5. Tax Refunds, Etc. | 23 |
| | 1.4.6. Excluded Intellectual Property. | 23 |
| | 1.4.7. Excluded Canning Business. | 24 |
| | 1.4.8. Assets of the Chinese Joint Venture. | 24 |
| | 1.4.9. Assets of the Australian and Mexican Operations. | 24 |
| | 1.4.10. Technical Centers. | 24 |
| | 1.4.11. Sales Offices. | 24 |
| | 1.4.12. Privileged Information and Materials. | 24 |
| | 1.4.13. Insurance. | 24 |
| | 1.4.14. Certain Rights. | 24 |
| | 1.4.15. Real Property. | 24 |
| | 1.4.16. Benefit Plans. | 24 |
| | 1.4.17. Collective Bargaining Agreements. | 25 |
| | 1.4.18. Excluded Trade Receivables. | 25 |
| | 1.4.19. Certain Contracts. | 25 |
| | 1.4.20. Other Assets. | 25 |
| | 1.5. Post-Closing Asset Deliveries. | 25 |
| | 1.6. Non-Assignable Permits and Contracts: | 25 |
| | 1.6.1. Non-Assignability. | 25 |
| | 1.6.2. Efforts to Obtain Consents and Waivers. | ~~26~~25 |
| | 1.6.3. If Waivers or Consents Cannot Be Obtained. | 26 |
| | 1.6.4. Obligation of Purchasers to Perform. | 26 |
| | 1.7. Certain Assigned Contracts. | 26 |
| **2.** | **ASSUMPTION OF LIABILITIES REGARDING ACQUIRED ASSETS TRANSACTIONS; RETAINED LIABILITIES:** | **26** |
| | 2.1. Assumed Liabilities. | 26 |
| | 2.2. No Expansion of Third Party Rights. | 28 |
| | 2.3. Retained Liabilities. | 28 |

i

| | | |
|---|---|---|
| **3.** | **ACQUIRED ASSETS - PERSONNEL MATTERS - TRANSFERRED EMPLOYEES:** | **29** |
| 3.1. | Current Employees. | 29 |
| 3.2. | Offer of Employment: | 29 |
| 3.3. | Purchasers' U.S. Benefit Plans. | ~~31~~30 |
| 3.4. | WARN Act. | 31 |
| 3.5. | Sellers' U.S. Pension Plans. | 31 |
| 3.6. | Non-U.S. Benefit Plans. | 31 |
| 3.7. | Continuation of U.S. Health Plans by Sellers after the Closing | 31 |
| 3.8. | U.S. Benefit Plans For Retired Employees. | 32 |
| 3.9. | Collective Bargaining Agreements. | 32 |
| 3.10. | Severance; Stay/Retention Bonuses. | 32 |
| 3.11. | Cooperation. | ~~33~~32 |
| 3.12. | No Third Party Rights. | ~~33~~32 |
| 3.13. | PTO Obligations. | ~~33~~32 |
| 3.14. | Workers' Compensation. | 33 |
| **4.** | **PURCHASE PRICE:** | **33** |
| 4.1. | Preliminary Purchase Price. | 33 |
| 4.2. | Deposit Amount. | 33 |
| 4.2.1. | Deposit Instructions. | 33 |
| 4.2.2. | Violation of Agreement. | 33 |
| 4.2.3. | Other Reason. | 33 |
| 4.3. | Escrow Amount. | ~~34~~33 |
| 4.4. | Delivery of Purchase Price. | 34 |
| 4.5. | Pre-Closing Review of PGM Inventory Levels. | 34 |
| 4.6. | Adjustments to Purchase Price. | 34 |
| 4.6.1. | Net Working Capital. | ~~35~~34 |
| 4.6.2. | Adjustments for Changes in Owned PGMs: | 35 |
| 4.6.3. | Adjustment Related to Unfulfilled Restitution Commitments. | 36 |
| 4.6.4. | Adjustments for PGM Leases or Borrowings. | 36 |
| 4.6.5. | Adjustments for Non-U.S. Pension and Benefit Liabilities. | 36 |
| 4.6.6. | Adjustments for Assumed PTO Obligations. | ~~37~~36 |
| 4.6.7. | Adjustments for Sale Company. | 37 |
| 4.6.8. | Capital Leases. | 37 |
| 4.6.9. | Adjustment for U.S. Employee-Related Credit. | 37 |
| 4.7. | Post-Closing Purchase Price Adjustments. | ~~37~~38 |
| 4.7.1. | General: | ~~37~~38 |
| 4.7.2. | Objections by Sellers; Consequence of No Objections. | 39 |
| 4.7.3. | Negotiated Settlement of Objections. | 39 |
| 4.7.4. | Arbitrated Settlement of Objections. | 39 |
| 4.7.5. | Payment Mechanics for Post-Closing Price Adjustments Generally. | 39 |
| 4.8. | Allocation of Purchase Price: | 40 |
| **5.** | **REPRESENTATIONS AND WARRANTIES:** | **40** |
| 5.1. | Warranties of Delphi and each Seller. | 40 |
| 5.1.1. | Organization and Good Standing. | ~~40~~41 |
| 5.1.2. | Corporate Power; Due Authorization. | 41 |
| 5.1.3. | No Violations. | 41 |
| 5.1.4. | Sufficiency of Acquired Assets. | 41 |
| 5.1.5. | Personal Property; Condition of Personal Property: | 41 |
| 5.1.6. | Litigation. | 42 |
| 5.1.7. | Intellectual Property Assets: | 42 |

5.1.8.   Insurance. ..................................................................... 43
5.1.9.   Compliance with Other Instruments and Laws; Permits. ......... 43
5.1.10.  Brokers. ....................................................................... 44
5.1.11.  Consents and Approvals. ................................................. 44
5.1.12.  July (6+6) Projections. ................................................... 44
5.1.13.  Events Subsequent to ~~January~~July Projections. ................. 44
5.1.14.  Contracts: ..................................................................... ~~44~~45
5.1.15.  Regulatory Matters. ....................................................... ~~45~~46
5.1.16.  Real Property: ............................................................... 46
5.1.17.  Tax Matters: ................................................................. 47
5.1.18.  Capitalization of the Sale Company and Related Matters: ....... 48
5.1.19.  Employee Issues: ........................................................... 49
5.1.20.  Environmental Representations and Warranties. .................... 51
5.1.21.  Product Claims. ............................................................. 52
5.1.22.  Accounts Receivable. ...................................................... 52
5.1.23.  Absence of Other Representations or Warranties. ................. 52
5.2.     Warranties of Purchasers. ....................................................... 52
5.2.1.   Corporate Data. ............................................................. 52
5.2.2.   Corporate Power; Due Authorization. ................................. ~~52~~53
5.2.3.   No Violations. ............................................................... 53
5.2.4.   Consents and Approvals. ................................................. 53
5.2.5.   Litigation. ..................................................................... 53
5.2.6.   Brokers. ....................................................................... ~~53~~54
5.2.7.   Solvency. ..................................................................... ~~53~~54
5.2.8.   Availability of Funds. ...................................................... 54
5.2.9.   Investment Intent: .......................................................... 54
5.2.10.  Compliance with Law. .................................................... ~~54~~55
5.2.11.  Anti-Money Laundering. .................................................. ~~54~~55
5.2.12.  Adequate Assurance of Future Performance. ....................... 55
5.2.13.  Shelf Tulsa Collective Bargaining Agreement. ...................... 55
6.    **CONDITIONS TO CLOSING:** ......................................................... 55
6.1.     Conditions to Obligations of Sellers and Purchasers. ..................... 55
6.1.1.   Sale Approval Order. ...................................................... 55
6.1.2.   No Law, Judgments, etc. .................................................. 55
6.1.3.   Approvals by Antitrust Authorities ..................................... 56
6.1.4.   Other Approvals. ........................................................... 56
6.2.     Conditions to Obligations of Purchasers. .................................... 56
6.2.1.   Accuracy of Warranties. .................................................. 56
6.2.2.   Material Adverse Effect. .................................................. 56
6.2.3.   Ancillary Agreements and Performance of Covenants. ............ 56
6.2.4.   Other Approvals; Cure Amounts. ....................................... ~~56~~57
6.2.5.   CBA. .......................................................................... 57
6.2.6.   Sale Company Debt. ....................................................... 57
6.2.7.   Florange Pre-emptive Right. ............................................. 57
6.2.8.   Closing Deliveries. ......................................................... 57
6.3.     Conditions to Obligations of Sellers. ........................................ 57
6.3.1.   Accuracy of Warranties. .................................................. 57
6.3.2.   Ancillary Agreements Performance of Covenants. ................. 57
6.3.3.   Closing Deliveries. ......................................................... 57

| | | | |
|---|---|---|---|
| **7.** | **CLOSING:** | | **~~57~~58** |
| | 7.1. | The Closing. | ~~57~~58 |
| | 7.2. | Ancillary Agreements. | 58 |
| | 7.3. | Sellers' Other Deliveries. | 59 |
| | 7.4. | Purchasers' Deliveries. | 60 |
| | 7.5. | Post-Closing Deliveries. | 60 |
| | 7.6. | Sale Company. | 60 |
| **8.** | **CERTAIN ADDITIONAL COVENANTS:** | | **61** |
| | 8.1. | Certain Pre-Closing Matters: | 61 |
| | 8.2. | Joinder of Additional Seller Parties. | 62 |
| | 8.3. | Bankruptcy Actions: | 62 |
| | 8.4. | Registrations, Filings and Consents; Further Actions: | 63 |
| | 8.5. | Operation of the Business Pending Closing: | 64 |
| | 8.6. | Assumed U.S. Contracts; Cure Amounts. | 65 |
| | 8.7. | Hired Current Employees. | 65 |
| | 8.8. | Assumed PTO Obligations. | 65 |
| | 8.9. | Guarantee by Umicore. | 65 |
| | 8.10. | Post-Closing Covenants. | 65 |
| | | 8.10.1. Seller Post-Closing Covenants: | 66 |
| | | 8.10.2. Technical Documentation. | 67 |
| | | 8.10.3. Books and Records and Litigation Assistance From and After Closing: | 67 |
| | | 8.10.4. Payment and Collections. | 68 |
| | | 8.10.5. Intellectual Property Transition Rights. | 68 |
| | | 8.10.6. Change of Name of the Sale Company. | 69 |
| | | 8.10.7. Catalyst Co-Development and Supply | 69 |
| | 8.11. | Further Assurances. | 69 |
| | 8.12. | Certain Transactions. | 69 |
| | 8.13. | Communications with Customers and Suppliers. | 69 |
| | 8.14. | Permit Transfers. | 70 |
| | 8.15. | Pre-Closing Transfer of Intellectual Property. | 70 |
| **9.** | **TERMINATION:** | | **70** |
| | 9.1. | Termination. | 70 |
| | 9.2. | Notice of Termination. | 71 |
| | 9.3. | Break-Up Fee; Expense Reimbursement; Return of Deposit: | 72 |
| | | 9.3.1. Break-Up Fee. | 72 |
| | | 9.3.2. Expense Reimbursement. | 72 |
| | | 9.3.3. Payments. | 72 |
| | | 9.3.4. Limitations. | 72 |
| | | 9.3.5. Return of Deposit. | 73 |
| | 9.4. | Procedure and Effect of Termination. | 73 |
| | 9.5. | Conflicts. | 73 |
| **10.** | **OTHER TAX MATTERS:** | | **73** |
| | 10.1. | General. | 73 |
| | 10.2. | Sale Company Taxes. | 73 |
| | | 10.2.1. Sellers' Liability. | ~~74~~73 |
| | | 10.2.2. Purchasers' Liability. | 74 |
| | | 10.2.3. Straddle Period Allocations. | 74 |
| | | 10.2.4. Tax Sharing Agreements. | 74 |
| | | 10.2.5. Refunds and Tax Benefits. | 74 |

10.3.    Tax Returns:.........................................................................................75
        10.3.1.    Taxable Periods Ending on or Before the Closing Date:...................75
        10.3.2.    Taxable Periods Beginning Before and Ending After the Closing Date (Straddle
                   Periods)...............................................................................75
10.4.    Audits and Adjustments..................................................................76
10.5.    Sales or Transfer Taxes...................................................................76
10.6.    Purchasers Covenants and Indemnity. ..............................................77
10.7.    Sellers Covenants and Indemnity.....................................................77
10.8.    Purchase Price Adjustment. ............................................................77
10.9.    Customs Duties. ............................................................................77

**11.    BIDDING PROCEDURES: ............................................................77**
11.1.    Delphi Initial Bankruptcy Actions. ..................................................77
11.2.    Qualified Bidder. ..........................................................................77
11.3.    Due Diligence. .............................................................................78
11.4.    Bid Deadline. ..............................................................................78
11.5.    Bid Requirements. ........................................................................79
11.6.    Qualified Bids. .............................................................................79
11.7.    Bid Protection. .............................................................................80
11.8.    Auction Bidding Increments and Bids Remaining Open......................80
11.9.    Acceptance of Qualified Bids. .........................................................81
11.10.   Sale Hearing. ...............................................................................82
11.11.   Return of Good Faith Deposit. .........................................................82
11.12.   Modifications................................................................................82

**12.    SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS;**
        **INDEMNIFICATION: ...................................................................82**
12.1.    Sellers' Agreement to Indemnify. ....................................................82
12.2.    Specific Performance. ....................................................................83
12.3.    Purchasers' Agreement to Indemnify. ...............................................83
12.4.    Third Party Indemnification. ...........................................................83
12.5.    Limitations..................................................................................84
12.6.    Environmental Matters:..................................................................87
        12.6.1.   Indemnification of Seller and Purchaser:.........................87
        12.6.2.   Limitations on Liability. ..............................................87
        12.6.3.   Remediation of Environmental Damage:...........................88

**13.    MISCELLANEOUS: ......................................................................89**
13.1.    Bulk Sales Laws............................................................................89
13.2.    Notices. ......................................................................................89
13.3.    Assignment. ................................................................................90
13.4.    Entire Agreement. .........................................................................90
13.5.    Waiver. ......................................................................................90
13.6.    Severability. ...............................................................................90
13.7.    Amendment. ................................................................................90
13.8.    Expenses. ...................................................................................90
13.9.    Third Parties................................................................................90
13.10.   Headings. ...................................................................................90
13.11.   Counterparts. ..............................................................................90
13.12.   Governing Law. ...........................................................................91
13.13.   Public Announcements. .................................................................91
13.14.   Venue and Retention of Jurisdiction.................................................91

**PAGE**

13.15.  Risk of Loss. ...........................................................................................................91
13.16.  Enforcement of Agreement. ........................................................................................91
13.17.  Dispute Resolution. .....................................................................................................91
13.18.  No Right of Setoff. ......................................................................................................91
13.19.  Limitation on Damages. ..............................................................................................91

## MASTER SALE AND PURCHASE AGREEMENT

**THIS MASTER SALE AND PURCHASE AGREEMENT** dated ~~June 5,~~**August 16,** **2007,** by and between **UMICORE**, a Belgian corporation ("**Umicore**") on behalf of itself and each of its affiliates to be listed on Schedule 1 hereto (each of Umicore and such affiliates a "**Purchaser**", and collectively "**Purchasers**"), and **DELPHI CORPORATION**, a Delaware corporation ("**Delphi**"), on behalf of itself and each of its affiliates listed as a signatory hereto and on Schedule 1 hereto (each of Delphi and such affiliates a "**Seller**", and collectively "**Sellers**").

### R E C I T A L S:

**WHEREAS,** Sellers are engaged in the Business (as hereinafter defined).

**WHEREAS,** on October 8, 2005 (the "**Petition Date**"), the Filing Affiliates (as hereinafter defined) filed voluntary petitions for relief (the "**Bankruptcy Cases**") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq. (as amended as of the Petition Date) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

**WHEREAS,** upon the terms and subject to the conditions set forth in this Agreement, and as authorized under Sections 363, 365 and 1146 of the Bankruptcy Code, Sellers wish to sell to Purchasers, all right, title and interest of Sellers in and to the Purchased Assets (as hereinafter defined), and Purchasers wish to make such purchase, subject to Purchasers' assumption of the Assumed Liabilities (as hereinafter defined) and the conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

### DEFINITIONS

The following terms, as used in this Agreement, shall have the meanings set forth below whether used in the singular or plural. For purposes of this "Definitions" section only, a "—" followed by a reference to a specific section of this Agreement, shall be understood to reference the section of this Agreement in which such term is defined. Unless otherwise indicated, all figures preceded by "$" refer to U.S. dollars.

"**Accounts Payable**" means all trade accounts payable including all Trade Payables and other obligations to pay suppliers and third parties to the extent arising from the conduct of the Business or relating to the Acquired Assets.

"**Accounts Receivable**" means all trade accounts receivable including all Trade Receivables and other rights to payment from customers and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of Products delivered to customers, all other accounts receivable and the full benefit of all security for such accounts and any claim, remedy or other right related to any of the foregoing.

"**Acquired Assets**" — Section 1.3.

"**Acquired Carved-Out Location Assets**" — Section 1.3.2.2.

"**Acquired Carved-Out Manufacturing Location Assets**" — Section 1.3.2.1.

"**Acquired Carved-Out Technical Center Assets**" — Section 1.3.2.2.

"**Administrative Assets**" means books, records and other administrative assets including advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, sales materials and records, purchasing materials and records, personnel records of employees, billing records, accounting records, other financial records, sale order files, tool routings, labor routings, facility blueprints, service blueprints, plant layouts and Technical Documentation.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity.  For purposes of this definition, control means ownership of more than fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function.

"**Agreement**" means this Master Sale and Purchase Agreement, including its Schedules.

"**Allocation**" — Section 4.8.1.

"**Alternate Bid(s)**" — Section 11.10.

"**Alternate Bidder(s)**" — Section 11.10.

"**Alternative Transaction**" — Section 9.3.1.

"**Ancillary Agreements**" means the Transfer Agreements, the Transition Services Agreement(s), the Toll Manufacturing Agreements, Fuel Reformer Patent License, the Atmospheric Catalyst License, the Testing Services Agreements, the Canning Supply Agreements and other agreements referred to in Section 7.2.

"**Antitrust Authority**" shall mean any national, supranational, or state entity having antitrust or competition jurisdiction with respect to the Sale, including, but not limited to, the Federal Trade Commission, the Antitrust Division of the United States Department of Justice, the attorneys general of the several states of the United States, the European Commission, the governments of its member states, or any other jurisdiction pursuant to applicable Antitrust Laws.

"**Antitrust Laws**" shall mean the Sherman Act, as amended, the Clayton Act, as amended, the HSR Act, the Federal Trade Commission Act, as amended, and all other federal, state, and non-U.S. statutes, regulations, or other binding legal requirements including Council Regulation (EC) No. 139/2004, as amended, rules, regulations, orders, and decrees and all other such Laws governing antitrust and competition matters as are applicable to the Business or the Purchased Assets.

"**Arbitrator**" — Section 4.7.4.

"**Asset Purchasers**" means each Purchaser to be set forth on Schedule 1 prior to Closing, with respect to the Acquired Assets described on such Schedule.

"**Asset Seller(s)**" means Sellers set forth on Schedule 1, with respect to the Acquired Assets described on such Schedule.

2

"**Assumed Liabilities**" — Section 2.1.

"**Assumed PTO Obligation Calculation Methodology**" means the methodology for calculating the Assumed PTO Obligations at Closing as set forth on Schedule 4.6.6 hereto.

"**Assumed PTO Obligations**" — Section 2.1.5.

"**Assumed U.S. Contracts**" means assumed Contracts of the Filing Affiliates as further described in Section 8.6.

"**Atmospheric Catalyst License**" means that certain agreement between the Sellers and the Purchasers pursuant to which one or more Sellers shall license U.S. Patent No. 6,924,249 and European Patent Application No. 03077909.4, Publication No. EP 140 5 670 A1, Date of Publication April 7, 2004 to one or more Purchasers all on the terms and conditions set forth therein.

"**Auction**" — Section 11.8.

"**Auditor of Closing Date Statement**" means Deloitte and Touche; provided, however, that if Deloitte and Touche cannot or will not fill this role, such other recognized auditing firm as the Parties shall mutually agree will.

"**Australia Pro Forma Trade Receivables**" means Accounts Receivable which are owing to the Clayton, Australia operations of the Business by the Clayton, Australia canning operations (as opposed to a financing transaction).

"**Australian and Mexican Operations**" — Section 1.4.9.

"**Bankruptcy Cases**" — the Recitals.

"**Bankruptcy Code**" — the Recitals.

"**Bankruptcy Court**" — the Recitals.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Baseline Environmental Conditions**" — Section 12.6.1.C.

"**Benefit Plans**" means any pension, thrift, savings, profit-sharing, retirement, bonus, incentive, health, dental, accident, disability (short or long-term), stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, "parachute," severance, termination indemnity (in respect of non-U.S. jurisdictions) or other termination benefits, whether pension or lump sum payment-based, payable on retirement, death or cessation of service, vacation, service leave, sabbatical or jubilee benefits or leave, sick leave, life insurance (including post-retirement life insurance), food coupon, automotive subsidy or transportation, fringe or other welfare benefits, plans, policies or practices in which (or at which) the current or former employees (individually or as a group or groups) of the Business or their beneficiaries participate or participated (or are entitled), including those listed and briefly described on Schedule 5.1.19.C.

"**Bid Deadline**" — Section 11.4.

"**Bidding Procedures**" — Section 11.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures and certain provisions of this Agreement including Purchasers' right, under the terms and conditions set forth hereafter, to a Break-Up Fee or Expense Reimbursement.

"**Bidding Process**" — Section 11.1.

"**Break-Up Fee**" — Section 9.3.1.

"**Business**" means the business of Sellers and the Sale Company relating to the design, testing, manufacture, remanufacture, development, marketing, sale, installation and service of Catalytic Materials as currently conducted at production facilities located in Tulsa, Oklahoma; San Luis Potosí, Mexico; Florange, France; Port Elizabeth, South Africa; Clayton-Melbourne, Australia; Shanghai, China (where Sellers own a controlling 81% interest in the Chinese Joint Venture); and Maharashtra, India (where Sellers have entered into the Indian License and Equipment Lease Arrangements); and technical centers located at Flint, Michigan and Bascharage, Luxembourg, as conducted at the date of this Agreement. The Business does not include Sellers' Fuel Reformer activities, including rights to the Fuel Reformer Patents that will be transferred to Purchaser at Closing subject to a license back to Seller in accordance with the terms of the Fuel Reformer Patent License. The Business also includes various overhead-type services performed at the Listed Real Property and Sales Offices exclusively for the Asset Sellers and Sale Company (such as financial accounting, budget preparation and financial forecasting, cost estimating, cost accounting, invoicing and accounts receivable processing and management, accounts payable processing and management, payroll processing, local tax compliance and management, human resources services, indirect material purchasing, logistics, quality control, plant maintenance and security), but shall not include corporate headquarters-type services that are not exclusively provided to the Business (such as treasury, legal, group level tax, corporate public relations, internal audit services and certain group finance and accounting services such as consolidated financial statement preparation).

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in Brussels, Belgium, London, England or New York, New York, are authorized or obligated by law or executive order to close.

"**Canning Supply Agreements**" — Section 7.2.9.

"**Cap Amount**" — Section 12.5.6.

"**Capital Lease**" means any lease by any Person of any property (whether real, personal or mixed) which would, in accordance with GAAP, be required to be accounted for as a capital lease.

"**Carved-Out Locations**" — Section 1.3.2.

"**Carved-Out Locations Acquired Equipment and Machinery**" means production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, model shop equipment, laboratory test fixtures and all other machinery and equipment used in washcoat making or preparation and located at a Carved-Out Manufacturing Location, but with the exception of the most recently acquired gas-fired furnace at the Shanghai, China location, specifically does not include furnaces used in the production process at any Carved-Out Manufacturing Location.

"**Carved-Out Manufacturing Locations**" — Section 1.3.2.

"**Catalytic Materials**" shall mean chemical emission control devices in the form of catalysts, catalytic coatings deposited on filter substrates, catalytic formulations, manufacturing methods and substrate coating processes relating to such catalysts, information concerning the functionality of such devices (including relationships, models or data about kinetics, thermodynamics or transport phenomena), in each case for the primary purpose of the catalytic treatment of engine exhaust gas by contact of the engine exhaust gas with catalysts and not for the primary purpose of creating reformate (an H2 and CO mixture) or Fuel Reformers.

"**China Pro Forma Trade Receivables**" means Accounts Receivable which are owing to the Shanghai, China operations of the Business by the Shanghai, China canning operations (as opposed to a financing transaction).

"**Chinese Joint Venture**" means Shanghai Delphi Emission Control Systems Company, Ltd. (China), a legal entity organized under Chinese law, controlling equity interest in which is owned by a Delphi Affiliate.

"**Claims**" mean Losses, Liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Claims Incurred**" — Section 3.7.

"**Closing**" — Section 7.1.

"**Closing Date**" means the date of Closing.

"**Closing Date Assumed PTO Obligations Schedule**" — Section 8.8.

"**Closing Date Statement**" — Section 4.7.1.2.

"**Closing Escrow Agreement**" — Section 7.2.11.

"**Closing PGM Inventory**" — Section 4.7.1.1.

"**COBRA**" — Section 3.7.

"**Collective Bargaining Agreements**" — Section 3.9.

"**Committee**" — Section 11.4.

"**Competitive Business**" — Section 8.10.1.A.

"**Consigned PGMs**" means, as of the Closing Date, metals owned by direct or indirect customers of the Business which have been consigned to Sellers.

"**Contract Modification**" — Section 8.1.2.

"**Contracts**" mean purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases (including Capital Leases), product warranty or service agreements and other commitments, agreements and undertakings, including

quotations and bids outstanding on the Closing Date including the Indian License and Equipment Lease Arrangements.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registered, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein, provided by international treaties or conventions; (ii) moral rights (including rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) maskworks and similar protection, (v) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (vi) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (vii) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Covered Employees**" — Section 3.7.

"**Cure Amounts**" means all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code, or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Purchasers of Assumed U.S. Contracts under the Sale Approval Order.

"**Current Employees**" means: (i) employees of any Asset Seller or Affiliate that perform services primarily related to the Business; (ii) employees of the Sale Company; and (iii) U.S. Corporate Employees.

"**DASHI**" means Delphi Automotive Systems (Holding), Inc., the Seller of the Sale Securities of the Sale Company.

"**DDS France**" means Delphi Diesel Systems France SAS, the Seller of the Acquired Assets in Florange, France.

"**Debt**" means financing-type indebtedness consisting of obligations for borrowed money as evidenced by bonds, debentures, notes, or other similar instruments, and obligations upon which interest charges are customarily paid or discounted (other than ordinary course Trade Payables), and including principal and interest thereon, and all guaranties of such obligations.

"**Deductible Amount**" — Section 12.5.4.

"**Defending Party**" — Section 13.17.

"**Delphi**" — Preamble.

"**Demanding Party**" — Section 13.17.

"**Deposit Amount**" — Section 4.2.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement, dated as of the date hereof, executed by and among Purchasers, Sellers and the Escrow Agent concurrently with this Agreement.

"**Disclosure Schedule**" means, collectively, the Schedules to Sellers' Representations and Warranties referenced in Article 5.

"**Environment**" means any and all organisms (including humans), biota, ecosystems, land, natural resources, indoor or outdoor air, soil, soil gas, sediment, water, groundwater and buildings and fixtures.

"**Environmental Claim**" means any claim, cause of action, governmental information request, notice of potential responsibility, investigation or written notice by any Governmental Entity arising under Environmental Law and any notice, claim or cause of action-alleging Liability by any other person or entity under Environmental Law or the common law or other Law, including those arising out of, based on or resulting from: (i) the presence or Release of or exposure to any Hazardous Materials at any location, whether or not owned or operated by a Seller; or (ii) circumstances forming the basis of any violation, or alleged violation, of any Environmental Law.

"**Environmental Compliance Matter**" means a condition, event, activity, practice, action or omission at the Listed Real Property which gives rise to an actual or alleged breach or violation of an Environmental Law, but which excludes Environmental Contamination.

"**Environmental Contamination**" means the presence, in violation of applicable Environmental Laws or that requires reporting or any response action under any Environmental Laws, of a Hazardous Material at, in, under, on or about the Environment at the Listed Real Property or migrating from the Listed Real Property.

"**Environmental Damages**" means Losses arising out of an Environmental Law or relating to a Hazardous Material, but in all cases excluding Losses deemed consequential or loss of profit, and also excluding expenses of investigating information solely for the purposes of making a claim for indemnification under this Agreement.

"**Environmental Laws**" means, in each case as in force and effect on or prior to the date of this Agreement, all federal, state, local and foreign Laws, all applicable supranational laws (including European Union laws and directives, and NAFTA rules), and applicable permits, codes, guidance, directives, decrees and orders, in each case relating to or having the purpose or effect of prevention or remediation of Releases or threatened Releases of Hazardous Materials or the exposure of any person, property, ecosystem or natural resources to Hazardous Materials (but excluding OSHA and similar worker safety Laws applying to employers), and the protection of the ecosystem or the Environment, including the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq.

"**Equityholders' Committee**" — Section 11.4.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended.

"**ERISA Affiliate**" shall mean any trade or business (whether or not incorporated) that is part of the same controlled group, or under common control with, or part of an affiliated service group that includes a Seller, within the meaning of Code Section 414(b), (c), (m), or (o) or ERISA Section 4001(a)(14).

"**Escrow Agent**" means the escrow agent under the Deposit Escrow Agreement and the Closing Escrow Agreement.

"**Escrow Amount**" — Section 4.3.

"**Excess Cash**" means amounts of cash (net of Debt) of the Sale Company for periods prior to the Closing.

"**Excluded Assets**" means assets not included in the Acquired Assets, as set forth in Section 1.4.

"**Excluded Canning Business**" — Section 1.4.7.

"**Excluded Carved-Out Location Assets**" — Section 1.3.2.1.

"**Excluded Carved Out Location Trade Payables**" means with respect to the operations of the Business located in: (i) Shanghai, China (1) Third Party Trade Payables and (2) Trade Payables owed to the Business' Tulsa, Oklahoma operations; (ii) Clayton, Australia and San Luis Potosi, Mexico, Third Party Trade Payables.

"**Excluded Financial Contracts**" — Section 1.4.4.

"**Excluded Intellectual Property**" — Section 1.4.6.

"**Excluded Inventory**" means all work-in-process in China.

"**Excluded Trade Payables**" means all: (i) Excluded Carved Out Location Trade Payables; and (ii) Pro Forma Tulsa Trade Payables.

"**Excluded Trade Receivables**" means all: (i) Overdue Trade Receivables; (ii) Account Receivables generated by the Shanghai, China operations of the Business, including the China Pro Forma Trade Receivables; (iii) Australia Pro Forma Trade Receivables; and (iv) Trade Receivables of the Tulsa, Oklahoma operations of the Business that represent Trade Payables of the Shanghai, China operations of the Business.

"**Existing Tulsa Collective Bargaining Agreement**" means that certain Third Agreement, dated as of July 22, 2006, between ASEC Manufacturing General Partnership and the International Union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Unit, Local Union No. 286 governing workers at Seller's 1300 Main Parkway, Catoosa, Rogers County, Oklahoma (*e.g.*, Tulsa) facility.

"**Expense Reimbursement**" — Section 9.3.2.

"**Filing Affiliates**" means Delphi, DASHI and the following Affiliates of Delphi, which are included in the Bankruptcy Cases and operate certain portions of the Business or are Asset Sellers: Delphi Automotive Systems LLC, Exhaust Systems Corporation, Environmental Catalysts, LLC, Delphi Automotive Systems (Holding), Inc., Delphi Technologies, Inc., ASEC Manufacturing General Partnership and ASEC Sales General Partnership.

"**Final Closing Date Statement**" — Sections 4.7.2, 4.7.3 or 4.7.4, as applicable.

"**Final Order**" means an order or judgment: (i) as to which the time to appeal, petition for certiorari or move for review or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for review or rehearing is pending; or (ii) if an appeal, writ of certiorari, reargument or rehearing has been filed or sought, the order or judgment has been affirmed by the highest court to which such order or judgment was appealed or certiorari has been denied, or reargument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the

Bankruptcy Rules, may be filed with respect to such order or judgment shall not prevent such order or judgment from being considered a Final Order.

"**Foreign Operations**" means the operations of the Business other than by any of the Filing Affiliates.

"**Fuel Reformer**" means a device having the principal function to convert fuels (hydrocarbons, alcohols, other chemical compounds containing chemically bound hydrogen or mixtures thereof) to produce mixtures containing free hydrogen that can be used within such mixtures or, after full or partial separation, for applications using hydrogen (e.g. as a chemical reactant), and containing other chemical compounds (e.g. carbon monoxide).  A device having the above-described principal function shall be considered to be a Fuel Reformer notwithstanding the fact that engine exhaust may be introduced thereto as a reactant instead of fuel during some phases of its operating cycle or as a secondary reactant in addition to fuel.

"**Fuel Reformer Patent License**" – Section 7.2.2.

"**Fuel Reformer Patents**" – Section 7.2.1.

"**GAAP**" means United States generally accepted accounting principles as in effect from time to time consistently applied.

"**Good Faith Deposit**" — Section 11.5.3.

"**Governmental Entity**" means any United States federal, state or local or any supranational or non-United States court, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality, governmental authority or regulatory body including all Antitrust Authorities.

"**Governmental Order**" means, with respect to any Person, any judgment, order, writ, injunction, decree, stipulation, agreement, determination or award entered or issued by or with any Governmental Entity and binding on such Person.

"**Governmental Requirements**" — Section 5.1.3.

"**Hazardous Materials**" means all matter or the effect of matter including any substances listed, defined or regulated under an Environmental Law or which has the characteristic of being explosive, radioactive, noxious, infectious, mutagenic, corrosive, carcinogenic, hazardous or toxic to human health, the ecosystem or the Environment.

"**Hired Current Employees**" means those Current Employees hired by Purchasers on or promptly after the Closing Date and those Current Employees who become employees of a Purchaser on the Closing Date by operation of Law or contract as a result of the Sale.

"**HSR Act**" means the Hart-Scott-Rodino Antitrust Improvement Act of 1976, as amended.

"**Improvements**" — Section 5.1.16.A.

"**Including**" means, whether or not initially capitalized, including, without limitation.

9

"**Indemnifiable Losses**" — Section 12.1.

"**Indemnified Party**" — Section 12.3.

"**Indemnified Real Property**" — Section 12.6.1.A.

"**Indemnifying Party**" — Section 12.4.

"**Indian License and Equipment Lease Arrangements**" means the arrangement between Sellers and Varroc Exhaust Systems Pvt. Ltd. under which Sellers license technical information, lease equipment and provide advice, assistance and support services to Varroc.

"**Individual Claim Amount**" — Section 12.5.5.

"**Intellectual Property**" means the Patent Rights, Trademark Rights, Copyrights, Software, Trade Secrets, Know-How and registered domain names and IP addresses.

"**Inventory**" means raw materials (including substrates), work-in-process, finished goods and packaging that is usable in the Ordinary Course of Business, owned by Sellers and valued at the lower of cost or market value in accordance with GAAP and past practices of the Business.

"**IRC**" means the Internal Revenue Code of 1986, as amended.

"**~~January~~July Projections**" means those certain financial projections of the Business as of ~~January 2007 provided to the Purchasers by the Sellers in March 2007.~~ July (6+6) 2007 attached as Schedule 5.1.12.

"**Know-How**" means proprietary technical and business knowledge and information, including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

"**Laws**" means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable federal, state, local or foreign governmental authority.

"**Liability**" or "**Liabilities**" mean any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on- or off- balance sheet or otherwise, or due or to become due, including those arising under any Law, Claim, Governmental Order, Contract or otherwise.

"**Licensed Intellectual Property**" means Sellers' rights with respect to all Intellectual Property licensed or sublicensed to any Seller or its Affiliates from an affiliated or unaffiliated third party which is Used in Connection with the Business, including the Licensed Intellectual Property listed on Schedule 5.1.7.A.2.

"**Lien**" means any lien, charge, claim, interest, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction).

"**Listed Contracts**" — Section 5.1.14.A.

"**Listed Real Property**" — Section 5.1.16.A.

"**Loss**" or "**Losses**" means any and all claims, losses, Liabilities, sanctions, penalties, damages, costs and expenses; in each case including reasonable, actual, out-of-pocket expenses (including reasonable attorneys' fees).

"**Marked Agreement**" — Section 11.5.2.

"**Material**" or "**material**" shall mean, with respect to the Business, the Acquired Assets or the Sale Company, having, or reasonably likely to have, an impact thereon or a value thereto in excess of $1,000,000.

"**Material Adverse Effect**" shall mean, with respect to the Business, the Acquired Assets or the Sale Company, an adverse change or effect on the assets, properties, operations, Liabilities or financial condition of the Business, any of the Acquired Assets or the Sale Company whether arising out of a single event or circumstance or a series of related events or circumstance and resulting in a monetary Loss (including a (1) loss related to income from operations or (2) in the case of an actual or intended reduction in a commitment by a customer (measured by contribution margin in any twelve month period), an actual or reasonably expected Loss) in excess of U.S. $3,000,000; provided, however, that any change or effect resulting from, relating to or arising directly out of (i) the public announcement of the transactions contemplated by this Agreement or actions required by this Agreement including by reason of the identity of Purchaser or communication by Purchaser of its plans or intentions regarding operation of the Business; (ii) any act or omission of a Seller taken with the prior written consent of the Purchaser; (iii) any action taken by Seller or Purchaser or any of their respective representatives required by the terms of this Agreement or necessary to consummate the transactions contemplated by this Agreement; (iv) conditions affecting the industry and markets in which the Business generally operates, to the extent that such conditions do not disproportionately affect the Business as compared to other participants in the industry and markets in which the Business generally operates; (v) changes in United States generally accepted accounting principles or generally accepted accounting principles of any foreign jurisdiction in which any of the Acquired Assets are located, or (vi) changes in any Law, in each case, shall not be considered to have a Material Adverse Effect.

"**Net Working Capital**" means the total amount of all Inventory (other than Excluded Inventory or Owned PGMs) *plus* all Accounts Receivables of the Business (other than Excluded Trade Receivables) *plus* certain other current assets relating to the Purchased Assets; *minus* the sum of the total amount of all Accounts Payables of the Business (other than Excluded Trade Payables) *plus* the sum of all certain other current liabilities relating to the Purchased Assets, in each case as set forth in Schedule 4.6.1.

"**Net Working Capital Methodology**" means the methodology to be employed by the Purchasers and the Sellers in calculating the Net Working Capital of the Business set forth on Schedule 4.6.1. Schedule 4.6.1 sets forth a demonstration of the Net Working Capital Methodology. Attached hereto as Schedule 4.6.1 are several spreadsheets setting forth the quantitative expression of the Net Working Capital Methodology.

"**Net Working Capital Target**" means U.S. $~~57.9~~55.0 million; provided, however, that if the Closing does not occur prior to September 30, 2007, the Parties shall work together in good faith to update the Net Working Capital Target using the same Net Working Capital Methodology as was employed to set the target as of the date hereof.   For purposes of clarification, and not limitation, the Net Working Capital

Target is independent of, and in addition to, the Owned PGM Target Value without any duplication of the elements thereof.

"**Non-Filing Affiliate**" means the: (i) Sale Company; and (ii) each Seller other than Delphi and the Filing Affiliates.

"**Notice**" — Section 13.17.

"**OEM**" means original equipment manufacturer.

"**OFAC**" — Section 5.2.11.

"**Ordinary Course of Business**" means: (i) with respect to the U.S. Operations of the Filing Affiliates, the ordinary course of business consistent with custom and practice of the Business prior to the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases thereafter; and (ii) with respect to the Foreign Operations, the ordinary course of business consistent with past custom and practice of the Business.

"**Other Book Assets**" means: all other assets including general intangible assets of the Sellers which are Used in Connection with the Business but which are not otherwise covered by the definitions of the various categories of assets included in the Acquired Assets identified in Section 1.3.1, including: (i) all rights to or in connection with prepaid expenses (other than the prepaid expenses related to the Excluded Canning Business or other Excluded Assets); and (ii) all claims and similar rights (and benefits arising from such claims or rights) owing to any Asset Seller, whether or not yet due and payable, including the benefit of all security therefor and of all guarantees, indemnities and rights (including warranty rights against suppliers) in respect of the same.

"**Overdue Trade Receivable**" means a Trade Receivable that has not been paid by the account debtor at least thirty (30) days after such Trade Receivable was due. The due date of any particular Trade Receivable shall be determined based on the terms which the Business has established with the applicable customer (including Delphi or any of its Affiliates) as the date when the subject invoice is due to be paid by such customer (whether based on an invoice date, delivery date or other date associated with the customer and the relevant Contract or applicable terms and conditions of Sale).

"**Owned Intellectual Property**" means all Intellectual Property in and to which a Seller holds, or has a right to hold, in whole or in part, right, title and interest which is Used in Connection with the Business and the Reformer Patents, including such Intellectual Property listed on Schedules 5.1.7.A.1 and 5.1.7.A.3.

"**Owned PGM Shortfall**" — Section 4.6.2.1.

"**Owned PGM Surplus**" — Section 4.6.2.2.

"**Owned PGM Target Value**" means U.S. $1,200 per troy ounce for platinum, U.S. $350 per troy ounce for palladium and U.S. $5,650 per troy ounce for rhodium, determined in accordance with the methodology set forth in Schedule 4.6.2.  The total Owned PGM Target Value is approximately U.S. $~~30,769,000~~ 26,000,000; provided, however, that if the Closing does not occur prior to September 30, 2007 the Parties shall work together in good faith to update the Owned PGM Target Value using the same methodology as was employed to set the target as of the date hereof.

"**Owned PGM Volume Target**" means 5,834~~4,292~~ troy ounces for platinum, ~~22,226~~19,560 troy ounces for palladium and ~~2,830~~2,465 troy ounces for rhodium, determined in accordance with the methodology set forth in Schedule ~~4.6.2.~~ 4.6.2; provided, however, that if the Closing does not occur prior to September 30, 2007, the Parties shall work together in good faith to update the Owned PGM Volume Target using the same methodology as was employed to set the target as of the date hereof.

"**Owned PGMs**" means PGMs owned by the Sellers.

"**Party**" or "**Parties**" means any Purchaser or Purchasers and/or any Seller or Sellers.

"**Patent Rights**" means: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including any patent disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention registrations, patents, patent registrations and patent applications (including all provisionals, substitutions, reissues, divisions, continuations, continuation-in-part, extensions and reexaminations) and all rights therein provided by international treaties or conventions, and all patentable improvements to the inventions disclosed in each such registration, patent or application; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing; (vi) without limiting the foregoing, all patent rights included in the Acquired Assets or underlying the Atmospheric Catalyst License.

"**Permit Transfer Liabilities**" shall mean Losses incurred by Purchasers due to the inability to transfer any Permit required under Environmental Law to Purchasers as of the Closing Date despite Purchasers' reasonable best efforts to transfer such permits in full cooperation with Sellers.

"**Permits**" means permits, concessions, grants, franchises, licenses and other governmental authorizations and approvals issued to any Seller and that are currently used for the purpose of carrying on the Business or that relate to the Acquired Assets.

"**Permitted Encumbrances**" means, with respect to the Real Property: (i) Liens for any current real estate or ad valorem taxes or assessments not yet delinquent or being contested in good faith by appropriate proceedings; (ii) inchoate mechanic's, materialmen's, laborer's and carrier's liens and other similar inchoate liens arising by operation of law or statute in the Ordinary Course of Business for obligations which are not delinquent and which will be paid or discharged in the Ordinary Course of Business; (iii) rights of the public and adjoining property owners in streets and highways abutting and adjacent to the Real Property; (iv) easements, covenants, restrictions and other encumbrances of public record; and (v) such other matters, the existence of which, in the aggregate, would not materially interfere with or materially affect the use of the respective underlying asset to which such encumbrances relate as used on the Closing Date.

"**Permitted Lien**" means: (i) purchase money security interests arising in the Ordinary Course of Business; (ii) security interests relating to progress payments created or arising pursuant to government contracts set forth on Schedule 5.1.5.A; and (iii) Liens of any Seller's pre-Petition Date secured lenders and post-Petition Date secured lenders which such lenders have agreed to release in connection with the Sale to the extent such Liens are actually released at Closing.

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other IT assets other than Intellectual Property, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Real Property, at the place of business of a vendor or elsewhere, together with any interest as lessee in any leases with respect to the foregoing.

"**Petition Date**" — the Recitals.

"**PGM**" means platinum group metals, including platinum, palladium and rhodium.

"**PGM Inventory**" means Sellers' PGM inventory.

"**PGM Inventory Methodology**" means the methodology to be employed by the Purchasers and the Sellers for calculating the PGM Inventory and set forth on Schedule 4.7.1.1 hereto.

"**PGM Leases or Borrowings**" — Section 4.6.4.

"**PGM Physical Inventory Report**" — Section 4.7.1.1.

"**PGM Pricing Methodology**" means applying the first London fixing for platinum and palladium and the Johnson Mathey 9:00 a.m. base price for rhodium.

"**Post-Closing Environmental Compliance Matter**" means an Environmental Compliance Matter occurring on or after the Closing Date.

"**Post-Closing Environmental Contamination**" means Environmental Contamination occurring on or after the Closing Date.

"**Post-Closing Severance Obligations**" — Section 2.1.10.

"**Post-Petition Contracts**" means the Contracts of the Filing Affiliates entered into on or after the Petition Date relating to the Business in the Ordinary Course of Business or approved by the Bankruptcy Court.

"**Potential Bidder**" — Section 11.2.

"**Pre-Closing Environmental Compliance Matter**" means an Environmental Compliance Matter occurring prior to the Closing Date.

"**Pre-Closing Environmental Contamination**" means Environmental Contamination occurring prior to the Closing Date.

"**Pre-Petition Contracts**" means the Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates before the Petition Date.

14

"**Preliminary Closing Date Net Working Capital Calculation**" — Section 4.6.1.

"**Preliminary Closing Owned PGMs**" — Section 4.6.2.1.

"**Preliminary Closing PGM Inventory Statement**" — Section 4.5.

"**Preliminary Purchase Price**" — Section 4.1.

"**Preliminary Restitution Commitments**" — Section 4.6.3.

"**Products**" means ceramic or metallic monolith substrates coated with catalytically active components, designed, manufactured, marketed, sold, installed or serviced by the Business.

"**Pro Forma Tulsa Trade Payables**" means certain Trade Payables reflected in the accounting books and records of the Business' Tulsa operations that reflects the reconciliation of the actual Trade Payables of the Business' Tulsa location with the Trade Payables that would have been reflected on the Tulsa balance sheet if the Filing Affiliates had not sought bankruptcy protection (e.g., were not subject to the amended payment terms required by suppliers and vendors of the Filing Affiliates).

"**Proposed Hired Current Employees**" — Section 8.7.

"**PTO Obligations**" means all Liabilities related to or arising from accrued paid-time-off, vacation, holiday and sick leave obligations to Current Employees.

"**Purchase Price**" — Section 4.1.

"**Purchased Assets**" means the Acquired Assets and the Sale Securities.

"**Purchased Intellectual Property**" means all Owned Intellectual Property and Licensed Intellectual Property in each instance, other than the Patent Rights subject to the Atmospheric Catalyst License.

"**Purchaser**" and "**Purchasers**" shall have the meanings set forth in the preamble to this Agreement.

"**Purchaser Confidentiality Agreement**" means that certain Confidentiality Agreement dated as of June 21, 2005 between Delphi and Umicore, as amended by that certain letter agreement dated as of February 20, 2007 between Delphi and Umicore and as further amended by that second letter agreement dated as of February 27, 2007 between Delphi and Umicore.

"**Purchaser Indemnified Parties**" — Section 12.1.

"**Qualified Bid**" — Section 11.6.

"**Qualified Bidder**" — Section 11.2.

"**Real Property**" means the real property at the facilities described in <u>Schedule 5.1.16.A</u> and all Improvements located thereon, including all rights to leases of such Real Property.

"**Release**" means any release, spill, emission, discharge, leaking, pumping, injection, deposit, disposal, dispersal, or leaching or migration into the indoor or outdoor environment (including ambient air,

surface water, groundwater and surface or subsurface strata) or into or out of any property, including the movement of Hazardous Materials through or in the air, soil, surface water, groundwater or property.

"**Remedial Works**" means the works, designs, investigations, Remediation and activities carried out by a Party in relation to Environmental Contamination or Environmental Compliance Matters, but excluding expenses of investigating information solely for the purposes of making a claim for indemnification under this Agreement.

"**Remediation**" means any investigation, clean-up, removal action, remedial action, restoration, repair, response action, corrective action, monitoring, sampling and analysis, installation, reclamation, closure, or post-closure in connection with the suspected, threatened or actual Release of Hazardous Materials.

"**Remediation Standards**" means standards which are: (i) the minimum criteria or standards under Environmental Laws, including use of risk assessment methodologies where permitted, in existence as of date of the Remediation; and (ii) applicable to the industrial use and operations at the Listed Real Property as carried out as of the date of the Remediation.

"**Remedy**" — Section 12.6.3.A.

"**Required Bid Documents**" — Section 11.5.

"**Restitution Commitments**" means, as of any date of determination, Sellers' aggregate commitments (measured by weight as opposed to value) to return or make restitution to customers of Consigned PGMs.

"**Retained Liabilities**" — Section 2.3.

"**Retired Employees**" means: (i) former employees of any Asset Seller or Affiliate that performed services primarily related to the Business; (ii) former employees of the Sale Company; and (iii) former U.S. Corporate Employees and their dependents, who as of the Closing Date were either retired and were covered by, or are eligible for or are receiving benefits under any "employee welfare benefit plan" (as that term is defined in ERISA) sponsored by Sellers that provides health, medical, drug, or other form of welfare benefit.

"**Return Date**" — Section 11.11.

"**Sale**" means the sale of the Business in accordance with the Bidding Procedures.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court issued pursuant to Sections 363 and 365 of the Bankruptcy Code: (i) in form and substance reasonably satisfactory to Purchasers; (ii) authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets and Assumed Liabilities and the Sale Securities to the Purchasers in accordance with the terms and conditions of this Agreement, free and clear of all Liens other than Permitted Encumbrances, Permitted Liens and Liens encompassed within Assumed Liabilities assumed by Purchasers pursuant to Section 2.1; (iii) including a specific finding that Purchasers are good faith purchasers of the Acquired Assets and the Sale Company and are entitled to the protections afforded by Section 363(m) of the Bankruptcy Code; and (iv) approving Sellers' assumption and assignment of the Assumed U.S. Contracts to the Purchasers pursuant to Section 365 of the Bankruptcy Code and, subject to and in accordance with

Section 8.6, ordering Sellers to pay the Cure Amounts to the other parties to the Assumed U.S. Contracts as a condition to such assignment and assumption.

"**Sale Company**" means Delphi Catalyst South Africa (Proprietary) Ltd., a South African Affiliate of Delphi engaged in the Business, all of the Sale Securities of which are owned by DASHI.

"**Sale Company Current Tax Amount**"  — Section 4.6.7.

"**Sale Company Retained Liability Amount**" — Section 4.6.7.

"**Sale Hearing**" — Section 11.9.

"**Sale Motion**" means one or more motions filed by Sellers with the Bankruptcy Court for approval of the Bidding Procedures Order and the Sale Approval Order.

"**Sale Securities**" means the shares or other equity of the Sale Company listed on Schedule 5.1.18.

"**Sales Offices**" means the Business' sales offices listed on Schedule 1.

"**SDN List**" — Section 5.2.11.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"**Securities Purchasers**" means the Purchasers to be set forth on Schedule 1 prior to Closing, with respect to the Sale Securities set forth opposite its name.

"**Seller**" and "**Sellers**" — the preamble to this Agreement.

"**Seller U.S. Health Plans**" — Section 3.7.

"**Sellers' Knowledge**" means the actual knowledge after reasonable investigation of the individuals listed on Schedule A in each of their respective functional areas listed on such schedule, without imputation of the knowledge of any other Person.

"**Shelf Tulsa Collective Bargaining Agreement**" means that certain Agreement, dated effective as of the Closing Date and ratified as of May 23, 2007, between Umicore Autocat USA Inc. and the International Union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Unit, Local Union No. 286 governing workers at Seller's 1300 Main Parkway, Catoosa, Rogers County, Oklahoma  (*e.g.*, Tulsa) facility, as set forth in Schedule 5.2.13.

"**Software**" means computer software and programs, including source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**Special Claim Matters**" — Section 12.5.5.

"**Straddle Period**" — Section 10.2.1.

"**Subsequent Bid**" — Section 11.6.

"**Successful Bid(s)**" — Section 11.8.6.

"**Successful Bidder(s)**" — Section 11.8.6.

"**Tax Return**" means any return, declaration, report, claim for refund or information return, or statement, or any other similar filings, related to Taxes, including any schedule or attachment thereto.

"**Tax(es)**" means any tax or similar governmental charge, impost or levy whatsoever (including income, profits, franchise, transfer, use, gross receipts, value added, employment, excise, ad valorem, property, withholding, payroll, social contribution, customs duty,  trade, license, severance, stamp, occupation, premium, environmental, capital stock, social security (or similar), unemployment, disability, real property, personal property, sales, registration, alternative or add-on minimum, estimated or windfall profit taxes or transfer fees), together with any related penalties, fines, additions to tax or interest, imposed by the United States or any state, county, local or foreign government or subdivision or agency thereof.

"**Taxable Period**" means any period for which Taxes are owed to a federal, state, local or foreign taxing authority, or for which a Tax Return is required to be filed by any of the Sellers, Sale Company or Purchasers with respect to the Business.

"**Technical Centers**" — Section 1.3.2.

"**Technical Documentation**" means all documented technical information currently in the files of the Business primarily used in the Business and owned by Sellers, in each case pertaining to the design or manufacture of the Products of the Business or the Purchased Intellectual Property.

"**Termination Date**" — Section 9.1.1.D.

"**Testing Services Agreement(s)**" — Section  7.2.8.

"**Third Party Bailed Assets**" — Section 1.4.1.

"**Third Party Indemnification Claim**" — Section 12.4.

"**Third Party Trade Payables**" means Accounts Payable which arise from and relate to the Business and are: (i) between Sellers or the Sales Company, on the one hand, and non-affiliate third parties, on the other hand; or (ii) between the Seller and/or the Sale Company, on the one hand, and another Delphi Affiliate that is not a Seller or the Sale Company, on the other hand and in the case of (ii) reflects a legitimate arm's length trade obligation as opposed to a financing transaction among such parties.

"**Toll Manufacturing Agreement(s)**" — Section 7.2.10.

"**Trade Payables**" means Accounts Payable which arise from and relate to the Business and are: (i) between Sellers or the Sales Company, on the one hand, and non-Affiliate third parties, on the other hand; (ii) between the Seller and/or the Sale Company, on the one hand, and another Seller, Sale Company or other Delphi Affiliate, on the other hand; or (iii) between the portion of any Seller that relates to the Business and any other portion of such Seller (*i.e.*, such as the canning operations of such Seller) and in the case of (ii) or (iii) reflect a legitimate arm's length trade obligation as opposed to a financing transaction among such parties.

"**Trade Receivables**" means Accounts Receivable which arise from and relate to the Business and are: (i) between Sellers or the Sales Company, on the one hand, and non-Affiliate third parties, on the other hand; (ii) between the Seller and/or the Sale Company, on the one hand, and another Seller, Sale Company or other Delphi Affiliate, on the other hand; or (iii) between the portion of any Seller that relates to the Business and any other portion of such Seller (*i.e.*, such as the canning operations of such Seller) and in the case of (ii) or (iii) reflect a legitimate arm's length trade obligation as opposed to a financing transaction among such parties.

"**Trade Secrets**" means: (i) all forms and types financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, test results, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or unpatentable and whether or not reduced to practice); (ii) all copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; (iii) all rights to file and apply for, prosecute, defend and enforce any of the foregoing; and (iv) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" means: (i) trademarks, trade names and service marks; (ii) the good will associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; (iv) copies, files and tangible embodiments of all of the foregoing, in whatever form or medium; and (v) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Transfer Agreement(s)**" — Section 1.1.2.

"**Transfer Documents**" means such bills of sale, assignments and other good and sufficient instruments of transfer conveying and transferring to Purchasers title to the Acquired Assets and the Sale Securities as provided in this Agreement or any Transfer Agreement and as Purchasers may reasonably request, including executed assignments for the Owned Intellectual Property, where applicable.

"**Transfer Taxes**" — Section 10.5.

"**Transition Services Agreement**" means any Transition Services Agreement between Sellers and Purchasers referred to in Section 7.2.6.

"**U.S. Corporate Employees**" means those Current Employees specifically designated as such on Schedule 5.1.19.A.

"**U.S. Employee-Related Credit**" – Section 4.6.9.

"**U.S. Operations**" means the operations of the Business by the Filing Affiliates including the manufacturing operations in Tulsa, Oklahoma, the Flint, Michigan, technical center and the sales and other business activities in Troy, Michigan.

"**Umicore**" — Preamble.

"**United States**" or "**U.S.**" means the fifty (50) states and the District of Columbia of the United States of America.

"**USA PATRIOT Act**" — Section 5.2.11.

"**Used in Connection with the Business**" — Section 1.3.1.

"**WARN Act**" means the Workers Adjustment and Retraining Notification Act of 1989, as amended, and the regulations promulgated thereunder.

"**Warranties**" refers to the representations and warranties provided by Sellers to Purchasers, or by Purchasers to Sellers, as the case may be, in each case as referred to in Article 5 of this Agreement or expressly set forth in any Transfer Agreement.

"**Works Council**" means any organization formed by, and comprised of, employees of the Business, any Seller or the Sale Company that represent the interests of, and negotiates on behalf of, such employees with respect to employment and benefit matters.

## 1.    CONVEYANCE OF THE ACQUIRED ASSETS AND SALE SECURITIES:

**1.1.    General.**  Subject to the terms and conditions of this Agreement, at the Closing, the Sellers described on Schedule 1 shall sell, transfer and assign the Purchased Assets sold by such Seller to the corresponding Purchasers described on Schedule 1 in accordance with this Section 1.1.  The Parties agree that the transfer of the Purchased Assets shall be governed by this Agreement.

**1.1.1.    Transfer of Purchased Assets.**  Subject to Section 1.1.3 below, at Closing, the transfer of the Purchased Assets may be effected through one or more transfers embodied in and pursuant to the applicable Transfer Agreements as may be necessary or advisable under applicable local Laws.

**1.1.2.    Identity of Purchasers.**  Attached hereto is a preliminary Schedule 1 reflecting the identity of certain of the Umicore affiliates who are anticipated to be the Purchasers hereunder. Umicore may make changes to the identities of any of such Purchasers (other than Purchasers of Purchased Assets from any of the Filing Affiliates) on or before five (5) days prior to the date of the Auction, provided that it may make changes to the identity of any Purchaser purchasing assets in France at any time on or before ten (10) Business Days prior to the Closing Date or such earlier date as may be reasonably requested by Delphi and agreed by Umicore as may be necessary in connection with the transfer of Contracts relating to the Business in France.  Each such Umicore affiliate shall be a direct or indirect wholly-owned subsidiary of Umicore.  Consistent with Section 7.2, the Parties agree to cooperate to finalize any Transfer Agreements required by or advisable under applicable local Law to transfer the Purchased Assets consistent with the transferors and transferees and Purchased Assets described on Schedule 1 (collectively, such local country, non-U.S. agreements under which the Acquired Assets and Sale Securities may be transferred by the Asset Sellers and Securities Sellers to the Asset Purchasers and Securities Purchasers are referred to herein as the "**Transfer Agreement(s)**").

**1.1.3.    Governing Documents.**  To the extent that there is an inconsistency between a Transfer Agreement (or its effect) and this Agreement, this Agreement shall control, except to the

extent that the intent for a Transfer Agreement to control is expressly stated in such Transfer Agreement.  The Parties agree to cooperate with each other in effecting the multiple transfers required to effect the transactions contemplated by this Agreement, and to enter into any additional Contracts reasonably necessary or advisable under applicable Law to effect and document the desired transfer.

**1.2.**    **Sale Securities.**  With respect to the Sale Company, upon the terms and subject to the conditions set forth in this Agreement (subject to Section 1.1.3 above), on the Closing Date, DASHI shall sell, transfer, assign, convey and deliver to the Securities Purchaser the Sale Securities; and Umicore shall cause the Securities Purchaser to purchase, accept and acquire the Sale Securities.

**1.3.**    **Acquired Assets Transactions.**  Upon the terms and subject to the conditions set forth in this Agreement, as modified or supplemented by any applicable Transfer Agreement (subject to Section 1.1.3 above), at Closing, Delphi shall, and shall cause each of the Asset Sellers to, and each of the Asset Sellers shall, sell, transfer, assign, convey and deliver to the Asset Purchasers, and Purchasers shall, or shall cause each of the Asset Purchasers to purchase, accept and acquire from the Asset Sellers, free and clear of all Liens except: (i) Permitted Encumbrances; (ii) Permitted Liens; and (iii) Liens included in the Assumed Liabilities assumed by Purchasers pursuant to Article 2, all of the assets and properties described in Section 1.3.1 below, subject in each case to Section 1.4 in respect of Excluded Assets (collectively, the "**Acquired Assets**").

**1.3.1.**    **Acquired Assets.**  The Acquired Assets consist of all of Sellers' right, title and interest in and to the rights and assets Used in Connection with the Business (as defined below) by the Sellers (other than the Excluded Assets) including: Accounts Receivable (other than Excluded Trade Receivables); Other Book Assets; Real Property; Personal Property; Permits; Inventory (wherever located and including all Inventory in transit or on order and not yet delivered, and all rights with respect to the processing and completion of any work-in-process, including the right to collect and receive charges for the Products and services performed by the Asset Sellers or the Sale Company with respect thereto); Contracts (including the Indian License and Equipment Lease Arrangements, and Capital Leases); Administrative Assets; and Purchased Intellectual Property, in each case to the extent Used in Connection with the Business, together with all other property and assets of every kind or nature Used in Connection with the Business (other than the Excluded Assets); provided that: (i) with respect to the Sales Offices, the Acquired Assets shall consist only of the Assets specifically set forth in Schedule 1.3.1; and (ii) with respect to the Carved-Out Locations, the Acquired Assets shall consist only of the assets set forth in Sections 1.3.2 below. The term "**Used in Connection with the Business**" as used herein shall mean all of those assets comprising the foregoing asset categories including any other assets owned, leased, licensed or otherwise held by a Seller or the Sale Company which were acquired for use or held for use by such Seller or Sale Company primarily in connection with the Business as currently conducted and which are necessary for the continued operation of the Business after the Closing in substantially the same manner as before the Closing, and including all current and total assets which would be reflected on the books of account of the Business if such accounts were: (i) presented on a carved-out or stand-alone basis; and (ii) audited by an independent accounting firm as of the Closing Date.  It is specifically understood and agreed that the Purchasers are acquiring, and the Sellers are selling, all of the tangible and intangible assets Used in Connection with the Business by the Asset Sellers or the Sale Company, except to the extent any such assets are included in the definition of the Excluded Assets.

**1.3.2.**    **Carved-Out Location Assets.**  Notwithstanding Section 1.3.1 above and consistent with the terms of Sections 1.4.8, 1.4.9 and 1.4.10 below relating to certain Excluded

Assets, the Sellers are only selling and the Purchasers are only purchasing certain specific assets Used in Connection with the Business in respect of the Sellers' catalyst operations in Clayton-Melbourne, Australia, San Luis Potosí, Mexico and Shanghai, China (the "**Carved-Out Manufacturing Locations**") and catalyst technical and testing centers in Flint, Michigan and Bascharage, Luxembourg (the "**Technical Centers**" and, together with the Carved-Out Manufacturing Locations, collectively the "**Carved-Out Locations**") as set forth below.

 **1.3.2.1.** In respect of the Carved-Out Manufacturing Locations, the applicable Asset Purchasers shall only acquire at the Closing the Accounts Receivables (but excluding any Excluded Trade Receivables), Inventory (other than work-in-process at the Shanghai location), Contracts with customers of the Business, direct material supplier Contracts of the Shanghai, China operations as required for the performance of its material purchase obligation under the Shanghai Toll Manufacturing Agreement, Administrative Assets used in connection with such Acquired Assets, Purchased Intellectual Property, Carved-Out Locations Acquired Equipment and Machinery (including those items to be selected by Purchaser at a mutually agreed time before Closing from among the Assets set forth on Schedule 1.3.2.1, such list to be completed by Purchaser) and Other Book Assets Used in Connection with the Business at such locations (collectively, the "**Acquired Carved-Out Manufacturing Location Assets**"). For purposes of this Section 1.3.2.1, Contracts shall only *include* any open or pending Contracts with customers and any Capital Leases for Carved-Out Locations Acquired Equipment and Machinery and shall specifically *exclude* any Contracts: (x) with suppliers or vendors of the Business; (y) governing the provision of utilities (*i.e.*, water, electricity, gas) services to any Seller; and (z) for the acquisition or purchase of raw materials by any Seller (other than in respect of the Shanghai, China location as described above). Consistent with the foregoing and Sections 1.4.8 and 1.4.9 below, the Sellers shall retain and the Purchasers shall not acquire all of the other tangible and intangible assets of the Business at the Carved-Out Locations, including any Real Property, Personal Property (other than the Carved-Out Locations Acquired Equipment and Machinery), Permits, and other tangible assets (including production furnaces other than the most recently acquired gas furnace in Shanghai) of the Business at the Carved-Out Locations (collectively, the "**Excluded Carved-Out Location Assets**"). The arrangements pertaining to the fulfillment of such open or pending Contracts and other matters among the relevant Purchasers and Sellers (as well as the Chinese Joint Venture in respect of the Shanghai, China operations) shall be governed by the Toll Manufacturing Agreements and Transition Services Agreement.

 **1.3.2.2.** In respect of the Sellers' Technical Centers, the Sellers are only selling and the applicable Asset Purchasers are only purchasing the Purchased Intellectual Property Used in Connection with the Business at the Technical Centers and certain confidentiality agreements included in the Listed Contracts with respect to the Luxembourg testing center (the "**Acquired Carved-Out Technical Center Assets**" and, together with the Acquired Carved-Out Manufacturing Location Assets, the "**Acquired Carved-Out Location Assets**"). Consistent with the foregoing and Section 1.4.10 below, the Sellers shall retain and the Purchasers shall not acquire any of the Excluded Carved-Out Location Assets located at the Carved-Out Technical Centers. At the Closing, the appropriate Sellers and Asset Purchasers shall enter into Testing Services Agreements with respect to each Technical Center.

 **1.4.** **Excluded Assets.** Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, the following properties and assets shall not be included in the Acquired Assets:

**1.4.1.   Bailed Assets.**  Any machinery, equipment, tools, Inventory (including Consigned PGMs), tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by an OEM or a Tier 1 Supplier thereto or any other third party, including such items referred to in Schedule 1.4.1 ("**Third Party Bailed Assets**"); provided, however, that any Contracts pertaining to such bailment arrangements shall be transferred as part of the Acquired Assets in accordance with Section 1.3.1 and Section 1.3.2 above.

**1.4.2.   Personnel and Medical Records.**  All work histories, personnel and medical records of employees and former employees of any Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, privacy or similar Laws, Purchasers will be provided the originals of all personnel and medical records of all Hired Current Employees, after posted written notice or other appropriate notice to such employees if legally required or if Sellers so elect.  All such personnel and medical records of such employees shall be books and records governed by Section 8.10.3 of this Agreement.  Upon written request of a Seller (or an Affiliate of a Seller), Purchasers shall promptly return any and all of these records to such Seller (or an Affiliate of such Seller as directed) at which time such Seller shall provide Purchasers with copies of the personnel and medical records of such employees.  If an employee objects to provision of personnel or medical records to Purchasers, the records will not be provided, except to the extent Sellers determine that provision of the records to Purchasers over the objections by the employee is permitted by the applicable local Law without adverse consequences to Sellers.

**1.4.3.   Certain Financial Assets.**  Cash, cash equivalents and bank accounts; provided, however, that to the extent any local or other bank accounts are held by the Sale Company and are necessary for the operation of the Business activities of such entity, Sellers agree to cause the transfers of such accounts with the Sale and Purchasers shall reimburse Sellers to the extent of any cash (net of any overdraft obligations) contained in such operating accounts as of the Closing Date.

**1.4.4.   Certain Financial Contracts.**  Contracts or commitments relating to Debt (other than Capital Leases) including Contracts or commitments for the borrowing or lending of money, credit cards, lines of credit or guarantees of indebtedness; letters of credit, performance or payment bonds or guarantees of performance; or contracts or commitments with any investment banker, financial advisor, finder or broker and those contracts specifically listed in Schedule 1.4.4 ("**Excluded Financial Contracts**"); provided, that any Contracts pertaining to PGM Leases or Borrowings Used in Connection with the Business shall be transferred in accordance with Section 1.3.1 and Section 1.3.2 above and subject to the operation of the Purchase Price adjustment provisions of Article 4.

**1.4.5.   Tax Refunds, Etc.**  Consistent with Article 10, any refund of Taxes, or claim for refund of Taxes, or deferred Taxes (other than deferred Taxes of the Sale Company) of any kind relating to the Acquired Assets, for any period prior to the Closing Date.

**1.4.6.   Excluded Intellectual Property.**  (i) All Intellectual Property owned by Sellers or their Affiliates (except for Software, which to the extent excluded is listed on Schedule 1.4.6), which, in the case of each such item of Intellectual Property, is not Used in Connection with the Business; (ii) that Intellectual Property listed on Schedule 1.4.6; (iii) the underlying Patent Rights of Sellers that are the subject of the Atmospheric Catalyst License; and (iv) also the trademarks and/or names "Delphi" and "Delphi Catalyst" and all other trademarks, service marks and trade names of Sellers or their Affiliates not listed on Schedule 5.1.7.A.1, Schedule 5.1.7.A.2 and Schedule 5.1.7.A.3 (collectively, the "**Excluded Intellectual Property**") subject to the limited

23

rights granted to Purchasers and their Affiliates pursuant to Section 8.10.5; provided, however, that as of the Closing Date, the Sellers agree to grant Purchasers a worldwide, perpetual, assignable (to Affiliates), royalty bearing, non-exclusive license to certain atmospheric catalyst Patent Rights on the terms set forth in the Atmospheric Catalyst License.

**1.4.7.    Excluded Canning Business.**    Sellers' catalyst canning operations (i.e., the encapsulation of a coated catalyst within a sheet metal container) (the "**Excluded Canning Business**") and all assets relating thereto.

**1.4.8.    Assets of the Chinese Joint Venture.**    Other than the assets pertaining to the Chinese Joint Venture which are described in Section 1.3.2 above as being part of the Acquired Carved-Out Manufacturing Location Assets, all assets of the Chinese Joint Venture including the Excluded Carved-Out Manufacturing Location Assets pertaining to the Chinese Joint Venture.

**1.4.9.    Assets of the Australian and Mexican Operations.**    Other than the assets pertaining to Sellers' catalyst operations in Clayton, Australia and San Luis Potosí, Mexico (the "**Australian and Mexican Operations**") which are described in Section 1.3.2 above as being part of the Acquired Carved-Out Manufacturing Location Assets, all assets of the Australian and Mexican Operations including the Excluded Carved-Out Manufacturing Location Assets pertaining to the Australian Operations.

**1.4.10.    Technical Centers.**    Other than assets pertaining to Technical Centers described in Section 1.3.2 above as being part of the Acquired Carved-Out Technical Center Assets, all assets of the Technical Centers including the Excluded Carved-Out Technical Center Assets pertaining to the Technical Centers.

**1.4.11.    Sales Offices.**    All assets of the Sales Offices of any kind whatsoever other than those listed on Schedule 1.3.1.

**1.4.12.    Privileged Information and Materials.**    Information and materials protected by the attorney-client privilege (or its equivalent in jurisdictions outside the United States); and the lack of which excluded information and materials are not material to the operation of the Business.

**1.4.13.    Insurance.**    The benefit of any of Sellers' or Sellers' Affiliates' insurance policies relating to the operation of the Business (including any right to proceeds thereunder).

**1.4.14.    Certain Rights.**    All of the rights and claims of the Filing Affiliates available to Filing Affiliates under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including claims against a certain PGM supplier referred to in Schedule 5.1.14.B. including any and all proceeds of the foregoing.

**1.4.15.    Real Property.**    All real property which is neither Listed Real Property nor any Improvements located thereon.

**1.4.16.    Benefit Plans.**    Any assets held on behalf of a Benefit Plan covering current or former employees of the U.S. Operations and any other Benefit Plan not required to be assumed by Purchasers as set forth in Section 2.1.4.

**1.4.17. Collective Bargaining Agreements.**    Except as required to be assumed by applicable Laws and consistent with Section 3.9, all Collective Bargaining Agreements (including the Existing Tulsa Collective Bargaining Agreement).

**1.4.18. Excluded Trade Receivables.**    All Excluded Trade Receivables.

**1.4.19. Certain Contracts.**    With respect to any Carved-Out Manufacturing Location, any Contracts governing the provision of utility (e.g., water, electricity, gas) services to any Seller or Contracts for the acquisition or purchase of any supplies, including raw materials by any Seller (other than Chinese raw material Contracts addressed in Section 1.3.2).

**1.4.20. Other Assets.**    (i) All finished goods Inventory and all inventories, products, rights, properties, assets and businesses of the Business which shall have been transferred or disposed of by Sellers prior to Closing not in breach of this Agreement; (ii) any document, information, Permit, Contract, Intellectual Property or other asset the transfer of which is prohibited by any Law or referred to in Schedule 1.4.20; and (iii) all computer hardware, equipment, computer Software and the other assets listed on Schedule 1.4.20; provided, however, that, to the extent that Sellers' foregoing exclusion of computer hardware, equipment and software is anticipated to result in a loss or disruption to the Business of its continuing functionality, the Parties will include the necessary arrangements to avoid such loss or disruption in a Transition Services Agreement, as contemplated by Section 7.2.6.

**1.5. Post-Closing Asset Deliveries.**    Should any Seller, in its reasonable discretion, determine after the Closing that books, records or other materials constituting Acquired Assets are still in the possession of such Seller or any of its Affiliates, such Seller shall or shall cause such Affiliates to promptly deliver them to the applicable Purchaser at no cost to such Purchaser.  Should Sellers or Purchasers, in their reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to Purchasers, Purchasers shall promptly return them to the applicable Seller at no cost to such Seller.

**1.6. Non-Assignable Permits and Contracts:**

**1.6.1. Non-Assignability.**    To the extent that any Contract or Permit (except for certain critical Contracts and Permits identified in writing by a Purchaser to a Seller) included in the Acquired Assets is not capable of being assigned to Purchasers at the Closing without the consent or waiver of the issuer thereof or the other party thereto or any third party (including a Governmental Entity) that has not yet been obtained by the Parties, or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law, this Agreement shall not constitute an assignment thereof, or an attempted assignment, unless any such consent or waiver is obtained.  Schedules 5.1.11 and 5.1.14.A expressly denotes which of the Listed Contracts and Permits are not capable of being assigned to Purchasers at the Closing, but that would otherwise be considered Acquired Assets provided that noting that a consent is required to effect the transfer of Contract or Permit does not, by itself, place such Contract or Permit within this sentence.

**1.6.2. Efforts to Obtain Consents and Waivers.**    At Purchaser's request, Sellers shall, at their expense, use commercially reasonable efforts, and Purchasers shall, at their expense, cooperate with Sellers, to obtain the consents and waivers and to resolve the impracticalities of assignment referred to in Section 1.6.1 after the Closing.

**1.6.3.    If Waivers or Consents Cannot Be Obtained.**  To the extent that the consents and waivers referred to in Section 1.6.1 are not obtained by Sellers, or until the impracticalities of assignment referred to therein are resolved, Sellers' sole responsibility with respect to such matters, notwithstanding Section 1.2, shall be to use, during the twelve (12) month period commencing with the Closing, all commercially reasonable efforts, at no cost to Sellers, to: (i) provide to the applicable Purchaser the benefits of any Permit or Contract, all as referred to in Section 1.6.1, included in the Acquired Assets; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to such Purchaser, without incurring any financial obligation to such Purchaser; and (iii) enforce for the account of such Purchaser and at the cost of such Purchaser any rights of Sellers arising from the Permits or Contracts included in the Acquired Assets referred to in Section 1.6.1 against such issuer thereof or other party or parties thereto.

**1.6.4.    Obligation of Purchasers to Perform.**  To the extent that any Purchaser is provided the benefits pursuant to Section 1.6.3 of any Permit or Contract included in the Acquired Assets, such Purchaser shall perform, on behalf of the applicable Seller, for the benefit of the issuer thereof or the other party or parties thereto, the obligations of such Seller thereunder or in connection therewith, and if such Purchaser shall fail to perform to the extent required herein, the applicable Seller, without waiving any rights or remedies that it may have under this Agreement or applicable Laws, may suspend its performance under Section 1.6.3 in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or such Seller may perform at such Purchaser's sole cost and expense, in which case such Purchaser shall reimburse such Seller's costs of such performance immediately upon receipt of an invoice therefor.

**1.7.    Certain Assigned Contracts.**  With respect to those Contracts for goods or services included in the Acquired Assets and used by both the Business and the other operations of Delphi or its affiliates that are set forth on Schedule 1.7 and will be transferred to Purchasers at Closing, Purchasers shall provide Sellers with the benefits of such Contracts in substantially the manner described in Section 1.6.3 above, and Sellers shall reimburse Purchasers for such benefits in substantially the manner described in Section 1.6.4 above, until the earlier of such time as separate contracts for such goods or services have been agreed between the applicable Seller and the other party to such contracts or the termination of such Contract.

**2.    ASSUMPTION OF LIABILITIES REGARDING ACQUIRED ASSETS TRANSACTIONS; RETAINED LIABILITIES:**

**2.1.    Assumed Liabilities.**  At and as of the Closing, Umicore shall cause the applicable Asset Purchasers or Securities Purchaser to assume and agree to pay, perform and discharge when due, and shall be liable only with respect to the following obligations, Liabilities and responsibilities relating to the operation of the Business (the "**Assumed Liabilities**"):

**2.1.1.**    The obligations of Sellers arising subsequent to the Closing under the Contracts, licenses, Permits and leases included in the Acquired Assets and assigned or otherwise transferred to Purchasers pursuant to this Agreement or the Transfer Agreements.

**2.1.2.**    Accounts Payable (other than Excluded Trade Payables) that have been incurred in the Ordinary Course of Business, including Trade Payables to any Seller or Seller Affiliate that are not Excluded Trade Payables.

**2.1.3.**    Claims and other obligations relating to Purchasers' ownership, operation or use of the Acquired Assets after the Closing.

26

**2.1.4.**    Obligations which Purchasers are required to assume by operation of Law as a result of the Sale or by virtue of Purchasers' acquisition of the Sale Securities, under Benefit Plans covering current or former employees of the Sale Company and the Foreign Operations in Florange, France (i.e., other than the Assumed PTO Obligations described in Section 2.1.5, the Purchasers are assuming no such Liabilities or obligations in respect of Benefit Plans relating to the U.S. Operations or the Foreign Operations outside of the Sale Company and Florange, France), together with obligations with respect to Purchasers' employment after the Closing of the Hired Current Employees, all as described in Article 3 of this Agreement.

**2.1.5.**    All PTO Obligations with respect to each Hired Current Employee (the "**Assumed PTO Obligations**").

**2.1.6.**    The obligation to pay for assets, goods or services relating to the Business and acquired pursuant to a Contract that is an Acquired Asset pursuant to this Agreement, which are ordered by any Seller on or prior to the Closing in the Ordinary Course of Business and that are received by the relevant Purchaser after Closing.

**2.1.7.**    Liabilities and obligations arising out of, resulting from, or relating to Products manufactured subsequent to the Closing, including all Product warranty, Product returns, Product Liability and Product recall Liability (recognizing that Sellers are assigning to Purchasers their rights against third party manufacturers in respect of Products manufactured subsequent to the Closing in accordance with the provisions of Section 1.3.1); provided, however, that subject to the understanding that such matters are not a Retained Liability, Purchasers' assumption of any such Product-related warranty or Liability shall be limited to the extent that it was warranted directly to a customer of the Business, that such Product met the specific specifications and test conditions mandated by such customer and, on no account shall Purchasers assume or be liable for any Product warranty, Product return, Product Liability or Product recall Liability under any Product warranty extended by a Seller or any other Delphi Affiliate to an OEM, Tier 1 supplier or other customer which covers any performance- or durability-related features of any exhaust systems-level, canning or other non-catalyst products, whether arising before, on or after the Closing Date.

**2.1.8.**    Any and all Environmental Claims or Liabilities as allocated in accordance with the principles set forth in Section 12.6 of this Agreement; provided, however, that Permit Transfer Liabilities are not an Assumed Liability hereunder.

**2.1.9.**    Any and all Claims: (i) arising after the Closing Date under health and safety Laws (such as the Occupational Safety and Health Act) applicable to employers; and (ii) for "toxic tort" for exposure of any person or property to Hazardous Material under a Law or common law to the extent the exposure giving rise to the "toxic tort" Claim occurred after the Closing Date.

**2.1.10.**    Subject to Sellers' retention of Liabilities related to Benefit Plans covering current and former employees of the U.S. Operations and non-U.S. Benefit Plans which Purchasers are not required to assume by operation of Law or by virtue of Purchasers' acquisition of the Sale Securities, all severance obligations owed or owing to any Hired Current Employees or which become due and payable to Hired Current Employees, in each case after the Closing Date, in respect of employment following the Closing Date, which results from any post-Closing transfer, attempted transfer, other condition of, or termination of employment of one or more Hired Current Employees by a Purchaser ("**Post-Closing Severance Obligations**").

**2.2.    No Expansion of Third Party Rights.**    The assumption by Purchasers of the Assumed Liabilities shall in no way expand the rights or remedies of any third party against any Purchaser or Seller as compared to the rights and remedies which such third party would have had against the applicable Seller absent the Bankruptcy Cases, had Purchasers not assumed such Assumed Liabilities.  Without limiting the generality of the preceding sentence, the assumption by Purchasers of the Assumed Liabilities shall not create any third party beneficiary rights other than with respect to the Person that is the obligee of such Assumed Liability.

**2.3.    Retained Liabilities.**    Notwithstanding anything in this Agreement to the contrary, other than the Assumed Liabilities, Purchasers shall not assume or be deemed to have assumed, and shall have no Liability or obligation with respect to, any other Liabilities and obligations of any Seller or the Business and the appropriate Seller shall continue to be responsible for such Liabilities and obligations (collectively, "**Retained Liabilities**").    Without limiting the generality of the foregoing, the Sellers expressly acknowledge and agree that, other than the Assumed Liabilities, the appropriate Seller shall retain, and the Purchasers shall not assume or otherwise be obligated to pay, perform, defend or discharge any: (i) Liabilities (including Liabilities relating to social security (or similar) disability, or unemployment taxes) in respect of employment or services performed by any employee of the Business or any Seller or Affiliate on or prior to the Closing Date, including Retired Employees, other than any Post-Closing Severance Obligations in accordance with Section 2.1.10 or as otherwise set forth in Article 3; (ii) Product warranty, Product return, Product Liability and Product recall Liability claims relating to Products manufactured prior to the Closing Date; (iii) Liabilities in the nature of general and automobile Liability arising prior to Closing; (iv) litigation for which a claim has been made to Sellers on or before the Closing Date or to the extent it relates to an act or omission by any Seller or Affiliate prior to such date; (v) consistent with Article 10, Tax Liabilities for periods or portions of periods ending on or before the Closing Date; (vi) Liability of the Sellers to any person or entity (including Retired Employees) in connection with any Benefit Plan covering current and former employees of the U.S. Operations and non-U.S. Benefit Plans which Purchasers are not required to assume by operation of Law or by virtue of Purchasers' acquisition of the Sale Securities, including any Liability of Delphi or any other Seller under ERISA, whether directly or as an ERISA Affiliate; (vii) to the extent not captured by the preceding clause (vi), Liability for any PTO Obligations pertaining to Current Employees (other then Hired Current Employees) or former employees of the U.S. Operations, or for any severance or stay/retention bonuses which Liabilities are for the account of the Sellers as provided in Section 3.10 below; (viii) Liability of the Sellers to any person or entity (including Retired Employees) in connection with any Benefit Plan covering the current or former employees of the Foreign Operations insofar as the Australian, Chinese, Mexican, Indian, non-U.S. Sales Offices or Luxembourg operations of the Business are concerned; (ix) any and all Environmental Claims or Liabilities as allocated in accordance with the principles set forth in Section 12.6 of this Agreement, and any and all Claims: (a) arising prior the Closing Date under health and safety Laws (such as the Occupational Safety and Health Act) applicable to employers; and (b) for "toxic tort" for exposure of any person or property to Hazardous Materials under a Law or common law to the extent the exposure giving rise to the "toxic tort" Claim occurred prior to the Closing Date; (x) any Liability or obligation of any Seller relating to any default under any of the Contracts included in the Acquired Assets or under any of the Assumed Liabilities, to the extent such default takes place or pertains to acts or omissions of any Seller or Affiliate during the period prior to the Closing Date, including any Cure Amounts related to any Assumed U.S. Contract; (xi) any Liability or obligation of any Seller for administrative fees and expenses, including "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code; (xii) any Liability or obligation of any Seller for transaction fees and expenses and fees and expenses payable to lenders, brokers, financial advisors, legal counsel, accountants and other professionals in connection with this Agreement, the Ancillary Agreements and the transactions contemplated hereby and thereby; (xiii) any Liabilities owed to a Seller or any of its Affiliates by any Asset Seller or Sales Company which arose before the Closing Date (other than Included Trade Payables); (xiv) all Debt owed by a Seller or a Sale Company or any of their respective Affiliates; and

(xv) Excluded Trade Payables; (xvi) all Collective Bargaining Agreements (including the Existing Tulsa Collective Bargaining Agreement) and obligations thereunder except: (A) as required to be assumed by Purchasers by applicable Laws; and (B) to which the Sale Company is a party.  Sellers further agree to satisfy and discharge as the same shall become due all obligations and Liabilities of the Sellers (including the Retained Liabilities) not specifically assumed by Purchasers hereunder.

## 3.     ACQUIRED ASSETS - PERSONNEL MATTERS - TRANSFERRED EMPLOYEES:

**3.1.    Current Employees.**  Schedule 5.1.19.A lists all Current Employees. With respect to each Current Employee, Schedule 5.1.19.A lists: (i) each such person's title or job/position; (ii) each such person's job designation (i.e., salaried or hourly); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed or not actively at work (due to, e.g., illness, short-term disability, sick leave, authorized leave of absence, etc.)); (v) each such person's annual base rate of compensation; and, if applicable, any bonus; (vi) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, employment agreements, deferred compensation agreement, golden parachute, etc.) to the extent permitted to be disclosed under applicable Law (including local privacy laws); (vii) with respect to hourly employees, an indication of such employee's union or non-union status, and an identification of any relevant union; (viii) a description of the Benefit Plans in which each such employee participates providing the legal name of such plan, such employee's date of birth and date of hire; and (ix) with respect to those current and deferred beneficiaries of Benefit Plans which will be assumed by Purchasers by operation of law or as a result of acquisition of the Sale Company, a description of the benefit entitlement of each such beneficiary and whether such beneficiary is a current or deferred beneficiary and, if deferred, the date on which such benefit will become due; provided, however, that in respect of the information referred to in clause (vi), if such information is not on Schedule 5.1.19.A, Sellers may provide such information to Purchasers under separate cover.  Purchaser will make offers of employment to all active hourly Current Employees of the Tulsa operations. From the date of this Agreement until five (5) days prior to Closing, Purchaser will provide Sellers with monthly updates as to status of Purchaser's discussions with U.S. salaried Current Employees.  Not later than thirty-five (35) days prior to the Closing Date, Sellers will provide Purchasers with an updated Schedule 5.1.19.A, marked to show changes from the original list.  With respect to those Current Employees of an Asset Seller (other than those who will automatically become Hired Current Employees by operation of Law or contract as a result of the Sale), no later than five (5) days prior to Closing, Purchasers will provide Sellers with a list of Current Employees to whom any Purchaser has made an offer of employment that has been accepted to be effective on the Closing Date.  On the Closing Date, Schedule 5.1.19.A will be updated to include only Hired Current Employees.

**3.2.    Offer of Employment:**

   **3.2.1.**    Set forth on Schedule 3.2.1 is the agreement among the Parties with respect to certain matters relating to the Current Employees.

   **3.2.2.**    The following provisions of this Section 3.2.2 apply only to Current Employees of Shanghai, China and San Luis Potosi, Mexico locations, since Purchaser has agreed not to contact Seller's Current Employees in Australia with respect to offers of employment.  Notwithstanding the foregoing, with respect to employees of the Business located at the Sellers' Shanghai, China or San Luis Potosi, Mexico locations (but not Clayton, Australia), at any time prior to the termination of the applicable Toll Manufacturing Agreement covering such location, Purchasers shall provide Sellers with a list of employees to whom Seller intends to make an offer of employment effective upon the termination of such Toll Manufacturing Agreement (or such sooner date as such Seller and such Purchaser shall agree).  During the term of the relevant Toll Manufacturing Agreement,

Purchasers and Sellers shall reasonably consult regarding, and Sellers shall provide reasonable access to, employees providing services under the relevant Toll Manufacturing Agreements each for the purpose of allowing Purchasers to evaluate such employees for potential employment with Purchasers. For a period of three (3) months following the Closing, or at any time with respect to the persons named on a list (following their being placed on such list) provided to the Sellers pursuant to the second sentence of this subsection, Sellers shall take no action, or fail to take any action, intended to cause any such employee to not accept employment with any Purchaser (or its Affiliates) including transferring or reassigning any such employee to, or offering any, alternative positions with the Seller or any of its Affiliates. In the event the Purchaser offers employment to any such employee and the employee accepts such employment, the applicable Purchaser and Seller shall reasonably cooperate to transfer the employment of such employee(s) to the Purchaser at the end of the relevant Toll Manufacturing Agreement.

**3.2.3.** Subject to applicable Laws and to the longer period with respect to certain Current Employees as set forth in Section 3.2.2 above, Sellers agree to provide, through the Closing Date, Purchasers with reasonable access to all Current Employees (and related personnel and medical records and facilities), including but not limited to facilitating interviews of, and offers of employment to, such employees. Sellers will release to, or obtain release of and deliver to Purchasers experience records from Sellers' insurer to allow Purchasers to pursue and seek bids for health and risk benefit plans.

**3.2.4.** Purchasers will set their own initial terms and conditions of employment for the Hired Current Employees and others it may hire, including work rules, benefits and salary and wage structure, all in accordance and consistent with such Purchaser's own policies and plans and as permitted by applicable Laws. Other than merit programs and annual wage increases in the Ordinary Course of Business and benefits set forth on Schedule 3.2.4, no Seller has made any announcement in the past twelve (12) months to any Current Employee regarding any continuation, introduction, increase or improvement of any Benefit Plan, and no Seller will make any such announcement prior to Closing without the prior written consent of Purchasers. Except as explicitly provided in this Agreement or by operation of Law, Purchasers will assume no Liabilities with respect to any Benefit Plan of any Seller. It is understood and agreed that: (i) Purchasers' intention to extend certain offers of employment as set forth in this Section 3.2 will not constitute a contract (express or implied) on the part of any Purchaser to any post-Closing employment relationship of any fixed term or duration or upon any terms or conditions other than those that a Purchaser may establish pursuant to individual offers of employment; and (ii) any employment offered by any Purchaser is "at will" and may be terminated by Purchaser or by an employee at any time for any reason (subject to any written commitments to the contrary made by a Purchaser or an employee and applicable Laws governing employment). Nothing in this Agreement will be deemed to prevent or restrict in any way the right of any Purchaser to terminate, reassign, promote or demote any of the Hired Current Employees after the Closing, or to change adversely or favorably the title, powers, duties, responsibilities, functions, locations, salaries, other compensation or terms or conditions of employment of such employees; provided, however, that Purchasers' may be subject to Post-Closing Severance Obligations pursuant to Section 2.1.10 above. Notwithstanding the foregoing, the Purchasers shall recognize the seniority status (*e.g.,* years of service) of all Hired Current Employees for all purposes of the employment of such Hired Current Employees with such Purchaser; provided, however, that Purchasers shall not be obligated to factor seniority status into any initial hiring decisions.

**3.3.** **Purchasers' U.S. Benefit Plans.** U.S. Hired Current Employees' and their eligible dependents and beneficiaries participation in and eligibility for benefits under Purchasers' Benefit Plans

will commence no later than two (2) months following the Closing Date. Purchasers will recognize each Hired Current Employees' pre-Closing service with Seller for eligibility and vesting purposes under Purchasers' Benefit Plans; provided, however, that such recognition will not cause a duplication of benefits being provided to the Hired Current Employees by Sellers and Purchasers.

**3.4.** **WARN Act.** In respect of the U.S. Operations, Sellers shall be responsible for and shall pay all Liabilities or obligations arising under the WARN Act, if any, arising out of or resulting from layoffs of Current Employees or any termination of their employment which occurs prior to or on the Closing Date. The applicable Purchasers shall be responsible for and shall pay all Liabilities or obligations arising under the WARN Act, if any, arising out of or resulting from layoffs of Hired Current Employees or any termination of their employment which occurs after the Closing Date.

**3.5.** **Sellers' U.S. Pension Plans.** Consistent with Sections 2.1.4 and 2.3(v), Sellers are retaining and Purchasers are not assuming any assets or Liabilities relating to Benefit Plans covering current or former employees of, or otherwise sponsored by, the U.S. Operations. Accordingly, all Hired Current Employees in the U.S. who are participants in the Benefit Plans that are pension plans as defined in ERISA Section 3(2) will be fully vested in their accounts under such Benefit Plans as of the Closing Date; provided, however, that the applicable Seller (or the applicable Benefit Plan) will retain sole Liability for the payment of such benefits as and when such Hired Current Employees become eligible for such benefits under such U.S. Benefit Plans, and Purchasers will assume no Liabilities with respect to such U.S. Benefit Plans.

**3.6.** **Non-U.S. Benefit Plans.** Consistent with Section 2.1.4, Sellers are not retaining and Purchasers are assuming Liabilities relating to Benefit Plans covering current or former employees of the Sale Company and the Foreign Operations in Florange, France which Purchasers are required to assume by operation of Law or by virtue of Securities Purchasers' acquisition of the Sale Securities. Accordingly, all Hired Current Employees who are participants in the non-U.S. Benefit Plans covering current or former employees of the Sale Company or of the Foreign Operations in Florange, France which are so assumed by Purchasers will retain their benefits under such Benefit Plans as of the Closing Date in accordance with applicable Laws, the applicable Purchaser (or the applicable non-U.S. Benefit Plan so assumed by Purchasers) will assume (or retain) sole Liability for further payment of such benefits as when such Hired Current Employees became eligible for such benefits under such non-U.S. Benefit Plans. Seller shall retain and Purchasers will assume no Liabilities with respect to any other non-U.S. Benefit Plans. Purchasers' are not assuming any Liabilities or assets with respect to any non-U.S. Benefit Plans that the Purchasers are not required to assume by operation of Law or by virtue of the securities acquisition of the Sale Securities.

**3.7.** **Continuation of U.S. Health Plans by Sellers after the Closing.** Sellers shall maintain, keep in good standing (including make all required regulatory filings), and not terminate each of the Benefits Plans listed on Schedule 5.1.19.C (collectively, the "**Seller U.S. Health Plans**") until the earlier of: (i) the date that is two (2) months after the Closing Date; and (ii) written notification from Purchasers that a Purchaser has established health plans providing coverage for Hired Current Employees. During such two (2) month period, unless Sellers continue to provide coverage for all Hired Current Employees under the Seller U.S. Health Plans, Sellers shall make available to any such Hired Current Employees as are located in the U.S. continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1986, as amended ("**COBRA**"), to such Hired Current Employees (the "**Covered Employees**") (and their "qualified beneficiaries," as such term is defined by COBRA) and to the "M&A qualified beneficiaries" (as such term is defined in Treasury Regulation § 54.4980B-9 Q&A-4(a)), all in accordance with the terms of the Transition Services Agreement. Except for reimbursing Seller's costs as set forth in the Transition Services Agreement, Purchasers shall not have any obligation to collect or pay to Sellers the COBRA premium payments of the Covered Employees (and their qualified beneficiaries) or the M&A qualified beneficiaries, or to make available COBRA continuation coverage to any covered Employee or M&A

qualified beneficiaries or any other current or former employee of Seller. Purchasers' reimbursement of Sellers for the costs associated with the foregoing shall be reimbursed by such Purchaser(s) in accordance with the terms of the Transition Services Agreement. Purchasers shall not have any responsibilities, obligations or Liabilities for the Seller U.S. Health Plans or to extend or administer COBRA continuation coverage to Covered Employees or to M&A qualified beneficiaries as a consequence of the sale of Purchased Assets described herein. Sellers shall retain all responsibility for and shall satisfy all Claims Incurred (as defined below) under the Seller U.S. Health Plans on or prior to Closing Date. For purposes of this Section 3.7, the term "**Claims Incurred**" means that the medical services giving rise to such medical plan claims have actually been performed. Sellers will not take any action without the prior written consent of Purchasers that would result in the termination of the Seller U.S. Health Plans or otherwise result in Sellers being unable to provide continuation coverage to the Covered Employees (and their qualified beneficiaries) and the M&A qualified beneficiaries in accordance with this Section 3.7.

**3.8.**    **U.S. Benefit Plans For Retired Employees.**    Except for benefits to Retired Employees under Benefit Plans required to be assumed by Purchasers by operation of Law or by virtue of Securities Purchaser's acquisition of the Sale Securities, Sellers will retain sole Liability for the continued payment of benefits for Retired Employees, and Purchasers will assume no Liabilities to provide any employee welfare benefits, or pay for any employee welfare benefit plans (or any other Benefit Plans) with respect to such Retired Employees.

**3.9.**    **Collective Bargaining Agreements.**    Schedule 5.1.19.D lists all material collective bargaining agreements with any labor union, Works Council or other representative of Current Employees (including material local agreements, amendments, supplements, letters and memoranda of understanding of any kind) (collectively, the "**Collective Bargaining Agreements**"). Except as required by applicable Laws, Purchasers are not obligated to assume any Collective Bargaining Agreements under this Agreement (including the Existing Tulsa Collective Bargaining Agreement). As and to the extent required by law, Purchasers will negotiate in good faith with the counterparties to the Collective Bargaining Agreements with respect to the status of all Hired Current Employees who were employed in accordance with a Collective Bargaining Agreement.

**3.10.**    **Severance; Stay/Retention Bonuses.**    Except in respect of Post-Closing Severance Obligations, Sellers retain all obligations and Liabilities relating to any claims for severance, termination (actual or constructive), change in control agreements, stay or retention bonuses or other payments or benefits of Current Employees deriving from Purchasers' purchase of the Business or the Purchased Assets. In the event that following the Closing any Seller is required to pay any stay or retention bonuses or make other payments or provide any benefits to any employees at one or more Carved-Out Locations to incentivize such employees to fulfill Seller's obligations under any Ancillary Agreement, such Seller shall bear the entire cost of any such payments, benefits or incentives, except as otherwise expressly agreed by Purchaser in connection with the Toll Manufacturing Agreement for the Shanghai, China Carved-Out Manufacturing Location.

**3.11.**    **Cooperation.**    Sellers and Purchasers will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Article 3.

**3.12.**    **No Third Party Rights.**    No provision of this Agreement confers rights or remedies upon any person, including Current Employees, other than the Parties to this Agreement.

**3.13.**    **PTO Obligations.**    Subject to the related Purchase Price adjustment mechanism in Section 4.6.6, the Purchasers shall assume, and the Sellers shall have no obligation for, Assumed PTO Obligations

with respect to each Hired Current Employee. The Sellers shall retain Liability for PTO Obligations owed to each Current Employee or former employee who is not a Hired Current Employee.

**3.14.**   **Workers' Compensation.**  Seller's will retain responsibility for all Liabilities, for worker's compensation benefits related to injuries or illnesses to the extent incurred by U.S. Hired Current Employees prior to the Closing Date. Purchaser's will have responsibility for all Liabilities, for worker's compensation benefits related to injuries or illnesses to the extent incurred by U.S. Hired Current Employees following the Closing Date.

# 4.   PURCHASE PRICE:

**4.1.**   **Preliminary Purchase Price.**  Subject to the terms and conditions of this Agreement, in consideration of the Sale, the aggregate purchase price for the Acquired Assets, Assumed Liabilities and Sale Securities shall be the amount of ~~Fifty~~Seventy-Five Million ~~Six Hundred Thousand~~ U.S. Dollars (U.S. $~~55,600,000.00~~75,000,000.00) ("**Preliminary Purchase Price**") subject to the escrow provisions set forth below in Sections 4.2 and 4.3 and to the adjustments which may occur by operation of the other provisions of this Section 4 below.  The final aggregate, adjusted purchase price, as so determined, is referred to herein as the "**Purchase Price**".

**4.2.**   **Deposit Amount.**  Upon execution of this Agreement by the Parties and the issuance  by the Bankruptcy Court of the Bidding Procedures Order, Purchaser will deliver to the Escrow Agent pursuant to the terms of the Deposit Escrow Agreement ONE MILLION U.S. Dollars (U.S $1,000,000) in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), to be held by the Escrow Agent in an interest bearing account of the Escrow Agent to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures:

**4.2.1.**   **Deposit Instructions.** The Escrow Agent shall deposit the Deposit Amount in an account of the Escrow Agent (and such amount shall be applied towards the payment of the Purchase Price);

**4.2.2.**   **Violation of Agreement.**  Upon any breach by a Purchaser of this Agreement which results in termination by Sellers of this Agreement pursuant to Section 9.1.3.B, the Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Delphi on behalf of the Sellers in the Deposit Escrow Agreement, to be retained by Sellers; and

**4.2.3.**   **Other Reason.**  Upon termination of this Agreement for any other reason, Delphi (on behalf of the Sellers) and Umicore (on behalf of the Purchasers) shall jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Umicore on behalf of the Purchasers in the Deposit Escrow Agreement, to be retained by Purchasers.

**4.3.**   **Escrow Amount.**  At the Closing, and in accordance with the terms of a mutually acceptable escrow agreement (the "**Closing Escrow Agreement**"), Purchasers shall deliver to the Escrow Agent Seven Million U.S. Dollars (U.S. $7,000,000) of the Purchase Price in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Escrow Amount**"), to be held by the Escrow Agent in an interest-bearing account of the Escrow Agent which shall serve as an escrow in case: (i) the Preliminary Purchase Price is reduced pursuant to adjustments following the Closing by the operation of Sections 4.6 and 4.7 below; or (ii) there are indemnification claims pursuant to Article

12 below, and which shall be released in accordance with the terms of the Closing Escrow Agreement, including:

      **A.**      Up to Five Million U.S. Dollars (U.S. $5,000,000) shall be released following the conclusion of the post-Closing Purchase Price adjustment process established by the other provisions of this Article 4 below;

      **B.**      On each of the six (6) and twelve (12) month anniversaries of the Closing, U.S. $750,000, net of any amounts to be held in reserve for pending indemnification claims as to which Sellers have received notice from Purchasers prior to such anniversary date, shall be released to Delphi on behalf of the Non-Filing Affiliates; and

      **C.**      On the eighteen (18) month anniversary of the Closing, all amounts remaining in escrow, net of any amounts held in reserve for pending indemnification Claims as to which Sellers have received notice from Purchasers prior to such anniversary date, shall be released to Delphi on behalf of the Non-Filing Affiliates.

In the event of a conflict between this Section 4.3 and the Closing Escrow Agreement, the terms of the Closing Escrow Agreement shall govern.

    **4.4.**    **Delivery of Purchase Price.**  At Closing, and subject to the other terms and conditions of this Agreement: (i) Purchasers shall pay to Sellers an aggregate amount equal to the Preliminary Purchase Price as adjusted pursuant to Section 4.6 below, *less* the sum of: (a) the Deposit Amount; (b) the Escrow Amount; and (c) the amount of any Preliminary Purchase Price paid by the Purchaser of the Shanghai, China Acquired Assets to the Seller of the Shanghai, China Acquired Assets in local currency; and (ii) the Escrow Agent shall deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer in immediately available funds to Delphi on behalf of the Sellers to an account designated by Delphi.

    **4.5.**    **Pre-Closing Review of PGM Inventory Levels.**  Not less than (6) Business Days prior to Closing, Sellers will produce and deliver to Purchasers a written statement, in form and substance reasonably satisfactory to the Purchasers (the "**Preliminary Closing PGM Inventory Statement**") summarizing the volumes by weight of the Owned PGMs (and also showing actual, verifiable cost for such Owned PGMs), Consigned PGMs and Restitution Commitments and PGM Leases and Borrowings, if any, as of end of the month preceding the expected Closing Date as updated to reflect any projections for the period until the anticipated Closing Date.  The Preliminary Closing PGM Inventory Statement shall form the basis for the calculation of the Closing adjustments set forth in Sections 4.6.2 through 4.6.4 below.

    **4.6.**    **Adjustments to Purchase Price.**  The Purchase Price shall be adjusted at Closing as set forth below in this Section 4.6.  The Parties agree that any adjustments to the Purchase Price required pursuant to this Article 4 shall not be double counted in connection with any other adjustment to the Purchase Price under any other provisions of this Agreement.

    **4.6.1.**    **Net Working Capital.**  Not less than six (6) Business Days prior to Closing, Sellers shall deliver to the Purchasers an estimate, calculated in accordance with the Net Working Capital Methodology and otherwise reasonably satisfactory to the Purchasers, of the Business' Net Working Capital as of the Closing (the "**Preliminary Closing Date Net Working Capital Calculation**") together with appropriate supporting documentation (e.g., a schedule of Trade Payables and Trade Receivables, etc.) necessary to support such calculation.  At the Closing, if the Business' Net Working Capital as set forth in the Preliminary Closing Date Net Working Capital

Calculation is less than or greater than the Net Working Capital Target by more than U.S. $500,000, then the Purchase Price shall be adjusted (on a dollar-for-dollar basis): (i) upward by the amount that the Business' Net Working Capital (calculated in accordance with the Net Working Capital Methodology) exceeds the Net Working Capital Target; or (ii) downward by the amount that the Business' Net Working Capital (calculated in accordance with the Net Working Capital Methodology) is less than the Net Working Capital Target. For purposes of clarification, and not limitation, the adjustment based on Net Working Capital set forth in this Section 4.6.1 is in addition to, without duplication of any of the elements of, the adjustment for changes in Owned PGMs set forth in Section 4.6.2.

### 4.6.2.    **Adjustments for Changes in Owned PGMs:**

**4.6.2.1.**    If and to the extent that the volume of Owned PGMs shown on the Preliminary Closing PGM Inventory Statement (the "**Preliminary Closing Owned PGMs**") fall short of the volume of the Owned PGM Volume Targets with respect to any particular PGM (with respect to such PGM, an "**Owned PGM Shortfall**"), the Preliminary Purchase Price shall be decreased by the dollar amount necessary for Purchasers to acquire sufficient volumes of such PGM to satisfy such Owned PGM Shortfall at market prices as of the Closing Date (calculated using the PGM Pricing Methodology as of the Closing Date).

**4.6.2.2.**    If and to the extent the volume of the Preliminary Closing Owned PGMs exceeds the Owned PGM Volume Targets with respect to any particular PGM (with respect to such PGM, an "**Owned PGM Surplus**"), the Purchase Price shall be increased by the value of the Owned PGM Surplus (calculated using Delphi's actual cost verified by customer commitments for Owned PGM Surplus).

**4.6.2.3.**    In the event of an Owned PGM Shortfall with respect to one or more PGMS as well as an Owned PGM Surplus with respect to one or more PGMs, the Purchase Price shall be adjusted, upward or downward by the net amount of such Owned PGM Surplus and Owned PGM Shortfall adjustments.

**4.6.2.4.**    **(a)**    Once the quantitative adjustments have been completed under Sections 4.6.2.1 through 4.6.2.3 above, then if and to the extent that the actual costs verified by customer commitments reflected on the Preliminary Closing PGM Inventory Statement with respect to any particular Owned PGM Target exceeds the PGM Target Value for such PGM, the Purchase Price shall be increased by the differential.  If, on the other hand, the actual costs verified by customer commitments reflected in the Preliminary Closing PGM Inventory Statement in respect of any particular Owned PGM Target is less than the Owned PGM Target Value for such Owned PGM, the Purchase Price shall be reduced by the differential. Adjustments shall be made pursuant to this Section 4.6.2.4 only to the extent the actual costs verified by customer commitments referenced in the preceding two sentences can be reconciled to Contracts with customers of the Business.

**(b)**    For any Owned PGM not covered by the proceeding paragraph, then if and to the extent that the verified actual costs reflected on the Preliminary Closing PGM Inventory Statement with respect to these Owned PGM exceeds the PGM Target Value for such Owned PGM, the Purchase Price shall be increased by the differential.  If, on the other hand, the verified actual costs reflected in the Preliminary Closing PGM Inventory

Statement in respect to these Owned PGM is less than the Owned PGM Target Value for such Owned PGM, the Purchase Price shall be reduced by the differential.

The Parties agree that any adjustment to the Purchase Price required as a result of a change in volume of the Owned PGMs pursuant to the terms of this Section 4.6.2 shall not be double counted in connection with any adjustment to the Purchase Price under any other provision of this Agreement (e.g., under Section 4.6.1 in connection with Net Working Capital (calculated in accordance with the Net Working Capital Methodology) to the extent of any change in Inventory that resulted from a change in PGM Inventory).

Notwithstanding the foregoing, no adjustment shall be made to the Purchase Price pursuant to this Section 4.6.2 unless the adjustment (upwards or downwards) called for by this Section 4.6.2 is at least U.S. $250,000 (and, if so, any adjustment shall be back to dollar one).

**4.6.3.    Adjustment Related to Unfulfilled Restitution Commitments.**  If and to the extent the calculation of the Business' Consigned PGMs and Restitution Commitments set forth on the Preliminary Closing PGM Inventory Statement (the "**Preliminary Restitution Commitments**") shows that as of the Closing Date there is a negative discrepancy between volumes of Consigned PGMs, on the one hand, and Restitution Commitments of the Business, on the other (e.g., the level of Consigned PGMs of the Business as of the Closing Date are insufficient to satisfy the outstanding Restitution Commitments as of such date), the Purchase Price shall be decreased by the amount necessary for Purchasers to acquire sufficient volumes of PGMs as needed to satisfy such uncovered Restitution Commitments at market prices as of the Closing Date (calculated using the PGM Pricing Methodology as of the Closing Date).

**4.6.4.    Adjustments for PGM Leases or Borrowings.**  If and to the extent that the PGM Leases or Borrowings calculation set forth on the Preliminary Closing PGM Inventory Statement indicates that the Business is subject to any PGM Leases or Borrowings as of the Closing Date, the PGM Leases or Borrowings shall be treated as Debt and the Purchase Price shall be reduced on a dollar-for-dollar basis by the amount of such PGM Leases or Borrowings at the Closing.  For purposes of this Agreement: (i) the term "**PGM Leases or Borrowings**" means the total amount of all PGM Leases or Borrowings where a Seller has acted as lessee or borrower including any termination or similar type fees, costs and expenses, measured in U.S. Dollars (as opposed to weight); and (ii) the monetary amount of any PGM Lease or Borrowing shown on such statement shall be calculated using the PGM Pricing Methodology as of the Closing Date.

**4.6.5.    Adjustments for Non-U.S. Pension and Benefit Liabilities.**  Purchasers acknowledge and agree that, by operation of Law or by virtue of their acquisition of the Sale Securities, the Purchasers are required to assume certain Liabilities under certain non-U.S. Benefit Plans with the provisions of this Agreement (e.g., Sections 2.1.4 and 3.6).  Notwithstanding such assumption of those Liabilities, however, it is agreed that the Purchase Price shall be adjusted downward at the Closing to reflect such assumption of Liabilities in accordance with the provisions of this Section 4.6.5.  However, since the exact amount of such non-U.S. pension and benefit Liabilities has not yet been determined, the mechanism set forth on Schedule 4.6.5 is designed to allow the Parties to reach such an agreement and settle on an appropriate Purchase Price adjustment with respect to such matters.

**4.6.6.    Adjustments for Assumed PTO Obligations.**  No later than six (6) Business Days prior to the anticipated Closing, the Sellers shall deliver a calculation of the Assumed PTO Obligations calculated in accordance with the Assumed PTO Obligation Calculation Methodology

set forth in Schedule 4.6.6. The Purchase Price shall be adjusted downwards by an amount equal to the Assumed PTO Obligations.

**4.6.7.   Adjustments for Sale Company.** The Purchase Price shall be adjusted upward or downward, as appropriate, at the Closing by an amount equal to the Sale Company Retained Liability Amount minus the amount of the Sale Company's cash and cash equivalents as of the Closing. For purposes of clarification, if the foregoing calculation results in a: (i) negative number, then the adjustment will be upwards (e.g., if the Sale Company's cash and cash equivalents exceed the Sale Company Retained Liability Amount); and (ii) positive number, then the adjustment will be downwards (e.g., if the Sale Company Retained Liability Amount exceeds the Sales Company's cash and cash equivalents). For purposes of this Agreement, the "**Sale Company Retained Liability Amount**" means that amount, which the parties agree in good faith approximates the dollar value of all Liabilities of the Sale Company that would be "Retained Liabilities" under this Agreement if the sale of the Sale Company was structured as an asset sale rather than a sale of the Sale Securities. The parties shall work together to agree upon the Sale Company Retained Liability Amount (including any portion of the Sale Company Retained Liability Amount attributable to Taxes that are accrued on the balance sheet of the Company but not yet due and payable net of any current Value Added Tax assets which amount shall be specified in the agreement between the parties with respect to the Sale Company Retained Liability Amount (the "**Sale Company Current Tax Amount**")) no later than six (6) Business Days prior to the anticipated Closing Date. Notwithstanding the foregoing, in no event shall the Sale Company Retained Liability Amount include any amounts that were the subject of an adjustment pursuant to Section 4.6.5. In addition, the amount of any deferred tax liabilities included in the Sale Company Retained Liability Amount shall be offset by the amount of any deferred tax assets of the Sale Company. For purposes of clarification, and not limitation, the Sellers make no representation or warranty regarding the size of the deferred tax asset of the Sale Company as of December 31, 2006.

**4.6.8.   Capital Leases.** The Purchase Price shall be adjusted downward (other than for Capital Leases in which a Seller is the lessor) on a dollar-for-dollar by the total amount of the Liability under any Capital Leases assumed by the Purchasers as of the Closing.

**4.6.9.   Adjustment for U.S. Employee-Related Credit.** No later than two (2) Business Days prior to Closing, the Parties will agree as to the estimated amount of a downward reduction in the Preliminary Purchase Price ("**U.S. Employee-Related Credit**"), calculated pursuant to Schedule 4.6.9 of this Agreement and using the list of salaried Current Employees of the U.S. Operations to whom Purchaser has made offers of employment that have been accepted to be effective on the Closing Date (to be provided to Sellers by Purchaser under Section 3.1 of this Agreement) or that are otherwise reasonably expected to become a Hired Current Employee; subject to reasonable confirmation by Sellers following Closing that each such employee has become a Hired Current Employee. The Purchase Price shall be adjusted downward at the Closing in the aggregate amount of the estimated U.S. Employee-Related Credit. Following Closing, Purchaser will provide Seller with reasonable evidence confirming that each employee upon whose hiring the U.S. Employee-Related Credit was based became a Hired Current Employee. The Closing Date Statement delivered pursuant to Section 4.7.1.2 shall include a calculation of the actual U.S. Employee-Related Credit and such calculation shall be included for all purposes in determining the adjustment, if any, that should be made to the Purchase Price (as adjusted at Closing) as a result of the Closing Date Statement. Any credit calculated under this Section 4.6.9 shall be allocated directly to a reduction in the purchase price allocated to the Filing Affiliates (other than DASHI) for purposes of Section 4.8 and Schedule 4.8.1.

**4.7.** **Post-Closing Purchase Price Adjustments.**    The Purchase Price shall be adjusted following the Closing pursuant to, and in accordance with, the procedures set forth in this Section 4.7.

**4.7.1.** **General:**

**4.7.1.1.**    Immediately following the Closing, Sellers and Purchasers will cooperate to conduct a joint physical inventory of the PGM Inventory (including substrates) and the volumes by weight of Owned PGMs, Consigned PGMs, Restitution Commitments and PGM Leases or Borrowings (the "**Closing PGM Inventory**") as of the Closing Date. Based on such physical review, the Sellers and Purchasers shall produce a report summarizing the results of such physical PGM Inventory with the details of the volumes by weight of the Owned PGMs, Consigned PGMs and Restitution Commitments and PGM Leases and Borrowings, if any, as of the Closing PGM Inventory date (the "**PGM Physical Inventory Report**"). Such physical inventory shall be conducted, and such PGM Physical Inventory Report shall be prepared, using the same procedures and appropriate methodologies as shown on Schedule 4.7.1.1 (including with respect to the timing set forth therein) provided that the Parties agree Schedule 4.7.1.1 is substantially complete but remains subject to further discussion and mutual refinement by the Parties. The Sellers and Purchasers shall mutually cooperate pre-Closing to prepare for the immediate post-Closing inventory. The PGM Physical Inventory Report shall form the basis for the calculation of the post-Closing adjustments 4.7.1.2 below. For clarity, it is understood that in respect of any physical inventory of the PGM Inventory called for by the terms of this Article 4 it shall not include a physical inventory of non-PGM Inventory (other than substrates) (e.g., fuel, spare parts, other consumables)

**4.7.1.2.**    Promptly after the Closing Date (but in any event no later than ninety (90) days after the Closing Date) Purchasers will prepare and deliver to Sellers a draft written statement as of the Closing Date for the Business on a combined, stand-alone basis showing the: (v) levels of Net Working Capital calculated in accordance with the Net Working Capital Methodology; (w) in respect of the PGM Inventory, of Owned PGMs (including Owned PGM Volume Targets and actual costs verified by customer commitments for all Owned PGMs), Consigned PGMs, Restitution Commitments and PGM Leases or Borrowings of the Business as of the Closing Date; (x) the actual Assumed PTO Obligations; (y) the Sale Company Retained Liability Amount as of the Closing Date; and (z) the total amount of the Liabilities assumed by Purchasers under the Capital Leases as of the Closing Date (the "**Closing Date Statement**") and the adjustment, if any, that should be made to the Purchase Price (as adjusted at the Closing) as a result of the Closing Date Statement. Such statement shall be prepared on a consistent basis with Schedules 4.6.1, 4.6.6 and 4.7.1.1. The Closing Date Statement shall be audited/reviewed as appropriate by the Auditor of the Closing Date Statement pursuant to a scope of limited audit or review and fee estimate which shall be mutually agreeable to the Parties prior to the commencement of such audit/review. The Parties shall cooperate in requesting that the Auditor of the Closing Date Statement complete such audit as soon as practicable following receipt of Closing Date Statement with a target completion date of not more than forty-five (45) days thereafter. The expense of this audit/review shall be shared equally by the Parties. It is the intent of the Parties under this Section 4.7 that based on the information contained in the Closing Date Statement, the Parties shall derive the final Closing Date figures for Net Working Capital (calculated in accordance with the Net Working Capital Methodology), Assumed PTO Obligations and the volume of Owned PGMs (and the actual costs verified by customer commitments), Consigned PGMs,

Restitution Commitments and PGM Leases and Borrowing, which figures and volumes may trigger post-Closing adjustments to the Purchase Price under the terms of Section 4.8 below. The Purchasers shall grant Sellers and the auditors of the aforementioned items all necessary assistance and access to all relevant documents and Persons in order to audit and review the preparation of the Closing Date Statement.

   **4.7.2.    Objections by Sellers; Consequence of No Objections.** Within fifteen (15) days after receipt of the Closing Date Statement Sellers may notify Purchasers of an objection. Any objection by Sellers shall only be deemed effective if and to the extent that the objection specifies the item against which the objection is raised. If Sellers do not object within such fifteen (15) day period, the Closing Date Statement shall be deemed to be final and binding as against the Parties and accordingly shall constitute the "**Final Closing Date Statement**" for purposes of the post-Closing adjustments to be made to the Purchase Price under this Section 4.7.

   **4.7.3.    Negotiated Settlement of Objections.** If Sellers do object, Purchasers and Sellers shall meet or otherwise attempt in good faith to agree on the Closing Date Statement. If the Parties do so agree, then the Closing Date Statement shall be deemed final and binding on the parties and accordingly shall constitute the "**Final Closing Date Statement**" for purposes of the post-Closing adjustments to be made to the Purchase Price under the terms of this Sections 4.7.

   **4.7.4.    Arbitrated Settlement of Objections.** If Sellers and Purchasers cannot agree on the Closing Date Statement within fifteen (15) days after Sellers have objected against items therein, the points in dispute shall be referred to an independent auditor to be mutually agreed by the Parties prior to the Closing Date to act as an independent arbitrator (the "**Arbitrator**"). The Arbitrator shall be a nationally or regionally recognized firm that is neither (i) then providing financial audit services to any Purchaser or Seller nor (ii) Deloitte and Touche. The Arbitrator shall give Sellers and Purchasers adequate opportunity to present their arguments in writing and at a hearing or hearings (as the Arbitrator may decide) to be held in the presence of the Parties and their advisers (such arguments to be presented, and such hearing or hearings to be held, within thirty (30) days of the Arbitrator's appointment).

   If and to the extent that the Arbitrator determines that objections by Sellers that could not be resolved by agreement between Purchasers and Sellers are justified, the Arbitrator shall amend the Closing Date Statement to assure that the Closing Date Statement has been prepared in a manner consistent with the provisions of this Article 4; provided, however, that the Arbitrator shall be bound by those items upon which Sellers and Purchasers have agreed, and further provided that with respect to each particular item the Arbitrator shall not exceed the range of dispute between Sellers and Purchasers. The Arbitrator shall give a written decision addressing all such disputed issues. The Closing Date Statement reflecting any adjustments made as a result of the Arbitrator's decisions shall be deemed final and binding on the Parties and, accordingly, shall constitute the "**Final Closing Date Statement**" for purposes of the post-Closing adjustments to the Purchase Price to be made under the terms of this Section 4.7. The Arbitrator shall render its decision no later than sixty (60) days from the date of its appointment. The costs associated with the Arbitrator shall be shared equally by the Parties.

   **4.7.5.    Payment Mechanics for Post-Closing Purchase Price Adjustments Generally.** Within three (3) Business Days following the date on which the Final Closing Date Statement is settled in accordance with the preceding provisions of this Section 4.7, final adjustments to the Purchase Price (as adjusted at Closing) and any further payments shall be made as follows.

**A.**    To the extent the aggregate or net amount of any such adjustments increases the Preliminary Purchase Price paid to Sellers at the Closing: (i) the Closing Escrow Agreement shall provide that the Escrow Agent shall release $5,000,000 of the Escrow Amount; plus (ii) Purchasers shall pay any additional amount needed to cover the balance of such increase in Purchase Price; in each case to Delphi on behalf of all the Sellers by wire transfer in immediately available funds (in U.S. Dollars) to the account designated by Delphi.

**B.**    To the extent any such adjustments decrease the Preliminary Purchase Price paid to Sellers at the Closing, the Closing Escrow Agreement shall provide that the Escrow Agent shall promptly pay up to $5,000,000 of the amount of such decrease to Umicore by wire transfer in immediately available funds to the account designated by Umicore on behalf of the Purchasers; provided, however, that, if the decrease is less than $5,000,000, an amount equal to the difference between $5,000,000 and the amount of such decrease shall be similarly disbursed to an account designated by Delphi on behalf of the Sellers.

**C.**    To the extent the aggregate amount of any such decrease in the Purchase Price as a result of the adjustments is greater than $5,000,000, Sellers shall promptly pay the amount by which such decrease exceeds $5,000,000 to Purchasers by wire transfer in immediately available funds in U.S. Dollars to the account designated by Umicore on behalf of the Purchasers.

**4.8.**    **Allocation of Purchase Price:**

**4.8.1.**    The Parties agree to allocate the Purchase Price (as adjusted pursuant to this Article 4) among the Purchased Assets and the agreements provided herein for transfer of the Business to Purchasers, for all purposes (including financial, accounting and tax purposes) (the "**Allocation**") in a manner consistent with the Allocation Schedule attached hereto as <u>Schedule 4.8.1</u>.

**4.8.2.**    Purchasers and Sellers shall each report the federal, state, local and foreign income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable Law.  Sellers shall provide Purchasers and Purchasers shall provide Sellers with a copy of any information required to be furnished either to the Secretary of the Treasury under Internal Revenue Code Section 1060, including Internal Revenue Service Form 8594 and any attachments or schedules relating thereto, or to any other relevant Tax authority in a non-U.S. jurisdiction.

**4.8.3.**    Any adjustments to the Purchase Price made in accordance with the foregoing provisions of this Section 4 shall be treated for income tax purposes as an adjustment to the Purchase Price and allocated in a mutually acceptable manner.

**5.**    **REPRESENTATIONS AND WARRANTIES:**

**5.1.**    **Warranties of Delphi and each Seller.**  (i) Each Seller that is a Non-Filing Affiliate, severally represents with respect solely to such Seller; and (ii) Delphi and each Seller that is a Filing Affiliate, jointly and severally represent with respect to each such Filing Affiliate as well as the Sale Company, to Purchasers as follows:

**5.1.1.** **Organization and Good Standing.** Each Seller and the Sale Company is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization, and has all requisite corporate or other organizational power and, subject to any required Bankruptcy Court approval, authority to own, lease and operate its properties and assets and to carry on the Business as presently conducted, and is in good standing in all jurisdictions where it owns or leases real property or maintains stocks of business inventories relating to the Business or otherwise conducts the Business, except where the failure so to qualify or to be so licensed would not have a Material Adverse Effect.

**5.1.2.** **Corporate Power; Due Authorization.** Subject to Bankruptcy Court approval, each Seller has the corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements, including the Transfer Documents, to which such Seller is a party, and to perform its obligations hereunder and thereunder, and to consummate the transactions contemplated herein and therein.  Subject to Bankruptcy Court approval, the execution, delivery and performance of this Agreement and the Ancillary Agreements to which such Seller is a party, including the Transfer Documents by each of the Sellers party thereto and the consummation by each of the Sellers of the contemplated transactions have been duly authorized by all necessary action on the part of each Seller.  Subject to the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, this Agreement has been duly and validly executed and delivered by or on behalf of each of the Sellers and (assuming this Agreement constitutes a valid and binding obligation of Purchasers) constitutes a legal, valid and binding agreement of Sellers, enforceable against Sellers in accordance with its terms, and the Ancillary Agreements, including the Transfer Documents will be, when executed and delivered by the applicable Sellers who are parties thereto, the legal, valid and binding obligations of the Sellers parties thereto, enforceable against the Sellers parties thereto in accordance with their respective terms, in each case subject to applicable bankruptcy, reorganization, insolvency, moratorium and other Laws affecting creditors' rights generally from time to time in effect and to general equitable principles.

**5.1.3.** **No Violations.** Except as set forth on Schedule 5.1.3, no consent, approval, authorization of, declaration, filing or registration with any Governmental Entity is required to be made or obtained by any of the Sellers in connection with the execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements, except for:  (i) consents, approvals, authorizations of, declarations or filings with, the Bankruptcy Court; and (ii) the filing of required notifications with Antitrust Authorities under applicable foreign Antitrust Laws and the receipt of any necessary approvals thereunder.  The items referred to in clauses (i) and (ii) of this Section 5.1.3 are hereinafter referred to as the "**Governmental Requirements**."

**5.1.4.** **Sufficiency of Acquired Assets.** The Acquired Assets and the assets of the Sale Company comprise all of the assets Used in Connection with the Business, except for the Excluded Assets.

**5.1.5.** **Personal Property; Condition of Personal Property:**

**A.** **Title to Personal Property**. Except for the Personal Property leases and other Personal Property referred to in Schedule 5.1.5.A, each relevant Asset Seller has good, valid and marketable title to the Personal Property and Inventory included in the Acquired Assets, and the Sale Company has good, valid and marketable title to the

Personal Property and Inventory Used in Connection with the Business by the Sale Company, in each case free and clear of any Liens, except Permitted Liens.

**B.** **Condition of Personal Property.**  The Personal Property included in the Acquired Assets of each Asset Seller and of the Sale Company are in good condition or repair reasonably suitable and adequate for its present and intended use, reasonable wear and tear and routine maintenance excepted.

**C.** **Inventory.**  The Inventory included in the Acquired Assets or of the Sale Company will, as of the Closing, be located at the Listed Real Property, or at such other locations as are identified on Schedule 5.1.5.C and will be fit for the purpose for which it is ordinarily acquired, and, in the case of finished goods Inventory, merchantable in the Ordinary Course of Business in all material respects.

**D.** **Machinery, Equipment and Tools.**  Schedule 5.1.5.D sets forth a true and correct list of all machinery, equipment and capitalized tools with an acquisition value greater than U.S. $25,000, which are included in the Acquired Assets or owned by the Sale Company, or located at a Carved-Out Manufacturing Location, and in any case, Used in Connection with the Business.

**5.1.6.** **Litigation.** (i) Except for Claims raised in connection with the pendency of the Bankruptcy Cases and any Claims referred to in Schedule 5.1.6, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any Governmental Entity, or before any arbitrator) pending or, to any of the Sellers' Knowledge, threatened against or affecting any Seller or the Sale Company, the outcome of which would have, individually or in the aggregate, a Material Adverse Effect, nor is there any Order outstanding against any Seller or the Sale Company that would have a Material Adverse Effect, nor is there any suit, action, proceeding or investigation pending or, to any Sellers' Knowledge, threatened that challenges or seeks to enjoin, alter or delay the Sale; and (ii) assuming the entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, no Purchaser (or any of its respective Affiliates) shall be subject to Claims, litigation or Liabilities in connection with the consummation of the sale of the Acquired Assets and Sale Securities.  For purposes of clarification, the phrase "consummation of the Sale of the Acquired Asset and Sale Securities" relates to the transactions contemplated by this Agreement and not to the Purchaser's post-closing operation of the Business.

**5.1.7.** **Intellectual Property Assets:**

**A.** Schedule 5.1.7.A.1 sets forth a true and complete list, including a complete identification of each patent, trademark registration, copyright registration and application therefor included in the Owned Intellectual Property. Schedule 5.1.7.A.2 sets forth a true and complete list of all Licensed Intellectual Property; in each case included in the Acquired Assets or, in respect of the Sale Company, Used in Connection with Business. Schedule 5.1.7.A.3 sets forth a true and complete list, in all material respects, of all Software that is part of the Purchased Intellectual Property included in the Acquired Assets or in respect of the Sale Company, Used in Connection with the Business. None of such Software contains any open source or copy left code. The Purchased Intellectual Property constitutes all of the intellectual property Used in Connection with the Business as currently conducted, except for the Excluded Intellectual Property. As of the date of this Agreement, there are no impediments to the ability of any Seller to maintain in effect or renew their respective rights, in all material respects, in and to the Purchased Intellectual

Property. Sellers have taken commercially reasonable efforts to protect and maintain the confidentiality of the Trade Secrets and Know-How included in the Purchased Intellectual Property. There are no impediments to the ability of any Seller under applicable Law to grant to Purchasers all material rights to the Purchased Intellectual Property that are contemplated in this Agreement. Upon consummation of the transactions contemplated by this Agreement, Purchasers shall have the same rights in and to the Purchased Intellectual Property that Sellers had prior to the Closing.

**B.**      As of the date of this Agreement, Sellers are conducting the Business in a manner that does not, and the Products and services of the Business do not, infringe, misappropriate or violate the Intellectual Property right of another Person, which violation would reasonably be expected to result in a material Claim or loss.

**C.**      No Seller has granted any material license, sub-license or other permission to use the Owned Intellectual Property or the Licensed Intellectual Property to any third party, except as set forth on Schedule 5.1.7.C.

**D.**      Except as referred to in Schedule 5.1.7.D, Sellers have no Knowledge of any material Claim pending or threatened by any third party against any Seller or its Affiliates of Intellectual Property infringement or misappropriation resulting from the operation of the Business or the ownership or use by Sellers of the Purchased Intellectual Property during the two (2) years prior to the date on which the Bidding Procedures Order is issued by the Bankruptcy Court.

**E.**      Subject to Section 8.15, all Owned Intellectual Property is owned solely and exclusively by or on behalf of the applicable Asset Seller or the Sale Company, as the case may be, free and clear of any Liens thereon, other than Permitted Liens.

**F.**      Except as set forth in Schedule 5.1.7.F to the Knowledge of the Sellers, no third party is infringing, misappropriating, or violating any of the Purchased Intellectual Property.

**G.**      Neither the execution, delivery, or performance of this Agreement (or any of the Ancillary Agreements) nor the consummation of any of the transactions contemplated by this Agreement (or any of the Ancillary Agreements) will result in, or give any other Person the right or option to cause or declare, an impairment to the Purchased Intellectual Property or cause the release or distribution of any Purchased Intellectual Property to any third party.

**5.1.8.    Insurance.**  Schedule 5.1.8 contains a complete and correct list, in all material respects, of all material policies of insurance covering any of the assets primarily used in or relating to the Business, other than Excluded Assets, and any Seller Benefit Plans related to Current Employees indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder. All such policies are outstanding and in full force and effect.

**5.1.9.    Compliance with Other Instruments and Laws; Permits.**  Except as provided in Schedule 5.1.9, the Business is in compliance with all Laws applicable to the conduct of the Business and all Permits, except where the failure to be in compliance would not have a Material Adverse Effect. All Permits that are necessary for the conduct of the Business and the ownership

and operation of the Acquired Assets or the assets of the Sale Company have been duly obtained, and, except as indicated on Schedule 5.1.9, are in full force and effect, and there are no proceedings pending or, to Sellers' Knowledge, threatened, which may result in the revocation, cancellation or suspension, or any materially adverse modification, of any such Permit, except in each case as would not, individually or in the aggregate, result in a Material Adverse Effect.  The execution, delivery and performance of, and compliance with, this Agreement and the Ancillary Agreements by Sellers will not result in any such violation or be in conflict with or constitute a default under any Permit.

**5.1.10.  Brokers.** Sellers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which any Purchaser would be liable.

**5.1.11.  Consents and Approvals.**  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, assuming that the Governmental Requirements will be satisfied, made or obtained and will remain in full force and effect, and upon receipt of the consents, approvals and authorizations listed in Schedule 5.1.11, neither the execution, delivery or performance of this Agreement and the Ancillary Agreements by the Sellers parties thereto, nor the consummation by any Seller of the Sale, nor compliance by any Seller with any of the provisions hereof and of the Ancillary Agreements, will:  (i) result in any breach of any provisions of the articles of incorporation or bylaws or similar organizational documents of any Seller or the Sale Company; (ii) result in a violation, or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, amendment, vesting, payment, exercise, acceleration, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, loan or credit agreement, license, permit, contract, lease, agreement, plan or other instrument, commitment or obligation to which any Seller or the Sale Company is a party or by which such entity's properties or assets may be bound or affected; (iii) violate any order, writ, governmental authorization, injunction, decree, statute, rule or regulation applicable to any Seller or the Sale Company or to any properties or assets of any such entity; or (iv) result in the creation or imposition of any Lien other than Permitted Encumbrances on any asset of a Seller or the Sale Company, except in the case of clauses (ii), (iii) and (iv) above, for violations, breaches, defaults, terminations, cancellations, accelerations, creations, impositions, suspensions or revocations that are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

**5.1.12.  ~~January~~July (6+6) Projections.**  ~~The January~~ As set forth on Schedule 5.1.12, the July Projections represent the reasonable, good faith estimates of the Seller.  To the Knowledge of the Seller, the ~~January~~July Projections are not materially inaccurate (e.g., meaning inaccurate with respect to projections of contribution margin by a factor greater than Three Million Dollars (U.S. $3,000,000)).  The foregoing is not a guarantee of the ~~January~~July Projections.

**5.1.13.  Events Subsequent to ~~January~~July Projections.**  Except as set forth on Schedule ~~5.1.13~~5.1.12 since the date of the ~~January~~July Projections or in the ~~January~~July Projections: (i) there has not been any event which had or could reasonably be expected to have a Material Adverse Effect; and (ii) the Business has been conducted and carried on only in the Ordinary Course of Business.

### 5.1.14. Contracts:

A.       Schedule 5.1.14.A lists all Contracts included in the Acquired Assets or to which the Sale Company is a party and that are used in or related to the Business, and: (i) which involve payment or performance obligations that individually exceed $250,000; (ii) are material agreements to which Sellers or any of their Affiliates is a party or by which any of them or any of their properties is bound that primarily relate to the Business (including license and distribution agreements and arrangements among any such Sellers, Affiliates and intra-divisional facilities or third parties), other than Accounts Receivable; (iii) are PGM leases to which the Sale Company is a party or to which a Seller is a party and that are used in or related to the Business; and (iv) are joint venture, stockholder and partnership agreements to which the Sale Company is a party or to which a Seller is a party and that are Used in Connection with the Business; and (v) all Capital Leases (all Contracts required to be listed on Schedule 5.1.4.A hereafter referred to as the "**Listed Contracts**"). Sellers have delivered or made available to Purchasers either: (i) true, correct and complete copies in all material respects; or (ii) accurate written descriptions in all material respects, of the Listed Contracts.

B.       Each of the Listed Contracts is valid, binding and, subject to payment of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchasers of such Listed Contracts under the Sale Approval Order, if applicable, enforceable against the applicable Seller, to the extent set forth therein, and, to Sellers' Knowledge, the other parties thereto, in accordance with its terms, and is in full force and effect.  Except as set forth on Schedule 5.1.14.B , and other than with respect to monetary defaults by Sellers under Listed Contracts that are curable by payment by Sellers of all Cure Amounts, if applicable, the applicable Seller, and to Sellers' Knowledge each of the other parties thereto, has performed all obligations required to be performed by it to date under, and is not in default in respect of, any of such Listed Contracts, and there is not a default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Sellers to assume and assign such Material Contracts to Purchaser, if applicable) thereunder or claim of default and there has not occurred any event which, with the passage of time or the giving of notice or both, would constitute a default thereunder, whether on the part of the applicable Seller or any of its Affiliates, or to Sellers' Knowledge, on the part of any other party thereto; in each case, other than where the failure to perform or such default would not have a material impact in respect of the individual Listed Contract or where such failures to perform or defaults would not, in respect of all of such Listed Contracts, measured in the aggregate, reasonably be expected to have a Material Adverse Effect.  Except as set forth in Schedule 5.1.14.B, and other than with respect to monetary defaults by Sellers under Listed Contracts that are curable by payment by Sellers of all Cure Amounts payable to effectuate, pursuant to the Bankruptcy Code, the assumption and assignment to Purchasers of such Listed Contracts under the Sale Approval Order, if applicable, to Sellers' Knowledge, Sellers have received no claim or notice from any other party to any such Listed Contract that any Delphi Affiliate has breached any obligations to be performed by it thereunder, or is otherwise in default or delinquent in performance thereunder, where the consequence of such breach or default would be reasonably expected to have a Material Adverse Effect.  Schedule 5.1.14.B identifies all Post-Petition Contracts included within the Listed Contracts other than open purchase orders  or other Contracts that do not meet the requirements of Listed Contracts and which were entered into in the Ordinary Course of Business.  Except as set forth on Schedule 5.1.14.B, none of the Post-Petition Contracts included within the Listed

Contracts contains any provisions restricting its assumption and assignment to Purchasers pursuant to the terms of this Agreement.

**5.1.15. Regulatory Matters.** Except as set forth in Schedule 5.1.15, or to the extent not material to the operation of the Business or the manufacture or sale of the Product, no Seller is required to file or otherwise provide reports or data, other information or applications with respect to the Products with any federal, state or local governmental authorities with jurisdiction over the manufacture, use or sale of such Products, and no material regulatory approvals are required with respect to the manufacture or sale of such Products.

**5.1.16. Real Property:**

**A.     Generally.**  Schedule 5.1.16.A lists all Real Property included in the Acquired Assets or that is owned, used or occupied by the Sale Company, is Used in Connection with the Business and which will be transferred to or leased by a Purchaser pursuant to this Agreement or any Ancillary Agreements (the "**Listed Real Property**"). Except as set forth on Schedule 5.1.16.A, all buildings, structures and other improvements to the Listed Real Property (the "**Improvements**") are in good condition and repair, adequate to operate such facilities as currently used and in compliance with all applicable Laws.  Except for those matters to be covered by the Transition Services Agreement  in accordance with Section 7.2.6, all utilities and other similar systems serving the Listed Real Property and the Improvements are installed and operating and are sufficient to enable the Listed Real Property and the Improvements to be used and operated in the manner currently being used and operated.  The use of the Listed Real Property used for manufacturing activities as currently used is a permitted use by right in the applicable zoning classification and is not a nonconforming use or a conditioned use, and no variances are needed and none have been granted with respect to such Real Property.  There are currently in full force and effect duly issued certificates of occupancy permitting the Listed Real Property to be legally used and occupied as the same are currently constituted.  The Listed Real Property has rights of access to dedicated public highways.  To Sellers' Knowledge, no fact or condition exists that would prohibit or adversely affect the ordinary rights of access to and from the Listed Real Property from and to the existing highways and roads, and there is no pending or, to Sellers' Knowledge, threatened restriction or denial, governmental or otherwise, upon such ingress and egress.  No Seller has received notice of: (a) any claim of adverse possession or prescriptive rights involving or affecting any Listed Real Property; (b) any structure located on any Listed Real Property that encroaches on or over the boundaries of neighboring or adjacent properties; or (c) any structure of any other person or entity that encroaches on or over the boundaries of any Listed Real Property. None of the Listed Real Property is located in a flood plain, flood hazard area, wetland or lakeshore erosion area within the meaning of any Law or order.

**B.     Marketable Title.** Except as set forth on Schedule 5.1.16.B, the applicable Seller has good and marketable fee title or equivalent title rights in non-U.S. jurisdictions or leasehold title (as applicable) to all of the Listed Real Property free and clear of all Liens except for Permitted Encumbrances.  None of the Listed Real Property is subject to any material restrictions with respect to the transferability or divisibility thereof. At the Closing, Sellers will convey to Purchasers good and marketable fee title or leasehold title (or local equivalent, as applicable) to all of the Listed Real Property, free and clear of all Liens other than the Permitted Encumbrances.

46

**C.** **No Condemnation, Expropriation or Similar Action.** Neither the whole nor any portion of the Real Property included in the Acquired Assets is subject to any order to be sold and Sellers have received no notice, and have no Knowledge, that any of such Real Property is being condemned, expropriated or otherwise taken by any Governmental Entity with or without payment of compensation therefore and to the Sellers' Knowledge no such condemnation, expropriation or taking has been planned, scheduled or proposed.

**5.1.17.** **Tax Matters:**

**A.** The Sellers and the Sale Company have: (i) duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all Tax Returns required to be filed with respect to the Business and, when filed, each such Tax Return was true, correct and complete; (ii) timely paid all Taxes shown thereon as due and owing; and (iii) timely paid all other Taxes due with respect to the Business except where the failure to pay any such Taxes would not in the aggregate have a Material Adverse Effect on the financial condition of the Business.

**B.** The Sellers and the Sale Company have withheld all Taxes required to have been withheld in connection with amounts paid or owing to any employee working within the Business and have timely paid all withholding and other employment and payroll Taxes to the appropriate federal, state, local and foreign authorities or governmental agencies, except where the failure to file or to pay such taxes would not in the aggregate have a Material Adverse Effect.

**C.** Neither any Seller nor the Sale Company is a party to any Tax allocation, Tax sharing agreement or Tax indemnity arrangement, except as provided in this Agreement, under which a Purchaser could be subject to Tax or other Liability after the Closing, and the Sale Company is not liable for the Taxes of any other person or entity.

**D.** Except as disclosed in Schedule 5.1.17.D, no claim has ever been made by an authority in a jurisdiction in which the Sale Company does not file Tax Returns that it is or may be subject to taxation by that jurisdiction or authority with respect to, in connection with, associated with or related to, the Sale Company; no agreements or waivers are outstanding extending the statutory period of limitations applicable to any Tax Return of the Sale Company; and the Sale Company has not received any: (i) notice of underpayment of Taxes or other deficiency that has not been paid with respect to, in connection with, associated with or related to, the Sale Company; or (ii) any objection to any Tax Return, with respect to, in connection with, associated with or related to, the Sale Company that would have a Material Adverse Effect on the Business.  Except as disclosed in Schedule 5.1.17.D, all deficiencies asserted or assessments made as a result of any examinations with respect to, in connection with, associated with or related to, the Sale Company have been fully paid or are fully reflected as a Liability in the financial statements of the Sale Company or the Sellers.

**E.** The Sale Company is not a party to any agreement, contract arrangement or plan that has resulted or would result, separately or in the aggregate, in the payment of any excess parachute payments within the meaning of IRC Code Section 280G.

**F.**     There are no tax liens imposed upon the Sale Company or any of the Purchased Assets, except in the case of Filing Affiliate Taxes the payment of which may have been prohibited by the Bankruptcy Code.

**G.**     No transaction contemplated by this Agreement is subject to withholding tax under Section 1445 of the Code.  For purposes of disclosure only, to the Sellers' Knowledge Schedule 5.1.17.G, sets forth all sales Taxes, use Taxes, value added Taxes, stamp Taxes, excise Taxes, real estate transfer Taxes, withholding Taxes or other similar Taxes that might be imposed on the transfer of the Purchased Assets pursuant to this Agreement.

**H.**     None of the Purchased Assets is properly treated as owned by persons other than the relevant Seller for income Tax purposes, and none of the Purchased Assets is "tax-exempt use property" within the meaning of Section 168(h) of the Code.

**I.**     Neither the Sale Company nor any Seller with respect to the Business has participated in or cooperated with an international boycott within the meaning of Section 999 of the Code, nor have they had operations that are or may be reportable under Section 999 of the Code.

**J.**     All transactions and dealings between or among the Sale Company and any persons or entities related directly or indirectly to the Sale Company have occurred on arm's-length terms, as if between and among unrelated parties.  The Sale Company has complied in all material respects with any and all tax-related requirements that the arm's-length nature of the terms of such transactions and dealings be documented.

**K.**     Except as attached to Schedule 5.1.17.K regarding the Sale Company, there are no Tax rulings, request for rulings or closing agreements to which any Seller or the Sale Company is a party which relates or is applicable to the Business, the Acquired Assets or the Sale Company that could affect the Purchasers' Liability for Taxes for any period after the Closing Date.  During the period which Sellers owned the Sale Company, no Seller nor the Sale Company has taken any action not in accordance with past practice and not in the Ordinary Course of Business that would have the effect of deferring any Tax Liability for the Sale Company from any Taxable Period ending on or before the Closing Date to any taxable period ending after the Closing Date.

**L.**     The Sale Company has not been either a "distributing corporation" or a "controlled corporation" in a distribution of stock intended to qualify for tax-free treatment under Section 355 of the Code: (i) in the two (2) years prior to the date of this Agreement; or (ii) which otherwise could constitute part of a "plan" or "series of related transactions" (within the meaning of Section 355(e) of the Code) in conjunction with the transactions contemplated by this Agreement.

**M.**     The Sale Company is not a "passive foreign investment company" within the meaning of Section 1297(a) of the Code.

### 5.1.18.  Capitalization of the Sale Company and Related Matters:

**A.**     The Sale Securities are owned by DASHI as set forth on Schedule 5.1.18 to this Agreement.  The Sale Securities are duly authorized, validly issued, fully paid and

non-assessable (in those jurisdictions in which such concepts are applicable) and are not subject to any preemptive rights.  There are no voting trust agreements or other contracts, agreements or arrangements, to which DASHI is a party, restricting voting or dividend rights or transferability with respect to the Sale Securities.

**B.**       There is no outstanding security, right, subscription, warrant, option, privilege or other agreement, commitment or contract, preemptive, contractual or otherwise that gives the right to: (i) purchase or otherwise receive or be issued any share capital of the Sale Company or any security of any kind convertible into or exchangeable or exercisable for any share capital of the Sale Company; or (ii) receive or exercise any benefits or rights similar to any rights enjoyed by or accruing to a holder of share capital of the Sale Company, including any rights to participate in the equity or income of the Sale Company, or to participate in or direct the election of any directors of the Sale Company or the manner in which any share capital of the Sale Company are voted.

**C.**       DASHI owns and has good and valid title to the relevant Sale Securities free and clear of all Liens other than Permitted Liens of the type described in clause (iv) of the definition of Permitted Lien.

**5.1.19.  <u>Employee Issues</u>:**

**A.**       **<u>Current Employees</u>.**  <u>Schedule 5.1.19.A</u> contains a true and complete list of all Current Employees, and the information included on such Schedule as required by Section 3.1 above with respect to each such employee is true and complete.

**B.**       **<u>Sellers' Performance</u>.**  Each Seller (as applicable) has performed and discharged, in all material respects, its obligations with respect to all of the Current Employees and U.S. Corporate Employees, including working time, payment of wages and salaries, employer's contributions to any relevant social security, health, welfare and occupational pension scheme and payment of all other costs and expenses relating to the employment of such employees (any taxation, accrued bonus or other sums payable with respect to employment) or Retired Employees up to and including the Closing Date, except as otherwise set forth on <u>Schedule 5.1.19.B</u>.

**C.**       **<u>Benefit Plans</u>.**  <u>Schedule 5.1.19.C</u> lists all Benefit Plans in which the Current Employees or Retired Employees participate.  Except as set forth on <u>Schedule 5.1.19.C</u>, none of the Sellers nor the Sale Company maintains or has any obligation to contribute or provide benefits pursuant to an employee benefit plan applicable to any of the Current Employees, other than an obligation to contribute to a government required and/or collectively bargained program in accordance with applicable Laws or a Collective Bargaining Agreement.

(i)       **<u>Delivery of Documents</u>.**  Sellers have given access or delivered to Purchasers true, correct and complete copies of the following information with respect to each of the Benefit Plans: (a) the written plan document, if any, including all amendments thereto; (b) if there is not a written plan document, a written summary of the material terms and conditions of such Benefit Plan; and (c) if the Benefit Plan is funded through insurance or a trust, insurance or any third party funding vehicle, the insurance policy or contract of the trust or other funding agreement and the latest financial statements thereof.  Seller has provided

49

Purchasers with true and correct copies of any announcement to Current Employees regarding changes to any Benefit Plan not reflected in the applicable Benefit Plan documentation.

(ii)    **Compliance.**  Except as may be set forth in Schedule 5.1.19.C(ii): (a) with respect to each such Benefit Plan, all material reports and information relating to the Benefit Plan required to be filed with any Governmental Entity or provided to participants or their beneficiaries have been timely filed or disclosed and, when filed or disclosed, were true, correct and complete in all material respects, and all records related to such Benefit Plan have been accurately maintained in all material respects; (b) each Benefit Plan is and has been operated and maintained in compliance with all applicable Laws and in accordance with the provisions of such plan in all material respects; and (c) to the extent that any Benefit Plan provides for benefits which, under applicable Laws, must be reserved on the balance sheet of a Seller or the Sale Company or for which funds must be set aside or reserved, such reserves or funds for each such Benefit Plan meet the requirements under all applicable Laws or under the generally accepted accounting principles of the relevant jurisdiction.  No Benefit Plan is a multiemployer plan within the meaning of Section 4001(a)(3) of ERISA, nor has any Seller nor the Sale Company, or other element of the Business made, or been obligated to make, contributions to any multiemployer plan, either directly or as an ERISA Affiliate.

(iii)    **No Triggering of Obligations.**  Except for as set forth on Schedule 5.1.19.C(iii), the consummation of the transactions contemplated hereby will not: (a) entitle any current or former employee, director or independent contractor to severance pay, unemployment compensation or any other payment, except as expressly provided in this Agreement; or (b) accelerate the time of payment or vesting or increase the amount of compensation due to any current or former employee, director or independent contractor.

(iv)    **Funding of Benefit Plans.**  Except as set forth in Schedule 5.1.19.C(iv): (a) all contributions required to be made to a Benefit Plan by any plan document, any contractual undertaking or Laws, and all premiums due or payable with respect to any insurance policy funding any Benefit Plan and any required accumulated book reserves (e.g., pension accruals) have been made timely or paid in full; and (b) there exists no "accumulated funding deficiency" as defined in Section 302(a)(2) of ERISA or Section 412 of the Code, whether or not waived, and no "unfunded current liability" as determined under Section 412(l) of the Code exists with respect to any Benefit Plan.  Sellers have provided Purchasers with true and correct copies of the most recent actuarial valuations of any Benefit Plan.

**D.**    **Collective Bargaining Agreements.**    Schedule 5.1.19.D lists all Collective Bargaining Agreements.  Sellers have given access or delivered to Purchasers true, correct and complete copies of each of the Collective Bargaining Agreements.  Except for the Collective Bargaining Agreements, and except as disclosed on Schedule 5.1.19.D, neither any Seller nor any of its Affiliates has entered into any material written employment or consulting agreements that are obligations of the Business.  Sellers are in compliance in all material respects with each Collective Bargaining Agreement.

**E.    Grievance, Labor Negotiations.**   Except as disclosed on Schedule 5.1.19.E, or as reflected in the Collective Bargaining Agreements, with respect to the Business: (i) there is no labor strike, dispute, slowdown or stoppage relating to any of the employees actually pending or, to Sellers' Knowledge, threatened against or involving any Seller or the Sale Company relating to any of the Current Employees; (ii) neither any Seller nor the Sale Company has in the past three (3) years experienced any work stoppage or other labor difficulty or organizational activity relating to any of the Current Employees; (iii) no material labor grievance relating to any of the Current Employees is pending as of the date of Schedule 5.1.19.E; and (iv) neither any Seller nor any Affiliate has any labor negotiations in process with any labor union works council or other labor organization relating to the Business.   Except as set forth on Schedule 5.1.19.E, there are no pending material claims against any Seller or the Business whether under applicable Laws, employment agreements or otherwise asserted by any present employee or former employee of any other Person as relates to the Business, including claims on account of or for: (w) overtime pay, other than overtime pay for work done during the current payroll period; (x) wages or salary for any period other than the current payroll period; (y) any amount of vacation pay or pay in lieu of vacation or time off; or (z) any violation of any statute, ordinance or regulation relating to minimum wages or maximum hours at work, and, to Sellers' Knowledge, there are no such claims which have not been so asserted.

**F.    Works Councils and Other Staff Representative Bodies.**  Sellers have performed and discharged in all material respects its obligations with respect to Works Councils and other staff representatives, staff representative bodies and institutions representing all or part of the Current Employees.

**5.1.20.  Environmental Representations and Warranties.**  Except as otherwise set forth in Schedule 5.1.20, since January 1, 1999:

**A.**    At the time of Closing, the Listed Real Property and operations at such Listed Real Property are in material compliance with all applicable Environmental Laws.

**B.**    No Seller has received notice of, or has knowledge that any Environmental Claim relating to the Business or any Listed Real Property is pending or threatened.

**C.**    There have been no Releases of Hazardous Materials at, on, from or underneath any of the Listed Real Properties that would be reasonably likely to result in material Liability or require Remediation under Environmental Law.

**D.**    No aboveground or underground storage tanks have been located, stored, used, abandoned or disposed of on or under any Listed Real Property.

**E.**    Sellers have delivered or otherwise made available to the Purchasers copies of any Phase I or Phase II environmental assessments and any material reports, Governmental Entities' inspection reports, studies, analyses or test results or material correspondence with Governmental Entities in the possession or control of any Seller pertaining to Hazardous Materials in, at, on, beneath or adjacent to any Listed Real Property, or non-privileged reports regarding the Sellers' compliance with Environmental Laws in connection with the Business.

**F.**     No Listed Real Property, and, to Seller's Knowledge, no property to which Hazardous Materials originating on or from the Listed Real Property or from the Sale Company has been sent for treatment or disposal to a facility that is listed or proposed to be listed on the National Priority List or CERCLIS or on any other similar database or list maintained by a Governmental Entity.

**G.**     (i)   A list of all Permits required under Environmental Law to operate the Business as currently operated at the Listed Real Property is set forth in Schedule 5.1.20. The Sellers are in compliance with all such Permits required to be set forth on Schedule 5.1.20.

(ii)   Except as set forth in Schedule 5.1.20, Sellers have timely filed applications for such Permits at the Listed Real Property required under Environmental Laws.

**5.1.21.  Product Claims.**  In the three (3)-year period prior to the date of this Agreement, no Seller nor the Sale Company has received in connection with any product manufactured, sold or distributed by any of them related to the Business any material claim in writing of personal injury, death or property damage, any material claim for punitive or exemplary damages, any material claim for contribution or indemnification or any material claim for injunctive relief other than claims that were resolved at the business level by credit or replacement of goods or allowance therefor.

**5.1.22.  Accounts Receivable.**  The Accounts Receivable (including all of the Trade Receivables other than the Excluded Trade Receivables) of the Business and of the Sale Company and included in the Purchased Assets represent or will represent valid obligations arising from sales of Products or services performed in the Ordinary Course of Business. Six (6) Business Days prior to the anticipated Closing Date, Sellers shall deliver to the Purchasers Schedule 5.1.22 setting forth an Account Receivables aging report of the Business as of such date.

**5.1.23.  Absence of Other Representations or Warranties.**  Except for the Warranties expressly set forth in this Agreement and the Ancillary Agreements, no Seller makes any representations or warranties, express or implied, with respect to the Acquired Assets, the Assumed Liabilities, the sale of the Sale Securities or the Business, and in particular but without limitation Sellers are making no representations with respect to any plan(s) of Purchasers for the future conduct of the Business.  For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or other information not contained in this Agreement or the Ancillary Agreements, or on any projected volumes of the Business (other than the January Projections as expressly set forth herein), all which were produced only for information purposes.

**5.2.   Warranties of Purchasers.**  Purchasers warrant and represent, jointly and severally, to Sellers as follows:

**5.2.1.  Corporate Data.**  Each Purchaser is a legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and has all requisite corporate or other organization power and authority to own, lease and operate its properties and assets.  Each Purchaser has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted and is duly qualified or licensed to do business and is in good standing in the jurisdictions in which the

ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Purchasers to consummate the transactions contemplated by this Agreement.

**5.2.2.    Corporate Power; Due Authorization.**    Each Purchaser has the requisite corporate or other organizational power and authority to execute and deliver this Agreement and the Ancillary Agreements to which such Purchaser is a party, including the Transfer Documents, and to perform its obligations hereunder and thereunder and to consummate the transactions contemplated herein and therein.  The execution, delivery and performance of this Agreement and the Ancillary Agreements, including the Transfer Documents, have been duly authorized by all necessary action on the part of each Purchaser that is a party thereto.  This Agreement is, and the Ancillary Agreements, including the Transfer Documents, to which a Purchaser is a party, will be, when executed and delivered (assuming this Agreement constitutes a legal, valid and binding obligation of the Sellers), valid and legally binding obligations of such Purchaser, enforceable against such Purchaser in accordance with their respective terms, except as enforcement of such terms may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or proceedings affecting the enforcement of creditors' rights generally and by the availability of equitable remedies and defenses.

**5.2.3.    No Violations.**    Neither the execution, delivery or performance of this Agreement by Purchasers, nor the consummation by Purchasers of the transactions contemplated herein, nor compliance by Purchasers with any of the provisions hereof, will:  (i) except for the Governmental Requirements, require Purchasers to obtain any consent, approval or action of, or make any filing with or give notice to, any domestic or foreign governmental or regulatory body or any other Person; (ii) conflict with or result in any breach of any provisions of the certificate of incorporation or bylaws of any Purchasers; (iii) result in a violation or breach of, or constitute (with or without due notice or lapse of time) a default (or give rise to any right of termination, cancellation, acceleration, vesting, payment, exercise, suspension or revocation) under any of the terms, conditions or provisions of any note, bond, mortgage, deed of trust, security interest, indenture, license, contract, agreement, plan or other instrument or obligation to which any Purchaser is a party or by which any Purchaser or its properties or assets may be bound or affected; (iv) violate any order, writ, injunction, decree, statute, rule or regulation applicable to any Purchaser or its properties or assets; or (v) result in the creation or imposition of any Lien on any asset of Purchasers.

**5.2.4.    Consents and Approvals.**    Except for Governmental Requirements, no consent, approval or authorization of, or declaration, filing or registration with, any domestic or foreign government or regulatory authority is required to be made or obtained by Purchasers in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated herein.

**5.2.5.    Litigation.**    Except for Claims raised in connection with the pendency of the Bankruptcy Cases, there is no suit, action, proceeding or investigation (whether at law or equity, before or by any Governmental Entity, or before any arbitrator) pending or, to the knowledge of Purchasers, threatened against or affecting Purchasers which could reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting Purchasers from consummating the transactions contemplated by this Agreement.

**5.2.6.  Brokers.**  Purchasers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which any Seller would be liable.

**5.2.7.  Solvency.**  Upon the consummation of the transactions contemplated by this Agreement: (i) none of the Purchasers will be insolvent; (ii) none of the Purchasers or other legal entities constituting the Business will be left with unreasonably small capital; (iii) none of the Purchasers or the Business will have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of the Purchasers and the other legal entities constituting the Business will not be impaired; and (v) immediately following Closing, Purchasers, individually and in the aggregate, will have sufficient capital to continue the Business as a going concern (it being understood that Purchasers will have no obligation to continue all or any portion of the Business as a going concern, subject to Purchasers' obligations to perform covenants and otherwise fulfill its commitments made pursuant to this Agreement).

**5.2.8.  Availability of Funds.**  Purchasers have the financial ability and will have available, at Closing, sufficient cash in immediately available funds to pay the Preliminary Purchase Price and thereafter to pay the Purchase Price if greater than the Preliminary Purchase Price, and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement.  Purchasers expressly acknowledge and agree that its obligation to consummate the transactions contemplated by this Agreement and the Ancillary Agreements is not subject to any condition or contingency with respect to financing.

**5.2.9.  Investment Intent:**

**5.2.9.1.**  The applicable Purchaser who is acquiring the Sale Securities is acquiring the Sale Securities for its own account, solely for the purpose of investment and not with a view to, or for sale in connection with, any distribution thereof in violation of the Securities Act or any applicable securities Laws of any other jurisdiction.

**5.2.9.2.**  Umicore is an "accredited investor" as defined in Rule 501(a) promulgated under the Securities Act.

**5.2.9.3.**  Umicore understands that the acquisition of the Sale Securities to be acquired by it pursuant to the terms of this Agreement involves substantial risk.  Umicore and its officers have experience as an investor in securities and equity interests of companies such as the ones being transferred pursuant to this Agreement and acknowledges that it can bear the economic risk of its investment and has such knowledge and experience in financial or business matters that Purchaser is capable of evaluating the merits and risks of its investment in the Sale Securities to be acquired by it pursuant to the transactions contemplated hereby.

**5.2.9.4.**  The applicable Purchaser understands that the Sale Securities to be acquired by it hereunder have not been registered under the Securities Act of 1933, as amended, on the basis that the sale provided for in this Agreement is exempt from the registration provisions thereof, and agrees that such securities may not be transferred unless such transfer is pursuant to an effective registration statement under the Securities Actor under the applicable securities Laws of any other jurisdiction, or, in each case, an applicable exemption therefrom.

**5.2.10.  Compliance with Law.**  Purchasers are in compliance with all Laws applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an Order outstanding restraining, enjoining or otherwise prohibiting any Purchaser from consummating the transactions contemplated by this Agreement.

**5.2.11.  Anti-Money Laundering.**  Each Purchaser is in material compliance with all applicable provisions of: (i) the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C.  1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemy Act ( 50 U.S.C.  50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which such Purchaser operates or does business.  Neither any Purchaser nor any of their directors, officers or Affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and no Purchaser is affiliated in any way with, or providing financial or material support to, any such persons or entities.  Purchasers agree that should they, or any of their  respective directors, officers or affiliates be named at any time prior to the Closing on the SDN List, Purchasers shall inform Sellers in writing immediately.

**5.2.12.  Adequate Assurance of Future Performance.**  Purchaser has provided or will be able to provide, at or prior to the Sale Hearing, adequate assurance of its future performance under each Assumed U.S. Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance will be necessary thereunder with respect to any Assumed U.S. Contract.

**5.2.13.  Shelf Tulsa Collective Bargaining Agreement.**  The Shelf Tulsa Collective Bargaining Agreement is attached hereto as Schedule 5.2.13.

## 6.    CONDITIONS TO CLOSING:

**6.1.    Conditions to Obligations of Sellers and Purchasers.** The respective obligations of each Party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver by both Parties at or prior to the Closing Date of the following conditions precedent:

**6.1.1.    Sale Approval Order.**  The Sale Approval Order, in form and substance reasonably satisfactory to Purchasers, shall be entered by the Bankruptcy Court onto the court docket and shall not be subject to a stay or injunction.

**6.1.2.    No Law, Judgments, etc.**  Subject to Section 9.1.2 and other than matters within the scope of Section 6.1.3, (a) no Law, injunction, judgment or ruling enacted, promulgated, issued, entered amended or enforced by any Governmental Authority shall be in effect enjoining, restraining, preventing or prohibiting consummation of the transactions or making the consummation of the transactions contemplated by this Agreement illegal;  (b) Sellers shall have completed any required information and consultation process with the Works Councils and (c) Purchasers and Sellers shall each be reasonably satisfied (I) that the sale of the Acquired Assets and

Sale Securities will not be rescinded or voided, and (II) that no Purchaser (or any of its respective Affiliates) is reasonably likely to be subject to Claims, litigation or Liabilities in connection with the consummation of the transactions contemplated by this Agreement for which such Purchaser (or its respective Affiliates) has not received adequate indemnification or other reasonable protection. In the event that the Purchaser is not reasonably satisfied that it (or its Affiliates) has received such adequate indemnification (including with respect to the limits on such coverage and/or the types of damages for which the Purchaser (or its Affiliates) shall be covered) or other reasonable protection, then the parties shall work together in good faith to provide for such indemnification or other reasonable protection as the Purchaser reasonably believes is adequate.

     **6.1.3.    Approvals by Antitrust Authorities.** All competition filings, required to be made under any Antitrust Law by the Parties jointly, or individually by either of the Parties or any of their Affiliates, in any jurisdiction in connection with the transactions contemplated by this Agreement shall have been made and the consents, approvals and authorizations shall have been obtained and remain in full force and effect or required waiting periods shall have expired or been terminated.

     **6.1.4.    Other Approvals.** Any and all Governmental Entity consents, approvals, authorizations, declarations, filings and registrations required to assign the Purchased Assets to the appropriate Purchasers shall have been duly obtained.

     **6.2.    Conditions to Obligations of Purchasers.** The obligation of Purchasers to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Purchasers):

     **6.2.1.    Accuracy of Warranties.** Except as otherwise permitted by this Agreement or a Transfer Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Sellers contained in this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein) shall be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time) except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect. Subject to the preceding sentence, Sellers may update or supplement the Disclosure Schedule prior to Closing by notice to Purchasers, but any such update or supplement shall not be taken into account in determining whether the condition set forth in this Section 6.2.1 has been satisfied. Any claim that Purchasers may have based on matters disclosed by Sellers in such updated or supplemented Disclosure Schedule will be deemed waived by Purchasers if Purchasers nonetheless complete the transactions contemplated herein or in the Transfer Agreements.

     **6.2.2.    Material Adverse Effect.** Since the date of the ~~January~~ July Projections and up to and including the Closing, there shall not have been any event, circumstance, change or effect that, individually or in the aggregate, has, had or likely will have a Material Adverse Effect and the Sellers shall have conducted the Business in the Ordinary Course of Business.

     **6.2.3.    Ancillary Agreements and Performance of Covenants.** Each of the Ancillary Agreements to which any Seller is a party shall have been executed and delivered by such Sellers to Purchasers on terms reasonably satisfactory to Purchasers, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by any Seller on or before the Closing shall have been performed in all material respects, subject to Purchaser's performance of its obligations under Section 5.2.12.

**6.2.4.    Other Approvals; Cure Amounts.** The third party and Governmental Entity consents, approvals, authorizations, declarations, filings and registrations required to assign the Purchased Assets to the appropriate Purchasers including those required to be set forth in Schedules 5.1.3, 5.1.11 or 5.1.14.A and that the Purchasers reasonably believe are necessary or otherwise material to the Business shall have been received and all consents, approvals, approvals and filings in connection with non-competition related Governmental Requirements shall have been obtained or made in form and substance reasonably satisfactory to the Purchasers and any Cure Amounts required to be paid for effective assignment and assumption of the U.S. Assumed Contracts shall have been paid, otherwise resolved by Sellers with the consent of the other parties to such Assumed U.S. Contracts, or absent such consent, by Final Order of the Bankruptcy Court. As used in this section, "material" shall *not* mean having or reasonably likely to have an impact of more than $1,000,000.

**6.2.5.    CBA.** That certain Shelf Collective Bargaining Agreement shall be put in full force and effect effective as of the Closing Date and shall not have been amended, modified, terminated or waived in any respect without Purchasers' consent.

**6.2.6.    Sale Company Debt.** The Sale Company's Debt shall be retired, exhausted or repaid in a mutually agreeable manner.

**6.2.7.    Florange Pre-emptive Right.** The *declaration d'intention d'aliéner* shall have been properly filed as soon as practicable following the date hereof and, in any event, no later than June 15, 2007, with respect to the Listed Real Property located in Florange, France and such Listed Real Property shall no longer be subject to a pre-emptive or similar right in favor of any French Governmental Entity.

**6.2.8.    Closing Deliveries.** Purchasers shall have received from Sellers all of the instruments, documents and considerations described in Sections 7.2 and 7.3 other than any of such items not received solely due to Purchasers' failure to perform under Section 5.2.12.

**6.3.    Conditions to Obligations of Sellers.** Except as otherwise permitted by this Agreement or a Transfer Agreement, the obligation of Sellers to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Sellers):

**6.3.1.    Accuracy of Warranties.** The representations and warranties of Purchasers contained in this Agreement shall be true and correct in all material respects as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which shall be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on Purchasers' ability to consummate the transactions contemplated by this Agreement.

**6.3.2.    Ancillary Agreements Performance of Covenants.** Each of the Ancillary Agreements to which any Purchaser is a party shall have been executed and delivered by such Purchaser to Sellers on terms reasonably satisfactory to Sellers, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by any Purchaser on or before the Closing shall have been performed in all material respects.

**6.3.3.    Closing Deliveries.** Sellers shall have received from Purchasers all of the instruments, documents and considerations described in Sections 7.2 and 7.4.

7. **CLOSING:**

    **7.1.**   **The Closing.** Subject to the terms and conditions of this Agreement, the closing (the "**Closing**") of the transactions contemplated hereby shall take place at the offices of Delphi at 10:00 a.m. on the second (2nd) Business Day after the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree. For tax and accounting purposes, the effective time of the transaction shall be 11:59 p.m. ET on the Closing Date. The Parties shall use commercially reasonable efforts to schedule the Closing for the last Business Day of the month. The Closing of the Ancillary Agreements shall take place simultaneously with the Closing or on a later date if mutually agreed by the relevant Seller and relevant Purchaser.

    **7.2.**   **Ancillary Agreements.** The Parties shall execute and deliver to each of the applicable Sellers and Purchasers the following agreements on mutually agreeable terms and other documents necessary to effect the transactions contemplated by this Agreement (the "**Ancillary Agreements**").

    **7.2.1.**   Transfer Agreements and/or assignments necessary for the Sellers to transfer to Purchasers the Purchased Intellectual Property and the Fuel Reformer Patent Rights set forth on Schedule 7.2.1 (the "**Fuel Reformer Patents**"), including any forms required to be filed with any applicable Governmental Entity in respect of Intellectual Property transfers and assignments.

    **7.2.2.**   Fuel Reformer Patent License between certain Purchasers and certain Sellers pursuant to which Purchasers shall grant Sellers a non-exclusive, worldwide license, with limited rights to sublicense those certain Fuel Reformer Patents on the terms set forth in Schedule 7.2.2 (the "**Fuel Reformer Patent License**").

    **7.2.3.**   To the extent that equity interests of the Sale Company are represented by stock certificates, DASHI shall deliver to the Securities Purchaser original certificates evidencing the Sale Securities (to the extent applicable in the respective jurisdiction), which certificates shall be duly endorsed for transfer or accompanied by duly executed stock transfer powers or other appropriate instruments of assignment and transfer in favor of such Purchasers or their permitted assigns.

    **7.2.4.**   Transfer Agreements for Acquired Assets of certain Business locations (including France and China) in each case in form and substance to the reasonable satisfaction of the parties.

    **7.2.5.**   Transfer Documents, including for: (i) Listed Real Property (e.g., lease assignments or special warranty deeds in the U.S. or their equivalent in other jurisdictions); (ii) Contracts; (iii) Permits; and (iv) the Acquired Carved-Out Location Assets in each case reasonably satisfactory to the Parties in form and substance.

    **7.2.6.**   Transition Services Agreement substantially in the form attached hereto as Schedule 7.2.6 ("**Transition Services Agreement**").

    **7.2.7.**   The Atmospheric Catalyst License substantially in the form of Schedule 7.2.7.

    **7.2.8.**   Testing Services Agreements covering the provision by the Sellers of long-term testing services to the Purchasers at the Bascharage, Luxembourg site and short-term testing services to the Purchaser at the Flint, Michigan site (each such agreement a "**Testing Services Agreement**", and, collectively, the "**Testing Services Agreements**") containing the terms set forth

in the draft agreements attached as Schedule 7.2.8(i) (Luxembourg) and Schedule 7.2.8(ii) (Flint) and such additional terms as the Parties shall agree.

**7.2.9.**    Canning Supply Agreements pursuant to which the Purchasers supply Products to the Sellers' canning operations in: (i) Shanghai, China; and (ii) Clayton, Australia (each a "**Canning Supply Agreement**"), containing the terms set forth in the draft agreements attached as Schedule 7.2.9(i) (Shanghai) and Schedule 7.2.9(ii) (Clayton) and such additional terms as the Parties shall agree.

**7.2.10.**    Toll Manufacturing Agreements covering each of Shanghai, China, Clayton, Australia and San Luis Potosi, Mexico between the Purchasers and Sellers pursuant to which the Sellers shall provide certain manufacturing services at such location, to the Purchasers (each such agreement a "**Toll Manufacturing Agreement**", and, collectively, the "**Toll Manufacturing Agreements**"), containing the terms set forth in the draft agreements attached as Schedule 7.2.10(i) (Shanghai), Schedule 7.2.10(ii) (Clayton) and Schedule 7.2.10(iii) (San Luis Potosi) and such additional terms as the Parties shall agree.

**7.2.11.**    The Closing Escrow Agreement between Sellers, Purchasers and the Escrow Agent, substantially in the form of Schedule 7.2.11.

**7.2.12.**    To the extent Sellers require a separate assumption agreement or other document(s) pursuant to which the relevant Purchasers assume the Assumed Liabilities under Section 7.4.2 below, the form of same shall be reasonably satisfactory to Purchasers and Sellers.

**7.3.**    **Sellers' Other Deliveries.**    At the Closing, in addition to the Ancillary Agreements covered by Section 7.2, Sellers shall deliver to Purchasers the following, in proper form for recording where appropriate, and in each case, in form and substance reasonably satisfactory to the Purchasers:

**7.3.1.**    An officer's certificate, dated as of the Closing Date, executed by Delphi on behalf of all the Sellers, certifying that the conditions specified in Section 6.2 have been fulfilled.

**7.3.2.**    A certificate, dated as of the Closing Date, executed by Delphi on behalf of all the Sellers by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of each Seller's Organizational Documents; (ii) a true and correct copy of the resolutions of each Seller's board authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which such Seller is a party and the consummation of the transactions contemplated hereby and thereby; and (iii) incumbency matters.

**7.3.3.**    Certified copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

**7.3.4.**    Appropriate receipts.

**7.3.5.**    The minute books and other corporate, partnership or limited liability company record books of the Sale Company.

**7.3.6.**    Resignations of all directors (or equivalent) and officers of the Sale Company, except as otherwise requested by Purchasers no less than six (6) Business Days prior to the Closing Date.

**7.3.7.**    Releases from any third party having a Lien on any of the Purchased Assets other than Permitted Liens.

**7.3.8.**    All Technical Documentation in accordance with the provisions of Section 8.6 below.

**7.3.9.**    A certificate of non-foreign status pursuant to Treasury Regulation Section 1.1445-2(b)(2) with respect to each Seller transferring a United States real property interest (within the meaning of Section 897(c) of the Code).

**7.3.10.**    All other documents and papers reasonably requested by Purchasers to effect the transactions contemplated hereby.

**7.4.    Purchasers' Deliveries.**    At the Closing, Purchasers shall deliver to Sellers, in proper form for recording where appropriate, and in each case, in form and substance reasonably satisfactory to the Sellers:

**7.4.1.**    The Purchase Price to be paid at Closing as required by, and in accordance with, Section 4.4.

**7.4.2.**    An appropriate assumption agreement or other document or documents pursuant to which the relevant Purchasers assume the Assumed Liabilities.

**7.4.3.**    An officer's certificate, dated as of the Closing Date, executed by Umicore on behalf of all the Purchasers, certifying that the conditions specified in Section 6.3 have been fulfilled.

**7.4.4.**    A certificate, dated as of the Closing Date, executed by Umicore on behalf of all the Purchasers by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Purchasers' Organizational Documents; (ii) a true and correct copy of the resolutions of the Purchasers' board authorizing the execution, delivery and performance of this Agreement by Purchasers and the consummation of the transactions contemplated hereby; and (iii) incumbency matters.

**7.4.5.**    All other documents and papers reasonably requested by Sellers to effect the transactions contemplated hereby.

**7.5.    Post-Closing Deliveries.**    Promptly following the Closing, Seller shall deliver signature cards from all banks or financial institutions with which the Sale Company has any account, designating signatures approved by the Purchasers.

**7.6.    Sale Company.**    At Closing, the Sellers shall perform the following obligations, in each case, with effect from Closing:

**7.6.1.**    Seller shall deliver to Purchaser definitive certificates for the Shares, together with a share transfer form, in a mutually agreeable form, in respect of the shares duly executed by the registered holder in favor of the relevant Purchaser; and

**7.6.2.**    Seller shall deliver to Purchaser written resignation(s) of any Seller representatives as directors of the Company (to take effect from the Closing).

**7.6.3.**    Seller shall obtain the approval of the directors of the Company which: (i) accepts the resignations of the director(s) whose resignation is required in terms of Section 7.6.2 and duly appoints Purchaser representatives whose names have been provided to Seller at least five (5) Business Days before Closing as additional directors of the Company; (ii) approves the transfers of the shares from Seller to Purchaser (subject to their being duly stamped); and (iii) approves the placing of Purchaser's name on the Company's register of members in accordance with the share transfer form delivered and authorizes the issue of a new share certificate to Purchaser.

## 8.    CERTAIN ADDITIONAL COVENANTS:

### 8.1.    Certain Pre-Closing Matters:

**8.1.1.**    Prior to the Closing, Sellers shall afford the officers, employees, accountants, attorneys and authorized representatives of Purchasers reasonable access at reasonable business hours and upon reasonable prior request to the facilities, properties, books, personnel, and records of the Sellers and the Sale Company in order that Purchasers may have the opportunity to determine the amounts of the Purchase Price adjustments set forth in Article 4 (including a financial audit to determine the Sale Company Retained Liability Amount) and to facilitate Day 1 readiness and integration planning.

**8.1.2.**    Prior to the Closing, Sellers shall: (i) furnish Purchasers with such additional material, including financial and operating data and other information relating to the Business, as Purchasers may reasonably request from time to time including access to all Contracts (including Contracts with customers, suppliers and consultants) and any amendments, modifications or waivers with respect thereto (each a, "**Contract Modification**"); and (ii) upon the request of any Purchaser, cooperate with Purchasers (including by waiving any applicable confidentiality restrictions) to arrange meetings between Purchasers and customers or suppliers of any Seller in accordance with the Purchaser Confidentiality Agreement.  Purchasers shall be permitted to disclose the terms of this Agreement to any such customer or supplier, as appropriate, to provide assurances to such customer or supplier with respect to the continued viability of the Business after the Closing.

**8.1.3.**    Prior to the Closing and as soon as reasonably practicable, the Parties will finalize all steps needed to organize the transactions contemplated by this Agreement and facilitate the drafting and negotiation of all of the Ancillary Agreements which, by the terms of Section 7.2 above, are required to effect the Closing.

**8.1.4.**    Prior to the Closing, Sellers shall allow the Purchasers and its representatives, in accordance with the terms of an Environmental Right of Access Agreement dated on or about March 30, 2007 between the Parties, access to its facilities, real property, books, records and personnel for purposes of completing the Purchasers' environmental, health and safety review, including, without limitation, such Phase I and Phase II assessments as required by the Purchasers; provided, however, that the results of such Phase I and Phase II assessments will not specifically provide any Purchaser with a right to rescind this Agreement and provided further that the foregoing shall not limit, modify or amend any other provision of this Agreement or any Purchaser's rights with respect thereto.

**8.1.5.**    Within fifteen (15) Business Days following the last day of each calendar month prior to Closing, the Sellers shall provide in a form reasonably acceptable to the Purchaser: (i) a summary of the Sellers' Net Working Capital (calculated in accordance with the Net Working

Capital Methodology) and PGM inventory as of the last Business Day of the preceding calendar month; and (ii) a reasonably detailed summary of the Seller's capital investments during the prior calendar month.

~~8.1.6.    If, prior to the Closing, the Sellers demonstrate the effectiveness of operational initiatives that have the effect of decreasing the volumes of PGM required to operate in the Ordinary Course of Business, then the Parties shall work together in good faith to determine appropriate adjustments to target levels.  Any resulting change in the Owned PGM Volume Target shall be reflected in an amendment to the Agreement adopted pursuant to Section 13.7.  For information purposes only, Schedule 8.1.6 sets forth further background information on currently contemplated initiatives and possible adjustment methodology to be applied in such situation.~~

**8.1.6.**    ~~8.1.7.~~  The Parties will use all commercially reasonable efforts to complete all Ancillary Agreements as soon as practicable.

**8.1.7.**    ~~8.1.8.~~The Parties agree that the definition of Net Working Capital includes certain other current assets and other current liabilities of the type that are set forth on the attached Schedule ~~8.1.8~~8.1.7, but that have yet to be finally determined.  All of the assets and liabilities set forth on Schedule ~~8.1.8~~8.1.7 were taken into account in setting the Net Working Capital Target.  The Parties shall work together in good faith as soon as reasonably practicable  to determine which of such assets and liabilities on Schedule ~~8.1.8~~8.1.7 are properly included within the definition of the Net Working Capital and, if appropriate, to adjust the Net Working Capital Target to reflect such discussions.

**8.1.8.**    ~~8.1.9.~~The Parties shall work together in good faith to consider any amendments or modifications to this Agreement as are required in connection with Delphi's possible transition of any portion of the operations of the Business from one existing location to any other existing location of the Business.

**8.2.**    **Joinder of Additional Seller Parties.**  Notwithstanding anything to the contrary contained herein, no later than five (5) Business Days prior to the Closing, Delphi shall cause each Delphi Affiliate listed in Schedule 1 that is not a signatory hereto as of the date hereof, to execute and deliver to Umicore counterpart signature pages to this Agreement in the form of Schedule 8.2.  Upon Umicore's execution and delivery of each counterpart signature page, each such Person shall be considered a "Seller" for all purposes under this Agreement effective as of the date hereof.  Notwithstanding the foregoing, in the event that the Parties mutually agree that applicable Law or other considerations require an alternative approach to ensuring that the appropriate Delphi Affiliates are bound to the obligations set forth with respect to such Affiliates hereunder, the Parties shall work together in good faith to adopt an alternative approach to this Section 8.2 including through agreement on the terms of mutually satisfactory local transfer agreements.

**8.3.**    **Bankruptcy Actions:**

**8.3.1.**    The Bidding Procedures are set forth in Section 11.  Promptly after the execution of this Agreement, Delphi shall, and shall cause the other Sellers that are Filing Affiliates to, file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking, and thereafter diligently pursue and defend, approval of the Bidding Procedures Order and the Sale Approval Order.  In the event that the Bidding Procedures Order is not entered on or before July 9, 2007 absent any material default by Purchasers hereunder, Purchasers may choose to withdraw this Agreement, and neither party hereto will have any further Liability to the other arising from this Agreement.

**8.3.2.**    Delphi shall use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Bankruptcy Rules, as modified by order, if any, of the Bankruptcy Court, in connection with obtaining approval of the sale of the Purchased Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Approval Motion, the Sale Hearing (as hereinafter defined) and all applicable objection deadlines in accordance with Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**8.3.3.**    With respect to any and all proceedings before the Bankruptcy Court, Sellers agree: (i) that they will take no action inconsistent with the terms of this Agreement; (ii) that they will take any actions and make any filings with the Bankruptcy Court necessary and prudent to ensure that the indemnification obligations of any Seller under this Agreement are fully funded and are not impacted or mitigated in any respect by the Bankruptcy Court; (iii) that such indemnification obligations survive in full any bankruptcy reorganization of any Seller; and (iv) that any Plan of Reorganization filed with or approved by the Bankruptcy Court with respect to any Seller will contain no provisions inconsistent with such Seller's obligations and duties under this Agreement.

**8.4.**    **Registrations, Filings and Consents; Further Actions:**

**8.4.1.**    As soon as practicable after the date hereof as requested by a Purchaser, each of the Parties shall: (i) promptly file all notifications, filings and other documents required in connection with all Antitrust Authorities and other regulatory approvals referred to in Sections 6.1.3 and 6.2.4, and to respond as promptly as practicable to any inquiries or requests received from any Antitrust Authority or other Governmental Entity, including for additional information or documentation; (ii) promptly furnish the other Party with copies of all documents (except documents or portions thereof for which confidential treatment has been requested of or by any Antitrust Authority which may be furnished to the other Party's legal counsel only) and correspondence: (a) prepared by or on behalf of it for submission to any Antitrust Authority or other Governmental Entity; and (b) received by or on behalf of it or its counsel from any Antitrust Authority or other any Governmental Entity, in each case in connection with the transactions contemplated by this Agreement, and limited to, in the case of competitively sensitive information, such Party's outside antitrust counsel who have signed or agreed to abide by that certain Joint Defense Agreement, effective as of December 12, 2006; and (iii) use its commercially reasonable efforts to consult with and keep the other Party informed as to the status of such matters (except that documents or portions thereof dealing with competitively sensitive information such as the price that Purchaser would pay for the Business or that Seller would accept for the Business may be withheld even from the other Party's outside antitrust counsel).  Notwithstanding the foregoing, Purchasers and Sellers agree that neither of them will make any voluntary filing under applicable foreign Antitrust Laws unless advised by legal counsel in such jurisdiction that the failure to make a filing could result in a Material Adverse Effect or otherwise be in violation of applicable Law.  Each Party hereto shall promptly inform the other of any oral communication from any Antitrust Authority or other Governmental Entity regarding any of the transactions contemplated by this Agreement and the Ancillary Agreements. If the Antitrust Authority in any such country: (i) determines that it will impose conditions to its approval of the transactions contemplated by this Agreement or does impose such; or (ii) determines that it will file a suit, action or other proceeding before a court or governmental agency seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement or does file such, either Party shall have the right to terminate the transaction pursuant to Section 9.1.1.B (notwithstanding

anything to the contrary in Section 9.1.1.B) if such conditions, suits, actions or other proceedings are not resolved within ninety (90) days from the date of such determination.  Notwithstanding anything in this Agreement to the contrary, in no event shall Purchasers or Sellers be obligated to propose or agree to accept any undertaking or condition, to enter into any consent decree, to make any divestiture, to accept any operational restriction, or take any other action that, in the reasonable judgment of the Purchasers or Sellers, could be expected to: (1) limit the right of the Purchasers or Sellers to own or operate all or any portion of the Purchased Assets or of Purchasers to own or operate any portion of their existing businesses or assets; or (2) require Purchasers or Sellers to license any of the Intellectual Property rights or to modify any existing license or their Intellectual Property rights.  With regard to any Antitrust Authority or Governmental Authority, no Seller shall, without Purchasers' prior written consent (not to be unreasonably withheld) propose, opine on the advisability of or commit to any divestiture transaction, or propose, opine on the advisability of or commit to alter any of their business or commercial practices in any way, or otherwise take or commit to any action that limits Purchasers' freedom of action with respect to, or Purchasers' ability to retain any of, the Purchased Assets or receive the full benefits of this Agreement.

     **8.4.2.**    Within three (3) Business Days after the entry of an unstayed Sale Approval Order upon the terms and subject to the conditions of this Agreement, each of the parties hereto shall use its reasonable best efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including using their reasonable best efforts to cause the satisfaction of all conditions to Closing.  At all times prior to the Closing: (i) Delphi will notify Umicore in writing of any fact, condition, event or occurrence that is reasonably expected to result in the failure of any of the conditions contained in Article 6 to be satisfied, promptly upon becoming aware of the same; and (ii) Umicore will notify Delphi in writing of any fact, condition, event or occurrence that is reasonably expected to result in the failure of any of the conditions contained in Article 6 to be satisfied, promptly upon becoming aware of the same.

**8.5.**    **Operation of the Business Pending Closing:**

     **8.5.1.**    Except: (i) as otherwise provided herein; (ii) as disclosed in Schedule 8.5 of the Disclosure Schedule; (iii) as required by, arising out of, relating to or resulting from the Bankruptcy Cases (including Delphi's Section 1113 and 1114 Motion, consensual resolutions between Delphi and any of its U.S. unions and an approved plan of reorganization); (iv) subject to any changes that may be required under applicable Laws or that may result from the disclosure of this Agreement or the transactions contemplated hereby; (v) in connection with Delphi's possible transition of any portion of the operations of the Business from one existing location to any other existing location of the Business and (vi) as set forth in the following sentence, until the Closing, Sellers will carry on the Business in the Ordinary Course of Business; perform in all material respects all of its obligations under all Listed Contracts and not amend, alter or modify in any material respect that is adverse to the Business any provision of any Listed Contract; keep in full force and effect insurance comparable in amount and scope to coverage maintained by it on the date of this Agreement; use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relations with the Business; endeavor to maintain the goodwill of the Business; and promptly advise Purchaser of any material and adverse change in the business condition (financial or other) of the Business or the Acquired Assets, any event or occurrence that would reasonably be expected to restrain, enjoin, substantially delay or otherwise prohibit the Closing under this Agreement, or that would be likely to result in a breach of any

representation, warranty or covenant in this Agreement.  Notwithstanding any implication to the contrary, Excess Cash may be distributed by the Sale Company prior to Closing.

**8.5.2.**    Notwithstanding the foregoing, except as otherwise contemplated by this Agreement, or as described in Section 8.5.1 and Schedule 8.5 of the Disclosure Schedule, no Asset Seller or DASHI, as applicable, shall, without the prior written consent of Purchasers, which consent shall not be unreasonably withheld or delayed: (i) waive or modify any rights material to any of the Sellers relating to the Acquired Assets; (ii) enter into any material transaction not contemplated by the January Projections; provided, however, that nothing herein shall require Sellers to inform or seek consent from Purchasers prior to bidding on competitive opportunities before Closing; (iii) knowingly do any act, omit to do any act, or permit any omission to act within its control, that is reasonably expected to cause: (x) a material breach or default in any of the Listed Contracts; (y) any of the Permits to lapse; or (z) for any other reason, a breach of any representation or warranty in this Agreement or a Material Adverse Effect; (iv) except in the Ordinary Course of Business, change or increase the rate of compensation paid by any of the Sellers to any of its Current Employees or agents, except for payments or bonuses that are payable by such Seller before the Closing Date; (v) make any change in the authorized or outstanding capital stock, charter or governing bylaws or regulations of the Sale Company, or merge or consolidate the Sale Company; or (vi) enter into any agreement, authorize, or commit to do any of the foregoing. Notwithstanding the foregoing, in the event the Sellers are legally required to undertake any of the actions listed in this Section 8.5.2 in the course of the Bankruptcy Cases, the Sellers shall provide advance written notice to the Purchasers and such action by Sellers shall not constitute a breach of this Section 8.5.2.

**8.6.**    **Assumed U.S. Contracts; Cure Amounts.**  Promptly after the Bidding Procedures Order has been issued by the Bankruptcy Court, Sellers shall, pursuant to a motion or other appropriate notice in form and substance reasonably acceptable to Purchasers (which motion may be incorporated into the Sale Motion), move to assume and assign to Purchasers the Pre-Petition Contracts and other Contracts with a Filing Affiliate that the Purchasers have identified for assumption and assignment to the Purchasers (collectively, the "**Assumed U.S. Contracts**") and shall provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by any orders of the Bankruptcy Court.  Sellers shall pay all Cure Amounts required to effect assumption and assignment of the Assumed U.S. Contracts as agreed to by the Sellers and each party to a Assumed U.S. Contract or, absent such agreement, by Final Order of the Bankruptcy Court in the time and manner specified by the Sale Approval Order.

**8.7.**    **Hired Current Employees.**  No later than thirty (30) days prior to the Closing, Purchasers shall provide the Sellers with a list setting forth each proposed Current Employee to whom the Asset Purchasers intend to offer employment as of the Closing ("**Proposed Hired Current Employees**").

**8.8.**    **Assumed PTO Obligations.**  Not less then three (3) Business Days prior to the Closing, the Sellers shall provide the Purchasers with a true and complete copy of Schedule 8.8 setting forth the Assumed PTO Obligations for each Hired Current Employee as of the Closing Date (the "**Closing Date Assumed PTO Obligations Schedule**").

**8.9.**    **Guarantee by Umicore.**  Umicore agrees to unconditionally guarantee all obligations of Purchasers pursuant to the terms of this Agreement, including, without limitation, to pay the Purchase Price and any indemnification obligations of Purchasers.  Umicore shall also reimburse Sellers for reasonable fees and expenses (including reasonable fees of counsel) incurred in successfully enforcing the guarantee obligations set forth in this Section 8.9.

**8.10.** **Post-Closing Covenants.**  From and after the Closing, each of the Parties will perform its respective covenants and agreements set forth below:

**8.10.1.** **Seller Post-Closing Covenants:**

**A.**  **Non-Competition.**  Sellers have at Closing, established the reputation of the Business.  Each Seller undertakes and agrees with Purchasers that for a period of five (5) years after the Closing Date, except with the consent of Purchasers, Sellers shall not, and shall ensure that each Affiliate of Sellers shall not, either on its own account or in conjunction with or on behalf of any person, firm or company whether by sales, marketing or other activities, carry on or be engaged, concerned or interested, directly or indirectly, whether as a shareholder, director, employee, partner, agent or otherwise in carrying on any business which is engaged in the research, design, development, manufacture, remanufacture or sale of Products as conducted by the Business (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 8.10.1 will not prohibit: (i) the acquisition of a controlling interest or merger with any person, or a division or business unit thereof, which is not primarily engaged in a Competitive Business, acquired by or merged, directly or indirectly, into a Seller or any of its Affiliated companies after the Closing Date, provided that Delphi will use commercially reasonable efforts to divest, as soon as practicable after such acquisition or merger, any portion of the business of such Person that constitutes a Competitive Business if the Competitive Business accounts for the lesser of: (1) $10 million in sales; or (2) ten percent (10%) of the total sales of the person, division or business unit being acquired; (ii) the acquisition by Seller or any of its Affiliated companies, directly or indirectly, of a non-controlling ownership interest in any person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen percent (15%) or less of the sales or ten percent (10%) or less of the value of the acquired business at the date of such acquisition (whichever is the greater); (iii) the acquisition by a Seller or any of its Affiliated companies, directly or indirectly, of less than five percent (5%) of the publicly traded stock of any person engaged in a Competitive Business; (iv) provision of non-Business-related consulting services to, the license of any technology that a Seller or any Seller Affiliate owns or has the right to sublicense to, or the financing (on its own behalf or on behalf of any other Person) of any Person for the purpose of designing or manufacturing on behalf of a Seller or any Seller Affiliate or selling to a Seller or any Seller Affiliate components and parts for automotive applications which are outside the scope of the Business, the Purchased Intellectual Property or the design, development, manufacture, remanufacture, sale or purchase of Products; (v) Sellers or any of their Affiliates by themselves or with others and, in each case, consistent with the obligation to pay any royalties that may be owed under the provisions of the Fuel Reformer Patent License: (a) designing, developing (including making catalyst prototypes for Fuel Reformers but not themselves manufacturing any Fuel Reformer catalysts for commercial production), testing and/or purchasing Fuel Reformer catalysts; (b) allowing a third party to manufacture Fuel Reformer catalysts; (c) selling Fuel Reformers containing Fuel Reformer catalysts; and (d) technical interchanges with catalyst suppliers consistent with Delphi's Fuel Reformer activities; (vi) activities under the Toll Manufacturing Agreement; (vii) consistent with Sellers' generally applicable troubled supplier practices, direct or indirect activities of a Seller or any Seller Affiliate to advise a troubled supplier of a Seller or its Affiliates; and (viii) any business or activity conducted by any Affiliate, subsidiary or division of a Seller (excluding the Business) as of the Closing Date (each of which shall be

deemed not to breach this Section 8.10.1.A), including any activity conducted by the operations referred to as Excluded Canning Business or other Excluded Assets.

        **B.**      While the restrictions contained in this Section 8.10.1 are considered by the parties to be reasonable in all the circumstances for the protection of the interests of Purchasers and/or the Business, it is recognized that restrictions of the nature in question may fail for technical reasons and, accordingly, it is hereby agreed and declared that if any of such restrictions shall be adjudged to be void but would be valid if part of the wording thereof were deleted or the periods thereof reduced or the range of activities or area dealt with thereby reduced in scope, the said restriction shall apply with such modifications as may be necessary to make it valid and effective.

      **8.10.2.** **Technical Documentation.** Sellers shall, or cause their Affiliates to, deliver, or will deliver on or before the Closing, to the relevant member of Purchasers, all Technical Documentation included in the Acquired Assets. For a period of not less than ten (10) years commencing at Closing, Purchasers shall use reasonable efforts to maintain all Technical Documentation applicable to pre-Closing Date product design, test, release and validation it acquires from Sellers in connection with the purchase of the Acquired Assets or the Sale Company under Article 1 of this Agreement at a location at which they shall be reasonably accessible to Sellers upon request. During such ten (10) year period, Purchasers shall not destroy or give up possession of its final copy of such documentation without offering Sellers the opportunity, at Sellers' expense but without any payment to Purchasers, to obtain a copy of such documentation.

      **8.10.3.** **Books and Records and Litigation Assistance From and After Closing:**

        **A.**      Purchasers shall, and shall cause and their Affiliates to, preserve and keep all books, records, computer files, software programs and any data processing files delivered to Purchasers by Sellers pursuant to this Agreement for a period of not less than five (5) years from the Closing Date, or for any longer period as may be required by any Governmental Entity, ongoing litigation, law, regulation, audit or appeal of Taxes, or Tax examination at Purchasers' sole cost and expense. During such period, Purchasers shall: (i) provide Sellers with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of each facility included within the Business as of the Closing Date; and (ii) make such books and records available to Sellers and their Affiliates as may be reasonably required by Sellers and their Affiliates in connection with any legal proceedings against or governmental investigations of Sellers and their Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Sellers and their Affiliates, the Business or the Acquired Assets. Sellers or their Affiliates shall reimburse Purchasers for the reasonable out-of-pocket expenses incurred in connection with any request by Sellers to make available records pursuant to the foregoing sentence. In the event Purchasers wish to destroy or dispose of such books and records after five (5) years from the Closing Date, it shall first give not less than ninety (90) days' prior written notice to Sellers, and Sellers shall have the right, at its option, upon prior written notice given to Purchasers within sixty (60) days of receipt of Purchasers' notice, to take possession of said records within ninety (90) days after the date of Purchasers' notice to Sellers hereunder.

        **B.**      Purchasers shall, from time to time, at the reasonable request of Sellers, cooperate fully with Sellers in providing Sellers and their Affiliates (as appropriate), to the extent possible through employees formerly employed by Sellers, with technical assistance

and information in respect to any claims brought against Sellers and their Affiliates involving the conduct of the Business prior to Closing, including consultation and/or the appearance(s) of such persons on a reasonable basis as expert or fact witnesses in trials or administrative proceedings. Sellers shall reimburse Purchasers and their Affiliates for their reasonable, actual direct out-of-pocket costs (including travel, employee time, hotels, etc.) of providing such services. In particular, Purchasers agree to: (i) retain all documents required to be maintained by federal, state, national or local legislation or regulations and all documents that may be reasonably required to establish due care or to otherwise assist Sellers and their Affiliates in pursuing, contesting or defending such claims; (ii) make available its documents and records in connection with any pursuit, contest or defense, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Purchasers must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Purchasers must notify Sellers of the existence of such privileged documents); and (b) Sellers agree to keep confidential documents and records that are confidential or are subject to trade secret protection); (iii) promptly respond to discovery requests in connection with such claim, understanding and acknowledging that the requirements of discovery in connection with litigation require timely responses to interrogatories, requests to produce and depositions and also understanding and acknowledging that any delays in connection with responses to discovery may result in sanctions; (iv) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to interfere materially with Purchasers' business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Sellers and their Affiliates in connection with such claim, including investigation into claims and occurrences described in this section and preparing for and giving factual and expert testimony at depositions, court proceedings, inquiries, hearings and trial; and (v) make available facilities and exemplar parts for the sole and limited use of assisting Sellers and their Affiliates in the contest or defense.

**8.10.4. <u>Payment and Collections</u>.** Sellers shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Purchasers after Closing, and Purchasers shall take such action as may be reasonably necessary to segregate payments made or collections received on behalf of Sellers after Closing, in order to ensure that the cost of the related Liability or the benefits of the related assets accrue to the appropriate Party in accordance with the terms of this Agreement. To the extent that any such collections are received after Closing in the form of checks or other negotiable instruments payable to the other Party, Sellers or Purchasers, as appropriate, shall promptly take all necessary action to endorse such checks or instruments to permit the appropriate Party to collect the proceeds of such checks and instruments. Sellers shall promptly send Purchasers copies of all remittance advices and checks related to payments received by Sellers with respect to such items. Purchasers shall notify the Business' customers of the change in address of the owner of the Acquired Assets as may be required in order for such customers to properly remit any payments required under any applicable Acquired Asset and Sellers shall cooperate with Purchaser as is reasonably necessary to so notify such customers.

**8.10.5. <u>Intellectual Property Transition Rights</u>.** Purchasers will have the right (including the right to authorize relevant Affiliates) to continue to sell or dispose of any existing inventories or service materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of Delphi or any Affiliate of Delphi for a period of up to three (3) months after the Closing Date; provided that Purchasers and their Affiliates shall clearly indicate on any written materials related to such sale or disposition,

including business cards, stationery, purchase orders, invoices and the like, that the Business is owned by Purchasers and their Affiliates and is no longer affiliated with, and Purchasers and their Affiliates do not represent, the Sellers or any Affiliate of Sellers.

**8.10.6.  Change of Name of the Sale Company.**  Purchasers shall cause the applicable Securities Purchaser to change the name of the Sale Company, as necessary, immediately following Closing to a name not containing the word "Delphi", such change to take effect pursuant to the terms of the respective Transfer Agreement governing the sale of the Sale Company.

**8.10.7.  Catalyst Co-Development and Supply.**  Following the Closing, the Parties intend to discuss in good faith possible catalyst co-development and supply arrangements beyond those contemplated in the Ancillary Agreements.

**8.11.  Further Assurances.**  If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement or any of the Ancillary Agreements, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement). Notwithstanding the foregoing, in the event that following the Closing Sellers are required to pay any stay or retention bonuses or make other payments or provide any benefits to any employees at one or more Carved-Out Locations to incentivize such employees to fulfill Sellers' obligations under any Ancillary Agreement, the Seller shall bear the entire cost of any such payments, benefits or incentives.

**8.12.  Certain Transactions.**  Purchasers shall not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any material delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Entity necessary to consummate the transactions contemplated by this Agreement or the Ancillary Agreements or the expiration or termination of any applicable waiting period; (ii) significantly increase the risk of any Governmental Entity entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) materially delay or prevent the consummation of the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.13.  Communications with Customers and Suppliers.**  Subject to applicable Law, prior to the Closing, Purchaser shall not, and shall cause its Affiliates and representatives not to, contact, engage in any substantive discussions or otherwise communicate with any of the Business' customers, suppliers and others with whom, to Purchaser's knowledge, the Seller has material commercial dealings regarding the Sale (including post-Closing plans for the Business) without obtaining the prior written consent of Seller (which shall not be unreasonably withheld provided, that, except with respect to General Motors and at all times prior to the entry of the Sale Approval Order, such consent may be conditioned upon Seller having the right to designate a representative who is reasonably acceptable to Umicore to participate in any meetings or discussion with any such customers, suppliers or others who is reasonably acceptable to Umicore). Purchasers shall be permitted to disclose the terms of this Agreement to any such customer or supplier, as appropriate, to provide assurances to such customer or supplier with respect to the continued viability of the Business after the Closing.  Notwithstanding the foregoing (but subject to applicable Law, and Purchaser's obligations under the Purchaser Confidentiality Agreement), nothing contained herein shall prevent

Purchaser, its Affiliates or representatives from contacting, engaging in discussions with or otherwise communicating with any Person (including the Business' customers, suppliers and others with whom, to Purchaser's knowledge, the Seller has material commercial dealings) regarding any other matter including: (i) program development, sales or purchases by any Purchaser or any of their respective Affiliates to or from such Persons; or (ii) matters that may be competitive with Seller or its Affiliates.  Without limiting the foregoing, nothing contained in this Agreement shall prevent or limit the ability of each Purchaser and their respective Affiliates) from competing with each Seller and their respective Affiliates with respect to any matter, including the Business.

**8.14.  Permit Transfers.**  Sellers shall assist and cooperate with Purchasers with respect to the transfer of or application for any  environmental Permits listed pursuant to Section 5.1.20.G that require transfer to Purchasers or procurement of new Permits by Purchasers in connection with the transaction contemplated hereby.

**8.15.  Pre-Closing Transfer of Intellectual Property.**  Prior to the Closing Date, Delphi will cause all of the Owned Intellectual Property and Licensed Intellectual Property (if any) of Delphi Automotive Systems LLC and Delphi Technologies, Inc. to be transferred, pursuant to documentation (including any necessary registrations of same that need to be filed with any Governmental Entity) in form and substance reasonably satisfactory to Purchasers, to ASEC Manufacturing  or another ASEC (as defined on Schedule 1) Filing Affiliate, so that the transfer of  the Purchased Intellectual Property to Umicore may be effected as set forth in Schedule 1; provided that such ASEC Filing Affiliate may cause the transfer to be consummated by means of a direct transfer from the record holder of the Purchased Intellectual Property to Umicore, subject to Umicore's consent.

**9.  TERMINATION:**

**9.1.  Termination.**  Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date:

**9.1.1.**  By either Party:

**A.**  By mutual written consent of Delphi on behalf of the Sellers and Umicore on behalf of the Purchasers.

**B.**  Provided the terminating Party is not in default of its obligations under this Agreement, if consummation of the Sale would violate any non-appealable Final Order of any Antitrust Authority or other Governmental Entity, or as such termination is otherwise permitted under Section 8.4.1.

**C.**  If Sellers consummate an Alternative Transaction.

**D.**  Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Bankruptcy Court has not entered a Sale Approval Order that is a Final Order on or before the date that is one hundred twenty (120) days after the date of this Agreement (either, a "**Termination Date**").

**E.**  Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Closing shall not have occurred within one hundred twenty (120) days after entry of the Sale Approval Order for any reason other than failure to meet

the conditions set forth in Sections 6.1.3 (Approvals) or 6.2.4 (Other Approvals; Collective Bargaining Agreements; Cure Amounts).

      **F.**      Provided the terminating Party is not in default of its obligations under this Agreement by either Sellers or Purchasers, if the Closing shall not have occurred within two hundred forty (240) days after entry of the Sale Approval Order for any reason.

    **9.1.2.** By Purchasers (provided that no Purchaser is in material breach of any representation, warranty, covenant or other agreement contained herein):

      **A.**      At any time prior to Closing, if a Material Adverse Effect shall have occurred Purchaser may terminate if, in the good faith judgment of Purchaser, such Material Adverse Effect has not been cured and is not capable of being cured within forty-five (45) days of the date of the event giving rise to such Material Adverse Effect; or

      **B.**      If the Antitrust Authority in any country: (i) determines that it will impose conditions to its approval of the transactions contemplated by this Agreement or does impose such; or (ii) determines that it will file a suit, action or other proceeding before a court or Governmental Entity seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement or does file such, within twenty (20) Business Days after becoming aware of such event so long as such event is continuing at the time of any such termination.

      **C.**      If (i) Sellers shall have breached or failed to perform in any significant respect any of the covenants or obligations applicable to Sellers under this Agreement and such breach or failure to perform cannot be cured within thirty (30) days from notice of such breach or failure to perform; or (ii) Sellers shall have breached in any significant respect any representation or warranty of Sellers contained in this Agreement and such breach cannot be cured within thirty (30) days from notice of such breach.

    **9.1.3.**      By Sellers:

      **A.**      If Sellers accept a Qualified Bid at the Auction other than that of Purchasers, provided that such termination shall be of no effect if Seller does not: (i) enter into an agreement with respect to such Qualified Bid within two (2) Business Days after termination hereunder; and (ii) subsequently complete the Sale to an Alternative Transaction within thirty (30) calendar days of such termination.

      **B.**      If (provided that no Seller is in material breach of any representation, warranty, covenant or other agreement contained herein): (i) Purchasers shall have breached or failed to perform in any significant respect any of the covenants or obligations applicable to Purchasers under this Agreement and such breach or failure to perform cannot be cured within thirty (30) days from notice of such breach or failure to perform; or (ii) Purchasers shall have breached in any significant respect any representation or warranty of Purchasers contained in this Agreement and such breach cannot be cured within thirty (30) days from notice of such breach.

    **9.2.**   **Notice of Termination.**  In the event of any termination pursuant to this Article 9, written notice thereof setting forth the reasons therefor shall promptly be given to the other Party and the transactions contemplated by this Agreement shall be terminated, without further action by any Party.

**9.3.    Break-Up Fee; Expense Reimbursement; Return of Deposit:**

**9.3.1.    Break-Up Fee.**  In the event that any Seller sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, all or substantially all or a material portion of the Business or the Acquired Assets in a transaction or a series of related transactions with one or more parties other than Purchaser in accordance with the Bidding Procedures (such event being an "**Alternative Transaction**"), Sellers shall, within two (2) Business Days after the consummation of the Alternative Transaction(s), pay to Umicore on behalf of the Purchasers an amount equal to Two Million U.S. Dollars (U.S. $2,000,000) (the "**Break-Up Fee**"), unless the Agreement is then terminable under Section 9.1.1.B, 9.1.2.B or 9.1.3.B; in which case no Break-Up Fee shall be payable.  Purchasers shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code in the amount of the Break-Up Fee or Expense Reimbursement, as the case may be.

**9.3.2.    Expense Reimbursement.**  In the event this Agreement is terminated pursuant to Sections, 9.1.1.D, 9.1.1.E, 9.1.1.F, 9.1.2.A or 9.1.2.C or and provided that: (i) no Purchaser is then in material breach of this Agreement for which Sellers had previously notified Purchasers; (ii) in the case of Section 9.1.1.F, this Agreement is not then terminable under Section 9.1.1.B; and (iii) and, in the case of Section 9.1.1.E, the failure or occurrence of the event giving rise to any such termination results solely from the status of Sellers or any action or conduct of a Seller and not from the status of Purchasers or any action or conduct of Purchasers, then Sellers shall be obligated to pay Purchasers an amount equal to Purchasers' reasonable, actual out-of-pocket fees and expenses (including reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement including, but not limited to, the conduct of pre-contract due diligence and the negotiation and drafting of this Agreement and the other documents contemplated herein (the "**Expense Reimbursement**") up to a maximum of One Million Seven Hundred and Fifty Thousand U.S. Dollars (U.S. $1,750,000).  Purchasers shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code in the amount of the Break-Up Fee or Expense Reimbursement, as the case may be.  Any Expense Reimbursement payable upon termination of this Agreement shall be immediately earned upon such termination and payable by Sellers to Purchasers promptly upon the delivery of an invoice related to such Expense Reimbursement to Sellers by Purchasers to be delivered to Sellers within thirty (30) days of termination of this Agreement; provided, however, that if Sellers believe, in good faith, that the amount of the Expense Reimbursement sought by Purchasers is not reasonable, then Sellers shall have the right, within thirty (30) days of receipt of Purchasers' invoice, to seek Bankruptcy Court review thereof prior to paying such amount.

**9.3.3.    Payments.**  Payments to Purchasers pursuant to this Section 9.3 shall be by wire transfer of immediately available funds in U.S. Dollars, to such account or accounts as Umicore shall designate in writing.

**9.3.4.    Limitations.**  Purchasers acknowledge and agree that, in the event that a Purchaser terminates this Agreement or a Seller terminates this Agreement and Purchasers become entitled to receive or receives any Expense Reimbursement, Purchasers shall not be entitled to receive nor shall they receive the Break-Up Fee or any portion thereof, and, conversely, that in the event that Purchasers become entitled to receive or receives any Break-Up Fee, they shall not be entitled to receive nor shall they receive the Expense Reimbursement or any portion thereof.

9.3.5.  **Return of Deposit.**  In the event this Agreement is terminated for any reason (including an Alternative Transaction) other than pursuant to 9.1.3.B, Escrow Agent shall, pursuant to the Deposit Escrow Agreement, within two (2) Business Days of such termination, pay to Umicore on behalf of the Purchasers the Deposit Amount.

**9.4.**  **Procedure and Effect of Termination.**  In the event of termination and abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Parties to this Agreement, and this Agreement shall terminate (subject to the provisions of this Article 9) and the transactions contemplated by this Agreement shall be abandoned, without further action by any of the parties hereto.  If this Agreement is terminated as provided herein no Party shall have any Liability or further obligation to any other Party resulting from such termination except for the provisions of: (i) Purchasers' obligations under the Purchaser Confidentiality Agreement; (ii) Article 9 (Termination); (iii) Sections 4.2 (Deposit Amount), 13.2 (Notice), 13.3 (Assignment), 13.4 (Entire Agreement), 13.5 (Waiver), 13.8 (Expenses), 13.12 (Governing Law), 13.13 (Public Announcements), 13.14 (Venue and Retention of Jurisdiction) and 13.17 (Dispute Resolution), all of which shall remain in full force and effect; and (iv) no party waives any claim or right against a breaching party in respect of any of its representations, warranties, covenants or agreements set forth in this Agreement occurring prior to such termination; provided, however, that in the event Purchasers are entitled to and do receive the Deposit Amount, the Break-Up Fee or Expense Reimbursement, as the case may be, the right of Purchasers to receive such amounts shall constitute Purchaser's sole remedy for (and such amounts shall constitute liquidated damages in respect of) any breach by any Seller of any of its representations, warranties, covenants or agreements set forth in this Agreement.  In connection with any termination of this Agreement, all filings, applications and other submissions made pursuant to the transactions contemplated by this Agreement shall, to the extent practicable, be withdrawn from the agency or Person to which made.

**9.5.**  **Conflicts.**  To the extent there exists any conflict or ambiguity between Section 9.1.1.D, on the one hand, and Sections 11.10 and 11.11, on the other hand, in respect of Purchasers' right to terminate this Agreement, (a) Section 9.1.1.D shall control with respect to Purchasers' initial bid as represented by this Agreement, and (b) Sections 11.10 and 11.11 shall control with respect to any subsequent bid submitted by the Purchasers in connection with the Auction.

## 10.  **OTHER TAX MATTERS:**

**10.1.**  **General.**  Except as provided below with respect to the Sale Company, Sellers will be liable for and pay all Taxes imposed on the Business for all periods or portions of periods before and through the Closing Date (including all capital gain, income or similar Taxes (and specifically not including transfer Taxes) triggered by this Agreement and/or the consummation of the transactions contemplated by this Agreement), and Purchasers will be liable for and pay all transfer Taxes triggered by the consummation of the transactions contemplated by this Agreement and Taxes imposed on the Business for all periods or portions of periods after the Closing Date.  For example, and not by way of limitation, the Purchaser agrees to reimburse the Seller for any tax professionelle, tax fonchière and other taxes that have been paid by the Sellers and relate to any taxable year or period after the Closing Date.

**10.2.**  **Sale Company Taxes.**  With respect to the Sale Company:

**10.2.1.**  **Sellers' Liability.**  Sellers will be liable for and pay all Taxes imposed on the Sale Company, or for which the Sale Company may be liable: (i) for any taxable year or period that ends on or before the Closing Date; and (ii) with respect to any period commencing before and ending after the Closing Date (a "**Straddle Period**"), the portion of such Straddle Period ending on and including the Closing Date net of the Sale Company Current Tax Amount (including any capital

gain, income or similar tax triggered by this Agreement and/or the consummation of the transactions contemplated by this Agreement, and any obligations to contribute to the payment of a Tax determined on a consolidated, combined or unitary basis with respect to any group of corporations that includes any Seller and any Taxes resulting from the Sale Company ceasing to be a member of such group). Notwithstanding the foregoing, in the event that the Taxes of the Sale Company for the Straddle Period are less than the Sale Company's Current Tax Amount, the Purchasers shall refund such positive differential to the Sellers subject to offset for any other amount owed by Sellers pursuant to this Article 10. For avoidance of doubt, Sellers will receive the benefit of the utilization of any tax loss carryover existing at December 31, 2006 during the portion of the Straddle Period ending on and including the Closing Date for purposes of determining the Sale Company Current Tax Amount. For purposes of clarification and not limitation, Sellers are responsible for all Straddle Period Taxes that exceed the Sale Company Current Tax Amount.

**10.2.2. Purchasers' Liability.** Purchasers will be liable for and pay all Taxes imposed on the Sale Company for any taxable year or period that begins after the Closing Date and, with respect to any Straddle Period, the portion of such Straddle Period beginning after the Closing Date provided, however, that Purchasers will not be liable for or pay, and will not indemnify Sellers against, any Taxes for which Sellers are liable under this Agreement.

**10.2.3. Straddle Period Allocations.** For purposes of this Section 10.2, Taxes for a Straddle Period will be allocated between the portion of the Straddle Period that ends at the end of the Closing Date and the remaining portion of the Straddle Period in the following manner:

**A.** Any Tax based upon or related to income, revenue, receipts or wage and salary payments will be allocated based on a "closing of the books" as of the end of the Closing Date.

**B.** Real and personal property Taxes with respect to any assets of the Sale Company will be prorated based on the ratio of the number of days in the portion of the Straddle Period ending on the Closing Date to the total number of days in the Straddle Period. Sales and use taxes will be deemed to accrue as property is purchased, sold, used, or transferred. All other taxes (other than those specified in this Section 10.2.3) will accrue in accordance with local generally accepted accounting principles.

**10.2.4. Tax Sharing Agreements.** All tax sharing agreements or similar agreements with respect to or involving the Sale Company will be terminated as of the Closing Date and, after the Closing Date, the Sale Company will not be bound thereby or have any Liability thereunder.

**10.2.5. Refunds and Tax Benefits.** Any Tax refunds with respect to the Sale Company that are received by Purchasers or the Sale Company, and any amounts credited against Tax of the Sale Company to which Purchasers or the Sale Company becomes entitled, that relate to Taxable Periods or portions thereof ending on or before the Closing Date will be for the account of Sellers, and Purchasers will pay over to Sellers any such refund or the amount of any such credit (to the extent such refund or credit is within the control of the Purchasers or any Subsidiary) within sixty (60) days after receipt or entitlement thereto.

**10.3.  Tax Returns:**

**10.3.1.  Taxable Periods Ending on or Before the Closing Date:**

**A.**      Sellers will prepare or cause to be prepared and file or cause to be filed all Tax Returns that are required to be filed for the Sale Company for all Taxable Periods ending on or prior to the Closing Date that are required to be filed on or prior to the Closing Date.  All Tax Returns which Sellers are required to file or cause to be filed in accordance with this section will be prepared and filed in a manner consistent with past practice and, on such Tax Returns, no position will be taken, election made or method adopted that is inconsistent with positions taken, elections made or methods used in preparing and filing similar Tax Returns in prior periods.  Without limiting the generality of the foregoing, Sellers will not, in such Tax Returns, adopt a new position, election or method which would have the effect of deferring income to periods for which Purchasers are liable under this Article 10 or accelerating deductions to periods for which Sellers is liable under this Article 10 unless required by applicable Laws without the prior consent of Purchasers, which consent will not be unreasonably withheld.  Sellers will provide to Purchasers copies of income tax returns reasonably in advance of their filing and at least thirty (30) calendar days before such returns are required to be filed.  Purchasers will notify Sellers of any proposed revisions within fifteen (15) calendar days after receipt of such income tax returns from Sellers.  Purchasers and Sellers agree to attempt to resolve in good faith any dispute concerning the reporting of any item on such income tax returns in a timely fashion before filing date.  Nothing in this Agreement will be construed as preventing Sellers or Sale Company from timely filing of any income tax returns.

**B.**      Purchasers will prepare or cause to be prepared and file or cause to be filed all Tax Returns that are required to be filed for the Sale Company for all Taxable Periods ending on or prior to the Closing Date that are required to be filed after the Closing Date.  Without limiting the generality of the foregoing, Purchasers will not, in such Tax Returns, adopt a new position, election or method which would have the detrimental effect in a period for which Sellers are liable under this Article 10, unless required by applicable Laws, without the prior consent of Sellers which consent will not unreasonably be withheld.

**10.3.2.  Taxable Periods Beginning Before and Ending After the Closing Date (Straddle Periods).**  Purchasers will prepare or cause to be prepared and file or cause to be filed any Tax Returns of the Sale Company that are required to be filed for Straddle Periods.  Purchasers will provide to Sellers copies of all such Tax Returns for Straddle Periods (together with a calculation of the allocation pursuant to Section 10.2.3 of the Tax shown on each such Tax Return between the portion of the Straddle Period ending on the Closing Date and the portion of the Straddle Period starting on the day after the Closing Date) at least thirty (30) calendar days before such Tax Returns are required to be filed.  Sellers will notify Purchasers of any proposed revisions to such Tax Returns (or such allocation) within fifteen (15) calendar days after receipt of such Tax Returns from Purchasers.  Purchasers and Sellers agree to attempt to resolve in good faith any dispute concerning the reporting of any item on such Tax Return in a timely fashion before filing date.  Nothing in this Agreement will be construed as preventing Purchasers or the Sale Company from timely filing of any Tax Returns.  Sellers will pay to Purchasers within fifteen (15) calendar days after an agreement is reached on the above-mentioned allocation of Straddle Period taxes (as determined pursuant to Section 10.2.3).

**10.4.  Audits and Adjustments.**  The Purchasers will inform Sellers of any pending or threatened Tax audits or assessments of, or with respect to, Taxes for which Sellers are responsible under this Agreement; provided, however, that the failure of Purchasers to provide timely notice will not affect the obligations of Sellers hereunder except to the extent (if any) that Sellers' ability to contest such Tax assessment has been prejudiced by such failure.  For tax periods ending on and including the Closing Date, Sellers will control the conduct of any such audit or proceeding but will not dispose of any such audit or proceeding in a manner that would result in the Sale Company adopting a position or method or election which could have the effect of deferring income to periods for which Purchasers are liable under this Article 10 or accelerating deductions to period for which Sellers are liable under this Article 10 or could reasonably result in an adverse consequence to Purchasers in respect of a tax period for which Purchasers are liable under this Article 10 without the consent of the Purchasers which shall not be unreasonably withheld.  For tax periods ending on and including the Closing Date, Purchasers and their legal or tax advisor will have the right to attend and participate in all relevant meetings with the authorities and Purchasers will provide all information which sellers may reasonably request in connection therewith.  For the Straddle Period, Purchasers will control the conduct of any such audit or proceeding but will not dispose of any such audit or proceeding in a manner that would result in the Sale Company adopting a position or method or election which could reasonably result in adverse consequences on Taxes for which Sellers are liable during the Straddle Period under this Article 10 or could reasonably result in an adverse consequence to Sellers in respect of a tax period for which Sellers are liable under this Article 10 without the consent of the Sellers which shall not be unreasonably withheld.  For the Straddle Period, Sellers and their legal or tax advisor will have the right to attend and participate in all relevant meetings with the authorities and Purchasers will provide all information which Sellers may reasonably request in connection therewith.  Each party will bear its own expenses in connection with such audits or proceedings.  Sellers will be responsible for the payment of any Tax deficiency resulting from such audit insofar as and to the extent  provided herein and in all cases without any offset against any deferred tax assets.

**10.5.  Sales or Transfer Taxes.**  Sellers and Purchasers will use commercially reasonable efforts and cooperate in good faith to exempt (including by the Seller seeking approval of such exception in the Sale Motion) the sale, conveyance, assignments, transfers and deliveries to be made to the Purchasers hereunder from any sales taxes, documentary and stamp taxes, transfer, documentary, sales, use, registration, recording, stamp, use, gross receipts, excise, value-added, and other such taxes (including all applicable real estate transfer taxes, but excluding any taxes based on or attributable to income or gains) and related fees (including notarial fees as well as any penalties, interest and additions to tax) ("**Transfer Taxes**") payable in connection with such sale, conveyance, assignments, transfers and deliveries, to the extent provided in the Sale Approval Order, in accordance with Section 1146(c) of the Bankruptcy Code.  If Bankruptcy Court approval is granted for such exemption, then any instrument transferring the acquired assets to the Purchasers will contain the following endorsement:

> Because this [instrument] has been authorized pursuant to Order of the United States Bankruptcy Court for the Southern District of New York relating to a chapter 11 plan of [Seller], it is exempt from transfer taxes, stamp taxes, or similar taxes pursuant to 11 U.S.C. § 1146(c).

To the extent not exempt under Section 1146 of the Bankruptcy Code and approved in the Sale Approval Order, such Transfer Taxes arising out of or incurred in connection with this Agreement will be borne solely by Purchasers.  The party that is legally required to file a Tax Return relating to Transfer Taxes will be responsible for preparing and timely filing such Tax Return.  Delphi will prepare the Transfer Tax returns for which Delphi is responsible as soon as is practicable and provide Umicore with a copy to review not less than fifteen (15) days in advance of the deadline for such return.  Umicore agrees to provide Delphi with comments in sufficient time to enable Delphi to timely file the return and pay the Transfer Tax and

Delphi shall use commercially reasonable efforts to incorporate such comments. Purchaser will also be liable for the Chinese recapture duty and VAT on tangible assets retained by Seller and sold to Purchaser that have not been used more than five (5) years at their current location.

**10.6.  Purchasers Covenants and Indemnity.**  Except as otherwise provided herein, Purchasers agree that they will pay when due all Taxes for which they are responsible pursuant to this Agreement and will indemnify and hold Sellers (or any entity that is controlled directly or indirectly by Sellers) harmless from and against Liability for such Taxes and any Loss related to such Liability. Payment by Purchasers of any amount due to Sellers under this Section 10.6 will be made within thirty calendar days following written notice by Sellers that payment of such amounts to the appropriate taxing authority is due, provided that Sellers will provide to Purchasers reasonable and sufficient documentation establishing the amount of any such Loss.

**10.7.  Sellers Covenants and Indemnity.**  Except as otherwise provided herein, Sellers agree that they will pay when due all Taxes for which any Seller is responsible pursuant to the provisions of this Agreement and will indemnify and hold Purchasers (or the Sale Company or other entity that is controlled directly or indirectly by any Purchaser) harmless from and against Liability for such Taxes and any Loss related to such Liability. Payment by any Seller of any amount due under this Section 10.7 will be made within thirty calendar days following written notice by Purchasers to Sellers that payment of such amounts to the appropriate taxing authority is due, provided that Purchasers will provide to Sellers reasonable and sufficient documentation establishing the amount of any such Loss.

**10.8.  Purchase Price Adjustment.**  Any payments made pursuant to the provisions of this Article 10 will be treated for income tax purposes as an adjustment to the Purchase Price consistent with Section 4.8.3.

**10.9.  Customs Duties.**  The Purchasers expressly agree to reimburse Sellers for all customs-related duties, fees and associated costs incurred by Sellers with respect to the Acquired Assets following the Closing, including all such duties, fees and costs incurred in connection with co-loaded containers that clear customs intentionally or unintentionally under Sellers' importer/exporter identification numbers and bonds/guarantees post-Closing.

# 11.  **BIDDING PROCEDURES:**

**11.1.  Delphi Initial Bankruptcy Actions.**  This Article 11 sets forth the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the Agreement and the sale (the "**Sale**") of the Purchased Assets. The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order. The following overbid provisions and related bid protections are designed to compensate the Purchasers for their efforts and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Purchased Assets for the benefit of Sellers' and their Affiliates' creditors, shareholders and bankruptcy estate.

**11.2.  Qualified Bidder.**  Unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi, in order to participate in the Bidding Process, each person (a "**Potential Bidder**"), other than the Purchaser, must deliver (unless previously delivered) to Sellers no later than 4 P.M. (EST) on the fifth (5th) Business Day following the entry of the Bidding Procedures Order:

> **11.2.1.** An executed confidentiality agreement substantially similar to the Purchaser Confidentiality Agreement.

**11.2.2.**  Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets and the Business, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Sellers and their financial advisors; and

**11.2.3.**  A preliminary (non-binding) proposal regarding: (i) the purchase price range; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale if selected as a successful bidder, and that the Sellers determine in their sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement shall be deemed a "**Qualified Bidder**".  Notwithstanding the foregoing, Purchasers shall be deemed a Qualified Bidder for purposes of the Bidding Process.

**11.3.  Due Diligence.**  Sellers shall afford each Qualified Bidder due diligence access to the Purchased Assets and the Business.  Due diligence access may include management presentations as may be scheduled by Sellers, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Sellers, in their sole discretion, may agree to.  Sellers shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence shall not continue after the Bid Deadline.  Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither Sellers nor any of its Affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to Purchased Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

**11.4.  Bid Deadline.**  A Qualified Bidder that desires to make a bid shall deliver the Required Bid Documents to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steven P. DeRaedt, Director, Mergers & Acquisitions, with copies to: (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention John K. Lyons and Brian M. Fern; (ii) Sellers' financial advisor, Credit Suisse First Boston, at 11 Madison Avenue, New York, New York 10010-3629, Attention Spyros Svoronos; (iii) counsel to the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "**Committee**"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention:  Robert J. Rosenberg; and (iv) counsel for the agent under Delphi's post petition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received not later than 11:00 A.M. (EST), on a date to be determined by Delphi that is at least five (5) Business Days before the date of Sale Hearing (the "**Bid Deadline**").  As soon as reasonably practicable following receipt of each Qualified Bid, Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the Official Committee of Equity Security Holders (the "**Equityholders' Committee**").  At the same time that Sellers notify the Potential Bidder that it is a

Qualified Bidder, Sellers shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Purchased Assets and the Business as provided in Section 11.3 above.

**11.5.  Bid Requirements.**  All bids must include the following documents (the "**Required Bid Documents**"):

**11.5.1.**  A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Sale of the Purchased Assets.

**11.5.2.**  An executed copy of this Agreement, together with all schedules marked (a "**Marked Agreement**") to show those amendments and modifications to such agreement and schedules that the Qualified Bidder proposes, including this Purchase Price (as defined in this Agreement).

**11.5.3.**  A good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Sellers in their sole discretion) payable to the order of Delphi (or such other party as Sellers may determine) in an amount equal to 1.75% of such bidder's gross (pre-adjustment) Purchase Price (rounded to the nearest $100,000).

**11.5.4.**  Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Sellers and its advisors.

**11.6.  Qualified Bids.**  A bid will be considered only if the bid:

**11.6.1.**  Is on terms and conditions (other than the amount of the consideration and the particular Liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to Sellers than, those contained in the Agreement.

**11.6.2.**  Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**11.6.3.**  Proposes a transaction that Delphi determines, in the good faith opinion of its senior management, after consultation with its financial advisors, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus $1,000,000: (i) in the case of the initial Qualified Bid; and (ii) in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

**11.6.4.**  Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

**11.6.5.**  Contains an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of

any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**11.6.6.** Includes a commitment to consummate the purchase of the Purchased Assets (including the receipt of any required governmental or regulatory approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within sixty (60) days after entry of such order.

**11.6.7.** Is received by the Bid Deadline; provided, however, that Delphi shall have a one-time right to extend the Bid Deadline up to a maximum of five (5) Business Days, but Delphi is not obligated to do so. If Delphi extends the Bid Deadline, it will promptly inform all of the Qualified Bidders of such extension.

A bid received from a Qualified Bidder will constitute a "**Qualified Bid**" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, Delphi will have the right, in its sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of the Purchasers is referred to as a "**Subsequent Bid**".

If Sellers do not receive any Qualified Bids other than the Agreement received from the Purchasers, Sellers will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

**11.7. Bid Protection.** Recognizing the Purchasers' expenditure of time, energy and resources, Sellers have agreed to provide certain bidding protections to the Purchaser. Specifically, Sellers have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor for which all other Qualified Bids must exceed. As a result, Sellers have agreed that if Umicore and the other Purchasers are not the Successful Bidder, Sellers shall, in certain circumstances, pay to the Purchasers a Break-Up Fee. In the event the Agreement is terminated pursuant to certain other provisions thereof, then Sellers shall be obligated to pay only the Purchasers' Expense Reimbursement. The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) shall be governed by the provisions of this Agreement and the Bidding Procedures Order.

**11.8. Auction Bidding Increments and Bids Remaining Open.** If Sellers receive one (1) or more Qualified Bids in addition to this Agreement, Sellers will conduct an auction (the "**Auction**") of the Purchased Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (at Delphi's election) or other place as Delphi shall notify all Qualified Bidders who have submitted Qualified Bids, at a time to be determined by Delphi (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

**11.8.1.** Only Delphi, Umicore, any representative of the Committee and the Equityholder's Committee, any representative of Delphi's post-petition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely

submitted a Qualified Bid shall be entitled to attend the Auction, and only Umicore and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

**11.8.2.**  At least three (3) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least two (2) Business Day prior to the Auction, Delphi shall provide copies of the Qualified Bid or combination of Qualified Bids which Sellers believe is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction.

**11.8.3.**  All Qualified Bidders who have timely submitted Qualified Bids shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

**11.8.4.**  Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

**11.8.5.**  Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $1,000,000 higher than the previous bid or bids.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), Sellers shall give effect to any Break-Up Fee or Expense Reimbursement that may be payable to Purchaser under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

**11.8.6.**  At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, Sellers, in consultation with their advisors, shall:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "**Successful Bid(s)**" and the bidder(s) making such bid, the "**Successful Bidder(s)**").

**11.9.  Acceptance of Qualified Bids.**  Sellers shall sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after a hearing (the "**Sale Hearing**").  If, after an Auction in which the Purchasers: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee.

Sellers' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Sellers' acceptance of the bid.  Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**11.10. Sale Hearing.**  The Sale Hearing shall be held before the Honorable Judge Robert Drain on August 16, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing (subject, however to Section 9.1.1.E. above).  If Delphi does not receive any Qualified Bids (other than the Qualified Bid of the Purchasers), Delphi will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to the Purchasers following entry of the Sale Order.  If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi shall seek approval of the Successful Bid(s), and, at Delphi's election, one or more next highest or best Qualified Bid(s) (the "**Alternate Bid(s)**" and such bidder(s), the "**Alternate Bidder(s)**").  Sellers' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute Sellers' acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either Sellers or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and Sellers shall effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

**11.11. Return of Good Faith Deposit.**  Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the closing of the Sale (the "**Return Date**").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder will forfeit its Good Faith Deposit, and such Good Faith Deposit shall irrevocably become property of Sellers in full and final satisfaction of any and all Liabilities of defaulting Successful Bidder to Seller with respect to the Sale.  On the Return Date, Sellers shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**11.12. Modifications.**  Sellers, after consultation with the agents for their secured lenders and the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than the Purchasers' bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale; or (c) contrary to the best interests of Sellers, their estate and creditors as determined by Sellers in their sole discretion.

**12.    SURVIVAL OF REPRESENTATIONS, WARRANTIES AND COVENANTS; INDEMNIFICATION:**

**12.1. Sellers' Agreement to Indemnify.**  If the Closing occurs, subject to the terms and limitations of this Article 12, from and after the Closing: (i) each Seller that is a Non-Filing Affiliate, severally, with respect solely to such Seller; and (ii) in the case of the Sale Company only, Delphi and DASHI, jointly and severally, shall indemnify and hold harmless each Purchaser and its Affiliates, directors, members, managers, officers, employees and their respective Affiliates (collectively, the "**Purchaser Indemnified Parties**") from and against all Losses incurred by a Purchaser Indemnified Party (such Losses actually incurred by either a Purchaser Indemnified Party or a Seller Indemnified Party are referred to as "**Indemnifiable Losses**"), as a result of or arising out of: (A) any misrepresentation, breach, default or

failure to perform or satisfy by any Non-Filing Affiliate or, with respect to the Sale Company, DASHI under any of the representations and warranties of such Non-Filing Affiliate, DASHI or the Sale Company set forth in this Agreement or in any document, agreement or certificate delivered by any Non-Filing Affiliate, DASHI (with respect to the Sale Company) or the Sale Company to any such Purchaser at Closing; (B) Retained Liabilities or Excluded Assets that are retained by any such Non-Filing Affiliate; or (C) a breach or default of any agreement or covenant of any such Non-Filing Affiliate in this Agreement that, by its terms, is intended to be performed by such Seller after the Closing Date. Purchasers agree that, except as contemplated by this Article 12, from and after the Closing, the indemnification provided in this Article 12 is the exclusive remedy for a breach by any Seller of any agreement or covenant contained in this Agreement that, by its terms, is intended to be performed by such Non-Filing Affiliate at or after the Closing.

**12.2.  Specific Performance.**  Sellers acknowledge that the Purchased Assets to be sold and delivered to Purchasers pursuant to this Agreement and the covenants and agreements of Sellers contained herein, including with respect to non-competition in Section 8.10.1.A, are unique and that Purchasers have no adequate remedy at law if Sellers shall fail to perform any of their obligations hereunder intended to be performed by any Seller after the Closing, and Sellers therefore confirm and agree that Purchasers' right to specific performance is essential to protect the rights and interests of Purchasers. Accordingly, in addition to any other remedies which Purchasers may have, Purchasers shall have the right to seek equitable remedies, including specific performance in any of the courts of the United States, any state or other political subdivision thereof or any foreign jurisdiction.

**12.3.  Purchasers' Agreement to Indemnify.**  If the Closing occurs, subject to the terms of this Article 12, from and after the Closing, Purchasers shall indemnify and hold harmless each Seller and its Affiliates, directors, members, managers, officers, employees and their respective Affiliates (together with the Purchaser Indemnified Parties, each an "**Indemnified Party**") from and against all Indemnifiable Losses incurred by Sellers as a result of or arising out of: (i) any misrepresentation, breach, default or failure to perform or satisfy by any Purchaser under any of the representations and warranties set forth in this Agreement or in any document, agreement or certificate delivered by any Purchaser to any such Seller at Closing; (ii) the Assumed Liabilities, the Acquired Assets or the Sale Securities; (iii) a breach of any agreement or covenant of any Purchaser contained herein that, by its terms, is intended to be performed after the Closing Date; or (iv) except as otherwise provided in Section 12.1, the conduct of the Business or the ownership of the Acquired Assets after Closing, other than Liabilities relating to environmental matters, for which Section 12.6 shall provide the exclusive basis for indemnification. Sellers agree that, except as contemplated by this Article 12, from and after the Closing the indemnification provided in this Article 12 is the exclusive remedy for a breach by any Purchaser of any agreement or covenant contained in this Agreement that, by its terms, is intended to be performed after the Closing, and that there shall be no remedy for breach by any Purchaser of a representation or warranty or any breach of a covenant or agreement that, by its terms, is intended to be performed prior to the Closing.

**12.4.  Third Party Indemnification.**  The obligations of any Party (such Party, the "**Indemnifying Party**") to indemnify any Indemnified Party under Sections 12.1 or 12.3 with respect to Indemnifiable Losses incurred by the Indemnified Party, resulting from the assertion of Liability by third parties (including Governmental Entities) (a "**Third Party Indemnification Claim**"), shall be subject to the following terms and conditions:

  **12.4.1.**  Any Indemnified Party against whom any Third Party Indemnification Claim is asserted shall give the Indemnifying Party written notice of any such Third Party Indemnification Claim promptly after learning of such Third Party Indemnification Claim (with such notice satisfying the requirements of Section 13.2, as the case may be), and the Indemnifying Party may,

at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the Indemnified Party.  Failure to give prompt written notice of an Third Party Indemnification Claim hereunder shall not affect the Indemnifying Party's obligations under this Article 12, except to the extent that the Indemnifying Party is actually prejudiced by such failure to give prompt written notice.  The Indemnified Party shall, and shall cause its employees and representatives to, cooperate with the Indemnifying Party in connection with the settlement or defense of such Third Party Indemnification Claim and shall provide the Indemnifying Party with all available information and documents concerning such Third Party Indemnification Claim.  If the Indemnifying Party, within thirty (30) days after written notice of any such Third Party Indemnification Claim, fails to assume the defense of such Third Party Indemnification Claim, the Indemnified Party against whom such claim has been made shall (upon further written notice to the Indemnifying Party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the Indemnifying Party, subject to the right of the Indemnifying Party to assume the defense of such Third Party Indemnification Claim at any time prior to settlement, compromise or final determination thereof upon written notice to the Indemnified Party. For purposes of clarification, the term "party" as used in the first sentence of this paragraph means, collectively, each of the Purchasers or each of the Non-Filing Affiliates, as the case may be.

**12.4.2.  Escrow Claim.**  If any claim for indemnification is made by a Purchaser Indemnified Party pursuant to this Article 12 prior to the eighteen (18) month anniversary of the Closing, such a Purchaser Indemnified Party shall first apply to the Escrow Agent for reimbursement of such claim in accordance with the provisions of the Closing Escrow Agreement prior to seeking reimbursement for such claim provided that nothing herein shall change any of Purchaser's obligation to follow the procedures for indemnification hereunder.

**12.4.3.**  Anything in this Section 12.4 to the contrary notwithstanding: (i) the Indemnified Party shall not settle a claim for which it is indemnified without the prior written consent of the Indemnifying Party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the Indemnifying Party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne by the Indemnifying Party, without the prior written consent of the Indemnified Party, which consent shall not be unreasonably withheld, conditioned or delayed.

**12.5.  Limitations.**  Each Purchaser's and Seller's right to seek indemnification pursuant to this Section 12 shall be subject to the following limitations.

**12.5.1.**  Except as expressly provided in Section 12.5.2 or 12.5.3, the respective representations and warranties and related indemnities of the Non-Filing Affiliates and, with respect to the Sale Company, DASHI and Delphi set forth in this Agreement, and the post-Closing indemnity obligations of the Non-Filing Affiliates and DASHI and Delphi with respect to the Sale Company for breach of such representations and warranties as set forth in this Article 12, shall survive for a period of eighteen (18) months following the Closing.  Except as expressly set forth in the preceding sentence with respect to DASHI and Delphi, the representations and warranties of the Filing Subsidiaries will not survive Closing.  All other covenants contained in Section 8.10 hereof to be performed after Closing, shall survive the Closing in accordance with their terms until expiration of the applicable statute of limitations unless otherwise set forth herein.

**12.5.2.**  Notwithstanding Section 12.5.1 above, the representations and warranties set forth in (and the post-Closing indemnity obligations as set forth in this Article 12 of Non-Filing

84

Affiliates, and with respect to the Sale Company, DASHI and Delphi or Purchasers, as the case may be, for breach of such representations and warranties): Sections 5.1.2 (Corporate Power; Due Authorization), 5.1.5.A (Title to Personal Property), 5.1.16.B (Marketable Title) and 5.2.2 (Corporate Power; Due Authorization) shall survive the Closing indefinitely.

**12.5.3.**  Notwithstanding Section 12.5.1 above, the representations and warranties set forth in (and the post-Closing indemnity obligations as set forth in this Article 12 of Non-Filing Affiliates and, with respect to the Sale Company, DASHI and Purchasers, as the case may be, for breach of such representations and warranties): (i) Sections 5.1.7 (Intellectual Property Assets), 5.1.15 (Regulatory Matters), 5.1.17 (Tax Matters), 5.1.21 (Product Claims) and 5.2.11 (Anti-Money Laundering) will survive until expiration of the applicable statute of limitations; and (ii) Section 5.1.20 (Environmental Representations and Warranties) will survive for three (3) years after Closing.

**12.5.4.**  In the case of Claims under Sections 12.1(i) or 12.2(i) (representations), an Indemnifying Party will only be responsible for the amount of all Indemnifiable Losses which, in the aggregate exceeds Three Hundred Twenty-Five Thousand Dollars ($325,000.00) ("**Deductible Amount**"), after which point an Indemnifying Party will be obligated to indemnify an Indemnified Party from and against Indemnifiable Losses that are in excess of the Deductible Amount, subject to the Individual Claim Amounts, if applicable; provided, however, any Liability of the: (x) Non-Filing Affiliates under subsections (B) of Section 12.1; or (y) the Purchasers under subsection (ii) of Section 12.3 shall be dollar-for-dollar without regard to the Deductible Amount or the Indemnification Cap. In determining whether or not the threshold for the Deductible Amount has been met, the amount of all Special Claim Matters shall be counted without regard to whether the amount of any particular Special Claim Matter meets or exceeds the Individual Claim Amount. Furthermore, in determining whether the threshold for the Deductible Amount or Indemnification Cap has been met for purposes of this Section 12.5.4 the indemnification obligation of all of the Purchasers and all of the Sellers, respectively, shall be aggregated without regard to the particular Purchaser or Seller against whom indemnification was sought.  For example, if Purchaser A has a claim against Seller 1 for $200,000 and Purchaser B has a claim against Seller 2 for $200,000, the total Indemnifiable Losses would exceed $325,000 and, thus, the Purchasers could seek indemnification hereunder for $75,000.

**12.5.5.**  Notwithstanding any provision of Section 12.5.4 to the contrary, in the case of Claims under Section 12.6 (Environmental Matters), or relating to Excluded Liabilities relating solely to Product warranty or Product returns (the "**Special Claim Matters**"), the Purchaser shall not be permitted to make a Claim for indemnification pursuant to this Article 12 unless the individual Claim or series of related Claims relates to an Indemnifiable Loss equal to or greater than Twenty-Five Thousand Dollars ($25,000.00) ("**Individual Claim Amount**").  For purposes of clarification, except as set forth in the preceding sentence, no other type of Claim shall be subject to any minimum amount or size.

**12.5.6.**  The aggregate amount of Indemnifiable Losses indemnified by the combined Indemnifying Parties that are Purchasers or Sellers, as the case may be, shall not exceed an amount equal to fifty percent (50%) of the Purchase Price (not taking into account any adjustments thereto), after which point such Indemnifying Party(s) will have no further obligation with respect to Indemnifiable Losses under this Agreement; provided, however, that no individual Indemnifying Party shall be obligated to indemnify any Indemnified Party from and against Indemnifiable Losses in excess of one hundred percent (100%) of the Purchase Price for the Acquired Assets sold by such

Indemnifying Party.  The term **"Cap Amount"** refers to the maximum amount payable by an Indemnifying Party or all Indemnifying Parties that are Purchasers or Sellers, as the case may be.

**12.5.7.**  In the absence of fraud by any Seller, the Purchasers shall not be entitled to rescission.

**12.5.8.**  Claims made by one Party against the other Party for failure to pay an amount owed by one Party pursuant to Article 4 shall not be subject to any of the provisions or the limitations set forth in Section 12.5.  Notwithstanding the foregoing, no Party to the Agreement shall be entitled to make any claim under this Article 12 to the extent, but only to such extent, that the item for which such claim was made resulted in a Preliminary Purchase Price adjustment pursuant to Sections 4.6 or 4.7 that was paid in full by the other Party.

**12.5.9.**  In calculating amounts payable to the Indemnified Party, the amount of any Indemnifiable Losses shall be determined without duplication of any other Indemnifiable Losses for which an Indemnified Party has made a claim for indemnification pursuant to this Agreement.

**12.5.10.**  Any written notice delivered by an Indemnified Party to an Indemnifying Party seeking indemnification pursuant to this Agreement with respect to Indemnifiable Losses suffered by the Indemnified Party shall set forth, with as much specificity as is reasonably practicable, the basis of the claim for Indemnifiable Losses, the sections of this Agreement which form the basis for the claim, copies of all material written materials relating to such claim and, to the extent reasonably practicable, a reasonable estimate of the amount of the Indemnifiable Losses that have been or may be sustained by the Indemnified Party.

**12.5.11.**  Any indemnity amounts payable by the Indemnifying Party to or on behalf of an Indemnified Party pursuant to this Agreement (including any indemnity payment made under this Article 12) shall be reduced by any Tax benefit arising from the claim, loss or damage for which the indemnity is being paid, including any increase in deductions, credits or losses of such Indemnified Party (or any of its Affiliates) but shall be increased to make such Indemnified Party (and any of its Affiliates) whole for any Tax detriment arising from the indemnification payment itself.  In the case of Tax benefits consisting of depreciation, amortization or other similar deductions, the Tax benefit amount will be based on the net present value of such deductions using a discount rate equal to the mid-term applicable federal rate in effect on the day on which the indemnification payments are due.  Any calculations of the Tax benefit under this Section 12.5.11 shall be determined assuming such Indemnified Party pays Taxes at the highest combined marginal Tax rate for applicable U.S. federal, foreign, state and local Taxes.

**12.5.12.**  Notwithstanding any other provision of this Agreement, in no event shall any Indemnified Party be entitled to indemnification pursuant to this Agreement to the extent any Indemnified Party's Indemnifiable Losses were attributable to Indemnified Party's own gross negligence or willful misconduct.

**12.5.13.**  Nothing in this Article 12 shall limit any party in exercising or securing any remedies provided by applicable statutory or common law in connection with this Agreement or in the amount of damages that it can recover from the other in the event that any party successfully proves fraud, intentional misconduct, or fraudulent conduct in connection with this Agreement and/or the Transactions.

**12.6.  Environmental Matters:**

**12.6.1.  Indemnification of Seller and Purchaser:**

**A.**      Subject to the provisions of this Agreement, and solely with respect to the Listed Real Property included in the Acquired Assets or real property held by the Sale Company ("**Indemnified Real Property**"), the appropriate Seller shall indemnify the appropriate Purchaser solely for Environmental Damages arising from Pre-Closing Environmental Contamination and Pre-Closing Environmental Compliance Matters at the Indemnified Real Property.

**B.**      Subject to the provisions of this Agreement, and solely with respect to the Indemnified Real Property, Purchaser shall indemnify Sellers for Environmental Damages arising from Post-Closing Environmental Contamination and Post-Closing Environmental Compliance Matters.

**C.**      To the extent feasible, Pre-Closing Environmental Contamination and Pre-Closing Environmental Compliance Matters shall be determined based on the Phase I and Phase II environmental investigations to be conducted prior to Closing by Purchasers at the Indemnified Real Property, and the reports from such investigations shall document pre-Closing baseline conditions ("**Baseline Environmental Conditions**").

**D.**      Subject to the provisions of this Agreement, including, without limitation, the next sentence, for those Environmental Damages arising from circumstances that may be considered both: (i) Pre-Closing Environmental Contamination and Post-Closing Environmental Contamination; or (ii) Pre-Closing Environmental Compliance Matters and Post-Closing Environmental Compliance Matters, such Environmental Damages shall be allocated between the Parties in proportion to the extent that such Environmental Damages arose pre- or post-Closing, and each Party shall indemnify the other for its share as determined by such allocation.

**E.**      Section 12.4 shall apply to any third party environmental claims.

**F.**      Section 13.17 shall apply to any disputes between the parties as to environmental matters.

**12.6.2.  Limitations on Liability.**  Claims relating to environmental matters that are Retained Liabilities are not subject to the limitations of this Article 12 regarding the Deductible Amounts and Cap Amounts.  Claims relating to the environmental matters that are based on a breach of Section 5.1.20 are subject to the limitations of this Article 12 regarding the Deductible Amounts and Cap Amounts.  In addition, neither Party shall be liable under this Agreement for Environmental Damages:

**A.**      In the case of Environmental Claims arising from Pre-Closing Environmental Compliance Matters or Post-Closing Environmental Compliance Matters (as the case may be), unless written notice of such claim has been served on the non-claiming Party on or before three (3) years following the Closing Date.

**B.**      In the case of Environmental Claims arising from a Pre-Closing Environmental Contamination or Post-Closing Environmental Contamination (as the case

may be), unless written notice of such claim has been served on the non-claiming Party on or before three (3) years following the Closing Date.

    **C.**    Where the indemnified party uses the Indemnified Real Property for a use other than an industrial use substantially similar to such use in effect at the Closing, or seeks to or changes the zoning or land use classification of the Indemnified Real Property to a classification more sensitive than the industrial classification in effect at Closing.

### 12.6.3.  Remediation of Environmental Damage:

    **A.**    Where an Environmental Damage arises out of Environmental Contamination, the non-claiming Party shall be responsible for Remedial Works or the redressing of an Environmental Compliance Matter ("**Remedy**") to no less but no more than the Remediation Standards allowed by applicable Environmental Laws; such Remedial Works may be determined, in compliance with applicable Environmental Laws using risk assessment and related risk evaluation methods.  Remedial Work shall be conducted using the commercially reasonable methods of investigation, corrective measures, remediation and/or containment (including the use of institutional controls or deed restrictions for use of the property for industrial purposes only).

    **B.**    The non-claiming Party shall, where a Remedy is required pursuant to this Agreement, shall conduct such Remedy in a reasonably expeditious manner.

    **C.**    The conduct of a Remedy shall be as follows:

    (i)    The non-claiming Party shall prepare appropriate work plans or scopes of work to satisfactorily undertake and complete the Remedy under this Agreement; such Party will provide the other Party with an opportunity to review and comment on such work plans or scopes of work, which comments the non-claiming Party should adopt where such comments do not materially increase any cost or Liability of the Remedy;

    (ii)    When requested, the claiming Party shall cooperate with the non-claiming Party in any communications with the appropriate Competent Authority;

    (iii)    Where a Seller is the non-claiming Party, such Seller will take all reasonable steps to avoid interfering with Purchaser's operation or use of the Indemnified Real Property, and Purchaser will reasonably cooperate with such Seller including providing access to the Indemnified Real Property and the use of utilities in the conduct of the Remedy;

    (iv)    Where applicable the non-claiming Party shall provide copies of all relevant correspondence sent to and received from a Competent Authority, and keep the non-claiming Party reasonably apprised of the progress of the conduct of the Remedy;

    (v)    The claiming Party shall have the right to observe all Remediation work; and

(vi)     The conduct of the Remedy shall be deemed complete when, as the case may be:

(1)     The non-claiming Party has received approval regarding the Remedy by an applicable Governmental Entity; or

(2)     Subject to Section 12.6.3.A of this Agreement, the remedy meets the Remediation Standards which are allowed by applicable Environmental Laws.

## 13.   **MISCELLANEOUS:**

**13.1.  Bulk Sales Laws.**  Each Seller and Purchaser hereby waive compliance by Sellers with the provisions of the bulk sales Law of any state or foreign jurisdiction.

**13.2.  Notices.**  Except as otherwise provided in Article 11 hereto, all notices, requests, consents or other communications permitted or required under this Agreement shall be in writing and shall be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first Business Day after being sent by reputable overnight carrier, or on the third Business Day after being sent by registered or certified first class mail (with receipt confirmed), to the following:

| | |
|---|---|
| **If to Sellers:** | **DELPHI CORPORATION**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  President - Delphi Energy & Chassis Systems<br>Fax No.:  248-813-4301 |
| **With a copy to:** | **DELPHI CORPORATION**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:  Deputy General Counsel - Transactional & Restructuring<br>Fax No.:  248-813-2491 |
| **If to Purchasers:** | **UMICORE**<br>Broekstraat 31 Rue du Marais<br>Brussels B-1000<br>Belgium<br>Attn:  Alain Godefroid<br>Fax No.:  (IAC) 32-2-227-7913 |
| **With a copy to:** | **GOODWIN | PROCTER LLP**<br>901 New York Avenue, N.W.<br>Washington, DC 20001<br>Attn:  J. Hovey Kemp<br>Fax No.:  202-346-4444 |

provided, however, if either Party shall have designated a different addressee by notice, then to the last addressee so designated.

89

**13.3.  Assignment.**  This Agreement shall be binding and inure to the benefit of the successors and assigns of each of the Parties, but no rights, obligations, duties or Liabilities of either Party may be assigned without the prior written consent of the other, which shall not be unreasonably withheld.

**13.4.  Entire Agreement.**  This Agreement, together with the Ancillary Agreements and the Purchaser Confidentiality Agreement, represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein.  This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

**13.5.  Waiver.**  Any waiver by any Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) shall be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) shall not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement.  At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein.  Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

**13.6.  Severability.**  Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision shall not affect the validity or enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, shall remain in full force and effect, and the application of such invalid or unenforceable provision, or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable shall be valid and be enforced to the fullest extent permitted by Law.

**13.7.  Amendment.**  This Agreement may only be amended only in writing by duly authorized representatives or officers of Delphi and Umicore.

**13.8.  Expenses.**  Except as otherwise expressly provided in Section 9.3 of this Agreement or an Ancillary Agreement, each Party shall be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

**13.9.  Third Parties.**  Nothing contained in this Agreement, express or implied, is intended to or shall be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

**13.10.  Headings.**  The headings contained in this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

**13.11.  Counterparts.**  More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart shall be deemed an original.  Signatures may be sent by facsimile or other form of electronic transmission.

**13.12.  Governing Law.**  This Agreement shall be construed and enforced in accordance with the laws of the State of New York and, to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**13.13.  Public Announcements.**  Sellers and Purchasers will consult with each other before issuing any press releases or otherwise making any public statements with respect to this Agreement or the transactions contemplated hereby, and shall not issue any press release or make any public statement without mutual consent, except as may be required by Law and then only with such prior consultation, or in connection with the Bankruptcy Cases.

**13.14.  Venue and Retention of Jurisdiction.**  All actions brought, arising out of or related to the transactions contemplated in this Agreement shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction to determine any and all such actions.

**13.15.  Risk of Loss.**  Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business shall be borne exclusively by the Sellers.

**13.16.  Enforcement of Agreement.**  The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached.  It is accordingly agreed that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

**13.17.  Dispute Resolution.**  Sellers and Purchasers will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Transfer Agreement by good faith negotiations by senior management of each party.  If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute.  Within fifteen (15) business days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response.  The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties.  Within fifteen (15) Business Days after such written response, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute.  All reasonable requests for information made by one party to the other will be honored promptly.  All negotiations pursuant to this Section 13.17 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.  In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 13.14 above.

**13.18.  No Right of Setoff.**  Neither party hereto nor any Affiliate thereof may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it hereunder or pursuant to any Ancillary Agreement against any amounts owed hereunder or pursuant to any Ancillary Agreement by such Persons to the other party hereto or any of such other party's Affiliates.

**13.19.  Limitation on Damages.**  NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, INCLUDING ARTICLE 12, IN NO EVENT SHALL PURCHASER OR SELLER BE LIABLE FOR, OR BEAR ANY OBLIGATION IN RESPECT OF, ANY PUNITIVE, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES OF ANY KIND OR

CHARACTER OR ANY DAMAGES RELATING TO, OR ARISING OUT OF, DIMINUTION IN VALUE, LOST PROFITS OR CHANGES IN RESTRICTIONS ON BUSINESS PRACTICES.

**[Signature Pages to Follow]**

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized officers.

<u>**PURCHASERS**</u>:

**UMICORE**  (on behalf of itself and its Affiliates to be signatories hereto)

By:_____
    **Thomas Leysen**
    Chief Executive Officer

By: _____
    **Marc Grynberg**
    Executive Vice President

<u>**SELLERS:**</u>

| | |
|---|---|
| **DELPHI CORPORATION** | **DELPHI AUTOMOTIVE SYSTEMS (HOLDING), INC.** |
| By: _____ | By: _____ |
| **John P. Arle** | **John P. Arle** |
| Vice President and Treasurer | Chief Financial Officer and Treasurer |
| **EXHAUST SYSTEMS CORPORATION** | **ENVIRONMENTAL CATALYSTS, LLC** |
| By: _____ | By: _____ |
| **John P. Arle** | **John P. Arle** |
| Assistant Treasurer | Assistant Treasurer |
| **ASEC MANUFACTURING (ASEC)** | **ASEC SALES (ASEC)** |
| By:   **ENVIRONMENTAL CATALYSTS, LLC** | By:   **ENVIRONMENTAL CATALYSTS, LLC** |

By: _____
**John P. Arle**
Assistant Treasurer

By: _____
**John P. Arle**
Assistant Treasurer

**By:**   **EXHAUST SYSTEMS CORPORATION**

**By:**   **EXHAUST SYSTEMS CORPORATION**

By: _____
**John P. Arle**
Assistant Treasurer

By: _____
**John P. Arle**
Assistant Treasurer

**LIST OF SCHEDULES**

**DESIGNATION**                         **DESCRIPTION**

Schedule A              Sellers' Knowledge
Schedule 1              Detail of Sellers and Purchasers
Schedule 1.3.1          Sales Office Acquired Assets
Schedule 1.3.2.1        Acquired Carved-Out Manufacturing Location Assets
Schedule 1.4.1          Third Party Bailed Assets
Schedule 1.4.4          Excluded Financial Contracts
Schedule 1.4.6          Excluded Intellectual Property
Schedule 1.4.20         Other Excluded Assets
Schedule 1.7            Certain Assigned Contracts
Schedule 3.2.1          Offer of Employment
Schedule 3.2.4          Recent Benefit Announcements
Schedule 4.6.1          Net Working Capital Methodology
Schedule 4.6.2          Adjustments for Changes in Owned PGMs
Schedule 4.6.5          Methodology for Determining Benefits Adjustment
Schedule 4.6.6          Assumed PTO Calculation Methodology
Schedule 4.7.1.1        Closing PGM Inventory Methodology
Schedule 4.8.1          Allocation of Purchase Price
Schedule 4.6.9          U.S. Employee-Related Credit
Schedule 5.1.3          No Violations
Schedule 5.1.5.A        Title to Personal Property
Schedule 5.1.5.C        Other Inventory Locations
Schedule 5.1.5.D        Machinery, Equipment and Capitalized Tools (Value Greater than U.S. $25,000)
Schedule 5.1.6          Litigation
Schedule 5.1.7.A.1      Owned Intellectual Property
Schedule 5.1.7.A.2      Licensed Intellectual Property
Schedule 5.1.7.A.3      Software
Schedule 5.1.7.C        Rights Granted to Third Parties
Schedule 5.1.7.D        Intellectual Property Litigation Claims
Schedule 5.1.7.F        Infringement of Purchased Intellectual Property
Schedule 5.1.8          Insurance
Schedule 5.1.9          Compliance and Permit Exceptions
Schedule 5.1.11         Third Party Consents
Schedule              ~~Absence of Certain Changes~~July Projections
~~5.1.13~~5.1.12
Schedule 5.1.14.A       Listed Contracts
Schedule 5.1.14.B       Listed Contracts - Exceptions
Schedule 5.1.15         Regulatory Matters
Schedule 5.1.16.A       Real Property
Schedule 5.1.16.B       Title Exceptions to Real Property
Schedule 5.1.17.D       Tax Returns
Schedule 5.1.17.G       Other Tax
Schedule 5.1.17.K       Tax Rulings
Schedule 5.1.18         Sale Securities
Schedule 5.1.19.A       Current Employees
Schedule 5.1.19.B       Exceptions to Sellers' Performance
Schedule 5.1.19.C       Benefit Plans
Schedule 5.1.19.C(ii)   Compliance
Schedule 5.1.19.C(iii)  Triggering of Obligations

1

| **DESIGNATION** | **DESCRIPTION** |
|---|---|
| Schedule 5.1.19.C(iv) | Funding of Seller Benefit Plans |
| Schedule 5.1.19.D | Collective Bargaining Agreements |
| Schedule 5.1.19.E | Grievance, Labor Negotiations |
| Schedule 5.1.20 | Environmental |
| Schedule 5.1.22 | Accounts Receivable |
| Schedule 5.2.13 | Shelf Tulsa Collective Bargaining Agreement |
| Schedule 7.2.1 | Fuel Reformer Patents |
| Schedule 7.2.2 | Fuel Reformer Patent License |
| Schedule 7.2.6 | Transition Services Agreement |
| Schedule 7.2.7 | Atmospheric Catalyst License |
| Schedule 7.2.8(i) | Testing Services Agreement – Luxembourg |
| Schedule 7.2.8.(ii) | Testing Services Agreement – Flint |
| Schedule 7.2.9(i) | Canning Supply Agreement Term Sheet – Shanghai |
| Schedule 7.2.9(ii) | Canning Supply Agreement Term Sheet – Clayton |
| Schedule 7.2.10(i) | Toll Manufacturing Agreement Term Sheet – Shanghai |
| Schedule 7.2.10(ii) | Toll Manufacturing Agreement Term Sheet – Clayton |
| Schedule 7.2.10(iii) | Toll Manufacturing Agreement Term Sheet – San Luis Potosi |
| Schedule 7.2.11 | Closing Escrow Agreement |
| ~~Schedule 8.1.6~~ | ~~Currently Contemplated PGM Initiatives~~ |
| Schedule ~~8.1.8~~8.1.7 | Other Current Assets and Liabilities |
| Schedule 8.2 | Counterpart Signature Page to Master Sale and Purchase Agreement |
| Schedule 8.5 | Operation of the Business Pending Closing |
| Schedule 8.8 | Closing Date Assumed PTO Obligations Schedule |
| Annex I | Sample Calculation of Purchase Price Adjustments |

**SCHEDULE 1**

**DETAILS OF SELLERS AND PURCHASERS**

| Manufacturing Facility | Asset/ Stock | Sale Company | Seller | Purchaser |
|---|---|---|---|---|
| San Luis Potosi, Mexico | Asset | | AS Catalizadores Ambientales, S.A. de C.V. (**ASCA**) | Umicore Autocat USA Inc. (USA) or Unimet S.A. de C.V.(Mexico) |
| Port Elizabeth, South Africa | Stock (100%) | Delphi Catalyst South Africa (Proprietary) Ltd. | Delphi Automotive Systems (Holding), Inc. | Umicore Finance Luxembourg S.A. (Luxembourg) |
| Shanghai, China | Asset | N/A | Shanghai Delphi Emission Control Systems Company, Ltd. (China) | UMS (Shanghai) Ltd (China) or Umicore Autocat China Ltd |
| Florange, France | Asset | N/A | Delphi Diesel Systems France SAS | NewCo SAS (France) |
| Clayton, Australia | Asset | N/A | Delphi Automotive Systems Australia Ltd. | Umicore Autocat USA (USA) or UMS Australia Ltd (Australia) |
| Tulsa, Oklahoma | Asset | N/A | Exhaust Systems Corporation; Environmental Catalysts, LLC; ASEC Man and ASEC Sales (**ASEC**)** | Umicore Autocat USA Inc. (USA)<br><br>Umicore[1] |
| Maharashtra, India | Asset | N/A | Delphi Automotive Systems Pvt. Ltd. | To be decided for each agreement what non-Indian Umicore company will take it over |
| | | | | |
| **Technical Centers** | | | | |
| Flint, Michigan | Asset | N/A | ASEC | Umicore Autocat USA Inc. (USA)<br><br>Umicore[1] |
| Bascharage, Luxembourg | Asset | N/A | Delphi Automotive Systems Luxembourg S.A. | NewCo S.A. (Luxembourg) |

---

[1]    All Intellectual Property included in the Acquired Assets shall be acquired by Umicore.

| Manufacturing Facility | Asset/ Stock | Sale Company | Seller | Purchaser |
|---|---|---|---|---|
| | | | | |
| **Sales Offices**\*\*\* | | | | |
| Italy | Asset | N/A | | Local Umicore company |
| Germany | Asset | N/A | | Local Umicore company |
| Japan | Asset | N/A | | Local Umicore company |
| India | Asset | N/A | | Local Umicore company |
| Troy, Michigan | Asset | N/A | | Local Umicore company |

\*\*ASEC Man is 50% owned by Environmental Catalysts, LLC (**EC LLC**) and 50% owned by Exhaust Systems Corporation (**ESC**); ASEC Sales is 50.1% owned by EC LLC and 49.9% owned by ESC.

\*\*\* Assets consist of computers and, in some cases, vehicles. The following employees supporting technical and sales activities are Employees of the Sales Offices: India - 1; Italy – 1; Japan – 2; Troy, MI - 4; and Germany – 1, and would need to be relocated on or before the Closing Date.

Document comparison done by Workshare DeltaView on Wednesday, August 15, 2007
2:45:34 PM

| Input: | |
|---|---|
| Document 1 | file://C:/Documents and Settings/bz9z0l/My Documents/Winword/Margaret/Miscellaneous/PEGASUS/MSA/UMICORE/FINAL/MSA Umicore-Delphi 060507 - FINAL-Bankruptcy.doc |
| Document 2 | file://C:/Documents and Settings/bz9z0l/My Documents/Winword/Margaret/Miscellaneous/PEGASUS/MSA/UMICORE/MSA Umicore-Delphi 0081507 - POST-AUCTION REVISIONS.doc |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 84 |
| Deletions | 79 |
| Moved from | 6 |
| Moved to | 6 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 175 |

## SCHEDULE 4.6.9

## U.S. EMPLOYEE-RELATED CREDIT

**Tulsa Severance Reimbursement**:

For each employee on the Tulsa payroll, who becomes a Hired Current Employee in excess of 66-2/3% of the aggregate number of active (as of the Closing Date) hourly and salaried employees at the Business' Tulsa, Oklahoma location (which, in no event, shall be greater than 295 total employees), Umicore shall be entitled to a U.S. Employee-Related Credit equal to $52,000 per Hired Current Employee up to a maximum of 100 additional Hired Current Employees.

**Flint/Troy Severance Reimbursement**:

For each U.S. Corporate Employee or employee at the Business' Michigan location that becomes a Hired Current Employee, Umicore  shall be entitled to a U.S. Employee-Related Credit equal to $75,000 per Hired Current Employee up to a maximum of 28 Hired Current Employees.

**SCHEDULE 4.8.1**

**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

|  |  | **Purchase Price Allocation<br>$ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V.  Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd.  Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of  Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.4 |
|  | **Total** | 75.0 |

# EXHIBIT E

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Fumio Koma | Baker & McKenzie | The Prudential Tower | 13-10 Nagatacho 2-Chome | Chiyoda | Tokyo | 100-0014 | Japan | Counsel for Tosch Corporation |
| DG Englebrecht | Impala Platinum Limited | No. 2 Fricker Road | | Illovo | | 2196 | South Africa | Marketing Executive for Impala Platinum Limited |
| Andrew J. Flame; David P. Primack | Drinker, Biddle & Reath LLP | 1100 N. Market Street | Suite 1000 | Wilmington | DE | 19801 | | Counsel for QEK Global Solutions (US) LP |
| Ashok Kumar | A-1 Specialized Services & Supplies, Inc. | P.O. Box 270 | | Croydon | PA | 19021 | | Owner of A-1 Specialized Services & Supplies, Inc. |
| Barbara Lee Caldwell | Hebert Schenk, P.C. | 4742 North 24th Street | Suite 100 | Phoenix | AZ | 85016 | | Counsel for Maricopa County Treasurer |
| Dennis J. Drebsky; William Thomas | Nixon Peabody LLP | 437 Madison Avenue | | New York | NY | 10022 | | Counsel for Corning Incorporated |
| Douglas C. Bernstein | Plunkett Cooney PC | 38505 Woodward Avenue | | Bloomfield | MI | 48304 | | Co-Counsel for Denso International America, Inc. |
| Frank F. Velocci | Drinker, Biddle & Reath LLP | 140 Broadway | 39th Floor | New York | NY | 10005 | | Counsel for QEK Global Solutions (US) LP |
| Jay Selanders | Kutak Rock LLP | 1010 Grand Blvd. | Suite 500 | Kansas City | MO | 64106-2220 | | Counsel for Chrysler |
| Jeffrey R. Gleit; David S. Rosner; Adam L. Schiff; Daniel A. Fliman | Kasowitz, Benson, Torres & Friedman LLP | 1633 Broadway | | New York | NY | 10019 | | Counsel for Contrarian |
| Marc E. Richards | Blank Rome LLP | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174-0208 | | Co-Counsel for Denso International America, Inc. |
| Mike O'Hayer | Law Offices of Michael O'Hayer | 22 North Walnut St. | | West Chester | PA | 19380 | | Counsel for A-1 Specialized Services & Supplies, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481

Page 1 of 1

8/23/2007 1:33 PM
Catalyst Reply Special Parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| 3m Auto Div Ceramics Mat Dept | | 10746 Innovation Rd Bldg 17 1 | | Cottage Grove | MN | 55016 | |
| A 1 Specialized Services | | 2707 State Rd | | Croydon | PA | 19021-0270 | |
| A 1 Specialized Services & Supplies Inc | | PO Box 270 | | Croydon | PA | 19021 | |
| A Tech Inc | | PO Box 2704 | | Tulsa | OK | 74107 | |
| A W Chesterton Co | | PO Box 3351 | | Boston | MA | 02241 | |
| Aberdeen Dynamics Supply Inc | | 17717 E Admiral Pl | | Tulsa | OK | 74158-2510 | |
| Aberdeen Dynamics Supply Inc | | Dept 1160 | | Tulsa | OK | 74182 | |
| Academic Press | | PO Box 861213 | | Orlando | FL | 32886-1213 | |
| Acctknowledge | | PO Box 8039 | | Tulsa | OK | 74101-8039 | |
| Accurate Threaded Fasteners Inc Atf Inc | Pia N Thompson Sachnoff & Weaver Ltd | 10 S Wacker Dr | | Chicago | IL | 60606-7507 | |
| Ace American Insurance Company | Margery N Reed Esq Duane Morris Llp | 30 S 17th St | | Philadelphia | PA | 19103-4196 | |
| Acrison Inc | | 20 Empire Blvd | | Moonachie | NJ | 07074 | |
| Acrison Inc | | 20 Empire Blvd | | Moonachie | NJ | 07074-1303 | |
| Acrison Inc | | PO Box 380 | | Moonachie | NJ | 07074 | |
| Ad Tape & Label Co Inc | | W140 N9504 Fountain Blvd | PO Box 637 | Menomonee Falls | WI | 53052-0637 | |
| Adair | Jason M | 1118 S Spinnaicer Dr | | Oologah | OK | 74053 | |
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 | |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 | |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 | |
| Adept Technology Inc | | PO Box 200176 | | Dallas | TX | 75320-0176 | |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 | |
| Aerotek Inc | | 3689 Collection Ctr Dr | | Chicago | IL | 60693 | |
| Aetna Us Healthcare | Able Gonzales | 2777 Stemmons Freeway | Ste 300 | Dallas | TX | 75207 | |
| Aetna Us Healthcare | Able Gonzales | 2778 Stemmons Freeway | Ste 301 | Dallas | TX | 75208 | |
| Ai Shreveport Llc | Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 | |
| Air Cleaning Technologies Inc | | 1300 W Detroit | | Broken Arrow | OK | 74012 | |
| Air Liquide America Corporation | | 1319 N Peoria Ave | | Tulsa | OK | 74106-4948 | |
| Air Liquide America Corporation | | PO Box 200269 | | Houston | TX | 77216-0269 | |
| Airgas Inc | | 31 N Peoria | | Tulsa | OK | 74101 | |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 | |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 | |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 | |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 | |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 | |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 | |
| Aldrich Chemical Company | | PO Box 951524 | | Dallas | TX | 75395-1524 | |
| Alex Stewart Assayers Inc | | 472 Westfield Ave | | Clark | NJ | 07066 | |
| Alfa Aesar | | PO Box 88894 | | Chicago | IL | 60695-1894 | |
| Alfred H Knight Na | | PO Box 3504 | 130 Tradd St | Spartanburg | SC | 29304 | |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 | |
| All American Fire Systems Inc | | 21125 East 480 Rd | | Claremore | OK | 74017 | |
| Allen And Associates Inc | | PO Box 471083 | | Tulsa | OK | 74147 | |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 | |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 | |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 | |
| Allied Electronics Inc | Co Receivables Management Services | PO Box 5126 | | Timonium | MD | 21094 | |
| Allied Electronics Inc | | 7410 Pebble Dr | PO Box 2325 | Ft Worth | TX | 76113-2325 | |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 | |
| Alpha Electrical Services | | 1877 N 105th E Ave | | Tulsa | OK | 74116 | |
| American Electric Power | | PO Box 24424 | | Canton | OH | 44701-4424 | |
| American International Group Inc And Its Related Entities | Aig Law Department Bankruptcy David A Levin Esq | 70 Pine St 31st Fl | | New York | NY | 10270 | |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 | |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 1 of 29                    8/23/2007 1:33 PM
                                                                          Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Andrew J Alder | | PO Box 52157 | | Tulsa | OK | 74152 | |
| Android Industries Llc | Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 | |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Anixter | | 3148 S 108th E Ave | Ste 120 | Tulsa | OK | 74146 | |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 | |
| Aqualon Company | | PO Box 962576 | | Atlanta | GA | 31193-2576 | |
| Arag | Michelle Crump | 4501 Forbes Blvd | | Lanham | MD | 20706 | |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 | |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 | |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 | |
| Arnold Transportation Service Inc | | 1002 Paysphere Circle | | Chicago | IL | 60674 | |
| Arrow Star Discount | | 6087 Buford Hwy Ste G | | Norcross | GA | 30071 | |
| Asec Manufacturing | | Eje 128 M/10 215 Cp 78395 | Zona Industrial Del Potosi | San Luis Potosi | | | Mexico |
| Asec Manufacturing | | PO Box 329 Govan Mbeki Ave | | Port Elizabeth | | 60000 | South Africa |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 | |
| Asia Development Capital | William Zelke Director | 199 Pierce | Ste 202 | Birmingham | MI | 48009 | |
| Asm Capital As Assignee Of Servotech Engineering | Asm Capital | 7600 Jericho Turnpike Ste 302 | | Woodbury | NY | 11797 | |
| Assembly Supplies | | 2245 Enterprise St Ste 100 | | Escondido | CA | 92029 | |
| At&t | | 5501 Lbj Freeway 11th Fl | | Dallas | TX | 75265 | |
| Atf Trucking Llc | | Box 3176 | PO Box 8500 | Philadelphia | PA | 19178-3176 | |
| Atlantic Automotive Components Llc | Attn Michael Sharnas Visteon Corporation | One Village Dr | | Van Buren Township | MI | 48111 | |
| Atwell Roofing Company | | 5528 S 49th W Ave | | Tulsa | OK | 74107 | |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 | |
| Automated Equipment Services Inc | | 2335 W Vancouver St | | Broken Arrow | OK | 74012 | |
| Automotive Technologies International Inc | Attn Christopher J Battaglia Esq & Halperin Battaglia Raicht Ll | 555 Madison Ave 9th Fl | | New York | NY | 10019 | |
| Automotive Technologies International Inc | Attn Christopher J Battaglia Esq Ju Halperin Battaglia Raicht Ll | 555 Madison Ave 9th Fl | | New York | NY | 10019 | |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 | |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 | |
| Barnstead Thermolyne | | PO Box 797 | | Dubuque | IA | 52004-0797 | |
| Barnstead/thermolyne | | PO Box 797 | | Dubuque | IA | 52004-0797 | |
| Barnstead/thermolyne | | PO Box 96752 | | Chicago | IL | 60693 | |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 | |
| Barton Construction Co Inc | | 2702 E N Sheridan | | Tulsa | OK | 74115-2321 | |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 | |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 | |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 | |
| Beckert & Heister | | 21 Berger Rd | PO Box 1885 | Saginaw | MI | 48605 | |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 | |
| Bella Gruver | | 11242 S Nandina Ave | | Jenks | OK | 74037 | |
| Bellotte | David | 324 E 6th St | | Claremore | OK | 74017 | |
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 | |
| Benteler Automotive | | 320 Hall St Sw | | Grand Rapids | MI | 49507 | |
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 | |
| Best Companies Inc | | 7301 N Classen Blvd | | Oklahoma City | OK | 73116 | |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 | |
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| Black Box Network Services | | Sds 12 0976 | PO Box 86 | Minneapolis | MN | 55486-0976 | |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 | |
| Blue Care Network | | 20500 Civic Ctr Dr | | Southfield | MI | 48076 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 2 of 29                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 | |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 | |
| Boise Cascade Office Prod | | PO Box 92735 | | Chicago | IL | 60675-2735 | |
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 | |
| Boreskov Institure Of Catalysts | C/o American Express Bank | 3 Wfc 200 Vesey St | | New York | NY | 10284-2200 | |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 | |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 | |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 | |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 | |
| Boydston Company | | 507 South Main | Ste 601 | Tulsa | OK | 74103 | |
| Boyle Services Inc | | 701 W 41st | | Tulsa | OK | 74107 | |
| Boyle Services Inc | | 701 W 41st St | | Tulsa | OK | 74107 | |
| Bradley Supply Company | | 2250 W 57th St | | Chicago | IL | 60636 | |
| Bradley Supply Company | | PO Box 29096 | | Chicago | IL | 60629 | |
| Brainerd Chemical Co Inc | | PO Box 470010 | | Tulsa | OK | 74147-0010 | |
| Brainerd Chemical Co Inc | | PO Box 52160 | | Tulsa | OK | 74152-0160 | |
| Brenntag Southwest Inc | | 206 E Morrow | | Sand Springs | OK | 74063 | |
| Brenntag Southwest Inc | | PO Box 970230 | | Dallas | TX | 75397-0230 | |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 | |
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 | |
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 | |
| Brinks Incorporated | | File No 52005 | | Los Angeles | CA | 90074-2005 | |
| Brinks Incorporated | | PO Box 651696 | | Charlotte | NC | 28265-1696 | |
| Brown & Sons Auto | | 1720 Davison Rd | | Flint | MI | 48506 | |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 | |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 | |
| Bruker Axs Inc | | PO Box 689896 | | Milwaukee | WI | 53268-9896 | |
| Bruker Optics | | 19 Fortune Dr | | Billerica | MA | 01821 | |
| Bsi Inspectorate Precious Metals | | 12000 Aero Space St 200 | | Houston | TX | 77034 | |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 | |
| Builders Overhead Cranes | | 1924 S 49th West Ave | | Tulsa | OK | 74107 | |
| Builders Overhead Cranes & Sierra Liquidity Fund | Sierra Liquidity Fund | 2699 White Rd Ste 255 | | Irvine | CA | 92614 | |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 | |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 | |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 | |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 | |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 | |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 | |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 | |
| Byson Llc | | PO Box 1124 | | Sapulpa | OK | 74067 | |
| C & L Development Corporation | | 12930 Saratoga Ave Ste D6 | | Saratoga | CA | 95070 | |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 | |
| Cadence Innovation Llc And Patent Holding Company | Dennis J Connolly Esq Alston & Bird Llp | 1201 W Peachtree St | | Atlanta | GA | 30309-3424 | |
| Cadence Innovation Llc Successor In Interest To Patent Holding Company | Dennis J Connolly Esq Alston & Bird Llp | 1201 W Peachtree St | | Atlanta | GA | 30309-3424 | |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 | |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 | |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)    Page 3 of 29    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 | |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 | Canada |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 | Canada |
| Canterbury Mark | | 5806 East 35th St | | Tulsa | OK | 74135 | |
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 | |
| Capital Works | John Mueller | 1111 Superior Ave E | | Cleveland | OH | 44101 | |
| Car Sound Exhaust | Daniel Paolone Vice President | 22961 Arroyo Vista | | Rancho Santa Margarita | CA | 92688 | |
| Carlton Bates Company | | 5405 S 125th E Ave | | Tulsa | OK | 74146 | |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 | |
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 | |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 | |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 | |
| Catalytic Solutions | Charles F Call Chief Executive Officer | 1640 Fiske Pl | | Oxnard | CA | 93033 | |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 | |
| Catoosa Auto Repair Inc | | 104 W Elm | | Catoosa | OK | 74015 | |
| Catoosa Flowers | | 603 S Cherokee | PO Box 726 | Catoosa | OK | 74015 | |
| Catoosa Flowers | | 650 S Cherokee St | PO Box 726 | Catoosa | OK | 74015 | |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 | |
| Celestica Inc And Its Subsidiaries | Attn Benjamin Mintz Kaye Scholer Llp | 425 Pk Ave | | New York | NY | 10022 | |
| Chad Dougherty | Richard D Gibbon & Associates Attn Zachary T Barron Esq | 1611 South Harvard | | Tulsa | OK | 74112 | |
| Charlies Trailer Sales & Service | | 12996 E Reading | | Tulsa | OK | 74116 | |
| Charlies Trailer Sales & Service | | PO Box 691682 | | Tulsa | OK | 74169-1682 | |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 | |
| Chase | Debra L | 329 N Oak St | | Nowata | OK | 74048 | |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 | |
| Chemical Abstracts Service | | PO Box 82228 | | Columbus | OH | 43202-0228 | |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 | |
| Cherokee Hose & Supply Co | | PO Box 1580 | | Oakhurst | OK | 74050 | |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 | |
| Cheyenne Brightstore | Kerri Deinhart | 10210 Highland Manor Dr Ste 300 | | Tampa | FL | 33610 | |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 | |
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 | |
| Cigna | Charita Scruggs | 6600 E Campus Circle Dr3294 | Ste 400 | Irving | TX | 75063 | |
| Cimbar Performance Minerals | | 25 Old Riverroad | | Cartersville | GA | 30120 | |
| Cimbar Performance Minerals | | 49 0 Jackson Lake Rd | | Chatsworth | GA | 30705 | |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 | |
| Cintas | | PO Box 691260 | | Tulsa | OK | 74134 | |
| Cintas First Aid | | PO Box 691260 | | Tulsa | OK | 74134 | |
| Cit Of Tulsa Rogers County Port Authority | | 5350 Cimarron Rd | | Catoosa | OK | 74015 | |
| Citicorp | | PO Box 7247 0322 | | Philadelphia | PA | 19170-0322 | |
| Citicorp Vendor Finance Inc | | 1800 Overdrive Ctr | | Moberly | MO | 65270 | |
| Citicorp Vendor Finance Inc | | PO Box 728 | | Park Ridge | NJ | 07565 | |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 | |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 | |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 | |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 | |
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 | |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 | |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 | |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 4 of 29                                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 | |
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 | |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 | |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 | |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 | |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 | |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 | |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 | |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn | MI | 48126 | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 | |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 | |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 | |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 | |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 | |
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 | |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 | |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 | |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 | |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 | |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 | |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 | |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 | |
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 | |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 | |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 | |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 | |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 | |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 | |
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 | |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 | |
| City Of Laredo Tx | City Of Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 | |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 | |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 | |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 | |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 | |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 | |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 | |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 | |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 | |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 | |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 | |
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 | |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 | |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 | |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 | |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 | |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 | |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 | |
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 | |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 | |
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 | |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 | |
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 | |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 | |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 | |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 | |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 | |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 | |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterbury | CT | 06723 | |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 | |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 | |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 | |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 | |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 | |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 | |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 | |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 | |
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 | |
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 | |
| Clientele | Na | 8100 Sw Nyberg Rd | | Tualatin | OR | 97062 | |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 | |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 | |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 | |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 | |
| Cole Parmer Instrument Co | | 13927 Collections Ctr Dr | | Chicago | IL | 60693 | |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 | |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 | |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 | |
| Colorado Department Of Revenue | | 1375 Sherman St. | | Denver | CO | 80261-0006 | |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 | |
| Comal Co Tx | Comal Co Tax Assessor / Collector | 311445 | | New Braunfels | TX | 78131 | |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 | |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 | |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 | |
| Community Care Behavioral Health | Terry Stover | 218 W 6th St | | Tulsa | OK | 74119 | |
| Communitycare Hmo Inc | | 218 W 6th St | | Tulsa | OK | 74119 | |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 | |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 | |
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 | |
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 | |
| Connelly | Larry | 4703 469th W Ave | | Jennings | OK | 74038 | |
| Consolidated Plastics Co Inc | | 8181 Darrow Rd | | Twinsburg | OH | 44087-9822 | |
| Consolidated Plastics Company Inc | | 8181 Darrow Rd | | Twinsburg | OH | 44087-2375 | |
| Container Supply Inc | | 4400 N Cooper | | Oklahoma City | OK | 73118-8004 | |
| Container Supply Inc | | PO Box 18224 | | Oklahoma City | OK | 73154-0224 | |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 | |
| Contrarian Funds Llc As Assignee Of Aramark Uniform & Career Apparel Inc Dba Aramark Uniform Services And | Attn Alpa Jimenez C O Star Source Management Services | 411 W Putnam Ave Ste 225 | | Greenwich | CT | 06830 | |
| Control Dynamics Inc | | PO Box 94190 | | Oklahoma City | OK | 73143 | |
| Control Masters Inc | C/o Hinsdale Bank & Trust | PO Box 130 | | Hinsdale | IL | 60521 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                          Page 6 of 29                                          8/23/2007 1:33 PM
                                                                                                                        Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Control Masters Inc | | 5235 Katrine Ave | | Downers Grove | IL | 60515 | |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 | |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 | |
| Corning Incorporated | Attn Corporate Secretary | One Riverfront Plz | | Corning | NY | 14831 | |
| Corning Incorporated | Ron Rogers | 50 W Big Beaver Rd | | Troy | MI | 48084 | |
| Corning Incorporated | | Ap 01 E8b | | Corning | NY | 14831 | |
| Corp Express Po Box 95187 | | PO Box 95187 | | Chicago | IL | 60694-5187 | |
| Corporate Express Inc | | PO Box 71411 | | Chicago | IL | 60694-1411 | |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 | |
| Corporation Scientifique Claisse | Parc Technolgique De Quebec | 350 Rue Franquet Ste 40 | | Sainte Foy | QC | G1P 4P3 | Canada |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 | |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 | |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 | |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 | |
| Cpi Denver | | Dept 33418 | PO Box 39000 | San Fransisco | CA | 94139-3418 | |
| Cpi International | | 5580 Skylane Blvd | | Santa Rosa | CA | 95403 | |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 | |
| Crown Credit Company | Attn Rodney J Hinders Esq | 115 N Main St | | New Bremen | OH | 45869 | |
| Crown Credit Company | | 44 S Washington St | | New Bremen | OH | 45869 | |
| Crown Credit Company | | PO Box 640352 | | Cincinnati | OH | 45264-0352 | |
| Culligan Of Tulsa | | PO Box 55506 | | Tulsa | OK | 74155-0506 | |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 | |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 | |
| Cybertrol Engineering Llc | | 3455 Plymouth Blvd | | Plymouth | MN | 55447 | |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Cyr | Pamela A | PO Box 2785 | | Claremore | OK | 74018 | |
| D2t America Inc | | 44990 Vic Wertz Dr | | Clinton Township | MI | 48036 | |
| Daimlerchrysler Corporation | Attn Nancy Broyles Cims 484 04 10 | 800 Chrysler Dr | | Auburn Hills | MI | 48326-2757 | |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 | |
| Daniel L Bowers Co Inc | | 1680 S Livernois | | Rochester Hills | MI | 48307 | |
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 | |
| David A Matthews | | 1317 S 77th E Ave | | Tulsa | OK | 74112 | |
| David Matthews | David Matthews | 1317 S 77th E Ave | | Tulsa | OK | 74112 | |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 | |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 | |
| Dba Tri Pro Consulting | David Milum Ii | 202 B Pringle Circle | | Green Cove Springs | FL | 32043 | |
| Dc Office Of Tax & Revenue | Corporation Estimated Franchise Tax | PO Box 96019 | | Washington | DC | 20090-6019 | |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 | |
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 | |
| Dci Communications Inc | | PO Box 1113 | | Catoosa | OK | 74015-1113 | |
| De Verges & Associates | | 1343 East 35th Pl | | Tulsa | OK | 74105 | |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 | |
| Dearborn Countyin | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 | |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 | |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 | |
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                        Page 7 of 29                                        8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 | |
| Dell Computer | | One Dell Way | | Round Rock | TX | 78682 | |
| Dell Financial Services/payment Pro | | 99355 Collection Ctr Dr | | Chicago | IL | 60693 | |
| Delphi Automotive Systems Llc | | 5725 Delphi Dr | | Troy | MI | 48098 | |
| Delphi Automotive Systems Llc | | 5725 Delphi Dr | M/c 483 400 603 | Troy | MI | 48098-2815 | |
| Delphi Corporation | C/o Lesley Marcott | 5825 Delphi Dr | | Troy | MI | 48098 | |
| Delphi Corporation | | 5725 Delphi Dr | | Troy | MI | 48098-2815 | |
| Delphi Corporation | | Dept 78317 | PO Box 78000 | Detroit | MI | 48278-0137 | |
| Delphi Diesel Systems France Sas | | Usine De Florange | Bp 80029 | Florange | | | France |
| Delphi Energy & Engine Mgmt Aka Delphi Automotive Systems Llc | | 5820 Delphi Dr | | Troy | MI | 48501 | |
| Delphi Energy & Engine Mgmt Aka Delphi Automotive Systems Llc | | PO Box 70020 | | Chicago | IL | 60673 | |
| Delphi Energy & Engineeri Aka Delphi Automotive Systems Llc | | 1300 N Dort Hwy | | Flint | MI | 48556 | |
| Delta Electrical Enterprises Inc | | PO Box 582683 | | Tulsa | OK | 74158-2683 | |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 | |
| Denso International America Inc | Attn Carol Sowa | 24777 Denso Dr | | Southfield | MI | 48033 | |
| Denso International America Inc | | PO Box 5133 | | Southfield | MI | 48086-5133 | |
| Denso International America Inc | | PO Box 88812 | | Chicago | IL | 60695-1812 | |
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 | |
| Department Of Environmental Quality | | PO Box 2036 | | Oklahoma City | OK | 73101 | |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 | |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 | |
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 | |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 | |
| Dhl Danzas Air & Ocean | | PO Box 7247 6745 | | Philadelphia | PA | 19170-6745 | |
| Dhl Express Usa Inc | | PO Box 4723 | | Houston | TX | 77210-4723 | |
| Digi Tech Solutions | | 102 East 91st St North | | Sperry | OK | 74073 | |
| Direct Communications | | 10827 E South Memorial | | Tulsa | OK | 74133 | |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 | |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 | |
| Dispensers Optical Service | | PO Box 35000 | | Louisville | KY | 40232 | |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 | |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 | |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 | |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 | |
| Dougherty Chad | Richard D Gibbon & Associates | 1611 South Harvard | | Tulsa | OK | 74112 | |
| Draiswerke Inc | | 40 Whitney Rd | | Mahwah | NJ | 07430 | |
| Driscoll Automatic Control Co | | PO Box 52583 | | Tulsa | OK | 74152-0583 | |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 | |
| Dubose Donna | | 8917 N 138 E Ave | | Owasso | OK | 74055 | |
| Dun & Bradstreet | | 75 Remittance Dr Ste 1793 | | Chicago | IL | 60675-1793 | |
| Duncan Equipment Co | | PO Box 268988 | | Oklahoma City | OK | 73126-8988 | |
| Dupont Company | | PO Box 93244 | | Chicago | IL | 60673-3244 | |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 | |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 | |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 | |
| Ecd Inc | | 4287 A Se International Way | | Milwaukie | OR | 97222-8825 | |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 | |
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 | |
| Elcometer Inc | | 1893 Rochester Industrial Dr | | Rochester Hills | MI | 48309-3342 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Elcometer Instruments Inc | | 1893 Rochester Industrial Dr | | Rochester Hills | MI | 48309 | |
| Electromotive Inc | Robert W Faris C O Nixon & Vanderhye Pc | 901 N Glebe Rd 11th Fl | | Arlington | VA | 22203 | |
| Electromotive Inc | Robert W Faris C O Nixon & Vanderhye Pc | 901 North Glebe Rd 11th Fl | | Arlington | VA | 22203 | |
| Electronic Controls Design | | 4287 A S E International Way | | Milwaukie | OR | 97222-8825 | |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 | |
| Emed Company Inc | | PO Box 369 | | Buffalo | NY | 14240 | |
| Emitec | | PO Box 101416 | | Atlanta | GA | 30392 | |
| Emitec Inc | Diane Dziewicki | 3250 University Dr Ste 100 | | Auburn Hills | MI | 48326-2391 | |
| Endress & Hauser | | PO Box 663674 | | Indianapolis | IN | 46266-3674 | |
| Endress Hauser | | PO Box 663674 | | Indianapolis | IN | 46266-3674 | |
| Engine Control Systems | | 165 Pony Dr | | Newmarket | ON | L3Y7V1 | Canada |
| Environmental Protection Agency | Marcus C Peacock | Deputy Administrator | Ariel Rios Building 1200 Pennsylvania Ave Nw | Washington | DC | 20460 | |
| Environmental Protection Agency | | Ariel Rios Building | 1200 Pennsylvania Ave Nw | Washington | DC | 20460 | |
| Environmental Protection Agency Region 1 | | 1 Congress St Ste 1100 | | Boston | MA | 02114-2023 | |
| Environmental Protection Agency Region 10 | | 1200 Sixth Ave | | Seattle | WA | 98101 | |
| Environmental Protection Agency Region 2 | | 290 Broadway | | New York | NY | 10007-1866 | |
| Environmental Protection Agency Region 3 | | 1650 Arch St | | Philadelphia | PA | 19103-2029 | |
| Environmental Protection Agency Region 4 | | Atlanta Federal Ctr | 61 Forsyth St Sw | Atlanta | GA | 30303-3104 | |
| Environmental Protection Agency Region 5 | | 77 West Jackson Blvd | | Chicago | IL | 60604-3507 | |
| Environmental Protection Agency Region 6 | | Fountain Pl 12th Fl Ste 1200 | 1445 Ross Ave | Dallas | TX | 75202-2733 | |
| Environmental Protection Agency Region 7 | | 901 North 5th St | | Kansas City | KS | 66101 | |
| Environmental Protection Agency Region 8 | | 999 18th St Ste 500 | | Denver | CO | 80202-2466 | |
| Environmental Protection Agency Region 9 | | 75 Hawthorne St | | San Fransisco | CA | 94105 | |
| Epa Hazardous Substance | | Superfund York Oil Site | Us Epa Reg Ii Superfund Acct PO Box 360188m | Pittsburgh | PA | 15251 | |
| Epa Hazardous Substance Sf | | Reliable Equipment Mi | Acct No 05297t126a Site Le PO Box 70753 | Chicago | IL | 60673 | |
| Epa Hazardous Substance Sf Reliable Equipment Mi | | Acct No 05297t126a Site Le | PO Box 70753 | Chicago | IL | 60673 | |
| Epa Hazardous Substance Superf | | C O Mellon Bank Rm 153 2713 | 3 Mellon Bank Ctr | Pittsburgh | PA | 15259 | |
| Epa Hazardous Substance Superfund | | PO Box 360582m | | Pittsburgh | PA | 15251 | |
| Epa Hazardous Substance Superfund | | Us Epa Rgn Iv Superfund Acctg | PO Box 100142 | Atlanta | GA | 30384 | |
| Epa Hazardous Substance Superfund Epa Region Iii | | Superfund Acctg PO Box 360515 | | Pittsburgh | PA | 15251 | |
| Epa Hazardous Substance Superfund York Oil Site | | Us Epa Reg Ii Superfund Acct | PO Box 360188m | Pittsburgh | PA | 15251 | |
| Epa Tri Data Processing | | PO Box 1513 | | Lantham | MD | 20703 | |
| Equity Corporate Housing | Jonathan W Young & Jeffrey L Gansbe Wildman Harrold Allen & Dixon Llp | 225 W Wacker Dr Ste 3000 | | Chicago | IL | 60606 | |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 | |
| Essexville City Of Bay | Essexville City Hall | 1107 Woodside Avenue | | Essexville | MI | 48732-1236 | |
| Etas Inc | Attn Joe Zurawski | 3021 Miller Rd | | Ann Arbor | MI | 48103 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 9 of 29                                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Etas Inc | | 2155 Jackson Ave | | Ann Arbor | MI | 48103 | |
| Etas Inc | | PO Box 95343 | | Chicago | IL | 60694-5343 | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 | |
| Evelyn R Land | | 7370 E 38th St | | Tulsa | OK | 74145-3261 | |
| Evergreen Scientific | | 2300 E 49th | | Los Angeles | CA | 90058 | |
| Evergreen Scientific | | PO Box 58248 | | Los Angeles | CA | 90058 | |
| Eversharp Tool Inc | | 11350 E 60th Pl | | Tulsa | OK | 74146-6817 | |
| Express Test Corporation | | 3227 East 31st St Ste 102 | | Tulsa | OK | 74105-2443 | |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 | |
| Faison Office Products | | PO Box 1116 | Dept A | Englewood | CO | 80150-1116 | |
| Fastenal Company | | 10110 E 54th St | | Tulsa | OK | 74146 | |
| Fastenal Company | | PO Box 978 | | Winona | MN | 55987-0978 | |
| Fauber Freightways Inc | | 322 Kalorama St | | Staunton | VA | 24401 | |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 | |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 | |
| Federal Corporation | | 11361 E 61st | | Broken Arrow | OK | 74012 | |
| Federal Corporation | | PO Box 2600 | | Oklahoma City | OK | 73101 | |
| Federal Express Corporation | Attn Connie Snow | Dangerous Goods Administration | | Memphis | TN | 38125-8800 | |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 | |
| Fenton Office Mart | | 111 W Mcelroy | | Stillwater | OK | 74075 | |
| Festo | | PO Box 1355 | | Buffalo | NY | 14240 | |
| Fideris Inc | | 7607 Eastmark Dr Ste 102 | | College Station | TX | 77840 | |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 | |
| First American Capital Mgmt | Attn Dianne Evert | 3000 Lakeside Dr Ste 200n | | Bannockburn | IL | 60018 | |
| First American Capital Mgmt Group | | 527 Marquette Ave South | 1600 Rand Tower | Minneapolis | MN | 55402 | |
| Fisher Scientific | | Acct 017570 002 | PO Box 404705 | Atlanta | GA | 30384-4705 | |
| Flemings Comfort Footware | | 5914 South Lewis | | Tulsa | OK | 74105 | |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 | |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 | |
| Flolo Corporation The | | 1563 Valencia Court | | Calumet City | IL | 60409-5401 | |
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 | |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 | |
| Flowserve | | PO Box 972157 | | Dallas | TX | 75397-2157 | |
| Fluid Specialties | | Department 1160 | | Tulsa | OK | 74182 | |
| Fluke Corporation | | 7272 Collection Ctr Dr | | Chicago | IL | 60693 | |
| Flymax Corporation | Charles Hsu | No 12 822 Ln Kao Shi Rd | Yang Mei Cheng | Taoyuan | | | Taiwan Province Of China |
| Foley & Lardner Llp | Daljit Doogal | 500 Woodward Ave | Ste 2700 | Detroit | MI | 48226 | |
| Fomac Inc | | 2621 N Iroquois Ave | PO Box 6217 | Tulsa | OK | 74106-2431 | |
| Ford Motor Company | Jonathan S Green Miller Canfield Paddock & Stone Plc | 150 W Jefferson Ave Ste 2500 | | Detroit | MI | 48226 | |
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 | |
| Forsyth Twp Marquette | Forsyth Township Board- Bonnie Filizetti Hartzell Clerk | 86 S Blue Lake Road | | Gwinn | MI | 49841 | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 | |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 | |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 | |
| Frauenthal Holding Ag | Dr Winfried Braumann Ceo | Prinz Eugen Strabe 30/4a | A 1010 | Vienna | | | Austria |
| Froude Hofmann | | PO Box 601054 | | Charlotte | NC | 28260-1054 | |
| Froude Hofmann Inc | | 45225 Polaris Ct | | Plymouth | MI | 48170 | |
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 | |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 | |
| Furnace Parts Llc | | 1648 St Clair Ave | | Cleveland | OH | 44114 | |
| Furnace Parts Llc | | Slot 30245 | PO Box 66973 | Chicago | IL | 60666-0973 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 10 of 29                    Catalyst Sale Motion special parties

8/23/2007 1:33 PM

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Gable & Gotwals | | 1100 Oneok Plaza | 100 West Fifth St | Tulsa | OK | 74103-4217 | |
| Gardner Denver | | PO Box 956236 | | St Louis | MO | 63195-6236 | |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 | |
| Ge Consumer & Industrial F K A Ge Supply | Michael B Bach Esq | 11256 Cornell Pk Dr Ste 500 | | Cincinnati | OH | 45242 | |
| Ge Consumer & Industrial Fka Ge Supply | Michael B Bach Esq | 11256 Cornell Pk Dr Ste 500 | | Cincinnati | OH | 45242 | |
| Ge Plastics | Attn Val Venable | 9930 Kincey Ave | | Huntersville | NC | 28078 | |
| Ge Polymershapes | Attn Val Venable C O Ge Plastics | 9930 Kincey Ave | | Huntersville | NC | 28078 | |
| Ge Supply | | 2600 C West Albany | | Broken Arrow | OK | 74012 | |
| Gellco Clothing & Shoes Inc | | 809 S Detroit | | Tulsa | OK | 74120 | |
| General Electric Capital Corp | Attn Uri Sky C/o Ge Capital Solutions Vendor Fin | 1010 Thomas Edison Blvd Sw | | Cedar Rapids | IA | 52404 | |
| General Motors Corporation | Eag Disbursement Services | PO Box 1567 | | Flint | MI | 48501-1567 | |
| General Motors Corporation | Gm Plats Limited | PO Box 1137 | | Port Elizabeth | | 6000 | South Africa |
| General Motors Corporation | Powertrain Division | 777 Joslyn Ave | | Pontiac | MI | 48340-2925 | |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 | |
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 | |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 | |
| Gfs Chemicals Inc | | Dept L1694 | | Columbus | OH | 43260-1694 | |
| Gfs Chemicals Inc | | PO Box 245 | 3041 Home Rd | Powell | OH | 43065 | |
| Gfs Chemicals Inc | | PO Box 245 | | Powell | OH | 43065 | |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 | |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 | |
| Glen Helmes & Associates | | 5613 Goldenrod Dr | | Cincinnati | OH | 45239 | |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 | |
| Global Dosimetry Solutions | | File 55667 | | Los Angeles | CA | 90074-5667 | |
| Global Exchange Services | | PO Box 640371 | | Pittsburgh | PA | 15264 | |
| Gm Associates | | 9824 Kitty Ln | | Oakland | CA | 94603 | |
| Gmeag Corporate Material Brokering | | Department 78095 | PO Box 78000 | Detroit | MI | 48278-0095 | |
| Gmimco | Vice Pres & General Counsel | 767 Fifth Ave | | New York | NY | 10153 | |
| Goldman Sachs Credit Partners Lp Assignee Of Booz Allen Hamilton Llc | | One New York Plaza 42nd Fl | | New York | NY | 10004 | |
| Goldman Sachs Credit Partners Lp Assignee Of Siemens Vdo Automotive Corporation And Siemens Vdo Automotiv | | One New York Plaza 42nd Fl | | New York | NY | 10004 | |
| Goldman Sachs Credit Partners Lp Assignee Of Siemens Vdo Automotive Sas And Siemens Financial Services In | | One New York Plaza 42nd Fl | | New York | NY | 10004 | |
| Grace Davison | | 4127 Collections Ctr Dr | | Chicago | IL | 60693 | |
| Grace Davison | | PO Box 75147 | | Charlotte | NC | 28275 | |
| Grace Davison W R Grace & Co Conn | Attn Manager Credit & Collections | 7500 Grace Dr | | Columbia | MD | 21044 | |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 | |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 | |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 | |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 | |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 | |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 | |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 | |
| Greenwood Co Sc | Greenwood Co Tax Treasurer | 528 Monument St | R 101 | Greenwood | SC | 29646 | |
| Guiltford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 | |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 | |
| H E Lennon Inc | | 23920 Freeway Pk Dr | | Farmington Hills | MI | 48335 | |
| H G Flake Company Inc | Attn Gordon L Flake | 14113 E Apache | | Tulsa | OK | 74116 | |
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 11 of 29
8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Hach Company | | PO Box 608 | | Loveland | CO | 80539-0608 | |
| Halsted & Hoggan Inc | | 935 Santa Fe Ave | | Los Angeles | CA | 90021 | |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | | Chattanooga | TN | 37402 | |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 | |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 | |
| Hamlin | Jerry L | 608 E Quinton St | | Broken Arrow | OK | 74011 | |
| Hamlin Contracting Servic | Jerry Hamlin | 608 E Quinton St | | Broken Arrow | OK | 74011 | |
| Harcros Chemicals Inc | | 3810 S Elwood Ave | | Tulsa | OK | 74107 | |
| Harcros Chemicals Inc | | 5200 Speaker Rd | | Kansas City | KS | 66106 | |
| Harcros Chemicals Inc | | PO Box 74583 Br 0006 | | Chicago | IL | 60690 | |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 | |
| Harley Financial Services | | PO Box 702904 | | Tulsa | OK | 74170-2904 | |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Harnett Co Nc | Harnett Co Tax Collector | PO 58509 | | Charlotte | NC | 28258 | |
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 | |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Hart Scientific Inc | | 799 T E Utah Vally Dr | | American Fork | UT | 84003-9775 | |
| Harvill Industries Inc | | 421 E Pioneer Dr | | Irving | TX | 75061 | |
| Harvill Industries Ltd | | 421 E Pioneer Dr | | Irving | TX | 75061 | |
| Hasler Leasing/ge Capital Corp | | 3000 Lakeside Dr Ste 200n | | Bannockburn | IL | 60015 | |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 | |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 | |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 | |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 | |
| He Lennon Inc | | 23920 Freeway Pk Dr | | Farmington Hills | MI | 48335 | |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 | |
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 | |
| Henkel Corporation Henkel Electronics | | 15051 E Don Julian Rd | | Industry | CA | 91746 | |
| Henkel Corporation Henkel Loctite | | PO Box 485 | | Avon | OH | 44011 | |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 | |
| Heraeus Chemicals Sa Pty | | PO Box 1987 | | Port Elizabeth | | 06000 | South Africa |
| Heraeus Metal Processing Inc | C/o Jason J Dejonker Esq | Mcdermott Will & Emery Llp | 227 W Monroe St | Chicago | IL | 60606-5096 | |
| Heraeus Metals Processing | | PO Box 910468 | | Dallas | TX | 75391-0468 | |
| Heraeus Metals Processing Inc Formerly Pgp Industries | | 13429 Alondra Blvd | | Santa Fe | CA | 90670 | |
| Heraeus Precious Metals Management Llc | | 540 Madison Avenu | | New York | NY | 10022 | |
| Hercules Incorporated | Aqualon Division | Hercules Plz | 1313 N Market St | Wilmington | DE | 19894-0001 | |
| Hercules Incorporated | | Aqualon Division | Hercules Plaza | Wilmington | DE | 19894-0001 | |
| Hercules Incorporated | | PO Box 846046 | | Dallas | TX | 75284-6046 | |
| Heritage Crystal Clean | | PO Box 68123 | | Indianapolis | IN | 46268 | |
| Herzog Automation Corp | | PO Box 74579 | | Cleveland | OH | 44194-0662 | |
| Hewlett Packard | Joanna Oukrop | 8000 Foothils Blvd Ms5521 | | Roseville | CA | 95747 | |
| Hewlett Packard Company | Attn K Higman | 2125 E Katella Ave Ste 400 | | Anaheim | CA | 92806 | |
| Hewlett Packard Company | | 13207 Collections Ctr Dr | | Chicago | IL | 60693 | |
| Hewlett Packard Company | | PO Box 951084 | | Dallas | TX | 75395-1084 | |
| Hg Flake Company Inc | | 14113 E Apache | | Tulsa | OK | 74116 | |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | PO Box 4290 | Edinburg | TX | 78540 | |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 | |
| Hiden Analytical Inc | | 75 Hancock Rd | | Peterborough | NH | 03458 | |
| High Purity Standards | | PO Box 41727 | | Charleston | SC | 29423 | |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 | |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 | |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Hodges Warehouse | | PO Box 470028 | | Tulsa | OK | 74147 | |
| Holders | | 7027 E 40th St | | Tulsa | OK | 74145-4522 | |
| Honeywell Sensotec | | 2080 Arlingate Ln | | Columbus | OH | 43228-4112 | |
| Hosokawa Micron Powder Systems | | PO Box 7777 | W502094 | Philadelphia | PA | 19175-2094 | |
| Houchin Electric Company Inc | | Box 471347 | | Tulsa | OK | 74147-1347 | |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 | |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 | |
| Hpl Illinois Inc | | Dept 77 6296 | | Chicago | IL | 60678-6296 | |
| Hsbc Bank Usa | | 5th Ave At 40th St | | New York | NY | 10018 | |
| Hub Group Associates Inc | | 33773 Treasury Ctr | | Chicago | IL | 60694-3700 | |
| Hullman Services Inc | | 2134 S Cincinnati | | Tulsa | OK | 74114 | |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 | |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 | |
| Hutchinson Fts Inc | Attn Julie D Dyas Esq C O Halperin Battaglia Raicht Llp | 555 Madison Ave 9th Fl | | New York | NY | 10019 | |
| Hydraquip | | 6848 E 41st | | Tulsa | OK | 74145-4513 | |
| I Inventory | N/a | 23 Hinton Rd | | Bournemouth | | Bh1 2ef | United Kingdom |
| Iamaw District 10 And Lodge 78 On Behalf Of The Employees And Retirees It Represents | Marianne G Robbins Esq Previant Goldberg Uelmen Gratz Mill | 1555 N River Ctr Dr Ste 202 | | Milwaukee | WI | 53212 | |
| Iamaw District 10 And Lodge 78 On Behalf Of The Employees And Retirees It Represents | Marianne G Robbins Previant Goldberg Uelmen Gratz Mill | 1555 N Rivercenter Dr Ste 202 | | Milwaukee | WI | 53212 | |
| Ibew Local 663 On Behalf Of The Employees And Retirees It Represents | Marianne G Robbins Esq Previant Goldberg Uelmen Gratz Mill | 1555 N Rivercenter Dr Ste 202 | | Milwaukee | WI | 53212 | |
| Ibt Inc | | 11221 E Pine St | | Tulsa | OK | 74116 | |
| Ibt Inc | | PO Box 2982 | | Shawnee Mission | KS | 66201 | |
| Ibt Inc | | PO Box 411238 | | Kansas City | MO | 64141-1238 | |
| Iinventory Limited | | 2 Lansdowne Crescent Ste 240 | | Bournemouth | | BH11SA | United Kingdom |
| Illinois Department Of Revenue | | 100 W Randolph St Level 7 425 | | Chicago | IL | 60601 | |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 | |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 | |
| Illinois Union Insurance Company | Margery N Reed Esq Duane Morris Llp | 30 S 17th St | | Philadelphia | PA | 19103-4196 | |
| Image Labs International | | 151 Evergreen Dr Ste G | | Bozeman | MT | 59715 | |
| Image Labs International & Sierra Liquidity Fund | Sierra Liquidity Fund | 2699 White Rd Ste 255 | | Irvine | CA | 92614 | |
| Impala Platinum Limited | Isle Of Houghton | 3rd Fl Old Trafford 4 | Boundary Rd | Houghton | | 02198 | South Africa |
| Imperial Coffee Service | | PO Box 150040 | | Tulsa | OK | 74115 | |
| Imperial Coffee Services & Sierra Liquidity Fund | Sierra Liquidity Fund | 2699 White Rd Ste 255 | | Irvine | CA | 92614 | |
| Inco Europe Ltd | | Bashley Rd | | London | | | United Kingdom |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 | |
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 | |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 | |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 | |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 | |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 | |
| Infosight Corporation | | PO Box 633664 | | Cincinnati | OH | 45263-3664 | |
| Inorganic Ventures Inc | | 195 Lehigh Ave Ste 4 | | Lakewood | NJ | 08701 | |
| Inotek Technologies Corporation | | PO Box 951514 | | Dallas | TX | 75395-1514 | |
| Inspectorate America Corp | | PO Box 200064 | | Houston | TX | 77216-0064 | |
| Inspectorate Griffith Ltd | | PO Box 201901 | | Houston | TX | 77216-1901 | |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| International Rectifier Corporation | Richard Brunette And Theresa Wardle Sheppard Mullin Richter & Hampton L | 333 S Hope St 48th Fl | | Los Angeles | CA | 90071 | |
| International Union Of Operating Engineers Local 101 S On Behalf Of Employees And Retirees It Represents | Barbara S Mehlsack Gorlick Kravitz & Listhaus Pc | 17 State St | | New York | NY | 10004 | |
| International Union Of Operating Engineers Local 18 S On Behalf Of Employees And Retirees It Represents | Barbara S Mehlsack Esq Gorlick Kravitz & Listhaus Pc | 17 State St | | New York | NY | 10004 | |
| International Union Of Operating Engineers Local 832 S On Behalf Of Employees And Retirees It Represents | Barbara S Mehlsack Esq Gorlick Kravitz & Listhaus Pc | 17 State St | | New York | NY | 10004 | |
| Inventory Limited | | Regus House George Carl Way | | Southhampton So | | 18 2RZ | United Kingdom |
| Ir Epi Services Inc | Richard Brunette And Theresa Wardle Sheppard Mullin Richter & Hampton L | 333 S Hope St 48th Fl | | Los Angeles | CA | 90071 | |
| Iron Age Corporation | | PO Box 730 | | Westborough | MA | 01581 | |
| Iue Cwa Delphi Corp Joint Activities Center | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Iue Cwa Delphi Corp Joint Activities Ctr | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Iue Cwa For Itself And Its Affiliated Local Unions Et Al | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| J J Keller & Associates Inc | | 3003 W Breezewood Ln | PO Box 368 | Neenah | WI | 54957-0548 | |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 | |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 | |
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 | |
| James R Finley | | 4001 Se Price Rd | | Bartlesville | OK | 74006-7232 | |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 | |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 | |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 | |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 | |
| Jesco Products Company Inc | | 6592 Arrow Dr | | Sterling Heights | MI | 48314 | |
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 | |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 | |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64039 | |
| Johnson County In | Johnson County Treasurer | Courthuse Annex | 86 W Court St | Franklin | IN | 46131 | |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olather | KS | 66061 | |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 | |
| Johnson Equipment Company | | PO Box 802009 | | Dallas | TX | 75380-2009 | |
| Johnson Matthey Alfa Aesar | | 30 Bond St | | Ward Hill | MA | 01835-8099 | |
| Johnson Matthey Inc | | PO Box 88848 | Dept 110 | Chicago | IL | 60695-1848 | |
| Johnson Matthey Plc | Precious Metals Marketing Division | 2001 Nolte Dr | | West Deptford | NJ | 08066 | |
| Johnson Matthey Plc | | PO Box 88877 | Dept 310 | Chicago | IL | 60695-1877 | |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 | |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 | |
| Jpmorgan Chase Bank Na As Administrative Agent | | 270 Pk Ave | | New York | NY | 10017 | |
| Jrw Inc | | PO Box 2002 | | Jenks | OK | 74037 | |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 | |
| Justice Golf Car Inc | | 10118 E 51st | | Tulsa | OK | 74146-5709 | |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 | |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 | |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 | |
| Katcon Sa De Cv | | Av Manuel Ordonez | No 601 Col Centro | Santa Catrina | | 66350 | Mexico |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Kelly Temporary Services | | 3121 University Dr Ste 160 | | Auburn Hills | MI | 48326 | |
| Kemp | Lesley C | 6525 East 5th Pl | | Tulsa | OK | 74112 | |
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 | |
| Kentucky Department Of Revenue | | 200 Fair Oaks Lane | | Frankfort | KY | 40620 | |
| Kentucky Revenue Cabinet | | 200 Fair Oaks Lane | | Frankfort | KY | 40620 | |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 | |
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 | |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 | |
| Kinkos Inc | | PO Box 672085 | | Dallas | TX | 75267-2085 | |
| Klense | Twila K | 703 N 71st East Ave | | Tulsa | OK | 74115 | |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 | |
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 | |
| Korea Delphi Automotive Systems | | 23f 395 70 Shindaebang Dong | | Seoul | | 159-714 | Korea Republic Of |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Kostal Kontakt Systeme Gmbh | Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Kostal Of America Inc | Co Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Kostal Of America Inc | Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Kostal Of Mexicana S A De C V | Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Kostal Of Mexicana Sa De Cv | Co Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Kunz Janitorial | | 7835 S Granite Ave | | Tulsa | OK | 74136 | |
| Kuss Corporation | Jill L Murch Foley & Lardner Llp | 321 N Clark St Ste 2800 | | Chicago | IL | 60610 | |
| L&w Engineering Co | Ryan D Heilman Esq | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 | |
| Lab Safety Supply Inc | | Account 5532165 | PO Box 5004 | Janesville | WI | 53547-5004 | |
| Lab Safety Supply Inc | | PO Box 1368 | 401 S Wright Rd | Janesville | WI | 53547-1368 | |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 | |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 | |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 | |
| Lampton Welding Supply Co Inc | | PO Box 765 | | Wichita | KS | 67201-0765 | |
| Landis & Staefa Inc | | PO Box 70832 | | Chicago | IL | 60673-0832 | |
| Landstar Express America Inc | | PO Box 651434 | | Charlotte | NC | 28265-1434 | |
| Landstar Ligon Inc | | Drawer Cs 100733 | | Atlanta | GA | 30384-0733 | |
| Landstar Ranger Inc | | PO Box 8500 54293 | | Philadelphia | PA | 19178-4293 | |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 | |
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 | |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 | |
| Laser Engineering & Fabrication | | PO Box 470284 | | Tulsa | OK | 74147-0284 | |
| Lattof Chevrolet Inc | | 800 East Northwest Hwy | PO Box 930 | Arlington Heights | IL | 60006 | |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 | |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 | |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 | |
| Le | Thomas V | 9209 S 89th E Ave | | Tulsa | OK | 74133 | |
| Leblang Solano & Ashbaugh Pllp | | 7615 E 63rd Pl Ste 200 | | Tulsa | OK | 74133 | |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 | |
| Legette Actuaries | David Hawkins | 4131 N Central Expressway | Ste 1100 | Dallas | TX | 75204 | |
| Leggette Actuaries Inc | | 4131 N Central Expwy Ste 1100 | | Dallas | TX | 75204 | |
| Lehigh University | Research Accounting | 526 Brodhead Ave | | Bethlehem | PA | 18015 | |
| Lester Assoc Inc | Joe Lester | PO Box 354 | | Chatham | NJ | 07928 | |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 | |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 | |
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 | |
| Liberty Industries | | 133 Commerce St | | East Berlin | CT | 06023 | |
| Life Insurance Co Of North America | Steve Idoux | 1133 15gh St Nw | Ste 400 | Wash | DC | 20005 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 15 of 29
8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Life Insurance Of North America Cigna | Catherine Garza | 12225 Greenville Ave | Ste 1000 | Dallas | TX | 75243 | |
| Life Insurance Of North America Cigna | Catherine Garza | 12226 Greenville Ave | Ste 1001 | Dallas | TX | 75244 | |
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 | |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 | |
| Lims Usa | N/a | 4000 Hollywood Blvd | Ste 730n | Hollywood | FL | 33021 | |
| Lims Usa Inc | | 4000 Hollywood Blvd Ste 730n | | Hollywood | FL | 33021-6752 | |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 | |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 | |
| Local 1111 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 416 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 698 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 711 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 717 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 718 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 755 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Local 801 Iue Cwa And Its Members | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 | |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 | |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 | |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 | |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 | |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 | |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | 90054 | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 | |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 | |
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 | |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 | |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 | |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 | |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 | |
| Ludlow | Christine L | PO Box 1326 | | Catoosa | OK | 74015 | |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 | |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 | |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 95808 | |
| M&d Controls Inc | | 4142 S 70th E Ave | | Tulsa | OK | 74145-4639 | |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 | |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 | |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 | |
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 | |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 | |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 | |
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 16 of 29                                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 | |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 | |
| Magid Glove & Safety Mfg Co Llc | | 2060 North Kolmar Ave | | Chicago | IL | 60639 | |
| Magnesium Elektron Inc | C O Jerrold S Kulback Esq / Archer & Greiner Pc | One Centennial Sq | | Haddonfield | NJ | 08033 | |
| Magnesium Elektron Inc | | 500 Point Breeze Rd | | Flemington | NJ | 08822-9111 | |
| Magnesium Elektron Inc | | PO Box 8500 2480 | | Philadelphia | PA | 19178-2480 | |
| Manager Of Finance | Jackson County Manager Of Finance | Bankruptcy 415 E 12th St | | Kansas City | MO | 64106 | |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 | |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 | |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 | |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 | |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 | |
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 | |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 | |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 | |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 | |
| Marisol International | | 1645 Republic Rd St B2 | | Springfield | MO | 65807 | |
| Marisol International | | 9741 E 66th St North | | Tulsa | OK | 74117 | |
| Marsh Bellofram Corporation | | PO Box 70670 | | Cleveland | OH | 44190-0670 | |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 | |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 | |
| Martin Marietta Energy Systems Inc | | PO Box 2008 MS 6294 | | Oak Ridge | TN | 37831 | |
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 | |
| Matheson Tri Gas | | 21984 Network Pl | | Chicago | IL | 60673-1219 | |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 | |
| Matrix Material Handling | | 10700 N Garnett | | Oklahoma City | OK | 73114 | |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 | |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 | |
| Mc Master Carr Supply Co | | 200 Aurora Industrial Pky | | Aurora | OH | 44202 | |
| Mccollum | Mary S | 23855 South Hwy 66 | | Claremore | OK | 74017 | |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 | |
| Mckee | Stephen M | Rt 3 Box 209 | | Chelsea | OK | 74016 | |
| Mcmaster Carr Supply Company | | PO Box 4355 | | Chicago | IL | 60680 | |
| Mcmaster Carr Supply Company | | PO Box 7690 | | Chicago | IL | 60680-7690 | |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 | |
| Mdis Inc | | Dept 31702 | PO Box 6187 | Chicago | IL | 60680-6187 | |
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 | |
| Mega Printing Services Inc | | 514 South Peoria | | Tulsa | OK | 74120-3820 | |
| Megasack Corp | | PO Box 1089 | | Magnolia | AR | 71754 | |
| Mei Labels | | 19014 E Admiral Pl | | Catoosa | OK | 74012 | |
| Meltric Corporation | | 4640 Ironwood Dr | | Franklin | WI | 53132 | |
| Met Life | National Accounts | Dept Ch 10261 | | Palatine | IL | 60066-0261 | |
| Metallurg Vanadium | Vanadium Division | PO Box 310 | | Cambridge | OH | 43725 | |
| Metlife | Lynn Dabrowski | 660 New Ctr One | 3031 W Grand Blvd | Detroit | MI | 48202 | |
| Metlife | Maria Shulte | PO Box 981282 | | El Paso | TX | 79998 | |
| Metrocall | | 3202 6 South Memorial | | Tulsa | OK | 74145 | |
| Metrocall | | 890 E Heinberg St | | Pensacola | FL | 32502 | |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 | |
| Mettler Toledo Inc | | 1900 Polaris Pkwy | | Columbus | OH | 43240 | |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 | |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 | |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 | |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 17 of 29                              8/23/2007 1:33 PM
                                                                                                       Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 | |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services Corp Div | PO Box 30702 | | Lansing | MI | 48909 | |
| Michigan Wholesale Printing | | 20732 Negaunee | | Southfield | MI | 48034 | |
| Micro Motion Inc | | PO Box 70707 | | Chicago | IL | 60673 | |
| Micro Phenomena Limited Liability | | 111 Tsimiski St | | Thessaloniki | | 54622 | Greece |
| Micro Tel Center | N/a | 4700 Holcomb Bridge Rd | | Norcross | GA | 30092 | |
| Microtech Machine Co Inc | | 222 Camp Mcdonald Rd | | Wheeling | IL | 60090 | |
| Midamerica Recycling | | 2742 Se Market St | | Des Moines | IA | 50317 | |
| Midland Recycling | Midamerica Recycling | 2742 Se Market St | | Des Moines | IA | 50317 | |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 | |
| Minarik Corp | | PO Box 25033 | | Glendale | CA | 91221 | |
| Minarik Corporation | | 2309 Spring Lake Rd Ste 680 | | Dallas | TX | 75234 | |
| Mine Safety Appliances Company | | PO Box 640348 | | Pittsburgh | PA | 15264-0348 | |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 | |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 | |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 | |
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 | |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 | |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 | |
| Mitco Inc | | 1601 Steele Ave Sw | | Grand Rapids | MI | 49507-1596 | |
| Mitsubishi Corporation | | 3 1 Marunouchi 2 Chome | | Chiyoda Ku | | | Japan |
| Mitsubishi Motors Corporation | | 33–8 Shiba 5 Chrome | Minato Ku | Tokyo 108 | | | Japan |
| Mmr Enterprises Inc Of Texas | | 10518 Cw Hawn Freeway | | Dallas | TX | 75217 | |
| Mobile Field Engineer | | 4055 Valley View Ln | Ste 400 | Dallas | TX | 75244 | |
| Mobile Field Engineer | | 4055 Valley View Ln Ste 400 | | Dallas | TX | 75244 | |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 | |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 | |
| Monroe County In | Monroe County Treasurer | Courthuse Room 204 | | Bloomington | IN | 47404 | |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 | |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 | |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 | |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 | |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 | |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 | |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 | |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 | |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 | |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 | |
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 | |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 | |
| Msc Industrial Supply | | 6700 Discovery Blvd | | Marbleton | GA | 30059 | |
| Msc Industrial Supply Co | | 75 Maxess Rd | | Melville | NY | 11747 | |
| Msc Industrial Supply Company Inc | | Dept Ch 0075 | | Palatine | IL | 60055-0075 | |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 | |
| Mystaff | | PO Box 94435 | | Tulsa | OK | 74194 | |
| Mystaff | | PO Box 973053 | | Dallas | TX | 75397-3053 | |
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 | |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 | |
| Nanostellar Inc | Panjak Dhingra President And Ceo | 3696 Haven Ave | | Redwood City | CA | 94063 | |
| National Instruments | | 11500 N Mopac Expwy | | Austin | TX | 78759 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| National Instruments | | PO Box 840909 | | Dallas | TX | 75284-0909 | |
| National Staffing Alternatives | | PO Box 1155 | | Lima | OH | 45802 | |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 | |
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha St | PO Box 233 | Seneca | KS | 66538 | |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 | |
| Nett Technologies Inc | | 2 6707 Goreway Dr | | Mississauga | ON | L4V1P7 | Canada |
| Netzsch Incorporated | | 119 Pickering Way | | Exton | PA | 19341-1393 | |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 | |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 | |
| New Horizons Computer Learning | | 4943 S 78th E Ave | | Tulsa | OK | 74145 | |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 | |
| New Logic Research Inc | | 1295 67th St | | Emeryville | CA | 94608 | |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 | |
| New Pig Corporation | | One Pork Ave | | Tipton | PA | 16684-0304 | |
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 | |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 | |
| Newark Electronics | | 3524 Nw 56th St Ste 202 | | Oklahoma City | OK | 73112 | |
| Newark Electronics | | PO Box 94151 | | Palatine | IL | 60094-4151 | |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 | |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 | |
| Ngk Automotive Ceramics Usa Inc | | 119 Mazzeppa Rd | | Mooresville | NC | 28115 | |
| Ngk Spark Plug Mfg Usa Inc | | PO Box 2943 | | Charleston | WV | 25330-2943 | |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 | |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 | |
| Nissan North America Inc | C O Michael R Paslay Esq Waller Lansden Dortch & Davis Llp | 511 Union St Ste 2700 | | Nashville | TN | 37219 | |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 | |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 | |
| Nomad Engineering | | 707 Waters Edge Dr 303 | | Lake Villa | IL | 60046 | |
| Nomad Engineering | | 712 Waters Edge No 301 | | Lake Villa | IL | 60046 | |
| Norit Americas | | 3200 University Ave | PO Box 790 | Marshall | TX | 75670 | |
| Norstan Communications | N/a | Sds 12 0976 | Box 86 | Minneapolis | MN | 55486 | |
| Norstone Inc | | 101 Surrey Rd | | Melrose Pk | PA | 19027-2931 | |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 | |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 | |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 | |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 | |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 | |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Nyacol Nano Technologies Inc | | Megunko Rd | PO Box 349 | Ashland | MA | 01721-0349 | |
| Nyacol Nano Technologies Inc | | PO Box 847928 | | Boston | MA | 02284-7928 | |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 | |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 | |
| O C Tanner Recognition Company | Lesia Harmon | 1930 S State St | | Salt Lake City | UT | 84115 | |
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 | |
| Oc Tanner Recognition Company | | 1930 South State St | | Salt Lake City | UT | 84115-2383 | |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 | |
| Oem Specialty Glass | | 14175 E 42nd Ave Ste 50 | | Denver | CO | 80239 | |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 | |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 | |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 | |
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 | |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 | |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 | |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 | |
| Oil Capital Electric Llc | | 12718 East 55th St | | Tulsa | OK | 74146-6221 | |
| Oil Capital Electric Llc | | PO Box 21228 Dept No 30 | | Tulsa | OK | 74121-1228 | |
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 | |
| Oklahoma Alliance For Manufacturing | Excellence | 525 S Main St Ste 210 | | Tulsa | OK | 74103 | |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 | |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 | |
| Oklahoma Tax Commission | Bankruptcy Section General Counsels Office | PO Box 53248 | | Oklahoma City | OK | 73152-3248 | |
| Oklahoma Tax Commission | Franchise Tax | PO Box 26930 | | Oklahoma City | OK | 73126-0930 | |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 | |
| Omega Engineering Inc | One Omega Dr | PO Box 4047 | | Stamford | CT | 06907-0047 | |
| Omega Engineering Inc | | PO Box 740496 | | Atlanta | GA | 30374-0496 | |
| Omg Americas Inc | | 811 Sharon Dr | | Westlake | OH | 44145-1522 | |
| Omg Americas Inc | | PO Box 6066n | | Cleveland | OH | 44193 | |
| Onyx Industrial Services Inc | Waste Management Tulsa | PO Box 78251 | | Phoenix | AZ | 85062-8251 | |
| Opeco Inc | | 601 Se 30 St | | Oklahoma City | OK | 73129 | |
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 | |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 | |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 | |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 | |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 | |
| Orton Ceramic Foundation | | 6991 Old 3c Hwy | Westerville Oh 43082 | Westerville | OH | 43082 | |
| Osborn Equipment Sales Inc | | 2100 North Yellowood Ave | | Broken Arrow | OK | 74012 | |
| Otis Elevator Co | | PO Box 730400 | | Dallas | TX | 75373-0400 | |
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 | |
| Oxford Global Resources Inc | | PO Box 7071 | | Beverly | MA | 01915 | |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 | |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 | |
| Pacific Employers Insurance Company | Margery N Reed Esquire Duane Morris Llp | 30 S 17th St | | Philadelphia | PA | 19103-4196 | |
| Paige Johnson | | 11826 E166th St North | | Collinsville | OK | 74021 | |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 | |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 | |
| Pam Transport | | PO Box 1000 Dept 340 | | Memphis | TN | 38148-0340 | |
| Panalpina Inc | | PO Box 581824 | | Tulsa | OK | 74158 | |
| Panatek Inc | | 2358 Hassell Rd Ste E | Hoffman Estates Il 60195 | Hoffmn Estates | IL | 60195 | |
| Paragon Laboratories Inc | | 12649 Richfield Ct | | Livonia | MI | 48150 | |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 | |
| Pc Computers & Software Inc | | 8125 G E 51st St | | Tulsa | OK | 74145 | |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 | |
| Pension Benefit Guaranty Corp | Jeffrey Cohen | 1200 K St Nw | | Washington | DC | 20005 | |
| Perkin Elmer Llc | | 761 Main Ave | Mail Station 10 | Norwalk | CT | 06859-0010 | |
| Perkin Elmer Llc | | PO Box 101668 | | Atlanta | GA | 30392-1668 | |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 | |
| Pgs Incorporated | | PO Box 471465 | | Tulsa | OK | 74147-1465 | |
| Philadelphia Mixing Solutions | | PO Box 8500 2180 | | Philadelphia | PA | 19178-2180 | |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 | |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 | |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 | |
| Pima County Treasurer Pima County Assessor Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 20 of 29
8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 | |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 | |
| Platinum Equity | Robert Loring Vp Business Development | 360 N Crescent | | Beverly Hills | MI | 90210 | |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 | |
| Pneu Con | | Pneumatic Conveying Inc | 960 E Grevillea Ct | Ontario | CA | 91761 | |
| Pneumatic Conveying | | 960 East Grevillea Court | | Ontario | CA | 91761 | |
| Pneumatic Conveying | | C/o Osborn Equipment Sales | 2100 N Yellowood Ave | Broken Arrow | OK | 74012 | |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 | |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 | |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 | |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 | |
| Posi Flate | | 1125 Willow Lake Blvd | | Saint Paul | MN | 55110 | |
| Posi Flate | | C/o Osborn Equipment Sales | 2100 N Yellowood Ave | Broken Arrow | OK | 74012 | |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 | |
| Precision Fitting & Gauge Co | | 1214 S Joplin Ave | | Tulsa | OK | 74112 | |
| Premier Manufacturing Support Svc | | 2828 Highland Ave | | Cincinnati | OH | 45212 | |
| Premier Manufacturing Support Svc | | PO Box 73287 | | Chicago | IL | 60673-7287 | |
| Prime Systems Incorporated | | 32915 Aurora Rd Ste 100 | | Cleveland | OH | 44139 | |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 | |
| Psc Inc Power Systems | | 21761 Tungsten Rd | | Cleveland | OH | 44117 | |
| Radley Corporation | N/a | 23077 Greenfield | Ste 440 | Southfield | MI | 48075 | |
| Ram Machine Inc | | 101 E Hobson Ave | | Sapulpa | OK | 74066-2807 | |
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 | |
| Rds Mechanical Inc | | PO Box 927 | | Edgewood | TX | 75117 | |
| Regal Plastic Supply Co | | PO Box 411458 | | Kansas City | MO | 64141 | |
| Retirees Of Delphi Corp Or Any Of It Predecessors Et Al | Thomas M Kennedy/susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Retirees Of Delphi Corp Or Any Of Its Predecessors Et Al | Thomas M Kennedy Susan M Jennik Kennedy Jennik & Murray Pc | 113 University Pl | | New York | NY | 10003 | |
| Rexel Nelson | | Dept 0713 | PO Box 120713 | Dallas | TX | 75312-0713 | |
| Rexel Nelson Electrical Supplies | | 13655 East 61st | Broken Arrow Ok 74012 | Tulsa | OK | 74012 | |
| Rhodia | | 259 Prospect Plains Rd | | Cranbury | NJ | 08512-7500 | |
| Rhodia Terres Rares Sa | | Zi 26 Rue | | Chef De Baie | | | France |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 | |
| Riverside County Collector | | PO 12005 | | Riverside | CA | 92502 | |
| Robert Bosch Gmbh | Attn Judith Lowitz Adler | 38000 Hills Tech Dr | | Farmington Hills | MI | 48331 | |
| Robert Bosch Gmbh | Judith Lowitz Adler | 38000 Hills Tech Dr | | Farmington Hills | MI | 48331 | |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 | |
| Robertson Microlit Laboratories Inc | | 29 Samson Ave | PO Box 927 | Madison | NJ | 07940 | |
| Rochester Hills City Of Oakland | Drawer 7783 | PO Box 79001 | | Detroit | MI | 48279 | |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 | |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 | |
| Rosemount Analytical | | Customer Financial Services | 12001 Technology Dr Ab03 | Eden Prairie | MN | 55344 | |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 | |
| Rotaform Llc | C O Rebecca Simoni Esq | Von Briesen & Roper | 411 E Wisconsin Ave Ste 700 | Milwaukee | WI | 53202 | |
| Rotaform Llc | Co Rebecca Simoni Esq | Von Briesen & Roper | 411 E Wisconsin Ave Ste 700 | Milwaukee | WI | 53202 | |
| Roto Rooter | | 8125 E Skelly Dr | | Tulsa | OK | 74129-3409 | |
| Rowland Technical Staffing | | Dept 1434 | | Tulsa | OK | 74128 | |
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 | |
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 | |
| Ryerson Tull | | PO Box 6576 | | Tulsa | OK | 74156 | |
| Sabin Metal Corporation | | 300 Pantigo Pl | Ste 102 | East Hampton | NY | 11937 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 21 of 29
8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Sachem | | PO Box 915043 | | Dallas | TX | 75391-5043 | |
| Sachem Inc | | 821 E Woodward St | | Austin | TX | 74704-7418 | |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 | |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 | |
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 | |
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 | |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 | |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 | |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 | |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 | |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 | |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 | |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 | |
| Sasol Germany Gmbh | Attn Accounting | Anckelmannsplatz 1 | Postfach 60 23 05 | Hamburg | | D-22223 | Germany |
| Sasol Germany Gmbh | Inorganic Specialty Chemicals | Attn Dr Stefan Maedje | Anckelmannsplatz 1 | Hamburg | | D 20537 | Germany |
| Sasol Vista Chemical | | PO Box 910855 | | Dallas | TX | 75391-0855 | |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 | |
| Scott | | 1619 N Hickory Ave | | Broken Arrow | OK | 74012 | |
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 | |
| Scott Rice Co | | PO Box 850315 | | Oklahoma City | OK | 73185-0315 | |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 | |
| Seal Master Corporation | | 368 Martinel Dr | | Kent | OH | 44240-4368 | |
| Sebring Systems | John Yeager | 9726 E 42nd St | Ste 201 | Tulsa | OK | 74147 | |
| Sebring Systems Tec Inc | | 9726 East 42nd St | Ste 201 | Tulsa | OK | 74146 | |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 | |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 | |
| Securenet Inc | | 12211 East 52nd St South | Ste 301 | Tulsa | OK | 74146 | |
| Securenet Inc | | PO Box 700277 | | Dallas | TX | 75370-0277 | |
| Securitas | | 12672 Collections Ctr Dr | | Chicago | IL | 60693 | |
| Securitas Companies | | 12672 Collections Ctr Dr | | Chicago | IL | 60693 | |
| Seltech Inc | | PO Box 33188 | 5321 S Sheridan Rd Ste 31 | Tulsa | OK | 74153 | |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 | |
| Seneca Ceramics Corp | | PO Box 213 | | Phelps | NY | 14532 | |
| Seneca Ceramics Corp & Sierra Liquidity Fund | Sierra Liquidity Fund | 2699 White Rd Ste 255 | | Irvine | CA | 92614 | |
| Servotech Engineering | | 510 Savage Rd | | Belleville | MI | 48111 | |
| Sgs Canada Inc | | PO Box 4580 Dept 5 | | Toronto | | M5W 4W2 | Canada |
| Sgs Lakefield Research Limited | | Box 4300 185 Concession St | | Lakefield | ON | K0L 2H0 | Canada |
| Shainin Llc | | 3115 T Ave | | Anacortes | WA | 98221 | |
| Shanghai Delphi Emission | | Xi Ya Rd 150 Gao Qiao | Free Trade Zone | Pudong Shanghai | | 200137 | China |
| Shanin Llc | | 3115 T Ave | | Anacortest | WA | 98221 | |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 | |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 | |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 | |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 | |
| Shepherd Chemical | | PO Box 630095 | | Cincinnati | OH | 45263 | |
| Shepherd Controls & Associates | | 203 A S Jupiter | | Allen | TX | 75002 | |
| Shepherd Controls & Associates | | PO Box 678158 | | Dallas | TX | 75267-8158 | |
| Shredders Inc | | 635 West 41st St | | Tulsa | OK | 74107 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 22 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Sierra Liquidity Fund Llc Assignee New Logic Research Inc Assignor | Sierra Liquidity Fund Llc | 2699 White Rd Ste 255 | | Irvine | CA | 92614 | |
| Sigma Aldrich Inc | | PO Box 951524 | | Dallas | TX | 75395-1524 | |
| Smc Dallas | | 1301 West Beltline | Ste 119 | Carrollton | TX | 75006 | |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 | |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 | |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 | |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 | |
| Soder Mechanical Inc | | 9526 A E 54th St | | Tulsa | OK | 74145 | |
| Software Spectrum | | 22721 E Mission | | Liberty Lake | WA | 99019 | |
| Software Spectrum | | PO Box 848264 | | Dallas | TX | 75284-8264 | |
| Sojitz Corporation Of America | | 1211 Ave Of The Americas | | New York | NY | 10036 | |
| Sojitz Corporation Of America | | PO Box 360913m | | Pittsburgh | PA | 15251 | |
| Sonitrol Of Tulsa | | PO Box 910454 | | Dallas | TX | 75391 | |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 | |
| Southern Material Handling Company | | PO Box 470890 | 8118 E 44th St | Tulsa | OK | 74147-0890 | |
| Southern Sheet Metal Works Inc | | Dept 124 | PO Box 21228 | Tulsa | OK | 74121-1228 | |
| Southern Sheet Metal Works Inc | | PO Box 50008 | | Tulsa | OK | 74150 | |
| Southwest Pumps & Filters | | 2335 E Chestnut Expwy Ste A104 | | Springfield | MO | 65802 | |
| Southwest Pumps & Filters Inc | | 2335 E Chestnut Expwy Ste A104 | | Springfield | MO | 65802 | |
| Southwest Pumps & Filters Inc | | 2335 East Chestnut Expressway | Ste A104 | Springfield | MO | 65802 | |
| Southwest Pumps & Filters Inc Trading Company | | 2335 East Chestnut Expressway | Ste A104 | Springfield | MO | 65802 | |
| Southwestern Bell | | PO Box 4706 | | Houston | TX | 77210-4706 | |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 | |
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 | |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 | |
| Special Electric Company Inc | | PO Box 78873 | | Milwaukee | WI | 53278-0873 | |
| Spectrum Quality Products | | File 11990 | | Los Angeles | CA | 90074-1990 | |
| Speedline Technologies Inc | Attn Wayne A Platz | 16 Forge Pk | | Franklin | MA | 02038 | |
| Spraying Systems | | N Ave At Schmale Rd | | Wheaton | IL | 60187 | |
| Springer Clinic | | 6160 S Yale | | Tulsa | OK | 74136 | |
| Squid Ink Manufacturing | | PO Box 18310 | | Minneapolis | MN | 55418-0310 | |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 | |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 | |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 | |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 | |
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 | |
| Stainless Tubular Products | | 1010 W 37th Pl | PO Box 571300 | Tulsa | OK | 74157-1300 | |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarie | NC | 28001 | |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 | |
| Starsource Management Services | | 24301 Catherine Industrial Dr | Ste 124 | Novi | MI | 48375 | |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 | |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 | |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 | |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 | |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 | |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 23 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 | |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 | |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 | |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 | |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 | |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 | |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 | |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 | |
| State Of Oklahoma | | 4001 N Lincoln Blvd | | Oklahoma City | OK | 73105-5212 | |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 | |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 | |
| Stephen M Mckee | Armstrong & Lowe Pc Attn Charles C Vaught Esq | 1401 South Cheyenne | | Tulsa | OK | 74119-3440 | |
| Stericycle Inc | | PO Box 9001588 | | Louisville | KY | 40290-1588 | |
| Stericycle Inc | | PO Box 9001590 | | Louisville | KY | 40290-1590 | |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 | |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 | |
| Strem Chemicals Inc | | 7 Mulliken Way | Dexter Industrial Pk | Newburyport | MA | 01950-4098 | |
| Stuart | Michael S | 10931 S 86th E Ave | | Tulsa | OK | 74133 | |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 | |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 | |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 | |
| Summit Group Of Bartlesville | | PO Box 3411 | | Bartlesville | OK | 74006 | |
| Sumner Co Tn | Sumner County Trustee | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 | |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 | |
| Superior Concepts Inc | | PO Box 166 | | Grand Haven | MI | 49417 | |
| Superior Specialty Gas Services Inc | | PO Box 470466 | | Tulsa | OK | 74147 | |
| Superior Vision | Kandy Bauereis | 1311 Oak Timber Dr | | Euless | TX | 76039 | |
| Swimmer | Ava | 212 E Skelly Dr | | Tulsa | OK | 74105 | |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 | |
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 | |
| Symantec | N/a | 20330 Stevens Creek Blvd | | Cupertino | CA | 95014 | |
| System Scale Corp | | 332 Hill Ave | | Nashville | TN | 37210 | |
| System Scale Corp | | PO Box 68963 | | Indianapolis | IN | 46268-0963 | |
| System Scale Corp | | Ssc Lab Div | 7715 Distribution Dr | Little Rock | AR | 72209 | |
| T Mobile | | PO Box 790047 | | St Louis | MO | 63179-0047 | |
| T Mobile Wireless | Attn Bankruptcy Dept | PO Box 3410 | | Bellevue | WA | 98015 | |
| T Shirt Express | | 106 C East 2nd Ave | 76th & Main | Owasso | OK | 74055 | |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 | |
| Tawas Industries Components In | | 905 Cedar St | | Tawas | MI | 48763 | |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 | |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 | |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 | |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 | |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Tax Colle | PO Box 7100 | Milton | FL | 32572 | |
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 24 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 | |
| Tayloe Paper Company | | 6717 E 13th St | | Tulsa | OK | 74112-5611 | |
| Tayloe Paper Company | | Dept 146 | PO Box 21228 | Tulsa | OK | 74121-1228 | |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 | |
| Team Air Express | | PO Box 668 | | Winnsboro | TX | 75494 | |
| Team Air Express | | PO Box 972603 | | Dallas | TX | 75397-2603 | |
| Team Worldwide | | PO Box 668 | | Winnsboro | TX | 75494 | |
| Tech Pack | | 10590 E Pine St | | Tulsa | OK | 74107 | |
| Technology Asset Services | | 63 65 South St | | Hopkinton | MA | 01748 | |
| Technology Properties Ltd | Heinz Binder Binder & Malter Llp | 2775 Pk Ave | | Santa Clara | CA | 95050 | |
| Tennant | | 701 N Lilac Dr | PO Box 1452 | Minneapolis | MN | 55440-1452 | |
| Tennant | | PO Box 71414 | | Chicago | IL | 60694-1414 | |
| Tenneco Automotive | Gregg Disilvio Director Of Business Development | 500 North Field Dr | | Lake Forest | IL | 60045 | |
| Tenneco Automotive | | One International Dr | | Monroe | MI | 48161 | |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 | |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 | |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 | |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 484 | | Dawson | GA | 31742 | |
| Tesa Ag | Karen A Ostad Esq James J Decristofaro Esq | 590 Madison Ave | Lovells | New York | NY | 10022 | |
| Tesa Ag | Karen Ostad Esq James J Decristofaro Esq | 590 Madison Ave | Lovells | New York | NY | 10022 | |
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| Texas Process Equipment | | 10715 Harry Hinds Blvd | | Dallas | TX | 75220 | |
| Textron Financial Corporation | Attn Leonard Lacagnin | 11575 Great Oaks Way Ste 210 | | Alpharetta | GA | 30022 | |
| The Benham Group | | PO Box 96 0148 | | Oklahoma City | OK | 73196-0148 | |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 | |
| The Condit Company Inc | | Dept 81 | PO Box 21228 | Tulsa | OK | 74121-1338 | |
| The Condit Company Inc | | PO Box 470146 | 7255 E 46th St | Tulsa | OK | 74147-0146 | |
| The Jordan Company | Eion Hu Vice President | 767 Fifth Ave | | New York | NY | 10153 | |
| Thermal Product Solutions | | PO Box 3246 | | Williamsport | PA | 17701 | |
| Thermal Specialties Inc | | PO Box 3623 | | Tulsa | OK | 74101-3623 | |
| Thermo Arl Us Llc | | Box 360715 | | Pittsburgh | PA | 15251-6715 | |
| Thermo Electron Corp | | Department Ch 10385 | | Palatine | IL | 60055-0385 | |
| Thermo Sensors Corp | | PO Box 461947 | | Garland | TX | 75046-1947 | |
| Thompsons Mechanical Services Inc | | 980 North 4386 | | Pryor | OK | 74361 | |
| Thyssen Krupp Waupaca Inc | | PO Box 249 | | Waupaca | WI | 54981 | |
| Ti Group Automotive Systems Llc | Timothy Guerriero Esq General Counsel & Company Secretary | 12345 E Nine Mile Rd | | Warren | MI | 48089-2614 | |
| Timmons Oil Company | | 13003 East Admiral Pl | | Tulsa | OK | 74112 | |
| Timmons Oil Company Inc | | PO Box 691140 | | Tulsa | OK | 74169-1140 | |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 | |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 | |
| Tmmons Oil Company | | PO Box 691140 | | Tulsa | OK | 74169-1140 | |
| Tosoh Usa Inc | Attn Finance Dept Pam Schmittler | 3600 Gantz Rd | | Grove City | OH | 43123 | |
| Tosoh Usa Inc | | PO Box 712368 | | Cincinnati | OH | 45271-2368 | |
| Total Filtration Services Inc | | 2725 Commerce Pkwy | | Auburn Hills | MI | 48326 | |
| Total Radio Inc | | 3158 S 108th E Ave Ste 276 | | Tulsa | OK | 74146 | |
| Tote Systems | | 651 N Burleson Blvd | | Burleson | TX | 76028 | |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 | |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 | |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 25 of 29                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 | |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 | |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 | |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 | |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 | |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 | |
| Toyota Motor Credit Corp | Commercial Finance | PO Box 3457 | | Torrance | CA | 90510 | |
| Travers | Mary | 118 Spartangreen Blvd | | Duncan | SC | 29334-0338 | |
| Travers Inc | | 128 15 26th Ave | PO Box 541550 | Flushing | NY | 11354-0108 | |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 | |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 | |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 | |
| Treasurer City Of Flint | | Income Tax Office | PO Box 1800 | Flint | MI | 48501-1800 | |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 | |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 | |
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 | |
| Trey Grayson | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 | |
| Tri Pro Consulting | Dave Milum | 6015 Morrow St East | Ste 211 | Jacksonville | FL | 32217 | |
| Trike Mechanical Services | Troy Phillips | 311 Ne 2nd St | | Adair | OK | 74330 | |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 | |
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 | |
| Troy Design Inc | | 2653 Industrial Row | | Troy | MI | 48084 | |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 | |
| Tulco Oils Inc | | 5240 E Pine St | | Tulsa | OK | 74115 | |
| Tulsa Port Of Catoosa | | 5350 Cimarron Rd | | Catoosa | OK | 74015 | |
| Tulsa Port Of Catoosa | | Po Drawer 94920 | | Tulsa | OK | 74194 | |
| Tulsa Speech & Hearing Association | | 8740 E 11th St Ste A | | Tulsa | OK | 74112-7957 | |
| Tulsa Technology Center | | PO Box 477200 | | Tulsa | OK | 74147-7200 | |
| Tulsa Uaw Uaw Local 286 | Attn Eric Funston C/o Delphi Catalyst | 1301 Main Pkwy | | Catoosa | OK | 74015 | |
| Tulsa Valve & Fitting Co | | 1815 W Detroit | | Broken Arrow | OK | 74012 | |
| Tulsa Valve & Fitting Co | | PO Box 930 | | Broken Arrow | OK | 74013 | |
| Tulsa Valve & Fitting Company | | 1815 W Detroit | PO Box 930 | Broken Arrow | OK | 74013 | |
| Turbosoft Pty Limited | | 56 Church Ave | Ste 15 | Mascot | NSW | 02020 | Australia |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 | |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Uaw Local 286 | | Bank One / V Cap | Article 23 Voluntary Exchange | Detroit | MI | 48278-0232 | |
| Uline | | 2200 S Lakeside Dr | | Waukegan | IL | 60085 | |
| Umicore Marketing Services | | 3120 Highwoods Blvd Ste 110 | | Raleigh | NC | 27604 | |
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 | |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 | |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 | |
| United Minerals & Properties I | Cimbar Performance Minerals Di | 25 Old River Rd Se | | Cartersville | GA | 30120 | |
| United Parcel Service | | Lockbox 577 | | Carolstream | IL | 60132-0577 | |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 | |
| United States Environmental Protection Agency | | K W Zank Trust Div A C5115114 | | Detroit | MI | 48226 | |
| United States Environmental Protection Agency Region 5 | Blaura Ripleysprfund Eact Sect | 77 West Jackson Blvd | | Chicago | IL | 60604 | |
| United States Filter Corporation | | PO Box 360766 | | Pittsburgh | PA | 15250-6766 | |
| United States Plastic Corp | | 1390 Neubrecht Rd | | Lima | OH | 45801-3196 | |
| University Of Colorado Tech Center | | Campus Box 184 | Norlin Library E206 | Boulder | CO | 80309 | |
| University Of New Mexico | Attn Sally Hayes | Dept Of Earth & Planetary Science | | Albuquerque | NM | 87131-1116 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 26 of 29

8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| University Of Tulsa | Attn Donna Giebel | Office Of Research Lh202e | | Tulsa | OK | 74104-3189 | |
| University Of Tulsa | | 600 S College | | Tulsa | OK | 74104-3189 | |
| Unum | Julia Coan | PO Box 180146 | | Chattanooga | TN | 37401 | |
| Uop Llc | | 25 E Alogonquin Rd | | Des Plaines | IL | 60017-5017 | |
| Uop Llc | | 2511 Country Club Blvd | Ste 265 | North Orlmsted | OH | 44070 | |
| Uop Llc | | Dept Ch10314 | | Palatine | IL | 60055-0314 | |
| Ups Customhouse Brokerage Inc | | PO Box 34486 | | Louisville | KY | 40232 | |
| Urgent Care | | PO Box 1044 | | Owasso | OK | 74055-1044 | |
| Us Cellular | | 6701 E 41st St | | Tulsa | OK | 74145 | |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Us Dept Of State/visa | | PO Box 952099 | | St Louis | MO | 63195-2099 | |
| Us Environmental Protection | | Agency Region Ii York Oil Co | Site 83 Cv 1623 PO Box 360188m | Pittsburgh | PA | 15251 | |
| Us Environmental Protection Agency | David J Kennedy | Assistant Us Attorney Sdny | 86 Chambers St 3rd Fl | New York | NY | 10007 | |
| US Environmental Protection Agency | National Vehicle and Fuel Emissions Laboratory | 2000 Traverwood Drive | | Ann Arbor | MI | 48105 | |
| Us Environmental Protection Agency | | Ariel Rios Building | 1200 Pennsylvania Ave Nw | Washington | DC | 20460 | |
| Us Environmental Protection Agency Region 2 | Jane M Kenny | Regional Administrator | 290 Broadway 26th Fl | New York | NY | 10007 | |
| Us Environmental Protection Agency Region 5 | | PO Box 70753 | | Chicago | IL | 60673 | |
| Us Environmental Protection Agency Region Ii York Oil Co | | Site 83 Cv 1623 | PO Box 360188m | Pittsburgh | PA | 15251 | |
| Us Epa | Diana Embil | Region 5 77 West Jackson Blvd | | Chicago | IL | 60604-3590 | |
| Us Epa | Reginald Pallesen | Region 5 77 West Jackson Blvd | | Chicago | IL | 60604-3590 | |
| Us Epa | Tom Nash | Region 5 77 West Jackson Blvd | | Chicago | IL | 60604-3590 | |
| Us Epa | | C/o Rtp Finance | Mail Drop D143 02 | Durham | NC | 27711 | |
| Us Epa Mail Code 6205j | | 1200 Pennsylvania Ave Northwest | | Washington | DC | 20460 | |
| Us Epa Region 3 | | 1650 Arch St | 3pm52 | Philadelphia | PA | 19103-2029 | |
| Us Epa Region 4 Atlanta Federal Center | | 61 Forsyth St Sw | | Atlanta | GA | 30303-3104 | |
| Us Epa Region 5 | | 77 West Jackson Blvd | | Chicago | IL | 60604-3590 | |
| Us Epa Region 8 | William D Messenger | 999 18th St | Ste 200 | Denver | CO | 80202-2466 | |
| Us Filter/continental Water | | PO Box 470722 | | Tulsa | OK | 74147-0722 | |
| Usepa Region Iv | Gail Ginsberg Reg Admin | 77 W Jackson | | Chicago | IL | 60604 | |
| Usf Bestway | | 17200 N Perimeter Dr | Ste 200 | Scottsdale | AZ | 85255-5400 | |
| Usis Commercial Services | | Dept 130 | PO Box 21228 | Tulsa | OK | 74121-1228 | |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 | |
| Utah State Tax Commission | | 210 North 1950 West | | Salt Lake City | UT | 84134-0180 | |
| V&f Instruments | | 1046 Baker Rd | | Dexter | MI | 48130 | |
| Valve Sales Inc | | 1901 Se 29th St | | Oklahoma City | OK | 73129 | |
| Valve Sales Inc | | PO Box 57003 | | Oklahoma City | OK | 73157 | |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 | |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 | |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 | |
| Vanco Engineering | | 7033 East 40th St | | Tulsa | OK | 74145 | |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 | |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 | |
| Vault Management Inc | | 1805 W Detroit | | Broken Arrow | OK | 74012 | |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 | |
| Verde Vista Resources Inc | | 405 E Kenosha | | Broken Arrow | OK | 74012 | |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 | |
| Vhg Labs | | 276 Abbey Rd | | Manchester | NH | 03103 | |
| Vhg Labs | | 276 Abby Rd | | Manchester | NH | 03103 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 27 of 29                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 | |
| Viking Plastics Inc | | 1 Viking St | | Corry | PA | 16407 | |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 | |
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 | |
| Visteon Corporation | Attn Michael Sharnas | One Village Dr | | Van Buren Township | MI | 48111 | |
| Visteon Glass Operations A Joint Venture Member Of Vitro Flex Sa De Cv | Visteon Corporation Attn Michael Sharnas | One Village Dr | | Van Buren Township | MI | 48111 | |
| Vwr Scientific Products C | Vwr International Inc | 1230 Kennestone Circle | | Marietta | GA | 30066 | |
| Vwr Scientific Products Corporation | | PO Box 640169 | | Pittsburgh | PA | 15264-0169 | |
| W & W Manufacturing Company | | 800 S Broadway | | Hicksville | NY | 11801-5017 | |
| W C Heraeus Gmbh &co Kg | | Heraeusstr 12 – 14 | 63450 | Hanau | | | Germany |
| W W Grainger Inc | Nathan F Coco Esq | Mcdermott Will & Emery Llp | 227 W Monroe St Ste 4400 | Chicago | IL | 60606-5096 | |
| W W Grainger Inc | | 10707 E Pine Drawer Dd | | Tulsa | OK | 74112 | |
| W W Grainger Inc | | PO Box 429 | | Skokie | IL | 60076-0429 | |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 | |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 | |
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 | |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 | |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 | |
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 | |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 | |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 | |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 | |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 | |
| Waste Management Tulsa | | PO Box 78251 | | Phoenix | AZ | 85062-8251 | |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 | |
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Blgd | Richmond | IN | 47374 | |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 | |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 | |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 | |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 | |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 | |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 | |
| Wholesale Tool Company | | 9909 E 55th Pl | PO Box 470952 | Tulsa | OK | 74147-0952 | |
| Wholesale Tool Company | | PO Box 68 | | Warren | MI | 48090 | |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 | |
| Wilbanks Welding Supply Inc | | 5532 S 94 E Ave | | Tulsa | OK | 74145 | |
| Wiley | Brian | 5212 Walkabout Ln | | Swartz Creek | MI | 48473 | |
| Wiley Brian | | 711 W 18th St | | Claremore | OK | 74019 | |
| Williams Scotsman Inc | | PO Box 91975 | | Chicago | IL | 60693 | |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 | |
| Willis Corroon Corporation Of Texas | | PO Box 730175 | | Dallas | TX | 75373-0175 | |
| Willis Of Texas Inc | Barbara Jefferey | 301 Commerce St | Ste 3050 | Fort Worth | TX | 76102 | |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 | |
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 | |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 | |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 | |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 | |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 | |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 | |
| Worksman Trading Corp | | 94 15 100 St | | Ozone Pk | NY | 11416 | |
| Wr Grace & Company Conn | | 7500 Grace Dr | | Columbia | MD | 21044 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 28 of 29
8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Delphi Corporation
Catalyst Sale Motion Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Wv Secretary Of State | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | | Charleston | WV | 225305 | |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 | |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 | |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 | |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 | |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 | |
| Xpedx | | 4901 West 66th St South | | Tulsa | OK | 74131 | |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 | |
| Yokogawa Corp Of America | | 2 Dart Rd | | Newnan | GA | 30265 | |
| York Co Sc | York Co Tax Treasurer | PO Box 116 | | York | SC | 29745 | |
| York County Tax Collector | | 1070 Heckle Beva Box 14 | | Rock Hill | SC | 29732-2863 | |
| Zebra Technologies Intl Llc | | Dept 776048 | | Chicago | IL | 60676 | |
| Ziese Manufacturing Co Inc | | PO Box 14059 | | Oklahoma City | OK | 73113 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 29 of 29                                    8/23/2007 1:33 PM
Catalyst Sale Motion special parties

Pegasus Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| A 1 Specialized Services | | 2707 State Rd | | Croydon | PA | 19021-0270 | |
| A 1 Specialized Services & Supplies Inc | | PO Box 270 | | Croydon | PA | 19021 | |
| Brenntag Southwest Inc | | 206 E Morrow | | Sand Springs | OK | 74063 | |
| Brenntag Southwest Inc | | PO Box 970230 | | Dallas | TX | 75397-0230 | |
| C & L Development Corporation | | 12930 Saratoga Ave Ste D6 | | Saratoga | CA | 95070 | |
| Cimbar Performance Minerals | | 25 Old Riverroad | | Cartersville | GA | 30120 | |
| Cimbar Performance Minerals | | 49 0 Jackson Lake Rd | | Chatsworth | GA | 30705 | |
| Corning Incorporated | Attn Corporate Secretary | One Riverfront Plz | | Corning | NY | 14831 | |
| Corning Incorporated | Ron Rogers | 50 W Big Beaver Rd | | Troy | MI | 48084 | |
| Corning Incorporated | | Ap 01 E8b | | Corning | NY | 14831 | |
| Denso International America Inc | Attn Carol Sowa | 24777 Denso Dr | | Southfield | MI | 48033 | |
| Denso International America Inc | | PO Box 5133 | | Southfield | MI | 48086-5133 | |
| Denso International America Inc | | PO Box 88812 | | Chicago | IL | 60695-1812 | |
| Grace Davison | | 4127 Collections Ctr Dr | | Chicago | IL | 60693 | |
| Grace Davison | | PO Box 75147 | | Charlotte | NC | 28275 | |
| Grace Davison W R Grace & Co Conn | Attn Manager Credit & Collections | 7500 Grace Dr | | Columbia | MD | 21044 | |
| Harcros Chemicals Inc | | 3810 S Elwood Ave | | Tulsa | OK | 74107 | |
| Harcros Chemicals Inc | | 5200 Speaker Rd | | Kansas City | KS | 66106 | |
| Harcros Chemicals Inc | | PO Box 74583 Br 0006 | | Chicago | IL | 60690 | |
| Heraeus Chemicals Sa Pty | | PO Box 1987 | | Port Elizabeth | | 06000 | South Africa |
| Heraeus Metal Processing Inc | C/o Jason J Dejonker Esq | Mcdermott Will & Emery Llp | 227 W Monroe St | Chicago | IL | 60606-5096 | |
| Heraeus Metals Processing | | PO Box 910468 | | Dallas | TX | 75391-0468 | |
| Heraeus Metals Processing Inc Formerly Pgp Industries | | 13429 Alondra Blvd | | Santa Fe | CA | 90670 | |
| Heraeus Precious Metals Management Llc | | 540 Madison Avenu | | New York | NY | 10022 | |
| Hercules Incorporated | Aqualon Division | Hercules Plz | 1313 N Market St | Wilmington | DE | 19894-0001 | |
| Hercules Incorporated | | Aqualon Division | Hercules Plaza | Wilmington | DE | 19894-0001 | |
| Hercules Incorporated | | PO Box 846046 | | Dallas | TX | 75284-6046 | |
| Impala Platinum Limited | Isle Of Houghton | 3rd Fl Old Trafford 4 | Boundary Rd | Houghton | | 02198 | South Africa |
| Johnson Matthey Alfa Aesar | | 30 Bond St | | Ward Hill | MA | 01835-8099 | |
| Johnson Matthey Inc | | PO Box 88848 | Dept 110 | Chicago | IL | 60695-1848 | |
| Johnson Matthey Plc | Precious Metals Marketing Division | 2001 Nolte Dr | | West Deptford | NJ | 08066 | |
| Johnson Matthey Plc | | PO Box 88877 | Dept 310 | Chicago | IL | 60695-1877 | |
| Magnesium Elektron Inc | C O Jerrold S Kulback Esq / Archer & Greiner Pc | One Centennial Sq | | Haddonfield | NJ | 08033 | |
| Magnesium Elektron Inc | | 500 Point Breeze Rd | | Flemington | NJ | 08822-9111 | |
| Magnesium Elektron Inc | | PO Box 8500 2480 | | Philadelphia | PA | 19178-2480 | |
| Ngk Automotive Ceramics Usa Inc | | 119 Mazzeppa Rd | | Mooresville | NC | 28115 | |
| Ngk Spark Plug Mfg Usa Inc | | PO Box 2943 | | Charleston | WV | 25330-2943 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

8/23/2007 1:34 PM
Pegasus Suppliers list

Pegasus Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Norit Americas | | 3200 University Ave | PO Box 790 | Marshall | TX | 75670 | |
| Nyacol Nano Technologies Inc | | Megunko Rd | PO Box 349 | Ashland | MA | 01721-0349 | |
| Nyacol Nano Technologies Inc | | PO Box 847928 | | Boston | MA | 02284-7928 | |
| Omg Americas Inc | | 811 Sharon Dr | | Westlake | OH | 44145-1522 | |
| Omg Americas Inc | | PO Box 6066n | | Cleveland | OH | 44193 | |
| Rhodia | | 259 Prospect Plains Rd | | Cranbury | NJ | 08512-7500 | |
| Sabin Metal Corporation | | 300 Pantigo Pl | Ste 102 | East Hampton | NY | 11937 | |
| Sachem | | PO Box 915043 | | Dallas | TX | 75391-5043 | |
| Sachem Inc | | 821 E Woodward St | | Austin | TX | 74704-7418 | |
| Sasol Germany Gmbh | Inorganic Specialty Chemicals | Attn Dr Stefan Maedje | Anckelmannsplatz 1 | Hamburg | | D 20537 | Germany |
| Sasol Germany Gmbh | Attn Accounting | Anckelmannsplatz 1 | Postfach 60 23 05 | Hamburg | | D-22223 | Germany |
| Sasol Vista Chemical | | PO Box 910855 | | Dallas | TX | 75391-0855 | |
| Sojitz Corporation Of America | | 1211 Ave Of The Americas | | New York | NY | 10036 | |
| Sojitz Corporation Of America | | PO Box 360913m | | Pittsburgh | PA | 15251 | |
| Tosoh Usa Inc | Attn Finance Dept Pam Schmittler | 3600 Gantz Rd | | Grove City | OH | 43123 | |
| Tosoh Usa Inc | | PO Box 712368 | | Cincinnati | OH | 45271-2368 | |
| Umicore Marketing Services | | 3120 Highwoods Blvd Ste 110 | | Raleigh | NC | 27604 | |
| Uop Llc | | 25 E Alogonquin Rd | | Des Plaines | IL | 60017-5017 | |
| Uop Llc | | Dept Ch10314 | | Palatine | IL | 60055-0314 | |
| Uop Llc | | 2511 Country Club Blvd | Ste 265 | North Orlmsted | OH | 44070 | |
| W C Heraeus Gmbh &co Kg | | Heraeusstr 12 – 14 | | Hanau | | 63450 | Germany |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

8/23/2007 1:34 PM
Pegasus Suppliers list

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
: 
　　　　In re　　　　　　　　　　　:　　　Chapter 11
: 
DELPHI CORPORATION, et al.,　　　:　　　Case No. 05-44481 (RDD)
: 
　　　　　　　　　　　Debtors.　　　:　　　(Jointly Administered)
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004,
6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF
DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS OF THE
CATALYST BUSINESS OF CERTAIN OF THE DEBTORS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
(III) ASSUMPTION OF CERTAIN LIABILITIES

("CATALYST BUSINESS SALE APPROVAL ORDER")

Upon the motion, dated June 6, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i)

the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising

substantially all the assets that comprise the catalyst business (the "Catalyst Business"), free and

clear of liens, claims, and encumbrances, to Umicore and certain of its affiliates (the

"Purchasers") pursuant to the Master Sale and Purchase Agreement, originally dated June 5,

2007 (as amended on the record at the auction held on August 8, 2007 to, inter alia, increase the

purchase price to be provided by the Purchasers to $75 million (subject to adjustments), the

"Agreement," a copy of which is attached hereto as <u>Exhibit A</u>), by and between Delphi and

certain of its affiliates, including certain affiliated Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] and the Purchasers (who submitted the highest or otherwise best bid

at the auction held on August 8, 2007 and are the "Successful Bidder"), (ii) the assumption and

assignment of certain prepetition executory contracts and unexpired leases (the "Assumed

Contracts") and the assignment of certain postpetition executory contracts and unexpired leases

(the "Postpetition Contracts," and collectively with the Assumed Contracts, the "Assigned

Contracts") to the Purchasers, and (iii) the assumption of certain liabilities (the "Assumed

Liabilities") by the Purchasers; and the Court having entered an order on June 29, 2007 (the

"Bidding Procedures Order") (a) approving bidding procedures, (b) granting certain bid

protections, (c) approving the form and manner of sale notices, and (d) setting the Sale Hearing;

and the Sale Hearing having been held on August 16, 2007, at which time all interested parties

were offered an opportunity to be heard with respect to the Motion; and the Court having

reviewed and considered (x) the Motion, (y) the objection thereto and (z) the arguments of

counsel made, and the evidence proffered or adduced, at the Sale Hearing, including with respect

to the withdrawal or resolution of the other objections to the Motion; and it appearing that the

relief requested in the Motion is in the best interests of the Selling Debtor Entities, their estates,

their creditors, and all other parties-in-interest; and after due deliberation thereon, and sufficient

cause appearing therefor,

---

[1]    Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems (Holding) Inc.,
Exhaust Systems Corporation, Environmental Catalysts, LLC, ASEC Manufacturing General Partnership, and
ASEC Sales General Partnership.  Certain assets will be sold under the Agreement by non-debtor affiliates of
the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling
non-Debtor affiliates are collectively referred to as the "Sellers."

2

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      The Court has jurisdiction over the Motion and the transactions
contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core
proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion
in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief sought in the Motion are sections
363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the
"Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.      As evidenced by the affidavits of service previously filed with the Court,
and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and
sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the
Assumed Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C.
§§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was
good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of
the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed
Contracts or assignment of the Postpetition Contracts is or shall be required.

D.      As demonstrated by (i) the testimony and other evidence proffered or
adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale
Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale
process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and
conducted in a non-collusive, fair, and good faith manner.

---

[2]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

3

E.       The Purchasers waived their right to assert any and all claims against the

Debtors and their estates related to the process by which the Selling Debtor Entities have sold the

Purchased Assets, including but not limited to, the bidding procedures and the auction.

F.       Catalytic Solutions, Inc. and certain of its affiliates (collectively, the

"Alternate Bidder") submitted a final bid at the auction consisting of: (a) the following

documents: the Alternate Bidder's bid submission documents delivered to the Selling Debtor

Entities on July 31, 2007 and marked at the auction as Exhibit 5, as amended by the documents

marked at the auction as Exhibit 8 (a blacklined Master Sale and Purchase Agreement), Exhibit 9

(Schedule 3.2.1 to Exhibit 8 at the auction), Exhibit 10 (a lease governing real property in

Luxembourg), and Exhibit 11 (a lease governing real property in Shanghai) and (b) cash

purchase price and certain cost savings to the Sellers which the Selling Debtor Entities

determined to have a combined value of $70.5 million and which final bid (the "CSI Final Bid")

was determined by the Debtors to be the Alternate Bid (as defined by the Bidding Procedures

Order) to be submitted to this Court for approval in accordance with the Bidding Procedures

Order.

G.       The Selling Debtor Entities (i) have full power and authority to execute

the Agreement and all other documents contemplated thereby, and the transfer and conveyance

of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by

all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority

necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken

all corporate action necessary to authorize and approve the Agreement and the consummation by

the Selling Debtor Entities of the transactions contemplated thereby, and no consents or

approvals, other than those expressly provided for in the Agreement, are required for the Selling

Debtor Entities to consummate such transactions.

        H.     The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purposes and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Purchased Assets and determined that the terms and

conditions set forth in the Agreement, and the transfer to Purchasers of the Purchased Assets

pursuant thereto, represent a fair and reasonable purchase price and constitute the highest or

otherwise best value obtainable for the Purchased Assets and (ii) compelling circumstances for

the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization because,

among other things, absent the Sale the value of the Purchased Assets will be substantially

diminished.

        I.     A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchasers, (iii) counsel for the official committee of unsecured

creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the

official committee of equity security holders appointed in these chapter 11 cases, (v) all entities

known to have expressed an interest in a transaction with respect to the Purchased Assets during

the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as

defined below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or

taxing authorities or recording offices, including but not limited to environmental regulatory

authorities, which have a reasonably known interest in the relief requested by the Motion, (viii)

5

all parties to Assigned Contracts, (ix) the United States Attorney's office, (x) the United States

Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue

Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")),

and (xiv) such other entities as are required to be served with notices under the Supplemental

Case Management Order.

J.    The Purchasers are not "insiders" of any of the Debtors as that term is

defined in 11 U.S.C. § 101(31).

K.    The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Purchasers have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

L.    The Purchasers are good faith purchasers under 11 U.S.C. § 363(m) and,

as such, are entitled to all of the protections afforded thereby.  The Purchasers will be acting in

good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by

the Agreement at all times after the entry of this Sale Approval Order.

M.    The consideration provided by the Purchasers for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

creditors than would be provided by any other practical available alternative, and (iv) constitutes

6

reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

N.      The Sale must be approved and consummated promptly to preserve the viability of the Catalyst Business as a going concern. The Sale is in contemplation of, and a necessary condition precedent to, a reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

O.      The transfer of the Purchased Assets to the Purchasers will be a legal, valid, and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the Selling Debtor Entities, will vest the Purchasers with all right, title, and interest to the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Catalyst Business prior to the Closing Date, including the transfer of the Purchased Assets to the Purchasers (collectively, the "Interests and/or Claims").

7

P.       If the Sale of the Purchased Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this Sale Approval Order, or if the Purchasers would, or in the future could, be liable for any of

the Interests and/or Claims as set forth in the Agreement and this Sale Approval Order, the

Purchasers would not have entered into the Agreement and would not consummate the Sale or

the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor

Entities, their estates, and their creditors.

Q.       The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Interests

and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to

the cash proceeds of the Sale ultimately attributable to the property against or in which they

claim an Interest or Claim with the same priority, validity, force, and effect as they attached to

such property immediately before the closing of the Sale.

R.       Except as expressly provided in the Agreement, the (i) transfer of the

Purchased Assets to the Purchasers and (ii) assumption and/or assignment to the Purchasers of

the Assigned Contracts and Assumed Liabilities will not subject the Purchasers to any liability

whatsoever with respect to the operation of the Catalyst Business prior to the Closing of the Sale,

or by reason of such transfer under the laws of the United States, any state, territory, or

possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly,

8

on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

S.     The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts as applicable to the Purchasers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being assumed by, the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

T.     The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchasers have provided adequate assurance of their future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchasers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

9

U.      Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests

of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

## General Provisions

1.      The Motion is GRANTED, and except as otherwise provided for in

paragraph 17 of this Order, all objections to the Motion or the relief requested therein that have

not been withdrawn, waived, or settled, and all reservations included therein, are hereby

overruled on the merits.

## Approval Of The Agreement

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

3.      Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized

to perform their obligations under the Agreement and comply with the terms thereof and

consummate the Sale in accordance with and subject to the terms and conditions of the

Agreement.

4.      Each of the signatories to the Agreement is authorized, but not directed, to

take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.      The Selling Debtor Entities are authorized, but not directed, to execute and

deliver, and empowered to perform under, consummate, and implement, the Agreement, together

10

with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchasers for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.    This Sale Approval Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, the Purchasers, all successors and assigns of the Purchasers and the Selling Debtor Entities, all affiliates and subsidiaries of the Purchasers and the Selling Debtor Entities, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

7.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is not material.

<u>Sale And Transfer Of The Purchased Assets</u>

8.    Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Approval Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Purchased Assets of the Selling Debtor Entities shall be transferred to the Purchasers free and clear of all Interests and/or Claims, with all such Interests

11

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they now have as against the Purchased Assets, subject to

any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.      The transfer of the Purchased Assets to the Purchasers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall

vest the Purchasers with all right, title, and interest of the Selling Debtor Entities in and to the

Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.     If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets with respect to the Selling Debtor Entities shall not

have delivered the foregoing to the Selling Debtor Entities prior to the Closing of the Sale, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has

with respect to the Purchased Assets, or otherwise, then (a) the Selling Debtor Entities are hereby

authorized to execute and file such statements, instruments, releases, and other documents on

behalf of the person or entity with respect to the Purchased Assets and (b) the Purchasers are

hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval

Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature

whatsoever.

11.     This Sale Approval Order (a) shall be effective as a determination that,

upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever

12

existing as to the Selling Debtor Entities or the Purchased Assets of the Selling Debtor Entities

prior to the Closing of the Sale have been unconditionally released, discharged, and terminated

(other than any surviving obligations), and that the conveyances described herein have been

effected and (b) shall be binding upon and shall govern the acts of all entities including, without

limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies, governmental departments,

secretaries of state, federal, state, and local officials, and all other persons and entities who may

be required by operation of law, the duties of their office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any of the Purchased Assets.

      12.     Except as expressly permitted or otherwise specifically provided by the

Agreement or this Sale Approval Order, all persons and entities, including, but not limited to, all

debt security holders, equity security holders, governmental, tax, and regulatory authorities,

lenders, trade creditors, and other creditors, holding Interests and/or Claims of any kind or nature

whatsoever against or in the Selling Debtor Entities or the Purchased Assets of the Selling

Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Selling Debtor Entities, the Purchased Assets of the Selling Debtor

Entities, the operation of the Catalyst Business by the Selling Debtor Entities prior to the Closing

of the Sale, or the transfer of the Purchased Assets to the Purchasers, hereby are forever barred,

estopped, and permanently enjoined from asserting against the Purchasers, their successors or

assigns, their property, or the Purchased Assets, such persons' or entities' Interests and/or Claims.

Nothing in this Sale Approval Order or the Agreement releases or nullifies any Liability to a

13

governmental agency under any environmental laws and regulations that any entity would be

subject to as owner or operator of any Purchased Assets after the date of entry of this Sale

Approval Order. Nothing in this Sale Approval Order or Agreement bars, estops, or enjoins any

governmental agency from asserting or enforcing, outside the Court, any Liability described in

the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit a

governmental agency to obtain penalties from the Purchasers for days of violation of

environmental laws and regulations prior to Closing.

<u>Assumption And Assignment To The Purchaser Of The Assumed Contracts</u>

13.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Purchasers, and the Purchasers' assumption on the terms set forth in the Agreement, of the

Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and

365(f) with respect thereto are hereby deemed satisfied.

14.     The Selling Debtor Entities are hereby authorized in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Purchasers, effective upon the

Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any

kind or nature whatsoever and (b) execute and deliver to the Purchasers such documents or other

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Purchasers.

15.     The Assumed Contracts shall be transferred to, and remain in full force

and effect for the benefit of, the Purchasers in accordance with their respective terms,

notwithstanding any provision in any such Assumed Contract (including those of the type

14

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer, and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor

Entities shall be relieved from any further liability with respect to the Assumed Contracts after

such assignment to and assumption of such contracts by the Purchasers.

16.     All defaults or other obligations of the Selling Debtor Entities under the

Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to

any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of

the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms

of the Agreement, and the Purchasers shall have no liability or obligation arising or accruing

prior to the date of the Closing of the Sale, except as otherwise expressly provided in the

Agreement.  Each non-debtor party to any Assumed Contracts shall be deemed to have

consented to the assumption and assignment of the Assumed Contracts to the Purchasers and

shall be forever barred, estopped, and permanently enjoined from asserting against the Selling

Debtor Entities or the Purchasers, or the property of any of them, any default existing, arising, or

accruing as of the date of the Closing or any purported written or oral modification to the

Assumed Contracts.  The failure of the Debtors or the Purchasers to enforce prior to the Closing

of the Sale one or more terms or conditions of any Assumed Contracts shall not be a waiver of

such terms or conditions or of the Debtors' or Purchasers' rights to enforce every term and

condition of any such Assumed Contracts.

17.     The Limited Objection Of Contrarian Funds, LLC To Debtors' Notice Of

Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And

Assigned In Connection With The Sale Of Catalyst Business (Docket No. 8877) shall be

adjourned to the September 6, 2007 claims hearing.

15

## Additional Provisions

18.     The transactions contemplated by the Agreement, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

19.     The consideration provided by the Purchasers for the Purchased Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, possession, or the District of Columbia.

20.     Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale transferring good and marketable title in such Purchased Assets and Assigned Contracts to the Purchasers pursuant to the terms of the Agreement.

21.     The transfer of the Purchased Assets pursuant to the Agreement is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and thus the Sale and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Sale shall be, and hereby are, exempt from the imposition and payment of all stamp taxes and any other similar taxes to the fullest extent contemplated by section 1146(c) of the Bankruptcy Code.

16

22.    Except as otherwise provided in the Agreement, upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is directed to execute such documents and take all such other actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

23.    Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

24.    All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchasers upon the Closing of the Sale.

25.    All persons holding Interests and/or Claims against or in the Selling Debtor Entities or the Purchased Assets held by the Selling Debtor Entities of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Purchasers, their property, their successors and assigns, or the Purchased Assets with respect to any Interest or Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers, their directors, their shareholders, or the Purchased Assets held by the Selling Debtor Entities.  Following the Closing of the Sale, no holder of an Interest in or Claim against the Selling Debtor Entities shall interfere with the Purchasers' title to or use and enjoyment of the

17

Purchased Assets based on or related to such Interest or Claim or any actions that the Selling

Debtor Entities may take in their chapter 11 cases.

26.     The transactions contemplated by the Agreement are undertaken by the

Purchasers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Purchasers, unless such authorization is duly stayed pending such appeal.  The Purchasers are

purchasers in good faith of the Purchased Assets, and are entitled to all of the protections

afforded by section 363(m) of the Bankruptcy Code.

27.     The consideration provided by the Purchasers for the Purchased Assets

under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n)

of the Bankruptcy Code.

28.     The Selling Debtor Entities, including, but not limited to, their officers,

employees, and agents, are hereby authorized to execute such documents and do such acts as are

necessary or desirable to carry out the transactions contemplated by the terms and conditions of

the Agreement and this Sale Approval Order.  The Selling Debtor Entities shall be, and they

hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this

Sale Approval Order.

29.     The Selling Debtor Entities are authorized to continue and complete the

retention bonus program for the twelve affected employees at the Tulsa facility, as described in

the Motion; <u>provided</u> that such employees are still employed by the Selling Debtor Entities as of

18

the closing date of the Sale.  Any affected employee who resigns prior to the closing of the Sale

shall not be entitled to the foregoing retention bonus.

30.     Delphi Automotive Systems (Holding) Inc. is authorized, but not directed,

to satisfy, retire, or forgive, as necessary, the outstanding liabilities of Delphi Catalyst South

Africa (Proprietary) Limited as required by the Agreement.

31.     The transfer of certain of the Catalyst Business' intellectual property by

Delphi Automotive Systems, LLC and Delphi Technologies, Inc. to ASEC Manufacturing

General Partnership (or another Selling Debtor Entity) or its designee by quit-claim deed or

otherwise in consideration for fair value is hereby approved.

32.     The terms and provisions of the Agreement and this Sale Approval Order

shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities,

their estates, and their creditors, the Purchasers, and their respective affiliates, successors, and

assigns, and any affected third parties, including, but not limited to, all persons asserting an

Interest and/or Claim against or in the Purchased Assets to be sold to the Purchasers pursuant to

the Agreement, notwithstanding any subsequent appointment of any trustee, party, entity, or

other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee,

party, entity, or other fiduciary such terms and provisions likewise shall be binding.

33.     The Selling Debtor Entities shall not propose or seek confirmation of a

plan of reorganization that is inconsistent with or derogate from the terms of the Agreement.

34.     Notwithstanding anything contained herein to the contrary, the term

"Purchased Assets" as defined herein does not include property that is not property of the Selling

19

Debtor Entities' estates (except to the extent that certain Purchased Assets are property of the

Sellers other than the Selling Debtor Entities), such as funds that are trust funds under any

applicable state lien laws.

35.     To the extent permitted by section 525 of the Bankruptcy Code, no

governmental unit may revoke or suspend any permit or license relating to the operation of the

Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or

pendency of these chapter 11 cases or the consummation of the Sale.

36.     The failure specifically to include or to reference any particular provision

of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of

such provision, it being the intent of the Court that the Agreement be authorized and approved in

its entirety.

37.     The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court, <u>provided</u> that any such modification,

amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'

estates.

38.     Nothing in this Sale Approval Order shall alter or amend the Agreement

and the obligations of the Sellers and the Purchasers thereunder.

39.     This Court retains exclusive jurisdiction to interpret, construe, enforce,

and implement the terms and provisions of this Sale Approval Order, the Agreement, all

amendments thereto, any waivers and consents thereunder, and of each of the agreements

20

executed in connection therewith in all respects, including, but not limited to, retaining

jurisdiction to (a) compel delivery of the Purchased Assets to the Purchasers, (b) compel delivery

of the purchase price or performance of other obligations owed to the Selling Debtor Entities

pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement,

except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this

Sale Approval Order, (e) protect the Purchasers against any Interests and/or Claims against or in

the Selling Debtor Entities or the Purchased Assets, of any kind or nature whatsoever, attaching

to the proceeds of the Sale, and (f) determine all disputes among the Selling Debtor Entities, the

Purchasers, and any non-Debtor parties to any Assigned Contracts concerning, inter alia, the

Selling Debtor Entities' assumption and/or assignment of any Assigned Contract to the Purchaser

under the Agreement.

40.    The purchase price shall be and hereby is allocated between the Selling

Debtor Entities and the non-Debtor Sellers as set forth on Schedule 2.  To the extent that

indemnification obligations arise under the Agreement on account of the liability of a non-

Debtor Seller, such indemnity shall be paid from the proceeds of the Sale allocated to such non-

Debtor Seller.

41.    The CSI Final Bid is hereby approved as the Alternate Bid (as defined by

the Bidding Procedures Order).

42.    Following entry of this Order, if the Purchasers fail to consummate the

Sale because of the failure of a condition precedent beyond the control of either the Sellers or the

Purchasers or a breach or failure to perform on the part of the Purchasers, then the Alternate Bid

shall be deemed to be the Successful Bid (as defined in the Bidding Procedures Order); the

21

Alternate Bidder shall have all of the rights, protections, and status as if it were the "Purchaser,"

as defined in this Order, including, without limitation, the status of a purchaser in good faith

within the meaning of 11 U.S.C. § 363(m); and the Selling Debtor Entities shall be authorized,

but not directed, to effectuate a sale of the Catalyst Business to the Alternate Bidder subject to

the terms of the Alternate Bid without further order of this Court, subject to any additional notice

and opportunity for a hearing required in respect of the assumption and assignment of the

Assigned Contracts to CSI pursuant to the CSI Final Bid.

43.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       August 16, 2007

_____/s/ Robert D. Drain_____
        UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Corning, Inc. | Purchase Order Nos. 50186, 50187, 50188, and 50189 | $2,126,226.63 |
| First American Capital Mgmt. | Purchase Order Nos. 12999, 12834, 15588, and M29398 | $0.00 |
| Heraeus Chemicals Sa Pty | Contract between Heraeus Chemicals and Delphi Automotive Systems LLC ("DAS LLC"), dated July 24, 2004 | $0.00 |
| Heraeus Metal Processing, Inc. / Heraeus Precious Metals Management LLC | Purchase Order No. 50112 | $306,172.40 |
| Impala Platinum Limited ("Impala") | Precious Metals Supply Agreement, dated November 2004, between Impala and DAS LLC and Precious Metals Supply Agreement, dated December 2000, between Impala and DAS LLC | $0.00 |
| Johnson Mathey, Inc. / Johnson Mathey Alfa Aesar / Johnson Mathey PLC | Bailment Agreement, dated October 29, 2004, between DAS LLC and Johnson Mathey, Inc. | $0.00 |
| MDIS Inc. | Agreement #2427 between ASEC and MDIS – CHESS, dated September 29, 1995 | $0.00 |
| NGK Automotive Ceramics USA Inc. | Purchase Order No. 50028 | $2,914,235.42 |
| Prime Systems Incorporated ("Prime") | Software License Agreement, dated, September 16, 1996, between ASEC and Prime | $0.00 |
| Sabin Metal Corporation ("Sabin") | Letter Agreement , dated October 23, 2002, between Delphi and Sabin | $10,583.35 |
| Shanin LLC | Purchase Order No. 19545 | $0.00 |
| University of New Mexico ("UNM") | UNM Industrial Sponsored Research Agreement between Delphi and the Regents of UNM, dated March 1, 2005 | $0.00 |
| WC Heraeus GmbH & Co. KG | Bailment Agreement, dated July 1, 2003, between DAS LLC and W.C. Heraeus GmbH & Co. KG | $0.00 |
| All American Fire Systems, Inc. | Purchase Order No. M411384 | $0.00 |
| AlliedSignal, Inc. | Sales Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 and Manufacturing Transfer Agreement among AlliedSignal, GM, Exhaust Systems of GM, AlliedSignal Environmental Catalysts Inc., AlliedSignal Automotive de Mexico S.A. de C.V. and Financiere AlliedSignal SA, dated November 4, 1994 | $0.00 |
| Applied Controls Corporation | Confidentiality Agreement, dated June 30, 2002, between Delphi Automotive Systems and Applied Controls Corp. | $0.00 |
| Bruker Axis Inc. | Purchase Order No. 22388 | $0.00 |
| BSI Inspectorate Precious Metals | Purchase Order No. 21046 | $0.00 |
| Cleintele | Purchase Order No. 21893 | $0.00 |

| Counterparty | Agreement(s) | Cure Amount |
|---|---|---|
| Contrarian Funds LLC, as assignee of Aramark Uniform & Career Apparel Inc. | Purchase Order No. 18316 | $11,532.14[3] |
| Corning, Inc. | Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005, Addendum to Delphi Automotive Systems Long Term Contract between Corning, Inc. and DAS LLC through its Energy & Chassis Division, dated May 1, 2005 | $0.00 |
| David Matthews Construction Company | Purchase Order No. 22257 and Delphi Automotive Systems Confidentiality Agreement with Joe Mayfield Construction Company, Inc., dated June 3, 2002 | $0.00 |
| Dell Financial Services | Purchase Order No. 22748 | $0.00 |
| General Motors Corp. | Purchase and Sale Agreement among GM, Exhaust Systems Corporation, Environmental Catalysts, LLC, AlliedSignal Environmental Catalysts, Inc. and AlliedSignal, Inc., dated June 22, 1998 | $0.00 |
| GM Corporation Powertrain | Consignment Agreement for Platinum Group Metal between GMC and ASEC owned by Exhaust Systems Inc. and Environmental Catalyst, LLC, dated December 20, 2000; First Amendment to Consignment Agreement for Platinum Group Metals, dated March 24, 2001 | $0.00 |
| Harley Financial Services | Purchase Order No. 19516 | $0.00 |
| Hasler Leasing/GE Capital Corp. | Purchase Order No. 19218 | $0.00 |
| Heritage Crystal Clean | Purchase Order No. M41277 | $0.00 |
| Holly Equipment Sales | Purchase Order No. 21226 | $0.00 |
| Jet Specialty | Delphi Automotive Systems Confidentiality Agreement with Jet Specialty, dated May 22, 2002 | $0.00 |
| Kelly Temporary Services | Purchase Order No. 19938 | $0.00 |
| Kunz Janitorial | Purchase Order No. M41402 | $0.00 |
| Lester Associates | Purchase Order No. 19513 | $0.00 |
| Midland Recycling | Purchase Order No. 15982 | $0.00 |
| Mitsubishi Motors Corp. | General Agreement For Purchase Of Catalyst between Automotive Products Division, UOP Inc. and Mitsubishi Motors Corp., dated July 12, 1982, along with Amendments thereto, dated January 6, 1988 and October 21, 1994 | $0.00 |
| Nanostellar, Inc. | Proprietary Information Agreement between Nanostellar, Inc. and Delphi Corporation (along with its affiliates ASEC Manufacturing General Partnership) dated January 5, 2006 | $0.00 |
| Perkin Elmer LLC | Purchase Order No. 19863 | $0.00 |
| Premier Manufacturing Support Svc. | Purchase Order No. M41284 | $0.00 |
| Sebring Systems Technical, Inc. | Purchase Order No. 22420 | $0.00 |
| Securenet Inc. | Purchase Order No. 22625 | $0.00 |
| Securitas Companies | Purchase Order No. 22017 | $0.00 |

---

[3]    The Cure Amount for Contrarian Funds LLC ("Contrarian"), as assignee of Aramark Uniform & Career Apparel Inc. ("Aramark"), is subject to the execution of a stipulation by and among the applicable Selling Debtor Entities, Contrarian, and Aramark.

| Counterparty | Agreement(s) | Cure Amount |
| --- | --- | --- |
| Siemens Water Technology Corp. | Purchase Order Nos. 19270, 19278, and 19279 | $0.00 |
| Southern Material Handling Co. | Purchase Order No. 17846 | $0.00 |
| Starsource Management Services | Purchase Order No. 18316 | $0.00 |
| Starcycle Inc. | Purchase Order NO. 20638 | $0.00 |
| T Mobile Wireless | Account No. 313-858-725 | $0.00 |
| Tro-Pro Consulting | Purchase Order No. 22127 | $0.00 |
| U.S. Cellular | Account No. 940-304-883 | $0.00 |
| Varroc Engineering Pvt. Ltd. | Side Letter Agreement between Varroc Engineering Pvt. Ltd.; Varroc Exhaust Systems Pvt. Ltd; Delphi Automotive Systems Pvt. Ltd., Delphi Automotive Systems LLC; Delphi Technologies, Inc. dated May 12, 2005; First Amendment dated July 15, 2006 to the Side Letter Agreement concerning production of catalysts from Delphi to Varroc Engineering Pvt. Ltd. and Varroc Exhaust Systems Pvt. Ltd. | $0.00 |
| Verde Vista Resources Inc. | Purchase Order No. M41417 | $0.00 |
| Vinson Process Controls | Delphi Automotive Systems Confidentiality Agreement with Vinson Process Controls dated October 29, 2002 | $0.00 |

**Schedule 2**

**SCHEDULE 4.8.1 TO AGREEMENT**
**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows

|   |   | **Purchase Price Allocation $ USD MM** |
|---|---|---|
| 1. | AS Catalizadores Ambientales, S.A. de C.V.  Sale of Assets | 3.7 |
| 2. | Shares of Delphi Catalysts South Africa (Proprietary) Ltd.  Sale of Shares | 6.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 12.0 |
| 4. | Delphi Diesel Systems France SAS Sale of  Assets | 19.3 |
| 5. | Delphi Automotive Systems Australia Ltd. Sale of Assets | 0.2 |
| 6. | All Acquired Assets of Filing Affiliates other than under item 2 above | 33.4 |
| 7. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.4 |
|   | **Total** | 75.0 |

<u>Exhibit A</u>

Master Sale And Purchase Agreement

This Exhibit Can Be Found At [www.Delphidocket.com](www.Delphidocket.com) (Docket No. 9111) Or By Request By Calling The Following Number 1-800-718-5305