**Hearing Date And Time: September 27, 2007 at 10:00 a.m.**
**Response Date And Time: September 20, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                          :
         In re                            :      Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :      Case No. 05-44481 (RDD)
                                          :
                                          :      (Jointly Administered)
               Debtors.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' TWENTIETH OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) DUPLICATE AND AMENDED
CLAIMS, (B) INSUFFICIENTLY DOCUMENTED CLAIMS, (C) CLAIMS NOT REFLECTED ON
DEBTORS' BOOKS AND RECORDS, (D) UNTIMELY CLAIM, AND (E) CLAIMS SUBJECT TO
MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, MODIFIED CLAIMS
ASSERTING RECLAMATION, CONSENSUALLY MODIFIED AND REDUCED TORT CLAIMS,
AND LIFT STAY PROCEDURES CLAIMS SUBJECT TO MODIFICATION

("TWENTIETH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Twentieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Insufficiently Documented

Claims, (C) Claims Not Reflected On Debtors' Books And Records, (D) Untimely Claim, And

(E) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims

Asserting Reclamation, Consensually Modified And Reduced Tort Claims, And Lift Stay

Procedures Claims Subject To Modification (the "Twentieth Omnibus Claims Objection"), and

respectfully represent as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

1.      On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  The Court has ordered joint administration of these cases.

2.      No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders (together with the official committee of unsecured creditors, the

"Statutory Committees").

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and continue their business operations without supervision from the Bankruptcy Court. [2]

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer ("OEM").

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

---

[1]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
2007.

[2]   On March 20 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
proceeding.  The application was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its
Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the
funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on
July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its
manufacturing footprint and to lower its overall cost structure.

3

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-GM

sources.

C.    Events Leading To The Chapter 11 Filing

            8.      In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

            9.      The Debtors believe that the Company's financial performance

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
       valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
       loss in calendar year 2004 was $482 million.

4

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

10.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

11.     On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas:[4] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[5] second,

---

[4]     In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors and a plan framework
support agreement with those investors and GM.   On July 9, 2007, Delphi confirmed that it had formally
terminated the equity purchase and commitment agreement and related plan framework support agreement but
that it expected to enter into new framework agreements with plan investors presently.  Subsequently, on July
18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment
agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan
investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill
Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate
of Pardus Capital Management, L.P. (collectively, the "New Plan Investors").  Under the Delphi-Appaloosa
EPCA, the New Plan Investors would invest up to $2.55 billion in preferred and common equity in the
reorganized Delphi to support the Company's transformation plan and plan of reorganization.  This Court
approved the Delphi-Appaloosa EPCA on August 2, 2007.

[5]     Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union,
United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a)
modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the
UAW, and its various locals, (b) provides that GM will undertake certain financial obligations to Delphi's
UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare
benefits for certain UAW-represented retirees of the Debtors.  This agreement, which was approved by this
Court on July 19, 2007, should permit the Debtors to continue to implement their transformation plan and to
develop, prosecute, confirm, and consummate a plan of reorganization.  On August 6, 2007, similar agreements
*(cont'd)*

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company;[6] third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus;[7] fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint;[8] and devising a workable

solution to their current pension situation.[9]

_____

*(cont'd from previous page)*

were reached with the International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America and its local unions, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers.  Such agreements were approved by this Court on August 16, 2007.  On August 16, 2007, Delphi also reached a similar agreement with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW Local 87L.  A hearing on Delphi's motion to approve this agreement is scheduled for August 29, 2007.

[6]     On July 9, 2007, Delphi confirmed that its discussions with GM on a comprehensive settlement agreement had entered the documentation phase and that it expected that a settlement with GM would be incorporated into the Debtors' plan of reorganization rather than filed with this Court for separate approval.

[7]     In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants.  The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders.  During the 2006 and 2007 calendar years, for example, the Debtors sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, and obtained court approval for the sale of substantially all of the assets of their brake hose, catalyst, and Saltillo, Mexico brake plant businesses..  In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[8]     As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.  To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]     To that end, on May 31, 2007, the Bankruptcy Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to

*(cont'd)*

12.     Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

E.     Bar Date, Proofs Of Claim, And Omnibus Claims Objections

13.     On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"), against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

14.     On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

_____
*(cont'd from previous page)*
     Delphi related to the Plans, extending the dates by which Delphi is required to file a plan of reorganization and
     emerge from chapter 11 to December 31, 2007 and February 28, 2008, respectively.

