**USW-DELPHI - GM**
**MEMORANDUM OF UNDERSTANDING**
**and SPECIAL ATTRITION PROGRAM – VANDALIA**
**DELPHI RESTRUCTURING**
**AUGUST 16, 2007**

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW-Local 87L (together, "USW"), Delphi, and the General Motors Corporation ("the Parties") have a critical interest in Delphi's successful emergence from bankruptcy with certain USW-represented operations.  The Parties acknowledge that restructuring actions are necessary and commit to take specific actions to protect the needs of the Parties and their constituencies, continuing progress already made toward transforming Delphi's labor cost structure and ongoing business operations.  To enable continued transformation to more competitive wage and benefit levels, to address capacity, divestiture, work rules and staffing level issues, and to better position Delphi to retain existing business and attract new business, the Parties agree as follows on a two-party or three-party basis, as applicable, (the "Agreement") subject to ratification by the membership as provided in G below.

## A.  DURATION

Delphi and the USW agree that:

1.  This Agreement will continue until 11:59 p.m. on September 14, 2011.

2.  The agreement between Delphi Automotive Systems and Delphi Energy and Chassis Systems and Local Union 87, USW, dated December 8, 1999 (the "USW-Delphi Master Agreement") including all applicable modifications resulting from the Memorandum of Understanding – Home Avenue – Delphi Restructuring dated August 16, 2007 and resulting from this Agreement will be extended until 11:59 p.m. on September 14, 2011.  The agreement between Delphi Corporation and Thermal and Interior Systems Vandalia and USW Local 87, dated June 22, 1998 and the "Survival Plan" effective January 3, 2005 (the "Vandalia Local Agreements"), and all related agreements and understandings, as modified by this Agreement, are extended until 11:59 p.m. on September 14, 2011.  With respect to the Vandalia operations, the terms of this Agreement supersede and govern in the event of a conflict between this Agreement and the other agreements cited above.

3.  With respect to the Ronald Pirtle letter dated December 17, 2004, it is understood between Delphi and the USW that this letter stays in full effect, except as modified by this Agreement including, without limitation, Section B.2.

4. The agreements comprising the USW-Delphi collective bargaining agreements, master and local, following the effective date of this Agreement are set forth in Attachment E.

## B.  SITE PLAN

The USW and Delphi agree as follows concerning the transformation of the Vandalia plant operations (see Attachment A):

1. In order to keep the Vandalia Thermal Operation open it is necessary to achieve an all-in blended labor wage and benefit rate of $19.57 per hour, consisting of E-II and up to a maximum of 43 E-I production employees, as soon as possible and maintain that rate for the life of the Vandalia local agreement.  Methods to maintain the $19.57 all-in blended rate may include, as an example, conversion of E-I personnel to the E-II wage and benefit structure, as mutually agreed by the USW and Delphi.

2. Failure to accomplish and maintain this all-in blended wage and benefit rate will result in the Vandalia Thermal Operations being closed during the term of the Vandalia local agreements.

## C.  WORKFORCE TRANSITION

Delphi, the USW and GM, as applicable, agree on the following Special Attrition Program (the "Program") for Delphi-Vandalia Operations employees:

1. Delphi-Vandalia Operations employees who are active or on leave status will be offered lump sum buyouts, less applicable withholding, to sever all ties with Delphi and GM except vested pension benefits (as such no pension supplements are payable) on a date no later than January 1, 2008.  Employees with 10 or more years of seniority or credited service as of January 1, 2008, whichever is greater, are eligible for $140,000; employees with three (3) but less than 10 years seniority or credited service as of January 1, 2008, whichever is greater, are eligible for $70,000; and employees hired prior to January 1, 2005, but with less than three (3) years of seniority or credited service as of January 1, 2008, whichever is greater, are eligible for $40,000 (the "Buyout Payments"), paid in lump sum, less withholdings.

2. Those employees hired after January 1, 2005 will receive lump sum payments (less withholding) of $5,000 on January 1, 2008 and January 1, 2009, provided they remain on the active roll as of the payment dates.  Receipt of these payments is contingent upon a release of claims consistent with Paragraph C.5 of this agreement.  These payments will not count towards the all-in wage and benefit

rate referred to in Paragraph B.1 of this Agreement.

3. The parties agree that the approximately twenty-five (25) employees at the Delphi Vandalia Operations who meet the retirement or pre-retirement program criteria contained in the Memorandum of Understanding – Home Avenue – Delphi Restructuring dated August 16, 2007 may, at the employee's election, be transferred to Home Avenue Operations. Such employees who accept transfer to the Home Avenue Operations will be eligible to participate in the retirement or pre-retirement options of the USW-Delphi-GM Special Attrition Program - Transformation. If the employees elect to remain at the Vandalia plant, their base wage rates and benefits will be modified to E-I status, and they will be subject to the terms of Section C.7.

4. The application period will begin as soon as possible and will end no later than the earlier of December 31, 2007 or 60 days after the application period begins.

5. All participants will be required to sign a release form releasing all claims against Delphi, GM, and the USW except workers' compensation claims.

6. Delphi will use temporary employees as needed to bridge any difficulties arising from the implementation of the Special Attrition Program subject to the approval of Delphi and USW-Local 87L. Temporary employees will be paid at the rate of $8.00 per hour for production and $17.10 for skilled trades. Employees who have accepted a Buy Out under Section C.1 of this Agreement may be rehired as temporary employees. Such employees will be eligible for conversion to permanent status after 120 days of continuous employment per the Vandalia Local Agreement. Such converted employees will not be eligible for any coverage under the Term Sheet or for any transition options provided under this Agreement.

7. In the event an insufficient number of E-I employees elect a buy out, the lowest seniority E-I employees over the maximum of 43 will be converted to E-II status effective December 31, 2007, and the plant staffing level will thereafter be adjusted in accordance with the local seniority agreement.

8. The parties acknowledge the following matters:

   a) Delphi's participation in this Program is subject to the approval of the U.S. Bankruptcy Court; which approval Delphi will seek in Delphi's Chapter 11 cases. In the event such participation is not allowed by the Bankruptcy Court, no party will have any obligations under this Agreement. GM's obligations in respect of the Program are subject to approval of the Program by the U.S. Bankruptcy Court pursuant to entry of an order that provides for the allowance and/or treatment of GM's claims as described in this Program and is otherwise reasonably satisfactory to GM and Delphi.

   b) The Program shall not be subject to abrogation, modification or rejection without the mutual consent of the USW, GM and Delphi and the order obtained

in the Bankruptcy Court by Delphi approving this Program shall so provide. The parties further agree (and the Bankruptcy Court order shall also provide) that this Agreement is without prejudice to any party-in-interest (including the parties to this Program and the official statutory committees appointed in Delphi's chapter 11 cases) in all other aspects of Delphi's Chapter 11 cases, including by illustration, Delphi's and GM's respective positions in all commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any proceedings under Sections 1113 and/or 1114 of the Bankruptcy Code with respect to the USW and under Section 365 of the Bankruptcy Code with respect to GM's contracts with Delphi, in any pension termination proceeding under ERISA and/or the Bankruptcy Code, and all claims administration and allowance matters.

c) For the avoidance of doubt, any obligations assumed by GM under this Program with respect to OPEB under Paragraph C.3 above or active health care and life insurance shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation under Delphi's general indemnity of GM under the Master Separation Agreement.

d) Nothing in this Agreement, the Bankruptcy Court's approval of such Agreement, or the performance of any obligation hereunder, shall limit or otherwise modify (a) Delphi's rights under Section 4041 of ERISA, or (b) Delphi's rights under Section 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed this Agreement, such as (by way of illustration only) the obligation to maintain the hourly pension plan or provide retirees or active employees with levels of healthcare or other benefits as specified in pre-existing labor agreements.  Under no circumstances shall Delphi freeze its pension plan covering USW represented employees in a manner that prevents employees in the pre-retirement program from receiving on-going credited service sufficient to reach 30 years of credited service.  Delphi shall provide the same healthcare and life insurance coverage to employees participating in the pre-retirement program that it provides to its other active USW employees; provided, however, that if Delphi reduces or eliminates such coverage provided to its active USW employees, GM shall subsidize such coverage provided to employees participating in the pre-retirement program up to the level provided to GM active employees in accordance with the applicable plan provisions in effect between GM and the UAW at the time Delphi reduces or eliminates such coverages as amended from time to time.  Except as otherwise expressly provided herein, nothing in this Agreement shall limit, expand or otherwise modify the rights or obligations of any party under the Benefit Guarantee between GM and the USW.

e) Nothing contained herein, in the Bankruptcy Court's approval of this Program, or the performance of any obligation hereunder, shall constitute an assumption of any agreement described herein, including, without limitation (a) any

collective bargaining agreement between the USW and Delphi or (b) any agreement between GM and Delphi, nor shall anything herein, in the Bankruptcy Court's approval of this Agreement, or the performance of any obligation hereunder, be deemed to create or give rise to an administrative or priority claim with respect to, in favor of, or for the benefit of GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

## D.  PENSION AND OPEB / BENEFIT GUARANTEE

1.  The Parties have agreed to a Term Sheet – Delphi Pension Freeze and Cessation of OPEB and GM Consensual Triggering of Benefit Guarantee (the "Term Sheet") with respect to the freezing of Delphi's pension plan, the cessation of Other Post Employment Benefits (OPEB) for Delphi employees and retirees and the consensual triggering of the Benefit Guarantee.  That agreement the "Term Sheet" is attached as Attachment B, and is incorporated by reference herein.

2.  GM and the USW agree that the period of time on or before which GM's obligations under sections b., c., d., and e. of the Benefit Guarantee Agreement between GM and the USW, dated December 13, 1999 and signed December 22, 1999 ("Benefit Guarantee"), may be triggered shall be extended to December 31, 2007 (and to March 31, 2008 if Delphi has commenced solicitation of acceptances of its chapter 11 plan of reorganization prior to December 31, 2007 but the plan has not been confirmed and substantially consummated or such later date as GM shall agree to extend ), provided, however that notwithstanding the foregoing or any other provision of this Agreement, this extension shall be without prejudice to any rights, defenses or claims of any Party with respect to the Benefit Guarantee.

## E.  MASTER AND LOCAL AGREEMENT MODIFICATIONS

1.  <u>Guaranteed Income Stream (GIS)</u>

    The USW and Delphi agree that the Guaranteed Income Stream (GIS) Program (Exhibit E to the Master Agreement) will be eliminated.

2.  <u>Transfer of Pension Assets and Liabilities – (414)(l)</u>

    A transfer of pension assets and liabilities will occur as provided in the Term Sheet pursuant to Internal Revenue Code Section (414)(l).

3.  <u>Benefits</u>

    The USW and Delphi agree that effective January 1, 2008, benefits for E-II Delphi – Vandalia employees will be modified in accordance with Attachment C.

4. <u>Vacation Accrual</u>

   a. The USW and Delphi agree that Section IV, item (6) of the hourly Vacation Pay Plan as outlined in the Delphi Interior Systems Agreement - Vandalia Plant dated June 22, 1998, and the Hourly vacation pay plan in the Local 87 Survival Plan effective January 3, 2005 will be modified to reflect the following vacation accrual schedule as soon as practicable.

| For an Eligible Employee With Seniority of: | Hours of Vacation Entitlement |
|---|---|
| One but less than two years | 48 |
| Two but less than three years | 56 |
| Three but less than four years | 80 |
| Four but less than five years | 88 |
| Five but less than nine years | 108 |
| Nine but less than fifteen years | 120 |
| Fifteen but less than twenty years | 140 |
| Twenty years and beyond | 160 |

   b. Employees must meet the eligibility requirements set forth in the Local Agreement.

   c. Without modifying or adding to any other provisions of the vacation entitlement section, an employee who has seniority but has not acquired one year's seniority as of December 31st shall nevertheless become eligible for a percentage of 48 hours vacation pay pursuant to Section IV, Paragraphs 7 and 10 of the Local Agreement and the Survival Plan.

5. <u>Holidays</u>

   The USW and Delphi agree that effective as soon as practicable following October 1, 2007, Corporate-paid holidays shall be as follows:

<u>October 1, 2007 – September 14, 2011</u>

<u>2007 (5 holidays)</u>

| Thanksgiving Day | Thursday, November 22, 2007 |
|---|---|
| Day after Thanksgiving | Friday, November 23, 2007 |
| Christmas Eve Day | Monday, December 24, 2007 |
| Christmas Day | Tuesday, December 25, 2007 |
| New Years Eve Day | Monday, December 31, 2007 |

2008 (10 holidays)

| | |
|---|---|
| New Years Day | Tuesday, January 1, 2008 |
| Martin Luther King, Jr. Day | Monday, January 21, 2008 |
| Good Friday | Friday, March 21, 2008 |
| Memorial Day | Monday, May 26, 2008 |
| Independence Day | Friday, July 4, 2008 |
| Labor Day | Monday, September 1, 2008 |
| Thanksgiving Day | Thursday, November 27, 2008 |
| Day after Thanksgiving | Friday, November 28, 2008 |
| Christmas Day | Thursday, December 25, 2008 |
| Day after Christmas | Friday, December 26, 2008 |

2009 (10 holidays)

| | |
|---|---|
| New Years Day | Thursday, January 1, 2009 |
| Day after New Years Day | Friday, January 2, 2009 |
| Martin Luther King, Jr. Day | Monday, January 19, 2009 |
| Good Friday | Friday, April 10, 2009 |
| Memorial Day | Monday, May 25, 2009 |
| Labor Day | Monday, September 7, 2009 |
| Thanksgiving Day | Thursday, November 26, 2009 |
| Day after Thanksgiving | Friday, November 27, 2009 |
| Christmas Day | Friday, December 25, 2009 |
| New Years Eve Day | Thursday, December 31, 2009 |

2010 (9 holidays)

| | |
|---|---|
| New Years Day | Friday, January 1, 2010 |
| Martin Luther King, Jr. Day | Monday, January 18, 2010 |
| Good Friday | Friday, April 2, 2010 |
| Memorial Day | Monday, May 31, 2010 |
| Labor Day | Monday, September 6, 2010 |
| Thanksgiving Day | Thursday, November 25, 2010 |
| Day after Thanksgiving | Friday, November 26, 2010 |
| Christmas Eve | Friday, December 24, 2010 |
| New Years Eve Day | Friday, December 31, 2010 |

2011 (5 holidays)

| | |
|---|---|
| Martin Luther King, Jr. Day | Monday, January 17, 2011 |
| Good Friday | Friday, April 22, 2011 |
| Memorial Day | Monday, May 30, 2011 |
| Independence Day | Monday, July 4, 2011 |

Labor Day                          Monday, September 5, 2011

The local parties are empowered to change and/or move paid holidays to different days by mutual agreement.

6. Income Security Plan (ISP)

The USW and Delphi agree that applicable terms and conditions of the Supplemental Agreement, Exhibit D, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified, eliminating the plan for employees classified as E-II. Any funds in an individual's account will remain that of the employee for disbursement in accordance with plan regulations. The Plan will be modified and be limited to only currently existing E-I employee(s) at the rate of 18¢ per compensated hour.

7. Funding for Joint Activities and Health & Safety

The USW and Delphi agree that as of the Effective Date of this Agreement, all funding for Joint Activities, including Health & Safety activities will be eliminated. Any future participation in joint activities after the Effective Date will be a matter of negotiation at the plant level.

8. Independence Week

The USW and Delphi agree that:

a. Independence Week Pay and Additional Time Off related to working during Independence Week will be eliminated.

b. At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.

c. Employees who are not scheduled to work during the Independence Week period shall have the option to use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such period.

d. Section 4, Paragraphs (22), (23a, b, c), (24), (25a, b, c), and (26) of the USW Local 87-L Delphi Vandalia Local Agreement will be eliminated.

e. ATO days already earned in 2007 will be paid in accordance with Section IV, Paragraph 25 of the Local Agreement.

9. COLA

The USW and Delphi agree that effective October 1, 2007, employees who are receiving the existing frozen COLA will have that COLA folded into their base wage rates.  Thereafter, COLA will be eliminated.

10. Shift Premium

The USW and Delphi agree that shift premium for E-II will be paid at a rate of 2.5% for 2nd shift and 5% for third shift.  The shift premium for E-I employees will be paid at 5% for 2nd shift and 10% for third shift.

11. AOL

The USW and Delphi agree that the corporate-paid subsidy for AOL will be discontinued.

12. Overtime

The USW and Delphi agree to ensure that overtime is closely monitored in a continuous effort to achieve and maintain the targeted level of 10%.  In particular, overtime paid at double time will be minimized or eliminated to the extent practicable.  The Local 87L President or his designated representative and the Plant Manager or his/her designated representative will review this cost item in the regularly scheduled operations meetings.  Further, it is also understood that double time will not be worked in other than emergency situations unless approved by the Divisional Director of Manufacturing or his/her designated representative.

## F.  SETTLEMENT OF ALL EMPLOYEE, RETIREE AND UNION ASSERTED AND UNASSERTED CLAIMS

The Parties agree to the following in partial consideration for the USW entering into this Agreement and in consideration for the releases to be provided pursuant to Section G:

1. Individual settlements pursuant to Transformation Program terms and conditions.

2. The USW asserted and unasserted claims are resolved pursuant to the settlement contained in Section F.2 and F.3 of the USW-Delphi-GM Memorandum of Understanding – Home Avenue – Delphi Restructuring dated August 16, 2007.

3. There shall be no waiver of rights, if any, to vested pension benefits, workers compensation benefits, unemployment compensation benefits, future claims arising out of the modified collective bargaining agreements, and pursuance of pending ordinary course grievances of employees remaining in the workforce.

4. All other consideration and concessions provided by GM and Delphi under the terms of this Agreement and all attachments to this Agreement.

The Parties also acknowledge that (i) the consideration provided by GM pursuant to this Agreement and all attachments to this Agreement constitutes a substantial contribution to Delphi's plan of reorganization, (ii) this contribution is necessary to the success of Delphi's plan of reorganization, and (iii) GM would not have made this contribution without obtaining the waivers and releases provided for herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

## G.  EFFECTIVE DATES AND BANKRUPTCY PROCEEDINGS

1. Subject to its terms and conditions, this Agreement is a final, binding and conclusive commitment and agreement that will be effective on the later of entry of an Order by the U.S. Bankruptcy Court approving this Agreement that is satisfactory to the USW, GM and Delphi (the "Approval Order"), or the first Monday following receipt by Delphi of written notice from the USW of ratification of the USW-Delphi-GM Memorandum of Understanding – Home Avenue Operations – Delphi Restructuring and the USW – Delphi – GM Memorandum of Understanding – Vandalia Operations – Delphi Restructuring (the "Effective Date"). The ratification process will commence as soon as practical following the date of this Agreement. In connection with Delphi's prosecution of a motion to obtain entry of the Approval Order in the Bankruptcy Court, (a) Delphi shall use its best efforts to file a motion for approval of this Agreement in form and substance reasonably acceptable to the Parties to be heard not later than the first monthly omnibus hearing at which the motion can be considered under the case management orders entered in the Bankruptcy Court, (b) Delphi shall provide, to the extent reasonably practicable, both the USW and GM with copies of, and a reasonable opportunity to comment on, all motions, applications, proposed orders, pleadings and supporting papers prepared by Delphi for filing with the bankruptcy court relating to court approval of this Agreement, and (c) the Parties shall support the approval of this Agreement in the Bankruptcy Court without condition, qualification or exception.

2. The parties acknowledge that the following provisions of this Agreement will not become effective until all of the following events have occurred and as of the date when the last of such events shall have occurred:  (a) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them and (b) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the

terms of this Agreement and the comprehensive settlement agreement between Delphi and GM:

a.  The Benefit Guarantee Term Sheet (Attachment B)
b.  Delphi pension freeze (Section D and Attachment B)
c.  Cessation of Delphi OPEB (Section D and Attachment B)
d.  414(l) transfer (Section E.2 and Attachment B)
e.  Section F.2

3.  The Parties agree that the order of the Bankruptcy Court approving this Agreement shall provide that any plan of reorganization consistent with this Agreement and any confirmation order entered into with respect to such plan shall include the following provisions:

a.  On the effective date of such plan of reorganization, the USW, all employees and former employees of Delphi represented or formerly represented by the USW, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, waive and release and be deemed to have waived and released any and all claims of any nature, whether liquidated, unliquidated, contingent, non-contingent, asserted or unasserted, existing and/or arising in the future against Delphi, its subsidiaries or affiliates, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, its subsidiaries or affiliates, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each, arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the USW and between GM and the USW related to such employees and the USW-GM-Delphi Memorandum of Understanding - Benefit Plan Treatment dated December 10, 1999 regarding pension and other matters concerning the employment of GM employees with Delphi Automotive Systems related to such employees (provided, however, that claims for benefits provided for or explicitly not waived under the provisions of this Agreement are not waived).

b.  A plan exculpation and release provision (which provision shall be at least as comprehensive as the plan exculpation and release provision under the plan of reorganization for the debtor) for the USW released parties (which shall include the USW and each of their current or former members, officers, committee members, employees, advisors, attorneys, accountants, investment bankers, consultants, agents and other representatives) with respect to any liability such person or entity may have in connection with or related to the Delphi bankruptcy cases, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any of the plan of reorganization, the disclosure statement concerning the plan of

reorganization, this Agreement or the Agreements on Attachment E hereto or any contract, employee benefit plan, instrument, release or other agreement or document created, modified, amended or entered into in connection with either the plan of reorganization or any agreement between the USW or Delphi, or any other act taken or omitted to be taken consistent with this Agreement in connection with the Delphi bankruptcy.

c. This Agreement and the agreements referenced in Attachment E shall be assumed under 11 U.S.C. §365.

4. Nothing contained herein shall constitute an assumption of any agreement described herein, including, without limitation any collective bargaining agreement between the USW and Delphi (except as provided for in Section G.3) or any commercial agreement between GM and Delphi, nor shall anything herein be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party. The Parties further agree (and the Bankruptcy Court order shall also provide) that this Agreement is without prejudice to any interested party (including the parties to this Agreement and the statutory committees) in all other aspects of Delphi's Chapter 11 cases and that each Party to this Agreement reserves all rights not expressly waived herein.

5. Unless this Agreement is consummated following all required approvals, nothing herein shall bind any of the Parties nor shall the Agreement be admissible in any judicial or other proceeding on behalf of or against any Party.

The parties, by their duly authorized officers and representatives, agree accordingly this 16th day of August, 2007.

| United Steelworkers | Delphi Corporation | General Motors Corp |
|---|---|---|
| United Steelworkers - Local 87L | | |

| United Steelworkers - Local 87L | Delphi Corporation | General Motors Corp |
|---|---|---|
| *[signature]* | *[signature]* | |
| *[signature]* | *[signature]* | |
| *[signature]* | *[signature]* | |
| *[signature]* | | |
| *[signature]* | | |
| *[signature]* | | |
| *[signature]* | | |
| *[signature]* | | |
| *[signature]* | | |
| *[signature]* | | |

_____    _____    _____

_____    _____    _____

 Attachment A



# Revenue – Headcount Projection – Vandalia

| | CY 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|
| Average Headcount (Brown Line Rev) | 48 | 175 | 174 | 161 | 158 | 151 |
| Average Headcount (Green Line Rev) | 48 | 175 | 174 | 192 | 194 | TBD |

# GM Major Products Pipeline – Vandalia

$ Millions Revenue

| CY | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|
| Brown Line (Booked + Contract Extensions) | 6.9 | 83.1 | 111.3 | 94.6 | 91.9 | 84.1 |

**Potential New Product Programs**

| | | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|
| GMT721 | HVAC | 0.0 | 0.0 | 0.0 | 0.8 | 1.6 | 1.5 |
| | PTC | 0.0 | 0.0 | 0.0 | 0.9 | 1.8 | 1.7 |
| GMT722 | HVAC | 0.0 | 0.0 | 0.0 | 0.1 | 0.2 | 0.3 |
| | PTC | 0.0 | 0.0 | 0.0 | 0.1 | 0.3 | 0.3 |
| GMT731 | HVAC | 0.0 | 0.0 | 0.0 | 1.7 | 3.4 | 3.2 |
| | PTC | 0.0 | 0.0 | 0.0 | 2.0 | 3.9 | 3.6 |
| GMT732 | HVAC | 0.0 | 0.0 | 0.0 | 0.4 | 0.8 | 0.9 |
| | PTC | 0.0 | 0.0 | 0.0 | 0.5 | 0.9 | 1.0 |
| GMT741 | HVAC | 0.0 | 0.0 | 0.0 | 1.9 | 3.7 | 3.4 |
| | PTC | 0.0 | 0.0 | 0.0 | 2.1 | 4.2 | 3.9 |
| GMT742 | HVAC | 0.0 | 0.0 | 0.0 | 0.4 | 0.8 | 1.0 |
| | PTC | 0.0 | 0.0 | 0.0 | 0.5 | 1.0 | 1.1 |
| Sub Total Potential New Programs | | 0.0 | 0.0 | 0.0 | 11.4 | 22.6 | 21.9 |
| **Total Potential Site Revenue** | | **6.9** | **83.1** | **111.3** | **106.0** | **114.5** | **106.0** |

*memo: other potential new product programs beyond 2012 CY*

| CY | | 2014 | 2015 |
|---|---|---|---|
| Epsilon II NG | HVAC | 9.7 | 20.9 |
| GMX-001 | HVAC | 10.2 | 20.4 |
| | PTC | 12.7 | 25.4 |
| **Sub Total Potential New Programs Beyond 2012** | | **32.6** | **66.7** |

**DELPHI**

Attachment B – Benefit Guarantee Term Sheet

(Attached Separately)

## Attachment C – Benefits

Effective January 1, 2008, the following changes are applicable to all Vandalia employees, skilled and production who are not retired (subject to the provisions of Attachment B), excluding E-1 employees (Benefit Code F4), whose benefits will remain unchanged.  Delphi will seek to continue to provide the applicable health care plan (HMO) to these E-I employees as long as it is cost effective and the carrier will administer the plan.  In the event the plan is no longer available, E-I employees will be placed in the Traditional Care Network.

### Active Health Care

- Medical and Drug coverage will be the Basic Medical Plan (BMP).  The new plan will be referred to as the BCBS Basic Medical Plan, Delphi plan code 5607.

  USW members affected by this change, who are currently enrolled in other plans, will be automatically enrolled in the BMP effective January 1, 2008.  The benefit summary for this plan appears later in this attachment.

- Dental and Vision coverages will be available after reaching 36 months of seniority.

### Post-employment Health Care

- Upon retirement from Delphi, eligible employees will be able to continue any health care coverages then in effect.  Continuation of such coverages will be at the retiree's own expense and will be the full cost of any coverages continued.

- Delphi will provide a Retiree Health Care Credit Balance ("Balance") that retirees can use to pay for continued coverages.  Delphi will credit each balance with $0.50 for every compensated hour during the employee's active employment after January 1, 2008.  In no event will calculation of a per hour cost (i.e. a pennysheet) for Vandalia include more than $0.50 per hour to account for the cost of this Retiree Medical Account.  Hours for which credit will generally be granted include any time for which pay is received, including straight-time hours, for such things as:

  o  Bereavement Pay;
  o  Call-in Pay;
  o  Holiday Pay;
  o  Jury Duty;
  o  Overtime;
  o  Short-term Military Duty; and
  o  Vacation

- The Balance will also be credited with interest on an annual basis.  The interest rate is that for the 30-year U.S. Treasury Bond.  Any interest will be credited based on the accrued Balance at the end of each calendar year and will be recorded no later than May 1 of each year.  This Balance continues to accrue until retirement or death at which time all credits and interest will cease to accrue.

- The Retiree Health Care Credit Balance will be a "notional" account and will not be funded but paid out of the general assets of the Corporation.

- At retirement or death, as applicable, the retiree or eligible surviving spouse may begin to draw down the balance. Credits may only be used to pay for the cost of health care coverages continued through Delphi or health care coverages purchased on an individual basis or through another group.  In other words the credits can be used for premiums or contributions towards premiums, but cannot be used to reimburse medical expenses such as deductibles and co-payments.

- The Balance has no cash value and may not be transferred. Employees who leave Delphi without retiring forfeit any accumulated Balance.

- Upon the death of the retiree or if an employee dies after an employee becomes eligible to retire voluntarily under the Hourly-Rate Employees Pension Plan, health care coverages that were available may be continued for an eligible surviving spouse and eligible dependents on a self-pay basis. If the retiree/employee was eligible for and had any remaining Balance, the surviving spouse will be allowed to draw from such Balance on the same basis as the retiree until the Balance is exhausted.

- A surviving spouse age 65 or older who is eligible, but is not enrolled for Medicare Part B coverage is not eligible to draw upon the Balance.  Coverages may be continued on a self-paid basis until Medicare Part B coverage is obtained.  After enrollment in Part B, the surviving spouse may draw upon the Balance while Medicare Part B enrollment is maintained.

## LIFE AND DISABILITY BENEFITS

- Corporation-paid Life Insurance while active will be based on the reduced base hourly rate.

- Corporation-paid Life Insurance will cease upon retirement; the employee may continue any employee-paid coverage.

- Sickness and Accident Coverage based on the reduced base hourly rate and limited to 26 weeks of benefits over any rolling 12-month period.  In no event will any employee be eligible for more than 60 weeks of benefits over the life of the Agreement.

- For current recipients, Extended Disability Benefit Coverage will be based on the reduced base hourly rate.  For new recipients, the Parties agree EDB will be made available on a self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Article II, 5 of Exhibit B (Life & Disability Supplement to the 2003 Master Agreement). Note: The joint parties will aggressively pursue an insurance provider in an effort to make available a self-paid EDB program.

## OTHER BENEFIT MODIFICATIONS

- Pension benefits will be provided under a defined contribution plan via a Corporation contribution to the employee's PSP account of 7% of eligible wages.  If the Union discovers instances where the Corporation contribution is other than 7% of eligible wage, the Corporation will investigate and rectify any error so that the employee is credited with the appropriate contribution amount.

- Applicable terms and conditions of the Supplemental Agreement, Exhibit D, and all local agreements that concern any income security plans, benefits, payments or practices shall not apply to E-II employees. Any funds in an individual's account will remain that of the employee for disbursement in accordance with plan regulations.

- GIS. will be eliminated

| | BASIC MEDICAL PLAN (1) (Plan Code 5607) | |
|---|---|---|
| **_ANNUAL DEDUCTIBLE_** <br> Individual <br> Family | $ 900 <br> $1,800 | |
| | **In Network** | **_Out-of-Network_** |
| **_COPAYMENTS_** <br> Plan Pays <br> You Pay | 75% <br> 25% | 55% <br> 45% |
| **_OUT OF POCKET MAXIMUM_** <br> Individual <br> Family | $2,500 <br> $5,000 | None <br> None |

**Notes:**

(1)  Annual deductibles, copayments, and out-of-pocket maximums are calculated on the basis of "Reasonable and Customary" charges (R&C) as determined by the carrier.  For those carriers with "participating" or approved provider arrangements, it is the amount the participating/approved provider has agreed to accept for covered services.

(2)  Deductibles, copayments, and out-of-pocket maximums apply only to covered hospital/surgical and medical services. They do not include mental health/substance abuse coverage or prescription drug coverage.

(3)  Expenses for certain preventive services such as annual physical, routine screening mammographies, screening PSA tests, PAP smears and proctoscopies received in accordance with program guidelines are not subject to annual deductibles and copayments if received from a network provider.

### OUTPATIENT SERVICES

- Outpatient Surgery — Same as in-hospital surgery; facility charges paid only for hospital outpatient department or carrier-approved ambulatory surgical center
- Physical Therapy — Carrier-approved providers covered; subject to utilization review
- Routine Office Visits — Routine office visits covered; one physical per year for enrollees over age six; includes appropriate screening exams
- Diagnostic X-Ray and Lab — Accepted procedures are covered
- Well-Baby Care — Covered through age six; not subject to annual deductibles and copayments if received from a network provider
- Preschool Immunization — Covered for all ages when medically necessary

- Mammography Screening, Pap Smears, PSA Screening — Covered 100% when received in accordance with program guidelines; not subject to annual deductibles and copayments
- Allergy Testing and Injections — Not covered

## HOSPITAL SERVICES
These services require preauthorization: Call SHPS at 1-877-405-0134

- Semiprivate Room and Board, X-ray, Other Hospital Services — Up to 365 days, semiprivate; 60 days out-of-care renewal period; excludes admissions for custodial care, physical therapy, dental procedures, and certain non-covered surgeries (e.g., cosmetic, refractive eye, sterilization reversals)
- Surgery — Most medically necessary surgeries covered
- Doctor Visits In-Hospital — Covered; includes consultations
- Maternity Benefits — Covered

## SKILLED NURSING CARE
These services require preauthorization: Call SHPS at 1-877-405-0134

- Skilled Nursing Facility — Up to 730 days; 60 days out-of-care renewal period; excludes custodial care
- Home Health Care — Medically necessary skilled/part-time/intermittent care provided in the home by carrier-approved provider. Limited to cost of equivalent care in a nursing facility. If mixture of skilled and unskilled services, or if skilled services exceed part-time and intermittent level, no coverage under BMP.

## _EMERGENCY_

- Ambulance — Covered when medically necessary
- Physician/Other Emergency Room Services — Covered if qualifies as emergency; otherwise, physician services covered as office visit and facility charges denied

Administered by Medco Health: 1-800-711-3459 or www.medcohealth.com

## _PRESCRIPTION DRUGS_

- Participating Pharmacies — You pay 25% ($15 minimum/$35 maximum) up to 34-day supply per prescription/refill for brand name prescriptions
  You pay $5 up to 34-day supply per prescription/refill for generic prescriptions
- Nonparticipating Pharmacies — You pay for the prescription and are reimbursed 75% of R&C, less the required copayment
- Mail-Order Prescription — You pay $40 up to 90-day supply per prescription/refill for brand name prescriptions
  You pay $12 up to 90-day supply per prescription/refill for generic prescriptions

**NOTE:** Prescriptions for weight control, inducement of pregnancy, and cosmetic purposes are excluded.
Prescriptions for smoking cessation limited to Mail Order and subject to controls.
Certain Maintenance Medications must be received through Mail Order after the original script and 2 refills have been obtained at retail.

## MENTAL HEALTH & SUBSTANCE ABUSE
These services require preauthorization: Call CIGNA Behavioral Health at 1-888-371-0767

- Outpatient Services — Mental Health: 1-20 visits at 100%, 21-35 at 75%; Substance Abuse: 1-35 visits at 100%
- Psychological Testing — 100% only when authorized
- Inpatient/Residential (Includes Detoxification) — Up to 45 days per benefit period
- Day/Night Treatment — Up to 90 visits per benefit period. Each (1) day of inpatient care reduces by two (2) the number of days available for day or night treatment

## _HEARING CARE_

- Examination/Hearing Aid — One every 36 months. Services must be obtained from a carrier-approved provider

**DURABLE MEDICAL EQUIPMENT/ PROSTHETICS & ORTHOTICS (DME/P&O)**

Administered by Northwood/NPN at 1-800-936-9314

In Network: Covered at 100% when medically necessary.

Out-of-Network: Enrollee must submit claim to Northwood/NPN. Claim is subject to the in-network reimbursement if medically necessary. Any remaining balance is the enrollee's responsibility.

***OTHER***

- Medicare Eligible
- Sponsored Dependents

Accepted.
Accepted.  You pay cost

Attachment C

Intentionally omitted – Vandalia attrition options contained in Section C of this Agreement

Attachment E – List of Agreements

(Attached Separately)

**Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and
GM Consensual Triggering of Benefit Guarantee**

1) This Term Sheet sets forth the agreement of General Motors Corporation ("GM"), Delphi Corporation, or any successor to Delphi as a result of the acquisition of substantially all the stock or assets of Delphi Corporation or a merger of Delphi Corporation, or any plan sponsor of the Delphi Hourly-Rate Employees Pension Plan ("Delphi"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and its Local Union 87L ("USW") regarding the freeze of the 2003 Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP"), Delphi's cessation of post-retirement health care benefits and employer-paid post-retirement life insurance benefits (hereinafter referred to as "OPEB"), and the terms of a consensual triggering and application of the Benefit Guarantee agreement between GM and the USWA, dated December 13, 1999 and signed December 16, 17 and 22, 1999 ("Benefit Guarantee"). For purposes of this Term Sheet, the term "Covered Employee" will have the same meaning as in the Benefit Guarantee and does not include employees who were employed under a competitive hire agreement unless they were at parity for wages and benefits as of May 28, 1999, provided however, that USWA represented employees who were employed as of May 28, 1999 and were initially hired under a competitive hire agreement that provided for them to grow into full parity for all purposes, including but not limited to all benefit participation on the same basis as non-competitive hire employees and the ability to grow into full wage parity, are also Covered Employees, provided further that USW represented employees who retired on or before July 1, 2007 and are receiving Delphi paid post-retirement health care benefits under the terms of the Delphi Health Care Program for Hourly Employees will be considered a Covered Employee for purposes of the OPEB provisions of this Term Sheet. Except as otherwise expressly stated herein, the terms of the respective Delphi and GM employee benefit plans and programs will govern. This Term Sheet does not, and is not intended to, constitute an employee benefit plan under the meaning of ERISA. This Term Sheet supersedes any and all previous letters, agreements and understandings that are not specifically addressed herein pertaining to the matters set forth in this Term Sheet.

2) The parties acknowledge that this Term Sheet will become effective (the "Effective Date") when all of the following events have occurred and as of the date when the last of such events shall have occurred: (a) the entry of an approval order by the Bankruptcy Court in Delphi's chapter 11 cases approving the USW-Delphi-GM Memorandum of Understanding – Home Avenue – Delphi Restructuring and the USW-Delphi-GM Memorandum of Understanding – Vandalia – Delphi Restructuring which incorporates (among other subject matters) this Term Sheet and approves modifications to the existing collective bargaining agreements between Delphi and the USW resolving any Section 1113 and 1114 motions pending in the Bankruptcy Court as between Delphi and the USW; (b) successful ratification by the USW membership of such of the agreements referred to in the preceding clause as

are determined by the USW to require such ratification; (c) execution by Delphi and GM of a comprehensive settlement agreement resolving the financial, commercial, and other matters between them; and (d) the substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases (the "Plan") and confirmed by the Bankruptcy Court which incorporates, approves and is consistent with all of the terms of this Term Sheet and the comprehensive settlement agreement between Delphi and GM.

**<u>Pensions</u>**

3) Pursuant to the Plan and this Term Sheet, Delphi will as of the first of the month next following the Effective Date or as soon as practicable thereafter in accordance with applicable law (the "Freeze Date"), amend the Delphi HRP so as to freeze benefit accruals for future credited service in the Delphi HRP, except as set forth in paragraph 4.b. of this Term Sheet.

4) With regard to such amendment and freeze of the Delphi HRP, Delphi will cause the frozen Delphi HRP to pay benefits in accordance with the terms of the Delphi HRP and applicable law.  In this regard, the parties agree as follows:

   a) Covered Employees, who are retired as of the Freeze Date, will continue to be eligible for and receive from the Delphi HRP all benefits, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP as of the date immediately preceding the Effective Date.

   b) Delphi employees who are participants in the Delphi HRP (without regard to whether they are also "Covered Employees") who are participants in a USW-GM-Delphi Special Attrition Program, if such a program is agreed to and implemented (the "SAP"), and who are not retired or separated from service under the SAP as of the Freeze Date, will receive credited service in the Delphi HRP for all purposes, including but not limited to eligibility, vesting and future benefit accruals, as if there were no freeze, until the earlier of their retirement or separation from service under the terms of the SAP.  For the avoidance of doubt, the Delphi HRP is solely responsible for all credited service for accrual, vesting and eligibility purposes for all Delphi participants in the SAP, including but not limited to participants in the pre-retirement program option.  Further, all Delphi SAP participants will be eligible for and will receive full Delphi HRP benefits upon their retirement under the terms of the SAP, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP as of the date immediately preceding the Effective Date. SAP participants are not eligible to receive Delphi contributions or matching contributions under any Delphi defined contribution pension plan.

   c) Covered Employees (other than those referred to in paragraph 4.b. of this Term Sheet) who are eligible to retire as of the Freeze Date will, upon their retirement, receive from the frozen Delphi HRP all benefits provided for in the Delphi HRP

under the terms in effect as of the date immediately preceding the Effective Date, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP.

d) Covered Employees (other than those referred to in paragraph 4.b. of this Term Sheet) who become eligible to retire after the Freeze Date, when taking into account Delphi credited service, their age at retirement, any GM credited service provided for under paragraph 8. of this Term Sheet, and any other applicable credited service (including credited service as recognized by the Delphi HRP in accordance with paragraph 5 of this Term Sheet), will upon their retirement receive from the Delphi HRP all benefits provided for in the Delphi HRP, including but not limited to any applicable supplements and benefit redetermination provided for in the Delphi HRP under the terms in effect as of the date immediately preceding the Effective Date.

e) For the avoidance of doubt, Covered Employees referred to in paragraphs 4.c. and 4.d. of this Term Sheet, will, upon retirement, receive from the Delphi HRP in addition to any other applicable Delphi HRP benefits the:

    i. full amount of the 30 & out benefit through age 62 and one month, or the 80% date for those born on or before September 14, 1945, including, but not limited to, the full Early Retirement Supplement, in effect as of the date immediately preceding the Effective Date;

    ii. portion of the Interim Supplement (which is applicable in both 85 point and 60 & 10 retirements) in effect under the Delphi HRP based on the credited service accrued as of the date immediately preceding the Freeze Date and age at the time of retirement; and

    iii. portion of the Temporary Benefit (T&PD and mutual retirements) in effect under the Delphi HRP based on the credited service accrued as of the date immediately preceding the Freeze Date, not to exceed 30 years.

f) For the avoidance of doubt, no Delphi HRP participants, including the Covered Employees referred to in paragraphs 4.a. through 4.d. of this Term Sheet, will receive lump sum payments or any increase in benefits above the level of those provided for in the Delphi HRP as of January 1, 2007, except as may be mutually agreed by the USW and Delphi after the term of the extended 1999 USWA-Delphi Master Agreement, i.e. after September 14, 2011. Additionally, no new participants will be allowed to join the frozen Delphi HRP.

g) Until the Freeze Date, Covered Employees will continue to receive credited service in the Delphi HRP for all purposes, including but not limited to, eligibility, vesting, and future benefit accruals. During this period, such Covered Employees will not be eligible for any other corporation provided defined benefit or defined contribution pension benefits or accruals. At the expiration of this

period they will become eligible to participate in all benefit plans at their location on the same basis as other USW employees at such location.

h) Covered Employees who continue to be employed by Delphi, or any Delphi operation divested after October 8, 2005, after the period of time they are eligible to accrue credited service in the GM HRP under paragraph 8.a. of this Term Sheet will become eligible to receive any applicable Delphi contributions or matching contributions under any Delphi defined contribution pension plan following the expiration of such period.

5) After the Freeze Date, all Delphi HRP participants (other than those referred to in paragraph 4.b. of this Term Sheet), including, but not limited to, Covered Employees who are employed at a Delphi operation divested after October 8, 2005, who had not retired or separated from service as of the Freeze Date will, subject to the other terms of the Delphi HRP in effect as of the date immediately preceding the Effective Date, be treated in the Delphi HRP as active participants for all purposes, other than future benefit accruals based on additional credited service, for all periods of time on or after the Freeze Date and prior to retirement or separation from service from Delphi, GM, or any Delphi operation divested after October 8, 2005; provided, however, that for any Delphi operation divested after October 8, 2005 and prior to the Effective Date such active participant treatment is subject to paragraph 6 of this Term Sheet.

6) The Delphi HRP's ability to treat separated employees who are employed at a Delphi operation divested after October 8, 2005 and prior to the Effective Date, as active participants for all purposes other than future benefit accruals based on additional credited service in accordance with paragraph 5 of this Term Sheet is contingent upon Delphi obtaining all required governmental approvals (which Delphi is seeking). If Delphi does not obtain such governmental approvals, Delphi will provide an alternative to enable such participants to continue to accrue credited service for purposes of vesting and eligibility to retire the same as other similar active Delphi HRP participants. For separated employees employed at a Delphi operation divested after October 8, 2005 and prior to the Effective Date, such alternatives include, but are not limited to, temporarily leasing the employees to a successor employer or amending the frozen Delphi HRP on a retroactive basis (i.e., after the Effective Date) to recognize credited service with a successor employer for purposes of vesting and eligibility (but not benefit accrual).

7) In furtherance of the Plan, the parties agree that Delphi's action to freeze the Delphi HRP as set forth in paragraph 3. of this Term Sheet will trigger sections b. and e. of the Benefit Guarantee for Covered Employees as of the Freeze Date.

8) In accordance with GM's obligations under section b. of the Benefit Guarantee, GM and the USW agree that as of the Freeze Date the General Motors Hourly-Rate Employees Pension Plan ("GM HRP") will be amended to provide the following:

a) Covered Employees, who are Delphi employees as of the Freeze Date or Covered Employees who are employed at a Delphi operation divested after October 8, 2005 and prior to the Freeze Date (other than those referred to in paragraph 4.b. of this Term Sheet), will be eligible to accrue credited service under the GM HRP for all purposes, including but not limited to eligibility, vesting, and future benefit accruals for the seven (7) year period commencing on the Freeze Date. Any such benefits provided by the GM HRP shall be at the level and scope in effect at Delphi on the day immediately preceding the Effective Date and shall be secondary to benefits provided by Delphi, the Delphi HRP, any Delphi operation divested after October 8, 2005 or any benefit plan of such operation, any of their subsidiaries, affiliates or successors or associated pension plans, and/or the PBGC. In no event shall the GM HRP provide pension benefits on such credited service at a level and scope that exceeds that being provided to hourly retirees of GM. The amount of such credited service accrued will equal:

    i. the amount of credited service that, but solely for the Freeze, would have been earned after the Freeze Date under Article III of the Delphi HRP in effect as of the date immediately preceding the Effective Date; and

    ii. to the extent not taken into account in paragraph 8.a.(i) of this Term Sheet, the amount of credited service that, but solely for the Freeze and divestiture, would have been earned while working after the Freeze Date at any Delphi operation divested after October 8, 2005.

Nothing in this Term Sheet shall be deemed to require GM to grant credited service beyond that described in this section 8.a. Employees shall be provided only the amount of credited service earned as described in this section 8.a, and shall not receive credited service otherwise.

b) In regard to the credited service accrued in the GM HRP under paragraph 8.a. of this Term Sheet, the GM HRP will recognize Delphi HRP credited service accrued prior to the Freeze Date for purposes of vesting and eligibility to retire for any Covered Employee. No other Delphi HRP credited service will be recognized by the GM HRP.

c) The GM HRP benefit payable to a Covered Employee, who retires as a normal retirement under Article II, section 1. of the Delphi HRP and GM HRP, will be a Basic Benefit based on GM HRP credited service accrued under paragraph 8.a. of this Term Sheet and the rates in effect under the Delphi HRP as of the Effective Date.

d) The GM HRP benefit payable to a Covered Employee, who retires under Article II, section 2(a)(3) of the Delphi HRP and GM HRP with 30 or more years of credited service prior to age 62 and one month, will be a Basic Benefit payable beginning at age 62 and one month based on the number of years of credited

service accrued under the GM HRP  under paragraph 8.a. of this Term Sheet and the rates in effect under the Delphi HRP as of the Effective Date.

e) The GM HRP benefit payable to a Covered Employee, who retires under the Delphi HRP and GM HRP  prior to age 65 with 85 Points or age at least 60 with 10 or more years of credited service, under Article II, section 2(a)(1) or 2(a)(2) of the Delphi HRP and GM HRP  or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the GM HRP, or for the Home Avenue plant only (including, but not limited to, those Covered Employees at the Home Avenue plant who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant), as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP, will consist of the following:

   i. the Basic Benefit based on the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet, age at time of retirement, and the rates in effect under the Delphi HRP as of the Effective Date.  Such benefits from the GM HRP  are payable beginning upon the date of retirement and will be redetermined, if applicable at age 62 and one month, under the terms of the Delphi HRP in effect as of the date immediately preceding the Effective Date; and

   ii. if applicable, an interim supplement based on the rates in effect under the Delphi HRP as of the date immediately preceding the Effective Date for the number of years of credited service accrued under the GM HRP  under paragraph 8.a. of this Term Sheet and age at time of retirement.  The duration of such interim supplement is modified as set forth in the letter in the Delphi HRP entitled Social Security.

   iii. if applicable, a temporary benefit based on the rates in effect under the Delphi HRP as of the date immediately preceding the Effective Date for the number of years of credited service accrued under the GM HRP  under paragraph 8.a. of this Term Sheet.  Provided, however, that such number of years of credited service when added to the number of years of credited service in the Delphi HRP will not exceed 30. The duration of such temporary benefit is modified as set forth in the letter in the Delphi HRP entitled Social Security.

f) Any Covered Employee who, after considering: i) the credited service accrued in the GM HRP under paragraph 8.a. of this Term Sheet; ii) the Delphi HRP credited service recognized in the GM HRP for eligibility to retire under paragraph 8.b. of this Term Sheet; and iii) age at retirement or separation from service from Delphi, or any Delphi operation divested after October 8, 2005, is not eligible for

retirement under the GM HRP as described in paragraph 8.c., 8.d., or 8.e. of this Term Sheet, will receive only a deferred vested benefit from the GM HRP based on the years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet. The Basic Benefit will be based on the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet, age at time of benefit commencement, and the rates in effect under the Delphi HRP as of the date immediately preceding the Effective Date. Additionally, if Delphi does not obtain all required government approvals referenced in paragraph 6 of this Term Sheet and does not otherwise treat a participant as an active participant in paragraph 6 of this Term Sheet, such participant will receive only a deferred vested benefit from the GM HRP based on the years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet. The Basic Benefit will be based on the number of years of credited service accrued under the GM HRP under paragraph 8.a. of this Term Sheet, age at time of benefit commencement, and the rates in effect under the Delphi HRP as of the date immediately preceding Effective Date. Neither GM, or the GM HRP, will have any obligation to supplement the deferred vested amounts set forth above.

g) Provided that Delphi complies with its obligations set forth in sections 3, 4, and 5 of this Term Sheet, GM's adherence to the provisions of sections 8.a through 8.f of this Term Sheet shall constitute full compliance with its obligations under section b. of the Benefit Guarantee.

h) For the avoidance of doubt, for the purposes of paragraph 8 of this Term Sheet for Covered Employees who have not retired or separated from service from Delphi, GM, or any Delphi operation divested after October 8, 2005, the GM HRP will continue to recognize the growth in age of such Covered Employees during the period they are considered an active participant in the Delphi HRP pursuant to paragraph 5 of this Term Sheet. For purposes of such recognition of growth in age in the GM HRP, such Covered Employees will not be considered by the GM HRP to have separated from service from GM on a "time for time" basis during the period they are considered an active participant in the Delphi HRP pursuant to paragraph 5 of this Term Sheet.

9) Unless GM and the USW otherwise agree in future bargaining the benefit rate applicable to any service accrued in the GM HRP under paragraph 8.a. of this Term Sheet will be the rate in effect in the Delphi HRP on the Effective Date. Unless Delphi and the USW otherwise agree in future bargaining after the term of the extended 1999 USWA-Delphi Master Agreement, i.e., after September 14, 2011, the benefit rate applicable to service accrued in the Delphi HRP will be the rate in effect under the Delphi HRP on the date immediately preceding the Effective Date.

10) In regard to the triggering of section e. of the Benefit Guarantee as of the Freeze Date, no benefits will be paid pursuant to section e. of the Benefit Guarantee unless Delphi or the Delphi HRP fail to pay pension benefits to Covered Employees as set

forth in this Term Sheet. Any benefits provided pursuant to section e. of the Benefit Guarantee will when combined with any pension benefits received (x) from a pension plan sponsored by Delphi, any of its subsidiaries or affiliates or any of their successor company(ies), (y) from the PBGC, and/or (z) from a pension plan sponsored by GM, result in the retired Covered Employees receiving pension benefits equal to those called for in the USW-Delphi agreement applicable as of the date immediately preceding the Freeze Date.

11) In the event that anytime after the Freeze Date, the Delphi HRP is terminated or Delphi further amends the Delphi HRP in a manner that diminishes the benefits from the Delphi HRP to a level below those required by this Term Sheet, sections b. and e. of the Benefit Guarantee will continue in full force and effect with respect to such subsequent termination and/or amendment, regardless of whether such subsequent termination and/or amendment occurs before or after October 18, 2007.

12) For purposes of determining Base Hourly Rate in the Delphi HRP and the GM HRP for all Covered Employees who are SAP participants, the highest straight time hourly rate plus any cost-of-living allowance in effect during the last 13 consecutive pay periods the Covered Employee actually worked will be utilized. For all other Covered Employees, Base Hourly Rate for purposes of then Delphi HRP and GM HRP will be the higher of Base Hourly Rate calculated (a) on the day preceding the date they transition to employment under new terms and conditions of a USW-Delphi agreement or (b) on the date of retirement. The Delphi HRP and GM HRP benefit class code applied to a Covered Employee who becomes covered by new terms of an USW-Delphi agreement will be no lower than the benefit class code in effect for such employee on the date immediately preceding their becoming covered by such agreement.

13) The parties agree that, except as otherwise mutually agreed by the USW and Delphi after the term of the extended 1999 USWA-Delphi Master Agreement, i.e. after September 14, 2011, Delphi will not amend the frozen Delphi HRP or successor plan to allow for lump sum distributions, to provide a more lucrative benefit formula, or to provide for an expansion of credited service provisions or benefits. Additionally, at no time shall Delphi take such actions at levels exceeding those provided for in the GM HRP as the GM HRP may be amended from time to time, unless all GM and GM HRP obligations under sections b. and e. of the Benefit Guarantee are extinguished.

**OPEB**

14) Pursuant to the Plan and this Term Sheet, as of the Effective Date or as soon as practicable thereafter in accordance with applicable law and administrative requirements (the "Cessation Date"), Delphi will cease to provide, offer, or have any liability for OPEB to its USW represented hourly employees and retirees and their spouses, surviving spouses, dependents or other beneficiaries. The cessation will be administered on a "claims incurred" basis, and Delphi will therefore retain

responsibility for all claims incurred but either unfiled or unpaid as of the Cessation Date. This cessation will include elimination of the Special Benefit relating to Medicare Part B.

15) In furtherance of the Plan and this Term Sheet, the parties agree that Delphi's action to cease providing or offering OPEB on the basis referred to in paragraph 14 of this Term Sheet will trigger sections c. and d. of the Benefit Guarantee as of the Cessation Date as set forth herein. The parties further agree that the scope or manner in which GM satisfies its obligations under sections c. and d. of the Benefit Guarantee and this Term Sheet will not result in OPEB liability to Delphi. The parties further agree that GM will not satisfy its obligations under the Benefit Guarantee and this Term Sheet by reimbursing employees for COBRA continuation premiums.

16) The parties agree to fully cooperate with the efficient transfer of administrative responsibilities from Delphi to GM so that the Cessation Date will be the Effective Date or as soon as possible after the Effective Date, but in no case later than 3 months after the Effective Date (unless mutually agreed to by the parties). The parties further agree that there may be differing Cessation Dates for different portions of post-retirement medical plan benefits depending on the benefit and how quickly administrative responsibilities can be transferred. The parties further agree that the Cessation Date shall not occur unless and until GM is prepared to assume responsibility for all covered claims incurred on and after the Cessation Date, in order to assure a smooth transition of the obligation.

17) In full satisfaction of the GM's obligations under sections c. and d. of the Benefit Guarantee, GM agrees to provide post-retirement medical and employer paid post-retirement life insurance to eligible Covered Employees as described herein. The parties further agree that the Special Benefit described in Article 5 of the USW-Delphi health care agreement is a post-retirement medical benefit as defined in paragraph c.2 of the Benefit Guarantee, and is therefore covered by the Benefit Guarantee and the obligations set forth in the preceding sentence. The parties further agree as follows:

    A. This triggering of sections c. and d. of the Benefit Guarantee shall apply only to Covered Employees :

        i. who as of the Effective Date are retired from Delphi with eligibility for OPEB under the terms of the 1999 Delphi-USWA Master Agreements;

        ii. who as of the Effective Date are eligible to retire from Delphi on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out ) , or for the Home Avenue plant only

(including, but not limited to, those Covered Employees at the Home Avenue plant who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant), as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP,  with OPEB under the terms of the 1999 USWA-Delphi Master Agreement in effect on the date immediately preceding the Effective Date; or

    iii.   who when considering all Delphi HRP credited service accrued prior to the Freeze Date and GM HRP credited service obtained pursuant to paragraph 8.a. of this Term Sheet, become eligible to retire on a normal retirement basis under Article II, section 1 of the Delphi HRP (i.e., age 65) or an early retirement basis under Article II, sections 2(a)(1), 2(a)(2) or 2(a)(3) of the Delphi HRP (i.e., 60 & 10, 85 Point or 30 & Out) , or for the Home Avenue plant only (including, but not limited to, those Covered Employees at the Home Avenue plant who transfer in accordance with their seniority to the Vandalia plant in conjunction with cessation of operations at the Home Avenue plant), as a retirement under mutually satisfactory conditions pursuant to Article II, section 2(b) of the Delphi HRP or as a Total and Permanent Disability retirement under Article II, section 3 of the Delphi HRP approved both by Delphi pursuant to the procedures applicable to the Delphi HRP as of the date immediately preceding the Effective Date and approved by GM under the procedures applicable to the GM HRP, within 7 years of the Effective Date; or

    iv.   who when considering all Delphi HRP credited service accrued prior to the Freeze Date and GM HRP credited service obtained pursuant to paragraph 8.a. of this Term Sheet have ten (10) years of credited service within 7 years of the Effective Date and have attained age 55 within 7 years of the Effective Date.

B.   The parties agree that there is no triggering of sections c. and d. of the Benefit Guarantee for any Covered Employees other than those specifically identified in sub-paragraph A. of this paragraph of the Term Sheet.

C.   All post-retirement medical benefits provided with respect to Covered Employees by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Health Care Program for Hourly Employees (provided however that the Covered Employees referenced in paragraph 17.A.(iv) of this Term Sheet, upon their retirement or separation from service from Delphi, GM, and any Delphi operation divested after October 8, 2005, will be treated for OPEB

purposes as if they are eligible to retire). As such GM will provide the applicable level of post retirement medical benefits consistent with the terms of the Modified Plan, as defined in the settlement agreement (the "Settlement Agreement") approved by the court in the case *IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151)*,, on the same basis as such benefits are provided to GM-IUE hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

D.   All employer-paid post-retirement Basic Life Insurance benefits provided with respect to Covered Employees by GM will be in accordance with all the ongoing terms, conditions and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees (provided however that the Covered Employees referenced in paragraph 17.A.(iv) of this Term Sheet, upon their retirement or separation from service from Delphi, GM, and any Delphi operation divested after October 8, 2005, will be treated for OPEB purposes as if they are eligible to retire) and will be at the level provided for Delphi USW retirees on the date immediately preceding the Effective Date, provided however that in no event shall GM be required to provide benefits to Covered Employees at a level and scope that exceeds that being provided for USW-represented hourly retirees of GM.

E.   The parties also agree that, if any Covered Employee other than those specifically identified in sub-paragraph A of this paragraph of the Term Sheet does not return to GM for purposes of retirement under and subject to the terms of the SAP, he or she will be deemed ineligible for OPEB from GM or Delphi. Provided however, that if a Covered Employee meets all of the following conditions: (a) is on an approved Extended Disability Leave of Absence from Delphi as of the Effective Date; (b) cannot become eligible to retire with GM post-retirement medical and employer paid post-retirement life insurance pursuant to paragraph 17. A. of this Term Sheet; (c) has applied for a Total and Permanent Disability retirement under Article II, Section 3 of the Delphi HRP within 7 years of the Effective Date and if approved retires; (d) meets the requirements to retire with GM provided post-retirement medical and employer paid post-retirement life insurance under the provisions of paragraph 17 of this Term Sheet without regard to the reference to "within 7 years of the Effective Date" contained in paragraph 17.A. iii. of this Term Sheet; and (e) has unbroken seniority with Delphi when they retire; such Covered Employee will be treated as a flowback to GM "check the box" only for purposes of post-retirement medical and employer paid post-retirement life insurance. This  provision addressing Covered Employees on Extended Disability Leave from Delphi will not apply to any other leave of absence, paid or unpaid, and does not impact any pension  provision in this Term Sheet

### General Provisions

18) It is the intent of the parties that, except as specifically required by this Term Sheet, no employee covered by this Term Sheet can simultaneously receive, earn or accrue credited service, pension contributions, OPEB contributions or eligibility in more than one pension or OPEB plan sponsored or funded by GM, Delphi, a successor company and/or any Delphi operation divested after October 8, 2005, i.e. no "double dip".  As a result, the parties agree as follows:

   a) During the period of time a Covered Employee is eligible to accrue credited service in the GM HRP under paragraph 8.a. of this Term Sheet, such Covered Employee will not be eligible to receive Delphi contributions or matching contributions under any Delphi defined contribution pension plan, or receive accruals in or contributions to any other defined benefit or defined contribution pension plan that is established or maintained by Delphi, a successor company or any Delphi operation divested after October 8, 2005;

   b) Neither Delphi, a successor company, nor any Delphi operation divested after October 8, 2005 will provide any payments, contributions or accruals relating to OPEB to any Covered Employee who can attain eligibility to receive OPEB from GM pursuant to paragraph 17 of this Term Sheet; and

   c) Neither Delphi, a successor company, nor any Delphi operation divested after October 8, 2005 will provide any payments, contributions or accruals relating to OPEB to any Covered Employee or other employee who attains eligibility for GM provided or GM funded OPEB through any means.

19) Delphi, GM, and the USW agree to make all collective bargaining agreement, pension, and benefit plan amendments and modifications necessary to implement and comply with the terms contained herein.

20) This Term Sheet shall not be effective unless the confirmation order approving the Plan incorporates and approves all of the terms of this Term Sheet (including the releases provided for herein), does not include terms that are inconsistent with this Term Sheet, and provides that on the Effective Date, the USW, all employees and former employees of Delphi represented or formerly represented by the USW, and all persons or entities with claims derived from or related to any relationship with such employees or former employees of Delphi, waive and be deemed to have waived any and all claims of any nature, whether liquidated, un-liquidated, contingent, non-contingent, asserted, unasserted, existing and/or arising in the future against Delphi, the Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, GM, the GM HRP, the GM Health Care Program for Hourly Employees and the GM Life and Disability Benefits Program for Hourly Employees, and the officers, directors, employees, fiduciaries, and agents of each,  arising from or related to any obligations of Delphi, GM and/or such employee benefits plans to

provide OPEB or pension benefits, or related in any way to the amendment and freeze of the Delphi HRP, the cessation of Delphi OPEB and the triggering of the Benefit Guarantee; provided however, that claims for benefits provided for under the provisions of this Term Sheet or ordinary course claims by participants and beneficiaries of the GM HRP, the GM Health Care Program for Hourly Employees, the GM Life and Disability Benefits Program for Hourly Employees, Delphi HRP, the Delphi Health Care Program for Hourly Employees and the Delphi Life and Disability Benefits Program for Hourly Employees, arising after the Effective Date based on the denial or miscalculation of benefits under such plans are not waived. The parties acknowledge that Delphi and/or GM may seek additional waivers of other claims, other than ordinary course grievances and workers' compensation claims, in connection with the resolution of its current labor negotiations with the USW.  The parties also acknowledge that (i) the consideration provided by GM in this Term Sheet constitutes a substantial contribution to the Plan, (ii) this contribution is necessary to the success of the Plan, and (iii) GM would not have made this contribution without obtaining the releases provided for herein. The Parties further acknowledge that nothing in the preceding sentence shall give rise to or entitle GM to seek or be allowed any claim against or consideration from any entity, including Delphi, other than as specifically approved by the Bankruptcy Court as agreed to by Delphi and GM in a comprehensive settlement agreement resolving the financial, commercial, and other matters between them.

21) Delphi and GM will cause a transfer of pension assets and liabilities from the Delphi HRP to the GM HRP. This transfer is part of the overall Delphi restructuring and is designed to improve the funding level of the Delphi HRP.  The transfer will have no effect on accrued pension benefits for employees who either remain in the Delphi HRP or are transferred to the GM HRP. Such transfer will be in an amount agreed to between GM and Delphi and will be conducted in accordance with Section 414(l) of the Internal Revenue Code of 1986, as amended, and Section 208 of the Employee Retirement Income Security Act of 1974, as amended.

a) Any such transfer will be subject to the Internal Revenue Service ("IRS") ruling issued to Delphi and GM on May 29, 2007 related to the transfer, as may be amended from time to time.

b) The participants and their corresponding assets and liabilities to be included in the transfer will proceed in the following order to the extent necessary to achieve the amount of the transfer agreed upon by GM and Delphi.
   i) All UAW-represented employees who, before the date of the transfer ("the Transfer Date"), have flowed back to GM from Delphi (retired and active) or IUE-CWA represented employees who return to GM under a flowback or preferential hiring agreement.

   ii) Participants on a proportionate basis by union in any pre-retirement program ("PRP") option offered and selected as part of the UAW-GM-Delphi Special

Attrition Program, the IUE-CWA-GM-Delphi Special Attrition Program, any such Delphi PRP option included in any special attrition program negotiated with the USW, and any other PRP option in a special attrition program implemented prior to the Transfer Date. Within a given union, retired participants will be selected prior to active participants.

iii) Participants on a proportionate basis by union in the MSR option offered by Delphi to Delphi employees (the "Delphi MSR") in the UAW-GM-Delphi Special Attrition Program, the IUE-CWA-GM-Delphi Special Attrition Program, any such Delphi MSR option included in any special attrition program negotiated with the USW, and any other MSR option in a special attrition program implemented prior to the Transfer Date.

iv) The selection of retired or active PRP participants will be based on the highest seniority with Delphi as of the participant's retirement date for retired PRP participants, or the Transfer Date for active PRP participants. The selection of Delphi MSR participants will be based on the highest seniority with Delphi as of the participant's retirement date.

c) Except as otherwise agreed in future bargaining, the benefit payable by the GM HRP relating to the liability transferred to the GM HRP for a participant whose assets and liabilities were transferred will be based on the Delphi HRP rate in effect as of the Transfer Date.  To the extent assets and liabilities associated with active flowbacks and PRP participants are included in the transfer, GM will assume the responsibility for recognizing all past and future benefit service for this population under the GM HRP, including but not limited to the payment of any early retirement supplement.

d) After the transfer, the Delphi HRP will not retain any obligations for or relating to the pension liabilities transferred.

22) Nothing in this Term Sheet shall be deemed to prevent the USW and Delphi, after the term of the extended 1999 USWA-Delphi Master Agreement, i.e., after September 14, 2011, from negotiating future changes in pension or other benefits payable to any Covered Employee.

23) The parties have developed a series of examples (the "Examples"), attached hereto as Appendix 1, to show the operation of the provisions of this Term Sheet. The Examples are incorporated herein and made part of this Term Sheet. For the Examples which include individuals whose assets and liabilities are transferred in the 414(l) transfer, the pension benefit amount to be paid from the Delphi HRP will be payable from the GM HRP.

24) In the event a situation involving the pension benefits of a Covered Employee arises that is not addressed by the terms of this Term Sheet or the examples that are a part

of this Term Sheet, the intent of the parties is as follows. The pension benefits provided under paragraph 8 of this Term Sheet when combined with pension benefits payable by Delphi plans and the PBGC will in the aggregate equal the benefits that would have been provided under the terms of the Delphi HRP in effect on the date immediately preceding the Effective Date, assuming the Delphi HRP was not frozen until expiration of a period of 7 years from the Freeze Date. In applying this paragraph all conditions set forth in this Term Sheet continue to apply. Neither GM nor the GM HRP will recognize Mutual Retirements from the Delphi HRP or any extra grants of age or credited service, or other acceleration of retirement eligibility by Delphi or the Delphi HRP, unless specifically agreed to in writing by GM in its sole discretion. Nothing in this paragraph shall expand any obligation under paragraph 8 of this Term Sheet or require GM or the GM HRP to provide more years of credited service to a Covered Employee than are provided for under paragraph 8.a. i and ii of this Term Sheet.

The parties, by their duly authorized officers and representatives, agree accordingly this 16th day of August, 2007.

| United Steelworkers | Delphi Corporation | General Motors Corp |
|---|---|---|

United Steelworkers of
America, Local 87L

| United Steelworkers of America, Local 87L | Delphi Corporation | General Motors Corp |
|---|---|---|

# Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee

## Basic Life Insurance Examples – August 10, 2007

## Example #1- "30 and Out" Retirement within 7 years of the Effective Date

Assumes Effective Date, Cessation Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 7 years

30&Out Retirement
Retirement effective 7/1/2014 with 33.5 years of credited service
Age 58 at retirement

Employee's Wage as of 6/30/2007 is $26.85/hr
Employee's Wage reduced to $18.84/hr on 7/1/2007 and remains the same until date of retirement (example assumes no future increases)

Assumes utilization of the 2003 Delphi Life and Disability Benefits Program schedule Art. II, 1
Assumes the Ultimate Amount calculation is based on the credited service accrued under the Delphi HRP prior to the Freeze Date and the credited service accrued under the GM HRP

### Calculation of Basic Life Coverage:

- At date of retirement, life insurance coverage is reinstated by GM and equals **$61,000** (based on $26.85 wage level)

- Upon attainment of age 65 in 2021, the $61,000 amount begins to reduce by 2% per month over approximately 25 months until reaching the Ultimate Amount

- Ultimate Amount equals **$30,653** (33.5 years of credited service x 1.5% = 50.25%; Eligible for 50.25% of $61,000)

Note: In no event will a Delphi retiree's Basic Life insurance benefit exceed that of a similarly situated GM retiree.

## Example #2- "30 and Out" Retirement within 7 years of the Effective Date But The Employee Continues to Work For Longer than 7 years

Assumes Effective Date, Cessation Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 8.5 years

30&Out Retirement
Retirement effective 1/1/2016 with 35 years of service
Age 58 at retirement

Employee's Wage as of 6/30/2007 is $26.85/hr
Employee's Wage reduced to $18.84/hr on 7/1/2007 and remains the same until date of retirement (example assumes no future increases)

Assumes utilization of the 2003 Delphi Life and Disability Benefits Program schedule Art. II, 1
Assumes the Ultimate Amount calculation is based on the credited service accrued under the Delphi HRP prior to the Freeze Date and the credited service accrued under the GM HRP

### Calculation of Basic Life Coverage:

- At date of retirement, life insurance coverage is reinstated by GM and equals **$61,000** (based on $26.85 wage level)

- Upon attainment of age 65 in 2023, the $61,000 amount begins to reduce by 2% per month over approximately 25 months until reaching the Ultimate Amount

- Ultimate Amount equals **$30,653** (33.5 years of credited service x 1.5% = 50.25%; Eligible for 50.25% of $61,000)
-

Note: In no event will a Delphi retiree's Basic Life insurance benefit exceed that of a similarly situated GM retiree.

## Example #3- "85 Point" Retirement within 7 years of the Effective Date

Assumes Effective Date, Cessation Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 24 years
Employee continues to work at Delphi for another 3 years

85 Point Retirement
Retirement effective 7/1/2010 with 27 years of credited service
Age 58 at retirement

Employee's Wage as of 6/30/2007 is $26.85/hr
Employee's Wage reduced to $18.84/hr on 7/1/2007 and remains the same until date of retirement (example assumes no future increases)

Assumes utilization of the 2003 Delphi Life and Disability Benefits Program schedule Art. II, 1
Assumes the Ultimate Amount calculation is based on the credited service accrued under the Delphi HRP prior to the Freeze Date and the credited service accrued under the GM HRP

### Calculation of Basic Life Coverage:

▪ At date of retirement, life insurance coverage is reinstated by GM and equals **$61,000** (based on $26.85 wage level)

▪ Upon attainment of age 65 in 2017, the $61,000 amount begins to reduce by 2% per month over approximately 30 months until reaching the Ultimate Amount

▪ Ultimate Amount equals **$24,705** (27 years of credited service x 1.5% = 40.50%; Eligible for 40.50% of $61,000)

Note: In no event will a Delphi retiree's Basic Life insurance benefit exceed that of a similarly situated GM retiree.

## Example #4- "60 and 10" Retirement within 7 years of the Effective Date

Assumes Effective Date, Cessation Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 17 years
Employee continues to work at Delphi for another 2 years

60 & 10 Retirement
Retirement effective 7/1/2010 with 19 years of credited service
Age 60 at retirement

Employee's Wage as of 6/30/2007 is $26.85/hr
Employee's Wage reduced to $18.84/hr on 7/1/2007 and remains the same until date of retirement (example assumes no future increases)

Assumes utilization of the 2003 Delphi Life and Disability Benefits Program schedule Art. II, 1
Assumes the Ultimate Amount calculation is based on the credited service accrued under the Delphi HRP prior to the Freeze Date and the credited service accrued under the GM HRP

### Calculation of Basic Life Coverage:

- At date of retirement, life insurance coverage is reinstated by GM and equals **$61,000** (based on $26.85 wage level)

- Upon attainment of age 65 in 2015, the $61,000 amount begins to reduce by 2% per month over approximately 36 months until reaching the Ultimate Amount

- Ultimate Amount equals **$17,385** (19 years of credited service x 1.5% = 28.50%; Eligible for 28.50% of the $61,000)

Note: In no event will a Delphi retiree's Basic Life insurance benefit exceed that of a similarly situated GM retiree.

## Example #5- 30 Years of Service

Assumes Effective Date, Cessation Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 15 years
Employee continues to work at Delphi for another 15 years

30&Out Retirement
Retirement effective 7/1/2022 with 30 years of service
Age 58 at retirement
Employee had a total of 22 years of credited service as of the 7 year anniversary of the Freeze Date

Employee's Wage as of 6/30/2007 is $26.85/hr
Employee's Wage reduced to $18.84/hr on 7/1/2007 and remains the same until date of retirement (example assumes no future increases)

This example employee would not be eligible for OPEB in retirement from GM. Employee did not reach retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 50 with 22 years of credited service.  As such, this employee is not eligible for Basic Life coverage from GM in retirement.

# Example #6- "30 and Out" Retirement within 7 years of the Effective Date and Employee's Wage Reduced Prior to the Effective Date

Assumes Effective Date, Cessation Date and Delphi Plan Freeze Date is 1/1/2008
Employee's Credited Service as of 12/31/2007 = 26.5 years
Employee continues to work at Delphi for another 7 years

30&Out Retirement
Retirement effective 1/1/2015 with 33.5 years of credited service
Age 58 at retirement

Employee's Wage as of 9/30/2007 is $26.85/hr
Employee's Wage reduced to $10.00/hr on 10/1/2007 and remains the same until date of retirement (example assumes no future increases)

Assumes utilization of the 2003 Delphi Life and Disability Benefits Program schedule Art. II, 1
Assumes the Ultimate Amount calculation is based on the credited service accrued under the Delphi HRP prior to the Freeze Date and the credited service accrued under the GM HRP

## Calculation of Basic Life Coverage:

- At date of retirement, life insurance coverage is reinstated by GM and equals **$61,000** (based on $26.85 wage level)

- Upon attainment of age 65 in 2022, the $61,000 amount begins to reduce by 2% per month over approximately 25 months until reaching the Ultimate Amount

- Ultimate Amount equals **$30,653** (33.5 years of credited service x 1.5% = 50.25%; Eligible for 50.25% of $61,000)


Note: In no event will a Delphi retiree's Basic Life insurance benefit exceed that of a similarly situated GM retiree.

# Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee

## Pension Examples – August 8, 2007

In no event shall any employee be credited with more than one year of credited service in any calendar year between the Delphi Hourly-Rate Employees Pension Plan and any credited service provided under the Benefit Guarantee.

## Example #1- Employee Has Less Than 30 Years of Credited Service as of Delphi Plan Freeze Date, Retires With More Than 30 Years of Credited Service and Becomes Eligible for OPEB Within 7 Years of the Effective Date

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 7 years

30&Out Retirement
Retirement effective 7/1/2014 with 33.5 years of credited service
Single – Age 58 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 26.5 = $1,362.10  x .752 (due to age reduction)      =      $1,024.30
Early Retirement Supplement:                                                          $1,995.70
                                                                                     $3,020.00

**GM Share:**                                                                    $      0

**Total to Retiree:**                                                            $3,020.00

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 26.5 =        **$1,362.10**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 7 =        **$  359.80**

**Total to Retiree:**        **$1,721.90**

**Note: This example retiree would be eligible for OPEB in retirement from GM. Employee reached retirement eligibility within 7 years of the Effective Date.**

# Example #2: Employee Has At Least 30 Years of Credited Service as of Delphi Plan Freeze Date

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 30 years
Employee continues to work at Delphi for another 7 years

30&Out Retirement
Retirement effective 7/1/2014 with 37 years of credited service
Single – Age 58 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 30 = $1,542  x .752 (due to age reduction)      =          $1,159.58
Early Retirement Supplement:                                                                       $1,860.42
                                                                                                                  **$3,020.00**

**GM Share:**                                                                                      **$          0**

**Total to Retiree:**                                                                          **$3,020.00**

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 30 =                   **$1,542.00**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 7 =                     **$   359.80**

**Total to Retiree:**                               **$1,901.80**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee was already retirement eligible as of the Effective Date.**

# Example #3A- Employee Has 15 Years of Credited Service as of Delphi Plan Freeze Date & Retires with 30 Years of Service

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 15 years
Employee continues to work at Delphi for another 15 years

30&Out Retirement
Retirement effective 7/1/2022 with 30 years of service
Single – Age 58 at retirement
Employee had a total of 22 years of credited service as of the 7 year anniversary of the Freeze Date
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**

| | | |
|---|---|---|
| Basic Benefit:  $51.40 x 15 = $771 x .752 (due to age reduction)    = | | $  579.79 |
| Early Retirement Supplement: | | $2,440.21 |
| | | **$3,020.00** |

**GM Share:**                                                            $          0

**Total:**                                                               **$3,020.00**

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 15   =                                          $   771.00
(Note: At age 62 and one month, the Basic Benefit is redetermined.  An age reduction factor is no longer applied, since the employee  retired with at least 30 years of service for retirement eligibility purposes).

**GM Share: (BG Credited Service)**
Deferred Vested Basic Benefit:  $51.40 x 7 x .79  (due to age reduction)     =          **$   284.24**
(Note: A deferred vested age reduction factor is applied to the benefit, since the employee is age 58 at the time of retirement but only had 22 years of credited service as of the 7 year anniversary of the Freeze Date.  Employee is not considered retirement eligible by GM.  The age reduction factor that is applied is based on commencing the deferred vested pension benefit at age 62 and one month versus age 65).

**Total:**                                                               **$ 1,055.24**

**Note:  This example employee would not be eligible for OPEB in retirement from GM. Employee did not reach retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 50 with 22 years of credited service.**

# Example #3B- Employee Has 15 Years of Credited Service as of Delphi Plan Freeze Date & Retires with 30 Years of Service

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 15 years
Employee continues to work at Delphi for another 15 years

30&Out Retirement
Retirement effective 7/1/2022 with 30 years of service
Single – Age 60 at retirement
Employee had a total of 22 years of credited service as of the 7 year anniversary of the Freeze Date
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 15 = $771 x .867 (due to age reduction)        =        $  668.46
Early Retirement Supplement:                                                         $2,351.54
                                                                                     **$3,020.00**

**GM Share:**                                                                        $        0

**Total:**                                                                           **$3,020.00**

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 15   =                                                      $  771.00
(Note: At age 62 and one month, the Basic Benefit is redetermined.
An age reduction factor is no longer applied, since the employee retired
with at least 30 years of service for retirement eligibility purposes).

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40  x 7  x  .867 (due to age reduction)        =        **$   311.95**
(Note: Since the employee was age 60 at the time of retirement and
had 22 years of credited service as of the 7 year anniversary of the
Freeze Date, GM recognizes this is a 60 & 10 retirement for pension
purposes.  Since the employee does not have 85 points, an age
reduction factor is applied to the GM portion of the Basic Benefit).

**Total:**                                                                           $ 1,082.95

**Note:  This example employee would not be eligible for OPEB in retirement from GM.  Employee did not reach retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 52 with 22 years of credited service.**

# Example #3C- Employee Has 20 Years of Credited Service as of Delphi Plan Freeze Date & Retires with at least 30 Years of Service

Exhibit 2

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 20 years
Employee continues to work at Delphi for another 15 years

30&Out Retirement
Retirement effective 7/1/2022 with 35 years of service
Single – Age 58 at retirement
Employee had a total of 27 years of credited service as of the 7 year anniversary of the Freeze Date
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 20 = $1,028 x .752 (due to age reduction)         =        $  773.06
Early Retirement Supplement:                                                        $2,246.94
                                                                                   **$3,020.00**

**GM Share:**                                                            $         0

**Total:**                                                              **$3,020.00**


### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 20   =                                          **$1,028.00**
(Note: At age 62 and one month, the Basic Benefit is redetermined.
An age reduction factor is no longer applied, since the employee
retired with at least 30 years of service for retirement
eligibility purposes).

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 7     =                                         **$  359.80**
(Note: No age reduction factor is applied to the benefit since the
employee is age 58 at the time of retirement and had 27 years of
credited service as of the 7 year anniversary of the Freeze Date.
GM recognizes this is an 85 point retirement for pension purposes).

**Total:**                                                              **$1,387.80**


**Note:  This example employee would not be eligible for OPEB in retirement from GM.  Employee did not reach retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 50 with 27 years of credited service.**

**Example #3D  Employee Has Less Than 30 Years of Credited Service as of Delphi Plan Freeze Date, Retires With At Least 30 Years of Service and Becomes Eligible for OPEB Within 7 Years of the Effective Date**

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 22.5 years
Employee continues to work at Delphi for another 9 years

30&Out Retirement
Retirement effective 7/1/2016 with 31.5 years of service
Single – Age 58 at retirement
Employee had a total of 29.5 years of credited service as of the 7 year anniversary of the Freeze Date
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan


**Calculation of Benefit:**


**Total Benefit prior to age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 22.5 = $1,156.50 x .752 (due to age reduction)    =    $  869.69
Early Retirement Supplement:                                                                                  $2,150.31
                                                                                                                               **$3,020.00**

**GM Share:**                                                                                                       $         0

**Total:**                                                                                                            **$3,020.00**


**Total Benefit at age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 22.5  =                                                                       **$1,156.50**
(Note: At age 62 and one month, the Basic Benefit is redetermined.
An age reduction factor is no longer applied, since the employee
retired with at least 30 years of service for retirement eligibility purposes).

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 7       =                                                                        **$  359.80**
(Note: No age reduction factor is applied to the benefit, since the
employee is age 58 at the time of retirement and had 29.5 years of
credited service as of the 7 year anniversary of the Freeze Date.
GM recognizes this is an 85 point retirement for pension purposes).

**Total:**                                                                                                            **$1,516.30**


**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee reached retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 56 with 29.5 years of credited service.  Employee attained 85 Points.**

# Example #4: Employee Retires Under an 85 Point Retirement

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 24 years
Employee continues to work at Delphi for another 3 years

85 Point Retirement
Retirement effective 7/1/2010 with 27 years of credited service
Single – Age 58 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 24 = $1,233.60  x .752 (due to age reduction)     =     $  927.67
Interim Supplement:  $36.60 x 24 =                                                       $  878.40
                                                                                        **$1,806.07**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 3 = $154.20  x .752 (due to age reduction)     =     $  115.96
Interim Supplement:  $36.60 x 3 =                                                       $  109.80
                                                                                        $  225.76

**Total to Retiree:**                                                        **$2,031.83**

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 24 =                    **$1,233.60**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 3   =                    **$  154.20**

**Total to Retiree:**                             **$ 1,387.80**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee reached retirement eligibility within 7 years of the Effective Date.**

## Example #5- Any Delphi SAP Participant

GM is not responsible for any portion of the pension benefit.  100% paid by Delphi.

Note:  This example retiree would be eligible for OPEB in retirement from GM.

# Example #6  Employee Retires Under a 60 & 10 Retirement

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 18.5 years
Employee continues to work at Delphi another 6 months

60 & 10 Retirement
Retirement effective 1/1/2008 with 19 years of credited service
Single – Age 60 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## **Calculation of Benefit:**

### **Total Benefit prior to age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 18.5 = $950.90  x .867 (due to age reduction)   =          $   824.43
Interim Supplement:  $47.30 x 18.5 =                                       $   875.05
                                                                          **$ 1,699.48**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 0.5 = $25.70  x .867 (due to age reduction)   =          $   22.28
Interim Supplement:  $47.30 x 0.5 =                                       $   23.65
                                                                          **$   45.93**

**Total to Retiree:**                                                     **$1,745.41**

### **Total Benefit at age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 18.5 x .867(due to age reduction)   =        **$   824.43**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 0.5 x .867 (due to age reduction)   =        **$    22.28**

**Total to Retiree:**                                                 **$   846.71**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee
reached retirement eligibility within 7 years of the Effective Date.**

# Example #7: Employee Has 15 Years of Credited Service as of the Delphi Plan Freeze Date & Quits 3 Years Later

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 15 years
Employee continues to work at Delphi for another 3 years

Employee quits Delphi
Single – Age 48 at time of termination
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

## Total Benefit Payable at Age 65 (Note: Benefit will be reduced for age if commenced prior to age 65):

### Delphi Share:
Deferred Vested Basic Benefit:  $51.40 x 15   =         **$  771.00**

### GM Share: (BG Credited Service)
Deferred Vested Basic Benefit:  $51.40 x   3   =         **$  154.20**

### Total:                                                **$  925.20**

**Note:  This example employee would not be eligible for OPEB in retirement from GM.**

**Example #8  Employee Has 10 Years of Credited Service as of Delphi Plan Freeze Date, Works An Additional 1.5 Years at Delphi, Is Then Placed On Lay-off Status at Delphi & Then Breaks Time for Time**

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 10 years

Employee continues to work at Delphi for another 1.5 years and is then put on lay-off status as of 1/1/2009
Employee eventually breaks time-for-time – Age 48 at time of break
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

**Calculation of Benefit:**

**Total Benefit Payable at Age 65** **(Note: Benefit will be reduced for age if commenced prior to age 65):**

**Delphi Share:**
Deferred Vested Basic Benefit:  $51.40 x 10   =   **$  514.00**

**GM Share: (BG Credited Service)**
Deferred Vested Basic Benefit:  $51.40 x 3.4   =   **$  174.76**

**Total:**                                      **$  688.76**


**Note:  This example employee would not be eligible for OPEB in retirement from GM.**

# Example #9: Employee Continues to Work at Delphi & Retires With 30 Years of Credited Service- 70% Rule Example

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 24 years
Employee works 6 more years at Delphi after the Freeze

Maximum base hourly rate for job classification as of 6/30/2007 is $25.00/hr
Supplemental Employee Group B maximum base hourly rate of $16.50/hr on 7-1-2007 and at date of retirement (example assumes no future increases)
Benefit Class Code A prior to wage reduction and at time of retirement

30&Out Retirement
Retirement effective 7/1/2013 with 30 years of credited service
Single – Age 58 at retirement
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

## 70% Rule Calculation

$25.00 x 173 1/3 = $4,333.33 x 70%  = $3,033.33            =      < No Adj.>

## Total Benefit prior to age 62 and one month:

## Delphi Share:
Basic Benefit:  $50.90 x 24 years x .752 (due to age reduction)      =      $  918.64
Early Retirement Supplement:            =      $2,101.36
                                               **$3,020.00**

## GM Share:                                   $        0

## Total to Retiree:                           **$3,020.00**

## Total Benefit at age 62 and one month:

## Delphi Share:
Basic Benefit:  $50.90 x 24  =            **$1,221.60**

## GM Share: (BG Credited Service)
Basic Benefit:  $50.90 x  6  =            **$  305.40**

## Total to Retiree:                           **$1,527.00**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee reached retirement eligibility within 7 years of the Effective Date.**

# Example #10: Employee Retires At Age 64- Benefit Class Code Example

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 24 years
Employee works 4 more years at Delphi after the Freeze

Maximum base hourly rate for job classification as of 6/30/2007 is $27.00/hr
Supplemental Employee Group B maximum base hourly rate of $16.50/hr on 7-1-2007 and at date of retirement (example assumes no future increases)
Benefit Class Code B prior to wage reduction; Benefit Class Code B at time of retirement

Voluntary Retirement- Age 60 to 64
Retirement effective 7/1/2011 with 28 years of credited service
Single – Age 64 at retirement
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

## Total Benefit Payable:

### Delphi Share:
Basic Benefit:  $51.15 x 24   =                              **$ 1,227.60**
(Years of credited service accrued prior to wage reduction
based on Benefit Class Code B)

### GM Share: (BG Credited Service)
Basic Benefit:  $51.15 x  4   =                              **$    204.60**
(Years of credited service accrued after wage reduction
based on Benefit Class Code B)

**Total To Retiree:**                                        **$ 1,432.20**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee was already retirement eligible as of the Effective Date.**

# Example #11: Employee Has Less Than 30 Years of Credited Service as of Delphi Plan Freeze Date and the Plant is Divested in the Future

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 2.5 years and then the plant is sold effective 1/1/2010
At the time of the divestiture, the employee has 29 years of credited service
**Employee works for the New Company for an additional 2 years and then retires**

**Example assumes that the Delphi Hourly-Rate Employees Pension Plan IS AMENDED to treat employees at the New Company as active participants for all purposes, other than future benefit accruals based on additional credited service, for all periods of time on or after the Freeze Date and prior to retirement or separation from service from Delphi or any Delphi operation divested after October 8, 2005.**

30&Out Retirement
Retirement effective 1/1/2012 with 31 years of total eligibility service
Single – Age 55 at time of retirement (age 53 at time of divestiture)
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

[Example also assumes that the New Company offers a new Defined Benefit (DB) Pension Plan.  The value of the monthly annuity accrued under the new DB plan for the two years that this employee works at the New Company is assumed to be $100 per month in this example.] An alternative approach is under review by the parties.

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**

| | | |
|---|---|---|
| Basic Benefit:  $51.40 x 26.5 = $1,362.10  x .579 (due to age reduction)  = | $  788.66 | |
| Early Retirement Supplement | $2,231.34 | |
| | **$3,020.00** [1] | |
| [Less New Company's DB Plan | ($  100.00) [2] | |
| An alternative approach is under review by the parties. | | |
| | | |
| Monthly Benefit Payable = | **$2,920.00** | |

**GM Share:**                                                       $        0

**New Company Share:**
Monthly Benefit Payable =                          **$  100.00**

**Total to Retiree:**                                        **$3,020.00**

[1] Since this example assumes that the Delphi Hourly-Rate Employees Pension Plan IS AMENDED as noted, this example retiree is eligible for a 30&Out Retirement under the Delphi pension plan based on 31 years of total eligibility service.  Prior to attaining age 62 and one month, Delphi is responsible for paying a Basic Benefit based on the years of credited service accrued as of the

Freeze Date, which is 26.5 years and the full Early Retirement Supplement. Since the Delphi pension plan recognizes the service at the New Company for retirement eligibility purposes, so will GM as it relates to the credited service accrued under the Benefit Guarantee as depicted below.

[(2) Delphi shall also be entitled to offset from any Supplement paid prior to age 62 and one month, the full value of any benefits applicable to an employee covered under a successor company (including any Delphi operation divested after October 8, 2005) defined benefit or defined contribution pension plan, regardless of when payable, other than those benefits solely attributable to employee contributions.] An alternative approach is under review by the parties.

**Total Benefit at age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 26.5 =                     **$1,362.10**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 4.5 =                     $   231.30
[Less New Company's  DB Plan                     ($   100.00)] An alternative approach is under review by the parties.
Monthly Benefit Payable =                     $   131.30 (1) (3)

**New Company Share:**
Monthly Benefit Payable =                     **$   100.00**

**Total to Retiree:**                     **$1,593.40**

[(3) GM shall also be entitled to offset from any obligation under the Benefit Guarantee the full value of any benefits applicable to a Covered Employee under a Delphi or successor company (including any Delphi operation divested after October 8, 2005) defined benefit or defined contribution pension plan, regardless of when payable, other than those benefits solely attributable to employee contributions.   Furthermore, GM's obligations to provide a particular benefit under the Benefit Guarantee will not apply to the extent Delphi or a successor company carves out any Covered Employee from all or part of any Delphi or successor company (including any Delphi operation divested after October 8, 2005) benefits provided to non-Covered Employees.] An alternative approach is under review by the parties.

**Note: Since Delphi is recognizing the service accrued at the New Company for retirement eligibility purposes and this employee reached retirement eligibility within 7 years of the Effective Date, this example retiree is eligible for OPEB in retirement from GM.**

[GM shall also be entitled to offset from any obligation under the Benefit Guarantee the full value of any benefits applicable to a Covered Employee under a Delphi or successor company (including any Delphi operation divested after October 8, 2005) post-retirement health care or life insurance plan, regardless of when payable, other than those benefits solely attributable to employee contributions. Furthermore, GM's obligations to provide a particular benefit under the Benefit Guarantee will not apply to the extent Delphi or a successor company (including any Delphi operation divested after October 8, 2005) carves out any Covered Employee from all or part of any Delphi or successor company benefits provided to non-Covered Employees.]  An alternative approach is under review by the parties.

**Example #12  Employee Has Less Than 30 Years of Credited Service as of Delphi Plan Freeze Date and the Plant is Closed in the Future**

Assume Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 2.5 years and then the plant is permanently closed effective 1/1/2010
At the time of the closure, the employee has 29 years of credited service
**This example assumes that the employee is placed on lay-off status after the plant closure. After being on lay-off status for 3 years, the employee elects to retire.**

30&Out Retirement
Retirement is effective 1/1/2013 with 30.9 years of credited service.  Under the Delphi pension plan, the employee is entitled to receive up to 1.9 years of credited service while on lay-off status.
Single – Age 55 at retirement (age 52 at time of plant closure)
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan


**Calculation of Benefit:**


**Total Benefit prior to age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 26.5 = $1,362.10  x .579 (due to age reduction)   =          $   788.66
Early Retirement Supplement:                                                                                            $2,231.34
                                                                                                                                            **$3,020.00**

**GM Share:**                                                                                                             $          0

**Total to Retiree:**                                                                                             **$3,020.00**


**Total Benefit at age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 26.5 =                       **$1,362.10**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 4.4 =                         **$   226.16**

**Total to Retiree:**                                       **$1,588.26**


**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee reached retirement eligibility within 7 years of the Effective Date.**

# Example #13- Employee Has Less Than 30 Years of Credited Service as of Delphi Plan Freeze Date & Retires With More Than 30 Years of Credited Service- Surviving Spouse Coverage Example

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 6.5 years

30&Out Retirement
Retirement effective 1/1/2014 with 33 years of credited service
Age 58 at retirement
Married at retirement- age difference between retiree and spouse within 5 years
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**

| | |
|---|---|
| Basic Benefit:  $51.40 x 26.5 = $1,362.10  x .752 **(due to age reduction)**     = | $1,024.30 |
| Early Retirement Supplement: | $1,995.70 |
| | $3,020.00 |
| Less Cost of Surviving Spouse Coverage: $51.40 x 26.5 = $1,362.10 x 0.05  = | ($     68.11) |
| Monthly Amount Payable: | **$2,951.89** |

**GM Share:**                                                                           **$        0**

**Total to Retiree:**                                                           **$2,951.89**

### Total Benefit at age 62 and one month:

**Delphi Share:**

| | |
|---|---|
| Basic Benefit:  $51.40 x 26.5  = | $1,362.10 |
| Less Cost of Surviving Spouse Coverage: $51.40 x 26.5 = $1,362.10 x 0.05  = | ($     68.11) |
| Monthly Amount Payable: | **$1,293.99** |

**GM Share: (BG Credited Service)**

| | |
|---|---|
| Basic Benefit:  $51.40 x 6.5 = | $  334.10 |
| Less Cost of Surviving Spouse Coverage: $51.40 x 6.5 = $334.10 x 0.05  = | ($    16.71) |
| Monthly Amount Payable: | **$  317.39** |

**Total to Retiree:**                                                           **$1,611.38**

Note: The GM HRP is owed for the cost of the surviving spouse coverage for those months between retirement and attaining age 62 and one month.  Even though a Basic Benefit was not being paid by GM during these months, the surviving spouse coverage has been in place since date of retirement and would have been invoked if the retiree died prior to attaining age 62 and one month.


**Calculation of the Cost of the GM Surviving Spouse Coverage for the period 1/1/2014 through 1/1/2018:**

| | | |
|---|---|---|
| Monthly Cost of Surviving Spouse Coverage: $51.40 x 6.5 = $334.10 x 0.05  = | $ | 16.71 per month |
| Times the number of months | x | 49 months |
| **Total Cost That Retiree Owes GM:** | **$** | **818.79** |


The parties will discuss administrative procedures to collect the $818.79 that is owed to the GM HRP for the cost of the surviving spouse coverage.


**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee reached retirement eligibility within 7 years of the Effective Date.**

## Continuation of Example #13: Instead of the Retiree Living to at Least Age 62 and One Month, the Following Assumes that the Retiree Dies At Age 60- Calculation of Surviving Spouse Benefit

### Calculation of Benefit to Surviving Spouse:

### Total Benefit Payable the Month Following the Date of Death- Effective 2/1/2016:

**Delphi Share:**

| | |
|---|---:|
| Basic Benefit:  $51.40 x 26.5  = | $1,362.10 |
| Less Cost of Surviving Spouse Coverage: $51.40 x 26.5 = $1,362.10 x 0.05  = | ($   68.11) |
| Monthly Amount Payable to Retiree: | $1,293.99 |

**Monthly Amount Payable to Surviving Spouse:** $1,293.99 x 0.65        =        **$  841.09**

**GM Share:** (BG Credited Service)

| | |
|---|---:|
| Basic Benefit:  $51.40 x 6.5 = | $  334.10 |
| Less Cost of Surviving Spouse Coverage: $51.40 x 6.5 = $334.10 x 0.05  = | ($   16.71) |
| Monthly Amount Payable to Retiree: | $  317.39 |

**Monthly Amount Payable to Surviving Spouse:** $317.39 x 0.65        =        **$  206.30**

**Total to Surviving Spouse:**                                                    **$1,047.39**

Note: The GM HRP is owed for the cost of the surviving spouse coverage for those months between the retiree's date of retirement and the retiree's date of death.  Even though a Basic Benefit was not being paid by GM during these months, the surviving spouse coverage has been in place since date of retirement.

### Calculation of the Cost of the GM Surviving Spouse Coverage for the period 1/1/2014 through 1/1/2016:

| | |
|---|---:|
| Monthly Cost of Surviving Spouse Coverage: $51.40 x 6.5 = $334.10 x 0.05  = | $   16.71 per month |
| Times the number of months | x        25 months |
| **Total Cost That Surviving Spouse Owes GM:** | **$  417.75** |

The parties will discuss administrative procedures to collect the $417.75 that is owed to the GM HRP for the cost of the surviving spouse coverage.

**Note:  This example surviving spouse continues to be eligible for health care from GM after the retiree's death.**

# Example #14- Employee Retires Under an 85 Point Retirement- Surviving Spouse Coverage Example

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 24 years
Employee continues to work at Delphi for another 3 years

85 Point Retirement
Retirement effective 7/1/2010 with 27 years of credited service
Age 58 at retirement
Married at retirement- age difference between retiree and spouse within 5 years
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

#### Delphi Share:
Basic Benefit:  $51.40 x 24 = $1,233.60  x .752 **(due to age reduction)**          =     $   927.67
Interim Supplement:  $36.60 x 24 =                                                        $   878.40
                                                                                         $1,806.07
Less Cost of Surviving Spouse Coverage: $51.40 x 24 = $1,233.60 x 0.05  =     ($    61.68)
Monthly Amount Payable:                                                               **$1,744.39**

#### GM Share: (BG Credited Service)
Basic Benefit:  $51.40 x 3 = $154.20  x .752 **(due to age reduction)**          =     $   115.96
Interim Supplement:  $36.60 x 3 =                                                         $   109.80
                                                                                         $   225.76
Less Cost of Surviving Spouse Coverage: $51.40 x 3 = $154.20 x 0.05  =     ($     7.71)
Monthly Amount Payable:                                                               **$   218.05**

**Total to Retiree:**                                                                **$ 1,962.44**

### Total Benefit at age 62 and one month:

#### Delphi Share:
Basic Benefit:  $51.40 x 24 =                                                         $1,233.60
Less Cost of Surviving Spouse Coverage: $51.40 x 24 = $1,233.60 x 0.05  =     ($    61.68)
Monthly Amount Payable:                                                               **$1,171.92**

#### GM Share: (BG Credited Service)
Basic Benefit:  $51.40 x 3  =                                                         $   154.20
Less Cost of Surviving Spouse Coverage: $51.40 x 3 = $154.20 x 0.05  =     ($     7.71)
Monthly Amount Payable:                                                               **$   146.49**

**Total to Retiree:**                                                                **$ 1,318.41**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee reached retirement eligibility within 7 years of the Effective Date.**

## Continuation of Example #14: Instead of the Retiree Living to at Least Age 62 and One Month, the Following Assumes that the Retiree Dies At Age 60- Calculation of Surviving Spouse Benefit

**Calculation of Benefit to Surviving Spouse:**
**Total Benefit Payable the Month Following the Date of Death- Effective 8/1/2012:**

**Delphi Share:**
Basic Benefit:  $51.40 x 24 =                                              $1,233.60
Less Cost of Surviving Spouse Coverage: $51.40 x 24 = $1,233.60 x 0.05  =     ($    61.68)
Monthly Amount Payable to Retiree:                                        $1,171.92

**Monthly Amount Payable to Surviving Spouse:** $1,171.92 x 0.65     =     **$  761.75**


**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 3   =                                          $   154.20
Less Cost of Surviving Spouse Coverage: $51.40 x 3 = $154.20 x 0.05  =     ($     7.71)
Monthly Amount Payable to Retiree:                                      $   146.49

**Monthly Amount Payable to Surviving Spouse:** $146.49 x 0.65     =     **$    95.22**


**Total to Surviving Spouse:**                                          **$  856.97**


**Note:  This example surviving spouse continues to be eligible for health care from GM after the retiree's death.**

# Example #15- Employee Retires Under a T&PD Retirement Within 7 Years of the Freeze Date

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 25 years
Employee continues to work at Delphi for another 6 years

T&PD Retirement Approved By Both Delphi and GM- Denied SSDIB
Retirement effective 7/1/2013 with 31 years of service
Single – Age 59 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan
Note:  As stated in the 2003 Hourly-Rate Employees Pension Plan, a maximum of 30 years of credited service is used to calculate the Temporary Benefit

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 25 =                                              $1,285.00
Temporary Benefit:  $49.80 x 25 =                                      $1,245.00
                                                                                                **$2,530.00**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 6 =                                               $  308.40
Temporary Benefit:  $49.80 x 5 =                                       $  249.00
                                                                                                **$  557.40**

**Total to Retiree:**                                                            **$3,087.40**

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit:  $51.40 x 25 =              **$1,285.00**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 6  =              **$  308.40**

**Total to Retiree:**              **$1,593.40**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee retired T&PD, which was approved by GM, within 7 years of the Effective Date.**

# Example #16- Employee Retires Under a T&PD Retirement Within 7 Years of the Freeze Date

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 15 years
Employee continues to work at Delphi for another 6 years

T&PD Retirement Approved By Both Delphi and GM -  Denied SSDIB
Retirement effective 7/1/2013 with 21 years of credited service
Single – Age 49 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**

| | |
|---|---|
| Basic Benefit:  $51.40 x 15 = | $  771.00 |
| Temporary Benefit:  $49.80 x 15 = | $  747.00 |
| | **$1,518.00** |

**GM Share: (BG Credited Service)**

| | |
|---|---|
| Basic Benefit:  $51.40 x 6 = | $  308.40 |
| Temporary Benefit:  $49.80 x 6 = | $  298.80 |
| | **$  607.20** |

**Total to Retiree:**        **$2,125.20**

### Total Benefit at age 62 and one month:

**Delphi Share:**

Basic Benefit:  $51.40 x 15 =      **$  771.00**

**GM Share: (BG Credited Service)**

Basic Benefit:  $51.40 x 6  =      **$  308.40**

**Total to Retiree:**      **$ 1,079.40**

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee retired T&PD, which was approved by GM, within 7 years of the Effective Date.**

# Example #17– Employee Retires Under a T&PD Retirement After the 7 Year Anniversary of the Freeze Date

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 20 years
Employee continues to work at Delphi for another 8 years

T&PD Retirement Approved by Delphi- Denied SSDIB
Retirement effective 7/1/2015 with 28 years of service
Single – Age 55 at retirement
Employee had a total of 27 years of credited service as of the 7 year anniversary of the Freeze Date
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**

| | |
|---|---:|
| Basic Benefit: $51.40 x 20 = | $1,028.00 |
| Temporary Benefit: $49.80 x 20 = | $ 996.00 |
| | **$2,024.00** |

**GM Share: (BG Credited Service)**
Deferred Vested Basic Benefit: $51.40 x 7 x .428  (due to age reduction)   =    **$  153.99**

(Note: GM does not recognize as a T&PD retirement, since it was effective after the 7 year anniversary of the Freeze Date.  GM only recognizes those T&PD retirements, which are approved by both Delphi and GM within 7 years of the Freeze Date.

A deferred vested age reduction factor is applied to the benefit, since the employee is age 55 at the time of retirement and only had 27 years of credited service as of the 7 year anniversary of the Freeze Date.  Employee is not considered retirement eligible by GM.  The age reduction factor that Is applied is based on commencing the deferred vested pension benefit at age 55 versus age 65).

**Total to Retiree:**                                        **$2,177.99**

### Total Benefit at age 62 and one month:

**Delphi Share:**
Basic Benefit: $51.40 x 20 =                              **$1,028.00**

**GM Share: (BG Credited Service)**
Deferred Vested Basic Benefit: $51.40 x 7 x .428  (due to age reduction)   =    **$  153.99**

**Total to Retiree:**                                        **$1,181.99**

**Note:  This example retiree would not be eligible for OPEB in retirement from GM.  Employee did not reach retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 54 with 27 years of credited service.  Additionally, the employee is not a T&PD retirement approved by GM within 7 years of the Effective Date.**

# Example #16 Employee Approved for T&PD Retirement From Delphi But T&PD Is Not Approved By GM

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 15 years
Employee continues to work at Delphi for another 6 years

T&PD Retirement Approved By Delphi But Denied by GM -  Also Denied SSDIB
Retirement effective 7/1/2013 with 21 years of credited service
Single – Age 55 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit prior to age 62 and one month:

**Delphi Share:**

| | |
|---|---|
| Basic Benefit:  $51.40 x 15 = | $  771.00 |
| Temporary Benefit:  $49.80 x 15 = | $  747.00 |
| | **$1,518.00** |

**GM Share: (BG Credited Service)**

Deferred Vested Basic Benefit:  $51.40 x 6 x .428  (due to age reduction)  =          **$  132.00**
(Note: A deferred vested age reduction factor is applied to the benefit,
since the employee is age 55 at the time of retirement and only had
21 years of credited service. Employee is not considered retirement eligible
by GM.  The age reduction factor that Is applied is based on commencing
the deferred vested pension benefit at age 55 versus age 65).

**Total to Retiree:**                                                      **$1,650.00**

### Total Benefit at age 62 and one month:

**Delphi Share:**

Basic Benefit:  $51.40 x 15 =                                    **$  771.00**

**GM Share: (BG Credited Service)**

Deferred Vested Basic Benefit:  $51.40 x 6 x .428  (due to age reduction)  =          **$  132.00**

**Total to Retiree:**                                              **$  903.00**

**Note:  This example retiree would not be eligible for OPEB in retirement from GM.  Employee did not reach retirement eligibility.  As of the date of retirement, employee was age 55 with 21 years of credited service.  Additionally, the employee is not a T&PD retirement approved by GM.**

# Example #19- Employee Retires At Age 65 With Less Than 10 Years of Credited Service

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 8 years
Employee works 1 additional year at Delphi after the Freeze

Normal Retirement- Age 65
Retirement effective 7/1/2008 with 9 years of credited service
Single – Age 65 at retirement
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

## Calculation of Benefit:

### Total Benefit Payable:

**Delphi Share:**
Basic Benefit:  $51.40  x  8   =                          **$411.20**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40  x  1   =                          **$ 51.40**

**Total To Retiree:**                                     **$462.60**

**Note:  This example retiree would not be eligible for OPEB in retirement from GM, since the employee retired with less than 10 years of credited service.**

**Example #20   Employee Retires Under an 85 Point Retirement But Does Not Become Eligible for OPEB Within 7 Years of the Effective Date**

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 20 years
Employee continues to work at Delphi for another 8 years

85 Point Retirement
Retirement effective 7/1/2015 with 28 years of service
Single – Age 58 at retirement
Employee had a total of 27 years of credited service as of the 7 year anniversary of the Freeze Date
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

**Calculation of Benefit:**

**Total Benefit prior to age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 20 = $1,028.00  x .752 (due to age reduction)      =      $   773.06
Interim Supplement:  $36.60 x 20 =                                                          $   732.00
                                                                                                            **$1,505.06**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 7 = $359.80  x .752 (due to age reduction)      =      $   270.57
Interim Supplement:  $36.60 x 7 =                                                           $   256.20
                                                                                                            **$   526.77**

(Note: GM is responsible for a portion of the Interim Supplement since
the employee is age 58 at the time of retirement and had 27 years of
credited service as of the 7 year anniversary of the Freeze Date.
GM recognizes this is an 85 point retirement for pension purposes).

**Total to Retiree:**                                                                          **$2,031.83**

**Total Benefit at age 62 and one month:**

**Delphi Share:**
Basic Benefit:  $51.40 x 20 =                   **$1,028.00**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 7   =                   **$   270.57**

**Total to Retiree:**                               **$ 1,298.57**

**Note:  This example employee would not be eligible for OPEB in retirement from GM. Employee did not reach retirement eligibility within 7 years of the Effective Date.  As of July 1, 2014, employee was age 57 with 27 years of credited service.**

**Example #21- Death of a Delphi Employee**

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 26.5 years
Employee continues to work at Delphi for another 6.5 years and then dies while still employed

Date of death 1/1/2014 with 33 years of credited service
Employee deemed to be a 30 & Out Retirement as of the date of death
Age 58 on date of death
Married at least one year as of the date of death- age difference between retiree and spouse within 5 years
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan

**Calculation of Benefit to Surviving Spouse:**

**Delphi Share:**
Basic Benefit:  $51.40 x 26.5  =                                                              $1,362.10
Less Cost of Surviving Spouse Coverage: $51.40 x 26.5 = $1,362.10 x 0.05  =    ($    68.11)
Monthly Amount Payable to Retiree:                                                          $1,293.99

**Monthly Amount Payable to Surviving Spouse:** $1,293.99 x 0.65        =        **$  841.09**

**GM Share: (BG Credited Service)**
Basic Benefit:  $51.40 x 6.5 =                                                                  $  334.10
Less Cost of Surviving Spouse Coverage: $51.40 x 6.5 = $334.10 x 0.05  =       ($    16.71)
Monthly Amount Payable to Retiree:                                                          $  317.39

**Monthly Amount Payable to Surviving Spouse:** $317.39 x 0.65          =        **$  206.30**

**Total to Surviving Spouse:**                                                                 **$1,047.39**

**Note:  This example surviving spouse would be eligible for health care from GM since the employee reached retirement eligibility within 7 years of the Effective Date.  However, Delphi is responsible for the employee's Basic life insurance benefit since he was still actively employed at the time of death.**

## Example #22  Death of a Pre-Retirement Leave Participant (PRP) under the SAP

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 27 years
Employee continues to be on the PRP leave for another 2 years and then dies before reaching 30 years of credited service

Date of death 7/1/2009 with 29 years of credited service
Age 55 on date of death
Employee is not retirement eligible as of the date of death
Married at least one year as of the date of death- age difference between retiree and spouse within 5 years
Benefit Class Code C
Assumes the benefit rate levels in effect under the 2003 Hourly-Rate Employees Pension Plan


**Delphi is responsible for the entire pension benefit payable to the surviving spouse, the Survivor Income Benefit Insurance (SIBI) benefit, and the Basic life insurance benefit since the employee was still considered employed.**

**Since this employee was not retirement eligible at the time of death, the surviving spouse would not be eligible for any post-retirement health care from GM.**

**Example #23 – Delphi Home Avenue Covered Employee Retires Under an MSR Retirement Within 7 Years of the Freeze Date**

Assume Effective Date and Delphi Plan Freeze Date is 7/1/2007
Employee's Credited Service as of 6/30/2007 = 12.5 years
Employee continues to work at Delphi Home Avenue plant for another 0.5 years and is then put on layoff status at Delphi Home Avenue plant as of 1/1/2008
Employee is age 44 at date of layoff and remains on layoff at Delphi Home Avenue plant

MSR Retirement
Retirement effective 1/1/2014 with 14.9 years of credited service
Single – Age 50 at retirement
Benefit Class Code C
Assumes the benefit levels in effect under the 2003 Hourly-Rate Employees Pension Plan

**Calculation of Benefit:**

**Total Benefit prior to age 62 and one month:**

**Delphi Share:**

| | |
|---|---:|
| Basic Benefit:  $51.40 x 12.5 = | $ 642.50 |
| Temporary Benefit:  $49.80 x 12.5 = | $ 622.50 |
| | **$1,265.00** |

**GM Share: (BG Credited Service)**

| | |
|---|---:|
| Basic Benefit:  $51.40 x 2.4 = | $ 123.36 |
| Temporary Benefit:  $49.80 x 2.4 = | $ 119.52 |
| | **$ 242.88** |

| | |
|---|---:|
| **Total to Retiree:** | **$1,507.88** |

**Total Benefit at age 62 and one month:**

**Delphi Share:**

| | |
|---|---:|
| Basic Benefit:  $51.40 x 12.5 = | **$ 642.50** |

**GM Share: (BG Credited Service)**

| | |
|---|---:|
| Basic Benefit:  $51.40 x 2.4  = | **$ 123.36** |

| | |
|---|---:|
| **Total to Retiree:** | **$ 765.86** |

**Note:  This example retiree would be eligible for OPEB in retirement from GM.  Employee was employed at Home Avenue and retired as an MSR within 7 years of the Effective Date.**

<u>USW Health Care Discussions</u>
<u>August 16, 2007</u>

<u>Proposed Resolution:</u>

1. **Retiree Medical Plan Designs –**

   a. <u>Protected Retirees</u>
       i. **Increased Rx copays, as follows:**
           1. **Retail:  $5 generic / $10 brand / $15 ED medications**
           2. **Mail Order:  $10 generic / $15 brand / $18 ED medications**
           3. **No escalation on Rx copays through 2011**
   b. <u>General Retirees</u>
       i. **Cost Sharing, as outlined in Attachment 1**
           1. **Modified Plan Cost sharing to escalate at 7% annually**
       ii. **Catastrophic Plan, as outlined in Attachment 2**
           1. **Catastrophic Plan cost sharing escalation not to exceed 3% annually**

2. **Attachment 1 – USW General Retirees will be subject to the plan design that corresponds with the year in which the modified plan is implemented; see Attachment 1.**

3. **Attachment 2 – USW General Retirees will be subject to the Catastrophic Plan Design that is in place at the time of implementation; see Attachment 2.**

4. **Administrative Changes – applicable to Actives, Protected Retirees and General Retirees as outlined in Attachment 3**

5. **All changes for retirees who retired on or before 1/1/2000 to be effective the later of (i) January 1, 2008 1/1/08 or (ii) the approval by the Federal District Court of the changes applicable to Retirees.  All changes for other retirees, including but not limited to "check the box" retirees, and other retirees who retired from Delphi to be effective as soon as administratively feasible but no later than January 1, 2008.**

1

**Attachment 1:   2007 – 2011 General Retiree Cost Sharing**

## USW General Retiree Plan Design

| | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|
| **Medical Escalation @** | | 7.0% | 7.0% | 7.0% | 7.0% |
| | $ | $ | $ | $ | $ |
| **Monthly Contributions ** ** | | | | | |
| Single | 10 | 11 | 11 | 12 | 13 |
| Family | 21 | 22 | 24 | 26 | 28 |
| | | | | | |
| **Medical Plan** | | | | | |
| Deductible – Single | 150 | 161 | 172 | 184 | 197 |
| Deductible – Family | 300 | 321 | 343 | 368 | 393 |
| Coinsurance In Network | 10% | 10% | 10% | 10% | 10% |
| Coinsurance Out Network | 30% | 30% | 30% | 30% | 30% |
| MOOP Single (In Network) | 250 | 268 | 286 | 306 | 328 |
| MOOP Family (In Network) | 500 | 535 | 572 | 613 | 655 |
| MOOP Single (Out of Network) | 500 | 535 | 572 | 613 | 655 |
| MOOP Family (Out of Network) | 1,000 | 1,070 | 1,145 | 1,225 | 1,311 |
| | | | | | |
| E/R Copay** | 50 | 54 | 57 | 61 | 66 |
| | | | | | |
| **Rx Escalation @** | | 7.00% | 7.00% | 7.00% | 7.00% |
| | | | | | |
| **Rx Plan ** ** | | | | | |
| Generic – Retail | 7 | 7 | 8 | 9 | 9 |
| Brand – Retail | 12 | 13 | 14 | 15 | 16 |
| ED Meds – Retail | 15 | 16 | 17 | 18 | 20 |
| Generic – Mail | 14 | 15 | 16 | 17 | 18 |
| Brand – Mail | 22 | 24 | 25 | 27 | 29 |
| ED Meds – Mail | 22 | 24 | 25 | 27 | 29 |

** Not subject to deductible or out-of-pocket maximum

2

**Attachment 2:   General Retiree Catastrophic Plan**

This option will be a single catastrophic Traditional Care Network (TCN) plan offering which will consist, in general, of the following:

Eligibility:  All General Retirees, are eligible to enroll in this Catastrophic Plan.

Initial and Ongoing Enrollment:

➢ Defaults:  General Retirees who fail to pay the monthly Contributions required under the Modified Plan by the Final Due Date will automatically default to the Catastrophic Plan.. A person who defaults into the Catastrophic Plan may disenroll from the Catastrophic Plan at any time.  The effective date will be the first of the month following the election date.  The third time a member defaults into the Catastrophic Plan, they are locked into that plan for a minimum of 12 months.

➢ Voluntary Elections:   General Retirees may voluntarily elect to enroll in this plan. General Retirees who are voluntarily enrolled in this catastrophic TCN Plan will be subject to the Rolling Enrollment rules.

Plan Design:

Monthly Contribution:  $0

Deductible: $1,250 (single) and $2,500 (family)

Co-insurance: after deductible is met, 10% in-network and 30% out of network

Out-of-Pocket Maximums:    $2,500 (single) and $5,000 (family) in-network;
$5,000 (single) and $10,000 (family) out-of-network

ER Co-Payment:  $100 per visit, waived if admitted

Rx Co-payment Retail: $15 Generic, $35 Brand;  $50 (Erectile Dysfunction medications)

Rx Co-Payment Mail Order: $30 Generic, $70 Brand;  $100 (Erectile Dysfunction medications)


All dollar-denominated plan design items such as drug co-payments, deductibles and out-of-pocket maximums will increase annually a rate not to exceed 3%.

3

**Attachment 3:    Administrative Changes**

<u>**Coordination With Medicare**</u>

- **Coverage to Medicare B Benefit (regardless of Med B enrollment) and Medicare Part B Maximum Payment Provisions:**

  - For Medicare eligible enrollees (regardless of whether or not they are enrolled in Medicare Part B), Program benefits will be limited to an amount equal to the secondary balance payment that would have been made on the basis that, on the date of services, the enrollee was enrolled in Medicare Part B and received services from a provider that participates in Medicare. In the event an enrollee receives services from a provider that does not accept assignment, the enrollee will be responsible for all fees charged above the Medicare allowed amount, unless the enrollee is in a situation in which the enrollee does not have the ability or control to select a provider that accepts Medicare assignment to perform the service. No enrollee payment over the Medicare allowed amount will count towards enrollee cost sharing maximums.

  - It is recognized that the above provisions will indirectly require Medicare eligible enrollees who delayed enrollment in Medicare B, to enroll upon the implementation date of this agreement.  GM will send educational pieces 90-120 days prior to implementation, to those enrollees identified as eligible for Medicare, but not yet enrolled.  Such delayed enrollment into Medicare Part B will result in penalties being applied by Medicare to the Part B monthly premiums.  GM has agreed to work with Medicare to identify a way to eliminate penalties incurred.  This may involve GM making a lump sum payment to Medicare; however, these discussions are not complete at this time.  In the event GM and Medicare cannot reach agreement on eliminating the penalty, GM will establish a single nationwide Traditional Care Network (TCN) plan in which Medicare eligible enrollees who have elected to delay enrollment in Medicare Part B will be enrolled and this plan will not be subject to the provisions outlined in the first bullet above.  Any enrollee in this group who later decides to enroll in Medicare Part B will be placed in a regular TCN plan and will be fully responsible for any and all penalties incurred at that time.

- **Coordination of Benefits for Medications covered under Medicare Part B:**

  - The parties agree to encourage Medicare Part B enrollees to assign Medicare benefits to those pharmacies from which the enrollee receives medications that are covered under Medicare Part B.  A program will be developed and implemented to educate enrollees about Medicare paying for certain medications and to encourage enrollees to use those pharmacies that have the capabilities to electronically bill Medicare and to assign Medicare benefits to such pharmacies in order for the Program to take advantage of Medicare paying primary on the claim.  Further, the parties agree to monitor the improvement of electronic Medicare

4

billing capabilities across the pharmacy network.  Upon mutual agreement, the parties may at a later date implement a mandatory program.  At that point, enrollees who utilize pharmacies which do not have electronic claim submission capabilities with Medicare will be required to pay for the secondary balance of the claim at the point of sale and seek reimbursement via submission of a paper claim from the prescription drug carrier.

- The provisions outlined above will not apply to Active enrollees eligible for Medicare as their primary coverage.

- This entire Program Coordination related to Medicare Eligible Enrollees will be implemented as soon as practicable after approval of the agreement by the Federal District Court.

## Hospital/Surgical/Medical Modifications – TCN and PPO, Unless Otherwise Specified

1.  **"Cosmetic" Provisions --** Eliminate coverage for inpatient and outpatient hospital services (e.g., room & board, lab, x-rays, etc.) provided in conjunction with non-covered "plastic, cosmetic and reconstructive" surgeries.

    - This entire Program Modification related to Modifying "Cosmetic" Provisions will be implemented as soon as practicable after approval of the agreement by the Federal District Court .

2.  **Referral Process for the "Preferred Provider Organization" Option**

    - Require prospective authorization of out-of-network referrals.

    - In the event a referral is not approved prior to a service being provided, the enrollee is responsible for the out-of-network co-insurance.  Any amount charged over R&C does not count toward enrollee cost sharing maximums.

    - The parties agree not to promote further reductions in PPO networks as outlined in the Miscellaneous Letter (Preferred Provider Organization), but to support ongoing network improvements by the carriers as quality and performance evaluation tools continue to develop and are utilized to drive members to high performing providers, as mutually agreed upon.

    - This entire Program Modification related to Improving the Referral Process for the "Preferred Provider Organization" Option will be implemented as soon as practicable after the approval of the agreement by the Federal District Court.

3.  **Hold Harmless –** Except as otherwise provided in Section 4 of the Miscellaneous Letter entitled Understandings With Respect To Health Care-General, when an enrollee receives services from a physician who is not participating in Blue Cross Blue Shield (BCBS) or United Health Care (UHC) networks or from a facility not participating in a UHC network, the Program will be responsible to pay only up to the reasonable and customary

5

(R&C) level as determined by the carrier. The enrollee will be responsible for all fees charged above R&C, unless the enrollee is in a situation in which the enrollee does not have the ability or control to select a par provider to perform the service. Such amounts over R&C are considered "Other Amounts Not Covered" by the Health Care Program and therefore will be the responsibility of the enrollee and will not be applied towards enrollee cost-sharing.

- This entire Program Modification Related to Modifying Hold Harmless will be implemented as soon as practicable after the approval of the agreement by the Federal District Court .


United Steelworkers (USW)                    General Motors Corporation:


_____                    _____

_____                    _____

_____

USW Local Union 87L                          _____

_____                    _____

_____                    _____

_____                    _____


88317

6

Attachment E

USW Vandalia
Agreement

| Agreement Clause | Continues Unchanged | No Continuing Application | Changed by MOU | Needs to Be Addressed | Comments (based on current state of discussions) |
|---|---|---|---|---|---|
| **Vandalia Agreement Paragraphs** | | | | | |
| | | | | | |
| Agreement [Introductory statement | | | x | | Dates changed |
| Collective Bargaining Agreement | x | | | | |
| Introduction  -  Para. (1) -(1)(a) | | | x | | Dates changed |
| Purpose of Agreement - Para. (1)(b) | x | | | | |
| Administration of Agreement - Review Procedures - Para. (1)© | x | | | | |
| Preface (2) | | | x | | delete reference to GM |
| Recognition - Para. (3) | x | | | | |
| Bargaining Unit - Para. (3)(a) -(3)(d) | | | x | | Delete reference to Core Group |
| Management's Responsibility - Para. (4) | x | | | | |
| Union Security & Dues Check-Off - Para (5) - (5s) | x | | | | |
| Agreement of Indemnity - Para. (5)(t) - (5)(t)(3) | x | | | | |
| Representation - Para. (6) - (6)(n) | x | | | | |
| Shop Committee - Para. (7) - (7)(g) | x | | | | |
| Grievance Procedure - Para. (8) - (8)(g)(2) | | | x | | GM reference |
| Seniority  - Division I and Division II - Para. (9) | x | | | | |
| Seniority, Acquiring of  -  Para. (9) (b )- (9)(e) | | | x | | GM Hiring, Temp hires |
| Listing of Work Groupings for Division I and Division II | x | | | | |
| Loss of Seniority - Para. (10) - (10(a)(3) | x | | | | |
| Loss of Seniority - Time-for-Time - Para. (10)(a)(4) | x | | | | |
| Loss of Seniority - Return From Leave - Para. (10)(a)(5)) | x | | | | |
| Loss of Seniority - Retirement - Para. (10(a)(6) | x | | | | |
| Loss of Seniority - Transferred into Bargaining Unit  - Para. (10)( (b) | x | | | | |
| Seniority List - Para. (10)(c | x | | | | |
| Transfers - Para. (11) - (11)(e)(2) | x | | | | |
| Rehiring and Layoff  Procedures - Para. (12) - (12)(m)(2) | | | x | | Changed by survival plan - Home group recall |
| Standard of Production - Para. (13) | x | | | | |
| Disciplinary Layoffs and Discharges - Para. (14) | x | | | | |
| Working Hours - Standard Work Week - Para (15)(a) - (15)(f) | x | | | | |
| Working Hours - Straight Time - Para. (15)(f)(1) | x | | | | |
| Working Hours - Time and One-Half - Para. (15)(f)(2) | | x | | | Changed by survival plan |
| Working Hours - Double Time - Para. (15)(f)(3) | | x | | | Changed by survival plan |
| Shift Assignments - Para.  (16) | x | | | | |
| New Jobs - Para. (17) | x | | | | |
| Call-In Pay - Para. (18) | x | | | | Changed by survival plan |
| Night Shift Premiums - Para (19) | | | x | | Changed by survival plan - E-II employees |
| Strikes, Stoppages & Lockouts - Para. (20) | | | x | | Delete GM reference |
| General Provisions - Supervisors Working - Para. (21) - (21)(a)(3) | x | | | | |
| General Provisions, Reports of Physical Exams - Para. (21(b) | x | | | | |
| General Provision, Pay Procedures - Para. (21© | x | | | | |
| Leaves of Absence, Definition & Eligibility  - Para. (22) - (22)(b) | x | | | | |
| Leaves of Absence, Informal  - Para. (22) c) | x | | | | |
| Leaves of Absence, Formal -  Para. (22)(d) | x | | | | |
| Leaves of Absence, Education - Para. (22)(e) | x | | | | |
| Leaves of Absence, Military - Para. (22)(f) | x | | | | |
| Leaves of Absence, Return from Military  - Para. (22)(g) | x | | | | |
| Leaves of Absence, Military Armed Forces Definition - Para. (22)(h) | x | | | | |
| Leaves of Absence, Elective Public Office - Para. (22)(i) | x | | | | |
| Leaves of Absence - Sick Leave - Para (22)(j) | x | | | | |

Attachment E

USW Vandalia
Agreement

| Agreement Clause | Continues Unchanged | No Continuing Application | Changed by MOU | Needs to Be Addressed | Comments (based on current state of discussions) |
|---|---|---|---|---|---|
| Leaves of Absence, Union Activity - Para. (22)(k) | x | | | | |
| Leaves of Absence, General Conditions - Para. (22)(l) | x | | | | |
| Miscellaneous  Provisions - Bereavement Pay - Para. (22)(m) | x | | | | |
| Miscellaneous  Provisions - Jury Duty - Para. (22)(n) | x | | | | |
| Miscellaneous Provisions - Short-term Military Duty Pay - Para. (22)(o)) | x | | | | |
| Record of Available Hours - Para. (23) | x | | | | |
| Union Bulletin Boards - Para. (24) | x | | | | |
|  | x | | | | |
|  | | | | | |
| **Vandalia Agreement Appendices** | | | | | |
|  | | | | | |
| Appendix A - Reinstatement of Seniority | x | | | | |
|  | | | | | |
|  | | | | | |
| **Other Vandalia Agreement Provisions** | | | | | |
|  | | | | | |
| Delphi Vandalia Operations Attendance Administration Program | | x | | | Changed by survival plan |
| Supplemental Ecomomic Issues For Hourly Employees | | | x | | Changed by survival plan |
| Hiring Rates / Wages Division I- Quality Operators | | | x | | Changed by survival plan |
| Hiring Rates / Wages Division II - Skilled Trades | | | x | | Changed by survival plan |
| I. Cost of Living Allowance (E-1 Employees) | | x | x | | Eliminated by MOU |
| A. Cost of Living Allowance Table | | x | x | | Eliminated by MOU |
| Cost of Living Allowance, Effective Dates | | x | x | | Eliminated by MOU |
| II.   Performance Bonus | | x | x | | Changed by survival plan |
| A. Performance Bonus Payments | | x | x | | Changed by survival plan |
| B. Performance Bonus Payments - Retirement / Death | | x | x | | Changed by survival plan |
| III.  Holidays | | | | | |
| A.  Recognized Holidays | | | x | | |
| B.  Holidays, Eligibility | | | x | | Christmas reference |
| IV. Hourly Rate Vacation Pay Plan | | | x | | |
| Vacation Entitlement - Eligibility  (1) - (5) | | | x | | Delete references to GM & Independence Week |
| Vacation Entitlement  -Hours  (6) | | | x | | Changed by survival plan |
| Vacation Entitlement - Percentage of hours -   (7) | | | x | | Changed by survival plan |
| Vacation Entitlement - Payment & Other General Issues (8) - (17) | x | | | | |
| Vacation Time Off Procedure (19) | x | | | | |
| Independence Week Shutdown - (20) | | | x | | Independence Week Pay & ATO eliminated |
| Plant Vacation Shutdown Week - (21) | x | | | | |
| Notifications of Operations to Run - (22) | x | | | | |
| Independence Week Pay and Additional Time Off  - (20) - (26) | | x | x | | Independence Week Pay & ATO eliminated |
| Scheduling Vacation Time Off - (27) - (29) | x | | | | |
| Vacation Pay and Advance Vacation Pay - (30) - (31) | x | | | | |
| V.  New Vehicle Purchase Program | x | | | | |
|  | | | | | |
|  | | | | | |
| **Supplemental Agreements Attached as Exhibits** | | | | | |
| Supplemental Agreement - Pension Plan (Exhibit A) | | | X | | |
| Supplemental Agreement - Life & Disability Benefits Program (Exhibit B) | | | X | | |
| Supplemental Agreement - Health Care Insurance Program (Exhibit C) | | | X | | |
| Supplemental Agreement - Income Security Plan (Exhibit D) | | | X | | |
| Supplemental Agreement - GIS (Exhibit E) | | X | X | | |

USW Vandalia
Agreement

Attachment E

| Agreement Clause | Continues Unchanged | No Continuing Application | Changed by MOU | Needs to Be Addressed | Comments (based on current state of discussions) |
|---|---|---|---|---|---|
| Supplemental Agreement - Profit Sharing Plan (Exhibit F) | X | | | | |
| Supplemental Agreement - Personal Savings Plan (Exhibit G) | X | | | | |
| | | | | | |
| | | | | | |
| **Vandalia Agreement Documents** | | | | | |
| | | | | | |
| Doc. 1 - MOU - Health & Safety - Subjects | | | x | | Delete Reference to Tuition Refund |
| Doc. 2 - MOU - Health and Safety | | | x | | No joint funds |
| Doc. 3 - Ongoing Discussions | x | | | | |
| Doc. 4 - Committee Persons,  Pay Procedure and Scheduling of Overtime | x | | | | |
| Doc. 5 -Co-Chairperson, Health and Safety  & Benefit Representatives | x | | | | |
| Doc. 6 - Definition of Experimental and Developmental Work | x | | | | |
| Doc. 7 - Consideration of Utilization of Skilled Trades Employees | | x | | | Chassis closing |
| Doc. 8 - Pay Shortages | x | | | | |
| Doc. 9 - Reduction of Delphi Interior SEL | | x | | | |
| Doc. 10 - Seniority, General Provisions | x | | | | |
| Doc. 11 -Clarification - Cessation Of Operation (original issue date 2/19/91) | | x | x | | Core group employees transferred to Home Avenue |
| Doc. 12 -Loss Of Seniority - Division II | x | | | | |
| Doc. 13 - Seniority Clarification | | | x | | Delete Reference to JOBS Bank |
| Doc. 14 - Flow Of Seniority Employees | x | | | | |
| Doc. 15 - Commitment To DMS | x | | | | |
| Doc. 16 - Transfer Of Operations | x | | | | |
| Doc. 17 - Alternate Work Schedules | x | | | | |
| Doc. 18 - Employment Level | | x | | | Job Security eliminated |
| | | | | | |
| | | | | | |
| **Vandalia Agreement Memorandum of Understanding** | | | | | |
| | | | | | |
| MOU Re: Business Opportunity Committee | | x | | | |
| | | | | | |
| | | | | | |
| **Vandalia Agreement Published Letters** | | | | | |
| | | | | | |
| Letter  1 - Ecomomic Provisions | | x | | | Core group eliminated |
| Letter  2 - Tuition Refund | | x | | | All forms of Tuition Assistance eliminated |
| Letter  3 - Policy Grievance | x | | | | |
| Letter  4 - Bereavement | x | | | | |
| Letter  5 - Deposed Committeeperson | x | | | | |
| Letter  6 - Future Representation | x | | | | |
| Letter  7 - Mandatory Overtime | x | | | | |
| Letter  8 - Discipline Procedure | x | | | | |
| Letter  9 - Helper Classification | x | | | | |
| Letter 10 - Core Group Training Fund | | x | | | Training funds eliminated |
| Letter 11 - Vacation Entitlement After The Fact | x | | | | |
| Letter 12 - Attendance Guidelines | | x | | | Changed by survival plan |
| | | | | | |
| **1994 Local Negotiations** | | | | | |
| | | | | | |
| 94-V-22 -  Demand that cafeteria be open on all shifts | x | | | | |
| 94-V-24 -  Demand Interior Medical be open on all shifts | x | | | | |

USW Vandalia
Agreement

**Attachment E**

| Agreement Clause | Continues Unchanged | No Continuing Application | Changed by MOU | Needs to Be Addressed | Comments (based on current state of discussions) |
|---|---|---|---|---|---|
| | | | | | |
| **Supplemental Agreement Covering Employee Benefits Plans &** | | | | | |
| **Programs for Hourly Employees Of Delphi Interior Division- Vandalia** | | | | | |
| | | | | | |
| Establishment fo Plans and Programs | | | x | | |
| Defined Contribution Plan | | | x | | |
| Life and Disability Benefits Program | | | x | | |
| Health Care Program | | | x | | |
| Types of Coverage | | | x | | |
| Inpatient Services | | | x | | |
| Inpatient Hospital Services | | | x | | |
| Outpatient Hospital or Alternate Facility Services | | | x | | |
| Mental Health and Substance Abuse Services | | | x | | |
| Supplemental Services | | | x | | |
| Income Security Plan | | | x | | |
| Profit Sharing Plan | x | | | | |
| Personal Savings Plan | x | | | | |
| Addendum:Benefits not covered revert to provisions of Main Ageement | | | x | | |
| Duration of Supplemental Agreement | | | x | | |
| MOU - Alternative Work Schedule Three Crew - Two Shift | x | | | | |
| Changes in 1998 Agreement U.S.W.A. and Delphi Interiors New Paragraphs | | x | | | |
| Signature Page | | | x | | |
| | | | | | |
| **Survival Plan** | | | | | |
| | | | | | |
| MOU - Hourly Vacation Pay Plan Modifications | | | x | | |
| MOU - Voluntary Schedule for Over Time | x | | | | |
| MOU -  Recall Of Laid Off Employees Who Are Laid Off After 1/3/05 | | | x | | |
| MOU - New E-II Compensation Program Division I | | | x | | Changed by MOU |
| MOU - New E-II Compensation Program Division II | | | x | | Changed by MOU |
| MOU - Benefits / Hearing | x | | | | |
| MOU - Early Grievance Resolution | x | | | | |
| MOU - 30 Day Moratorium | | x | | | Time specified elapsed |
| MOU - Paragraph (23) (1) (d) | x | | | | |
| MOU - Sick Leave Improvement Initiative | | x | | | Time specified elapsed |
| MOU - Loss of Seniority -Division I and Division II | x | | | | |
| MOU - Parellel Discipline | x | | | | |
| MOU - Flexible Work Options | x | | | | |
| MOU - Tool Crib / Document Controllers | x | | | | |
| MOU - Uniforms | x | | | | |
| Unpublished Letter - Early Grievance Resolution | | x | | | Time specified elapsed |
| MOU - Home Group Recall | x | | | | |
| MOU - Wage Modifications | | | x | | Changed by MOU |
| MOU - Employee Breaks | x | | | | |
| MOU - Creform | x | | | | |
| MOU - Definition - No Fault Attendance Program | x | | | | |
| MOU - Division I Work Groups | x | | | | |
| Unpublished Memo -  No Fault Attendance Program | x | | | | |
| MOU - No Fault Attendance Program and Work (40) Hours | x | | | | |
| MOU - Post Retirement Health Care | | | x | | |

**Attachment E**

USW Vandalia
Agreement

| Agreement Clause | Continues Unchanged | No Continuing Application | Changed by MOU | Needs to Be Addressed | Comments (based on current state of discussions) |
|---|---|---|---|---|---|
| MOU - Tool Crib / Document Controllers | x | | | | |
| MOU - No Fault Attendance Program | x | | | | |
| MOU - S & A and EDB Payments | | | x | | |
| MOU - Health Care in Retirement | | | x | | |
| MOU - Department 802 All Craft Group Leader Classification | x | | | | |

**Dean W. Munger**
**Executive Director**

August 16, 2007

Mr. Dennis A. Bingham
President, USW – Local 87L
21 Abbey Avenue
Dayton, Ohio  45417

Dear Mr. Bingham,

Subject:  Future Pension Enhancements

During recent discussions between GM, Delphi and USW - Local 87L in regard to the
Delphi bankruptcy, USW - Local 87L expressed concern about future pension plan
enhancements of USW - Local 87L GM retirees compared to other GM union retirees
given that it no longer bargains with GM or represents GM active employees.

GM understands USW - Local 87L's concerns and provides assurance that, in the future,
in determining the level of GM pension benefits for those USW - Local 87L retirees and
surviving spouses, who are considered GM retirees and surviving spouses and who have
100% of their credited service in the GM Hourly Rate Employee Pension Plan and are
receiving 100% of their pension benefits from the GM Hourly Rate Employee Pension
Plan, GM will take into account the level of GM Hourly Rate Employee Pension Plan
benefits provided to comparable former GM employees that were represented by the
UAW and are now considered GM retirees or surviving spouses and who are receiving
100% of their pension benefits from the GM Hourly Rate Employee Pension Plan. In this
regard, GM will, when making enhancements, afford those USW - Local 87L retirees
noted above the same level of enhancement that the comparably situated UAW retiree
receives (for example adjustments given to a UAW member who was a 414(l) transfer
would be provided for a USW retiree who was also a 414(l) transfer), provided, however,
that if UAW pension enhancements are provided because of treatment of such retirees in
regard to other post-retirement benefits such enhancements would not be translated
unless the comparable USW retiree received similar treatment in the other post-
retirement benefit. This is not intended to mean GM can reduce pension benefits already
accrued by USW-Local 87L retirees at the time of the change.

Sincerely,

D. W. Munger (for)

**Dean W. Munger**
**Executive Director**

August 16, 2007

Mr. Dennis A. Bingham
President, USW – Local 87L
21 Abbey Avenue
Dayton, Ohio  45417

Dear Mr. Bingham,

Subject: Future Post-Retirement Health Care Coverage

During recent discussions between GM, Delphi and USW - Local 87L in regard to the
Delphi bankruptcy, USW - Local 87L expressed concerns about the post-retirement
health care coverage treatment of USW- Local 87L GM retirees after 2011 compared to
other GM union retirees given that it no longer bargains with GM or represents GM
active employees.

GM understands USW - Local 87L's concerns and provides assurance that future changes
to the post-retirement health care benefits for USW - Local 87L retirees and surviving
spouses, who are considered GM retirees and surviving spouses and who have retired no
later than the date determined in the USW-Local 87L - GM - Delphi Special Attrition
Program dated August 16, 2007 ("USW Retirees") will be based on changes to the post-
retirement health care benefits for former GM employees who were represented by the
UAW who are considered GM retirees or surviving spouses ("UAW Retirees").  Changes
to the post-retirement healthcare benefits for USW Retirees will be proportional to the
changes to those benefits for UAW Retirees based on the differences between the USW -
Local 87L Plan Design Changes dated August 16, 2007 and the UAW Plan Design
Settlement Agreement dated December 16, 2005.

Sincerely,

D.W. Munger (for)

**Dean W. Munger**
**Executive Director**

August 16, 2007

Mr. Dennis A. Bingham
President, USW – Local 87L
21 Abbey Avenue
Dayton, Ohio  45417

Dear Mr. Bingham,

Subject:  Benefit Guarantee

In reference to our discussion yesterday, GM makes the following commitment to the
USW:

USW represented Delphi employees who check the box and transition to GM in order to
retire will receive the same treatment, relative to health care and pensions as provided in
the Benefit Guarantee, as UAW represented Delphi employees who check the box and
flow back to GM in order to retire.

Let me know if you have any questions.

Sincerely,

*a. Schwartz (for)*