# EXHIBIT 2

**Hearing Date:  September 6, 2007**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

       - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                                          :
        In re                                             :      Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :      Case No. 05-44481 (RDD)
                                                          :
                                                          :      (Jointly Administered)
                   Debtors.                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMENDED DECLARATION OF BRUCE WASLUSKY IN SUPPORT OF DEBTORS'
AMENDED SUPPLEMENTAL REPLY WITH RESPECT TO PROOFS OF CLAIM
NUMBERS 837 & 838 (H.E. SERVICES COMPANY & ROBERT BACKIE)

("AMENDED WASLUSKY DECLARATION – H.E. SERVICES COMPANY, ET AL.")

Bruce Waslusky declares as follows:

1.      Delphi Corporation and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these chapter 11 cases.  I submit this declaration in support of the Debtors' Amended Supplemental Reply With Respect To Proofs Of Claim 837 & 838 (H.E. Services Company and Robert Backie) (the "Amended Supplemental Reply").  Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Amended Supplemental Reply and the Statement of Disputed Issues.

2.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, and my experience with and knowledge of Delphi Automotive Systems LLC's ("DAS LLC") relationship with H.E. Services Company  ("H.E. Services").  If I were called upon to testify, I could and would testify to the facts set forth herein.

3.      I began working for DAS LLC in 1971 and I have worked in various capacities over the years, including Line Supervisor, Production Control Logistics, Purchasing, Value Analysis, and Buyer.  I currently work as a Prototype Purchasing Manager for DAS LLC's Saginaw Steering Division.  I have held this position since mid-1998.  In my current position I am responsible for overseeing Buyers, meeting the requirements of DAS LLC's Saginaw prototype center, and providing plant support.

4.      I worked with H.E. Services to meet various prototype requirements of DAS LLC from approximately mid-1998 until H.E. Services closed in approximately the spring of 2004.

2

5.      Sometime prior to H.E. Services' closure of its facility in El Paso, Texas, Robert Backie advised me that he intended to close that facility due to lack of business.  When I became aware of Mr. Backie's intentions, I sent Requests for Quotation ("RFQ") to H.E. Services' El Paso facility for work related to the requirements of DAS LLC's Saginaw prototype center.  Specifically, I directed that the Buyers working for me include H.E. Services' El Paso facility on bid lists for work required by my department.  Although I was under no obligation to send these RFQs to H.E. Services, I did so because DAS LLC and H.E. Services shared a good working relationship.  Over the course of several months, I sent approximately twenty RFQs to H.E. Services' El Paso facility, however, it did not win any of the requested business due to lack of competitive pricing.  During my conversation with Robert Backie he did not suggest that his decision to close the El Paso facility was related to discrimination or broken promises on the part of DAS LLC.   I know that Mr. Backie did not convey such concerns because I would have found such statements surprising and taken some action in response.[1]

6.      After H.E. Services' El Paso facility closed, I learned from Darrin Krogman, H.E. Services' Ancon division manager, that the equipment from the El Paso facility was moved to the Ancon division facility.  It was important that I be aware of this move because it was part of my job to understand suppliers' capacities to produce prototype parts.  H.E. Services' Ancon division's capacity increased as a result of the equipment move.

7.      I was involved in the EX-CELL-O Relationship.  In approximately June 1999, DAS LLC issued RFQ number S30000009 to ten suppliers potentially interested in and

---

[1]    Indeed, the first time I became aware that H.E. Services and Mr. Backie alleged discrimination and breach of contract against DAS LLC was in connection with this lawsuit.

capable of producing prototype C/V joint components, specifically inner and outer races.[2] (Ex. A at 4, 5 (Sourcing Committee Bidders' List and Request for Sourcing).) Production of the prototype inner and outer races required that the supplier purchase an EX-CELL-O Model XG-690 grinding machine to facilitate DAS LLC's requirements. (Id. at 5, 6.) Potential suppliers did not have the option to purchase a different machine.

8.      As reflected on the sourcing documents, of the ten suppliers that DAS LLC solicited, five responded by bidding on the business. (Id. at 3, 4.) After three rounds of negotiations with the potential suppliers, H.E. Services' Ancon division was awarded the contract because it offered DAS LLC the most competitive price. (Id. at 1-3.) The per part price H.E. Services quoted Delphi was based both the cost of necessary materials and the cost of the EX-CELL-O machine. (See Exs. B, C, D (Quotes).)

9.      Upon being awarded the business, as part of its agreement with DAS LLC, H.E. Services was responsible for contracting with EX-CELL-O GmbH and purchasing an EX-CELL-O machine. Moreover, H.E. Services was responsible for providing all maintenance and repair to the EX-CELL-O machine. H.E. Services acknowledged these responsibilities in its various quotes on the EX-CELL-O business. (See Ex. B (July 20, 1999 Quote ("Ancon to provide all maintenance and repair to the Excello Machine")); Ex. C (Sept. 22, 1999 Quote (same)); Ex. D (October 12, 1999 Quote (same)); see also Ex. E at 3 (Aug. 20, 1999 Proposal ("[S]upplier to purchase an Excello Machining Center")).)

---

[2]    Automobiles transfer power from the transmission to the wheels through drive-axel assemblies. C/V ("Constant Velocity") joint components, located on the ends of the axle, allow a wheel's rotating shaft to transmit power through a variable angle, at a constant speed, without an appreciable increase in friction or play. Inner and outer races make up a portion of the C/V joint.

10.    Moreover, I consistently conveyed to H.E. Services personnel, including Joseph Stearns, H.E. Services Vice President of Engineering and Manufacturing, that DAS LLC did not intend to become involved in purchase of the EX-CELL-O machine or any commercial issues between H.E. Services and EX-CELL-O GmbH arising out of that purchase.  (See Ex. F (Jan. 31, 2001 memorandum from B. Waslusky to D. Bolinger).)  DAS LLC's sole concern with respect to the EX-CELL-O machine was that the machine was capable of meeting the prototype requirements of DAS LLC and its customers.  (See id.)

11.    DAS LLC specified in its RFQ that the EX-CELL-O machine incorporate Fanuc controls.  Because Fanuc controls are the industry standard in the United States, DAS LLC routinely requires the use of Fanuc controls to meet its requirements.[3]  By contrast, Siemens controls are the industry standard in Europe and are thus generally incompatible with DAS LLC's American operations.  H.E. Services was aware of the requirement that the EX-CELL-O machine incorporate Fanuc controls prior to bidding on and being awarded the EX-CELL-O business.  Nevertheless, the differences between the two controllers were tested by EX-CELL-O GmbH and EX-CELL-O GmbH assured both DAS LLC and H.E. Services that the Fanuc and Siemens controllers were equivalent.  (See Exs. G, H (Feb. 28, 2001 and Mar. 5, 2001 EX-CELL-O conference call minutes).)

12.    On or about October 29, 1999, DAS LLC internally issued a three-year blanket requirements contract in the form of a purchase request ("MBO S3B00028").  (Ex. I.)  A

---

[3]    Based on my experience as a long-time DAS LLC employee and my experience as a former Capital Equipment Buyer for DAS LLC, I understand that Fanuc controls are the American automotive industry standard. Although I ceased purchasing capital equipment in approximately mid-1998 when I became the Prototype Purchasing Manager, I would expect a change in the standard controls used by DAS LLC to be conveyed to me, as well as the employees of DAS LLC generally, because this would represent a significant change in DAS LLC's operations.

5

purchase order containing the same terms was subsequently issued to H.E. Services in connection with the EX-CELL-O Relationship.[4] (See HES Supp. Resp. ¶ 20.) MBO S3B00028 specified: "MBO [miscellaneous blanket order] will be evaluated every [quarter] on volume, starting 3 months after machine is in place at [H.E. Services] and run off is successful. Payment for machine is included in part [piece] price. Price based on a quantity of 7,000 pieces annually. This price will go up or down based on actual[] volume ever[y] [quarter] to insure payment of machine." (Ex. I.) I did not promise or represent to H.E. Services that DAS LLC would purchase any specified number of parts on an annual basis. Moreover, projected volumes are not firm; experienced suppliers such as H.E. Services know that DAS LLC's requirements may change. DAS LLC's main responsibility with respect to the EX-CELL-O Relationship was to repay H.E. Services for the cost of the machine. With MBO SB300028 DAS LLC sought to fulfill this payment obligation by including the cost of the machine in the piece price of components ordered and evaluating the number of components ordered on a quarterly basis to insure that H.E. Services was being neither over- nor underpaid for the machine.

13.    Although H.E. Services immediately contracted with EX-CELL-O GmbH for the purchase of an EX-CELL-O machine that would meet DAS LLC's requirements in connection with MBO S3B00028, problems arose that prevented H.E. Services from timely beginning work under the requirements contract. Specifically, although the EX-CELL-O GmbH originally scheduled the machine to be delivered to H.E. Services on or about September 15, 2000 (Ex. F at 2), the machine did not actually arrive at H.E. Services' Ancon division facility until December 13, 2001. (Ex. J (Dec. 13, 2001 EX-CELL-O meeting minutes).) As discussed

---

[4]    DAS LLC was unable to locate a copy of this purchase order.

during regular meetings I attended, the fourteen month delivery delay was caused, at least in part, by EX-CELL-O GmbH because EX-CELL-O GmbH experienced difficulty manufacturing a machine capable of meeting DAS LLC's requirements.  (See Ex. F at 2; Ex. K  (letter from H.E. Services to EX-CELL-O GmbH).)  H.E. Services, not DAS LLC, retained responsibility for ensuring the capability of the EX-CELL-O machine, including conducting run-offs that would ensure that the machine would efficiently produce parts to DAS LLC's specifications.  (See, e.g., Ex. K.)

14.     As previously noted, the per part price that H.E. Services anticipated to charge DAS LLC for parts produced using the EX-CELL-O machine incorporated H.E. Services' cost of acquiring the machine.   Due in large part to H.E. Services' delayed receipt of the EX-CELL-O machine, and resulting delays in orders and payments from DAS LLC, H.E. Services requested, and DAS LLC agreed, to make monthly payments to H.E. Services toward the cost of the machine – irrespective of the number of parts ordered – rather than make a volume driven variable monthly payment to H.E. Services as was originally anticipated.  (Ex. L at 1 (Nov. 13, 2001 letter from J. Stearns to B. Waslusky).)  This arrangement was beneficial to H.E. Services because it enabled H.E. Services to receive a guaranteed payment from DAS LLC each month regardless of how many parts DAS LLC required, effectively insulating H.E. Services from wide swings in DAS LLC's month-to-month requirements.  If DAS LLC required parts in any given month it would pay an additional amount above and beyond the guaranteed payment.

15.     To effect the revised terms of the EX-CELL-O Relationship, on April 30, 2002, DAS LLC issued purchase order number S3S18278 to H.E. Services. (Ex. M.)  This purchase order was governed by DAS LLC's General Terms and Conditions.  (Id. at 5.)  Purchase order S3S18278 authorized DAS LLC to disburse to H.E. Services a monthly payment

7

of $22,926.00 toward H.E. Services' costs associated with its purchase of the EX-CELL-O

machine (which were originally included in the quoted per part price). (<u>Id.</u>) These payments

were originally scheduled to continue for 36 months. (<u>Id.</u>) However, DAS LLC made only

twenty of the scheduled payments – totaling $458,520.00 – because H.E. Services closed its

business and never invoiced DAS LLC for the remaining payments. DAS LLC subsequently

closed purchase order S3S18278 in May of 2005; at that time purchase order S3S18278 was

altered to reflect that DAS LLC made only twenty payments under it. (<u>See</u> Ex. N (purchase

order alteration).)

        16.     Simultaneous to the issuance of purchase order S3S18278 on April 30,

2002, DAS LLC also internally re-issued the three-year blanket requirements contract associated

with the EX-CELL-O Relationship under a new purchase request ("MBO S3B00059"). (Ex. O.)

On or about May 1, 2002, DAS LLC issued a new blanket purchase order to H.E. Services,

containing the same terms as MBO S3B00059 ("PO S3B00059"). (Ex. P.) This purchase order

was revised based on H.E. Services' revised quote of June 19, 2001 as well as purchase order

S3S18278. (<u>Id.</u>) Additionally, an alteration to PO S3B00059, issued on May 6, 2002, explicitly

added the cancellation of the clauses in MBO S3B00028 and the associated purchase order;

specifically, the volume and quarterly price analysis clauses were cancelled. (<u>Id.</u> at 2.) Under

the revised purchase order, DAS LLC agreed to pay a higher pure per-part price for the

components produced on the EX-CELL-O machine.[5]  Blanket PO S3B00059, as well as all

---

[5]    Under the October 29, 1999 purchase request, MBO S3B00028, DAS LLC agreed to pay a pure per part price
$95.40 for inner and outer races made from bar stock and $77.40 for inner and outer races made from provided
blanks. DAS LLC also agreed to pay $29.50 per part to cover the cost of the machine. Thus, the total price per
part under MBO S3B00028 was $124.90 for races made from bar stock and $106.90 for races made from
provided blanks. By contrast, under the revised deal, PO S3B00059, DAS LLC agreed to pay a pure per part
price of $119.25 for races made from bar stock and $96.75 for races made from provided blanks. (Ex. P.)

<div align="right"><i>(cont'd)</i></div>

<div align="center">8</div>

purchase orders issued against it, explicitly incorporated and were made subject to DAS LLC's

General Terms & Conditions that were in effect as of January 2001.  (See id.; see also Ex. Q (PO

S3S26246); Ex. R (Terms & Conditions).)

17.     Following the late delivery of the EX-CELL-O machine, problems

persisted that prevented H.E. Services from efficiently meeting DAS LLC's requirements.  For

instance, immediately following the delivery the machine, H.E. Services learned for the first time

that the machine ran on a central coolant system.  This indicated to me that H.E. Services'

personnel failed to achieve familiarity with the machine despite their contractual obligation to do

so.  Nevertheless, DAS LLC purchased a central coolant system for H.E. Services' use at a cost

of approximately $6,000.

18.     H.E. Services also experienced problems with the programming of the

machine, which it struggled with for many months.  Additionally, the permanent tooling for the

machine presented continuous problems where H.E. Services was unable to alter the EX-CELL-

O machine efficiently to meet DAS LLC's requirements.  Because alterations and improvements

to prototype parts are the norm, it was essential that H.E. Services be able to effect these

alterations to the machine in an efficient manner in order to meet DAS LLC's requirements.

These and other problems were discussed at regular EX-CELL-O meetings that I attended.

19.     As reflected in correspondence I received, these problems were

exacerbated because EX-CELL-O GmbH refused to honor its warranty with respect to the

machine.  This was due to the fact that H.E. Services refused to pay EX-CELL-O GmbH for the

_____

*(cont'd from previous page)*

These amounts also constituted the total price per part because DAS LLC was separately making monthly
payments to H.E. Services for the machine under purchase order S3S18278.  Thus, although the total price per
part payable to H.E. Services under PO S3B00059 was lower than the total price per part under MBO
S3B00028, the pure per part price was actually increased.

full amount invoiced for the machine.  (See Ex. S (collection of letters from EX-CELL-O GmbH to H.E. Services).)  The long delivery delay had strained the relationship between H.E. Services and EX-CELL-O GmbH and in response, as a self-help remedy, H.E. Services underpaid EX-CELL-O GmbH for the machine.  (See id.)  EX-CELL-O GmbH did not agree with H.E. Services' actions and, accordingly, refused to honor its warranty with respect to the machine. Thus, when problems such as those related to programming and permanent tooling arose, EX-CELL-O GmbH was unavailable to assist due solely to H.E. Services' dispute with EX-CELL-O GmbH.  Although DAS LLC was notified of or copied on correspondence between H.E. Services and EX-CELL-O GmbH relevant to these issues, DAS LLC was not directly involved in the contractual relationship between the two companies.  It remained H.E. Services' responsibility to DAS LLC to ensure that the machine could meet DAS LLC's requirements.

20.    On or about March 11, 2003, I held a meeting with H.E. Services' Robert Backie and David Stearns.  Among other things, I advised Messrs. Backie and Stearns that:  (1) H.E. Services was "suffering from internal paralysis," which was effecting their performance in connection with the EX-CELL-O Relationship; (2) H.E. Services was experiencing inefficiencies with respect to tooling; (3) the EX-CELL-O Relationship lacked programming and engineering support from H.E. Services; (4) parts were being wasted in connection with setting up and running the EX-CELL-O machine; and (5) communication between DAS LLC and H.E. Services had deteriorated.  (Ex. T (Email).)  No significant progress was made on these items in the weeks following the meeting.  (Id.)  Additionally, H.E. Services failed to meet delivery deadlines during that time frame.  (Id.)

21.    As a result of these problems, and in order to meet DAS LLC's customers' requirements, DAS LLC resourced production of some inner and outer race prototypes to Ranger

10

Tool & Die ("Ranger"). DAS LLC only resourced business to Ranger on the occasions where H.E. Services failed to meet DAS LLC's requirements and DAS LLC's only alternative would have been to default on obligations to its customers.

22.    Ranger manually produced inner and outer races for DAS LLC prior to H.E. Services and, unlike H.E. Services, Ranger had a proven method of manually producing the prototypes in question. However, Ranger charged substantially higher prices than H.E. Services. Despite Ranger's involvement, DAS LLC remained committed to the EX-CELL-O Relationship with H.E. Services and desired that the EX-CELL-O machine become capable of meeting DAS LLC's requirements. This is evidenced by the fact that DAS LLC continued to make monthly payments to H.E. Services under purchase order S3S18278 until the time that H.E. Services permanently closed its business in the spring of 2004.

23.    Because the EX-CELL-O machine never performed adequately, DAS LLC lost money on the EX-CELL-O Relationship. Not only did DAS LLC have to resource production of inner and outer races to Ranger at substantially higher prices, but DAS LLC devoted a significant amount of money, time and effort to the EX-CELL-O Relationship.

24.    I did not contact EX-CELL-O GmbH or otherwise encourage EX-CELL-O GmbH to sue H.E. Services or repossess the EX-CELL-O machine. My only direct contact with EX-CELL-O GmbH occurred on two occasions during the summer of 2004 after H.E. Services had closed. On the first occasion, I contacted EX-CELL-O GmbH after being notified by Lee Lambert, a former H.E. Services' employee, that a person was on H.E. Services' property inspecting the EX-CELL-O machine. Out of concern, I called EX-CELL-O GmbH to inquire whether they had sent a representative to inspect the machine; I was assured that they had done so. On the second occasion, I was contacted by an EX-CELL-O GmbH salesperson who

11

inquired whether DAS LLC had interest in purchasing the EX-CELL-O machine.  I explored this

possibility with my colleagues, Mark Martin and David McGregor, but ultimately DAS LLC

determined not to purchase the EX-CELL-O machine at that time.

        25.    I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the

foregoing statements are true and correct.

Executed on August 30, 2007 in Saginaw, Michigan

_____/s/___Bruce Waslusky_____

Bruce Waslusky

# EXHIBIT A

DELPHI CONFIDENTIAL

# DELPHI SOURCE RECOMMENDATION FORM
## INDIRECT/MACHINERY and EQUIPMENT

**DPR #** C9600068

| M & E | |
|---|---|
| INDIRECT | X |

**DIVISION/LOCATION:** Delphi Steering Systems/Prototype Headquarters

**MEETING DATE:** 10/18/99-Monday

**DESCRIPTION:** INNER & OUTER RACE PROTOYPE BLANKET (BUILD TO PRINT)

**CREATIVITY TEAM NAME:**

**PROGRAM:** Halfshaft/various

**MODEL YEAR:**

**LINKED / LEVERAGED:** _____ (DPR #)

**APP. REQUEST #:** 0

**COSTBOOK $:** $2,968,369

**TARGET PRICE(S):** $2,551,500

**BUYER:** Allen Fisher

**FINANCIAL:** 0

**DELIVERY DATE:** 01-Oct-00

**A/R $** $0

**PHONE:** 8-357-3072

**PHONE:**

| SUPPLIER | LOCATION | QUOTED PRICE $ | NEGOTIATED PRICE $ | BUYER SAVINGS $ | REDUCTION AGAINST AR/CB $ % |
|---|---|---|---|---|---|
| ANCON PROTOTYPE | SAGINAW, MI. | REDACTED | REDACTED | REDACTED | REDACTED |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**COMMENTS:** 3 year contract effective 10/01/2000! Supplier req'd to purchase machine from Excello
Ancon's price reduction for 2nd & 3rd year. 3%, 3%

| STATE COSTBOOK BY YEAR: | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|
| | | $164,909 | $989,456 | $989,456 | $824,547 |
| SAVINGS AGAINST AR/CB: | | $17,001 | $102,003 | $102,003 | $85,003 |

**APPROVAL SIGNATURES:**

| BUYER | REQUISITIONER | DIVISIONAL MANAGER |
|---|---|---|
| Allen Fisher 6/18/99 | *Ronald Wolff 1/10/99 | Marie Pokrajac |

| COMMODITY MANAGER | DIVISIONAL/REGIONAL DIRECTOR | COMMODITY DIRECTOR | VICE PRESIDENT |
|---|---|---|---|
| 10/28/99 | | | |

Rev 5/3/99

DELPHI CONFIDENTIAL

# DELPHI SOURCE RECOMMENDATION FORM
## INDIRECT/MACHINERY and EQUIPMENT

DPR # C9600068

MEETING DATE: 10/18/99-Monday

| M & E | |
|---|---|
| INDIRECT | |
| | X |

DIVISION/LOCATION: Delphi Steering Systems/Prototype Headquarters

DESCRIPTION: INNER & OUTER RACE PROTOYPE BLANKET (BUILD TO PRINT)

CREATIVITY TEAM NAME:

PROGRAM: Halfshaft/various

MODEL YEAR:

LINKED / LEVERAGED: _____ (DPR #)

APP. REQUEST #: 0

COSTBOOK $: $2,968,369

TARGET PRICE(S): $2,551,500

BUYER: Allen Fisher

FINANCIAL: 0

DELIVERY DATE: 01-Oct-00

A/R $        $0

PHONE: 8-357-3072

PHONE: 0

| SUPPLIER | LOCATION | | QUOTED PRICE $ | | NEGOTIATED PRICE $ | | BUYER SAVINGS $ | | REDUCTION AGAINST AR/CB $ % |
|---|---|---|---|---|---|---|---|---|---|
| ANCON PROTOTYPE | SAGINAW, MI. | | REDACTED | | REDACTED | | REDACTED | | REDACTED |

COMMENTS: 3 year contract effective 10/01/2000! Supplier req'd to purchase machine from Excello

Ancon's price reduction for 2nd & 3rd year. 3%, 3%

| | | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|
| STATE COSTBOOK BY YEAR: | | | $164,909 | $989,456 | $989,456 | $824,547 |
| SAVINGS AGAINST AR/CB: | | | $17,001 | $102,003 | $102,003 | $85,003 |

APPROVAL SIGNATURES:

| | REQUISITIONER |
|---|---|
| COMMODITY MANAGER | |
| | COMMODITY DIRECTOR Oct 18 99 |
| BUYER | DIVISIONAL MANAGER 10/21/99 |
| DIVISIONAL/REGIONAL DIRECTOR | VICE PRESIDENT R.C. Campbell |

Rev 5/9/99

DELPHI CONFIDENTIAL

# DELPHI SOURCING COMMITTEE
## ROUNDS OF NEGOTIATIONS

**Description:**

INNER & OUTER RACE PROTOYPE BLANKET (BUILD TO PRINT)

**DPR #:** C9600068

**Costbook:** $2,968,369

| M S Supplier Name | Original Quote | Round #1 | Round #2 | Round #3 | Round #4 | Round #5 | Round #6 |
|---|---|---|---|---|---|---|---|
| ANCON PROTOTYPE | | | | | | | |
| MERRILL TOOL | | | | | | | |
| COLD FORM TECHNOLOGY | | | REDACTED | | | | |
| PANDA PRECISION | | | | | | | |
| DYNAMIC PROTOTYPE OPERATION | | | | | | | |
| Targets: | | REDACTED | REDACTED | REDACTED | | | |

Rev 5/3/99

DELPHI CONFIDENTIAL

# DELPHI SOURCING COMMITTEE
## BIDDERS LIST

**DPR #** C9600068

**Meeting Date** 10/18/99-Monday

**Description:**

INNER & OUTER RACE PROTOYPE BLANKET (BUILD TO PRINT)

| M S | Supplier | Country/State | Quoted | Declined | No Response | Comments |
|---|---|---|---|---|---|---|
| | CENTRAL TOOL ROOM | USA/MICHIGAN | | x | | |
| | ANCON PROTOTYPE | USA/MICHIGAN | x | | | |
| | BELL ENGINEERING | USA/MICHIGAN | | x | | |
| | RANGER TOOL & DIE | USA/MICHIGAN | | x | | |
| | MISTEQUAY GROUP, LTD. | USA/MICHIGAN | | x | | |
| | MERRILL TOOL | USA/MICHIGAN | x | | | |
| | COLD FORM TECHNOLOGY | USA/MICHIGAN | x | | | |
| | PANDA PRECISION | USA/MICHIGAN | x | | | |
| | PARAVIS INDUSTRIES INC. | USA/MICHIGAN | | | x | |
| | DYNAMIC PROTOTYPE OPERATION | USA/MICHIGAN | x | | | |

Rev. 5/3/99

DELPHI CONFIDENTIAL

# DELPHI MACHINERY & EQUIPMENT/CONSTRUCTION/INDIRECT REQUEST FOR SOURCING

Delphi Purchasing Request # **C9600068**

## TO BE COMPLETED BY ENGR/REQUESTER

TO: _____

TEL: _____    FAX: _____

| Project Name: | INNER & OUTER RACE PROTOTYPE BLANKET (BUILD TO PRINT) |
|---|---|

Costbook($): __$2,968,369__    Capital or Expense: __E__

Appropriation Request # _____    Req. # _____

Appropriation Request Provision ($): _____

Delivery Date: _____    Spec Avail. Date: _____

Bids Out Date: __22-Jun-99__    Bids Due Date: __20-Jul-99__

Division/Location: __Delphi Steering Systems/Prototype Headquarters__

Platform/Program: __Halfshaft/various__

Engineer/Requisitioner: __Mark Martin__

Phone: __8-357-4614__    Fax: __8-357-3866__

Financial Contact: _____

Phone: _____    Fax: _____

## TO BE COMPLETED BY PURCHASING:

TO: __Dick Ballou__

TEL: __8-276-4935__    FAX: __8-276-4941__

Date: __14-Jun-99__

Buyer Name: __Allen Fisher__

Phone __8-357-3072__    FAX: __8-357-9075__

Planned Award Date: __18-Oct-99__

Sourcing Strategy: __BEST/LOW BID__

Comments:

To provide the prototype center with a Blanket Order for three

years renewable at end of term for inner & outer races. This contract inludes the aggreement that the

supplier will purchase an Excello Model XG-690 to facilitate our requirements.

## PROJECT/EQUIPMENT/MATERIAL DESCRIPTION

Supplier will have a three year contract to supply the prototype center with Inner & Outer races. Supplier must purchase an Excello Machine with a cost of $622,000. Delphi Saginaw shall

purchase and provide all non-perishable tooling, estimated cost to Saginaw is $300,000. The purpose for this project is to help the Prototype center cut the lead time out of the inner & outer race

machining process.

## RECOMMENDED SOURCES

| MS | COMPANY | MFG. LOCATION | DUNS NO. |
|---|---|---|---|
| | CENTRAL TOOL ROOM | DELPHI SAGINAW STEERING/PLANT 03 | 059158456 |
| | ANCON PROTOTYPE | 1755 WICCO RD., SAGINAW, MI 48601 | 608814059 |
| | BELL ENGINEERING | 735 S. OUTER DR., SAGINAW, MI 48601 | 006523450 |
| | RANGER TOOL & DIE | 317 SOUTH WESTERVELT, SAGINAW, MI 48604 | 5514740 |
| | MISTEQUAY GROUP, LTD. | 1212 N. NIAGARA STREET, SAGINAW, MI 48605 | 825362650 |
| | MERRILL TOOL | 20720 GRATIOT RD., MERRILL, MI 48637 | 926404120 |
| | COLD FORM TECHNOLOGY | 6556 ARROW DR., STERLING HEIGHTS, MI 48314 | 800130551 |
| | PANDA PRECISION | 28046 OAKLAND OAKS CT., WIXOM, MI 48393 | 803855196 |
| | PARAVIS INDUSTRIES INC. | 1597 ATLANTIC BLVD., AUBURN HILLS, MI. 48326 | 098013725 |
| | DYNAMIC PROTOTYPE OPERATION | 2193 EXECUTIVE HILLS BLVD., AUBURN HILLS, MI. 48326 | 835469321 |

THIS FORM COMMENCES THE DELPHI SOURCING PROCESS

Rev 5/3/99

DELPHI CONFIDENTIAL

## INTRODUCTION - "HISTORY/OVERVIEW"

**ACTION PLAN/DPR #:**    C9600068

**P/N or DESCRIPTION:**    INNER & OUTER RACE PROTOTYPE BLANKET (BUILD TO PRINT)

**INTRODUCTION/HISTORY:**

To provide the prototype center with a Blanket Order for three years for inner

& outer races.  This contract includes the aggreement that the supplier will purchase an Excello Model XG-690

machine to facilitate our requirements.        This contract is open for use to the Delphi Paris and Mexico

Tech. Centre locations.

**STRATEGIES:**

Best/Low Bid

05/03/1999

EXHIBIT B

07/21/1999   10:08   5177550330                    ANCON TOOL                                PAGE 01



## PROTOTYPE / MACHINE

(A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

**TO:**      Al Fisher

**FROM:**    Darrin Krogman   D.K.

**DATE:**    July 20, 1999

**RE:**      Delphi's RFQ. No. S30000009, Inner & Outer Race

We are pleased to submit the following quote:

Monthly Equipment/Maintenance Cost/Training for an Ex-Cell-O XG 690 Milling &
Grinding Machine:   $16,607.00 for a period of 3 years.

- Price based on $450,000.00 Purchase of Excello Model XG-690.
- Three year contract doing minimum of 3454 pcs. Inner Races and 3569 pcs. Outer
  Races per year.
- Ancon to provide all maintenance and repair to the Excello Machine.
- Three Ancon employees to be trained at the Excello Plant in Germany.
- All equipment and estimated 1000 sq. ft. to be dedicated solely to Delphi.
  Includes storage space for raw material and blanks.
- Delphi to provide all steel, blanks, heat treating, broaching, and cold forming of
  splines and threads for races.
- All tooling and special equipment necessary to produce inner and outer races to
  be provided by Delphi.

### Outer Races

| | | | |
|---|---|---|---|
| SX046486 | Race, C/G Joint Outer | $220 | Solid |
| SX040689 | Race, C/G Joint Outer | $243 | Solid |
| SX034440 | Race, D/O Joint Outer | $166 | Blank |
| 26076827 | Race, C/G Joint Outer | $195 | Blank |
| SX046443 | Race, C/G Joint Outer | $220 | Solid |
| 26080617 | Race, C/V Joint Outer | $245 | Solid |
| 26080615 | Race, C/V Joint Outer | $245 | Solid |
| SX046875 | Race, Male D/O Joint Outer | $216 | Solid |
| SX043369 | Race, Female D/O Joint Outer (Delphi to Broach) | $221 | Solid |
| 4500112 | Outer Race | $228 | Forging |

### Inner Races

| | | | |
|---|---|---|---|
| 4500115 | Race, C/V Joint Inner | $150 | Forging |
| SX044901 | Race, D/O Joint Inner | $159 | Solid |
| SX042709 | Race, C/V Joint Inner | $130 | Solid |
| SX046447 | Race, C/V Joint Inner | $120 | Solid |
| SX046490 | Race, C/V Joint Inner | $120 | Solid |
| SX042709 | Race, C/V Joint Inner | $137 | Solid |
| 26058593 | Race, C/V Joint Inner | $137 | Solid |



- All races will be 100% inspected on a Zeiss Prismo Vast (CMM) A2LA Certified Facility.
- QS-9000 Certified/Air Conditioned Plant.
- Minority Owned Business Enterprise (MBE) and is a recognized Delphi Equal Partner.

If you have any questions on this quote, feel free to contact me. Thank you for the opportunity to provide this quote.

EXHIBIT C



## PROTOTYPE / MACHINE

(A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

**TO:**   Al Fisher

**FROM:**   Darrin Krogman

**DATE:**   September 22, 1999

**RE:**   Delphi's RFQ. No. S30000009, Inner & Outer Race

We are pleased to submit the following quote:

### Inner and Outer Races made from bar stock:

| Part Cost | Excello Machine Cost | Total Cost |
|:---:|:---:|:---:|
| $95.40 | $29.50 | $124.90 |

### Inner and Outer Races made from provided blanks:

| Part Cost | Excello Machine Cost | Total Cost |
|:---:|:---:|:---:|
| $77.40 | $29.50 | $106.90 |

- Price based on $520,000 Purchase of Excello Model XG-690.
- Three year contract doing minimum of 3454 pcs. Inner Races and 3569 pcs. Outer Races per year.
- Ancon to provide all maintenance and repair to the Excello Machine.
- Three H.E. Services employees to be trained at the Excello Plant in Germany.
- All equipment and estimated 1000 sq. ft. to be dedicated solely to Delphi. Includes storage space for raw material and blanks.
- Delphi to provide all steel, blanks, heat treating, broaching, and cold forming of splines and threads for races.
- All tooling and special equipment necessary to produce inner and outer races to be provided by Delphi.
- Additional requirements subject to price adjustment if necessary.
- Races will be inspected on a Zeiss Prismo Vast (CMM) at our A2LA Certified Facility.
- QS-9000 Certified/Air Conditioned Plant.
- Minority Owned Business Enterprise (MBE) and is a recognized Delphi Equal Partner.
- We will be able to do hard milling upon receipt of tooling cost along with set-up and run times.
- Engineering development time will be quoted at $80 per hour.

EXHIBIT D



## PROTOTYPE / MACHINE

(A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

**TO:** Al Fisher

**FROM:** Darrin Krogman

**DATE:** October 12, 1999   *mBo S3 B000 28*

**RE:** Delphi's RFQ. No. S30000009, Inner & Outer Race

We are pleased to submit the following quote:

### Inner and Outer Races made from bar stock:

| Part Cost | Excello Machine Cost | Total Cost |
|---|---|---|
| $95.40 | $35.30 | $130.70 |

### Inner and Outer Races made from provided blanks:

| Part Cost | Excello Machine Cost | Total Cost |
|---|---|---|
| $77.40 | $35.30 | $112.70 |

- Price based on $622,000 Purchase of Excello Model XG-690.
- Three year contract doing minimum of 3454 pcs. Inner Races and 3569 pcs. Outer Races per year.
- Ancon to provide all maintenance and repair to the Excello Machine.
- Three H.E. Services employees to be trained at the Excello Plant in Germany.
- All equipment and estimated 1000 sq. ft. to be dedicated solely to Delphi.  Includes storage space for raw material and blanks.
- Delphi to provide all steel, blanks, heat treating, broaching, and cold forming of splines and threads for races.
- All tooling and special equipment necessary to produce inner and outer races to be provided by Delphi.
- Additional requirements subject to price adjustment if necessary.
- Races will be inspected on a Zeiss Prismo Vast (CMM) at our A2LA Certified Facility.
- QS-9000 Certified/Air Conditioned Plant.
- Minority Owned Business Enterprise (MBE) and is a recognized Delphi Equal Partner.
- We will be able to do hard milling upon receipt of tooling cost along with set-up and run times.
- Engineering development time will be quoted at $65 per hour, time and a half on Saturdays, and double time on Sundays.
- Price reduction after the first year for the next 2 years will be 3%, 3%.

# EXHIBIT E

# ANCON
# PROTOTYPE/MACHINE

<div style="border:1px solid">

### PROPOSAL TO
### MANUFACTURE

### INNER AND OUTER RACES
### USING THE XG690 EX-CELL-O
### MACHINING CENTER

</div>

*"Servicing Your Prototype Machining Needs"*

# CONTENTS

Assessment of Needs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
Available Facilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
Ancon Prototype Machine . . . . . . . . . . . . . . . . . . . . . . . . . .    2
Universal Tool . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
Universal Inspection  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
Training  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
Proposed Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
Summary  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3
Ancon QS 9000 Certificate  . . . . . . . . . . . . . . . . . . . . . . . .    4
Universal Tool QS 9000 Certificate . . . . . . . . . . . . . . . . . .    5
Universal Inspection A2LA Certificate  . . . . . . . . . . . . . . . .    6
Ancon Equipment List . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7
Universal Tool Equipment List . . . . . . . . . . . . . . . . . . . . . . .    8
Universal Inspection Equipment List . . . . . . . . . . . . . . . . . .    9
Universal Tool Plant Layout  . . . . . . . . . . . . . . . . . . . . . . . .    10
Universal Inspection Plant Layout . . . . . . . . . . . . . . . . . . . .    11



## PROTOTYPE / MACHINE

(A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

**TO:**       Al Fisher
              Bill Lemmer
              Jim Sundeck

**DATE:**     8-20-99

**RE:**       Proposed plan to manufacture prototype C/V Joints using the
              Excello XG 690 Machining Center.

Ancon Prototype & Machine would like to thank the Delphi Prototype Purchasing
Department for the opportunity to quote on this program. We feel that we have a plan
that will work well for your requirements.

### Assessment of Needs

- To find a dedicated supplier to purchase an Excello Machining Center for the
  manufacture of prototype C/V Joint components for Delphi.
- Improving quality of C/V Joint components.
- Improving delivery of C/V Joint components.
- A Zeiss Prismo Vast CMM must be located near the Excello Machining Center.
- Three operators should be trained on the proper use of the equipment.
- Close proximity to Delphi Engineering is an important factor.
- C/V Joint components can be manufactured for Delphi Saginaw only and not for
  Delphi competitors.
- The operation shall have the ability to be blocked off from sight within the suppliers
  operation.
- No competitors or their suppliers shall be allowed to view this operation.
- The supplier shall maintain final responsibility for GP-11 inspection.

### Available Facilities

Based on the needs listed above, we have set forth the following plan which will utilize
Ancon Prototype, Universal Tool, and Universal Inspection. These three facilities are
divisions of H.E. Services. Each division has an excellent track record in both quality
and delivery. Ancon and Universal Tool have been awarded QS 9000 Certification.
Universal Inspection is an A2LA accredited laboratory. Certificates showing these
achievements are included with this proposal. Each of these three divisions are within a

1

five minute drive from Delphi Engineering and Prototype allowing for excellent customer/supplier relations. The following is a brief description of each location:

### Ancon Prototype & Machine

Ancon has been making quality prototype components for Delphi Saginaw for over 18 years. Ancon's highly skilled machinists and programmers utilize the latest technology in CNC machining and programming. An equipment list is included which shows the wide variety of equipment available including a Zeiss CMM to verify the quality of prototype parts. Ancon is the leader in quality and delivery for prototypes.

### Universal Tool

Universal Tool is a facility specializing in fixture and detail work. Universal Tool is an extension of Ancon with its excellent track record of quality and on time delivery. Their equipment list will show a variety of machines, most of which are manual. Universal Tool has a 1000 square foot section in the back of the building which will make a perfect site for the Excello Machining Center. There is a sliding door that allows that area to be segregated from the rest of the facility.

### Universal Inspection

Universal Inspection is a state-of-the art inspection laboratory. Their equipment list includes a Zeiss Prismo Vast CMM which is needed for the proper inspection of Inner and Outer Races. Universal Inspection is located next door to Universal Tool which addresses the need of having the Excello Machine in close proximity to the Zeiss Prismo Vast CMM. Universal Tool's highly skilled programmers and operators have experience in the programming and inspection of Inner and Outer Races for Delphi Engineering.

### Training

Ancon and Universal Tool have the most highly skilled Tool Makers and machinists in the area. We will have three of our top journeyman toolmakers trained in the operation and set-up of the Excello Machining Center.

### Proposed Plan

1. Incoming material will be received at Ancon according to QS 9000 procedures.
2. Parts will be machined at Ancon on all operations required previous to the Excello operations and verified for accuracy on the Zeiss CMM.
3. Parts requiring spline rolling will be sent to Cold Forming Tech or another Delphi approved source. Ancon will inspect outsourced machining.
4. Parts will be sent to Universal Tool for ball groove machining on the Excello Machine prior to heat treat.
5. Inspection will be done in process on the Prismo Vast CMM at Universal Inspection to be sure the parts will have the proper amount of material left for finish machining after heat treat and verification of previous operations.
6. Parts will be sent to Delphi for heat treat or another Delphi approved source. Heat Treat certification will be verified.
7. Parts will be O.D. or I.D. ground if necessary at Ancon or Universal Tool. Parts will be checked for accuracy on the Zeiss CMM.

8.  Ball Grooves will be finish machined at Universal Tool on the Excello Machine and inspection will be done in process at Universal Inspection on the Zeiss Prismo Vast CMM, according to Delphi requirements.

9.  All inspection data will be gathered and GP-11 paperwork will be finalized after thorough review to be sure all dimensions meet print specifications.

10. Warrant and all necessary documentation will be organized and completed prior final shipment.

11. Parts will be packaged and shipped according to Delphi requirements.

## Summary

Ancon/H.E. Services has the resources necessary to meet and exceed the requirements of this program. Our commitment to customer satisfaction is second to none. We understand the importance of this program and the impact it will have on the half shaft business for Delphi. We have an excellent quality system in place at all three proposed locations and all are within minutes of Delphi Engineering and Prototype. Our Universal Inspection facility has a Zeiss Prismo Vast CMM which is a requirement for this program. The Excello Machining Center will have its own dedicated area that can be closed off from the rest of Universal Tool simply by pulling a sliding door shut. This area is also large enough to add three more Excello Machines if future business demands more volume. Please review the Quality Certificates, plant layouts, and equipment lists included in this proposal. We will work to the best of our ability to meet any target prices that are put forward that will allow us to be awarded this business. Thank you for your consideration.

Sincerely,

Darrin Krogman

Darrin Krogman
Operations Manager

# REGISTRATION

## Perry Johnson Registrars, Inc., has assessed the Quality System of:

**Ancon Prototype and Machine**
*Division of H.E. Services*
*1755 Wicco Road*
*Saginaw, MI 48601*

(hereinafter called the Supplier) and hereby declares that Supplier is in compliance with:

**ISO 9002:1994 and QS-9000:1995**

This Registration is in respect to the following scope of supply:

*Prototype precision machining, edm, molds, small stampings and small production manufacturing*

*(Supplier has been audited in accordance with the requirements of the QS-9000, Appendix B "Code of Practice")*

Such products shall be manufactured by the Supplier at, or such processes or services shall be offered at or from, only the address given above. This Registration is granted subject to the system rules governing the Registration referred to above, and the Supplier hereby covenants with the Assessment body duly to observe and comply with the said rules.

For PJR



**PERRY JOHNSON REGISTRARS, INC.**
26555 Evergreen, Suite 1340
Southfield, MI 48076
(248) 358-3388

**Issue date:**    May 22, 1998

**Expiration Date:**    May 21, 2001







PERRY JOHNSON
REGISTRARS, INC.

Cert. No.    98-177

Accredited by the
RvA Dutch Council
for Accreditation

ACCREDITED
ANSI·RAB    QMS

4



# PERRY JOHNSON REGISTRARS, INC.

## *Certificate of Registration*

*Perry Johnson Registrars, Inc., Has assessed the Quality System of:*

### Universal Tool & Manufacturing
### 3860 East Washington
### Saginaw, MI 48601

*(Hereinafter called the Organization) and hereby declares that Organization is in conformance with:*

### ISO 9002:1994 and QS-9000:1995

*This Registration is in respect to the following scope of supply*

### Production, Manufacturing, Assembly, Prototype, Fixtures and Tooling Activities Serving the Automotive Industry Including Aftermarket and Service Parts
**(Supplier has been audited in accordance with the requirements of the QS-9000, Appendix B "Code of Practice")**

*Such products shall be manufactured by the Organization at, or such processes or services shall be offered at or from, only the address given above. This Registration is granted subject to the system rules governing the Registration referred to above, and the Organization hereby covenants with the Assessment body duty to observe and comply with the said rules.*

For PJR:

Terry Boboige, President

Perry Johnson Registrars, Inc. (PJR)
26555 Evergreen, Suite 1340
Southfield, Michigan 48076
(248) 358-3388





Accredited by the
RvA, Dutch Council
for Accreditation



PERRY JOHNSON
REGISTRARS, INC.

*The validity of this certificate is mandated through ongoing surveillance.*

| *Issue Date:* | *Expiration Date:* | *Certificate No.:* |
|---|---|---|
| February 18, 1999 | February 17, 2002 | 99-039 |



**THE AMERICAN
ASSOCIATION
FOR LABORATORY
ACCREDITATION**

# ACCREDITED LABORATORY

A2LA has accredited

# UNIVERSAL INSPECTION
**Saginaw, MI**

## for technical competence in the field of

## Calibration

The accreditation covers the specific calibrations listed on the agreed scope of accreditation. This laboratory meets the requirements of ISO/IEC Guide 25-1990 "General Requirements for the Competence of Calibration and Testing Laboratories" (equivalent to relevant requirements of the ISO 9000 series of standards), ANSI/NCSL Z540-1-1994, and any additional program requirements in the identified field of calibration.

Presented this 19th day of March, 1999.



_Peter Alnger_
President
For the Accreditation Council
Certificate Number 1332.01
Valid to 05/31/2001

For the calibrations to which this accreditation applies, please refer to the
laboratory's Calibration Scope of Accreditation

6

**PROTOTYPE / MACHINE** (A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

## EQUIPMENT LIST

| | |
|---|---|
| 1 | CNC MILL, HAAS VF-1 W/20 HEAD TOOL CHANGER (16" X 20" TRAVEL) |
| 1 | CNC MILL, HAAS VF-3 W/20 HEAD TOOL CHANGER (40" X 20" TRAVEL) |
| 1 | CNC MILL, HAAS VF-4 W/20 HEAD TOOL CHANGER (50" X 20" TRAVEL) |
| 3 | CNC MILL, MAZAK VTC-16B W/24 HEAD TOOL CHANGER (44" X 16" TRAVEL) |
| 3 | CNC MILLS, SUPERMAX YCM 40 |
| 1 | CNC MILL, MAZAK 20/40B W/ 30 HEAD TOOL CHANGER (36" X 24" TRAVEL) |
| 12 | BRIDGEPORT MILLS, ALL FITTED WITH X & Y READOUTS |
| 5 | PROTO-TRAK BRIDGEPORT RETRO FITS WITH CNC X & Y AXIS |
| 1 | CNC WIRE EDM, JAPAK LDM 20A |
| 1 | CNC WIRE EDM, FANUC ROBOCUT |
| 1 | KING SPARK EDM PLUNGE WITH 2 AXIS CNC ORBITAL HEAD |
| 4 | CNC LATHE, MAZAK 15 N WITH 8 TOOL TURRET HEAD |
| 2 | MASTERCAM CNC PROGRAMMING STATIONS, LEVEL 3 |
| 1 | MASTERCAM CNC PROGRAMMING STATION, LEVEL 2 |
| 1 | MASTERCAM CNC WIRE EDM PROGRAMMING STATION |
| 2 | LATHES, CLAUSING COLCHESTER (1) 17" & (1) 15" |
| 4 | PRESSES, (2) 150 TON DAKE, (2) 75 TON DAKE |
| 3 | PRESSES, 25 TON K.R. WILSON |
| 3 | HYDRAULIC, AUTOMATIC PRESSES |
| 1 | GRINDER, 6" I.D./O.D., MYFORD |
| 1 | SURFACE GRINDER, 6" X 18", HARIG |
| 1 | SURFACE GRINDER, 24" X 36", KINKINDA |
| 1 | SURFACE GRINDER, 6" X 18", KENT |
| 1 | BRIDGEPORT #30 2 HEAD, TRACER DUPLICATOR |
| 2 | HORIZONTAL BANDSAW |
| 3 | VERTICAL BANDSAW |
| 1 | POWER SHEAR, 10 GAGE (.135), NATIONAL |
| 1 | CMM ZEISS (36 X 48) ZEISS ECLIPSE DCC CMM W/ZEISS ST PROBE HEAD |
| 1 | DELTRONIC OPTICAL COMPARATOR |
| 1 | BROWN & SHARP MICRO-HITE HEIGHT GAGE |
| 1 | MITUTOYO SURFACE TESTER |
| 1 | SATO HARNESS TESTER |
| 1 | O.B.I., 35 TON, BUSS PRESS |
| 2 | VIBRATORY TUMBLER, 40 GALLON & 30 GALLON, GIANT MFG. |
| 1 | HYDRAULIC IRONWORKER, JAWS 4, EDWARDS |
| 1 | DRY BLAST, 36" X 24", TRINCO |
| 1 | POWER HONE, MODEL J, SUPERIOR HONE |
| 1 | VACUUM PUMP W/ CHAMBER, 1/2 H.P., GAST INC. |
| 1 | DIASCO CYLINDER LINE BENDER |

7



**Division of H.E. Services** 3860 E. Washington Road, Saginaw, Michigan 48601

BUS. (517) 753-6221    FAX (517) 753-6472

### MACHINE TOOL INVENTORY

| | |
|---|---|
| 2 | PROTOTRACK CNC VERTICAL MILLS |
| 9 | VERTICAL MILLS, ALL FITTED WITH DRO ON X & Y AXIS |
| 1 | CNC MILLS, SUPERMAX YCM 40/ WITH ANILAM CONTROL |
| 2 | LATHE, JET WITH SONY DRO ON X & Y AXIS, 14" SWING X 40" BED |
| 1 | ID/OD GRINDER, CINCINNATI, 14" SWING X 36" BED |
| 1 | SURFACE GRINDER, ABRASIVE MACHINE TOOL, 6" X 16" |
| 1 | HYDRAULIC PRESS, 50 TON |
| 1 | KR WILSON 25 TON PRESS |
| 1 | O.B.I, 35 TON PRESS, NIAGARA M-35 |
| 1 | O.B.I, 32 TON PRESS, U.S. INDUSTRIES |
| 1 | SHEAR, PEXTO (FOOT) 52" X 16 GAGE |
| 1 | CUT-OFF SAW, EMERSON 7" WET CUTTING, HORIZONTAL BANDSAW |
| 1 | BANDSAW, DAKE/JOHNSON VERTIACAL, VARIABLE SPPED W/WELDER |
| 1 | 12 SPEED DRILL PRESS |
| 1 | WIRE WELDER, LINCOLN IDEAL ARC SP 150 |
| 1 | TIG WELDER, MILLER SYNCROWAVE 250 |
| 1 | SAND BLASTER, TRINCO |
| 1 | SPOT WELDER, MILLER |
| 1 | AIR COMPRESSOR, DAYTON #52592, 5HP |

8

# UNIVERSAL INSPECTION
### Division Of H.E. Services
### A2LA ACCREDITED LABORATORY ISO/IEC-GUIDE 25

Universal Inspection Division specializes in providing total coverage for all our customers' inspection needs. This third party inspection facility is equipped with the very latest and highest quality measurement equipment as well as highly qualified personnel to provide "world class service". Services such as Zeiss CMM inspection, gage calibration and certification, gage R & R studies, general part inspection, layout work, production sorting and rework including level II containment services, hardness and surface finish inspection, and optical comparison studies are available. Our temperature and humidity monitored laboratory enables us to measure to an accuracy range of .000005 of an inch (.000127mm).

The latest addition to our inspection facility is a state-of-the-art Zeiss Prismo Vast CMM machine. This machine is recognized as the current world standard and provides continuous probe contact scanning ability with reverse engineering capabilities. This ultra-precise system will bring any company to that "next level" of inspection accuracy.

Also, we can support your company in providing commodity calibration management and sample approval inspection data including PPAP and GP-11 requirements thus meeting all QS-9000 standards.




## List of measuring instruments and capabilities:

◆ Zeiss Prismo Vast CMM X-900mm, Y-1500mm, Z-650mm (Accuracy +/- .0017mm)
◆ Zeiss Eclipse CMM X-715mm, Y-1016mm, Z-510mm (Accuracy +/- .0025mm)
◆ Zeiss Eclipse CMM X-711mm, Y-1016mm, Z-600mm (Accuracy +/- .002mm)
◆ Mitutoyo M-801 Mu Checker (Accuracy +/- .000127mm)
◆ Mitutoyo Ceramic Master Gage Block Set (Accuracy +/- 5 micro inches)
◆ (2) Brown & Sharp Micro Height Gages (Accuracy +/- .005mm)
◆ Starrett/Sigma Optical Comparator (Accuracy +/- .005mm)
◆ Deltronic Controlled Optical Comparator (Accuracy +/- .005mm)
◆ Mitutoyo Surf Tester-Print Out Readings (Ra, Rq, Rz, Rmax, Rp, Rt, Pc, Tp)
◆ Taylor Hobson Surtronic 3+ Surface Measurement Tester (all surface texture parameters)
◆ Mitutoyo Digital Hardness Tester (full range of hardness checking on carbide, ceramic, steel, non-ferrous metal, plastic, grinding stones)
◆ Sato Hardness Tester (Rockwell Hardness HrA, HrB, HrC)
◆ (7) Grade AA Granite Surface Plates

July 12,1999

 **UNIVERSAL INSPECTION DIVISION**
3870 E. WASHINGTON, SAGINAW, MI 48601 • TELEPHONE (517) 758-0950 • FAX (517) 758-0954 • http://www.heservices.com
CONTACT PERSON: LEE LAMBERT



H.E. SERVICES
TECH CENTER
SAGINAW, MI
48601

H.E. QUALITY
ENGINEERING LAB
S. REZMER    NO SCALE    05MAR98

UNIVERSAL INSPECTION

UNIVERSAL INSPECTION
3970 E. WASHINGTON
SAGINAW, MI 48601

SHIPPING & RECEIVING DOCK

N
W    E
S

11

HANDICAPPED
PARKING

CUSTOMER
PARKING

CUSTOMER
PARKING

BATHROOM

BATHROOM

RECEPTIONIST
OFFICE

DOCUMENT
CONTROL
CENTER

SINK
AREA

MANAGER
OFFICE

STORAGE CABINETS

LAYOUT
PLATE

ZEISS
CMM

LAYOUT
PLATE

MITUTOYO
CMM

CONFERENCE
ROOM

OPTICAL
COMPARATOR

HARDNESS
TESTER

SURFACE
TESTER

CONTROL PART
TEMPATURE
TABLE

REJECT
AREA

SORT
TABLES

INCOMING
PARTS

CONTAINMENT
AREA

SORT
TABLES

HOLD
AREA

SHIPPING
PARTS

LUNCH
ROOM

OVERHEAD
DOOR

SHIPPING & RECEIVING DOCK

BREEZE WAY

AIR COMPRESSOR

EXHIBIT F

Date:  31JAN01

Subject:   Ancon's order to purchase an Excello machine to manufacture
all prototype inner and outer races for halfshafts.

To:       Duane Bollinger

From:     Bruce Waslusky


Attached is a copy of a letter to Excello from Joe Stearns at Ancon (HE
Services).

He seemed very concerned that you have a copy of this although I fail to
see the significance.  I promised I would forward a copy and it is attached.

Ancon's purchase of this equipment is between them and Excello and
other than our obvious concerns that the equipment be capable, the
commercial issues between the two companies is really none of our affair.
That attitude is what has been conveyed to Joe and Ancon.

**HES** ENGINEERING / TESTING

MANUFACTURING

H.E. SERVICES • 225 E. MORLEY DR. • SAGINAW, MI 48601 • (517) 753-9015 • FAX (517) 753-7703

January 23, 2001

Mr. U. Stuhlmuller, Sales Manager
Ex-Cell-O Corporation
Werkzeugmaschinen
Sondermaschinen

Dear Mr. Stuhlmuller,

As you are well aware, Ex-Cell-O grinding machine XG 690 (ref. P.O. 53510057) was quoted to be delivered to H.E. Services, in Saginaw, Michigan by Sept. 15, 2000.

As of this date, this machine is still at your factory and, in fact, is not capable of producing a part to specification. It is imperative that you make the necessary corrections to this machine as soon as possible so that it will function properly. If this requires the use of a different controller, then you must propose this as a solution immediately.

H.E. Services has incurred substantial costs as a direct result of your failure to deliver the machine on schedule. To date, the four-month delay has created the following losses, in US funds, to H.E. Services:

- Lost business-----------------------------------------------------------------$80,010
- Trips to Germany for training and machine runoff (wasted trips)-------$18,500
- Financial commitments to bank---------------------------------------- $66,110
- Employee labor costs-------------------------------------------------------$43,200
                                                        Losses to date:    $207,820

Obviously, continued delays in delivering this machine, to specification, will increase the losses incurred to H.E. Services. The losses shall be deducted from the purchase price as follow:    $621,696- $207,820 = $413,876

Also, it will be your responsibility to train our personnel in the proper operation and programming of this machine once it arrives in Saginaw, Michigan. As you know, a significant amount of time has passed and the actual training received by our people while in Germany was very minimal as the machine would not function at that time.

Please respond in writing as to the plan for Ex-Cell-O to address the above issues and the timing for approval run-off, shipping and receipt at our plant in Saginaw, Michigan.

Sincerely,

*Joseph A. Stearns*

Joseph A. Stearns
VP engineering and Manufacturing

Cc: Robert Backie, CEO
    Timothy Fortier, President

EXHIBIT G

Wednesday, February 28, 2001

## MINUTES OF CONFERENCE CALL WITH EXCELLO

**PRESENT AT THE CALL MEETING:**
Tom Arnold, Mark Martin
Lee Lambert, Barry Torrey
G. Kieffer, Excello, Germany)

1- Fanuc has added acceleration/de-acceleration interpolation to the controller, making it equal
to the Seimens controller. This will be proven in grinding 23 size inboards this week.
Summarizing inspection data will be Friday or Monday (Feb 5). The purpose of the next call
will be to decide which controller will be on the machine.

2- Tom expressed concern about running out of expensive prototype parts in processing
verification runs. Excello was asked to determine the inventory of 23 size inboards and call
Loren with the number.

3- Lee expressed a concern about the time delay while doing R & D on the controller. He
requested a timeline from Excello for shipping machine.

4- Lee will get a call from Kieffer of Excello, Friday, March 2 if the have grinding results are
available.

5- Tom reminded Excello there has already been a 15 week delay and Delphi has had to process
many parts alternative and expensive ways.

**NEXT PHONE MEETING; MONDAY, MARCH 5, AT 9:00**

*Loren Kramer*

Loren Kramer
Supplier Development

CC
Jerry Eaton, Bill Lemmer, David McGregor, Bruce Waslusky, Joe Stearns – Ancon

# EXHIBIT H

March 5, 2001

# MINUTES OF CONFERENCE CALL WITH EXCELLO

**PRESENT AT THE CALL MEETING:**
Tom Arnold, Mark Martin, Joe Zielinski, Dino Tsoukleris
Lee Lambert, Barry Torrey
G. Kieffer, Excello, Germany)

1- Excello is convinced the Fanuc controller is equivalent to the Seimens controller but still did not offer a timeline as was requested for this special meeting. They faxed inspection detail for 1 inner race, 23 size, that has 4 micron surface finish results.

2- Excello has 17 inner races left of 23 size and want to have Lee Lambert in Germany to provide quick decisions of parts coming of the machine before they run any more. They offered to pay for flight and motel to facilitate this activity.

3- Excello Manager (name unknown ) reports activity on machine now is to optimize machine to controller, an activity that should have happened 3 months ago and that would also need to happen if the Seimens controller is substituted. This will take 2-4 weeks.

4- (Manager) Excello has never been asked to grind the form the Delphi design requires. They may need to have some compromising design decisions during the optimization.

5- It was agreed to reconvene tomorrow with travel decisions.


**NEXT PHONE MEETING; TUESDAY, MARCH 6, AT 9:00**

*Loren Kramer*
Loren Kramer
Supplier Development

CC
Jerry Eaton, Bill Lemmer, David McGregor, Bruce Waslusky, Joe Stearns – Ancon

# EXHIBIT I

NOV 03 '99 12:55    PAGE.03

# DELPHI AUTOMOTIVE SYSTEMS
## Purchase Request
Shaded areas are required fields

| SB PO / REL No. | S3B | 00028 / 001 / 007 |
| M80 / BL PO No. | | |
| PO#/ Alt. | | Req. No. PR233556 |

**Supplier** ANCON TOOL & DIE INC

| Duns No. 608814059 | Date 10/29/1999 | APA Rec'd | | Require 10/01/2000 |
| Ship To PO  3PI | | | Promise |
| **Address** 1755 WICCO RD | Fax No. | Rec.Notify  Jay Mikolazik | Mail/Pit | Fax | Effective 10/01/2000 |
| SAGINAW  MI  48601 | Phone (517) 757-4841 | | Expires 10/01/2003 |
| **Contact:** BARRY | Phone No. (517) 755-0328 | Deliver To | | |
| **Tax Code:** 4A | WO Type: OTHER  Number: K9SE00411 | | 99 | 14 | 1 | Item ID/Description |

| Qty | U/M | Est Cost | Actual Cost | GC | GL | Dept | Sub Acct | Comp | Loc | Prod | |
| 0 | EA | | $0.00 | 2 | 4 | 5 | 5 | 3 | 3 | 4 | NPN = 000    INNER RACE, OUTER RACE |

ANCON AGREES NOT TO USE EXCELLO MACHINE OR TOOLING FOR ANY OF DELPHI'S COMPETITORS.SUPPLIER WILL HAVE A SECURED AREA FOR EXCELLO MACHINE AND
FOR MACHINE.WILL BE EVALUATED EVERY 1/4 ON VOLUME STARTING 3 MONTHS AFTER MACHINE IS PLACE AT UNIVERSAL TOOL AND RUN OFF IS SUCCESSFUL.PAYMENT
FOR MACHINE IS INCLUDED IN PART PC. PRICE.  PRICE BASED ON A QUANTITY OF 7,000 PCS ANNUALLY.  THIS PRICE WILL GO UP OR DOWN BASED ON ACTUAL VOLUME
EVER 1/4 TO INSURE PAYMENT OF MACHINE.  REFER TO ANCON'S QUOTE DATED 10/12/1999. APPROVED AT SOURCING ON 10/18/1999. SOURCING DECISION ATTACHED.

| Total Actual Cost | $0.00 | |

| | Where Used / Remarks    EXCELLO MACHINE | Quote No. | Clauses |
| **Total Est. Cost** | * Complete GP-11 Submission REQUIRED | | |
| Must Be Complete: Is a Substitute Material or Supplier Acceptable | | | Buyer |
| Yes ☑  No | ANCON IS BLANKET HOLDER FOR EXCELLO MACHINE | | Purchasing Manager |
| ☐ Must Provide Justification | | | Date |
| Invoice / Packing Slip | | | Shipper |
| Service Approved / Completed | | | FOB  Shipping Point |
| APA Rec'd Services | | | Pay Terms NET 25th |
| **Originator** SINIFF, DAVID | Phone (517)757-3543 | Haz'd Mat'l Appr. | Acct. Appr. | Date Approval | Date Approval | Date |
| 03-99-01 | | | | | | |

Refer to Signature page included

**ENTERED NOV 0 3 1999**

ORIGINAL - DELPHI

DAS 2207 0199

DELPHI CONFIDENTIAL

# DELPHI SOURCE RECOMMENDATION FORM
## INDIRECT/MACHINERY and EQUIPMENT

DPR # C9600068

MEETING DATE: 10/18/99-Monday

| M & E | |
|---|---|
| INDIRECT | x |

**DIVISION/LOCATION:** Delphi Steering Systems/Prototype Headquarters

**DESCRIPTION:** INNER & OUTER RACE PROTOYPE BLANKET (BUILD TO PRINT)

**CREATIVITY TEAM NAME:**

**PROGRAM:** Halifsat/various

**MODEL YEAR:**

**APP. REQUEST #:** 0

**COSTBOOK $:** $2,968,369

**TARGET PRICE($):** $2,551,500

**BUYER:** Allen Fisher

**FINANCIAL:** 0

LINKED / LEVERAGED:

DELIVERY DATE: 01-Oct-00

A/R $ : $0

PHONE: 8-357-3072

PHONE: 0

(DPR RELEASED NOV 0 3 1999)

| MS (*) | SUPPLIER | LOCATION | QUOTED PRICE $ | NEGOTIATED PRICE $ | BUYER SAVINGS $ | REDUCTION AGAINST AR/CB % |
|---|---|---|---|---|---|---|
| | ANCON PROTOTYPE | SAGINAW, MI. | $3,144,255 | $2,662,359 | $481,896 | $306,010 | 10.31% |

**COMMENTS:** 3 year contract effective 10/01/2000/ Supplier req'd to purchase machine from Excello
Ancon's price reduction for 2nd & 3rd year: 3%, 3%

**STATE COSTBOOK BY YEAR:**

**SAVINGS AGAINST AR/CB:**

| | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|
| STATE COSTBOOK BY YEAR: | | $164,909 | $989,456 | $989,456 | $824,547 |
| SAVINGS AGAINST AR/CB: | | $17,001 | $102,003 | $102,003 | $85,003 |

**APPROVAL SIGNATURES:**

| BUYER | REQUISITIONER | DIVISIONAL MANAGER |
|---|---|---|

| COMMODITY MANAGER | DIVISIONAL/REGIONAL DIRECTOR | COMMODITY DIRECTOR | VICE PRESIDENT |
|---|---|---|---|

Rev 5/3/99

NOV 03 '99 13:57

PAGE.01

NOV 03 '99 13:58

PAGE.02

DELPHI CONFIDENTIAL

# DELPHI SOURCE RECOMMENDATION FORM
## INDIRECT/MACHINERY and EQUIPMENT

Dick Ross

| | | | | |
|---|---|---|---|---|
| **DPR #** C9600068 | | | **M & E** | |
| **MEETING DATE:** 10/18/99-Monday | | **INDIRECT** | x |

**DIVISION/LOCATION:** Delphi Steering Systems/Prototype Headquarters

**DESCRIPTION:** INNER & OUTER RACE PROTOTYPE BLANKET (BUILD TO PRINT)

**CREATIVITY TEAM NAME:**
  **PROGRAM:** Halfshaft/various
  **MODEL YEAR:**

**LINKED / LEVERAGED:** _____

**DELIVERY DATE:** 01-Oct-00          **(DPR #)**

| **APP. REQUEST #:** 0 | | A/R $ | $0 |
|---|---|---|---|
| **COSTBOOK $:** $2,968,369 | | | |
| **TARGET PRICE(S):** $2,551,500 | **PHONE:** 8-357-3072 | | |
| **BUYER:** Allen Fisher | **PHONE:** 0 | | |
| **FINANCIAL:** 0 | | | |

| MS (*) | SUPPLIER | LOCATION | QUOTED PRICE $ | NEGOTIATED PRICE $ | BUYER SAVINGS $ | REDUCTION AGAINST AR/CB | % |
|---|---|---|---|---|---|---|---|
| | ANCON PROTOTYPE | SAGINAW, MI. | $3,144,255 | $2,662,359 | $481,896 | $306,010 | 10.31% |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**COMMENTS:** 3 year contract effective 10/01/2000/ Supplier req'd to purchase machine from Excello
Ancon's price reduction for 2nd & 3rd year. 3%, 3%

| | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|
| **STATE COSTBOOK BY YEAR:** | | $164,909 | $989,456 | $989,456 | $824,547 |
| **SAVINGS AGAINST AR/CB:** | | $17,001 | $102,003 | $102,003 | $85,003 |

**APPROVAL SIGNATURES:**

| | BUYER | REQUISITIONER | COMMODITY DIRECTOR | DIVISIONAL MANAGER |
|---|---|---|---|---|
| **COMMODITY MANAGER** | **DIVISIONAL/REGIONAL DIRECTOR** | Oct 18 99 | | |

VICE PRESIDENT   C. Campbell   10/2/99

Rev 5/3/99

# DELPHI AUTOMOTIVE SYSTEMS
## Purchase Request
Bold areas are required fields

| | |
|---|---|
| Service | SB PO / REL No. S3B00028/003 |
| Cap/Const. | Page ____ of ____ |
| MBO / IBL PO No. | Req. No. 346553 |
| Other | 233556 |
| PO#/Alt. | |
| Duns No. 6088/4059 | Date 5/6/02    APA Rec'd |
| Fax No. | Ship to Dock        Required |
| | Rec/Notify        Promised |
| | Phone        Mail/Plt.    Fax    Effective |
| | Expires |

Supplier: ANSON

Address: ____

Contact: Barry    Phone No. ____

Tax Code 4A    WO Type    Number

Deliver To: ____

| Qty | U/M | Est. Cost | Actual Cost | G/C 2 | G/L 4 | Dept 5 | Sub Acct 5 | Corp. 3 | Loc. 3 | Prod. 4 | Item ID / Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | (ALL) | | | | | | | CANCEL BLANKET PO, IT HAS BEEN REISSUED AS S3B00059.001 |

Where Used / Remarks: EXCELLO

ENTERED MAY 0 3 2002

Total
Est. Cost

Must be Complete: Is a Substitute Material or Supplier Acceptable

Yes ____

No ____    Must Provide Justification

| | | |
|---|---|---|
| Invoice / Packing Slip | | Quote No. |
| Service Approved / Completed | | |
| APA Rec'd Services | | Clauses |

| Originator | Phone | Haz'd Mat'l Appr. | Acct. Appr. | Date | Approval |
|---|---|---|---|---|---|
| Jill Sanborn | 7-3404 | | M Kaluzny 5-6-02 | | |

| Buyer | Date | Purchasing Manager | Date |
|---|---|---|---|
| J. Sanborn 5/6/02 | 5.6 | | |

| | |
|---|---|
| Shipper | |
| FOB | |
| Pay Terms | |
| Date | Approval    Date |

# EXHIBIT J


Saginaw Steering Systems

December 13, 2001

## MINUTES 0F MEETING ON EX-CELL-O

**PRESENT AT THE MEETING:**
**Delphi:** Tom Arnold, Mark Martin, Brian Kohler, Jim Lu, Steve Thomas, Todd Norris
**H.E.S.:** Joe Stearns, Lee Lambert, Phil Howey

1- The Ex-Cell-O machine arrived at H.E.S. this a.m.
2- To take advantage of the technical personnel from Ex-Cell-O in January-February, this meeting was to determine what jobs are to be processed first.
The 33 tooth, FTH design is first. Inspection data for this is already loaded in the Ziess. The need for collets and chucks will be determined and also if there is an existing blank for the outer race.
The 2nd and 3rd jobs are to be; 14 size NBC and 28 tooth FTH. Again, the need for collets and chucks, and availability of blanks will be determined. John Gauruder will be required to load inspection programs on the Ziess.

### NEXT PHONE MEETING; THURSDAY, DECEMBER 20 @ 9:30

*Loren Kramer*
Loren Kramer
Supplier Development

CC
Jerry Eaton, Bill Lemmer, David McGregor, Bill Skvarla, Bruce Waslusky

# EXHIBIT K

**HES** ENGINEERING / TESTING
MANUFACTURING

H.E. SERVICES • 225 E. MORLEY DR. • SAGINAW, MI 48601 • (517) 753-9015 • FAX (517) 753-7703

*Bruce,*
*• FOR YOUR INFORMATION.*
*• PLS DO NOT DIST. THIS LETTER*
*• MACHINE CYCLE TIMES*
*WERE GIVEN BY EX-CELL-O*
*TO DELPHI AND THEN BY*
*DELPHI TO ANCON TO*
*DEVELOP OUR FINAL*
*PART COSTS TO YOU.*
*SLOWER CYCLE TIMES*
*WILL AFFECT FINAL*
*COST OF PARTS*
*WE PRODUCE.*
*TIME WILL*
*TELL!*
*REGARDS*
*JOE*

March 14, 2001

Mr. Gerhard Eberle, CEO
Ex-Cell-O Corporation
Werkzeugmachinen
Sondermaschinen

Dear Mr. Eberle,

As I am sure you are aware, Ex-Cell-O Corporation still has not delivered the grinding machine XG 690 (P.O. 53510037) to H. E. Services in Saginaw, Michigan. The original promised delivery date was Sept. 15, 2000.

Your Company also has not responded in writing to our letter on this subject dated January 23, 2001. This letter requested your plan in writing to address the remaining issues and a new time-line schedule. Once again I am requesting a response from you in writing by no later than March 27, 2001.

I wish to clarify one issue. Machine cycle times were furnished by Ex-Cell-O as part of quotation No. 310.096.4.012 (copy attached). These cycle times were used in good faith to establish finished part cost figures. Therefore, cycle time verification must be included as part of the final run-off approval process.

What is your current position on the controller and what is your level of confidence that it will produce a "to specification" part every time?

I must reiterate that all of the requirements for machine performance, operator training, and machine run-off still apply and must carefully be reviewed prior to a time-line being finalized. We wait your response.

Sincerely,

*Joseph A. Stearns*

Joseph A. Stearns
VP Engineering and Manufacturing

Attachment:

Cc. Uli Stuhlmuller, Ex-Cell-O
    Robert Backie, CEO
    Timothy Fortier, President

10-AUG-1999  15:48        EX-CELL-O VERKAUF                    +49 7161 805347   S.03

| Delphi Automotive Systems | | | | | EX-CELL-O | | |
| Cycle Times Grinding | | | | | Quotation No. 310.096.4.012 | | |
| Workpart # | Type | Gauge Ball Dia | PCD | Trod/Ø | Feed rate [mm/s] | Feed stroke | Cycle time (Incl. machining load/unload) |
|---|---|---|---|---|---|---|---|
| ZG0B0615 | Outer Bell RF | 14,600 | 48,407 | 14,60 | 9,0 | 31 | 39 |
| ZG0H0617 | Outer Bell RF | 15,875 | 54,280 | 15,875 | 8,7 | 34 | 41 |
| 4500112 | Outer Bell RF | 17,462 | 60,212 | 17,462 | 8,0 | 37 | 45 |
| SX03440 | Outer Bell DO | 19,844 | 57,114 | 19,844 | 7,7 | 77 | 78 |
| SX046875 | Outer Bell DO | 20,638 | 61,538 | 20,638 | 7,0 | 88 | 93 |
| SX043360 | Outer Bell DO | 20,638 | 61,538 | 20,638 | 7,0 | 88 | 93 |
| 26076827 | Outer Bell VL | 17,462 | 53,000 | 17,462 | 8,0 | 44 | 52 |
| SX046443 | Disc VL | 17,462 | 53,012 | 17,462 | 8,0 | 45 | 53 |
| SX046486 | Disc VL | 20,638 | 60,103 | 20,638 | 7,0 | 47 | 60 |
| SX040689 | Outer Bell VL | 22,225 | 64,105 | 22,225 | 5,7 | 38 | 59 |
| 4500115 | Inner Race RF | 17,462 | 95,692 | 17,462 | 8,0 | 57 | 61 |
| SX044901 | Inner Race DO | 20,638 | 62,830 | 20,638 | 7,0 | 39 | 51 |
| 26058593 | Inner Race VL | 17,462 | 53,013 | 17,462 | 8,0 | 39 | 47 |
| SX046447 | Inner Race VL | 17,462 | 53,011 | 17,462 | 8,0 | 36 | 45 |
| SX046490 | Inner Race VL | 20,638 | 60,103 | 20,638 | 7,0 | 42 | 54 |
| SX042709 | Inner Race VL | 22,225 | 64,095 | 22,225 | 5,7 | 46 | 66 |
| | | | | | Page: | 5 of 5 | |
| | | | | | Date: | 03.08.1999 | |
| | | | | | Drawn: | O.Schmitt | |

I:\Prod60\Downdown\310096.0012 Cti excel Werkbstab abT abtracten Grinding

## Delphi Automotive Systems
### Cycle Times Soft milling

**EX-CELL-O**

Quotation No. 310.096.4.012

| Workpart # | Type | Gauge Ball Dia | PCD | ToolØ 1 | Feed rate [mm/s] | Feed stroke 1 | Cycle time (incl. machining load/unload) | ToolØ 2 | Feed rate [mm/s] | Feed stroke 2 | Cycle time (incl. machining load/unload) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 26080615 | Outer Bell RF | 14,600 | 48,407 | 21,0 | 12 | 46 | 43 | 14,3 | 17,8 | 34 | 32 |
| 26080617 | Outer Bell RF | 15,875 | 54,280 | 23,0 | 11 | 49 | 46 | 15,5 | 16,4 | 37 | 33 |
| 4500112 | Outer Bell RF | 17,462 | 60,212 | 25,0 | 10 | 48 | 49 | 17,2 | 14,8 | 40 | 36 |
| SX034440 | Outer Bell DO | 19,844 | 57,114 | 25,0 | 10 | 80 | 67 | 19,6 | 13,0 | 80 | 57 |
| SX046875 | Outer Bell DO | 20,638 | 61,538 | 25,0 | 10 | 91 | 74 | 20,3 | 12,5 | 91 | 64 |
| SX043369 | Outer Bell DO | 20,638 | 61,538 | 25,0 | 10 | 91 | 74 | 20,3 | 12,5 | 91 | 64 |
| 26076827 | Outer Bell VL | 17,462 | 53,000 | 17,2 | 15 | 47 | 66 | | | | |
| SX006443 | Disc VL | 17,462 | 53,012 | 17,2 | 15 | 48 | 67 | | | | |
| SX046486 | Disc VL | 20,638 | 60,103 | 20,3 | 13 | 50 | 76 | | | | |
| SX046689 | Outer Bell VL | 22,225 | 64,105 | 21,9 | 12 | 41 | 71 | | | | |
| 4500115 | Inner Race RF | 17,462 | 55,692 | 25,0 | 10 | 60 | 55 | 17,2 | 14,8 | 60 | 44 |
| 26058593 | Inner Race DO | 20,638 | 62,830 | 25,0 | 10 | 42 | 45 | 20,3 | 12,5 | 42 | 40 |
| SX046447 | Inner Race VL | 17,462 | 53,013 | 17,2 | 15 | 42 | 54 | | | | |
| SX046490 | Inner Race VL | 20,638 | 63,011 | 17,2 | 15 | 39 | 52 | | | | |
| SX046490 | Inner Race VL | 20,638 | 60,103 | 20,3 | 13 | 45 | 63 | | | | |
| SX047209 | Inner Race VL | 22,225 | 64,095 | 21,9 | 12 | 49 | 71 | | | | |

Page:   4 of 5
Date:   03.08.1999
Drawn:  O.Schmitt

Remark: For RF- and DO-parts (2) separate set-ups are necessary (rough and finish milling)!

# EXHIBIT L

**-HES** **ENGINEERING / TESTING**
**MANUFACTURING**

H.E. SERVICES • 225 E. MORLEY DR. • SAGINAW, MI 48601 • (989) 753-9015 • FAX (989) 753-7703

November13, 2001

Delphi Steering Systems
3900 Holland Road
Saginaw, Michigan 48601
Attn: Bruce Waslusky

Subject: Ex-Cell-O Grinding machine

Dear Bruce,

On July 25,2001 there was a meeting at the Prototype Center to discuss the Ex-Cell-O
program and in particular the payment schedule for the machine.

 In that meeting, you made the decision to make a consistent monthly payment instead of
the volume driven variable monthly payment schedule as stated in the P. O. We were in
agreement with this decision. You were provided a loan payment schedule by Tim Fortier
in a letter dated July 31,2001. I have updated this through Nov 2001 and a copy is
attached for your use. The monthly payment amount would now be $20,235.65 for 36
months. The Machine is scheduled to arrive the second week of December of this year
and we would really appreciate it if you could start the first payment in that month.

The part cost was revised and provided to you in a letter from Barry Torrey dated June
19, 2001 and a copy is attached for your reference. This latest pricing should be reflected
in the re-issued P.O. as well as all other conditions of the quote as stated in this letter.

If you have any questions or need additional information please feel free to contact me.

Regards,

Joseph A. Stearns
VP Engineering and Manufacturing

Attachments:

Cc. Robert Backie
    Tim Fortier



**ENGINEERING / TESTING**

**MANUFACTURING**

H E. SERVICES • 5117 S. DORT HWY • FLINT, MI 48507 • (810) 743-4900 • FAX (810) 743-8400

July 31, 2001

Delphi – Saginaw
3900 Holland Road
Saginaw, MI 48601-9494
Attn: Bruce Waslusky

Dear Bruce:

The monthly payment schedule for the Exello is as follows:

| Description | Original Monthly Cost | Interest Income | Present Monthly Cost |
|---|---|---|---|
| Three year term | $20,592.00 | $301.00 | $20,291.00 |

*356.35*   *# 20,235.65*   *11-13-01*

Based on effective start date of October 1, 2001.

The costs include projected costs for payments of principle, interest and associated machine developmental costs minus interest costs while funding was maintained in a liquid account. If you require additional information, you may contact Joe Stearns (989) 753-9015 or me at the above number.

Sincerely Yours,

Timothy E. Fortier
President

Attachment

**H.E. Services**

**Purchase / Debt -- Excello Machine**

### Summary of Net Debt Payments

| | |
|---|---:|
| Total Principal Payments | $622,000.00 |
| Total Interest Expense | $87,598.33 |
| Total Debt Payments | $709,598.33 |
| Less: Interest Income | (12,828.75) |
| Net Debt Service | $696,769.58 |
| Monthly Payments over 36 Months | $19,354.71 |

### Summary of Debt Terms

| | |
|---|---:|
| Closing Date | 11/13/2000 |
| Initial Loan Balance | $622,000.00 |
| Number of Payments | 36 |
| Ending Loan Balance | $0.00 |
| Interest Expense Rate | 9.75% |
| Interest Income Rate | 2.70% |

## H.E. Services

### Purchase / Debt -- Excello Machine

**Summary of Total Debt Payment & Interest Earned**

| Payment Number | Payment Dates | Beginning Loan Balance | Principal | Interest Expense | Ending Loan Balance | Total Payment | Estimated Interest Earned on Saving Balance |
|---|---|---|---|---|---|---|---|
| 1 | 01/01/2001 | $622,000.00 | $17,277.78 | $5,053.75 | $604,722.22 | $22,331.53 | $1,360.63 |
| 2 | 02/01/2001 | 604,722.22 | 17,277.78 | 4,585.81 | 587,444.44 | 21,863.59 | 1,321.75 |
| 3 | 03/01/2001 | 587,444.44 | 17,277.78 | 4,454.79 | 570,166.67 | 21,732.56 | 1,282.88 |
| 4 | 04/01/2001 | 570,166.67 | 17,277.78 | 4,323.76 | 552,888.89 | 21,601.54 | 1,244.00 |
| 5 | 05/01/2001 | 552,888.89 | 17,277.78 | 4,192.74 | 535,611.11 | 21,470.52 | 1,205.13 |
| 6 | 06/01/2001 | 535,611.11 | 17,277.78 | 4,061.72 | 518,333.33 | 21,339.50 | 1,166.25 |
| 7 | 07/01/2001 | 518,333.33 | 17,277.78 | 3,930.69 | 501,055.56 | 21,208.47 | 1,127.38 |
| 8 | 08/01/2001 | 501,055.56 | 17,277.78 | 3,799.67 | 483,777.78 | 21,077.45 | 1,088.50 |
| 9 | 09/01/2001 | 483,777.78 | 17,277.78 | 3,668.65 | 466,500.00 | 20,946.43 | 1,049.63 |
| 10 | 10/01/2001 | 466,500.00 | 17,277.78 | 3,537.63 | 449,222.22 | 20,815.40 | 1,010.75 |
| 11 | 11/01/2001 | 449,222.22 | 17,277.78 | 3,406.60 | 431,944.44 | 20,684.38 | 971.88 |
| 12 | 12/01/2001 | 431,944.44 | 17,277.78 | 3,275.58 | 414,666.67 | 20,553.36 | |
| 13 | 01/01/2002 | 414,666.67 | 17,277.78 | 3,144.56 | 397,388.89 | 20,422.33 | |
| 14 | 02/01/2002 | 397,388.89 | 17,277.78 | 3,013.53 | 380,111.11 | 20,291.31 | |
| 15 | 03/01/2002 | 380,111.11 | 17,277.78 | 2,882.51 | 362,833.33 | 20,160.29 | |
| 16 | 04/01/2002 | 362,833.33 | 17,277.78 | 2,751.49 | 345,555.56 | 20,029.26 | |
| 17 | 05/01/2002 | 345,555.56 | 17,277.78 | 2,620.46 | 328,277.78 | 19,898.24 | |
| 18 | 06/01/2002 | 328,277.78 | 17,277.78 | 2,489.44 | 311,000.00 | 19,767.22 | |
| 19 | 07/01/2002 | 311,000.00 | 17,277.78 | 2,358.42 | 293,722.22 | 19,636.19 | |
| 20 | 08/01/2002 | 293,722.22 | 17,277.78 | 2,227.39 | 276,444.44 | 19,505.17 | |
| 21 | 09/01/2002 | 276,444.44 | 17,277.78 | 2,096.37 | 259,166.67 | 19,374.15 | |
| 22 | 10/01/2002 | 259,166.67 | 17,277.78 | 1,965.35 | 241,888.89 | 19,243.13 | |
| 23 | 11/01/2002 | 241,888.89 | 17,277.78 | 1,834.32 | 224,611.11 | 19,112.10 | |
| 24 | 12/01/2002 | 224,611.11 | 17,277.78 | 1,703.30 | 207,333.33 | 18,981.08 | |
| 25 | 01/01/2003 | 207,333.33 | 17,277.78 | 1,572.28 | 190,055.56 | 18,850.06 | |
| 26 | 02/01/2003 | 190,055.56 | 17,277.78 | 1,441.25 | 172,777.78 | 18,719.03 | |
| 27 | 03/01/2003 | 172,777.78 | 17,277.78 | 1,310.23 | 155,500.00 | 18,588.01 | |
| 28 | 04/01/2003 | 155,500.00 | 17,277.78 | 1,179.21 | 138,222.22 | 18,456.99 | |
| 29 | 05/01/2003 | 138,222.22 | 17,277.78 | 1,048.19 | 120,944.44 | 18,325.96 | |
| 30 | 06/01/2003 | 120,944.44 | 17,277.78 | 917.16 | 103,666.67 | 18,194.94 | |
| 31 | 07/01/2003 | 103,666.67 | 17,277.78 | 786.14 | 86,388.89 | 18,063.92 | |
| 32 | 08/01/2003 | 86,388.89 | 17,277.78 | 655.12 | 69,111.11 | 17,932.89 | |
| 33 | 09/01/2003 | 69,111.11 | 17,277.78 | 524.09 | 51,833.33 | 17,801.87 | |
| 34 | 10/01/2003 | 51,833.33 | 17,277.78 | 393.07 | 34,555.56 | 17,670.85 | |
| 35 | 11/01/2003 | 34,555.56 | 17,277.78 | 262.05 | 17,277.78 | 17,539.82 | |
| 36 | 12/01/2003 | 17,277.78 | 17,277.78 | 131.02 | 0.00 | 17,408.80 | |
| Total Payments & Interest Income | | | $622,000.00 | $87,598.33 | | $709,598.33 | $12,828.75 |



## → PROTOTYPE / MACHINE

(A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

TO:      Bruce Waslusky
FROM:    Barry Torrey
DATE:    June 19, 2001
RE:      Delphi's RFQ. No. S30000009, Inner & Outer Race (RE-QUOTE)

We are pleased to submit the following re-quote. Upon further evaluation over the last six months of dealing with ExCello and the trip that was made to Excello, we are submitting this re-quotation. Once the machine is on our floor and in operation, we will strive to reduce the costs through improved cycle times and efficiency.

### Inner and Outer Races made from bar stock:

| Part Cost | Excello Machine Cost | Total Cost |
|---|---|---|
| $119.25 | $35.30 | $154.55 |

### Inner and Outer Races made from provided blanks:

| Part Cost | Excello Machine Cost | Total Cost |
|---|---|---|
| $96.75 | $35.30 | $132.05 |

- Price based on $622,000 Purchase of Excello Model XG-690.
- Three year contract doing minimum of 3454 pcs. Inner Races and 3569 pcs. Outer Races per year.
- Ancon to provide all maintenance and repair to the Excello Machine.
- Three H.E. Services employees to be trained by Excello.
- All equipment and estimated 1000 sq. ft. to be dedicated solely to Delphi. Includes storage space for raw material and blanks.
- Delphi to provide all steel, blanks, heat treating, broaching, and cold forming of splines and threads for races.
- All tooling and special equipment necessary to produce inner and outer races to be provided by Delphi.
- Ancon to provide fixturing and tooling with prints for new design changes at additional cost to Delphi.
- Additional requirements subject to price adjustment if necessary.
- Races will be inspected on a Zeiss Prismo Vast (CMM) at our A2LA Certified Facility.
- QS-9000 Certified/Air Conditioned Plant.
- Minority Owned Business Enterprise (MBE) and is a recognized Delphi Equal Partner.
- We will be able to do hard milling upon receipt of tooling cost along with set-up and run times.
- Engineering development time will be quoted at $65 per hour, time and a half on Saturdays, and double time on Sundays.
- Price reduction after the first year for the next 2 years will be 3%, 3%.
- The Excello Machine will be dedicated to Delphi for an 8 year period.

EXHIBIT M

# DELPHI
## Automotive Systems

# PURCHASE ORDER: S3S18278

PAGE 1

| | |
|---|---|
| ORDER DATE | 04/30/02 |
| ALTERATION ISSUE DATE | |
| ALTERATION EFFECTIVE DATE | |

PHONE: 989-757-3404

J. SANBORN  S18  Buyer

PURCHASING AGENT

This Number Must Appear on All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoice Attn. Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

**VENDOR NUMBER** 60-881-4059

TO:
H E SERVICES, CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

**SHIP TO:**
DELPHI SAGINAW STEERING SYS.
(3P1) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

**INVOICE TO:**
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601
US

| PAYMENT TERMS | NET | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|---|
| 2ND DAY OF 2ND MONTH | | SHIPPING POINT | | SEE BELOW |

The order will not be binding until accepted. Acceptance should be executed on acknowledgement copy which should be referred to Buyer.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions shall be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
Attached hereto Apply.

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE O MULTIPLE / UNIT O MEASURE |
|---|---|---|---|---|---|---|---|---|---|
| 000522 | | | | USER MELISSA L KALEYTA | | | | | |
| 000001 | 36 | PR359602 001 | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | 04/30/02 A | 0.00% | 22926.0000 | LOT |

EXCELLO CONTRACT, REF QUOTE DATE  6/19/01 FOR
MANUFACTURE OF INNER/OUTER RACES
TO BE RECEIVED AS 1 LOT EACH MONTH STARTING
APRIL 2002.
WHO ORDERED: L.KRAMER/7-9801

FOR INVOICING PROBLEMS UNDER THIS PURCHASE ORDER (DC)
CONTACT SUPPLIER RELATIONS AT (248) 874-4636.  DO NOT
CONTACT THE BUYER UNLESS SUPPLIER RELATIONS IN-
STRUCTS YOU TO DO SO.  YOU WILL NEED YOUR INVOICE
NUMBER AS WELL AS THE PURCHASE ORDER NUMBER.
***********SHIPPING AND ROUTING INSTRUCTIONS***********
LESS THAN 150#--UPS CONSIGNEE BILLING IS HOW THE
SHIPMENT SHOULD BE CALLED IN TO UPS NOT COLLECT
INDIVIDUAL PACKAGES SHOULD WEIGH NO MORE THAN 40# OR
LESS IF PRACTICAL, PLANT NUMBER MUST BE ON LABEL.
FOR ITEMS COLLECTIVELY WEIGHING 150#-12,000# BELOW
IF SHIPPING FROM--USE THESE CARRIERS:
MI,IN,IL,WI,OH          ALVAN MOTOR FRT
ON,(ONTARIO)            U.S.F.HOLLAND

CONTINUE PAGE 2

ORIGINAL

# DELPHI
## Automotive Systems

# PURCHASE ORDER: S3S18278

PAGE 2

DELPHI SAGINAW STEERING SYS.
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601                    US

**SHIP TO:**

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601                    US

**VENDOR NUMBER** 60-881-4059

**TO:**
ANCON PROTOTYPE MACHINE
H E SERVICES CO
1755 WICCO RD
SAGINAW MI
48601

**INVOICE TO:**

DELPHI AUTOMOTIVE SYSTEMS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601                    US

This order is not binding until accepted acceptance should be executed on acknowledgment copy which should be returned to Buyer.
The reverse side hereof sets forth terms and conditions to which Seller agrees by acceptance of this order, or by performance of any part thereof. This order, including the forms and conditions printed or written on the face and reverse side hereof, constitutes the final and complete agreement between the parties. No other agreement in any way modifying any of said terms and conditions will be binding upon Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown herein, additional Terms and Conditions Attached Hereto Apply.

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

**ORDER DATE** 04/30/02

**ALTERATION ISSUE DATE**

**ALTERATION EFFECTIVE DATE**

**PHONE:** 989-757-3404

**Buyer** J SANBORN     S18

| PAYMENT TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | | | | | | | | |

**F.O.B.** SHIPPING POINT

**DESTINATION UNLESS OTHERWISE INDICATED**

**SHIP VIA** SEE BELOW

**PURCHASING AGENT**

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE/MEASURE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|---|
| 000522 | USER MELISSA L KALEYTA | ALL OTHER STATES | | ROADWAY EXPRESS | | | | | | |

OVER 12,000 #
TION DEPARTMENT FOR CARRIER DESIGNA-
CALL DELPHI SAGINAW TRANSPORTA-

(517) 757-3509 OR (517) 757-3510

LEAD TIME. WHETHER INITIATED BY SUPPLIER OR SAGINAW
MUST NOT BE MADE WITHOUT PRIOR APPROVAL BY SAGINAW
PURCHASING VIA A PURCHASE ORDER ALTERATION.
ANY CHANGES IN DELIVERY DATE FOR ANY REASON
WHATSOEVER WILL BE REPORTED PROMPTLY, IN WRITING, TO
THE BUYER WITH DETAILED EXPLANATION.

THIS PURCHASE ORDER IS AN INVOICELESS PURCHASE
ORDER. YOUR COMPANY IS NO LONGER REQUIRED TO SEND
INVOICES TO RECEIVE PAYMENT (DO NOT SEND INVOICES).
DELPHI-S WILL GENERATE PAYMENTS TO YOUR COMPANY BASED
UPON RECEIPT OF MATERIAL AT OUR CURRENT PRICE AND PAY-
MENT TERMS TO ENSURE PROMPT PAYMENT YOU WILL NEED TO
ADHERE TO THE FOLLOWING GUIDELINES:
1. ADVISE THE BUYER OF ANY DISCREPANCIES ON THE PURC
HASE ORDER PRIOR TO SHIPMENT. CONVEY THIS INFORMATION
VIA BOTH PHONE AND FAX/LETTER. REFER TO BOTH THE PUR-
CHASE ORDER NUMBER AND THE ITEM NUMBER AND PUT ON
THE FAX OR LETTER.
2. THE DELPHI PART/ITEM NUMBER, THE PURCHASE ORDER
NUMBER MUST BE INCLUDED ON ALL PACKING SLIPS SENT IN
WITH SHIPMENTS. COPIES SHOULD ALSO BE MAILED TO THE

CONTINUE PAGE 3

ORIGINAL

# DELPHI
## Automotive Systems

# PURCHASE
# ORDER: S3S18278

PAGE 3

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and
Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

PHONE: 989-757-3404
J SANBORN    S18    Buyer

**VENDOR NUMBER** 60-881-4059

TO:
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

SHIP TO: DELPHI SAGINAW STEERING SYS.
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601
US

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE/MULTIPLE/MEASUR | UNIT OF MEASUR |
|---|---|---|---|---|---|---|---|---|---|---|
| 000522 | | | "WHO ORDERED" PERSON AND THE "DELIVER TO" PERSON REFERENCED ON THE ORDER, IF PAYMENT DID NOT OCCUR 2ND DAY 2ND MONTH AFTER RECEIPT OF GOODS. 3. THE UNIT OF MEASURE ON THE PACKING SLIP MUST BE THE SAME AS THE PURCHASE ORDER UNIT OF MEASURE. 4. DO NOT SEND AN INVOICE. PAYMENT WILL BE BASED ON RECEIPT RECORDS. 5. WAIT FOR PAYMENTS TO BE MADE THE 2ND DAY OF THE 2ND MONTH AFTER RECEIPT BEFORE BEING CONCERNED. 6. IF PAYMENT HAS NOT OCCURRED BY THE 2ND DAY, 2ND MONTH AND IN THE CASE OF "SERVICES TYPE ORDERS CALL THE PERSON DESIGNATED AS "WHO ORDERED" OR THE "DELIVER TO" PERSON TO CONFIRM IF A RECEIPT HAS BEEN ELECTRONICALLY ENTERED AUTHORIZING THE PAYMENT CYCLE TO BEGIN. 7. IF IT CAN BE CONFIRMED THAT A RECEIPT HAS BEEN ENTERED YOU CAN CALL "EAG DISBURSEMENTS" TO CHECK ON THE STATUS OF THE PAYMENT. YOU WILL NEED YOUR COMPANY'S (9) DIGIT DUN AND BRADSTREET ACCOUNT NO. ***************************************** EAG DISBURSEMENTS PHONE (248) 874-4636 ***************************************** IF IT BECOMES NECESSARY TO "BILL TO EAG DISBURSEMENT ANALYSIS: P.O. BOX 1550, FLINT, MI. 48501-1550. PLEASE DO NOT BILL SALES TAX AS WE HAVE OUR OWN DIRECT PAY PERMITS. ALABAMA PERMIT NO. 224. | | | | | |

**PAYMENT TERMS** NET 2ND DAY OF 2ND MONTH

**F.O.B.** SHIPPING POINT

**DESTINATION UNLESS OTHERWISE INDICATED**

**SHIP VIA** SEE BELOW

ORDER DATE 04/30/02
ALTERATION ISSUE DATE
ALTERATION EFFECTIVE DATE

PURCHASING AGENT

ORIGINAL

CONTINUE PAGE 4

USER MELISSA L KALEYTA

# DELPHI
## Automotive Systems

# PURCHASE
# ORDER: S3S18278

PAGE    4

| ORDER DATE | ALTERATION ISSUE DATE |
|---|---|
| 04/30/02 | |
| ALTERATION EFFECTIVE DATE | |

PHONE: 989-757-3404
J SANBORN    S18
Buyer

PURCHASING AGENT

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and
Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

VENDOR NUMBER 60-881-4059

TO:
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

SHIP TO:
DELPHI SAGINAW STEERING SYS.
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

H E SERVICES, CO
TO:

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

This order is not binding until accepted. Acceptance should be executed on acknowledgement copy which should be
returned to Buyer.
This order, including the terms and conditions to which Seller agrees by acceptance of this order,
or by commencement of performance hereunder, constitutes the entire agreement between Buyer and Seller
and no other agreement in any way modifying any of said terms and conditions
will be binding upon Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions
Attached Hereto Apply.

| PAYMENT TERMS | | | |
|---|---|---|---|
| NET | | | |
| 2ND DAY OF 2ND MONTH | | | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE/MULTIPLE/MEASURE |
|---|---|---|---|---|---|---|---|---|---|
| 000522 | USER MELISSA L KALEYTA | | MICHIGAN PAY PERMIT ME3800440 | | NY DP00036 | | SEE BELOW | | |

F.O.B.
DESTINATION UNLESS OTHERWISE INDICATED
SHIPPING POINT

SHIP VIA
SEE BELOW

ORIGINAL

MICHIGAN PAY PERMIT ME3800440.
ITEMS PRODUCED ON THIS ORDER TO BE IN COMPLIANCE
WITH DELPHI PROTOTYPE MATERIAL PROCEDURE - GP11
PROTOTYPE GP-11. SUBMISSION LEVEL "B" IS REQUIRED,
GP-11 SUBMISSION REQUIREMENTS ARE AT LEVEL "B" AND
MANDATORY FOR THIS ORDER / RELEASE. FOR FURTHER
INFORMATION CONTACT GREG ROVOLL AT (517) 757-3095.

ITEMS PRODUCED ON THIS ORDER SHALL BE COMPLIANT TO
THE GUIDELINES OF THE GENERAL MOTORS PROCEDURE GP-11
"FOR SUPPLIERS OF MATERIAL FOR PRE-PROTOTYPE &
PROTOTYPE GP-11". SUBMISSION LEVEL "B" IS REQUIRED
WITH COMPLETE DOCUMENTATION. MATERIAL CERTIFICATION,
MUST ACCOMPANY THE SHIPMENT WITH TEST DATA SHOWING
COMPLIANCE. DELPHI SAGINAW REQUIRES SERIALIZATION
USING OF THE JULIAN DATE (I.E. 0145-001) NOT THE
"S-001" METHOD DESCRIBED WITHIN THE PROCEDURE.
COMPLETE CHARACTERISTIC INSPECTION OF ALL PRINT
DIMENSIONS SHALL BE CONDUCTED ON 3 PIECES (1 PIECE
ON PLASTIC INJECTED, RUBBER, CASTINGS & STAMPINGS).
ALL KEY PRODUCT CHARACTERISTICS (KPC'S AND STARRED*
DIMENSIONS) MUST BE MEASURED ON ALL PARTS. INSPECTION
RESULTS WILL BE RECORDED. OUT OF TOLERANCE
SPECIFICATION DIMENSIONS MUST BE CIRCLED. THE
PROCURING DELPHI ENGINEER MUST SIGN OF ON THE
WARRANT TO ACCEPT ANY DEVIATION(S) PRIOR TO SHIPMENT.
SHIPMENT WILL NOT BE ACCEPTED INTO THE SYSTEM FOR

CONTINUE PAGE    5

# DELPHI
Automotive Systems

## PURCHASE ORDER:

**PAGE** 5

**ORDER:** S3S18278

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

DELPHI SAGINAW STEERING SYS.
3900 HOLLAND RD.
SAGINAW MI
48601
US

**VENDOR NUMBER** 60-881-4059

TO:
H E SERVICES; CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

**SHIP TO:** (3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

**INVOICE TO:**
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

**ORDER DATE** 04/30/02
**ALTERATION ISSUE DATE**
**ALTERATION EFFECTIVE DATE**

**PHONE:** 989-757-3404
J SANBORN    Buyer
S18

**SHIP VIA** SEE BELOW

**PURCHASING AGENT**

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order. This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon Buyer unless made in writing and signed by Buyer's authorized representative.
(If Equipment Contract Number II is Shown hereon, additional Terms and Conditions Attached Hereto Apply.)

| PAYMENT TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | | | | | **F.O.B.** SHIPPING POINT | | DESTINATION UNLESS OTHERWISE INDICATED | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/% | BASE UNIT PRICE | PRICE UNIT OF MULTIPLE MEASURE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | PAYMENT UNTIL REQUIREMENTS ARE MET. NON-COMPLIANCE MAY RESULT IN THE ISSUANCE OF A PROBLEM REPORT AND RESOLUTION (PR & R) UTILIZING THE GLOBAL QUALITY TRACKING SYSTEM (GQTS) PER GP-5. COMPLETE DETAILS ARE AVAILABLE WITHIN THE GP-11 REFERENCE MANUAL. FOR INFORMATION CONCERNING SUBMISSION REQUIREMENTS OR A COPY OF THE MANUAL, CONTACT GREG ROVOLL AT SAGINAW DELPHI PROTOTYPE OPERATIONS 517-757-3095. | | | | | |
| | | | | TERMS AND CONDITIONS JANUARY 2001, APPLY OF WHICH SUPPLIER HAS RECEIVED A COPY. | | | | | |

A0000522    USER MELISSA L KALEYTA

ORIGINAL

LAST PAGE

SMDL03 .11/98

# DELPHI AUTOMOTIVE SYSTEMS
## Purchase Request
*Bold areas are required fields*

| | |
|---|---|
| Service | |
| Cap/Const. | |
| Other | |

SB PO / REL No. __355 16278__   Page ____ of ____
MBO / BL PO No. ____
PO# / Alt. ____
Req. No. __359602__

**Supplier** AULON
Duns No. 602814052

Address
Fax No.

Date 4-30-02
Ship to Dock
Rec/Notify
**Phone** _____ **Mail/Plt.** ____ Fax ____

Contact
Phone No.

APA Rec'd    Required
Promised
Effective    Expires

Deliver To

| Qty | U/M | Est. Cost | Actual Cost | WO Type | GC 2 | GL 4 | Dept 5 | Sub Acct. 5 | Corp. 3 | Loc. 3 | Prod. 4 | Item ID / Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36 | LOTS | $22,926 | | | | | K480104-1 (P) | | | | | EXCELLO CONTRACT, REF. QUOTE DATED 6-19-01 FOR MANUFACTURE OF INNER/OUTER RACES. TO BE REC'D AS 1 LOT EACH MONTH STARTING APRIL 2002. |

Tax Code -7

Total Est. Cost $823,336

**Must be Complete:** Is a Substitute Material or Supplier Acceptable
Yes ____
No ____   Must Provide Justification

Where Used / Remarks   EXCELLO MACHINERY

Invoice / Packing Slip
Service Approved / Completed
APA Rec'd Services

**Originator** Loren Karner

**Phone** 7-9801

Haz'd Mat'l Appr.

Acct. Appr. 4:30 Date M.A. Wright

Quote No.

Buyer _____ Date 4/30/02 SLP

Purchasing Manager _____ Date

Clauses

Shipper
FOB
Pay Terms   Approval

DAS 2207 0999

# EXHIBIT N

# DELPHI

## PURCHASE ORDER:
S3S18278 001

### ### A L T E R A T I O N ###

**PAGE** 1

PHONE: 989-757-3404
J  MIKOLEIZIK  S18
Buyer

PURCHASING AGENT

| | ORDER DATE | ALTERATION ISSUE DATE |
|---|---|---|
| ### A L T E R A T I O N ### | 04/30/02 | 05/24/05 |
| | ALTERATION EFFECTIVE DATE | |
| | 05/24/05 | |

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

VENDOR NUMBER 60-881-4059

TO:
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

US

SHIP TO:
(3P1) PROTOTYPE OPERATIONS
DELPHI SAGINAW STEERING SYS.
2975 NODULAR DR
SAGINAW MI
48601
US

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

| PAYMENT TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | | | | | | | | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME DESCRIPTION | MFG. NUMBER | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED SHIPPING POINT | DATE REQUIRED | TAX CODE/ % | SHIP VIA SEE BELOW | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0001 | 20 | PR359602 001 | ### SPOT BUY S3S18278 HAS BEEN ALTERED AS FOLLOWS ### | | | 04/30/02 | A  0.00% | | 22926.0000 | | LOT |

EXCELLO CONTRACT., REF QUOTE DATE 6/19/01 FOR
MANUFACTURE OF INNER/OUTER RACES
TO BE RECEIVED AS 1 LOT EACH MONTH STARTING
APRIL 2002.
WHO ORDERED: L.KRAMER/7-9801

*** THIS ITEM HAS BEEN CHANGED ###
ALT QTY TO CLOSE P.O. FOR OLIMPIC TO SAP CONVERSION

*** DO NOT MAIL TO VENDOR ***
THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY
USD DOLLAR (UNITED STATES)

001412    USER MELISSA L KALEYTA

ORIGINAL          LAST PAGE

# EXHIBIT O

# DELPHI AUTOMOTIVE SYSTEMS
## Purchase Request
Shaded areas are required fields

| | | | | | | | SB PO / REL No. | | | Req. No. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | MBO / BL PO No. | S38 00059 | | PR366155 |
| | | | | | | | PO# / Alt. | | | |

| Supplier  ANCON TOOL & DIE INC | Duns No. 608814059 | Date  04/30/2002 | APA Rec'd | | | Require |
|---|---|---|---|---|---|---|
| Address  1755 WIGCO RD | Fax No. (989) 755-0330 | Ship To PO    3PI | | | | Promise |
| SAGINAW | MI | 48601 | Rec./Notify  Kristine DuCharme | | | Effectiv  5/1/02 |
| Conta  BARRY TORREY | Phone No. | | Phone (989) 757-1292  Mail/Pi | | Fax | Expires  5/1/05 |

| Tax Code: HN | WO Type: SE | | Number | | | Deliver To    99    14    1 | | |
|---|---|---|---|---|---|---|---|---|

| Qty | U/M | Est Cost | Actual Cost | GC. 2 4 | Gl. 4 5 | Dept. 6 | Sub Acct 3 5 | Cap 3 3 | Loc. 4 | Prod | Item ID/Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | PC | $ 0.00 | | ( USA - United State ) | | WO K9SE01217 | | 100 % | P | NPN - 000 | INNER/OUTER RACE OFF EXCELLO MACHINE. RACES MADE FROM BAR STOCK COST $119.25, RACES MADE FROM SUPPLIED BLANKS COST $96.75. |

RE-ISSUE OF MBO S380028. ANCON AGREES NOT TO USE EXCELLO MACHINE OR TOOLING FOR ANY OF DELPHI'S COMPETITORS. SUPPLIER WILL HAVE A SECURED AREA FOR EXCELLO MACHINE AND PARTS. REFER TO QUOTE INFORMATION ATTACHED TO ORIGINAL MBO. PRICE IS BASED ON QUOTE DATED 6/19/01. REF FOS3S18278 FOR EXCELLO MACHINE.

Total Actual Cost:  $ 0.00         ( USA - United State )

ENTERED MAY 0 1 2002

| Total Est. Cost: | | Where Used / Remarks    NEW DEVELOPMENT | | | Clauses |
|---|---|---|---|---|---|
| | | * Complete GP-11 Submission REQUIRED to accompany shipment | | | |
| Must Be Complete: Is a Substitute Material or Supplier Acceptable | | | | | |
| Yes ☐    No ☑    Must Provide Justification | | MBO - EXCELLO | | | |
| Invoice / Packing Slip | | | Quote No. | | |
| Service Approved / Completed | | | | | |
| APA Rec'd Services | | | | | Buyer  Kenlow  Date  4/30/02  SR |
| Originator  MARTIN, MARK | Phone (989) 757-4614 0399 | Haz'd Mat'l Appr. | Acct. Appr 5:02  Date  Approved  Date | Purchasing Manage  Date | |
| | | | | Shipper | |
| | | | | FOB    Shipping Point | |
| | | | | Pay Terms  NET 25th | |
| | | | | Approval  Date | |

ORIGINAL - DELPHI

DAS 2207 01 99



*APr 10, '02*
*cc D. Stearns*

## PROTOTYPE / MACHINE

(A Division of H.E. Services)

1755 Wicco Rd. • Saginaw, Michigan 48601 • (517) 755-0328 • FAX (517) 755-0330

**TO:**      Bruce Waslusky
**FROM:**   Barry Torrey
**DATE:**    June 19, 2001
**RE:**       Delphi's RFQ. No. S30000009, Inner & Outer Race (**RE-QUOTE**)

We are pleased to submit the following re-quote. Upon further evaluation over the last six months of dealing with ExCello and the trip that was made to Excello, we are submitting this re-quotation. Once the machine is on our floor and in operation, we will strive to reduce the costs through improved cycle times and efficiency.

### Inner and Outer Races made from bar stock:

| Part Cost | Excello Machine Cost | Total Cost |
|-----------|----------------------|------------|
| $119.25   | $35.30               | $154.55    |

### Inner and Outer Races made from provided blanks:

| Part Cost | Excello Machine Cost | Total Cost |
|-----------|----------------------|------------|
| $96.75    | $35.30               | $132.05    |

- Price based on $622,000 Purchase of Excello Model XG-690.
- Three year contract doing minimum of 3454 pcs. Inner Races and 3569 pcs. Outer Races per year.
- Ancon to provide all maintenance and repair to the Excello Machine.
- Three H.E. Services employees to be trained by Excello.
- All equipment and estimated 1000 sq. ft. to be dedicated solely to Delphi. Includes storage space for raw material and blanks.
- Delphi to provide all steel, blanks, heat treating, broaching, and cold forming of splines and threads for races.
- All tooling and special equipment necessary to produce inner and outer races to be provided by Delphi.
- Ancon to provide fixturing and tooling with prints for new design changes at additional cost to Delphi.
- Additional requirements subject to price adjustment if necessary.
- Races will be inspected on a Zeiss Prismo Vast (CMM) at our A2LA Certified Facility.
- QS-9000 Certified/Air Conditioned Plant.
- Minority Owned Business Enterprise (MBE) and is a recognized Delphi Equal Partner.
- We will be able to do hard milling upon receipt of tooling cost along with set-up and run times.
- Engineering development time will be quoted at $65 per hour, time and a half on Saturdays, and double time on Sundays.
- Price reduction after the first year for the next 2 years will be 3%, 3%.
- The Excello Machine will be dedicated to Delphi for an 8 year period.

EXHIBIT P

# DELPHI
Automotive Systems

###HED PER RELEASE###

# PURCHASE

PAGE 1

# ORDER: S3B00059

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

SHIP TO:

US

**This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.**
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 60-881-4059

INVOICE TO:

DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601                    US

TO:
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | PHONE: 989-757-3404 |
|---|---|
| 05/01/02 | J SANBORN |
| ALTERATION ISSUE DATE | S18          Buyer |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET    2ND DAY OF 2ND MONTH | SHIPPING POINT | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

THIS IS A MISC BLANKET ORDER FOR THE COMMODITY 2002 REL

### THIS IS A LOCAL BLANKET ORDER ###

EFFECTIVE DATE: 05/01/02  EXPIRATION DATE: 05/01/05

THIS ORDER LISTED IN THE FOLLOWING CURRENCY
USD  DOLLAR (UNITED STATES)

NPN-000 INNER/OUTER RACE OFF EXCELLO MACHINE.
RACES MADE FROM BAR STOCK COST $119.25.
RACES MADE FROM SUPPLIED BLANKS COST $96.75.
RE-ISSUE OF MBO S3B00028. ANCON AGREES NOT TO USE
EXCELLO MACHINE OR TOOLING FOR ANY OF DELPHI'S
COMPETITOR'S. SUPPLIER WILL HAVE A SECURED AREA
FOR EXCELLO MAHCINE AND PARTS. REFER TO QUOTE
INFORMATION ATTACHED TO ORIGINAL MBO.
PRICE IS BASED ON QUOTE DATED 6/19/01.
REF PO S3S18278 FOR EXCELLO MACHINE.
** COMPLETE GP-11 SUBMISSION REQUIRED TO ACCOMPANY
SHIPMENT **

TERMS AND CONDITIONS JANUARY 2001, APPLY
OF WHICH SUPPLIER HAS RECEIVED A COPY.

B000044  USER: MELISSA L KALEYTA          **ORIGINAL**                    LAST PAGE

SMDLO3 11/98

# DELPHI
Automotive Systems

DELPHI SAGINAW STEERING SYSTEM   SHIP TO:
3900 HOLLAND RD.
SAGINAW MI
48601                              US

**ORDER:** S3B00059 001
### A L T E R A T I O N ###

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and
Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

TO:
VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

INVOICE TO:

DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601                              US

This order is not binding until accepted  Acceptance  should be executed on acknowledgment copy which should be
returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final
agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions
will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Goverment Contract Number is Shown Hereon, additional Terms and Conditions
Attached Hereto Apply.

| ORDER DATE | PHONE: 989-757-3404 |
|---|---|
| 05/01/02 | J SANBORN |
| ALTERATION ISSUE DATE | S18    Buyer |
| 05/06/02 | |
| ALTERATION EFFECTIVE DATE | |
| 05/06/02 | PURCHASING AGENT |

| PAYMENT TERMS | | F.O.B.   DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET    2ND DAY OF 2ND MONTH | | SHIPPING POINT | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT O MEASUR |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | THIS IS A MISC BLANKET ORDER FOR THE COMMODITY 2002 REL | | | | | | | |

THIS IS A MISC BLANKET ORDER FOR THE COMMODITY 2002 REL

#LOCAL BLANKET S3B00059 HAS BEEN ALTERED AS FOLLOWS#

EFFECTIVE DATE: 05/01/02  EXPIRATION DATE: 05/01/05

THIS ALTERATION LISTED IN THE FOLLOWING CURRENCY
USD  DOLLAR (UNITED STATES)

ADD CANCELLED MBO S3B00028 CLAUSES

MBO WILL BE EVALUATED EVERY 1/4 ON VOLUME, STARTING
3 MONTHS AFTER MACHINE IS PLACE AT UNIVERSAL TOOL
AND RUN OFF IS SUCCESSFUL. PAYMENT FOR MACHINE IS
INCLUDED IN PART PC. PRICE. PRICE BASED ON A QUANTITY
OF 7,000 PCS ANNUALLY. THISPRICE WILL GO UP OR DOWN
BASED ON ACTUAL VOLUME EVERY 1/4 TO INSURE PAYMENT
OF MACHINE. REFER TO ANCON'S QUOTE S3B00028 DATED
10/12/1999. APPROVED AT AOURCING ON 10/18/1999.
SOURCING DECISION ATTACHED.

M000032   USER: MELISSA L KALEYTA                                      LAST PAGE

ORIGINAL

SMDL03 11/98

JELMI

###ESTABLISHED PER RELEASE###

# PURCHASE

PAGE   1

## ORDER: S3B00059 002

### ### A L T E R A T I O N ###

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601                          US

SHIP TO:

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and
Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

TO:

INVOICE TO:

DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601                          US

| ORDER DATE | PHONE: 989-757-3404 |
|---|---|
| 05/01/02 | J SANBORN |
| ALTERATION ISSUE DATE | S18            Buyer |
| 09/10/03 | |
| ALTERATION EFFECTIVE DATE | |
| 09/10/03 | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | SHIP VIA |
|---|---|---|
| NET   2ND DAY OF 2ND MONTH | DESTINATION UNLESS OTHERWISE INDICATED  SHIPPING POINT | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASUR |
|---|---|---|---|---|---|---|---|---|---|---|

THIS IS A MISC BLANKET ORDER FOR THE COMMODITY 2002 RE

#LOCAL BLANKET S3B00059 HAS BEEN ALTERED AS FOLLOWS#

EFFECTIVE DATE: 05/01/02  EXPIRATION DATE: 05/01/05

THIS ALTERATION LISTED IN THE FOLLOWING CURRENCY
USD  DOLLAR (UNITED STATES)

ALTER BLANKET TO INCLUDE PRICE/PROCESS BREAKDOWN
ON INNER/OUTER RACES FROM BAR STOCK & INNER/OUTER
RACES FROM BLANKS.
ALSO ADD THE HEAT TREAT SAMPLES & SET UP CHARGES

*** BLANKE TO INCLUDE PRICE/PROCESS BREAKDOWN ***
ON INNER/OUTER RACES FROM BAR STOCK & INNER/OUTER
RACES FROM BLANKS
- PRODUCTION BLANK - INNER RACE
  GREEN MACHINE                    $ 46.00
  HARD TURN O.D.                   $ 21.00
  MACHINE BALL GROOVE              $ 29.75

M000039  USER: MELISSA L KALEYTA                    CONTINUE PAGE    2

ORIGINAL

SMDL03 01/15/2003

BUYER NAME: J  SANBORN                                    DELPHI                                              PAGE      2
BUYER CODE: S18                          BLANKET ORDER ALTERATION ATTACHMENT FORM
VENDOR    : H E SERVICES CO              ALTERATION NUMBER S3B00059 002 ISSUE DATE 09/10/03

| ITEM | VENDOR | ITEM | NOUN NAME | DESCRIPTION | RFQ NUMBER | BASE UNIT PRICE | PRICE | BUY |
|------|--------|------|-----------|-------------|------------|-----------------|-------|-----|
| SEQ | PERCENT | IDENTIFICATION | | | | | MULT | U/M |
| | | | | O.D GRIND | | $ 28.00 | | |
| | | | | COMPLETE | | $ 96.75 | | |
| | | | | SET UP CHARGE$350.00 | | | | |
| | | | | HEAT TREAT | | $ 46.00 | | |
| | | | - BAR STOCK INNER RACE | | | | | |
| | | | | HARD TURN O.D. | | $ 21.00 | | |
| | | | | MACHINE BALL GROOVE | | $ 29.75 | | |
| | | | | O.D. GRIND | | $ 28.00 | | |
| | | | | GREEN MACHINE | | $ 68.50 | | |
| | | | | COMPLETE | | $119.25 | | |
| | | | | SET-UP | | $450.00 | | |
| | | | | HEAT TREAT | | $ 68.50 | | |
| | | | PRODUCTION BLANK - OUTER RACE | | | | | |
| | | | | GREEN MACHINE O.D. | | $ 46.00 | | |
| | | | | HARD TURN O.D. | | $ 21.00 | | |
| | | | | MACHINE BALL GROOVES | | $ 29.75 | | |
| | | | | COMPLETE | | $ 96.75 | | |
| | | | | SET-UP | | $350.00 | | |
| | | | - BAR STOCK - OUTER RACE | | | | | |
| | | | | GREEN MACHINE O.D. | | $ 68.50 | | |
| | | | | HARD TURN O.D. | | $ 21.00 | | |
| | | | | MACHINE BALL GROOVES | | $ 29.75 | | |
| | | | | COMPLETE | | $119.25 | | |
| | | | | SET-UP | | $450.00 | | |

M000039  USER: MELISSA L KALEYTA                                    LAST PAGE

# EXHIBIT Q

# DELPHI AUTOMOTIVE SYSTEMS
## Purchase Request
Shaded areas are required fields

| SB PO / REL No. | | Req. No. |
|---|---|---|
| MBO / BL PO No. | | PR397766 |
| PO#/Alt. | S3B00059 | |

**Supplier:** ANCON TOOL & DIE INC

Duns No. 608814059

| Date 02/05/2004 | APA Rec'd | Require 02/20/2004 |
|---|---|---|

**Address** 1755 WICCO RD

Fax No. (989) 755-0330

| Ship To PO | 3Pt | Promise |
| Rec./Notify Kristine DuCharme | | Effective |

SAGINAW        MI        48601

Phone No. (989) 755-0328

| Phone (989) 757-1262  Mail/Plt | Fax | Expires |

**Contact:** JOEL KARWAT (QUOTES)

Deliver To        99        14        1

**Tax Code:** | WO Type: | Number:

| Qty | UM | Est. Cost | Actual Cost | GC 2 | GL 4 | Dept 5 | Sub Acct 5 | Corp 3 | Loc 4 | Prod | Item ID/Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | PC | $ 96.75 | | | | | | | | | WO K9SE01726    50 % P    2611331 - 02B    OUTER RACE 33 TOOTH |
| | | | | | | | | | | | WO K9SE01871    50 % E |

**PRODUCTION BLANK (GRIND SPHERE & BALL GROOVES)**

| 1 | LT | $ 350.00 | | | | | | | | | ( USA - United State )    WO K9SE01726    50 % P    SETUP - 02B    SET-UP CHARGE |
| | | | | | | | | | | | WO K9SE01871    50 % E |

| 16 | PC | $ 96.75 | | | | | | | | | ( USA - United State )    WO K9SE01726    50 % P    2611380 - 000    INNER RACE 33 TOOTH |
| | | | | | | | | | | | WO K9SE01871    50 % E |

**PRODUCTION BLANK (GRIND SPHERE & BALL GROOVES)**

| 1 | LT | $ 350.00 | | | | | | | | | ( USA - United State )    WO K9SE01726    50 % P    SETUP - 000    SETUP CHARGE |
| | | | | | | | | | | | WO K9SE01871    50 % E |

**Total Actual Cost    $ 3,796.00**        ( USA - United State )

| Total Est. Cost | Inspection Requirement:  Full GP-11 | Clauses | |
| | Technical Specification:  Single Supplier - Complete Blueprint | | |
| | Tech Plan Details: | | |

**Must Be Complete: Is a Substitute Material or Supplier Acceptable**

Yes ☐        Holder of Blanket Order

No ☑        Must Provide Justification

Quote No.

| | Buyer | Date |
| | Purchasing Manager | Date |

**Program:** Next Generation Corolla

| | Shipper | |
| | FOB    Destination | |
| | Pay Terms  MNS-2 | |

**Service Approved / Completed**

**APA Rec'd Services**

| Originator | Phone | Haz'd Mat'l Appr. | Acct. Appr. | Date, Approval | Date    Approval | Date |
|---|---|---|---|---|---|---|
| HAIN, TIM | (989) 757-0794 | | | | | |
| | 99161 | | | 2-5-04 | | |

REGISTERED FEB 0 4 2004

**ORIGINAL - DELPHI**

DAS 2207 0199



# ANCON PROTOTYPE/MACHINE

(A Division of H.E. Services)

1755 Wicco Road * Saginaw, MI 48601 * Phone: (989) 755-0328 * Fax: (989) 755-0330

**TO:**    Delphi Prototype Center

**DATE: 2/5/2004**
**QUOTE #: 6417**
**VALID FOR 30 Days**

**ATTN:**    Purchasing
**CC:**    Kris Ducharme
**Fax:**    (989) 757-5287

We are pleased to submit the following quote:

| Item # | Qty. | Part # | Detail # | RFQ # | Part Name | Price Each | Delivery |
|--------|------|--------|----------|-------|-----------|------------|----------|
| 1 | 16 | 26111381-02B | N/A | STR | Outer Race | $96.75 | 2/20/2004 |
| 2 | 1 | 26111381-02B | N/A | STR | Outer Race – Setup Charge | $350.00 | 2/20/2004 |
| 3 | 16 | 26111380-000 | N/A | STR | Inner Race | $96.75 | 2/20/2004 |
| 4 | 1 | 26111380-000 | N/A | STR | Inner Race – Setup Charge | $350.00 | 2/20/2004 |

Note:

Thank you for the opportunity to provide this quote.

Sincerely,

Joel Karwat
Operation Manager

QF-64
REV. 001
2/22/01

# PURCHASE ORDER: S3S26246

PAGE

**DELPHI SAGINAW STEERING SYSTEM**
3900 HOLLAND RD.
SAGINAW MI
48601

US

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WIECO RD
SAGINAW MI
48601

TO:

SHIP TO:

**DELPHI SAGINAW STEERING SYS.**
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601

US

INVOICE TO:

**DELPHI AUTOMOTIVE SYSTEMS**
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601

US

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips &
Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

| ORDER DATE | ALTERATION ISSUE DATE | |
|---|---|---|
| 02/06/04 | J | 989-757-340∠ |
| ALTERATION EFFECTIVE DATE | SANBORN | Buyer |
| | S18 | |
| SHIP VIA | | PURCHASING AGENT |
| SEE BELOW | | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE UNIT/ MULTIPLE MEA |
|---|---|---|---|---|---|---|---|---|---|
| | | | F.O.B. SHIPPING POINT | DESTINATION UNLESS OTHERWISE INDICATED | | | | | |
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | | | | | |
| | | | THIS IS A MATERIAL REQUEST AGAINST MBO S3B00059 | | | | | | |
| | | | **THIS IS A CONFIRMING ORDER DO NOT DUPLICATE** CONFIRMED WITH: JOEL KARWAT | | | | | | |
| | | | COMPLETE GP-11 SUBMISSION REQUIRED TO ACCOMPANY SHIPMENT | | | | | | |
| 00001 | 16 | PR397766 001 | 26111381-02B OUTER RACE 33 TOOTH PRODUCTION BLANK (GRIND SPHERE & BALL GROOVES) WHO ORDERED: K.DUCHARME/757-1262 | | 02/20/04 A | 0.00% | 96.7500 | EA |
| 00002 | 1 | PR397766 002 | SETUP-02B SET-UP CHARGE WHO ORDERED: K.DUCHARME/757-1262 | | 02/20/04 A | 0.00% | 350.0000 | LT |
| 00003 | 16 | PR397766 003 | 26111380-000 INNER RACE 33 TOOTH PRODUCTION BLANK (GRIND SPHERE & BALL GROOVES) WHO ORDERED: K.DUCHARME/757-1262 | | 02/20/04 A | 0.00% | 96.7500 | PC |

**PAYMENT TERMS**
NET 2ND DAY OF 2ND MONTH

A000855    USER BRUCE WASLUSKY

ORIGINAL

CONTINUE PAGE    2

SMDO.03 01/16/2003



# PURCHASE ORDER: S3C26246

PAGE

SHIP TO: (3P1) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYS.

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips/Invoices. Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| PAYMENT TERMS | ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | SHIP VIA | BASE UNIT PRICE | PRICE ON MULTIPLE INC. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | 00004 | 1 | PR397766 004 | SET-UP-000 SET-UP CHARGE | | | 02/20/04 A | 0.00% | SEE BELOW | 350.0000 | |

ORDER DATE 02/06/04
ALTERATION ISSUE DATE 02/06/04
ALTERATION EFFECTIVE DATE
J S18
J SANBORN
989-757-340
Buyer

F.O.B. DESTINATION UNLESS OTHERWISE INDICATED
SHIPPING POINT

WHO ORDERED: K.DUCHARME/757-1262

**********SHIPPING AND ROUTING INSTRUCTIONS**********
LESS THAN 150#--UPS CONSIGNEE BILLING IS HOW THE
SHIPMENT SHOULD BE CALLED IN TO UPS NOT COLLECT
INDIVIDUAL PACKAGES SHOULD WEIGH NO MORE THAN 40# OR
LESS IF PRACTICAL. PLANT NUMBER MUST BE ON LABEL.
FOR ITEMS COLLECTIVELY WEIGHING 150# -12,000# BELOW

IF SHIPPING FROM---USE THESE CARRIERS:

MI,IN,IL,WI,OH          ALVAN MOTOR FRT
ON, (ONTARIO)           U.S.F.HOLLAND
ALL OTHER STATES        CENTRAL TRANSPORT

OVER 12,000 #            CALL DELPHI SAGINAW
TION DEPARTMENT FOR CARRIER DESIGNATION
(989)757-3509 OR (989)757-3510
LEAD TIME WHETHER INITIATED BY SUPPLIER OR SAGINAW
MUST NOT BE MADE WITHOUT PRIOR APPROVAL BY SAGINAW
PURCHASING VIA A PURCHASE ORDER ALTERATION.
ANY CHANGES IN DELIVERY DATE FOR ANY REASON
WHATSOEVER WILL BE REPORTED PROMPTLY, IN WRITING, TO
THE BUYER WITH DETAILED EXPLANATION.

DELPHI SAGINAW TRANSPORTA-

A000855    USER BRUCE WASLUSKY

ORIGINAL

CONTINUE PAGE    3

SMD03 01/15/2003



# PURCHASE ORDER:

S33S26246

PAGE

ORDER DATE: 02/06/04    989-757-340-

J SANBORN    S18    Buyer

PURCHASING AGENT

SHIP TO: (3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYS.
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
SAGINAW MI
48601
US

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

TO: ANCON PROTOTYPE MACHINE
1755 WIECO RD
SAGINAW MI
48601

H E SERVICES CO
VENDOR NUMBER 60-881-4059

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips
Invoice, Attn. Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parce
Post.

| PAYMENT TERMS | | | | | SHIP VIA | ALTERATION ISSUE DATE | ALTERATION EFFECTIVE DATE |
|---|---|---|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | | | | | SEE BELOW | | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE UN MULTIPLE/ME |
|---|---|---|---|---|---|---|---|---|---|
| A000855 | | | | | | | | | |

F.O.B. DESTINATION UNLESS OTHERWISE INDICATED
SHIPPING POINT

USER BRUCE WASLUSKY

THIS PURCHASE ORDER IS AN INVOICELESS PURCHASE
ORDER. YOUR COMPANY IS NO LONGER REQUIRED TO SEND
INVOICES TO RECEIVE PAYMENT (DO NOT SEND INVOICES).
DELPHI-S WILL GENERATE PAYMENT TO YOUR COMPANY BASED
UPON RECEIPT OF MATERIAL AT OUR CURRENT PRICE AND PAY
MENT TERMS, TO ENSURE PROMPT PAYMENT YOU WILL NEED TO
ADHERE TO THE FOLLOWING GUIDELINES:
1. ADVISE THE BUYER OF ANY DISCREPANCIES ON THE PURC
HASE ORDER PRIOR TO SHIPMENT. CONVEY THIS INFORMATION
VIA BOTH PHONE AND FAX/LETTER. REFER TO BOTH THE PUR-
CHASE ORDER NUMBER AND THE ITEM NUMBER AND PUT ON
THE FAX OR LETTER.
2. THE DELPHI PART/ITEM NUMBER, THE PURCHASE ORDER
NUMBER MUST BE INCLUDED ON ALL PACKING SLIPS SENT IN
WITH SHIPMENTS. IF PAYMENT DID NOT OCCUR 2ND DAY IN
2ND MONTH AFTER RECEIPT OF GOODS, COPIES SHOULD BE
MAILED TO THE "WHO ORDERED" PERSON AND THE "DELIVER
TO" PERSON REFERENCED ON THE ORDER.
3. THE UNIT OF MEASURE ON THE PACKING SLIP MUST BE
THE SAME AS THE PURCHASE ORDER UNIT OF MEASURE.
4. DO NOT SEND AN INVOICE. PAYMENT WILL BE BASED ON
RECEIPT RECORDS.
5. WAIT FOR PAYMENTS TO BE MADE THE 2ND DAY OF THE
2ND MONTH AFTER RECEIPT BEFORE BEING CONCERNED.
6. IF PAYMENT HAS NOT OCCURRED BY THE 2ND DAY, 2ND
MONTH AND IN THE CASE OF SERVICES TYPE ORDERS CALL

CONTINUE PAGE    4

SMO.03 01/15/2003



# PURCHASE ORDER: S3S26246

PAGE

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

SHIP TO: (3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

SHIP TO: DELPHI SAGINAW STEERING SYS.

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips, Invoice Attn. Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| ORDER DATE | | |
|---|---|---|
| 02/06/04 | J SANBORN | 989-757-340 |
| | Buyer | |

ALTERATION ISSUE DATE

ALTERATION EFFECTIVE DATE

PURCHASING AGENT

**PAYMENT TERMS** NET 2ND DAY OF 2ND MONTH

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UM NET |
|---|---|---|---|---|---|---|---|---|---|---|

F.O.B. DESTINATION UNLESS OTHERWISE INDICATED
SHIPPING POINT

SHIP VIA: SEE BELOW

A000855 USER BRUCE WASLUSKY

THE PERSON DESIGNATED AS "WHO ORDERED" OR THE
"DELIVER TO" PERSON TO CONFIRM IF A RECEIPT HAS BEEN
ELECTRONICALLY ENTERED AUTHORIZING THE PAYMENT CYCLE
TO BEGIN.
7. IF IT CAN BE CONFIRMED THAT A RECEIPT HAS BEEN
ENTERED YOU CAN CALL "EAG DISBURSEMENTS" TO CHECK ON
THE STATUS OF THE PAYMENT. YOU WILL NEED YOUR
COMPANY'S (9) DIGIT DUN AND BRADSTREET ACCOUNT NO.
EAG DISBURSEMENTS PHONE (248) 874-4636
*********************************************************
IF IT BECOMES NECESSARY TO "BILL TO EAG DISBURSEMENT
ANALYSIS: P.O. BOX 1550, FLINT, MI. 48501-1550.
PLEASE DO NOT BILL SALES TAX AS WE HAVE OUR OWN
DIRECT PAY PERMITS, ALABAMA PERMIT NO. 224,
MICHIGAN PAY PERMIT ME3800440 NY. DP00036
ITEMS PRODUCED ON THIS ORDER TO BE IN COMPLIANCE
WITH DELPHI PROTOTYPE MATERIAL PROCEDURE - GP-11,
GP-11 SUBMISSION REQUIREMENTS ARE AT LEVEL "B" AND
MANDATORY FOR THIS ORDER / RELEASE. FOR FURTHER
INFORMATION CONTACT TROY ROHN AT (989) 757-3095.
*********************************************************
ITEMS PRODUCED ON THIS ORDER SHALL BE COMPLIANT TO
THE GUIDELINES OF THE GENERAL MOTORS PROCEDURE GP-11
"FOR SUPPLIERS OF MATERIAL FOR PRE-PROTOTYPE &
PROTOTYPE GP-11". HOWEVER, DELPHI SAGINAW STEERING

ORIGINAL

CONTINUE PAGE   5

SMDL03 01/15/2003



# PURCHASE ORDER: S3S26246

PAGE

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| ORDER DATE | ALTERATION ISSUE DATE |
|---|---|
| 02/06/04 | J SANBORN |
| ALTERATION EFFECTIVE DATE | S18 Buyer |

TAX CODE / %

| SHIP VIA | 989-757-340 |
|---|---|
| SEE BELOW | PURCHASING AGENT |

**VENDOR NUMBER 60-881-4059**

TO:
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

SHIP TO:
DELPHI SAGINAW STEERING SYS.
(3P) PROTOTYPE OPERATIONS
2975 MODULAR DR
SAGINAW MI
48601
US

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
DEPT. 14
3900 HOLLAND RD.
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601
US

PAYMENT TERMS
NET .... 2ND DAY OF 2ND MONTH

F.O.B.
SHIPPING POINT

DESTINATION UNLESS OTHERWISE INDICATED

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | BASE UNIT PRICE | PRICE UNIT MULTIPLE MEA |
|---|---|---|---|---|---|---|---|---|
| A000855 | | USER BRUCE WASLUSKY | | HAS SOME CUSTOMER SPECIFIC REQUIREMENTS THAT DIFFER FROM THE GM PROCEDURE. THE DELPHI SAGINAW STEERING CUSTOMER SPECIFIC REQUIREMENTS ARE: SUBMISSION LEVEL "B" IS REQUIRED (WARRANT ROADMAPPED PRINT MATERIAL CERTIFICATION, INSPECTION SUMMARY, AND PART NUMBER/ REV LEVEL AND JULIAN DATE SERIALIZATION). MATERIAL CERTIFICATION(S) TO ACCOMPANY THE SHIPMENT WITH TEST DATA SHOWING COMPLIANCE. EACH PART REQUIRES THE PART NUMBER, REVISION LEVEL AND SERIALIZATION USING THE JULIAN DATE (I.E. 1145-001), NOT THE "S-001" METHOD DESCRIBED WITHIN THE GM PROCEDURE. NUMBER ALL DIMENSIONS ON THE PRINT, INCLUDING NOTES TO CORRELATE WITH THE DIMENSIONAL SUMMARY INSPECTION SHEET. THE INSPECTION SHALL BE CONDUCTED ON A 3 PIECE RANDOM SAMPLE FOR EACH SHIPMENT. FOR PLASTIC INJECTED, RUBBER INJECTED AND CASTINGS, A COMPLETE INSPECTION IS REQUIRED ON 1 PIECE FROM EACH CAVITY OR DIE FROM THE SAME RUN. IF THE PRINT REFERENCES A SPECIFICATION, A COPY OF THAT SPECIFICATION MUST BE INCLUDED WITH THE SUBMISSION. COMMON REQUIREMENTS ARE: ALL KEY PRODUCT CHARACTERISTICS (KPC'S AND STARRED* DIMENSIONS) MUST BE MEASURED ON ALL | | | | |

ORIGINAL

CONTINUE PAGE    6

SMCK03 01/15/2003

# PURCHASE ORDER: S3S26246

PAGE

DELPHI SAGINAW STEERING SYS.

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| ORDER DATE | SHIP VIA | | 989-757-3404 |
|---|---|---|---|
| 02/06/04 | SEE BELOW | J. SANBORN | Buyer |
| ALTERATION ISSUE DATE | | S18 | |
| ALTERATION EFFECTIVE DATE | | PURCHASING AGENT | |

**VENDOR NUMBER 60-881-4059**

TO:
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

SHIP TO:
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

This order has not been and does not become a binding purchase contract which is subject to and expressly limited by the terms and conditions... If Government Contract Number is Shown Hereon, Additional Terms and Conditions Attached Hereto Apply.

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE UNIT/MULTIPLE MEAS |
|---|---|---|---|---|---|---|---|---|---|

F.O.B. SHIPPING POINT
DESTINATION UNLESS OTHERWISE INDICATED

PARTS. INSPECTION RESULTS MUST BE RECORDED.
OUT OF TOLERANCE SPECIFICATION DIMENSION(S)
MUST BE CIRCLED. THE SUPPLIER MUST COMPLETE
THE CORRECTIVE ACTION ON THE BACK OF THE
WARRANT AND FAX IT TO THE APPROPRIATE DELPHI
ENGINEER FOR REVIEW. IF ACCEPTABLE, THE
PROCURING DELPHI ENGINEER MUST SIGN OFF ON THE
BACK OF THE WARRANT TO ACCEPT THE DEVIATION(S)
PRIOR TO SUBMITTING THE PARTS FOR SHIPMENT.
DELPHI SAGINAW STEERING REQUIREMENTS ARE SUMMARIZED
IN A DOCUMENT TITLED "GP-11 MADE SIMPLE". THIS
DOCUMENT MAY BE OBTAINED BY CONTACTING THE NUMBER
BELOW. IF SUBMITTING A PPAP SUBMISSION IN PLACE OF
A GP-11 SUBMISSION, THE PPAP MUST INCLUDE AN APPROVED
WARRANT SIGNED BY THE CUSTOMER. YOU CANNOT SUBMIT A
PPAP SUBMISSION THAT IS 'PENDING APPROVAL. IN PLACE
OF GP-11. PRODUCTION SUPPLIER MUST BE REGISTERED
WITH COVISINT. ANY NON-COMPLIANCE TO THE
REQUIREMENTS MAY RESULT IN THE ISSUANCE OF A
PROBLEM REPORT AND RESOLUTION (PR & R). WHEN GP-11
LEVEL OF CERTIFICATION IS INDICATED, THE SUPPLIER
MUST REVIEW THE STATUS OF GP-11 DOCUMENTATION WITH
THE PROTOTYPE EXPEDITOR AND OBTAIN A RELEASE BEFORE
MATERIAL IS SHIPPED. IF MATERIAL IS SHIPPED WITHOUT
PROTOTYPE APPROVAL, THE SUPPLIER ACCEPTS
RESPONSIBILITY FOR ALL TRANSPORTATION AND

PAYMENT TERMS
NET 2ND DAY OF 2ND MONTH

CONTINUE PAGE     7

A000855     USER BRUCE WASLUSKY

ORIGINAL

SMDL03 01/15/2003

DELPHI

**PURCHASE**

PAGE

**ORDER:** S3526246

989-757-3404

| | |
|---|---|
| ORDER DATE | |
| 02/06/04 | J |
| ALTERATION ISSUE DATE | S18 SANBORN |
| | Buyer |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601
US

**SHIP TO:**
DELPHI SAGINAW STEERING SYS.
(3P) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

**TO:**

**INVOICE TO:**
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT 14
SAGINAW MI
48601
US

This order and all goods and complete Acceptance should be received on acknowledgement copy which should be returned to the order. If this order, including the Terms and Conditions on the face and printed on the back hereof, constitute the complete and final agreement between Buyer and Seller. This contract may be accepted only by Seller, and no modification or variance of the terms and conditions herein set forth will be binding upon Buyer unless agreed to in writing and signed by Buyer's authorized representative. If Contract Number for Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| PAYMENT TERMS | | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | | SHIPPING POINT | | SEE BELOW |

| QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE UNIT/ MULTIPLE MEA |
|---|---|---|---|---|---|---|---|

INSPECTION EXPENSES REQUIRED TO MEET THE ORIGINAL REQUIREMENT OF THE PURCHASE ORDER. IF THE ORDER IS FOR TOOLING, THE GP-11 REQUIREMENTS ARE NOT VALID. DELPHI'S TERMS AND CONDITIONS CAN BE FOUND ON THE WEB SITE LISTED BELOW. SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL TERMS AND CONDITIONS ARE INCORPORATED IN, AND A PART OF, THIS CONTRACT AND EACH PURCHASE ORDER, RELEASE, REQUISITION, WORK ORDER, SHIPPING INSTRUCTION SPECIFICATION AND OTHER DOCUMENTS ISSUED BY BUYER OR ACCEPTED IN WRITING BY BUYER, WHETHER EXPRESSED IN WRITTEN FORM OR BY ELECTRONIC DATA INTERCHANGE, RELATING TO THE GOODS AND/OR SERVICES TO BE PROVIDED BY SELLER PURSUANT TO THIS CONTRACT (SUCH DOCUMENTS ARE COLLECTIVELY REFERRED TO AS THIS "CONTRACT"). A COPY OF BUYER'S GENERAL TERMS AND CONDITIONS IS AVAILABLE UPON WRITTEN REQUEST TO BUYER OR VIA THE INTERNET

NECESSARY. IF YOU WOULD LIKE INFORMATION CONCERNING THE GP-11 REQUIREMENTS, CONTACT TROY ROHN AT DELPHI SAGINAW STEERING PROTOTYPE OPERATIONS AT 989-757-3095.

TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE OF THE PURCHASE ORDER AND THE REFERENCE TO TERMS AND CONDITIONS DATED JANUARY, 2001 ARE NOT VALID.

A000855    USER BRUCE WASLUSKY

ORIGINAL

CONTINUE PAGE    8

SNUG03 01/19/2003



DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI 48601
US

## PURCHASE ORDER. S3S26246

PAGE

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
TO: 1755 WICCO RD
SAGINAW MI 48601

SHIP TO: DELPHI SAGINAW STEERING SYS.
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI 48601
US

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI 48601
US

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2 copies of your packing slip must accompany each shipment)
Item Identification Number(s) must be shown on Packing Slips
Invoice Attn. Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| PAYMENT TERMS | | | |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | | | |

| ITEM/SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | ROOM NAME | DESCRIPTION | PO NUMBER | DATE REQUIRED |
|---|---|---|---|---|---|---|
| A000855 | USER BRUCE WASLUSKY | | | | | |

F.O.B. DESTINATION UNLESS OTHERWISE INDICATED

SHIPPING POINT

TAX CODE/ %

| ORDER DATE | ALTERATION ISSUE DATE |
|---|---|
| 02/06/04 | |

SHIP VIA: SEE BELOW
ALTERATION EFFECTIVE DATE

989-757-34(
J SANBORN   Buyer   S18
PURCHASING AGENT

BASE UNIT PRICE   PRICE (U/MULTIPLE M)

AT DELPHI'S WEBSITE, DELPHI.COM (BY CLICKING ON
"SUPPLIERS" IN THE HEADER AND THEN "SUPPLIER
COMMUNITY PORTAL", THEN CLICK ON "SUPPLIER STANDARDS"
THEN "ATTACHMENTS, FORMS, AND ADDITIONAL
INFORMATION" AND THEN "DGP SUPPLIER GUIDELINES
ATTACHMENT C GENERAL TERMS AND CONDITIONS").
SELLER ACKNOWLEDGES AND AGREES THAT IT HAS READ
AND UNDERSTANDS BUYER'S GENERAL TERMS AND CONDITIONS.
IF SELLER ACCEPTS THIS CONTRACT, SELLER WILL BE
DEEMED TO HAVE ACCEPTED THIS CONTRACT AND BUYER'S
GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY
WITHOUT MODIFICATION. ANY ADDITIONS TO, CHANGES
IN, MODIFICATIONS OF, OR REVISIONS OF THIS CONTRACT
(INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS)
WHICH SELLER PROPOSES WILL BE DEEMED TO BE REJECTED
BY BUYER EXCEPT TO THE EXTENT THAT BUYER EXPRESSLY
AGREES TO ACCEPT ANY SUCH PROPOSALS IN WRITING.

*TOOLS - PROPERTY OF & RIGHT TO AUDIT*
ANY TOOLS MANUFACTURED/PROCURED SPECIFICALLY FOR THE
PROCESSING OF THE PART(S) ON THIS PURCHASE ORDER ARE
PROPERTY OF DELPHI AND MUST BE PROPERLY IDENTIFIED AS
SUCH. ALL PURCHASE ORDERS FOR PROTOTYPE TOOLING
REQUIRE THAT BLUEPRINTS OF SAID TOOLING BE SUBMITTED

CONTINUE PAGE   9

ORIGINAL

SMD.03 01/15/2001



# PURCHASE ORDER: S3S26246

PAGE

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601
US

SHIP TO:
DELPHI SAGINAW STEERING SYS.
(3PI) PROTOTYPE OPERATIONS
2975 NODULAR DR
SAGINAW MI
48601
US

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
3900 HOLLAND RD.
DEPT. 14
SAGINAW MI
48601
US

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment
Item Identification Number(s) must be shown on Packing Slips
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

| ORDER DATE | SHIP VIA | 989-757-34( |
|---|---|---|
| 02/06/04 | SEE BELOW | J SANBORN |
| ALTERATION ISSUE DATE | | Buyer |
| ALTERATION EFFECTIVE DATE | S18 | PURCHASING AGENT |

| PAYMENT TERMS | ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE |
|---|---|---|---|---|---|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | A000855 | USER BRUCE WASLUSKY | | | | | | | | |

F.O.B. DESTINATION UNLESS OTHERWISE INDICATED
SHIPPING POINT

TO THE BUYER IMMEDIATELY AFTER THE TOOLING IS
COMPLETED (WHEN REQUESTED BY THE BUYER). TOOLS ARE
TO BE HELD AT SELLER'S PLANT AND ARE NOT TO BE MOVED
OR USED FOR ANY OTHER PURPOSE WITHOUT THE SPECIFIC
AUTHORIZATION OF THE BUYER. SELLER HEREBY AGREES
TO RETAIN THE TOOLS DESCRIBED ABOVE FOR A PERIOD OF
FIVE (5) YEARS THEREAFTER TO RETURN, TRANSFER TO
ANOTHER LOCATION, OR TO REMIT THE PROCEEDS OF THE
SALE FOR SCRAP TO THE DIRECTOR OF PURCHASING AS SO
INSTRUCTED BY THE BUYER. TO FACILITATE PROMPT
PAYMENT, PLEASE INCLUDE SET-UP AND/OR TOOLING
CHARGES ON YOUR PACKING SLIP WITH THEIR APPROPRIATE
SEQUENCE/ITEM NUMBER WHEN MAKING THE FIRST SHIPMENT
OF THE PARTS. DELPHI BUYER RESERVES THE RIGHT TO
AUDIT ALL PERTINENT DOCUMENTS RELATING TO THE GOODS
OR SERVICES COVERED BY THIS PURCHASE ORDER AND IF
REQUESTED BY THE BUYER, SELLER SHALL PROVIDE SUCH
DOCUMENTATION PROMPTLY. BUYER SHALL REIMBURSE SELLER
THE LESSER OF (I) THE AMOUNT SPECIFIED IN THIS
CONTRACT OR (II) SELLER'S ACTUAL COST FOR PURCHASED
MATERIALS AND SERVICES COVERED BY THIS PURCHASE ORDER
AND IF REQUESTED BY THE BUYER, SELLER SHALL PROVIDE
SUCH DOCUMENTATION PROMPTLY. TOOLING BREAKDOWN:
WHEN QUOTING TOOLS, GAGES OR FIXTURES PLEASE
PROVIDE A COMPLETE BREAKDOWN OF TOOLS WITH ITEMIZED
COSTS. REQUIREMENTS FOR THE BREAKDOWN ARE AS

CONTINUE PAGE    10

ORIGINAL

SNO620 01/15/2003



# PURCHASE ORDER: S3S26246

PAGE

DELPHI SAGINAW STEERING SYS.
PROTOTYPE OPERATIONS
SHIP TO: (3PT) 2975 NODULAR DR
SAGINAW MI
48601

US

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
PROTOTYPE OPERATIONS
DEPT. 14
3900 HOLLAND RD.
SAGINAW MI
48601

US

DELPHI SAGINAW STEERING SYSTEM
3900 HOLLAND RD.
SAGINAW MI
48601

TO:
VENDOR NUMBER 60-881-4059
H E SERVICES CO
ANCON PROTOTYPE MACHINE
1755 WICCO RD
SAGINAW MI
48601

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment
Item Identification Number(s) must be shown on Packing Slips,
Invoices, Attn. Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel
Post.

| ORDER DATE | ALTERATION ISSUE DATE | ALTERATION EFFECTIVE DATE | SHIP VIA | PURCHASING AGENT |
|---|---|---|---|---|
| 02/06/04 | | | SEE BELOW | J SANBORN S18  989-757-341 Buyer |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | | |
|---|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SHIPPING POINT | | | |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME | DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE U MULTIPLE M |
|---|---|---|---|---|---|---|---|---|---|
| A000855 | USER BRUCE WASLUSKY | | | | | | | | |

FOLLOWS: (1) ANY DESIGN/DEVELOPMENT COST MUST BE
ITEMIZED SEPARATE FROM TOOL COSTS. (2) ANY PROTOTYPE
TOOLS, GAGES OR FIXTURES THAT CAN BE USED IN
PRODUCTION LATER MUST BE IDENTIFIED AS PRODUCTION
INTENT TOOLS. THESE TOOLS WILL BE PAID BY PRODUCTION
AFTER PPAP. (3) QUOTES WITHOUT PROPER DOCUMENTATION
ARE SUBJECT TO NON-ACCEPTANCE. (4) PLEASE PROVIDE
A COPY OF THE PROPOSED TOOLING SOURCE/ QUOTE(S) WITH
YOUR QUOTE. ANY DEVIATION FROM THE ABOVE
REQUIREMENTS WILL ULTIMATELY DELAY ISSUANCE OF A
PURCHASE ORDER.

TERMS AND CONDITIONS JANUARY 2001, APPLY
OF WHICH SUPPLIER HAS RECEIVED A COPY.

ORIGINAL                    LAST PAGE

SMDI03 01/16/2003

EXHIBIT R

Revised June 24, 1999

## DELPHI AUTOMOTIVE SYSTEMS

## GENERAL TERMS AND CONDITIONS

*Delphi Automotive Systems seeks to exceed its customers' expectations. Delphi's suppliers are integral to achieving this objective, and Delphi hopes that its suppliers will recognize Delphi as their preferred customer. Delphi will establish high performance expectations for itself and its suppliers, measure performance and reward superior performance.*

## 1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). Seller acknowledges and agrees that it has read and understands these General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and these General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

## 2. SHIPPING AND BILLING

2.1 Shipping. Seller will (a) properly pack, mark and, ship goods as instructed by Buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) not charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, fees, etc.) unless otherwise expressly stated in this Contract, (d) provide packing slips with each shipment that identify Buyer's contract and/or release number and the date of the shipment, and (e) promptly forward the original bill of lading or other shipping receipt with respect to each shipment as Buyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires. The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods.

2.2 Billing. Seller will (a) accept payment based upon Buyer's Evaluated Receipt Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer. If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the Multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services. Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the absence of any liens, encumbrances and claims on such goods or services.

2.3 Delivery Schedules. Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract. Time is of

Revised June 24, 1999

the essence with respect to all delivery schedules Buyer establishes. Buyer will not be required to pay for any goods that exceed the quantities specified in Buyer's delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyer's delivery schedules. Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyer's delivery schedules. If Buyer determines that the requirements of Buyer's customers or market, economic or other conditions require changes in delivery schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other modification of this Contract.

2.4  Premium Shipments. If Seller fails to have goods ready for shipment in time to meet Buyer's delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyer's actions caused Seller to fail to meet Buyer's delivery schedules, in which case Buyer will pay any costs for premium shipment.

## 3. SPECIFICATION, DESIGN AND SCOPE CHANGES

Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes. Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyer's payment of reasonable costs of modifications to Seller's Equipment and Facilities (as defined in Article 16) necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes in Seller's cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

## 4. QUALITY AND INSPECTION

Seller will participate in Buyer's supplier quality and development program(s) and comply with all quality requirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its representatives and consultants to (i) inspect Seller's books and records in order to monitor Seller's compliance with this Contract and Seller's financial condition and (ii) enter Seller's facilities at reasonable times to inspect such facilities and any goods, materials and property that relate to this Contract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

## 5. NON-CONFORMING GOODS

Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections. Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyer's rejection of non-conforming goods (or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to

**Revised June 24, 1999**

arrange for the shipment of any non-conforming goods back to Seller at Seller's expense. Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods. Buyer's payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyer's right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

## 6. FORCE MAJEURE

If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such party's fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided, however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. During any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other available sources, in which case the quantities under this Contract will be reduced by the quantities of such substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the substitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide substitute goods from other available sources in quantities and at times Buyer requests and at the prices set forth in this Contract. If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without liability. Before any of Seller's labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Seller's facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

## 7. WARRANTY

7.1 <u>General</u>. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this Contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for nonconforming goods.

7.2 <u>Date and Time Processing</u>. Seller warrants and guarantees to Buyer and its customers that any products (including computer hardware, software, firmware, machinery and equipment) covered by this Contract must at all times accurately process, handle, calculate, compare and sequence date and time data from, into, within and between the 20th and 21st centuries, including leap year calculations.

7.3 <u>Warranty Period</u>. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract.

Revised June 24, 1999

## 8. INGREDIENTS AND HAZARDOUS MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

## 9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events:  (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract.  Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

## 10. TERMINATION FOR BREACH

Buyer may terminate all or any part of this Contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Seller's warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract; or (c) fails to assure timely and proper completion of services or delivery of goods.

## 11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing.  Upon such termination, Buyer may, at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition.  The purchase price for such finished goods, raw materials and work-in-process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent.  In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable.  Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination.  Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive

Revised June 24, 1999

termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

## 12. TECHNICAL INFORMATION

12.1  Exchange of Information.  Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyer's drafting and math data standards.  Such technical information will not be subject to any use or disclosure restrictions.  Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2  Waiver of Claims.  Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyer's customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may hereafter disclose in connection with the goods or services covered by this Contract.

12.3  Repair and Rebuild.  Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyer's customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4  Computer Programs and Written Works.  All works of authorship, including without limitation, software, computer programs, and databases (including object code, micro code, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing this Contract (separately or as part of any goods and components) are "works made for hire" and the sole property of Buyer.  To the extent that such works of authorship do not qualify under applicable law as works made for hire, Seller agrees to assign and assigns to Buyer all right, title and interest in any intellectual property rights in such works of authorship.

## 13. INDEMNIFICATION

13.1   Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services.    Seller waives any claim against Buyer that any such infringement arose out of compliance with Buyer's specifications.

13.2  Activities on Buyer's Premises.  Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyer's or Buyer's customer's premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyer's customer.

13.3   Product Liability .  Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether

Revised June 24, 1999

such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyer's specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than Seller.

## 14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyer's request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from or relating to Seller's noncompliance with this Article.

## 15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or as reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Seller's obligations or liabilities under this Contract.

## 16. SELLER'S EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract ("Seller's Equipment"). Seller will insure Seller's Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Seller's Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Seller's Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Seller's Equipment. This option will not apply to the extent that Seller's Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Buyer's right to exercise this option is not conditioned on Seller's breach or Buyer's termination of this Contract or upon payment of any other amounts due under this Contract.

## 17. BUYER'S PROPERTY

17.1   Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part ("Buyer's Property"), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyer's Property (such as tooling), Seller will purchase and pay for such Buyer's Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyer's Property (such as tooling) without separate or additional payment or reimbursement by Seller,

Revised June 24, 1999

Seller acknowledges and agrees that Buyer's issuance of this Contract is good and sufficient consideration for such Buyer's Property and that title to such Buyer's Property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyer's Property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyer's Property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyer's ownership of Buyer's Property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment to or incorporation into Buyer's Property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyer's Property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyer's Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyer's Property for work performed on such property or otherwise. Goods manufactured based on Buyer's drawings and/or specifications may not be used for Seller's own use or sold to third parties without Buyer's express written authorization.

17.2  Seller's Duties with Respect to Buyer's Property.  While Buyer's Property is in Seller's possession and until Seller delivers Buyer's Property back to Buyer, Seller bears the risk of loss and damage to Buyer's Property. Seller will be responsible for the cost of repairing or replacing Buyer's Property if it is damaged or destroyed regardless of cause or fault. Seller will at all times: (a) regularly inspect, maintain in good condition, and repair Buyer's Property at Seller's own expense, (b) use Buyer's Property only for the performance of this Contract, (c) deem Buyer's Property to be personal property, (d) conspicuously mark Buyer's Property as the property of Buyer and maintain such markings, (e) not commingle Buyer's Property with the property of Seller or with that of a third person, (f) not move Buyer's Property from Seller's premises without Buyer's written approval, and (g) use Buyer's Property in compliance with Buyer's or the manufacturer's instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Seller's premises at all reasonable times to inspect Buyer's Property and Seller's records with respect thereto.

17.3  Return of Buyer's Property.  Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyer's Property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Seller's premises and take possession of any and all of Buyer's Property.  Upon Buyer's request and in accordance with Buyer's instructions, Buyer's Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Seller's plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyer's Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyer's Property to the location Buyer designates.  If Seller does not release and deliver any Buyer's Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Seller's premises, with or without legal process, and take immediate possession of Buyer's Property.

17.4  Disclaimer of Warranties.  Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyer's Property nor the manufacturer's agent nor a dealer therein, (ii) Buyer is bailing Buyer's Property to Seller for Seller's benefit, (iii) Seller is satisfied that Buyer's Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYER'S PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyer's Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any

Revised June 24, 1999

loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits or any other indirect, special or consequential damages.

17.5 <u>Development, Engineering And Consulting Services</u>. Engineering, consulting or development services ("Development Services") funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property ("IP") shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services ("Developed IP") to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

## 18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyer's service and replacement parts requirements to Buyer's customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyer's and its customers' service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the "Post-Production Period"), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyer's service activities.

## 19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

## 20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licensees or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

## 21. SETOFF AND RECOVERY

**Revised June 24, 1999**

With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, Buyer may (i) setoff such obligations against any sums owing to Seller or Seller's affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Seller's affiliates by Buyer or Buyer's affiliates.

## 22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials unless Buyer consents in writing.

## 23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Seller's obligations under this Contract.

## 24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Seller's prior written consent. Seller may not assign or delegate its rights or obligations under this Contract without Buyer's prior written consent.

## 25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

## 26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

## 27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Contract will remain in full force and effect.

## 28. RIGHT TO AUDIT AND INSPECT

**Revised June 24, 1999**

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Seller's administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Buyer has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Seller's performance of this Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

## 29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of Buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyer's claims, rights, or remedies.

EXHIBIT S

**Telefax Nr.** 001 810 743 8400
Telefax No.

**EX·CELL·O**

**An Firma** H.E.Services
To company   Flint, MI 48507

**EX-CELL-O GmbH**
Werkzeugmaschinen
Sondermaschinen

Salacher Straße 93
D-73054 Eislingen/Fils

**Zu Händen** Mr. Richard E. Everden
Attn.           Corporate Controller

Postfach 1161
D-73048 Eislingen/Fils

Telefon (07161) 805-0
Telefax (07161) 805-223

## Telefax

**Seitenanzahl** 7          **Von** V-I/G. Kieffer          **Durchwahl** 299
No. of pages              From                              Direct call

**Datum** Aug. 12, 2002                                      **e-mail**
Date                                                          Verkauf-Innendienst@ex-cell-o.de

**Betreff** Your order no. 21249 of Dec. 14, 1999
Subject   Grinding Machine XG 690
          Our comm.-no. 401 125

Dear Mr. Everden,

we refer to your letter of July 19, 2002.

According to the attached letter dd. Oct. 25, 2001 signed by Mr. Joseph A. Stearns
(Vice President Engineering and Manufacturing) and our response of Oct. 26, 2001
we have a very clear agreement that the second payment rate of 20 % i.e. US $
123.628,-- is due 120 days after the shipping date and the safe arrival of machine in
Saginaw, Mi. and payable without any deductions. We assume that the agreement
is still valid.

The machine arrived at your plant on Dec. 13, 2001, which means that the 120 days
were over on April 13, 2002. Since then we have been waiting for the payment and
have a daily loss of interest. Therefore we kindly ask you once again to arrange the
payment now until latest August 23, 2002.

We agree that the reasons for the delay are very complex. There was a lot of
development work we had to do together with your people and also the FANUC
Control which we had to use on your special request was one of the reasons for the
delay.
Please do bear in mind that considerable costs had been caused to our company by
paying the flight tickets for two of your engineers as well as providing you with a
service engineer for a period of 8 weeks (our letter from July, 27, 2001). Further
money had been spend on the development work referred to above. Therefore as
already mentioned in our letter from March 16, 2001 we disagree with paying the
costs you mentioned again in your letter from July 19, 2002.

Bei schlechtem oder unvollständigem Empfang, bitten wir um Ihren Rückruf.
In case of bad or incomplete transmission please phone us.

**EX-CELL-O GmbH**
Werkzeugmaschinen
Sondermaschinen

Blatt 2

In as far as the last payment rate of 10 % is concerned it is agreed upon that these are due after final acceptance under the terms and conditions of the original P.O.

As far as we are informed by your operators and engineers the machine is working now to your full satisfaction and for you as a prototype manufacturer the machine perfectly suits your specific needs.

For this reason the last payment rate will be due and must be paid, too. However, we are ready to agree to a deduction of the drawing conversation costs as follows:

| | |
|---|---|
| Final Payment rate: | US $ 61.814,-- |
| Less your invoice no. 10000028684-HES  dd.  3/21/02 | US $ 15.750,-- |
| Due for payment by the 23 rd. of Aug., 2002 | US $ 46.064,--. |

Apart from the fact that we already paid US $ 5.000,-- in November 2001 we would like to point out that there are some drawings incl. in the total figure, that are not as complex as that they would justify the rate of US $ 125,-- each. Moreover we can not agree to pay the invoice of US $ 4.250,--. As this amount is to our favour (as mentioned in the P.S of our telefax from Dec. 12., 2001) and we did not know about the agreement between you and Delphi stated in the memo Dec. 13, 2001 (and now see it for the first time), we disagree with this agreement that we clearly did not take part in. Regarding your invoice no. 10000029060-HES dd. 3/29/02 in the amount of US $ 5.375,-- please provide us with a list showing which drawing numbers you have converted. After reception of the list we will check it and if it is correct you can deduct it also from the final payment rate in accordance with the agreement
of Dec. 3., 2001.

In order to assure ongoing understanding between our two companies and avoid the entrance of third parties we suggest this mutual and fair agreement that we think is acceptable for both sides.

We would appreciate to receive your positive reply and remain

Sincerely,
EX-CELL-O GmbH

i. V.                                i. V.
U. Stuhlmüller                 G. Kieffer

**EX-CELL-O GmbH**
Werkzeugmaschinen
Sondermaschinen

Blatt 3

Encl.

| | | |
|---|---|---|
| **Telefax Nr.**<br>Telefax No. | 001 810 743 8400 | **EX·CELL·O** |
| **An Firma**<br>To company | H.E.Services<br>Flint, MI 48507 | **EX-CELL-O GmbH**<br>Werkzeugmaschinen<br>Sondermaschinen |
| | | Salacher Straße 93<br>D-73054 Eislingen/Fils |
| **Zu Händen**<br>Attn. | Mr. Richard E. Everden<br>Corporate Controller | Postfach 1161<br>D-73048 Eislingen/Fils |
| | | Telefon (07161) 805-0<br>Telefax (07161) 805-223 |

## Telefax

| | | | | | |
|---|---|---|---|---|---|
| **Seitenanzahl**<br>No. of pages | 1 | **Von**<br>From | V-I/G. Kieffer | **Durchwahl**<br>Direct call | 299 |
| **Datum**<br>Date | Sept. 16, 2002 | | | **e-mail**<br>Verkauf-Innendienst@ex-cell-o.de | |
| **Betreff**<br>Subject | Your order no. 21249 of Dec. 14, 1999<br>Grinding Machine XG 690<br>Our comm.-no. 401 125 | | | | |

Dear Mr. Everden,

we refer to your letter of Sept. 06, 2002 and Sept. 10, 2002.

Once again we like to point out that we have done in the past everything to satisfy your company. This will probably confirmed from all the engineering people (Ancon, Universal Inspection, H.E.S.) worked together with us on this project since more than two years.

We also have spent a lot of money in this project and have made an enormously lost in this business.

Therefore we are sorry to inform you that we are not able to agree to your proposal to pay the outstanding amount in monthly rates of US $ 10.000,00.

We like to draw your attention again to our Telefax dd. Aug. 12, 2002. Immediately after receipt of the US $ 123.628,-- which are confirmed by Mr. Joseph A. Stearns and your approval that the final payment rate of US $ 61.814,00 less your invoice no-10000028684-HES dd 3/21/02 of US $ 15.750,00 = US $ 46.064,00 will be paid until the End of September 2002 we will continue with assistance in the well reliable manner as done up to now.

We look forward to your early reply and final acceptance of the before mentioned.

Best regards,
EX-CELL-O GmbH

i. V. .                    i. V.
U. Stuhlmüller          G. Kieffer

Bel schlechtem oder unvollständigem Empfang, bitten wir um Ihren Rückruf.
In case of bad or incomplete transmission please phone us.

**EX-CELL-O GmbH**
Werkzeugmaschinen
Sondermaschinen


Blatt 2



Encl.

| | | |
|---|---|---|
| **Telefax Nr.**<br>Telefax No. | 001 810 743 8400 | **EX·CELL·O** |
| **An Firma**<br>To company | H. E. Services<br>Flint, Mi 48507 / USA | **EX-CELL-O GmbH**<br>Werkzeugmaschinen<br>Sondermaschinen |
| | | Salacher Straße 93<br>D-73054 Eislingen/Fils |
| **Zu Händen**<br>Attn. | Mr. Mark G. Lesperance<br>COO & CFO | Postfach 1161<br>D-73048 Eislingen/Fils |
| | | Telefon (07161) 805-0<br>Telefax (07161) 805-223 |

## Telefax

| | | | | | |
|---|---|---|---|---|---|
| **Seitenanzahl**<br>No. of pages | 3 | | **Von**<br>From | V-I/ki | **Durchwahl** 299<br>Direct call |
| **Datum**<br>Date | Jan. 02, 2003 | | | | **e-mail**<br>Verkauf-Innendienst@ex-cell-o.de |
| **Betreff**<br>Subject | Your order no. 21249 dd. 12/14/99<br>(1) EX-CELL-O Grinding Machine XG 690<br>Our comm.-no. 401 125 | | | | |

Dear Mr. Lesperance,

We refer to your Telefax dated December 11, 2002.

Once again we like to draw your attention to the agreement of Oct. 25, 2001 (copy attached) we have made with your former Vice President Engineering and Manufacturing,
Mr. Joseph A. Stearns. In this agreement it is very clearly mentioned that the second payment rate of 20 % i.e. US $ 123.628,-- is due 120 days after the shipping date and the safe arrival of machine in Saginaw, Mi. and payable without any deductions.

Based on this agreement we have shipped the machine, we have made the training of your people and supported your personal a very long time. So far we have fulfilled our duties completely but H.E.S did not release the second payment rate as agreed.

As far as we are informed by your operators and engineers the machine was working to your full satisfaction and perfectly suits your specific needs. Moreover we have always given a prompt reply in case of any questions concerning the machine and the relationship with your engineering department has always been a very positive and constructive one. As the problem with the spindle came up in mid-October 2002 we have pointed out that we will provide you with service support immediately if H.E.S. has fulfilled their payment obligation. Therefore it is not correct to say that EX-CELL-O was unwilling to make the necessary repairs or did not provide you with any help. We are sure that this 4 month, or longer delay in getting

**EX-CELL-O GmbH**
Werkzeugmaschinen
Sondermaschinen

sheet 2

the machine repaired is not the way it should be and it should never happen in the future. We believe that a good relationship is the best economical way to save a lot of time and costs if any machine problems or the possibilities of grinding new workparts can be discussed between your and our engineering department .Therefore we kindly ask you once again to fulfil your part of the agreement and arrange the payment of the US $ 123.628,-- until the end of this month.

In view of a further good relationship we like to thank you in advance for your positive reply.

Best regards,
EX-CELL-O GmbH

i.V                          i. V.
U. Stuhlmüller               G. Kieffer

Encl.

EXHIBIT T

## Kramer, Loren D

| | |
|---|---|
| **From:** | Waslusky, Bruce |
| **Sent:** | Thursday, March 27, 2003 9:37 AM |
| **To:** | Martin, Mark ; Sanborn, Jill K; Kramer, Loren D |
| **Subject:** | FW: Follow-Up to March 11th. Meeting with Bob Backie & Dave Stearns |

FYI

-----Original Message-----

| | |
|---|---|
| **From:** | Waslusky, Bruce |
| **Sent:** | Wednesday, March 26, 2003 3:30 PM |
| **To:** | McGregor, Dave |
| **Cc:** | 'robertb@heservices.com'; 'rknizaky@heservices.com'; 'markl@heservices.com'; 'daves@heservices.com' |
| **Subject:** | FW: Follow-Up to March 11th. Meeting with Bob Backie & Dave Stearns |

After over two weeks since our meeting with Backie/Stearns, there appears to be no significant progress in improving any of the issues we reviewed in the meeting. In addition, H.E. is now late on delivery of the first order that was given them in a series of four to determine how effective they will be in handling our future requirements. This is very disappointing. Please advise on what our next step should be. Thanks, Bruce.

-----Original Message-----

| | |
|---|---|
| **From:** | Martin, Mark |
| **Sent:** | Wednesday, March 26, 2003 10:48 AM |
| **To:** | Waslusky, Bruce |
| **Subject:** | RE: Follow-Up to March 11th. Meeting with Bob Backie & Dave Stearns |

Bruce,

Here is a rough draft of my response. Please let me know if I missed anything or if you want something changed. Thanks

There has been very little information given to me regarding these issues. I'll go through each one and give you an update based on what information I have. Dave Stearns has focused his entire time on breaking down the maching code. I left voice mails for him to call me but he never returned them. When I finally talked to him he told me he has not been checking his voice mail during this time.

1. There is still difficulty in this area. Zack is trying to coordinate between the three but it doesn't appear to be much better.

2. The only thing I know is that Jill negotiated some new pricing on both the design and build cost. There has been nothing done to try to improve this process.

3. Dave Stearns said that Zack at Ancon is the single point of contact. He has been working on the day to day projects and quotes but says he has no information beyond that. He submitted an invoice for payment on the Excello machine on Tuesday. I told him we couldn't pay it until we settle on a total amount. His response was he was just doing what he was told. It doesn't sound like he is assuming responsibility for the whole program rather just his part.

4. After our meeting with Mr. Backie, Dave Stearns, Lee Lambert, and myself met to develop a strategy to get this program going. Dave said he was going to transfer an engineer from Flint to be responsible for the Excello and have Phil train three new operators. He would then transition Phil back to Ancon. Dave did bring in the engineer to work on the machine code with him, but told me yesterday that as soon as they get a good part off the machine he would be going back to Flint. He also told me that Phil was going to stay on and would not be going back to Ancon. As far as I know there has been no additional training done either. So it appears the bottom line is that nothing has changed. They think they are close to figuring out the programming issue but to this date they have not made a good part yet.

5. As of my conversation with Dave on Monday there will be no onsite engineering support, only on call. I have heard nothing about the outside engineer they told us they hired. I don't think he has been involved since they brought the person in from Flint. I don't know for sure.

6. I have heard nothing concerning grinder burn checks.

7. They have been working on this program since mid February and I have no idea on how many parts they have burned up. On the new orders we have issued we ordered 20 pieces and told them we needed to net 15.

8. I have received minimum communication from Zack and none from Dave except last Tuesday when I tracked him down.

9. They are behind on the delivery schedule they sent us and we gave out at both our meetings with H.E. management. The inner races were due 3/19/03. I received no update until I asked and then Zack sent me one on 3/20/03 that said nothing except they were waiting on an inspection program. If you just looked at that letter you would think I was holding up the whole show. The truth of the matter is that the machine is nowhere ready to run these parts. I have had Coordinate Measurement working higher priorities until Ancon was ready to grind these parts. They have had the program to check the ball groove path since last Monday and will have the contact angle program today. I called Zack Monday and asked him for a more accurate update in writing. He promised me he would have it to me yesterday but I have not seen anything yet.

10. We have issued the second purchase order and those parts are due to us on April 21, 2003. The third RFQ is ready for pickup today and we will be issuing the last order either the end of this week or the beginning of next.

-----Original Message-----
**From:** Waslusky, Bruce
**Sent:** Tuesday, March 25, 2003 10:36 AM
**To:** Martin, Mark
**Subject:** Follow-Up to March 11th. Meeting with Bob Backie & Dave Stearns

Please advise me as to the status of those talking points that we reviewed with Robert Backie and Dave Stearns on March 11th. If there is any changes, either positive of negative pertaining to our situation concerning each of these issues please attach that update so I can inform the larger group as to our progress or lack of:

    1. Advised H.E. that they are suffering from internal paralysis in that they (Ancon/H.E./Universal/H.E. Eng.) do not support    each other and that lack of support is effecting the Excello performance.

    2. Timing for tooling is always an issue. Takes longer to just get a quote on tools than we have to provide parts to the customer. Need flexible tooling that can be used for multiple size ranges so we don't have to re-invent the wheel every time we    have a requirement.

    3. Need a single point contact for this project. Every issue seems to have a different contact or responsible person.

    4. There is a lack of programing support for Excello. H.E. agreed to provide an Engineer/Operator? Status?

    5. There is a lack of engineering support internal to H.E. to support the Excello project.

    6. There is no gaging at the Excello to check blanks provided by Ancon.

    7. We waste way too many parts on set-up to run the Excello.

    8. Communication between our companies has deterioriated. Weekly meetings cancelled because of no progress. No plan to    improve communications?

    9. H.E. has a current requirement that a promise was given for delivery. That date has came and went, have no update as to    whether they performed or not.

    10. A series of orders were to be issued at a regular interval that would represent normal requirements and lead times. Have    these orders been issued? Have we passed any of the due dates? What's our status?