# EXHIBIT 13

Victor J. Mastromarco, Jr. (Mich Bar No P34564)
THE MASTROMARCO FIRM
Counsel to H.E. Services Company &
Robert Backie
1024 North Michigan Avenue
Post Office Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

DELPHI CORPORATION, et al.,

Debtors.

Chapter 11
Case No. 05-44481 (RDD)
(Jointly Administered)

## CREDITOR H. E. SERVICES AND ROBERT BACKIE'S ANSWERS TO DEBTOR'S FIRST INTERROGATORIES

Now comes the Creditors, H.E. Services and Robert Backie, by and through their attorneys, THE MASTROMARCO FIRM and Answers Debtor's First Interrogatories as follows:

### INTERROGATORIES

1. Identify each and every Communications between Delphi and the Claimants regarding H.E. Services' minority status, including but not limited to, the date of each Communication, every person with knowledge of each Communications, and the substance of each Communication.

1

**ANSWER:** The Creditors object as to form and foundation. The Creditors also object to the overly burdensome scope of Debtor's interrogatory. Without waiving said objections and in the spirit of cooperation the Creditors submit the following in response:

The Creditors first communicated their minority status to Debtor when they obtained the status in the early 1990's. In addition to the numerous conversations with Delphi personnel through the years, copies of the minority status was provided with each quote that was submitted. Creditors also attended annual conventions conducted by Debtor for its minority subcontractors. To the extent that quotes still exist and are in the possession and/or control of the Creditors those quotes are attached as Exhibit 1 to these interrogatories. Creditors are out-of-business so documents were lost during the shutdown.

Individuals with knowledge include Robert Backie, Robin Schembri, Tim Fornier. Other individuals who may claim to have knowledge may include Waslusky, Dawes and Taylor.

    2.    With respect to each contract upon which Claimants' base any of their claims, including the contracts alleged in the Proof of Claims, Amended Complaint, Response, Supplemental Response, Back Affidavit, or exhibits to the any of the foregoing, identify:

        i.    the contract itself, including but not limited to, the purchase order number(s) compromising the contract and the date of the contract;

2

    ii.    the person(s) with knowledge regarding the negotiation, performance and alleged breach of the contract; and

    iii.    the first date on which Debtor's allegedly breached the contract.

**ANSWER:** The Creditors object as to form and foundation. The Creditors also object to the overly burdensome scope of Debtor's interrogatory. Without waiving said objections and in the spirit of cooperation the Creditors submit the following in response:

i.    In addition to oral contracts which were not reduced to a written form, the Creditors direct the Debtor to the documents which were attached to the Proofs of Claims, the Response and Supplemental Response. With regards to purchase numbers, to the extent in which they are in Creditors' possession, those documents appear in the documents attached to Creditors' Supplemental Response.

ii.    In addition to Robert Backie, other individuals who may claim to have knowledge include: Richard Bolt, Joe Stearns, John Chisa, Pat Harmon, Tony Perna, Eric Jacobs, David Stearns, Tim Fortier, Gerry Haller, Greg Novak, Debtors' Juarez & Saginaw Purchasing Departments, Waslusky, McGregor, Debtors' Saginaw Prototype Department, and Dawe as well as the Debtors' Saginaw Manufacturing Department.

iii.    Creditors hereby direct Debtors' attention to the Amended Complaint as well as the documents attached to Creditors' Supplemental Response.

3

3. With respect to each of the Relationships, identify the total amount of Claimaints' alleged damages and the basis for calculating those damages, including bit not limited to:

   i. the amount of lost profits associated with each Relationship, if any, and how that amount was calculated;

   ii. the amount of Claimants' loss related to the investment in the facility associated with the Juarez Relationship and how that amount was calculated;

   iii. the amount of Claimants' loss associated with obtaining A2 LA Laboratory Certifications and inspection equipment in connection with the Juarez Relationship and how that amount was calculated;

   iv. the amount of Claimants' loss related to he investment in the facility associated with the Flint Relationship and how that amount was calculated;

   v. the amount of damages associated with the alleged discrimination and how that amount was calculated;

   vi. the amount of damages associated with each alleged misrepresentation or bad faith promise and how that amount was calculated;

   vii. the amount of damages associated with each alleged breach of contract and how that amount was calculated;

    vii.    the amount of any other costs, expenses, losses or damages Claimants' incurred with respect to each Relationship, if any, a description of each and how those amounts were calculated; and

    ix.    any documentation supporting all damages calculations;

**ANSWER:** The Creditors object as to form and foundation. The Creditors also object to the overly burdensome scope of Debtor's interrogatory. Without waiving said objections and in the spirit of cooperation the Creditors submit the following in response:

i.    See Amended Complaint as well as Creditors' Supplemental Response and attached exhibits. The Creditors further aver that in the context of the H.E. Services Flint Manufacturing Division the loss in profits exceeds $10,600,000.00 which has been determined utilizing the orders and terms agreed upon and the orders and terms which were subsequently imposed upon the Creditors by Debtors. The Creditors further aver that in the context of the Ex-Cell-O Grinding Machine the loss in business exceeds $80,010.00 which has been determined utilizing the agreed upon orders and terms and the orders and terms which materialized as a result of Debtors' wrongful actions.

ii.    See Amended Complaint. The lost investment was determined by calculating the investment which were necessarily incurred pursuant to an agreement with Debtors for agreed upon business and which were lost

5

and/or not usable when the agreed upon business was not provided to the Creditors.

iii. See response to ii.

iv. See Amended Complaint. The Creditors further aver that $227,950.00 was lost each year for required rent along with $25k in triple net. Also losses for amortized tooling repairs and accommodations exceed $1,850,000.00. The lost investment was determined by calculating the investment which were necessarily incurred pursuant to an agreement with Debtors for agreed upon business and which were lost and/or not usable when the agreed upon business was not provided to the Creditors.

v. See i through iv. See also Proof of Claim, Creditors' Response and Supplemental Response as well as attached Exhibits.

vi. See i. through iv. See also Proof of Claim, Creditors' Response and Supplemental Response as well as attached Exhibits.

vii. see i. through iv. See also Proof of Claim, Creditors' Response and Supplemental Response as well as attached Exhibits.

viii. see i. through iv. See also Proof of Claim, Creditors' Response and Supplemental Response as well as attached Exhibits.

ix. See Proof of Claim, Creditors' Responses, Supplemental Response as well as attached Exhibits. See also documents produced pursuant to the request to produce.

4. Identify all of the companies that were at any point owned in whole or in part by any of the Claimants, including any partially or wholly owned subsidiaries of H.E. Services.

**ANSWER:** The Creditors object as to form and foundation. The Creditors also object to the overly burdensome scope of Debtor's interrogatory. Without waiving said objections and in the spirit of cooperation the Creditors submit the following in response:

H.E. Services had subsidiaries as identified in Creditors' Supplemental Response in addition to the Flint Manufacturing Division as well as several facility management locations.

Robert Backie in addition to H.E. Services, has had ownership interest in Tech Central, Ancon real estate.

Richard Janes, in addition to H.E. Services, is believed to have had an ownership interest in Troy Design.

5. Identify all directors and officers of H.E. Services since 1995 as well as their title, role, and tenure at H.E. Services.

**ANSWER:** Robert Backie - President & CEO - 1995 to present

Dick Janes - Chairman - 1995 to Approx. April 2004

Lawrence Heitch - Secretary - 1995 to Approx. April 2004

7

Timothy Fortnier - President - Approx. 1995 to 2003

Wesley Yee - V.P. & Controller - Approx. 1997 to 2002

Joe Sterns - V.P. Manufacturing - Approx. 1997 to 2002

David Sterns - V.P. - Approx. 2002 to April 2004

Pat Harmon - Director of Manufacturing - Approx. 1988 to April 2004.

DATED: May 18, 2007

ROBERT BACKIE, President