# EXHIBIT 15

```
                                                                    1
 1
 2   UNITED STATES BANKRUPTCY COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   Case No. 05-44481
 5   - - - - - - - - - - - - - - - - - - - - -x
 6   In the Matter of:
 7
 8   DELPHI CORPORATION,
 9
10          Debtor.
11
12   - - - - - - - - - - - - - - - - - - - - -x
13
14              U.S. Bankruptcy Court
15              One Bowling Green
16              New York, New York
17
18              March 1, 2007
19              10:13 a.m.
20
21   B E F O R E:
22   HON. ROBERT D. DRAIN
23   U.S. BANKRUPTCY JUDGE
24
25
```

                                                                    2

1    CLAIMS Objection Hearing Regarding Claim of Eva Orlik

2

3    CLAIMS Objection Hearing Regarding Claim of Joseph Reno

4

5    CLAIMS Objection Hearing Regarding Claim of DBM Technologies,

6    LLC

7

8    CLAIMS Objection Hearing Regarding Claim of Edith James

9

10   CLAIMS Objection Hearing Regarding Claim of Freddie L. Johnson

11

12   CLAIMS Objection Hearing Regarding Claim of Terrence Evans

13

14   CLAIMS Objection Hearing Regarding Claim of Thomas

15   Wimsatt/Donna Wilson

16

17   CLAIMS Objection Hearing Regarding Claim of Harold Woodson

18

19   CLAIMS Objection Hearing Regarding Claim of LaborSource 2000,

20   Inc.

21

22

23

24   Transcribed By:  Esther Accardi

25

24

1   purchase order nor this agreement create any obligation of
2   Delphi to purchase, obtain or pay for any minimum number of
3   hours of any personnel.  And supplier and Delphi agree that
4   Delphi is under no such obligation.  In addition, nothing
5   contained in this agreement limits in any manner Delphi's right
6   to reduce Delphi's requirements of supplier or to terminate the
7   purchase order in accordance with its terms including without
8   limitation Delphi's termination right in accordance with
9   Section 13 of the Delphi Terms and Conditions January 2001,
10  which have been and remain incorporated in the purchase order
11  by reference."  In addition, in paragraph 3 of the settlement
12  agreement the supplier released Delphi of all claims arising
13  and relating in any way to the purchase order based upon acts
14  or occurrences at any time prior to the date of the settlement
15  agreement.  Finally, the supplier, in paragraph 2, ratified and
16  confirmed its obligations to provide the services in accordance
17  with terms of the purchase order, as amended, in accordance
18  with this agreement and represented and warranted to Delphi
19  that the supplier had no offsets or defenses to the obligation
20  of supplier to perform under the purchase order, as amended, in
21  accordance with the agreement.
22           Consequently, it appears to me crystal clear that,
23  consistent with the bid and the purchase order, the parties
24  reconfirmed in their amendment to the purchase order that their
25  contractual arrangement was a requirements contract and that

1   among other things Delphi had no obligation to pay for any
2   minimum number of hours to the supplier.  And, of course, that
3   is the basis for the supplier's claim.
4             As set forth in the Little Caesar's case, the parol
5   evidence rule as applied in Michigan excludes the admission of
6   parol evidence where the parties' intent that a written
7   instrument be the complete expression of their agreement is
8   clear on the face of the agreement.  That is the case here, not
9   only based on the terms that I have read but also by the
10  integration provisions and no-modification provisions of the
11  agreement which, again, the Little Caesar's case refers to as
12  barring parol evidence.  See Little Ceasar's, 210 F.3d at 656-
13  57.  Such a requirements contract is recognized as valid and
14  enforceable in or under Michigan law, even if no requirements
15  arose because of cancellation or termination, see J&B Sausage
16  Co. v. Dep't of Mgmt & Budget, Docket No. 259230, 2007 WL
17  28409, (Mich. Ct. App. Jan. 4, 2007), as well as Tigg Corp. v.
18  Dow Corning Corp., 962 F.2d 1119, 1126 (3d Cir. 1992), and
19  Neofotistos v. Harvard Brewing Co., 341 Mass. 684, 689 (1961)
20  for other constructions of requirements contracts.  The only
21  limitation on that rule is that the contracting party act in
22  good faith in respect of its requirements.  However, the
23  evidence here does not show any absence of good faith by DAS.
24  Indeed, I don't believe an absence of good faith is alleged.
25  Moreover, the letter dated March 3, 2005 by Mr. Sharplee to Mr.

26

1 Robins states, among other things, "perhaps there was nothing
2 that could have been done to prevent these events from
3 occurring from Delphi's perspective," that is the losses that
4 occurred because of the overall nature of the project. So I
5 conclude that Delphi acted in good faith and that its
6 requirements contract should be enforced pursuant to its terms.
7 And, in fact, it was performed according to its terms, there
8 being no dispute that Delphi has paid and performed all of its
9 obligations under the agreement.
10              LaborSource alleges that the 2004 amendment to that
11 agreement in the settlement agreement and amendment was a
12 contract of adhesion and therefore should be disregarded.
13 Again, except for the evidence in the record as set forth in
14 the whereas clauses in the 2004 amendment that LaborSource was
15 experiencing financial difficulties, there's no other evidence
16 that DAS was acting in bad faith or in an unconscionable way in
17 not paying LaborSource in excess of the amounts that it had
18 agreed to pay LaborSource under the contracts. Consequently, I
19 conclude that the amendment and settlement agreement is not a
20 contract of adhesion and is enforceable, and, further, that it
21 is merely a confirmation except for the changes to the amounts
22 that Delphi would pay (those changes being to LaborSource's
23 benefit), of the underlying requirements nature of the contract
24 between the parties.
25              Finally, I note that even if there were ambiguities