UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                           :

    In re                                                             :      Chapter 11
                                                                      :
DELPHI CORPORATION, et al.,           :      Case No. 05-44481 (RDD)
                                                                      :
                        Debtors.    :      (Jointly Administered)
                                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 AND FED. R. BANKR. P. 2014 AND 3017
AUTHORIZING RETENTION OF FINANCIAL BALLOTING GROUP LLC
AS SPECIAL PLAN BALLOTING, SOLICITATION, AND
<u>INFORMATION AGENT FOR PUBLICLY-HELD SECURITIES</u>

("FBG RETENTION ORDER")

Upon the application, dated September 4, 2007 (the "FBG Retention Application"), of Delphi Corporation, and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for an order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014 and 3017 authorizing the Debtors' retention of Financial Balloting Group LLC ("FBG") as the Debtors' special plan balloting, solicitation, and information agent for publicly-held securities on the terms and conditions of that certain Agreement (the "FBG Agreement"), a copy of which is attached hereto as <u>Exhibit 1</u>, which services will facilitate the solicitation and tabulation of votes on the plan of reorganization; and this Court having determined that the relief requested in the FBG Retention Application is in the best interests of the Debtors, their estates, stakeholders, and other parties-in-interest; and it appearing that proper and adequate notice of the FBG Retention Application has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The FBG Retention Application is GRANTED.

2. FBG shall, on a monthly basis, submit invoices to the Debtors for services rendered, with a copy to the Office of the United States Trustee.

3. The fees and expenses of FBG incurred in the performance of the services set forth in the FBG Retention Application and the FBG Agreement shall be treated as an administrative expense of the Debtors' chapter 11 cases and be paid by the Debtors in the ordinary course of business without further order of this Court and without the need to file and serve a formal application for payment. All requirements under sections 330 and 331 of the Bankruptcy Code are hereby waived.

4. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

5. The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is satisfied by the FBG Retention Application.

Dated:   New York, New York
         September ___, 2007

                                                  UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**FBG Agreement**

FINANCIAL BALLOTING GROUP LLC
757 THIRD AVENUE, 3RD FLOOR
NEW YORK, NY 10017

August 23, 2007

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098
Attn:   David M. Sherbin, Esq., Vice President,
           General Counsel and Chief Compliance Officer

### AGREEMENT

This Agreement sets forth the terms and conditions under which Financial Balloting Group LLC ("FBG") will serve Delphi Corporation ("Delphi") as Plan Balloting, Solicitation Mailing, and Information Agent for Publicly Held Securities.

### Assumptions

We are making the following assumptions about public securities entitled to vote and/or receive notice:

- There are six issues of public securities, including:

    - five issues of public debt (2006 Notes, 2009 Notes, 2029 Notes, 2013 Notes and ToPRs Note); and

    - one issue of public equity, held both by beneficial holders in "Street" name and holders in registered record form;

### 1. Balloting and Tabulation Services

1. Advise the Debtors and their counsel regarding all aspects of the plan solicitation to holders of publicly held securities, including timing issues, solicitation issues and documents related to the same, and voting and tabulation procedures.

2. Review the voting portions of the disclosure statement, ballots, and other documents, particularly as they may relate to holders of publicly held securities.

3. Work with the Debtors to request appropriate information from The Depository Trust Company ("DTC") and the trustee(s) under the public debt issues to obtain appropriate information necessary to solicit the votes of holders of publicly held securities.

4. With respect to any registered holders of securities entitled to vote, place the solicitation package into envelopes to be addressed by FBG, include return address envelopes addressed to FBG for the return of the completed ballots, and implement the mailing of solicitation packages.

5. Coordinate the distribution of solicitation packages to holders in Street name of any voting securities by forwarding the appropriate solicitation packages and instructions to the appropriate departments and personnel of the banks and brokerage firms holding the securities (or their agent), who in turn will forward it to the beneficial owners for voting and follow up with banks and brokers to help ensure compliance with FBG's instructions.

6. Distribute copies of the master ballots and instructions (after the initial distribution of materials) to the appropriate nominees so that firms may cast votes on behalf of beneficial owners of publicly-held securities and follow up with nominees to ensure compliance with FBG's instructions.

7. Prepare a certificate of service for filing with the court.

8. Handle requests for documents from parties-in-interest, including brokerage firms, banks, and institutional holders.

9. Work with the Debtors and their counsel to establish a protocol for, and respond to, telephone inquiries from holders and nominees regarding the disclosure statement and the voting procedures.

10. If requested to do so, make telephone calls to non-objecting holders and nominees to confirm receipt of the solicitation package and respond to questions about voting procedures.

11. Receive and examine all ballots and master ballots and date- and time-stamp the originals of all such ballots upon receipt.

12. Track any solicitation packages that are returned as undeliverable and report to the Debtors and their counsel regarding the same.

13. Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with the court.

14. Provide mailing lists produced in the course of FBG's engagement to the Debtors in a manipulable format.

15. Undertake such other duties as may be agreed upon by Delphi and FBG.

### Pricing for Balloting and Tabulation

For the above mentioned services, Delphi agrees to pay FBG on the following basis:

1. For the holders in "Street" name, a project fee of $20,000, plus $3,000 for each debt issue (i.e., each cusip number or ISIN number) of public securities entitled to vote on the Plan; $1,500 for each debt issue not entitled to vote on the Plan but entitled to receive notice; and $7,500 for the common stock. This covers the coordination with all brokerage firms, banks, institutions and other interested parties, including the distribution of voting documents and any non-voting materials. This assumes a single

-2-

distribution, which will be directed to the firms' proxy departments (as described above), a single plan, and no extensions of the voting deadline.

2. For the mailing to registered record holders of stock and any other voting party, we would estimate labor charges at $1.75 - $2.25 per voting package, depending on the complexity of the mailing, with a $500 minimum for each file. The charge indicated assumes the voting package, for example, would include the disclosure statement, a ballot, a return envelope, and one other document. It also assumes that a window envelope will be used for the mailing, and will therefore not require a matched mailing.

3. A minimum charge of $4,000 to take up to 500 telephone calls from security holders and other parties within a 30-day solicitation period. If more than 500 calls are received within the period, those additional calls will be charged at $8.00 per call. Any calls to security holders and other parties will be charged at $8.00 per call.

4. A charge of $125 per hour for the tabulation of ballots and master ballots, plus set up charges of $5,000. Standard hourly rates (as enumerated below) will apply for any time spent by senior executives reviewing and certifying the tabulation and dealing with special issues that may develop.

5. If a website is requested for the posting of documents, hourly programming charges to customize the site for the case, and a monthly hosting charge of $100 to $150, depending on the complexity of the site.

6. We will bill for consulting hours at our then applicable standard hourly rates. Listed below are our current standard hourly rates. Consulting services by FBG would include the review and development of materials, including the disclosure statement, plan, ballots, master ballots, participation in telephone conferences, strategy meetings or the development of strategy relative to the project; efforts related to special balloting procedures, including issues that may arise during the balloting or tabulation process; computer programming or other project-related data processing services; visits to cities outside of New York for client meetings or legal or other matters; efforts related to the preparation of testimony and attendance at court hearings; and the preparation of affidavits, certifications, fee applications (if required by the court), invoices, and reports.

<u>Hourly rates:</u>

| | |
|---|---|
| Executive Director | $410 per hour |
| Director | $360 per hour |
| Senior Case Manager | $300 per hour |
| Case Manager | $240 per hour |
| Junior Case Manager | $190 per hour |
| Programmer II | $195 per hour |
| Programmer I | $165 per hour |
| Clerical | $65 per hour |

### 2. Notice Mailings

FBG would receive printed copies of the notice (or print them) and work with the company to request appropriate information to ensure that the mailing can be done correctly. Mailings are completed as quickly and efficiently as possible. A certificate of service will be prepared for filing with the court.

Notice mailings to creditors and registered holders of the stock are straightforward, because their identities are known and notices can be sent directly to them. The mailing process is more complex for security holders in street name, because the notices need to be forwarded to beneficial owners of securities by the brokers or banks holding the securities, or their agent. We will coordinate with the firms in question, deliver the appropriate documents to them with instructions for mailing, and follow-up to be certain the notices are forwarded to beneficial owners.

### Pricing for Notice Mailings

For the above mentioned services, Delphi agrees to pay FBG on the following basis:

*Mailings to Registered Holders:*
Mailings to any registered record holders of securities (or other individual parties) will be charged at $0.50 - $0.65 per holder, for up to two paper notices included in the same envelope, with a $250 minimum. This assumes that labels and/or electronic data for these holders would be provided by the transfer agent, trustee, or other party maintaining the records.

*Mailings to Stockholders in "Street" name:*
FBG's charges for a notice mailing to holders of debt and equity securities in Street name will be $12,500.

Hourly rates, as enumerated above, would apply for any related consulting work in connection with notice mailings.

### Out of Pocket Expenses

All out-of-pocket expenses relating to any work undertaken by FBG will be charged separately, and will include such items as travel costs, postage, messengers and couriers, etc., expenses incurred by FBG in obtaining or converting depository participant, creditor, shareholder and/or lists of Non-Objecting Beneficial Owners; and appropriate charges for supplies, in-house photocopying, telephone usage, etc. Faxes will not be charged; in-house copies will be charged at $0.10 per page.

### Charges

For services rendered by FBG under this Agreement, Delphi shall pay the charges set forth above. FBG will bill Delphi monthly. All invoices shall be due and payable upon receipt.

In addition to all charges for services, Delphi shall pay to FBG all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by FBG or paid by FBG to taxing authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

Where Delphi requires measures that are unusual and beyond normal business practice of FBG such as, but not limited to, CPA audit, errors and omissions insurance, or off-premises storage of data, the cost of such measures, if provided by FBG, shall be charged to Delphi at a competitive rate.

In the event of termination due to Delphi's default, Delphi shall be liable for all amounts then owing.

### Term

This Agreement shall become effective on the later of (i) the date it has been accepted by both FBG and Delphi or (ii) if Bankruptcy Court approval is required, the date of entry of an order by the Bankruptcy Court approving this Agreement or such earlier date set by the Bankruptcy Court. The agreement shall remain in effect until it is terminated by Delphi or FBG on one (1) month's prior written notice.

### Indemnity

Delphi agrees to indemnify and hold FBG harmless against any loss, damage, expense (including, without limitation, legal and other related fees and expenses), liability or claim arising out of FBG's fulfillment of the Agreement (except for any loss, damage, expense, liability or claim resulting out of FBG's own gross negligence or willful misconduct). At its election, Delphi may assume the defense of any such action. FBG hereby agrees to advise Delphi of any such liability or claim promptly after receipt of the notice thereof; provided however, that FBG's right to indemnification hereunder shall not be limited by its failure to promptly advise Delphi of any such liability or claim, except to the extent that Delphi is prejudiced by such failure. The indemnification contained in this paragraph will survive the term of the Agreement. Except as provided herein, FBG's liability to Delphi or any person claiming through or under Delphi for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even if FBG has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of FBG shall be limited to the total amount billed or billable to Delphi for the portion of the particular work which gave rise to the loss or damage. In no event shall FBG be liable to Delphi for any special or consequential damages (including loss of anticipated profits) incurred by Delphi in connection with or arising out of the services provided for in this Agreement.

**Confidentiality**

FBG agrees to preserve the confidentiality of all non-public information provided by Delphi or its agents for its use in providing services under this Agreement, or information developed by FBG based upon such non-public information. All of Delphi's data given to FBG will be safeguarded by FBG to the same extent that FBG safeguards data relating to its own business; provided, however, that if data is publicly available, was already in FBG's possession or known to it, or was rightfully obtained by FBG from a third party, FBG shall bear no responsibility for disclosure. Delphi agrees that FBG shall not be liable beyond the limits provided under "Indemnity," above, for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any material supplied by Delphi to FBG in the performance of this Agreement.

**General**

No waiver alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

This agreement may not be assigned by Delphi without the express written consent of FBG, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Delphi, and shall not be made available to any other persons.

This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.

The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail or overnight courier, postage prepaid, and addressed as follows:

If to FBG:

    Financial Balloting Group LLC
    757 Third Avenue, 3rd Floor
    New York, New York 10017
    Attn: Jane Sullivan, Executive Director

If to Delphi:

    Delphi Corporation
    5725 Delphi Drive
    Troy, MI 48098
    Attn: David M. Sherbin, Esq., Vice President,
           General Counsel and Chief Compliance Officer

If the above is agreed to by you, please sign and return this Agreement to Financial Balloting Group LLC, Attention: Jane Sullivan, 757 Third Avenue, 3rd Floor, New York, NY 10017.

ACCEPTED:

DELPHI CORPORATION

By: _____
David M. Sherbin

Title: Vice President, General Counsel and Chief Compliance Officer

Date 24 August 2007

FINANCIAL BALLOTING GROUP LLC

By: _____
Jane Sullivan
Executive Director