Exhibit 7.19(b)

ERISA Settlement Stipulation

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

-----------------------------------------------------------x

IN RE: DELPHI CORPORATION
SECURITIES, DERIVATIVE & "ERISA"
LITIGATION

MDL No. 1725
Master Case No. 05-md-1725
Hon. Gerald E. Rosen

This Document Relates to:
*In re Delphi Corp. ERISA Litigation*,
Nos. 05-CV-70882, 05-70940,
05-71030, 05-71200, 05-71249,
05-71291, 05-71339, 05-71396,
05-71397, 05-71398, 05-71437,
05-71508, 05-71620, 05-71897,
05-72198

-----------------------------------------------------------x

## STIPULATION AND AGREEMENT OF SETTLEMENT
## WITH CERTAIN DEFENDANTS – ERISA ACTIONS

This Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions

(the "Stipulation") is submitted in the above-captioned *In re: Delphi Corporation Securities,*

*Derivative & "ERISA" Litigation*, Master Case No. 05-md-1725 (GER), relating to *In re Delphi*

*Corp. ERISA Litigation*, Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200,

05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398,

05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198, pursuant to Rule

23 of the Federal Rules of Civil Procedure. Subject to the approval of the United States District

Court for the Eastern District of Michigan (the "Court"), this Stipulation is entered into among

Named Plaintiffs Gregory Bartell, Thomas Kessler, Neal Folck, Donald McEvoy, Irene Polito,

and Kimberly Chase-Orr (hereinafter "Named Plaintiffs") on behalf of themselves and the Class

(as defined herein), and Delphi Corporation ("Delphi"); ASEC Manufacturing General

Partnership (sued as "ASEC Manufacturing"), Delphi Mechatronic Systems, Inc. (sued as

"Delphi Mechatronic Systems"); the Delphi Corporation Board of Directors Executive

Committee and its members; the Investment Policy Committee and its members; and J.T.

Battenberg III, Robert H. Brust, Alan S. Dawes, Susan A. McLaughlin, and John D. Opie

(collectively, the "Delphi Officer and Director Defendants") (collectively, the "Settling

Defendants").

A separate consolidated action brought under the federal securities laws also coordinated

in the above-captioned *In re: Delphi Corporation Securities, Derivative & "ERISA" Litigation*,

Master Case No. 05-md-1725 (GER) and relating to *In Re: Delphi Corp. Securities Litigation*,

Case No. 06-10026, Case Nos. 06-10027, 06-10028, 06-10029, 06-10030, 06-10031 and 06-

10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) ((formerly No. 9:05-

CV-80307(KLR) (S.D. Fla.)) (the "Delphi Securities Action"), is also pending in this Court.  The

Delphi Securities Action is being settled contemporaneously herewith pursuant to a separate

stipulation of settlement.

It is a condition to the Settlement (as defined herein) that the Delphi ERISA Action (as

defined herein) and the Delphi Securities Action be settled contemporaneously and that the

Settlement and the settlement of the Delphi Securities Action be (i) approved by the Court and

(ii) approved by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court").  It is a further condition to the Settlement that the Bankruptcy Court

approve the separate agreement resolving all pertinent claims among Delphi, certain insurance

carriers, and certain individuals insured under the relevant insurance policies (the "Insurance Agreement," attached as Exhibit C hereto).

WHEREAS:

A.    Beginning on March 8, 2005, several putative class actions were filed in the Court and the United States District Court for the Southern District of Ohio against Delphi and various other defendants. Plaintiffs thereafter voluntarily dismissed the action filed in the United States District Court for the Southern District of Ohio. On September 13, 2005, Judge Paul D. Borman of the United States District for the Eastern District of Michigan appointed Named Plaintiffs as interim lead plaintiffs to prosecute the actions on behalf of participants in the Plans during the putative class period and appointed Lead Counsel (defined herein) as lead counsel in the actions. The actions filed in the Court were consolidated by order, entered September 13, 2005, under the caption *In re Delphi Corp. ERISA Litigation*, Master File No. 05-CV-70882 (PDB).

B.    On October 8, 2005, Delphi filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

C.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Delphi ERISA Action (and other related federal actions, including the Delphi Securities Action) to this Court for coordinated or consolidated pretrial proceedings. On April 12, 2006, Settling Defendants (as defined herein) moved to dismiss the Complaint. On May 12, 2006, Named Plaintiffs filed papers in opposition to the motions to dismiss. On June 12, 2006, Settling Defendants filed their reply papers in further support of the motions to dismiss.

D.    On March 3, 2006, Named Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint"), on behalf of all persons who were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings

3

Plan for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28,

1999 and November 1, 2005, or (ii) participants in or beneficiaries of the Delphi Mechatronic

Systems Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005, and

whose accounts included investments in the Delphi and/or GM Stock Funds, alleging violations

of Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act, as

amended ("ERISA"), and violations of fiduciary duties under common law. The Complaint

alleges, among other things, that Delphi, with the participation of others, improperly accounted

for various transactions and otherwise made material misstatements regarding its financial

condition and that the Settling Defendants breached their fiduciary duties to the Class in their

management of the Plans and the Plans' assets.

     E.     Settling Defendants in the Delphi ERISA Action deny any wrongdoing

whatsoever, and this Stipulation shall in no event be construed or deemed to be evidence of or an

admission or concession on the part of any Settling Defendant with respect to any claim of any

fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the

Settling Defendants have asserted or would assert.

     F.     The parties to this Stipulation recognize that the Delphi ERISA Action has been

filed by the Named Plaintiffs and defended by the Settling Defendants in good faith, that the

Delphi ERISA Action is being voluntarily settled upon advice of counsel, and that the terms of

the Settlement are fair, reasonable and adequate. This Stipulation shall not be construed or

deemed to be a concession by Named Plaintiffs or any Class Member of any infirmity in the

claims asserted in the Delphi ERISA Action or any other action.

     G.     Lead Counsel have conducted investigations relating to the claims and the

underlying events and transactions alleged in the Delphi ERISA Action. Lead Counsel have

analyzed the evidence adduced during the pretrial discovery conducted thus far and have

researched the applicable law with respect to the claims of the Named Plaintiffs and the Class

against the Settling Defendants and the potential defenses thereto.

  H.  The parties recognize that the claims asserted in the Delphi ERISA Action, if

proved by the Named Plaintiffs, could have exposed Settling Defendants to substantial damages

awards. Accordingly, the parties considered that a resolution of the Delphi ERISA Action was

advisable from the point of view of all parties.

  I.  With the assistance of the Honorable Layn R. Phillips, former United States

District Judge, acting as a special master for settlement purposes, Named Plaintiffs in the Delphi

ERISA Action, by their counsel, have conducted independent discussions and arm's-length

negotiations with Settling Defendants' counsel with respect to a compromise and settlement of

the Delphi ERISA Action and with a view to settling the issues in dispute and achieving the best

relief possible consistent with the interests of the overall Class in the Delphi ERISA Action.

  J.  Delphi considers that, in order for it to achieve an end to litigation, it is a

necessary condition to the settlement of the Delphi ERISA Action that the Court

contemporaneously approve the separate settlement reached with respect to the Delphi Securities

Action, and that the Bankruptcy Court enter Final orders approving the Stipulation, the Delphi

Securities Action settlement, and the Insurance Agreement.

  K.  Based upon their investigation and pretrial discovery as set forth above, Named

Plaintiffs and their counsel have concluded that the terms and conditions of this Stipulation are

fair, reasonable and adequate to Named Plaintiffs and the Class, and are in their best interests,

and Named Plaintiffs have agreed to settle the claims raised in the Delphi ERISA Action

pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial

benefits that the members of the Class will receive from settlement of the Delphi ERISA Action,

(b) the attendant risks of litigation, (c) the desirability of permitting the Settlement to be

consummated as provided by the terms of this Stipulation, and (d) the sources available to fund

any potential judgment in the litigation as a result of the fact that Delphi filed for protection

under Chapter 11 of the Bankruptcy Code on October 8, 2005.

NOW THEREFORE, without any admission or concession on the part of Named

Plaintiffs of any lack of merit of the Delphi ERISA Action whatsoever, and without any

admission or concession of any liability or wrongdoing or lack of merit in the defenses

whatsoever by Settling Defendants, it is hereby STIPULATED AND AGREED, by and between

the parties to this Stipulation, through their respective counsel, subject to approval of the Court

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits

flowing to the parties hereto from the Settlement herein set forth, that all Settled Claims (as

defined herein), as against the Released Parties (as defined herein), and all Settled Defendants'

Claims (as defined herein) shall be compromised, settled, released and dismissed with prejudice,

upon and subject to the following terms and conditions:

## DEFINITIONS

1.    As used in this Stipulation, the following terms shall have the following

meanings:

(a)    "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its

affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

(b)    "Bankruptcy Court" means the United States Bankruptcy Court for the

Southern District of New York.

(c)    "Bankruptcy Effective Date" means the business day determined by Dephi

in its sole discretion on which all conditions to the consummation of Delphi's plan of

reorganization in the Bankruptcy Case (the "Delphi Plan of Reorganization") have been either satisfied or waived and is the day upon which such plan is substantially consummated, such date being the same as the "Effective Date" as defined in the Delphi Plan of Reorganization.

(d)    "Bar Order" shall have the meaning set forth in ¶¶ 5-7 hereof.

(e)    "Barred Claims" shall have the meaning set forth in ¶ 5 hereof.

(f)    "Barred Persons" shall have the meaning set forth in ¶ 5 hereof.

(g)    "Class" means, for the purposes of this Settlement only, a non-opt-out class consisting of all persons (a) who were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28, 1999 and November 1, 2005, or (ii) participants in or beneficiaries of the Delphi Mechatronic Systems Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005, and (b) whose accounts included investments in the Delphi and/or GM stock funds. Excluded from the Class are (i) the Defendants; (ii) members of the immediate families of each of the Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any parent, subsidiary or affiliate of a Defendant; (v) any person who was an officer or director of a Defendant or of any of Defendants' subsidiaries or affiliates during the Class Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any such excluded person or entity.

(h)    "Class Member" means a member of the Class.

(i)    "Class Period" means, for the purposes of this Settlement only, the period of time between May 28, 1999 and November 1, 2005, inclusive.

(j)    "Contribution Credit" shall mean an amount equal to the value of the contribution or equitable indemnification claim, if any, that the Court determines such Barred

Person would be entitled to assert against one or more Settling Defendants but for operation of

the Bar Order, which shall be equal to the aggregate proportionate shares of liability, if any, of

the Settling Defendants as determined by the Court at the time of entry of any judgment against

any Barred Person, adjusted, as the Court determines is appropriate, to reflect any limitation on

the financial capability of the Settling Defendants to pay their respective proportionate shares of

liability to the Barred Person had the Barred Person obtained a contribution or equitable

indemnification judgment against them in such amount; provided that in determining the

Contribution Credit with respect to Delphi as a Settling Defendant, the Court shall take into

consideration whether the Barred Person would have held an allowed claim in the Bankruptcy

Case for contribution or equitable indemnification, and the amount, if any, the Barred Person

would receive under the Delphi Plan of Reorganization on account thereof.

       (k)    "Court" means the United States District Court for the Eastern District of
Michigan.

       (l)    "Defendants" means Delphi, ASEC Manufacturing General Partnership
(sued as "ASEC Manufacturing"), Delphi Mechatronic Systems, Inc. (sued as "Delphi

Mechatronic Systems"), the Delphi Corporation Board of Directors Executive Committee and its

past and present members, the Investment Policy Committee and its past and present members,

the Delphi Officer and Director Defendants, and State Street Bank and Trust Company.

       (m)    "Delphi" means Delphi Corporation.

       (n)    "Delphi Consideration" means that amount of Delphi Plan Currency in the
same form, ratio, and treatment provided to general unsecured creditors in the Delphi Plan of

Reorganization to be distributed pursuant to this Stipulation to satisfy the ERISA Plans' Equity

Interest granted to Named Plaintiffs as representatives of the Class pursuant to this Stipulation.

(o)     "Delphi's Counsel" means the law firm of Shearman & Sterling LLP.

(p)     "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative
& "ERISA" Litigation*, Master File No. 05-md-1725 (GER), Case Nos. 05-CV-70882,
05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339,
05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620,
05-CV-71897, and 05-CV-72198.

(q)     "Delphi Plan Currency" means the form of consideration to be provided to
general unsecured creditors, as provided in the Delphi Plan of Reorganization, which could
include cash, common stock, debt securities, other securities, or any other kind of consideration.

(r)     "Delphi Securities Action" means *In re: Delphi Corp. Securities,
Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER) and relating to *In Re:
Delphi Corp. Securities Litigation*, Case No. 06-10026, Case Nos. 06-10027, 06-10028, 06-
10029, 06-10030, 06-10031 and 06-10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-
10025 (GER) ((formerly No. 9:05-CV-80307) (KLR) (S.D. Fla.)).

(s)     "Effective Date" means the date upon which the Settlement contemplated
by this Stipulation shall become effective, as set forth in ¶ 17 hereof.

(t)     "ERISA Plans' Equity Interest" means the interest as against Delphi
granted and approved by the Bankruptcy Court in its order approving this Settlement to the
Named Plaintiffs, as representatives of the Class, pursuant to this Stipulation, which shall be an
allowed interest in the aggregate face amount of Twenty-Four Million, Five Hundred Thousand
Dollars (U.S. $24,500,000), with no additional provision to be made for accrued interest, and
which shall be an interest classified under the Delphi Plan of Reorganization in a separate equity

class, representative of the claims of the Class against Delphi arising out of or relating to any and all claims or causes of action in the Delphi ERISA Action.

(u)    "Escrow Agent" means Keller Rohrback L.L.P. or a federally-insured financial institution proposed by Keller Rohrback, L.L.P. and acceptable to counsel for Settling Defendants.

(v)    "Final" or "Finality," with respect to any Judgment or Alternative Judgment (both as defined herein), means: (a) if no appeal is filed, the expiration date of the time provided for under the corresponding rules of the applicable court or legislation for filing or noticing of any appeal from the Judgment; or (b) if there is an appeal from the Judgment, the date of (i) final dismissal of any appeal from the Judgment, or the final dismissal of any proceeding on certiorari or otherwise to review the Judgment; or (ii) the date of final affirmance on an appeal of the Judgment, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the Judgment, and, if certiorari or other form of review is granted, the date of final affirmance of the Judgment following review pursuant to that grant.  Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or (ii) the plan of allocation, shall not in any way delay or preclude the Judgment from becoming Final.

(w)    "Gross Settlement Fund" means (A) the cash amount to be paid to the Escrow Agent pursuant to ¶ 8(a) hereof, which consists of the Insurance Payment; (B) the Delphi Consideration; (C) 23.7% of any remaining cash from the National Union Fire Insurance Company of Pittsburgh, Pa. Policy No. 931-88-56 after payment of all outstanding defense costs incurred as of the entry by the Court of the Order for Notice and Hearing in all material respects

(the "Insurance Remainder Payment"); and (D) any interest on or other income or gains in respect of these amounts or distributions earned while such amounts are held by the Escrow Agent.

(x)    "Indemnity Credit" shall mean an amount equal to the value of the contractual indemnity claim, if any, that the Court shall determine such Barred Person would be entitled to assert against Settling Defendants but for operation of the Bar Order, adjusted, as the Court determines is appropriate, to reflect any limitation on the financial capability of the Settling Defendants to pay to the Barred Person any indemnity judgment against them; provided that in determining the Indemnity Credit with respect to Delphi as a Settling Defendant, the Court shall take into consideration whether the Barred Person would have held an allowed claim in the Bankruptcy Case for contractual indemnification and the amount, if any, that the holder of such an allowed claim would receive under the Delphi Plan of Reorganization on account thereof.

(y)    "Insurance Payment" means Twenty Two Million, Five Hundred Thousand United States Dollars (US$ 22,500,000) that certain insurance carriers shall pay to the Escrow Agent in the amounts set forth in the Insurance Agreement.

(z)    "Judgment" means (i) the proposed judgment or order by the Court approving the Settlement in the form attached hereto as Exhibits B, and (ii) any of the judgments and orders to be entered by the Bankruptcy Court approving the Settlement.

(aa)    "Judgment Reduction Amount" means, with respect to any Barred Person, an amount determined by the Court at the time of entry of any judgment against such Barred Person, equal to the greatest of (i) the "Settlement Credit," (ii) the "Contribution Credit," or (iii) the "Indemnity Credit," as those terms are defined herein.

11

(bb)    "Lead Counsel" means the law firm of Keller Rohrback L.L.P.

(cc)    "Named Plaintiffs" means Gregory Bartell, Thomas Kessler, Neal Folck, Donald McEvoy, Irene Polito, and Kimberly Chase-Orr.

(dd)    "Net Settlement Fund" has the meaning defined in ¶ 9 hereof.

(ee)    "Notice" means the Notice of Proposed Settlement With Certain Defendants, Motions for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Tab 1 to Exhibit A.

(ff)    "Order for Notice and Hearing" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit A.

(gg)    "Plaintiffs' Counsel" means Lead Counsel and any other counsel representing Class Members.

(hh)    "Plans" means the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, and the ASEC Manufacturing Savings Plan.

(ii)    "Publication Notice" means the summary notice of proposed Settlement and hearing for publication substantially in the form attached as Tab 2 to Exhibit A.

(jj)    "Released Parties" means any and all of the Settling Defendants, Thomas H. Wyman, General Motors Investment Management Corporation, and their past or present members, subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, fiduciaries, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers,

12

co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal

representatives, employee benefit plans and their fiduciaries, unions and union representatives,

immediate family members and any person, firm, trust, partnership, corporation, officer, director

or other individual or entity in which any Settling Defendant has a controlling interest or which

is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs,

executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi

and its affiliates in the Bankruptcy Case; provided, however, that in no event shall Released

Parties be deemed to include State Street Bank and Trust Company.

      (kk)   "Settled Claims" means any and all claims, debts, demands, rights or

causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to,

any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs,

expenses or liability whatsoever), whether based on federal, state, local, statutory or common

law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued,

liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual

in nature, including both known claims and Unknown Claims (as defined herein), against any of

the Released Parties (i) that have been asserted in the Delphi ERISA Action, or (ii) that could

have been asserted in any forum, including the Bankruptcy Court, by the Class Members or any

of them or the successors and assigns of any of them, which arise out of, are based upon, or in

any way relate to the allegations, transactions, facts, matters or occurrences, representations or

omissions involved, set forth, or referred to in the Delphi ERISA Action. "Settled Claims" does

not include (i) all claims, rights or causes of action or liabilities whatsoever related to the

enforcement of the Settlement, including, without limitation, any of the terms of this Stipulation

or orders or judgments issued by the courts in connection with the Settlement or confidentiality

obligations; (ii) any claim that is the subject of the settlement of the Delphi Securities Action and

not the subject of the settlement of the Delphi ERISA Action; or (iii) any ERISA Section

502(a)(1)(B) claim for individual vested benefits brought by an individual Plan participant or

beneficiary where such claims are unrelated to any claim, matter or cause of action that has been

asserted in the Delphi ERISA Action or that could have been asserted in the Delphi ERISA

Action arising out of, based upon, or in any way relating to the allegations, transactions, facts,

matters or occurrences, representations or omissions involved, set forth, or referred to in the

Delphi ERISA Action.

   (ll) "Settled Defendants' Claims" means any and all claims, rights or causes of

action or liabilities whatsoever, whether based on federal, state, local, statutory or common law

or any other law, rule or regulation, including both known claims and Unknown Claims, that

have been or could have been asserted in the Delphi ERISA Action or any forum by the Settling

Defendants or any of them or the successors and assigns of any of them against any of the

Named Plaintiffs, any Class Member or their attorneys, which arise out of or relate in any way to

the institution, prosecution, or settlement of the Delphi ERISA Action. Settled Defendants'

Claims does not include all claims, rights or causes of action or liabilities whatsoever related to

the enforcement of the Settlement, including, without limitation, any of the terms of this

Stipulation or orders or judgments issued by the courts in connection with the Settlement or

confidentiality obligations.

   (mm) "Settlement" means the settlement of the Delphi ERISA Action

contemplated by this Stipulation.

   (nn) "Settlement Amount" means (i) the Insurance Payment and the Insurance

Remainder Payment, and (ii) the Delphi Consideration.

(oo)    "Settlement Credit" means either (a) $47,000,000, or (b) such other

amount determined by the Court at the time of entry of judgment against any Barred Person to

have been the value realized by the Class from the Settlement; provided that if the Court shall

determine when assessing liability against the Barred Person that some portion of the damages

claims settled in the Settlement are different from those for which the Barred Person is liable,

then the amount described in clauses (a) or (b) of this Paragraph minus the portion of the

Settlement Amount determined by the Court to have been paid with respect to such different

damages claims.

(pp)    "Settling Defendants" means Delphi Corporation, ASEC Manufacturing

General Partnership (sued as "ASEC Manufacturing"), Delphi Mechatronic Systems, Inc. (sued

as "Delphi Mechatronic Systems"), the Delphi Corporation Board of Directors Executive

Committee and its various past and present members, the Investment Policy Committee and its

various past and present members, J.T. Battenberg III, Robert H. Brust, Alan S. Dawes, Susan A.

McLaughlin, and John D. Opie.

(qq)    "Stipulation" means this Stipulation and Agreement of Settlement With

Certain Defendants.

(rr)    "Taxes" means (i) any and all applicable taxes, duties and similar charges

imposed by a government authority (including any estimated taxes, interest or penalties) arising

in any jurisdiction, if any (A) with respect to the income or gains earned by or in respect of the

Gross Settlement Fund, including, without limitation, any taxes that may be imposed upon

Settling Defendants or their counsel with respect to any income or gains earned by or in respect

of the Gross Settlement Fund for any period while it is held by the Escrow Agent during which

the Gross Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state

income tax purposes; or (B) by way of withholding as required by applicable law on any

distribution by the Escrow Agent or the Claims Administrator of any portion of the Gross

Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to this

Stipulation; and (ii) any and all expenses, liabilities and costs incurred in connection with the

taxation of the Gross Settlement Fund (including without limitation, expenses of tax attorneys

and accountants). For the purposes of paragraph (A) hereof, taxes imposed on Settling

Defendants shall include amounts equivalent to taxes that would be payable by Settling

Defendants but for the existence of relief from taxes by virtue of loss carryforwards or other tax

attributes, determined by Settling Defendants, acting reasonably, and accepted by the Escrow

Agent, acting reasonably.

      (ss)    "Unknown Claims" means any and all Settled Claims which any of the

Named Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of

the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not

know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him,

her or it might have affected his, her or its decision(s) with respect to the Settlement. With

respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and

agree that upon the Effective Date, the Named Plaintiffs and the Settling Defendants shall

expressly waive, and each Class Member shall be deemed to have waived, and by operation of

the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred

by any law of any state of the United States, or principle of common law or otherwise, which is

similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Named Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Delphi ERISA Action as part of the Settlement and any and all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims.

3.    (a)    Upon the Effective Date of the Settlement, Named Plaintiffs and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person or any of the Plans, any action, suit, cause of action, claim or demand against any Released Party or any other person who may claim any form of contribution or indemnity from any Released Party in respect of any Settled Claim or any matter related thereto, at any time on or after the Effective Date.

(b)    Upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Named Plaintiffs, all Class Members and their respective counsel.

## THE BAR ORDER

17

4.      The Court shall include the Bar Order in ¶¶ 5-6 in its final Judgment approving

the Settlement. The Bar Order shall be approved by the Court as fair to all persons or entities,

including but not limited to (a) the Defendants; (b) the Class; and (c) any non-settling

defendants.

5.      The Bar Order shall bar all claims against the Released Parties arising under

federal, state, or foreign statutory or common-law rule, however styled, whether for

indemnification or contribution or otherwise, arising out of or relating to the Delphi ERISA

Action and for any other claims arising out of or relating to the Settled Claims, including any

claims relating to the payment of the Settlement Amount (collectively, the "Barred Claims"), and

permanently bar, enjoin and restrain any person receiving notice of the Notice, or having actual

knowledge of the Notice, or having actual knowledge of sufficient facts that would cause such

person to be charged with constructive notice of the Notice (such persons, the "Barred Persons")

from commencing, prosecuting, continuing, or asserting, either derivatively or on behalf of

themselves, or through any person purporting to act on their behalf or purporting to assert a

claim under or through them, any Barred Claims against the Released Parties in any forum,

action or proceeding of any kind. The Bar Order shall provide that the Court shall retain

exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance,

validity, interpretation, administration, enforcement or enforceability of the Bar Order, except to

the extent any such matters relate to Delphi's bankruptcy proceeding, which shall be subject to

the continued jurisdiction of the Bankruptcy Court. After the Bar Order, if entered by the Court,

has become Final, Named Plaintiffs' Counsel shall post the Bar Order on its web site, or shall

provide notice thereof in such other form as the Court has required.

6.     The Bar Order shall provide that because the Barred Persons are barred from

asserting any Barred Claims against the Released Parties, any judgments entered against the

Barred Persons in the Delphi ERISA Action will be reduced by the Judgment Reduction

Amount.  The Bar Order shall further provide that nothing in this Stipulation or in the Bar Order

shall in any manner limit any joint and several liability applicable to any non-settling party as to

the portion of any judgment against such non-settling party in the Delphi ERISA Action

remaining after application of any Judgment Reduction Amount provided for in this Stipulation.

Notwithstanding any other provision of this Stipulation, if in connection with entry of the Bar

Order the Court shall conclude that (i) applicable law requires that the Judgment Reduction

Amount be determined or calculated in a manner different from that set forth above in this ¶ 6,

then the Judgment Reduction Amount shall be determined and calculated as the Court shall

conclude is required by applicable law, and all settling parties shall consent to such

determination and calculation of the Judgment Reduction Amount and to any modification to the

form of the order and final judgment attached hereto as Exhibit B with respect to the Judgment

Reduction Amount necessary to give effect to such conclusion by the Court, provided, however,

that no settling party shall take the position that applicable law requires that the Judgment

Reduction Amount be determined or calculated in a manner different from that set forth in this ¶

6; or (ii) in addition to any potential or actual Judgment Reduction Amount, it is appropriate to

provide for an additional reserve from the Net Settlement Fund to be available to compensate

any Barred Person for any claim for reimbursement of and/or indemnification for legal fees

and/or expenses relating to any Barred Claims, such reserve shall be established and maintained

until the Delphi ERISA Action is concluded and fully and finally resolved with respect to all

such Barred Persons, or the reserve is terminated pursuant to the written agreement of all such

Barred Persons or otherwise pursuant to order of the Court.

7.    The Bar Order shall permanently enjoin the Settling Defendants from bringing

against the Barred Persons, either derivatively or on behalf of themselves, or through any person

purporting to act on their behalf or purporting to assert a claim under or through them, any of the

Barred Claims in any forum, action or proceeding of any kind, provided that a Settling

Defendant shall not be enjoined from bringing Barred Claims against a Barred Person if for any

reason such Barred Person asserts, or is legally not barred by the Bar Order from bringing,

Barred Claims against such Settling Defendant.

## SETTLEMENT CONSIDERATION

8.    In consideration for the release and discharge provided for in ¶ 3(a) hereof,

Settling Defendants shall distribute or pay or cause to be paid the Settlement Amount, as

prescribed below.

(a)    The certain insurance carriers party to the Insurance Agreement shall pay

to the Escrow Agent, on behalf of the Delphi Officer and Director Defendants, the Insurance

Payment and the Insurance Remainder Payment, within ten (10) business days after entry by the

Court of an order preliminarily approving the Settlement.

(b)    Delphi shall distribute to the Escrow Agent the Delphi Consideration as

soon as practicable after the later of (i) the satisfaction of each of the conditions in ¶ 17(a)–(g), or

(ii) the Bankruptcy Effective Date.

9.    (a)    The Gross Settlement Fund shall be used to pay (i) the Notice, Publication

Notice, and administration costs referred to in ¶ 10 hereof; and (ii) the attorneys' fee and expense

award referred to in ¶ 13 hereof (or, alternatively, to fund the reserve for such award referred to

in ¶ 13 hereof), and the Named Plaintiff case contribution awards referred to in ¶ 13 hereof. The

balance of the Gross Settlement Fund (inclusive of interest earned) after the matters described in

clauses (i) and (ii) of this Paragraph, and after the payment of any Taxes (as defined herein) shall

be the Net Settlement Fund. At a time following the Effective Date, the Net Settlement Fund

shall be transferred by the Escrow Agent to the Plans, subject to a plan of allocation (the "Plan of

Allocation") to be proposed by Lead Counsel and approved by the Court. All funds held by the

Escrow Agent shall be deemed to be in the custody of the Court until such time as the funds shall

be distributed to the Plans or otherwise disbursed pursuant to this Stipulation and/or further order

of the Court. No distributions shall be made from the Net Settlement Fund except in compliance

with the provisions of ¶ 23 hereof. The Escrow Agent shall invest any funds in excess of U.S.

$100,000 in short term United States Agency or Treasury Securities, repurchase agreements

collateralized by such instruments, or a mutual fund invested solely in such instruments, and

shall collect and reinvest all earnings accrued thereon. Any funds held in escrow in an amount of

less than U.S. $100,000 may be held in a bank account insured by the Federal Deposit Insurance

Corporation ("FDIC") or may be invested as funds in excess of U.S. $100,000 are invested. The

parties hereto agree that the Gross Settlement Fund is intended to be a Qualified Settlement Fund

within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent as

administrator of the Gross Settlement Fund within the meaning of Treasury Regulation § I.468B-

2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of

the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with

respect to the Gross Settlement Fund. The parties hereto agree that the Gross Settlement Fund

shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any

relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund

from the earliest date possible. Delphi agrees to provide promptly to the Escrow Agent the

statement described in Treasury Regulation § I.468B-3(e).

(b)    All Taxes (as defined herein) shall be paid out of the Gross Settlement

Fund, shall be considered to be a cost of administration of the Settlement and shall be timely paid

by the Escrow Agent without prior Order of the Court. The Gross Settlement Fund or the

Escrow Agent shall, to the extent required by law, be obligated to withhold from any

distributions to Authorized Claimants and other persons entitled thereto pursuant to this

Stipulation any funds necessary to pay Taxes including the establishment of adequate reserves

for Taxes as well as any amount that may be required to be withheld under Treasury Reg.

1.468B-(1)(2) or otherwise under applicable law in respect of such distributions. Further, the

Gross Settlement Fund shall indemnify and hold harmless the Settling Defendants and their

counsel for Taxes (including, without limitation, taxes payable by reason of any such

indemnification payments).

(c)    None of the Settling Defendants, the Released Parties or their respective

counsel shall have any responsibility for or liability whatsoever with respect to (i) any act,

omission or determination of Lead Counsel or the Escrow Agent, or any of their respective

designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the

management, investment or distribution of the Gross Settlement Fund; (iii) the Plan of

Allocation; (iv) the determination, administration, calculation or payment of any claims asserted

against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the

Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs

incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.

## ADMINISTRATION

10.    (a)    The Escrow Agent, acting solely in its capacity as escrow agent, shall be subject to the jurisdiction of the Court.

(b)    The Escrow Agent may pay from the Gross Settlement Fund, without further approval from Settling Defendants, all reasonable costs and expenses up to the amount of U.S. $150,000 associated with identifying and notifying the Class Members and effecting mailing of the Notice and publication of the Publication Notice as ordered by the Court, and the administration of the Settlement, including without limitation, the actual costs of printing and mailing the Notice and publication of the Publication Notice. In the event that the Settlement is terminated, as provided for herein, reasonable notice and administration costs up to $150,000 paid or incurred in connection with this paragraph shall not be returned to the persons who paid the Settlement Amounts.

(c)    The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this Stipulation, and shall not be liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it, consistent with the terms hereof and those of any escrow agreements concerning the Gross Settlement Amount, in connection with the performance by it of its duties pursuant to the provisions of this Stipulation or order of the courts, except for its gross negligence or willful misconduct. If the Escrow Agent is uncertain as to its duties hereunder, the Escrow Agent may request that Named Plaintiffs (and, prior to the Effective Date, Delphi) sign a document which states the action or non-action to be taken by the Escrow Agent. In the event the Settlement is

23

terminated, as provided for herein, indemnified amounts and expenses incurred by the Escrow

Agent in connection with this paragraph shall not be returned to the persons who paid the

Settlement Amounts.

## BANKRUPTCY CASE ADMINISTRATION

11.    (a)    Delphi will make a motion, and will use reasonable efforts to cause such

motion to be returnable at the September 2007 omnibus hearing date in the Bankruptcy Case,

requesting an order from the Bankruptcy Court (i) certifying the Class under Bankruptcy Rule

7023 for purposes of this Settlement only, (ii) approving this Settlement, the settlement of the

Delphi Securities Action, and the Insurance Agreement, (iii) allowing the ERISA Plans' Equity

Interest in the Bankruptcy Case, and (iv) directing the Named Plaintiffs to vote all chapter 11

ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by

virtue of the ERISA Plans' Equity Interest or any proof of claim related to the Delphi ERISA

Action in favor of the Delphi Plan of Reorganization incorporating the Settlement.

(b)    Upon the Bankruptcy Court's entry of an order approving this Settlement

and certifying the Class for purposes of this Settlement only as set forth in ¶ 11(a) above, Named

Plaintiffs will withdraw, without prejudice, any proof of claim that they may assert they filed on

behalf of the Class in the Bankruptcy Case, which proofs of claim shall be withdrawn with

prejudice on the Effective Date.

(c)    Upon the Bankruptcy Court's entry of an order approving this Settlement

and certifying the Class for purposes of this Settlement only as set forth in ¶ 11(a) above, any

individual proof of claim filed in the Bankruptcy Case by Named Plaintiffs or on their behalf in

any capacity other than as representatives of the Class and relating to the allegations asserted in

the Delphi ERISA Action (including but not limited to the proofs of claim identified in Exhibit D

hereto) shall be deemed to be estimated, only for purposes of voting with respect to the Delphi

Plan of Reorganization, in the amount of One United States dollar (U.S. $1), and shall be

classified pursuant to the Delphi Plan of Reorganization in the separate equity class applicable to

the ERISA Plans' Equity Interest.

(d)    Nothing in this Stipulation shall limit, reduce or impact in any way any

individual, non-class claim asserted against Delphi in the Bankruptcy Case by Named Plaintiffs

or any Class Member that is not based on or related to the Settled Claims, including but not

limited to claims based on any such Named Plaintiff's or Class Member's status as a holder of

any Delphi Securities, which are not classified as an ERISA Plans' Equity Interest.

(e)    Named Plaintiffs shall cast any and all votes concerning the Delphi Plan of

Reorganization under their control by virtue of a claim, other than any claim that is not based on

or related to the allegations set forth in the Delphi ERISA Action, filed by them or on their

behalf or granted to them in the Bankruptcy Case, in either their individual or representative

capacity, including without limitation the ERISA Plans' Equity Interest, in favor of and in

acceptance of the Delphi Plan of Reorganization; provided, however, that nothing herein shall

constitute an offer with respect to any securities or solicitation of acceptance of a chapter 11

plan. Such Offer or solicitation only shall be made in compliance with all applicable securities

laws and/or provisions of the Bankruptcy Code.

12.    Upon the Effective Date, other than the ERISA Plans' Equity Interest, Named

Plaintiffs shall withdraw and shall be deemed to have withdrawn, with prejudice, any proof of

claim relating to the allegations in the Delphi ERISA Action and filed in the Bankruptcy Court

by them or on their behalf in either their individual or representative capacity (including but not

limited to the proofs of claim identified in Exhibit D hereto):

## ATTORNEYS' FEES AND EXPENSES

13.    Lead Counsel will apply to the Court for an award of attorneys' fees and

reimbursement of expenses payable from the Gross Settlement Fund and shall further provide to

the Court, as part of the motion for approval of the Settlement, all necessary information required

by the Court concerning the total award of attorneys' fees and reimbursement of expenses to be

payable from the Gross Settlement Fund.  Alternatively, Lead Counsel may request that the

Court reserve a portion of the Gross Settlement Fund for potential future awards of attorneys'

fees and expenses pursuant to applications to be filed by Lead Counsel with the Court upon the

conclusion of the ERISA Action.  Lead Counsel may also apply to the Court for case

contribution awards to Named Plaintiffs in an amount not to exceed $5,000 per Named Plaintiff.

Settling Defendants will take no position with respect to any such applications for attorneys' fees

or expenses (or reserve therefor), or Named Plaintiff case contributions awards.  Such amounts

as are awarded by the Court to Lead Counsel from the Gross Settlement Fund shall be payable

by the Escrow Agent immediately upon award (and, in the case of the Delphi Consideration,

upon Delphi's distribution to the Escrow Agent pursuant to this Stipulation), notwithstanding the

existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral

attack on the Settlement or any part thereof, subject to (i) the provisions of ¶ 23 hereof, and (ii)

Plaintiffs' Counsel's obligations to make appropriate refunds or repayments to the Gross

Settlement Fund plus accrued interest at the same rate as is earned by the Gross Settlement Fund,

if and when, as a result of any appeal and/or further proceedings on remand, or successful

collateral attack, the fee or cost award is reduced or reversed or for whatever reason the

Settlement is terminated pursuant to ¶ 18 hereof.  Settling Defendants shall have no obligations

whatsoever with respect to any attorneys' fees or expenses incurred by Plaintiffs' Counsel, which

shall be payable solely from the Gross Settlement Fund.

## TERMS OF ORDER FOR NOTICE AND HEARING

14.    (a)    Promptly after this Stipulation has been fully executed, Lead Counsel shall apply to the Court for entry of an Order for Notice and Hearing, substantially in the form annexed hereto as Exhibit A, which Order shall, among other provisions, certify the Class for settlement purposes only, and direct the Named Plaintiffs to vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the ERISA Plans' Equity Interest or any proof of claim based on or related to the Delphi ERISA Action in favor of the Delphi Plan of Reorganization incorporating the Settlement.

(b)    The mailing or publication of the Notice and Publication Notice shall not occur until all such orders of the Court have been obtained.

## TERMS OF ORDER AND FINAL JUDGMENT

15.    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Settling Defendants' Counsel shall request that a Judgment be entered substantially in the form annexed hereto as Exhibit B.

16.    INTENTIONALLY OMITTED

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

17.    The "Effective Date" of the Settlement shall be the date when all the following conditions of settlement shall have occurred:

(a)    payment of the Insurance Payment;

(b)    approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)    entry by the Court of a Judgment in all material respects in the form set forth in Exhibit B annexed hereto, and the expiration of any time for appeal or review of such Judgment, or, if any appeal is filed, after such Judgment is upheld on appeal in all material

27

respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the

event that the Court enters a Judgment in a form other than that provided above ("Alternative

Judgment") and none of the parties hereto elect to terminate this Settlement, the date that such

Alternative Judgment becomes Final;

        (d)     approval by the Court of the settlement in the Delphi Securities Action

becoming Final;

        (e)     entry by the Bankruptcy Court of an order(s) approving the Settlement and

the settlement in the Delphi Securities Action, and such order(s) becoming Final;

        (f)     approval by the Bankruptcy Court of the Insurance Agreement becoming

Final;

        (g)     approval by the Court of the Bar Order provisions in the Judgment

approving the Settlement becoming Final;

        (h)     distribution of the Delphi Consideration, pursuant to this Stipulation;

        (i)     expiration of the time to exercise the termination rights provided in ¶ 18

hereof.

     18.    Named Plaintiffs and Settling Defendants shall each have the right to terminate

the Settlement and thereby this Stipulation by providing written notice of their election to do so

("Termination Notice") to one another hereto within thirty (30) days of any of the following:

(a) the Court declining to enter the Order for Notice and Hearing in any material respect; (b) the

Court refusing to approve this Settlement as set forth in this Stipulation; (c) the Court declining

to enter the Judgment in any material respect or entering an Alternative Judgment; (d) the Court

declining to enter in any material respect the Bar Order provisions in the Court's Judgment or

order approving the Settlement; (e) the Bankruptcy Court refusing to approve this Settlement or

the Insurance Agreement; (f) the date upon which a Judgment is modified or reversed in any

material respect by any level of appellate court; (g) the date upon which an Alternative Judgment

is modified or reversed in any material respect by any level of appellate court; (h) the date upon

which the settlement in the Delphi Securities Action is terminated; (i) the failure of the Insurance

Payment or the Insurance Remainder Payment to be made pursuant to this Stipulation; provided,

however, that all termination rights provided under this Stipulation shall expire upon Delphi's

distribution of the Delphi Consideration pursuant to this Stipulation.

19.    Notwithstanding anything else in this Stipulation, Settling Defendants may, in

their sole and unfettered discretion, elect in writing to terminate the Settlement and this

Stipulation on or before the tenth (10th) business day prior to the Fairness Hearing if any claim or

potential claim by the United States Department of Labor against any Released Party that arises

out of, is based upon, or in any way relates to the allegations, transactions, facts, matters or

occurrences, representations or omissions involved, set forth, or referred to in the Delphi ERISA

Action has not been resolved on terms acceptable to any such Released Party.  Such claim or

potential claims include, but are not limited to, any proof of claim filed in the Bankruptcy Case

by the United States Department of Labor.

20.    Except as otherwise provided herein, in the event the Settlement is terminated, the

parties to this Stipulation shall be deemed to have reverted to their respective status in the Delphi

ERISA Action and, with respect to each other, in the Bankruptcy Case, immediately prior to the

execution of this Stipulation and, except as otherwise expressly provided, the parties shall

proceed in all respects as if this Stipulation and any related orders had not been entered.

Furthermore, within ten (10) business days following any termination of this Settlement, the

Escrow Agent shall pay an amount equal to the Settlement Amounts previously paid by Delphi

and/or the certain insurers party to the Insurance Agreement, as the case may be, shall be paid to

Delphi and/or the certain insurers party to the Insurance Agreement, as the case may be, to

Delphi and/or the certain insurers party to the Insurance Agreement, as the case may be, together

with any interest or other income earned thereon or in respect thereof, less any Taxes paid or due

with respect to such income, less any amounts required to be paid to the Escrow Agent pursuant

to the relevant escrow agreement, and less any reasonable costs of administration and notice

actually incurred and paid or payable from the Settlement Amount (as described in ¶ 11 hereof),

less any applicable withholding taxes.

## NO ADMISSION OF WRONGDOING

21.    This Stipulation, whether or not consummated, and any proceedings taken

pursuant to it:

(a)    shall not be offered or received against any of the Settling Defendants as

evidence of or construed as or deemed to be evidence of any presumption, concession, or

admission by any of those Settling Defendants with respect to the truth of any fact alleged by any

of the plaintiffs or the validity of any claim that has been or could have been asserted in the

Delphi ERISA Action or in any litigation, or the deficiency of any defense that has been or could

have been asserted in the Delphi ERISA Action or in any litigation, or of any liability,

negligence, fault, or wrongdoing of the Settling Defendants;

(b)    shall not be offered or received against the Settling Defendants as

evidence of a presumption, concession or admission of any fault, misrepresentation or omission

with respect to any statement or written document approved or made by any of the Settling

Defendants;

(c)    shall not be offered or received against the Settling Defendants as

evidence of a presumption, concession or admission with respect to any liability, negligence,

fault or wrongdoing, or in any way referred to for any other reason as against any of the Settling

Defendants, in any other civil, criminal or administrative action or proceeding, other than such

proceedings as may be necessary to effectuate the provisions of this Stipulation; provided,

however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to

effectuate the liability protection granted them hereunder;

      (d)    shall not be construed against any of the Settling Defendants as an

admission or concession that the consideration to be given hereunder represents the amount that

could be or would have been recovered after trial; and

      (e)    shall not be construed as or received in evidence as an admission,

concession or presumption against Named Plaintiffs or any of the Class Members that any of

their claims are without merit, or that any defenses asserted by the Settling Defendants have any

merit, or that damages recoverable under the Delphi ERISA Action would not have exceeded the

Gross Settlement Fund.

## MISCELLANEOUS PROVISIONS

22.    All of the exhibits attached hereto are hereby incorporated by reference as though

fully set forth herein.

23.    Named Plaintiffs, on their own behalf and on behalf of each member of the Class,

agree to hold each of the Released Parties, which shall include, without limitation, the Executive

Committee of the Board of Directors of Delphi Corporation and its various past and present

members and the Investment Policy Committee and its various past and present members,

harmless from any claims for indemnification and/or contribution that have been, could have

been, or could be asserted against the Released Parties by any Barred Person arising from or

relating to the Delphi ERISA Action, including, without limitation, any such claims for

indemnification and/or contribution that have been, could have been, or could be asserted by

31

State Street Bank and Trust Company. Such agreement to hold the Released Parties harmless may be implemented solely (i) through the reduction of any judgment that may be obtained against an indemnified party in an amount equal to the payment that such party would otherwise receive from any of the Released Parties on account of such indemnified claim, and/or (ii) recovery from the Net Settlement Fund. Until the Delphi ERISA Action has been concluded and fully and finally resolved with respect to all Barred Persons, there shall be no distribution from the Net Settlement Fund that would cause the balance remaining in the Net Settlement Fund to be less than the aggregate of Named Plaintiffs' claims for potential damages with respect to all claims against Barred Persons that have not been concluded and fully and finally resolved. In addition, in the event that the Named Plaintiffs determine to compromise and settle any claim against any party, including but not limited to State Street Bank and Trust Company, arising from or relating to the Delphi ERISA Action, Named Plaintiffs shall cause any such settlement to bar that party from making any claims for indemnification and/or contribution against any of the Released Parties or otherwise seeking indemnification and/or contribution from any of the Released Parties.

24.     The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Named Plaintiffs and Settling Defendants agree not to assert in any forum that the Delphi ERISA Action was brought by the plaintiffs or defended by Settling Defendants in those actions in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Delphi ERISA Action. The parties agree that the amount paid and the other terms of the Settlement were

negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached

voluntarily after consultation with experienced legal counsel.

25.    Prior to entry of the Order preliminarily approving the Settlement, Named

Plaintiffs shall dismiss from the Delphi ERISA Action defendant Thomas H. Wyman, without

prejudice.

26.    This Stipulation may not be modified or amended, nor may any of its provisions

be waived, except by a writing signed by all parties hereto or their successors-in-interest.

27.    The headings herein are used for the purpose of convenience only and are not

meant to have legal effect.

28.    The administration and consummation of the Settlement as embodied in this

Stipulation shall be under the authority of the Court, and that Court shall retain jurisdiction for

the purpose of entering orders providing for awards of attorneys' fees and expenses to Lead

Counsel and enforcing the terms of this Stipulation.

29.    The waiver by one party of any breach of this Stipulation by any other party shall

not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

30.    This Stipulation and its exhibits, and any related escrow agreements constitute the

entire agreement concerning the Settlement of the Delphi ERISA Action, and no representations,

warranties, or inducements have been made by any party hereto concerning this Stipulation or its

exhibits other than those contained and memorialized in such documents.

31.    This Stipulation may be executed in one or more counterparts. All executed

counterparts and each of them shall be deemed to be one and the same instrument.

32.    This Stipulation shall be binding upon, and inure to the benefit of, the successors

and assigns of the parties hereto.

33.    The construction and interpretation of this Stipulation and the Supplemental

Agreement shall be governed by the internal laws of the State of New York without regard to

conflicts of laws, except to the extent that federal law of the United States requires that federal

law governs.

34.    This Stipulation shall not be construed more strictly against one party than

another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel

for one of the parties, it being recognized that it is the result of arm's-length negotiations

between the parties and all parties have contributed substantially and materially to the

preparation of this Stipulation.

35.    All counsel and any other person executing this Stipulation and any of the

exhibits hereto, or any related Settlement documents, warrant and represent that they have the

full authority to do so and that they have the authority to take appropriate action required or

permitted to be taken pursuant to the Stipulation to effectuate its terms.

36.    Named Plaintiffs shall be entitled to take up to ten (10) hours of deposition

testimony of Settling Defendants' witnesses. Named Plaintiffs shall cooperate with Settling

Defendants' counsel with respect to the scheduling and location of such depositions. Named

Plaintiffs shall only be entitled to request the production by Settling Defendants of non-

privileged documents relating to Named Plaintiffs' claims against non-settling defendants.

37.    Named Plaintiffs and Settling Defendants agree to cooperate fully with one

another in seeking (i) Court approval of the Order for Notice and Hearing, the Stipulation and the

Settlement and (ii) confirmation by the Bankruptcy Court of the Delphi Plan of Reorganization

and any request made to the Bankruptcy Court to approve this Settlement and the Insurance

Agreement, and to promptly agree upon and execute all such other documentation as may be

reasonably required to obtain final approval by the Court of the Settlement, confirmation by the

Bankruptcy Court of the Delphi Plan of Reorganization, and final approval of any request made

to the Bankruptcy Court to approve this Settlement.

DATED: August 31, 2007

**KELLER ROHRBACK L.L.P.**

By: _____

Lynn Lincoln Sarko
Gary A. Gotto
Amy Williams-Derry
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1200
Facsimile: (206) 623-3384

**Lead Counsel**

**SHEARMAN & STERLING LLP**

By: _____

Stuart J. Baskin
Brian H. Polovoy
Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

**Counsel for Delphi Corporation, ASEC
Manufacturing General Partnership (sued as
"ASEC Manufacturing"), Delphi Mechatronic
Systems, Inc. (sued as "Delphi Mechatronic
Systems"), the Investment Policy Committee,
Robert H. Brust, Susan A. McLaughlin,
and John D. Opie**

**BAKER BOTTS L.L.P.**

By: *Bridget Moore* (w/ consent Matt Allen on 8/31/07)

    William H. Jeffress, Jr.
    Bridget M. Moore
    Michael G. Pattillo, Jr.
    Joe R. Caldwell, Jr.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg III**


**O'MELVENY & MYERS LLP** (per consent 8/31/07 mg£)

By: *Robert N. Eccles*

    Robert N. Eccles
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

# **<u>EXHIBIT A</u>**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

-----------------------------------------------------------x

| | |
|---|---|
| IN RE: DELPHI CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION | MDL No. 1725<br>Master Case No. 05-md-1725<br>Hon. Gerald E. Rosen<br><br>This Document Relates to:<br>*In re Delphi Corp. ERISA Litigation*,<br>Nos. 05-CV-70882, 05-70940,<br>05-71030, 05-71200, 05-71249,<br>05-71291, 05-71339, 05-71396,<br>05-71397, 05-71398, 05-71437,<br>05-71508, 05-71620, 05-71897,<br>05-72198 |

-----------------------------------------------------------x

## ORDER PRELIMINARILY APPROVING SETTLEMENT, PRELIMINARILY CERTIFYING A SETTLEMENT CLASS, APPROVING FORMS AND METHODS OF NOTICE, AND SETTING A FAIRNESS HEARING

This litigation involves consolidated actions asserting claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), with respect to the Delphi Savings-Stock Purchase Program for Salaried Employees (the "Salaried Plan"), the Delphi Personal Savings Plan for Hourly-Rate Employees (the "Hourly Plan"), the ASEC Manufacturing Savings Plan (the "ASEC Plan"), and the Delphi Mechatronic Systems Savings-Stock Purchase Program (the "Mechatronic Plan") (collectively, the "Plans").

Presented to the Court for preliminary approval is a Settlement of the litigation as against certain defendants. The Settlement also would resolve certain claims filed against Delphi Corporation in the Bankruptcy Case. The terms of the Settlement are set out in a Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions dated August 31, 2007 (the "Settlement Stipulation"), executed by counsel on behalf of the Named Plaintiffs and the Settling Defendants.[1]

The Court has considered the proposed Settlement to determine, among other things, whether to certify a class for settlement purposes and whether the Settlement is sufficient to warrant the issuance of notice to members of the Class. Upon reviewing the Settlement Stipulation and the ERISA Named Plaintiffs' Motion for Order Preliminarily Approving Settlement, Preliminarily Certifying a Settlement Class, Approving Forms and Method of Notice, and Setting a Fairness Hearing, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.    **Class Findings:**    The Court preliminarily finds that the requirements of the United States Constitution, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Michigan, and any other applicable laws have been met as to the "Class" defined below, in that:

a.    The Class is cohesive and well defined.

b.    The members of the Class are ascertainable from records kept with respect to the Plans, and the members of the Class are so numerous that their joinder before the Court would be impracticable.

---

1.    Capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Settlement Stipulation.

c.    Based on allegations in the Consolidated Class Action Complaint, the Court preliminarily finds that there are one or more questions of fact and/or law common to the Class.

d.    Based on allegations in the Consolidated Class Action Complaint that the Settling Defendants engaged in misconduct affecting members of the Class in a uniform manner, the Court finds that the claims of the Named Plaintiffs are typical of the claims of the Class.

e.    The Named Plaintiffs will fairly and adequately protect the interests of the Class in that (i) the interests of Named Plaintiffs and the nature of their alleged claims are consistent with those of the members of the Class, (ii) there appear to be no conflicts between or among Named Plaintiffs and the Class, and (iii) Named Plaintiffs and the members of the Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions.

f.    The prosecution of separate actions by individual members of the Class would create a risk of (i) inconsistent or varying adjudications as to individual Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in the Delphi ERISA Action or (ii) adjudications as to individual Class members that would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability of those persons to protect their interests.

2.    **Class Certification:** Based on the findings set out in paragraph 1 above, the Court preliminarily certifies the following class (the "Class") for settlement purposes under Fed. R. Civ. P. 23(b)(1) and (2): all persons (a) who were (1) participants in or beneficiaries of the Salaried Plan, Hourly Plan or ASEC Plan at any time between May 28, 1999 and November 1, 2005, or (2) participants in or beneficiaries of the Mechatronic Plan at any time between June 1, 2001 and November 1, 2005, and (b) whose accounts included investments in the Delphi and/or GM stock funds. Excluded from the Class are (i) the Defendants; (ii) members of the immediate families of each of the Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any parent, subsidiary or affiliate of a Defendant; (v) any person who was an officer or director of a Defendant or any of their subsidiaries or affiliates during the Class Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any such excluded person or entity.

3.    **Class Representation:** The Court appoints Named Plaintiffs as class representatives for the Class, Keller Rohrback, L.L.P. as Lead Counsel for the Class, and Morgan & Meyers, PLC as Liaison Counsel for the Class. Named Plaintiffs are authorized and directed, in their capacities as Class representatives, to vote any chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the ERISA Plans' Equity Interest or any proof of claim based on or related to the allegations set forth in the Delphi ERISA Action in favor of and in acceptance of the Delphi Plan of Reorganization incorporating the Settlement.

MDL No. 1725
Findings and Order re Settlement  8/31/2007

4.    **Preliminary Findings Regarding Proposed Settlement:**    The
Court preliminarily finds that the proposed Settlement should be approved as (a) fair,
reasonable and adequate, (b) the product of serious, informed, arm's-length, and non-
collusive negotiations, (c) having no obvious deficiencies, (d) not improperly granting
preferential treatment to Class representatives or segments of the Class, (e) falling within
the range of possible approval, and (f) warranting notice to Class members of a formal
fairness hearing, at which evidence may be presented in support of and in opposition to
the proposed Settlement.

5.    **Fairness Hearing:**    A hearing is scheduled for  November 13,
2007 (the "Fairness Hearing") to determine, among other things:

a.    whether the Settlement should be approved as fair,
reasonable and adequate;

b.    whether the litigation should be dismissed with prejudice as
to the Settling Defendants pursuant to the terms of the Settlement Stipulation;

c.    whether the Notice and the Publication Notice and the
means of disseminating same pursuant to the Settlement Stipulation (i) constituted the
best practicable notice; (ii) constituted notice that was reasonably calculated, under the
circumstances, to apprise members of the Class of the pendency of the litigation, their
right to object to the Settlement, and their right to appear at the Fairness Hearing; (iii)
constituted due, adequate and sufficient notice to all persons entitled to notice; and (iv)
met all applicable requirements of the Federal Rules of Civil Procedure and any other
applicable law;

d.      whether to bar all Barred Claims against the Released Parties by any Barred Person;

e.      whether to establish a reserve of 25% of the Gross Settlement Fund for a potential award of attorneys' fees and expenses; and

f.      whether to grant to each Named Plaintiff a case contribution award of up to $5,000 payable from the Gross Settlement Fund.

6.      **Notice to Class:** The settling parties have presented to the Court a proposed form of Notice, which is appended hereto as Exhibit A.  With respect to such form of Notice, the Court finds that such Notice fairly and adequately: (a) describes the terms and effect of the Settlement; (b) notifies the Class concerning the proposed plan of allocation described in the Notice; (c) notifies the Class that Lead Counsel will request that the Court establish a reserve of 25% of the Gross Settlement Fund for a potential award of attorneys' fees and expenses and will request that the Court grant to each Named Plaintiff a case contribution award  payable from the Gross Settlement Fund of up to $5,000; (d) gives notice with respect to the proposed Bar Order; (e) gives notice to the Class of the time and place of the Fairness Hearing; and (f) describes how the recipients of the Notice may object to approval of the Settlement.  The settling parties have proposed the following manner of disseminating the Notice to members of the Class, and the Court finds that such proposed manner of dissemination is the best notice practicable under the circumstances and directs that Lead Counsel shall:

a.      By no later than forty-five (45) days before the Fairness Hearing, cause the Notice, with such non-substantive modifications thereto as may be

agreed upon by the settling parties and presented to the Court, to be mailed, by first-class

mail, postage prepaid, to the last known address of each of the following persons who can

be identified by reasonable effort: (i) each person within the Class and all non-settling

parties in the Delphi ERISA Action; (ii) in cases of pending litigation, arbitration or other

proceeding, if any, of any other claim against any of the Released Parties relating to any

of the Settled Claims, all counsel known by Lead Counsel to represent a member of the

Class; (iii) all other counsel known by Lead Counsel to represent a member of the Class;

(iv) counsel of record in the Delphi ERISA Action for any non-settling party; and (v) the

United States Department of Labor. Settling Defendants shall provide Lead Counsel with

the names and last known addresses of the members of the Class to the extent such

information is within Settling Defendants' custody or control.

   b. By no later than forty-five (45) days before the Fairness

Hearing, cause the Notice to be published on the website identified in the Notice.

   c. By no later than forty-five (45) days before the Fairness

Hearing, cause the Publication Notice in the form attached hereto as Exhibit B, with such

non-substantive modifications thereto as may be agreed upon by the settling parties and

presented to the Court, to be published on at least one occasion in the *USA Today*

(national edition) and the *Detroit Free Press*.

   d. By no later than ten (10) calendar days before the Fairness

Hearing, file with the Court and post on its website the motion for final approval of the

Settlement and the motion for approval of the Plan of Allocation described in the Notice.

At or before the Fairness Hearing, Lead Counsel shall file with the Court a proof of timely compliance with the foregoing mailing and publication requirements.

7.    **Objections to Settlement:**  All of the following persons shall be referred to herein as "Objectors": (a) any member of the Class who objects to the fairness, reasonableness or adequacy of the Settlement, to the Plan of Allocation, to any term of the Settlement Stipulation, to the proposed reserve for attorneys' fees and expenses, or to any request for compensation for the Named Plaintiffs, and (b) any person who would be bound by the Bar Order and who objects to entry of the Bar Order.  Any Objector must file with the Court a statement of his, her or its objection(s), specifying the reason(s), if any, for each such objection made, including any legal support and/or evidence that such Objector wishes to bring to the Court's attention or introduce in support of such objection.  The Objector must also mail the objection and all supporting law and/or evidence to Lead Counsel and counsel for certain Settling Defendants.  The addresses for filing objections with the Court and service on counsel are as follows:

> To the Court:
>
>> Clerk of the Court
>> United States District Court
>>  for the Eastern District of Michigan
>> 231 W. Lafayette Blvd., Fifth Floor
>> Detroit, MI  48226
>
> To Lead Counsel:
>
>> Lynn Lincoln Sarko, Esq.
>> Gary A. Gotto, Esq.
>> Keller Rohrback LLP
>> 1201 Third Avenue, Suite 3200
>> Seattle, WA  98101-3052
>> Fax:  206-623-3384

To counsel for certain of the Settling Defendants:

> Brian H. Polovoy, Esq.
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, New York 10022-6069
> Fax: 646-848-4703

The Objector and his, her or its counsel (if any) must both effect service of the objection on counsel listed above and file it with the Court so as to be received by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  If an Objector hires an attorney to represent him, her or it for the purposes of making such objection pursuant to this paragraph, the attorney must both effect service of a notice of appearance on counsel listed above and file it with the Court by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  Filing and service may be effected on the Court and counsel by mail, provided facsimile service is made on counsel listed above by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  Any member of the Class or other person who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

8.      **Appearance at Fairness Hearing:**  Any Objector who files and serves a timely, written objection in accordance with paragraph 7 above may appear at the Fairness Hearing either in person or through counsel retained at the Objector's expense.  Objectors or their attorneys intending to appear at the Fairness Hearing must

effect service of a notice of intention to appear setting forth, among other things, the name, address and telephone number of the Objector (and, if applicable, the name, address and telephone number of the Objector's attorney) on counsel listed above and file it with the Court by no later than fourteen (14) days before the date of the Fairness Hearing. Filing and service may be effected on the Court and counsel by mail, provided facsimile service is made on counsel listed above by no later than fourteen (14) calendar days before the date of the Fairness Hearing. Any Objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

9.    **Notice Expenses:** Reasonable expenses up to $150,000 incurred by the Escrow Agent in implementing the provisions of paragraph 6 above pertaining to providing notice of the Settlement, as well as Taxes as provided for in the Settlement Stipulation, shall be paid solely from the Gross Settlement Fund (including by reimbursement to the Escrow Agent from the Gross Settlement Fund upon notice to Settling Defendants' counsel) pursuant to direction by Lead Counsel, without further order of this Court.

10.    **Service of Papers:** Settling Defendants' counsel and Lead Counsel shall promptly furnish each other with copies of any and all objections and notices of intention to appear at the Fairness Hearing that come into their possession.

11.    **Termination of Settlement:** This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered

MDL No. 1725
Findings and Order re Settlement 8/31/2007

this Order (pursuant to the provisions of paragraph 20 of the Settlement Stipulation), if the Settlement is terminated or does not reach the Effective Date under the terms of the Settlement Stipulation.  In such event, paragraph 20 of the Settlement Stipulation shall govern the rights of the settling parties.

12.   **Use of Order:**   Under no circumstances shall this Order be construed, deemed or used as an admission, concession or declaration by or against any of the Settling Defendants of any fault, wrongdoing, breach or liability.  Nor shall the Order be construed, deemed or used as an admission, concession or declaration by or against Named Plaintiffs or the Class that their claims lack merit or that the relief requested in the Delphi ERISA Action is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he, she or it may have.

SO ORDERED this _____ day of September, 2007.


_____
Hon. Gerald E. Rosen
United States District Judge

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

-----------------------------------------------------------x
                                                           :
                                                           :
IN RE: DELPHI CORPORATION                                  :       MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"                           :       Master Case No. 05-md-1725
LITIGATION                                                 :       Hon. Gerald E. Rosen
                                                           :
                                                           :       This Document Relates to:
                                                           :       *In re Delphi Corp. ERISA Litigation,*
                                                           :       Nos. 05-CV-70882, 05-70940,
                                                           :       05-71030, 05-71200, 05-71249,
                                                           :       05-71291, 05-71339, 05-71396,
                                                           :       05-71397, 05-71398, 05-71437,
                                                           :       05-71508, 05-71620, 05-71897,
                                                           :       05-72198
                                                           :
-----------------------------------------------------------x

## NOTICE OF PROPOSED SETTLEMENT OF ERISA CLASS ACTION LITIGATION, PROPOSED BAR ORDER, SETTLEMENT FAIRNESS HEARING, PROPOSED RESERVE FOR ATTORNEYS' FEES AND PROPOSED NAMED PLAINTIFFS' COMPENSATION

TO:

   ANY PERSON WHO WAS A PARTICIPANT AT ANY TIME BETWEEN
   MAY 28, 1999 AND NOVEMBER 1, 2005 IN THE DELPHI SAVINGS-STOCK
   PURCHASE PROGRAM FOR SALARIED EMPLOYEES (THE "SALARIED
   PLAN"), THE DELPHI PERSONAL SAVINGS PLAN FOR HOURLY-RATE
   EMPLOYEES (THE "HOURLY PLAN"), OR THE ASEC MANUFACTURING
   SAVINGS PLAN (THE "ASEC PLAN"), OR A PARTICIPANT AT ANY TIME
   BETWEEN JUNE 1, 2001 AND NOVEMBER 1, 2005 IN THE DELPHI
   MECHATRONIC SYSTEMS SAVINGS-STOCK PURCHASE PROGRAM (THE
   "MECHATRONIC PLAN") (COLLECTIVELY, THE "PLANS"), WHOSE

ACCOUNT INCLUDED INVESTMENTS IN THE DELPHI AND/OR GM STOCK
FUNDS

and

ANY BENEFICIARY, ALTERNATE PAYEE, REPRESENTATIVE, OR
SUCCESSOR-IN-INTEREST OF ANY SUCH PERSON
and

ANY PERSON WHO IS A DEFENDANT IN THE ABOVE-CAPTIONED
"ERISA" LITIGATION WHO IS NOT A PARTY TO THE PROPOSED
SETTLEMENT DESCRIBED IN THIS NOTICE

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

The United States District Court for the Eastern District of Michigan (the "Court")
has preliminarily approved a proposed settlement of a class action lawsuit brought
under the Employee Retirement Income Security Act (the "Settlement"). The
Settlement is with all of the Defendants in the litigation other than State Street Bank
and Trust Company ("State Street"). The terms of the Settlement are contained in
a Stipulation and Agreement of Settlement With Certain Defendants – ERISA
Actions (the "Settlement Stipulation"), a copy of which is available at
www.KellerSettlements.com or by contacting Lead Counsel identified below.
Capitalized terms used in this Notice and not defined herein have the meanings
assigned to them in the Settlement Stipulation. The Settlement will provide for
payments to the Plans and for allocation of those payments to the accounts of, or
otherwise for the benefit of, Classs Members. The Settlement is summarized below.

The Settlement provides for a Bar Order that will bar certain claims against the
Released Parties by persons described in the Settlement Stipulation as "Barred
Persons."

The Court has scheduled a hearing to evaluate the fairness and adequacy of the
proposed Settlement at which the Court will consider Named Plaintiffs' motion for
final approval of the Settlement (including the Bar Order), for the establishment of
a reserve for a potential award of attorneys' fees and costs, and for case
contributions awards to the Named Plaintiffs. That hearing, before the Hon. Gerald
E. Rosen, has been scheduled for November 13, 2007, at ____ .m. in Courtroom ____,
of the United States District Court for the Eastern District of Michigan, 231 W.
Lafayette Blvd., Detroit, Michigan.

Any objections to the Settlement, the Bar Order, the reserve for attorneys' fees and
costs, or compensation to the Named Plaintiffs, must be served in writing on the

attorneys for the Class and on counsel for certain of the Settling Defendants.  The procedure for objecting is described below.

The Settlement does not settle, resolve, or dismiss any claims that were brought against certain of the Defendants under applicable securities laws, although a separate settlement with respect to certain of such claims has concurrently been presented to the Court for approval.

This Notice contains summary information with respect to the Settlement.  The terms and conditions of the Settlement are set forth in the Settlement Stipulation. The Settlement Stipulation, and additional information with respect to this litigation, are available at www.kellersettlements.com, or from counsel listed on Page 4 below.

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY.  IF YOU ARE A MEMBER OF THE CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS.  YOU ARE NOT BEING SUED IN THIS MATTER. YOU NEED NOT APPEAR IN COURT, AND YOU NEED NOT HIRE AN ATTORNEY IN THIS CASE.  IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING.  IF YOU DISAPPROVE OF THE SETTLEMENT, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

Your Legal Rights and Options in the *Settlement*:

| | |
|---|---|
| **You May Do Nothing.**<br>**No Action is Necessary to Participate in the Settlement.** | If the Settlement is approved by the Court and you are a member of the Class, you do not need to do anything to receive a payment. The portion, if any, of the Net Settlement Fund to be allocated to your Plan account or otherwise for your benefit will be calculated as part of the implementation of the Settlement.<br><br>If you are a current Plan participant, any share of the Net Settlement Fund to which you are entitled will be deposited into your Plan account.  If you no longer are a Plan participant and are entitled to share in the Net Settlement Fund, a Plan account will be established for you, if necessary, and you will be notified of such account. |

| | |
|---|---|
| **You May Object to the Settlement** <br><br> **(so as to be received by October 29, 2007)** | If you wish to object to any part of the Settlement, including the requested attorneys' fees and costs, Named Plaintiffs' compensation, or the Bar Order, you may (as discussed below) write to the Court and counsel about why you do not like the Settlement. |
| **You May Attend the Hearing** <br><br> **(to be held on November 13, 2007)** | If you have submitted to the Court and counsel a written objection to the Settlement, you may (but do not have to) attend the Court hearing regarding the Settlement and present your objections to the Court. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court still has to decide whether to grant final approval of the Settlement. Payments will be made only if certain requirements are satisfied, including final approval by the Court of the Settlement bein upheld in the event of any appeals.

Further information regarding the litigation and this Notice may be obtained by

contacting Plaintiffs' Lead Counsel:

Lynn Lincoln Sarko, Esq.
Gary A. Gotto, Esq.
Amy Williams-Derry, Esq.
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Toll-Free Phone: (877) 296-9982
Email: claimsadministrator@delphisettlement.com
www.KellerSettlements.com

## WHAT THIS NOTICE CONTAINS

**Summary of Settlement** ...............................................................................................

    1.    Why did I get this Notice package? ...............................................................

    2.    What is the lawsuit about? ............................................................................

    3.    Why is this case a class action? ..................................................................

    4.    Why is there a Settlement? .........................................................................

    5.    How do I know whether I am part of the Settlement? ...............................

    6.    What does the Settlement provide? .............................................................

    7.    How much will my payment be? ..................................................................

    8.    How can I get a payment? ............................................................................

    9.    When would I get my payment? ..................................................................

    10.    Can I get out of the Settlement? ................................................................

    11.    Do I have a lawyer in the case? ..................................................................

    12.    How will the lawyers be paid? ....................................................................

    13.    How do I tell the Court if I don't like the Settlement? ...............................

    14.    When and where will the Court decide whether to grant final approval
of the Settlement? ........................................................................................

    15.    Do I have to come to the hearing? ..............................................................

    16.    May I speak at the hearing? .........................................................................

    17.    What happens if I do nothing at all? ...........................................................

    18.    How do I get more information? ..................................................................

This litigation (the "Delphi ERISA Action") is a consolidation of a series of cases filed in

different federal courts.  As described in more detail below and in the complaints filed in the

lawsuits, the cases concern allegations that Defendants breached fiduciary duties they owed

under the Employee Retirement Income Security Act of 1974 ("ERISA") to participants in the

Plans.  Copies of the most recent Consolidated Complaint and other documents filed in the

Delphi ERISA Action are available at www.KellerSettlements.com.

## SUMMARY OF SETTLEMENT

1.      A Gross Settlement Fund consisting of consideration that Lead Counsel

currently expect may be valued at approximately $47 million will be

established to settle the Delphi ERISA Action with respect to the Released

Parties.  This fund will consist of approximately $22.5 million in cash funded

from available insurance policies and an allowed interest in the Delphi

Corporation chapter 11 Bankruptcy Case in an aggregate amount that Lead

Counsel expect may be valued at approximately $24.5 million, and interest

earned on the fund while it is held in escrow.  The allowed interest granted to

the Named Plaintiffs by the Bankruptcy Court in Delphi's bankruptcy

proceeding is a distribution of Delphi Plan Currency in the same form, ratio

and treatment provided to general unsecured creditors in the Delphi Plan of

Reorganization but without provision for accrued interest.  Lead Counsel will

investigate the possibility of selling this allowed interest prior to the receipt of

any distributions from the Delphi bankruptcy estate; if Lead Counsel conclude

that such a sale is in the best interests of the Class, Lead Counsel will seek

Court authorization to consummate such a sale and deposit the proceeds
thereof in the Gross Settlement Fund. Lead Counsel currently anticipate that
the value of the allowed interest in the Bankruptcy Case will be approximately
$24.5 million.

2.      Subject to certain restrictions in the Settlement Stipulation, the net amount in
the Settlement Fund, including interest, and after payment of any taxes and
approved reserves, costs, fees, and expenses, will be paid to the Plans and,
after payment of implementation expenses, the remaining amount shall be
allocated to Class Members according to a Plan of Allocation to be approved
by the Court.

3.      Claims asserted in the Delphi ERISA Action against defendant State Street
will *not* be settled as part of this Settlement. Litigation of those claims will
continue.

As with any litigation, Named Plaintiffs would face an uncertain outcome if the Delphi
ERISA Action were to continue against the Settling Defendants. Continued litigation of the
Delphi ERISA Action against the Settling Defendants could result in a judgment or verdict
greater or lesser than the recovery under the Settlement, or in no recovery at all.

Throughout this litigation, Named Plaintiffs and the Settling Defendants have disagreed
on both liability and damages, and they do not agree on the amount that would be recoverable
even if the Plaintiffs were to prevail at trial. Settling Defendants have denied and continue to
deny the claims and contentions alleged by Named Plaintiffs, that they are liable at all to the
Class, and that the Class or the Plans have suffered any damages for which the Settling
Defendants are legally responsible. Nevertheless, the Settling Defendants have taken into

account the uncertainty and risks inherent in any litigation, particularly in a complex case such as this, and have concluded that it is desirable that the Delphi ERISA Action be fully and finally settled and resolved as to them on the terms and conditions set forth in the Settlement Stipulation.

## 1. Why did I get this Notice package?

You or someone in your family are/is or may have been a participant in or beneficiary of one of the Plans who meets the definition of the "Class" contained in the Settlement Stipulation. The Court ordered that this Notice to be sent to you because, if you fall within that group, you have a right to know about the Settlement and about all of your options before the Court decides whether to approve the Settlement. If the Court grants final approval of the Settlement, and after any objections and appeals are resolved, and subject to certain conditions in the Settlement Stipulation, the Net Settlement Fund may become available to be paid to the Plans and then allocated among Class members according to a Court-approved Plan of Allocation. This Notice package describes the litigation, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. Alternatively, if you are a non-settling defendant in the Delphi ERISA Action, the Court caused this Notice to be sent to you because your rights may be affected by the Bar Order proposed to be entered by the Court in connection with the Settlement.

The Court in charge of these cases is the United States District Court for the Eastern District of Michigan. The people who sued are called "Named Plaintiffs," and the people they sued are called "Defendants." The lawsuit that is the subject of this Notice and the Settlement is known as *In re Delphi Corporation Securities, Derivative & "ERISA" Litigation*, MDL No.

1725, Master File No. 05-CV-70882-GER. This lawsuit represents a consolidation of a number
of different cases alleging class action claims under ERISA. We refer to these consolidated
cases collectively as the "Delphi ERISA Action."

The following persons and entities who have agreed to settle are called the "Settling
Defendants": Delphi Corporation, ASEC Manufacturing General Partnership, Delphi
Mechatronic Systems, Inc., the Delphi Corporation Board of Directors Executive Committee and
its past and present members, the Investment Policy Committee and its past and present
members, J.T. Battenberg III, Robert H. Brust, Alan S. Dawes, Susan McLaughlin, and John D.
Opie.

## 2. What is the lawsuit about?

The Delphi ERISA Action alleges that the Defendants were fiduciaries of the Plans and
violated fiduciary duties under ERISA that they owed to the participants of the Plans. In the
Consolidated Class Action Complaint, Named Plaintiffs have asserted causes of action for the
losses suffered by the Plans as the result of the alleged breaches of fiduciary duties by the
Defendants.

Participants in the Plans maintained account balances that were allocated among various
investment funds maintained by the Plans. During much of the period May 28, 1999, through
November 1, 2005, the investment funds included a fund consisting of Delphi stock and a fund
consisting of GM stock. Many participants invested their contributions to the Plans in the Delphi
stock fund. In addition, during much of the Class Period, employer matching contributions were
made in the form of Delphi stock and credited to participants' account balances in the Delphi
stock fund.

The Named Plaintiffs in the Delphi ERISA Action allege that certain of the Defendants had the discretion to freeze further investments in Delphi stock and to sell the Plans' holdings of Delphi stock. They also allege that Defendants knew or should have known that Delphi stock was not a prudent investment. As a result, Named Plaintiffs assert that the Defendants acted imprudently when they failed to prevent further investment in Delphi stock and failed to liquidate the Plans' Delphi stock holdings. In addition, Named Plaintiffs allege that Defendants had the duty to monitor the performance of the Plans' investment fiduciaries, including the investment fiduciaries with responsibilities with respect to the Delphi and GM stock funds, and that Defendants breached those duties to monitor.

The Settling Defendants deny that they have liability to the Plans or their participants or beneficiaries. If the litigation were to continue, the Settling Defendants would raise numerous defenses to liability, including the following:

- They were not fiduciaries of the Plans, or, if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the Delphi ERISA Action;

- To the extent they were fiduciaries as to the matters at issue in the Delphi ERISA Action, they fully discharged all fiduciary duties imposed on them by ERISA;

- Even if they failed to discharge one or more of their ERISA fiduciary duties, any such breach of fiduciary duty did not cause the losses alleged by Named Plaintiffs; and

- The relief sought by the Named Plaintiffs in the Delphi ERISA Action is not permitted under ERISA.

Lead Counsel have conducted an extensive investigation of Delphi and of the alleged losses suffered by the Plans as a result of the breaches of fiduciary duty alleged in the Delphi ERISA Action. In addition, through that investigation and through discovery of information in

the Delphi ERISA Action, Lead Counsel have obtained hundreds of thousands of pages of

documents, including documents and materials governing the Plans, communications with Plan

participants, internal Delphi documents regarding the Plans, Delphi's Securities and Exchange

Commission filings, press releases, public statements, news articles and other publications,

documents filed in the Delphi bankruptcy proceedings, and documents that Delphi produced to

the Securities and Exchange Commission regarding Delphi's financial condition and alleged

fraudulent financial transactions during the class period.  Lead Counsel have conducted an

extensive review and analysis of these materials.

Lead Counsel have opposed several motions by all Defendants to dismiss the Delphi

ERISA Action.  These motions are fully briefed, and at the time the Settlement was reached

these motions were pending before the Court.

This Settlement is the product of intense, arm's-length negotiations between Lead

Counsel and Settling Defendants' counsel conducted in a multi-day mediation before the Court-

appointed master for settlement purposes, the Honorable Layn R. Phillips.

Named Plaintiffs will continue to litigate their claims against State Street.  If the Court

approves the Settlement, the Court will enter a "Bar Order" that will prevent "Barred Persons"

(which includes State Street) from suing any of the Settling Defendants for "indemnification" or

"contribution" arising out of the Delphi ERISA Action or for any other claims arising out of the

Settled Claims, including any claims relating to the payment of the Settlement Amount.  This

means that, for example, if Named Plaintiffs win a judgment against State Street, State Street

will not be able to file a lawsuit seeking reimbursement from any of the Settling Defendants for

any portion of what State Street is obligated to pay Named Plaintiffs under the judgment.

The Bar Order will also provide that any verdict or judgment that might be obtained in
the Delphi ERISA Action against a Barred Person will be reduced by certain amounts to be
determined by the Court pursuant to criteria set forth in the Settlement Stipulation. The
Settlement Stipulation also provides that the Class will hold the Released Parties harmless with
respect to any claims for indemnification or contribution that are asserted against them by any
Barred Person arising from or related to the Delphi ERISA Action, which hold harmless
agreement may be implemented solely through reduction of any judgment that may be obtained
against such Barred Person or recovery from the Net Settlement Fund. The Settlement
Stipulation also provides that for so long as there are claims pending against any Barred Person
in the Delphi ERISA Action, no distribution will be made from the Net Settlement Fund to the
extent that such distribution would reduce the balance in the Net Settlement Fund below the
aggregate damages amounts being sought from the Barred Persons in the Delphi ERISA Action.
Any person or entity that objects to the Bar Order may file an objection with the Court, appear at
the Fairness Hearing on November 13, 2007, and be heard by the Court regarding such objection,
in accordance with the procedures described in this Notice.

### 5. Why is this case a class action?

In a class action, one or more plaintiffs, called "Named Plaintiffs," sue on behalf of
people who have similar claims. All of the individuals on whose behalf the Named Plaintiffs are
suing are "Class Members." One court resolves the issues for all Class Members. U.S. District
Judge Gerald E. Rosen is presiding over this case. In its order granting preliminary approval of
the Settlement and setting the date for the Fairness Hearing, the Court certified the Class for
settlement purposes in the Delphi ERISA Action.

The Named Plaintiffs, each of whom is a current or former employee of Delphi and participant in one of the Plans, are: Gregory Bartell, Kimberly Chase-Orr, Thomas Kessler, Donald McEvoy, Neal Folck, and Irene Polito.

## 4. Why is there a Settlement?

This Settlement is the product of extensive, arm's-length negotiations between Lead Counsel and Settling Defendants' counsel, and was facilited by the services of an experienced mediator. The Court has not reached any final decisions on the merits of Named Plaintiffs' claims against the Settling Defendants. Instead, the Named Plaintiffs and Settling Defendants have agreed to a settlement to end the lawsuit as between them. In reaching the Settlement, they have avoided the cost and time of a trial. As with any litigation, the Named Plaintiffs would face an uncertain outcome if this case went to trial. On the one hand, pursuing the case against the Settling Defendants could result in a verdict offering relief greater than this Settlement. On the other hand, continuing the case against the Settling Defendants could result in a verdict for less money than Named Plaintiffs have obtained in this Settlement, or even in no recovery at all. Based on these factors, the Named Plaintiffs and their attorneys believe the Settlement is in the best interests of all Class Members. Additional information concerning the Settlement and these factors is available in the motion for preliminary approval of the Settlement Stipulation, which may be obtained at www.KellerSettlements.com.

## 5. How do I know whether I am part of the Settlement?

United States District Judge Gerald E. Rosen has conditionally certified that this Settlement shall proceed on behalf of everyone who, subject to certain exceptions identified below, fits the following description:

All persons (a) who were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28, 1999 and November 1, 2005, or (ii) participants in or beneficiaries of the Delphi Mechatronic Systems Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005, and (b) whose accounts included investments in the Delphi and/or GM Stock Funds. Excluded from the Class are (i) the Defendants; (ii) members of the immediate families of each of the Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any parent, subsidiary or affiliate of a Defendant; (v) any person who was an officer or director of a Defendant or of any of Defendants subsidiaries or affiliates during the Class Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any such excluded person or entity.

If you are a Class Member, your share of the Net Settlement Fund, if any, will depend upon the Court-approved Plan of Allocation, described in Section 7 below.

**6. What does the Settlement provide?**

A Settlement Fund consisting of consideration that Lead Counsel currently expect may be valued at approximately $47 million will be established to settle the Delphi ERISA Action with respect to the Released Parties. This fund will consist of $22.5 million in cash funded from available insurance policies and an allowed interest in the Delphi Corporation chapter 11 Bankruptcy Case of Delphi Plan Currency in the aggregate amount of approximately $24.5 million, and interest earned by the fund while it is held in escrow. The allowed interest granted to Named Plaintiffs by the Bankruptcy Court in Delphi's bankruptcy proceeding is a distribution from Delphi in the same form, ratio and treatment provided to general unsecured creditors in the Delphi Plan of Reorganization but without provision for accrued interest. Lead Counsel will investigate the possibility of selling this allowed interest prior to the receipt of any distributions from the Delphi bankruptcy estate; if Lead Counsel concludes that such a sale is in the best interests of the Class, they will seek Court authorization to consummate such a sale and deposit

the proceeds thereof in the Gross Settlement Fund. Lead Counsel anticipate that the value of the

allowed interest will be approximately $24.5 million. The Net Settlement Fund, including

interest, and after payment of and establishment of reserves for any taxes and Court-approved

costs, fees, and expenses, including any Court-approved award of attorneys' fees and expenses

(or reserve therefor), and Court-approved compensation to be paid to the Named Plaintiffs, and

subject to certain restrictions in the Settlement Stipulation, will be paid to the Plans and, after

payment of implementation expenses, the remaining amount will be allocated to the Plan

accounts of Class Members (or successor accounts for Class Members who no longer hold Plan

accounts) according to a Plan of Allocation to be approved by the Court. Any payment to the

Plans is subject to certain conditions and limitations set forth in the Settlement Stipulation.

        The Settlement Stipulation also provides that Named Plaintiffs, on their own behalf and

on behalf of each member of the Class, agree to hold each of the Released Parties, which shall

include, without limitation, the Executive Committee of the Board of Directors of Delphi

Corporation and its various past and present members and the Investment Policy Committee and

its various past and present members, harmless from any claims for indemnification and/or

contribution that have been, could have been, or could be asserted against the Released Parties

by any Barred Person arising from or relating to the Delphi ERISA Action, including, without

limitation, any claims for indemnification and/or contribution that have been, could have been, or

could be asserted by State Street Bank and Trust Company. Such agreement to hold the

Released Parties harmless may be implemented solely (i) through the reduction of any judgment

that may be obtained against an indemnified party in an amount equal to the payment that such

party would otherwise receive from any of the Released Parties on account of such indemnified

claim, and/or (ii) recovery from the Net Settlement Fund. Paragraph 23 of the Settlement

Stipulation provides that until the Delphi ERISA Action has been concluded and fully and finally resolved with respect to all Barred Persons, there shall be no distribution from the Net Settlement Fund that would cause the balance remaining in the Net Settlement Fund to be less than the aggregate of Named Plaintiffs' claims for potential damages with respect to all claims against Barred Persons that have not been concluded and fully and finally resolved.

All Class members and anyone claiming through them are deemed to fully release the Released Parties from Settled Claims. The Released Parties are defined in the Settlement Stipulation; generally they are the Settling Defendants and certain affiliated or otherwise related persons and entities. The Settled Claims, also defined in the Settlement Stipulation, generally include all claims asserted in the Delphi ERISA Action and all similar claims made in the Bankruptcy Case, as well as any claims that could have been asserted in any forum by or on behalf of Class Members which arise out of, are based upon, or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi ERISA Action. This means that Class members will not have the right to sue the Released Parties for any such claims. It also means that Class members who filed proofs of claim in Delphi's Bankruptcy Case asserting claims related to the Plans of the type described above in this paragraph shall not be entitled to recover anything under those proofs of claim, but shall recover what they are entitled to receive under the Settlement as a member of the Class.

The Settlement also provides for a "Bar Order." This is a Court order that will bar any non-settling defendant in the Delphi ERISA Action and anyone else with actual or constructive notice of the Settlement from bringing any "Barred Claim" in any forum against any of the Released Parties. The Barred Claims generally include claims for indemnity or contribution

16

arising out of the Delphi ERISA Action, or for any other claims arising out of the Settled Claims, including any claims relating to the payment of the Settlement Amount. The Bar Order will also provide that any verdict or judgment that might be obtained in the Delphi ERISA Action against a Barred Person will be reduced by certain amounts to be determined by the Court pursuant to criteria set forth in the Settlement Stipulation. Any person or entity that objects to the Bar Order may file an objection with the Court, and may appear at the Fairness Hearing, in accordance with the procedures described in this Notice.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Stipulation (including its exhibits), which may be obtained at www.KellerSettlements.com, or by contacting counsel listed at (877) 296-9982.

### 7. How much will my payment be?

Plaintiffs will submit a detailed Plan of Allocation to the Court for approval prior to the Fairness Hearing. The Plan of Allocation, which, after filing, may be obtained at www.KellerSettlements.com, or by contacting Lead Counsel, will describe the manner by which the Settlement proceeds paid into the Plans (the "Net Settlement Fund") will be distributed to Class Members. In general terms, the Net Settlement Fund will be allocated to Class Members on a pro rata basis such that the amount received by each Class Member will depend on his or her calculated loss compared to the total losses sought to be recovered in the Delphi ERISA Action from the Settling Defendants. Because the Net Settlement Fund is less than the total losses alleged to be suffered in the Delphi ERISA Action, each Class Member's proportionate recovery will be less than his or her alleged loss. If your proportionate recovery is a nominal

amount (less than $10 or such other amount as is approved by the Court), it may be forfeited to

the Plans or distributed *pro rata* to other Class Members. You are not responsible for calculating

the amount you may be entitled to receive under the Settlement. This calculation will be done as

part of the implementation of the Settlement, and will be based on reasonably available data from

the Plans.

**8. How can I get a payment?**

You do <u>not</u> need to file a claim for recovery. If you are a Settlement Class member

entitled to a share of the Net Settlement Fund, your share will be deposited in your Plan account.

If you are a former Plan participant, an account will be established for you in the Plan if

necessary, and you will be notified of such account. If you are a former participant and have not

provided the Plan with your current address, please contact the Plan administrator at Delphi

immediately, or contact Lead Counsel either by email at

claimsadministrator@delphisettlement.com or at (877) 296-9982.

**9. When would I get my payment?**

Payment is conditioned on several contingencies, including the Court's approval of the

Settlement and such approval becoming Final and no longer subject to any appeals to any court;

as well as the receipt of the proceeds of the allowed interest under the Delphi Plan of

Reorganization. In addition, as described in the answer to Question No. 6 above, for so long as

any claim is pending in the Delphi Delphi ERISA Action against any Barred Person,

distributions from the Net Settlement Fund will not be made to the extent they would reduce the

balance in the Net Settlement Fund below the aggregate damages amounts being sought from

Barred Persons in the Delphi Delphi ERISA Action. Subject to these limitations, and upon

satisfaction of various conditions, the Net Settlement Fund will be paid to the Plans and allocated

to the accounts of members of the Settlement Class pursuant to the Plan of Allocation (described

in the Answer to Question No. 7 above) as soon as possible after final approval has been

obtained for the Settlement (which includes affirmation on appeal, if any, and includes approval

by the Bankruptcy Court and the affirmation upon appeal, if any, taken therefrom). Any appeal

of the Court's final approval or bankruptcy court approval could take several years. Any accrued

interest on the Net Settlement Fund will be included in the amount paid to the Plans and

allocated to the Plan accounts of members of the Class. The Settlement may be terminated on

several grounds, including if the Court does not approve or modifies the Settlement. Should the

Settlement be terminated, the Delphi ERISA Action would proceed as if the Settlement had not

been reached.

## 10. Can I get out of the Settlement?

You do not have the right to exclude yourself from the Settlement. The Delphi ERISA

Action was certified under Federal Rule of Civil Procedure 23(b)(1) and (2) as a non-"opt-out"

class action because of the way ERISA operates. Breach of fiduciary duty claims under ERISA

must be brought by participants on behalf of ERISA plans, and any judgment or resolution

necessarily applies to all plan participants and beneficiaries. Thus, it is not possible for any

participants or beneficiaries to exclude themselves from the benefits of the Settlement. As a

Class member, you will be bound by any judgments or orders that are entered in the Delphi

ERISA Action for all claims that were asserted in the Delphi ERISA Action or otherwise

included in the release under the Settlement.

Although you cannot opt out of the Settlement, you can object to the Settlement and ask the Court not to approve it. See Answer to Question No. 13, below.

**11. Do I have a lawyer in the case?**

The Court has appointed the law firm of Keller Rohrback, LLP, located in Seattle, Washington and Phoenix, Arizona, as Lead Counsel for Named Plaintiffs in the Delphi ERISA Action and the law firm of Morgan & Meyers, located in Dearborn, Michigan, as Liaison Counsel. These lawyers are called "Class Counsel." You will not be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**12. How will the lawyers and Named Plaintiffs be paid?**

Lead Counsel will request that the Court establish a reserve of 25% of the Settlement Fund for a potential award of attorneys' fees and expenses. Lead Counsel will file an application with the Court for an award or attorneys' fees and expenses at the conclusion of the Delphi ERISA Action as against the remaining defendant, State Street. Lead Counsel will post this application on www.KellerSettlements.com at least ten (10) days prior to the date set by the Court for a hearing thereon. Named Plaintiffs in the Delphi ERISA Action will share in the allocation of the money paid to the Plans on the same basis and to the same extent as all other members of the Settlement Class, except that, in addition, Lead Counsel will request that the Court grant the Named Plaintiffs case contribution awards up to $5,000 each. The following section sets forth instructions if you wish to tell the Court that you do not agree with any part of the Settlement or with the reserve for attorneys' fees and expenses or the proposed Named Plaintiff case contribution awards.

**13.  How do I tell the Court that I don't like the Settlement or the Bar Order?**

If you are a Class Member, you can object to the Settlement if you do not like any part of it.  You can give reasons why you think the Court should not approve it.  If your rights are affected by the Bar Order, you may object to it.  In either case, to object, you must send a letter or other written statement saying that you object to the Settlement of the Delphi ERISA Action in In re Delphi Corporation Securities, Derivative & "ERISA" Litigation, MDL No. 1725, Master File No. 05-CV-70882-DT.  Be sure to include your name, address, telephone number, signature, and a full explanation of all reasons you object to the Settlement or the Bar Order.

**Your written objection must be filed with the Court, and mailed to the counsel listed below, so as to be received by no later than October 29, 2007, at the following addresses**:

**Clerk of the Court:**
David J. Weaver, Clerk of Court
United States District Court, Eastern District of Michigan
231 West Lafayette Blvd., Fifth Floor
Detroit, MI 48226

**Lead Counsel and certain Settling Defendants' Counsel:**

| | |
|---|---|
| Lynn L. Sarko, Esq. | Stuart J. Baskin, Esq. |
| Gary A. Gotto, Esq. | Brian H. Polovoy, Esq. |
| KELLER ROHRBACK L.L.P. | SHEARMAN & STERLING, LLP |
| 1201 Third Avenue, Ste 3200 | 599 Lexington Avenue |
| Seattle, WA 98101-3052 | New York, New York 10022 |
| *Plaintiffs' Lead Counsel* | *Counsel to Settling Defendants* |
| | *Delphi Corporation, ASEC Manufacturing* |
| | *General Partnership (sued as "ASEC* |
| | *Manufacturing"), Delphi Mechatronic* |
| | *Systems, Inc. (sued as "Delphi* |
| | *Mechatronic Systems"), the Investment* |
| | *Policy Committee, Robert H. Brust,* |
| | *Susan A. McLaughlin, and John D. Opie* |

**14.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at ▓▓▓▓ m. on November 13, 2007, at the United

States District Court for the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit,

Michigan, in Courtroom ▓▓▓▓ At that hearing, the Court will consider whether the Settlement

is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the

Fairness Hearing, the Court will decide whether to grant final approval of the Settlement. The

Court will also rule on the motions for attorneys' fees and expenses. It is uncertain how long it

will take the Court to issue these decisions.

**15. Do I have to come to the hearing?**

No. Lead Counsel will answer questions the Court might have with respect to the

Settlement. But you are welcome to attend at your own expense. If you send an objection, you

do not have to come to Court to talk about it. As long as you mailed your written objection on

time, the Court will consider your objection when it considers whether to approve the Settlement

as fair, reasonable and adequate. You also may pay your own lawyer to attend the Fairness

Hearing, but attendance is not necessary.

**16. May I speak at the hearing?**

If you are a Class member, you may ask the Court for permission to speak at the Fairness

Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear

at Fairness Hearing in In re Delphi Corporation Securities, Derivative & "ERISA" Litigation,

MDL No. 1725, Master File No. 05-CV-70882-GER." Be sure to include your name, address,

telephone number, and your signature. Your Notice of Intention to Appear must be served on the

attorneys listed in the Answer to Question No. 13, above, no later than October 29, 2007, and

must be filed with the Clerk of the Court at the address listed in the Answer to Question No. 13.

**17. What happens if I do nothing at all?**

If you do nothing and you are a member of the Class, you will participate in the

Settlement of the Delphi ERISA Action as described above in this Notice if the Settlement is

granted final approval and if the Effective Date of the Settlement is reached.

**18. How do I get more information?**

This Notice summarizes the proposed Settlement. The complete terms of the Settlement

are set forth in the Settlement Stipulation. You may obtain a copy of the Settlement Stipulation

by making a written request to the counsel listed at page 4 above. Copies may also be obtained

at www.KellerSettlements.com.

You may also contact Lead Counsel at (877) 296-9982 or

claimsadministrator@delphisettlement.com for more information regarding the Settlement.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

```
-----------------------------------------------------------x
                                         :
                                         :
                                         :
IN RE: DELPHI CORPORATION                :    MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"         :    Master Case No. 05-md-1725
LITIGATION                               :    Hon. Gerald E. Rosen
                                         :
                                         :    This Document Relates to:
                                         :    In re Delphi Corp. ERISA Litigation,
                                         :    Nos. 05-CV-70882, 05-70940,
                                         :    05-71030, 05-71200, 05-71249,
                                         :    05-71291, 05-71339, 05-71396,
                                         :    05-71397, 05-71398, 05-71437,
                                         :    05-71508, 05-71620, 05-71897,
                                         :    05-72198
                                         :
-----------------------------------------------------------x
```

## COURT-ORDERED LEGAL NOTICE

**IF YOU WERE A PARTICIPANT AT ANY TIME BETWEEN MAY 28, 1999
AND NOVEMBER 1, 2005 IN THE DELPHI SAVINGS-STOCK PURCHASE
PROGRAM FOR SALARIED EMPLOYEES (THE "SALARIED PLAN"), THE
DELPHI PERSONAL SAVINGS PLAN FOR HOURLY-RATE EMPLOYEES
(THE "HOURLY PLAN"), OR THE ASEC MANUFACTURING SAVINGS PLAN
(THE "ASEC PLAN"), OR A PARTICIPANT AT ANY TIME BETWEEN JUNE 1,
2001 AND NOVEMBER 1, 2005 IN THE DELPHI MECHATRONIC SYSTEMS
SAVINGS-STOCK PURCHASE PROGRAM (THE "MECHATRONIC PLAN")
(COLLECTIVELY, THE "PLANS")**

**or**

**A BENEFICIARY, ALTERNATE PAYEE, REPRESENTATIVE, OR
SUCCESSOR-IN-INTEREST OF ANY SUCH PERSON, YOU MAY BE**

**ELIGIBLE TO RECEIVE A PAYMENT AS A RESULT OF A CLASS ACTION
SETTLEMENT.**

**IF YOU ARE A DEFENDANT IN THE ABOVE-CAPTIONED "ERISA"
LITIGATION, YOUR RIGHTS MAY BE AFFECTED BY A BAR ORDER
PROPOSED IN CONNECTION WITH A CLASS ACTION SETTLEMENT.**

A proposed Settlement has been preliminarily approved by a federal court in a
class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement
Income Security Act ("ERISA") in connection with the four employee benefit plans
(collectively, the "Plans") listed above. The terms of the Settlement are contained in a
Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions,
dated August 30, 2007 (the "Settlement Stipulation"), a copy of which is available at
www.KellerSettlements.com or by contacting Lead Counsel identified below.
Capitalized terms used in this Publication Notice and not defined herein have the
meanings assigned to them in the Settlement Stipulation.

This Settlement will provide for the establishment of a settlement fund (the
"Settlement Fund") of consideration that Lead Counsel expect, based on information
currently available to them, to be valued at approximately $47 million (consisting of
approximately $22.5 million in cash and an allowed interest in the Delphi Corporation
chapter 11 bankruptcy proceeding that Lead Counsel currently expect will be valued at
approximately $24.5 million). Cash proceeds in the Settlement Fund (subject to Court-
approved reserves, fees, expenses, and limitations), eventually will be paid to the Plans,
which will allocate those proceeds to the accounts of participants in the Plans in
accordance with a Plan of Allocation to be submitted to the Court for approval.

If you qualify, you will receive such an allocation. You do not need to submit a
claim or take any other action unless you wish to object to the Settlement. The United

States District Court for the Eastern District of Michigan (the "Court") authorized this Notice.

*THE COURT WILL HOLD A HEARING ON November 13, 2007 TO DECIDE WHETHER TO GRANT FINAL APPROVAL OF THE SETTLEMENT.*

**Who is Included in the Settlement?**

If you were a participant or beneficiary in any of the Plans at any time during the period starting on May 28, 1999 (June 1, 2001 in the case of the Mechatronic Plan) through and including November 1, 2005, and your Plan account was invested in whole or in part in the Delphi or GM stock funds, you are a member of the Class (a "Class Member"). (The Defendants in the litigation and their family members are generally excluded from the Class.)

**What Is This Case About?**

The plaintiffs in the case allege that the Defendants breached their fiduciary duties under ERISA with respect to the Plans by continuing to allow the investment of participant account balances in Delphi stock, by failing to monitor other fiduciaries, and by other related acts. All of the Defendants deny that they did anything wrong. The Court has not ruled in favor of either side. Plaintiffs have agreed to the settlement with all Defendants other than State Street Bank and Trust Company ("State Street") because they believe that in light of the risks associated with continuing to prosecute the litigation, the settlement is in the best interests of the members of the Class.

The litigation will continue against State Street. In addition, claims that were brought against certain of the Defendants under applicable securities laws in related litigation pending before the Court are not affected by the Settlement, but are the subject

of a separate settlement that has been presented concurrently to the Court for approval. Litigation with regard to securities law claims is continuing with respect to certain other defendants.

### How Will the Settlement Money Be Allocated?

If you are a Class Member, your share of the Settlement Fund will be based on your proportionate share of the losses allegedly suffered by the Plans that were sought to be recovered through the lawsuit from the Settling Defendants. The greater your share of those losses, the larger your share will be of the Net Settlement Fund. It is anticipated, however, that your share of the net settlement proceeds will be less than your actual losses.

### What Fees and Expenses are Being Sought by the Attorneys?

The lawyers who have prosecuted this case on behalf of Named Plaintiffs and the Class on a contingent fee basis will request that the Court establish a reserve of 25% of the Settlement Fund for potential awards of attorneys' fees and expenses upon the conclusion of the lawsuit. Class Members may file objections to the establishment of this reserve. The Court must approve any award of attorneys' fees and expenses.

### Are There More Details to the Settlement?

The Settlement includes a number of other important details. These include, but are not limited to, provisions relating to (1) releases of claims against the Settling Defendants by the Class; (2) issuance of a "Bar Order" prohibiting non-settling defendants and others from suing the Settling Defendants for indemnity or contribution or certain other claims, but giving those persons certain rights to judgment reduction in the

event that Plaintiffs obtain a judgment against them; and (3) allocation of payment to the Plans among participants' accounts.

**How Do I Get More Information?**

If you have received in the mail a Notice of Proposed Settlement of ERISA Class Litigation, Proposed Bar Order, Settlement Fairness Hearing, Proposed Reserve for Attorney's Fees and Proposed Named Plaintiffs' Compensation ("Notice of Proposed Settlement") regarding this lawsuit, you should read that document for more information. It is more detailed than this newspaper notice. Among other things, it includes a more detailed description of the terms of the Settlement Stipulation, a description of the history of the case, and an explanation of the reasons for the Settlement,

If you did not receive a Notice of Proposed Settlement in the mail, you may request one by contacting Plaintiffs' Lead Counsel:

Lynn Lincoln Sarko, Esq.
Gary A. Gotto, Esq.
Amy Williams-Derry, Esq.
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Toll-Free Phone:  (877) 296-9982
Email:  claimsadministrator@delphisettlement.com
www.KellerSettlements.com

In addition, the Settlement Stipulation, and additional information regarding the Settlement, are available at www.KellerSettlements.com.

**What Are My Options?**

Because of the nature of the case, you cannot "opt out" or exclude yourself from the Settlement.  If you wish to object to the Settlement or the Bar Order, you must file an objection with the Court so as to be received by October 29, 2007, as described in the Notice of Proposed Settlement.  If you do not want to object to the Settlement or the Bar

5

Order, you do not have to do anything. If the Court approves the Settlement and you are a member of the Class, you will be entitled to have a share of the Net Settlement Fund (subject to certain Court-approved restrictions) paid into your Plan account.

**What Happens Next?**

The Court will hold a Fairness Hearing on November 13, 2007. At that hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider those objections. After the Fairness Hearing, the Court will decide whether to grant final approval of the Settlement.

# **EXHIBIT B**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

```
-----------------------------------------------------------------x
                                          :
                                          :
IN RE: DELPHI CORPORATION                 :    MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"          :    Master Case No. 05-md-1725
LITIGATION                                :    Hon. Gerald E. Rosen
                                          :
                                          :    This Document Relates to:
                                          :    In re Delphi Corp. ERISA Litigation,
                                          :    Nos. 05-CV-70882, 05-70940,
                                          :    05-71030, 05-71200, 05-71249,
                                          :    05-71291, 05-71339, 05-71396,
                                          :    05-71397, 05-71398, 05-71437,
                                          :    05-71508, 05-71620, 05-71897,
                                          :    05-72198
                                          :
                                          :
-----------------------------------------------------------------x
```

## ORDER AND FINAL JUDGMENT

This is a case brought under the Employment Retirement Income Security Act (ERISA),

29 U.S.C. § 1001 et seq., claiming breach of fiduciary duty. Named Plaintiffs filed a

Consolidated Class Action Complaint containing allegations of Defendants' fiduciary status and

wrongdoing. Following a mediation conducted by the Honorable Layn R. Phillips, appointed by

the Court as special master for settlement purposes, Named Plaintiffs and certain defendants

reached a settlement of the action. A Stipulation and Agreement of Settlement With Certain

Defendants – ERISA Actions, dated August 31, 2007 ("Settlement Stipulation"), was filed with

the Court on August 31, 2007. Before the Court are (1) ERISA Named Plaintiffs' Motion for

Final Approval of ERISA Class Action Settlement With Certain Defendants ("Final Approval

Motion"); and (2) ERISA Named Plaintiffs' Motion and Memorandum for Approval of Plan of

Allocation ("Plan of Allocation Motion") (collectively, the "Motions").[1]

On September __, 2007, the Court entered its Order Preliminarily Approving Settlement,

Preliminarily Certifying a Settlement Class, Approving Forms and Methods of Notice, and

Setting a Fairness Hearing ("Preliminary Approval Order"). The Court has received declarations

attesting to the mailing of the Notice and publication of the Publication Notice in accordance

with the Preliminary Approval Order. A hearing was held on November ___, 2007 (the "Final

Approval Hearing") (i) to determine whether to grant the Final Approval Motion; (ii) to

determine whether to grant the Plan of Allocation Motion; and (iii) to rule upon such other

matters as the Court might deem appropriate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Court has jurisdiction over the subject matter of this action, all members of

the Class, and all Settling Defendants pursuant to 29 U.S.C. § 1132(e).

2. In accordance with Federal Rule of Civil Procedure 23 and the requirements of

due process, the Class has been given proper and adequate notice of the Settlement, the Fairness

Hearing, and the Plan of Allocation Motion, such notice having been carried out in accordance

with the Preliminary Approval Order. The Notice, Publication Notice and notice methodology

implemented pursuant to the Settlement Stipulation and the Court's Preliminary Approval Order

(a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated,

under the circumstances, to apprise members of the Class of the proposed Settlement, their right

to object to the Settlement, and their right to appear at the Fairness Hearing; (c) constituted due,

---

[1]    All capitalized terms used in this Order and Final Judgment and not defined herein shall have
the meanings assigned to them in the Settlement Stipulation.

adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law.

3. The Settlement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of the action and of the strengths and weaknesses of their respective positions. The Settlement was reached after the parties had engaged in extensive negotiations with the assistance of a former United States District Judge acting as special master for settlement purposes. Lead Counsel and counsel for Settling Defendants were therefore well positioned to evaluate the benefits of the Settlement, taking into account the expense, risk, and uncertainty of protracted litigation over numerous questions of fact and law.

4. The proposed Settlement warrants final approval pursuant to Federal Rule of Civil Procedure 23(e)(1)(A) and (C) because it is fair, adequate, and reasonable to the Class and others whom it affects based upon (a) the likelihood of success on the merits weighed against the amount and form of relief offered in the Settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) the limited number of objections made to the proposed Settlement; (f) the fact that it is the product of arm's-length negotiations as opposed to collusive bargaining; and (g) the fact that it is consistent with the public interest.

5. The Final Approval Motion is GRANTED, and the Settlement hereby is APPROVED as fair, reasonable, adequate to members of the Class, and in the public interest. The settling parties are directed to consummate the Settlement in accordance with the terms of the Settlement Stipulation.

6.  The Plan of Allocation is hereby APPROVED as fair, adequate, and reasonable.
Subject to the provisions of paragraph 17 below and paragraph 23 of the Settlement Stipulation,
upon this Order and any order of the Bankruptcy Court approving the Settlement becoming
Final, and upon the Effective Date of the Settlement, the Escrow Agent shall disburse the Net
Settlement Fund to the Plans for distribution by the Plans' trustee(s) in accordance with the Plan
of Allocation, subject to any amounts withheld by the Escrow Agent for the payment of taxes
and related expenses as authorized in the Settlement Stipulation.

7.  The Escrow Agent is authorized to pay the reasonable costs of implementing the
Plan of Allocation from the Gross Settlement Fund, upon notice to Settling Defendants' counsel,
without further order of the Court, notwithstanding that this Order has not yet become Final as
that term is defined in the Settlement Stipulation.

8.  A case contribution award of $_____ payable from the Gross Settlement
Fund is awarded to each Named Plaintiff.  Such award may be distributed to each Named
Plaintiff by the Escrow Agent upon the Effective Date of the Settlement.

9.  A reserve of 25% of the Gross Settlement Fund is hereby established for a
potential future award of attorneys' fees and expenses.  Distribution from such reserve shall only
be made upon further order of the Court and upon Lead Counsel's application for award of
attorneys' fees and expenses to be filed upon conclusion of the Delphi ERISA Action as to all
parties.

10. The Court retains jurisdiction over this action and the parties, the Plans, and
members of the Class for all matters relating to this action, including (without limitation) the
administration, interpretation, effectuation or enforcement of the Settlement Stipulation and this

Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to members of the Class.

11. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Stipulation.

12. Named Plaintiffs and all members of the Class, on behalf of themselves, and the Class, and their personal representatives, heirs, executors, administrators, trustees, successors, and assigns, with respect to each and every Settled Claim, fully, finally and forever release, relinquish and discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties.

13. The Settling Defendants fully, finally, and forever release, relinquish, and discharge, and are forever enjoined from prosecuting, the Settled Defendants' Claims against Named Plaintiffs, all members of the Class, and their respective counsel.

14. By operation of this Judgment, all Barred Persons are permanently barred, enjoined and restrained from commencing, prosecuting or asserting, either derivatively or on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any Barred Claims against any of the Released Parties in any forum, action or proceeding of any kind. The Court shall retain exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance, validity, interpretation, administration, enforcement or enforceability of the Bar Order, except to the extent any such matters relate to Delphi's bankruptcy proceeding, which shall be subject to the continuing jurisdiction of the Bankruptcy Court. Lead Counsel shall post the provisions of this paragraph on the website identified in the Notice.

15. Because Barred Persons are barred from asserting any Barred Claims against any

of the Released Parties, any judgments entered against Barred Persons in the Delphi ERISA

Action will be reduced by the Judgment Reduction Amount. Nothing in the Settlement

Stipulation or this Judgment shall in any manner limit any joint and several liability applicable to

any non-settling party as to the portion of any judgment against such non-settling party in the

Delphi ERISA Action remaining after application of any Judgment Reduction Amount.

16. By operation of this Judgment, Settling Defendants are barred and permanently

enjoined from bringing against the Barred Persons, either derivatively or on behalf of

themselves, or through any person purporting to act on their behalf or purporting to assert a

claim under or through them, any of the Barred Claims in any forum, provided that a Settling

Defendant shall not be enjoined from bringing Barred Claims against a Barred Person if for any

reason such Barred Person asserts, or is legally not barred by this Judgment from bringing,

Barred Claims against such Settling Defendant. The entry of the bars, injunctions and related

provisions set forth in paragraphs 14 through16 above are fair to the Named Plaintiffs, the

Settling Defendants, all Class Members, and all Barred Persons.

17. Until the Delphi ERISA Action has been concluded and fully and finally resolved

with respect to all Barred Persons, there shall be no distribution from the Net Settlement Fund

that would cause the balance remaining in the Net Settlement Fund to be less than the aggregate

of Named Plaintiffs' claims for potential damages with respect to all claims against Barred

Persons that have not been concluded and fully and finally resolved.

18. All counts asserted in the Delphi ERISA Action against the Settling Defendants or

against any Released Party that at any time was a defendant in the Delphi ERISA Action are

DISMISSED WITH PREJUDICE, without further order of the Court, pursuant to the terms of

the Settlement Stipulation. In addition, upon this Order and Final Judgment becoming Final, the

Named Plaintiffs and the members of the Class shall be deemed to have, and by operation of this

Order and Final Judgment shall have, fully, finally and forever released, and are forever enjoined

from prosecuting, any and all Settled Claims. However, in the event that the Settlement is

terminated in accordance with the terms of the Settlement Stipulation, this Judgment shall be null

and void and shall be vacated nunc pro tunc, and paragraph 20 of the Settlement Stipulation shall

govern the rights of the parties thereto.

19. There is no just reason for delay in the entry of this Order and Final Judgment,

and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this ___ day of November, 2007.


_____
HONORABLE GERALD E. ROSEN
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

```
------------------------------------------------------------x
                                        :
                                        :
IN RE: DELPHI CORPORATION               :      MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"        :      Master Case No. 05-md-1725
LITIGATION                              :      Hon. Gerald E. Rosen
                                        :
                                        :      This Document Relates to:
                                        :      All Cases
                                        :
------------------------------------------------------------x
```

### STIPULATION AND AGREEMENT OF INSURANCE SETTLEMENT

This Stipulation and Agreement of Insurance Settlement (the "Insurance Stipulation")
relates to all cases in the above-captioned *In re: Delphi Corp. Securities, Derivative & "ERISA"
Litigation*, Master File No. 05-md-1725 (GER)(E.D. Mich.), and *SEC v. Delphi Corporation, et
al.*, No. 06-14891 (E.D. Mich.). This Stipulation is entered into among Delphi Corporation
("Delphi" as defined herein); J.T. Battenberg III, Milan Belans, John G. Blahnik, Robert H.
Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Peter
H. Janak, Judith Kudla, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A.
Niekamp, John D. Opie, Roger S. Penske, Catherine Rozanski, Donald S. Runkle, John D.
Sheehan, and Patricia C. Sueltz (collectively, the "Delphi Officers and Directors"); and National
Union Fire Insurance Company of Pittsburgh, Pa., Zurich American Insurance Company, Federal
Insurance Company, Twin City Fire Insurance Company, American Casualty Company of
Reading PA, Arch Insurance Company, St. Paul Mercury Insurance Company, Great American

Insurance Company, Allied World Assurance Company LTD, Endurance Specialty Insurance
Ltd., and Starr Excess International (collectively, the "Insurers" as defined herein);

WHEREAS:

A.    Beginning on March 7, 2005, several putative securities class actions were filed in
the Court and the United States District Court for the Southern District of New York against
Delphi, current and former Delphi officers and directors and various other defendants.  Plaintiffs
thereafter voluntarily dismissed the actions filed in the Court.  On June 27, 2005, Judge Naomi
Reice Buchwald of the United States District for the Southern District of New York appointed
lead plaintiffs to prosecute the actions on behalf of all purchasers of Delphi securities during the
putative class period and appointed lead plaintiffs' counsel as lead counsel in the actions.  The
actions filed in the United States District Court for the Southern District of New York were
consolidated by order of that court, entered September 23, 2005, under the caption *In re: Delphi
Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB).

B.    On September 30, 2005, lead plaintiffs filed a Consolidated Class Action
Complaint (the "Complaint") on behalf of all persons and entities who purchased or otherwise
acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and
Delphi Trust II, during the period between March 7, 2000 and March 3, 2005, inclusive (the
"Class Period"), against Delphi, Delphi Trust I, Delphi Trust II, certain of the Delphi Officers
and Directors, the Underwriters, J. Michael Losh, Harry J. Pearce, John F. Smith, Deloitte &
Touche LLP, BBK, Ltd., Setech, Inc., and JPMorgan Chase & Co. (as successor-in-interest to
Bank One Corporation), alleging violations of Sections 10(b) and 20(a) of the Securities
Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated
thereunder, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities

Act"). The Complaint alleges, among other things, that Delphi, with the participation of others, improperly accounted for various transactions and otherwise made material misstatements regarding its financial position and results to inflate its earnings.

C.    On October 8, 2005, Delphi filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

D.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Delphi Securities Action (and other related federal actions, including the Delphi ERISA Action) to the Court for coordinated or consolidated pretrial proceedings. On March 10, 2006, certain defendants moved to dismiss the Complaint. On May 12, 2006, lead plaintiffs filed papers in opposition to the motions to dismiss. On June 12, 2006, the defendants filed their reply papers in further support of the motions to dismiss. On February 15, 2007, the Court granted lead plaintiffs' motion for partial modification of the discovery stay implemented pursuant to the Private Securities Litigation Reform Act and, on March 21, 2007, denied certain defendants' motion for reconsideration of that ruling.

E.    On March 14, 2006, lead plaintiffs voluntarily dismissed without prejudice from the Delphi Securities Action defendants J. Michael Losh, Harry J. Pearce, and John F. Smith, who were all former directors of both General Motors Corporation and Delphi.

F.    On April 11, 2005, a putative class action was filed in the United States District Court for the Southern District of Florida against Delphi Trust I, J.T. Battenberg III, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Bernd Gottschalk, Shoichiro Irimajiri, Oscar de Paula Bernardes Neto, John D. Opie, Roger S. Penske, Donald S. Runkle, John D. Sheehan, Patricia C. Sueltz, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC, under

the caption *Bernstein v. Delphi Trust I, et al.*, No. 9:05-CV-80307 (KLR) (the "Bernstein
Action"). The complaint alleged violations of Sections 11 and 15 of the Securities Act in
connection with the sale of securities of Delphi Trust I. On July 20, 2005, upon unopposed
motion, the Southern District of Florida appointed plaintiff Sidney Bernstein as lead plaintiff in
the Bernstein Action and appointed his selection of counsel as co-lead counsel in the Bernstein
Action (the "Bernstein Order"). On August 29, 2005, the Southern District of Florida stayed the
Bernstein Action pending transfer of all related actions by the multidistrict litigation panel. On
October 16, 2006, this Court granted the lead plaintiffs' motion to vacate the Bernstein Order.
For purposes of this Insurance Stipulation, the term "Delphi Securities Action" includes the
Bernstein Action.

G.    Beginning on March 8, 2005, several putative class actions alleging violations of
the Employee Retirement Income Security Act of 1974, as amended ("ERISA") were filed in the
Court and the United States District Court for the Southern District of Ohio against Delphi and
various other defendants. Plaintiffs in those actions thereafter voluntarily dismissed the action
filed in the United States District Court for the Southern District of Ohio. On September 13,
2005, Judge Paul D. Borman of the United States District for the Eastern District of Michigan
appointed the named plaintiffs as lead plaintiffs to prosecute the actions on behalf of the putative
class of participants in the Plans during the putative class period. The ERISA actions filed in the
Court were consolidated by order, entered September 13, 2005, under the caption *In re Delphi
Corp. ERISA Litigation*, Master File No. 05-CV-70882 (PDB).

H.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the
transfer of the Delphi ERISA Action (and other related federal actions, including the Delphi
Securities Action) to this Court for coordinated or consolidated pretrial proceedings.

I.       On March 3, 2006, the named plaintiffs in the Delphi ERISA Action filed a

Consolidated Class Action Complaint (the "ERISA Complaint"), on behalf of all persons who

were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for

Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC

Manufacturing Savings Plan between May 28, 1999 and November 1, 2005, inclusive, or (ii)

participants in or beneficiaries of the Delphi Mechatronic Systems Savings-Stock Purchase

Program between June 1, 2001 and November 1, 2005, inclusive, and whose accounts included

investments in the Delphi and/or GM Stock Funds, alleging violations of Sections 502(a)(2) and

502(a)(3) of ERISA, and violations of fiduciary duties under common law.  The ERISA

Complaint alleges, among other things, that Delphi improperly accounted for various

transactions and otherwise made material misstatements regarding its financial position and

results, with the participation of others, to inflate its earnings and that the Defendants breached

their fiduciary duties to the Class in their management of the retirement plans and the plans'

assets.  On April 12, 2006, certain defendants moved to dismiss the ERISA Complaint.  On May

12, 2006, the named plaintiffs filed papers in opposition to the motions to dismiss.  On June 12,

2006, the defendants filed their reply papers in further support of the motions to dismiss.

J.       On July 21, 2004, the United States Securities and Exchange Commission

("SEC") initiated a formal investigation and on October 30, 2006, filed an enforcement action,

captioned *SEC v. Delphi Corp. et al.,* No. 06-14891 (E.D. Mich.), with respect to Delphi and

certain of the Delphi Officers and Directors related to certain of the facts alleged in the Delphi

Securities Action and related matters (the "SEC Investigation and Enforcement Action").

K.       The United States Department of Justice ("DOJ") initiated an investigation and

may initiate one or more legal proceedings with respect to certain of the matters in the SEC

Investigation and Enforcement Action and related matters, and the United States Attorney's
Office for the Southern District of New York initiated an investigation and may initiate one or
more legal proceedings concerning General Motors' purchasing practices (collectively the "DOJ
Investigation and Potential Proceedings").

L.    Delphi and the Delphi Officers and Directors notified the Insurers of the Delphi
Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement Action,
the DOJ Investigation and Potential Proceedings, and the Delphi Derivative Demands and
Actions (as defined herein)(collectively the "Insurance Claim" (as defined herein)).

M.    The Insurers reserved their rights to assert various coverage defenses under the
"Insurance Policies" (as defined herein) with respect to the Insurance Claim.

N.    Delphi Corporation has entered into certain agreements both before and after the
filing of its bankruptcy petition with a number of insurance companies in order to resolve certain
asserted defenses under the Insurance Policies and at law.

O.    Pursuant to the Order Under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 2016(a)
Authorizing Advancement of Defense Costs Under Debtors' Insurance Policies (In re Delphi
Corporation, No. 05-44481 (RDD) (Bankr., S.D.N.Y.)) one of the Insurers, National Union Fire
Insurance Company of Pittsburgh, Pa., is permitted to advance up to $5 million of its $25 million
limit of liability for the defense costs of certain of Delphi's former officers and employees in the
Delphi Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement
Action, and the DOJ Investigation and Potential Proceedings.

P.    With the assistance of the Honorable Layn R. Phillips, former United States
District Judge, acting as a special master for settlement purposes, the lead plaintiffs in the Delphi
Securities Action and the named plaintiffs in the Delphi ERISA Action, by their counsel, have

conducted discussions with Delphi's counsel, counsel for the Delphi Former Officers and

Employees, the counsel for the remaining Delphi Officers and Directors, and the Insurers with

respect to a compromise and settlement of the Delphi Securities Action and the Delphi ERISA

Action (the "Mediation").

Q.      The Delphi Former Officers and Employees were each represented by counsel at

the Mediation and conducted discussions with Delphi's counsel and the Insurers with respect to

the amount of insurance proceeds that would be used for the defense of the Delphi Former

Officers and Employees in the SEC Investigation and Enforcement Action, the DOJ

Investigation and Potential Proceedings and any other liability or exposure that they may face as

a result of their work at Delphi.

R.      The Parties agree that, in order fully to resolve the Insurance Claim (as defined

herein), it is a necessary condition to the Insurance Settlement (as defined herein) that the Court

contemporaneously approve (i) the separate Delphi ERISA Action Settlement and (ii) the

separate Delphi Securities Action Settlement.

NOW THEREFORE, without any admission or concession on the part of the Insurers of

any lack of merit of their defenses to coverage for the Insurance Claim whatsoever, and without

any admission or concession of any lack of merit of the Insurance Claim whatsoever by Delphi

and the Delphi Officers and Directors, it is hereby STIPULATED AND AGREED, by and

between the parties to this Insurance Stipulation, subject to approval of the Court pursuant to

Rule 23(e) of the Federal Rules of Civil Procedure of the Delphi Securities Action Settlement

and the Delphi ERISA Action Settlement, in consideration of the benefits flowing to the parties

hereto from the Insurance Settlement (as defined herein), that all Settled Insurance Claims (as

defined herein), all Settled Officer and Director Claims (as defined herein), and all Settled

Delphi Claims, shall be compromised, settled, released and dismissed with prejudice, and the
Insurance Policies shall be deemed fully exhausted and forever discharged upon and subject to
the following terms and conditions:

## DEFINITIONS

1.    As used in this Insurance Stipulation, the following terms shall have the
following meanings:

(a)    "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its
affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

(b)    "Bankruptcy Court" means the United States Bankruptcy Court for the
Southern District of New York.

(c)    "Barred Persons" means any person who is, may be, or claims to be an
insured under any of the Insurance Policies or who otherwise claims to have an interest in the
Insurance Policies, including any interest alleged to arise by reason of a claim against an insured,
or who derives their claim from any insured under any of the Insurance Policies, including
without limitation any judgment creditors, claimants, assignees or similar persons.

(c)    "Court" means the United States District Court for the Eastern District of
Michigan.

(e)    "Delphi" means Delphi Corporation (including without limitation Delphi
Corporation as Debtor in Possession) and Delphi Trust I and Delphi Trust II.

(f)    "Delphi Derivative Demands and Actions" means those derivative
demands that were made and actions that were filed against certain of the Delphi Officers and
Directors alleging the same or related facts as those alleged in the Delphi Securities Action,
including *Dangerfield v. Battenberg*, et. al, No. 2:05-CV-72550 (GER) (E.D. Mich.); *Fosbre v.
Delphi Corporation*, et al., No. 2:06-CV-10031 (GER) (E.D. Mich.); *Lemon Bay Partners v.*

*Delphi Corporation*, et al., No. 05-065192-CZ (SNA) (Circuit Court of Oakland County,

Michigan); *Wilhelmer v. Delphi Corporation*, et al., No. 05-068931-CK (MAG) (Circuit Court of

Oakland County, Michigan); and a March 18, 2005 shareholder demand on behalf of Norman

Rosenkrantz pursuant to Del. Ct. Ch. R. 23.1.

(g)    "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative*

*& "ERISA" Litigation*, Master File No. 05-md-1725 (GER), relating to *In re: Delphi Corp.*

*ERISA Litigation*, Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-

71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-

71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198.

(h)    "Delphi ERISA Action Escrow Agent" means that entity identified in

¶1(u) of the Delphi ERISA Action Stipulation.

(i)    "Delphi ERISA Action Stipulation" or "Delphi ERISA Action Settlement"

means the Stipulation and Agreement of Settlement in the Delphi ERISA Action

(j)    "Delphi Former Officers and Employees" means J.T. Battenberg III,

Milan Belans, John G. Blahnik, Alan S. Dawes, Paul R. Free, Peter H. Janak, Judith Kudla, and

Catherine Rozanski.

(k)    Delphi Former Officers and Employees Escrow Agent means a person or

entity to be identified by the Delphi Former Officers and Employees by September 4, 2007.

(l)    "Delphi Officers and Directors" means J.T. Battenberg III, Milan Belans,

John G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R.

Free, Bernd Gottschalk, Peter H. Janak, Judith Kudla, Susan A. McLaughlin, Oscar de Paula

Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Catherine Rozanski,

Donald S. Runkle, John D. Sheehan, and Patricia C. Sueltz.

(m)    "Delphi Officers and Directors Released Parties" means the Delphi

Officers and Directors and any and all past, present, and future heirs, estates, administrators,

trustees, executors, agents, attorneys, representatives, and assigns of each of the Delphi Officers

and Directors, as well as any person acting on behalf of the Delphi Officers and Directors, either

singularly or collectively;

(n)    "Delphi Released Parties" means Delphi and any and all predecessors,

successors, parents, subsidiaries, affiliates, assigns, transferees, agents, attorneys, directors,

officers, employees, shareholders of Delphi and any person or entity acting on Delphi's behalf.

(o)    "Delphi Securities Action" means *In re: Delphi Corp. Securities,*

*Derivative & "ERISA" Litigation,* Master File No. 05-md-1725 (GER) and relating to *In re:*

*Delphi Corp. Securities Litigation,* No. 06-10026, and Case Nos. 06-10027, 06-10028, 06-10029,

06-10030, 06-10031 and 06-10032, and *Bernstein v. Delphi Trust I, et al.,* No. 2:06-CV-10025

(GER)(formerly No. 9:05-CV-80307 (KLR)(S.D. Fla.)).

(p)    "Delphi Securities Action Escrow Agent" means that entity identified in

¶1(z) of the Delphi Securities Action Stipulation.

(q)    "Delphi Securities Action Stipulation" or "Delphi Securities Action

Settlement" means the Stipulation and Agreement of Settlement in the Delphi Securities Action.

(r)    "Effective Date of the Insurance Settlement" means the date upon which

the Insurance Settlement contemplated by this Insurance Stipulation shall become effective, as

set forth in ¶12 hereof.

(s)    "Insurance Claim" means Delphi's and the Delphi Officers' and Directors'

claim for insurance coverage with respect to the Delphi Securities Action, the Delphi ERISA

Action, the SEC Investigation and Enforcement Action, the DOJ Investigation and Potential

Proceedings, the Delphi Derivative Demands and Actions and all matters based upon, arising out of or alleging the same or related "Wrongful Acts" (as that term is defined in National Union Fire Insurance Company of Pittsburgh, Pa. Policy No. 931-88-56).

(t)    "Insurance Policies" means the following:  National Union Fire Insurance Company of Pittsburgh, Pa. Policy Nos. 931-88-56 and 931-88-61; Zurich American Insurance Company Policy No. DOC 3597322 02; Federal Insurance Company Policy No. 8155-9921; Twin City Fire Insurance Company Policy No. 00 DA 0153136-04; American Casualty Company of Reading PA Policy Nos. 169654153 and 267960067; Arch Insurance Company Policy No. 41DOX15380 01; St. Paul Mercury Insurance Company Policy No. 512CM1117; Great American Insurance Company Policy No. DFX0009714; Allied World Assurance Company LTD Policy No. C001635/002; Endurance Specialty Insurance Ltd. Policy No. 008557 002; and Starr Excess International Policy No. 6461124.

(u)    "Insurance Settlement" means the settlement contemplated by this Insurance Stipulation.

(v)    "Insurance Settlement Amount" means the total amount to be paid by the Insurers as provided in ¶ 9 hereof and in accordance with the terms of this Insurance Stipulation.

(w)    "Insurers" means the following:  National Union Fire Insurance Company of Pittsburgh, Pa.; Zurich American Insurance Company; Federal Insurance Company; Twin City Fire Insurance Company; American Casualty Company of Reading PA; Arch Insurance Company; St. Paul Mercury Insurance Company; Great American Insurance Company; Allied World Assurance Company LTD; Endurance Specialty Insurance Ltd.; and Starr Excess International.

(x)    "Insurers Released Parties" means any and all of the Insurers, their past or present or future subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, estates, assigns, officers, directors, shareholders, owners, representatives, agents, employees, attorneys, advisors, insurers, co-insurers, re-insurers, consultants, administrators, executors, or trustees.

(y)    "Notice Costs" means the costs of notice incurred in connection with the Securities Action Settlement and the ERISA Action Settlement.

(z)    "Parties" means Delphi, the Delphi Officers and Directors and the Insurers.

(aa)    "Released Parties" means the Delphi Released Parties, the Delphi Officers and Directors Released Parties and the Insurers Released Parties.

(bb)    "Settled Delphi Claims" means any and all claims, potential claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement, indemnification, expenses or liability whatsoever), whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted against Delphi by the Insurers or the Delphi Officers and Directors with respect to the Delphi Securities Action, the ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, or (ii) that could have been asserted in any forum against Delphi by the Insurers or

the Delphi Officers and Directors, or any of their successors and assigns arising out of, based upon or related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, except claims to enforce the terms of this Insurance Stipulation.

(cc)    "Settled Officer and Director Claims" means any and all claims, potential claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens and issues or liabilities whatsoever, including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement of any funds advanced (prior to or in connection with this Insurance Stipulation) by Delphi or the Insurers, indemnification, expenses or liability whatsoever, whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted by Delphi in the Delphi Securities Action, the ERISA Action, or on behalf of Delphi in the Delphi Derivative Demands and Actions against any of the Delphi Officers and Directors Released Parties, or (ii) that could have been asserted in any forum by the Delphi Released Parties or the Insurers Released Parties against any of the Delphi Officers and Directors Released Parties which arise out of, are based upon or related to accounting and/or financial reporting and disclosure at Delphi or the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and

Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings or the Insurance Claim, except claims to enforce the terms of this Insurance Stipulation.

(dd)    "Settled Insurance Claims" means any and all claims, potential claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement, indemnification, expenses or liability whatsoever), whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein) arising out of, related to, based upon, by reason of, or in any way involving:

(i)    the Insurance Policies;

(ii)    the Insurance Claim, the allegations of the Insurance Claim, or the same or related facts, circumstances, transactions or events or series of facts, circumstances, transactions or events at issue in the Insurance Claim, including therein any claim that the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action or the DOJ Investigation and Potential Proceedings are covered under any other insurance policies sold to Delphi Corporation;

(iii)    the defense of the Insurance Claim or, with respect to the Insurance Policies, the defense of any other claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever;

(iv)    any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to the Insurance Claim and the Insurance Policies;

except claims to enforce the terms of this Insurance Stipulation.

(ee)    "Unknown Claims" means any Settled Delphi Claims, Settled Officer and Director Claims and Settled Insurance Claims, which any Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it, might have affected his, her or its decision with respect to the Insurance Settlement. With respect to any and all Settled Delphi Claims, Settled Officer and Director Claims and Settled Insurance Claims, the Parties stipulate and agree that upon the Effective Date of the Insurance Settlement, all Parties shall be deemed to have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge that the inclusion of "Unknown Claims" in the definitions of "Settled Delphi Claims," "Settled Officer and Director Claims" and "Settled Insurance Claims" was separately bargained for and was a key element of the Insurance Settlement.

### SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Insurance Stipulation shall be in full and final disposition of the Insurance Claim and the Insurance Policies. It is understood and

agreed that upon the Effective Date of the Insurance Settlement, the Insurance Policies shall be deemed fully exhausted and forever discharged.

3.      Subject to ¶ 14 hereof, upon the execution of this Insurance Stipulation, any proof of claim or any portion of any proof of claim filed in the Bankruptcy Case by or on behalf of the Delphi Officers and Directors Released Parties or the Insurers Released Parties relating to any claim of loss, damage, reimbursement, contribution or indemnification arising out of or relating to the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, including but not limited to the Proofs of Claim or portions of Proofs of Claim listed in Exhibit A hereto, shall be deemed to have an estimated amount of $0 for all purposes in the Bankruptcy Case.

4.      Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Delphi Released Parties and the Delphi Officers and Directors Released Parties release and forever discharge, and are forever enjoined from prosecuting, any Settled Insurance Claim against any of the Insurers Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any of the Insurers Released Parties or any other person who may claim any form of contribution or indemnity from any of the Insurers Released Parties in respect of any Settled Insurance Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement.

5.      Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Delphi Released Parties and the Insurers

Released Parties, with respect to each and every Settled Officer and Director Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Officer and Director Claim against any of the Delphi Officers and Directors Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any of the Delphi Officers and Directors Released Parties or any other person who may claim any form of contribution or indemnity from any Delphi Officers and Directors Released Parties in respect of any Settled Officer and Director Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement, except as provided in ¶ 6 herein.

6.    Notwithstanding the provisions of ¶¶ 4-5 hereof, in the event that any of the Delphi Officers and Directors Released Parties asserts any claim against the Delphi Released Parties or their respective counsel, including any claim contemplated in a proof of claim or a portion of a proof of claim filed in the Bankruptcy case that is not otherwise released and withdrawn pursuant to this Insurance Stipulation, then Delphi and its successors and assigns and their counsel shall be entitled to use and assert the Settled Officer and Director Claim and any factual matters included within the Settled Officer and Director Claims against such Delphi Officers and Directors Released Parties in defense or set-off of such claim, including pursuant to the Bankruptcy Code or otherwise. In the event that Delphi asserts any of the Settled Officers and Directors Claims in defense or set-off of a claim made by one of the Delphi Officers and Directors against Delphi in the Bankruptcy Court and one of the Delphi Officers or Directors has been successful on the merits or otherwise with respect to such defense or set-off interposed by Delphi, then notwithstanding paragraph 8 hereof, the Delphi Officer or Director shall, pursuant

to a proof of claim or interest that was timely filed in the Bankruptcy Case, be entitled to assert a claim for indemnification for legal fees and expenses incurred in defense of such Settled Officers and Directors Claims to the extent such indemnification is required by Article V of Delphi's bylaws in effect as of the time of the filing of the Bankruptcy Case and/or Delaware law, and if such proof of claim or interest is allowed, such indemnification shall be payable to the extent allowed by the Bankruptcy Court in the applicable plan currency commensurate with other similarly allowed claims or interests.

7.      Within ten (10) days of the Effective Date of the Insurance Settlement, Delphi shall dismiss with prejudice *Delphi Corporation v. National Union Fire Insurance Company of Pittsburgh, Pa.*, Adversary Proceeding No. 07-01435 [RDD], pending in the United States Bankruptcy Court for the Southern District of New York.

8.      Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Insurers Released Parties and the Delphi Officers and Directors Released Parties release and forever discharge, and are forever enjoined from prosecuting, any Settled Delphi Claim against the Delphi Released Parties and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against Delphi Released Parties or any other person who may claim any form of contribution or indemnity from Delphi Released Parties in respect of any Settled Delphi Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement, provided further that on the Effective Date of the Insurance Settlement, (i) the Delphi Officers and Directors Released Parties shall be deemed to have withdrawn all proofs of claim or all portions of any proofs of claim filed in the Bankruptcy Case by them or on

their behalf relating to any claim of loss, damage, reimbursement, contribution or indemnification arising out of or relating to the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, including but not limited to the Proofs of Claim or portions of the Proofs of Claim listed in Exhibit A hereto, and (ii) the Insurers Released Parties shall be deemed to have withdrawn all proofs of claim or all portions of any proofs of claim filed in the Bankruptcy Case by them or on their behalf relating to, based upon or by reason of the Insurance Policies.

## SETTLEMENT CONSIDERATION

9.        In consideration for the release and discharge provided for in ¶ 4 hereof, the Insurers shall distribute or pay or cause to be paid the Insurance Settlement Amount, as follows:

| INSURER | AMOUNT | RECIPIENT |
|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") | $20 Million | Delphi Former Officers and Employees  Escrow Agent |
| Zurich American Insurance Company ("Zurich") | $22.5 Million | ERISA Action Escrow Agent |
| | $2.5 Million | Securities Action Escrow Agent |
| Federal Insurance Company | $25 Million | Securities Action Escrow Agent |
| Twin City Fire Insurance Company | $15 Million | Securities Action Escrow Agent |
| American Casualty Company of Reading PA | $15 million | Securities Action Escrow Agent |
| Arch Insurance Company | $7.5 Million | Securities Action Escrow Agent |
| St. Paul Mercury Insurance Company | $4.3 Million | Securities Action Escrow Agent |
| Great American Insurance Company | $4.3 Million | Securities Action Escrow Agent |
| Allied World Assurance Company LTD | $6.25 Million | Securities Action Escrow Agent |
| Endurance Specialty Insurance Ltd. | $3.75 Million | Securities Action Escrow Agent |
| Starr Excess International | $5 Million | Securities Action Escrow Agent |

National Union shall pay its share of the Insurance Settlement Amount to the Delphi Former

Officers and Employees Escrow Agent within ten (10) business days after the later of the entry

by the District Court for the Eastern District of Michigan of an order preliminarily approving the

Delphi Securities Action Settlement or the entry by the District Court for the Eastern District of

Michigan of an order preliminarily approving the Delphi ERISA Action Settlement.  Zurich shall

pay its share of the Insurance Settlement Amount to the Delphi ERISA Action Escrow Agent

within ten (10) business days after the entry by the Court of an order preliminarily approving the

Delphi ERISA Action Settlement.  Zurich and all other Insurers shall pay their share of the

Insurance Settlement Amount to the Delphi Securities Action Escrow Agent within ten (10)

business days after entry by the District Court for the Eastern District of Michigan of an order

preliminarily approving the Delphi Securities Action Settlement. Delphi and/or the Delphi Former Officers and Employees shall provide the Insurers with wire transfer instructions for each escrow account (including the receiving bank (name and address), the account number, the routing number, the EIN, tax identification number, or a completed Form W-9 where required by an Insurer, name of payee or escrow accountholder) by or on the date the Court enters an order preliminarily approving the Delphi Securities Action Settlement or the Delphi ERISA Action Settlement, whichever occurs first.

          10.    The portion of the Insurance Settlement Amount paid to the Delphi Former Officers and Employees Escrow Agent shall be apportioned among the Delphi Former Officers and Employees in amounts and pursuant to such terms as may be separately agreed upon by those parties and their counsel in advance and in writing and shall be used solely for defense costs incurred as part of the ongoing SEC Investigation and Enforcement Action, the DOJ Investigation and Potential Proceedings, the United States Attorney Office for the Southern District of New York's investigation into General Motors' purchasing practices and/or any other defense costs reasonably related to the Delphi Former Officers and Employees tenure at Delphi; provided, however, prior to the Effective Date of the Insurance Settlement, no payments may be made by the Delphi Former Officers and Employees Escrow Agent (a) unless and until the Delphi Former Officers and Employees provide to the Insurers an unsecured written undertaking to repay any sums so paid if the Insurance Settlement does not become effective and it is later determined that the Delphi Former Officers and Employees were not entitled to the amounts paid under the Insurance Policies, and (b) unless and until the Delphi Former Officers and Employees Escrow Agent is authorized to make such payments by an order of the Bankruptcy Court either upon uncontested motion or stipulated order

notwithstanding the automatic stay, to the extent it applies. All parties to this Insurance

Stipulation shall stipulate to such an order within 10 business days of receipt of such

Stipulation, or, if a motion is necessary, such motion shall be unopposed by any Party to this

Insurance Stipulation. Under no circumstance shall any sum so paid be used for purposes other

than defense costs and, in particular, the sums so paid shall not be used for payment of any

fine, penalty, or restitution.

       11.    In addition, within ten (10) business days after entry by the Court of an order

preliminarily approving the Delphi Securities Action Settlement, National Union shall cause to

be paid to the Delphi Securities Action Escrow Agent (to be divided as agreed upon by the

plaintiffs in the Securities Action and plaintiffs in the ERISA Action) the portion of the $5

million remaining limit of liability under National Union Policy Nos. 931-88-56 and 931-88-61

that has not already been incurred in the defense costs of the Former Officers and Employees

for services rendered as of the entry by the Court of an order preliminarily approving the

Delphi Securities Action Settlement.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

      12.    The "Effective Date of the Insurance Settlement" shall be the date when all the

following conditions of settlement shall have occurred:

           (a)    all conditions in ¶ 29 of the Delphi Securities Action Stipulation;

           (b)    all conditions in ¶ 17 of the Delphi ERISA Action Stipulation; and

           (c)    entry of an Order by the Bankruptcy Court approving this Insurance

Settlement and barring and enjoining the institution and/or prosecution of any actions or claims

by any Barred Person against any of the Insurers arising out of or related to any of the Insurance

Policies or the obligations of any of the Insurers under any of the Insurance Policies.

13.    This Insurance Settlement shall terminate if the Delphi Securities Action
Settlement terminates pursuant to ¶ 30-31 of the Delphi Securities Action Stipulation or if the
Delphi ERISA Action Settlement terminates pursuant to ¶ 18-19 of the Delphi ERISA Action
Stipulation.

14.    Except as otherwise provided herein, in the event the Insurance Settlement is
terminated, the parties to this Insurance Stipulation shall be deemed to have reverted to their
respective status immediately prior to the execution of this Insurance Stipulation and, except as
otherwise expressly provided, the parties shall proceed in all respects as if this Insurance
Stipulation and any related orders had not been entered.  Except as provided in paragraph 15
below, within ten (10) business days following any termination of this Insurance Stipulation, the
Insurers shall be entitled to be paid by the respective Escrow Agents *pro rata* the amounts
specified in ¶ 32 of the Delphi Securities Action Stipulation and ¶ 20 of the Delphi ERISA
Action Stipulation, provided, however, the Parties agree that any reasonable Notice Costs
incurred and paid or payable prior to such termination shall be deemed Defense Costs under Side
B of the Insurance Policies, and, without prejudice to Delphi's right to contend that the retention
has been satisfied and to seek to hold National Union liable for those Notice Costs, Delphi in the
first instance shall pay the Insurers other than National Union *pro rata* the Notice Costs deducted
by the respective Delphi Securities Action Escrow Agent and the Delphi ERISA Action Escrow
Agent.

15.    National Union shall be entitled to be paid by the Delphi Former Officers and
Employees Escrow Agent $20 million plus any earned interest thereon less any amount for
defense costs incurred pursuant to ¶ 10 herein, any taxes paid or due with respect to any interest
income, and any account administrative costs incurred.  National Union shall be entitled to be

paid by the Delphi Securities Action Escrow Agent the amount National Union paid to it

pursuant to ¶ 11 hereof less any amounts deducted by the Delphi Securities Action Escrow Agent

pursuant to ¶ 32 of the Delphi Securities Action Stipulation. The Delphi Former Officers and

Employees shall have no obligation to repay any funds remitted pursuant to ¶ 11 hereof.

## NO ADMISSION OF WRONGDOING

16.    This Insurance Stipulation, whether or not consummated, and any proceedings

taken pursuant to it shall not be admissible in any other action or proceeding between the Parties

except in an action to interpret or enforce this Insurance Stipulation, and shall not be deemed an

admission of wrongdoing or liability of any party.

## MISCELLANEOUS PROVISIONS

17.    This Insurance Stipulation may not be modified or amended, nor may any of its

provisions be waived, except by a writing signed by all parties hereto or their successors-in-

interest.

18.    The headings herein are used for the purpose of convenience only and are not

meant to have legal effect.

19.    The waiver by one party of any breach of this Insurance Stipulation by any

other party shall not be deemed a waiver of any other prior or subsequent breach of this

Insurance Stipulation.

20.    This Insurance Stipulation constitutes the entire agreement concerning the

Insurance Settlement, and no representations, warranties, or inducements have been made by any

party hereto concerning this Insurance Stipulation, other than those contained and memorialized

in this Insurance Stipulation.

21.    This Insurance Stipulation may be executed in one or more original, photocopied or facsimile counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

22.    This Insurance Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

23.    The construction and interpretation of this Insurance Stipulation shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law governs.

24.    This Insurance Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Insurance Stipulation.

25.    All counsel and any other person executing this Insurance Stipulation warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Insurance Stipulation to effectuate its terms.

26.    All Parties to this Insurance Stipulation warrant and represent that they have not assigned any rights, claims, or obligations related to this agreement on or before the date of execution of this Insurance Stipulation.

DATED: August 31, 2007

## EXHIBIT A

1.     Proof of claim number 9787, filed by Donald L. Runkle, dated June 20, 2006

2.     Proof of claim number 10582, filed by J. T. Battenberg III, dated July 21, 2006

3.     Proof of claim number 11104, filed by Oscar de Paula Bernardes Neto, dated July 10, 2006

4.     Proof of claim number 11105, filed by Robert H. Brust, dated June 27, 2006

5.     Proof of claim number 11106, filed by Virgis W. Colbert, dated June 27, 2006

6.     Proof of claim number 11107, filed by David N. Farr, dated June 29, 2006

7.     Proof of claim number 11108, filed by Bernd Gottschalk, dated July 20, 2006

8.     Proof of claim number 11111, filed by John D. Opie, dated June 28, 2006

9.     Proof of claim number 12056, filed by John Blahnik, dated July 27, 2006

10.    Proof of claim number 12164, filed by Bernd Gottschalk, dated July 20, 2006

11.    Proof of claim number 12184, filed by Catherine M. Rozanski, dated July 27, 2006

12.    Proof of claim number 13410, filed by Alan S. Dawes, dated July 28, 2006

13.    Proof of claim number 14935, filed by Milan Belans, dated July 28, 2006

14.    Proof of claim number 15599, filed by Paul R. Free, dated July 26, 2006

15.    Proof of claim number 15806, filed by John D. Sheehan, dated July 27, 2006

HELLER EHRMAN LLP

By: _____
          Timothy W. Burns

One East Main Street
Suite 201
Madison, WI 53703-5118
Telephone: (608) 663-7487
Facsimile: (608) 6637499

SHEARMAN & STERLING LLP
Stuart J. Baskin
Brian H. Polovoy
Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Counsel for Delphi Corporation, Delphi Trust I,
Delphi Trust II, Robert H. Brust,
Virgis W. Colbert, David N. Farr,
Bernd Gottschalk, Susan A. McLaughlin, Oscar
de Paula Bernardes Neto, Cynthia A. Niekamp,
John D. Opie, Roger S. Penske, Donald S.
Runkle, John D. Sheehan, and Patricia C. Sueltz

BAKER BOTTS L.L.P.

By: _____
       William H. Jeffress, Jr.
       Joe R. Caldwell, Jr
       Bridget M. Moore
       Michael G. Pattillo, Jr.


1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

Counsel for J.T. Battenberg

O'MELVENY & MYERS LLP

By: _Robert M. Stern_ (per consent)
       Robert N. Eccles
       Robert M. Stern

1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

Counsel for Alan S. Dawes

BAKER BOTTS L.L.P.

By: *Bridget M. Moore*

William H. Jeffress, Jr.
Joe R. Caldwell, Jr
Bridget M. Moore
Michael G. Pattillo, Jr.

1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

Counsel for J.T. Battenberg

O'MELVENY & MYERS LLP

By:

Robert N. Eccles
Robert M. Stern

1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

Counsel for Alan S. Dawes

PEPPER HAMILTON LLP

By: _____
        Matthew J. Lund

100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

Counsel for Paul R. Free


SARETSKY HART MICHAELS & GOULD PC

By: _____  (per consent)
        Eric A. Michaels

995 South Eton
Birmingham, Michigan 48009
Telephone: (248) 502-3300

Counsel for Judith Kudla


MILLER, CANFIELD, PADDOCK and
STONE, PLC

By: _____
        Thomas W. Cranmer
        Matthew P. Allen

150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420


Counsel for John G. Blahnik and Peter H. Janak

CLARK HILL PLC

By: _____
    Martin E. Crandall
    Charles E. Murphy

500 Woodward Avenue
Suite 3500
Detroit, MI 48226
Telephone: (313) 965-8413

Counsel for Milan Belans

BUTZEL LONG PC

By: _____
    David Dumouchel
    Laurie J. Michelson

150 W. Jefferson Avenue
Suite 100
Detroit, MI 48226
Telephone: (313) 225-7004

Counsel for Cathy Rozanski

EDWARDS ANGELL PALMER & DODGE
LLP

By: _____
John D. Hughes
Mary-Pat Cormier

111 Huntington Avenue
Boston, MA  02119
Telephone:  (617) 951-3373

**Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.**

FEDERAL INSURANCE COMPANY

By: _____
Brendan R. Kelley
Assistant Vice President
Chubb & Son, A Division of Federal Insurance
Co.

BOUNDAS SKARZYNSKI WALSH & BLACK,
LLC

By: _____
James A. Skarzynski
David T. Burrowes
Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL  60601
Telephone:  (312) 946-4214

**Counsel for Great American Insurance
Company**

EDWARDS ANGELL PALMER & DODGE LLP

By:

    John D. Hughes
    Mary-Pat Cormier

111 Huntington Avenue
Boston, MA  02119
Telephone: (617) 951-3373

Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.

Chubb & Son a division of Federal Insurance Co.

By:

    Brendan R. Kelley
    Assistant Vice President

BOUNDAS SKARZYNSKI WALSH & BLACK, LLC

By:

    James A. Skarzynski
    David T. Burrowes
    Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL  60601
Telephone:  (312) 946-4214

EDWARDS ANGELL PALMER & DODGE
LLP

By: _____
    John D. Hughes
    Mary-Pat Cormier


111 Huntington Avenue
Boston, MA 02119
Telephone: (617) 951-3373

**Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.**


FEDERAL INSURANCE COMPANY

By: _____
    Brendan R. Kelley
    Assistant Vice President
    Chubb & Son, A Division of Federal Insurance
    Co.


BOUNDAS SKARZYNSKI WALSH & BLACK,
LLC

By: _____
    James A. Skarzynski
    David T. Burrowes
    Nathan L. Strup


200 E. Randolph Drive
Suite 7200
Chicago, IL 60601
Telephone: (312) 946-4214

**Counsel for Great American Insurance
Company**

ROSS DIXON & BELL, LLP

By: _Kimberly_ w/consent 8/30/07
    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758
Telephone:  (312) 759-5945

**Counsel for Twin City Fire Insurance Company**

BAILEY CAVALIERI LLC

By:
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Telephone:  (614) 229-3203

**Counsel for Zurich American Insurance
Company**

D'AMATO & LYNCH, LLP

By:
    Thomas F. Breen

70 Pine Street
New York, NY  10270-0110
Telephone:  (212) 269-0927

**Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International**

ROSS DIXON & BELL, LLP

By:
    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL 60603-5758
Telephone: (312) 759-5945

**Counsel for Twin City Fire Insurance Company**

BAILEY CAVALIERI LLC

By:    R. Stacy Lane
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH 43215-3422
Telephone: (614) 229-3203

**Counsel for Zurich American Insurance
Company**

D'AMATO & LYNCH, LLP

By:
    Thomas F. Breen

70 Pine Street
New York, NY 10270-0110
Telephone: (212) 269-0927

**Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International**

ROSS DIXON & BELL, LLP

By:
    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758
Telephone:  (312) 759-5945

Counsel for Twin City Fire Insurance Company


BAILEY CAVALIERI LLC

By:
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Telephone:  (614) 229-3203

Counsel for Zurich American Insurance
Company


D'AMATO & LYNCH, LLP

By:
    Thomas F. Breen

70 Pine Street
New York, NY  10270-0110
Telephone:  (212) 269-0927

Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International

KAUFMAN BORGEEST & RYAN LLP

By: *Wayne E. Borgeest*    by Paul Curley w/permission

Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (212) 980-9600

**Counsel for Arch Insurance Company**


SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By:

Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202

**Counsel for American Casualty Company of
Reading PA**


THOMPSON, LOSS & JUDGE, LLP

By:

Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC 20036
Telephone: (202) 778-4060

**Counsel for St. Paul Mercury Insurance
Company**

KAUFMAN BORGEEST & RYAN LLP

By: _____
    Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (212) 980-9600

Counsel for Arch Insurance Company


SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By: _____
    Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202

Counsel for American Casualty Company of
Reading PA


THOMPSON, LOSS & JUDGE, LLP

By: _____
    Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC 20036
Telephone: (202) 778-4060

Counsel for St. Paul Mercury Insurance
Company

KAUFMAN BORGEEST & RYAN LLP

By:

Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (212) 980-9600

**Counsel for Arch Insurance Company**


SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By:

Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202

**Counsel for American Casualty Company of
Reading PA**


THOMPSON, LOSS & JUDGE, LLP

By: _____
Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC 20036
Telephone: (202) 778-4060

**Counsel for St. Paul Mercury Insurance
Company**

## EXHIBIT A

1.    Proof of claim number 9787, filed by Donald L. Runkle, dated June 20, 2006

2.    Proof of claim number 10582, filed by J. T. Battenberg III, dated July 21, 2006

3.    Proof of claim number 11104, filed by Oscar de Paula Bernardes Neto, dated July 10, 2006

4.    Proof of claim number 11105, filed by Robert H. Brust, dated June 27, 2006

5.    Proof of claim number 11106, filed by Virgis W. Colbert, dated June 27, 2006

6.    Proof of claim number 11107, filed by David N. Farr, dated June 29, 2006

7.    Proof of claim number 11108, filed by Bernd Gottschalk, dated July 20, 2006

8.    Proof of claim number 11111, filed by John D. Opie, dated June 28, 2006

9.    Proof of claim number 12056, filed by John Blahnik, dated July 27, 2006

10.    Proof of claim number 12164, filed by Bernd Gottschalk, dated July 20, 2006

11.    Proof of claim number 12184, filed by Catherine M. Rozanski, dated July 27, 2006

12.    Proof of claim number 13410, filed by Alan S. Dawes, dated July 28, 2006

13.    Proof of claim number 14935, filed by Milan Belans, dated July 28, 2006

14.    Proof of claim number 15599, filed by Paul R. Free, dated July 26, 2006

15.    Proof of claim number 15806, filed by John D. Sheehan, dated July 27, 2006

# EXHIBIT D

## EXHIBIT D TO STIPULATION AND AGREEMENT OF
## SETTLEMENT WITH CERTAIN DEFENDANTS – ERISA ACTIONS

1.     Proof of claim number 14805, filed by Neal C. Folck, dated July 29, 2006

2.     Proof of claim number 16628, filed by Kimberly Chase-Orr, dated July 19, 2007