## Schedule D - Sublicensed agreements

Automotive Polymer-Based Composites Joint Research and Development
Partnership - 1988 Partnership Agreement

Crash Avoidance Metrics Partnership - November 1995 Partnership Agreement

Electrical Wiring Component Applications Partnership - April 1994 Partnership
Agreement

Environmental Sciences Research and Development Partnership - 21 March 1991
Partnership Agreement

Low Emission Paint Research and Development Partnership - 9 February 1993
Partnership Agreement

Kelsey-Hayes Company - 1 August 1987 4WAL Supply Agreement, as amended

Kelsey-Hayes Company - 1 August 1987 RWAL Supply Agreement, as amended

Lear Corporation - 31 August 1998 Intellectual Property License Agreement

Lemelson - 22 May 1998 Settlement Agreement

Lightsource Parent Corporation and PEP Guide, LLC - 30 October 1998
Intellectual Property License Agreement

Low Emissions Technologies Research and Development Partnership - 8 June
1992 Partnership Agreement, as amended

Midwest Research Institute - 30 September 1993 Definitized Subcontract No.
ZCB-3-13032-01, as amended

Natural Gas Vehicle Technology Partnership - Partnership Agreement

Sandia National Laboratory - Cooperative Research and Development
Agreements 92/1133 and 96/1422

Shanghai General Motors Corporation Limited - 25 March 1997 Technology
License Agreement

Supercomputer Automotive Applications Partnership - 1993 Partnership
Agreement

## Exhibit 5.01(a)(x)
**Intellectual Property License Agreement dated as of December 4, 1998, between DTI and GM**

**Exhibit G-2**

4 December 1998

GM - DELPHI

INTELLECTUAL PROPERTY LICENSE AGREEMENT

This Intellectual Property License Agreement is between General Motors Corporation ("GM") and Delphi Technologies, Inc. ("Delphi").

The parties enter this agreement to establish licenses in intellectual property owned by GM prior to the separation of Delphi from GM.

Capitalized terms are defined in section 5.

1 -    Patents

The licenses granted in this section 1 are subject to the restrictions set forth in the Technology Transfer Agreement executed herewith between the parties, and to rights granted to others prior to the Effective Date, and are effective as of the Effective Date.

1.1    Delphi patent license to GM

(a)    Delphi hereby grants (and will cause Delphi Affiliates to grant) to GM a non-exclusive, world-wide, irrevocable license (including the right to grant sublicenses to GM Affiliates) under Delphi Patents to make, have made, use, have used, offer to sell, sell and import products, processes and services.

(b)    However, Delphi and Delphi Affiliates reserve the right to collect reasonable royalties/damages from suppliers to GM and GM Affiliates under Delphi Current Component Patents in those situations where:

- GM or a Designated GM Affiliate has not committed prior to the Effective Date to a particular supplier for a product or process covered by a Delphi Current Component Patent,

- GM or a Designated GM Affiliate has not later entered a further contract with that supplier for that product or a replacement for that product covered by the same patent and not requiring substantial new tooling design,

- GM or a Designated GM Affiliate has not later entered a further contract with that supplier for that process or a replacement of that process covered by the same patent that does not incorporate any substantial change in the process,

license (including the right to grant sublicenses to GM Affiliates) to make, have made, use, have used, offer to sell, sell and import products, processes and services under the Patent.

(b)    If GM is assigned an interest of a Patent pursuant to clause 1.4(b) of the Intellectual Property Transfer Agreement executed herewith between the parties, GM will grant to Delphi a non-exclusive, world-wide, fully paid, irrevocable license (including the right to grant sublicenses to Delphi Affiliates) to make, have made, use, have used, offer to sell, sell and import products, processes and services under the Patent.

## 2 -    Copyrights

The licenses granted in this section 2 are subject to the restrictions set forth in the Technology Transfer Agreement executed herewith between the parties, and to rights granted to others prior to the Effective Date, and are effective as of the Effective Date.

### 2.1    Delphi copyright license to GM

Delphi hereby grants (and will cause Delphi Affiliates to grant) to GM a non-exclusive, world-wide, irrevocable license (including the right to grant sublicenses to GM Affiliates) under Delphi Copyrights and Delphi Affiliate Copyrights.

### 2.2    GM copyright license to Delphi

GM hereby grants (and will cause GM Affiliates to grant) to Delphi a non-exclusive, world-wide, irrevocable license (including the right to grant sublicenses to Delphi Affiliates) under GM Copyrights and GM Affiliate Copyrights.

## 3 -    Equal value

An independent accounting firm has concluded that the aggregate value of licenses granted to Delphi by GM and GM Affiliates is approximately equal to the aggregate value of licenses granted to GM by Delphi and Delphi Affiliates. Accordingly, no payment by either party to the other is necessary to make such licenses of equal value, and all licenses granted in this agreement are fully paid.

## 4 -    Other provisions

### 4.1    Term

This agreement will remain in effect until all rights and obligations have expired.

3

5 -    Definitions

"Control" of an organization means direct or indirect possession of the power to direct or cause direction of the management of the policies of the organization, whether through the ownership of voting securities, by contract or otherwise. "Controlling" and "Controlled" have the corollary meanings ascribed thereto.

"Delphi Affiliate" means any organization directly or indirectly Controlling, Controlled by, or under common Control with Delphi at any time.

"Delphi Affiliate Copyright" means a copyright or semiconductor chip mask work right in which a Delphi Affiliate has an ownership interest immediately prior to the Effective Date, but excluding Delphi Restricted Technology Copyrights.

"Delphi Affiliate Patent" means a Patent in which a Delphi Affiliate has an ownership interest immediately prior to the Effective Date.

"Delphi Business Sector" means domestic and foreign operations of the Delphi Automotive Systems business sector of GM, and its predecessor organizations. The Delphi Business Sector is the predecessor to Delphi Automotive Systems Corporation and its subsidiaries.

"Delphi Copyright" means a copyright or semiconductor chip mask work right assigned to Delphi pursuant to the Intellectual Property Transfer Agreement executed herewith between the parties.

"Delphi Current Component Patent" means a Delphi Patent (a) primarily related to a component made or sold by the Delphi Business Sector prior to the Effective Date, or (b) primarily related to a component (i) involved immediately prior to the Effective Date in a Delphi Business Sector development program set forth in the attached schedule A and (ii) not involved in a GM development program immediately prior to the Effective Date that GM continues (either alone or with a supplier other than Delphi or a Delphi Affiliate) following the Effective Date.

"Delphi Patent" means a Patent assigned to Delphi pursuant to the Intellectual Property Transfer Agreement executed herewith between the parties, or a Delphi Affiliate Patent, but excluding Delphi Restricted Technology Patents.

"Delphi Restricted Technology Copyright" means a copyright or a semiconductor chip mask work right assigned to Delphi pursuant to the Intellectual Property Transfer Agreement executed herewith between the parties, and directed to a technology (i) subject to restriction and (ii) in which Delphi or a Delphi Affiliate has an ownership interest, as provided in the Technology Transfer Agreement executed herewith between the parties.

interest after the Effective Date, as provided in the Technology Transfer
Agreement executed herewith between the parties.

"Patent" means a domestic or foreign patent, utility model or industrial design
granted on an invention conceived prior to the Effective Date; an application for a
patent, utility model or industrial design on such an invention; the right to apply
for a patent, utility model or industrial design on such an invention; and any other
intellectual property rights in such an invention.

"Saturn" means Saturn Corporation, a GM Affiliate.

The parties have signed two copies of this agreement as of the Effective Date.

GENERAL MOTORS CORPORATION    DELPHI TECHNOLOGIES, INC.

By _____    By _____

Name  Thomas J. Davis          Name  Andrew Brown, Jr.

      Vice President and
Title  Group Executive          Title  President.

7

## Schedule A - Development Programs

the confidential Technology Database – 6 pages
provided to the GM Patent Counsel prior to the Effective Date
is incorporated by reference

## ENERGY SERVICES AGREEMENT

This Energy Services Agreement ("Agreement") is made and entered into by and between General Motors Corporation ("General Motors") and Delphi Automotive Systems LLC ("Delphi"), effective as of the 31st day of December, 1998.

WHEREAS, Delphi desires that General Motors provide certain services on its behalf related to the purchase and consumption of utility services, including natural gas, electricity, water and sewer, at Delphi's facilities located throughout the United States ("facilities"); and

WHEREAS, General Motors has agreed to provide the services to Delphi set forth in this Agreement;

NOW, THEREFORE, in consideration of the promises and mutual covenants and agreements herein contained, the parties hereto, hereby agree as follows:

1.  General Scope of Services. The general scope of services to be provided by General Motors to Delphi pursuant to this Agreement are as follows:

    1.  On Delphi's behalf, General Motors will provide certain natural gas services for the facilities which will include the purchase of natural gas and gas transportation service under terms and conditions to be agreed upon by the parties in a separate agreement;

1

## SERVICES RELATED TO NATURAL GAS

3.      General Motors will provide Delphi with natural gas services, the terms and conditions of
which will be set forth in a separate Gas Service Agreement to be negotiated between
General Motors and Delphi.

## SERVICES RELATED TO ELECTRICITY & OTHER UTILITY SERVICES

4.      Delphi hereby appoints General Motors as its agent to negotiate, on Delphi's behalf,
agreements related to the purchase and transmission of electricity, water and sewer services
to be used by Delphi at the facilities.  With respect to electricity, such agreements will
include, but not be limited to, electricity purchase agreements with any electric utility that
has a right pursuant to franchise to serve the geographic location in which the facility is
located and/or any other entity that has the right to sell electricity to the facility including
independent power producers, energy service companies, electricity marketers and
governmental entities (such as the New York Power Authority), and electricity transmission
service agreements with any entity that owns or controls transmission facilities that are used
or could be used to transmit electricity to the facilities.

5.      General Motors will provide Delphi with support services to collect utility/fuel data, and
generate and distribute reports from the General Motors Energy Report System (GMERS).

6.      It is the intent of General Motors and Delphi that Delphi will have access to General Motors'
energy and utility resources in a manner similar to that which existed prior to the separation
of Delphi from General Motors.  Accordingly,  General Motors will provide Delphi with
reasonable access to the resources of General Motors related to energy and utility services.

3

fees charged to General Motors by attorneys, consultants or other outside contractors

employed by General Motors to provide any services under this Agreement. General Motors

will bill Delphi monthly for any such costs, expenses and attorney's fees and Delphi will

remit payment of all amounts due under the Purchase Order Payment Terms.


## GENERAL PROVISIONS

13.    Limitation of Liability and Damages. Neither party will be liable to the other party for the

failure by a party to perform any services under this Agreement nor will either party be liable

to the other party for a party's negligence in performing any services under this Agreement.

In cases of gross negligence or wanton recklessness by a party in performing services under

this Agreement, and in any action or cause of action brought pursuant to or arising out of this

Agreement, liability will be limited to direct actual damages as the sole and exclusive

remedy and all other remedies or damages at law or in equity are waived. Neither party will

be liable for consequential, incidental, punitive, exemplary or indirect damages, lost profit

or other business interruption damages, whether in tort or contract, under any circumstances

resulting from this Agreement.

14.    Entire Agreement. This Agreement contains the entire agreement between the parties with

respect to the subject matter hereof, and supersedes all prior and contemporaneous oral

agreements. This Agreement cannot be modified except in a writing signed by the parties

hereto.

15.    Applicable Law. This Agreement will be governed by and construed in accordance with the

laws of the State of Michigan.

6

**<u>Exhibit 5.01(a)(xi)</u>**

**Intellectual Property Transfer Agreement dated as of December 4, 1998
between DTI and GM**

4 December 1998

GM - DELPHI
INTELLECTUAL PROPERTY TRANSFER AGREEMENT

This Intellectual Property Transfer Agreement is between General Motors Corporation
("GM") and Delphi Technologies, Inc. ("Delphi").

The parties enter this agreement to transfer certain intellectual property from GM to
Delphi in connection with the separation of Delphi from GM.

Capitalized terms are defined in section 3.

1 -    Patents, copyrights

1.1    Assignment of Patents to Delphi

 (a) GM hereby assigns (and will cause Saturn to assign) their interest in the
Delphi Patents to Delphi, together with the right to sue for past infringement.
Such assignment is subject to the rights of joint owners, and to rights granted to
others prior to the Effective Date, and is effective on the Effective Date. Delphi
will be responsible for recording such assignment to the extent required by local
law; the costs of recording will be considered a Project Oracle expense.

 (b) Schedule A lists US Patents assigned pursuant to clause 1.1(a).  The
parties recognize schedule A may not be a complete list of such US Patents.
Foreign Patents corresponding to the US Patents listed in schedule A are also
assigned pursuant to clause 1.1(a).

 (c) If the parties discover that any Patent assigned to Delphi hereunder is not a
Delphi Patent, Delphi will reassign such Patent and the corresponding foreign
Patents to GM or Saturn.  If the parties discover that any Delphi Patent is not
included on schedule A, they will amend schedule A to include that Patent.

 (d) GM hereby assigns to Delphi a joint ownership interest in the Patents
listed in schedule B, and in the corresponding foreign Patents, including the right
to sue for past infringement.  Such assignment is subject to the rights of joint
owners, and to rights granted to others prior to the Effective Date, and is effective
on the Effective Date.  Delphi will be responsible for recording such assignments
to the extent required by local law; the costs of recording will be considered a
Project Oracle expense.  GM and Delphi will bear equal shares of all fees
associated with prosecution and maintenance of the Patents listed in schedule B.
GM will retain responsibility for prosecution and maintenance of the Patents
listed in schedule B, subject to the provisions of clause 1.4 of this agreement, and
will invoice Delphi for its share of the fees.

be subject to the rights of joint owners, and to rights granted to others prior to the assignment.

(b)    If Delphi elects to allow any patent or patent application filed prior to the Effective Date and transferred under this agreement to lapse or become abandoned, Delphi will notify GM of its intention to do so at least 60 days prior to the date on which the patent is due to lapse or become abandoned, but Delphi will have no liability to GM if it fails to do so.  GM may then assume control of such patent at its own expense by providing written notice to such effect at least 30 days prior to the date the patent lapses or becomes abandoned.  Upon receiving such notice, Delphi will assign its interest in the patent to GM, together with the right to sue for past infringement.  Such assignment will be subject to the rights of joint owners, and to rights granted to others prior to the assignment.

2 -    <u>Other provisions</u>

2.1    Term

This agreement will remain in effect until all rights and obligations have expired.

2.2    Notices

All notices or other communications relating to this agreement must be written, and will be deemed to have been properly given when delivered in person, received by facsimile, or delivered by registered or certified mail as shown by a return receipt.  Such notices or other communications must be addressed as follows:

If to GM:    General Motors Corporation
             Legal Staff
             P.O. Box 33114
             Detroit MI  48232

             Attention:    Patent Counsel
             Facsimile:    313-974-1374

If to Delphi:    Delphi Technologies, Inc.
                 Legal Staff
                 P.O. Box 33114
                 Detroit MI  48232

                 Attention:    Patent Counsel
                 Facsimile:    313-974-0593

Either party may change its address by notice to the other.

"Effective Date" means 1 January 1999.

"GM Affiliate" means an organization directly or indirectly Controlled by GM at any time, but excluding Delphi Automotive Systems Corporation and its subsidiaries.

"GM Restricted Technology Copyright" means a copyright or semiconductor chip mask work right directed to a technology (i) subject to restriction and (ii) in which GM or a GM Affiliate retains an ownership interest after the Effective Date, as provided in the Technology Transfer Agreement executed herewith between the parties.

"GM Restricted Technology Patent" means a Patent directed to a technology (i) subject to restriction and (ii) in which GM or a GM Affiliate retains an ownership interest after the Effective Date, as provided in the Technology Transfer Agreement executed herewith between the parties.

"Patent" means a domestic or foreign patent, utility model or industrial design granted on an invention conceived prior to the Effective Date; an application for a patent, utility model or industrial design on such an invention; the right to apply for a patent, utility model or industrial design on such an invention; and any other intellectual property rights in such an invention.

"Saturn" means Saturn Corporation, a GM subsidiary.

The parties have signed two copies of this agreement as of the Effective Date.

GENERAL MOTORS CORPORATION     DELPHI TECHNOLOGIES, INC.

By _____     By _____

Name   Thomas J. Davis          Name   Andrew Brown, Jr.

Title   Vice President and       Title   President
        Group Executive

## Exhibit 5.01(a)(xiv)
## Real Estate Assignment and Assumption Agreements

## EXHIBIT 5.01(a)(xv)

### Real Estate-Related Assignment and Assumption Agreements

1.  Assignment and Assumption between General Motors Corporation ("GM") and Delphi Automotive Systems LLC ("DAS"), dated December 10, 1998, with respect to Lease between 1401 Troy Associates Limited Partnership, as Landlord, and GM, as Tenant, dated June 1, 1989, as amended, covering premises located at 1401 Crooks Road, Troy, Michigan

2.  Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Warehouse Building Lease between Opus South Corporation, as Landlord, and GM, as Tenant, dated February 1, 1994, as amended, covering premises located at Butterfield Trail Industrial Park, El Paso, Texas

3.  Assignment of Lease and Termination of Sublease Agreement between GM and DAS, dated May 28, 1999, with respect to Sublease between GM, as Sublessor, and DAS, as Sublessee, dated December 10, 1998 (under prime lease between Detroit and Mackinac Railway Company, as Lessor, and GM, as Lessee, dated June 26, 1998), covering premises located at 12501 East Grand River Avenue, Brighton, Michigan

4.  Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease between John E. Benz, as Landlord, and GM, as Tenant, dated September 28, 1998, covering premises located at 3535 Kettering Boulevard, Moraine, Ohio

5.  Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease between Orix GF Warren Venture, as Landlord, and GM, as Tenant, dated November 26, 1997, covering the Delphi Packard Electric Systems Research Building located in Warren, Ohio

6.  Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease Agreement between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated April 1, 1975, as amended, covering the Water Pollution Facility located in Limestone County, Alabama

7.  Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease Agreement between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated September 1, 1977, as amended, covering Plants 21 and 22 located at U.S. Highway 31 North, Limestone County, Alabama

8. Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease Agreement between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated May 1, 1974, as amended (the "May 1, 1974 Lease Agreement"), originally covering approximately 319.1736 acres of land and buildings constructed thereon in Limestone County, Alabama;

9. Assignment and Assumption between GM and DAS, dated February 16, 2007, with respect to Additional Equipment Lease Agreement between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated September 1, 1977, covering certain items of machinery and equipment for use in the buildings in Limestone County, Alabama leased pursuant to the May 1, 1974 Lease Agreement

10. Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated August 8, 1975, as amended, covering approximately 22.1 acres of land in Limestone County, Alabama

11. Assignment and Assumption between GM and DAS, dated December 10, 1998, with respect to Lease Agreement between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated September 1, 1977, as amended, covering approximately 70.2824 acres of land and buildings constructed thereon in Limestone County, Alabama

12. Assignment and Assumption between GM and DAS, dated February 16, 2007, with respect to Lease Agreement between The Industrial Development Board of the City of Athens, as Landlord, and GM, as Tenant, dated December 1, 1981, as amended, covering machinery and equipment and additions to the buildings pursuant to the May 1, 1974 Lease Agreement

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: ~~November~~ DEC. 10 , 1998

GENERAL MOTORS CORPORATION

By _____
JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____

Its _____

318.RE14159
Prepared 11/23/98

# EXHIBIT "A"

Lease between 1401 TROY ASSOCIATES LIMITED PARTNERSHIP, as Landlord, and
GENERAL MOTORS CORPORATION, as Tenant, dated June 1, 1989, as amended,
covering premises at 1401 Crooks Road, Troy, Michigan.

GM Worldwide Real Estate

T-FILE    RECEIVED

FEB - 1 1999

ETKIN EQUITIES

January 25, 1999

VIA CERTIFIED MAIL

1401 Troy Associates Limited Partnership
200 Franklin Center
29100 Northwestern Highway
Southfield, Michigan 48034

RE:  Assignment of Lease
     Assignor:  General Motors Corporation
     Assignee:  Delphi Automotive Systems LLC
     1401 Crooks Road Troy, MI.
     GMC File No. RE14159

Dear Sir/Madam;

This is to inform you that Delphi Automotive Systems, formerly a division of General Motors Corporation, has recently become a separate legal entity known as Delphi Automotive Systems LLC.

Effective January 1, 1999, General Motors Corporation has assigned its interest in the above referenced Lease to Delphi Automotive Systems LLC. A photocopy of the Assignment and Assumption document is enclosed for your records.

Please direct any future notices in connection with the above referenced Lease to Delphi Automotive Systems LLC at the following address:

        Delphi Automotive Systems LLC
        5725 Delphi Drive
        Troy, Michigan 48098
        Attn: Assistant Corporate Counsel-Commercial Practice;

Thank you for your attention to this matter. Please contact me at (313) 556-2930 if you require any further information.

Very truly yours,

Betty Stichler

cc: Edward O'Neill

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: Dec 10, 1998

GENERAL MOTORS CORPORATION

By _____
JOHN I. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _Edmund / Sherry_____

Its _Director Real Estate_____

SLS

218.RE15185
Prepared 11/23/98

## EXHIBIT "A"

Warehouse Building Lease by and between Opus South Corporation, as Landlord, and
GENERAL MOTORS CORPORATION, as Tenant, dated February 1, 1994, as
amended, covering premises at Butterfield Trail Industrial Park, El Paso, Texas.

218 RE15185
Prepared 11/20/98

*12501 E Grand Blvd*
*Brighton MI*

## ASSIGNMENT OF LEASE AND
## TERMINATION OF SUBLEASE AGREEMENT

THIS AGREEMENT, made and entered into this _28th_ day of May, 1999, by and
between General Motors Corporation, a Delaware corporation, whose address is 3044
West Grand Boulevard, Detroit, Michigan 48202 ("GM"), and Delphi Automotive Systems,
LLC, a Delaware limited liability company whose address is 5725 Delphi Drive, Troy, MI
48098 ("Delphi").

WITNESSETH:

WHEREAS, GM, as Lessee, did hereto before enter into a Lease dated June 26,
1998, with Detroit and Mackinac Railway Company, as Lessor, (the "Lease"), covering
premises consisting of a 178,560 square foot office, light industrial, warehouse facility
commonly known as 12501 East Grand River Avenue, Brighton, Michigan    (the
"Premises"), which Premises are move particularly described in the Lease;

WHEREAS, GM and Delphi did heretofore enter into a certain Sublease dated
December 10, 1998 (the "Sublease") covering the Premises; and

WHEREAS, the parties hereto are presently desirous of cancelling and terminating
the Sublease and, in addition, are desirous of entering into an agreement in which GM shall
assign its interest in the Lease to Delphi.

NOW, THEREFORE, for and in consideration of the covenants herein contained and
other good and valuable considerations, the receipt and adequacy of which are confessed
by each of the parties hereto, it is agreed as follows:

1.    The Sublease shall be and the same is hereby cancelled and terminated
effective as of the date of this Agreement.

2.    As of the date of this Agreement, GM does hereby assign all of its right, title and interest in the Lease unto Delphi, and Delphi does hereby assume all of the terms, covenants and conditions of GM as Lessee under the Lease arising from and after the effective date of such assignment.

3.    This Agreement is contingent upon the Lessor under the Lease consenting to the above assignment of the Lease.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement on the day and year first above written and declare this Agreement to be binding on them, their respective successors and permitted assigns.

IN THE PRESENCE OF:

GENERAL MOTORS CORPORATION,
a Delaware corporation

By: _____

Its: _DIRECTOR_____

DELPHI AUTOMOTIVE SYSTEMS, L.L.C.,
a Delaware limited liability company

By: _____

Its: _Director, Real Estate_____

EXECUTION RECOMMENDED
DELPHI REAL ESTATE

BY: ___

{W0022073.DOC;}

## CONSENT OF LESSOR

The undersigned, Detroit & Mackinac Railway Company, does hereby consent to the assignment of General Motors Corporation's interest in the Lease dated June 26, 1998, for 12501 East Grand River Avenue, Brighton, Michigan, to Delphi Automotive Systems, LLC.

IN THE PRESENCE OF:

DETROIT & MACKINAC RAILWAY COMPANY,
a Michigan railroad corporation

JENNIFER M. JOHNSON

B. LYNN STRAEBEL

By:

Its:   VICE PRESIDENT

COPY

Brighton, Michigan

#713

## SUBLEASE

**THIS SUBLEASE**, made this _10_ day of December, 1998, by and between **GENERAL MOTORS CORPORATION**, a Delaware corporation, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 (hereinafter referred to as "Sublessor") and **DELPHI AUTOMOTIVE SYSTEMS LLC**, a Delaware limited liability company, whose address is 5725 Delphi Drive, Troy, Michigan 48098 (hereinafter referred to as "Subtenant").

## W I T N E S S E T H:

**WHEREAS**, Detroit & Mackinac Railway Company (hereinafter referred to as the "Prime Landlord"), as lessor, and Subtenant, as lessee, entered into that certain lease dated June 26, 1998, covering property commonly known as 12501 East Grand River Avenue, Brighton, Michigan (such Lease is hereinafter referred to as the "Prime Lease" and the premises covered thereby are hereinafter referred to as the "Premises"); and

**WHEREAS**, Sublessor wishes to sublet the Premises to Subtenant and Subtenant wishes to sublease the same from Sublessor upon all of the terms and provisions herein set forth.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    (a)    Sublessor hereby subleases to Subtenant and Subtenant hires from Sublessor the Premises for a term which commences January 1, 1999 (hereinafter referred to as the "Commencement Date") and expires June 29, 2001.

(b)    Sublessor hereby grants Subtenant the right to extend the term of this Sublease for (i) the period from June 30, 2001, to June 29, 2002, (ii) the period from June 30, 2002, to June 29, 2003, (iii) the period from June 30, 2003, to June 29, 2006, and (iv) the period from June 30, 2006, to June 29, 2008, upon the terms, conditions and rents contained in this Sublease. Subtenant shall exercise such right, if at all, by written notice to Sublessor at least six (6) months prior to the expiration of then current term of this Sublease. If Subtenant shall fail to exercise any such right, all such subsequent rights to so extend hereunder shall be of no further force or effect.

2.    Sublessor shall be deemed to have delivered the Premises to Subtenant on the Commencement Date and Subtenant shall be deemed to have accepted the same in its then "as is, where is" condition.

3.    The parties agree that this Sublease shall be subject and subordinate to all of the terms, covenants, conditions and provisions of the Prime Lease and to all the title and other matters to which the Prime Lease is subject or subordinate. A copy of the Prime Lease has been delivered to and examined by Subtenant.

4.    (a)    The terms, covenants, conditions and provisions in the Prime Lease (including, but not limited to, the rents and other charges and the remedies provided thereunder) are incorporated herein by reference, and shall, as between Sublessor and Subtenant, constitute the terms, covenants, conditions and provisions of this Sublease, except to the extent that they are inapplicable to, inconsistent with, or modified by the provisions of this Sublease.  The parties agree to observe and perform the terms, covenants, conditions and provisions on their respective parts to be observed and performed hereunder, including, but not limited to, those terms, covenants, conditions and provisions of the Prime Lease which are incorporated herein.

(b)    Subtenant shall, in no case, have any rights in respect of the Premises greater than Sublessor's rights under the Prime Lease.

(c)    To the extent the performance by Sublessor of any of the terms and conditions of this Sublease upon the Sublessor's part to be performed are subject and dependent upon the performance by the Prime Landlord under the Prime Lease of the terms, covenants, conditions and provisions, expressed or implied, of the Prime Lease on the part of the Prime Landlord under the Prime Lease to be performed, Sublessor shall be under no obligation or liability whatsoever to the Subtenant in the event that the Prime Landlord shall fail to perform any of such terms or conditions contained therein on the part of the Prime Landlord to be performed, but Sublessor shall take all reasonable actions to cause the Prime Landlord to so perform such obligations.

(d)    Sublessor agrees that it will not enter into any modification, termination or other agreement or take any action with respect to the Prime Lease that would terminate the Prime Lease or prevent or materially and adversely affect the use by Subtenant of the Premises in accordance with the terms of this Sublease or materially increase the obligations or liabilities (financial or otherwise) of Subtenant hereunder; provided, however, that Sublessor reserves the right to terminate the Prime Lease (and this Sublease) pursuant to the terms of the Prime Lease, including, without limitation, upon fire and condemnation but not upon the default of the Prime Landlord.

5.    Subtenant will indemnify and hold Sublessor and the Prime Landlord harmless from and against all losses, costs, damages, expenses and liability, including, but not limited to, reasonable attorneys' fees, which Sublessor and/or the Prime Landlord may incur or pay out by reason of any injury to persons or property occurring in, on or about the Premises, or by reason of any breach or default hereunder on Subtenant's part or by reason of any work done in or to the Premises or any act or negligence on the part of Subtenant.

6.    Nothing contained in this Sublease shall be construed to create privity or estate or of contract between Subtenant and the Prime Landlord.  Subtenant shall not do or permit to be done any act or thing which will constitute a breach or violation of any of the terms, covenants, conditions or provisions of the Prime Lease.

7.    Subtenant will cause Sublessor and the Prime Landlord to be listed as an additional insured on all public liability, property damage and fire and extended coverage insurance procured by Subtenant relating to the Premises.  Sublessor and Subtenant each hereby

2

releases and discharges the other and Subtenant releases the Prime Landlord of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty.

8.      During the continuance of this Sublease, Subtenant shall pay the rent and other charges payable under the Prime Lease directly to the Prime Landlord in lawful money of the United States, as agent for and on behalf of Sublessor.

9.      Subtenant shall not cause or suffer to be caused any releases or threatened releases of hazardous or solid waste materials or constituents, contaminants, pollutants, petroleum or petroleum products (including derivatives or fractions thereof) or hazardous substances ("Hazardous Material"), as defined under any applicable federal, state or local environmental law ("Environmental Law"), in, on or about the Premises, and otherwise shall not cause, contribute to, exacerbate or suffer any other person to cause, contribute to or exacerbate any contamination of the ground surface, soil, air, groundwater, surface water, buildings or improvements in, on or about the Premises. In the event of a breach of this Paragraph 9, Subtenant shall promptly notify Sublessor and, at its sole cost and in cooperation with Sublessor, shall promptly take all action(s) necessary under and in compliance with applicable Environmental Law to restore the Premises to their condition prior to such breach. If Subtenant fails to promptly take such action(s), Sublessor may take such action(s) at Subtenant's sole cost. Subtenant shall indemnify and defend Sublessor with respect to all releases or threatened releases of Hazardous Material or contamination otherwise caused, contributed to or exacerbated in, on or about the Premises in breach of this Paragraph 9.

10.     Sublessor's refusal to consent to or approve any matter or thing, whenever Sublessor's consent or approval is required under the terms of this Sublease, shall be deemed reasonable if, inter alia, the Prime Landlord has refused to give such consent or approval.

11.     (a)      Notices and other communications hereunder shall be in writing and shall be given or made by certified mail addressed to the parties at their respective addresses set forth above, or at any other address which either party may hereafter designate for such purpose by a written notice.

(b)      Subtenant shall promptly deliver to Sublessor copies of all notices received by Subtenant from the Prime Landlord and copies of all notices served upon the Prime Landlord under the terms of the Prime Lease.

12.     If for any reason the term of the Prime Lease is terminated prior to the expiration date of this Sublease, this Sublease shall thereupon be terminated and Sublessor shall not be liable to Subtenant by reason thereof, unless such termination shall have been effected because of the breach or default of the Sublessor under the Prime Lease.

13.     Notwithstanding anything contained in the Prime Lease to the contrary, Subtenant shall not by operation of law or otherwise assign, sublet, mortgage, pledge or otherwise encumber this Sublease, without the prior written consent of the Sublessor in each instance, which approval shall not be unreasonably withheld. Any assignment or subletting, or purported

3

assignment or subletting without such consent shall be void and of no effect. Notwithstanding such assignment or subletting, Subtenant shall not be released from any and shall perform all obligations imposed upon Subtenant hereunder.

14.    This Sublease shall be binding upon and inure to the benefit of the parties hereto and their respective successors, successors in interest and assigns.

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands the day and year first above written.

**WITNESS:**

**SUBLESSOR:**

**GENERAL MOTORS CORPORATION,**
a Delaware corporation

By: _____

John J. Dues
General Director, Worldwide Real Estate

EXECUTION RECOMMENDED
WORLDWIDE REAL ESTATE
BY

**SUBTENANT:**

**DELPHI AUTOMOTIVE SYSTEMS LLC,**
a Delaware limited liability company

By: _____
Edward J. O'Neill
Director, Real Estate

DET_C\208109.3
WJZ 12/15/98

4

*3535 Kettering Blvd*
*Moraine OH*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease").  The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: November ~~DEC~~ 10, 1998

GENERAL MOTORS CORPORATION

By _____
JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____    SLS
Its _Director Real Estate_

717.RE19508
Prepared 11/23/98

## EXHIBIT "A"

Lease between JOHN E. BENZ, as Landlord, and GENERAL MOTORS CORPORATION, as Tenant, dated September 28, 1998, covering premises at 3535 Kettering Boulevard, Moraine, Ohio.

717.RE19508
Prepared 11/20/98

P 144 994 723

US Postal Service
**Receipt for Certified Mail**

John E. Benz
C/O John E. Benz & Company
3017 Exchange Court Suite A
West Palm Beach, Florida 33409

| | | |
|---|---|---|
| Postage | $ | 33 |
| Certified Fee | | 1.70 |
| Special Delivery Fee | | |
| Restricted Delivery Fee | | |
| Return Receipt Showing to Whom & Date Delivered | | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | | 1.25 |
| TOTAL Postage & Fees | $ | 2.98 |
| Postmark or Date | | |

PS Form 3800, April 1995

STICHLER

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *"Return Receipt Requested"* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

John E. Benz
C/O John E. Benz & Company
3017 Exchange Court Suite A
West Palm Beach, Florida 33409

4a. Article Number
P 144 994 723

4b. Service Type
☐ Registered          ☑ Certified
☐ Express Mail        ☐ Insured
☑ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery  2/13/96

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)

PS Form 3811, December 1994          Domestic Return Receipt

*4951 Research Pkwy Warren OH*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.      This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.      Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.      Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.      Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: ~~November~~ DEC 10, 1998

GENERAL MOTORS CORPORATION

By _____

JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____

Its _Director Real Estate_

531B.RE18121
Prepared 11/23/98

## EXHIBIT "A"

Lease between ORIX GF WARREN VENTURE, as Landlord, and GENERAL
MOTORS CORPORATION, as Tenant, dated November 26, 1997, covering 94,000
rentable square feet of area in a building commonly known as the Delphi Packard Electric
Systems Research Building located in Warren, Ohio.

*Water Pollution Facility*
*Limestone City, AL*
*# 2476 0000*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, including, but not limited to, Tenant's option to purchase, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: December _10_, 1998

GENERAL MOTORS CORPORATION

By _____    SLS
JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____    SLS
Its _Director Real Estate_

600(607).RE10430
Prepared 12/03/98

## EXHIBIT "A"

Lease Agreement between THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF ATHENS, as Landlord, and GENERAL MOTORS CORPORATION, as Tenant, dated April 1, 1975, as amended, covering approximately 2.855 acres of land and pollution control facilities constructed thereon in Limestone County, Alabama, as more particularly described in the Lease Agreement.

600(607).RE10430
Prepared 12/03/98



*Plant 21 #22*
*US Hwy 31 North*
*Limestone City, AL*
*#24768000*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, including, but not limited to, Tenant's option to purchase, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.     This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.     Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.     Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.     Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: December __10__, 1998

GENERAL MOTORS CORPORATION

By _____    SLS
JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____    SLS
Its _Director Real Estate_

600(602).RE11043
Prepared 12/03/98

## EXHIBIT "A"

Lease Agreement between THE INDUSTRIAL DEVELOPMENT BOARD OF THE
CITY OF ATHENS, as Landlord, and GENERAL MOTORS CORPORATION, as
Tenant, dated September 1, 1977, as amended, covering approximately 70.2824 acres of
land and buildings constructed thereon in Limestone County, Alabama, as more
particularly described in the Lease Agreement.

*ASSIGNMENT OF 1974 LEASE*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, including, but not limited to, Tenant's option to purchase, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: December 10, 1998

GENERAL MOTORS CORPORATION

By _____
JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____
Its Director Real Estate

600(601).RE11180
Prepared 12/03/98

## EXHIBIT "A"

Lease Agreement between THE INDUSTRIAL DEVELOPMENT BOARD OF THE
CITY OF ATHENS, as Landlord, and GENERAL MOTORS CORPORATION, as
Tenant, dated May 1, 1974, as amended, currently covering approximately 319.1736
acres of land and buildings constructed thereon in Limestone County, Alabama, as more
particularly described in the Lease Agreement.

*Plants 21+23*
*Athens, AL*
*(1977 equip lease)*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, including, but not limited to, Tenant's option to purchase, in and to that certain Lease more particularly described on **Exhibit A** hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorneys' fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorneys' fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: February _16_, 2007

Print Name:

Print Name: Lisa Markham

Print Name: Donna Kustarz

Print Name: Susan L. Bacca

GENERAL MOTORS CORPORATION

By:

Print Name: DEBRA HOMO HOGE

Its: DIRECTOR WORLDWIDE REAL ESTATE

DELPHI AUTOMOTIVE SYSTEMS LLC

By:

Print Name: John A. Taffora

Its: Executive Director Operations Support Group

# EXHIBIT A

Additional Equipment Lease Agreement between THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF ATHENS (as Landlord) and GENERAL MOTORS CORPORATION (as Tenant), dated September 1, 1977, covering certain items of machinery and equipment for use in the landlord buildings in Limestone County, Alabama leased pursuant to a May 1, 1974 Lease between the parties, as more particularly described in the Lease Agreement.

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: ~~November~~ DEC 10 , 1998

GENERAL MOTORS CORPORATION

By: _____
JOHN J. DUES, General Director
Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____

Its _____

## EXHIBIT "A"

Lease by and between THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY
OF ATHENS, as Landlord, and GENERAL MOTORS CORPORATION, as Tenant,
dated August 8th, 1975, as amended, covering approximately 22.1 acres of land in
Limestone County, Alabama, as more particularly described in said Lease.

P 144 989 460

US Postal Service
**Receipt for Certified Mail**

Industrial Development Board of
The City of Athens
C/O Patton Lathom Legge & Cole
Attn: Mike Kohl, Esq.
P.O. Box 470
Athens, Alabama  35612

| Postage | $ |
| Certified Fee | 7.25 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | 1.40 |
| TOTAL Postage & Fees | $ 2.98 |
| Postmark or Date | |

STICHLER  AR60 A939
PS Form 3800, April 1995

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
| --- | --- |
| Industrial Development Board of The City of Athens C/O Patton Lathom Legge & Cole Attn: Mike Kohl, Esq. P.O. Box 470 Athens, Alabama  35612 | P 144 989 460 |
| | 4b. Service Type |
| | ☐ Registered   ☑ Certified |
| | ☐ Express Mail   ☐ Insured |
| | ☐ Return Receipt for Merchandise   ☐ COD |
| | 7. Date of Delivery  2/2/69 |
| 5. Received By: (Print Name) | 8. Addressee's Address (Only if requested and fee is paid) |
| 6. Signature: (Addressee or Agent) X Ashley Reuter | |

PS Form 3811, December 1994    Domestic Return Receipt

Is your RETURN ADDRESS completed on the reverse side?

Unimproved Property
GM 873—Revised 2-48

## This Lease, dated _____ August 8 _____, 19 75,

between THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF ATHENS, a

public corporation and instrumentality organized under the laws of

the State of Alabama, whose address is c/o Malone, Steele & Alexan~
Attorneys at Law, Athens, Alabama 35611,
hereinafter called the Lessor, and _____ GENERAL MOTORS CORPORATION, a Delaware _____

Corporation, with its principal office at 3044 West Grand Boulevar·

Detroit, Michigan 48202, _____ hereinafter called the Lessee,

### Witnesseth:

**PREMISES**

The Lessor hereby lets to the Lessee, and the Lessee hires from the Lessor:

A tract of land lying in Limestone County, State of
Alabama, in the E1/2NW1/4 Section 33, Town 4 South,
Range 4 West, on the East side of Pryor Branch
Embayment of Wheeler Lake, approximately 1 1/2 miles
North of Keller Memorial Bridge, the said tract be-
ing more particularly described in Exhibit A attached
hereto and made a part hereof,

**USE OF PREMISES**

with the appurtenances to be used for providing transportation, utilities,
storm water retention pond, sewer lines, railroad spur tracks and
any other services required by adjoining Industrial Plant or any type of
Facility owned by Lessor
business conducted or controlled by GENERAL MOTORS CORPORATION, for a term commencing

_____ June 1, 1975, _____ and expiring April 30, 1994,

**RENT**

at the total yearly rent of   ONE DOLLAR ($1.00)

payable in installments of $ _____. in advance on the first business day of each and every
month during the term. upon execution of this Lease.

The parties hereto covenant and agree with each other as follows:

**VACATION PREMISES**

FIRST: The Lessee shall pay the rent at the times and in the manner aforesaid and at the
expiration of the term will remove its goods and effects and will peaceably yield up to the Lessor said
premises in as good order and condition as when delivered to it, ordinary wear and tear, damage by
fire, the elements and casualty excepted as well as damage due to any cause or happening not occa-
sioned by the act or negligence of the Lessee.

**EASEMENTS**

SECOND: That the enjoyment and use of all entrances, exits, approaches and means of entrance
and approach and of light and air now existing in favor of the demised premises shall not be interfered
with or interrupted by any act or assent of the Lessor during the term of this Lease.

**ASSIGNMENT**

THIRD: That the Lessee will not assign this Lease without the written consent of the Lessor,
except such assignment be to a corporation then owned or controlled by the Lessee or by GENERAL
MOTORS CORPORATION. The Lessor agrees that such consent will not be unreasonably withheld

**CATIVE VENANTS**

FOURTH: That the Lessee will not consent to any unlawful use of the demised premises.

**VENANTS LESSOR**

FIFTH: That the Lessor covenants and agrees that the possession of the demised premises will be delivered to the Lessee on the commencement of the term of this Lease in as good condition as the same now are, free from all tenancies and occupancies, and free from all orders and notices and violations filed or entered by any public or quasi-public authority, and free from complaints and/or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, and/or any other local authority.

**WING MISES**

~~SIXTH: That the Lessor may during the term at reasonable times enter to view the premises~~ and may at any time within three (3) months next before the expiration of the said term, show the said premises to others, and affix to any suitable part of the said premises a notice for letting or selling ~~the premises and keep the same affixed without hindrance or molestation~~

**AWFUL :UPATION**

SEVENTH: ~~That the Lessor represents that the demised premises may be lawfully used for all of the purposes for which they are hereby leased and~~ In the event of the enactment or existence of any law, ordinance, rule, ruling or regulation prohibiting the use of said premises for any one or more of the purposes for which they are hereby demised, then in that event at the option of the Lessee, this Lease shall terminate and all liability hereunder shall cease from and after the date such prohibition becomes effective, and any unearned rent paid in advance by the Lessee shall be refunded to it.

**ETS IN 'AULT**

EIGHTH: That if the Lessee shall neglect or fail to perform or observe any of the covenants contained herein on its part to be observed and performed for thirty (30) days after written notice by the Lessor, or if the Lessee shall be adjudicated bankrupt or insolvent according to law, or shall make an assignment for the benefit of creditors, then and in any of said cases the Lessor may lawfully enter into and upon the said premises or any part thereof in the name of the whole, and repossess the same as of the former estate of the Lessor and expel the Lessee and those claiming under and through it and remove its effects (forcibly if necessary), without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant and upon entry as aforesaid this Lease shall terminate and the Lessee covenants that in case of such termination it will indemnify the Lessor against all unavoidable loss of rent which the Lessor may incur by reason of such termination during the residue of the term above specified.

**MINATION**

**D OVER**

NINTH: That notwithstanding any provision of law or any judicial decision to the contrary, (a) no notice shall be required to terminate the term of this Lease on the date herein specified and the term hereof shall expire on the date herein mentioned without notice being required from either party; (b) in the event that the Lessee, any assignee or sublessee remains beyond the expiration date of the term herein, it is the intention of the parties and it is hereby agreed that a tenancy from month to month shall arise.

**:T :ESSION**

TENTH: Lessor herein represents that it is the ~~fee owner~~ of the premises hereby leased and hereby covenants that Lessee on paying the rent and performing all and singular the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the demised premises for the term aforesaid, and for the term of any renewal or renewals hereof, free from molestation, eviction or destruction by the Lessor, or by any other person or persons lawfully claiming the same, and that the Lessor has good right to make this Lease for the full term hereby granted, including the period for which the Lessee has the right to effect a renewal hereof. Should Lessee be dispossessed from the premises by reason of a superior title, the payment of rent shall cease from and after the date of such dispossession and all rent that may have been prepaid for any period of time Lessee is deprived of its peaceful possession by reason of said dispossession, shall be returned to Lessee forthwith, but the Lessor shall not thereby be relieved of liability to the Lessee for damages sustained by Lessee due to such dispossession. Lessor further agrees that in the event the premises are sold during the term of this Lease or any extension thereof, a certified copy of the Deed of Conveyance or an executed copy of the Assignment of this Lease shall be furnished to Lessee, it being understood that the consideration for such conveyance may be deleted from such instruments.

**NSION**

ELEVENTH: That the Lessee may, at its option, obtain an extension of the term of this Lease, for a further term of....twenty (20) years....so as to expire....April 30, 2014,.... and upon like terms and conditions, by giving to the Lessor written notice of its intention to extend on or before....January 31, 1994....

**ELLATION**

~~TWELFTH: That the Lessee may cancel this Lease effective~~ 19......., or at any time thereafter by giving Lessor................................................days' ~~written notice prior to such cancellation~~

\*Grantee in an Easement granted to it by the Tennessee Valley Authority by instrument dated May 5, 1975, and recorded in Volume 690, Page 698, Limestone County Records

**IMPROVEMENTS**  THIRTEENTH: That it is understood that the demised premises consist of unimproved real estate only and that any improvements or buildings placed or constructed upon said premises by the Lessee shall be and remain personal property and at all times belong to the said Lessee and at the expiration of the term of this Lease, or any renewal thereof, the Lessee may remove any such improvements, but Lessee shall repair any damage caused by such removal.

**SIGNS**  FOURTEENTH: That the Lessee shall have the right to install or place signs or posters anywhere on or about the demised premises and upon removal of said signs and posters at the termination of this Lease shall repair any damage caused by such installation and removal.

**CONDEMNATION**  FIFTEENTH: That in the event that the premises or any part thereof are taken or condemned for a temporary or permanent public or quasi-public use, Lessee may at its option terminate this Lease and in such event any unearned rent paid in advance shall be returned to Lessee, but nothing herein contained shall prevent Lessee from recovering from the condemning authority any damages sustained by Lessee due to such taking.

**WAIVER OF SUBROGATION**  SIXTEENTH: The Lessor and the Lessee waive all rights, each against the other, for damages caused by fire or other perils covered by insurance where such damages are sustained in connection with the occupancy of the leased premises.

**NOTICES**  SEVENTEENTH: That all notices to be given hereunder by either party shall be in writing and given by personal delivery to the Lessor or to one of the executive officers of the Lessee or shall be sent by registered mail addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government. Provided, however, that it is mutually agreed that the Lessee appoints the President, the Executive Vice Presidents and the Vice ** ~~and the Assistant Secretary (Secretaries)~~ of Argonaut Realty Division, General Motors Corporation, Argonaut Building, 485 West Milwaukee Avenue Detroit, Michigan 48202, as its agents, and that any one of them may give all notices and receive all notices to be given hereunder, and may pay the rent, and notices shall be sent to any one of said agents and not otherwise. The right is hereby reserved by the Lessee to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Lessee to the Lessor.

**President in Charge of Real Estate, General Motors Corporation, and the Director

EIGHTEENTH:  It is understood by the parties that the premise hereby leased are being used in conjunction with a plant facility adjacent to the described premises.  In the event the Lease covering the premises adjacent to the property herein described, which is dated May 1, 1974, and between the parties hereto, shall be terminated, Lessee shall have the right and option to terminate this Lease or any renewals hereof upon thirty (30) days prior written notice.

The use of the premises described herein is subject to the te conditions and covenants contained in the aforementioned Easement granted to Lessor by the Tennessee Valley Authority.

NINETEENTH:  At the election of Lessee, and upon written request of Lessee at any time, Lessor shall convey its aforesaid Easement rights to Lessee for the full consideration of ONE DOLLAR ($1.00) and in such event this Lease would automatically be terminated without further writing or action by either party.

The covenants and agreements contained in the foregoing Lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

**In Witness Whereof,** Lessor has signed and sealed this instrument this........10........day of........September................A.D. 19 75., and Lessee has signed and sealed this instrument this ........18th........day of........August................A.D. 19 75.

In the presence of:

_Thomas C. Stot_

_Thomas S. Stot_

THE INDUSTRIAL DEVELOPMENT BOARD
OF THE CITY OF ATHENS

BY _W. A. Patton_
        CHAIRMAN

ATTEST _L. Schram Woodford_
        SECRETARY

In the presence of:

_Betty M. North_
/ Betty M. North

_Carmen F. Paniccia_
    Carmen F. Paniccia

GENERAL MOTORS CORPORATION

BY _R. L. Kessler_
    R. L. Kessler
                Vice President

ATTEST _A. T. Hastings_
    A. T. Hastings
        Assistant Secretary

INSTRUMENT PREPARED BY:

'est Grand Boulevard
, Michigan  48202

Beginning at a metal marker
(Coordinates: N. 1,692,409; E.
661,695) in the center line of a
road, in the South line of the
NW 1/4 Section 33 and in the
boundary of the United States of
America's land at a corner of the
lands of Mrs. C. Wilson Taylor and
Floyd P. Marsh; Thence with the
center line of the road approxi-
mately along the following bearings
and distances:  North 2 degrees 31
minutes West, 2292 feet to a metal
marker and North 5 degrees 36 min-
utes West, 357 feet, passing a
metal marker at 327 feet, to a
point in the center of a road
junction, in the North line of
Section 33 and in the boundary
of the United States of America's
land; Thence with the United States
of America's boundary line and the
center line of the road South 88
degrees 54 minutes East, 420 feet
to the Northeast corner of the
NW1/4NE1/4NW1/4 Section 33; Thence
leaving the road and with the East
line of the W1/2NE1/4NW1/4 Section
33 South 0 degrees 45 minutes West,
1050 feet, passing a metal marker
at 30 feet, to a concrete monument;
Thence, leaving the said East line,
North 89 degrees 15 minutes East,
232 feet to a concrete monument;
Thence South 2 degrees 55 minutes
East, 398 feet to a concrete monu-
ment; Thence South 87 degrees 31
minutes West, 259 feet to a concrete
monument in the East line of the
NW1/4SE1/4NW1/4 Section 33; Thence
South 0 degrees 49 minutes West,
1173 feet to a concrete monument at
the Southeast corner of the SW1/4
SE1/4NW1/4 Section 33; Thence North
88 degrees 33 minutes West, 247 feet
to the point of beginning, and con-
taining 22.1 acres, more or less.

EXHIBIT A

**GM**

General Motors Corporation

November 29, 1993

The Industrial Development Board
    of the City of Athens
c/o James M. Corder
Alexander, Corder & Plunk, P.C.
Attorneys at Law
Jefferson at Green
P. O. Box 809
Athens, AL  35611

Gentlemen:

Pursuant to the Lease Agreement dated August 8, 1975, between your Corporation, as Lessor, and General Motors Corporation, as Lessee, covering premises containing approximately 22.1 acres of land in Limestone County, Alabama, and described as follows:

> A tract of land lying in Limestone County, State of Alabama, in the E1/2NW1/4 Section 33, Town 4 South, Range 4 West, on the East side of Pryor Branch Embayment of Wheeler Lake, approximately 1 1/2 miles North of Keller Memorial Bridge, which tract is more particularly described in Exhibit "A" attached to said Lease Agreement dated August 8, 1975,

we hereby notify you of our election to exercise our option to extend the term of said Lease for a period of twenty (20) years on all the terms and conditions contained in said Lease.

Also enclosed is a check in the amount of $1.00 as required by the terms of the Lease.

Please acknowledge receipt and acceptance of the above by signing and returning the enclosed

General Motors Building  3044 West Grand Boulevard  Detroit Michigan 48202

The Industrial Development Board
of the City of Athens
Page 2

copy of this notice to Argonaut Realty, 485 West Milwaukee Avenue, Detroit, Michigan 48202,
Attention:  Geri M. Ireson.

Sincerely,

GENERAL MOTORS CORPORATION

BY

RECEIPT AND ACCEPTANCE ACKNOWLEDGED

THE INDUSTRIAL DEVELOPMENT BOARD
OF THE CITY OF ATHENS

BY

DATE    1/6/94



C-1

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, including, but not limited to, Tenant's option to purchase, in and to that certain Lease more particularly described on Exhibit "A" hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.      This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.      Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.      Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.      Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated: December 10, 1998

GENERAL MOTORS CORPORATION

By _____    SLS
   JOHN J. DUES, General Director
   Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _Elmond / Auu_____    SLS
Its _Director Real Estate_

600(602).RE11043
Prepared 12/03/98

## EXHIBIT "A"

Lease Agreement between THE INDUSTRIAL DEVELOPMENT BOARD OF THE
CITY OF ATHENS, as Landlord, and GENERAL MOTORS CORPORATION, as
Tenant, dated September 1, 1977, as amended, covering approximately 70.2824 acres of
land and buildings constructed thereon in Limestone County, Alabama, as more
particularly described in the Lease Agreement.

*Plants 21+23*
*Athens, AL*
*(1991 Lease)*

## ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee") its entire right, title and interest, as Tenant, including, but not limited to, Tenant's option to purchase, in and to that certain Lease more particularly described on **Exhibit A** hereto (the "Lease"). The terms and conditions above referred to are as follows:

A.    This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.    Assignee hereby assumes and agrees to perform all of the obligations of Tenant under the Lease from and after the Effective Date.

C.    Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorneys' fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease arising prior to the Effective Date.

D.    Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorneys' fees, in connection with any obligations of Tenant under the Lease and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the Lease from and after the Effective Date.

Dated:  February _16_, 2007

Print Name: _Moya Kelly_

Print Name: _Lisa Markham_

Print Name: _Donna Kustarz_

Print Name: _Susan L. Bacon_

GENERAL MOTORS CORPORATION

By: _____

Print Name: __DEBRA HOEG HOGE__

Its: __DIRECTOR WORLDWIDE REAL ESTATE__

DELPHI AUTOMOTIVE SYSTEMS LLC

By: _____

Print Name: _John A. Julius_

Its: _Execution Director Operations Support Group_

## EXHIBIT A

Lease Agreement between THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF
ATHENS (as Landlord) and GENERAL MOTORS CORPORATION (as Tenant), dated December 1,
1981, as amended, regarding machinery and equipment and additions to the buildings covered
by a May 1, 1974 lease between the parties for land in Limestone County, Alabama, as more
particularly described in the Lease Agreement.

## Exhibit 5.01(b)(i)

### UAW – GM – Delphi Memorandum of Understanding
### Regarding Benefit Plan Treatment between UAW, GM, and Delphi Automotive Systems
### Corporation (n/k/a Delphi) dated September 30, 1999

## UAW-GM-DELPHI MEMORANDUM OF UNDERSTANDING
## BENEFIT PLAN TREATMENT

It is recognized that the separation of GM and Delphi has raised issues which are of concern to employees. In order to address these issues it is agreed that the following will apply.

1.  DIVESTED UNITS

      a.      Benefit treatment of employees at divested units (see Attachment A) will be as set forth in the applicable memorandum of understanding negotiated with the UAW to address the particular divestiture. Where service at a divested unit is referenced in this Understanding, such service applies only pursuant to the terms of an applicable memorandum of understanding for a divested unit listed in Attachment A.

      b.      Nothing contained in this Understanding increases or decreases the benefit entitlement of any employee impacted by a prior divestiture. For example, employment at Delphi will be treated the same as employment at GM for purposes of suspension of pension payments upon re-employment.

2.      SUB/GIS AND JOBS PROGRAM

      a.      Delphi Employees are not entitled to any benefits under the GM-UAW SUB Plan, GIS Program, or JOBS Program. Any such benefits payable will be paid consistent with Plan provisions under the Delphi-UAW National Agreement.

      b.      Assets in the GM-UAW Layoff Benefit trust as of May 28, 1999 will be allocated based on the proportion that the number of Delphi-UAW eligible employees bears to the sum of all GM-UAW eligible employees plus Delphi-UAW eligible employees as of May 28, 1999.

3.    PENSIONS

a.1.    Delphi established a defined benefit pension plan (hereinafter referred to as the Delphi Pension Plan), effective as of May 28, 1999, covering all Delphi Employees which contains terms identical to the GM Pension Plan except for those provisions required to be changed as a result of a new plan sponsor and the provisions addressed in this Understanding. The intent of the  parties is to provide Delphi Employees  with benefits from the Delphi Pension Plan which, apart from any difference that may result from future bargaining, in aggregate, will equal the benefits that would have been provided had the separation of Delphi not occurred.

**DELPHI PENSION PLAN INCLUDING MOVEMENT TO GM AFTER MAY 28, 1999**

The Delphi Pension Plan will also provide as set forth in 3.a.2. through 3.a.9., the following:

a.2.    The Delphi Pension Plan will recognize the credited service accrued under the GM Pension Plan as of May 28, 1999 for vesting and for accrual purposes for Delphi Employees. The GM Pension Plan will reassume responsibility for those Delphi Employees  who retire on or before January 1, 2000.  In such cases, the GM Pension Plan will provide benefits in accordance with the applicable provisions of Section 3.b.2.

a.3.    All Delphi Employees with unbroken seniority at GM immediately prior to May 28, 1999, who retire from Delphi on a normal or early voluntary or total and permanent disability (approved by Delphi) basis after January 1, 2000, shall be entitled to payment from the Delphi Pension Plan. The Delphi Pension Plan payment will be equal to the total benefit that would be payable under the Delphi Pension Plan determined by including for eligibility for payment and for the determination of the amount of payment, the credited service accrued under the GM Pension Plan as of May 28, 1999 and the credited service accrued under the Delphi Pension Plan thereafter and for eligibility for payment (but not for determination of the amount of payment) the credited service accrued under the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) if applicable.   The payment will include a basic benefit (reduced for age where appropriate) for each year of accrued credited service recognized under the Delphi Pension Plan and any applicable supplement or temporary benefit.

a.4.    Pro-rata share in this Section 3.a. shall equal a percentage of the number of years of accrued credited service (including fractional years) under the Delphi Pension Plan divided by the sum of the total years of credited service accrued under the GM Pension Plan after May 28, 1999, if any, the credited service accrued under the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) if applicable, and the number of years of accrued credited service under the Delphi Pension Plan as of the date of retirement from Delphi or GM.

a.5.    Except as provided in 3.a.6. below, all Delphi Employees with unbroken seniority at GM immediately prior to May 28, 1999, who move to GM pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and are not retired on or before January 1, 2000, shall be entitled to payment from the Delphi Pension Plan, upon retirement from GM.  The Delphi Pension Plan benefit will be determined as if the Delphi Employee were then retiring from Delphi on a voluntary basis and by taking into account solely for eligibility for payment (but not for determination of the amount of payment) the accrued credited service under the GM Pension Plan as a result of re-employment by GM after May 28, 1999 and the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) if applicable.  The payment will include a basic benefit (reduced for age where appropriate) for each year of credited service accrued under the Delphi Pension Plan, and any applicable supplement in an amount equal to the difference between the pro-rata share of the total benefit that would be payable under the Delphi Pension Plan if all the credited service described above were accrued in the Delphi Pension Plan and the basic benefit (reduced for age where appropriate) for each year of credited service accrued under the Delphi Pension Plan.  All other Delphi Pension Plan terms shall apply, including but not limited to the discontinuation of benefit payments upon death, an award of Social Security Disability Insurance benefits, or cessation of pension benefits for other reasons.

a.6.    Unless Delphi agrees to a "Mutual Retirement" (as defined in the GM Pension Plan), or approves a disability retirement , any Delphi Employee  who moves to GM after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and who retires from GM but is not otherwise eligible to retire under the Delphi Pension Plan, shall be

eligible under the Delphi Pension Plan only for unreduced benefits at age sixty-two (62) and one (1) month. The amount of such benefits will be calculated by using the benefit levels in effect under the Delphi Pension Plan as of the date of retirement from GM increased to reflect post-retirement increases, as appropriate, until age 62 and one month, as if the Delphi Pension Plan benefits had commenced as of the date the employee retired from GM. Provided however, if such employee grows into eligibility for an 85 point retirement, Delphi Pension Plan responsibility will commence the first of the month following attainment of age 60 subject to any applicable age reductions and the GM Pension Plan supplement will be reduced accordingly.

a.7.    Except as provided in 3.a.9 below, the surviving spouse, of a Delphi Employee who is vested under the Delphi Pension Plan and who dies while employed by Delphi, shall be eligible for payment from the Delphi Pension Plan of a death benefit based on Delphi Pension Plan credited service and the Delphi Pension Plan benefit levels in effect at the time of death. All other Delphi Pension Plan terms shall apply, including but not limited to, those regarding eligibility and duration of surviving spouse benefits.

a.8.    Except as provided in 3.a.9 below, the surviving spouse, of a Delphi Employee who has unbroken seniority at GM immediately prior to May 28, 1999 and is vested under the Delphi Pension Plan and who moves to GM after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and dies while employed by GM, shall be eligible for payment from the Delphi Pension Plan of a pro-rata death benefit based on Delphi Pension Plan credited service and the Delphi Pension Plan benefit levels in effect at the time of death. All other Delphi Pension Plan terms shall apply, including but not limited to those regarding eligibility and duration of surviving spouse benefits.

a.9.    The surviving spouse, of a Delphi Employee who is vested under the Delphi Pension Plan and who dies on or before January 1, 2000 while employed by Delphi or GM, shall not be eligible for any death benefit from the Delphi Pension Plan and shall be eligible for payment from the GM Pension Plan of a death benefit based on GM and Delphi credited service. All other GM Pension Plan terms shall apply, including but not limited to those regarding eligibility and duration of surviving spouse benefits.

## GM PENSION PLAN INCLUDING MOVEMENT FROM DELPHI AFTER MAY 28, 1999

b.1.    The GM Pension Plan will be amended to provide as set forth in 3.b.2. through 3.b.8, the following:

b.2.    The GM Pension Plan shall recognize, for vesting and accrual purposes, credited service accrued under the Delphi Pension Plan for any Delphi Employee who retires on a normal or early voluntary or total and permanent disability (approved by GM) basis under the GM Pension Plan on or before January 1, 2000.  Further, the GM Pension Plan shall only recognize Delphi credited service in an amount equal to the credited service actually accrued under the Delphi Pension Plan prior to January 1, 2000 and no credited service shall be recognized for any period for which the GM Pension Plan has already provided credited service.

b.3.    Pro-rata share in this Section 3.b. shall equal a percentage of the number of years of credited service accrued (including fractional years) under the GM Pension Plan after May 28, 1999, if any, divided by the sum of the total years of credited service accrued under the GM Pension Plan after May 28, 1999, if any, the credited service accrued under the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) if applicable, and the number of years of accrued credited service recognized under the Delphi Pension Plan as of the date of retirement from Delphi or GM.

b.4.    Except as provided in 3.d. below, Delphi Employees who retire from Delphi after January 1, 2000, shall not be entitled to any payment from the GM Pension Plan.

b.5.    Except as provided in 3.b.6. below, all Delphi Employees with unbroken seniority at GM immediately prior to May 28, 1999, who move to GM after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and are not retired on or before January 1, 2000, shall be entitled to payment from the GM Pension Plan upon retirement from GM. The GM Pension Plan benefit will be determined by taking into account solely for eligibility for payment (but not for the determination of the amount of payment) the accrued

credited service under the Delphi Pension Plan, and if applicable, the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes). The payment will include a basic benefit (reduced for age where appropriate) for each year of credited service accrued under the GM Pension Plan after May 28, 1999, and any applicable supplement in an amount equal to the difference between the pro-rata share of the total benefit that would be payable under the GM Pension Plan if all the credited service described above were accrued in the GM Pension Plan and the basic benefit (reduced for age where appropriate) for each of credited service accrued under the GM Pension Plan. All other GM Pension Plan terms shall apply, including but not limited to the discontinuation of benefit payments upon death, an award of Social Security Disability Insurance benefits, or cessation of pension benefits for other reasons.

b.6.    Unless Delphi agrees to a "Mutual Retirement" (as defined in the GM Pension Plan), or approves a disability retirement , any Delphi Employee, who moves to GM after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and who retires from GM but is not otherwise eligible to retire under the Delphi Pension Plan, shall be entitled to a monthly benefit, until age sixty-two (62) and one (1) month, from the GM Pension Plan equal to the total benefit that would be payable under the GM Pension Plan, determined as if the employee were then retiring from GM with combined GM, Delphi, and any applicable plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes), benefit accrual credited service. After the employee attains or would have attained age sixty-two (62) and one (1) month, the GM Pension Plan shall pay monthly benefits based only on GM credited service accrued after May 28, 1999, however, if such employee grows into eligibility for an 85 point retirement, Delphi Pension Plan responsibility will commence the first of the month following attainment of age 60 subject to any applicable age reductions and the GM Pension Plan supplement will be reduced accordingly.

b.7.    Except as provided in 3.a.9 above, the surviving spouse, of a Delphi Employee who dies while employed by Delphi, shall not be eligible for payment from the GM Pension Plan.

b.8.    Except as provided in 3.a.9 above, the surviving spouse, of a Delphi Employee who has unbroken seniority at GM immediately prior to May 28, 1999 and is vested under the Delphi Pension Plan and who moves to GM after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and dies while employed by GM, shall be eligible for payment from the GM Pension Plan of a pro-rata death benefit based on GM Pension Plan credited service and the GM Pension Plan benefit levels in effect at the time of death. All other GM Pension Plan terms shall apply, including but not limited to those regarding eligibility and duration of surviving spouse benefits.

## DELPHI PENSION PLAN-MOVEMENT TO DELPHI AFTER MAY 28, 1999

c.1.    The Delphi Pension Plan will also provide, as set forth in 3.c.2 through 3.c.5, the following for UAW represented employees who move to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement .

c.2.    Pro-rata share in this Section 3.c. shall equal a percentage of the number of years of accrued credited service (including fractional years) under the Delphi Pension Plan divided by the sum of the total years of credited service accrued under the GM Pension Plan, the credited service accrued under the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) if applicable, and credited service accrued under the Delphi Pension Plan as of the date of retirement from Delphi or GM.

c.3.    Except as provided in 3.c.4. below, all GM UAW represented employees with unbroken seniority at GM, who move to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and are not retired on or before January 1, 2000, shall be entitled to payment from the Delphi Pension Plan upon retirement from Delphi. The Delphi Pension Plan benefit will be determined by taking into account solely for eligibility for payment (but not for determination of the amount of payment) the accrued credited service under the GM Pension Plan and, if applicable, the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding

provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes), for service prior to employment at Delphi. The payment will include a basic benefit (reduced for age where appropriate) for each year of credited service accrued under the Delphi Pension Plan, and any applicable supplement in an amount equal to the difference between the pro-rata share of the total benefit that would be payable under the Delphi Pension Plan if all the credited service described above were accrued in the Delphi Pension Plan and the basic benefit (reduced for age where appropriate) for each year of credited service accrued under the Delphi Pension Plan. All other Delphi Pension Plan terms shall apply, including but not limited to the discontinuation of benefit payments upon death, an award of Social Security Disability Insurance benefits, or cessation of pension benefits for other reasons.

c.4.     Unless GM agrees to a "Mutual Retirement" (as defined in the GM Pension Plan), or approves a disability retirement , any GM employee, who moves to Delphi pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and who retires from Delphi but is not otherwise eligible to retire under the GM Pension Plan, shall be entitled to a monthly benefit, until age sixty-two (62) and one (1) month, from the Delphi Pension Plan equal to the total benefit that would be payable under the Delphi Pension Plan, determined as if the employee were then retiring from Delphi with combined GM, Delphi, and any applicable pension plan of a divested unit, benefit accrual credited service. After the employee attains or would have attained age sixty-two (62) and one (1) month, the Delphi Plan shall pay monthly benefits based only on Delphi credited service, however, if such employee grows into eligibility for an 85 point retirement, GM's responsibility will commence the first of the month following attainment of age 60 subject to any applicable age reductions and the Delphi Pension Plan supplement will be reduced accordingly.

c.5.     Except as provided in 3.a.9 above, the surviving spouse, of a GM UAW represented employee who has unbroken seniority at GM on May 28, 1999 and who is vested under the GM Pension Plan as of such date and who moves to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and dies while employed by Delphi, shall be eligible for payment from the Delphi Pension Plan of a pro-rata death benefit based on Delphi Pension Plan credited service and the Delphi Pension Plan benefit levels in effect at the time of death. All other Delphi Pension Plan terms shall apply, including but not limited to those regarding eligibility and duration of Social Security benefits.

## GM PENSION PLAN-MOVEMENT TO DELPHI AFTER MAY 28, 1999

d.1.    The GM Pension Plan will also provide, as set forth in 3.d.2 through 3.d.5, the following for UAW represented employees who move to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement.

d.2.    Pro-rata share in this Section 3.d. shall equal a percentage of the number of years of accrued credited service (including fractional years) under the GM Pension Plan divided by the sum of the total years of credited service accrued under the GM Pension Plan, the credited service accrued under the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) if applicable, and credited service accrued under the Delphi Pension Plan as of the date of retirement from Delphi or GM.

d.3.    Except as provided in d.4. below, all GM UAW represented employees with unbroken seniority at GM as of May 28, 1999, who move to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and are not retired on or before January 1, 2000, shall be entitled to payment from the GM Pension Plan, upon retirement from GM or Delphi. The GM Pension Plan benefit will be determined by taking into account solely for eligibility for payment (but not for determination of the amount of payment) the accrued credited service under the Delphi Pension Plan and, if applicable, the pension plan of a divested unit (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes). The payment will include a basic benefit (reduced for age where appropriate) for each year of credited service accrued under the GM Pension Plan, and any applicable supplement in an amount equal to the difference between the pro-rata share of the total benefit that would be payable under the GM Pension Plan if all the credited service described above were accrued in the GM Pension Plan and the basic benefit (reduced for age where appropriate) for each year of credited service accrued under the GM Pension Plan. All other GM Pension Plan terms shall apply, including but not limited to the discontinuation of

benefit payments upon death, an award of Social Security Disability Insurance benefits, or cessation of pension benefits for other reasons.

d.4.    Unless GM agrees to a "Mutual Retirement" (as defined in the GM Pension Plan), or approves a disability retirement , any GM employee, who moves to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and who retires from Delphi but is not otherwise eligible to retire under the GM Pension Plan, shall be eligible under the GM Pension Plan only for unreduced benefits at age sixty-two (62) and one (1) month at the benefit levels in effect under the GM Pension Plan as of the date of retirement from Delphi increased to reflect post-retirement increases as appropriate until age 62 and one (1) month as if the GM Pension Plan benefits had commenced as of the date the employee retired from Delphi. Provided however, if such employee grows into eligibility for an 85 point retirement, GM Pension Plan responsibility will commence the first of the month following attainment of age 60 subject to any applicable age reductions and the GM Pension Plan supplement will be reduced accordingly.

d.5.    Except as provided in 3.a.9 above, the surviving spouse, of a GM employee who has unbroken seniority at GM on May 28, 1999 and who is vested under the GM Pension Plan as of such date and moves to Delphi after May 28, 1999 pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement and dies while employed by Delphi, shall be eligible for payment from the GM Pension Plan of a pro-rata death benefit based on GM Pension Plan credited service and the GM Pension Plan benefit levels in effect at the time of death. All other GM Pension Plan terms shall apply, including but not limited to those regarding eligibility and duration of Social Security benefits.

e.    If any GM Employee or Delphi Employee  retires under the provisions of this Section 3 and is subsequently re-employed by GM or Delphi on a regular, contract or other basis, then consistent with treatment for all GM and Delphi retirees, payments being made to such employee by the GM Pension Plan or the Delphi Pension Plan shall be suspended until such employment ceases. Upon cessation of employment the suspended benefit will recommence.

    f.    GM and Delphi will enter into an agreement with a designated paying agent to combine Delphi and GM pension plan payments in order to issue, on a monthly basis, one check for the combined benefit amount for individuals who retire on or prior to November 1, 2007.

## 4.    CREDITED SERVICE

    a.    Delphi Employees will accumulate credited service under the Delphi Pension Plan in accordance with its terms.

    b.    Credited service will not accrue simultaneously at Delphi, GM, or a divested unit for the same period of time. For purposes of Section 3, the term "credited service" shall have the meaning set forth in the applicable pension plan or plans.

    c.    The GM Pension Plan shall not recognize any additional grants of credited service by Delphi or a divested unit, for example, extra credited service offered as an inducement for employees to retire early. Similarly, The Delphi Pension Plan shall not recognize any additional grants of credited service by GM or a divested unit.

## 5.    HEALTH CARE AND LIFE AND DISABILITY BENEFIT PROGRAMS

    a.    As of May 28, 1999, Delphi established Delphi Health Care and Life and Disability Benefits Programs that duplicate the terms and conditions provided for under the GM Health Care and Life and Disability Benefits Programs, except for the provisions required to be changed as a result of a new plan sponsor.

    b.    Upon retirement from GM and, where applicable, Delphi, GM shall provide post-retirement health care and Basic Life Insurance coverage for the following Delphi Employees as if retiring from GM to:

    i)  All Delphi Employees who retire on a normal or early voluntary basis or a total and permanent disability basis (approved by GM) on or before January 1, 2000 and who are then, based on combined credited service, otherwise eligible for post-retirement health care and Basic Life Insurance coverage under the terms of the applicable GM-UAW Agreement, and

ii) All Delphi Employees who are re-employed by GM under the provisions of the UAW-GM-Delphi Flowback Agreement and retire with eligibility for such benefits.

The provision of post-retirement health care and Basic Life Insurance coverage by GM is subject to all applicable benefit plan terms then in effect.

c.    GM will reinstate Basic Life (BLI), Optional Life (OLI), Dependent Life (DLI) and Personal Accident Insurance (PAI) coverage under the GM Life and Disability Benefits Program for Hourly Employees (the Program) for Delphi Employees who are eligible for such coverage in retirement (other than Deferred Vested) under the provisions of paragraph 5.b.(i) and 5.b.(ii) immediately above.

c.1.    In determining amounts of BLI, the base hourly rate, in effect on the date immediately prior to retirement from GM and, where applicable, Delphi, will be used.

c.2.    In determining amounts of Continuing Life Insurance in retirement, the combined credited service accumulated under the GM and Delphi pension plans and, where applicable, pension plans of divested units (or other unit divested by GM which is not included in Attachment A, where a Memorandum of Understanding provides for recognition by the GM Pension Plan of credited service at the divested unit for eligibility purposes) will be used. If Delphi's coverage amounts differ from those available under the Program, the amount(s) reinstated will be the next higher amount(s) available under the GM Program.

c.3.    An otherwise eligible Delphi Employee will be eligible in retirement for OLI, DLI and PAI from GM, provided such Delphi Employee has BLI coverage reinstated by GM and had such employee paid coverage in effect under Delphi's plans immediately prior to retirement.

c.4.    An otherwise eligible Delphi Employee shall contribute the full cost of any OLI, DLI and PAI. Contributions shall be payable monthly in advance and where possible from benefits payable under any GM benefit plan or program. At an employee's election, this amount may be deducted from the pension check.

c.5.    Eligibility for coverage, amounts of coverage, contribution rates and all other Program provisions will be those of the GM Life and Disability Benefits Program then in effect except as otherwise provided above.

d.      Post-retirement health care and Basic Life Insurance coverage for all other Delphi Employees, and UAW represented employees who move to Delphi pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement after May 28, 1999, other than those in 5.b.(i) and 5.b.(ii), shall be pursuant to the terms of the Delphi-UAW Agreement and Delphi Health Care and Life and Disability Benefits Programs.

## 6.    SAVINGS PLAN

a.      Delphi established a Delphi Personal Savings Plan (Delphi PSP) as of May 28, 1999 that duplicates the terms and conditions provided for under the GM Personal Savings Plan, except the provisions required to be changed as a result of a new plan sponsor. All existing account balances of Delphi Employees may be voluntarily transferred to the Delphi PSP under procedures established by GM. A Delphi stock investment option will be added to the Delphi PSP.

b.      Delphi PSP participants who retire on or before January 1, 2000 will be eligible for a one-time transfer of their account balances (including loans) from the Delphi PSP to the GM PSP under procedures established by GM.

c.      Delphi PSP participants who had unbroken seniority at GM immediately prior to May 28, 1999, who move to GM pursuant to the provisions of the UAW-GM-Delphi Flowback Agreement will be eligible for a one-time transfer of their account balances (including loans) from the Delphi PSP to the GM PSP under procedures established by GM.

## 7.    PROFIT SHARING

Otherwise eligible Delphi employees shall be treated under the Delphi Profit Sharing Plan as if they were covered under the terms and conditions of the 1996 UAW-GM Supplemental Agreement on The General Motors Profit Sharing Plan for Hourly-Rate Employees in the United States for Plan Year 1999. Thereafter, Delphi employees shall be covered under the terms and conditions of the 1999 UAW-Delphi Supplemental Agreement on the Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States.

For Plan Year 2000 and thereafter, Delphi and GM employees who are Eligible Participants in the Delphi and GM Profit Sharing Plans for separate periods of a given Plan Year as a result of flow-back arrangements between the two companies, shall have his/her

Compensated Hours for the Plan Year under the respective Plans not exceed a combined total of 1,850 hours.  Furthermore, such an employee's combined total Compensated Hours for the Plan Year shall accumulate and be applicable under each Plan in the order in which the hours are compensated under the respective Plans, up to a combined total not to exceed 1,850 hours.  For purposes of determining the Allocation of the Total Profit Share, such an employee shall be considered a Participant in each Plan for the given Plan Year.

If issues arise regarding the application of these provisions, the parties will meet to discuss and resolve them.

8.    OVERPAYMENTS

a.    Any overpayments recoverable to GM or GM-UAW benefit plans from employees transferring to Delphi, will be recoverable from future wages and benefit payments payable to Delphi employees.

9.    OTHER

a.    Eligibility for any GM or Delphi employee benefit plan/program shall be determined solely by the written provisions of such respective plan/program.

b.    Retirement from either GM or Delphi will terminate all seniority at all plants of both GM and Delphi.

The parties agree that if unusual circumstances occur that were not contemplated at the time this Understanding was negotiated and agreed upon, said parties may discuss and resolve such circumstances.

Executed by the duly authorized representatives of the parties this 30th day of September, 1999.


INTERNATIONAL UNION, UAW          GENERAL MOTORS CORPORATION


DELPHI AUTOMOTIVE SYSTEMS

### Amendment to UAW-GM-Delphi Memorandum
### of Understanding Benefit Plan Treatment

Whereas, the UAW, GM and Delphi entered into a Memorandum of Understanding, Benefit Plan Treatment ("MOU") concerning benefit treatment for UAW represented employees regarding the separation of GM and Delphi.

Whereas, the MOU set forth certain provisions regarding benefit treatment in the event of a flowback to GM or Delphi under the provisions of the UAW-GM-Delphi Flowback Agreement.

Whereas, flowback treatment was limited to GM and Delphi employees who acquired seniority on or before the expiration of their respective 1996 GM-UAW or Delphi-UAW National Agreements.

Whereas, as part of the negotiations with the UAW regarding the 2003 GM-UAW National Agreement and the 2003 Delphi-UAW National Agreement, the parties agreed to extend flowback rights to all UAW represented employees hired by GM or Delphi before the expiration of their respective 1996 GM-UAW or Delphi-UAW National Agreement but who were not covered under the UAW-GM-Delphi Flowback Agreement (the "Covered Employees").

Now, therefore the parties agree to amend the MOU for Covered Employees as follows:

1. Flowback treatment under the MOU shall apply to Covered Employees.

2. The requirement that an employee have unbroken seniority at GM immediately prior to May 28, 1999 shall not apply to Covered Employees.

3. In the event GM or Delphi agree to make lump-sum payments to retirees and Covered Employees are included in the group of retirees eligible for such lump sums, the lump sum payable by each company will be pro-rated based on the credited service at the paying company divided by total credited service at both GM and Delphi in accordance with the terms of the MOU.

Executed by the duly authorized representatives of the parties this _18th_ day of _SEPTEMBER_, 2003.


INTERNATIONAL UNION, UAW          GENERAL MOTORS CORPORATION

_[signature]_                      _[signature]_

DELPHI CORPORATION

_[signature]_

## <u>Exhibit 5.01(b)(ii)</u>
**Letter agreement dated March 4, 1999 between Delphi and GM
concerning certain asbestos liability, as supplemented by letter agreement
dated May 10, 1999 between Delphi and GM**