UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :        Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :        Case No. 05-44481 (RDD)
                                    :
                        Debtors.    :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER APPROVING (I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING
DEADLINE, AND PROCEDURES FOR TEMPORARY ALLOWANCE
OF CERTAIN CLAIMS, (III) HEARING DATE TO CONSIDER CONFIRMATION
OF PLAN, (IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN,
(V) SOLICITATION PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM
PROCEDURES, (VII) PROCEDURES FOR RESOLVING DISPUTES RELATING TO
POSTPETITION INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES

("SOLICITATION PROCEDURES ORDER")

Upon the motion, dated September 6, 2007 (the "Motion"),[1] of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (each, a "Debtor"), for entry of an order approving

(i) the Disclosure Statement filed on September 6, 2007, as amended (the "Disclosure

Statement"), (ii) a voting record date, voting deadline, and procedures for temporary allowance

of certain claims for voting purposes, (iii) procedures for filing objections to the Plan of

Reorganization filed on September 6, 2007, as amended (the "Plan"), (iv) procedures for

soliciting and tabulating votes on the Plan, (v) a hearing date to consider confirmation of the Plan,

(vi) cure claim procedures, (vii) procedures for resolving disputes relating to postpetition interest,

and (viii) reclamation claim procedures; and the Court having reviewed the Disclosure Statement

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

and the Motion; and a hearing on the Motion and the adequacy of the Disclosure Statement
having been held on October 3, 2007 (the "Disclosure Statement Hearing"), at which time all
interested parties were offered an opportunity to be heard with respect to the Disclosure
Statement and Motion; and the Court having reviewed and considered (i) the Disclosure
Statement, the objections thereto, and the Debtors' response to such objections, (ii) the Motion
and the objections thereto, (iii) the arguments of counsel made at the Disclosure Statement
Hearing, and (iv) the evidence proffered or adduced at the Disclosure Statement Hearing; and
after due deliberation thereon and good cause appearing therefor, the Court hereby finds as
follows:

A.    The Disclosure Statement complies with the requirements of 11 U.S.C.
§§ 101-1330, as amended on October 8, 2005 (the "Bankruptcy Code"), and the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules") and contains adequate information as that term
is defined in section 1125 of the Bankruptcy Code.

B.    Nothing has come to the attention of the Court to suggest that (i) all
material information regarding the Debtors and their subsidiaries, their respective assets, affairs,
and financial condition, and the reorganization and restructuring provided for under the Plan has
not been set forth in the Disclosure Statement and the Debtors' public filings with the Securities
and Exchange Commission before the date hereof (or the exhibits or appendices thereto), or that
all such material information has not been disclosed fully and adequately thereby, or (ii) there is
material nonpublic information regarding the Debtors or their subsidiaries, their respective assets,
affairs, or financial conditions, or the reorganization and restructuring provided for under the
Plan that has not been disclosed.

C.       The Debtors' notice to all parties-in-interest of the hearing on the Motion, the Disclosure Statement Hearing, and the time fixed for filing objections to the Disclosure Statement was good and sufficient under the particular circumstances and no other or further notice need be given.

D.       The Debtors' proposed solicitation procedures, as described more fully in the Motion, are fair and reasonable.

E.       The Debtors' proposed procedures for transmitting the Disclosure Statement, the Plan, the Ballots (as defined below), and the voting instructions are adequate and comply with the requirements of Bankruptcy Rule 3017(d)-(e).

F.       Good and sufficient cause exists under Bankruptcy Rule 3017(d)(4) for the establishment of the Record Date as a date other than the date this Order is entered.

G.       The Debtors' proposed cure claim procedures, as described more fully in the Motion, are fair and reasonable.

H.       The Debtors' proposed procedures for resolving disputes relating to postpetition interest, as described more fully in the Motion, are fair and reasonable.

I.       The Debtors' proposed reclamation claim procedures, as described more fully in the Motion, are fair and reasonable.

J.       Upon the record of the Disclosure Statement Hearing and these cases, the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.       The Motion is GRANTED.

3

2.    <u>Approval Of Disclosure Statement</u>.  Pursuant to Bankruptcy Rule 3017(b),

(i) the Disclosure Statement is approved as containing adequate information within the meaning

of section 1125(a) of the Bankruptcy Code and (ii) to the extent not withdrawn, settled, or

otherwise resolved, all objections to the Disclosure Statement are overruled on the merits.

3.    The Debtors are authorized to (i) make non-material changes to the

Disclosure Statement and related documents (including the exhibits thereto and to the Motion)

and (ii) revise the Disclosure Statement and related documents (including the exhibits thereto) to

add further disclosure concerning events occurring at or after the Disclosure Statement Hearing,

before distributing it to each person and entity in accordance with the terms of this Order;

<u>provided, however</u>, that the Debtors shall file copies with the Court of any changed pages

blacklined to show such changes.

4.    <u>Confirmation Hearing Date; Objection Deadline</u>.  The hearing (the

"Confirmation Hearing") to consider confirmation of the Plan, as the same may be further

modified or amended, shall commence on November 19, 2007 (the "Confirmation Hearing

Date"), at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel can be heard,

before the undersigned United States Bankruptcy Judge, in the United States Bankruptcy Court,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.  The

Confirmation Hearing may be adjourned from time to time by announcing such adjournment in

open court or otherwise, all without further notice to parties-in-interest.

5.    November 9, 2007 at 4:00 p.m. (prevailing Eastern time) (the "Objection

Deadline") is fixed as the last date and time for filing and serving objections to confirmation of

the Plan.  Objections, if any, must (i) be in writing, (ii) comply with the Bankruptcy Rules and

the Local Bankruptcy Rules for the Southern District of New York, (iii) set forth the name of the

4

objector and the nature and amount of any claim or interest asserted by the objector against or in

the Debtors, their estates, or their property, (iv) state with particularity the legal and factual bases

for the objection, and (v) be filed with the Court together with proof of service, and served by

personal service, overnight delivery, or first-class mail, with a hard copy delivered to the

chambers of the Honorable Robert D. Drain, and served so that they are RECEIVED no later

than the Objection Deadline by:

> Counsel For The Debtors
>
> Skadden, Arps, Slate, Meagher & Flom LLP
> 333 West Wacker Drive, Suite 2100
> Chicago, Illinois 60606
> (312) 407-0700
> Att'n: John Wm. Butler, Jr.
> Att'n: George N. Panagakis
> Att'n: Ron E. Meisler
>
>      and
>
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, New York 10036
> (212) 735-3000
> Att'n: Kayalyn A. Marafioti
> Att'n: Thomas J. Matz
>
> United States Trustee
>
> The Office of the United States Trustee
> 33 Whitehall Street, Suite 2100
> New York, New York 10004
> Att'n: Alicia M. Leonhard
>
> Counsel For The Creditors' Committee
>
> Latham & Watkins LLP
> 885 Third Avenue
> New York, New York 10022
> Att'n: Robert J. Rosenberg
> Att'n: Mark A. Broude

<u>Counsel For The Equity Committee</u>

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Att'n: Bonnie Steingart

<u>Counsel For A-D Acquisition Holdings, LLC</u>

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900, Miami, Florida 33131
Att'n: Thomas E. Lauria

        and

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Att'n:  Glenn M. Kurtz
Att'n:  Gregory Pryor

**Objections not timely filed and served in the manner set forth above will not be considered
by the Court and will be deemed overruled.**

6.    <u>Record Date</u>.  Notwithstanding anything to the contrary in Bankruptcy
Rule 3017(d), September 28, 2007 shall be the record date (the "Record Date") for purposes of
determining the members of Classes C, D, E, G-1, G-2, and H (the "Voting Classes") that are
entitled to receive a Solicitation Package and to vote on the Plan.  The Record Date for a
docketed proof of claim or scheduled claim shall be determined by reference to KCC's (as
defined below) claims register as may be modified by Notices of Transfer filed and reflected on
the Court's official docket (ECF) at **11:59 p.m.** (prevailing Eastern time) on **September 28, 2007**,
and only those registered holders of claims as reflected on the docket together with KCC's
database on the Record Date shall be entitled to vote.  The holders of any claims filed after the
Record Date shall not be entitled to vote.

6

7.    <u>Content And Transmittal Of Solicitation Packages</u>.  On or before October
12, 2007 (the "Solicitation Date"), the Debtors shall cause Kurtzman Carson Consultants LLC
(the "Creditor Voting Agent" or "KCC") and Financial Balloting Group, LLC (the "Securities
Voting Agent," and together with the Creditor Voting Agent and the Securities Voting Agent, the
"Voting Agents") or their agents to transmit by first class mail to the holders of claims against
and interests in the Debtors as of the Record Date a solicitation package containing a copy or
confirmed version of:

A.    the Confirmation Hearing Notice,

B.    this order (without exhibits attached),

C.    to the extent applicable, the appropriate ballot and/or notice as set forth
below for the specific creditor or equity holder, with appropriate voting
instructions, in substantially the forms attached hereto as <u>Exhibit A</u> (as
may be modified for particular classes and with instructions attached
thereto), and a pre-addressed postage pre-paid return envelope,

D.    a CD-ROM  containing the Disclosure Statement, the Plan, and the
publicly filed materials appended thereto,

E.    to the extent appropriate, an Internal Revenue Service form W-9 (Request
for Taxpayer Identification Number and Certification) to be returned with
a party's ballot,

F.    solicitation letters, if any, from the Creditors' Committee and Equity
Committee, and

G.    Postpetition Interest Rate Determination Notice for all holders of General
Unsecured Claims, other than Senior Note Claims or TOPrs Claims.

8.    The Voting Agents shall transmit the Solicitation Package to the following
creditors, interest holders, and other parties-in-interest (with exclusions as noted herein): (i) the
United States Trustee, (ii) all non-voting unimpaired creditors, (iii) equity holders, (iv) holders of
claims in non-voting Class I under the Plan, (v) persons or entities which timely filed a proof of
claim reflecting a claim or portion of a claim that is unliquidated, and (vi) creditors holding

7

claims in a class designated as impaired and entitled to vote on the Plan (A) who have filed

timely proofs of claim (or untimely proofs of claim which have been allowed as timely by the

Court under applicable law on or before the Record Date) that have not been disallowed by an

order of the Court entered on or before the Record Date or (B) whose claims are scheduled in the

Debtors' schedules of assets and liabilities dated April 18, 2006, or any amendment thereof (the

"Schedules") other than those scheduled as (x) unliquidated, contingent, or disputed or (y) zero

or unknown in amount and for which no proof of claim was timely filed.  Creditors, if any, who

have filed duplicate claims in a given class shall be entitled to receive only one Solicitation

Package with respect to that class.

    9.  Not later than the Solicitation Date, the Debtors shall transmit, through the

Voting Agents, the Solicitation Packages to all holders of the Debtors' Securities, or of claims

based on those Securities where appropriate, including Class C General Unsecured Claims

(Senior Note Claims), Class C General Unsecured Claims (TOPrs Claims), and Class G-1

Existing Common Stock Claims, by mailing or delivering the Solicitation Packages to (i) each

registered holder of Securities as of the Record Date (collectively, the "Record Owners") and (ii)

to each bank or brokerage firm, or the agent therefor, identified by the Debtors or the Voting

Agents as an entity through which beneficial owners (the "Beneficial Owners") hold the

Securities (collectively, the "Intermediary Record Owners").  In addition, the Debtors shall

distribute master ballots to the Intermediary Record Owners in accordance with customary

procedures in the publicly traded securities industry.  Claims in Class E (Section 510(b) Note

Claims), Class G-2 (Section 510(b) Equity Claims), and Class H (Section 510(b) ERISA Claim)

shall be voted by their respective class action representatives and the persons and entities who

filed Claims other than those putative members of the classes represented by the class action representatives.

10.     Labels For Record Holders.  To facilitate the distribution described in the immediately preceding paragraph, each of the indenture trustees and transfer agents for the Securities, including, without limitation, Wilmington Trust Company (as Indenture Trustee for the Senior Notes), Law Debenture Trust Company of New York (as Indenture Trustee for the Subordinated Notes), and Computershare Shareholder Services (as Transfer Agent of Existing Common Stock) or any successors thereto, shall, if and to the extent they have not done so previously, provide to the Securities Voting Agent an electronic file containing the names, addresses, and holdings of the respective Record Owners of the Securities as of the Record Date or, if unable to provide an electronic file, two sets of adhesive labels and a list containing the same information no later than October 5, 2007.

11.     Within five business days after an Intermediary Record Owner's receipt of the Solicitation Packages, the Intermediary Record Owner shall distribute the Solicitation Packages to the respective Beneficial Owners for which they hold Securities.

12.     Voting By Beneficial Owners.  Intermediary Record Owners are hereby authorized and directed to use the appropriate procedure set forth below for obtaining the votes of Beneficial Owners.  First, the Intermediary Record Owners may forward the Solicitation Package to the Beneficial Owners of the Securities for voting, which package shall include a beneficial owner ballot substantially in the form of the beneficial owner ballots attached as part of Exhibit A to this order (the "Beneficial Owner Ballot") and a return envelope provided by, and addressed to, the Intermediary Record Owner.  Upon receipt of the Beneficial Owner Ballots, the Intermediary Record Owner shall summarize the individual votes of its Beneficial Owners, as

reflected on the Beneficial Owner Ballots, on a master ballot in substantially the form of the

master ballots attached as part of Exhibit A to this order (a "Master Ballot").  The Intermediary

Record Owners shall then return the Master Ballot to the Securities Voting Agent prior to the

Voting Deadline.

13.    Alternatively, if an Intermediary Record Owner is unable to use the option

above, it may prevalidate a Beneficial Owner Ballot (a "Prevalidated Ballot") by signing that

ballot and by indicating on that ballot the identity of the Intermediary Record Owner, the

principal amount or number of shares, as applicable, of Securities owned by the Beneficial

Owner, and the appropriate account numbers through which the Beneficial Owner's holdings are

derived.  The Intermediary Record Owner shall then forward a Solicitation Package, including

the Prevalidated Ballot and a return envelope addressed to the appropriate Securities Voting

Agent, for voting by the Beneficial Owner.

14.    The Debtors are hereby authorized to reimburse Intermediary Record

Owners for their reasonable and customary out-of-pocket expenses incurred in performing the

tasks described above upon written request of the Intermediary Record Owner (subject to the

Court's jurisdiction to resolve any disputes over any such request for reimbursement).

15.    The Debtors shall serve a copy of this order on each indenture trustee,

transfer agent, and each Intermediary Record Owner identified by the Debtors and the Securities

Voting Agent as an entity through which Beneficial Owners hold Securities.

16.    Confirmation Hearing Notice.  The form of notice of the Confirmation

Hearing and the Confirmation Objection Deadline (the "Confirmation Hearing Notice") annexed

hereto as Exhibit B is approved and shall be included in the Solicitation Packages distributed to

all creditors and interest holders and all persons or entities on the Debtors' master service list.  In

addition, the Debtors shall give supplemental publication notice of the Confirmation Hearing by causing the Confirmation Hearing Notice to be published not fewer than 25 days before the Confirmation Hearing in the global edition of the <u>Wall Street Journal</u>, the national edition of the <u>New York Times</u>, the <u>Detroit Free Press</u>, the <u>Detroit News</u>, the <u>Cleveland Plain Dealer</u>, the <u>Toledo Blade</u>, the <u>Indianapolis Star</u>, and the <u>Kokomo Tribune</u>.

17.    <u>Ballots</u>.  The Debtors' proposed forms of ballots, in substantially the forms annexed to this order as <u>Exhibit A</u> (as may be specifically modified for particular classes of claims or interests), are hereby approved for use in connection with the Debtors' solicitation of votes to accept or reject the Plan.

18.    The Unimpaired Creditors in Classes A, B, and J are conclusively presumed to have accepted the Plan and solicitation of votes from those Creditors is not required. In lieu of a ballot and in accordance with Bankruptcy Rule 3017(d), the Solicitation Packages mailed to the Unimpaired Creditors shall contain a notice of non-voting status substantially in the form of <u>Exhibit C</u> to this order.

19.    The holders of claims and interests in Class I are conclusively presumed to have rejected the Plan and solicitation of votes from those creditors and interest holders shall not be required.  In lieu of a ballot, the Solicitation Packages mailed to those creditors and interest holders, as well as holders of contingent and disputed claims, shall contain a notice of non-voting status substantially in the form of <u>Exhibit D</u> to this order.  In addition, recipients of an objection to expunge their claim or interest shall receive a notice of non-voting status.

20.    The deadline for the filing and serving of motions requesting temporary allowance of a movant's claim or interest for purposes of voting pursuant to Bankruptcy Rule 3018(a) ("Rule 3018(a) Motion(s)") shall be 4:00 p.m. (prevailing Eastern time) on November 5,

2007 (the "Rule 3018(a) Motion Deadline"); provided, however, that if the Debtors object to a claim or interest on or after October 29, 2007, the Rule 3018(a) Motion Deadline shall be extended for that claim or interest such that the deadline shall be seven days following the filing of the Debtors' objection.  Rule 3018(a) Motions shall be filed with the Clerk of the Court and served on the Notice Parties in the manner set forth for objections to the confirmation of the Debtors' Plan.  Any party timely filing and serving a Rule 3018(a) Motion shall be provided a provisional ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If, and to extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion, then at the Confirmation Hearing, the Court shall determine whether the provisional ballot should be counted as a vote on the Plan.

21.    Any holder of a claim or interest to which the Debtors filed objections requesting the Court to modify claims either in (a) amount, (b) Debtor or Debtor group, or (c) Plan class shall be allowed to vote in the amount and class set forth in the modification request.

22.    The filing of an avoidance action by the Debtor which includes no objection to a claim held by the defendant shall not, by itself, cause the defendant's claim to lose the benefit of deemed allowance under section 502(a) with respect to voting on the Plan.  Alternatively, under Rule 3018(a), such claims shall be allowed temporarily for voting purposes, and not for the purposes of distribution or otherwise, but only if the claim would have been deemed allowed under section 502(a) but for the filing of the avoidance action.

23.    When No Notice or Transmittal Necessary; Voting Deadline; Procedures For Vote Tabulation.  Solicitation Packages shall not be sent to creditors whose claims are based solely on amounts scheduled by the Debtors and whose claims already have been paid in the full scheduled amount; provided, however, that if, and to the extent that, any such creditor would be

12

entitled to receive a Solicitation Package for any reason other than by virtue of the fact that its claim had been scheduled by the Debtors, the creditor shall be sent a Solicitation Package in accordance with the procedures set forth above.  In addition, the Debtors shall not be required to send a Solicitation Package to any creditor who filed a proof of claim if the amount asserted in the proof of claim has already been paid.

24.    The Debtors shall not be required to give notice or effectuate service of any kind upon any person or entity to which the Debtors mailed a Disclosure Statement Hearing Notice and received any of these notices returned by the U.S. Postal Service marked "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or a similar reason for return of the notice, unless the Debtors have been informed in writing by that person or entity of the person's or entity's new address.

25.    To be counted, ballots (including Master Ballots) for accepting or rejecting the Plan must be received by the appropriate Voting Agent not later than November 9, 2007, at 8:00 p.m. (prevailing Eastern time) (the "Voting Deadline").  Ballots must be returned to the appropriate Voting Agent on or before the Voting Deadline by (a) mail, in the return envelope provided with each ballot, (b) overnight delivery, or (c) hand delivery.  Any ballot submitted by facsimile or other electronic means of transmission shall not be counted.

26.    Any ballot timely received that contains sufficient information to permit the identification of the claimant or interest holder and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.  Each Record Owner or Beneficial Owner of a Security shall be deemed to have voted the full amount of its claims or interest relating to the Security, notwithstanding

anything to the contrary on any ballot.  The foregoing general procedures shall be subject to the

following:

    (i)    If a claim is deemed allowed in accordance with the Plan, that claim would be allowed for voting purposes in the deemed allowed amount set forth in the Plan,

    (ii)    If a claim for which a proof of claim has been filed is marked as unliquidated or partially unliquidated, the claim, or the unliquidated portion of the claim, would be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, in the amount of $1.00, with the liquidated portion of partially unliquidated claim similarly temporarily allowed at its liquidated amount,

    (iii)    If a claim is subject to a potential avoidance action, the action would not, by itself, cause the claim to lose the benefit of deemed allowance under section 502(a) of the Bankruptcy Code with respect to voting on the Plan,

    (iv)    If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, the claim would be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution, and

    (v)    If the Debtors have served and filed an objection to a claim at least ten calendar days before the Confirmation Hearing, the claim would be temporarily disallowed for voting purposes only and not for the purposes of the allowance or distribution, except to the extent and in the manner as may be set forth in the objection.

    27.    The following ballots shall not be counted or considered for any purpose

in determining whether the Plan has been accepted or rejected:

    (i)    Any ballot received after the Voting Deadline unless the Debtors have granted an extension in writing of the Voting Deadline with respect to that ballot,

    (ii)    Any ballot that is illegible or contains insufficient information to permit the identification of the claimant or interest holder, as the case may be,

    (iii)    Any ballot cast by a person or entity which does not hold a claim or interest in a class that is entitled to vote to accept or reject the Plan,

(iv)    Any ballot cast on account of a proof of claim filed after the Record Date,

(v)    Any ballot cast for a claim listed in the Schedules as unliquidated,
contingent, or disputed and for which (i) no superseding proof of claim
was timely filed and (ii) no Rule 3018(a) Motion has been filed by the
Rule 3018(a) Motion Deadline,

(vi)    Any ballot cast in a manner that neither indicates an acceptance nor
rejection of the Plan or that indicates both an acceptance and rejection of
the Plan,

(vii)    Any ballot submitted by facsimile transmission or other electronic means
of transmission, and

(viii)    Any unsigned ballot.

28.    Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots
are cast voting the same claim or interest before the Voting Deadline, the last ballot received
before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any
prior ballots; provided, however, that where an ambiguity exists as to which ballot was the latest
transmitted, the appropriate Voting Agent is permitted to contact the voting party and calculate
the vote according to the party's stated intent.  The foregoing shall be without prejudice to the
Debtors' right to object to the validity of the second ballot on any basis permitted by law and, if
the objection is sustained, to count the first ballot for all purposes.

29.    Vote splitting shall not be permitted (except as it may relate to the
procedures with respect to Master Ballots) and creditors and interest holders who vote must vote
all their claims or interests within a particular class to either accept or reject the Plan.

30.    For all persons or entities which timely filed a proof of claim reflecting a
claim or portion of a claim that is unliquidated, the claim shall be allowed temporarily for voting
purposes only, and not for purposes of allowance or distribution, for that portion of the claim that
is not unliquidated, and the unliquidated portion of the claim shall be counted for purposes of
determining whether a sufficient number of the allowed claims in the applicable class has voted

15

to accept the Plan, but the allowed amount of the unliquidated portion of the claim shall be $1.00

for voting purposes, subject to the right of the holder to file a Rule 3018(a) Motion.

      31.     For all persons or entities which filed a proof of claim reflecting a claim or

portion of a claim that is contingent, the claim shall be disallowed in its entirety for voting

purposes, subject to the right of such holder to file a Rule 3018(a) Motion.  Contingent claims

shall include any claim that has been explicitly designated as contingent on the proof of claim

form.  Contingent claims shall also include any claims that were the subject of prepetition

litigation between the Debtors and the claimant as of the Petition Date.  Finally, contingent

claims shall include any claims that were not the subject of prepetition litigation, but that

otherwise involved an allegation of liability against the Debtors that was contested or otherwise

was the subject of continuing, unresolved investigations as of the Petition Date.

      32.     The following procedures shall be used by the Debtors and the Securities

Voting Agent for tabulating votes cast by holders of Securities:

(i)     Intermediary Record Owners required to use the Master Ballot voting
process shall be required to retain for inspection by the Court the
Beneficial Owner Ballots cast by Beneficial Owners for one year
following the Voting Deadline, and Intermediary Record Owners required
to send Prevalidated Ballots to Beneficial Owners for direct return to the
respective Voting Agent shall be required to retain for inspection by the
Court a list of those Beneficial Owners to whom the Prevalidated Ballots
were sent for one year following the Voting Deadline.

(ii)    Votes cast by Beneficial Owners holding Securities through Intermediary
Record Owners and transmitted by means of a Master Ballot or
Prevalidated Ballot shall be applied against the positions held by the
Intermediary Record Owners with respect to the Securities.  Votes
submitted by an Intermediary Record Owner on a Master Ballot or
Prevalidated Ballot must not be counted to the extent they are in excess of
the position maintained by the respective Intermediary Record Owner in
the Securities on the Record Date.

(iii)   The following assumptions apply to Prevalidated Ballots: (i) each
Prevalidated Ballot shall be for a single account and (ii) each vote shall be
a separate vote and not duplicative of any other vote cast by other

customers of the Intermediary Record Owner (unless specific evidence
exists that indicates that one vote is for the identical account number and
amount of another vote).

(iv)    To the extent that conflicting votes or overvotes are submitted on a timely
received Master Ballot or Prevalidated Ballot, the Securities Voting Agent
shall attempt to resolve the conflict or overvote before the preparation of
the vote certification.

(v)    To the extent that overvotes on a timely received Master Ballot or
Prevalidated Ballot are not reconcilable before the preparation of the vote
certification, the Securities Voting Agent shall count votes in respect of
the Master Ballot or Prevalidated Ballot in the same proportion as the
votes to accept and reject the Plan submitted on the Master Ballot or
Prevalidated Ballot that contained the overvote, but only to the extent of
the applicable Intermediary Record Owners' position on the Record Date
in the applicable Securities.

(vi)    Intermediary Record Owners shall be authorized to complete multiple
Master Ballots, and the votes reflected by the multiple Master Ballots shall
be counted except to the extent that they are duplicative of other Master
Ballots.  If two or more duplicative Master Ballots submitted are
inconsistent in whole or in part, the latest Master Ballot received before
the Voting Deadline, to the extent of such inconsistency, shall supersede
and revoke any prior Master Ballot, subject to the Debtors' right to object
to the validity of the second Master Ballot on any basis permitted by law,
including under Bankruptcy Rule 3018(a).

(vii)    Each Intermediary Record Owner or Beneficial Owner of the Securities
will be deemed to have voted the full principal amount (and with respect
to the TOPrS, number of TOPrS), or number of shares held,
notwithstanding anything to the contrary on the Ballot.  Therefore, with
respect to the Senior Notes and the TOPrs, the Securities Voting Agent
may adjust any principal amount or number of TOPrS voted to reflect the
corresponding claim amount, including prepetition interest.

33.    Service of all notices and documents described herein in the time and

manner as set forth herein, including the service and publication of the Confirmation Hearing

Notice and the Confirmation Hearing Publication Notice, as described in the Motion, shall be

adequate and sufficient and no other or further notice will be necessary.

34.    Plan Exhibits And Disclosure Statement Appendices Filing Deadline.  The

Debtors shall file all exhibits and schedules to the Plan and appendices to the Disclosure

17

Statement with the Court on or before November 5, 2007 (the "Exhibit Filing Date").  After the

Exhibit Filing Date, copies of exhibits to the Plan and appendices to the Disclosure Statement

shall be available by accessing the Delphi Legal Information Website at www.delphidocket.com.

In addition, copies of exhibits to the Plan and appendices to the Disclosure Statement may also

be obtained, upon reasonable written request, from the Creditor Voting Agent, Kurtzman Carson

Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Corporation,

et al.

35.    <u>Notices To Union-Represented Employees And Former Employees</u>.  The

Debtors are authorized to provide the current and former employees represented by the United

Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), the

United Steel Workers (the "USW"), the International Union of Electronic, Electrical, Salaried,

Machine and Furniture Workers-Communication Workers of America (the "IUE-CWA"), the

International Association of Machinists and Aerospace Workers and its District 10 and Tool and

Die Makers Lodge 78 (the "IAM"), the International Brotherhood of Electrical Workers and its

Local 663 (the "IBEW"), the International Union of Operating Engineers Locals 832S, 18S, and

101S (the "IUOE"), and certain non-represented employees and former employees with the

Confirmation Hearing Notice and the appropriate specialized notice.  The forms of UAW, USW,

IUE-CWA, IAM, IBEW, and  IUOE Notices are attached hereto as <u>Exhibits E</u>, <u>F</u>, <u>G</u>, <u>H</u>, <u>I</u>, and <u>J</u>,

respectively, and the forms of notice to be sent to certain non-represented employees and former

employees is attached hereto as <u>Exhibit K</u>, each of which are hereby approved.

36.    <u>Cure Claim Procedures</u>.  The Debtors shall be authorized to provide

counterparties to supply contracts that the Debtors intend to assume with the Cure Amount

Notice, the form of which is attached hereto as <u>Exhibit L</u> and hereby approved, by mailing such

notice on or before October 29, 2007.  Parties wishing to object to the assumption of their

contracts under the terms set forth in the Cure Amount Notice shall be required to return the

Cure Amount Notice in accordance with the instructions provided therein so as to be received on

or before November 9, 2007, and such party is required subsequently file a substantive objection

to the Cure Claim Amount (in accordance with the procedures outlined in the Cure Amount

Notice) on or before the date that is 30 days following the effective date of the Plan.  The Cure

dispute shall then be resolved following the effective date of the Plan.  Parties which either agree

with the cure of their supply contracts as set forth in the Cure Amount Notice or do not timely

return the Cure Amount Notice shall be given plan currency with postpetition interest on account

of their Cure Claim Amount as set forth in the Cure Amount Notice and in the amount set forth

in such notice.  The Debtors are authorized, but not directed, to remit resolved or uncontested

distributions on account of cure directly to the contract party whose contract is being assumed or

assumed and assigned.

    37. <u>Postpetition Interest Rate Dispute Procedures</u>.  The Debtors shall be

authorized to provide creditors holding General Unsecured Claims, other than Senior Note

Claims or TOPrs Claims, with the Postpetition Interest Rate Determination Notice, the form of

which is attached hereto as <u>Exhibit M</u> and hereby approved, by mailing such notice on or before

October 12, 2007.  Any party wishing to contest the proper rate of interest to be paid on account

of their claims under the terms set forth in the Postpetition Interest Rate Determination Notice

shall be required to return the Postpetition Interest Rate Determination Notice in accordance with

the instructions provided therein so as to be received on or before November 9, 2007.  If the

Debtors disagree with the interest rate asserted in a returned Postpetition Interest Rate

Determination Notice, they shall file an objection no later than 30 days after the effective date of

the Plan.  To the extent that the Postpetition Interest Rate Determination Notice is returned and

contests the rate of interest and relates to a claim that would otherwise be allowed, such claim

shall no longer be deemed an allowed claim for purposes of distribution until the interest rate

issue is resolved consensually or by Court order.

      38.    <u>Reclamation Claim Procedures</u>.  The Debtors shall be authorized to

provide sellers of goods with a statutory or common law right to reclamation ("Sellers") with the

Reclamation Election Notice, the form of which is attached hereto as <u>Exhibit N</u> and hereby

approved, by mailing such notice on or before October 29, 2007.  The Reclamation Election

Notice shall allow each Seller to elect to (i) receive a distribution on account of its reclamation

claim, to the extent Allowed (as defined in the Plan) in the currency afforded holders of general

unsecured claims under the Plan and such Seller shall be deemed to have waived any right to

seek administrative priority status for its Reclamation Claim (but not receive any accompanying

voting rights on the Plan), or (ii) assert administrative priority treatment for its reclamation claim.

If a Seller elects to decline the treatment afforded to Allowed general unsecured claims, the

Seller shall be required to so mark and return the Reclamation Election Notice so as to be

received by November 9, 2007 in accordance with the Reclamation Election Notice, and Seller's

reclamation claim shall be automatically adjourned to a contested hearing to be held after the

Debtors' emergence from chapter 11.

      39.    With respect to contested Reclamation Claims, the Debtors shall retain all

reserved defenses with respect to the reclamation claims, including but not limited to the

Debtors' reserved defense that reclamation claims are not entitled to administrative priority status

on the grounds that the goods and/or the proceeds from the sale of the goods for which Sellers

are seeking a reclamation claim are or were subject to a valid security interest.  If a Seller makes

20

no election and does not dispute the amount of its reclamation claim, it shall be given plan

currency with postpetition interest on account of the Allowed amount of its reclamation claim.

          40.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
      [•], 2007


_____
    UNITED STATES BANKRUPTCY JUDGE