Hearing Date: September 27, 2007<br>
Time: 10:00 am<br>
Objection Deadline: September 20, 2007<br>
Time: 4:00 pm

BUCHANAN INGERSOLL & ROONEY PC
One Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 440-4400
Facsimile: (212) 440-4401
William H. Schorling, Esq. (WS-6322)
DeWitt C. Brown, Esq. (DB-5720)

*Attorneys for Arkema Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :    Chapter 11
In re:                                                        :
                                                              :    Case No. 05-44481 (RDD)
DELPHI CORPORATION, et al.,                                   :
                                                              :    (Jointly Administered)
                                    Debtors.                  :
------------------------------------------------------------- X

## ARKEMA INC.'S MOTION
## FOR LEAVE TO FILE LATE CLAIM

Arkema Inc. formerly known as Atofina Chemicals, Inc. ("Arkema") respectfully seeks leave to file a late claim.

### PRELIMINARY STATEMENT

Arkema is a trade creditor who seeks to file a late claim in the amount of $44,186.65 in a bankruptcy case where the Debtors' total debt exceeds $5.5 billion. Arkema respectfully submits that its failure to file a proof of claim was the result of "excusable neglect," as that omission arose from an honest misunderstanding of the information contained on the Debtors' official website. Further, Arkema respectfully

submits that the equities favor permitting Arkema to file a late claim, given that: (a) the Debtors were aware of Arkema's claim; (b) the Debtors have yet to file a plan of reorganization; (c) the Debtors recently issued a press release stating that all senior secured debt, trade debt and other unsecured claims will be paid in full; and (d) the amount of Arkema's claim is small in comparison to the overall debt in this case. Thus, permitting Arkema to file a late claim of this size would not delay, disrupt or other prejudice the parties or the disposition of these bankruptcy cases.

## FACTUAL BACKGROUND

1. This Court has jurisdiction pursuant to 28 U.S.C. §§157(b)(2)(B) and 1334(a). This is a core proceeding under 28 U.S.C. §157(b)(2)(B).

2. Delphi Corporation and forty-one related entities (collectively, "Delphi" or "Debtors") filed petitions for relief under chapter 11 of title 11 of the United State Code, as thereafter amended (the "Bankruptcy Code"). Thirty-nine of the Debtors filed their chapter 11 petitions on October 8, 2005 and the remaining three filed theirs on October 14, 2005.

3. The deadline for filing claims was July 31, 2006 (the "Bar Date").

4. Arkema is a chemical company that supplied Delphi – and continues to supply the Debtors – with engineering polymers and acrylic resins. Arkema is, therefore, a trade creditor with general, unsecured trade debt.

5. Arkema has a relatively small in-house law group; the litigation group has just one (1) full-time litigation attorney and two legal assistants. It does not have any in-house bankruptcy expertise. However, one legal assistant, and the in-house litigation attorney have received basic bankruptcy training, which includes procedures for the filing

of proofs of claims. The legal assistant responsible for preparing Arkema's proofs of claim has worked for Arkema since 1994, and has handled its bankruptcy filings since 2001.

6. In late April of 2006, Arkema's legal assistant began the process of preparing Arkema's proofs of claim to be filed in the Delphi case. On April 24, 2006, Arkema received six separate Notices of Bar Date from the Debtors and on April 25, 2006, Arkema received three additional Notices of Bar Date from the Debtors. The Notices of Bar Date arrived in separate envelopes, and were addressed to different entities that were either divisions of, or predecessors to, Arkema Inc. The Notices also came from two different debtor entities. Copies of the Notices are attached as Exhibits A1 through A9.

7. Other than having been sent to different Arkema-affiliated entities, the nine Notices of Bar Date appeared to the Arkema legal assistant to be identical and entirely duplicative.

8. Unbeknownst to the Arkema legal assistant, six of the nine notices had only blank forms for proofs of claim, while the three others showed the claim as contingent, unliquidated and/or disputed.

9. Unfortunately, when the Arkema legal assistant began to prepare Arkema's proof of claim, the Notices of Bar Date which he read and upon which he relied had attached only a ***blank*** proof of claim.

10. In accordance with his training, and to streamline the claims process and avoid unnecessary disputes or delays, the Arkema legal assistant sought to reconcile Arkema's internally listed amount with the Debtors' own schedules. As directed by the Debtors' Notice of Bar Date, the legal assistant searched for information regarding Arkema's

claim on the Debtors' official website (www.delphidocket.com). (*See* Exhibit A1 at paragraph 8 for direction to official website).

11. On April 27, 2006, after logging onto the Debtors' website, the legal assistant located a page called creditor/CreditorData.asp. He printed out the creditor page with Arkema's information (the "Creditor Data page," which is attached as Exhibit B).

12. The Creditor Data page for Arkema from Delphi's official website listed Arkema's predecessor company (Atofina Chemicals, Inc.) as having a "General Unsecured Claim," with a "Scheduled Amt [sic]" of $33,043.50 on Schedule F. The Creditor Data page also had a box which asked and answered the following questions:

> Creditor Info Altered? N
> Objection Filed? N

13. ***Nowhere in this Creditor Data page did it indicate that Arkema's claim was either unliquidated or disputed.*** Nor did the Creditor Data page direct the viewer to any other page to obtain additional, more detailed information. To the contrary, the Creditor Data page obtained from the Debtors' official website apparently indicated that Arkema had a scheduled and undisputed claim in that amount of $33,043.50.

14. After seeing that the scheduled amount of Arkema's claim ($33,043.50) was less than the unpaid amount appearing in Arkema's internal credit files, the legal assistant sought to reconcile the amounts. The legal assistant determined that although Arkema's records showed that more was due Arkema, the discrepancy was not material.

15. Paragraph 4 of Debtors' Notice of Bar Date states that "you do not need to file a proof of claim on or prior to the General Bar Date if you are:

> (a) Any Person or Entity (i) which agrees with the nature, classification, and amount of the Claim set forth in the Schedules

and (ii) whose Claim against the Debtor is not listed as 'disputed,' 'contingent,' or 'unliquidated' in the Schedules . . . ."

16. Based on the instruction in The Notice of Bar Date (paragraph 4), and his bankruptcy training, the legal assistant understood that it was not necessary to file a proof of claim in the Delphi Cases if Arkema was not going to dispute the amount listed in the Debtors' schedules, because the Debtors had apparently scheduled Arkema's claim in the amount of $33,043.50 without dispute or objections.

17. In the interest of streamlining the claims process, to avoid any confusion – which the legal assistant feared could be caused either by a discrepancy between the amounts of the debt in Arkema's and the Debtors' books, or by a possible misidentification of the debtor entities in the proof of claim – and because he had determined that the discrepancy was not material, the legal assistant decided not to file a proof of claim, but instead relied on the fact that the Debtors had apparently scheduled Arkema's claim without objections.

18. As a result of the legal assistant's understanding of the information contained on the Debtors' official website that Arkema's claim was listed for $33,043.50 and was not listed as disputed or contingent, Arkema did not file a proof of claim prior to the deadline for filing claims.

19. On or about July 24, 2007, Arkema learned that the Debtors had issued a news release stating that before the end of the year, the Debtors would file a plan of reorganization that would "satisfy in full" claims of the unsecured trade creditors.

20. At that point, the legal assistant's supervisor searched for Arkema's proof of claim to determine how much Arkema might receive at the conclusion of the bankruptcy cases. The legal assistant advised his supervisor why the proof of claim had not been filed.

21. In order to confirm the precise amount of the claim scheduled by the Debtors, the legal assistant, together with his supervisor, called Kurtzman Carson Consultants LLC, the entity that processes claims against the Debtors. The Kurtzman representative stated that the claim listed for Arkema on Debtors' schedule F was scheduled as "unliquidated and disputed."

22. Arkema promptly contacted outside bankruptcy counsel. This motion followed.

23. Arkema sent a draft of this motion together with all of the exhibits to Debtors' counsel on August 3, 2007. By letter dated August 7, 2007, Debtors' counsel agreed that the Debtors would not assert Arkema's failure to seek leave to file a late claim during the period from August 3, 2007 until such time that the Debtors, upon thirty days' notice, would inform Arkema in writing of the expiration of such period, as a basis to contest such request for relief. A copy of the letter is attached as Exhibit "C". Debtors' counsel has advised counsel for Arkema that they will not agree to allow the late filing of Arkema's claim.

## ARGUMENT

### Arkema's Failure to File a Proof of Claim
### <u>Was the Result of Excusable Neglect</u>

24. Fed. R. Bankr. P. 9006(b)(1) provides that when an act is required to be done within a certain amount of time:

> the Court for cause shown can at any time in its discretion . . . (1) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of "excusable neglect."

25. The leading case on the issue of "excusable neglect" is *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("Pioneer") . In *Pioneer,* a lawyer representing a group of creditors filed a motion

seeking an Order allowing him to file a late proof of claim. The attorney's excuse was that there had been upheaval in his law firm, he left the firm and did not have the file with the correspondence notifying him of the deadline for filing claims.  He had other excuses, which the Court found more compelling.

26.  Those more compelling reasons upon which the Court focused concerned the fact that the information provided to the creditors created confusion regarding information essential to the filing of a proof of claim.  For example, the *Pioneer* Court found that  the notice of the bar date was included in the letter announcing the date and time of the Section 341 meeting, instead of in a separate document, thereby easier to overlook.  The creditors' motion was granted and appealed and reversed and appealed until it reached the United States Supreme Court, where the Court upheld the motion to file a late proof of claim under the excusable neglect criteria.

27.  The Supreme Court found that Congress, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.  507 U.S. at 389.  The determination of what kind of neglect would be considered "excusable" is an equitable one, the Court opined, taking into account all relevant circumstances surrounding the party's omission.  These factors include the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the creditor, and whether the creditor acted in good faith.

28.  In *In re Enron Corp., No. 01-16034, 2003 Bankr. LEXIS 2113 (Bankr. S.D.N.Y., September 23, 2003),* the Court permitted the creditor to file late proofs of claim based on excusable neglect, where the creditor claimed that the debtors' withholding of information caused their failure to timely file their claims. The Court ruled that there was no significant prejudice to the debtors because the debtors had not filed a disclosure statement or plan of reorganization, and that allowing the late claim would not have a disruptive effect upon the debtor's proposed plan. *Id. at 22.*  The *Enron* Court also reiterated the Supreme Court's explanation in *Pioneer* of Rule 9006(b)(1), which empowers courts to accept late filings caused by inadvertence, mistake, or carelessness.

29.  In this case, Arkema attempted – though unsuccessfully – to handle properly it's filing of its proof of claim.  It first researched its own credit files concerning the amount of the claim.  Second, immediately upon receiving the Notice of Bar Date, Arkema used the Delphi website – as instructed by the Notice of Bar Date – to determine whether its claims were scheduled by the Debtors.  Based on incomplete and confusing information on the Debtors' official website, which appeared to state that Arkema had an undisputed, liquidated claim in roughly the same amount that Arkema had recorded in its own records, Arkema determined that it did not need to file a proof of claim.  Thus, Arkema mistakenly relied on information supplied by the Debtors, similar to the creditors in *Enron, supra,* who were permitted to file a late claim.

30.  Arkema's handling of its Delphi claim – though imperfect – is understandable. Two-thirds of the apparently duplicative Notices of Bar Date that the Debtors sent to Arkema, including those on which Arkema relied, attached blank form proofs of claim that did ***not*** indicate that Arkema's claims were either unliquidated or undisputed.  To

compound this confusion, those same incomplete Notices instructed Arkema to rely upon the Debtors' official website; that website contained a Creditor Data page that described Arkema's claim as a "scheduled" on Schedule F, listed a precise dollar and cents figure, and affirmatively stated that "no objection" was filed with regard to that claim. Not only did that Creditor Data page not list the claim as either unliquidated or disputed, that page did not send Arkema to any other page for more complete information.

31. Arkema's reliance on the Debtors own website information is understandable, since it was directed to do so in the Notice of Bar Date. Further, Arkema's reliance on the summary information contained on the website's Creditor's Page dedicated to Arkema is also understandable, given that these bankruptcy cases involve the schedules for forty-two separate Debtors.

32. Arkema acted in good faith. In fact, in not filing a Proof of Claim but accepting the amount listed by Debtors as undisputed in their official website, Arkema intended to streamline the claims process for itself and the Debtors, who are also Arkema's customers. Arkema's mistake was an honest one, and intended to reduce costs and disputes, not create them.

33. Further, given the other circumstances of this matter, and the considerations articulated by the Supreme Court in *Pioneer*, the equities favor permitting Arkema to file a late claim.

34. First, it was the Debtors' own Notices of Bar Date that led to Arkema's omission. Two-thirds of the apparently identical, multiple Notices sent to Arkema including the one relied on by Arkema attached only blank forms of proofs of claim that did not state that the claim was disputed or unliquidated. Those same incomplete Notices directed Arkema

to the official website; Arkema contemporaneously visited the website; and the website stated that Arkema's claim was scheduled without objection in a liquidated amount which was not significantly different from that in Arkema's books and records. Thus, the situation here is closely analogous to that of the Supreme Court's decision in *Pioneer Investments:* in both instances the Debtors provided unclear information that led to confusion regarding the creditor's filing of a proof of claim.

35. Second, there is no dispute that the Debtors were aware of Arkema's claims. The debtors listed Arkema's trade debt on its scheduled F with precision – to specific dollars and cents. Accordingly, there could hardly be surprise or similar prejudice to the Debtors if Arkema's late claim were permitted.

36. Third, as in the *Pioneer Investment* and *Enron* cases, *supra*, the Debtors have not yet filed a plan of reorganization, and therefore allowing this late claim would not have a disruptive effect upon any proposed plan.

37. Fourth, permitting Arkema to file a late proof of claim will not open the floodgates for similar late-filed claims because the facts here are sufficiently unique that it is unlikely numerous other creditors would fall within similar factual situations.

38. Finally, there is over $5.5 billion in debt in this case, yet the Debtors have recently announced an intention to pay the unsecured trade creditors in full. Thus, permitting Arkema to file a late claim will not prejudice anyone.

39. The issues involved herein do not involve novel issues of law. As such, Arkema respectfully requests that the requirement of Rule 9013-(b) of the Local Bankruptcy Rules for the Southern District of New York relating to the submission of a separate memorandum of law be dispensed within and waived.

## CONCLUSION

40. For the foregoing reasons, Arkema respectfully requests that this Court permit it to file a late proof of claim in the above-captioned cases, in the form attached hereto as Exhibit D.

Dated: September 7, 2007          Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**
*Attorneys for Arkema Inc.*


By:   /s/ DeWitt C. Brown
      William H. Schorling, Esq. (WS - 6322)
      DeWitt C. Brown, Esq. (DB - 5720)

      One Chase Manhattan Plaza
      New York, New York 10005
      Telephone: (212) 440-4400
      Facsimile: (212) 440-4401
      E-mail: william.schorling@bipc.com
      E-mail: dewitt.brown@bipc.com

#2039678-v7