Hearing Date:  September 27, 2007, 10:00 a.m.
Objection Deadline:  September 20, 2007, 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
    In re                          :         Chapter 11
                               :
DELPHI CORPORATION, et al.,     :         Case No. 05-44481 (RDD)
                               :
           Debtors.      :         (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIRD SUPPLEMENT TO KECP MOTION (DOCKET NO. 213) SEEKING
AUTHORITY TO CONTINUE SHORT TERM AT-RISK PERFORMANCE
PAYMENT PROGRAM ("AIP") FOR SECOND HALF OF 2007

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this third supplement (the "Third Supplement") to their original Motion For Order Under §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket No. 213). By this motion, the Debtors seek a six-month continuation of the Annual Incentive Plan ("AIP"), a short term, at-risk performance-based compensation program that provides executive-level employees of the Debtors in the United States with incentives to achieve specified individual and corporate financial goals during the subject performance period. The period covered by the Third Supplement began on July 1, 2007 and will end on December 31, 2007 (the "Performance Period"). The Third Supplement includes a request for approval of the financial targets and payout curves applicable to the Performance Period. The Debtors and their professional advisors have reviewed the data and the analyses that form the basis of this Third Supplement with the Creditors' Committee and their professional advisors. Subject to the provisions of the attached order, which permits the Creditors' Committee to direct certain adjustments in the final measurement of the Debtors' performance targets, the Debtors and the Creditors' Committee have agreed to the relief requested in this Third Supplement.[1]

As described more fully below, the Debtors have refined the performance target metrics used to measure at-risk performance payments under this program. In all other significant respects, however, the terms, conditions, operation, and goals of this Third Supplement to the AIP are substantially the same as those previously approved by this Court in

---

[1] The Debtors' submission of the current AIP supplement during the course of the Performance Period is required because of the need to present the Debtors' 2007 business plan and the corresponding AIP performance targets to the Compensation and Executive Development Committee (the "Compensation Committee") of Delphi's Board of Directors, the Creditors' Committee, and their respective advisors for their review, commentary, or approval.

February and July 2006 (for the first half and second half of 2006, respectively), and in March 2007 (for the first half of 2007).

A.  Factual Background And Procedural History Of The AIP

1. On October 13, 2005, the Debtors filed a Motion For Order Under §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (the "KECP Motion") (Docket No. 213) (the "KECP Motion").  This Court subsequently conducted an evidentiary hearing on February 10, 2006, in connection with that portion of the KECP Motion concerning the AIP.  (Feb. 10, 2006 Hearing Tr.) (Docket No. 3414).)  Following the hearing, this Court approved the AIP by order entered on February 17, 2006, authorizing the Debtors to implement a short-term annual incentive program for the first half of 2006 (the "AIP Order") (Docket No. 2441).  This Court found that the Debtors had exercised reasonable business judgment in seeking to implement the AIP, and had proposed the AIP in good faith. (AIP Order ¶¶ B–C.) This Court further concluded that implementation of the plan was in the best interests of the Debtors, their estates, stakeholders, and other parties-in-interest, and that the AIP was necessary to the Debtors' reorganization efforts.  (Id. ¶¶ C, E.)  The AIP Order adjourned all remaining portions of the KECP Motion for later consideration.  (Id. ¶ 1.)

2. On June 29, 2006, the Debtors filed a Supplement To KECP Motion (Docket No. 213) Seeking Authority To:  (A) Fix Second Half 2006 AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing  (the "Supplement") (Docket No. 4419).  After an evidentiary hearing held on July 19, 2006, this Court entered an order under 11 U.S.C. §§ 105 and 363 (a) authorizing the Debtors to fix the second-half 2006 AIP targets and continue the AIP program, and (b) further adjourning consideration of that portion of the KECP program concerning the Debtors' proposed emergence

3

incentive program (the "Supplemental AIP Order") (Docket No. 4660). (Id. ¶¶ 1, 4.)[2] As before, this Court concluded that the Debtors had proposed the Supplement in good faith, and had exercised reasonable business judgment in seeking its implementation. This Court likewise found that implementing the Supplement for the second half of 2006, subject to subsequent periodic review and, if appropriate, approval by this Court, was in the best interests of the Debtors, their estates, their stakeholders and other parties-in-interest, and that a six-month continuation of the AIP was necessary to the Debtors' reorganization efforts. (Supp'l AIP Order ¶¶ A–C.) The Supplemental AIP Order clarified the EBITDAR-UG metric used by the Debtors in setting the corporate-level performance target,[3] and authorized the Creditors' Committee to adjust by up to $100 million, if and as necessary, the EBITDAR-UG targets for the second half of 2006, to account for direct or indirect net savings realized by the Debtors "on account of transformation actions not contemplated by the Debtors' business plan forecasts." (Id. ¶ 3.)[4]

       3.      After several interim adjournments, the Debtors on March 12, 2007 filed their Second Supplement To KECP Motion (Docket No. 213) Seeking Authority To Continue

---

[2] The hearing on that portion of the KECP concerning an emergence incentive program (the "EIP") was adjourned several additional times. At the omnibus hearing on January 12, 2007, this Court permitted the Debtors to withdraw consideration of the EIP from the Court's calendar.

[3] The Debtors defined EBITDAR-UG and OIBITDAR-UG, respectively, as earnings (or operating income, at the division level) before interest, taxes, depreciation, amortization, and restructuring costs, less any earnings resulting from the Debtor's ongoing negotiations with their labor unions (collectively, the "Unions") (the "U") and General Motors Corporation ("GM") (the "G"). (See AIP Order ¶ 5; Supp'l AIP Order ¶ 3; Second Supp'l AIP Order ¶ 3.) The Debtors continue to adjust their actual EBITDAR and OIBITDAR to the extent there are any differences between the assumptions included in the Preliminary Business Plan (defined below) and the terms of any agreements reached with the Unions or GM.

[4] Several divisions subsequently did not meet their financial targets for the second half of 2006. In accordance with this Court's grant of authority referenced above, the Creditors' Committee notified the Debtors in February 2007 that it would reduce the Debtors' EBITDAR-UG targets by approximately $36 million for the performance period covering the second half of 2006. Taking into account financial performance at the corporate level and excluding adjustments for individual performance, incentive-compensation awards for this period therefore ranged from 68% to 168% of target opportunities, with an average award of 109% of target for members of the Delphi Strategy Board ("DSB") and 120% of target for non-DSB members.

AIP For First Half Of 2007 (the "Second Supplement") (Docket No. 7200). Following an evidentiary hearing, this Court entered on March 29, 2007 its Second Supplemental Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To Continue AIP For First Half Of 2007 (the "Second Supplemental AIP Order") (Docket No. 7474). Based on the evidence adduced at the hearing, this Court determined that permitting the Debtors to extend the AIP continued to be in the best interests of the Debtors, their estates, their stakeholders and other parties-in-interest, and that granting the requested relief was necessary to the Debtors' reorganization efforts. (Second Supp'l AIP Order ¶¶ B–C.) This Court further found that the Debtors had exercised reasonable business judgment in seeking the authority to implement the AIP. (Id. ¶¶ A–B.)

B.   The Third Supplement And The Assessments Underlying The
     Refinement Of The Debtors' Target Metrics

        4.   In February 2007, Delphi preliminarily completed its latest financial forecast for the five-year period running from 2007 through 2011, which it incorporated into its preliminary business plan for that same period (the "Preliminary Business Plan"). The process used to develop the Preliminary Business Plan was substantially the same as that used to develop Delphi's 2006 business plan. As before, Delphi conducted an in-depth evaluation of each of its businesses, taking into account revenue and cost forecasts in light of evolving and projected micro- and macroeconomic conditions. Delphi also provided each of its divisions with instructions and key assumptions to be utilized in connection with the development of each division-specific forecast. Applying a "bottom up" approach, each division then submitted its individual financial forecasts to Delphi corporate headquarters, where each forecast was reviewed and incorporated on a consolidated basis into the Preliminary Business Plan.

        5.   The Preliminary Business Plan was submitted to Delphi's Board of Directors (the "Board") on January 10, 2007, and February 28, 2007, and was presented to the

5

Creditors' Committee and the official committee of equity security holders (the "Equity Committee") (together, the "Statutory Committees") at joint meetings held on February 7 and 27, 2007.

      6.      In the ordinary course of its business, Delphi periodically updates its financial projections, incorporating actual year-to-date results and revising, if and as necessary, the assumptions underlying the initial projections in light of current information.  At a meeting of the Board held on July 16, 2007, Delphi management presented to the Board and its advisors an update on the financial projections for the current year based on actual financial performance through May 31, 2007 (the "5+7 Forecast").  The 5+7 Forecast included potential adjustments to assumptions underlying the Preliminary Business Plan based on the Debtors' progress in implementing their transformation plan.  The Debtors subsequently presented a summary of the 5+7 Forecast to the Statutory Committees and their advisors at a joint meeting held on August 9, 2007.

      7.      The Third Supplement reflects the Debtors' determination that:  (a) the AIP OIBITDAR targets for each of the Debtors' divisions during the second half of 2007 will be based on the <u>better of</u> the projected performances reflected in the 5+7 Forecast or the Preliminary Business Plan, respectively, and (b) the AIP corporate EBITDAR target will be derived from a summation of the divisional targets and will include elements from both the Preliminary Business Plan and the 5+7 Forecast.  For purposes of the AIP covering the period from July 1, 2007 through December 31, 2007, EBITDAR and OIBITDAR shall be adjusted on a dollar-for-dollar basis to reflect any positive or negative variance between the assumptions underlying the Debtors' Preliminary Business Plan for 2007 (as adjusted for updated performance through May 31, 2007) relating to the performance targets and the terms of the agreements reached with the

6

Debtors' Unions or General Motors Corporation affecting such performance targets using the protocol previously agreed to with the Creditors' Committee.[5] The Third Supplement also incorporates a provision authorizing the Creditors' Committee to adjust by up to $200 million, for measurement purposes, the corporate EBITDAR performance for the second half of 2007, if and as necessary, to account for direct net savings realized by the Debtors because of transformation actions not contemplated by the Debtors' business plan or other such unanticipated circumstances; provided, however, that in no event will the Creditors' Committee be authorized to adjust the corporate EBITDAR performance below the $443.1 million now provided for in paragraph 8 of this Third Supplement. Such determination shall be made by the Creditors' Committee on or before December 31, 2007, based on actual performance through November 30, 2007 and forecast performance for the month of December 2007.

8. The impact at the corporate level of using the methodology described in paragraph 7 above results in a proposed EBITDAR target of $443.1 million, which is approximately $150 million higher than the target projected under the Preliminary Business Plan.

9. The Debtors are projecting division-level OIBITDAR targets to be: Powertrain, $123.8 million; Steering, $51.3 million; Thermal, $54.0 million; Electronics and Safety, $157.8 million; Electrical and Electronic Architecture, $183.8 million; Product and Service Solutions, negative $1.5 million; and Automotive Holdings Group, negative $134.4 million. Except for the compensation targets set for the Steering and Product and Service Solutions divisions, compensation targets for each division were derived from the 5+7 Forecast. If the Debtors achieve all of the compensation targets identified above in this paragraph 9, the

---

[5] As discussed with the Creditors' Committee, the Product and Service Solutions ("PSS") target has been set below the original budget level, primarily due to the impact of significant consumer electronics industry changes, particularly in North America, as well as the impact of Delphi's transformation plan implementation on the PSS portfolio.

7

aggregate amount available in the incentive-compensation pool will be $20.2 million. To the extent the Debtors exceed these compensation targets, the aggregate amount in the pool will increase accordingly, but in no event will it exceed $37.6 million.

        10.      With the exception of the refinement in target metrics noted in paragraph 7 above, the terms and conditions of this Third Supplement are substantially similar to those previously approved by this Court and incorporated in the original, Supplemental, and Second Supplemental AIP Orders. (AIP Order ¶¶ 4–11; Supp'l AIP Order ¶¶ 2–3; Second Supp'l AIP Order ¶¶ 2–3.) As before, the principal elements of this Third Supplement are as follows:

- The AIP generally applies to all persons holding executive positions with the Debtors during the Performance Period (collectively, the "Covered Employees"), with the exception of Robert S. "Steve" Miller, the Executive Chairman of Delphi's Board. (AIP Order ¶ 4; Supp'l AIP Order ¶ 2; Second Supp'l AIP Order ¶ 2.) As of July 1, 2007, there were 442 Covered Employees.

- The Debtors will not issue any incentive compensation payments unless Delphi achieves its corporate-level earnings target or Delphi's divisions achieve their division-level operating income targets. (AIP Order ¶¶ 5–6; Supp'l AIP Order ¶ 2; Second Supp'l AIP Order ¶¶ 2.)

- For Covered Employees whose responsibilities are limited to the corporate level, 100% of their incentive compensation opportunities will be determined by comparing Delphi's EBITDAR for the six-month period with the corporate EBITDAR-based target. With respect to Covered Employees whose responsibilities are not so limited, 50% of their incentive compensation opportunities will be based on Delphi's EBITDAR versus the corporate target, and the other half will be based on their division's OIBITDAR versus the division's OIBITDAR target. (AIP Order ¶ 7; Supp'l AIP Order ¶ 2; Second Supp'l AIP Order ¶ 2.)

- Each Covered Employee has a target incentive compensation opportunity that is calculated based on his or her level of responsibility. If Delphi or its divisions exceed their targets, the Covered Employee's opportunity increases accordingly, but in no event will the opportunity exceed a specified cap. For Covered Employees who are members of the Delphi Strategy Board, Delphi's top policymaking group, the cap is 150% of the Covered Employee's target opportunity. For all other Covered Employees, the cap is 200% of their target opportunity. (AIP Order ¶ 8; Supp'l AIP Order ¶ 2; Second Supp'l AIP Order ¶ 2.)

- Any incentive compensation opportunity is subject to an adjustment based on the Covered Employee's individual achievements during the Performance Period. The adjustment can range from a 100% reduction (for those Covered Employees designated as poor performers or who otherwise fail to meet expectations) to an increase of up to (but not in excess of) the caps described above. The net effect of any individual adjustments must be zero; that is, an adjustment upward for an individual award in one division must be counterbalanced by a downward adjustment of equal amount for another (or other) award(s) in that same division. In addition, a DSB-level incentive compensation payment adjustment cannot be funded by (or fund) an adjustment to a non-DSB-level incentive compensation payment. (AIP Order ¶ 9; Supp'l AIP Order ¶ 2; Second Supp'l AIP Order ¶ 2.)

- The Creditors' Committee is authorized to adjust by up to $200 million, for measurement purposes, the corporate EBITDAR performance for the second half of 2007, if and as necessary, to account for direct net savings realized by the Debtors because of transformation actions not contemplated by the Debtors' business plan or other such unanticipated circumstances; <u>provided</u>, <u>however</u>, that in no event will the Creditors' Committee be authorized to adjust the corporate EBITDAR performance below the $443.1 million now provided for in paragraph 8 of this Third Supplement. Such determination shall be made by the Creditors' Committee on or before December 31, 2007 based on actual performance through November 30, 2007 and forecast performance for the month of December 2007. (Supp'l AIP Order ¶ 3; Second Supp'l AIP Order ¶ 3.)

- The AIP includes a prophylactic measure designed to prevent the payment of incentive compensation to Covered Employees under certain circumstances in which such payments would not be appropriate, including an otherwise eligible Covered Employee's failure to act in good faith and in a manner consistent with the Debtors' best interests. (AIP Order ¶ 10; Supp'l AIP Order ¶ 2; Second Supp'l AIP Order ¶ 2.) The Third Supplement (like those that preceded it) incorporates this safety provision.

C. <u>The Third Supplement Should Be Granted Because It Is The Product Of A Fair And Untainted Process, And Represents An Exercise Of The Debtors' Sound Business Judgment</u>

11. The Debtors seek this Court's permission to continue the AIP for the six-month period between July 1 and December 31, 2007. Section 363(b)(1) of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, allows a debtor-in-possession to use property of the estate other than in the ordinary course of business after notice and a hearing.

9

See In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997); In re Vienna Park Props., 976 F.2d 106, 111 (2d Cir. 1992).

12.  At the evidentiary hearing held on February 10, 2006 in connection with the KECP Motion, this Court articulated its methodology for determining whether a short-term, performance-based incentive compensation plan represents an appropriate use of estate property under section 363(b)(1).  That methodology first involves an inquiry as to "whether this program is in any way tainted by self-dealing or is, instead, the product of the advice of independent advisors and the ultimate decision-making by an independent board." (Feb. 10, 2006 Hearing Tr. (Docket No. 3414), at 241–42.) (Element 1.)  Second, if this Court finds that the plan has been proposed on a fair and arm's length basis, and is informed by independent judgment, this Court then needs to determine whether the proposal represents an exercise of the debtor's sound business judgment.  (Id.) (Element 2.)  At the evidentiary hearing held on March 22, 2007, this Court also referenced an overlapping analysis used by a sister court to determine whether a compensation proposal satisfies the sound business judgment test.  Those factors include:

- whether there is a reasonable relationship between the plan proposed and the results to be obtained (Element 3);

- whether the cost of the plan is reasonable in the context of the debtors' assets, liabilities, and earnings potential (Element 4);

- whether the scope of the plan is fair and reasonable, or whether it discriminates unfairly (Element 5);

- whether the plan or proposal is consistent with industry standards (Element 6);

- the due diligence efforts of the debtor in investigating the need for a plan, including what is generally applicable in a particular industry (Element 7); and,

- whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation (Element 8).

10

In re Dana Corp., 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006) (Mar. 22, 2007 Hearing Tr., at 85–86.)

13. The Debtors' request to continue the AIP for the period between July 1 and December 31, 2007 easily satisfies these tests. As a preliminary matter, the terms, conditions, process, and procedures reflected in this Third Supplement, including the specific performance targets and payout curves for the second half of 2007 attached to this motion as Exhibit 1, are consistent with those previously reviewed by this Court and found to have been proposed in good faith, to be in all respects fair and reasonable, necessary to the Debtors' reorganization efforts, and undertaken in the best interest of the Debtors, their estates, stakeholders, and other parties-in-interest. (AIP Order ¶¶B–C, E.) (Elements 1–8.)

14. In addition, the Third Supplement and the data supporting it have been reviewed and approved independently of those individual Covered Employees who potentially would benefit from the incentive awards contemplated by the AIP. More particularly, the Debtors submitted the proposed Third Supplement to the Compensation Committee for its review and comment. The Compensation Committee is composed entirely of independent directors, none of whom is a Covered Employee or has any direct or indirect material relationship with Delphi other than his or her service on the Compensation Committee. (Elements 1, 8.)

15. As a part of its approval process, the Compensation Committee reviewed and considered the Debtors' Preliminary Business Plan, information reflected in the 5+7 Forecast, and documents and information related thereto. Delphi's independent advisors also reviewed the data supporting the proposed performance awards and provided input during the course of the Compensation Committee's review. Based on that review, the Compensation Committee and its

11

advisors concluded that the Third Supplement and the targets contained therein fall well within the range of competitive practices among Delphi's peers, and voted to approve a continuation of the AIP under the terms and conditions reflected in the Third Supplement. (Elements 4, 6–8.)

16. Furthermore, the Debtors and their advisors met with the Creditors' Committee and its advisors in connection with the proposed Third Supplement. These discussions, which took place during the period between late July and mid-August, 2007, touched on all aspects of the AIP and the Third Supplement, including the Preliminary Business Plan, the 5+7 Forecast, and the Debtors' proposed financial targets and payout curves. The Creditors' Committee approved the Debtors' proposed financial targets and payout curves that are attached hereto as Exhibit 1, and thus supports a continuation of the AIP during the second half of 2007. (Elements 1, 7–8.)

17. Nor are there grounds to challenge the reasonableness of the Debtors' business judgment in seeking to continue the AIP for the second half of 2007. In consultation with their independent advisors, the Debtors determined that to remain competitive, they must implement a competitive compensation structure for their entire workforce. This includes both the Debtors' hourly and salaried employees. (Elements 2–5.) In relevant part, the Debtors' prepetition compensation program for Covered Employees included four basic components: salary, benefits, short-term incentive opportunities offered through an annual incentive plan similar to the current AIP, and long-term incentive opportunities. Following their entry into chapter 11 protection, the Debtors canceled the short- and long-term incentive components of their executive compensation plan, leaving salary and benefits as the only elements of compensation for the Covered Employees. Although a permanent compensation structure missing two fundamental components is not market competitive, the AIP—and thus the

continuation of the AIP contemplated by this Third Supplement—is a partial solution to the problem because it restores the short-term incentive element, and thus moves the Debtors' total compensation structure toward more market-competitive levels. (Elements 4–6, 8.)

18. This Court recognized as much when it observed, during the course of the evidentiary hearing held in connection with the Second Supplement:

> I think it is fair to say that one should look at the executive compensation here as a total package, particularly given the historical backdrop [of the Company]. . . . [T]he short-term annual incentive compensation here . . . is something that executives truly have a reasonable expectation of getting if the incentive's from that. However, unlike the rank and file, they also can be deprived of it, not only because of the performance of the company, but also because of their own individual performance. In that sense, it's not like salary. It's worse because if their supervisors believe that they have not individually performed up to expectations, it can be reduced. . . . I do not view this as a handout, but rather as something that's necessary so that the debtor's executive team will be compensated at least somewhat comparably to their competitors.

(Mar. 22, 2007 Hearing Tr., at 85–86.) This Court's findings, analysis, and conclusions apply with equal force here. (Elements 2–5.)

19. Based on the information and analysis referenced above, the Debtors believe that the AIP and the Third Supplement provide Covered Employees with appropriate incentives to achieve the Debtors' interim corporate- and division-level financial targets. These targets are derived from the Debtors' Preliminary Business Plan and the 5+7 Forecast, the same plans used by the Debtors in managing their businesses. The targets also were thoroughly reviewed by the Creditors' Committee and the Equity Committee and their respective advisors at the joint meeting held on August 9, 2007. Providing Covered Employees with incentives to reach the AIP targets is in the best interests of the Debtors, their estates, their stakeholders, and other parties-in-interest because all of those constituencies benefit when the Debtors create value by achieving their earnings goals. (Elements 1–4, 7–8.) Again, as this Court recognized in connection with the Second Supplement, "if . . . the debtors exceed the targets in ways that will

13

truly enhance the executives' recovery under this compensation portion, . . . all of the debtor's constituencies looking to the continuation of this company and its continuing going concern value will be happy." (Elements 3–5.)

WHEREFORE, the Debtors respectfully request that this Court (a) enter a Third Supplemental AIP Order in substantially the form of that attached hereto as <u>Exhibit A</u>; and (b) grant the Debtors such other and further relief as is just and equitable.

Dated:   New York, New York
         September 7, 2007

                                            SKADDEN, ARPS, SLATE, MEAGHER
                                              & FLOM LLP

                                            By:   /s/ John Wm. Butler, Jr.
                                                John Wm. Butler, Jr. (JB 4711)
                                                John K. Lyons (JL 4951)
                                                Albert L. Hogan, III (AH 8807)
                                                Ron E. Meisler (RM 3026)
                                            333 West Wacker Drive, Suite 2100
                                            Chicago, Illinois 60606
                                            (312) 407-0700

                                                        - and –

                                            By:   /s/ Kayalyn A. Marafioti
                                                Kayalyn A. Marafioti (KM 9632)
                                                Thomas J. Matz (TM 5986)
                                            Four Times Square
                                            New York, New York 10036
                                            (212) 735-3000

                                            Attorneys for Delphi Corporation, <u>et al.</u>,
                                              Debtors and Debtors-in-Possession