UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

In re                         :   Chapter 11

DELPHI CORPORATION, et al.,   :   Case No. 05-44481 (RDD)

                              :   (Jointly Administered)
                    Debtors.  :
------------------------------x

DECLARATION AND STATEMENT OF PAUL E. SCHNEIR
UNDER FED. R. BANKR. P. 2014 AND 2016 IN SUPPORT OF
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a)
AND 328 AUTHORIZING EMPLOYMENT AND RETENTION
OF KEYBANC CAPITAL MARKETS INC. AS FINANCIAL ADVISOR AND
<u>INVESTMENT BANKER TO DEBTORS</u>

Paul E. Schneir, under penalty of perjury, declares and says:

1.  I am a Managing Director at the financial advisory and investment banking firm of KeyBanc Capital Markets Inc. ("KBCM"), which maintains its principal office at 127 Public Square, Cleveland, Ohio 44114. I am authorized to execute this declaration and disclosure statement (this "Declaration") on behalf of KBCM. I submit this Declaration under sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the Application For Order (the "Order") Under 11 U.S.C. §§ 327(a) And 328 Authorizing Employment And Retention of KeyBanc Capital Markets Inc. As Financial Advisor and Investment Banker To Debtors <u>Nunc Pro Tunc</u> To May 29, 2007 (the "Application"), filed contemporaneously herewith by Delphi Corporation ("Delphi") and certain of its

{00216157.DOC v4}

direct and indirect subsidiaries, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" or "Company"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.[1]

### Qualifications Of Professionals

2. KBCM is one of the largest bank-aligned middle market merger advisory firms in the United States. Between 2000 and June 26, 2007, KBCM completed approximately 250 transactions valued in the aggregate at over $22 billion. KBCM specializes in public and private clients whose enterprise value is between $250 million and $2.5 billion and transaction sizes from $50 million to $1 billion. KBCM assists clients with all aspects of the transaction process, from valuation and marketing through contract negotiations and closing. In addition, KBCM has significant experience with joint ventures, recapitalizations and restructurings.

### Services To Be Rendered

3. If the Application is approved, KBCM will render financial advisory and investment banking services to the Debtors as needed throughout the course of these chapter 11 cases, as contemplated by, and in accordance with the terms of, the Engagement Letter attached hereto as <u>Exhibit 1</u>. Such services will include:

> (a)  Assisting the Debtors and their other professionals in reviewing and evaluating the terms of any proposed Transaction, in

---

[1] Certain of the disclosures herein relate to matters within the knowledge of other professionals at KBCM and are based on information provided by them. Capitalized terms used but not defined herein have the meanings given to such terms in the Engagement Letter referenced in the Application.

{00216157.DOC v4}                           2

responding thereto and, if directed, in developing and evaluating alternative proposals for a Transaction;

(b) Assisting in the definition of objectives related to value and terms of divestiture;

(c) Assisting in the identification and solicitation of appropriate transaction parties;

(d) Preparing and distributing confidentiality agreements and appropriate descriptive selling materials (to include offering memoranda, management presentations, and other documentation as may be required or appropriate);

(e) Reviewing and analyzing any proposals the Debtors receive from third parties in connection with a Transaction;

(f) Assisting or participating in discussions and/or negotiations with the parties in interest in connection with a Transaction;

(g) Advising and attending meetings of the Debtors' board of directors, creditor groups, official constituencies, and other interested parties, as the Debtors determine to be necessary or desirable;

(h) If requested, participating in hearings before this Court or such district or other bankruptcy courts as the Debtors may request and provide relevant testimony with respect to the matters described in the Engagement Letter and issues arising with respect thereto in connection with any proposed plan of reorganization;

(i) Assisting the Debtors' internal and external counsel to enable such counsel to provide legal advice to the Debtors; and

(j) Rendering such other financial advisory and investment banking services as may be reasonably requested by the Debtors in connection with any of the foregoing.

<u>Professional Compensation</u>

4. KBCM respectfully refers interested parties to the Engagement Letter for a full recitation of the proposed terms of KBCM's compensation. In summary, if the Application is approved, KBCM will be entitled to receive the following fees in cash:

{00216157.DOC v4}    3

(a) A transaction fee (the "Transaction Fee") equal to the greater of $750,000 or 1.25% of the Transaction Value as defined in the Engagement Letter.

(b) In the event that a Transaction is consummated with ▆▆▆▆ and ▆▆▆▆▆▆▆▆▆▆▆▆ the Company will owe KBCM exactly 50% of the stated Transaction Fee.

(c) To the extent the Debtors request KBCM to perform additional services not contemplated by the Engagement Letter, such additional fees as shall be mutually agreed upon by KBCM and the Debtors, in writing, in advance.

(d) If the Transaction is not consummated, but the Debtors, directly or indirectly, receive "Compensation" from a potential buyer, then the Company shall pay to KBCM, promptly upon receipt of such Compensation, a cash fee equal to 25% of such Compensation (the "Break-Up Fee"). For purposes of this paragraph, the term "Compensation" means (i) a break-up or a topping or other fee or payment, including any fee or payment characterized as expense reimbursement or liquidated damages (whether payable in cash or other consideration) in connection with the termination or cancellation of an acquisition agreement or of the Company's efforts to effect a Transaction during the term of this engagement or the 12-month period thereafter, or (ii) a lock-up fee in connection with a standstill agreement made during such time.

(e) Subject to the Retention Order and Interim Compensation Order, the Debtors agree to reimburse KBCM periodically, upon request, and upon consummation of the Transaction or transactions contemplated by the Engagement Letter, for all reasonable out-of-pocket expenses incurred in connection with the performance of its duties under the Engagement Letter, including transportation, lodging, meals, document services, courier charges, database services and word processing production and reasonable fees and expenses of third parties retained by it, if any, such as legal counsel; *provided, however* that the Debtors shall not be obligated to reimburse KBCM for out-of-pocket expenses in excess of $50,000, unless the Debtors have provided prior written consent to the reimbursement of such out-of-pocket expenses. Consistent with and subject to final approval by the Bankruptcy Court, the Debtors shall promptly reimburse KBCM for such expenses upon presentation of an invoice or other similar documentation with reasonable detail.

5.    The Debtors and KBCM acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Debtors of the work performed, in each case, in connection with this engagement may be variable, and the Debtors and KBCM have taken such factors into account in setting the fees under the Engagement Letter; provided, however, that with respect to the hours worked, KBCM shall devote whatever resources as may be required to fulfill the purposes of this engagement on a timely basis.

6.    In the event that this Court approves the retention of KBCM by the Debtors, (a) KBCM's fees and expenses shall be subject to (i) the jurisdiction and approval of this Court under section 328(a) of the Bankruptcy Code and the Order, (ii) any applicable fee and expense guideline orders, and (iii) any requirements governing interim and final fee applications, and (b) the Debtors shall pay all fees and expenses of KBCM under the Engagement Letter as promptly as practicable in accordance with the terms thereof and the orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

7.    KBCM intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court. Consistent with its ordinary practice and the practice of financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, KBCM ordinarily does not maintain contemporaneous time records or conform to or provide a schedule of

{00216157.DOC v4}    5

hourly rates for its professionals. Therefore, KBCM requests that it be excused from compliance with such requirements.

### Disinterestedness

8. In connection with the preparation of this Declaration, KBCM has reviewed a list of parties-in-interest in these cases (the "Interested Parties") that was provided to KBCM by the Debtors.

9. Currently and at various times in the past, KBCM has represented numerous entities in the course of providing mergers and acquisitions advisory and other investment banking services. Many of those entities may be Interested Parties in these cases. To the best of my knowledge, and except as otherwise set forth below, KBCM has not represented any Interested Party in these cases in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships with, the Debtors in matters relating to the Debtors, their estates, assets, or businesses. Moreover, neither KBCM, I, nor any other employee of KBCM who will work on this engagement has any connection with or holds any other relationship with the Debtors or their estates, or any interest adverse to the Debtors, their estates, or the Interested Parties in the matters on which KBCM is proposed to be retained or otherwise, except as set forth below:

(a) As part of its practice, KBCM appears in numerous cases, proceedings, and transactions involving many different professionals, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases, and has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to this case. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these

business relationships represents an interest materially adverse to the Debtors herein in matters upon which KBCM is to be engaged. In addition, various professionals employed by KBCM have numerous other business, professional and social relationships wholly unrelated to the Debtors and the chapter 11 cases with multiple professional persons involved in the Debtors proceedings, including professional persons engaged on behalf of the Debtors and professional persons engaged on behalf of other parties-in-interest, and may have such relationships with various employees of the Debtors. To the best of my knowledge and information, none of these relationships represents an interest materially adverse to the Debtors herein in matters upon which KBCM is to be engaged.

(b) KBCM is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, KBCM's services to these parties were and are wholly unrelated to the Debtors, their estates, and these chapter 11 cases.

(c) I note that KBCM (formerly known as "McDonald Investments Inc.") and KeyBank National Association, a wholly-owned subsidiary of KeyCorp and an affiliate of KBCM ("KBNA"), are both included on the list of Interested Parties that was provided to KBCM by the Debtors and their counsel. After due inquiry, aside from the engagement contemplated in the Engagement Letter attached hereto as <u>Exhibit 1</u>, I am not aware of any outstanding matter or dispute between the Debtors and either KBCM or KBNA that might cause the Debtors or the Court to consider KBCM or KBNA to be "parties in interest" with respect to these chapter 11 cases or that could reasonably be considered to give KBCM or KBNA an interest that is materially adverse to the Debtors in matters upon which KBCM is to be engaged..

10. To the best of my knowledge, KBCM has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases. If KBCM's proposed retention by the Debtors is approved by this Court, KBCM will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases. KBCM will, however, continue to provide professional services to entities or persons that may be creditors, equity security holders,

{00216157.DOC v4}    7

or parties-in-interest of the Debtors in these chapter 11 cases, as set forth herein, provided, however, that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

11.    Based on the results of the conflicts search conducted to date and described more fully herein, and except as otherwise set forth herein, to the best of my knowledge, neither I, KBCM, nor any officer or employee thereof who will work on this engagement, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties-in-interest (as reasonably known to KBCM), their respective attorneys, the Office of the United States Trustee for the Southern District of New York, or any person employed by such office with respect to the matters upon which KBCM is to be engaged, and KBCM does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates, or any class of creditors or equity interest holders.

12.    To the best of my knowledge, KBCM is a "disinterested person" pursuant to sections 101(14) and 327(a) of the Bankruptcy Code.

13.    No promises have been received by KBCM, or any employee thereof, as to compensation or payment in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. Further, KBCM has no agreement with any other entity to share with such entity any compensation received by KBCM in connection with these chapter 11 cases, except as permitted under section 504 of the Bankruptcy Code.

14. If any new relevant facts or relationships are discovered or arise during the pendency of these chapter 11 cases, KBCM will use reasonable efforts to identify such further developments and will, if appropriate, promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of August, 2007, at Cleveland, Ohio.

Paul E. Schneir
Managing Director

**Exhibit 1**
**Engagement Letter**

{00216157.DOC v4}

**KeyBanc Capital Markets**

127 Public Square
Cleveland, OH 44114

May 29, 2007

PERSONAL AND CONFIDENTIAL

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Attention: Mr. Stephen H. Olsen, Director – Mergers and Acquisitions

Ladies and Gentlemen:

This letter agreement, by and among Delphi Corporation (the "Company") and KeyBanc Capital Markets Inc. ("KBCM"), shall confirm the terms and conditions of the retention of KBCM as financial advisor and investment banker to the Company in connection with a possible Transaction (as defined below).

Services to be Rendered. In connection with the formulation, analysis, negotiation and implementation of the divestiture or other strategic alternatives relating to the Company's bearings business located in Sandusky, Ohio, (the "Business"), whether pursuant to a Transaction or combination of transactions, KBCM will perform the following services, and, in connection therewith advise the Company, as requested by the Company (collectively, the "Services"):

(a)  assist the Company and its other professionals in reviewing and evaluating the terms of any proposed Transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for a Transaction;

(b)  assist in the definition of objectives related to value and terms of divestiture;

(c)  assist in the identification and solicitation of appropriate transaction parties;

(d)  prepare and distribute confidentiality agreements and appropriate descriptive selling materials (to include offering memorandums, management presentations, and other documentation as may be required or appropriate);

(e)  review and analyze any proposals the Company receives from third parties in connection with a Transaction or other transaction;

---

Delphi Corporation
May 29, 2007
Page 2

(f)  assist or participate in discussions and/or negotiations with the parties in interest in connection with a Transaction or other transaction;

(g)  advise and attend meetings of the Company's board of directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

(h)  if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed reorganization plan;

(i)  assist the Company's internal and external counsel to enable such counsel to provide legal advice to the Company, as contemplated herein; and

(j)  render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

Application for Retention of KBCM. KBCM will cooperate with the Company in the preparation of an order for approval of this letter agreement and KBCM's retention by the Company under the terms of this letter agreement ("Retention Order").

KBCM acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described herein, this letter agreement (including payment of KBCM's fees and expenses hereunder) shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code.

All payments made pursuant to this letter agreement must be made in conformity with the orders from the Bankruptcy Court including the order under 11 U.S.C. Section 331 establishing procedures for interim compensation and reimbursement of expenses of professionals (the "Interim Compensation Order") (Docket No. 869). KBCM will timely file the appropriate interim and final applications for allowance of compensation and reimbursement of expenses pursuant to the Retention Order and Interim Compensation Order.

Sharing of Information with Counsel. The Company has retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") to provide legal advice to the Company in connection with the legal aspects of the chapter 11 reorganization cases, including Transactions that may occur. The Company also employs inside counsel to advise the Company on those same matters. The Company anticipates that from time to time privileged communications may need to be shared with KBCM in order to permit KBCM to provide the most comprehensive advice to the Company and to counsel to the Company in order to support such counsel's provision of legal advice to the Company. The Company intends that any such sharing of privileged information

Delphi Corporation
May 29, 2007
Page 3

occur without waiver of the attorney-client privilege or of any other privileges that may apply.

This letter agreement confirms KBCM's agreement that, to the extent privileged information is shared with KBCM, such sharing is made solely for the purpose of facilitating KBCM's provision of services pursuant to this letter agreement and in recognition that KBCM and the Company share a common interest for that purpose. KBCM shall maintain the confidentiality of all privileged communications that are shared with it and will not disclose such privileged matters to any other person (including any of its affiliates) without the prior written consent of the Company or except as required by law or by court order.

As consideration for KBCM's services, the Company agrees to pay KBCM a transaction fee (the "Transaction Fee") the greater of $750,000 or 1.25% of Transaction Value. In the event a transaction is consummated with ████████████████, the Company will owe KBCM exactly fifty percent (50%) of the stated Transaction Fee.

For purposes of this letter agreement, the term "Transaction Value" means (i) the total amount of cash paid, directly or indirectly, for the Business (including, without limitation, the total amount of cash deposited in escrow under the terms of any agreement relating to the Transaction); (ii) the fair market value of any assets, securities or other property or rights transferred, directly or indirectly, in payment for the Business (including, without limitation, the present value, as of the closing date of the Transaction, of any payments to be made under non-competition, consulting or similar arrangements and any deferred or contingent payments, whether or not such payments are dependent upon future results of operations or other measures of future performance, consulting that debt instruments will be valued at the face amount thereof; (iii) the principal amount of any funded indebtedness and any long-term liabilities appearing on the most recent balance sheet of the Company prior to the consummation of the Transaction and any other liabilities (contingent or otherwise), in each case, that are directly or indirectly assumed or refinanced in connection with the Transaction; and (iv) the aggregate proceeds received from any sales, transfers or other dispositions of assets of the Business, through a securitization program or otherwise (other than sales of inventory and idle equipment in the ordinary course of business).

If the Company retains ownership of a portion of the Business, the Transaction Value shall be increased by such amount as may be appropriate to reflect the value of such retained portion of the Business.

For purposes of calculating the Transaction Fee, the fair market value of securities for which there is an established trading market will be the closing sale price of the securities on the trading day preceding the date of the closing of the Transaction. The fair market value of any assets, securities, property or rights (other than as provided above) will be mutually agreed by KBCM and the Company. If the parties cannot agree upon the fair market value of such assets, securities, property or rights, they will choose a qualified appraiser of national standing to conclusively determine, at the Company's expense, such fair market value. Upon request, the

Delphi Corporation
May 29, 2007
Page 4

Company will make available to KBCM any information available to it for purposes of calculating the amount of any component of the Transaction Value.

The Transaction Fee will become payable in full by the Company upon consummation of (a) any merger, consolidation, reorganization, recapitalization or other transaction or series of related transactions pursuant to which the Business is acquired by or combined with another person or entity or (b) the acquisition, directly or indirectly, by another person or entity, in a single transaction or series of related transactions, of all or a substantial portion of the assets of the Business (each of the transactions referenced in clauses (a) and (b) above is hereinafter referred to as a "Transaction"). Notwithstanding the foregoing, a Transaction does not include a transaction involving the acquisition of all or substantially all of the Company's existing business, whether pursuant to the acquisition of stock or assets under a plan of reorganization or a sale of substantially all of the Company's assets under Section 363 of the Bankruptcy Code under which the Business remains with the reorganized Company and/or acquired business regardless of whether the equity of the reorganized Company is owned by the existing shareholders, its employees and/or pre-petition creditors.

If the Transaction is not consummated, but the Company, directly or indirectly, receives "Compensation" from a potential buyer, then the Company shall pay to KBCM, promptly upon receipt of such Compensation, a cash fee equal to 25% of such Compensation (the "Break-Up Fee"). For purposes of this paragraph, the term "Compensation" means (i) a break-up or a topping or other fee or payment, including any fee or payment payable in cash or other consideration, reimbursement or liquidated damages (whether payable in cash or other consideration) in connection with the termination or cancellation of an acquisition agreement or of the Company's efforts to effect a Transaction during the term of this engagement or the 12-month period thereafter, or (ii) a lock-up fee in connection with a standstill agreement made during such time.

Subject to the Retention Order and Interim Compensation Order, the Company agrees to reimburse KBCM periodically, upon request, and upon consummation of the Transaction or transactions contemplated hereby, for all reasonable out-of-pocket expenses incurred in connection with the performance of its duties under this letter agreement, including transportation, lodging, media, document services, courier charges, database services and word processing, production and reasonable fees and expenses of third parties retained by it, if any, such as legal counsel; provided, however, that the Company shall not be obligated to reimburse KBCM for out-of-pocket expenses in excess of $50,000, unless the Company has provided its prior written consent to the reimbursement of such out-of-pocket expenses.

This letter agreement may be terminated with or without cause by KBCM or the Company at any time upon receipt of written notice by the other party to that effect. Upon termination of this letter agreement, neither party will have any liability or continuing obligation to the other, except that: (i) the provisions of Appendix A, Appendix B and Appendix C to this letter agreement will survive any such termination, (ii) the Company will remain liable for KBCM's reasonable out-

Delphi Corporation
May 29, 2007
Page 5

of-pocket expenses incurred and fees earned up to the time of termination; and (iii) if a Transaction is consummated within 12-months of the termination of KBCM's engagement or if a definitive agreement with respect to such a transaction which is subsequently consummated is entered into during such 12-month period, or if the Company received Compensation with respect to any such Transaction that is not consummated, the Company will pay KBCM the Transaction Fee or the Break-up Fee, as the case may be, in accordance with the terms of this letter agreement.

KBCM and the Company agree that the provisions set forth in Appendix A, Appendix B and Appendix C attached to this letter agreement form an integral part of this letter agreement and are hereby incorporated by reference in their entirety. Capitalized terms used but not defined in any of the Appendices hereto shall have the meanings assigned to them in this letter agreement. All references in the Appendices hereto to the "letter agreement" shall mean in this letter agreement.

If this letter agreement accurately sets forth the understanding between us, please sign the enclosed copy of this letter agreement and return it to KBCM, at which time, subject to any necessary bankruptcy court approvals, this letter agreement will become a mutually binding obligation.

Very truly yours,

KEYBANC CAPITAL MARKETS INC.

By: _____
Its: Managing Director

Agreed to as of the above date:

Delphi Corporation

By: _____
Its: M&A Director, M&A

Taxpayer Identification Number:
38-343-0473

---

Delphi Corporation
May 29, 2007
Page 6

APPENDIX A

Standard Terms and Conditions

The Company will provide KBCM with the names of all parties with which it has had discussions or contacts concerning a Transaction, and the Company agrees that it and its directors and executive officers will promptly inform KBCM of any inquiry it may receive concerning the availability of all or a portion of the Business for purchase.

The Company will provide KBCM (and will request that each prospective purchaser with which the Company enters into negotiations provide KBCM) with such information as KBCM reasonably deems appropriate in connection with its engagement and will provide KBCM with timely access to the Company's officers, directors and advisors as the Company reasonably determines is appropriate for purposes of this engagement. The Company acknowledges that KBCM: (i) will be using and relying upon publicly available information or information supplied by or on behalf of the Company in connection with its engagement without independent verification; (ii) does not assume responsibility for the accuracy of any such information and (iii) will not act in the capacity of an appraiser of any assets or liabilities of the Company, including the Business, or any prospective purchaser, it being agreed that any valuation of the Business or its assets shall not be construed as an appraisal.

All opinions and advice (written or oral) given by KBCM to the Company in connection with KBCM's engagement under the letter agreement are intended solely for the benefit and use of the Company and shall be treated as confidential by the Company, and the parties agree that no such opinion or advice shall be used, reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose, by either party without the other's written consent, except as expressly contemplated by the letter agreement or as may otherwise be required by applicable law. The Company confirms that the factual information to be furnished by it, when delivered, to the best of its knowledge will be prepared in good faith, and, to the knowledge of the Company, will not contain any material misstatement of fact or omit to state a material fact. The Company will promptly notify KBCM if it learns of any material misstatement of fact in, or material omission of fact from, any information previously delivered to KBCM.

As you know, KBCM is a full service securities firm and as such may from time to time effect transactions for its own account or the account of customers, and hold positions in securities or options on securities of companies which may be the subject of the engagement contemplated by the letter agreement. KBCM has adopted policies and procedures designed to preserve the independence of its research analysts whose review may differ from those of KBCM's investment banking area. KBCM and its affiliates also may from time to time perform various investment banking, commercial banking and financial advisory services for other clients and customers who may have conflicting interests with respect to the Company or the Transaction. Neither KBCM nor its affiliates will use any non-public information obtained from the Company pursuant to this engagement in connection with the performance by KBCM or its

Delphi Corporation
May 29, 2007
Page 7

affiliates of services for other companies. Except as required by applicable law or with the prior consent of the Company, KBCM will not furnish any such information to any of its affiliates or other persons including legal entities. The Company also acknowledges that KBCM and its affiliates have no obligation to use in connection with the engagement or otherwise to furnish to the Company, confidential information obtained from other companies.

The Company acknowledges KBCM may have fiduciary or other relationships whereby KBCM or its affiliates may exercise voting power over securities of various persons, which securities may from time to time include securities of the Company or of potential purchasers or others with interests in respect of the Transaction. Subject to the provisions of the immediately preceding paragraph, the Company acknowledges that KBCM or such affiliates may exercise such powers and otherwise perform its functions in connection with such fiduciary or other relationships without regard to KBCM's relationship to the Company hereunder.

The Company acknowledges that KBCM is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. The Company should consult with its own advisors concerning such matters and is responsible for making its own independent investigation and appraisal of the Transaction contemplated by the letter agreement, and KBCM has no responsibility or liability to the Company with respect to such matters.

The Company has retained KBCM for the limited purposes set forth in the letter agreement, and the parties acknowledge and agree that their respective rights and obligations are contractual in nature. Each party disclaims any intention to impose fiduciary obligations on the other by virtue of the engagement contemplated by the letter agreement. The letter agreement is solely for the benefit of KBCM, the Company and each of their respective officers, directors, employees and agents, and any person controlling them within the meaning of the Securities Act of 1933, as amended, and the respective legal representatives, successors and assigns of KBCM and the Company, and no other person, including any equityholder or creditor of either party, shall acquire or have any right under or by virtue of the letter agreement. KBCM will not assign this letter agreement or sub-contract any portion of its responsibilities without the prior written consent of the Company. The Company acknowledges and agrees that (i) KBCM will act as an independent contractor and is being retained solely to advise the Company in its efforts to effect the Transaction and that KBCM is not being retained to advise the Company on, or to express any opinion as to, the wisdom, desirability or prudence of consummating the Transaction, and (ii) any advice rendered by KBCM does not constitute a recommendation to any equityholder that such equityholder might or should take in connection with the Transaction.

No fee payable to any other financial advisor by the Company or any other company in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to KBCM under the letter agreement.

EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN

---

Delphi Corporation
May 29, 2007
Page 8

RESPECT OF ANY SUIT, ACTION, CLAIM OR PROCEEDING (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATING TO OR ARISING OUT OF THE LETTER AGREEMENT, THE ENGAGEMENT OF KBCM PURSUANT TO THE LETTER AGREEMENT OR THE PERFORMANCE BY KBCM OF THE SERVICES CONTEMPLATED BY THE LETTER AGREEMENT.

With the consent of the Company (except in the case of league tables and similar industry compilations for which no such consent shall be required) KBCM, after public announcement and closing of the Transaction, may publish, at its own expense, advertisements announcing the completion of the Transaction and KBCM's role therein.

The letter agreement may not be amended or modified except in writing and shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of laws. The parties have consulted with their attorneys, have read and understand this letter agreement, and sign it as their own free will. This letter agreement contains the entire understanding between the parties.

If any term, provision, covenant or restriction contained in the letter agreement, including this Appendix A, is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in the letter agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

Delphi Corporation
May 29, 2007
Page 9

## APPENDIX B

### Indemnification Provisions

In the event that KeyBanc Capital Markets ("KBCM") becomes involved in any capacity in any action, proceeding or investigation brought by or against any person, including stockholders of the Company, in connection with any matter related to the engagement described in the letter agreement, subject to the terms of the Retention Order, the Company will reimburse KBCM for its reasonable and customary legal and other expenses (including the cost of any investigation and preparation) reasonably incurred in connection therewith as such expenses are incurred; provided, however, that if it is finally judicially determined by a court of competent jurisdiction in any such action, proceeding or investigation that any loss, claim, damage or liability of KBCM has resulted primarily from the bad faith, gross negligence or willful misconduct of KBCM in performing the services which are the subject of the letter agreement, KBCM shall repay such portion of the reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of KBCM which is the subject of such finding. Subject to the terms of the Retention Order, the Company shall indemnify and hold KBCM harmless against any losses, claims, damages or liabilities to KBCM in connection with, or as a result of, such engagement except to the extent that any such loss, claim, damage or liability is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence or willful misconduct of KBCM in performing the services that are the subject of the letter agreement. If for any reason the foregoing indemnification is unavailable to KBCM or insufficient to hold it harmless, then the Company shall, to the extent not prohibited by law, contribute to the amount paid or payable by KBCM as a result of the claim, damage, losses, expenses and liabilities in such proportions as is appropriate (i) to reflect the relative benefits to the Company and its securityholders on the one hand, and KBCM on the other hand, in connection with the transaction to which such services relate or (ii) if the allocation on that basis is not permitted by applicable law, to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of KBCM and the Company as well as any other relevant equitable considerations. It is hereby agreed that the relative benefits to the Company, on the one hand, and KBCM, on the other hand, with respect to this engagement shall be deemed to be in the same proportion as (i) the Transaction Value of the Transaction (whether or not consummated) for which KBCM is engaged to render financial advisory services bears to (ii) the fee paid to KBCM in connection with such engagement. In no event shall KBCM contribute in excess of the fees actually received by it pursuant to the terms of the letter agreement. The Company shall be liable for any settlement of any claim against KBCM made with the Company's written consent. The Company shall have the right to assume the defense of any action or other proceeding (whether formal or informal) or threat thereof, whether or not any indemnified party is a party, in each case to the extent relating to claims, damages, losses, expenses and liabilities for which

---

Delphi Corporation
May 29, 2007
Page 10

indemnification is available hereunder (each, an "Action"), including the employment of counsel reasonably satisfactory to KBCM and will not, without the prior written consent of KBCM (which shall not be unreasonably withheld or delayed), settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any indemnified party is a party thereto) unless such settlement, compromise, consent or termination (a) contains an express, unconditional release of each indemnified party which is a party to such Action from all liability relating to such Action and (b) does not include an admission of fault, culpability or a failure to act by or on behalf of any indemnified party. Any indemnified party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which the letter agreement relates, but the fees and expenses of such counsel shall be at the expense of such indemnified party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such indemnified party and the Company, and such indemnified party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company, provided that the Company shall not in such event be responsible under the letter agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction. No person seeking indemnification or contribution under this Appendix B will, without the Company's prior written consent, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein. The reimbursement, indemnity and contribution obligations of the Company under this Appendix B shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to the directors, agents, employees and controlling persons (if any), of KBCM, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, KBCM, and any such person. The indemnity obligations of the Company hereunder shall not extend to any affiliate of KBCM or to the directors, agents, employees, or controlling persons (if any), as the case may be, of KBCM or any such affiliate to the extent that any loss, claim, damage or liability is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence or willful misconduct of KBCM or any such person in performing the services which are the subject of the letter agreement. The Company also agrees that neither KBCM nor any of such affiliate, directors, agents, employees or controlling persons shall have any liability to the Company or its stockholders for or in connection with any matter referred to in the letter agreement except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Company are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence or willful misconduct of KBCM in performing the services that are the subject of the letter agreement. The provisions of this Appendix B shall survive any termination or completion of the engagement provided by the letter agreement and shall be in addition to any rights that any indemnified party hereunder may have at common law or otherwise. Notwithstanding the foregoing, neither KBCM nor its directors, agents, employees and controlling persons shall be entitled to indemnification or contribution pursuant to this letter

Delphi Corporation
May 29, 2007
Page 11

agreement Appendix B based on any services provided or other actions taken by such persons after any termination or completion of services under this letter agreement.

---

Delphi Corporation
May 29, 2007
Page 12

APPENDIX C

KEYBANC CAPITAL MARKETS INC.
SPECIAL DISCLOSURE STATEMENT

KeyBanc Capital Markets Inc. ("KBCM"), is a wholly-owned subsidiary of KeyCorp. KBCM is a broker/dealer registered with the Securities and Exchange Commission, and a member of the National Association of Securities Dealers, Inc. ("NASD"), the New York Stock Exchange ("NYSE") and the Securities Investor Protection Corporation ("SIPC").

KeyCorp is also the parent of KeyBank National Association. KBCM is not a bank; it is a separate corporate entity from its affiliated bank subsidiaries of KeyCorp. The obligations of KBCM are not obligations of any of its affiliate banks, and none of the affiliated banks are responsible for, or guarantee, the securities sold, offered or recommended by KBCM. Except in certain specified circumstances, securities and other investment products sold, offered or recommended by KBCM are not bank deposits or obligations, and are not insured by the FDIC. KBCM will sell, as agent, banker's acceptances or CD's issued by its affiliate banks and by unaffiliated third party banks. The CD's that KBCM sells as agent are insured by the FDIC only to the extent that FDIC insures the deposits of the issuing bank.

KBCM's banking affiliates may be lenders to issuers of securities that KBCM underwrites or privately places, in which case the proceeds of securities offerings underwritten or privately placed may be used to repay those loans. Please refer to the relevant offering disclosure documents for a discussion of any such lending arrangement.

Important information required by U.S. Patriot Act. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each client. Therefore, all new and existing clients of KeyCorp and its affiliates are subject to certain identity verification requirements.

When a client hires any entity within the KeyCorp family of companies for the purposes of conducting business on behalf of the client, KeyCorp or its applicable affiliate will ask for their address and identification number (i.e., tax ID or social security number). In the case of an individual, his or her date of birth will be required. For certain business accounts, we also must obtain date of birth and other information for certain individuals associated with the business. KeyCorp and its affiliates reserve the right to request any such other identifying documents from clients or their principals as they deem necessary to assure compliance with applicable law.