| | |
|---|---|
| TOGUT, SEGAL & SEGAL LLP<br>Bankruptcy Co-Counsel for Delphi Corporation, et al.,<br>Debtors and Debtors in Possession<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000<br>Albert Togut (AT-9759)<br>Neil Berger (NB-3599)<br>Lara Sheikh (LS-0879) | Hearing Date: November 8, 2007<br>At: 10:00 a.m. |

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                              :
In re:                                                        :   Chapter 11
                                                              :   Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*,                                 :
                                                              :   Jointly Administered
                                            Debtors.          :
                                                              :
------------------------------------------------------------x

### DEBTORS' STATEMENT OF DISPUTED
### ISSUES REGARDING DEBTORS' OBJECTION TO
### PROOF OF CLAIM NO. 12813 (CELESTICA, INC.)

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Statement of Disputed Issues (the "Statement of Disputed Issues") With Respect To Proof of Claim No. 12813 (the "Proof of Claim") filed by Celestica, Inc. (the "Claimant") and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.  On July 28, 2006, the Claimant filed the Proof of Claim against Debtor Delphi Automotive Systems LLC in the total amount of $1,799,626.39. The Proof of Claim asserts $1,765,056.35 in alleged damages (the "Matchbox Damages Claim")

arising from the manufacture of goods and inventory by Celestica for a personal portable electronic device (referred to herein as the "Matchbox") for use with the Delphi Roady 2 satellite radio platform and $58,381 for certain accounts payable unrelated to the Matchbox (the "Accounts Payable Claim," together, with the Matchbox Damages Claim, the "Claims").

    2. On October 31, 2006, the Debtors objected to the Proof of Claim pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books and Records, and (c) Claims Subject to Modification, and (ii) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) (Docket No. 5452) (the "Objection"). The Debtors maintain that the Proof of Claim is unsubstantiated except for $36,370.02 of the Accounts Payable Claim.

    3. On November 22, 2006, Claimant filed a response to the Objection in which Claimant reduced the Accounts Payable Claim to $38,170 and asserted that the Objection fails to adequately explain the basis for disallowance of the Matchbox Damages Claim.

    4. The Claimant's Proof of Claim purports to allege that the Debtors agreed but failed to purchase Matchbox goods and inventory and that, as a result, Claimant is entitled to the Matchbook Damages Claim. At no time, in the Claimant's Proof of Claim or otherwise, has the Claimant provided Debtors with any evidence to support its allegations that the Debtors "agreed to purchase but failed to" purchase the Matchbox goods and services that give rise to the Matchbox Damages Claim.

5.    As set forth below and demonstrated by the Exhibits attached hereto, Claimant unilaterally terminated the Matchbox contract, which was expressly a requirements contract that was governed by the Debtors' general terms and conditions. Accordingly, Debtors are not liable to Claimant for any amount on account of the Matchbox Damages Claim.

### DEBTOR'S STATEMENT AND OBJECTION

6.    By a letter dated May 13, 2004 (the "May 13th Letter") and a subsequent purchase order dated June 11, 2004 (the "June 11th Purchase Order"), Debtors authorized Claimant to begin to develop the Matchbox in accordance with Claimant's proposal to Debtors. The May 14th Letter stated that "[t]his product must be flawlessly launched into the marketplace by September 1, 2004." See May 13th Letter, a true copy of which is attached as Exhibit "A" hereto. The June 11th Purchase Order is prominently labeled "Requirements Contract."

7.    The June 11th Purchase Order referenced the May 13th Letter and provided that 50% of the total tooling and NRE (non-recoverable expense) investment of $307,000 was to be paid after the first delivery of the Matchbox with the remainder to amortized over the first 150,000 units. See June 11th Purchase Order, a true copy of which is attached as Exhibit "B" hereto.

8.    By letter dated, August 2, 2004, Claimant advised the Debtors that it needed to increase the original price quotation by 20% and increase the NRE investment by over 100%. A true copy of the August 2nd Letter is attached hereto as Exhibit "C."

9.    The Debtors responded to the August 2nd Letter by a letter dated August 4, 2007 and expressed disappointment with Claimant's failure to meet its

3

original commitments and stated the Debtors' position that Claimant was obligated to honor its $65.19 original price quote, which included amortization of the NRE investment at $1.19 per unit. The August 4th Letter further stated that "[a]nything short of a Christmas '04 launch of this product will not be acceptable to our customer base." See August 4th Letter, a true copy of which is attached hereto as Exhibit "D."

10. Claimant responded to the August 4th Letter by a letter dated August 23, 2004 (the "August 23rd Letter"). A true copy of the August 23rd Letter is attached hereto as Exhibit "E." The August 23rd Letter offered a revised increased price for the Matchbox of $69.88, not including amortization of the NRE investment. This represented a 9.2% price increase. The August 23rd Letter also sought to increase the NRE investment to from $308,000 to $776,025 or $2.38 per unit compared to the original quote of $1.19 per unit.

11. By a second letter dated September 1, 2004, Claimant offered to reduce the proposed price increase to $66.24 (not including amortization of the NRE investment) and to increase the NRE investment to $680,768 or $1.76 per unit. A true copy of the September 1st Letter is attached hereto as Exhibit "F."

12. On October 6, 2004, the Debtors issued Claimant a new purchase order (the "October 6th Purchase Order") reflecting a price of $67.37 with a notation that the price includes $1.13 per item amortization for tooling and NRE investment totaling $680,768. A true and correct copy of the October 6th Purchase Order is attached hereto as Exhibit "G." Similar to the June 11th Purchase Order, the October 6th Purchase Order was prominently labeled "Requirements Contract" subject to "Buyer's [Debtors'] General Terms and Conditions."

13. By a letter dated December 3, 2004, Claimant advised Debtors that it was terminating the Matchbox contract. In its December 3, 2004 letter, Claimant acknowledged that it miscalculated its costs to produce the Matchbox product and that "Celestica does not hold Delphi directly accountable …" A true copy of the December 3rd Letter is attached hereto as Exhibit "H."

14. In a response letter dated December 6, 2004, the Debtors insisted that Claimant honor it obligation to deliver firm orders for 83,000 units of the Matchbox. A true copy of the December 6th Letter is attached hereto as Exhibit "I."

15. By a letter dated January 20, 2005, Claimant committed to deliver 83,000 units of the Matchbox at the agreed price of $67.37 per unit and offered to move production of the Matchbox to China provided that the Debtors assure Claimant of future orders for the Matchbox. A true copy of the January 20th Letter is attached hereto as Exhibit "J."

16. The Debtors responded to the January 20th Letter and advised Claimant that the Debtors could not provide Claimant with assurance of future orders for approximately eight weeks. See Exhibit "K."

17. During the first quarter of 2005, the Debtors paid Claimant $340,384 on account of tooling and NRE investment associated with the Matchbox, which amount represented 50% of the agreed tooling and NRE investment. The Debtors also paid Claimant for the approximately 83,000 Matchbox units that were delivered by Claimant to the Debtors in January 2005, which was 4 months after the agreed September 1, 2004 delivery date and too late for the important Christmas '04 launch.

18. By a letter dated June 3, 2005, Claimant demanded payment from the Debtors on account of Claimant's alleged mitigation of damages on account of the

5

Matchbox contract. Specifically, Claimant sought $570,000 for excess materials related to the Matchbox and payment of NRE investment in the amount of $246,798. A true copy of the June 3rd Letter is attached hereto as Exhibit "L."

19. Claimant's suggestion in the June 3rd Letter that the Debtors agreed that they would be liable for excess materials associated with the Matchbox was unsubstantiated and untrue. Accordingly, by a letter dated June 7, 2005, the Debtors denied any liability to Claimant on account of the Matchbox program noting Claimant's cancellation of the program. A true copy of the June 7th Letter is attached hereto as Exhibit "M."

20. On August 2, 2005, Claimant submitted a termination claim to the Debtors totaling $815,440. The termination claim consisted of three components: (a) $246,594 for NRE investment; (b) $78,846 for battery charges; and (c) $490,000 for excess material. A true copy of the August 2nd Termination Claim is attached hereto as Exhibit "N."

21. Claimant is precluded from recovering any damages from the Debtors on account of Matchbox because Claimant unilaterally cancelled the contract that provided for the manufacture and sale of the Matchbox to the Debtors. Its subsequent attempt to perform under its contract failed.

22. Pursuant to Paragraph 11 of the Delphi General Terms and Conditions, the Debtors have no liability to a seller when the seller cancels or threatens to cancel a contract, as Claimant did in this case. As a result, Debtors are not obligated to compensate Claimant for any of the alleged damages associated with Claimant's cancellation of the Matchbox contract. A true copy of Delphi's General Terms and Conditions are attached as Exhibit "O" hereto.

23.     Based upon the foregoing facts, the Matchbox Damage Claims are unsubstantiated and unrecoverable.  Claimant unilaterally terminated the Matchbox program.  Notwithstanding Claimant's termination, the Debtors paid Claimant $340,384 on account of NRE investment.  The Debtors also paid Claimant for the Matchbox units that were eventually delivered by Claimant.  The Debtors have no further liability on account of the Matchbox Damage Claims.

## **RESERVATION OF RIGHTS**

24.     This Statement of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, and 9014 Establishing (i) Dates For Hearings Regarding Objections to Claims and (ii) Certain Notices and Procedures Governing Objections to Claims (Docket No. 6089) (the "Claims Objection Procedures Order").  Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expunction, reduction, or reclassification of the Claims and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expunction, reduction, or reclassification of the Claims.

**[Remainder of page left intentionally blank.]**

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claims, and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
September 14, 2007

DELPHI CORPORATION, *et al.*
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000