ALSTON & BIRD LLP                          **Hearing Date: September 27, 2007, 10:00 am**
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel to Cadence Innovation LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re:**                                                   :    **Chapter 11**
                                                             :
    **DELPHI CORPORATION, et. al.,**                   :    **Case No. 05-44481 (RDD)**
                                                             :
                     **Debtors.**        :    **Jointly Administered**
-------------------------------------------------------------x

### LIMITED OBJECTION OF CADENCE INNOVATION LLC TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) (A) ESTIMATING AND SETTING MAXIMUM CAP ON CERTAIN CONTINGENT OR UNLIQUIDATED CLAIMS AND (B) APPROVING EXPEDITED CLAIMS ESTIMATION PROCEDURES

       COMES NOW Cadence Innovation LLC ("Cadence"), as successor in interest to Patent

Holding Company ("PHC"), and hereby files this Limited Objection (the "Objection")[1] to the

Delphi Corporation, et al.'s (the "Debtors")[2] Motion for Order Pursuant to 11 U.S.C. §§ 105(a)

---

[1]    Nothing herein or otherwise, including, but without limitation, any later appearance, pleading, claim, or action, is intended or shall be deemed to be a waiver, release, or modification by Cadence of its (a) right to have final orders in noncore matters entered after de novo review by a District Judge; (b) right to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to these cases; (c) right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary withdrawal; or (d) other rights, remedies, claims, actions, defenses, setoffs, or recoupments to which Cadence and/or PHC are or may be entitled, all of which are hereby expressly reserved. Cadence further reserves its right to (i) amend or replace this claim as is appropriate, (ii) assert an administrative expense priority claim with respect to its claim for damages arising out of the Debtors' postpetition infringement of the referenced patents, (iii) file a motion for relief from the automatic stay to allow Cadence to proceed with the Action (as defined below) and enforce any judgment rendered, and (iv) seek withdrawal of the reference with respect to any and all claims that Cadence, may bring against the Debtors.

[2]    The Debtors include: Delphi NY Holding Corporation; Delphi Corporation; ASEC Manufacturing General Partnership; Delphi Medical Systems Colorado Corporation; Delphi China LLC; ASEC Sales General Partnership; Delphi Medical Systems Texas Corporation; Delphi Automotive Systems Overseas Corporation; Delphi Automotive

and 502(c) (A) Estimating and Setting Maximum Cap on Certain Contingent or Unliquidated

Claims and (B) Approving Expedited Claims Estimation Procedures (the "Motion") [Docket No.

9297].[3]  In support of this Objection, Cadence shows the Court as follows:

## I.    PRELIMINARY STATEMENT

1.    Cadence objects to the entry of an order approving the estimation procedures set

forth in the Motion because the procedures contemplated by the Debtors are contrary to the

provisions of Section 502(c) of Title 11 of the United States Code (the "Bankruptcy Code"), the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "Local Rules").  First

and foremost, the Motion should be denied because the procedures fail to preserve Cadence's

due process rights.  In particular, the summary procedures contemplated by the Motion do not

take into consideration the complex scientific and technical issues in the Action (defined below).

Second, the Motion should be denied because the procedures contemplated do not require the

Debtors to satisfy their burden of demonstrating that estimation of the Cadence Claims (defined

below) – or any other claim in their cases – is necessary to avoid undue delay in the

administration of their estates or the confirmation of a plan.  Third, the Motion should be denied

because the Debtors improperly seek authority to set a maximum cap with respect to the value of

---

Systems Korea, Inc.; Delphi Automotive Systems International, Inc.; Delphi International Holdings Corp.; Aspire, Inc.; Delphi Connection Systems; Delphi International Services, Inc.; Environmental Catalysts, LLC; Specialty Electronics International, LTD; Delphi Automotive Systems Thailand, Inc.; Delco Electronic Overseas Corporation; Delphi Technologies, Inc.; Delphi Automotive Systems (Holding), Inc.; Exhaust Systems Corporation; Delphi Medical Systems Corporation; Delphi Diesel Systems Corp.; Delphi Integrated Service Solutions, Inc.; Packard Hughes Interconnect Company; Delphi Electronics (Holding) LLC; Delphi Mechatronic Systems, Inc.; Specialty Electronics, Inc.; Delphi Automotive Systems Tennessee, Inc.; Delphi LLC; Dreal, Inc.; Delphi Automotive Systems Risk Management Corp.; Delphi Automotive Systems Services LLC; Delphi Liquidation Holding Company; Delphi Foreign Sales Corporation; Delphi Services Holding Corporation; Delphi Automotive Systems Human Resources LLC; Delphi Automotive Systems Global (Holding) Inc.; Delphi Automotive Systems LLC; Furukawa Wiring Systems LLC; Delphi-Receivables LLC; and MobileAria, Inc.

[3]    Concurrently herewith, Cadence submitted a counterproposal as provided for in the Motion.

- 2 -

the Cadence Claims for all purposes.[4]  Fourth, the Motion should be denied because it fails to explicitly preserve the right to seek reconsideration of any claims estimation in accordance with Section 502(j) of the Bankruptcy Code and Bankruptcy Rule 3008.    At bottom, the overall objective of the proposed procedures is to vest in the Debtors significant (and in some cases, unlimited) discretion to structure the estimation of unliquidated claims to their own advantage or convenience.   While the Motion contemplates that claimants may (i) object to the estimation proposed by the Debtors or (ii) submit alternative estimation proposals, the Debtors do not provide any procedural protections to claimants that they normally would obtain under the Bankruptcy Rules and the Local Rules.  Instead, the proposed procedures provide for summary estimation procedures that fail to contemplate the complexities of the Claims asserted by Cadence.  For all of these reasons, the Motion should be denied, at least insofar as the Claims of Cadence are concerned.

2.    Furthermore, Cadence objects to the Motion because the procedures contemplated therein fail to provide whether the Debtors are also seeking to estimate, Cadence's unliquidated administrative priority claim relating to the Debtors continued postpetition infringement on its patents.  To the extent the Debtors are seeking to estimate the postpetition portion of Cadence's claims, the Motion is improper.

## II.    BACKGROUND

3.    On December 15, 1999, Cadence's predecessor in interest, PHC, commenced an action (the "Action") against Delphi Automotive Systems Corp. ("Delphi") in the District Court for the Eastern District of Michigan, Southern Division (the "District Court") [Case No. 99-76013]

---

[4]    The Motion provides that "under Article 9.8 of the Plan, in no event would any holder of a disputed claim whose claim ultimately might be liquidated in an amount higher than the Maximum Capped Amount for such claim have any recourse with respect to distributions to be made under the Plan to any Debtor or Reorganized Debtor on account of such disputed claim."  Motion p. 11 n.12.

on account of the Debtors' direct and willful infringement[5] of three patents (the "Patents").  In

May 2003, the District Court bifurcated the patent infringement (i.e., the "liability") phase from

the damages and willfulness (i.e., "damages") phase of the action and directed that the Action

first go forward with respect to paradigm claims of the Patents (the "Paradigm Claims") and

Debtors' six paradigm infringing airbag covers.[6]  In bifurcating the damages phase of the Action,

the District Court specifically recognized that it was necessary to determine liability – in the

liability phase – prior to ascertaining damages.

4.    Between April and December 2003, Debtors and PHC briefed and argued their

proposed definitions of the Paradigm Claim terms that the Debtors disputed.  The first hearing on

the Paradigm Claim construction, commonly known as a "Markman" hearing, was held on June

30, 2003.  On December 5, 2003, the District Court ruled in PHC's favor by selecting PHC's

proposed Paradigm Claim definition.

5.    On April 5, 2004, a Special Master issued a recommended Paradigm Claim

construction with respect to 13 remaining issues, ruling in PHC's favor on 11 of the 13.

Subsequently, the Debtors and PHC participated in an oral Markman hearing with respect to the

13 issues before the District Court.  On August 6, 2004, the District Court issued its decision

(dated August 2, 2004) adopting the Special Master's recommended Paradigm Claim

construction in favor of PHC.  Taken together, the Special Master and the District Court ruled in

PHC's favor on virtually all of the disputed Paradigm Claim terms.

6.    On May 2, 2005, PHC formally assigned the Patents to Cadence.

---

[5]    Pursuant to that certain Stipulated Order dated August 15, 2001, Delphi stipulated that they had been on notice of its infringement since October 1997.

[6]    In designating the paradigm claims, Cadence (by its predecessor in interest) expressly reserved its right to assert infringement and/or additional claims with respect to Debtors' infringement of additional patents.

LEGAL02/30528519v1

7.      On October 8 and 14, 2006, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[7]  At the time of the Debtors' bankruptcy filing, the Action was ongoing.  Because the parties had not been able to mediate their dispute, the Final Pretrial Order was scheduled to be submitted to the District Court on March 28, 2006.

8.      Due to the imposition of Section 362 of the Bankruptcy Code, the separate liability phase and damages phase of the Action were stayed.

9.      On January 23, 2007, the Court entered its Order [Docket No. 6699] Granting Cadence's Motion for Relief from the Automatic Stay.  Following the entry of the Court's Order granting Cadence's Motion for Relief from the Automatic Stay, in accordance with that order, the parties attempted to mediate their dispute.  After the parties' mediation proved unsuccessful, the parties have held continued discussions regarding a potential resolution of their dispute.  In addition, concurrently herewith Cadence has submitted a Counterproposal to the Debtors as contemplated in the Motion.

10.      On February 26, 2007, the Court entered an order [Docket No. 7046] approving a stipulation between Cadence and the Debtors whereby the parties agreed that Claim Nos. 10100 and 10111 (the "Cadence  Claims") would remain against Delphi Corporation and Delphi Automotive Systems LLC; provided, however, that to the extent discovery in the Action established that one or more additional Debtors were liable to Cadence, Cadence would not be precluded from maintaining a claim against the liable Debtor or Debtors.

11.      On September 7, 2007, the Debtors filed the Motion wherein they seek to, *inter alia*, estimate the Cadence Claims and set a maximum cap in respect of their proposed plan of reorganization.

---

[7]    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(b) and 1108 of the Bankruptcy Code.

### III.    THE DEBTORS' PROPOSED PROCEDURES

12.    In the Motion the Debtors seek, among other things, to establish procedures for

estimating the Cadence Claims.  The proposed procedures include the following:

- Cadence would be allowed to submit one summary brief, limited to fifteen pages, that summarizes its position with respect to the Debtors' attempt to estimate the Cadence Claims.  Motion ¶ 27.

- In support of its summary brief, Cadence would be limited to two affidavits/declarations in support of its opposition to estimation and/or counter proposal.  Motion ¶ 27.

- To the extent the Debtors' file a brief summarizing its desire to estimate the Cadence Claims, Cadence would be allowed to submit a responsive brief limited to eight pages.  Motion ¶ 27.

- The evidentiary and legal record in respect of the Cadence Claims would be limited to materials contained in Cadence's summary brief, responsive brief, affidavits/declarations and cross examination testimony.  Motion ¶ 28.

13.    These requirements and the Debtors' attempt to impose summary proceedings to

estimate the Cadence Claims violate Cadence's due process rights because they fail to preserve

those rights.  The Action, which was commenced prepetition, has lasted more than four years

because it involves numerous technical/scientific issues concerning the Patents and the need to

introduce technical evidence and expert testimony.  Although the Motion provides that the Court

may allow alternative estimation procedures upon a showing of cause, the procedures should be

denied generally, because the Debtors' proposed procedures fail to even contemplate complex

litigation or complex factual disputes, and the proposed procedures fail to preserve Cadence's

due process rights.

14.    Accordingly, the Motion should be denied to the extent it seeks the use of

summary proceedings to estimate the value of the Cadence Claims – claims that arise out of the

Debtors' willful and intentional decision to infringe the Patents – asserted in the Action.

A.    **The Procedures Set Forth in the Motion Are Improper Because The Summary Nature of The Procedures Are Overreaching and Fail to Preserve Cadence's Due Process Rights**

15.    Section 502(c) of the Bankruptcy Code provides bankruptcy courts with the discretion to establish procedures to estimate the value of contingent or unliquidated claims, for purposes of allowance, when a full adjudication of such claims would unduly delay the administration of the bankruptcy case.  See United States v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997, 1006 (2d Cir. 1991) (noting that a rough estimation of the EPA's claim was necessary to determine its voice in the Chapter 11 proceedings.); In re Cont'l Airlines, Inc., 981 F.2d 1450, 1461 (5th Cir. 1993) (concluding that bankruptcy courts may estimate claims under Section 502(c) of the Bankruptcy Code to (i) avoid the need to await resolution of outside disputes and (ii) promote a fair distribution to creditors through a realistic assessment of uncertain claims).  This discretion is not, however, without boundaries.

16.    Given the impact that estimation may have on a claimant's rights, in determining whether estimation procedures are proper courts evaluate whether the procedures meet general due process requirements.  See In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, (Bankr. S.D.N.Y. 2003); see also In re Hoffinger Indus., Inc., 307 B.R. 112, 117 (Bankr. E.D. Ark. 2004); Beatrice Co. v. Rusty Jones, Inc. (In re Rusty Jones, Inc.), 153 B.R. 535 (N.D. Ill. 1993). Due process is not an inflexible standard, but requires a balancing of interests and a recognition of the circumstances at issue.  Hoffinger, 307 B.R. at 122; see also Rusty Jones, 153 B.R. at 537-38 (determining that the estimation of claims was improper after the court balanced the interests of the parties).

17.    Cadence recognizes that the estimation procedures proposed in the Motion may work for many, if not most, of the claims asserted in the Debtors' bankruptcy cases.  However,

the proposed procedures fail to adequately provide for estimation of complex patent claims such
as those represented by the Cadence Claims.[8]

18.     It is also unclear whether the Court has jurisdiction in respect of the Cadence
Claims because those claims arise out of Cadence's federally protected patent rights.   In
particular, because the Action involves an analysis of federal patent rights, mandatory
withdrawal of the reference will apply.  See Singer Co., B. V. v. Groz-Beckert KG (In re Singer
Co., B.V.), No. 01-0165, 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002).  In Singer, the Court
recognized and concluded that

> Here, withdrawal is mandatory because resolution of the adversary proceeding
> requires substantial and material consideration of domestic patent law, a statutory
> creation. In their complaint, the Singer plaintiffs seek a declaration that they own
> an implied license in Groz's '330 patent. All of the complaint's related bankruptcy
> law issues that follow depend upon whether a court finds that the Singer plaintiffs
> indeed have a property interest in the '330 patent . Thus, the patent law issues are
> central to the complaint."

Id.

19.     In the proposed procedures, the Debtors seek to replace the damages phase of the
Action with a summary estimation procedure that will fully cap Cadence's ability to recover
damages related to the Debtors' direct and willful infringement of the Patents.   Because the
proposed procedures fail to adequately provide for an accurate and proper estimation of the
Cadence Claims and improperly vest jurisdiction over a patent claim before this Court, the
Motion must be denied.[9]

---

[8]    Exhibit A to the Motion indicates that there are only a few unliquidated/unresolved patent claims.

[9]    Moreover, the requirement contemplated in Paragraph 28(d) of the Motion to the effect that "all documents" to
be relied upon by the Claimant in opposition to the objection be attached to the response to the objection, is entirely
inappropriate and without merit.  The documents upon which Cadence will rely are voluminous and many of those
documents may well be in the possession of Delphi.  This attempted limitation on the documents available for use
by any particular Claimant turns the discovery rules on their head and is entirely inappropriate for the patent
litigation at issue in the Action and asserted in the Cadence Claims.

**B.    The Procedures Set Forth in the Motion Are Improper Because They Do Not Require the Debtors to Establish that the Administration of the Case would be Unduly Delayed in the Absence of Estimation**

20.    The Motion should be denied because the Debtors seek the ability to obtain the estimation of <u>any</u> unliquidated claim – in their sole discretion – without demonstrating that undue delay would result if the claims are not estimated.  Pursuant to Section 502(c) of the Bankruptcy Code, "[c]ontingent claims may be estimated if their liquidation 'would unduly delay the administration of the case.'"  <u>See</u> <u>Chateaugay</u>, 944 F.2d at 1006 (quoting 11 U.S.C. § 502(c)); <u>see also</u> <u>In re Statewide Realty Co.</u>, 159 B.R. 719, 725 (Bankr. D.N.J. 1993) (denying debtor's request to estimate claims because (i) confirmation was not dependent on the estimation of the claim and (ii) the allowance of the claim would not alter distributions to unsecured creditors).

21.    The Debtors cannot satisfy their burden of establishing undue delay merely by making generalized and conclusory statements such as those set forth in the Motion.  Section 502(c) requires the Debtors to make a <u>particularized</u> showing as to why undue delay in the administration of their bankruptcy cases would occur in the absence of estimation of claims.[10] <u>See, e.g.</u>, <u>In re Dow Corning Corp.</u>, 211 B.R. 545, 562-74 (E.D. Mich. 1997) (denying motions to estimate tort claims under Section 502(c) of the Bankruptcy code because movant did not establish that there would be undue delay); <u>In re Marvin Johnson's Auto Serv., Inc.</u>, 192 B.R. 1008 (Bankr. N.D. Ala. 1996) (denying estimation of fraud claims because, *inter alia*, no evidence was presented that established that the case would be delayed); <u>Statewide Realty</u>, 159

---

[10]  Recognizing that (i) the claims asserted against the Debtors exceed $36 billion, (ii) the Debtors have global assets of approximately $17 billion, and (iii) the Debtors had net sales of $26.9 billion (in 2005), Debtors will not be able to establish that the Cadence Claims, which total approximately $75 million (assuming treble damages), would unduly delay the confirmation of the Debtors' bankruptcy case or dilute in any significant manner general unsecured claims (including bond and trade claims).

LEGAL02/30528519v1

B.R. 719 (holding that debtor failed to establish that arbitrating dispute that arose out of management would unduly delay its reorganization).

22.     Further, the Debtors bear the burden of establishing that the estimation of a claim is required to avoid undue delay.  See, e.g., Dow Corning, 211 B.R. at 562-74.  In particular, as recognized by the court in Dow Corning, "[w]hen dealing with a motion for estimation, a court starts with a baseline knowledge of what is involved with liquidating a claim.  Therefore, the party moving for estimation must show that the normal mode of liquidating the claim would create undue delay in the bankruptcy process." Id. at 573 (emphasis added).  As a result, the Debtors must be required to make a showing of undue delay at the time they seek to estimate claims, including the Cadence Claims; the Debtors cannot simply decide – in their sole discretion – that estimation is necessary.

23.     On March 31, 2006, the Debtors outlined certain "key" tenets of their transformation plan that the Debtors believe will facilitate the return to stable, profitable business operations and allow the Debtors to emerge from their Chapter 11 cases in the first half of 2007. To complete their restructuring process, the Debtors contend that they must focus on five key areas: (i) modifying their labor agreements to create a competitive arena in which to conduct business; (ii) concluding negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Debtors; (iii) streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; (iv) transforming their salaried workforce to ensure that the Debtors' organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and (v) devise a workable solution to their current pension situation.

- 10 -

24. On September 6, 2007, the Debtors filed their Joint Plan of Reorganization (the "Plan"). In the Motion, the Debtors contend that one condition precedent to the effectiveness of the Plan is that the aggregate amount of certain trade claims and other unsecured claims be allowed or estimated by the Court to be no more than $1.7 billion. Motion ¶ 16. The Motion also contends that the Debtors have worked to reconcile and resolve the claims asserted against them to meet the $1.7 billion cap. Id. Then, in justifying their need for estimating the Cadence Claims, the Debtors assert generally – without any factual support - that they need to estimate certain claims, including the Cadence Claims, to meet the $1.7 billion cap. Motion ¶ 19. Importantly, the Debtors have not provided any evidence in support of its position that the Cadence Claims must be estimated to meet the $1.7 billion cap. In fact, the Debtors have not provided any information with respect to the aggregate amount of the general unsecured claims remaining against their estates. Because the Motion fails to include a provision that would require the Debtors to make a particularized showing of undue delay for the claims they seek to estimate, including the Cadence Claims, the procedures contemplated by the Motion cannot be approved and must be denied.

**C.      The Procedures Set Forth in the Motion Are Improper Because They Seek to Estimate Claims for All Purposes**

25. Section 502(c) of the Bankruptcy Code provides that "[t]here shall be estimated for purposes of allowance under this section -- (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). Section 502(c) does not, however, address what, if any, preclusive effect the bankruptcy court's estimation should have with respect to the amount of the claim on its merits.

LEGAL02/30528519v1

26.    Courts addressing this issue in the Southern District of New York have properly
concluded, however, that a bankruptcy court's estimation of a claim should not be deemed a final
determination of the amount of the claim on its merits. <u>See, e.g.</u>, <u>Adelphia</u>, 341 B.R. at 423
("Estimation thus is an essential prerequisite to confirmation of the Plan.  However, it is not, in
my view, likewise an essential prerequisite to fixing the allowed amount of ACC's admin
claim."); <u>In re Ralph Lauren Womenswear, Inc.</u>, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996)
("This being but an estimation hearing, my findings of fact will not have any preclusive effect
upon the ultimate disposition of [the creditor's] claim . . . due to the fundamental difference
between the adjudication of a claim and its temporary allowance for plan purposes."); <u>United</u>
<u>States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.)</u>, 261 B.R. 800, 808 (B.A.P. 1st
Cir. 2001) ("[W]e proceed with the understanding that the bankruptcy court was estimating the
IRS's administrative tax claim only for the limited purpose of approving the final accounts
subject to the Colorado district court's adjudication of the tax liability."); <u>Nat'l Labor Relations</u>
<u>Bd. V. Greyhound Lines, Inc. (In re Eagle Bus Mfg., Inc.)</u>, 158 B.R. 421, 437 (Bankr. S.D. Tex.
1993) ("[T]he bankruptcy court's estimation does not serve as a cap to the administrative law
judge's ultimate award, if any, for the [claimant's] claim.").

27.    Here, the Debtors request that the Court estimate the amount of claims not only
for purposes of evaluating the feasibility of an unarticulated and unformulated plan of
reorganization, but for all purposes.  In particular, the Motion provides that "under Article 9.8 of
the Plan, in no event would any holder of a disputed claim whose claim ultimately might be
liquidated in an amount higher than the Maximum Capped Amount for such claim have any
recourse with respect to distributions to be made under the Plan to any Debtor or Reorganized
Debtor on account of such disputed claim."  Motion p. 11 n.12.    The Debtors offer no support

for this proposition, nor is it consistent with the Bankruptcy Code, due process, or the authority

addressing the estimation of claims in this district.

28.    Furthermore, as is the case with the Cadence Claims – which assert both a

prepetition general unsecured claim and a postpetition administrative expense claim for the

Debtors' infringement on its patents – if the claim being estimated is an administrative expense

claim, the argument against the finality of an estimation finding is particularly compelling.

29.    In In re MacDonald, 128 B.R. 161 (Bankr. W.D. Tex. 1991),[11] the court was

asked to estimate, pursuant to section 502(c), certain administrative expense claims arising out of

the debtor's purported postpetition tortious conduct.  While the court was willing to "adapt" the

estimation concepts of section 502(c), which "facially applies only to pre-petition claims," 128

B.R. at 165, to an administrative expense claim, the court admonished

> The estimation of post-petition administrative claims is especially sensitive
> because such claims must be paid in full and such payment is a precondition to
> confirmation.  "Guessing wrong," as it were, can result in confirmation of plans
> which should never have been confirmed (where the estimate is too low) or in
> scuttling plans which otherwise could have worked, to the detriment of other
> creditors (where the court overestimates the value of the claim).

Id. at 166.

30.    The MacDonald court further observed that "if a pre-petition claim is estimated

for plan purposes under Section 502(c), it is very likely that the balance of the claim in excess of

the estimated amount is discharged by the plan" because of "the precise language of Section

502(c) itself" (which states that a prepetition claim is estimated for purpose of allowance).  Id. at

167.  In contrast, the court noted:

> Congress certainly intended that post-petition administrative claims be paid in
> full, and that they be paid in advance of pre-petition creditors.  Were the
> estimation process to set the outer limits of allowance for such claims, the due
> process rights of such claimants would be jeopardized . . . .

---

[11]    Cited with approval by the court in Adelphia, 341 B.R. at 423.

Id.

31.     As a result, the court concluded that it was "not bound to blindly apply Section
502(c) and all its legal baggage to post-petition administrative claims," particularly where "to do
so would defeat the legitimate ends of other provisions of the Bankruptcy Code," such as the
requirement that administrative expense claims be paid in full.  Id.  The court reasoned that
"[t]he better rule seems to be that estimation primarily serves to assist the court and parties in
interest in evaluating the feasibility of a given plan under section 1129(a)(11)" but "will not . . .
set the 'outer limits of a claimant's right to recover.'"  Id. at 167-68 (internal quotations omitted).

32.     All the considerations that informed the court's analysis in MacDonald are
equally applicable here.  Accordingly, because the Debtors seek to impose procedures that will
enable the Debtors to estimate Cadence's claims for all purposes, the Motion should be denied.

**D.     The Motion Violates Section 502(j) of the Bankruptcy Code and Bankruptcy
Rule 3008**

33.      The procedures contemplated by the Motion also improperly limit the right of
creditors to seek reconsideration of their claims, by failing to explicitly preserve the rights
conferred by Section 502(j) of the Bankruptcy Code and Bankruptcy Rule 3008.[12]

34.     Section 502(j) of the Bankruptcy Code provides that "[a] claim that has been
allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or
disallowed according to the equities of the case."  11 U.S.C. § 502(j).  Since Section 502(c) of
the Bankruptcy Code allows estimation "for purpose of allowance," these estimations must be
made subject to Cadence's rights to reconsideration under Section 502(j) of the Bankruptcy
Code.  See, e.g., In re MCorp. Fin., Inc., 137 B.R. 219, 226 (Bankr. S.D. Tex. 1992 ("[A]ny
claim estimated under § 502(c) is subject to adjustment per § 502(j) after the claim has been

---

[12]     Although the Motion does not specifically exempt its estimation procedures from Section 502(j) of the
Bankruptcy Code, the summary proceedings contemplated do not provide that this Section is applicable.

LEGAL02/30528519v1

liquidated or the contingency removed."); Woburn Assocs. V. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 8 n.8 (1st Cir. 1992) ("Under Bankruptcy Code § 502(j), the holder of a contingent claim incorrectly estimated at the time of allowance may request reconsideration and the court 'may increase or decrease the amount of [the] prior allowance . . or enter any other appropriate order."). Furthermore, Bankruptcy Rule 3008 provides that: "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." Fed. R. Bankr. P. 3008. Therefore, by failing to provide that Cadence may request reconsideration, the proposed procedures are overreaching.

35.    The Debtors provide no legal basis for depriving Cadence, or other claimants, of their rights under Section 502(j) of the Bankruptcy Code. Therefore, the procedures sought in the Motion cannot be affirmed.

WHEREFORE, for the foregoing reasons, Cadence respectfully requests the following relief:

(i)    That the Court deny, in its entirety, the Motion in respect of the Cadence Claims; and

(ii)    That the Court grant Cadence such other and further relief as is just and proper.

Respectfully submitted this 19th day of September 2007.

ALSTON & BIRD LLP

 /s/ Dennis J. Connolly
Dennis J. Connolly (DC-9932)
David A. Wender (admitted p*ro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel to Cadence Innovation LLC*

LEGAL02/30528519v1