HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7548
E. Todd Sable (P54956)
Lawrence J. Murphy (P47129)
Tricia A. Sherick (P60384)

Attorneys for Lightsource Parent Corporation
 and Guide Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF GUIDE CORPORATION TO DEBTORS' TWENTIETH OMNIBUS OBJECTION PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) DUPLICATE AND AMENDED CLAIMS, (B) INSUFFICIENTLY DOCUMENTED CLAIMS, (C) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (D) UNTIMELY CLAIM [SIC], AND (E) CLAIMS SUBJECT TO MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, MODIFIED CLAIMS ASSERTING RECLAMATION, CONSENSUALLY MODIFIED AND REDUCED TORT CLAIMS, AND LIFT STAY PROCEDURES CLAIMS SUBJECT TO MODIFICATION**

Guide Corporation ("Guide"), by its attorneys, Honigman Miller Schwartz and Cohn LLP, for its Response (the "Response") to Debtors' Twentieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Insufficiently Documented Claims, (C) Claims Not Reflected On Debtors' Books And Records, (D) Untimely Claim [sic], And (E) Claims Subject To Modification, Tax Claims Subject to Modification, Modified Claims Asserting Reclamation, Consensually Modified and Reduced Tort Claims, and Lift Stay Procedures Claims Subject to Modification (the

"Objection")[1] states:

## SUMMARY CONCLUSION

The Objection offers no substantive basis to reject Guide's Proof of Claim; therefore, the Proof of Claim retains its prima facie presumption of validity. Also, Debtor Delphi Corporation, as the assignee of General Motors Corporation's Reimbursement Liability (defined below) for the OPEB Obligations (also defined below) is liable to Guide for the payment of that Reimbursement Liability, as accrued to date and as may be expected to accrue in the future.

To the extent that the Court determines that it should estimate Guide's Proof of Claim amount, as requested by the Debtors in their Motion For Order Pursuant To 11 U.S.C. §§ 105(a) and 502(c)(A) Estimating And Setting Maximum Cap On Certain Contingent Or Unliquidated Claims And Approving Expedited Claims Estimation Procedures (the "Claims Estimation Motion;" Docket No. 9297), the estimate provided in the Response in the amount of $6,001,722 should be used.

## BACKGROUND

Guide timely filed its Proof of Claim in Debtors' bankruptcy cases on July 31, 2006. A copy of the Proof of Claim is attached as Exhibit A to this Response. As detailed in the Attachment to the Proof of Claim, General Motors Corporation ("GM"), Lightsource Parent Corporation ("Lightsource"), and another party, PEP Guide, LLC, entered into an agreement – the Lightsource Formation Agreement (the "LFA") – effective September 29, 1998. A copy of

---

[1] The Objection is to the claim of Guide [Claim 14070] only; however, Guide is the operating affiliate of Lightsource Parent Corporation which has filed a parallel proof of claim [Claim No. 14245] in Debtors' bankruptcy cases. By an email message dated January 3, 2007 from Debtors' counsel to Guide and Lightsource Parent Corporation's counsel, Debtors confirmed that Debtors' Third Omnibus Objection was to be treated as an objection to both claims and that Debtors have no objections to the claim of Guide other than as stated in the earlier objection to the claim filed by Lightsource Parent Corporation and in Debtors' subsequently filed Statement of Disputed Issues regarding that claim. As Debtors have chosen, nonetheless, to separately object to Guide's claim, Guide files this Response.

2

the LFA is attached as Exhibit B to this Response. Pursuant to the LFA, GM agreed to reimburse Lightsource annually for a portion of the cost of certain post-employment benefits (the "OPEB Obligations") provided by Lightsource to its retirees (the "Reimbursement Liability"). GM later assigned its Reimbursement Liability to Debtor Delphi Corporation, then known as Delphi Automotive Systems Corporation ("Delphi"), pursuant to an agreement between GM and Delphi – the Master Separation Agreement ("MSA") dated on or about December 22, 1998 – which MSA incorporated ancillary agreements between and among Delphi, GM, and other parties, including an Employee Matters Agreement ("EMA").[2]

Debtors object to Guide's Proof of Claim solely on the basis that such claim is not recorded as owing on Debtors' books and records. Lightsource has assigned its entitlement to the Reimbursement Liability to its wholly-owned operating subsidiary, Guide. As GM's assignee, Delphi is liable to either Lightsource or Guide for the Reimbursement Liability. To the extent Debtors acknowledge their liability to Guide as the assignee of Lightsource, Lightsource has previously agreed to withdraw its Proof of Claim. However, unless and until Debtors acknowledge such assignment, both Lightsource and Guide will continue to prosecute their respective Proofs of Claim.

Any estimate of Guide's claim pursuant to the Objection, the Claims Estimation Motion, or otherwise, should be in the amount of $6,001,722.

---

[2] Copies of the MSA and its ancillary documents are too voluminous to attach to this Response. Guide believes Debtors possess these documents. Guide will furnish copies to Debtors upon their request, subject to the confidentiality provisions of the Bar Date Order.

3

## ARGUMENT

### I. DEBTORS' ASSERTION THAT ITS BOOKS AND RECORDS DO NOT REFLECT THE REIMBURSEMENT LIABILITY DOES NOT DEFEAT THE PRIMA FACIE VALIDITY OF GUIDE'S PROOF OF CLAIM

Debtors' assertion that their books and records do not reflect the Reimbursement Liability does not, by itself, defeat the prima facie validity of Guide's Proof of Claim for the Reimbursement Liability under Fed. R. Bankr. P. 3001(f). As explained in *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992):

> A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. This evidentiary presumption remains in force even though an objection to the claim is filed by a party in interest. To overcome this prima facie effect, the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim. Only then is the ultimate burden of persuasion with the proponent of the claim.

Internal citations omitted. Debtors have failed to bring forth any substantive evidence refuting the existence and validity of Guide's claim. "A proof of claim is strong enough to carry over a mere formal objection, i.e., an objection which simply asserts that the claim is invalid . . . ." *In re Fisher Holding Co., Inc.* 12 B.R. 193, 195 (Bankr. S.D. Ind. 1981). Absent some hard evidence brought forth by Debtors to support their Objection, Guide's Proof of Claim retains its prima facie presumption of validity.

### II. DEBTORS ARE LIABLE TO GUIDE FOR THE REIMBURSEMENT OF A PORTION OF THE COST OF CERTAIN POST-EMPLOYMENT BENEFITS PROVIDED BY GUIDE TO ITS RETIREES

Pursuant to Section 6.7.1D of the LFA, Lightsource, and, thereafter, its assignee Guide, agreed to provide certain hourly and salaried employees with GM-comparable post-employment, i.e., retiree health care and life insurance benefits. Included in this class of employees were individuals who transferred their employment from GM to Guide (collectively the "Transferred

4

Employees," and individually a "Transferred Employee") as part of the LFA transactions.[3] Pursuant to Section 6.7.1E of the LFA, GM agreed to reimburse Lightsource annually for a portion of the cost of the OPEB Obligations. Section 6.7.1E of the LFA sets forth the basis for the computation of GM's Reimbursement Liability for each Transferred Employee on a *pro rata* basis measured by the period of that individual's employment with GM as compared to his or her combined period of employment with GM and Lightsource (here, operationally, with Guide).

Section 14.3 of the LFA permits GM to unilaterally assign the Reimbursement Liability for the OPEB Obligations to "Delphi Automotive"[4] as part of any GM divestiture of that operating unit, provided that Delphi Automotive agrees in writing to the assignment of the liability. Pursuant to the MSA, GM divested Delphi Automotive and its related business units in December of 1999. As part of the divestiture, pursuant to the MSA and EMA, GM assigned the Reimbursement Liability for the OPEB Obligations to Delphi. Delphi agreed in writing to this assignment in both the MSA and EMA.

Since the assignment, Delphi has incurred Reimbursement Liability to Guide because the OPEB Obligations have been provided to the Transferred Employees as required by the LFA. The incurred Reimbursement Liability is due and owing. In the future, Delphi will also incur additional Reimbursement Liability on the OPEB Obligations as they accrue on account of its continued provision of the OPEB Obligations to the Transferred Employees.

---

[3] Excluded from this group of employees were individuals eligible for or already receiving GM retiree benefits, i.e., individuals (i) who were eligible to retire from GM on the closing date of the LFA on a normal or early retirement basis with post-retirement health care and life insurance benefits, or (ii) who took retirement on a normal, early, voluntary, or disability basis under GM's hourly or salaried pension plans prior to October 1, 1999 with eligibility for employer contributions for post-retirement health care and life insurance benefits; or (iii) who were hourly "returned" (to GM) employees eligible for post-retirement health care and life insurance benefits. *See* LFA at Sections 6.1A, 6.7.1C, and 6.7.1D.

[4] "Delphi Automotive" was a unit of GM at the time the LFA was entered into by GM, Lightsource and the other parties to the LFA.

The provision of the OPEB Obligations through Guide, Lightsource's operating subsidiary, is proper under the LFA. That agreement permits Lightsource to implement its covenants and operate the divested GM business in the corporate structure most suitable to Lightsource. Because Lightsource was and is a holding company with no active business operations, Lightsource transferred the assets of the divested GM business to Guide, its wholly-owned operating company, as the proper vehicle to operate the divested business, employ the Transferred Employees and provide the retiree health care and life insurance benefits to them when they retire.

### III. TO THE EXTENT THE COURT DECIDES TO ESTIMATE THE CONTINGENT AND/OR UNLIQUIDATED PORTIONS OF GUIDE'S PROOF OF CLAIM, SUCH ESTIMATE SHOULD BE AS CALCULATED IN THIS RESPONSE

As of the filing of Guide's Proof of Claim, Delphi owed Guide approximately $1,018,302 in Reimbursement Liability, representing Delphi's *pro rata* share of certain of the OPEB Obligations incurred by Guide, with respect to the salaried Transferred Employees who retired and began receiving benefits under the applicable retiree health care and life insurance plans. This claimed amount was for the period January 1, 2003 through June 30, 2006.

Subsequent to the filing of its Proof of Claim, Guide obtained updated data for the Reimbursement Liability incurred through more recent dates. The total estimated amount of Guide's claim is $6,001,722.

For salaried employees, the updated data indicate that Delphi owes Guide $1,357,336 in Reimbursement Liability, representing Delphi's *pro rata* share of certain of the OPEB Obligations incurred by Guide with respect to the salaried Transferred Employees who retired and received benefits (including benefits received by covered dependants) under the applicable retiree health care and life insurance plans over these periods:

6

    a.    Medical claims from January 1, 2001 to December 31, 2006.

    b.    Prescription drug claims from January 1, 2002 to December 31, 2006.

    c.    Dental claims from January 1, 2001 to December 31, 2006.

These incurred amounts for salaried Transferred Employees do not include amounts prior to or after the indicated dates (up through March 17, 2007, the termination date for all of Guide's retiree programs constituting the OPEB for all of its salaried employees), nor do they include amounts for any incurred vision, Medicare Part B premium payments, or life insurance claims. Delphi is liable to Guide for any such incurred amounts outside of the indicated dates.

For hourly employees, the updated data indicate that Delphi owes Guide $2,960,559 in Reimbursement Liability, representing Delphi's *pro rata* share of certain of the OPEB Obligations incurred by Guide with respect to the hourly Transferred Employees who retired and received benefits (including benefits received by covered dependants) under the applicable retiree health care and life insurance plans over these periods:

    a.    Medical claims from January 1, 2001 to December 31, 2006.

    b.    Dental claims from January 1, 2001 to December 31, 2006.

These incurred amounts for hourly Transferred Employees do not include amounts prior to or after the indicated dates (up through January 19, 2007, for all OPEB Obligations other than retiree life insurance), nor do they include amounts for any incurred dental, vision, Medicare Part B premium payments, or life insurance claims. Delphi is liable to Guide for any such incurred amounts outside of the indicated dates.

The data supporting these revised incurred amounts are set forth in two reports (the "Mercer Reports") prepared by Mercer Human Resource Consulting on March 6, 2007, at the request of Guide. The Mercer Reports are attached as Exhibits C and D to this Response.

7

On the basis of the data contained in the Mercer Reports, Guides estimates the additional incurred amounts for the salaried and hourly OPEB Obligations for periods prior to and after the date ranges for the data in the Mercer Reports to total $1,673,827.

Also subsequent to the filing of its Proof of Claim, Guide significantly reduced its exposure to future, as yet unliquidated and contingent, Reimbursement Liability for Delphi's share of the OPEB Obligations to be incurred by Guide with respect to its salaried and hourly Transferred Employees. Specifically:

a. There is no future, as yet unliquidated and contingent, Reimbursement Liability as to Guide's salaried Transferred Employees. Effective March 17, 2007, Guide terminated all of its retiree programs constituting the OPEB Obligations for all of its salaried employees.

b. There is no future, as yet unliquidated and contingent, Reimbursement Liability as to Guide's hourly Transferred Employees. Effective January 19, 2007, GM entered into a memorandum of understanding with the union representing Guide's hourly bargaining unit employees that transfers to GM and its hourly retiree programs the responsibility to provide Guide's hourly Transferred Employees retiree programs in place of the Guide retiree programs that constitute the OPEB Obligations.

## **REPLY**

Any reply to this Response should be addressed to the following individual:

E. Todd Sable
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7548

## AUTHORITY TO SETTLE

The contact information for the person(s) who possess ultimate authority to reconcile, settle, or otherwise resolve the objection to Guide's claim is as follows:

> Jim Connor
> Guide Corporation
> 1530 Jackson Street
> Anderson, IN 46016
> (765) 683-9610

## CONCLUSION

The existence and validity of Guide's Proof of Claim is supported by the LFA, MSA and EMA, and by the provision of retiree health care and life insurance benefits – the OPEB Obligations – to the Transferred Employees who are in (and who will be in) retirement status. Further, absent any substantive basis in support of Debtors' Objection, Guide's properly filed Proof of Claim remains prima facie evidence of the validity and amount of Guide's claim. Guide's Proof of Claim should be allowed in the amount of $6,001,722. Guide requests that the Court deny the Objection, allow Guide's Proof of Claim in the amounts requested, and grant Guide such other relief as is just and equitable.

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Dated: September 19, 2007

By: ___/s/ E. Todd Sable___
E. Todd Sable (P54956)
Lawrence J. Murphy (P47129)
Tricia A. Sherick (P60384)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: (313) 465-7548
Facsimile: (313) 465-7549
Email: tsable@honigman.com

Attorneys for Lightsource Parent Corporation
and Guide Corporation

DETROIT.2791694.5