Thomas M. Kennedy (TK-0993)  
Susan Jennik (SJ-4607)  
Larry Magarik (LM-3748)  
KENNEDY, JENNIK & MURRAY, P.C.  
113 University Place  
New York, NY 10003  
(212) 358-1500  

Omnibus Scheduled Hearing Date:  
September 27, 2007 10:00 am  
Objection Deadline:  
September 20, 2007  

Attorneys for International Union of Electronic,  
Electrical, Salaried, Machine and Furniture Workers,  
Communications Workers of America (IUE-CWA)  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  

| | |
|---|---|
| In re: | ) |
| | )    **Chapter 11** |
| In re DELPHI CORPORATION, *et al.*, | ) |
| | )    **05-44481 (RDD)** |
|            Debtors. | )    **(Jointly Administered)** |

**OBJECTION BY IUE-CWA TO  
THIRD SUPPLEMENTAL KECP MOTION**

The International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America ("IUE-CWA"), a labor union representing thousands of active and retired hourly employees of Delphi Corporation, *et al.* ("Debtor" or "Delphi"), hereby objects to Debtor's Third Supplemental Key Employee Compensation Program Motion ("Third KECP Motion") to extend the Annual Incentive Plan ("AIP") program through the second half of 2007. For the second time, Debtors have filed their AIP motion well into the period for which incentive compensation is being sought. A pattern has emerged in which the Debtors wait until almost one half of the way through the relevant period before obtaining approval for their incentive target. Delphi seeks to ratify performance targets with half of the results already in and the rest easily projected. Given the long lead time for orders in the

automotive industry, there is very little or no doubt that the performance targets set forth in this edition of the KECP will again be met. As we pointed out in our objection to the last AIP approval motion, Delphi is putting down a bet on a horse race at the top of the stretch when most of the race is won. It can have little impact on the race contestants and is rather a gratuitous addition to the purse that will have no incentive impact.

This proposed AIP program also for the first time utilizes metrics that directly reward executives for the wage and benefit cuts reluctantly accepted by Delphi's unionized work force. The prior AIP motions utilized an earnings metric described as EBITDAR-UG in which the corporate earnings attributable to union concessions "U" and General Motors support "G" were excluded from corporate earnings for purposes of calculating any bonuses. While we are confident that General Motors can take care of itself, the deletion of the "-U" metric ( which is only acknowledged by omission in the Delphi motion) is a matter of concern for the IUE-CWA. It is unfair and counterproductive to demoralize the existing workforce by exploiting their sacrifices and this demoralization will hinder Delphi's reorganization.

The Motion should be denied or deferred until the conclusion of this Chapter 11 proceeding.

## Standard

The proposed Third Supplemental KECP Motion should not be approved unless the Court finds that it is "necessary or appropriate to carry out the provisions" of Chapter 11 under 11 U.S.C. § 105(a). Additionally, since the proposed KECP expenditure is admittedly outside the "ordinary course of business," the Court may not approve it without an evidentiary hearing and findings of fact under 11 U.S.C. § 363(b)(1). The burden of proof is upon the Debtor to

2

demonstrate "good business justification" that the KECP is "necessary to aid the reorganization." **In re Lionel Corp.**, 722 F.2d 1063, 1070 (2d Cir. 1983); **In re Ionosphere Clubs, Inc.**, 100 BR 670, 675 (Bankr. SDNY 1989). Additionally, Debtor must actually demonstrate good faith in the proposed transaction, **In re M Capital Corp.**, 290 BR 743, 747 (9th Cir. BAP 2003), *cf.* **In re Adams Apple, Inc.**, 829 F.2d 1484 (9th Cir. 1987), particularly here where the proposed compensation package is directed toward insiders and would amount to self-dealing, **The Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.**, 147 BR 650, 657 (Bankr. SDNY 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (business judgment rule incorporates question of whether proposal is "tainted by self-dealing or manipulation").

Additionally, "Implicit in the grant of authority of 11 U.S.C. § 363(b)(1) . . . is the further requirement that the . . . debtor . . . justify the proposed transaction with sound business reasons in order to satisfy the estate representative's fiduciary duty to the debtor, creditor, and equity holders. Thus, . . . a bankruptcy judge must expressly find from the evidence presented at the hearing a sound business reason justifying the proposed transaction." Bassano, Joseph M., *et al.*, 9B **Am.Jur.2d Bankruptcy** § 1539 (August 2005) and cases cited therein. The Court of Appeals in **In re Lionel Corporation**, *supra* at 1071, rejected a proposed distribution and held that a bankruptcy judge must "expressly find from the evidence presented before him at the hearing a good business reason to grant such an application." **Lionel** held that the critical factor is the impact on a plan of reorganization, and reiterated that the burden of proof is on the debtor in such an application. The District Court in **In re Integrated Resources**, 147 BR 650, 657 (Bankr. SDNY 1992), explained that a Court should itself assess the merits and fairness of a business transaction such as this one involving a management proposal in which the

corporation's executives have direct financial interests. In the context of proposed payments to the top corporate insiders, "good faith" is a necessary element of inquiry, 2C **Bankr. Service L.Ed** (September 2005) § 20:119 and cases cited therein; **In re Gucci**, 126 F.3d 380, 390 (2d Cir. 1997).

Finally, "[i]t is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." **In re Momentum Mfg. Corp.**, 25 F.3d 1132, 1135 (2d Cir. 1994); Norton, William L., 1 **Norton Bankr. L. & Prac. 2d** § 4:5 (July 2005); **In re Charles & Lillian Brown's Hotel Inc.**, 93 BR 49, 54 (Bankr. SDNY 1988); **In re Amarex Inc.**, 30 BR 763, 767 (Bankr. W.D. Okla. 1983) (Bankruptcy Court is a court of equity which may, in its discretion, deny even that relief which is within its power to grant based on equitable principles.)

The Third Supplemental KECP Motion does not meet these standards and should be denied or deferred for the following reasons:

### Objections

1. **Approval of theThird KECP Motion Will Hinder Creation of a Viable Reorganization Plan By Demoralizing the Existing Work Force.**

Approval of an AIP which offers 467 top executives $37.6 millions of dollars in bonus money for hitting easily obtainable operating income targets will reduce the incentive of the remaining Delphi union-represented workers to work productively under their drastically modified collective bargaining agreements with Debtor. Delphi continues to employ thousands of employees who have had drastic cuts in their compensation and benefits. It will demoralize those employees to simultaneously reward the corporate executives who have not taken similar

cuts in their base compensation. The Motion will, therefore, not aid, but defeat the possibility of a reorganization plan.

It is noteworthy that Delphi appears to have dropped the "UG" portion of its EBITDAR-UG metric that governed the incentive metrics in prior AIP periods. (See Motion Paras 7 and 10). In other words, the current AIP motion for the first time will reward executives directly based on the reduction of headcount and reduced employee wages and benefits achieved in the recent collective bargaining agreements. That is a direct and naked transfer in wealth from these workers to top corporate management. At a minimum, the IUE-CWA contents that the motion should be denied until the target metrics are again expressed as EBITDAR - U in which savings wrung from Delphi employees are excluded from the bonus calculations.

The prerequisite for approving such a Motion is a finding that it would "help develop a reorganization plan," **In re Bethlehem Steel Corp.**, ___ F.Supp.2d ___, 2003 WL 21738964 at *11 (SDNY 2003). An executive plan that is regarded as blatantly unfair by Delphi's workforce will not help develop a reorganization plan; instead it will hinder such a plan from being successful.

2.   **The Motion Should Be Deferred to the End of Chapter 11 Proceeding.**

The Motion, which seeks to reward executives for carrying through a successful Chapter 11 reorganization, should be denied or deferred to the end of the Chapter 11 proceeding. Pegging these bonuses to easily reached targets turns this program into a simple KERP retention plan in which executives are rewarded for the mere act of breathing. A successful conclusion to the Chapter 11 process is the logical prerequisite for a bonus or reward. That is especially true

now when the Debtor has stated it expects to exit the Chapter 11 proceeding in 2007. Bonuses under the proposed second half 2007 AIP would not be paid until 2008 in any event. There is no need to further compensate these executives in 2008 when they plan to be out of Chapter 11 in 2007 and can set their own compensation programs in accord with their reasonable business judgment at that time.

3. **The Motion is Neither Necessary, Appropriate Nor Sound Business Judgment, But is Arbitrary and Unreasonable.**

The Motion is neither necessary, appropriate nor the exercise of sound business judgment. Rather, it is selfish, arbitrary and unreasonable. The shortsightedness of the original KECP Motion was given eloquent expression in a timely article, Morgenson, Gretchen, "Oohs and Ahs At Delphi's Circus," *New York Times Sunday Business*, November 13, 2005, Section 3, pp. 1 and 4, 2005 WLNR 18334017, which began as follows:

> It's not every day that investors can view the contortions performed by compensation consultants trying to justify the monster executive pay packages that they recommend to corporate clients. And when these exercises in absurdity are done for executives asking for great sacrifices from workers, retirees, creditors and former shareholders because they manage a company in Chapter 11 bankruptcy protection, the entertainment is unmatched.

Any claim of "business necessity" for this disguised KERP is belied by the actual history of executive retention programs, as detailed by Keach, Robert J., "The Case Against KERPs," **American Bankruptcy Institute 2003 Annual Spring Meeting**, 041003 ABI-CLE 9 (2003). The empirical evidence establishes that there is no evidence that executive retention programs actually result in the retention of employees who would otherwise leave, while there is considerable evidence to the contrary. These programs do not work better than cheaper

alternatives and are often unnecessary. They are upside down, because in fact the senior-most executives are the <u>most</u> replaceable. Executive retention programs have a negative impact on employee morale, and breed a lack of faith in and lack of respect for the bankruptcy system, the study found.

In short, the Third Supplemental KECP Motion is unreasonable and aimed at feathering the nests of Debtor's key insiders. The bottom-line question is why Debtor's top executives should not face the same choice and same risks as are being posed to all of Debtor's other employees and on the other constituents in this proceeding such as creditors.

## Conclusion

For the foregoing reasons, the Motion should be denied, modified to eliminate the union concession metric or deferred until the completion of the Chapter 11 proceeding.

**Dated: New York, New York**
**September 20, 2007**

> Respectfully submitted,
> KENNEDY, JENNIK & MURRAY, P.C.
> Attorneys for IUE-CWA
>
> _/s/ Tom Ke_____
> Thomas M. Kennedy (TK-0993)
> Susan M. Jennik (SJ-4607)
> 113 University Place
> New York, NY 10003
> (212) 358-1500

**AFFIDAVIT OF SERVICE**

State of New York    )
                     ) ss.:
County of New York   )

Joan Esposito, being duly sworn, deposes and says that: I am not a party to the action, am over 18 years of age, and reside in Kings County, New York. On September 20, 2007 I served the within Objection by IUE-CWA to Third Supplemental KECP Motion by mailing a copy via overnight mail to the following:

Robert J. Rosenberg, Esq.
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, New York 10022-4834

Alicia Leonhard, Esq.
U.S. Department of Justice
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004-2111

Kayalan A. Marafioti, Esq.
Thomas J. Matz, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
4 Times Square
New York, New York 10036

Delphi Corporation
c/o Sean Corcoran and Karen Craft
5725 Delphi Drive
Troy, MI 48098-2815

John W. Butler, Jr.
John K. Lyons
Ron E. Meisler
Nick D. Campanario
Skadden, Arps, Slate, Meagher & Flom, LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

Jessica Kastin
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Bruce H. Simon, Esq.
Cohen, Weiss & Simon
330 West 42nd Street
New York, NY 10036

Jeffrey L. Tanenbaum
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

_____
JOAN ESPOSITO

Sworn to before me this
20th day of September, 2007.

_____
Notary Public

SUSAN M. JENNIK
Notary Public, State Of New York
No. 4764982
Qualified in New York County
Commission Expires 7/8/10