Heinz Binder (CA 87908)
Wendy W. Smith (CA 133887)
Binder & Malter
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408) 295-1700
Facsimile:   (408) 295-1531

Andrew L. Margulis, Esq.
Ropers, Majeski, Kohn & Bentley
17 State Street, Suite 2400
New York, New York 10004
Tel:  212-668-5927
Fax: 212-668-5929

Attorneys for Creditor, Technology Properties Ltd.

Hearing Date and Time: September 27, 2007, 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In Re | ) | CASE NO. 05-44481 (RDD) |
|---|---|---|
|  | ) |  |
|  | ) | Chapter 11 |
|  | ) |  |
| DELPHI CORPORATION, et al. | ) |  |
|  | ) |  |
|  | ) |  |
| Debtors. | ) |  |

**Objection by Technology Properties, Ltd. to
Motion by Debtor for Order Estimating and Setting Maximum Cap on Certain Contingent
or Unliquidated Claims and Approving Expedited Claims Estimation Procedures**

A.   Introduction:

1.     Technology Properties, Ltd., ("TPL") hereby objects to the motion filed by the Debtor in this action entitled "Motion for Order Pursuant to 11 U.S.C. §§105(a) and 502(c), (a)Estimating and Setting Maximum Cap on Certain Contingent or Unliquidated Claims and (b) Approving Expedited Claims and Estimation Procedure (the "Claims Estimation Motion").  TPL

further offers an alternative estimation of its pre-petition claim and, if that alternative estimation is not accepted, asks the Court to set a different claims estimation procedure than that requested by the Debtor.

2.  TPL filed a timely general unliquidated claim in the Delphi bankruptcy cases for the infringement on the group of registered patents known as the Moore Microprocessor Patent™ portfolio (the "MMP Portfolio").  A true and correct copy of the proof of claim against Delphi Corporation is attached as Exhibit A to the Declaration of Wendy W. Smith in Support of Objection by Technology Properties, Ltd. to Debtor's Claims Estimation Motion ("Smith's Declaration"), filed herewith. The MMP portfolio protect certain basic integrated-chip technologies that TPL believes are widely used in designing microprocessors, DSPs, embedded processors and "system-on-chip" solutions.  The validity and applications of the patented technologies are evidenced in part by the fact that over 20 major manufacturers have obtained licenses.[1]   TPL had informed Delphi prior to its bankruptcy petition of the likely infringement, and is informed the Delphi had received previous notice of the issue from TPL's predecessor in interest. (Smith's Declaration, Exhibit "B".)

3.  In November of 2006, the Debtor filed an objection to the TPL claims without any factual support.  The only basis for the objection was that TPL's claim was not in the Debtor's books and records.  In response to the Debtor's claim objection, TPL provided the Debtor with extensive documentation supporting the validity of the MMP Portfolio and the basis for the believed patent infringement.  TPL provided at that time a list of products that it believed were infringing.[2]   While the Debtor made no substantive response to the extensive support

---

[1] They include: HP, Fujitsu, Casio, Sony, Nikon, Seiko, Epson Pentax, Olympus, Kenwood, Agilent, Lexmark, Schneider Electric, NEC Corporation, Funai Electric, SanDisk, Sharp Corporation, Nokia, Bull, LEGO Group, and Denso Wave

[2]  A copy of the document describing the believed infringing products is attached as Exhibit C to Smith's Declaration .

provided by TPL for its claim, it did agree to remove TPL's claim from the accelerated claims-objection procedure.

4. From the outset of this bankruptcy, TPL has made repeated efforts to contact the Debtor in an effort to negotiate a resolution of both TPL's pre-petition claim, and its claim for ongoing infringement during the bankruptcy. (Smith's Declaration, paragraph 5.) Not withstanding TPL's repeated efforts to arrange meetings, a mediation, and exchange of information, the Debtor made no effort to address the substance of the TPL patent claim. In a further effort to negotiate a resolution to this matter, TPL provided yet more documentary support for its claim in August of 2007, with the understanding that Delphi would review that information and arrange a meeting between the principals of the parties. (Smith's Declaration paragraph 5.) Instead, the Debtor filed this estimation motion requesting that TPL's claim be estimated at zero.

5. The Claims Estimation Motion provides no evidence whatsoever to support its request to estimate the TPL claim at zero. Rather, the "estimate" appears to be simply the Debtor's effort to eliminate a claim so that it can meet the requirements of its proposed plan of reorganization to reduce all unliquidated and disputed claims to a maximum cap of $1.7 Billion.

B. <u>The True Goal of the Claims Estimation Motion is to set the amount of TPL's claim for all purposes, a request beyond the scope of Section 502(c).</u>

6. As a preliminary matter, it must be noted that the Claims Estimation Motion is, in fact, a motion to set TPL's claim for all purposes. The Motion states it is "not seeking a final resolution of the claims for the purposes of allowance" (Claims Estimation Motion, Page 11, Paragraph 20.) It states that the Debtor is only seeking estimation for the purpose of voting tabulation and "setting appropriate reserves" for the Plan. This statement is false.

7. The Motion seeks, rather, to set a "cap" on the estimated claims. In a footnote it is revealed that the targeted claim holder would not be able to recover more than the "capped

amount" from either the fund set aside for distribution <u>or from the Debtor or the reorganized Debtor</u>. (Claims Estimation Motion, Page 11, Footnote 12.)  Under these terms, the targeted creditor is barred forever from recovering the true value of its claim should it exceed the "estimated" amount.  In the case of TPL's claim, of course, the "cap" is zero.  Thus the effect of the request is to disallow TPL's claim for all purposes without the Debtor even presenting enough evidence to dispute the *prima facia* validity of the TPL's original proof of claim.[3]

8. The Bankruptcy Code does not set forth the mechanism by which a claim that has been estimated under Section 502 should be paid once the actual amount of the claim is determined.  Several courts, however, have opined that the estimation process, particularly as it may be quite abbreviated, cannot be the final determination of the amount of the claim on the merits.  *See e.g. In re: Ralph Lauren Womenswear, Inc.* 197 B.R. 711, 775 [stating that the estimation would not have any preclusive effect on the ultimate disposition of the creditors claim]; *Nat. labor Relations Bd. v. Greyhound Lines, Inc. (In re Eagle Bus Mfg. Inc.)* 158 B.R. 421, 437 (Bankr. S.D. Tex 1993).  Preserving a creditor's right to recover on the merits of its claim is particularly important in this case, where the funds proposed to be distributed under the plan include a distribution to equity holders.  Should the "estimation" preclude recovery by the targeted creditor of its true claim once determined, the effect would be to pay equity holders before the Debtor pays all of its debt.  This appears to violate the absolute priority rule and would prevent confirmation of the plan.  11 U.S.C. §1129(a)(7).

9. One can only speculate that the Debtors effort to disguise the true purpose of the Motion was to encourage the Court to implement a more accelerated procedure than the Court would otherwise require if it concluded that the estimation hearing would, in fact, be a final determination of the value of the claim.  Therefore, should the Debtor reject TPL's alternative

---

[3] The Debtor never provided any evidence to support its original objection to the Delphi claim. See Response to Objection to Claims of Technology Properties, Ltd. filed November 21, 2006.

estimation and request a hearing, both the procedure of the hearing and the hearing itself must be granted the attention appropriate for setting the allowed value of a claim.

C.  TPL Rejects the Debtor's Estimation and Offers and Alternative.

10. TPL rejects the estimation of the TPL Claim at zero for any purpose.

11. The Claims Estimation Motion offers that a creditor that is not satisfied with the proposed estimate may submit an alternative estimate for the "maximum capped amount," meaning, as a practical matter, an estimate of the maximum value of the allowed claim. TPL offers that the cap for the TPL Claim for all of the Debtor corporations' liabilities for their pre-petition infringement of the MMP portfolio be set at $ 4,144 million.[4]

12. This offer, if it is accepted, is for the amount of the allowed pre-petition claim only. It would have no effect in any other context, including determining TPL's administrative claim for ongoing infringement during the bankruptcy. This offer is in no way an admission of the Debtor's actual liability for pre-petition infringement of the MMP Portfolio.[5] Finally, as has been repeated, TPL is eager to engage in direct negotiations with the Debtor regarding all of the infringement issues. Such negotiations would be undertaken in full consideration of the Debtor's financial condition and its proposed plan of reorganization.

D.  If the Debtor Rejects TPL's Proposal, TPL Objects to the Debtor's Proposed Expedited Hearing Procedure as Inadequate for the Estimation of any Patent Infringement claim.

13. Except for the Debtor's unsupported claim-objection, the Debtor has ignored this claim for over a year, refusing to negotiate a resolution or, apparently, to even review the documentation that has been provided by TPL. Indeed, at one point representatives for the Debtor stated outright that the Debtor did not have time to address TPL's or other unliquidated

---

[4] This estimate is based on Delphi's published financial statements. It does not include additional liability arising from indirect infringement, penalties, interest or attorney's fees.

[5] TPL is confident that in the due course of full patent litigation in which TPL would be able to conduct complete discovery regarding the sales by Delphi of infringing products, TPL would be able to establish the full amount of the liability within the range set forth in its proof of claim.

claims. (Declaration of Wendy W. Smith, paragraph 5.) Only now that the Debtor seeks to confirm the Plan does it seek an accelerated procedure to establish the amount and validity of TPL's claim.

14. While a court has discretion to establish the procedure for the estimation of a claim in a bankruptcy proceedings, the procedure cannot be arbitrary. In determining whether estimation procedures are proper courts must determine whether the procedures meet general due process standards. *In re Adelphia Busines Solutions, Inc.* 341 B.R. 415, 422 (Bankr S.D.N.Y 2003) [where the court notes particularly that due process must be preserved where the claim is estimated for allowance purposes].

15. Furthermore, in the Southern District of New York, the courts have determined that an estimation of an unliquidated claim should generally not be made on a "all or nothing" basis, as appears to be the Debtor's position. *See Thomson McKinnon Securities, Inc.* 191 B.R. 976, 989-990 (Bnkr. S.D.N.Y.1996). Rather, the court must receive enough information to assess not only the starting position of the two parties, but the range of possible results if the matter were to be fully litigated. The court in *Thomson McKinnon Securities* describes the estimation process:

> An estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by a probability that it may be sustainable only in part or not at all....Recognizing that the magnitude of recovery is to a large extent dependant on the individual background of the trier of fact, what we are given to deal with is a range of possible awards which we must first turn to a range of possible awards running from zero to the full amount of the claim. An expected value can then be found by multiplying the number of possible recovery values by the probability of their occurrence in taking the sum of those products.

*In re Thomson McKinnon Securities, Inc. Supra* 191 BR at 990 quoting *Windsor Plumbing Supply Supra* BR at 521 citing *In re Windsor Plumbing Supply Co., In*c. 170 BR 503 (Bankr.

E.D.N.Y 1994); *accord, In re Adelphia Communications Corp.* 168 B.R. 140, 279 (Bankr. S.D.N.Y 2007).

16. In order for this court to make even a rough estimation of TPL's patent infringement claims against the Debtor, the court must receive enough information so that it can understand the nature of the claim, the nature of any defense (although none has yet to be presented), and make an assessment of the likelihood that either party's version might or might not be accepted by the trier of fact. As the Debtor has never put forth the nature of is opposition to the claim, there is no way to anticipate the time needed to for TPL to respond to it.

17. The Debtor has proposed an estimation trial with only a 20-day notice and two declarations, with live testimony limited to cross-examination. As is set forth in the extensive documentation provided to the Debtor, TPL believes that the Debtor uses or sells over 25 different infringing products. The hearing procedure that the Debtor's will not allow TPL to provide adequate information to the Court for it to make even the roughest assessment of the patent-infringement claim. The proposed procedure certainly is not adequate to address what ever actual defenses may be presented by the Debtor. In order to properly assess what procedure would be appropriate to estimate the claim, TPL asks the Court to set a further hearing at which it will set the procedure for any estimation trial. TPL further requests that the Court require the Debtor provide TPL at least 20 days before that hearing a full description of the basis of its objection, and allow TPL to provide a response at which it can then set forth the time and witnesses need for an estimated trial based on the Debtors actual objections.

E. Conclusion

18. The Debtor's only goal at this point is to reduce the total amount of the unliquidated and disputed claims to a maximum of $1.7 Billion so that it may confirm a plan. It cannot, however, be allowed to simply sweep TPL's claim (and the claims of the other creditors

that are the target of this motion) under the carpet on order to confirm a plan.  TPL is entitled to have a fair estimation process.

19.    Finally, as has been repeated in every pleading and correspondence from TPL in the Delphi matter, TPL remains ready to engage in negotiations with Delphi regarding both Delphi's liability for prior infringement of the MMP Portfolio and license for ongoing use.

Respectfully Submitted,

Dated:  September 20, 2007                    BINDER & MALTER, LLP


By:    /s/ Wendy W. Smith
    Wendy W. Smith (CA 133887)
    2775 Park Ave
    Santa Clara, Ca 95050
    Attorneys for Technology Properties, Ltd.

F:\Clients\TPL-Delphi\Pleading\Ojbection to Estimation Motion.doc