BODMAN LLP
Ralph E. McDowell (P39235) (Admitted Pro Hac Vice)
*rmcdowell@bodmanllp.com*
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592

Attorneys for Comerica Leasing Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____/

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

_____/

### OBJECTION AND COUNTERPROPOSAL OF COMERICA LEASING CORPORATION TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) (A) ESTIMATING AND SETTING MAXIMUM CAP ON CERTAIN CONTINGENT OR UNLIQUIDATED CLAIMS AND (B) APPROVING EXPEDITED CLAIMS ESTIMATION PROCEDURES

Comerica Leasing Corporation ("Comerica"), states the following in support of its objection and counterproposal to Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Estimating and Setting Maximum Cap on Certain Contingent or Unliquidated Claims and (B) Approving Expedited Claims Estimation Procedures ("Claims Estimation Motion"):

1.      On October 8, 2005, Delphi and various affiliates and/or subsidiaries (collectively "Debtors") filed a petition for relief under chapter 11 of the United States Bankruptcy Code.

2.      General Motors Corporation ("GM") entered into a Lease Agreement (GM 91A-5) and Lease Supplements (GM 91A-5A and 91A-5C) (collectively, the "Lease") with the Connecticut National Bank as Owner Trustee dated September 27, 1991 with respect of certain

equipment. Comerica is the Owner Participant under a Participation Agreement also dated September 27, 1991. GM assigned its interest in the Lease and related documents ("Lease Documents") to Debtor Delphi Automotive Systems, LLC ("Automotive Systems") under a lease assignment dated May 28, 1999 ("Lease Assignment"). A copy of the Lease Assignment is attached as Exhibit A.

3.     On July 28, 2006, Comerica filed its proof of claim against Automotive Systems in an amount of not less than $2,314,557, plus interest, fees and costs as provided in the Lease Documents. [Claim No. 12177] ("Automotive Systems Claim"). Because the filing requirements for claims were unclear, on July 28, 2006, Comerica also filed its proof of claim against Delphi Corporation in an amount of not less than $2,314,557, plus interest, fees and costs as provided in the Lease Documents [Claim No. 12176] ("Delphi Corporation Claim"). The Automotive Systems Claim and Delphi Corporation Claim both state expressly that Comerica only seeks one recovery and that proof of claim was filed in multiple cases because the bar date notice was unclear as to in which case to file the claim. In the Automotive Systems Claim and Delphi Corporation Claim, Comerica asserted that Debtor Delphi Automotive Systems was in default under the Lease Documents. Comerica and Debtor Delphi Automotive Systems have been working to resolve that dispute under the procedures outlined in the Lease Documents.

4.     On April 27, 2007, Debtors filed its Twelfth Omnibus Objection [Docket #7824] under which they sought to expunge the Automotive Systems Claim in its entirety because, it argued, the Automotive Systems Claim was a duplicate claim. In its response filed on May 24, 2007 [Docket #8028] ("Response"), Comerica stated that it did not object to the expunging of the Delphi Corporation Claim, provided, however, that Debtors should be barred from asserting as a defense to the Automotive Systems Claim that the Automotive Systems Claim was asserted

against the incorrect Debtor. Comerica also asserted that its claim is properly against Automotive Systems because Automotive Systems is the assignee under the Lease Agreement. The Response has not yet been heard.

5.      In the Claims Estimation Motion, Debtors seek to estimate and set a maximum cap on the Delphi Corporation Claim in the amount of $2,314,557.00 and the Automotive Systems Claim in the amount of $0.

6.      The Response is proceeding under the procedures outlined in the Debtors' Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007 and 9014 Establishing (I) Dates for Hearing Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims (the "Claim Objection Procedures Order" [Docket No. 6089].

7.      The procedures proposed in the Claims Estimation Motion conflict with those of the Debtors' Claim Objection Procedures Order. The Claims Estimation Motion is an improper attempt to circumvent the Response and the Claim Objection Procedures Order.

8.      As Comerica stated in both the Automotive Systems Claim and the Delphi Corporation Claim, Comerica's claim is against Automotive Systems because Automotive Systems is the assignee under the Lease Assignment. Comerica does not object to Debtors estimating the Delphi Corporation Claim at $0 and the Automotive Systems Claim at $3,464,557 ($2,314,557.00 plus accrued and accruing interest and costs). Comerica proposes an interest and fee reserve of $1,150,000.00. The Claims Estimation Motion, however, is not acceptable to Comerica because it wrongly estimates the Automotive Systems Claim at $0.

-3-

9.    Additionally, the estimation procedures outlined in the Claims Estimation Motion violate Comerica's due process rights because they fail to preserve those rights. The proposed procedures fail to take into account the dispute resolution procedures that are applicable under the Lease Documents. Specifically, Debtor Delphi Automotive Systems and Comerica have agreed to certain arbitration proceedings under the Lease Documents. The proposed estimation procedures would possibly supersede the arbitration provisions under the Lease Documents. Though this Court has the discretion to establish procedures to estimate the value of contingent or unliquidated claims, for purposes of allowance when a full adjudication of such claims would unduly delay case administration, this Court should also evaluate whether the procedures meet general due process requirements. *See In re Adelphi Bus. Solutions, Inc.*, 341 BR 415 (Bankr SDNY 2003). The proposed procedures are not adequately tailored to address the factual disputes that may arise under the Lease Documents with respect to the value of the leased equipment and the proper measure of damages due to Comerica because the default under the Lease Documents.

10.    Any reply to this Objection should be addressed to the following:

Ralph E. McDowell
Bodman LLP
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592
(313) 393-7579 (fax)
rmcdowell@bodmanllp.com

11.    The contact information for persons who possess the authority to reconcile, settle or otherwise resolve the Claims Estimation Motion to the claim on behalf of Comerica is:

Ralph E. McDowell

-4-

Bodman LLP
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592
(313) 393-7579 (fax)
rmcdowell@bodmanllp.com

12.    Comerica reserves all of its rights and remedies under the Lease, Lease Documents and Lease Assignment, including without limitation, Comerica's right to possession of the equipment, Comerica's rights against GM as a guarantor under the Lease, and the right to enforce the arbitration provisions contained in the Lease Documents, and nothing in this Response constitutes or should be construed to waive those or any other rights.

### RELIEF REQUESTED

Comerica requests that the Court deny the relief requested under the Claims Estimation Motion as to the Delphi Corporation Claim and Automotive Systems Claim.

Dated: September 20, 2007                    BODMAN LLP

By:____/s/____Ralph E. McDowell_____
Ralph E. McDowell (P39235)
(Admitted Pro Hac Vice)
Attorneys for Comerica Leasing Corporation
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592
*rmcdowell@bodmanllp.com*

-5-

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing ***Objection and Counterproposal of Comerica Leasing Corporation to Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 502(c) (A) Estimating and Setting Maximum Cap on Certain Contingent or Unliquidated Claims and (B) Approving Expedited Claims Estimation Procedures*** was electronically filed using the Court's CM/ECF filing system, and that a true and correct copy of the same was served via Federal Express to the parties identified below:

Delphi Corp.
5725 Delphi Drive
(Attn: General Counsel)
Troy, Michigan 48098

Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
(Attn: John Wm. Butler, Jr.; John K. Lyons, Joseph N. Wharton)
Chicago, Illinois 60606

and

The Honorable Robert D. Drain
United States Bankruptcy Judge
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
Room 610
New York, New York 10004

/s/ Ralph E. McDowell
Ralph E. McDowell

Dated:  September 20, 2007

Detroit_795494_2

**EXHIBIT A**

## LEASE ASSIGNMENT (GM 91A-5)

This LEASE ASSIGNMENT is entered into as of May 28, 1999, by and between General Motors Corporation, a corporation organized and existing pursuant to the laws of the State of Delaware, as assignor (together with its successors and assigns, the "Lessee"), and Delphi Automotive Systems LLC, a limited liability company organized and existing pursuant to the laws of the State of Delaware (together with its successors and assigns, the "Assignee").

WHEREAS, the Lessee has heretofore entered into Lease Agreement GM 91A-5 and Lease Supplements GM 91A-5A and 91A-5C (collectively, the "Lease") with The Connecticut National Bank (the successor in interest to which is State Street Bank and Trust Company), not in its individual capacity except as expressly provided therein, but solely as Owner Trustee (the "Owner Trustee"), dated as of September 27, 1991, in respect of, among other things, the Items of Equipment listed on Schedule 1 hereto (the "Transferred Equipment").

WHEREAS, the Lessee has agreed to assign all of its interest in the Transferred Equipment to the Assignee and the Assignee has agreed to accept all of Lessee's obligations under the Lease and the other Operative Documents, in each case with respect to the Transferred Equipment only.

WHEREAS, the Lessee, the Owner Trustee, Manubank Leasing Corp. (the successor in interest to which is Comerica Leasing Corporation), as Owner Participant and the other parties named therein have entered into a Participation Agreement (GM 91A-5) dated as of September 27, 1991 (the "Participation Agreement") pursuant to which, among other things, the Lessee sold to the Owner Trustee and the Owner Trustee purchased from the Lessee all of Lessee's right, title and interest in respect of the Transferred Equipment.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein and for other good and valuable consideration, the parties hereto agree as follows:

1. Definitions. For purposes of this Lease Assignment, capitalized terms used by not defined herein shall have the meanings assigned to them in Appendix A (such definitions to be equally applicable to both the singular and plural forms of the terms defined) to the Participation Agreement, except that the term "Operative Documents" as used in this Lease Assignment shall not include the Pass Through Trust Agreements. Any term defined by reference to an agreement, instrument or other document shall have the meaning so assigned to it whether or not such document is in effect. Unless otherwise indicated, references in this Lease Assignment to sections,

paragraphs, clauses, appendices, schedules and exhibits are to the same contained in
or attached to this Lease Assignment.

2.  <u>Assignment</u>.  The Lessee has assigned, transferred and set over and does hereby
assign, transfer, and set over unto the Assignee all of the Lessee's right, title and
interest in and to the Lease and the other Operative Documents, in each case with
respect to the Transferred Equipment only.

3.  <u>Assumption</u>.  The Assignee hereby assumes, and covenants and agrees to pay,
perform and discharge, all of the obligations of the Lessee in respect of the
Transferred Equipment arising or accruing from and after the effective date of this
Agreement under the Operative Documents to which the Lessee is a party and each
other contract, agreement, document or instrument hereby assigned to the Assignee,
and all of the obligations of the Lessee in respect of the Transferred Equipment
arising or accruing from and after the effective date of this Agreement.  The Assignee
hereby confirms that in respect of the Transferred Equipment it shall be deemed a
party to the Operative Documents to which the Lessee is a party and each such other
contract, agreement, document and instrument, and that it shall be bound by all the
terms thereof applicable to the Transferred Equipment as if therein named as the
Lessee.  The assignment and assumption effected by this Agreement shall not release·
the Lessee from its obligations under the Operative Documents to which the Lessee is
a party or any such other·contract, agreement, document or other instrument, except to
the extent such obligations are expressly assumed by the Assignee pursuant to this
Section 3.

4.  <u>Appointment as Attorney-in-Fact</u>.  In furtherance of the assignment effected by this
Agreement, the Lessee hereby constitutes and appoints the Assignee the true and
lawful attorney of the Lessee, with full power of substitution, in the name of the
Assignee or in the name of the Lessee but on behalf of and for the benefit of and at
the expense of the Assignee, to collect for the account of the Assignee all items sold,
transferred or assigned to the Assignee pursuant to this Agreement; to institute and
prosecute, in the name of the Lessee or otherwise, but at the expense of the Assignee,
all proceedings that the Assignee may deem proper in order to collect, assert or
enforce any claim, right or title of any kind in or to the items so sold, transferred or
assigned; to defend and compromise at the expense of the Assignee any and all
actions, suits or proceedings as to the title to or interest in any of the property so
acquired by the Assignee; and to do all such acts and things in relation thereto at the
expense of the Assignee as the Assignee shall reasonably deem advisable.  The
Lessee hereby acknowledges that this appointment is coupled with an interest and is
irrevocable by the Lessee in any manner or for any reason or by virtue of any
dissolution of the Lessee.

5.  <u>Payments</u>.  The Lessee hereby convenants and agrees to pay over to the Assignee any
amounts (including any sums payable as interest in respect thereof) received by it
that, under Section 3, belong to the Assignee, and the Assignee hereby covenants and

2

agrees to pay over to the Lessee any amounts (including any sums payable as interest thereof) received by it that, under Section, belong to the Lessee.

6. <u>Further Assurances</u>. The Lessee shall, at all times and from time to time, upon the request of the Assignee, promptly and duly execute and deliver any and all such further instruments and documents and take such further action as the Assignee may reasonably request to obtain the full benefits of this Agreement and of the rights and powers herein granted.

7. <u>Representations and Warranties</u>. The Assignee represents and warrants, in each case solely with respect to the Transferred Equipment, that:

> (a)    it has all the requisite power and authority and legal right to enter into and carry out the transaction contemplated by this Agreement and to carry out and perform the obligations of the Lessee under the Operative Documents, and, upon giving effect to the transfer being effected hereby, it will not be in breach of any covenant, agreement or condition required to be performed or observed by the Lessee in the Operative Documents;

> (b)    on and as of the date hereof, the representations and warranties of the Lessee set forth in Section 10 of the Participation Agreement are true and correct as to the Assignee, provided, however, that with respect to Sections 10(a)(i) and 10(a)(ii), such representations and warranties are deemed to recognized the Assignee's organization as a Delaware limited liability company;

> (c)    the transfer to it of all of the Lessee's right, title and interest as Lessee will not violate any provision of, or create a relationship that would be in violation of, any Applicable Law; and

> (d)    the transfer to it of all of the Lessee's right, title and interest as Lessee will not involve, either directly or indirectly, the assets of any plan that would cause a violation of any provision of ERISA or the imposition of an excise tax under the Code.

8. <u>Governing Law</u>. This Agreement shall in all respects be governed by and construed in accordance with the domestic laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

9. <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

3

10. <u>Notices</u>.  All notices and other communications provided for hereunder shall be in writing (including telex or telegraphic communication) and mailed, telexed, telegraphed, or delivered to each party at the addresses set forth in the Participation Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

GENERAL MOTORS CORPORATION,
    As Lessee

By:_____

Name: Vikram Luthar

Title:   Director, Capital Planning

DELPHI AUTOMOTIVE SYSTEMS LLC,
    As Assignee

By:_____

Title:_____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

GENERAL MOTORS CORPORATION,
As Lessee


By:_____

Title:_____


DELPHI AUTOMOTIVE SYSTEMS LLC,
As Assignee


By: _____ *John Blabent* _____
Title: *VICE PRESIDENT AND TREASURER*

5

## Schedule 1

### Lease Supplement No.  GM 91A-5A

| Brass Tag # | Description of Equipment | Lessor's Cost |
|---|---|---|
| 105107 | Drum Lathe | $ 661,443 |
| 105108 | Drum Lathe | $ 661,443 |
| 105109 | Drum Lathe | $ 661,443 |
| 105522 | Drum Lathe Conveyors | $ 184,683 |
| 104222 | Pinion Flg. Lathe | $ 344,508 |
| 105222 | S/T Tube Machine | $ 882,352 |
| 105223 | S/T Tube Machine | $ 882,352 |
| 104786 | WERTH CNC Lathe | $ 538,512 |

### Lease Supplement No.  GM 91A-5C

| Brass Tag # | Description of Equipment | Lessor's Cost |
|---|---|---|
| WHG098307C | Transfer Machine | $ 9,820,734 |

6



**General Motors Corporation**
**Legal Staff**

· **Facsimile**
(313) 974-0685

**Telephone**
(313) 974-1969

May 28, 1999

The First National Bank of Chicago,
        as Indenture Trustee
One North State Street
Chicago, Illinois  60602

Comerica Leasing Corporation (as successor to Manubank Leasing Corp.),
        as Owner Participant
29201 Telegraph Road
Southfield, Michigan  48034

Ladies and Gentlemen:

I hold the position of Attorney on the Legal Staff of General Motors Corporation, a Delaware corporation ("GM").  This opinion is being delivered pursuant to Section 14 of the Lease Agreement (GM 91A-5) dated as of September 27, 1991 between The Connecticut National Bank, a national banking association, as Owner Trustee, and GM, as Lessee; and Lease Supplement (GM 91A-5A) and Lease Supplement (GM 91A-5C) thereto (collectively, the "Lease Agreement"), in connection with the Lease Assignment with respect to certain of the Equipment by and between GM and Delphi Automotive Systems LLC (the "Lease Assignment").

In my examination, I have assumed the genuineness of all signatures (other than signatures of officers of GM), the legal capacity of all natural persons, the authenticity of all documents submitted to me as originals, the conformity to original documents of all documents submitted to me as certified or photostatic copies, and the authenticity of the originals of such copies.  In making my examination of documents executed by parties other than GM, I have assumed that such parties had the power, corporate or otherwise, to enter into and perform all obligations thereunder and have also assumed the due authorization by requisite action, corporate or otherwise, and the execution and delivery by such parties of such documents and that such documents constitute legal, valid and binding obligations of such parties enforceable in accordance with their terms.  As to any facts material to this opinion which were not independently established or verified, I have relied upon oral or written statements and representations of GM and its officers and other representatives and of public officials.

May 28, 1999
Page 2

In rendering the opinions set forth herein, I have examined and relied on originals or copies, certified or otherwise identified to my satisfaction, of the following:

a) the Participation Agreement (GM 91A-5) dated as of September 23, 1991 among General Motors Corporation, as Lessee, Manubank Leasing Corp. (the successor in interest to which is Comerica Leasing Corporation), as Owner Participant, The Connecticut National Bank (the successor in interest to which is Fleet National Bank), as Owner Trustee, and The First National Bank of Chicago, as Pass Through Trustee (the "Participation Agreement");

b) the Lease Agreement;

c) the Lease Assignment (GM 91A-5);

d) the Guaranty of Lease Assignment (GM 91A-5) by GM dated as of May 28, 1999 (the "Assignment Guaranty");

e) the Trust Agreement;

f) the Equipment Notes;

g) the Guaranty;

h) the Tax Indemnity Agreement; and

i) such other documents as I have deemed necessary or appropriate as a basis for the opinions set forth below.

Capitalized terms used herein and not otherwise defined herein shall have the respective meanings set forth in Appendix A to the Participation Agreement. The Lease Assignment and the Assignment Guaranty shall be collectively referred to herein as the "Assignment Agreements."

Based upon the foregoing and on further examination of such other documents, corporate records and matters of laws as I have deemed relevant or advisable, and subject to the assumptions and qualifications set forth herein, it is my opinion that:

1. GM is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, and has all requisite corporate power and authority to perform its obligations under the Assignment Agreements and the Operative Documents to which GM is a party. GM is duly qualified as a foreign corporation and is in good standing under the laws of the States of Michigan and Ohio.

2. The execution, delivery and performance by GM of the Assignment Agreements and of each of the Operative Documents to which it is a party have been duly authorized by all

May 28, 1999
Page 3

necessary corporate action, and do not require any approval of stockholders or approval or consent of any trustee or holders of any material indebtedness or obligations that has not been obtained prior to the date hereof.

3. Each of the Assignment Agreements and the Operative Documents to which GM is a party constitutes a valid and binding obligation of GM, enforceable against GM in accordance with its respective terms.

4. With reference to the federal laws of the United States of America, the laws of the State of Michigan and the General Corporation Law of the State of Delaware, the execution, delivery and performance by GM of the Assignment Agreements and of each of the Operative Documents to which it is a party, and the consummation of the transactions provided for therein, do not and will not (a) require any Governmental Action or (b) contravene, violate, or constitute a default under any such laws, except to the extent that the failure to obtain such Governmental Action or such contravention, violation, or default does not and will not have a material adverse effect on GM and its subsidiaries taken as a whole, or the legality, validity, or enforceability of the Assignment Agreements or the Operative Documents to which GM is a party.

5. The Assignment Agreements and each of the Operative Documents to which GM is a party have been duly authorized, executed, and delivered by GM.

6. There is no action, suit, or other proceeding pending or, to our knowledge, threatened against GM before Governmental Authority which might materially and adversely affect the legality, validity, or enforceability of the Assignment Agreements or any Operative Document or the ability, financial or otherwise, of GM to perform its obligations under the Operative Documents, other than as set forth in GM's most recent Annual Report on Form 10-K and Quarterly Report on Form 10-Q filed pursuant to the Securities and Exchange Act of 1934, as amended.

7. The execution and delivery by GM of the Assignment Agreements and the Operative Documents to which GM is a party, the consummation by GM of the transactions contemplated therein and in the manner contemplated therein, and compliance by GM with the respective terms thereof, do not and will not conflict with, or result in a breach of, any of the terms or provisions of, or constitute a default under, the Restated Certificate of Incorporation or the Bylaws, as amended, of GM, or any material indenture or other material agreement or instrument to which GM is a party or by which GM is bound.

8. Each amendment to the Financing Statements is in the proper form for filing under the Uniform Commercial Code of the State of Michigan.

9. Assuming the amendments to the Financing Statements are duly accepted for filing in the office of the Secretary of State of Michigan and all required filing fees are paid, the security interest in each Indenture Estate in form of the Indenture Trustee for the benefit

May 28, 1999
Page 4

of the Holder of the Equipment Note is perfected to the extent such security interests can be perfected by the filing of financing statements, as amended, in the State of Michigan.

The trustee of a duly and validly created trust may legally hold title to personal property under the laws of the State of Michigan.

My opinions are subject to the following further qualifications:

      A.    Enforcement of the Assignment Agreements and the Operative Documents may be limited by bankruptcy, insolvency, reorganization or similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity, whether considered in courts of law or equity;

      B.    Enforcement of the Assignment Agreements and the Operative Documents may be limited by the effect of laws and judicial decisions which have imposed duties and standards of conduct (including, without limitation, obligations of good faith, fair dealing and reasonableness);

      C.    I have assumed the correctness of the underlying facts in the certificates which the officers have certified to the best of their knowledge or otherwise and of the representations and warranties contained in the Assignment Agreements and the Operative Documents.

I am admitted to practice in the State of Michigan, and I express no opinion with respect to the laws of any jurisdiction other than the laws of the State of Michigan, the General Corporation Law of the State of Delaware, and the federal laws of the United States.

This letter is limited to the specific issues addressed herein and the opinions rendered above are limited in all respects to laws and facts existing on the date hereof. By rendering this opinion, I do not undertake to advise you with respect to any other matter or of any change in such laws or facts or in the interpretations of such laws that may occur after the date hereof.

This letter is furnished by the benefit of the parties to which it is addressed and is not to be used, circulated, quoted in whole or in part or otherwise relied upon or referred to (except in a list of closing documents).

Very truly yours,

Anne T. Larin
Attorney

# KIRKLAND & ELLIS

PARTNERSHIPS INCLUDING PROFESSIONAL CORPORATIONS

Citicorp Center
153 East 53rd Street
New York, New York 10022-4675

To Call Writer Directly:
(212) 446-4800

212 446-4800

Facsimile:
212 446-4900

May 27, 1999

Comerica Leasing Corporation
29201 Telegraph Road
Southfield, MI 48034
Attention:  Michael MacMichael

Ladies and Gentlemen:

We have been retained as special tax counsel to General Motors Corporation ("GM"), a Delaware corporation, in connection with the assignment (the "Assignment") by GM of all of its rights with respect to certain Equipment, as defined in Appendix A to that certain Participation Agreement (GM 91A-5) dated as of September 23, 1991 (the "Participation Agreement"), by and between GM, Comerica Leasing Corporation, successor in interest through merger with Manubank Leasing Corporation, as Owner Participant (the "Owner Participant"), the First National Bank of Chicago, as Indenture Trustee and Pass Through Trustee, and the Connecticut National Bank, as Owner Trustee, to Delphi Automotive Systems LLC ("Delphi"), a Delaware limited liability company and an indirect subsidiary of GM.  The items of Equipment subject to the Assignment are listed on Exhibit A attached hereto.

Any capitalized term used but not otherwise defined herein shall have the meaning given such term in the Participation Agreement.

We have reviewed (i) the Participation Agreement, (ii) the Lease Agreement, (iii) the Lease Supplements delivered on the First Delivery Date (GM 91A-5A and GM 91A-5B) and the Second Delivery Date (GM 91A-5C), (iv) the Tax Indemnity Agreement, (v) the form of Lease Assignment attached as Exhibit B to the Lease Agreement, (vi) the Form of Guaranty of Lease Assignment attached as Exhibit C to the Lease Agreement, and (vii) such other documents as we have considered necessary or appropriate to enable us to render the opinion expressed below.  We have not, however, undertaken any independent investigation of any factual matter set forth in any of the foregoing.

We have also assumed for purposes of this opinion that (i) the Assignment will be effected pursuant to an agreement between GM and Delphi substantially in the form attached as Exhibit B to the Lease Agreement, (ii) GM will guarantee the obligations of Delphi pursuant to a

Chicago                    London                    Los Angeles                    Washington, D.C.

## KIRKLAND & ELLIS

Comerica Leasing Corporation
May 27, 1999
Page 2

guaranty substantially in the form attached as Exhibit C to the Lease Agreement, (iii) the Assignment will otherwise be in compliance with all conditions imposed by Section 14 of the Lease Agreement (other than the U.S. federal income tax opinion requirement imposed by the last sentence thereof), and (iv) the Equipment subject to the Assignment will be used for the same purpose and in the same manner by Delphi as it was used by GM and will continue to qualify as 7-year property within the meaning of Section 168(e)(1) of the Internal Revenue Code of 1986, as amended.

Based on the foregoing and subject to the qualifications stated herein, in our opinion the Assignment taken by itself will have no unindemnified adverse U.S. federal income tax consequences to the Owner Participant (other than adverse tax consequences that are expressly excepted from indemnification by the Tax Indemnity Agreement, including, without limitation, under Section 5(d) or 5(e) thereof).

Our opinion is limited to the specific issue addressed above and is limited in all respects to the laws and facts existing on the date hereof. By rendering our opinion, we do not undertake to advise you of any changes in such laws or facts which may occur after the date hereof.

This letter is furnished to you pursuant to Section 14 of the Lease Agreement and is not to be used, circulated, quoted or otherwise relied upon by any other person or entity or for any other purpose.

Very truly yours,

*Kirkland & Ellis*

KIRKLAND & ELLIS

cc:    John J. Maggio, Esq.

I:\TAXATTYS\GMIMCO\leaseop2.599

**Exhibit A**

Lease Supplement No.  GM 91A-5A
Delivery Date:          September 27, 1991
Original Site:          Buffalo, NY

| Brass Tag # | Description of Equipment |
| --- | --- |
| 105107 | Drum Lathe |
| 105108 | Drum Lathe |
| 105109 | Drum Lathe |
| 105522 | Drum Lathe Conveyors |
| 104222 | Pinion Flg. Lathe |
| 105222 | S/T Tube Machine |
| 105223 | S/T Tube Machine |
| 104786 | WERTH CNC Lathe |

Lease Supplement No.  GM 91A-5C
Delivery Date:          December 19, 1991
Original Site:          Saginaw, Michigan

| Brass Tag # | Description of Equipment |
| --- | --- |
| WHG098307C | Transfer Machine |