**Hearing Date and Time: September 27, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
          In re                           :      Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :      Case No. 05-44481 (RDD)
                                          :
                      Debtor.             :      (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO ARKEMA INC.'S MOTION
FOR LEAVE TO FILE LATE CLAIM

("OBJECTION TO ARKEMA INC.'S MOTION FOR LEAVE TO FILE LATE CLAIM")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby object (the "Objection") pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), to Arkema Inc.'s Motion For Leave To File Late Claim (Docket No. 9272) (the "Motion").    In support of this Objection, the Debtors submit the Declaration Of Noticing Agent Regarding Service Of Notice Of Bar Date On Arkema Inc., executed and sworn to by Eric Kurtzman, Chief Executive Officer of Kurtzman Carson Consultants LLC ("KCC"), the noticing agent in these chapter 11 cases, on September 20, 2007 (the "Kurtzman Declaration"), a copy of which is attached hereto as Exhibit A.    In further support of this Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1.    On April 12, 2006, this Court entered the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) and Fed.R.Bankr.P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order") setting July 31, 2006 as the bar date in these chapter 11 cases (the "Bar Date").    On September 6, 2007, the Debtors filed their Disclosure Statement and Plan of Reorganization ("Plan") (Docket Nos. 9264 and 9253, respectively).    The Plan is contingent on certain trade claims and other unsecured claims being allowed or estimated for distribution purposes by this Court to be no more than $1.7 billion.    This amount was determined following negotiations between the Debtors, the plan investors who are supporting the Plan, the statutory committees appointed in these cases, and other major stakeholders.    These parties agreed on this amount based on an analysis of the over 16,000 proofs of claim that were timely filed by the Bar Date.

2.        Arkema Inc. ("Arkema") did not file a proof of claim before the Bar Date.

By the Motion, Arkema requests that this Court allow it to file a late claim in these chapter 11

cases.  Arkema acknowledges that it received notice of the Bar Date (the "Bar Date Notice"), and

in fact has acknowledged receiving nine copies of it.  Arkema asserts that did not understand the

information provided in the Bar Date Notices that it received, and therefore believed that it had a

scheduled claim that was not contingent, unliquidated, or disputed.  Arkema's misunderstanding

of the Bar Date Notices, however, was not reasonable and cannot establish excusable neglect to

justify a late claim.

3.        The Debtors mailed the Bar Date Notice and proof of claim forms to,

among others, all creditors that were listed on its Schedules Of Assets And Liabilities (the

"Schedules") and to all entities that had potential claims against the Debtors (which lists were

combined to form the "Creditor Matrix").   Where the Debtors' records reflected multiple

addresses, or slightly different names for a particular entity, the Bar Date Notice was served on

each of these names and addresses separately.  <u>See</u> Kurtzman Decl. at 3.  With this process, the

Debtors sought to be as thorough as possible in providing notice of the Bar Date to all potential

claimants.

4.        Because the Debtors had record of multiple Arkema entities, Arkema

received nine copies of the Bar Date Notice, along with nine proof of claim forms.  Six of the

Bar Date Notices were sent because Arkema and its related entities were listed on the Debtors'

Creditor Matrix, as entities with potential claims against the Debtors.  The proof of claim forms

attached to these Bar Date Notices were blank, because they were not tied to any entity listed on

the Schedules.  Three of the Bar Date Notices were sent because Arkema and its affiliate,

Atofina Chemicals, Inc. ("Atofina"), were listed on the Schedules.  The proofs of claim attached

to these three Bar Date Notices noted the amount and classification of the scheduled liability.

One Bar Date Notice was directed to:

> Atofina Chemicals Inc
> 2000 Market St
> Philadelphia PA 19103

(the "Atofina Notice").  The proof of claim form attached to the Atofina Notice included the

following text:

> The Debtor has listed your claim as Unliquidated and Disputed on Schedule F as a
> General Unsecured claim in the amount of $33,043.50.  If you believe that you
> have a claim against the Debtor, you are required to complete and return this form.

5.      In addition, the Bar Date Notice itself, a form that was approved by this

Court, explained in at least two instances, that an entity need not file a proof of claim only if its

claim "is not listed as 'disputed,' 'contingent,' or 'unliquidated' in the Schedules."  See Bar Date

Notice, attached as Exhibit B at ¶¶ 4(a), 8.  The Bar Date Notice also directed, "[t]o determine if

and how you are listed on any of the Schedules, please refer to the descriptions set forth on the

enclosed proof of claim forms."  See Bar Date Notice at ¶ 8.  Finally, the Bar Date Notice

explains that "*copies of the Debtors' Schedules* are available for inspection online at

http://www.delphidocket.com."  See Bar Date Notice at ¶ 8 (emphasis added).

6.      The fact that Arkema received the Bar Date Notice but did not read all of

the documents it received or did not understand what steps were necessary to assert a claim does

not constitute excusable neglect.  Arkema was represented by counsel.  Moreover, the Bar Date

Notice was in a form approved by this Court and explained the steps required to file a claim.

Arkema has not pointed to any exceptional circumstances justifying its failure to file a proof of

claim and warranting relief under Rule 9006(b).  If additional claims, such as Arkema's, are

permitted at this time, the $1.7 billion estimate of the value of certain general unsecured claims,

which the Debtors and key constituents have relied upon in formulating the Plan, could be

undermined.  This would significantly prejudice the Debtors and threaten their ability to emerge

from chapter 11 pursuant to the Plan.  Accordingly, the Motion should be denied.

<u>Argument</u>

B.      Arkema Has Not Met Its Burden Of Proof For Establishing Excusable Neglect Under
        <u>Bankruptcy Rule 9006(b)</u>

        7.      Because Arkema received the Bar Date Notice, it was obligated to follow

the procedures referenced therein to file a proof of claim, or risk having its claim barred.

Arkema did not file a proof of claim in these cases until doing so simultaneously with the Motion.

        8.      Arkema cannot meet its burden to establish excusable neglect.  <u>See</u> <u>In re</u>

<u>R.H. Macy & Co., Inc.</u>, 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993) ("the burden of proving

'excusable neglect' is on the creditor seeking to extend the bar date").  The United States

Supreme Court has outlined factors to be considered in determining whether there is excusable

neglect on the part of the moving party.  In examining whether a creditor's failure to file a claim

by the bar date constituted excusable neglect, the Supreme Court found that the factors include

"the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial

proceedings, the reason for the delay, including whether it was within the reasonable control of

the movant, and whether the movant acted in good faith."  <u>Pioneer Inv. Servs. Co. v. Brunswick</u>

<u>Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993).  The Second Circuit applied the factors set forth

in <u>Pioneer</u> and noted that "reason for the delay" is the most important factor in the analysis.

<u>Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.</u> (In re Enron Corp.), 419 F.3d 115,

123 (2d Cir. 2005).  These factors weigh heavily against permitting Arkema to file a late proof of

claim.

(i)  <u>The Debtors Would Be Prejudiced By Allowing Arkema To File A Late Claim</u>

9.    Arkema asserts that the Debtors will not be prejudiced by allowing it to file a late proof of claim because no plan and disclosure statement has yet been filed.  Since Arkema began considering the Motion, the Debtors filed their Disclosure Statement and Plan of Reorganization ("Plan") (Docket Nos. 9264 and 9253, respectively).  In addition, the Debtors have filed twenty omnibus objections seeking to disallow and expunge or modify more than 13,000 of the almost 16,700 proofs of claim that have been filed in these cases.  The Debtors are well advanced in both their plan for transformation to emerge from chapter 11 and their claims reconciliation process.  Moreover, "in this Circuit, whether a claim is submitted before the date on which a reorganization plan is filed ordinarily will not be conclusive." <u>In re Dana Corp.</u>,  2007 WL 1577763 at *5.  The suggestion that adding a claim after the bar date, but before a plan has been filed, is not a disruption "ignores the arduous process of valuing assets, validating claims, and negotiating a compromise among a host of creditors," because the claim is "nonetheless submitted long after the negotiations required to develop [a] plan ha[ve] begun." <u>In re Enron</u>, 419 F.3d at 129.

10.    The Debtors would be prejudiced by permitting Arkema to file a late proof of claim.  Courts have often looked primarily to concerns about opening the floodgates to similar late-filed claims as a reason not to allow late claims.  <u>See, e.g.</u>, <u>In re Enron Corp.</u>, 419 F. 3d 115, 132 (2d Cir. 2005); <u>In re Kmart Corp.</u>, 381 F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain of such claims"); <u>Enron Creditors Recovery Corp.</u>, __ B.R. __, 2007 WL 1705653, at *10-11 (Bankr. S.D.N.Y. June 13, 2007) ("It can be presumed in a case of this size with tens of thousands of filed claims, there are other similarly-situated potential claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process." (citation

6

omitted)); <u>In re Dana Corp.</u> 2007 WL 1577763, *6 (Bankr.S.D.N.Y. 2007) ("the floodgates argument is a viable one").  Although Arkema's proposed claim itself may be only one of thousands, allowing Arkema to file its proof of claim may inspire many other similarly situated potential claimants to file similar motions.  Any potential claimant who, by its own error, failed to file a timely claim may seek to follow Arkema's lead.  Extending the time to file a proof of claim in this instance may also call into question the Debtors' efforts to enforce its bar date with respect to the 864 claims that have already been filed after the Bar Date in these cases.

11.    In addition, although the Debtors' proposed Plan provides for recoveries for unsecured trade creditors equal to par plus accrued postpetition interest, as noted above, that Plan is contingent on certain trade claims and other unsecured claims being allowed or estimated for distribution purposes by this Court to be no more than $1.7 billion.  Under section 1.1 of Amended Exhibit B to the Delphi-Appaloosa Equity Purchase Commitment Agreement (the "EPCA"), one condition precedent to the effectiveness of the Plan is that the aggregate amount of certain trade claims and other unsecured claims that have been asserted or scheduled, but not yet disallowed as of the effective date of the Plan shall be allowed or estimated for distribution purposes by the Bankruptcy Court to be no more than $1.7 billion.   Consequently, the Debtors have worked to reconcile and resolve their claims pool on an expedited basis, devoting a significant amount of time and resources to the claims resolution process.  Opening the door to late claims such as Arkema's, after this $1.7 billion amount has been relied upon by all those with a stake in the negotiations that allowed the Debtors to file its Plan, would threaten the Debtors' ability to emerge from chapter 11 as anticipated and therefore would significantly prejudice the Debtors.

(ii)    <u>Arkema's Delay Of Over One Year After The Bar Date Is Not Justified</u>

12.      Although Arkema may have been acting in good faith, it did not file a proof of claim until doing so simultaneously with the Motion.  Arkema made the Debtors aware of its proposal to file a late claim on August 3, 2007, almost exactly one year after the Bar Date.  A delay of a year is not excusable.  <u>See</u> <u>In re Dana Corp.</u> 2007 WL 1577763 at *5, citing <u>In re Enron</u> 419 F.3d at 125 (delay of more than six months after bar date was "substantial").  As explained above, the Debtors have made great strides in reconciling the claims against them, and have objected to over 80% of the claims (not including those that have been examined and determined to require no objection).  The year since the Bar Date has brought great progress towards the Debtors' emergence from chapter 11.  The Debtors have relied on the estimated amount of claims pending against them in negotiating its Plan.  Opening the floodgates to additional claims at this point would be severely detrimental to the Debtors' progress towards emergence from chapter 11.

13.      Furthermore, the ability to file a proof of claim was entirely within Arkema's control.  The fact that Arkema's legal staff may not have realized what was required of it to file a claim against the Debtors, even after reading the Court-approved Bar Date Notice, was a matter within Arkema's own control and does not constitute excusable neglect.

14.      Pursuant to the Bar Date Order, notice had to be sent to all potential creditors.  Therefore, pursuant to the Bar Date Order, the Debtors appropriately served all nine Bar Date Notices received by Arkema and its related entities.

15.      The Court-approved Bar Date Notice specifically directed claimants to the proof of claim form for information on the amount and classification of any scheduled amount.  The proof of claim forms each listed different Arkema entities and addresses.  They were not duplicative aside from the fact that they were all proof of claim forms.  It is not reasonable for

8

Arkema's legal staff to have neglected to read each of the proof of claim forms it received.  The proof of claim form attached to the Atofina Notice specifically stated that the scheduled amount was disputed and unliquidated and "you are required to complete and return this form."

16.    Moreover, the Bar Date Order specifically places the responsibility on creditors who rely on the Schedules to determine that their claims are accurately described thereon.  See Bar Date Order at ¶ 6.  The Bar Date Notice did not direct claimants to the claimant information section of the Delphi Legal Information Site (the "Website"), but to "copies of the schedules" available on that site.  The website contains a link directly to "Schedules/Statements" through which creditors are able to view the Schedules themselves.  Arkema does not appear to have referred to the copies of the Schedules.

17.    In addition, even in conducting the "Claim/Creditor" search on the Website, to get to the "Creditor Information Page" attached to the Motion, Arkema would have had to pass through a search results screen which includes columns labeled "C," "U," and "D." The search result screen for Atofina includes notations of "U" and "D" for Unliquidated and disputed.  For illustration, attached hereto as Exhibit B is a printout of the search result for "Atofina" on the Website.

18.    The Motion does not present a situation like that in Pioneer, where the bar date notice was unclear because it was combined with other notices and sent in the form of a letter.  Pioneer, 507 U.S. 380.  The Bar Date Notice here was approved by this Court to provide adequate notice of the claim-filing procedures to potential creditors.   It specifically stated that Arkema needed to file a proof of claim to assert a prepetition claim against the Debtors.  Arkema has provided no evidence of extenuating circumstances that might rise to the level of excusable neglect relating to its failure to file a proof of claim.  Therefore, the Motion should be denied.

<u>Conclusion</u>

19.     Arkema seeks to file a late proof of claim without having satisfied any of the grounds for relief from the Bar Date Order.  Relief under Bankruptcy Rule 9006(b) is not available to Arkema.  Accordingly, the Motion should be denied.

<u>Memorandum Of Law</u>

20.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

denying the Motion, (b) disallowing and expunging the proof of claim filed simultaneously with

the Motion, and (c) granting them such other and further relief as is just.

Dated:  New York, New York
        September 20, 2007

                                SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM LLP

                                By:  /s/ John Wm. Butler, Jr.
                                     John Wm. Butler, Jr. (JB 4711)
                                     John K. Lyons (JL 4951)
                                     Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606
                                (312) 407-0700

                                        - and –

                                By:  /s/ Kayalyn A. Marafioti
                                     Kayalyn A. Marafioti (KM 9632)
                                     Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036
                                (212) 735-3000

                                Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession