Alan E. Marder (AM-0114)  
Jil Mazer-Marino (JM-6470)  
ROSEN SLOME MARDER LLP  
333 Earle Ovington Boulevard, Suite 901  
Uniondale, New York 11553-3622  
(516) 227-1600  

Hearing Date and Time:  
September 27, 2007 at 10:00 a.m.  
Objection Deadline and Time:  
September 21, 2007 at 5:00 p.m.[1]

Counsel for Kilroy Realty, L.P.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| DELPHI CORPORATION, et al., | ) Case No. 05-44481(RDD) |
| Debtors. | ) (Jointly Administered) |

**KILROY REALTY, L.P.'S (I) RESPONSE TO THE DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§105(a) AND 502(c) (A) ESTIMATING AND SETTING MAXIMUM CAP ON CERTAIN CONTINGENT OR UNLIQUIDATED CLAIMS AND (B) APPROVING EXPEDITED CLAIMS ESTIMATION PROCEDURES; AND (II) COUNTERPROPOSAL FOR MAXIMUM CAPPED AMOUNT OF ITS CLAIMS**

Kilroy Realty, L.P. ("Kilroy"), for its (i) response to the *Debtors' Motion For Order Pursuant To 11 U.S.C. §§105(A) And 502(C) (A) Estimating And Setting Maximum Cap On Certain Contingent Or Unliquidated Claims And (B) Approving Expedited Claims Estimation Procedures*, dated September 7, 2007 (the "Estimation Motion"); and (ii) counterproposal for maximum capped amount of its claims, respectfully represents as follows:

---

[1] Kilroy's time to file this objection was extended to September 21, 2007 pursuant to an agreement with the Debtors.

05-44481-rdd    Doc 9521    Filed 09/21/07    Entered 09/21/07 15:37:53    Main Document
Pg 2 of 6


## **FACTS**

1.      Kilroy, as landlord, and Packard Hughes Interconnect ("Packard") and Delphi Automotive Systems LLC ("Delphi"), as co-tenants, are parties to a lease (the "Lease") for real property located in Irvine, California.

2.      Packard and General Motors Corp. were the original co-tenants under the Lease. However, on December 10, 1998, General Motors assigned its interest as co-tenant to Delphi, leaving Packard and Delphi as co-tenants under the Lease.

3.      Pursuant to the "Notice of Rejection of Unexpired Lease and Abandonment of Personal Property," dated June 29, 2006, the Lease was rejected as of July 13, 2006 (the "Rejection Date"). The rejection notice required Kilroy to file a proof of claim on or before the later of the general bar date (July 31, 2006) or 30 days from the Rejection Date (August 13, 2006).

4.      On July 31, 2006, Kilroy filed proof of claim number 13268 against Delphi (the "Delphi Claim") and proof of claim number 13269 against Packard (the "Packard Claim" and together with the Delphi Claim, the "Proofs of Claim"). The Proofs of Claim assert claims related to the Lease. Annexed to each Proof of Claim are the relevant documents and a rider describing, in detail, the nature and amount of Kilroy's claims.

5.      On or about October 31, 2006, the Debtors filed the Third Omnibus Objection to Claims (the "Objection") objecting to the Proofs of Claim.

6.      By the Objection, the Debtors seek to disallow and expunge the Proofs of Claim on the conclusory grounds that they are "Unsubstantiated Claims" meaning the Claims

"assert liabilities or dollar amounts that the Debtors have determined are not owing pursuant to the Debtors' books and records." (Objection at 11-12.)

7.  On or about November 21, 2006, Kilroy filed its response to the Objection together with the affidavit of Vice President of Asset Management for Kilroy Realty, L.P., sworn to on November 20, 2006 (the "Affidavit"). (Docket No. 5618, incorporated herein by reference). The Affidavit and exhibits annexed thereto (including the Proofs of Claim and Lease) set forth, in detail, the evidentiary basis for and calculation of Kilroy's claims against Delphi and Packard and quantifies most claims that were unliquidated at the time the Proofs of Claim and the Request were filed. As set forth in the Affidavit, Kilroy has the following valid claims against Delphi and Packard as follows:

    A.    $1,015,915.05 for rejection damages;

    B.    $560,047.72 to repair the damages caused by the Debtors to the leased premises;

    C.    $451,308.70 for the cost of restoring the leased premises as a result of the Debtors' failure to remove alterations;

    D.    $63,035.00 for the cost of retaining an environmental consultant to conduct Phase I and Phase II environmental studies of the premises;

    E.    attorneys' fees in an amount to be determined; and

    F.    an unliquidated claim for the remediation of environmental conditions.

8.  Delphi and Packard have not yet initiated the claims objection procedure approved by the Court and, as such, has not advised Kilroy of the factual or legal bases for Delphi's or Packard's objections, if any, to Kilroy's claims.

9.  It is Kilroy's position that Delphi and Packard, as co-tenants, are jointly and severally liable for the claims asserted in the Proofs of Claim. However, Kilroy is without knowledge as to whether the Debtors dispute that claim.

10. The Estimation Motion seeks to cap the Delphi Claim at $3 million and to cap the Packard Claim at $0.

11. Section 9.8(c) of the Plan provides:

> <u>No Recourse To Debtors Or Reorganized Debtors</u>. Any Disputed Claim or Disputed Interest that ultimately becomes an Allowed Claim or Allowed Interest, as the case may be, shall be entitled to receive its applicable distribution under the Plan solely from the Distribution Reserve established on account of such Disputed Claim or Disputed Interest. In no event shall any holder of a Disputed Claim or Disputed Interest have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims or Interests to any Debtor or Reorganized Debtor on account of such Disputed Claim or Disputed Interest, regardless of whether such Disputed Claim or Disputed Interest shall ultimately become an Allowed Claim or Allowed Interest, as the case may be, or regardless of whether sufficient Cash, New Common Stock, New Warrants, or other property remains available for distribution in the Distribution Reserve established on account of such Disputed Claim or Disputed Interest at the time such Claim or Interest becomes entitled to receive a distribution under the Plan.

Plan at §9.8(c)

### The Response

12. Kilroy consents to estimation of the Delphi Claim at $3 million for Plan voting purposes and for setting appropriate reserves for the Distribution Reserve Account.

13. However, Kilroy objects to the estimation of the Packard Claim at $0 for setting reserves for the Distribution Reserve Account. Indeed, because the Packard claim is based on the same facts as the Delphi Claim and Delphi and Packard are jointly and severally liable to Kilroy, the Packard Claim should also be estimated at $3 million.

4

14. While Kilroy acknowledges that it cannot receive a "double recovery" and the maximum it can recover, in the aggregate on the Proofs of Claim, is $3 million plus interest, estimating the Packard Claim at $0 is improper because: (i) there is no certainty that the distributions in the Delphi case will be 100% of unsecured claims; and (ii) Delphi and Packard have not revealed their defenses to the Proofs of Claim, Kilroy has no way of knowing whether Delphi will assert defenses to the claims that are not available to Packard.

15. If the Packard Claim is estimated at $0, Kilroy will be prejudiced because section 9.8(c) of the Plan (quoted in ¶11 above) provides that creditors with Disputed Claims that ultimately become Allowed Claims shall receive distributions solely from the Distribution Reserve established on account of the Disputed Claim and the motion seeks to cap the reserve for Kilroy's claim against Packard at $0. Accordingly, estimating the Packard Claim at $0 for the purpose of setting the Distribution Reserve Account would preclude Kilroy from receiving any distribution on account of the Packard Claim.

### Counterproposal

16. Kilroy proposes the following with respect to the estimation of its Proofs of Claim:

   a. The Delphi Claim and Packard Claim should both be estimated at $3 million for voting purposes and for purposes of the Distribution Reserve Account.

   b. In no event shall Kilroy recover an amount, in the aggregate, exceeding $3 million (exclusive of interest) on account of the Proofs of Claim.

17. Kilroy submits that its counterproposal is fair and reasonable. First, the counterproposal is consistent with the Debtors' estimate of the claims set forth in the Proofs of Claim. Second, the counterproposal is consistent with the Debtors' goal of reducing the

aggregate dollar amount of claims to satisfy conditions precedent to the Plan effective date.

Third, the counterproposal protects Kilroy appropriately in the event that a plan is confirmed that provides for less than full payment of Delphi's general unsecured claims or in the event the Debtors dispute that Delphi is liable on the Delphi Claim.

## CONCLUSION

For the foregoing reasons, the Court should deny the Estimation Motion to the extent it seeks to estimate the Packard Claim for less than $3 million for purposes of setting the Distribution Reserve Account.

Dated: Uniondale, New York
September 21, 2007

ROSEN SLOME MARDER LLP

By: /s/ Jil Mazer-Marino
    Alan E. Marder (AM - 0114)
    Jil Mazer-Marino (JM-6470)

333 Earle Ovington Boulevard, Suite 901
Uniondale, New York 11553-3622
(516) 227-1600

*Attorneys for Kilroy Realty, L.P.*

G:\Kilroy\Delphi\lit\Response to estimate motion.doc