| | |
|---|---|
| Darryl S. Laddin (DL-5130) | Return Date: October 25, 2007 |
| Frank N. White (Ga. Bar No. 753377) | Time: 10:00 a.m. |
| ARNALL GOLDEN GREGORY LLP | Objection Deadline: October 18, 2007 |
| 171 17th Street NW, Suite 2100 | Time: 4:00 p.m. |
| Atlanta, Georgia 30363-1031 | |
| (404) 873-8500 | |

Attorneys for Verizon Services Corp.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                               :
In re                                                          :    Chapter 11
                                                               :
DELPHI CORPORATION, et al.,                                    :    Case No. 05-44481 (rdd)
                                                               :
            Debtors.                                           :    (Jointly Administered)
---------------------------------------------------------------X

**MOTION OF VERIZON SERVICES CORP. FOR PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO MOBILEARIA SALE ORDER**

      COMES NOW Verizon Services Corp. ("Verizon") and, pursuant to that certain MobileAria Sale Order entered by this Court on July 21, 2006, files this Motion seeking an Order directing Debtor MobileAria, Inc. ("MobileAria") to pay to Verizon immediately the sum of $497,532.61. In support of its Motion, Verizon respectfully shows the Court as follows:

**BACKGROUND**

      1.    MobileAria was a provider of mobile resource management solutions. On October 14, 2005, MobileAria filed its voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

      2.    Prior to MobileAria's bankruptcy filing, Verizon and MobileAria entered into that certain Agreement for GPS System and Services dated May 15, 2005, and identified as

2227497v3

Agreement Number C0505851 (the "GPS Agreement"). A copy of the GPS Agreement is attached hereto as Exhibit A.

3. Verizon is one of the largest fleet operators in the United States and, on information and belief, was MobileAria's largest customer. By July of 2006, and pursuant to the GPS Agreement, MobileAria had installed approximately 10,600 "Integrated In Vehicle Device" global positioning units (GPS units) compatible with the Verizon Wireless EvDO Network in Verizon fleet vehicles. These GPS units were intended to permit the Verizon dispatchers to track the company's vehicles and efficiently schedule, dispatch and communicate with the drivers and for the drivers to obtain and update job and facilities related information in real time.

4. The GPS Agreement contains performance criteria and obligations that MobileAria, as the supplier, was required to meet. These criteria and obligations include those relating to provisioning, de-provisioning, installation, maintenance, support, features, functionality, innovation, specific personnel who must be employed by MobileAria, record keeping and reporting, billing and other matters. Because of the critical nature of the product and the need for quality performance in all of these areas, MobileAria specifically acknowledged in the GPS Agreement that "it recognizes that the Product and Services which are to be provided under this Agreement are vital to [Verizon] and must be delivered and installed without interruption, delay, cessation or limitation and in full compliance with the scheduled developmental dates, and requirements set forth in the Order(s), and perform in full compliance with the Specifications…." (GPS Agreement, § 18(1); see also, e.g., GPS Agreement, Exh. H, entitled Quality Standards, Procedures and Complaints.)

5. The GPS Agreement also contains a section that requires Verizon only to pay the undisputed portion of any invoice, expressly permits Verizon to set off any amount MobileAria

owes it against amounts payable by Verizon, and provides that Verizon is not obligated to pay for any services "that are not invoiced as required by this Agreement." (GPS Agreement, § (b).)

6. On or about June 6, 2006, the Debtors filed their Motion for approval of the sale of MobileAria's assets and assumption and assignment of various contracts, including the GPS Agreement (the "MobileAria Sale Motion").

7. On or about July 7, 2006, the Debtors held an auction for MobileAria's assets. Ultimately, Wireless Matrix USA, Inc. was the successful bidder for MobileAria's assets and, in the MobileAria Sale Order dated July 21, 2006, this Court approved the sale of MobileAria's assets to Wireless Matrix USA, Inc.

8. Prior to the hearing on the Sale Motion, Verizon filed an Objection. Verizon filed its Objection in part because of the numerous substantial defaults under the GPS Agreement. Briefly, the problems included, among other things, (i) significant failures in the product installation process (resulting in prolonged unavailability), (ii) inaccurate and inconsistent reporting of installed units, (iii) the failure to timely repair defective units (causing extended service outages), (iv) the failure to provide sufficiently trained support personnel, (v) activation of units on the wrong data plans, or on plans that were inappropriate for the amount of data that MobileAria was transmitting (resulting in substantial charges that would not have been incurred but for the errors), (vi) the failure to deactivate uninstalled units (again, resulting in substantial charges that would not have been incurred but for the errors), and (vii) the failure to implement accurate and required billing software (resulting in inaccurate bills, including double-billing).

9. As a consequence of Verizon's Objection, the MobileAria Sale Order included specific provisions designed to provide for payment to Verizon of unpaid amounts due and owing from MobileAria to Verizon as administrative expenses of MobileAria's estate under 11

U.S.C. §§ 503(b) and 507(a)(1), with priority over claims of MobileAria's affiliates. (MobileAria Sale Order, ¶ 42.) Specifically, the Sale Order provides in paragraph 42(a) that, if Verizon and MobileAria fail to resolve the matters consensually, Verizon may recover up to the sum of $700,000 for errors by MobileAria that resulted in damages to Verizon and that were known as of the date of the Sale Order (the "Schedule 3 Disputes"). (MobileAria Sale Order, ¶ 42(a).)[1]

10.    The MobileAria Sale Order also provides that any payments by MobileAria to Verizon for Schedule 3 Disputes will correspondingly reduce the sum remaining under the $700,000 cap. To date, MobileAria has paid Verizon the sum of $202,467.39 for the Schedule 3 Disputes. However, Verizon has been unable to resolve the matters set forth in this Motion consensually with MobileAria and, therefore, brings this Motion to recover the remaining $497,532.61.

**Relief Requested**

11.    Verizon brings this Motion to enforce MobileAria's liability under the MobileAria Sale Order for the reimbursement to Verizon of certain charges incurred by Verizon that resulted from three types of errors that MobileAria made in connection with the GPS Agreement.

**1. Overage Charges**

12.    First, Verizon incurred a total of $678,573.09 in additional data usage charges as a result of MobileAria causing more data to be transmitted over the GPS system than was permitted under the applicable data usage plan (collectively, the "Overage Charges").

---

[1] The Sale Order also provides that Verizon may seek to recover damages of up to an additional $1 million for items not known as of the date of the Sale Order. (MobileAria Sale Order, ¶ 42(b).) This Motion does not seek to recover under paragraph 42(b) of the Sale Order.

2227497v3                                    4

13. The data to and from each GPS unit was transmitted, via wireless network, to and from MobileAria's servers. At all relevant times, the wireless provider, Verizon Wireless, offered two types of data plans. The first data plan was an unlimited usage plan and had a fixed cost per month per unit (the "Unlimited Plan"). The second data plan was a plan that allowed two megabytes of usage per month and had a lesser fixed cost, but imposed additional fees of the volume of monthly usage exceeded two megabytes of usage (the "2 Meg Plan"). Each GPS Unit, therefore, was activated under either the Unlimited Plan or the 2 Meg Plan. As MobileAria was aware at all relevant times, the charge for the wireless plan was an important component of the overall cost to Verizon of the GPS units.

14. For GPS units located in trucks for which Verizon only needed to monitor the location of the vehicle, review driving routes and patterns and/or accumulate vehicle mileage, MobileAria was aware at all relevant times that the GPS units would be activated under the 2 Meg Plan and therefore would need to, and should, transmit no more than two megabytes of data per month. For GPS units located in trucks for which Verizon also needed to use the GPS units in a tactical mode to enhance the dispatch of field service personnel and/or in a strategic mode to allow for review of routes, stops and related information as required – which modes require the transmissions of larger volumes of data -- MobileAria was aware at all relevant times that the GPS units would be activated under the Unlimited Plan. This was also the same methodology with respect to the choice of data plans that Verizon used with its prior supplier of GPS units, @Road. MobileAria was aware at all relevant times that its GPS units had to have the same functionality in this regard.

15. At all relevant times, MobileAria itself also was responsible for contacting the wireless carrier to set up the data plan for each GPS unit, and was responsible for and controlled the amount of data transmitted to and from each GPS unit.

16. One important aspect of the amount of data transmitted with respect to each GPS unit was the manner in which the data was secured. There are multiple methods of data transmission. To save itself money, on information and belief, MobileAria chose a method of data transmission – transmission over a public network – which required encryption of each data packet, which resulted in an increased size of each data packet transmitted to and from the GPS units. The increased size of each data packet directly and proximately caused the GPS units activated on the 2 Meg Plans to exceed two megabytes of usage per month. As a direct result, Verizon incurred the Overage Charges, which are more particularly described in Exhibit B.

17. At all relevant times, MobileAria was aware that its method of data transmission and encryption was causing the GPS units activated on the 2 Meg Plans to exceed two megabytes of usage per month. Moreover, prior to entry of the MobileAria Sale Order in 2006, MobileAria was taking steps to rectify the overage problem it was causing by implementing a dedicated connection to the wireless provider, Verizon Wireless, and altering the encryption method to reduce the data packet size. Such methods would have permitted the secure transmission of data to and from the GPS units without causing the size of each data packet to result in excessive usage. Indeed, as MobileAria was aware, the dedicated connection method of secure data transmission was the method successfully used by Verizon's prior supplier of GPS units, @Road, and resulted in the GPS units activated on the 2 Meg Plans under Verizon's agreement with @Road not exceeding two megabytes of usage per month. Moreover, MobileAria

ultimately was able to alter its original encryption method to reduce the size of each data packet and, therefore, to eliminate or reduce the excessive usage.

18.    To date, MobileAria has acknowledged its liability for Overage Charges by reimbursing Verizon for $86,017.82 of the Overage Charges. Therefore, only the sum of $592,555.27 remains due and owing by MobileAria to Verizon for the Overage Charges.

### 2. Misactivation Charges

19.    Second, Verizon incurred $164,672.32 in additional data usage charges as a result of MobileAria failing to activate GPS units on the correct data usage plan (the "Misactivation Charges"). In other words, in certain instances, MobileAria activated a GPS unit on a 2 Meg Plan when the unit had been designated to be activated on an Unlimited Plan and, in certain instances, MobileAria activated a GPS unit on an Unlimited Plan when the unit had been designated to be activated on a 2 Meg Plan. The Misactivation Charges are more particularly described in Exhibit C.

20.    To date, MobileAria has failed to reimburse Verizon for the Misactivation Charges. Therefore, the sum of $164,672.32 remains due and owing by MobileAria to Verizon for the Misactivation Charges.

### 3. Overactivation Charges.

21.    Third, Verizon incurred additional expenses as a result of GPS units that were activated at MobileAria's request, but were never installed, in the total amount of $133,945.20 (the "Overactivation Charges"). More specifically, based on installation schedules and prior to installation, MobileAria would activate GPS units with Verizon Wireless. In certain instances, the scheduled number of units to be installed was less than the number of units activated on a wireless plan -- in lieu of exhausting previously activated units, MobileAria would continue to

activate new GPS units for nightly scheduled installs, resulting in a surplus of activated but uninstalled GPS units billed to the Verizon accounts. A summary of the $133,945.20 is attached hereto as Exhibit D.

22. To date, MobileAria has acknowledged its liability for Overactivation Charges by reimbursing Verizon for $39,300.00 of the Overactivation Charges. Therefore, the sum of $94,645.20 remains due and owing by MobileAria to Verizon for the Overactivation Charges.

### 4. Summary of Amount Owed by MobileAria to Verizon

23. In sum, MobileAria owes to Verizon the sum of $891,172.79 with respect to the Overage Charges, Misactivation Charges and Overactivation Charges. Because paragraph 42(a) of the Sale Order limits MobileAria's liability to a total of $700,000 for any type of dispute on Schedule 3 of the MobileAria Sale Order, and because MobileAria has paid to Verizon the sum of $202,467.39, MobileAria is liable to Verizon for the balance of $497,532.61, and Verizon requests that the Court order MobileAria to pay such sum to Verizon immediately, together with prejudgment interest allowable under applicable law.

### MEMORANDUM OF LAW

24. Verizon respectfully submits that this Motion does not present a novel issue of law, and is supported by citations to authority. Therefore, Verizon respectfully requests that the Court waive the requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules requiring that a motion be accompanied by a memorandum of law.

WHEREFORE, for the foregoing reasons, Verizon respectfully requests that its Motion be granted, that the Court order MobileAria to pay to Verizon the sum of $497,532.61

immediately, together with pre-judgment interest allowable under applicable law, and that the Court grant Verizon such other and further relief as may be just and proper.

This 25th day of September, 2007.

        Respectfully submitted,

        ARNALL GOLDEN GREGORY LLP

        By: /s/Darryl S. Laddin
            Darryl S. Laddin (DL-5130)
            Frank N. White (Ga. Bar. No. 753377)
            171 17th Street, NW, Suite 2100
            Atlanta, Georgia  30363
            (404) 873-8500

        Attorneys for Verizon

## **CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing document by causing a true and correct copy to be sent by Federal Express overnight delivery service, addressed as follows:

| | |
|---|---|
| Delphi Corporation<br>Attn: General Counsel<br>5725 Delphi Drive<br>Troy, Michigan  48098 | John Wm. Butler, Jr., Esq.<br>Skadden, Arps, Slate, Meagher<br>    & Flom LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, IL  60606 |
| Donald Bernstein, Esq.<br>Brian Resnick, Esq.<br>Davis Polk & Wardwell<br>450 Lexington Avenue<br>New York, New York  10017 | Robert J. Rosenberg, Esq.<br>Mark A. Broude<br>Latham & Watkins LLP<br>885 Third Avenue<br>New York, New York  10022 |
| Bonnie Steingart, Esq.<br>Fried, Frank, Harris, Shriver<br>    & Jacobson LLP<br>One New York Plaza<br>New York, New York  10004 | Alicia M. Leonhard, Esq.<br>Office of the U.S. Trustee for the<br>    Southern District of New York<br>33 Whitehall Street, Suite 2100<br>New York, New York  10004 |

Dated:  September 25, 2007

/s/Darryl S. Laddin
Darryl S. Laddin

2227497v3