Hearing Date:  September 27, 2007, 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS REPLY IN SUPPORT OF THIRD SUPPLEMENT
TO KECP MOTION (DOCKET NO. 213) SEEKING AUTHORITY TO
CONTINUE SHORT TERM AT-RISK PERFORMANCE
PAYMENT PROGRAM ("AIP") FOR SECOND HALF OF 2007

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit their Omnibus Reply (the "Omnibus Reply") In Support Of Third Supplement To

KECP Motion (Docket No. 213) Seeking Authority To Continue Short Term At-Risk

Performance Payment Program ("AIP") For Second Half Of 2007 (the "Third Supplement")

(Docket No. 9298).[1]  The Debtors are filing this Omnibus Reply to address objections filed by

six of their unions (collectively, the "Unions"):  the International Union, United Automobile,

Aerospace and Agricultural Implement Workers of America (the "UAW") (Docket No. 9445);

the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-

Communications Workers of America (the "IUE-CWA") (Docket No. 9467); the United Steel,

Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO (the "USW") (Docket No. 9490); and the International

Brotherhood of Electrical Workers Local Union No. 663 (the "IBEW"), the International

Association of Machinists and Aerospace Workers, Tool and Die Makers Local Lodge 78,

District 10 (the "IAM"), and the International Union of Operating Engineers Locals 18s, 101s,

and 832s (the "IUOE"), which jointly filed a consolidated objection (Docket No. 9521).

<u>Preliminary Statement</u>

1.      The Debtors filed their Third Supplement on September 7, 2007, with the

consent and support of the official committee of unsecured creditors (the "Creditors'

Committee").  By order of this Court, the filing deadline for objections was September 20, 2007,

<u>i.e.</u>, seven days before the hearing set for the Third Supplement.  The Debtors received three

timely-filed objections on September 20, 2007:  one each from the UAW, the IUE-CWA, and the

---

[1]      Capitalized terms not separately defined here have the meanings ascribed to them in the Third Supplement.

USW (which filed a revised objection on September 21, 2007, correcting an omission otherwise unrelated to the substance of its Objection).  On September 21, 2007 the Debtors received an untimely consolidated objection jointly filed by the IBEW, the IAM, and the IUOE.  A chart summarizing the Unions' objections and the Debtors' responses is attached to this Omnibus Reply as <u>Exhibit A</u>.  No other party has objected to the Third Supplement.

2.    Although the Unions have updated language to conform to the current procedural posture of these chapter 11 cases, the substance of their Objections has already been considered and rejected by this Court in connection with prior hearings concerning earlier extensions of the short term, at-risk performance incentive program.  These objections include the Unions' generalized assertions that this Court should not approve the Third Supplement because:

> (a)    extending the at-risk performance incentive plan reflected in the Third Supplement is inappropriate in light of the Debtors' labor transformation, and will make it more difficult to sustain labor peace, including efforts to obtain Union consent to a plan of reorganization;

> (b)    the Third Supplement does not represent an equitable balancing of the hardships that chapter 11 imposes, and violates the Debtors' recently signed commitment in the UAW-Delphi Memorandum of Understanding (the "UAW MOU") to the principle of an "equivalence of sacrifice" in setting compensation and benefits for non-represented employees;

> (c)    the AIP constitutes an improper and ineffective retention program, even though there is no evidence that the Debtors have been experiencing problems with executive-level attrition or underperformance;

> (d)    a portion of the performance period has already elapsed, and the Debtors therefore should defer consideration of the Third Supplement until the conclusion of these chapter 11 cases; and

> (e)    emergence is pending, the hard work has already been done, incentive payments will not be made until 2008, and the prospect of a permanent, multi-component executive compensation plan will provide all of the incentive necessary to retain and motivate the Debtors' executive workforce.

As this Court has recognized in prior rulings, none of these arguments calls into question the reasonableness of the Debtors' business judgment that (i) continuing the executive short-term, at-risk performance incentive program reflected in the Third Supplement is a necessary component in providing market-competitive compensation opportunities for Delphi's executive employees, and (ii) the Third Supplement offers participants appropriate incentives to achieve the Company's corporate- and division-level performance targets, which have been derived from the Debtors' Preliminary Business Plan, as updated and adjusted.

3.    The remainder of the Unions' arguments are directed toward certain alleged deficiencies in the terms and conditions of the Third Supplement.  For example, the Unions variously contend that:

(a)    the Third Supplement eliminates the provision in prior Supplements requiring that corporate EBITDAR and divisional OIBITDAR targets be adjusted to accommodate net savings achieved as a result of agreements reached with the Unions and GM, and

(b)    the targets are "lay-ups" or otherwise are "suspect," and thus the Third Supplement operates simply as a vehicle for providing guaranteed bonuses to corporate insiders.

In fact, however, neither of these contentions is correct.  As was the case when this Court approved the at-risk performance incentive for the first half of 2007, the targets for the Third Supplement are derived from Delphi's Preliminary Business Plan,[2] which incorporates certain assumptions regarding the effects of the Debtors' agreements with the Unions and GM.  But, in measuring performance for purposes of administering the Third Supplement, the Debtors will make dollar-for-dollar adjustments to EBITDAR and OIBITDAR to the extent there are variances between the performance target assumptions included in the Preliminary Business Plan

---

[2]    Indeed, for corporate EBITDAR and OIBITDAR for all but one division, the targets were actually adjusted to be the greater of the Preliminary Business Plan or the updated 5+7 Forecast.

and the results of agreements reached with the Unions and GM affecting those targets.  Moreover, the performance targets contained in the Third Supplement were based on the Debtors' business plan and the most current information and projections then available, and were independently vetted, thoroughly examined, and fully disclosed prior to the hearing on the Third Supplement. Accordingly, the Debtors respectfully request that this Court approve the Third Supplement, and enter an order in substantially the same form as that attached to this Omnibus Reply as <u>Exhibit B</u>.

<u>Responses To Objections</u>

A.    The Unions' Objections Do Not Defeat The Debtors' Reasonable Business Decision
      <u>To Seek A Continuation Of The Third Supplement.</u>

4.    All of the Unions contend that in light of the Debtors' labor transformation, it is inappropriate for the Debtors to continue the short term, at-risk, performance-based incentive plan reflected in the Third Supplement.  They argue that permitting the Debtors to offer their executive workforce contingent incentives to achieve the Debtors' overall business plan will make it more difficult to sustain labor peace, including efforts to obtain Union approval of a plan of reorganization, and will negatively affect hourly-employee morale by generating widespread anger and resentment.  In a variation on this theme, one of the Unions argues that the Third Supplement violates the Debtors' commitment in the UAW MOU to the principle of an "equivalence of sacrifice" in setting compensation and benefits for Delphi's employees non-represented employees.  These objections, however, were rejected in connection with prior Supplements to the AIP, and should be rejected here for the same reasons.

5.    The original AIP and its various Supplements logically are consistent with the Debtors' efforts to adopt market-based labor costs:  both are essential steps in achieving the Debtors' strategic necessity of instituting a market-competitive compensation structure across their entire workforce.  The Third Supplement is no different in this regard.

6.    None of the Unions has challenged in any way the fact that since Delphi

was spun off from GM as an independent entity, there historically have been four components to

the compensation structure for the Company's executive workforce:  (i) salary, or base wages, (ii)

health care and other benefits, (iii) a performance-based, short term annual incentive program,

and (iv) a long-term incentive opportunity.  Nor does any Union dispute the fact that since the

Debtors entered chapter 11, two of the four components of their executive compensation

program have been canceled—the short term and the long term performance incentive plans—

thus leaving in place only base salary and benefits.  As a point of undisputed fact, therefore,

more than half of the total compensation package of the Debtors' executives has been placed in

limbo since the commencement of these chapter 11 cases.  (See Exhibit C to this Omnibus

Reply.)  In addition, several of the Debtors' most senior executives have agreed voluntarily to

waive a portion of their base salaries.  For example, Rodney O'Neal, Delphi's President and

Chief Executive Officer, agreed to waive 20 percent of his annual salary, effective January 1,

2006, and the other senior officers who were employed by Delphi when Robert "Steve" Miller, Jr.

joined the company similarly agreed to waive 10 percent of their annual salaries.

7.    Consequently, it also is a fact that the Debtors currently are not providing

market-competitive compensation opportunities for their executive workforce.  Indeed, as this

Court previously noted at the hearing held in connection with the Second Supplement, while the

AIP and the Supplements have been and continue to be characterized colloquially as "bonuses,"

the AIP and its Supplements are "more clearly an element of the [total] salary package than a

handout. . . . I do not view this as a handout, but rather as something that's necessary so that the

debtors' executive team will be compensated at least somewhat comparably to their competitors."

6

(3/22/07 Hearing Tr. (Docket No. 7557), at 83, 85–87.)  That observation applies here with equal force.

8.    The KECP originally proposed in connection with the Debtors' First Day filings (Docket No. 213) was intended to provide quantifiable, performance-based, market-competitive incentive opportunities for the Debtors' executives in connection with the chapter 11 process.  The Annual Incentive Program component of the original KECP was designed to restore the short term incentive component of the Company's executive compensation plan, thereby moving the Debtors' total executive compensation program towards a more market-competitive level and structure.  The Third Supplement now before this Court reflects the Debtors' effort to continue the AIP during the period between July 1 and December 31, 2007 (the "Performance Period").

9.    The Unions are mistaken when they contend that the "equivalence of sacrifice" provision in the UAW MOU, which the Debtors entered into with the UAW on June 22, 2007 (Docket No. 8693, Ex. 2, § I, at p. 20) somehow now precludes the Debtors from pursuing the at-risk compensation program for their executive workforce.  In fact, the language in the MOU is identical to the language in the prepetition UAW-Delphi Supplemental Agreement, dated April 29, 2004, which the Debtors and the UAW entered into in connection with their collective bargaining agreements for the 2003 through 2007 period.  (A demonstrative exhibit comparing the language of the two agreements is attached to this Omnibus Reply as Exhibit D.)  Thus, this language was in effect when the Debtors proposed and this Court approved the prior at-risk compensation programs.  Consequently, the UAW MOU does not conflict with the appropriateness of the Third Supplement; in particular, this principle did not before, and does not now, undermine or preclude the Debtors' long-standing and reasonable

7

commitment to implementing a market-competitive compensation structure and practices for all

of their employees, including its executive workforce.

        10.     As for the notion that approval of the Third Supplement will jeopardize

labor peace , the Debtors respectfully disagree.  The prospect for a productive, post-emergence

relationship with the Unions depends primarily on the specific terms and conditions of the

various agreements entered into now and in the future between the Debtors and their Unions.

This includes, by way of example and not limitation, the Special Attrition Programs (Docket Nos.

3754 (UAW) and 4461 (UAW and IUE-CWA)), the Memoranda of Understanding between

Delphi and its Unions modifying unions collective bargaining agreements and retiree welfare

benefits (Docket Nos. 8693 (UAW), 9106 (IUE-CWA), 9107 (IUOE, IBEW, and IAM), and

9169 (USW)), and the Debtors' consequent withdrawal without prejudice of their Section

1113/1114 Motion (Docket No. 9221).  The Debtors expect that labor peace will be preserved

going forward as the Debtors' continue to honor their agreements with the Unions, not based on

ancillary matters such as the Third Supplement.

        11.     In sum, this Court's approval of the Third Supplement should not

jeopardize future labor peace, nor should approval of the Third Supplement make it any more or

less difficult for the Debtors to secure approval for their plan of reorganization.

B.      <u>The Third Supplement Is Not A Retention Program.</u>

        12.     In the past, several Unions have characterized the AIP (and now

characterize the Third Supplement) as a retention program, or "pay to stay" plan.  As this Court

repeatedly found in connection with prior AIP-related hearings, however, the plan extended by

the Third Supplement "is not a [r]etention o[r] severance program."  (7/19/06 Hearing Tr.

(Docket No. 4996), at 102.)

13.     Although in principle any compensation opportunity provides some inducement to remain on the job, the Third Supplement does not constitute the kind of pay-to-stay program to which the Unions refer in their various Objections.  The Third Supplement, like its predecessors, does <u>not</u> offer covered employees compensation opportunities merely for remaining in the Debtors' employ.  Instead, the Third Supplement provides short term, at-risk, performance-based incentive opportunities for the Debtors' executive workforce, but <u>only</u> to the extent that the Debtors achieve or exceed their corporate- or division-level performance targets.

14.     It is a feature of this plan that unless the Company achieves its corporate-level earnings target or its division-level operating income targets, the Debtors will not issue <u>any</u> incentive compensation payments for the affected covered executives.  These compensation cliffs are intended to ensure that covered executives remain motivated to achieve the performance targets reflected in the Third Supplement.  And, as discussed more fully below, the financial targets contained in the Third Supplement were independently reviewed and approved by the Board's Compensation Committee, the Creditors' Committee, and their respective professional advisors.

15.     Moreover, even if the Debtors do reach or exceed their financial targets for the Performance Period, every covered employee remains subject to an additional review of his or her individual performance.  These reviews entail the potential for downward adjustment of incentive awards (to zero, if appropriate), if the covered employee's level of personal achievement is deemed to be sub-par, or if the covered employee's performance otherwise fails to meet expectations.

16.     Finally, one Objector points to the lack of current data showing heightened attrition rates or other evidence of defections in the ranks of the Debtors' executive workforce.

This Objector suggests that any executive departures now "would be a routine matter, no longer having the heightened impact it might have had at the outset of the case, when Delphi was first undertaking the significant challenge of implementing its transformation plan," and on this basis, urges the Court to reject the Third Supplement.  (UAW Obj. (Docket No. 9445) ¶ 15.)  This argument, however, is based on an unreasonably narrow and inapposite view of the function performed by the Third Supplement.

17.    Based on the information and analyses referenced in the Third Supplement and documents related thereto, the Debtors believe that the Third Supplement provides reasonable, independently vetted, thoroughly examined, and fully disclosed incentives for participants to achieve or exceed the financial goals built into the Company's business plan.  In this regard, the Debtors also reasonably believe that providing covered employees with incentives to reach the targets in the Third Supplement is in the best interests of the Debtors, their estates, their stakeholders, and other parties-in-interest because all of those constituencies benefit when the Debtors create value by achieving their earnings goals.  Again, as this Court recognized at the hearing held in connection with the Second Supplement:

> [I]f . . . the [D]ebtors exceed the targets in ways that will truly enhance the executives' recovery under this compensation portion, . . . all of the [D]ebtors' constituencies looking to the continuation of this company and its continuing going concern value will be happy.  That would include not only those who are continuing to work for the Company, as well as those who've supplied it credit, but also those who hope and expect that the company will continue to honor its pension obligations and/or deal with other aspects of buyout or termination packages.

(3/22/07 Hearing Tr. (Docket No. 7557), at 87–88.)

18.    In short, the compensation opportunities provided by the Third Supplement are contingent not only upon the Debtors' ability to achieve their overall financial performance targets, but also are subject to revision on the basis of each covered employee's

individual performance.  Accordingly, there is no basis for the Unions' characterization of the Third Supplement or the AIP as retention programs.

C.    The Timing Of The Hearing Does Not Disincent Performance.

19.    One of the Objectors points out that the hearing on the Third Supplement will occur weeks into the Performance Period.  Based on this timing, this Objector concludes that it is all but certain that the Debtors will achieve their performance targets for the second half of 2007, and suggests that the Third Supplement cannot have any incentive effect with respect to the weeks that already have passed.  These arguments, too, have been considered and rejected by the Court in hearings held in connection with prior AIP Supplements.

20.    Also, the hearings on the AIP with respect to prior performance periods have all been held during the performance periods.  That fact has not served as a disincentive. Indeed, the aggregate EBITDAR generated at the corporate level during the first three AIP performance periods exceeded the aggregate EBITDAR targets by approximately $1.16 billion. This performance resulted in aggregate AIP payments of approximately $26.9 million over the target AIP payments, a figure less than 4% of the additional EBITDAR generated under the AIP.

21.    As a preliminary matter, there is no evidentiary basis for the suggestion that the timing of the hearing on the Third Supplement makes its performance targets easy (or easier) to achieve.  It is well settled in this circuit and elsewhere that "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity."  In re Integrated Res., Inc., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992). Consequently, it is not enough for an objector simply to raise and argue an objection.  Rather, the objector "is required to produce some evidence respecting its objections."  In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also, e.g., In re Enron Corp., 335 B.R. 22, 28 (S.D.N.Y.

2005) (same).  Because the Objectors to the Third Supplement have tendered no such evidence, this objection should be rejected outright.

22.     Furthermore, the timing of the filing of the Third Supplement and the hearing scheduled in connection therewith was driven largely by the Debtors' strong desire to provide the Creditors' Committee and their professional advisors with sufficient time to review the performance targets and supporting data, and to obtain the Creditors' Committee's support before filing the Third Supplement.  The performance targets for the second half of 2007 were established before the performance period began.  Once the Board's Compensation Committee reviewed and approved the data and information reflected in the Third Supplement, discussions between the Debtors and the Creditors' Committee first took place in July 2007.  At that time, the Debtors presented performance targets derived from the Preliminary Business Plan, as updated and adjusted.  These plan-derived performance targets, previously approved by the Compensation Committee, were vetted and approved without change by the Creditors' Committee.  This was followed by more extended discussions surrounding the performance payout curves for above target performance and the fully agreed provisions that afford discretion to the Creditors' Committee to make certain adjustments above target EBITDAR performance,.  The Debtors thereafter filed the Third Supplement as soon as practicable, on September 7, 2007.

23.     Finally, although the hearing scheduled in connection with the Third Supplement is taking place during the course of the Performance Period, the reality of the situation is that the Debtors' executive workforce has been managing the Debtors' business affairs continuously during this period, with the sole objective of maximizing enterprise value for all of the Debtors' stakeholders.  There simply is no basis for the suggestion that executives have been waiting until after this Court's approval of the Third Supplement to begin to conduct itself

in the best interests of the Debtors' estates.  Any argument to the contrary should be rejected by this Court.

D.    There Is No Legitimate Reason To Defer Consideration of The Third Supplement Until The Conclusion Of These Chapter 11 Cases.

24.    All of the Unions argue that this Court should defer consideration of the Third Supplement until the conclusion of these chapter 11 cases.  Whatever benefit such a deferral might have generated with respect to the long-term incentive component included in the original KECP (consideration of which the Debtors agreed initially to defer, and which now has been removed from the Court's calendar and incorporated in the plan of reorganization process), the Unions have provided no such justification with respect to the original AIP or this Third Supplement.

25.    The history of litigation surrounding the AIP and its Supplements demonstrates that because of the Debtors' labor transformation, the Unions fundamentally oppose the AIP and its Supplements, regardless of their submission date or the current procedural posture of these cases.  The Unions opposed the original AIP at the hearing held on February 10, 2006, arguing that its approval on the eve of a filing deadline for the Debtors' Section 1113/1114 Motion would immediately derail the labor negotiations then in progress. The Unions opposed interim Supplements to the AIP at hearings held on July 19, 2006 and March 22, 2007, arguing that efforts to extend the AIP would poison ongoing negotiations concerning matters related to the Section 1113/1114 Motion, and disrupt negotiation of other issues ultimately resolved by the Memoranda of Understanding entered between Delphi and its Unions during 2007.  The fact that the Unions are urging deferral now, when the Debtors have withdrawn their Section 1113/1114 Motion, the Memoranda of Understanding with the Unions

13

have been executed, and the Debtors have filed their joint plan of reorganization, demonstrates

that the Unions will always oppose the Debtors' efforts to extend the AIP.

26.    This Court identified this very problem at the February 2006 hearing held

in connection with the original AIP, and rejected the argument that the AIP hearing should be

adjourned in light of sensitivities related to ongoing labor negotiations.  (2/10/06 Hearing Tr.

(Docket No. 3414), at 250.)  Nothing that has transpired since then, including the Debtors' labor

transformation or their efforts to implement the other aspects of their business transformation,

has undermined the reasonableness of the short term incentive plan before this Court in

connection with the Third Supplement.

27.    Arguments made by some Objectors that incentive awards earned during

the current performance period will not be paid until 2008, i.e., after the close of the Performance

Period, or that the Debtors' emergence from chapter 11 might fall within the Performance Period,

are irrelevant to this Court's determination that the Third Supplement represents an exercise of

the Debtors' sound business judgment.  Without belaboring the obvious, it is always the case that

performance incentive payments made under the AIP and its Supplements will be made after the

period at issue has closed.

28.    Furthermore, the Third Supplement contains a requirement that the

Debtors' corporate EBITDAR and divisional OIBITDAR "shall be adjusted on a dollar-for-dollar

basis to reflect any positive or negative variance between the assumptions underlying the

Debtors' Preliminary Business Plan for 2007 (as adjusted for updated performance through May

31, 2007) relating to the performance targets and the terms of the agreements reached with the

Debtors' Unions or General Motors Corporation affecting such performance targets using the

protocol previously agreed to with the Creditors' Committee."  (Third Supplement (Docket No.

9298) ¶ 7; Third Supp'l AIP Order ¶ 3.)  (A copy of the protocols referenced in the proposed

Third Supplemental AIP Order has been attached thereto as Exhibit 2.)  Under the terms and

conditions of the Third Supplement, the Creditors' Committee also is authorized (subject to

certain terms and conditions) to adjust by up to $200 million, for measurement purposes, the

corporate EBITDAR performance for the second half of 2007 to account for direct net savings

realized by the Debtors because of any action, event, or circumstance not contemplated by, or

anticipated in, the Debtors' business plan, as reasonably determined by the Creditors'

Committee."  (Third Supp'l AIP Order ¶ 4.)

29.    There simply is no reason to believe that taking the time needed to close

the Performance Period, determine the Debtors' actual financial performance for that same period,

and provide the Creditors' Committee with sufficient time to review the relevant data somehow

undermines the incentive effect that the Third Supplement provides in achieving the Company's

financial goals for the Performance Period, or the prudence of offering such incentives to

salaried executives.  Nor is there any basis to conclude that the Debtors' emergence from chapter

11 either diminishes the importance of executives' efforts to implement the Debtors' business

plan during the Performance Period, or calls into question the Debtors' reasonable business

decision to offer its executive workforce incentives in order to achieve that plan.

30.    Several Objectors also suggest that the Third Supplement should be denied

because emergence from chapter 11 is right around the corner, and the post-emergence prospect

of a permanent, multi-component executive compensation program will provide all of the

incentive necessary to retain and motivate the Debtors' executive until emergence.  This

argument, however, misses the point.  The short term, at-risk, performance-based incentive

program now before the Court is intended to provide executives with quantifiable, performance-

based incentive opportunities for the work to be done right now, i.e., during the Performance

Period.  To the extent that the Debtors provide a comprehensive, performance-based, market-

competitive executive compensation program following emergence from chapter 11, that

decision likely will be driven by the need to implement a total executive compensation program

with a more market-competitive structure.  But that does nothing to diminish the appropriateness

of the Third Supplement now.

E.      The Specific Objections To The Terms And Conditions Of the Third Supplement
        Are Not Well-Founded.

        31.     In addition to the general objections discussed above, two of the Unions

contend that the Third Supplement's target metrics no longer take into account net savings

achieved as a result of agreements reached with the Unions or GM.  The result, claim these

Objectors, is that "the current AIP motion for the first time will reward executives directly based

on the reduction of headcount and reduced employee wages and benefits achieved in the recent

collective bargaining agreements.  This is a direct and naked transfer in wealth from these

workers to top corporate management."  (IUE-CWA Obj. (Docket No. 9467), at 5; USW

Corrected Obj. (Docket No. 9494) ¶ 3 (same).)  The second set of objections also concerns the

Third Supplement's target metrics, but asserts more generally that the Third Supplement is

merely a vehicle for providing guaranteed bonuses to corporate insiders because achieving the

targets is virtually guaranteed.  These Objectors also suggest vaguely that the entire target-setting

process is suspect.  Neither set of objections has merit.

        1.      The Third Supplement Reflects The Debtors' Continued Dollar-For-Dollar
                Exclusion Of Variances Between The Assumptions In The Business Plan
                Relating To The Performance Targets And Agreements Reached With The
                Debtors' Unions Or GM.

        32.     Two Objectors contend that the Debtors have "removed" from the

performance metrics used in connection with the Third Supplement adjustments to corporate

EBITDAR or divisional OIBITDAR resulting from the terms of any agreements (a) with the

Unions to modify current collective bargaining agreements or (b) with GM regarding

contributions to be made in connection with the Debtors' transformation.  These assertions

simply are incorrect.

33.    For the at-risk incentive program approved by this Court in both the first

half and the second half of 2006, the performance targets were established using the Debtors'

"Steady State" business plan, which did not incorporate any assumptions regarding potential

future transformation savings or costs.  Accordingly, those programs set targets and measured

performance based on "OIBITDAR-UG" and EBITDAR-UG" metrics.  The "UG" portion of

those metrics was intended to ensure that, notwithstanding the assumption of the Steady State

plan, if the Debtors were nonetheless able to achieve savings (or incurred costs) due to

transformation agreements with GM or the Unions, those financial effects would be eliminated

from the performance measurement under the plan.

34.    For the performance period for the first half of 2007, however, the

incentive plan was based on the Debtors' Preliminary Business Plan. Unlike the Steady State

business plan, the Preliminary Business Plan incorporated assumptions concerning the effects of

transformation agreements with GM and the Unions, for the very good reason that as of 2007 the

Debtors' were operating under a partially transformed state.

35.    Accordingly, for the performance period approved by this Court for the

first half of 2007, the metrics used to set targets and measure performance were OIBITDAR and

EBITDAR.  While the actual performance under these metrics included the effects of agreements

in place with GM and the Unions, so, too did the assumptions used in setting the targets for those

metrics.  Put another way, as of the beginning of 2007, both the targets and the performance

measurement under the incentive plan reflect the Debtors' real business operations, including the

agreements reached with GM and the Unions.  Critically, to the extent that the Debtors' actual

performance in the first half of 2007 was affected by GM or Union savings or costs that were not

anticipated in the Preliminary Business Plan, the Debtors—with detailed oversight and

involvement of the Creditors' Committee—developed a protocol for adjusting the incentive plan

performance measurement so that those unanticipated benefits or burdens were removed from

the calculus.

    36.  The Third Supplement is no different.  The Business Plan underlying the

incentive plan targets has certain assumptions concerning the Debtors' operations which include

effects of agreements with GM and the Unions that have been implemented across the Debtors'

organization.  Performance will be measured against this Business Plan.  However, to the extent

that unanticipated costs or savings affect this performance due to GM or Union agreements,

those effects will be adjusted out of the performance measurement calculus using a methodology

developed in conjunction with and overseen by the Creditors' Committee.  The Debtors therefore

have provided in the proposed Third Supplemental AIP Order that the Debtors' corporate

EBITDAR and divisional OIBITDAR for the Performance Period "shall be adjusted on a dollar-

for-dollar basis to reflect any positive or negative variance between the assumptions underlying

the Debtors' Preliminary Business Plan for 2007 (as adjusted for updated performance through

May 31, 2007) relating to the performance targets and the terms of the agreements reached with

the Debtors' Unions or General Motors Corporation affecting such performance targets using the

protocol previously agreed to with the . . . Creditors' Committee."  (Third Supplement (Docket

No. 9298) ¶ 7; Third Supp'l AIP Order ¶ 3 (same).)[3]

> 2.    The Third Supplement And Its Targets Have Been Thoroughly Reviewed
> And Independently Vetted To Changing Conditions.

37.    Finally, several Unions complain broadly that because of the apparent ease

with which the Debtors achieved the corporate- and division-level financial targets approved by

this Court in prior performance periods, the "incentives" allegedly provided by the Third

Supplement either must be unnecessary or have been set at levels guaranteed to provide

"bonuses" to key corporate insiders.  As "evidence" that the performance-based incentive

opportunities contemplated by the Third Supplement virtually are "guaranteed," certain

Objectors point out that the targets for two Delphi divisions (Powertrain and Electronics and

Safety) are lower for the second half of 2007 than they were for the first half of the year, and that

the OIBITDAR target for the Automotive Holdings Group is negative $134 million.

38.    In mid-July 2007, Delphi management presented to the Compensation

Committee and its advisors an update on the financial projections for the current year based on

actual financial performance through May 31, 2007.  As a part of its approval process, the

Compensation Committee reviewed and considered the Debtors' Preliminary Business Plan,

information reflected in the 5+7 Forecast, and documents and information related thereto.  The

Compensation Committee's independent compensation consultant also reviewed the data

supporting the proposed performance awards and provided input during the course of the

Compensation Committee's review.  Based on that review, the Compensation Committee and its

---

[3]    To make even more clear the purpose of the adjustment, the Debtors have added language to the proposed Order which specifies, "That is to say, any costs or savings resulting from [GM or Union] agreements not incorporated into the Debtors' Preliminary Business Plan and reviewed with the Creditors' Committee shall not affect (positively or negatively) payments under the AIP."  (Third Supp'l AIP Order ¶ 3.)

compensation consultant concluded that the Third Supplement and the targets contained therein

fall well within the range of competitive practices among Delphi's peers, and voted to approve a

continuation of the AIP under the terms and conditions reflected in the Third Supplement.  It

should be noted in this regard that the Compensation Committee is composed entirely of

independent directors, none of whom is an employee covered by the Third Supplement plan, or

who has any direct or indirect material relationship with Delphi other than his or her service on

the Compensation Committee.

39.    In addition, the Debtors met with the Creditors' Committee and its

advisors to discuss the proposed Third Supplement.  These discussions, which took place from

late July to mid-August 2007, touched on all aspects of the AIP and the Third Supplement,

including the Preliminary Business Plan, the 5+7 Forecast, and the Debtors' proposed financial

targets and payout curves.  The Creditors' Committee approved the Debtors' proposed financial

targets and payout curves that are attached as Exhibit 1 to the proposed Third Supplemental AIP

Order attached to this Omnibus Reply.

40.    The unsupported contention that the Performance Period targets are too

low, or that the incentives provided by the targets somehow are diminished by the Debtors'

achievement of prior period financial goals is inconsistent with the considered conclusions

reached by the Compensation Committee and its professional advisors, and by the Creditors'

Committee and its professional advisors.  Both committees independently determined that the

Third Supplement's performance targets have been set at levels appropriate to assisting the

Debtors in achieving their business goals for the Performance Period.  This independent vetting

process—the same as that used by the Debtors in connection with prior Supplements approved

by this Court—is more than sufficient to overcome any suggestion that the Third Supplement is

tainted by improper self-dealing.  It should further be noted in this regard (as described more

fully above in paragraph 26 of this Omnibus Reply), the Creditors' Committee is further

authorized to adjust by up to $200 million, for measurement purposes, the corporate EBITDAR

performance for the second half of 2007 to account for direct net savings realized by the Debtors

because of any action, event, or circumstance not contemplated by, or anticipated in, the Debtors'

business plan.  (Third Supp'l AIP Order ¶ 4.)

    41.    Several Unions object because the targets for two of the Debtors' divisions

(Powertrain and Electronics and Safety) are lower for the second half of 2007 than they were for

the first half of the year, and because the target for Delphi's Automotive Holdings Group is

negative $134 million.  This argument is specious.  Because a significant portion of Delphi's

business is related to the manufacture of car parts, Delphi's overall sales levels historically have

been tied to the production schedules of its car manufacturing customers.  Delphi's primary

North American customers, in turn, customarily halt operations for approximately two weeks in

July and approximately one week in December.  The traditional summer vacation period in

Europe similarly affects second-half sales.  In addition, third quarter auto production historically

has been lower than in other quarters as new models enter production.  Delphi's operating

income is subject to the same seasonal fluctuations.  Because the Preliminary Business Plan, as

updated and adjusted, reflects those business realities, the Performance Period targets also reflect

them.

    42.    In sum, it is the Debtors' reasonable business judgment that the AIP and

the Third Supplement provide the Debtors' executives with appropriate incentives to achieve the

Debtors' Performance Period corporate- and division-level financial targets.  The Debtors further

believe that providing their executive workforce with incentives to reach the Performance Period

targets is in the best interests of the Debtors, their estates, their stakeholders, and other parties-in-interest because all of those constituencies benefit when the Debtors create value by achieving their financial goals.

<u>Conclusion</u>

WHEREFORE, the Debtors respectfully request that the Court enter a Third Supplemental AIP Order in substantially the form of that attached as <u>Exhibit B</u> to this Omnibus Reply, and that the Court grant the Debtors all such other and further relief as is just and equitable.

Dated:   New York, New York
        September 26, 2007

                     SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                     By: <u>/s/ John Wm. Butler, Jr.</u>
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Albert L. Hogan, III (AH 8807)
                        Ron E. Meisler (RM 3026)
                     333 West Wacker Drive, Suite 2100
                     Chicago, Illinois 60606
                     (312) 407-0700

                              - and -

                     By: <u>/s/ Kayalyn A. Marafioti</u>
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                     Four Times Square
                     New York, New York 10036
                     (212) 735-3000

                     Attorneys for Delphi Corporation, <u>et al.</u>,
                      Debtors and Debtors-in-Possession

# Exhibit A

**SUMMARY OF OBJECTIONS TO THIRD SUPPLEMENT TO KECP MOTION
(Docket No. 213) SEEKING AUTHORITY TO CONTINUE SHORT TERM AT-RISK
PERFORMANCE PAYMENT PROGRAM ("AIP") FOR SECOND HALF OF 2007\* \*\*
(Docket No. 9298)**

| Objection | Objector(s) | Response |
|---|---|---|
| It is inappropriate to reward executives at the same time the Debtors have asked Union-represented workers to make substantial sacrifices. | UAW (9445)<br><br>IUE-CWA (9467)<br><br>USW (9490)<br><br>IBEW, IUOE, IAM (9521)\*\* | The Third Supplement and the Debtors' labor-transformation objectives both are intended to implement a market-competitive compensation structure and practices for all of the Debtors' employees.  All of the Debtors' stakeholders benefit when the Debtors achieve the performance targets established by the Third Supplement. |
| The Third Supplement will poison labor management relationships in a post-emergence environment, and will make it more difficult for the Debtors to sustain labor peace, including obtaining Union consent to a plan of reorganization. | UAW (9445)<br><br>IUE-CWA (9467)<br><br>USW (9490) | The Third Supplement is separate from the issues the Debtors have addressed in labor negotiations, and which they will be addressing in connection with the Plan of Reorganization.  The outcome of one has not and should not affect the outcome of the others. |
| The Third Supplement violates the Debtors' commitment in the UAW-Delphi MOU to an "equivalence of sacrifice" in setting compensation and benefits for all of Delphi's employees. | UAW (9445) | The "equivalence of sacrifice" language in the MOU is identical to the langauge in the prepetition UAW-Delphi Supplemental Agreement (dated 4/29/04), which was fully enforceable against the Debtors in connection with the Section 1113/1114 Motion; therefore, nothing has changed.  In addition, the Third Supplement and the Debtors' labor-transformation objectives are both intended to implement competitive compensation practices and structures for all employees.  All of the Debtors' stakeholders benefit when the Debtors achieve the performance targets established by the Third Supplement. |

| | | |
|---|---|---|
| The Third Supplement eliminates the provision in prior Supplements requiring that corporate EBITDAR and divisional OIBITDAR targets be adjusted to accommodate net savings achieved as a result of negotiations with the Unions and GM. | IUE-CWA (9467)<br><br>UAW (9445) | For purposes of calculating financial results under the Third Supplement, the Debtors will continue to make dollar-for-dollar adjustments to reflect any positive or negative variance between the assumptions underlying the Debtors' Preliminary Business Plan for 2007 (as adjusted for updated performance through May 31, 2007) relating to the performance targets and the terms of the agreements reached with the Debtors' Unions or General Motors Corporation affecting such performance targets using the protocol previously agreed to with the Creditors' Committee. The Third Supplement also incorporates a provision authorizing the Creditors' Committee, subject to certain constraints, to adjust by up to $200 million, for measurement purposes, the corporate EBITDAR performance for the second half of 2007, if and as necessary, to account for direct net savings realized by the Debtors because of transformation actions not contemplated by the Debtors' business plan or other such unanticipated circumstances. |
| The Third Supplement is unnecessary because (a) the Debtors have reduced their hourly workforce, and (b) there is no evidence that the Debtors are having problems with executive attrition or underperformance, which the Third Supplement's incentive awards presumably are intended to remedy. | UAW (9445) | The Third Supplement is not a retention plan. Instead, it provides opportunities to earn incentive compensation based on achieving the Debtors' financial targets at the corporate and division levels, and upon each participant's individual performance. No payments will be made under the Third Supplement unless the Debtors achieve their financial targets. All of the Debtors' stakeholders benefit when the Debtors achieve the targets established by the Third Supplement. |
| The fact that a portion of the performance period already has elapsed makes it easier to achieve the performance targets and reduces the incentive effect of the Third Supplement. | IUE-CWA (9467) | The timing of the Third Supplement was driven largely by the Debtors' desire to provide the Creditors' Committee and their professional advisors with sufficient time to review the performance targets and supporting data, and to obtain the Creditors' Committee's support before filing the Third Supplement. There is no evidence to support the contention that the timing of the hearing held in connection with the Third Supplement has any effect on the Debtors' ability to achieve its Performance Period financial targets. |

| | | |
|---|---|---|
| The ease with the Debtors' executive workforce has achieved prior financial targets suggests that the incentives provided by the various Supplements are unnecessary, and that the Third Supplement is just a vehicle for providing guaranteed bonuses to key insiders. | UAW (9445)<br><br>IUE-CWA (9467) | The performance targets developed by the Debtors' management are based on the Debtors' business plan and the most current information and projections then available.  The targets are independently reviewed not only by the Board's Compensation Committee and its professional advisors, but also by the Creditors' Committee and its professional advisors. |
| The divisional OIBITDAR targets for Powertrain and Electronics and Safety are lower for this performance period than they were for the prior period, and the incentive target for the Autmotive Holdings Group is <u>negative</u> $134.4 million. | UAW (9445)<br><br>IBEW, IUOE, IAM (9521)** | The performance targets developed by the Debtors' management are based on the Debtors' business plan and the most current information and projections then available.  The targets were reviewed and approved by the Compensation Committee and its professional advisors, and by the Creditors' Committee and its professional advisors.  Dephi sales and operating income traditionally have been lower in the second half of the year than in the first.  The Third Supplement and its targets reflects those realities. |
| The Third Supplement is a retention program.  Retention programs do not work and are bad for morale. | IUE-CWA (9467) | The Third Supplement is not a retention program.  It does not reward plan participants for merely remaining on the job.  Instead, it provides opportunities to earn incentive compensation based on the Debtors' financial performance at the corporate and division levels and each participant's individual performance.  No payments will be made under the Third Supplement unless the Debtors achieve their corporate and division-level financial targets. |
| The Third Supplement is unnecessary because emergence is pending, the hard work has already been done, incentive payments will not be made until 2008, and the prospect of a permanent, multi-component executive compensation plan will provide all of the incentives necessary to retain and motivate the Debtors' executive workforce. | UAW (9445)<br><br>IUE-CWA (9467)<br><br>IBEW, IUOE, IAM (9521)** | The two compensation plans are separate matters.  The Third Supplement provides performance-based incentives for Delphi's executive workforce to achieve the Debtors' current financial targets for the period between 7/1 and 12/31/07.  A comprehensive, multi-component, post-emergence compensation plan for the Debtors' corporate management is intended to implement a market-competitive compensation structure on a going-forward basis. |

| Further continuation of the Third Supplement should be deferred until these chapter 11 cases are concluded. | IUE-CWA (9467) | There is no logical basis to defer consideration of the Third Supplement, which is intended to provide incentives to perform the work that needs to be done right now.  The Third Supplement also furthers the Debtors' objective of providing competitive compensation practices for all employees and provides plan participants with appropriate incentives to achieve their individual performance goals and the Debtors' financial targets. The benefits to be derived from the Third Supplement will be made more difficult to achieve and sustain if performance incentives are deferred. |

\* The following parties filed objections before the objection deadline on September 20, 2007:

– International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") (Docket No. 9445)

– International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America ("IUE-CWA") (Docket No. 9467)

– United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union, AFL-CIO ("USW") (Docket No. 9490), corrected and refiled on September 21, 2007 (Docket No. 9494).

\*\* The following parties filed a joint objection (Docket No. 9521) on September 21, 2007, one day after the objection deadline:

– International Brotherhood of Electrical Workers Local Union No. 663 ("IBEW")

– International Association of Machinists and Aerospace Workers, Tool and Die Makers Local Lodge 78, District 10 ("IAM")

– International Union of Operating Engineers Locals 18s, 101s, and 832s ("IUOE")

4

# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
      In re                    :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
               Debtors.        :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIRD SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 105 AND 363
AUTHORIZING DEBTORS TO CONTINUE SHORT TERM AT-RISK
PERFORMANCE PAYMENT PROGRAM ("AIP") FOR SECOND HALF OF 2007

("THIRD SUPPLEMENTAL AIP ORDER")

          Upon the Third Supplement To KECP Motion (Docket No. 213) Seeking

Authority To Continue Short Term At-Risk Performance Payment Program ("AIP") For Second

Half Of 2007 (the "Third Supplement"), dated September 7, 2007, of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"); and upon the declarations of Nick

Bubnovich, John D. Sheehan, and Craig G. Naylor, each executed September 7, 2007 in support

of the Third Supplement; and after consideration of any objections to the Third Supplement; and

upon the record of the hearing held in support of the Third Supplement on September 27, 2007,

including this Court's consideration of the testimony and exhibits; and this Court having

determined that the relief requested in the Third Supplement is in the best interests of the Debtors,

their estates, their stakeholders, and other parties-in-interest; and this Court having entered an

Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To Implement A Short Term

Annual Incentive Program (Docket No. 2441) (the "AIP Order"), dated February 17, 2006; an

Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To:  (A) Fix Second Half 2006

AIP Targets And Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive

Program Hearing (Docket No. 4660) (the "Supplemental AIP Order"), dated July 21, 2006; and a

Second Supplemental Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To

Continue AIP For First Half Of 2007 (Docket No. 7474), dated March 29, 2007 (the "Second

Supplemental AIP Order") (the "AIP Order," the "Supplemental AIP Order," and the "Second

Supplemental AIP Order," collectively the "AIP Orders");[1] and it appearing that proper and

adequate notice of the Third Supplement was given and that no other or further notice is

necessary; and after due deliberation thereon, and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors have exercised reasonable business judgment in seeking the

authority to implement a short-term, at-risk performance payment program (the "AIP") covering

the six-month period running from July 1, 2007 through December 31, 2007.

B.      The Debtors' proposal to implement the AIP covering the second half of

2007 was proposed in good faith and is in all respects fair and reasonable.

C.      It is in the best interests of the Debtors, their estates, their stakeholders,

and other parties-in-interest, and it is necessary to the Debtors' reorganization efforts, that the

Debtors implement at this time an AIP for the period from July 1, 2007 through December 31,

2007.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

The AIP Order shall continue in full force and effect except as follows:

---

[1]     The KECP Motion as it relates to the KECP Emergence Incentive Program has been voluntarily withdrawn
from the agenda and would need to be re-noticed under the Eighth Supplemental Case Management Order to be
reinstated on the agenda.

1.      The relief requested in the Third Supplement is GRANTED as provided

herein.

2.      This Court approves the implementation at this time of an AIP covering

the six-month period from July 1, 2007 through December 31, 2007, and the Debtors are

authorized forthwith, pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1), to take all actions

consistent with this Third Supplemental AIP Order that are reasonably necessary to implement

an AIP for that period on the terms and conditions set forth in the AIP Orders; provided, however,

that the range of incentive compensation opportunities for Covered Employees during that period

shall be determined pursuant to the payout curves attached hereto as Exhibit 1, which do not

include any incentive compensation opportunities for corporate or divisional performance that is

below target.  Subject to the adjustments provided in paragraphs 3 and 4 of this Order, the

corporate-level EBITDAR target for the AIP covering the period from July 1, 2007 through

December 31, 2007 shall be $443.1 million.  The division-level OIBITDAR targets for the same

period shall be as follows:  (i) Powertrain, $123.8 million; (ii) Steering, $51.3 million; (iii)

Thermal Systems, $54.0 million; (iv) Electronics and Safety, $157.8 million; (v) Electrical and

Electronic Architecture, $183.8 million; (vi) Product and Service Solution, negative $1.5 million;

and (vii) Automotive Holdings Group, negative $134.4 million.

3.      For purposes of the AIP covering the period from July 1, 2007 through

December 31, 2007, EBITDAR and OIBITDAR shall be adjusted on a dollar-for-dollar basis to

reflect any positive or negative variance between the assumptions underlying the Debtors'

Preliminary Business Plan for 2007 (as adjusted for updated performance through May 31, 2007)

relating to the performance targets and the terms of the agreements reached with the Debtors'

Unions or General Motors Corporation affecting such performance targets using the protocol

3

previously agreed to with the Creditors' Committee attached hereto as <u>Exhibit 2</u>.  That is, any

costs or savings resulting from such agreements not incorporated into the Debtors' Preliminary

Business Plan and reviewed with the Creditors' Committee shall not affect (positively or

negatively) payments under the AIP.

        4.      The Creditors' Committee is authorized to adjust by up to $200 million,

for measurement purposes, the corporate EBITDAR performance for the second half of 2007 to

account for direct net savings realized by the Debtors because of any action, event, or

circumstance not contemplated by, or anticipated in, the Debtors' business plan, as reasonably

determined by the Creditors' Committee; provided, however, that in no event shall the Creditors'

Committee be authorized to adjust the corporate EBITDAR performance below the $443.1

million now provided for in paragraph 2 of this Third Supplemental AIP Order.  The Creditors'

Committee shall consult with the Debtors in making any such adjustment, but in no event shall

the Debtors have any right to reject or seek review by this Court of any such determination or

adjustment.  Such determination shall be made by the Creditors' Committee on or before  the

earlier of (i) the consummation of the Debtors' plan of reorganization or (ii) by February 15,

2008, and shall be based on actual results for the six-month period, if available, or if not

available, then on actual performance through November 30, 2007 and forecast performance for

the month of December 2007.

        5.      In the event that this Court enters a Confirmation Order confirming the

Joint Plan of Reorganization filed by the Debtors on September 6, 2007 (Docket No. 9263) (as

hereafter modified or superseded) on or prior to February 29, 2008, determinations regarding

future AIP performance periods from and after January 1, 2008 shall be made solely by the

Compensation Committee of the Delphi Corporation Board of Directors; otherwise, a hearing on

continuing the AIP for the performance period from January 1, 2008 through June 30, 2008 shall

be adjourned to the March 2008 omnibus hearing date to be set by the Court pursuant to the Case

Management Order, as amended, with notice to interested parties and an opportunity to object.

6.      This Court shall retain jurisdiction over the Debtors and Covered

Employees participating in any AIP implemented pursuant to this order, including without

limitation for the purpose of interpreting, implementing, and enforcing the terms and conditions

of this or any other AIP Order.

7.      The requirement under Rule 9013-1(b) of the Local Rules for the United

States Bankruptcy Court for the Southern District of New York for the service and filing of a

separate memorandum of law is satisfied by the Third Supplement.

8.      Terms undefined in this Third Supplemental AIP Order shall have the

meanings ascribed to them in the Third Supplement and the AIP Orders.

Dated: New York, New York
     _____, 2007

 

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

Payout Curves
AIP For Second Half 2007

# DELPHI CORPORATION
## 2nd 2007 6-month Corporate EBITDAR AIP Payout Curve



| | Target | Maximum |
|---|---|---|
| OIBITDAR | $443.1 | $864.1 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | $443.1 | 100% | $443.1 |
| 110% | $530.8 | 105% | $527.7 |
| 120% | $584.7 | 110% | $582.3 |
| 130% | $629.7 | 115% | $627.6 |
| 140% | $669.8 | 120% | $667.9 |
| 150% | $706.6 | 125% | $704.8 |
| 160% | $741.0 | 130% | $739.3 |
| 170% | $773.5 | 135% | $771.9 |
| 180% | $804.4 | 140% | $802.9 |
| 190% | $834.1 | 145% | $832.7 |
| 200% | $864.1 | 150% | $864.1 |



DELPHI CORPORATION
Proposed 2nd 2007 6-month Powertrain OIBITDAR AIP Payout Curve

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | $123.80 | 100% | $123.80 |
| 110% | $142.25 | 105% | $141.60 |
| 120% | $153.60 | 110% | $153.05 |
| 130% | $163.05 | 115% | $162.60 |
| 140% | $171.45 | 120% | $171.05 |
| 150% | $179.20 | 125% | $178.85 |
| 160% | $186.45 | 130% | $186.10 |
| 170% | $193.25 | 135% | $192.95 |
| 180% | $199.75 | 140% | $199.45 |
| 190% | $206.00 | 145% | $205.70 |
| 200% | $212.30 | 150% | $212.30 |

|  | Target | Maximum |
|---|---|---|
| OIBITDAR | $123.8 | $212.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |



DELPHI CORPORATION
Proposed 2nd 2007 6-month Steering OIBITDAR AIP Payout Curve

| | Non-DSB | | DSB | |
|---|---|---|---|---|
| | Payout | Performance | Payout | Performance |
| | 100% | $51.30 | 100% | $51.30 |
| | 110% | $60.45 | 105% | $60.10 |
| | 120% | $66.05 | 110% | $65.80 |
| | 130% | $70.75 | 115% | $70.50 |
| | 140% | $74.90 | 120% | $74.70 |
| | 150% | $78.75 | 125% | $78.55 |
| | 160% | $82.30 | 130% | $82.15 |
| | 170% | $85.70 | 135% | $85.55 |
| | 180% | $88.90 | 140% | $88.75 |
| | 190% | $92.00 | 145% | $91.80 |
| | 200% | $95.10 | 150% | $95.10 |

| | Target | Maximum |
|---|---|---|
| OIBITDAR | $51.3 | $95.1 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |



**DELPHI CORPORATION**
Proposed 2nd 2007 6-month Thermal OIBITDAR AIP Payout Curve

| | Target | Maximum |
|---|---|---|
| OIBITDAR | $54.0 | $92.2 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | $54.00 | 100% | $54.00 |
| 110% | $62.00 | 105% | $61.70 |
| 120% | $66.85 | 110% | $66.65 |
| 130% | $70.95 | 115% | $70.75 |
| 140% | $74.60 | 120% | $74.40 |
| 150% | $77.95 | 125% | $77.75 |
| 160% | $81.05 | 130% | $80.90 |
| 170% | $84.00 | 135% | $83.85 |
| 180% | $86.80 | 140% | $86.65 |
| 190% | $89.50 | 145% | $89.35 |
| 200% | $92.20 | 150% | $92.20 |



DELPHI CORPORATION
Proposed 2nd 2007 6-month Electronics & Safety OIBITDAR AIP Payout Curve

| | Target | Maximum |
|---|---|---|
| OIBITDAR | $157.8 | $237.3 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | $157.80 | 100% | $157.80 |
| 110% | $174.40 | 105% | $173.80 |
| 120% | $184.55 | 110% | $184.10 |
| 130% | $193.05 | 115% | $192.65 |
| 140% | $200.60 | 120% | $200.25 |
| 150% | $207.55 | 125% | $207.25 |
| 160% | $214.05 | 130% | $213.75 |
| 170% | $220.20 | 135% | $219.90 |
| 180% | $226.05 | 140% | $225.75 |
| 190% | $231.65 | 145% | $231.40 |
| 200% | $237.30 | 150% | $237.30 |



DELPHI CORPORATION
Proposed 2nd 2007 6-month Electrical / Electronic Architecture OIBITDAR AIP Payout Curve

|  | Target | Maximum |
|---|---|---|
| OIBITDAR | $183.8 | $278.0 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | $183.80 | 100% | $183.80 |
| 110% | $203.45 | 105% | $202.75 |
| 120% | $215.50 | 110% | $214.95 |
| 130% | $225.55 | 115% | $225.10 |
| 140% | $234.55 | 120% | $234.10 |
| 150% | $242.75 | 125% | $242.35 |
| 160% | $250.45 | 130% | $250.10 |
| 170% | $257.75 | 135% | $257.40 |
| 180% | $264.65 | 140% | $264.35 |
| 190% | $271.32 | 145% | $270.96 |
| 200% | $278.00 | 150% | $278.00 |



DELPHI CORPORATION
Proposed 2nd 2007 6-month Product Service Solutions OIBITDAR AIP Payout Curve

| | Target | Maximum |
|---|---|---|
| OIBITDAR | ($1.5) | $24.5 |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | ($1.50) | 100% | ($1.50) |
| 110% | $3.95 | 105% | $3.75 |
| 120% | $7.25 | 110% | $7.10 |
| 130% | $10.05 | 115% | $9.90 |
| 140% | $12.50 | 120% | $12.40 |
| 150% | $14.80 | 125% | $14.70 |
| 160% | $16.90 | 130% | $16.80 |
| 170% | $18.90 | 135% | $18.85 |
| 180% | $20.85 | 140% | $20.75 |
| 190% | $22.65 | 145% | $22.60 |
| 200% | $24.50 | 150% | $24.50 |



DELPHI CORPORATION
Proposed 2nd 2007 6-month Automotive Holdings Group OIBITDAR AIP Payout Curve

|  | Target | Maximum |
|---|---|---|
| OIBITDAR | ($134.4) | ($64.7) |
| Performance % | 100% | 200% |
| Payout % | 100% | 200% / 150% DSB |

| Non-DSB | | DSB | |
|---|---|---|---|
| Payout | Performance | Payout | Performance |
| 100% | ($134.40) | 100% | ($134.40) |
| 110% | ($119.85) | 105% | ($120.40) |
| 120% | ($110.95) | 110% | ($111.35) |
| 130% | ($103.50) | 115% | ($103.85) |
| 140% | ($96.85) | 120% | ($97.15) |
| 150% | ($90.75) | 125% | ($91.05) |
| 160% | ($85.05) | 130% | ($85.35) |
| 170% | ($79.70) | 135% | ($79.95) |
| 180% | ($74.55) | 140% | ($74.80) |
| 190% | ($69.65) | 145% | ($69.90) |
| 200% | ($64.70) | 150% | ($64.70) |

# Exhibit 2

Adjustment Protocol

# EBITDARUG Walk
## Prior Methodology Vs. Proposed

**DELPHI**

### Prior    $ millions

| | Target |
|---|---|
| Net income/(loss) -- GAAP | |
| Add: Income tax expense/(benefit) | |
| Income before income tax | |
| | |
| Add: Interest expense | |
| Less: Interest income | |
| Adjusted EBIT | |
| | |
| Add: Depreciation and amortization | |
| | |
| **Adjusted EBITDA** | |
| | |
| Add: OPEB Expense | |
| Less: OPEB Payments | |
| | |
| Add: Worker's Comp Expense | |
| Less: Worker's Comp Payments | |
| | |
| Add: Disability Expense | |
| Less: Disability Payments | |
| | |
| Add: FAS 112 Expense | |
| Less: FAS 112 Payments | |
| | |
| Less: Non-recurring Gains | |
| | |
| Add/Less Change in Hedge Accounting (FAS133) | |
| Add: One-time write-down of assets | |
| Add / Less: Cum effect of change in Acctg. Principle | |
| Add: Professional Fees | |
| Add: Loss/(Gain) on Reorganization Items | |
| Add: Restructuring Expense | |
| Less: Impact of "U/G" | |
| **EBITDAR** | - |

### Proposed   $ millions

| | Target |
|---|---|
| Net income/(loss) -- GAAP | |
| Add: Income tax expense/(benefit) | |
| Income before income tax | |
| | |
| Add: Interest expense | |
| Less: Interest income | |
| Adjusted EBIT | |
| | |
| Add: Depreciation and amortization | |
| | |
| **Adjusted EBITDA** | |
| | |
| Add: OPEB Expense | |
| Less: OPEB Payments | |
| | |
| Add: Worker's Comp Expense | |
| Less: Worker's Comp Payments | |
| | |
| Add: Disability Expense | |
| Less: Disability Payments | |
| | |
| Add: FAS 112 Expense | |
| Less: FAS 112 Payments | |
| | |
| Less: Non-recurring Gains | |
| | |
| Add/Less Change in Hedge Accounting (FAS133) | |
| Add: One-time write-down of assets | |
| Add / Less: Cum effect of change in Acctg. Principle | |
| Add: Professional Fees | |
| Add: Loss/(Gain) on Reorganization Items | |
| Add: Restructuring Expense | |
| Less: Impact of "U/G" | |
| **EBITDAR** | - |

> These items will be impacted by the 'U' and 'G' adjustment which will be a complex calculation. As such, the proposal is to remove these from EBITDAR calculation in order to avoid potential duplication

> U and G adjustments will include:
> GM Prices
> GM Subsidy
> Labor transformation Assumptions
> Operating performance change due to delay of restructuring
> Pension / OPEB expense
> Workers Comp Expense
> Disability Expense
> FAS112
> Inventory Revaluation
> Incentive Comp related to emergence, if any in 1st half

*Delphi Confidential*

7

*Draft - March 1st, 2007*

CONFIDENTIAL

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
    In re                           :          Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :          Case No. 05-44481 (RDD)
                                          :
                Debtors.               :          (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIRD SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 105 AND 363
AUTHORIZING DEBTORS TO CONTINUE SHORT TERM AT-RISK
PERFORMANCE PAYMENT PROGRAM ("AIP") FOR SECOND HALF OF 2007

("THIRD SUPPLEMENTAL AIP ORDER")

        Upon the Third Supplement To KECP Motion (Docket No. 213) Seeking Authority

To Continue Short Term At-Risk Performance Payment Program ("AIP") For Second Half Of

2007 (the "Third Supplement"), dated September 7, 2007, of Delphi Corporation ("Delphi") and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"); and upon the declarations of Nick Bubnovich, John D. Sheehan,

and Craig G. Naylor, each executed September 7, 2007 in support of the Third Supplement; and

after consideration of any objections to the Third Supplement; and upon the record of the hearing

held in support of the Third Supplement on September 27, 2007, including this Court's

consideration of the testimony and exhibits; and this Court having determined that the relief

requested in the Third Supplement is in the best interests of the Debtors, their estates, their

stakeholders, and other parties-in-interest; and this Court having entered an Order Under 11 U.S.C.

§§ 105 And 363 Authorizing The Debtors To Implement A Short- Term Annual Incentive

Program (Docket No. 2441) (the "AIP Order"), dated February 17, 2006; an Order Under 11 U.S.C.

§§ 105 And 363 Authorizing The Debtors To:  (A) Fix Second Half 2006 AIP Targets And

Continue AIP Program And (B) Further Adjourn KECP Emergence Incentive Program Hearing

(Docket No. 4660) (the "Supplemental AIP Order"), dated July 21, 2006; and a Second

Supplemental Order Under 11 U.S.C. §§ 105 And 363 Authorizing The Debtors To Continue AIP

For First Half Of 2007 (Docket No. 7474), dated March 29, 2007 (the "Second Supplemental AIP

Order") (the "AIP Order," the "Supplemental AIP Order," and the "Second Supplemental AIP

Order," collectively the "AIP Orders");[1] and it appearing that proper and adequate notice of the

Third Supplement was given and that no other or further notice is necessary; and after due

deliberation thereon, and good and sufficient cause appearing therefor,

                    IT IS HEREBY FOUND AND DETERMINED THAT:

        A.        The Debtors have exercised reasonable business judgment in seeking the

authority to implement a short-term, at-risk performance payment program (the "AIP") covering

the six-month period running from July 1, 2007 through December 31, 2007.

        B.        The Debtors' proposal to implement the AIP covering the second half of

2007 was proposed in good faith and is in all respects fair and reasonable.

        C.        It is in the best interests of the Debtors, their estates, their stakeholders, and

other parties-in-interest, and it is necessary to the Debtors' reorganization efforts, that the Debtors

implement at this time an AIP for the period from July 1, 2007 through December 31, 2007.

                    IT IS ORDERED, ADJUDGED, AND DECREED THAT:

        The AIP Order shall continue in full force and effect except as follows:

        1.        The relief requested in the Third Supplement is GRANTED as provided

herein.

---

[1]    The KECP Motion as it relates to the KECP Emergence Incentive Program has been voluntarily withdrawn from
       the agenda and would need to be re-noticed under the Eighth Supplemental Case Management Order to be

                                                                                        *(cont'd)*

2        DeltaView comparison of pcdocs://chisr02a/646503/1 and pcdocs://chisr02a/648277/1.
Performed on 9/26/2007.

2.      This Court approves the implementation at this time of an AIP covering the

six-month period from July 1, 2007 through December 31, 2007, and the Debtors are authorized

forthwith, pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1), to take all actions consistent with this

Third Supplemental AIP Order that are reasonably necessary to implement an AIP for that period

on the terms and conditions set forth in the AIP Orders; provided, however, that the range of

incentive compensation opportunities for Covered Employees during that period shall be

determined pursuant to the payout curves attached hereto as Exhibit 1, which do not include any

incentive compensation opportunities for corporate or divisional performance that is below target.

~~The~~Subject to the adjustments provided in paragraphs 3 and 4 of this Order, the corporate-level

EBITDAR target for the AIP covering the period from July 1, 2007 through December 31, 2007

shall be $443.1 million.  The division-level OIBITDAR targets for the same period shall be as

follows:  (i) Powertrain, $123.8 million; (ii) Steering, $51.3 million; (iii) Thermal Systems, $54.0

million; (iv) Electronics and Safety, $157.8 million; (v) Electrical and Electronic Architecture,

$183.8 million; (vi) Product and Service Solution, negative $1.5 million; and (vii) Automotive

Holdings Group, negative $134.4 million.

3.      For purposes of the AIP covering the period from July 1, 2007 through

December 31, 2007, EBITDAR and OIBITDAR shall be adjusted on a dollar-for-dollar basis to

reflect any positive or negative variance between the assumptions underlying the Debtors'

Preliminary Business Plan for 2007 (as adjusted for updated performance through May 31, 2007)

relating to the performance targets and the terms of the agreements reached with the Debtors'

Unions or General Motors Corporation affecting such performance targets using the protocol

previously agreed to with the ~~official committee of unsecured creditors (the "Creditors'~~

---

*(cont'd from previous page)*
    reinstated on the agenda.

3      DeltaView comparison of pcdocs://chisr02a/646503/1 and pcdocs://chisr02a/648277/1.
Performed on 9/26/2007.

Committee"). Creditors' Committee attached hereto as Exhibit 2. That is, any costs or savings resulting from such agreements not incorporated into the Debtors' Preliminary Business Plan and reviewed with the Creditors' Committee shall not affect (positively or negatively) payments under the AIP.

      4.    The Creditors' Committee is authorized to adjust by up to $200 million, for measurement purposes, the corporate EBITDAR performance for the second half of 2007, if and as necessary,2007 to account for direct net savings realized by the Debtors because of transformation actionsany action, event, or circumstance not contemplated by, or anticipated in, the Debtors' business plan or other such unanticipated circumstances, as reasonably determined by the Creditors' Committee; provided, however, that in no event willshall the Creditors' Committee be authorized to adjust the corporate EBITDAR performance below the $443.1 million now provided for in paragraph 2 of this Third Supplemental AIP Order. The Creditors' Committee shall consult with the Debtors in making any such adjustment, but in no event shall the Debtors have any right to reject or seek review by this Court of any such determination or adjustment. Such determination shall be made by the Creditors' Committee on or before December 31, 2007 based the earlier of (i) the consummation of the Debtors' plan of reorganization or (ii) by February 15, 2008, and shall be based on actual results for the six-month period, if available, or if not available, then on actual performance through November 30, 2007 and forecast performance for the month of December 2007.

      5.    4.In the event that this Court enters a Confirmation Order confirming the Joint Plan of Reorganization filed by the Debtors on September 6, 2007 (Docket No. 9263) (as hereafter modified or superseded) on or prior to February 29, 2008, determinations regarding future AIP performance periods from and after January 1, 2008 shall be made solely by the

Compensation Committee of the Delphi Corporation Board of Directors; otherwise, a hearing on

continuing the AIP for the performance period from January 1, 2008 through June 30, ~~2008,~~2008

shall be adjourned to the March~~,~~ 2008 omnibus hearing date to be set by the Court pursuant to the

Case Management Order, as amended, with notice to interested parties and an opportunity to

object.

       6.      ~~5.~~ This Court shall retain jurisdiction over the Debtors and Covered

Employees participating in any AIP implemented pursuant to this order, including without

limitation for the purpose of interpreting, implementing, and enforcing the terms and conditions of

this or any other AIP Order.

       7.      ~~6.~~ The requirement under Rule 9013-1(b) of the Local Rules for the United

States Bankruptcy Court for the Southern District of New York for the service and filing of a

separate memorandum of law is satisfied by the Third Supplement.

       8.      ~~7.~~ Terms undefined in this Third Supplemental AIP Order shall have the

meanings ascribed to them in the Third Supplement and the AIP Orders.

Dated: New York, New York
_____, 2007

_____
UNITED STATES BANKRUPTCY JUDGE

6       DeltaView comparison of pcdocs://chisr02a/646503/1 and pcdocs://chisr02a/648277/1.
Performed on 9/26/2007.

# Exhibit C

## Historic Delphi Executive Compensation Structure

### All Executives



**Delphi Executive Compensation Structure as of 09/27/07**

**All Executives**



**Delphi Executive Compensation Structure if Second Half 2007 AIP Approved**

**All Executives**



**Historic Delphi Executive Compensation Structure**

**Non-DSB**



**Delphi Executive Compensation Structure as of 09/27/07**

**Non-DSB**



**Delphi Executive Compensation Structure if Second Half 2007 AIP Approved**

**Non-DSB**



**Historic Delphi Executive Compensation Structure**

**DSB**



**Delphi Executive Compensation Structure as of 09/27/07**

**DSB**



## Delphi Executive Compensation Structure if Second Half 2007 AIP Approved

## DSB



# Exhibit D

# Comparison of UAW-Delphi Agreements

<u>UAW-Delphi Supplemental Agreement</u>, Article 2, page 6 (April 29, 2004):

- "Equivalence of Sacrifice" – *"Delphi commits to the principle of 'equivalence of sacrifice' when establishing compensation and benefit levels for salaried employees and management, to ensure that sacrifices by UAW-represented employees are reflected in the pay and benefit practices of all non-represented employees."*

<u>UAW-Delphi-GM Memorandum Of Understanding – Delphi Restructuring</u>, Section I, page 20 (June 22, 2007):

- "Equivalence of Sacrifice" – *"Delphi reaffirms its commitment to the principle of 'equivalence of sacrifice' when establishing compensation and benefit levels for salaried employees and management, to ensure that sacrifices by UAW-represented employees are reflected in the pay and benefit practices of all non-represented employees.  Information provided by Delphi related to this matter will be in accordance with the requirements of the Supplemental Agreement."*

