**Hearing Date: September 27, 2007**
**Hearing Time:  10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
   In re                                      :   Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :   Case No. 05-44481 (RDD)
                                              :
                    Debtors.                  :   (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS' MOTION FOR ORDER,
PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c), (A) ESTIMATING AND SETTING
MAXIMUM CAP ON CERTAIN CONTINGENT OR UNLIQUIDATED CLAIMS AND
<u>(B) APPROVING EXPEDITED CLAIMS ESTIMATION PROCEDURES</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this omnibus reply (the "Reply") to the objections to the Motion For Order, Pursuant To 11 U.S.C. §§ 105(a) And 502(c), (a) Estimating And Setting Maximum Cap On Certain Contingent Or Unliquidated Claims And (b) Approving Expedited Claims Estimation Procedures (the "Motion"),[1] dated September 7, 2007, and respectfully represent as follows:

Preliminary Statement

1. The Motion seeks to establish an expeditious and effective system by which the Debtors can estimate and set the maximum potential liability on certain contingent and unliquidated claims ("Maximum Capped Amount").  Under Article 12.2 of the Debtors' joint plan of reorganization filed September 6, 2007 (the "Plan") and section 1.1 of Amended Exhibit B to the Delphi-Appaloosa Equity Purchase Commitment Agreement (the "EPCA"), one condition precedent to the effectiveness of the Plan is that the aggregate amount of certain trade and other unsecured claims that have been asserted or scheduled, but not yet disallowed as of the effective date of such plan of reorganization, must be allowed or estimated by this Court for purposes of distribution and establishing distribution reserves in an aggregate amount of no more than $1.7 billion.  The relief requested in the Motion is necessary to comply with this requirement.  By the Motion, the Debtors seek entry of an order (a) estimating and setting a Maximum Capped Amount on certain contingent or unliquidated claims and (b) approving expedited claims estimation procedures (the "Estimation Procedures").

2. Most of the claimants affected by the Motion have not objected to the Debtors' proposed estimate of their claims or the proposed Estimation Procedures.  Indeed, only

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

2

16 of the approximately 68 Claimants served with the Motion, have filed timely objections (collectively, the "Objections"). Of these 16 Objections, nine objected to only the estimated amount proposed by the Debtors (collectively, the "Estimation Objections") and not to the Estimation Procedures themselves. The seven remaining Objections objected to both the Estimation Procedures (collectively, the "Procedures Objections") and the estimated amount proposed by the Debtors. Of these seven Procedures Objections, six have been resolved as of the date of this Reply.

3. Thus, only one claimant has a pending Procedures Objection to the Motion: Technology Properties, Ltd. ("TPL"), which asserts a $4.144 billion patent infringement claim based on 83 proofs of claim that it filed against the Debtors. TPL's claim, the merits of which the Debtors strongly contest, reflects the highest variance in the Debtors' claims pool between the asserted amount and the Debtors' actual estimate of such claim. This claim is particularly appropriate for estimation and for the reasons set forth herein, TPL's Procedures Objection is without merit and should be overruled.

4. For this Court's convenience, a chart summarizing each of the Procedures and Estimation Objections is attached hereto as <u>Exhibit A</u>. Attached as <u>Exhibit B</u> hereto is a proposed revised order (the "Revised Order")[2] reflecting the discussions between the Debtors and certain of the parties that filed both Procedures Objections and Estimation Objections. Specific provisions have been added to the Revised Order to reflect the reservation of certain claimants asserted rights. In the Debtors' view, the Revised Order addresses and reasonably disposes of all of the Procedures Objections, except that of TPL. Accordingly, the Debtors

---

[2] Attached hereto as <u>Exhibit C</u> is a copy of the Revised Order, without exhibits, marked to show revisions to the form of proposed order that was submitted with the Motion.

believe that the modifications reflected in the proposed Revised Order more than adequately address the issues raised in the Objections.

    5.  The Counterproposals set forth in the Estimation Objections will be addressed through the Estimation Procedures.  In the Motion, the Debtors proposed that any Claimant who disagreed with the Maximum Capped Amount submit a counterproposal for a different maximum capped amount for its unliquidated claim (the "Counterproposal").  All of the claimants who filed an Estimation Objection included a Counterproposal with their Objections. The Debtors propose that estimation of claims for which a Counterproposal was filed be adjourned to a future date to be noticed by the Debtors, consistent with the Estimation Procedures outlined in the Motion.

Argument

A. TPL's Failure To Substantiate Its Claim And Inability To Identify The Scope Of Alleged Damages Make It Appropriate For Estimation

    6.  TPL asserts that the Estimation Procedures will not allow TPL to provide adequate information to the Court for it to make "even the roughest" assessment of its patent-infringement claim.  TPL ignores the fact that under the Estimation Procedures, claimants would have the ability, upon a showing of good cause, to require this Court to modify aspects of the Estimation Procedures that are necessary or appropriate.  See Proposed Order to Motion ¶ 10(f). Thus, TPL's unresolved Procedures Objection should be denied.

    7.  TPL asserts that it holds certain patents to microprocessors that can be found in virtually any high-tech product.  Even though the Debtors do not manufacture microprocessors, TPL asserts that the Debtors violate patents by selling products containing microprocessors.  Over a year ago, TPL filed 83 separate proofs of claim (collectively, the "Proofs of Claim") against 42 Debtors, asserting identical unliquidated, unsecured, non-priority

4

claims arising from alleged patent infringement occurring between October 9, 1999 and October 8, 2005. In its Counterproposal, TPL, for the first time, quantified the amount of damages that it believes the Debtors have caused through infringement of TPL's patents. In response to the Debtors' request for a Counterproposal, TPL seeks to have its claims capped at $4.144 billion[3] – approximately 2.5 times the $1.7 billion targeted amount for certain general unsecured claims under the EPCA and the Plan. Obviously, allowance of a claim in the face amount asserted by TPL would prevent the Debtors from successfully reorganizing. This fact alone dictates the need for this Court to estimate this claim.

8.  As a threshold matter, TPL's failure to provide proper notice that identifies any particular product of the Debtors should bar TPL's ability to collect damages until proper notice is provided. Consequently, it is TPL's failure to provide proper notice that makes estimation possible. See 35 U.S.C. § 287(a). TPL did not provide actual notice prior to the Petition Date because it failed to identify any Delphi product that it contended infringed its patents. It is the Debtors' position that actual notice requires affirmative communication of a specific charge of infringement by a specific accused product or device. See Amsted Indus. Incorp. v. Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed. Cir. 1994); Uniboard Aktiebolag v. Acer America Corp., 118 F. Supp.2d 19, 26 (D.D.C. 2000).

9.  On April 21, 2004, TPL's predecessor-in-interest Scientific Corporation sent a letter to J.T. Battenberg III, Delphi's then-President, Chief Executive Officer, and Chairman of the Board of Directors, that asserted ownership of US 5,809,336 patent and other patents in the "'336 family" that were directed to high performance microprocessors. The letter

---

[3]   TPL's counsel has confirmed to Debtors' counsel that the figure of "$4,144 million" stated in TPL's Objection is indeed $4.144 billion.

5

merely stated that the "patents in the '336 family may be relevant to your operations, products, and/or systems."[4]  On July 20, 2005, TPL sent a letter to Rodney O'Neal, Delphi's then-President, Chief Operating Officer, and director, that vaguely asserted that some of Delphi's products might have been infringing on TPL's microprocessor patent.[5]  Nowhere in either of these letters did TPL specify which particular products infringed TPL's patents or the manner in which they purportedly infringed the patents.  These letters are the only "notices" by TPL to Delphi prior to the Petition Date.  At no time before the Petition Date did TPL detail how the Debtors are purportedly infringing its patents, much less show the amount it has been damaged by the allegedly infringing activities.[6]  Thus, the Debtors believe that TPL's prepetition claims can be readily estimated on grounds that TPL failed to provide requisite notice to the Debtors of purported patent infringement as required under U.S. Patent law before the petition date thus barring any potential accrual of damages to support its Proof of Claims.  See 35 U.S.C. §287(a).

---

[4]     A copy of this letter, which was provided to the Debtors' counsel by TPL's counsel, is attached hereto as <u>Exhibit D</u>.

[5]     A copy of this letter which was contained in TPL's Objection is attached hereto as <u>Exhibit E</u>.

[6]     In its Proofs of Claim, TPL neglected to provide an asserted amount for its alleged damages or even an estimate of its damages and failed to identify the precise scope of the actual infringement.  In its response dated November 21, 2006 to the Debtors' objection to the Proofs of Claim, TPL only explained the nature of the technology in question as "likely infringing products include, satellite Radios, vehicle audio entertainment, vehicle connectivity, vehicle electronic controls, vehicle microelectronics, and medical electronics," but has failed to demonstrate, in even a cursory fashion, how the Debtors' products have infringed TPL's patents.  See Response To Objection To Claims Of Technology Property, Ltd., at 3 (Docket No. 5625).  Only recently, in August 2007, did TPL identify products that may infringe TPL patents, but TPL did not identify in any meaningful way how these products infringed TPL's patents.  Specifically, TPL provided the Debtors with certain Delphi schematics which demonstrated that certain of the Debtors' products contained microprocessors, but TPL did not make any attempt to show how the microprocessors violated its patents, much less support TPL's $4.144 billion estimate of damages.

6

B.   The Proposed Estimation Procedures Are Appropriate As Applied To TPL And Other Claimants

10.   Courts frequently estimate claims pursuant to section 502(c) of the Bankruptcy Code when estimation of the pool of contingent or unliquidated claims is necessary to avoid undue delay, even though the amount of any one claim in that pool may arguably be insufficient, standing alone, to cause undue delay.  TPL's Procedures Objection fails to acknowledge that the issue of contingent and unliquidated claims is significant in these cases.  As stated in the Motion, more than 6,000 Proofs of Claim assert contingent or unliquidated claims against the Debtors.  In total, these contingent and unliquidated Proofs of Claim may have a highly material impact on the ultimate amount of allowable claims asserted against the Debtors.

11.   Furthermore, the current posture of the Debtors' cases necessitates the relief sought in the Motion.  The Debtors' inability to estimate certain unliquidated or contingent claims would likely have a material negative impact upon the Debtors' ability to confirm and consummate a plan of reorganization in these cases and would therefore unduly delay the Debtors' emergence from chapter 11.

12.   Courts have repeatedly acknowledged that one of the primary purposes for estimation under section 502(c) of the Bankruptcy Code is to facilitate the reorganization plan process.  See, e.g., In re Federal-Mogul Global, Inc., 330 B.R. 133, 154 (D. Del. 2005) (object of proceeding under section 502(c) "is to establish the estimated value of a creditor's claim for purposes of formulating a reorganization plan"); In re Stone & Webster, Inc., 279 B.R. 748, 810 (Bankr. D. Del. 2002) ("[a]n estimation proceeding expedites the bankruptcy process so that key steps in a reorganization that depend on the fixing of value may proceed"); In re Interco Inc., 137 B.R. 993, 998 (Bankr. E.D. Mo. 1992) (granting motion to estimate claim when debtors had stated intent to file plan of reorganization within one year and had "shown a substantial

7

momentum toward reorganization" and when failure to estimate claim would "adversely affect Debtors' ability to formulate and implement a plan of reorganization"). The Debtors find themselves in a similar position. As this Court and all parties-in-interest are well aware, the Debtors have made significant progress toward implementing their transformation plan and hope to propose a consensual plan of reorganization and proceed to its confirmation and consummation. The Debtors' ability to achieve their goal of emergence, however, is predicated upon their ability to determine the maximum allowable amount of their general unsecured claims. The ability to estimate the amount of contingent and unliquidated claims against the Debtors is a necessary element of ascertaining the total allowable claims pool. Therefore, the Debtors respectfully request that this Court overrule TPL's Procedures Objection to the extent that such Objection seeks to limit the Debtors' ability to estimate claims pursuant to section 502(c) of the Bankruptcy Code.

## Conclusion

13. The relief requested in the Motion, including the Estimation Procedures are not only reasonable, but are essential to emergence from chapter 11. The Debtors therefore request that this Court grant the relief requested in the Motion.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) granting the Motion, subject to the modifications made to the Revised Order, (b) overruling the Objections, to the extent that not resolved by the modifications reflected in the Revised Order, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       September 26, 2006

                SKADDEN, ARPS, SLATE, MEAGHER
                    & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession