**Hearing Date:  October 26, 2007**
                                                        **Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :
    In re                                    :      Chapter 11
                                                   :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                                   :
                                                 :      (Jointly Administered)
                                                 :
                Debtors.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO
PROOF OF CLAIM NO. 10157 (GARY WHITNEY)**

("SUPPLEMENTAL REPLY – GARY WHITNEY")

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Delphi" or "Debtors"), hereby submit this Supplemental Reply With Respect To Proof Of Claim No. 10157 (Gary Whitney) (this "Supplemental Reply") and respectfully represent as follows:

Introduction

1.  Gary Whitney, a former salaried at-will employee of Delphi's consumer electronics division who was hired in January 2003 and worked there for eighteen months, alleges that his supervisor, Mike Roberts, and the human resources director for the division, Burt Valanty, terminated him because of his age. However, Whitney was relieved of his position — as were the division's director and other sales managers working in fall 2003 — after months of constant criticism about the performance of that sales management team from the division's most important business partner, XM Satellite Radio ("XM"). Whitney was not singled out because of his age.

2.  Indeed, XM's complaints were the very reason why Joe Damato was hired in mid-November 2003 to replace the former head of the division. Mike Roberts was then hired in mid-December 2003 as the new head of national sales. Upon their arrival, Damato and Roberts restructured the sales organization and hired new individuals to oversee the relationships of the division's largest national customers. Damato and Roberts observed the performance of the two remaining regional sales managers from the 2003 sales management team — Tyler Orton and Gary Whitney. After months of observing them and not being particularly impressed with their performance or initiative, Roberts decided to replace both of them with two proven regional sales managers with whom he had worked at his former job at Kenwood Electronics. There was not even a hint of age discrimination in the decision to let Orton and Whitney go.

1

        3.      Whitney, attempting to avoid the overall context of his termination, argues that a few isolated facts paint a more sinister picture. However, Whitney will not be able to meet his burden of proving his claim for age discrimination. Rather, the evidence will show that Roberts' reasons for deciding to terminate Orton and Whitney and replacing them with his former regional managers at Kenwood had absolutely nothing to do with age. Whitney's other related claims, which he does not even reference in his supplement response, suffer similar defects. Whitney's claims should be disallowed and expunged in their entirety.

Background

        4.      In 2002 and 2003 Delphi's consumer electronics department was growing at a rapid rate, primarily due to its newly formed partnership with XM. Delphi's relationship with XM quickly became the primary source of business for its consumer electronics division. On January 6, 2003, Whitney was hired by Delphi as the division's western regional sales manager and thereafter was responsible essentially for all U.S. retail sales to customers headquartered west of the Mississippi River. When Whitney was hired, Don LaDieu was the director of the consumer electronics division, and Bob Kustasz was the national sales manager for that division. Tyler Orton was later hired as the division's eastern regional sales manager.

        5.      In 2003 sales of XM-related products grew exponentially. The satellite radio business was booming and consumed the largest proportion of the time and resources of Delphi's consumer electronics sales management team. XM quickly became the consumer electronics group's largest and most important business partner. At the same time as sales of XM-related products were growing exponentially, XM's complaints about the poor performance of Delphi's sales management team that was in place in summer and fall 2003 (the "2003 sales management team") increased. In response to XM's increasing dissatisfaction with the 2003

2

sales management team, Delphi made substantial changes in personnel, organizational structure, and overall approach to managing the XM relationship in order to keep XM — the lifeblood of the division — happy with Delphi as its business partner.

    6.  In late September 30, 2003, Bob Kustasz was fired as national sales manager, and on November 1, 2003, Don LaDieu was demoted from the director of the division. Subsequently, on November 17, 2003, Delphi hired Damato as LaDieu's replacement as the consumer electronics director, and on December 15, 2003, Delphi hired Mike Roberts to replace Kustasz as the national sales manager. Thus, by late 2003, Whitney had new supervisors: Damato was his second-level supervisor, and Roberts was his immediate supervisor.[1]

    7.  In the months that followed, neither Damato nor Roberts was impressed by either of the regional sales managers, Orton or Whitney. Particularly noticeable was their lack of initiative and inability to be autonomous. Accordingly, Roberts, formerly head of national sales for Kenwood Electronics, decided to replace Orton and Whitney with two regional sales managers from Kenwood Electronics with whom he already had worked — Jeff Runyon and Oliver Williams. Because 46-year-old Runyon replaced 32-year-old Orton as eastern regional sales manager and 37-year-old Williams replaced 57-year-old Whitney as western regional sales manager, it is nonsensical to claim, as Whitney does, that Roberts was replacing existing employees only to hire younger ones. Rather, the most logical explanation — and the one that is in fact true — is that Roberts decided to hire Runyon and Williams because Orton and Whitney were not living up to his expectations and he had worked well with Runyon and

---

[1]  One of the strategic decisions that Damato and Roberts made after they arrived was to place more attention to the division's largest customers (e.g., Walmart, Best Buy, and Circuit City). Accordingly, two full-time sales managers and one sales rep firm were hired, each to focus solely on overseeing one of the three relationships. Although Delphi's statement of disputed issues suggests that Delphi had not sold any products to Best Buy and Circuit City before that time, Delphi's further investigation revealed that Delphi was already was selling products to these customers; the strategic change that Damato and Roberts implemented was to began to place more attention on selling products to these customers by hiring someone to focus solely on managing each of those relationships.

3

Williams in the past at Kenwood. Roberts knew that Runyon and Williams had the initiative, motivation, and experience that Roberts was looking for in his regional managers.

8. Orton was terminated on March 5, 2004, and Whitney on June 23, 2004. Neither was given a formal poor performance evaluation by Damato or Roberts before they were terminated. Nor was either of them placed on a performance improvement plan. And both were offered a severance package in exchange for a general release of claims. Thus, the termination process was essentially the same for both 32-year-old Orton and 57-year-old Whitney. Yet Whitney argues that Damato and Roberts did not notify him of his performance deficiencies and coach him under a performance improvement plan specifically because of his age. The facts tell another story, however.

9. On June 23, 2004, Roberts and Burt Valanty, who was the human resources director for the division, traveled to California to meet with Whitney and notify him that he was terminated. As an initial matter, neither Roberts nor Valanty recall Whitney accusing them of age discrimination. The reason for Whitney's termination was simple: Roberts did not think that the company needed the two regional sales managers who were part of the 2003 sales management team criticized by XM and who did not show any compelling initiative or autonomy during the time Roberts oversaw them. Neither this decision nor the steps leading up to it were fueled in any way by Whitney's age.[2]

---

[2] In Whitney's declaration, he states that the Debtors, in their statement of dispute issues, alleged that his "skills were not suited to the Consumer Electronics Division's strategic direction of selling products in major consumer electronics retail stores like Best Buy and Circuit City." (G. Whitney Decl. ¶ 44.) Whitney is mistaken. The Debtors' statement of disputed issues actually reads: "Whitney's skills were not suited to the division's strategic direction [and] he was not effective in his sales position." (Statement of Disputed Issues ¶ 7.) This statement is true. Whitney also takes issue with the Debtors' statement that he lacked the "connections and ability to successfully operate in the major retail electronics field." (G. Whitney Decl. ¶ 46.) In Roberts' opinion, Whitney simply could not operate successfully because Whitney was not sufficiently autonomous and lacked initiative. Whitney has made other factual assertions in his papers, including factual assertions that occurred during the termination meeting. As noted above, the Debtors reserve their right to

4

Argument

10.     Whitney cannot establish the elements of his four claims.  As an initial matter, Whitney cannot meet his burden of proof on his disparate-treatment age-discrimination claim under the California Fair Employment and Housing Act ("FEHA") because he cannot prove age discrimination through either direct or circumstantial evidence of discrimination.  Nor can Whitney show the required elements of his wrongful termination and emotional distress claims.  All of Whitney's claims should be disallowed and expunged.

    A.     Whitney Cannot Prove Age Discrimination Through Direct Evidence

11.     As Whitney rightly concedes, "direct evidence of intentional discrimination is rare."  Guz v. Bechtel Nat'l, Inc., 100 Cal. Rptr. 2d 352, 378 (Cal. 2000).  Whitney cites three instances which he believes constitute direct evidence of age discrimination: (i) Don Ladieu's alleged statement that Whitney was fired because of age, (ii) Roberts' and Valanty's "adoptive admission by silence" when allegedly accused by Whitney of age discrimination at the meeting at which he was terminated, and (iii) a comment that Whitney was old that allegedly Roberts and unnamed others made at dinner during a three-day sales meeting in April 2004 after learning it was Whitney's 57th birthday.  Whitney cannot show that these three alleged incidents constitute direct evidence of age discrimination or otherwise prove age discrimination.

12.     As an initial matter, whether or not LaDieu in fact believed that Whitney was terminated based on his age is irrelevant.  LaDieu was not Whitney's supervisor at the time Whitney was fired and was not involved in the decision-making process.  Thus, even if LaDieu did tell Whitney that he thought Whitney was fired because of his age, such a statement would be

---

dispute any such assertions with deposition testimony and discovery responses once such depositions and discovery are complete.

speculation of the state of mind of Whitney's actual supervisors who made the decision to fire him, and would not constitute direct evidence of their intentions. See Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 733 (7th Cir. 1998) ("Only evidence on the attitudes of the employees involved in the decision to fire the plaintiffs is relevant [in an employment discrimination case].").

   13. Moreover, neither Roberts nor Valanty recall Whitney accusing them of age discrimination during the termination meeting. Even if Whitney did so and Roberts and Valanty remained silent for a few seconds, Whitney still fails to cite any California case in which a court considered such silence as "direct evidence" of age discrimination.

   14. Lastly, even assuming Roberts and other unnamed individuals said at an April 2004 sales dinner that Whitney was old only after learning that it was his birthday, such comments would be stray remarks that occurred months before Whitney was fired and had nothing to do with the decision-making process. As an initial matter, any comment by non–decision makers who were celebrating Whitney's birthday is not direct evidence of age discrimination. See, e.g., Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) (direct evidence of discrimination "does not include stray remarks in the workplace, particularly those made by nondecisionmakers"). Moreover, even assuming Roberts made such a comment, it predated the termination, bore no relation to the decision-making process, and thus is not direct evidence of discrimination. See, e.g., Gibbs v. Consol. Servs., 4 Cal. Rptr. 3d 187, 191 (Ct. App. 2d Dist. 2003) (supervisor's comment that "plaintiff was too old to drive played no role in the decision to terminate him from the position of operations supervisor" and thus was a stray remark that did not establish discrimination).

B.      Whitney Cannot Prove Age Discrimination Through Circumstantial Evidence

15.     Nor can Whitney establish intentional discrimination through circumstantial evidence through the McDonnell Douglas burden-shifting analysis, which California courts have adopted for claims under California Government Code § 12940. See Guz, 100 Cal. Rptr. 2d at 378. As an initial matter, the plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of age discrimination. Id. If the plaintiff does so, the burden shifts to the employer to produce some evidence that "its action was taken for a legitimate, nondiscriminatory reason." Id. at 379. If the employer presents such evidence, the inference created by the plaintiff's *prima facie* case "disappears." Id. A plaintiff can then present "evidence of dishonest reasons, [and when] considered together with the elements of the prima facie case, *may permit* a finding of prohibited bias." Id. at 380 (emphasis added). However, "[t]he ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." Id.

16.     To establish a *prima facie* case of age discrimination, Whitney must prove by a preponderance of the evidence the following elements:

> Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

Id. at 379 (citations omitted). "Performing competently" means that the employee "was meeting the legitimate expectations of her employer at the time of discharge." Armedilla v. S. Cal. Permanente Med. Group, No. B151472, 2002 WL 1065538, at *5 (Cal. Ct. App. 2d Dist. May

7

29, 2002) (unpublished) (citations omitted).  Whitney cannot prove the elements of a *prima facie* case.[3]

17.  Whitney cannot show that he was meeting Roberts' legitimate job expectations.  Roberts legitimately expected that his sales management team not be the target of criticism from key customers — in this case, XM.  Moreover, Roberts legitimately expected his two regional sales managers, Orton and Whitney, to have taken more initiative regarding their job than they did and been able to operate more autonomously.  The evidence will show that Roberts' expectations were legitimate and that both 32-year-old Orton and 57-year-old Whitney did not live up to those expectations.

18.  Whitney's evidence does not prove that he was meeting Roberts' legitimate expectations at the time of Whitney's discharge.  As an initial matter, Whitney seems to suggest that his *past* performance evaluations establish that Whitney was meeting Roberts' legitimate expectations at the time Whitney was discharged. Not so.  See Miller v. Citizens Security Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997) (past performance evaluations "are not evidence that [employee] was meeting [employer's] legitimate expectations when [employer] fired him because they are too far removed in time from the date of [employee's] discharge").

19.  Moreover, Whitney also suggests that Damato's or Roberts' failure to follow general provisions of Delphi's employee manual proves that Whitney was meeting the legitimate expectations of Roberts.  It does not.  See Guz, 100 Cal. Rptr. 2d at 396 (Chin, J., concurring) ("'The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action.' . . .

---

[3]  Whitney argues that he does not need to prove at the hearing the second element of his *prima facie* case, i.e., that he was competently performing his job. (Suppl. Resp. at 10 n.7.)  In support of his argument, he cites a Seventh Circuit case and an excerpt from a book authored by his attorney in this case that relies on that same case.  However, Whitney fails to cite any California case adopting the Seventh Circuit principle or otherwise relieving Whitney of his burden under Guz to prove all elements of a *prima facie* case at trial.

8

The employer's failure 'to follow its own Manual . . . does not even hint that the real motive was age discrimination.'" (citations omitted)).[4]

20.     Lastly, contrary to Whitney's argument, he will not be able to show by a preponderance of the evidence that, at the time he was terminated, "Mr. Whitney's immediate supervisor (Mike Roberts) and Delphi's Human Resources Director (Burt Valanty) *admitted* that Mr. Whitney's performance was satisfactory." (Suppl. Resp. ¶ 26 (emphasis in original).) Indeed, Whitney's declaration makes no reference to Valanty admitting to any such statement.

C.     <u>Delphi Had A Legitimate, Nondiscriminatory Reason For Terminating Whitney</u>

21.     Even if Whitney proves by a preponderance of the evidence all elements of a *prima facie* case, Whitney's claim would still fail because Roberts fired Whitney based on legitimate, nondiscriminatory reasons: the perceived poor relationship and interaction Whitney had with the division's largest business partner, XM; the lack of initiative and autonomy that Roberts observed in Whitney in the months when Roberts supervised him; and, consequently, the need to get better performing employees in those roles, such as Roberts' former regional sales managers at Kenwood. These reasons are perfectly legitimate, nondiscriminatory reasons for Whitney's termination.

D.     <u>Whitney Cannot Prove Pretext Or Meet His Ultimate Burden Of Persuasion Of Intentional Age Discrimination</u>

22.     Given that Delphi has articulated and will proffer evidence of Roberts' legitimate, nondiscriminatory reasons for terminating Whitney, any presumption of discrimination that would have been created if Whitney proved a *prima facie* case "disappears."

---

[4]  Whitney's related argument — his performance is "presumed" excellent at the time of his termination because he was never notified otherwise and Delphi's employee manual required such notification — does not show that Whitney was *actually* living up to Roberts' legitimate expectations. (Suppl. Resp.¶ 27.) The only way such an inference could hold up is if Delphi employees who performed poorly were *always* given formal poor performance reviews and put on a performance improvement plan. Whitney offers no evidence of that fact. See Guz, 100 Cal. Rptr. 2d at 396 ("Federal courts cannot ensure that business decisions are always informed or even methodical." (citations omitted)).

9

Guz, 100 Cal. Rptr. 2d at 379. "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." Id. at 380.

23. Whitney's pretext evidence consists of the following: (i) his previous supervisors' remarks that Whitney's work while they supervised him was "excellent"; (ii) Delphi's failure to follow general provisions of its employee handbook before terminating Whitney; (iii) Delphi's offer of severance pay in exchange for a general release of claims; (iv) a comment that Whitney was old that Roberts allegedly made in passing at a sales dinner after learning that it was Whitney's birthday; (v) Roberts' and Valanty's delay in responding to Whitney's alleged question whether he was being fired because of his age; and (vi) a reference made by Valanty to Whitney that Whitney did not have the "fit and finish" needed for the job. None of the evidence, individually or collectively, proves that Roberts and Valanty terminated Whitney because of Whitney's age.

*(i)    Whitney's Previous Supervisors' Remarks*

24. As an initial matter, Whitney's previous managers' remarks that they believed Whitney's work was "excellent" when they supervised him do not show that Roberts and Valanty thought the same at the time they terminated him in June 2004 — over a half year *after* those managers stopped supervising Whitney. As discussed above, Whitney's past positive performance evaluations do not call into question the reasons why Roberts decided to terminate Whitney. Any suggested nexus between Whitney's former supervisors' satisfaction and his new supervisors' motivation for terminating Whitney is much too tenuous to support a finding of intentional age discrimination.

       *(ii)*  *Delphi's Failure To Follow Provisions of the Employee Handbook*

    25.  Whitney argues that "Delphi's failure to notify Mr. Whitney that his performance was unsatisfactory and place him on a PIP (as it was required to do by its own policy) also strongly suggests that Delphi's current argument is false." (Suppl. Resp. ¶ 32.) Whitney is mistaken. As discussed above, the mere fact that an employer does not strictly follow every provision of a general employment handbook does not suggest age discrimination. Whitney has not offered any evidence that Delphi's general handbook provisions were always followed in Delphi's consumer electronics division or, more important, by the new sales management team. Notably, the procedures — including the development of a performance improvement plan — were not applied to 32-year-old Orton prior to his termination, either. Thus, any evidence that Roberts failed to follow Delphi's written procedures with respect to Whitney's termination is not probative of Roberts' intent in deciding to terminate Whitney.

        *(iii)*  *Delphi's Offer Of Severance Pay To Whitney*

    26.  Whitney also argues that Delphi's offer of severance pay in exchange for a general release of claim *proves* pretext. (See Supp. Resp. II.A.2.b.iii at 15.) Whitney overreaches. Whitney cites two Ninth Circuit cases supporting the proposition that evidence of severance pay is *admissible* in an employment discrimination case.[5] However, courts routinely hold that an offer of severance pay coupled with a general release *is not* evidence of an intent to

---

[5] Whitney relies on Ninth Circuit precedent, including Cassino v. Reichhold Chems., Inc., 817 F.2d 1338 (9th Cir. 1987), to support his proposition that Delphi's offer of severance pay in exchange for a release proves pretext. Suppl. Resp. at 15. However, as the court in Hamilton v. Boisie Cascade Express points out, "the issue in Cassino . . . was the admissibility of a severance agreement under Fed. R. Evid. 408, not whether such agreements constitute *per se* evidence of pretext." No. CIV-04-266-L, 2006 WL 149023 at *5 n.9 (W.D. Okla. Jan. 19, 2006); see also Kirkpatrick v. Gen. Elec., 963 F. Supp. 628, 634 n.5 (E.D. Mich. 1997) (refusing to follow Cassino and noting that "in a latter unpublished opinion, the Ninth Circuit acknowledged that the ADEA specifically permits employers to ask its terminated employees to waive potential ADEA claims" (citations omitted)), aff'd, 172 F.3d 873 (6th Cir. 1999). Thus, even if Delphi's offer of severance pay in exchange for a release is admissible — which the Debtors do not concede — the cases cited by Whitney do not stand for the proposition that such offer proves pretext.

discriminate. See, e.g., Lind v. UNC Inc., 36 F. Supp. 2d 350, 358 (N.D. Tex. 1999) ("As a matter of law, an employer's reference to severance benefits or retirement packages [containing an ADEA release] does not constitute evidence of age discrimination." (citation omitted)); Hamilton, 2006 WL 149023, at *5 ("[M]erely offering a severance package i[s] insufficient to establish pretext." (footnote omitted)). And where, as here, a severance package containing a general release is generally offered to most departing employees regardless of age, it is not probative as to whether the plaintiff was singled out for termination because of that plaintiff's age.

### (iv) *Roberts' Stray Remark About Whitney's Age*

27. Whitney also states that months before his termination Roberts commented on a single occasion — a sales team dinner — that Whitney was old after learning it was his birthday. (G. Whitney Decl. ¶ 24) As discussed above, even if such a comment was in fact made, it still is nothing more than a stray remark and insufficient to show discrimination. See Gibbs, 4 Cal. Rptr. 3d at 191 ("'[S]tray' remarks do not establish discrimination." (citations omitted)).

### (v) *Silence In The Face Whitney's Alleged Accusation*

28. Neither Roberts nor Valanty recalls Whitney ever accusing them of age discrimination at the termination meeting. As discussed above, even if such an accusation was made, Roberts' and Valanty's alleged silence, even if admissible, still does not show intentional discrimination.

### (vi) *Valanty's "Fit and Finish" Comment*

29. Whitney does not even reference Valanty's "fit and finish" comment in the argument section of his supplemental response. In any event, such a statement does not prove

12

that Valanty was motivated to terminate Whitney because of his age. The comment was an analogy to a car's "fit and finish": A car might be fine for one person, in that it is functional, but it might lack the exact color, accessories, options, etc. that another person may want or need at a particular moment in time; similarly, while Whitney did not have the exact skills or initiative that Damato and Roberts needed, his skills and level of initiative might have been fine for other companies or managers. The statement does not contain any reference to age and thus is not probative of Valanty's intent to discriminate based on age.[6]

30.  In sum, Whitney has not met his burden of proving age discrimination through either direct or circumstantial evidence. Whitney's focus on attempting to prove he was performing competently — and thus should not have been selected to be fired — misses the point. Nor is the issue at trial the wisdom of Damato, Roberts, and Valanty's decision to terminate Whitney without first letting Whitney know they were considering such action and offering to coach him for six months through the perceived issues. See Guz, 100 Cal. Rptr. 2d at 380 (employer's reasons for firing "need not necessarily have been wise or correct"). The only relevant issue is whether Whitney's supervisors fired him because of his age. Whitney offers no compelling evidence that they did. Accordingly, his age discrimination claim should be disallowed and expunged.

---

[6] That Whitney "took [Valanty's comment] to mean" that he was terminated because of his age does not establish pretext. (G. Whitney Decl. ¶ 30). The issue is not what Whitney subjectively interpreted the "fit and finish" comment to mean. The issue is whether Whitney proved that the comment meant that Valanty, who was 54 at the time, wanted to terminate Whitney because of Whitney's age.

13

E.     Whitney's Other Claims Also Fail

31.    In his supplemental response, Whitney addresses only his FEHA employment discrimination claim.  He fails to address the three other counts of his complaint: wrongful termination against public policy, intentional infliction of emotional distress, and negligent infliction of emotional distress.  Indeed, Whitney's own characterization of his claim against Delphi is that it is simply an age discrimination claim under FEHA.  (Suppl. Resp. ¶ 1.)

32.    Although Whitney does not address the three counts, the Debtors will do so.  As an initial matter, Whitney's wrongful termination in violation of California's public policy must fail.  Because Whitney cannot prove that he was discriminated against because of his age, he cannot show that Delphi violated California's public policy against age discrimination.  In addition, his intentional and negligent infliction of emotional distress also must fail.  These claims are preempted by exclusivity provisions of the Workers' Compensation Act.  Schaffer v. GTE, Inc., 40 F. App'x 552, 557 (9th Cir. 2002) (citing Cole v. Fair Oaks Fire Prot. Dist., 43 Cal. 3d 148, 233 (1987)) ("[C]laims for negligent and intentional infliction of emotional distress made within the context of the employment relationship are within the exclusive remedy provisions of the California Workers' Compensation Act." (footnote omitted)).

E.     Whitney Fails To Show Entitlement To Any Damages

33.    Whitney is not entitled to any damages primarily because he has failed to prove any of his claims. And apart from his statement that he was making $80,000 a year, Whitney has failed to put forth any evidence to support its claims for general damages, special damages, attorney' fees, and costs. (Compl. at 11.)  Moreover, other comparable jobs were available after Whitney's termination.  See Declaration of Dr. Rod W. Durkin In Support of Debtors' Supplemental Reply (attached hereto as Exhibit A).  Whitney also failed to mitigate his

14

damages by investigating and possibly obtaining one of them. As for his request for punitive damages, Whitney makes no argument in his supplemental response that he is entitled to them. Nor would he be. Whitney cannot meet his burden of showing, by clear and convincing evidence, that Damato, Roberts, and Valanty engaged in age discrimination with malice, oppression, or fraud, and thus his request for punitive damages must fail.[7]

## Conclusion

34. Whitney has failed to establish a claim against Debtors. Delphi did not discriminate against Whitney. It based his termination on nondiscriminatory, legitimate reasons. Whitney's emotion distress claims also fail because they are preempted by California's workers' compensation laws. Whitney's Claim should be disallowed and expunged in its entirety.

---

[7] The depositions and formal discovery in this matter have not occurred as of the date of this filing. Accordingly, the Debtors reserve the right to supplement and amend their Supplemental Reply with additional arguments and material based on information learned during the depositions or through other discovery. At that time, the Debtors will be able to cite to record evidence to rebut facts alleged by Whitney. Regarding witnesses, Delphi hereby designates as their witnesses Joe Damato, Mike Roberts, and Burt Valanty. The Debtors have identified these individuals because of their involvement in the events leading up to or otherwise related to the termination of Whitney and any knowledge that they may have relevant to any aspect of Whitney's claims, including damages. Because all three of the Debtors' witnesses are no longer employed by Delphi, the Debtors are unable to provide a declaration of affidavit from them. Moreover, the Debtors designate Dr. Rod W. Durkin, Ph.D. as the Debtors' expert on damages issues. Finally, the Debtors reserve the right to designate any portion of the transcript for any deposition which already has been schedule by agreement of the parties. Although Whitney has designated Don LaDieu as his witness, in the event that Whitney chooses not to have LaDieu as his witness, the Debtors hereby designate LaDieu, who is currently an inactive Delphi employee and scheduled for deposition on October 5, 2007, as their witness.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
September 27, 2007

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:     */s/ Albert L. Hogan*
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Albert L. Hogan III (AH 8807)
      Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

– and –

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:     */s/ Kayalyn A. Marafioti*
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,

16