**FOLEY & LARDNER LLP**
Lori V. Vaughan
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

Judy A. O'Neill (admitted *Pro Hac Vice*)
David G. Dragich (*Pro Hac Vice* pending)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           )
In re:                                                     )
                                                           )   Chapter 11
DELPHI CORPORATION, et al.,                                )   Case No. 05-44481 (RDD)
                                                           )   Jointly Administered
                    Debtors.                               )
-----------------------------------------------------------x

## OBJECTION OF PEUGEOT JAPY INDUSTRIES SA TO DEBTORS' DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

Peugeot JAPY Industries SA ("Peugeot"), by and through its attorneys Foley & Lardner LLP, hereby objects (the "Objection") to the Debtors' Disclosure Statement and Debtors' Motion For an Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures (the "Solicitation Procedures Motion"). In support of its Objection, Peugeot respectfully represents as follows:

## BANKRUPTCY FILINGS

1.  On October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned case (collectively, the "Debtors"), filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

## THE CONTRACT

2.  On December 3, 2001, Peugeot and Delphi Automotive Systems LLC ("Delphi Automotive") entered into a Long Term Contract (the "Contract"). A copy of the Contract is not attached to this Objection. The Contract contains confidential information, including pricing of goods and services provided by Peugeot to the Debtors. The Debtors have a copy of the Contract. However, if necessary, and upon request, Peugeot can produce a copy of the Contract for *in camera* review.

3.  Pursuant to the Contract, among other things, Peugeot agreed to sell, and Delphi Automotive agreed to purchase, one hundred percent (100%) of Delphi Automotive's requirements for production and service relating to the products identified in the Long Term Contract (the "Products").

4.  Though the term of the Contract ran through December 31, 2005, Peugeot's obligation to provide service parts for the Products remains in effect. Similarly, the obligation of Delphi Automotive to pay for service parts delivered by Peugeot remains in effect. In addition, Peugeot has on hand parts produced for Delphi Automotive, but not delivered to Delphi Automotive because Delphi Automotive refused to accept delivery of the same. Peugeot has

2

requested that Delphi Automotive inform Peugeot of its intentions with respect to such parts to no avail. Peugeot continues to incur material storage expenses in storing such undelivered parts.

5. As of the Petition Dates, the Debtors had failed to pay Peugeot approximately $933,276.00 under the Contract (in addition to the storage costs for parts described above). Peugeot filed a proof of claim to reflect this amount owed by the Debtors. Peugeot then assigned the claim to Longacre Master Fund, Ltd., and Longacre Capital Partners (QP), L.P.

## DEBTORS' PLAN, DISCLOSURE STATEMENT, AND SOLICITATION PROCEDURES

6. On September 6, 2007, the Debtors filed with the Court: (a) the Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement"), and (c) the Solicitation Procedures Motion.

7. Pursuant to Article 8.1 of the Plan, all executory contracts or unexpired leases shall be deemed automatically assumed as of the Effective Date of the Plan, "unless such executory contracts or unexpired leases . . . (iv) are listed on the schedule of rejected executory contracts or unexpired leases attached hereto as Exhibit 8.1(a)." Exhibit 8.1(a) of the Plan was not filed on September 6, 2007. Instead, the Debtors propose that the list of rejected contracts will be filed on the "Exhibit Filing Date," which is defined as follows:

> "Exhibit Filing Date" means the date on which Exhibits to this Plan or the Disclosure Statement shall be filed with the Bankruptcy Court, which date shall be <u>at least seven days prior to the Voting</u>

3

> Deadline or such later date as may be approved by the Bankruptcy Court without further notice.

*See* Article 1.75 of the Plan (emphasis added).

8. With respect to assumption and cure, the Solicitation Procedures Motion proposes a deadline of October 29, 2007, for the Debtors to notify parties to executory contracts sought to be assumed by the Debtors (the "Cure Amount Notice"). As explained in paragraph 84 of the Solicitation Procedures Motion, assuming that the cure amount is not in dispute, the cure would be paid on the effective date of the Plan or as soon as reasonably practicable thereafter. If the counterparty disagrees with the cure claim amount, the counterparty is required to so mark and return the Cure Amount Notice by November 9, 2007 and such party must subsequently file a substantive objection to the cure claim amount within 30 days following the effective date of the Plan. (*See* Solicitation Procedures Motion, ¶ 85). The deadlines to object to confirmation and to vote on the Plan are unaffected by the proposed cure procedures. Thus, parties have 11 days from the date of the Cure Amount Notice to decide whether to accept or reject the Plan and 11 days to decide whether to object to confirmation of the Plan.

9. Pursuant to the Solicitation Procedures Motion, the proposed Voting Deadline is November 9, 2007. The proposed deadline for objections to the Plan is also November 9, 2007. Accordingly, if the Debtors file the list of rejected contracts in compliance with the Exhibit Filing Date, Peugeot will have seven (7) days to decide whether to accept or reject the Plan and seven (7) days to decide whether to object to confirmation of the Plan.

10. Despite the definition of "Exhibit Filing Date" in the Plan, in the Solicitation Procedures Motion, the plan exhibit filing deadline is proposed as November 5, 2007. Accordingly, if the Debtors instead follow this procedure, Peugeot will have four (4) days to

4

decide whether to accept or reject the Plan and four (4) days to decide whether to object to confirmation of the Plan.

11.  In addition, under Article 8.1(c) of the Plan, the Debtors are permitted to "amend, modify, supplement or otherwise change Exhibit 8.1(a) on or before the Confirmation Date." Pursuant to this provision, the Debtors can identify which executory contracts to reject as late as the Confirmation Date.

12.  Finally, Article IC.G(1)(a) of the Disclosure Statement permits the Debtors to "to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease." Under this procedure, given that the motion to assume or reject would not be filed until the Confirmation Date, the actual assumption or rejection would take place post-Confirmation Date after expiration of the applicable notice period for the filing of motions.

## ARGUMENT

**The Disclosure Statement Does Not Provide Adequate
Information as Required by 11 U.S.C. § 1125(b) Because it
Fails to Identify Which Executory Contracts Will be Assumed
or Rejected Within the Time Periods Required by Bankruptcy
Rule 2002(b).**

13.  The Disclosure Statement and the Solicitation Procedures Motion should not be approved. Based on the information currently contained in the Plan and Disclosure Statement, creditors, including Peugeot, cannot make an informed judgment regarding the Debtors' Plan of Reorganization (the "Plan"). Section 1125(b) of the Bankruptcy Code provides:

> [A]cceptance or rejection of a plan may not be solicited after the commencement of the case . . . from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement

5

approved, after notice and hearing, by the court *as containing adequate information.*

*See also Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (the Bankruptcy Code "requires disclosure to protect creditors from a debtor who may try to hide assets and maximizes judicial efficiency"); *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999) ("[t]he statutory standard for approval of a disclosure statement is that the disclosure statement must provide 'adequate information' so that the creditors can decide whether or not to approve the proposed plan treatment of their respective claims").

14. Disclosure is the pivotal concept in reorganization practice under the Bankruptcy Code. *In re Cyr. Bros. Meat Packing, Inc.*, 2 B.R. 620 (Bankr. D. Me. 1980). The critical importance of full disclosure in a disclosure statement "is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, [a court] cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Id.* (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). One court has said that the disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. *In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991).

15. Rule 2002 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules") also ensures that creditors are provided sufficient notice and time to make an informed judgment regarding the Plan. Rule 2002(b) requires that creditors receive at least 25 days' notice of "(1) the time fixed for filing objections and the hearing to consider approval of a disclosure statement . . .; and (2) the time fixed for filing objections and hearing to consider confirmation of a . . . chapter 11 . . . plan." Accordingly, Rule 2002(b) requires that creditors receive 25 days' notice

6

of the deadline to file objections to the disclosure statement and the hearing on adequacy of the disclosure statement. These timeframes are consistent with the 25-day notice requirement also set forth in Bankruptcy Rule 3017(a). Further, creditors must be given 25 days' notice of the deadline to object to confirmation of the plan. *(See also*, Bankruptcy Rule 3017(b)).

16.    The Debtors' Disclosure Statement and Solicitation Procedures Motion fail on both counts. The Disclosure Statement fails to identify which executory contracts shall be assumed or rejected by the Plan until at best seven (7) days before the Voting Deadline and seven (7) days before the deadline to object to confirmation of the Plan. At worst, Peugeot and other creditors will not even know the Debtors' decision whether to assume or reject their executory contracts until the Confirmation Date. These provisions fail to satisfy Bankruptcy Rules 2002(b) and 3017 and necessitate that this Court's find that the information in the Disclosure Statement is inadequate under Section 1125 of the Bankruptcy Code.

17.    As set forth above, creditors may not even learn that their contracts will be assumed or rejected up until the Confirmation Date. At best, creditors will be given seven (7) days' notice of these decisions. Zero to seven days is presumptively unreasonable under Bankruptcy Rule 2002 because such a short period of time will make it impossible for Peugeot to make an informed decision on whether to accept or reject to Plan, or whether to object to confirmation of the Plan, based on the treatment provided to Peugeot under the Plan.

18.    The treatment under the Plan of the Contract is critical to Peugeot. Indeed, whether (a) the $933,276.00 claim will be cured by assumption, or (b) the parts currently stored will be shipped to Delphi, disposed of by Peugeot (in the event of rejection by Delphi Automotive), or continued to be stored by Peugeot, are material facts to Peugeot. Similarly, if

7

the Debtors decide to reject the Contract, Peugeot should be entitled to more than zero to seven (7) days to evaluate whether to accept or reject the Plan and whether to object to confirmation of the Plan. Rule 2002(b) commands such an opportunity. Finally, Peugeot is currently incurring storage and other costs to ensure performance of its obligations to provide service parts to the Debtors. Peugeot should be given adequate information to decide what impact rejection or assumption has with respect to this obligation.

19.  In sum, the Disclosure Statement does not contain adequate information by which Peugeot can make an informed judgment regarding the Debtors' Plan, as mandated by 11 U.S.C. § 1125(b). The Disclosure Statement and proposed Plan impermissibly provide a number of escape hatches that allow the Debtors to keep critical information from creditors, including Peugeot, up until the Confirmation Date. Thus, given the void of information, it is impossible for creditors to rely upon the Disclosure Statement or the forthcoming "Exhibit 8.1(a)" in order to timely make any educated decision regarding the Plan. For these reasons, the Disclosure Statement does not contain adequate information and the Solicitation Procedures Motion should be denied.

**PROPOSED RESOLUTION**

20.  The Debtors' failure to provide adequate information in the Disclosure Statement can be easily remedied. The Debtors must simply identify which contracts they intend to assume or reject at least 25 days prior to the Voting Deadline on the Plan and at least 25 days prior to the deadline to object to confirmation of the Plan. These amendments would satisfy the requirements of Bankruptcy Rules 2002 and 3017 and Section 1125 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Peugeot respectfully requests that the Court enter an order denying the Solicitation Procedures Motion and denying approval of the Disclosure Statement on the ground that it does not contain adequate information as required by 11 U.S.C. § 1145 and the Debtors fail to provide proper notice as required by Bankruptcy Rule 2002.

          Respectfully submitted,
          **FOLEY & LARDNER LLP**

          /s/ Lori V. Vaughan
          Lori V. Vaughan
          90 Park Avenue
          New York, NY 10016
          Telephone: (212) 682-7474
          Facsimile: (212) 687-2329

          Judy A. O'Neill (admitted *Pro Hac Vice*)
          David G. Dragich (*Pro Hac Vice* pending)
          500 Woodward Ave., Suite 2700
          Detroit, MI 48226
          Telephone: (313) 234-7100
          Facsimile: (313) 234-2800

Dated: September 28, 2007