**FOLEY & LARDNER LLP**
Lori V. Vaughan
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

Judy A. O'Neill (admitted *Pro Hac Vice*)
David G. Dragich (*Pro Hac Vice* pending)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               )
In re:                                                         )
                                                               )    Chapter 11
DELPHI CORPORATION, et al.,                                    )    Case No. 05-44481 (RDD)
                                                               )    Jointly Administered
            Debtors.                                           )
---------------------------------------------------------------x

### OBJECTION OF PBR TENNESSEE, INC., PBR KNOXVILLE LLC, PBR COLUMBIA LLC, AND PBR AUSTRALIA PTY LTD., TO DEBTORS' DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

PBR Tennessee, Inc., formerly know as PBR Automotive Knoxville, Inc. (the "PBR Member"), PBR Knoxville LLC ("PBR Knoxville"), PBR Columbia LLC ("PBR Columbia"), and PBR Australia Pty Ltd. ("PBR Australia") (collectively, "PBR"), by and through their attorneys Foley & Lardner LLP, hereby object (the "Objection") to the Debtors' Disclosure Statement and Debtors' Motion For an Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim

DETR_460597.5

Procedures (the "Solicitation Procedures Motion"). In support of its Objection, PBR respectfully represents as follows:

## BACKGROUND

1. On October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned case (collectively, the "Debtors"), filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

**The Joint Venture Company**

2. PBR Knoxville LLC, formerly known as PBR Automotive USA L.L.C. ("PBR Knoxville, or the "Joint Venture Company") is a limited liability company formed under the laws of the state of Delaware. Delphi Automotive Systems Tennessee, Inc., formerly known as PBR Automotive Tennessee, Inc. ("Delphi Tennessee"), which is one of the debtors and a Delaware corporation, and the PBR Member, a Delaware corporation, were the members of the Joint Venture Company prior to the Petition Dates. Prior to the Petition Dates, Delphi Tennessee owned a 49% interest in the Joint Venture Company; the PBR Member owned a 51% interest (the "Percentage Interests"). Delphi Automotive Systems LLC ("Delphi Automotive"), another debtor and a Delaware limited liability company, is a 100% interest holder of Delphi Tennessee. Delphi Automotive, in turn, is owned 100% by Delphi Corporation ("Delphi"), the ultimate parent and a debtor in these proceedings.

2

3. On September 26, 1996, the parties entered into a Limited Liability Company Agreement (the "LLC Agreement") which governs these matters.[1] The Joint Venture Company is a manager-managed limited liability company. As such, it is managed by a Board of Managers (the "Board"). The Board consists of five (5) individuals (the "Managers"). The PBR Member appointed three (3) persons to serve as Managers (the "PBR Managers"); Delphi Tennessee appointed two (2) Managers (the "Delphi Managers").

**The Commercial Contracts**

4. PBR Knoxville, PBR Columbia, and PBR Australia, on the one hand, and Delphi Automotive and/or Delphi Corporation on the other hand, are parties to certain executory contracts (the "Contracts") through which PBR supplies Delphi Automotive with certain caliper assemblies and other parts (the "Parts"). Delphi Automotive uses the Parts in its business of supplying vehicle electronics, transportation components, integrated systems and modules and other electronic technology, as part of the automotive industry. The Contracts constitute significant business and revenue of each of the entities. Furthermore, the PBR entities filed significant proofs of claim against the Debtors. For example, PBR Knoxville filed a pre-petition claim in the amount of $9,166,420.04, PBR Columbia filed a pre-petition claim in the amount of $1,956,624.58, and PBR Australia filed a pre-petition claim in the amount of $562,192.18.[2]

---

[1] All relevant sections of the LLC Agreement are set forth in this Objection. However, if necessary, a copy of the LLC Agreement can be filed under seal by the PBR Member.

[2] The foregoing summary is not intended to be, nor is it a complete recitation of all claims filed by PBR against the Debtors. Instead, it simply represents claims filed arising under the Contracts identified in the Objection.

## The Delaware LLC Law

5.  Chapter 18 of Title 6 to the Delaware Code is the Delaware Limited Liability Company Act (the "Delaware LLC Act"). The Delaware LLC Act expressly addresses the impact of a bankruptcy filing by an LLC member. Section 18-304 of the Delaware LLC Act provides that "a person ceases to be a member of a limited liability company upon the . . . [filing of] a voluntary petition in bankruptcy." See Del. Code. Ann. Tit. § 18-304. Accordingly, under Delaware law, Delphi Tennessee ceased to be a Member of the Joint Venture Company on the Petition Date. The parties dispute the applicability of the Delaware LLC Act to their legal relationships.

## Dissolution of the Joint Venture Company

6.  Section 13 of the LLC Agreement provides, in relevant part, that the Joint Venture Company shall be dissolved upon the occurrence of any of the following events: . . . "(iii) the bankruptcy or dissolution of a Member . . . unless the business of the Joint Venture Company is continued by the consent of the remaining Member within ninety (90) days of the occurrence of the terminating event" (the "Dissolution Provision"). See § 13.1 LLC Agreement. During the Debtors' bankruptcy cases, the PBR Member and Delphi Tennessee amended Section 13.1.3 of the LLC Agreement several times to extend the period for a Member to decide whether to continue the business after occurrence of a terminating event, without prejudice to the PBR Member's right to assert that Delphi Tennessee is no longer a member. The period is currently extended through approximately November 24, 2007.

4

DETR_460597.5

## DEBTORS' PLAN, DISCLOSURE STATEMENT, AND SOLICITATION PROCEDURES

7.     On September 6, 2007, the Debtors filed with the Court: (a) the Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement"), and (c) the Solicitation Procedures Motion. The treatment of the LLC Agreement is not proposed in the Plan or Disclosure Statement. The Disclosure Statement does not indicate whether Delphi Tennessee asserts that the LLC Agreement is executory, despite the impact of the Delaware Statute and the Dissolution Provision.

8.     Assuming that the LLC Agreement and the Contracts are executory,[3] pursuant to Article 8.1 of the Plan, all executory contracts or unexpired leases shall be deemed automatically assumed as of the Effective Date of the Plan, "unless such executory contracts or unexpired leases . . . (iv) are listed on the schedule of rejected executory contracts or unexpired leases attached hereto as Exhibit 8.1(a)." Exhibit 8.1(a) of the Plan was not filed on September 6, 2007. Instead, the Debtors propose that the list of rejected contracts will be filed on the "Exhibit Filing Date," which is defined as follows:

> "Exhibit Filing Date" means the date on which Exhibits to this Plan or the Disclosure Statement shall be filed with the Bankruptcy Court, which date shall be at least seven days prior to the Voting

---

[3] PBR expressly reserves the right to argue that the LLC Agreement is not an executory contract within the meaning of Section 365(a). Nothing in this Objection shall be deemed a waiver of the right to contend that the LLC Agreement is not an executory contract subject to assumption or rejection.

Deadline[4] or such later date as may be approved by the Bankruptcy Court without further notice.

*See* Article 1.75 of the Plan.

9. With respect to assumption and cure, the Solicitation Procedures Motion proposes a deadline of October 29, 2007, for the Debtors to notify parties to executory contracts sought to be assumed by the Debtors (the "Cure Amount Notice"). As explained in paragraph 84 of the Solicitation Procedures Motion, assuming that the cure amount is not in dispute, the cure would be paid on the effective date of the Plan or as soon as reasonably practicable thereafter. If the counterparty disagrees with the cure claim amount, the counterparty is required to so mark and return the Cure Amount Notice by November 9, 2007 and such party must subsequently file a substantive objection to the cure claim amount within 30 days following the effective date of the Plan. (*See* Solicitation Procedures Motion, ¶ 85). The deadline to object to confirmation is unaffected by the proposed cure procedures. Thus, parties have 11 days from the date of the Cure Amount Notice to decide whether to accept or reject the Plan and 11 days to decide whether to object to confirmation of the Plan.

10. Pursuant to the Solicitation Procedures Motion, the proposed Voting Deadline is November 9, 2007. The proposed deadline for objections to the Plan is November 9, 2007. Accordingly, if the Debtors file the list of rejected contracts in compliance with the Exhibit Filing Date, and identify the LLC Agreement and the Contracts as contracts to be rejected, or if the Debtors take the position that the LLC Agreement and the Contracts are not on the list and therefore, are assumed, PBR will have seven (7) days to evaluate its treatment under the Plan.

---

[4] The proposed Voting Deadline is the same as the proposed deadline to object to confirmation of the Plan, November 9, 2007.

6

DETR_460597.5

11. Despite the definition of "Exhibit Filing Date" in the Plan, in the Solicitation Procedures Motion, the plan exhibit filing deadline is proposed as November 5, 2007. Accordingly, if the Debtors instead follow this procedure, PBR will have four (4) days to decide what actions to take based on its proposed treatment under the Plan.

12. In addition, under Article 8.1(c) of the Plan, the Debtors are permitted to "amend, modify, supplement or otherwise change Exhibit 8.1(a) on or before the Confirmation Date." Pursuant to this provision, the Debtors can identify which executory contracts to reject as late as the Confirmation Date.

13. Finally, Article IC.G(1)(a) of the Disclosure Statement permits the Debtors to "to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease." Under this procedure, given that the motion to assume or reject would not be filed until the Confirmation Date, the actual assumption or rejection would take place post-Confirmation Date after expiration of the applicable notice period for the filing of motions.

## ARGUMENT

**The Disclosure Statement Does Not Provide Adequate Information as Required by 11 U.S.C. § 1125(b) Because it Fails to Set forth the Treatment of the Contracts and the LLC Agreement Within the Time Periods Required by Bankruptcy Rules 2002(b) and 3017.**

14. The Disclosure Statement, when read in conjunction with the Solicitation Procedures Motion, does not contain adequate information with respect to PBR and fails to comply with the time periods mandated by Bankruptcy Rules 2002(b) and 3017. Based on the information currently contained in the Plan and Disclosure Statement, creditors, including PBR,

cannot make an informed judgment regarding the Debtors' Plan of Reorganization (the "Plan"). Section 1125(b) of the Bankruptcy Code provides:

> [A]cceptance or rejection of a plan may not be solicited after the commencement of the case . . . from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved, after notice and hearing, by the court *as containing adequate information.*

*See also Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (the Bankruptcy Code "requires disclosure to protect creditors from a debtor who may try to hide assets and maximizes judicial efficiency"); *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999) ("[t]he statutory standard for approval of a disclosure statement is that the disclosure statement must provide 'adequate information' so that the creditors can decide whether or not to approve the proposed plan treatment of their respective claims").

15.    Disclosure is the pivotal concept in reorganization practice under the Bankruptcy Code. *In re Cyr. Bros. Meat Packing, Inc.*, 2 B.R. 620 (Bankr. D. Me. 1980). The critical importance of full disclosure in a disclosure statement "is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, [a court] cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Id.* (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). One court has said that the disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. *In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991).

8

16.  Rule 2002 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules") also ensures that creditors are provided sufficient notice and time to make an informed judgment regarding the Plan. Rule 2002(b) requires that creditors receive at least 25 days' notice of "(1) the time fixed for filing objections and the hearing to consider approval of a disclosure statement . . .; and (2) the time fixed for filing objections and hearing to consider confirmation of a . . . chapter 11 . . . plan." Accordingly, Rule 2002(b) requires that creditors receive 25 days' notice of the deadline to file objections to the disclosure statement and the hearing on adequacy of the disclosure statement. These timeframes are consistent with the 25-day notice requirement also set forth in Bankruptcy Rule 3017(a). Further, creditors must be given 25 days' notice of the deadline to object to confirmation of the plan. *(See also*, Bankruptcy Rule 3017(b)).

17.  The Debtors' Disclosure Statement and Solicitation Procedures Motion fail on both counts. The Disclosure Statement fails to set forth the Debtors' treatment of the LLC Agreement. Further, if the Debtors treat the LLC Agreement and the Contracts as executory, the Disclosure Statement fails to identify which executory contracts shall be rejected by the Plan until at best seven (7) days before the deadline to object to confirmation of the Plan and the Voting Deadline. At worst, PBR and other creditors will not even know the Debtors' decision whether to assume or reject their executory contracts until the Confirmation Date. These provisions fail to satisfy Bankruptcy Rules 2002(b) and 3017 and necessitate this Court's finding that the information in the Disclosure Statement is inadequate under Section 1125 of the Bankruptcy Code. Zero to seven days is presumptively unreasonable under Bankruptcy Rules 2002 and 3017 because such a short period of time will make it impossible for PBR to make an informed decision regarding the Plan.

9

18. The treatment under the Plan of the LLC Agreement is critical to the PBR Member's decisions with respect to further operations of the Joint Venture Company. If the Debtors identify the LLC Agreement as an executory contract to be assumed, the PBR Member must hastily complete complex analysis to determine the impact of that decision. Similarly, if the Debtors decide to reject the LLC Agreement, the PBR Member should be entitled to more than zero to seven (7) days to evaluate whether to object to confirmation of the Plan. Bankruptcy Rules 2002(b) and 3017 command such an opportunity.

19. Further, the treatment under the Plan of the Contracts is critical to PBR Knoxville, PBR Columbia, and PBR Australia. Indeed, whether aggregate amounts of $9,166,420.04 (PBR Knoxville), $1,956,624.58 (PBR Columbia), and $562,192.18 (PBR Australia) respectively will be cured by assumption and whether the entities will continue to be bound by the obligations in the Contracts are material facts to the PBR entities. Moreover, other creditors should know the scope of the Debtors' cure claims and rejection damage claims when voting on the Plan. Similarly, if the Debtors decide to reject the Contracts, and such rejection could come as late as the Confirmation Date or only as early as the Exhibit Filing Date, PBR should be entitled to more than zero to seven (7) days to evaluate whether to accept or reject the Plan and whether to object to confirmation of the Plan. Bankruptcy Rules 2002(b) and 3017 command such an opportunity.

20. In sum, the Disclosure Statement does not contain adequate information by which PBR can make an informed judgment regarding the Debtors' Plan, as mandated by 11 U.S.C. § 1125(b). The Disclosure Statement and proposed Plan impermissibly provide a number of escape hatches that allow the Debtors to keep critical information from creditors, including PBR, up until the Confirmation Date. Thus, given the void of information, it is impossible for

10

creditors to rely upon the Disclosure Statement or the forthcoming "Exhibit 8.1(a)" in order to timely make any educated decision regarding the Plan. For these reasons, the Disclosure Statement does not contain adequate information and the Solicitation Procedures Motion should be denied.

## PROPOSED RESOLUTION

21. The Debtors' failure to provide adequate information in the Disclosure Statement can be easily remedied. The Debtors must simply set forth the treatment afforded to the LLC Agreement and the Contracts under the Plan at least 25 days prior to the deadline to object to confirmation of the Plan and the Voting Deadline. These amendments would satisfy the requirements of Bankruptcy Rules 2002 and 3017 and Section 1125 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, PBR respectfully requests that the Court enter an order denying the Solicitation Procedures Motion and denying approval of the Disclosure Statement on the ground that it does not contain adequate information as required by 11 U.S.C. § 1145 and the Debtors fail to provide proper notice as required by Bankruptcy Rules 2002 and 3017.

Respectfully submitted,
**FOLEY & LARDNER LLP**

/s/ Lori V. Vaughan
Lori V. Vaughan
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

11

DETR_460597.5

                                                  Judy A. O'Neill (admitted *Pro Hac Vice*)
                                                  David G. Dragich (*Pro Hac Vice* pending)
                                                  500 Woodward Ave., Suite 2700
                                                  Detroit, MI 48226
                                                  Telephone: (313) 234-7100
                                                  Facsimile: (313) 234-2800

Dated: September 28, 2007