**FOLEY & LARDNER LLP**
Lori V. Vaughan
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

Judy A. O'Neill (admitted *Pro Hac Vice*)
David G. Dragich (*Pro Hac Vice* pending)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            )
In re:                                                      )
                                                            )    Chapter 11
DELPHI CORPORATION, et al.,                                 )    Case No. 05-44481 (RDD)
                                                            )    Jointly Administered
            Debtors.                                        )
------------------------------------------------------------x

## OBJECTION OF SABIC INNOVATIVE PLASTICS US LLC TO DEBTORS' DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

SABIC Innovative Plastics US LLC ("SABIC Innovative Plastics"), as successor in interest to General Electric Company, doing business through its GE Advanced Materials division), by and through its attorneys Foley & Lardner LLP, hereby objects (the "Objection") to the Debtors' Disclosure Statement and Debtors' Motion For an Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII)

Reclamation Claim Procedures (the "Solicitation Procedures Motion"). In support of its Objection, SABIC Innovative Plastics respectfully represents as follows:

## BANKRUPTCY PETITIONS

1. On October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned case (collectively, the "Debtors"), filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").

## THE CONTRACTS

2. Prior to the Petition Dates, SABIC Innovative Plastics' predecessor entered into the following three principal contracts with the Debtors (collectively, the "Contracts"):[1]

   a. Long Term Global Contract, dated as of February 1, 2004, by and between Delphi Automotive Systems LLC ("Delphi Automotive") and General Electric Company, doing business as GE Advanced Materials (the "Long Term Contract");

   b. GMT 900 IP Agreement, dated as of June 20, 2003, by and between Delphi Corporation, doing business as Delphi Safety and Interior Systems and GE Plastics (the "GMT 900 Agreement"); and

   c. Epsilon Agreement, dated as of June 25, 2002, by and between Delphi Corporation and GE Plastics (the "Epsilon Agreement").

3. Copies of the Contracts are not attached to this Objection. The Contracts contain confidential information, including pricing of goods and services provided by SABIC Innovative Plastics to the Debtors. The Debtors have copies of the Contracts. There is no dispute between

---

[1] The Contracts refer to the agreements referenced herein and any amendments thereto, including, but not limited to, the amendments to the Long Term Contract. The Long Term Contract was most recently amended on September 24, 2007 to reflect that the term of the Long Term Contract is "for the period February 1, 2004 through January 31, 2008."

2

DETR_460529.3

the parties that the Contracts are indeed executory. However, if necessary, and upon request, SABIC Innovative Plastics can produce copies of the Contracts for *in camera* review.

4.  Pursuant to the Long Term Contract, among other things, SABIC Innovative Plastics agreed to sell, and Delphi Automotive agreed to purchase, one hundred percent (100%) of Delphi Automotive's requirements for thermoplastic resin products for the programs identified in the Long Term Contract. The products purchased by Delphi Automotive pursuant to the Long Term Contract are for use in plants and facilities in North America, South America, Pacific/Asia (which includes Japan, China, Thailand, Korea, and India) and European Union countries. The Long Term Contract remains in effect.

5.  Under the GMT 900 Agreement, among other things, SABIC Innovative Plastics agreed to sell, and Delphi agreed to purchase, one hundred percent (100%) of Delphi's requirements for the products identified in the GMT 900 Agreement. The GMT 900 Agreement remains in effect.

6.  The Epsilon Agreement, among other things, obligates SABIC Innovative Plastics to sell, and Delphi to purchase, one hundred percent (100%) of Delphi's requirements for the products identified in the Epsilon Agreement. The Epsilon Agreement remains in effect.

7.  As of the Petition Dates, the Debtors had failed to pay SABIC Innovative Plastics $5,402,848.11 under the Contracts. SABIC Innovative Plastics' predecessor filed a proof of claim to reflect this amount owed by the Debtors. As of the Petition Dates, the Debtors owed SABIC Innovative Plastics $3,774,945.50 under the Epsilon Agreement and $1,627,902.11 under the Long Term Contract. These amounts are subject to reduction pursuant to ongoing discussions between the parties relating to setoff and recoupment.

3

## DEBTORS' PLAN, DISCLOSURE STATEMENT, AND SOLICITATION PROCEDURES

8.  On September 6, 2007, the Debtors filed with the Court: (a) the Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement"), and (c) the Solicitation Procedures Motion.

9.  Pursuant to Article 8.1 of the Plan, all executory contracts or unexpired leases shall be deemed automatically assumed as of the Effective Date of the Plan, "unless such executory contracts or unexpired leases . . . (iv) are listed on the schedule of rejected executory contracts or unexpired leases attached hereto as Exhibit 8.1(a)." Exhibit 8.1(a) of the Plan was not filed on September 6, 2007. Instead, the Debtors propose that the list of rejected contracts will be filed on the "Exhibit Filing Date," which is defined as follows:

> "Exhibit Filing Date" means the date on which Exhibits to this Plan or the Disclosure Statement shall be filed with the Bankruptcy Court, which date shall be <u>at least seven days prior to the Voting Deadline</u> or such later date as may be approved by the Bankruptcy Court without further notice.

*See* Article 1.75 of the Plan (emphasis added).

10.  With respect to assumption and cure, the Solicitation Procedures Motion proposes a deadline of October 29, 2007, for the Debtors to notify parties to executory contracts sought to be assumed by the Debtors (the "Cure Amount Notice"). As explained in paragraph 84 of the Solicitation Procedures Motion, assuming that the cure amount is not in dispute, the cure would be paid on the effective date of the Plan or as soon as reasonably practicable thereafter. If the

4

counterparty disagrees with the cure claim amount, the counterparty is required to so mark and return the Cure Amount Notice by November 9, 2007 and such party must subsequently file a substantive objection to the cure claim amount within 30 days following the effective date of the Plan. (*See* Solicitation Procedures Motion, ¶ 85). The deadlines to object to confirmation and to vote on the Plan are unaffected by the proposed cure procedures. Thus, parties have 11 days from the date of the Cure Amount Notice to decide whether to accept or reject the Plan and 11 days to decide whether to object to confirmation of the Plan.

11. Pursuant to the Solicitation Procedures Motion, the proposed Voting Deadline is November 9, 2007. The proposed deadline for objections to the Plan is also November 9, 2007. Accordingly, if the Debtors file the list of rejected contracts in compliance with the Exhibit Filing Date, SABIC Innovative Plastics will have seven (7) days to decide whether to accept or reject the Plan and seven (7) days to decide whether to object to confirmation of the Plan.

12. Despite the definition of "Exhibit Filing Date" in the Plan, in the Solicitation Procedures Motion, the plan exhibit filing deadline is proposed as November 5, 2007. Accordingly, if the Debtors instead follow this procedure, SABIC Innovative Plastics will have four (4) days to decide whether to accept or reject the Plan and four (4) days to decide whether to object to confirmation of the Plan.

13. In addition, under Article 8.1(c) of the Plan, the Debtors are permitted to "amend, modify, supplement or otherwise change Exhibit 8.1(a) on or before the Confirmation Date." Pursuant to this provision, the Debtors can identify which executory contracts to reject as late as the Confirmation Date.

14.     Finally, Article IC.G(1)(a) of the Disclosure Statement permits the Debtors to "to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease." Under this procedure, given that the motion to assume or reject would not be filed until the Confirmation Date, the actual assumption or rejection would take place post-Confirmation Date after expiration of the applicable notice period for the filing of motions.

## ARGUMENT

**The Disclosure Statement Does Not Provide Adequate Information as Required by 11 U.S.C. § 1125(b) Because it Fails to Identify Which Executory Contracts Will be Assumed or Rejected Within the Time Periods Required by Bankruptcy Rule 2002(b).**

15.     The Disclosure Statement, when read in conjunction with the Solicitation Procedures Motion, does not contain adequate information with respect to SABIC Innovative Plastics and fails comply with the time periods mandated by Bankruptcy Rules 2002(b) and 3017. Based on the information currently contained in the Plan and Disclosure Statement, creditors, including SABIC Innovative Plastics, cannot make an informed judgment regarding the Debtors' Plan of Reorganization (the "Plan"). Section 1125(b) of the Bankruptcy Code provides:

> [A]cceptance or rejection of a plan may not be solicited after the commencement of the case . . . from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved, after notice and hearing, by the court *as containing adequate information.*

*See also Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (the Bankruptcy Code "requires disclosure to protect creditors from a debtor who may try to hide assets and maximizes judicial efficiency"); *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999)

6

("[t]he statutory standard for approval of a disclosure statement is that the disclosure statement must provide 'adequate information' so that the creditors can decide whether or not to approve the proposed plan treatment of their respective claims").

16. Disclosure is the pivotal concept in reorganization practice under the Bankruptcy Code. *In re Cyr. Bros. Meat Packing, Inc.*, 2 B.R. 620 (Bankr. D. Me. 1980). The critical importance of full disclosure in a disclosure statement "is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, [a court] cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Id.* (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988)). One court has said that the disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. *In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991).

17. Rule 2002 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules") also ensures that creditors are provided sufficient notice and time to make an informed judgment regarding the Plan. Rule 2002(b) requires that creditors receive at least 25 days' notice of "(1) the time fixed for filing objections and the hearing to consider approval of a disclosure statement . . .; and (2) the time fixed for filing objections and hearing to consider confirmation of a . . . chapter 11 . . . plan." Accordingly, Rule 2002(b) requires that creditors receive 25 days' notice of the deadline to file objections to the disclosure statement and the hearing on adequacy of the disclosure statement. These timeframes are consistent with the 25-day notice requirement also set forth in Bankruptcy Rule 3017(a). Further, creditors must be given 25 days' notice of the deadline to object to confirmation of the plan. *(See also,* Bankruptcy Rule 3017(b)).

18. The Debtors' Disclosure Statement and Solicitation Procedures Motion fail on both counts. The Disclosure Statement fails to identify which executory contracts shall be assumed or rejected by the Plan until at best seven (7) days before the Voting Deadline and seven (7) days before the deadline to object to confirmation of the Plan. At worst, SABIC Innovative Plastics and other creditors will not even know the Debtors' decision whether to assume or reject their executory contracts until the Confirmation Date. These provisions fail to satisfy Bankruptcy Rules 2002(b) and 3017 necessitating that this Court's find that the information in the Disclosure Statement is inadequate under Section 1125 of the Bankruptcy Code.

19. As set forth above, creditors may not even learn that their contracts will be assumed or rejected up until the Confirmation Date. At best, creditors will be given seven (7) days' notice of these decisions. Zero to seven days is presumptively unreasonable under Bankruptcy Rules 2002 and 3017 because such a short period of time will make it impossible for SABIC Innovative Plastics to make an informed decision on whether to accept or reject to Plan, or whether to object to confirmation of the Plan, based on the treatment provided to SABIC Innovative Plastics under the Plan.

20. The treatment under the Plan of the Long Term Contract, the GMT 900 Agreement, and the Epsilon Agreement, is critical to SABIC Innovative Plastics. Indeed, whether an aggregate of $5,402,848.11 will be cured by assumption and whether SABIC Innovative Plastics will continue to be bound by the obligations in the Contracts are material facts to SABIC Innovative Plastics. Moreover, other creditors should be entitled to know the scope of the Debtors' cure claims and rejection damage claims when voting on the Plan. Similarly, if the Debtors decide to reject the Contracts, and such rejection could come as late as

the Confirmation Date or only as early as the Exhibit Filing Date, SABIC Innovative Plastics should be entitled to more than zero to seven (7) days to evaluate whether to accept or reject the Plan and whether to object to confirmation of the Plan. Rule 2002(b) and Rule 3017 command such an opportunity.

21.     In sum, the Disclosure Statement does not contain adequate information by which SABIC Innovative Plastics can make an informed judgment regarding the Debtors' Plan, as mandated by 11 U.S.C. § 1125(b). The Disclosure Statement and proposed Plan impermissibly provide a number of escape hatches that allow the Debtors to keep critical information from creditors, including SABIC Innovative Plastics, up until the Confirmation Date. Thus, given the void of information, it is impossible for creditors to rely upon the Disclosure Statement or the forthcoming "Exhibit 8.1(a)" in order to timely make any educated decision regarding the treatment of the claims of SABIC Innovative Plastics under the Plan. For these reasons, the Disclosure Statement does not contain adequate information and the Solicitation Procedures Motion should be denied.

## PROPOSED RESOLUTION

22.     The Debtors' failure to provide adequate information in the Disclosure Statement can be easily remedied. The Debtors must simply identify in the Disclosure Statement whether the SABIC Innovative Plastics Contracts are intended to be assumed or rejected and whether they are intended to be assigned to any party, all no later than 25 days prior to the Voting Deadline on the Plan and no later than 25 days prior to the deadline to object to confirmation of the Plan. These amendments would satisfy the requirements of Bankruptcy Rules 2002 and 3017 and Section 1125 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, SABIC Innovative Plastics respectfully requests that the Court enter an order denying the Solicitation Procedures Motion and denying approval of the Disclosure Statement on the ground that it does not contain adequate information as required by 11 U.S.C. § 1145 and the Debtors fail to provide proper notice as required by Bankruptcy Rule 2002.

Respectfully submitted,

**FOLEY & LARDNER LLP**

/s/ Lori V. Vaughan
Lori V. Vaughan
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

Judy A. O'Neill (admitted *Pro Hac Vice*)
David G. Dragich (*Pro Hac Vice* pending)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone: (313) 234-7100
Facsimile: (313) 234-2800

Dated: September 28, 2007

DETR_460529.3