DUANE MORRIS LLP  
A Delaware Limited Liability Partnership  
Lawrence J. Kotler, Esquire  
1540 Broadway, 14th Floor  
New York, NY 10036-4086  
(212) 692-1000  
(212) 692-1020 (facsimile)  
    and  
Margery N. Reed, Esquire  
Wendy M. Simkulak, Esquire  
30 South 17th Street  
Philadelphia, PA 19103-4196  
(215) 979-1000  
(215) 979-1020 (facsimile)  

Counsel for the ACE Companies

Obj. Deadline: September 28, 2007 at 4:00 p.m.  
Hearing Date: October 3, 2007 at 10:00 a.m.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| DELPHI CORPORATION, et al. ) | Case No. 05-44481 |
| ) | (Jointly Administered) |
| Debtors. ) | |

**LIMITED OBJECTION OF THE ACE COMPANIES TO**
**DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF**
**REORGANIZATION OF DELPHI CORPORATION AND**
**CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION**

    ACE American Insurance Company, Pacific Employers Insurance Company, Illinois Union Insurance Company, and each of their affiliates (collectively, the "ACE Companies"), by and through their undersigned counsel, hereby file this Limited Objection (the "Objection") to the Disclosure Statement (the "Disclosure Statement") With Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, and respectfully state as follows:

DM3\568414.5

## BACKGROUND

1.     On October 8 and 14, 2005 (collectively, the "Petition Date"), Delphi Corporation[1] ("Delphi") and certain of its U.S. subsidiaries and affiliates (together with Delphi, the "Debtors") each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.     Prior to the Petition Date, the ACE Companies and the Debtors entered into certain insurance policies and related agreements (the "Agreements").

3.     On January 6, 2006, this Court entered the Order Under 11 U.S.C. §§ 362, 363, 365, 1107 And 1108 Authorizing Renewal Of Insurance Coverage And Certain Related Relief (Docket No. 1779) (the "Insurance Agreement Order"), which, among other things, (i) authorized the Debtors to assume the Agreements pursuant to § 365(a) of the Bankruptcy Code and (ii) provided that the assumption of the Agreements shall be evidenced by written notice from the Debtors to the ACE Companies.

4.     The Insurance Agreement Order also provided that, conditioned on the Debtors' assumption of the Agreements, (i) all payment and reimbursement obligations owing to the ACE Companies from the Debtors under the Agreements, to the extent that such Agreements are assumed, are accorded administrative priority status pursuant to § 503(b)(1)(A) of the Bankruptcy Code and (ii) the Debtors are authorized to pay the ACE Companies' claims with respect to the Agreements, to the extent such Agreements are assumed, in the ordinary course of business.

---

[1]     Delphi Corporation f/k/a Delphi Automotive Systems Corporation

2

5. On or about January 18, 2006, the Debtors provided to the ACE Companies written notice ("Assumption Notice") of the Debtors' assumption, pursuant to § 365 of the Bankruptcy Code, of the following Agreements (collectively, the "Assumed Agreements"):

(a) that certain Multi-Line Deductible Program Agreement effective as of October 1, 2000 by and between Pacific Employers Insurance Company and Delphi (formerly known as Delphi Automotive Systems Corporation) and all amendments and addenda thereto;

(b) All General Liability Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (collectively, the "General Liability Policy");

(c) All Automobile Liability Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (the "Automobile Liability Policy");

(d) All Workers' Compensation Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (the "Workers' Compensation Policy" and, collectively with the General Liability Policy and the Automobile Liability Policy, the "Insurance Policies"); and

(e) the binder related to the Insurance Policies.

6. Accordingly, the ACE Companies hold administrative expense priority claims pursuant to § 503(b)(1)(A) of the Bankruptcy Code for all payment and reimbursement obligations owing under the Assumed Agreements which are to be paid in the ordinary course of business (the "Assumed Agreement Claims").

7. On or about September 6, 2007, the Debtors filed the Disclosure Statement and the Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan")[2].

---

[2] Terms not defined herein shall have the meaning attributed to them in the Plan.

3

8.  On or about September 25, 2007, the ACE Companies and the Debtors entered into that certain Joint Stipulation And Agreed Order (the "Stipulation")[3] Resolving The Debtors' Thirteenth Omnibus Claims Objection And Claims Estimation Motion With Respect To Proofs Of Claim Filed By ACE American Insurance Company, Pacific Employers Insurance Company, Illinois Union Insurance Company, ESIS, Inc. And Their Affiliates And Consolidating Such Proofs Of Claim which provides that, *inter alia*, "(e)ach Assumed Agreement Claim shall be and hereby is allowed pursuant to 11 U.S.C. § 503(b)(1)(A) and accorded administrative priority status pursuant to 11 U.S.C. § 507(a)(1)."

## OBJECTION

9.  Section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited, the plan and a disclosure statement, containing "adequate information," as defined in § 1125(a) of the Bankruptcy Code, which has been approved by the Bankruptcy Court, after notice and a hearing. *See* 11 U.S.C. § 1125(b).

10. A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S. C. § 1125(a)[4].

---

[3]  On information and believe, the Stipulation was signed and filed with this Court on September 27, 2007. As of the filing hereof, based upon counsel's review of the docket, it appears that the Court has not entered an order on the Stipulation.

[4]  11 U.S.C. § 1125(a)(1) provides in pertinent part:

> (a) In this section –
>
> (1) "adequate information" means information of a kind, and in sufficient detail,
> as far as is reasonably practicable in light of the nature and history of the debtor
> and the condition of the debtor's books and records, that would enable a

(Continued…)

11.     Courts in the Second Circuit consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an informed decision about the proposed plan.  *See, e.g.*, *In re Rodolitz Holding Corp.*, 187 B.R. 72 (Bankr. E.D.N.Y. 1995), *rev'd, remanded on other grounds*, No. 95-4174, 1995 U.S. Dist. LEXIS 21819 (E.D.N.Y. Nov. 17, 1995); *In re Feldman,* 53 B.R. 355 (Bankr. S.D.N.Y. 1985); *In re New Haven Radio, Inc.*, 18 B.R. 977 (Bankr. D. Conn. 1982).

### A.     **The Disclosure Statement And Plan Do Not Provide Adequate Information for the ACE Companies To Determine How Their Claims Will Be Treated and Paid.**

#### 1.     **The Plan And Disclosure Statement Should Be Revised To Provide That The Reorganized Debtors Remain Liable For Claims Arising Under Assumed Agreements.**

12.     Pursuant to Section IX.H.6(a) of the Disclosure Statement, the Reorganized Debtors "shall retain responsibility for . . . making distributions."  *See also* Plan § 9.6.

13.     However, pursuant to Section IX.J.1 of the Disclosure Statement, "all property of the Estates shall revest in each of the Debtors . . . free and clear of all Claims . . . ."  *See also* Plan § 11.1.

14.     Moreover, Section 11.2 of the Plan provides a broad discharge and release of the Debtors except as otherwise specifically provided in the Plan and Disclosure Statement.  However, the Plan and Disclosure Statement do not specifically exclude, from the release and discharge provisions thereof, those obligations arising under contracts and leases which the Debtors assumed during the pendency of their bankruptcy cases.

---

(Continued…)

> hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan . . . .

15. The Disclosure Statement and the Plan should, but do not, expressly provide that upon the Effective Date, the Reorganized Debtors will remain liable for the Debtors' continuing obligations under the Assumed Agreements.

16. The Disclosure Statement and Plan should be modified to expressly provide that the Reorganized Debtors will continue to be liable for all of the ACE Companies' Claims arising under the Assumed Agreements.

### 2. The Term "Allowed Claim" Should Be Revised To Include Claims Arising From Assumed Agreements.

17. Section IX.E.1(b) of the Disclosure Statement provides for payment of Administrative Claims only, "after the <u>later of</u> (a) the date when an Administrative Claim becomes an Allowed Administrative Claim or (b) the date when an Administrative Claim becomes payable pursuant to any agreement between a Debtor . . . and the holder of such Administrative Claim. . . ." (emphasis added). *See also* Plan § 2.1.

18. Based upon the language in Section IX.E.1(b) of the Disclosure Statement, it appears that an Administrative Claim must be "Allowed" to be paid. However, the definition of "Allowed Claim," which is set forth in section 1.7 of the Plan, does not expressly include Administrative Claims arising from contracts and leases assumed by the Debtors during the course of their bankruptcy cases. *See* Plan § 1.7.

19. As noted above, the Debtors and the ACE Companies have entered into a Stipulation which provides that the Assumed Agreement Claims are allowed. However, as of the filing hereof, the Stipulation has not been entered as a Final Order.

20. Accordingly, the ACE Companies cannot determine how the Assumed Agreement Claims, which are entitled to administrative expense priority pursuant to the Insurance Agreement Order, will be treated and paid.

6

21.     Therefore, the ACE Companies request that the term "Allowed Claim" be revised to expressly include Administrative Claims arising from contracts and leases assumed by the Debtors during the pendency of their bankruptcy cases.

### 3. The Disclosure Statement And Plan Should Be Revised To Provide That The Claims Of The ACE Companies Shall Be Paid In The Ordinary Course of Business Without The Need For The ACE Companies To File A Request or Motion For Payment.

22.     Pursuant to section IX.I.5 of the Disclosure Statement, any Administrative Claim which is paid or payable in the ordinary course of business is excluded from the Administrative Claim bar date. *See also* Plan § 10.5.

23.     The Insurance Agreement Order provides that the Debtors are authorized to pay the Claims of the ACE Companies "in the ordinary course of their businesses." Insurance Agreement Order ¶ 9.

24.     To avoid any uncertainty as to the applicability of the Administrative Claim bar date, the ACE Companies request that the Plan specifically provide that the ACE Companies' Assumed Agreement Claims shall be paid and payable in the ordinary course of business without the need or requirement for the ACE Companies' to file a request for payment thereof.

### 4. The Disclosure Statement And The Plan Should Provide That Agreements Shall Not Be Modified By The Plan Or Confirmation Order.

25.     The Bankruptcy Code does not permit the Debtors (or the Reorganized Debtors) to modify the terms of assumed agreements. *See In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005). *See also In re Morande Enters.*, 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) (citation omitted) (stating that the "law is clear that an executory contract may not be assumed in part and rejected in part"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled law that a trustee or a debtor in

7

possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'"); *Mellen v. Curtin (In re Mellen)*, 79 B.R. 385 (Bankr. N.D. Ill. 1987) ("Nothing in §365 gives a debtor the right to extend or vary the terms of an assumed executory contract"). *See also AGV Productions, Inc. v. Metro Goldwyn-Mayer, Inc.*, 115 F. Supp.2d 378, 391 (S.D.N.Y. 2000) (citing cases), *aff'd*, No. 00-9345, 2002 U.S. App. LEXIS 13299 (2d Cir. May 2, 2002).

26. Accordingly, the Disclosure Statement and the Plan should be modified to clarify that neither the Plan nor the Confirmation Order shall modify the terms of any Assumed Agreement or impair the parties' rights thereunder.

### 5. The Disclosure Statement And The Plan Should Be Revised To Add A New Section Regarding The Treatment Of The ACE Companies' Claims.

27. To resolve the objections set forth above, the ACE Companies request that the following section be added to the Plan:

> Notwithstanding anything to the contrary in the Plan, the Confirmation Order or the Disclosure Statement, the policies and insurance agreements issued by ACE American Insurance Company, Pacific Employers' Insurance Company, and Illinois Union Insurance Company (collectively, with each of their affiliates, the "ACE Companies") to the Debtors and assumed by the Debtors pursuant to that certain order entered by this Court on or about January 6, 2006 authorizing the Debtors to assume the ACE Insurance Program and that certain written notice dated January 18, 2006, from the Debtors to the ACE Companies (the "ACE Companies' Assumed Agreements") (i) shall vest in and be fully enforceable by and against the Reorganized Debtors in accordance with their respective terms; and (ii) will survive and remain unaffected by the Plan or the Confirmation Order.
>
> Notwithstanding anything to the contrary in the Plan, the Confirmation Order or the Disclosure Statement, the Claims of the ACE Companies arising under the ACE Companies' Assumed Agreements: (i) are Allowed Administrative Claims, (ii) shall not be discharged, and (iii) shall be payable by the Debtors (and after the Effective Date, the Reorganized Debtors) in the ordinary course of business without the need for the ACE Companies to file

8

or serve a request, application or motion for payment of any Administrative Claim.

Notwithstanding anything to the contrary, neither the Plan nor the confirmation of the Plan in any way: (i) precludes or limits the rights of the ACE Companies to contest and/or litigate with any person or entity, including the Debtors (or after the Effective Date, the Reorganized Debtors), the existence, primacy and/or scope of available coverage under any alleged applicable policy; (ii) permits the holder of a Claim covered by an Agreement to recover the same amounts from the insurers and any other person or entity, including the Debtors; (iii) alters the ACE Companies' rights and obligations under the Agreements or modifies the coverage provided thereunder; (iv) alters the Debtors' (or after the Effective Date, the Reorganized Debtors') rights and obligations under the Agreements, including any duty of the Debtors' (or after the Effective Date, the Reorganized Debtors') to defend, at their own expense, against claims asserted under the Policies; or (v) shall be construed as discharging, releasing or relieving the Debtors or the Debtors' successors (including, but not limited to, the Reorganized Debtors) from any liability under the Agreements.

**B.**     **Reservation of Rights**

28.    The ACE Companies specifically reserve their right to assert additional objections

to the Disclosure Statement and the Plan.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

9

**C.     Conclusion**

WHEREFORE, for the foregoing reasons, the ACE Companies respectfully request that this Court direct the Debtors to modify the Disclosure Statement and Plan, as provided herein and grant such other relief as is just and proper.

Dated: September 28, 2007                                         DUANE MORRIS LLP

By: /s/ *Lawrence J. Kotler*
Lawrence J. Kotler, Esquire (LK-8177)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
ljkotler@duanemorris.com

and

Margery N. Reed, Esquire
Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)
mreed@duanemorris.com
wmsimkulak@duanemorris.com

Counsel for the ACE Companies

DM3\568414.5