BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

John T. Gregg, Admitted Pro Hac Vice
Telephone: (616) 742-3945
Email: jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### LIMITED OBJECTION OF BANK OF AMERICA, N.A. TO DISCLOSURE STATEMENT WITH RESPECT TO JOINT CHAPTER 11 PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the Disclosure Statement With Respect to Joint Chapter 11 Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Disclosure Statement"), and in support of the Objection, respectfully states as follows:

### SUMMARY

1. The Disclosure Statement does not contain complete and accurate information with respect to the terms of the proposed Plan (as defined below). As a result, the Disclosure

Statement fails to provide "adequate information" within the meaning of section 1125(a)(1) of title 11 of the United States Code (the "Bankruptcy Code") "that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan[.]"  11 U.S.C. § 1125(a)(1).

2. Specifically, the Disclosure Statement neglects to provide adequate information with respect to the non-monetary cure of executory contracts and unexpired leases.  In addition, the Disclosure Statement fails to inform creditors and other parties in interest whether the Debtors intend to affirm existing guaranties or provide new guaranties, the existence of which may be a prerequisite to assumption of executory contracts and unexpired leases supported by these guaranties.  Finally, the Disclosure Statement proposes procedures contrary to certain express provisions of the Bankruptcy Code.

3. Accordingly, the Disclosure Statement fails to fully disclose material information, the absence of which may have the effect of misleading parties entitled to vote for or against the proposed Plan.

## BACKGROUND

4. Prior to the Petition Date (as defined below), Bank of America and Delphi Automotive Systems Human Resources, LLC ("Delphi HR") were parties to two (2) leases for the lease of aircraft, the obligations for which were subject to guaranties (the "Guaranties") executed by Delphi Corporation ("Delphi Corp.") and Delphi Automotive Systems, LLC ("Delphi Automotive Systems") for the benefit of Bank of America.[1]

---

[1] A comprehensive summary of the relationship between Bank of America and the Debtors is contained in Bank of America's response to the Fifteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. 502(b) and Fed. R. Bankr. P. 3007 to Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected on Debtors' Books and Records, (c) Untimely Claims and Untimely Tax Claim, and (d) Claims Subject to Modification, Tax Claims Subject to Modification, and Modified Claims Asserting Reclamation (the "Fifteenth Omnibus Objection"), a copy of which is available at Docket No. 8309, and is hereby incorporated by reference.

5.  Both Leases provide that an event of default will be deemed to have occurred when:

> any event or condition set forth in subsections (d) through (h) of this Section shall occur with respect to any Guarantor or other person responsible, in whole or in part, for payment or performance of this Lease, or there shall be an express repudiation of any Guaranty or a default under any Guaranty, and any applicable grace period or cure period with respect thereto has expired.

6.  On October 8, 2005 (the "Petition Date"), Delphi HR, Delphi Corp., Delphi Automotive Systems and several of their affiliates each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

7.  Shortly thereafter, Bank of America filed a Motion for Adequate Protection Replacement Liens (the "Motion for Adequate Protection"). The Motion for Adequate Protection was resolved when this Court entered a Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens (the "Consent Order"), which provided for payment of certain amounts due under the Learjet Lease and the Challenger Lease in installments. (Consent Order at ¶ 6.) Moreover, the Consent Order required that the Debtors establish a segregated deposit account for the Aircraft Cash Collateral (as defined by the Consent Order. (Consent Order at ¶¶ 1-2.) Finally, the Consent Order prohibited the Debtors from amending, canceling or otherwise terminating the Learjet Charter Agreement, the Challenger Charter Agreement, the Management Agreement or any subleases of the Learjet or the Challenger without at least ten (10) days prior written notice to Bank of America. (Consent Order at ¶ 5.)

8.  On January 13, 2006, Bank of America commenced an adversary proceeding by filing a Complaint for a Declaratory Judgment With Respect to the Priority of Liens and Security Interests in Property of Delphi Automotive Systems Human Resources, LLC (the "Complaint")

3

against Delphi HR, the Official Committee of Unsecured Creditors and JPMorgan Chase Bank, N.A., acting in its capacities as administrative agent for the Debtors' prepetition and post-petition lenders. The Complaint requested that this Court enter a judgment declaring that JPMorgan Chase Bank, N.A., in both of the aforementioned capacities, did not hold any security interests or liens in certain collateral pledged to Bank of America by Delphi HR.

9. On April 26, 2006, this Court approved a Stipulation and Order Resolving and Dismissing Adversary Proceeding (the "Adversary Order"). The Adversary Order resolved the issues set forth in the Complaint and provided, among other things, that (i) the Prepetition Agent (as defined in the Adversary Order) did not hold any security interests in, or liens on, any assets owned by Delphi HR, (ii) none of the security interests or liens granted by this Court under the Final DIP Financing Order (as defined in the Adversary Order) attached to any interests of Delphi HR in collateral pledged to Bank of America, and (iii) the Debtors and the Committee agreed that the liens granted in the Final DIP Financing Order were subject and subordinate to the liens and security interests held by Bank of America.

10. On or around July 27, 2006, Bank of America timely filed (i) a proof of claim against Delphi Corp. (Claim No. 11317) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the leases that are currently unknown or cannot be determined until one or both of the aircraft are returned, (ii) a proof of claim against Delphi Automotive Systems (Claim No. 11470) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the leases that are currently unknown or cannot be determined until one or both of the aircraft are returned, and (iii) a proof of claim against Delphi HR (Claim No. 11457) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection,

4

attorneys' fees and damages for violations of the leases that are currently unknown or cannot be determined until one or both of the aircraft are returned (collectively, the "Proofs of Claims").

11. On or about May 22, 2007, the Debtors filed their Fifteenth Omnibus Objection, which sought entry of an order disallowing and expunging the claims of Bank of America because the Proofs of Claim allegedly asserted liabilities or dollar amounts that are not reflected on the Debtors' books and records.

12. On June 19, 2007, Bank of America filed its response to the Fifteenth Omnibus Objection. Thereafter, the Debtors filed a Notice of Sufficiency Hearing with Respect to Debtors' Objection to Proof of Claim Nos. 11317, 11470 and 11457 (Bank of America, N.A.), which was supported by Debtors' Statement in Further Support of Debtors' Objection to Proof of Claim Nos. 11317, 11470 and 11457 (Bank of America, N.A.).

13. The Debtors and Bank of America subsequently entered into a Joint Stipulation and Agreed Order to Withdraw Without Prejudice [sic] of Proofs of Claim 11317, 11470, and 11457 (Bank of America, N.A.) (the "Claims Stipulation"), that was approved by this Court on September 7, 2007. The Claims Stipulation provides, among other things, that (i) Bank of America agreed to withdraw the Proofs of Claim without prejudice pending the Debtors' decision to assume or reject the Leases, and (ii) the Debtors must provide Bank of America with ten (10) days prior notice of the election to assume or reject the Leases.

14. On September 6, 2007, the Debtors filed their "Solicitation Procedures Motion," Disclosure Statement and their Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (the "Plan").

15. By its express terms, the Disclosure Statement provides that "[t]he provisions (if any) of each Other Executory Contract or other Unexpired Lease to be assumed under the Plan

5

which are or may be in default shall be satisfied <u>solely</u> by Cure," and, therefore, not satisfied by the execution of new guaranties or reaffirmation of existing guaranties.[2] (Disclosure Statement at p.178.) The Disclosure Statement further provides that any party wishing to assert any cure must file and serve a request by no later than forty-five (45) days after entry of the confirmation order. Finally, the Disclosure Statement provides that in the event that "there is a dispute as to the amount of the Cure that cannot be resolved consensually among the parties, the Debtors will have the right to reject the contract or lease for a period of five days after the entry of a Final Order establishing a Cure amount in excess of that provided by the Debtors." (Disclosure Statement at p. 178.)

16. The Disclosure Statement is silent, however, as to whether the Debtors intend to affirm existing guaranties or provide new guaranties, including those guaranties that may be a prerequisite to assumption.

17. As of the date of the filing of this Objection, Delphi HR had neither assumed nor rejected the leases. Moreover, the Debtors had not committed to provide Bank of America with new guaranties in the event the Debtors decide to assume one or more of the Leases.

**OBJECTION**

18. Section 1125(a)(1) of the Bankruptcy Code requires that a disclosure statement contain "adequate information", defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims . . . [to] make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Courts have discretion to determine what constitutes adequate information. *In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 25

---

[2] "Cure" is defined by the Plan and Disclosure Statement, in pertinent part, as "the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to section 365 of the Bankruptcy Code. . ." (Plan at p. 7.)

6

(Bankr. S.D.N.Y. 1995). A disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on claims and the possible [Bankruptcy Code] alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

19. In its present form, the Disclosure Statement (i) fails to contain adequate information with respect to treatment of guaranties, including the Guaranties, and (ii) proposes a provision in the Plan that violates the express terms of section 365 by allowing the Debtors to (a) decide whether to assume or reject executory contracts and unexpired leases <u>after</u> confirmation; and (b) circumvent their obligation to provide adequate assurance that they will cure all defaults under "tentatively" assumed executory contracts and unexpired leases promptly after confirmation.

**A.    The Disclosure Statement Does Not Provide Sufficient Information to Allow Bank of America and Other Similarly Situated Creditors to Determine the Status of Guaranties Related to Executory Contracts and Unexpired Leases.**

20. According to the Solicitation Procedures Motion, the Debtors will disclose whether they intend to assume or reject executory contracts and unexpired leases by no later than November 5, 2007.[3] However, under the express terms of the Leases, the Debtors must maintain the Guaranties as a condition to assumption of the Leases. (Leases at § 13(m).)

21. Section 365(b)(1) of the Bankruptcy Code requires a debtor in possession desiring to assume an executory contract or unexpired lease (i) to cure existing defaults, and (ii) to provide adequate assurance of payment of pecuniary losses and future performance of contract or lease obligations. 11 U.S.C. § 365(b)(1).

---

[3] The Claims Stipulation requires that the Debtors provide Bank of America with ten (10) days prior notice of their election to assume or reject. (Claims Stipulation at ¶ 4.) Therefore, the Debtors are required to provide Bank of America with notice of their intent to assume or reject the Leases by no later than October 26, 2007.

7

22. The purpose of the safeguards enumerated in section 365(b)(1) is "to ensure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (citing *In re Superior Toy & Manufacturing Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996)). If a debtor decides to assume an executory contract or unexpired lease, assumption must occur *cum onere*. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984); *see also In re Leslie Fay Cos., Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994) (executory contract or unexpired lease cannot be assumed in part and rejected in part).

23. The Disclosure Statement fails to inform creditors and other parties in interest whether the Debtors will be affirming existing guaranties or providing new guaranties as a condition to curing executory contracts and unexpired leases. Bank of America has no objection to the Debtors' disclosure that it intends to cure existing defaults under executory contracts and unexpired leases. Rather, Bank of America objects to the Disclosure Statement because it fails to inform creditors and other parties in interest of potential obligations that will be incurred by non-assuming Debtors that are required as a condition to assumption of executory contracts and unexpired leases, including the Leases. In addition, the Disclosure Statement purports to limit the Debtors' obligation upon assumption to cure while ignoring the requirement of adequate assurance of future performance set forth in section 365(b)(1)(C) of the Bankruptcy Code.

24. In the event that the Debtors decide to assume the Leases, the Debtors, pursuant to the express terms of the Leases and the requirement of adequate assurance of future performance in section 365(b)(1), must provide Bank of America with new guaranties.[4] (Leases at ¶ 13(m).) Therefore, as currently drafted, approval of the Disclosure Statement should be denied unless it

---

[4] The Debtors cannot provide adequate assurance and comply with the Leases by affirming the existing Guaranties because the Debtors are seeking to substantively consolidate Delphi Corp., Delphi Automotive Systems and Delphi HR, as well as certain other Debtors. (*See* Disclosure Statement at pp. 145-46.)

8

is amended to (i) provide disclosures with respect to the potential obligations of non-assuming Debtor parties, and (ii) disclose adequate assurance that may need to be provided as a condition to assumption, including adequate assurance in the form of guaranties required under assumed executory contracts and unexpired leases, including the Leases.

**B.     The Disclosure Statement Proposes a Cure Procedure That is Contrary to the Express Provisions of 11 U.S.C. §§ 365(b)(1) and 1123(b)(2).**

25.     Section 1123(b) of the Bankruptcy Code provides that a plan may, subject to section 365, provide for the assumption, rejection, or assignment of an executory contract or unexpired lease of the debtor not previously rejected under section 365. 11 U.S.C. § 1123(b)(2). Such assumption must occur by no later than plan confirmation. *See*, *e.g.*, *In re Adelphi Communications Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).

26.     In its current form, the Disclosure Statement proposes that "the Debtors will have the right to reject any contract or lease for a period of five days after the entry of a Final Order establishing a Cure amount in excess of that provided by the Debtors." (Disclosure Statement at p. 178.) The Disclosure Statement also suggests that cure, as the sole requirement for assumption, shall not be determined for a period of forty-five (45) days or more after confirmation. Under the proposed procedures, even after cure is determined, the Debtors are attempting to reserve their right to revisit their decision to assume or reject contracts and leases after confirmation of the proposed Plan. The Disclosure Statement is therefore in direct conflict with section 1123(b)(2) and section 365(b)(1) of the Bankruptcy Code, because the Debtors are improperly attempting to extend the time to (i) assume and/or reject, and (ii) provide cure and adequate assurance of future performance under assumed contracts and leases. *See* 11 U.S.C. §§ 365(b)(1) and 1123(b)(2).

9

27. In the event that the Debtors seek to assume the Leases, the Debtors should be required to cure any breach or default under the Leases, including the requirement that the obligations under the Leases be guaranteed, by no later than the date of confirmation or, at the very least, provide adequate assurance that the Debtors will promptly cure soon after confirmation. Therefore, the Disclosure Statement should be denied to the extent that it seeks approval of these procedures, both of which conflict with express provisions of the Bankruptcy Code.

### C. The Disclosure Statement Should Be Denied to the Extent It Prejudices the Rights of Bank of America Pursuant to Orders of this Court.

28. Bank of America objects to the Disclosure Statement to the extent that it seeks to alter or otherwise prejudice the rights of Bank of America under the Consent Order, the Adversary Order and the Claims Stipulation. Specifically, the Disclosure Statement sets forth procedures for holders of rejection damages claims that should not be applicable to Bank of America in light of the Claims Stipulation, which provides that Bank of America's Proofs of Claim are automatically reinstated upon rejection by the Debtors without the need for further action by Bank of America. Therefore, approval of the Disclosure Statement should be denied to the extent it attempts to rewrite the terms of the Claims Stipulation or any other order entered by this Court in resolution of a dispute between the Debtors and Bank of America.

### CONCLUSION

29. Based on the arguments set forth and detailed herein, the Disclosure Statement does not contain, in accordance with section 1125(a)(1) of the Bankruptcy Code, adequate information with respect to assumption. Moreover, the Disclosure Statement seeks to impose a procedure in direct conflict with the Bankruptcy Code. Therefore, this Court should deny the

Debtors' request for approval of the Disclosure Statement absent revisions correcting the aforementioned deficiencies.

30.    Bank of America has not included certain objections it has to the proposed Plan in this Objection, as it believes that such objections are confirmation issues more appropriately addressed at the confirmation hearing. Bank of America expressly reserves any and all rights to supplement this Objection at or prior to the hearing on the Disclosure Statement and/or confirmation of the proposed Plan.

## **MEMORANDUM OF LAW**

31.    Because the relevant authorities in support of the requested relief are cited in this Objection, Bank of America requests that the requirement of service of a separate memorandum of law under Local Bankruptcy Rule 9013-1(b) be deemed satisfied by this Objection.

32.    No previous request for the relief requested herein has been made to this Court or any other Court.

WHEREFORE, Bank of America respectfully requests that this Court (i) deny approval of the Disclosure Statement, and (ii) grant such other and further relief as is just and appropriate under the circumstances.

Dated:  September 28, 2007

BARNES & THORNBURG LLP
Counsel to Bank of America, N.A.


By: /s/John T. Gregg
    Patrick E. Mears (PM-6473)
    John T. Gregg (Admitted Pro Hac Vice)
Business Address:
300 Ottawa Avenue, NW
Suite 500
Grand Rapids, Michigan  49503
Telephone:(616) 742-3930
Facsimile: (616) 742-3999
pmears@btlaw.com
jgregg@btlaw.com

GRDS01 JGREGG 352025v3

12