BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, MI  49503
Telephone:  (616) 742-3930
Facsimile:  (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

John T. Gregg, Admitted Pro Hac Vice
Telephone: (616) 742-3945
Email: jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| Debtors. | ) | (Jointly Administered) |

## MOTION OF BANK OF AMERICA, N.A. FOR ENTRY OF ORDER TEMPORARILY ALLOWING CLAIMS FOR VOTING ON PLAN PURSUANT TO FED. R. BANKR. P. 3018(a)

Bank of America, N.A. ("Bank of America"), by and through its undersigned attorneys, hereby files this motion (the "Motion") for the entry of an order temporarily allowing its claims for voting on the Plan (as defined below) pursuant to Fed. R. Bankr. P. 3018(a).  In support of the Motion, Bank of America states as follows:

### JURISDICTION

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (L).

2.     The statutory predicate for the relief requested herein is Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**THE LEARJET LEASE**

1.     On or about March 30, 2001, Bank of America's predecessor-in-interest, Fleet National Bank ("Fleet") entered into a certain Aircraft Lease dated such date with the predecessor-in-interest to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), SM 5105 LLC, a Delaware limited liability company ("SMLLC"), as lessee (the "Learjet Lease").

2.     The following personal property is the subject of the Learjet Lease:

(a)     a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

(b)     two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA0319 and PCE-CA 0318 (collectively, the "Learjet Engines"); and

(c)     all present and future parts, avionics, accessories, accessions and attachments related to the Learjet Aircraft, the Learjet Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Learjet Aircraft, the Learjet Engines, and any related goods (the "Learjet Accessories and Avionics").

3.     Title to the Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics (collectively referred to herein as the "Learjet") is held by Bank of America, as successor-in-interest to Fleet. The lessor's cost of the Learjet amounted to $11,125,200.00.

4.     Pursuant to the Learjet Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

2

5. Pursuant to Section 3 of the Learjet Lease, the lessee is required to pay to Bank of America "Basic Rent" and "Supplemental Rent." Basic Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013. The amount of each monthly installment of Base Rent under the Learjet Lease is $64,202.53 for months 1 through 72 of the Learjet Lease and $78,470.93 for months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

6. All of the lessee's obligations under the Learjet Lease are unconditionally guaranteed by Delphi Corporation ("Delphi Corp."), formerly known as "Delphi Automotive Systems Corporation", a Delaware corporation, and Delphi Automotive Systems LLC ("Delphi Automotive Systems"), a Delaware limited liability company, pursuant to the terms of separate guaranties, which were thereafter amended in writing on or about December 16, 2003.

7. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property.

8. On December 17, 2001, Fleet made an in lieu filing with the Delaware Secretary of State, which continued perfection with respect to the Learjet and related collateral.

9. On January 29, 2002, the Learjet Lease was recorded with the FAA.

10. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.

11. On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State and listing Delphi HR as the debtor.

3

12. On or about November 26, 2001, lessee and Automotive Air Charter, Inc. ("Charter"), a Delaware corporation, executed a certain Charter Agreement concerning the Learjet, which agreement is dated such date (the "Learjet Charter Agreement"). The Learjet Charter Agreement was thereafter extended/renewed by lessee and Charter on or about January 2, 2002.

13. On November 26, 2001, lessee and Pentastar Aviation, LLC ("Pentastar") executed a certain Aircraft Management Agreement under FAR Part 91, concerning the Learjet, which agreement is dated such date, and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003 (the "Management Agreement").

14. Pursuant to the terms of the Learjet Lease and two separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by Fleet, the lessee, Pentastar and Charter and dated November 27, 2001 and December 16, 2003 (collectively, the "Assignments of Related Collateral"), SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of lessee's rights under the Management Agreement and the Learjet Charter Agreement (and any extensions and renewals thereof) and any subleases of the Learjet aircraft, including any sums paid and payable to the lessee thereunder (the "Learjet Ancillary Personal Property"). This security interest was perfected under applicable nonbankruptcy law.

15. Upon information and belief, the Learjet is being chartered on a frequent basis to third parties and, as a result of these charters, cash revenues are being paid to the Debtors. These cash revenues form a portion of the Learjet Ancillary Personal Property and constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which Bank of America holds a first priority security interest.

**THE CHALLENGER LEASE**

16.     On or about March 30, 2001, Fleet entered into a certain Aircraft Lease dated such date with SMLLC, as lessee (the "Challenger Lease").

17.     The following personal property is the subject of the Challenger Lease:

(a)     a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b)     two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

(c)     all present and future parts, avionics, accessories, accessions and attachments related to the Challenger Aircraft, the Challenger Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods (the "Challenger Accessories and Avionics").

18.     Title to the Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics (collectively referred to herein as the "Challenger") is held by Bank of America, as successor-in-interest to Fleet.  The lessor's cost of the Challenger was $24,149,760.00.

19.     Pursuant to the Challenger Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

20.     Pursuant to Section 3 of the Challenger Lease, the lessee is required to pay to Bank of America "Base Rent" and "Supplemental Rent."  Base Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013.  The amount of each monthly installment of Base Rent is $130,476.08 for months 1

5

through 72 of the Challenger Lease and $159,480.43 for the months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

21. All of the lessee's obligations under the Challenger Lease are unconditionally guaranteed by Delphi Corp. and Delphi Automotive Systems pursuant to the terms of separate guaranties, which were thereafter amended in writing on or about December 16, 2003.

22. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property.

23. On November 30, 2001, Fleet made an in lieu filing with the Delaware Secretary of State, which continued perfection with respect to the Challenger and related collateral.

24. On January 25, 2002, the Challenger Lease was recorded with the FAA.

25. On or about December 16, 2003, SMLLC assigned all of its rights in the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.

26. On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State.

27. On or about November 26, 2001, lessee and Charter executed a certain Charter Agreement concerning the Challenger, which agreement is dated such date (the "Challenger Charter Agreement"). The Challenger Charter Agreement was thereafter extended/renewed by lessee on or about January 2, 2002.

28. On November 26, 2001, lessee and Pentastar executed the Management Agreement which also concerns the Challenger, which agreement is dated such date and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003.

6

29.     Pursuant to the terms of the Challenger Lease and the Assignments of Related Collateral, SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of SMLLC's rights under the Management Agreement and the Challenger Charter Agreement (and any extensions and renewals thereof) and in any subleases of the Challenger aircraft including any sums paid and payable to the lessee thereunder (the "Challenger Ancillary Personal Property"). This security interest has been perfected under applicable nonbankruptcy law.

30.     Upon information and belief, the Challenger is being chartered on a frequent basis to third parties and, as a result of these charters, cash revenues are being paid to the Debtors. These cash revenues form a part of the Challenger Ancillary Personal Property and constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which Bank of America holds a first priority security interest.

**THE PROOFS OF CLAIM**

31.     On October 8, 2005, Delphi HR, Delphi Corp., Delphi Automotive Systems and several of their affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

32.     Shortly thereafter, Bank of America filed a Motion for Adequate Protection Replacement Liens (the "Motion for Adequate Protection"). The Motion for Adequate Protection was resolved when this Court entered a Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens (the "Consent Order"), which provides for payment of certain amounts due under the Learjet Lease and the Challenger Lease in installments. (Consent Order at ¶ 6.) Moreover, the Consent Order provides that the Debtors must establish a segregated deposit account for the Aircraft Cash Collateral (as defined by the Consent Order. (Consent Order at ¶¶ 1-2.) Finally, the Consent Order provides that the Debtors

7

may not amend, cancel or otherwise terminate the Learjet Charter Agreement, the Challenger Charter Agreement, the Management Agreement or any subleases of the Learjet or the Challenger without at least ten (10) days prior written notice to Bank of America. (Consent Order at ¶ 5.)

33. On January 13, 2006, Bank of America commenced an adversary proceeding by filing a Complaint for a Declaratory Judgment With Respect to the Priority of Liens and Security Interests in Property of Delphi Automotive Systems Human Resources, LLC (the "Complaint") against Delphi HR, the Official Committee of Unsecured Creditors and JPMorgan Chase Bank, N.A., acting in its capacities as administrative agent for the Debtors' prepetition and post-petition lenders. The Complaint requested that this Court enter a judgment declaring that JPMorgan Chase Bank, N.A., in both of the aforementioned capacities, does not hold any security interests or liens in certain collateral pledged to Bank of America by Delphi HR.

34. On April 26, 2006, this Court approved a Stipulation and Order Resolving and Dismissing Adversary Proceeding (the "Adversary Order"). The Adversary Order resolved the issues set forth in the Complaint and provided, among other things, that (i) the Prepetition Agent (as defined in the Adversary Order) does not hold any security interests in, or liens on, any assets owned by Delphi HR, (ii) none of the security interests or liens granted by this Court under the Final DIP Financing Order (as defined in the Adversary Order) attach to any interests of Delphi HR in collateral pledged to Bank of America, and (iii) the Debtors and the Committee agree that the liens granted in the Final DIP Financing Order are subject and subordinate to the liens and security interests held by Bank of America.

35. On or around July 27, 2006, Bank of America timely filed (i) a proof of claim against Delphi Corp. (Claim No. 11317) in the amount of $38,127,592.68, plus interest, late

8

charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned, (ii) a proof of claim against Delphi Automotive Systems (Claim No. 11470) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned, and (iii) a proof of claim against Delphi HR (Claim No. 11457) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned (collectively, the "Proofs of Claims").

36. Bank of America's claims relating to the Challenger Lease against Delphi HR, and Delphi Automotive Systems and Delphi Corp. as guarantors, in the amount of $26,050,997.12, are based on the following calculation:

(i) the Casualty Value (as defined in the Challenger Lease) as of the first post-petition payment date[1], which amount is $24,222,209.28, plus;

(ii) the rent due as of the first post-petition payment date, which is $138,304.64; plus

(iii) the remarketing fee of $1,690,483.20; plus

(iv) interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned; minus

(v) post-petition payments and other amounts for which the lessee is entitled to a credit pursuant to the terms of the Challenger Lease.

---

[1] The first post-petition payment date under both the Learjet Lease and the Challenger Lease was October 20, 2005.

9

37. Bank of America's claims relating to the Learjet Lease against Delphi HR, and Delphi Automotive Systems and Delphi Corp. as guarantors, in the amount of $12,076,595.56, are based on the following calculation:

(i) the Casualty Value (as defined in the Learjet Lease) as of the first post-petition payment date, which amount is $11,007,272.88, plus;

(ii) the rent due as of the first post-petition payment date, which is $68,054.68; plus

(iii) the remarketing fee of $1,001,268.00; plus

(iv) interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the lease which are currently unknown or cannot be determined until the aircraft is returned; minus

(v) post-petition payments and other amounts for which the lessee is entitled to a credit pursuant to the terms of the Learjet Lease.

38. On or about May 22, 2007, the Debtors filed the Fifteenth Omnibus Objection, which sought entry of an order disallowing and expunging the claims of Bank of America because the Proofs of Claim allegedly asserted liabilities or dollar amounts that are not reflected on the Debtors' books and records.

39. On June 19, 2007, Bank of America filed its response to the Fiftteenth Omnibus Objection (the "Response"), because the Fifteenth Omnibus Objection provided no specific bases for the reduction of the claims of Bank of America against the Debtors, except to conclude that the reduction of the claims is appropriate.

40. Thereafter, the Debtors filed a Notice of Sufficiency Hearing with Respect to Debtors' Objection to Proof of Claim Nos. 11317, 11470 and 11457 (Bank of America, N.A.), which was supported by Debtors' Statement in Further Support of Debtors' Objection to Proof of Claim Nos. 11317, 11470 and 11457 (Bank of America, N.A.).

41.     The Debtors and Bank of America subsequently entered into a Joint Stipulation and Agreed Order to Withdraw without Prejudice [sic] of Proofs of Claim 11317, 11470, and 11457 (Bank of America, N.A.) (the "Claims Stipulation"), which was approved by this Court on September 7, 2007.  The Claims Stipulation provides, among other things, that (i) Bank of America agrees to withdraw the Proofs of Claim without prejudice pending the Debtors' decision to assume or reject the Learjet Lease, the Challenger Lease and the guaranties, and (ii) the Debtors will provide Bank of America with ten (10) days prior notice of the election to assume or reject the Leases and/or the guaranties.

**PLAN VOTING PROCEDURES**

42.     On September 6, 2007, the Debtors filed their "Solicitation Procedures Motion," their Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (the "Disclosure Statement") and their Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (the "Plan").  The Solicitation Procedures Motion proposes, among other things, that motions for the temporary allowance of claims for plan voting purposes must be filed on or before November 5, 2007.  The Debtors have further proposed that this Court establish November 5, 2007 as the date by which the Debtors must file all exhibits to the Plan, including Exhibit 8.1(a), which will disclose the executory contracts and unexpired leases the Debtors are proposing to reject.

43.     The Solicitation Procedures Motion is silent, however, as to whether holders of claims for rejection damages will be entitled to vote in favor of, or against, the Plan.

44.     As of the date of the filing of this Response, Delphi HR had neither assumed nor rejected the Challenger Lease or the Learjet Lease.

11

**RELIEF REQUESTED**

45.     By this Motion, Bank of America respectfully requests that this Court (i) allow Bank of America to file a provisional ballot for the full amount of the Proofs of Claim, and (ii) in the event the Debtors decide to reject the Learjet Lease and/or the Challenger Lease, temporarily allow the applicable Proofs of Claim in their full amount for the purpose of voting on the proposed Plan.

**BASIS FOR RELIEF REQUESTED**

46.     Bankruptcy Rule 3018(a) provides, in pertinent part, that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bank. P. 3018(a).

47.     Courts are encouraged to exercise their discretion to temporarily allow claims in favor of creditor participation in the plan voting process. *In re Johns-Manville Corp.*, 68 B.R. 647, 653-54 Bankr. S.D.N.Y. 1986); *see In re Adelphia Communications Corp.*, 359 B.R. 54, 61 (Bankr. S.D.N.Y. 2006) (voting for or against proposed plan is fundamental right in bankruptcy). The standard for the temporary allowance of a claim is fairly liberal. *See In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840 at *5 (Bankr. N.D. Tex. June 19, 1990) ("the evidentiary threshold is far less than would be required" at a claims objection hearing). To be permitted to vote its claim, a claimant must merely "present sufficient evidence that it has a colorable claim capable of temporary evaluation." *In re Armstrong*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003).

48.     Pursuant to the terms of the Claims Stipulation, the Proofs of Claim will automatically be reinstated upon the Debtors' decision to assume or reject the Leases. (Claims

Stipulation at ¶ 2.) Moreover, the Claims Stipulation requires the Debtors to provide Bank of America with ten (10) days prior notice of the election to assume or reject the Leases. (Claims Stipulation at ¶ 4.) The Solicitation Procedures Motion provides that the Debtors will file Exhibit 8.1(a) to the Plan, which identifies executory contracts and unexpired leases to be rejected, including the Leases, on or before November 5, 2007, four (4) days prior to the proposed voting deadline. Therefore, Bank of America should be informed of the Debtors' decision with respect to assumption or rejection by, at the very latest, October 26, 2007.

49. Bank of America requests that the Debtors provide Bank of America with a provisional ballot for the full amount of the Proofs of Claim. In the event that the Debtors reject one or more of the Leases, this Court should allow Bank of America to vote the amount of the Proofs of Claim relating to the rejected Leases and/or the guaranties. By allowing Bank of America to file a provisional ballot, the Debtors will suffer no prejudice because (i) Bank of America's ballot will be submitted well in advance of the Plan voting deadline of November 9, 2007, and (ii) the Debtors, through their own actions, will determine whether Bank of America will have a right to vote its rejection damages claims.

## MEMORANDUM OF LAW

50. This Motion sets forth specific responses with supporting law divided under numerous paragraphs. Bank of America respectfully requests that the requirements of the service and filing of a memorandum of law under Local Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, Bank of America respectfully requests that this Court enter an Order (i) allowing Bank of America to file a provisional ballot in the full amount of the Proofs of Claim pending the Debtors' decision to assume or reject one or more of the Leases, (ii) temporarily allowing the Proofs of Claim for voting on the Plan in the event that the Debtors reject one or more of the Leases; and (iii) granting such other and further relief as the Court may deem appropriate.

Dated:  September 28, 2007

                    BARNES & THORNBURG LLP
                    Counsel to Bank of America, N.A.


                    By: /s/John T. Gregg
                        Patrick E. Mears (PM-6473)
                        John T. Gregg (Admitted Pro Hac Vice)
                    Business Address:
                    300 Ottawa Avenue, NW
                    Suite 500
                    Grand Rapids, Michigan  49503
                    Telephone:(616) 742-3930
                    Facsimile: (616) 742-3999
                    pmears@btlaw.com
                    jgregg@btlaw.com