**Exhibit A**
**Warranty Settlement Agreement**

## WARRANTY, SETTLEMENT AND RELEASE AGREEMENT
## AND COVENANT NOT TO SUE

This Warranty, Settlement and Release Agreement and Covenant Not to Sue ("Agreement") is entered into this 14th day of August, 2007 by and between General Motors Corporation and Delphi Corporation, collectively the "Parties."

1.    **RECITALS**

  1.1    **GM**

  "GM" is General Motors Corporation and each of its affiliates, subsidiaries, and related entities, foreign and domestic.

  1.2    **Delphi**

  "Delphi" is Delphi Corporation and each of its affiliates, subsidiaries, and related entities, foreign and domestic.

  1.3    **The ███████████████ Claims**

  The "██████████████████Claims" refer to those ████████████ warranty claims for the ██████████████for which GM sought compensation pursuant to its ████████████████████, as further described in the ████████ ████████between GM and Delphi dated ████████████GM's ████████████ ████filed in the pending arbitration between the Parties pursuant to the ████████ █████████also dated ███████████and GM's Proof of Claim ("GM's Proof of Claim") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") dated July 31, 2006. A copy of GM's Proof of Claim is incorporated by reference.

GM / Delphi Warranty Agreement
August 14, 2007

**1.4** ████████████████ **Claims**

The ██████████ Claims pertain to failures to ██████████████ primarily due to ██████s provided to Delphi by ██████ that were installed into██████████ ██████ used in the GM vehicles as described in GM's Proof of Claim.

**1.5** ████████████ **Claims**

The T██████ Claims pertain to failures to ████████████████ used in GM vehicles as described in GM's Proof of Claim.

**1.6** ████████████ **Claims**

The ██████████████████████████████ Claims pertain to failures of the ██████████ located on the ████████████████████████of certain GM vehicles as described in GM's Proof of Claim.

**1.7** ████████ **Claims**

The C████████ Claims pertain to failures of ████████████ (CD) ██████ provided to Delphi by ██████ as described in GM's Proof of Claim.

**1.8** ████████████████ **Claims**

The ████████████ Claims pertain to the ████████████████for ██████ ██████████ which GM attributes to the Delphi-produced ████████████████ ████████████ model year██████vehicles.

**1.9** **Other Warranty Claims**

"Other Warranty Claims" shall include any warranty claim or issue relating to a Delphi supplied component or assembly for the model year and vehicles noted on Exhibit #01. Exhibit #01 contains a complete list of those claims for which GM asserts Delphi is

Page 2

GM / Delphi Warranty Agreement
August 14, 2007

financially or otherwise responsible in whole or in part, many of which are included and
more fully described in GM's Proof of Claim.

### 1.10 GM Representations

The warranty and recall issues for which GM has determined as of June 4, 2007,

that Delphi has responsibility are included in this Agreement and the attachments thereto.

Due to the large number of components supplied by Delphi in the ordinary course of

business, warranty and recall expense is incurred by GM that may be due in whole or in

part to defects in components supplied by Delphi.  Where excessive warranty expenses or

recall expenses are incurred and GM believes there may be supplier responsibility for

such warranty or recall expenses, GM's normal process is to actively investigate the issue

and work with the supplier to determine the root cause of the issue and responsibility for

the excessive warranty expenses or recall expenses.  As of the date of this Agreement, the

only issues with respect to a Delphi supplied component that are currently in GM's

investigation process and for which Delphi may have responsibility, other than the claims

settled by this Agreement, are (i) the ███████████████████████████████ar

█████████████████████████s, and (ii) the ███████████s in ███████

████████████████████.  GM's investigation of these issues

(███████████████████████████████████) through its Field

Performance Evaluation process is ongoing and GM has not yet determined if Delphi has

any responsibility.  Furthermore, GM has not deliberately withheld, delayed, and/or

avoided including any warranty or recall expenses from the GM Field Performance

Evaluation Process that GM determined may be in part the responsibility of Delphi.

Page 3

GM / Delphi Warranty Agreement
August 14, 2007

GM will update the representations in this Section 30 days prior to Delphi's

emergence from bankruptcy, provided that Delphi in writing requests such an update at

least 60 days prior to Delphi's emergence from bankruptcy.

The representations in this Section are not intended to foreclose GM from later

investigating excessive warranty expenses or recall expenses associated with Delphi

supplied components and, if it determines that Delphi has responsibility, GM may seek

recovery from Delphi for any such expenses through its normal processes. This Section

shall, however, foreclose GM from bringing a claim against Delphi if it is shown that on

or before August 10, 2007, (i) GM did know about the claim, (ii) the amount of the claim

then exceeded $1 million, or GM then believed the claim would exceed $1 million, (iii)

the claim is then in GM's investigation process or GM determined that it should have

been in GM's investigation process but excluded it from that process for the purpose of

pursuing a claim against Delphi, and (iv) that GM then believed or reasonably should

have believed that Delphi had some responsibility for the claim.

For purposes of this Section, GM's investigation process shall mean its Field

Performance Evaluation Process and/or its Field Performance Evaluation Supplier

Quality Department.

### 1.11    Purpose of the Agreement

The purposes of this Agreement are to resolve, compromise and/or settle all

outstanding warranty claims and issues relating to a component or assembly supplied by

Delphi to GM that (i) are listed in Section 1 of this Agreement and (ii) are required to be

disclosed pursuant to Section 1.10 of this Agreement, that are not disclosed pursuant to

Section 1.10 hereof ((i) and (ii) in this Section are referred to in this Agreement as the

Page 4

GM / Delphi Warranty Agreement
August 14, 2007

"Settled Claims"); and to enter into a Covenant Not to Sue or Assert a claim against

Delphi with regard to the Settled Claims.  Except as may be specifically set forth herein

pertinent to breach of this Agreement, the further purpose of this Agreement is to

foreclose any current, anticipated and/or potential assertion, litigation, arbitration or other

contested proceedings relating to the claims settled by this Agreement.

## 2.   HIERARCHY OF AGREEMENTS

The terms of this Agreement supersede and control of any previous agreement by

the Parties relating to compromising warranty and/or recall claims for the matters covered

by this Agreement; specifically,



> the ████████████████████ er Claims
> I████████████ Claims
> ████e Claims
> ██████████████████████████ h Claims
> ██████ r Claims
> ████████████████Claims and
> the 43 warranty claims identified in Exhibit #01.

All previous agreements entered into by the Parties relating to compromising warranty

and/or recall claims not addressed by this Agreement remain in effect.

## 3.   CONSIDERATION

In consideration of the promises and releases and Covenant Not to Sue or Assert

contained in this Agreement, the receipt and adequacy of which are mutually

acknowledged, the Parties agree as follows:

**3.1**   ████████████████████████████ **Claims**

Delphi shall pay to GM the sum of twenty-five million ($25,000,000.00) dollars

in full satisfaction of each and all of the ████████████████████████

Page 5

GM / Delphi Warranty Agreement
August 14, 2007

resulting from repairs made to vehicles that were submitted to GM for payment through

June 4, 2007 as reflected in the GM warranty system.

**3.1.1** With regard to any ██████████████████ Claims

resulting from repairs made to vehicles as of or after June 5, 2007, the Parties agree that

Delphi shall pay to GM one hundred seventy-five ($175.00) dollars per repair claim for

up to 107,000 ██████████████████ Claims. Delphi shall have no

responsibility for payment of future ██████████████ Claims under this

Section 3.1 and Agreement in excess of 107,000 repair claims received by GM on or after

June 5, 2007.

**3.1.2** GM shall give Delphi notice of the number of ██████████████

██████Claims received by GM quarterly, starting June 5, 2007, and continuing until

GM has received 107,000 ██████████████████Claims on and

after June 5, 2007. The first quarter hereunder shall run from June 5, 2007 through

September 30, 2007 and each quarter thereafter shall be a three month period, the first of

which shall commence October 1, 2007. GM shall endeavor to provide the quarterly

notices within 30 days of the end of each quarterly period. Delphi shall remit payment to

GM within 30 days of receipt of each such quarterly notice. Delphi shall have the right

to audit the claims made under this paragraph, and GM will provide Delphi access to the

claims data in the GM warranty system necessary to audit the claims submitted by GM.

As a result of the audit, should Delphi believe the dollar amount or number of claims

submitted by GM is incorrect, representatives of the Parties with appropriate authority to

resolve the dispute will meet and negotiate in good faith a resolution before the quarterly

payment payable by Delphi under this paragraph.

Page 6

GM / Delphi Warranty Agreement
August 14, 2007

**3.1.3**   Prior to June 4, 2007, GM issued Delphi a debit notice against receivables and withheld five million four hundred twenty-six thousand six hundred eighty-one ($5,426,681.00) dollars in cash payment.  As part of this Agreement, Delphi will issue a credit memo in that amount of dollars on or before September 1, 2007 accepting GM's debit notice, and agreeing to GM's withholding of the five million four hundred twenty-six thousand six hundred eighty-one ($5,426,681.00) dollars.  This shall not constitute payment of any amount Delphi is required to pay under any other paragraph of this Agreement.

**3.2**   ▌▌▌▌▌▌▌▌▌▌**Claims**

With regard to those ▌▌▌▌▌▌▌▌▌▌Claims resulting from repairs made to vehicles through June 4, 2007, Delphi shall pay GM the sum of forty-seven million five hundred thousand ($47,500,000.00) dollars in full satisfaction of each and every one of those claims.  With regard to ▌▌▌▌▌▌▌▌Claims resulting from repairs made to vehicles on or after June 5, 2007, the Parties agree as follows:

**3.2.1.** Delphi will provide to GM ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, for ▌▌▌▌▌▌▌▌▌▌model year ▌▌▌▌▌▌ (part numbers ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, ▌▌▌▌▌▌▌▌▌▌, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌) (the "▌▌▌▌▌▌▌▌") at no charge to GM up to and including the ▌▌▌▌▌▌▌▌▌▌▌s to be provided consistent with this Agreement.

**3.2.2** For each ▌▌▌▌▌▌▌▌r unit in excess of the 1,100,000 described in Section 3.2.1, above, Delphi will sell additional ▌▌▌▌▌▌▌▌▌ to GM at an agreed price not to exceed eighty-three ($83.00) dollars per unit.

Page 7

GM / Delphi Warranty Agreement
August 14, 2007

**3.2.3**  Delphi agrees to individually box and shrink wrap each ▮▮▮▮▮▮▮▮

provided pursuant to this Agreement.

**3.2.4**  Delphi agrees to make each box described in paragraph 3.2.3 "ship to

dealer" ready.  This includes protective packaging, markings, and the appropriate GM

part number as specified in GM Supply Power.  At Delphi's option and cost, the

"boxing" may be done at the Service Center.

**3.2.5**  Delphi agrees to deliver each ▮▮▮▮▮▮▮ described in this

Agreement, FOB to the Electronic Service Centers as designated by GM, or such other

distribution center(s) that may reasonably be designated by GM.

**3.2.6**  The Parties agree that Delphi shall have the option, at its sole discretion, to

provide new or re-manufactured ▮▮▮▮▮▮▮ units in satisfaction of its obligations

under this Agreement.  During the period before Delphi is prepared to ship new ▮▮▮▮

▮▮▮▮▮ pursuant to this Agreement, at GM's election Delphi shall ship

remanufactured ▮▮▮▮▮ to the Electronic Service Centers in accordance with this

Agreement.  Delphi agrees that the price to GM for those new or re-manufactured ▮▮▮

▮▮▮▮▮ units shall be zero ($0) dollars per unit for those provided under paragraph

3.2.1, and not to exceed eighty-three ($83.00) dollar cost per unit agreed to in Paragraph

3.2.2., above.

**3.2.7**  Those new ▮▮▮▮▮▮▮ to be provided pursuant to this Agreement

will be manufactured in Mexico.

**3.2.8**  If GM requires the manufacture of the ▮▮▮▮▮ Clusters in the United

States, GM agrees that it will pay the per-unit difference in costs of manufacturing the

▮▮▮▮▮▮▮ in the United States rather than Mexico ("Manufacturing Costs").  The

Page 8

GM / Delphi Warranty Agreement
August 14, 2007

difference in Manufacturing Costs is the difference in "all in" labor cost, manufacturing

burden cost, material and freight costs, and any incremental investment (as measured by

depreciation). The difference in Manufacturing Costs shall not exceed $30 per unit for

purposes of this Agreement. At GM's request, Delphi will provide to GM the difference

in Manufacturing Costs prior to any movement of production, and in the case where GM

and Delphi cannot agree on the difference in Manufacturing Costs, Delphi will have no

obligation to meet GM's request to move the product to a United States manufacturing

site. Delphi's obligation to provide the 1,100,000 free ███████████ to GM expires

on January 1, 2014.

    **3.2.9** With regard to those ██████████████████ vehicles equipped

with instrument clusters that incorporated Switec stepper motors (part numbers

███████████████████████████████████████████████████████████

██████████████████████, Delphi agrees to provide the bulbs and

stepper motors at Delphi's variable cost, and the associated lenses at $2.00 below the

existing price currently charged to the Re-manufacturing Center. The Parties will

identify the savings resulting from this paragraph and translate that into a per unit cluster

price reduction by part number which will be provided to GM as specified in Section

3.2.12, below. In the event of a verified net increase in Delphi's variable cost of the

█████████████ or both, Delphi may pass on these increases to GM.

    **3.2.10** The Parties agree that Delphi has, and retains, any right of action, in law,

equity or otherwise, against ████████ with regard to the ██████████ ██████████

described in this Agreement. Delphi shall retain full control over the exercise and

prosecution of any such rights, and shall be entitled to pursue such remedies as it sees fit,

Page 9

GM / Delphi Warranty Agreement
August 14, 2007

in any manner and/or forum it deems fit, in its sole and exclusive discretion. The Parties

further agree that Delphi will share fifty (50%) percent of any gross recovery (e.g.,

money damages, parts, and discount on parts) it obtains from Switec with regard to any

such right of action with GM except for free or discounted stepper motors Delphi

receives from ███████ on the ████████████ and ████████████ Delphi supplies to GM

at cost. Further, the Parties acknowledge that the first priority will be to receive free

████████████ from ██████ to meet GM's production requirements for ████████████

████████ Delphi agrees to continue to keep GM reasonably informed regarding the

progress of its discussions and any claim it may file against ██████ relating to this

Paragraph.

    **3.2.11** Delphi will continue to cooperate with and assist GM with technical

assistance and any technology transfer reasonably required to enable ████████ on GM

vehicles equipped with ████████████ to be ██████ at authorized GM dealerships.

    **3.2.12** Delphi will disclose to GM, exclusively to GM's Legal Staff, the per unit

cost breakdown for ████████████ for GM to confirm Delphi's adherence with the

Agreement. GM agrees that GM Legal Staff will keep the disclosed price break-down

information confidential and not share or disclose this information to GM personnel from

other GM units or groups, including but not limited to GM Purchasing or Engineering, or

any third parties, except their outside counsel, if any, or financial consultants, accountants

or auditors, as may be necessary for security and regulatory filings and so long as each

person agrees to maintain the confidentiality of the information in accordance with this

paragraph.

GM / Delphi Warranty Agreement
August 14, 2007

### 3.3 ███████ **Claims**

Delphi agrees to pay GM the amount of seven million five hundred thousand ($7,500,000.00) dollars in full satisfaction of each and every one of the ███████ Claims. The Parties confirm that Delphi has and shall retain any right of action, in law, equity or otherwise, against ████████████████████████TD; S██████████████████████████████████████████████████████████, "██████). Delphi shall retain full control over the exercise and prosecution of any such rights, and shall be entitled to pursue such remedies as it sees fit, in any manner and/or forum it deems fit, in its sole and exclusive discretion. The Parties further agree that Delphi shall share fifty (50%) percent of any gross recovery from ██████for such right of action with GM, but only to the extent that such gross recovery exceeds eight million ($8,000,000.00) dollars. Delphi shall only be obligated to pay the 50% share of any gross cost recovery over eight million ($8,000,000.00) dollars to GM upon receipt of payment(s) of the recovered amount from██████. For example, should Delphi recover ten million ($10,000,000.00) dollars as damages from██████Delphi would pay GM one half of two million ($2,000,000) dollars or one million ($1,000,000.00) dollars from the recovery following Delphi's receipt of ██████ payment. Delphi agrees to continue to keep GM reasonably informed regarding the progress of its discussions and any claim it may filed against ██████ relating to this Paragraph.

### 3.4 ██████Claims, ██████Claims, and ██████ **Claims**

Delphi agrees to pay GM the amount of five hundred thousand ($500,000.00) dollars in full satisfaction of each and every one of the ██████ Claims, the██████ Claims, and the██████Claims.

Page 11

GM / Delphi Warranty Agreement
August 14, 2007

### 3.5    GM's Waiver of Contribution Claims and Rights Relating to the ██████████ Claims and ████████████████ Claims.

Through this Agreement, GM expressly waives any right it has, or may have in the future, for contribution from Delphi relating to the ██████████ Claims and ████████████████ Claims, or the facts underlying those claims  If GM and Delphi are named in a case, and the case proceeds to trial, Delphi is free to assert all defenses, including those defenses adverse to GM.  GM will take no affirmative acts or cooperate with any third party to sue, add, and/or join Delphi as part of any suit or action related to the claims in this paragraph.

### 3.6  Other Warranty Claims

Delphi shall pay to GM thirty-one million five hundred thousand ($31,500,000.00) dollars in full satisfaction of each and every one of the Other Warranty Claims (Exhibit #01).

## 4.    RELEASE

### 4.1    GM's Release of Delphi

For and in consideration of the provisions of this Agreement, including the consideration described in Section 3 of this Agreement, above, the adequacy of which are hereby acknowledged, GM, on behalf of itself and its predecessors in interest, subsidiaries, affiliates, parent corporations, divisions, partners, joint ventures, shareholders, agents, representatives, attorneys, employees, officers, directors, customers, executors, administrators, heirs, beneficiaries, successors, assigns and any and all other persons or entities acting or purporting to act on its behalf, does hereby fully and forever release, acquit, and discharge Delphi and its predecessors in interest, affiliates, subsidiaries, parent corporations, divisions, partners, joint-ventures, shareholders, agents,

Page 12

GM / Delphi Warranty Agreement
August 14, 2007

representatives, attorneys, employees, customers, executors, administrators, heirs,

beneficiaries, successors, assigns and any and all other persons or entities acting or

purporting to act in their behalf from any and all claims, actions, demands, obligations,

and lawsuits of any kind or description whatsoever, and any compensation or damages

whatsoever, including but not limited to incidental, consequential, compensatory and

exemplary damages relating in any way to the Settled Claims or any and all claims,

damages, actions, demands, obligations, and lawsuits that could have been brought

related to the underlying subject matter of the Settled Claims.  Affiliates and entities

acting or purporting to act on GM's behalf shall be limited to affiliates and entities for

which GM has management control.

### 4.2  Delphi's Release of GM

For and in consideration of the provisions of this Agreement, including the

consideration described in Section 3 of this Agreement, above, the adequacy of which are

hereby acknowledged, Delphi, on behalf of itself and its predecessors in interest,

subsidiaries, affiliates, parent corporations, divisions, partners, joint ventures,

shareholders, agents, representatives, attorneys, employees, officers, directors, customers,

executors, administrators, heirs, beneficiaries, successors, assigns and any and all other

persons or entities acting or purporting to act on its behalf, does hereby fully and forever

release, acquit, and discharge GM and its predecessors in interest, affiliates, subsidiaries,

parent corporations, divisions, partners, joint-ventures, shareholders, agents,

representatives, attorneys, employees, customers, executors, administrators, heirs,

beneficiaries, successors, assigns and any and all other persons or entities acting or

purporting to act in their behalf from any and all claims, actions, demands, obligations,

GM / Delphi Warranty Agreement
August 14, 2007

and lawsuits of any kind or description whatsoever, and any compensation or damages

whatsoever, including but not limited to incidental, consequential, compensatory and

exemplary damages relating in any way to the Settled Claims or any and all claims,

damages, actions, demands, obligations, and lawsuits that could have been brought

related to the underlying subject matter of the Settled Claims. Affiliates and entities

acting or purporting to act on Delphi's behalf shall be limited to affiliates and entities for

which Delphi has management control.

### 4.3  GM's Proof of Claim

Delphi has advised GM that upon entry of an order approving this Agreement,

Delphi intends to instruct its claims agent to reduce the component relating to warranty

claims contained in GM's Proof of Claim by $530,081,671, which includes without

limitation the personal injury claims resulting from tailgate cable fractures asserted in

section VII(b) of GM's Proof of Claim, and expunge with prejudice the unliquidated

component relating to warranty claims. GM has made no representations to Delphi's

claims agent and is not making any representation to Delphi's claims agent in this

Section. Nothing contained herein shall be construed to reduce any amounts to be paid to

GM pursuant to the settlement agreement and/or restructuring agreement being

negotiated between GM and Delphi; provided that GM shall not receive any further

consideration, except as explicitly provided herein, on account of those warranty claims

settled hereby.

## 5. COVENANT NOT TO SUE

Neither GM nor Delphi shall initiate any action, cause of action lawsuit,

arbitration or any other activity in any court, administrative body or any other form of

C:\DELPHI\GM WARRANTY 2007\Agreement (08-14-07 Final)

GM / Delphi Warranty Agreement
August 14, 2007

contested proceeding relating to any Settled Claims or the facts underlying such Settled

Claims. Both GM and Delphi understand, acknowledge and agree that this Agreement

and Covenant not to Assert or Sue may be pled by GM or Delphi as a complete defense

to any claim or entitlement relating to in any way the Settled Claims or the facts

underlying the Settled Claims.

6.      DISMISSAL OF ███████████████████████

        Upon execution of this Agreement, and following any order of the Bankruptcy

Court that may be required under paragraph 7 hereof, the parties shall, through their

respective attorneys, cause the ███████████████████████described in

paragraph 1.3, above, to be immediately and permanently terminated with prejudice.

This Agreement shall supersede and terminate the███████████████████████

entered into between the Parties.

7.      BANKRUPTCY PROCEEDINGS; NOTICE AND APPROVAL

        The Parties agree to work cooperatively to provide such notice, and to seek such

approval, of the provisions of this Agreement as shall be required under the applicable

United States bankruptcy laws, statutes and rules.

8.      PAYMENT

        Delphi shall pay the amounts due under Sections 3.1, 3.2, 3.3 and 3.4 on or before

November 1, 2007, by wire transfer in accordance with instructions to be provided by

GM; provided, however, that at Delphi's election Delphi may defer these payments until

the time that it receives payments from GM, at or about the time of its emergence from

bankruptcy, pursuant to the proposed comprehensive settlement agreement and/or the

restructuring agreement to be entered into between Delphi and GM and that is expected

Page 15

GM / Delphi Warranty Agreement
August 14, 2007

to be incorporated into the plan of reorganization, and in the event of such a deferral GM

shall set off these payments against the amounts then payable to Delphi by GM. In the

event Delphi elects to defer these payments pursuant to this Section, interest shall run at

the rate of 6% percent per annum on the payment from November 1, 2007 until paid by

Delphi or set off against amounts payable by GM.

## 9. CONFIDENTIALITY

Except as may be required by a valid order signed by a court of competent

jurisdiction including, but not limited to, the United States Bankruptcy Court, or as

necessary for accounting, auditing, tax preparation, securities law reporting purposes,

and/or bankruptcy disclosure or approval purposes, including but not limited to,

disclosure to Delphi's statutory committees, prospective plan inventors and/or the

Bankruptcy Court, GM and Delphi shall not disclose, disseminate, reveal, or

communicate to any third person or entity, in any manner directly or indirectly, any

information concerning the negotiations resulting in this Agreement, the terms of this

Agreement, or a copy of this Agreement. If asked by anyone to whom disclosure is not

permitted about the resolution of the Settled Claims, or any of them, GM and Delphi shall

state only that the dispute between them has been resolved to their mutual satisfaction.

This paragraph shall not preclude disclosure to outside counsel for the Parties, provided

that such outside counsel agree to maintain the confidentiality of this Agreement in

accordance with this paragraph.

Notwithstanding anything set forth herein to the contrary, the Parties agree that a

mutually acceptable redacted version of this Agreement, the Parties' acceptance of which

shall not be unreasonably withheld, will be filed with the Bankruptcy Court for approval

C:\DELPHI\GM WARRANTY 2007\Agreement (08-14-07 Final)

GM / Delphi Warranty Agreement
August 14, 2007

purposes. A complete copy of the Agreement shall be provided to the Bankruptcy Court,

counsel to the plan investors, Delphi's post petition lenders, the statutory committees, and

the United States Trustee, and shall be available to a third party upon request, provided

that the requesting third party is affected by the Agreement and executes a confidentiality

agreement acceptable to Delphi.

## 10.    APPROVALS OF SENIOR MANAGEMENT

The Parties hereby represent and confirm, through their signatures below, that

they have obtained all management approvals required to execute and enforce this

Agreement. Delphi also represents and confirms that it has obtained approval from its

Board of Directors to enter into this Agreement.

## 11.    BREACH OF THIS AGREEMENT

### 11.1    Notice Of Breach

To the extent that either of the Parties believes the other to be in material breach

of any provision of this Agreement, that Party shall give specific written notice of such

breach to the other party within 30 days of discovery of such alleged breach. The

responding parties shall have 30 days from receipt of the written notice within which to

respond and/or cure any such alleged breach.

### 11.2    Breach Of Any Particular Provision Of This Agreement Does Not Void Entire Agreement.

A breach of any particular provision set forth in this Agreement shall not

constitute a breach of the entire Agreement and shall not serve to void any other

provision of this Agreement.

GM / Delphi Warranty Agreement
August 14, 2007

## 12.    NO ADMISSION OF LIABILITY

The Parties acknowledge that this Agreement evidences the settlement of claims

disputed both as to liability and as to amount, and that the foregoing consideration shall

not be construed as an admission of responsibility or liability, as the same is now and

always has been expressly denied by each Party.

## 13.    CHOICE OF LAW AND JURISDICTION

This Agreement shall be construed and interpreted in accordance with the laws of

the State of Michigan.  All actions brought, arising out of or related to this Agreement

shall be brought in the Bankruptcy Court, and the Bankruptcy Court shall retain exclusive

jurisdiction to determine any and all such actions.   The Parties irrevocably and

unconditionally consent to submit to the jurisdiction of the Bankruptcy Court for any

litigation arising out of or relating to this Agreement and the transactions contemplated

thereby (and agree not to commence any litigation relating thereto except in the

Bankruptcy Court).  To the extent the Bankruptcy Court declines jurisdiction, the sole

remedy for any alleged breach of this Agreement shall be to file suit in an appropriate

Michigan State Court located in Oakland County, Michigan.

## 14.    ENTIRE AGREEMENT

This Agreement contains the entire agreement between the Parties and supersedes

all prior oral or written agreements between the Parties with respect to the subject matter

of the Settled Claims.

## 15.    MODIFICATION

This Agreement may not be amended, changed or modified in any way, except by

a written instrument signed by all the parties.

C:\DELPHI\GM WARRANTY 2007\Agreement (08-14-07 Final)

GM / Delphi Warranty Agreement
August 14, 2007

### 16.    BINDING NATURE

This Agreement inures to the benefit of and binds the Parties and their respective

successors and assigns.

### 17.    AUTHORIZATION

Each party represents and warrants that (a) before executing this Agreement, it

became fully informed of the terms, contents and conditions and effect of this

Agreement; (b) no promise or representation of any kind has been made to it by the other

party or by anyone acting on the other party's behalf except as expressly stated in this

Agreement; (c) it has relied solely on its own judgment and the advice of counsel in

executing this Agreement; (d) it has contributed to the preparation and drafting of this

Agreement and that any future interpretation or construction of this Agreement is to be

made without deference or bias to either party, and (e) the undersigned representative has

been duly authorized to enter into this Agreement, and has obtained all consents,

approvals, permissions, licenses, authorizations, corporate actions, powers and other

requirements and/or pre-requisites necessary to enter into and execute this Agreement on

behalf of GM and Delphi, respectively.

### 18.    COUNTERPARTS

This Agreement may be executed in any number of counterparts and each

counterpart shall be deemed to be an original.  For purposes of executing this Agreement,

a document signed and transmitted by facsimile or email shall be treated as an original

document.  The signature of any party on any document transmitted by facsimile or email

shall be considered an original signature, and the document transmitted shall be

Page 19

GM / Delphi Warranty Agreement
August 14, 2007

considered to have the same binding legal effect as a document containing an original

signature.

19.   **NOTICE**

Any notice or other communication under this Agreement shall be in writing and

shall be sent by facsimile or overnight mail, addressed to the respective parties as

follows:

| | |
|---|---|
| Michael J. French<br>Global Purchasing - Supplier<br>Quality and Development<br>General Motors Corporation<br>GM Tech Center<br>3B10-06<br>Cadillac Headquarters<br>3009 Van Dyke<br>Warren, MI 48090<br>Telephone 586 / 575-4347<br>Facsimile<br>Email:  michael.j.french@gm.com | Lee A. Schutzman and<br>Lawrence S. Buonomo<br>Attorneys<br>GM Legal Staff<br>MC 482-026-601<br>PO Box 400<br>Detroit, MI 48265<br>Telephone 313/ 665-7338;<br>            313/ 665-7390<br>Facsimile   248/ 267-4371<br>            248/ 267-4291<br>Email:  lee.a.schutzman@gm.com<br>        lawrence.s.buonomo@gm.com |
| Keith Stipp<br>Finance Director - AHG<br>Delphi Automotive Systems, LLC<br>5725 Delphi Drive<br>Troy, MI 48098<br>Telephone 248/ 813-6031<br>Facsimile  248/ 813-2410<br>Email: keith.stipp@delphi.com | Joseph E. Papelian<br>Deputy General Counsel – Litigation<br>Delphi Legal Staff<br>5725 Delphi Drive<br>Troy, MI 48098<br>Telephone 248/ 813-2535<br>Facsimile 248/ 813-3251<br>Email:  joseph.e.papelian@delphi.com |

In the event a party to this agreement desires that notice be provided to a representative

other than the above listed representatives, it shall advise the other party in writing, by

email or by facsimile of the identity of such substitute representative and provide the

contact information.

Page 20

GM / Delphi Warranty Agreement
August 14, 2007

## 20.    WAIVER

Failure by any party to enforce any of the remedies provided to it in this

Agreement shall not be deemed a waiver of such rights.

## 21.    TITLES

Titles and headings to articles, sections or paragraphs in this Agreement are

inserted for convenience of reference only and are not intended to affect the interpretation

or construction of the Agreement.

| GENERAL MOTORS CORPORATION | DELPHI CORPORATION |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Zee A. Schutzman | David Sherbin |
| Title: Attorney | Title: General Counsel |
| Dated: August 14, 2007 | Dated: August 14, 2007 |