**Hearing Date And Time: October 3, 2007 At 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
George N. Panagakis (GP 0770)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

## DEBTORS' OMNIBUS RESPONSE TO
## DISCLOSURE STATEMENT OBJECTIONS

       Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries

and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"),

submit this omnibus response (the "Response") to the objections (each, an "Objection," and

together, the "Objections") lodged on or before October 2, 2007 by various parties objecting to the Motion For Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, And Procedures For Temporary Allowance Of Certain Claims, (III) Hearing Date To Consider Confirmation Of Plan, (IV) Procedures For Filing Objections To Plan, (V) Solicitation Procedures For Voting On Plan, (VI) Cure Claim Procedures, (VII) Procedures For Resolving Disputes Relating To Postpetition Interest, And (VIII) Reclamation Claim Procedures (the "Motion) (Docket No. 9266), which was filed by the Debtors on September 6, 2007. In support of this Response, the Debtors respectfully represent as follows:

Preliminary Statement

1.    In addition to the Motion, on September 6, 2007 the Debtors filed with the Court (a) their Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, dated September 6, 2007 (Docket No. 9263) (the "Plan"), and (b) their Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264) (the "Disclosure Statement"). The Plan and Disclosure Statement are based upon a series of global settlements and compromises that involve every major constituency in the Debtors' reorganization cases including the Debtors, their major stakeholders, the official committee of unsecured creditors (the "Creditors' Committee"), the official committee of equity security holders (the "Equity Committee," and with the Creditors' Committee, the "Statutory Committees"), the investors in the Plan (the "Plan Investors"), and General Motors Corporation ("GM").

2.    Notices regarding the filing of the Disclosure Statement were mailed to more than 665,000 creditors, shareholders, and other parties-in-interest. Notwithstanding a

2

limited number of objection deadline extensions,[1] the Debtors received relatively few objections to the Disclosure Statement, contrary to what is often the case in large, complex chapter 11 cases such as these. Seven objections to the Motion were filed by the objection deadline of September 28, 2007. The Debtors also received three undocketed objections and one response after the September 28, 2007 objection deadline.

        3.      As announced at the September 27, 2007 omnibus hearing, the Debtors intend to commence, but not conclude, the hearing on the Motion on October 3, 2007. At the conclusion of the hearing on October 3, 2007, the Debtors will request that the Court adjourn the continuation of the hearing on the Motion to 1:00 p.m. (prevailing Eastern time) on October 25, 2007. In the interim, the Debtors will continue to work with their major stakeholders, including the Statutory Committees, GM, and the Plan Investors, to resolve any remaining disclosure issues as well as potential amendments to the proposed Plan. At the October 3 hearing, however, the Debtors do intend to address the objections to the Motion that have been received to date, subject to a full reservation of rights with respect to objections that may be filed subsequently by the Potential Objectors. For the convenience of the Court and the recipients of this Response, attached hereto as Exhibit A is a chart summarizing the issues raised in the Objections, including the basis of the objection and the Debtors' response to the Objection. Exhibit A provides detailed responses to the Objections. This Response, therefore, does not repeat everything contained in Exhibit A, but instead highlights certain of the Objections.

---

[1] On August 6, 2007, the Court entered an order scheduling the hearing on the Disclosure Statement and related matters (the "Disclosure Statement Scheduling Order") (Docket No. 8898). The Disclosure Statement Scheduling Order established September 28, 2007 at 4:00 p.m. as the objection deadline. The Debtors extended the objection deadline to October 1, 2007 for two parties. The Debtors also extend the objection deadline to a date to be set by the Court at the October 3 hearing for the Statutory Committees, GM, the Plan Investors, Wilmington Trust as Indenture Trustee, an ad hoc committee of trade creditors, and a group of senior note holders consisting of DK Acquisition Co., Elliott Management Company, Sandell Management Co., Silverpoint Capital, and CR Intrinsic (the "Potential Objectors").

3

4. To be approved, a disclosure statement must provide "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125.  Most of the additional disclosures requested by the objectors are beyond the scope of the "adequate information" requirement and only relevant to the party requesting disclosure for reasons other than providing an informed judgment about the Plan.

5. Nevertheless, in accordance with customary practice and in an attempt to resolve disclosure issues on a consensual basis, the Debtors are revising certain portions of the Disclosure Statement in an attempt to address certain of the Objections and certain potential objections that have requested additional disclosure.[2]  Certain of the Objections are, however, objections to Plan provisions or confirmation of the Plan rather than to the adequacy of the disclosure with respect thereto.  As set forth below, such objections are premature and should only be heard at the confirmation hearing.

Responses To Disclosure Statement Objections

6. The legislative history is clear in granting broad discretion to bankruptcy judges under section 1125(a) of the Bankruptcy Code:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis.  Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection.  There will be a balancing of interests in each case.  In reorganization cases, there is frequently great uncertainty.  Therefore the need for flexibility is greatest.

---

[2] Blacklined pages of the Disclosure Statement and Plan marked to reflect changes made to address certain of the Objections and to reflect other updates will be separately circulated and introduced at the October 3 hearing.

H.R. Rep. No. 95-595, at 408-09 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365; see also S. Rep. No. 95-898, at 120-21 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5906-07; Kirk v. Texaco, Inc., 82 B.R. 678 (S.D.N.Y. 1988).

       7.    Developed case law confirms that the determination of whether a disclosure statement contains adequate information is within the court's discretion. See Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24, 29 (S.D.N.Y. 1995) ("'The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.'") (quoting Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988)); see also In re Worldcom, Inc., No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

    A.    **The Debtors' Filing Of The List Of Rejected Executory Contracts Seven Days Before The Voting Deadline Affords Adequate Information**

       8.    Three objectors (which are represented by the same counsel) assert that the Motion should not be approved because the Debtors have not as yet attached certain of the Exhibits called for in the Plan.[3] Under the Debtors' proposed deadlines, the list of rejected contracts must be filed seven days before the Plan voting and objection deadline.[4] The objectors, however, believe that the Plan Exhibit containing the list of rejected executory contracts and

---

[3] Among the objectors asserting that the Disclosure Statement should not be approved because the Debtors have not yet attached the list of rejected executory contracts are PBR Tennessee, Inc., PBR Knoxville LLC, PBR Columbia LLC, and PBR Australia Pty Ltd. (collectively, the "PBR Companies"). In their objection, the PBR Companies also cite to the Delaware Code to make an unrelated assertion regarding the status of a certain limited liability company to which a Debtor is a member. The PBR Companies, however, have not asked this Court to rule or make a finding on their assertion and accordingly there is no need for the Debtors to respond at this time. To be clear, however, the Debtors dispute PBR's assertion, and reserve all of their rights in law and equity relating to any such assertion made.

[4] The Solicitation Procedures Motion inadvertently states a Plan Exhibit Filing date that would have been four days before the Plan voting and objection deadline. The Plan Exhibit Filing Date in the revised solicitation timeline will be at least seven days before the Plan voting and objection deadline.

unexpired leases must be filed well before the proposed Plan Exhibit Filing Date to afford creditors entitled to vote on the Plan adequate information.

9. As this Court is aware, the Debtors' cases are among the largest and most complex cases filed in any bankruptcy court in the United States. The Debtors' schedules listed more than 300,000 contracts, and the Debtors have a fiduciary duty to maximize the value of their estates for the benefit of their stakeholders with respect to those contracts. To fulfill this duty, the Debtors need to examine and analyze their executory contracts to determine which ones are beneficial to the estates. The Debtors, along with certain of their advisors, are undertaking an analysis of the terms and cure amounts potentially due under many of the Debtors' executory contracts. As discussed in the Disclosure Statement and the Solicitation Procedures Motion, the Debtors intend to send to counterparties to their supply contracts a separate notice which will list the Debtors' estimation of the cure amount and give the supplier the option of choosing certain treatment for the cure claim.

10. The proposed Plan Exhibit Filing Date of seven days before the Plan voting and objection deadline is neither inadequate nor controversial.[5] Rather than make

---

[5] Plans of reorganization for debtors in many other large chapter 11 cases, including cases in this district, have allowed the debtors to file an exhibit evidencing their decisions regarding the assumption or rejection of executory contracts and unexpired leases after the court has approved the disclosure statement. See In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. May 17, 2007) (confirming plan of reorganization allowing debtors to file list of executory contracts and leases to be assumed or rejected at least three business days prior to voting deadline and to amend list any time prior to confirmation date); In re Delta Air Lines, Inc., Case No. 05-17923 (ASH) (Bankr. S.D.N.Y. April 25, 2007) (confirming plan of reorganization allowing debtors to file list of executory contracts and leases to be assumed or rejected ten calendar days prior to voting deadline and to amend list at least one business day prior to commencement of confirmation hearing); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. January 5, 2007) (confirming plan of reorganization allowing debtors to file list of executory contracts and leases to be assumed or rejected ten days prior to commencement of confirmation hearing and to amend list on or prior to the effective date); In re Refco, Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. December 15, 2006) (confirming plan of reorganization allowing debtors to file list of executory contracts and leases to be assumed or rejected ten days prior to voting deadline and to amend list prior to confirmation date); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 15, 2004) (confirming plan of reorganization allowing debtors to file list of executory contracts and leases to be assumed or rejected five days prior to voting deadline and to amend such list through and including effective date); and In re Singer Co., Case Nos. 99-105787 (BRL) through 99-10607

6

expedited decisions, debtors typically proceed down dual paths to do things necessary both from a legal and business operation perspective to emerge from chapter 11 reorganization. By allowing the Debtors to file a list of rejected contracts after the Disclosure Statement is filed, the Debtors will be able to make a more informed decision from both the legal and business perspective with respect to their contracts.

11.    The objectors do not provide any compelling arguments as to why such information is needed more than seven days before the plan voting deadline. The objectors have more than ample time to decide how to vote and whether their vote would change if their respective executory contracts are listed among those to be rejected. Indeed, the Bankruptcy Code explicitly recognizes this concept. Under Bankruptcy Code sections 365(d)(2) and 1123(b)(2), a debtor may decide whether to assume or reject executory contracts or unexpired leases at any time before plan confirmation. Here, the information relating to rejected contracts will be available well before confirmation. Although the Debtors have hundreds of thousands of contract counterparties, only three requested earlier notification of the list of rejected contracts. The limited number of objecting parties underscores the noncontroversial nature of this method of disclosure. The objectors have cited no case law to support their position and reading of the Bankruptcy Code. Moreover, to modify the deadline before which the Debtors must file their list of rejected contracts would wrongly allow the parochial interests of a very small proportion of counterparties to trump the best interests of all other parties-in-interest in these cases.

---

(BRL), 99-10613 (BRL), 99-10616 (BRL) through 99-10629 (BRL) and 00-10423 (BRL) (Bankr. S.D.N.Y. Aug. 24, 2000) (plan confirmed allowing debtors to file exhibits and plan schedules at least five days prior to voting deadline).

7

      B.      The Proposed Voting Procedures Do Not Disenfranchise Potential Rejection Damage Claim Holders

      12.      Certain counterparties to executory contracts and unexpired leases object that they are improperly prohibited from voting on the Plan because the Debtors' proposed voting procedures do not allow contingent claim holders (such as counterparties to contracts that have been neither assumed nor rejected) to vote without seeking temporary allowance of their claims for voting purposes under Bankruptcy Rule 3018.

      13.      Ordinarily, contract counterparties whose contracts have not yet been assumed or rejected, and who therefore hold, at best, potential future rejection claims, do not have the right to vote on a plan. Both section 365(d)(2) and 1123(b)(2) of the Bankruptcy Code contemplate that the assumption or rejection of executory contracts may occur at the time of plan confirmation. Moreover, it is fundamental that "court approval [is] a condition precedent to the effectiveness of" the assumption or rejection of an executory contract or unexpired lease under section 365(a). Thinking Mach. Corp. v. Mellon Fin. Servs. Corp. #1 (In re Thinking Mach. Corp.), 67 F.3d 1021, 1025-28 (1st Cir. 1995); see also In re B. of Dir. of Compania General de Combistibles, S.A., 269 B.R. 104, 113 (Bankr. S.D.N.Y. 2001) (debtor has until confirmation of plan, and in some cases beyond, to assume or reject executory contract).

      14.      Accordingly, a claim for rejection damages under an executory contract or unexpired lease does not arise until an order is entered approving the rejection. Therefore, a counterparty to a contract or unexpired lease that is rejected at confirmation is not a creditor who is generally allowed to vote its future rejection claim because its claim arises only as a result of confirmation of the plan. See In re Greystone III Joint Venture, 995 F.2d 1274, 1281 (5th Cir. 1991) ("A party to a lease is considered a creditor who is allowed to vote, only when the party has a claim against the estate that arises from rejection of a lease . . . ."); Boston Post Rd. Ltd.

8

P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship), 21 F.3d 477, 484 (2d Cir. 1994) (stating that counterparties to assumed unexpired leases are not entitled to vote on a plan of reorganization.").

15. Holders of potential rejection damage claims are not without remedy. Such holders can seek estimation of such claims and request temporarily allowance of such claims under Rule 3018 of the Bankruptcy Code, and the proposed procedures in the Motion provide for this.[6] See In re Dynamic Tooling Syst., Inc., 349 B.R. 847, 857 (Bankr. D. Kan. 2006) (denying disenfranchisement argument of holder of potential rejection damages claim, stating that if claimholder had been disenfranchised, it was result of claimholders' failure to move for temporary allowance of its contingent claim for voting purposes).

## Response To Plan Objections

16. Several Objections address not the adequacy of the information contained in the Disclosure Statement, but rather object to certain provisions of the Plan.[7] A disclosure statement hearing is not the time to consider the merits of the plan itself. In fact, a disclosure statement that otherwise adequately describes the plan must be approved, unless "the disclosure statement describes a plan that is so 'fatally flawed' that confirmation is 'impossible.'" In re Phoenix Petroleum Co., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001). None of the Objections to confirmation of the Plan leads to the conclusion that it is impossible to confirm the Plan as written. Accordingly, the Objections should be overruled.

17. For example, the Objection of the ACE Companies ("ACE") (Docket No. 9674) requests that the Debtors revise to the Plan provisions regarding the payment of the administrative claims of ACE for contracts that were assumed under an order entered by this

---

[6] Indeed, Bank of America, an objector to the Disclosure Statement, has filed a motion under Rule 3018 requesting temporary allowance of its claims for voting purposes.

[7] For example, the objection of the ACE Companies (Docket No. 9674) relates solely to Plan provisions and includes suggested Plan language related solely to the administrative claims of the ACE Companies.

9

Court on January 6, 2006 (Docket No. 1779).  The Debtors believe that ACE's requested revisions are unnecessary based on the previous order entered by this Court, and are not necessary for approval of the Disclosure Statement.  Likewise, the Objection of Bank of America related to proposed cure procedures (Docket No. 9677) and the undocketed objection regarding SERP treatment are both Plan objections that do not require additional disclosure and should therefore be overruled.

### Conclusion

18. For the foregoing reasons, the Debtors request that the Court (i) overrule the Objections, (ii) adjourn the continuation of the hearing on the Motion to October 25, 2007 and approve the Motion at such hearing, and (iii) grant them such other and further relief as is just.

Dated:   New York, New York
         October 2, 2007

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      George N. Panagakis (GP 0770)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

10