# EXHIBIT A

Significant Index No. 0412.06-00



TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SEP 2 8 2007

Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation and Subsidiaries
MC 483.400.626
5725 Delphi Drive
Troy, MI 48098

Re:   Delphi Hourly-Rate Employees Pension Plan (Plan No. 003) ("Hourly Plan")
      EIN: 38-3430473

      Company = Delphi Corporation

      Former Parent = General Motors Corporation

Dear Mr. Whitson:

This letter constitutes notice that for a conditional waiver of the minimum funding standard for the Hourly Plan has been granted for the plan year ending September 30, 2007.

This conditional waiver has been granted in accordance with section 412(d) of the Internal Revenue Code ("Code") and section 303 of the Employee Retirement Income Security Act of 1974 ("ERISA"). The amount for which this conditional waiver has been granted is equal to the contributions that would otherwise be required to reduce the balance in the funding standard account to zero (after the payment of at least the amount required under section 412(b)(2)(C) of the Code) as of September 30, 2007.

The Company is a U.S.-based global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology with a network of manufacturing sites, technical centers, sales offices, and joint ventures in every major region of the world. The Company supplies products to automotive original equipment manufacturers worldwide, and its customer base includes customers in the communications, computer, consumer electronics, energy, and medical devices industries.

Based on the information submitted by the Company, it is clear that it has suffered a substantial business hardship. While the Company generated net income for its 1999, 2000, and 2002 fiscal years, the Company suffered losses for its 2001, 2003, 2004, 2005, and 2006 fiscal years. The Company's financial condition particularly began to deteriorate in 2004 and the first half of 2005 as a result of downturns in its industry. Three issues have largely contributed to the Company's financial deterioration:

(1) unsustainable U.S. legacy liabilities and restrictions driven by collective-bargaining agreements, which have had the effect of creating large fixed labor costs;

(2) reduced production for the Former Parent, which is the Company's major U.S. customer; and

(3) increased commodity prices.

In October 2005, the Company filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. The Company continues to operate its business as debtor-in-possession. The Company has announced that it will cease accruals to the Hourly Plan for most participants as soon as practicable following its emergence from Chapter 11 bankruptcy protection. Participants in the Hourly Plan who are employed by the Company after the "freeze" date will continue to earn service for purposes of eligibility and vesting until termination of employment with the Company.

The Company is expected to emerge from Chapter 11 bankruptcy protection fully restructured with trimmed legacy labor costs, sufficient access to capital markets, and a business plan to diversify its customer base. Based on the Company's diversification strategy and vastly improved equity position, the Company is poised to return to profitability.

If the Company is able to successfully reorganize under Chapter 11 bankruptcy protection, its financial condition will be vastly improved and its financial hardship can be considered temporary. However, it is still uncertain whether the Company can successfully emerge from Chapter 11 bankruptcy protection. Accordingly, the waiver of the of the minimum funding standard for the Hourly Plan has been granted for the plan year ending September 30, 2007, subject to the following conditions:

(1) No later than December 31, 2007, the Company files a plan of reorganization with the bankruptcy court providing for continuation of the Plan, compliance with the conditions of this waiver and the waiver granted in a ruling letter dated May 1, 2007 (as modified by a ruling letter dated July 13, 2007), and providing for the combination of transfers under section 414(l) of the Internal Revenue Code ("Code") and cash contributions described below. The Company will not seek approval of a plan of reorganization which is inconsistent with the conditions of this waiver.

3

(2) The Company does not enter into any agreement, or amend any existing agreement, that would prevent it from satisfying its agreement under this funding waiver to make the pension contributions described in condition (4).

(3) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company effects a transfer under section 414(l) of the Code of unfunded liabilities from the Plan to an overfunded plan sponsored by the Former Parent such that the net unfunded liabilities under the Plan are reduced by at least $1.5 billion as determined on a FAS 87 basis.

(4) (i) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company (a) makes a contribution to the Plan equal to seventy-four and two-tenths percent (74.2%) of the estimated amount described in 4(ii) below based on the projections and assumptions provided by the Company in its waiver application submitted to the Service on August 3, 2007 (i.e., 74.2% of the amount described as the estimated quarterly payment due 1/15/2008 on page one of the schedule labeled IRS 7/20/2007 SCENARIO #D) (the "Scenario #D Amount"), and (b) deposits into escrow an amount equal to twenty-five and eight-tenths percent (25.8%) of such Scenario #D Amount.

(ii) No later than five (5) months after the effective date of the Company's plan of reorganization under Chapter 11, the Company calculates the amount sufficient to result in a funded current liability percentage as of the effective date of the Company's plan of reorganization under Chapter 11, when measured reflecting such contributions and the impact of the section 414(l) transfer, that is the same funded current liability percentage that would have existed as of the effective date of the Company's plan of reorganization under Chapter 11, if (a) the funding waivers had not been granted, (b) the section 414(l) transfer had not occurred, and (c) a contribution had been made on the effective date of the Company's reorganization under Chapter 11 equal to the accumulated Employee Retirement Income Security Act of 1974 ("ERISA") funding deficiency as of September 30, 2007. These calculations should exclude the $20 million contribution outlined in condition (5) of this ruling letter and the $20 million contribution outlined in conditions (6) and (7) in the ruling letter dated May 1, 2007 (as modified by the ruling letter dated July 13, 2007).

(iii) If the contribution described in 4(i)(a) above is less than the amount calculated in 4(ii) above, the Company makes an additional contribution within 15 days after making the calculation described in 4(ii) above from the escrow account described in 4(i)(b) above in an amount that is

4

    sufficient to make the funded current liability percentages described in 4(ii) above equal.

 (iv) If the amount in the escrow account in 4(i)(b) above is not sufficient to make the additional contribution described in 4(iii) above, the Company makes an additional contribution within 15 days after making the calculation described in 4(ii) above that is sufficient to make the funded current liability percentages described 4(ii) above equal. Any amount remaining in the escrow account after condition 4 is met will be returned to the Company within 15 days after condition 4 is met.

 (v) If a credit balance is created as a result of the contributions described in 4(i), (iii) or (iv) above, the Company elects to reduce to zero (0) such remaining credit balance as exists in the Plan as of October 1, 2008, prior to determining the value of plan assets and crediting them against the minimum required contribution for the plan year ending September 30, 2009, in accordance with the Pension Protection Act of 2006 ("PPA"). If the contribution described in 4(i)(a) is greater than the amount calculated in 4(ii), the Company will be allowed to keep a credit balance equal to the amount of such excess, and this credit balance will be available to offset contributions for plan years beginning October 1, 2008, and later.

(5) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company makes a contribution to the Plan in the amount of $20 million (in addition to the contributions outlined in condition (4) above). This $20 million additional contribution is in addition to the $20 million additional contribution outlined in conditions (6) and (7) of the ruling letter dated May 1, 2007 (as modified by the ruling letter dated July 13, 2007) granting a waiver of the minimum funding standard for the Plan for the plan year ending September 30, 2006. The Company will elect to reduce to zero (0) the credit balance created by this condition as of October 1, 2008, prior to determining the value of plan assets and crediting against the minimum required contribution for the plan year ending September 30, 2009, in accordance with PPA.

(6) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company reimburses the Pension Benefit Guaranty Corporation ("PBGC") in an amount not to exceed $2 million for outside consulting fees incurred in the review of this funding waiver and of the waivers granted on May 1, 2007 (as modified by the ruling letter dated July 13, 2007).

(7) The effective date of the Company's plan of reorganization is no later than February 29, 2008.

05-44481-rdd    Doc 10483-1    Filed 10/05/07    Entered 10/05/07 20:16:41    Exhibit A
Pg 6 of 7

5

(8) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company makes a contribution to the Plan in an amount sufficient to meet the minimum funding standard for the Plan for the plan year ending September 30, 2007. This contribution is equal to the amount necessary under section 412(b)(2)(C) of the Code to amortize the waived funding deficiency for the plan year ending September 30, 2006, in the Plan's funding standard account for the plan year ending September 30, 2007, and is in addition to any contribution made under conditions (4) and (5) above.

(9) Should the waiver become null and void, the Company agrees not to assert that the waiver had any impact on the filing date or amount of any PBGC statutory lien that existed as of the date the waiver was granted.

Your authorized representative agreed to these conditions in a letter dated September 27, 2007. If any one of the conditions is not met, the waiver for the plan year ending September 30, 2007, is retroactively null and void.

Your attention is called to section 412(f) of the Code and section 304(b) of ERISA which describe the consequences that would result in the event the Hourly Plan is amended to increase benefits, change the rate in the accrual of benefits or to change the rate of vesting, while any portion of the waived funding deficiency remains unamortized. Please note that any amendment to a profit sharing plan or any other retirement plans (covering employees covered by the Hourly Plan) maintained by the Company, to increase the liabilities of those plans would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA. Similarly, the establishment of a new profit sharing plan or any other retirement plan by the Company (covering employees covered by the Hourly Plan) would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA.

This ruling is directed only to the taxpayer that requested it. Section 6110(k)(3) of the Code provides that it may not be used or cited by others as precedent.

When filing Form 5500 for the plan year ending September 30, 2007, the date of this letter should be entered on Schedule B (Actuarial Information). For this reason, we suggest that you furnish a copy of this letter to the enrolled actuary who is responsible for the completion of the Schedule B.

We have sent a copy of this letter to the Manager, EP Classification in Baltimore, Maryland, to the Manager, EP Compliance Unit in Chicago, Illinois, and to your authorized representative pursuant to a power of attorney on file in this office.

6

If you require further assistance in this matter, please contact Mr. Heil (ID# 50-03208) at (410) 962-9480.

Sincerely yours,

Joseph H. Grant, Director
Employee Plans

cc:    Mr. William L. Sollee, Jr., Esq.