# Exhibit D



Automotive Systems

## LONG TERM CONTRACT

1. **Purchase of Product**

   Siemens ("Seller") agrees to sell, and **Delphi Automotive Systems LLC acting through its E/C Division** ("Buyer") agrees to purchase, approximately **100 percent (100%)** of Buyer's production and service requirements for the following products (each referred to as a "Product" and collectively referred to as the "Products"):

   | Part Number | Description | Per Unit Price (without coils) | Annual Daily Tool Capacity |
   |---|---|---|---|
   | TBD | ABS (8-valve) | U.S.$27.00* | 1,217,660 total |
   | TBD | ABS/VES (8-valve) | U.S.$29.00* | Included above |
   | TBD | ABS (12-valve) | U.S.$31.00* | Included above |
   | TBD | ABS/VES (12-valve) | U.S.$33.00* | Included above |
   | TBD | Bi-State RTD (Appendix A) | U.S.$36.00 | 111,625 |
   | TBD | MagneRide (Appendix B) | U.S.$38.00 | 43,000 |

   * Actual contract price will be increased by U.S.$5.05 for 8-valve part numbers and U.S.$7.45 for 12-valve part numbers for the addition of coils

2. **Term**

   With respect to each Product, the term of this Contract is from 8/1/03 through 7/31/08.

3. **Prices**

   The per unit price of each Product for 2004-2008 model years is **FCA TTOP Guadalajara, Mexico**. Pricing (without coils) for each subsequent model year date is subject to the following minimum annual percentage reductions from the prior model year date's pricing:

   |  |  |
   |---|---|
   | 8/1/04 | four percent ( 4%) |
   | 8/1/05 | four percent ( 4%) |
   | 8/1/06 | four percent ( 4%) |
   | 8/1/07 | four percent ( 4%) |

# DELPHI
Automotive Systems

Pricing changes due to coil price changes will be passed through on a one-for-one basis.

Buyer and Seller will use their best efforts to implement cost savings and productivity improvements in order to reduce Seller's costs of supplying each Product. Buyer and Seller agree that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to fifty percent (50%) of any net cost savings achieved by Seller with respect to such Product (i.e., savings after recovery by Seller of a pro rata portion, based on the remaining term of this Contract, of the reasonable and documented costs to achieve such cost savings), provided, however, that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any savings resulting from reduction on the content of the such Product.

No price increases (including any decrease of the scheduled price reductions) will be made on account of (i) Seller's failure to achieve any expected cost savings or productivity improvements or (ii) any increases in Seller's labor, materials, overhead and other costs. In the event that Buyer agrees to any price increases (or a decrease of any scheduled price reductions) with respect to any Product, then, notwithstanding anything to the contrary set forth in this Contract, the pricing of each Products will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any subsequent net cost savings achieved by Seller with respect to such Product until aggregate price reductions on account of Seller's cost savings equal any price increases previously agreed to by Buyer.

4. **Right to Purchase from Others**

During the entire term of this Contract, Seller will assure that each Product remains competitive in terms of technology, design, service and quality with any similar product available to Buyer. Following 2004 model year Seller will also assure that each Product remains competitive in terms of price with any similar product available to Buyer. If, in the reasonable opinion of Buyer, a Product does not remain competitive, Buyer, to the extent it is free to do so, will advise Seller in writing of the area(s) in which a similar product is more competitive. If, within ninety (90) days, Seller does not agree to immediately sell any Product with comparable technology, design, quality, or, if applicable, price, Buyer may elect to purchase any similar products available to Buyer without any liability to Seller under this Contract.



Automotive Systems

5. **Purchase Orders**

All Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders (including related delivery releases and shipping instructions) issued by Buyer from time to time during the term of this Contract. Buyer's General Terms and Conditions, a copy of which is

attached, are hereby incorporated into this Contract by reference, provided, however, that Buyer's right to "terminate for convenience" under the General Terms and Conditions will be inapplicable to this Contract until the end 2004 model year. Any amendment to, or revision of, such General Terms and Conditions shall also become a part of this Contract, provided that (i) Buyer provides Seller with a copy of such revised Terms and Conditions and (ii) Seller does not object to such revised Terms and Conditions in writing within thirty (30) days after receipt. The Terms and Conditions (together with any revision made a part of this Contract) shall be construed, to the extent possible, as consistent with the terms and conditions set forth in this Contract and as cumulative, provided, however, that if such construction is unreasonable, the terms and conditions set forth in this Contract shall control.

6. **Field Warranty**

All warranty provisions set forth in Buyer's General Terms and Conditions apply to this contract. In addition, Seller agrees to participate in the following program with respect to common cause field warranty.

6.1 The cumulative Incidents Per Thousand Vehicles (IPTV) goals below are set individually for ABS and for Controlled Suspension for the respective periods after the date of manufacture. Goals are as follows:

| Period | ABS | Controlled Suspension |
|---|---|---|
| 360 days | 0.1 | 0.1 |
| 720 days | 0.2 | 0.2 |
| 1,008 days | 0.3 | 0.3 |

Any changes to the IPTV goals stated above will not be binding unless agreed to in writing by Buyer and Seller.

6.2 Seller is responsible to mark each unit with a "manufactured on" date code.

# DELPHI
Automotive Systems

6.3 Buyer will not hold Seller responsible for field warranty claims below or at the applicable IPTV goals. Any field warranty claims in excess of the applicable IPTV goals will be the sole responsibility of Seller, and Seller will be responsible for all costs arising out of such field warranty claims, including, without limitation, costs of labor, replacement parts, shipping, dealer markup, service part markup, administration and service notices/bulletins.

6.4 IPTV levels may be established by the vehicle level customer use any reasonable methodology, including, without limitation, analysis of returns in certain regions or markets which will be considered population representative in order to project actual field warranty IPTV levels.

6.5 Buyer will allow Seller to analyze 100% of all returns that are made available to Buyer by the vehicle manufacturer. Buyer will either share received returns or forward returns directly from the vehicle manufacturer to Seller.

EXECUTED by Buyer and Seller as of 6/16/00.

Buyer:

**Delphi Automotive Systems LLC
acting through its E/C Division**

By: _[signature]_ 10/31/00
Name: BRIAN R. THOMPSON
Title: SENIOR BUYER

_Brigette Cotter_ 10/31/00
Brigette Cotter
Senior Buyer - Brakes

Seller:

Siemens

By: _[signature]_
Name: _____
Title: VP Sales