```
 1

 2     UNITED STATES BANKRUPTCY COURT

 3     SOUTHERN DISTRICT OF NEW YORK

 4     Case No. 05-44481

 5     - - - - - - - - - - - - - - - - - - - - -x

 6     In the Matter of:

 7

 8     DELPHI CORPORATION,

 9

10             Debtor.

11

12     - - - - - - - - - - - - - - - - - - - -x

13

14                     United States Bankruptcy Court

15                     One Bowling Green

16                     New York, New York

17

18                     September 6, 2007

19                     10:03 AM

20

21     B E F O R E:

22     HON. ROBERT D. DRAIN

23     U.S. BANKRUPTCY JUDGE

24

25
```

1     HEARING - Settlement Agreement

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Christine F. Clayton, PLS, CERT-299

```
 1   A P P E A R A N C E S :

 2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

 3           Attorneys for Debtor

 4           333 West Wacker Drive

 5           Chicago, IL 60606

 6   BY:   JOHN K. LYONS, ESQ.

 7           ALBERT L. HOGAN III, ESQ.

 8           THOMAS J. MATZ, ESQ.

 9

10   MASTROMARCO FIRM

11           Attorneys for Claimant HE Services and Backe

12           1024 North Michigan Avenue

13           P.O. Box 3197

14           Saginaw, Michigan  48605

15   BY:   VICTOR MASTROMARCO, ESQ.

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Please be seated.  Okay.  Delphi

 3    Corporation.

 4            MR. LYONS:  Good morning, Your Honor.  John Lyons on

 5    behalf of the Debtors Delphi Corporation and its affiliates.

 6    This is the 11th claims hearing, Your Honor, that we've had so

 7    far on these cases, and before I turn the podium over to -- to

 8    my partner, Mr. Hogan, I'd like to go through some of the

 9    stipulations that we are going to hand up after the hearing and

10    also discuss some other claims matters with Your Honor.

11            THE COURT:  Okay.  So you're just going to follow the

12    agenda?

13            MR. LYONS:  I'm going to follow the agenda, Your

14    Honor, until we get to the end, and then I'm going to talk

15    about -- before we get to HE Services two other matters.

16            THE COURT:  Okay.

17            MR. LYONS:  First, Your Honor, and I'll move rather

18    quickly since the stipulations are fairly noncontroversial.

19            The first item on the agenda is the claim relating to

20    Buffalo Check Cashing.  They asserted a non -- a priority claim

21    for $984.  The party agreed to settle it as a nonpriority claim

22    in the same amount.

23            THE COURT:  Okay.

24            MR. LYONS:  Item number two on the agenda is a claim

25    originally held by Sanders Lead later sold to Golden Sacks.
```

1    Sanders Lead asserted a reclamation demand in the amount of

2    $78,000 and change.  Subsequently, we agreed at a $79,000

3    figure.  They also asserted an unsecured nonpriority claim in

4    the amount of $584,000 against DAS LLC.  The parties have

5    agreed to settle the claim against DAS LLC for a total amount

6    of $574,000, and Goldman is going to reserve the right to

7    assert 80,000 of that amount as a reclamation claim.

8          THE COURT:  Okay.

9          MR. LYONS:  Those are -- but the amount will be

10   settled at 574.

11         Agenda item number three relates to the claims of

12   Timken US and its various affiliates.  We reached an agreement

13   with the three Timken entities that are subject of the proofs

14   of claim.

15         The first proof of claim, 16499, was filed by Timken

16   Company asserting an unsecured nonpriority claim in the amount

17   of $2,700,000 and change and an unsecured priority claim in the

18   amount of 1.8 million and changes, and a secured amount in the

19   amount of $732,000 and change against Delphi.

20         The claim number 16499 was duplicative of a proof of

21   claim number 14319, which was filed by U.S. Timken against

22   Delphi asserting approximately $2.8 million.

23         The parties have agreed to expunge 16499, but that

24   the remaining claim, 14319, should be deemed -- should be

25   deemed allowed or should be deemed to assert the amounts and

1    classifications asserted in proof of claim 16499.

2            Timken Company would be recognized as the holder of

3    14319, and U.S. Timken has no right or interest in 14319.  so

4    it's really getting rid of a duplicate claim and changing the

5    holder of the claim.

6            THE COURT:  Okay.

7            MR. LYONS:  And we have a stipulation to that effect

8    for Your Honor.

9            Item number four is the claim of Flow Form Limited.

10   Here the claimant asserted a secured claim in the amount of

11   pound sterling 225,000 and change.  Pursuant to the letter

12   agreement -- and that relates to proof of claim 14244 --

13   pursuant to a letter of agreement the parties reached on

14   February 13th, that claim will be disallowed and expunged in

15   its entirety.

16           There was a prepetition wire transfer that was, in

17   essence, an overpayment to this -- to Flow Form and the debtors

18   have agreed to apply 199 pounds sterling of the wire transfer

19   to satisfy all pre- and post-petition claims of Flow Form, and

20   Flow Form has agreed to repay the debtors 211,000 pounds

21   sterling.  So we have a stipulation for Your Honor to review on

22   that.

23           There is no release in that -- in that document, but

24   it's just more of a -- we overpaid them prepetition and we're

25   going to apply it to -- to get rid of both pre- and post-

1    liability.

2            THE COURT:  Okay.

3            MR. LYONS:  Agenda item number five relates to the

4    claim of Schulte & Company, GMHB.  Here Schulte asserted a

5    claim -- a nonpriority unsecured claim in the amount of 189,000

6    euros against Delphi.  The parties have agreed to settle that

7    claim and allow $147,000, basically the currency exchange rate,

8    against DAS LLC, so we have a stipulation to that effect.

9            Agenda item number six, Free Skill Semiconductor,

10   Inc., the claim -- claimant here initially asserted an

11   unsecured nonpriority claim of 6.5 million against DAS LLC.

12   The parties have agreed to settle this claim for the following

13   method.  The Debtors will allow a general unsecured claim in

14   the amount of $6.4 million and change against DAS LLC and then

15   another general unsecured claim of $145,000 in the estate of

16   Delphi Mechatronic Systems, LLC.  This agreement actually

17   relates to a contract assumption agreement that we had worked

18   out with them.  They were actually owed a lot more prepetition,

19   but this is the remaining residual payment owed to Freescale

20   under that agreement.

21           THE COURT:  Okay.

22           MR. LYONS:  And we have a stipulation to that effect.

23           Item number seven on the agenda is the claim of SFS

24   Intec, Inc., and it relates to proof of claim number 1216.  The

25   Claimant, originally a unsecured nonpriority claim of $48,000

```
1    and change against Delphi Corporation.  The parties have agreed

2    to settle it for $41,000 against DAS LLC.

3              THE COURT:  All right.

4              MR. LYONS:  Agenda item number eight, a claim filed

5    by Marketing Innovators International, Inc., and Liquidity

6    Solutions, its assignee, relates to proof of claim number 4387.

7    Claimant initially asserted an unsecured nonparty claim for

8    $15,000 and change, and the parties have agreed to settle and

9    allow that claim in that same amount.

10              THE COURT:  Okay.

11              MR. LYONS:  Agenda item number nine is a claim filed

12    by NEC Electronics, later sold to JP Morgan Chase, relating to

13    proof of claim numbers 12394 and 16368.  The original claim,

14    12394, in the amount of 9.7 million and change was asserted as

15    an unsecured nonpriority claim against DAS LLC.

16              Claimant also asserted proof of claim number 16368 in

17    the amount of $9.9 million and change against Delphi Corp.  The

18    parties have agreed to settle the claims allowing claim 16368,

19    again, the $9.9 million claim against Delphi, in the amount of

20    $9.5 million and change against DAS LLC and disallowing and

21    expunging 12394 in its entirety.

22              The Claimant has reserved the right to seek priority

23    status for 3.4 million of the claim as -- on the basis it is a

24    valid reclamation claim.

25              THE COURT:  When you have an agreement, as with this
```

1      one and one of the earlier ones, that they're reserving their

2      right to seek a reclamation claim, is there a deadline for

3      that?  I forget.  Are there reclamation procedures?  Is

4      there --

5              MR. LYONS:  Actually, it's one of the items I was

6      going to discuss at the end of the agenda, Your Honor, but --

7              THE COURT:  Okay.

8              MR. LYONS:  -- under the procedures, there is a --

9      there's a point in time where we need to come back to Your

10     Honor to have a determination as to the validity of the

11     reclamation claim.  The Debtors have reserved a number of

12     global defenses, and one of the global defense is the existence

13     of the prepetition lender's lien on all the inventory and

14     collateral, we believe, is a complete defense.  And what we

15     were going to propose to do is to -- is to actually file a

16     request that it change to the reclamation procedures order.  In

17     connection with the plan, we were going to offer them the

18     ability to just take the plan consideration on a -- you know,

19     as a general unsecured claim, and waive the reclamation

20     priority portion.

21             If they do want to contest it, then we would have --

22     we would come back next year and -- and ask Your Honor to take

23     a look at the global defense.

24             THE COURT:  Okay.  So you're going to give people the

25     chance to look at the plan, look at their treatment under the

1    plan were they just to have an unsecured claim --

2              MR. LYONS:  Yes.

3              THE COURT:  -- and then -- and then give them fair

4    notice as to an election, basically, as to whether they want to

5    choose -- not an election pursuant to a planned procedure, but

6    just a choice as to whether they want find out reclamation or

7    not.

8              MR. LYONS:  Right, because --

9              THE COURT:  Okay.

10             MR. LYONS:  -- if they waive their -- their -- you

11   know, their -- their -- you know, priority -- administrative

12   priority portion of the claim, then we can allow it, they can

13   get paid for --

14             THE COURT:  Right.

15             MR. LYONS:  -- plan consideration right away --

16             THE COURT:  So the reclamation procedures order

17   currently doesn't set a specific deadline, it just -- it just

18   contemplates a further step in the process where the -- the

19   Debtor will -- will flag these issues?

20             MR. LYONS:  Yes.

21             THE COURT:  Okay.

22             MR. LYONS:  Yes.  So all these reservations of rights

23   are subject to all of our global defenses.

24             THE COURT:  Okay.

25             MR. LYONS:  Agenda item number ten, the U.S. Customs

1    and Border Protection claim in the amount of 16202.  This is an

2    liquidated claim filed against Delphi Diesel Systems

3    Corporation.  The parties have agreed to disallow and expunge

4    this claim in its entirety.

5         Agent item number 11 is the claim of New York State

6    Department of Taxation and Finance.  This involves two claim

7    numbers; 9710 and 9711.  9710 asserts an unsecured priority

8    claim of $4,300 and change and an unsecured nonparty claim of

9    $750.  9711 asserts an unsecured priority claim of $2,600 and

10   change, and nonpriority claim of $250.  The parties have agreed

11   that both claims will be disallowed and expunged in their

12   entirety.

13        THE COURT:  Okay.

14        MR. LYONS:  Agenda item number 12, this is a -- three

15   proofs of claim filed by Bank of America who is -- who is the

16   aircraft leasor to the Debtors.  These claims are all in the

17   amount of $38 million and change, so there are three claims for

18   $38 million a piece.

19        Claim number 11470 was filed against DAS LLC.  Claim

20   11457 was filed against Delphi Automotive Systems -- Delphi

21   Automotive Systems Human Resources, LLC, and claim 11317 was

22   filed against Delphi Corporation.

23        We believe these are protective in nature.  We did

24   file a notice of sufficiency hearing with respect to these

25   claims.  Since that time, we were able to negotiate with Bank

1    of America, and they've agreed to withdraw the claims with

2    prejudice.  However, in the event that we reject the aircraft

3    leases, they'll be automatically reinstated.

4            THE COURT:  Okay.

5            MR. LYONS:  So that cleans up quite a bit of --

6    amount of claims.

7            Agenda item number 13, a claim filed by American

8    Casualty Company.  American Casualty issued certain surety

9    bonds for Customs' duties.  The Claimant asserted a claim of

10    $44,080,000 as a priority contingent claim.  Again, we believe

11    this was protective.  We since negotiated with American

12    Casualty and they have agreed to have that proof of claim,

13    2534, deemed withdrawn without prejudice; however, if Customs

14    should call upon the bond, American Casualty will retain the

15    right to file for an assignment of any proof of claim filed by

16    Customs.  We don't think there's any exposure to Customs, Your

17    Honor, but nonetheless, they wanted to protect their rights, so

18    the claim will be withdrawn.

19            THE COURT:  All right.

20            MR. LYONS:  Agenda item number 14, the claim of

21    Grigolet Company.  The Claimant filed the claim in the amount

22    of $259,000 and change against DAS LLC.  The parties have

23    agreed to settle that claim in the amount of $250,000, a

24    reduction of 9,000 against DAS LLC.

25            Agenda item number 15 is the claim of Tyco

1    Electronics.  Again, Tyco also entered into a contract

2    assumption agreement so this deals with the residual claim.  It

3    relates to proof of claim number 10707.  The original claim was

4    in the amount of $12 million.  Since the -- in August the

5    parties entered into stipulation that capped Tyco's claim at

6    $4.3 million.  We have agreed to a further settlement cap with

7    Tyco in the amount of 2.9 million and change, and that

8    stipulation we would hand up to Your Honor at the end of the

9    hearing.

10            THE COURT:  All right.

11            MR. LYONS:  With that, Your Honor, I will turn over

12   the -- the podium to my partner, Al Hogan, who gets all the

13   easy claims.  That's it -- oh, oh, wait.  Hold on one second,

14   Al.

15            Actually, the items I wanted to talk to you about at

16   the end of the agenda; we spoke about the reclamation

17   procedures.  We also are intending on filing an estimation

18   motion with Your Honor to estimate contingent unliquidated

19   claims --

20            THE COURT:  For -- for voting or allowance?  Or --

21            MR. LYONS:  For -- to set distribution reserves under

22   the plan and for distribution and voting.

23            Again, we have a certain number of unliquidated

24   contingent claims that, you know, we believe require more of a

25   summary estimation procedure than the claims procedures, you

1   know, the more thorough due process claims procedures that we

2   have, you know, already had Your Honor approve.  So it would --

3   it would basically envision a more summary proceeding where the

4   parties would put in brief with two declarations.  You could --

5   both parties could submit surresponses, but there wouldn't be

6   any discovery and it'd be more of a summary --

7            THE COURT:  Will this motion include claims that are

8   already in the claim objection and allowance procedure track?

9            MR. LYONS:  They may.

10           THE COURT:  They may?

11           MR. LYONS:  They may in certain instances.

12  Although -- yes, they may.

13           THE COURT:  Okay.

14           MR. LYONS:  That's -- that's they -- they would.  So

15  again, that would be coming down.  Probably, we anticipate

16  filing it tomorrow for hearing at the next omnibus hearing in

17  September.

18           Also, we have a number of responses to an objection

19  on late claims.  We filed an omnibus objection with respect to

20  claims that were not filed by the bar date.  There are quite a

21  few and we were going to deal with them.  They're really not

22  susceptible to dealing with in the claims procedures because it

23  really just depends on what the -- you know, if there's

24  excusable neglect or not and what the prejudice is.  So what we

25  would envision is, you know, we would put in a brief and we

```
1    would almost treat it like an omnibus claims matter where we

2    would put in a brief, trying to set -- you know, segregate the

3    claims in various buckets that have common issues, and then --

4    and then have those heard at the claims hearing on

5    September 28th.  We would envision getting a brief well in

6    advance of the hearing so Your Honor would have a chance to

7    look at it.  And the other parties, we'd give them an

8    opportunity to file a response, if they would like.  But it

9    really would not be dealt with under the claims objection

10   procedures since it really is just the limited issue of whether

11   or not excusable neglect has been satisfied.  It doesn't go to

12   the merits of the claims itself.  So we wanted -- you know, so

13   we wanted to do that for the September 28th claims hearing and

14   that more truncated kind of briefing schedule for those

15   matters.

16            THE COURT:  Okay.  I don't know what else you have on

17   -- on the 28th that you expect will be contested, but I'm --

18   I'm meeting in Brazil with a group of Brazilian judges and

19   flying back on the 26ht of September --

20            MR. LYONS:  Okay.

21            THE COURT:  -- which is like a 12-hour flight, so I

22   won't have a whole lot of time to prepare.  I'll have the 27th,

23   I guess, but there are hearings on the 27th, also.

24            MR. LYONS:  I --

25            THE COURT:  So it's just a -- you know, if -- if it's
```

1    just those two things, the estimation hearing and the hearing

2    on late claims, that shouldn't be a problem, but if there --

3    there are other things in addition that you're contemplating

4    will be disputed on the 28th, you may want to confer with

5    people, because I may not get to everything.

6              MR. LYONS:  The estimation motion would be returnable

7    on the 27th, actually, at the omnibus hearing and --

8              THE COURT:  Okay.

9              MR. LYONS:  -- similar to the claims procedures, we

10   wouldn't -- unless we'd consensually resolved the estimated

11   amount, it would be automatically adjourned for further --

12             THE COURT:  Well the esti --

13             MR. LYONS:  -- notice, so there shouldn't be -- I

14   wouldn't think, any major con --

15             THE COURT:  Well, the estimation hearing is on -- on

16   procedures, rights?  It's not going to be --

17             MR. LYONS:  Yes.

18             THE COURT:  -- on the claims themselves.

19             MR. LYONS:  And people who don't respond to our

20   estimates because we're offering them to give us a compromise

21   number --

22             THE COURT:  Oh, so you're going to do both?

23             MR. LYONS:  So we would do both, but there wouldn't

24   be any -- any contested estimation --

25             THE COURT:  All right.  That's fine.

1              MR. LYONS:   -- matter.  So it'd really be late claims

2      and it would be the day after the omnibus hearing.

3              THE COURT:  Okay.  That's fine.

4              MR. LYONS:  Your Honor, that's all I have.  Thank

5      you.

6              THE COURT:  Okay.

7              MR. HOGAN:  Good morning, Judge.  Al Hogan of

8      Skadden, Arps, Slate, Meagher & Flom, LLP, for the Debtors.

9      I'm here this morning with my colleagues, Chris Connors and Amy

10     Van Gelder with respect to the contested claim matter for

11     claims number 837 of HE Services Company and 838 of Mr. Robert

12     Backe, individually, conducted pursuant to this Court's claims

13     objections and procedures order.

14             Also, in court today, he did make an appearance, but

15     I do want to introduce him, is Delphi in-house litigation

16     counsel, Mr. Jim Darrien (ph) is here with us today as well,

17     and we have our three declarants who will -- we'll get to a

18     little bit later in the -- in the morning, I suspect.

19             Judge, I know the parties have submitted extensive

20     briefing in this matter.  Typically, we don't conduct opening

21     statements.  Unless Your Honor has any questions, I'll save all

22     comments, as brief as they maybe, at the end for the end.  If

23     you have no questions, I would see if you -- willing to

24     entertain any opening remarks from Mr. Mastromarco.  Other than

25     that, I'd suggest we proceed to the evidence.

```
 1              THE COURT:  Okay.  No, I've read the parties'

 2   supplemental responses or amended supplemental responses, so my

 3   preference would be right -- to move right to the evidence.

 4              MR. MASTROMARCO:  Your Honor, Victor Mastromarco on

 5   behalf of HE Services and Mr. Backe.

 6              I don't -- I'm -- I don't pretend to be, you know, an

 7   expert in New York bankruptcy procedure, but in my experience

 8   in federal cases that I deal a lot with with the U.S. District

 9   Court judges, for a hearing like this -- and the parties have

10   attempted to resolve their differences before today.  I -- I

11   would suggest to the Court that possibly, with your help, and I

12   don't know that you do that, all right, we might be able to

13   bridge the gap here and get this thing resolved so we don't

14   have to go forward and waste the Court's time this afternoon.

15              THE COURT:  Well, is that a -- have you discussed

16   this with -- with Delphi?

17              MR. MASTROMARCO:  Yes.  I discussed it with them.  I

18   haven't -- I talked to Mr. Hogan last night.  I asked him -- I

19   told him that I thought that possibly your involvement may be

20   helpful.  He did not agree to that at this point, but he hasn't

21   said no either.

22              MR. HOGAN:  Judge -- Judge, I think at this point,

23   your involvement as a mediator while on -- I'm sure it'd be

24   appreciated, I don't think that's an appropriate path for us to

25   go down at this point in time.  I think the parties, as I think
```

1    the Court can tell by the evidentiary submissions, it's been a

2    lot of time preparing this hearing, a lot of depositions.  The

3    briefs are extensive.  I think this comes down to whether or

4    not there is a potential bargaining range.

5            As the Court is aware, we've laid out, in our papers,

6    the fact that we believe in allowed claim, and some amount is

7    warranted here based on the investigation of the invoices, and

8    I just don't think the parties are going to be able to get

9    there, and that's unfortunate, but I'm not sure that -- I'm not

10   sure that we can do much more about that right now.

11           THE COURT:  Well, I -- I have at times engaged in

12   settlement conferences with parties.  Although, I'm always

13   somewhat uncomfortable doing that when it's on the eve of a

14   trial that I'm going to be deciding.

15           If there is a particular point or a particular one or

16   two points that the parties believe my preliminary views about

17   might lead them to make a decision one way or another on

18   settling, I believe I could be useful on that.

19           As in California and other states around the country,

20   I -- I sometimes give preliminary rulings.  I was not going to

21   do that here because there are a number of issues involved, but

22   if -- if there's a sticking point on a particular issue or one

23   or two issues, I'm -- I'm happy to give you both a preliminary

24   rule -- ruling on that, which is not binding and which you can

25   persuade me -- that's -- it's otherwise over, but I think at

1    this point, given all the -- you know, the work that the

2    parties have done already, it's only something focused like

3    that that I think is probably worth doing.  Maybe that's what

4    you had in mind anyway is something particularly focused from

5    my point of view.  But, you know, it strikes me that the law

6    here -- the underlying law is something that the parties

7    generally agree on.  It's just how that's applied to the facts,

8    so I'm not sure that there would be such an issue, but you

9    know, I leave it up to each of you.  And if you want to spend

10   five or so minutes discussing that, you can feel free to -- so

11   I'll come back in about 20 of.

12            MR. MASTROMARCO:   Okay, Judge.  Thank you.

13            THE COURT:   I mean I -- I saw you nodding to each

14   other.  If you really don't think that's productive, then I --

15   then I won't -- I won't do it.

16            MR. MASTROMARCO:   We'll -- we'll -- if the Court's

17   willing to recess for a few minutes, I'll confer with Mr. Lyons

18   and with Delphi and we'll see if that's --

19            THE COURT:   Okay.

20            MR. MASTROMARCO:    -- something we think will be

21   productive.

22            (Off record)

23            THE COURT:   Okay.  We're back on the record in the

24   Delphi HE Services matter.

25            MR. LYONS:   Your Honor, John Lyons again for Delphi.

1          Well, during the short recess, Your Honor, we were

2    able to reach settlement with HE Services and Backe, the terms

3    of which I'll read into the record, but we would beg Your

4    Court's indulgence to -- to actually get an order out, if we

5    could, today.  It's very simple and straight forward.

6          THE COURT:  Okay.

7          MR. LYONS:  And we're happy to sit and look at any

8    drafts of it, but rather than going back to midtown, it would

9    be a lot more efficient if we could just get it out right now.

10          THE COURT:  All right.

11          MR. LYONS:  But basically, Your Honor, the Debtors

12    would -- would give an allowed claim in the amount of $300,000

13    to HE Services or -- or other entity or person designated by

14    counsel for HE Services on or before October 31st, 2007.

15          So the claims register would be clear.  It's a

16    $300,000 claim in favor of HE Services but if they gave us a

17    change of beneficiary or whatever it would be by October 31st,

18    we would honor that.

19          THE COURT:  Okay.

20          MR. LYONS:  And I believe Mr. Mastromarco wants to

21    add something as well.

22          THE COURT:  All right.

23          MR. MASTROMARCO:  Yes, thank you, Your Honor.

24          I would indicate that, as I've discussed with the

25    attorneys, that because this is an unusual situation as to the

1   way this is going, I have a -- an attorney fee lien, all right,

2   that's involved here on the amount, and I just want that to be

3   acknowledged on the record.  I know that Mr. Backe knows that

4   that exists; is that correct, Mr. Backe, if I may ask?

5          MR. BACKE:  That's correct.

6          THE COURT:  Okay.

7          MR. MASTROMARCO:  All right.  And thank you very much

8   for your time.

9          THE COURT:  All right.  And so in all other respect,

10  then the claim would be disallowed?

11         MR. LYONS:  Yeah, the Backe claim would be expunged,

12  and the HE Services would be given an allowed claim of $300,000

13  and the other, you know, the possible ability to change the --

14         THE COURT:  The payee --

15         MR. MASTROMARCO:  Let me -- let me correct, that, all

16  right?  We're not -- what we're going to do is we're going to

17  have to designate, you know, what claim is going to be allowed,

18  all right?  We haven't agreed as to whether --

19         THE COURT:  Whether it's Mr. Backe's claim or -- or

20  HE Services?

21         MR. MASTROMARCO:  Right.

22         THE COURT:  That goes to the payee --

23         MR. LYONS:  Yeah --

24         THE COURT:  -- I believe.

25         MR. LYONS:  -- I mean, Your Honor, I think that the

1    HE -- we need to have one claim.  We can't have two hanging out

2    there, so --

3              MR. MASTROMARCO:  Well, I mean --

4              MR. LYONS:  -- you can change -- you can change the

5    bene -- you can change it to Backe, if you like, by

6    October 31st --

7              THE COURT:  As far as the --

8              MR. LYONS:  We need --

9              THE COURT:  -- allowed claim is concerned --

10             MR. LYONS:  We need to have one allowed claim.

11             THE COURT:  Yeah.

12             MR. LYONS:  Not -- we can't have two hanging out

13    there.  We need to have one.

14             MR. MASTROMARCO:  Well, I -- the reason -- I have my

15    reasons for -- because I represent both, all right, and -- and

16    I -- I'm agreeing to settle both for this amount.  I want to be

17    able to designate later.  I don't want to have to dismiss the

18    HE Services claim because I may end up --

19             THE COURT:  All right.

20             MR. MASTROMARCO:  -- with --

21             THE COURT:  It seems to me you can allow the two

22    claims in -- for an aggregate amount of $300,000.

23             MR. LYONS:  150,000 each?

24             MR. MASTROMARCO:  No.

25             THE COURT:  Well, no, just -- just an aggregate

1    amount that -- that the amount -- the allowed amount of the two

2    claims together would not exceed $300,000.  On a -- it's the

3    same amount of money, isn't it?

4            MR. LYONS:  Yes, but -- but the way the claims

5    register works, Your Honor, if you have two $300,000 claims --

6            THE COURT:  No, no, that -- that wouldn't be the

7    case.  You cap the aggregate recovery.

8            MR. LYONS:  Maybe -- maybe -- I may have a solution

9    to this.  Can I have two seconds to talk to --

10            THE COURT:  That's fine.  I -- I mean -- I understand

11    counsel's point.  I understand your point.

12            (Whispered conversation)

13            MR. LYONS:  Okay.  This may work, Your Honor.  If we

14    were to create a new proof of claim number, which we will call

15    the HE Services/Backe Claim, an allowed claim in the amount of

16    $300,000, the other two claims would be expunged off the claims

17    register, but you would have, then, that -- that --

18            THE COURT:  That one allowed --

19            MR. MASTROMARCO:  That would do it -- I think that

20    would do it.

21            THE COURT:  Okay.

22            MR. LYONS:  Okay.  So Your Honor, we've got --

23            THE COURT:  But other than that, the settlement as

24    laid out on the record is -- is what has been agreed to?

25            MR. MASTROMARCO:  Yes, Your Honor.

1          THE COURT:  Okay.  And now that -- that portion has

2   been agreed to as well.

3          All right.  Let me say, I -- I appreciate counsel

4   raising this settlement prospect at the beginning of the

5   hearing.  As you could tell, I -- I put a -- and I know you all

6   have -- quite a bit of work into preparing for the hearing and

7   because of that, I have no problem in issuing an order in

8   respect of this settlement.  I believe I have a very good sense

9   of the merits of the claim and the defenses to the claim of

10  both HE Services and Mr. Backe.  And in light of my assessment

11  of the various aspects of the HE Services claim, as well as

12  Mr. Backe's claim, and the Debtors' objection to both of them,

13  I believe this is a fair settlement in the best interests of

14  the Debtors' estate and fair and equitable.  That's the extent

15  of my approval role under the Bankruptcy Code.  The focus is on

16  the Debtors' entry into this settlement, but I can tell you,

17  Mr. Backe, that I believe this is fair also from HE Services

18  and -- and your point of view based on my assessment of the

19  merits.  Obviously, something might have come out of trial that

20  would change that assessment on the merits, but it could also

21  have affected it the other way.  So I believe that this is a

22  fair settlement and -- and I'll approve it.

23         MR. MASTROMARCO:  Thank you, Your Honor.

24         THE COURT:  Okay.  Now as far as getting the order

25  done, do you have a laptop here?  Are you going to draft one,

1    or do you want me to draft one back in chambers?

2              MR. LYONS:  We -- do we have a -- we do have a

3    laptop.

4              THE COURT:  I mean I could do it either way.

5    Sometimes it's more efficient for you to draft it and you have

6    Mr. Mastroantonio [sic] right here, so you can, you know, go

7    over it together.  I would think it would be very brief --

8              MR. LYONS:  Yes.

9              THE COURT:  -- and simply approve the resolution of

10   the claim objection as set forth on the record, and under

11   363(b) and 9019.

12             MR. LYONS:  I think we can get it done before noon,

13   Your Honor, if not sooner.

14             THE COURT:  All right.  Well, I'll be around all day,

15   so.

16             MR. LYONS:  Thank you.

17             THE COURT:  Okay.  Thank you very much.

18             (Whereupon these proceedings were concluded at

19   11:13 a.m.)

20

21

22

23

24

25

```
 1

 2                          I N D E X

 3

 4                        E X H I B I T S

 5    DELPHI'S     DESCRIPTION                      ID.      EVID.

 6    1            USW Home Avenue settlement                6

 7                 agreement

 8    2            USW Vandalia settlement                   6

 9                 agreement

10    3            Declaration of Kevin Butler               6

11    4            Declaration of Kent Lepret                6

12    5            Informational notice sent out             6

13                 to individual union members

14    6            Notice of debtors' motion at              6

15                 today's hearing

16    7            Affidavit of service                      6

17    8            Blacklined order                          6

18

19                        R U L I N G

20    DESCRIPTION                             PAGE     LINE

21    Debtors' entry into and performance of  9        10

22    settlement agreements approved

23

24

25
```

```
1

2                        C E R T I F I C A T I O N

3

4          I, Christine F. Clayton, PLS, CERT-299, court-approved

5     transcriber, certify that the foregoing is a correct transcript

6     from the official electronic sound recording of the proceedings

7     in the above-entitled matter.

8

9     _____    September 13, 2007
      Signature of Transcriber               Date
10
      Christine F. Clayton
11    Typed or printed name

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```