1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 05-44481

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    DELPHI CORPORATION,

8

9         Debtor.

10

11   - - - - - - - - - - - - - - - - - - - -x

12

13                 United States Bankruptcy Court

14                 One Bowling Green

15                 New York, New York

16

17                 October 3, 2007

18                 10:00 AM

19

20   B E F O R E:

21   HON. ROBERT D. DRAIN

22   U.S. BANKRUPTCY JUDGE

23

24

25

2

1

2    APPEARANCES:

3

4     For The Debtor(s):              John Wm. Butler, Jr., Esq.

5                                     Skadden Arps Slate Meagher

6                                     & Flom, LLP

7                                     333 W. Wacker Dr.-Ste. 2100

8                                     Chicago, IL 60606

9

10                                    Kayalyn A. Marafioti, Esq.

11                                    Skadden Arps Slate Meagher

12                                    & Flom, LLP

13                                    Four Times Square

14                                    New York, NY 10036

15

16                                    Thomas J. Matz, Esq.

17                                    Skadden Arps Slate Meagher

18                                    & Flom, LLP

19                                    Four Times Square

20                                    New York, NY 10036

21

22                                    Neil Berger, Esq.

23                                    Togut Segal & Segal, LLP

24                                    One Penn Plaza

25                                    New York, NY 10119

3

1

2   For The Official Committee:      Mark A. Broude, Esq.

3    of Unsecured Creditors          Latham & Watkins, LLP

4                                    53rd at 3rd, 885 Third Ave.

5                                    New York, NY 10022

6

7   For The Equity Committee:        Bonnie Steingart, Esq.

8                                    Fried Frank Harris Shriver

9                                    & Jacobson, LLP

10                                   One New York Plaza

11                                   New York, NY 10004

12

13  For The Delphi Trade:            Daniel N. Zinman, Esq.

14  Committee                        Kasowitz Benson Torres

15                                   & Friedman, LLP

16                                   1633 Broadway

17                                   New York, NY 10019

18

19  For The ACE companies:           Wendy M. Simkulak, Esq.

20                                   Duane Morris, LLP

21                                   30 South 17th St.

22                                   Philadelphia, PA 19103

23

24

25

4

| | |
|---|---|
| 1  For Lead Plaintiffs: | S. Jason Teele, Esq. |
| 2 | Lowenstein Sandler, PC |
| 3 | 65 Livingston Ave. |
| 4 | Roseland, NJ 07068 |
| 5 | |
| 6 | Michael Etkin, Esq. |
| 7 | Lowenstein Sandler, PC |
| 8 | 65 Livingston Ave. |
| 9 | Roseland, NJ 07068 |
| 10 | |
| 11  For Peugeot, PBR and: | Michael P. Richman, Esq. |
| 12  SABIC | Foley & Lardner, LLP |
| 13 | 90 Park Ave. |
| 14 | New York, NY 10016 |
| 15 | |
| 16  For | Allan S. Brilliant, Esq. |
| 17 | Goodwin Procter, LLP |
| 18 | 599 Lexington Ave. |
| 19 | New York, NY 10022 |
| 20 | |
| 21 | Geagan E. Costello, Esq. |
| 22 | Goodwin Procter, LLP |
| 23 | 599 Lexington Ave. |
| 24 | New York, NY 10022 |
| 25 | |

5

1   For The US Trustee's Office:   Alicia M. Leonhard, Esq.

2                                   US Department of Justice

3                                   Office of the US Trustee

4                                   33 Whitehall St.-21st Fl.

5                                   New York, NY 10004

6

7   (Via Telephone)

8

9   For Bank of America:          John Gregg, Esq.

10                                  Barnes & Thornburg

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1        P R O C E E D I N G S

2        THE CLERK:  Please be seated.

3        THE COURT:  All right, Delphi Corporation.

4        MR. BUTLER:  Your Honor, Jack Butler and Kayalyn Marafioti

5    from the Skadden firm and Neil Berger from the Togut firm here

6    on behalf of the Debtors for this specially set hearing.  Your

7    Honor, we filed an agenda, and I'd like to address the three

8    items on the agenda in the order that they're listed.

9        THE COURT:  Okay, that's fine.

10       MR. BUTLER:  Your Honor, the first item on the agenda,

11   item #1, is the MDL and Insurance Settlement Approval Motion at

12   Docket #9296.  This was originally noticed for the September

13   Omnibus Hearing.  The objection deadline for the motion passed

14   on September 20th, with the exception of extensions granted to

15   certain parties as listed on the agenda.  And Your Honor, at

16   this point in time we're gonna ask the Court to adjourn this to

17   the October 25, 2007 Omnibus Hearing, and with respect to those

18   entitled to a supplemental objection deadline, that we set that

19   deadline for 4 p.m. prevailing Eastern time on October 18,

20   2007.

21       The parties that are entitled to that objection deadline

22   based on prior communications with the company and that were

23   cleared with Chambers are the Unsecured Creditors Committee,

24   United States Department of Labor, Wilmington Trust Company as

25   Indenture Trustee, and Ad Hoc Committee of Trade Creditors and

7

1    a group of bondholders represented by Goodwin Procter,

2    including DK Acquisition Company, Elliott Management Company,

3    Sando Management Company, Silver Point Capital and CR

4    Intrinsic.  And Your Honor, with respect to that matter, it's

5    the Debtors' present intention that we would actually proceed

6    on the 25th with that settlement.  The fairness hearing in the

7    District Court is on November 13th, and we will hopefully --

8    our discussions over the next several weeks will be productive

9    and will hopefully not have a lot of objections, but we will

10   need to proceed at that time.

11       THE COURT:  Okay.  That's fine.

12       MS. STEINGART:  Excuse me, Your Honor.  Bonnie Steingart

13   from Freid Frank on behalf of the Equity Committee.  I had

14   indicated to Mr. Butler that I wanted to be heard in connection

15   with this motion very briefly.  We believe that to the extent

16   that the overall Plan changes, and there is a change in the

17   recoveries that are now set forth in the Plan and Disclosure

18   Statement that have been circulated, that there may be aspects

19   of the MDL that are objectionable.  And we don't believe that

20   we can be precluded from filing an objection should those

21   changes occur and should our constituents be impacted.

22       Certainly, as the MDL exists now and as it exists in the

23   context of the Plan, we're supportive; indeed, when this

24   proposal was made initially, I believe that I spoke in favor of

25   the Debtors' efforts and the structure of the Plan that

8

1   existed.  To the extent that things change and the

2   distributions and scheme that has been outlined under the Plan

3   does change we would, or might have -- might be impacted in a

4   way that would cause us to object to the MDL settlement.  As

5   we've discussed with Debtors, we're hoping that, as with the

6   Debtors, that no such thing occurs, and we continue to be

7   supportive of all the Debtors' efforts to resolve the issues

8   with which they're now confronted.

9       THE COURT:  Okay, well, as I saw the list, the Equity

10  Committee wasn't --

11      MS. STEINGART:  The Equity Committee is not on the list

12  Your Honor.

13      THE COURT:  Of those who reserve their right to -- was

14  this just raised today or was this something that you've been

15  talking about?

16      MS. STEINGART:  Well, I first saw the footnote and

17  understood that we weren't included recently, Your Honor.

18      THE COURT:  Okay.

19      MS. STEINGART:  I did not, you know, think at the time --

20  we'd understood the Plan and other things were up for change.

21      MR. BUTLER:  Your Honor, we understand the Equity

22  Committee's reservation of rights.  This same list was reviewed

23  at the September Omnibus Hearing, was based on people who spoke

24  with us about potential objections prior to the objections

25  deadline passing.  And we're certainly prepared to accept the

9

1    reservation of rights, except that we'll reserve our rights to

2    address it if it ever becomes necessary.  I hope it won't, but

3    we think the objection deadlines meant something.  There are a

4    number of other key stakeholders who did not reserve their

5    objection rights, and this is not the MDL's being considered

6    outside of the Plan from the company's perspective.

7        THE COURT:  All right, well, I'll note the mutual

8    reservations of rights.

9        MS. STEINGART:  Thank you, Your Honor.

10        THE COURT:  Okay.

11        MR. BUTLER:  Your Honor, the next matter on the agenda,

12    matter #2, is the Saginaw Chassis Asset Sale Motion at Docket

13    #9368.  This -- the only objection that was filed to this prior

14    to the objection deadline was the limited objection of the UAW,

15    as you may recall from the Omnibus Hearing in September.  That

16    matter has been resolved consensually with the UAW.  What we're

17    waiting for now is the completion of a supply agreement between

18    the prospective purchaser and General Motors Corporation.

19    Those parties are working in good faith to resolve that.  As of

20    October 1st it had not been resolved, and the parties entered

21    into an amended and restated first amendment to the Asset

22    Purchase Agreement which extended the deadline for that to the

23    close of business on October 15, 2007.  As a result of that

24    amendment, Your Honor, we'd ask that this be moved now for

25    hearing at the October 25th Omnibus Hearing.

10

1    THE COURT:  Okay.  But as of now there are now pending

2    objections?

3        MR. BUTLER:  There are no pending objections.  The gating

4    item at the moment in terms of the conditions going forward at

5    the hearing are sorting out the supply agreement, and the

6    parties, I think, are working diligently on that in that

7    respect.

8        THE COURT:  All right, that's fine.  I'll hear that on the

9    25th.

10        MR. BUTLER:  Your Honor, that takes us then to matter #3,

11    which is the Solicitation Procedures Motion filed in connection

12    with the filing of the Debtors' Disclosure Statement and Plan

13    of Reorganization.  The Solicitation Procedures Motion is filed

14    at Docket #9266.

15        Your Honor, the Solicitation Procedures Motion was filed

16    on September 6, 2007.  At that time it was filed along with the

17    Debtors' joint Plan of Reorganization of Delphi Corporation and

18    certain affiliates as Debtors and Debtors-In-Possession at

19    Docket #9263, and the Disclosure Statement with respect to the

20    joint Plan of Reorganization which was filed at Docket #9264.

21    Your Honor, this is the commencement of our Disclosure

22    Statement and Solicitation Procedures Motion hearing, and we're

23    before the Court under Section 1125(b) of the Bankruptcy Code

24    asking the Court to begin to consider approval of our

25    Disclosure Statement as containing adequate information such

11

1    that we can begin the post-petition solicitation of

2    Reorganization Plan during the fourth quarter of 2007.

3         From the Debtors' perspective, the Disclosure Statement

4    includes detailed information regarding the treatment of claims

5    and interests, the company's 5-year business plan, events

6    leading up to and during Delphi's Chapter 11 cases, and an

7    outline of the plan investor agreement and rights offering

8    proposed in connection with the Plan.

9         The proposed Disclosure Statement also outlines Delphi's

10   transformation, which centers around five core areas.

11   Agreements that have now been reached with all principal U.S.

12   Labor unions which create a competitive reign in which to

13   conduct Delphi's business going forward.  Second, agreements

14   with General Motors that were announced and filed publicly on

15   September 6th and are appendices to the Plan of Reorganization

16   that outlines General Motors financial support for certain

17   legacy and labor costs and certain future business commitments

18   to Delphi.  Third, Delphi's future product portfolio and

19   manufacturing footprint on a transformed basis.  Fourth,

20   Delphi's planned transformation of its salaried work force and

21   progress reducing SG&A more generally to support the realigned

22   portfolio.  And finally, Delphi's plans to fund it's U.S.

23   defined benefits program.

24        With respect to this latter area, Your Honor, I'm also

25   pleased to advise the Court that the Debtors this week received

12

1   the final waivers from the Government, from the Internal

2   Revenue Service, with their necessary to move forward with

3   respect to retaining the U.S. defined benefit programs on a

4   frozen basis consistent with the Plan arrangement.

5       Your Honor, Delphi's plan, as I think, self-evident, is

6   based upon a series of global settlements and compromises.  It

7   involved essentially every major group of constituents in

8   Delphi's reorganization cases.  These include, among others,

9   Delphi, it's principal labor unions, General Motors and other

10  of its stakeholders, as well as the Lead Plaintiffs and certain

11  securities, and there is some multi-district litigation.  The

12  Disclosure Statement discusses in detail the terms of these

13  settlements and compromises and the circumstances and processes

14  that gave rise to them.

15      Your Honor, from the Debtors' perspective, the Disclosure

16  Statement contains the type of information that should be

17  included in an adequate Disclosure Statement as generally

18  approved by Courts in large reorganization cases, including in

19  this District, where securities are to be issued, including,

20  first, a summary of the plan; that is, both summarizing the

21  distributions and estimated amounts of claim in each class

22  that's set forth in the introduction and in Article #9.

23      And towards that end, as I think, Your Honor, we advised

24  you at the September 27th Omnibus Hearing, as a result of the

25  uncertainties in the capital markets, the company is engaged

13

1    presently with its principal stakeholders in reviewing what I

2    described then as in formulating -- what I described then as

3    razor-like potential amendments to the Plan that are intended

4    to address the capital markets issues that we are dealing with.

5    And in fact, I think we have made progress on that even since

6    last week.  We've had another round of discussions with our

7    lead lenders, which have been very productive.  We are engaged

8    presently in discussions with our statutory committees and with

9    General Motors and the Plan investors, and there are a lot of

10   meetings as between various of those groups.  And it is the

11   Debtors' expectation that we should be able to move forward on

12   the timetable that we described at the Omnibus Hearing,

13   although there is certainly more work to be done over the next

14   several weeks before the end of this month.  But so, Your

15   Honor, we do anticipate that there may be, as I said before,

16   several razor-like amendments, focused amendments to the Plan,

17   which will necessitate some additional disclosure.

18        The second part of the area of the Disclosure Statement

19   that contains the type of information which we think is

20   appropriate and customary in these cases are the plan voting

21   instructions and procedures that are described in Articles 2

22   and 16 of the Disclosure Statement.  There's, third, a

23   description of the Debtors' businesses, including it's current

24   officers and directors, that are set forth in Article 3, which

25   described Delphi's role as a leading global technology

14

1    innovator with significant engineering resources and technical

2    competencies in a variety of disciplines, and describes it's

3    supply relationship to the global automotive industry and to

4    the OEM customers, as well as its involvement in other business

5    segments in the non-automotive space.

6        The fourth general area, Your Honor, the Disclosure

7    Statement covers in Article 4 is a history of the Debtors,

8    explaining the Debtors' spin-off from General Motors in 1999

9    and the transaction subsequent to that.  The fifth general area

10   are the events and circumstances leading to the filing of the

11   bankruptcy petitions, and also describes in Article 4.  Sixth,

12   the Disclosure Statement addresses the pre-petition capital

13   structure of the Debtors in Article 4, as well as a detail of

14   the Delphi's Transformation Plan in Article 5 of the Disclosure

15   Statement.

16       Your Honor, the Debtors' business plan for emergence is

17   discussed in Article 6; and in fact, the 5-year business plan

18   is attached as Appendix C to the Disclosure Statement.  Article

19   7 addresses plan investor and exit financing arrangements, and

20   here too, as I described to the Court on September 27th, there

21   will be additional information filed as we finalize the exit

22   financing arrangements.  The Debtors would expect, prior to

23   solicitation, to enter into a form of commitment letter with

24   its lead lenders in the capital markets with respect to the

25   capital markets transaction that we will be proceeding with.

15

1    Article 8 of the Disclosure Statement addresses significant

2    events that have occurred during these Chapter 11 cases.  We've

3    all lived those together, I'll not summarize them here, they

4    are set forth in the Disclosure Statement.  And then Article 9

5    deals with the Chapter 11 Plan in particular.  Of, I think,

6    significant importance in a hearing like this is Article 10 of

7    the Disclosure Statement which sets forth the general

8    considerations and risk factors to be considered by those

9    voting on the proposed Plan of Reorganization.  And then

10   there's a series of other matters addressed in Articles 11, 12,

11   and 13 dealing with securities and tax implications,

12   feasibility and the best interest test.

13       I should point out, Your Honor, that in terms of the

14   appendices of the Plan, we have already disclosed and we

15   disclosed on September 6th not only our historical financial

16   statements as Appendix B to the Disclosure Statement and the 5-

17   year business plan as Appendix C, but also Rothschild's

18   valuation of the Debtor at Appendix D, which as of December 31,

19   2007, valued the estimated total enterprise value range at

20   between 11.4 billion and $14.4 billion in terms of value.  And

21   Appendix E to the Disclosure Statement set out in detail a

22   liquidation analysis that the Debtors believe will allow it at

23   confirmation to meet the requirements of the best interest

24   test.

25       Your Honor, we have made revisions since filing the Plan

16

1    and Disclosure Statement on September 6th.  We have circulated

2    those redline pages both to those who have objected thus far to

3    the Disclosure Statement and those who have been given a

4    supplemental objection deadline, and I'll address those in a

5    few moments.

6        So that we can dispose of at this first day of the

7    Disclosure Statement hearing with some of the business that we

8    need to put in the record, I do have, Your Honor, some items

9    that I want to put into evidence at this point that deal

10   primarily with what's been circulated to date and with notice.

11       THE COURT:  Okay.

12       MR. BUTLER:  As Your Honor I think recalls, we have

13   noticed more than 650,000 parties in connection with this

14   hearing, and I just want to run through what's been

15   accomplished so far.  So we have to admit into evidence 20

16   exhibits which have been shared with the objectors and

17   potential objectors.  They include as Exhibit-1 the Disclosure

18   Statement at Docket #9264, the joint Plan as filed on September

19   6th at Docket #9263 as Exhibit-2.  Exhibit-3 is a blackline to

20   the proposed revisions to the Disclosure Statement thus far

21   with the people who've been providing input to us and with the

22   objectors who filed objections and with certain of the

23   potential objectors.  Exhibit-4 is a blackline of proposed

24   changes to the Plan to date, as of yesterday, October 2nd.

25   Exhibit-5 is the actual Solicitation Motion at Docket #9266.

17

1   Exhibit-6 is the notice that was approved to be sent out at --

2   also at Docket #9266.  Your Honor earlier entered an order

3   scheduling today's hearing, and that's on Exhibit-7 at Docket

4   #8898.  We have prepared and filed with our omnibus reply a

5   chart of objections to the objections filed thus far to the

6   Disclosure Statement; those are at Exhibit-8.

7        And then on to the notice matters.  First, Exhibit-9 is

8   the Affidavit of Service of Elizabeth Adam regarding Disclosure

9   Statement and Plan in motion, which has also been filed at

10  Docket #9544.  Exhibit-10 is the Affidavit of Service of Evan

11  Gershbein regarding the Notice of Motion.  This was filed --

12  it's a very voluminous exhibit.  It was filed at Docket #9608.

13  Exhibit-11 is the Affidavit of Service of Financial Balloting

14  Group, LLC, on the Disclosure Statement hearing notice served

15  on holders of public securities.  Again, Your Honor, that's

16  also a voluminous exhibit.  It's been filed on the docket at

17  Docket #9630, and as I said, it's Exhibit-11.

18       Exhibit-12 through 20 are Affidavits of Publication.

19  Exhibit-12 is the Indianapolis Star Publication at Docket

20  #9631.  Exhibit-13 is the Kokomo Tribune notice of publication

21  at Docket #9632.  Exhibit-14 is the notice of the Detroit Free

22  Press at Docket #9633.  Exhibit-15 is the notice in the Detroit

23  News at Docket #9634.  Exhibit-16 is a supplemental notice in

24  the Detroit News and Free Press at Docket #9635.  Exhibit-17 is

25  a notice in the Plain Dealer at Docket #9636.  Exhibit-18 is a

18

1    notice in the Blade at Docket #9637.  Exhibit-19 is a notice in

2    the Wall Street Journal in the global edition at Docket #9638.

3    And finally, Exhibit-20 is the Notice of Publication in the New

4    York Times at Docket #9639.

5        Your Honor, I move these matters into evidence in support

6    of the Debtors' Disclosure Statement.

7        (Debtors' Exhibit-1 previously marked for identification)

8        (Debtors' Exhibit-2 previously marked for identification)

9        (Debtors' Exhibit-3 previously marked for identification)

10       (Debtors' Exhibit-4 previously marked for identification)

11       (Debtors' Exhibit-5 previously marked for identification)

12       (Debtors' Exhibit-6 previously marked for identification)

13       (Debtors' Exhibit-7 previously marked for identification)

14       (Debtors' Exhibit-8 previously marked for identification)

15       (Debtors' Exhibit-9 previously marked for identification)

16       (Debtors' Exhibit-10 previously marked for identification)

17       (Debtors' Exhibit-11 previously marked for identification)

18       (Debtors' Exhibit-12 previously marked for identification)

19       (Debtors' Exhibit-13 previously marked for identification)

20       (Debtors' Exhibit-14 previously marked for identification)

21       (Debtors' Exhibit-15 previously marked for identification)

22       (Debtors' Exhibit-16 previously marked for identification)

23       (Debtors' Exhibit-17 previously marked for identification)

24       (Debtors' Exhibit-18 previously marked for identification)

25       (Debtors' Exhibit-19 previously marked for identification)

19

1        (Debtors' Exhibit-20 previously marked for identification)

2        THE COURT:   Okay.   Does anyone have any objections to the

3    introduction of those items into evidence for purposes of this

4    hearing?   Okay, I'll admit them then.

5        (Debtors' Exhibit-1 admitted into evidence)

6        (Debtors' Exhibit-2 admitted into evidence)

7        (Debtors' Exhibit-3 admitted into evidence)

8        (Debtors' Exhibit-4 admitted into evidence)

9        (Debtors' Exhibit-5 admitted into evidence)

10        (Debtors' Exhibit-6 admitted into evidence)

11        (Debtors' Exhibit-7 admitted into evidence)

12        (Debtors' Exhibit-8 admitted into evidence)

13        (Debtors' Exhibit-9 admitted into evidence)

14        (Debtors' Exhibit-10 admitted into evidence)

15        (Debtors' Exhibit-11 admitted into evidence)

16        (Debtors' Exhibit-12 admitted into evidence)

17        (Debtors' Exhibit-13 admitted into evidence)

18        (Debtors' Exhibit-14 admitted into evidence)

19        (Debtors' Exhibit-15 admitted into evidence)

20        (Debtors' Exhibit-16 admitted into evidence)

21        (Debtors' Exhibit-17 admitted into evidence)

22        (Debtors' Exhibit-18 admitted into evidence)

23        (Debtors' Exhibit-19 admitted into evidence)

24        (Debtors' Exhibit-20 admitted into evidence)

25        MR. BUTLER:   Thank you.

20

1        THE COURT:  I need copies of the two blacklines.

2        MR. BUTLER:  Okay, I'll provide them, Your Honor.  May I

3    approach, Your Honor?

4        THE COURT:  Yes, thank you.

5        (The Court receives documents)

6        MR. BUTLER:  Your Honor, turning to the objections -- I'm

7    going to come back, Your Honor, to those exhibits I just passed

8    up again that are Exhibits-3 and 4.  But turning to the

9    objections, I want to briefly address where we are with respect

10    to the objections.  There were, as I indicated, notices sent

11    out to 665,000 Creditors, shareholders, and other Parties-In-

12    Interest, and there have been to date approximately 10

13    objections filed to the Debtors' Disclosure Statement which are

14    included on the exhibit chart which is Exhibit-8 in the record.

15    In addition, Your Honor, given the plan amendment process that

16    we're involved in with certain of our key stakeholders, as I

17    reported to the Court on September 27th at the Omnibus Hearing,

18    we indicated that we would not conclude the hearing today, but

19    after we've finished the business that we do have before the

20    Court today, we will ask the Court to continue this matter for

21    a second day of consideration.  We're asking the Court to

22    consider scheduling that for 1 p.m. on October 25th, it's the

23    afternoon of our Omnibus Hearing date, and the setting with

24    respect to those entitled to a supplemental objection deadline,

25    setting 4 p.m. Eastern Daylight Time on Friday, October 19,

21

1    2007 as the supplemental objection deadline which would apply

2    to the Creditors Committee, the Equity Committee, General

3    Motors, the plan investors, Wilmington Trust as an Indenture

4    Trustee, the Ad Hoc Committee of Trade Creditors, and that

5    group of senior noteholders that Goodwin Procter represents

6    which I described previously as the five bondholders.  And we

7    have, on this record, are referring to those individuals as

8    potential objectors.

9         I should point out, Your Honor, that our agreement with

10   the potential objectors is that the consideration of the

11   objections today would be without prejudice, and then that is

12   to say I don't expect any of them to have anything to say on

13   these particular objections should they file an objection down

14   the line, but those potential objectors' rights to file

15   whatever objections they believe are appropriate and timely on

16   October 19th is preserved.

17        THE COURT:  Okay, now, Disclosure Statements and sometimes

18   Plans are often changed as a result of a Disclosure Statement

19   Hearing, so I don't believe you need to re-notice all 665,000

20   people with the changes that you're contemplating between now

21   and the hearing to come, but you're obviously going to file

22   those changes on the docket so people can access them

23   electronically?

24        MR. BUTLER:  Your Honor, what we will plan to do is --

25   what we tried to do yesterday and had some technical problems

22

1    in getting done, but our intention would be to file blackline

2    changes in connection with our omnibus reply to the objections.

3    We're obviously working with both the objectors and the

4    potential objectors, as we did in this process, and we've

5    resolved some of these objections I'll get to them in a few

6    minutes that are before the Court today.  With respect to the

7    potential objectors, we're dealing with them directly on

8    blackline issues and considering language from them.

9    Ultimately, we'll be filing an omnibus reply prior to the Court

10   hearing.  That omnibus reply will have attached to it all the

11   blackline changes from where we are at this hearing going

12   forward, and that will be in the docket.

13       THE COURT:  Okay.

14       MR. BUTLER:  It is our practice, Your Honor, not to file a

15   Amended Plan and Disclosure Statement formally as separate

16   docket items until we complete this hearing.  Once Your Honor

17   rules on these matters, and we have a final Plan and a final

18   Disclosure Sate, we will file officially a first amended -- a

19   signed First Amended Plan of Reorganization and a signed First

20   Amended Disclosure Statement.

21       THE COURT:  That's fine.  I have no problem with the

22   response being the vehicle for updating people on the current

23   status of the document.  And then you're going to file a notice

24   of the continuance of the Disclosure Statement Hearing so that

25   --

23

1    MR. BUTLER:  We will -- we'll actually -- I think what we

2    planned to do under these circumstances, we don't normally give

3    Your Honor Scheduling Orders, but there is already a scheduling

4    order for this hearing.  We're gonna issue a second one in

5    Chambers that would be consistent with the record today.

6    THE COURT:  Okay.

7    MR. BUTLER:  So Your Honor, I think that takes us then,

8    let me just briefly describe the revisions in Exhibit-3 and

9    Exhibit-4.  Exhibit-3 is the redline to proposed revisions to

10   the Disclosure Statement to date, and Exhibit-4 is the proposed

11   changes to the Plan.

12   Taking the Plan items first, there are not many revisions

13   at this point in time.  Most of them are self-explanatory or

14   clean-up changes that I'm not gonna dwell on.  We've made

15   changes like relating the MDL settlement to adding a phrase,

16   {quote} "against the Debtors" {end quote} to various

17   definitions as requested by the MDL Plaintiffs.  We've also

18   clarified the treatment of administrative claims to clarify

19   that those incurred in the ordinary course of business will be

20   paid or otherwise satisfied in the ordinary course of business.

21   We've added guarantees as a type of instrument that the Debtors

22   may execute as part of a restructuring transaction under the

23   Plan.

24   We have revised the release and exculpations provisions to

25   account for the releases and exculpation provided for in the

24

1    various memoranda of understanding with the Debtors' U.S. Labor

2    Unions and those MOUs.  And we're continuing, as you can expect

3    Your Honor, to reconcile and make sure that we have reconciled

4    the GM settlement documentation and the labor MOUs with the

5    Plan.  You may recall at the time you considered labor MOUs,

6    there are a number of provisions that carry over into the Plan

7    in terms of things we've agreed to do, and we continue to

8    reconcile those and make sure that we're -- counsel to the

9    unions are comfortable with that language, and there may be

10   further clarifications as we move forward with that.

11        In connection with the Disclosure Statement, we have

12   updated the Disclosure Statement to, among other things,

13   reflect developments since September 6th, including the events

14   of the September 27th Omnibus Hearing, such as approval of the

15   Reclamation Procedures Motion and the Claims Estimation Motion.

16   We've also covered new business events that have occurred

17   including, for example, the closure of the brake hose and the

18   catalyst sale transactions.

19        We've also, Your Honor, included language to satisfy the

20   requests of certain Parties-In-Interest.  We're talking to a

21   lot more people than the record reflects, Your Honor, as is

22   normally the case here.  So for example, we have included

23   language regarding the State of New York Workers Compensation

24   Board claims on Disclosure Statement 144 and 145 to address

25   concerns expressed to us by the Attorney General here in New

25

1    York.  We've also included language to justify the Lead

2    Plaintiffs regarding certain issues relating to the MDL

3    settlements.  We've made a series of, again I'll call them

4    clean-up changes dealing with references, defined terms, and

5    plan summary language, and we've made those changes now.

6         We have been, Your Honor, as I indicated earlier, involved

7    in a lengthy series of conversations and I would say good faith

8    discussions with certain of the potential objectors regarding

9    the issues that are important to them.  And there's language

10   we're working on with them, some of which has been agreed to in

11   principle and others which relate to trying to come to an

12   overall resolution of that potential objectors' concerns.

13   Those changes are not reflected in Exhibits-3 or 4.  We'll deal

14   with those and add them in once we complete the work with that

15   particular party.  And so we're -- because we're trying not to

16   do that on a piecemeal basis, but trying to deal with those

17   concerns of each objector I've taken as a whole.  My concern is

18   to do otherwise, we'll never get done.  At some point you've

19   gotta have people say these are all the concerns I have and you

20   need to address them as packages, and we're trying to follow

21   that process.

22        With respect to the objections that are before the Court

23   today, as I indicated, they are set forth in the chart on

24   Exhibit-8, and let me just quickly run through those in terms

25   of from a summary perspective.  The Debtors, Your Honor,

26

1    believe that we have met the requirements of Section 1125 of

2    the Code in connection with the Solicitation Procedures Motion

3    and the Disclosure Statement that's before the Court, but there

4    are -- the objections that are before the Court today address a

5    number of areas.

6        Several objections address, in the Debtors' view, not the

7    adequacy of the information contained in the Disclosure

8    Statement, but instead object to certain provisions of the

9    Plan.  It's the Debtors' view as we get to each of these that

10   we will assert, and we believe the Court should sustain our

11   view, that a Disclosure Statement Hearing is not the time to

12   consider merits of the Plan itself and that Plan objections

13   should be filed for the Confirmation Hearing once the Court's

14   entered the Solicitation Procedures Motion.  We believe they're

15   premature today.

16       It's the Debtors' view that the only objections that we

17   should have to address today and have Your Honor resolve are

18   objections to the adequacy of information that's disclosed in

19   the Disclosure Statement, and we think the view here in the 2nd

20   Circuit and then the Southern District of New York is pretty

21   clear that Disclosure Statements get approved unless the

22   Disclosure Statement describes a plan that is so fatally flawed

23   that confirmation is impossible.  None of the objections before

24   the Court today make that assertion.

25       So to go through now the specific objections, and I'll

27

1    just, with Your Honor's permission, take them in the chart

2    order.  I think that's probably the simplest way to address

3    those issues.  Let me start with the objection filed by Sharyl

4    Y. Carter at Docket #9513 and again at Docket #10417.  These

5    are letters sent to the Court which have now been docketed by

6    the Court and which the Debtors are treating as informal

7    objections to the Disclosure Statement.  The letters from Ms.

8    Carter, among other matters, simply say that she doesn't agree

9    we filed Chapter 11 and make other assertions.  We don't

10   believe that there's any cognizable objection in either of

11   those docket numbers to the Disclosure Statement Hearing or the

12   Solicitations Motion.

13        THE COURT:  Okay.  Is Ms. Carter present?  All right, I've

14   reviewed her objection, and I agree with the Debtors' position

15   that this is not a valid objection to a Disclosure Statement,

16   and further the Debtors' Disclosure Statement sets forth the

17   Debtors reasons for filing Chapter 11, you know, adequately, so

18   that objection is overruled.

19        MR. BUTLER:  Thank you, Your Honor.  Your Honor, the next

20   three objections I'll take together.  They're filed by the same

21   firm and deal with the same issues.  That would be Docket

22   #9668, the Peugeot JAPY Industries, S.A.; Docket #9669, PBR

23   Tennessee Inc., and a series of PBR related entities; and

24   Docket #9670, SABIC Innovative Plastics U.S., LLC.  One

25   comment, Your Honor, about SABIC, just to bring the Court up to

28

1   date.  SABIC Innovative Plastics U.S., LLC, now holds the

2   business formerly held by GE Plastics.  GE Plastics was a

3   member of the Unsecured Creditors Committee.  That business was

4   sold during the month of September, closed at some point in

5   September, maybe towards the beginning, to SABIC and was placed

6   in this entity, SABIC Innovative Plastics, U.S., LLC.  Ms.

7   Leonard filed a notice with respect to the Creditors Committee

8   yesterday in terms of amending the appointment of the Creditors

9   Committee to reflect the relationship of that transaction with

10  SABIC Innovative Plastics U.S., LLC, being appointed as the

11  successor to GE.  So this is just in terms of having a record

12  clear on those objections.

13      Your Honor, the objections of these parties basically

14  argue that you can't have an adequate -- you can't go forward

15  with the Disclosure Statement because it's inadequate for

16  anyone to make an informed judgment unless they know whether

17  their contract's gonna be assumed or rejected is the first

18  objection.  And then they argue that the objection timeline

19  that we have here, which is approximately 7 days before the

20  plan -- before the plan voting deadline under the timetable is

21  inadequate.

22      And Your Honor, I would just simply respond to this by

23  saying I think that we're following the customary practices in

24  this District.  The footnote 5 to our omnibus reply gave

25  examples of six major cases in this District, including cases

1    Your Honor has presided over, in which the exhibit filing

2    deadline to file the list of either assumed or rejected

3    contracts, depending upon what the rule is in the particular --

4    the rule of construction is in the particular plan, is in a

5    period somewhere between 5 and 10 days prior to the voting

6    deadline.  In the case of Northwest it was 3 days.  In the case

7    of Singer and Enron and several other cases it was 5 days.  In

8    the case of Adelphi and Revco and Delta it was 10 days.

9         Although I would point out, Your Honor, that those -- in

10   those cases, several of those cases, like Adelphi and Enron,

11   the construct was at that schedule, once filed, could be

12   amended at any time up and to the effective date of a plan.

13   This particular plan, it takes a more modified or more moderate

14   view of that, and the construct here is that the schedule that

15   is filed can be amended up to the Confirmation Hearing but

16   thereafter can only be amended with respect to a particular

17   contract in which a final -- a cure order is entered, to the

18   extent there's a cure dispute.  And if the cure order is

19   entered, we have 5 business days to reject that contract

20   because we're unwilling to make the cure.

21        And I would just point out in terms of the practice that I

22   think that we are well within the practice here in the Southern

23   District in how we've approached this with 7 days.  I do

24   acknowledge that there was a typographical error in one of the

25   documents, it made it look like it was 4 days.  That's still in

30

1    the range, but we had actually allowed 7 days.

2        And I point out that even the law firm who brought this

3    objection themselves have used similar processes and similar

4    periods.  We went back and looked at Foley & Lardner's cases

5    and at the Intermet Corporation case filed in this -- in the

6    Eastern District of Michigan actually allows -- which was in

7    '95 -- actually allowed 6 days between the time that you file

8    the executory contract list and the time that there's a

9    deadline to voting.

10        I think it's pretty undisputed that this type of

11   procedure is both customary and reasonable, and I don't think

12   there's anything in the case law that would not support it.

13        THE COURT:  Okay.  Why don't I hear from these objectors.

14   And I guess the B of A objection somewhat overlaps with this,

15   so I might as well hear from them, too, unless that's been

16   resolved.

17        MR. BUTLER:  No, Your Honor, I think that's slightly

18   different.  And Mr. Berger is presenting that because you may

19   recall --

20        THE COURT:  All right.

21        MR. BUTLER:  -- this is the third or fourth time that B of

22   A has been before the Court with this particular transaction.

23   Mr. Berger has been representing them.

24        THE COURT:  Okay.

25        MR. BUTLER:  Or representing the company with respect to

31

1   them.

2       THE COURT:  All right.

3       MR. RICHMAN:  Good morning, Your Honor, Michael Richman,

4   Foley & Lardner, and appearing for the three objectors that Mr.

5   Butler identified; that would be SABIC Innovative Plastics, the

6   PBR entities, PBR Tennessee and several others identified in

7   the papers, and Peugeot.

8       I think we need to discuss the objections on a slightly

9   different basis than Mr. Butler presented.  We have really a

10  fundamental due process objection that is very easy to resolve,

11  and I'm actually surprised that I have to be here to argue this

12  because it is so easy to resolve.

13      Rule 2002(b) governs the time that a Debtor has to provide

14  for voting and objections to plan confirmation, and it says

15  that 25 days is the required time for disclosures of material

16  information, both to the Disclosure Statement and for plan

17  confirmation.  There is a provision, Rule 9006, which allows

18  the Court to shorten the time for cause, but so far as I can

19  tell, (A), that puts the burden on the Debtors to demonstrate

20  cause, the burden shouldn't be on my clients to demonstrate why

21  they can't make decisions in a short a timeframe, and (B), I

22  don't believe any of the papers the Debtors filed provide

23  cause.  In fact, I think the only reason that's been given

24  today as to why there should be 7 days before 300,000 contract

25  parties learn whether their contracts are to be assumed or

32

1  rejected, including the five or so contracts involved with the

2  sets of clients that I represent, is that it is a practice

3  that's been followed in other Courts, including in a case that

4  my firm was involved in.  But that's not cause.  There's

5  nothing in the record to indicate that there were objections to

6  those timeframes resolved by judges, nor any attempt to address

7  the required time period, the required minimum time period, set

8  forth in Rule 2002.

9       Now, in our case, quite simply, millions of dollars are at

10  stake with each of the three clients that hinge on whether

11  their contracts are assumed or rejected.  I don't think it's

12  disputable that with respect to all 300,000 contracts the

13  decision to assume or reject and the economic impact of that is

14  directly material and relevant to feasability of a plan.  So

15  whatever the practice was in other cases, I don't understand

16  how a position can be taken that that isn't material

17  information that should be disclosed in a Disclosure Statement

18  at least 25 days before voting and at least 25 days before a

19  Plan Confirmation Hearing.

20       Now, I'm not volunteering to represent all 300,000

21  contract parties and I -- we've said in the papers and I've

22  said to Debtors' counsel, just tell us about our contracts 25

23  days beforehand.  That's the easy way to fix this.  Then we

24  have our due process rights.  Then we aren't faced with a

25  decision because it's more fundamental than just voting.  I

33

1    would concede that we could probably decide in less than 25

2    days whether to vote yay or nay on a plan depending on what

3    happens with the contracts.

4        But if a decision is made, depending on the treatment of

5    the contracts to contest plan confirmation, that is hugely

6    economic for these clients.  It's a major decision; 7 days

7    doesn't do it.  There may have to be discovery.  There may have

8    to be extensive briefing.  There's a lot of analysis.  There's

9    a lot of other associated activities where the Code and the

10   rules say you get at least 25 days for that unless there's

11   cause to shorten.

12       So we say, I think quite reasonably, why can't you -- why

13   are you pushing it out?  In fact, if the Debtors today were

14   prepared to keep to the schedule that was in the Procedures

15   Motion, they would have been telling all the contract parties

16   the assumption and rejection decisions in early November.  And

17   there were suggestions in the papers and in the press that the

18   Confirmation Hearing is not likely to occur until December.  So

19   if they kept to the early November deadline everyone would

20   still have adequate notice and an ability to determine what to

21   do.

22       But again, I'm not volunteering for everybody else in the

23   world.  I just say with respect to the three contracts involved

24   with SABIC, the LLC Agreement with PBR -- that's important,

25   Your Honor, because we don't even think it's an executory

34

1   contract, but we don't know what the Debtors think.  And until

2   they tell us whether they regard that as something they can

3   assume or not, that has a huge impact on PBR.  And in the case

4   of Peugeot, it's one long-term contract.

5        So we have an LLC agreement and four contracts that they

6   have to pull out of the mass of 300,000 and just tell us 25

7   days before and not 7 days before what they're gonna do.  And

8   that's what the rules require.

9        THE COURT:  Well, as far as the rule applying to notice of

10  a Motion to Assume or Reject a Contract, that's complied with,

11  right?

12       MR. RICHMAN:  I'm -- I didn't hear your question.

13       THE COURT:  The rule governing the period of notice for a

14  Motion to Assume or Reject a Contract, that's complied with,

15  right?

16       MR. RICHMAN:  Yes, that's correct, but I --

17       THE COURT:  There's sufficient notice to determine any

18  objection over cure, adequate assurance or whether it's

19  executory or not.

20       MR. RICHMAN:  I think the difference here is that it's

21  inextricably intertwined with the feasability of the plan, our

22  rights to object to plan confirmation, which are wrapped into

23  the 25 day notice requirement of Rule 2002.  So, you know, I

24  would in some cases -- and I'm aware of cases where parties

25  acquiesce in shorter time periods for assumption, rejection and

35

1    then cure rights are litigated beyond that, but here we have

2    situations where with each of the clients, they may decide they

3    may need to contest plan confirmation itself.  So then the

4    question is is there cause to give them only effectively 7 days

5    notice of that?  Because that, in substance, is what happens

6    here if they don't learn until 7 days before the objection

7    deadline whether their contracts are gonna be assumed or

8    rejected.

9        THE COURT:  They're not going to --

10       MR. RICHMAN:  And there doesn't seem to be cause to do

11   that.

12       THE COURT:  They're not going to think about this issue

13   until 7 -- until they get the notice?  Why aren't they capable

14   of thinking in the alternative, starting with the more than 25

15   notice that they'd get?

16       MR. RICHMAN:  Well that's what I've asked.  I -- that is -

17   -

18       THE COURT:  No, no.  Why can't they think --

19       MR. RICHMAN:  Oh, you're saying why aren't the clients?

20   Well then --

21       THE COURT:  -- to themselves, well, we'll object if it's

22   rejected and we won't object if it isn't rejected.

23       MR. RICHMAN:  The question is the economics of the effort

24   required to contest a plan, because if there's gonna be a full

25   contest on a plan, which may include discovery, which may --

36

1    which could be extensive, which may include briefing, which may

2    include experts, all of those rights -- for them to have to

3    invest in a potential objection before they find out what's

4    gonna happen to their contracts is totally unfair.  And again,

5    no cause.

6        THE COURT:  Everything other than the objection itself

7    follows the objection, doesn't it?

8        MR. RICHMAN:  Well, Your Honor --

9        THE COURT:  You wouldn't take discovery before you object?

10       MR. RICHMAN:  Right, but my point is to prepare, you're

11   either forcing the parties to have to mount a contest within 7

12   days or you're saying go ahead and spend all the money and

13   invest in the litigation anticipating that.  Either way isn't

14   fair.  Either way compromises our due process rights, but more

15   fundamentally, you're putting the burden, I think, with these

16   questions on my clients to justify why they can't do it in 7

17   days.  The rules and the Code say the burden should be on the

18   Debtors to justify why they can't do it in more than 7 days.

19       THE COURT:  Well, I guess I don't really see why the

20   decision to assume or reject is really part of the plan.

21       MR. RICHMAN:  Because the --

22       THE COURT:  I understand it's relevant to your clients'

23   decision whether to object or not to the plan, but it's not --

24   it's a separate motion.  They can withdraw the motion.  They

25   can say I've decided not to do it.

37

1        MR. RICHMAN:  If there are what we would be believe to be

2   incorrect decisions with respect to assumption or rejection,  I

3   mean, the PBR case is the easiest one because if they try to

4   assume an LLC agreement that we believe was validly and legally

5   terminated, that would be a legal objection to plan

6   confirmation.  You're right, they could carve it out.  They

7   could try to address it in some other way, but that would be an

8   objection to confirmation.  But there's also an objection on

9   feasability grounds depending on the economics of the

10  assumption rejection decisions that apply to all 300,000

11  contracts.

12       THE COURT:  But doesn't that enter into the business

13  judgment standard of determining whether to assume or reject?

14  If the decision to assume the contract renders the plan not

15  feasible, then wouldn't I deny the Motion to Sssume as an

16  improper exercise of business judgment?

17       MR. RICHMAN:  You might, but that is a different issue

18  than the question of how much notice we should be able to get

19  of these decisions in order to have the rights that the

20  bankruptcy rules provide.  And so I say again, why can't the

21  Debtors -- if the Confirmation Hearing isn't going to be until

22  December -- if when they filed the Procedures Motion they were

23  prepared to announce their assumption rejection decisions on

24  all 300,000 contracts by early November, what prevents them

25  from taking the five or six contracts for our three sets of

38

1    clients and telling us 25 days beforehand what they're gonna do

2    with our contracts?  Why -- what is their cause for not doing

3    that?  I don't understand that.  There's no record of that.  So

4    I stand on the rules.  The rules say I should get 25 days.

5         THE COURT:  Well, they got an extension of the time to

6    assume or reject until a period after confirmation.

7         MR. RICHMAN:  That's --

8         THE COURT:  They have the right to make the decision

9    later, frankly, if they want to.

10        MR. RICHMAN:  If the right to make the decision later

11   compromises the disclosure obligations --

12        THE COURT:  Oh, I understand that, but I'm not sure it

13   does.  But why don't I hear from Mr. Butler on this.

14        MR. BUTLER:  There are a couple of items, Your Honor.  I

15   think the Court has had, over the course -- and I think can

16   take judicial notice of the record made in this case about the

17   300,000 contracts that we deal with with our suppliers and the

18   dynamic nature of our supply base.  The company is very

19   actively involved in evaluating these things.  It's in a

20   renewed ground of negotiations as we speak with virtually all

21   of its suppliers, going through and sorting those through as we

22   prepare to look into the 2008 year.  And the Debtors want the

23   maximum amount of time to be able to maximize value for the

24   benefit of the estates to review and make the final decisions

25   on these agreements.  The Debtors are vehemently opposed to

39

1    giving special treatment to Mr. Richman's clients over and

2    above other clients -- I mean, other -- rather other potential

3    suppliers.

4        Mr. Richman's got lots of procedural rights available to

5    him.  If they want a decision made earlier about their Motions

6    to Assume or Reject, they can file a Motion Seeking to

7    Terminate or Shorten the Time to make that and demonstrate

8    cause.  Apparently, they don't want to do that.  They don't

9    want to come to the Court under the provisions available to

10   them in the Bankruptcy Code to have those decisions made.  They

11   want to try to use this procedural objection to get the same

12   benefit.

13       And I do think, Your Honor, that there is a record in this

14   case about the need for the Debtors to maximize value of the

15   supply chain.  I think the Court has heard extensive testimony

16   over the last several years in connection with approval of the

17   caps procedures, of the Assumption Procedures Motion and some

18   of the other matters in this case about the detailed amount of

19   work and analysis that goes into that, and it's occurring again

20   right now.

21       And Your Honor, we believe that there is cause for giving

22   the Debtors the opportunity to maximize value, and there's no

23   prejudice to Mr. Richman's clients because as Your Honor

24   pointed out, even the mechanics of our plan, as well as the

25   Bankruptcy Code, gives them plenty of time dealing with any

40

1    assumption or rejection decision that might be made as it

2    relates to cure, as it relates to adequate assurance, as it

3    relates to any of the other issues that may be important to

4    them.

5         And Your Honor, we would argue in light of the number of

6    contracts, in light of Your Honor having previously extended

7    with respect to the -- that only applied to non-residential

8    property leases, Your Honor, of theirs but, obviously, the

9    company has an extended period of time to make these assumption

10   and rejection decisions as we go forward.

11        And the only final point that I would make here is that in

12   terms of being able to file an objection, Mr. Richman could

13   file an objection today, if he wanted to, to confirmation.  The

14   Plan's on file.  He could file that objection today and reserve

15   whatever rights are important to his clients if that's what he

16   wanted.  The litigation of that objection is not going to occur

17   -- on any of the objections is not going to occur until after

18   we get past the objection deadline in any event, and we have

19   scheduled conferences and deal with those.

20        There are many ways Mr. Richman can protect his clients.

21   What he's trying to do here is to get a special deal for them

22   where they're treated ahead of the other 299,950 contracts.

23   And Your Honor, I think the Court should -- and I don't, by the

24   way, believe that Mr. Richman can, you know, actually stand by

25   the view that it's a violation of practice here for the company

41

1    to seek this 7 day deadline as provided for in the Plan or

2    Disclosure Statement.

3        THE COURT:  Okay.  Well, Section 1125(a)(1) of the Code

4    provides or defines adequate protection as information of the

5    kind and in sufficient detail as far as is reasonably

6    practicable in light of the nature and history of the Debtor

7    and the condition of the Debtor's books and records that would

8    enable a hypothetical, reasonable investor typical of holders

9    of claims or interests of the relevant class to make an

10   informed judgment about the plan.

11       I do not believe that the Debtors' decision whether to

12   assume or reject the contracts of Peugeot, PBR and SABIC is so

13   material that it would affect the decision of a hypothetical,

14   reasonable investor in any of these classes to decide whether

15   to assume or reject the Plan.  So consequently, that

16   information does not need to be provided as part of the

17   Disclosure Statement.

18       That raises or leaves the separate issue of whether those

19   three objectants have, under the bankruptcy rules, adequate

20   notice of their opportunity to object to the Plan.  And whether

21   they have that, I believe, is somewhat informed by Section

22   1123(b)(1) of the Code -- I'm sorry, (b)(2) of the Code, which

23   provides that a plan may, subject to Section 365 of this title,

24   provide for the assumption, rejection or assignment of any

25   executory contract or unexpired lease of the Debtor not

42

1    previously rejected under such section.  That is, I believe,

2    that the Code is drafted so that as long as there is sufficient

3    notice under the bankruptcy rules pertaining to motions in

4    connection with or pursuant to Section 365, parties to

5    executory contracts and unexpired leases will have sufficient

6    notice of the Debtors' decision to assume or reject.  It's

7    indisputable here that if the schedule is filed when the

8    Debtors say they'll file it that parties to executory

9    contracts, such as Peugeot and the other two objectors, will

10   have adequate notice of the Motion to Assume or Reject.

11       I do not believe that the Plan itself must set forth

12   whether the Debtors intend to assume or reject these contracts

13   now or within 25 days of the objection deadline for Peugeot and

14   the other objectors to make the decision whether to object or

15   not to the Plan.  They know what their contracts provide.  They

16   know that there is a binary decision that the Debtors are going

17   to make whether to assume or to reject.  They can anticipate a

18   rejection and plan their objection to the Plan accordingly.

19   And consequently, I believe they have sufficient notice to do

20   so, although my practice, generally, is to provide a 10 day

21   notice, which gives people more than enough time to prepare an

22   objection, which I would assume they would have outlined in

23   advance and done the sufficient planning for in advance since,

24   obviously, organizations like Peugeot are capable of thinking

25   into the future and don't have to wait until they get the

43

1    notice to start thinking about whether they want to object or

2    not.  But that 10 day period would be subject to modification

3    for good cause.  If, for example, the Debtor was in the middle

4    of negotiations with the party and the like or was overwhelmed

5    with dealing with a whole series of negotiations.

6        So one of my comments, generally, on these -- on the

7    Disclosure Statement was to recommend that you make the exhibit

8    deadline the 10th -- 10 days before the objection deadline, as

9    opposed to 7, subject to your coming back to me and saying,

10   well, we missed the deadline, in this particular instance, for

11   a good reason and which didn't prejudice a party.

12       MR. BUTLER:  Your Honor, we will take that guidance, put

13   it in the timetable, and when we come back on -- for the second

14   day of the hearing we will present that to the Court.

15       THE COURT:  Okay.  All right.

16       MR. BUTLER:  Thank you, Your Honor.  Your Honor, the next

17   objection on the -- that is before the Court on Exhibit-8 is

18   Docket #9674.  This is the Ace Companies.  I'm pleased to

19   report, Your Honor, this objection has been settled.  Ace is

20   represented by Ms. Simkulak here in the Court from the Duane

21   Morris firm.  We have agreed on language to Section 2.1 of the

22   Plan, which is set forth in the blackline.  And Ace did ask

23   that I make a statement on the record that Ace is not

24   consenting to any rejection of their contract and none is

25   implied by anything that we have said or done.  There's

44

1     actually a --

2          THE COURT:  Well, you have a stipulation --

3          MR. BUTLER:  We do, Your Honor.

4          THE COURT:  -- assuming the contract.

5          MR. BUTLER:  So -- we do.  So -- but they wanted us to say

6     on the record that we're -- that they're not consenting to

7     rejection.

8          THE COURT:  All right.

9          MR. BUTLER:  I've made that statement, as I was asked to

10    do.

11         THE COURT:  Okay.  I saw the language in your blackline

12    and that's acceptable.  As you all probably know, I'm generally

13    opposed to elaborate reservations of rights that already exist

14    because at a minimum they distract everybody, and at their

15    worst they then cause bells to ring in other peoples' minds to

16    say, well, if these are reserved maybe I didn't have what I

17    thought I had.  But the language you've agreed to is fine.

18         MR. BUTLER:  Thank you, Your Honor.  The next objection,

19    Your Honor, is Docket #9677.  It's Bank of America, and Mr.

20    Berger is handling that matter for the Debtors.

21         THE COURT:  Okay.  And I believe we have Bank of America's

22    counsel on the phone, correct?

23         MR. GREGG:  Yes, Your Honor, John Gregg on behalf of Bank

24    of America.

25         THE COURT:  Okay.

45

1          MR. BERGER:  Good morning, Neil Berger of Togut, Segal &

2      Segal for the Debtors.  Mr. Gregg is on the phone.  I think

3      it's fair to say that his objections boil down to three issues,

4      and I'll let him present each in particularity, but one is

5      whether or not the Debtors are disclosing in the Disclosure

6      Statement whether or not they are going to honor existing

7      guarantees -- execute new guarantees.

8          As you recall, Your Honor, Bank of America has two

9      aircraft leases.  They've been before this Court four prior

10     times, now a fifth time today.  The Debtor -- I'm sorry, Bank

11     of America also objects to the cure procedures in the

12     Disclosure Statement that describe the plan procedure for

13     assumption and rejection and adequate protection procedures.

14     And finally, they are concerned about the continuing effect of

15     a prior stipulation that provided them with certain rights

16     regarding the assumption and rejection of these lease

17     agreements.

18         We have modified the Disclosure Statement, particularly in

19     the restructuring transactions, to address the guarantee issue

20     to make clear that the Debtors will be authorized to execute

21     guarantees if they deem it appropriate in their business

22     judgment in connection with the restructuring transactions.

23     And that generally would apply as well to assumption and

24     rejection procedures.

25         The other two objections, Your Honor, we think go to the

46

1    Plan.  We have provided the blackline of the Disclosure

2    Statement to Mr. Gregg and I'll leave it to him to respond to

3    those changes.

4         THE COURT:  Well, what changed, just so I'm aware of it?

5    I saw the reference to guarantees in the restructuring

6    transactions, but the other blackline is where?

7         MR. BERGER:  I'm sorry, Your Honor.  It's one change.

8    It's the 7.3 of the restructuring transactions, and it's

9    subsection (b), "The execution and delivery of appropriate

10   instruments of transfer, assignment, assumption," and we've

11   inserted "guarantee" --

12        THE COURT:  Right.

13        MR. BERGER:  -- specifically to address this concern.  And

14   --

15        THE COURT:  But I thought you referenced some other

16   language too, in addition to that language.  Or did I mishear

17   you?

18        MR. BERGER:  Maybe I wasn't articulate, Your Honor.

19        THE COURT:  Okay.  All right.  So --

20        MR. BERGER:  That is the guarantee provision that we've

21   added.  What I've made reference to is that there is a

22   procedure in the Plan of Reorganization that was drafted today,

23   as described in the Disclosure Statement, that deals with

24   adequate assurance and future performance provisions, which

25   would -- and it's language is broad enough to deal with this

47

1   particular issue.

2          THE COURT:  All right.  And that was in the original

3   language, you haven't changed that?

4          MR. BERGER:  No, no, Your Honor.  We don't think that it

5   needs to be changed.

6          THE COURT:  Okay.

7          MR. BERGER:  This is a global issue and we don't --

8          THE COURT:  All right.

9          MR. BERGER:  -- think that we need to negotiate one- offs.

10         THE COURT:  Okay.  All right.  Mr. Gregg, does that

11  resolve your issues?

12         MR. GREGG:  I believe so, Your Honor.  I had a little

13  difficulty in hearing Mr. Berger, but based on the

14  modifications to the Plan and Disclosure Statement that were

15  circulated last night, Bank of America will withdraw its

16  objection with respect to the failure to disclose the

17  possibilities that new guarantees may need to be executed.

18         Bank of America also will withdraw its objection to the

19  Solicitation Procedures Motion and will also withdraw its

20  objection with respect to the procedures for assumption set

21  forth in Section 9(g)(2)(b) of the Disclosure Statement but, of

22  course, reserve its right to make an objection at a later date

23  as part of the Debtors' attempt to confirm their Plan.

24         THE COURT:  Okay.

25         MR. GREGG:  One remaining issue that Bank of America has

48

1    is that Section 9(g)(2)(b) states that the Debtors shall --

2    excuse me -- shall solely provide cure, and I believe that that

3    objection can be resolved if the Debtors will be so kind as to

4    affirmatively state that they are not seeking to preclude the

5    right of a party to adequate assurance of future performance

6    and are, in fact, disclosing that either through the definition

7    of a cure or through later language in Section 9(g)(2)(b) of

8    the Disclosure Statement.

9        THE COURT:  That's how I read the definition of cure and

10   the adequate assurance discussion in the Disclosure Statement,

11   but, Mr. Berger, do you read it differently?

12       MR. BERGER:  Your Honor, I don't think there's anything

13   that needs to be changed.  The definition --

14       THE COURT:  Okay.

15       MR. BERGER:  -- of cure is what it is and we think it

16   encompasses this concern.

17       THE COURT:  It encompasses monetary and non-monetary cure,

18   and adequate assurance may include providing assurance of the

19   type of support that may involve a non-debtor, for example,  if

20   that's in the agreement.

21       MR. BERGER:  That's right.  And Your Honor, in the

22   adequate assurance procedure described in the Plan, the

23   language has "any other matter" --

24       THE COURT:  Right.

25       MR. BERGER:  -- is broad enough to encompass anything like

49

1   this.

2       THE COURT:  Okay, and that's how I read it, with the --

3   particularly with the addition of the word "guarantee" in the

4   restructuring transaction, I think there's no hole.

5       MR. BERGER:  Thank you, Judge.

6       THE COURT:  Okay.

7       MR. BUTLER:  Your Honor, the next objection on Exhibit-8

8   is Docket #10398, the Lead Plaintiffs, which was a reservation

9   of rights provision.  I think we are -- there's Mr. Etkin.  I

10  was looking and he was blocked by -- behind me.  I think we

11  have substantially resolved our language changes with Mr.

12  Etkin, but I'm going to let him comment on the record.

13      MR. ETKIN:  Good morning, Your Honor.  We had been in

14  discussions with the Debtor concerning some language changes to

15  the Disclosure Statement and changes that would be required

16  under the Plan based upon those changes in advance of the

17  hearing.  We have been in discussions.  The Debtor did extend

18  our objection deadline until 1 p.m. on Monday.  We did file the

19  protective objection.  We continue to discuss certain of the

20  issues.  We've gotten some additional language from the Debtors

21  that we're reviewing.

22      I must apologize, I didn't have the opportunity since last

23  night to review the blackline.  Thumbing through it during the

24  course of the hearing this morning, it looks like several of

25  the things that we had discussed that the Debtor indicated

50

1   would be modified or some language would be added has been

2   included.  So we'll continue with those discussions going

3   forward, and hopefully we'll have nothing to say on the 25th.

4        THE COURT:  Okay.  And let me say I looked through the

5   blackline as well just since I got it this morning, and the

6   language not only seems to me to be appropriate, but in a

7   couple cases, answers a question I had.  So certainly as far as

8   the changes are concerned, I didn't have any problem with them.

9        MR. ETKIN:  I appreciate that --

10        THE COURT:  And if you have others, I imagine they'll be

11   of a similar nature and they can be dealt with at the continued

12   hearing.

13        MR. ETKIN:  Right.  Our primary focus, Your Honor, is

14   consistency between the MDL settlement agreement and the --

15        THE COURT:  Right.

16        MR. ETKIN:  -- Plan and Disclosure Statement.

17        THE COURT:  Okay.

18        MR. ETKIN:  Thank you, Your Honor.

19        MR. BUTLER:  One moment, Your Honor.

20        (Pause in proceedings)

21        MR. BUTLER:  Your Honor, I just wanted to make sure that

22   the procedural record's correct here with respect to Docket

23   #10398, and that is -- and based on the comments made on the

24   record, the Debtors would agree that that objection could be

25   continued to the second day of the hearing, provided that Mr.

51

1    Etkin would provide by the supplemental objection deadline, if

2    there's anything still outstanding, a supplemental objection

3    that states what it is in particularity so we know what we're

4    dealing with.

5         THE COURT:  Right, and that goes for everyone who's gotten

6    an extension.  And obviously this doesn't work unless people

7    give the language in.  Okay.

8         MR. BUTLER:  Your Honor, the next objection in Exhibit-8

9    is Docket #10413.  This is an objection of the Skilled Trade

10   Employees, Adelco Electronic Systems, and they are all

11   employed, I believe, at the Oak Creek Wisconsin plant. And

12   their objection is that the plant ought to remain open and that

13   examination of financial records be used -- be reviewed to

14   determine how Delphi came about its Transformation Plan.

15        Your Honor, from the Debtors' perspective, while we

16   respect the right of our employees to express their views, we

17   don't think either of these objections are cognizable

18   objections to the Disclosure Statement Hearing, and they're

19   either an objection to confirmation, or as we would argue if

20   they're pressed at that time, they're actually time barred by

21   the UAW-MOU approval, which is a final order.  And these

22   matters that they're concerned about, including the closing of

23   that plant, is provided for in the UAW-MOU, which has already

24   been reviewed by the Court and is a final order.

25        We respect that there can be differences of views over

52

1   that subject, but we don't believe there's a cognizable

2   objection for today's hearing.

3       THE COURT:  Okay, is anyone here on behalf of these

4   objectors?  All right, I will overrule this objection.  This is

5   the Debtors' Disclosure Statement.  The Debtors are not

6   required to set forth other parties' views on the Debtors'

7   decision making process.  The Disclosure Statement itself

8   contains adequate information on the two issues relevant to the

9   plant closing.  Those are the steps the Debtor has taken in

10  connection with their transformation plan, as well as the

11  description of the Debtors' negotiations with an ultimate

12  resolution with their unions regarding, among other things,

13  plant closing issues.  So the information in the Disclosure

14  Statement is adequate on this point.

15      MR. BUTLER:  Thank you, Your Honor.  Your Honor, the last

16  objection on Exhibit-8 is Docket #10414.  This is the objection

17  of Ernest A. Knobeispiesse.  Mr. Knobeispiesse is a retiree, an

18  executive retiree of Delphi, and he's complaining about the

19  treatment of the Supplemental Executive Retirement Program, or

20  SERP, in connection with the Disclosure Statement and Plan.

21      Your Honor, we believe -- I'm going to make two comments

22  about this particular motion.  I think -- in reviewing his

23  letter even again this morning, I think Mr. Knobeispiesse did

24  point out one issue that we are clarifying in the Disclosure

25  Statement, and that is in the summary of the Disclosure

53

1    Statement, the summary in the front part does not clarify what

2    we've said throughout the Disclosure Statement, which is

3    estimates of recovery are based on plan valuation.  And so when

4    we speak of par plus accrued recovery for a particular class,

5    it's based on it's at-plan value.  And valuation may or may not

6    a  subject of content at the Confirmation Hearing, but that's

7    the fact.  And we have -- we're going to clarify those charts

8    to make sure that that modification is made.

9        As to the balance of Mr. Knobeispiesse's objection, we

10   don't think it's cognizable at the Disclosure Statement

11   Hearing.  It may be that he will choose to press a objection at

12   confirmation, although I'm not sure he fully understands the

13   proposed treatment of the retired SERP plans.  They're part of

14   the general unsecured class, and they will be able to file a

15   claim under the deadline set forth in the Plan.  There's a

16   special SERP deadline because they were not under the original

17   bar date -- limited under the original bar date, so there'll be

18   a supplemental bar date for them.  And as those claims are

19   dealt with in the claims process, those parties will have the

20   opportunity to have claims determined in the claims process,

21   and ultimately, they will be entitled, if the claim is allowed,

22   to a lump sum payment in Plan currency as that's determined

23   under the Plan.

24       And Mr. Knobeispiesse, in his relief request, seemed to be

25   asking for something along those lines, although he did say

54

1  he'd like it all kicked --

2       THE COURT:  He wanted all cash --

3       MR. BUTLER:  He wanted either all stock or all cash at his

4  option.  I don't think any of the parties, principle parties,

5  are going to provide that option to Mr. Knobeispiesse. But in

6  terms of actually being able to address maybe part of his

7  concerns, they may actually have been addressed in the

8  construct of the Plan.  So we would ask -- we would indicate

9  we'll make the one modification indicated on the record and ask

10 that the objection otherwise be overruled.

11      THE COURT:  All right, is Mr. Knobeispiesse here or on the

12 phone?  All right, I reviewed his objection.  I actually

13 believe he did understand the treatment provided for his claim

14 under the Plan, he just didn't like it, and that's clearly a

15 Plan objection; it's not appropriate to be raised at this stage

16 of the case.  The Debtors have even improved the description of

17 that treatment by the change that Mr. Butler just described, so

18 on that basis, the objection will be overruled.

19      MR. BUTLER:  Thank you, Your Honor.  Your Honor, that

20 disposes of all of the objections to the Disclosure Statement

21 that have been filed, with the exception of those parties who

22 are -- have been on this record classified as potential

23 objectors that have the benefit of the extended objection to

24 supplemental objection deadline of Friday October 19th, at 4

25 p.m., assuming that's acceptable to Your Honor.  So at this

55

1    point, Your Honor, I'd like the Court to consider the Debtors'

2    request to continue this matter to a second hearing date for

3    continuation of the Disclosure Statement Hearing at 1 p.m.

4    Eastern Daylight Time or -- I think it's still Eastern Daylight

5    Time on that date, but if it's not, prevailing Eastern Time on

6    Thursday, October 25th, and to establish the supplemental

7    objection deadline at 4 p.m. on Easter Daylight Time on Friday,

8    October 19th.  And if that's acceptable to the Court, we will

9    submit an order to the Court dealing with the matters

10   determined on this record today and with the schedule and the

11   continued hearing date.

12       THE COURT:  Okay, those deadlines and that hearing date

13   are fine with me, so I'll continue the hearing to then.  I

14   thought what I would do, though, I had just three or four

15   questions and/or comments on what you gave me.  Some of them

16   have already been dealt with by the blackline and by a couple

17   of your comments on the record, but I thought it would be

18   worthwhile to go through them in any event, to the extent they

19   haven't been.

20       The summary treatment of the general unsecured claim class

21   --

22       MR. BUTLER:  I'm sorry, Your Honor?

23       THE COURT:  The summary treatment of the general unsecured

24   claim --

25       MR. BUTLER:  Yes.

56

1      THE COURT:  -- class that appears on page Roman numeral

2   XVI --

3      MR. BUTLER:  Yes,

4      THE COURT:  -- there's a -- this may just be a typo that

5   you're already going to fix, but the bolded language that

6   begins, "Funded debt claims of 2.5 billion," I just found that

7   language confusing.  It's different than the other -- it

8   includes other classes -- it just didn't -- I didn't know what

9   you were trying to get at there.  And it's different than --

10     MR. BUTLER:  Your Honor, I'm trying to track where you are

11  at the moment.

12     THE COURT:  Oh, okay.

13     MR. BUTLER:  Is it Romanette XV or XVI?

14     THE COURT:  XVI, DS XVI, it says "Class Description,

15  Treatment Under the Plan, General Unsecured Claims."

16     (Counsel confer)

17     THE COURT:  Anyway, it -- I wasn't -- I just found that

18  language confusing where it begins, "funded debt claims of 2.5

19  billion plus other general unsecured claims of 1.7 billion or

20  less."  But then it says, "which amount is inclusive of cure

21  claims and the treatment provided to section 510(b) note

22  claims."  It just -- given that 510(b) note claims and 510(b)

23  equity claims and ERISA claims are a separate class, I found

24  this language confusing.

25     MR. BUTLER:  Your Honor, we will try to clarify that.  The

57

1    reality of that language is that we're trying to cover what's

2    in the $1.7 billion cap, the GUCC cap you --

3        THE COURT:  Oh, all right.

4        MR. BUTLER:  -- the G-U-C-C cap.

5        THE COURT:  Okay.

6        MR. BUTLER:  And the 1.7 billion that many of us in the

7    room have spent a lot of time negotiating about included the

8    value that's being accorded to the MDL settlement.

9        THE COURT:  All right, but they're not --

10       MR. BUTLER:  That's inclusive in the 1.7 --

11       THE COURT:  But they're not in this class.

12       MR. BUTLER:  No, they're in the separate classes, but it

13   counts against the 1.7.

14       THE COURT:  All right, well, maybe that's --

15       MR. BUTLER:  So we'll have to -- we will work on a way to

16   clarify that --

17       THE COURT:  Yes, okay.  Because the 1.7 is more of a

18   condition than a --

19       MR. BUTLER:  Yes.

20       THE COURT:  -- treatment mechanism.

21       MR. BUTLER:  I think that's right, Your Honor.

22       THE COURT:  So I think that's what was confusing to me.

23   All right.  This is just a question, you point out -- I think

24   the first time you point it out is at page 108 -- that there

25   are alternatives to exercising the rights.  You can get value

58

1   as a shareholder even if you don't exercise the rights; you can

2   sell your shares, you can sell the rights.  And my question is

3   -- and I don't know the answer, but I'd like someone just to

4   focus on it.  Do you need, as a public company, to do anything

5   in terms of disclosure beyond this in connection with people

6   selling their shares and, more particularly, selling the rights

7   today?  I don't know the answer to that.

8       MR. BUTLER:  We --

9       THE COURT:  Do you need to file a document under the

10  securities laws?

11      MR. BUTLER:  We have been examining that, Your Honor, and

12  will continue to focus on that.  We've been consulting with the

13  Equity Committee on these issues.  Some of the language you

14  pointed to on 108 has been at the request of the Equity

15  Committee because we're trying to, while preserving all of the

16  obligations we have in connection  the S1 in dealing with the

17  (indiscern.) and the separate registration statement, we are

18  trying to provide information to the parties that may have the

19  ability to have these benefits.  And what you haven't seen yet

20  but hopefully will see on the 25th, there's a being circulated

21  a draft of a proposed Equity Committee letter that would

22  accompany the solicitation package that would address this, but

23  both Fried Frank and Skadden have been focused on those issues

24  --

25      THE COURT:  All right.

59

1          MR. BUTLER:  -- in some detail.

2          THE COURT:  All right, I just wanted to make sure you were

3     and I'm glad you are.  And again, this is separate from,

4     obviously, the registration in S1.

5          MR. BUTLER:  Right.

6          THE COURT:  It's only to deal with an interim period where

7     you're telling people you can realize value on these things in

8     advance of the S1 and the registration.  I don't know whether

9     you need it or not.  And then I didn't get a chance to look

10    closely enough at the revisions dealing with the MDL settlement

11    to know whether you've dealt with these issues or not, but the

12    first one comes up twice, I think, on page 120 and also page

13    185.  At the bottom of page 120 you have a discussion of what

14    happens to opt-outs.

15         MR. BUTLER:  Yes, Your Honor.

16         THE COURT:  It says, "If any class members opt out of the

17    security settlement and ultimately receives an allowed claim in

18    the Debtors' Chapter 11 cases, the amount received the opt out

19    class member to satisfy such claim will be deducted from the

20    amount used to satisfy the Lead Plaintiffs in the securities

21    settlement."  It doesn't really say, though, where -- what

22    treatment do they get.  It says what's deducted, but do they

23    get the same thing, or do they get -- do they fall under the

24    Unsecured Creditor class or where do they go?

25         MR. BUTLER:  No, we can clarify that.  They get the same

60

1    treatment in the same class.  There were no opt-outs in  the

2    ERISA section, this is just the security section, the security

3    settlement, and they would get the treatment in that class --

4         THE COURT:  All right.

5         MR. BUTLER:  -- and it would be a deduction.  I think the

6    class language actually says that.  We'll clarify it in these

7    languages.  I will point out, Your Honor, that since we drafted

8    the Disclosure Statement and filed it, we've been in the claims

9    administration process.  I think virtually all of the MDL

10   claims that were provided by -- filed by potential opt- outs

11   and people who could have then asserted an opt-out have been

12   expunged --

13        THE COURT:  Okay.

14        MR. BUTLER:  -- I think, so we ware talking about a very

15   small universe of people that may take advantage of that. And

16   we actually may want to address that particular point, which is

17   a new development in the Disclosure Statement as well.  But we

18   did -- we were obliged to seek to expunge those.  We did do

19   that in September, and I think most of those are now gone

20   because it's at least the Debtors' position, Your Honor, you

21   know, you can do whatever you want to in the District Court

22   from an opt-out perspective, but if you are gonna assert a

23   claim in this estate --

24        THE COURT:  You have to beat the bar date.

25        MR. BUTLER:  -- you had to meet the bar date relating to

61

1    that issue.

2         THE COURT:  All right, well, in any event, I think if you

3    don't specify what the treatment is here and on page 185 just

4    briefly, people get confused.  And then also on page 185 at the

5    top, you give sort of a warning about what will happen if

6    people opt out and then their claim is ultimately allowed.  My

7    take from this, but you may want to be more specific, is that

8    by that point, everything may have been distributed, and so

9    they won't get anything even if their claim is allowed, unless

10   there's a reserve provided for in the MDL settlement for opt-

11   outs.

12        MR. BUTLER:  We'll take a look at that, Your Honor, as

13   well.

14        THE COURT:  Okay.

15        MR. BUTLER:  We'll talk to Mr. Etkin about that

16   (indiscern.).

17        THE COURT:  All right.  And I haven't looked at the

18   distribution mechanism yet under the MDL to see whether it

19   would be a reserve or an opt-out.

20        MR. BUTLER:  Well, from the MDL, at least what's intended,

21   Your Honor, is that on or shortly after the effective date, the

22   consideration in the MDL classes will be transferred by the

23   Debtor to the agents established by the MDL in the District

24   Court.  So it's the -- it's Garden City and the MDL -- the

25   escrow agents in that settlement, the District Court

62

1  settlement, that will handle all of that claims administration

2  and all of those distributions.  We simply have to deliver the

3  corpus of the Plan currency to them --

4      THE COURT:  Okay.

5      MR. BUTLER:  -- so we have one distribution under this

6  approach.

7      THE COURT:  Okay.  All right, and then on page 121, it

8  talks about the use of the insurance proceeds in connection

9  with the MDL, and it says, "The Lead Plaintiffs will also

10 receive a distribution of insurance proceeds up to 88.6

11 million, including the remainder of any insurance proceeds that

12 are not used by the aid to former directors and officers," and

13 I didn't -- that seemed confusing to me.  Do they -- does their

14 right to -- I mean, I thought their right to use insurance was

15 prescribed by the settlement, so I don't know what --

16     MR. BUTLER:  No, we'll clarify.  There's two issues there

17 and we'll be happy to provide some more clarity.  First, Your

18 Honor may recall that this Court entered an order earlier in

19 the case that allowed from the Tower B 100 million up to $5

20 million to be used.

21     THE COURT:  So maybe not previously used as opposed --

22     MR. BUTLER:  Right, but the top 5 million, at the time we

23 were doing the settlement, the question was what happens to the

24 unused portions of that $5 million, that's part of how that's

25 to address it.  In addition, there is -- under the Tower A

63

1    settlement arrangement, there is a portion of money that is set

2    aside for criminal and DOJ and SEC use by the -- I think it's

3    DOJ and criminal -- by the certain listed parties, and if it's

4    not used, that reverts back to the MDL --

5         THE COURT:  All right.

6         MR. BUTLER:  -- Plaintiffs.  So what we'll --

7         THE COURT:  Well, maybe -- maybe all you need to say then

8    is not used in the ways permitted by the settlement.

9         MR. BUTLER:  Right.

10        THE COURT:  I just didn't know if this was like an extra -

11   -

12        MR. BUTLER:  No.

13        THE COURT:  -- thing.

14        MR. BUTLER:  Those are the two sources if there are some

15   contingencies under the settlement agreement.

16        THE COURT:  All right.  Just two more points.  On page 174

17   -- I'll just give you this language.  I think rather than

18   saying, at the bottom of 174, "Under the Plan, many, if not

19   all, of these causes of action are unnecessary," I think you

20   should probably say, "Because of the Plan's treatment of

21   unsecured Creditors, the Debtors have determined that the

22   affirmative pursuit of many, if not all, of these causes of

23   action would not benefit their estates."  And I'll give you

24   that language.  It's a little more refined than just being

25   unnecessary.

64

1    MR. BUTLER:  I understand, Your Honor.

2    THE COURT:  And then the last point -- and you made -- I'm

3  glad you made the point up front that what's -- the value of

4  the recovery here is based on Plan value, and I don't think it

5  hurts to say in your risk section on 208 where you're talking

6  about the market for the new common stock to remind people

7  again that the market value of the new -- the market price of

8  the new common stock may increase or decrease, or the trading

9  value of the new common stock may increase or decrease from

10  Plan value based on numerous factors, including the market and

11  conditions extraneous to Delphi, as well as other risk factors

12  disclosed herein, so that people, some of whom are not

13  particularly sophisticated, will realize that it's not a

14  guarantee, but it's stock.

15    MR. BUTLER:  We'll make those changes as well, Your Honor.

16    THE COURT:  Okay, all right.  And then I will give you --

17  I had a couple of comments on the Plan that were in the nature

18  of typos, okay, so I will give those to you.

19    MR. BUTLER:  Thank you, Judge.

20    THE COURT:  And as well as a couple notes to myself to

21  remind you that where you are setting deadlines for various

22  parties to file claims or objections or the like -- and I

23  assume you're doing this; in fact, I confirmed it in a number

24  of places.  You're actually going to give them a separate

25  notice of that --

65

1       MR. BUTLER:  Yes, Your Honor.

2       THE COURT:  -- you're not going to just rely on the plan

3   for that.

4       MR. BUTLER:  No, Your Honor.  We'll give specific notice.

5       THE COURT:  Okay, so then I will see you on the 25th.

6       MR. BUTLER:  Thank you, Your Honor, we'll submit the

7   Scheduling Order to Chambers.

8       THE COURT:  Okay, thank you.

9       (Court adjourned)

10

11

12

13  Index

14                                                      Further

15  Direct Cross Redirect Recross Redirect

16

17  Witnesses For The

18    Committee:

19

20

21

22  Witnesses For The

23    Debtor:

24

25

66

MOTIONS:

| | | | Marked | Received |
|---|---|---|---|---|
| **EXHIBITS:** | | | | |
| D-1 | Disclosure Statement | | 17 | 18 |
| D-2 | Joint Plan | | 17 | 18 |
| D-3 | Blackline W/Revisions to DS | | 17 | 18 |
| D-4 | Blackline W/Revisions to Plan | | 17 | 18 |
| D-5 | Solicitation Motion | | 17 | 18 |
| D-6 | Notice | | 17 | 18 |
| D-7 | Order For Hearing | | 17 | 18 |
| D-8 | Reply W/Objections | | 17 | 18 |
| D-9 | Affidavit of Service | | 17 | 18 |
| D-10 | Affidavit of Service | | 17 | 18 |
| D-11 | Affidavit of Service | | 17 | 18 |
| D-12 | Affidavit of Publication | | 17 | 18 |
| D-13 | Affidavit of Publication | | 17 | 18 |
| D-14 | Affidavit of Publication | | 17 | 18 |
| D-15 | Affidavit of Publication | | 17 | 18 |
| D-16 | Affidavit of Publication | | 17 | 18 |
| D-17 | Affidavit of Publication | | 17 | 18 |

67

1   D-18    Affidavit of Publication         18      18

2   D-19    Affidavit of Publication         18      18

3   D-20    Affidavit of Publication         18      19

4

5

6   SUMMATION BY:

7   THE COURT: Finding

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

68

1

2                    **C E R T I F I C A T I O N**

3

4       I, Penina Wolicki, court approved transcriber, certify that the

5       foregoing is a correct transcript from the official electronic

6       sound recording of the proceedings in the above-entitled

7       matter.

8

9       _____ __October 4, 2007_____

10      Signature of Transcriber              Date

11

12      ___PENINA WOLICKI_____

13      typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25