## Exhibit B

## Bidding Procedures Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
     In re                            :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                  Debtors.     :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002
AND 9014 (I) APPROVING BIDDING PROCEDURES,
(II) GRANTING CERTAIN BID PROTECTIONS, (III) APPROVING
FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING
SALE HEARING DATE IN CONNECTION WITH SALE OF
INTERIORS AND CLOSURES BUSINESSES

("INTERIORS AND CLOSURES BUSINESSES BIDDING
PROCEDURES ORDER")

Upon the expedited motion, dated October 15, 2007 (the "Motion"), of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for

orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002,

6006, and 9014 (a) (i) approving the bidding procedures set forth herein and attached

hereto as Exhibit 1 (the "Bidding Procedures"), (ii) granting certain bid protections, (iii)

approving the form and manner of sale notices, and (iv) setting a sale hearing date (the

"Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of

substantially all of the assets (the "Purchased Assets") primarily used in the cockpits and

interior systems and integrated closure systems businesses of Delphi, with certain

exceptions described fully in the Agreement (as defined below), for a purchase price of

$80 million and other consideration, subject to certain adjustments, and post-closing

payments of approximately $26 million, free and clear of liens, claims, and encumbrances, to Inteva Products, LLC and certain of its affiliates (the "Buyers") pursuant to the Master Sale and Purchase Agreement, dated October 15, 2007, by and between Delphi and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities"),[1] and the Buyers (the "Agreement")[2] or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed U.S. Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and collectively with the Assumed U.S. Contracts, the "Assigned Contracts") to the Buyers or the Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Buyers or the Successful Bidder; and upon the record of the hearing held on October 25, 2007 with respect to the Motion; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.     The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

---

[1]     Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC, Delphi Automotive Systems (Holdings) Inc., and Delphi Technologies, Inc. Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

B.      This matter is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion is in the best interests of the

Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

D.      The notice of the Motion and the Hearing given by the Selling

Debtor Entities constitutes due and sufficient notice thereof.

E.      The Selling Debtor Entities have articulated good and sufficient

reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid

protections as provided in the Agreement and in this order, (iii) approve the manner of

notice of the Motion, the Sale Hearing, and the assumption and/or assignment of the

Assigned Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing

to be distributed to stakeholders and other parties-in-interest, including prospective

bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the

assumption of the Assumed U.S. Contracts to be filed with the Court and served on

parties to each Assumed U.S. Contract, and (vi) set the Sale Hearing.

F.      The Break-Up Fee and the Expense Reimbursement, as either, but

not both may be payable in accordance with the terms, conditions, and limitations of the

Agreement (together, the "Bid Protections"), (i) if triggered, shall be deemed an actual

and necessary cost and expense of preserving the Selling Debtor Entities' estates, within

the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) are of substantial

benefit to the Selling Debtor Entities' estates, (iii) are reasonable and appropriate,

including in light of the size and nature of the Sale and the efforts that have been and will

be expended by the Buyers notwithstanding that the proposed Sale is subject to higher or

3

better offers for the Purchased Assets, (iv) were negotiated by the parties at arms' length and in good faith, and (v) are necessary to ensure that the Buyers will continue to pursue their proposed acquisition of the Purchased Assets.  The Bid Protections were a material inducement for, and condition of, the Buyers' entry into the Agreement.  The Buyers are unwilling to commit to hold open their offer to purchase the Purchased Assets under the terms of the Agreement unless they are assured of payment of the Bid Protections.  Thus, assurance to the Buyers of payment of the Bid Protections promoted more competitive bidding by inducing the Buyers to hold their bid open.  Without the bid protections, other bidding would have been limited.  Further, because the Bid Protections induced the Buyers to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Buyers have provided a benefit to the Selling Debtor Entities' estates by increasing the likelihood that the price at which the Purchased Assets are sold will reflect their true worth.  Finally, absent authorization of the Bid Protections, the Selling Debtor Entities may lose the opportunity to obtain the highest or otherwise best available offer for the Purchased Assets.

    G.  A bid protection fee sharing agreement has been entered into by and among the Selling Debtor Entities and the Delphi non-Debtor affiliates which are parties to the Agreement, under which payment of the Break-Up Fee and the Expense Reimbursement would be allocated among the Delphi entities selling the Purchased Assets in accordance with the allocation of the purchase price under the applicable sale agreement and the terms of such fee sharing agreement; provided, however, that in instances in which one or more of the Delphi entities selling the Purchased Assets are responsible for the act or event giving rise to the Expense Reimbursement, such entities

shall be responsible for all of the Expense Reimbursement in proportion to their responsibility.

H.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Purchased Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

<u>Bidding Procedures</u>

1.      The Bidding Procedures, as set forth on <u>Exhibit 1</u> attached hereto and incorporated herein by reference as if fully set forth herein, are hereby approved shall govern all proceedings relating to the Agreement and any subsequent bids for the Purchased Assets in these cases.

2.      The Selling Debtor Entities may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of any official committee or significant constituent in connection with the Bidding Procedures, and (c) reject at any time before entry of an order of the Court approving a Qualified Bid any bid (other than the Buyers' bid) which, in the Selling Debtor Entities' sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Selling Debtor Entities, their estates, and their stakeholders. The Selling Debtor Entities are authorized (x) to terminate the Bidding Process or the Auction at any time if they determine, in their business judgment, that the Bidding Process will not maximize the value of the Purchased Assets to be realized by the Selling Debtor Entities' estates and (y) to seek Bankruptcy Court approval of the Agreement with Buyers.

5

Sale Hearing

3.        The Court shall hold a Sale Hearing on [_____] at 10:00

a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, Room 610, New York, New York 10004, at

which time the Court shall consider the sale aspect of the Motion, approve the Successful

Bidder, and confirm the results of the Auction, if any.  Objections to the Motion, if any,

shall be filed and served no later than 4:00 p.m. (prevailing Eastern time) on

[_____] (the "Objection Deadline").

4.        The failure of any objecting person or entity to timely file and

serve its objection by the Objection Deadline shall be a bar to the assertion, at the Sale

Hearing or thereafter, of any objection to the Motion, the Sale, or the Selling Debtor

Entities' consummation and performance of the Agreement (including the transfer of the

Purchased Assets and Assigned Contracts free and clear of liens, claims, and

encumbrances), with the exception of any objection to the conduct of the Auction or the

Selling Debtor Entities' selection of the successful bidder, which may be made at the Sale

Hearing.

5.        The Sale Hearing may be adjourned by the Debtors from time to

time without further notice to creditors or parties-in-interest other than by announcement

of the adjournment in open court or on the Court's calendar on the date scheduled for the

Sale Hearing or any adjourned date.

<u>Bid Protections</u>

6.      The Bid Protections are hereby approved, and any and all

objections to the Bid Protections that were not consensually resolved at or before the

Hearing are hereby overruled.   The Selling Debtor Entities' obligation to pay the Bid

Protections, as provided by the Agreement, shall survive termination of the Agreement

and, until paid in accordance with the Agreement, shall constitute a superpriority

administrative expense claim pursuant to section 507(b) of the Bankruptcy Code.   The

Selling Debtor Entities shall be authorized to pay either of the Bid Protections (but not

both) to the Buyers in accordance with the terms of the Agreement without further order

of the Court.

<u>Notice</u>

7.      Notice of (a) the Motion, (b) the Sale Hearing, and (c) the

proposed assumption and/or assignment of the Assigned Contracts to the Buyers pursuant

to the Agreement or to a Successful Bidder shall be good and sufficient, and no other or

further notice shall be required, if given as follows:

(a)      <u>Notice Of Sale Hearing</u>.  Within five days after entry of this
Order (the "Mailing Date"), the Debtors (or their agent) propose to serve the Motion, the
Agreement, the proposed Sale Order, the Bidding Procedures, and a copy of the Bidding
Procedures Order by first-class mail, postage prepaid, upon (i) the Office of the United
States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii)
counsel for the official committee of unsecured creditors appointed in these chapter 11
cases, (iv) counsel for the official committee of equity security holders appointed in these
chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with
respect to the Purchased Assets during the past six months, (vi) all entities known to have
asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets, (vii)
all federal, state, and local regulatory or taxing authorities or recording offices, including
but not limited to environmental regulatory authorities, which have a reasonably known
interest in the relief requested by the Motion, (viii) all parties to Assigned Contracts, (ix)
the United States Attorney's office, (x) the United States Department of Justice, (xi) the
Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

7

entities on the Master Service List (as defined by the Supplemental Order Under 11
U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014
Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And
Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management
Order")), and (xiv) such other entities that are required to be served with notices under
the Supplemental Case Management Order.

(b)   Cure Notice.  At least 20 days prior to the Sale Hearing, the
Selling Debtor Entities shall file with this Court and serve on each non-Debtor party to an
Assumed U.S. Contract a cure notice substantially in the form attached hereto as Exhibit
2 (the "Cure Notice").  The Cure Notice shall state the cure amount that the Selling
Debtor Entities believe is necessary to assume such contract or lease pursuant to section
365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's
lease or contract will be assumed and assigned to the Buyers or a Successful Bidder (as
appropriate) to be identified at the conclusion of the Auction.  In addition, such Cure
Amounts shall be listed on a schedule to the Sale Approval Order.  Each non-Debtor
party to the Assumed U.S. Contracts shall have ten days from the date of the Cure Notice
to object to the Cure Amount and must state in its objection with specificity what Cure
Amount is required (with appropriate documentation in support thereof).  If no objection
is timely received, the Cure Amount set forth in the Cure Notice shall be controlling,
notwithstanding anything to the contrary in any Assumed U.S. Contract, or any other
document, and the non-Debtor party to an Assumed U.S. Contract shall be deemed to
have consented to the Cure Amount and shall be forever barred from asserting any other
claims related to such Assumed U.S. Contract against the Selling Debtor Entities, the
Buyers, or the Successful Bidder (as appropriate), or the property of any of them.

(c)   Assumption/Assignment Notice For Purchaser.  At least 20
days prior to the Sale Hearing, the Selling Debtor Entities shall file with the Court and
serve on all non-Debtor parties to the Assigned Contracts a notice (the "Purchaser
Assumption/Assignment Notice"), substantially in the form of the notice attached hereto
as Exhibit 3, identifying the Buyers as the parties which will be assigned all of the Selling
Debtor Entities' right, title, and interest in the Assigned Contracts, subject to completion
of the bidding process provided under the Bidding Procedures.  The non-Debtor party to
an Assumed U.S. Contract shall have ten days from the service of the Purchaser
Assumption/Assignment Notice to object to the proposed assumption and assignment to
the Buyers and must state in its objection, with specificity, the legal and factual basis of
its objection.  If no objection is timely received, the non-Debtor party to the Assumed
U.S. Contract shall be deemed to have consented to the assumption and assignment of the
Assumed U.S. Contract to the Buyers and shall be forever barred from asserting any
objection with regard to the assumption and assignment.

(d)   Assumption/Assignment Notice For Qualified Bidders.  At
least 20 days prior to the Sale Hearing or on the business day following the Bid Deadline,
whichever is later, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder
Assumption/Assignment Notice"), substantially in the form of the notice attached hereto
as Exhibit 4, to be sent to each non-Debtor party to an Assigned Contract identifying all
Qualified Bidders.  The non-Debtor party to an Assumed U.S. Contract shall have ten

8

days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assumed U.S. Contract shall be deemed to have consented to the assumption and assignment of the Assumed U.S. Contract to the Buyers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(e)    Publication Notice. On or before the Mailing Date, or as soon thereafter as is practicable, the Debtors shall cause notice substantially in the form of the notice attached hereto as Exhibit 5 to be published in the Wall Street Journal (International Edition), the New York Times, the Dayton Daily News, and the Detroit Free Press.

8.    This Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this order.

9.    The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the

Motion.

Dated:    New York, New York
         October __, 2007


_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Bidding Procedures**

# DELPHI CORPORATION
## INTERIORS AND CLOSURES BUSINESSES BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets that comprise the Cockpits and Interior Systems Business and Integrated Closure Systems Business (collectively, the "Interiors and Closures Businesses") of Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities").[1]  On October 15, 2007, the Sellers executed that certain Master Sale And Purchase Agreement (the "Agreement") with Inteva Products, LLC and certain of its affiliates (the "Buyers").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On October 15, 2007, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed an Expedited Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014 (a) (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (b) Authorizing And Approving (i) Sale Of The Debtors' Assets Primarily Used In The Debtors' Cockpits and Interior Systems and Integrated Closure Systems Businesses Free And Clear Of Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities (the "Sale Motion").  On October ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures,  (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (Iv) Setting Sale Hearing Date In Connection With Sale Of Interiors And Closures Businesses (the "Bidding Procedures Order").  The Bidding Procedures Order set _____ as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement.  All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Bids, respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").  The Debtors intend to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding

---

[1]   Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi Automotive Systems (Holdings) Inc., and Delphi Technologies, Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

Process.  In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Interiors and Closures Businesses (the "Assets").

## "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Buyers, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

## Free Of Any And All Claims And Interests

Except, with respect to the Buyers, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the bidding process (a "Potential Bidder") must become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Buyers must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below, unless otherwise ordered by the Bankruptcy Court or as otherwise determined by the Sellers in their discretion:

(a)    An executed confidentiality agreement substantially similar to the Buyers' Confidentiality Agreement.

(b)    Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets and the Interiors and Closures Businesses, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Sellers and their financial advisors; and

(c)    A preliminary (non-binding) proposal regarding:  (i) the purchase price range, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing

2

of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale if selected as a successful bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement will be deemed a "Qualified Bidder." Notwithstanding the foregoing, the Buyers will be deemed a Qualified Bidder for purposes of the bidding process. As promptly as reasonably practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, Sellers will allow the Qualified Bidder to commence due diligence with respect to the Purchased Assets and the Interiors and Closures Businesses as described below.

## Due Diligence

Sellers will afford each Qualified Bidder due diligence access to the Purchased Assets and the Interiors and Closures Businesses. Due diligence access may include such management presentations as may be scheduled by Sellers, access to data rooms, on site inspections, and such other matters which a Qualified Bidder may request and as to which Sellers, in their sole discretion, may agree. Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence will not continue after the Bid Deadline. Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither Sellers nor any of their Affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Purchased Assets and the Interiors and Closures Businesses to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

## Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steven P. De Raedt, Director, Mergers & Acquisitions, with copies to: (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Brian M. Fern, (ii) Sellers' financial advisor, Credit Suisse First Boston, 11 Madison Avenue, New York, New York 10010-3629, Attention: Spyros Svoronos, (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue,

3

New York, New York 10022, Attention: Robert J. Rosenberg, and (iv) counsel for the agent
under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New
York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received
not later than 11:00 a.m. (prevailing Eastern time) by November 26, 2007 (the "Bid Deadline").
Delphi may extend the Bid Deadline once or successively, but is not obligated to do so. If
Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.
As soon as reasonably practicable following receipt of each Qualified Bid, Sellers will deliver
complete copies of all items and information enumerated in the section below entitled "Bid
Requirements" to counsel for the official committee of equity security holders (the
"Equityholders Committee"). The Sellers also will provide the International Union, United
Automobile, Aerospace & Agricultural Implement Workers of America (the "UAW") with
notice of all Qualified Bidders and their contact information.

Qualified Bidders should note that certain benefit treatment in the Agreement is intended
to effect assumption of the Collective Bargaining Agreements and, to the extent subject to
assumption, these issues remain subject to the parties' rights and obligations related to bargaining
with the UAW.

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)    A letter stating that the bidder's offer is irrevocable until two Business Days after
the closing of the Sale of the Purchased Assets.

(b)    An executed copy of the Agreement, together with all schedules marked (a
"Marked Agreement") to show those amendments and modifications to such Agreement
and schedules that the Qualified Bidder proposes, including the Purchase Price (as
defined in the Agreement).

(c)    A good faith deposit (the "Good Faith Deposit") in the form of a certified bank
check from a U.S. bank or by wire transfer (or other form acceptable to Sellers in their
sole discretion) payable to the order of Delphi (or such other party as Sellers may
determine) in an amount equal to 2.6% of the Preliminary Purchase Price, but which will
in no event be less than the Deposit Amount.

(d)    Written evidence of a commitment for financing, or other evidence of ability to
consummate the proposed transaction, that is satisfactory to Sellers and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

(a)    Is on terms and conditions (other than the amount of the consideration and the
particular Liabilities being assumed) that are substantially similar to, and are not
materially more burdensome or conditional to Sellers than, those contained in the
Agreement.

(b)     Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(c)     Proposes a transaction that the Sellers determine, in the good faith opinion of their senior management, after consultation with their financial advisors, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus $1,000,000.

(d)     Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment.

(e)     Includes an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

(f)     Include a commitment to consummate the purchase or the Purchased Assets immediately upon completion of all closing conditions within Sellers' reasonable control, which may as early as 15 days after entry of the Sale Approval Order, or in the case of any governmental approvals, 60 days after entry of such order.

(g)     Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, the Sellers will have the right, in their sole discretion, to entertain bids for the Purchased Assets that do not conform to one or more of the requirements specified herein and may deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Buyers will be deemed Qualified Bidders, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Buyers is referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Buyers, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

## **Bid Protection**

Recognizing the Buyers' expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Buyers.  Specifically, the

Selling Debtor Entities have determined that the Agreement must further the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed.  As a result, the Selling Debtor Entities have agreed that if the Buyers are not the Successful Bidder, the Selling Debtor Entities will, in certain circumstances, pay to the Buyers a Break-Up Fee.  The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) will be governed by the provisions of the Agreement and the Bidding Procedures Order.

## **Auction**

If Sellers receive one or more Qualified Bids in addition to the Agreement, Sellers will conduct an auction (the "Auction") of the Purchased Assets and the Interiors and Closures Businesses upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on December 6, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606 (at Sellers' election) or such later time or other place as Sellers notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing), in accordance with the following procedures:

(a)     Only the Sellers, the Buyers, any representative of the Creditors' Committee and the Equityholders' Committee, any representative of the Sellers' secured lenders under their postpetition credit facility (and the legal and financial advisers to each of the foregoing),  any representative of the UAW, and any Qualified Bidder which has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Buyers and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b)     At least two Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Sellers whether it intends to participate in the Auction and at least one Business Day prior to the Auction, Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which Sellers believe is the highest or otherwise best offer to the UAW and all Qualified Bidders which have informed Sellers of their intent to participate in the Auction.

(c)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d)     Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e)     Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $1,000,000 higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bid with full knowledge and

6

written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Buyers), Sellers will give effect to any Break-Up Fee or Expense Reimbursement that may be payable to Buyers under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

## Selection Of Successful Bid

At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, Sellers, in consultation with their financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)").

Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Court after the Sale Hearing. If, after an Auction in which the Buyers: (i) have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) are the Successful Bidder, they must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Break-Up Fee.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Court for approval does not constitute the Sellers' acceptance of the bid. The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing will be held before the Honorable Judge Robert Drain on [_____] at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing. If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Buyers), the Selling Debtor Entities will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to the Buyers following entry of the Sale Order. If the Sellers do receive additional Qualified Bids, then, at the Sale Hearing, the Selling Debtor Entities will seek approval of the Successful Bid(s), and, at Sellers' election, one or more next highest or best Qualified Bid(s) (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)"). The Selling Debtor Entities' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute Sellers' acceptance of either or any such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Sellers or the Successful Bidder or

(ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Sellers will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

## Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s). If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit, and such Good Faith Deposit will irrevocably become property of the Sellers in full and final satisfaction of any and all Liabilities of the defaulting Successful Bidder to the Sellers with respect to the Sale.  On the Return Date, Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

## Reservations Of Rights

Sellers, after consultation with the agents for their secured lenders and the Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time any bid (other than the Buyers' bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by Sellers in their sole discretion.

## __Exhibit 2__

**Sale Notice**

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -   x
                               :
       In re                            :      Chapter 11
                               :
DELPHI CORPORATION, <u>et al.</u>,       :      Case No. 05-44481 (RDD)
                               :
                 Debtor.    :      (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

        1.       Pursuant to the **Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.
2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid
Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale
Hearing Date In Connection With Sale Of Interiors And Closures Businesses** (the
"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern
District of New York (the "Bankruptcy Court") on _____, 2007, Delphi Corporation
("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set
forth in the Agreement (the "Selling Debtor Entities") have entered into a Master Sale And
Purchase Agreement (the "Agreement") with Inteva Products, LLC and certain of its affiliates
(the "Buyers") for the purchase of substantially all of the Debtors' assets (the "Purchased
Assets") primarily used in the cockpits and interior systems and integrated closure systems
businesses of Delphi.  Capitalized terms used but not otherwise defined in this notice have the
meanings ascribed to them in the Bidding Procedures Order.

2.       All interested parties are invited to make an offer to purchase the
Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the
"Bidding Procedures") by **11:00 a.m.** (prevailing Eastern time) on **November 26, 2007**.
Pursuant to the Bidding Procedures, the Sellers may conduct an auction for the Purchased
Assets (the "Auction") beginning at **10:00 a.m.** (prevailing Eastern time) on **December 6,
2007** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New
York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606.

3.       Participation at the Auction is subject to the Bidding Procedures and
the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting
the undersigned counsel to the Sellers or by accessing Delphi's Legal Information Website,
www.delphidocket.com.

4.       A hearing to approve the Sale of the Purchased Assets to the highest
and best bidder will be held on _____ at the United States Bankruptcy Court for the
Southern District of New York, One Bowling Green, Room 610, New York, New York
10004, before the Honorable Robert D. Drain, United States Bankruptcy Judge.  The hearing
on the Sale may be adjourned without notice other than an adjournment in open court.

5.       Objections, if any, to the proposed Sale must be filed and served in
accordance with the Bidding Procedures Order, and **actually received** no later than **4:00 pm.
(prevailing Eastern time)** on _____.

6.       This notice is qualified in its entirety by the Bidding Procedures Order.

Dated:  October __, 2007
        New York, New York

                            BY ORDER OF THE COURT

                            John Wm. Butler, Jr. (JB 4711)
                            John K. Lyons (JL 4951)
                            Ron E. Meisler (RM 3026)
                            SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
                            333 West Wacker Drive, Suite 2100
                            Chicago, Illinois  60606
                            (312) 407-0700

                               - and -

                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                            SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
                            Four Times Square
                            New York, New York 10036
                            (212) 735-3000

                            Attorneys for Delphi Corporation, et al.,
                                Debtors and Debtors-in-Possession

2