# Exhibit I

**Sixth Lease Amendment**

SIXTH AMENDMENT OF LEASE

THIS SIXTH AMENDMENT OF LEASE (this "Sixth Amendment") dated September 28, 2007 is hereby attached to and forms a part of that certain Lease dated June 1, 1989, by and between 1401 TROY ASSOCIATES LIMITED PARTNERSHIP, a Michigan limited partnership ("Landlord") and DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company ("Tenant"), assignee of General Motors Corporation pursuant to an Assignment and Assumption Agreement dated December 10, 1998. Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Lease.

WITNESSETH:

WHEREAS, Landlord and Tenant are the parties to that certain Lease dated June 1, 1989, as amended pursuant to that certain First Amendment to Lease dated November 3, 1989, Second Amendment to Lease dated June 1, 1994, Letter Agreement dated June 23, 1995, Third Amendment of Lease dated April 21, 1997, Fourth Amendment of Lease dated March 15, 1999, and Fifth Amendment of Lease dated March 31, 2003 (collectively referred to herein as the "Lease") currently set to expire March 31, 2010 and covering certain premises located at 1401 Crooks Road, Troy, Michigan as are more particularly described in the Lease (the "Premises"), including one major and two (2) small ancillary buildings consisting of 222,597 rentable square feet (collectively, the "Building") and the approximately 22 acre site on which the Building is located;

WHEREAS, On October 8, 2005 Delphi Corporation ("Delphi") and certain of its U.S. affiliates filed voluntary petitions for reorganization under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court"), and on October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions (the "Bankruptcy Cases") for reorganization under the Bankruptcy Code (collectively, the "Debtors"). The Debtors continue to operate their business as "debtors-in-possession" under the jurisdiction of the Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Court.

WHEREAS, the parties are presently desirous of amending the Lease in the manner hereinafter set forth.

NOW, THEREFORE, for and in consideration of the covenants herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each of the parties hereto, it is agreed as follows:

1. Notwithstanding anything contained in the Lease to the contrary, Landlord agrees that as of the date of this Sixth Amendment Tenant has the right to exercise an option to terminate this Lease at any time through December 31, 2008. To exercise this termination right Tenant must give to Landlord at least six (6) months' prior written notice and may deliver such notice up to and including December 31, 2008 ("Exercise Notice"). If Tenant elects to terminate the Lease, Tenant shall pay to Landlord the Termination Payment (as defined below) in

OAKLAND:1320564.8

accordance with the terms hereof. Twenty-five percent (25%) of the Termination Payment (the "Initial Installment") shall be paid to Landlord within sixty (60) days following delivery of the Exercise Notice and the balance of the Termination Notice shall be paid on or before the effective date of the termination. If Tenant fails to pay the Initial Installment within sixty (60) days following delivery of the Exercise Notice, Landlord shall send written notice to Tenant that the Initial Installment is past due and if Tenant fails to pay the Initial Installment within five (5) days from receipt of such notice from Landlord, Tenant's exercise of the termination option shall be null and void and of no further force and effect, provided however, such voidance of Tenant's exercise of the termination option shall not preclude Tenant from exercising its right to terminate the Lease at a later date pursuant to the terms hereof. The effective date of the termination of the Lease shall be the date which is six (6) months after the date Landlord has received the Exercise Notice, provided however, the termination will not be effective unless Tenant has paid the Termination Payment in full on or before the date set for termination of the Lease. If Tenant fails to pay the balance of the Termination Payment on or before the date set for termination of the Lease, Landlord shall send written notice to Tenant that the balance of the Termination Payment is past due and if Tenant fails to pay the balance of the Termination Payment within five (5) days from receipt of such notice from Landlord, Tenant shall be in default of the Lease, the Lease shall not terminate until Tenant pays the balance of the Termination Payment. From the time that Tenant has delivered the Exercise Notice until the effective date of termination, Tenant will continue to pay all rent and other sums to be paid by Tenant pursuant to the Lease as if Tenant occupied the Premises during such six (6) month period. For purposes hereof, the Termination Payment shall be equal to 12 months Base Rent for the twelve (12) month period after the effective date of termination (for instance, effective April 1, 2007, the fee would be as follows: $9.50 X 222,597 = $2,114,671.50). On the date set for termination, upon (a) payment of the Termination Payment, and (b) the performance of all of Tenant's obligations under the Lease (with the exception of any restoration obligations relating to Alterations to the Premises pursuant to Paragraph 3 below) accruing and arising prior to the effective date of termination, Landlord expressly releases Tenant and Tenant shall be relieved of any further obligations arising under the Lease or Tenant's use of the Premises, including by way of illustration but not by way of limitation, all prior and future rent, any bankruptcy pre-petition obligations, and all future fees, expenses, damages, or causes of action of any type or nature whatsoever. Notwithstanding the foregoing or anything else to the contrary contained herein, if Tenant does not fully and completely vacate possession of the Premises upon the effective date of termination, in addition to payment of the Termination Payment, Tenant shall be a hold over tenant and responsible for all obligations as such under the Lease, except that the monthly rental shall be 100% of the monthly rental in effect during the month prior to the holdover. In addition to the foregoing, upon the effective date of the termination of the Lease upon the performance of all Landlord's obligations under the Lease occurring and arising prior to the effective date of termination, Tenant expressly releases Landlord and Landlord shall be relieved of any further obligations arising under the Lease.

2. Should Tenant elect to terminate the Lease in accordance with this Sixth Amendment during the pendency of the Bankruptcy Cases, Landlord agrees to waive any right to a claim for such termination provided the Termination Payment is paid by Tenant and Tenant performs all of its obligations under the Lease up to the date of termination; Tenant agrees not to reject the Lease under Section 365 of the Bankruptcy Code prior to December 31, 2008.

Notwithstanding the foregoing, Landlord's waiver of a claim for such termination shall be null and void in the event the Termination Payment is avoided or this Amendment is determined to be unenforceable.

3. If Tenant exercises the termination option in Paragraph 1 above, notwithstanding anything contained in the Lease to the contrary, in the case of any alterations, changes, improvements and remodeling performed by or on behalf of the Tenant or by the Landlord made prior to the date of this Sixth Amendment (collectively "Alterations"), upon the termination of the Lease, Tenant will not be obligated to remove any such Alteration nor restore the Premises to their original condition, provided however, Tenant will be obligated to restore the Premises to the condition as of the date of this Amendment, subject to ordinary wear and tear and insured casualties. Notwithstanding the foregoing, Tenant shall remove all test presses, injection and forming machines and other process and testing equipment from the Premises; provided that failure to remove such equipment or other personal property from the Premises shall not be deemed a holdover by Tenant. If Tenant fails to remove such equipment or other personal property from the Premises within thirty (30) days from the termination of this Lease, such equipment and personal property shall be deemed to be abandoned and may be disposed of by Landlord at Tenant's cost. Tenant shall not alter, change, improve or remodel the Premises after the date hereof without Landlord's prior written consent. If Landlord consents to any future alterations, changes, improvements or remodeling (collectively, "Future Alterations"), upon a termination of the Lease pursuant to Paragraph 1 above, Tenant will not be obligated to remove any Future Alterations, provided however, the Premises must be in the condition as of the date of this Sixth Amendment, subject to such Future Alterations and ordinary wear and tear and insured casualties. Notwithstanding the foregoing, Tenant shall remove all test presses, injection and forming machines and other process and testing equipment from the Premises. Upon the effective date of the termination of the Lease, any funds remaining in the Tenant Improvement Reserve (as defined in the Fifth Amendment of Lease) shall belong to Landlord to use in Landlord's sole discretion, and Tenant, notwithstanding anything to the contrary contained in the Fifth Amendment of Lease, shall have no future rights to such funds. Landlord and Tenant acknowledge and agree that the balance of the Tenant Improvement Reserve as of the date hereof is $139,484.89, and that all rights to the Improvement Allowance provided to Tenant in Paragraph 10(a), of the Fifth Amendment of Lease shall remain in full force and effect until the effective date of the termination of the Lease.

4. Landlord agrees and acknowledges that this Sixth Amendment is not intended, nor shall it be construed, as an assumption of the Lease, it being the intention of the parties that this Sixth Amendment merely modifies the Lease, provided however, Landlord and Tenant acknowledge and agree that the payment of the Termination Payment as set forth in this Sixth Amendment is a post-petition obligation.

5. Paragraph 4 and Exhibit D of the Fifth Amendment of Lease shall be deleted in their entirety and replaced with the following language: "Tenant shall directly contract with and pay to the applicable electrical utility company for all electricity consumed by Tenant on the Premises during the term of this Lease."

6.    Except as expressly amended herein, the Lease is not modified or amended in any manner and all other terms of the Lease are hereby ratified and confirmed and shall remain in full force and effect.

[Signatures on Following Page]

5

IN WITNESS WHEREOF, the parties hereto have set their hand and seal the date, day and year first above written and declare this Sixth Amendment to be binding on them, their respective successors and permitted assigns.

WITNESSES FOR LANDLORD:

Print Name: CURTIS B. BURSTEIN

Print Name: Catherine L. Landra

1401 TROY ASSOCIATES LIMITED PARTNERSHIP,
a Michigan limited partnership

By: 1401 Troy Research Associates Limited Partnership, a Michigan limited partnership
Its: General Partner
By: 1401 Troy, Inc., a Michigan corporation, General Partner

By: _____
Print Name: DOUGLAS M. ETKIN
Its: President

WITNESSES FOR TENANT:

Print Name: BRIAN M. COLLINS

Print Name: Susan L. Bacon

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By: _____
John A. Jaffurs
Its: Authorized Signatory

OAKLAND.1320564.8      5