1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   --------------------------------x

4        In the Matter of:

5                              Case No.

                               05-60200

6     CALPINE CORPORATION, et al.,

7                        Debtors.

8   --------------------------------x

9                      September 11, 2007

                       United States Custom House

10                     One Bowling Green

                       New York, New York 10004

11

12

13

              Hearing Pursuant to Kirkland and Ellis LLP

14

    Notice of Amended Agenda of Matters Scheduled for Hearing.

15

16

17

18

    B E F O R E:

19

20            HON. BURTON R. LIFLAND,

21                 U.S. Bankruptcy Judge

22

23

24

25

2

1    A P P E A R A N C E S:

2

3

        KIRKLAND & ELLIS LLP

4

    Attorneys for the Debtors,
5                Calpine Corporation, et al.
                200 East Randolph Drive
6                Chicago, Illinois 60601
7        BY:    DAVID R. SELIGMAN, ESQ.,
                ANDREW R. McGAAN, ESQ.,

8

                HELENA C. HUANG, ESQ.,
9                153 East 53rd Street
                New York, New York 10022

10

                MARC KIESELSTEIN, ESQ.
11                655 Fifteenth Street N.W.
                Washington, D.C. 20005

12

13

14        CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
15            Conflicts Counsel for the Debtors
                101 Park Avenue
16                New York, New York 10178
17        BY:    STEVEN J. REISMAN, ESQ.
18

19

        MORGENSTERN JACOBS & BLUE, LLC
20

            Conflicts Counsel for the Debtors
21                885 Third Avenue
                New York, New York 10022

22

        BY:    LAURA J. LEFKOWITZ, ESQ.
23

24

25

3

A P P E A R A N C E S (Continued):


            AKIN GUMP STRAUSS HAUER & FELD LLP

                    Attorneys for the Official Committee
                    of Unsecured Creditors
                    590 Madison Avenue
                    New York, New York 10022
            BY:     MICHAEL S. STAMER, ESQ.,
                    PHILIP DUBLIN, ESQ.,
                    ABID QURESHI, ESQ.


            PAUL WEISS RIFKIND WHARTON & GARRISON LLP

        Attorneys for the Unofficial Committee
                    of Second Lien Debt Holders
                    1285 Avenue of the Americas
                    New York, New York 10019
            BY:     ELIZABETH R. McCOLM, ESQ.


            FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

        Attorneys for the Equity Committee
                    One New York Plaza
                    New York, New York 10004

            BY:     GARY L. KAPLAN, ESQ.,
                    MICHAEL DE LEEUM, ESQ.

4

1  A P P E A R A N C E S (Continued):

2

3

           LUSKIN, STERN & EISLER LLP

4

                Attorneys for The California State Parties
5                330 Madison Avenue
                 New York, New York 10017

6

       BY:    TREVOR R. HOFFMANN, ESQ.
7

8

9      CLEARY GOTTLIEB STEEN & HAMILTON LLP
10          Attorneys for The Dow Chemical Company
                 One Liberty Plaza
11               New York, New York 10006
12     BY:    LUKE A. BAREFOOT, ESQ.

13

14

           JONES DAY
15

                Attorneys for South Carolina Pipeline
16               Corporation n/k/a Carolina Gas Transmission
           77 West Wacker
17               Chicago, Illinois 60601
18     BY:    MARK A. CODY, ESQ.

19

20

           MAYER BROWN LLP
21

                Attorneys for Rosetta
22               700 Louisiana Street
       Houston, Texas 77002
23

       BY:    CHARLES S. KELLEY, ESQ.
24

25

5

1    A P P E A R A N C E S (Continued):

2

3

        CADWALADER, WICKERSHAM & TAFT LLP

4

    Attorneys for Rosetta
5                One World Financial Center
    New York, New York 10281

6

        BY:    JOHN H. BAE, ESQ.

7

8

9        FULBRIGHT & JAWORSKI L.L.P.
10            Attorneys for Utility Choice
                666 Fifth Avenue
11                New York, New York 10103
12        BY:   DAVID A. ROSENZWEIG, ESQ.,
13                JEFFREY D. PALMER, ESQ.
                1301 McKinney
14                Houston, Texas 77010

15

16

17

18

19

20

21

22

23

24

25

6

1   P R O C E E D I N G S:

2           MR. SELIGMAN:  Good morning, your Honor.

3   David Seligman of Kirkland and Ellis LLP on behalf the

4   debtors.

5           Your Honor, just before we turn to the

6   agenda, I wanted to make a very brief update on the status

7   of the plan process.

8           THE COURT:  Sure.

9           MR. SELIGMAN:  Your Honor, before we turn

10  to this morning's agenda, I would like to provide the

11  court's with a very brief status of our process.  As your

12  Honor is aware, we previously filed a notice of adjournment

13  continuing the disclosure statement hearing from September

14  11 to September 25th in an attempt to reach consensus with

15  our unsecured and equity committees regarding the

16  possibility of a rights offering open to Calpines' common

17  shareholders who are guaranteed distribution plan.

18          Since that time we have had very active and

19  constructive discussions with our committees, however, we

20  have ultimately concluded that it was appropriate to

21  proceed with the waterfall structure incorporated in the

22  plan that we currently have on file.  Accordingly, we will

23  proceed with the disclosure statement hearing on September

24  25th based upon the current plan structure in order to

25  maintain a process and time line that ensures our emergence

7

1   by January 31, 2008, and preserves our very valuable

2   Goldman exit financing package.

3               With that, your Honor, I would like to turn

4   to this morning's agenda.

5               MR. STAMER:  Your Honor, a think just a

6   minor counterpoint is necessary.

7               Mike Stamer of Akin Gump on behalf of the

8   creditors' committee.  Mr. Seligman's comments are

9   accurate, we have had constructive discussions with the

10  debtors.  We still have open issues with the debtors on

11  their plan and disclosure statement.  Our hope is that

12  those issues would have been resolved in advance of today

13  so that we could announce to the court that in fact at

14  least the official creditors' committee and debtors are

15  completely aligned.  We are not, your Honor.

16              It is our hope in advance of Friday that we

17  will be aligned, but, your Honor, if we're not, if we can't

18  kind of button down the remaining issues, which we believe

19  are very significant, we will be taking appropriate action

20  to protect the unsecured creditors here.  It is my sincere

21  hope that that will not come to pass, but I didn't want to

22  leave the court with the impression that we were all

23  sitting around singing Kumbaya at a time when, frankly,

24  we're not.  Thank you.

25              THE COURT:  Thank you.

8

1        MR. KAPLAN:  Your Honor, Gary Kaplan from

2   Fried Frank for the equity committee.

3        For the record, we are in the same position

4   frankly as the unsecured committee.  While we had a lot of

5   dialogue with the debtors over the past few weeks,

6   unfortunately, while we thought we were making progress,

7   from the debtors' perspective I guess we weren't.  They

8   sort of just stopped negotiating with us and said they are

9   done.

10        So as we said, right now we, too, have to

11   protect our constituents.  And unfortunately, based on a

12   lack of recent dialogue, I am not hopeful that by the time

13   we get to the 25th we are going to have a consensual deal,

14   but of course we always remain open to attempting to reach

15   a consensual deal and are hopeful that we will get there.

16        MR. SELIGMAN:  Thank you, your Honor.

17        I'll now turn to this morning's agenda.

18        THE COURT:  It's very interesting, it's

19   kind of typical to hear a lot of self-serving statements,

20   but we'll see how they play out.

21        MR. SELIGMAN:  Yes.

22        Your Honor, matter number 1 on the agenda

23   is the debtors' motion for entry of an order approving a

24   partial transfer and release agreement between the debtors

25   and Rosetta Resources.  This matter is uncontested.

9

1          As your Honor is aware, in July of 2005

2   Calpine sold substantially all of its domestic oil and gas

3   assets to Rosetta.  There had been a dispute, as of the

4   petition date, as to whether certain leases had actually

5   been completely assigned to Rosetta.  There were certain

6   consents that had to be obtained that there were issues

7   about whether they were actually obtained as of the

8   petition date.  We previously assumed those leases from the

9   debtors perspective and in the abundance of caution as the

10   deadline is approaching.

11          Since that time we have talked a lot with

12   Rosetta.  We obviously have the fraudulent transfer action

13   that's pending before this court, but there were a lot of

14   issues pertaining to these leases where it wasn't clear as

15   to who had ownership, who had title to them; but meanwhile

16   Rosetta was actually operating the properties.  So this

17   motion incorporates a settlement agreement just on the

18   narrow issue of some of these what we've called non consent

19   properties, whereby we will agree to assign these leases to

20   Rosetta.

21          In return for that Rosetta is basically

22   agreeing to extend a marketing services agreement that has

23   about 4 million dollars of benefits to Calpine as a quid

24   pro quo for that.  In addition, Rosetta is going to

25   continue to maintain all of the obligations to take care of

10

1    and manage these properties.  It's also going to take on

2    certain risks in terms of negotiating with various other

3    state authorities as far as some true-ups with respect to

4    the properties.

5              As part of this also Calpine is going to

6    get some release of collateral back.  So we believe that

7    this is appropriate in our business judgment to assign

8    these to Rosetta.  It preserves everyone's rights with

9    respect the fraudulent transfer action and ultimately where

10   successful these will be some of the ones that we shouldn't

11   come back, but at least for the status quo we wanted to

12   complete the transfer to allow the management of the

13   properties to proceed uninhibited.

14             THE COURT:  Does anyone want to be heard?

15             MR. KELLEY:  Good morning, your Honor.

16   Charles Kelley on behalf of Rosetta.

17             Again, as Mr. Seligman correctly stated,

18   not withstanding the avoidance action that the debtors

19   initiated, we have worked hard on this agreement and we are

20   confident that it brings a lot of mutual benefits for both

21   the debtors and Rosetta, and Calpine worked hard with

22   Rosetta in getting it accomplished.

23             As the court may recall, last summer we

24   spent some time talking about this Gulf of Mexico

25   properties and some of the risks that the debtors and

11

1  Rosetta face with that.  This will allow cleanup of that.

2  At the same time it will allow us to continue using Calpine

3  to market all the loose end production, which we believe

4  generates support for both Calpine and Rosetta, so it is a

5  mutual, beneficial document and we would ask the court to

6  approve it.

7              THE COURT:  So this eliminates some of the

8  concerns with respect in dealing with regulatory

9  authorities; is that correct?

10             MR. KELLEY:  In large part, your Honor,

11 that's correct.  These are the properties where the

12 counterparties are governmental agencies, and you can

13 imagine, with all due respect to the parties in the

14 courtroom, the headache it gives us sometimes.  So this

15 will allow us a significant overhead.

16             THE COURT:  I am prepared to approve the

17 transaction.

18             MR. SELIGMAN:  Thank you, your Honor.

19             May I approach?

20             THE COURT:  Sure.

21             I've approved the order.

22             MR. SELIGMAN:  Thank you, your Honor.

23             Matter number 2 on the agenda is the

24 debtors' motion for entry of a second amended order

25 authorizing the debtors to pay certain prepetition sales,

12

1   use and franchise taxes.

2           Your Honor, we've been before you on more

3   than one occasion on this.  This is basically to increase

4   the basket of available funds to pay prepetition taxes,

5   including sales, franchise and use taxes.  We have the

6   original basket on day one to pay up to 8 million dollars

7   of these taxes.  We then came back to your Honor

8   subsequently and increased the basket to 17.8 million

9   dollars.

10          We now want to increase that basket by an

11  additional half million dollar.  And it would be to pay

12  trust funds taxes or taxes that are most likely entitled to

13  priority under 507(a)(8).  There have been objections

14  that --

15          THE COURT:  Does anyone want to be heard?

16          The application is justified.

17          MR. SELIGMAN:  Thank you.  May I approach?

18          THE COURT:  Yes.

19          I've approved the order.

20          MR. SELIGMAN:  Your Honor, matter number 3

21  on the agenda is the debtors' motion for entry of an order

22  authorizing debtors to assume a construction and operating

23  agreement between the city of Santa Rosa and Geysers Power

24  Company LLC, which is one of the debtors.

25          Your Honor, this essentially concerns an

13

1  agreement whereby the city of Santa Rosa was going to

2  construct a water to pipe pipeline for certain of the

3  Geysers' plants owned by the Geysers Power Company, LLC.

4  And essentially this is a motion to assume that

5  construction agreement with some modifications which are

6  laid out in the motion and the proposed order.

7           The bottom line is that under this proposed

8  second amendment it will improve the cash flow of the

9  doctors by at least 12 is million dollars for the term of

10  the construction and operating agreements.  We believe it

11  is supported by the debtors' business judgment and ask that

12  your Honor approve the application.

13           THE COURT:  Does anyone want to be heard?

14           The application is granted.

15           MR. SELIGMAN:  Thank you, your Honor.

16           May I approach?

17           THE COURT:  Yes.

18           I've approved the order.

19           MR. SELIGMAN:  Your Honor, the next matter

20  on the agenda is the debtors' motion for entry of an order

21  authorizing the debtors to assume the Calpine 2 contract,

22  which is an electricity supply contract with the California

23  Department of Water Resources.  This is the last of the

24  contracts that was on appeal to the Second Circuit stemming

25  from your Honor's first day order authorizing the rejection

14

1   of these contracts; so this will resolve the appeals in the

2   Second Circuit.

3                    Essentially during the course of the case,

4   and especially recently the company determined in its

5   business judgment that the benefits of maintaining this

6   contract actually outweighed any benefits from rejecting

7   this contract or seeking to attempt to reject the contract

8   and litigate in the Second Circuit on the issue.  The

9   debtors believe it made sense just proceed and assume the

10  contract.

11                   Simultaneously there were also filed by

12  CDWR a number of objections to the disclosure statement to

13  withdraw the reverence, et cetera, and the resolution of

14  this, which is basically the assumption of the contract,

15  will resolve all of the issues with CDWR, any potential

16  issues they may have with respect to the disclosure

17  statement in our plan and resolve the motion to withdraw

18  the reference and fully reach closure on all of these

19  outstanding issues.  And we believe that the debtors'

20  business judgement supports the approval of the assumption

21  of this motion.

22                   THE COURT:  Does anyone want to be heard?

23                   Does this mean that there's nothing pending

24  in the circuit with respect to jurisdiction on FERC related

25  contracts either from this case or any other case?

15

1          MR. SELIGMAN:  From this appeal, yes.

2  There shouldn't be any remaining issues.  We had sent a

3  letter the second circuit informing them that we had

4  reached an agreement principally with CDWR, and we asked

5  them to hold their ruling until the assumption of this

6  contract was approved.

7          Now that we've done that we are going to

8  dismiss the appeal because all of the --

9          THE COURT:  I understand that with respect

10  to Calpine.

11          MR. SELIGMAN:  Yes.

12          THE COURT:  But weren't there other issues

13  similar to this pending before the circuit?

14          MR. SELIGMAN:  I don't believe so.  I

15  believe they all stemmed from the rejection of these

16  contracts.

17          THE COURT:  Very well.  Does anyone want to

18  be heard?

19          I'll approve the application.

20          MR. SELIGMAN:  Thank you, your Honor.

21  May I approach?

22          THE COURT:  Yes.

23          MR. SELIGMAN:  Thank you, your Honor.

24          Your Honor, the next matter on the agenda,

25  matter number 5, is the debtor' motion for an order to

16

1   approve a stipulation resolving claims between Columbia

2   Energy LLC, one of the debtors, Calpine Corporation and

3   South Carolina Pipeline Corporation.

4               Your Honor, this essentially systems out of

5   the debtors' rejection of a pipeline contract between

6   Columbia Energy Center LLC and South Carolina Pipeline

7   Corporation.  The obligations under that pipeline were also

8   guaranteed by Calpine Corporation.  Columbia had asserted a

9   proof of claim in the amount of 160 million dollars and

10  change.  The parties have agreed essentially to allow a

11  claim for 49.4 million dollars as a rejection damages claim

12  against Columbia Energy, as well as a 10.7 million dollar

13  claim against Calpine Corporation.

14              We believe that based upon a review and

15  analysis of the amount of claim, we believe that that

16  number is appropriate.  One of the issues was the

17  appropriate discount rate to apply to the amount of the

18  claim, and we are satisfied that the number in the

19  settlement reflects a proper discounting of that number.

20              Your Honor, there was one limited objection

21  filed by the TransCanada Pipeline Group.  They were

22  essentially concerned that the agreement between the

23  parties as to the appropriate discount rate would have some

24  impact or relevance to them.

25              We have resolved the issue with them by my

17

1    reading of a brief statement into the record, which is as

2    follows:  "With respect to the limited objections filed by

3    'The Pipelines', that is TransCanada PipeLines Limited,

4    Portland Natural Gas Transmission System, Gas Transmission

5    Northwest Corporation and Nova Gas Transmission Ltd.,

6    nothing in this order should be deemed to be a

7    determination of any of the issues between the debtors and

8    any of those pipelines or otherwise binding on such issues,

9    nor shall such an order approving this settlement bar any

10   of the pipelines from advocating for an application of a

11   different discount or methodology for determining the

12   credit value of any of The Pipelines' claims."

13                   And so, with that, your Honor, that limited

14   objection is resolved.  There were no other objections to

15   the settlement and we would request approval of the motion

16   to approve the settlement.

17                   THE COURT:  Does anyone want to be heard?

18                   I've read the suggested language.  Do you

19   want to be heard, sir?

20                   MR. CODY:  Just one clarification.  Mark

21   Cody on behalf of the South Carolina Pipeline.

22                   To be clear, the stipulation resolves

23   rejection damage guaranteed claim, as well as a prepetition

24   plan component also referenced in the stipulation.

25                   THE COURT:  Well, there's been some

18

1    finessing with the language that's been included from

2    what's been suggested by the limited objectors, and I've

3    read their suggestive language and I find some of it

4    somewhat inconsistent with the preservation of rights of

5    this court.  The suggested language put into brackets or

6    otherwise persuasive in establishing a discount factor.

7                    You've used a different term than

8    persuasive, and I'm not sure that that eliminates this

9    court's concern of having independence over making

10   determinations with respect to a discount factor.

11                   MR. SELIGMAN:  Essentially I think what we

12   were agreeing to in sum and substance with TransCanada was

13   they were concerned that by this agreement between the

14   debtor and Columbia that somehow they would be -- this is a

15   two parties agreement, that somehow they would be bound or

16   they would be precluded from any --

17                   THE COURT:  There's no question that they

18   would not be bound; however, the language that they put in

19   here that the discount rate should not have any effect or

20   be persuasive with respect to a discount rate that might be

21   brought before the court, that language I will not abide

22   by.  And I'm not sure that you're corrective language

23   accomplishes the court's concern.

24                   MR. SELIGMAN:  Well, I guess -- I'm

25   satisfied with your clarification of what I said on the

19

1    record, because it's not reflected in the propose --

2                    THE COURT:  There's nothing in connection

3    with this settlement that should be binding upon this court

4    with respect to its determination as to an appropriate

5    discount rate.  The settlement here might be persuasive in

6    that regard.  It might not be persuasive at all.  But the

7    court's independence in reaching a determination is to be

8    preserved, and any language that you've put in substituting

9    for the language that they have here is not to be construed

10   as binding on this court's independence in reaching an

11   appropriate determination on a discount rate.

12                   MR. SELIGMAN:  From the debtors'

13   perspective we are certainly satisfied with that

14   clarification.

15                   THE COURT:  Very well, then.  I will

16   approve the application.

17                   MR. SELIGMAN:  Thank you, your Honor.

18                   May I approach?

19                   THE COURT:  Yes.

20                   I've approved the order.

21                   MR. SELIGMAN:  Your Honor, the next matter

22   on the agenda, matter number 6, is being handled by my

23   colleague, Steven Reisman from Curtis, Mallet-Prevost.

24                   MR. REISMAN:  Good morning, your Honor.

25   Steven Reisman of Curtis, Mallet-Prevost, Colt and Mosle,

20

1    conflicts counsel to the debtors.

2              We are here today on Calpine Corporation's

3    motion for an order pursuant to Sections 105 and 363 of the

4    Bankruptcy Code approving Calpine Corporation's reexecution

5    of a guarantee of a non debtor affiliate, Freeport Energy

6    Center.

7              Freeport Energy Center is 236 megawatt

8    natural gas cogen plant in Freeport, Texas.  Freeport

9    Energy Center has various agreements with Dow Chemical

10   Company which were the subject of a prior order of your

11   Honor authorizing us filing both the guarantee and those

12   agreements between Freeport Energy Center and Dow under

13   seal.

14             Calpine Corp. seeks authority today to

15   reexecute a guarantee of the underlying agreements between

16   Freeport Energy Center and Dow.  The guarantee is

17   beneficial to Calpine Corp. in that it allows Freeport

18   Energy Center to -- by issuance of the guarantee it allows

19   Freeport Energy Center to enter into phase three

20   construction with respect to the Freeport Energy Center

21   project.  Freeport supplies both electricity and steam to

22   Dow pursuant to various agreements.

23             Your Honor, the debtors believe that the

24   reexecution of the guarantee is reasonable and in the

25   exercise of the debtors' sound business judgment.  Required

21

1   notice has been provided to all parties.  There have been

2   no objections that have been received.  The order is

3   acceptable to all the parties here.  Copies of the

4   agreements have been provided to the creditors' committee,

5   the equity committee, and other parties who have requested

6   it and that are subject to appropriate confidentiality

7   agreements with the debtor.

8                    Based upon the motion and the record today,

9   we respectfully request that your Honor authorize the

10  reexecution of the guarantee pursuant to the proposed

11  order.

12                   THE COURT:  Does anyone want to be heard?

13                   The application is granted.

14                   MR. REISMAN:  Thank you, your Honor.

15                   May I approach?

16                   THE COURT:  Yes.

17                   I've approved the order.

18                   MR. REISMAN:  Thank you.

19                   MR. SELIGMAN:  Your Honor, matters number 7

20  through 13 are going to be handled by my colleague, Helena

21  Huang.  They relate now to omnibus claims objections.

22                   MS. HUANG:  Good morning, your Honor.

23                   THE COURT:  Good morning.

24                   MS. HUANG:  Helena Huang from Kirkland and

25  Ellis on behalf of the debtors.

22

1        Your Honor, matters 7 through 13 are the

2   debtors' omnibus objections.  The 18th omnibus is scheduled

3   for hearing today and the rest are objections that have

4   carried from previous hearings.

5        Your Honor, I have submitted a claim status

6   report to the court yesterday which gives the disposition

7   of the objections.  There have been some minor changes

8   since the filing of that status report.  With your

9   permission I would like to hand up a black line report.

10        THE COURT:  I'll look at it.

11        MS. HUANG:  Thank you.

12        THE COURT:  Thank you.

13        MS. HUANG:  Thank you, your Honor.

14        Your Honor, as you can see from the status

15   report, either the debtor have withdrawn their objection or

16   the claimants have agreed upon the amounts and the priority

17   of the claims proposed by the debtors.

18        The balance of the objections have been --

19   will be continued to the next hearing.  As part of our

20   claims practice we have already notified each claimant,

21   whose claim has not been resolved, of the continue hearing

22   date.

23        Your Honor, I have with me today a number

24   of orders that account for these resolution.  Unless your

25   Honor have any questions, I would like to hand up the

23

1   orders for your approval.

2              THE COURT:  Does anybody want to be heard?

3              Is there anybody here in response to the

4   claims objection; the omnibus claims objection?

5              Yes, sir.

6              MR. ROSENZWEIG:  Your Honor, David

7   Rosenzweig on behalf of Utility Choice.

8              We're here on behalf of the claims

9   objection, and I think we are going to have a scheduling

10  conference, but we have no opposition to the order.

11             THE COURT:  Very well.

12             MS. HUANG:  Thank you, your Honor.  May I

13  approach with the order?

14             THE COURT:  Yes.  The fate of the claims,

15  the adjournment and the resolution is clearly set forth

16  both in the motion itself and in the report to the court,

17  and I will entertain the order.

18             MS. HUANG:  Thank you, your Honor.

19             May I approach?

20             THE COURT:  Sure.

21             I've approved each of the submitted orders.

22             MS. HUANG:  Thank you, your Honor.

23             MR. SELIGMAN:  Your Honor, that's all we

24  have this morning on the agenda.

25             I did just want to point out that there are

24

1    a number of adjourned matters.  One of the two notes I just

2    wanted to make about the adjourned matters, number one is,

3    your Honor, there is matter number 17, which was the

4    debtors' objection to the unsecured bond make whole claims.

5    We had resolved that within the settlement in principle.

6    We published a press release on that --

7                    MR. KIESELSTEIN:  Last night.

8                    MR. SELIGMAN:  Yesterday evening resolving

9    that, so we are continuing it and will be filing a 9019

10   motion with respect to that.

11                   Also matter 18 on the agenda, which was the

12   debtors' emergency motion to enforce the automatic stay

13   against U.S. Kuil.  The plaintiff in that action has agreed

14   to withdraw their complaint filed in the California trial

15   court, and so we judgement continued that to make sure that

16   was effectuated, but that matter will also ultimately be

17   off the calendar for the 25th.

18                   THE COURT:  Very well.  Are there any other

19   matters?

20                   MR. SELIGMAN:  That's it, your Honor.

21                   THE COURT:  Sir?

22                   MR. ROSENZWEIG:  I believe we were going to

23   have a scheduling conference; I believe the debtor had

24   requested that we have a scheduling conference.

25                   MR. SELIGMAN:  We are happy to do it here,

25

1    your Honor, or if you want to do it in chambers.  It was a

2    scheduling matter with respect to this adversary.

3                    THE COURT:  Well, if I do it here, it binds

4    everybody here at enormous billing rates.  And since it's a

5    one on one situation regarding scheduling, we'll do it in

6    chambers.

7                    MR. SELIGMAN:  That's fine, your Honor.

8                    Thank you.

9                    MR. ROSENZWEIG:  Thank you, your Honor.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# C E R T I F I C A T E

STATE OF NEW YORK          }

                          }    ss.:

COUNTY OF WESTCHESTER      }

             I, Denise Nowak, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

             That I reported the proceedings in the within entitled matter, and that the within transcript is a true record of such proceedings.

             I further certify that I am not related, by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

             IN WITNESS WHEREOF, I have hereunto set my hand this _____ day of _____, 2007.

             _____

             DENISE NOWAK