Allan S. Brilliant (AB 8455)  Hearing Date & Time: TBD.
Craig P. Druehl (CD 2657)  Objection Deadline: TBD.
Meagan E. Costello (MC 0962)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

Attorneys for Castlerigg Master Investments Ltd.;
CR Intrinsic Investors, LLC; Davidson Kempner
Capital Management LLC; Elliot Associates, L.P.;
and SPCP Group, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                          :
                                                :    Chapter 11
                                                :
DELPHI CORPORATION, et al.,                     :    Case No. 05-44481 (RDD)
                                                :
                        Debtors.                :    Jointly Administered
                                                :
------------------------------------------------------------x

**OBJECTION BY CASTLERIGG MASTER INVESTMENTS LTD.; CR INTRINSIC INVESTORS, LLC; DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC; ELLIOT ASSOCIATES, L.P.; AND SPCP GROUP, LLC TO MOTION BY THE DEBTORS FOR ORDER APPROVING MULTIDISTRICT LITIGATION AND INSURANCE SETTLEMENTS**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC; Davidson Kempner

Capital Management LLC; Elliot Associates, L.P.; and SPCP Group, LLC or their respective

affiliates (each, a "Creditor"), holders in the aggregate of not less than $420 million in aggregate

principal amount of the senior notes issued pursuant to that certain Indenture for Debt Securities

dated as of April 28, 1999 between Delphi Automotive Systems Corporation and the First

National Bank of Chicago, as Trustee (the "Senior Notes"), each in their individual capacity as a

creditor of Delphi Corporation (together with certain of its debtor affiliates and subsidiaries, collectively the "Debtors") by and through its counsel, Goodwin Procter LLP, hereby submits this Objection (the "Objection") to the motion dated September 7, 2007, of the above-captioned debtors and debtors in possession (the "Debtors") for order approving multidistrict litigation and insurance settlements (Docket No. 9296) (the "MDL Motion").  In support of the Objection, each Creditor respectfully states as follows:

## PRELIMINARY STATEMENT

The relief sought under the MDL Motion does not satisfy Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and therefore cannot be approved by this Court.  With limited exceptions, none of which are applicable here, under Bankruptcy Rule 9019 a settlement's distribution scheme must comply with the Bankruptcy Code's priority scheme in order for a Bankruptcy Court to approve a settlement of claims.  As decreed by the Supreme Court, the key question is whether the settlement is "fair and equitable."  After a review of the MDL Motion, it is apparent that the question of whether the settlements are fair and equitable must be answered negatively, as it attempts to treat subordinated creditors the same as senior creditors.  For this reason, and others, the settlements described in the MDL Motion fall far outside the range of reasonableness.  Consequently, the relief sought under the MDL Motion must be denied.

In seeking approval of the MDL Motion, the Debtors attempt to characterize the MDL Motion as merely a request that the Court approve a settlement amount and grant the Securities Class[1] an allowed claim and the ERISA Class (the Securities Class and ERISA Class together, the "Subordinated Classes") an allowed interest to be treated in accordance with applicable

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the MDL Motion.

2

bankruptcy law.  In reality, the Debtors are asking the Court for the extraordinary relief of elevating – to the status afforded general unsecured creditors – claims and interests that are otherwise statutorily subordinated under section 510(b) of the Bankruptcy Code or pursuant to the terms of the stipulation itself, without justification and without regard for whether or not general unsecured creditors (including the holders of the Senior Notes) are actually paid in full (including applicable interest) under the Plan.

As a fundamental matter, the proposed settlements fail to meet the requirements of Bankruptcy Rule 9019 because they violate the absolute priority rule.  <u>First</u>, the stipulations that have been submitted ask the court to approve a recovery that far exceeds <u>any</u> result that the plaintiffs, as holders of subordinated claims and interests, could have gained in the underlying litigation: <u>pari passu</u> treatment with the senior creditors.  <u>Second</u>, in addition to the litigation windfall, the recovery afforded to the Subordinated Classes prejudices the rights and recoveries of the Debtors' senior creditors.  Moreover, the settlements grant impermissibly broad releases to the Debtors' current and former officers and directors.  The blatant violation of the absolute priority rule together with the windfall being given to subordinated creditors must lead this court to one simple conclusion: the relief sought in the MDL Motion must be denied.

Not only is the relief sought outside the parameters of Bankruptcy Rule 9019, the relief requested by the Debtors is also premature.  Any payment to the Subordinated Classes is premised upon full recoveries (including applicable interest) to senior creditors, including each Creditor.  Despite this, the record before the Court in connection with the MDL Motion is wholly devoid of evidence that senior creditors will be paid in full.  The premise that senior creditors are being paid in full is apparently based on the Debtors' assertion that the current Plan provides a full recovery to senior creditors, but the MDL Motion fails to disclose that under the Debtors'

3

own proposed valuation report, even under the **midpoint** of the Debtors' proposed range of enterprise value of between $11.4 billion and $14.4 billion, the per share value would be $38.28 and senior creditors would receive only an **88% recovery**. The $38.28 mid-point of the Debtors' own valuation range is approximately 17% lower than $45 "deemed" per share value ascribed to the new shares under the Plan. Moreover, the Debtors' currently proposed valuation report remains suspect, as it has not been approved by the Court and will not even be considered until the confirmation hearing. As a result, based on the record currently before the Court, the Debtors cannot meet the burden of proof required for the Court to approve the MDL Motion at this time.

For the reasons set forth herein, the relief sought by the Debtors is at best premature and, in all events, cannot be approved under applicable bankruptcy law in its current form. As such, the MDL Motion should be denied.

## RELEVANT BACKGROUND

1. On October 8 and 14, 2005, the Debtors commenced these cases under chapter 11 of Title 11, United States Code 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2. On October 17, 2005 pursuant to section 1102 of the Bankruptcy Code, the United States Trustee appointed a statutory committee of unsecured creditors in these cases. On April 28, 2006, the United State Trustee appointed an official committee of equity holders.

3. On September 6, 2007, the Debtors filed their Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors And Debtors-In-Possession together with the disclosure statement relating to thereto (the "Disclosure Statement").

4. On September 7, 2007, the Debtors filed their Motion for Order Approving Multidistrict Litigation and Insurance Settlements. The MDL Motion seeks approval, pursuant

4

to 11 U.S.C. § 363(b)(1) and Bankruptcy Rule 9019 of, <u>inter</u> <u>alia</u> (i) an agreement purporting to settle multiple securities lawsuits pending against Delphi and other defendants, (ii) an agreement purporting to settle lawsuits alleging violations of the Employee Retirement Income Security Act of 1974, (iii) an agreement purporting to resolve certain insurance claims related to the securities lawsuits, (iv) Delphi's release of all of its claims against its current and former officers and directors relating to securities violations, (v) the certification of classes for settlement purposes and granting the class representatives allowed claims and/or interests, and (vi) authorizing class representatives to vote on behalf of class members and directing the class representatives to vote in favor of acceptance of the Plan.

    5.    Simultaneously herewith, the Creditors filed their limited objection to the order preliminarily approving multidistrict litigation and insurance settlement proposed by the Debtors (the "<u>Limited Objection</u>").

## ARGUMENT

### I. THE MDL MOTION FAILS TO SATISFY THE REQUIREMENTS OF BANKRUPTCY RULE 9019

    6.    While Bankruptcy Rule 9019 governs the consideration of a compromise or settlement outside of a plan, the Second Circuit has recently held that for a Bankruptcy Court to approve a pre-plan settlement under Bankruptcy Rule 9019, it must find that the settlement is fair and equitable.  See <u>Iridium Operating LLC v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)</u>, 478 F.3d 452, 462 (2d Cir. 2007)(citing <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1968)).  To determine whether a settlement is fair and equitable, the most important factor for the court to consider is whether the settlement complies with the absolute priority rule, and in most cases such compliance is outcome dispositive.  <u>Id.</u> at 464.  In addition, the settlement must fall within the

5

range of reasonableness as determined by the application of several additional factors. See In re Remsen Partners, Ltd., 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) ("[T]he courts have identified several factors to be considered when evaluating whether a proposed settlement is within the reasonable range of litigation possibilities and in the best interest in the estate and creditors"). These factors include:

>     (a)    **the balance between the litigation's possibility of success and the settlement's future benefits**,
>
>     (b)    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including difficulty in collecting on the judgment,
>
>     (c)    **the paramount interests of creditors, including each affected class's relative benefits and the degree to which either do not object to or affirmatively support the proposed settlement**,
>
>     (d)    whether other parties in interest support the settlement,
>
>     (e)    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing the settlement,
>
>     (f)    **the nature and breadth of releases to be obtained by officers and directors**, and
>
>     (g)    the extent to which the settlement is the product of arm's length bargaining.

Iridium, 478 F.3d at 462 (emphasis added) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968)).  A settlement agreement that violates the absolute priority rule cannot overcome this deficiency unless these factors weigh heavily in favor of approval and the reasons for such deviation are justified and articulated. Id. at 464-65. Even then, the deviations from the absolute priority rule must be minor. See id. The proposed Securities Stipulation and ERISA Stipulation (together, the "Stipulations") not only deviate from the absolute priority rule but also fail to satisfy the relevant factors under

6

Bankruptcy Rule 9019. Simply stated, the MDL Motion fails to satisfy the basic factors articulated by the court in Iridium and should be denied.

### A.  The Stipulations are Not Fair and Equitable to Senior Creditors

7.  The relief sought in the MDL Motion violates the absolute priority rule by elevating subordinated creditors to the status of senior creditors. It is undisputed that the claim granted to the Securities Class, a claim for damages arising out of alleged violations of federal securities laws against Delphi and certain of its current and former directors, is subordinated to general unsecured claims under Section 510(b) of the Bankruptcy Code.[2] Similarly, the ERISA Allowed Interest (together with the Securities Allowed Claim, the "Subordinated Claims") is, in all events subordinate to the claims of creditors even under the terms of the ERISA Stipulation itself. See e.g., MDL Motion, ¶ 4 (referring to the "ERISA Named Plaintiffs' allowed interest."). Under the absolute priority rule, no distribution can be made on account of the Subordinated Claims unless and until senior creditors are paid in full (including payment of applicable interest) or senior classes agree to such treatment under a plan of reorganization.

8.  To be approved by a bankruptcy court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, a pre-plan settlement agreement must be fair and equitable. See id. at

---

[2] See MDL Motion ¶ 1; Baroda Hill Investments, Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.), 281 F.3d 133, 138-41 (3d Cir. 2002) (Claims for violations of securities laws must be subordinated to general unsecured creditors under Section 510(b)); In re Enron Corp., 341 B.R. 141, 157-58 (Bankr. S.D.N.Y. 2006) (Section 510(b) applies where securities law is source of parties' obligations). Section 510(b) of the Bankruptcy Code automatically subordinates certain claims made on account of "damages arising from the purchase or sale of a security" to claims or interests that are senior or equal to the claim or interest represented by the underlying security. The Bankruptcy Code defines "security" to include, inter alia, notes, stock, bonds, debentures, and transferable shares. 11 U.S.C. § 101(49)(A). Thus, Section 510(b) requires the subordination of damage claims made by or on account of bondholders or stockholders for alleged violations of federal securities laws to the claims of more senior creditors, including the claims on account of the securities themselves. The Debtors state in the MDL Motion that "[w]ith respect to the members of the Securities Class (and those who opt out of the Securities Class) and the ERISA Class, the stipulations provide for consideration that otherwise would not be available to those classes of creditors. MDL Motion, ¶ 78. In addition, the Plan refers to the claim of the Securities Class as a "510(b) Note Claim," and the causes of action of the arising from the alleged ERISA violation as "510(b) ERISA Claims." See Plan §§ 1.168, 1.169. Thus, the Debtors have admitted that the Subordinated Claims are subordinated pursuant to Section 510(b) of the Bankruptcy Code.

7

464 ("[W]hether a particular settlement's distribution scheme complies with the code's priority scheme must be the most important factor for the bankruptcy court to consider in determining whether the settlement is "fair and equitable" under Rule 9019.") (emphasis added); United States v. AWECO, Inc. (In re AWECO), 725 F.2d 293 (5th Cir. 1984) ("[B]ankruptcy court abuses its discretion in approving a settlement with a junior creditor unless the court concludes that priority of payment will be respected as to objecting senior creditors"). Similar to the analysis performed under Section 1129(b)(2), the most important factor in making such a finding is whether or not the settlement agreement complies with the absolute priority rule.[3] See In re Iridium, 478 F.3d at 464 ("The court must be certain [when approving a pre-plan settlement] that parties to a settlement have not employed a settlement as a means to avoid the priority strictures of the Bankruptcy Code."); see also Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Electric Power Coop., Inc.), 119 F.3d 349, 355 (5th Cir. 1997) (approval should only be given to a settlement if senior interests are entitled to full priority over junior ones); In re Mirant Corp., 348 B.R. 725, 738 (Bankr. N.D. Tex. 2006) (In order for settlement to be approved, it must be consistent with the absolute priority rule).

9.  In AWECO, the Fifth Circuit held that a bankruptcy court abuses its discretion when it approves a settlement prior to confirmation of a plan "unless the court concludes that priority of payment will be respected as to objecting senior creditors." In re AWECO, 725 F.2d

---

[3]  The absolute priority rule is a judicially created concept, predating the Bankruptcy Code, prohibiting a holder of a subordinated claim or interest from receiving any property in a bankruptcy case unless all senior claims or interest are paid in full. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988) (Absolute priority rule had genesis in judicial construction of early bankruptcy statute). Generally, the absolute priority rule is embodied in the requirement that a plan of reorganization be "fair and equitable" under Section 1129(b)(2) of the Bankruptcy Code,[3] but it also applies in the settlement context. See Iridium Operating LLC v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 464 (2d Cir. 2007) ("[W]hether a particular settlement's distribution scheme complies with the Code's priority scheme must be the most important factor for the bankruptcy court to consider when determining whether a settlement is 'fair and equitable'").

8

at 298.  There, the bankruptcy court, under the precursor to Rule 9019, approved a settlement between the Debtor and a supplier that called for the transfer of assets that were subject to secured claims.  Id. at 297.  The Fifth Circuit held that the bankruptcy court abused its discretion in approving the settlement over the objection of senior creditors because the settlement was not fair and equitable to senior creditors, as the debtors did not establish that the estate assets were sufficient to pay senior creditors in full before settling the claim of junior creditors.  Id. at 298.

10.     The Second Circuit recently had the opportunity to consider the AWECO ruling and confirmed that, "whether a pre-plan settlement's distribution plan complies with the Bankruptcy Code's priority scheme will be the most important factor for a bankruptcy court to consider in approving a settlement under Bankruptcy Rule 9019."  In re Iridium, 478 F.3d at 455.  Although the Second Circuit stopped just short of adopting the per se rule of AWECO, it held not only that the application of the absolute priority rule was the most important issue when considering a settlement, but also that violation of this principle would "often be dispositive" in the determination not to approve such settlement.  Id.  The Second Circuit limited the ability of a court to approve a settlement that deviates from the absolute priority rule to rare cases where a settlement provides for a minor deviation from the absolute priority rule and where the parties are able to credibly justify the need therefor.  Id. at 464-65.

11.     The settlement at issue in Iridium was an agreement between the creditors' committee and the secured lenders, settling intercreditor litigation.  Pursuant to the settlement, the secured lenders agreed to contribute $37.5 million of its cash collateral to a litigation trust, a percentage of the recoveries of which (if any) would be distributed first to the secured lenders with the rest passing to administrative and unsecured creditors according to priority under a plan.  Id. at 459-60.  Regardless of the outcome of the litigation, any of the initial $37.5 million

9

remaining at the end of the litigation would be distributed to unsecured creditors, even if senior claims were not paid in full.  Id.  Motorola, as an administrative claimant (and the defendant in potential actions brought by the litigation trust), objected to the settlement, arguing that the use of the $37.5 million to establish the trust, as well as the proposed distribution at the conclusion of the litigation to general unsecured creditors violated the absolute priority rule because it did not first pay its priority claims.  Id. at 465.  The bankruptcy court held a hearing and approved the settlement over Motorola's objection, and the district court affirmed.  Id. at 460.

12.     The Second Circuit noted that if the settlement agreement had not been approved, and the creditors' committee was unsuccessful in the litigation against the secured lenders, then there would be insufficient estate assets to pay secured creditors in full, let alone provide a recovery to priority claimholders.  Id. at 465-66.  The Second Circuit accepted the settling parties' reasoning for the initial transfer of funds to the litigation trust.  Id.  The creditors' committee, however, offered no specific, credible reason to justify the settlement's distribution of the balance left in the litigation trust in potential violation of the absolute priority rule.  Id. at 466.  The Second Circuit vacated the settlement and remanded the matter to the bankruptcy court to determine whether such a justification existed.  Id. at 466-67.

13.     The negative impact of the approval of the Stipulations on the recovery of senior creditors here is virtually identical to the impact of the settlement rejected by the court in AWECO that provided for a recovery to junior creditors without ensuring that sufficient assets would be available to provide senior creditors a full recovery, and was strongly disfavored by the Second Circuit in Iridium.  Here, the MDL Motion provides that, even under a plan that pays general unsecured creditors less than a full recovery (which appears to be true under the current Plan), the Stipulations will remain in full force and effect and the holders of the Subordinated

10

Claims will receive a distribution that is pari passu with senior creditors. See MDL Motion, ¶ 6 ("If the Debtors' proposed Plan is not confirmed, for example, and instead the Debtors emerge from chapter 11 under a Plan that provides general unsecured creditors with a 50% recovery, the stipulations will remain in force and the Securities Lead Plaintiffs and the ERISA Named Plaintiffs would likewise receive a 50% recovery on their allowed claim and allowed interest respectively"). In addition, although the Debtors state that ERISA Stipulation provides the ERISA Class consideration "that will satisfy an allowed interest," such consideration will be in "the same form, ratio, and treatment provided to general unsecured creditors under the Plan." MDL Motion, ¶ 40(b) (emphasis added). Thus, the Stipulations elevate the priority of the Subordinated Claims to equal status with general unsecured creditors. This treatment ensures that assets rightly belonging to general unsecured creditors will be depleted by a distribution to subordinated creditors and interest holders, in clear violation of the absolute priority rule.

14.     The approval of the Stipulations, which grant subordinated creditors and interest holders equal priority with senior creditors, would constitute a direct violation of the absolute priority rule since it is unlikely that senior creditors are being paid in full here and the Creditors do not consent to such treatment. Using the Debtors' own valuation, even under the **midpoint** of the Debtors' proposed range of enterprise value between $11.4 billion and $14.4 billion, the per share value would be $38.28 and senior creditors would receive only an **88% recovery**. Thus, not only have the Debtors offered no evidence on the actual recovery afforded senior creditors, but under the Debtors' own proposed valuation report (which has not been approved by the Court), senior creditors are unlikely to receive a full recovery. As such, the Stipulations cannot be approved under the law of this Circuit.

11

### B.   The MDL Motion Must Be Denied Because the Stipulations Do Not Satisfy the Other Requirements under Bankruptcy Rule 9019

15.     The second prong of the <u>Iridium</u> test requires that the settlement meet several factors in order to fall within the range of reasonableness.  <u>In re Iridium</u>, 478 F.3d at 462.  In addition to not being fair and equitable, the Stipulations also fail to satisfy the relevant factors under the reasonableness standard of Bankruptcy Rule 9019 as required under the second prong of the <u>Iridium</u> test.  See <u>e.g.</u>, <u>In re Remsen</u>, 294 B.R. 557, 565 (The court should canvass the issues to be sure that the settlement falls within range of reasonableness, and not "rubber stamp" the recommendation of the debtor").  As discussed above, a settlement agreement can overcome minor deviations from the absolute priority rule <u>only</u> if these factors weigh <u>heavily</u> in favor of approval.  <u>In re Iridium</u>, 478 F.3d at 464-65.  The relevant factors to be considered are (a) the balance between the litigation's possibility of success and the settlement's future benefits and (b) the paramount interests of creditors, including each affected class's relative benefits and the degree to which either do not object to or affirmatively support the proposed settlement, and (c) the nature and breadth of the releases to be obtained by officers and directors.  As discussed below, each of these factors also weigh heavily towards denial of the MDL Motion.[4]  <u>In re Iridium</u>, 478 F.3d at 461-62.

####    1.    Stipulations Would Grant Plaintiffs a Litigation Windfall, Beyond Any Possibility of Success.

16.     The Debtors, in arguing that the Stipulations satisfy the first relevant factor, address the reasonableness of the <u>amount</u> of the settlement, focusing mainly on the delay and litigation expense avoided because of the settlement, but do not even attempt to address the reasonableness (or lack thereof) associated with the elevated priority afforded to the

---

[4]   Another relevant factor is whether parties in interest support the Stipulations.  Although it is unclear at the time of filing of this Objection whether other parties in interest will support, take no position on, or object to the MDL Motion, several major constituencies have reserved their rights to object.

12

Subordinated Classes.  See MDL Motion, ¶ 76.  In addition, the Debtors fail to acknowledge a crucial fact:  even assuming a high probability of the success of the Securities Lead Plaintiffs and the ERISA Named Plaintiffs in the litigation, an elevation of the priority of the Subordinated Claims could never be obtained through litigation.  Even in a complete litigation victory in the underlying causes of action, the Securities Lead Plaintiffs and the ERISA Named Plaintiffs would not be able to recover on account of their allowed claims and interests unless and until senior creditors, including the Creditors, were paid in full.  This elevation of priority causes the Stipulations to fail the first prong of the Rule 9019 test because it provides a greater recovery to the Subordinated Classes than would otherwise be achieved, at the expense of, and with no benefit to, general unsecured creditors.

       2.   Stipulations Not in Paramount Interests of Senior Creditors.

   17.  The Debtors' argument that the Stipulations satisfy the paramount interests of creditors fails for similar reasons.  The Debtors acknowledge that the Stipulations provide consideration that would otherwise not be available to the Subordinated Classes, but suggest that creditors should be unconcerned because the Plan proposes to pay creditors in full, so the impact of the Stipulations on creditors is the same whether or not the claims and interests are actually subordinated.  See MDL Motion, ¶ 78.  However, the Debtors undermine their own argument by providing for a recovery to subordinated creditors and interest holders that is pari passu with that afforded general unsecured creditors not only in this Plan, but also under any subsequent plan, regardless of the actual recovery to general unsecured creditors.  See MDL Motion, ¶ 6.  Thus, the purported lack of impact on creditor recoveries – the very reason the Debtors argue the settlements satisfy the interests of creditors – is the reason it must fail.

       3.   Nature and Breadth of Releases of Insiders Warrants Denial of Stipulations.

18.     Finally, the Stipulations grant releases to certain of the Debtors' current and former officers and directors of potentially large claims, including to certain parties that are not signatories to the Stipulations. The risk of collusion or the perception of collusion was particularly important to the Second Circuit in Iridium: "[r]ejection of a per se rule has an unfortunate side effect, however: a heightened risk that the parties to a settlement may engage in improper collusion." In re Iridium, 478 F.3d at 464. To combat this risk, the Secured Circuit focused on the importance of examining the settlement where such collusion may be present to "be certain that parties to a settlement have not employed a settlement as a means to avoid the priority strictures of the Bankruptcy Code." Id. at 464.

19.     Here, although the Debtors insist that Delphi's board of directors followed proper procedures in granting the releases to the directors and officers under the Stipulations, the possibility still exists that the board of directors did not focus on the elevation of priority granted the Subordinated Claims because of the releases from liability of the directors and officers. The Stipulations release a multitude of parties, including nondebtor insiders who were not parties to the Stipulations, from all claims related to the Delphi Securities Action and the Delphi ERISA Action. See MDL Motion, ¶ 3, 28(a), 37(a).

20.     In the context of a chapter 11 plan of reorganization, the Second Circuit has held that nondebtor releases are "proper only in rare cases." Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 141 (2d Cir. 2005). In reaching this holding, the Second Circuit was motivated by two concerns: (i) the fact that the Bankruptcy Code explicitly allows for nondebtor releases only in asbestos cases where the specific requirements of Section 524(g) of the Bankruptcy Code are satisfied, and (ii) the significant potential for abuse, especially when releases "afford blanket immunity." Id. at 142.

21.     This Court has recently considered the concerns of the <u>Metromedia</u> court in evaluating the releases granted pursuant to a settlement agreement, and found that the concerns were not implicated because the release was narrow in scope, did not release claims against third parties, and released only claims that were necessary to prevent further litigation with respect to the claims covered by the settlement agreement.  <u>In re Delta Air Lines, Inc.</u>, 370 B.R. 537, 551 (Bankr. S.D.N.Y. 2007).  However, in contrast to <u>Delta</u>, the releases granted by the Stipulations are extremely broad and release claims against many nondebtor third parties, some of which were not even parties to the Stipulations.  See <u>MDL Motion</u>, ¶ 3 (Released parties include "officers and directors who are not parties to the Securities Stipulation [or] the ERISA Stipulation.").  Thus, the Second Circuit's concern about abuse is implicated here, and such concern weighs against approval of the MDL Motion.

22.     Because the Stipulations provide a recovery to the Securities Class and the ERISA Class that could not be gained through even the most favorable litigation scenario, because the recoveries of general unsecured creditors, including the Creditors, are diminished by the <u>pari passu</u> treatment of the Subordinated Claims, and because of the risk of improper collusion in negotiating and structuring the Stipulations, the Stipulations cannot pass muster under even the lowest level of reasonableness.  For all of these reasons, and because the Stipulations are not fair and equitable, the MDL Motion must be denied.

## II.     CONSIDERATION OF THE STIPULATIONS PRIOR TO THE CONFIRMATION HEARING IS PREMATURE

23.     Under the applicable law of this Circuit, the Subordinated Classes cannot be afforded a recovery under this Plan or any other plan unless and until the Debtors demonstrate upon a full record that senior creditors are receiving a full recovery under any proposed distribution scheme or unless the senior creditors consent.  Despite these requirements, the

15

Debtors have not proven that general unsecured creditors will be paid in full, and the Debtors have sought approval of the settlement prior to confirmation of a plan. The best the Debtors do is refer to the Plan, which, as this court is aware, has not been approved for creditor consideration and voting, let alone been confirmed.

24. Not only is there no evidence of the purportedly full payment to senior creditors in the MDL Motion, but any evidence that the Debtors could offer at this time has not been tested by an appropriate evidentiary hearing and will not be properly tested until the confirmation hearing. Thus the Debtors cannot meet their burden of proof regarding value, until the confirmation hearing.[5] Therefore, any request for approval of the MDL Motion prior to confirmation is premature because any request for approval of the MDL Motion must at the very least, be delayed until the hearing to consider confirmation of the Debtors' Plan. Thus, each Creditor objects to any approval of the MDL Motion including on a preliminary and final basis.

## CONCLUSION

The Stipulations violate the absolutely priority rule, are unreasonable, and cannot be approved under Bankruptcy Rule 9019. The Stipulations grant the holders of the Subordinated Claims extraordinary relief, far exceeding any litigation result that may have been achieved. The Stipulations also impermissibly grant insiders broad releases. For all of these reasons, the MDL Motion must be denied.

## RESERVATION OF RIGHTS

The Creditors hereby expressly reserve all of their rights to raise any and all objections concerning the MDL Motion, whether or not raised herein or in the Limited Objection,

---

[5] Any approval of the MDL Motion prior to the confirmation hearing should be subject to a full reservation of rights on valuation and claims subordination, and each Creditor expressly reserves its rights, inter alia: (i) regarding valuation of the New Common Stock (as defined in the Plan) and the Debtors and (ii) that recoveries afforded to holders of subordinated claims should be paid to senior creditors pursuant to Section 510(b) of the Bankruptcy Code.

16

including, but not limited to the right to supplement this Objection or the Limited Objection, at or before any other date on which objections relating to the MDL Motion will be heard.

## **WAIVER OF MEMORANDUM OF LAW**

Because this Objection presents no novel issues of law and the authorities relied upon are set forth herein, each Creditor respectfully (i) requests that the Court waive the requirement of filing a separate memorandum of law in support of this Objection pursuant to L.B.R. 9013-1(b), and (ii) reserves the right to file a brief in reply to any response to this Objection.

*[Remainder of this Page Intentionally Left Blank]*

WHEREFORE, each Creditor respectfully requests that this Court (a) either (1) deny approval of the MDL Motion or (2) condition approval of the MDL Motion on the confirmation of a plan that pays each Creditor in full, and (b) grant such other relief as is just.

Dated: New York, New York
       October 19, 2007

                      GOODWIN PROCTER LLP

                      By: /s/ Allan S. Brilliant
                      Allan S. Brilliant (AB 8455)
                      Craig P. Druehl (CD 2657)
                      Meagan E. Costello (MC 0962)
                      599 Lexington Avenue
                      New York, New York 10022
                      (212) 813-8800

                      Attorneys for Castlerigg Master Investments Ltd.;
                      CR Intrinsic Investors, LLC; Davidson Kempner
                      Capital Management LLC; Elliot Associates, L.P.;
                      and SPCP Group, LLC