# Exhibit 1

# DELPHI AUTOMOTIVE SYSTEMS SAVINGS TRUST

NY2:\523699\02\835702LDOC\72240.0342

DOL-PSP-000060

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | DEFINITIONS | 2 |
| ARTICLE II | THE TRUST FUND | 4 |
| 2.1 | Establishment of Trust Fund | 4 |
| 2.2 | Limitations Applicable to Delphi Savings Plans. | 4 |
| 2.3 | Contributions and Other Additions | 4 |
| 2.4 | Transfer of Assets | 5 |
| 2.5 | Fund for Exclusive Benefit of Employees | 5 |
| 2.6 | Payments from the Trust Fund | 6 |
| ARTICLE III | MANAGEMENT OF ACCOUNTS | 6 |
| 3.1 | Establishment of Manager Accounts | 6 |
| 3.2 | Management by Investment Managers Appointed by GMIMCo | 6 |
| 3.3 | Management by Named Fiduciaries or Investment Managers Appointed by Them. | 7 |
| 3.4 | Management by Trustee | 8 |
| 3.5 | Directions Direct to Broker | 8 |
| 3.6 | Securities Lending | 9 |
| 3.7 | Funding Policy | 9 |
| 3.8 | Notices Respecting the Assets of a Manager Account. | 9 |
| ARTICLE IV |  | 9 |
| 4.1 | Company Stock Accounts | 9 |
| 4.2 | ESOP | 10 |
| ARTICLE V | TENDERS FOR COMPANY SECURITIES | 11 |
| ARTICLE VI | VOTING COMPANY SECURITIES; OPTIONS AND OTHER RIGHTS | 13 |
| ARTICLE VII | SETTLEMENT PRACTICES | 14 |
| 7.1 | General Settlement Policy | 14 |
| ARTICLE VIII | BANK-MAINTAINED ACCOUNTS | 17 |
| 8.1 | General | 17 |
| ARTICLE IX | INVESTMENT POOL ACCOUNTS | 17 |
| 9.1 | Division of Trust Fund | 17 |

NY2:\523699\02\B837021.DOC\72240.0342

DOL-PSP-000061

**TABLE OF CONTENTS**
(continued)

                                                                                        **Page**

9.2    Unit or Interests............................................................................ 18

9.3    Maintenance of Record Books ..................................................... 18

ARTICLE X        VALUATION ...................................................... 18

10.1    Valuation of Accounts ................................................................. 18

ARTICLE XI       OTHER CUSTODIAL ARRANGEMENTS................... 19

11.1    Transfer of Assets ........................................................................ 19

11.2    Other Trusts or Custody Arrangements ..................................... 20

11.3    Accounting for Other Custody Arrangements ........................... 20

ARTICLE XII      DISBURSEMENTS AND TAXES .......................... 21

12.1    Disbursements.............................................................................. 21

12.2    Taxes............................................................................................ 21

12.3    Tax Reclaim Services ................................................................. 22

ARTICLE XIII     POWERS OF THE TRUSTEE................................ 23

13.1    Powers of Trustee ....................................................................... 23

13.2    Prohibited Transactions .............................................................. 25

ARTICLE XIV      TRUSTEE............................................................. 26

14.1    Appointment, Removal and Resignation of Trustee................... 26

14.2    Standard of Care .......................................................................... 26

14.3    Directions and Reliance On Communications ........................... 26

14.4    Records ........................................................................................ 27

14.5    Accounts of the Trustee .............................................................. 27

14.6    Compensation and Expense Reimbursements ........................... 28

14.7    Responsibility of the Trustee ..................................................... 28

14.8    Insurance...................................................................................... 29

14.9    Indemnification of and by Trustee.............................................. 29

ARTICLE XV      DISQUALIFICATION OF A DELPHI SAVINGS PLAN............... 32

15.1    Representations of Delphi Savings Plans ................................... 32

15.2    Segregation of a Delphi Savings Plan........................................ 32

DOL-PSP-000062

## TABLE OF CONTENTS
### (continued)

|  |  | Page |
|---|---|---|
| ARTICLE XVI | MISCELLANEOUS | 32 |
| 16.1 | Amendment | 32 |
| 16.2 | Termination | 32 |
| 16.3 | Appointment of the Trustee as Agent | 33 |
| 16.4 | Representations | 33 |
| 16.5 | Duty to Furnish Information | 33 |
| 16.6 | Situs of Trust and Jurisdiction | 33 |
| 16.7 | Counterparts | 33 |

DOL-PSP-000063

## DELPHI AUTOMOTIVE SYSTEMS SAVINGS TRUST

### As Adopted Effective as of May 28, 1999

THIS TRUST AGREEMENT is made and effective as of May 28, 1999, by and among GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION ("GMIMCo"), solely in its capacity as a named fiduciary with respect to the retirement plans described below, and STATE STREET BANK AND TRUST COMPANY (hereinafter referred to as "State Street" or, in its capacity as the Trustee hereunder, as "Trustee").

### RECITALS:

WHEREAS, the Executive Committee of the Board of Directors ("Committee") of Delphi Automotive Systems Corporation ("Delphi") is a named fiduciary with respect to the control and management of each of the individual account retirement plans sponsored by Delphi and its subsidiaries and intended to participate herein ("Delphi Savings Plans");

WHEREAS, Delphi [or a subsidiary thereof] is the plan administrator of each of the Delphi Savings Plans;

WHEREAS, the participants in the Delphi Savings Plans are authorized to direct the investment of their own individual accounts under the terms of such plans in accordance with Section 404(c) of the Employee Retirement Income Security Act of 1974, as amended, and shall be treated for purposes of this Agreement as named fiduciaries solely with respect to their own individual accounts;

WHEREAS, the Executive Committee has appointed GMIMCo to serve as a named fiduciary with respect to the Delphi Savings Plans and has delegated to GMIMCo, in its capacity as a named fiduciary, the authority and power to select one or more trustees and to enter into trust agreements with respect to the Delphi Savings Plans;

WHEREAS, GMIMCo, in its capacity as a named fiduciary with respect to the Delphi Savings Plans, desires to appoint State Street, and State Street is willing to accept such appointment, to serve as the Trustee and to hold and administer the trust fund established hereunder in accordance with the terms and conditions set forth in this Agreement;

NOW, THEREFORE, GMIMCo and State Street hereby agree as follows:

NY2:\523699\02\883702LDOCV72240.0342

DOL-PSP-000064

# ARTICLE I

## DEFINITIONS

For purposes of this Agreement, each of the following terms shall have the meaning ascribed to it hereunder unless the context indicates otherwise.

"**Accounts**" means all Investment Pool Accounts and all Manager Accounts hereunder.

"**Administrative Agent**" means any person designated to facilitate directions or other actions taken by any Participant in accordance with Section 404(c) of ERISA with respect to such Participant's Individual Account under any Delphi Savings Plan which constitutes a defined contribution plan.

"**Affiliated Employer**" means, with respect to any Person, any other Person controlling, controlled by or under common control with such Person.

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time, and all applicable regulations thereunder, and any successor statute thereto.

"**Delphi Savings Plan**" means each retirement plan that (i) is sponsored by Delphi or any of its Affiliated Employers, (ii) is intended to qualify under Section 401 of the Code and (iii) with Delphi's prior approval, participates in the Trust Fund.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and all applicable regulations thereunder and any successor statute thereto.

"**Global Assets**" means any Securities or Other Property (i) for which the principal trading market is located outside of the United States, or (ii) for which presentment for payment is to be made outside of the United States, or (iii) which are acquired outside of the United States, or (iv) held as an incident to Trust Fund investments in any of the foregoing.

"**Individual Account**" means, with respect to a Participant, an account reflecting the amount of assets of the Trust Fund credited to such Participant principally for recordkeeping purposes and, unless otherwise specifically provided in any applicable Delphi Savings Plan, shall not hold a segregated portion of the assets of the Trust Fund.

"**Interests**" means a beneficial interest in the Trust Fund or in any Investment Pool Account, in each case expressed in a manner other than as a fractional undivided interest (i.e., Unit).

"**Investment Guidelines**" means, with respect to any Manager Account (other than any such Account under the management of a Named Fiduciary), the investment restrictions, limitations and conditions adopted from time to time with respect to such account by GMIMCo or any Named Fiduciary with respect to such Account.

DOL-PSP-000065

"**Investment Manager**" means GMIMCo, any investment manager (as defined in Section 3(38) of ERISA) or the Trustee under a separate custodial arrangement established pursuant to Article VII.

"**Investment Pool Account**" means an account maintained solely for recordkeeping purposes by the Recordkeeper, comprised of one or more Manager Accounts and established at GMIMCo's direction.

"**Manager Account**" means each account established under the Trust Fund at the direction of GMIMCo or a Named Fiduciary for the purpose of the management of the assets of such account.

"**Named Fiduciary**" means any Person (other than the Trustee) which qualifies as a named fiduciary (as defined in Section 402(a)(2) of ERISA) with respect to a Delphi Savings Plan or its properly authorized delegate (including, but not limited to, GMIMCo) and, solely for purposes of this Agreement, each Participant with respect to his or her own Individual Account under a Delphi Savings Plan; provided, however, that such Person is identified in writing to the Trustee.

"**Participant**" means any individual participating in any of the Delphi Savings Plans (including any beneficiary or alternate payee of an employee participating in a Delphi Savings Plan).

"**Person**" means an association, business trust, corporation, employee organization, estate, individual, joint venture, limited liability company, mutual company, partnership, trust, unincorporated organization, government or any agency or instrumentality thereof, or other entity organized under the laws of any jurisdiction (within or without the United States of America).

"**Recordkeeper**" means State Street Bank and Trust Company or other Person designated from time to time by GMIMCo to maintain one or more consolidated accounts with respect to Investment Pool Accounts and other Accounts, and Individual Accounts, under a separate written agreement providing for recordkeeping and accounting agent services.

"**Securities or Other Property**" means any property of any kind or nature, whether real or personal, tangible or intangible, whole or part interest therein, wherever situate, without being limited to the classes of property in which Trustee are authorized to invest trust funds by any law or any rule of court of any State, including but without being limited to: currency, evidences of obligations or indebtedness of any Person, trust or participation certificates, general or limited interests in partnerships, membership interests in any organization or other Person, insurance or annuity contracts, guaranteed investment contracts, synthetic guaranteed investment contracts, bank investment contracts, leaseholds, fee titles, mortgages or other interests in realty, preferred or common stocks, American depositary receipts, certificates of deposit, evidences of ownership in joint ventures, swap contracts, futures and/or option contracts, short-selling programs, foreign exchange contracts, contracts for future or immediate

NY2:\523499\02\8437021.DOC\72240.0342                         3

DOL-PSP-000066

receipt or delivery of securities or relating to the lending of securities or property (including securities or other property of Delphi or any subsidiary thereof) and other derivative investments.

**"Trust"** means the trust established under this Agreement and referred to as the "Delphi Automotive Systems Savings Trust."

**"Trustee"** means State Street Bank and Trust Company and any other Person who is appointed by GMIMCo to serve as a Trustee and enters into this Agreement.

**"Trust Fund"** means all assets held in trust under this Agreement, including, but not limited to, all contributions or other transfers in cash, Securities or Other Property acceptable to the Trustee, and all rights appurtenant thereto, all income or other increment thereon, all distributions in respect thereof and all proceeds therefrom.

**"Unit"** means a beneficial interest in the Trust Fund which relates solely to an Investment Pool Account and which is expressed as a fractional undivided interest in the applicable Investment Pool Account. Units shall not be required to be established or maintained for each Investment Pool Account.

**"Valuation Date"** means, with respect to an Account, the last day of the fiscal year of the Trust Fund or any other date designated by GMIMCo for a valuation of the assets of such Account. Valuation Dates need not be identical for every Account.

## ARTICLE II

## THE TRUST FUND

2.1    *Establishment of Trust Fund.* GMIMCo and the Trustee hereby establish a trust to hold in the Trust Fund created thereunder assets for the benefit of Delphi Savings Plans as may be designated in writing from time to time by GMIMCo, and the rights, powers, authorities, duties and responsibilities of the Trustee shall be solely as provided in this Agreement or applicable law.

2.2    *Limitations Applicable to Delphi Savings Plans.* Participation in the Trust Fund shall be limited to the Delphi Savings Plans as to which Delphi has appointed GMIMCo to serve as a named fiduciary. The Trust Fund shall not have any obligation or liability to any Delphi Savings Plan, or any participants or beneficiaries under any such Plan, other than the amount of such Plan's beneficial interest in the Trust Fund. The Trustee shall not, by reason of this Agreement, be a party to the Delphi Savings Plans, and shall have only such duties with respect to the Delphi Savings Plans as are specified in this Agreement.

2.3    *Contributions and Other Additions.*

a. At the time of any contribution or other transfer to the Trust Fund by a Delphi Savings Plan (including Participant contributions thereto), the amount so

NY2:\S23699702\B83702\LDOC\72240.0342                4

DOL-PSP-000067

contributed or transferred shall be credited to the Delphi Savings Plan and allocated to one or more Manager Accounts established thereunder at the direction of any Named Fiduciary (including Participants) or Administrative Agent in accordance with this Agreement. The Recordkeeper shall maintain a record of contributions or other transfers by each Delphi Savings Plan and the allocation of such amounts among the Accounts and Individual Accounts. The Trustee shall not be responsible for the collection of any contributions to the Trust Fund by the Delphi Savings Plans, or for the determination of the amount or frequency of any contribution required by the Trust Fund, Delphi Savings Plans or ERISA.

b. The Trustee shall receive and hold in trust in its Trust Fund any contributions or other transfers in cash, Securities or Other Property acceptable to it, and all rights appurtenant thereto, all income or other increment thereon, all distributions in respect thereof and all proceeds therefrom. Each Manager Account shall be held and administered by the Trustee pursuant to the terms of this Agreement in all respects as a commingled fund, without distinction between principal and income and without liability for the payment of interest thereon, even though interests in such Account are attributable to the Delphi Savings Plans.

2.4    *Transfer of Assets.* Upon GMIMCo's direction and prior notice to a Trustee, the Trustee shall accept a transfer to the Trust Fund of assets acceptable to it from any Delphi Savings Plan or for the account of any Delphi Savings Plan. Neither GMIMCo nor the Trustee shall have any liability or responsibility (i) to determine whether such transfer shall be in conformity with the provisions of any Delphi Savings Plan or ERISA, or (ii) with regard to the effect of such transfer upon the Participants or beneficiaries in the Delphi Savings Plans whose interests (or any portion thereof) in other funding media are being transferred to the Trust Fund or whose interests are not directly subject to such transfer. Any transfer of assets of a Delphi Savings Plan to the Trust Fund shall constitute a certification by the fiduciary directing the transfer that such fiduciary has the requisite authority to direct the transfer and that the transfer conforms with the provisions of ERISA and the governing Plan documents.

2.5    *Fund for Exclusive Benefit of Employees.* Notwithstanding anything to the contrary contained in this Agreement or in any amendment hereto, it shall be impossible at any time prior to the satisfaction of all liabilities with respect to the Participants or their beneficiaries for any part of the Trust Fund to be used for or diverted to purposes other than for the exclusive benefit of the Participants under the Delphi Savings Plans or their beneficiaries, except such part as is required to pay taxes and expenses of administration of the Delphi Savings Plans (including, without limitation, the Trust Fund) or, upon a certification of GMIMCo to the Trustee (i) that any contribution to the Trust Fund was made by reason of a mistake of fact or (ii) that a deduction was claimed under Section 404 of the Code for any contribution to the Trust Fund and such deduction was disallowed, the Trustee shall return such contribution (or the value thereof if less) in accordance with directions from GMIMCo; provided, however, that any such return shall only be made prior to the expiration of one year following the date of payment under clause (i) above or the date of disallowance of the deduction under clause (ii) above.

DOL-PSP-000068

2.6    *Payments from the Trust Fund.*  Subject to Section 2.5 hereof, the Trustee shall from time to time on the directions of the Plan Administrator, or any duly authorized delegate thereof, make payments and distributions out of the Trust Fund, including loans, to such persons, in such manner and in such amounts as may be specified in the directions of the Plan Administrator or duly authorized delegate thereof to the Trustee. The Trustee shall be under no liability for any payment made by it pursuant to the direction of the Plan Administrator, or any duly authorized delegate thereof, and shall be under no duty to make inquiries as to whether any payment directed by the Plan Administrator, or any duly authorized delegate thereof, is made pursuant to the provisions of the Delphi Savings Plans.

## ARTICLE III

## MANAGEMENT OF ACCOUNTS

3.1    *Establishment of Manager Accounts.*

a.  The Trustee shall establish one or more Manager Accounts as may be directed by GMIMCo or any Named Fiduciary (other than Participants) in accordance with Section 3.3. All assets of the Trust Fund shall be allocated to one or more Manager Accounts, and the transfer of assets between Manager Accounts shall be effected by the Trustee, at the direction of any Participant with respect to such Participant's Individual Account or any Administrative Agent in accordance with this Agreement. Each Manager Account shall be an investment company registered under the Investment Company Act of 1940, or a Bank-Maintained Account or other bank collective funds described in Section 408(b)(8) of ERISA, or shall be under the management of an Investment Manager pursuant to Section 3.2, a Named Fiduciary pursuant to Section 3.3, or the Trustee holding such Account pursuant to Section 3.4.

b.  All obligations and liabilities (contingent or otherwise) arising from or relating to the assets of the Trust Fund within any Manager Account shall be allocable exclusively to and the responsibility of such Manager Account to the fullest extent permitted by applicable law, except as otherwise set forth in this Agreement. In the event any obligation or liability allocable to any Manager Account cannot be satisfied with the assets of the Trust Fund within such Manager Account, such obligation or liability shall be satisfied at the direction of GMIMCo, any Named Fiduciary with respect to Manager Accounts under its supervision or management pursuant to Section 3.3, and then by each Delphi Savings Plan, severally and not jointly, credited with any Units or Interests in such Investment Pool Account based upon the number of such Units of Interests credited to each Delphi Savings Plan by utilizing other portions of the Trust Fund allocable to such Delphi Savings Plan.

3.2    *Management by Investment Managers Appointed by GMIMCo.*

a.  GMIMCo may appoint an Investment Manager (other than the Trustee) to manage the assets of any Manager Account. Subject to any applicable Investment Guidelines or other agreements, an Investment Manager designated to

NY2:\523699\07\B837921.DOC\72240.0342                6

DOL-PSP-000069

manage any Manager Account shall have exclusive authority to manage, acquire and dispose of any assets of such Account and may exercise any of the powers of the Trustee (other than custody of assets of the Trust Fund) permitted under Article X solely with respect to such Account. The Trustee shall exercise the powers set forth in Article X with respect to any Manager Account (other than a Manager Account managed by that Trustee) only when, if and in the manner directed by the Investment Manager for such Account and shall not be under any obligation to invest or otherwise manage any assets of such Account. To the fullest extent permitted by the fiduciary standards under ERISA, the Trustee shall have no duty to review the investment decisions with respect to any Securities or Other Property held in any Manager Account (other than a Manager Account managed by that Trustee) or to make suggestions to the Investment Manager of such Account with respect to the exercise or non-exercise of its management power over such Account.

b. Each Investment Manager, other than the Trustee, shall certify in writing to GMIMCo and the Trustee that it is qualified to act in such capacity under Section 3(38)(B) of ERISA, shall accept its appointment as Investment Manager, shall acknowledge that it is a fiduciary under this Agreement and the Plans for purposes of ERISA, shall certify to GMIMCo and the Trustee the identity of the Person or Persons authorized to give instructions or directions on its behalf, and shall undertake to perform the duties imposed on it under this Agreement. GMIMCo shall certify to the Trustee (i) that it has appointed each Investment Manager in accordance with the provisions of ERISA, and (ii) the Manager Accounts with respect to which each Investment Manager has been designated.

3.3    *Management by Named Fiduciaries or Investment Managers Appointed by Them.*

a. A Named Fiduciary (including, but not limited to, GMIMCo, but excluding all Participants) may retain and exercise itself or through such Investment Managers or other delegates as it shall select the powers of an Investment Manager to manage a portion of the assets attributable to a Delphi Savings Plan specified by the Named Fiduciary, and such specified portion shall be allocated to one or more Manager Accounts pursuant to directions from the Named Fiduciary; provided, however, that the number of such Manager Accounts, if any, established as part of the Trust Fund shall be subject to prior written approval of GMIMCo. GMIMCo's right to approve the establishment of one or more Manager Accounts at the request of any Named Fiduciary other than GMIMCo shall not constitute or otherwise be treated as an approval of the allocation of assets of a Delphi Savings Plan to any such Manager Accounts or of such Named Fiduciary's designation of itself, its delegates or any Investment Manager appointed by such Named Fiduciary to manage the assets of one or more such Manager Accounts. Each Named Fiduciary's designation of itself, its delegates or any Investment Manager to manage the assets of one or more Delphi Savings Plans shall constitute a certification to GMIMCo and the Trustee that such designation complies with ERISA.

b. The Trustee of any Manager Account under the control of a Named Fiduciary shall have only such duties and obligations as the Trustee would have if an

DOL-PSP-000070

Investment Manager had been designated.   Further, any references in this Agreement to an Investment Manager shall include any such Named Fiduciary unless the context indicates otherwise.

3.4    *Management by Trustee.*

a.   GMIMCo may direct the Trustee holding a Manager Account to retain, as trustee, the management of the assets of such Account subject to applicable Investment Guidelines provided to the Trustee by GMIMCo; provided, however, that the Trustee shall have no duty or responsibility to direct the investment and reinvestment of such Account unless expressly agreed to in a separate writing between the Trustee and GMIMCo.  In the event that the Trustee enters into such an agreement, it shall have the powers and duties of an Investment Manager under this Trust Agreement with regard to such Account.

b.   Unless otherwise directed by GMIMCo or an Investment Manager with respect to assets under its management, the Trustee shall at the end of each business day sweep all United States dollar denominated cash or cash equivalents for which no investment directions have been received and invest such assets in: (i) short term treasury bills, (ii) negotiable certificates of deposit of United States banks having a long-term senior debt rating of at least A by Standard & Poors ("S&P") and Moody's, deposits in excess of $2,000,000,000 and commercial paper rating designations of at least A-1 by S&P and P-1 by Moody's, (iii) repurchase agreements with any United States bank which are fully collateralized by direct obligations of the United States or obligations of agencies or sponsored agencies of the United States government, (iv) commercial paper of any corporation rated at least A-1 by S&P and P-1 by Moody's, or (v) money market instruments rated at least A-1 by S&P and P-1 by Moody's, or any short term commingled fund that is restricted to investments described in this paragraph (including any such fund of the Trustee, as may be permitted under this Agreement).  The Trustee with respect to a Custodial Account shall promptly notify GMIMCo if any assets of such Account become so invested.

In any case in which the Trustee shall have been designated with respect to a Manager Account, any references in this Agreement to an Investment Manager shall include the Trustee, unless the context indicates otherwise.

3.5    *Directions Direct to Broker.*  The Trustee and any Investment Manager or Named Fiduciary shall agree as to the types of transactions which shall be effected in accordance with this Section.  An Investment Manager or Named Fiduciary shall provide and shall promptly confirm the issuance of its order for the purchase or sale of any Securities or Other Property directly to a broker.  The execution of each such order shall be confirmed to the Trustee by the broker, Investment Manager or Named Fiduciary in a mutually agreeable manner.  Such notification shall be authority for the Trustee to pay for Securities or Other Property purchased or to deliver Securities or Other Property sold against payment therefor, as the case may be.  Upon the direction of a Investment Manager or Named Fiduciary, the Trustee shall execute and deliver appropriate trading

DOL-PSP-000071

authorization, but no such authorization shall be deemed to increase the liability or responsibility of the Trustee under this Agreement.

3.6     *Securities Lending.* The Trustee (at the direction of GMIMCo) shall have authority to engage in the lending of securities to brokers or dealers from such Manager Accounts held by it as may be specified in writing and in accordance with ERISA and the securities lending authorization agreement in effect from time to time. GMIMCo expressly understands and agrees that any custodial arrangement in which the Trust Fund may be invested may provide for the lending of securities of such arrangement and that any compensation on account of such securities lending is separate from any compensation of the Trustee hereunder or any custodian of such custodial arrangement.

3.7     *Funding Policy.* GMIMCo shall be responsible for establishing a funding policy with respect to the Accounts other than Manager Accounts established pursuant to Section 3.3 or interests in Delphi Savings Plans under the investment direction of Participants pursuant to Section 3.5; provided, however, that GMIMCo shall not be responsible for the management of any Manager Account (other than any such Accounts directly under GMIMCo's management). Except with respect to any Manager Accounts directly under the control of the Trustee, the Trustee shall not be responsible for the manner in which any assets of the Trust Fund or assets held in any funding medium other than the Trust Fund, including any insurance contract or policy, shall be diversified. The funding policy, if any, with respect to any Individual Account shall be the exclusive responsibility of the Participant with neglect to such Account.

3.8     *Notices Respecting the Assets of a Manager Account.* The Trustee shall advise Investment Managers or Named Fiduciaries with respect to Manager Accounts held by it promptly of written information received from the issuer of any Securities or Other Property held in such Accounts with respect to corporate actions or similar actions by noncorporate issuers, shall monitor the status of any action taken by any such Investment Manager or Named Fiduciary with respect to such notice and shall use [reasonable best efforts] to ensure that such Investment Manager or Named Fiduciary is aware of and makes a timely decision with respect to any such announcement; provided, however, that the Trustee shall not be liable for any untimely exercise or assertion of such rights or powers described immediately above in connection with Securities or Other Property of the Trust Fund at any time held by it unless (i) it or its agents or custodians are in actual possession of such Securities or other Property and (ii) it receives directions to exercise any such rights or powers from the Named Fiduciary or the Investment Manager, as the case may be, and both (i) and (ii) occur at least one business day prior to the date on which such rights or powers are to be exercised.

## ARTICLE IV

4.1     *Company Stock Accounts.* The Trustee shall maintain a separate Manager Account for each class of common stock of the Company (a "Company Common Stock Fund"). Each such Fund shall consist of the applicable class of common stock of the

NY2:\523499\07\B437021.DOC\72240.0342                    9

DOL-PSP-000072

Company and cash or short term United States Treasury securities or investments in a short-term investment fund. The Investment Manager designated by GMIMCo or any Named Fiduciary (excluding Participants) shall determine the applicable amount of Company common stock and cash or short term fixed income securities for a Company Common Stock Fund, from time to time, based on its estimates of the cash flow requirements of such Company Common Stock Fund and the investment guidelines of the Company Common Stock Fund.

### 4.2    *ESOP*

a.    The ESOP portion of any Delphi Savings Plan shall be comprised of the Suspense Account, Company Common Stock Funds and such other Investment Pool Accounts, if any, as determined by the Named Fiduciary in accordance with the provisions of such Plan. The Trustee shall maintain a separate Suspense Account for each ESOP.

b.    The principal purpose of the ESOP is to invest in and hold Company Common Stock for the benefit of Participants. In furtherance thereof the Trustee shall borrow, as directed by a [Company], from any lender (including a party in interest as defined in Section 3(14) of ERISA), on terms and conditions acceptable to the Trustee, to finance the acquisition of Company Common Stock (an "ESOP Loan") and, without direction by a [Company], shall purchase and continue to hold Company Common Stock for the benefit of Participants pursuant to the provisions of the ESOP; subject, however, to the requirements of the Code and ERISA to the extent applicable to ESOP. The Trustee, without direction by a [Company], may borrow funds for the purpose of exercising any warrant or option to purchase Company Common Stock. As directed by (other than Participants) [Company], the Trustee shall refinance any loan used to acquire Company Common Stock and, in connection with any such refinancing, shall repay any such loan.

c.    All contributions to an ESOP and dividends on Company Common Stock held in the Suspense Account shall be utilized by the Trustee to amortize the ESOP Loans.

d.    Company Common Stock acquired by the Trustee with the proceeds of a loan shall be held in the Company Common Stock Suspense Account until released from such account as directed in accord with the ESOP plan document. All Company Common Stock released from the Company Common Stock Suspense Account shall be held in a separate fund by the Trustee for the benefit of the applicable ESOP or until otherwise allocated to a separate Manager Account pursuant to instructions from a Named Fiduciary or Administrative Agent.

From time to time when it is necessary to replenish shares of Company Common Stock in the Suspense Account of an ESOP, the Trustee shall be authorized to purchase shares of Company Common Stock at such times and to the extent of such number of shares as the Trustee, in its sole discretion, shall determine.

NY2:\523\699\07\B837021.DOC\72240.0342                         10

## ARTICLE V

### TENDERS FOR COMPANY SECURITIES

a.  Notwithstanding any other provision of this Agreement to the contrary, if any, but subject to the provisions of paragraphs B, C, D, E and F of this Article, in the event an offer shall be received by the Trustee (including but not limited to a tender offer or exchange offer within the meaning of the Securities Exchange Act of 1934, as from time to time amended and in effect) to acquire any shares of Company Common Stock in any Company Common Stock Fund and allocated to the Individual Account of any Participant (hereinafter referred to as an "Offer"), the Trustee shall have no discretion or authority to sell, exchange or otherwise transfer any of such shares pursuant to such Offer except to the extent, and only to the extent, that the Trustee is timely directed to do so in writing by each Participant to whose account any of such shares are allocated. For purposes of Article FOURTEENTH and FIFTEENTH, reference to shares of Company Common Stock allocated to the account of a Participant refers to shares of Company Common Stock attributable to the unit value credited to a Participant in any Company Common Stock Fund.

Upon timely receipt of such instructions, the Trustee shall, subject to the provisions of paragraphs C, D, and F of this Article, sell, exchange or transfer pursuant to such Offer only such shares as to which such instructions were given. The Trustee shall use its best efforts to communicate or cause to be communicated to each Participant the consequences of any failure to provide timely instructions to the Trustee.

In the event, under the terms of an Offer or otherwise, any shares of Company Common Stock tendered for sale, exchange or transfer pursuant to such Offer may be withdrawn from such Offer, the Trustee shall follow such instructions respecting the withdrawal of such securities from such Offer in the same manner and the same proportion as shall be timely received by the Trustee from the Participants entitled under this Article to give instructions as to the sale, exchange or transfer of securities pursuant to such Offer.

b.  In the event that an Offer for fewer than all of the shares of Company common stock held by the Trustee in a Company Common Stock Fund shall be received by the Trustee, each Participant who has been allocated any of such Company common stock subject to such Offer shall be entitled to direct the Trustee as to the acceptance or rejection of such Offer (as provided by paragraph A of this Article) with respect to the largest portion of such Company common stock as may be possible given the total number or amount of shares of Company common stock the Plans may sell, exchange or transfer pursuant to the Offer based upon the instructions received by the Trustee from all other Participants who shall timely instruct the Trustee pursuant to this Article to sell, exchange or transfer such shares pursuant to such Offer, each on a pro rata basis in accordance with the number or amount of such shares allocated to their accounts.

c.  Notwithstanding the provisions of paragraphs A and B of this Article to the contrary, in the event that an Offer for fewer than 5% of the Company common

DOL-PSP-000074

stock subject to such Offer held by the Trustee in a Company Common Stock Fund shall
be received by the Trustee, the Trustee shall determine, in its sole discretion, whether to
sell, exchange or transfer any Company common stock pursuant to such Offer taking into
consideration items set forth in paragraph F of this Article; provided, however, if there
are multiple Offers within any 12-month period (each Offer being for fewer than 5% of
the Company common stock held by the Plans), the Trustee shall be required to solicit
directions from Participants, as Named Fiduciaries (or pursuant to Section 404(c), if
applicable) pursuant to the provisions of this Article FOURTEENTH with respect to each
outstanding Offer that, after taking into account all Company common stock sold,
exchanged or transferred in accordance with any other Offer within the preceding 12
months and all Company common stock subject to any other outstanding Offer for
Company common stock, could result in the sale, exchange or transfer within such 12-
month period, in the aggregate, of more than 5% of the Company common stock held by
the Plan.

      d.   In the event an Offer shall be received by the Trustee and instructions
shall be solicited from Participants in the Plans pursuant to paragraph A of this Article
regarding such Offer, and prior to termination of such Offer, another Offer is received by
the Trustee for the securities subject to the first Offer, the Trustee shall use its best efforts
under the circumstances to solicit instructions from the Participants to the Trustee (i) with
respect to securities tendered for sale, exchange or transfer pursuant to the first Offer,
whether to withdraw such tender, if possible, and, if withdrawn, whether to tender any
securities so withdrawn for sale, exchange or transfer pursuant to the second Offer and
(ii) with respect to securities not tendered for sale, exchange or transfer pursuant to the
first Offer, whether to tender or not to tender such securities for sale, exchange or transfer
pursuant to the second Offer. The Trustee shall follow all such instructions received in a
timely manner from Participants in the same manner and in the same proportion as
provided in paragraph A of this Article. With respect to any further Offer for any
Company common stock received by the Trustee and subject to any earlier Offer
(including successive Offers from one or more existing offerors), the Trustee shall act in
the same manner as described above.

      e.   In the event an Offer for any Company common stock held by the
Trustee in the Trust Fund shall be received by the Trustee and the Participants shall be
entitled to determine to accept, reject or withdraw an acceptance of such Offer pursuant
to paragraphs A through D of this Article, (i) the company and the Trustee shall not
interfere in any manner with the decision of any Participant regarding the action of the
Participant with respect to such Offer (hereinafter referred to as an "Investment
Decision"), and the Trustee shall arrange for such Investment Decision to be made on a
confidential basis; (ii) the Trustee shall use its best efforts to communicate or cause to be
communicated to all Participants the provisions of this Agreement and the Plans relating
to the right of Participants to direct the Trustee with respect to Company common stock
subject to such Offer, and of the obligation of the Trustee to follow such directions; (iii)
the Trustee shall use its best efforts to distribute or cause to be distributed to Participants
all communications directed generally to the owners of the securities to whom such Offer
is made or is available; and (iv) the Trustee shall use its best efforts to distribute or cause
to be distributed to Participants all communications that the Trustee may receive, if any,

NY2:\523699\02\B37021.DOC\72240.0342                12

DOL-PSP-000075

from the person making the Offer or any other interested party (including the Company)
relating to the Offer. The Plan Administrator shall provide the Trustee with such
information and assistance as the Trustee may reasonably request in connection with any
communications or distributions to Participants. In no event shall the communications to
Participants by the offeror, the Company or other interested parties or public
communications directed generally to the owners of the securities which are the subject
of an Offer be deemed to be interference in the making of an Investment Decision by and
Participant; provided however, that Section 510 of ERISA shall apply to any
communication which threatens or intimates that actions which would violate Section
510 of ERISA will or might be taken with respect to any Participant who does not make
an Investment Decision in accord with the wishes of the Company.

        f. In the event a court of competent jurisdiction shall issue to the Plans,
the Company or the Trustee an opinion or order, which shall, in the opinion of counsel to
the Company or the Trustee, invalidate under ERISA, in all circumstances or in any
particular circumstances, any provision or provisions of this Article regarding the
determination to be made as to whether or not Company common stock held by the
Trustee shall be tendered pursuant to an Offer or cause any such provision or provisions
to conflict with ERISA, then, upon notice thereof to the Company or the Trustee, as the
case may be, such invalid or conflicting provisions of this Article shall be given no
further force or effect. In such circumstances the Trustee shall have no discretion to
tender or not to tender Company common stock held in the Trust Fund unless required
under such order or opinion but shall follow instructions received from Participants, to
the extent such instructions have not been invalidated by such order or opinion.

        g. Notwithstanding anything elsewhere in this Agreement to the contrary,
any proceeds received by the Trustee as a result of the sale, exchange or transfer of
Company common stock pursuant to an Offer by the Company shall be reinvested in
Company common stock by the Trustee, if such securities are available for purchase. If
an offer is by any person other than the Company, the proceeds shall be invested in short-
term, fixed-income investments selected by the Trustee until the Trustee is otherwise
directed by GMIMCo or, until the Participants to whose account such investments are
allocated shall be entitled to make investment elections with respect to such account in
accordance with the Plans.

        h. Except as otherwise required by law, the Trustee shall follow the
direction of the Named Fiduciary or any delegate of the Named Fiduciary as to whether
or not to tender as a result of a tender offer for any Company Securities held in any
Company Securities Suspense Account.

## ARTICLE VI

## VOTING COMPANY SECURITIES; OPTIONS AND OTHER RIGHTS

        a. Notwithstanding any other provision of this Agreement to the contrary,
if any, the Trustee shall have no discretion or authority to vote Company common stock
held in a Company Common Stock Fund by the Trustee on any matter presented for a

DOL-PSP-000076

vote by the stockholders of the Company except in accordance with timely directions received by the Trustee from Participants who have Company common stock allocated to their accounts under the Plans. Such directions shall be given by Participants acting in their capacity as Named Fiduciaries (except to the extent Section 404(c) is applicable) and, upon timely receipt of such instructions, the Trustee shall vote that portion of the Company common stock held in a Company Common Stock Fund based on the units in such Investment Fund held by the Participants giving directions to the total units of such Investment Fund. The Trustee shall vote such Company common stock in the same manner and in the same proportion as the directions of Participants based on the units held by such Participants in such Company Common Stock Fund. The Trustee shall not vote shares of Company common stock with respect to which no directions are given, except as otherwise required by law.

b. In the event a court of competent jurisdiction shall issue an opinion or order to the Plans, the Company or the Trustee, which shall, in the opinion of counsel to the Company or the Trustee, invalidate under ERISA, in all circumstances or in any particular circumstances, any provision or provisions of this Article regarding the manner in which Company common stock held in the Trust Fund shall be voted or cause any such provision or provisions to conflict with ERISA, then, upon notice thereof to the Company or the Trustee, as the case may be, such invalid or conflicting provisions of this Article shall be given no further force or effect. In such circumstances the Trustee shall have no discretion to vote Company common stock held in the Trust Fund unless required under such order or opinion but shall follow instructions received from Participants, to the extent such instructions have not been invalidated.

## ARTICLE VII

## SETTLEMENT PRACTICES

7.1    *General Settlement Policy.*

a. The Trustee is authorized to settle purchases and sales and engage in other transactions (including free receipts and deliveries, exchanges and other voluntary corporate actions) with respect to the Securities or Other Property, all in accordance with the established practices for the market and type of security involved or in accordance with directions from GMIMCo, a Named Fiduciary or any Investment Manager with respect to assets under its management.

b. United States Settlement Practices. With respect to settlement practices within the United States, the Trustee will utilize the following settlement practice, unless directed otherwise by GMIMCo. Standing settlement practice shall be the customary or established practices and procedures in the market where the transactions occur, including, without limitation, delivery to the purchaser thereof or to a dealer therefor (or an agent of such purchaser or dealer) against expectation of receiving later payment; delivering money to the seller thereof or to a dealer therefor (or an agent for such seller or dealer) against expectation of receiving later delivery of such securities; or (ii) in the case of a sale, or purchase, effected through a Securities System, in

DOL-PSP-000077

accordance with the rules governing the operation of the Securities System. The term "Securities System" shall mean the Federal Reserve book-entry system, a clearing agency which acts as a securities depository or another book-entry system for the central handling of securities. The Trustee shall inform GMIMCo of its settlement policies from time to time and, upon request, shall discuss such policies and how they affect the operation of the Trust Fund. The Trustee shall provide information in writing whenever possible on the settlement practices for the countries in which the Trust Fund may invest.

    c.  <u>Contractual Settlement in the United States</u>. The Trustee shall utilize contractual settlement whenever possible. In United States markets for transactions for which contractual settlement is used, the Trustee shall credit or debit the appropriate Manager Account in connection with the purchase or sale of publicly-traded securities held for the time being on behalf of the Trust on a contractual settlement basis in accordance with Subsections (1)-(3) below:

    (1)  The Trustee shall make available provisional credit of settlement proceeds on a contractual settlement basis. The Trustee reserves the right to reverse any such crediting at any time before actual receipt of the item associated with the credit when the Trustee determines that actual receipt will not be received in due course for such an item.

    (2)  In markets where the Trustee makes available the provisions of Section 4.1(c)(1), the consideration payable in connection with a purchase transaction shall be debited from the appropriate Manager Account upon the contractual settlement date for the relevant purchase transaction. The Trustee shall promptly credit such amount at the time that the Investment Manager of such Account or GMIMCo, as the case may be, notifies the Trustee by appropriate instruction that such transaction has been cancelled.

    (3)  All credits made under Section 4.1(c)(1) are made subject to actual collections. The Trustee shall not be liable to the Trust for any such amount that is not actually collected in accordance with the terms of this Agreement. The provisions of Section 4.1(c) are intended to facilitate settlement in ordinary course.

    d.  Income available from instrument maturities and from security sales or purchases shall be debited or credited, as the case may be, to the Trust Fund in accordance with the posting policies in effect with the Trustee as such policies have been explained to and agreed to by GMIMCo from time to time. Where a Trustee offers contractual income payment, the Trustee will credit the Trust Fund with income and maturity proceeds on the contractual payment date for eligible income items. The Trustee shall provide to GMIMCo, if applicable, a schedule of the countries in which this service is intended to be offered by the Trustee and may revise such schedule from time to time. The Trustee shall inform GMIMCo prior to the effective date as to the availability of contractual income payment on each type of investment in each of the

DOL-PSP-000078

countries in which the Trust Fund holds assets. The Trustee may reverse such accounting entries with back value to the contractual payment date if the Trustee reasonably believes that it will not receive such amounts. In those countries for which the Trustee does not offer contractual income payment crediting, the Trustee shall credit the Trust Fund with income and maturity proceeds based on the actual receipt of such items.

e. Responsibility for Global Assets. Global Assets (other than currency) will be held in the country or other jurisdictions where (i) the principal trading market for such Global Assets is located, (ii) such Global Assets are to be presented for payment or (iii) such Global Assets are acquired, unless GMIMCo or an Investment Manager specifically requires another location acceptable to the Trustee. The Trustee shall provide to GMIMCo a schedule of countries which are eligible for contractual settlement and may revise such schedule from time to time upon thirty (30) days notice to GMIMCo. In those countries for which the Trustee does not offer contractual settlement or for those transactions which are not eligible for contractual settlement, settlement shall be based on the actual settlement of securities transactions. The Trustee will attend to the settlement of any securities transaction on the contractual settlement date for eligible transactions in the countries for which contractual settlement is available. The Trustee may, in accordance with its established reversal policy, reverse with back value to the contractual settlement date any entry relating to such contractual settlement where the related transaction remains unsettled.

f. The Trustee may act under this Agreement with respect to Global Assets through the subcustodians with which the Trustee has entered into subcustodial agreements from time to time ("Subcustodians"). Except as otherwise permitted by ERISA, each Subcustodian shall be an eligible subcustodian under Department of Labor Regulation 404b-1(a)(2)(ii)(C), as amended, or any successor to that regulation. The Trustees and Subcustodians are authorized to hold any of the securities in their account with any securities depository in which they participate. In this regard, Cedel and Euroclear shall be deemed to be Subcustodians of the Trustee with respect to those Global Assets, if any, which the Trustee elects to hold at those entities. If GMIMCo or an Investment Manager wishes to have any assets of the Trust Fund held in the custody of an institution other than the established Subcustodians (or their securities depositories), such arrangement must be authorized by a written agreement, signed by the applicable Trustee and GMIMCo.

g. Each Trustee reserves the right to add new, replace or remove Subcustodians. GMIMCo will be given reasonable notice by the applicable Trustee of any such change. Upon request by GMIMCo, the applicable Trustee will identify the name, address and principal place of business of any Subcustodian of the Trust Fund and the name and address of the governmental agency or other regulatory authority that supervises or regulates such Subcustodian.

h. Each Subcustodian will hold such securities in accounts identified on such Subcustodian's books as special custody accounts for the exclusive benefit of customers of that Trustee. Any securities held by a Subcustodian will be subject only to the instructions of the applicable Trustee or its agent. Any securities held in a securities

DOL-PSP-000079

depository for the account of a Subcustodian will be subject only to the instructions of such Subcustodian. Any agreement either Trustee enters into with a Subcustodian for holding its customer's securities shall provide that such securities will not be subject to any right, charge, security, interest, lien or claim of any kind in favor of such Subcustodian except for safe custody or administration, and that the beneficial ownership of such assets will be freely transferable without the payment or value other than for safe custody or administration.

## ARTICLE VIII

## BANK-MAINTAINED ACCOUNTS

8.1    *General.*

a. The Trustee, at the direction of GMIMCo or any other named fiduciary with respect to the Delphi Savings Plans, shall transfer a portion of the Trust Fund to any collective investment funds or common trust funds, as described in Title 35, Section 391:1 of the New Hampshire Uniform Common Trust Fund Act (a "**GMTC Collective Account**"), established and maintained by General Motors Trust Company ("**GMTC**"). Each GMTC Collective Account shall be under the exclusive control and management (including the establishment of investment guidelines) of GMTC, provided that GMTC shall not be precluded from delegating day-to-day management authority in a manner consistent with applicable law.

b. At GMIMCo's or GMTC's direction to the Recordkeeper, a GMTC Collective Account may be treated solely for recordkeeping purposes (and hence not subject to investment direction under Article VI) as an Investment Pool Account. Each GMTC Collective Account shall be treated as a Manager Account under the management of GMTC. Each GMTC Collective Account that is treated as an Investment Pool Account or Manager Account shall be subject to all terms and conditions of this Agreement other than those that are inconsistent with GMTC's exercise of exclusive control and management over such Account.

## ARTICLE IX

## INVESTMENT POOL ACCOUNTS

9.1    *Division of Trust Fund.* The Trust Fund shall be divided solely for purposes of recordkeeping into such type and number of Investment Pool Accounts as GMIMCo shall direct. Each Investment Pool Account shall be composed of one or more Manager Accounts as may be designated from time to time by GMIMCo at its discretion. The Recordkeeper shall establish and maintain all records relating to each Investment Pool Account, including the ownership of beneficial interests therein. Each Investment Pool Account is intended to operate as a separate commingled investment fund and shall be treated by the Trustee as a separate investment portfolio or, as may be specifically designated in writing by GMIMCo, as a subtrust intended to qualify as a separate group trust pursuant to Revenue Ruling 81-100. Each such group trust shall be deemed to

DOL-PSP-000080

governed by and shall incorporate the terms of this Agreement to the extent applicable, and such terms shall apply separately to each such group trust. Further, no beneficial interest in any such group trust may be assigned or otherwise transferred to any other Person.

9.2    *Unit or Interests*

a.    At GMIMCo's discretion and upon its direction, the Recordkeeper shall reflect interests in any Investment Pool Account through the use of Units or Interests. No Unit or Interest shall have any priority or preference over any other Unit or Interest upon termination of the Trust or otherwise. Each Unit and Interest shall be subject to terms and conditions consistent with this Article VI as may be determined by GMIMCo without action or approval of any other person.

b.    GMIMCo shall not be required to cause Units to be established with respect to each Investment Pool Account. Each Unit shall represent a fractional beneficial interest in the Investment Pool Account to which such Unit relates. Units shall be issued and redeemed on any Valuation Date with respect to the Investment Pool Account to which such Units relate; provided, however, that Units may also be issued or redeemed on any date other than a Valuation Date if such issuance or redemption is effected with respect to all holders of such Units in the same proportion as they held such Units immediately before such issuance or redemption. All Units must be fully paid for at or prior to issuance and when so issued shall be fully paid and non-assessable, subject to any obligations to make additional contributions to the Investment Pool Account. The Recordkeeper, upon the direction of GMIMCo, may from time to time divide or combine the Units of any particular Investment Pool Account into a greater or lesser number of Units. The Trust shall have authority to issue an unlimited number of Units (including fractional Units).

9.3    *Maintenance of Record Books.*  No certificates representing Units or Interests shall or need be issued. The Recordkeeper shall establish and maintain a record book of the Units or Interests of each Investment Pool Account, and shall record the type and number of Units or Interests allocated to each Delphi Savings Plan. The record book of the Trust Fund, as kept by the Recordkeeper, upon notice shall be available for review and copying by GMIMCo, the Trustee and any employer participating in any of the Plans and their authorized representatives.

## ARTICLE X

## VALUATION

10.1    *Valuation of Accounts.*

a.    The Trustee shall determine the value of the Trust Fund and each Manager Account thereunder in accordance with the applicable methods, procedures and policies as established from time to time by the Trustee, except as the Trustee may otherwise be directed by GMIMCo. The Trustee and GMIMCo may adopt special

DOL-PSP-000081

valuation methods, procedures and policies applicable to one or more Investment Managers or Accounts or both. The Trustee shall have only the responsibilities with respect to valuation of the Accounts as provided in this Agreement, and the valuation of any Securities or Other Property determined by any person other than the Trustee and explicitly identified by GMIMCo as being for use by the Trustee shall be regarded as a direction regarding such valuation to the Trustee.

b.  An Investment Manager shall certify, at the request of the Trustee, the value of any Securities or Other Property held in any Manager Account managed by such Investment Manager, and such certification shall be regarded as a direction with regard to such valuation. The Trustee shall be entitled to conclusively rely upon such valuation for all purposes under this Trust Agreement.

c.  Units or shares in registered investment companies, limited partnerships, limited liability, group trusts, companies, or other funds (each a "**Fund**") shall be their net asset value or other unit or share value as announced by the Fund or its operator. An Investment Manager shall certify, at the request of the Trustee, the value of any Securities or Other Property held in any Investment Account managed by such Investment Manager which are thinly traded or for which a market value otherwise cannot be determined readily by the Trustee, and such certification shall be regarded as a direction with regard to such valuation.

d.  Valuations of Securities or Other Property reasonably deemed by the Trustee to be commodity interests, over the-counter options or derivative instruments shall be valued at their last prior sales prices on the principal board of trade or other contracts market in which dealings are made or by quotations from the contraparty bank or party. GMIMCo acknowledges that values of derivative instruments are indicative values only based on market levels on the date, or upon change in rates, so indicated. These valuations do not indicate the actual terms at which derivatives could be liquidated or unwound or the calculation or estimate of an amount that would be payable following the designation of an early termination date under any applicable agreement.

10.2  *Valuation of Units.* The Recordkeeper shall determine the value of each Unit and the Investment Pool Account to which such Unit relates in accordance with the applicable methods, procedures and policies as established from time to time by GMIMCo, subject to the approval of any Person or as may be required by GMIMCo or any valuation of Securities or Other Property by any Person as may be directed by GMIMCo. Except for the Recordkeeper, the Trustee shall have no responsibility for the valuation of Units or Investment Pool Accounts.

## ARTICLE XI

## OTHER CUSTODIAL ARRANGEMENTS

11.1  *Transfer of Assets.* Upon GMIMCo's direction, the Trustee shall transfer and deliver such part of the assets of its Accounts as may be specified in such direction to any separate funding medium for the account of any Delphi Savings Plan. None of

DOL-PSP-000082

GMIMCo and the Trustee shall have any liability or responsibility (i) to determine whether such transfer shall be in conformity with the provisions of any Delphi Savings Plan or ERISA, or (ii) with regard to the effect of such transfer upon the participants or beneficiaries in the Delphi Savings Plans whose interests (or any portion thereof) in the Trust Fund are being transferred to other funding media or are not directly subject to any such transfer. Any direction received from a fiduciary with respect to a Delphi Savings Plan to transfer assets of the Trust Fund attributable to such Delphi Savings Plan to a separate funding medium shall constitute a certification by the fiduciary that the transfer so directed is one which the fiduciary is authorized to direct and which is in conformity with ERISA. Unless GMIMCo instructs the Trustee otherwise, any separate funding medium for the account of a Delphi Savings Plan to which assets of the Trust Fund are transferred pursuant to this Section shall not constitute a part of the Trust Fund.

11.2    *Other Trusts or Custody Arrangements*. At the direction of GMIMCo with respect to the Trust Fund or any Investment Manager or Named Fiduciary with respect to any Manager Account under its management, the Trustee shall from time to time transfer to or accept a transfer from (i) any group trust or other trust which is exempt from tax under Section 501(a) of the Code ("**Group Trust**"), (ii) any commingled fund maintained by a bank or trust company, (iii) any separate account established and maintained by any insurance company, (iv) any brokerage or other account in the name of the Trust Fund or any Person wholly owned by one or more Delphi Savings Plans or (v) any investment company registered under the Investment Company Act (collectively, "**Other Custodial Arrangements**"). The Trustee may, as it deems advisable with respect to the assets of the Trust Fund under its control and management, transfer or withdraw any part or all of the Trust Fund to or from any Other Custodial Arrangement maintained by it or its affiliate; provided the Trustee has previously disclosed to GMIMCo the terms of such Other Custodial Arrangement and GMIMCo has approved the use of such Other Custodial Arrangement. To the extent of the interest of the Trust Fund in any Collective Trust the terms of the agreement or declaration of trust establishing such Collective Trust shall be a part of this Trust as if set forth in full herein, and any assets transferred to any Collective Trust shall be held, invested and administered in accordance with such agreement or declaration of trust except to the extent the expense and indemnification provisions of the Other Custodial Arrangement are inconsistent with the provisions of this Agreement, then the provisions of this Agreement shall govern with respect to the interest of the Trust Fund invested therein. Any such assets transferred shall be under the sole and exclusive management and control of the custodian or other Person acting in a similar capacity of such Other Custodial Arrangement. No provision in the Other Custodial Arrangement agreement will limit the responsibility, if any, of the Trustee or any Investment Manager under this Agreement or any separate investment management agreement.

11.3    *Accounting for Other Custody Arrangements*. With respect to each Other Custodial Arrangement, GMIMCo shall instruct the Trustee as to the treatment of such Other Collective Arrangement as one or more Accounts for purposes of recordkeeping in accordance with generally accepted accounting principles and ERISA.

DOL-PSP-000083

## ARTICLE XII

### DISBURSEMENTS AND TAXES

12.1    *Disbursements*. Subject to the provisions of this Article, the Trustee shall pay over part or all of the beneficial interests of any Delphi Savings Plan constituting part of any Account to such Persons, in such manner, in such amounts and for such purposes (including, without limitation, the payment of expenses of administering the Delphi Savings Plan and Trust Fund, and the purchase of annuity contracts), as may be specified in the directions of GMIMCo, a Named Fiduciary or Investment Manager on behalf of the Delphi Savings Plan. Any such disbursement shall be charged pursuant to the directions of GMIMCo to the Delphi Savings Plan that received or benefited from such disbursement, and GMIMCo shall designate the Accounts from which any disbursements are to be paid pursuant to this Article. GMIMCo shall be solely responsible to insure that any payment directed under this Article conforms to the provisions of this Agreement and ERISA. Expenses of administration of the Trust Fund incurred by GMIMCo include, without limitation, to the extent permitted by ERISA, those expenses incurred in retaining Investment Managers, investment advisors, consultants and legal counsel and GMIMCo's overhead with respect to the Trust Fund and Delphi Savings Plans, and such expenses shall be withdrawn by the Trustee out of the Trust Fund, if not otherwise paid, at the direction of a Named Fiduciary or GMIMCo. Except as provided in the previous sentence, no assets of the Trust Fund shall be paid over to GMIMCo.

12.2    *Taxes*.

a.    GMIMCo shall prepare or cause to be prepared, sign and file on behalf of the Trust all income tax returns with respect to the Trust Fund, including, but not limited to, any quarterly estimated tax filings, and any other tax returns applicable to the Trust Fund in its entirety. GMIMCo may direct the Trustee to sign any tax returns. Moreover, GMIMCo may, with respect to income taxes or other taxes applicable to the Trust Fund in its entirety, exercise all of the powers of the Trustee to initiate, pursue, defend, settle or compromise claims or controversies regarding such taxes and related matters, including, but not limited to, commencing, joining or opposing arbitrations, suits or other proceedings regarding such taxes or related matters, and entering into powers of attorneys with respect to the Trust Fund.

b.    The Trustee, Named Fiduciary or Investment Manager having investment responsibility with respect to a Manager Account shall be responsible for preparing and filing all tax returns which pertain to such Account or the assets thereof and which are not determined by reference to the Trust Fund in its entirety, including, but not limited to, any excise or property taxes, and each Investment Pool Account that is treated as a separate group trust pursuant to the terms of this Agreement.

c.    The Trustee shall pay out of the Accounts all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws against the portion of the Trust Fund held in such Accounts, to the extent permitted by applicable law as directed by GMIMCo or, with respect to any

DOL-PSP-000084

Manager Account, by the Named Fiduciary or Investment Manager of such Accounts. In making payments to service providers pursuant to directions received from GMIMCo, an Investment Manager or a Named Fiduciary, The Trustee is acting as a paying agent, and not as a payor, for tax information reporting and withholding purposes.

12.3   *Tax Reclaim Services.*

a.   Subject to the provisions of this Agreement, each Trustee will apply for a reduction of withholding tax and a refund of any tax paid or tax credits, which apply in each applicable market in respect of income payments on Global Assets in its Custodial Account for the benefit of the Separate Trust which such Trustee believes may be available.

b.   The provision of tax reclaim services by the Trustee is conditional upon the Trustee receiving from a Named Fiduciary certain documentation (pro forma copies of which are available from the Trustee) it may reasonably request. If the Trustee does not receive this documentation, it will be unable to provide tax reclaim services.

c.   The Trustee shall be liable to the Trust Fund, any Delphi Savings Plan or any third party for any income taxes, fines, penalties payable by the Trustee or for the account of the Trust Fund, and the Trustee shall be indemnified accordingly, whether these result from the inaccurate completion of documents by the Named Fiduciary or any or any third party, or as a result of the provision to the Trustee or any third party of inaccurate or misleading information or the withholding of material information by the Named Fiduciary or any other third party, or as a result of any delay of any revenue authority or any other matter beyond the Trustee's control.

d.   The Trustee shall perform tax reclaim services only with respect to taxation levied by the revenue authorities of the countries for which the Trustee performs such services, and the Trustee shall identify such countries by notice to GMIMCo and the applicable Investment Manager. The Trustee may, by notification in writing, at its absolute discretion, supplement or amend the markets in which the tax reclaim services are offered. Other than as expressly provided in the preceding sentence or in a record keeping , the Trustee shall have no responsibility with regard to the Trust Fund's or any Delphi Savings Plan's tax position or status in any jurisdiction of the Trust Fund or any Delphi Savings Plan.

e.   GMIMCo confirms that the Trustee is authorized to disclose to the extent reasonable any information requested by any revenue authority or any governmental body in relation to a Delphi Savings Plan, and any Global Assets or any cash held in the Trust Fund.

f.   Tax reclaim services may be provided by any Trustee or, in whole or in part, by one or more third parties appointed by the Trustee (which may be affiliates of the Trustee); provided that the Trustee shall be liable for the performance of any such third party to the same extent as the Trustee would have been if it performed such services itself.

NY2:\523699\02\B437021.DOC\72240.0342                22

DOL-PSP-000085

## ARTICLE XIII

### POWERS OF THE TRUSTEE

13.1    *Powers of Trustee.*  Except to the extent that powers of the Trustee are modified, abridged or limited by ERISA, the terms of this Agreement or GMIMCo, the Trustee shall have all of the powers as may be necessary, appropriate or desirable to carry out the purposes of the Trust Fund, with or without directions from any other Person, except that the Trustee shall exercise such powers only at the direction of such Investment Manager or Named Fiduciary, as the case may be. Without limiting the generality of the foregoing, The Trustee shall have the following powers and authorities:

a.    To establish, form, dissolve, liquidate or take any other actions with respect to any corporation, limited liability company, partnership, trust or other Person, including, without limitation, any title holding corporation under Section 501(c)(2) or 501(c)(25) of the Code;

b.    To abandon, acquire, convert, dispose of, exchange, exercise, grant, hold, issue, lease, mortgage, permit to expire, permit to be held in escrow, pledge, redeem, sell, subscribe for, surrender, vote, write, or take any and all other actions with respect to Securities or Other Property, and any rights or obligations appurtenant or otherwise relating thereto, including (i) engaging in any transactions involving any combination of and taking any actions necessary or appropriate to settle transactions in puts, calls or other forms of options (covered or uncovered), futures contracts, swaps or other Securities or Other Property; and (ii) entering into stand-by agreements for future investment (either with or without a stand-by fee), short-selling programs, foreign exchange or foreign exchange contracts, swaps, guaranteed investment contracts, synthetic guaranteed investment contracts, bank investment contracts, contracts for the immediate or future delivery of or otherwise pertaining to Securities or Other Property, and similar instruments and other derivative investments;

c.    To initiate, settle, compromise or submit to arbitration any claims, debts or damages due or owing to or from the Trust, or to commence, join in or defend, or represent the Trust in, any suits or proceedings in any court of law or before any other body or tribunal; including, without limitation, any claims with respect to taxes; provided, however, that the Trustee shall retain the right, in its sole discretion, to commence, join in or oppose any such settlements, compromises, arbitrations, suits or proceedings where it may be adversely affected by the outcome, individually or as Trustee, or where it is advised by counsel that such action is required on its part by ERISA or other applicable law;

d.    To commence, join in, consent to or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, liquidation or readjustment of the finances of any Person or the Securities or Other Property thereof, and to deposit any Securities or Other Property with any protective, reorganization or similar committee, and to pay or agree to pay the expenses and compensation of any such committee and any assessments levied with respect to Securities or Other Property so deposited;

DOL-PSP-000086

e.  To borrow money, to guarantee indebtedness or other obligations of other Persons, to pledge any Securities or Other Property for the payment of any such loan or guarantee, or for any other purpose (whether or not in connection with the borrowing of money), and to enter into contracts ancillary or relating to such loans, guarantees or pledges; provided, however, no such loans shall be made by the Trustee individually except for loans or temporary advancements to the Trust Fund on a cash or overdraft basis on terms as shall be approved by an Investment Manager who is a qualified professional asset manager under ERISA, or GMIMCo; in compliance with Prohibited Transaction Class Exemption 84-14 or 96-23, respectively;

f.  To manage, administer, operate, lease for any number of years (regardless of any restrictions on leases made by fiduciaries), develop, improve, repair, alter, demolish, mortgage, pledge, grant options with respect to, or otherwise deal with any property or interest therein at any time held by it; to renew, extend or participate in the renewal or extension of any mortgage upon such terms as may be deemed advisable;

g.  To agree to a reduction in the rate of interest on or other modification in the terms of any mortgage, loan or guarantee; to waive or enforce any default whether in the performance of any covenant or condition of any mortgage, loan or guarantee in such manner and to such extent as may be deemed advisable, to exercise and enforce any and all rights of foreclosure, to bid on property in foreclosure, to take a deed in lieu of foreclosure with or without paying a consideration therefor and in connection therewith to release the obligation on the bond secured by such mortgage, and to exercise and enforce in any action, suit or proceedings at law or in equity any rights or remedies in respect of any such mortgage, loan or guarantee;

h.  To convert monies received with respect to assets in an Account into U.S. dollars or other currencies through the Trustee's or the Investment Manager's customary channels, including, without limitation, the effecting of such conversions through the Trustee or one of its affiliates;

i.  To timely collect dividends, interest, rents, royalties and other forms of income on or distributions in respect of Securities or Other Property held in the Trust Fund;

j.  To exercise any right appurtenant to any Securities or Other Property, including without limitation, by general or limited power of attorney, or by serving or otherwise acting as a general or limited partner of a partnership, a managing member of a limited liability company, a member of an association, committee or other organization or in any similar capacity with respect to any Person;

k.  To invest at any bank (including the Trustee) (i) in any type of interest bearing investments (including, but not limited to, savings accounts, money market accounts, certificates of deposit and repurchase agreements) and (ii) in non-interest bearing accounts (including but not limited to checking accounts);

NY2:\523669P\02\B837021.DOC\72240.0342                    24

DOL-PSP-000087

13.2   *Prohibited Transactions*. To invest in collective investment funds maintained by State Street Bank and Trust Company or by other banks for the investment of the assets of employee benefit plans qualified under Section 401(a) of the Code, whereupon the instruments establishing such funds, as amended, shall be deemed a part of this Trust Agreement and incorporated by reference herein;

a. To invest in open-end and closed-end investment companies, regardless of the purposes of which such funds were created, including those managed, serviced or advised by the Trustee, an affiliate of the Trustee, and any partnership, limited or unlimited, joint venture and other forms of joint enterprise created for any lawful purpose;

b. To make, execute and deliver, as Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases or other instruments in writing necessary or desirable for the accomplishment of any of the powers herein;

c. Without being expressly authorized or directed, to employ suitable agents, ancillary trustees and counsel and, subject to prior approval of GMIMCo, to pay their reasonable and proper expenses and compensation (but no such expenses or compensation shall be charged to the Trust Fund for custodial services delegated by the Trustee to others or for the services of a sub-trustee that are to be provided by the Trustee under this Agreement);

d. To the extent directed by GMIMCo pursuant to authorization by the Named Fiduciary, in its sole discretion, to lend any Securities or Other Property to brokers or dealers;

e. Without being expressly authorized or directed, to register any securities held by it hereunder in its own name, in the name of its nominee, in the name of its agent, or in the name of its agent's nominee with or without the addition of words indicating that such securities are held in a fiduciary capacity, and to hold any securities in bearer form and to deposit any Securities or Other Property in a depository or clearing corporation;

f. To make, execute and deliver, as the Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases or other instruments in writing necessary or desirable for the accomplishment of any of the powers described hereunder;

g. To hold part or all of the Trust Fund uninvested;

h. To reject any assets;

i. Generally to do all ministerial acts, without being expressly authorized or directed, which the Trustee may deem necessary or desirable in carrying out its duties under this Agreement; and

j. Each Trustee may consult with legal counsel concerning questions which may arise with reference to this Trust Agreement and its powers and duties as

DOL-PSP-000088

trustee in the event that (i) the Trustee has not receive a direction in the usual periods of time for such communications or (ii) the Trustee has not received representations to its satisfaction that a direction is a proper one under this Trust Agreement or Applicable Law. To the extent permissible by Applicable Law, the written opinion of such counsel shall be full and complete protection of the Trustee in respect to any action taken or suffered by the Trustee hereunder in good faith reliance on the opinion.

13.3  *Prohibited Transactions.* Notwithstanding anything in the Delphi Savings Plans or this Agreement to the contrary, the Trustee shall not be required by GMIMCo, any Named Fiduciary, any Investment Manager or the Trustee to engage in any action, nor make any investment which constitutes a prohibited transaction or is otherwise contrary to the provisions of ERISA or other applicable law, or the terms of the Delphi Savings Plans or this Agreement.

## ARTICLE XIV

## TRUSTEE

14.1  *Appointment, Removal and Resignation of Trustee.* GMIMCo may from time to time appoint one or more Persons to serve as the Trustee or, upon at least thirty (30) days prior written notice, remove any Person from serving as the Trustee. The Trustee may resign upon at least thirty (30) days prior written notice to GMIMCo; provided, however, that such resignation shall not be effective until a successor has been appointed and is acting.

14.2  *Standard of Care.* The Trustee shall discharge its duties hereunder with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Specifically, such Trustee shall comply with the standard of care for fiduciaries set forth in ERISA with respect to its duties or responsibilities that would be treated as fiduciary duties or responsibilities under ERISA. The Trustee shall use its best efforts and judgment and due care in the performance of its duties and obligations hereunder.

14.3  *Directions and Reliance On Communications.*

a.  Except as otherwise expressly provided herein, The Trustee shall be subject to the directions of GMIMCo and any Investment Manager, Named Fiduciary or Administrative Agent furnished to the Trustee in accordance with this Agreement, and except as may otherwise be required under ERISA, the Trustee shall have no duty to make any inquiry with respect to the correctness of such direction. Accordingly, each direction to the Trustee by GMIMCo, GMTC with respect to any Investment Manager, any Named Fiduciary or any Administrative Agent shall constitute a certification to the Trustee by such person that such direction complies with ERISA. The Trustee shall be entitled to request a letter of direction from GMIMCo and any Investment Manager, Named Fiduciary or Administrative Agent, as the case may be, with respect to an act or failure to act for which such person has responsibility or control.

NY2:\523699\02\B437021.DOC\72240.0342                26

DOL-PSP-000089

b.   The Trustee shall not be liable for the proper application of any part of
the Trust Fund if payments are made or other actions are taken or not taken in accordance
with the written directions of GMIMCo or any Investment Manager, Named Fiduciary or
Administrative Agent as herein provided, nor shall the Trustee be responsible for the
adequacy of the Trust Fund to meet and discharge any and all payments and liabilities
under the Plans. All Persons dealing with the Trustee are released from inquiry into the
decision or authority of the Trustee, and from seeing to the application of any moneys,
Securities or Other Property paid or delivered to the Trustee.

c.   The Trustee shall be fully protected in acting upon any instrument,
certificate, or paper believed by it to be genuine and to be signed or presented by the
proper Person or Persons, and shall have no duty to investigate or inquire about any
statement contained in any such writing but may accept the same as conclusive evidence
of the truth and accuracy of the statements therein contained. The Trustee shall be fully
protected in relying upon a certification of GMIMCo, GMTC with respect to any
Investment Manager, any Named Fiduciary, any Administrative Agent or any delegate
thereof with respect to any instructions, directions or approvals by such person or the
authority of any individuals who may act on such person's behalf, and in continuing to
rely upon such certification until a subsequent certification is filed with the Trustee.

d.   In addition, the Trustee may accept as the act or direction of GMIMCo
any writing purporting to be such act or direction and signed by such persons as may be
designated in writing from time to time by GMIMCo.

14.4   *Records.* The Trustee shall keep complete and accurate records of all
transactions of its Accounts hereunder, which shall be available for inspection and audit
by authorized representatives of GMIMCo and the Recordkeeper at reasonable times.
The Recordkeeper shall keep complete and accurate records pertaining to each
Investment Pool Account, the Units or measure of interest in an Investment Pool Account
and the Trust Fund in its entirety. The Trustee shall maintain all relevant tax returns,
reports and other information received with respect to the Trust Fund for not less than six
years.

14.5   *Accounts of the Trustee.*

a.   The Trustee shall render to GMIMCo accounts of its transactions
annually and at such other times reasonably requested by GMIMCo. GMIMCo or its
delegates may approve such accounts by an instrument in writing delivered to such
Trustee. Upon written approval of any annual account, the Trustee or shall, to the
maximum extent permitted by ERISA, be released, relieved and discharged with respect
to all matters and things set forth in such account as though such account had been settled
by the decree of a court of competent jurisdiction in an action or proceeding in which
GMIMCo, all other persons having fiduciary responsibility with respect to the Trust
Fund, and all persons having any beneficial interest in the Trust Fund were parties.
Except as otherwise provided by ERISA, no person other than GMIMCo may require an
accounting or bring any action against the Trustee with respect to the Trust Fund or its
actions as Trustee.

NY2:\523899\02\8437021.DOC\72240.0342                    27

DOL-PSP-000090

b. Nothing contained in this Agreement, the Delphi Savings Plans shall deprive the Trustee of the right to have a judicial settlement of its Accounts. In any proceeding for a judicial settlement of the Accounts of the Trustee, or in any litigation or other proceeding involving this Agreement, or for instructions in connection with the Trust Fund, except to the extent otherwise provided by law, the only necessary parties thereto in addition to the Trustee shall be GMIMCo. If the Trustee so elects, it may bring in as a party or parties defendant any other person or persons. Any settlement or judgments in any proceedings in which GMIMCo is duly served or cited shall be binding upon the participants and beneficiaries, and upon any person claiming under them, or claiming to represent them or any of them.

14.6   *Compensation and Expense Reimbursements.*

a. The Trustee shall be paid such reasonable compensation, including reimbursement for reasonable expenses, as shall from time to time be agreed upon by GMIMCo and the Trustee.

b. The Trustee shall be entitled to reimbursement for reasonable and proper counsel fees incurred by the Trustee (whether or not incurred in connection with an administrative or judicial proceeding), to the extent permitted by the Plans and ERISA, subject to the prior approval of GMIMCo. After approval by GMIMCo, such compensation, fees and expenses shall be withdrawn by the Trustee out of the Trust Fund if they are not otherwise paid by GMIMCo. No counsel fees of the Trustee or expenses of administration shall be borne by either the Trust Fund or GMIMCo to the extent they are incurred with regard to any actions or omissions of the Trustee which constitute a breach of its duties or responsibilities under this Agreement.

14.7   *Responsibility of the Trustee.*

a. Except in the case of a GMTC Collective Account, the authority of any Investment Manager and the terms and conditions of its appointment and retention shall be solely the responsibility of GMIMCo or any Named Fiduciary pursuant to Section 3.2, and the Trustee shall not be deemed to be a party to or to have any obligations under any agreement with any such Investment Manager, except to the extent that the Trustee has retained as Trustee the management and control of any Account.

b. The Trustee shall be under no liability for any loss of any kind which may result by reason of the manner of division of the Trust Fund into Manager Accounts, or the transfer of assets between such Accounts pursuant to and consistent with any direction of GMIMCo or any Named Fiduciary, and the establishment of Investment Pool Accounts; provided, however, nothing herein shall relieve the Trustee from any liability for any acts taken or omitted by such Trustee for which it has responsibility under this Agreement or ERISA.

c. Without limiting the provisions of this Article or any other provision of this Agreement, in the event that assets of the Delphi Savings Plans are held by any insurance carrier or custodian (excluding the Trustee or any sub-custodian thereof), the

DOL-PSP-000091

Trustee shall have only the responsibilities, obligations and duties specified in this Agreement with respect to the assets held in the Trust Fund and shall have no liability, except as otherwise provided by ERISA, for any loss resulting to the Delphi Savings Plans arising from any act or omission on the part of any such insurance carrier or other custodian (excluding the Trustee or any sub-custodian thereof).

d.  The Trustee shall not be liable for (i) any error of fact or judgment or any action lawfully taken or omitted to be taken by it in such the performance of such responsibilities, obligations and duties specified in this Agreement or arising as a matter of law, (ii) any decline in the value of the Trust Fund, or (iii) any loss that may result from such performance or circumstances beyond its or any of its agents reasonable control, except in the case of negligence, willful misconduct, recklessness, bad faith, misfeasance or nonfeasance, burglary, robbery or holdup on the part of itself, any agent appointed by it, or the respective employees or agents of either. In particular, the liability of the Trustee for damage shall be limited (i) in the case of lost securities, to the replacement of such securities of the same class and issue and the value of any rights or privileges related thereto, and (ii) in the case of lost funds, to the replacement of such funds and the payment of interest for the period of loss calculated at the rate of interest that such funds would have earned for such period. In addition to the above, to the extent the Trust Fund experiences a loss due to the inability of the Trustee to deliver a Security or Other Property which has been lost under circumstances for which the Trustee is liable hereunder, the Trustee shall reimburse the Trust Fund for any such losses to the Trust Fund resulting from such inability of the Trustee to deliver.

The Trustee shall be liable for losses which shall occur as the result of the failure of a Subcustodian to exercise reasonable care with respect to the safekeeping of Securities or Other Property held by it in accordance with the standards prevailing in its local market or form the willful default of such Subcustodian in the provision of custodial services by it. In cases where compliance with Department of Labor Regulation 404b-1 is based solely on compliance with paragraph (a)(2)(ii)(C) of that Regulation, however, the Trustee shall be liable for any losss which shall occur as the result of the failure of a Subcustodian to exercise the same level of care as applies to the Trustee with respect to Securities or Other Property held hereunder.

14.8   *Insurance*. The Trustee agrees to have in force, for its own protection, bankers blanket bond insurance which includes coverage for computer crime in the amount of $100 million. The Trustee further agrees to provide GMIMCo with thirty (30) days written notice of any material change in the form, coverage or amount of such insurance or of any termination of such insurance by the applicable insurance company.

14.9   *Indemnification of and by Trustee.*

a.   GMIMCo agrees to defend, indemnify and hold the Trustee harmless from and against all claims, demands, damages, taxes and other liabilities which the Trustee may incur to the extent arising from GMIMCo's breach of this Agreement, or the negligence, bad faith, recklessness, willful misconduct, misfeasance, non-feasance of

DOL-PSP-000092

GMIMCo. Subject to the following provisions of this Section 13.9, GMIMCo agrees to defend, indemnify and hold each Trustee harmless from and against all claims, demands, damages, taxes and other liabilities which the Trustee may incur as a result of any act or omission in accordance with directions of GMIMCo or any Investment Manager, but only to the extent such claims, demands, damages, taxes and other liabilities do not arise from the negligence, bad faith, recklessness, willful misconduct, misfeasance or nonfeasance of the Trustee or any agent appointed by the Trustee (which for purposes of this paragraph only shall not include any non-domestic depositories except as otherwise provided in paragraphs (d) and (e) below), or any of their respective employees or agents.

   b.   Subject to the following provisions of this Section 13.9, each Named Fiduciary (other than GMIMCo) agrees to defend, indemnify and hold the Trustee and GMIMCo harmless from and against all claims, demands, damages, taxes and other liabilities which the Trustee and GMIMCo may incur to the extent arising from the Named Fiduciary's breach of this Agreement, or the negligence, bad faith, recklessness, willful misconduct, misfeasance, of the Named Fiduciary, or any of its respective employees, but only to the extent such claims, demands, damages, taxes and other liabilities do not arise from the negligence, bad faith, recklessness, willful misconduct, misfeasance or nonfeasance of the Trustee or any agent appointed by the Trustee (which for purposes of this paragraph only shall not include any non-domestic depositories except as otherwise provided in paragraphs (d) and (e) below), or any of their respective employees or agents..

   c.   The Trustee agrees to indemnify and hold the Trust Fund, GMIMCo and any Named Fiduciary harmless from and against all claims, demands, damages, taxes and other liabilities which the Trust Fund, GMIMCo and/or any Named Fiduciary may incur to the extent arising from the Trustee's breach of this Agreement, or the negligence, bad faith, recklessness, willful misconduct, misfeasance, non-feasance, burglary, robbery, or holdup of the Trustee, any agent appointed by the Trustee (which for purposes of this paragraph only shall not include non-domestic depositories except as otherwise provided in paragraphs d and e below), or any of their respective employees or agents, or the theft or mysterious disappearance, including losses by damage or destruction of the assets in the Custodial Account with respect to the Trustee.

   d.   The Trustee agrees to indemnify and hold the Trust Fund and GMIMCo harmless from and against all claims, demands, damages, taxes and other liabilities which the Trust Fund, GMIMCo and/or any Named Fiduciary may incur arising from any action taken or omitted to be taken by Cedel or its employees (hereinafter referred to as "Cedel") in connection with its performance as a depository for the Global Assets of the Trust Fund, subject to any such loss which might be caused by actions beyond the reasonable control of Cedel. To the extent that a loss is caused by any event beyond the reasonable control of Cedel, including any action or inaction of a depository, sub-depository, custodian, sub-custodian or any other clearance system utilized by Cedel or by any carrier transporting securities between Cedel and any of the foregoing, the Trustee shall exercise all rights and powers it has against Cedel to compel recovery for such loss and shall promptly pay over to the Trust Fund any recovery received.

DOL-PSP-000093

e. The Trustee agrees to indemnify and hold the Trust Fund, GMIMCo and/or any Named Fiduciary harmless from and against all claims, demands, damages, taxes and other liabilities which the Trust Fund, GMIMCo and/or any Named Fiduciary may incur arising from any action taken or omitted to be taken by Morgan Guaranty Trust Company of New York or its employees (hereinafter referred to as "**Morgan Guaranty**") in connection with its performance as the manager of Euroclear to the extent that Euroclear serves as a depository for the Global Assets of the Trust Fund with respect to the Trustee, subject to any such loss which might be caused by actions beyond the reasonable control of Morgan Guaranty. To the extent that a loss is caused by any event beyond the reasonable control of Morgan Guaranty, including any action or inaction of a depository, sub-depository, custodian, sub-custodian or any other clearance system utilized by Morgan Guaranty within the Euroclear System or by any carrier transporting Securities or Other Property between Morgan Guaranty and any of the foregoing, the Trustee shall exercise all rights and powers it has against Morgan Guaranty to compel recovery for such loss and shall promptly pay over to the Trust Fund any recovery received.

f. The Trustee shall use its best efforts to assist GMIMCo in the event of any claims, demands, damages, taxes and other liabilities which the Trust and/or GMIMCo may incur arising from any action taken or omitted to be taken by any non-domestic depository not covered by Sections 13.9(b) or (c) above and attributable to the Global Assets. Such best efforts on behalf of the Trustee shall require the Trustee to exercise all rights and powers it has against such non-domestic depository to compel recovery for such loss, and the Trustee shall promptly pay over to the Trust Fund any recovery received with respect to the Trust Fund. The Trustee's obligations under this Section 11.9(f) shall survive the termination of this Agreement.

g. Each of GMIMCo, GMTC, each Named Fiduciary and the Trustee may bring action against each other to contribute to the satisfaction of any liability under this Section 13.9 to the extent that such liability is attributable to the culpable conduct of such person. In the event that an indemnified party reasonably concludes that it has a conflict of interest with the indemnifying party, or any other party seeking indemnity under this Article with respect to the same matter, that indemnified party shall be entitled to retain separate counsel reasonably acceptable to the indemnifying party at the indemnifying party's reasonable expense.

h. The foregoing rights of indemnification and contribution shall not limit any rights or remedies which may be available to any person under applicable law, including, without limitation, any right of action for breach of this Agreement. The indemnification provided in this Article XIII shall survive the termination of this Agreement.

i. The indemnification provided in this Article XIII shall survive the termination of this Agreement.

DOL-PSP-000094

## ARTICLE XV

## DISQUALIFICATION OF A DELPHI SAVINGS PLAN

15.1    *Representations of Delphi Savings Plans.* Each Delphi Savings Plan, by its continued participation in the Trust, represents to GMIMCo at all times during such participation that (i) such Delphi Savings Plan qualifies as a plan described in Section 401(a) of the Code, and (ii) none of the provisions of the agreements establishing and governing such Delphi Savings Plan is inconsistent with and supersedes any provision of this Agreement. In the event of any conflict or inconsistency between the terms of this Agreement and the terms of any Delphi Savings Plan, the terms of this Agreement shall govern with respect to the operation of the Trust Fund.

15.2    *Segregation of a Delphi Savings Plan.* At any time a Delphi Savings Plan shall fail to qualify as a plan described under Sections 401(a) of the Code, the beneficial interest of such Delphi Savings Plan in the Trust Fund shall automatically be deemed to constitute a separate trust and to be segregated from the other assets of the Trust Fund. In such event, the Trustee shall be deemed to have delivered to itself as trustee of such Delphi Savings Plan such part of the Trust Fund representing the beneficial interest of such Delphi Savings Plan to be held, administered and managed under terms consistent with the terms of this Agreement.

## ARTICLE XVI

## MISCELLANEOUS

16.1    *Amendment.* This Agreement other than Section 2.6 may be amended by GMIMCo at any time or from time to time and in any manner, and the provisions of any such amendment may be made applicable to the Trust Fund as constituted at the time of the amendment as well as the part of the Trust Fund subsequently acquired; provided, however, that no such amendment shall increase the duties or change the compensation of the Trustee without its consent. Any amendment to this Agreement shall be by a written instrument delivered to the Trustee. The parties agree that the terms of this Agreement are provisional for an interim period to accommodate the spinoff of Delphi from General Motors Corporation at a time before the completion of negotiation of the terms of the General Motors Employes Global Group Pension Trust. Accordingly, such terms of this Agreement shall be amended by the parties to reflect the outcome of such negotiations immediately following the conclusion of those negotiations.

16.2    *Termination.* This Agreement and the Trust Fund created hereby may be terminated at any time by GMIMCo or any successor in interest thereto by operation of law or otherwise. Upon such termination or the dissolution of GMIMCo, the Trust Fund shall be paid out by the Trustee after the settlement of its final accounts as and when directed by GMIMCo or its successor. Notwithstanding the foregoing, the Trustee shall not be required to pay out any assets of the Trust Fund until it shall have received such rulings or determinations of the Internal Revenue Service, the Department of Labor, the Pension Benefit Guaranty Corporation, or any other administrative agency as it may

NY2:\523699\07\83702L.DOC\72240.0342                    32

DOL-PSP-000095

reasonably deem necessary or appropriate in order to assure itself that any such payment is made in accordance with the provisions of law or that it will not subject the Trust Fund or the Trustee, individually or as such Trustee, to liability.

16.3    *Appointment of the Trustee as Agent.*  GMIMCo, a Named Fiduciary or any administrator of the Plans named pursuant to ERISA at any time may employ as its agent any corporation serving as the Trustee hereunder or any subsidiary or affiliate thereof to perform any act, keep any records or accounts, or make any computations required of GMIMCo, such Named Fiduciary, or such administrator of the Plans: Nothing done by the Trustee as such agent shall affect its responsibility or liability as Trustee hereunder.

16.4    *Representations.*  GMIMCo and the Trustee hereby each represent and warrant to the other that it has full authority to enter into this Agreement upon the terms and conditions hereof and that the individual executing this Agreement on its behalf has the requisite authority to bind it to this Agreement.

16.5    *Duty to Furnish Information.*  GMIMCo, the Trustee and the Recordkeeper shall furnish to the other any documents, reports, returns, statements or other information that the other reasonably deems necessary to perform its duties imposed under the Plans or this Agreement.

16.6    *Situs of Trust and Jurisdiction.*  This Agreement and the Trust created hereby shall be construed, regulated and administered under the laws of the United States or the State of New York, as applicable. All contributions to the Trust Fund shall be deemed to take place in the State of New York. With the consent of the Trustee, GMIMCo may amend this Agreement to establish the Trust at a different situs and a different governing law.

16.7    *Counterparts.*  This Agreement shall be executed in any number of counterparts, and each one shall be deemed to be the original although the others shall not be produced. The parties agree that the terms of this Agreement are provisional for an interim period to accommodate the spinoff of Delphi Automotive Systems Corporation from General Motors Corporation at a time before the completion of negotiations of the terms of the General Motors Employees Global Group Pension Trust. Accordingly, such terms of this Agreement shall be amended by the parties to reflect the outcome of such negotiations immediately following the conclusion of those negotiations.

DOL-PSP-000096

IN WITNESS WHEREOF, this instrument has been executed as of the day and year first above written.

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION

Attest:

By

STATE STREET BANK AND
TRUST COMPANY

Attest:

By

DOL-PSP-000097

05/21/99  FRI 16:13 FAX 617 537 6566    LEGAL DIVISION    002

IN WITNESS WHEREOF, this instrument has been executed as of the day and year first above written.

**GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION**

Attest:

By _____

**STATE STREET BANK AND TRUST COMPANY**

Attest:

*Michelle Agarwal*

By *W. Mahoney*
Senior Vice President
William M. Mahoney

NY1:\523499\02\B43702\.DOC\72240.0342                    34

DOL-PSP-000098