Exhibit 2

**INVESTMENT MANAGEMENT AGREEMENT**
**for U.S. Savings Plans**

**between**

**Delphi Automotive Systems Corporation**

**and**

**General Motors Investment Management Corporation**

**Dated as of January 1, 1999**

**DOL-PSP-001775**

# INVESTMENT MANAGEMENT AGREEMENT

## TABLE OF CONTENTS

                                                                          PAGE

Investment Policy Statement...........................................................................

Investment Management Services ....................................................................

Changes in Investment Policy Statement..........................................................

Reports ........................................................................................................

Meetings ......................................................................................................

Notices.........................................................................................................

Custody of Assets, Recordkeeping, Employee Communication, Etc. ....................

Representations ............................................................................................

Fiduciary Responsibility, Confidentiality, Etc. ...................................................

Services to Other Clients.................................................................................

Indemnification..............................................................................................

Compensation for Services .............................................................................

Bonding.........................................................................................................

Certifications, Program Documents, Etc............................................................

Receipt of Filings ...........................................................................................

Assignment of Agreement...............................................................................

Termination....................................................................................................

Applicable Law...............................................................................................

Severability ...................................................................................................

Other Agreements..........................................................................................

i

**Schedule of Fees for Investment Services**

Exhibit A:    List of Programs

Exhibit B:    List of Investment Options

DOL-PSP-001777

# INVESTMENT MANAGEMENT AGREEMENT
# FOR U.S. SAVINGS PLANS

THIS AGREEMENT is made and effective as of this 1st day of January, 1999 by and between Delphi Automotive Systems Corporation ("Delphi"), a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5725 Delphi Drive, Troy, Michigan 48098, and General Motors Investment Management Corporation ("GMIMCo"), a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 767 Fifth Avenue, New York, New York 10153.

WHEREAS, Delphi has established the qualified savings plans listed on Exhibit A hereto to facilitate the accumulation of savings by employees (collectively, such plans are hereinafter referred to as the "Programs"), and such Programs are subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA");

WHEREAS, GMIMCo has entered into, and may from time to time in the future enter into, trust agreements, as such agreements may be amended or restated from time to time (the "Trust Agreements"), with certain banks, trust companies or insurance companies (the "Trustees") establishing trust funds to hold the assets of the Programs (the "Program Trust Funds");

WHEREAS, the Programs have been structured to qualify as ERISA Section 404(c) plans;

WHEREAS, the employees who participate in the Programs (the "Participants") have the authority to direct the investment of their individual accounts under and subject to the Programs and have been designated under their respective Programs as a "named fiduciary" (to the extent their investment authority is not subject to Section 404(c) of ERISA), and, in such capacity, are authorized pursuant to Section 403(a)(1) of ERISA to direct the Trustees with respect to investment of their individual accounts under the Programs and the voting and tendering of shares of certain qualifying employer securities (as such term is defined in Section 407(d)(5) of ERISA, which may include common stock of Delphi, General Motors Corporation and its former affiliates) allocable to their individual accounts under the Programs;

WHEREAS, pursuant to authority granted to it under the Programs Delphi desires to appoint GMIMCo as a named fiduciary (as that term is defined in ERISA) for purposes of investment of the assets of the Programs and GMIMCo desires to accept such appointment, upon the terms and conditions set forth herein;

WHEREAS, Delphi has appointed the Executive Committee of the Board of Directors of Delphi (the "Executive Committee") as the named fiduciary (as that term is defined in ERISA) with respect to the Programs, except as otherwise set forth above (it being understood that the Executive Committee may delegate authority to carry out such of its responsibilities, as it deems proper, to the extent permitted by ERISA);

DOL-PSP-001778

WHEREAS, Delphi intends to appoint a committee of Delphi which shall develop an Investment Policy Statement for the Programs, approve investment options for election by Participants and have such other responsibilities as the board of directors of Delphi or the Executive Committee shall determine (the "Committee");

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, Delphi and GMIMCo do hereby covenant and agree as follows:

1. <u>Investment Policy Statement</u>. (a) GMIMCo will assist the Committee in developing an Investment Policy Statement for the Programs and, upon request, in revising such Investment Policy Statement from time to time.

2. <u>Investment Management Services</u>. (a) Based upon the Investment Policy Statement, GMIMCo will, subject to the approval of the Committee (except as otherwise set forth in Section 2(c) below), select a broad range of investment options for election by Participants (collectively such investment options are sometimes hereinafter referred to as the "Investment Funds" and the managers or subadvisers of such Investment Funds are sometimes hereinafter referred to collectively as the "Investment Fund Managers"). Each Investment Fund may consist of (i) a fund or combination of funds managed by one or more investment managers within the meaning of Section 3(38) of ERISA, (ii) pools of insurance contracts (the Investment Funds referred to in clause (i) and this clause (ii) are hereinafter collectively referred to as the "Core Options"), (iii) one or more common, collective or commingled funds maintained by a bank or trust company (the "Commingled Fund Option"), (iv) one or more investment companies registered under the Investment Company Act of 1940 offered by one or more mutual fund companies (the "Mutual Fund Option"), or (v) certain qualifying employer securities which may include the common stock of Delphi and General Motors Corporation and its former affiliates or stock received in exchange for the stock of such affiliates (collectively, the "Company Stock Funds"). The Investment Funds in effect on the date hereof are listed on Exhibit B hereto, which exhibit may be amended from time to time by agreement of the parties.

(b) With respect to the Investment Funds comprising the Core Options, GMIMCo will appoint, in its sole discretion, one or more investment managers (as defined in Section 3(38) of ERISA), including itself (collectively, the "Core Option Managers"), to manage the Core Options upon such terms and conditions as GMIMCo shall determine in its capacity as named fiduciary for investment purposes. GMIMCo shall allocate from time to time a portion of the Program Trust Funds invested in each Core Option in its discretion among one or more Core Option Managers. GMIMCo shall periodically review and evaluate the services and performance of the Core Option Managers. GMIMCo may terminate any Core Option Manager or appoint new investment managers, or both, in its sole discretion.

(c) With respect to the Commingled Fund Option, the parties hereby acknowledge that General Motors Corporation intends to establish a limited purpose trust company (the "GM Trust Company") for the purpose of managing the assets of one or more Commingled Fund Options to be established and maintained by the GM Trust Company (the "GMTCo Commingled Funds"). GMIMCo intends to appoint the GM Trust Company as the Trustee with respect to the assets of the Programs invested by Participants in the GMTCo Commingled Funds upon such terms and conditions as GMIMCo shall determine in its capacity as named fiduciary for investment purposes. The parties contemplate that one or more of the GMTCo Commingled Funds will be made available as an investment option for Participants after the GM Trust Company is established by converting one or more of the Core Options into the corresponding GMTCo Commingled Fund. Delphi acknowledges and agrees that the GM Trust Company may

12/21/98                                         2

DOL-PSP-001779

retain such subadvisers, including GMIMCo, as the GM Trust Company may deem desirable to manage the GMTCo Commingled Funds upon such terms and conditions as the GM Trust Company shall determine. The GM Trust Company shall allocate from time to time a portion of the Program Trust Funds invested in the GMTCo Commingled Funds in its discretion among one or more subadvisers. GMIMCo shall periodically review and evaluate the services and performance of the GM Trust Company (including any subadvisers thereto). The GM Trust Company may terminate such subadvisers or appoint new subadvisers, or both, in its sole discretion.

(d)  With respect to the Mutual Fund Option, Delphi understands that each mutual fund company shall have complete control and discretion over the selection and termination of its mutual fund managers and the investment objectives and investment strategy for its related Mutual Fund Option. GMIMCo shall periodically review and evaluate the management and performance of the Mutual Fund Options.

(e)  With respect to the Company Stock Funds, it is expected that GMIMCo will select State Street Bank & Trust Company ("State Street") as the investment manager (as defined in Section 3(38) of ERISA) for the fund consisting of Delphi common stock (the "Delphi Stock Fund"). State Street shall be responsible for determining the applicable amount of Delphi common stock and cash or short term fixed income securities for the Delphi Stock Fund, from time to time, based on its estimates of the cash flow requirements of such fund and any investment guidelines applicable thereto. With respect to the Company Stock Funds other than the Delphi Stock Fund, State Street will continue to act as the Investment Fund Manager for such funds and, in such capacity, shall continue to be responsible for determining the applicable amount of stock and cash or short term fixed income securities for each such Company Stock Fund, from time to time, based on its estimates of the cash flow requirements of each such fund and any investment guidelines applicable thereto. GMIMCo shall periodically review and evaluate the services and performance of State Street. GMIMCo may terminate any Investment Fund Manager for any Company Stock Fund or appoint new investment managers, or both, in its sole discretion.

(f)  GMIMCo shall periodically recommend to the Committee for its approval additions to and deletions from the approved list of Investment Funds based on the Investment Policy Statement as in effect from time to time, general financial market conditions and other factors. Subject to the provisions of the Committee and upon the approval of the Committee, GMIMCo may direct the Trustees to eliminate an Investment Fund and the Trustee shall thereupon dispose of the assets of such Investment Fund and reinvest the proceeds thereof in a successor Investment Fund if directed by GMIMCo, or if not, among other Investment Funds directed by the Recordkeeper (as such term is defined in Section 7(b) hereof) in accordance with the terms of the Programs. Delphi acknowledges and agrees that GMIMCo may from time to time in its sole discretion convert one or more Core Options or Company Stock Funds into the corresponding GMTCo Commingled Fund.

3.  Changes in Investment Policy Statement.  Upon approval by the Committee of any change in the Investment Policy Statement, GMIMCo shall implement such change in a prompt and orderly manner consistent with its fiduciary responsibilities hereunder.

4.  Reports.  Within 60 business days after the end of each calendar year, GMIMCo shall prepare and deliver, or shall cause the Trustees or the Recordkeeper (as defined in Section 7(b) hereof) to prepare and deliver, to the Committee an annual report for each

12/21/98                    3

DOL-PSP-001780

Investment Fund indicating the investment performance as of the close of business on the last business day of the calendar year of each such Investment Fund. All other reports relating to the Programs shall be furnished by the Recordkeeper (as hereinafter defined).

5. <u>Meetings</u>. GMIMCo shall meet with the Committee or any of its members or designated representatives at least annually to discuss investment performance of the Investment Funds and such other matters as the Committee may request.

6. <u>Notices</u>. All notices hereunder shall be in writing and shall be sent to the Committee, Attention: [to be supplied] and to GMIMCo, Attention: Secretary, GMIMCo at 767 Fifth Avenue, New York, New York 10153, or otherwise as subsequently advised in writing by either party to the other.

7. <u>Custody of Assets, Recordkeeping, Employee Communications, Etc.</u> (a) The Trustees (which may include the GM Trust Company) shall maintain custody of all of the assets of the Program Trust Funds in accordance with Section 403(a) of ERISA and the regulations promulgated thereunder. Except as otherwise permitted by ERISA and the regulations thereunder, none of the Investment Fund Managers (other than the GM Trust Company) shall be authorized to take custody of any assets of the Program Trust Funds. The Investment Fund Managers shall have the power and authority exercised in their sole discretion at any time and from time to time to give the Trustees instructions for the purchase, sale, conversion, exchange, or retention of any security, cash or cash equivalent for the Program Trust Funds managed by such Investment Fund Manager. If GMIMCo changes the Trustee for any of the Program Trust Funds, GMIMCo shall give Delphi notice of such change.

(b) Delphi intends to designate Fidelity Institutional Retirement Services Company ("Fidelity") to provide recordkeeping and administrative services for the Programs (the "Recordkeeper"). It is understood and agreed that Delphi shall have sole responsibility for providing the Recordkeeper with such instructions, guidelines, interpretations and documents as may be required to enable the Recordkeeper to perform its recordkeeping and administrative services. Delphi agrees to cause the Recordkeeper to provide such information as GMIMCo shall from time to time request in order to enable GMIMCo to carry out its responsibilities hereunder. If Delphi changes the Recordkeeper for any Program, Delphi shall give GMIMCo prior written notice of such change. Delphi also intends to designate Fidelity to provide stock transfer services for the Programs (the "Stock Transfer Agent").

(c) Delphi intends to designate Fidelity and the Optima Group, Inc. (collectively, the "Communications Providers") to provide investment educational services, general financial and investment information, asset allocation models, investment materials and other materials designed to assist Participants (and/or their beneficiaries) in achieving a diversified portfolio appropriate to their particular situations. GMIMCo shall assist the Committee in reviewing and evaluating (i) any investment education/communications or financial planning programs designed to assist Participants (and their beneficiaries) in making investment decisions with respect to the investment of their individual accounts under the Program and (ii) the services of the Communications Providers.

8. <u>Representations</u>. GMIMCo warrants and represents that it is registered as an investment adviser under the Investment Advisers Act, and agrees that it shall maintain such registration at all times during the term of this Agreement. GMIMCo represents and warrants that it has completed, obtained or performed all registrations, filings, approvals, authorizations,

12/21/98                                    4

DOL-PSP-001781

consents and examinations required by any government or governmental authorities for the performance of the acts contemplated by this Agreement, and will maintain such status during the term of this Agreement.

9. Fiduciary Responsibility, Confidentiality, Etc. (a) GMIMCo acknowledges that it is a fiduciary, within the meaning of ERISA, with respect to the Programs and represents and warrants that it is familiar with and will comply with the fiduciary responsibility provisions of Title I, Part 4, of ERISA in the performance of its obligations under this Agreement. GMIMCo's fiduciary responsibility with respect to the Programs is limited as set forth in Section 2 above. GMIMCo shall not have responsibility to provide investment advice or consultation to Participants and, except to the extent it is responsible for selecting a broad range of Investment Funds to implement the Investment Policy Statement adopted by the Committee, shall not otherwise be responsible for insuring that Participants in fact exercise control over their individual investment accounts in accordance with the regulations issued by the Department of Labor under Section 404(c) of ERISA, including, without limitation, compliance with any procedural requirements of such section.

(b) GMIMCo agrees to keep confidential and not to disclose any information or matter relating to the Programs (other than to GMIMCo's or Delphi's employees, agents, advisors, or representatives responsible for matters relating to the Programs, each such person being hereinafter referred to as an "Authorized Representative"), provided that GMIMCo and its Authorized Representatives may make such disclosure to the extent that (i) the information being disclosed is publicly known at the time of the proposed disclosure by GMIMCo or such Authorized Representative, or (ii) such disclosure is required by law or regulation. Delphi agrees to keep confidential and not to disclose any information or matter relating to GMIMCo's costs for the services provided hereunder (other than to Delphi's officers, directors and employees responsible for matters relating to the Programs), provided that Delphi may make such disclosure to the extent that (i) the information being disclosed is publicly known at the time of the proposed disclosure by Delphi or (ii) such disclosure is required by law or regulation. GMIMCo agrees to inform its Authorized Representatives, and Delphi agrees to inform its officers, directors and employees, of the confidential nature of such information and will instruct such persons or entities not to disclose such confidential information to any other person. Each party agrees to notify the other prior to any disclosure required by law.

10. Services to Other Clients. The services of GMIMCo and its affiliates to the Programs are not to be deemed exclusive, it being understood that GMIMCo may perform investment advisory and management services for various other clients.

11. Indemnification. (a) Subject to such limitations as may be imposed by ERISA or other applicable law, if GMIMCo appears in, prosecutes or defends, in its own name or on behalf of Delphi (or any committee thereof), any action, suit or proceeding (collectively, a "proceeding") in its capacity as named fiduciary for investment purposes or investment manager with respect to a portion of the assets of the Program Trust Funds, any reasonable and necessary expenses incurred by GMIMCo in connection therewith (including reasonable attorneys' fees) shall constitute an expense of GMIMCo reimbursable from the Program Trust Funds as they are incurred in advance of a final disposition of such action, provided that such proceeding is not the result of any action or inaction of GMIMCo which is determined to be a breach of its duties under this Agreement. For purposes of the preceding sentence, such determination may be made by any of (i) a final determination by a court of competent jurisdiction or (ii) a final determination or finding by any regulatory authority or agency before which such proceeding shall have been brought. GMIMCo shall promptly repay the amount of any

12/21/98                                   5

DOL-PSP-001782

reimbursed expenses paid to it if it is later determined that GMIMCo was not entitled to indemnification as provided herein.

(b) To the fullest extent permitted by applicable law, Delphi agrees to indemnify GMIMCo and hold GMIMCo harmless from any action which GMIMCo shall take or refrain from taking in good faith in accordance with the directions of Delphi, the Committee, the Recordkeeper or the Communications Providers or in reliance upon any information furnished by any of them. GMIMCo shall have no duty to make any investigation or inquiry as to the genuineness of the signature of any person or as to any statement contained in such writing, and it may accept the same as conclusive evidence of the truth and accuracy of the statements contained therein.

(c) The obligations of Delphi under this Section 11 shall survive termination of this Agreement with respect to any act or omission of GMIMCo occurring before such termination.

(d) Each party to this Agreement shall promptly notify the other party in writing of any suit, claim, or legal action of any kind of which such party has actual knowledge in which the Programs or the Program Trust Funds is a named party or the real party in interest, in which any asset of the Programs is involved, or which relate to any alleged action or inaction of GMIMCo with respect to the assets of the Programs.

12. <u>Compensation for Services</u>. GMIMCo shall be entitled to payment for the services rendered pursuant to this Agreement as set forth on the Schedule of Fees for Investment Services attached hereto and made a part hereof.

13. <u>Bonding</u>. If a bond is required by ERISA or other applicable law, GMIMCo shall cause a bond that satisfies such requirement to be maintained by or on behalf of GMIMCo.

14. <u>Certifications, Program Documents, Etc</u>. GMIMCo shall provide the Trustees with a certificate evidencing GMIMCo's duly authorized representatives for communications with the Trustees. Delphi will provide GMIMCo with copies of all documents constituting the Programs (including the related Program Trust Agreements) and all other documents amending or supplementing the Programs (or the related Program Trust Agreements) promptly upon their adoption.

15. <u>Receipt of Filings</u>. Delphi acknowledges receipt from GMIMCo more than forty-eight (48) hours prior to the execution hereof Part II of Form ADV filed by GMIMCo under the Investment Advisers Act. GMIMCo shall provide Delphi with copies of all annual filings and amendments to Part II of Form ADV filed under the Investment Advisers Act.

16. <u>Assignment of Agreement</u>. No assignment (as that term is defined in the Investment Advisers Act) of this Agreement shall be made by GMIMCo without the written consent of Delphi.

17. <u>Termination</u>. This Agreement shall continue in effect until December 31, 2001 unless earlier terminated by GMIMCo or Delphi by giving at least ninety (90) days prior written notice to the other party and the Trustees. Notwithstanding the foregoing, this Agreement may be earlier terminated if a change of law shall so require in order for Delphi, the Committee or GMIMCo to avoid a violation of law or to avoid or remedy a breach of fiduciary duty under ERISA by Delphi, the Committee or GMIMCo. Nothing herein shall be construed to limit the power of Delphi to terminate GMIMCo's appointment as a named fiduciary (as that term is defined in ERISA) for investment purposes.

12/21/98                                             6

**DOL-PSP-001783**

18. Applicable Law. This Agreement shall be construed, administered and enforced according to the laws of the State of New York, to the extent not preempted by ERISA.

19. Severability. If any provision of this Agreement is invalid or unenforceable by reason of any rule of law or public policy, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, unlawfulness or unenforceability and all other conditions and provisions of this Agreement which can be given effect without enforcement of such invalid, unlawful or unenforceable provision shall remain in full force and effect.

20. Other Agreements. This Agreement embodies the entire understanding of the parties, supersedes any prior agreements or understandings with respect to the subject matter hereof and cannot be altered, amended, supplemented or any provisions waived, except by written agreement of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

DELPHI AUTOMOTIVE SYSTEMS
CORPORATION,

By:_____


GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION

By: _____
W. Allen Reed
President

7

DOL-PSP-001784

18. <u>Applicable Law</u>. This Agreement shall be construed, administered and enforced according to the laws of the State of New York, to the extent not preempted by ERISA.

19. <u>Severability</u>. If any provision of this Agreement is invalid or unenforceable by reason of any rule of law or public policy, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, unlawfulness or unenforceability and all other conditions and provisions of this Agreement which can be given effect without enforcement of such invalid, unlawful or unenforceable provision shall remain in full force and effect.

20. <u>Other Agreements</u>. This Agreement embodies the entire understanding of the parties, supersedes any prior agreements or understandings with respect to the subject matter hereof and cannot be altered, amended, supplemented or any provisions waived, except by written agreement of the parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

DELPHI AUTOMOTIVE SYSTEMS
CORPORATION,

By: _John Blakemore_

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION

By: _W. Allen Reed_
W. Allen Reed
President

12/21/98                                      7

DOL-PSP-001785

## SCHEDULE OF FEES FOR INVESTMENT SERVICES
### For U.S. Savings Plans

Delphi shall pay, or, to the extent permitted by ERISA, shall cause the Program Trust Funds to pay, as the case may be, the fees charged by the Trustees (including the GM Trust Company), the Recordkeeper, the Communications Providers and the Stock Transfer Agent and the expenses associated with administering the foregoing programs or arrangements. It is understood and agreed that Delphi also shall pay, or, to the extent permitted by ERISA, shall cause the Program Trust Funds to pay, as the case may be, the expenses of administering the Programs incurred by GMIMCo (acting in its capacity as a named fiduciary and as an investment manager or subadviser hereunder), the Executive Committee or the Committee, including without limitation, to the extent permitted by ERISA, those expenses incurred in retaining investment managers, investment advisers, consultants and legal counsel and GMIMCo's overhead. The Trustees shall withdraw such expenses out of the Program Trust Funds, if not otherwise paid by Delphi, at the direction of the Executive Committee or its designee (other than GMIMCo). Delphi shall pay the expenses of administering the Programs to the extent such expenses are not permitted by ERISA to be withdrawn from the Program Trust Funds.

[Delphi has advised GMIMCo of its intention to directly pay the following expenses: brokerage commissions on the Company Stock Funds, trustee fees related to the Company Stock Funds, fees and expenses of the investment manager of the Company Stock Funds, fees and expenses of the investment managers of the Equity Index Fund and external audit fees related to the Programs.] [Delphi to confirm whether it will follow GM practice with respect to these expenses.]

Delphi will be charged on a cost basis for the services rendered by GMIMCo hereunder until December 31, 2001. GMIMCo anticipates that its charges to Delphi for the services provided by GMIMCo hereunder will be materially consistent with those charged by GMIMCo to General Motors Corporation. At the request of Delphi, GMIMCo shall from time to time certify in writing to Delphi that its charges to Delphi for the services provided by GMIMCo hereunder are materially consistent with those charged by GMIMCo to General Motors Corporation. GMIMCo understands that Delphi may from time to time, subject to its confidentiality obligations under Section 9(b) of this Agreement, measure GMIMCo's charges for the services provided under this Agreement against the charges of others who might provide services to Delphi similar to the services provided by GMIMCo hereunder.

To the extent GMIMCo incurs other direct, out of pocket expenses for the services provided hereunder, GMIMCo shall bill Delphi quarterly in arrears for such expenses, and within 30 days of receipt of GMIMCo's quarterly bill, Delphi shall pay or shall cause payment in such amount to be sent to GMIMCo.

L:\INVSTMGR\DELPHI\DCPLAN86.doc

DOL-PSP-001786

**INVESTMENT MANAGEMENT AGREEMENT**

**EXHIBIT A**

List of Programs as of January 1, 1999

DOL-PSP-001787

## INVESTMENT MANAGEMENT AGREEMENT

### EXHIBIT B

**List of Investment Funds as of January 1, 1999**

**DOL-PSP-001788**

# MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement, including Exhibits A, B, C and D and Addenda 1 through 3 (the "Agreement"), dated September 17, 2002, is entered into by and between Delphi Corporation, a Delaware corporation (formerly known as Delphi Automotive Systems Corporation) ("Delphi") and General Motors Investment Management Corporation, a Delaware corporation ("GMIMCo").

## RECITALS

1.    Delphi and certain of its wholly-owned subsidiaries (each a "Delphi Subsidiary" and collectively the "Delphi Subsidiaries") sponsor "employee pension benefit plans," as defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA") § 3(2)(A). These employee pension benefit plans (each a "U.S. Plan" and collectively the "U.S. Plans") are subject to the provisions of ERISA.

2.    Delphi, acting through its Board of Directors, appointed the Executive Committee of the Board of Directors as "named fiduciary" (as defined in ERISA § 402(a)(2)) with respect to the U.S. Plans sponsored by Delphi.

3.    Additionally, Delphi, acting through its Board of Directors, designated GMIMCo as "named fiduciary" (as defined in ERISA § 402(a)(2)) for purposes of investment of the U.S. Plans sponsored by Delphi.

4.    Further, pursuant to two separate Investment Management Agreements between GMIMCo and Delphi (together, the "Investment Management Agreements"), each dated January 1, 1999 and each subsequently amended through the date of this Agreement, Delphi, acting through one of its designated officers, appointed GMIMCo "investment manager" (as defined in ERISA § 3(38)(A)) with respect to the U.S. Plans Delphi sponsors.

5.    Moreover, Delphi, acting through its Board of Directors, directed the establishment of the Investment Policy Committee of Delphi ("IPC") and authorized the IPC to: (a) make annual recommendations to the Executive Committee regarding investment policy guidelines for the assets of the U.S. Plans sponsored by Delphi; (b) interact with and oversee the performance of the named fiduciary for investment purposes of the U.S. Plans sponsored by Delphi; (c) acting as employer on behalf of Delphi and in accordance with a procedure described in ERISA § 402(a)(2), remove and replace the named fiduciary for investment purposes of the U.S. Plans sponsored by Delphi with itself or another appointee; and (d) perform such fiduciary and other responsibilities as may be delegated to it or as have been authorized by the Executive Committee.

6.    In anticipation of and for the purpose of executing this Agreement, and in accordance with a procedure described in ERISA § 402(a)(2), the IPC removed and immediately re-appointed GMIMCo as named fiduciary for investment purposes and re-appointed GMIMCo as investment manager of the U.S. Plans sponsored by Delphi to undertake the duties, responsibilities and authority set forth in this Agreement, reserving to itself the authority to: (a) remove a portion of the assets of any of the U.S. Plans from the investment control and authority

DOL-PSP-001789

of GMIMCo (any assets so removed by the IPC or by any other person or entity duly appointed and empowered by Delphi or a Delphi Subsidiary are referred to as the "Removed Assets"); (b) direct how the Removed Assets are to be invested; and (c) appoint "investment manager(s)" (as defined in ERISA § 3(38)(A)) to manage the Removed Assets (investment managers other than GMIMCo that are appointed by the IPC or by any other entity duly appointed and empowered by Delphi or a Delphi Subsidiary are referred to in this Agreement as "Delphi Investment Managers") as it deems appropriate in its sole discretion.

7.    Each Delphi Subsidiary, acting through its respective Board of Directors, general partner, or other duly designated "named fiduciary," as applicable, has designated GMIMCo as "named fiduciary" (as defined in ERISA § 402(a)(2)) for purposes of investment of the U.S. Plans it sponsors.

8.    Delphi, GMIMCo, and each Delphi Subsidiary, simultaneous with the execution of this Agreement, are entering into a separate Addendum to this Agreement pursuant to which each Delphi Subsidiary, acting through a designated officer, will authorize Delphi, the IPC, and GMIMCo to act in accordance with the terms of this Agreement, including the right of the IPC to remove assets from the control and management of GMIMCo and to appoint one or more Delphi Investment Managers to manage the Removed Assets, and the Addendum for each Delphi Subsidiary will be ratified and approved by the governing body of such Delphi Subsidiary or the designated named fiduciary for the U.S Plans sponsored by such subsidiary.

9.    GMIMCo, in its capacity as a named fiduciary for purposes of investment of the U.S. Plans, has and may again in the future enter into one or more trust agreements (such agreement(s) together with any amendments or restatements collectively referred to as the "Trust Agreements") with one or more trustees or custodians (such trustees or custodians serving as such from time to time with respect to the trust funds next referred to being sometimes collectively referred to as the "Trustee") and other parties establishing trust funds to hold the assets of the U.S. Plans (collectively, the "Trust Funds").

10.    The Trust Agreements provide for the assets of the U.S. Plans to be invested by the Trustee as directed by a named fiduciary or investment manager and permit the assets of the Trust Funds to be held in one or more group trusts which are incorporated into the Trust Agreements.

11.    General Motors Trust Company, a New Hampshire trust company and an affiliate of GMIMCo (such company together with any successor being referred to as "GMTC"), has established and may again in the future establish various collective investment funds in which assets of the U.S. Plans may be invested (the "Collective Funds").

2

DOL-PSP-001790

## TERMS

In consideration of the foregoing Recitals and the mutual covenants and agreements set forth in this Agreement and other good and valuable consideration, the parties agree as follows:

### Section 1.    Plans Covered.

The U.S. Plans to which this Agreement relates are listed in Exhibit A, as it may be amended from time to time by written agreement of the parties. No other plans are covered by this Agreement.

### Section 2.    Retention.

Delphi retains GMIMCo to perform investment management services for the U.S. Plans subject to the terms and conditions of this Agreement. In addition, Delphi retains GMIMCo to perform such other related services with respect to the U.S. Plans as are specified in this Agreement.

### Section 3.    GMIMCo Duties Regarding the U.S. Plans.

(a)    In accordance with its appointment as named fiduciary for purposes of investment of the U.S. Plans, GMIMCo will have and perform the investment management authority listed in items (i) through (viii) below with respect to the U.S. Plans, it being understood that GMIMCo will have full and independent authority to act in connection with those listed items; provided, however, that the extent of such authority is subject to Section 4 (regarding Delphi Investment Managers) below. In addition, but subject to Section 4, GMIMCo will perform the duties with respect to the U.S. Plans as provided in items (ix) through (xxxii) below. GMIMCo acknowledges that, with respect to its independent authority and duties as investment manager under this Section 3 referred to in ERISA § 3(38)(A) to the extent applicable to GMIMCo, it is a fiduciary with respect to the U.S. Plans as contemplated by ERISA § 3(38)(C).

(i)    Selection, hiring, monitoring, evaluation and termination of investment managers. In this regard, GMIMCo has the power to appoint investment managers (as defined in ERISA §3(38)) and is authorized to establish investment guidelines for the investment managers appointed by it, and to negotiate and enter into investment management agreements with respect to the assets of the U.S. Plans with such investment managers.

(ii)    Allocation of assets among investment managers and strategies.

(iii)    Management of portfolio transitions, with full authority regarding in-kind contributions, asset liquidations, and the use of transition accounts.

(iv)    Selection, hiring, monitoring, evaluation and termination of the Trustee, and management of the Trustee relationship (it being understood that GMIMCo will ensure that the Trustee maintains custody of the assets of the U.S. Plans in accordance with ERISA § 403(a) and the regulations thereunder).

3

DOL-PSP-001791

(v)     Projections of cash flows of the investment accounts within the U.S. Plans taking into account plan liquidity sources and needs as and to the extent identified to GMIMCo by Delphi.

(vi)    Performance of asset mix management, including tactical asset allocation and rebalancing assets within Strategic Investment Policy Guidelines (as defined in subparagraph (x) below).

(vii)   Management of short-term cash.

(viii)  Establishment and management of equitization, currency overlay and similar derivative-based strategies with respect to the U.S. Plan assets.

(ix)    Conduct comprehensive studies of the U.S. Plans' pension liabilities, investment objectives, and risk tolerance (with input from Delphi and its actuaries) as and when such asset/liability studies are requested by Delphi.

(x)     Periodic (and on at least an annual basis) review and recommendations concerning the appropriateness and efficacy of existing investment policy guidelines for the Hourly and Salaried Plans (as defined in Exhibit A) setting forth target allocations and ranges for broad investment categories (e.g., equity, fixed income, real estate), which guidelines, as of the date of this Agreement, are set forth in Exhibit B, and any additional policy guidelines for other U.S. Plans (as such guidelines may be amended by the IPC, the "Strategic Investment Policy Guidelines") based on, among other things, pension liabilities, investment objectives and risk tolerance, in light of Delphi's objectives with respect to the U.S. Plans as communicated by it to GMIMCo.

(xi)    Research with respect to new asset classes or strategies for consideration by Delphi for the U.S. Plans.

(xii)   Recommendations regarding the addition or deletion of investment options that are offered to participants under the participant-directed defined contribution U.S. Plans (defined contribution U.S. Plans being referred to in this Agreement as "DC U.S. Plans").

(xiii)  Advice regarding plan design issues as requested by Delphi.

(xiv)   Advice regarding plan liability analysis and funding decisions as requested by Delphi.

(xv)    Administration of U.S. Plan expense accruals and fee payments based on data provided by or on behalf of Delphi or the Trustee.

(xvi)   Monitoring of trade execution costs and brokerage commissions based on data provided by or on behalf of the Trustee or third-party investment managers.

4

DOL-PSP-001792

(xvii)  Monitoring of securities lending activities.

(xviii)  Management of any brokerage commission recapture program of the U.S. Plans.

(xix)  Monitoring of soft dollar utilization by the U.S. Plans based on data provided by or on behalf of the Trustee or third-party investment managers.

(xx)  Oversight of proxy voting policies and procedures. In this regard, GMIMCo will maintain procedures for voting proxies with respect to securities held in GMIMCo managed investments and for overseeing proxy voting by investment managers retained by GMIMCo.

(xxi)  Assistance to Delphi in connection with its (A) obtaining the financial data required for annual actuarial valuations, (B) preparing Department of Labor filings, Internal Revenue Service filings, summary annual reports and summary plan descriptions, (C) preparing corporate financial statement footnote disclosures, (D) periodic corporate, plan and regulatory audits and (E) preparing benefit plan cost analyses, in connection with each of the foregoing clauses (A) through (E) as required by Delphi in administering the U.S. Plans (it being understood and agreed that such assistance will be limited to matters pertaining to the services provided by GMIMCo under the Agreement).

(xxii)  Oversight of U.S. Plan investment data provided by the Trustee to any recordkeeper ("Recordkeeper") with respect to a U.S. Plan.

(xxiii)  Assistance to Delphi treasury, legal, and human resource departments and the applicable Delphi benefits center(s) in addressing questions regarding pension, benefits, and Trust issues (it being understood and agreed that such assistance will be limited to matters pertaining to the services provided by GMIMCo under this Agreement).

(xxiv)  Monitoring of third-party investment funds made available by Delphi to U.S. Plan participants under the DC U.S. Plans.

(xxv)  Monitoring of the Recordkeeper relationship with respect to investment-related issues.

(xxvi)  Monitoring of Delphi's relationship with any online investment advice provider designated by Delphi ("DC Adviser") with respect to a DC U.S. Plan.

(xxvii)  Coordinating the development and production of Delphi-approved DC U.S. Plan participant communications and educational materials, consisting of Pathways Magazine, Promark Fund fact sheets, the

DOL-PSP-001793

Investment Performance Summary, and any successor publications for the DC U.S. Plans.

(xxviii) Assistance with coordination of content for the website of the DC U.S. Plans.

(xxix) Assistance with the preparation of the investment-related sections of annual prospectuses for participants in the DC U.S. Plans.

(xxx) Performing the following functions with respect to the assets of the U.S. Plans managed by it (and without taking into account any other assets of such U.S. Plans):

(A) monitor U.S. Plan-level investment risk exposures;

(B) monitor asset class-level risk exposures;

(C) monitor investment manager investment guideline compliance;

(D) assess risks of investment manager internal investment controls;

(E) monitor counter-party exposures; and

(F) provide procedures for disaster recovery and business continuity of GMIMCo.

(xxxi) Providing reports to such personnel as Delphi may designate, in accordance with Exhibit C.

(xxxii) Participating in (A) quarterly meetings with the IPC to report on fund returns and analysis of fund performance and to discuss significant activities affecting U.S. Plan investments, (B) annual benefits meetings with the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") and the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers and Communication Workers of America ("IUE-CAW"), and (C) such other meetings as Delphi reasonably requests.

(b)     In furtherance of its authority as set forth above, but subject to Section 4 of this Agreement, GMIMCo has the following specific powers with respect to the discretionary investment management of the assets of the U.S. Plans:

(i) to establish, form, invest in, dissolve, liquidate or take any other actions with respect to any corporation, limited liability company, partnership, trust or other person, including, without limitation, any title holding corporation under Internal Revenue Code ("Code") §§ 501(c)(2) or 501(c)(25);

6

DOL-PSP-001794

(ii)    to abandon, acquire, convert, dispose of, exchange, exercise, grant, hold, issue, lease, mortgage, permit to expire, permit to be held in escrow, pledge, redeem, sell, subscribe for, surrender, vote, write, or take any and all other actions with respect to Securities or Other Property[1], and to exercise or decline to exercise any rights or obligations appurtenant or otherwise relating thereto, including (A) engaging in any transactions involving any combination of and taking any actions necessary or appropriate to settle transactions in puts, calls or other forms of options (covered or uncovered), futures contracts, swaps or other Securities or Other Property and (B) entering into stand-by agreements for future investment (either with or without a stand-by fee), short-selling programs, foreign exchange or foreign exchange contracts, swaps, guaranteed investment contracts, synthetic guaranteed investment contracts, bank or insurance company investment contracts (including guarantees with respect to investments), contracts for the immediate or future delivery of or otherwise pertaining to Securities or Other Property, and similar instruments and other derivative investments;

(iii)    to initiate, settle, compromise or submit to arbitration any claims, debts or damages due or owing to or from the investment accounts of the U.S. Plans or to commence, join in or defend, or represent any such investment account in, any suits or proceedings in any court of law or before any other body or tribunal, including, without limitation, any claims with respect to taxes; provided, however, that Delphi will retain the right, in its sole discretion, to commence, join in, or oppose any such settlements, compromises, arbitrations, suits, or proceedings where it may be adversely affected by the outcome, or where it believes that such action is required by ERISA or other applicable law;

(iv)    to commence, join in, consent to or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, liquidation or readjustment of the finances of any person or the Securities or Other Property thereof, and to deposit any Securities or Other Property with any protective, reorganization or similar committee, and to pay or agree to pay

---

[1] The term "Securities or Other Property" means property of any kind or nature, whether real or personal, tangible or intangible, whole or part interest therein, wherever situated, without being limited to the classes of property in which trustees are authorized to invest trust funds by any law or any rule of court of any jurisdiction, including without limitation: currency, evidences of obligations or indebtedness of any person, trust or participation certificates, general or limited interests in partnerships, membership interests in any organization or other person, insurance or annuity contracts, guaranteed investment contracts, synthetic guaranteed investment contracts, bank investment contracts, leaseholds, fee titles, mortgages or other interests in realty, preferred or common stocks, American depository receipts, certificates of deposit, evidences of ownership in joint ventures, swap contracts, futures and/or option contracts, short-selling programs, foreign exchange contracts, contracts for future or immediate receipt or delivery of securities or relating to the lending of securities or property and other derivative investments.

DOL-PSP-001795

the expenses and compensation of any such committee and any
assessments levied with respect to Securities or Other Property so
deposited;

(v)     to borrow money, to guarantee indebtedness or other obligations of other
        persons, to pledge any Securities or Other Property for the payment of any
        such loan or guarantee, or for any other purpose (whether or not in
        connection with the borrowing of money), and to enter into contracts
        ancillary or relating to such loans, guarantees or pledges;

(vi)    to manage, administer, operate, lease for any number of years (regardless
        of any restrictions on leases made by fiduciaries), develop, improve,
        repair, alter, demolish, mortgage, pledge, grant options with respect to, or
        otherwise deal with any property or interest therein at any time held by it,
        and to renew, extend or participate in the renewal or extension of any
        mortgage upon such terms as may be deemed advisable;

(vii)   to agree to a reduction in the rate of interest on or other modification in the
        terms of any mortgage, loan or guarantee, to waive or enforce any default
        whether in the performance of any covenant or condition of any mortgage,
        loan or guarantee in such manner and to such extent as may be deemed
        advisable, to exercise and enforce any and all rights of foreclosure, to bid
        on property in foreclosure, to take a deed in lieu of foreclosure with or
        without paying consideration therefor and in connection therewith to
        release the obligation on the bond secured by such mortgage, and to
        exercise and enforce in any action, suit or proceedings at law or in equity
        any rights or remedies in respect of any such mortgage, loan or guarantee;

(viii)  to convert monies received with respect to assets in the investment
        accounts of the U.S. Plans into or out of U.S. dollars or other currencies;

(ix)    to collect dividends, interest, rents, royalties and other forms of income on
        or distributions in respect of Securities or Other Property;

(x)     to exercise any right appurtenant to any Securities or Other Property,
        including without limitation, by general or limited power of attorney, or
        by serving or otherwise acting as a general or limited partner of a
        partnership, a managing or other member of a limited liability company, a
        member of an association, committee or other organization or in any
        similar capacity with respect to any person;

(xi)    to invest at any bank (A) in any type of interest bearing investments
        (including, but not limited to, savings accounts, money market accounts,
        certificates of deposit and repurchase agreements) and (B) in non-interest
        bearing accounts (including, but not limited to, checking accounts);

(xii)   to invest in the Collective Funds as well as in other collective investment
        funds (which in each case may provide for payment by the U.S. Plans of

DOL-PSP-001796

fund-level management and other fees and costs, for purchase and redemption related transaction costs or fees in lieu thereof to be borne by the investor purchasing or redeeming and for limitations on the size and/or frequency of and required advance notice with respect to such transactions); and

(xiii)   to invest in open-end and closed-end investment companies, regardless of the purposes of which such funds were created, including those managed, serviced, advised and/or distributed by GMIMCo or its affiliates, and any partnership, limited or unlimited, joint venture and other forms of joint enterprise created for any lawful purpose.

(c)      GMIMCo's responsibilities and obligations with respect to the U.S. Plans are limited to those responsibilities and obligations specifically set forth in this Agreement.

**Section 4.      Delphi Investment Managers.**

(a) During the term of this Agreement and subject to the terms of this Section 4, Delphi (acting through the IPC or other duly appointed person or entity) may withdraw from GMIMCo's management assets of the U.S. Plans and arrange for those Removed Assets to be managed by one or more Delphi Investment Managers; provided, however, that the Trustee and Recordkeeper with respect to all of the other assets of the U.S. Plans continue to be the Trustee and Recordkeeper, respectively, of any assets so withdrawn. GMIMCo will have no duties or responsibilities in connection with the selection, hiring, monitoring, evaluation and termination of Delphi Investment Managers.

(b) In the event that Delphi intends to withdraw assets from GMIMCo's management, Delphi will provide GMIMCo with prompt written notice of such intent. The notice will specify (i) the amount of assets that are being withdrawn, (ii) the U.S. Plan(s) with respect to which such assets relate, (iii) the name, address and contact information for the Delphi Investment Manager(s) who will manage the assets, (iv) the asset class and sub-asset class mandate from which the assets will be withdrawn and in which they will be invested by the applicable Delphi Investment Manager(s) and (v) the proposed date(s) upon which the withdrawal of assets and the appointment of the Delphi Investment Manager(s) are to become effective. After such notice is delivered, the parties agree to cooperate to effect the transfer of the Removed Assets to the specified Delphi Investment Manager(s) in a commercially reasonable time frame and manner.

(c) Delphi acknowledges that transaction costs and out-of-pocket third party expenses directly related to a transition may be incurred as a result of the appointment and termination of, and movement of assets to and from, a Delphi Investment Manager, and agrees that all such costs, regardless of by whom incurred, will be borne by Delphi or the applicable U.S. Plan(s).

(d) In the event that and for so long as a Delphi Investment Manager is appointed to manage Removed Assets:

(i)      if requested by GMIMCo, Delphi will either provide to GMIMCo or arrange for GMIMCo to receive (A) within the time frame set by the Trustee to meet GMIMCo's reporting requirements, the month-end values

9

of the Removed Assets and (B) in a commercially reasonable time frame, such other information with respect to the Removed Assets in such manner and form as GMIMCo may reasonably request in connection with its performance of services under this Agreement;

(ii)    except as otherwise provided in Section 3(a)(iv) (regarding the Trustee), but regardless of whether the appointment of a Delphi Investment Manager is effective under ERISA § 405(c) to relieve Delphi of any responsibility for investment or management of the Removed Assets, GMIMCo will have none of the authority, power, control, advisement, responsibilities, delegations, duties, or designations referred to in ERISA § 3(21), nor will it have any of the designations, delegations, authority, duties, responsibilities or powers specified in Sections 2 or 3 of this Agreement with respect to the Removed Assets, and, accordingly, will, to that extent, not be deemed a fiduciary with respect to such Removed Assets except as otherwise expressly provided in Sections 4(d)(iii) and (iv) below, and will have no obligations to take any of the Removed Assets into account in carrying out any of its authority, powers and duties with respect to the assets of the U.S. Plans except as otherwise expressly provided in Sections 4(d)(iii) and (iv) below;

(iii)    GMIMCo will consult with and make recommendations to Delphi regarding the allocation of inflows and outflows of U.S. Plan assets as between GMIMCo, on the one hand, and each Delphi Investment Manager, on the other hand, it being understood that (A) in the absence of a decision by Delphi to the contrary pursuant to the parenthetical in Section 4(d)(iv)(B) (regarding asset management mix and re-balancing), GMIMCo's allocable portion thereof will be equal to the result obtained by multiplying the amount of a particular inflow or outflow by a fraction the numerator of which is the most recent preceding calendar month-end value of the assets under GMIMCo's management of the U.S. Plan experiencing the cash flow and the denominator of which is the value of all of the assets of such U.S. Plan, (B) Delphi will cause and have sole responsibility for the Delphi Investment Managers to contribute out of the Removed Assets their allocable portion of any such outflow, and (C) Delphi will timely provide to each of GMIMCo, the Delphi Investment Manager(s) and the Trustee all appropriate directions and instructions to effect such allocations;

(iv)    GMIMCo's sole duties with respect to the Removed Assets will be to:

(A)    take into account cash flow data with respect to the Removed Assets timely provided to GMIMCo by or on behalf of Delphi (along with U.S. Plan liquidity needs as and to the extent identified to GMIMCo by Delphi) in GMIMCo's projections of cash flows of the investment accounts within the U.S. Plans;

10

DOL-PSP-001798

(B)    take into account relevant data with respect to the Removed Assets
timely provided to GMIMCo by or on behalf of Delphi in the
making by GMIMCo of recommendations to Delphi regarding
asset mix management, including rebalancing assets within the
Strategic Investment Policy Guidelines, of the U.S. Plans' assets (it
being understood and agreed that Delphi will be solely responsible
for evaluating such recommendations, deciding whether and to
what extent they will be implemented and then directing GMIMCo
and the Delphi Investment Manager(s) as to the manner of
implementation of Delphi's decisions, all as and to the extent that
Delphi deems appropriate);

(C)    take into account relevant data with respect to the Removed Assets
and other matters timely provided to GMIMCo by or on behalf of
Delphi and its actuaries in GMIMCo's performance of
asset/liability studies with respect to the U.S. Plans as and when
such studies are requested by Delphi;

(D)    take into account relevant data with respect to the Removed Assets
timely provided to GMIMCo by or on behalf of Delphi in
GMIMCo's monitoring of the Recordkeeper relationship with
respect to investment-related issues;

(E)    take into account relevant data with respect to the Removed Assets
timely provided to GMIMCo by or on behalf of Delphi in the
provision by GMIMCo of assistance to Delphi in connection with
Delphi's (A) obtaining the financial data required for annual
actuarial valuations, (B) preparing Department of Labor filings,
Internal Revenue Service filings, summary annual reports and
summary plan descriptions, (C) preparing corporate financial
statement footnote disclosures and (D) preparing benefit plan cost
analyses, in connection with each of the foregoing clauses (A)
through (D) as required by Delphi in administering the U.S. Plans
(it being understood and agreed that such assistance will be limited
to matters pertaining to the other services provided by GMIMCo
under this Agreement);

(F)    exercise its authority under Section 3(a)(iv) (regarding the
Trustee); and

(G)    take into account, to the extent necessary, relevant data with
respect to the Removed Assets for the purpose of fulfilling
GMIMCo's reporting obligations under Section 3(a)(xxxi).

11

DOL-PSP-001799

**Section 5.**   **Compensation and Expenses.**

Delphi, acting for itself and on behalf of the U.S. Plans, agrees that GMIMCo will receive compensation and reimbursement of expenses, effective as of January 1, 2002 in accordance with Exhibit D.

**Section 6.**   **Records and Audit Rights.**

GMIMCo will preserve its records relating to services it performs under this Agreement (to the extent that it maintains records with respect to such service) for a period of seven (7) years from the date of such performance, unless a shorter period is approved by Delphi in writing; provided, however, that if a longer period of retention is required by law for a particular type of record, GMIMCo will preserve such records for the legally required period. Delphi may, at its expense, examine and audit these records during normal business hours, upon reasonable advance written notice to GMIMCo. Delphi may perform the audits itself, or use an outside, independent auditor. GMIMCo will fully cooperate with Delphi's reasonable requests during such audits. Delphi will not engage direct or indirect competitors of GMIMCo to perform audit services.

**Section 7.**   **Representations, Warranties and Covenants of GMIMCo.**

GMIMCo represents and warrants to and covenants with Delphi that:

(a)   it has been duly incorporated and is validly existing as a corporation under the laws of the State of Delaware and the statements with respect to it contained in the Recitals to this Agreement are true and correct;

(b)   it is registered with the Securities and Exchange Commission as an investment adviser under the Investment Advisers Act of 1940, as amended (the "Advisers Act"), and will use its best efforts to remain so registered during the term of this Agreement;

(c)   this Agreement has been duly and validly authorized, executed and delivered on behalf of GMIMCo and is a valid and binding agreement of GMIMCo enforceable against GMIMCo in accordance with its terms;

(d)   the execution and delivery of this Agreement by GMIMCo will not violate, or constitute a breach of or default under, the certificate of incorporation or by-laws of GMIMCo, any agreement or instrument by which GMIMCo is bound or, to the best of GMIMCo's knowledge, any order, rule, law or regulation applicable to GMIMCo of any court, governmental body, administrative agency or self-regulatory authority having jurisdiction over GMIMCo; and

(e)   it will cooperate with Delphi as it may reasonably so request, and promptly inform Delphi of any significant developments, in order to facilitate Delphi's compliance with applicable requirements under this Agreement.

**Section 8.**   **Representations, Warranties and Covenants of Delphi.**

Delphi represents and warrants to and covenants with GMIMCo that:

DOL-PSP-001800

(a)    it has been duly incorporated and is validly existing as a corporation under the laws of the State of Delaware and the statements with respect to it contained in the Recitals to this Agreement are true and correct;

(b)    each Delphi Subsidiary has been duly formed and is validly existing as a corporation or partnership under the laws of its state of organization and the statements with respect to the Delphi Subsidiary and the Delphi Subsidiary's board of directors or general partner, as applicable, contained in the Recitals to this Agreement and to the applicable Addendum are true and correct;

(c)    Delphi and the appropriately designated committee or officer of Delphi and each Delphi Subsidiary and the appropriately designated entity or officer of each Delphi Subsidiary have all necessary corporate power and other authority and have taken all necessary action to take the steps ascribed to them in the Recitals to this Agreement and any applicable Addendum;

(d)    this Agreement and each Addendum has been duly and validly authorized, executed and delivered on behalf of Delphi and/or a Delphi Subsidiary, as applicable, and is a valid and binding agreement of each such party enforceable against such party in accordance with its terms;

(e)    the execution and delivery of this Agreement by Delphi and each Addendum by Delphi and a Delphi Subsidiary will not violate, or constitute a breach of or default under, their constituent documents, any plan document of a U.S. Plan or any other agreement or instrument by which any such party or any U.S. Plan is bound or, to the best of Delphi's knowledge, any order, rule, law or regulation applicable to Delphi or a Delphi Subsidiary or any U.S. Plan of any court, governmental body, administrative agency or self-regulatory authority having jurisdiction over Delphi or a Delphi Subsidiary or any U.S. Plan;

(f)    it has delivered to GMIMCo true and correct copies of the U.S. Plans listed in Exhibit A including all amendments thereto through and including the date of this Agreement, and will provide GMIMCo all subsequent material amendments to or restatements of any such documents during the term of this Agreement;

(g)    each of the U.S. Plans is qualified under Code §401(a);

(h)    the review of and decision to enter into this Agreement and for Delphi and each Delphi Subsidiary to enter into the applicable Addendum, including the decision to authorize the investment of assets of the U.S. Plans in the Collective Funds, has been made solely and independently by a fiduciary or fiduciaries (other than GMIMCo or any of its affiliates) with investment discretion for the U.S. Plans;

(i)    Delphi has authorized each Recordkeeper to provide GMIMCo with such data and other information in the possession or under the control of or otherwise available to such Recordkeeper (including, without limitation, access to relevant web sites) as may from time to time be requested by GMIMCo; and

13

DOL-PSP-001801

(j)      it will cooperate with GMIMCo as it may reasonably so request, and promptly inform GMIMCo of any developments, in order to facilitate the performance of GMIMCo's duties and compliance with applicable requirements under this Agreement.

### Section 9.      Confidentiality.

(a)      GMIMCo agrees to keep confidential and not to disclose any information or matter relating to the investments of the U.S. Plans (other than to GMIMCo's or Delphi's employees, agents, advisors, or representatives responsible for matters relating to the investments of the U.S. Plans, each such person being hereinafter referred to as an "Authorized Representative"); provided, however, that GMIMCo and its Authorized Representatives may make such disclosure to the extent that (i) the information being disclosed is publicly known at the time of the proposed disclosure by GMIMCo or such Authorized Representative, (ii) such disclosure, in the opinion of legal counsel (which may be inside counsel), is required by law or regulation, (iii) such disclosure is requested or demanded by any regulatory agency which has regulatory authority over GMIMCo and/or any of its Authorized Representatives, or (iv) Delphi otherwise consents.

(b)      Delphi agrees to keep confidential and not disclose (and to cause each Delphi Subsidiary to keep confidential and not disclose): (i) this Agreement or (ii) any information or other matter relating hereto including GMIMCo's actual or proposed costs or fees for the services provided under this Agreement or under the Investment Management Agreements (other than to Delphi's or a Delphi Subsidiary's officers, directors and employees responsible for matters relating to the U.S. Plans); provided, however, that Delphi or a Delphi Subsidiary may disclose such information to the extent that (X) the item being disclosed is publicly known at the time of the proposed disclosure by Delphi or a Delphi Subsidiary or one of its officers, directors, or employees, (Y) such disclosure by Delphi or a Delphi Subsidiary or one of its officers, directors, or employees, in the opinion of legal counsel (which may be inside counsel), is required by law or regulation or (Z) such disclosure is requested or demanded by any regulatory agency which has regulatory authority over Delphi or a Delphi Subsidiary or any of its officers, directors or employees; and provided further, that Delphi may disclose asset class information for the U.S. Plans and, upon the execution (immediately prior to the disclosure referred to below) of a confidentiality agreement between GMIMCo and a consultant retained by Delphi, disclose to such consultant information regarding GMIMCo's actual or proposed costs or fees for the services provided under this Agreement.

(c)      GMIMCo agrees to inform its officers, directors, and employees, and Delphi agrees (and agrees to cause each Delphi Subsidiary) to inform its officers, directors and employees, of the confidential nature of such information and will instruct such persons not to disclose such confidential information to any other person.

### Section 10.      GMIMCo Standard of Care; Liability.

GMIMCo will perform its duties and obligations under this Agreement with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ("the GMIMCo Standard of Care"). GMIMCo will be deemed

to have discharged its duties and obligations under this Agreement so long as it complies with the GMIMCo Standard of Care. Subject to ERISA, no affiliate of GMIMCo, other than GMTC, and no officer, director or employee of GMIMCo or any of its affiliates, will have any liability to Delphi, any Delphi Subsidiary, any U.S. Plan or any Trust Fund for action taken, or for failure to act, under or in connection with this Agreement.

### Section 11.    Indemnification; Litigation; Dispute Resolution.

(a)    To the fullest extent permitted by applicable law, neither GMIMCo nor any of its affiliates will be liable for any loss sustained by the U.S. Plans or the Trust Funds by reason of the acquisition, holding, management or disposition of any asset of the U.S. Plans or the Trust Funds in good faith and in accordance with the provisions of this Agreement. Subject to such limitations as may be imposed by ERISA or other applicable law, GMIMCo will indemnify and hold harmless the U.S. Plans, Delphi and Delphi's affiliates (other than in any of such affiliate's capacity as a participant in or beneficiary of a U.S. Plan) from and against any and all losses, claims, damages, liabilities and any reasonable and necessary expenses incurred by the U.S. Plans, Delphi or any such affiliate in connection therewith (including reasonable attorneys' fees) to which any such person may become subject arising as a result of any failure by GMIMCo to perform its duties under this Agreement in accordance with the GMIMCo Standard of Care.

(b)    Subject to such limitations as may be imposed by ERISA or other applicable law, Delphi will indemnify and hold harmless GMIMCo and its affiliates from and against any and all losses, claims, damages, liabilities and any reasonable and necessary expenses incurred by GMIMCo or any such affiliate in connection therewith (including reasonable attorneys' fees) to which any such person may become subject (i) arising as a result of any action which they take or refrain from taking in accordance with the direction of Delphi, any Delphi Investment Manager(s), or other person authorized by Delphi to direct GMIMCo in connection with this Agreement; and (ii) in instances where GMIMCo has performed its duties under this Agreement in accordance with the GMIMCo Standard of Care. GMIMCo will have no duty to make any investigation or inquiry as to the genuineness of the signature of any person or as to any statement contained in such directions, and it may accept the same as conclusive evidence of the truth and accuracy of the statement. Subject to ERISA, no affiliate of Delphi and no officer, director or employee of Delphi or any of its affiliates, will have any liability to GMIMCo or any affiliate of GMIMCo for action taken, or for failure to act, under or in connection with this Agreement.

(c)    Upon the assertion of any claim or the commencement of any action, suit or proceeding involving an indemnified party under this Section 11 that may give rise to liability of an indemnifying party hereunder, the party knowledgeable about the claim will promptly notify the other party of the existence of such claim, action, suit or proceeding. To the extent one party is obligated to defend an indemnified party in accordance with this Section 11, the indemnifying party will have the right to defend or settle such claim, action, suit, or proceeding at its own expense and with counsel of its own selection; provided, however, that the indemnified party will at all times have the right to fully participate in any settlement decision that it reasonably believes would have an adverse effect on its business. The indemnified party will make available to the indemnifying party all requested books and records relating to such claim, action, suit or proceeding, and the parties agree to render to each other such requested assistance as is

15

DOL-PSP-001803

reasonably necessary to ensure a proper and adequate defense, all at the respective indemnifying party's sole expense. Neither party will settle a claim, action, suit or proceeding that might give rise to liability of the other party without the prior written consent of such other party.

### Section 12.   Bonding.

To the extent bonding is required by any applicable law with regard to the services GMIMCo is providing, GMIMCo will obtain such bond.

### Section 13.   Term; Curing of Defaults; Termination.

(a)      This Agreement is effective as of the date first above written and, unless earlier terminated as provided in paragraphs (b) through (d) below, will remain in effect until terminated by Delphi or by GMIMCo with 90 days prior written notice to the other; provided, however, that nothing in this Agreement may be construed to limit the power of Delphi to terminate GMIMCo's appointment as a named fiduciary for investment purposes of the U.S. Plans.

(b)      In the event of a material breach of this Agreement, the party alleging the breach must give written notice of the breach to the other party. If the breach is not cured within 30 days of such notice, the non-breaching party may terminate this Agreement upon written notice to the other party (which termination will be effective immediately or on such later date as may be specified in such notice).

(c)      Each of GMIMCo and Delphi may immediately terminate this Agreement upon written notice to the other party (which termination will be effective immediately or on such later date as may be specified in such notice), without prejudice to any other right or remedy, in the event that (i) in the case of Delphi, GMIMCo or (ii) in the case of GMIMCo, Delphi or any of the U.S. Plans or Trust Funds:

(A)     makes an assignment for the benefit of creditors,

(B)     files a voluntary petition in bankruptcy,

(C)     is adjudged bankrupt or insolvent or there is entered against it an order for relief in any bankruptcy or insolvency proceeding,

(D)     files a petition or answer seeking for it any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law or regulation,

(E)     seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator for it or of all or any substantial part of its properties,

(F)     files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding described in clauses (A) through (E), or

DOL-PSP-001804

(G)    90 days expires following commencement of any proceeding against it seeking a bankruptcy or insolvency determination, reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law or regulation if the proceeding has not been dismissed within such period, or 90 days expires following the appointment of a trustee, receiver or liquidator for it or all or any substantial part of its properties without its agreement or acquiescence, which appointment is not vacated or stayed within such period, or if the appointment is so stayed, 90 days expires following the expiration of the stay, unless during such period the appointment is vacated.

(d)    This Agreement may be terminated by either party upon written notice to the other party (which termination will be effective immediately or on such later date as may be specified in such notice) with respect to services to be performed for any U.S. Plan in the event that a notice of intent to terminate such U.S. Plan is filed, a notice is issued by the Pension Benefit Guaranty Corporation to terminate involuntarily such U.S. Plan, such U.S. Plan fails to meet the minimum funding standards under the Code or ERISA, or such U.S. Plan is unable to pay benefits thereunder when due, or the Internal Revenue Service advises that a Trust Fund may not be qualified or exempt from federal income tax under the Code as described in Section 8(h) of this Agreement.

(e)    Upon the termination of this Agreement pursuant to this Section 13, any fees or costs that are accrued (in accordance with Exhibit D) as of the date of termination but are at such date unpaid will be due and payable within 30 days of either (i) the date of termination or (ii) if required pursuant to Exhibit D for certain fees and costs, the date of any invoice sent to Delphi in connection therewith.

### Section 14.    Force Majeure.

Neither GMIMCo nor Delphi will be deemed to have breached this Agreement or be held liable for any failure or delay in the performance of all or any portion of its obligations under this Agreement if it is prevented from doing so by a cause or causes beyond its reasonable control. Without limiting the generality of the foregoing, such causes include acts of God, fires, floods, storms, earthquakes, riots, boycotts, strikes, lock-outs, wars and war operations, restraints of government, power or communication line failure or other circumstance beyond such party's reasonable control, or by reason of the judgment, ruling or order of any court or agency of competent jurisdiction or change of law or regulation subsequent to the execution of this Agreement.

### Section 15.    Services to Other Clients.

The parties agree that GMIMCo and its affiliates may engage in any other business or act as investment adviser or investment manager to any other person or entity, whether or not having investment objectives similar to those of Delphi, the U.S. Plans or the Trust Funds, and that GMIMCo and its affiliates may give advice and take action with respect to any of their other clients which may differ from advice given or from the timing and nature of actions taken with respect to the U.S. Plans or the Trust Funds.

17

DOL-PSP-001805

**Section 16.**     **Status of the Parties.**

GMIMCo and Delphi are independent contractors. Nothing in this Agreement creates or may be construed to constitute GMIMCo, its affiliates, Delphi, the Delphi Subsidiaries, the U.S. Plans or the Trust Funds as members of any partnership, joint venture, association, unincorporated business or other joint entity.

**Section 17.**     **No Third Party Rights.**

Except to the extent ERISA, Sections 10 (regarding standard of care), 11 (regarding indemnification), or 15 (regarding services to other clients) of this Agreement or this Section 17 otherwise expressly so provides, this Agreement does not confer any rights or remedies upon any person other than Delphi and GMIMCo and their respective successors and permitted assigns.

**Section 18.**     **Assignment.**

Except as contemplated herein, a party may not assign this Agreement (including but not limited to within the meaning of "assignment" as defined in the Advisers Act) without the prior written consent of the other party, and any attempted assignment without such consent will be null and void.

**Section 19.**     **Amendment.**

This Agreement may not be modified or amended in any respect except in writing signed by the parties hereto.

**Section 20.**     **Notices.**

(a)     Any notice, approval, consent or similar communication required by this Agreement to be in writing will be deemed duly given if sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient as set forth below:

If to Delphi:          Delphi Corporation
                       Attention: Treasurer
                       5725 Delphi Drive
                       Troy, Michigan 48098

If to GMIMCo:          General Motors Investment Management Corporation
                       Attention: Vice President & General Counsel
                       767 Fifth Avenue
                       New York, New York 10153.

(b)     Any party may send any notice to the intended recipient at the address set forth above using any other means (including personal delivery, expedited courier, messenger service, ordinary mail, facsimile or electronic mail), but no such notice will be deemed to have been duly given unless and until it is actually received by the intended recipient. Any party may change its address for notices by giving the other party written notice of such change.

18

DOL-PSP-001806

Section 21.    **Governing Law.**

Subject to the provisions of ERISA, the Code, and the Advisers Act, this Agreement will be construed, administered and enforced according to the internal law (and not the law of conflicts) of the State of New York.

Section 22.    **Severability.**

If any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will continue in full force and effect so long as they preserve the basic terms of this Agreement.

Section 23.    **Waiver.**

No delay or omission by either party to exercise any right or power under this Agreement will impair such right or power or be construed to be a waiver thereof. A waiver by either of the parties of any of the covenants to be performed by the other or any breach of this Agreement will not be construed to be a waiver of any succeeding breach or of any other covenant contained in this Agreement. Except as otherwise expressly provided in this Agreement, all remedies provided for in this Agreement will be cumulative and in addition to and not in lieu of any other remedies available to either party at law, in equity or otherwise.

Section 24.    **Survival.**

Sections 6 (regarding records and audit rights), 9 (regarding confidentiality), and 11 (regarding indemnification) will survive the termination or expiration of this Agreement.

Section 25.    **Counterparts.**

This Agreement may be executed in one or more counterparts, which will together constitute one and the same document.

Section 26.    **GMIMCo ADV.**

Delphi, on behalf of itself and each U.S. Plan, acknowledges that it has been provided with of a copy of Part II of GMIMCo's Form ADV under the Advisers Act. Notwithstanding the provisions of Section 13, Delphi may terminate this Agreement without penalty within five business days after the date that this Agreement is executed, pursuant to Advisers Act Rule 204-3(b).

Section 27.    **Compliance with Laws.**

It will be a duty and obligation of GMIMCo under this Agreement to perform its services hereunder in accordance with all laws, rules and regulations applicable to it.

19

DOL-PSP-001807

**Section 28.**    <u>**Entire Agreement.**</u>

This Agreement embodies the entire understanding of the parties and supersedes any prior agreements or understandings with respect to the subject matter of this Agreement.


IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement on the date first above written.

**DELPHI CORPORATION**

By: _____

Name:  John Blahnik

Title:  Treasurer


**GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION**

By: _____

Name:    W. Allen Reed

Title:    President and Chief Executive Officer

20

DOL-PSP-001808

**EXHIBIT A**

**TO MANAGEMENT SERVICES AGREEMENT**

**LIST OF U.S. PLANS**

1. Delphi Retirement Program for Salaried Employees (the "Salaried Plan");

2. Delphi Hourly-Rate Employees Pension Plan (the "Hourly Plan" and together with the Salaried Plan, the "Hourly and Salaried Plans");

3. ASEC Manufacturing Retirement Program;

4. ASEC Manufacturing Savings Plan;

5. Packard Hughes Interconnect Non-Bargaining Retirement Plan;

6. Packard Hughes Interconnect Bargaining Retirement Plan;

7. Packard Hughes Interconnect Foley, Alabama Facility Retirement Plan;

8. Delphi Mechatronic Systems Retirement Program;

9. Delphi Mechatronic Systems Savings-Stock Purchase Program;

10. Delphi Income Security Plan for Hourly-Rate Employees;

11. Delphi Savings-Stock Purchase Program for Salaried Employees in the United States; and

12. Delphi Personal Savings Plan for Hourly-Rate Employees in the United States.

DOL-PSP-001809

# EXHIBIT B

## TO MANAGEMENT SERVICES AGREEMENT

## STRATEGIC INVESTMENT POLICY GUIDELINES

### FOR THE HOURLY AND SALARIED PLANS (AS DEFINED IN EXHIBIT A)

| Asset Class | Strategic Investment Policy Guideline Range[1] |
|---|---|
| **Equity** | |
| - US Publicly Traded | 24-36 |
| - Private Market | 5-9 |
| - Developed International Markets | 20-26 |
| - Emerging Markets | 0-4 |
| | |
| **Fixed Income** | |
| - Global Bonds | 17-27 |
| - High Yield | 7-11 |
| | |
| **Absolute Return Strategy** | 0-2 |
| **Real Estate** | 5-9 |

---

[1] Within the policy guideline ranges, specific target allocations have been and will be recommended by GMIMCo and approved by the IPC.

DOL-PSP-001810

**EXHIBIT C**

**TO MANAGEMENT SERVICES AGREEMENT**

**REPORTING**

1.    Quarterly reports will be delivered after the end of each calendar quarter. Reports for quarters prior to the quarter ended June 30, 2003 will be delivered within forty-five days after quarter-end. Reports for the quarter ended June 30, 2003 and subsequent quarters will be delivered within thirty days after quarter-end. GMIMCo will use reasonable best efforts to deliver reports at least five business days prior to the relevant quarterly IPC meeting if that occurs earlier than the agreed upon due date of a quarterly report, and to improve the timing of report delivery for the quarters ending after June 2003.  These reports will include:

    (a)    Asset values of each U.S. Plan;

    (b)    Asset allocation versus strategic policy for the defined benefit U.S. Plans (hereinafter "DB U.S. Plans");

    (c)    Explanation of changes in market values for the Hourly and Salaried Plans (as defined in Exhibit A);

    (d)    Investment results compared to relevant benchmarks at the total plan and asset class levels, including discussion thereof for major asset classes managed by GMIMCo, for the DB U.S. Plans;

    (e)    Significant investment activities, including manager changes for major asset classes managed by GMIMCo;

    (f)    Fund allocations by asset class for the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States;

    (g)    Summary performance versus benchmark by asset class for the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States; and

    (h)    Allocation of major asset classes at the sub-asset-class level for the Hourly and Salaried Plans.

2.    Beginning with the quarterly report pertaining to the calendar period ending December 31, 2002, the quarterly reports will also include:

    (a)    Plan level performance attribution by asset class for the Hourly and Salaried Plans;

    (b)    Balanced Fund performance attribution by asset class;

L: DACCOUNT  FINANCIAL DRAFT  GM EXHIBIT C FINAL.DOC

**EXHIBIT C**

(c)     Rolling excess return, tracking error versus benchmarks and information ratio for major asset classes managed by GMIMCo for the Hourly and Salaried Plans; and

(d)     Fact sheets for each major asset class managed by GMIMCo for the Hourly and Salaried Plans, including (but not limited to) investment managers in the asset class and overall allocations by major characteristics appropriate to each asset class (e.g. economic sectors, major holdings, geography, and/or credit quality).

3.     An estimate of calendar year-to-date investment returns for the Hourly and Salaried Plans will be delivered bi-weekly within five business days following the end of each bi-weekly period.

4.     An estimate of the market values of the Hourly and Salaried Plans will be delivered annually within three business days following the end of the calendar year.

2

DOL-PSP-001812

# EXHIBIT D

## TO MANAGEMENT SERVICES AGREEMENT

## COMPENSATION AND EXPENSE REIMBURSEMENT

1. <u>Management Fee</u>

Delphi, on behalf of itself and the U.S. Plans, will pay or cause to be paid to GMIMCo a fee ("Management Fee") consisting of a "Base Assets Fee" and an "Alternative Assets Fee". The Management Fee will be calculated monthly and payable quarterly in arrears, as described in this Exhibit D. The Base Assets Fee is calculated at the per annum percentage rates of Average Base Assets (as defined below) determined in accordance with the following schedule:

| Average Base Assets | Per Annum Rate |
|---|---|
| first $3.5 billion | .035% |
| over $3.5 billion | .025%; |

and the Alternative Assets Fee is calculated at the per annum rate of .40% of Average Alternative Assets (as defined below).

For purposes of calculating and paying the Management Fee:

(a)    "Average Base Assets" means, with respect to each calendar month, the sum of the Value (as defined below) of the Base Assets (as defined below) on the last day of such month and the Value of the Base Assets on the last day of the immediately preceding calendar month, divided by two (it being understood that in the case of the month of January, 2002, for the purpose of determining the Value of the Base Assets on the last day of the immediately preceding calendar month, the Value of the corresponding assets on December 31, 2001 will be used);

(b)    "Average Alternative Assets" means, with respect to each calendar month, the sum of the Alternative Assets (as defined below) on the last day of such month and the Alternative Assets on the last day of the immediately preceding calendar month, divided by two (it being understood that in the case of the month of January, 2002, for the purpose of determining the Alternative Assets on the last day of the immediately preceding calendar month, the corresponding assets on December 31, 2001 will be used);

(c)    "Base Assets" means, on any date, all of the assets of the U.S. Plans that on such date are managed by GMIMCo under the Agreement, minus the Alternative Assets on such date;

DOL-PSP-001813

EXHIBIT D

(d)     "Alternative Assets" means, on any date, the result obtained by multiplying (i) the
        Value on such date of the aggregate gross assets of the U.S. Plans by (ii) the percentage
        which represents the policy allocation to Alternative Investments[1] for the Hourly and
        Salaried Plans (as defined in Exhibit A) as approved from time to time by the IPC
        (disregarding, for purposes of calculating the Base Assets Fee and the Alternative
        Assets Fee, any ranges around such policy allocation as may be so approved), it being
        understood that such policy allocation to Alternative Investments as of the date of the
        Agreement is 13%;

(e)     "Value" means the value in U.S. dollars as communicated to GMIMCo by the Trustee
        of the assets in question;

(f)     At the end of each quarter, following the receipt of an invoice from GMIMCo
        providing detailed supporting information for the Management Fee for such quarter, the
        invoice will be paid within 30 days from one or more Funds (as defined in section 2(b)
        below) or the U.S. Plans' interests in such Funds as determined by GMIMCo or its
        affiliates and upon the direction to the Trustee, which payment will be reported in the
        next following summary provided by GMIMCo to Delphi pursuant to paragraph 4
        below;

(g)     GMIMCo will allocate the Management Fee among the various U.S. Plans in
        proportion to the market value of each of the U.S. Plans. Accordingly, following the
        end of each quarter GMIMCo will provide written instructions to the Trustee regarding
        the allocation of the Management Fee with respect to such quarter among the various
        U.S. Plans. Delphi may from time to time amend the standing allocation instructions
        for the Management Fee by providing GMIMCo with new written instructions; and

(h)     It is understood by the parties to the Agreement that there is no minimum Management
        Fee.

---

[1] For the purposes of this Exhibit D to the Agreement, Alternative Investments include private market investments, real
estate investments including investments in real estate investment trusts, investments in absolute return strategies and
investments in other alternative strategies as may be identified and agreed by the parties to the Agreement after the date of
the Agreement.

DOL-PSP-001814

EXHIBIT D

2.    Direct Fund Costs

Delphi, on behalf of itself and the U.S. Plans, will pay or cause to be paid, and will cause the U.S. Plans to bear, the Delphi Portion of Direct Fund Costs (each as defined below).

For purposes of calculating and paying Direct Fund Costs:

(a)    "Fund" means any trust, account, fund, company or other vehicle holding or otherwise established or existing with respect to assets attributable to any U.S. Plan and which vehicle is managed by (and/or by third parties retained by or on behalf of) GMIMCo or its affiliates;

(b)    "Direct Fund Costs" means those expenses incurred by or with respect to any Fund. Such expenses include but are not limited to (i) expenses incurred by GMIMCo or its affiliates in connection with management of any Fund (whether such management is by GMIMCo, such affiliates or third parties), including Allocated Expenses (as defined below), (ii) investment management fees and related expenses payable to or incurred by persons other than GMIMCo and its affiliates, (iii) brokerage commissions and other trading expenses, (iv) interest, (v) taxes, if any, (vi) trustee and custodial fees and expenses and (vii) legal, accounting and other professional fees and expenses;

(c)    "Allocated Expenses" means that portion of the compensation and benefits, facility and occupancy, information technology and other expenses incurred by GMIMCo or its affiliates and allocated by GMIMCo or its affiliates to a Fund pursuant to the activity-based costing model or other cost allocation system employed from time to time by GMIMCo or its affiliates;

(d)    "Delphi Portion" means (i) the percentage determined by dividing the Value (as defined in Section 1(e) of this Exhibit D) of a Fund's net assets attributable to the U.S. Plans by the Value of such Fund's total net assets or (ii) in the case of one or more particular Direct Fund Costs such other percentage as may from time to time be agreed to between GMIMCo and Delphi;

(e)    in furtherance of but without limiting the obligations of Delphi with respect to the Delphi Portion of Direct Fund Costs, such Costs will be paid by a Fund to a third party or GMIMCo or its affiliates when and as directed by GMIMCo or its affiliates; and

(f)    GMIMCo will allocate the Delphi Portion of Direct Fund Costs among the various U.S. Plans in proportion to the market value of each of the U.S. Plans. Accordingly, GMIMCo will provide written instructions to the Trustee regarding such allocation of the Delphi Portion of Direct Fund Costs among the various U.S. Plans. Delphi may from time to time amend the allocation instructions for Direct Fund costs by providing GMIMCo with new written instructions.

3.    Out-of-Pocket Expenses.

3

DOL-PSP-001815

EXHIBIT D

(a)     Delphi, itself and on behalf of the U.S. Plans, will be responsible for the payment of,
        and will cause either one or more U.S. Plans or Delphi to bear, all Out-of-Pocket
        Expenses "Out-of-Pocket Expenses" means those amounts (other than Direct Fund
        Costs) related to aU.S. Plan that are paid or payable to a third party or have been paid
        by GMIMCo to a third party on behalf of Delphi or a U.S. Plan. Such Expenses
        include (but are not limited to) fees and expenses with respect to:

        (i)      U.S. Plan or trust record keeping;

        (ii)     communications with Plan participants (e.g., contract writers, printing,
                 publication and mailing costs);

        (iii)    trustees and custodians;

        (iv)     third party DC U.S. Plan advisers, if any;

        (v)      U.S. Plan or trust accounting;

        (vi)     U.S. Plan, trust, or other audits;

        (vii)    preparation, publication and distribution of U.S. Plan, trust, or other financial
                 statements;

        (viii)   regulatory filings (e.g., Form 5500), examinations, and other proceedings;

        (ix)     actuarial, legal, or tax matters;

        (x)      Pension Benefit Guaranty Corporation premiums; and

        (xi)     beneficiary payment processing expenses.

        "Out-of-Pocket Expenses" will also be deemed to include fees and expenses with
        respect to (i) the provision of special services by GMIMCo or its affiliates (e.g.,
        services arising out of an acquisition or divestiture by Delphi) and (ii) the incurrence of
        regulatory or other expenses occasioned by and directly as a result of compliance with
        the requirements of the Agreement.

(b)     In furtherance of, but without limiting the payment obligations of Delphi with respect
        to, Out-of-Pocket Expenses, such Expenses will be paid by the U.S. Plans or Delphi (as
        applicable) to a third party (or, if incurred by GMIMCo or its affiliates, to GMIMCo or
        its affiliates) (i) in the case of Delphi, within thirty days of invoice by GMIMCo
        supporting such expense and (ii) in the case of the U.S. Plans, when and as directed by
        GMIMCo or its affiliates.

4

DOL-PSP-001816

EXHIBIT D

(c)    With respect to a particular Out-of-Pocket Expense, unless Delphi directs otherwise, GMIMCo will direct the Trustee to allocate Out-of-Pocket Expenses among the applicable U.S. Plans or Funds in proportion to the market value of the applicable U.S. Plans or Funds.

4.    <u>Reporting</u>

In addition to the reporting obligations outlined in Exhibit C, GMIMCo will provide to Delphi on a quarterly basis detailed information supporting the calculation of the Management Fee (including all relevant Values), the Delphi Portion of Direct Fund Costs, and Out-of-Pocket Expenses (listed according to the items specified in this Exhibit D) for the most recent calendar quarter.

5.    <u>Re-Negotiation of Management Fee</u>

In the event that, at any time during the term of the Agreement, either:

(a)    the percentage policy allocation referred to in Section 1(d)(ii) of this Exhibit D is either reduced to below 11% or increased to greater than 15% of the aggregate value of the gross assets of such U.S. Plans; or

(b)    the total of Removed Assets, plus all other U.S. Plan assets which for any reason (other than payment of benefits, fees or expenses in the ordinary course of business, and investment losses) cease to be managed by GMIMCo under the Agreement, exceeds $2 billion;

then the parties will, if either party chooses to initiate discussions regarding the Management Fee (by providing written notice to the other), attempt in good faith to re-negotiate the Management Fee. In the event that the parties are unable, after good faith negotiations, to agree upon a new Management Fee, then either party may terminate the Agreement upon 30 days' written notice to the other, notwithstanding any provision in Section 13 of the Agreement to the contrary.

DOL-PSP-001817

**Addendum 1 to Management Services Agreement Dated September 17, 2002**

**Delphi Mechatronic Systems, Inc.**

### RECITALS

1.      Delphi Corporation ("Delphi") and General Motors Investment Management Corporation ("GMIMCo") have entered into a Management Services Agreement dated September 17, 2002 ("MSA") pursuant to which GMIMCo will perform certain services in its role as "named fiduciary" (as defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA") § 402(a)(2)) for investment purposes and "investment manager" (as defined in ERISA § 3(38)(A)) of the U.S. Plans, and provide certain other services for the U.S. Plans.

2.      Delphi Mechatronic Systems, Inc., a Delaware corporation ("D-MS"), is a wholly-owned subsidiary of Delphi and is thus part of the same "controlled group of corporations" (as defined in Internal Revenue Code ("Code") § 1563(a)) as Delphi.

3.      D-MS sponsors certain U.S. Plans listed in Exhibit A to the MSA.

4.      The D-MS Board of Directors is the "named fiduciary" (as defined in ERISA § 402(a)(2)) of the D-MS-sponsored U.S. Plans and is authorized to appoint a named fiduciary for investment purposes and one or more investment managers for such U.S. Plans.

5.      D-MS, acting through its Board of Directors, designated GMIMCo as named fiduciary for purposes of investment of the assets of the U.S. Plans sponsored by D-MS and investment manager for the U.S. Plans D-MS sponsors.

6.      D-MS has authorized Delphi (whether acting through the IPC or other person or entity appointed by Delphi) to act in accordance with the MSA with respect to the U.S. Plans sponsored by D-MS to the same extent that Delphi acts with respect to the U.S. Plans sponsored by Delphi.

7.      Capitalized terms used in this Addendum without definition have the meanings given to them in the MSA.

### TERMS

**Section 1.      <u>Appointment and Retention</u>.**

D-MS appoints GMIMCo as investment manager and retains GMIMCo to perform for the D-MS-sponsored U.S. Plans the services to be provided by GMIMCo for the Delphi-sponsored U.S. Plans under the MSA and in accordance with all of the terms and conditions of the MSA.  GMIMCo accepts such appointment.

DOL-PSP-001818

### Section 2.  **GMIMCo Responsibilities.**

GMIMCo will provide the services for the D-MS-sponsored U.S. Plans that it provides to the Delphi-sponsored U.S. Plans in accordance with all terms and conditions of the MSA.

### Section 3.  **Delphi Authorization.**

D-MS authorizes Delphi, and any persons or entities authorized to act on behalf of Delphi under the MSA, to act in accordance with the terms of the MSA with regard to the U.S. Plans sponsored by D-MS, including, without limitation, the payment of GMIMCo's compensation and expenses pursuant to Section 5 and Exhibit D of the MSA as such compensation and expenses relate to the D-MS-sponsored U.S. Plans, and the removal of Removed Assets and allocation of such assets to Delphi Investment Manager(s) pursuant to Section 4 of the MSA, and Delphi agrees to so act.

### Section 4.  **Notices.**

(a)     Any notice, approval, consent, or similar communication required by this Addendum to be in writing to be sent to D-MS will be deemed duly given if sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient as set forth below:

| If to D-MS: | Delphi Mechatronic Systems, Inc.<br>Attention: Employee Benefit Plan Administrator<br>3110 Wood Creek Drive<br>Downers Grove, Illinois 60515 |
|---|---|
| If to Delphi: | Delphi Corporation<br>Attention: Treasurer<br>5725 Delphi Drive<br>Troy, Michigan 48098 |
| If to GMIMCo: | General Motors Investment Management Corporation<br>Attention: Vice President & General Counsel<br>767 Fifth Avenue<br>New York, New York 10153. |

(b)     Any party may send any notice to the intended recipient at the address set forth above using any other means (including personal delivery, expedited courier, messenger service, ordinary mail, facsimile, or electronic mail), but no such notice will be deemed to have been duly given unless and until it is actually received by the intended recipient.  Any party may change its address by giving the other party notice.

2

DOL-PSP-001819

## Section 5.    Relationship to MSA.

Unless otherwise specified in this Addendum, the terms and conditions of the MSA govern this Addendum and, in the event of a conflict between the MSA and this Addendum, the MSA governs.

**DELPHI CORPORATION**

By:    _____
Name:    John Blahnik
Title:    Treasurer

**GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION**

By:    _____
Name:    W. Allen Reed
Title:    President and Chief Executive
Officer

**DELPHI MECHATRONIC SYSTEMS, INC.**

By:    _____
Name:    Lothar Veeser
Title:    President

3

DOL-PSP-001820

**Addendum 2 to Management Services Agreement Dated September 17, 2002**

**Packard-Hughes Interconnect Company**

**RECITALS**

1.      Delphi Corporation ("Delphi") and General Motors Investment Management Corporation ("GMIMCo") have entered into a Management Services Agreement dated September 17, 2002 ("MSA") pursuant to which GMIMCo will perform certain services in its role as "named fiduciary" (as defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA") § 402(a)(2)) for investment purposes and "investment manager" (as defined in ERISA § 3(38)(A)) of the U.S. Plans, and provide certain other services for the U.S. Plans.

2.      Packard-Hughes Interconnect Company, a Delaware corporation ("PHI"), is a wholly-owned subsidiary of Delphi and is thus part of the same "controlled group of corporations" (as defined in Internal Revenue Code ("Code") § 1563(a)) as Delphi.

3.      PHI sponsors certain U.S. Plans listed in Exhibit A to the MSA.

4.      The PHI Board of Directors is the "named fiduciary" (as defined in ERISA § 402(a)(2)) of the PHI-sponsored U.S. Plans and is authorized to appoint a named fiduciary for investment purposes and one or more investment managers for such U.S. Plans.

5.      PHI, acting through its Board of Directors, designated GMIMCo as named fiduciary for purposes of investment of the assets of the U.S. Plans sponsored by PHI and investment manager for the U.S. Plans PHI sponsors.

6.      PHI has authorized Delphi (whether acting through the IPC or other person or entity appointed by Delphi) to act in accordance with the MSA with respect to the U.S. Plans sponsored by PHI to the same extent that Delphi acts with respect to the U.S. Plans sponsored by Delphi.

7.      Capitalized terms used in this Addendum without definition have the meanings given to them in the MSA.

**TERMS**

**Section 1.      Appointment and Retention.**

PHI appoints GMIMCo as investment manager and retains GMIMCo to perform for the PHI-sponsored U.S. Plans the services to be provided by GMIMCo for the Delphi-sponsored U.S. Plans under the MSA and in accordance with all of the terms and conditions of the MSA. GMIMCo accepts such appointment.

**DOL-PSP-001821**

*Subject to FOIA, 29 CFR 70.26*

**Section 2.    GMIMCo Responsibilities.**

GMIMCo will provide the services for the PHI-sponsored U.S. Plans that it provides to the Delphi-sponsored U.S. Plans in accordance with all terms and conditions of the MSA.

**Section 3.    Delphi Authorization.**

PHI authorizes Delphi, and any persons or entities authorized to act on behalf of Delphi under the MSA, to act in accordance with the terms of the MSA with regard to the U.S. Plans sponsored by PHI, including, without limitation, the payment of GMIMCo's compensation and expenses pursuant to Section 5 and Exhibit D of the MSA as such compensation and expenses relate to the PHI-sponsored U.S. Plans, and the removal of Removed Assets and allocation of such assets to Delphi Investment Manager(s) pursuant to Section 4 of the MSA, and Delphi agrees to so act.

**Section 4.    Notices.**

(a)    Any notice, approval, consent, or similar communication required by this Addendum to be in writing to be sent to PHI will be deemed duly given if sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient as set forth below:

| | |
|---|---|
| If to PHI: | Packard-Hughes Interconnect Company<br>Attention: Employee Benefit Plan Administrator<br>17159 Von Karman Avenue<br>Irvine, California 92614-0901 |
| If to Delphi: | Delphi Corporation<br>Attention:  Treasurer<br>5725 Delphi Drive<br>Troy, Michigan 48098 |
| If to GMIMCo: | General Motors Investment Management Corporation<br>Attention:  Vice President & General Counsel<br>767 Fifth Avenue<br>New York, New York 10153. |

(b)    Any party may send any notice to the intended recipient at the address set forth above using any other means (including personal delivery, expedited courier, messenger service, ordinary mail, facsimile, or electronic mail), but no such notice will be deemed to have been duly given unless and until it is actually received by the intended recipient. Any party may change its address by giving the other party notice.

2

**DOL-PSP-001822**

**Section 5.**    **Relationship to MSA.**

Unless otherwise specified in this Addendum, the terms and conditions of the MSA govern this Addendum and, in the event of a conflict between the MSA and this Addendum, the MSA governs.

**DELPHI CORPORATION**

By:    _____
Name:    John Blahnik
Title:    Treasurer

**GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION**

By:    _____
Name:    W. Allen Reed
Title:    President and Chief Executive Officer

**PACKARD-HUGHES INTERCONNECT COMPANY**

By:    _____
Name:    CHARU MANOCHA
Title:    DIRECTOR OF HUMAN RESOURCES

3

**Addendum 3 to Management Services Agreement Dated September 17, 2002**

**ASEC Manufacturing**

**RECITALS**

      1.     Delphi Corporation ("Delphi") and General Motors Investment Management Corporation ("GMIMCo") have entered into a Management Services Agreement dated September 17, 2002 ("MSA") pursuant to which GMIMCo will perform certain services in its role as "named fiduciary" (as defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA") § 402(a)(2)) for investment purposes and "investment manager" (as defined in ERISA § 3(38)(A)) of the U.S. Plans, and provide certain other services for the U.S. Plans.

      2.     ASEC Manufacturing, a Delaware general partnership a/k/a Delphi Catalyst Systems ("ASEC"), is a wholly-owned subsidiary of Delphi and is thus part of the same "controlled group of corporations" (as defined in Internal Revenue Code ("Code") § 1563(a)) as Delphi.

      3.     ASEC sponsors certain U.S. Plans listed in Exhibit A to the MSA.

      4.     The ASEC Benefits Committee is the "named fiduciary" (as defined in ERISA § 402(a)(2)) of the ASEC -sponsored U.S. Plans and is authorized to appoint a named fiduciary for investment purposes and one or more investment managers for such U.S. Plans.

      5.     ASEC, acting through its Benefits Committee, designated GMIMCo as named fiduciary for purposes of investment of the assets of the U.S. Plans sponsored by ASEC and investment manager for the U.S. Plans ASEC sponsors.

      6.     ASEC has authorized Delphi (whether acting through the IPC or other person or entity appointed by Delphi) to act in accordance with the MSA with respect to the U.S. Plans sponsored by ASEC to the same extent that Delphi acts with respect to the U.S. Plans sponsored by Delphi.

      7.     Capitalized terms used in this Addendum without definition have the meanings given to them in the MSA.

**TERMS**

**Section 1.**    **Appointment and Retention.**

      ASEC appoints GMIMCo as investment manager and retains GMIMCo to perform for the ASEC-sponsored U.S. Plans the services to be provided by GMIMCo for the Delphi-sponsored U.S. Plans under the MSA and in accordance with all of the terms and conditions of the MSA. GMIMCo accepts such appointment.

L:\DH\DELPHI FPO\DELPHI DRAFTS\MSA ADDENDUM 3 (ASEC) FINAL.DOC

DOL-PSP-001824

**Section 2.** **GMIMCo Responsibilities.**

GMIMCo will provide the services for the ASEC-sponsored U.S. Plans that it provides to the Delphi-sponsored U.S. Plans in accordance with all terms and conditions of the MSA.

**Section 3.** **Delphi Authorization.**

ASEC authorizes Delphi, and any persons or entities authorized to act on behalf of Delphi under the MSA, to act in accordance with the terms of the MSA with regard to the U.S. Plans sponsored by ASEC, including, without limitation, the payment of GMIMCo's compensation and expenses pursuant to Section 5 and Exhibit D of the MSA as such compensation and expenses relate to the ASEC -sponsored U.S. Plans, and the removal of Removed Assets and allocation of such assets to Delphi Investment Manager(s) pursuant to Section 4 of the MSA, and Delphi agrees to so act.

**Section 4.** **Notices.**

(a)      Any notice, approval, consent, or similar communication required by this Addendum to be in writing to be sent to ASEC will be deemed duly given if sent by registered or certified mail, return receipt requested, postage prepaid and addressed to the intended recipient as set forth below:

If to ASEC:                ASEC Manufacturing
                           Attention: Employee Benefit Plan Administrator
                           1301 Main Parkway
                           Catoosa, Oklahoma 74015

If to Delphi:              Delphi Corporation
                           Attention: Treasurer
                           5725 Delphi Drive
                           Troy, Michigan 48098

If to GMIMCo:              General Motors Investment Management Corporation
                           Attention: Vice President & General Counsel
                           767 Fifth Avenue
                           New York, New York 10153.

(b)      Any party may send any notice to the intended recipient at the address set forth above using any other means (including personal delivery, expedited courier, messenger service, ordinary mail, facsimile, or electronic mail), but no such notice will be deemed to have been duly given unless and until it is actually received by the intended recipient. Any party may change its address by giving the other party notice.

DOL-PSP-001825

**Section 5.**    **Relationship to MSA**.

Unless otherwise specified in this Addendum, the terms and conditions of the MSA govern this Addendum and, in the event of a conflict between the MSA and this Addendum, the MSA governs.

**DELPHI CORPORATION**

By:  _____

Name:   John Blahnik
Title:    Treasurer

**GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION**

By:  _____

Name:   W. Allen Reed
Title:    President and Chief Executive
            Officer

**ASEC MANUFACTURING**

By:  _____

Name:    F. Thomas Sprunger
Title:     Manager, Human Resources

3