# Exhibit 3



Recordkeeping and Administrative Services Agreement

Between

**Delphi Automotive Systems Corporation**

And

**Fidelity Institutional Retirement Services Company**

---

**DELPHI SAVINGS - STOCK PURCHASE PROGRAM,
DELPHI PERSONAL SAVINGS PLAN, AND
DELPHI INCOME SECURITY PLAN**

---

**Dated as of May 28, 1999**

**DOL-PSP-001827**

**RECORDKEEPING AND ADMINISTRATIVE SERVICES AGREEMENT**, dated as of the twenty eighth day of May, 1999, between **DELPHI AUTOMOTIVE SYSTEMS CORPORATION**, a Delaware corporation, having its principal office at 5725 Delphi Drive, Troy, Michigan 48098-2815 (M.C. 483-400-606) (the "Sponsor" or "Delphi"), and **FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**, a division of FMR Corp., a Massachusetts corporation, having an office at 82 Devonshire Street, Boston, Massachusetts 02109 ("Fidelity").

**WITNESSETH:**

**WHEREAS**, the Sponsor is the sponsor (within the meaning of Section 3(16)(B) of the Employee Retirement Income Security Act of 1974, as amended ["ERISA"]) of the Delphi Savings-Stock Purchase Program ("S-SPP"), Delphi Income Security Plan ("ISP"), and Delphi Personal Savings Plan ("PSP")(collectively and individually, the "Plan"); and

**WHEREAS**, the Sponsor is the administrator (within the meaning of Section 3(16) of ERISA) of the Plan; and

**WHEREAS**, the Sponsor has appointed State Street Bank & Trust Company as Trustee of the Plan, and the Sponsor hereby agrees to inform Fidelity of any change in the identity of said Trustee; and

**WHEREAS**, the Sponsor wishes to have Fidelity perform certain recordkeeping and administrative functions for the Plan; and

**WHEREAS**, Fidelity is willing to perform such services within the explicit provisions of the Plan and guidelines and interpretations conveyed to Fidelity by the Sponsor.

**DOL-PSP-001828**

NOW, **THEREFORE**, in consideration of the foregoing premises and the mutual covenants and agreements set forth below, the Sponsor and Fidelity agree as follows:

**Section 1.**    **Services to be Performed.**    Except as provided in the next paragraph below, Fidelity shall have the responsibility to perform all record keeping and administrative functions, including but not limited to those functions set forth on Schedule "A" attached hereto and made a part hereof, as amended from time to time.  The Sponsor hereby acknowledges and authorizes that the recordkeeping and other administrative services to be provided under this Agreement shall be provided by Fidelity, its agents or affiliates including Fidelity Investments Institutional Operations Company ("FIIOC") or its successor, and that certain of such services may be provided pursuant to one or more other contractual agreements or relationships.

Notwithstanding the preceding paragraph, Fidelity shall not:

(i)     make determinations regarding Participant appeals of benefit claim denials;

(ii)    collect plan loan repayments, other than payments required to be made directly to Fidelity (non payroll withholding);

(iii)   make the final determination regarding competing claims for benefits by beneficiaries;

(iv)    determine whether plan amendments require the preparation of a summary of material modifications and the preparation of such summary;

(v)     prepare the Summary Plan Description;

(vi)    prepare and file Form 5500 and Summary Annual Report;

(vii)   perform Code discrimination (including coverage) testing;

(viii)  perform Code Section 415 limitation testing; or

(ix)    perform Code Section 402(g) testing.

Provided that Fidelity may subsequently provide one or more of the services listed immediately above pursuant to a mutual agreement between the Sponsor and Fidelity in writing.

2

DOL-PSP-001829

**Section 2.**    **Sponsor Directions.**  The Sponsor shall provide to Fidelity such provisions, instructions, guidelines and interpretations (collectively, "Directions") as may reasonably be required to enable Fidelity to perform the recordkeeping and administrative services required in accordance with this Agreement.  Whenever the Sponsor provides a Direction to Fidelity, Fidelity shall be fully protected in relying on the Direction if the Direction is contained in a writing or is oral and immediately confirmed in writing, signed by any individual whose name and signature have been submitted in writing by the Sponsor to Fidelity, in the form of the letter attached hereto as Exhibit "C", provided Fidelity reasonably believes the signature to be genuine.

**Section 3.**    **Investment Options.**        The current investment options for which Fidelity shall provide recordkeeping and administrative services are described in Schedule "A" attached hereto.  The Sponsor hereby represents and warrants that the power to determine which investment options are made available under the Plan is properly reserved to entities other than Fidelity and that Fidelity shall have no responsibility for the selection of investment options under the Plan and that Fidelity or its representatives shall not render investment advice to any person in connection with the selection of such options.  The Sponsor may determine to offer as investment options for which Fidelity would have the responsibility set forth in this Agreement, only (i) securities issued by the registered investment companies advised by Fidelity Management & Research Company ("Mutual Funds"), (ii) notes evidencing loans to Plan participants in accordance with the terms of the Plan, and (iii) other investment funds described in Section 5 ("Outside Funds"), which may include equity securities issued by the Sponsor or an affiliate which are publicly-traded and which are "qualifying employer securities" within the meaning of section 407(d)(5) of ERISA ("Sponsor Stock").  The Sponsor may add additional investment options or delete investment options for which Fidelity will have the responsibility set forth in this Agreement, upon the mutual amendment of this Agreement and the Schedules thereto to reflect such additions or deletions. Agreement to make amendments for the addition or deletion of investment options shall not be unreasonably withheld.

3

DOL-PSP-001830

**Section 4.**  **Mutual Funds.**  The Sponsor hereby acknowledges that it has received from Fidelity a copy of the prospectus for each Mutual Fund selected by the Sponsor as a Plan investment option.  Fidelity shall execute the purchase and sale of Mutual Fund shares if such purchase(s) and sale(s) are based on proper direction from participants.  If monies are received prior to 4:00 p.m. Eastern Time ("ET"), investment of contributions shall be made on the same business day.  Monies received after 4:00 p.m. ET will be processed on the next business day.  Redemption requests received in good order prior to 4:00 p.m. ET will be processed at that day's closing price and a check for the proceeds of such redemption will be released within 1-5 business days.  Redemption requests received after 4:00 p.m. ET will be processed on a next business day basis.

**Section 5.**  **Outside Funds.**  The Sponsor hereby directs that participants in the Plan may invest in the following Outside Funds in accordance with Plan terms:  ISP Income Security Fund, Income Fund, Balanced Fund, Equity Index Fund, Delphi Common Stock Fund, GM $1 - 2/3 Par Value Common Stock Fund, EDS Common Stock Fund, the GM Class H Common Stock Fund, the Raytheon Class A Common Stock Fund, Promark Income Fund, Promark Large Cap Blend Fund, Promark Large Cap Growth Fund, Promark Large Cap Value Fund, Promark Large Cap Index Fund, Promark Mid Cap Blend Fund, Promark Small Cap Growth Fund, Promark Small Cap Value Fund, Promark High Quality Bond Fund, Promark High Yield Bond Fund, Promark International Equity Fund, Promark Emerging Markets Equity Fund, Promark Real Estate Securities Fund, Promark Balanced Fund, Promark Target Portfolio: Income, Promark Target Portfolio: Conservative Growth, Promark Target Portfolio: Moderate Growth, and Promark Target Portfolio: Dynamic Growth.  Fidelity shall recordkeep these investment options in accordance with the operating procedures, as agreed to by Fidelity and State Street Bank & Trust Company as Trustee, attached hereto as Schedule "E".

**Section 6.**  **Qualified Domestic Relations Order Processing.**  Fidelity shall process Qualified Domestic Relations Orders ("QDRO") in accordance with the operating procedures

4

DOL-PSP-001831

attached hereto as Schedule "F". It is understood that such Procedures may be amended from time to time by the Sponsor.

**Section 7.** · **Telephone Directions by Participants.**   Each Plan participant shall direct Fidelity as to which transactions should be initiated in the participant's individual account. Such directions may be made by Plan participants by the use of the Telephone System or other computer system maintained by Fidelity for such purposes, in accordance with the Telephone Guidelines or other computer system guidelines attached hereto as Schedule "D" as may be amended from time to time by mutual agreement of the parties . The Sponsor hereby directs Fidelity to act and rely upon such telephonic or other computer system instructions provided that the instruction satisfies the procedural requirements set forth in this Agreement. The Sponsor hereby directs that, pursuant to the Plan, participant requests may be made by telephone or other computer system approved by the Sponsor and Fidelity shall process such requests only after the identity of the participant is verified by use of a social security number and personal identification number ("PIN").

All telephone conversations will be recorded and the tape retained for two (2) years for the protection of the Plan participant, the Sponsor and Fidelity. Fidelity agrees to provide copies of taped conversations to the Sponsor, when requested. A confirmation of each transaction initiated and authorized by a participant will be mailed to the participant's address of record within 1-5 business days of the call. ·

**Section 8.**   **Qualification Status.**       This Plan is intended to be qualified under Section 401(a) of the Internal Revenue Code and to be entitled to tax exemption under Section 501(a) thereof. Fidelity may assume, until advised to the contrary, that the Plan is qualified and is entitled to tax exemption. It is also intended that this Plan be in full compliance with the applicable requirements of the Employee Retirement Income Security Act. This Agreement shall be construed and administered consistent with such intent.

DOL-PSP-001832

**Section 9.    Federal Income Tax Withholding and Reporting.**        Fidelity shall be responsible for withholding federal income tax from distributions, based on participant data (including basis information) received from the Sponsor, unless such distribution is a direct rollover.

Fidelity shall withhold federal income tax from participant distributions and, in a timely and proper manner, deposit and report such amounts under Fidelity's own tax identification number.

Notwithstanding the above obligations, Fidelity shall not be responsible for any federal tax withholdings relating to any dividends on Sponsor Stock paid to participants through the Flexible Dividend Pass Through Program, attached hereto as Schedule "H".

**Section 10.    Documentation.**        The Sponsor hereby certifies that it has furnished Fidelity with a copy of the Plan and all amendments thereto in effect on the date of this Agreement. The Sponsor will provide Fidelity with copies of all future amendments to the Plan and all Directions which the Sponsor deems necessary for Fidelity to perform its recordkeeping and administrative services under this Agreement or which Fidelity may reasonably request from time to time.

**Section 11.    Records.**        Prior to the termination of this Agreement, all records generated by Fidelity in the course of performing its recordkeeping and administrative services shall be open to inspection and audit by the Sponsor, or any person designated by the Sponsor, during Fidelity's regular business hours at Fidelity's office where such records are maintained. Upon the termination of this Agreement, Fidelity shall provide to the Sponsor, or any person designated by the Sponsor, all plan records and information maintained by Fidelity as recordkeeper.

6

DOL-PSP-001833

**Section 12.    Compensation.**    As consideration for its services under this Agreement, Fidelity shall be entitled to compensation which shall be computed in accordance with Schedule "B" attached hereto and made a part hereof, as amended from time to time.

Fidelity shall bill the Sponsor quarterly in arrears for such compensation, and within thirty (30) days of receipt of Fidelity's quarterly bill, the Sponsor shall send to Fidelity payment in such amount.

**Section 13.    Duration.**    This Agreement shall continue in effect without limit as to time, subject, however, to the provisions of this Agreement relating to amendment, modification, and termination thereof.

**Section 14.    Amendment and Termination.**    Either party, by ninety (90) days written notice to the other, may terminate this Agreement, unless the receiving party agrees to a shorter notice period. In the event of notice of termination by either party, Fidelity shall perform the services called for in this Agreement for a reasonable period of time to permit the appointment and operation of a successor. In the event of notice of termination, Fidelity will cooperate with the transition to a successor and the Sponsor shall make all reasonable efforts to retain a successor as soon as possible. This Agreement may be amended or modified at any time by an instrument executed by the Sponsor and Fidelity. Any Schedule to this Agreement may be amended or modified at any time by an instrument executed by the Sponsor and Fidelity.

Notwithstanding the foregoing, to reflect increased operating costs, Fidelity may once each calendar year amend Schedule "B" subject to the Sponsor's consent, which consent will not be unreasonably withheld, upon sixty (60) days prior written notice to the Sponsor

DOL-PSP-001834

## Section 15. Indemnification.

1.    The Sponsor hereby agrees to hold harmless Fidelity and Fidelity's directors, officers and employees from and against all amounts including without limitation expenses (including reasonable counsel fees), liabilities, claims, damages, actions, suits or other charges (including liability to a third party) incurred by or assessed against Fidelity, or its directors, officers or employees, (i) as a direct or indirect result of (a) anything done in good faith, or alleged to have been done, by or on behalf of Fidelity in reliance upon the Sponsor's directions or participant directions as set forth in Section 7 of this Agreement or (b) anything omitted to be done by or on behalf of Fidelity in good faith, or alleged to have been omitted by or on behalf of Fidelity, in the absence of such directions; provided, however, that indemnifications will only be provided in the event that with respect to the matter directly or indirectly at issue Fidelity was not negligent, did not act in bad faith, and complied with this Agreement. Anything herein above to the contrary notwithstanding, the Sponsor shall have no responsibility to Fidelity if Fidelity in regard to the matter at issue knowingly participates in or knowingly undertakes to conceal any act or omission of any party knowing that such act or omission constitutes a breach of such parties' responsibilities with respect to the Plan, or if Fidelity fails to perform any of the duties specifically undertaken by it under the provisions of this Agreement, or if Fidelity fails to act in conformity with directions of the Sponsor or a participant pursuant to Section 7 of this Agreement.

2.    Fidelity hereby agrees to hold harmless the Sponsor and any directors, officers, or employees of the Sponsor from and against all amounts, including, without limitation, expenses (including reasonable counsel fees), liabilities, claims, damages, actions, suits or other charges (including liability to a third party) incurred by or assessed against the Sponsor or its directors, officers or employees, as a direct or indirect result of any failure of Fidelity, or its agents, employees, or subcontractors to comply with this Agreement or any applicable law which affects the obligations of Fidelity hereunder, or Fidelity's negligence or bad faith; provided, however, that such indemnification shall be required only if the Sponsor

8

DOL-PSP-001835

was not negligent, did not act in bad faith, and complied with this Agreement with respect to the matter directly or indirectly at issue.

3.      An indemnified party shall give an indemnifying party prompt written notice of any matter with respect to which it expects to assert its right to be indemnified under this Article. The obligation of either party to indemnify and hold harmless the other shall be conditioned upon the indemnified party cooperating in good faith with the indemnifying party and its agents in the defense of such claim. Any such claim may, at the option of the indemnifying party, be defended by the indemnifying party in the name of the indemnified party, by counsel reasonably acceptable to the indemnified party, in which event the indemnifying party shall be fully subrogated to the rights of the indemnified party; provided, however, that if the indemnified party is advised by legal counsel that the indemnifying party may have a conflict of interest in defending the indemnified party, the indemnifying party shall be entitled to retain its own separate legal counsel and defend itself. The expense of counsel for the indemnified party shall be at the expense of the indemnifying party in the event the indemnified party is to be indemnified by the indemnifying party pursuant to part (1) or (2) of this Article. Notwithstanding the foregoing, no settlement of any claim for which indemnification is sought shall be made without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, and the indemnifying party shall not be obligated to indemnify or hold harmless the indemnified party with respect to any settlement of a claim effected without such consent. If the indemnifying party proposes to settle a claim against the indemnified party (as well as against others, including the indemnifying party) and the indemnified party does not agree with the decision of the indemnifying party to settle, the indemnified party may, for its own account, elect to pursue the litigation in a different manner upon written notice to the indemnifying party. In such event, the indemnified party shall continue to be entitled to be reimbursed under this Section by the indemnifying party up to the amount which the indemnifying party is willing to pay including applicable costs and expenses to the date of the proposed settlement (under parts (1) and (2) of this Article) pursuant to the proposed settlement rejected by the indemnified party; provided, however, that the indemnified party agrees, in writing, to pay any liability, costs

9

DOL-PSP-001836

and expenses associated with such claim in excess of such amount, and to otherwise hold the indemnifying party harmless from any further liability and expenses related to such claim.

The provisions of this Section shall survive the termination of this Agreement.

**Section 16.    General Terms.**    This Agreement supersedes all written and oral agreements, communications or negotiations among the parties, and it constitutes the complete and full understanding and agreement of the parties with regard to the subject matter hereof. No waiver by any party of any failure or refusal to comply with an obligation hereunder shall be deemed a waiver of any other subsequent failure or refusal to so comply.  This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the respective parties.  If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  To the extent applicable, this agreement shall be governed by federal law. To the extent federal law does not apply this Agreement will be governed by the laws of the Commonwealth of Massachusetts.

**Section 17.    Performance Standards.**    Performance standards for the services provided under this Agreement are specified in Schedule "G". Performance reporting frequency and format as mutually agreed upon between Fidelity and Delphi is also specified in Schedule "G". The mutually agreed upon reports are provided by Fidelity to Delphi for review and compliance with performance standards, and are part of Fidelity's Quality Assurance process. Fidelity shall be totally responsible for accurately communicating and recording participant transactions.

DOL-PSP-001837

**Section 18.** **Quality Assurance.** Annually, a quality assurance survey will be conducted as agreed by the parties to measure the level of participant satisfaction with the services. The timing, scope, format, and methodology will be mutually agreed upon by Fidelity and Delphi.

**Section 19.** **Personnel.** Fidelity agrees to perform its obligations under this Agreement as an independent contractor and not as Delphi's agent or employee and that the persons performing the services hereunder are not agents of Delphi or Delphi employees. Fidelity has and hereby retains the right to exercise full control of and supervision over the personnel performing Fidelity's obligations under this Agreement, and full control over the employment, direction, compensation and discharge of all persons assisting in the performance of such obligations. Delphi shall not be responsible for any matters relating to payment of such persons or to providing employee benefits to such persons, including but not limited to compliance with workers' compensation, unemployment, disability insurance, health care insurance, pension benefits, social security, withholding and all other federal, state and local laws, rules and regulations governing such matters.

**Section 20. Data-Protection and Audit Rights.**

   a)    Delphi Data.    Delphi employee and plan data shall be and remain Delphi's property and, upon the termination of the Agreement for any reason, or, with respect to any particular data, such data shall, upon prior notice by Delphi, be either (i) transferred to Delphi from the data files maintained by Fidelity or (ii) copied and sent to Delphi by Fidelity. Delphi data shall not be utilized by Fidelity for any purpose other than that of rendering services to Delphi and the plan nor shall Delphi data or any part thereof be disclosed, sold, assigned, leased or otherwise disposed of to third parties by Fidelity or commercially exploited by or on behalf of Fidelity, its employees or agents.

11

DOL-PSP-001838

b)    <u>Safeguarding of Delphi Data</u>.    Fidelity will establish and maintain
adequate and reasonable safeguards, both with respect to its procedures and the Service
Center, to protect against the destruction, loss or alteration of Delphi data in the possession of
Fidelity. Fidelity shall promptly notify Delphi of any information Fidelity obtains as to any
unauthorized possession, use or disclosure of any Delphi data in the possession of Fidelity and
will cooperate with Delphi in preventing any further unauthorized possession, use or
disclosure of such Delphi data and in instituting appropriate legal proceedings relating to such
unauthorized possession, use or disclosure of Delphi data.

c)    <u>Audit Rights</u>.    Fidelity will provide such auditors or inspectors as
Delphi may from time to time designate in writing with reasonable access to the Service
Center and Operations area from which Fidelity is performing services under this Agreement
for the limited purpose of performing audits or inspections for Delphi of the accounts and
services established under this Agreement and will provide to such auditors or inspectors any
assistance that they may reasonably require. Delphi shall also have the right to audit the
documentation, security and integrity of Delphi data being maintained by Fidelity hereunder at
such times as will not unreasonably interfere with Fidelity's ability to perform its obligations
hereunder.

d)    <u>Disaster Recovery</u>.    Fidelity will implement and maintain an effective
disaster recovery plan at all sites where Delphi data is processed, and Delphi or its agents shall
have the right to audit same and to make, from time to time, reasonable recommendations for
the amendment or supplementation of said plan.

e)    <u>Confidentiality</u>.    Fidelity understands the need for confidentiality of
the non-public, proprietary Delphi data and other information furnished and to be furnished to
it by Delphi and its employees ("<u>Information</u>") and acknowledges the irreparable harm that
will result from its unauthorized use or disclosure. As such, Fidelity agrees that:

12

DOL-PSP-001839

(i)    It will treat the Information as highly confidential information of Delphi and its employees, keep it in strict confidence and not disclose the Information in any manner, to anyone except as specifically permitted herein.

(ii)    If any person or entity other than those previously authorized by Delphi requests or attempts to compel disclosure from Fidelity of any of the Information, Fidelity will immediately notify the Delphi Director, Pension and Welfare Benefit Plans, and cooperate fully in taking any reasonable action which Delphi considers necessary or appropriate.

(iii)    It will limit disclosure internally to only those employees, agents, representatives and, if necessary, affiliates who have a need to know. Those employees, agents, representatives or affiliates so identified will be limited to only so much of the Information as is necessary for that employee, agent, representative or affiliate to assist Fidelity in performance of the Services hereunder. Fidelity agrees that it will take appropriate action by instruction, agreement, or otherwise with the persons permitted access to the Information so as to enable it to satisfy its confidentiality and non-disclosure obligations hereunder.

(iv)    Notwithstanding anything to the contrary herein, Fidelity may disclose any Information, to the extent required by applicable law, to any appropriate regulatory authority upon demand therefor or in connection with any litigation, to the extent such disclosure may be required therein upon notice to Delphi unless such notice is forbidden in writing by the applicable authority or court of jurisdiction.

(v)    Fidelity acknowledges that a breach of its obligations under Section 20 of this Agreement will subject Delphi to immediate and irreparable harm for which monetary damages alone cannot adequately compensate it, and Fidelity hereby consents to the granting of injunctive relief whether temporary, preliminary, or final, in favor of Delphi without the posting of bond or other security.

13

**Section 21.   Communication Services.**   Fidelity shall develop and mail all necessary employee and participant communications materials, which shall be subject to Delphi's prior review and approval, which are listed in Schedule B.

**Section 22.   Force Majeure.**   No party shall be deemed in default of this Agreement to the extent that any delay or failure in performance of its obligation results, without its fault or negligence, from any cause beyond its reasonable control, such as acts of God, acts of civil or military authority, embargoes, epidemics, war, riots, insurrections, fires, explosions, earthquakes, floods, unusually severe weather conditions, power outages or strikes. This clause shall not excuse Fidelity from any liability which results from failure to have in place reasonable disaster recovery and safeguarding plans adequate for protecting all data Fidelity is responsible for maintaining as recordkeeper of the Plans.

**Section 23.   Government Compliance.**   Fidelity agrees to comply with all federal, state and local laws, Executive Orders, rules, regulations and ordinances which may be applicable to Fidelity's performance of its obligations under this Agreement.

**Section 24. Electronic Services.**

(a)      Fidelity may provide communications and services via electronic medium ("Electronic Services"), including, but not limited to, Fidelity Plan Sponsor WebStation, Client Intranet, Client Extranet, Client e-mail, interactive software products or any other information provided in an electronic format. The Sponsor, its agents and employees agree to keep confidential and not publish, copy, broadcast, retransmit, reproduce, commercially exploit or otherwise redisseminate the data, information, software or services without Fidelity's written consent.

(b)      The Sponsor shall be responsible for installing and maintaining all Electronic Services on its computer network and/or Intranet upon receipt in a manner so that the information provided via the Electronic Service will appear in the same form and content as it

14

**DOL-PSP-001841**

appears on the form of delivery, and for any programming required to accomplish the installation. Materials provided for the Sponsor's intranet web sites shall be installed by the Sponsor and shall be clearly identified as originating from Fidelity. The Sponsor shall promptly remove Electronic Services from its computer network and/or Intranet, or replace the Electronic Service with an updated service provided by Fidelity, upon written notification (including written notification via facsimile) by Fidelity.

(c)     All Electronic Services shall be provided to the Sponsor without any express or implied legal warranties or acceptance of legal liability by Fidelity relative to the use of material or Electronic Services by the Sponsor. No rights are conveyed to any property, intellectual or tangible, associated with the contents of the Electronic Services and related material.

(d)     To the extent that any Electronic Services utilize Internet services to transport data or communications, Fidelity will take, and the Sponsor agrees to follow, reasonable security precautions; however, Fidelity disclaims any liability for interception of any such data or communications. Fidelity shall not be responsible for, and makes no warranties regarding access, speed or availability of Internet or network services. Fidelity shall not be responsible for any loss or damage related to or resulting from any changes or modifications to the electronic material after delivering it to the Sponsor.

(e)     Notwithstanding anything to the contrary in paragraph (a) above, to the extent that any Electronic Services are accessible to individuals through the internet from an Internet Protocol (IP) address that does not match that of either the Sponsor or Fidelity ("Outside Users"), security of at least the following level shall be utilized: Before any Outside User shall have access to the Electronic Services, the Outside User shall be required to enter a username and password which shall be available from the Sponsor, and which shall be the same for all Outside Users.

DOL-PSP-001842

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be
executed by their duly authorized officers.

DELPHI AUTOMOTIVE SYSTEMS                    FIDELITY INSTITUTIONAL RETIREMENT
CORPORATION                                   SERVICES COMPANY

By: _____ 5/26/99          By: _____ 6/8/99
                          Date                    Vice President              Date

16

DOL-PSP-001843

## Schedule "A"

## ADMINISTRATIVE SERVICES

### For the Delphi Savings - Stock Purchase Program:

* **Recordkeeping for the following plan investment options:**

  - Fidelity Fund
  - Fidelity Puritan Fund
  - Fidelity Trend Fund
  - Fidelity Magellan Fund
  - Fidelity Contrafund
  - Fidelity Equity-Income Fund
  - Fidelity Growth Company Fund
  - Fidelity Investment Grade Bond Fund
  - Fidelity Growth & Income Portfolio
  - Fidelity Capital & Income Fund
  - Fidelity Value Fund
  - Fidelity Government Income Fund
  - Fidelity Retirement Growth Fund
  - Fidelity OTC Portfolio
  - Fidelity Overseas Fund
  - Fidelity Europe Fund
  - Fidelity Pacific Basin Fund
  - Fidelity Real Estate Investment Portfolio
  - Fidelity Balanced Fund
  - Fidelity International Growth & Income Fund
  - Fidelity Capital Appreciation Fund
  - Fidelity Convertible Securities Fund
  - Fidelity Canada Fund
  - Fidelity Utilities Fund
  - Fidelity Blue Chip Growth Fund
  - Fidelity Asset Manager
  - Fidelity Disciplined Equity Fund
  - Fidelity Low-Priced Stock Fund

17

DOL-PSP-001844

- Fidelity Worldwide Fund
- Fidelity Equity-Income II Fund
- Fidelity Stock Selector
- Fidelity Asset Manager: Growth
- Fidelity Emerging Markets Fund
- Fidelity Aggressive Growth Fund
- Fidelity Diversified International Fund
- Fidelity Asset Manager: Income
- Fidelity Dividend Growth Fund
- Fidelity New Markets Income Fund
- Fidelity Export & Multinational Fund
- Fidelity Global Balanced Fund
- Fidelity Small Cap Selector
- Fidelity Mid-Cap Stock Fund
- Fidelity Freedom Income Fund
- Fidelity Freedom 2000 Fund
- Fidelity Freedom 2010 Fund
- Fidelity Freedom 2020 Fund
- Fidelity Freedom 2030 Fund
- Fidelity International Bond
- Fidelity Fifty
- Delphi Common Stock Fund
- GM $1 - 2/3 Par Value Common Stock Fund (frozen to contributions and exchanges in)
- GM Class H Common Stock Fund (frozen to contributions and exchanges in)
- EDS Common Stock Fund (frozen to contributions and exchanges in)
- Raytheon Class A Common Stock Fund (frozen to contributions and exchanges in)
- Promark Large Cap Index Fund
- Promark Income Fund
- Promark Large Cap Blend Fund
- Promark Large Cap Growth Fund
- Promark Large Cap Value Fund
- Promark Mid Cap Blend Fund

DOL-PSP-001845

- Promark Small Cap Growth Fund
- Promark Small Cap Value Fund
- Promark International Equity Fund
- Promark Emerging Markets Equity Fund
- Promark High Quality Bond Fund
- Promark High Yield Bond Fund
- Promark Real Estate Securities Fund
- Promark Target Portfolio:  Income
- Promark Target Portfolio:  Conservative Growth
- Promark Target Portfolio:  Moderate
- Promark Target Portfolio:  Dynamic
- Promark Balanced Fund

- **Recordkeeping for the following money classifications:**

  - Basic After-Tax Required
  - Basic After-Tax Discretionary
  - Additional After-Tax
  - Basic Pre-Tax Required
  - Basic Pre-Tax Discretionary
  - Additional Pre-Tax
  - 1% Company Contribution
  - FCP Pre-Tax
  - Delphi Match Restricted
  - Profit Sharing
  - FCP After-Tax
  - Unrestricted Co. & Match
  - Rollover

---

## For the Delphi Personal Savings Plan:

- **Recordkeeping for the following plan investment options:**
  - Fidelity Fund
  - Fidelity Puritan Fund

DOL-PSP-001846

- Fidelity Trend Fund
- Fidelity Magellan Fund
- Fidelity Contrafund
- Fidelity Equity-Income Fund
- Fidelity Growth Company Fund
- Fidelity Investment Grade Bond Fund
- Fidelity Growth & Income Portfolio
- Fidelity Value Fund
- Fidelity Government Income Fund
- Fidelity Retirement Growth Fund
- Fidelity OTC Portfolio
- Fidelity Overseas Fund
- Fidelity Europe Fund
- Fidelity Pacific Basin Fund
- Fidelity Real Estate Investment Portfolio
- Fidelity Balanced Fund
- Fidelity International Growth & Income Fund
- Fidelity Capital Appreciation Fund
- Fidelity Convertible Securities Fund
- Fidelity Canada Fund
- Fidelity Utilities Fund
- Fidelity Blue Chip Growth Fund
- Fidelity Asset Manager
- Fidelity Disciplined Equity Fund
- Fidelity Low-Priced Stock Fund
- Fidelity Worldwide Fund
- Fidelity Equity-Income II Fund
- Fidelity Stock Selector
- Fidelity Asset Manager: Growth
- Fidelity Aggressive Growth Fund
- Fidelity Diversified International Fund
- Fidelity Asset Manager: Income

DOL-PSP-001847

- Fidelity Dividend Growth Fund
- Fidelity Export & Multinational Fund
- Fidelity Global Balanced Fund
- Fidelity Small Cap Selector
- Fidelity Mid-Cap Stock Fund
- Fidelity Freedom Income Fund
- Fidelity Freedom 2000 Fund
- Fidelity Freedom 2010 Fund
- Fidelity Freedom 2020 Fund
- Fidelity Freedom 2030 Fund
- Fidelity International Bond Fund
- Fidelity Fifty
- Balanced Fund
- Equity Index Fund
- Income Fund
- GM $1 2/3 Par Value Common Stock Fund
- GM Class H Common Stock Fund
- EDS Common Stock Fund (frozen to contributions and exchanges in)
- Raytheon Class A Common Stock Fund (frozen to contributions and exchanges in)
- Delphi Common Stock Fund

* **Recordkeeping for the following money classifications:**

- Pre-Tax Savings
- Rollover
- Profit Sharing
- Company Contributions
- After-Tax Savings

---

### For the Delphi Income Security Plan:

* **Recordkeeping for the following plan investment options:**

- ISP Income Security Fund

* **Recordkeeping for the following money classifications:**

DOL-PSP-001848

- Employee After-Tax Savings
- Employer Contributions

**The following services will be provided for all Plans noted In this Agreement:**

- Daily processing of: contribution data via EDT transmissions, rollover contributions, exchanges, changes of future investment allocations or deferral percentages. Reconcile contribution and payroll data on a daily basis; prepare and mail to the participant a confirmation of telephonic instructions relative to an exchange, change to future allocation, deferral percentage or participant's PIN number within five (5) business days of the participant's instructions; interface with Sponsor's payroll data feed in order to incorporate changes in deferral percentages; withhold and report federal taxes and issue 1099's, solicit and process minimum required distributions.

**ACCOUNTING**
- Provide plan and participant level accounting for all money classifications for the Delphi Savings-Stock Purchase Program, the Delphi Income Security Plan and the Delphi Personal Savings Plan (i.e., pre- and post-tax contributions, employee and employer contributions, etc.).

- Prepare, reconcile and deliver a monthly Trial Balance Report for each of the three plans on FPRS presenting all money classes and investments for each plan. This report is based on the market value as of the last business day of the month. The report will be delivered within approximately twenty (20)days following the end of each month.

**LOANS**
For the Delphi Personal Savings Plan and the Delphi Savings-Stock Purchase Program only:

- Daily processing of individual participant loans via telephone; determine the amount available for the loan based on the current value of the Plan participant's account on the date of the request in accordance with the Plan provisions; based on the most recent interest rate determined by the Plan Administrator in accordance with the terms of the Plan, advise the Plan participant of such interest rate, as well as the loan payment amounts; distribute the proceed check; distribute truth-in-lending disclosure; interface with Sponsor's payroll to provide data feed for loan repayment amounts; provide loan coupons when applicable; process loan repayments; provide outstanding loan balance for participant upon request; notify Sponsor upon fulfillment of loan obligation by participant via electronic payroll feed; reconcile and audit loan repayments.

- Track outstanding loan amounts on a per participant basis; monitor such amounts within Plan provisions (as communicated to Fidelity by the Sponsor); monitor outstanding loans for late payments and perform loan defaults as directed by the Sponsor.

DOL-PSP-001849

- For terminated and retired participants with outstanding loans:  Fidelity shall provide to these participants a loan coupon book for the purpose of scheduling and processing loan repayments.

## DISTRIBUTIONS
For the Delphi Savings - Stock Purchase Program and the Delphi Personal Savings Plan only:

- Daily processing of in-service withdrawals via telephone due to specific circumstances previously authorized by the Sponsor and in accordance with the terms of the Plan (includes special annual distribution, minimum annual distribution, installments & final distribution); obtain spousal consent if applicable; participants may initiate the hardship withdrawal process via telephone as directed and approved by the Sponsor.

- Monitor and process required minimum distributions ("MRD") as follows:  Fidelity will notify retired and terminated MRD participants and, upon notification from the MRD participant, will use the MRD participant's information to process their distributions.  If the MRD participant does not respond to Fidelity's notification, the Sponsor directs Fidelity to automatically begin the required distributions for the participant.

- Processing of Flexible Dividend Pass Through Program distributions in accordance with the procedures described in Schedule "H".

## GENERAL ADMINISTRATIVE SERVICES
- Prepare and distribute, to each Participant, a quarterly detailed participant statement reflecting all activity for the period.  Statements will be mailed within approximately 25 days after each quarter end (valued as of February 28, May 31, August 31 and November 30).

- Withhold federal taxes on Plan distributions; withhold state taxes on distributions as directed by the Sponsor; maintain pre- 1987 and post- 1986 tax cost basis; process year-end tax reports for participants -- 1099-R, as well as financial reporting to assist the Sponsor with the preparation of Form 5500.

- Establish and maintain the Plans on Fidelity's Retirement Service Group's toll-free telephone service and VRU; provide all aspects of administration including account and investment information to participants, as well as track and resolve participant issues.  Respond to participant matters involving subpoenas, restraining orders, bankruptcies, mortgage verifications, etc.  Provide rates of return, daily values for each of the Plans' investment funds.

- Maintain all participant demographic information including hire date information for eligible participants; track forfeiture amounts on a per participant basis; enroll new participant via telephone and if former employee - restore applicable forfeitures in accordance with Plan provisions; process address updates for separated participants including sold subsidiaries, in accordance with an established address update procedure.

23

DOL-PSP-001850

- Provide confirmation of enrollments within five (5) business days of request.

- As notified by the Sponsor via an electronic data feed, upon termination, disability, death or retirement: review options with participant/beneficiary via telephone; transfer/distribute benefit amounts as directed by participant/beneficiary in accordance with Plan provisions; provide information to participants, monitor and process required minimum distribution amounts in accordance with each Plans' provisions.

- Additional "ad hoc" reporting as agreed to by the Sponsor and Fidelity.

- Provide compliance files as required.

- Annual data collection and electronic transmission of profit sharing deferral elections.

- Provide annual electronic file to Sponsor of participant account balances for Delphi benefit statements.

- Provide Plan participant address files as directed by the Sponsor.

- Conduct employee meetings.

- Mailing of investment educational material.

- Handle Participant Plan inquiries; resolve Participants account discrepancies.


**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By _____ _____
                                  Date

**FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By _____ _____
Vice President              Date

24

## Schedule "B"

### FEE SCHEDULE

Annual Participant Fee:

$__17__ per participant, billed and payable quarterly (fee includes: enrollments by phone fee; loan fee; minimum required distribution fee; in-service withdrawals by phone fee; fee for Plan Sponsor Webstation (PSW); and return of excess contribution fee). *

\* **Fees have been waived by mutual agreement of the parties and shall be reviewed by Fidelity on January 1, 2000.**

Communication & Education Services

Fidelity designs, produces and distributes a customized comprehensive communications program for employees. The program may include multimedia informational materials, investment education and planning materials, access to Fidelity's homepage on the Internet and STAGES magazine. Additional fees for such services as mutually agreed upon between Fidelity and Trustee

Other Fees: separate charges for optional non-discrimination testing, extraordinary expenses resulting from large numbers of simultaneous manual transactions, from errors not caused by Fidelity, reports not contemplated in this Agreement, corporate actions, or extraordinary and/or duplicative expenses associated with electronic services.

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By _[signature]_ 5/26/99
                    Date

**FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By _[signature]_ 6/3/99
Vice President          Date

25

DOL-PSP-001852


**Automotive Systems**

Schedule "C"

Ms. Kimberly McCausland
Fidelity Institutional Retirement Services Company, Inc.
82 Devonshire Street, MM3H
Boston, Massachusetts  02109

Re:    Delphi Savings-Stock Purchase Program
       Delphi Personal Savings Plan
       Delphi Income Security Plan

Dear Ms. McCausland:

This letter is sent to you in accordance with the Recordkeeping Agreement, dated as
of May 28, 1999, between us.  We hereby designate Steven L. Gebbia, Kathryn A.
Lessnau, and Michael S. Fligstein, as the individuals who may provide direction upon
which Fidelity Investments Institutional Operations Company shall be fully protected
in relying.  Only one such individual need provide any direction.  The signature of
each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we
deliver to you written notice of the termination of authority of a designated individual.

Very truly yours,

Michael S. Fligstein
Director, Pension and Welfare Benefits Plans


Steven L. Gebbia
Executive Director, Employee Benefits

Kathryn A. Lessnau
Staff Assistant, Employee Benefits


World Headquarters and Customer Center
5725 Delphi Drive  Troy, Michigan  48098-2815  USA

**DOL-PSP-001853**



**DELPHI**
Automotive Systems

Schedule "C"

Ms. Kimberly McCausland
Fidelity Institutional Retirement Services Company, Inc.
82 Devonshire Street, MM3H
Boston, Massachusetts 02109

Re:   Delphi Savings-Stock Purchase Program
      Delphi Personal Savings Plan
      Delphi Income Security Plan

Dear Ms. McCausland:

This letter is sent to you in accordance with the Recordkeeping Agreement, dated as
of May 28, 1999, between us. We hereby designate Steven L. Gebbia, Kathryn A.
Lessnau, and Michael S. Fligstein, as the individuals who may provide direction upon
which Fidelity Investments Institutional Operations Company shall be fully protected
in relying. Only one such individual need provide any direction. The signature of
each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we
deliver to you written notice of the termination of authority of a designated individual.

Very truly yours,

Michael S. Fligstein
Director, Pension and Welfare Benefits Plans

Steven L. Gebbia
Executive Director, Employee Benefits

Kathryn A. Lessnau
Staff Assistant, Employee Benefits

World Headquarters and Customer Center
5725 Delphi Drive Troy, Michigan 48098-2815 USA

DOL-PSP-001854

Schedule "D"

### EXCHANGE GUIDELINES

The following exchange guidelines are currently employed by Fidelity Investments Institutional Operations Company, Inc. ("FIIOC").

Exchange hours, via a service representative, are 8:30 a.m. (ET) to 12:00 midnight (ET) on each business day. A "business day" is any day on which the New York Stock Exchange ("NYSE") is open.

Exchanges via voice response system (VRS) may be made virtually 24 hours a day.

These telephone procedures may be changed by mutual agreement between Fidelity and the Sponsor. Agreement will not be unreasonably withheld.

Note: The NYSE's normal closing time is 4:00 p.m. (ET); in the event the NYSE alters its closing time, all references below to 4:00 p.m. (ET) shall mean the NYSE closing time as altered.

### I.    Exchange Requests.

Exchanges Between Investment Options.

Participants may call on any business day to exchange between the investment options. If the request is received before 4:00 p.m. (ET), it will receive that day's trade date. Calls received after 4:00 p.m. (ET) will be processed on a next day basis.

### II.    Termination Distributions.

a.    The Plan Administrator will identify to Fidelity the population that is eligible to take a termination withdrawal by phone from the Plan.

b.    At the time such call is made, the eligible participant will communicate to Fidelity the following information:

- That he/she would like to take a termination distribution from the Plan.
- His/her social security number and PIN number (or such other information requested by Fidelity which Fidelity reasonably determines provides adequate verification that the caller is the participant).
- That has been supplied and has read 402(f) notice.

Fidelity will:

- Ask the participant to verify that they have received and read a 402(f) notice.
- Walk the participant through the process and answer any questions that the participant may have.

27

DOL-PSP-001855

- Pre-qualify the participant for a termination distribution.
- Process the participant's termination distribution. Review the instructions conveyed by the participant prior to terminating the call and ask the participant to verbally approve the review.

### III.    Hardship Withdrawals.

a.    The Plan Administrator will identify to Fidelity the population that is eligible to take a hardship withdrawal from the Plan.

b.    At the time such call is made, the eligible participant will communicate to Fidelity Participant Service Representative the following information:

- That he/she would like to take a hardship or modified hardship withdrawal from the Plan.
- His/her social security number and PIN number (or such other information requested by the Fidelity which Fidelity reasonably determines provides adequate verification that the caller is the participant).

Fidelity will:

- Walk the participant through the process and answer any questions that the participant may have.
- Pre-qualify the participant for the withdrawal, based on Government Regulations, Plan rules and/or applicable tax law.
- Process the participant's withdrawal, subject to Plan rules.
- Review the instructions conveyed by the participant prior to terminating the call and ask the participant to verbally approve the review.
- Advise the Plan Administrator via an Electronic Feed into the Administrator's payroll system that the participant has taken a hardship withdrawal.
- Advise the Plan Administrator via an Electronic Feed into the Administrator's payroll system to reinstate the participant's deferral percentage, when appropriate.

### IV.    In-Service Withdrawals.

a.    The Plan Administrator will identify to Fidelity the population that is eligible to take an in-service withdrawal from the Plan.

b.    At the time such call is made, the eligible participant will communicate to Fidelity the following information:

- That he/she would like to take an in-service withdrawal.
- His/her social security number and PIN number (or such other information requested by the Fidelity which Fidelity reasonably determines provides adequate verification that the caller is the participant).

DOL-PSP-001856

Fidelity will:

- Walk the participant through the process and answer any questions that the participant may have.

- Pre-qualify the participant for the withdrawal, based on Plan rules and/or applicable tax law.

## V.    Loan Procedures.

a.    Fidelity in accordance with the terms of the Plan, shall set the interest rate for participant loans. The interest rate for participant loans shall be as reported in the Wall Street Journal as of the last business day of each quarter. The Plan Administrator will identify to Fidelity the population that is eligible to take a loan from the Plan.

b.    At the time such call is made, the eligible participant will communicate to Fidelity the following information:
- That he/she would like to take a loan.
- His/her social security number and PIN number (or such other information requested by the Fidelity which Fidelity reasonably determines provides adequate verification that the caller is the participant).
- That he/she is applying for a regular or primary residence loan.

c.    During the call, Fidelity will:
- Walk the participant through the process and answer any questions that the participant may have.
- Ask the participant to state if he is applying for a regular loan or to purchase a primary residence.
- Determine, based on the current value of the participant's account on the date of the request and any guidelines provided by the Plan Administrator, the amount available for the loan.
- Advise the participant of the interest rate and the installment payment amounts.
- Process the participant's loan request, subject to Plan rules.
- Review the instructions conveyed by the participant prior to terminating the call and ask the participant to verbally approve the review.
- Inform the participant that the instruction to sell assets of his Account to facilitate the loan become irrevocable at the conclusion of the Business Day.

d.    Fidelity shall distribute to the participant the loan note with the proceed check and the truth-in-lending disclosure statement. Fidelity will collect the loan repayment information and electronically inform the acting payroll vendor of the loan repayment schedule according to a previously agreed upon schedule. The payroll vendor will then make the appropriate deductions on behalf of the participant.

29

DOL-PSP-001857

e.    To facilitate recordkeeping, Fidelity may destroy the original of any promissory note made in connection with a loan to a participant under the Plan, provided that Fidelity first creates a duplicate by a photographic or optical scanning or other process yielding a reasonable facsimile of the promissory note and the Plan participant's signature-thereon, which duplicate shall be treated as the original for all purposes.

f.    Fidelity shall maintain plan loan records, process loan withdrawals, prepare and deliver comprehensive reports for the administration of the participant loans, and report loan activity on participant statements. Fidelity shall deliver loan coupon books to participants who are terminated or retired.

## VI.    Telephone Exchange Procedures for Enrollment. Deferral Changes. and Investment Elections

a.    Enrollment.

Fidelity will identify the population that is eligible to enroll in the PSP and S-SPP Plans. The Plan Administrator will identify to Fidelity the population that is eligible to enroll in the ISP Plan. At that time, the eligible employee will instruct Fidelity to defer/deduct a percentage of payroll, subject to Plan rules, and provide investment instructions for that deferral.

Fidelity will collect the enrollment information and electronically notify the payroll vendor of the enrollment according to a previously agreed upon schedule.

The Plan Administrator will then cause the Sponsor to make the appropriate payroll deductions on behalf of the employee.

b.    Deferral Changes.

Any participant may call the applicable Fidelity telephone number to change his deferral (contribution) percentage for contributions to the Plan. Fidelity shall verify the participant's social security number and PIN number (or such other information requested by Fidelity which Fidelity reasonably determines provides adequate verification that the caller is the participant). The participant will instruct Fidelity to change the percentage currently deducted from payroll, subject to Plan limits.

Fidelity will collect the deferral (contribution) percentage change and electronically inform the Plan Administrator of the deferral percentage change according to a previously agreed upon schedule.

• The Plan Administrator will then cause the Sponsor to make the appropriate payroll adjustments on behalf of the employee.

DOL-PSP-001858

c.    Investment Elections.

Participants may call the applicable Fidelity number to change investment elections among the available investment options. The participant shall state their social security number and PIN number (or such other information as Fidelity reasonably determines is necessary to verify that the caller is the participant). The participant shall then provide Fidelity with their investment instructions; if the request is received before 4:00 p.m. (ET), it will receive that day's trade date. Calls received after 4 p.m. (ET) will be processed on a next business day basis.

d.    General.

- Fidelity will mail to the participant written confirmation of each of the above transactions within 1-5 business days of such transaction.
- Fidelity will provide to the Plan Administrator, on a weekly or on a semimonthly basis as applicable, an electronic deferral percentage change and enrollment feedback file which details any changes to current payroll deductions.

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By _____  5/26/99
                                    Date

**FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By _____  6/3/99
    Vice President                Date

31

Schedule "F"

## Processing of Qualified Domestic Relations Orders ("QDRO"s)

Fidelity shall determine whether domestic relations orders ("DRO"), issued by a court of competent jurisdiction, are "qualified" under section 414(p) of the Internal Revenue Code and section 206(d) of ERISA. In conjunction with making this determination, Fidelity shall provide the following services in accordance with the Sponsor's written administrative guidelines for processing QDROs:

- Upon receipt of the DRO, Fidelity shall notify the participant, alternate payee(s) and their legal representatives, if any, and shall segregate that portion of a participant's account necessary to satisfy the DRO while the determination is made;

- After completing a review, Fidelity shall provide notification to the affected parties of whether the DRO is qualified and, if not qualified, the reason(s) for the DRO's failure to be qualified;

- If the DRO is determined to be a QDRO, the alternate payee(s) shall be notified, which notification shall also include information regarding distribution of the account balance;

- Distribution of that portion of the account balance, as specified in the QDRO, to the alternate payee(s) and the appropriate federal and state withholding and reporting on such a distribution.

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By: _[signature]_ _5/26/99_
                                      Date

**FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By: _[signature]_ _6/3/99_
Vice President                        Date

31

32

### SCHEDULE "G"

### Client Service Performance Standards

| PARTICIPANT REPORTING | STANDARDS |
|---|---|
| Participant Statements | Mailed within 25 calendar days of statement period end. |
| Transaction Confirmations for Investment Direction, Transfer (Exchanges), Contribution Rate Changes (Deferrals), PIN | Mailed within 1 - 5 business days of transactions processing. |
| Withdrawals checks and distribution reports | Mailed within 1 - 5 business days of processing. |
| Problem Resolution Items (PEGA) | Resolution within an average of 1 - 5 business days with the exception of QDRO's, Death Benefits, etc. |
| 402(f) Notice | Provided to participants prior to the processing of all Plan distributions. |
| Participant Telephones | Percentage of calls answered with standard: 90% delay before answering calls: 4 rings, 20 second maximum daily abandoned call rate: 3% |

| PLAN REPORTING | STANDARDS |
|---|---|
| Monthly Trial Balance | Mailed within 20 calendar days after close of month. |
| Statistical Report Package | Mailed within 7-12 days after close of month. |
| Ad Hoc Reports | Mailed within 1 - 5 business days of processing. |
| Ad Hoc Files/Tapes | Provided within 14-21 business days after day of request. |
| Client Billing | Provide invoice within 30-35 days of quarter end. |
| Annual Financial Data | Provided within 90 calendar days after year end. |

FIRSCO's Client Service Standards are reviewed annually, therefore, the table above is merely representative of the client service goals that will be in effect during 1999.

FIRSCO's Client Service Standards begin to be utilized as performance measurement tool approximately 8-12 weeks after the transition period has ended.

Statement, confirms, and reports will be provided in the standard Fidelity format.

DELPHI AUTOMOTIVE SYSTEMS
CORPORATION

By: _____ 6/21/99
                                Date

FIDELITY INSTITUTIONAL RETIREMENT
SERVICES COMPANY

By: _____ 6/28/99
Vice President                  Date

33

DOL-PSP-001861

SCHEDULE "H"

### FLEXIBLE DIVIDEND PASS THROUGH
### PROGRAM OPERATING PROCEDURES

The Sponsor and Fidelity hereby agree that the Flexible Dividend Pass Through Program shall be administered in accordance with the following procedures:

1. Fidelity shall determine the amount of any dividends attributable to each participant invested in Sponsor Stock on the ex-dividend date as follows:  Fidelity shall calculate the dividend (if any) per unit in the fund by dividing the total dividend received on shares held by the fund by the total number of units outstanding on ex-dividend date. The amount of any dividend attributable to each participant shall be determined by multiplying the dividend per unit by the amount of units held by each participant on ex-dividend date.

2. On the applicable ex-dividend date, Fidelity shall accrue a dividend receivable and a dividend distribution payable from Sponsor Stock fund.

3. On the dividend payment date, Fidelity shall:

    (a)    With respect to both active and inactive participants who have elected to receive their  dividends in cash, pay such dividends directly to such participants from the Sponsor Stock fund.

    (b)    With respect to participants who elect to have their dividends reinvested, Fidelity shall retain such amounts in the Sponsor Stock fund and will allocate additional units of the fund to such participants in proportion to the amount of dividends attributable to their accounts.  The number of units to be allocated to each such participant shall be determined using the NAV of the Sponsor Stock fund on payment date.

4. Participants may choose between the following elections under this Flexible Dividend Pass Through Program:

    (a)    A participant may elect to reinvest 100% of the dividend; or

    (b)    A participant may elect to receive 50% of the dividend in cash, and reinvest the remaining 50% of the dividend; or

    (c)    A participant may elect to receive 100% of the dividend in cash.

5. If dividends attributable to a participant with respect to a Sponsor Stock fund are $10.00 or less for a given dividend payment, Fidelity shall disregard the participant's election and shall reinvest the dividends in the fund as if the participant had so elected.

6. In the absence of valid participant direction, any dividends attributable to such participant shall be reinvested in the Sponsor Stock fund as if the participant had so elected.

34

DOL-PSP-001862

7. After the initial election, participants who wish to change their election to receive a cash dividend or reinvest such dividend, shall make such change by telephone, in accordance with the Exchange Guidelines.

8. Dividends on former Employer securities shall be redirected, after the dividend payment date, to the Income Fund.

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By: _____ 5/26/99
                                    /Date

**FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By: _____ 6/3/99
    Vice President/              /Date

35

**DOL-PSP-001863**



October 24, 2000

Mr. Michael Fligstein, Director
Delphi Automotive Systems Corporation
Mail Code 480-414-456
1450 W. Long Lake Road
Troy, MI  48098

RE:  The Delphi Personal Savings Plan & The Delphi Savings – Stock Purchase Program – Addition of
Fidelity Freedom 2040 Fund

Dear Mike:

This letter relates to the plan investment options available under the Recordkeeping Agreement (the
"Agreement") between *(Delphi Automotive Systems Corporation)* (the "Sponsor") and *Fidelity
Investments Institutional Operations Company, Inc. or Fidelity Institutional Retirement Services
Company* ("Fidelity") for the above-referenced Plans.  The list of Plan investment options includes
several Fidelity Freedom Funds which have 1996 inception dates.  A new fund, the Fidelity Freedom
Fund 2040, was opened with an inception date of September 6, 2000 for initial public investment on
September 7, 2000.

Fidelity and the Sponsor hereby agree that the Fidelity Freedom 2040 Fund shall be available as a plan
investment option under the terms of the Agreement as soon as administratively feasible, but not prior to
September 7, 2000, upon execution of this authorization by a duly authorized officer of the Sponsor.

Sincerely,

*(signature)*

Client Services Manager

Accepted and Agreed by: Michael S. Fligstein
(Name of Client)

*(signature)*
(Signature)

Director, Pension and Welfare
(Title) Benefit Plans

326621 V2     Fidelity Investments Institutional     P.O. Box 9029
              Operations Company, Inc.               Boston, MA 02205-8631

DOL-PSP-001864



March 28, 2000

**Via Overnight Delivery**

Mr. Michael S. Fligstein
Delphi Automotive Systems
World Headquarters and Customer Center
5725 Delphi Drive
Troy, MI 48098-2815

Re:    The Delphi Savings-Stock Purchase Program
       The Delphi Personal Savings Plan
       The Delphi Income Security Plan

Dear Mr. Fligstein:

Enclosed for your files, please find one fully-executed original of the First Amendment to the Recordkeeping Agreement.

Please contact Sarah Mullins should you have any questions regarding this document. She can be reached at (508) 787-8123.

Sincerely,

*Julie A. Garick*

Julie A. Garick
Contracts Administration Assistant

/jag

Enclosure

cc:    Rita Modi, MM3I
       Bob Shafto, MM2M2

Fidelity Investments Institutional        300 Puritan Way MM3H
Operations Company, Inc.                  Marlborough, MA 01752-3078

DOL-PSP-001865

**FIRST AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN
FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY AND
DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

THIS FIRST AMENDMENT, dated as of the First day of April, 2000, by and between Fidelity
Institutional Retirement Services Company ("Fidelity") and Delphi Automotive Systems Corporation
(the "Sponsor");

**WITNESSETH:**

WHEREAS, Fidelity and the Sponsor heretofore entered into a Recordkeeping and
Administrative Services Agreement dated May 28, 1999, with regard to The Delphi Savings-Stock
Purchase Program, The Delphi Personal Savings Plan, and The Delphi Income Security
Plan,(collectively and individually, the "Plan"); and

WHEREAS, the Sponsor now desires, and hereby directs Fidelity, in accordance with Section
2 of the Recordkeeping and Administrative Services Agreement, to transfer all participant balances in
the Delphi Savings-Stock Purchase Program invested in the Fidelity Government Income Fund to the
Spartan Government Income Fund and from the Fidelity Investment Grade Bond Fund to the Spartan
Investment Grade Fund; to transfer all participant balances in Delphi Personal Savings Plan invested in
the Balanced Fund to the Promark Balanced Fund, from the Fidelity Government Income Fund to the
Spartan Government Income Fund, and from the Fidelity Investment Grade Bond Fund to the Spartan
Investment Grade Fund. The parties hereto agree that Fidelity shall have no discretionary authority
with respect to this transfer directed by the Sponsor. Any variation from the procedure described
herein may be instituted only at the express written directions of the Sponsor; and;

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as
provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby
amend the Recordkeeping Agreement by:

(1)     Amending Section 5, Outside Funds, by restating it, in its entirety, as follows:

Section 5. Outside Funds. The Sponsor hereby directs that participants in the Plan
may invest in the following Outside Funds in accordance with Plan terms: Promark
Income Fund, Promark Balanced Fund, Promark Large Cap Index Fund, GM $1-2/3
Par Value Common Stock Fund, EDS Common Stock Fund, GM Class H Common
Stock Fund, Delphi Common Stock Fund, Raytheon Class "A" Common Stock Fund,
Promark Large Cap Blend Fund, Promark Large Cap Growth Fund, Promark Large
Cap Value Fund, Promark Mid Cap Growth Fund, Promark Small Cap Growth Fund,
Promark Small Cap Value Fund, Promark High Quality Bond Fund, Promark High
Yield Bond Fund, Promark International Equity Fund, Promark Emerging Markets
Equity Fund, Promark Real Estate Securities Fund, Promark Target Portfolio: Income,
Promark Target Portfolio: Conservative Growth, Promark Target Portfolio: Moderate
Growth, and Promark Target Portfolio: Dynamic Growth, Promark Social Equity.
Fidelity shall recordkeep these investment options in accordance with the operating
procedures attached hereto as Schedule "E". All transactions involving the Domini

DOL-PSP-001866

Social Equity Index Fund and the Neuberger Berman Socially Responsive Trust shall
be done in accordance with the Operational Guidelines attached hereto as Schedule "I".

(2)    Amending Schedule "A" as follows:

### For the Delphi Savings - Stock Purchase Program:
*    **Recordkeeping for the following plan investment options:**
  - Fidelity Fund
  - Fidelity Puritan Fund
  - Fidelity Trend Fund
  - Fidelity Magellan Fund
  - Fidelity Contrafund
  - Fidelity Equity-Income Fund
  - Fidelity Growth Company Fund
  - Fidelity Growth & Income Portfolio
  - Fidelity Capital & Income Fund
  - Fidelity Value Fund
  - Fidelity Retirement Growth Fund
  - Fidelity OTC Portfolio
  - Fidelity Overseas Fund
  - Fidelity Europe Fund
  - Fidelity Pacific Basin Fund
  - Fidelity Real Estate Investment Portfolio
  - Fidelity Balanced Fund
  - Fidelity International Growth & Income Fund
  - Fidelity Capital Appreciation Fund
  - Fidelity Convertible Securities Fund
  - Fidelity Canada Fund
  - Fidelity Utilities Fund
  - Fidelity Blue Chip Growth Fund
  - Fidelity Asset Manager
  - Fidelity Disciplined Equity Fund
  - Fidelity Low-Priced Stock Fund
  - Fidelity Worldwide Fund
  - Fidelity Equity-Income II Fund
  - Fidelity Stock Selector
  - Fidelity Asset Manager: Growth
  - Fidelity Emerging Markets Fund
  - Fidelity Aggressive Growth Fund
  - Fidelity Diversified International Fund
  - Fidelity Asset Manager: Income
  - Fidelity Dividend Growth Fund
  - Fidelity New Markets Income Fund
  - Fidelity Export & Multinational Fund
  - Fidelity Global Balanced Fund
  - Fidelity Small Cap Selector
  - Fidelity Mid-Cap Stock Fund
  - Fidelity Freedom Income Fund

DOL-PSP-001867

- Fidelity Freedom 2000 Fund
- Fidelity Freedom 2010 Fund
- Fidelity Freedom 2020 Fund
- Fidelity Freedom 2030 Fund
- Fidelity International Bond
- Fidelity Fifty
- Spartan Government Income Fund
- Spartan Investment Grade Fund
- Delphi Common Stock Fund
- GM Common Stock Fund
- GM Class H Stock
- EDS Stock
- Raytheon Class A Stock
- Promark Large Cap Index
- Promark Income Fund
- Promark Large Cap Blend
- Promark Large Cap Growth
- Promark Large Cap Value
- Promark Mid Cap Blend
- Promark Small Cap Growth
- Promark Small Cap Value
- Promark International Equity
- Promark Emerging Markets Equity
- Promark High Quality Bond
- Promark High Yield Bond
- Promark Real Estate
- Promark Target Portfolio:  Income
- Promark Target Portfolio:  Conservative Growth
- Promark Target Portfolio:  Moderate
- Promark Target Portfolio:  Dynamic
- Promark Balanced
- Promark Social Equity Fund
- Domini Social Equity Index Fund
- Neuberger Berman Socially Responsive Trust

## For the Delphi Personal Savings Plan:
* **Recordkeeping for the following plan investment options:**
  - Fidelity Fund
  - Fidelity Puritan Fund
  - Fidelity Trend Fund
  - Fidelity Magellan Fund
  - Fidelity Contrafund
  - Fidelity Equity-Income Fund
  - Fidelity Growth Company Fund
  - Fidelity Growth & Income Portfolio
  - Fidelity Value Fund
  - Fidelity Retirement Growth Fund
  - Fidelity OTC Portfolio

DOL-PSP-001868

- Fidelity Overseas Fund
- Fidelity Europe Fund
- Fidelity Pacific Basin Fund
- Fidelity Real Estate Investment Portfolio
- Fidelity Balanced Fund
- Fidelity International Growth & Income Fund
- Fidelity Capital Appreciation Fund
- Fidelity Convertible Securities Fund
- Fidelity Canada Fund
- Fidelity Utilities Fund
- Fidelity Capital & Income Fund
- Fidelity Emerging Markets Fund
- Fidelity New Markets Fund
- Fidelity Blue Chip Growth Fund
- Fidelity Asset Manager
- Fidelity Disciplined Equity Fund
- Fidelity Low-Priced Stock Fund
- Fidelity Worldwide Fund
- Fidelity Equity-Income II Fund
- Fidelity Stock Selector
- Fidelity Aggressive Growth Fund
- Fidelity Asset Manager: Growth
- Fidelity Diversified International Fund
- Fidelity Asset Manager: Income
- Fidelity Dividend Growth Fund
- Fidelity Export & Multinational Fund
- Fidelity Global Balanced Fund
- Fidelity Small Cap Selector
- Fidelity Mid-Cap Stock Fund
- Fidelity Freedom Income Fund
- Fidelity Freedom 2000 Fund
- Fidelity Freedom 2010 Fund
- Fidelity Freedom 2020 Fund
- Fidelity Freedom 2030 Fund
- Fidelity International Bond
- Fidelity Fifty
- Spartan Government Income Fund
- Spartan Investment Grade Bond Fund
- Delphi Common Stock Fund
- GM Common Stock Fund
- GM Class H Stock
- EDS Stock
- Raytheon Class A Stock
- Promark Large Cap Index
- Promark Income Fund
- Promark Large Cap Blend
- Promark Large Cap Growth
- Promark Large Cap Value
- Promark Mid Cap Blend

DOL-PSP-001869

- Promark Small Cap Growth
- Promark Small Cap Value
- Promark International Equity
- Promark Emerging Markets Equity
- Promark High Quality Bond
- Promark High Yield Bond
- Promark Real Estate
- Promark Target Portfolio: Income
- Promark Target Portfolio: Conservative Growth
- Promark Target Portfolio: Moderate
- Promark Target Portfolio: Dynamic
- Promark Balanced
- Promark Social Equity Fund
- Domini Social Equity Index Fund
- Neuberger Berman Socially Responsive Trust

(3)   Adding Schedule "J", Operational Guidelines for the Non-Promark outside funds, as attached hereto.

(4)   Amending Schedule "B" by adding "Non-Fidelity Mutual Funds" as follows:

| Non-Fidelity (non-ProMark) Mutual Funds: | Non-Fidelity Mutual Fund vendor shall pay service fees directly to Fidelity Institutional Retirement Services Company equal to a percentage (generally 25 or 35 basis points) of plan assets invested in such Non-Fidelity Mutual Funds. |

   IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this First Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By: _____
                        3/30/00   Date

**FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By: _____  3/24/00
       Vice President                    Date

DOL-PSP-001870

**Schedule "J"**

## OPERATIONAL GUIDELINES FOR NON-FIDELITY (NON-PROMARK) MUTUAL FUNDS

**Pricing**

By 7:00 p.m. Eastern Time ("ET") each Business Day, the Non-Fidelity Mutual Fund Vendor
(Fund Vendor) will input the following information ("Price Information") into the Fidelity
Participant Recordkeeping System ("FPRS") via the remote access price screen that Fidelity
Investments Institutional Operations Company, Inc. ("FIIOC"), an affiliate of the Trustee, has
provided to the Fund Vendor: (1) the net asset value for each Fund at the Close of Trading, (2)
the change in each Fund's net asset value from the Close of Trading on the prior Business Day,
and (3) in the case of an income fund or funds, the daily accrual for interest rate factor ("mil
rate"). FIIOC must receive Price Information each Business Day (a "Business Day" is any day
the New York Stock Exchange is open). If on any Business Day the Fund Vendor does not
provide such Price Information to FIIOC, FIIOC shall pend all associated transaction activity in
the Fidelity Participant Recordkeeping System ("FPRS") until the relevant Price Information is
made available by Fund Vendor.

**Trade Activity and Wire Transfers**

By 7:00 a.m. ET each Business Day following Trade Date ("Trade Date plus One"), FIIOC will
provide, via facsimile, to the Fund Vendor a consolidated report of net purchase or net redemption
activity that occurred in each of the Funds up to 4:00 p.m. ET on the prior Business Day. The
report will reflect the dollar amount of assets and shares to be invested or withdrawn for each Fund.
FIIOC will transmit this report to the Fund Vendor each Business Day, regardless of processing
activity. In the event that data contained in the 7:00 a.m. ET facsimile transmission represents
estimated trade activity, FIIOC shall provide a final facsimile to the Fund Vendor by no later than
9:00 a.m. ET. Any resulting adjustments shall be processed by the Fund Vendor at the net asset
value for the prior Business Day.

The Fund Vendor shall send via regular mail to FIIOC transaction confirms for all daily activity
in each of the Funds. The Fund Vendor shall also send via regular mail to FIIOC, by no later
than the fifth Business Day following calendar month close, a monthly statement for each Fund.
FIIOC agrees to notify the Fund Vendor of any balance discrepancies within twenty (20) Business
Days of receipt of the monthly statement.

Delphi
First Amendment

6

DOL-PSP-001871

For purposes of wire transfers, FIIOC shall transmit a daily wire for aggregate purchase activity and the Fund Vendor shall transmit a daily wire for aggregate redemption activity, in each case including all activity across all Funds occurring on the same day.

## Participant Communications

The Fund Vendor shall provide internally-prepared fund descriptive information approved by the Funds' legal counsel for use by FIIOC in its written participant communication materials. FIIOC shall utilize historical performance data obtained from third-party vendors (currently Morningstar, Inc., FACTSET Research Systems and Lipper Analytical Services) in telephone conversations with plan participants and in quarterly participant statements. The Sponsor hereby consents to FIIOC's use of such materials and acknowledges that FIIOC is not responsible for the accuracy of such third-party information. FIIOC shall seek the approval of the Fund Vendor prior to retaining any other third-party vendor to render such data or materials under this Agreement.

## Compensation

FIIOC shall be entitled to fees as set forth in a separate agreement with the Fund Vendor.

DOL-PSP-001872



October 11, 2000

Kathryn Lessnau
Delphi Automotive Systems
1450 W. Long Lake Road
Troy, MI 48098

**Re:**   **Delphi Savings-Stock Purchase Program**
**Delphi Personal Savings Plan**
**Delphi Income Security Plan**

Dear Ms. Lessnau:

Enclosed please find one fully-executed original of the Second Amendment to the Trust
Agreement for your files.

Please call Kelli Birtwell with any questions regarding this document.  She can be reached at
(508) 787-8971.

Sincerely,

Danielle Wagner
Contracts Administration Assistant

/dw

Enclosure

cc:    Erin Delaney, H11B
       Anne Emerson, TS2B
       Mary Drake, H11D
       Rita Modi, MM3I
       Bob Shafto, MM2M2

Fidelity Investments Institutional          300 Puritan Way MM3H
Operations Company, Inc.                     Marlborough, MA 01752-3078

DOL-PSP-001873

**SECOND AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN
FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY AND
DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

THIS SECOND AMENDMENT dated as of the thirtieth day of September, by and between
Fidelity Institutional Retirement Services Company ("Fidelity") and Delphi Automotive Systems
Corporation (the "Sponsor");

**WITNESSETH:**

WHEREAS, Fidelity and the Sponsor heretofore entered into a Recordkeeping and
Administrative Services Agreement dated May 28, 1999, with regard to the Delphi Savings-Stock
Purchase Program, the Delphi Personal Savings Plan, and the Delphi Income Security Plan,
(collectively and individually, the "Plan"); and

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as
provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby
amend the Recordkeeping Agreement by:

(1)     Amending the "General Administrative Services" Section of Schedule "A" by adding
the following:

- Eligibility Processing

IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this Second Amendment to be
executed by their duly authorized officers effective as of the day and year first above written.

**DELPHI AUTOMOTIVE SYSTEMS
CORPORATION**

**FIDELITY INSTITUTIONAL RETIREMENT
SERVICES COMPANY**

By: _Kathryn Lissman_  10/4/00     By: _Carolyn Redden_  10/9/00
                              **Date**     Vice President                **Date**

DOL-PSP-001874

# DELPHI
## Automotive Systems

Date:       October 31, 2000

To:         Bob Shafto              Fax:        508.787.9656

                                    Phone:      508.787.8307

From:       Kathy Lessnau          Fax:        248.267.5772

                                    Phone:      248.267.5608


Subject:
Bob,

Here is the Recordkeeping Agreement amendment.  Thanks.


c:


Number of pages including cover sheet:  **2**

Problems with the receipt of this transmission, contact:       Kathy Lessnau

---

Urgent                          xFor Review                    ☐ Please Reply

DOL-PSP-001875





October 24, 2000

Mr. Michael Fligstein, Director
Delphi Automotive Systems Corporation
Mail Code 480-414-456
1450 W. Long Lake Road
Troy, MI  48098

RE:  The Delphi Personal Savings Plan & The Delphi Savings – Stock Purchase Program – Addition of
Fidelity Freedom 2040 Fund

Dear Mike:

This letter relates to the plan investment options available under the Recordkeeping Agreement (the
"Agreement") between *(Delphi Automotive Systems Corporation)* (the "Sponsor") and *Fidelity
Investments Institutional Operations Company, Inc. or Fidelity Institutional Retirement Services
Company* ("Fidelity") for the above-referenced Plans.  The list of Plan investment options includes
several Fidelity Freedom Funds which have 1996 inception dates.  A new fund, the Fidelity Freedom
Fund 2040, was opened with an inception date of September 6, 2000 for initial public investment on
September 7, 2000.

Fidelity and the Sponsor hereby agree that the Fidelity Freedom 2040 Fund shall be available as a plan
investment option under the terms of the Agreement as soon as administratively feasible, but not prior to
September 7, 2000, upon execution of this authorization by a duly authorized officer of the Sponsor.

Sincerely,

Client Services Manager

Accepted and Agreed by: Michael S. Fligstein
(Name of Client)

(Signature)

Director, Pension and Welfare
(Title) Benefit Plans

326621V2    Fidelity Investments Institutional      P.O. Box 9029
            Operations Company, Inc.                Boston, MA 02205-8631

DOL-PSP-001876

### THIRD AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY AND DELPHI AUTOMOTIVE SYSTEMS CORPORATION

THIS THIRD AMENDMENT dated as of the first day of January, 2001, by and between Fidelity Institutional Retirement Services Company ("Fidelity"), Delphi Automotive Systems Corporation ("Delphi Sponsor")and ASEC Manufacturing ("ASEC Sponsor");

#### WITNESSETH:

WHEREAS, Fidelity and the Delphi Sponsor heretofore entered into a Recordkeeping and Administrative Services Agreement dated May 28, 1999, with regard to the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan, and the Delphi Income Security Plan, (collectively and individually, the "Delphi Plan"); and

WHEREAS, ASEC Manufacturing is a wholly owned subsidiary of the Delphi Sponsor and is the Sponsor of the ASEC Manufacturing Savings Plan; and

WHEREAS, the Delphi Sponsor has directed Fidelity to accept and hold the assets of the ASEC Manufacturing Savings Plan, effective January 1, 2001, in accordance with the terms of this Agreement; and

WHEREAS, Fidelity and the Delphi Sponsor now desire to amend said Recordkeeping Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity, the Delphi Sponsor and the ASEC Sponsor hereby amend the Recordkeeping Agreement by:

1.  Amending and restating the first WHEREAS clause in the recitals portion of the Agreement as follows:

    WHEREAS, the Delphi Sponsor is the sponsor (within the meaning of Section 3(16)(B) of the Employee Retirement Income Security Act of 1974, as amended ["ERISA"]) of the Delphi Savings-Stock Purchase Program ("S-SPP"), the Delphi Income Security Plan ("ISP"), the Delphi Personal Savings Plan ("PSP") and ASEC Manufacturing ("ASEC") is the sponsor of the ASEC Manufacturing Savings Plan (the "ASEC Plan"), (collectively and individually, the "Plan"); and

2.  Amending Section 5, Outside Funds, by adding the following to the list of investment options for the ASEC Plan:

    Honeywell Stock

DOL-PSP-001877

3.      Amending Schedule "A" by adding the following:

<u>**For the ASEC Manufacturing Savings Plan:**</u>

*   **Recordkeeping for the following plan investment options:**

*   Fidelity Fund
*   Fidelity Puritan Fund
*   Fidelity Trend Fund
*   Fidelity Magellan Fund
*   Fidelity Contrafund
*   Fidelity Equity-Income Fund
*   Fidelity Growth Company Fund
*   Fidelity Growth & Income Portfolio
*   Fidelity Value Fund
*   Fidelity Retirement Growth Fund
*   Fidelity OTC Portfolio
*   Fidelity Overseas Fund
*   Fidelity Europe Fund
*   Fidelity Pacific Basin Fund
*   Fidelity Real Estate Investment Portfolio
*   Fidelity Balanced Fund
*   Fidelity International Growth & Income Fund
*   Fidelity Capital Appreciation Fund
*   Fidelity Convertible Securities Fund
*   Fidelity Canada Fund
*   Fidelity Utilities Fund
*   Fidelity Capital & Income Fund
*   Fidelity Emerging Markets Fund
*   Fidelity New Markets Fund
*   Fidelity Blue Chip Growth Fund
*   Fidelity Asset Manager
*   Fidelity Disciplined Equity Fund
*   Fidelity Low-Priced Stock Fund
*   Fidelity Worldwide Fund
*   Fidelity Equity-Income II Fund
*   Fidelity Stock Selector
*   Fidelity Aggressive Growth Fund
*   Fidelity Asset Manager: Growth
*   Fidelity Diversified International Fund
*   Fidelity Asset Manager: Income
*   Fidelity Dividend Growth Fund
*   Fidelity Export & Multinational Fund
*   Fidelity Global Balanced Fund
*   Fidelity Small Cap Selector
*   Fidelity Mid-Cap Stock Fund
*   Fidelity Freedom Income Fund
*   Fidelity Freedom 2000 Fund
*   Fidelity Freedom 2010 Fund
*   Fidelity Freedom 2020 Fund

DOL-PSP-001878

- Fidelity Freedom 2030 Fund
- Fidelity International Bond
- Fidelity Fifty
- Spartan Government Income Fund
- Spartan Investment Grade Bond Fund
- Delphi Common Stock Fund
- Honeywell Stock
- Promark Large Cap Index
- Promark Income Fund
- Promark Large Cap Blend
- Promark Large Cap Growth
- Promark Large Cap Value
- Promark Mid Cap Blend
- Promark Small Cap Growth
- Promark Small Cap Value
- Promark International Equity
- Promark Emerging Markets Equity
- Promark High Quality Bond
- Promark High Yield Bond
- Promark Real Estate
- Promark Target Portfolio:  Income
- Promark Target Portfolio:  Conservative Growth
- Promark Target Portfolio:  Moderate
- Promark Target Portfolio:  Dynamic
- Promark Balanced
- Promark Social Equity Fund
- Domini Social Equity Index Fund
- Neuberger Berman Socially Responsive Trust

**\* Recordkeeping for the following money classifications:**

- Before Tax
- After Tax
- Match
- QVEC
- Rollover

4.    Amending and restating the Loans portion of Schedule "A" as follows:

LOANS – For the Delphi Personal Savings Plan, the Delphi Savings-Stock Purchase Program and the ASEC Manufacturing Savings Plan only:

5.    Amending the Distributions portion of Schedule "A" by restating the first paragraph and adding a new bullet point as follows:

DISTRIBUTIONS – For the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan and the ASEC Manufacturing Savings Plan only:

DOL-PSP-001879

- The flexible dividend program shall not apply to the ASEC Manufacturing Savings Plan.

6. Amending the General Administrative Services portion of Schedule "A" by adding the following:

- Automatic Enrollment

IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this Third Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**DELPHI AUTOMOTIVE SYSTEMS**
**CORPORATION**

By: _____
                                    Date

**FIDELITY INSTITUTIONAL RETIREMENT**
**SERVICES COMPANY**

By: _____ 2/16/01
Vice President                     Date

**ASEC MANUFACTURING**

BY: _____
                DATE  12/21/00

Delphi
Third Amendment - LPS

4

DOL-PSP-001880

**FOURTH AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN
FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY, DELPHI
AUTOMOTIVE SYSTEMS CORPORATION AND ASEC MANUFACTURING**

THIS FOURTH AMENDMENT dated as of the 17th day of January, 2002, by and between
Fidelity Institutional Retirement Services Company ("Fidelity"), Delphi Automotive Systems
Corporation ("Delphi Sponsor") and ASEC Manufacturing ("ASEC Sponsor")(collectively and
individually, the "Sponsor");

WITNESSETH:

WHEREAS, Fidelity and the Sponsor heretofore entered into a Recordkeeping and
Administrative Services Agreement dated May 28, 1999, with regard to the Delphi Savings-Stock
Purchase Program, the Delphi Personal Savings Plan, and the Delphi Income Security Plan; amended
January 1, 2001, to add the ASEC Manufacturing Savings Plan ("ASEC Plan") (collectively and
individually, the "Plan"); and

WHEREAS, the Fidelity International Bond Fund will merge with and into the Fidelity Strategic
Income Fund; and

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as
provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby
amend the Recordkeeping Agreement by:

(1)    **For the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan
and the ASEC Manufacturing Savings Plan only,** amending the "investment options"
section of Schedule "A", to delete the following:
   - Fidelity International Bond Fund

(2)    **For the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan
and the ASEC Manufacturing Savings Plan only,** amending the "investment options"
section of Schedule "A", to add the following:
   - Fidelity Strategic Income Fund

IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this Fourth Amendment to be
executed by their duly authorized officers effective as of the day and year first above written.

**DELPHI AUTOMOTIVE SYSTEMS
CORPORATION**

By _____ /31/02
                    Date

**ASEC MANUFACTURING**

By: _____
                    Date

Delphi Automotive/ASEC Manufacturing
Fourth Amendment
LPS/Q/RK

**FIDELITY INSTITUTIONAL RETIREMENT
SERVICES COMPANY**

By: _____ 8/13/02
Vice President                    Date
~~or its Authorized Signatory~~

~~Roberta Coen~~

By: _____ 8/14/2002
Vice President                    Date

DOL-PSP-001881

**FIFTH AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN
FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY, DELPHI
AUTOMOTIVE SYSTEMS CORPORATION AND ASEC MANUFACTURING**

THIS FIFTH AMENDMENT dated as of the 20th day of September, 2002, by and between
Fidelity Institutional Retirement Services Company ("Fidelity"), Delphi Automotive Systems
Corporation ("Delphi Sponsor") and ASEC Manufacturing ("ASEC Sponsor") (collectively and
individually, the "Sponsor");

**WITNESSETH:**

WHEREAS, Fidelity and the Sponsor heretofore entered into a Recordkeeping Agreement dated
May 28, 1999, with regard to the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings
Plan, and the Delphi Income Security Plan; amended January 1, 2001, to add the ASEC Manufacturing
Savings Plan ("ASEC Plan") (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor now desires, and hereby directs the Trustee, in accordance with Section
2, to liquidate all participant balances held in Honeywell Stock on September 20, 2002, and to invest the
proceeds in the Promark Income Fund. The parties hereto agree that Fidelity shall have no discretionary
authority with respect to this sale and transfer directed by the Sponsor. Any variation from the procedure
described herein may be instituted only at the express written directions of the Sponsor; and

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as
provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby
amend the Recordkeeping Agreement by:

(1)     **For ASEC Manufacturing Savings Plan only**, amending Section 5, <u>Outside Funds</u>, and
the "investment options" section of Schedule "A" to delete the following:

- Honeywell Stock

(2)     Restating the "Non-Fidelity Mutual Funds" section of Schedule "B", in its entirety, as
follows:

| | |
|---|---|
| Non-Fidelity Mutual Funds: | Non-Fidelity Mutual Fund vendors shall pay fees directly to Fidelity or its affiliates equal to such percentage (generally 25 to 50 basis points) of Plan assets invested in such Non-Fidelity Mutual Funds as may be disclosed periodically. |

Delphi Automotive/ASEC Manufacturing (LPS)
Fifth Amendment/RK

**DOL-PSP-001882**

> Unless otherwise noted, disclosure shall be
> posted and updated quarterlyon Plan Sponsor
> Webstation at https//psw.fidelity.com or a
> successor site.

IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this Fifth Amendment to be
executed by their duly authorized officers effective as of the day and year first above written.

**DELPHI AUTOMOTIVE SYSTEMS**
**CORPORATION**

By: _____
      9/13/02      Date

**FIDELITY INSTITUTIONAL RETIREMENT**
**SERVICES COMPANY**

By: _____
      Vice President                    Date

**ASEC MANUFACTURING**

By: _____
      09 Sep 02    Date

DOL-PSP-001883

## SIXTH AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN
### FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY, DELPHI CORPORATION AND
### ASEC MANUFACTURING

THIS SIXTH AMENDMENT dated as of the date first signed below, by and between Fidelity Institutional Retirement Services Company ("Fidelity"), Delphi Corporation, formerly known as Delphi Automotive Systems Corporation ("Delphi Sponsor") and ASEC Manufacturing ("ASEC Sponsor") (collectively and individually, the "Sponsor");

### WITNESSETH:

WHEREAS, Fidelity and the Delphi Sponsor heretofore entered into a Recordkeeping Agreement dated May 26, 1999, with regard to the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan, and the Delphi Income Security Plan (collectively and individually the "Delphi Plan"); amended January 1, 2001, at the direction of the Delphi Sponsor to include the ASEC Sponsor and to add the ASEC Manufacturing Savings Plan (the "ASEC Plan") (collectively and individually, the "Plan"); and

WHEREAS, the Delphi Sponsor has informed Fidelity that in May, 2003, Hughes Electronics Corporation ("Hughes"), General Motors Corporation ("GM") and News Corporation have entered into a business arrangement by which control of Hughes will transfer from GM to News Corporation ("the Hughes Transactions") and, upon the effective date of the Hughes Transactions, as communicated in advance by the Delphi Sponsor to Fidelity, GM Class H shares will be redeemed and cancelled and all GM Class H shareholders will receive new Hughes common stock and News Corp. Preferred American Depositary Shares; and

WHEREAS, the Delphi Sponsor desires, and hereby directs Fidelity, in accordance with Section 2, on the effective date of the Hughes Transactions, as communicated by the Delphi Sponsor to Fidelity, to convert all participant balances in the Delphi Savings-Stock Purchase Program and the Delphi Personal Savings Plan recordkept in the General Motors Class H Common Stock Fund at its net asset value on such day into the Hughes Common Stock Fund and the News Corp. ADR Fund at their respective net asset values on such day. The parties hereto agree that Fidelity has no discretionary authority with respect to this conversion directed by the Delphi Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Delphi Sponsor; and

WHEREAS, effective March 15, 2002, the name of the Delphi Sponsor changed from Delphi Automotive Systems" to "Delphi Corporation"; and

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby amend the Recordkeeping Agreement by:

(1)    Replacing all references to the "Delphi Sponsor" as "Delphi Automotive Systems Corporation" with "Delphi Corporation".

(2)    Restating the last two sentences of the first paragraph of Section 14, Amendment and Termination, in their entireties, as follows:

This Agreement and the Schedules attached hereto may be amended or modified at any time by an instrument executed by the Sponsor and Fidelity; provided that if the amendment or modification pertains only to the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan, and/or the Delphi Income Security Plan then such instrument must be executed only by the Delphi Sponsor and Fidelity and if the

Delphi Automotive/ASEC Manufacturing (LPS)
Sixth Amendment/RK

DOL-PSP-001884

amendment or modification pertains only to the ASEC Manufacturing Savings Plan, then such instrument must be executed only by the ASEC Sponsor and Fidelity. The individuals authorized to sign such instrument will be those authorized by the Delphi Sponsor and the ASEC Sponsor on Schedules "C" and "C-1", respectively.

(3)   For the Delphi Savings-Stock Purchase Program, amending the "investment options" section of Schedule "A", upon the effective date of the Hughes Transactions, as communicated by the Delphi Sponsor to Fidelity, to delete the following:

   • GM Class H Common Stock Fund (frozen to contributions and exchanges in)

(4)   For the Delphi Personal Savings Plan, amending the "investment options" section of Schedule "A", upon the effective date of the Hughes Transactions, as communicated by the Delphi Sponsor to Fidelity, to delete the following:

   • GM Class H Common Stock Fund

(5)   For the Delphi Savings-Stock Purchase Program and the Delphi Personal Savings Plan, amending the "investment options" section of Schedule "A", upon the effective date of the Hughes Transactions, as communicated by the Delphi Sponsor to Fidelity, to add the following:

   • Hughes Common Stock Fund (frozen to contributions and exchanges in)
   • News Corp. ADR Fund (frozen to contributions and exchanges in)

(6)   Restating the "Non-Fidelity Mutual Funds" section of Schedule "B", in its entirety, as follows:

Non-Fidelity Mutual Funds:          Fees paid directly to Fidelity Investments
                                    Institutional Operations Company, Inc. (FIIOC)
                                    or its affiliates by Non-Fidelity Mutual Fund
                                    vendors shall be posted and updated quarterly
                                    on Plan Sponsor Webstation (PSW) at
                                    https://psw.fidelity.com or a successor site.

   IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this Sixth Amendment to be executed by their duly authorized officers effective as of the day and year first written below.

DELPHI CORPORATION                      FIDELITY INSTITUTIONAL RETIREMENT
(F/K/A DELPHI AUTOMOTIVE                 SERVICES COMPANY
SYSTEMS CORPORATION)

By: _____ 12-8-03              By: _____ 12/24/03
              Date                           Authorized Signatory        Date

ASEC MANUFACTURING

By: _____ 16 Dec 03
              Date

Delphi Automotive/ASEC Manufacturing (LPS)          2
Sixth Amendment/RK

DOL-PSP-001885

*Fidelity Copy*

## SEVENTH AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY, DELPHI CORPORATION AND ASEC MANUFACTURING

THIS SEVENTH AMENDMENT dated as of October 29, 2004, by and between Fidelity Institutional Retirement Services Company ("Fidelity"), Delphi Corporation ("Delphi Sponsor") and ASEC Manufacturing ("ASEC Sponsor") (collectively and individually, the "Sponsor");

### WITNESSETH:

WHEREAS, Fidelity and the Delphi Sponsor heretofore entered into a Recordkeeping Agreement dated May 28, 1999, with regard to the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan, and the Delphi Income Security Plan (collectively and individually the "Delphi Plan"); amended January 1, 2001, at the direction of the Delphi Sponsor to include the ASEC Sponsor and to add the ASEC Manufacturing Savings Plan (the "ASEC Plan") (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor hereby directs Fidelity, in accordance with Section 2 "Sponsor Directions" of the Recordkeeping Agreement, as follows: (i) *at the close of business effective October 29, 2004*, to liquidate all participant balances held in the Fidelity Asset Manager Growth Fund, Fidelity Asset Manager Income Fund, Fidelity Asset Manager Fund, Fidelity Disciplined Equity Fund, Fidelity International Discovery Fund, Fidelity Stock Selector Fund and the Fidelity Trend Fund at their net asset value on such day, and to invest the proceeds in the Promark Income Fund at its net asset value on such day; (ii) to redirect all participant contributions directed to the Fidelity Asset Manager Growth Fund, Fidelity Asset Manager Income Fund, Fidelity Asset Manager Fund, Fidelity Disciplined Equity Fund, Fidelity International Discovery Fund, Fidelity Stock Selector Fund and the Fidelity Trend Fund after *October 29, 2004* to be invested in the Promark Income Fund; (iii) to permit no further investments in the Fidelity Asset Manager Growth Fund, Fidelity Asset Manager Income Fund, Fidelity Asset Manager Fund, Fidelity Disciplined Equity Fund, Fidelity International Discovery Fund, Fidelity Stock Selector Fund and the Fidelity Trend Fund as investment options for the Plan after *October 29, 2004*. The parties hereto agree that Fidelity shall have no discretionary authority with respect to this sale and transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written direction of the Sponsor; and

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as provided for in Section 14 thereof;

Delphi Automotive/ASEC Manufacturing (LPS)
7th Amendment/RK

DOL-PSP-001886

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby amend the Recordkeeping Agreement by:

(1)  *Effective [at the close of business (4:00p.m. ET) on October 29, 2004*, amending the "investment options" funds list of Schedule "A" for the Delphi Savings-Stock Purchase Program and the ASEC Manufacturing Savings Plan, to remove the following:

- Fidelity Asset Manager Growth Fund
- Fidelity Asset Manager Income Fund
- Fidelity Asset Manager Fund
- Fidelity Disciplined Equity Fund
- Fidelity International Discovery Fund
- Fidelity Stock Selector Fund
- Fidelity Trend Fund

(2)  *Effective November 1, 2004,* amending the "investment options" funds list of Schedule "A" for the Delphi Savings-Stock Purchase Program and the ASEC Manufacturing Savings Plan, to add the following:

- Ariel Appreciation Fund
- Ariel Fund
- Fidelity Inflation Protected Bond Fund
- Fidelity Strategic Dividend & Income Fund

**IN WITNESS WHEREOF**, Fidelity and the Sponsor have caused this Seventh Amendment to be executed by their duly authorized officers effective as of the day and year first written above.

**DELPHI CORPORATION**                              **FIDELITY INSTITUTIONAL
                                                     RETIREMENT
                                                     SERVICES COMPANY**

By: _Michelle Tumeh_  10/26/04                       By: _Carolyn Beeler_  11/04/2004
                        Date                         Authorized Signatory        Date

**ASEC MANUFACTURING**

By: _J. Thomas Sipp_  3 Nov 04
                       Date

Delphi Corporation/ASEC Manufacturing (LPS)              2
7th Amendment/RK

DOL-PSP-001887

04/04/2008 10:41 FAX                                                     ☒006

### EIGHTH AMENDMENT TO RECORDKEEPING AGREEMENT BETWEEN FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY, DELPHI CORPORATION AND ASEC MANUFACTURING

THIS EIGHTH AMENDMENT dated as of November 2, 2004, by and between Fidelity Institutional Retirement Services Company ("Fidelity"), Delphi Corporation ("Delphi Sponsor") and ASEC Manufacturing ("ASEC Sponsor") (collectively and individually, the "Sponsor");

### WITNESSETH:

WHEREAS, Fidelity and the Delphi Sponsor heretofore entered into a Recordkeeping Agreement dated May 28, 1999, with regard to the Delphi Savings-Stock Purchase Program, the Delphi Personal Savings Plan, and the Delphi Income Security Plan (collectively and individually the "Delphi Plan"); amended January 1, 2001, at the direction of the Delphi Sponsor to include the ASEC Sponsor and to add the ASEC Manufacturing Savings Plan (the "ASEC Plan") (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor hereby directs Fidelity, in accordance with Section 2 "Sponsor Directions" of the Recordkeeping Agreement, as follows: (i) *at the close of business effective November 2, 2004*, to liquidate all participant balances held in the News Corp. ADR Fund at its net asset value on such day, and to invest the proceeds in the News Corp Stock Fund; (ii) to permit no further investments in the News Corp. ADR Fund after *November 2, 2004*. The parties hereto agree that Fidelity shall have no discretionary authority with respect to this sale and transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written direction of the Sponsor; and

WHEREAS, Fidelity and the Sponsor now desire to amend said Recordkeeping Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, Fidelity and the Sponsor hereby amend the Recordkeeping Agreement by:

(1)    *Effective [at the close of business (4:00p.m. ET) on November 2, 2004*, amending the "Investment options" funds list of Schedule "A" for the Delphi Savings-Stock Purchase Program and the Delphi Personal Savings Plan, to remove the following:

- News Corp. ADR Fund

Delphi Automotive/ASEC Manufacturing (LPS)
8th Amendment/RK

DOL-PSP-001888

(2)    *Effective November 2, 2004, amending the "Investment options" funds list of Schedule "A" for the Delphi Savings Stock Purchase Program and the Delphi Personal Savings Plan,* to add the following:

- News Corp Stock Fund

(3)    Replacing reference to the News Corp. Preferred American Depositary Receipts ("News Corp. ADR") with News Corp US Common Stock ("News Corp Common Stock").

(4)    Replacing all other references to the "News Corp. ADR Fund" with "News Corp Stock Fund."


IN WITNESS WHEREOF, Fidelity and the Sponsor have caused this Eighth Amendment to be executed by their duly authorized officers effective as of the day and year first written above.


**DELPHI CORPORATION**                    **FIDELITY INSTITUTIONAL RETIREMENT SERVICES COMPANY**

By: *M Rumble* 10/29/04          By: *Carolyn Beadle* 11/8/04
                    Date          Authorized Signatory          Date


**ASEC MANUFACTURING**

By: *F. Thoms* _____ 27 Oct 04
                    Date

DOL-PSP-001889