# Exhibit 4
# Tab B



*Supplemental Agreement*

**PERSONAL SAVINGS PLAN**

Exhibit G

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

September 18, 2003

DOL-PSP-000001



*Supplemental Agreement*

Covering

**PERSONAL SAVINGS PLAN**

Exhibit G

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

September 18, 2003

**DOL-PSP-000002**

## TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| INDEX TO EXHIBITS G AND G-1 | | (vi) |
| Section 1. | Establishment of Plan | (3) |
| Section 2. | Administration | (3) |
| Section 3. | Non-Applicability of Collective Bargaining Agreement Grievance Procedure | (4) |
| Section 4. | Governmental Rulings | (4) |
| Section 5. | Duration of Agreement | (5) |
| **EXHIBIT G-1 — PERSONAL SAVINGS PLAN** | | 1 |
| **Article I** | **Establishment of Personal Savings Plan** | 3 |
| 1.01 | Establishment of Plan | 3 |
| 1.02 | Effective Date of Amended Plan | 3 |
| 1.03 | Governmental Rulings | 3 |
| **Article II** | **Definition of Terms** | 3 |
| 2.01 | Account | 3 |
| 2.02 | Administrator | 3 |
| 2.03 | After-Tax Assets | 4 |
| 2.04 | After-Tax Savings | 4 |
| 2.05 | Business Day | 4 |
| 2.06 | Code | 4 |
| 2.07 | Compensation | 5 |
| 2.08 | Corporation | 5 |
| 2.09 | Corporation Stock | 5 |
| 2.10 | GM Common Stock Funds | 5 |
| 2.11 | Current Market Value | 6 |
| 2.12 | Date of Valuation | 6 |
| 2.13 | Deferred Assets | 6 |
| 2.14 | Deferred Savings | 7 |
| 2.15 | Delphi Common Stock Fund | 7 |

(i)

DOL-PSP-000003

## TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| 2.16 | Distributee | 7 |
| 2.17 | EDS Common Stock Fund | 7 |
| 2.18 | Effective Date of Investment Option Election | 7 |
| 2.19 | Effective Date of Loan | 8 |
| 2.20 | Effective Date of Termination | 8 |
| 2.21 | Effective Date of Transfer of Assets | 8 |
| 2.22 | Effective Date of Withdrawal | 8 |
| 2.23 | Eligible Rollover Distribution | 8 |
| 2.24 | Eligible Weekly Earnings | 9 |
| 2.25 | Employee | 9 |
| 2.26 | Excess Contributions | 11 |
| 2.27 | Excess Aggregate Contributions | 11 |
| 2.28 | Financial Hardship | 11 |
| 2.29 | Highly Compensated Employees | 12 |
| 2.30 | Leased Employees | 13 |
| 2.31 | Named Fiduciary | 14 |
| 2.32 | Normal Retirement Age | 14 |
| 2.33 | Participant | 14 |
| 2.34 | Plan | 14 |
| 2.35 | Plan Year | 14 |
| 2.36 | Prime Rate | 14 |
| 2.37 | Raytheon Company Common Stock Fund | 14 |
| 2.38 | Seniority | 15 |
| 2.39 | Total and Permanent Disability | 15 |
| 2.40 | Trustee | 15 |
| Article III | **Eligibility** | 15 |
| 3.01 | Eligibility | 15 |

(ii)

## TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| Article IV | **Cash or Deferred Arrangement** | 16 |
| 4.01 | Cash or Deferred Arrangement | 16 |
| 4.02 | Transfer of Assets to or Receipt of Assets from Other Qualified Plans | 17 |
| 4.03 | Rollovers | 18 |
| 4.04 | Cash or Deferred Arrangement Limitation | 19 |
| Article V | **After-Tax Savings** | 21 |
| 5.01 | After-Tax Savings | 21 |
| 5.02 | Transfer of Assets to or Receipt of Assets from Other Qualified Plans | 21 |
| 5.03 | After-Tax Contribution Limitation | 22 |
| 5.04 | Special Rules | 23 |
| Article VI | **Investment of Participant's Savings** | 24 |
| 6.01 | Investment Options | 24 |
| 6.02 | Vesting | 26 |
| 6.03 | Withdrawals | 26 |
| 6.04 | Distribution of Assets | 28 |
| 6.05 | Form of Distribution | 30 |
| 6.06 | Loans | 32 |
| Article VII | **Trust Fund** | 35 |
| 7.01 | Contributions to the Trustee | 35 |
| 7.02 | Investment Options | 36 |
| 7.03 | EDS Common Stock (0.01 Par Value) | 38 |
| 7.04 | Raytheon Company Common Stock | 38 |
| 7.05 | GM Common Stocks | 39 |

(iii)

## TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| Article VIII | Other Provisions | 39 |
| 8.01 | Non-Assignability | 39 |
| 8.02 | Designation of Beneficiaries in Event of Death | 40 |
| 8.03 | Merger or Consolidation | 41 |
| 8.04 | Limitations on Contributions and Benefits | 41 |
| 8.05 | Deferred Savings Limitation | 43 |
| 8.06 | Provisions to Comply With Section 416 of the Code | 44 |
| 8.07 | Investment Decisions | 44 |
| 8.08 | Special Provisions Regarding Veterans | 44 |
| 8.09 | Prohibition on Reversion | 45 |
| Article IX | Employee Stock Ownership Plan Provisions | 46 |
| 9.01 | Employee Stock Ownership Plan Provisions | 46 |
| 9.02 | ESOP Pre-Tax Savings Limitation | 46 |
| 9.03 | ESOP After-Tax Contribution Limitation | 47 |
| 9.04 | ESOP Special Rules | 49 |
| 9.05 | Distribution of ESOP Dividends | 50 |
| Article X | Administration | 50 |
| 10.01 | Administrative Responsibility | 50 |
| 10.02 | Records | 51 |
| 10.03 | Administrative Expenses | 51 |
| 10.04 | Participant Statements | 51 |

(iv)

## TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| 10.05 | Incapacity | 51 |
| 10.06 | Notice of Claim Denial | 52 |
| 10.07 | Confidential Information | 52 |
| Article XI | Amendment, Modification, Suspension or Termination | 53 |
| 11.01 | Amendment, Modification, Suspension, or Termination | 53 |
| 11.02 | Distribution Upon Plan Termination | 53 |
| Letter Agreements | — Misc. (Benefits Training and Education) | 54 |
|  | — Misc. (Improving Benefits Service Through Technology) | 56 |
|  | — PSP Contribution Level and Roth IRA | 58 |
|  | — PSP Employee Workshop | 59 |
|  | — Dividend and Cash Investment Plan | 60 |
|  | — Annual Review of Fund Performance | 61 |
|  | — Electronic Loan Repayment | 63 |
|  | — Suggestion Award Payments | 64 |
|  | — 529 College Savings Plan | 66 |

(v)

## INDEX TO

EXHIBIT G   — 2003 Supplemental Agreement Between
Delphi Corporation
and the UAW (Personal Savings Plan)

EXHIBIT G-1 — Personal Savings Plan

| | Article | Section | Page |
|---|---|---|---|
| **ACCOUNT** | | | |
| Definition of | II | 2.01 | 3 |
| **ADMINISTRATIVE EXPENSES** | X | 10.03 | 51 |
| **ADMINISTRATIVE RESPONSIBILITY** | | | |
| Authority of Named Fiduciary | X | 10.01 | 50 |
| Confidential Information | X | 10.07 | 52 |
| Responsibility for | Ex. G | 2 | (3) |
| **ADMINISTRATOR** | | | |
| Definition of | II | 2.02 | 3 |
| **AFTER-TAX ASSETS** | | | |
| Definition of | II | 2.03 | 4 |
| **AFTER-TAX SAVINGS** | | | |
| Contributions | V | 5.01 | 21 |
| Definition of | II | 2.04 | 4 |
| Limitation | V | 5.03 | 22 |
| Special Rules | V | 5.04 | 23 |
| Transfer of Assets | V | 5.02 | 21 |
| **BENEFICIARIES** | | | |
| Designation of | VIII | 8.02 | 40 |
| Payment to | VIII | 8.02 | 40 |
| **BUSINESS DAY** | | | |
| Definition of | II | 2.05 | 4 |
| **CASH OR DEFERRED ARRANGEMENT** | | | |
| Contributions | IV | 4.01 | 16 |
| Highly Compensated Employees | IV | 4.04 | 19 |
| Limitation | IV | 4.04 | 19 |
| Rollovers | IV | 4.03 | 18 |
| Transfer of Assets | IV | 4.02 | 17 |

| | Article | Section | Page |
|---|---|---|---|
| **CLAIM DENIAL** | | | |
| Notice of | X | 10.06 | 52 |
| Review of | X | 10.06 | 52 |
| Time Limit for Review | X | 10.06 | 52 |
| **CODE** | | | |
| Definition of | II | 2.06 | 4 |
| Provisions to Comply With Section 416 | VIII | 8.06 | 44 |
| **COMPENSATION** | | | |
| Definition of | II | 2.07 | 5 |
| **CONFIDENTIAL INFORMATION** | X | 10.07 | 52 |
| **CONTRIBUTIONS** | | | |
| Changes in Payroll Deduction | IV | 4.01 | 17 |
| Limits | IV | 4.01 | 17 |
| Percentage of Eligible Weekly Earnings | IV | 4.01 | 16 |
| Profit Sharing Amounts | IV | 4.01 | 17 |
| To the Trustee | VII | 7.01 | 35 |
| **CORPORATION** | | | |
| Definition of | II | 2.08 | 5 |
| **CORPORATION STOCK** | | | |
| Changes in Number or Class | VII | 7.02 | 36 |
| Definition of | II | 2.09 | 5 |
| Purchase of | VII | 7.02 | 36 |
| Sales of | VII | 7.02 | 36 |
| **CURRENT MARKET VALUE** | | | |
| Definition of | II | 2.11 | 6 |
| **DATE OF VALUATION** | | | |
| Definition of | II | 2.12 | 6 |
| **DEFERRED ASSETS** | | | |
| Definition of | II | 2.13 | 6 |
| **DEFERRED SAVINGS** | | | |
| Definition of | II | 2.14 | 7 |
| **DEFERRED SAVINGS LIMITATION** | VIII | 8.05 | 43 |

(vi)

(vii)

DOL-PSP-000006

|  | Article | Section | Page |
|---|---|---|---|
| DEFINITIONS . . . . . . . . . . . . . . | II | — | 3 |
| DISTRIBUTEE |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.16 | 7 |
| DISTRIBUTION OF ASSETS |  |  |  |
| Cash-in-Lieu of Shares . . . . . . | VI | 6.05 | 30 |
| Date of Valuation . . . . . . . . . . . | VI | 6.05 | 30 |
| Form of Distribution . . . . . . . . | VI | 6.05 | 30 |
| In Event of Death . . . . . . . . . . | VIII | 8.02 | 40 |
| Undeliverable Assets . . . . . . . . | VI | 6.04 | 29 |
| Upon Attainment of Age 70-1/2 . | VI | 6.04 | 29 |
| Upon Plan Termination . . . . . . | XI | 11.02 | 53 |
| Upon Termination of Employment | VI | 6.04 | 28 |
| DURATION OF AGREEMENT . . Ex. G. | | 5 | (5) |
| EDS COMMON STOCK FUND |  |  |  |
| Cash-in-Lieu of Shares . . . . . . | VII | 7.03 | 38 |
| Definition of . . . . . . . . . . . . . | II | 2.17 | 7 |
| Investment of Dividends . . . . . | VII | 7.03 | 38 |
| Transfer of Assets . . . . . . . . . | VII | 7.03 | 38 |
| Withdrawal or Settlement . . . . | VII | 7.03 | 38 |
| EFFECTIVE DATE OF AMENDED |  |  |  |
| PLAN . . . . . . . . . . . . . . . . . . . | I | 1.02 | 3 |
| EFFECTIVE DATE OF |  |  |  |
| INVESTMENT OPTION ELECTION |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.18 | 7 |
| EFFECTIVE DATE OF LOAN |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.19 | 8 |
| EFFECTIVE DATE OF |  |  |  |
| TERMINATION |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.20 | 8 |
| EFFECTIVE DATE OF TRANSFER |  |  |  |
| OF ASSETS |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.21 | 8 |
| EFFECTIVE DATE OF |  |  |  |
| WITHDRAWAL |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.22 | 8 |

(viii)

|  | Article | Section | Page |
|---|---|---|---|
| ELIGIBILITY . . . . . . . . . . . . . . . | III | 3.01 | 15 |
| ELIGIBLE ROLLOVER |  |  |  |
| DISTRIBUTION |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.23 | 8 |
| ELIGIBLE WEEKLY EARNINGS |  |  |  |
| Contributions as Percentage of | IV | 4.01 | 16 |
| Definition of . . . . . . . . . . . . . | II | 2.24 | 9 |
| Performance Bonus Payment . . | II | 2.24 | 9 |
| EMPLOYEE |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.25 | 9 |
| EMPLOYEE STOCK OWNERSHIP |  |  |  |
| PLAN (ESOP) |  |  |  |
| After-Tax Contribution |  |  |  |
| Limitation . . . . . . . . . . . . | IX | 9.03 | 47 |
| Definition of . . . . . . . . . . . . . | IX | 9.01 | 46 |
| Distribution of Dividends . . . . | IX | 9.05 | 50 |
| Pre-Tax Savings Limitation . . . | IX | 9.02 | 46 |
| Special Rules . . . . . . . . . . . . . | IX | 9.04 | 49 |
| ESTABLISHMENT OF PLAN . . | I | 1.01 | 3 |
| Board of Directors' Approval . Ex. G | | 1 | (3) |
| Internal Revenue Service |  |  |  |
| Approval . . . . . . . . . . . . . . Ex. G | | 4 | (4) |
| EXCESS CONRIBUTIONS . . . . | II | 2.26 | 11 |
| EXCESS AGGREGATE |  |  |  |
| CONTRIBUTIONS . . . . . . . . . . | II | 2.27 | 11 |
| FIDUCIARY |  |  |  |
| Delegation of Responsibilities . | X | 10.01 | 50 |
| FINANCIAL HARDSHIP |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.28 | 11 |
| GENERAL MOTORS |  |  |  |
| INVESTMENT MANAGEMENT |  |  |  |
| CORPORATION . . . . . . . . . . . . | X | 10.01 | 50 |
| GM COMMON STOCK FUNDS |  |  |  |
| Definition of . . . . . . . . . . . . . | II | 2.10 | 5 |
| Investment of Dividends . . . . . | VII | 7.05 | 39 |
| Transfer of Assets . . . . . . . . . | VII | 7.05 | 39 |
| Withdrawal or Settlement . . . . | VII | 7.05 | 39 |

(ix)

DOL-PSP-000007

| | Article | Section | Page |
|---|---|---|---|
| GOVERNMENTAL RULINGS | | | |
| Approval by Internal Revenue | | | |
| Service | I | 1.03 | 3 |
| Plan Contingent Upon | Ex. G | 4 | (4) |
| GRIEVANCE PROCEDURE | | | |
| Non-Applicability of | Ex. G | 3 | (4) |
| HIGHLY COMPENSATED EMPLOYEES | | | |
| Definition of | II | 2.29 | 12 |
| Limitations | IV | 4.04 | 19 |
| INCAPACITY | X | 10.05 | 51 |
| INTERNAL REVENUE SERVICE | | | |
| Code | II | 2.06 | 4 |
| Governmental Rulings | I | 1.03 | 3 |
| INVESTMENT DECISIONS | VIII | 8.07 | 44 |
| INVESTMENTS | | | |
| By Trustee | VII | 7.01 | 35 |
| Contributions | VI | 6.01 | 24 |
| Delphi Common Stock Fund | VII | 7.02 | 36 |
| Election of | VI | 6.01 | 24 |
| Investment of Dividends | VII | 7.02 | 36 |
| Mutual Funds | VII | 7.02 | 37 |
| Promark Funds | VII | 7.02 | 37 |
| Socially Oriented Funds | VII | 7.02 | 37 |
| Transfer of Assets | VI | 6.01 | 25 |
| LEASED EMPLOYEES | | | |
| Definition of | II | 2.30 | 13 |
| LIABILITIES OF CORPORATION | VII | 7.01 | 36 |
| LIMITATIONS ON CONTRIBUTIONS AND BENEFITS | VIII | 8.04 | 41 |

(x)

| | Article | Section | Page |
|---|---|---|---|
| LOANS | | | |
| Assets | VI | 6.06 | 32 |
| Current Market Value | VI | 6.06 | 32 |
| Date of | VI | 6.06 | 32 |
| Default on | VI | 6.06 | 34 |
| Interest Rate of | VI | 6.06 | 32 |
| Layoff or Leave Repayment | VI | 6.06 | 34 |
| Period of Time Granted for | VI | 6.06 | 32 |
| Repayment of | VI | 6.06 | 33 |
| Termination of Employment | VI | 6.06 | 34 |
| When Permitted | VI | 6.06 | 32 |
| MERGER OR CONSOLIDATION OF PLAN | VIII | 8.03 | 41 |
| NAMED FIDUCIARY | | | |
| Definition of | II | 2.31 | 14 |
| NON-ASSIGNABILITY | VIII | 8.01 | 39 |
| NON-FORFEITABILITY | VI | 6.02 | 26 |
| NORMAL RETIREMENT AGE | | | |
| Definition of | II | 2.32 | 14 |
| PARTICIPANT | | | |
| Definition of | II | 2.33 | 14 |
| Statements | X | 10.04 | 51 |
| PLAN | | | |
| Amendment, Modification, Suspension, or Termination of | XI | 11.01 | 53 |
| Definition of | II | 2.34 | 14 |
| PLAN YEAR | | | |
| Definition of | II | 2.35 | 14 |
| PRIME RATE | | | |
| Definition of | II | 2.36 | 14 |
| PROHIBITION ON REVERSION | VIII | 8.09 | 45 |
| RAYTHEON COMPANY COMMON STOCK FUND | | | |
| Investment of Dividends | VII | 7.04 | 38 |
| Transfer of Assets | VII | 7.04 | 38 |
| Withdrawal or Settlement | VII | 7.04 | 38 |

(xi)

| | Article | Section | Page |
|---|---|---|---|
| RECORDS | | | |
| Maintenance of . . . . . . . . . . . . | X | 10.02 | 51 |
| Annual Valuations of Trust | | | |
| Fund or Market Value . . . . . . | X | 10.02 | 51 |
| ROLLOVERS . . . . . . . . . . . . . . . | IV | 4.03 | 18 |
| SENIORITY | | | |
| Definition of . . . . . . . . . . . . . | II | 2.38 | 15 |
| Required for Eligibility . . . . . . | III | 3.01 | 15 |
| SPECIAL PROVISIONS | | | |
| REGARDING VETERANS . . . . . | VIII | 8.08 | 44 |
| TERMINATION | | | |
| Distribution Upon Plan | | | |
| Termination . . . . . . . . . . . . . | XI | 11.02 | 53 |
| Settlement Upon Termination | | | |
| of Employment . . . . . . . . . . . | VI | 6.04 | 28 |
| TOTAL AND PERMANENT | | | |
| DISABILITY | | | |
| Definition of . . . . . . . . . . . . . | II | 2.39 | 15 |
| TRANSFER OF ASSETS TO OR | | | |
| RECEIPT OF ASSETS FROM | | | |
| OTHER QUALIFIED PLANS . . . | IV | 4.02 | 17 |
| TRUSTEE | | | |
| Definition of . . . . . . . . . . . . . | II | 2.40 | 15 |
| VALUATION | | | |
| Date of . . . . . . . . . . . . . . . . . . | II | 2.12 | 6 |
| VESTING . . . . . . . . . . . . . . . . . . | VI | 6.02 | 26 |
| VOTING RIGHTS . . . . . . . . . . . . | VII | 7.02 | 36 |
| WITHDRAWALS | | | |
| Amount of . . . . . . . . . . . . . . . | VI | 6.03 | 27 |
| Financial Hardship . . . . . . . . . . | VI | 6.03 | 27 |
| Outstanding Loan(s) . . . . . . . . | VI | 6.03 | 27 |
| Reasons for . . . . . . . . . . . . . . | VI | 6.03 | 26 |
| Suspension from Participation. | VI | 6.03 | 27 |
| When Permitted . . . . . . . . . . . | VI | 6.03 | 26 |

(xii)

**EXHIBIT G**

**SUPPLEMENTAL AGREEMENT**

**(Personal Savings Plan)**

(1)

G, Sect. 1

## SUPPLEMENTAL AGREEMENT
## (PERSONAL SAVINGS PLAN)

On this 18th day of September, 2003, Delphi Corporation, hereinafter referred to as the Corporation or Delphi, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, hereinafter referred to as the Union, on behalf of the employees covered by the Collective Bargaining Agreement of which this Agreement becomes a part, agree as follows:

### SECTION 1. Establishment of Plan

Subject to the approval of its Board of Directors, which occurred on December 3, 2003, the Corporation established Personal Savings Plan for Hourly-Rate Employees in the United States, hereinafter referred to as the "Plan," a copy of which is attached hereto and made a part of this Agreement to the extent applicable to the employees represented by the Union and covered by this Agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Plan to the extent necessary to eliminate such conflict.

### SECTION 2. Administration

The Corporation shall have the responsibility for administration of the Plan.

Notwithstanding Article VI, Section 6.04 of the Plan, distribution of all assets in the Account of a Participant who has been discharged shall be deferred, unless the Participant otherwise elects irrevocably, pending the final resolution of any grievance over such Participant's discharge pursuant to the Collective Bargaining Agreement.

(2)

(3)

DOL-PSP-000010

G. Sect 3

### SECTION 3. Non-Applicability of Collective Bargaining Agreement Grievance Procedure

No matter respecting the Plan as supplemented by this Agreement or any difference arising thereunder shall be subject to the grievance procedure established in the Collective Bargaining Agreement between the Corporation and the Union.

### SECTION 4. Governmental Rulings

The Plan and the Plan as it may be supplemented by superseding provisions of this Agreement are contingent upon and subject to the Corporation obtaining and retaining from the Internal Revenue Service a ruling, satisfactory to the Corporation, holding that the Plan meets the requirements of Section 401 of the Code, or any section of the Code which amends, supersedes, or supplements said section, and that any trust forming a part of the Plan is exempt from income taxation under Section 501(a) of the Code, or any section of the Code which amends, supersedes, or supplements said section. In the event the above ruling is not obtained, the Corporation, within 30 days after any such disapproval, will give written notice thereof to the Union.

Notwithstanding any other provisions of this Agreement or the Plan, the Corporation, with the consent of the Director of the General Motors Department of the Union, may, during the term of this Agreement, make revisions in the Plan not inconsistent with the purposes, structure, and basic provisions thereof which shall be necessary to obtain or retain the ruling referred to in this Section 4. Any such revisions shall adhere as closely as possible to the language and intent of provisions outlined in this Agreement and the Plan.

(4)

G. Sect 5

### SECTION 5. Duration of Agreement

This Agreement and Plan as supplemented by this Agreement shall continue in effect until otherwise agreed to by the Corporation and the Union.

In witness hereof, the parties hereto have caused this Agreement to be executed the day and year first above written.

(5)

DOL-PSP-000011

| INTERNATIONAL UNION, UAW | DELPHI CORPORATION |
|---|---|
| RON GETTELFINGER | J. T. BATTENBERG III |
| RICHARD SHOEMAKER | ALAN DAWES |
| JIM BEARDSLEY | MARK WEBER |
| HENDERSON SLAUGHTER | DAVE WOHLEREN |
| JOE SPRING | DON RUNKLE |
| BILL STEVENSON | RODNEY O'NEAL |
| DAVE CURSON | KEVIN M.BUTLER |
| JIM SHROAT | RALPH E. HANDLEY |
| RON BIEBER | ATUL PASRICHA |
| SCOTT CAMPBELL | STEVEN L. GERBIA |
| ANTONIO ORTIZ | DARRELL E. KIDD |
| TOM WALSH | NICK HOTCHKIN |
| TOM WEEKLEY | MARK CASHDOLLAR |
| WILLIE WILLIAMS | ROBERT GERLING |
| LEON SKUDLAREK | ED GOETTL |
| ESTHER CAMPBELL | DON HOOPER |
| HAROLD COX | MARK LEWIS |
| GREG PEDAK | CHARLES MCWEE |
| MARK KELLY | BERNARD QUICK |
| FAYE MCAFEE | JUDY MATZELLE |
| RICK MCKIDDY | M. BETH SAX |
| PAUL MITCHELL | FRANK KUPLICKI |
| HAROLD SHELTON | SCOTT HARRIS |
| DAVID SHOEMAKER | DAVID BODEIN |
| LAWRENCE SMITH | MICHAEL S. FLIGSTEIN |
| MAURICE STATEN | THOMAS SMITH |
| CINDY SUEMNICK | DAVE CAIROLI |
| LARRY SZUMAL | SALVATORE GALANTE, M.D. |
| RON BROGAN | KARL BOSSUNG |
| BOB BUENO | THOMAS B. ARNOLD |
| MIDGE COLLETTE | BRENDA PAGE |
| MARK HAWKINS | LARRY B. PEOPLES |
| JIM JENKINS | DAVE PETTYES |
| LEE JONES | MARK A. WINFIELD |
| MIKE JONES | RICH BALGENORTH |
| LARRY KUK | JOHN L. DEMARCO |
| RICK O'DONNELL | PAT MCDONALD |
| DARRELL SHEPARD | EVELYN JESTER |
| CLYDE SIMS | LESLEY MARCOTT |
| RAY ALLEN | JAMES M. PETRIE |
| PAUL ALLMAND | MARK PIERCE |
| GORDON ANDREWS | JERRY SEITER |
| NATE BEARDSLEY | DEBBIE DOUGLAS |
| CHARLIE BEST | DEBORAH FRANCE |

(6)

| INTERNATIONAL UNION, UAW | DELPHI CORPORATION |
|---|---|
| JIM BLAINE | DALE JOHNSON |
| RON BLYTHE | NANCY JULIUS |
| JOAN BRYANT | BRIAN C. STUDER |
| REBECCA CABREROS | SHARON L. SMITH |
| PATTI CAMPBELL | MICHELLE TRIMBLE |
| DEBBIE CHAMBERLAIN | RENEE ATKINSON |
| JERRY CHOTKOWSKI | BETH BROWN |
| JAMES CIOTTI | PAUL CAIGOY |
| JERRY CLIFTON | STEPHANIE DAMERON-CLARK |
| JIM CLIFTON | DEANNA DOROGY |
| TIM COBB | CHRISTINE DARBY |
| CHARLIE COY | GARY ELLIOTT |
| BRYAN CZAFE | LAURA HARDY |
| SHELLEY CZERLER | JOANNA KAPLAN |
| STEVE CZERNISKI | CHRIS KRUMINS |
| GEORGE DAKURAS | LESIA MAHON |
| DICK DEFFIN | DENNIS RIFFEL |
| TERRI DOLAN | GREG SCHMIEDEKNECHT |
| DON DOUGLAS | MELINDA J. WILEY |
| DAVE DREMER | CRISTINA M. ZATEK |
| SCOTT FARRADAY | LUCE RUBIO |
| JOHN FEDEWA | ARTHUR HUBER |
| TOM FORD | |
| BILL FREEMAN | |
| RON GRAHAM | |
| MOSES GREEN | |
| MIKE GRIMES | |
| CHARLIE GROSS | |
| LESLIE HALIBURTON | |
| FRANK HAMMER | |
| BILL HAYES | |
| KEN HOLDER | |
| DIANA HROVATIN | |
| MOHAMMED ISA | |
| DAVE KAGELS | |
| JIM KING | |
| TOM KINMAN | |
| PETE KOROLENKO | |
| DAVE KOSCINSKI | |
| DAN LACK | |
| JAMES LAKE | |
| DIANE LAWTON | |
| RANDY LENTZ | |
| REG MCGHEE | |

(7)

DOL-PSP-000012



INTERNATIONAL
UNION, UAW

STEVE McLIMANS
GREG NELSON
DON NEWTON
KRIS OWENS
ED PARKER
LINDA PATTON
RITA PERSINGER
STEVE RAICH
FRED RASPBERRY
BONNI REPFITT
LORENZO RIVERA
JOHN RUPP
RUSS RUSSAW
BILL SAVAGE
JIM SAYLOR
RENE SCHUTTE
BILL SCRASE
DARRELL SMITH
JAMES STEVENS
STAN STOKER
TOM STRUCKMAN
CRICKETT SWEET
LIBBY TOMASKO
EDDIE TRENT
KENNY VanHORN
DWAYNE WALDROP
RON WALKER
JOANNA WHITAKER
MICHAEL WILSON
AL YELLE

(8)

**EXHIBIT G-1**

**THE DELPHI**

**PERSONAL SAVINGS PLAN**

**FOR HOURLY-RATE EMPLOYEES**

**IN THE UNITED STATES**

1

DOL-PSP-000013

Art. I

# ARTICLE I

## ESTABLISHMENT OF PERSONAL SAVINGS PLAN

### 1.01    Establishment of Plan

Delphi Corporation hereby establishes The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (hereinafter referred to as the Plan), as set forth herein.

### 1.02    Effective Date of Amended Plan

The amended Plan shall become effective January 1, 2004, except as otherwise may be provided herein.

### 1.03    Governmental Rulings

This Plan is conditioned upon approval by the Internal Revenue Service in accordance with Sections 401 and 501(a) of the Code, or any section of the Code which amends, supersedes, or supplements said sections.

# ARTICLE II

## DEFINITION OF TERMS

The following definitions will apply to all words and phrases capitalized in the text which follows.

### 2.01    "Account"

Account means the assets credited to a Participant in the trust fund established under the Plan.

### 2.02    "Administrator"

Administrator means Delphi Corporation.

2

3

DOL-PSP-000014

### 2.03   "After-Tax Assets"

After-Tax Assets means the units of the GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, Promark Funds, Socially Oriented Funds, and shares of the Mutual Funds purchased with After-Tax Savings and dividends and earnings thereon.

### 2.04   "After-Tax Savings"

After-Tax Savings means amounts contributed to the trust fund by the Corporation as elected by a Participant in accordance with Section 5.01.

### 2.05   "Business Day"

Business Day means a day the New York Stock Exchange is open for business, except in the event of the occurrence on any day of government restrictions, exchange or market rulings, suspensions of trading, acts of civil or military authority, national emergencies, fires, earthquakes, floods or other catastrophes, acts of God, wars, riots or failures of communication or power supply, or other circumstances beyond the reasonable control of the Trustee; the Trustee shall determine in its discretion the extent to which such day shall constitute a Business Day for any purpose of the Plan. If the New York Stock Exchange is closed as a result of a holiday, weekend, or at the end of a Business Day, normally 4:00 p.m. Eastern Time, then the Effective Date will be the next following Business Day.

### 2.06   "Code"

The term "Code" means the Internal Revenue Code of 1986, as amended.

4

### 2.07   "Compensation"

Compensation means the total amount paid by the Corporation to the Employee with respect to hourly-rate employment during any Plan Year as evidenced by Internal Revenue Service Form W-2 or its equivalent, plus amounts not currently includable in income by reason of Sections 125, 132(f)(4) (effective January 1, 2001), and/or 402(e)(3) of the Code.

### 2.08   "Corporation"

Corporation means Delphi Corporation.

### 2.09   "Corporation Stock"

Corporation Stock means Delphi Common Stock, issued by Delphi Corporation with voting power and dividend rights no less favorable than the voting power and dividend rights of other common stock issued by the Corporation.

### 2.10   "GM Common Stock Funds"

• GM Common Stock Fund - The term "GM Common Stock Fund" shall mean the investment option consisting principally of common stock, $1-2/3 par value, issued by General Motors Corporation. A portion of the GM Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

• GM Class H Common Stock Fund - The term "GM Class H Common Stock Fund" shall mean the investment option consisting principally of General Motors Class H common stock, $0.10 par value, issued by General Motors Corporation. A portion of the GM Class H Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

5

DOL-PSP-000015

## 2.11 "Current Market Value"
### Current Market Value means

(a) for GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, and the Promark Funds, the fair market value of the units reported by the respective fund,

(b) for assets attributable to the Mutual Funds, the fair market value of the units reported by the Mutual Fund company, and

(c) for assets attributable to the Socially Oriented Funds, the fair market value of the units reported by the companies representing such Funds.

## 2.12 "Date of Valuation"

Date of Valuation means the end of a Business Day, normally 4:00 p.m. Eastern Time, that a Participant initiates an investment option election, withdrawal, transfer of assets, settlement upon termination of employment, or loan, and such date shall be the Effective Date of Investment Option Election, Effective Date of Withdrawal, Effective Date of Transfer of Assets, Effective Date of Termination, or Effective Date of Loan, whichever applies.

## 2.13 "Deferred Assets"

Deferred Assets means the units of the GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, Promark Funds, Socially Oriented Fund(s), and shares of the Mutual Funds purchased with Deferred Savings and dividends and earnings thereon.

6

## 2.14 "Deferred Savings"

Deferred Savings means amounts contributed to the trust fund by the Corporation as elected by a Participant in accordance with Sections 4.01 and 4.02.

## 2.15 "Delphi Common Stock Fund"

"Delphi Common Stock Fund" means the investment consists principally of Delphi Corporation (Delphi) Common Stock. A portion of the Delphi Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

## 2.16 "Distributee"

Distributee means an Employee or former Employee of the Corporation to whom assets are to be distributed. Additionally, the surviving spouse of the Employee or former Employee or alternate payee to whom assets are to be distributed under a Qualified Domestic Relations Order, as defined in Section 414(p) of the Code, are Distributees with regard to their interest.

## 2.17 "EDS Common Stock Fund"

EDS Common Stock Fund means the investment which consists principally of Electronic Data Systems Corporation (EDS) common stock, $0.01 par value. A portion of the EDS Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

## 2.18 "Effective Date of Investment Option Election"

Effective Date of Investment Option Election means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for an investment option change.

7

DOL-PSP-000016

## 2.19 "Effective Date of Loan"

Effective Date of Loan means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a loan.

## 2.20 "Effective Date of Termination"

Effective Date of Termination means the Business Day on which termination of employment with the Corporation occurs.

## 2.21 "Effective Date of Transfer of Assets"

Effective Date of Transfer of Assets means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a transfer of assets.

## 2.22 "Effective Date of Withdrawal"

Effective Date of Withdrawal means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a withdrawal.

## 2.23 "Eligible Rollover Distribution"

Eligible Rollover Distribution means any distribution consisting of all or any portion of the Account of the Distributee, except that an Eligible Rollover Distribution does not include:

(i) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code;

(ii) the portion of any distribution that is not includable in gross income;

(iii) substantially equal installment payments that are payable for ten or more years; and

8

(iv) any distribution due to Financial Hardship as defined under Article II, Section 2.28.

## 2.24 "Eligible Weekly Earnings"

Eligible Weekly Earnings means base pay plus any Cost-of-Living Allowance received by a Participant from the Corporation with respect to hourly-rate employment during a calendar week and any Performance Bonus Payment (as defined in the Collective Bargaining Agreement) made to a Participant during the Plan Year. The term Eligible Weekly Earnings shall include any pay received for overtime hours, night shift, seven-day premiums, and suggestion awards. Eligible Weekly Earnings shall not include any other special payments, fees, or allowances, and in no event may exceed $200,000 per year effective January 1, 2001 (or as may be adjusted by the Secretary of the Treasury of the United States).

## 2.25 "Employee"

Employee means

(a) any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owned domestic subsidiary in accordance with I.R.C. Section 414(b), (c), and (m) thereof, on an hourly-rate basis, including:

(1) hourly-rate persons employed on a full-time basis and

(2) part-time hourly-rate employees.

(b) the term Employee shall not include employees of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation, except as approved for employees of Delco Electronics Corporation, or as otherwise approved by the Delphi Board of Directors.

9

DOL-PSP-000017

(c)  the term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

(d)  the term "Employee" shall not include Leased Employees as defined under Article II, Section 2.30.

(e)  the term "Employee" shall not include contract employees, bundled-services employees, consultants, or similarly situated individuals, or individuals who have represented themselves to be independent contractors.

(f)  the following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

(i)  any individual who provides services to the Corporation where there is an agreement with a separate company under which the services are provided. Such individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

(ii)  any individual who has signed an independent contractor agreement, consulting agreement, or other similar personal service contract with the Corporation;

(iii)  any individual who both (a) is not included in any represented bargaining unit and (b) who the Corporation classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation all persons who may actually be common-law employees of the Corporation, but who are not paid

10

as though they were employees of the Corporation, regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

## 2.26  "Excess Contributions"

The term Excess Contributions means the excess of:

(a)  the aggregate amount of Deferred Savings actually taken into account in computing the limitations for Highly Compensated Employees under Section 4.04(a), over

(b)  the maximum amount of Deferred Savings permitted under the limitations of Section 4.04(a) (determined by hypothetically reducing the Deferred Savings made on behalf of Highly Compensated Employees in the order of the ratios under Section 4.04(b), beginning with the highest of such ratios).

## 2.27  "Excess Aggregate Contributions"

The term Excess Aggregate Contributions means the excess of:

(a)  the aggregate amount of After-Tax Savings actually taken into account in computing the limitations for Highly Compensated Employees under Section 5.03(a), over

(b)  the maximum amount of After-Tax Savings permitted under the limitations of Section 5.03(a) (determined by hypothetically reducing the After-Tax Savings made on behalf of Highly Compensated Employees in the order of the ratios under Section 5.03(b), beginning with the highest of such ratios).

## 2.28  "Financial Hardship"

Financial Hardship means a reason given by a Participant when applying for a withdrawal before age

11

59-1/2 which indicates the withdrawal is (1) necessary to meet immediate and heavy financial needs of the Participant, (2) for an amount required to meet the immediate financial need created by the hardship, and (3) for an amount that is not reasonably available from other resources of the Participant. The amount of such withdrawal may be increased to include any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal. The reason must be permitted under existing Internal Revenue Service regulations and rulings and must be acceptable to the Named Fiduciary or its delegate for one of the following reasons:

(a)  purchase or construction of the Participant's principal residence;

(b)  payment of expenses to prevent foreclosure on the Participant's principal residence or to prevent eviction from the Participant's principal residence;

(c)  payment of tuition for the next 12 months of post-secondary education for a Participant, a Participant's spouse, or a Participant's dependent;

(d)  payment of medical expenses previously incurred or necessary to obtain medical care for a Participant, a Participant's spouse, or a Participant's dependent; or

(e)  any other reason acceptable under published Internal Revenue Service regulations and rulings.

### 2.28  "Highly Compensated Employees"

For purposes of this Plan, the term Highly Compensated Employees means Highly Compensated active Employees and Highly Compensated former Employees.  For purposes of this Section, the determination year shall be the calendar year, and the look-back year shall be the 12-month period

12

immediately preceding the determination year. A Highly Compensated active Employee includes any Employee who performs service for the Corporation during the determination year and who, during the look-back year:

(a) (1)  received compensation from the Corporation in excess of $80,000.00 (as adjusted under the Code) for such year, or

(2)  was a 5% owner of the Corporation at any time during the year or the preceding year.

(b)  A Highly Compensated former Employee includes any Employee who separated from service prior to the determination year, performs no service for the Corporation during the determination year, and was a Highly Compensated active Employee for either the separation year or any determination year ending on or after the Employee's 55th birthday.

(c)  The determination of who is a Highly Compensated Employee, including the determinations of the number and identity of Employees in the top-paid group, will be made in accordance with Section 414(q) of the Code and regulations thereunder.

### 2.30  "Leased Employees"

Leased Employee means any person who, pursuant to an agreement between the Corporation and any leasing organization, has performed services for the Corporation on a substantially full-time basis for a period of at least one year, and such services are performed under the primary direction or control of the Corporation. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the Corporation shall be treated as provided by the Corporation. A Leased Employee shall not be considered an employee of the Corporation

13

Art. II, 2.30

if such employee is covered by the safe harbor requirements of Section 414(n)(5) of the Code.

**2.31  "Named Fiduciary"**

Named Fiduciary means the Executive Committee of the Board of Directors of Delphi Corporation except as set forth in Sections 8.07 and 10.01.

**2.32  "Normal Retirement Age"**

Normal Retirement Age means the attainment of age 65 by the Participant.

**2.33  "Participant"**

Participant means an Employee, or former Employee, who has an Account under this Plan.

**2.34  "Plan"**

Plan means The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States.

**2.35  "Plan Year"**

Plan Year means the 12-month period beginning on January 1 and ending on December 31.

**2.36  "Prime Rate"**

Prime Rate means the interest rate reported as the "Prime Rate" in the Eastern Edition of the Wall Street Journal in its general guide to money rates.

**2.37  "Raytheon Company Common Stock Fund"**

Raytheon Company Common Stock Fund means the investment which consists principally of Raytheon Company common stock. A portion of the Raytheon Company Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

14

---

Art. II, 2.38

**2.38  "Seniority"**

Seniority as used in the Plan means the Employee must complete 90 days of employment with the Corporation.

**2.39  "Total and Permanent Disability"**

Total and Permanent Disability means the Employee is currently eligible for a benefit under The Delphi Hourly-Rate Employees Pension Plan because of total and permanent disability or would be eligible for such a benefit except the Employee does not have ten years of credited service.

**2.40  "Trustee"**

Trustee means the outside organization or organizations appointed by the Named Fiduciary, or its delegate, to hold, invest, and distribute the assets of the Plan.

## ARTICLE III
## ELIGIBILITY

**3.01  Eligibility**

An Employee is eligible to participate and accumulate savings under the Plan on the first day of the first pay period next following the attainment of Seniority.

A previously eligible Employee who resumes active employment following a termination of employment will be eligible to participate immediately.

15

DOL-PSP-000020

## ARTICLE IV

## CASH OR DEFERRED ARRANGEMENT

### 4.01   Cash or Deferred Arrangement

(a)   In lieu of receipt of Eligible Weekly Earnings to which an Employee is entitled, such Employee may elect, by providing appropriate direction to the party designated by the Administrator, to have the Corporation contribute to the Plan, on a weekly basis, an equivalent amount in accordance with this qualified cash or deferred arrangement as provided for under Section 401(k) of the Code. Such contributions must be whole percentages of the Employee's Eligible Weekly Earnings and may not be at a rate of less than 1% nor more than 60% of the Employee's Eligible Weekly Earnings.

In addition to the contributions described above, an Employee age 50 or over, or an Employee that will attain age 50 by the end of the year, may elect to have the Corporation contribute to the Employee's Account "catch-up" contributions as permitted by Federal law. Such contributions may not be at a rate of less than 1% nor more than 40% of the Employee's Eligible Weekly Earnings. Catch-up contributions may only be permitted by an Employee once a limitation is imposed pursuant to this Section or Sections 4.04, 8.04 and 8.05 of the Plan.

Contributions referenced in this subsection shall be allocated to the Employee's Account and shall be vested immediately. The Employee's Compensation shall be reduced by the full amount of any such Corporation contribution.

The Employee may elect, by providing appropriate direction to the party designated by the Administrator, to change the amount of such Corporation contributions or to have such contributions suspended at any time.

16

(b)   Any change in the rate of payroll deduction authorized by an Employee in accordance with subsection (a) of this Section 4.01 will become effective not later than the first day of the second pay period next following the date on which such authorization is received by the party designated by the Administrator.

(c)   In addition to the contributions as provided for in subsection (a) of this Section 4.01, an Employee eligible to receive a payment from The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States may elect to have the Corporation contribute to the Employee's Account as Deferred Savings an amount up to 100%, in multiples of 1%, of the amount of such payment, provided such Employee has not terminated employment prior to such contribution. Such election shall be made at such time and in such manner as the Administrator shall determine and will remain continuously in effect until changed by the Employee. If appropriate direction is not received by the party designated by the Administrator from an Employee on or before the date established by the Administrator for submission of such election with respect to a payment, such amount shall be paid to the Employee.

(d)   The Corporation may limit the amount of contributions to the trust pursuant to subsections (a) and (c) of this Section 4.01 if necessary to comply with Sections 4.04, 8.04, and 8.05 of the Plan.

### 4.02   Transfer of Assets to or Receipt of Assets from Other Qualified Plans

The Administrator may direct the Trustee to accept all of an Employee's funds transferred from a similar qualified plan, and may direct the Trustee to transfer all of a Participant's funds to a similar qualified plan, provided such other qualified plan (1) is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer

17

is a member, and (2) permits such transfers or (3) is a plan maintained by General Motors Corporation as part of an applicable GM collective bargaining agreement. Any funds so transferred shall be accompanied by instructions from the Trustee setting forth the Employee for whose benefit such assets are being transferred, and identifying the source of such accumulated funds. Funds transferred from other plans which otherwise would be subject to federal income taxation will be designated as Deferred Savings.

Notwithstanding the foregoing, the Plan may not receive a transfer from another qualified plan if such other plan provides, or at any time had provided, benefits through alternative forms of distribution, including annuities, which are not available under this Plan.

## 4.03 Rollovers

(a) An Employee may make a rollover contribution, as permitted under Section 402(c) of the Code, into an option or options selected by such Employee in an amount not exceeding the total amount of taxable and/or nontaxable proceeds distributed by another eligible retirement plan. An eligible retirement plan shall be determined under Section 402(c)(8)(B). Additionally, cash proceeds received under a Qualified Domestic Relations Order from an eligible retirement plan as described above may be rolled over to the Plan. The rollover contribution must be made by the Employee (a) within 60 days following the receipt of such distribution of taxable proceeds, or (b) as a direct trustee-to-trustee transfer from the former employer's plan as permitted under Section 401(a)(31) of the Code.

(b) An Employee who receives an Eligible Rollover Distribution may elect to have the Trustee transfer directly to an IRA of the Employee, or to another employer's plan in which the Employee is a participant, all or part of the assets included in the distribution, including Company stock. The Employee shall designate the IRA or other

18

employer's plan to which assets are to be transferred, and the transfer shall be made subject to acceptance by the transferee plan or IRA. Any such direct transfer shall be subject to Section 401 (a)(31) of the Code.

## 4.04 Cash or Deferred Arrangement Limitation

(a) The Deferred Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i) The actual Deferred Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual Deferred Savings percentage of all other eligible Employees; or

(ii) The actual Deferred Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual Deferred Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual Deferred Savings percentage of all other eligible Employees.

(b) The actual Deferred Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i) Amount of Deferred Savings actually paid over to the Plan trust not later than two and one-half months after the Plan Year on behalf of such eligible Employee for the Plan Year.

(ii) The eligible Employee's Compensation for such Plan Year.

(c) The amount of Deferred Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 4.04 shall be distributed to the Participant no later than two and one-

19

DOL-PSP-000022

half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess Deferred Savings.

**(d)  Special Rules.**

(i)  In the event that this Plan satisfies the requirements of Sections 401(k), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 4.04 shall be applied by determining the actual Deferred Savings percentage of eligible Employees as if all such plans were a single plan.

(ii)  The actual Deferred Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(k) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Section 401(k) of the Code.

(iii).  Notwithstanding any other provision of the Plan, Excess Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Contributions were allocated. Excess Contributions are allocated to the Highly Compensated Employees with the largest amounts of Deferred Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order until all the Excess Contributions have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Contributions.

20

# ARTICLE V

## AFTER-TAX SAVINGS

### 5.01  After-tax Savings

(a)  In lieu of all or part of the contributions an Employee may authorize in accordance with Section 4.01, an Employee may elect to contribute an equivalent amount to the Plan on an after-tax basis.  Such contributions shall be allocated to the Employee's Account and shall be vested immediately.

The Employee may elect, by providing appropriate direction to the party designated by the Administrator, to change the amount of such contributions or to have such contributions suspended at any time.

(b)  Any change in the rate of payroll deduction authorized by an Employee in accordance with subsection (a) of this Section 5.01 will become effective not later than the first day of the second pay period next following the date on which such authorization is received by the party designated by the Administrator.

(c)  The Corporation may limit the amount of contributions to the trust pursuant to subsection (a) of this Section 5.01 if necessary to comply with Sections 5.03, 5.05, and 8.04 of the Plan.

### 5.02   Transfer of Assets to or Receipt of Assets from Other Qualified Plans

The Administrator may direct the Trustee to accept all of an Employee's funds transferred from a similar qualified plan, and may direct the Trustee to transfer all of a Participant's funds to a similar qualified plan, provided such other qualified plan (1) is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer is a member, and (2) permits such transfers; or (3) is a

21

DOL-PSP-000023

plan maintained by General Motors Corporation as part of an applicable GM collective bargaining agreement. Any funds so transferred shall be accompanied by instructions from the Trustee setting forth the Employee for whose benefit such assets are being transferred, and identifying the source of such accumulated funds. Funds transferred from other plans which otherwise would not be subject to federal income taxation will be designated as After-Tax Savings.

Notwithstanding the foregoing, the Plan may not receive a transfer from another qualified plan if such other plan provides, or at any time had provided, benefits through alternative forms of distribution, including annuities, which are not available under this Plan.

## 5.03   After-Tax Contribution Limitation

(a)   The After-Tax Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)   The actual After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual After-Tax Savings percentage of all other eligible Employees; or

(ii)   The actual After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual After-Tax Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual After-Tax Savings percentage of all other eligible Employees.

(b)   The actual After-Tax Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the

22

ratios (calculated separately for each eligible Employee) of the:

(i)   Amount of After-Tax Savings actually paid over to the Plan trust on behalf of such eligible Employee for the Plan Year to:

(ii)   The eligible Employee's Compensation for such Plan Year.

(c)   The amount of After-Tax Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 5.03 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess After-Tax Savings.

## 5.04   Special Rules

(a)   In the event that this after-tax portion of the Plan satisfies the requirements of Sections 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this after-tax portion of the Plan, then Section 5.02 shall be applied by determining the actual After-Tax Savings percentage of eligible Employees as if all such plans were a single plan.

(b)   The actual After-Tax Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(m) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans shall

23

DOL-PSP-000024

Art. V, 5.04(b)

be treated as separate if mandatorily disaggregated under regulations under Section 401(m) of the Code.

(c)  Notwithstanding any other provision of the Plan, Excess Aggregate Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Aggregate Contributions were allocated. Excess Aggregate Contributions are allocated to the Highly Compensated Employees with the largest amounts of After-Tax Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order until all the Excess Aggregate Contribution have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Aggregate Contributions.

## ARTICLE VI

## INVESTMENT OF PARTICIPANT'S SAVINGS

### 6.01    Investment Options

(a)  Amounts contributed to the trust fund on behalf of Participants pursuant to subsections (a) and (c) of Section 4.01 and subsection (a) of Section 5.01 shall be invested in the following investment options, in increments of 10%, as may be elected by the Participant:

(i)  Delphi Common Stock Fund; or

(ii)  the Mutual Funds; or

(iii)  The Promark Funds

(iv)  Socially Oriented Fund(s)

(b)  A Participant's initial investment election shall remain in effect until changed by the Participant.

24

Art. VI, 6.01(b)

A Participant's investment election may be changed on any Business Day by providing appropriate direction to the party designated by the Administrator. Any change in the Participant's investment election shall be effective as of the Effective Date of Investment Option Election.

(c)  Amounts contributed to the trust fund on behalf of a Participant as provided in subsection (c) of Section 4.01 and Sections 4.02 and 5.02 shall be invested in the same investment option(s) as elected by the Participant pursuant to subsection (a) of this Section 6.01; provided, however, that if contributions are not being made to the trust fund on behalf of such Participant pursuant to subsections (a) of Sections 4.01 and 5.01, the Participant will be required, prior to the contribution or transfer of amounts pursuant to subsection (c) of Section 4.01 and Sections 4.02 and 5.02, to make an election regarding the investment of such amount.

(d)  A Participant may, by giving appropriate direction to the party designated by the Administrator, transfer assets being held in such Participant's Account from one investment option to another investment option, as follows:

(i)  A transfer of assets may include all or any part of such assets in an investment option, except that the Mutual Funds have a minimum transfer amount of $250. If the value of the Mutual Fund is less than the minimum, all such assets in the Fund must be transferred.

(ii)  A Participant may elect a transfer of assets on any Business Day.

(iii)  Any election to transfer assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

25

DOL-PSP-000025

(iv)  Any appropriate election to transfer assets shall be processed as of the Effective Date of Transfer of Assets.

(v)  Where excessive trading can undermine any of the Funds or exceed the available liquidity for any such Fund, Delphi reserves the right to modify or suspend transfer and withdrawal privileges on any of the Non-Mutual Funds, at any time, upon notice to Participants.

(vi)  The Mutual Funds' provider reserves the right to modify or suspend transfer and withdrawal privileges on any of the Mutual Funds in those instances where excessive trading in any one of the Mutual Funds can undermine such Fund.

(vii)  The Socially Oriented Funds provider reserves the right to modify or suspend transfer and withdrawal privileges on the Socially Oriented Funds in those instances where excessive trading in the Socially Oriented Funds can undermine such Fund.

**6.02  Vesting**

Each Participant shall be fully vested in the assets credited to the Participant's Account, and no portion of such Account shall be subject to forfeiture.

**6.03  Withdrawals**

(a)  A Participant may, by providing appropriate direction to the party designated by the Administrator, withdraw assets in such Participant's Account subject to the following provisions:

(1)  Prior to receiving a withdrawal of Deferred Assets, a Participant must withdraw all available After-Tax Assets including any earnings thereon.

(2)  Deferred Assets may be withdrawn from the

26

Participant's Account, subject to the provisions outlined in subsection (a) of this Section 6.03, at any time after attaining age 59-1/2, or prior to age 59-1/2 because of severance from employment, death, Total and Permanent Disability, Financial Hardship, or termination of the Plan.  Prior to receiving a withdrawal for Financial Hardship, a Participant previously must have taken all available asset distributions, withdrawals, and loans under all applicable plans maintained by the Corporation.  The amount that may be withdrawn for a Financial Hardship shall be limited to the lesser of:

(i)  the total amount of Deferred Savings in the Participant's Account as of the Effective Date of Withdrawal; or

(ii)  the amount required to meet the Financial Hardship, including any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal.

(b)  A Participant who has an outstanding loan(s) in accordance with Section 6.06 shall be permitted to make a withdrawal in accordance with subsection (a) of this Section 6.03.

(c)  A Participant who withdraws any Deferred Assets for Financial Hardship in accordance with subsection (a) of this Section 6.03 will be suspended from accumulating further savings under this Plan, and all applicable plans maintained by the Corporation, for a period of 12 months immediately following such withdrawal.

(d)  Any election to withdraw assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

27

DOL-PSP-000026

(e)  The Date of Valuation on any appropriate election to withdraw assets, pursuant to this Section 6.03, shall be the Effective Date of Withdrawal.

### 6.04  Distribution of Assets

(a)  Settlement Upon Termination of Employment:

If a Participant terminates employment, such Participant may elect, by providing appropriate direction to the party designated by the Administrator, to (1) receive installment payments, (2) receive partial withdrawals, (3) receive a total settlement, or (4) defer continuously the distribution of assets in such Participant's Account. If such Participant fails to make an election, the Participant's Assets shall remain in the Participant's Account until the earlier of:

(1)  the Participant's request for a settlement; or

(2)  the Participant's attainment of age 70-1/2.

The Date of Valuation for any such installment payment, partial withdrawal, or total settlement shall be the Effective Date of Withdrawal.

With regard to installment payments, a Participant may elect to receive such payments each calendar month, calendar quarter, semi-annual, or on an annual basis.

Installment payments must be in whole dollar amounts with $100 established as the monthly minimum amount. A Participant may change or discontinue installment payments at any time by providing appropriate direction to the party designated by the Administrator.

If a terminated Participant does not make an election under this Section 6.04 prior to attaining age 70-1/2, distribution of assets in the Participant's Account will

begin not later than April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2 and shall be made annually thereafter in accordance with Section 401(a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401(a)(9)-2 of the Income Tax Regulations.

(b)  Attainment of Age 70-1/2

(i)  If a Participant attains age 70-1/2 and such Participant has not terminated employment, a distribution of the Participant's assets will be made upon termination of employment pursuant to Section 6.04(a).

(ii)  All distributions required under this subsection shall be determined and made in accordance with Section 401 (a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401 (a)(9)-2 of the Income Tax Regulations.

(c)  Undeliverable Assets

In the event a distribution to a Participant or the Participant's beneficiary cannot be made pursuant to subsections (a) and (b) of this Section 6.04 and Section 8.02 because the identity or location of such Participant or beneficiary cannot be determined after reasonable efforts, and if the Participant's settlement remains undistributed for a period of one year from the Date of Valuation, the Administrator may direct that the settlement assets and earnings on such assets be returned to the trust fund and liquidated. All liability for payment thereof shall thereupon terminate; provided, however, in the event the identity or location of the Participant or beneficiary is determined subsequently, the value of the assets at the Date of Valuation shall be paid from the Plan to such person in a single sum. Any assets so liquidated shall be (1) paid to the Participant or

DOL-PSP-000027

beneficiary when the identity or location is determined, or (2) applied to reduce reasonable expenses of administering the Plan.

**6.05    Form of Distribution**

(a)    Upon withdrawal or settlement pursuant to Section 6.03 or subsections (a) and (b) of Section 6.04, a Participant may elect to receive any full shares equivalent to the Current Market Value of their assets invested in any of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund; provided, however, that prior to or coincident with the Effective Date of Withdrawal or Effective Date of Termination, the Participant may elect to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock on the Date of Valuation. All fractional units of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund worth less than one share of stock and all units of the Promark Funds, Socially Oriented Funds, and Mutual Funds will be paid out in cash.

(b)    Upon settlement pursuant to subsection (c) of Section 6.04, a Participant shall receive cash-in-lieu of shares equivalent to the value of their assets liquidated in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock funds on the Date of Valuation.

(c) (1)    In the event of the death of a Participant and upon receipt of all information necessary to determine the beneficiary or beneficiaries, a settlement

30

of all assets in the deceased Participant's account shall be made to the beneficiary or beneficiaries designated pursuant to Section 8.02. The beneficiary or beneficiaries may elect to receive cash-in-lieu of shares equivalent to the value of the assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund in the deceased Participant's Account, based on the Current Market Value of such stock funds on the Date of Valuation. The Date of Valuation will be the Effective Date of Withdrawal. For purposes of making a settlement distribution to the beneficiary or beneficiaries, the Date of Valuation and the Effective Date of Withdrawal means the date on which the Administrator, or its delegate, determines the appropriate beneficiary or beneficiaries and is in receipt of all necessary information and directions to process the settlement.

(2)    Notwithstanding the provision of the immediately preceding paragraph, (a) if a Participant's beneficiary is the Participant's surviving spouse, if the Participant has elected a distribution schedule under Section 6.04 (a) which had commenced by the Participant's date of death, the Participant's account shall continue to be paid to the surviving spouse pursuant to such schedule or, at the spouse's election at any time, in a lump sum, and (b) if distribution of the Participant's account has not commenced as of the Participant's date of death, the surviving spouse shall, for purposes of the distribution requirements and options under the Plan, be deemed a participant; except that the surviving spouse shall be deemed to attain age 70-1/2 on the date the Participant would have attained such age.

Additionally, in no event shall the surviving spouse be able to make contributions to the deceased Participant's Account.

31

DOL-PSP-000028

### 6.06   Loans

(a)   Subject to such rules as the Administrator may prescribe, a Participant, a former Employee, and a surviving spouse, may borrow from assets in such Participant's Account one time each calendar year, for any reason, an amount (when added to the outstanding balance of all other Plan loans) not more than the lesser of:

(1)   $50,000 less the highest aggregate outstanding loan balance over the 12-month period preceding the Participant's application for loan; or

(2)   one-half of the Current Market Value of all assets in the Participant's Account.

The maximum amount available for a loan, to an active Participant, will be reduced by an amount equal to the outstanding principal and interest of any loan that has been defaulted.

For purposes of the above limitation, all loans from all plans maintained by the Corporation [or its subsidiaries in accordance with Section 414(b), (c), or (m) of the Code] shall be aggregated.

(b)   Loans shall be granted in whole dollar amounts with one thousand dollars ($1,000) established as the minimum amount of any loan.

(c)   Loans shall be granted for a minimum period of 12 months, with additional increments of 12 months as the Participant may elect, to a maximum of five years (ten years in the event the loan is for the purchase or construction of the Participant's principal residence), provided a Participant may not elect a term which will result in repayments of less than $10 per pay period.

(d)   Loans shall bear a rate of interest equal to the Prime Rate prevailing as of the last Business Day of the

32

calendar quarter immediately preceding the date the Participant gives appropriate direction for a loan to the party designated by the Administrator.

The interest rate shall remain the same throughout the term of the loan.

(e)   For purposes of this Section 6.06, the Current Market Value of a Participant's assets shall be determined on the Effective Date of Loan.

(f)   Each loan shall be evidenced by a written, or online acknowledged, Participant Loan Agreement that specifies:

(1)   the amount of the loan;

(2)   the term of the loan; and

(3)   the repayment schedule, showing payments to be made in a level amount which will fully amortize the loan over its duration.

By endorsing and either cashing or depositing the check representing the loan, a Participant shall acknowledge receipt of the Participant Loan Agreement and agree to the terms and conditions contained therein.

(g)   Cash equal to the value of any loan granted shall be obtained by liquidating assets in the Participant's Account from investment options in which the Participant has assets, as the Participant may elect.

(h)   Repayment of a loan shall be through weekly payroll deductions, except that if the Participant is not an active Employee, such repayments shall be made through monthly installment payments. Payments of principal and interest shall be applied to reduce the outstanding balance of a loan. Loan repayment amounts shall be allocated to the Participant's Account in the same investment option(s) as elected by the Participant

33

DOL-PSP-000029

pursuant to subsection (a) of Section 6.01. A Participant shall be entitled to prepay the total outstanding loan balance or make partial prepayment at any time without penalty.

(i)    A Participant with an outstanding loan who is placed on layoff shall be entitled to:

(1)    make installment payments equivalent in value to the payments deducted previously from the Participant's paycheck; or

(2)    suspend loan payments for a period of up to 12 months while on layoff, provided such period does not extend beyond the maximum loan term.

(j)    A Participant with an outstanding loan who is placed on a disability leave of absence must make installment payments substantially equal to the payments deducted previously from the Participant's paycheck.

(k)    No earnings shall accrue to the Participant's Account with respect to the outstanding balance of any loan.

(l)    In the event an active Participant fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the Participant's loan will be defaulted and such Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. An active Participant will not be relieved of the liability to repay a loan that is classified as a deemed distribution.

(m)    In the event a former Employee, surviving spouse, or a terminated Participant (including

34

termination due to death or retirement) fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the former Employee, surviving spouse, or terminated Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. A former Employee, surviving spouse, or terminated Participant will be relieved of the liability to repay a loan once such loan is classified as a deemed distribution.

(n)    A Participant (or beneficiary) who, prior to such Participant's repayment of the total principal amount of and accrued interest on a loan, requests or receives a settlement of assets, shall be deemed to have elected a withdrawal, pursuant to Section 6.03, equal to the principal amount of and accrued interest on the loan as of the Effective Date of Withdrawal.

(o)    Any appropriate direction given to borrow assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

(p)    A Participant may have no more than five loans outstanding at any one time.

### ARTICLE VII

### TRUST FUND

7.01    Contributions to the Trustee

(a)    All Deferred and After-Tax Savings under this Plan will be paid to the Trustee who shall invest all such amounts and earnings thereon.

35

DOL-PSP-000030

**(b)** Once the Deferred and After-Tax Savings are contributed to the Trustee by the Corporation, the Corporation shall be relieved of any further liability except as otherwise may be provided by The Employee Retirement Income Security Act of 1974.

## 7.02 Investment Options

The Trustee is to invest in the following:

**(a)** Delphi Common Stock Funds

**(i)** The Participants' contributions which are to be invested in the Delphi Common Stock Fund and dividends received by the Trustee shall be deposited in the Delphi Common Stock Fund no later than the 10th day of the month following the month such contributions or dividends are received by the Trustee and shall be invested by an investment manager, or managers, appointed by the Named Fiduciary, or its delegate, under a management agreement which specifies the terms and conditions of such Funds.

**(ii)** Any administrative expenses incurred, including brokerage commissions or transfer taxes, as a result of offering the Delphi Common Stock Fund, shall be paid pursuant to Section 10.03.

**(iii)** Shares of common stocks held in the Delphi Common Stock Fund acquired by the Trustee under the terms of this Plan shall be registered in the name of the Trustee, or its nominee. To the extent that it is consistent with ERISA and the Code, the Trustee shall vote and/or tender shares (including fractions), equivalent to the Current Market Value of the assets invested in the Delphi Common Stock Fund credited to each Participant, as instructed by the Participant but shall not vote shares for which such instructions are not received.

**(iv)** If the Trustee has not received direction

36

from Participants which can be followed in accordance with ERISA and the Code, the Trustee shall, to the extent that it is consistent with ERISA and the Code, in its discretion, exercise or sell for the benefit of Participants any rights received from Delphi Corporation for the purchase of any additional shares of stock or other securities which Delphi may offer to its stockholders.

**(v)** In the event that outstanding shares of the Delphi Common Stock shall be changed in number or class by reason of split-ups, combinations, mergers, consolidations, or recapitalizations, or by reason of stock dividends, the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stock which thereafter may be purchased under the Plan, both in the aggregate and as to any individual, and the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stock then in the Account of any Participant shall be adjusted so as to reflect such change.

**(b)** Mutual Funds

The Participants' contributions invested in the Mutual Funds shall be invested by the Mutual Fund company appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Mutual Fund Prospectus which specifies the terms and conditions of such Funds.

**(c)** Promark Funds

The Participants' contributions invested in the Promark Funds shall be invested by an investment manager or managers appointed by the Named Fiduciary, or its delegate, in a Fund with specified terms and conditions.

**(d)** Socially Oriented Funds

The participants' contributions invested in the

37

Socially Oriented Funds shall be invested by a mutual fund company or companies appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Fund Prospectus which specifies the terms and conditions of such Funds.

### 7.03   EDS Common Stock ($0.01 Par Value)

(a)   The Trustee may hold in Participants' Accounts any EDS common stock distributed or to be distributed as a stock dividend. Any cash dividends received by the Trustee on EDS common stock shall be invested in the Promark Income Fund.

(b)   A Participant may elect to transfer assets held in the EDS Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the EDS Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

### 7.04   Raytheon Company Common Stock

(a)   The Trustee may hold in Participants' Accounts any Raytheon common stock distributed or to be distributed as a stock dividend. Any cash dividend received by the Trustee on Raytheon common stock shall be invested in the Promark Income Fund.

(b)   A participant may elect to transfer assets held in the Raytheon Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or

38

settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the Raytheon Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

### 7.05   GM Common Stocks

(a)   The Trustee may hold in Participants' Accounts any GM common stocks. Any cash dividends received by the Trustee on GM common stocks shall be invested in the Promark Income Fund.

(b)   A Participant may elect to transfer assets held in the GM Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds to which such withdrawal or settlement applies, based on the Current Market Value of such stock funds on the Date of Valuation for the withdrawal or settlement.

### ARTICLE VIII
### OTHER PROVISIONS

### 8.01   Non-Assignability

Except as otherwise may be provided by Section 6.06, no right or interest of any Participant under this Plan or in the Participant's Account shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment,

39

DOL-PSP-000032

pledge, bankruptcy, or in any other manner, except (1) in accord with provisions of a qualified domestic relations order as defined in IRC Section 414(p), (2) a Participant's voluntary assignment of an amount not in excess of 10% of a distribution from the Plan, and (3) further excluding devolution by death or mental incompetency; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant.

### 8.02   Designation of Beneficiaries in Event of Death

(a)   A Participant may file with the party designated by the Administrator a written designation of a beneficiary or beneficiaries with respect to all or part of the assets in the Account of the Participant.

For a married Participant who dies, the entire balance of the Account shall be paid to the surviving spouse unless the written designation of beneficiary designating a person(s) other than the spouse with respect to part or all of the assets in the Account of the Participant includes the written consent of the spouse, witnessed by the Plan representative or a notary public. The written designation of beneficiary filed with the party designated by the Administrator may be changed or revoked at any time by the action of the Participant and, if necessary, the spouse. No designation or change of beneficiary will be effective until it is determined to be in order by the party designated by the Administrator, but when so determined it will be effective retroactively to the date of the instrument making the designation or change.

(b)   In the event an unmarried Participant does not file a written designation of beneficiaries, such a Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or

40

persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees, unless such Participant shall have assigned such life insurance, in which case the assets in the account shall be paid to the assignee.

(c)   A beneficiary or beneficiaries will receive, subject to the provisions of Section 6.05, in the event of the Participant's death, the assets in the Participant's Account in accordance with the applicable designation. If the Corporation shall be in doubt as to the right of any beneficiary to receive any such assets, the Corporation may deliver such assets to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone.

### 8.03   Merger or Consolidation

In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan or program, each Participant in the Plan would, if the Plan then terminated, receive the assets in each such Participant's Account immediately after the merger, consolidation, or transfer which are at least equal in value to the assets each such Participant would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

### 8.04   Limitations on Contributions and Benefits

(a)   General Provisions

For purposes of this Section:

(i)   The term "Limitation Year" shall mean the Plan Year.

(ii)   All defined benefit plans or programs of the Corporation will be treated as one defined benefit plan

41

or program, and all defined contribution plans or programs will be treated as one defined contribution plan or program.

(iii) No contribution to this Plan may exceed the limits provided under Section 404 of the Code for current deductibility for income tax purposes.

(iv) Contributions made to the trust by the Corporation pursuant to subsection (c) of Section 4.01 shall be allocated to a Participant's Account within the current Limitation Year.

(v) For purposes of this Section, the term "Compensation" shall mean compensation as defined under Section 2.07 of the Plan.

(vi) The term "Annual Additions" shall mean the sum, for any Limitation Year, of Employee contributions, Corporation contributions, and forfeitures allocated to an Employee's account under all defined contribution plans.

(b) In no event shall contributions or benefits under this Plan exceed the limits of Section 415 of the Code and the regulations thereunder.

(c) For any Employee who participates under this Plan and any defined contribution plan or defined benefit plan of the Corporation, the sum of such Employee's Annual Additions shall not exceed the lesser of $40,000 (or such other amount prescribed by the Secretary of the Treasury applicable to the Limitation Year) or 100% of such Employee's Compensation for any Limitation Year.

(d) Any amounts elected to be contributed by an Employee pursuant to Section 5.01 of Article V which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee and, if necessary, any amounts elected to be

42

contributed by an Employee pursuant to subsections (a) or (c) of Section 4.01 of Article IV which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee.

## 8.05   Deferred Savings Limitation

A Participant's annual Deferred Savings under this Plan and all similar contributions to other plans maintained by the Corporation may not exceed the amount permitted under Federal Law (as adjusted by the Secretary of the Treasury). The following table represents the annual limits on Deferred Saving:

| Annual Deferred Savings Limits | | | |
|---|---|---|---|
| Year | Under Age 50 | Catch-Up* Contributions | Age 50 or Over (Includes "Catch-Up") |
| 2003 | $12,000 | $2,000 | $14,000 |
| 2004 | $13,000 | $3,000 | $16,000 |
| 2005 | $14,000 | $4,000 | $18,000 |
| 2006 | $15,000 | $5,000 | $20,000 |

*  Catch-up contributions may be made for participants age 50 or over only if such participants are restricted by other limits described in this Supplemental Agreement.

In the event a Participant identifies, in writing, before March 2 following the end of the Plan Year an amount of Deferred Savings as exceeding this limitation, as applied to this Plan and all other plans in which such Employee participated, such amounts will be refunded to the Participant no later than April 15 following the receipt of such written notice from the Participant. In the event the Administrator identifies an amount in excess of the limitation, the Participant will be deemed to have notified the Administrator, and such amount will be refunded to the Participant.

43

## 8.06   Provisions to Comply With Section 416 of the Code

(a)   In any Plan Year in which the Plan is considered a "Top-Heavy Plan," as defined in Section 416 of the Code, the requirements of Section 416 of the Code, and the regulations thereunder, are applicable and must be satisfied.

(b)   The definition of a "Top-Heavy Plan" set forth in Section 416(g) of the Code and the additional definitions set forth in Section 416(i) of the Code are herein incorporated by reference.

(c)   If the Plan is determined to be a "Top-Heavy Plan" for a Plan Year, the Corporation shall make contributions equal to three percent of Compensation on behalf of each Participant who is not a "key employee" under Section 416 of the Code.

## 8.07   Investment Decisions

Any Participant or beneficiary, who makes an investment election permitted under the Plan or otherwise exercises control permitted under the Plan over the assets in the account, shall be deemed the named fiduciary under ERISA responsible for such decisions to the extent that such designation is permissible under applicable law and that the investment election or other exercise of control is not protected by Section 404(c) of ERISA, as amended.

## 8.08   Special Provisions Regarding Veterans

(a)   In the event an Employee is rehired following qualified military service, as defined in the Uniformed Services Employment and Re-Employment Rights Act, that was effective on or after December 15, 1994, such Employee will be entitled to have the Corporation make contributions to the Plan from such Employee's current earnings that shall be attributable to the period of time

44

contributions were not otherwise allowable due to military service. Such contributions shall be in addition to contributions otherwise permitted under Sections 4.01 and 5.01, and shall be made as permitted under this Section and Section 414(u) of the Code.

(b)   Additional contributions permitted under this Section shall be based on the amount of Eligible Weekly Earnings and Profit Sharing Amount that the Employee would have received from the Corporation but for the military service, and such contributions shall be subject to the Plan's terms and conditions in effect during the applicable period of military service.   Such contributions shall be made during the period that begins upon re-employment and extends for the lesser of five years or the Employee's period of military service multiplied by three.

(c)   Additional contributions made under this Section shall not be taken into account in the current year, for purposes of calculating and applying any limitation or requirement identified in Section 414(u)(1) of the Code.   However, in no event may such contributions, when added to actual contributions previously made, exceed the amount of contributions allowable under the applicable limits in effect during the year of military service if the Employee had continued to be employed by the Corporation.

(d)   An Employee covered by this Section who has an outstanding loan(s) during the period of qualified military service covered by this Section, shall be entitled to suspend loan payments during such period, and the time for repayment of such loan(s) shall be extended to coincide with the suspension for a period of time equal to the period of qualified military service.

## 8.09   Prohibition on Reversion

The Plan shall be maintained and administered for the

45

DOL-PSP-000035

exclusive purpose of providing benefits to Participants and beneficiaries and defraying reasonable expenses. Except as provided herein, Plan funds may not revert to the Corporation. All contributions to the Plan are conditioned on their deductibility under Section 404 of the Code at the time made. All or any part of a contribution for which a deduction is not allowed may be returned to the Corporation within one year of the date of disallowance. Further, in the event contributions are made due to a mistake or an administration error, such contributions may be returned to the Corporation within one year of the date of discovery of such mistake or error.

## ARTICLE IX

## EMPLOYEE STOCK OWNERSHIP PLAN PROVISIONS

**9.01** The portion of the Plan that consists of Deferred Assets and After-Tax Assets that are invested in the Delphi Common Stock Fund, including any dividends, earnings or gains thereon (the "ESOP portion" or "ESOP"), is designed to invest primarily in qualifying employer securities as defined by Section 4975(e)(8) of the Code, and is an employee stock ownership plan under Section 4975(e)(7) of the Code. This Article IX applies to this ESOP portion of the Plan.

**9.02   ESOP Pre-Tax Savings Limitation**

(a)   The ESOP Deferred Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)   The actual ESOP Deferred Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual ESOP Deferred Savings percentage of all other eligible Employees; or

46

(ii)   The actual ESOP Deferred Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual ESOP Deferred Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual ESOP Deferred Savings percentage of all other eligible Employees.

(b)   The actual ESOP Deferred Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)   Amount of ESOP Deferred Savings actually paid over to the Plan trust not later than two and one-half months after the Plan Year on behalf of such eligible Employee for the Plan Year to:

(ii)   The eligible Employee's Compensation for such Plan Year.

(c)   The amount of ESOP Deferred Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 9.02 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess ESOP Deferred Savings.

**9.03   ESOP After-Tax Contribution Limitation**

(a)   The ESOP After-Tax Contribution percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

47

DOL-PSP-000036

(i)  The actual ESOP After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual ESOP After-Tax Savings percentage of all other eligible Employees; or

(ii)  The actual ESOP After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual ESOP After-Tax Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual ESOP After-Tax Savings percentage of all other eligible Employees.

(b)  The actual ESOP After-Tax Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)  Amount of ESOP After-Tax Savings actually paid over to the Plan trust on behalf of such eligible Employee for the Plan Year to:

(ii)  The eligible Employee's Compensation for such Plan Year.

(c)  The amount of ESOP After-Tax Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 9.03 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year.  The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess ESOP After-Tax Savings.

48

## 9.04  ESOP Special Rules

(i)  In the event that this ESOP portion of the Plan satisfies the requirements of Sections 401(k), 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 9.04 shall be applied by determining the actual ESOP Deferred Savings percentage of eligible Employees as if all such plans were a single plan.

(ii)  The actual ESOP Deferred Savings percentage or ESOP After-Tax Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Sections 401(k) and 401(m) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan.  Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Sections 401(k) and 4.01(m) of the Code.

(iii)  In the event the limits of Sections 9.02 or 9.03 are exceeded, then the actual ESOP Deferred Savings percentage or the actual ESOP After-Tax Savings percentage of those Highly Compensated Employees will be reduced using the same correction procedure set forth in Sections 4.04(d)(iii) and 5.04 as needed so that the limits are not exceeded.  The amount by which each Highly Compensated Employee's ESOP Deferred Savings or ESOP After-Tax Savings is reduced shall be treated as an Excess Contribution or Excess Aggregate Contribution, respectively.  The actual ESOP Deferred Savings percentage or the actual ESOP After-Tax Savings percentage of the Highly Compensated Employees is determined after any corrections are made.  Excess contributions and excess aggregate contributions shall be treated as Annual Additions.

49

DOL-PSP-000037

## 9.05  Distribution of ESOP Dividends

A Participant may elect to receive cash dividends paid on shares of Delphi Common Stock corresponding to the units in the Delphi Common Stock Fund in a Participant's Account, rather than being reinvested in the respective funds, provided the Participant gives appropriate and timely notice of such election to the party designated by the Administrator. Dividends paid directly to Participants pursuant to this Section shall be paid not later than 90 days after the end of the Plan Year.

## ARTICLE X

## ADMINISTRATION

### 10.01  Administrative Responsibility

The Executive Committee of the Corporation's Board of Directors shall be the Named Fiduciary with respect to the Plan except as set forth below and in Section 8.07. The Executive Committee may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by The Employee Retirement Income Security Act of 1974. Except as set forth in Section 8.07, General Motors Investment Management Corporation (GMIMCo) is the Named Fiduciary of this Plan for purposes of investment of Plan assets. GMIMCo may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by The Employee Retirement Income Security Act of 1974.

Pursuant to authority delegated to it by the Named Fiduciary, Delphi, or its delegate, shall have responsibility for the day-to-day operation, management, and administration of the Plan, including full power and authority to construe, interpret, and administer this Plan and to pass upon and decide cases

50

presenting unusual circumstances in conformity with the objectives of the Plan and under such rules as Delphi or its delegate, may establish. Decisions of Delphi, or its delegate, shall be final and binding upon the Corporation and its employees.

### 10.02  Records

The Administrator shall provide for the maintenance of suitable records to reflect the separate Account balance of each Participant's contributions and any earnings thereon.

The Administrator shall make, or cause to be made, valuations of the trust fund or market value at least annually.

### 10.03  Administrative Expenses

Administrative expenses of the Plan shall be paid from assets liquidated pursuant to subsection (c) of Section 6.04. To the extent such expenses are not thereby paid in full, such expenses will be paid by the Corporation.

With regard to the fees for the Socially Oriented Funds and the Promark Funds (excluding the Fund currently known as the Promark Large Cap Index Fund), such fees for investment, Trustee, and management shall be paid by the Funds.

### 10.04  Participant Statements

Each Participant will be furnished a statement no less than four times per year showing the Current Market Value of the assets, including earnings, credited to the Participant's Account.

### 10.05  Incapacity

If the Administrator deems any person incapable of receiving any distribution to which such person is entitled under this Plan because such person has not yet

51

reached the age of majority, or because of illness, infirmity, mental incompetency or other incapacity, it may make payment, for the benefit or the account of such incapacitated person, to any person selected by the Administrator, whose receipt thereof shall be a complete settlement thereof. Such payments shall, to the extent thereof, discharge all liability of the Corporation and each other fiduciary with respect to this Plan.

### 10.06    Notice of Claim Denial

The Administrator will provide adequate notice, in writing, to any Participant or beneficiary whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial.

The Participant or beneficiary will be given an opportunity for a full and fair review by the Named Fiduciary, or its delegate, of the decision denying the claim. The Participant or beneficiary will be given 60 days from the date of the notice denying such claim within which to request such review.

### 10.07    Confidential Information

The Administrator, or its delegate, shall be responsible for ensuring that sufficient procedures are in place and followed to safeguard the confidentiality (except to the extent necessary to comply with federal laws or state laws not pre-empted by ERISA) of information relating to the purchase, holding, and sale of securities, and the exercise of voting, tender, and similar rights with respect to such securities by Participants and beneficiaries. If deemed necessary by the Administrator, due to potential for undue employer influence with regard to exercise of shareholder rights, an independent party will be appointed by the Administrator to carry out instructions of Participants or beneficiaries relating to such rights.

### ARTICLE XI

### AMENDMENT, MODIFICATION, SUSPENSION, OR TERMINATION

### 11.01    Amendment, Modification, Suspension, or Termination

The Corporation reserves the right, by and through its Board of Directors, or its delegate, to amend, modify, suspend, or terminate the Plan, but any such action shall have no retroactive effect which would prejudice the interests of the Participants.

### 11.02    Distribution Upon Plan Termination

In the event of termination or partial termination of the Plan without establishment of a successor plan, the Administrator may direct the Trustee to:

(a)    continue to administer the trust fund and pay Account balances in accordance with Section 6.04 to Participants affected by the termination of the Plan upon their termination of employment, or to beneficiaries upon such a Participant's death, until the trust fund has been liquidated; or

(b)    distribute as soon as administratively feasible the assets remaining in the trust fund in a lump sum to Participants and beneficiaries in proportion to their respective Account balances.

(c)    In the event of termination, or partial termination, or a complete discontinuance of contributions under the Plan, the account balance of each affected Participant will be non-forfeitable.

DOL-PSP-000039

Misc. (Benefits Training and Education)

# DELPHI CORPORATION
### September 18, 2003

International Union, United Automobile
 Aerospace and Agricultural Implement
 Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn: Mr. Richard Shoemaker
 Vice President and Director
 General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties renewed their
commitment to provide ongoing training programs for
Company and Union Benefit Representatives so as to
improve the quality of service provided to hourly
employees. The parties also recognized the importance
of communications programs aimed at educating
employees about their benefits.

It was agreed that such training and education
programs will be developed jointly and the cost of
developing and implementing such programs properly
will be paid from the National Joint Skill Development
and Training Fund as approved by the Executive Board
for Joint Activities. These include, but are not limited to,
the following:

- Joint Delphi-UAW Benefits Training Conference may
 be scheduled upon approval by the parties.

- Continuing education program for Union Benefit
 Representatives will be provided by the parties.
 Training sessions will be scheduled for newly
 appointed Union Benefit Representatives and
 Alternates as agreed to by the parties. The sessions
 will concentrate on areas such as eligibility to
 receive benefits, description and interpretation of
 benefit plan provisions, and calculation of benefits.

- Conduct periodic on-site plant surveys and audits to
 evaluate training and education needs to improve
 employee service.

54

Misc. (Benefits Training and Education)

- Ad hoc training meetings on legal developments or
 other special needs.

Included also are any travel, lodging and living
expenses incurred by Company and Union
representatives in relation to the above. In addition,
the Fund will pay for lost time (eight hours per day base
rate plus COLA) of Union Benefit Representatives
attending such programs away from their locations.
The Company will pay for the time (eight hours per day
base rate plus COLA) of alternate Union Benefit
Representatives who replace those attending such
programs.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

55

DOL-PSP-000040

Misc. (Improving Benefits Service Through Technology)

# DELPHI CORPORATION
### September 18, 2003

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:   Mr. Richard Shoemaker
Vice President and Director
General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties recognized the
need to move ahead with the development of
technological applications to improve the quality of
service provided to hourly employees.

1.  The parties recognized the need to provide the
necessary tools to Local Union Benefit
Representatives so that they may improve the
service they are providing to hourly employees.
Local Union Benefit Representatives require basic
information that can be accessed quickly in order to
confidently and accurately answer many of the
questions they receive. Therefore, the parties have
designed <u>two systems</u>, the Benefits Data Access <u>and
the Benefits WorkStation Access systems</u>, whereby
Local Union Benefit Representatives have access to
certain data elements from several benefit data
systems. These systems provide inquiry only access
to Local Union Benefit Representatives who
complete a computer training program. Access is
limited to information for UAW hourly employees at
their particular location.

2.  The parties jointly will develop and implement a
new benefit documentation feature to the existing
systems that will be available to Local Union Benefit
Representatives. The Systems will include benefit
plan booklets, administrative manuals (where
applicable), relevant contract provisions and
appropriate process descriptions. Upon approval by

56

the Executive Board of Joint Activities, the cost of
development, hardware and software requirements,
conversion of written documentation, and
installation and training, will be charged to the
National Joint Skill Development and Training Fund.
It is contemplated the benefit documentation feature
will be implemented during the term of the <u>2003</u>
Agreement.

3.  The parties further agreed to provide hourly
employees with <u>web technology in addition to the
continued</u> use of a Voice Response System for
inquiry and transactions in the Personal Savings
Plan.

4.  The parties agree to enhance the Benefit Data
Access System to provide the Pension Plan survivor
coverage election/rejection and the cost of such
survivor option. The cost of development and
implementation will be charged to the National Joint
Skill Development and Training Fund.

In conclusion, during the term of the new Agreement,
the parties pledge to carefully consider every
opportunity to improve the quality and efficiency in
benefits delivery.

Very truly yours,

DELPHI CORPORATION

<u>Kevin M. Butler</u>
<u>Vice President</u>
<u>Human Resource Management</u>

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

57

DOL-PSP-000041

(PSP Contribution Level and Roth IRA)

## DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
  Aerospace and Agricultural Implement
  Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
         Vice President and Director
         General Motors Department

Dear Mr. Shoemaker:

During these negotiations, Delphi agreed to provide for a Roth IRA in the PSP beginning January 1, 2006, that would be consistent with legal and regulatory guidelines.

                   Very truly yours,

                   DELPHI CORPORATION

                   Kevin M. Butler
                   Vice President
                   Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

58

---

(PSP Employee Workshop)

## DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
  Aerospace and Agricultural Implement
  Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
         Vice President and Director
         General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the Corporation's willingness to continue to make available to hourly employees during non-working time the two Fidelity Workshops titled, the Investment Education Workshop and the Getting Ready for Retirement Workshop. Such workshops may be scheduled upon the request of the local Union and Management leadership. The parties recognize the importance of educating employees on the Personal Savings Plan.

                   Very truly yours,

                   DELPHI CORPORATION

                   Kevin M. Butler
                   Vice President
                   Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

59

Dividend and Cash Investment Plan

## DELPHI CORPORATION
September 18, 2003

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
      Vice President and Director
      General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
ability of employees and retirees to purchase
additional Delphi Common Stock with no load outside
of the Personal Savings Plan.

The Corporation informed the Union of the availability
of the Dividend Reinvestment and Stock Purchase
Program and the Union agreed that this Plan
satisfactorily addressed their request.

           Very truly yours,

           DELPHI CORPORATION

           Kevin M. Butler
           Vice President
           Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

60

---

Annual Review of Fund Performance

## DELPHI CORPORATION
September 18, 2003

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
      Vice President and Director
      General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
Union's interest in a more active role in understanding
the direction of the Personal Savings Plan (PSP). To this
end, the parties agreed that General Motors Asset
Management (GMAM) and Fidelity would make an
annual presentation to the Union on the PSP. The
review will include such things as:

Plan Participation
Account Status and Activity
Average Participant Account Balance
Amount of Assets in Available Investment Options
Primark Fund Performance
Fidelity Fund Performance
Fund and Plan Expenses

61

DOL-PSP-000043

Annual Review of Fund Performance

The parties will discuss the current array of funds, their
performance and any recommendation for changes. At
the joint request of the parties, GMAM will review funds
and other future directions and report its
recommendations to the parties.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

62

---

Electronic Loan Repayment

# DELPHI CORPORATION
### September 18, 2003

International Union, United Automobile
    Aerospace and Agricultural Implement
    Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
loan repayment process for those Personal Savings
Plan (PSP) Participants who are not actively at work.

The parties agreed that those PSP Participants who are
not actively at work would receive information about
establishing an Electronic Funds Transfer (EFT) with
their loan coupon book. Participants will have the
option of repaying their loans through the convenience
of EFT or via mail by using their loan coupon book.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

63

# DELPHI CORPORATION
### September 18, 2003

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
Vice President and Director
General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
process for Employees to defer Suggestion Award
Payments into their Personal Savings Plan (PSP)
account. It was noted that Employees currently have
the ability to defer their Suggestion Award Payments,
up to the maximum Plan contribution rate.

The Union requested that Employees be permitted to
defer up to 100% of their Suggestion Award Payments
into the PSP. The parties discussed the payment
process for Suggestion Award Payments with the
expectation of implementing a lump sum deferral
feature of 100% of such payment into the PSP, up to the
annual IRS dollar limits.

The implementation date of the PSP deferral feature on
Suggestion Award Payments will commence on or
before January 1, 2005. This is due to the programming
requirements for the Payroll System as well as the
establishment of necessary financial and
administrative processes, including a separate deferral
election for an Employee's Suggestion Award.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

64

65

529 College Savings Plan(s)

## DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
Vice President and Director
General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
Union's interest in communicating information
regarding 529 College Savings Plan(s) to hourly
Employees.  To this end, the parties agreed that Delphi
will prepare a communication brochure intended to
inform hourly Employees on the advantages of
establishing a 529 College Savings Plan(s).

The decision to participate in a 529 College Savings
Plan(s) will be on a voluntary basis handled directly
between the employee and the plan's respective
provider.  It is clearly understood that neither Delphi
nor the Union will have any administrative or fiduciary
responsibility with regard to these 529 College Savings
Plan(s).

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

66

NOTES

**NOTES**

**NOTES**

Subjet to FOIA, 29 CFR 70.26



DOL-PSP-000048



Subject to FOIA, 29 CFR 70.26

