# Exhibit 12



Margaret H. Raymond
Vice President and
Associate General Counsel

February 27, 2006

-DETROIT

FEB 2 8 2006

RECEIVED

**CONFIDENTIAL TREATMENT REQUESTED
PURSUANT TO 29 C.F.R. SECTION 70.26(b)**

BY OVERNIGHT DELIVERY

Frank Schneider
Employee Benefits Security Administration
211 West Fort Street
Suite 1310
Detroit, MI 48226-3211

    Re:    Delphi Personal Savings Plan for Hourly-Rate Employees in the United States
             Fidelity Plan Number 29000

Dear Mr. Schneider:

This letter responds to a subpoena requesting documents directed to "Fidelity Investments" enclosed with the letter from Paul Baumann dated January 10, 2006. Thank you for your courtesy in extending our response date to February 28, 2006.

Fidelity Investments® is the trade name for a group of financial services companies owned by or affiliated with FMR Corp. This response is provided on behalf of those FMR Corp. subsidiaries and affiliates ("Fidelity") responsible for providing recordkeeping and related services to the Delphi Personal Savings Plan for Hourly-Rate Employees (the "Plan"). For convenience, this letter includes our formal objections as well as our response. As noted in the objections, we have grouped certain items of the subpoena together in the response, in order to provide a discussion of related topics together. Documents enclosed, marked FID-DOL-DEL 00001 to FID-DOL-DEL 00440, are described in the response.

This response and all enclosures are hereby designated as confidential information within the meaning of 29 C.F.R. § 70.26(b).

**Formal Objections**

    1.    Fidelity objects to the subpoena on the grounds that it is unduly burdensome. Certain of the items seek information that has already been requested of Delphi

FMR Corp.
Legal Department

82 Devonshire Street F6C
Boston, MA 02109-3614

Phone: 617 563-5590
Fax:    617 385-1869
margaret.raymond@fmr.com





Corporation ("Delphi"), and thus are unnecessarily duplicative. Certain items in the subpoena are duplicative of other items (e.g., items 12, 22 and 23, all seeking information about corrective actions). Fidelity has grouped together similar items for purposes of the response. In addition, Fidelity has enclosed information we provided previously to Delphi for use in responding to your office's inquiry.

2. Fidelity objects to the subpoena on the grounds that it is overbroad. Especially in light of the all-encompassing definition of "documents," each of the items that requests "all documents" would seek tremendous quantities of paper and electronic records—often containing the same information—dating back to periods outside the statute of limitations. These materials would require enormous expense to assemble and review, and a full response to such a request would serve only to drown the recipient in reams of unhelpful information. Especially in light of the fact that Fidelity has accepted certain responsibility for an administrative error that occurred in late 1999 (outside the statute of limitations period for ERISA violations) and corrected that error using methods approved by Delphi and the Internal Revenue Service, the request for a tremendous volume of information required about the Plan's general administration and the original error is overbroad and unduly burdensome. In lieu of such a burdensome search, Fidelity has provided summary information about the topics, and selected documents that should assist the Department of Labor in understanding the outlines of the GM dividend processing error and its correction, as well as Fidelity's process improvements.

3. Fidelity objects to the subpoena on the grounds that it is vague, or suggests facts that are inconsistent with Fidelity's understanding of events. For example, item 15 relating to election forms received by Fidelity and subsequently submitted to the Internal Revenue Service does not correspond to our understanding of events, since no election forms were used at any point in the process. For all items that are unclear or ambiguous, we have made a good faith effort to provide information addressing those topics that we believe to be of interest to your office.

4. Fidelity objects to the subpoena to the extent that it seeks attorney-client privileged information. No specific items have been withheld on this basis.

5. Fidelity objects to the subpoena to the extent it seeks personally identifiable information about specific participants and beneficiaries. To the extent such information is included in documents provided with this response, Fidelity has redacted all such information.

Confidential Treatment Requested Pursuant to 29 C.F.R. Section 70.26(b)



Mr. Frank Schneider
February 27, 2006
Page 3

6. Fidelity objects to the subpoena to the extent it seeks information that is proprietary and confidential to Fidelity. No specific items have been withheld on this basis.

**Response**

Subject to and without waiving the foregoing objections, Fidelity's response follows.

Improper Dividend Reinvestment and Discovery of Problem
Items 1-9

Delphi Corporation was spun off from GM Corporation in May 1999. The Plan became effective on May 28, 1999, and all new employer and employee contributions attributable to its participants were directed to the Plan thereafter. The balances for certain Delphi employees were transferred in-kind to the Plan from a predecessor GM plan; those participants were allowed to maintain their balances in the GM Common Stock Fund, a unitized fund.[1] For some period of time after the establishment of the Plan, Fidelity was instructed to reinvest GM dividends in the GM Common Stock Fund, pending discussions between Delphi management and its unions. Accordingly, Fidelity used dividends received on GM common stock to purchase additional units of the GM Common Stock Fund. Following union negotiations, Delphi amended to the Plan to freeze the fund to new purchases, and effective at or near the end of 1999, to require dividends on the GM Common Stock Fund to be directed to the Promark Income Fund. It appears that Fidelity may have received instructions to change the dividend processing for GM common stock in the Plan, but failed to properly establish system edits on the Fidelity Participant Recordkeeping System ("FPRS") to accomplish the re-direction of dividends. The problem came to light in early March 2004 when Fidelity began to research a participant inquiry. Upon discovery of the improper dividend reinvestment, Fidelity alerted Delphi, and effective March 3, 2004, changed the fund set-up so that dividends payable thereafter on GM stock in the Plan would be directed to the Promark Income Fund. All dividends paid on GM stock held in the Plan for 2004 forward have been correctly directed to the Promark Income Fund. (Dividends on GM common stock are typically paid March 10, June 10, September 10 and December 10.)

GM common stock dividends attributable to the GM Common Stock Fund were reflected on regular monthly trial balance reports prepared by Fidelity.[2] The Plan's monthly trial balance included detail of aggregate activity for each investment option, and reflected the GM common stock dividend both

---

[1] In a unitized fund, the fund is invested in shares of stock, along with a small percentage of cash equivalents ("cash"), pursuant to instruction from the plan's named fiduciary. The cash is used to facilitate daily exchanges by participants without waiting the normal three days for a stock purchase or sale to settle. A participant's interest in the fund is measured in units, not in shares of stock.

[2] All trial balance reports prior to that for July 2001 were sent in hard copy to Delphi representatives. Thereafter, the trial balance reports were posted on Fidelity PlanSponsor WebStation ("PSW"), a password-protected internet site maintained for plan sponsors. Both Delphi representatives and a representative of GM Asset Management, the Plan's named fiduciary, had access to the Plan's information on PSW.

Confidential Treatment Requested Pursuant to 29 C.F.R. Section 70.26(b)



Mr. Frank Schneider
February 27, 2006
Page 4

before and after March 3, 2004 (the date the fund set-up error was corrected prospectively). The Plan trial balance for April 2004 reflects the correct dividend processing. (Exhibit 1). Dividends receivable on GM common stock were posted to the GM Common Stock Fund. (Exhibit 1, page 34). An offsetting negative balance forward in the same amount was also posted to the fund. (Exhibit 1, page 34). That amount was incorporated into the amount reflected as a positive balance forward into the Promark Income Fund.[3] (Exhibit 1, page 23). As expected with a sell-only fund, the overall number of units held in the GM Common Stock Fund declined during the month. (Exhibit 1, page 3). In contrast, the Plan trial balance for December 2003 reflects incorrect dividend processing. (Exhibit 2). Dividends receivable on GM common stock were posted to the GM Common Stock Fund, but no offsetting negative balance forward was reflected in that fund. (Exhibit 2, page 34). The positive balance forward reflected in Promark Income Fund was too small to include the GM common stock dividend, and instead equaled the EDS common stock dividend. (Exhibit 2, page 23). Finally, the number of units held in the GM Common Stock Fund increased during the month. (Exhibit 2, page 3). Similar dividend processing in the GM Common Stock Fund was also reflected on daily aggregate activity provided to the Plan's trustee, State Street, before and after March 3, 2004.

<u>Decision to Correct Participant and Beneficiary Accounts</u>
Items 10 and 11

After alerting Delphi to the incorrect processing, Fidelity provided a written outline of possible approaches that Delphi might take in correcting participant and beneficiary accounts. (Exhibit 3). Fidelity representatives also participated in discussions with Delphi representatives about the possible correction methodologies. In those conversations, Delphi considered both the appropriate correction, as well as the procedure for obtaining any necessary Internal Revenue Service approval for the correction. Ultimately, Delphi provided Fidelity with a copy of a May 24, 2004 memorandum authored by its in-house counsel that described the participant and beneficiary correction methodology selected by Delphi. (Exhibit 4). At Delphi's request, Fidelity provided sample participant notification letters for submission with Delphi's VCP filing (Exhibit 5), and reimbursed Delphi for the filing fee associated with the submission to the IRS.

<u>Correction of Dividend Reinvestment Error</u>
Items 12, 22

As noted, in early March 2004, Fidelity corrected FPRS system edits for the GM Common Stock Fund so that the dividend payable on GM stock in the Plan would be invested in the Promark Income Fund. The trial balance report attached as Exhibit 1 reflects the correct dividend processing in April 2004.

---

[3] The amount reflected as a positive balance forward in the Promark Income Fund exceeds the amount of the GM dividend attributable to the GM Common Stock Fund, because other funds, such as the EDS Common Stock Fund, also had dividends transferred to the Promark Income Fund.

Confidential Treatment Requested Pursuant to 29 C.F.R. Section 70.26(b)



Mr. Frank Schneider
February 27, 2006
Page 5

Notice to Participants and Beneficiaries of Correction Election; Population To Whom Notices Sent
Items 14, 16, 17, 18, 19 and 20

The IRS notified Delphi that it had accepted Delphi's proposal in June 2005. Thereafter, Fidelity worked with Delphi to develop a project plan to implement the proposed election and correction process. On September 7, 2005 a Fidelity vendor mailed, first class, the notification letter, one version for participants (Exhibit 6), and a second version for beneficiaries (Exhibit 7). As outlined in the VCP compliance statement (Exhibit 8), participants were offered the option to keep their erroneously purchased units of the GM Common Stock Fund in the plan (status quo), or to move the incorrectly invested dividends to the Promark Income Fund, with an appropriate market value adjustment to their account. Participants were to be allowed a thirty-day window to make their elections by telephone. Participants were informed that no adjustment would be made to their account if they provided no instruction. The letters were mailed in envelopes with a prominent message on the outside envelope. (Exhibit 9)

The population to whom the letter was mailed was comprised of all individuals who had a balance in the GM Common Stock Fund at any time from January 1, 2000 through December 31, 2003, regardless of whether they had a then-current balance in the stock fund or in the Plan. The mail file included active participants, participants who had subsequently initiated a distribution, as well as beneficiaries (including alternate payees) whose Plan account held a balance in the GM Common Stock Fund at any point during that period. For individuals in these categories listed as deceased, Fidelity mailed a notice to the decedent at the last known address, and also mailed a notice to any beneficiaries reflected on Fidelity's records. Of the 12,332 notices mailed, only 66 were returned. Fidelity researched addresses using a third party vendor that it ordinarily uses to locate missing participants, and was able to obtain new addresses for all but 12 of those individuals. Duplicate notices were mailed to anyone for whom Fidelity located a new address. No additional notice was mailed to the 12 individuals for whom no new address was located.

Participant and Beneficiary Elections; Non-responding Participants and Beneficiaries
(Items 15, 19)

Affected individuals could elect to have their erroneously purchased GM Common Stock Fund units transferred to the Promark Income Fund, with an appropriate market value adjustment, by calling Fidelity using a dedicated toll-free number. The election window was open from September 12, 2005 to October 12, 2005. After press reports appeared near the close of the original window encouraging participants and beneficiaries to make an affirmative election, Delphi agreed to extend the election period by an additional two weeks, through October 26, 2005.

From September 12, 2005 to October 26, 2005, Fidelity received 5,236 calls to the dedicated number related to the Plan. During the call, Fidelity telephone representatives were able to estimate the amount that a given individual would receive based on the prior day's closing price for GM stock. (Only an estimate could be provided, since the final amount of the correction depended

Confidential Treatment Requested Pursuant to 29 C.F.R. Section 70.26(b)



Mr. Frank Schneider
February 27, 2006
Page 6

on the value of GM stock on the correction date.) The weekly number of calls received, and the number of participants electing a correction each week are shown on a spreadsheet attached as Exhibit 10. Without reviewing each of over 5,000 telephone calls, we cannot ascertain that all callers were eligible to make an election. We do know, however, that not all callers eligible for correction elected to have any change made in their account. Only 1,476 individuals elected to have dividends incorrectly invested in the GM Common Stock Fund transferred to the Promark Income Fund, with the accompanying market value adjustment.

Corrective Processing in Participant and Beneficiary Accounts
(Items 21)

No payments were made outside the Plan to any individual who elected to have his or her account corrected. Instead, Plan accounts were corrected on November 2, 2005, using values and prices as of November 1, 2005. (Such a correction was made for electing individuals, even if their Plan account, prior to the correction, had a balance of $0.) In the correction, participants or beneficiaries electing a correction were exchanged out of the number of GM Common Stock Fund units that were incorrectly purchased (to the extent available in the account), and were exchanged into an appropriate number of units of the Promark Income Fund. The number of units of the Promark Income Fund to be purchased was determined by finding the difference between the present value of Promark Income Fund units that should have been purchased with each dividend from 2003-2003, and the present value of incorrectly purchased units of the GM Stock. The October 31, 2005 letter of direction setting forth Delphi's direction as to the precise methodology to use is enclosed as Exhibit 11. Fidelity funded the amount of $856,596.56 necessary to purchase the required units of Promark Income Fund, over and above the amount received from selling incorrectly purchased units of the GM Common Stock Fund. Fidelity mailed confirmation statements to participants and beneficiaries whose accounts were corrected.

Fidelity provided to Delphi documents reflecting the correction methodology and samples showing corrections in individual participant accounts for use in responding to the DOL's inquiry to Delphi. Those materials, along with an accompanying letter explaining the documents, are included here as Exhibit 12.[4]

---

[4] We note two inconsequential errors in the explanatory letter. The participant and beneficiary mailing was initiated September 7, not September 6. In addition, the letter slightly understated the number of affected participants and beneficiaries. Because we were able to locate additional beneficiaries of deceased participants, the final count of the affected population (and the number on which was based the initial mailing) was 12,332, not 12,216 as stated in the original explanatory letter.



Mr. Frank Schneider
February 27, 2006
Page 7

Procedures for Monitoring
(Item 22)

Fidelity has implemented improved monitoring both to confirm that dividends in the GM Common Stock Fund continue to be directed to the Promark Income Fund, and to see that future fund set-up directions for any client are validated. When a client requests a change to a fund set-up, Fidelity now requires that the Fidelity associate complete a questionnaire to initiate the change. Fidelity has also established a quality control process that validates the fund set-up by comparing the actual fund set-up, the questionnaire and the client direction. For the Plan, Fidelity has implemented a quality control process to validate correct investment of GM Common Stock Fund dividends after every dividend date. Pursuant to that process, a Fidelity associate reviews plan activity on FPRS (or standard reports generated from FPRS) to insure that the dividend has been appropriately directed to the Promark Income Fund.

I hope that this response has been helpful.

Sincerely yours,

Margaret H. Raymond
Vice President, Associate General Counsel

Enclosures

Confidential Treatment Requested Pursuant to 29 C.F.R. Section 70.26(b)

CONFIDENTIAL TREATMENT REQUESTED BY FMR CORP. AND ITS SUBSIDIARIES PURSUANT TO 29 C.F.R. 70.26(b)

```
PROGRAM: TRIALBAL -U    (29000)           FIDELITY PARTICIPANT RECORDKEEPING SYSTEM                              PAGE:    34
TIME: 11:39                               DELPHI CORPORATION PERSONAL SAVINGS PLAN                               DATE: 04/08/2004
```

| ACCOUNTING ITEM | TCZ3<br>GM CLASS H STOCK | TCZ7<br>EDS STOCK FUND | TCZ9<br>GM COMMON STK FD | TOTAL |
|---|---:|---:|---:|---:|
| BEGINNING MARKET VALUE  02/29/2004 | $0.00 | $55,724.86 | $32,319,438.29 | $1,197,093,104.44 |
| RECEIPTS: | | | | |
|   PRE-TAX SAVINGS CONTRIBUTION | 0.00 | 0.00 | 0.00 | 12,289,236.84 |
|   ROLLOVER CONTRIBUTION | 0.00 | 0.00 | 0.00 | 80,983.67 |
|   COMPANY CONTRIBUTIONS CONTRIBUTION | 0.00 | 0.00 | 0.00 | 377,227.24 |
|   AFTER-TAX SAVINGS CONTRIBUTION | 0.00 | 0.00 | 0.00 | 84,157.57 |
|   PRE-TAX EMPLOYEE CATCH-UP CONTRIBUTION | 0.00 | 0.00 | 0.00 | 303,406.90 |
|   EXCHANGE IN | 0.00 | 0.00 | 0.00 | 31,284,548.98 |
|   BALANCE FORWARD | 0.00 | (437.75) | (332,808.05) | 0.00 |
|   LOAN REPAYMENT | 0.00 | 0.00 | 0.00 | 3,150,835.10 |
|   INTEREST ON LOAN | 0.00 | 0.00 | 0.00 | 296,257.89 |
| SUBTOTAL: | $0.00 | ($437.75) | ($332,808.05) | $47,866,654.19 |
| DISBURSEMENTS: | | | | |
|   LOAN WITHDRAWAL | 0.00 | (18.78) | (56,222.74) | (5,215,784.56) |
|   WITHDRAWAL | 0.00 | (411.99) | (95,810.70) | (8,774,696.17) |
|   TRANSFERS | 0.00 | 0.00 | 0.00 | (85.20) |
|   EXCHANGE OUT | 0.00 | (508.65) | (52,636.05) | (31,284,548.98) |
|   FEES | 0.00 | (0.04) | (72.64) | (19,902.32) |
| SUBTOTAL: | $0.00 | ($939.46) | ($204,742.13) | ($45,295,017.23) |
| INVESTMENT INCOME: | | | | |
|   DIVIDEND | 0.00 | 437.75 | 332,809.09 | 932,191.44 |
|   REALIZED G/L | 0.00 | 777.84 | (31,231.26) | 1,370,214.32 |
|   UNREALIZED G/L | 0.00 | (203.80) | (654,688.81) | (6,564,091.17) |
| SUBTOTAL: | $0.00 | $1,011.79 | ($353,110.98) | ($4,261,685.41) |
| ENDING MARKET VALUE  03/31/2004 | $0.00 | $55,359.44 | $31,428,777.13 | $1,195,403,055.99 |
| ENDING NAV: | $132.83 | $51.17 | $114.37 | |

FID-DOL-DEL 00035

```
PROGRAM: TRIALBAL -U    (29000)              FIDELITY PARTICIPANT RECORDKEEPING SYSTEM                               PAGE:   23
TIME: 11:39                                  DELPHI CORPORATION PERSONAL SAVINGS PLAN                                DATE: 04/08/2004
--------------------------------------------------------------------------------------------------------------------------------
                                                  OBDB                    OBDE                    OBDF
    ACCOUNTING ITEM                           PROMARK INCOME FUND    PROMARK LG CAP BLEND    PROMARK LG CAP GRWTH
    ---------------                           -------------------    --------------------    --------------------

BEGINNING MARKET VALUE   02/29/2004              $459,921,795.12             $512,954.94            $1,015,006.52

RECEIPTS:
  PRE-TAX SAVINGS CONTRIBUTION                      5,695,891.30               6,135.80                15,915.45
  ROLLOVER CONTRIBUTION                                61,995.03                   0.00                     0.00
  COMPANY CONTRIBUTIONS CONTRIBUTION                    4,943.32                  40.95                     0.00
  AFTER-TAX SAVINGS CONTRIBUTION                       44,794.81                  11.95                    85.68
  PRE-TAX EMPLOYEE CATCH-UP CONTRIBUTION               151,520.20                  13.03                     0.00
  EXCHANGE IN                                       9,589,959.86               7,711.80                22,634.68
  BALANCE FORWARD                                     333,245.80                   0.00                     0.00
  LOAN REPAYMENT                                    1,635,641.16                 705.08                 2,058.22
  INTEREST ON LOAN                                    157,586.76                  75.33                   171.71
                                              -------------------    --------------------    --------------------
  SUBTOTAL:                                        $17,675,578.24             $14,693.94               $40,865.74

DISBURSEMENTS:
  LOAN WITHDRAWAL                                   (2,488,202.23)               (621.21)               (3,061.35)
  WITHDRAWAL                                        (3,594,781.77)               (456.91)                    0.00
  TRANSFERS                                                (85.20)                  0.00                     0.00
  EXCHANGE OUT                                     (11,785,821.26)             (7,054.45)              (10,915.15)
  FEES                                                 (2,838.22)                  (2.30)                   (0.12)
                                              -------------------    --------------------    --------------------
  SUBTOTAL:                                       ($17,871,728.68)             ($8,134.87)             ($13,976.62)

INVESTMENT INCOME:
  REALIZED G/L                                      1,120,298.02                 (90.82)                 (815.73)
  UNREALIZED G/L                                      904,452.11              (5,119.66)                 (798.40)
                                              -------------------    --------------------    --------------------
  SUBTOTAL:                                         $2,024,750.13             ($5,210.48)              ($1,614.13)

ENDING MARKET VALUE      03/31/2004              $461,750,394.81             $514,303.53            $1,040,281.51
                                              ===================    ====================    ====================
  ENDING NAV:                                             $17.55                   $9.67                    $7.04
```

CONFIDENTIAL TREATMENT REQUESTED BY FMR CORP. AND ITS SUBSIDIARIES PURSUANT TO 29 C.F.R. 70.26(b)

FID-DOL-DEL 00024

```
PROGRAM: TRIALBAL -U    (29000)           FIDELITY PARTICIPANT RECORDKEEPING SYSTEM                              PAGE:   34
TIME: 08:58                               DELPHI CORPORATION PERSONAL SAVINGS PLAN                               DATE: 01/08/2004
```

| ACCOUNTING ITEM | TCZ3<br>GM CLASS H STOCK | TCZ7<br>EDS STOCK FUND | TCZ9<br>GM COMMON STK FD | TOTAL |
|---|---:|---:|---:|---:|
| BEGINNING MARKET VALUE   11/30/2003 | $2,101,230.69 | $64,680.38 | $29,232,289.19 | $1,116,310,036.77 |
| RECEIPTS: | | | | |
|   PRE-TAX SAVINGS CONTRIBUTION | 0.00 | 0.00 | 0.00 | 8,728,379.22 |
|   ROLLOVER CONTRIBUTION | 0.00 | 0.00 | 0.00 | 209,568.05 |
|   COMPANY CONTRIBUTIONS CONTRIBUTION | 0.00 | 0.00 | 0.00 | 491,581.64 |
|   AFTER-TAX SAVINGS CONTRIBUTION | 0.00 | 0.00 | 0.00 | 217,334.22 |
|   PRE-TAX EMPLOYEE CATCH-UP CONTRIBUTION | 0.00 | 0.00 | 0.00 | 127,593.59 |
|   MAKE-UP COMP. CONTR. CONTRIBUTION | 0.00 | 0.00 | 0.00 | 98,649.10 |
|   FORFEITURE CREDIT | 0.00 | 0.00 | 0.00 | 1,975.73 |
|   EXCHANGE IN | 0.00 | 0.00 | 0.00 | 26,992,004.11 |
|   BALANCE FORWARD | 0.00 | (447.17) | 0.00 | 0.00 |
|   TRANSFERS | 2,381.51 | 115.85 | 134,606.88 | 333,370.14 |
|   LOAN REPAYMENT | 0.00 | 0.00 | 0.00 | 3,515,299.97 |
|   INTEREST ON LOAN | 0.00 | 0.00 | 0.00 | 375,601.39 |
|   ADJUSTMENT | (0.06) | 0.00 | 0.00 | (0.06) |
|   SUBTOTAL: | $2,381.45 | ($331.32) | $134,606.88 | $41,091,357.10 |
| DISBURSEMENTS: | | | | |
|   LOAN WITHDRAWAL | (907.88) | (24.16) | (41,631.46) | (2,601,966.00) |
|   WITHDRAWAL | (11,684.75) | (264.01) | (75,445.62) | (4,273,240.34) |
|   TRANSFERS | 0.00 | 0.00 | (122.37) | (128,463.89) |
|   FORFEITURE DEBIT | 0.00 | 0.00 | 0.00 | (1,975.73) |
|   EXCHANGE OUT | (2,082,782.45) | (335.60) | (94,975.34) | (26,992,004.11) |
|   FEES | (3.03) | (0.01) | (51.48) | (15,899.87) |
|   SUBTOTAL: | ($2,095,378.11) | ($623.78) | ($212,226.27) | ($34,013,549.94) |
| INVESTMENT INCOME: | | | | |
|   DIVIDEND | 0.00 | 447.17 | 338,650.13 | 2,835,928.50 |
|   REALIZED G/L | (37,602.35) | 481.64 | (35,364.69) | (191,969.89) |
|   UNREALIZED G/L | 29,368.32 | 8,180.84 | 7,279,672.29 | 44,431,996.09 |
|   SUBTOTAL: | ($8,234.03) | $9,109.65 | $7,582,957.73 | $47,075,954.70 |
| ENDING MARKET VALUE   12/31/2003 | $0.00 | $72,834.93 | $36,737,627.53 | $1,170,463,798.63 |
| ENDING NAV: | $132.83 | $64.81 | $129.62 | |

CONFIDENTIAL TREATMENT REQUESTED BY FMR CORP. AND ITS SUBSIDIARIES PURSUANT TO 29 C.F.R. 70.26(b)

FID-DOL-DEL 00172

```
PROGRAM: TRIALBAL -U    (29000)              FIDELITY PARTICIPANT RECORDKEEPING SYSTEM                              PAGE:   23
TIME: 08:58                                  DELPHI CORPORATION PERSONAL SAVINGS PLAN                               DATE: 01/08/2004
```

| ACCOUNTING ITEM | OBDB<br>PROMARK INCOME FUND | OBDE<br>PROMARK LG CAP BLEND | OBDF<br>PROMARK LG CAP GRWTH |
|---|---:|---:|---:|
| BEGINNING MARKET VALUE   11/30/2003 | $446,181,821.36 | $371,943.96 | $850,196.16 |
| RECEIPTS: | | | |
| PRE-TAX SAVINGS CONTRIBUTION | 4,174,586.72 | 3,511.26 | 9,929.75 |
| ROLLOVER CONTRIBUTION | 206,558.05 | 0.00 | 0.00 |
| COMPANY CONTRIBUTIONS CONTRIBUTION | 6,672.57 | 37.36 | 158.26 |
| AFTER-TAX SAVINGS CONTRIBUTION | 124,953.50 | 90.62 | 37.81 |
| PRE-TAX EMPLOYEE CATCH-UP CONTRIBUTION | 55,886.69 | 0.00 | 70.13 |
| FORFEITURE CREDIT | 1,975.73 | 0.00 | 0.00 |
| EXCHANGE IN | 9,725,645.77 | 2,803.82 | 123,082.84 |
| BALANCE FORWARD | 447.17 | 0.00 | 0.00 |
| TRANSFERS | 353.86 | 0.00 | 0.00 |
| LOAN REPAYMENT | 1,880,280.99 | 769.72 | 1,655.71 |
| INTEREST ON LOAN | 199,006.81 | 82.49 | 207.99 |
| SUBTOTAL: | $16,376,367.86 | $7,295.27 | $135,142.49 |
| DISBURSEMENTS: | | | |
| LOAN WITHDRAWAL | (1,182,381.67) | (413.48) | (1,637.10) |
| WITHDRAWAL | (1,566,316.46) | (64.32) | (171.99) |
| TRANSFERS | (100,964.04) | 0.00 | 0.00 |
| EXCHANGE OUT | (7,433,877.83) | (1,694.51) | (135,946.90) |
| FEES | (2,103.69) | 0.00 | (0.38) |
| SUBTOTAL: | ($10,285,643.69) | ($2,172.31) | ($137,756.37) |
| INVESTMENT INCOME: | | | |
| REALIZED G/L | 639,501.19 | 111.75 | 3,088.59 |
| UNREALIZED G/L | 1,342,881.96 | 16,692.67 | 22,320.21 |
| SUBTOTAL: | $1,982,383.15 | $16,804.42 | $25,408.80 |
| ENDING MARKET VALUE   12/31/2003 | $454,254,928.68 | $393,871.34 | $872,991.08 |
| ENDING NAV: | $17.34 | $9.43 | $6.86 |

CONFIDENTIAL TREATMENT REQUESTED BY FMR CORP. AND ITS SUBSIDIARIES PURSUANT TO 29 C.F.R. 70.26(b)

FID-DOL-DEL 00161