# Exhibit 21

05-44481-rdd    Doc 10696-33    Filed 10/22/07    Entered 10/22/07 16:33:44    Exhibit 21
Pg 1 of 4

| **Report of Interview** | **U.S. Department of Labor**  |
|---|---|
| | Employee Benefits Security Administration |

Date of Interview: June 5, 2006

Karen Cobb was interviewed at 5725 Delphi Drive, Troy, Michigan on the above date at approximately 1:00 p.m. by Investigator Frank Schneider. She was advised that the writer is conducting an official investigation of Delphi Personal Savings Plan for Hourly Rate Employees in the United States for the Employee Benefits Security Administration, U.S. Department of Labor pursuant to the ERISA. She was further advised that the writer was requesting her voluntary cooperation, and that any information obtained during this official investigation which may involve violations of other laws will be referred to the appropriate agency for consideration.

Attorney Frank Kuplicki was present during the interview.

In response to questioning, Karen Cobb provided the following information:

Karen Cobb ("Cobb") confirmed that she is an Attorney for Delphi and is responsible for taxation issues involving the Benefit Plans. She has worked for GM/Delphi for 8 years and started working for Delphi in April 2000.

Cobb could not recall the exact date that she was advised that the dividends related to the General Motors Stock Fund ("GMSF") had been incorrectly invested. Mike Fligstein ("Fligstein"), the Pension Welfare Benefits Group Director or Michelle Trimble, an individual that worked under Fligstein would have informed Cobb of the error.

Cobb did not learn about the error from Fidelity, however, Cobb worked with Fidelity to correct the error. Cobb was involved in several conference calls with Fidelity to discuss why and how the error occurred, to assess how big the error was, to figure out what the options were to correct the error and finally, to determine how the fix should be implemented. Brian Donoghue and Fidelity Attorney Tom Hohl, were the only two names that Cobb could recall that participated in the telephonic conferences for Fidelity. However, Cobb indicated that she had heard of Jeff Cutts and knew that Michael Smith worked with Brian Donoghue. However, Cobb had not heard of Krista D'Aloia.

According to Cobb, there was never any question that Fidelity was going to pay since Fidelity readily accepted that the error was their fault. It is Cobb's understanding that Fligstein was the individual at Delphi that was involved in the discussions with Fidelity about Fidelity paying the amounts owed to the Plan. The agreement, however, was never put into writing.

By: _____  Date Prepared: June 6, 2006
    Frank Schneider, Investigator
At: Detroit District Office                File No.: 52-11672

This document is the property of the Employee Benefits Security Administration
Its contents are not to be disclosed to unauthorized persons.

PWBA 202
(Rev. 6/87)

Report of Interview
Karen Cobb
June 5, 2006
Page 2

According to Cobb, it was clear to Delphi and Fidelity that the operational error that occurred had to go through the Internal Revenue Services ("IRS) for correction in order for the Plan to maintain its tax qualified status. However, Cobb admitted that the IRS loathed disqualifying large Plans. Delphi knew that they were going to use the IRS's correction program sometime between March and May 2004. After Delphi made the decision to go through the IRS, Delphi drafted the application. It was Cobb's responsibility to draft the application to the IRS Voluntary Compliance Program ("VCP Program") because she handles any issues involving the Plans and the IRS. After drafting the application Delphi requested the application fee check from Fidelity, the draft was reviewed internally at Delphi and then the application was submitted to the IRS.

Cobb could not recall exactly when she knew that Fidelity was going to pay the $25,000 filing fee for the application to the IRS's VCP Program. Cobb advised Fligstein how much the filing fee was going to cost and Fligstein contacted Fidelity, advised them of the fee and Fidelity informed him that they were going to pay the application fee.

According to Cobb, an operational failure under the IRS is the failure to operate the Plan in accordance with its terms. The error only occurred with the Personal Savings Plan for Hourly Rate Employees.

The error that occurred with the Plan did not fall in any of the basic categories outlined in the IRS's VCP Program or under the Department of Labors corrective programs. Therefore, Delphi had to come up with a fix that was close to the IRS's guidelines and submit it to the IRS for their approval. Cobb could not recall the exact wording of the IRS's corrective principles, however, she stated that a failure is not corrected unless full correction is made. Cobb also commented that full correction is within reason and cited the fact that the IRS does not require Participants accounts under $50 to be corrected. Cobb also confirmed that under the IRS's VCP Program the restoration method used should restore the Plan to the position it would have been in had the failure not occurred. It was Cobb's opinion restoring the Plan to the position it would have been in is the ideal, where you want the Plan to start from and hope to get to. However, according to Cobb the correction method still needed to be balanced with what is reasonable and in the best interest of the Participants and Beneficiaries.

Cobb confirmed that selling all of the incorrectly purchased GMSF shares and purchasing PMIF shares would have put the Participants and Beneficiaries in the position that they would have been in had the error not occurred. Further, Cobb confirmed that Delphi discussed selling all of the incorrectly purchased GMSF shares. However, the option was not selected by Delphi because Delphi wanted to give the Participants the choice on how to correct their accounts.

When asked why Delphi used the IRS corrective program, Cobb stated because the Plan's correction required public approval and offering Participants the choice of how to correct their accounts could get approved through the IRS's VCP Program.

Cobb commented that no Participants complained about the error, which happened over a three

**Report of Interview**
Karen Cobb
June 5, 2006
Page 3

year period, no Participants complained after they were given a choice on how to correct their accounts and only a few Participants contacted Fidelity during the election period to correct their accounts. According to Cobb, the Participant's thought that they were getting a "windfall" because they got additional shares of GM stock. Additionally, when Fligstein informed the Union of the error that occurred to the Plan, the Union stated that their members like GM Stock and requested that the Participants be allowed to retain the incorrectly purchased shares. Furthermore, the IRS approved the choice provided to Participants.

Due to the overwhelming consensus that Participants wanted to keep the GMSF shares this option was made the default position. Therefore, if Participants did not call to correct their account they would keep the GMSF shares. Cobb confirmed that the default position, allowing the dividends to remain in the GMSF shares, was opposite of the Plan Document. The default position under the Plan document was to invest the dividends into the PMIF. In addition, Cobb confirmed that the PMIF was also the fund typically used when a Plan fund is discontinued.

Participants that had taken a cash distribution prior to Delphi correcting the error were sent letters as well explaining the error and the options they had to correct the error. However, when asked what options these Participants were given, Cobb stated that she could not recall how these Participants were treated. She did not know what choice these Participants were provided or why these Participants were not automatically paid. When asked why these Participants had to elect to correct their accounts and were not just paid, Cobb stated because that is not how Delphi handled the matter.

Cobb confirmed that the IRS's VCP processes only applies to IRS regulations and has nothing to do with the Employee Retirement Income Security Act ("ERISA"). Cobb did not review any ERISA regulations, Attorney Frank Kuplicki ("Attorney Kuplciki') was responsible for reviewing ERISA. (*When asked what she was advised regarding ERISA, Attorney Kuplicki claimed that his advice was privileged.*)

Cobb could not remember who wrote the Amendment to the Plan that allowed the Participants the choice on how to correct their accounts.

The Employee Benefit Plan Committee ("EBPC") was aware of the Plan's VCP filing. The EBPC did not have to approve the VCP filing, however, the EBPC did have to approve the Amendment to the Plan that was part of the VCP filing. The EBPC had to adopt the Amendment prior to it becoming effective. Cobb could not recall when the Amendment became effective or how come the Amendment was not requested until after the corrective action took place. In addition, Cobb stated that she had "no comment" when asked what would have happened if the EBPC had not approved the Amendment.