| | | | |
|---|---|---|---|
| **BROKER:** | Jones Lang LaSalle Americas, Inc.<br>3044 W. Grand Blvd., Suite L-100<br>Detroit, Michigan 48202 | **DATE:** | September 1, 2007 |
| | | **Project #:** | PRJ1462 |

## LISTING AGREEMENT

In consideration of the mutual covenants contained in this Agreement and other valuable consideration, the receipt and sufficiency of which is mutually acknowledged, the property located at 999 Randall Street in Coopersville, Michigan (PRP00010) (hereinafter referred to as the "Property"), are being placed on the market by Delphi Automotive Systems LLC (hereinafter referred to as "DELPHI"), whose Real Estate Department is located in Troy, MI, and are hereby listed with you on the following terms and conditions:

1. <u>TERM:</u>

   Upon your acceptance, this listing shall be exclusive with you, subject only to the exceptions and exclusions contained herein, for a period of nine (9) months from the date of this agreement above.

2. <u>DUTIES:</u>

   You shall:

   A. Develop and implement a marketing program, including advertising, for the sale of the Property (the "Transaction").

   B. Present the Property, and information pertaining to it, to those potential buyers who are willing to enter into the Transactions as further indicated in Paragraph 26.B., below.

   C. Show the Property to interested parties.

   D. Participate in any multi-listing or other information referral arrangement or agreement, and cooperate with any other brokers.

   E. Contact all parties, if any, who have shown an interest in the Property as shown on a list which may be provided by DELPHI.

   F. Present all offers and proposals received to DELPHI.

   G. Obtain such market and other information as may be requested by DELPHI from time to time, and aid DELPHI in evaluating all offers and proposals.

   H. Perform those other activities required by this Agreement and those other activities which are normal and customary in the practice of commercial or industrial real estate brokerage.

1

I. Perform all duties and activities in a timely and efficient manner. Time is of the essence in the performance thereof.

### 3. COMPLIANCE WITH CIVIL RIGHTS AND OTHER LAWS:

The listed Property shall be offered in compliance with the provisions of all Civil Rights laws, including but not limited to those regarding race, color, creed, sex, ancestry or national origin, and you agree that all marketing and other activities shall be conducted in conformance with all federal, state and local laws and regulations.

### 4. WITHDRAWAL OF LISTING:

DELPHI reserves the right to withdraw this Listing Agreement at any time if DELPHI elects to retain the Property for its own use, that of a joint venture partner, or that of a corporation owned or controlled by DELPHI. DELPHI further reserves the right to withdraw this listing Agreement in the event that DELPHI elects to donate the Property, either by gift or bargain sale, to an organization qualified pursuant to Internal Revenue Code to receive a deductible contribution. In the event of the withdrawal, no commissions, brokerage fees, finders fees final fees, expenses or other monetary amounts shall be payable to you except as set forth in Paragraph 9, below.

### 5. EXCLUSIONS:

This section has been intentionally deleted.

### 6. TERMINATION:

DELPHI reserves the right to terminate this Agreement at any time at its sole discretion.

A. <u>With Cause</u> DELPHI reserves the right to cancel this Agreement without liability (unless you procured a purchaser of a sale that actually closes) to DELPHI in the event any of the following, or comparable, events occur and if you fail to correct such failure or breach within ten (10) days (or such shorter period of time if commercially reasonable under the circumstances) after receipt of written notice from DELPHI specifying such failure or breach:

I. With respect to your firm, company, or employer: Insolvency, bankruptcy proceedings (voluntary or involuntary), appointment of a receiver or trustee, or execution of an assignment for the benefit of creditors; provided however, that any such petition, appointment, or assignment is not vacated or nullified within fifteen (15) days of such event.

II. Your repudiation or breach of the terms of this agreement.

III. Your failure to perform services as specified by DELPHI.

2

IV. Your failure to perform services as specified in this agreement so as to endanger the timely or proper completion of your duties and functions, or so as to endanger the consummation of the transaction provided in this Agreement.

V. A merger or reorganization of your firm, or termination or other unavailability of one or more personnel, which in DELPHI's sole judgment may adversely affect or otherwise alter the performance of you or your firm's personal services. It is specifically agreed that the unique expertise, skill, reputation, and experience of you or certain personnel within your firm, and their continued availability, are necessary for the performance of this Agreement and are a specific inducement for DELPHI to enter into and continue this Agreement.

B. <u>Without Cause</u>  In the event that this Agreement is terminated by DELPHI without cause, no commissions, brokerage fees, finders fees, final fees, expenses or other monetary amounts shall be payable to you from DELPHI except as provided in Paragraphs 9 and 11 below.

7. <u>DESTRUCTION OF PROPERTY:</u>

In the event that the Property are wholly or partially damaged or destroyed, or taken under the power of eminent domain in whole or in part, such that DELPHI, in its sole discretion, determines that this Agreement shall be terminated, no commissions, brokerage fees, finder's fees, insurance proceeds, expenses or other monetary amounts shall be payable to you except as provided in Paragraph 9, below.

8. <u>BUDGET, INITIAL EXPENSES:</u>

You shall pay all normal marketing costs associated with the offering of the Property, including but not limited to, advertising materials, brochures, mailings, signage, media advertising, travel expenses and long distance telephone charges. You further agree that prior to this Agreement there have been no commissions, fees, or expenses or other monetary amounts which will be reimbursable to you by DELPHI.

DELPHI shall be solely responsible for the cost of any extraordinary marketing activities requested and approved by DELPHI and you in writing and conducted by you. Placement of any signage on the Property must be approved by DELPHI.

9. <u>REIMBURSEMENT OF EXPENSES:</u>

In the event that the Property is withdrawn from the market pursuant to Paragraph 4, above, or terminated without cause pursuant to Paragraph 6.B., above, or if the Property is destroyed as discussed in Paragraph 7, above, you will be reimbursed for any actual out-of-pocket expenses incurred by you and attributable specifically to the Property. Such expenses may include advertising materials, media expenses, telephone and mailing charges, and travel.

Reimbursable expenses shall not exceed Five Thousand and 00/100 Dollars ($5,000.00) and shall not include salary, labor, premiums for first class travel,

3

normal office overhead expenses, or claims or expenses submitted by your contractors or suppliers. Further, reimbursable expenses shall not include routine advertising and marketing in which the Property is one of a group of properties. All reimbursable expenses must have been approved in advance in writing by DELPHI. You agree that you will not be reimbursed unless specific documentation of such expenses, satisfactory to DELPHI in its sole discretion, is provided by you within fifteen (15) days of your receipt from DELPHI of notice that a withdrawal, transfer, termination without cause, or Property damage has occurred.

It is agreed that in the event a commission is paid to you, or if this Listing Agreement expires at the end of this term or any extension term, no expenses of any type will be reimbursed by DELPHI.

10. AGREEMENTS WITH OTHER BROKERS:

You represent and warrant that you have reached or will reach satisfactory agreements relating to commissions, sharing of expenses, and other fee matters among any cooperating, selling, or other third party brokers. You agree to indemnify and hold DELPHI harmless from and against any claims, allegations, liabilities, suits (including reasonable attorney fees), or demands arising from a claim by any such third party broker for a fee or commission, whose claim is based on, or alleged to be based on your conduct. DELPHI agrees to refer to you any and all inquiries received regarding the Property, whether received from you, other brokers or anyone else.

11. PROTECTION PERIOD AND CONDITIONS:

Following the expiration of the listing period or termination without cause by DELPHI, you will be protected and your commission paid if a Sale or Leasing Agreement is executed by DELPHI within sixty (60) days of such expiration or cancellation. Such an Agreement must be with a bona fide prospect which you have listed by name and address, and filed with DELPHI. This list must be filed in writing by certified mail, return receipt requested, within five (5) days after expiration of this listing or within five (5) days of a termination without cause by DELPHI.

12. REPORTS:

You agree to submit a report every four (4) weeks regarding the following:

A. Contacts made, including the type, content, name, date and affiliation of the contact.

B. Showings or inspections of the Property, including the date, time and name of the prospect.

C. Comments regarding general market conditions, including changes and events.

4

    D. Comments regarding comparable properties, including newly vacant or newly listed properties, and properties recently sold and properties recently leased.

    E. Copies of all advertising done to promote the Property.

13. <u>ADVERTISING CONTENT:</u>

All advertising text and other promotional materials related to marketing the Property must be approved in writing by DELPHI prior to the incurring of any (other than incidental) expenses related to the item, and prior to dissemination or display. Retouching or other alteration of photographs is generally unacceptable. The use of the name Delphi Automotive Systems LLC in advertising related to marketing the Property is subject to prior written approval, and DELPHI must similarly approve the use, design, content and placement of any signage.

Other than including the name of Delphi Automotive Systems LLC in a routine list of representative clients, you shall not, without first obtaining the written approval of DELPHI, advertise or publish the fact that you have contracted to furnish DELPHI with the services agreed upon. No explicit or implicit statement shall be made in a routine list of representative clients, or in any other advertising or published or broadcast material, that would allow a reader, listener, or observer to infer or conclude that DELPHI endorses, favors, approves of or supports you or your services, or their quality, in any manner whatsoever.

14. <u>PRESS STATEMENTS, CONTRACTS WITH GOVERNMENTAL PERSONNEL:</u>

You agree not to issue any press statements or speak directly with the media about the Property, your marketing efforts, or your relationship with Delphi Automotive Systems LLC without prior written approval of DELPHI. Any press inquiries you receive or media articles regarding the Property should be reported immediately to the Real Estate Department of DELPHI, and you are not authorized to speak on behalf of Delphi Automotive Systems LLC. You also agree to report immediately the content of any discussions regarding the Property you have had with, or any inquiries you receive from, any government official or employee.

15. <u>INDEMNIFICATION:</u>

You agree to indemnify and hold Delphi Automotive Systems LLC harmless from and against any liability, claims, demands or expenses (including reasonable attorney fees), or damages to the Property of or injuries (including death) to DELPHI's employees or any other person arising from or in connection with your performance or work or use of Delphi Automotive Systems LLC Property except for liability, claim, or demand arising out of the sole negligence of Delphi Automotive Systems LLC.

16. <u>AUDIT AND INSPECTION:</u>

With respect to commission(s) or expense matters (or the reimbursement or sharing thereof with any party), upon DELPHI's written request you agree to submit sufficient supporting data to permit DELPHI's audit, and shall thereafter

5

promptly furnish such supplemental and supporting information as DELPHI shall request. DELPHI, or it's agents, shall have the right to audit all books, records and other items relating to any commission or expense matter as related to this sale or lease.

17. <u>ENVIRONMENTAL MATTERS:</u>

You acknowledge and agree that any and all information, whether written or oral, regarding the environmental status of the Property provided to you or any prospect, or which comes to your knowledge, shall be considered the sole and exclusive Property of Delphi Automotive Systems LLC and is considered and will be kept confidential in perpetuity. You acknowledge and agree that such information will not be discussed with or provided to any third party, other than those employees or agents of you or the prospect who are essential to completing the sale and or financing of the project, without the prior written consent of DELPHI.

Notwithstanding anything contained herein to the contrary, in the event you are required to disclose any such information to any governmental entity pursuant to applicable law, prior to disclosing the same you shall notify in writing and provide DELPHI with copies of all information which you intend to so disclose. Such notice and information shall be provided to DELPHI in writing at least five (5) business days prior to disclosure of the same to any governmental agency.

If you or your employees or agents disclose information in violation of the provisions of this paragraph, then you agree that you shall be liable to Delphi Automotive Systems LLC for liquidated damages in the amount of Ten Thousand Dollars ($10,000) for each such disclosure. You acknowledge that DELPHI will suffer substantial damages if such information is wrongfully disclosed, but the determination of the exact amount of such damages would be difficult if not impossible. The setting of the Ten Thousand Dollars ($10,000) liquidated damage amount is reasonable in light of all relevant facts now available to the parties. DELPHI shall also be entitled to injunctive relief in order to prevent disclosure of any such information.

18. <u>OTHER CONFIDENTIAL MATTERS:</u>

All information, matters regarding price or other terms, negotiating positions, material, records and other data provided to you by DELPHI or at the request of DELPHI, or by prospects, relating to the Property and the listing are provided solely for providing the services under this agreement. You assert no right or title to, or other interest in, any such information or material. You agree that unless otherwise approved in writing by DELPHI, all such information or material will be treated in absolute confidentiality.

You agree that while you have the custody or possession of any material subject to the confidentiality restrictions of this paragraph, unless otherwise approved in writing by DELPHI, you will not (i) copy or duplicate, or permit anyone else to copy or duplicate, any of such material or (ii) provide or make available such information or material to any other person or entity other than your employees

6

who have a need to know such information. You shall also take appropriate actions by instruction or agreement to advise your employees of their obligations with respect to use, copying, protection and security of such information or material.

In the event you are required to disclose any such information or material to any governmental entity pursuant to applicable law, prior to disclosing the same you shall notify in writing and provide DELPHI with copies of all information which you intend to so disclose. Such notice and information shall be provided to DELPHI in writing at least five (5) business days prior to the disclosure of the same to any government authority.

19. **INDEPENDENT CONTRACTING PARTIES:**

   DELPHI and you are and shall be independent contracting parties. Nothing in this Agreement shall make either party the agent or legal representative of the other for any purpose whatsoever, nor does it grant either party any authority to assume or to create any obligation on behalf of or in the name of the other.

20. **NO IMPLIED WAIVER:**

   The failure of either party at any time to require performance by the other party of any provision of this Agreement shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver of either party of a breach of any provision of this Agreement constitute a waiver of any succeeding breach of the same or any other provisions.

21. **NON-ASSIGNMENT:**

   You may not assign or delegate your obligations under this agreement without DELPHI's prior written consent.

22. **SEVERABILITY:**

   If any term of this Agreement is invalid or unenforceable under any statute, regulation, ordinance, executive order or any other rule of law, such term shall be deemed reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Agreement shall remain in full force and effect.

23. **ENTIRE AGREEMENT:**

   This Agreement contains our entire understanding and supersedes all prior Agreements, understanding, discussions, warranties and representations. This Agreement may not be amended or modified except by a document in writing signed by DELPHI and you.

24. **CHOICE OF LAW:**

   This Agreement is to be construed according to the laws of the state of Michigan.

25. <u>DELPHI CONTACT:</u>

All matters concerning this Property shall be discussed with Jeff Beaudoen (Office Telephone Number 248-814-1438). Absent emergencies, plans for showings of the Property should be first discussed with the aforesaid and not with personnel at the facility.

Kindly indicate your acceptance of this agreement by signing and returning ONE (1) copy of this listing Agreement.

26. <u>GENERAL TERMS REGARDING SALE, LEASE OR TERMINATION:</u>

A. DELPHI reserves the right to reject any and all offers.

B. This Agreement applies only to the following transaction (s), and DELPHI will consider only those transaction(s) so indicated (circled and initialed) below. Unless you and DELPHI have indicated a transaction below, and executed the appropriate attachment, you agree that referral or mention of a prospect by you to DELPHI will not constitute any reservation or registration with, or obligation of any type by, DELPHI to pay you a commission or any other monetary amount in the event of a future change in the type of transaction desired or subject to consideration by DELPHI (for example, and not by way of limitation, if a sale evolves into a lease, or if a sublease evolves into the purchase of the leasehold or a fee):

    I. Sale of Fee:     **X Yes**     ___No
    Initial: DELPHI_____ Broker_____

(If yes, attach and execute DELPHI attachment
I-Specific Terms Regarding Offers to Purchase Fee.)

    II. Lease:     ___Yes     **X No**
    Initial DELPHI_____ Broker_____

(If yes, attach and execute DELPHI attachment
II-Specific Terms Regarding Offers to Lease.)

    III. Sale of Leasehold     ___Yes     **X No**
    Initial: DELPHI_____ Broker_____

(If yes, attach and execute DELPHI attachment
III-Specific Terms Regarding Offers to Purchase Leasehold.)

8

IV. Sublease:           ___Yes        **X No**

Initial DELPHI _____    Broker _____

(If yes, attach and execute DELPHI Attachment IV - Specific Terms Regarding Offers to Sublease.)

V. Early Termination:      ___Yes        **X No**

Initial DELPHI _____    Broker _____

(If Yes, attach and execute DELPHI Attachment V-Specific Terms Regarding Negotiations to Terminate with the Landlord.)

C. The Property are being offered "as is" without any representation or warranties as to their condition or soundness. The prospect should satisfy himself or herself as to the condition of the Property.

D. All offers are to be submitted in writing to DELPHI Real Estate Department, and all must be accompanied by complete detail on the proposed use of the building, as well as information on the financial capability of the offeror.

DELPHI shall be given minimum of thirty (30) days to accept or reject the offer, and such acceptance shall be conditional on, and subject to, the preparation and full execution of a binding contract which shall be prepared by the Real Estate Department of DELPHI, or outside counsel.

E. No commission or commission installment will be considered as due, earned, or payable until an Agreement as specified in Paragraph 26.D., above, is executed with a party acceptable to DELPHI and closing has occurred. The content of any Agreement, and the acceptability of any party, shall be decided by DELPHI in its sole discretion.

The submission of this Agreement to you or of an Agreement specified in Paragraph 26.D., above, to you or to any party shall be for examination purposes only. Such submission does not and shall not constitute a reservation or election to complete an Agreement with you, or otherwise create any interest in the payment of any expenses, fees, or commissions by DELPHI. Further, such submissions do not and shall not constitute a reservation or election to complete an Agreement specified in Paragraph 26.D., above, or otherwise create an interest in the Property or any portion thereof.

Execution of any Agreement by one party and its return to the other party shall not be binding, notwithstanding any time interval, until a fully executed Agreement is delivered to the party which first signed the Agreement.

F. Any deposits retained from any unconsummated transaction will belong solely to DELPHI, and unless otherwise provided DELPHI will designate the escrow agent and the terms and conditions of escrow, if any. In any event you will, upon

9

request by DELPHI, promptly and forthwith forward all deposits, whether forfeited or unforfeited under the terms of any Agreement, to DELPHI, any claim or demand to the contrary notwithstanding.

G. Cooperative listings and other brokerage arrangements must be disclosed and agreed to by DELPHI, and the fee arrangements therefore must be agreed to by any cooperating brokers on Attachment I, II, III, IV, and/or V.

H. Commissions will not be based upon the value of any personal Property, productive machinery or equipment, or specialized machinery, systems, or equipment, sold to the purchaser of the fee or leasehold, or to a lessee or sublessee, regardless of whether or not a separate bill of sale is issued for such Property. In any event, the decision of DELPHI and the purchaser as to the allocation of purchase price between the real estate and such Property will be final, as will be the determination of whether any particular Property is real Property (including fixtures) or personal Property.

I. No representation is made by DELPHI as to the conditions or suitability of the building or Property for any proposed use, and it will be solely the purchaser's or tenant's obligation to determine and be satisfied that its occupancy will not be contrary to any statutes or ordinances, and particularly to the applicable zoning laws, and to pay for any obtain any necessary permits connected with occupancy. The purchaser or tenant will be responsible for obtaining any zoning variances necessary for the use of the Property.

Delphi Automotive Systems LLC

By: _____

Date: 8-29-07

Accepted By: _____

Firm Name: Jones Lang LaSalle

Date: 8/27/07

10

## ATTACHMENT I - SPECIFIC TERMS REGARDING OFFERS TO PURCHASE FEE

1. The list price is **$5,250,000**.

2. Commission:

    I.  A commission, based on the following percentage (s) of the actual sale price, will be payable by DELPHI at closing:

        A.  **6.0%** if another ("selling") broker participates in the sale, with you receiving **3.0%** and the selling broker receiving **3.0%** from you.

        B.  **5.0%** if another broker does not participate in the sale.

    II. If a lease is made pursuant to the sale by DELPHI of a building, for example to make an investment by a purchaser viable, no commission will be paid by DELPHI on the lease or received by JLL from a 3rd-party.

    III. A fee of **20%** of the net commission received by you will be paid to DREAL, Inc., at closing.

Delphi Automotive Systems LLC

By: _____

Date: 8-29-07

Accepted By: _____

Firm Name: Jones Lang LaSalle

Date: 8/27/07

11

## ATTACHMENT II - SPECIFIC TERMS REGARDING BROKER'S SUBAGENT

In order to most effectively market the property, Jones Lang LaSalle has engaged real estate agents Bradley H. Rosely and David J. Levitt of the Grand Rapids based commercial real estate brokerage firm, S.J. Wisinski & Company, as its subagent. Jones Lang LaSalle will share its brokerage fee with S.J. Wisinski on a fifty-fifty basis.

Delphi expressly agrees that for the purposes of this Agreement, the term Selling Broker as it pertains to the brokerage fee (per the schedule in Attachment 1 of this Agreement), excludes only Bradley H. Rosely and David J. Levitt and that any other agent employed at S. J. Wisinski & Company or any other licensed agent or other legal party due a fee under Michgan Law will be considered a "Selling Broker" corresponding to the higher fee.

## RIDER TO THE LISTING AGREEMENT

The provisions of this rider shall be incorporated into the Listing Agreement between Jones Lang LaSalle Americas, Inc. ("Jones Lang LaSalle") and Delphi Automotive Systems LLC ("DELPHI") ("Agreement") for the sale of property located at 999 Randall Street in Coopersville, Michigan (PRP00010) (hereinafter referred to as the "Property") and shall be given full force and effect as if it were part of the Agreement.

LIMITED LIABILITY:

    In no event shall any partner, shareholder, director, officer, agent, servant, employee, representative or affiliate of either party shall have any personal liability in connection with this agreement.

    Neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if such party has knowledge of the possibility of such damages; and in no event shall Jones Lang LaSalle's liability to DELPHI exceed One Million Dollars ($1,000,000) per year; provided however, that such limitation on liability will not apply to losses arising (i) from the indemnifying party's gross negligence, willful, fraudulent or criminal misconduct, or (ii) third-party claims

Delphi Automotive Systems LLC

By: _____
    John A. Jaffurs, Executive Director,
    Operations Support Group

Date: 9/13/07

Accepted By: _____

Firm Name: Jones Lang LaSalle

Date: 9/17/07