## CONSULTING AGREEMENT

**THIS CONSULTING AGREEMENT** (this "**Agreement**") is made as of **July 1, 2007**, between **JONES LANG LASALLE AMERICAS, INC.**, a Maryland corporation ("**Jones Lang LaSalle**") and **DELPHI AUTOMOTIVE SYSTEMS LLC**, a Delaware limited liability company ("**Delphi**").

### BACKGROUND

A.  Jones Lang LaSalle and Delphi are parties to a Real Estate Services Agreement, dated September 2, 2005, as amended (the "2005 Agreement"). The 2005 Agreement terminated effective June 30, 2007.

B.  The parties wish to enter into a Consulting Agreement for the provision of consulting services related to Delphi's real estate holdings on a non-exclusive basis.

In consideration of the promises, covenants and agreements set forth below, the parties agree as follows:

### ARTICLE I
### RELATIONSHIP AND SCOPE OF SERVICES

**1.1    Scope.** Delphi hereby retains Jones Lang LaSalle to provide the specific services described, and for the compensation, set forth below (the "**Services**") with respect to real estate in which Delphi has or desires to acquire an ownership, leasehold or subleasehold interest ("**Properties**"). Jones Lang LaSalle agrees to provide the Services upon the terms and conditions set forth in this Agreement.

| Service | Description | Account Personnel | Monthly Fee |
|---|---|---|---|
| Transaction Services | Support Delphi's Operations Support Group corporate real estate organization and any other Delphi real estate activity, as directed by Delphi | Brian Collins | $12,031.88 |
| Administration Services | Lease administration services regarding Delphi Properties, including data entry and database updating as directed by Delphi. | Janice Lanoo | $6,339.38 |

**1.2    Standard of Conduct.** Jones Lang LaSalle shall perform the Services in accordance with this Agreement and all applicable laws, codes, ordinances, regulations and other requirements of governmental authorities and with a level of skill and diligence which is consistent with the highest applicable professional standards for firms of national reputation providing similar services.

{ JLL / 004 / 00010743.DOC / 2}                  1

## ARTICLE II
## FEES AND EXPENSES

**2.1     General.**  Jones Lang LaSalle will be entitled, as its sole compensation for the Services to (a) receive the monthly fees as set forth in Article 1 above and (b) the expense reimbursements set forth in Exhibit A.  Within thirty (30) days of receipt of request for payment in the form approved by Delphi (including all supporting documentation required by Delphi), Delphi shall pay the fee for the Account Personnel for the prior month; provided, however, any reimbursement of employee expenses for the Account Personnel shall be due on the date of payment of any such expenses by Jones Lang LaSalle and shall be made through an ACH Electronic Funds Transfer or other such electronic payment method.  The parties shall, in good faith, negotiate reasonable fees and costs to be paid to Jones Lang LaSalle on account of any services performed by Jones Lang LaSalle which Delphi has authorized but which are not within the scope of the Services.

**2.2     Commission.**  Jones Lang LaSalle will be not be entitled to any commission or other fees related to the Services rendered to Delphi unless Jones Lang LaSalle and Delphi enter into a commission agreement for a specific transaction.  Notwithstanding the foregoing, nothing contained in this Agreement shall impact Jones Lang LaSalle's rights to receive commissions, if any, in connection with the 2005 Agreement.

**2.3     Taxes.**  Delphi shall be responsible for all taxes due and payable on any compensation or any other payments to Jones Lang LaSalle in connection with the Services to the extent such taxes are not paid by a third party, including any sales tax, value-added tax or gross receipts tax; provided, however, in no event shall Delphi be responsible for any net income, franchise or property tax assessed against Jones Lang LaSalle, all of which shall be the responsibility of Jones Lang LaSalle.

## ARTICLE III
## OBLIGATIONS AND COOPERATION

**3.1     In General.**  Delphi will provide office space, computers, telephones, office equipment and supplies to the Account Personnel.  Additionally, Delphi shall provide to designated personnel of Jones Lang LaSalle such information and access to personnel and facilities of Delphi as Delphi determines is necessary or desirable in furtherance of the provision of Services.  Delphi shall cooperate with Jones Lang LaSalle and use reasonable efforts to facilitate Jones Lang LaSalle's efficient performance of the Services.

3.2 **Account Personnel:**

A.     During the term of this Agreement, it is understood that Mr. Brian Collins shall provide the Transaction Services and Ms. Janice Lannoo shall provide the Administration Services to Delphi in the manner required under this Agreement ("**Account Personnel**") unless Delphi requires a changes to the Account Personnel pursuant to Section 3.2.C below. Said Account Personnel shall be composed of employees of Jones Lang LaSalle that shall be reimbursed for their compensation by Delphi per Article II. Account Personnel will not work on non-Delphi matters.

B.     All matters pertaining to the employment, supervision, compensation, promotion and discharge of Account Personnel are the full responsibility of Jones Lang LaSalle. Jones Lang LaSalle will fully comply with all laws and regulations applicable to worker's compensation, social security, unemployment insurance, hours of labor, wages, working conditions and all other employer-employee matters. Jones Lang LaSalle will require Account Personnel, when on Delphi's premises and performing services for Delphi under this Agreement, to comply with all of Delphi's rules, regulations and policies. Jones Lang LaSalle is likewise responsible for any affiliates, subcontractors and other agents Jones Lang LaSalle uses to perform services under this Agreement.

C.     Delphi may bar Account Personnel from Delphi's premises for failure to obey Delphi's rules, regulations and policies. Delphi may require Jones Lang LaSalle to replace any Account Personnel barred for failure to obey Delphi's rules, regulations and policies or any Account Personnel who, in Delphi's opinion, fails to perform his responsibilities in accordance with Delphi's expectations

3.3 **Independent Contractors.** The parties are and shall remain independent contractors, contracting with each other solely for the purpose of carrying out the provisions of this Agreement. It is expressly understood and agreed that Account Personnel furnished by Jones Lang LaSalle will be and remain the employee of Jones Lang LaSalle. Under no circumstances may such Account Personnel be considered Delphi's employee or agent with any rights to compensation or benefits other than those provided by Jones Lang LaSalle. Nothing herein shall constitute either party as the partner, agent or legal representative of the other, for any purpose whatsoever, and in no event shall Jones Lang LaSalle make any commitments of any nature whatsoever which may be binding upon Delphi.

## ARTICLE IV
## TERM

The term of this Agreement shall commence on July 1, 2007 and shall terminate on December 31, 2007. As of September 1, 2007, either party may earlier terminate all or a portion of this Agreement for any reason, provided that such party has given thirty (30) days prior written notice of termination to the non-terminating party in accordance with Section 8.4 hereof; for the sake of clarity if a party wishes to terminate all or a portion of this Agreement effective September 1, 2007, the terminating party would have to deliver notice on or before August 2, 2007. Notwithstanding the foregoing, either party may terminate this Agreement at any time in the event of a breach of this

Agreement by the other party which is not cured within ten (10) days of written notice sent to the breaching party; provided that, in the event of: (i) any recurring breach by Jones Lang LaSalle of which Jones Lang LaSalle has previously been notified in writing; (ii) the negligent performance of Jones Lang LaSalle's duties under this Agreement of which Jones Lang LaSalle has previously been notified in writing; or (iii) any breach of the confidentiality restrictions of this Agreement, Delphi shall have the right to terminate this Agreement effective upon notice to Jones Lang LaSalle.

## ARTICLE V
## INDEMNIFICATION

5.1     **Indemnification by Jones Lang LaSalle.**  Except for the negligence of Delphi and its affiliates and their respective agents and employees, Jones Lang LaSalle shall defend (with counsel reasonably acceptable to Delphi), indemnify and hold harmless Delphi and its affiliates, shareholders, directors, officers, employees and agents from and against all losses, damages, expenses (including reasonable attorney's fees), claims, suits and liabilities of any nature whatsoever arising out of or in connection with its negligent acts or omissions or those of its affiliates or their respective agents, employees, contractors, subcontractors and independent real estate representatives, the failure of Jones Lang LaSalle to comply with the terms and conditions of this Agreement, or premised upon an allegation that Delphi is the employer of Account Personnel. Delphi shall notify Jones Lang LaSalle of any claim, loss or damage for which Jones Lang LaSalle is responsible under this article, promptly after Delphi becomes aware of such claim, loss or damage.

5.2     **Indemnification by Delphi.**  Except for the negligence of Jones Lang LaSalle and its affiliates and their respective agents, employees, contractors, subcontractors and independent real estate representatives, Delphi shall defend (with counsel reasonably acceptable to Jones Lang LaSalle), indemnify and hold harmless Jones Lang LaSalle and its affiliates, shareholders, directors, officers, employees and agents from and against all losses, damages, expenses (including reasonable attorney's fees), claims, suits and liabilities of any nature whatsoever arising out of or in connection with its negligent acts or omissions or those of its affiliates or their respective agents and employees or the failure of Delphi to comply with the terms and conditions of this Agreement. Jones Lang LaSalle shall notify Delphi of any claim, loss or damage for which Delphi is responsible under this article, promptly after Jones Lang LaSalle becomes aware of such claim, loss or damage.

5.3     **Limitation on Liability.**

A.     Each party's liability hereunder shall be limited to its assets; and no partner, director, officer, agent, servant, employee, representative or affiliate of either party shall have any personal liability in connection with this Agreement. In no event will either party be liable to the other for any loss of or damage to revenues, profits or goodwill or other special, incidental, indirect, consequential or punitive damage of any kind resulting from its performance or failure to perform the terms of this Agreement or from the provision of Services, including, without limitation, any interruption of business, even if it has been advised of the possibility of such damages; and in no event shall each party's liability under this Agreement (a) in connection with Administrative Services (described in Section 1.1 above) exceed Fifty Thousand Dollars ($50,000) and (b) in connection with any Transaction Services (described in Section 1.1 above) exceed Five Hundred

{ JLL / 004 / 00010743.DOC / 2}                                    4

Thousand Dollars ($500,000); provided however, that such limitation on liability will not apply to losses arising (i) from the indemnifying party's gross negligence, willful, fraudulent or criminal misconduct, or (ii) third-party claims.

B. Notwithstanding the foregoing, Jones Lang LaSalle has advised Delphi: (i) that it recommends that Delphi expand the scope of Jones Lang LaSalle's retention to provide two (2) full-time professionals rendering Administrative Services; and (ii) the retention of two (2) full-time professionals rendering Administrative Services will eliminate the risk of loss that could otherwise arise due to any interruption in the services to be rendered by the sole professional providing Administrative Services to Delphi pursuant to this Agreement. The parties agree that Jones Lang LaSalle shall not be liable to Delphi for any loss, claim or damage resulting from any interruption in Administrative Services due to Delphi's election to retain only one (1) professional from Jones Lang LaSalle for the Administrative Services.

**5.4  Survival of Indemnification.** The provisions of this article shall survive the termination of this Agreement.

## ARTICLE VI
## CONFIDENTIALITY

**6.1  Confidential Information Regarding Delphi:**

A. Jones Lang LaSalle acknowledges that, in connection with the performance of the Services, Delphi shall provide Jones Lang LaSalle with information Delphi believes is necessary to permit Jones Lang LaSalle to understand Delphi's requirements with respect to particular Properties and Delphi may provide Jones Lang LaSalle with other information relating to Delphi and the Properties that is not generally known to the public or which Delphi considers to be confidential or proprietary. Jones Lang LaSalle further acknowledges that information regarding: (i) Delphi's interest in Properties; (ii) the business plans, needs and requirements of Delphi; and (iii) terms which may be acceptable to Delphi under prospective leasing and purchase agreement is highly confidential and is maintained by Delphi as trade secrets. (All information identified in the preceding two (2) sentences is hereafter referred to as "**Delphi Confidential Information**".)

B. Jones Lang LaSalle shall not: (i) disclose Delphi Confidential Information to any person or entity other than employees who have a need to know such information; (ii) use Delphi Confidential Information for the benefit of any person or entity other than Delphi; or (iii) assert any right, title or other interest in Delphi Confidential Information. Jones Lang LaSalle shall also take appropriate actions by instruction or agreement to advise employees of their obligations with respect to use, copying, protection and security of Delphi Confidential Information. Notwithstanding anything contained in this Agreement, Jones Lang LaSalle shall have the right to disclose such information which: (i) is or becomes available to the public other than as a result of a breach by Jones Lang LaSalle under this Section 6.1; (ii) becomes available to Jones Lang LaSalle from a third party not known by Jones Lang LaSalle to be under any obligation of confidentiality to Delphi; (iii) Jones Lang LaSalle is legally required to disclose or as is necessary or desirable in any litigation or dispute resolution

{ JLL / 004 / 00010743.DOC / 2}    5

proceedings between Delphi and Jones Lang LaSalle; or (iv) is, in Delphi's sole and exclusive judgment, reasonably necessary for Jones Lang LaSalle to perform its services hereunder.

   6.2   **Confidential Information Regarding Jones Lang LaSalle.** Delphi acknowledges that source codes and operating features of software programs developed and to be developed by Jones Lang LaSalle may be confidential or proprietary and may be maintained by Jones Lang LaSalle as trade secrets if they were developed at no cost to Delphi and outside of the performance of the Services. (All programs and information identified in the preceding sentence, which are proprietary or confidential and have been developed at no cost to Delphi and outside of the performance of the Services shall be referred to as "**Jones Lang LaSalle Confidential Information**"). Delphi shall use reasonable efforts to respect and observe the confidential or proprietary nature of Jones Lang LaSalle Confidential Information if Jones Lang LaSalle has advised Delphi of its confidential or proprietary nature at the time the applicable information is disclosed to Delphi. Delphi shall not use Jones Lang LaSalle Confidential Information for the benefit of any person or entity other than Jones Lang LaSalle or Delphi. Notwithstanding anything contained in this Agreement, Delphi shall have the right to disclose such information which: (i) is or becomes available to the public other than as a result of a breach by Delphi under this Section 6.2; (ii) becomes available to Delphi from a third party not known by Delphi to be under any obligation of confidentiality to Jones Lang LaSalle; or (iii) Delphi is legally required to disclose or as is necessary or desirable in any litigation or dispute resolution proceedings between Delphi and Jones Lang LaSalle.

   6.3.   **Advertisement and Publication:**

      A.   Jones Lang LaSalle shall not, without the written approval of Delphi, advertise or publish the fact that Jones Lang LaSalle has contracted with Delphi to furnish services to Delphi. In addition, Jones Lang LaSalle shall not make any explicit or implicit statement that would allow a listener, observer or reader to infer or conclude that Delphi approves of, endorses, favors or supports Jones Lang LaSalle, or its quality, in any manner whatsoever.

      B.   Without the prior written approval of Delphi, Jones Lang LaSalle shall not issue any press statements or speak directly with the media about any services provided under this Agreement or its relationship with Delphi. Any press inquiries Jones Lang LaSalle receives regarding this Agreement or the Services or any other matter pertaining to Delphi must be reported immediately by Jones Lang LaSalle to Delphi.

      C.   In locating Properties, Jones Lang LaSalle shall not advise any owner or any other third party of Jones Lang LaSalle's relationship to Delphi, except as Delphi directs in writing. Unless Delphi otherwise requests, Jones Lang LaSalle shall advise owners and their representatives and agents that Jones Lang LaSalle is acting on behalf of an undisclosed principal; provided, however, in no event shall Jones Lang LaSalle be required to sign any agreements as an undisclosed principal.

D.  Neither party shall disclose the economic terms of this Agreement, except: (i) as is legally required; or (ii) is necessary or desirable in any litigation or dispute resolution proceedings that involve the parties.

**6.4  Use of Software and Similar Property:**

A.  Jones Lang LaSalle may use or develop software and similar and related materials in the course of its performance of the Services. However, Jones Lang LaSalle may change any database or software used to maintain Delphi's information database without Delphi's prior written approval if such changes do not adversely affect the storage of or reasonable access to Delphi's data. Delphi shall own any such software (and related source codes or documentation) and all similar materials, which are developed at Delphi's cost or expense. Delphi agrees that it has no right in any such software (or related source codes or documentation) or any similar materials, including, without limitation, any right to purchase, license, use or restrict the use of any such software or similar materials if they have been developed without cost to Delphi. Without limiting the above, upon termination of this Agreement, Jones Lang LaSalle shall cooperate in transferring the data/information in the database managed by Jones Lang LaSalle to Delphi in a machine readable form. Except as set forth herein, no right is granted Delphi in any software upon which the database has been constructed. Jones Lang LaSalle shall be reimbursed its reasonable costs, expenses and time (at hourly rates negotiated between the parties) incurred pursuant to said transfer.

B.  Jones Lang LaSalle will maintain the Delphi+ Lease Administration System to permit the Account Personnel to manage Delphi's worldwide owned and leased real property portfolio. The fee for the Delphi+ Lease Administration System is One Thousand Five Hundred Dollars ($1,500) per month.

**6.5  Survival.** The provisions of this article shall survive the termination of this Agreement.

## ARTICLE VII
## REPRESENTATIONS

**7.1  Jones Lang LaSalle's Representations.**  Jones Lang LaSalle represents that:

A.  Jones Lang LaSalle has the full power and authority to: (i) execute, deliver and perform this Agreement; and (ii) carry out its business as now conducted and contemplated hereby.

B.  This Agreement has been duly authorized, executed and delivered by Jones Lang LaSalle and constitutes the legal, valid and binding obligation of Jones Lang LaSalle, enforceable against Jones Lang LaSalle in accordance with the terms hereof, subject, however, to limitations imposed by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the enforcement of creditors' rights generally and to general principles of equity.

{ JLL / 004 / 00010743.DOC / 2}                                7

C. Jones Lang LaSalle is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Maryland. Jones Lang LaSalle is authorized to conduct business, to the extent required by applicable law, in each State in which it currently conducts its business

7.2 **Delphi's Representations.** Delphi represents that:

A. Delphi has the full power and authority to: (i) execute, deliver and perform this Agreement; and (ii) carry out its business as now conducted and contemplated hereby.

B. This Agreement has been duly authorized, executed and delivered by Delphi and constitutes the legal, valid and binding obligation of Delphi, enforceable against Delphi in accordance with the terms hereof, subject, however, to limitations imposed by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the enforcement of creditors' rights generally and to general principles of equity.

C. Delphi is a limited liability company duly formed and validly existing and in good standing under the laws of the State of Delaware. Delphi is authorized to conduct business, to the extent required by applicable law, in each State in which it currently conducts its business.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1 **Entire Agreement.** This Agreement supersedes any and all prior agreements, whether oral or in writing, and sets forth the entire understanding and agreement between Jones Lang LaSalle and Delphi regarding the subject matter hereof. This Agreement may be amended, modified or supplemented only in writing as agreed to and signed by authorized representatives of Jones Lang LaSalle and Delphi.

8.2 **No Waiver.** No forbearance, delay or indulgence by either party in enforcing the provisions of this Agreement shall prejudice or restrict the rights of that party, nor shall any waiver of its rights operate as a waiver of any subsequent breach.

8.3 **Severability.** If any provision of this Agreement is held invalid or unenforceable and a court refuses to modify or reform any such provision, such provision shall be eliminated from this Agreement but each of the remaining provisions shall remain in full force and effect. The provisions contained in this Agreement are deemed separate and severable.

8.4 **Notices.** All notices required hereunder shall be in writing and delivered to the address of the recipient set forth below its signature hereto or such other address as the recipient may designate by notice given in accordance with this section. Any notice shall be delivered by hand, overnight courier service or by certified first class mail return receipt requested, postage prepaid and shall be deemed to have been served upon receipt or refusal to accept receipt.

**8.5    Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. Such counterparts shall together constitute one and the same document. Signatures transmitted by facsimile shall be considered authentic and legally binding.

**8.6    Assignment.** Except for assignment to affiliates of Delphi, Delphi shall not assign any of its rights or obligations hereunder, whether in whole or in part, without the prior written consent of Jones Lang LaSalle, which consent may be unreasonably withheld, provided that Delphi may require that Jones Lang LaSalle continue to perform Services under this Agreement with respect to any business unit or property that is sold, disposed of or otherwise transferred by Delphi. Jones Lang LaSalle may not assign any of its rights or obligations hereunder, whether in whole or in part, without the prior written consent of Delphi, except that Jones Lang LaSalle may assign its rights and obligations under this Agreement to any successor to Jones Lang LaSalle's entire business operations as a result of any merger, consolidation or sale of substantially all of its assets, provided the assignee assumes all of Jones Lang LaSalle's obligations hereunder and Delphi receives at least thirty (30) days' prior written notice of the assignment. If Jones Lang LaSalle assigns this Agreement, Jones Lang LaSalle shall remain liable under this Agreement.

**8.7    Conflicts of Interest.** Jones Lang LaSalle acknowledges and agrees that, although Jones Lang LaSalle is not an agent of Delphi in performing the Services under this Agreement, Jones Lang LaSalle shall be obligated to: (i) exercise the good faith, loyalty and honesty that an agent owes to its principal; (ii) disclose to Delphi all potential conflicts of interest that may arise between Delphi and Jones Lang LaSalle; and (iii) act in the best interest of Delphi at all times.

**8.10    Governing Law; Jurisdiction.** This Agreement has been negotiated, executed by Delphi and delivered in the State of Michigan. This Agreement and the respective rights and obligations of the parties under this Agreement shall be governed by, and shall be determined under, the internal laws of the State of Michigan applicable to contracts between residents of the State of Michigan to be performed solely in the State of Michigan, i.e., without regard to choice of law principles. Without limitation of the parties' agreement to arbitrate disputes as set forth in Section 8.11 10 below, the parties hereto agree that, in the event any legal action involving or relating to this Agreement is instituted as a result of, in connection with our outside of arbitration, such action shall be brought and maintained solely in a court of the State of Michigan or a Federal court sitting in the State of Michigan. Jones Lang LaSalle hereby consents and agrees to cause each affiliate of Jones Lang LaSalle and each subcontractor, agent, representative and independent real estate representative that performs any of the Services under this Agreement to consent to the exclusive jurisdiction of the courts of the State of Michigan and Federal courts sitting in the State of Michigan.

**8.11    Arbitration.** Any dispute or issue of interpretation between Jones Lang LaSalle and Delphi arising out of this Agreement shall be resolved in the following manner: Notwithstanding the submission to jurisdiction set forth in Section 8.10 above, either party may (as the exclusive remedy available to it) seek binding arbitration in Southfield, Michigan (or such other location in the Detroit, Michigan metropolitan area as the offices of the American Arbitration Association may be relocated), in accordance with the commercial arbitration rules of the American Arbitration Association. A single arbitrator shall be jointly selected by the parties to this Agreement. If the parties to this

{ JLL / 004 / 00010743.DOC / 2}                                  9

Agreement fail to agree on a single arbitrator within sixty (60) days of the filing of a demand for arbitration, the American Arbitration Association shall select the arbitrator. The arbitration shall be conducted at the offices of the American Arbitration Association in Southfield, Michigan. The arbitrator has the authority to order, and the parties agree to submit to discovery under, procedures consistent with the Michigan Court Rules of 1985, as amended Subchapter 2.300, Discovery, or any hereinafter promulgated amendment or replacement provision. Jones Lang LaSalle hereby consents and agrees to cause each affiliate of Jones Lang LaSalle and each subcontractor, agent, representative and independent real estate representative that performs any of the Services under this Agreement to consent to the authority of an arbitrator selected in accordance with this Section 8.11. The award of the arbitrator shall be binding upon all parties, an a judgment upon the award may be entered by any court of competent jurisdiction. The substantially prevailing party in the arbitration shall be entitled to recover from the non-prevailing party its reasonable expenses incurred in connection with any such arbitration proceeding.

      **8.12** **Audit.** Delphi shall have the right, at any time and from time to time, upon reasonable prior written notice to Jones Lang LaSalle, to review, audit and make copies of all relevant books, records, payroll data, receipts, agreements, documents and other materials, including Jones Lang LaSalle's administrative and accounting policies, guidelines, practices and procedures, which relate to the Services being performed under this Agreement, in order to substantiate any charges and other matters arising under this Agreement. Jones Lang LaSalle will maintain and preserve all such documents for a period of two (2) years following final payment for the Services to which the documents relate. Jones Lang LaSalle will provide Delphi with reasonable access to its facilities and otherwise cooperate and facilitate any such review and audits by Delphi.

      **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

**JONES LANG LASALLE AMERICAS, INC.**

By: _____

Its: _____

_____
_____
_____

Attn: _____

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By: _____

Its: _____

5825 Delphi Drive
Troy, Michigan 48098-2815
Attn: Director of Operations Support Group

{ JLL / 004 / 00010743.DOC / 2}      10

## EXHIBIT A

## EXPENSE REIMBURSEMENT

All reasonable out-of-pocket expenses directly related to the Account Personnel performing the Services (including necessary travel, accommodations, apartment rentals, etc., but excluding costs of Jones Lang LaSalle's home office and other overhead expenses) shall be reimbursed to Jones Lang LaSalle, provided that Delphi shall have approved such out-of-pocket expenses in writing in advance. Such reimbursements shall be made thirty (30) days following receipt of request for reimbursement in the form approved by Delphi (including all supporting documentation required by Delphi). Jones Lang LaSalle will comply with Delphi's policies regarding expense reimbursements, as the same may be modified from time to time. Jones Lang LaSalle shall also comply with the requirements regarding travel arrangements set forth below.

## TRAVEL REIMBURSEMENT

A.   If Account Personnel are required by Delphi to travel as an incidental requirement in performing services for Delphi, then such travel expenses, subject to prior written approval of Delphi, will be reimbursable as follows:

| | |
|---|---|
| 1. Air Travel | Economy/Coach class only. Business class is permitted for travel only to the Asia Pacific region and upon prior written consent by Delphi. |
| 2. Hotel | Jones Lang LaSalle will exercise good, sound business judgment and discretion in choosing hotels, such as moderately priced chain hotels or hotels that offer discounted corporate rates. Where extended travel is involved, reduced rates may be available and should be requested. |
| 3. Rental cars | Compact or intermediate class only. The cost of collision damage waiver and personal accident insurance is the responsibility of Jones Lang LaSalle. |
| 4. Mileage Allowance | Reimbursement will be at $0.32 per mile, or no less than whatever Delphi reimburses on a regional basis to its employees, which are in excess of his or her normal commute from home to work and back. When permanently assigned to another location, even if the new location is temporary, Jones Lang LaSalle will not be reimbursed for excess miles, additional driving time, etc. |
| 5. Expense Reports | Customarily available receipts for all reimbursable expenses must be attached to expense reports Jones Lang LaSalle submits. Detailed receipts are required for all meals and other expenditures of $25.00 or more. |
| 6. Meals | Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal |

| | |
|---|---|
| 7. Extended Travel | Jones Lang LaSalle should review the home visit policy prior to a trip. Generally, the following provisions apply:<br><br>If the travel expense is less than the living expense in the temporary location, Jones Lang LaSalle will be reimbursed for travel to the permanent location every week.<br><br>If the travel expense is more than the living expense in the temporary location, Jones Lang LaSalle will be reimbursed for travel to the permanent location every two weeks.<br><br>Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval. |
| 8. Miscellaneous | When Jones Lang LaSalle (or its employee) chooses an alternative method of transportation, e.g., to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs. Documentation to support the lesser cost must be attached to expense report. Travel time must also be limited if on working hours.<br><br>The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form.<br><br>Jones Lang LaSalle is responsible for travel reservations, hotel/motel accommodations and rental cars. If directed by Delphi, Jones Lang LaSalle will make all travel arrangements through Global Experts in Travel (GET) using a special account set up for such purposes.<br><br>Any cash advance by Jones Lang LaSalle to its employee is the responsibility of Jones Lang LaSalle. |

B.     All travel for which Jones Lang LaSalle seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.