# EXHIBIT A

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------- x
                                        :
    In re                        :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                        :
           Debtors.    :    (Jointly Administered)
                                        :
---------------------------- x

## APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP AS SPECIAL LITIGATION COUNSEL TO DEBTORS

### ("QUINN EMANUEL RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this application (the "Application") for an order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") as special litigation counsel to the Debtors, nunc pro tunc to October 8, 2005. In support of this Application, the Debtors submit the Affidavit of Gerald E. Hawxhurst, sworn to February 6, 2006 (the "Hawxhurst Affidavit"). In further support of this Application, the Debtors respectfully represent as follows:

## Background

A.   The Chapter 11 Filings

1.   On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1130, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions in this Court for reorganization relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtor's chapter 11 cases (Dockets Nos. 28 and 404).

2.   On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases.

3.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.   The statutory predicates for the relief requested herein are sections 327(e), and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.   Current Business Operations Of The Debtors

5.   With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.    Over the past century, the operations which are now owned by Delphi have developed leading global technology innovations with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local

---

[1]    The aggregated financial data used in this Application generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company

generated approximately $2 billion in net income. Every year thereafter, however, with the

exception of 2002, the Company has suffered losses. In calendar year 2004, the Company

reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a

downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six

months of 2005. The Company experienced net operating losses of $608 million for the first six

months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1

billion less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed to

the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

legacy liabilities and operational restrictions driven by collectively bargained agreements,

including restrictions preventing the Debtors from exiting non-strategic, non-profitable

operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive

U.S. vehicle production environment for domestic OEMs resulting in the reduced number of

motor vehicles that GM produces annually in the United States and related pricing pressures, and

(c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward looking revenue requirements. Having concluded that

pre-filing discussions with its Unions and GM were not leading to the implementation of a plan

sufficient to address the Debtors' issues on a timely basis, the Company determined to commence

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15.    By this Application, the Debtors request entry of an order authorizing the Debtors to employ and retain Quinn Emanuel to an ongoing professional relationship between the Debtors and Quinn Emanuel.

Basis For Relief

16.    The Debtors submit that Quinn Emanuel's proposed retention meets all the prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel that has represented the Debtors prior to the commencement of their chapter 11 cases, for a "specified special purpose" if such employment is in the best interest of the Debtors.  Because Quinn Emanuel is the proposed special litigation counsel to the Debtors, but not the proposed bankruptcy counsel in these chapter 11 cases, section 327(e) does not require that Quinn Emanuel and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code.  Rather, section 327(e) instead requires that Quinn Emanuel not represent or hold any interest adverse to the estates or the Debtors with respect to the matters on which Quinn Emanuel is to be employed.  As discussed below, the employment of Quinn Emanuel as special litigation counsel is in the best interests of the Debtors.

### The Debtors' Employment Of Quinn Emanuel Is In The Best Interests Of The Estates

17.    Quinn Emanuel will serve as special litigation counsel to the Debtors during these chapter 11 cases.  Quinn Emanuel has performed similar work for the Debtors in the past and is therefore familiar with the Debtors' businesses and operations.  In particular, Quinn Emanuel is especially attuned to the unique litigation issues that arise in the Debtors' industry.

18.    Most importantly for present purposes, several members of Quinn Emanuel have extensive experience in litigation, including patent, antitrust, and employment litigation, and its interplay with restructuring and bankruptcy law.  Accordingly, the Debtors believe that Quinn Emanuel is well qualified to serve as special litigation counsel in these chapter 11 cases in an efficient and effective manner.

19.    The Debtors believe that the employment of Quinn Emanuel will enhance

and will not duplicate the employment of Skadden, Arps, Slate, Meagher, & Flom LLP

("Skadden"), the Debtors' general bankruptcy counsel, Shearman & Sterling LLP ("Shearman"),

the Debtors' special counsel, Togut, Segal & Segal LLP ("Togut"), the Debtors' conflicts counsel,

or any of the other professionals retained by the Debtors to perform specific tasks that are

unrelated to the work to be performed by Quinn Emanuel as special litigation counsel to the

Debtors. The Debtors understand that Quinn Emanuel will work with the other professionals

retained by the Debtors to avoid any such duplication.

Services To Be Rendered By Quinn Emanuel

20.    Pursuant to mutually understood ordinary course of business terms, the

Debtors wish to engage Quinn Emanuel to provide services to the Debtors in connection with

specific litigation matters. The Debtors anticipate that such services will include defense in the

following:

(a)    Whitney v. Delphi Corporation, Case No. BC337315

Plaintiff sued Delphi Corp. and Delphi Product and Service Solutions, Inc. in Los

Angeles Superior Court for Age Discrimination, Wrongful Termination in Violation of Public

Policy, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional

Distress. Plaintiff alleges both disparate treatment and disparate impact age discrimination.

Plaintiff alleges he was wrongfully terminated in June 2003 and was told he he was being

terminated because he did not have the "fit and finish" for the new team. Plaintiff also alleges

that Delphi engaged in a pattern and practice of systematically reducing the average age of its

workforce by terminating the employment of and/or otherwise pressuring older workers to cease

working for Delphi by hiring younger workers. Delphi denies Plaintiff's allegations and will

defend vigorously the claims against it.

(b) <u>Patent Holding Company v. Delphi Automotive Systems Corporation</u>, Civil

Action No. 99-76013, E.D. Mich.

Plaintiff sued Delphi, alleging infringement of three patents directed to various

aspects of air bag cover design, and is seeking compensatory damage and an injunction. Plaintiff

further alleges willful infringement and seeks treble damages based on their allegations. Delphi

denies plaintiff's infringement allegations and has asserted counterclaims in which it seeks a

declaratory judgment that the patents-in-suit are not infringed and are invalid. Delphi denies

Plaintiff's allegations and will defend vigorously the claims against it.

(c) <u>Quinn v. Delphi Automotive Systems Corporation</u>, No. 1 CACV 05-0063

Quinn Emanuel is currently representing Delphi in the Arizona Court of Appeals

in the above-mentioned case. The seven named plaintiffs seek to bring a class action on behalf

of all Arizona residents with Delphi batteries installed in their cars. They assert products

liability, fraud, and unjust enrichment claims based upon an alleged defect in Delphi batteries

that causes them to leak acid in warm climates such as Arizona and fail prematurely. On

September 27, 2004, the Superior Court for Maricopa County (Katz, J.) denied the plaintiffs'

motion for class certification, granted Delphi's motion for summary judgment, and dismissed the

case. Quinn Emanuel was retained to conduct the appeal. The briefing on appeal has been

completed, and oral argument was scheduled to take place in November 2005 before the action

was stayed in light of Delphi's bankruptcy filing.

(d) <u>Crown City Plating Co. v. Delphi Corporation</u>

This matter involves disputes between Delphi Automotive Systems, LLC and

Crown City Plating Co., in which Crown City has threatened to sue Delphi Corporation if Delphi

Automotive sues Crown City.

Delphi Automotive Systems, LLC ("Delphi") loaned Crown City $1 million, which is evidenced by a promissory note. Crown City defaulted on its note in January 2004. Crown City claims that it made investments in equipment based on assurances of a long-term relationship by Delphi. Crown City also claims it based its pricing on the assumption of a long-term relationship. Further, it claims that Delphi was late delivering certain visual testing equipment that was needed to produce the parts and that the testing equipment malfunctioned, which Crown City contends increased Crown City's costs of production. Further, Crown City alleged that Delphi and its predecessors breached non-disclosure agreements by giving its proprietary information to Crown City's competitors. Crown City has threatened to sue Delphi Corporation and Does 1 through 50, for $4.5 million for fraud, negligent misrepresentation and breach of the implied covenant of good faith and fair dealing.

The parties have attempted to resolve this dispute. In that regard, they have entered into a Tolling Agreement, which was extended through December 31, 2005, prior to Delphi's bankruptcy filing. Delphi denies Plaintiff's allegations and will defend vigorously the claims against it. The Tolling Agreement may be terminated by either party on thirty days written notice.

(e) <u>Quake Global Inc. v. Orbcomm, LLC, et al.</u>, Case No. CV 051410 (C.D. Cal. Feb. 24, 2005)

Quinn Emanuel is currently representing Delphi in this matter in which Plaintiff alleges that Delphi and other defendants violated federal antitrust laws. Specifically, Plaintiff alleges that Delphi's agreement to manufacture satellite modems for Stellar Satellite Communications, Ltd., constitutes a "de facto exclusive dealing" arrangement in violation of the

Sherman Act. Delphi denies the allegations and intends to defend vigorously the claims against it.

21.    Quinn Emanuel has indicated its desire and willingness to represent the Debtors as set forth herein and to render the necessary professional services as special litigation counsel to the Debtors.

22.    The Debtors may request that Quinn Emanuel undertake specific matters beyond the scope of the responsibilities set forth above. Should Quinn Emanuel agree in its discretion to undertake any such matter, the Debtors shall seek further order of this Court.

### Disinterestedness Of Professionals

23.    The Hawxhurst Affidavit filed in support of this Application contains information available to date on Quinn Emanuel's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a). To the best of the Debtors' knowledge, and based on the information in the attached Hawxhurst Affidavit, Quinn Emanuel, its partners, counsel, and associates do not hold or represent any interest adverse to the Debtors, their creditors, any other party-in-interest in these chapter 11 cases, their respective attorneys and investment advisors, the U.S. Trustee, or any person employed therein, with respect to the matters on which Quinn Emanuel is to be employed.

24.    Quinn Emanuel has disclosed to the Debtors that Quinn Emanuel has in the past represented, currently represents, and will likely in the future represent certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or their chapter 11 cases. Quinn Emanuel does not believe that the foregoing raises any actual or potential conflict of interest of Quinn Emanuel relating to the representation of the Debtors as their special litigation counsel in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution. The Debtors understand that, in order to vitiate any actual or potential

conflicts of interest, Quinn Emanuel will not assist the Debtors in connection with their analysis,
negotiations, and litigation, if any, with parties with whom Quinn Emanuel has existing client
relationships, and that Skadden (or other counsel if Skadden has a conflict), instead, will handle
these tasks.

<u>Professional Compensation</u>

25.    Quinn Emanuel intends to apply to this Court for compensation and
reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the
Bankruptcy Rules, applicable guidelines established by the U.S. Trustee, and orders of this
Court. Quinn Emanuel acknowledges that all compensation will be subject to this Court's review
and approval, after notice and a hearing.

26.    Under the applicable provisions of the Bankruptcy Code, and subject to the
approval of this Court, the Debtors propose to pay Quinn Emanuel the rates described in the
Hawxhurst Affidavit.

27.    No arrangement is proposed between the Debtors and Quinn Emanuel for
compensation to be paid in these chapter 11 cases other than as set forth above and in the
Hawxhurst Affidavit.

28.    At the Debtors' request, Quinn Emanuel has continued to assist the Debtors
in connection with their litigation issues since October 8, 2005 and hence the Debtors request
Quinn Emanuel's retention to be effective <u>nunc pro tunc</u> to October 8, 2005.

<u>Conclusion</u>

29.    For the foregoing reasons, the Debtors submit that the employment of Quinn
Emanuel as the Debtors' special litigation counsel on the terms set forth herein is in the best
interests of the estates.

## Notice

30.    Notice of this Application has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245). In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

## Memorandum Of Law

31.    Because the legal points and authorities upon which this Application relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)
authorizing the Debtors to employ and retain Quinn Emanuel as their special litigation counsel to
perform the services set forth herein and (b) granting the Debtors such other and further relief as
is just.


Dated:    New York, New York
          February 7, 2006


                              DELPHI CORPORATION, on behalf of itself and
                              certain of its subsidiaries and affiliates, as Debtors and
                              Debtors-in-possession

                              By:    /s/ David M. Sherbin
                                     Name: David M. Sherbin
                                     Title:   Vice President, General Counsel, and
                                              Chief Compliance Officer Officer

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
        In re                            :   Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :   Case No. 05-44481 (RDD)
                                              :
                        Debtors.   :   (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

AFFIDAVIT OF GERALD E. HAWXHURST IN SUPPORT OF
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R.
BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
AS SPECIAL LITIGATION COUNSEL TO DEBTORS

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

GERALD E. HAWXHURST, being duly sworn, deposes and states as follows:

      1.    I am counsel in the law firm of Quinn Emanuel Urquhart Oliver &

Hedges, LLP ("Quinn Emanuel"), proposed special litigation counsel for Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in

the above-captioned cases (collectively, the "Debtors").

      2.    I submit this affidavit (the "Affidavit")[1] in support of the Application For

Order Under 11 U.S.C. §§ 327(e) and 1107(b) And Fed. R. Bankr. P. 2014 Authorizing

Employment And Retention Of Quinn Emanuel Urquhart Oliver & Hedges, LLP As Special

Litigation Counsel To Debtors (the "Application") nunc pro tunc to October 8, 2005, filed

concurrently herewith.

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the
      Application.

3.    The address and telephone number of Quinn Emanuel Urquhart Oliver &
Hedges, LLP are as follows:

> 865 South Figueroa Street, 10th Floor
>
> Los Angeles, California  90017-2543
>
> Telephone: (213) 443-3000
>
> Facsimile: (213) 443-3100

4.    Quinn Emanuel is well qualified to assist the Debtors in the manner described
in the Application.  Most importantly for present purposes, several members of Quinn Emanuel
have extensive experience in litigation, including patent, antitrust, and employment litigation,
and its interplay with restructuring and bankruptcy law.  Accordingly, the Debtors believe that
Quinn Emanuel is well qualified to serve as special litigation counsel in these chapter 11 cases in
an efficient and effective manner.

5.    Quinn Emanuel is currently advising the Debtors regarding several litigation
matters.  Based on the services that Quinn Emanuel has rendered to the Debtors, Quinn Emanuel
is thoroughly familiar with the Debtors' corporate structure, the nature of their financial status,
and certain legal matters relating to the Debtors.

6.    Generally, in connection with the Debtors' cases, Quinn Emanuel intends to
provide to the Debtors the following types of professional services:

(a)  <u>Whitney v. Delphi Corporation,</u> Case No. BC337315

Plaintiff sued Delphi Corp. and Delphi Product and Service Solutions, Inc. in Los
Angeles Superior Court for Age Discrimination, Wrongful Termination in Violation of Public
Policy, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional
Distress.  Plaintiff alleges both disparate treatment and disparate impact age discrimination.
Plaintiff alleges he was wrongfully terminated in June 2003 and was told he he was being

terminated because he did not have the "fit and finish" for the new team. Plaintiff also alleges

that Delphi engaged in a pattern and practice of systematically reducing the average age of its

workforce by terminating the employment of and/or otherwise pressuring older workers to cease

working for Delphi by hiring younger workers. Delphi denies Plaintiff's allegations and will

defend vigorously the claims against it.

(b) <u>Patent Holding Company v. Delphi Automotive Systems Corporation</u>, Civil

Action No. 99-76013, E.D. Mich.

Plaintiff sued Delphi, alleging infringement of three patents directed to various

aspects of air bag cover design, and is seeking compensatory damage and an injunction. Plaintiff

further alleges willful infringement and seeks treble damages based on their allegations. Delphi

denies plaintiff's infringement allegations and has asserted counterclaims in which it seeks a

declaratory judgment that the patents-in-suit are not infringed and are invalid. Delphi denies

Plaintiff's allegations and will defend vigorously the claims against it.

(c) <u>Quinn v. Delphi Automotive Systems Corporation</u>, No. 1 CACV 05-0063.

Quinn Emanuel is currently representing Delphi in the Arizona Court of Appeals

in the above-mentioned case. The seven named plaintiffs seek to bring a class action on behalf

of all Arizona residents with Delphi batteries installed in their cars. They assert products

liability, fraud, and unjust enrichment claims based upon an alleged defect in Delphi batteries

that causes them to leak acid in warm climates such as Arizona and fail prematurely. On

September 27, 2004, the Superior Court for Maricopa County (Katz, J.) denied the plaintiffs'

motion for class certification, granted Delphi's motion for summary judgment, and dismissed the

case. Quinn Emanuel was retained to conduct the appeal. The briefing on appeal has been

completed, and oral argument was scheduled to take place in November 2005 before the action
was stayed in light of Delphi's bankruptcy filing.

### (d)  Crown City Plating Co. v. Delphi Corporation

This matter involves disputes between Delphi Automotive Systems, LLC and
Crown City Plating Co., in which Crown City has threatened to sue Delphi Corporation if Delphi
Automotive sues Crown City.

Delphi Automotive Systems, LLC ("Delphi") loaned Crown City $1 million,
which is evidenced by a promissory note. Crown City defaulted on its note in January 2004.
Crown City claims that it made investments in equipment based on assurances of a long-term
relationship by Delphi. Crown City also claims it based its pricing on the assumption of a long-
term relationship.  Further, it claims that Delphi was late delivering certain visual testing
equipment that was  needed to produce the parts and that the testing equipment malfunctioned,
which Crown City contends increased Crown City's costs of production. Further, Crown City
alleged that Delphi and its predecessors breached non-disclosure agreements by giving its
proprietary information to Crown City's competitors. Crown City has threatened to sue Delphi
Corporation and Does 1 through 50, for $4.5 million for fraud, negligent misrepresentation and
breach of the implied covenant of good faith and fair dealing.

The parties have attempted to resolve this dispute.  In that regard, they have
entered into a Tolling Agreement, which was extended through December 31, 2005, prior to
Delphi's bankruptcy filing.  Delphi denies Plaintiff's allegations and will defend vigorously the
claims against it.  The Tolling Agreement may be terminated by either party on thirty days
written notice.

(e) <u>Quake Global Inc. v. Orbcomm, LLC, et al.</u>, Case No. CV 051410 (C.D. Cal. Feb. 24, 2005)

Quinn Emanuel is currently representing Delphi in this matter in which Plaintiff alleges that Delphi and other defendants violated federal antitrust laws. Specifically, Plaintiff alleges that Delphi's agreement to manufacture satellite modems for Stellar Satellite Communications, Ltd., constitutes a "de facto exclusive dealing" arrangement in violation of the Sherman Act. Delphi denies the allegations and intends to defend vigorously the claims against it.

7.    In light of certain existing client representations on unrelated matters, the engagement of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") as the Debtors' bankruptcy counsel, the engagement of Shearman & Sterling LLP ("Shearman") as the Debtors' special counsel, the engagement of Togut, Segal & Segal LLP ("Togut") as the Debtors' conflicts counsel, and the engagement of other counsel for the Debtors, Quinn Emanuel will not be responsible for or undertake any representation with respect to (a) advising the Debtors concerning specific contracts and claims of certain of Quinn Emanuel's existing clients and (b) reviewing, interpreting, or commenting on the specific contracts and claims of certain of Quinn Emanuel's existing clients. These existing client relationships, and the scope of the carve-out from Quinn Emanuel's retention, are discussed more fully below.

8.    It is Quinn Emanuel's understanding that the Debtors may request that Quinn Emanuel undertake specific matters beyond the limited scope of the responsibilities set forth above. Should Quinn Emanuel agree in its discretion to undertake any such matter, it is Quinn Emanuel's understanding that the Debtors will seek further order of this Court.

9.    Quinn Emanuel is making efforts, together with the Debtors' other counsel, to ensure that there is no duplication of effort or work between such firms and Quinn Emanuel. It is Quinn Emanuel's intention that the estates should receive the best value possible from the efficient coordination of work among its counsel. Quinn Emanuel believes that its lawyers and the rest of the lawyers retained in these chapter 11 cases have to date delineated clearly, and will continue to delineate clearly, the division of work between them, so as to avoid any duplication of effort and to maximize the efficiencies of the proposed arrangement.

10.    With regard to Patent Holding Company v. Delphi Automotive Systems Corporation, Civil Action No. 99-76013, E.D. Mich., Quinn Emanuel was retained on or about December 20, 2001. The following attorneys were approved to work on this matter at the following rates: Steve Hansen = $355; Bruce Chapman = $355; Eric Bjorgum = $275; Tigran Guledjian = $225; and Radhika Tandon = $215.

11.    With regard to Whitney v. Delphi Corporation, Quinn Emanuel was retained on or about August 18, 2005. The following attorneys were approved to work on this matter at the following rates: Randa Osman = $510.00; and Allison Burkholder = $300.00.

12.    With regard to Quake Global Inc. v. Orbcomm, LLC, et al., Case No. CV 051410 (C.D. Cal. Feb. 24, 2005), Quinn Emanuel was retained on or about April 20, 2005. The following attorneys were approved to work on this matter at the following rates: A. William Urquhart = $600.00; Gerald E. Hawxhurst = $475.00; Kevin Y. Teruya = $355.00; and Heidi Frahm = $290.00.

13.    With regard to Crown City Plating Co. v. Delphi Corporation, Quinn Emanuel was retained on or about August 10, 2004. The following attorney was approved to work on this matter at the following rate: Jack Hart = $475.00.

14.    With regard to Quinn v. Delphi Automotive Systems Corporation, No. 1
CACV 05-0063, Quinn Emanuel was retained on or about March 14, 2005. The following
attorneys were approved to work on this matter at the following rates:  Shon Morgan = $525.00;
Dan Bromberg  = $525.00; Margret Caruso = $515.00; Kent Bullard = $490.00; Shahin Rezvani
= $385.00; Tim Pennington = $280.00; Tara Gellman = $280.00; and T.J. Chiang = $280.00.

15.    Quinn Emanuel has agreed to accept as compensation for the services
rendered in connection with its representation of the Debtors the rates described in Paragraphs
10-14 of this Affidavit.

16.    Quinn Emanuel acknowledges that all amounts paid to Quinn Emanuel
during these chapter 11 cases are subject to final allowance by this Court. In the event that any
fees or expenses paid to Quinn Emanuel during these cases are disallowed by this Court, the fees
and expenses will be disgorged by Quinn Emanuel and returned to the Debtors or as otherwise
ordered by this Court.

17.    Quinn Emanuel categorizes its billings by subject matter, in compliance
with the applicable guidelines of the Office of the United States Trustee (the "U.S. Trustee
Guidelines"). Quinn Emanuel acknowledges its compensation in the Debtors' cases is subject to
approval of this Court in accordance with section 330 of the Bankruptcy Code, Bankruptcy Rule
2016, and the U.S. Trustee Guidelines.

18.    Quinn Emanuel has conducted a check for conflicts of interest and other
conflicts and connections with respect to the Debtors' bankruptcy cases. Quinn Emanuel
maintains a database containing the names of current, former, and potential clients and other
principal parties related to such clients. I caused Quinn Emanuel to review and analyze the
conflict database to determine whether Quinn Emanuel has any connection with the principal

parties-in-interest in these chapter 11 cases, using information provided to Quinn Emanuel by the

Debtors and Skadden, Arps and information contained in the database, including (a) the names of

the Debtors' prepetition lenders, (b) the names of significant creditors of the Debtors, and (c) the

names of firms that the Debtors intend to or may employ during their chapter 11 cases.

19.    Based upon this research, I have determined that Quinn Emanuel has in the

past represented, currently represents, and will likely in the future represent certain of the

Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or these

chapter 11 cases. I do not believe that the foregoing raises any actual or potential conflicts of

interest of Quinn Emanuel relating to the representation of the Debtors in these chapter 11 cases,

but such relationships are disclosed out of an abundance of caution.

20.    It is my intention that if Quinn Emanuel becomes aware of any other

connections of which it presently is unaware, Quinn Emanuel will bring them to the attention of

this Court and the U.S. Trustee.

Dated:    Los Angeles, CA
          February 6, 2006


                              By:    /s/ Gerald E. Hawxhurst
                                     Gerald E. Hawxhurst



Sworn to before me
this 6th day of February, 2006


 /s Lorraine Rivera
Notary Public

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
     In re                          :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                  Debtors.    :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP AS SPECIAL LITIGATION COUNSEL TO DEBTORS

#### ("QUINN EMANUEL RETENTION ORDER")

Upon the application, February 7, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C.

§§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") as special litigation counsel

to the Debtors; and upon the Affidavit of Gerald E. Hawxhurst, sworn to February 6, 2006, in

support of the Application (the "Hawxhurst Affidavit"); and this Court being satisfied with the

representations made in the Application and the Hawxhurst Affidavit that Quinn Emanuel does

not represent or hold any interest adverse to any of the Debtors' estates or the Debtors with

respect to the matters on which Quinn Emanuel is to be employed, and that Quinn Emanuel's

employment is necessary and would be in the best interests of each of the Debtors' estates; and it

appearing that proper and adequate notice has been given and that no other or further notice is

necessary; and upon the record herein; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED.

2.    The Debtors' employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP as their special litigation counsel, pursuant to the Application, is approved under sections 327(e) and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") with approval of such employment being effective as of the Petition Date, October 8, 2005.

3.    Quinn Emanuel Urquhart Oliver & Hedges, LLP shall be compensated in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), guidelines established by the Office of the United States Trustee, and further orders of this Court.

4.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Final Order.

5.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Application.

Dated:    New York, New York
         [___], 2006

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIDAVIT OF GERALD E. HAWXHURST IN SUPPORT OF
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R.
BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
AS SPECIAL LITIGATION COUNSEL TO DEBTORS**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

GERALD E. HAWXHURST, being duly sworn, deposes and states as follows:

1.    I am counsel in the law firm of Quinn Emanuel Urquhart Oliver &
Hedges, LLP ("Quinn Emanuel"), proposed special litigation counsel for Delphi Corporation
("Delphi") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in
the above-captioned cases (collectively, the "Debtors").

2.    I submit this affidavit (the "Affidavit")[1] in support of the Application For
Order Under 11 U.S.C. §§ 327(e) and 1107(b) And Fed. R. Bankr. P. 2014 Authorizing
Employment And Retention Of Quinn Emanuel Urquhart Oliver & Hedges, LLP As Special
Litigation Counsel To Debtors (the "Application") nunc pro tunc to October 8, 2005, filed
concurrently herewith.

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the
Application.

3.    The address and telephone number of Quinn Emanuel Urquhart Oliver &

Hedges, LLP are as follows:

> 865 South Figueroa Street, 10th Floor
>
> Los Angeles, California  90017-2543
>
> Telephone: (213) 443-3000
>
> Facsimile: (213) 443-3100

4.    Quinn Emanuel is well qualified to assist the Debtors in the manner described

in the Application.  Most importantly for present purposes, several members of Quinn Emanuel

have extensive experience in litigation, including patent, antitrust, and employment litigation,

and its interplay with restructuring and bankruptcy law.  Accordingly, the Debtors believe that

Quinn Emanuel is well qualified to serve as special litigation counsel in these chapter 11 cases in

an efficient and effective manner.

5.    Quinn Emanuel is currently advising the Debtors regarding several litigation

matters.  Based on the services that Quinn Emanuel has rendered to the Debtors, Quinn Emanuel

is thoroughly familiar with the Debtors' corporate structure, the nature of their financial status,

and certain legal matters relating to the Debtors.

6.    Generally, in connection with the Debtors' cases, Quinn Emanuel intends to

provide to the Debtors the following types of professional services:

(a)  Whitney v. Delphi Corporation, Case No. BC337315

Plaintiff sued Delphi Corp. and Delphi Product and Service Solutions, Inc. in Los

Angeles Superior Court for Age Discrimination, Wrongful Termination in Violation of Public

· Policy, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional

Distress.  Plaintiff alleges both disparate treatment and disparate impact age discrimination.

Plaintiff alleges he was wrongfully terminated in June 2003 and was told he he was being

terminated because he did not have the "fit and finish" for the new team. Plaintiff also alleges

that Delphi engaged in a pattern and practice of systematically reducing the average age of its

workforce by terminating the employment of and/or otherwise pressuring older workers to cease

working for Delphi by hiring younger workers. Delphi denies Plaintiff's allegations and will

defend vigorously the claims against it.

(b) Patent Holding Company v. Delphi Automotive Systems Corporation, Civil

Action No. 99-76013, E.D. Mich.

Plaintiff sued Delphi, alleging infringement of three patents directed to various

aspects of air bag cover design, and is seeking compensatory damage and an injunction. Plaintiff

further alleges willful infringement and seeks treble damages based on their allegations. Delphi

denies plaintiff's infringement allegations and has asserted counterclaims in which it seeks a

declaratory judgment that the patents-in-suit are not infringed and are invalid. Delphi denies

Plaintiff's allegations and will defend vigorously the claims against it.

(c) Quinn v. Delphi Automotive Systems Corporation, No. 1 CACV 05-0063.

Quinn Emanuel is currently representing Delphi in the Arizona Court of Appeals

in the above-mentioned case. The seven named plaintiffs seek to bring a class action on behalf

of all Arizona residents with Delphi batteries installed in their cars. They assert products

liability, fraud, and unjust enrichment claims based upon an alleged defect in Delphi batteries

that causes them to leak acid in warm climates such as Arizona and fail prematurely. On

September 27, 2004, the Superior Court for Maricopa County (Katz, J.) denied the plaintiffs'

motion for class certification, granted Delphi's motion for summary judgment, and dismissed the

case. Quinn Emanuel was retained to conduct the appeal. The briefing on appeal has been

completed, and oral argument was scheduled to take place in November 2005 before the action was stayed in light of Delphi's bankruptcy filing.

### (d) Crown City Plating Co. v. Delphi Corporation

This matter involves disputes between Delphi Automotive Systems, LLC and Crown City Plating Co., in which Crown City has threatened to sue Delphi Corporation if Delphi Automotive sues Crown City.

Delphi Automotive Systems, LLC ("Delphi") loaned Crown City $1 million, which is evidenced by a promissory note. Crown City defaulted on its note in January 2004. Crown City claims that it made investments in equipment based on assurances of a long-term relationship by Delphi. Crown City also claims it based its pricing on the assumption of a long-term relationship. Further, it claims that Delphi was late delivering certain visual testing equipment that was needed to produce the parts and that the testing equipment malfunctioned, which Crown City contends increased Crown City's costs of production. Further, Crown City alleged that Delphi and its predecessors breached non-disclosure agreements by giving its proprietary information to Crown City's competitors. Crown City has threatened to sue Delphi Corporation and Does 1 through 50, for $4.5 million for fraud, negligent misrepresentation and breach of the implied covenant of good faith and fair dealing.

The parties have attempted to resolve this dispute. In that regard, they have entered into a Tolling Agreement, which was extended through December 31, 2005, prior to Delphi's bankruptcy filing. Delphi denies Plaintiff's allegations and will defend vigorously the claims against it. The Tolling Agreement may be terminated by either party on thirty days written notice.

(e) <u>Quake Global Inc. v. Orbcomm, LLC, et al.</u>, Case No. CV 051410 (C.D. Cal. Feb. 24, 2005)

Quinn Emanuel is currently representing Delphi in this matter in which Plaintiff alleges that Delphi and other defendants violated federal antitrust laws. Specifically, Plaintiff alleges that Delphi's agreement to manufacture satellite modems for Stellar Satellite Communications, Ltd., constitutes a "de facto exclusive dealing" arrangement in violation of the Sherman Act. Delphi denies the allegations and intends to defend vigorously the claims against it.

7.    In light of certain existing client representations on unrelated matters, the engagement of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") as the Debtors' bankruptcy counsel, the engagement of Shearman & Sterling LLP ("Shearman") as the Debtors' special counsel, the engagement of Togut, Segal & Segal LLP ("Togut") as the Debtors' conflicts counsel, and the engagement of other counsel for the Debtors, Quinn Emanuel will not be responsible for or undertake any representation with respect to (a) advising the Debtors concerning specific contracts and claims of certain of Quinn Emanuel's existing clients and (b) reviewing, interpreting, or commenting on the specific contracts and claims of certain of Quinn Emanuel's existing clients. These existing client relationships, and the scope of the carve-out from Quinn Emanuel's retention, are discussed more fully below.

8.    It is Quinn Emanuel's understanding that the Debtors may request that Quinn Emanuel undertake specific matters beyond the limited scope of the responsibilities set forth above. Should Quinn Emanuel agree in its discretion to undertake any such matter, it is Quinn Emanuel's understanding that the Debtors will seek further order of this Court.

9.    Quinn Emanuel is making efforts, together with the Debtors' other counsel, to ensure that there is no duplication of effort or work between such firms and Quinn Emanuel. It is Quinn Emanuel's intention that the estates should receive the best value possible from the efficient coordination of work among its counsel. Quinn Emanuel believes that its lawyers and the rest of the lawyers retained in these chapter 11 cases have to date delineated clearly, and will continue to delineate clearly, the division of work between them, so as to avoid any duplication of effort and to maximize the efficiencies of the proposed arrangement.

10.    With regard to Patent Holding Company v. Delphi Automotive Systems Corporation, Civil Action No. 99-76013, E.D. Mich., Quinn Emanuel was retained on or about December 20, 2001. The following attorneys were approved to work on this matter at the following rates:  Steve Hansen = $355; Bruce Chapman = $355; Eric Bjorgum = $275; Tigran Guledjian = $225; and Radhika Tandon = $215.

11.    With regard to Whitney v. Delphi Corporation, Quinn Emanuel was retained on or about August 18, 2005. The following attorneys were approved to work on this matter at the following rates:  Randa Osman = $510.00; and Allison Burkholder = $300.00.

12.    With regard to Quake Global Inc. v. Orbcomm, LLC, et al., Case No. CV 051410 (C.D. Cal. Feb. 24, 2005), Quinn Emanuel was retained on or about April 20, 2005. The following attorneys were approved to work on this matter at the following rates:  A. William Urquhart = $600.00; Gerald E. Hawxhurst = $475.00; Kevin Y. Teruya = $355.00; and Heidi Frahm = $290.00.

13.    With regard to Crown City Plating Co. v. Delphi Corporation, Quinn Emanuel was retained on or about August 10, 2004. The following attorney was approved to work on this matter at the following rate:  Jack Hart = $475.00.

14.    With regard to Quinn v. Delphi Automotive Systems Corporation, No. 1
CACV 05-0063, Quinn Emanuel was retained on or about March 14, 2005. The following
attorneys were approved to work on this matter at the following rates:  Shon Morgan = $525.00;
Dan Bromberg  = $525.00; Margret Caruso = $515.00; Kent Bullard = $490.00; Shahin Rezvani
= $385.00; Tim Pennington = $280.00; Tara Gellman = $280.00; and T.J. Chiang = $280.00.

15.    Quinn Emanuel has agreed to accept as compensation for the services
rendered in connection with its representation of the Debtors the rates described in Paragraphs
10-14 of this Affidavit.

16.    Quinn Emanuel acknowledges that all amounts paid to Quinn Emanuel
during these chapter 11 cases are subject to final allowance by this Court.  In the event that any
fees or expenses paid to Quinn Emanuel during these cases are disallowed by this Court, the fees
and expenses will be disgorged by Quinn Emanuel and returned to the Debtors or as otherwise
ordered by this Court.

17.    Quinn Emanuel categorizes its billings by subject matter, in compliance
with the applicable guidelines of the Office of the United States Trustee (the "U.S. Trustee
Guidelines").  Quinn Emanuel acknowledges its compensation in the Debtors' cases is subject to
approval of this Court in accordance with section 330 of the Bankruptcy Code, Bankruptcy Rule
2016, and the U.S. Trustee Guidelines.

18.    Quinn Emanuel has conducted a check for conflicts of interest and other
conflicts and connections with respect to the Debtors' bankruptcy cases.  Quinn Emanuel
maintains a database containing the names of current, former, and potential clients and other
principal parties related to such clients.  I caused Quinn Emanuel to review and analyze the
conflict database to determine whether Quinn Emanuel has any connection with the principal

parties-in-interest in these chapter 11 cases, using information provided to Quinn Emanuel by the Debtors and Skadden, Arps and information contained in the database, including (a) the names of the Debtors' prepetition lenders, (b) the names of significant creditors of the Debtors, and (c) the names of firms that the Debtors intend to or may employ during their chapter 11 cases.

19.    Based upon this research, I have determined that Quinn Emanuel has in the past represented, currently represents, and will likely in the future represent certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or these chapter 11 cases. I do not believe that the foregoing raises any actual or potential conflicts of interest of Quinn Emanuel relating to the representation of the Debtors in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution.

20.    It is my intention that if Quinn Emanuel becomes aware of any other connections of which it presently is unaware, Quinn Emanuel will bring them to the attention of this Court and the U.S. Trustee.

Dated:    New York, NY
          February 6, 2006

By: _____
    Gerald E. Hawxhurst


Sworn to before me
this 6th day of February, 2006

_____
Notary Public

```
LORRAINE ROBLES RIVERA
Commission # 1491869
Notary Public - California
Los Angeles County
My Comm. Expires May 25, 2008
```

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| - - - - - - - - - - - - - - - - - - - - - - - - x | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |
| - - - - - - - - - - - - - - - - - - - - - - - - x | |

ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND RETENTION OF QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP AS SPECIAL LITIGATION COUNSEL TO DEBTORS

("QUINN EMANUEL RETENTION ORDER")

Upon the application, February 7, 2006 (the "Application"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§ 327(e) and 1107(b) and

Fed. R. Bankr. P. 2014 authorizing the employment and retention of Quinn Emanuel Urquhart Oliver &

Hedges, LLP ("Quinn Emanuel") as special litigation counsel to the Debtors; and upon the Affidavit of

Gerald E. Hawxhurst, sworn to February 6, 2006, in support of the Application (the "Hawxhurst

Affidavit"); and this Court being satisfied with the representations made in the Application and the

Hawxhurst Affidavit that Quinn Emanuel does not represent or hold any interest adverse to any of the

Debtors' estates or the Debtors with respect to the matters on which Quinn Emanuel is to be employed,

and that Quinn Emanuel's employment is necessary and would be in the best interests of each of the

Debtors' estates; and it appearing that proper and adequate notice has been given and that no other or

further notice is necessary; and upon the record herein; and after due deliberation thereon; and good

and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The Application is GRANTED.

2.      The Debtors' employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP as

their special litigation counsel, pursuant to the Application, is approved under sections 327(e) and

1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") with approval of such employment being effective as of the Petition Date, October 8, 2005.

3.    Quinn Emanuel Urquhart Oliver & Hedges, LLP shall be compensated in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), guidelines established by the Office of the United States Trustee, and further orders of this Court.

4.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Final Order.

5.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Application.


Date: New York, New York
    March 9, 2006                /s/Robert D. Drain
                                  Robert D. Drain
                                  U. S. Bankruptcy Judge