Hearing Date & Time: October 25, 2007 at 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :
    In re                           :       Chapter 11
                                         :
DELPHI CORPORATION, et al.,      :       Case No. 05-44481 (RDD)
                                       :
                Debtors.      :       (Jointly Administered)
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' REPLY IN SUPPORT OF MOTION FOR ORDER APPROVING
MULTIDISTRICT LITIGATION AND INSURANCE SETTLEMENTS

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Reply In Support Of Motion For Order Approving Multidistrict Litigation And Insurance Settlements (the "Reply"). Capitalized terms used and not otherwise defined in this Reply have the meanings ascribed to them in the Debtors' Motion For Order Approving Multidistrict Litigation And Insurance Settlements (Docket No. 9296), dated September 7, 2007 (the "Motion").

Introduction

1. In the Motion, the Debtors requested that this Court approve a comprehensive settlement of the MDL as to Delphi and other defendants and grant related relief concerning the settlement. After the Debtors filed the Motion, they consulted with the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Securities Lead Plaintiffs, and the ERISA Named Plaintiffs regarding the Motion and the manner in which the Debtors will seek this Court's approval of the settlement. Those discussions resulted in the Debtors' decision to proceed under a two-step bifurcated approach.

2. The first step involves obtaining this Court's approval on October 25, 2007 for only a subset of the relief requested in the Motion, with the relief limited to the aspects of the settlement related to solicitation and voting concerning the Debtors' plan of reorganization (as well as relief from the automatic stay with respect to certain documents produced to the Securities Lead Plaintiffs). The specific relief requested by the Debtors now in connection with this first step is set forth in the Debtors' form of Order Preliminarily Approving Multidistrict Litigation And Insurance Settlement (the "Preliminary Order"), a copy of which is attached to

2

this Reply as <u>Exhibit A</u>, and is summarized in paragraphs 9 through 18 below.[1]  Similar to the bifurcated approval mechanism being utilized by the United States District Court for the Eastern District of Michigan, which preliminarily approved the Securities Stipulation and the ERISA Stipulation on September 5, 2007, the Debtors would anticipate that this Court would preliminarily approve this Motion at this stage only if the Court determined that (a) the relief sought in the Preliminary Order should be granted at this time and (b) the relief sought in the Motion was capable of final approval at the confirmation hearing on the Debtors' plan of reorganization (subject of course to the Court's consideration of any objections filed by the Potential Objectors whose rights are fully preserved under the Preliminary Order).  At the second step, the Debtors will seek final approval of the settlement – <u>i.e.</u>, approval of the aspects of the Motion and settlement not addressed in the Preliminary Order – as part of the plan confirmation process.

        3.      The sole objection to the relief provided in the Preliminary Order is a limited objection (the "Limited Objection") filed by a committee of bondholders represented by Goodwin Procter LLP presently consisting of Castlerigg Master Investments Ltd., CR Intrinsic Investors, LLC, Davidson Kempner Capital Management LLC, Elliot Associates, L.P., SPCP Group, LLC, and their respective affiliates (the "Ad Hoc Bondholder Committee").[2]  The

---

[1] A comparison showing the differences between the Order and the form of order submitted with the Motion is attached to this Reply as <u>Exhibit B</u>.

[2] <u>See</u> Limited Objection Of Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC; Davidson Kempner Capital Management LLC; Elliot Associates, L.P.; And SPCP Group, LLC To Order Preliminarily Approving Multidistrict Litigation And Insurance Settlement (Docket No. 10689), dated October 19, 2007.  The Ad Hoc Bondholder Committee also filed an Objection By Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC; Davidson Kempner Capital Management LLC; Elliot Associates, L.P.; And SPCP Group, LLC To Motion By The Debtors For Order Approving Multidistrict Litigation And Insurance Settlements (Docket No. 10687), dated October 19, 2007, that addresses matters outside the scope of the relief requested in the Order.  The Debtors reserve their rights to respond to that objection at the appropriate time as part of the plan confirmation process.

arguments presented in the Limited Objection do not go to the substance of the Preliminary Order  Moreover, these arguments provide no basis for withholding the relief requested at the preliminary approval hearing particularly because the Preliminary Order contains clear language limiting its impact and preserving the Ad Hoc Bondholder Committee's rights to object to final approval of the settlement and the confirmation of the Debtors' plan of reorganization.  It is noteworthy that none of the other Potential Objectors (<u>i.e.</u>, the Statutory Committees, United States Department of Labor, Wilmington Trust Company, as indenture trustee, or the Ad Hoc Committee of Trade Creditors (the "Trade Committee")) share the Ad Hoc Bondholder Committee's views and are satisfied with the Preliminary Order in the form submitted to the Court for consideration.

        4.      The Ad Hoc Bondholder Committee's other argument is that the Preliminary Order should be entered only on an interim and interlocutory basis.  This argument is unfounded because the Debtors need to move forward with their solicitation and voting procedures with confidence that those procedures will not be subject to post-solicitation attack.  To accomplish this objective, the Preliminary Order must be final with respect to the limited relief it provides.

        5.      The Debtors' proposal for soliciting the Securities Voting Class (as defined below) and the ERISA Voting Class (as defined below) illustrates the importance of obtaining this relief now.  Under the Securities Stipulation and the ERISA Stipulation, and as provided in the Preliminary Order, the Securities Lead Plaintiffs and the ERISA Named Plaintiffs will vote in a representative capacity on behalf of their respective classes, saving the Debtors' estates the significant time and expense involved with soliciting and tabulating the votes

4

of each individual class member.[3] If the Debtors wait until the plan confirmation stage to request this Court's approval of these solicitation and voting procedures, and the request is denied, the added time needed to solicit individual class members would delay the confirmation process and lead to additional expenses and complications with respect to the Debtors' efforts to emerge from chapter 11.

## Background

6. The Debtors filed the Motion on September 7, 2007. The hearing on the Motion, originally scheduled for September 27, 2007, has been adjourned twice, first to October 3, 2007 and then to October 25, 2007.

7. The deadline for objections to the Motion was September 20, 2007. No objections were filed by that date. The objection deadline was, however, extended for the following parties: (i) the Official Committee of Unsecured Creditors (the "Creditors' Committee"), (ii) the United States Department of Labor, (iii) Wilmington Trust Company, as indenture trustee, (iv) the Trade Committee, and (v) the Ad Hoc Bondholder Committee.[4] In

---

[3] To the best of the Debtors' knowledge, they provided notice of the Motion to all potential class members who filed proofs of claim related to the MDL. None of the potential class members objected to the Motion's request that the Securities Lead Plaintiffs and the ERISA Named Plaintiffs vote on their behalf, or to any other portion of the Motion. Furthermore, based on the Debtors' identification of potential class members who have potentially preserved their right to a recovery by filing timely proofs of claim related to the MDL, the Debtors believe that (with the exception of a proof of claim filed by a plan investor) all such proofs of claim have been expunged, leaving the MDL settlement as the only potential source of recovery for potential class members. To the extent that potential class members have filed proofs of claim unrelated to the MDL, the Order does not affect their proofs of claim.

[4] The Debtors firmly believe that the group of bondholders commonly represented by Goodwin Proctor LLP bondholders are part of an "entity or committee representing more than one creditor or equity security holder" within the meaning of Fed. R. Bankr. P. 2019(a), and the bondholders have not complied with the disclosure requirements of that rule. Neither Goodwin Proctor LLP nor their group of clients can be allowed to circumvent the disclosure requirements imposed by the Court or by other courts in this judicial district based on semantics, gerrymandering the number of bondholders in their group who participate in any particular objection, or otherwise. Prior to the Court addressing this Motion or any other matter in these chapter 11 cases in which the Ad Hoc Bondholder Committee chooses to involve itself, the Ad Hoc Bondholder Committee's membership and its economic motivations should be transparent to the Court and to all parties in interest. That being said,

*(cont'd)*

5

addition, upon this Court's entry of the Preliminary Order, the Debtors have agreed that the Official Committee of Equity Security Holders will be deemed a Potential Objector for all purposes under the Preliminary Order.

8.   On October 17, 2007, after consultation with stakeholders, including the Creditors' Committee, the Securities Lead Plaintiffs, and the ERISA Named Plaintiffs, the Debtors notified the Potential Objectors that a two-step bifurcated process would be pursued for obtaining this Court's approval of the settlement. The Debtors circulated a draft of the Preliminary Order to the Potential Objectors, the Securities Lead Plaintiffs, and the ERISA Named Plaintiffs on October 18, 2007. The Debtors later received comments from and/or conducted discussions with the Statutory Committees, the Trade Committee, the Ad Hoc Bondholder Committee, the Securities Lead Plaintiffs and the ERISA Named Plaintiffs regarding the terms and conditions of the draft. The Debtors revised the draft as a result of those discussions, including modifications making clear that the Preliminary Order is limited in scope and will not affect the Potential Objectors' ability to object later to the aspects of the settlement not addressed in the Preliminary Order. The paragraphs that follow summarize the Preliminary Order's principal terms.[5]

9.   <u>Limited Solicitation And Voting Relief</u>.  The relief the Debtors are seeking in this first step of the two-step bifurcated settlement approval process is limited to matters that will allow the Debtors to move forward with solicitation and voting concerning the Debtors plan of reorganization, and it is further limited to solicitation and voting concerning a

---

*(cont'd from previous page)*
    the Debtors have chosen not to seek to have the Ad Hoc Bondholder Committee's objections struck at this time but instead reserve all of their rights and intend to raise this matter by separate motion. Accordingly, this issue need not be considered by the Court in connection with the hearing on the Preliminary Order.

[5]    The summary of the Order set forth in this Reply is qualified entirely by and is subject to the actual terms and conditions of the Order.

6

plan that incorporates the settlement. The Preliminary Order contains a number of provisions specifically addressing these limitations.

(a) <u>No Affect On Certain Objections By Potential Objectors</u>. The Preliminary Order preserves the Potential Objectors' rights to object to the settlement with respect to any mater other than the relief granted in the Preliminary Order, and provides that nothing in the Preliminary Order will prejudice any Potential Objector with respect to any such objection, including any objection to the classification of any claim or interest granted under the Preliminary Order.[6] (Preliminary Order ¶ 13.) To reinforce this point, the Preliminary Order provides that its findings of fact and conclusions of law are limited to the relief granted in the Preliminary Order, and will have no preclusive effect on potential objections brought by Potential Objectors, except as to the relief granted in the Preliminary Order. (<u>Id.</u>) With respect to parties other than the Potential Objectors, the Preliminary Order bars them from objecting to the settlement because they did not file an objection before the deadline of September 20, 2007 and did not request or obtain an extension of that deadline. (<u>Id.</u>)

(b) <u>Limited To Plan Incorporating Settlement</u>. To ensure that the Preliminary Order is limited to matters concerning a plan that incorporates the settlement, the Preliminary Order provides that it is not intended to affect, and cannot be construed as affecting, voting or any other rights or obligations concerning any plan that does not incorporate the settlements reflected in the Securities Stipulation, the ERISA Stipulation, and the Insurance Stipulation. (<u>Id.</u> ¶ 11.)

---

[6] Under the Order, the deadline for any such objection is the deadline established by the Court for objecting to the confirmation of the Debtors' plan of reorganization. (<u>Id.</u>)

7

(c) <u>Effect Of Settlement Termination</u>. In the event that, prior to the confirmation hearing with respect to the Plan,[7] any party to the Securities Stipulation or the ERISA Stipulation terminates the Securities Stipulation or the ERISA Stipulation, as appropriate, pursuant to their respective terms, or the Securities Stipulation or the ERISA Stipulation is otherwise terminated pursuant to applicable law as determined by a court of competent jurisdiction, then any vote cast with respect to the Securities Allowed Voting Claim/Interest or the ERISA Allowed Voting Interest will be rendered null and void. (<u>Id.</u> ¶ 12.)

10. <u>Class Certification For Voting Purposes</u>. The Preliminary Order provides for the certification of two classes solely for the purpose of voting concerning the Plan, and for no other purpose. (<u>Id.</u> ¶¶ 3, 7.) The classes are the same as the classes preliminarily certified by the District Court in its orders dated September 5, 2007, and are defined as follows:

(a) <u>Securities Voting Class</u>. All persons and entities who purchased or otherwise acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II, during the period of time between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement (the "Securities Voting Class"). Excluded from the Securities Voting Class are (i) any Defendant, (ii) any member of the family of any of the Delphi Officer and Director Defendants, (iii) any entity in which any

---

[7] Under the Order, "Plan" means the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, filed by the Debtors on September 6, 2007, including any amendments thereto, and/or any plan of reorganization that incorporates the settlements reflected in the Securities Stipulation, the ERISA Stipulation, and the Insurance Stipulation. (<u>Id.</u>)

8

Defendant has a controlling interest, (iv) any officer, director, or partner of any Defendant or their subsidiary or affiliate, or (v) the legal representatives, heirs, successors, and assigns of any such excluded party, and any putative members of the Securities Voting Class who exclude themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice.[8]  (Id. ¶ 3.)

        (b)        ERISA Voting Class.  All persons (a) who were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28, 1999 and November 1, 2005 or (ii) participants in or beneficiaries of the Delphi Mechatronic Systems Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005 and (b) whose accounts included investments in the Delphi and/or GM Stock Funds (the "ERISA Voting Class"). Excluded from the ERISA Voting Class are (i) the Defendants, (ii) members of the immediate families of each of the Defendants, (iii) any entity in which any Defendant has a controlling interest, (iv) any parent, subsidiary, or affiliate of a Defendant, (v) any person who was an officer or director of a Defendant or of any of Defendants' subsidiaries or affiliates during the period of time between May 28, 1999 and November 1, 2005, inclusive, and (vi) the legal representatives, heirs, predecessors, successors, or assigns of any such excluded person or entity.[9]  (Id. ¶ 7.)

---

[8]    Capitalized terms used and not otherwise defined in this subparagraph have the meanings ascribed to them in the Securities Stipulation.

[9]    Capitalized terms used and not otherwise defined in this subparagraph have the meanings ascribed to them in the ERISA Stipulation.

11.     <u>Securities Allowed Voting Claim/Interest</u>.  The Preliminary Order grants the Securities Lead Plaintiffs, as representatives of the Securities Voting Class, an allowed claim and/or interest in these cases in the aggregate face amount of $204 million, with no additional provision to be made for accrued interest, solely for the purpose of voting concerning the Plan, and for no other purpose (the "Securities Allowed Voting Claim/Interest").  Under the Preliminary Order, the Securities Allowed Claim/Interest will be classified under the Plan in a separate class, and may be classified in separate debt and equity subclasses in a manner consistent with the Securities Stipulation as approved by the District Court.  (<u>Id.</u> ¶ 4.)

12.     <u>Voting By Securities Lead Plaintiffs</u>.  With respect to voting concerning the Plan, the Preliminary Order authorizes the Securities Lead Plaintiffs, as representatives of the Securities Voting Class, to cast any and all votes arising from the Securities Allowed Voting Claim/Interest on behalf of the Securities Voting Class.  The Preliminary Order also directs the Securities Lead Plaintiffs, as representatives of the Securities Voting Class, to cast any and all votes under their control, including any and all votes under their control by virtue of the Securities Allowed Voting Claim/Interest, in favor and in acceptance of the Plan, provided that the Plan is consistent with and incorporates the proposed settlements set forth in and identified by the Motion.  (<u>Id.</u> ¶ 6.)

13.     <u>Other Solicitation And Voting Matters Concerning Securities Claims</u>.  Upon this Court's entry of the Preliminary Order:

(a)     the Securities Lead Plaintiffs will withdraw, without prejudice, that certain proof of claim in these cases bearing number 14092 and dated July 31, 2006, and all other proofs of claim in these cases filed by the Securities Lead Plaintiffs on behalf of the Securities Voting Class (<u>id.</u> ¶ 5(i));

10

(b)     any individual proof of claim that was filed in these cases by the Securities Lead Plaintiffs or any other named plaintiff in the Delphi Securities Action, or on their behalf, in any capacity other than as representatives of the Securities Voting Class, and that relates to the allegations in the Delphi Securities Action, will be deemed estimated in the amount of $1 solely for the purpose of voting concerning the Plan, and for no other purpose, and will be classified pursuant to the Plan in the separate debt or equity classes applicable to the Securities Allowed Claim/Interest according to the type of security or securities on which such proof of claim is based, as disclosed by the Securities Lead Plaintiffs in prior filings in the Delphi Securities Action, it being understood that such proofs of claim will be entitled to vote in more than one class as appropriate (id. ¶ 5(ii)); and

(c)     all proofs of claim filed in these cases by the Underwriter Defendants concerning any claims to indemnification, contribution, or other reimbursement from Delphi on account of or relating to the Delphi Securities Action will be deemed contingent and estimated in the amount of $0 solely for the purpose of voting concerning the Plan, and for no other purpose (id. ¶ 5(iii)).[10]

14.     <u>ERISA Allowed Voting Interest</u>.  The Preliminary Order grants the ERISA Named Plaintiffs, as representatives of the ERISA Voting Class, an allowed interest in these cases in the face amount of $24.5 million, with no additional provision to be made for accrued interest, solely for the purpose of voting concerning the Plan, and for no other purpose

---

[10] The Debtors have conferred with the Underwriter Defendants, and the Underwriter Defendants do not object to this Court's entry of the Preliminary Order.

(the "ERISA Allowed Voting Interest"). The ERISA Allowed Voting Interest will be classified under the Plan in a separate equity class. (Id. ¶ 8.)

15. <u>Voting By ERISA Lead Plaintiffs</u>. With respect to voting concerning the Plan, the Preliminary Order authorizes the ERISA Named Plaintiffs, as representatives of the ERISA Voting Class, to cast any and all votes arising from the ERISA Allowed Voting Interest on behalf of the ERISA Voting Class. The Preliminary Order also directs the ERISA Named Plaintiffs, as representatives of the ERISA Voting Class, to cast any and all votes under their control, including any and all votes under their control by virtue of the ERISA Allowed Voting Interest, in favor and in acceptance of the Plan, provided that the Plan is consistent with and incorporates the proposed settlements set forth in and identified by the Motion. (Id. ¶ 10.)

16. <u>Other Solicitation And Voting Matters Concerning ERISA Claims</u>. Upon this Court's entry of the Preliminary Order:

(a) the ERISA Named Plaintiffs will withdraw, without prejudice, any proof of claim that they may assert they filed in these cases on behalf of the ERISA Voting Class (id. ¶ 9(i)); and

(b) any individual proof of claim that was filed in these cases by the ERISA Named Plaintiffs or on their behalf in any capacity other than as representatives of the ERISA Voting Class, and that relates to the allegations asserted in the Delphi ERISA Action, will be deemed estimated in the amount of $1 solely for the purpose of voting concerning the Plan, and for no other purpose, and will be classified pursuant to the Plan in the separate equity class applicable to the ERISA Allowed Voting Interest (id. ¶ 9(ii)).

12

17. <u>Lifting Of Automatic Stay</u>.  The Preliminary Order lifts the automatic stay with respect to documents provided by the Debtors to the Securities Lead Plaintiffs under this Court's Agreed Order, as contemplated by the Securities Stipulation and described in the Motion. (<u>Id.</u> ¶ 14.)  In the event that, prior to the confirmation hearing with respect to the Plan, any party to the Securities Stipulation or the ERISA Stipulation terminates the Securities Stipulation or the ERISA Stipulation, as appropriate, pursuant to their respective terms, or the Securities Stipulation or the ERISA Stipulation is otherwise terminated pursuant to applicable law as determined by a court of competent jurisdiction, then this relief will be vacated in favor of the provisions of the Agreed Order from that date forward.  (<u>Id.</u> ¶ 12.)

18. <u>No Modification Of Securities Stipulation Or ERISA Stipulation</u>.  At the request of the Securities Lead Plaintiffs, the Debtors included in the Preliminary Order a provision stating that, except as to the bifurcation of this Court's approval of the settlement, nothing in the Preliminary Order affects or modifies the provisions of the Securities Stipulation or the ERISA Stipulation.  (<u>Id.</u> ¶ 15.)

<u>Reply To The Ad Hoc Bondholder Committee's Limited Objection</u>

19. The first argument raised by the Ad Hoc Bondholder Committee is that the Preliminary Order "seeks relief beyond the scope of what the Debtors requested in the . . . Motion including, among other things, temporary allowance of . . . claims for voting purposes." (Limited Objection ¶ 5.)  In fact, however, the relief set forth in the Preliminary Order is a subset of the relief requested in the Motion and the form of order that was attached to the Motion as an exhibit. With respect to the example cited by the Ad Hoc Bondholder Committee – the allowance of the Securities Allowed Voting Claim/Interest and the ERISA Allowed Voting Interest for voting purposes – the original form of order allowed those claims and interests for <u>all</u>

13

purposes in these cases.  (See Motion Ex. F ¶¶ 7, 13.)  The current request that they be allowed for the limited purpose of voting concerning the Debtors' Plan falls squarely within the scope of the relief sought in the Motion.

20. The Ad Hoc Bondholder Committee's second argument is that this Court should not grant any relief "that could bootstrap any arguments that [the] Motion should be approved on a final basis."  (Limited Objection ¶ 6.)  According to the Ad Hoc Bondholder Committee, the Preliminary Order should not "be binding on or have any preclusive effect on . . . or prejudice" the Ad Hoc Bondholder Committee from prosecuting "any objections at the final hearing on the . . . Motion" or "any objections to any other relief sought in these cases," including any objection to the confirmation of any plan of reorganization.  (Id.)  This argument is defeated by the language of the Preliminary Order, which preserves the Ad Hoc Bondholder Committee's (and the other Potential Objectors') rights to challenge any relief sought by the Debtors other than the relief granted in the Preliminary Order.  This would include, of course, any objection to the final approval of the MDL settlement as part of the plan confirmation process.  The following provisions of paragraph 13 of the Preliminary Order speak directly to this point:

> With respect to the Potential Objectors, the deadline for objecting to the settlements . . . with respect to any matter other than the relief granted in this Order shall be the deadline established by the Court for objecting to the confirmation of the Debtors' plan of reorganization, and <u>nothing in this Order shall prejudice any Potential Objector with respect to any such objection, including any objection to the classification of any claim or interest granted under this Order</u>.  Notwithstanding anything else in this Order, the findings of fact and conclusions of law set forth herein are limited to the relief granted in this Order, and <u>shall have no preclusive effect on potential objections brought by Potential Objectors, except as to the relief granted in this Order</u>.

(Preliminary Order ¶ 13 (emphasis added).)

21.     The Ad Hoc Bondholder Committee's next argument is that the Preliminary Order should provide that it will be "null and void and of no effect whatsoever <u>ab initio</u>" if for any reason the Debtors do not obtain final approval of the settlement. (Limited Objection ¶ 7.)  This language assumes that the Debtors are limited to one opportunity to obtain final approval of the settlement as part of the plan confirmation process.  It is possible, however, that the Debtors could seek this Court's final approval of the settlement more than once.  The solicitation and voting relief provided in the Preliminary Order should apply in that situation, but the Ad Hoc Bondholder Committee's proposed language would require the Debtors to make a new request and engage in successive rounds of litigation concerning the same relief.  To the extent that the Ad Hoc Bondholder Committee are concerned that the Preliminary Order will apply in the context of a plan that does not incorporate the settlement, that situation is explicitly addressed by paragraph 11 of the Preliminary Order, which provides:  "Nothing in this Order is intended to affect, and nothing in this Order shall be construed as affecting, voting or any other rights or obligations concerning any plan of reorganization that does not incorporate the settlements reflected in the Securities Stipulation, the ERISA Stipulation, and the Insurance Stipulation."  (Preliminary Order ¶ 11.)

22.     The final argument presented by the Ad Hoc Bondholder Committee is that the Preliminary Order should be granted "solely on an interim, interlocutory basis," and should "explicitly state that it has no effect whatsoever on the Debtors' burden of proof" regarding the Motion. (Limited Objection ¶ 8.)  With respect to the first point, the Debtors' objective in seeking the limited relief provided in the Preliminary Order is to achieve certainty as to MDL-related solicitation and voting procedures <u>before</u> those procedures are implemented.  Relief that is interim or interlocutory in nature would defeat this purpose, and would give rise to

15

the risk of a costly and time-consuming re-solicitation that could delay the Debtors' emergence from chapter 11. Moreover, the Ad Hoc Bondholder Committee have offered no reason why a final determination of these issues should be delayed to a later stage in these cases. As for the Ad Hoc Bondholder Committee's concern regarding the burden of proof, no provision of the Preliminary Order could reasonably be read as shifting or modifying the Debtors' burden with respect to seeking final approval of the settlement. Accordingly, the language requested by the Ad Hoc Bondholder Committee is unnecessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court overrule the Limited Objection, enter an order in substantially the same form as the Preliminary Order attached to this Reply as Exhibit A, and grant the Debtors such other and further relief as is just.

Dated: New York, New York
       October 24, 2007

                      SKADDEN, ARPS, SLATE, MEAGHER
                        &FLOM LLP

                      By: /s/ John Wm. Butler, Jr.
                          John Wm. Butler, Jr. (JB 4711)
                          John K. Lyons (JL 4951)
                          Albert L. Hogan, III (AH 8807)
                          Ron E. Meisler (RM 3026)
                      333 West Wacker Drive, Suite 2100
                      Chicago, Illinois 60606
                      (312) 407-0700

                              - and -

                      By: /s/ Kayalyn A. Marafioti
                          Kayalyn A. Marafioti (KM 9632)
                          Thomas J. Matz (TM 5986)
                      Four Times Square
                      New York, New York 10036
                      (212) 735-3000

                      Attorneys for Delphi Corporation, et al.,
                       Debtors and Debtors-in-Possession