# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :
     In re                   :    Chapter 11
                  :
DELPHI CORPORATION, et al.,     :    Case No. 05-44481 (RDD)
                  :
           Debtors.    :    (Jointly Administered)
                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER PRELIMINARILY APPROVING
<u>MULTIDISTRICT LITIGATION AND INSURANCE SETTLEMENT</u>

("PRELIMINARY MDL SETTLEMENT APPROVAL ORDER")

Upon the Motion For Order Approving Multidistrict Litigation And Insurance

Settlements, dated September 7, 2007 (Docket No. 9296) (the "Motion"), by Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in these

cases (collectively, the "Debtors"); and the Court having reviewed the Motion and having heard

the statements of counsel and the evidence presented regarding the Motion at a hearing before

the Court on October 25, 2007 (the "Hearing"); and due and appropriate notice of the Motion

having been given; and for the reasons stated by the Court on the record at the Hearing; now,

therefore,

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

     A.     The Debtors commenced these cases on October 8 and 14, 2005.

     B.     On December 12, 2005, the Judicial Panel on Multidistrict Litigation

issued an order concentrating in the United States District Court for the Eastern District of

Michigan (the "District Court") a number of federal actions against Delphi and other defendants

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

under the caption In re:  Delphi Corp. Securities, Derivative and "ERISA" Litigation, Master

Case No. 05-md-1725 (GER) (the "MDL").  The MDL includes putative class actions under the

federal securities laws, putative class actions under the Employee Retirement Income Security

Act of 1974 ("ERISA"), and derivative actions.

        C.        Under the Court's Agreed Order Regarding Interim Disposition With

Respect To Lead Plaintiffs' Motion For Limited Modification Of Automatic Stay, dated April 16,

2007 (Docket No. 7718) (the "Agreed Order"), the Debtors produced certain documents to the

lead plaintiffs in the securities portion of the MDL (the "Securities Lead Plaintiffs").

        D.        The Debtors provided similar material to the named plaintiffs in the

ERISA portion of the MDL (the "ERISA Named Plaintiffs") in accordance with the Court's

Agreed Order Approving Agreement To Modify Automatic Stay To Provide Certain Third-Party

Discovery Materials To ERISA Plaintiffs, dated May 31, 2007 (Docket No. 8118).

        E.        On August 31, 2007, after several months of negotiations involving Delphi,

the Securities Lead Plaintiffs, the ERISA Named Plaintiffs, certain other defendants, certain

insurance carriers, and a special master appointed for settlement purposes by the District Court,

the parties executed the following agreements concerning the MDL:

- a certain "Stipulation and Agreement of Settlement With Certain Defendants" among the Securities Lead Plaintiffs, on behalf of themselves and a putative class; Delphi, Delphi Trust I, Delphi Trust II; J.T. Battenberg III, John. G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan. S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (the "Securities Officer and Director Defendants"); and Banc of America Securities LLC, Barclays Capital Inc., Bear Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (the "Underwriter Defendants"), a copy of which is attached to this Order as Exhibit A (the "Securities Stipulation"), and an accompanying "Supplemental Agreement"

among the same parties that includes confidential information concerning the settlement contemplated by the Securities Stipulation;

- a certain "Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions" among the ERISA Named Plaintiffs, on behalf of themselves and a putative class; Delphi; ASEC Manufacturing General Partnership ("ASEC Manufacturing"); Delphi Mechatronic Systems, Inc. ("Delphi Mechatronic"); the Executive Committee of Delphi's Board of Directors and its members (the "Executive Committee"); Delphi's Investment Policy Committee and its members (the "Investment Policy Committee"); and Mr. Battenberg, Mr. Brust, Mr. Dawes, Ms. McLaughlin, and Mr. Opie (the "ERISA Officer and Director Defendants"), a copy of which is attached to this Order as Exhibit B (the "ERISA Stipulation"); and

- a certain "Stipulation and Agreement of Insurance Settlement" among Delphi; Mr. Battenberg, Milan Belans, Mr. Blahnik, Mr. Brust, Mr. Colbert, Mr. Dawes, Mr. Farr, Mr. Free, Mr. Gottschalk, Peter H. Janak, Judith Kudla, Ms. McLaughlin, Mr. Bernardes, Ms. Niekamp, Mr. Opie, Mr. Penske, Catherine Rozanski, Mr. Runkle, Mr. Sheehan, and Ms. Sueltz (the "Insurance Officers and Directors"); and National Union Fire Insurance Company of Pittsburgh, Pa., Zurich American Insurance Company, Federal Insurance Company, Twin City Fire Insurance Company, American Casualty Company of Reading PA, Arch Insurance Company, St. Paul Mercury Insurance Company, Great American Insurance Company, Allied World Assurance Company LTD, Endurance Specialty Insurance Ltd., and Starr Excess International (the "Insurers"), a copy of which is attached to this Order as Exhibit C (the "Insurance Stipulation").

F.     At a meeting on August 7, 2007, Delphi's Board of Directors (the "Board") authorized Delphi to enter into the settlements that are now memorialized in the Securities Stipulation, the ERISA Stipulation, and the Insurance Stipulation.  Also at that meeting, a quorum of the Board comprising Board members not named as defendants in the Delphi Securities Action (as defined in the Securities Stipulation) resolved to release any and all affirmative claims by any of the Debtors against, among others, all current and former Delphi officers and directors arising from any alleged violation of the federal securities laws during the period of time between March 7, 2000 and March 3, 2005, inclusive, while reserving the right to assert such claims as a defense or setoff to claims asserted by such officers and directors (the "Release").

3

G.      On September 5, 2007, the District Court entered an Order Of Preliminary

Approval And For Notice And Hearing concerning the Delphi Securities Action which, among

other things, preliminarily approved the settlement contemplated by the Securities Stipulation,

preliminarily certified the Securities Voting Class (as defined below), and scheduled a fairness

hearing on the settlement contemplated by the Securities Stipulation for November 13, 2007.  A

copy of the District Court's order concerning the Delphi Securities Action is attached to this

Order as Exhibit D.

H.      On the same day, the District Court entered an Order Preliminarily

Approving Settlement, Preliminarily Certifying A Settlement Class, Approving Forms And

Methods Of Notice, And Setting A Fairness Hearing concerning the Delphi ERISA Action (as

defined in the ERISA Stipulation) which, among other things, preliminarily approved the

settlement contemplated by the ERISA Stipulation, preliminarily certified the ERISA Voting

Class (as defined below), and scheduled a fairness hearing on the settlement contemplated by the

ERISA Stipulation for November 13, 2007.  A copy of the District Court's order concerning the

Delphi ERISA Action is attached to this Order as Exhibit E.

I.      The deadline for objections to the Motion was September 20, 2007 (the

"Objection Deadline").  No objections to the Motion were filed on or before the Objection

Deadline; however, the following parties were granted additional time to evaluate and object to

the Motion:  (i) the Official Committee of Unsecured Creditors, (ii) the United States

Department of Labor, (iii) Wilmington Trust Company as indenture trustee, (iv) the Ad Hoc

Committee of Trade Creditors, and (v) Davidson Kempner Capital Management LLC, SPCP

Group, LLC, Castlerigg Master Investments Ltd., Elliott Associates, L.P., and CR Intrinsic

Investors, LLC[2] (collectively, the "Potential Objectors").  In addition, at the hearing held on

October 3, 2007, the Debtors and the Official Committee of Equity Security Holders (the "Equity

Committee") placed on the record a mutual reservation of rights concerning whether the Equity

Committee is also entitled to object to the Motion.  In consideration of the Equity Committee's

support of the entry of this Order by the Court, the Debtors have agreed that the Equity

Committee shall be deemed a Potential Objector for all purposes under this Order.

       J.       In their Reply In Support Of Motion For Order Approving Multidistrict

Litigation And Insurance Settlements, dated October 24, 2007 (Docket No. _____) (the

"Omnibus Reply"), the Debtors modified the scope of the relief requested in the Motion to be

granted at this time, limiting it to the relief set forth in this Order.  The Debtors further stated that,

with the concurrence of the Securities Lead Plaintiffs and the ERISA Named Plaintiffs, the

Debtors will seek final approval of the settlements contemplated by the Securities Stipulation,

the ERISA Stipulation, and the Insurance Stipulation as part of the Debtors' plan of

reorganization and in the confirmation order to be considered by this Court with respect thereto.

       K.       Certification of the Securities Voting Class (as defined below) and the

ERISA Voting Class (as defined below) for the sole purpose of voting concerning the Joint Plan

Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession, filed by the Debtors on September 6, 2007, including any amendments thereto,

and/or any plan of reorganization that incorporates the settlements reflected in the Securities

Stipulation, the ERISA Stipulation, and the Insurance Stipulation (the "Plan"), and for no other

---

[2]    The Debtors assert that the bondholders are acting as a group or ad hoc committee and in any event are
governed by Fed. R. Bankr. P. 2019 and are potentially subject to other relief available to the Debtors under
applicable law.  The foregoing bondholders assert that they are being represented individually by common
counsel which has fully complied with Fed. R. Bankr. P. 2019 and otherwise dispute the Debtors' foregoing
assertions.  This matter is not being determined by the Court in this Order and the rights of all parties with
respect thereto are expressly reserved.

purpose, is (i) appropriate under Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, and (ii) provides

benefits that are consistent with the goals of chapter 11 of the Bankruptcy Code.

        L.      Under the circumstances present here, it is appropriate to (i) authorize the

Securities Lead Plaintiffs to vote on the Plan on behalf of the Securities Voting Class (as defined

below), and, provided that the Plan is consistent with and incorporates the settlement

contemplated by the Securities Stipulation, direct the Securities Lead Plaintiffs to cast all votes

under their control in favor and in acceptance of the Plan, and (ii) authorize the ERISA Named

Plaintiffs to vote on the Plan on behalf of the ERISA Voting Class, and, provided that the Plan is

consistent with and incorporates the settlement contemplated by the ERISA Stipulation, direct

the ERISA Named Plaintiffs to cast all votes under their control in favor and in acceptance of the

Plan.

        M.      The Debtors have shown cause for lifting the automatic stay with respect

to the documents produced by the Debtors to the Securities Lead Plaintiffs under the Agreed

Order.

        N.      Proper, timely, adequate, and sufficient notice of the Motion has been

provided, such notice was good, sufficient, and appropriate under the particular circumstances,

and no other or further notice of the Motion is or shall be required.

        O.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157

and 1334.  The Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases

and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

        P.      The relief granted in this Order is in the best interests of the Debtors, their

estates, their creditors, and other parties-in-interest.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The settlements proposed in the Motion are PRELIMINARILY

APPROVED, subject to final consideration by this Court at the confirmation hearing of the

Debtors' plan of reorganization following the Court's consideration of any objections that may be

filed by any of the Potential Objectors as to the proposed settlements in accordance with

paragraph 13 of this Order and any responses thereto.

2.    In accordance with Fed. R. Bankr. P. 9014(c), the Court directs that Fed. R.

Bankr. P. 7023 shall apply in this matter with respect to certifying the Securities Voting Class

(defined below) and the ERISA Voting Class (defined below) for the purpose of voting

concerning the Plan.

3.    Pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, the Court

certifies the following class solely for the purpose of voting concerning the Plan, and for no other

purpose:

> All persons and entities who purchased or otherwise acquired
> publicly traded securities of Delphi, including securities issued by Delphi
> Trust I and Delphi Trust II, during the period of time between March 7,
> 2000 and March 3, 2005, inclusive, and who suffered damages thereby,
> including all persons and entities who acquired shares of Delphi common
> stock and preferred stock in the secondary market and all persons or
> entities who acquired debt securities of Delphi in the secondary market or
> pursuant to a registration statement (the "Securities Voting Class").
> Excluded from the Securities Voting Class are (i) any Defendant, (ii) any
> member of the family of any of the Delphi Officer and Director
> Defendants, (iii) any entity in which any Defendant has a controlling
> interest, (iv) any officer, director, or partner of any Defendant or their
> subsidiary or affiliate, or (v) the legal representatives, heirs, successors,
> and assigns of any such excluded party, and any putative members of the

Securities Voting Class who exclude themselves by timely requesting
exclusion in accordance with the requirements set forth in the Notice.[3]

4.      The Lead Plaintiffs, as representatives of the Securities Voting Class, are
hereby granted an allowed claim and/or interest in these cases in the aggregate face amount of
$204.0 million, with no additional provision to be made for accrued interest, solely for the
purpose of voting concerning the Plan, and for no other purpose (the "Securities Allowed Voting
Claim/Interest").  The Securities Allowed Claim/Interest shall be classified under the Plan in a
separate class, and may be classified in separate debt and equity subclasses in a manner
consistent with the Securities Stipulation as approved by the District Court.

5.      Upon the Court's entry of this Order, (i) the Lead Plaintiffs shall withdraw,
without prejudice, that certain proof of claim in these cases bearing number 14092 and dated July
31, 2006, and all other proofs of claim in these cases filed by the Lead Plaintiffs on behalf of the
Securities Voting Class, (ii) any individual proof of claim that was filed in these cases by the
Lead Plaintiffs or any other named plaintiff in the Delphi Securities Action, or on their behalf, in
any capacity other than as representatives of the Securities Voting Class and relates to the
allegations in the Delphi Securities Action (including but not limited to the proofs of claim
identified in Exhibit D to the Securities Stipulation) shall be deemed estimated in the amount of
$1 solely for the purpose of voting concerning the Plan, and for no other purpose, and shall be
classified pursuant to the Plan in the separate debt or equity classes applicable to the Securities
Allowed Claim/Interest according to the type of security or securities on which such proof of
claim is based, as disclosed by the Lead Plaintiffs in prior filings in the Delphi Securities Action,
it being understood that such proofs of claim shall be entitled to vote in more than one class as

---

[3]     Capitalized terms used and not otherwise defined in paragraphs 3 through 6 of this order shall have the
meanings ascribed to them in the Securities Stipulation.

8

appropriate, and (iii) all proofs of claim filed in these cases by the Underwriter Defendants

concerning any claims to indemnification, contribution, or other reimbursement from Delphi on

account of or relating to the Delphi Securities Action (including but not limited to the proofs of

claim identified in Exhibit E to the Securities Stipulation) shall be deemed contingent and

estimated in the amount of $0 solely for the purpose of voting concerning the Plan, and for no

other purpose.

6.      With respect to voting concerning the Plan, the Lead Plaintiffs, as

representatives of the Securities Voting Class, are hereby authorized to cast any and all votes

arising from the Securities Allowed Voting Claim/Interest on behalf of the Securities Voting

Class.  The Lead Plaintiffs, as representatives of the Securities Voting Class, shall cast any and

all votes under their control, including any and all votes under their control by virtue of the

Securities Allowed Voting Claim/Interest, in favor and in acceptance of the Plan provided that

the Plan is consistent with and incorporates the proposed settlements set forth in and identified

by the Motion.

7.      Pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23, the Court

certifies the following class solely for the purpose of voting concerning the Plan, and for no other

purpose:

> All persons (a) who were (i) participants in or beneficiaries of the
> Delphi Savings-Stock Purchase Program for Salaried Employees, the
> Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC
> Manufacturing Savings Plan between May 28, 1999 and November 1,
> 2005 or (ii) participants in or beneficiaries of the Delphi Mechatronic
> Systems Savings-Stock Purchase Program between June 1, 2001 and
> November 1, 2005 and (b) whose accounts included investments in the
> Delphi and/or GM Stock Funds (the "ERISA Voting Class").  Excluded
> from the ERISA Voting Class are (i) the Defendants, (ii) members of the
> immediate families of each of the Defendants, (iii) any entity in which any
> Defendant has a controlling interest, (iv) any parent, subsidiary, or affiliate
> of a Defendant, (v) any person who was an officer or director of a

9

Defendant or of any of Defendants' subsidiaries or affiliates during the period of time between May 28, 1999 and November 1, 2005, inclusive, and (vi) the legal representatives, heirs, predecessors, successors, or assigns of any such excluded person or entity.[4]

8.      The Named Plaintiffs, as representatives of the ERISA Voting Class, are hereby granted an allowed interest in these cases in the face amount of $24.5 million, with no additional provision to be made for accrued interest, solely for the purpose of voting concerning the Plan, and for no other purpose (the "ERISA Allowed Voting Interest"). The ERISA Allowed Voting Interest shall be classified under the Plan in a separate equity class.

9.      Upon the Court's entry of this Order, (i) the Named Plaintiffs shall withdraw, without prejudice, any proof of claim that they may assert they filed in these cases on behalf of the ERISA Voting Class, and (ii) any individual proof of claim that was filed in these cases by the Named Plaintiffs or on their behalf in any capacity other than as representatives of the ERISA Voting Class and that relates to the allegations asserted in the Delphi ERISA Action (including but not limited to the proofs of claim identified in Exhibit D to the ERISA Stipulation) shall be deemed estimated in the amount of $1 solely for the purpose of voting concerning the Plan, and for no other purpose, and shall be classified pursuant to the Plan in the separate equity class applicable to the ERISA Allowed Voting Interest.

10.     With respect to voting concerning the Plan, the Named Plaintiffs, as representatives of the ERISA Voting Class, are hereby authorized to cast any and all votes arising from the ERISA Allowed Voting Interest on behalf of the ERISA Voting Class. The Named Plaintiffs, as representatives of the ERISA Voting Class, shall cast any and all votes under their control, including any and all votes under their control by virtue of the ERISA

---

[4]     Capitalized terms used and not otherwise defined in paragraphs 7 through 10 of this order shall have the meanings ascribed to them in the ERISA Stipulation.

Allowed Voting Interest, in favor and in acceptance of the Plan provided that the Plan is

consistent with and incorporates the proposed settlements set forth in and identified by the

Motion.

11.      Nothing in this Order is intended to affect, and nothing in this Order shall

be construed as affecting, voting or any other rights or obligations concerning any plan of

reorganization that does not incorporate the settlements reflected in the Securities Stipulation, the

ERISA Stipulation, and the Insurance Stipulation.  All parties' rights with respect to any such

plan of reorganization are reserved.

12.      In the event that, prior to the confirmation hearing with respect to the Plan,

any party to the Securities Stipulation or the ERISA Stipulation terminates the Securities

Stipulation or the ERISA Stipulation, as appropriate, pursuant to their respective terms or the

Securities Stipulation or the ERISA Stipulation is otherwise terminated pursuant to applicable

law as determined by a court of competent jurisdiction, then any vote cast with respect to the

Securities Allowed Voting Claim/Interest or the ERISA Allowed Voting Interest shall be

rendered null and void, and the relief from automatic stay provided in Paragraph 14 of this Order

shall be vacated in favor of the provisions of the Agreed Order from that date forward.

13.      With respect to parties other than the Potential Objectors, the deadline for

objecting to the settlements reflected in the Securities Stipulation, the ERISA Stipulation, the

Insurance Stipulation, and the Motion has passed, and those parties are barred from raising any

such objection in connection with the confirmation of the Plan.  With respect to the Potential

Objectors, the deadline for objecting to the settlements reflected in the Securities Stipulation, the

ERISA Stipulation, the Insurance Stipulation, and the Motion with respect to any matter other

than the relief granted in this Order shall be the deadline established by the Court for objecting to

11

the confirmation of the Debtors' plan of reorganization, and nothing in this Order shall prejudice

any Potential Objector with respect to any such objection, including any objection to the

classification of any claim or interest granted under this Order.  Notwithstanding anything else in

this Order, the findings of fact and conclusions of law set forth herein are limited to the relief

granted in this Order, and shall have no preclusive effect on potential objections brought by

Potential Objectors, except as to the relief granted in this Order.

14.    Pursuant to section 362(d)(1) of the Bankruptcy Code and Fed. R. Bankr.

P. 4001(d), the automatic stay is hereby lifted with respect to the documents provided by the

Debtors to the Securities Lead Plaintiffs under the Court's Agreed Order.

15.    Except as to the bifurcation of this Court's approval of the settlements

identified in the Motion, nothing in this Order shall affect or modify the provisions of the

Securities Stipulation or the ERISA Stipulation.

16.    This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

17.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.


Dated: October ___, 2007
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

```
-----------------------------------------------------------x
                                                 :
                                                 :
IN RE: DELPHI CORPORATION           :      MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"    :      Master Case No. 05-md-1725
LITIGATION                          :      Hon. Gerald E. Rosen
                                    :
                                    :      This Document Relates to:
                                    :      In Re: Delphi Corp. Securities Litig.
                                    :      No. 06-10026, and Case Nos.
                                    :      06-10025, 06-10027, 06-10028,
                                    :      06-10029, 06-10030, 06-10031, and
                                    :      06-10032
                                    :
                                    :
-----------------------------------------------------------x
```

## STIPULATION AND AGREEMENT OF SETTLEMENT
## WITH CERTAIN DEFENDANTS

This Stipulation and Agreement of Settlement With Certain Defendants (the "Stipulation")

is submitted in the above-captioned *In re: Delphi Corporation Securities, Derivative & "ERISA"*

*Litigation*, Master Case No. 05-md-1725 (GER), and relates to *In Re: Delphi Corp. Securities*

*Litigation*, No. 06-10026 and the other securities actions listed above, pursuant to Rule 23 of the

Federal Rules of Civil Procedure.  Subject to the approval of the United States District Court for

the Eastern District of Michigan (the "Court"), this Stipulation is entered into among Lead

Plaintiffs Teachers' Retirement System of Oklahoma, Public Employees' Retirement System of

Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H., and Stichting Pensioenfonds ABP

(hereinafter "Lead Plaintiffs") on behalf of themselves and the Class (as defined herein), and

Delphi Corporation ("Delphi"); Delphi Trust I and Delphi Trust II; J.T. Battenberg III, John G.

Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd

Gottschalk, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D.

Opie, Roger S. Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively,

the "Delphi Officer and Director Defendants"); and Banc of America Securities LLC, Barclays

Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities

(USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith

Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital

Markets, LLC (collectively, the "Underwriter Defendants").

A separate consolidated action brought under the Employee Retirement Income Security

Act, coordinated in the above-captioned *In re: Delphi Corp. Securities, Derivative & "ERISA"*

*Litigation,* Master File No. 05-md-1725 (GER), Case Nos. 05-CV-70882, 05-CV-70940,

05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396,

05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and

05-CV-72198 (the "Delphi ERISA Action"), is also pending in this Court. The ERISA Action is

being settled contemporaneously herewith pursuant to a separate stipulation of settlement.

It is a condition to the Settlement (as defined herein) that the Delphi Securities Action (as

defined herein) and the Delphi ERISA Action be settled contemporaneously and that the

Settlement and the settlement of the Delphi ERISA Action be (i) approved by the Court and (ii)

approved by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court"). It is a further condition to the Settlement that the Bankruptcy Court approve

the separate agreement resolving all pertinent claims among Delphi, certain insurance carriers, and

certain individuals insured under the relevant insurance policies and obligating such insurance carriers to make the Insurance Payment (defined below) (the "Insurance Agreement").

WHEREAS:

A.    Beginning on March 7, 2005, several putative securities class actions were filed in the Court and the United States District Court for the Southern District of New York against Delphi and various other defendants. On June 27, 2005, Judge Naomi Reice Buchwald of the United States District for the Southern District of New York appointed Lead Plaintiffs as lead plaintiffs to prosecute the actions on behalf of all purchasers of Delphi securities during the putative class period and appointed Co-Lead Counsel (defined herein) as lead counsel in the actions (the "Lead Plaintiff Appointment Order"). The actions filed in the United States District Court for the Southern District of New York were consolidated by order of that court, entered September 23, 2005, under the caption *In Re: Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB).

B.    On September 30, 2005, Lead Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") on behalf of all persons and entities who purchased or otherwise acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II, during the period between March 7, 2000 and March 3, 2005, inclusive, against Delphi; Delphi Trust I; Delphi Trust II; the Delphi Officer and Director Defendants; the Underwriter Defendants; J. Michael Losh, Harry J. Pearce, John F. Smith; Deloitte & Touche LLP ("Deloitte"); BBK, Ltd. ("BBK"); SETECH, Inc. ("SETECH"); and JPMorgan Chase & Co. (as successor-in-interest to Bank One Corporation) ("JPMorgan Chase"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and Sections 11, 12(a)(2), and 15 of the Securities

3

Act of 1933 (the "Securities Act"). The Complaint alleges, among other things, that Delphi, with

the participation of others, improperly accounted for various transactions and otherwise made

material misstatements regarding its financial condition.

C.    On October 8, 2005, Delphi filed for protection under chapter 11 of Title 11 of the

United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

D.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the

transfer of the Delphi Securities Action (and other related federal actions, including the Delphi

ERISA Action) to this Court for coordinated or consolidated pretrial proceedings. On March 10,

2006, certain defendants moved to dismiss the Complaint. On May 12, 2006, Lead Plaintiffs filed

papers in opposition to the motions to dismiss. On June 12, 2006, defendants filed their reply

papers in further support of the motions to dismiss. On February 15, 2007, the Court granted Lead

Plaintiffs' motion for partial modification of the discovery stay implemented pursuant to the

Private Securities Litigation Reform Act and, on March 21, 2007, denied certain defendants'

motion for reconsideration of that ruling.

E.    On March 14, 2006, Lead Plaintiffs voluntarily dismissed from the Delphi

Securities Action defendants J. Michael Losh, Harry J. Pearce, and John F. Smith, who were all

former directors of both General Motors Corporation and Delphi.

F.    On April 11, 2005, a putative class action was filed in the United States District

Court for the Southern District of Florida against Delphi Trust I, J.T. Battenberg III, Robert H.

Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Bernd Gottschalk, Shoichiro Irimajiri,

Oscar de Paula Bernardes Neto, John D. Opie, Roger S. Penske, Donald S. Runkle, John D.

Sheehan, Patricia C. Sueltz, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley

& Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC, under the caption

*Bernstein v. Delphi Trust I, et al.*, No. 9:05-CV-80307 (KLR) (the "Bernstein Action"). The

complaint alleged violations of Sections 11 and 15 of the Securities Act in connection with the sale

of securities of Delphi Trust I. On July 20, 2005, upon unopposed motion, the Southern District of

Florida appointed plaintiff Sidney Bernstein as lead plaintiff in the Bernstein Action and appointed

his selection of counsel as co-lead counsel in the Bernstein Action (the "Bernstein Order"). On

August 29, 2005, the Southern District of Florida stayed the Bernstein Action pending transfer of

all related actions by the multidistrict litigation panel. On October 16, 2006, this Court granted

Lead Plaintiffs' motion to vacate the Bernstein Order and affirmed the Lead Plaintiff Appointment

Order. The obligations incurred and releases set forth in this Stipulation as part of the Settlement

are in full and final disposition of the Bernstein Action in addition to that of the Delphi Securities

Action.

        G.     Settling Defendants in the Delphi Securities Action deny any wrongdoing

whatsoever, and this Stipulation shall in no event be construed or deemed to be evidence of or an

admission or concession on the part of any Settling Defendant with respect to any claim of any

fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the

Settling Defendants have asserted or would assert.

        H.     The parties to this Stipulation recognize that the Delphi Securities Action has been

filed by the Lead Plaintiffs and defended by the Settling Defendants in good faith, that the Delphi

Securities Action is being voluntarily settled upon advice of counsel, and that the terms of the

Settlement are fair, reasonable and adequate. This Stipulation shall not be construed or deemed to

be a concession by Lead Plaintiffs or any Class Member of any infirmity in the claims asserted in

the Delphi Securities Action or any other action.

I.    Co-Lead Counsel have conducted investigations relating to the claims and the underlying events and transactions alleged in the Delphi Securities Action. Co-Lead Counsel have analyzed the evidence adduced during the pretrial discovery conducted thus far and have researched the applicable law with respect to the claims of the Lead Plaintiffs and the Class against the Settling Defendants and the potential defenses thereto.

J.    The parties recognize that the claims asserted in the Delphi Securities Action, if proved by the Lead Plaintiffs, could have exposed Settling Defendants to a substantial damage award. Accordingly, the parties considered that a resolution of the Delphi Securities Action was advisable from the point of view of all parties.

K.    With the assistance of the Honorable Layn R. Phillips, former United States District Judge, acting as a special master for settlement purposes, Lead Plaintiffs in the Delphi Securities Action, by their counsel, have conducted independent discussions and arm's-length negotiations with Settling Defendants' counsel with respect to a compromise and settlement of the Delphi Securities Action and with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class in the Delphi Securities Action.

L.    Based upon their investigation and pretrial discovery as set forth above, Lead Plaintiffs and their counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiffs and the Class, and are in their best interests, and Lead Plaintiffs have agreed to settle the claims raised in the Delphi Securities Action pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that the members of the Class will receive from settlement of the Delphi Securities Action, (b) the attendant risks of litigation, (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation, and (d) the sources available to fund any potential

6

judgment in the litigation as a result of the fact that Delphi filed for protection under chapter 11 of the Bankruptcy Code on October 8, 2005.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any lack of merit of the Delphi Securities Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Settling Defendants, it is hereby STIPULATED AND AGREED, by and between the parties to this Stipulation, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties hereto from the Settlement herein set forth, that all Settled Claims (as defined herein), as against the Released Parties (as defined herein), and all Settled Defendants' Claims (as defined herein) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.      As used in this Stipulation, the following terms shall have the following meanings:

(a)      "Allowed Opt-out Claim" means a claim in the Bankruptcy Case by or on behalf of a person who would be a Class Member but for that person's submission of a valid and timely request for exclusion from the Class and the settlement contemplated in this Stipulation, based on any Settled Claim, and which claim has become an allowed claim in the Bankruptcy Case within the meaning in Delphi's plan of reorganization in the Bankruptcy Case (the "Delphi Plan of Reorganization") pursuant to a Final Order of the Bankruptcy Court, any applicable provisions of the Bankruptcy Code and/or Bankruptcy Rules, or any other relevant order entered in the Bankruptcy Case; provided further that any such Allowed Opt-Out Claims shall be classified under the Delphi Plan of Reorganization in the same separate debt and/or equity classes in which

the Section 510(b) Claim is classified, and shall be satisfied using Delphi Plan Currency in the

same form, ratio, and treatment applicable to general unsecured creditors as provided in the Delphi

Plan of Reorganization.

     (b)    "Authorized Claimant" means a Class Member who submits a timely and

valid Proof of Claim form to the Claims Administrator.

     (c)    "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its

affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

     (d)    "Bankruptcy Court" means the United States Bankruptcy Court for the

Southern District of New York.

     (e)    "Bankruptcy Effective Date" means the business day determined by Dephi

in its sole discretion on which all conditions to the consummation of the Delphi Plan of

Reorganization have been either satisfied or waived and is the day upon which such plan is

substantially consummated, such date being the same as the "Effective Date" as defined in the

Delphi Plan of Reorganization.

     (f)    "Bar Order" shall have the meaning set forth in ¶¶ 5-6 hereof.

     (g)    "Barred Claims" shall have the meaning set forth in ¶ 5 hereof.

     (h)    "Barred Persons" shall have the meaning set forth in ¶ 5 hereof.

     (i)    "Claims Administrator" means The Garden City Group, Inc. ("GCG"),

which shall administer the Settlement.

     (j)    "Class" means, for the purposes of this Settlement only, all persons and

entities who purchased or otherwise acquired Delphi Securities during the Class Period, and who

suffered damages thereby, including all persons and entities who acquired shares of Delphi

common stock and preferred stock in the secondary market and all persons or entities who

acquired debt securities of Delphi in the secondary market or pursuant to a registration statement.

Excluded from the Class are (i) any Defendant; (ii) any member of the family of any of the Delphi

Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest;

(iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal

representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the

Class are any putative members of the Class who exclude themselves by timely requesting

exclusion in accordance with the requirements set forth in the Notice.

        (k)     "Class Distribution Order" has the meaning defined in ¶ 14 hereof.

        (l)     "Class Member" means a member of the Class.

        (m)     "Class Period" means, for the purposes of this Settlement only, the period

of time between March 7, 2000 and March 3, 2005, inclusive.

        (n)     "Co-Lead Counsel" means the law firms of Bernstein Litowitz Berger &

Grossmann LLP, Nix, Patterson & Roach, L.L.P., Grant & Eisenhofer, P.A., and Schiffrin &

Barroway Topaz & Kessler, LLP.

        (o)     "Court" means the United States District Court for the Eastern District of

Michigan.

        (p)     "Defendants" means Delphi, Delphi Trust I, Delphi Trust II, the Delphi

Officer and Director Defendants, the Underwriter Defendants, the Non-Settling Defendants,

Thomas H. Wyman, and Shoichiro Irimajiri.

        (q)     "Delphi" means Delphi Corporation.

        (r)     "Delphi Consideration" means that amount of Delphi Plan Currency in the

same form, ratio, and treatment provided to general unsecured creditors in the Delphi Plan of

Reorganization that would be distributed pursuant to this Stipulation to satisfy the Section 510(b)

Claim granted to the Lead Plaintiffs as representatives of the Class pursuant to this Stipulation, but for reduction, if any, for Allowed Opt-Out Claims.

(s)    "Delphi Plan Currency" means the form of consideration to be provided to general unsecured creditors as provided in the Delphi Plan of Reorganization, which could include cash, common stock, debt securities, other securities, or any other kind of consideration.

(t)    "Delphi's Counsel" means the law firm of Shearman & Sterling LLP.

(u)    "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER), Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198.

(v)    "Delphi Net Consideration" means the Delphi Consideration, reduced by the amount, if any, of Delphi Plan Currency to be distributed to the holders of Allowed Opt-out Claims; provided further that the distribution of the Delphi Net Consideration shall be in full satisfaction of the Section 510(b) Claim granted to the Lead Plaintiffs as representatives of the Class pursuant to this Stipulation, and in full and final resolution of the Settled Claims of the Class against Delphi.

(w)    "Delphi Securities" means publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II.

(x)    "Delphi Securities Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER), and relating to *In Re: Delphi Corp. Securities Litigation*, No. 06-10026, and Case Nos. 06-10027, 06-10028, 06-10029,

10

06-10030, 06-10031, and 06-10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025

(GER) (formerly No. 9:05-CV-80307 (KLR) (S.D. Fla.)).

   (y) "Effective Date" means the date upon which the Settlement contemplated

by this Stipulation shall become effective, as set forth in ¶ 29 hereof.

   (z) "Escrow Agent" means Mellon Bank, or such other institution as the parties

may agree, pursuant to an Escrow Agreement to be executed in connection with this Settlement.

   (aa) "Final" or "Finality," with respect to any Judgment or Alternative Judgment

(both defined herein), means: (a) if no appeal is filed, the expiration date of the time provided for

under the corresponding rules of the applicable court or legislation for filing or noticing of any

appeal from the Judgment; or (b) if there is an appeal from the Judgment, the date of (i) final

dismissal of any appeal from the Judgment, or the final dismissal of any proceeding on certiorari or

otherwise to review the Judgment; or (ii) the date of final affirmance on an appeal of the Judgment,

the expiration of the time to file a petition for a writ of certiorari or other form of review, or the

denial of a writ of certiorari or other form of review of the Judgment, and, if certiorari or other

form of review is granted, the date of final affirmance of the Judgment following review pursuant

to that grant. Any proceeding or order, or any appeal or petition for a writ of certiorari or other

form of review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or

(ii) the plan of allocation, shall not in any way delay or preclude the Judgment from becoming

Final.

   (bb) "Gross Settlement Fund" means (A) the cash amounts to be paid to the

Escrow Agent pursuant to ¶ 7 hereof, which consists of (i) the Insurance Payment, including the

Contingent Payment; and (ii) One Million, Five Hundred Thousand United States Dollars (U.S.

$1,500,000) that the Underwriter Defendants, excepting Bear, Stearns & Co. Incorporated and

Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), shall pay to the Escrow Agent (the "Underwriter Defendants' Payment"); (B) the Delphi Net Consideration; (C) 76.3% of any remaining cash from the National Union Fire Insurance Company of Pittsburg, Pa. Policy No. 931-88-56 after payment of all defense costs incurred as of the entry by the Court of the Order for Notice and Hearing in all material respects ("Insurance Remainder Payment") and (D) any interest on or other income or gains in respect of these amounts or distributions earned while such amounts or distributions are held by the Escrow Agent.

(cc)    "Insurance Payment" means Eighty Eight Million, Six Hundred Thousand United States Dollars (U.S. $88,600,000) that certain insurance carriers shall pay to the Escrow Agent in the amounts set forth in the Insurance Agreement within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement.  Of the Eighty Eight Million, Six Hundred Thousand United States Dollars (U.S. $88,600,000) that those certain insurance carriers shall pay to the Escrow Agent, Ten Million United States Dollars (U.S. $10,000,000) (the "Contingent Payment") shall be separately maintained in an Escrow Account subject to the provisions set forth in Exhibit C hereto.

(dd)    "Judgment" means (i) the proposed judgment or order by the Court approving the Settlement in the form attached hereto as Exhibit B, and (ii) any of the judgments and orders to be entered by the Bankruptcy Court approving the Settlement.

(ee)    "Lead Plaintiffs" means Teachers' Retirement System of Oklahoma, Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H., and Stichting Pensioenfonds ABP.

(ff)    "Net Settlement Fund" has the meaning defined in ¶ 8 hereof.

(gg)    "Non-Settling Defendants" means Deloitte, BBK, SETECH, and JPMorgan
Chase.

(hh)    "Notice" means the Notice of Proposed Settlement With Certain
Defendants, Motions for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing,
which is to be sent to members of the Class substantially in the form attached hereto as Tab 1 to
Exhibit A.

(ii)    "Order for Notice and Hearing" means the proposed order preliminarily
approving the Settlement and directing notice thereof to the Class substantially in the form
attached hereto as Exhibit A.

(jj)    "Plaintiffs' Counsel" means Co-Lead Counsel and any other counsel
representing Class Members.

(kk)    "Proof of Claim" means the proof of claim form substantially in the form
attached as Tab 2 to Exhibit A hereto.

(ll)    "Publication Notice" means the summary notice of proposed Settlement
and hearing for publication substantially in the form attached as Tab 3 to Exhibit A.

(mm)   "Released Parties" means (i) any and all of the Settling Defendants,
Thomas Wyman, and Shoichiro Irimajiri, their past or present subsidiaries, parents, principals,
affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns,
officers, directors, agents, employees, attorneys, advisors, investment advisors, investment
bankers, underwriters (including but not limited to Banc of America Securities LLC, Barclays
Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities
(USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith
Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital

13

Markets, LLC), insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi and its affiliates in the Bankruptcy Case; and (ii) General Motors Corporation, its past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which General Motors Corporation has a controlling interest or which is related to or affiliated with General Motors Corporation, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, or assigns of General Motors Corporation.  Notwithstanding the foregoing, the definition of Released Parties shall not include any of the Non-Settling Defendants and Electronic Data Systems Corporation ("EDS").  In addition, the inclusion of General Motors as a Released Party shall not be construed to release any claims asserted in *Deka Investment GmbH, et al. v. General Motors Corporation, et al.*, No. 2:06-cv-12258 (GER) (E.D. Mich.).

(nn)   "Section 510(b) Claim" means the claim against Delphi granted and approved by the Bankruptcy Court in its order approving this Settlement to the Lead Plaintiffs, as representatives of the Class, pursuant to this Stipulation, which shall be an allowed claim in the aggregate face amount of Two Hundred Four Million United States Dollars (U.S. $204,000,000),

14

with no additional provision to be made for accrued interest, and which shall be a claim classified

under the Delphi Plan of Reorganization in separate debt and equity classes based on the plan of

allocation approved by the Court, representative of the claims of the Class against Delphi arising

out of or relating to any and all claims or causes of action in the Delphi Securities Action.

(oo)    "Settled Claims" means any and all claims, debts, demands, rights or

causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to,

any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs,

expenses or liability whatsoever), whether based on federal, state, local, statutory or common law

or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated

or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature,

including both known claims and Unknown Claims (as defined herein), (i) that have been asserted

in the Delphi Securities Action against any of the Released Parties, or (ii) that could have been

asserted in any forum by the Class Members or any of them or the successors and assigns of any of

them against any of the Released Parties which arise out of, are based upon, or relate to the

allegations, transactions, facts, matters or occurrences, representations or omissions involved, set

forth, or referred to in the Delphi Securities Action and related to the purchase, acquisition, or

holding of Delphi Securities.

(pp)    "Settled Defendants' Claims" means any and all claims, rights or causes of

action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or

any other law, rule or regulation, including both known claims and Unknown Claims, that have

been or could have been asserted in the Delphi Securities Action or any forum by the Settling

Defendants or any of them or the successors and assigns of any of them against any of the Lead

Plaintiffs, any Class Member or their attorneys, which arise out of or relate in any way to the

institution, prosecution, or settlement of the Delphi Securities Action (except Settled Defendants'

Claims does not include all claims, rights or causes of action or liabilities whatsoever related to the

enforcement of the Settlement, including, without limitation, any of the terms of this Stipulation or

orders or judgments issued by the courts in connection with the Settlement or confidentiality

obligations).

      (qq)    "Settling Defendants' Opt-out Threshold" has the meaning set forth in ¶28

hereof and in the Supplemental Agreement.

      (rr)    "Settled Underwriter Defendants' Claims" means any and all claims, rights

or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or

common law or any other law, rule or regulation, including both known claims and Unknown

Claims, that have been or could have been asserted in the Delphi Securities Action, the Bankruptcy

Court, or any forum by the Underwriter Defendants or any of them or the successors and assigns of

any of them against the Released Parties, which arise out of or relate in any way to the institution,

prosecution, or settlement of the Delphi Securities Action, including any claim for indemnification;

provided, however, that the Settled Underwriter Defendants' Claims shall not include claims

arising from that certain Underwriters' Indemnification Agreement dated as of even date herewith

among Delphi and the Underwriter Defendants.

      (ss)    "Settlement" means the settlement of the Delphi Securities Action

contemplated by this Stipulation.

      (tt)    "Settlement Amount" means (i) the Delphi Net Consideration, (ii) the

Insurance Payment, (iii) the Insurance Remainder Payment, and (iv) the Underwriter Defendants'

Payment.

(uu)    "Settling Defendants" means Delphi, Delphi Trust I, Delphi Trust II, the

Delphi Officer and Directors Defendants, and the Underwriter Defendants.

(vv)    "Stipulation" means this Stipulation and Agreement of Settlement With

Certain Defendants.

(ww)    "Taxes" means (i) any and all applicable taxes, duties and similar charges

imposed by a government authority (including any estimated taxes, interest or penalties) arising in

any jurisdiction, if any (A) with respect to the income or gains earned by or in respect of the Gross

Settlement Fund, including, without limitation, any taxes that may be imposed upon Settling

Defendants or their counsel with respect to any income or gains earned by or in respect of the

Gross Settlement Fund for any period while it is held by the Escrow Agent during which the Gross

Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax

purposes; or (B) by way of withholding as required by applicable law on any distribution by the

Escrow Agent or the Claims Administrator of any portion of the Gross Settlement Fund to

Authorized Claimants and other persons entitled hereto pursuant to this Stipulation; and (ii) any

and all expenses, liabilities and costs incurred in connection with the taxation of the Gross

Settlement Fund (including without limitation, expenses of tax attorneys and accountants).  For the

purposes of paragraph (A) hereof, taxes imposed on Settling Defendants shall include amounts

equivalent to taxes that would be payable by Settling Defendants but for the existence of relief

from taxes by virtue of loss carryforwards or other tax attributes, determined by Settling

Defendants, acting reasonably, and accepted by the Escrow Agent, acting reasonably.

(xx)    "Underwriter Defendants' Payment" means One Million, Five Hundred

Thousand United States Dollars (U.S. $1,500,000) that certain of the Underwriter Defendants,

excepting Bear, Stearns & Co. Incorporated and Credit Suisse Securities (USA) LLC (f/k/a Credit

Suisse First Boston Corporation), shall pay to the Escrow Agent within ten (10) business days after

entry by the Court of an order preliminarily approving the Settlement.

(yy)    "Unknown Claims" means any and all Settled Claims which any of the

Lead Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of the

Effective Date and any Settled Defendants' Claims which any Settling Defendant does not know

or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it

might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any

and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the

Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each

Class Member shall be deemed to have waived, and by operation of the Judgments shall have

expressly waived, any and all provisions, rights and benefits conferred by any law of any state of

the United States, or principle of common law or otherwise, which is similar, comparable, or

equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law

shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition

of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key

element of the Settlement.

### SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Stipulation shall be in full and final

disposition of the Delphi Securities Action as part of the Settlement and any and all Settled Claims

as against all Released Parties and any and all Settled Defendants' Claims.

3.      (a)    Upon the Effective Date of the Settlement, Lead Plaintiffs and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any Released Party or any other person who may claim any form of contribution or indemnity from any Released Party in respect of any Settled Claim or any matter related thereto, at any time on or after the Effective Date.

(b)    Upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Lead Plaintiffs, all Class Members and their respective counsel.

(c)    Upon the Effective Date of the Settlement, the Underwriter Defendants on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Underwriter Defendants' Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Underwriter Defendants' Claims against the Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against the Released Parties or any other person who may claim any form of contribution or

19

indemnity from the Released Parties in respect of any Settled Underwriter Defendants' Claim or

any matter related thereto, at any time on or after the Effective Date, provided, however, that the

Settled Underwriter Defendants' Claims shall not include claims arising from that certain

Underwriters' Indemnification Agreement dated as of even date herewith among Delphi and the

Underwriter Defendants.

### THE BAR ORDER

4.　　　The Court shall include the Bar Order in ¶¶ 5-6 in its final Judgment approving

the Settlement.  The Bar Order shall be approved by the Court as fair to all persons or entities,

including but not limited to (a) the Defendants; (b) the Class; and (c) to the Non-Settling

Defendants.

5.　　　The Bar Order shall provide that:

(a)　　　In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for

contribution arising out of the claims or allegations of the Delphi Securities Action or any Settled

Claim (i) by any person or entity against any of the Released Parties, and (ii) by any of the

Released Parties against any person or entity other than a person or entity whose liability has been

extinguished by the settlement of the Released Party, are hereby permanently barred, extinguished,

discharged, satisfied, and unenforceable.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final

verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against

any person or entity for loss for which such person or entity and any Released Party are found to be

jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of

responsibility of any such Released Party(s) for common damages or (ii) the amount paid to the

Class by or on behalf of each such Released Party for common damages.

(b)　　　Complete Bar Order:  Any person or entity receiving notice of the Notice,

or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that

would cause such person to be charged with constructive notice of the Notice (such persons, the "Barred Persons") is permanently barred, enjoined, and restrained from commencing, prosecuting, continuing, or asserting any claim against the Released Parties arising under federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise, where the claim or the alleged injury of such Barred Person is or arises from or relates to that Barred Person's or entity's alleged liability to the Class or any Class Member ("Barred Claims"); provided, however, that if: (a) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Act of 1933 ("Securities Act") for which such Barred Person and any Released Party is found to be jointly and severally liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Securities Act; or (ii) an amount that corresponds to the percentage of responsibility of any Released Party that constitute "covered persons" pursuant to 15 U.S.C. § 78u-4(f)(10)(C) for common damages pursuant to the Securities Act ; and/or (b) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Exchange Act of 1934 ("Exchange Act") for which such Barred Person and any Released Party is found to be jointly liable, that Barred Person shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Exchange Act or (ii) an amount that corresponds to the percentage of responsibility of any Released Party for common damages pursuant to the Exchange Act.

6.      The Bar Order shall provide that a Settling Defendant shall not be enjoined from bringing Barred Claims against a Barred Person if for any reason such Barred Person asserts, or is legally not barred by the Bar Order from bringing, Barred Claims against such Settling Defendant.

## SETTLEMENT CONSIDERATION

7.      In consideration for the release and discharge provided for in ¶ 3(a) hereof, Settling Defendants shall distribute or pay or cause to be paid the Settlement Amount, as prescribed below.

(a)      The certain insurance carriers party to the Insurance Agreement shall pay to the Escrow Agent, on behalf of the Delphi Officer and Director Defendants, the Insurance Payment and the Insurance Remainder Payment, within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement.

(b)      The Underwriter Defendants, with the exception of Bear Stearns & Co. Incorporated and Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), shall pay to the Escrow Agent the Underwriter Defendants' Payment, in the aggregate, within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement.

(c)      Delphi shall distribute pursuant to the Escrow Agreement the Delphi Net Consideration as soon as practicable after the later of (i) the satisfaction of each of the conditions in ¶ 29(a)–(g), or (ii) the Bankruptcy Effective Date.

8.      (a)      The Gross Settlement Fund shall be used to pay (i) the Notice, Publication Notice, and administration costs referred to in ¶ 10 hereof, (ii) the attorneys' fee and expense award referred to in ¶ 13 hereof, and (iii) the remaining administration expenses referred to in ¶ 14 hereof. The balance of the Gross Settlement Fund after the above payments and the payment of any Taxes

22

(as defined herein) shall be the Net Settlement Fund. At a time following the Effective Date, the Net

Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶ 15-17 hereof, subject

to additional funds received, if any, from the Insurance Remainder Payment and/or the Contingent

Payment as provided in Exhibit C hereto. Any sums required to be held in escrow hereunder shall be

held by the Escrow Agent. All funds held by the Escrow Agent shall be deemed to be in the custody

of the Court until such time as the funds shall be distributed to Authorized Claimants or paid to the

persons paying the same pursuant to this Stipulation and/or further order of the Court. The Escrow

Agent shall invest any funds in excess of U.S. $100,000 in short term United States Agency or

Treasury Securities (or a mutual fund invested solely in such instruments), and shall collect and

reinvest all interest accrued thereon. Any funds held in escrow in an amount of less than U.S.

$100,000 may be held in a bank account insured by the Federal Deposit Insurance Corporation

("FDIC"). The parties hereto agree that the Gross Settlement Fund is intended to be a Qualified

Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent

as administrator of the Gross Settlement Fund within the meaning of Treasury Regulation §

I.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect

of the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with

respect to the Gross Settlement Fund. The parties hereto agree that the Gross Settlement Fund shall

be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any

relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund

from the earliest date possible. Delphi agrees to provide promptly to the Escrow Agent the statement

described in Treasury Regulation § I.468B-3(e).

   (a)  All Taxes (as defined herein) shall be paid out of the Gross Settlement Fund,

shall be considered to be a cost of administration of the Settlement and shall be timely paid by the

Escrow Agent without prior Order of the Court. The Gross Settlement Fund or the Escrow Agent

shall, to the extent required by law, be obligated to withhold from any distributions to Authorized

Claimants and other persons entitled thereto pursuant to this Stipulation any funds necessary to

pay Taxes including the establishment of adequate reserves for Taxes as well as any amount that

may be required to be withheld under Treasury Reg. 1.468B-(1)(2) or otherwise under applicable

law in respect of such distributions. Further, the Gross Settlement Fund shall indemnify and hold

harmless the Settling Defendants and their counsel for Taxes (including, without limitation, taxes

payable by reason of any such indemnification payments).

     (b)    None of the Settling Defendants, the Released Parties or their respective

counsel shall have any responsibility for or liability whatsoever with respect to (i) any act,

omission or determination of Co-Lead Counsel, the Escrow Agent or the Claims Administrator, or

any of their respective designees or agents, in connection with the administration of the Settlement

or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii)

the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims

asserted against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value

of, the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or

costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any

returns.

     (c)    Authorized Claimants shall provide any and all such information that the

Claims Administrator may reasonably require and is required by applicable law in respect of Taxes

and filings and reporting for Taxes, before any distributions are made to Authorized Claimants as

contemplated hereby, and the Claims Administrator may, without liability to the Authorized

Claimants, delay such distributions unless and until such information is provided in the form required by the Claims Administrator.

## ADMINISTRATION

9.       The Claims Administrator shall administer the Settlement subject to the jurisdiction of the Court for all members of the Class.  To the extent reasonably necessary to effectuate the terms of the Settlement, Delphi shall provide to the Claims Administrator, without charge, all information from Delphi's transfer records concerning the identity of Class Members and their transactions.  Such transfer information shall be in electronically readable form where available in such form.

10.       (a)       The Escrow Agent, acting solely in its capacity as escrow agent, shall be subject to the jurisdiction of the Court.

(b)       The Escrow Agent may pay from the Gross Settlement Fund, without further approval from Settling Defendants, all reasonable costs and expenses up to the amount of U.S. $500,000 associated with identifying and notifying the Class Members and effecting mailing of the Notice and Proof of Claim and publication of the Publication Notice to the Class, and the administration of the Settlement, including without limitation, the actual costs of printing and mailing the Notice and Proof of Claim, publication of the Publication Notice, reimbursements to nominee owners for forwarding the Notice and Proof of Claim to their beneficial owners, the reasonable administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims, and all reasonable fees and expenses of the Escrow Agent authorized by the Escrow Agreement.  In the event that the Settlement is terminated, as provided for herein, notice and administration costs paid or incurred in connection with this paragraph shall not be returned to the persons who paid the Settlement Amounts.

25

(c)      The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this Stipulation, and shall not be liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it, consistent with the terms hereof and those of any separate escrow agreements concerning the Gross Settlement Amount, in connection with the performance by it of its duties pursuant to the provisions of this Stipulation or order of the courts, except for its gross negligence or willful misconduct. If the Escrow Agent is uncertain as to its duties hereunder, the Escrow Agent may request that Lead Plaintiffs (and, prior to the Effective Date, Delphi) sign a document which states the action or non-action to be taken by the Escrow Agent. In the event the Settlement is terminated, as provided for herein, indemnified amounts and expenses incurred by the Escrow Agent in connection with this paragraph shall not be returned to the persons who paid the Settlement Amounts.

## BANKRUPTCY CASE ADMINISTRATION

11.      (a)      Delphi will make a motion, and will use reasonable efforts to cause such motion to be returnable at the September 2007 omnibus hearing date in the Bankruptcy Case, requesting an order from the Bankruptcy Court (i) certifying the Class under Bankruptcy Rule 7023 for purposes of this Settlement only, (ii) approving this Settlement, the settlement of the Delphi ERISA Action, and the Insurance Agreement, (iii) allowing the Section 510(b) Claim in the Bankruptcy Case; (iv) directing the Lead Plaintiffs and any other "named plaintiffs" to vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy

26

Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities

Action in favor of the Delphi Plan of Reorganization incorporating and consistent with this

Settlement; and (v) lifting the automatic stay as to those documents previously provided to Lead

Plaintiffs pursuant to that certain Agreed Order dated April 16, 2007 (Docket No. 7718 in the

Bankruptcy Case), which lifting shall be effective on the latter of the Court's preliminary approval

of this Settlement or the date the Bankruptcy Court enters an order approving this Settlement.

(b)    Upon the Bankruptcy Court's entry of an order approving this Settlement,

and certifying the Class for purposes of this Settlement only as set forth in ¶11(a) above, Lead

Plaintiffs will withdraw, without prejudice, that certain proof of claim in the Bankruptcy Case,

number 14092 and dated July 31, 2006, and all other proofs of claim filed by Lead Plaintiffs on

behalf of the Class in the Bankruptcy Case, which proofs of claim shall be withdrawn with

prejudice on the Effective Date.

(c)    Upon the Bankruptcy Court's entry of an order approving this Settlement,

and certifying the Class for purposes of this Settlement only as set forth in ¶11(a) above, any

individual proof of claim filed in the Bankruptcy Case by Lead Plaintiffs and any other named

plaintiff in the Delphi Securities Action, or on their behalf, in any capacity other than as

representatives of the Class and relating to the allegations asserted in the Delphi Securities Action

(including but not limited to the proofs of claim identified in Exhibit D hereto) shall be deemed to

be estimated, only for purposes of voting with respect to the Delphi Plan of Reorganization, in the

amount of One United States dollar (U.S. $1), and shall be classified pursuant to the Delphi Plan of

Reorganization in the separate debt or equity classes applicable to the Section 510(b) Claim

according to the type of security or securities on which such proof of claim is based, as disclosed

by Lead Plaintiffs in prior filings in the Delphi Securities Action, it being understood that such proofs of claim shall be entitled to vote in more than one class as appropriate.

(d)    Nothing in this Stipulation shall limit, reduce or impact in any way any individual, non-class claim asserted against Delphi in the Bankruptcy Case by Lead Plaintiffs or any Class Member that is not based on or related to the Settled Claims, including but not limited to claims based on any such Lead Plaintiff's or Class Member's status as a holder of any Delphi Securities, which are not classified as a Section 510(b) Claim.

(e)    Provided that the Delphi Plan of Reorganization is consistent with and incorporates the Settlement as reflected in this Stipulation, Lead Plaintiffs shall cast any and all votes concerning the Delphi Plan of Reorganization under their control by virtue of a claim filed by them or on their behalf or granted to them in the Bankruptcy Case, in either their individual or representative capacity, including without limitation the Section 510(b) Claim in favor of and in acceptance of the Delphi Plan of Reorganization; provided, however, that nothing herein shall constitute an offer with respect to any securities or solicitation of acceptance of a chapter 11 plan. Such Offer or solicitation only shall be made in compliance with all applicable securities laws and/or provisions of the Bankruptcy Code.

(f)    Upon the Bankruptcy Court's entry of an order approving this Settlement, the Underwriter Defendants shall withdraw, and shall be deemed to have withdrawn, all proofs of claim filed in the Bankruptcy Case concerning any claims to indemnification, contribution or other reimbursement from Delphi on account of or relating to the Delphi Securities Action, including but not limited to the proofs of claim set forth in Exhibit E hereto; provided, however, that in the event this Settlement is terminated, the Underwriter Defendants' proofs of claim in the Bankruptcy Case that were withdrawn and deemed withdrawn pursuant to this Stipulation shall be reinstated and all

parties shall revert to their respective status concerning such claims as of immediately prior to execution of this Stipulation.

12.    Upon the Effective Date, other than the Section 510(b) Claim, the Lead Plaintiffs and any other "named plaintiff" in the Delphi Securities Action will withdraw with prejudice and will be deemed to have withdrawn any proof of claim relating to the allegations asserted in the Delphi Securities Action and filed in the Bankruptcy Court by them or on their behalf in either their individual or representative capacity (including but not limited to the proofs of claim identified in Exhibit D hereto).

## ATTORNEYS' FEES AND EXPENSES

13.    Co-Lead Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses payable from the Gross Settlement Fund. All Plaintiffs' Counsel shall further provide to the Court, as part of the motion for approval of the Settlement, all necessary information required by the Court concerning the total award of attorneys' fees and reimbursement of expenses to be payable from the Gross Settlement Fund. Such amounts as are awarded by the Court to Co-Lead Counsel from the Gross Settlement Fund shall be payable immediately upon award (and, in the case of the Delphi Net Consideration, upon Delphi's distribution to the Escrow Agent pursuant to this Stipulation), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligations to make appropriate refunds or repayments to the Gross Settlement Fund plus accrued interest at the same rate as is earned by the Gross Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed or for whatever reason the Settlement is terminated pursuant to ¶ 30 hereof. Settling Defendants shall have no obligations whatsoever with

respect to any attorneys' fees or expenses incurred by Plaintiffs' Counsel beyond those awarded by

the Court to Plaintiffs' Counsel, which shall be payable solely from the Gross Settlement Fund.

### CLASS DISTRIBUTION ORDER/ADMINISTRATION EXPENSES

14.    Co-Lead Counsel will apply to the Court for an order (the "Class Distribution

Order") approving the Claims Administrator's administrative determinations concerning the

acceptance and rejection of the claims submitted herein, and approving any fees and expenses not

previously applied for relating to the administration of the Settlement, including the fees and

expenses of the Claims Administrator, and, only if the Effective Date and Bankruptcy Effective

Date have both occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

### DISTRIBUTION TO AUTHORIZED CLAIMANTS

15.    The Claims Administrator shall determine each Authorized Claimant's pro rata

share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as

defined in the plan of allocation described in the Notice annexed hereto as Tab 1 to Exhibit A (the

"Plan of Allocation")).

16.    It is understood and agreed by the parties that the proposed Plan of Allocation,

including, but not limited to, any adjustments to any Authorized Claimant's claim set forth herein,

is not part of the Stipulation and is to be considered by the Court separately from the Court's

consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or

proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation

or affect the Finality of the Court's Judgment approving the Stipulation and the Settlement set

forth herein, or any other orders entered pursuant to the Stipulation.

17.    Each Authorized Claimant shall be allocated a pro rata share of the Net Settlement

Fund based on his, her or its recognized claim compared to the total recognized claims of all

Authorized Claimants. This is not a claims-made settlement. Delphi, the certain insurers party to

the Insurance Agreement, and the Underwriter Defendants shall not be entitled to receive any of

the Gross Settlement Fund following the later of the Effective Date and Bankruptcy Effective Date.

The Settling Defendants shall have no involvement in reviewing or challenging claims filed with

the Claims Administrator in this Settlement.

## ADMINISTRATION OF THE SETTLEMENT

18.    Any Class Member who does not submit a valid Proof of Claim will not be entitled

to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound by all of

the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered

in the Delphi Securities Action and the releases provided for herein, and will be barred from

bringing any action against the Released Parties concerning the Settled Claims.

19.    The Claims Administrator shall process the Proofs of Claim and, after the

Bankruptcy Effective Date and entry of the Class Distribution Order, shall distribute the Net

Settlement Fund to Authorized Claimants.  Except for the obligation of Delphi, the certain insurers

party to the Insurance Agreement, and the Underwriter Defendants to pay or distribute or cause to

be paid the Settlement Amounts to the Escrow Agent in accordance with ¶ 7(a) and (b) hereof, and

for Delphi to (i) cooperate in the production of information with respect to the identification of

Class Members from its shareholder transfer records, as provided herein and (ii) comply with ¶37,

the Released Parties shall have no liability, obligation or responsibility for the administration of

the Settlement or disbursement of the Net Settlement Fund.  Co-Lead Counsel shall have the right,

but not the obligation, to advise the Claims Administrator to waive what Co-Lead Counsel deem to

be formal or technical defects in any Proofs of Claim submitted in the interests of achieving

substantial justice.

20.    For purposes of determining the extent, if any, to which a Class Member shall be

entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Proof of Claim (see attached Tab 2 to Exhibit A), supported by such documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable;

(b)     All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by Order of the Court. Any Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to the Settlement (unless, by court Order, a later submitted Proof of Claim by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Delphi Securities Action, and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Settled Claims. Provided that it is received before the first motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, which shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the claimant in order to attempt to remedy the curable deficiencies in the Proof of Claim submitted.

32

The Claims Administrator shall notify, in a timely fashion and in writing, each claimant whose

Proof of Claim they propose to reject in whole or in part, setting forth the reasons therefor, and

shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review

by the Court if the claimant so desires and complies with the requirements of subparagraph (e)

below; and

    (e)  If any claimant whose claim has been rejected in whole or in part desires to

contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the

notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and

statement of reasons indicating the claimant's grounds for contesting the rejection along with any

supporting documentation, and requesting a final review thereof by the Court. If a dispute

concerning a claim cannot be otherwise resolved, Co-Lead Counsel shall thereafter present the

request for review to the Court.

   21.  The administrative determinations of the Claims Administrator accepting and

rejecting claims shall be presented to the Court, for approval in the Class Distribution Order.

   22.  Each claimant shall be deemed to have submitted to the jurisdiction of the Court,

and the claim will be subject to investigation and discovery under the Federal Rules of Civil

Procedure, provided that such investigation and discovery shall be limited to that claimant's status

as a Class Member and the validity and amount of such claimant's claim. No discovery shall be

allowed on the merits of the Delphi Securities Action or the Settlement in connection with

processing of the Proofs of Claim.

   23.  Payment pursuant to the Settlement shall be deemed final and conclusive against all

Class Members. All Class Members whose claims are not approved pursuant to the Class

Distribution Order shall be barred from participating in distributions from the Net Settlement Fund,

but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including

the terms of the Judgment to be entered in the Delphi Securities Action, and the releases provided

for herein, and will be barred from bringing any action against the Released Parties concerning the

Settled Claims.

24.     All proceedings with respect to the administration, processing and determination of

claims described by ¶ 20 hereof, and the determination of all controversies relating thereto,

including disputed questions of law and fact with respect to the validity of claims, shall be subject

to the jurisdiction of the Court.

25.     The Net Settlement Fund shall be distributed to Authorized Claimants by the

Claims Administrator, only after the later of the Effective Date and Bankruptcy Effective Date and

after all Claims have been processed, and all claimants whose Claims have been rejected or

disallowed, in whole or in part, have been notified and provided the opportunity to contest with the

Claims Administrator such rejection or disallowance.

## TERMS OF ORDER FOR NOTICE AND HEARING

26.     (a)     Promptly after this Stipulation has been fully executed, Co-Lead Counsel

shall apply to the Court for entry of an Order for Notice and Hearing, substantially in the form

annexed hereto as Exhibit A, which Order shall, among other provisions, certify the Class for

settlement purposes only, and direct the Lead Plaintiffs and any other "named plaintiffs" to vote all

chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy

Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities

Action in favor of the Delphi Plan of Reorganization consistent with and incorporating this

Settlement.

(b)     The mailing of the Notice and publication of the Publication Notice shall

not occur until the Order for Notice and Hearing been entered.

34

## TERMS OF ORDER AND FINAL JUDGMENT

27.     If the Settlement contemplated by this Stipulation is approved by the Court,

Co-Lead Counsel and Settling Defendants' Counsel shall request that a Judgment be entered in the

form annexed hereto as Exhibit B.

## SUPPLEMENTAL AGREEMENT

28.     Simultaneously herewith, Lead Plaintiffs' Counsel and Settling Defendants'

counsel are executing a "Supplemental Agreement." Unless otherwise directed by the Court, the

Supplemental Agreement will not be filed with the Court.  Pursuant to the Supplemental

Agreement, a Settling Defendant may terminate this Settlement if potential Class Members who

purchased in the aggregate in excess of a certain amount of Delphi Securities during the Class

Period (the "Opt-out Threshold") elect to opt out of the Settlement. The Opt-out Threshold may be

disclosed to the Court for purposes of the approval of the Settlement, as may be required by the

Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the

practices of the Court so as to maintain the Opt-out Threshold as confidential.  In the event of a

termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation shall

become null and void and of no further force and effect, with the exception of the provisions of ¶

32 which shall continue to apply.   The Supplemental Agreement also sets forth Delphi's

agreement with respect to the handling of proofs of claim of putative Class Members that opt out

of the Class, and the discovery obligations of Delphi and the Underwriter Defendants.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

29.     The "Effective Date" of the Settlement shall be the date when all the following

conditions of settlement shall have occurred:

(a)     payment of Insurance Payment and the Underwriter Defendants' Payment;

(b)    approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)    entry by the Court of a Judgment, in all material respects in the form set forth in Exhibit B annexed hereto, and the expiration of any time for appeal or review of such Judgment, or, if any appeal is filed, after such Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Court enters a Judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Settlement, the date that such Alternative Judgment becomes Final;

(d)    approval by the Court of the settlement in the Delphi ERISA Action becoming Final;

(e)    entry by the Bankruptcy Court of an order(s) approving the Settlement, and the settlement in the Delphi ERISA Action, and such order(s) becoming Final;

(f)    approval by the Bankruptcy Court of the Insurance Agreement becoming Final;

(g)    approval by the Court of the Bar Order provisions in the Judgment approving the Settlement becoming Final;

(h)    distribution of the Delphi Net Consideration, pursuant to this Stipulation;

(i)    expiration of the time to exercise the termination rights provided in ¶ 30 hereof.

30.    Lead Plaintiffs and Settling Defendants shall each have the right to terminate the Settlement and thereby this Stipulation by providing written notice of their election to do so ("Termination Notice") to one another hereto within thirty (30) days of any of the following:  (a)

the Court declining to enter the Order for Notice and Hearing in any material respect; (b) the

Court refusing to approve this Settlement as set forth in this Stipulation; (c) the Court declining

to enter the Judgment in any material respect or entering an Alternative Judgment; (d) the Court

declining to enter in any material respect the Bar Order provisions in the Court's Judgment or

order approving the Settlement; (e) the Bankruptcy Court refusing to approve this Settlement or

the Insurance Agreement; (f) the date upon which a Judgment is modified or reversed in any

material respect by any level of appellate court; (g) the date upon which an Alternative Judgment

is modified or reversed in any material respect by any level of appellate court; (h) the date upon

which the settlement in the Delphi ERISA Action is terminated; or (i) the failure of the Insurance

Payment, the Insurance Remainder Payment, or Underwriter Defendants' Payment to be made

pursuant to this Stipulation; provided, however, that all termination rights provided under this

Stipulation shall expire upon Delphi's distribution of the Delphi Net Consideration pursuant to

this Stipulation.

31.    Notwithstanding anything else in this Stipulation, any Settling Defendants may, in

accordance with the terms set forth in the Supplemental Agreement, and in his, her or its sole and

unfettered discretion, elect in writing to terminate the Settlement and this Stipulation if the Settling

Defendants' Opt-out Threshold is exceeded or as otherwise provided in the Supplemental

Agreement.

32.    Except as otherwise provided herein, in the event the Settlement is terminated, the

parties to this Stipulation shall be deemed to have reverted to their respective status in the Delphi

Securities Action and, with respect to each other, in the Bankruptcy Case, immediately prior to the

execution of this Stipulation and, except as otherwise expressly provided, the parties shall proceed

in all respects as if this Stipulation and any related orders had not been entered.  Furthermore,

37

within ten (10) business days following any termination of this Settlement, the Escrow Agent shall

pay an amount equal to the Settlement Amounts previously paid by Delphi, the Underwriter

Defendants, and/or the certain insurers party to the Insurance Agreement, as the case may be, to

Delphi, the Underwriter Defendants, and/or the certain insurers party to the Insurance Agreement,

as the case may be, together with any interest or other income earned thereon or in respect thereof,

less any Taxes paid or due with respect to such income, less any amounts required to be paid to the

Escrow Agent pursuant to the relevant escrow agreement, and less any reasonable costs of

administration and notice actually incurred and paid or payable from the Settlement Amount (as

described in ¶ 10 hereof), less any applicable withholding taxes.

## NO ADMISSION OF WRONGDOING

33.    This Stipulation, whether or not consummated, and any proceedings taken pursuant

to it:

(a)    shall not be offered or received against any of the Settling Defendants as

evidence of or construed as or deemed to be evidence of any presumption, concession, or

admission by any of those Settling Defendants with respect to the truth of any fact alleged by any

of the plaintiffs or the validity of any claim that has been or could have been asserted in the Delphi

Securities Action or in any litigation, or the deficiency of any defense that has been or could have

been asserted in the Delphi Securities Action or in any litigation, or of any liability, negligence,

fault, or wrongdoing of the Settling Defendants;

(b)    shall not be offered or received against the Settling Defendants as evidence

of a presumption, concession or admission of any fault, misrepresentation or omission with respect

to any statement or written document approved or made by any of the Settling Defendants;

(c)    shall not be offered or received against the Settling Defendants as evidence

of a presumption, concession or admission with respect to any liability, negligence, fault or

wrongdoing, or in any way referred to for any other reason as against any of the Settling

Defendants, in any other civil, criminal or administrative action or proceeding, other than such

proceedings as may be necessary to effectuate the provisions of this Stipulation; provided,

however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to

effectuate the liability protection granted them hereunder;

       (d)    shall not be construed against any of the Settling Defendants as an

admission or concession that the consideration to be given hereunder represents the amount that

could be or would have been recovered after trial; and

       (e)    shall not be construed as or received in evidence as an admission,

concession or presumption against Lead Plaintiffs or any of the Class Members that any of their

claims are without merit, or that any defenses asserted by the Settling Defendants have any merit,

or that damages recoverable under the Delphi Securities Action would not have exceeded the

Gross Settlement Fund.

## MISCELLANEOUS PROVISIONS

34.    All of the exhibits attached hereto are hereby incorporated by reference as though

fully set forth herein.

35.    In the event that the Lead Plaintiffs determine to compromise and settle any claim

against any party other than a Non-Settling Defendant or EDS arising from or relating to the

Delphi Securities Action, Lead Plaintiffs shall cause any such settlement to bar that party from

making any claims for indemnification and/or contribution against any of the Released Parties or

otherwise seeking indemnification and/or contribution from any of the Released Parties.

36.    Delphi, to the best of its knowledge, represents that it has disclosed to Lead

Plaintiffs, all claims that Delphi has identified as timely filed proofs of claim in the Bankruptcy

Case filed by or on behalf of persons asserting claims in the Bankruptcy Case based on Settled Claims.

37.    If Lead Plaintiffs determine that it is appropriate to distribute Delphi Plan Currency, other than cash, to the Authorized Claimants, Delphi will cooperate by communicating and providing directives, as appropriate, to its transfer agent. If Delphi undertakes any obligation pursuant to this paragraph that results in a payment obligation to the transfer agent, or otherwise, such payment obligation will be satisfied from the Gross Settlement Fund.

38.    The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Lead Plaintiffs and Settling Defendants agree not to assert in any forum that the Delphi Securities Action was brought by the plaintiffs or defended by Settling Defendants in those actions in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Delphi Securities Action. The parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

39.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

40.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

41.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and that Court shall retain jurisdiction for the

purpose of entering orders providing for awards of attorneys' fees and expenses to Co-Lead

Counsel and enforcing the terms of this Stipulation.

42.    The waiver by one party of any breach of this Stipulation by any other party shall

not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

43.    This Stipulation and its exhibits, the Supplemental Agreement, and any related

escrow agreements constitute the entire agreement concerning the Settlement of the Delphi

Securities Action, and no representations, warranties, or inducements have been made by or on

behalf of any party hereto concerning this Stipulation, its exhibits, and the Supplemental

Agreement other than those contained and memorialized in such documents.

44.    This Stipulation may be executed in one or more counterparts. All executed

counterparts and each of them shall be deemed to be one and the same instrument.

45.    This Stipulation shall be binding upon, and inure to the benefit of, the successors

and assigns of the parties hereto.

46.    The construction and interpretation of this Stipulation and the Supplemental

Agreement shall be governed by the internal laws of the State of New York without regard to

conflicts of laws, except to the extent that federal law of the United States requires that federal law

governs.

47.    This Stipulation shall not be construed more strictly against one party than another

merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of

the parties, it being recognized that it is the result of arm's-length negotiations between the parties

and all parties have contributed substantially and materially to the preparation of this Stipulation.

48.    All counsel and any other person executing this Stipulation and any of the exhibits

hereto, or any related Settlement documents, warrant and represent that they have the full authority

to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

49.    Lead Plaintiffs and Settling Defendants agree to cooperate fully with one another in seeking (i) Court approval of the Order for Notice and Hearing, the Stipulation and the Settlement, and (ii) confirmation by the Bankruptcy Court of the Delphi Plan of Reorganization (assuming the Delphi Plan of Reorganization is consistent with the terms of this Stipulation) and any request made to the Bankruptcy Court to approve this Settlement and the Insurance Agreement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement, confirmation by the Bankruptcy Court of the Delphi Plan of Reorganization (again assuming the Delphi Plan of Reorganization is consistent with the terms of this Stipulation), and final approval of any request made to the Bankruptcy Court to approve this Settlement.

DATED:  August 31, 2007

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

By: _Hank Creenl_____

Max W. Berger
John P. Coffey
Jeffrey N. Leibell
Hannah E. Greenwald
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

**Co-Lead Counsel for Lead Plaintiffs**

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**

By: _____

Michael K. Yarnoff
Sean M. Handler
Kay E. Sickles
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7056
Facsimile: (610) 667-7706

**Co-Lead Counsel for Lead Plaintiffs**


**NIX PATTERSON & ROACH, L.L.P.**

By: _____

Bradley E. Beckworth
Jeffrey J. Angelovich
Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone:  (903) 645-7333
Facsimile:  (903) 645-4415

**Co-Lead Counsel for Lead Plaintiffs**


**GRANT & EISENHOFER P.A.**

By: _____

Stuart M. Grant
James J. Sabella
Sharan Nirmul
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500

**Co-Lead Counsel for Lead Plaintiffs**

**SHEARMAN & STERLING LLP**

By: _____

    Stuart J. Baskin
    Brian H. Polovoy
    Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

**Counsel for Delphi Corporation,
Delphi Trust I, Delphi Trust II, Robert H. Brust,
Virgis W. Colbert, David N. Farr, Bernd
Gottschalk, Susan A. McLaughlin,
Oscar de Paula Bernardes Neto, Cynthia A.
Niekamp, John D. Opie, Roger S. Penske, Donald
L. Runkle, John D. Sheehan, and Patricia C.
Sueltz**

**BAKER BOTTS L.L.P.**

By: _____ William H. Jeffress _____ (w/consent MPA on 8/31/07)

    William H. Jeffress, Jr.
    Bridget M. Moore
    Michael G. Pattillo, Jr.
    Joe R. Caldwell, Jr.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg III**

**O'MELVENY & MYERS LLP**

By: _____ Robert M. Stern _____ (per consent MPA 8/31/07)

    Robert N. Eccles
    Robert M. Stern
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

**PEPPER HAMILTON LLP**

By: _____
     Matthew J. Lund
100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

**Counsel for Paul R. Free**


MILLER, CANFIELD, PADDOCK and STONE, PLC

By: _____
     Thomas W. Cranmer
     Matthew P. Allen
150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420

**Counsel for John G. Blahnik**


**SIDLEY AUSTIN LLP**

By: _____
     A. Robert Pietrzak
     Andrew W. Stern
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5397
Facsimile: (212) 839-5599

**Counsel for Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC**

45

# EXHIBIT A

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

```
---------------------------------------------------------x
                                                         :
                                                         :
IN RE: DELPHI CORPORATION                                :        MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"                         :        Master Case No. 05-md-1725
LITIGATION                                               :        Hon. Gerald E. Rosen
                                                         :
                                                         :        This Document Relates to:
                                                         :        In Re: Delphi Corp. Securities Litig.
                                                         :        No. 06-10026, and Case Nos.
                                                         :        06-10025, 06-10027, 06-10028,
                                                         :        06-10029, 06-10030, 06-10031, and
                                                         :        06-10032
                                                         :        ---------------------------------------------
                                                         :
---------------------------------------------------------x
```

## [PROPOSED] ORDER FOR NOTICE AND HEARING

Presented to the Court for preliminary approval pursuant to Rule 23 of the Federal Rules

of Civil Procedure is the Settlement of the above-captioned actions (the "Delphi Securities

Action") by and between Teachers' Retirement System of Oklahoma, Public Employees'

Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting

Pensioenfonds ABP (collectively, "Lead Plaintiffs"), individually and on behalf of the Class, and

the following defendants in the Delphi Securities Action: (i) Delphi Corporation ("Delphi"), (ii)

Delphi Trust I and Delphi Trust II; (iii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust,

Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A.

McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S.

Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively, these

individuals will be referred to herein as the "Delphi Officer and Director Defendants"), and (iv)

**EXHIBIT A**

Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated,

Citigroup Global Markets Inc. ,, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First

Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley &

Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the

"Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and

Director Defendants and the Underwriter Defendants are collectively referred to as the "Settling

Defendants");

WHEREAS the terms of the Settlement are set forth in a Stipulation and Agreement of

Settlement With Certain Defendants, that was executed by the Settling Parties on August 31,

2007 (the "Stipulation").   The Settlement was reached after extensive arm's-length and

protracted negotiations that included multiple mediation conferences before a Court-appointed

special master.   Approval of the Settlement would result in dismissal of the Delphi Securities

Action with prejudice with respect to the Settling Defendants.   The Delphi Securities Action

shall continue with respect to defendants Deloitte & Touche LLP, JP Morgan Chase & Co. (as

the successor to Bank One Corporation), SETECH, Inc. and BBK (collectively, the "Non-

Settling Defendants");

NOW, upon consent of the Settling Parties, after review and consideration of the

Stipulation filed with the Court and the exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED that:

1.    The Court, for purposes of this Order for Notice and Hearing (the "Preliminary

Approval Order"), adopts all defined terms as set forth in the Stipulation.

2.    The Court hereby preliminarily certifies, for purposes of effectuating this

Settlement, a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) consisting of all persons and

entities who purchased or otherwise acquired publicly traded securities of Delphi, including

securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities") between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement (the "Class" or "Class Members"). Excluded from the Class are: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Class are any putative members of the Class who exclude themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice of Proposed Settlement With Certain Defendants, Motion for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing ("Notice") to be sent to the Class.

3.    For purposes of settlement only, the Lead Plaintiffs, on behalf of all Class Members, are appointed as Class Representatives. The law firms of Bernstein Litowitz Berger & Grossmann LLP; Nix, Patterson & Roach, L.L.P.; Grant & Eisenhofer, P.A.; and Schiffrin Barroway Topaz & Kessler, LLP, are jointly appointed as Class counsel ("Co-Lead Counsel").

4.    With respect to the Class, this Court preliminarily finds and concludes that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied as: (a) the members of the Class are so numerous that joinder of all Class Members is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Lead Plaintiffs are typical of the claims of the Class; (d) the Lead Plaintiffs and Co-Lead Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and (e) a class action is superior to other available methods for the fair and efficient

3

adjudication of the controversy, considering: (i) the interests of the members of the Class in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class, (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the class action.

5.      Co-Lead Counsel are authorized to act on behalf of the Class with respect to all acts required by, or which may be undertaken pursuant to, the Stipulation or such other acts that are reasonably necessary to consummate the proposed Settlement set forth in the Stipulation.

6.      The action captioned *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) (formerly No. 9:05-CV-80307 (KLR) (S.D. Fla.)) (the "Bernstein Action), is hereby consolidated in the Delphi Securities Action.

7.      The Court appoints The Garden City Group, Inc. as Claims Administrator to supervise and administer the notice and claims procedures as set forth in the Stipulation. The Settling Parties and their counsel shall not be liable for any act or omission of the Claims Administrator.

8.      The Escrow Agent is authorized and directed to prepare any tax returns and any other tax reporting for or in respect of the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Stipulation, without further order of the Court.

9.      The Court hereby dismisses without prejudice the Complaint as against Thomas Wyman and Shoichiro Irimajiri. Unless opposed by Lead Plaintiffs, the dismissal of the Complaint against these two Defendants shall be converted to a dismissal with prejudice pursuant to the Order and Final Judgment upon the Effective Date of the Settlement.

4

10.    Lead Plaintiffs and any other "named plaintiffs" shall vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities Action in favor of the Delphi Plan of Reorganization consistent with and incorporating this Settlement.

11.    The Court preliminarily approves:  (1) the Settlement of the Delphi Securities Action with respect to the Settling Parties as set forth in the Stipulation; and (2) the proposed Plan of Allocation described in the Notice, subject to the right of any Class Member to challenge the fairness, reasonableness, and adequacy of the Stipulation or the proposed Plan of Allocation, and to show cause, if any exists, why a final judgment dismissing the Delphi Securities Action against the Settling Defendants only based on the Stipulation should not be ordered herein after due and adequate notice to the Class has been given in conformity with this Order.

12.    Pursuant to Fed.R.Civ.P. Rule 23(e), a hearing (the "Fairness Hearing") shall be held on November 13, 2007, at ____ __.m., in the United States District Court for the Eastern District of Michigan, Southern Division, the Honorable Gerald E. Rosen presiding, to:

a.    determine whether the Settlement should be approved by the Court as fair, reasonable, adequate, and in the best interests of the Class;

b.    determine whether the Plan of Allocation for the proceeds of the Settlement should be approved by the Court as fair and reasonable;

c.    determine whether the Judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing the Delphi Securities Action against the Settling Defendants with prejudice and extinguishing and releasing all Settled Claims and barring all Barred Claims (as defined in the Stipulation);

d.    determine whether the Class should be finally certified for settlement purposes pursuant to Fed.R.Civ.P. Rules 23(a) and (b);

   e. rule on Co-Lead Counsel's application for an award of attorneys' fees and the reimbursement of litigation expenses; and

   f. rule on such other matters as the Court may deem appropriate.

  13. The Court reserves the right to adjourn the Fairness Hearing or any adjournment thereof, including the consideration of the application for attorneys' fees and reimbursement of litigation expenses, without further notice of any kind to Class Members.

  14. The Court reserves the right to approve the Settlement at or after the Fairness Hearing with such modification as may be consented to by the Settling Parties and without further notice to the Class.

  15. The Claims Administrator shall make reasonable efforts to identify all persons who are members of the Class, including beneficial owners whose Delphi Securities are held by banks, brokerage firms, or other nominees. Delphi, or such other agent authorized to do so, shall produce or will cause to be produced within five (5) calendar days of the Court's entry of this Order the information from transfer or other records required by the Claims Administrator to send Notice to the persons who can be identified through those same records (the "Notice Information"). The Notice Information should, if practicable, be provided in an MS Excel version 10 or 11 (preferred) or in ASCII fixed length field text files. Control characters such as Carriage Return/Line Feed should be appended to each line in the text files. Delphi shall bear all costs or expenses associated with providing the Claims Administrator with the above-described Notice Information from Delphi and its transfer agent's records. The Claims Administrator shall send the Notice and the Proof of Claim, substantially in the forms of Exhibits A-1 and A-2, by United States mail, postage pre-paid, to all reasonably ascertainable members of the Class, at their last known address appearing in the Notice Information. Such mailing shall occur no later

6

than the "Notice Date," which shall be no later than ten (10) calendar days after the Claims Administrator receives the Notice Information.

16.    Pursuant to the Notice, each nominee who receives the Notice shall either: (1) send the Notice and Proof of Claim to Class Members for which they act as nominee by first class mail within seven (7) calendar days after the nominee receives the Notice; or (2) send a list of the names and addresses of such beneficial owners to the Claims Administrator within seven (7) calendar days after the nominee receives the Notice and, in the event of the latter, the Claims Administrator shall send by first class mail the Notice and Proof of Claim to all Class Members who are on the list received from the nominee.  The Claims Administrator shall, if requested, reimburse banks, brokerage houses, or other nominees for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners who are Class Members, which expenses would not have been incurred except for the sending of such notice, subject to further order of this Court with respect to any dispute concerning such compensation.  Co-Lead Counsel shall file with the Court and serve upon Settling Defendants' counsel no later than seven (7) days prior to the Fairness Hearing an affidavit or declaration describing the efforts taken to comply with this order and stating that the mailings have been completed in accordance with the terms of this order.

17.    Within two (2) calendar days of the Notice Date, Co-Lead Counsel shall cause to be published a Publication Notice, substantially in the form of Exhibit A-3 to the Stipulation, once in the national edition of *The Wall Street Journal,* once in *Investor's Business Daily,* once in *The Detroit Free Press* and once over the *PR Newswire.*  Co-Lead Counsel shall file with the Court and serve upon Settling Defendants' Counsel no later than seven (7) days prior to the Fairness Hearing an affidavit or declaration stating that the Publication Notice has been published in accordance with the terms of this order.

7

18.   The form and content of the Notice, the Proof of Claim, and the Publication Notice, annexed hereto as Exhibits A-1, A-2 and A-3, respectively, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78u-4(a)(7), including by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.

19.   Any member of the Class who timely and properly objects to the Settlement, the Plan of Allocation, and/or the application for attorneys' fees and reimbursement of expenses, or who otherwise wishes to be heard, may appear in person or by his, her, or its attorney, at his, her, or its own expense, at the Fairness Hearing and present evidence or argument that may be proper or relevant; *provided, however*, that no person other than the parties and their counsel shall be heard, and no papers, briefs, pleadings, or other documents submitted by any person shall be considered by the Court unless on or before fourteen (14) days before the Fairness Hearing, such person files with the Court and serves upon counsel listed below:   (1) a statement of such person's objections to any matters before the Court concerning this Settlement; (2) the grounds therefor or the reasons that such person desires to appear and be heard, as well as all documents or writings such person desires the Court to consider; (3) whether that person intends to present any witnesses; and (4) the person's purchases and sales of Delphi Securities made during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each such purchase or sale, and whether such person continues to hold such Delphi Securities at the time the statement of objection is served.  Such filings shall be served upon the Court and the following counsel:

8

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Sean Handler
280 King of Prussia Road
Radnor, PA 19087

**NIX, PATTERSON & ROACH, L.L.P.**
Bradley E. Beckworth
Jeffrey J. Angelovich
205 Linda Drive
Daingerfield, Texas 75638

**GRANT & EISENHOFER P.A.**
Stuart M. Grant
James J. Sabella
485 Lexington Avenue
New York, New York 10017

**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
Max Berger
John P. Coffey
1285 Avenue of the Americas
New York, New York 10019

*Co-Lead Counsel for Lead Plaintiffs*

**SHEARMAN & STERLING LLP**
Stuart J. Baskin
Brian H. Polovoy
599 Lexington Ave.
New York, New York 10022-6069

*Counsel for Delphi, Delphi Trust I and Delphi Trust II, and certain Delphi Officer and Director Defendants*

SIDLEY AUSTIN LLP
Andrew W. Stern
787 Seventh Avenue
New York, New York 10019

*Counsel for the Underwriter Defendants*

**MILLER, CANFIELD, PADDOCK and STONE, PLC**
Thomas W. Cranmer, Esq.
Matthew P. Allen, Esq.
150 W. Jefferson, Suite 2500
Detroit, MI  48226

*Counsel for certain of the Delphi Officer and Director Defendants*

20.    Any Class Member who does not object to the Settlement, the Bar Order, and/or the Plan of Allocation in the manner prescribed in the Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement or the Order and Final Judgment to be entered approving the Settlement, the Bar Order, and the Plan of Allocation.

21.    Any person falling within the definition of the Class may, upon request, be excluded from the Class.  Any such person must submit to the Claims Administrator a request for exclusion ("Request for Exclusion") so that it is received by the Claims Administrator on or before fourteen (14) days before the Fairness Hearing.  A Request for Exclusion must state:  (1) the name, address, and telephone number of the person requesting exclusion; (2) the person's purchases and sales of Delphi Securities made during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each such purchase or sale, and whether such person continues to hold such Delphi Securities at the time the statement of objection is served; (3) the amount or number of Delphi Securities held as of the beginning of the Class Period on March 7, 2000; and (4) that the person wishes to be

10

excluded from the Class. All persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph and the Notice shall have no rights under the Stipulation and shall not share in the distribution of the Net Settlement Fund.

22.    Any Class Member who wishes to participate in the Net Settlement Fund must submit a valid Proof of Claim to the Claims Administrator, at the address indicated in the Notice, postmarked not later than January 15, 2008. Such deadline may be further extended by Court order. Proofs of Claim shall be deemed to have been submitted when postmarked, if mailed by first class, or registered or certified mail, postage prepaid, addressed in accordance with the instructions given in the Proof of Claim. All other Proofs of Claim shall be deemed to have been submitted at the time they are actually received by the Claims Administrator. To be valid, a Proof of Claim must: (1) be completed in a manner that permits the Claims Administrator to determine the eligibility of the claim as set forth in the Proof of Claim; (2) include the release by the Claimant of all Released Parties as set forth in the Stipulation; and (3) be signed with an affirmation that the information is true and correct. All Class Members who do not submit valid and timely Proofs of Claim shall be forever barred from receiving any payments from the Net Settlement Fund, but will in all other respects be subject to and bound by the provisions of the Stipulation and the Order and Final Judgment, if entered.

23.    If this Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement (including any modification thereof) made with the consent of the parties as provided for in the Stipulation, any class certification herein, and any actions taken or to be taken in connection therewith (including this Order and any judgment entered herein), shall be terminated and shall become void and of no further force and effect except as set forth in the Stipulation.

24.    Pending final determination of whether the Settlement should be approved, all proceedings in the Delphi Securities Action against the Released Parties, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court.  Pending final determination whether the Settlement should be approved, Lead Plaintiffs and all members of the Class are barred and enjoined from commencing, prosecuting, continuing, or asserting any action asserting any claims against the Released Parties that are or relate in any way to the Settled Claims as defined in the Stipulation.

25.    The contents of the Gross Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the contents of those funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

26.    Neither the Stipulation nor any provisions contained in the Stipulation, nor any negotiations, statements, or proceedings in connection therewith, nor any action undertaken pursuant thereto shall be construed as, or deemed to be evidence of, an admission or concession on the part of any Settling Defendant or any other person of any liability or wrongdoing by them, or any of them, and shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature, and shall not be construed as, or deemed to be evidence of, an admission or concession that Lead Plaintiffs, any member of the Class, or any other person, has or has not suffered any damage.

27.    Any party making submissions to the Court in support of approval of the Settlement or the Plan of Allocation, or in support of Co-Lead Counsel's application for an

12

award of attorneys' fees and reimbursement of litigation expenses, shall do so by seven (7) calendar days before the date scheduled for the Fairness Hearing.

28.    The Court authorizes payment out of the Gross Settlement Fund of notice and administration expenses in accordance with the Stipulation.

29.    The passage of title and ownership of the Gross Settlement Fund to the Escrow Agent in accordance with the terms of the Stipulation is approved.  No person that is not a Class Member or Co-Lead Counsel shall have any right to any portion of, or in the distribution of, the Net Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

30.    The Court may, for good cause, extend any of the deadlines set forth in this order without further notice to Class Members.

SIGNED this _____ day of September 2007.


_____

**GERALD E. ROSEN**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
---------------------------------------------------------------x
                                       :
                                       :
IN RE: DELPHI CORPORATION              :     MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"       :     Master Case No. 05-md-1725
LITIGATION                             :     Hon. Gerald E. Rosen
                                       :
                                       :     This Document Relates to:
                                       :     In Re: Delphi Corp. Securities Litig.
                                       :     No. 06-10026, and Case Nos.
                                       :     06-10025, 06-10027, 06-10028,
                                       :     06-10029, 06-10030, 06-10031, and
                                       :     06-10032
                                       :     ---------------------------------------------
---------------------------------------------------------------x
```

### NOTICE OF PROPOSED SETTLEMENT WITH CERTAIN DEFENDANTS, MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT HEARING (THE "NOTICE")

**This Notice provides you with important information concerning the settlement with certain defendants (the "Settlement") in the above-captioned action (the "Delphi Securities Action"), which has been brought against Delphi Corporation ("Delphi") and other persons and entities (identified below) relating to publicly traded securities issued by Delphi during the period described below. Your rights may be affected by this Notice. If you wish to participate in the Settlement you must act by _____, 2008. You should read this Notice carefully.**

TO:    **The "Class," consisting of all persons and entities who purchased or otherwise acquired publicly traded securities of Delphi Corporation, including securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities"), during the period between March 7, 2000 and March 3, 2005, inclusive (the "Class Period"), and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The Settlement resolves in part class action litigation brought by the Teachers' Retirement System of Oklahoma ("Oklahoma"), Public Employees' Retirement System of Mississippi ("Mississippi"), Raiffeisen Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen") and Stichting Pensioenfonds ABP ("ABP") (collectively, "Lead Plaintiffs"), on behalf of the Class concerning misrepresentations and omissions allegedly made by the Defendants throughout the Class Period regarding the financial condition of Delphi, an entity currently the subject of a pending Chapter 11 proceeding (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") before the Honorable Robert D. Drain.

- The Settling Defendants are: (i) Delphi; Delphi Trust I, and Delphi Trust II; (ii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively, the "Delphi Officer and Director Defendants"); and (iii) Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets Inc.,

**EXHIBIT A-1**

Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the "Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II,, the Delphi Officer and Director Defendants, and the Underwriter Defendants shall be referred to herein as the "Settling Defendants" and, along with the Lead Plaintiffs, as the "Settling Parties").

- This Settlement does not resolve the allegations against the remaining defendants: JPMorgan Chase & Co. (as successor in interest to Bank One Corporation), SETECH, Inc., BBK Ltd. and Deloitte & Touche LLP (the "Non-Settling Defendants"). The Delphi Securities Action is continuing against the Non-Settling Defendants.

- The Settlement provides for a recovery with a potential value of $295,100,000, comprised of the following payments made by or on behalf of the Settling Defendants: i) A claim that will be paid in Delphi Plan Currency with a potential value of $204,000,000 ("Delphi Consideration"); ii) $78,600,000 in cash on behalf of the Delphi Officer and Director Defendants; iii) $1,500,000 in cash by or on behalf of certain of the Underwriter Defendants; and iv) contingent payments of a maximum of $11,000,000, also to be paid on behalf of the Delphi Officer and Director Defendants (collectively, the "Settling Defendants").

- As Delphi is currently a debtor and debtor in possession in the Delphi Bankruptcy Case, the Settlement is also contingent upon the approval by the Bankruptcy Court of Delphi's plan of reorganization (the "Delphi Plan of Reorganization"), which is currently scheduled to be heard by the Bankruptcy Court on November 19, 2007. If the Bankruptcy Court approves the Delphi Plan of Reorganization, which will be consistent with and incorporate the Settlement, the Settling Parties can proceed with the Settlement. If the Bankruptcy Court does not approve the Delphi Plan of Reorganization, the Settling Parties will revert to their litigation positions as of August 15, 2007. The Delphi Consideration will be paid by Delphi upon its emergence from the Delphi Bankruptcy Case in accordance with the Delphi Plan of Reorganization. At this time, Co-Lead Counsel believe that the Delphi Plan Currency will be comprised of common stock in the reorganized Delphi ("Delphi Settlement Shares") and cash. However, the allocation between cash and stock, and any other form of consideration, and the actual value of the Delphi Plan Currency, will not be confirmed until the Bankruptcy Court approves the Delphi Plan of Reorganization. (See Response to Question ___, below for more information).

- The Class will also receive interest on the cash payments described herein ("Cash Settlement Amount"). The Cash Settlement Amount plus interest, plus the Delphi Consideration are referred to herein as the Gross Settlement Fund. The Gross Settlement Fund, less any award of attorneys' fees, reimbursement of litigation expenses and other Court-approved costs (the "Net Settlement Fund"), will be distributed solely to Class Members who timely submit acceptable Proofs of Claim (see Response to Question ___ below).

- The Delphi Consideration is subject to a possible Reserve ("Reserve"). (See Response to Question ___ below.)

- A separate consolidated action brought under the Employee Retirement Income Securities Act (the "ERISA Action"), which is also pending in the Court and is coordinated with the Delphi Securities Action, is being settled contemporaneously herewith. The Settling Parties are seeking to gain approval of this Settlement and a settlement in the ERISA Action contemporaneously; it is a condition of this Settlement that the Court grant final approval of the ERISA settlement.

- In exchange for the payments set forth above, the Class shall release any and all claims against the Settling Defendants and the Released Parties (defined below).

2

- The Settling Parties disagree with Lead Plaintiffs on the amount of damages, if any, that could have been recovered if the Class prevailed on each claim at trial. Lead Plaintiffs estimate that if all Class Members make a claim against the Gross Settlement Fund, the average payment to Class Members will be $0.42 per share of Delphi common stock, based upon an estimate of 562 million outstanding Delphi shares as of the last day of the Class Period and after taking into consideration the relative average payment that would be paid to Authorized Claimants who purchased Delphi Notes during the Class Period (limited to 18.3% of the Net Settlement Fund pursuant to the plan of allocation set forth in Question 9 below). **Please note that these amounts are only estimates**.

- Co-Lead Counsel intend to seek an award of attorneys' fees of up to 18%, in the same percentages of cash and stock, or other consideration paid as part of the Delphi consideration, of the Settlement Fund, plus interest earned at the same rate earned by the Class on the cash portion of the Settlement Fund. Co-Lead Counsel have been litigating this case without any payment whatsoever. In addition, at the final hearing, Co-Lead Counsel will seek reimbursement of the litigation expenses they have incurred in connection with the prosecution of this Delphi Securities Action, which will not exceed $1,300,000. If the Court approves Co-Lead Counsel's fee and expense application, the average reduction to the recovery per share of Delphi common stock will be approximately $0.11.

- In reaching the Settlement, Lead Plaintiffs and the Settling Defendants have avoided the cost and time of a trial and Lead Plaintiffs have agreed to the Settlement to avoid the risk of the dismissal of some or all of the claims of the Class against the Settling Defendants. The Settling Defendants do not believe that they violated the federal securities laws, deny all allegations of wrongdoing asserted against them, and deny that any of Delphi's public statements were materially false or misleading. They have also asserted affirmative defenses to the claims alleged in this case. Accordingly, the Settling Defendants assert that they are not liable to the Class for any amount of damages.

| YOUR LEGAL RIGHTS AND OPTIONS: | |
|---|---|
| **SUBMIT A CLAIM FORM (January 15, 2008)** | This is the only way to receive a payment in the Settlement. A copy of the Proof of Claim form is enclosed, and is also available at www.delphiclasssettlement.com. See Question 7 below. |
| **EXCLUDE YOURSELF (October 29, 2007)** | You will not receive any payment in connection with this Settlement. This is the only option that allows you ever to be part of any other lawsuit against the Settling Defendants and/or the Released Parties concerning the legal claims being released in the Settlement. However, as further explained below, if you exclude yourself, you still may not be able to pursue a lawsuit arising out of the Settled Claims against at least some of the Settling Defendants or the Released Parties as a result of the approval of the Delphi Plan of Reorganization. *See* Response to Question __, below. |
| **OBJECT (October 29, 2007)** | File with the Clerk of Court your written concerns or objections to the Settlement, the Bar Order, the Plan of Allocation, or the requested attorneys' fees and reimbursement of litigation expenses. *See* Response to Question 13 below. |
| **ATTEND A HEARING (November 13, 2007)** | Ask to speak in Court about the fairness of the Settlement, the Bar Order, or the Plan of Allocation or the requested attorneys' fees and reimbursement of expenses. *See* Response to Question 15 below. |
| **DO NOTHING** | If you are a Class Member and you do not either submit a Proof of Claim form or request exclusion, you will be bound by the release of the Settling Defendants and Released Parties, you will receive no payment, and you will not be able to bring or pursue any Settled Claims in any other lawsuit or arbitration against the Released Parties. |

- These rights and options **– and the deadlines to exercise them** – are explained in this Notice. Please note the date of the Fairness Hearing – currently scheduled for November 13, 2007 – is subject to change without further notice. If you plan to attend the hearing, you should check the website, www.delphiclasssettlement.com, or with Co-Lead Counsel as set forth herein to be sure that no change to the date and time of the hearing has been made.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made to Class Members only if certain conditions set forth in the Stipulation are satisfied, including the Court approving the Settlement and that approval being upheld in appeals that are filed, if any.

- Further information regarding the Settlement may be obtained by contacting Co-Lead Counsel: Nix, Patterson & Roach, LLP, Bradley E. Beckworth, 205 Linda Drive, Daingerfield, Texas 75638, (903) 645-7333; Bernstein Litowitz Berger & Grossmann LLP, Jeffrey N. Leibell, 1285 Avenue of the Americas, New York, New York 10019, 212-554-1400; Schiffrin Barroway Topaz & Kessler, LLP, Michael K. Yarnoff, 280 King of Prussia Road, Radnor, PA 19087, 610-667-7600; and Grant & Eisenhoffer P.A., Stuart M. Grant, 485 Lexington Avenue, 29th Floor, New York, New York 10017, (646) 722-8500.

**[END OF COVER PAGE]**

| WHAT THIS NOTICE CONTAINS |
|---|

1.  Why did I receive this notice package? ...............................................................................................
2.  What is this lawsuit about?.................................................................................................................
3.  Why is this Delphi Securities Action a class action? .......................................................................
4.  Why is there a Settlement? ...............................................................................................................
5.  How do I know if I am included in the Settlement?...........................................................................
6.  What if I am still not sure whether I am included as a Class Member? ...........................................
7.  What does the Settlement provide? ..................................................................................................
8.  Payment pursuant to the Settlement ................................................................................................
9.  How can I receive a payment in the Settlement?..............................................................................
10. When will I receive my payment in the Settlement?.........................................................................
11. What am I giving up to receive a payment in the Settlement?..........................................................
12. What is the effect of the Bar Order in this Delphi Securities Action?
13. How do I exclude myself from the Settlement?.................................................................................
14. Do I have a lawyer in the Delphi Securities Action?........................................................................
15. How will the lawyers for the Class in the Settlement be paid?.........................................................
16. How do I notify the Court if I am opposed to any part of the Settlement or the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses in the Settlement? .........................................
17. When and where will the Court decide these matters? ....................................................................
18. Am I required to appear at the final hearing and may I speak? .......................................................
19. What will happen if I am a Class Member in the Delphi Securities Action and I do nothing at all? ....................

**BASIC INFORMATION**

# BASIC INFORMATION

| 1. Why did I receive this notice package? |
|---|

You or someone in your family may have purchased or otherwise acquired Delphi Securities between March 7, 2000 and March 3, 2005, inclusive. If the description above applies to you, you may be part of the Class and may have a right to know about the proposed Settlement of the Delphi Securities Action and about all of your options.

4

2. What is this lawsuit about?

The Delphi Securities Action was initially filed on March 7, 2005 in the United States District Court for the Southern District of New York. The Court subsequently appointed the Lead Plaintiffs to represent the Class, and approved Lead Plaintiffs' selection of Co-Lead Counsel.

On September 30, 2005, following an extensive investigation of their claims, including numerous interviews of former Delphi employees and current and former employees of entities with which Delphi engaged in transactions during the Class Period, Lead Plaintiffs filed the 257-page Consolidated Class Action Complaint ("Complaint"). The Complaint was filed more than one year before the Securities and Exchange Commission ("SEC") filed its complaint, which was not filed until October 30, 2006.

The Complaint asserts claims against Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and Director Defendants, the Underwriter Defendants and the Non-Settling Defendants, and sets forth in detail the manner in which Defendants carried out the alleged scheme to inflate the price of Delphi Securities. More specifically, in the Complaint, Lead Plaintiffs assert claims for alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The Complaint alleges that Defendants issued false and misleading statements and made material omissions regarding Delphi's revenue, inventory, expenses and earnings (among other financial disclosures) and its financial condition during the Class Period. The Complaint alleges that, as a result of the false and misleading statements, the value of Delphi Securities was inflated, and that members of the Class who purchased or acquired those securities were damaged when the truth about Delphi's ongoing revenue stream and financial condition was revealed and the value of its securities dropped.

Shortly after Lead Plaintiffs filed the Complaint, on October 8, 2005 and October 14, 2005, Delphi and certain of its subsidiaries sought bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. The Delphi Bankruptcy Case is pending before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York.

Delphi's filing for bankruptcy created complications in the prosecution of Lead Plaintiffs' claims, and, due to the fact that a bankruptcy estate has limited funds available to finance a settlement, it also created a possible hurdle to recovery as well. However, Co-Lead Counsel took immediate and effective action to ensure that the Class would receive full representation in the Bankruptcy Court, including the retention of one of the foremost bankruptcy experts in this field. Thereafter, Co-Lead Counsel followed closely the Chapter 11 proceedings and pursued two significant matters through motion practice, depositions, and summary trials before the Bankruptcy Court. As set forth herein, these efforts paid off, as Co-Lead Counsel demonstrated through their perseverance that the interests of Lead Plaintiffs and the Class would not be subjugated to the interests of Delphi's other stakeholders. As a result, this Settlement is being funded in large part by the Company. Such payments by a bankruptcy estate are extremely rare in securities class action settlements generally.

The Delphi Plan of Reorganization is currently scheduled for a hearing on its confirmation by the Bankruptcy Court on November 19, 2007. If the Bankruptcy Court approves the Delphi Plan of Reorganization, which incorporates and is consistent with the Settlement, the reorganized Delphi could emerge from the Delphi Bankruptcy Case prior to the end of 2007.

On December 12, 2005, the Judicial Panel on Multidistrict Litigation transferred the consolidated action pending before Judge Buchwald in the Southern District of New York to the Honorable Gerald E. Rosen in the United States District Court for the Eastern District of Michigan. On March 10, 2006, the Defendants moved to dismiss the Complaint. Lead Plaintiffs opposed those motions on May 12, 2006. At the time this Settlement was reached, these motions were still pending.

On April 11, 2005, a putative class action was filed in the United States District Court for the Southern District of Florida against certain of the Defendants under the caption Bernstein v. Delphi Trust I, et al., No. 9:05-CV-80307 (KLR) (the "Bernstein Action"). On July 20, 2005, the court appointed plaintiff Sidney Bernstein as lead plaintiff in the Bernstein Action and appointed his selection of counsel as co-lead counsel in the Bernstein Action (the "Bernstein Order"). On August 29, 2005, the Southern District of Florida stayed the Bernstein Action pending transfer of all related actions by the multidistrict litigation panel. On October 16, 2006, the Court granted Lead Plaintiffs' motion to vacate the Bernstein Order and affirmed the Lead Plaintiff Appointment Order. As a condition of this Settlement, the Bernstein Action will be finally consolidated with the Delphi Securities Action and dismissed on the Settlement Effective Date.

In addition, in early 2007, Lead Plaintiffs moved for and won a partial modification of the PSLRA's automatic discovery stay, and were able to request documents from Delphi, Deloitte, Bank One, BBK, SETECH, Inc., Mr. Battenberg, Mr. Blahnik, Mr. Dawes, Mr. Free, and third parties General Motors Corporation and Electronic Data Services Corporation. These Defendants (and General Motors) have thus far produced approximately one million pages of documents to Lead Plaintiffs.

Based upon Lead Plaintiffs' independent investigation and the significant volume of documents and information Lead Plaintiffs received in discovery, Lead Plaintiffs and Co-Lead Counsel believe that the Settlement, which provides for one of the largest recovery from a bankrupt entity ever obtained for a class of securities plaintiffs, is an excellent recovery for Class Members under these circumstances. Delphi is the subject of a Chapter 11 proceeding, and the insurance proceeds that are available to either fund a settlement or satisfy a verdict are only a small percentage of the damages alleged to have been suffered by the Class. As stated, a significant sum is being contributed to this Settlement by Delphi. In addition, Co-Lead Counsel believe that the existence of indemnification rights running between Delphi and certain of the Delphi Officer and Director Defendants would have foreclosed the possibility of settling the Delphi Securities Action with Delphi without Delphi being able to obtain a global compromise of all potential claims in the Delphi Securities Action that otherwise could have required Delphi to pay additional funds to resolve the Delphi Securities Action. Based on their evaluation, Lead Plaintiffs and Co-Lead Counsel have determined that the settlement set forth in this Stipulation is fair, reasonable and adequate and in the best interests of the Class.

The Settling Defendants, while affirmatively denying wrongdoing, fault and liability, consider it desirable and in their best interests that the Delphi Securities Action be dismissed against them according to the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation, and to enable Delphi to emerge from bankruptcy protection.

## 3. Why is the Delphi Securities Action a Class Action?

In a Class Action, one or more people or entities called a lead plaintiff or a representative plaintiff, sue on behalf of other investors who have similar claims based upon their transactions in a given security. All of those people and/or entities are referred to collectively as a "Class," or individually as a "Class Member." One court resolves the issues for all Class Members, except for those persons or entities who exclude themselves from the Class (as explained below).

## 4. Why is there a Settlement?

The Court did not decide in favor of either the Lead Plaintiffs or the Settling Defendants in this Delphi Securities Action. Instead, Lead Plaintiffs and the Settling Defendants agreed to settle before obtaining final rulings from the Court or a jury in the Delphi Securities Action. As explained above, the Lead Plaintiffs and Co-Lead Counsel believe the Settlement is beneficial for all Class Members. The Settling Defendants consider it desirable and in their best interests that the Delphi Securities Action be dismissed against them under the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation and to enable Delphi to emerge from bankruptcy protection.

## 5. How do I know if I am included in the Settlement?

You are a Class Member only if you purchased or acquired Delphi Securities during the Class Period. The Class was certified by the Court, for settlement purposes only, as follows:

> *All persons and entities who purchased or otherwise acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities"), between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement*

You are not a Class Member if you are one of the following: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal representatives, heirs, successors or assigns of any such excluded party.

Also excluded from the Class are Persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in this Notice as described in Question __ below.

If one of your mutual funds purchased or owns Delphi Securities that alone does not make you a Class Member. Contact your broker to see whether you purchased Delphi Securities during the Class Period.

## 6. What if I still am not sure whether I am included?

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-918-0998 or visit www.delphiclasssettlement.com for more information. Or you can fill out and return the claim form described on page __, in Question ___, to see if you qualify.

## 7. What does the Settlement Provide?

The Settlement Recovery: The Settlement provides for a recovery with a potential value of $295,100,000, comprised of the following payments made by or on behalf of the Settling Defendants: i) A claim that will be paid in Delphi Plan Currency with a potential value of $204,000,000 ("Delphi Consideration); ii) $78,600,000 in cash on behalf of the Delphi Officer and Director Defendants; iii) $1,500,000 in cash by or on behalf of certain of the Underwriter Defendants; and iv) contingent payments of a maximum of $11,000,000, also to be paid on behalf of the Delphi Officer and Director Defendants (collectively, the "Settling Defendants").

At this time, Lead Plaintiffs expect that the Delphi Consideration will consist of cash and shares of common stock in the reorganized Delphi. However, the Delphi Plan Currency must be paid to the Class by Delphi in accordance with the Delphi Plan of Reorganization, which may provide for payment to general unsecured creditors in forms other than cash and stock, namely forms of debt securities such as notes or warrants. The value and allocation of the Delphi Consideration will not be confirmed until the Bankruptcy Court approves the Delphi Plan of Reorganization. (See Response to Question ___, below for more information). The value of the Delphi Consideration also may be reduced if certain claims filed in the Bankruptcy Case by or on behalf of a Class Member who has opted-out of the Settlement becomes an Allowed Claim in the Bankruptcy Case pursuant to certain criteria. Whether any of those claims will be an Allowed Claim, and the amount of any such Allowed Claims ("Reserve"), will be determined by the Bankruptcy Court.

Contingent Payment: Also pursuant to the Stipulation, the Class will have the opportunity to receive up to an additional $11,000,000 ("Contingent Payment"). More specifically, certain of the Settling Defendants' insurers will set aside $10,000,000 into a fund to pay for potential costs and fees in the event any of the non-indemnified officers and directors incur any costs or attorneys' fees in connection with any federal criminal proceedings following an indictment. Those funds have already been set aside, and, if no indictment(s) occurs by January 1, 2009, the full amount of this fund, plus interest from the initial funding date, may revert to the Settlement Fund for the benefit of the Class, except upon a showing of good cause by such officers and directors to delay such payment pending potential federal action. If any of the $10,000,000 is spent, the remaining funds, plus interest, shall be paid into the Gross Settlement Fund.

In addition, the Class may also receive a cash payment consisting of a percentage of the cash remaining on one of the insurance policies after payment of all outstanding legal bills ("Residual Amount"). The Residual Amount will be shared with the Plaintiffs in the ERISA action ("ERISA Plaintiffs") in a ratio of 76.3 to the Class and 23.7 to the ERISA Plaintiffs. Co-Lead Counsel estimates that the Residual Amount could enhance the Settlement Fund by no more than $1 million. **While Lead Plaintiffs expect that the Contingent Payment will result in additional recoveries to be added to the Gross Settlement Fund, no guarantees can be offered in this regard.**

The cash amounts received, plus interest, plus the other forms of Delphi Consideration, is referred to herein as the Gross Settlement Fund. Net Settlement Fund will be distributed solely to Class Members who submit acceptable Proofs of Claim (see Response to Question ___ below).

The Settlement, if approved, will result in the dismissal of the Complaint against the Settling Defendants and the release by all Class Members of all Settled Claims against the Released Parties, as defined below in the Response to Question ___. However, the Settlement is contingent upon the approval by the Bankruptcy Court of the Delphi Plan of Reorganization, which incorporates and is consistent with the Settlement, which will be heard by the Bankruptcy Court on November 19, 2007. If the Bankruptcy Court approves the Delphi Plan of Reorganization, the Settling Parties will proceed with the Settlement. If the Bankruptcy Court does not approve the Delphi Plan of Reorganization, the Settling Parties will revert to their litigation positions as of August 15, 2007.

As stated above, Co-Lead Counsel estimates that the average recovery under the Settlement will be $0.42 per share of Delphi common stock, taking into account that a maximum of 18.3% of the Net Settlement Fund may be paid to Authorized Claimants that purchased Notes, and before the aforementioned deductions. The actual recovery of any particular Class Member will depend on the following: (1) the number of claims filed; (2) when a Class Member purchased or acquired Delphi Securities during the Class Period; (3) whether a Class Member sold or retained their Delphi Securities during the Class Period and if sold, when that transaction took place; (4) taxes and administrative costs, including the costs of this Notice; and (5) the amount awarded by the Court for attorneys' fees and expenses. Distributions to Class Members will be made based on the Plan of Allocation described below in Response to Question ___, or as otherwise approved by the Court.

The Settling Parties do not agree with Lead Plaintiffs as to the maximum amount that the Class could have recovered had Lead Plaintiffs prevailed at trial and on appeal. In this regard, the Settling Parties disagree with Lead Plaintiffs regarding the following issues in connection with liability and damages: (1) whether the Settling Defendants made any false and misleading statements or whether such statements could be attributed to them; (2) whether the Settling Defendants engaged in any deceptive or manipulative conduct; (3) whether the Settling Defendants' conduct or statements were actionable under any law, including the federal securities laws; (4) whether the Settling Defendants made the statements or engaged in the conduct with the requisite knowledge to constitute fraud; (5) the appropriate economic model for determining the amount by which Delphi Securities were allegedly artificially inflated (if at all) during the Class Period; (6) the extent to which the various matters that Lead Plaintiffs allege were materially false or misleading (if at all) influenced and artificially inflated (if at all) the trading price of Delphi Securities at various times during the Class Period; and (7) the extent to which external factors, such as general market conditions, influenced the trading price of Delphi Securities at various times during the Class Period.

8

The Net Settlement Fund will be divided among all Class Members who submit valid proof of claim forms before the deadline for submission.

**6.  Payment pursuant to the Settlement**

The proposed Plan of Allocation provides for distribution of the Net Settlement Fund to Authorized Claimants as follows:

Each Person claiming to be a claimant entitled to share in the Net Settlement Fund ("Authorized Claimant") shall be required to submit a separate Proof of Claim signed under penalty of perjury and supported by such documents as specified in the Proof of Claim as are reasonably available to the Authorized Claimant.

All Proof of Claim forms must be postmarked or received by January 15, 2008, addressed as follows:

**In re Delphi Corporation Securities Litigation Settlement**
**c/o The Garden City Group, Inc.**
**Claims Administrator**
**P.O. Box 9185**
**Dublin, OH 43017-4185**

Unless otherwise ordered by the Court, any Class Member who fails to submit a properly completed and signed Proof of Claim within such period as may be ordered by the Court shall be forever barred from receiving any payments pursuant to the Stipulation, but will in all other respects be subject to the provisions of the Stipulation and the final judgment entered by the Court.

The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants").

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.

The Plan of Allocation generally measures the amount of loss that a Class Member can claim under the Settlement for the purpose of making *pro rata* allocations of the cash in the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim. The Plan of Allocation is not a formal damage analysis. The following proposed Plan of Allocation reflects plaintiffs' allegations that the price of Delphi common stock was artificially inflated during the Class Period (March 7, 2000 – March 3, 2005) due to misrepresentations and/or omissions regarding Delphi's earnings. The plaintiffs allege that corrective disclosures on July 17, 2002, June 13, 2003, March 4, 2005 and March 7, 2005 removed artificial inflation from the price of Delphi common stock.

The Plan of Allocation covers the following Delphi securities:  (i) common stock; (ii) 6.55% Unsecured Notes due June 15, 2006; (iii) 6.5% Unsecured Notes due August 15, 2013; (iv) 8.25% Delphi Trust I Preferred Securities due October 15, 2033; and (v) Adjustable Rate Delphi Trust II Preferred Securities due November 15, 2033 (collectively, the "Delphi Securities").

9

A Delphi Security must be held past a corrective disclosure in order to be eligible for a recovery in the Settlement; that is, a Delphi Security purchased or otherwise acquired during the Class Period from March 7, 2000 through July 16, 2002 must be held until or beyond July 17, 2002, the first trading day after the first corrective disclosure. Similarly, a Delphi Security purchased or otherwise acquired on or after July 17, 2002 must be held until June 13, 2003, the day of the second corrective disclosure, and Delphi Securities purchased or otherwise acquired on or after June 13, 2003 must be held until March 4, 2005, the last day of the Class Period. If you did not hold the Delphi Security through the dates indicated, the Recognized Loss per share is $0. The Recognized Loss for these transactions will be calculated as zero because it has been determined that the artificial inflation between the each disclosure and arising from the circumstances underlying the allegations of Lead Plaintiffs' Complaint was constant.

Recognized Claims will be calculated for the purposes of the Settlement as follows:

**To the extent a Claimant had a gain from his, her or its overall transactions in the Delphi Securities during the Class Period, the value of the Recognized Claim will be zero. Such claimants will in any event be bound by the Settlement. You may wish to consider this when deciding whether to opt out.**

## Common Stock Purchases:

1. For shares of Delphi common stock purchased between March 7, 2000 and July 16, 2002, inclusive, and:
   a. Sold on or before the close of trading on July 16, 2002, an Authorized Claimant's Recognized Claim is zero.
   b. Sold at a loss between July 17, 2002, and June 12, 2003, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus the sales price; or (ii) $0.84 per share.
   c. Sold at a loss between June 13, 2003, and March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus the sales price; or (ii) $1.55 per share.
   d. Held as of the close of business on March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus $5.15; or (ii) $2.73 per share.

2. For shares of Delphi common stock purchased between July 17, 2002 and June 12, 2003, inclusive, and:
   a. Sold on or before the close of trading on June 12, 2003, an Authorized Claimant's Recognized Claim is zero.
   b. Sold at a loss between June 13, 2003, and March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus the sales price; or (ii) $0.71 per share.
   c. Held as of the close of business on March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus $5.15; or (ii) $1.89 per share.

3. For shares of Delphi common stock purchased between June 13, 2003 and March 3, 2005, inclusive, and:
   a. Sold on or before the close of trading on March 3, 2005, an Authorized Claimant's Recognized Claim is zero.
   b. Held as of the close of business on March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus $5.15; or (ii) $1.18 per share.

## Note and Preferred Security Purchases:

**Recoveries Pursuant to the Delphi Plan of Reorganization: The Recognized Claims set forth below for Note and Preferred Security Purchases shall be reduced dollar-for-dollar by any recoveries obtained through the Delphi Plan of Reorganization as a holder of such Notes and Preferred Securities (as such claims are classified in the Delphi Plan of Reorganization) where such Notes and Preferred Securities were purchased or otherwise acquired during the Class Period. Please provide this information where indicated on your Proof of Claim.**

10

1.  For Delphi 6.55% Unsecured Notes due June 15, 2006 ($1,000 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
    a.  Sold at a loss on or before the close of trading on September 30, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $998.75 per $1,000 Note and (b) the purchase price; less (ii) the sale price.
    b.  Sold at a loss between October 1, 2005 and October 16, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $998.75 per $1,000 Note and (b) the purchase price; less (ii) the greater of (a) $735.00 per $1,000 Note and (b) the sale price.
    c.  Held as of the close of business on October 16, 2006, an Authorized Claimant's Recognized Claim is zero.

2.  For Delphi 6.5% Unsecured Notes due August 15, 2013 ($1,000 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
    a.  Sold at a loss on or before the close of trading on September 30, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $988.06 per $1,000 Note and (b) the purchase price; less (ii) the sale price.
    b.  Sold at a loss between October 1, 2005 and November 6, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $988.06 per $1,000 Note and (b) the purchase price; less (ii) the greater of (a) $670.00 per $1,000 Note and (b) the sale price.
    c.  Held as of the close of business on November 6, 2006, an Authorized Claimant's Recognized Claim is zero.

3.  For Delphi 8.25% Trust I Preferred Securities due October 15, 2033 ($25 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
    a.  Sold at a loss on or before the close of trading on April 11, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $25 per $25 Preferred Security and (b) the purchase price; less (ii) the sale price.
    b.  Sold at a loss between April 12, 2005 and November 13, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $25 per $25 Preferred Security and (b) the purchase price; less (ii) the greater of (a) $16.85 per $25 Preferred Security and (b) the sale price.
    c.  Held as of the close of business on November 13, 2006, an Authorized Claimant's Recognized Claim is zero.

4.  For Delphi Adjustable Rate Trust II Preferred Securities due November 15, 2033 ($1,000 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
    a.  Sold at a loss on or before the close of trading on September 30, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $1,000 per $1,000 Preferred Security and (b) the purchase price; less (ii) the sale price.
    b.  Sold at a loss between October 1, 2005 and December 6, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $1,000 per $1,000 Preferred Security and (b) the purchase price; less (ii) the greater of (a) $300.00 per $1,000 Preferred Security and (b) the sale price.
    c.  Held as of the close of business on December 6, 2006, an Authorized Claimant's Recognized Claim is zero.

In the event a Class Member has more than one purchase or sale of the Delphi Securities, all purchases and sales of each type of security shall be matched on a First-In-First-Out ("FIFO") basis by type, Class Period sales will be matched first against any Delphi Securities held at the beginning of the Class Period, and then against purchases in chronological order, beginning with the earliest purchase made during the Class Period.  Purchases and sales of Delphi Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, devise or operation of law of Delphi Securities during the Class Period shall not be deemed a purchase or sale of these Delphi Securities for the calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase of such Delphi Securities unless specifically provided in the instrument of gift or assignment.

Each Authorized Claimant shall be allocated *pro rata* shares of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants. Each Authorized Claimant shall be paid an amount determined by multiplying the total in the Net Settlement Fund by a fraction the numerator of which shall be his, her or its Recognized Claim and denominator of which shall be the Total Recognized Claims of all Authorized Claimants. This computation weighs each Class Member's claim against every other Class Member's claim. Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund based on his, her or its Recognized Claim.

The amount of a Class Member's Recognized Claim as computed above is not intended to be an estimate of what a Class Member might have been able to recover at trial, and it is not an estimate of the amount that will be paid pursuant to this Settlement. Instead, this computation is only a method to weight Class Members' claims against one another. Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund based on his, her or its Recognized Claim.

To the extent a Claimant had a gain from his, her or its overall transactions in the Delphi Securities during the Class Period, the value of the Recognized Claim will be zero. Such Claimants will in any event be bound by the Settlement. To the extent a Claimant suffered an overall loss on his, her or its overall transactions in the Delphi Securities during the Class Period, but that loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual loss.

For purposes of determining whether a Claimant had a gain from his, her or its overall transactions in Delphi securities during the Class Period or suffered a loss, the Claims Administrator shall: (i) total the amount the Claimant paid for all Delphi Securities purchased during the Class Period (the "Total Purchase Amount"); (ii) match any sales of Delphi Securities during the Class Period first against the Claimant's opening position in the Delphi Securities (the proceeds of those sales will not be considered for purposes of calculating gains or losses); (iii) total the amount received for sales of the remaining Delphi Securities during the Class Period (the "Sales Proceeds"), and (iv) ascribe holding prices for Delphi Securities purchased during the Class Period and still held at the end of the Class Period, with such holding prices being $5.15 per share of common stock, $880.84 per $1,000 6.5% Unsecured Note due August 15, 2003, $19.05 per $25 8.25% Delphi Trust I Preferred Security due October 15, 2003, and $750.38 per $1,000 Adjustable Rate Delphi Trust II Preferred Security due November 15, 2033 (the "Holding Value"). The difference between (x) the Total Purchase Amount ((i) above) and (y) the sum of the Sales Proceeds ((iii) above) and the Holding Value ((iv) above) will be deemed a Claimant's gain or loss on his, her or its overall transactions in the Delphi Securities during the Class Period.

Class Members who do not submit acceptable Proofs of Claim will not share in the settlement proceeds. Class Members who either do not submit a request for exclusion or do not submit an acceptable Proof of Claim will nevertheless be bound by the Settlement and the Judgment of the Court dismissing the Delphi Securities Action.

Distributions will be made to Authorized Claimants only after the Court has finally approved the Settlement, the Effective Date has occurred and after all claims have been processed. If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution. If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit organizations designated by Co-Lead Counsel after notice to the Courts and subject to direction, if any, by the Courts.

Lead Plaintiffs, the Settling Defendants, their respective counsel, and all other Released Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

### Composition of and Distributions from the Net Settlement Fund

As set forth above, the Net Settlement Fund is comprised of recoveries from or on behalf of the Settling Defendants for claims asserted by Class Members for purchasers of all Delphi Securities. Lead Plaintiffs and Lead Counsel, in consultation with Lead Plaintiffs' damages expert, have divided the Net Settlement Fund into the following component parts (each, a "Component Net Settlement Fund") to fairly and reasonably reflect the relevant risks to recovery, and estimated recoverable damages, from the Settling Defendants:

| | |
|---|---|
| Common Stock | 81.71% |
| 6.55% Unsecured Notes due June 15, 2006 | 2.46% |
| 6.5% Unsecured Notes due August 15, 2013 | 4.95% |
| 8.25% Trust I Preferred Securities due October 15, 2033 | 7.61% |
| Adjustable Rate Trust II Preferred Securities due November 15, 2033 | 3.27% |

To the extent that the funds available in any Component Net Settlement Fund attributable to Notes and Preferred Securities exceeds the aggregate amount of Recognized Claims for that fund, such excess shall be allocated among the other Component Net Settlement Funds based upon the percentages set forth above.

### OTHER PROVISIONS OF THE PLAN

To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's recognized claim, as defined below. If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's recognized claim bears to the total of the claims of all Authorized Claimants. If payment calculates to less than $10, than such payment shall be equal to $10. Payment in this manner shall be deemed conclusive against all Authorized Claimants.

The date of purchase, acquisition or sale is the "contract" or "trade" date as distinguished from the "settlement" date. The determination of the price paid and the price received shall be exclusive of all commissions, taxes, fees and charges. Therefore, you need to list all purchases, acquisitions, and sales of Delphi Securities during the relevant time period. Brokerage commissions and transfer taxes paid by you in connection with your purchase, acquisition and sale of Delphi Securities should be included in the "total purchase price" and net of the "total proceeds."

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any Class Member on equitable grounds. No person shall have any claim against the Lead Plaintiffs or their counsel or any claims administrator or other agent designated by the Lead Plaintiffs or their counsel, or against Settling Defendants or Settling Defendants' counsel, based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court. All Class Members who fail to complete and file a valid and timely Proof of Claim shall be barred from participating in distributions from the Settlement Fund (unless otherwise ordered by the Court), but

otherwise shall be bound by all of the terms of the Stipulation, including the terms of any judgment(s) entered and the releases given.

The Settlement Fund, less any deductions for fees and costs allowed by the Court, taxes due and other deductions pursuant to the terms of the Stipulation, shall be maintained by the Escrow Agent for the benefit of the Class, as provided in the Stipulation.

Under no circumstances will a Recognized Loss exceed the out-of-pocket loss, not including commissions, taxes or other fees.

### 9. How can I receive a payment in the Settlement?

To qualify for payment, you must submit a Proof of Claim form. A Proof of Claim form is enclosed with this Notice. You may also obtain a Proof of Claim form on the Internet at www.delphiclasssettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than January 15, 2008.

### 10. When will I receive my payment in the Settlement?

The Court will hold a hearing on November 13, 2007, at _____ a.m./p.m. to decide whether to approve the Settlement. Even if the Court approves the Settlement, it could take more than a year before the Net Settlement Fund is distributed to the Class Members because the Claims Administrator must process all of the Proof of Claim forms, audit the results and follow up to cure any deficient claims. As a result, the processing of claims is a complicated process which can take many months to complete. In addition, the Net Settlement Fund cannot be distributed until the Delphi Plan of Reorganization has been approved by the Bankruptcy Court and any appeals in the Bankruptcy Court have been resolved.

### 11. What am I giving up to receive my payment in the Settlement?

Unless you exclude yourself, you are agreeing to remain in the Class and that means that if the Settlement is approved you will release all "Settled Claims" against the "Released Parties" (as defined below and in the Stipulation which is available on the internet at www.delphiclasssettlement.com or through the mail upon request, and in the Proof of Claim Form). This means that you no longer have the right to pursue these claims in a court of law against the Settling Defendants or any of the Released Parties. If you remain a member of the Class all of the Court's orders will apply to you and legally bind you.

"Settled Claims" means any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted in the Delphi Securities Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them or the successors and assigns of any of them against any of the Released Parties which arise out of, are based upon, or relate to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action and related to the purchase, acquisition, or holding of Delphi Securities.

"Released Parties" means (i) any and all of the Settling Defendants, Thomas Wyman, and Shoichiro Irimajiri, their past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees,

attorneys, advisors, investment advisors, investment bankers, underwriters (including but not limited to Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC), insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi and its affiliates in the Bankruptcy Case; and (ii) General Motors Corporation, its past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which General Motors Corporation has a controlling interest or which is related to or affiliated with General Motors Corporation, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, or assigns of General Motors Corporation. Notwithstanding the foregoing, the definition of Released Parties shall not include any of the Non-Settling Defendants and Electronic Data Systems Corporation ("EDS"). In addition, the inclusion of General Motors as a Released Party shall not be construed to release any claims asserted in *Deka Investment GmbH, et al. v. General Motors Corporation, et al.*, No. 2:06-cv-12258 (GER) (E.D. Mich.).

"Unknown Claims" means any and all Settled Claims which any of the Lead Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

## 12. What is the effect of the Bar Order?

The Settling Parties have agreed to "bar" all claims for contribution and indemnification, among other claims, that arise out of or are related to the Settled Claims (as defined above) against any of the Released Parties (the "Bar Order"). This Bar Order includes a provision modeled after a mandatory provision in the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(f)(7)(A)  The practical effect of this Bar Order is that no person or entity receiving notice of this Bar Order may file or prosecute any lawsuit for contribution or indemnification against any of the Released Parties that is (i) related to or arises out of the Settled Claims or this lawsuit, or (ii) arises from or relates to any person's or entity's alleged liability to the Class or any Class Member. The Bar Order also contains a provision for the reduction of any judgment that Lead Plaintiffs may obtain against any person or entity that is deemed to

arise out of or relate to the Settled Claims. In such a case, the judgment shall be reduced by an amount calculated pursuant to a formula on which the Settling Parties have agreed. The full Bar Order provision set forth in the Stipulation is set out below and may be easily accessed at www.delphiclasssettlement.com.

In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of the claims or allegations of the Delphi Securities Action or any Settled Claim (i) by any person or entity against any of the Released Parties, and (ii) by any of the Released Parties against any person or entity other than a person or entity whose liability has been extinguished by the settlement of the Released Party, are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable. In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Released Party are found to be jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of any such Released Party(s) for common damages or (ii) the amount paid to the Class by or on behalf of each such Released Party for common damages.

Complete Bar Order: Any person or entity receiving notice of the Notice, or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that would cause such person to be charged with constructive notice of the Notice (such persons, the "Barred Persons") is permanently barred, enjoined, and restrained from commencing, prosecuting, continuing, or asserting any claim against the Released Parties arising under federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise, where the claim or the alleged injury of such Barred Person is or arises from or relates to that Barred Person's or entity's alleged liability to the Class or any Class Member ("Barred Claims"); provided, however, that if: (a) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Act of 1933 ("Securities Act") for which such Barred Person and any Released Party is found to be jointly and severally liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Securities Act; or (ii) an amount that corresponds to the percentage of responsibility of any Released Party that constitute "covered persons" pursuant to 15 U.S.C. § 78u-4(f)(10)(C) for common damages pursuant to the Securities Act ; and/or (b) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Exchange Act of 1934 ("Exchange Act") for which such Barred Person and any Released Party is found to be jointly liable, that Barred Person shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Exchange Act or (ii) an amount that corresponds to the percentage of responsibility of any Released Party for common damages pursuant to the Exchange Act.

**13.  How do I exclude myself from the Settlement?**

To exclude yourself from the Settlement, you must send a letter by mail to the Claims Administrator saying that you want to be excluded from *In re Delphi Securities, Derivative and ERISA Litigation*, MDL No. 1725, Case No. 05-md-1725. If you wish to exclude yourself from the Class, be sure to include your name, address, telephone number, and signature, and mail your exclusion request postmarked no later than October 29, 2007 to:

In re Delphi Corporation Securities Litigation Settlement
c/o The Garden City Group, Inc.
Exclusions
Claims Administrator
P.O. Box 9185
Dublin, OH  43017-4185

Requests for exclusion must also list the amount and type of all Delphi Securities purchased, acquired, or sold during the Class Period, the prices paid or received, the date of each transaction and the amount or number of Delphi Securities held as of the beginning of the Class Period on March 7, 2000 and at the end of the Class Period on March 3, 2007.

You cannot exclude yourself on the website, by telephone or by e-mail.  **If you do not follow these procedures – including meeting the date for exclusion set out above – you will not be excluded from the Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement.**  You must exclude yourself even if you already have a pending case against any of the Released Parties based upon any Settled Claims.

It is very important to understand that under the circumstances of the Delphi Bankruptcy Case and Delphi's Plan of Reorganization, submitting a request for exclusion from the Settlement will not necessarily entitle you to pursue any Settled Claim against any Released Party.  If your desire is to pursue your own litigation against any of the Released Parties, you should consult with your counsel prior to excluding yourself.

If you ask to be excluded, you will not receive a Settlement payment, and you cannot object to the Settlement.  You will not be legally bound by anything that happens in this lawsuit.  You will also not participate in any recovery resulting from the Contingent Payment.

**14.  Do I have a lawyer in the case?**

The Court approved Co-Lead Counsel to represent you and the other Class Members in the Settlement.  If you need to reach an attorney at one of these firms to discuss any aspect of the Settlement, please address your inquiries to the attorneys named in Response to Question 15 below.

If you want to be represented by your own lawyer, you may hire one at your own expense.

**15.  How will the lawyers for the Class in the Settlement be paid?**

Co-Lead Counsel have litigated the Delphi Securities Action on an entirely contingent basis, and have advanced the expenses of litigation with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation. Co-Lead Counsel intend to apply for a fee out of the Settlement Fund of up to 18.3% of the Settlement Fund, in the same percentages of cash and stock as received by the Class, plus interest earned on the cash portion of the award at the same rate as the Class.  Co-Lead Counsel are also seeking reimbursement of the costs and expenses they advanced in connection with the Delphi Securities Action, in an amount that will not exceed $1,300,000.00, plus interest earned at the same rate as the Class.

**16.  How do I notify the Court if I am opposed to any part of the Settlement or the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses in the Settlement?**

If you are a Class Member you may object to any aspect of the Settlement if you do not like any part of it, including the Bar Order, the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses.

To object, you must send a letter stating that you are a Class Member, that you object to the Settlement in *In re Delphi Securities, Derivative and ERISA Litigation*, MDL No. 1725, Case No. 05-md-1725, and the reasons why you object. .

In your objection, you must include your name, address, telephone number, and your signature. You must also include information concerning your transactions in Delphi Securities during the Class Period, including the dates, prices paid or received and amounts purchased, acquired or sold and held at the end of the Class Period, so that the Court may determine that you are part of the Class and have an economic interest in any aspect of the Settlement. If you intend to present any witnesses at the Settlement Fairness Hearing, you must also so state. Your objection must be filed with the Court by October 29, 2007, and received no later than October 29, 2007, by counsel listed below:

|  |  |
|---|---|
| **Co-Lead Counsel for Plaintiffs** | **Settling Defendants' Counsel** |
| Bradley E. Beckworth, Esq.<br>Nix, Patterson & Roach, LLP<br>205 Linda Drive<br>Daingerfield, Texas 75638 | Stuart J. Baskin, Esq.<br>Brian H. Polovoy, Esq.<br>Shearman & Sterling LLP<br>599 Lexington Ave.<br>New York, NY 10022-6069 |
| Jeffrey N. Leibell, Esq.<br>Bernstein Litowitz Berger & Grossmann LLP<br>1285 Avenue of the Americas<br>New York, New York 10019 | Andrew W. Stern, Esq.<br>Sidley & Austin LLP<br>787 Seventh Ave<br>New York, NY 10019 |
| Sean Handler, Esq.<br>Schiffrin Barroway Topaz & Kessler, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | Thomas W. Cranmer, Esq.<br>Matthew P. Allen, Esq.<br>Miller, Canfield, Paddock and<br>Stone, PLC<br>150 W. Jefferson, Suite 2500<br>Detroit, MI 4822 |
| Stuart Grant, Esq.<br>Grant & Eisenhoffer P.A.<br>485 Lexington Avenue, 29th Floor<br>New York, New York 10017 | |

**17.  When and where will the Court decide these matters?**

The Fairness Hearing for the Settlement will be held at _____ __.m. on November 13, 2007, at the United States District Court for the Eastern District of Michigan, Theodore Levin Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226, in Courtroom _____. At this hearing the Court will consider whether (i) the Settlement is fair, reasonable and adequate (ii) whether the claims against the Settling Defendants should be dismissed with prejudice as set forth in the Stipulation; (iii) whether the Bar Order is fair; (iv) whether the Plan of Allocation is fair and reasonable; and (v) whether the application by Co-Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved. The Court may decide to adjourn the Settlement Fairness Hearing without further notice to the Class. The Court may also decide whether to approve the Plan of Allocation and how much to award Co-Lead Counsel for attorneys' fees and reimbursement of litigation expenses.

**18.  Am I required to appear at the final hearing and may I speak?**

You do not need to attend the hearing. However, if you have filed an objection to any aspect of the Settlement as provided above, you may ask the Court for permission to speak at the Fairness Hearing for the Settlement. To do so, you must include with your objection the statement, "I hereby give notice that I intend to appear at the Fairness Hearing in *In re Delphi Securities, Derivative and ERISA Litigation*, MDL No. 1725, Case No. 05-md-1725" (the "Notice of Intention to Appear"). Be sure to include your name,

address and telephone number, identify all relevant data concerning your Delphi Securities, including the dates, prices paid or received and amounts purchased, acquired or sold, and held as of the end of the Class Period, and sign the letter. If you intend to have any witnesses testify or to introduce any evidence at the Fairness Hearing, you must list the witnesses and evidence in your objection. Your Notice of Intention to Appear must be postmarked no later than October 29, 2007, and be sent to the Clerk of the Court and the counsel listed above in the answer to Question 15. You cannot speak at the hearing if you exclude yourself.

**What will happen if I am a Class Member in the Delphi Securities Action and I do nothing at all?**

If you do not exclude yourself from the Class, and you fail to timely file a Proof of Claim, you will receive no recovery from the Net Settlement Fund. Unless you exclude yourself from the Class, you will not be able to start a lawsuit, continue to litigate a pending lawsuit, or be part of any other lawsuit against the Settling Defendants or the Released Parties for the claims released by the Settlement, ever again. However, as explained in response to Question ___ above, requesting exclusion will not ensure that you will be able to pursue a Settled Claim against any Settling Defendant or Released Party.

### SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

The Court has ordered that if you purchased or acquired Delphi Securities during the Class Period as nominee for a beneficial owner, then within seven (7) calendar days after you receive this Notice, you must either: (a) send a copy of this Notice and the accompanying Proof of Claim by first class mail to all such beneficial owners; or (b) provide a list of the names and addresses of such beneficial owners to the Claims Administrator at the following address so that the Claims Administrator can provide them with a copy of this Notice and a Proof of Claim form.

*In re Delphi Corporation Securities Litigation Settlement*
**c/o The Garden City Group, Inc.**
**Claims Administrator**
**P.O. Box 9185**
**Dublin, OH  43017-4185**

You are entitled to reimbursement of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid upon request and submission of appropriate supporting documentation.

### GETTING MORE INFORMATION

This Notice summarizes the proposed Settlement. More details are contained in the Stipulation for the Delphi Securities Action which is available at www.delphiclasssettlement.com. If you have questions regarding how to obtain copies of documents related to this Settlement, completing your Proof of Claim form, correspondence you have received from the Claims Administrator, or the calculation of your Recognized Claim, you may write to The Garden City Group at the address listed above or call it toll free at 1-800-918-0998 or.

**PLEASE DO NOT CONTACT THE COURT**

# EXHIBIT 2

**Must be Postmarked
No Later Than**
_____

**In re Delphi Corporation Securities Litigation Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9185
Dublin, OH 43017-4185
1 (800) 918-0998**



CLAIMANT IDENTIFICATION:

Claim Number:             Control Number:

# PROOF OF CLAIM

**YOU MUST COMPLETE THIS CLAIM FORM BY _____ TO BE ELIGIBLE TO SHARE IN THE
$_____ MILLION SETTLEMENT.**

| TABLE OF CONTENTS | PAGE NO. |
|---|---|
| SECTION A - CLAIMANT INFORMATION | 2 |
| SECTION B - DELPHI COMMON STOCK | 3 |
| SECTION C - DELPHI 6.55% NOTES | 4 |
| SECTION D - DELPHI 6.5% NOTES | 5 |
| SECTION E - DELPHI 8.25% TRUST I PREFERRED SECURITIES | 6 |
| SECTION F - DELPHI ADJUSTABLE RATE TRUST II PREFERRED SECURITIES | 7 |
| SECTION G - RELEASE AND SIGNATURE | 8-9 |

**IMPORTANT:** Before Completing This Proof of Claim, Please Carefully
Read the Enclosed Yellow Instruction Sheet.



## SECTION A - CLAIMANT INFORMATION

**Claimant Name(s)** (as you would like the name(s) to appear on the check, if eligible for payment)**:**

**Last 4 digits of Claimant Social Security Number/Taxpayer ID Number:**

**Name of the Person you would like the Claims Administrator to Contact Regarding This Claim** (if different from the Claimant Name(s) listed above)**:**

**Claimant or Representative Contact Information:**
The Claims Administrator will use this information for all communications relevant to this Claim (including the check, if eligible for payment). If this information changes, you <u>MUST</u> notify the Claims Administrator in writing at the address above.

**Street Address:**

**City:**

**State and Zip Code:**

**Country (Other than U.S.):**

**Daytime Telephone Number:** ( )   -      **Evening Telephone Number:** ( )   -

**Email Address:**

*(Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)*

IF YOU FAIL TO SUBMIT A <u>COMPLETE</u> CLAIM BY _____ YOUR CLAIM IS SUBJECT TO REJECTION OR YOUR PAYMENT MAY BE DELAYED.



## SECTION B - SCHEDULE OF TRANSACTIONS IN DELPHI COMMON STOCK

1.  **BEGINNING HOLDINGS:** Number of shares of Delphi common stock held at the close of business on **March 6, 2000.** *(If none, write 0), (Must be documented)*:

2.  **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi common stock during the period of **March 7, 2000** through and including **March 4, 2005.** *(Must be documented)*:

| Date(s) of Purchase or Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Purchase/Acquisition Price Per Share | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

3.  **SALES:** Sales of Delphi common stock during the period from **March 7, 2000** through and including **March 4, 2005.** *(Must be documented)*:

| Sale Date(s) (List Chronologically) (Month/Day/Year) | Number of Shares of Common Stock Sold | Sale Price Per Share | Total Sale Price (after commissions, transfer taxes, or other fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

4.  **UNSOLD HOLDINGS:** Number of shares of Delphi common stock held at the close of business on **March 4, 2005.** *(If none, write 0), (Must be documented)*:

---

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU <u>MUST</u> PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑ IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

| SECTION C - SCHEDULE OF TRANSACTIONS IN DELPHI 6.55% NOTES DUE 2006 |
|---|

1.    **PURCHASES/ACQUISITIONS:**  Purchases/Acquisitions of Delphi 6.55% Notes during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $1,000 face amount) | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) |
|---|---|---|---|
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |

2.    **SALES:**  Sales of Delphi 6.55% Notes during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $1,000 face amount) | Total Sale Price (after commissions, taxes, or other fees) |
|---|---|---|---|
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |

3.    **UNSOLD HOLDINGS:**  Face amount of Delphi 6.55% Notes held as of the close of business on **March 4, 2005.** *(If none, write 0), (Must be documented)*:

4.    **RECOVERY FROM BANKRUPTCY:**  Please list the dollar amount that you received from the bankruptcy proceeding for this security.

$

| IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU **MUST** PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❏ IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL **NOT** BE REVIEWED |
|---|

## SECTION D - SCHEDULE OF TRANSACTIONS IN DELPHI 6.5% NOTES DUE 2013

1.    **BEGINNING HOLDINGS:** Face amount of Delphi 6.5% Notes held at the close of business on **March 6, 2000**. *(If none, write 0), (Must be documented)*:

2.    **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi 6.5% Notes during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $1,000 face amount) | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) | |
|---|---|---|---|---|
| /    / | | $          . | $ | |
| /    / | | $          . | $ | |
| /    / | | $          . | $ | |
| /    / | | $          . | $ | |

3.    **SALES:** Sales of Delphi 6.5% Notes during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $1,000 face amount) | Total Sale Price (after commissions, taxes, or other fees) | |
|---|---|---|---|---|
| /    / | | $          . | $ | |
| /    / | | $          . | $ | |
| /    / | | $          . | $ | |
| /    / | | $          . | $ | |

4.    **UNSOLD HOLDINGS:** Face amount of Delphi 6.5% Notes held as of the close of business on **March 4, 2005**. *(If none, write 0), (Must be documented)*:

5.    **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.

$

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑
IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED**

## SECTION E - SCHEDULE OF TRANSACTIONS IN DELPHI 8.25% TRUST I PREFERRED SECURITIES DUE 2033

1.  **BEGINNING HOLDINGS:** Face amount of Delphi 8.25% Trust I Preferred Securities held at the close of business on **March 6, 2000.** *(If none, write 0), (Must be documented)*:

2.  **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi 8.25% Trust I Preferred Securities during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $25 face amount) | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

3.  **SALES:** Sales of Delphi 8.25% Trust I Preferred Securities during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $25 face amount) | Total Sale Price (after commissions, taxes, or other fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

4.  **UNSOLD HOLDINGS:** Face amount of Delphi 8.25% Trust I Preferred Securities held as of the close of business on **March 4, 2005.** *(If none, write 0), (Must be documented)*:

5.  **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.

$

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑**
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED**

## SECTION F - SCHEDULE OF TRANSACTIONS IN DELPHI ADJUSTABLE RATE TRUST II PREFERRED SECURITIES DUE 2033

1.    **BEGINNING HOLDINGS:** Face amount of Delphi Trust II Securities held at the close of business on **March 6, 2000**. *(If none, write 0), (Must be documented)*:

2.    **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi Trust II Securities during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $1,000 face amount) | | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

3.    **SALES:** Sales of Delphi Trust II Securities during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $1,000 face amount) | | Total Sale Price (after commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

4.    **UNSOLD HOLDINGS:** Face amount of Delphi Trust II Securities held as of the close of business on **March 4, 2005**. *(If none, write 0), (Must be documented)*:

5.    **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.    $

### IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❏
### IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED

7



## SECTION G - RELEASE AND SIGNATURE

### I.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I submit this Proof of Claim under the terms of the Stipulation and Agreement of Settlement with Certain Defendants dated as of September 1, 2007, ("Stipulation") described in the Notice. I also submit to the jurisdiction of the United States District Court for the Eastern District of Michigan, with respect to my claim as a Class Member (as defined in the Notice) and for purposes of enforcing the release set forth herein. I further acknowledge that I am bound by and subject to the terms of any judgment that may be entered in the Delphi Securities Action. I agree to furnish additional information to Co-Lead Counsel to support this claim if required to do so. I have not submitted any other claim covering the same purchases or acquisitions of Delphi Securities during the Class Period and know of no other Person having done so on my behalf.

### II.    RELEASE

I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release, relinquish and discharge, all of the Settled Claims against each and all of the Defendants and the Released Parties, defined below.

"Released Parties" means (i) any and all of the Settling Defendants, Thomas Wyman, and Shoichiro Irimajiri, their past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters (including but not limited to Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC), insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi and its affiliates in the Bankruptcy Case; and (ii) General Motors Corporation, its past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which General Motors Corporation has a controlling interest or which is related to or affiliated with General Motors Corporation, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, or assigns of General Motors Corporation. Notwithstanding the foregoing, the definition of Released Parties shall not include any of the Non-Settling Defendants and Electronic Data Systems Corporation ("EDS"). In addition, the inclusion of General Motors as a Released Party shall not be construed to release any claims asserted in Deka Investment GmbH, et al. v. General Motors Corporation, et al., No. 2:06-cv-12258 (GER) (E.D. Mich.).

"Settled Claims" means any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted in the Delphi Securities Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them or the successors and assigns of any of them against any of the Released Parties which arise out of, are based upon, or relate to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action and related to the purchase, acquisition, or holding of Delphi Securities.

"Unknown Claims" means any and all Settled Claims which any of the Lead Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

8



I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this_____day of_____, in_____,_____.
　　　　　　　　　　　　　　　(Month/Year)　　　　　　　(City)　　　　　(State/Country)


_____
(Sign your name here)


_____
(Type your name here)


_____
Capacity of Person(s) Signing, e.g.,
Beneficial Purchaser, Executor
or Administrator



## ACCURATE CLAIM PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.

### REMINDER CHECKLIST

1.  Please sign the Certification section of the Proof of Claim form.

2.  If this claim is made on behalf of joint claimants, then both must sign.

3.  Please remember to attach supporting documents.

4.  DO NOT SEND ORIGINALS OF ANY SUPPORTING DOCUMENTS.

5.  Keep a copy of your Proof of Claim form and all documentation submitted for your records.

6.  The Claims Administrator will acknowledge receipt of your Proof of Claim by mail, within 30 days. Your claim is not deemed filed until you receive an acknowledgment postcard. If you do not receive an acknowledgment postcard within 30 days, please call the Claims Administrator toll free at 1 (800) 918-0998.

7.  If you move, please send us your new address.

8.  **Do not use highlighter on the Proof of Claim form or supporting documentation.**

THIS PROOF OF CLAIM MUST BE POSTMARKED NO LATER THAN
_____, 200_ AND MUST BE MAILED TO:

In re Delphi Corporation Securities Litigation Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9185
Dublin, OH 43017-4185
1 (800) 918-0998

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

```
-----------------------------------------------------------x
                                                           :
                                                           :
                                                           :
IN RE: DELPHI CORPORATION                                  :
SECURITIES, DERIVATIVE & "ERISA"                           :
LITIGATION                                                 :
                                                           :
                                                           :
                                           .               :
                                                           :
                                                           :
                                                           :
                                                           :
                                                           :
-----------------------------------------------------------x
```

MDL No. 1725
Master Case No. 05-md-1725
Hon. Gerald E. Rosen

This Document Relates to:
In Re: Delphi Corp. Securities Litig.
No. 06-10026, and Case Nos.
06-10025, 06-10027, 06-10028,
06-10029, 06-10030, 06-10031, and
06-10032

-----------------------------------------------

## SUMMARY NOTICE OF PENDENCY OF CLASS ACTION
## AND SETTLEMENT WITH CERTAIN DEFENDANTS

YOU ARE HEREBY NOTIFIED that the Court in the above-captioned actions (the "Delphi

Securities Action") has preliminarily certified a Class consisting of all persons and entities who

purchased or otherwise acquired publicly traded securities of Delphi Corporation, including

securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities") between March 7,

2000 and March 3, 2005, inclusive (the "Class Period"), and who suffered damages thereby,

including all persons and entities who acquired shares of Delphi common stock and preferred

stock in the secondary market and all persons or entities who acquired debt securities of Delphi

in the secondary market or pursuant to a registration statement.  The Court also preliminarily

approved a settlement providing for a recovery with a potential value of $295,100,000,

comprised of the following payments to be made by or on behalf of the Settling Defendants

**EXHIBIT A-3**

(defined below): i) a claim in the Delphi Bankruptcy Case with a potential value of $204,000,000 in Delphi Plan Currency; ii) $78,600,000 in cash on behalf of the Delphi Officer and Director Defendants; iii) $1,500,000 in cash by or on behalf of certain of the "Underwriter Defendants"; and iv) contingent payments of a maximum of $11,000,000, also to be paid on behalf of the Delphi Officer and Director Defendants (collectively, the "Settling Defendants").

As Delphi is currently a debtor and debtor-in-possession in a Chapter 11 bankruptcy proceeding, this Settlement is wholly contingent upon approval by United States Bankruptcy Judge Robert D. Drain, for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Delphi's Plan of Reorganization, which was filed on September __, 2007, and incorporates the Settlement. If the Settlement and Delphi's Plan of Reorganization are approved, the Settlement will resolve all of Lead Plaintiffs' claims in this litigation against the Settling Defendants. The Delphi Plan Currency will be paid by Delphi following its emergence from the Delphi Bankruptcy Case in accordance with the Delphi Plan of Reorganization. The Class will also receive interest on the cash payments described herein ("Cash Settlement Amount"). At this time, Co-Lead Counsel estimate that the Delphi Plan Currency will be comprised of common stock in the reorganized Delphi and cash. However, the form of the Delphi Plan Currency could change and, even if not, the allocation between cash and stock will not be identified until the Bankruptcy Court confirms the Delphi Plan of Reorganization. In addition, the precise dollar value of the Delphi Plan Currency will not be known until Delphi emerges from its Bankruptcy Proceedings and pays the Delphi Plan Currency. A more detailed description of the settlement consideration is provided in the full printed Notice of Proposed Settlement With Certain Defendants, Motion for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing (the "Notice").

A hearing will be held before the Honorable Gerald E. Rosen in the United States District Court for the Eastern District of Michigan, Southern Division, Theodore Levin Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226 in Courtroom _____, at _____:_____ __.m., on November 13, 2007 to determine whether: (1) the proposed settlement should be approved by the Court as fair, reasonable and adequate; (2) the proposed plan of allocation should be approved by the Court as fair and reasonable; (3) Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved; (4) the claims against the Settling Defendants should be dismissed with prejudice; and (5) such other matters as the Court deems appropriate to rule upon.

The litigation does not resolve Lead Plaintiffs' claims against Non-Settling Defendants JP Morgan Chase & Co. (as successor in interest to Bank One Corporation), SETECH Inc., BBK Ltd. and Deloitte & Touche LLP, as further described in the Notice.   Therefore, Lead Plaintiffs will continue to prosecute their claims against the Non-Settling Defendants.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND.  If you have not yet received the full printed Notice and Proof of Claim and Release form ("Proof of Claim") you may obtain copies of these documents by downloading them from the website www.delphiclasssettlement.com or by contacting:

Delphi Securities Litigation Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9185
Dublin, OH  43017-4185

Inquiries, other than requests for the forms of Notice and Proof of Claim, may be made to Co-Lead Counsel:

Bradley E. Beckworth, Esq.
Nix, Patterson & Roach, L.L.P.
205 Linda Drive
Daingerfield, Texas 75638

Sean Handler, Esq.
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

Jeffrey N. Leibell, Esq.
Bernstein Litowitz Berger &
Grossmann, LLP
1285 Avenue of the Americas
New York, New York 10019

Stuart Grant, Esq.
Grant & Eisenhofer P.A.
Chase Manhattan Centre,
Suite 2100
1201 N. Market St.
Wilmington, DE  19801

To participate in the Settlement, you must submit a Proof of Claim no later than January 15, 2008.  The deadline for filing objections and the receipt of requests for exclusions is October 29, 2007.

Further information may also be obtained by directing your inquiry in writing to the Claims Administrator, The Garden City Group, Inc., at the address listed above.  You may also call 1-800-918-0998, toll free for more information.

By Order of The Court

# EXHIBIT B

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF MICHIGAN

#### SOUTHERN DIVISION

```
------------------------------------------------------x
                                                      :
                                                      :
IN RE: DELPHI CORPORATION               :   MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"        :   Master Case No. 05-md-1725
LITIGATION                              :   Hon. Gerald E. Rosen
                                                      :
                                                      :   This Document Relates to:
                                                      :   In Re: Delphi Corp. Securities Litig.
                                                      :   No. 06-10026, and Case Nos.
                                                      :   06-10025, 06-10027, 06-10028,
                                                      :   06-10029, 06-10030, 06-10031, and
                                                      :   06-10032
                                                      :
------------------------------------------------------x
```

### [PROPOSED] ORDER AND FINAL JUDGMENT

WHEREAS, on August 31, 2007, Lead Plaintiffs, on behalf of themselves and the Class,

on the one hand, and Defendants (i) Delphi Corporation ("Delphi"), (ii) Delphi Trust I and

Delphi Trust II; (iii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust, Virgis W. Colbert,

Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A. McLaughlin, Oscar de

Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Donald L. Runkle,

John D. Sheehan, and Patricia C. Sueltz (collectively, these individuals will be referred to herein

as the "Delphi Officer and Director Defendants"), and (iv) Banc of America Securities LLC,

Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets Inc. [no

"Inc." in Stip], Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston

Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co.

Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the

**EXHIBIT B**

"Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and

Director Defendants and the Underwriter Defendants are collectively referred to as the "Settling

Defendants") on the other hand, executed a Stipulation and Agreement of Settlement with

Certain Defendants (the "Stipulation") that would resolve the above-captioned action (the

"Delphi Securities Action") with respect to the Settling Defendants;

WHEREAS, this Court preliminarily approved the Settlement by Order of the Court

dated September ___, 2007;

AND NOW, after a hearing before this Court on the _____ day of November, 2007, to

(i) determine whether the Settlement should be approved by the Court as fair, reasonable,

adequate, and in the best interests of the Class; (ii) determine whether the Plan of Allocation for

the proceeds of the Settlement should be approved by the Court as fair and reasonable; (iii)

determine whether judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing

the Delphi Securities Action against the Settling Defendants with prejudice and extinguishing

and releasing all Settled Claims (as defined therein), and barring the Barred Claims ; (iv)

determine whether the Class should be finally certified for settlement purposes pursuant to

Fed.R.Civ.P. Rules 23(a) and (b); (v) rule on Co-Lead Counsel's application for an award of

attorneys' fees and the reimbursement of litigation expenses; and (vi) rule on such other matters

as the Court may deem appropriate.

The Court having considered all matters submitted to it at the hearing and otherwise; and

it appearing that a notice of the hearing substantially in the form approved by the Court was

provided to all reasonably identifiable persons and entities who purchased or otherwise acquired

publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi

Trust II ("Delphi Securities"), between March 7, 2000 and March 3, 2005, inclusive, who were

damaged thereby, (i) by mailing the Notice to such persons and entities at the respective

addresses set forth in Delphi's records or by forwarding the Notice to beneficial owners of such

Delphi Securities as identified by brokers and other nominee record owners, and (ii) by

publishing the Publication Notice pursuant to the specifications of the Court as required by the

Order for Notice and Hearing dated September __, 2007; and the Court having considered and

approved the Plan of Allocation as a fair and reasonable method to allocate the Net Settlement

Fund among the members of the Class; and the Court having considered and determined the

fairness and reasonableness of the award of attorneys' fees and expenses requested; and all

capitalized terms used herein having the meanings as set forth and defined in the Stipulation;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Court has jurisdiction over the subject matter of the Delphi Securities

Action and the settling parties, including all Class Members.

2.    The Court finds that the prerequisites for a class action under Federal

Rules of Civil Procedure 23(a) and (b)(3) have been satisfied in that: (a) the number of Class

Members is so numerous that joinder of all Class Members is impracticable; (b) there are

questions of law and fact common to the Class; (c) the claims of Lead Plaintiffs are typical of the

claims of the Class they seek to represent; (d) the Lead Plaintiffs have and will fairly and

adequately represent the interests of the Class; and (e) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of

the Class Members in individually controlling the prosecution of the separate actions, (ii) the

extent and nature of any litigation concerning the controversy already commenced by members

of the Class, (iii) the desirability or undesirability of continuing the litigation of these claims in

3

this particular forum, and (iv) the difficulties likely to be encountered in the management of the class action.

       3.     Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Class shall consist of all persons and entities who purchased or otherwise acquired Delphi Securities between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement. Excluded from the Class are: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Class are any putative members of the Class who exclude themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice as listed on Exhibit A attached hereto; such putative members of the Class shall not participate in the Net Settlement Fund.

       4.     The Notice, the Publication Notice and the notice methodology implemented pursuant to the Stipulation and the Court's orders (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Delphi Securities Action, of the effect of the Stipulation, including releases, of their right to object to the proposed Settlement, of their right to exclude themselves from the Class, and of their right to appear at the Fairness Hearing, (iii) were reasonable and constituted due, adequate and sufficient notice to all persons or entities entitled to

receive notice and (iv) met all applicable requirements of the Federal Rules of Civil Procedure,

the United States Constitution (including the Due Process Clause), Section 21D(a)(7) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended, including by the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), the Rules of the Court and any other

applicable law.

        5.      The Settlement is finally approved as fair, reasonable and adequate.

Subject to the terms and provisions of the Stipulation, the settling parties are directed to

consummate the Settlement.

        6.      The Delphi Securities Action and the Complaint, which the Court finds

was filed against the Settling Defendants on a good faith basis in accordance with the PSLRA

and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available

information, is hereby dismissed in its entirety with prejudice and without costs, except as

provided in the Stipulation, as against the Settling Defendants.  The Delphi Securities Action

shall continue against the Non-Settling Defendants.

        7.      Upon the Effective Date of the Settlement, Lead Plaintiffs and all Class

Members on behalf of themselves, their personal representatives, heirs, executors,

administrators, trustees, successors and assigns, with respect to each and every Settled Claim,

release and forever discharge, and are forever enjoined from prosecuting, any Settled Claim

against any of the Released Parties, and shall not institute, continue, maintain or assert, either

directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf

of any class or any other person, any action, suit, cause of action, claim or demand against any

Released Party or any other person who may claim any form of contribution or indemnity from

any Released Party in respect of any Settled Claim or any matter related thereto, at any time on or after the Effective Date.

8.    On the Effective Date of the Settlement, Lead Plaintiffs and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Claim, release and forever discharge, and are forever enjoined from prosecuting all claims against Co-Lead Counsel or any or all of the Lead Plaintiffs, the Settling Defendants, or Released Parties and/or their respective counsel, that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with or directly or indirectly relating to the prosecution, defense or settlement of the Delphi Securities Action as against the Settling Defendants or in connection with or directly or indirectly relating to the Stipulation, or to attorneys' fees, costs or disbursements incurred by Co-Lead Counsel or other counsel representing Lead Plaintiffs or the Class Members in the Delphi Securities Action.

9.    Upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Lead Plaintiffs, all Class Members and their respective counsel (except Settled Defendants' Claims does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of the Stipulation or orders or judgments issued by the courts in connection with the Settlement or confidentiality obligations).

6

10.    Notwithstanding paragraphs 7 through 9 above, nothing in this Order and Final Judgment shall bar any action or claim by any of the Settling Parties or their Released Parties to enforce or effectuate the terms of the Stipulation or this Order and Final Judgment.

11.    The Plan of Allocation is approved as fair and reasonable, and Co-Lead Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.  Any appeal or any challenge relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the Finality of the other provisions of this Order and Final Judgment.

12.    No Class Member shall have any claim against Co-Lead Counsel, the Claims Administrator or other agent designated by Co-Lead Counsel based on the distributions made substantially in accordance with the Settlement and Plan of Allocation as approved by the Court and further orders of the Court.  No Class Member shall have any claim against the Settling Defendants, any of the Released Parties or their counsel with respect to the investment or distribution of the Net Settlement Fund, the determination, administration, calculation or payment of claims, the administration of the Escrow Accounts, or any losses incurred in connection therewith, the Plan of Allocation, or the giving of notice to Class Members.

13.    In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of the claims or allegations of the Delphi Securities Action or any Settled Claim (i) by any person or entity against any of the Released Parties, and (ii) by any of the Released Parties against any person or entity other than a person or entity whose liability has been extinguished by the settlement of the Released Party, are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a

7

Class Member against any person or entity for loss for which such person or entity and any

Released Party are found to be jointly liable shall be reduced by the greater of (i) an amount that

corresponds to the percentage of responsibility of any such Released Party(s) for common

damages or (ii) the amount paid to the Class by or on behalf of each such Released Party for

common damages.

14.    Complete Bar Order: Any person or entity receiving notice of the Notice,

or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that

would cause such person to be charged with constructive notice of the Notice (such persons, the

"Barred Persons") is permanently barred, enjoined, and restrained from commencing,

prosecuting, continuing or asserting any claim against the Released Parties arising under federal,

state, or foreign statutory or common-law rule, however styled, whether for indemnification or

contribution or otherwise, where the claim or the alleged injury of such Barred Person is or arises

from or relates to that Barred Person's or entity's alleged liability to the Class or any Class

Member ("Barred Claims"); provided, however, that if: (a) the Class or any Class Member

obtains any judgment against any such Barred Person based upon, arising out of, or relating to

any Settled Claim arising under the Securities Act of 1933 ("Securities Act") for which such

Barred Person and any Released Party is found to be jointly and severally liable, that person or

entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) the

amount paid to the Class by or on behalf of each Released Party for common damages pursuant

to the Securities Act; or (ii) an amount that corresponds to the percentage of responsibility of any

Released Party that constitute "covered persons" pursuant to 15 U.S.C. § 78u-4(f)(10)(C) for

common damages pursuant to the Securities Act; and/or (b) the Class or any Class Member

obtains any judgment against any such Barred Person based upon, arising out of, or relating to

any Settled Claim arising under the Securities Exchange Act of 1934 ("Exchange Act") for
which such Barred Person and any Released Party is found to be jointly liable, that Barred
Person shall be entitled to a judgment credit equal to an amount that is the greater of (i) the
amount paid to the Class by or on behalf of each Released Party for common damages pursuant
to the Exchange Act or (ii) an amount that corresponds to the percentage of responsibility of any
Released Party for common damages pursuant to the Exchange Act.

15.    The Court finds that the Bar Order is fair to all persons and entities,
including but not limited to (a) the Defendants; (b) the Class; and (c) to the Non-Settling
Defendants.

16.    The Settling Defendants shall not be enjoined from bringing Barred
Claims against a Barred Person if for any reason such Barred Person asserts, or is legally not
barred by the Bar Order from bringing, Barred Claims against such Settling Defendant.

17.    This Order and Final Judgment, the Stipulation, whether or not
consummated, and any proceedings taken pursuant to it:

a.    shall not be offered or received against any of the Settling
Defendants as evidence of or construed as or deemed to be evidence of any presumption,
concession, or admission by any of those Settling Defendants with respect to the truth of any fact
alleged by any of the plaintiffs or the validity of any claim that has been or could have been
asserted in the Delphi Securities Action or in any litigation, or the deficiency of any defense that
has been or could have been asserted in the Delphi Securities Action or in any litigation, or of
any liability, negligence, fault, or wrongdoing of any Settling Defendant;

b.    shall not be offered or received against the Settling Defendants as
evidence of a presumption, concession or admission of any fault, misrepresentation or omission

with respect to any statement or written document approved or made by any of the Settling Defendants;

        c.      shall not be offered or received against the Settling Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Settling Defendants in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation and this Order and Final Judgment; provided, however, that if the Stipulation is approved by the Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

        d.      shall not be construed against any of the Settling Defendants as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; or

        e.      shall not be construed as or received in evidence as an admission, concession or presumption against the Lead Plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by any Settling Defendant have any merit, or that damages recoverable under the Delphi Securities Action would not have exceeded the Gross Settlement Fund.

        18.      The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

        19.      The administration and consummation of the Settlement as embodied in the Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Co-Lead Counsel and enforcing the terms of the Stipulation.

20.     In the event that the Settlement does not become Effective in accordance with the terms of the Stipulation, this Order and Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation, and this Order and Final Judgment shall be vacated, and in such event all orders entered in accordance with the Stipulation shall be vacated.

21.     Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

22.     The Delphi Securities Action has been pending since the first of the constituent actions were filed in 2005. The Stipulation resolves all of the claims asserted by the Class against the Settling Defendants. The claims asserted against the Settling Defendants, which are now settled, raise issues that are separable from the remaining claims of the Lead Plaintiffs and the Class against the Non-Settling Defendants. Permitting that immediate appeal, if taken, of this Order and Final Judgment would not result in any duplication of review by an appellate court, because if an appellate court were to vacate the Order and Final Judgment, then the parties may reasonably continue their prosecution or defense of the claims while this Court continues to preside over other related claims, without a waste of time or judicial resources. If this Order and Final Judgment were not immediately appealable, once an appeal were ripe after the conclusion of the entire coordinated litigation, and if the appellate court vacated this Order and Final Judgment, then this Court would face re-trying the entire litigation as to the Settling Defendants, thereby wasting judicial resources.

23.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule

11

54(b) of the Federal Rules of Civil Procedure.  The Delphi Securities Action is not dismissed with respect to claims against the Non-Settling Defendants.

24.     The Court having determined that there is no just reason for delay, hereby enters FINAL JUDGMENT with respect to the Settling Defendants, and in accordance with Federal Rule of Civil Procedure 54(b) this _____ day of November, 2007:


_____
GERALD E. ROSEN
United States District Judge

# EXHIBIT C

**EXHIBIT C TO STIPULATION AND AGREEMENT OF SETTLEMENT**
**WITH CERTAIN DEFENDANTS:**
**RESERVE FUND FOR ADDITIONAL DEFENSE COSTS**

A.    Within 3 days after the Insurance Payment is deposited with the Escrow Agent,

Co-Lead Counsel shall transfer therefrom the sum of Ten Million United States Dollars (U.S.

$10,000,000) (the "Contingent Payment") into a separate Defense Cost Reserve Escrow

Account, as required under the Stipulation of Settlement. The Defense Cost Reserve Escrow

Account shall be created as an interest-bearing money market account or the proceeds invested in

a similar vehicle with the same risk of loss of principal. Excepting the limitations provided for

below, this Defense Cost Reserve Escrow Account shall exist for the sole benefit of J.T.

Battenberg III, Milan Belans, John G. Blahnik, Alan S. Dawes, Paul R. Free, Judith Kudla,

Catherine Rozanski and Peter H. Janak (the "Former Delphi Officers and Employees"), and the

Ten Million United States Dollars (U.S. $10,000,000) in proceeds deposited therein shall only be

accessible by counsel for the Former Delphi Officers and Employees in the event that there is

any indictment of any Former Delphi Officer or Employee in connection with their work at

Delphi.

B.    In the event that one or more of the Former Delphi Officers and Employees are

indicted by the Department of Justice, the United States Attorney for the Southern District of

New York or any other governmental agency in connection with their work at Delphi, they shall

provide notice to Lead Plaintiffs. Within 10 days of such notice, counsel for any indicted Former

Delphi Officer(s) or Employee(s) shall be permitted to access funds from the Defense Cost

Reserve Escrow Account as an additional source of defense costs in amounts and pursuant to

such terms as will be agreed upon by all counsel for the Former Delphi Officers and Employees

in advance and memorialized in writing. Counsel for the Former Delphi Officers and Employees

agree to use their best efforts to ensure that any and all ongoing criminal investigations are

resolved favorably with no indictments as soon as practicable. The reasonableness of any fees

incurred or any dispute regarding access as between counsel for the Former Officers and

Employees pursuant to this Section shall be determined by Honorable Layn R. Phillips, former

United States District Judge, of Irell Manella (hereinafter "Judge Phillips"), whose determination

will be final and binding.

C.      In the event that no indictment of any Former Delphi Officer or Employee occurs

by January 31, 2009, the Defense Cost Reserve Escrow Account shall be closed and the proceeds

existing in the account as well as any interest accrued thereon shall be disbursed at the direction

of Co-Lead Counsel unless any counsel for a Former Delphi Officer or Employee makes a

showing to Judge Phillips that good cause exists to maintain the Defense Cost Reserve Escrow

Account. Judge Phillips shall, in his sole discretion, determine whether good cause exists to

maintain the proceeds in the Defense Cost Reserve Escrow Account for the benefit of the Former

Delphi Officers and Employees.

D.      Upon a showing that there no longer remains any threat that any of the Former

Delphi Officers and Employees face criminal exposure and/or potential indictment Lead

Plaintiffs may request, prior to January 31, 2009, that Judge Phillips release some portion or all

of the proceeds in the Defense Cost Reserve Escrow Account. In any event, Lead Plaintiffs shall

have the right on or after January 31, 2009, to request that Judge Phillips release some portion or

all of the proceeds in the Defense Cost Reserve Escrow Account. Judge Phillips shall, in his sole

discretion, determine whether good cause exists to distribute some or all of the Defense Cost

Reserve Escrow Account to the Gross Settlement Fund.

E.      Any request made by any party as provided in section C or D, above, shall be subject to the right of counsel for any opposing party to notice and an opportunity to respond and to rebut the request.

F.      In no event shall the proceeds remain in the Defense Cost Reserve Escrow Account if no Former Delphi Officer or Employee has been indicted and no proceeds have been withdrawn by December 31, 2010; *provided, however*, that in the event that one or more of the Former Delphi Officers or Employees has been indicted, any funds remaining in the Defense Cost Reserve Escrow Account on December 31, 2010 shall not be released to Co-Lead Counsel unless and until the indicted Former Delphi Officer(s) or Employee(s)'s criminal proceeding has been resolved.

G.      Any interest that accrues on the proceeds contained in the Defense Cost Reserve Escrow Account shall be allocated and released in the same proportion as the principal in the Defense Cost Reserve Escrow Account.

H.      Any funds, including principal and interest, remaining in the Defense Cost Reserve Escrow Account following the conclusion of any criminal proceedings involving any Former Delphi Officer or Employee will become part of the Gross Settlement Fund.

I.      Any taxes owing on interest accrued in the Defense Cost Reserve Escrow Account shall be withdrawn from such interest, and shall be remitted to the appropriate taxing authorities by the account holder(s).  The only administrative fees assessed against the Defense Cost Reserve Escrow Account shall be the reasonable cost incurred in preparation of necessary tax returns and the cost customarily charged by Mellon Bank in serving as an escrow agent.


DATED:  August 30, 2007


C:\Revisions to BLBG Draft.doc
8/29/07 04:11 PM

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: _____

Max W. Berger
John P. Coffey
Jeffrey N. Leibell
Hannah E. Greenwald
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

**Co-Lead Counsel for Lead Plaintiffs**


**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**

By: _____

Michael K. Yarnoff
Sean M. Handler
Kay E. Sickles
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7056
Facsimile: (610) 667-7706

**Co-Lead Counsel for Lead Plaintiffs**


**NIX PATTERSON & ROACH, L.L.P.**

By: _____

Bradley E. Beckworth
Jeffrey J. Angelovich
Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415

**Co-Lead Counsel for Lead Plaintiffs**

**GRANT & EISENHOFER P.A.**

By: *Jim Sabella*
      Stuart M. Grant
      James J. Sabella
      Sharan Nirmul
      485 Lexington Avenue, 29th Floor
      New York, NY 10017
      Telephone: (646) 722-8500

**Co-Lead Counsel for Lead Plaintiffs**

**BAKER BOTTS L.L.P.**

By: _____ (WITH CONSENT 8/30/07 EAM)
      William H. Jeffress, Jr.
      Bridget M. Moore
      Michael G. Pattillo, Jr.
      Joe R. Caldwell, Jr.
      1299 Pennsylvania Avenue, N.W.
      Washington, DC 20004-2400
      Telephone: (202) 639-7788
      Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg III**

**O'MELVENY & MYERS LLP**

By: *Robert N. Stern* (with consent 8/30/07 MM)
      Robert N. Eccles
      Robert M. Stern
      1625 Eye Street, NW
      Washington, DC 20006-4001
      Telephone: (202) 383-5315
      Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

**PEPPER HAMILTON LLP**

By: _____

Matthew J. Lund
100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

**Counsel for Paul R. Free**

**MILLER, CANFIELD, PADDOCK and STONE, PLC**

By: _____

Thomas W. Cranmer
Matthew P. Allen
150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420

**Counsel for John G. Blahnik and Peter H. Janak**

**CLARK HILL PLC**

By: _____

Martin E. Crandall
Charles E. Murphy
500 Woodward Avenue
Suite 3500
Detroit, Michigan  48226
Telephone: (313) 965-8413

**Counsel for Milan Belans**

**BUTZEL LONG PC**

By: _____    (w/consent)
(Matt Allen)

David Dumouchel
Laurie J. Michelson
150 W. Jefferson Avenue
Suite 100
Telephone: (313) 225-7004

**Counsel for Cathy Rozanski**

**SARETSKY HART MICHAELS & GOULD PC**

By: _____
Eric A. Michaels
993 South Eton
Birmingham, Michigan 48009
Telephone: (248) 502-3300

**Counsel for Judith Kudla**

DELIB:2887195.2\127581-00001

# EXHIBIT D

### EXHIBIT D TO THE STIPULATION AND AGREEMENT
### OF SETTLEMENT WITH CERTAIN DEFENDANTS

1.  Proof of claim number 14093, filed by Oklahoma Law Enforcement Retirement System, dated July 28, 2006

2.  Proof of claim number 14094, filed by Public Employees Retirement System of Mississippi, dated July 28, 2006

3.  Proof of claim number 14095, filed by Raiffeisen Kapitalanlage-Gesellschaft m.b.H., dated July 28, 2006

4.  Proof of claim number 14096, filed by Stichting Pensioenfonds ABP, dated July 28, 2006

5.  Proof of claim number 14097, filed by Teachers Retirement System of Oklahoma, dated July 28, 2006

# EXHIBIT E

## EXHIBIT E TO THE STIPULATION AND AGREEMENT
## OF SETTLEMENT WITH CERTAIN DEFENDANTS

1.   Proof of claim number 10731, filed by Citigroup Global Markets, Inc., dated July 17, 2006

2.   Proof of claim number 10732, filed by Bear, Stearns & Co. Inc., dated July 20, 2006

3.   Proof of claim number 10758, filed by Banc of America Securities LLC, dated July 17, 2006

4.   Proof of claim number 10759, filed by UBS Securities LLC, dated July 20, 2006

5.   Proof of claim number 10760, filed by Wachovia Capital Markets, LLC, dated July 20, 2006

6.   Proof of claim number 10761, filed by Merrill Lynch, Pierce, Fenner & Smith Incorporated, dated July 14, 2006

7.   Proof of claim number 10762, filed by Morgan Stanley & Co. Incorporated, dated July 20, 2006

8.   Proof of claim number 10763, filed by Credit Suisse Securities (USA) LLC, dated July 20, 2006

9.   Proof of claim number 11658, filed by Barclays Capital Inc., dated July 24, 2006

10.  Proof of claim number 13771, filed by Barclays Bank PLC, dated July 31, 2006

# Exhibit B

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

```
---------------------------------------------------------x
                                          :
                                          :
IN RE: DELPHI CORPORATION                 :      MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"          :      Master Case No. 05-md-1725
LITIGATION                                :      Hon. Gerald E. Rosen
                                          :
                                          :      This Document Relates to:
                                          :      In re Delphi Corp. ERISA Litigation,
                                          :      Nos. 05-CV-70882, 05-70940,
                                          :      05-71030, 05-71200, 05-71249,
                                          :      05-71291, 05-71339, 05-71396,
                                          :      05-71397, 05-71398, 05-71437,
                                          :      05-71508, 05-71620, 05-71897,
                                          :      05-72198
                                          :
                                          :
---------------------------------------------------------x
```

## STIPULATION AND AGREEMENT OF SETTLEMENT
## WITH CERTAIN DEFENDANTS – ERISA ACTIONS

This Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions

(the "Stipulation") is submitted in the above-captioned *In re: Delphi Corporation Securities,*

*Derivative & "ERISA" Litigation*, Master Case No. 05-md-1725 (GER), relating to *In re Delphi*

*Corp. ERISA Litigation*, Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200,

05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398,

05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198, pursuant to Rule

23 of the Federal Rules of Civil Procedure.  Subject to the approval of the United States District

Court for the Eastern District of Michigan (the "Court"), this Stipulation is entered into among

Named Plaintiffs Gregory Bartell, Thomas Kessler, Neal Folck, Donald McEvoy, Irene Polito,

and Kimberly Chase-Orr (hereinafter "Named Plaintiffs") on behalf of themselves and the Class

(as defined herein), and Delphi Corporation ("Delphi"); ASEC Manufacturing General

Partnership (sued as "ASEC Manufacturing"), Delphi Mechatronic Systems, Inc. (sued as

"Delphi Mechatronic Systems"); the Delphi Corporation Board of Directors Executive

Committee and its members; the Investment Policy Committee and its members; and J.T.

Battenberg III, Robert H. Brust, Alan S. Dawes, Susan A. McLaughlin, and John D. Opie

(collectively, the "Delphi Officer and Director Defendants") (collectively, the "Settling

Defendants").

A separate consolidated action brought under the federal securities laws also coordinated

in the above-captioned *In re: Delphi Corporation Securities, Derivative & "ERISA" Litigation*,

Master Case No. 05-md-1725 (GER) and relating to *In Re: Delphi Corp. Securities Litigation*,

Case No. 06-10026, Case Nos. 06-10027, 06-10028, 06-10029, 06-10030, 06-10031 and 06-

10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) ((formerly No. 9:05-

CV-80307(KLR) (S.D. Fla.)) (the "Delphi Securities Action"), is also pending in this Court. The

Delphi Securities Action is being settled contemporaneously herewith pursuant to a separate

stipulation of settlement.

It is a condition to the Settlement (as defined herein) that the Delphi ERISA Action (as

defined herein) and the Delphi Securities Action be settled contemporaneously and that the

Settlement and the settlement of the Delphi Securities Action be (i) approved by the Court and

(ii) approved by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court"). It is a further condition to the Settlement that the Bankruptcy Court

approve the separate agreement resolving all pertinent claims among Delphi, certain insurance

carriers, and certain individuals insured under the relevant insurance policies (the "Insurance

Agreement," attached as Exhibit C hereto).

WHEREAS:

A.    Beginning on March 8, 2005, several putative class actions were filed in the Court

and the United States District Court for the Southern District of Ohio against Delphi and various

other defendants.  Plaintiffs thereafter voluntarily dismissed the action filed in the United States

District Court for the Southern District of Ohio.  On September 13, 2005, Judge Paul D. Borman

of the United States District for the Eastern District of Michigan appointed Named Plaintiffs as

interim lead plaintiffs to prosecute the actions on behalf of participants in the Plans during the

putative class period and appointed Lead Counsel (defined herein) as lead counsel in the actions.

The actions filed in the Court were consolidated by order, entered September 13, 2005, under the

caption *In re Delphi Corp. ERISA Litigation*, Master File No. 05-CV-70882 (PDB).

B.    On October 8, 2005, Delphi filed for protection under Chapter 11 of Title 11 of

the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

C.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the

transfer of the Delphi ERISA Action (and other related federal actions, including the Delphi

Securities Action) to this Court for coordinated or consolidated pretrial proceedings.  On April

12, 2006, Settling Defendants (as defined herein) moved to dismiss the Complaint.  On May 12,

2006, Named Plaintiffs filed papers in opposition to the motions to dismiss.  On June 12, 2006,

Settling Defendants filed their reply papers in further support of the motions to dismiss.

D.    On March 3, 2006, Named Plaintiffs filed a Consolidated Class Action Complaint

(the "Complaint"), on behalf of all persons who were (i) participants in or beneficiaries of the

Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings

3

Plan for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28,

1999 and November 1, 2005, or (ii) participants in or beneficiaries of the Delphi Mechatronic

Systems Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005, and

whose accounts included investments in the Delphi and/or GM Stock Funds, alleging violations

of Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act, as

amended ("ERISA"), and violations of fiduciary duties under common law.  The Complaint

alleges, among other things, that Delphi, with the participation of others, improperly accounted

for various transactions and otherwise made material misstatements regarding its financial

condition and that the Settling Defendants breached their fiduciary duties to the Class in their

management of the Plans and the Plans' assets.

      E.     Settling Defendants in the Delphi ERISA Action deny any wrongdoing

whatsoever, and this Stipulation shall in no event be construed or deemed to be evidence of or an

admission or concession on the part of any Settling Defendant with respect to any claim of any

fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the

Settling Defendants have asserted or would assert.

      F.     The parties to this Stipulation recognize that the Delphi ERISA Action has been

filed by the Named Plaintiffs and defended by the Settling Defendants in good faith, that the

Delphi ERISA Action is being voluntarily settled upon advice of counsel, and that the terms of

the Settlement are fair, reasonable and adequate.  This Stipulation shall not be construed or

deemed to be a concession by Named Plaintiffs or any Class Member of any infirmity in the

claims asserted in the Delphi ERISA Action or any other action.

      G.     Lead Counsel have conducted investigations relating to the claims and the

underlying events and transactions alleged in the Delphi ERISA Action.  Lead Counsel have

analyzed the evidence adduced during the pretrial discovery conducted thus far and have

researched the applicable law with respect to the claims of the Named Plaintiffs and the Class

against the Settling Defendants and the potential defenses thereto.

H.    The parties recognize that the claims asserted in the Delphi ERISA Action, if

proved by the Named Plaintiffs, could have exposed Settling Defendants to substantial damages

awards. Accordingly, the parties considered that a resolution of the Delphi ERISA Action was

advisable from the point of view of all parties.

I.    With the assistance of the Honorable Layn R. Phillips, former United States

District Judge, acting as a special master for settlement purposes, Named Plaintiffs in the Delphi

ERISA Action, by their counsel, have conducted independent discussions and arm's-length

negotiations with Settling Defendants' counsel with respect to a compromise and settlement of

the Delphi ERISA Action and with a view to settling the issues in dispute and achieving the best

relief possible consistent with the interests of the overall Class in the Delphi ERISA Action.

J.    Delphi considers that, in order for it to achieve an end to litigation, it is a

necessary condition to the settlement of the Delphi ERISA Action that the Court

contemporaneously approve the separate settlement reached with respect to the Delphi Securities

Action, and that the Bankruptcy Court enter Final orders approving the Stipulation, the Delphi

Securities Action settlement, and the Insurance Agreement.

K.    Based upon their investigation and pretrial discovery as set forth above, Named

Plaintiffs and their counsel have concluded that the terms and conditions of this Stipulation are

fair, reasonable and adequate to Named Plaintiffs and the Class, and are in their best interests,

and Named Plaintiffs have agreed to settle the claims raised in the Delphi ERISA Action

pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial

5

benefits that the members of the Class will receive from settlement of the Delphi ERISA Action,

(b) the attendant risks of litigation, (c) the desirability of permitting the Settlement to be

consummated as provided by the terms of this Stipulation, and (d) the sources available to fund

any potential judgment in the litigation as a result of the fact that Delphi filed for protection

under Chapter 11 of the Bankruptcy Code on October 8, 2005.

NOW THEREFORE, without any admission or concession on the part of Named

Plaintiffs of any lack of merit of the Delphi ERISA Action whatsoever, and without any

admission or concession of any liability or wrongdoing or lack of merit in the defenses

whatsoever by Settling Defendants, it is hereby STIPULATED AND AGREED, by and between

the parties to this Stipulation, through their respective counsel, subject to approval of the Court

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits

flowing to the parties hereto from the Settlement herein set forth, that all Settled Claims (as

defined herein), as against the Released Parties (as defined herein), and all Settled Defendants'

Claims (as defined herein) shall be compromised, settled, released and dismissed with prejudice,

upon and subject to the following terms and conditions:

## DEFINITIONS

1.    As used in this Stipulation, the following terms shall have the following

meanings:

(a)    "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its

affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

(b)    "Bankruptcy Court" means the United States Bankruptcy Court for the

Southern District of New York.

(c)    "Bankruptcy Effective Date" means the business day determined by Dephi

in its sole discretion on which all conditions to the consummation of Delphi's plan of

6

reorganization in the Bankruptcy Case (the "Delphi Plan of Reorganization") have been either
satisfied or waived and is the day upon which such plan is substantially consummated, such date
being the same as the "Effective Date" as defined in the Delphi Plan of Reorganization.

(d)    "Bar Order" shall have the meaning set forth in ¶¶ 5-7 hereof.

(e)    "Barred Claims" shall have the meaning set forth in ¶ 5 hereof.

(f)    "Barred Persons" shall have the meaning set forth in ¶ 5 hereof.

(g)    "Class" means, for the purposes of this Settlement only, a non-opt-out
class consisting of all persons (a) who were (i) participants in or beneficiaries of the Delphi
Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for
Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28, 1999 and
November 1, 2005, or (ii) participants in or beneficiaries of the Delphi Mechatronic Systems
Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005, and (b) whose
accounts included investments in the Delphi and/or GM stock funds. Excluded from the Class
are (i) the Defendants; (ii) members of the immediate families of each of the Defendants; (iii)
any entity in which any Defendant has a controlling interest; (iv) any parent, subsidiary or
affiliate of a Defendant; (v) any person who was an officer or director of a Defendant or of any
of Defendants' subsidiaries or affiliates during the Class Period; and (vi) the legal
representatives, heirs, predecessors, successors or assigns of any such excluded person or entity.

(h)    "Class Member" means a member of the Class.

(i)    "Class Period" means, for the purposes of this Settlement only, the period
of time between May 28, 1999 and November 1, 2005, inclusive.

(j)    "Contribution Credit" shall mean an amount equal to the value of the
contribution or equitable indemnification claim, if any, that the Court determines such Barred

Person would be entitled to assert against one or more Settling Defendants but for operation of

the Bar Order, which shall be equal to the aggregate proportionate shares of liability, if any, of

the Settling Defendants as determined by the Court at the time of entry of any judgment against

any Barred Person, adjusted, as the Court determines is appropriate, to reflect any limitation on

the financial capability of the Settling Defendants to pay their respective proportionate shares of

liability to the Barred Person had the Barred Person obtained a contribution or equitable

indemnification judgment against them in such amount; provided that in determining the

Contribution Credit with respect to Delphi as a Settling Defendant, the Court shall take into

consideration whether the Barred Person would have held an allowed claim in the Bankruptcy

Case for contribution or equitable indemnification, and the amount, if any, the Barred Person

would receive under the Delphi Plan of Reorganization on account thereof.

        (k)    "Court" means the United States District Court for the Eastern District of

Michigan.

        (l)    "Defendants" means Delphi, ASEC Manufacturing General Partnership

(sued as "ASEC Manufacturing"), Delphi Mechatronic Systems, Inc. (sued as "Delphi

Mechatronic Systems"), the Delphi Corporation Board of Directors Executive Committee and its

past and present members, the Investment Policy Committee and its past and present members,

the Delphi Officer and Director Defendants, and State Street Bank and Trust Company.

        (m)    "Delphi" means Delphi Corporation.

        (n)    "Delphi Consideration" means that amount of Delphi Plan Currency in the

same form, ratio, and treatment provided to general unsecured creditors in the Delphi Plan of

Reorganization to be distributed pursuant to this Stipulation to satisfy the ERISA Plans' Equity

Interest granted to Named Plaintiffs as representatives of the Class pursuant to this Stipulation.

(o)  "Delphi's Counsel" means the law firm of Shearman & Sterling LLP.

(p)  "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER), Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198.

(q)  "Delphi Plan Currency" means the form of consideration to be provided to general unsecured creditors, as provided in the Delphi Plan of Reorganization, which could include cash, common stock, debt securities, other securities, or any other kind of consideration.

(r)  "Delphi Securities Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER) and relating to *In Re: Delphi Corp. Securities Litigation*, Case No. 06-10026, Case Nos. 06-10027, 06-10028, 06-10029, 06-10030, 06-10031 and 06-10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) ((formerly No. 9:05-CV-80307) (KLR) (S.D. Fla.)).

(s)  "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in ¶ 17 hereof.

(t)  "ERISA Plans' Equity Interest" means the interest as against Delphi granted and approved by the Bankruptcy Court in its order approving this Settlement to the Named Plaintiffs, as representatives of the Class, pursuant to this Stipulation, which shall be an allowed interest in the aggregate face amount of Twenty-Four Million, Five Hundred Thousand Dollars (U.S. $24,500,000), with no additional provision to be made for accrued interest, and which shall be an interest classified under the Delphi Plan of Reorganization in a separate equity

class, representative of the claims of the Class against Delphi arising out of or relating to any and all claims or causes of action in the Delphi ERISA Action.

(u)    "Escrow Agent" means Keller Rohrback L.L.P. or a federally-insured financial institution proposed by Keller Rohrback, L.L.P. and acceptable to counsel for Settling Defendants.

(v)    "Final" or "Finality," with respect to any Judgment or Alternative Judgment (both as defined herein), means: (a) if no appeal is filed, the expiration date of the time provided for under the corresponding rules of the applicable court or legislation for filing or noticing of any appeal from the Judgment; or (b) if there is an appeal from the Judgment, the date of (i) final dismissal of any appeal from the Judgment, or the final dismissal of any proceeding on certiorari or otherwise to review the Judgment; or (ii) the date of final affirmance on an appeal of the Judgment, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the Judgment, and, if certiorari or other form of review is granted, the date of final affirmance of the Judgment following review pursuant to that grant. Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or (ii) the plan of allocation, shall not in any way delay or preclude the Judgment from becoming Final.

(w)    "Gross Settlement Fund" means (A) the cash amount to be paid to the Escrow Agent pursuant to ¶ 8(a) hereof, which consists of the Insurance Payment; (B) the Delphi Consideration; (C) 23.7% of any remaining cash from the National Union Fire Insurance Company of Pittsburgh, Pa. Policy No. 931-88-56 after payment of all outstanding defense costs incurred as of the entry by the Court of the Order for Notice and Hearing in all material respects

10

(the "Insurance Remainder Payment"); and (D) any interest on or other income or gains in respect of these amounts or distributions earned while such amounts are held by the Escrow Agent.

      (x)    "Indemnity Credit" shall mean an amount equal to the value of the contractual indemnity claim, if any, that the Court shall determine such Barred Person would be entitled to assert against Settling Defendants but for operation of the Bar Order, adjusted, as the Court determines is appropriate, to reflect any limitation on the financial capability of the Settling Defendants to pay to the Barred Person any indemnity judgment against them; provided that in determining the Indemnity Credit with respect to Delphi as a Settling Defendant, the Court shall take into consideration whether the Barred Person would have held an allowed claim in the Bankruptcy Case for contractual indemnification and the amount, if any, that the holder of such an allowed claim would receive under the Delphi Plan of Reorganization on account thereof.

      (y)    "Insurance Payment" means Twenty Two Million, Five Hundred Thousand United States Dollars (US$ 22,500,000) that certain insurance carriers shall pay to the Escrow Agent in the amounts set forth in the Insurance Agreement.

      (z)    "Judgment" means (i) the proposed judgment or order by the Court approving the Settlement in the form attached hereto as Exhibits B, and (ii) any of the judgments and orders to be entered by the Bankruptcy Court approving the Settlement.

      (aa)    "Judgment Reduction Amount" means, with respect to any Barred Person, an amount determined by the Court at the time of entry of any judgment against such Barred Person, equal to the greatest of (i) the "Settlement Credit," (ii) the "Contribution Credit," or (iii) the "Indemnity Credit," as those terms are defined herein.

(bb)    "Lead Counsel" means the law firm of Keller Rohrback L.L.P.

(cc)    "Named Plaintiffs" means Gregory Bartell, Thomas Kessler, Neal Folck, Donald McEvoy, Irene Polito, and Kimberly Chase-Orr.

(dd)    "Net Settlement Fund" has the meaning defined in ¶ 9 hereof.

(ee)    "Notice" means the Notice of Proposed Settlement With Certain Defendants, Motions for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Tab 1 to Exhibit A.

(ff)    "Order for Notice and Hearing" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit A.

(gg)    "Plaintiffs' Counsel" means Lead Counsel and any other counsel representing Class Members.

(hh)    "Plans" means the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, and the ASEC Manufacturing Savings Plan.

(ii)    "Publication Notice" means the summary notice of proposed Settlement and hearing for publication substantially in the form attached as Tab 2 to Exhibit A.

(jj)    "Released Parties" means any and all of the Settling Defendants, Thomas H. Wyman, General Motors Investment Management Corporation, and their past or present members, subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, fiduciaries, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers,

12

co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal

representatives, employee benefit plans and their fiduciaries, unions and union representatives,

immediate family members and any person, firm, trust, partnership, corporation, officer, director

or other individual or entity in which any Settling Defendant has a controlling interest or which

is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs,

executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi

and its affiliates in the Bankruptcy Case; provided, however, that in no event shall Released

Parties be deemed to include State Street Bank and Trust Company.

(kk)    "Settled Claims" means any and all claims, debts, demands, rights or

causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to,

any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs,

expenses or liability whatsoever), whether based on federal, state, local, statutory or common

law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued,

liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual

in nature, including both known claims and Unknown Claims (as defined herein), against any of

the Released Parties (i) that have been asserted in the Delphi ERISA Action, or (ii) that could

have been asserted in any forum, including the Bankruptcy Court, by the Class Members or any

of them or the successors and assigns of any of them, which arise out of, are based upon, or in

any way relate to the allegations, transactions, facts, matters or occurrences, representations or

omissions involved, set forth, or referred to in the Delphi ERISA Action. "Settled Claims" does

not include (i) all claims, rights or causes of action or liabilities whatsoever related to the

enforcement of the Settlement, including, without limitation, any of the terms of this Stipulation

or orders or judgments issued by the courts in connection with the Settlement or confidentiality

obligations; (ii) any claim that is the subject of the settlement of the Delphi Securities Action and

not the subject of the settlement of the Delphi ERISA Action; or (iii) any ERISA Section

502(a)(1)(B) claim for individual vested benefits brought by an individual Plan participant or

beneficiary where such claims are unrelated to any claim, matter or cause of action that has been

asserted in the Delphi ERISA Action or that could have been asserted in the Delphi ERISA

Action arising out of, based upon, or in any way relating to the allegations, transactions, facts,

matters or occurrences, representations or omissions involved, set forth, or referred to in the

Delphi ERISA Action.

      (ll)   "Settled Defendants' Claims" means any and all claims, rights or causes of

action or liabilities whatsoever, whether based on federal, state, local, statutory or common law

or any other law, rule or regulation, including both known claims and Unknown Claims, that

have been or could have been asserted in the Delphi ERISA Action or any forum by the Settling

Defendants or any of them or the successors and assigns of any of them against any of the

Named Plaintiffs, any Class Member or their attorneys, which arise out of or relate in any way to

the institution, prosecution, or settlement of the Delphi ERISA Action. Settled Defendants'

Claims does not include all claims, rights or causes of action or liabilities whatsoever related to

the enforcement of the Settlement, including, without limitation, any of the terms of this

Stipulation or orders or judgments issued by the courts in connection with the Settlement or

confidentiality obligations.

      (mm)  "Settlement" means the settlement of the Delphi ERISA Action

contemplated by this Stipulation.

      (nn)   "Settlement Amount" means (i) the Insurance Payment and the Insurance

Remainder Payment, and (ii) the Delphi Consideration.

(oo)    "Settlement Credit" means either (a) $47,000,000, or (b) such other

amount determined by the Court at the time of entry of judgment against any Barred Person to

have been the value realized by the Class from the Settlement; provided that if the Court shall

determine when assessing liability against the Barred Person that some portion of the damages

claims settled in the Settlement are different from those for which the Barred Person is liable,

then the amount described in clauses (a) or (b) of this Paragraph minus the portion of the

Settlement Amount determined by the Court to have been paid with respect to such different

damages claims.

(pp)    "Settling Defendants" means Delphi Corporation, ASEC Manufacturing

General Partnership (sued as "ASEC Manufacturing"), Delphi Mechatronic Systems, Inc. (sued

as "Delphi Mechatronic Systems"), the Delphi Corporation Board of Directors Executive

Committee and its various past and present members, the Investment Policy Committee and its

various past and present members, J.T. Battenberg III, Robert H. Brust, Alan S. Dawes, Susan A.

McLaughlin, and John D. Opie.

(qq)    "Stipulation" means this Stipulation and Agreement of Settlement With

Certain Defendants.

(rr)    "Taxes" means (i) any and all applicable taxes, duties and similar charges

imposed by a government authority (including any estimated taxes, interest or penalties) arising

in any jurisdiction, if any (A) with respect to the income or gains earned by or in respect of the

Gross Settlement Fund, including, without limitation, any taxes that may be imposed upon

Settling Defendants or their counsel with respect to any income or gains earned by or in respect

of the Gross Settlement Fund for any period while it is held by the Escrow Agent during which

the Gross Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state

income tax purposes; or (B) by way of withholding as required by applicable law on any

distribution by the Escrow Agent or the Claims Administrator of any portion of the Gross

Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to this

Stipulation; and (ii) any and all expenses, liabilities and costs incurred in connection with the

taxation of the Gross Settlement Fund (including without limitation, expenses of tax attorneys

and accountants). For the purposes of paragraph (A) hereof, taxes imposed on Settling

Defendants shall include amounts equivalent to taxes that would be payable by Settling

Defendants but for the existence of relief from taxes by virtue of loss carryforwards or other tax

attributes, determined by Settling Defendants, acting reasonably, and accepted by the Escrow

Agent, acting reasonably.

      (ss)    "Unknown Claims" means any and all Settled Claims which any of the

Named Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of

the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not

know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him,

her or it might have affected his, her or its decision(s) with respect to the Settlement. With

respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and

agree that upon the Effective Date, the Named Plaintiffs and the Settling Defendants shall

expressly waive, and each Class Member shall be deemed to have waived, and by operation of

the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred

by any law of any state of the United States, or principle of common law or otherwise, which is

similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Named Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Delphi ERISA Action as part of the Settlement and any and all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims.

3.     (a)     Upon the Effective Date of the Settlement, Named Plaintiffs and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person or any of the Plans, any action, suit, cause of action, claim or demand against any Released Party or any other person who may claim any form of contribution or indemnity from any Released Party in respect of any Settled Claim or any matter related thereto, at any time on or after the Effective Date.

(b)     Upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Named Plaintiffs, all Class Members and their respective counsel.

## THE BAR ORDER

17

4.    The Court shall include the Bar Order in ¶¶ 5-6 in its final Judgment approving

the Settlement. The Bar Order shall be approved by the Court as fair to all persons or entities,

including but not limited to (a) the Defendants; (b) the Class; and (c) any non-settling

defendants.

5.    The Bar Order shall bar all claims against the Released Parties arising under

federal, state, or foreign statutory or common-law rule, however styled, whether for

indemnification or contribution or otherwise, arising out of or relating to the Delphi ERISA

Action and for any other claims arising out of or relating to the Settled Claims, including any

claims relating to the payment of the Settlement Amount (collectively, the "Barred Claims"), and

permanently bar, enjoin and restrain any person receiving notice of the Notice, or having actual

knowledge of the Notice, or having actual knowledge of sufficient facts that would cause such

person to be charged with constructive notice of the Notice (such persons, the "Barred Persons")

from commencing, prosecuting, continuing, or asserting, either derivatively or on behalf of

themselves, or through any person purporting to act on their behalf or purporting to assert a

claim under or through them, any Barred Claims against the Released Parties in any forum,

action or proceeding of any kind. The Bar Order shall provide that the Court shall retain

exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance,

validity, interpretation, administration, enforcement or enforceability of the Bar Order, except to

the extent any such matters relate to Delphi's bankruptcy proceeding, which shall be subject to

the continued jurisdiction of the Bankruptcy Court. After the Bar Order, if entered by the Court,

has become Final, Named Plaintiffs' Counsel shall post the Bar Order on its web site, or shall

provide notice thereof in such other form as the Court has required.

6.    The Bar Order shall provide that because the Barred Persons are barred from asserting any Barred Claims against the Released Parties, any judgments entered against the Barred Persons in the Delphi ERISA Action will be reduced by the Judgment Reduction Amount.  The Bar Order shall further provide that nothing in this Stipulation or in the Bar Order shall in any manner limit any joint and several liability applicable to any non-settling party as to the portion of any judgment against such non-settling party in the Delphi ERISA Action remaining after application of any Judgment Reduction Amount provided for in this Stipulation. Notwithstanding any other provision of this Stipulation, if in connection with entry of the Bar Order the Court shall conclude that (i) applicable law requires that the Judgment Reduction Amount be determined or calculated in a manner different from that set forth above in this ¶ 6, then the Judgment Reduction Amount shall be determined and calculated as the Court shall conclude is required by applicable law, and all settling parties shall consent to such determination and calculation of the Judgment Reduction Amount and to any modification to the form of the order and final judgment attached hereto as Exhibit B with respect to the Judgment Reduction Amount necessary to give effect to such conclusion by the Court, provided, however, that no settling party shall take the position that applicable law requires that the Judgment Reduction Amount be determined or calculated in a manner different from that set forth in this ¶ 6; or (ii) in addition to any potential or actual Judgment Reduction Amount, it is appropriate to provide for an additional reserve from the Net Settlement Fund to be available to compensate any Barred Person for any claim for reimbursement of and/or indemnification for legal fees and/or expenses relating to any Barred Claims, such reserve shall be established and maintained until the Delphi ERISA Action is concluded and fully and finally resolved with respect to all

such Barred Persons, or the reserve is terminated pursuant to the written agreement of all such

Barred Persons or otherwise pursuant to order of the Court.

7.      The Bar Order shall permanently enjoin the Settling Defendants from bringing

against the Barred Persons, either derivatively or on behalf of themselves, or through any person

purporting to act on their behalf or purporting to assert a claim under or through them, any of the

Barred Claims in any forum, action or proceeding of any kind, provided that a Settling

Defendant shall not be enjoined from bringing Barred Claims against a Barred Person if for any

reason such Barred Person asserts, or is legally not barred by the Bar Order from bringing,

Barred Claims against such Settling Defendant.

### SETTLEMENT CONSIDERATION

8.      In consideration for the release and discharge provided for in ¶ 3(a) hereof,

Settling Defendants shall distribute or pay or cause to be paid the Settlement Amount, as

prescribed below.

(a)      The certain insurance carriers party to the Insurance Agreement shall pay

to the Escrow Agent, on behalf of the Delphi Officer and Director Defendants, the Insurance

Payment and the Insurance Remainder Payment, within ten (10) business days after entry by the

Court of an order preliminarily approving the Settlement.

(b)      Delphi shall distribute to the Escrow Agent the Delphi Consideration as

soon as practicable after the later of (i) the satisfaction of each of the conditions in ¶ 17(a)–(g), or

(ii) the Bankruptcy Effective Date.

9.      (a)      The Gross Settlement Fund shall be used to pay (i) the Notice, Publication

Notice, and administration costs referred to in ¶ 10 hereof; and (ii) the attorneys' fee and expense

award referred to in ¶ 13 hereof (or, alternatively, to fund the reserve for such award referred to

in ¶ 13 hereof), and the Named Plaintiff case contribution awards referred to in ¶ 13 hereof. The

balance of the Gross Settlement Fund (inclusive of interest earned) after the matters described in

clauses (i) and (ii) of this Paragraph, and after the payment of any Taxes (as defined herein) shall

be the Net Settlement Fund. At a time following the Effective Date, the Net Settlement Fund

shall be transferred by the Escrow Agent to the Plans, subject to a plan of allocation (the "Plan of

Allocation") to be proposed by Lead Counsel and approved by the Court. All funds held by the

Escrow Agent shall be deemed to be in the custody of the Court until such time as the funds shall

be distributed to the Plans or otherwise disbursed pursuant to this Stipulation and/or further order

of the Court. No distributions shall be made from the Net Settlement Fund except in compliance

with the provisions of ¶ 23 hereof. The Escrow Agent shall invest any funds in excess of U.S.

$100,000 in short term United States Agency or Treasury Securities, repurchase agreements

collateralized by such instruments, or a mutual fund invested solely in such instruments, and

shall collect and reinvest all earnings accrued thereon. Any funds held in escrow in an amount of

less than U.S. $100,000 may be held in a bank account insured by the Federal Deposit Insurance

Corporation ("FDIC") or may be invested as funds in excess of U.S. $100,000 are invested. The

parties hereto agree that the Gross Settlement Fund is intended to be a Qualified Settlement Fund

within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent as

administrator of the Gross Settlement Fund within the meaning of Treasury Regulation § I.468B-

2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of

the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with

respect to the Gross Settlement Fund. The parties hereto agree that the Gross Settlement Fund

shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any

relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund

from the earliest date possible.  Delphi agrees to provide promptly to the Escrow Agent the

statement described in Treasury Regulation § I.468B-3(e).

      (b)     All Taxes (as defined herein) shall be paid out of the Gross Settlement

Fund, shall be considered to be a cost of administration of the Settlement and shall be timely paid

by the Escrow Agent without prior Order of the Court.  The Gross Settlement Fund or the

Escrow Agent shall, to the extent required by law, be obligated to withhold from any

distributions to Authorized Claimants and other persons entitled thereto pursuant to this

Stipulation any funds necessary to pay Taxes including the establishment of adequate reserves

for Taxes as well as any amount that may be required to be withheld under Treasury Reg.

1.468B-(1)(2) or otherwise under applicable law in respect of such distributions.  Further, the

Gross Settlement Fund shall indemnify and hold harmless the Settling Defendants and their

counsel for Taxes (including, without limitation, taxes payable by reason of any such

indemnification payments).

      (c)     None of the Settling Defendants, the Released Parties or their respective

counsel shall have any responsibility for or liability whatsoever with respect to (i) any act,

omission or determination of Lead Counsel or the Escrow Agent, or any of their respective

designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the

management, investment or distribution of the Gross Settlement Fund; (iii) the Plan of

Allocation; (iv) the determination, administration, calculation or payment of any claims asserted

against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the

Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or costs

incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.

## ADMINISTRATION

10.    (a)    The Escrow Agent, acting solely in its capacity as escrow agent, shall be subject to the jurisdiction of the Court.

(b)    The Escrow Agent may pay from the Gross Settlement Fund, without further approval from Settling Defendants, all reasonable costs and expenses up to the amount of U.S. $150,000 associated with identifying and notifying the Class Members and effecting mailing of the Notice and publication of the Publication Notice as ordered by the Court, and the administration of the Settlement, including without limitation, the actual costs of printing and mailing the Notice and publication of the Publication Notice. In the event that the Settlement is terminated, as provided for herein, reasonable notice and administration costs up to $150,000 paid or incurred in connection with this paragraph shall not be returned to the persons who paid the Settlement Amounts.

(c)    The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this Stipulation, and shall not be liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it, consistent with the terms hereof and those of any escrow agreements concerning the Gross Settlement Amount, in connection with the performance by it of its duties pursuant to the provisions of this Stipulation or order of the courts, except for its gross negligence or willful misconduct. If the Escrow Agent is uncertain as to its duties hereunder, the Escrow Agent may request that Named Plaintiffs (and, prior to the Effective Date, Delphi) sign a document which states the action or non-action to be taken by the Escrow Agent. In the event the Settlement is

terminated, as provided for herein, indemnified amounts and expenses incurred by the Escrow

Agent in connection with this paragraph shall not be returned to the persons who paid the

Settlement Amounts.

## BANKRUPTCY CASE ADMINISTRATION

11.    (a)    Delphi will make a motion, and will use reasonable efforts to cause such

motion to be returnable at the September 2007 omnibus hearing date in the Bankruptcy Case,

requesting an order from the Bankruptcy Court (i) certifying the Class under Bankruptcy Rule

7023 for purposes of this Settlement only, (ii) approving this Settlement, the settlement of the

Delphi Securities Action, and the Insurance Agreement, (iii) allowing the ERISA Plans' Equity

Interest in the Bankruptcy Case, and (iv) directing the Named Plaintiffs to vote all chapter 11

ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by

virtue of the ERISA Plans' Equity Interest or any proof of claim related to the Delphi ERISA

Action in favor of the Delphi Plan of Reorganization incorporating the Settlement.

(b)    Upon the Bankruptcy Court's entry of an order approving this Settlement

and certifying the Class for purposes of this Settlement only as set forth in ¶ 11(a) above, Named

Plaintiffs will withdraw, without prejudice, any proof of claim that they may assert they filed on

behalf of the Class in the Bankruptcy Case, which proofs of claim shall be withdrawn with

prejudice on the Effective Date.

(c)    Upon the Bankruptcy Court's entry of an order approving this Settlement

and certifying the Class for purposes of this Settlement only as set forth in ¶ 11(a) above, any

individual proof of claim filed in the Bankruptcy Case by Named Plaintiffs or on their behalf in

any capacity other than as representatives of the Class and relating to the allegations asserted in

the Delphi ERISA Action (including but not limited to the proofs of claim identified in Exhibit D

24

hereto) shall be deemed to be estimated, only for purposes of voting with respect to the Delphi

Plan of Reorganization, in the amount of One United States dollar (U.S. $1), and shall be

classified pursuant to the Delphi Plan of Reorganization in the separate equity class applicable to

the ERISA Plans' Equity Interest.

(d)     Nothing in this Stipulation shall limit, reduce or impact in any way any

individual, non-class claim asserted against Delphi in the Bankruptcy Case by Named Plaintiffs

or any Class Member that is not based on or related to the Settled Claims, including but not

limited to claims based on any such Named Plaintiff's or Class Member's status as a holder of

any Delphi Securities, which are not classified as an ERISA Plans' Equity Interest.

(e)     Named Plaintiffs shall cast any and all votes concerning the Delphi Plan of

Reorganization under their control by virtue of a claim, other than any claim that is not based on

or related to the allegations set forth in the Delphi ERISA Action, filed by them or on their

behalf or granted to them in the Bankruptcy Case, in either their individual or representative

capacity, including without limitation the ERISA Plans' Equity Interest, in favor of and in

acceptance of the Delphi Plan of Reorganization; provided, however, that nothing herein shall

constitute an offer with respect to any securities or solicitation of acceptance of a chapter 11

plan. Such Offer or solicitation only shall be made in compliance with all applicable securities

laws and/or provisions of the Bankruptcy Code.

12.     Upon the Effective Date, other than the ERISA Plans' Equity Interest, Named

Plaintiffs shall withdraw and shall be deemed to have withdrawn, with prejudice, any proof of

claim relating to the allegations in the Delphi ERISA Action and filed in the Bankruptcy Court

by them or on their behalf in either their individual or representative capacity (including but not

limited to the proofs of claim identified in Exhibit D hereto):

## ATTORNEYS' FEES AND EXPENSES

13.    Lead Counsel will apply to the Court for an award of attorneys' fees and

reimbursement of expenses payable from the Gross Settlement Fund and shall further provide to

the Court, as part of the motion for approval of the Settlement, all necessary information required

by the Court concerning the total award of attorneys' fees and reimbursement of expenses to be

payable from the Gross Settlement Fund.  Alternatively, Lead Counsel may request that the

Court reserve a portion of the Gross Settlement Fund for potential future awards of attorneys'

fees and expenses pursuant to applications to be filed by Lead Counsel with the Court upon the

conclusion of the ERISA Action.  Lead Counsel may also apply to the Court for case

contribution awards to Named Plaintiffs in an amount not to exceed $5,000 per Named Plaintiff.

Settling Defendants will take no position with respect to any such applications for attorneys' fees

or expenses (or reserve therefor), or Named Plaintiff case contributions awards.  Such amounts

as are awarded by the Court to Lead Counsel from the Gross Settlement Fund shall be payable

by the Escrow Agent immediately upon award (and, in the case of the Delphi Consideration,

upon Delphi's distribution to the Escrow Agent pursuant to this Stipulation), notwithstanding the

existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral

attack on the Settlement or any part thereof, subject to (i) the provisions of ¶ 23 hereof, and (ii)

Plaintiffs' Counsel's obligations to make appropriate refunds or repayments to the Gross

Settlement Fund plus accrued interest at the same rate as is earned by the Gross Settlement Fund,

if and when, as a result of any appeal and/or further proceedings on remand, or successful

collateral attack, the fee or cost award is reduced or reversed or for whatever reason the

Settlement is terminated pursuant to ¶ 18 hereof.  Settling Defendants shall have no obligations

whatsoever with respect to any attorneys' fees or expenses incurred by Plaintiffs' Counsel, which

shall be payable solely from the Gross Settlement Fund.

## TERMS OF ORDER FOR NOTICE AND HEARING

14.    (a)    Promptly after this Stipulation has been fully executed, Lead Counsel shall apply to the Court for entry of an Order for Notice and Hearing, substantially in the form annexed hereto as Exhibit A, which Order shall, among other provisions, certify the Class for settlement purposes only, and direct the Named Plaintiffs to vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the ERISA Plans' Equity Interest or any proof of claim based on or related to the Delphi ERISA Action in favor of the Delphi Plan of Reorganization incorporating the Settlement.

(b)    The mailing or publication of the Notice and Publication Notice shall not occur until all such orders of the Court have been obtained.

## TERMS OF ORDER AND FINAL JUDGMENT

15.    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Settling Defendants' Counsel shall request that a Judgment be entered substantially in the form annexed hereto as Exhibit B.

16.    INTENTIONALLY OMITTED

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

17.    The "Effective Date" of the Settlement shall be the date when all the following conditions of settlement shall have occurred:

(a)    payment of the Insurance Payment;

(b)    approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)    entry by the Court of a Judgment in all material respects in the form set forth in Exhibit B annexed hereto, and the expiration of any time for appeal or review of such Judgment, or, if any appeal is filed, after such Judgment is upheld on appeal in all material

respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Court enters a Judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Settlement, the date that such Alternative Judgment becomes Final;

        (d)     approval by the Court of the settlement in the Delphi Securities Action becoming Final;

        (e)     entry by the Bankruptcy Court of an order(s) approving the Settlement and the settlement in the Delphi Securities Action, and such order(s) becoming Final;

        (f)     approval by the Bankruptcy Court of the Insurance Agreement becoming Final;

        (g)     approval by the Court of the Bar Order provisions in the Judgment approving the Settlement becoming Final;

        (h)     distribution of the Delphi Consideration, pursuant to this Stipulation;

        (i)     expiration of the time to exercise the termination rights provided in ¶ 18 hereof.

      18.     Named Plaintiffs and Settling Defendants shall each have the right to terminate the Settlement and thereby this Stipulation by providing written notice of their election to do so ("Termination Notice") to one another hereto within thirty (30) days of any of the following: (a) the Court declining to enter the Order for Notice and Hearing in any material respect; (b) the Court refusing to approve this Settlement as set forth in this Stipulation; (c) the Court declining to enter the Judgment in any material respect or entering an Alternative Judgment; (d) the Court declining to enter in any material respect the Bar Order provisions in the Court's Judgment or order approving the Settlement; (e) the Bankruptcy Court refusing to approve this Settlement or

the Insurance Agreement; (f) the date upon which a Judgment is modified or reversed in any

material respect by any level of appellate court; (g) the date upon which an Alternative Judgment

is modified or reversed in any material respect by any level of appellate court; (h) the date upon

which the settlement in the Delphi Securities Action is terminated; (i) the failure of the Insurance

Payment or the Insurance Remainder Payment to be made pursuant to this Stipulation; provided,

however, that all termination rights provided under this Stipulation shall expire upon Delphi's

distribution of the Delphi Consideration pursuant to this Stipulation.

19.    Notwithstanding anything else in this Stipulation, Settling Defendants may, in

their sole and unfettered discretion, elect in writing to terminate the Settlement and this

Stipulation on or before the tenth (10th) business day prior to the Fairness Hearing if any claim or

potential claim by the United States Department of Labor against any Released Party that arises

out of, is based upon, or in any way relates to the allegations, transactions, facts, matters or

occurrences, representations or omissions involved, set forth, or referred to in the Delphi ERISA

Action has not been resolved on terms acceptable to any such Released Party. Such claim or

potential claims include, but are not limited to, any proof of claim filed in the Bankruptcy Case

by the United States Department of Labor.

20.    Except as otherwise provided herein, in the event the Settlement is terminated, the

parties to this Stipulation shall be deemed to have reverted to their respective status in the Delphi

ERISA Action and, with respect to each other, in the Bankruptcy Case, immediately prior to the

execution of this Stipulation and, except as otherwise expressly provided, the parties shall

proceed in all respects as if this Stipulation and any related orders had not been entered.

Furthermore, within ten (10) business days following any termination of this Settlement, the

Escrow Agent shall pay an amount equal to the Settlement Amounts previously paid by Delphi

and/or the certain insurers party to the Insurance Agreement, as the case may be, shall be paid to

Delphi and/or the certain insurers party to the Insurance Agreement, as the case may be, to

Delphi and/or the certain insurers party to the Insurance Agreement, as the case may be, together

with any interest or other income earned thereon or in respect thereof, less any Taxes paid or due

with respect to such income, less any amounts required to be paid to the Escrow Agent pursuant

to the relevant escrow agreement, and less any reasonable costs of administration and notice

actually incurred and paid or payable from the Settlement Amount (as described in ¶ 11 hereof),

less any applicable withholding taxes.

## NO ADMISSION OF WRONGDOING

21.    This Stipulation, whether or not consummated, and any proceedings taken

pursuant to it:

(a)    shall not be offered or received against any of the Settling Defendants as

evidence of or construed as or deemed to be evidence of any presumption, concession, or

admission by any of those Settling Defendants with respect to the truth of any fact alleged by any

of the plaintiffs or the validity of any claim that has been or could have been asserted in the

Delphi ERISA Action or in any litigation, or the deficiency of any defense that has been or could

have been asserted in the Delphi ERISA Action or in any litigation, or of any liability,

negligence, fault, or wrongdoing of the Settling Defendants;

(b)    shall not be offered or received against the Settling Defendants as

evidence of a presumption, concession or admission of any fault, misrepresentation or omission

with respect to any statement or written document approved or made by any of the Settling

Defendants;

(c)    shall not be offered or received against the Settling Defendants as

evidence of a presumption, concession or admission with respect to any liability, negligence,

30

fault or wrongdoing, or in any way referred to for any other reason as against any of the Settling

Defendants, in any other civil, criminal or administrative action or proceeding, other than such

proceedings as may be necessary to effectuate the provisions of this Stipulation; provided,

however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to

effectuate the liability protection granted them hereunder;

(d)    shall not be construed against any of the Settling Defendants as an

admission or concession that the consideration to be given hereunder represents the amount that

could be or would have been recovered after trial; and

(e)    shall not be construed as or received in evidence as an admission,

concession or presumption against Named Plaintiffs or any of the Class Members that any of

their claims are without merit, or that any defenses asserted by the Settling Defendants have any

merit, or that damages recoverable under the Delphi ERISA Action would not have exceeded the

Gross Settlement Fund.

## MISCELLANEOUS PROVISIONS

22.    All of the exhibits attached hereto are hereby incorporated by reference as though

fully set forth herein.

23.    Named Plaintiffs, on their own behalf and on behalf of each member of the Class,

agree to hold each of the Released Parties, which shall include, without limitation, the Executive

Committee of the Board of Directors of Delphi Corporation and its various past and present

members and the Investment Policy Committee and its various past and present members,

harmless from any claims for indemnification and/or contribution that have been, could have

been, or could be asserted against the Released Parties by any Barred Person arising from or

relating to the Delphi ERISA Action, including, without limitation, any such claims for

indemnification and/or contribution that have been, could have been, or could be asserted by

State Street Bank and Trust Company. Such agreement to hold the Released Parties harmless may be implemented solely (i) through the reduction of any judgment that may be obtained against an indemnified party in an amount equal to the payment that such party would otherwise receive from any of the Released Parties on account of such indemnified claim, and/or (ii) recovery from the Net Settlement Fund. Until the Delphi ERISA Action has been concluded and fully and finally resolved with respect to all Barred Persons, there shall be no distribution from the Net Settlement Fund that would cause the balance remaining in the Net Settlement Fund to be less than the aggregate of Named Plaintiffs' claims for potential damages with respect to all claims against Barred Persons that have not been concluded and fully and finally resolved. In addition, in the event that the Named Plaintiffs determine to compromise and settle any claim against any party, including but not limited to State Street Bank and Trust Company, arising from or relating to the Delphi ERISA Action, Named Plaintiffs shall cause any such settlement to bar that party from making any claims for indemnification and/or contribution against any of the Released Parties or otherwise seeking indemnification and/or contribution from any of the Released Parties.

24.     The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Named Plaintiffs and Settling Defendants agree not to assert in any forum that the Delphi ERISA Action was brought by the plaintiffs or defended by Settling Defendants in those actions in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Delphi ERISA Action. The parties agree that the amount paid and the other terms of the Settlement were

negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

25.    Prior to entry of the Order preliminarily approving the Settlement, Named Plaintiffs shall dismiss from the Delphi ERISA Action defendant Thomas H. Wyman, without prejudice.

26.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

27.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

28.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and that Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Lead Counsel and enforcing the terms of this Stipulation.

29.    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

30.    This Stipulation and its exhibits, and any related escrow agreements constitute the entire agreement concerning the Settlement of the Delphi ERISA Action, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation or its exhibits other than those contained and memorialized in such documents.

31.    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

32.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

33.    The construction and interpretation of this Stipulation and the Supplemental

Agreement shall be governed by the internal laws of the State of New York without regard to

conflicts of laws, except to the extent that federal law of the United States requires that federal

law governs.

34.    This Stipulation shall not be construed more strictly against one party than

another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel

for one of the parties, it being recognized that it is the result of arm's-length negotiations

between the parties and all parties have contributed substantially and materially to the

preparation of this Stipulation.

35.    All counsel and any other person executing this Stipulation and any of the

exhibits hereto, or any related Settlement documents, warrant and represent that they have the

full authority to do so and that they have the authority to take appropriate action required or

permitted to be taken pursuant to the Stipulation to effectuate its terms.

36.    Named Plaintiffs shall be entitled to take up to ten (10) hours of deposition

testimony of Settling Defendants' witnesses. Named Plaintiffs shall cooperate with Settling

Defendants' counsel with respect to the scheduling and location of such depositions. Named

Plaintiffs shall only be entitled to request the production by Settling Defendants of non-

privileged documents relating to Named Plaintiffs' claims against non-settling defendants.

37.    Named Plaintiffs and Settling Defendants agree to cooperate fully with one

another in seeking (i) Court approval of the Order for Notice and Hearing, the Stipulation and the

Settlement and (ii) confirmation by the Bankruptcy Court of the Delphi Plan of Reorganization

and any request made to the Bankruptcy Court to approve this Settlement and the Insurance

Agreement, and to promptly agree upon and execute all such other documentation as may be

reasonably required to obtain final approval by the Court of the Settlement, confirmation by the

Bankruptcy Court of the Delphi Plan of Reorganization, and final approval of any request made

to the Bankruptcy Court to approve this Settlement.

DATED: August 31, 2007

**KELLER ROHRBACK L.L.P.**

By: _____

    Lynn Lincoln Sarko
    Gary A. Gotto
    Amy Williams-Derry
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    Telephone:  (206) 623-1200
Facsimile:  (206) 623-3384

**Lead Counsel**

**SHEARMAN & STERLING LLP**

By: _____

    Stuart J. Baskin
    Brian H. Polovoy
    Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

**Counsel for Delphi Corporation, ASEC
Manufacturing General Partnership (sued as
"ASEC  Manufacturing"), Delphi Mechatronic
Systems, Inc. (sued as "Delphi Mechatronic
Systems"),  the Investment Policy Committee,
Robert H. Brust, Susan A. McLaughlin,
and John D. Opie**

**BAKER BOTTS L.L.P.**

By: _Bridget Moore_ *(w/ Consent Matt Allen on 8/31/07)*

William H. Jeffress, Jr.
Bridget M. Moore
Michael G. Pattillo, Jr.
Joe R. Caldwell, Jr.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg III**


**O'MELVENY & MYERS LLP**

By: _Robert N. Eccles_ *(per consent 8/31/07 mph)*

Robert N. Eccles
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

# **<u>EXHIBIT A</u>**

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

-------------------------------------------------------x

|  |  |  |
|---|---|---|
| IN RE: DELPHI CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION | : : : : : : : : : : : : : : : : : : | MDL No. 1725 Master Case No. 05-md-1725 Hon. Gerald E. Rosen  This Document Relates to: *In re Delphi Corp. ERISA Litigation*, Nos. 05-CV-70882, 05-70940, 05-71030, 05-71200, 05-71249, 05-71291, 05-71339, 05-71396, 05-71397, 05-71398, 05-71437, 05-71508, 05-71620, 05-71897, 05-72198 |

-------------------------------------------------------x

## ORDER PRELIMINARILY APPROVING SETTLEMENT, PRELIMINARILY CERTIFYING A SETTLEMENT CLASS, APPROVING FORMS AND METHODS OF NOTICE, AND SETTING A FAIRNESS HEARING

This litigation involves consolidated actions asserting claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), with respect to the Delphi Savings-Stock Purchase Program for Salaried Employees (the "Salaried Plan"), the Delphi Personal Savings Plan for Hourly-Rate Employees (the "Hourly Plan"), the ASEC Manufacturing Savings Plan (the "ASEC Plan"), and the Delphi Mechatronic Systems Savings-Stock Purchase Program (the "Mechatronic Plan") (collectively, the "Plans").

Presented to the Court for preliminary approval is a Settlement of the litigation as against certain defendants. The Settlement also would resolve certain claims filed against Delphi Corporation in the Bankruptcy Case. The terms of the Settlement are set out in a Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions dated August 31, 2007 (the "Settlement Stipulation"), executed by counsel on behalf of the Named Plaintiffs and the Settling Defendants. [1]

The Court has considered the proposed Settlement to determine, among other things, whether to certify a class for settlement purposes and whether the Settlement is sufficient to warrant the issuance of notice to members of the Class. Upon reviewing the Settlement Stipulation and the ERISA Named Plaintiffs' Motion for Order Preliminarily Approving Settlement, Preliminarily Certifying a Settlement Class, Approving Forms and Method of Notice, and Setting a Fairness Hearing, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.    **Class Findings:**    The Court preliminarily finds that the requirements of the United States Constitution, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Michigan, and any other applicable laws have been met as to the "Class" defined below, in that:

    a.    The Class is cohesive and well defined.

    b.    The members of the Class are ascertainable from records kept with respect to the Plans, and the members of the Class are so numerous that their joinder before the Court would be impracticable.

---

1.    Capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Settlement Stipulation.

MDL No. 1725
Findings and Order re Settlement 8/31/2007

c.    Based on allegations in the Consolidated Class Action Complaint, the Court preliminarily finds that there are one or more questions of fact and/or law common to the Class.

d.    Based on allegations in the Consolidated Class Action Complaint that the Settling Defendants engaged in misconduct affecting members of the Class in a uniform manner, the Court finds that the claims of the Named Plaintiffs are typical of the claims of the Class.

e.    The Named Plaintiffs will fairly and adequately protect the interests of the Class in that (i) the interests of Named Plaintiffs and the nature of their alleged claims are consistent with those of the members of the Class, (ii) there appear to be no conflicts between or among Named Plaintiffs and the Class, and (iii) Named Plaintiffs and the members of the Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions.

f.    The prosecution of separate actions by individual members of the Class would create a risk of (i) inconsistent or varying adjudications as to individual Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in the Delphi ERISA Action or (ii) adjudications as to individual Class members that would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability of those persons to protect their interests.

2.      **Class Certification:** Based on the findings set out in paragraph 1 above, the Court preliminarily certifies the following class (the "Class") for settlement purposes under Fed. R. Civ. P. 23(b)(1) and (2): all persons (a) who were (1) participants in or beneficiaries of the Salaried Plan, Hourly Plan or ASEC Plan at any time between May 28, 1999 and November 1, 2005, or (2) participants in or beneficiaries of the Mechatronic Plan at any time between June 1, 2001 and November 1, 2005, and (b) whose accounts included investments in the Delphi and/or GM stock funds. Excluded from the Class are (i) the Defendants; (ii) members of the immediate families of each of the Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any parent, subsidiary or affiliate of a Defendant; (v) any person who was an officer or director of a Defendant or any of their subsidiaries or affiliates during the Class Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any such excluded person or entity.

3.      **Class Representation:** The Court appoints Named Plaintiffs as class representatives for the Class, Keller Rohrback, L.L.P. as Lead Counsel for the Class, and Morgan & Meyers, PLC as Liaison Counsel for the Class. Named Plaintiffs are authorized and directed, in their capacities as Class representatives, to vote any chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the ERISA Plans' Equity Interest or any proof of claim based on or related to the allegations set forth in the Delphi ERISA Action in favor of and in acceptance of the Delphi Plan of Reorganization incorporating the Settlement.

4.    **Preliminary Findings Regarding Proposed Settlement:**    The Court preliminarily finds that the proposed Settlement should be approved as (a) fair, reasonable and adequate, (b) the product of serious, informed, arm's-length, and non-collusive negotiations, (c) having no obvious deficiencies, (d) not improperly granting preferential treatment to Class representatives or segments of the Class, (e) falling within the range of possible approval, and (f) warranting notice to Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the proposed Settlement.

5.    **Fairness Hearing:**    A hearing is scheduled for    November 13, 2007 (the "Fairness Hearing") to determine, among other things:

a.    whether the Settlement should be approved as fair, reasonable and adequate;

b.    whether the litigation should be dismissed with prejudice as to the Settling Defendants pursuant to the terms of the Settlement Stipulation;

c.    whether the Notice and the Publication Notice and the means of disseminating same pursuant to the Settlement Stipulation (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing; (iii) constituted due, adequate and sufficient notice to all persons entitled to notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

d.   whether to bar all Barred Claims against the Released Parties by any Barred Person;

e.   whether to establish a reserve of 25% of the Gross Settlement Fund for a potential award of attorneys' fees and expenses; and

f.   whether to grant to each Named Plaintiff a case contribution award of up to $5,000 payable from the Gross Settlement Fund.

6.   **Notice to Class:** The settling parties have presented to the Court a proposed form of Notice, which is appended hereto as Exhibit A.  With respect to such form of Notice, the Court finds that such Notice fairly and adequately: (a) describes the terms and effect of the Settlement; (b) notifies the Class concerning the proposed plan of allocation described in the Notice; (c) notifies the Class that Lead Counsel will request that the Court establish a reserve of 25% of the Gross Settlement Fund for a potential award of attorneys' fees and expenses and will request that the Court grant to each Named Plaintiff a case contribution award  payable from the Gross Settlement Fund of up to $5,000; (d) gives notice with respect to the proposed Bar Order; (e) gives notice to the Class of the time and place of the Fairness Hearing; and (f) describes how the recipients of the Notice may object to approval of the Settlement.   The settling parties have proposed the following manner of disseminating the Notice to members of the Class, and the Court finds that such proposed manner of dissemination is the best notice practicable under the circumstances and directs that Lead Counsel shall:

a.   By no later than forty-five (45) days before the Fairness Hearing, cause the Notice, with such non-substantive modifications thereto as may be

agreed upon by the settling parties and presented to the Court, to be mailed, by first-class mail, postage prepaid, to the last known address of each of the following persons who can be identified by reasonable effort: (i) each person within the Class and all non-settling parties in the Delphi ERISA Action; (ii) in cases of pending litigation, arbitration or other proceeding, if any, of any other claim against any of the Released Parties relating to any of the Settled Claims, all counsel known by Lead Counsel to represent a member of the Class; (iii) all other counsel known by Lead Counsel to represent a member of the Class; (iv) counsel of record in the Delphi ERISA Action for any non-settling party; and (v) the United States Department of Labor. Settling Defendants shall provide Lead Counsel with the names and last known addresses of the members of the Class to the extent such information is within Settling Defendants' custody or control.

   b. By no later than forty-five (45) days before the Fairness Hearing, cause the Notice to be published on the website identified in the Notice.

   c. By no later than forty-five (45) days before the Fairness Hearing, cause the Publication Notice in the form attached hereto as Exhibit B, with such non-substantive modifications thereto as may be agreed upon by the settling parties and presented to the Court, to be published on at least one occasion in the *USA Today* (national edition) and the *Detroit Free Press.*

   d. By no later than ten (10) calendar days before the Fairness Hearing, file with the Court and post on its website the motion for final approval of the Settlement and the motion for approval of the Plan of Allocation described in the Notice.

At or before the Fairness Hearing, Lead Counsel shall file with the Court a proof of timely compliance with the foregoing mailing and publication requirements.

7.    **Objections to Settlement:** All of the following persons shall be referred to herein as "Objectors": (a) any member of the Class who objects to the fairness, reasonableness or adequacy of the Settlement, to the Plan of Allocation, to any term of the Settlement Stipulation, to the proposed reserve for attorneys' fees and expenses, or to any request for compensation for the Named Plaintiffs, and (b) any person who would be bound by the Bar Order and who objects to entry of the Bar Order. Any Objector must file with the Court a statement of his, her or its objection(s), specifying the reason(s), if any, for each such objection made, including any legal support and/or evidence that such Objector wishes to bring to the Court's attention or introduce in support of such objection. The Objector must also mail the objection and all supporting law and/or evidence to Lead Counsel and counsel for certain Settling Defendants. The addresses for filing objections with the Court and service on counsel are as follows:

To the Court:

> Clerk of the Court
> United States District Court
>  for the Eastern District of Michigan
> 231 W. Lafayette Blvd., Fifth Floor
> Detroit, MI  48226

To Lead Counsel:

> Lynn Lincoln Sarko, Esq.
> Gary A. Gotto, Esq.
> Keller Rohrback LLP
> 1201 Third Avenue, Suite 3200
> Seattle, WA  98101-3052
> Fax:  206-623-3384

To counsel for certain of the Settling Defendants:

> Brian H. Polovoy, Esq.
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, New York 10022-6069
> Fax: 646-848-4703

The Objector and his, her or its counsel (if any) must both effect service of the objection on counsel listed above and file it with the Court so as to be received by no later than fourteen (14) calendar days before the date of the Fairness Hearing. If an Objector hires an attorney to represent him, her or it for the purposes of making such objection pursuant to this paragraph, the attorney must both effect service of a notice of appearance on counsel listed above and file it with the Court by no later than fourteen (14) calendar days before the date of the Fairness Hearing. Filing and service may be effected on the Court and counsel by mail, provided facsimile service is made on counsel listed above by no later than fourteen (14) calendar days before the date of the Fairness Hearing. Any member of the Class or other person who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

8. **Appearance at Fairness Hearing:** Any Objector who files and serves a timely, written objection in accordance with paragraph 7 above may appear at the Fairness Hearing either in person or through counsel retained at the Objector's expense. Objectors or their attorneys intending to appear at the Fairness Hearing must

9

effect service of a notice of intention to appear setting forth, among other things, the name, address and telephone number of the Objector (and, if applicable, the name, address and telephone number of the Objector's attorney) on counsel listed above and file it with the Court by no later than fourteen (14) days before the date of the Fairness Hearing. Filing and service may be effected on the Court and counsel by mail, provided facsimile service is made on counsel listed above by no later than fourteen (14) calendar days before the date of the Fairness Hearing. Any Objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

9.    **Notice Expenses:** Reasonable expenses up to $150,000 incurred by the Escrow Agent in implementing the provisions of paragraph 6 above pertaining to providing notice of the Settlement, as well as Taxes as provided for in the Settlement Stipulation, shall be paid solely from the Gross Settlement Fund (including by reimbursement to the Escrow Agent from the Gross Settlement Fund upon notice to Settling Defendants' counsel) pursuant to direction by Lead Counsel, without further order of this Court.

10.    **Service of Papers:**    Settling Defendants' counsel and Lead Counsel shall promptly furnish each other with copies of any and all objections and notices of intention to appear at the Fairness Hearing that come into their possession.

11.    **Termination of Settlement:** This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered

MDL No. 1725
Findings and Order re Settlement  8/31/2007

this Order (pursuant to the provisions of paragraph 20 of the Settlement Stipulation), if the Settlement is terminated or does not reach the Effective Date under the terms of the Settlement Stipulation. In such event, paragraph 20 of the Settlement Stipulation shall govern the rights of the settling parties.

12. **Use of Order:** Under no circumstances shall this Order be construed, deemed or used as an admission, concession or declaration by or against any of the Settling Defendants of any fault, wrongdoing, breach or liability. Nor shall the Order be construed, deemed or used as an admission, concession or declaration by or against Named Plaintiffs or the Class that their claims lack merit or that the relief requested in the Delphi ERISA Action is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he, she or it may have.

SO ORDERED this _____ day of September, 2007.


_____
Hon. Gerald E. Rosen
United States District Judge

# **EXHIBIT 1**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

---------------------------------------------------------x
                                                         :
                                                         :
                                                         :
IN RE: DELPHI CORPORATION                                :     MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"                         :     Master Case No. 05-md-1725
LITIGATION                                               :     Hon. Gerald E. Rosen
                                                         :
                                                         :     This Document Relates to:
                                                         :     *In re Delphi Corp. ERISA Litigation*,
                                                         :     Nos. 05-CV-70882, 05-70940,
                                                         :     05-71030, 05-71200, 05-71249,
                                                         :     05-71291, 05-71339, 05-71396,
                                                         :     05-71397, 05-71398, 05-71437,
                                                         :     05-71508, 05-71620, 05-71897,
                                                         :     05-72198
                                                         :
                                                         :
---------------------------------------------------------x

## NOTICE OF PROPOSED SETTLEMENT OF ERISA CLASS ACTION LITIGATION, PROPOSED BAR ORDER, SETTLEMENT FAIRNESS HEARING, PROPOSED RESERVE FOR ATTORNEYS' FEES AND PROPOSED NAMED PLAINTIFFS' COMPENSATION

**TO:**

**ANY PERSON WHO WAS A PARTICIPANT AT ANY TIME BETWEEN MAY 28, 1999 AND NOVEMBER 1, 2005 IN THE DELPHI SAVINGS-STOCK PURCHASE PROGRAM FOR SALARIED EMPLOYEES (THE "SALARIED PLAN"), THE DELPHI PERSONAL SAVINGS PLAN FOR HOURLY-RATE EMPLOYEES (THE "HOURLY PLAN"), OR THE ASEC MANUFACTURING SAVINGS PLAN (THE "ASEC PLAN"), OR A PARTICIPANT AT ANY TIME BETWEEN JUNE 1, 2001 AND NOVEMBER 1, 2005 IN THE DELPHI MECHATRONIC SYSTEMS SAVINGS-STOCK PURCHASE PROGRAM (THE "MECHATRONIC PLAN") (COLLECTIVELY, THE "PLANS"), WHOSE**

**ACCOUNT INCLUDED INVESTMENTS IN THE DELPHI AND/OR GM STOCK
FUNDS**

**and**

**ANY BENEFICIARY, ALTERNATE PAYEE, REPRESENTATIVE, OR
SUCCESSOR-IN-INTEREST OF ANY SUCH PERSON**
**and**

**ANY PERSON WHO IS A DEFENDANT IN THE ABOVE-CAPTIONED
"ERISA" LITIGATION WHO IS NOT A PARTY TO THE PROPOSED
SETTLEMENT DESCRIBED IN THIS NOTICE**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

The United States District Court for the Eastern District of Michigan (the "Court")
has preliminarily approved a proposed settlement of a class action lawsuit brought
under the Employee Retirement Income Security Act (the "Settlement"). The
Settlement is with all of the Defendants in the litigation other than State Street Bank
and Trust Company ("State Street"). The terms of the Settlement are contained in
a Stipulation and Agreement of Settlement With Certain Defendants – ERISA
Actions (the "Settlement Stipulation"), a copy of which is available at
www.KellerSettlements.com or by contacting Lead Counsel identified below.
Capitalized terms used in this Notice and not defined herein have the meanings
assigned to them in the Settlement Stipulation. The Settlement will provide for
payments to the Plans and for allocation of those payments to the accounts of, or
otherwise for the benefit of, Classs Members. The Settlement is summarized below.

The Settlement provides for a Bar Order that will bar certain claims against the
Released Parties by persons described in the Settlement Stipulation as "Barred
Persons."

The Court has scheduled a hearing to evaluate the fairness and adequacy of the
proposed Settlement at which the Court will consider Named Plaintiffs' motion for
final approval of the Settlement (including the Bar Order), for the establishment of
a reserve for a potential award of attorneys' fees and costs, and for case
contributions awards to the Named Plaintiffs. That hearing, before the Hon. Gerald
E. Rosen, has been scheduled for November 13, 2007, at ____ .m. in Courtroom ____,
of the United States District Court for the Eastern District of Michigan, 231 W.
Lafayette Blvd., Detroit, Michigan.

Any objections to the Settlement, the Bar Order, the reserve for attorneys' fees and
costs, or compensation to the Named Plaintiffs, must be served in writing on the

attorneys for the Class and on counsel for certain of the Settling Defendants. The procedure for objecting is described below.

The Settlement does not settle, resolve, or dismiss any claims that were brought against certain of the Defendants under applicable securities laws, although a separate settlement with respect to certain of such claims has concurrently been presented to the Court for approval.

This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Settlement Stipulation. The Settlement Stipulation, and additional information with respect to this litigation, are available at www.kellersettlements.com, or from counsel listed on Page 4 below.

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU NEED NOT APPEAR IN COURT, AND YOU NEED NOT HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE OF THE SETTLEMENT, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.

Your Legal Rights and Options in the *Settlement*:

| You May Do Nothing. No Action is Necessary to Participate in the Settlement. | If the Settlement is approved by the Court and you are a member of the Class, you do not need to do anything to receive a payment. The portion, if any, of the Net Settlement Fund to be allocated to your Plan account or otherwise for your benefit will be calculated as part of the implementation of the Settlement.<br><br>If you are a current Plan participant, any share of the Net Settlement Fund to which you are entitled will be deposited into your Plan account. If you no longer are a Plan participant and are entitled to share in the Net Settlement Fund, a Plan account will be established for you, if necessary, and you will be notified of such account. |
|---|---|

| You May Object to the Settlement (so as to be received by October 29, 2007) | If you wish to object to any part of the Settlement, including the requested attorneys' fees and costs, Named Plaintiffs' compensation, or the Bar Order, you may (as discussed below) write to the Court and counsel about why you do not like the Settlement. |
|---|---|
| You May Attend the Hearing (to be held on November 13, 2007) | If you have submitted to the Court and counsel a written objection to the Settlement, you may (but do not have to) attend the Court hearing regarding the Settlement and present your objections to the Court. |

■ These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

■ The Court still has to decide whether to grant final approval of the Settlement. Payments will be made only if certain requirements are satisfied, including final approval by the Court of the Settlement bein upheld in the event of any appeals.

Further information regarding the litigation and this Notice may be obtained by

contacting Plaintiffs' Lead Counsel:

Lynn Lincoln Sarko, Esq.
Gary A. Gotto, Esq.
Amy Williams-Derry, Esq.
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Toll-Free Phone: (877) 296-9982
Email: claimsadministrator@delphisettlement.com
www.KellerSettlements.com

## WHAT THIS NOTICE CONTAINS

**Summary of Settlement** .......................................................................................................

1.    Why did I get this Notice package? ...............................................................

2.    What is the lawsuit about? ...........................................................................

3.    Why is this case a class action? ....................................................................

4.    Why is there a Settlement? ...........................................................................

5.    How do I know whether I am part of the Settlement? ..............................

6.    What does the Settlement provide? ..............................................................

7.    How much will my payment be? ...................................................................

8.    How can I get a payment? .............................................................................

9.    When would I get my payment? ...................................................................

10.    Can I get out of the Settlement? ..................................................................

11.    Do I have a lawyer in the case? ....................................................................

12.    How will the lawyers be paid? ....................................................................

13.    How do I tell the Court if I don't like the Settlement? .............................

14.    When and where will the Court decide whether to grant final approval of the Settlement? ......................................................................................

15.    Do I have to come to the hearing? ...............................................................

16.    May I speak at the hearing? .........................................................................

17.    What happens if I do nothing at all? ...........................................................

18.    How do I get more information? ..................................................................

This litigation (the "Delphi ERISA Action") is a consolidation of a series of cases filed in different federal courts. As described in more detail below and in the complaints filed in the lawsuits, the cases concern allegations that Defendants breached fiduciary duties they owed under the Employee Retirement Income Security Act of 1974 ("ERISA") to participants in the Plans. Copies of the most recent Consolidated Complaint and other documents filed in the Delphi ERISA Action are available at www.KellerSettlements.com.

## SUMMARY OF SETTLEMENT

1.    A Gross Settlement Fund consisting of consideration that Lead Counsel currently expect may be valued at approximately $47 million will be established to settle the Delphi ERISA Action with respect to the Released Parties. This fund will consist of approximately $22.5 million in cash funded from available insurance policies and an allowed interest in the Delphi Corporation chapter 11 Bankruptcy Case in an aggregate amount that Lead Counsel expect may be valued at approximately $24.5 million, and interest earned on the fund while it is held in escrow. The allowed interest granted to the Named Plaintiffs by the Bankruptcy Court in Delphi's bankruptcy proceeding is a distribution of Delphi Plan Currency in the same form, ratio and treatment provided to general unsecured creditors in the Delphi Plan of Reorganization but without provision for accrued interest. Lead Counsel will investigate the possibility of selling this allowed interest prior to the receipt of any distributions from the Delphi bankruptcy estate; if Lead Counsel conclude that such a sale is in the best interests of the Class, Lead Counsel will seek

Court authorization to consummate such a sale and deposit the proceeds thereof in the Gross Settlement Fund. Lead Counsel currently anticipate that the value of the allowed interest in the Bankruptcy Case will be approximately $24.5 million.

2.      Subject to certain restrictions in the Settlement Stipulation, the net amount in the Settlement Fund, including interest, and after payment of any taxes and approved reserves, costs, fees, and expenses, will be paid to the Plans and, after payment of implementation expenses, the remaining amount shall be allocated to Class Members according to a Plan of Allocation to be approved by the Court.

3.      Claims asserted in the Delphi ERISA Action against defendant State Street will *not* be settled as part of this Settlement. Litigation of those claims will continue.

As with any litigation, Named Plaintiffs would face an uncertain outcome if the Delphi ERISA Action were to continue against the Settling Defendants. Continued litigation of the Delphi ERISA Action against the Settling Defendants could result in a judgment or verdict greater or lesser than the recovery under the Settlement, or in no recovery at all.

Throughout this litigation, Named Plaintiffs and the Settling Defendants have disagreed on both liability and damages, and they do not agree on the amount that would be recoverable even if the Plaintiffs were to prevail at trial. Settling Defendants have denied and continue to deny the claims and contentions alleged by Named Plaintiffs, that they are liable at all to the Class, and that the Class or the Plans have suffered any damages for which the Settling Defendants are legally responsible. Nevertheless, the Settling Defendants have taken into

account the uncertainty and risks inherent in any litigation, particularly in a complex case such as this, and have concluded that it is desirable that the Delphi ERISA Action be fully and finally settled and resolved as to them on the terms and conditions set forth in the Settlement Stipulation.

**1.    Why did I get this Notice package?**

You or someone in your family are/is or may have been a participant in or beneficiary of one of the Plans who meets the definition of the "Class" contained in the Settlement Stipulation. The Court ordered that this Notice to be sent to you because, if you fall within that group, you have a right to know about the Settlement and about all of your options before the Court decides whether to approve the Settlement. If the Court grants final approval of the Settlement, and after any objections and appeals are resolved, and subject to certain conditions in the Settlement Stipulation, the Net Settlement Fund may become available to be paid to the Plans and then allocated among Class members according to a Court-approved Plan of Allocation. This Notice package describes the litigation, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. Alternatively, if you are a non-settling defendant in the Delphi ERISA Action, the Court caused this Notice to be sent to you because your rights may be affected by the Bar Order proposed to be entered by the Court in connection with the Settlement.

The Court in charge of these cases is the United States District Court for the Eastern District of Michigan. The people who sued are called "Named Plaintiffs," and the people they sued are called "Defendants." The lawsuit that is the subject of this Notice and the Settlement is known as *In re Delphi Corporation Securities, Derivative & "ERISA" Litigation*, MDL No.

1725, Master File No. 05-CV-70882-GER. This lawsuit represents a consolidation of a number of different cases alleging class action claims under ERISA. We refer to these consolidated cases collectively as the "Delphi ERISA Action."

The following persons and entities who have agreed to settle are called the "Settling Defendants": Delphi Corporation, ASEC Manufacturing General Partnership, Delphi Mechatronic Systems, Inc., the Delphi Corporation Board of Directors Executive Committee and its past and present members, the Investment Policy Committee and its past and present members, J.T. Battenberg III, Robert H. Brust, Alan S. Dawes, Susan McLaughlin, and John D. Opie.

## 2. What is the lawsuit about?

The Delphi ERISA Action alleges that the Defendants were fiduciaries of the Plans and violated fiduciary duties under ERISA that they owed to the participants of the Plans. In the Consolidated Class Action Complaint, Named Plaintiffs have asserted causes of action for the losses suffered by the Plans as the result of the alleged breaches of fiduciary duties by the Defendants.

Participants in the Plans maintained account balances that were allocated among various investment funds maintained by the Plans. During much of the period May 28, 1999, through November 1, 2005, the investment funds included a fund consisting of Delphi stock and a fund consisting of GM stock. Many participants invested their contributions to the Plans in the Delphi stock fund. In addition, during much of the Class Period, employer matching contributions were made in the form of Delphi stock and credited to participants' account balances in the Delphi stock fund.

9

The Named Plaintiffs in the Delphi ERISA Action allege that certain of the Defendants had the discretion to freeze further investments in Delphi stock and to sell the Plans' holdings of Delphi stock. They also allege that Defendants knew or should have known that Delphi stock was not a prudent investment. As a result, Named Plaintiffs assert that the Defendants acted imprudently when they failed to prevent further investment in Delphi stock and failed to liquidate the Plans' Delphi stock holdings. In addition, Named Plaintiffs allege that Defendants had the duty to monitor the performance of the Plans' investment fiduciaries, including the investment fiduciaries with responsibilities with respect to the Delphi and GM stock funds, and that Defendants breached those duties to monitor.

The Settling Defendants deny that they have liability to the Plans or their participants or beneficiaries. If the litigation were to continue, the Settling Defendants would raise numerous defenses to liability, including the following:

- They were not fiduciaries of the Plans, or, if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the Delphi ERISA Action;

- To the extent they were fiduciaries as to the matters at issue in the Delphi ERISA Action, they fully discharged all fiduciary duties imposed on them by ERISA;

- Even if they failed to discharge one or more of their ERISA fiduciary duties, any such breach of fiduciary duty did not cause the losses alleged by Named Plaintiffs; and

- The relief sought by the Named Plaintiffs in the Delphi ERISA Action is not permitted under ERISA.

Lead Counsel have conducted an extensive investigation of Delphi and of the alleged losses suffered by the Plans as a result of the breaches of fiduciary duty alleged in the Delphi ERISA Action. In addition, through that investigation and through discovery of information in

the Delphi ERISA Action, Lead Counsel have obtained hundreds of thousands of pages of documents, including documents and materials governing the Plans, communications with Plan participants, internal Delphi documents regarding the Plans, Delphi's Securities and Exchange Commission filings, press releases, public statements, news articles and other publications, documents filed in the Delphi bankruptcy proceedings, and documents that Delphi produced to the Securities and Exchange Commission regarding Delphi's financial condition and alleged fraudulent financial transactions during the class period. Lead Counsel have conducted an extensive review and analysis of these materials.

Lead Counsel have opposed several motions by all Defendants to dismiss the Delphi ERISA Action. These motions are fully briefed, and at the time the Settlement was reached these motions were pending before the Court.

This Settlement is the product of intense, arm's-length negotiations between Lead Counsel and Settling Defendants' counsel conducted in a multi-day mediation before the Court-appointed master for settlement purposes, the Honorable Layn R. Phillips.

Named Plaintiffs will continue to litigate their claims against State Street. If the Court approves the Settlement, the Court will enter a "Bar Order" that will prevent "Barred Persons" (which includes State Street) from suing any of the Settling Defendants for "indemnification" or "contribution" arising out of the Delphi ERISA Action or for any other claims arising out of the Settled Claims, including any claims relating to the payment of the Settlement Amount. This means that, for example, if Named Plaintiffs win a judgment against State Street, State Street will not be able to file a lawsuit seeking reimbursement from any of the Settling Defendants for any portion of what State Street is obligated to pay Named Plaintiffs under the judgment.

The Bar Order will also provide that any verdict or judgment that might be obtained in the Delphi ERISA Action against a Barred Person will be reduced by certain amounts to be determined by the Court pursuant to criteria set forth in the Settlement Stipulation. The Settlement Stipulation also provides that the Class will hold the Released Parties harmless with respect to any claims for indemnification or contribution that are asserted against them by any Barred Person arising from or related to the Delphi ERISA Action, which hold harmless agreement may be implemented solely through reduction of any judgment that may be obtained against such Barred Person or recovery from the Net Settlement Fund. The Settlement Stipulation also provides that for so long as there are claims pending against any Barred Person in the Delphi ERISA Action, no distribution will be made from the Net Settlement Fund to the extent that such distribution would reduce the balance in the Net Settlement Fund below the aggregate damages amounts being sought from the Barred Persons in the Delphi ERISA Action. Any person or entity that objects to the Bar Order may file an objection with the Court, appear at the Fairness Hearing on November 13, 2007, and be heard by the Court regarding such objection, in accordance with the procedures described in this Notice.

## 9. Why is this case a class action?

In a class action, one or more plaintiffs, called "Named Plaintiffs," sue on behalf of people who have similar claims. All of the individuals on whose behalf the Named Plaintiffs are suing are "Class Members." One court resolves the issues for all Class Members. U.S. District Judge Gerald E. Rosen is presiding over this case. In its order granting preliminary approval of the Settlement and setting the date for the Fairness Hearing, the Court certified the Class for settlement purposes in the Delphi ERISA Action.

The Named Plaintiffs, each of whom is a current or former employee of Delphi and participant in one of the Plans, are: Gregory Bartell, Kimberly Chase-Orr, Thomas Kessler, Donald McEvoy, Neal Folck, and Irene Polito.

**4.  Why is there a Settlement?**

This Settlement is the product of extensive, arm's-length negotiations between Lead Counsel and Settling Defendants' counsel, and was facilited by the services of an experienced mediator.  The Court has not reached any final decisions on the merits of Named Plaintiffs' claims against the Settling Defendants.  Instead, the Named Plaintiffs and Settling Defendants have agreed to a settlement to end the lawsuit as between them.  In reaching the Settlement, they have avoided the cost and time of a trial.  As with any litigation, the Named Plaintiffs would face an uncertain outcome if this case went to trial.  On the one hand, pursuing the case against the Settling Defendants could result in a verdict offering relief greater than this Settlement.  On the other hand, continuing the case against the Settling Defendants could result in a verdict for less money than Named Plaintiffs have obtained in this Settlement, or even in no recovery at all. Based on these factors, the Named Plaintiffs and their attorneys believe the Settlement is in the best interests of all Class Members.  Additional information concerning the Settlement and these factors is available in the motion for preliminary approval of the Settlement Stipulation, which may be obtained at www.KellerSettlements.com.

**5.  How do I know whether I am part of the Settlement?**

United States District Judge Gerald E. Rosen has conditionally certified that this Settlement shall proceed on behalf of everyone who, subject to certain exceptions identified below, fits the following description:

All persons (a) who were (i) participants in or beneficiaries of the Delphi Savings-
Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan
for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between
May 28, 1999 and November 1, 2005, or (ii) participants in or beneficiaries of the
Delphi Mechatronic Systems Savings-Stock Purchase Program between June 1,
2001 and November 1, 2005, and (b) whose accounts included investments in the
Delphi and/or GM Stock Funds.  Excluded from the Class are (i) the Defendants;
(ii) members of the immediate families of each of the Defendants; (iii) any entity
in which any Defendant has a controlling interest; (iv) any parent, subsidiary or
affiliate of a Defendant; (v) any person who was an officer or director of a
Defendant or of any of Defendants subsidiaries or affiliates during the Class
Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns
of any such excluded person or entity.

If you are a Class Member, your share of the Net Settlement Fund, if any, will depend

upon the Court-approved Plan of Allocation, described in Section 7 below.

## 6.  What does the Settlement provide?

A Settlement Fund consisting of consideration that Lead Counsel currently expect may be

valued at approximately $47 million will be established to settle the Delphi ERISA Action with

respect to the Released Parties.  This fund will consist of $22.5 million in cash funded from

available insurance policies and an allowed interest in the Delphi Corporation chapter 11

Bankruptcy Case of Delphi Plan Currency in the aggregate amount of approximately $24.5

million, and interest earned by the fund while it is held in escrow.  The allowed interest granted

to Named Plaintiffs by the Bankruptcy Court in Delphi's bankruptcy proceeding is a distribution

from Delphi in the same form, ratio and treatment provided to general unsecured creditors in the

Delphi Plan of Reorganization but without provision for accrued interest.  Lead Counsel will

investigate the possibility of selling this allowed interest prior to the receipt of any distributions

from the Delphi bankruptcy estate; if Lead Counsel concludes that such a sale is in the best

interests of the Class, they will seek Court authorization to consummate such a sale and deposit

the proceeds thereof in the Gross Settlement Fund. Lead Counsel anticipate that the value of the allowed interest will be approximately $24.5 million. The Net Settlement Fund, including interest, and after payment of and establishment of reserves for any taxes and Court-approved costs, fees, and expenses, including any Court-approved award of attorneys' fees and expenses (or reserve therefor), and Court-approved compensation to be paid to the Named Plaintiffs, and subject to certain restrictions in the Settlement Stipulation, will be paid to the Plans and, after payment of implementation expenses, the remaining amount will be allocated to the Plan accounts of Class Members (or successor accounts for Class Members who no longer hold Plan accounts) according to a Plan of Allocation to be approved by the Court. Any payment to the Plans is subject to certain conditions and limitations set forth in the Settlement Stipulation.

The Settlement Stipulation also provides that Named Plaintiffs, on their own behalf and on behalf of each member of the Class, agree to hold each of the Released Parties, which shall include, without limitation, the Executive Committee of the Board of Directors of Delphi Corporation and its various past and present members and the Investment Policy Committee and its various past and present members, harmless from any claims for indemnification and/or contribution that have been, could have been, or could be asserted against the Released Parties by any Barred Person arising from or relating to the Delphi ERISA Action, including, without limitation, any claims for indemnification and/or contribution that have been, could have been, or could be asserted by State Street Bank and Trust Company. Such agreement to hold the Released Parties harmless may be implemented solely (i) through the reduction of any judgment that may be obtained against an indemnified party in an amount equal to the payment that such party would otherwise receive from any of the Released Parties on account of such indemnified claim, and/or (ii) recovery from the Net Settlement Fund. Paragraph 23 of the Settlement

Stipulation provides that until the Delphi ERISA Action has been concluded and fully and finally resolved with respect to all Barred Persons, there shall be no distribution from the Net Settlement Fund that would cause the balance remaining in the Net Settlement Fund to be less than the aggregate of Named Plaintiffs' claims for potential damages with respect to all claims against Barred Persons that have not been concluded and fully and finally resolved.

All Class members and anyone claiming through them are deemed to fully release the Released Parties from Settled Claims. The Released Parties are defined in the Settlement Stipulation; generally they are the Settling Defendants and certain affiliated or otherwise related persons and entities. The Settled Claims, also defined in the Settlement Stipulation, generally include all claims asserted in the Delphi ERISA Action and all similar claims made in the Bankruptcy Case, as well as any claims that could have been asserted in any forum by or on behalf of Class Members which arise out of, are based upon, or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi ERISA Action. This means that Class members will not have the right to sue the Released Parties for any such claims. It also means that Class members who filed proofs of claim in Delphi's Bankruptcy Case asserting claims related to the Plans of the type described above in this paragraph shall not be entitled to recover anything under those proofs of claim, but shall recover what they are entitled to receive under the Settlement as a member of the Class.

The Settlement also provides for a "Bar Order." This is a Court order that will bar any non-settling defendant in the Delphi ERISA Action and anyone else with actual or constructive notice of the Settlement from bringing any "Barred Claim" in any forum against any of the Released Parties. The Barred Claims generally include claims for indemnity or contribution

16

arising out of the Delphi ERISA Action, or for any other claims arising out of the Settled Claims, including any claims relating to the payment of the Settlement Amount. The Bar Order will also provide that any verdict or judgment that might be obtained in the Delphi ERISA Action against a Barred Person will be reduced by certain amounts to be determined by the Court pursuant to criteria set forth in the Settlement Stipulation. Any person or entity that objects to the Bar Order may file an objection with the Court, and may appear at the Fairness Hearing, in accordance with the procedures described in this Notice.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Stipulation (including its exhibits), which may be obtained at www.KellerSettlements.com, or by contacting counsel listed at (877) 296-9982.

## 7. How much will my payment be?

Plaintiffs will submit a detailed Plan of Allocation to the Court for approval prior to the Fairness Hearing. The Plan of Allocation, which, after filing, may be obtained at www.KellerSettlements.com, or by contacting Lead Counsel, will describe the manner by which the Settlement proceeds paid into the Plans (the "Net Settlement Fund") will be distributed to Class Members. In general terms, the Net Settlement Fund will be allocated to Class Members on a pro rata basis such that the amount received by each Class Member will depend on his or her calculated loss compared to the total losses sought to be recovered in the Delphi ERISA Action from the Settling Defendants. Because the Net Settlement Fund is less than the total losses alleged to be suffered in the Delphi ERISA Action, each Class Member's proportionate recovery will be less than his or her alleged loss. If your proportionate recovery is a nominal

amount (less than $10 or such other amount as is approved by the Court), it may be forfeited to the Plans or distributed *pro rata* to other Class Members. You are not responsible for calculating the amount you may be entitled to receive under the Settlement. This calculation will be done as part of the implementation of the Settlement, and will be based on reasonably available data from the Plans.

**8.   How can I get a payment?**

You do <u>not</u> need to file a claim for recovery. If you are a Settlement Class member entitled to a share of the Net Settlement Fund, your share will be deposited in your Plan account. If you are a former Plan participant, an account will be established for you in the Plan if necessary, and you will be notified of such account. If you are a former participant and have not provided the Plan with your current address, please contact the Plan administrator at Delphi immediately, or contact Lead Counsel either by email at claimsadministrator@delphisettlement.com or at (877) 296-9982.

**9.   When would I get my payment?**

Payment is conditioned on several contingencies, including the Court's approval of the Settlement and such approval becoming Final and no longer subject to any appeals to any court; as well as the receipt of the proceeds of the allowed interest under the Delphi Plan of Reorganization. In addition, as described in the answer to Question No. 6 above, for so long as any claim is pending in the Delphi Delphi ERISA Action against any Barred Person, distributions from the Net Settlement Fund will not be made to the extent they would reduce the balance in the Net Settlement Fund below the aggregate damages amounts being sought from

Barred Persons in the Delphi Delphi ERISA Action. Subject to these limitations, and upon

satisfaction of various conditions, the Net Settlement Fund will be paid to the Plans and allocated

to the accounts of members of the Settlement Class pursuant to the Plan of Allocation (described

in the Answer to Question No. 7 above) as soon as possible after final approval has been

obtained for the Settlement (which includes affirmation on appeal, if any, and includes approval

by the Bankruptcy Court and the affirmation upon appeal, if any, taken therefrom). Any appeal

of the Court's final approval or bankruptcy court approval could take several years. Any accrued

interest on the Net Settlement Fund will be included in the amount paid to the Plans and

allocated to the Plan accounts of members of the Class. The Settlement may be terminated on

several grounds, including if the Court does not approve or modifies the Settlement. Should the

Settlement be terminated, the Delphi ERISA Action would proceed as if the Settlement had not

been reached.

## 10. Can I get out of the Settlement?

You do not have the right to exclude yourself from the Settlement. The Delphi ERISA

Action was certified under Federal Rule of Civil Procedure 23(b)(1) and (2) as a non-"opt-out"

class action because of the way ERISA operates. Breach of fiduciary duty claims under ERISA

must be brought by participants on behalf of ERISA plans, and any judgment or resolution

necessarily applies to all plan participants and beneficiaries. Thus, it is not possible for any

participants or beneficiaries to exclude themselves from the benefits of the Settlement. As a

Class member, you will be bound by any judgments or orders that are entered in the Delphi

ERISA Action for all claims that were asserted in the Delphi ERISA Action or otherwise

included in the release under the Settlement.

Although you cannot opt out of the Settlement, you can object to the Settlement and ask

the Court not to approve it. See Answer to Question No. 13, below.

**11. Do I have a lawyer in the case?**

The Court has appointed the law firm of Keller Rohrback, LLP, located in Seattle,

Washington and Phoenix, Arizona, as Lead Counsel for Named Plaintiffs in the Delphi ERISA

Action and the law firm of Morgan & Meyers, located in Dearborn, Michigan, as Liaison

Counsel. These lawyers are called "Class Counsel." You will not be charged directly by these

lawyers. If you want to be represented by your own lawyer, you may hire one at your own

expense.

**12. How will the lawyers and Named Plaintiffs be paid?**

Lead Counsel will request that the Court establish a reserve of 25% of the Settlement

Fund for a potential award of attorneys' fees and expenses. Lead Counsel will file an application

with the Court for an award or attorneys' fees and expenses at the conclusion of the Delphi

ERISA Action as against the remaining defendant, State Street. Lead Counsel will post this

application on www.KellerSettlements.com at least ten (10) days prior to the date set by the

Court for a hearing thereon. Named Plaintiffs in the Delphi ERISA Action will share in the

allocation of the money paid to the Plans on the same basis and to the same extent as all other

members of the Settlement Class, except that, in addition, Lead Counsel will request that the

Court grant the Named Plaintiffs case contribution awards up to $5,000 each. The following

section sets forth instructions if you wish to tell the Court that you do not agree with any part of

the Settlement or with the reserve for attorneys' fees and expenses or the proposed Named

Plaintiff case contribution awards.

20

**13. How do I tell the Court that I don't like the Settlement or the Bar Order?**

If you are a Class Member, you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. If your rights are affected by the Bar Order, you may object to it. In either case, to object, you must send a letter or other written statement saying that you object to the Settlement of the Delphi ERISA Action in In re Delphi Corporation Securities, Derivative & "ERISA" Litigation, MDL No. 1725, Master File No. 05-CV-70882-DT. Be sure to include your name, address, telephone number, signature, and a full explanation of all reasons you object to the Settlement or the Bar Order.

**Your written objection must be filed with the Court, and mailed to the counsel listed below, so as to be received by no later than October 29, 2007, at the following addresses:**

**Clerk of the Court:**
David J. Weaver, Clerk of Court
United States District Court, Eastern District of Michigan
231 West Lafayette Blvd., Fifth Floor
Detroit, MI 48226

**Lead Counsel and certain Settling Defendants' Counsel:**

| | |
|---|---|
| Lynn L. Sarko, Esq. | Stuart J. Baskin, Esq. |
| Gary A. Gotto, Esq. | Brian H. Polovoy, Esq. |
| KELLER ROHRBACK L.L.P. | SHEARMAN & STERLING, LLP |
| 1201 Third Avenue, Ste 3200 | 599 Lexington Avenue |
| Seattle, WA 98101-3052 | New York, New York 10022 |
| *Plaintiffs' Lead Counsel* | *Counsel to Settling Defendants* |
| | *Delphi Corporation, ASEC Manufacturing* |
| | *General Partnership (sued as "ASEC* |
| | *Manufacturing"), Delphi Mechatronic* |
| | *Systems, Inc. (sued as "Delphi* |
| | *Mechatronic Systems"), the Investment* |
| | *Policy Committee, Robert H. Brust,* |
| | *Susan A. McLaughlin, and John D. Opie* |

**14. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at ▒▒▒ ▒▒ on November 13, 2007, at the United

States District Court for the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit,

Michigan, in Courtroom ▒▒▒▒. At that hearing, the Court will consider whether the Settlement

is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the

Fairness Hearing, the Court will decide whether to grant final approval of the Settlement. The

Court will also rule on the motions for attorneys' fees and expenses. It is uncertain how long it

will take the Court to issue these decisions.

## 15. Do I have to come to the hearing?

No. Lead Counsel will answer questions the Court might have with respect to the

Settlement. But you are welcome to attend at your own expense. If you send an objection, you

do not have to come to Court to talk about it. As long as you mailed your written objection on

time, the Court will consider your objection when it considers whether to approve the Settlement

as fair, reasonable and adequate. You also may pay your own lawyer to attend the Fairness

Hearing, but attendance is not necessary.

## 16. May I speak at the hearing?

If you are a Class member, you may ask the Court for permission to speak at the Fairness

Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear

at Fairness Hearing in In re Delphi Corporation Securities, Derivative & "ERISA" Litigation,

MDL No. 1725, Master File No. 05-CV-70882-GER." Be sure to include your name, address,

telephone number, and your signature. Your Notice of Intention to Appear must be served on the

attorneys listed in the Answer to Question No. 13, above, no later than October 29, 2007, and

must be filed with the Clerk of the Court at the address listed in the Answer to Question No. 13.

**17. What happens if I do nothing at all?**

If you do nothing and you are a member of the Class, you will participate in the

Settlement of the Delphi ERISA Action as described above in this Notice if the Settlement is

granted final approval and if the Effective Date of the Settlement is reached.

**18. How do I get more information?**

This Notice summarizes the proposed Settlement. The complete terms of the Settlement

are set forth in the Settlement Stipulation. You may obtain a copy of the Settlement Stipulation

by making a written request to the counsel listed at page 4 above. Copies may also be obtained

at www.KellerSettlements.com.

You may also contact Lead Counsel at (877) 296-9982 or

claimsadministrator@delphisettlement.com for more information regarding the Settlement.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

```
-----------------------------------------------------------x
                                    :
                                    :
IN RE: DELPHI CORPORATION           :     MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"    :     Master Case No. 05-md-1725
LITIGATION                          :     Hon. Gerald E. Rosen
                                    :
                                    :     This Document Relates to:
                                    :     In re Delphi Corp. ERISA Litigation,
                                    :     Nos. 05-CV-70882, 05-70940,
                                    :     05-71030, 05-71200, 05-71249,
                                    :     05-71291, 05-71339, 05-71396,
                                    :     05-71397, 05-71398, 05-71437,
                                    :     05-71508, 05-71620, 05-71897,
                                    :     05-72198
                                    :
-----------------------------------------------------------x
```

## COURT-ORDERED LEGAL NOTICE

**IF YOU WERE A PARTICIPANT AT ANY TIME BETWEEN MAY 28, 1999
AND NOVEMBER 1, 2005 IN THE DELPHI SAVINGS-STOCK PURCHASE
PROGRAM FOR SALARIED EMPLOYEES (THE "SALARIED PLAN"), THE
DELPHI PERSONAL SAVINGS PLAN FOR HOURLY-RATE EMPLOYEES
(THE "HOURLY PLAN"), OR THE ASEC MANUFACTURING SAVINGS PLAN
(THE "ASEC PLAN"), OR A PARTICIPANT AT ANY TIME BETWEEN JUNE 1,
2001 AND NOVEMBER 1, 2005 IN THE DELPHI MECHATRONIC SYSTEMS
SAVINGS-STOCK PURCHASE PROGRAM (THE "MECHATRONIC PLAN")
(COLLECTIVELY, THE "PLANS")**

**or**

**A  BENEFICIARY,  ALTERNATE  PAYEE,  REPRESENTATIVE,  OR
SUCCESSOR-IN-INTEREST OF ANY SUCH PERSON, YOU MAY BE**

**ELIGIBLE TO RECEIVE A PAYMENT AS A RESULT OF A CLASS ACTION
SETTLEMENT.**

**IF YOU ARE A DEFENDANT IN THE ABOVE-CAPTIONED "ERISA"
LITIGATION, YOUR RIGHTS MAY BE AFFECTED BY A BAR ORDER
PROPOSED IN CONNECTION WITH A CLASS ACTION SETTLEMENT.**

A proposed Settlement has been preliminarily approved by a federal court in a
class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement
Income Security Act ("ERISA") in connection with the four employee benefit plans
(collectively, the "Plans") listed above. The terms of the Settlement are contained in a
Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions,
dated August 30, 2007 (the "Settlement Stipulation"), a copy of which is available at
www.KellerSettlements.com or by contacting Lead Counsel identified below.
Capitalized terms used in this Publication Notice and not defined herein have the
meanings assigned to them in the Settlement Stipulation.

This Settlement will provide for the establishment of a settlement fund (the
"Settlement Fund") of consideration that Lead Counsel expect, based on information
currently available to them, to be valued at approximately $47 million (consisting of
approximately $22.5 million in cash and an allowed interest in the Delphi Corporation
chapter 11 bankruptcy proceeding that Lead Counsel currently expect will be valued at
approximately $24.5 million). Cash proceeds in the Settlement Fund (subject to Court-
approved reserves, fees, expenses, and limitations), eventually will be paid to the Plans,
which will allocate those proceeds to the accounts of participants in the Plans in
accordance with a Plan of Allocation to be submitted to the Court for approval.

If you qualify, you will receive such an allocation. You do not need to submit a
claim or take any other action unless you wish to object to the Settlement. The United

States District Court for the Eastern District of Michigan (the "Court") authorized this Notice.

*THE COURT WILL HOLD A HEARING ON November 13, 2007 TO DECIDE WHETHER TO GRANT FINAL APPROVAL OF THE SETTLEMENT.*

**Who is Included in the Settlement?**

If you were a participant or beneficiary in any of the Plans at any time during the period starting on May 28, 1999 (June 1, 2001 in the case of the Mechatronic Plan) through and including November 1, 2005, and your Plan account was invested in whole or in part in the Delphi or GM stock funds, you are a member of the Class (a "Class Member"). (The Defendants in the litigation and their family members are generally excluded from the Class.)

**What Is This Case About?**

The plaintiffs in the case allege that the Defendants breached their fiduciary duties under ERISA with respect to the Plans by continuing to allow the investment of participant account balances in Delphi stock, by failing to monitor other fiduciaries, and by other related acts. All of the Defendants deny that they did anything wrong. The Court has not ruled in favor of either side. Plaintiffs have agreed to the settlement with all Defendants other than State Street Bank and Trust Company ("State Street") because they believe that in light of the risks associated with continuing to prosecute the litigation, the settlement is in the best interests of the members of the Class.

The litigation will continue against State Street. In addition, claims that were brought against certain of the Defendants under applicable securities laws in related litigation pending before the Court are not affected by the Settlement, but are the subject

of a separate settlement that has been presented concurrently to the Court for approval. Litigation with regard to securities law claims is continuing with respect to certain other defendants.

**How Will the Settlement Money Be Allocated?**

If you are a Class Member, your share of the Settlement Fund will be based on your proportionate share of the losses allegedly suffered by the Plans that were sought to be recovered through the lawsuit from the Settling Defendants. The greater your share of those losses, the larger your share will be of the Net Settlement Fund. It is anticipated, however, that your share of the net settlement proceeds will be less than your actual losses.

**What Fees and Expenses are Being Sought by the Attorneys?**

The lawyers who have prosecuted this case on behalf of Named Plaintiffs and the Class on a contingent fee basis will request that the Court establish a reserve of 25% of the Settlement Fund for potential awards of attorneys' fees and expenses upon the conclusion of the lawsuit. Class Members may file objections to the establishment of this reserve. The Court must approve any award of attorneys' fees and expenses.

**Are There More Details to the Settlement?**

The Settlement includes a number of other important details. These include, but are not limited to, provisions relating to (1) releases of claims against the Settling Defendants by the Class; (2) issuance of a "Bar Order" prohibiting non-settling defendants and others from suing the Settling Defendants for indemnity or contribution or certain other claims, but giving those persons certain rights to judgment reduction in the

event that Plaintiffs obtain a judgment against them; and (3) allocation of payment to the Plans among participants' accounts.

### How Do I Get More Information?

If you have received in the mail a Notice of Proposed Settlement of ERISA Class Litigation, Proposed Bar Order, Settlement Fairness Hearing, Proposed Reserve for Attorney's Fees and Proposed Named Plaintiffs' Compensation ("Notice of Proposed Settlement") regarding this lawsuit, you should read that document for more information. It is more detailed than this newspaper notice. Among other things, it includes a more detailed description of the terms of the Settlement Stipulation, a description of the history of the case, and an explanation of the reasons for the Settlement,

If you did not receive a Notice of Proposed Settlement in the mail, you may request one by contacting Plaintiffs' Lead Counsel:

Lynn Lincoln Sarko, Esq.
Gary A. Gotto, Esq.
Amy Williams-Derry, Esq.
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Toll-Free Phone: (877) 296-9982
Email: claimsadministrator@delphisettlement.com
www.KellerSettlements.com

In addition, the Settlement Stipulation, and additional information regarding the Settlement, are available at www.KellerSettlements.com.

### What Are My Options?

Because of the nature of the case, you cannot "opt out" or exclude yourself from the Settlement. If you wish to object to the Settlement or the Bar Order, you must file an objection with the Court so as to be received by October 29, 2007, as described in the Notice of Proposed Settlement. If you do not want to object to the Settlement or the Bar

5

Order, you do not have to do anything.  If the Court approves the Settlement and you are a member of the Class, you will be entitled to have a share of the Net Settlement Fund (subject to certain Court-approved restrictions) paid into your Plan account.

**What Happens Next?**

The Court will hold a Fairness Hearing on November 13, 2007.  At that hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider those objections. After the Fairness Hearing, the Court will decide whether to grant final approval of the Settlement.

# **EXHIBIT B**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

```
-------------------------------------------------------------x
                                        :
                                        :
IN RE: DELPHI CORPORATION               :    MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"        :    Master Case No. 05-md-1725
LITIGATION                              :    Hon. Gerald E. Rosen
                                        :
                                        :    This Document Relates to:
                                        :    In re Delphi Corp. ERISA Litigation,
                                        :    Nos. 05-CV-70882, 05-70940,
                                        :    05-71030, 05-71200, 05-71249,
                                        :    05-71291, 05-71339, 05-71396,
                                        :    05-71397, 05-71398, 05-71437,
                                        :    05-71508, 05-71620, 05-71897,
                                        :    05-72198
                                        :
                                        :
-------------------------------------------------------------x
```

## ORDER AND FINAL JUDGMENT

This is a case brought under the Employment Retirement Income Security Act (ERISA),

29 U.S.C. § 1001 et seq., claiming breach of fiduciary duty.  Named Plaintiffs filed a

Consolidated Class Action Complaint containing allegations of Defendants' fiduciary status and

wrongdoing.  Following a mediation conducted by the Honorable Layn R. Phillips, appointed by

the Court as special master for settlement purposes, Named Plaintiffs and certain defendants

reached a settlement of the action.  A Stipulation and Agreement of Settlement With Certain

Defendants – ERISA Actions, dated August 31, 2007 ("Settlement Stipulation"), was filed with

the Court on August 31, 2007.   Before the Court are (1) ERISA Named Plaintiffs' Motion for

Final Approval of ERISA Class Action Settlement With Certain Defendants ("Final Approval

Motion"); and (2) ERISA Named Plaintiffs' Motion and Memorandum for Approval of Plan of

Allocation ("Plan of Allocation Motion") (collectively, the "Motions").[1]

On September __, 2007, the Court entered its Order Preliminarily Approving Settlement,

Preliminarily Certifying a Settlement Class, Approving Forms and Methods of Notice, and

Setting a Fairness Hearing ("Preliminary Approval Order"). The Court has received declarations

attesting to the mailing of the Notice and publication of the Publication Notice in accordance

with the Preliminary Approval Order. A hearing was held on November ___, 2007 (the "Final

Approval Hearing") (i) to determine whether to grant the Final Approval Motion; (ii) to

determine whether to grant the Plan of Allocation Motion; and (iii) to rule upon such other

matters as the Court might deem appropriate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The Court has jurisdiction over the subject matter of this action, all members of

the Class, and all Settling Defendants pursuant to 29 U.S.C. § 1132(e).

2. In accordance with Federal Rule of Civil Procedure 23 and the requirements of

due process, the Class has been given proper and adequate notice of the Settlement, the Fairness

Hearing, and the Plan of Allocation Motion, such notice having been carried out in accordance

with the Preliminary Approval Order. The Notice, Publication Notice and notice methodology

implemented pursuant to the Settlement Stipulation and the Court's Preliminary Approval Order

(a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated,

under the circumstances, to apprise members of the Class of the proposed Settlement, their right

to object to the Settlement, and their right to appear at the Fairness Hearing; (c) constituted due,

---

[1]   All capitalized terms used in this Order and Final Judgment and not defined herein shall have
      the meanings assigned to them in the Settlement Stipulation.

adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable

requirements of the Federal Rules of Civil Procedure and any other applicable law.

3.   The Settlement was negotiated at arm's length by experienced counsel who were

fully informed of the facts and circumstances of the action and of the strengths and weaknesses

of their respective positions.  The Settlement was reached after the parties had engaged in

extensive negotiations with the assistance of a former United States District Judge acting as

special master for settlement purposes.  Lead Counsel and counsel for Settling Defendants were

therefore well positioned to evaluate the benefits of the Settlement, taking into account the

expense, risk, and uncertainty of protracted litigation over numerous questions of fact and law.

4.   The proposed Settlement warrants final approval pursuant to Federal Rule of Civil

Procedure 23(e)(1)(A) and (C) because it is fair, adequate, and reasonable to the Class and others

whom it affects based upon (a) the likelihood of success on the merits weighed against the

amount and form of relief offered in the Settlement; (b) the risks, expense, and delay of further

litigation; (c) the judgment of experienced counsel who have competently evaluated the strength

of their proofs; (d) the amount of discovery completed and the character of the evidence

uncovered; (e) the limited number of objections made to the proposed Settlement; (f) the fact that

it is the product of arm's-length negotiations as opposed to collusive bargaining; and (g) the fact

that it is consistent with the public interest.

5.   The Final Approval Motion is GRANTED, and the Settlement hereby is

APPROVED as fair, reasonable, adequate to members of the Class, and in the public interest.

The settling parties are directed to consummate the Settlement in accordance with the terms of

the Settlement Stipulation.

6. The Plan of Allocation is hereby APPROVED as fair, adequate, and reasonable. Subject to the provisions of paragraph 17 below and paragraph 23 of the Settlement Stipulation, upon this Order and any order of the Bankruptcy Court approving the Settlement becoming Final, and upon the Effective Date of the Settlement, the Escrow Agent shall disburse the Net Settlement Fund to the Plans for distribution by the Plans' trustee(s) in accordance with the Plan of Allocation, subject to any amounts withheld by the Escrow Agent for the payment of taxes and related expenses as authorized in the Settlement Stipulation.

7. The Escrow Agent is authorized to pay the reasonable costs of implementing the Plan of Allocation from the Gross Settlement Fund, upon notice to Settling Defendants' counsel, without further order of the Court, notwithstanding that this Order has not yet become Final as that term is defined in the Settlement Stipulation.

8. A case contribution award of $_____ payable from the Gross Settlement Fund is awarded to each Named Plaintiff. Such award may be distributed to each Named Plaintiff by the Escrow Agent upon the Effective Date of the Settlement.

9. A reserve of 25% of the Gross Settlement Fund is hereby established for a potential future award of attorneys' fees and expenses. Distribution from such reserve shall only be made upon further order of the Court and upon Lead Counsel's application for award of attorneys' fees and expenses to be filed upon conclusion of the Delphi ERISA Action as to all parties.

10. The Court retains jurisdiction over this action and the parties, the Plans, and members of the Class for all matters relating to this action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Stipulation and this

Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to members of the Class.

11. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Stipulation.

12. Named Plaintiffs and all members of the Class, on behalf of themselves, and the Class, and their personal representatives, heirs, executors, administrators, trustees, successors, and assigns, with respect to each and every Settled Claim, fully, finally and forever release, relinquish and discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties.

13. The Settling Defendants fully, finally, and forever release, relinquish, and discharge, and are forever enjoined from prosecuting, the Settled Defendants' Claims against Named Plaintiffs, all members of the Class, and their respective counsel.

14. By operation of this Judgment, all Barred Persons are permanently barred, enjoined and restrained from commencing, prosecuting or asserting, either derivatively or on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any Barred Claims against any of the Released Parties in any forum, action or proceeding of any kind. The Court shall retain exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance, validity, interpretation, administration, enforcement or enforceability of the Bar Order, except to the extent any such matters relate to Delphi's bankruptcy proceeding, which shall be subject to the continuing jurisdiction of the Bankruptcy Court. Lead Counsel shall post the provisions of this paragraph on the website identified in the Notice.

15. Because Barred Persons are barred from asserting any Barred Claims against any of the Released Parties, any judgments entered against Barred Persons in the Delphi ERISA Action will be reduced by the Judgment Reduction Amount. Nothing in the Settlement Stipulation or this Judgment shall in any manner limit any joint and several liability applicable to any non-settling party as to the portion of any judgment against such non-settling party in the Delphi ERISA Action remaining after application of any Judgment Reduction Amount.

16. By operation of this Judgment, Settling Defendants are barred and permanently enjoined from bringing against the Barred Persons, either derivatively or on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any of the Barred Claims in any forum, provided that a Settling Defendant shall not be enjoined from bringing Barred Claims against a Barred Person if for any reason such Barred Person asserts, or is legally not barred by this Judgment from bringing, Barred Claims against such Settling Defendant. The entry of the bars, injunctions and related provisions set forth in paragraphs 14 through16 above are fair to the Named Plaintiffs, the Settling Defendants, all Class Members, and all Barred Persons.

17. Until the Delphi ERISA Action has been concluded and fully and finally resolved with respect to all Barred Persons, there shall be no distribution from the Net Settlement Fund that would cause the balance remaining in the Net Settlement Fund to be less than the aggregate of Named Plaintiffs' claims for potential damages with respect to all claims against Barred Persons that have not been concluded and fully and finally resolved.

18. All counts asserted in the Delphi ERISA Action against the Settling Defendants or against any Released Party that at any time was a defendant in the Delphi ERISA Action are DISMISSED WITH PREJUDICE, without further order of the Court, pursuant to the terms of

the Settlement Stipulation. In addition, upon this Order and Final Judgment becoming Final, the Named Plaintiffs and the members of the Class shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally and forever released, and are forever enjoined from prosecuting, any and all Settled Claims. However, in the event that the Settlement is terminated in accordance with the terms of the Settlement Stipulation, this Judgment shall be null and void and shall be vacated nunc pro tunc, and paragraph 20 of the Settlement Stipulation shall govern the rights of the parties thereto.

19. There is no just reason for delay in the entry of this Order and Final Judgment, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this ___ day of November, 2007.

_____
HONORABLE GERALD E. ROSEN
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN

# **EXHIBIT C**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

```
-------------------------------------------------------x
                                        :
                                        :
IN RE: DELPHI CORPORATION               :      MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"        :      Master Case No. 05-md-1725
LITIGATION                              :      Hon. Gerald E. Rosen
                                        :
                                        :      This Document Relates to:
                                        :      All Cases
                                        :
-------------------------------------------------------x
```

### STIPULATION AND AGREEMENT OF INSURANCE SETTLEMENT

This Stipulation and Agreement of Insurance Settlement (the "Insurance Stipulation")
relates to all cases in the above-captioned *In re: Delphi Corp. Securities, Derivative & "ERISA"
Litigation,* Master File No. 05-md-1725 (GER)(E.D. Mich.), and *SEC v. Delphi Corporation, et
al.,* No. 06-14891 (E.D. Mich.). This Stipulation is entered into among Delphi Corporation
("Delphi" as defined herein); J.T. Battenberg III, Milan Belans, John G. Blahnik, Robert H.
Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Peter
H. Janak, Judith Kudla, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A.
Niekamp, John D. Opie, Roger S. Penske, Catherine Rozanski, Donald S. Runkle, John D.
Sheehan, and Patricia C. Sueltz (collectively, the "Delphi Officers and Directors"); and National
Union Fire Insurance Company of Pittsburgh, Pa., Zurich American Insurance Company, Federal
Insurance Company, Twin City Fire Insurance Company, American Casualty Company of
Reading PA, Arch Insurance Company, St. Paul Mercury Insurance Company, Great American

Insurance Company, Allied World Assurance Company LTD, Endurance Specialty Insurance Ltd., and Starr Excess International (collectively, the "Insurers" as defined herein);

WHEREAS:

A.      Beginning on March 7, 2005, several putative securities class actions were filed in the Court and the United States District Court for the Southern District of New York against Delphi, current and former Delphi officers and directors and various other defendants. Plaintiffs thereafter voluntarily dismissed the actions filed in the Court. On June 27, 2005, Judge Naomi Reice Buchwald of the United States District for the Southern District of New York appointed lead plaintiffs to prosecute the actions on behalf of all purchasers of Delphi securities during the putative class period and appointed lead plaintiffs' counsel as lead counsel in the actions. The actions filed in the United States District Court for the Southern District of New York were consolidated by order of that court, entered September 23, 2005, under the caption *In re: Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB).

B.      On September 30, 2005, lead plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") on behalf of all persons and entities who purchased or otherwise acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II, during the period between March 7, 2000 and March 3, 2005, inclusive (the "Class Period"), against Delphi, Delphi Trust I, Delphi Trust II, certain of the Delphi Officers and Directors, the Underwriters, J. Michael Losh, Harry J. Pearce, John F. Smith, Deloitte & Touche LLP, BBK, Ltd., Setech, Inc., and JPMorgan Chase & Co. (as successor-in-interest to Bank One Corporation), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities

Act"). The Complaint alleges, among other things, that Delphi, with the participation of others, improperly accounted for various transactions and otherwise made material misstatements regarding its financial position and results to inflate its earnings.

C.    On October 8, 2005, Delphi filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

D.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Delphi Securities Action (and other related federal actions, including the Delphi ERISA Action) to the Court for coordinated or consolidated pretrial proceedings. On March 10, 2006, certain defendants moved to dismiss the Complaint. On May 12, 2006, lead plaintiffs filed papers in opposition to the motions to dismiss. On June 12, 2006, the defendants filed their reply papers in further support of the motions to dismiss. On February 15, 2007, the Court granted lead plaintiffs' motion for partial modification of the discovery stay implemented pursuant to the Private Securities Litigation Reform Act and, on March 21, 2007, denied certain defendants' motion for reconsideration of that ruling.

E.    On March 14, 2006, lead plaintiffs voluntarily dismissed without prejudice from the Delphi Securities Action defendants J. Michael Losh, Harry J. Pearce, and John F. Smith, who were all former directors of both General Motors Corporation and Delphi.

F.    On April 11, 2005, a putative class action was filed in the United States District Court for the Southern District of Florida against Delphi Trust I, J.T. Battenberg III, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Bernd Gottschalk, Shoichiro Irimajiri, Oscar de Paula Bernardes Neto, John D. Opie, Roger S. Penske, Donald S. Runkle, John D. Sheehan, Patricia C. Sueltz, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC, under

the caption *Bernstein v. Delphi Trust I, et al.*, No. 9:05-CV-80307 (KLR) (the "Bernstein Action"). The complaint alleged violations of Sections 11 and 15 of the Securities Act in connection with the sale of securities of Delphi Trust I. On July 20, 2005, upon unopposed motion, the Southern District of Florida appointed plaintiff Sidney Bernstein as lead plaintiff in the Bernstein Action and appointed his selection of counsel as co-lead counsel in the Bernstein Action (the "Bernstein Order"). On August 29, 2005, the Southern District of Florida stayed the Bernstein Action pending transfer of all related actions by the multidistrict litigation panel. On October 16, 2006, this Court granted the lead plaintiffs' motion to vacate the Bernstein Order. For purposes of this Insurance Stipulation, the term "Delphi Securities Action" includes the Bernstein Action.

G.    Beginning on March 8, 2005, several putative class actions alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") were filed in the Court and the United States District Court for the Southern District of Ohio against Delphi and various other defendants. Plaintiffs in those actions thereafter voluntarily dismissed the action filed in the United States District Court for the Southern District of Ohio. On September 13, 2005, Judge Paul D. Borman of the United States District for the Eastern District of Michigan appointed the named plaintiffs as lead plaintiffs to prosecute the actions on behalf of the putative class of participants in the Plans during the putative class period. The ERISA actions filed in the Court were consolidated by order, entered September 13, 2005, under the caption *In re Delphi Corp. ERISA Litigation*, Master File No. 05-CV-70882 (PDB).

H.    On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Delphi ERISA Action (and other related federal actions, including the Delphi Securities Action) to this Court for coordinated or consolidated pretrial proceedings.

I.     On March 3, 2006, the named plaintiffs in the Delphi ERISA Action filed a Consolidated Class Action Complaint (the "ERISA Complaint"), on behalf of all persons who were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC Manufacturing Savings Plan between May 28, 1999 and November 1, 2005, inclusive, or (ii) participants in or beneficiaries of the Delphi Mechatronic Systems Savings-Stock Purchase Program between June 1, 2001 and November 1, 2005, inclusive, and whose accounts included investments in the Delphi and/or GM Stock Funds, alleging violations of Sections 502(a)(2) and 502(a)(3) of ERISA, and violations of fiduciary duties under common law. The ERISA Complaint alleges, among other things, that Delphi improperly accounted for various transactions and otherwise made material misstatements regarding its financial position and results, with the participation of others, to inflate its earnings and that the Defendants breached their fiduciary duties to the Class in their management of the retirement plans and the plans' assets. On April 12, 2006, certain defendants moved to dismiss the ERISA Complaint. On May 12, 2006, the named plaintiffs filed papers in opposition to the motions to dismiss. On June 12, 2006, the defendants filed their reply papers in further support of the motions to dismiss.

J.     On July 21, 2004, the United States Securities and Exchange Commission ("SEC") initiated a formal investigation and on October 30, 2006, filed an enforcement action, captioned *SEC v. Delphi Corp. et al.*, No. 06-14891 (E.D. Mich.), with respect to Delphi and certain of the Delphi Officers and Directors related to certain of the facts alleged in the Delphi Securities Action and related matters (the "SEC Investigation and Enforcement Action").

K.     The United States Department of Justice ("DOJ") initiated an investigation and may initiate one or more legal proceedings with respect to certain of the matters in the SEC

Investigation and Enforcement Action and related matters, and the United States Attorney's
Office for the Southern District of New York initiated an investigation and may initiate one or
more legal proceedings concerning General Motors' purchasing practices (collectively the "DOJ
Investigation and Potential Proceedings").

     L.     Delphi and the Delphi Officers and Directors notified the Insurers of the Delphi
Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement Action,
the DOJ Investigation and Potential Proceedings, and the Delphi Derivative Demands and
Actions (as defined herein)(collectively the "Insurance Claim" (as defined herein)).

     M.     The Insurers reserved their rights to assert various coverage defenses under the
"Insurance Policies" (as defined herein) with respect to the Insurance Claim.

     N.     Delphi Corporation has entered into certain agreements both before and after the
filing of its bankruptcy petition with a number of insurance companies in order to resolve certain
asserted defenses under the Insurance Policies and at law.

     O.     Pursuant to the Order Under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 2016(a)
Authorizing Advancement of Defense Costs Under Debtors' Insurance Policies (In re Delphi
Corporation, No. 05-44481 (RDD) (Bankr., S.D.N.Y.)) one of the Insurers, National Union Fire
Insurance Company of Pittsburgh, Pa., is permitted to advance up to $5 million of its $25 million
limit of liability for the defense costs of certain of Delphi's former officers and employees in the
Delphi Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement
Action, and the DOJ Investigation and Potential Proceedings.

     P.     With the assistance of the Honorable Layn R. Phillips, former United States
District Judge, acting as a special master for settlement purposes, the lead plaintiffs in the Delphi
Securities Action and the named plaintiffs in the Delphi ERISA Action, by their counsel, have

conducted discussions with Delphi's counsel, counsel for the Delphi Former Officers and

Employees, the counsel for the remaining Delphi Officers and Directors, and the Insurers with

respect to a compromise and settlement of the Delphi Securities Action and the Delphi ERISA

Action (the "Mediation").

Q.      The Delphi Former Officers and Employees were each represented by counsel at

the Mediation and conducted discussions with Delphi's counsel and the Insurers with respect to

the amount of insurance proceeds that would be used for the defense of the Delphi Former

Officers and Employees in the SEC Investigation and Enforcement Action, the DOJ

Investigation and Potential Proceedings and any other liability or exposure that they may face as

a result of their work at Delphi.

R.      The Parties agree that, in order fully to resolve the Insurance Claim (as defined

herein), it is a necessary condition to the Insurance Settlement (as defined herein) that the Court

contemporaneously approve (i) the separate Delphi ERISA Action Settlement and (ii) the

separate Delphi Securities Action Settlement.

NOW THEREFORE, without any admission or concession on the part of the Insurers of

any lack of merit of their defenses to coverage for the Insurance Claim whatsoever, and without

any admission or concession of any lack of merit of the Insurance Claim whatsoever by Delphi

and the Delphi Officers and Directors, it is hereby STIPULATED AND AGREED, by and

between the parties to this Insurance Stipulation, subject to approval of the Court pursuant to

Rule 23(e) of the Federal Rules of Civil Procedure of the Delphi Securities Action Settlement

and the Delphi ERISA Action Settlement, in consideration of the benefits flowing to the parties

hereto from the Insurance Settlement (as defined herein), that all Settled Insurance Claims (as

defined herein), all Settled Officer and Director Claims (as defined herein), and all Settled

Delphi Claims, shall be compromised, settled, released and dismissed with prejudice, and the
Insurance Policies shall be deemed fully exhausted and forever discharged upon and subject to
the following terms and conditions:

## DEFINITIONS

1.       As used in this Insurance Stipulation, the following terms shall have the
following meanings:

(a)      "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its
affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

(b)      "Bankruptcy Court" means the United States Bankruptcy Court for the
Southern District of New York.

(c)      "Barred Persons" means any person who is, may be, or claims to be an
insured under any of the Insurance Policies or who otherwise claims to have an interest in the
Insurance Policies, including any interest alleged to arise by reason of a claim against an insured,
or who derives their claim from any insured under any of the Insurance Policies, including
without limitation any judgment creditors, claimants, assignees or similar persons.

(c)      "Court" means the United States District Court for the Eastern District of
Michigan.

(e)      "Delphi" means Delphi Corporation (including without limitation Delphi
Corporation as Debtor in Possession) and Delphi Trust I and Delphi Trust II.

(f)      "Delphi Derivative Demands and Actions" means those derivative
demands that were made and actions that were filed against certain of the Delphi Officers and
Directors alleging the same or related facts as those alleged in the Delphi Securities Action,
including *Dangerfield v. Battenberg*, et. al. No. 2:05-CV-72550 (GER) (E.D. Mich.); *Fosbre v.
Delphi Corporation*, et al., No. 2:06-CV-10031 (GER) (E.D. Mich.); *Lemon Bay Partners v.*

*Delphi Corporation*, et al., No. 05-065192-CZ (SNA) (Circuit Court of Oakland County, Michigan); *Wilhelmer v. Delphi Corporation*, et al., No. 05-068931-CK (MAG) (Circuit Court of Oakland County, Michigan); and a March 18, 2005 shareholder demand on behalf of Norman Rosenkrantz pursuant to Del. Ct. Ch. R. 23.1.

      (g)    "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER), relating to *In re: Delphi Corp. ERISA Litigation*, Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198.

      (h)    "Delphi ERISA Action Escrow Agent" means that entity identified in ¶1(u) of the Delphi ERISA Action Stipulation.

      (i)    "Delphi ERISA Action Stipulation" or "Delphi ERISA Action Settlement" means the Stipulation and Agreement of Settlement in the Delphi ERISA Action

      (j)    "Delphi Former Officers and Employees" means J.T. Battenberg III, Milan Belans, John G. Blahnik, Alan S. Dawes, Paul R. Free, Peter H. Janak, Judith Kudla, and Catherine Rozanski.

      (k)    Delphi Former Officers and Employees Escrow Agent means a person or entity to be identified by the Delphi Former Officers and Employees by September 4, 2007.

      (l)    "Delphi Officers and Directors" means J.T. Battenberg III, Milan Belans, John G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Peter H. Janak, Judith Kudla, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Catherine Rozanski, Donald S. Runkle, John D. Sheehan, and Patricia C. Sueltz.

(m)    "Delphi Officers and Directors Released Parties" means the Delphi Officers and Directors and any and all past, present, and future heirs, estates, administrators, trustees, executors, agents, attorneys, representatives, and assigns of each of the Delphi Officers and Directors, as well as any person acting on behalf of the Delphi Officers and Directors, either singularly or collectively;

(n)    "Delphi Released Parties" means Delphi and any and all predecessors, successors, parents, subsidiaries, affiliates, assigns, transferees, agents, attorneys, directors, officers, employees, shareholders of Delphi and any person or entity acting on Delphi's behalf.

(o)    "Delphi Securities Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER) and relating to *In re: Delphi Corp. Securities Litigation*, No. 06-10026, and Case Nos. 06-10027, 06-10028, 06-10029, 06-10030, 06-10031 and 06-10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER)(formerly No. 9:05-CV-80307 (KLR)(S.D. Fla.)).

(p)    "Delphi Securities Action Escrow Agent" means that entity identified in ¶1(z) of the Delphi Securities Action Stipulation.

(q)    "Delphi Securities Action Stipulation" or "Delphi Securities Action Settlement" means the Stipulation and Agreement of Settlement in the Delphi Securities Action.

(r)    "Effective Date of the Insurance Settlement" means the date upon which the Insurance Settlement contemplated by this Insurance Stipulation shall become effective, as set forth in ¶12 hereof.

(s)    "Insurance Claim" means Delphi's and the Delphi Officers' and Directors' claim for insurance coverage with respect to the Delphi Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement Action, the DOJ Investigation and Potential

Proceedings, the Delphi Derivative Demands and Actions and all matters based upon, arising out of or alleging the same or related "Wrongful Acts" (as that term is defined in National Union Fire Insurance Company of Pittsburgh, Pa. Policy No. 931-88-56).

(t)    "Insurance Policies" means the following:  National Union Fire Insurance Company of Pittsburgh, Pa. Policy Nos. 931-88-56 and 931-88-61; Zurich American Insurance Company Policy No. DOC 3597322 02; Federal Insurance Company Policy No. 8155-9921; Twin City Fire Insurance Company Policy No. 00 DA 0153136-04; American Casualty Company of Reading PA Policy Nos. 169654153 and 267960067; Arch Insurance Company Policy No. 41DOX15380 01; St. Paul Mercury Insurance Company Policy No. 512CM1117; Great American Insurance Company Policy No. DFX0009714; Allied World Assurance Company LTD Policy No. C001635/002; Endurance Specialty Insurance Ltd. Policy No. 008557 002; and Starr Excess International Policy No. 6461124.

(u)    "Insurance Settlement" means the settlement contemplated by this Insurance Stipulation.

(v)    "Insurance Settlement Amount" means the total amount to be paid by the Insurers as provided in ¶ 9 hereof and in accordance with the terms of this Insurance Stipulation.

(w)    "Insurers" means the following:  National Union Fire Insurance Company of Pittsburgh, Pa.; Zurich American Insurance Company; Federal Insurance Company; Twin City Fire Insurance Company; American Casualty Company of Reading PA; Arch Insurance Company; St. Paul Mercury Insurance Company; Great American Insurance Company; Allied World Assurance Company LTD; Endurance Specialty Insurance Ltd.; and Starr Excess International.

(x)    "Insurers Released Parties" means any and all of the Insurers, their past or present or future subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, estates, assigns, officers, directors, shareholders, owners, representatives, agents, employees, attorneys, advisors, insurers, co-insurers, re-insurers, consultants, administrators, executors, or trustees.

(y)    "Notice Costs" means the costs of notice incurred in connection with the Securities Action Settlement and the ERISA Action Settlement.

(z)    "Parties" means Delphi, the Delphi Officers and Directors and the Insurers.

(aa)    "Released Parties" means the Delphi Released Parties, the Delphi Officers and Directors Released Parties and the Insurers Released Parties.

(bb)    "Settled Delphi Claims" means any and all claims, potential claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement, indemnification, expenses or liability whatsoever), whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted against Delphi by the Insurers or the Delphi Officers and Directors with respect to the Delphi Securities Action, the ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, or (ii) that could have been asserted in any forum against Delphi by the Insurers or

the Delphi Officers and Directors, or any of their successors and assigns arising out of, based upon or related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, except claims to enforce the terms of this Insurance Stipulation.

(cc)    "Settled Officer and Director Claims" means any and all claims, potential claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens and issues or liabilities whatsoever, including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement of any funds advanced (prior to or in connection with this Insurance Stipulation) by Delphi or the Insurers, indemnification, expenses or liability whatsoever, whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted by Delphi in the Delphi Securities Action, the ERISA Action, or on behalf of Delphi in the Delphi Derivative Demands and Actions against any of the Delphi Officers and Directors Released Parties, or (ii) that could have been asserted in any forum by the Delphi Released Parties or the Insurers Released Parties against any of the Delphi Officers and Directors Released Parties which arise out of, are based upon or related to accounting and/or financial reporting and disclosure at Delphi or the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and

Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings or the Insurance Claim, except claims to enforce the terms of this Insurance Stipulation.

(dd)    "Settled Insurance Claims" means any and all claims, potential claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement, indemnification, expenses or liability whatsoever), whether based on United States federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein) arising out of, related to, based upon, by reason of, or in any way involving:

(i)    the Insurance Policies;

(ii)    the Insurance Claim, the allegations of the Insurance Claim, or the same or related facts, circumstances, transactions or events or series of facts, circumstances, transactions or events at issue in the Insurance Claim, including therein any claim that the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action or the DOJ Investigation and Potential Proceedings are covered under any other insurance policies sold to Delphi Corporation;

(iii)    the defense of the Insurance Claim or, with respect to the Insurance Policies, the defense of any other claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever;

(iv)    any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to the Insurance Claim and the Insurance Policies;

except claims to enforce the terms of this Insurance Stipulation.

(ee)    "Unknown Claims" means any Settled Delphi Claims, Settled Officer and Director Claims and Settled Insurance Claims, which any Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it, might have affected his, her or its decision with respect to the Insurance Settlement. With respect to any and all Settled Delphi Claims, Settled Officer and Director Claims and Settled Insurance Claims, the Parties stipulate and agree that upon the Effective Date of the Insurance Settlement, all Parties shall be deemed to have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge that the inclusion of "Unknown Claims" in the definitions of "Settled Delphi Claims," "Settled Officer and Director Claims" and "Settled Insurance Claims" was separately bargained for and was a key element of the Insurance Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Insurance Stipulation shall be in full and final disposition of the Insurance Claim and the Insurance Policies. It is understood and

agreed that upon the Effective Date of the Insurance Settlement, the Insurance Policies shall be deemed fully exhausted and forever discharged.

3.    Subject to ¶ 14 hereof, upon the execution of this Insurance Stipulation, any proof of claim or any portion of any proof of claim filed in the Bankruptcy Case by or on behalf of the Delphi Officers and Directors Released Parties or the Insurers Released Parties relating to any claim of loss, damage, reimbursement, contribution or indemnification arising out of or relating to the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, including but not limited to the Proofs of Claim or portions of Proofs of Claim listed in Exhibit A hereto, shall be deemed to have an estimated amount of $0 for all purposes in the Bankruptcy Case.

4.    Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Delphi Released Parties and the Delphi Officers and Directors Released Parties release and forever discharge, and are forever enjoined from prosecuting, any Settled Insurance Claim against any of the Insurers Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any of the Insurers Released Parties or any other person who may claim any form of contribution or indemnity from any of the Insurers Released Parties in respect of any Settled Insurance Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement.

5.    Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Delphi Released Parties and the Insurers

Released Parties, with respect to each and every Settled Officer and Director Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Officer and Director Claim against any of the Delphi Officers and Directors Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any of the Delphi Officers and Directors Released Parties or any other person who may claim any form of contribution or indemnity from any Delphi Officers and Directors Released Parties in respect of any Settled Officer and Director Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement, except as provided in ¶ 6 herein.

6.    Notwithstanding the provisions of ¶¶ 4-5 hereof, in the event that any of the Delphi Officers and Directors Released Parties asserts any claim against the Delphi Released Parties or their respective counsel, including any claim contemplated in a proof of claim or a portion of a proof of claim filed in the Bankruptcy case that is not otherwise released and withdrawn pursuant to this Insurance Stipulation, then Delphi and its successors and assigns and their counsel shall be entitled to use and assert the Settled Officer and Director Claim and any factual matters included within the Settled Officer and Director Claims against such Delphi Officers and Directors Released Parties in defense or set-off of such claim, including pursuant to the Bankruptcy Code or otherwise. In the event that Delphi asserts any of the Settled Officers and Directors Claims in defense or set-off of a claim made by one of the Delphi Officers and Directors against Delphi in the Bankruptcy Court and one of the Delphi Officers or Directors has been successful on the merits or otherwise with respect to such defense or set-off interposed by Delphi, then notwithstanding paragraph 8 hereof, the Delphi Officer or Director shall, pursuant

to a proof of claim or interest that was timely filed in the Bankruptcy Case, be entitled to assert a claim for indemnification for legal fees and expenses incurred in defense of such Settled Officers and Directors Claims to the extent such indemnification is required by Article V of Delphi's bylaws in effect as of the time of the filing of the Bankruptcy Case and/or Delaware law, and if such proof of claim or interest is allowed, such indemnification shall be payable to the extent allowed by the Bankruptcy Court in the applicable plan currency commensurate with other similarly allowed claims or interests.

7.    Within ten (10) days of the Effective Date of the Insurance Settlement, Delphi shall dismiss with prejudice *Delphi Corporation v. National Union Fire Insurance Company of Pittsburgh, Pa.*, Adversary Proceeding No. 07-01435 [RDD], pending in the United States Bankruptcy Court for the Southern District of New York.

8.    Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Insurers Released Parties and the Delphi Officers and Directors Released Parties release and forever discharge, and are forever enjoined from prosecuting, any Settled Delphi Claim against the Delphi Released Parties and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against Delphi Released Parties or any other person who may claim any form of contribution or indemnity from Delphi Released Parties in respect of any Settled Delphi Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement, provided further that on the Effective Date of the Insurance Settlement, (i) the Delphi Officers and Directors Released Parties shall be deemed to have withdrawn all proofs of claim or all portions of any proofs of claim filed in the Bankruptcy Case by them or on

their behalf relating to any claim of loss, damage, reimbursement, contribution or indemnification arising out of or relating to the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, including but not limited to the Proofs of Claim or portions of the Proofs of Claim listed in Exhibit A hereto, and (ii) the Insurers Released Parties shall be deemed to have withdrawn all proofs of claim or all portions of any proofs of claim filed in the Bankruptcy Case by them or on their behalf relating to, based upon or by reason of the Insurance Policies.

## SETTLEMENT CONSIDERATION

9.      In consideration for the release and discharge provided for in ¶ 4 hereof, the Insurers shall distribute or pay or cause to be paid the Insurance Settlement Amount, as follows:

| INSURER | AMOUNT | RECIPIENT |
|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") | $20 Million | Delphi Former Officers and Employees Escrow Agent |
| Zurich American Insurance Company ("Zurich") | $22.5 Million $2.5 Million | ERISA Action Escrow Agent Securities Action Escrow Agent |
| Federal Insurance Company | $25 Million | Securities Action Escrow Agent |
| Twin City Fire Insurance Company | $15 Million | Securities Action Escrow Agent |
| American Casualty Company of Reading PA | $15 million | Securities Action Escrow Agent |
| Arch Insurance Company | $7.5 Million | Securities Action Escrow Agent |
| St. Paul Mercury Insurance Company | $4.3 Million | Securities Action Escrow Agent |
| Great American Insurance Company | $4.3 Million | Securities Action Escrow Agent |
| Allied World Assurance Company LTD | $6.25 Million | Securities Action Escrow Agent |
| Endurance Specialty Insurance Ltd. | $3.75 Million | Securities Action Escrow Agent |
| Starr Excess International | $5 Million | Securities Action Escrow Agent |

National Union shall pay its share of the Insurance Settlement Amount to the Delphi Former

Officers and Employees Escrow Agent within ten (10) business days after the later of the entry

by the District Court for the Eastern District of Michigan of an order preliminarily approving the

Delphi Securities Action Settlement or the entry by the District Court for the Eastern District of

Michigan of an order preliminarily approving the Delphi ERISA Action Settlement. Zurich shall

pay its share of the Insurance Settlement Amount to the Delphi ERISA Action Escrow Agent

within ten (10) business days after the entry by the Court of an order preliminarily approving the

Delphi ERISA Action Settlement. Zurich and all other Insurers shall pay their share of the

Insurance Settlement Amount to the Delphi Securities Action Escrow Agent within ten (10)

business days after entry by the District Court for the Eastern District of Michigan of an order

preliminarily approving the Delphi Securities Action Settlement. Delphi and/or the Delphi
Former Officers and Employees shall provide the Insurers with wire transfer instructions for
each escrow account (including the receiving bank (name and address), the account number, the
routing number, the EIN, tax identification number, or a completed Form W-9 where required by
an Insurer, name of payee or escrow accountholder) by or on the date the Court enters an order
preliminarily approving the Delphi Securities Action Settlement or the Delphi ERISA Action
Settlement, whichever occurs first.

      10.    The portion of the Insurance Settlement Amount paid to the Delphi Former
Officers and Employees Escrow Agent shall be apportioned among the Delphi Former Officers
and Employees in amounts and pursuant to such terms as may be separately agreed upon by
those parties and their counsel in advance and in writing and shall be used solely for defense
costs incurred as part of the ongoing SEC Investigation and Enforcement Action, the DOJ
Investigation and Potential Proceedings, the United States Attorney Office for the Southern
District of New York's investigation into General Motors' purchasing practices and/or any
other defense costs reasonably related to the Delphi Former Officers and Employees tenure at
Delphi; provided, however, prior to the Effective Date of the Insurance Settlement, no
payments may be made by the Delphi Former Officers and Employees Escrow Agent (a)
unless and until the Delphi Former Officers and Employees provide to the Insurers an
unsecured written undertaking to repay any sums so paid if the Insurance Settlement does not
become effective and it is later determined that the Delphi Former Officers and Employees
were not entitled to the amounts paid under the Insurance Policies, and (b) unless and until the
Delphi Former Officers and Employees Escrow Agent is authorized to make such payments by
an order of the Bankruptcy Court either upon uncontested motion or stipulated order

notwithstanding the automatic stay, to the extent it applies. All parties to this Insurance Stipulation shall stipulate to such an order within 10 business days of receipt of such Stipulation, or, if a motion is necessary, such motion shall be unopposed by any Party to this Insurance Stipulation. Under no circumstance shall any sum so paid be used for purposes other than defense costs and, in particular, the sums so paid shall not be used for payment of any fine, penalty, or restitution.

11.    In addition, within ten (10) business days after entry by the Court of an order preliminarily approving the Delphi Securities Action Settlement, National Union shall cause to be paid to the Delphi Securities Action Escrow Agent (to be divided as agreed upon by the plaintiffs in the Securities Action and plaintiffs in the ERISA Action) the portion of the $5 million remaining limit of liability under National Union Policy Nos. 931-88-56 and 931-88-61 that has not already been incurred in the defense costs of the Former Officers and Employees for services rendered as of the entry by the Court of an order preliminarily approving the Delphi Securities Action Settlement.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

12.    The "Effective Date of the Insurance Settlement" shall be the date when all the following conditions of settlement shall have occurred:

(a)    all conditions in ¶ 29 of the Delphi Securities Action Stipulation;

(b)    all conditions in ¶ 17 of the Delphi ERISA Action Stipulation; and

(c)    entry of an Order by the Bankruptcy Court approving this Insurance Settlement and barring and enjoining the institution and/or prosecution of any actions or claims by any Barred Person against any of the Insurers arising out of or related to any of the Insurance Policies or the obligations of any of the Insurers under any of the Insurance Policies.

13.    This Insurance Settlement shall terminate if the Delphi Securities Action Settlement terminates pursuant to ¶ 30-31 of the Delphi Securities Action Stipulation or if the Delphi ERISA Action Settlement terminates pursuant to ¶ 18-19 of the Delphi ERISA Action Stipulation.

14.    Except as otherwise provided herein, in the event the Insurance Settlement is terminated, the parties to this Insurance Stipulation shall be deemed to have reverted to their respective status immediately prior to the execution of this Insurance Stipulation and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Insurance Stipulation and any related orders had not been entered.  Except as provided in paragraph 15 below, within ten (10) business days following any termination of this Insurance Stipulation, the Insurers shall be entitled to be paid by the respective Escrow Agents *pro rata* the amounts specified in ¶ 32 of the Delphi Securities Action Stipulation and ¶ 20 of the Delphi ERISA Action Stipulation, provided, however, the Parties agree that any reasonable Notice Costs incurred and paid or payable prior to such termination shall be deemed Defense Costs under Side B of the Insurance Policies, and, without prejudice to Delphi's right to contend that the retention has been satisfied and to seek to hold National Union liable for those Notice Costs, Delphi in the first instance shall pay the Insurers other than National Union *pro rata* the Notice Costs deducted by the respective Delphi Securities Action Escrow Agent and the Delphi ERISA Action Escrow Agent.

15.    National Union shall be entitled to be paid by the Delphi Former Officers and Employees Escrow Agent $20 million plus any earned interest thereon less any amount for defense costs incurred pursuant to ¶ 10 herein, any taxes paid or due with respect to any interest income, and any account administrative costs incurred.  National Union shall be entitled to be

paid by the Delphi Securities Action Escrow Agent the amount National Union paid to it pursuant to ¶ 11 hereof less any amounts deducted by the Delphi Securities Action Escrow Agent pursuant to ¶ 32 of the Delphi Securities Action Stipulation. The Delphi Former Officers and Employees shall have no obligation to repay any funds remitted pursuant to ¶ 11 hereof.

## NO ADMISSION OF WRONGDOING

16.    This Insurance Stipulation, whether or not consummated, and any proceedings taken pursuant to it shall not be admissible in any other action or proceeding between the Parties except in an action to interpret or enforce this Insurance Stipulation, and shall not be deemed an admission of wrongdoing or liability of any party.

## MISCELLANEOUS PROVISIONS

17.    This Insurance Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

18.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

19.    The waiver by one party of any breach of this Insurance Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Insurance Stipulation.

20.    This Insurance Stipulation constitutes the entire agreement concerning the Insurance Settlement, and no representations, warranties, or inducements have been made by any party hereto concerning this Insurance Stipulation, other than those contained and memorialized in this Insurance Stipulation.

21.    This Insurance Stipulation may be executed in one or more original, photocopied or facsimile counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

22.    This Insurance Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

23.    The construction and interpretation of this Insurance Stipulation shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law governs.

24.    This Insurance Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Insurance Stipulation.

25.    All counsel and any other person executing this Insurance Stipulation warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Insurance Stipulation to effectuate its terms.

26.    All Parties to this Insurance Stipulation warrant and represent that they have not assigned any rights, claims, or obligations related to this agreement on or before the date of execution of this Insurance Stipulation.

DATED: August 31, 2007

EXHIBIT A

1.    Proof of claim number 9787, filed by Donald L. Runkle, dated June 20, 2006

2.    Proof of claim number 10582, filed by J. T. Battenberg III, dated July 21, 2006

3.    Proof of claim number 11104, filed by Oscar de Paula Bernardes Neto, dated July 10, 2006

4.    Proof of claim number 11105, filed by Robert H. Brust, dated June 27, 2006

5.    Proof of claim number 11106, filed by Virgis W. Colbert, dated June 27, 2006

6.    Proof of claim number 11107, filed by David N. Farr, dated June 29, 2006

7.    Proof of claim number 11108, filed by Bernd Gottschalk, dated July 20, 2006

8.    Proof of claim number 11111, filed by John D. Opie, dated June 28, 2006

9.    Proof of claim number 12056, filed by John Blahnik, dated July 27, 2006

10.    Proof of claim number 12164, filed by Bernd Gottschalk, dated July 20, 2006

11.    Proof of claim number 12184, filed by Catherine M. Rozanski, dated July 27, 2006

12.    Proof of claim number 13410, filed by Alan S. Dawes, dated July 28, 2006

13.    Proof of claim number 14935, filed by Milan Belans, dated July 28, 2006

14.    Proof of claim number 15599, filed by Paul R. Free, dated July 26, 2006

15.    Proof of claim number 15806, filed by John D. Sheehan, dated July 27, 2006

HELLER EHRMAN LLP

By: _____
        Timothy W. Burns

One East Main Street
Suite 201
Madison, WI 53703-5118
Telephone: (608) 663-7487
Facsimile: (608) 6637499

SHEARMAN & STERLING LLP
Stuart J. Baskin
Brian H. Polovoy
Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

Counsel for Delphi Corporation, Delphi Trust I,
Delphi Trust II, Robert H. Brust,
Virgis W. Colbert, David N. Farr,
Bernd Gottschalk, Susan A. McLaughlin, Oscar
de Paula Bernardes Neto, Cynthia A. Niekamp,
John D. Opie, Roger S. Penske, Donald S.
Runkle, John D. Sheehan, and Patricia C. Sueltz

BAKER BOTTS L.L.P.

By: _____
    William H. Jeffress, Jr.
    Joe R. Caldwell, Jr
    Bridget M. Moore
    Michael G. Pattillo, Jr.

1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

Counsel for J.T. Battenberg

O'MELVENY & MYERS LLP

By: _Robert M. Stern (per comsel)_ _(Briefly mjr)_
    Robert N. Eccles
    Robert M. Stern

1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

Counsel for Alan S. Dawes

BAKER BOTTS L.L.P.

By: *Bridget M. Moore*

William H. Jeffress, Jr.
Joe R. Caldwell, Jr
Bridget M. Moore
Michael G. Pattillo, Jr.

1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg**

O'MELVENY & MYERS LLP

By:

Robert N. Eccles
Robert M. Stern

1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

PEPPER HAMILTON LLP

By: _____
    Matthew J. Lund

100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

Counsel for Paul R. Free


SARETSKY HART MICHAELS & GOULD PC

By: _____ (per consent)
    Eric A. Michaels

995 South Eton
Birmingham, Michigan 48009
Telephone:  (248) 502-3300

Counsel for Judith Kudla


MILLER, CANFIELD, PADDOCK and
STONE, PLC

By: _____
    Thomas W. Cranmer
    Matthew P. Allen

150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420


Counsel for John G. Blahnik and Peter H. Janak

CLARK HILL PLC

By: _____
      Martin E. Crandall
      Charles E. Murphy

500 Woodward Avenue
Suite 3500
Detroit, MI 48226
Telephone: (313) 965-8413

Counsel for Milan Belans

BUTZEL LONG PC

By: _____
      David Dumouchel
      Laurie J. Michelson

150 W. Jefferson Avenue
Suite 100
Detroit, MI 48226
Telephone: (313) 225-7004

Counsel for Cathy Rozanski

EDWARDS ANGELL PALMER & DODGE
LLP

By:
John D. Hughes
Mary-Pat Cormier

111 Huntington Avenue
Boston, MA 02119
Telephone: (617) 951-3373

Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.

FEDERAL INSURANCE COMPANY

By: _____
Brendan R. Kelley
Assistant Vice President
Chubb & Son, A Division of Federal Insurance
Co.

BOUNDAS SKARZYNSKI WALSH & BLACK,
LLC

By: _____
James A. Skarzynski
David T. Burrowes
Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL 60601
Telephone: (312) 946-4214

Counsel for Great American Insurance
Company

EDWARDS ANGELL PALMER & DODGE
LLP

By:
    John D. Hughes
    Mary-Pat Cormier

111 Huntington Avenue
Boston, MA  02119
Telephone:  (617) 951-3373

Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.

Chubb & Son a division of Federal Insurance
Co.

By:
    Brendan R. Kelley
    Assistant Vice President

BOUNDAS SKARZYNSKI WALSH & BLACK,
LLC

By:
    James A. Skarzynski
    David T. Burrowes
    Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL  60601
Telephone:  (312) 946-4214

EDWARDS ANGELL PALMER & DODGE
LLP

By: _____
    John D. Hughes
    Mary-Pat Cormier

111 Huntington Avenue
Boston, MA 02119
Telephone: (617) 951-3373

**Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.**

FEDERAL INSURANCE COMPANY

By: _____
    Brendan R. Kelley
    Assistant Vice President
    Chubb & Son, A Division of Federal Insurance
    Co.

BOUNDAS SKARZYNSKI WALSH & BLACK,
LLC

By: _____
    James A. Skarzynski
    David T. Burrowes
    Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL 60601
Telephone: (312) 946-4214

**Counsel for Great American Insurance
Company**

ROSS DIXON & BELL, LLP

By: _Kimberly_ ~~w/consent 8/30/07~~
      Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758
Telephone:  (312) 759-5945

**Counsel for Twin City Fire Insurance Company**


BAILEY CAVALIERI LLC

By:
      R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Telephone:  (614) 229-3203

**Counsel for Zurich American Insurance
Company**


D'AMATO & LYNCH, LLP

By:
      Thomas F. Breen

70 Pine Street
New York, NY  10270-0110
Telephone:  (212) 269-0927

**Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International**

ROSS DIXON & BELL, LLP

By:
    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL 60603-5758
Telephone: (312) 759-5945

Counsel for Twin City Fire Insurance Company


BAILEY CAVALIERI LLC

By:
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH 43215-3422
Telephone: (614) 229-3203

Counsel for Zurich American Insurance
Company


D'AMATO & LYNCH, LLP

By:
    Thomas F. Breen

70 Pine Street
New York, NY 10270-0110
Telephone: (212) 269-0927

Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International

ROSS DIXON & BELL, LLP

By:
    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL 60603-5758
Telephone: (312) 759-5945

Counsel for Twin City Fire Insurance Company

BAILEY CAVALIERI LLC

By:
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH 43215-3422
Telephone: (614) 229-3203

Counsel for Zurich American Insurance
Company

D'AMATO & LYNCH, LLP

By: _Thomas F. Breen_

70 Pine Street
New York, NY 10270-0110
Telephone: (212) 269-0927

Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International

KAUFMAN BORGEEST & RYAN LLP

By: *Wayne E. Borgeest*    by Paul Curley
w/permission

Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (212) 980-9600

**Counsel for Arch Insurance Company**


SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By:

Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202

**Counsel for American Casualty Company of
Reading PA**


THOMPSON, LOSS & JUDGE, LLP

By:

Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC 20036
Telephone: (202) 778-4060

**Counsel for St. Paul Mercury Insurance
Company**

KAUFMAN BORGEEST & RYAN LLP

By: _____
    Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (212) 980-9600

Counsel for Arch Insurance Company

SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By: _____
    Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202

Counsel for American Casualty Company of
Reading PA

THOMPSON, LOSS & JUDGE, LLP

By: _____
    Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC 20036
Telephone: (202) 778-4060

Counsel for St. Paul Mercury Insurance
Company

KAUFMAN BORGEEST & RYAN LLP

By:

Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (212) 980-9600

**Counsel for Arch Insurance Company**

SEDGWICK, DETERT, MORAN & ARNOLD
LLP

By:

Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY 10004-2400
Telephone: (212) 422-0202

**Counsel for American Casualty Company of
Reading PA**

THOMPSON, LOSS & JUDGE, LLP

By:

Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC 20036
Telephone: (202) 778-4060

**Counsel for St. Paul Mercury Insurance
Company**

## EXHIBIT A

1.  Proof of claim number 9787, filed by Donald L. Runkle, dated June 20, 2006

2.  Proof of claim number 10582, filed by J. T. Battenberg III, dated July 21, 2006

3.  Proof of claim number 11104, filed by Oscar de Paula Bernardes Neto, dated July 10, 2006

4.  Proof of claim number 11105, filed by Robert H. Brust, dated June 27, 2006

5.  Proof of claim number 11106, filed by Virgis W. Colbert, dated June 27, 2006

6.  Proof of claim number 11107, filed by David N. Farr, dated June 29, 2006

7.  Proof of claim number 11108, filed by Bernd Gottschalk, dated July 20, 2006

8.  Proof of claim number 11111, filed by John D. Opie, dated June 28, 2006

9.  Proof of claim number 12056, filed by John Blahnik, dated July 27, 2006

10. Proof of claim number 12164, filed by Bernd Gottschalk, dated July 20, 2006

11. Proof of claim number 12184, filed by Catherine M. Rozanski, dated July 27, 2006

12. Proof of claim number 13410, filed by Alan S. Dawes, dated July 28, 2006

13. Proof of claim number 14935, filed by Milan Belans, dated July 28, 2006

14. Proof of claim number 15599, filed by Paul R. Free, dated July 26, 2006

15. Proof of claim number 15806, filed by John D. Sheehan, dated July 27, 2006

# **EXHIBIT D**

EXHIBIT D TO STIPULATION AND AGREEMENT OF
<u>SETTLEMENT WITH CERTAIN DEFENDANTS – ERISA ACTIONS</u>

1.     Proof of claim number 14805, filed by Neal C. Folck, dated July 29, 2006

2.     Proof of claim number 16628, filed by Kimberly Chase-Orr, dated July 19, 2007

# Exhibit C

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

```
-----------------------------------------------------------x
                                                           :
                                                           :
IN RE: DELPHI CORPORATION                                  :      MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"                           :      Master Case No. 05-md-1725
LITIGATION                                                 :      Hon. Gerald E. Rosen
                                                           :
                                                           :      This Document Relates to:
                                                           :      All Cases
-----------------------------------------------------------x
```

## STIPULATION AND AGREEMENT OF INSURANCE SETTLEMENT

This Stipulation and Agreement of Insurance Settlement (the "Insurance Stipulation")

relates to all cases in the above-captioned *In re: Delphi Corp. Securities, Derivative & "ERISA"*

*Litigation*, Master File No. 05-md-1725 (GER)(E.D. Mich.), and *SEC v. Delphi Corporation, et*

*al.*, No. 06-14891 (E.D. Mich.). This Stipulation is entered into among Delphi Corporation

("Delphi" as defined herein); J.T. Battenberg III, Milan Belans, John G. Blahnik, Robert H.

Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Peter

H. Janak, Judith Kudla, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A.

Niekamp, John D. Opie, Roger S. Penske, Catherine Rozanski, Donald S. Runkle, John D.

Sheehan, and Patricia C. Sueltz (collectively, the "Delphi Officers and Directors"); and National

Union Fire Insurance Company of Pittsburgh, Pa., Zurich American Insurance Company, Federal

Insurance Company, Twin City Fire Insurance Company, American Casualty Company of

Reading PA, Arch Insurance Company, St. Paul Mercury Insurance Company, Great American

Insurance Company, Allied World Assurance Company LTD, Endurance Specialty Insurance
Ltd., and Starr Excess International (collectively, the "Insurers" as defined herein);

**WHEREAS:**

A.      Beginning on March 7, 2005, several putative securities class actions were filed in
the Court and the United States District Court for the Southern District of New York against
Delphi, current and former Delphi officers and directors and various other defendants.  Plaintiffs
thereafter voluntarily dismissed the actions filed in the Court.  On June 27, 2005, Judge Naomi
Reice Buchwald of the United States District for the Southern District of New York appointed
lead plaintiffs to prosecute the actions on behalf of all purchasers of Delphi securities during the
putative class period and appointed lead plaintiffs' counsel as lead counsel in the actions.  The
actions filed in the United States District Court for the Southern District of New York were
consolidated by order of that court, entered September 23, 2005, under the caption *In re: Delphi
Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB).

B.      On September 30, 2005, lead plaintiffs filed a Consolidated Class Action
Complaint (the "Complaint") on behalf of all persons and entities who purchased or otherwise
acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and
Delphi Trust II, during the period between March 7, 2000 and March 3, 2005, inclusive (the
"Class Period"), against Delphi, Delphi Trust I, Delphi Trust II, certain of the Delphi Officers
and Directors, the Underwriters, J. Michael Losh, Harry J. Pearce, John F. Smith, Deloitte &
Touche LLP, BBK, Ltd., Setech, Inc., and JPMorgan Chase & Co. (as successor-in-interest to
Bank One Corporation), alleging violations of Sections 10(b) and 20(a) of the Securities
Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated
thereunder, and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities

Act"). The Complaint alleges, among other things, that Delphi, with the participation of others, improperly accounted for various transactions and otherwise made material misstatements regarding its financial position and results to inflate its earnings.

C.      On October 8, 2005, Delphi filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

D.      On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Delphi Securities Action (and other related federal actions, including the Delphi ERISA Action) to the Court for coordinated or consolidated pretrial proceedings. On March 10, 2006, certain defendants moved to dismiss the Complaint. On May 12, 2006, lead plaintiffs filed papers in opposition to the motions to dismiss. On June 12, 2006, the defendants filed their reply papers in further support of the motions to dismiss. On February 15, 2007, the Court granted lead plaintiffs' motion for partial modification of the discovery stay implemented pursuant to the Private Securities Litigation Reform Act and, on March 21, 2007, denied certain defendants' motion for reconsideration of that ruling.

E.      On March 14, 2006, lead plaintiffs voluntarily dismissed without prejudice from the Delphi Securities Action defendants J. Michael Losh, Harry J. Pearce, and John F. Smith, who were all former directors of both General Motors Corporation and Delphi.

F.      On April 11, 2005, a putative class action was filed in the United States District Court for the Southern District of Florida against Delphi Trust I, J.T. Battenberg III, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Bernd Gottschalk, Shoichiro Irimajiri, Oscar de Paula Bernardes Neto, John D. Opie, Roger S. Penske, Donald S. Runkle, John D. Sheehan, Patricia C. Sueltz, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC, under

the caption *Bernstein v. Delphi Trust I, et al.*, No. 9:05-CV-80307 (KLR) (the "Bernstein

Action"). The complaint alleged violations of Sections 11 and 15 of the Securities Act in

connection with the sale of securities of Delphi Trust I. On July 20, 2005, upon unopposed

motion, the Southern District of Florida appointed plaintiff Sidney Bernstein as lead plaintiff in

the Bernstein Action and appointed his selection of counsel as co-lead counsel in the Bernstein

Action (the "Bernstein Order"). On August 29, 2005, the Southern District of Florida stayed the

Bernstein Action pending transfer of all related actions by the multidistrict litigation panel. On

October 16, 2006, this Court granted the lead plaintiffs' motion to vacate the Bernstein Order.

For purposes of this Insurance Stipulation, the term "Delphi Securities Action" includes the

Bernstein Action.

      G.     Beginning on March 8, 2005, several putative class actions alleging violations of

the Employee Retirement Income Security Act of 1974, as amended ("ERISA") were filed in the

Court and the United States District Court for the Southern District of Ohio against Delphi and

various other defendants. Plaintiffs in those actions thereafter voluntarily dismissed the action

filed in the United States District Court for the Southern District of Ohio. On September 13,

2005, Judge Paul D. Borman of the United States District for the Eastern District of Michigan

appointed the named plaintiffs as lead plaintiffs to prosecute the actions on behalf of the putative

class of participants in the Plans during the putative class period. The ERISA actions filed in the

Court were consolidated by order, entered September 13, 2005, under the caption *In re Delphi

Corp. ERISA Litigation*, Master File No. 05-CV-70882 (PDB).

      H.     On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the

transfer of the Delphi ERISA Action (and other related federal actions, including the Delphi

Securities Action) to this Court for coordinated or consolidated pretrial proceedings.

I.      On March 3, 2006, the named plaintiffs in the Delphi ERISA Action filed a

Consolidated Class Action Complaint (the "ERISA Complaint"), on behalf of all persons who

were (i) participants in or beneficiaries of the Delphi Savings-Stock Purchase Program for

Salaried Employees, the Delphi Personal Savings Plan for Hourly-Rate Employees, or the ASEC

Manufacturing Savings Plan between May 28, 1999 and November 1, 2005, inclusive, or (ii)

participants in or beneficiaries of the Delphi Mechatronic Systems Savings-Stock Purchase

Program between June 1, 2001 and November 1, 2005, inclusive, and whose accounts included

investments in the Delphi and/or GM Stock Funds, alleging violations of Sections 502(a)(2) and

502(a)(3) of ERISA, and violations of fiduciary duties under common law.  The ERISA

Complaint alleges, among other things, that Delphi improperly accounted for various

transactions and otherwise made material misstatements regarding its financial position and

results, with the participation of others, to inflate its earnings and that the Defendants breached

their fiduciary duties to the Class in their management of the retirement plans and the plans'

assets.  On April 12, 2006, certain defendants moved to dismiss the ERISA Complaint.  On May

12, 2006, the named plaintiffs filed papers in opposition to the motions to dismiss.  On June 12,

2006, the defendants filed their reply papers in further support of the motions to dismiss.

J.      On July 21, 2004, the United States Securities and Exchange Commission

("SEC") initiated a formal investigation and on October 30, 2006, filed an enforcement action,

captioned *SEC v. Delphi Corp. et al.,* No. 06-14891 (E.D. Mich.), with respect to Delphi and

certain of the Delphi Officers and Directors related to certain of the facts alleged in the Delphi

Securities Action and related matters (the "SEC Investigation and Enforcement Action").

K.      The United States Department of Justice ("DOJ") initiated an investigation and

may initiate one or more legal proceedings with respect to certain of the matters in the SEC

Investigation and Enforcement Action and related matters, and the United States Attorney's

Office for the Southern District of New York initiated an investigation and may initiate one or

more legal proceedings concerning General Motors' purchasing practices (collectively the "DOJ

Investigation and Potential Proceedings").

L.    Delphi and the Delphi Officers and Directors notified the Insurers of the Delphi

Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement Action,

the DOJ Investigation and Potential Proceedings, and the Delphi Derivative Demands and

Actions (as defined herein)(collectively the "Insurance Claim" (as defined herein)).

M.    The Insurers reserved their rights to assert various coverage defenses under the

"Insurance Policies" (as defined herein) with respect to the Insurance Claim.

N.    Delphi Corporation has entered into certain agreements both before and after the

filing of its bankruptcy petition with a number of insurance companies in order to resolve certain

asserted defenses under the Insurance Policies and at law.

O.    Pursuant to the Order Under 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 2016(a)

Authorizing Advancement of Defense Costs Under Debtors' Insurance Policies (In re Delphi

Corporation, No. 05-44481 (RDD) (Bankr., S.D.N.Y.)) one of the Insurers, National Union Fire

Insurance Company of Pittsburgh, Pa., is permitted to advance up to $5 million of its $25 million

limit of liability for the defense costs of certain of Delphi's former officers and employees in the

Delphi Securities Action, the Delphi ERISA Action, the SEC Investigation and Enforcement

Action, and the DOJ Investigation and Potential Proceedings.

P.    With the assistance of the Honorable Layn R. Phillips, former United States

District Judge, acting as a special master for settlement purposes, the lead plaintiffs in the Delphi

Securities Action and the named plaintiffs in the Delphi ERISA Action, by their counsel, have

conducted discussions with Delphi's counsel, counsel for the Delphi Former Officers and

Employees, the counsel for the remaining Delphi Officers and Directors, and the Insurers with

respect to a compromise and settlement of the Delphi Securities Action and the Delphi ERISA

Action (the "Mediation").

Q.    The Delphi Former Officers and Employees were each represented by counsel at

the Mediation and conducted discussions with Delphi's counsel and the Insurers with respect to

the amount of insurance proceeds that would be used for the defense of the Delphi Former

Officers and Employees in the SEC Investigation and Enforcement Action, the DOJ

Investigation and Potential Proceedings and any other liability or exposure that they may face as

a result of their work at Delphi.

R.    The Parties agree that, in order fully to resolve the Insurance Claim (as defined

herein), it is a necessary condition to the Insurance Settlement (as defined herein) that the Court

contemporaneously approve (i) the separate Delphi ERISA Action Settlement and (ii) the

separate Delphi Securities Action Settlement.

NOW THEREFORE, without any admission or concession on the part of the Insurers of

any lack of merit of their defenses to coverage for the Insurance Claim whatsoever, and without

any admission or concession of any lack of merit of the Insurance Claim whatsoever by Delphi

and the Delphi Officers and Directors, it is hereby STIPULATED AND AGREED, by and

between the parties to this Insurance Stipulation, subject to approval of the Court pursuant to

Rule 23(e) of the Federal Rules of Civil Procedure of the Delphi Securities Action Settlement

and the Delphi ERISA Action Settlement, in consideration of the benefits flowing to the parties

hereto from the Insurance Settlement (as defined herein), that all Settled Insurance Claims (as

defined herein), all Settled Officer and Director Claims (as defined herein), and all Settled

Delphi Claims, shall be compromised, settled, released and dismissed with prejudice, and the

Insurance Policies shall be deemed fully exhausted and forever discharged upon and subject to

the following terms and conditions:

### DEFINITIONS

1.        As used in this Insurance Stipulation, the following terms shall have the

following meanings:

(a)      "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its

affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

(b)      "Bankruptcy Court" means the United States Bankruptcy Court for the

Southern District of New York.

(c)      "Barred Persons" means any person who is, may be, or claims to be an

insured under any of the Insurance Policies or who otherwise claims to have an interest in the

Insurance Policies, including any interest alleged to arise by reason of a claim against an insured,

or who derives their claim from any insured under any of the Insurance Policies, including

without limitation any judgment creditors, claimants, assignees or similar persons.

(d)      "Court" means the United States District Court for the Eastern District of

Michigan.

(e)      "Delphi" means Delphi Corporation (including without limitation Delphi

Corporation as Debtor in Possession) and Delphi Trust I and Delphi Trust II.

(f)      "Delphi Derivative Demands and Actions" means those derivative

demands that were made and actions that were filed against certain of the Delphi Officers and

Directors alleging the same or related facts as those alleged in the Delphi Securities Action,

including *Dangerfield v. Battenberg*, et. al, No. 2:05-CV-72550 (GER) (E.D. Mich.); *Fosbre v.*

*Delphi Corporation*, et al., No. 2:06-CV-10031 (GER) (E.D. Mich.); *Lemon Bay Partners v.*

*Delphi Corporation*, et al., No. 05-065192-CZ (SNA) (Circuit Court of Oakland County,

Michigan); *Wilheimer v. Delphi Corporation*, et al., No. 05-068931-CK (MAG) (Circuit Court of

Oakland County, Michigan); and a March 18, 2005 shareholder demand on behalf of Norman

Rosenkrantz pursuant to Del. Ct. Ch. R. 23.1.

(g)    "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative

& "ERISA" Litigation*, Master File No. 05-md-1725 (GER), relating to *In re: Delphi Corp.

ERISA Litigation*, Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-

71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-

71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198.

(h)    "Delphi ERISA Action Escrow Agent" means that entity identified in

¶1(u) of the Delphi ERISA Action Stipulation.

(i)    "Delphi ERISA Action Stipulation" or "Delphi ERISA Action Settlement"

means the Stipulation and Agreement of Settlement in the Delphi ERISA Action

(j)    "Delphi Former Officers and Employees" means J.T. Battenberg III,

Milan Belans, John G. Blahnik, Alan S. Dawes, Paul R. Free, Peter H. Janak, Judith Kudla, and

Catherine Rozanski.

(k)    Delphi Former Officers and Employees Escrow Agent means a person or

entity to be identified by the Delphi Former Officers and Employees by September 4, 2007.

(l)    "Delphi Officers and Directors" means J.T. Battenberg III, Milan Belans,

John G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R.

Free, Bernd Gottschalk, Peter H. Janak, Judith Kudla, Susan A. McLaughlin, Oscar de Paula

Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Catherine Rozanski,

Donald S. Runkle, John D. Sheehan, and Patricia C. Sueltz.

(m)    "Delphi Officers and Directors Released Parties" means the Delphi

Officers and Directors and any and all past, present, and future heirs, estates, administrators,

trustees, executors, agents, attorneys, representatives, and assigns of each of the Delphi Officers

and Directors, as well as any person acting on behalf of the Delphi Officers and Directors, either

singularly or collectively;

(n)    "Delphi Released Parties" means Delphi and any and all predecessors,

successors, parents, subsidiaries, affiliates, assigns, transferees, agents, attorneys, directors,

officers, employees, shareholders of Delphi and any person or entity acting on Delphi's behalf.

(o)    "Delphi Securities Action" means *In re: Delphi Corp. Securities,*

*Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER) and relating to *In re:*

*Delphi Corp. Securities Litigation*, No. 06-10026, and Case Nos. 06-10027, 06-10028, 06-10029,

06-10030, 06-10031 and 06-10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025

(GER)(formerly No. 9:05-CV-80307 (KLR)(S.D. Fla.)).

(p)    "Delphi Securities Action Escrow Agent" means that entity identified in

¶1(z) of the Delphi Securities Action Stipulation.

(q)    "Delphi Securities Action Stipulation" or "Delphi Securities Action

Settlement" means the Stipulation and Agreement of Settlement in the Delphi Securities Action.

(r)    "Effective Date of the Insurance Settlement" means the date upon which

the Insurance Settlement contemplated by this Insurance Stipulation shall become effective, as

set forth in ¶12 hereof.

(s)    "Insurance Claim" means Delphi's and the Delphi Officers' and Directors'

claim for insurance coverage with respect to the Delphi Securities Action, the Delphi ERISA

Action, the SEC Investigation and Enforcement Action, the DOJ Investigation and Potential

Proceedings, the Delphi Derivative Demands and Actions and all matters based upon, arising out

of or alleging the same or related "Wrongful Acts" (as that term is defined in National Union

Fire Insurance Company of Pittsburgh, Pa. Policy No. 931-88-56).

(t)    "Insurance Policies" means the following:  National Union Fire Insurance

Company of Pittsburgh, Pa. Policy Nos. 931-88-56 and 931-88-61; Zurich American Insurance

Company Policy No. DOC 3597322 02; Federal Insurance Company Policy No. 8155-9921;

Twin City Fire Insurance Company Policy No. 00 DA 0153136-04; American Casualty

Company of Reading PA Policy Nos. 169654153 and 267960067; Arch Insurance Company

Policy No. 41DOX15380 01; St. Paul Mercury Insurance Company Policy No. 512CM1117;

Great American Insurance Company Policy No. DFX0009714; Allied World Assurance

Company LTD Policy No. C001635/002; Endurance Specialty Insurance Ltd. Policy No. 008557

002; and Starr Excess International Policy No. 6461124.

(u)    "Insurance Settlement" means the settlement contemplated by this

Insurance Stipulation.

(v)    "Insurance Settlement Amount" means the total amount to be paid by the

Insurers as provided in ¶ 9 hereof and in accordance with the terms of this Insurance Stipulation.

(w)    "Insurers" means the following:  National Union Fire Insurance Company

of Pittsburgh, Pa.; Zurich American Insurance Company; Federal Insurance Company; Twin

City Fire Insurance Company; American Casualty Company of Reading PA; Arch Insurance

Company; St. Paul Mercury Insurance Company; Great American Insurance Company; Allied

World Assurance Company LTD; Endurance Specialty Insurance Ltd.; and Starr Excess

International.

(x)     "Insurers Released Parties" means any and all of the Insurers, their past or

present or future subsidiaries, parents, principals, affiliates, general or limited partners or

partnerships, successors and predecessors, heirs, estates, assigns, officers, directors,

shareholders, owners, representatives, agents, employees, attorneys, advisors, insurers, co-

insurers, re-insurers, consultants, administrators, executors, or trustees.

(y)     "Notice Costs" means the costs of notice incurred in connection with the

Securities Action Settlement and the ERISA Action Settlement.

(z)     "Parties" means Delphi, the Delphi Officers and Directors and the

Insurers.

(aa)    "Released Parties" means the Delphi Released Parties, the Delphi Officers

and Directors Released Parties and the Insurers Released Parties.

(bb)    "Settled Delphi Claims" means any and all claims, potential claims, debts,

demands, rights or causes of action, suits, matters, reckonings, obligations, liens, and issues or

liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys'

fees, expert or consulting fees, and any other costs, reimbursement, indemnification, expenses or

liability whatsoever), whether based on United States federal, state, local, statutory or common

law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued,

liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual

in nature, including both known claims and Unknown Claims (as defined herein), (i) that have

been asserted against Delphi by the Insurers or the Delphi Officers and Directors with respect to

the Delphi Securities Action, the ERISA Action, the Delphi Derivative Demands and Actions,

the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential

Proceedings, or (ii) that could have been asserted in any forum against Delphi by the Insurers or

the Delphi Officers and Directors, or any of their successors and assigns arising out of, based

upon or related to the allegations, transactions, facts, matters or occurrences, representations or

omissions involved, set forth, or referred to in the Delphi Securities Action, the Delphi ERISA

Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement

Action, or the DOJ Investigation and Potential Proceedings, except claims to enforce the terms of

this Insurance Stipulation.

        (cc)    "Settled Officer and Director Claims" means any and all claims, potential

claims, debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens

and issues or liabilities whatsoever, including, but not limited to, any claims for damages,

interest, attorneys' fees, expert or consulting fees, and any other costs, reimbursement of any

funds advanced (prior to or in connection with this Insurance Stipulation) by Delphi or the

Insurers, indemnification, expenses or liability whatsoever, whether based on United States

federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed

or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or

unmatured, whether class or individual in nature, including both known claims and Unknown

Claims (as defined herein), (i) that have been asserted by Delphi in the Delphi Securities Action,

the ERISA Action, or on behalf of Delphi in the Delphi Derivative Demands and Actions against

any of the Delphi Officers and Directors Released Parties, or (ii) that could have been asserted in

any forum by the Delphi Released Parties or the Insurers Released Parties against any of the

Delphi Officers and Directors Released Parties which arise out of, are based upon or related to

accounting and/or financial reporting and disclosure at Delphi or the allegations, transactions,

facts, matters or occurrences, representations or omissions involved, set forth, or referred to in

the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and

Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential

Proceedings or the Insurance Claim, except claims to enforce the terms of this Insurance

Stipulation.

(dd)   "Settled Insurance Claims" means any and all claims, potential claims,

debts, demands, rights or causes of action, suits, matters, reckonings, obligations, liens and issues

or liabilities whatsoever (including, but not limited to, any claims for damages, interest,

attorneys' fees, expert or consulting fees, and any other costs, reimbursement, indemnification,

expenses or liability whatsoever), whether based on United States federal, state, local, statutory

or common law or any other law, rule or regulation, whether fixed or contingent, accrued or

unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class

or individual in nature, including both known claims and Unknown Claims (as defined herein)

arising out of, related to, based upon, by reason of, or in any way involving:

(i)    the Insurance Policies;

(ii)    the Insurance Claim, the allegations of the Insurance Claim, or the

same or related facts, circumstances, transactions or events or series of facts, circumstances,

transactions or events at issue in the Insurance Claim, including therein any claim that the Delphi

Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the

SEC Investigation and Enforcement Action or the DOJ Investigation and Potential Proceedings

are covered under any other insurance policies sold to Delphi Corporation;

(iii)    the defense of the Insurance Claim or, with respect to the Insurance

Policies, the defense of any other claims, debts, demands, rights or causes of action, suits,

matters, and issues or liabilities whatsoever;

(iv)    any claim for misrepresentation, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to the Insurance Claim and the Insurance Policies;

except claims to enforce the terms of this Insurance Stipulation.

(ee)    "Unknown Claims" means any Settled Delphi Claims, Settled Officer and Director Claims and Settled Insurance Claims, which any Party does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it, might have affected his, her or its decision with respect to the Insurance Settlement. With respect to any and all Settled Delphi Claims, Settled Officer and Director Claims and Settled Insurance Claims, the Parties stipulate and agree that upon the Effective Date of the Insurance Settlement, all Parties shall be deemed to have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge that the inclusion of "Unknown Claims" in the definitions of "Settled Delphi Claims," "Settled Officer and Director Claims" and "Settled Insurance Claims" was separately bargained for and was a key element of the Insurance Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Insurance Stipulation shall be in full and final disposition of the Insurance Claim and the Insurance Policies.  It is understood and

agreed that upon the Effective Date of the Insurance Settlement, the Insurance Policies shall be deemed fully exhausted and forever discharged.

3.      Subject to ¶ 14 hereof, upon the execution of this Insurance Stipulation, any proof of claim or any portion of any proof of claim filed in the Bankruptcy Case by or on behalf of the Delphi Officers and Directors Released Parties or the Insurers Released Parties relating to any claim of loss, damage, reimbursement, contribution or indemnification arising out of or relating to the Delphi Securities Action, the Delphi ERISA Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement Action, or the DOJ Investigation and Potential Proceedings, including but not limited to the Proofs of Claim or portions of Proofs of Claim listed in Exhibit A hereto, shall be deemed to have an estimated amount of $0 for all purposes in the Bankruptcy Case.

4.      Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Delphi Released Parties and the Delphi Officers and Directors Released Parties release and forever discharge, and are forever enjoined from prosecuting, any Settled Insurance Claim against any of the Insurers Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any of the Insurers Released Parties or any other person who may claim any form of contribution or indemnity from any of the Insurers Released Parties in respect of any Settled Insurance Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement.

5.      Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Delphi Released Parties and the Insurers

Released Parties, with respect to each and every Settled Officer and Director Claim, release and

forever discharge, and are forever enjoined from prosecuting, any Settled Officer and Director

Claim against any of the Delphi Officers and Directors Released Parties, and shall not institute,

continue, maintain or assert, either directly or indirectly, whether in the United States or

elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit,

cause of action, claim or demand against any of the Delphi Officers and Directors Released

Parties or any other person who may claim any form of contribution or indemnity from any

Delphi Officers and Directors Released Parties in respect of any Settled Officer and Director

Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance

Settlement, except as provided in ¶ 6 herein.

6.      Notwithstanding the provisions of ¶¶ 4-5 hereof, in the event that any of the

Delphi Officers and Directors Released Parties asserts any claim against the Delphi Released

Parties or their respective counsel, including any claim contemplated in a proof of claim or a

portion of a proof of claim filed in the Bankruptcy case that is not otherwise released and

withdrawn pursuant to this Insurance Stipulation, then Delphi and its successors and assigns and

their counsel shall be entitled to use and assert the Settled Officer and Director Claim and any

factual matters included within the Settled Officer and Director Claims against such Delphi

Officers and Directors Released Parties in defense or set-off of such claim, including pursuant to

the Bankruptcy Code or otherwise.  In the event that Delphi asserts any of the Settled Officers

and Directors Claims in defense or set-off of a claim made by one of the Delphi Officers and

Directors against Delphi in the Bankruptcy Court and one of the Delphi Officers or Directors has

been successful on the merits or otherwise with respect to such defense or set-off interposed by

Delphi, then notwithstanding paragraph 8 hereof, the Delphi Officer or Director shall, pursuant

to a proof of claim or interest that was timely filed in the Bankruptcy Case, be entitled to assert a claim for indemnification for legal fees and expenses incurred in defense of such Settled Officers and Directors Claims to the extent such indemnification is required by Article V of Delphi's bylaws in effect as of the time of the filing of the Bankruptcy Case and/or Delaware law, and if such proof of claim or interest is allowed, such indemnification shall be payable to the extent allowed by the Bankruptcy Court in the applicable plan currency commensurate with other similarly allowed claims or interests.

7.    Within ten (10) days of the Effective Date of the Insurance Settlement, Delphi shall dismiss with prejudice *Delphi Corporation v. National Union Fire Insurance Company of Pittsburgh, Pa.*, Adversary Proceeding No. 07-01435 [RDD], pending in the United States Bankruptcy Court for the Southern District of New York.

8.    Upon the Effective Date of the Insurance Settlement, in exchange for the consideration set forth in this Insurance Stipulation, the Insurers Released Parties and the Delphi Officers and Directors Released Parties release and forever discharge, and are forever enjoined from prosecuting, any Settled Delphi Claim against the Delphi Released Parties and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against Delphi Released Parties or any other person who may claim any form of contribution or indemnity from Delphi Released Parties in respect of any Settled Delphi Claim or any matter related thereto, at any time on or after the Effective Date of the Insurance Settlement, provided further that on the Effective Date of the Insurance Settlement, (i) the Delphi Officers and Directors Released Parties shall be deemed to have withdrawn all proofs of claim or all portions of any proofs of claim filed in the Bankruptcy Case by them or on

their behalf relating to any claim of loss, damage, reimbursement, contribution or

indemnification arising out of or relating to the Delphi Securities Action, the Delphi ERISA

Action, the Delphi Derivative Demands and Actions, the SEC Investigation and Enforcement

Action, or the DOJ Investigation and Potential Proceedings, including but not limited to the

Proofs of Claim or portions of the Proofs of Claim listed in Exhibit A hereto, and (ii) the Insurers

Released Parties shall be deemed to have withdrawn all proofs of claim or all portions of any

proofs of claim filed in the Bankruptcy Case by them or on their behalf relating to, based upon or

by reason of the Insurance Policies.

## SETTLEMENT CONSIDERATION

9.      In consideration for the release and discharge provided for in ¶ 4 hereof, the

Insurers shall distribute or pay or cause to be paid the Insurance Settlement Amount, as follows:

| INSURER | AMOUNT | RECIPIENT |
|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") | $20 Million | Delphi Former Officers and Employees Escrow Agent |
| Zurich American Insurance Company ("Zurich") | $22.5 Million | ERISA Action Escrow Agent |
|  | $2.5 Million | Securities Action Escrow Agent |
| Federal Insurance Company | $25 Million | Securities Action Escrow Agent |
| Twin City Fire Insurance Company | $15 Million | Securities Action Escrow Agent |
| American Casualty Company of Reading PA | $15 million | Securities Action Escrow Agent |
| Arch Insurance Company | $7.5 Million | Securities Action Escrow Agent |
| St. Paul Mercury Insurance Company | $4.3 Million | Securities Action Escrow Agent |
| Great American Insurance Company | $4.3 Million | Securities Action Escrow Agent |
| Allied World Assurance Company LTD | $6.25 Million | Securities Action Escrow Agent |
| Endurance Specialty Insurance Ltd. | $3.75 Million | Securities Action Escrow Agent |
| Starr Excess International | $5 Million | Securities Action Escrow Agent |

National Union shall pay its share of the Insurance Settlement Amount to the Delphi Former

Officers and Employees Escrow Agent within ten (10) business days after the later of the entry

by the District Court for the Eastern District of Michigan of an order preliminarily approving the

Delphi Securities Action Settlement or the entry by the District Court for the Eastern District of

Michigan of an order preliminarily approving the Delphi ERISA Action Settlement.  Zurich shall

pay its share of the Insurance Settlement Amount to the Delphi ERISA Action Escrow Agent

within ten (10) business days after the entry by the Court of an order preliminarily approving the

Delphi ERISA Action Settlement.  Zurich and all other Insurers shall pay their share of the

Insurance Settlement Amount to the Delphi Securities Action Escrow Agent within ten (10)

business days after entry by the District Court for the Eastern District of Michigan of an order

preliminarily approving the Delphi Securities Action Settlement.  Delphi and/or the Delphi

Former Officers and Employees shall provide the Insurers with wire transfer instructions for

each escrow account (including the receiving bank (name and address), the account number, the

routing number, the EIN, tax identification number, or a completed Form W-9 where required by

an Insurer, name of payee or escrow accountholder) by or on the date the Court enters an order

preliminarily approving the Delphi Securities Action Settlement or the Delphi ERISA Action

Settlement, whichever occurs first.

       10.    The portion of the Insurance Settlement Amount paid to the Delphi Former

Officers and Employees Escrow Agent shall be apportioned among the Delphi Former Officers

and Employees in amounts and pursuant to such terms as may be separately agreed upon by

those parties and their counsel in advance and in writing and shall be used solely for defense

costs incurred as part of the ongoing SEC Investigation and Enforcement Action, the DOJ

Investigation and Potential Proceedings, the United States Attorney Office for the Southern

District of New York's investigation into General Motors' purchasing practices and/or any

other defense costs reasonably related to the Delphi Former Officers and Employees tenure at

Delphi; provided, however, prior to the Effective Date of the Insurance Settlement, no

payments may be made by the Delphi Former Officers and Employees Escrow Agent (a)

unless and until the Delphi Former Officers and Employees provide to the Insurers an

unsecured written undertaking to repay any sums so paid if the Insurance Settlement does not

become effective and it is later determined that the Delphi Former Officers and Employees

were not entitled to the amounts paid under the Insurance Policies, and (b) unless and until the

Delphi Former Officers and Employees Escrow Agent is authorized to make such payments by

an order of the Bankruptcy Court either upon uncontested motion or stipulated order

notwithstanding the automatic stay, to the extent it applies. All parties to this Insurance Stipulation shall stipulate to such an order within 10 business days of receipt of such Stipulation, or, if a motion is necessary, such motion shall be unopposed by any Party to this Insurance Stipulation. Under no circumstance shall any sum so paid be used for purposes other than defense costs and, in particular, the sums so paid shall not be used for payment of any fine, penalty, or restitution.

11.    In addition, within ten (10) business days after entry by the Court of an order preliminarily approving the Delphi Securities Action Settlement, National Union shall cause to be paid to the Delphi Securities Action Escrow Agent (to be divided as agreed upon by the plaintiffs in the Securities Action and plaintiffs in the ERISA Action) the portion of the $5 million remaining limit of liability under National Union Policy Nos. 931-88-56 and 931-88-61 that has not already been incurred in the defense costs of the Former Officers and Employees for services rendered as of the entry by the Court of an order preliminarily approving the Delphi Securities Action Settlement.

### EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

12.    The "Effective Date of the Insurance Settlement" shall be the date when all the following conditions of settlement shall have occurred:

(a)    all conditions in ¶ 29 of the Delphi Securities Action Stipulation;

(b)    all conditions in ¶ 17 of the Delphi ERISA Action Stipulation; and

(c)    entry of an Order by the Bankruptcy Court approving this Insurance Settlement and barring and enjoining the institution and/or prosecution of any actions or claims by any Barred Person against any of the Insurers arising out of or related to any of the Insurance Policies or the obligations of any of the Insurers under any of the Insurance Policies.

13.     This Insurance Settlement shall terminate if the Delphi Securities Action Settlement terminates pursuant to ¶ 30-31 of the Delphi Securities Action Stipulation or if the Delphi ERISA Action Settlement terminates pursuant to ¶ 18-19 of the Delphi ERISA Action Stipulation.

14.     Except as otherwise provided herein, in the event the Insurance Settlement is terminated, the parties to this Insurance Stipulation shall be deemed to have reverted to their respective status immediately prior to the execution of this Insurance Stipulation and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Insurance Stipulation and any related orders had not been entered.  Except as provided in paragraph 15 below, within ten (10) business days following any termination of this Insurance Stipulation, the Insurers shall be entitled to be paid by the respective Escrow Agents *pro rata* the amounts specified in ¶ 32 of the Delphi Securities Action Stipulation and ¶ 20 of the Delphi ERISA Action Stipulation, provided, however, the Parties agree that any reasonable Notice Costs incurred and paid or payable prior to such termination shall be deemed Defense Costs under Side B of the Insurance Policies, and, without prejudice to Delphi's right to contend that the retention has been satisfied and to seek to hold National Union liable for those Notice Costs, Delphi in the first instance shall pay the Insurers other than National Union *pro rata* the Notice Costs deducted by the respective Delphi Securities Action Escrow Agent and the Delphi ERISA Action Escrow Agent.

15.     National Union shall be entitled to be paid by the Delphi Former Officers and Employees Escrow Agent $20 million plus any earned interest thereon less any amount for defense costs incurred pursuant to ¶ 10 herein, any taxes paid or due with respect to any interest income, and any account administrative costs incurred.  National Union shall be entitled to be

paid by the Delphi Securities Action Escrow Agent the amount National Union paid to it pursuant to ¶ 11 hereof less any amounts deducted by the Delphi Securities Action Escrow Agent pursuant to ¶ 32 of the Delphi Securities Action Stipulation.  The Delphi Former Officers and Employees shall have no obligation to repay any funds remitted pursuant to ¶ 11 hereof.

## NO ADMISSION OF WRONGDOING

16.    This Insurance Stipulation, whether or not consummated, and any proceedings taken pursuant to it shall not be admissible in any other action or proceeding between the Parties except in an action to interpret or enforce this Insurance Stipulation, and shall not be deemed an admission of wrongdoing or liability of any party.

## MISCELLANEOUS PROVISIONS

17.    This Insurance Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

18.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

19.    The waiver by one party of any breach of this Insurance Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Insurance Stipulation.

20.    This Insurance Stipulation constitutes the entire agreement concerning the Insurance Settlement, and no representations, warranties, or inducements have been made by any party hereto concerning this Insurance Stipulation, other than those contained and memorialized in this Insurance Stipulation.

21.    This Insurance Stipulation may be executed in one or more original, photocopied or facsimile counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

22.    This Insurance Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

23.    The construction and interpretation of this Insurance Stipulation shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law governs.

24.    This Insurance Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Insurance Stipulation.

25.    All counsel and any other person executing this Insurance Stipulation warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Insurance Stipulation to effectuate its terms.

26.    All Parties to this Insurance Stipulation warrant and represent that they have not assigned any rights, claims, or obligations related to this agreement on or before the date of execution of this Insurance Stipulation.

DATED: August 31, 2007

EXHIBIT A

1.    Proof of claim number 9787, filed by Donald L. Runkle, dated June 20, 2006

2.    Proof of claim number 10582, filed by J. T. Battenberg III, dated July 21, 2006

3.    Proof of claim number 11104, filed by Oscar de Paula Bernardes Neto, dated July 10, 2006

4.    Proof of claim number 11105, filed by Robert H. Brust, dated June 27, 2006

5.    Proof of claim number 11106, filed by Virgis W. Colbert, dated June 27, 2006

6.    Proof of claim number 11107, filed by David N. Farr, dated June 29, 2006

7.    Proof of claim number 11108, filed by Bernd Gottschalk, dated July 20, 2006

8.    Proof of claim number 11111, filed by John D. Opie, dated June 28, 2006

9.    Proof of claim number 12056, filed by John Blahnik, dated July 27, 2006

10.    Proof of claim number 12164, filed by Bernd Gottschalk, dated July 20, 2006

11.    Proof of claim number 12184, filed by Catherine M. Rozanski, dated July 27, 2006

12.    Proof of claim number 13410, filed by Alan S. Dawes, dated July 28, 2006

13.    Proof of claim number 14935, filed by Milan Belans, dated July 28, 2006

14.    Proof of claim number 15599, filed by Paul R. Free, dated July 26, 2006

15.    Proof of claim number 15806, filed by John D. Sheehan, dated July 27, 2006

**HELLER EHRMAN LLP**

By: _____

Timothy W. Burns

One East Main Street
Suite 201
Madison, WI  53703-5118
Telephone: (608) 663-7487
Facsimile: (608) 6637499

**SHEARMAN & STERLING LLP**
Stuart J. Baskin
Brian H. Polovoy
Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

**Counsel for Delphi Corporation, Delphi Trust I,
Delphi Trust II, Robert H. Brust,
Virgis W. Colbert, David N. Farr,
Bernd Gottschalk, Susan A. McLaughlin,  Oscar
de Paula Bernardes Neto, Cynthia A. Niekamp,
John D. Opie, Roger S. Penske, Donald S.
Runkle, John D. Sheehan, and Patricia C. Sueltz**

BAKER BOTTS L.L.P.

By: _____

    William H. Jeffress, Jr.
    Joe R. Caldwell, Jr
    Bridget M. Moore
    Michael G. Pattillo, Jr.


1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg**

O'MELVENY & MYERS LLP

By: _Robert M. Stern_ *(per consent 8/30/07 mjz)*
    Robert N. Eccles
    Robert M. Stern

1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

**BAKER BOTTS L.L.P.**

By: *Bridget M. Moore*

    William H. Jeffress, Jr.
    Joe R. Caldwell, Jr
    Bridget M. Moore
    Michael G. Pattillo, Jr.


1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg**

**O'MELVENY & MYERS LLP**

By:
    Robert N. Eccles
    Robert M. Stern

1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

PEPPER HAMILTON LLP

By: _____
     Matthew J. Lund

100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

**Counsel for Paul R. Free**


SARETSKY HART MICHAELS & GOULD PC

By: _____ *(Per consent (8/30/07 MJL))*
     Eric A. Michaels

995 South Eton
Birmingham, Michigan 48009
Telephone:  (248) 502-3300

**Counsel for Judith Kudla**


MILLER, CANFIELD. PADDOCK and
STONE, PLC

By: _____
     Thomas W. Cranmer
     Matthew P. Allen

150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420

**Counsel for John G. Blahnik and Peter H. Janak**

**CLARK HILL PLC**

By: _Charles E Murphy_
　　Martin E. Crandall
　　Charles E. Murphy

500 Woodward Avenue
Suite 3500
Detroit, MI  48226
Telephone:  (313) 965-8413

**Counsel for Milan Belans**


**BUTZEL LONG PC**

By: _David Dumouchel_
　　David Dumouchel
　　Laurie J. Michelson

(w/consent
Matt
Allen
8/30/07)

150 W. Jefferson Avenue
Suite 100
Detroit, MI  48226
Telephone:  (313) 225-7004

**Counsel for Cathy Rozanski**

**EDWARDS ANGELL PALMER & DODGE LLP**

By: _____
     John D. Hughes
     Mary-Pat Cormier

111 Huntington Avenue
Boston, MA  02119
Telephone:  (617) 951-3373

**Counsel for Allied World Assurance Company
and Endurance Specialty Insurance Ltd.**

**FEDERAL INSURANCE COMPANY**

By: _____
     Brendan R. Kelley
     Assistant Vice President
     Chubb & Son, A Division of Federal Insurance
     Co.

**BOUNDAS SKARZYNSKI WALSH & BLACK, LLC**

By: _____
     James A. Skarzynski
     David T. Burrowes
     Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL  60601
Telephone:  (312) 946-4214

**Counsel for Great American Insurance Company**

**EDWARDS ANGELL PALMER & DODGE LLP**

By:

    John D. Hughes
    Mary-Pat Cormier


111 Huntington Avenue
Boston, MA 02119
Telephone: (617) 951-3373

**Counsel for Allied World Assurance Company and Endurance Specialty Insurance Ltd.**


**Chubb & Son a division of Federal Insurance Co.**

By:

    Brendan R. Kelley
    Assistant Vice President


**BOUNDAS SKARZYNSKI WALSH & BLACK, LLC**

By:

    James A. Skarzynski
    David T. Burrowes
    Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL 60601
Telephone: (312) 946-4214

**EDWARDS ANGELL PALMER & DODGE LLP**

By: _____
    John D. Hughes
    Mary-Pat Cormier

111 Huntington Avenue
Boston, MA  02119
Telephone:  (617) 951-3373

**Counsel for Allied World Assurance Company and Endurance Specialty Insurance Ltd.**


**FEDERAL INSURANCE COMPANY**

By: _____
    Brendan R. Kelley
    Assistant Vice President
    Chubb & Son, A Division of Federal Insurance Co.


**BOUNDAS SKARZYNSKI WALSH & BLACK, LLC**

By: _____
    James A. Skarzynski
    David T. Burrowes
    Nathan L. Strup

200 E. Randolph Drive
Suite 7200
Chicago, IL  60601
Telephone:  (312) 946-4214

**Counsel for Great American Insurance Company**

ROSS DIXON & BELL, LLP

By: _Kim W_ w/ consent 8/30/07
    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758
Telephone:  (312) 759-5945

**Counsel for Twin City Fire Insurance Company**


**BAILEY CAVALIERI LLC**

By:
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Telephone:  (614) 229-3203

**Counsel for Zurich American Insurance
Company**


**D'AMATO & LYNCH, LLP**

By:
    Thomas F. Breen

70 Pine Street
New York, NY  10270-0110
Telephone:  (212) 269-0927

**Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International**

**ROSS DIXON & BELL, LLP**

By:

    Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758
Telephone:  (312) 759-5945

**Counsel for Twin City Fire Insurance Company**


**BAILEY CAVALIERI LLC**

By:    _R. Stacy Lane_
    R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Telephone:  (614) 229-3203

**Counsel for Zurich American Insurance
Company**


**D'AMATO & LYNCH, LLP**

By:

    Thomas F. Breen

70 Pine Street
New York, NY  10270-0110
Telephone:  (212) 269-0927

**Counsel for National Union Fire Insurance
Company of Pittsburgh, Pa. and Starr Excess
International**

ROSS DIXON & BELL, LLP

By:

Kimberly E. Rients Blair

55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758
Telephone:  (312) 759-5945

**Counsel for Twin City Fire Insurance Company**

BAILEY CAVALIERI LLC

By:

R. Stacy Lane

10 West Broad Street
Suite 2100
Columbus, OH  43215-3422
Telephone:  (614) 229-3203

**Counsel for Zurich American Insurance Company**

D'AMATO & LYNCH, LLP

By: Thomas F. Breen

70 Pine Street
New York, NY  10270-0110
Telephone:  (212) 269-0927

**Counsel for National Union Fire Insurance Company of Pittsburgh, Pa. and Starr Excess International**

**KAUFMAN BORGEEST & RYAN LLP**

By: _Wayne E. Borgeest_    by Paul Curley
                          w/ permission

Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY  10016
Telephone:  (212) 980-9600

**Counsel for Arch Insurance Company**


**SEDGWICK, DETERT, MORAN & ARNOLD
LLP**

By:

Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY  10004-2400
Telephone:  (212) 422-0202

**Counsel for American Casualty Company of
Reading PA**


**THOMPSON, LOSS & JUDGE, LLP**

By:

Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC  20036
Telephone:  (202) 778-4060

**Counsel for St. Paul Mercury Insurance
Company**

**KAUFMAN BORGEEST & RYAN LLP**

By: _____
  Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY  10016
Telephone:  (212) 980-9600

**Counsel for Arch Insurance Company**


**SEDGWICK, DETERT, MORAN & ARNOLD LLP**

By: _____
  Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY  10004-2400
Telephone:  (212) 422-0202

**Counsel for American Casualty Company of Reading PA**


**THOMPSON, LOSS & JUDGE, LLP**

By: _____
  Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC  20036
Telephone:  (202) 778-4060

**Counsel for St. Paul Mercury Insurance Company**

**KAUFMAN BORGEEST & RYAN LLP**

By:

Wayne E. Borgeest

99 Park Avenue, 19th Floor
New York, NY  10016
Telephone:  (212) 980-9600

**Counsel for Arch Insurance Company**


**SEDGWICK, DETERT, MORAN & ARNOLD
LLP**

By:

Joseph M. Smick

125 Broad Street, 39th Floor
New York, NY  10004-2400
Telephone:  (212) 422-0202

**Counsel for American Casualty Company of
Reading PA**


**THOMPSON, LOSS & JUDGE, LLP**

By:

Thomas J. Judge

Two LaFayette Centre, Ste. 450
1133 21st Street, NW
Washington, DC  20036
Telephone:  (202) 778-4060

**Counsel for St. Paul Mercury Insurance
Company**

# Exhibit D

Case 2:05-md-01725-GER   Document 262   Filed 09/05/2007   Page 1 of 8

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

```
------------------------------------------------------x
                                                      :
                                                      :
                                                      :
IN RE: DELPHI CORPORATION              :    MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"       :    Master Case No. 05-md-1725
LITIGATION                             :    Hon. Gerald E. Rosen
                                                      :
                                                      :    This Document Relates to:
                                                      :    In Re: Delphi Corp. Securities Litig.
                                                      :    No. 06-10026, and Case Nos.
                                                      :    06-10025, 06-10027, 06-10028,
                                                      :    06-10029, 06-10030, 06-10031, and
                                                      :    06-10032
                                                      :    -------------------------------------------
                                                      :
------------------------------------------------------x
```

## ORDER OF PRELIMINARY APPROVAL AND
## FOR NOTICE AND HEARING

Presented to the Court for preliminary approval pursuant to Rule 23 of the Federal Rules

of Civil Procedure is the Settlement of the above-captioned actions (the "Delphi Securities

Action") by and between Teachers' Retirement System of Oklahoma, Public Employees'

Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting

Pensioenfonds ABP (collectively, "Lead Plaintiffs"), individually and on behalf of the Class, and

the following defendants in the Delphi Securities Action: (i) Delphi Corporation ("Delphi"), (ii)

Delphi Trust I and Delphi Trust II; (iii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust,

Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A.

McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S.

Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively, these

individuals will be referred to herein as the "Delphi Officer and Director Defendants"), and (iv)

Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated,

Citigroup Global Markets Inc. ,, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First

Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley &

Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the

"Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and

Director Defendants and the Underwriter Defendants are collectively referred to as the "Settling

Defendants");

WHEREAS the terms of the Settlement are set forth in a Stipulation and Agreement of

Settlement With Certain Defendants, that was executed by the Settling Parties on August 31,

2007 (the "Stipulation").  The Settlement was reached after extensive arm's-length and

protracted negotiations that included multiple mediation conferences before a Court-appointed

special master.  Approval of the Settlement would result in dismissal of the Delphi Securities

Action with prejudice with respect to the Settling Defendants.  The Delphi Securities Action

shall continue with respect to defendants Deloitte & Touche LLP, JP Morgan Chase & Co. (as

the successor to Bank One Corporation), SETECH, Inc. and BBK (collectively, the "Non-

Settling Defendants");

NOW, upon consent of the Settling Parties, after review and consideration of the

Stipulation filed with the Court and the exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED that:

    1.    The Court, for purposes of this Order for Notice and Hearing (the

"Preliminary Approval Order"), adopts all defined terms as set forth in the

Stipulation.

    2.    The Court hereby preliminarily certifies, for purposes of

effectuating this Settlement, a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3)

consisting of all persons and entities who purchased or otherwise acquired

publicly traded securities of Delphi, including securities issued by Delphi Trust I

Case 1:05-md-01725-GER   Document 262   Filed 09/05/2007   Page 3 of 10

and Delphi Trust II ("Delphi Securities") between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement (the "Class" or "Class Members").  Excluded from the Class are: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal representatives, heirs, successors and assigns of any such excluded party.  Also excluded from the Class are any putative members of the Class who exclude themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice of Proposed Settlement With Certain Defendants, Motion for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing ("Notice") to be sent to the Class.

3.      For purposes of settlement only, the Lead Plaintiffs, on behalf of all Class Members, are appointed as Class Representatives.  The law firms of Bernstein Litowitz Berger & Grossmann LLP; Nix, Patterson & Roach, L.L.P.; Grant & Eisenhofer, P.A.; and Schiffrin Barroway Topaz & Kessler, LLP, are jointly appointed as Class counsel ("Co-Lead Counsel").

4.      With respect to the Class, this Court preliminarily finds and concludes that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied as: i. the members of the Class are so numerous that joinder of all Class Members is impracticable; ii. there are questions of law and fact common to the Class

which predominate over any individual questions; iii. the claims of the Lead Plaintiffs are typical of the claims of the Class; iv. the Lead Plaintiffs and Co-Lead Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and v. a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: vi. the interests of the members of the Class in individually controlling the prosecution of the separate actions, vii. the extent and nature of any litigation concerning the controversy already commenced by members of the Class, viii. the desirability or undesirability of continuing the litigation of these claims in this particular forum, and ix. the difficulties likely to be encountered in the management of the class action.

5.     Co-Lead Counsel are authorized to act on behalf of the Class with respect to all acts required by, or which may be undertaken pursuant to, the Stipulation or such other acts that are reasonably necessary to consummate the proposed Settlement set forth in the Stipulation.

6.     The action captioned *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) (formerly No. 9:05-CV-80307 (KLR) (S.D. Fla.)) (the "Bernstein Action), is hereby consolidated in the Delphi Securities Action.

7.     The Court appoints The Garden City Group, Inc. as Claims Administrator to supervise and administer the notice and claims procedures as set forth in the Stipulation.  The Settling Parties and their counsel shall not be liable for any act or omission of the Claims Administrator.

8.     The Escrow Agent is authorized and directed to prepare any tax returns and any other tax reporting for or in respect of the Gross Settlement Fund

4

and paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Stipulation, without further order of the Court.

9.      The Court hereby dismisses without prejudice the Complaint as against Thomas Wyman and Shoichiro Irimajiri.   Unless opposed by Lead Plaintiffs, the dismissal of the Complaint against these two Defendants shall be converted to a dismissal with prejudice pursuant to the Order and Final Judgment upon the Effective Date of the Settlement.

10.      Lead Plaintiffs and any other "named plaintiffs" shall vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities Action in favor of the Delphi Plan of Reorganization consistent with and incorporating this Settlement.

11.      The Court preliminarily approves:  i. the Settlement of the Delphi Securities Action with respect to the Settling Parties as set forth in the Stipulation; and (2) the proposed Plan of Allocation described in the Notice, subject to the right of any Class Member to challenge the fairness, reasonableness, and adequacy of the Stipulation or the proposed Plan of Allocation, and to show cause, if any exists, why a final judgment dismissing the Delphi Securities Action against the Settling Defendants only based on the Stipulation should not be ordered herein after due and adequate notice to the Class has been given in conformity with this Order.

5

12. Pursuant to Fed.R.Civ.P. Rule 23(e), a hearing (the "Fairness Hearing") shall be held on November 13, 2007, at 9:30 a.m., in the United States District Court for the Eastern District of Michigan, Southern Division, the Honorable Gerald E. Rosen presiding, to:

 a. determine whether the Settlement should be approved by the Court as fair, reasonable, adequate, and in the best interests of the Class;

 b. determine whether the Plan of Allocation for the proceeds of the Settlement should be approved by the Court as fair and reasonable;

 c. determine whether the Judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing the Delphi Securities Action against the Settling Defendants with prejudice and extinguishing and releasing all Settled Claims and barring all Barred Claims (as defined in the Stipulation);

 d. determine whether the Class should be finally certified for settlement purposes pursuant to Fed.R.Civ.P. Rules 23(a) and (b);

 e. rule on Co-Lead Counsel's application for an award of attorneys' fees and the reimbursement of litigation expenses; and

 f. rule on such other matters as the Court may deem appropriate.

13. The Court reserves the right to adjourn the Fairness Hearing or any adjournment thereof, including the consideration of the application for attorneys'

6

fees and reimbursement of litigation expenses, without further notice of any kind
to Class Members.

14.     The Court reserves the right to approve the Settlement at or after
the Fairness Hearing with such modification as may be consented to by the
Settling Parties and without further notice to the Class.

15.     The Claims Administrator shall make reasonable efforts to identify
all persons who are members of the Class, including beneficial owners whose
Delphi Securities are held by banks, brokerage firms, or other nominees.  Delphi,
or such other agent authorized to do so, shall produce or will cause to be produced
within five (5) calendar days of the Court's entry of this Order the information
from transfer or other records required by the Claims Administrator to send
Notice to the persons who can be identified through those same records (the
"Notice Information").   The Notice Information should, if practicable, be
provided in an MS Excel version 10 or 11 (preferred) or in ASCII fixed length
field text files.  Control characters such as Carriage Return/Line Feed should be
appended to each line in the text files.  Delphi shall bear all costs or expenses
associated with providing the Claims Administrator with the above-described
Notice Information from Delphi and its transfer agent's records.  The Claims
Administrator shall send the Notice and the Proof of Claim, substantially in the
forms of Exhibits A-1 and A-2, by United States mail, postage pre-paid, to all
reasonably ascertainable members of the Class, at their last known address
appearing in the Notice Information.  Such mailing shall occur no later than the
"Notice Date," which shall be no later than ten (10) calendar days after the
Claims Administrator receives the Notice Information.

Case 2:05-md-01726-GER    Document 262    Filed 09/05/2007    Page 8 of 18

16.    Pursuant to the Notice, each nominee who receives the Notice shall either: i. send the Notice and Proof of Claim to Class Members for which they act as nominee by first class mail within seven (7) calendar days after the nominee receives the Notice; or ii. send a list of the names and addresses of such beneficial owners to the Claims Administrator within seven (7) calendar days after the nominee receives the Notice and, in the event of the latter, the Claims Administrator shall send by first class mail the Notice and Proof of Claim to all Class Members who are on the list received from the nominee.  The Claims Administrator shall, if requested, reimburse banks, brokerage houses, or other nominees for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners who are Class Members, which expenses would not have been incurred except for the sending of such notice, subject to further order of this Court with respect to any dispute concerning such compensation.  Co-Lead Counsel shall file with the Court and serve upon Settling Defendants' counsel no later than seven (7) days prior to the Fairness Hearing an affidavit or declaration describing the efforts taken to comply with this order and stating that the mailings have been completed in accordance with the terms of this order.

17.    Within two (2) calendar days of the Notice Date, Co-Lead Counsel shall cause to be published a Publication Notice, substantially in the form of Exhibit A-3 to the Stipulation, once in the national edition of *The Wall Street Journal,* once in *Investor's Business Daily,* once in *The Detroit Free Press* and once over the *PR Newswire*.  Co-Lead Counsel shall file with the Court and serve upon Settling Defendants' Counsel no later than seven (7) days prior to the

Fairness Hearing an affidavit or declaration stating that the Publication Notice has been published in accordance with the terms of this order.

18.    The form and content of the Notice, the Proof of Claim, and the Publication Notice, annexed hereto as Exhibits A-1, A-2 and A-3, respectively, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78u-4(a)(7), including by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.

19.    Any member of the Class who timely and properly objects to the Settlement, the Plan of Allocation, and/or the application for attorneys' fees and reimbursement of expenses, or who otherwise wishes to be heard, may appear in person or by his, her, or its attorney, at his, her, or its own expense, at the Fairness Hearing and present evidence or argument that may be proper or relevant; *provided, however*, that no person other than the parties and their counsel shall be heard, and no papers, briefs, pleadings, or other documents submitted by any person shall be considered by the Court unless on or before fourteen (14) days before the Fairness Hearing, such person files with the Court and serves upon counsel listed below:  (1) a statement of such person's objections to any matters before the Court concerning this Settlement; (2) the grounds therefor or the reasons that such person desires to appear and be heard, as well as all documents or writings such person desires the Court to consider; (3) whether that person

intends to present any witnesses; and (4) the person's purchases and sales of Delphi Securities made during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each such purchase or sale, and whether such person continues to hold such Delphi Securities at the time the statement of objection is served. Such filings shall be served upon the Court and the following counsel:

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Sean Handler
280 King of Prussia Road
Radnor, PA 19087

**NIX, PATTERSON & ROACH, L.L.P.**
Bradley E. Beckworth
Jeffrey J. Angelovich
205 Linda Drive
Daingerfield, Texas 75638

**GRANT & EISENHOFER P.A.**
Stuart M. Grant
James J. Sabella
485 Lexington Avenue
New York, New York 10017

**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
Max Berger
John P. Coffey
1285 Avenue of the Americas
New York, New York 10019

*Co-Lead Counsel for Lead Plaintiffs*

**SHEARMAN & STERLING LLP**
Stuart J. Baskin
Brian H. Polovoy
599 Lexington Ave.
New York, New York 10022-6069

*Counsel for Delphi, Delphi Trust I and Delphi Trust II, and certain Delphi Officer and Director Defendants*

10

SIDLEY AUSTIN LLP
Andrew W. Stern
787 Seventh Avenue
New York, New York 10019

**Counsel for the Underwriter Defendants**

**MILLER, CANFIELD, PADDOCK and STONE, PLC**
Thomas W. Cranmer, Esq.
Matthew P. Allen, Esq.
150 W. Jefferson, Suite 2500
Detroit, MI 48226

**Counsel for certain of the Delphi Officer and Director Defendants**

20.    Any Class Member who does not object to the Settlement, the Bar Order, and/or the Plan of Allocation in the manner prescribed in the Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement or the Order and Final Judgment to be entered approving the Settlement, the Bar Order, and the Plan of Allocation.

21.    Any person falling within the definition of the Class may, upon request, be excluded from the Class. Any such person must submit to the Claims Administrator a request for exclusion ("Request for Exclusion") so that it is received by the Claims Administrator on or before fourteen (14) days before the Fairness Hearing. A Request for Exclusion must state: i. the name, address, and telephone number of the person requesting exclusion; ii. the person's purchases and sales of Delphi Securities made during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each such purchase or sale, and whether such person

11

continues to hold such Delphi Securities at the time the statement of objection is served; iii. the amount or number of Delphi Securities held as of the beginning of the Class Period on March 7, 2000; and (4) that the person wishes to be excluded from the Class.  All persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph and the Notice shall have no rights under the Stipulation and shall not share in the distribution of the Net Settlement Fund.

22.     Any Class Member who wishes to participate in the Net Settlement Fund must submit a valid Proof of Claim to the Claims Administrator, at the address indicated in the Notice, postmarked not later than January 15, 2008.  Such deadline may be further extended by Court order.  Proofs of Claim shall be deemed to have been submitted when postmarked, if mailed by first class, or registered or certified mail, postage prepaid, addressed in accordance with the instructions given in the Proof of Claim.  All other Proofs of Claim shall be deemed to have been submitted at the time they are actually received by the Claims Administrator.  To be valid, a Proof of Claim must: i. be completed in a manner that permits the Claims Administrator to determine the eligibility of the claim as set forth in the Proof of Claim; ii. include the release by the Claimant of all Released Parties as set forth in the Stipulation; and iii. be signed with an affirmation that the information is true and correct.  All Class Members who do not submit valid and timely Proofs of Claim shall be forever barred from receiving any payments from the Net Settlement Fund, but will in all other respects be subject to and bound by the provisions of the Stipulation and the Order and Final Judgment, if entered.

23.     If this Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement (including any modification thereof) made with the consent of the parties as provided for in the Stipulation, any class certification herein, and any actions taken or to be taken in connection therewith (including this Order and any judgment entered herein), shall be terminated and shall become void and of no further force and effect except as set forth in the Stipulation.

24.     Pending final determination of whether the Settlement should be approved, all proceedings in the Delphi Securities Action against the Released Parties, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court.  Pending final determination whether the Settlement should be approved, Lead Plaintiffs and all members of the Class are barred and enjoined from commencing, prosecuting, continuing, or asserting any action asserting any claims against the Released Parties that are or relate in any way to the Settled Claims as defined in the Stipulation.

25.     The contents of the Gross Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the contents of those funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

26.     Neither the Stipulation nor any provisions contained in the Stipulation, nor any negotiations, statements, or proceedings in connection therewith, nor any action undertaken pursuant thereto shall be construed as, or deemed to be evidence of, an admission or concession on the part of any Settling Defendant or any other person of any liability or wrongdoing by them, or any of them, and shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature, and shall not be construed as, or deemed to be evidence of, an admission or concession that Lead Plaintiffs, any member of the Class, or any other person, has or has not suffered any damage.

27.     Any party making submissions to the Court in support of approval of the Settlement or the Plan of Allocation, or in support of Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses, shall do so by seven (7) calendar days before the date scheduled for the Fairness Hearing.

28.     The Court authorizes payment out of the Gross Settlement Fund of notice and administration expenses in accordance with the Stipulation.

29.     The passage of title and ownership of the Gross Settlement Fund to the Escrow Agent in accordance with the terms of the Stipulation is approved. No person that is not a Class Member or Co-Lead Counsel shall have any right to any portion of, or in the distribution of, the Net Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

30.     The Court may, for good cause, extend any of the deadlines set

forth in this order without further notice to Class Members.

SIGNED this <u>5th</u> day of September 2007.


  <u>s/Gerald E. Rosen</u>
**GERALD E. ROSEN**
**UNITED STATES DISTRICT JUDGE**


W0554480.DOC

# Exhibit E

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

```
-------------------------------------------------------------x
                                                 :
                                                 :
IN RE: DELPHI CORPORATION          :   MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"   :   Master Case No. 05-md-1725
LITIGATION                         :   Hon. Gerald E. Rosen
                                                 :
                                                 :   This Document Relates to:
                                                 :   In re Delphi Corp. ERISA Litigation,
                                                 :   Nos. 05-CV-70882, 05-70940,
                                                 :   05-71030, 05-71200, 05-71249,
                                                 :   05-71291, 05-71339, 05-71396,
                                                 :   05-71397, 05-71398, 05-71437,
                                                 :   05-71508, 05-71620, 05-71897,
                                                 :   05-72198
                                                 :
-------------------------------------------------------------x
```

## ORDER PRELIMINARILY APPROVING SETTLEMENT, PRELIMINARILY CERTIFYING A SETTLEMENT CLASS, APPROVING FORMS AND METHODS OF NOTICE, AND SETTING A FAIRNESS HEARING

This litigation involves consolidated actions asserting claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), with respect to the Delphi Savings-Stock Purchase Program for Salaried Employees (the "Salaried Plan"), the Delphi Personal Savings Plan for Hourly-Rate Employees (the "Hourly Plan"), the ASEC Manufacturing Savings Plan (the "ASEC Plan"), and the Delphi Mechatronic Systems Savings-Stock Purchase Program (the "Mechatronic Plan") (collectively, the "Plans").

Presented to the Court for preliminary approval is a Settlement of the litigation as against certain defendants. The Settlement also would resolve certain claims filed against Delphi Corporation in the Bankruptcy Case. The terms of the Settlement are set out in a Stipulation and Agreement of Settlement With Certain Defendants – ERISA Actions dated August 31, 2007 (the "Settlement Stipulation"), executed by counsel on behalf of the Named Plaintiffs and the Settling Defendants. [1]

The Court has considered the proposed Settlement to determine, among other things, whether to certify a class for settlement purposes and whether the Settlement is sufficient to warrant the issuance of notice to members of the Class. Upon reviewing the Settlement Stipulation and the ERISA Named Plaintiffs' Motion for Order Preliminarily Approving Settlement, Preliminarily Certifying a Settlement Class, Approving Forms and Method of Notice, and Setting a Fairness Hearing, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      **Class Findings:**   The Court preliminarily finds that the requirements of the United States Constitution, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Michigan, and any other applicable laws have been met as to the "Class" defined below, in that:

a.      The Class is cohesive and well defined.

b.      The members of the Class are ascertainable from records kept with respect to the Plans, and the members of the Class are so numerous that their joinder before the Court would be impracticable.

---

[1].      Capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Settlement Stipulation.

MDL No. 1725
Findings and Order re Settlement  9/5/2007

c.      Based on allegations in the Consolidated Class Action Complaint, the Court preliminarily finds that there are one or more questions of fact and/or law common to the Class.

d.      Based on allegations in the Consolidated Class Action Complaint that the Settling Defendants engaged in misconduct affecting members of the Class in a uniform manner, the Court finds that the claims of the Named Plaintiffs are typical of the claims of the Class.

e.      The Named Plaintiffs will fairly and adequately protect the interests of the Class in that (i) the interests of Named Plaintiffs and the nature of their alleged claims are consistent with those of the members of the Class, (ii) there appear to be no conflicts between or among Named Plaintiffs and the Class, and (iii) Named Plaintiffs and the members of the Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions.

f.      The prosecution of separate actions by individual members of the Class would create a risk of (i) inconsistent or varying adjudications as to individual Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in the Delphi ERISA Action or (ii) adjudications as to individual Class members that would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability of those persons to protect their interests.

2.    **Class Certification:**  Based on the findings set out in paragraph 1 above, the Court preliminarily certifies the following class (the "Class") for settlement purposes under Fed. R. Civ. P. 23(b)(1) and (2):  all persons (a) who were (1) participants in or beneficiaries of the Salaried Plan, Hourly Plan or ASEC Plan at any time between May 28, 1999 and November 1, 2005, or (2) participants in or beneficiaries of the Mechatronic Plan at any time between June 1, 2001 and November 1, 2005, and (b) whose accounts included investments in the Delphi and/or GM stock funds.  Excluded from the Class are (i) the Defendants; (ii) members of the immediate families of each of the Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any parent, subsidiary or affiliate of a Defendant; (v) any person who was an officer or director of a Defendant or any of their subsidiaries or affiliates during the Class Period; and (vi) the legal representatives, heirs, predecessors, successors or assigns of any such excluded person or entity.

3.    **Class Representation**:  The Court appoints Named Plaintiffs as class representatives for the Class, Keller Rohrback, L.L.P. as Lead Counsel for the Class, and Morgan & Meyers, PLC as Liaison Counsel for the Class. Named Plaintiffs are authorized and directed, in their capacities as Class representatives, to vote any chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the ERISA Plans' Equity Interest or any proof of claim based on or related to the allegations set forth in the Delphi ERISA Action in favor of and in acceptance of the Delphi Plan of Reorganization incorporating the Settlement.

4.    **Preliminary Findings Regarding Proposed Settlement:**    The Court preliminarily finds that the proposed Settlement should be approved as (a) fair, reasonable and adequate, (b) the product of serious, informed, arm's-length, and non-collusive negotiations, (c) having no obvious deficiencies, (d) not improperly granting preferential treatment to Class representatives or segments of the Class, (e) falling within the range of possible approval, and (f) warranting notice to Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the proposed Settlement.

5.    **Fairness Hearing:**    A hearing is scheduled for  November 13, 2007 (the "Fairness Hearing") to determine, among other things:

a.    whether the Settlement should be approved as fair, reasonable and adequate;

b.    whether the litigation should be dismissed with prejudice as to the Settling Defendants pursuant to the terms of the Settlement Stipulation;

c.    whether the Notice and the Publication Notice and the means of disseminating same pursuant to the Settlement Stipulation (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Fairness Hearing; (iii) constituted due, adequate and sufficient notice to all persons entitled to notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

d.      whether to bar all Barred Claims against the Released Parties by any Barred Person;

e.      whether to establish a reserve of 25% of the Gross Settlement Fund for a potential award of attorneys' fees and expenses; and

f.      whether to grant to each Named Plaintiff a case contribution award of up to $5,000 payable from the Gross Settlement Fund.

6.      **Notice to Class:**  The settling parties have presented to the Court a proposed form of Notice, which is appended hereto as Exhibit A.  With respect to such form of Notice, the Court finds that such Notice fairly and adequately: (a) describes the terms and effect of the Settlement; (b) notifies the Class concerning the proposed plan of allocation described in the Notice; (c) notifies the Class that Lead Counsel will request that the Court establish a reserve of 25% of the Gross Settlement Fund for a potential award of attorneys' fees and expenses and will request that the Court grant to each Named Plaintiff a case contribution award  payable from the Gross Settlement Fund of up to $5,000; (d) gives notice with respect to the proposed Bar Order; (e) gives notice to the Class of the time and place of the Fairness Hearing; and (f) describes how the recipients of the Notice may object to approval of the Settlement.   The settling parties have proposed the following manner of disseminating the Notice to members of the Class, and the Court finds that such proposed manner of dissemination is the best notice practicable under the circumstances and directs that Lead Counsel shall:

a.      By no later than forty-five (45) days before the Fairness Hearing, cause the Notice, with such non-substantive modifications thereto as may be

agreed upon by the settling parties and presented to the Court, to be mailed, by first-class mail, postage prepaid, to the last known address of each of the following persons who can be identified by reasonable effort:  (i) each person within the Class and all non-settling parties in the Delphi ERISA Action; (ii) in cases of pending litigation, arbitration or other proceeding, if any, of any other claim against any of the Released Parties relating to any of the Settled Claims, all counsel known by Lead Counsel to represent a member of the Class; (iii) all other counsel known by Lead Counsel to represent a member of the Class; (iv) counsel of record in the Delphi ERISA Action for any non-settling party; and (v) the United States Department of Labor.  Settling Defendants shall provide Lead Counsel with the names and last known addresses of the members of the Class to the extent such information is within Settling Defendants' custody or control.

b.    By no later than forty-five (45) days before the Fairness Hearing, cause the Notice to be published on the website identified in the Notice.

c.    By no later than forty-five (45) days before the Fairness Hearing, cause the Publication Notice in the form attached hereto as Exhibit B, with such non-substantive modifications thereto as may be agreed upon by the settling parties and presented to the Court, to be published on at least one occasion in the *USA Today* (national edition) and the *Detroit Free Press*.

d.    By no later than ten (10) calendar days before the Fairness Hearing, file with the Court and post on its website the motion for final approval of the Settlement and the motion for approval of the Plan of Allocation described in the Notice.

At or before the Fairness Hearing, Lead Counsel shall file with the Court a proof of timely compliance with the foregoing mailing and publication requirements.

7.      **Objections to Settlement:**  All of the following persons shall be referred to herein as "Objectors": (a) any member of the Class who objects to the fairness, reasonableness or adequacy of the Settlement, to the Plan of Allocation, to any term of the Settlement Stipulation, to the proposed reserve for attorneys' fees and expenses, or to any request for compensation for the Named Plaintiffs, and (b) any person who would be bound by the Bar Order and who objects to entry of the Bar Order.  Any Objector must file with the Court a statement of his, her or its objection(s), specifying the reason(s), if any, for each such objection made, including any legal support and/or evidence that such Objector wishes to bring to the Court's attention or introduce in support of such objection.  The Objector must also mail the objection and all supporting law and/or evidence to Lead Counsel and counsel for certain Settling Defendants.  The addresses for filing objections with the Court and service on counsel are as follows:

To the Court:

    Clerk of the Court
    United States District Court
     for the Eastern District of Michigan
    231 W. Lafayette Blvd., Fifth Floor
    Detroit, MI  48226

To Lead Counsel:

    Lynn Lincoln Sarko, Esq.
    Gary A. Gotto, Esq.
    Keller Rohrback LLP
    1201 Third Avenue, Suite 3200
    Seattle, WA  98101-3052
    Fax:  206-623-3384

To counsel for certain of the Settling Defendants:

> Brian H. Polovoy, Esq.
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, New York 10022-6069
> Fax:  646-848-4703

The Objector and his, her or its counsel (if any) must both effect service of the objection on counsel listed above and file it with the Court so as to be received by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  If an Objector hires an attorney to represent him, her or it for the purposes of making such objection pursuant to this paragraph, the attorney must both effect service of a notice of appearance on counsel listed above and file it with the Court by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  Filing and service may be effected on the Court and counsel by mail, provided facsimile service is made on counsel listed above by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  Any member of the Class or other person who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

8.  **Appearance at Fairness Hearing:**  Any Objector who files and serves a timely, written objection in accordance with paragraph 7 above may appear at the Fairness Hearing either in person or through counsel retained at the Objector's expense.  Objectors or their attorneys intending to appear at the Fairness Hearing must

effect service of a notice of intention to appear setting forth, among other things, the name, address and telephone number of the Objector (and, if applicable, the name, address and telephone number of the Objector's attorney) on counsel listed above and file it with the Court by no later than fourteen (14) days before the date of the Fairness Hearing.  Filing and service may be effected on the Court and counsel by mail, provided facsimile service is made on counsel listed above by no later than fourteen (14) calendar days before the date of the Fairness Hearing.  Any Objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the Fairness Hearing, except for good cause shown.

9.    **Notice Expenses:**  Reasonable expenses up to $150,000 incurred by the Escrow Agent in implementing the provisions of paragraph 6 above pertaining to providing notice of the Settlement, as well as Taxes as provided for in the Settlement Stipulation, shall be paid solely from the Gross Settlement Fund (including by reimbursement to the Escrow Agent from the Gross Settlement Fund upon notice to Settling Defendants' counsel) pursuant to direction by Lead Counsel, without further order of this Court.

10.    **Service of Papers:**    Settling Defendants' counsel and Lead Counsel shall promptly furnish each other with copies of any and all objections and notices of intention to appear at the Fairness Hearing that come into their possession.

11.    **Termination of Settlement:**  This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered

this Order (pursuant to the provisions of paragraph 20 of the Settlement Stipulation), if

the Settlement is terminated or does not reach the Effective Date under the terms of the

Settlement Stipulation.  In such event, paragraph 20 of the Settlement Stipulation shall

govern the rights of the settling parties.

        12.   **Use of Order:**  Under no circumstances shall this Order be

construed, deemed or used as an admission, concession or declaration by or against any

of the Settling Defendants of any fault, wrongdoing, breach or liability.  Nor shall the

Order be construed, deemed or used as an admission, concession or declaration by or

against Named Plaintiffs or the Class that their claims lack merit or that the relief

requested in the Delphi ERISA Action is inappropriate, improper or unavailable, or as a

waiver by any party of any defenses or claims he, she or it may have.

        SO ORDERED this ___5th___ day of September, 2007.


              ___s/Gerald E. Rosen_____
                    Hon. Gerald E. Rosen
                 United States District Judge

MDL No. 1725
Findings and Order re Settlement  9/5/2007