ALSTON & BIRD LLP
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*
*and Furukawa Electric North America APD, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re: DELPHI CORPORATION,** *et. al.*,                   :    **Chapter 11**
                                                            :
                                 **Debtors.**               :    **Case No. 05-44481 (RDD)**
                                                            :    **Jointly Administered**
------------------------------------------------------------x
**DELPHI CORPORATION,** *et. al.*,                          :
                                                            :
                                 **Debtors**                :
                                                            :    **Adv. Pro. No. _____** [1]
**v.**                                                      :
                                                            :
**FURUKAWA ELECTRIC COMPANY, LTD.,**                        :
**FURUKAWA ELECTRIC NORTH**                                 :
**AMERICA APD, INC.,**                                      :
                                                            :
------------------------------------------------------------x

**FURUKAWA ELECTRIC COMPANY, LTD. AND**
**FURUKAWA ELECTRIC NORTH AMERICA APD, INC.'S MOTION**
**TO DISMISS DEBTORS' CLAIM FOR AFFIRMATIVE RELIEF**

COME NOW Furukawa Electric Company, Ltd. and Furukawa Electric North America

APD, Inc. (collectively "Furukawa") and hereby file this Motion to Dismiss (the "Motion to

Dismiss") Debtors' Claim for Affirmative Relief against Furukawa (the "Claim for Affirmative

---

[1] Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, once an objection to a proof of claim is joined with a claim for relief, the contested matter becomes an adversary proceeding. Furukawa notes for the record

Relief") pursuant to Rules 12(b)(6) and 13 of the Federal Rules of Civil Procedure, as made applicable to this Adversary Proceeding by Rules 7012 and 7013 of the Federal Rules of Bankruptcy Procedure, because the Claim for Affirmative Relief fails to assert a substantive claim against Furukawa for which relief can be granted.

In the Claim for Affirmative Relief, the Debtors have commenced a second action against Furukawa embracing the same issues raised by the Debtors on October 14, 2004, in the Circuit Court for the County of Saginaw Michigan. The Claim for Affirmative Relief must be dismissed because the Debtors have engaged in impermissible forum shopping by electing to forego their first-filed action against Furukawa in favor of an inconvenient forum for both the Debtors and Furukawa. The dispute arose in Saginaw County, Michigan; all of the evidence is maintained in or around Saginaw County, Michigan; the Debtors and Furukawa maintain significant officers in or around Saginaw County Michigan, and, most importantly, the Debtors have already made the affirmative decision to pursue their claims against Furukawa in Saginaw County, Michigan. To allow the Debtors to pursue their Claim for Affirmative Relief – based on the exact same facts that form the basis of the action pending against Furukawa in Saginaw County, Michigan – in New York would waste Furukawa's, the Debtors' and the Court's limited resources and encourage/reward the Debtors' forum shopping.

---

that despite asserting an affirmative claim in the Debtors' Claim for Affirmative Relief against Furukawa, the Debtors have yet to commence an adversary proceeding or serve Furukawa with a summons.

WHEREFORE, for the reasons set forth in the Memorandum of Law in Support of the

Motion to Dismiss, Furukawa requests that the Court dismiss the Claim for Affirmative Relief

with prejudice.

Respectfully submitted this 25th day of October 2007.

ALSTON & BIRD LLP

/s/ Dennis J. Connolly
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*
*and Furukawa Electric North America APD, Inc.*

ALSTON & BIRD LLP
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*
*and Furukawa Electric North America APD, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                                   :

| | |
|---|---|
| **In re: DELPHI CORPORATION, *et. al.*,** : | **Chapter 11** |
| : | |
| **Debtors.** : | **Case No. 05-44481 (RDD)** |
| : | **Jointly Administered** |

-----------------------------------------------------------x

| | |
|---|---|
| **DELPHI CORPORATION, *et. al.*,** : | |
| : | |
| **Debtors.** : | **Adv. Pro. No. _____[1]** |
| : | |
| **v.** : | |
| **FURUKAWA ELECTRIC COMPANY, LTD.,** : | |
| **FURUKAWA ELECTRIC NORTH** : | |
| **AMERICA APD, INC.** : | |

-----------------------------------------------------------x

    **FURUKAWA ELECTRIC COMPANY, LTD. AND FURUKAWA ELECTRIC**
  **NORTH AMERICA APD, INC.'S MEMORANDUM IN SUPPORT OF THEIR**
    <u>**MOTION TO DISMISS DEBTORS' CLAIM  FOR AFFIRMATIVE RELIEF**</u>

      Furukawa Electric Company, Ltd. and Furukawa Electric North America APD, Inc.

(collectively "Furukawa")  hereby file this Memorandum in Support of their Motion to Dismiss

Debtors' Claim for Affirmative Relief against Furukawa (the "Claim for Affirmative Relief")

---

[1] Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, once an objection to a proof of claim is joined with a claim for relief, the contested matter becomes an adversary proceeding. Furukawa notes for the record that despite asserting an affirmative claim in the Debtors' Claim for Affirmative Relief against Furukawa, the Debtors have yet to commence an adversary proceeding or serve Furukawa with a summons.

pursuant to Rules 12(b)(6) and 13 of the Federal Rules of Civil Procedure (the "Federal Rules"),

as made applicable to this Adversary Proceeding by Rules 7012 and 7013 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"),[2] because the Claim for Affirmative Relief fails

to assert a substantive claim against Furukawa for which relief can be granted.[3]

## I.    **Preliminary Statement**

The Debtors' Claim for Affirmative Relief must be dismissed because the Claim for

Affirmative Relief embraces the same issues, claims, and allegations previously asserted by the

Debtors against Furukawa in the Circuit Court of Saginaw County, Michigan.  In particular, on

October 14, 2004, the Debtors commenced their action against Furukawa in Saginaw by filing

that certain complaint[4] seeking in excess of $25 million on account of Furukawa's alleged breach

of that certain Long Term Contract dated September 7, 2000, and that certain purchase order

issued September 12, 2001.  In the Claim for Affirmative Relief, the Debtors fully admit that the

relief sought therein embraces the same issues, claims and allegations that form the bases of their

claims in Saginaw.   Because the Claim for Affirmative Relief impermissibly asserts claims

against Furukawa that are already the subject of a pending action in the Saginaw Court, the

Claim for Affirmative Relief must be dismissed.[5]

---

[2] Federal Rule 13, made applicable by Bankruptcy Rule 7013, "plays a unique role in conserving judicial resources and that a court's failure to stay its hand unduly burdens the litigation process." Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991).  Moreover, "[w]hile the normal chronology would have been for the court of first impression-here, the Michigan court-to have enjoined the second court, this procedure is not mandatory.  The same policies are furthered by the second court's exercising judicial self restraint." Id.

[3] Furukawa does not intend to request that the District Court withdraw the reference of this Motion to Dismiss at this time because the Motion is limited to purely legal arguments that are within this Court's jurisdiction.  If, however, the Court concludes that the Claim for Affirmative Relief can proceed in the Southern District of New York, Furukawa reserves its right to request withdrawal of the reference of the entire adversary proceeding at that time because (i) the resolution of this claim does not involve substantive bankruptcy rights; (ii) the Debtors are actively engaged in forum shopping and (iii) the resolution of these claims will not impact the Debtors' bankruptcy case.

[4] A true and correct copy of the Complaint filed in Saginaw County, Michigan is attached hereto as Exhibit A.

[5] While the Debtors will likely contend that the Claim for Affirmative Relief is properly before the Bankruptcy Court, because Furukawa filed proof of claim no.12347 (the "Furukawa Proof of Claim") to preserve its counterclaim against the Debtors, the Debtors' reliance on this claim demonstrates their gamesmanship.  Furukawa

## II.    Factual and Procedural Background

1.      On or about September 7, 2000, Furukawa and the Debtors entered into that certain Long Term Contract (the "Long Term Contract") whereby Furukawa agreed to sell and the Debtors agreed to purchase 100% of the Debtors' requirement for torque and position sensors.

2.      Pursuant to the Long Term Contract, the sensors were required to meet certain manufacturing, electrical, and audible use requirements (the "Debtors' Requirements").

3.      During the design phase, Furukawa experienced difficulty satisfying the Debtors' electrical and audible noise requirements.

4.      To satisfy all of the Debtors' Requirements, Furukawa designed a sensor (the "Teflon Sensor") that incorporated a low-friction plating made with polytetraflouroethylene (commonly known as "Teflon").

5.      After the Teflon Sensor satisfied all of the Debtors' Requirements, the Debtors (i) congratulated Furukawa on (a) its ingenuity and (b) satisfying the Debtors' Requirements, and (ii) approved the Teflon Sensor.

6.      On or about September 12, 2001, the Debtors submitted purchase order number SAG90140710 (the "Purchase Order") in connection with its purchase of certain sensors in accordance with the Long Term Contract.

7.      In response to the Purchase Order, Furukawa manufactured and delivered Teflon Sensors to the Debtors.

---

has offered to waive its right to receive a recovery from the Debtors' bankruptcy estate and the Furukawa Claim; which offer was quickly rejected on account of the Debtors' apparent desire to escape the Saginaw Court.

8.      Upon information and belief, the Debtors incorporated the Teflon Sensors into power steering assist mechanisms that the Debtors then assembled into power steering columns that were sold to General Motors Corporation ("GM") for assembly into certain GM vehicles.

9.      Upon information and belief, GM issued a recall due to the failure of certain steering columns that the Debtors manufactured.

10.     Shortly after GM's recall, the Debtors alleged that their steering column failures were caused by the Teflon Sensors and that Furukawa was liable for damages related to amounts GM allegedly deducted from payments that GM owed to the Debtors and certain additional costs.

11.     On April 8, 2004, the Debtors terminated the Long Term Contract based on their allegation that the steering column failures were caused by the Teflon Sensor.

12.     On October 14, 2004, after Furukawa denied liability for the steering column failures and GM's recall, the Debtors commenced their action (the "Saginaw Action") in the Circuit Court of Saginaw County, Michigan (the "Saginaw Court").

13.     On or about March 15, 2005, Furukawa filed its Answer and Affirmative Defenses (the "Answer") to the Saginaw Action.

14.     After filing its Answer, the parties engaged in initial and prolonged settlement negotiations which involved the coordination of witnesses and representatives from Japan and Michigan.

15.     While the parties pursued settlement discussions, Furukawa and the Debtors propounded discovery in respect of the claims.   Both parties served multiple extensive interrogatories and requests for the production of Documents.   After the Debtors requested a lengthy extension from Furukawa to prepare their discovery responses, the Debtors produced a

- 4 -

significant amount of information to Furukawa.[6]  Furukawa also provided responses to the

Debtors' discovery requests.  Having substantially completed document production, the parties

were in a position to complete paper discovery and commence depositions, as the parties had

exchanged the names of required/potential deponents.

16.    Concurrent with the parties' document production, the Debtors and Furukawa

continued good faith settlement discussions during which the parties exchanged additional data

with respect to their claims.

17.    On October 15, 2005 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

18.    On November 28, 2005, after the Debtors commenced their bankruptcy cases, the

Debtors' Michigan counsel apparently informed the Saginaw Court that the Saginaw Action was

stayed by the Debtors' commencement of their bankruptcy cases, thus continuing a scheduled

status conference.  Attached hereto as Exhibit B is the Saginaw Court's docket sheet noting the

continuance.  While it is questionable whether the commencement of the Debtors' bankruptcy

cases stayed the Saginaw Action and/or the status conference, Furukawa and the Debtors both

subsequently agreed to extend discovery deadlines in the Saginaw Action based on, among other

reasons, the Debtors' statement that their bankruptcy cases required their undivided attention.[7]

19.    On or about July 28, 2006, Furukawa filed the Furukawa Proof of Claim against

the Debtors on account of the Debtors termination of the Long Term Contract.[8]

---

[6] While Furukawa obtained a significant amount of information from the Debtors, Furukawa has informed the
Debtor of its belief that they have not provided complete responses.
[7] Due to ongoing settlement discussions, the commencement of the Debtors' bankruptcy case, and the delay in
completing discovery, both parties agreed on multiple occasions to extend discovery deadlines.
[8] As provided in the Furukawa Proof of Claim, Furukawa sought to preserve its claim that the Debtors (i) breached
the Long Term Contract and (ii) owed Furukawa damages including, without limitation, legal fees, inventory
reimbursement, investment reimbursement and other miscellaneous charges.

- 5 -

20.    On October 31, 2006, the Debtors objected to the Furukawa Proof of Claim, in Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification, and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) [Docket No. 5452] (the "Third Omnibus Objection").  The Third Omnibus Objection failed to provide any evidence in support of the Debtors' contention that Furukawa had no claim against the Debtors.

21.    On November 22, 2006, Furukawa responded to the Third Omnibus Objection by asserting that the Debtors failed to establish that the Furukawa Proof of Claim should be dismissed and that the Furukawa Proof of Claim did not represent a valid claim against the Debtors related to the Long Term Contract.

22.    In accordance with certain claims resolution procedures implemented in the Debtors' bankruptcy cases, on March 24, 2007, Furukawa and the Debtors conferred regarding the Furukawa Proof of Claim and the possibility of settlement.

23.    At the March 4, 2007 meeting, and in subsequent discussion between the parties, the Debtors indicated that they were rethinking their original decision to file the Saginaw Action in the Saginaw Court and were more interested in forcing Furukawa to defend a new complaint in an inconvenient forum and set aside the considerable amount of progress made in the Saginaw Court.

24.    Following through on their desire to avoid proceeding in the Saginaw Court, on September 26, 2007, Debtors filed their Claim for Affirmative Relief against Furukawa.

25.    In the Claim for Affirmative Relief, the Debtors recount the same facts, claims, and allegations asserted in the Saginaw Complaint and seek the same relief.

26.    Recognizing that (i) the Claim for Affirmative Relief asserted the same claims based on the same facts and issues that form the bases of the Saginaw Action, (ii) commencing a new trial based on the same facts that have been at issue for more than two years in the Saginaw Court would require new counsel, a second round of complete discovery, and a trial in a distant court – far from the evidence, the witnesses, and the parties – would be inefficient for the parties and the courts, and (iii) the Debtors were relying on the Furukawa Proof of Claim to manufacture jurisdiction before the Bankruptcy Court in respect of their claims from the Saginaw Action, on October 5, 2007, Furukawa made an offer (the "Settlement Offer")[9] to the Debtors to minimize estate costs and efficiently resolve the parties' claims.

27.    In the Settlement Offer, Furukawa (i) noted its belief that the Debtors improperly asserted the Claim for Affirmative Relief, (ii) noted its intent to file an appropriate motion to dismiss, (iii) offered to waive its right to recover assets from the Debtors' bankruptcy estates, and (iv) agreed to a reasonable scheduling order in the Saginaw Action to efficiently resolve that action if the Debtors would withdraw the Claim for Affirmative Relief in the Bankruptcy Case.

28.    Even though Furukawa offered to waive the Furukawa Proof of Claim (a claim for damages exceeding $2.5 million relating to the Long Term Contract), enter into a reasonable scheduling order to address the Debtors' new concern that the Saginaw Action had not proceeded significantly since its commencement (a delay sought by the Debtors) and to avoid the legal

---

[9] A copy of which is attached hereto as Exhibit C. In accordance with Rule 408 of the Federal Rules of Evidence, the Settlement Offer is not being submitted to prove liability, validity or amount of a claim. Instead, in accordance with Rule 408(b) of the Federal Rules of Evidence, the Settlement Offer is being introduced to establish Debtors' motives and intent in pursuing the Claim for Affirmative Relief in the Bankruptcy Court.

costs associated with filing/opposing Furukawa's Motion to Dismiss in the Settlement Offer, the

Debtors rejected the offer – citing their desire to avoid the Saginaw Court.

29.     On or about the same time the Debtors' refused Furukawa's offer to waive the

Furukawa Claim, almost two years after the Debtors commenced their bankruptcy cases and on

less than 10 business days notice, the Debtors moved to stay the Saginaw Action.[10]

30.     On October 19, 2007, Furukawa responded to the Debtors' Motion to Stay the

Saginaw Action asserting that neither federal nor Michigan law supported or permitted the

Debtors' attempt to stay the Debtors' first-filed action. [11]

31.     On October 22, 2007, the Saginaw Court granted Motion to Stay the Saginaw

Action, the Michigan Court elected to stay the Saginaw Action without significant elaboration.[12]

## III.    <u>Argument</u>

The law in the Second Circuit is clear, when there are two lawsuits that seek to address

the same claims arising out of identical facts, involve the same parties, and allege the same legal

theories, the first-filed lawsuit takes precedence over a subsequently filed lawsuit.  <u>See</u> <u>New

York v. Exxon Corp.</u>, 932 F.2d 1020 (2d Cir. 1991); <u>Semmes Motors, Inc. v. Ford Motor Co.</u>,

429 F.2d 1197 (2d Cir. 1970); <u>Van Wagner Enters., LLC v. Brown</u>, 367 F. Supp. 2d 530

(S.D.N.Y. 2005).   The first-filed rule "embodies considerations of judicial administration and

conservation of resources."  <u>First City Nat'l Bank & Trust Co. v. Simmons</u>, 878 F.2d 76, 80 (2d

Cir. 1989).  "A party seeking to overcome the presumption [that the first-filed action should

proceed in place of the second-filed action] must show that 'there are special circumstances

which justify giving priority to the second action.'"  <u>Williams Advanced Materials, Inc. v. Target</u>

---

[10] Attached hereto as Exhibit D is the Debtors' Motion to Stay the Saginaw Action.
[11] Attached hereto as Exhibit E is Furukawa's Response to the Debtors' Motion to Stay the Saginaw Action.
[12] Furukawa has requested a transcript of the October 21, 2007 hearing and will append it to the Court's record as
soon as it becomes available.

Tech. Co., No. 03-CV-276-A, 2007 WL 2245886, at * 4 (W.D.N.Y. Aug. 1, 2007) (quoting

Exxon Corp., 932 F.2d at 1025)). "To overcome the preference for the forum of the first-filed

suit, a sound reason must exist that would make it unjust or inefficient to continue the first-filed

action." Findwhat.com v. Overture Servs., Inc., No. 02 Civ. 447, 2003 WL 402649, at *4

(S.D.N.Y. Feb. 21. 2003) (quoting Bank of Tokyo-Mitsubishi, Ltd. v. J.A. Jones, Inc., No. 98

Civ. 2494, 1998 WL 283355, *2 (S.D.N.Y. May 28, 1998); see also Hanson PLC v. Metro-

Goldwyn-Mayer, Inc., 932 F. Supp. 104, 106 (S.D.N.Y. 1996) ("[t]he party asserting that the

first-filed rule should not apply has the burden to show that special circumstances exist justifying

departure from the rule.").

The factors pertinent to a court's determination are (i) considerations of judicial comity;

(ii) promotion of judicial efficiency; (iii) adequacy and extent of relief available in the alternative

forum, (iv) identity of parties and issues in both actions; (v) likelihood of prompt disposition in

the alternative forum; (vi) convenience of the parties, counsel and witnesses; and (vii) possibility

of prejudice. Van Wagner, 367 F. Supp. 2d at 531. Furthermore, as Judge Friendly and the

Second Circuit Court of Appeals recognized in Semmes Motors, "a district court can go 'beyond

allowable bounds of discretion' when it refuses to stay or dismiss a duplicative suit" when the

plaintiff is the same in both actions. See Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991)

(quoting Semmes Motors, 429 F.2d at 1204). Specifically, the Second Circuit in Semmes

Motors stated that:

> To begin with, any exception for cases where the same party is the plaintiff in
> both actions would entail the danger that plaintiffs may engage in forum shopping
> or, more accurately, judge shopping. When they see a storm brewing in the first
> court, they may try to weigh anchor and set sail for the hopefully more favorable
> waters of another district. The sequence of events here affords some indication
> that Semmes might have been attempting to do just that . . . Hence, even when
> the same party is plaintiff in both actions, the instances where the second court

should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed.

429 F.2d at 1203.  Thus, if a plaintiff seeks to assert the same claims in two forums, the first filed action should proceed in favor of the second-filed action.

Even though Furukawa filed the Furukawa Proof of Claim to preserve its counterclaim to the Saginaw Complaint, all of the factors pertinent to a court's determination as to whether a court should give precedence to the Debtors' first-filed lawsuit (the Saginaw Action) over the second-filed lawsuit (the Claim for Affirmative Relief) establish that the Claim for Affirmative Relief should be dismissed in favor of the Saginaw Action.  First, and foremost, the sequence of events in the Debtors' bankruptcy cases and the facts related to the resolution of the Saginaw Action and Furukawa Proof of Claim demonstrate that the Debtors' decision to file and maintain the Claim for Affirmative Relief in the Bankruptcy Court is based solely on the Debtors' interest in forum shopping.  The Debtors cannot articulate a valid basis to forego the Saginaw Action – an action they filed more than four years ago in Saginaw Michigan – in favor of proceeding in the Bankruptcy Court.  Not only is the Bankruptcy Court a distant forum that is inconvenient for the parties, the witnesses and the evidence, proceeding in the Bankruptcy Court will require the parties to waste resources by requiring the parties and the court to start at square one.  Moreover, the Debtors cannot articulate a reasonable basis as to why this action needs to or should be resolved in their bankruptcy cases.  The Debtors' claim is not central to their ability to confirm a plan of reorganization or obtain exit financing as their claims against Furukawa are not mentioned in their disclosure statement.  The pendency of Furukawa's claim against the Debtors is not essential to their ability to confirm their plan of reorganization as they have not sought to estimate the Furukawa Proof of Claim.  It is apparent from the record that the Debtors Claim for Affirmative Relief was filed in the Bankruptcy Court to game the system.  Despite the fact that

- 10 -

(i) the claims asserted in the Saginaw Action and the Claim for Affirmative Relief are based on state law causes of action, (ii) there is no nonbankruptcy basis for federal court jurisdiction (other than the claim objection), and (iii) the Debtors elected to file the Saginaw Action in the Saginaw Court, the Debtors are now attempting to utilize their bankruptcy cases to avoid a forum that they selected.    Allowing the Debtors to pursue the Claim for Affirmative Relief in New York would reward the Debtors' forum shopping and open the floodgate for future plaintiffs to engage in similar forum shopping tactics.

Second, the seven factor test typically applied by courts to determine whether a first-filed action should proceed in place of a second-filed action establishes that the Claim for Affirmative Relief should be dismissed.    The allegations in the Claim for Affirmative Relief specifically establish that: (i) the allegations/claims asserted therein are the same allegations/claims asserted in the Saginaw Action; (ii) the same parties are involved in both actions; (iii) the Saginaw Action has been pending since 2004; (iv) the parties are based in or around Saginaw County, Michigan, and (v) the locus of the dispute is in Saginaw County, Michigan.[13]    Both the Saginaw Action and the Claim for Affirmative Relief focus upon the Debtors' Requirements, the Teflon Sensor, and GM's recall.    Saginaw County is more convenient for the parties and witnesses and the Saginaw Court can provide complete relief.

---

[13] The witnesses, evidence and the parties are located in or around Saginaw County, Michigan.

Allowing the Claim for Affirmative Relief to proceed in New York would not promote judicial comity, judicial efficiency or efficiency in general. As noted above, the Saginaw Action was commenced by the Debtors on October 14, 2004. Since that time, two Michigan firms have expended a significant amount of time and resources propounding and responding to discovery requests. Moreover, it should be noted that the Saginaw Court was prepared to hold a status conference in the Saginaw Action on December 1, 2005. However, as described above, that conference was adjourned after the Debtors' counsel apparently informed the Saginaw Court that the Saginaw Action was stayed by the Debtors' commencement of their bankruptcy cases. Any further discovery extension-associated delay was the result of each party agreeing that additional discovery and depositions were required. The Saginaw Court is the proper forum for this dispute and remains ready, willing, and able to resolve the claims originally raised in the Saginaw Action and which now form the basis for the Claim for Affirmative Relief.[14]

Though the Debtors will likely complain that the Saginaw Court has failed to efficiently or expeditiously resolve the Saginaw Action, the facts demonstrate that Debtors caused this delay. As noted above, the Debtors' Michigan Counsel obtained an adjournment of the December 1, 2005 Status Conference by informing the Saginaw Court that Saginaw Action was stayed by the commencement of the Debtors' bankruptcy cases. Based on this adjournment and the Debtors' assertion that the Saginaw action was stayed, Furukawa agreed to extend the discovery deadlines in the Saginaw Action so that the Debtors could focus their attention on their bankruptcy cases and their desire to exit bankruptcy expeditiously. In light of the fact that the Debtors delayed the Saginaw Action and have since refused to accept an offer that would

---

[14] Although the Debtors will likely contend that the Saginaw Court cannot timely resolve the dispute due to the stay, this Court should not allow the Debtors to benefit by a delay that they caused. Moreover, as noted above, the Debtors have not articulated a single reason why this minor claim needs to, or should be, decided in their bankruptcy cases.

provide for a reasonable scheduling order that would facilitate the expeditious resolution of the Saginaw Action, it is clear that the Debtors are not interested in efficiency or minimizing costs. Instead, the Claim for Affirmative Relief is a thinly-veiled ploy to (i) select a new forum that they apparently deem friendlier than the Saginaw Court, (ii) delay the prompt resolution of this matter while new counsel and a new court must analyze the claims and (iii) unnecessarily increase the litigation costs and complexities by forcing Furukawa into a forum that has no logical tie to the claims at issue.  The Debtors should not be rewarded for dilatory tactics.

Furthermore, to the extent that the Court wishes to consider any potential exception to the first-filed rule, none of these exceptions apply to this case.  In particular, there are no special circumstances that would require the resolution of these claims in New York or in the Debtors' bankruptcy cases.    Though the Debtors will likely argue that the mere existence of their bankruptcy cases, in and of themselves, is a "special circumstance" that overcomes the first-filed rule, this assertion is a red herring because the resolution of the claims asserted in the Saginaw Action and the Claim for Affirmative Relief are not essential to their bankruptcy cases.  The Debtors are on the verge of confirming a plan of reorganization (the "Plan") that the Debtor' contend will pay creditors 100% of their claims plus interest.  Any recovery obtained from Furukawa will not benefit the Debtors' estate, but will, instead be a post-bankruptcy asset of the post-bankruptcy reorganized debtor.  The fact that the resolution of the Debtors' claims against Furukawa is not essential to the confirmation of the Plan can be seen in the Plan itself as the Saginaw Action does not generate even a footnote summary.  Because the claims asserted in the Saginaw Action and the Claim for Affirmative Relief will have no impact on the Debtors or their bankruptcy cases, there are no special circumstances that would overcome the first-filed rule.

## IV.    **Conclusion**

Because the Claim for Affirmative Relief impermissibly asserts claims against Furukawa

that are already the subject of a pending action in the Saginaw Court, Furukawa respectfully

requests that the Court dismiss the Claim for Affirmative Relief with prejudice.

Respectfully submitted this 25th day of October 2007.

ALSTON & BIRD LLP

 /s/ Dennis J. Connolly
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*
*and Furukawa Electric North America APD, Inc.*

- 14 -

# EXHIBIT A

Approved, SCAO

Toord-Data for Oakum 735-1211
Target Information Management, Inc.

Original - Court          2nd copy - Plaintiff
1st copy - Defendant      3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 10th | JUDICIAL DISTRICT  JUDICIAL CIRCUIT  COUNTY PROBATE | SUMMONS AND COMPLAINT | 04-54245ck- |

**Court address**                                                                                      **Court telephone no.**

Saginaw County Courthouse, 111 S. Michigan Ave., Saginaw, MI 48602

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |
|---|---|---|
| Delphi Automotive Systems, LLC, A Delaware Corporation | v | Furukawa Electric Co. Limited 47677 Galleon Drive Plymouth, MI 48170 |

Plaintiff attorney, bar no., address, and telephone no.
A.T. Lippert, Jr. (P16714)
Lippert, Humphreys, Campbell,
   Dust & Humphreys, P.C.
4800 Fashion Square Blvd., Ste. 410
Saginaw, MI 48604
(989) 792-2552

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
|---|---|---|
| 10-14-04 | 1-14-05 | Susan Hottenback |

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members  of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint/

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Saginaw County, MI | Plymouth, MI |

Place where action arose or business conducted
Saginaw County, MI

| Date | Signature of attorney/plaintiff A.T. Lippert, Jr. (P16714) |
|---|---|
| October 14, 2004 | |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01**  (6/03)  **SUMMONS AND COMPLAINT**    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)
PLAINTIFF

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

DELPHI AUTOMOTIVE SYSTEMS, LLC,
A Delaware Corporation,

                  Plaintiff,

v.

FURUKAWA ELECTRIC NORTH AMERICA APD, INC.
A Foreign Profit Corporation, and THE FURUKAWA
ELECTRIC CO. LIMITED, A Foreign Profit Corporation,

              Defendants.

Case No. 04- **5 4 2 4 5** -CK

---

LIPPERT, HUMPHREYS, CAMPBELL,
DUST & HUMPHREYS, P.C.
By: A.T. Lippert, Jr. (P16714)
Attorneys for Plaintiff
4800 Fashion Square Blvd., Ste. 410
Saginaw, MI 48604-2604
(989) 792-2552

DONALD R. PARSHALL, JR. (P30267)
Co-Counsel for Plaintiff
Delphi Corporation
5825 Delphi Drive
Troy, MI 48098-2815
(248) 813-3367

---

**There is no other pending or resolved civil
action arising out of the transaction or
occurrence alleged in this complaint.**

### COMPLAINT AND DEMAND FOR JURY

Plaintiff, Delphi Automotive Systems, LLC, (Delphi) alleges the following for its Complaint

against defendants, Furukawa Electric North America APD, Inc., a Foreign Profit Corporation,

and The Furukawa Electric Co. Limited, a Foreign Profit Corporation:

### PARTIES, JURISDICTION, AND VENUE

1.    Delphi is incorporated under the laws of the State of Delaware and has its

principal place of business at 5825 Delphi Drive, Troy, Michigan 48089-2015.   Delphi

LIPPERT, HUMPHREYS, CAMPBELL, DUST & HUMPHREYS, P.C.

manufactures a wide variety of products for the automotive industry, including steering columns for General Motors.

2.      Defendant Furukawa Electric North America APD, Inc is a foreign profit corporation authorized to do business in the State of Michigan. Its registered office is 601 Abbott Road, East Lansing, Michigan 48823. Its resident agent is CSC - Lawyers Incorporating Service, 601 Abbott Road, East Lansing, Michigan 48823.

3.      The Furukawa Electric Co. Limited is a foreign profit corporation having its principal place of business in Marunouchi, Chiyoda-KU Tokyo, Japan.      Defendant Furukawa Electric North America APD, Inc. is its agent, representative, and sales representative within the State of Michigan.

4.      The defendants maintain a business office at 47677 Galleon Drive, Plymouth, Michigan 48170.

5.      A torque and position sensor, Delphi part number 26085186, is manufactured by the defendants and sold by the defendants to Delphi in accordance with the terms of a Delphi purchase order issued to Furukawa Electric North American APD, Inc. on September 12, 2001, (attached Exhibit A) and in accordance with the terms of a Long Term Contract between Delphi and Furukawa Electric Co. Limited on September 7, 2000 (attached Exhibit B).

6.      The torque and position sensor manufactured and sold by the defendants are shipped to Delphi's manufacturing facility in Saginaw, Michigan.

7.      The torque and position sensors are assembled by Delphi into Power Steering Assist Mechanisms that are then assembled into steering columns. The steering columns manufactured by Delphi in its Saginaw manufacturing facility, and are sold by Delphi to General Motors Corporation for assembly into General Motors vehicles.

-2-

8.      Jurisdiction is proper in the Saginaw County Circuit Court pursuant to MCL 600.605 because the amount in controversy exceeds $25,000.00, exclusive of costs, interest and attorney fees.

9.      Venue is proper in this court pursuant to MCL 600.1629.  The contracts of the parties were made in Saginaw County.

## COUNT I – BREACH OF CONTRACT

10.     Delphi re-alleges each of the preceding paragraphs in paragraphs 1 through 9.

11.     Delphi issued its Purchase Order SAG90I4710 to Furukawa Electric North America APD, Inc. on September 12, 2001.  The purchase order provided for the sale by Furukawa Electric North America APD, Inc. of torque and position sensors, Delphi part number 26085186, at an agreed price.  (Exhibit A)

12.     A Long Term Contract was issued by Delphi acting through its Saginaw steering division as "Buyer" to the Furukawa Electric Co. Limited as "Seller."  (Exhibit B)  The Long Term Contract provided for the sale by Furukawa Electric Co. Limited of part number 26085186 to Delphi.

13.     All parts sold by the defendants were to be manufactured in accordance with specifications provided by Delphi to the defendants.

14.     The defendants agreed to manufacture the torque and position sensor in accordance with Delphi specifications and had actual knowledge that failure to conform to Delphi specifications would result in product failure and resultant losses and damages.

15.     The torque and position sensors sold by the defendants to Delphi for assembly into its Power Steering Assist Mechanism and its steering columns were subject to warranties that provide:

-3-

LIPPERT, HUMPHREYS. CAMPBELL, DUST & HUMPHREYS, P.C.

"7.1   General.   Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this Contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer.   If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for nonconforming goods.

\* \* \*

7.3   Warranty Period.   The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract."

16.    The defendants requested twice that material revisions be made to the part specifications in order that the defendants could change the physical characteristics of the torque and position sensor. Delphi considered this request for the change in specifications and the requests were not granted for sound metallurgical and engineering reasons.

17.    The defendants, acting without the required knowledge and consent of Delphi, materially altered the specifications of the torque and position sensor.   This material and unauthorized change was made by the defendants prior to their first request to Delphi to alter the specifications of the part, while knowing that approval of Delphi of the part specification was required.  This material and unauthorized change resulted in the failure of the torque and position sensor.   The failure of the torque and position sensor led to failures in the Power Steering Assist Mechanism sold by Delphi to General Motors and installed in General Motors vehicles.

18.    The defendants acknowledge and admit that they made material changes to the specifications for the torque and position sensor without Delphi's consent.

-4-

LIPPERT, HUMPHREYS, CAMPBELL, DUST & HUMPHREYS, P.C.

19.     The defendants breached the contracts made between them and Delphi and breached the warranties made by them to Delphi.

20.     It is essential that at all times Delphi maintain its reputation with General Motors and with its other customers as a competent skillful manufacturer of automotive parts.  The actions of the defendants constituting a breach of contract were intentional, and it was reasonably foreseeable that such intentional acts would cause injury and damage to the reputation of Delphi as a competent and skillful manufacturer of automotive parts.

21.     As a direct consequence of the breach of contract, and breach of warranties, and the intentional violation of the terms of the contract, Delphi has sustained losses and damages.

WHEREFORE Delphi claims damages and exemplary damages from the defendants, and each of them, in an amount in excess of $25,000.00, together with interest, costs, and attorneys fees.

### COUNT II – VIOLATION OF UCC WARRANTIES

22.     Delphi re-alleges each of the preceding paragraphs made in paragraphs 1 through 21.

23.     The contracts made between Delphi and the defendants are subject to the provisions of the Michigan Uniform Commercial Code.

24.     At the time that the contracts were made between Delphi and the defendants, the defendants had reason to know that the torque and position sensors would be used for a particular purpose and that Delphi was relying upon the skill and judgment of the defendants to furnish suitable goods meeting the specifications of Delphi.

25.     The defendants expressly warranted that the torque and position sensors would be manufactured in strict accordance with Delphi's engineering and quality specifications.

-5-

LIPPERT, HUMPHREYS, CAMPBELL, DUST & HUMPHREYS, P.C.

26.     The defendants breached the express and implied warranties created by the contracts and by the provisions of Michigan Uniform Commercial Code.  MCLA 440.2315, MCLA 440.2313.

27.     As a direct consequence of the breach of express and implied warranties and the intentional violations of the terms of the contracts and the Michigan Uniform Commercial Code, Delphi has sustained losses and damages.

WHEREFORE Delphi claims damages and exemplary damages from the defendants, and each of them, in an amount in excess of $25,000.00, together with interest, costs, and attorneys fees.

## COUNT III – TORTIOUS INTERFERENCE

28.     Delphi re-alleges each of the preceding paragraphs made in paragraphs 1 through 27.

29.     At all times pertinent to this complaint Delphi had a business relationship with General Motors Corporation and the expectancy of future business with General Motors Corporation.

30.     The business relationship and the expectancy of a continuing business relationship had a reasonable likelihood of future economic benefit for Delphi.

31.     The defendants, and each of them, knew of Delphi's business relationship with General Motors and its expectation that the economically beneficial business relationship would continue.

32.     Defendants manufactured and sold to Delphi torque and position sensors that did not meet the manufacturing specifications of Delphi and were unsuitable for installation into electric steering columns.

-6-

LIPPERT, HUMPHREYS, CAMPBELL, DUST & HUMPHREYS, P.C.

33.     The intentional sale of a known defective parts interfered with Delphi's business relationship with General Motors and Delphi's expectancy of a continuing business relationship.

34.     The actions of the defendants were improper and the improper conduct interfered with Delphi's business relationship with General Motors and the expectancy of continuing business relationship.

35.     The defendants' conduct has caused a disruption in the business relationship existing between Delphi and General Motors. The Delphi steering columns sold to General Motors and installed by General Motors in its vehicles have been subject to warranty issues because they do not meet Delphi and General Motors specifications.

36.     There is a reasonable likelihood that the intentional conduct of the defendants will further disrupt and damage the business relationship existing between Delphi and General Motors and the expectancy of a continuing business relationship between Delphi and General Motors.

37.     Delphi has been financially damaged as a direct result of defendant's intentional and tortious conduct.

WHEREFORE Delphi claims damages and exemplary damages from the defendants, and each of them, in an amount in excess of $25,000.00, together with interest, costs, and attorneys fees.

## **COUNT III – FRAUD AND MISREPRESENTATION**

38.     Delphi re-alleges each of the allegations made in paragraphs 1 through 37 inclusive.

-7-

LIPPERT, HUMPHREYS, CAMPBELL, DUST & HUMPHREYS, P.C.

39.    At all times pertinent to this complaint the defendants, and each of them, represented to Delphi that the torque and position sensor manufactured by them met the manufacturing specifications of Delphi and General Motors.

40.    The representations made by the defendants were false.

41.    The defendants knew that the representations were false.

42.    The defendants recklessly represented that the torque and position sensor met the specifications of Delphi and General Motors without knowing whether the representation was true.

43.    Defendants made the representations with the intent that Delphi rely upon their representations.

44.    Delphi relied upon the representations made by the defendants.

45.    Delphi was damaged as a result of its reliance upon the representations made by the defendants and each of them.

WHEREFORE Delphi claims damages and exemplary damages from the defendants, and each of them, in an amount in excess of $25,000.00, together with interest, costs, and attorneys fees.

LIPPERT, HUMPHREYS, CAMPBELL, DUST
& HUMPHREYS, P.C.

By: _____
A. T. Lippert, Jr. (P16714)
Attorneys for Plaintiff
4800 Fashion Square Blvd., Ste. 410
Saginaw, MI  48604-2604
(989) 792-2552

Donald R. Parshall, Jr. (P30267)
Co-Counsel for Plaintiff
Delphi Corporation
5825 Delphi Drive
Troy, MI  48098-2815
(248) 813-3367

Dated: October 14, 2004

-8-

## JURY TRIAL DEMAND

Plaintiff, Delphi Automotive Systems, LLC, by its attorneys Lippert, Humphreys,

Campbell, Dust & Humphreys, P.C., hereby demands a trial by jury in this case.


LIPPERT, HUMPHREYS, CAMPBELL, DUST
& HUMPHREYS, P.C.

By: _____
A. T. Lippert, Jr. (P16714)
Attorneys for Plaintiff
4800 Fashion Square Blvd., Ste. 410
Saginaw, MI  48604-2604
(989) 792-2552

Dated: October 14, 2004

Donald R. Parshall, Jr. (P30267)
Co-Counsel for Plaintiff
Delphi Corporation
5825 Delphi Drive
Troy, MI  48098-2815
(248) 813-3367

-9-

**Exhibit A**

DELPHI
Automotive Systems

LEGAL COPY

| PURCHASE ORDER | SAG90I4710 |

PURCHASING LOCATION
DELPHI SAGINAW STEERING SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
3900 E HOLLAND RD.
SAGINAW, MI  48601-9494

SEPTEMBER 12, 2001

VENDOR 328180    DUNS 966877987

INVOICE TO
INVOICELESS PURCHASE ORDER
DO NOT MAIL INVOICE
ATTN        ACCOUNTS PAYABLE

FURUKAWA ELECTRIC NORTH AMERICA APD INC
47677 GALLEON DR
PLYMOUTH MI                    48170

SHIP TO
SHIP ACCORDING TO RELEASE AND
SHIPPING SCHEDULES
------------------------------

P.O. NUMBER (AND RELEASE NUMBER, IF APPLICABLE) MUST APPEAR ON ALL INVOICES, PACKING SLIPS,
PACKAGES AND BILLS OF LADING. ITEM CODE NUMBERS MUST APPEAR ON ALL INVOICES AND PACKING SLIPS.
ADDRESS ALL INQUIRIES AND CORRESPONDENCE TO THE NAME SHOWN AT BOTTOM OF P.O. (OR RELEASE).

| DATE REQUIRED | DATE PROMISED | TERMS | REC. DEPT. NOTIFY | CODES IAR |
|---|---|---|---|---|
| AS RELEASED | | NET   MNS-2 | | SA |

F.O.B.   SHIPPING POINT                                        VIA   SEE INSTRUCTIONS BELOW

STATE & LOCAL SALES, USE TAX CODES        4B-NOT TAXABLE - FOR INDUSTRIAL PROCESSING.
PERMIT NO 3800440

| QUANTITY | ITEM CODE NO. | DESCRIPTION | UNIT PRICE | UNIT MEAS. |
|---|---|---|---|---|

THIS ORDER IS EFFECTIVE  9/12/01
AND EXPIRES  9/10/07.

ATTENTION*** THE PAYMENT DATE IS SET FORTH IN THE LINE ITEM DETAIL OF THIS
CONTRACT, OR IF NOT STATED, SHALL BE THE DATE ESTABLISHED BY THE BUYER'S
MULTILATERAL NETTING SYSTEM (MNS-2), WHICH PROVIDES, ON AVERAGE, THAT PAYMENT
SHALL BE MADE ON THE SECOND DAY OF THE SECOND MONTH FOLLOWING, IN THE CASE OF THE
BUYER'S NORTH AMERICAN FACILITIES, SELLER'S SHIPMENT DATE OF GOODS OR DATE OF
SERVICES, AND, FOR ALL OF THE BUYER'S OTHER LOCATIONS, BUYER'S RECEIPT DATE OF
THE GOODS OR DATE OF SERVICES. BUYER MAY WITHOLD PAYMENT PENDING RECEIPT OF
EVIDENCE, IN SUCH FORM AND DETAIL AS BUYER MAY DIRECT, OF THE ABSENCE OF ANY
LIENS, ENCUMBRANCES AND CLAIMS ON THE GOODS OR SERVICES UNDER THIS CONTRACT.

THE SUPPLIER AGREES TO SELL AND THE BUYER AGREES TO PURCHASE, AT THE PRICE AND
UPON AND SUBJECT TO THE TERMS AND CONDITIONS IN THE FACE AND REVERSE SIDE HEREOF,
AND BY REFERENCE AS THOUGH TYPED HEREON, THE SUPPLEMENTAL TERMS AND CONDITIONS
ATTACHED TO THE REQUEST FOR QUOTATION, THE FOLLOWING PERCENT OF OF THE
ARTICLE(S) DESCRIBED BELOW FOR THE ABOVE TIME PERIOD.

THIS PURCHASE ORDER IS AN INVOICELESS PURCHASE ORDER, THE INDICATOR FOR YOU THE
SUPPLIER IS THE "I" IN THE THIRD POSITION OF THE PURCHASE ORDER NUMBER. (EXAMPLE:
SAGXX"I"XXXX) UNDER THE INVOICELESS PAYMENT PROGRAM, YOUR COMPANY IS NO LONGER
REQUIRED TO SEND INVOICES TO RECEIVE PAYMENT. THE AUTOMOTIVE COMPONENTS GROUP
WILL GENERATE PAYMENTS TO YOUR COMPANY BASED UPON RECEIPT OF MATERIAL AT THE
CURRENT PRICE AND PAYMENT TERMS. TO EXPEDITE PAYMENT UNDER THE INVOICELESS
PAYMENT PROGRAM, YOU WILL NEED TO ADHERE TO THE FOLLOWING GUIDELINES: 1- ADVISE
THE BUYER OF ANY DISCREPANCIES ON THE PURCHASE ORDER PRIOR TO THE SHIPMENT OF THE
MATERIAL. 2- DELPHI PART/ITEM CODE NO. MUST BE INCLUDED ON ALL PACKING SLIPS AND

CONTINUED ON PAGE   2

B. VANHOVE,
SENIOR BUYER
PHONE: (517) 757-4035
FAX (989) 757-9222

PAGE

**DELPHI** Automotive Systems

LEGAL COPY

| PURCHASE ORDER | SAG90I4710 |

PURCHASING LOCATION

DELPHI SAGINAW STEERING SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
3900 E HOLLAND RD.
SAGINAW, MI  48601-9494

SEPTEMBER 12, 2001

VENDOR 328180    DUNS 966877987

**INVOICE TO**
INVOICELESS PURCHASE ORDER
DO NOT MAIL INVOICE
ATTN:    ACCOUNTS PAYABLE

FURUKAWA ELECTRIC NORTH AMERICA APD INC
47677 GALLEON DR
PLYMOUTH MI                    48170

**SHIP TO**
SHIP ACCORDING TO RELEASE AND
SHIPPING SCHEDULES
------------------------------

P.O. NUMBER (AND RELEASE NUMBER, IF APPLICABLE) MUST APPEAR ON ALL INVOICES, PACKING SLIPS,
PACKAGES AND BILLS OF LADING. ITEM CODE NUMBERS MUST APPEAR ON ALL INVOICES AND PACKING SLIPS.
ADDRESS ALL INQUIRIES AND CORRESPONDENCE TO THE NAME SHOWN AT BOTTOM OF P.O. (OR RELEASE).

| DATE REQUIRED | DATE PROMISED | TERMS | REC. DEPT. NOTIFY | CODES IAR |
|---|---|---|---|---|
| F.O.B. | | | VIA | |

STATE & LOCAL SALES,
USE TAX CODES

| QUANTITY | ITEM CODE NO. | DESCRIPTION | UNIT PRICE | UNIT MEAS. |
|---|---|---|---|---|

MAILED TO THE "RECEIVING NOTIFY" PERSON ON PO. 3- THE UNIT OF MEASURE ON THE
PACKING SLIP MUST BE THE SAME AS THE PURCHASE ORDER UNIT OF MEASURE. 4- DO NOT
SEND AN INVOICE. PAYMENT WILL BE BASED ON RECEIPT RECORDS. 5- A MONTHLY STATEMENT
IS REQUIRED BY THE 10TH OF EACH MONTH. 6- CONTAINER CHARGES, SET-UP CHARGES, AND
OTHER MISCELLANEOUS CHARGES MUST BE BILLED MONTHLY IN A SUMMARY BILLING WHICH
CONTAINS THE FOLLOWING INFORMATION: A- COMPLETE PURCHASE ORDER NUMBER. B- BILL OF
LADING OR PACKING SLIP NUMBER. C- RELEASE NUMBERS. D- SHIPMENT DATE FOR EACH
ITEM. WHEN THE ABOVE IS NECESSARY, BILL TO "NAO DISBURSEMENT ANALYSIS", PO BOX
436040, PONTIAC, MI 48343-6040. PLEASE NOTE THAT SALES TAX SHOULD NOT BE BILLED
IN A MONTHLY SUMMARY SINCE DELPHI SAGINAW HAS A DIRECT PAY PERMIT WITH THE
FOLLOWING STATES: ALABAMA PAY PERMIT NO. 224 MICHIGAN PAY PERMIT NO. ME3800440
NEW YORK PAY PERMIT NO. DP000036 COMPLIANCE WITH THESE GUIDELINES WILL PROMOTE
PROMPT PAYMENT.

| | 26085186 | SENSOR ASM, COMP TORQ & POSN | 12.56 | PC |

PURCHASED COMPLETE
TO BLUEPRINT  DATED  4/06/99
PER CHART 26092738 DTD  4/06/99
UNRELEASED
ACT 2400  75000              TAX 4B
WEEKLY CAP    12500    MIN LOT SIZE

SUPPLIER TO SHIP PRODUCTION SAMPLES TO "PPAP". LEAD TIMES TO REFLECT THESE
REQUIREMENTS. IDENTIFIED IN AIAG PPAP MANUAL "PPAP" SECTION.

SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL TERMS AND CONDITIONS ARE
INCORPORATED IN, AND A PART OF, THIS CONTRACT AND EACH PURCHASE ORDER, RELEASE,
REQUISITION, WORK ORDER, SHIP- PING INSTRUCTION, SPECIFICATION AND OTHER
DOCUMENTS ISSUED BY BUYER OR ACCEPTED IN WRITING BY BUYER, WHETHER EXPRESSED IN
WRITTEN FORM OR BY ELEC- TRONIC DATA INTERCHANGE, RELATING TO THE GOODS AND/OR

CONTINUED ON PAGE    3

B. VANHOVE,
SENIOR BUYER
PHONE: (517) 757-4035
FAX (989) 757-9222

PAGE        2

DELPHI
Automotive Systems

PURCHASING LOCATION

| PURCHASE ORDER | SAG9OI4710 |

DELPHI SAGINAW STEERING SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
3900 E HOLLAND RD.
SAGINAW, MI  48601-9494

SEPTEMBER 12, 2001

VENDOR 328180   DUNS 966877987

INVOICE TO
INVOICELESS PURCHASE ORDER
DO NOT MAIL INVOICE

ATTN:   ACCOUNTS PAYABLE

FURUKAWA ELECTRIC NORTH AMERICA APD INC
47677 GALLEON DR
PLYMOUTH MI                       48170

SHIP TO
SHIP ACCORDING TO RELEASE AND
SHIPPING SCHEDULES
- - - - - - - - - - - - - - - - - - - - - - - - -

**P.O. NUMBER (AND RELEASE NUMBER, IF APPLICABLE) MUST APPEAR ON ALL INVOICES, PACKING SLIPS,
PACKAGES AND BILLS OF LADING. ITEM CODE NUMBERS MUST APPEAR ON ALL INVOICES AND PACKING SLIPS.
ADDRESS ALL INQUIRIES AND CORRESPONDENCE TO THE NAME SHOWN AT BOTTOM OF P.O. (OR RELEASE).**

| DATE REQUIRED | DATE PROMISED | TERMS | REC. DEPT. NOTIFY | CODES 1AR |
|---|---|---|---|---|
| F.O.B. | | | VIA | |

STATE & LOCAL SALES,
USE TAX CODES

| QUANTITY | ITEM CODE NO. | DESCRIPTION | UNIT PRICE | UNIT MEAS. |
|---|---|---|---|---|

SERVICES TO BE PROVIDED BY SELLER PURSUANT TO THIS CONTRACT (SUCH DOCUMENTS ARE
COLLECTIVELY REFERRED TO AS THIS "CONTRACT"). A COPY OF BUYER'S GENERAL TERMS AND
CONDITIONS IS AVAILABLE UPON WRITTEN REQUEST TO BUYER OR VIA THE INTERNET AT
DELPHI'S WEBSITE, DELPHIAUTO.COM (BY CLICKING ON "SUPPLIERS" IN THE HEADER AND
THEN "SUPPLIER STANDARDS" ON THE SUPPLIER PAGE AND THEN "ATTACHMENTS, FORMS, AND
ADDITIONAL INFORMATION", AND THEN "DGP SUPPLIER GUIDELINES ATTACHMENT C GENERAL
TERMS AND CONDITIONS"). SELLER ACKNOWLEDGES AND AGREES THAT IT HAS READ AND
UNDERSTANDS BUYER'S GENERAL TERMS AND CONDITIONS. IF SELLER ACCEPTS THIS CONTRACT
IN WRITING OR COMMENCES ANY OF THE WORK OR SERVICES WHICH ARE THE SUBJECT OF THIS
CONTRACT, SELLER WILL BE DEEMED TO HAVE ACCEPTED THIS CONTRACT AND BUYER'S
GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY WITHOUT MODIFICATION. ANY
ADDITIONS TO, CHANGES IN, MODIFICATIONS OF, OR REVISIONS OF THIS CONTRACT
(INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS) WHICH SELLER PROPOSES WILL BE
DEEMED TO BE REJECTED BY BUYER EXCEPT TO THE EXTENT THAT BUYER EXPRESS- LY AGREES
TO ACCEPT ANY SUCH PROPOSALS IN WRITING.

THIS IS NOTIFICATION FOR AWARD OF BUSINESS FOR PART NUMBERS NOT SHOWN AS
(ACTIVE). SHIPMENT OF THOSE PARTS AGAINST THIS ORDER IS PROHIBITED UNTIL AN
ALTERATION WITH CURRENT BLUE PRINT DATE AND REVISION IS ISSUED, UNLESS OTHERWISE
STATED IN THIS ORDER.

ALL PARTS OR MATERIAL MUST BE PRODUCED IN ACCORDANCE W/GENERAL MOTORS' GENERAL
QUALITY STANDARDS FOR PURCHASED MATERIAL

WE WELCOME YOUR SUGGESTIONS ON ANY COST SAVINGS IDEAS. SPECIAL CONSIDERATION ON
FUTURE BUSINESS WILL BE GIVEN TO THOSE WHO HELP US REDUCE OUR COST.

MATERIAL SAFETY DATA SHEETS (MSDS) AND CORRESPONDING PURCHASE ORDER NUMBER,
APPLYING TO CHEMICALS AND/OR ARTICLES SUPPLIED TO DELPHI, SAGINAW, MI, MUST BE

CONTINUED ON PAGE   4

B. VANHOVE,
SENIOR BUYER
PHONE: (517) 757-4035
FAX (989) 757-9222

PAGE

DELPHI
Automotive Systems

| PURCHASE ORDER | SAG90I4710 |

PURCHASING LOCATION

DELPHI SAGINAW STEERING SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
3900 E HOLLAND RD.
SAGINAW, MI  48601-9494

SEPTEMBER 12, 2001

INVOICE TO
INVOICELESS PURCHASE ORDER
DO NOT MAIL INVOICE

VENDOR 328180    DUNS 966877987

ATTN:          ACCOUNTS PAYABLE

FURUKAWA ELECTRIC NORTH AMERICA APD INC
47677 GALLEON DR
PLYMOUTH MI                    48170

SHIP TO
SHIP ACCORDING TO RELEASE AND
SHIPPING SCHEDULES
- - - - - - - - - - - - - - - - - - - - - - - - - -

P.O. NUMBER (AND RELEASE NUMBER, IF APPLICABLE) MUST APPEAR ON ALL INVOICES, PACKING SLIPS,
PACKAGES AND BILLS OF LADING. ITEM CODE NUMBERS MUST APPEAR ON ALL INVOICES AND PACKING SLIPS.
ADDRESS ALL INQUIRIES AND CORRESPONDENCE TO THE NAME SHOWN AT BOTTOM OF P.O. (OR RELEASE).

| DATE REQUIRED | DATE PROMISED | TERMS | REC. DEPT. NOTIFY | CODES 1AR |

| F.O.B. | | VIA |

STATE & LOCAL SALES,
USE TAX CODES

| QUANTITY | ITEM CODE NO. | DESCRIPTION | UNIT PRICE | UNIT MEAS. |

INCLUDED WITH THE SHIPMENT AND A COPY SENT CERTIFIED MAIL TO THE DELPHI CHEMISTRY
DEPARTMENT - WASTE WATER TREATMENT PLANT, SAGINAW, MICHIGAN. MSDS ONLY REQUIRED
WITH FIRST SHIPMENT AND, THEREAFTER EVERY FIRST SHIPMENT AFTER CHANGES TO MSDS.

IN ACCEPTING THIS ORDER, IN ADDITION TO THESE TERMS AND CONDITIONS DESCRIBED ON
THIS DOCUMENT, THE SELLER AGREES TO PAYMENT IN ACCORDANCE WITH ITS CURRENT EFT
PAYMENT AGREEMENT, OR WHERE EFT IS NOT IN PLACE, THAT GM MAY DEFER MAKING PAYMENT
BY PAPER CHECK DURING ANY RECOGNIZED GM HOLIDAY UNTIL THE NEXT GM BUSINESS DAY
WITHOUT BEING IN DEFAULT OR LOSING ANY CASH DISCOUNT PRIVILEGES. FOR EXAMPLE,
DURING CHRISTMAS, A DELAY OF ONE WEEK FROM THE NORMAL PAYMENT DATE WILL OCCUR. IN
CONTRACT, EFT PAYMENTS WILL BE MADE THE FIRST BANKING DAY FOLLOWING THE EFT DUE
DATE, AND GOOD FUNDS WILL BE AVAILABLE ON THAT DATE.

B. VANHOVE,
SENIOR BUYER
PHONE: (517) 757-4035
FAX (989) 757-9222          LAST
PAGE

DELPHI
Automotive Systems

PURCHASING,LOCATION

| | |
|---|---|
| **PURCHASE ORDER** | SAG90I4710 |
| | ALTERATION 75284 |

DELPHI SAGINAW STEERING SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
3900 E HOLLAND RD.
SAGINAW, MI 48601-9494

ORDER ISSUE DATE: 09/12/01
SEPTEMBER 13, 2001

INVOICE TO

VENDOR 328180    DUNS 966877987

ATTN    ACCOUNTS PAYABLE

SHIP TO

FURUKAWA ELECTRIC NORTH AMERICA APD INC
47677 GALLEON DR
PLYMOUTH MI                    48170

**P.O. NUMBER (AND RELEASE NUMBER, IF APPLICABLE) MUST APPEAR ON ALL INVOICES, PACKING SLIPS, PACKAGES AND BILLS OF LADING. ITEM CODE NUMBERS MUST APPEAR ON ALL INVOICES AND PACKING SLIPS. ADDRESS ALL INQUIRIES AND CORRESPONDENCE TO THE NAME SHOWN AT BOTTOM OF P.O. (OR RELEASE).**

| DATE REQUIRED | DATE PROMISED | TERMS | REC. DEPT. NOTIFY | CODES 14R |
|---|---|---|---|---|
| | | | | SA |
| F.O.B. | | | VIA | |

STATE & LOCAL SALES, USE TAX CODES 4B-NOT TAXABLE - FOR INDUSTRIAL PROCESSING.
PERMIT NO 3800440

| QUANTITY | ITEM CODE NO. | DESCRIPTION | UNIT PRICE | UNIT MEAS. |
|---|---|---|---|---|
| | | THIS ORDER IS EFFECTIVE 9/12/01 AND EXPIRES 9/10/07. | | |
| | | THE FOLLOWING HAS BEEN CHANGED TO READ: | | |
| | ******** | THE FOLLOWING PRICE EFFECTIVE 1/01/04 | ******** | |
| PC | 26085186 | SENSOR ASM, COMP TORQ & POSN PURCHASED COMPLETE TO BLUEPRINT DATED 4/06/99 PER CHART 26092738 DTD 4/06/99 UNRELEASED | 12.12 | PC |
| | | ACT 2400  75000          TAX 4B WEEKLY CAP    12500    MIN LOT SIZE | | |
| | | PRICE CHG THIS IS NOTIFICATION FOR AWARD OF BUSINESS FOR PART NUMBERS NOT SHOWN AS (ACTIVE).  SHIPMENT OF THOSE PARTS AGAINST THIS ORDER IS PROHIBITED UNTIL AN ALTERATION WITH CURRENT BLUE PRINT DATE AND REVISION IS ISSUED, UNLESS OTHERWISE STATED IN THIS ORDER. | | |

THIS IS NOT AN ORDER BUT CHANGES OR AMENDS
PURCHASE ORDER NOW IN YOUR POSSESSION.

B. VANHOVE,
SENIOR BUYER
PHONE: (517) 757-4035
FAX (989) 757-9222

PAGE

DELPHI
Automotive Systems

| PURCHASING LOCATION | PURCHASE ORDER | SAG90I4710 |
|---|---|---|

DELPHI SAGINAW STEERING SYSTEMS
DELPHI AUTOMOTIVE SYSTEMS
3900 E HOLLAND RD.
SAGINAW, MI  48601-9494

ALTERATION 75285

ORDER ISSUE DATE: 09/12/01
SEPTEMBER 13, 2001

INVOICE TO

VENDOR 328180    DUNS 966877987

ATTN    ACCOUNTS PAYABLE

SHIP TO

FURUKAWA ELECTRIC NORTH AMERICA APD INC
47677 GALLEON DR
PLYMOUTH MI                    48170

**P.O. NUMBER (AND RELEASE NUMBER, IF APPLICABLE) MUST APPEAR ON ALL INVOICES, PACKING SLIPS, PACKAGES AND BILLS OF LADING. ITEM CODE NUMBERS MUST APPEAR ON ALL INVOICES AND PACKING SLIPS. ADDRESS ALL INQUIRIES AND CORRESPONDENCE TO THE NAME SHOWN AT BOTTOM OF P.O. (OR RELEASE).**

| DATE REQUIRED | DATE PROMISED | TERMS | REC. DEPT. NOTIFY | CODES IAR |
|---|---|---|---|---|
| | | | | SA |

| F.O.B. | | VIA | |
|---|---|---|---|

STATE & LOCAL SALES, USE TAX CODES  4B-NOT TAXABLE - FOR INDUSTRIAL PROCESSING.
PERMIT NO 3800440

| QUANTITY | ITEM CODE NO. | DESCRIPTION | UNIT PRICE | UNIT MEAS. |
|---|---|---|---|---|
| | | THIS ORDER IS EFFECTIVE  9/12/01 AND EXPIRES  9/10/07. | | |
| | | THE FOLLOWING HAS BEEN CHANGED TO READ: | | |
| | \*\*\*\*\*\*\*\*\* | THE FOLLOWING PRICE EFFECTIVE   1/01/05 | \*\*\*\*\*\*\*\*\* | |
| PC | 26085186 | SENSOR ASM, COMP TORQ & POSN PURCHASED COMPLETE TO BLUEPRINT   DATED  4/06/99 PER CHART 26092738 DTD  4/06/99 UNRELEASED | 10.70 | PC |
| | | ACT 2400  75000              TAX 4B WEEKLY CAP     12500    MIN LOT SIZE | | |
| | | PRICE CHG THIS IS NOTIFICATION FOR AWARD OF BUSINESS FOR PART NUMBERS NOT SHOWN AS (ACTIVE).   SHIPMENT OF THOSE PARTS AGAINST THIS ORDER IS PROHIBITED UNTIL AN ALTERATION WITH CURRENT BLUE PRINT DATE AND REVISION IS ISSUED, UNLESS OTHERWISE STATED IN THIS ORDER. | | |

THIS IS NOT AN ORDER BUT CHANGES OR AMENDS
PURCHASE ORDER NOW IN YOUR POSSESSION.

B. VANHOVE,
SENIOR BUYER
PHONE: (517) 757-4035
FAX (989) 757-9222

PAGE          1

Exhibit B

## LONG TERM CONTRACT

1.  **Purchase of Product**

    **The Furukawa Electric Co.,Ltd.** ("Seller") agrees to sell, and **Delphi Automotive Systems LLC acting through its Saginaw Steering Division** ("Buyer") agrees to purchase, approximately one hundred percent (100%) of Buyer's production and service requirements for the following products (each referred to as a "Product" and collectively referred to as the "Products"):

| Part Number | Description | Per Unit Price | Annual Daily Tool Capacity |
|---|---|---|---|
| 26085186-000 Specification; 26079879-043 | Gamma and Epsilon program; Sensor Assembly Torque & Position | $13.00 USD | Production tooling capacity is 167pcs/hour/tool. Assembly line capacity is 300 pcs/hour. Above capacity references 8/18/2000 quotation and includes Gamma,Epsilon,Fiat 169, fiat y843 programs. Tooling limiter is plastic injection molds, 2 tools or 334 pcs/hour total. Tooling cost for Gamma, Epsilon, and Fiat 169 programs shown on this contract is $1,125,667.00 . (Tooling will be paid in a lump sum upon PPAP approval.) |
| 26089247-000 Specification; 26079879-043 | Fiat 169 (600); Sensor Assembly Torque & Position | $13.00 USD | |

2.  **Term**

    With respect to each Product, the term of this Contract is from Calendar Year 2002 through 7/1/2007.

3.  **Prices**

    The per unit price of each Product for Calendar Year 2002 is F.O.B. Plymouth Michigan for Epsilon Requirements, Cadiz, Spain for Gamma & Fiat 169(600) Requirements. (1990 IncoTerms). Pricing for each subsequent calendar year is subject to the following minimum annual percentage reductions from the prior Calendar Year's pricing:

| Calendar Year 2003 | 3.5 | percent |
|---|---|---|
| Calendar Year 2004 | 3 | percent |
| Calendar Year 2005 | 3 | percent |
| Calendar Year 2006 | 3 | percent |
| Calendar Year 2007 | 3 | percent |

Buyer and Seller will use their best efforts to implement cost savings and productivity improvements in order to reduce Seller's costs of supplying each Product. Buyer and Seller agree that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to fifty percent (50%) of any net cost savings achieved by Seller with respect to such Product (i.e., savings after recovery by Seller of a pro rata portion, based on the remaining term of this Contract, of the reasonable and documented costs to achieve such cost savings), provided, however, that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any savings resulting from reduction on the content of the such Product.

No price increases (including any decrease of the scheduled price reductions) will be made on account of (i) Seller's failure to achieve any expected cost savings or productivity improvements or (ii) any increases in Seller's labor, materials, overhead and other costs. In the event that Buyer agrees to any price increases (or a decrease of any scheduled price reductions) with respect to any Product, then, notwithstanding anything to the contrary set forth in this Contract, the pricing of each Products will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any subsequent net cost savings achieved by Seller with respect to such Product until aggregate price reductions on account of Seller's cost savings equal any price increases previously agreed to by Buyer.

**4.    Right to Purchase from Others**

During the entire term of this Contract, Seller will assure that each Product remains competitive in terms of technology, design, service and quality with any similar product available to Buyer. If, in the reasonable opinion of Buyer, a Product does not remain competitive, Buyer, to the extent it is free to do so, will advise Seller in writing of the area(s) in which a similar product is more competitive. If, within ninety (90) days, Seller does not agree to immediately sell any Product with comparable technology, design, quality, or, if applicable, price, Buyer may elect to purchase any similar products available to Buyer without any liability to Seller under this Contract.

**5.    Purchase Orders**

All Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders (including related delivery releases and shipping

instructions) issued by Buyer from time to time during the term of this Contract. Buyer's General Terms and Conditions, a copy of which is attached, are hereby incorporated into this Contract by reference, provided, however, that Buyer's right to "terminate for convenience" under the General Terms and Conditions will be inapplicable to this Contract until 7/1/2007. Any amendment to, or revision of, such General Terms and Conditions shall also become a part of this Contract, provided that (i) Buyer provides Seller with a copy of such revised Terms and Conditions and (ii) Seller does not object to such revised Terms and Conditions in writing within thirty (30) days after receipt. The Terms and Conditions (together with any revision made a part of this Contract) shall be construed, to the extent possible, as consistent with the terms and conditions set forth in this Contract and as cumulative, provided, however, that if such construction is unreasonable, the terms and conditions set forth in this Contract shall control.

EXECUTED by Buyer and Seller as of 9/7/00.

**Buyer:**                                          **Seller:**

**Delphi Automotive Systems LLC**                   **The Furukawa Electric Co.,Ltd.**
**acting through its Saginaw Steering Division**

By: _____               By: _____
Name: Duane A. Bolinger                      Name: Makoto Shimizu
Title: Director of Purchasing                Title: Director, Automotive
                                                    Products Division

# EXHIBIT B

Saginaw County

Circuit Court Records

# Civil Records

## Circuit Court Civil Records

Case Information:

| | | | |
|---|---|---|---|
| Case number: | 04-054245 | Case Type: | CK |
| Judge: | Darnell Jackson | | |
| Status: | Open | | |
| Mediation/Trial: | M | Date: | 3/1/2008 |
| Active Date: | 10/14/2004 | | |
| Bench-Warrant: | | | |
| Non Jury: | J | | |
| Closed Date: | | | |
| Final Disposition: | | | |
| Appearance: | Motion | Date: | 10/22/2007 |
| Foreign Judgment: | | | |
| Plaintiff | | Defendant | |
| Name: | Delphi Automotive Systems Llc, | Name: | Furukawa Electric North America Apd Inc, |
| Attorney: | Arthur T. Jr. Lippert | Attorney: | William E. Rohn |

Click here for all parties involved

Events:

| Date | Type | Comment |
|---|---|---|
| 10/14/2004 | * | FILING FEE PAID |
| 10/14/2004 | * | JURY FEE PAID |
| 10/14/2004 | C | CASE FILED WITH CIRCUIT COURT |
| 10/14/2004 | - | COMPLAINT & DEMAND FOR JURY; BY A.T. LIPPERT JR |
| 10/14/2004 | SI | SUMMONS ISSUED |
| 10/14/2004 | - | EXPIRES 1/14/05 |
| 10/14/2004 | * | EARLIEST RELATED CASE IS 04-51363 CK-5 |
| 10/14/2004 | * | LEOPOLD P. BORRELLO REPLACES ROBERT L. KACZMAREK AS |

JUDGE

| | | |
|---|---|---|
| 10/14/2004 | ORA | ORDER OF REASSIGNMENT |
| 10/22/2004 | SUP | REVIEWED, CLERK S OFFICE SUPERVISOR |
| 11/22/2004 | * | COURT COPIES PAID |
| 11/22/2004 | * | MOTION FEE PAID |
| 2/4/2005 | LOS | ORDER OF DISMISSAL FOR LACK OF SERVICE |
| 2/8/2005 | SER | CLERK S ORDER OF DISMISSAL FOR LACK OF SERVICE |
| 2/8/2005 | FDS | FINAL DISPOSITION--NON-SERVICE DISMISSAL |
| 2/9/2005 | * | MOTION FEE PAID |
| 2/9/2005 | PM | PLAINTIFF MOTION |
| 2/9/2005 | - | TO SET A/SIDE ORDER OF DISMISSAL FOR LACK OF SERVICE; |
| 2/9/2005 | - | BY A.T. LIPPERT JR |
| 2/9/2005 | POS | PROOF OF SERVICE: 10/14/2004, FURUKAWA ELECTRIC NORTH AME |
| 2/9/2005 | POS | PROOF OF SERVICE: 10/14/2004, FURUKAWA ELECTRIC CO LTD |
| 2/9/2005 | * | ORDER SETTING ASIDE DISMISSAL FOR LACK OF SERVICE |
| 2/9/2005 | FDE | CASE REOPENED |
| 2/17/2005 | * | APPEARANCE FOR DEFS; PRF OF SVC, FILED BY ATTY WILLIAM |
| 2/17/2005 | - | E. ROHN |
| 2/25/2005 | * | APPEARANCE OF COUNSEL FOR DEFENDANTS W/PRF OF SRVC FILED |
| 2/25/2005 | - | BY ATTY WM E ROHN |
| 2/25/2005 | * | ROHN, WILLIAM E. ADDED AS DEF ATTY |
| 2/25/2005 | * | ROHN, WILLIAM E. ADDED AS DEF ATTY |
| 3/17/2005 | AN | ANSWER FILED |
| 3/17/2005 | - | DEFS ANS & AFFIRMATIVE DEFENSES; PRF OF SVC, FILED BY |
| 3/17/2005 | - | ATTY WILLIAM E. ROHN |
| 3/23/2005 | LPQ | PRE-TRIAL QUESTIONAIRE LABELS PRINTED |
| 3/23/2005 | LPQ | PRE-TRIAL QUESTIONAIRE LABELS PRINTED |
| 3/29/2005 | PTQ | PRETRIAL QUESTIONNAIRE MAILED |
| 3/29/2005 | - | DUE DATE IS 4/23/05 |
| 4/8/2005 | PRF | PROOF OF SERVICE |
| 4/8/2005 | - | DEF S 1ST SET OF INTERROGS & REQUESTS FOR PRODUCTION OF |
| 4/8/2005 | - | DOCUMENTS TO DELPHI AUTOMOTIVE SYSTEMS |
| 4/19/2005 | PTR | PRE-TRIAL QUESTIONNAIRE RETURNED |
| 4/19/2005 | - | PLTF ATTY A.T. LIPPERT, PROOF OF SERVICE |
| 4/26/2005 | PTR | PRE-TRIAL QUESTIONNAIRE RETURNED |
| 4/26/2005 | - | DEFT ATTY WM E ROHN, PROOF OF SERVICE |
| 4/27/2005 | LPO | PRE-TRIAL ORDER LABELS PRINTED |
| 4/28/2005 | PTO | PRETRIAL/SCHEDULING ORDER |
| 4/28/2005 | - | 160 DAYS DISCOVERY,JURY |
| 4/28/2005 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 9/28/05 |
| 6/27/2005 | APR | CASE EVALUATION SCHEDULED FOR 12/01/2005 AT 10:30 AM |

| | | |
|---|---|---|
| 9/20/2005 | * | STIP/ORDER AMENDING SCHEDULING ORDER (DISCOVERY SHALL BE |
| 9/20/2005 | - | COMPLETED 180 DAYS FROM ENTRY OF ORDER) |
| 11/28/2005 | ADJ | CASE EVALUATION ADJOURNED ORIGINALLY SCHEDULED12/01/2005 |
| 11/28/2005 | - | PER A.LIPPERT/BANKRUPTCY STAY/WILL SUBMIT PAPERWORK |
| 11/28/2005 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 2/01/06 |
| 11/28/2005 | -MA | ADJ/TRACK PAPERWORK |
| 11/30/2005 | * | STIP/ORDER TO ADJOURN CASE EVALUATION |
| 12/28/2005 | * | STIP/ORDER EXTENDING DISCOVERY FOR 180 DAYS FROM THE |
| 12/28/2005 | - | ENTRY OF THIS ORDER |
| 1/23/2006 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 7/01/06 |
| 1/23/2006 | -MA | ADJ |
| 4/3/2006 | APR | CASE EVALUATION SCHEDULED FOR 8/10/2006 AT 2:30 PM |
| 4/27/2006 | * | STIP/ORDER EXTENDING DISCOVERY (DISCOVERY IS EXTENDED FOR |
| 4/27/2006 | - | 180 DAYS FROM ENTRY OF THIS ORDER) |
| 5/19/2006 | * | STIP/ORDER TO ADJ. CASE EVALUATION (DELPHI HAS FILED |
| 5/19/2006 | - | CHAPTER 11 BANKRUPTCY PROCEEDINGS) |
| 5/19/2006 | MED | ADR CLERK TO RESCHEDULE |
| 5/19/2006 | ADJ | CASE EVALUATION ADJOURNED ORIGINALLY SCHEDULED 8/10/2006 |
| 5/19/2006 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 1/19/07 |
| 5/19/2006 | -MA | ADJ/BANKRUPTCY STAY |
| 7/3/2006 | PRF | PROOF OF SERVICE |
| 7/3/2006 | - | DEF FURUKAWA ELECTRIC NORTH AMERICA APD INC & FURUKAWA |
| 7/3/2006 | - | ELECTRIC CO LIMITED ANSWERS TO PLT DELPHI AUTOMOTIVE |
| 7/3/2006 | - | SYSTEMS LLC 1ST INTERROGATORIES & REQUEST FOR PRODUCTION |
| 7/3/2006 | - | OF DOCUMENTS TO DEF |
| 8/11/2006 | PRF | PROOF OF SERVICE |
| 8/11/2006 | - | DEF 2ND SET OF INTERROGATORIES & REQUESTS FOR PRODUCTION |
| 8/11/2006 | - | OF DOCUMENTS TO DELPHI AUTOMOTIVE SYSTEMS |
| 8/18/2006 | * | STIPULATION AND ORDER EXTENDING DISCOVERY;UNTIL 3-31-2007 |
| 8/25/2006 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 3/31/07 |
| 9/27/2006 | * | PLT DELPHI AUTOMOTIVE SYSTEMS LLC WITNESS LIST, PRF OF |
| 9/27/2006 | - | SVC; BY A T LIPPERT JR |
| 12/19/2006 | APR | CASE EVALUATION SCHEDULED FOR 5/17/2007 AT 11:30 AM |
| 1/24/2007 | PRF | PROOF OF SERVICE |
| 1/24/2007 | - | DELPHI S RESPONSE TO FURUKAWA 2ND SET OF INTERROGATORIES |

| Date | Code | Description |
|---|---|---|
| 1/31/2007 | * | STIP/ORDER EXTENDING DISCOVERY UNTIL 9-28-07; DISPOSITIVE |
| 1/31/2007 | - | MTNS SHALL BE FILED & HEARD BY COURT W/I 30 DAYS AFTER |
| 1/31/2007 | - | CLOSE OF DISCOVERY; CASE EVAL. TO BE SET FOLLOWING ENTRY |
| 1/31/2007 | - | OF ORDER BY COURT DECIDING DISPOSITIVE MTNS. IF PARTIES |
| 1/31/2007 | - | DO NOT SUBMIT DISPOSITIVE MTNS, CASE EVAL. SHALL BE SET |
| 1/31/2007 | - | AFTER 45 DAYS FROM CLOSE OF DISCOVERY; TRIAL TO BE SET A |
| 1/31/2007 | - | DATE FIXED BY COURT; PARTIES TO SUBMIT TRIAL BRIEFS TO |
| 1/31/2007 | - | COURT 14 DAYS BEFORE TRIAL; PARTIES TO MARK & SUBMIT |
| 1/31/2007 | - | COPIES OF ALL PROPOSED EXHIBITS TO COURT 14 DAYS BEFORE |
| 1/31/2007 | - | COMMENCEMENT OF TRIAL |
| 1/31/2007 | MED | ADR CLERK TO RESCHEDULE |
| 1/31/2007 | - | SEE ABOVE |
| 2/5/2007 | ADJ | CASE EVALUATION ADJOURNED ORIGINALLY SCHEDULED 5/17/2007 |
| 2/5/2007 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 11/28/07 |
| 2/5/2007 | -MA | ADJ |
| 6/27/2007 | APR | CASE EVALUATION SCHEDULED FOR 11/29/2007 AT 2:30 PM |
| 9/12/2007 | * | STIPULATION AND ORDER EXTENDING DISCOVERY (DISCOVERY |
| 9/12/2007 | - | EXTENDED UNTIL 3/1/08; CASE EVAL TO BE SET FOLLOWING |
| 9/12/2007 | - | ENTRY OF ORDER BY THE CRT DECIDING DISPOSITIVE MTNS; |
| 9/12/2007 | - | IF NEITHER PARTY SUBMITS DISPOSITIVE MTNS, CASE EVAL |
| 9/12/2007 | - | SHALL BE SET AFTER 30 DAYS FROM DISCOVERY DEADLINE) |
| 9/12/2007 | MED | ADR CLERK TO RESCHEDULE |
| 9/17/2007 | ADJ | CASE EVALUATION ADJOURNED ORIGINALLY SCHEDULED11/29/2007 |
| 9/17/2007 | MA | CASE EVALUATION TO BE SCHEDULED AFTER 3/01/08 |
| 9/17/2007 | -MA | ADJ |
| 10/9/2007 | * | MOTION FEE PAID |
| 10/9/2007 | * | MTN TO STAY PROCEEDINGS; NTC FO HRG; PRF OF SVC BY ATTY |
| 10/9/2007 | - | A T LIPPERT JR FOR PLTFS |
| 10/9/2007 | APR | MOTION SCHEDULED FOR 10/22/2007 AT 1:30 PM |
| 10/9/2007 | - | MTN TO STAY PROCEEDINGS |

*New Search*

# EXHIBIT C

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

David A. Wender                    Direct Dial: 404-881-7354              E-mail: david.wender@alston.com

October 5, 2007

VIA FIRST CLASS MAIL
VIA ELECTRONIC MAIL

Sean McGrath
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119

Re:    Settlement Proposal Re: Furukawa Electric North America APD and
       Furukawa Electric Co., Ltd. Proof of Claim No. 12347

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FEDERAL RULE OF EVIDENCE 408**

Dear Mr. McGrath:

Alston & Bird LLP represents Furukawa Electric North America APD and
Furukawa Electric Co., Ltd. (collectively, "Furukawa") in respect of certain claims they
have against the Delphi Corporation and its affiliated bankrupt entities (collectively, the
"Debtors").[1]  As you are aware, on November 14, 2004, the Debtors filed a complaint
(the "First Complaint") against Furukawa seeking in excess of $25 million on account of
Furukawa's alleged breach of that certain Long Term Contract dated September 7, 2000,

---

[1]    The Debtors include: Delphi NY Holding Corporation; Delphi Corporation; ASEC Manufacturing
General Partnership; Delphi Medical Systems Colorado Corporation; Delphi China LLC; ASEC Sales
General Partnership; Delphi Medical Systems Texas Corporation; Delphi Automotive Systems Overseas
Corporation; Delphi Automotive Systems Korea, Inc.; Delphi Automotive Systems International, Inc.;
Delphi International Holdings Corp.; Aspire, Inc.; Delphi Connection Systems; Delphi International
Services, Inc.; Environmental Catalysts, LLC; Specialty Electronics International, LTD; Delphi
Automotive Systems Thailand, Inc.; Delco Electronic Overseas Corporation; Delphi Technologies, Inc.;
Delphi Automotive Systems (Holding), Inc.; Exhaust Systems Corporation; Delphi Medical Systems
Corporation; Delphi Diesel Systems Corp.; Delphi Integrated Service Solutions, Inc.; Packard Hughes
Interconnect Company; Delphi Electronics (Holding) LLC; Delphi Mechatronic Systems, Inc.; Specialty
Electronics, Inc.; Delphi Automotive Systems Tennessee, Inc.; Delphi LLC; Dreal, Inc.; Delphi
Automotive Systems Risk Management Corp.; Delphi Automotive Systems Services LLC; Delphi
Liquidation Holding Company; Delphi Foreign Sales Corporation; Delphi Services Holding Corporation;
Delphi Automotive Systems Human Resources LLC; Delphi Automotive Systems Global (Holding) Inc.;
Delphi Automotive Systems LLC; Furukawa Wiring Systems LLC; Delphi-Receivables LLC; and
MobileAria, Inc.

---

October 5, 2007
Page 2

and that certain purchase order issued September 12, 2001 (collectively, the "Agreements") in the Circuit Court for the County of Saginaw Michigan (the "Michigan Court"). As you are also aware, following the commencement of the Debtors' bankruptcy cases, Furukawa submitted Proof of Claim No. 12347 (the "Proof of Claim"). The Proof of Claim sought to preserve Furukawa's claim/counterclaim against the Debtors for damages (including legal fees, inventory, investment and other miscellaneous charges) related to the Debtors' improper termination of the Agreements.

On or about October 31, 2006, the Debtors filed their Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, and (C) Claims Subject To Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) [Docket No. 5452] (the "Third Omnibus Objection"). On or about November 22, 2006, Furukawa submitted its response and objection to the Third Omnibus Objection.

Pursuant to the Debtor's claims resolution procedures, after Furukawa submitted its response to the Third Omnibus Objection, the parties were required to meet and confer regarding the Proof of Claim. On March 24, 2007, the Debtors and Furukawa conferred concerning the claims raised in the Proof of Claim and the possibility of settlement. At this meeting it became apparent to Furukawa that the parties disagreed as to which party breached the Agreements and that litigation would be required to resolve the dispute. It also became apparent to Furukawa at this meeting and in subsequent conversations that the Debtors were rethinking their original decision to file the First Complaint in the Michigan Court and were more interested in forcing Furukawa to defend a new complaint in an inconvenient forum before a new judge and set aside the considerable amount of progress that has been made in the Michigan Court.

Recently, the Debtors filed a complaint (the "Second Complaint") against Furukawa in its bankruptcy case seeking to recover on account of the same claim that the Debtors asserted in the Michigan Court. Although you noted to me during a recent conversation that Judge Drain directed the Debtors to file a counterclaim against Furukawa in the Bankruptcy Court, this is not the case. Instead, the Court's Modified Bench ruling merely clarified that (i) the only issue before him was the Third Omnibus Objection, (ii) the Debtors may have the option of joining an affirmative request for relief similar to the request filed in the Michigan Court and (iii) should the Debtors seek to file an affirmative claim, the adversary proceeding rules will be triggered.[2] Despite the Bankruptcy Court's statement regarding the Debtors' ability to file a counterclaim to the Proof of Claim seeking similar relief, Furukawa believes that the Second Complaint, a complaint that mirrors the First Complaint and seek the exact relief sought in the

---

[2] Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, filing a demand for relief in respect of a claim, the contested matter becomes an adversary proceeding. Our review of the Docket and list of related cases does not, however, indicate that an adversary proceeding has been commenced or that a summons has been issued.

October 5, 2007
Page 3

Michigan Court is procedurally improper.    As a result, Furukawa is preparing an appropriate motion to dismiss based upon controlling Second Circuit authority.

In the interest of judicial economy and in an attempt to minimize unnecessary litigation expense, Furukawa has authorized me to propose a settlement whereby Furukawa would agree to dismiss, waive or withdraw with prejudice the Proof of Claim in exchange for the Debtors' agreement to dismiss with prejudice and not pursue the Second Complaint and/or any attempt by the Debtors to pursue a claim against Furukawa in the Bankruptcy Court relating to the claims asserted in either the First Complaint or Second Complaint.   In the event the Debtors are interested in accepting this offer, Furukawa is willing to discuss a discovery/scheduling protocol in respect of Delphi's continued prosecution of the First Complaint in the Michigan Court.

Even though Furukawa has not been served with a summons in respect of the adversary proceeding commenced by the Debtors' submission of the Second Complaint, Furukawa is interested in resolving this matter quickly so that the parties are not required to incur unnecessary litigation expenses.  Accordingly, should you want to discuss this matter further, please contact me at (404) 881-7354.

Yours truly,

David A. Wender

DAW:mls
cc:    John Lyons; Neil Berger

# EXHIBIT D

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

DELPHI    AUTOMOTIVE    SYSTEMS,
LLC, A Delaware Corporation,                          Case No. 04-054245-CK

              Plaintiff,                          HON. DARNELL JACKSON

v

FURUKAWA    ELECTRIC    NORTH
AMERICA APD, INC. A Foreign Profit
Corporation,    and    THE    FURUKAWA
ELECTRIC CO. LIMITED, A Foreign
Profit Corporation,

              Defendants.

| | |
|---|---|
| CURRIE KENDALL, PLC | JOSEPH E. PAPELIAN (P26582) |
| By: A.T. LIPPERT, JR. (P16714) | DELPHI AUTOMOTIVE SYSTEMS |
| Attorneys for Defendants | M/C 483-400-603 |
| 6024 Eastman Avenue | 5725 Delphi Drive |
| Midland, MI 48640 | Troy, MI 48098 |
| (989) 839-0300 | |

VARNUM RIDDERING SCHMIDT
HOWLETT LLP
By: WILLIAM E. ROHN (P33255)
Attorneys for Defendants
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

## MOTION TO STAY PROCEEDINGS

The Plaintiff Delphi Automotive Systems, LLC, (Delphi) by its attorneys Currie

Kendall, PLC, moves for the entry of an order staying all proceedings in the Saginaw

County Circuit Court. In support of this motion Delphi states:

1.  Delphi filed a voluntary petition for relief under Chapter 7 of the United States
    Bankruptcy Code in the United States Bankruptcy Court, Southern District of
    New York, on October 8, 2005.

2.  Delphi continues to operate businesses and manage its properties as debtors in
    possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

3.  Delphi and Defendant Furukawa Electric Co., LTD. (Furukawa) entered into a
    long term contract dated September 7, 2000. The purchase order issued by Delphi
    to Furukawa North America on September 12, 2001. The purchase order and the
    long term contract became the agreements of the parties for the manufacture and
    sale of torque and position sensors by Furukawa to Delphi.

4.  The factual and legal dispute has arisen between Delphi and Furukawa regarding
    the rights and duties imposed upon the parties by the agreements and damages
    arising from the business relationship. The pending action in this court was
    brought by Delphi to recover damages caused by Furukawa's wrongful actions.

5.  Furukawa has filed a claim against Delphi in the Bankruptcy Court. Delphi has
    filed a claim for affirmative relief against Furukawa in the Bankruptcy Court.
    Delphi's claim includes all entitlements for relief as alleged in the pending action
    in this court.

6.  The United States Bankruptcy Court has proper jurisdiction over the all claims of
    the parties. The factual and legal disputes and entitlements of damages by both
    parties will be determined in the United States Bankruptcy Court. Please see the
    Modified Bench Ruling and the Order of the Honorable Robert D. Drain, U.S.
    Bankruptcy Judge dated July 31, 2007. Attached Exhibit A

7.  All discovery proceedings and dispute resolution proceedings will be subject to
    appropriate orders of the United States Bankruptcy Court and any orders of this
    court pertaining to such proceedings would be duplicative and unnecessary.

IT IS REQUESTED that an order be entered staying the proceedings in the Saginaw
County Circuit Court pending resolution of all disputes between the parties in the
Bankruptcy Court. Upon entry of a final order in the Bankruptcy Court an order will
be entered dismissing the pending action.


Dated: October 09, 2007                    CURRIE KENDALL, PLC



                                           By: A.T. LIPPERT, JR. (P16714)
                                           Attorneys for Defendants
                                           6024 Eastman Avenue
                                           Midland, MI 48640
                                           (989) 839-0300




-3-

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                 :

In re:                             :

                                 :     Chapter 11

DELPHI CORPORATION, *et al.*,       :     Case No. 05-44481 [RDD]

                                 :

                 Debtors.     :     Jointly Administered

                                 :
------------------------------------------------------------x

**MODIFIED BENCH RULING IN REFERENCE TO ORDER DENYING
MOTION BY FURUKAWA ELECTRIC NORTH AMERICA APD
AND FURUKAWA ELECTRIC COMPANY LTD. FOR
ABSTENTION AND RELATED RELIEF**

THE COURT:  I have a motion before me by Furukawa Electric North America APD and

Furukawa Electric Company Ltd. for abstention on both a mandatory and, alternatively, a

discretionary basis, under 28 U.S.C. sections 1334(c)(2) and (c)(1), respectively, and, in

addition, for relief from the automatic stay for cause under section 362(d)(1) of the

Bankruptcy Code to permit Furukawa to raise a counterclaim in a pre-petition state court

action.  Finally, Furukawa seeks an order "limiting the scope of the claim objection

hearing" scheduled by the debtor previously in this case.

     The movant, Furukawa, appears at oral argument to have abandoned its claim

that mandatory abstention is required under 28 U.S.C. section 1334(c)(2), but, in any

event, to be clear, it's not required here because the debtor's pending objection to a filed

proof of claim by Furukawa, or of the two Furukawa entities in this case, upon which

Furukawa seeks abstention, is, under 28 U.S.C. section 157(b)(2)(B), a core matter

arising under the Bankruptcy Code, and, under the statute and well-established case law,

that fact precludes mandatory abstention.

Furukawa argued that it should be relieved of that result because it filed its proof
of claim under the pressure of the bar date order, which would otherwise have precluded
it from asserting its breach of contract claim.  But that argument is unavailing in light of
clear Second Circuit precedent, including In re S.G. Phillips Constructors, Inc., 45 F.3d
702 (2d Cir. 1995).

A clear example of how the filing of the proof of claim changes the abstention
analysis can be found in In re Asousa P'ship, 276 B.R. 55 (Bankr. E.D. Pa. 2002), in
which there had been a pre-petition state court law suit based on state court causes of
action brought by the debtor.  The bankruptcy court consequently abstained when the
debtor pursued the same cause of action in the bankruptcy court.  Thereafter, however, in
response to a bar date order, the defendant in that action filed a proof of claim arising out
of the same facts, and the Court determined that because the objection to the proof of
claim was a core matter -- and, indeed, the counterclaim also was a core matter, that is,
the original claim brought by the debtor, which now was raised as a counterclaim to the
proof of claim, was a core matter under 28 U.S.C. § 157(b)(2)(C) -- that it would not
abstain as to the adjudication of the debtor's claim objection and the related counterclaim.

There also is an alternative reason for denying the request for mandatory
abstention.  The request to abstain is not timely made, given that the litigation in the state
court has been pending for well over a year, but, more importantly, that -- like the
claimant in S.G. Phillips -- Furukawa did not seek either stay relief or abstention until
well after the implementation of the claims procedures put in place by my prior order in
this case, under which the parties were dealing with the debtor's objection to Furukawa's
claim.  In re Midgard Corp., 204 B.R. 764, 776 (B.A.P. 10th Cir. 1997) (discussing

requirement of section 1334(c)(2) that a mandatory abstention motion be "timely").

Furukawa also requests discretionary abstention under 28 U.S.C. section 1334(c)(1). The Court may exercise its discretion under section 1334(c)(1) to abstain even in a core matter. However, abstention under section 1334(c)(1) should be used rarely, or invoked by the Court rarely, particularly where the proceeding is a core matter. Contrary to Furukawa's suggestion in its reply papers, Judge Lifland did not invent that notion in his recent opinion in In re Calpine Corp., 361 B.R. 665 (Bankr. S.D.N.Y. 2007). Rather, it is well-settled under the law of the Southern District. See, e.g., In re Robb, 139 B.R. 791 (Bankr. S.D.N.Y. 1992).

Here, where the basis for the request for discretionary abstention under section 1334(c)(1) is that there is a pending state court law suit to which Furukawa would join its claim, filed here, as a counterclaim, I have considered the factors laid out by the courts in determining whether one should permissibly abstain, which are listed in Judge Lifland's Calpine opinion, 361 B.R. at 669, and I have concluded that those factors do not support permissive abstention.

First, obviously, the debtor has to deal with the claims process here in its chapter 11 case. The Court has previously on notice to all claimants adopted claims management procedures to permit the efficient yet fair liquidation of claims asserted against the estate, including Furukawa's claim, which is in excess of $2.5 million. And so, therefore, as far as the effect of this litigation on the estate and the efficient administration of the estate, and consistent with this matter being a core proceeding, the bankruptcy court is the proper forum for the liquidation of Furukawa's claim.

Moreover, other factors considered by the courts under section 1334(c)(1) do not

3

support abstaining in light of the action pending in Michigan state court. First, the

Michigan action and its flip side, Furukawa's claim here, do not appear to turn on state

law issues that are unsettled, as opposed to state law issues that involve the interpretation

of contracts and weighing disputed factual assertions as to breach. The courts in this

Circuit have focused on the unsettled nature of state law as a primary reason for deferring

to a pending state court action under section 1334(c)(1). See In re Pan American Corp.,

950 F.2d 839, 846 (2d Cir. 1991); In re 610 W. 142 Owners Corp., 1999 WL 294995 at

*3 (S.D.N.Y. May 11, 1999).

I also do not believe that trying the claim objection will unduly burden the

Court's docket, although I question whether the issue of burden is particularly

appropriate for me to consider in the first place, given that this is a core matter.

Moreover, because Furukawa filed a proof of claim here, the claim objection

also can be tried without a jury. Langencamp v. Culp, 498 U.S. 42, 44 (1990); In re

Leslie Fay Cos., 222 B.R. 718, 720 (S.D.N.Y. 1998).

And finally, it does not appear to me that the state court action has progressed in

any meaningful way and that the only real breakthrough in connection with document

exchange occurred as a result of the "meet and confer" procedures contemplated by my

claims procedures order. I also note that that order contemplates, for a claim of this size,

mandatory non-binding mediation before trial of the action, which is also contemplated

under Michigan law. It is clear to me that that mediation would occur promptly here and

that if there is any indication that forum shopping is going on, I believe it is on

Furukawa's part -- not so much forum shopping but my sense that Furukawa desires to

delay both mediation and trial, a delay which I believe would result if I were to abstain. I also note that Furu

4

promptly file its counterclaim in the Michigan action.

So for those reasons, I'll deny the motion to abstain on a permissive as well as a mandatory basis.

As far as Furukawa's request to "limit the scope of the debtor's claim objection," the request falls into two categories. The first, I think, was dealt with at oral argument, but let me reiterate: the procedural posture of the claim objection at this point is that it is just that, a claim objection. It may end up having a preclusive affect, if tried and decided against either party, in respect of any affirmative recovery that the debtor would seek from Furukawa. But at this point it is simply a claim objection. The debtor has the option of joining in that claim objection a request for affirmative relief similar to the request that it made of the Michigan court pre-petition. But I don't believe it has done that yet. If and when it does that, under Rule 3007, the adversary proceeding rules will be triggered.

Frankly, however, given the nature of this claim objection itself, I believe -- and I believe the record on the claim objection procedures motion and the order that ensued from that made this clear, as well -- the claims procedures order contemplates that the parties will meet and confer in light of the nature of the objection and the nature of the proof that will likely be required in the claim objection litigation to modify the discovery and trial procedures laid out in the claim procedures order, as set forth in paragraph 9(k), and that if that exercise were conducted in good faith, the adversary proceeding rules would in essence be followed here in any event. And if there was no agreement, the parties under the claim objection procedures order could come back to me as well, as they can also assert Rule 3007 at the appropriate time.

5

Moreover, it is clear to me, and, I think, even acknowledged by Furukawa at oral argument, that Furukawa has had adequate notice of the debtor's claim objection; it is the flip side of Furukawa's claim -- that is, the claim asserts that the debtor breached the contract by terminating it, while the debtor objects on the basis that it had the right to terminate the contract because Furukawa breached or failed to perform it.  If there was any mystery to this, and there shouldn't have been because the dispute obviously was well known to Furukawa, it was cleared up by the claims procedures process followed by the debtor under the claim procedures order.  Furukawa's complaint that the debtor made a misleading "books and records objection" is, therefore, a red herring.

Furukawa has suggested that the fact that there is a pending state court litigation brought by Delphi means that there will be a potential for dual track litigation, inefficiency and ultimately contradictory court rulings if I don't drastically limit the scope of the claim objection.  I don't believe that is the case.  As I noted, Furukawa has yet to assert its counterclaim in the state court litigation.  It seeks relief from the automatic stay here to do so.  And it is hard for me to see that litigation proceeding without that counterclaim being asserted in it.

Moreover, given the exigencies of this bankruptcy case, which is on a relatively fast track at this point, and the debtor's and the creditors' focus, in negotiating the framework for a chapter 11 plan, on the prompt liquidation of claims and even the liquidation of claims so that the allowed claims fall within a certain threshold number, it appears likely to me that either the debtor will succeed in staying the Michigan action or withdrawing it without prejudice in light of the process here, or that the claim objection process will be completed here first.

6

For the same reasons, I do not see a basis on the record before me for lifting the automatic stay to permit Furukawa to raise its counterclaim in the litigation in Michigan that the debtor is currently not pursuing.  And I reach that conclusion for the same reasons for which I denied permissive abstention, which involved the consideration of factors that overlap with the Sonnax factors.

So, Mr. Berger, you can submit an order denying the motion for those reasons.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                              :
In re:                          :
                              :       Chapter 11
DELPHI CORPORATION, *et al.,*      :       Case No. 05-44481 [RDD]
                              :
            Debtors.       :       Jointly Administered
                              :
------------------------------------------------------x

## ORDER DENYING MOTION BY FURUKAWA ELECTRIC NORTH AMERICA APD AND FURUKAWA ELECTRIC CO., LTD. FOR (A) ABSTENTION PURSUANT TO 28 U.S.C. § 1334(c);  (B) RELIEF FROM AUTOMATIC STAY PURSUANT TO  11 U.S.C. 362(d);  AND (C) AN ORDER LIMITING THE  SCOPE OF THE THIRD OMNIBUS CLAIM OBJECTION HEARING

        Furukawa Electric North American APD and Furukawa Electric Co., Ltd.

(together, "Furukawa") having filed a motion (the "Motion") for (A) abstention

pursuant to 28 U.S.C. § 1334(c);  (B) relief from the automatic stay pursuant to 11 U.S.C.

§ 362(d);  and (C) an Order limiting the scope of the third omnibus claim objection

hearing (Docket No. 7140);  and the above-captioned Debtors having filed their

objection to the Motion (the "Objection") (Docket No. 7678);  and Furukawa having

filed a Reply to the Debtors' Objection (the "Reply") (Docket No. 7966);  and the

Debtors having filed a surreply to the Motion and the Reply (the "Surreply") (Docket

No. 8537);

        AND the Motion, the Objection, the Reply and the Surreply having been

considered by the Court, along with the arguments and representations made by

counsel for Furukawa and the Debtors at a hearing conducted before the Court on July

19, 2007 (the "Hearing");  and it appearing that good and sufficient notice of the Motion,

the Objection, the Reply and the Surreply having been given;  and upon all of the prior

pleadings and proceedings had herein;  and good and sufficient cause appearing

therefor, and for the reasons stated by the Court in <u>Exhibit A</u> hereto, which modifies

and supercedes its bench ruling at the Hearing;  it is

        **ORDERED**, that the Motion be, and it hereby is, denied.

DATED:      New York, New York
              July 31, 2007

                          <u>/s/ Robert D. Drain</u>
                        HONORABLE ROBERT D. DRAIN
                        UNITED STATES BANKRUPTCY JUDGE

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

DELPHI AUTOMOTIVE SYSTEMS,
LLC, A Delaware Corporation,

Case No. 04-054245-CK

Plaintiff,

HON. DARNELL JACKSON

v

FURUKAWA ELECTRIC NORTH
AMERICA APD, INC. A Foreign Profit
Corporation, and THE FURUKAWA
ELECTRIC CO. LIMITED, A Foreign
Profit Corporation,

Defendants.

CURRIE KENDALL, PLC
By: A.T. LIPPERT, JR. (P16714)
Attorneys for Defendants
6024 Eastman Avenue
Midland, MI 48640
(989) 839-0300

JOSEPH E. PAPELIAN (P26582)
DELPHI AUTOMOTIVE SYSTEMS
M/C 483-400-603
5725 Delphi Drive
Troy, MI  48098

VARNUM RIDDERING SCHMIDT
HOWLETT LLP
By: WILLIAM E. ROHN (P33255)
Attorneys for Defendants
Bridgewater Place
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336-6000

## NOTICE OF HEARING

PLEASE TAKE NOTICE that *Plaintiff Delphi Automotive Systems, LLC's, (Delphi)*

*Motion to Stay Proceedings* will brought on for hearing before said Court, at the Courthouse in

the City of Saginaw, County of Saginaw, State of Michigan, before the Honorable Darnell

Jackson, Circuit Judge, on the **22nd day of October, 2007, at 1:30 p.m.**, or as soon thereafter as

counsel can be heard.

Dated: October 09, 2007

CURRIE KENDALL, PLC

By: A.T. LIPPERT, JR. (P16714)
Attorneys for Defendants
6024 Eastman Avenue
Midland, MI 48640
(989) 839-0300

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

DELPHI AUTOMOTIVE SYSTEMS,
LLC, A Delaware Corporation,

Case No. 04-054245-CK

Plaintiff,

HON. DARNELL JACKSON

v

FURUKAWA ELECTRIC NORTH
AMERICA APD, INC. A Foreign Profit
Corporation, and THE FURUKAWA
ELECTRIC CO. LIMITED, A Foreign
Profit Corporation,

Defendants.

CURRIE KENDALL, PLC
By: A.T. LIPPERT, JR. (P16714)
Attorneys for Defendants
6024 Eastman Avenue
Midland, MI 48640
(989) 839-0300

JOSEPH E. PAPELIAN (P26582)
DELPHI AUTOMOTIVE SYSTEMS
M/C 483-400-603
5725 Delphi Drive
Troy, MI  48098

VARNUM RIDDERING SCHMIDT
HOWLETT LLP
By: WILLIAM E. ROHN (P33255)
Attorneys for Defendants
Bridgewater Place
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336-6000

## PROOF OF SERVICE

Carolyn Avery, being first duly sworn, deposes and says that she is an employee of CURRIE KENDALL, PLC, and that on Tuesday, October 09, 2007 she served

A copy of:

Upon the following party, at the following address(es):

Via:

| | | |
|---|---|---|
| ➢ Motion to Stay Proceedings | Joseph Papelian | First-Class |
| ➢ Notice of Hearing, and THIS | Delphi Corporation | Mail |
| ➢ Proof of Service | Mail Code: 483-400-603 | |
| | 5725 Delphi Drive | |
| | Troy 48098-2815 | |

William E. Rohn
Varnum Riddering Schimdt Howlett, LLP
Bridgewater Place
PO Box 352
Grand Rapids 49501-0352

Carolyn Avery

Signed and sworn to before me in Midland County, MI, on October 9, 2007.

Naomi J. Granum, Notary Public
Midland County, Michigan
My Commission Expires: 09/22/2013

# EXHIBIT E

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

DELPHI AUTOMOTIVE SYSTEMS, LLC,
A Delaware corporation,

Plaintiff,                                          Case No.: 04-54245-CK

v                                                   Hon. Darnell Jackson

FURUKAWA ELECTRIC NORTH AMERICA
APD, INC., a foreign profit corporation, and
THE FURUKAWA ELECTRIC CO. LIMITED,
a foreign profit corporation,

Defendants.
_____/

A.T. Lippert, Jr. (P16714)                          Joseph E. Papelian (P26582)
CURRIE KENDALL, PLC                                 DELPHI CORPORATION
Attorneys for Plaintiff                             Co-Counsel for Plaintiff
6024 Eastman Avenue                                 5725 Delphi Drive
Midland, MI 48604                                   MC 483-400-603
(989) 839-0300                                      Troy, Michigan 48098
                                                    (248) 813-2535
William E. Rohn (P33255)
VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Attorneys for Defendants
Bridgewater Place, P.O. Box 352
Grand Rapids, Michigan 49501-0352
(616) 336-6000
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR STAY OF PROCEEDINGS

Furukawa Electric North America APD, Inc. and The Furukawa Electric Co. Limited

(collectively "Furukawa"), by and through their attorneys, hereby respond to the Plaintiff's

MOTION TO STAY PROCEEDINGS by stating as follows:

1.      Delphi Automotive Systems, LLC ("Delphi") filed this lawsuit against Furukawa

three years ago, on October 18, 2004.

2.    On October 8, 2005, 11 months **after** Delphi sued Furukawa, it filed in New York for protection under the United States Bankruptcy Code.

3.    In February of 2007, two and a half years **after** Delphi sued Furukawa, it attempted to assert in the New York bankruptcy court the same affirmative damage claims it asserted here in Saginaw. See, Exhibit A (page 6, ¶¶ 14 through 16). The New York bankruptcy court rejected Delphi's filing as ineffective. See, Exhibit B (see page 5).

4.    In October of 2007, three years **after** Delphi sued Furukawa, it attempted to re-file the same duplicate claims the New York bankruptcy court had rejected earlier. See, Exhibit C. The bankruptcy court has not yet ruled on the propriety of this filing.

5.    While Furukawa was preparing its objection, Delphi filed the MOTION FOR STAY under consideration.

6.    All of this raises the obvious question: Why does Delphi so badly want the case it started in Michigan to be decided instead by a judge in New York, and conversely why does it now so badly **not** want the case to be decided by a jury here in Saginaw?

7.    Whatever the answer to that question might be, the law in New York is clear that Delphi's attempt to start duplicate litigation in the bankruptcy court is improper:

> To begin with, any exception for cases where the party is the plaintiff in both actions would entail the danger that the plaintiffs may engage in forum shopping or, more accurately, judge shopping. When they see a storm brewing in the first court, they might try to weigh anchor and set sail for the hopefully more favorable waters of another district. . . . Hence, even when the same party is plaintiff in both actions, the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed.

*Adam v. Jacobs*, 95 F. 2d 89, 92 (2nd Cir. 1991) (quoting, *Semmes Motor Czars, Inc. v. Ford Motor Company*, 429 F. 2d 1197 (2nd Cir. 1970)).

2

8.     The holding in *Adam v. Jacobs* is predicated on a long line of authorities endorsing the so-called "first to file" rule, by which the courts give preference to the first court to acquire jurisdiction over a lawsuit involving the same parties and the same claims. See, also., *Hanson PLC v. Metro-Goldwyn-Mayer, Inc.,* 932 F. Supp. 104 (S.D. N.Y. 1996) ("The party asserting that the first-filed rule should not apply has the burden to show that special circumstances exist justifying departure from the rule.").

9.     Like the federal courts in New York, the courts in Michigan too have long endorsed the "first to file" rule. Our Court of Appeals did so recently in *Valeo Switches and Detection Systems, Inc. v. Incom, Inc.,* 272 Mich. App. 309 (2006), where it held (quoting the Supreme Court's earlier decision in *Chapple v. Nat'l Hardwood Co.,* 234 Mich. 296 (1926)):

> The courts quite uniformly agree that parties may not be harassed by new suits brought by the same plaintiff involving the same questions as those in pending litigation. If this were not so, repeated suits involving useless expenditures of money and energy could be daily launched by a litigious plaintiff involving one and the same matter. Courts will not lend their aid to proceedings of such a character, and the holdings are quite uniform on this subject.

272 Mich. App. at 321. See, also, *Darin v. Haven*, 175 Mich. App. 144 (1989)(same holding); *Rowry v. Univ. of Michigan*, 441 Mich. 1 (1992)("The [first to file] rule is designed to stop parties from endlessly litigating matters involving the same questions and claims as those presented in pending litigation. In other words, its purpose is to prevent 'litigious harassment' involving the same questions in *pending* litigation.")(emphasis in original).

10.     Under the holding in *Valeo,* as under the Second Circuit's holding in *Adam v. Jacobs,* the case that should be stayed is the second one filed by Delphi in New York, not the first one filed here in Michigan:

3

> Ordinarily, when one action is pending and another is brought
> between the same parties for the same cause, it is the second action
> that abates; where the plaintiff has a complete and effective
> remedy in either action, the second suit is deemed to be
> unnecessary and vexatious.

1 Am. Jur. 2d, *Abatement, Survival, and Revival*, §8 (2005) (citing, *Chapple v. Nat'l Hardwood Co., supra*). See, also, 21 C.J.S. *Courts* §492, page 745 (1998)("Where two actions are between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction . . . retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action.").

11.    The "first to file" rule is followed not only in Michigan and the federal system, it is also uniformly followed in our sister jurisdictions. See, e.g., *Littmann v. Littmann,* 57 Wis. 2d 238, 203 N.W. 2d 901 (1973) (where the court observed that the "first to file" rule has "long been advocated by jurisprudential scholars to avoid forum shopping . . ."); *Syver v. Hahn,* 6 Wis. 2d 154, 94 N.W. 2d 161 (1959) (the "first to file" rule "rests on comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results").

12.    Delphi's motion papers suggest that a different result should obtain here because Furukawa itself filed a POC ("Proof of Claim") in Delphi's bankruptcy estate. See, Delphi's Motion at paragraph 5. This suggestion is meritless. Furukawa was required to file a POC in Delphi's estate, lest its claims be forever barred.[1] Delphi cited no authority whatsoever for the

---

[1] Late claims in Bankruptcy are disallowed. See, 11 U.S.C. §502(b)(9).

4

proposition that the filing of a POC alters the "first to file" rule that otherwise obviously applies in a setting like this one.

13.    Moreover, Delphi has not cited a single reported case, nor any statute or court rule, for the proposition that the initiation of a subsequent identical lawsuit in New York constitutes a basis for staying a proceeding filed first in state court here in Michigan. Indeed, there is no such authority. To the contrary, the courts of this state are required to exercise their jurisdiction to decide the cases that are properly before them. *Cofrode v. Gartner,* 79 Mich. 332 (1890)("If a party has a right to plant his suit in a circuit court of this state, the circuit judge has no discretion to exercise in the matter. He cannot say to one suitor, 'I will retain your suit,' and to another, 'I will dismiss it.'").

14.    Delphi attached to its Motion the Opinion of the Hon. Robert D. Drain, the bankruptcy judge in New York, citing it for the proposition that the bankruptcy court has jurisdiction over both Furukawa's POC and the duplicate claims Delphi attempted to file there. In fact, Judge Drain's Opinion says no such thing. Judge Drain expressly indicated in his Opinion that Delphi's affirmative claims (i.e., the ones it attempted to file in New York in February) were not properly before him. He has not ruled on Delphi's attempt to file those same claims in New York yet again.

15.    Even if such claims were accepted by him, however, and even if they were found to be procedurally proper (a doubtful conclusion), there is still no basis for a stay here. The second filing would create concurrent proceedings in both state and federal court, but the fact that both cases are on-going simultaneously is no basis for staying the case filed first. See, ¶¶ 9 through 11 above.

5

WHEREFORE, Furukawa prays that this Court enter an Order denying Delphi's motion

for stay, together with any other or additional relief the Court deems just and equitable.

Respectfully submitted,

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Attorneys for Defendants

Dated: October 25, 2007                    By:_____
                                                    William E. Rohn (P33255)
                                                    333 Bridge Street, N.W., Ste. 1700
                                                    Grand Rapids, MI 49504
                                                    (616) 336-6827

1509634_1.DOC