ALSTON & BIRD LLP
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*
*and Furukawa Electric North America APD, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re: DELPHI CORPORATION, *et. al.*,**                   :    **Chapter 11**
                                                            :
            **Debtors.**                                    :    **Case No. 05-44481 (RDD)**
                                                            :    **Jointly Administered**
------------------------------------------------------------x
**DELPHI CORPORATION, *et. al.*,**                          :
            **Debtors.**                                    :    **Adv. Pro. No. _____** [1]
**v.**                                                      :
                                                            :
**FURUKAWA ELECTRIC COMPANY, LTD.,**                        :
**FURUKAWA ELECTRIC NORTH**                                 :
**AMERICA APD, INC.**                                       :
------------------------------------------------------------x

**FURUKAWA ELECTRIC COMPANY, LTD. AND FURUKAWA**
**ELECTRIC NORTH AMERICA APD, INC.'S MEMORANDUM IN**
**OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF DEFAULT**
**JUDGMENT**

COME NOW Furukawa Electric Company, Ltd. and Furukawa Electric North

America APD, Inc. (collectively "Furukawa") and hereby file this Memorandum in

---

[1] Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, once an objection to a proof of claim is joined with a claim for relief, the contested matter becomes an adversary proceeding. Furukawa notes for the record that despite asserting an affirmative claim in the Debtors' Claim for Affirmative Relief against Furukawa, the Debtors have yet to commence an adversary proceeding.

Opposition (the "Memorandum in Opposition)[2] to Debtors' Notice of Motion for Order

Granting Default Judgment (the "Notice of Motion") and the Declaration of Sean P.

McGrath in Support of Debtors Motion for a Default Judgment (the "Debtors'

Declaration") or, in the alternative to open the entry of default.[3]

## I.    Preliminary Statement

On September 26, 2007, the Debtors filed their Claim for Affirmative Relief

against Furukawa in which they asserted four causes of action related to Furukawa's

alleged delivery of nonconforming Teflon Sensors (defined below) and their entitlement

to damages.    Under Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), if an objection to a claim is joined with a demand for affirmative

relief, it becomes an adversary proceeding subject to Bankruptcy Rules 7001 through

7087 (the "Adversary Proceeding Rules").    Pursuant to Bankruptcy Rule 7012, if a

complaint is duly served, the defendant shall serve its answer or other responsive

pleading within 30 days of the issuance of the summons.    After receiving a copy of the

Complaint, Counsel to Furukawa informed Debtors' counsel that neither an adversary

proceeding had been commenced nor had a summons been issued in accordance with the

Adversary Proceeding Rules.    Although neither an adversary proceeding had been

commenced nor a summons issued, on October 25, 2007, Furukawa filed its Motion to

Dismiss the Claim for Affirmative Relief.[4]

---

[2] Concurrently herewith, Furukawa has filed its Motion to Dismiss the Debtors' Claim for Affirmative Relief against Furukawa.

[3] Though the Notice of Motion and the Debtors' Declaration reference a Motion for an Order Granting Default Judgment, the Debtors have not filed such a motion or a memorandum in support.

[4] During the telephone conference, counsel to the Debtors noted their belief that the Debtors did not need to commence an adversary proceeding.    Despite Furukawa's belief that a summons was required and its obligation to file a responsive pleading was tied to the issuance of a summons, after counsel to the Debtors asserted that the Debtors were not required to commence an adversary proceeding, Furukawa proceeded as

The Debtors interpretation and application of Bankruptcy Rule 7012(a), requiring Furukawa to file an answer or other responsive pleading within 20 days of service is incorrect.  Under 7012(a) a "plaintiff shall serve a reply to a counterclaim in the answer within 20 days after the service of the answer or, if a reply is ordered by the court, within 20 days after service of the order, unless the order directs otherwise."  Furukawa is not a plaintiff in an action against the Debtors, the Claim for Affirmative Relief is not contained in an answer, and the Claim for Affirmative Relief was not asserted as counterclaim to the Furukawa Proof of Claim.  In the Claim for Affirmative Relief the Debtors have sought to "join" a claim for damages (i.e., a complaint) that reasserts the Saginaw Claims before this Court.  Because the Claim for Affirmative Relief is a complaint that requires the commencement of an adversary proceeding, not a counterclaim, Furukawa's Motion to Dismiss is timely as being filed within 30 days of service of the Claim for Affirmative Relief.

## II.    Prepetition Factual Background

1.    On or about September 7, 2000, Furukawa and the Debtors entered into that certain Long Term Contract (the "Long Term Contract") whereby Furukawa agreed to sell and the Debtors agreed to purchase 100% of the Debtors' requirement for torque and position sensors.

2.    Pursuant to the Long Term Contract, the sensors were required to meet certain manufacturing, electrical, and audible use requirements (the "Debtors' Requirements").

---

if its responsive pleading was due on before October 26, 2007 (i.e., as if it had been served with a summons on September 26, 2007).

3.      During the design phase, Furukawa experienced difficulty satisfying the Debtors' electrical and audible noise requirements.

4.      To satisfy all of the Debtors' Requirements, Furukawa designed a sensor (the "Teflon Sensor") that incorporated a low-friction plating made with polytetraflouroethylene (commonly known as "Teflon").

5.      After the Teflon Sensor satisfied all of the Debtors' Requirements, the Debtors (i) congratulated Furukawa on (a) its ingenuity and (b) satisfying the Debtors' Requirements and (ii) approved the Teflon Sensor.

6.      On or about September 12, 2001, the Debtors submitted purchase order number SAG90140710 (the "Purchase Order") in connection with its purchase of certain sensors in accordance with the Long Term Contract.

7.      In response to the Purchase Order, Furukawa manufactured and delivered Teflon Sensors to the Debtors.

8.      Upon information and belief, the Debtors incorporated the Teflon Sensors into power steering assist mechanisms that the Debtors then assembled into power steering columns that were sold to General Motors Corporation ("GM") for assembly into certain GM vehicles.

9.      Upon information and belief, GM issued a recall due to the failure of certain steering columns that the Debtors manufactured

10.     Shortly after GM's recall, the Debtors alleged that their steering column failures were caused by the Teflon Sensors and that Furukawa was liable for damages related to amounts GM allegedly deducted from payments that GM owed to the Debtors and certain additional costs.

11.     On April 8, 2004, the Debtors terminated the Long Term Contract.

12.     On October 14, 2004, after Furukawa denied liability for the steering column failures and GM's recall, the Debtors commenced their action (the "Saginaw Action") in the Circuit Court of Saginaw County, Michigan (the "Saginaw Court").

13.     On or about March 15, 2005, Furukawa filed its Answer and Affirmative Defenses (the "Answer") in the Saginaw Action.

14.     After filing its Answer, the parties engaged in initial and prolonged settlement negotiations which involved the coordination of witnesses and representatives from Japan and Michigan.

15.     While the parties pursued settlement discussions, Furukawa and the Debtors propounded discovery in respect of the claims.  Both parties served multiple extensive interrogatories and requests for the production of Documents.  After the Debtors requested an extension from Furukawa to prepare their discovery responses, the Debtors produced a significant amount of information to Furukawa.[5]  Furukawa also provided responses to the Debtors' discovery requests.  Having substantially completed document production, the parties were in a position to complete paper discovery and commence depositions, as the parties had exchanged the names of required/potential deponents.

16.     Concurrent with the parties' document production, the Debtors and Furukawa continued good faith settlement discussions during which the parties exchanged additional data with respect to their claims.

---

[5] While Furukawa obtained a significant amount of information from the Debtors, Furukawa has informed the Debtor of its belief that they have not provided complete responses.

- 5 -

### III.  **Bankruptcy Procedural Background**

17.    On October 15, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

18.    On or about July 28, 2006, Furukawa filed the Furukawa Proof of Claim against the Debtors on account of the Debtors termination of the Long Term Contract.[6]

19.    On October 31, 2006, the Debtors objected to the Furukawa Proof of Claim, in the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims with Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification, and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) [Docket No. 5452] (the "Third Omnibus Objection").  The Third Omnibus Objection failed to provide any evidence in support of the Debtors' contention that Furukawa had no claim against the Debtors.

20.    On November 22, 2006, Furukawa responded to the Third Omnibus Objection by asserting that the Debtors failed to establish that the Furukawa Proof of Claim should be dismissed and that the Furukawa Proof of Claim did not represent a valid claim against the Debtors related to the Long Term Contract.

21.    In accordance with certain claims resolution procedures implemented in the Debtors' bankruptcy cases, on March 24, 2007, Furukawa and the Debtors conferred regarding the Furukawa Proof of Claim and the possibility of settlement.

22.    On March 16, 2007, the Debtors filed their Statement of Disputed Issues regarding the Furukawa Proof of Claim.  In the Debtors' Statement of Disputed Issues, the Debtors attempted to assert a claim for affirmative relief – that mirrored the claims asserted by the Debtors in the Saginaw Action (the "Saginaw Claims").

23.    In response to the Debtors' attempt to assert the Saginaw Claims in the Bankruptcy Court, Furukawa moved for an order from the Court abstaining from resolving the Saginaw Claims (the "Abstention Motion").

24.    Though the Debtors' sought to assert the Saginaw Claims through their Statement of Disputed Issues, at the hearing in respect of Furukawa's Abstention Motion, the Court noted that the Debtors had not properly asserted an affirmative claim against Furukawa and that, "[i]f and when it does that, under Rule 3007, the adversary proceeding rules will be triggered."  Modified Bench Ruling p. 5.

25.    On September 26, 2007, the Debtors filed their Claim for Affirmative Relief against Furukawa.  In the Claim for Affirmative Relief, the Debtors reasserted the Saginaw Claims in the Bankruptcy Court.

26.    On October 5, 2007, Furukawa made an offer (the "Settlement Offer")[7] to the Debtors to minimize estate costs and efficiently resolve the parties' claims.

27.    In the Settlement Offer, Furukawa (i) noted its belief that the Debtors improperly asserted the Claim for Affirmative Relief, (ii) noted its intent to file an

---

[6] As provided in the Furukawa Proof of Claim, Furukawa sought to preserve its claim that the Debtors (i) breached the Long Term Contract and (ii) owed Furukawa damages including, without limitation, legal fees, inventory reimbursement, investment reimbursement and other miscellaneous charges.

[7] A copy of which is attached hereto as Exhibit A.  In accordance with Rule 408 of the Federal Rules of Evidence, the Settlement Offer is not being submitted to prove liability, validity or amount of a claim. Instead, in accordance with Rule 408(b) of the Federal Rules of Evidence, the Settlement Offer is being introduced to establish Debtors' motives and intent in pursuing the Claim for Affirmative Relief in the Bankruptcy Court.

appropriate response, (iii) offered to waive its right to recover assets from the Debtors'
bankruptcy estates, and (iv) agreed to a reasonable scheduling order in the Saginaw
Action to efficiently resolve that action if the Debtors would withdraw the Claim for
Affirmative Relief in the Bankruptcy Case.

28.    In the Settlement Offer, Furukawa informed the Debtors that (i) pursuant
to Rule 3007 of the Federal Rules of Bankruptcy Procedure, by filing a demand for relief
in respect of a claim the Debtors were required to commence an adversary proceeding,
(ii) no such adversary proceeding had been commenced, and (iii) that a summons had not
been issued.

29.    On or about October 6, 2007, counsel to Furukawa spoke with Sean
McGrath and Neal Berger, counsel to the Debtors, in respect of the Settlement Offer.

30.    During the October 6, 2007 telephone conference, counsel to Furukawa
reaffirmed Furukawa's understanding to the Debtors that (i) pursuant to Rule 3007 of the
Federal Rules of Bankruptcy Procedure, the Debtors' assertion of their Claim for
Affirmative Relief required the commencement of an adversary proceeding and (ii)
Furukawa had not received a summons.

31.    On October 9, 2007, the Debtors moved to stay the Saginaw Action.

32.    On October 19, 2007, Furukawa responded to the Debtors' Motion to Stay
the Saginaw Action asserting that neither federal nor Michigan law supported or
permitted the Debtors' attempt to stay the Debtors' first-filed action.

33.    On October 22, 2007, the Saginaw Court granted Motion to Stay the Saginaw Action, the Michigan Court elected to stay the Saginaw Action without significant elaboration.[8]

34.    On October 24, 2007, the Debtors filed their Notice of Motion and the Debtors' Declaration, 2 days prior to the expiration of the 30 day period during which Furukawa may file a response to the Claim for Affirmative Relief.

35.    On October 24, 2007, Counsel to Furukawa conferred with counsel to the Debtors concerning the Notice of Motion and the Debtors' Declaration.

36.    On October 25, 2007, in an attempt to address the Debtors' Notice of Motion and the Debtors' Declaration without filing unnecessary pleadings, counsel to Furukawa sent an early draft of this Memorandum in Opposition.[9]

37.    On October 25, 2007 after the Debtors refused to redress Furukawa's position, Furukawa filed its Memorandum in Opposition.

## IV.    Argument

### A.    The Motion to Dismiss was Timely Filed within 30 Days of the Filing of Debtors' Claim for Affirmative Relief

The Debtors have filed their Notice of Motion and the Debtors' Declaration seeking the entry of default judgment against Furukawa based on Furukawa's alleged failure to file a timely response to the Claim for Affirmative Relief.[10]  The Debtors' Notice of Motion and the Debtors' Declaration should be denied, to the extent they amount to a Motion for an Order Granting Default Judgment because (i) Furukawa's

---

[8] Furukawa has requested a transcript of the October 21, 2007 hearing and will append it to the Court's record as soon as it becomes available.

[9] Attached hereto as Exhibit B is a true and correct copy of the email from Mr. Wender to Frank Oswald copying Neil Berger and Dennis Connolly.

Motion to Dismiss is timely and (ii) the Debtors' interpretation of Bankruptcy Rule 7012(a) is incorrect.

Pursuant to Bankruptcy Rule 7012(a) "[i]f a complaint is duly served, the defendant shall serve an answer [or other responsive pleading] within 30 days of the issuance of the summons, except when a different time is prescribed by the court." Through their Notice of Motion and the Debtors' Declaration, the Debtors have apparently characterized their Claim for Affirmative Relief as a counterclaim against Furukawa and attempt to establish that Furukawa was required to file its responsive pleading within 20 days of the Debtors service of the Claim for Affirmative relief without citing any authority in support of their determination.[11]

Despite the Debtors recent characterization of their Claim for Affirmative Relief in their Notice of Motion and the Debtors' Declaration as a counterclaim and not a complaint is incorrect. *See In re Danbury Square Assocs. L.P.*, 153 B.R. 657 (Bankr. S.D.N.Y. 1993) (holding that the Trustee was required to file a complaint to initiate an adversary proceeding to resolve its equitable subordination counterclaim to the creditors proof of claim); *see also In re Consol. Indus. Corp.*, No. 98-4053, 1999 WL 297492 (Bankr. N.D. Ind. April 19, 1999) ("the assertion of a counterclaim triggers the operation of all the rules governing adversary proceedings--including those that require a summons and complaint."); *Jones v. Progressive-Home Fed. Savs. & Loan Ass'n*, 122 B.R. 246, 250 (W.D. Pa. 1990) ("If the objection to the proof of claim is joined with a demand for relief challenging the validity, priority, or extent of an interest in property, the objection

---

[10] As noted above, the Debtors have not filed a Motion for an Order Granting Default Judgment.

[11] The Debtors' citation to *In re Metiom, Inc.*, 301 B.R. 634 (Bankr. S.D.N.Y. 2003), is inapplicable to whether Furukawa's responsive pleading is timely. In *Metiom*, the Court addressed whether the Trustee's

is considered a complaint in an adversary proceeding.").  Accordingly, under Bankruptcy Rule 7012(a) the Debtors were required to issue a summons.  Because the Claim for Affirmative Relief is a complaint that commenced an adversary proceeding, not a counterclaim, Furukawa's Motion to Dismiss was timely filed on or before October 26, 2007, the date that is 30 days after the filing of the Claim for Affirmative Relief.

The Debtors interpretation and application of Bankruptcy Rule 7012(a) is incorrect.  Under 7012(a) a "plaintiff shall serve a reply to a counterclaim in the answer within 20 days after the service of the answer or, if a reply is ordered by the court, within 20 days after service of the order, unless the order directs otherwise."  Furukawa is not a plaintiff in an action against the Debtors, the Claim for Affirmative Relief is not contained in an answer, and the Claim for Affirmative Relief was not asserted as a counterclaim to the Furukawa Proof of Claim.[12]  Instead, in the Claim for Affirmative Relief the Debtors have sought to "join" a claim for damages (i.e., a complaint) that reasserts the Saginaw Claims before this Court.  Because the Claim for Affirmative Relief is considered a complaint that commences an adversary proceeding – not a counterclaim to Furukawa's Claim – Furukawa's Motion to Dismiss is timely as being filed within 30 days of service of the Claim for Affirmative Relief.

**B.**   Even if Bankruptcy Rule 7012(a0 Required a Responsive Pleading Within 20 Days of Service, Good Cause Exists to Set Aside the Default

Rule 55(c) of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable to this adversary proceeding pursuant to Bankruptcy Rule 7055) provides that

---

claim objection satisfied the notice pleading requirements after the defendant asserted that the claim objection must be dismissed.  *Id.* at 640.

[12] The only indication that the Debtors' Claim for Affirmative Relief may be related to the Furukawa Proof of Claim is in the Statement of Jurisdiction where the Debtors provide a laundry list regarding this Court's

a court may set aside an entry of default "for good cause shown." *See Fleet Factors Corp. v. Roth (In re Roth)*, 172 B.R. 777, 779-781 (Bankr. S.D.N.Y. 1994). Factors for a court to consider in determining whether the defaulting party has shown "good cause" include: (1) whether the default was willful; (2) whether setting it aside would prejudice the non-defaulting party; and (3) whether a meritorious defense has been presented. *Id.* (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). The underlying consideration of the appropriateness of setting aside a default is the fact that defaults are not favored in federal court, but trials on the merits are the preferred method for resolving disputes. *Fleet*, 172 B.R. at 780 (citing *Enron*, 10 F.3d at 96; quoting *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ("[T]he extreme sanction of default judgment must remain a weapon of first, rather than firs, resort.") (modification in original)).

While Federal Rule 55(c) does not directly apply here because default has not been entered, it should be noted that Furukawa's alleged failure to file a timely responsive pleading was not willful.

> With respect to the willfulness factor, the defaulting party is willful if the defaulting party's conduct was intentional, deliberate, or with reckless disregard for the effect of its conduct on the proceedings. The term "willful," does not include negligent or careless conduct. Accordingly, "Fed. R. Civ. P. 60(b) expressly contemplates that some types of 'neglect' are 'excusable.'" Defaults resulting from deliberate conduct are not excusable, whereas, defaults resulting from negligent or careless conduct may be excusable. In addition, the degree of negligence giving rise to the default remains a relevant factor when assessing whether the defaulting party's conduct precludes it from relief.

*In re Scient, Inc.*, Case No. 02-13455, 2007 WL 594906, at *9 (Bankr. S.D.N.Y. Feb 22, 2007) (internal citations omitted). The circumstances discussed above establish that Furukawa's failure to file a responsive pleading within 20 days of service of the Claim

---

potential jurisdiction. *See* Claim for Affirmative Relief ¶ 4. (citing 28 U.S.C. § 157(b)(2)(A), (B), (C), (E)

for Affirmative Relief is supported by Bankruptcy Rule 7012(a) which provides that a responsive pleading to a complaint is due within 30 days of the issuance of the summons.

The other two factors – whether setting aside a default would prejudice the non-defaulting party and whether the party in default has a meritorious defense – are likewise clear-cut against default.

> Prejudice occurs when the non-defaulting ability to proceed with its case becomes impaired.  Delay, by itself, is an insufficient basis for establishing prejudice, rather it must result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion.  The non-defaulting party bears the burden of proving it will be substantially prejudiced if the default judgment is vacated.

*Id.* (internal citations omitted).    Accordingly, even if the Debtors establish that Furukawa's responsive pleading was due within 20 days of service of the Claim for Affirmative Relief, the Debtors cannot demonstrate that a four day delay prejudiced the Debtors.  Further, evidenced by the Answer and Affirmative Defenses Furukawa filed in the Saginaw Court,[13] Furukawa has a number of meritorious defenses to the Debtors claims.

Given all of the above, even if Furukawa had actually defaulted (which it did not), such default should be set aside under the procedural facts of this case because any delay in responding to the Complaint was not willful, the Debtors are in no way prejudiced, and Furukawa has demonstrated it has a meritorious defense.

## IV.    Conclusion

Furukawa has meritorious defenses and plans to defend itself against the Debtors' Claim for Affirmative Relief.  Prior to filing its Motion to Dismiss, both in its Settlement

---

and (O)).
[13] Attached hereto as Exhibit C.

Offer and in its conversation with the Debtors, Furukawa informed the Debtors that it would submit the appropriate response to the Claim for Affirmative Relief and that the Claim for Affirmative Relief was a new claim for relief.   Because the Debtors' interpretation of Bankruptcy Rule 7012(a) is incorrect and Furukawa properly filed its Motion to Dismiss on or before October 26, 2007, the Motion for Default Judgment should be denied or, if the Motion for Entry of Default is granted, the default should be set aside.

Respectfully submitted this 25th day of October 2007.

ALSTON & BIRD LLP

 /s/ Dennis J. Connolly
Dennis J. Connolly (DC-9932)
David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone (404) 881-7000
Facsimile (404) 881-7777

*Counsel for Furukawa Electric Company, Ltd.*
*and Furukawa Electric North America APD, Inc.*

# EXHIBIT A

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax:404-881-7777
www.alston.com

**David A. Wender**                    **Direct Dial: 404-881-7354**                    **E-mail: david.wender@alston.com**

October 5, 2007

VIA FIRST CLASS MAIL
VIA ELECTRONIC MAIL

Sean McGrath
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York 10119

   Re: Settlement Proposal Re: Furukawa Electric North America APD and
     Furukawa Electric Co., Ltd. Proof of Claim No. 12347

    **FOR SETTLEMENT PURPOSES ONLY**
    **SUBJECT TO FEDERAL RULE OF EVIDENCE 408**

Dear Mr. McGrath:

  Alston & Bird LLP represents Furukawa Electric North America APD and
Furukawa Electric Co., Ltd. (collectively, "Furukawa") in respect of certain claims they
have against the Delphi Corporation and its affiliated bankrupt entities (collectively, the
"Debtors").[1] As you are aware, on November 14, 2004, the Debtors filed a complaint
(the "First Complaint") against Furukawa seeking in excess of $25 million on account of
Furukawa's alleged breach of that certain Long Term Contract dated September 7, 2000,

---

[1]  The Debtors include: Delphi NY Holding Corporation; Delphi Corporation; ASEC Manufacturing
General Partnership; Delphi Medical Systems Colorado Corporation; Delphi China LLC; ASEC Sales
General Partnership; Delphi Medical Systems Texas Corporation; Delphi Automotive Systems Overseas
Corporation; Delphi Automotive Systems Korea, Inc.; Delphi Automotive Systems International, Inc.;
Delphi International Holdings Corp.; Aspire, Inc.; Delphi Connection Systems; Delphi International
Services, Inc.; Environmental Catalysts, LLC; Specialty Electronics International, LTD; Delphi
Automotive Systems Thailand, Inc.; Delco Electronic Overseas Corporation; Delphi Technologies, Inc.;
Delphi Automotive Systems (Holding), Inc.; Exhaust Systems Corporation; Delphi Medical Systems
Corporation; Delphi Diesel Systems Corp.; Delphi Integrated Service Solutions, Inc.; Packard Hughes
Interconnect Company; Delphi Electronics (Holding) LLC; Delphi Mechatronic Systems, Inc.; Specialty
Electronics, Inc.; Delphi Automotive Systems Tennessee, Inc.; Delphi LLC; Dreal, Inc.; Delphi
Automotive Systems Risk Management Corp.; Delphi Automotive Systems Services LLC; Delphi
Liquidation Holding Company; Delphi Foreign Sales Corporation; Delphi Services Holding Corporation;
Delphi Automotive Systems Human Resources LLC; Delphi Automotive Systems Global (Holding) Inc.;
Delphi Automotive Systems LLC; Furukawa Wiring Systems LLC; Delphi-Receivables LLC; and
MobileAria, Inc.

---

October 5, 2007
Page 2

and that certain purchase order issued September 12, 2001 (collectively, the "Agreements") in the Circuit Court for the County of Saginaw Michigan (the "Michigan Court"). As you are also aware, following the commencement of the Debtors' bankruptcy cases, Furukawa submitted Proof of Claim No. 12347 (the "Proof of Claim"). The Proof of Claim sought to preserve Furukawa's claim/counterclaim against the Debtors for damages (including legal fees, inventory, investment and other miscellaneous charges) related to the Debtors' improper termination of the Agreements.

On or about October 31, 2006, the Debtors filed their Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, and (C) Claims Subject To Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) [Docket No. 5452] (the "Third Omnibus Objection"). On or about November 22, 2006, Furukawa submitted its response and objection to the Third Omnibus Objection.

Pursuant to the Debtor's claims resolution procedures, after Furukawa submitted its response to the Third Omnibus Objection, the parties were required to meet and confer regarding the Proof of Claim. On March 24, 2007, the Debtors and Furukawa conferred concerning the claims raised in the Proof of Claim and the possibility of settlement. At this meeting it became apparent to Furukawa that the parties disagreed as to which party breached the Agreements and that litigation would be required to resolve the dispute. It also became apparent to Furukawa at this meeting and in subsequent conversations that the Debtors were rethinking their original decision to file the First Complaint in the Michigan Court and were more interested in forcing Furukawa to defend a new complaint in an inconvenient forum before a new judge and set aside the considerable amount of progress that has been made in the Michigan Court.

Recently, the Debtors filed a complaint (the "Second Complaint") against Furukawa in its bankruptcy case seeking to recover on account of the same claim that the Debtors asserted in the Michigan Court. Although you noted to me during a recent conversation that Judge Drain directed the Debtors to file a counterclaim against Furukawa in the Bankruptcy Court, this is not the case. Instead, the Court's Modified Bench ruling merely clarified that (i) the only issue before him was the Third Omnibus Objection, (ii) the Debtors may have the option of joining an affirmative request for relief similar to the request filed in the Michigan Court and (iii) should the Debtors seek to file an affirmative claim, the adversary proceeding rules will be triggered.[2] Despite the Bankruptcy Court's statement regarding the Debtors' ability to file a counterclaim to the Proof of Claim seeking similar relief, Furukawa believes that the Second Complaint, a complaint that mirrors the First Complaint and seek the exact relief sought in the

---

[2] Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure, filing a demand for relief in respect of a claim, the contested matter becomes an adversary proceeding. Our review of the Docket and list of related cases does not, however, indicate that an adversary proceeding has been commenced or that a summons has been issued.

October 5, 2007
Page 3

Michigan Court is procedurally improper.   As a result, Furukawa is preparing an appropriate motion to dismiss based upon controlling Second Circuit authority.

In the interest of judicial economy and in an attempt to minimize unnecessary litigation expense, Furukawa has authorized me to propose a settlement whereby Furukawa would agree to dismiss, waive or withdraw with prejudice the Proof of Claim in exchange for the Debtors' agreement to dismiss with prejudice and not pursue the Second Complaint and/or any attempt by the Debtors to pursue a claim against Furukawa in the Bankruptcy Court relating to the claims asserted in either the First Complaint or Second Complaint.   In the event the Debtors are interested in accepting this offer, Furukawa is willing to discuss a discovery/scheduling protocol in respect of Delphi's continued prosecution of the First Complaint in the Michigan Court.

Even though Furukawa has not been served with a summons in respect of the adversary proceeding commenced by the Debtors' submission of the Second Complaint, Furukawa is interested in resolving this matter quickly so that the parties are not required to incur unnecessary litigation expenses.   Accordingly, should you want to discuss this matter further, please contact me at (404) 881-7354.

Yours truly,

David A. Wender

DAW:mls
cc:     John Lyons; Neil Berger

# EXHIBIT B

## Wender, David

| | |
|---|---|
| **From:** | Wender, David |
| **Sent:** | Thursday, October 25, 2007 1:38 PM |
| **To:** | 'Frank Oswald' |
| **Cc:** | Connolly, Dennis; 'neilberger@TeamTogut.com' |
| **Subject:** | RE: Delphi Follow-up |

**Attachments:** FURUKAWA_Opposition to Motion For Default Judgment_1.DOC



FURUKAWA_Opposi
tion to Motion ...

Frank,

Attached for your and (Neil's) review is Furukawa's draft Opposition that I referenced in my earlier email. I think the cases demonstrate that Furukawa has 30 days to file its responsive pleading which it plans to do today (Furukawa's response is actually due on Monday, the 29th). I am hopeful that we can address the procedural issues without involving the Court. If you or Neil would like to discuss this matter before I file the Opposition and Furukawa's Responsive Pleading, please give me a call before 4.

Thank you,


David A. Wender
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Office: 404-881-7354
Facsimile: 404-253-8563
Mobile: 404-822-9294
david.wender@alston.com

-----Original Message-----
From: Frank Oswald [mailto:frankoswald@teamtogut.com]
Sent: Thursday, October 25, 2007 12:45 PM
To: Wender, David
Cc: Connolly, Dennis
Subject: Re: Delphi Follow-up

David

I had a chance to speak to sean and email with Neil and your recitation of what's gone on is much different from theirs

I told my guys that in my dealings you were a straight shooter and reasonable guy...even though I strongly disagreed with your positions in OLM

so I don't know if this more of an issue that Delphi is feed up with your client or there was something between the attys that got off on the wrong foot

1

I hope its the former and neil and sean and u can open a dialogue to resolve...my understanding his your client has not been reasonable in the past


...... Original Message .......
On Thu, 25 Oct 2007 12:32:12 -0400 "Wender, David"
<David.Wender@alston.com> wrote:
>Frank,
>
>I just left you a voicemail in follow-up to our conversation last night
concerning Delphi's Notice of Motion for Entry of Default. As I noted , Furukawa believes that Delphi's Notice of Motion incorrectly interprets Rule 7012 of the Federal Rules of Bankruptcy Procedure. Although I am prepared to file Furukawa's Opposition to Entry of Default Judgment today (concurrent with Furukawa's responsive pleading) and am confident in the law, I do not believe that the Notice of Motion and Opposition are >necessarily matters that the Judge wants muddying-up his docket. In an
effort to demonstrate our position/conclusions further and in the hope that we can resolve this without filing unnecessary pleadings, I will be sending you an early draft of Furukawa's Opposition to Delphi's Notice of Motion that we plan to file by 4 today. As we demonstrated during our involvement in Our Lady of Mercy, we believe that parties should confer in good faith to address procedural disagreements before they involve the Court
>through unnecessary pleadings. Should you or Neil Berger agree, please
give me a call.
>
>Thank you,
>
>
>
>David A. Wender
>Alston & Bird LLP
>One Atlantic Center
>1201 West Peachtree Street
>Atlanta, GA  30309-3424
>Office: 404-881-7354
>Facsimile: 404-253-8563
>Mobile: 404-822-9294
>david.wender@alston.com
>
>
>*******************************************************
>IRS Circular 230 disclosure:  To ensure compliance with requirements
imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
>_____
>
>NOTICE:  This e-mail message and all attachments transmitted with it
>may contain legally privileged and confidential information intended
>solely for the use of the addressee.  If the reader of this message is

>not the intended recipient, you are hereby notified that any reading,
>dissemination, distribution, copying, or other use of this message or
>its attachments is strictly prohibited.  If you have received this
>message in error, please notify the sender immediately by telephone
>(404-881-7000) or by electronic mail (postmaster@alston.com), and
>delete this message and all copies and backups thereof.  Thank you.
> _____

# EXHIBIT C

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

DELPHI AUTOMOTIVE SYSTEMS, LLC,
A Delaware corporation,

           Plaintiff,                Case No.: 04-54245-CK

v

FURUKAWA ELECTRIC NORTH AMERICA
APD, INC., a foreign profit corporation, and
THE FURUKAWA ELECTRIC CO. LIMITED,
a foreign profit corporation,

           Defendants.

                                        /

A.T. Lippert, Jr. (P16714)
Lippert, Humphreys, Campbell, Dust & Humphreys, P.C.
Attorneys for Plaintiff
4800 Fashion Square Blvd., Suite 410
Saginaw, Michigan 48604-2604
(989) 792-2552

Donald R. Parshall, Jr. (P30267)
Delphi Corporation
Co-Counsel for Plaintiff
5825 Delphi Drive
Troy, Michigan 48098-2815
(248) 813-3367

William E. Rohn (P33255)
Michael S. McElwee (P36088)
Elizabeth J. Fossel (P41430)
Varnum, Riddering, Schmidt & HowlettLLP
Attorneys for Defendants
Bridgewater Place, P.O. Box 352
Grand Rapids, Michigan 49501-0352
(616) 336-6000

                                        /

## ANSWER AND AFFIRMATIVE DEFENSES OF FURUKAWA ELECTRIC NORTH AMERICA APD, INC. AND THE FURUKAWA ELECTRIC CO. LIMITED

      NOW COME Defendants, Furukawa Electric North America APD, Inc. and The Furukawa Electric Co. Limited, by and through their counsel, Varnum, Riddering, Schmidt &

HowlettLLP, state for their Answer to the Complaint of Plaintiff Delphi Automotive Systems, LLC ("Delphi") the following:

### Parties, Jurisdiction, and Venue

1.      Delphi is incorporated under the laws of the State of Delaware and has its principal place of business at 5825 Delphi Drive, Troy, Michigan 48089-2015.   Delphi manufacturers a wide variety of products for the automotive industry, including steering columns for General Motors.

**ANSWER:**      **This allegation is neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to its truth.**

2.      Defendant Furukawa Electric North America APD, Inc is a foreign profit corporation authorized to do business in the State of Michigan. Its registered office is 601 Abbott Road, East Lansing, Michigan 48823. Its resident agent is CSC - Lawyers Incorporating Service, 601 Abbott Road, East Lansing, Michigan 48823.

**ANSWER:**      **This allegation is admitted.**

3.      The Furukawa Electric Co. Limited is a foreign profit corporation having its principal place of business in Marunouchi, Chiyoda-KU Tokyo, Japan. Defendant Furukawa Electric North America APD, Inc. is its agent, representative, and sales representative within the State of Michigan.

**ANSWER:**      **This allegation is admitted.**

4.      The defendants maintain a business office at 47677 Galleon Drive, Plymouth, Michigan 48170.

**ANSWER:**      **This allegation is admitted as to Defendant Furukawa Electric North America APD, Inc.  As to Defendant Furukawa Electric Co. Limited, this allegation is denied for the reason that the same is untrue.**

5.      A torque and position sensor, Delphi part number 26085186, is manufactured by the defendants and sold by the defendants to Delphi in accordance with the terms of a Delphi purchase order issued to Furukawa Electric North American APD, Inc. on September 12, 2001,

2

(attached Exhibit A) and in accordance with the terms of a Long Term Contract between Delphi and Furukawa Electric Co. Limited on September 7, 2000 (attached Exhibit B).

**ANSWER:**    **It is admitted that the products are manufactured by Defendant Furukawa Electric Co. Limited and that the products are sold through Defendant Furukawa Electric North America APD, Inc.**

6.    The torque and position sensor manufactured and sold by the defendants are shipped to Delphi's manufacturing facility in Saginaw, Michigan.

**ANSWER:**    **This allegation is admitted.**

7.    The torque and position sensors are assembled by Delphi into Power Steering Assist Mechanisms that are then assembled into steering columns. The steering columns manufactured by Delphi in its Saginaw manufacturing facility, and are sold by Delphi to General Motors Corporation for assembly into General Motors vehicles.

**ANSWER:**    **This allegation is admitted, upon information and belief.**

8.    Jurisdiction is proper in the Saginaw County Circuit Court pursuant to MCL 600.605 because the amount in controversy exceeds $25,000.00, exclusive of costs, interest and attorney fees.

**ANSWER:**    **This allegation is admitted.**

9.    Venue is proper in this court pursuant to MCL 600.1629. The contracts of the parties were made in Saginaw County.

**ANSWER:**    **This allegation is admitted, upon information and belief.**

## COUNT I
## BREACH OF CONTRACT

10.    Delphi re-alleges each of the preceding paragraphs in paragraphs 1 through 9.

**ANSWER:**    **Defendants hereby reallege their responses to Paragraphs 1 through 9 of the Complaint as though set forth here in their entirety.**

3

11.    Delphi issued its Purchase Order SAG9OI471O to Furukawa Electric North America APD, Inc. on September 12, 2001. The purchase order provided for the sale by Furukawa Electric North America APD, Inc. of torque and position sensors, Delphi part number 26085186, at an agreed price. (Exhibit A).

ANSWER:    This allegation is admitted.

12.    A Long Term Contract was issued by Delphi acting through its Saginaw steering division as "Buyer" to the Furukawa Electric Co. Limited as "Seller." (Exhibit B) The Long Term Contract provided for the sale by Furukawa Electric Co. Limited of part number 26085186 to Delphi.

ANSWER:    This allegation is admitted.

13.    All parts sold by the defendants were to be manufactured in accordance with specifications provided by Delphi to the defendants.

ANSWER:    This allegation is admitted to the extent and understanding outlined

in mutually-agreed revisions of the Delphi Product Specification.

14.    The defendants agreed to manufacture the torque and position sensor in accordance with Delphi specifications and had actual knowledge that failure to conform to Delphi specifications would result in product failure and resultant losses and damages.

ANSWER:    This allegation is denied for the reason that the same is untrue.

15.    The torque and position sensors sold by the defendants to Delphi for assembly into its Power Steering Assist Mechanism and its steering columns were subject to warranties that provide:

"7.1 General. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this Contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for nonconforming goods.

4

7.3 <u>Warranty Period</u>. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract."

**ANSWER:**    **It is admitted that the terms quoted in this paragraph appear in Delphi's General Terms and Conditions and, therefore, this allegation is admitted on information and belief.**

16.    The defendants requested twice that material revisions be made to the part specifications in order that the defendants could change the physical characteristics of the torque and position sensor. Delphi considered this request for the change in specifications and the requests were not granted for sound metallurgical and engineering reasons.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

17.    The defendants, acting without the required knowledge and consent of Delphi, materially altered the specifications of the torque and position sensor. This material and unauthorized change was made by the defendants prior to their first request to Delphi to alter the specifications of the part, while knowing that approval of Delphi of the part specification was required. This material and unauthorized change resulted in the failure of the torque and position sensor. The failure of the torque and position sensor led to failures in the Power Steering Assist Mechanism sold by Delphi to General Motors and installed in General Motors vehicles.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

18.    The defendants acknowledge and admit that they made material changes to the specifications for the torque and position sensor without Delphi's consent.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

19.    The defendants breached the contracts made between them and Delphi and breached the warranties made by them to Delphi.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

20.    It is essential that at all times Delphi maintain its reputation with General Motors and with its other customers as a competent skillful manufacturer of automotive parts. The actions of the defendants constituting a breach of contract were intentional, and it was reasonably

foreseeable that such intentional acts would cause injury and damage to the reputation of Delphi as a competent and skillful manufacturer of automotive parts.

> **ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

21.    As a direct consequence of the breach of contract, and breach of warranties, and the intentional violation of the terms of the contract, Delphi has sustained losses and damages.

> **ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

**WHEREFORE, Defendants pray for a judgment of no cause of action in their favor and against Plaintiff and further pray for an award of their attorneys fees and costs incurred in the defense of this action as well as any other relief to which this Court deems these Defendants entitled.**

## COUNT II
## VIOLATION OF UCC WARRANTIES

22.    Delphi re-alleges each of the preceding paragraphs made in paragraphs 1 through 21.

> **ANSWER:**    **Defendants hereby reallege their responses to Paragraphs 1 through 21 of the Complaint as though set forth here in their entirety.**

23.    The contracts made between Delphi and the defendants are subject to the provisions of the Michigan Uniform Commercial Code.

> **ANSWER:**    **This allegation is admitted, upon information and belief.**

24.    At the time that the contracts were made between Delphi and the defendants, the defendants had reason to know that the torque and position sensors would be used for a particular purpose and that Delphi was relying upon the skill and judgment of the defendants to furnish suitable goods meeting the specifications of Delphi.

> **ANSWER:**    **This allegation is admitted except that, by way of further answer, Defendant also relied upon Delphi's skill and judgment in determining that the**

6

specifications would be fit for the particular purpose for which the goods would be used and further relied upon Delphi's proper assembly and usage of the part.

25.    The defendants expressly warranted that the torque and position sensors would be manufactured in strict accordance with Delphi's engineering and quality specifications.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

26.    The defendants breached the express and implied warranties created by the contracts and by the provisions of Michigan Uniform Commercial Code. MCLA 440.2315, MCLA 440.23 13.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

27.    As a direct consequence of the breach of express and implied warranties and the intentional violations of the terms of the contracts and the Michigan Uniform Commercial Code, Delphi has sustained losses and damages.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

**WHEREFORE, Defendants pray for a judgment of no cause of action in their favor and against Plaintiff and further pray for an award of their attorneys fees and costs incurred in the defense of this action as well as any other relief to which this Court deems these Defendants entitled.**

## COUNT III
## TORTIOUS INTERFERENCE

28.    Delphi re-alleges each of the preceding paragraphs made in paragraphs 1 through 27.

**ANSWER:**    **Defendants hereby reallege their responses to Paragraphs 1 through 27 of the Complaint as though set forth here in their entirety.**

7

29.     At all times pertinent to this complaint Delphi had a business relationship with General Motors Corporation and the expectancy of future business with General Motors Corporation.

**ANSWER:**     **This allegation is neither admitted nor denied as Defendants are without knowledge or information sufficient to form a belief as to its truth.**

30.     The business relationship and the expectancy of a continuing business relationship had a reasonable likelihood of future economic benefit for Delphi.

**ANSWER:**     **This allegation is neither admitted nor denied as Defendants are without knowledge or information sufficient to form a belief as to its truth.**

31.     The defendants, and each of them, knew of Delphi's business relationship with General Motors and its expectation that the economically beneficial business relationship would continue.

**ANSWER:**     **This allegation is neither admitted nor denied as Defendants are without knowledge or information sufficient to form a belief as to its truth.**

32.     Defendants manufactured and sold to Delphi torque and position sensors that did not meet the manufacturing specifications of Delphi and were unsuitable for installation into electric steering columns.

**ANSWER:**     **This allegation is denied for the reason that the same is untrue.**

33.     The intentional sale of a known defective parts interfered with Delphi's business relationship with General Motors and Delphi's expectancy of a continuing business relationship.

**ANSWER:**     **This allegation is denied for the reason that the same is untrue.**

34.     The actions of the defendants were improper and the improper conduct interfered with Delphi's business relationship with General Motors and the expectancy of continuing business relationship.

**ANSWER:**     **This allegation is denied for the reason that the same is untrue.**

8

35.    The defendants' conduct has caused a disruption in the business relationship existing between Delphi and General Motors. The Delphi steering columns sold to General Motors and installed by General Motors in its vehicles have been subject to warranty issues because they do not meet Delphi and General Motors specifications.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

36.    There is a reasonable likelihood that the intentional conduct of the defendants will further disrupt and damage the business relationship existing between Delphi and General Motors and the expectancy of a continuing business relationship between Delphi and General Motors.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

37.    Delphi has been financially damaged as a direct result of defendant's intentional and tortious conduct.

**ANSWER:**    **This allegation is denied for the reason that the same is untrue.**

**WHEREFORE, Defendants pray for a judgment of no cause of action in their favor and against Plaintiff and further pray for an award of their attorneys fees and costs incurred in the defense of this action as well as any other relief to which this Court deems these Defendants entitled.**

## COUNT III
## FRAUD AND MISREPRESENTATION

38.    Delphi re-alleges each of the allegations made in paragraphs I through 37 inclusive.

**ANSWER:**    **Defendants hereby reallege their responses to Paragraphs 1 through 37 of the Complaint as though set forth here in their entirety.**

39.    At all times pertinent to this complaint the defendants, and each of them, represented to Delphi that the torque and position sensor manufactured by them met the manufacturing specifications of Delphi and General Motors.

**ANSWER:**      This allegation is admitted as to the Delphi Product Specification.  All remaining matters in this allegation are neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to their truth.

40.   The representations made by the defendants were false.

**ANSWER:**      This allegation is denied for the reason that the same is untrue.

41.   The defendants knew that the representations were false.

**ANSWER:**      This allegation is denied for the reason that the same is untrue.

42.   The defendants recklessly represented that the torque and position sensor met the specifications of Delphi and General Motors without knowing whether the representation was true.

**ANSWER:**      This allegation is denied for the reason that the same is untrue.

43.   Defendants made the representations with the intent that Delphi rely upon their representations.

**ANSWER:**      This allegation is admitted as to the Delphi Product Specification.  All remaining matters in this allegation are neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to their truth.

44.   Delphi relied upon the representations made by the defendants.

**ANSWER:**      This allegation is neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to its truth.

45.   Delphi was damaged as a result of its reliance upon the representations made by the defendants and each of them.

**ANSWER:**      This allegation is denied for the reason that the same is untrue.

10

WHEREFORE, Defendants pray for a judgment of no cause of action in their favor and against Plaintiff and further pray for an award of their attorneys fees and costs incurred in the defense of this action as well as any other relief to which this Court deems these Defendants entitled.

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Attorneys for Defendants

Dated: **3/15/05**

By: _William E. Rohn_

William E. Rohn (P33522)
Michael S. McElwee (P36088)
Elizabeth J. Fossel (P41430)

Business Address and Telephone:
Bridgewater Place, P.O. Box 352
Grand Rapids, Michigan, 49501-0352
(616) 336-6000

## AFFIRMATIVE DEFENSES

Defendants state that they may rely on one or all of the following affirmative defenses prior to or at the time of trial:

1.  Plaintiff's Complaint fails to state a claim upon which relief can be given.

2.  Plaintiff has failed to mitigate its damages.

3.  Plaintiff's Complaint is barred by the doctrine of laches and/or waiver.

4.  Plaintiff's damages were caused by Plaintiff's own actions.

11

5.      Defendants reserve the right to add additional affirmative defenses made known

to them through discovery in the within cause.

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Attorneys for Defendants

Dated:    **3/15/05**            By: _____
                                            William E. Rohn  (P33255)
                                            Michael S. McElwee (P36088)
                                            Elizabeth J. Fossel (P41430)

                                    Business Address and Telephone:
                                            Bridgewater Place, P.O. Box 352
                                            Grand Rapids, Michigan  49501-0352
                                            (616) 336-6000

#1050106

12

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

---

DELPHI AUTOMOTIVE SYSTEMS, LLC,
A Delaware corporation,

                Plaintiff,                    Case No.:  04-54245-CK

v                                      **PROOF OF SERVICE**

FURUKAWA ELECTRIC NORTH AMERICA
APD, INC., a foreign profit corporation, and
THE FURUKAWA ELECTRIC CO. LIMITED,
a foreign profit corporation,

                Defendants.

---

STATE OF MICHIGAN    )
                        ) ss:
COUNTY OF KENT      )

       I, Theresa A. Symon, hereby certify that on the 15th day of March, 2005, I caused a copy of the Answer and Affirmative Defenses of Furukawa Electric North America APD, Inc. and The Furukawa Electric Co. Limited to be served by facsimile and depositing it in the Firm's internal office mail for pick-up and delivery via United States Mail, First Class, postage prepaid, at Grand Rapids, on the following parties-in-interest:

A.T. Lippert, Jr. (P16714)                    Donald R. Parshall, Jr. (P30267)
Lippert, Humphreys, Campbell, Dust & Humphreys, P.C.     Delphi Corporation
Attorneys for Plaintiff                       Co-Counsel for Plaintiff
4800 Fashion Square Blvd., Suite 410           5825 Delphi Drive
Saginaw, Michigan 48604-2604               Troy, Michigan 48098-2815
(989) 792-2552                             (248) 813-3367

I declare that the above statement is true to the best of my knowledge, information and belief.

                                                      Theresa A. Symon
                                                      Notary Public, Kent County, Michigan
                                                      My Commission Expires:  10/03/2006
                                                     Acting in Kent County, Michigan

#1050220