Statements") and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements. In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

15.    In addition, the Debtors published the Bar Date Notice in the <u>New York Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions), <u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>, <u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the <u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>, the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester Democrat and Chronicle</u>, the <u>Saginaw News</u>, the <u>Sandusky</u>, the <u>Tribune Chronicle</u>, the <u>Tulsa World</u>, the <u>Tuscaloosa News</u>, and the <u>Vindicator</u>, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

16.    Approximately 16,600 proofs of claim (the "Proofs of Claim") have been filed against the Debtors in these cases. The Debtors have filed ten omnibus procedural Claims objections[10] and nine omnibus substantive Claims objections.[11]  Pursuant to such omnibus

---

[10]    The Debtors filed the First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Duplicate And Amended Claims And (ii) Equity Claims (Docket No. 5151) on September 19, 2006; the Second Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (i) Equity Claims, (ii) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (iii) Duplicate And Amended Claims (Docket No. 5451) on October 31, 2006; the Fourth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate And Amended Claims (Docket No. 6099) on December 8, 2006; the Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b)

*(cont'd)*

Claims objections, the Court has disallowed and expunged 9,037 Claims.  In addition, the

hearings with respect to approximately 772 Claims have been adjourned to future claims

_____

*(cont'd from previous page)*

And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 6571) on January 12, 2007; the Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative Of The Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) on February 15, 2007; the Tenth Omnibus Objection (Procedural) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 To Certain (A) Duplicative and Amended Claims And (B) Equity Claims (Docket No. 7300) on March 16, 2007; the Twelfth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7824) on April 27, 2007; the Fourteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 7998) on May 22, 2007; the Sixteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims And (B) Protective Claims (Docket No. 8271) on June 15, 2007; and the Eighteenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain Duplicate Or Amended Claims (Docket No. 8616) on July 13, 2007.

[11]    The Debtors filed the (I) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, And (C) Claims Subject To Modification And (II) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) on October 31, 2006; the Fifth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation And (b) Claims Not Reflected On Debtors' Books And Records  (Docket No. 6100) on December 8, 2006; the Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, And (c) Untimely Claims (Docket No. 6585) on January 12, 2007; the Ninth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (Docket No. 6968) on February 15, 2007; the Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims (b) Claims Not Reflected On Debtors' Books and Records, (c) Untimely Claims, and (d) Claims Subject To Modification (Docket No. 7301) on March 16, 2007; the Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Protective Insurance Claims, (d) Insurance Claims Not Reflected On Debtors' Books And Records, (e) Untimely Claims An Untimely Tax Claims, And (f) Claims Subject To Modification, Tax Claims Subject To Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825) on April 27, 2007; the Fifteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims And Untimely Tax Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, and Modified Claims Asserting Reclamation (Docket No. 7999) on May 22, 2007; the Seventeenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Insurance Claim Not Reflected On Debtors' Books And Records, (D) Untimely Claims And Untimely Tax Claims, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, And Modified Claims Asserting Reclamation (Docket No. 8270) on June 15, 2007; and the Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8617) on July 13, 2007.

hearings pursuant to the Claims Objection Procedures Order (as defined below) and another 283

Claims are subject to pending objections.

17.     On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

18.     In this Twentieth Omnibus Claims Objection, the Debtors are objecting to

184 Proofs of Claim.

<u>Relief Requested</u>

19.     By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (a) disallowing and expunging those

Claims set forth on <u>Exhibit A</u> hereto as "Claims To Be Expunged" because they are duplicative

of other Claims or have been amended or superseded by later-filed Claims, (b) disallowing and

expunging those Claims set forth on <u>Exhibit B-1</u> hereto because they contain insufficient

documentation in support of the Claims asserted, (c) disallowing and expunging the Claim set

forth on <u>Exhibit B-2</u> hereto because it contains insufficient documentation in support of the

Claim asserted and was untimely filed pursuant to the Bar Date Order, (d) disallowing and

expunging those Claims set forth on Exhibit C-1 hereto because they assert liabilities or dollar

amounts that are not reflected on the Debtors' books and records, (e) disallowing and expunging

those Claims set forth on Exhibit C-2 hereto because they assert liabilities or dollar amounts that

are not reflected on the Debtors' books and records and were untimely filed pursuant to the Bar

Date Order, (f) disallowing and expunging those Claims set forth on Exhibit C-3 hereto, which

were filed by taxing authorities, because they assert liabilities and dollar amounts that are not

reflected on the Debtors' books and records, (g) disallowing and expunging those Claims set

forth on Exhibit C-4 hereto, which were filed by taxing authorities, because they assert liabilities

or dollar amounts that are not reflected on the Debtors' books and records and were untimely

filed pursuant to the Bar Date Order, (h) disallowing and expunging the Claim set forth on

Exhibit D hereto because it was untimely filed pursuant to the Bar Date Order, (i) revising the

asserted amount or classification, and/or changing the identity of the alleged Debtor, with respect

to the Claims set forth on Exhibit E hereto, (j) revising the asserted amount and/or classification

with respect to the Claims set forth on Exhibit F hereto, which were filed by taxing authorities,

(k) revising the asserted amount and/or classification with respect to the Claims set forth on

Exhibit G hereto, some of which are subject to a letter agreement pursuant to which the Debtors

and the Claimant agreed upon the valid amount of such Claimant's reclamation demand, subject

to certain reserved defenses, and others of which are held by Claimants who are deemed to have

consented to the Debtors' determination of the valid amount of the reclamation demand, subject

to certain reserved defenses, (l) consensually revising the asserted amount, and/or consensually

changing the identity of the alleged Debtor, with respect to the Claims set forth on Exhibit H

hereto, which assert certain tort liabilities, and (m) revising the asserted amount with respect to

the Claims set forth on Exhibit I hereto, which are the subject of a pending settlement pursuant to

11

the Order Approving Procedures For Modifying Automatic Stay Under 11 U.S.C. § 362 To

Allow For (I) Liquidating And Settling And/Or (II) Mediating Of Certain Prepetition Litigation

Claims (Docket No. 4366) (the "Lift Stay Order").

Objections To Claims

F.    <u>Duplicate Or Amended Claims</u>

20.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim in fact assert duplicate Claims (each, a "Duplicate Claim") for

a single liability.  In some instances, Duplicate Claims arose when a Claimant filed Proofs of

Claim against multiple Debtor entities for the same liability.  In an effort to eliminate the

Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation

provided for those Proofs of Claim, and the Debtors' Schedules and Statements to determine

which duplicate claim should be the surviving claim.

21.    Additionally, the Debtors determined that many Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities (the "Amended Claims").  For instance, many

Amended Claims were filed to amend an amount previously claimed in an earlier Proof of Claim

(the "Original Claim").  Other Amended Claims were filed to amend the classification of part or

all of an earlier Original Claim.

22.    It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate

Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original

Claims for which Amended Claims were subsequently filed (collectively, the "Duplicate Or

Amended Claims").

12

23.     Set forth on Exhibit A hereto is a list of Claims that the Debtors have

identified as Duplicate Or Amended Claims.  For each Duplicate Or Amended Claim, Exhibit A

classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a

"Surviving Claim" (the "Surviving Claim").  Generally, the Surviving Claims reflect the

classifications of the liabilities as reflected on the Debtors' Schedules and Statements.[12]  The

Debtors request that the Claims marked as Expunged Claims on Exhibit A be disallowed and

expunged.  With respect to the Claims on Exhibit A marked as Surviving Claims, the Debtors do

not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibit A, however,

does not reflect any view by the Debtors as to the ultimate validity of any such Claims.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the

Surviving Claims at a later date on any basis whatsoever, except as expressly provided in

paragraph 64 below.

24.     Accordingly, the Debtors (a) object to the Duplicate Or Amended Claims

and (b) seek entry of an order disallowing and expunging the Duplicate Or Amended Claims in

their entirety.

---

[12]     As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors'
Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records
for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General
Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the
"Catalyst Entities")] are maintained in this manner.  The financial information for these entities has
been consolidated for purposes of the Schedules and Statements and such consolidated financial
information has been included in the Schedules and Statements of each of [the Catalyst Entities].

Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or
more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the
Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of
the books and records of the Catalyst Entities, claimants should not retain more than one Claim for a single
liability.  Nonetheless, the Debtors expressly reserve all of their rights to re-classify these obligations as
obligations of another Debtor entity at a later date.

G.    Insufficiently Documented Claims

25.    During their Claims review, the Debtors discovered that certain Proofs of

Claim do not include sufficient documentation to support the claim asserted (the "Insufficiently

Documented Claims").  This deficiency in documentation has made it impossible for the Debtors

meaningfully to review the asserted Claims.  Although the Debtors contacted each Claimant

which filed an Insufficiently Documented Claim (other than those Claimants which filed a blank

proof of claim form, which made it impossible to identify a means of contacting such Claimants),

the Debtors received no additional documentation from such Claimants.[13]

26.    The burden of proof to establish a claim against an estate rests on the

claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re

WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

---

[13]    Claimants which responded to the Debtors' communications and provided additional information are not
included as part of this objection.

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make prima facie case).  As a result of the failure of the Claimants identified on Exhibits B-1 and B-2 to provide sufficient documentation to permit an understanding of the basis for their Claims, those Claims do not make out a prima facie case against the Debtors.

27.    The Insufficiently Documented Claims either (a) fail to assert a Claim, (b) fail to assert a monetary amount for the Claim, (c) state that there is no outstanding Claim against the Debtors, and/or (d) contain no documentation in support of the Claim or provide no evidence of the Debtors' liability for the Claim.  In addition, the Insufficiently Documented Claim listed on Exhibit B-2 was received by the Debtors after the Bar Date (the "Untimely Insufficiently Documented Claim").  With respect to the Untimely Insufficiently Documented Claim, the Debtors also object to that Claim on the basis that it was not timely filed pursuant to the Bar Date Order.[14]

28.    Attached hereto as Exhibit B-1 is a list of the Insufficiently Documented Claims which the Debtors have identified as Claims that do not contain sufficient documentation to permit an understanding of the basis for the Claim.[15]  Identified on Exhibit B-2 is the

---

[14]    The Bar Date Order provides, in relevant part:

> Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

[15]    Certain of the Claims on Exhibits A, B-1, B-2, C-1, C-2, C-3, C-4, D, E, F, G, H, and I may be listed in the amount of $0.00.  This reflects the fact that the Claim amounts asserted by the Claimants in those instances is unliquidated.

Untimely Insufficiently Documented Claim, which the Debtors have concluded does not contain

sufficient documentation to permit an understanding of the basis for the Claim and, in addition,

was not timely filed pursuant to the Bar Date Order.[16]  Accordingly, the Debtors (a) object to the

Insufficiently Documented Claims and the Untimely Insufficiently Documented Claim and (b)

seek entry of an order disallowing and expunging the Insufficiently Documented Claims and

Untimely Insufficiently Documented Claim in their entirety.  In the event that this Court does not

disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to

further object to the Insufficiently Documented Claims and the Untimely Insufficiently

Documented Claim at a later date on any basis whatsoever.

H.    Claims Not Reflected On The Debtors' Books And Records

29.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the

Debtors' books and records (the "Books And Records Claims").  In addition, the Debtors have

determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing

pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant to the

Bar Date Order (the "Untimely Books And Records Claims").  The Debtors have also

determined that certain Proofs of Claim filed by taxing authorities (the "Tax Claims") also assert

liabilities and dollar amounts that are not owing pursuant to the Debtors' books and records (the

"Books And Records Tax Claims").  The Debtors have also determined that certain Proofs of

Claim filed by taxing authorities assert liabilities or dollar amounts that are not owing pursuant

to the Debtors' books and records and, in addition, were not timely filed pursuant to the Bar Date

---

[16]    The Untimely Insufficiently Documented Claim listed on Exhibit B-2 was not included as part of the Motion
For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed,
dated September 29, 2006 (Docket No. 5238) ("Claims Timeliness Motion").

Order (the "Untimely Books And Records Tax Claims").  The Debtors believe that the parties

asserting the Books And Records Claims, the Untimely Books And Records Claims, the Books

And Records Tax Claims, and the Untimely Books And Records Tax Claims are not creditors of

the Debtors.

        30.     The bases for determining that the Debtors are not liable for an asserted

Claim include, but are not limited to, the following: (a) the Debtors' books and records do not

reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the

Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this

Court, (c) the Debtors' books and records reflect that the asserted Claim was properly paid prior

to the commencement of the Debtors' cases, and (d) the Claim constitutes a postpetition liability

that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

        31.     A claimant's proof of claim is entitled to the presumption of <u>prima</u> <u>facie</u>

validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the

allegations that is essential to the claim's legal sufficiency.'"  <u>WorldCom</u>, 2005 WL 3832065, at

\*4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts

to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  <u>Id</u>.

        32.     Attached hereto as <u>Exhibit C-1</u> is a list of the Books And Records Claims

that the Debtors have identified as Claims for which the Debtors are not liable.  Identified on

<u>Exhibit C-2</u> hereto is a list of the Untimely Books And Records Claims that the Debtors have

identified as Claims for which the Debtors are not liable. Identified on <u>Exhibit C-3</u> is a list of the

Books And Records Tax Claims that the Debtors have identified as Claims for which the Debtors

are not liable.  Attached hereto as <u>Exhibit C-4</u> is a list of the Untimely Books And Records Tax

Claims that the Debtors have also identified as Claims for which the Debtors are not liable.[17]

The Debtors object to the Untimely Books And Records Tax Claims not only because the

Debtors have no liability in respect thereof, but also because the Claims were not timely filed

pursuant to the Bar Date Order.[18]  If this Court does not disallow and expunge these Claims in

full, the Debtors expressly reserve all of their rights to further object to any or all of the Books

And Records Claims, the Untimely Books And Records Claims, the Books And Records Tax

Claims, and the Untimely Books And Records Tax Claims at a later date on any basis

whatsoever.

        33.      Accordingly, the Debtors (a) object to the Books And Records Claims, the

Untimely Books And Records Claims, the Books And Records Tax Claims, and the Untimely

Books And Records Tax Claims and (b) seek entry of an order disallowing and expunging the

Books And Records Claims, the Untimely Books And Records Claims, the Books And Records

Tax Claims, and the Untimely Books And Records Tax Claims in their entirety.

I.    <u>Untimely Claim</u>

        34.      During the Debtors' review of the Proofs of Claim, the Debtors determined

that a certain Proof of Claim was received by the Debtors after the Bar Date (the "Untimely

Claim").  The Debtors object to such Untimely Claim on the basis that it was not timely filed

pursuant to the Bar Date Order.  The Untimely Claim is identified on <u>Exhibit D</u> hereto.

---

[17]   The Untimely Books And Records Tax Claims listed on <u>Exhibit C-4</u> hereto were not included as part of the Claims Timeliness Motion.

[18]   See Bar Date Order cited <u>supra</u> note 14.

Accordingly, the Debtors (a) object to the Untimely Claim[19] and (b) seek entry of an order

disallowing and expunging the Untimely Claim.

J.      Claims Subject To Modification

35.     During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims (a) state the incorrect amount or are overstated, including as a

result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against

the wrong Debtors, and/or (c) incorrectly assert secured or priority status (collectively, the

"Claims Subject To Modification").

36.     Although in this Twentieth Omnibus Claims Objection the Debtors do not

seek to disallow and expunge the Claims Subject To Modification, based on an initial review, the

Debtors have determined that their liability with respect to each such Claim does not exceed the

dollar amount set forth on Exhibit E hereto.  Moreover, in some cases, the Debtors have

determined that such Claims should be reclassified in the manner set forth on Exhibit E hereto.

Finally, in some cases, the Debtors have determined that such Claims should be asserted against

a different Debtor entity, as indicated on Exhibit E hereto by a change in the applicable case

number.  The bases for placing a Claim in the Claims Subject To Modification category of

objection include, but are not limited to, the following: the asserted Claim (a) does not account

for amounts that may have been paid or credited against such Claim prior to the commencement

of these cases, (b) may include postpetition liabilities, (c) does not account for amounts that may

have been paid or credited against such Claim following the commencement of these cases, (d)

was docketed and filed against the wrong Debtor entity, and/or (e) is misclassified as a priority

or secured claim.  Thus, the Debtors seek to (i) convert the amount of each Claim Subject To

_____

[19]    The Untimely Claim listed on Exhibit E hereto was not included as part of the Claims Timeliness Motion.

Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors' books and records and/or the liquidated amount requested by the Claimant (thus eliminating the unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the Claim is asserted, and/or (iii) appropriately reclassify the Claim.

37.     As stated above, a Claimant's Proof of Claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims, the Debtors' books and records refute that the claims asserted in each Claim Subject To Modification are actually owed by any of the Debtors.

38.     Set forth on Exhibit E hereto is a list of Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against a different Debtor than the one identified by the Claimant.  For each Claim Subject To Modification, Exhibit E reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed,"[20] and the proposed modified dollar amount and classification for the Claim and the Debtor against which the Claim should be asserted, in a column titled "Claim As Modified."

39.     The Debtors object to the amount, classification, and/or identity of the Debtor for each Claim Subject To Modification listed on Exhibit E and request that each such Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As Modified" column of Exhibit E.  Thus, no Claimant listed on Exhibit E would be entitled to (a) recover for any Claim Subject To Modification in an amount exceeding the dollar value listed as

---

[20]   The Asserted Claim Amount on Exhibits E, F, G, H, I, and J reflects only asserted liquidated claims.

20

the "Modified Total" for such Claim on Exhibit E, (b) assert a classification that is inconsistent

with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against a Debtor

other than that whose case number is listed in the "Claim As Modified" column on Exhibit E,

subject to the Debtors' right to further object to each such Claim Subject To Modification. For

clarity, Exhibit E refers to the Debtor entities by case number and Exhibit J displays the formal

name of nine Debtor entities and their associated bankruptcy case numbers referenced in

Exhibit E.

        40.    The inclusion of the Claims Subject To Modification on Exhibit E,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim. The

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims

Subject To Modification at a later date on any basis whatsoever.

        41.    Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or identity of the Debtor for each Claim Subject To Modification and (b) seek an order

modifying the Claims Subject To Modification to reflect the Modified Total, classification for

the Claim, and/or the Debtor against which such Claim should be asserted, as set forth on

Exhibit E.

K.      Tax Claims Subject To Modification

        42.    In addition, the Debtors have also determined that certain Proofs of Claim

filed by taxing authorities (a) are overstated and/or (b) incorrectly assert secured or priority status

(collectively, the "Tax Claims Subject To Modification").

        43.    Set forth on Exhibit F hereto is a list of Tax Claims Subject To

Modification that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount. For each Tax Claim Subject To Modification, Exhibit F reflects

the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim

As Docketed" and the proposed modified dollar amount and classification which the Tax Claim

should be asserted in a column titled "Claim As Modified."

44.    The Debtors object to the amount and/or classification for each Tax Claim

Subject To Modification listed on Exhibit F and request that each such Claim be revised to

reflect the amount and classification listed in the "Tax Claim As Modified" column of Exhibit F.

Thus, no Claimant listed on Exhibit F would be entitled to (a) recover for any Tax Claim Subject

To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such

Claim on Exhibit F, and/or (b) asserts a classification that is inconsistent with that listed in the

"Claim As Modified" column, and/or (c) assert a Claim against a Debtor other than that whose

case number is listed in the "Claim As Modified" column on Exhibit F, subject to the Debtors'

right to further object to each such Tax Claim Subject To Modification.

45.    Accordingly, the Debtors (a) object to the asserted amount and/or the

classification for each Tax Claim Subject To Modification and (b) seek an order modifying the

Tax Claims Subject To Modification to reflect the Modified Total and/or classification, as set

forth on Exhibit F.

L.    Modified Claims Asserting Reclamation

46.    In addition, the Debtors have also determined that certain Claims (the

"Modified Claims Asserting Reclamation") (a)(i) state the incorrect amount or are overstated,

including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and

docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b)

assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter

agreement whereby the Debtors and the Claimant agreed upon the valid amount of the

reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors'

determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each,

a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and

notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation

Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses")

with respect to the reclamation demand are valid.

47.     Set forth on Exhibit G hereto is a list of Modified Claims Asserting

Reclamation that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim

Asserting Reclamation, Exhibit G reflects the amount, classification, and Debtor asserted in the

Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar

amount and classification for Modified Claim Asserting Reclamation, and the Debtor against

which such Claim should be asserted, in a column titled "Claim As Modified."

48.     The Debtors object to the amount, classification, and/or identity of the

Debtor for each Modified Claim Asserting Reclamation listed on Exhibit G and request that each

such Claim be revised to reflect the amount, classification, and identity of the Debtor listed in the

"Claim As Modified" column of Exhibit G.  Thus, no Claimant listed on Exhibit G would be

entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount exceeding

the dollar value listed as the "Modified Total" for such Claim on Exhibit G, unless the Debtors

obtain an order of this Court providing that any Reserved Defense is valid and denying priority

status to such Claimant's reclamation demand, or (b) assert a classification that is inconsistent

with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose

case number is not listed in the "Claim As Modified" column on Exhibit G, subject to the

Debtors' right to further object to each such Modified Claim Asserting Reclamation.  For clarity,

23

Exhibit G refers to the Debtor entities by case number and Exhibit J displays the formal name of

nine Debtor entities and their associated bankruptcy case numbers referenced in Exhibit G.

49.    Accordingly, the Debtors (a) object to the amount, classification, and/or

identity of the Debtor for the Modified Claims Asserting Reclamation and (b) seek an order

modifying the Modified Claims Asserting Reclamation to reflect the Modified Total,

classification, and/or identity of the Debtor against which such Claim should be asserted, as set

forth on Exhibit G.

M.    Consensually Modified And Reduced Tort Claims

50.    In addition, the Debtors have reached agreements with certain Claimants

that their Proofs of Claim asserting certain tort liabilities (the "Tort Claims") should be reduced

and/or fully liquidated and, in one case, the identity of the Debtor against which the Tort Claim

is asserted should be changed (collectively, the "Consensually Modified And Reduced Tort

Claims").

51.    The Debtors do not seek to disallow and expunge the Consensually

Modified And Reduced Tort Claims.  The Debtors have determined that their liability with

respect to each such Claim does not exceed the dollar amount set forth in the column titled

"Claim As Modified" on Exhibit H hereto.  Moreover, the Debtors have determined that all such

Claims should be asserted against Delphi Automotive Systems LLC ("DAS LLC"), as indicated

on Exhibit H hereto.  Thus, the Debtors seek to (i) convert the amount of each Consensually

Modified And Reduced Tort Claim to a fully liquidated, U.S. dollar-denominated amount and, as

appropriate, and (ii) change the identity of the Debtor for which the Claim is asserted to DAS

LLC.

52.    Set forth on Exhibit H hereto is a list of Consensually Modified And

Reduced Tort Claims that the Debtors believe should be modified solely to assert a properly

24

classified, fully liquidated claim amount against DAS LLC.  For each Consensually Modified

And Reduced Tort Claim, Exhibit H reflects the amount, classification, and Debtor asserted in

the Claimant's Proof of Claim in a column titled "Claim As Docketed" and the proposed

modified dollar amount and the Debtor against which the Claim should be asserted, in a column

titled "Claim As Modified."

53.    The Debtors object to the amount and/or identity of the Debtor for each

Consensually Modified And Reduced Tort Claim listed on Exhibit H and request that each such

Claim be revised to reflect the amount and Debtor listed in the "Claim As Modified" column of

Exhibit H.  Thus, no Claimant listed on Exhibit H would be entitled to (a) recover for any

Consensually Modified And Reduced Tort Claim in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on Exhibit H, (b) assert a classification that is

inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against

a Debtor other than DAS LLC.  For clarity, Exhibit H refers to the Debtor entities by case

number and Exhibit J displays the formal name of nine Debtor entities and their associated

bankruptcy case numbers referenced in Exhibit H.

54.    Accordingly, the Debtors (a) object to the amount and/or identity of the

Debtor for the Consensually Modified And Reduced Tort Claims and (b) seek an order

modifying the Consensually Modified And Reduced Tort Claims to reflect the Modified Total

and that DAS LLC is the correct Debtor entity against which such Claims should be asserted, as

set forth on Exhibit I.

N.    Lift Stay Procedures Claims Subject To Modification

55.    Finally, the Debtors have reached agreements with certain personal injury

Claimants that their Proofs of Claim should be reduced and/or fully liquidated pursuant to the

Lift Stay Procedures Order (collectively, the "Lift Stay Procedures Claims Subject To Modification").

56.     The Debtors do not seek to disallow and expunge the Lift Stay Procedures Claims Subject To Modification.  The Debtors have determined that their liability with respect to each such Claim does not exceed the dollar amount set forth in the column titled "Claim As Modified" on Exhibit I hereto.  Thus, the Debtors seek to convert the amount of each Lift Stay Procedures Claims Subject To Modification to a fully liquidated, U.S. dollar-denominated amount.

57.     Set forth on Exhibit I hereto is a list of Lift Stay Procedures Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount.  For each Lift Stay Procedures Claims Subject To Modification, Exhibit I reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount which the Claim should be asserted, in a column titled "Claim As Modified."

58.     The Debtors object to the amount for each Lift Stay Procedures Claims Subject To Modification listed on Exhibit I and request that each such Claim be revised to reflect the amount listed in the "Claim As Modified" column of Exhibit I.  Thus, no Claimant listed on Exhibit I would be entitled to (a) recover for any Lift Stay Procedures Claims Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit I, (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit I.

59.    Accordingly, the Debtors (a) object to the amount of the Lift Stay Procedures Claims Subject To Modification and (b) seek an order modifying the Lift Stay Procedures Claims Subject To Modification to reflect the Modified Total, as set forth on Exhibit I.

Separate Contested Matters

60.    Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Twentieth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Twentieth Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Twentieth Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

Reservation Of Rights

61.    The Debtors expressly reserve the right to amend, modify, or supplement this Twentieth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twentieth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

<u>Responses To Objections</u>

62.    Responses to the Twentieth Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

O.    <u>Filing And Service Of Responses</u>

63.    To contest an objection, responses (each, a "Response"), if any, to the Twentieth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00 p.m. (prevailing Eastern time) on September 20, 2007.**

P.    <u>Contents Of Responses</u>

64.    Every Response to this Twentieth Omnibus Claims Objection must contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

28

(b)     the name of the Claimant and a brief description of the basis for the amount of the Claim;

(c)     a concise statement setting forth the reasons why the Claim should not be disallowed and expunged, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the claims objection;

(d)     unless already set forth in the Proof of Claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Claimant must disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints;

(e)     to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)     the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

Q.     Timely Response Required

65.     If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on September 27, 2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Twentieth Omnibus Claims Objection.

66.     Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Twentieth Omnibus Claims Objection and who is served with the Twentieth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures

29

Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Twentieth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

67.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

Replies To Responses

68.    Replies to any Responses will be governed by the Claims Objection Procedures Order.

Service Of Twentieth Omnibus Claims Objection Order

69.    Service of any order with regard to this Twentieth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

70.    Questions about this Twentieth Omnibus Claims Objection or requests for

additional information about the proposed disposition of Claims hereunder should be directed to

the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

71.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), the Amended

Eighth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered October 26, 2006 (Docket No. 5418), and

the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026,

9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And

(II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

72.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this

Twentieth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A, B-1, B-2, C-1, C-

2, C-3, C-4, and D, is attached hereto as Exhibit K.  A form of the Notice Of Objection To Claim

to be sent to the Claimants listed on Exhibits E, F, G, H, and I is attached hereto as Exhibit L.

Claimants will receive a copy of this Twentieth Omnibus Claims Objection without Exhibits A

through J hereto.  Claimants will nonetheless be able to review Exhibits A through J hereto free

of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

<u>Memorandum Of Law</u>

73.    Because the legal points and authorities upon which this objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         August 24, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP

                                        By:   /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 9331)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606

                                              - and -

                                        By:   /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession