# Exhibit A

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

```
------------------------------------------------------------x
                                                 :
                                                 :
                                                 :
IN RE: DELPHI CORPORATION                        :
SECURITIES, DERIVATIVE & "ERISA"                 :
LITIGATION                                       :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :
------------------------------------------------------------x
```

MDL No. 1725
Master Case No. 05-md-1725
Hon. Gerald E. Rosen

This Document Relates to:
In Re: Delphi Corp. Securities Litig.
No. 06-10026, and Case Nos.
06-10025, 06-10027, 06-10028,
06-10029, 06-10030, 06-10031, and
06-10032

## STIPULATION AND AGREEMENT OF SETTLEMENT
## WITH CERTAIN DEFENDANTS

This Stipulation and Agreement of Settlement With Certain Defendants (the "Stipulation")

is submitted in the above-captioned *In re: Delphi Corporation Securities, Derivative & "ERISA"*

*Litigation*, Master Case No. 05-md-1725 (GER), and relates to *In Re: Delphi Corp. Securities*

*Litigation*, No. 06-10026 and the other securities actions listed above, pursuant to Rule 23 of the

Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for

the Eastern District of Michigan (the "Court"), this Stipulation is entered into among Lead

Plaintiffs Teachers' Retirement System of Oklahoma, Public Employees' Retirement System of

Mississippi, Raiffeisen Kapitalanlage-Geselleschaft m.b.H., and Stichting Pensioenfonds ABP

(hereinafter "Lead Plaintiffs") on behalf of themselves and the Class (as defined herein), and

Delphi Corporation ("Delphi"); Delphi Trust I and Delphi Trust II; J.T. Battenberg III, John G.

Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd

Gottschalk, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D.

Opie, Roger S. Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively,

the "Delphi Officer and Director Defendants"); and Banc of America Securities LLC, Barclays

Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities

(USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith

Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital

Markets, LLC (collectively, the "Underwriter Defendants").

A separate consolidated action brought under the Employee Retirement Income Security

Act, coordinated in the above-captioned *In re: Delphi Corp. Securities, Derivative & "ERISA"*

*Litigation*, Master File No. 05-md-1725 (GER), Case Nos. 05-CV-70882, 05-CV-70940,

05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396,

05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and

05-CV-72198 (the "Delphi ERISA Action"), is also pending in this Court. The ERISA Action is

being settled contemporaneously herewith pursuant to a separate stipulation of settlement.

It is a condition to the Settlement (as defined herein) that the Delphi Securities Action (as

defined herein) and the Delphi ERISA Action be settled contemporaneously and that the

Settlement and the settlement of the Delphi ERISA Action be (i) approved by the Court and (ii)

approved by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court"). It is a further condition to the Settlement that the Bankruptcy Court approve

the separate agreement resolving all pertinent claims among Delphi, certain insurance carriers, and

certain individuals insured under the relevant insurance policies and obligating such insurance carriers to make the Insurance Payment (defined below) (the "Insurance Agreement").

WHEREAS:

A.    Beginning on March 7, 2005, several putative securities class actions were filed in the Court and the United States District Court for the Southern District of New York against Delphi and various other defendants. On June 27, 2005, Judge Naomi Reice Buchwald of the United States District for the Southern District of New York appointed Lead Plaintiffs as lead plaintiffs to prosecute the actions on behalf of all purchasers of Delphi securities during the putative class period and appointed Co-Lead Counsel (defined herein) as lead counsel in the actions (the "Lead Plaintiff Appointment Order"). The actions filed in the United States District Court for the Southern District of New York were consolidated by order of that court, entered September 23, 2005, under the caption *In Re: Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB).

B.    On September 30, 2005, Lead Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") on behalf of all persons and entities who purchased or otherwise acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II, during the period between March 7, 2000 and March 3, 2005, inclusive, against Delphi; Delphi Trust I; Delphi Trust II; the Delphi Officer and Director Defendants; the Underwriter Defendants; J. Michael Losh, Harry J. Pearce, John F. Smith; Deloitte & Touche LLP ("Deloitte"); BBK, Ltd. ("BBK"); SETECH, Inc. ("SETECH"); and JPMorgan Chase & Co. (as successor-in-interest to Bank One Corporation) ("JPMorgan Chase"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and Sections 11, 12(a)(2), and 15 of the Securities

Act of 1933 (the "Securities Act"). The Complaint alleges, among other things, that Delphi, with

the participation of others, improperly accounted for various transactions and otherwise made

material misstatements regarding its financial condition.

      C.     On October 8, 2005, Delphi filed for protection under chapter 11 of Title 11 of the

United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

      D.     On December 12, 2005, the Judicial Panel on Multidistrict Litigation ordered the

transfer of the Delphi Securities Action (and other related federal actions, including the Delphi

ERISA Action) to this Court for coordinated or consolidated pretrial proceedings. On March 10,

2006, certain defendants moved to dismiss the Complaint. On May 12, 2006, Lead Plaintiffs filed

papers in opposition to the motions to dismiss. On June 12, 2006, defendants filed their reply

papers in further support of the motions to dismiss. On February 15, 2007, the Court granted Lead

Plaintiffs' motion for partial modification of the discovery stay implemented pursuant to the

Private Securities Litigation Reform Act and, on March 21, 2007, denied certain defendants'

motion for reconsideration of that ruling.

      E.     On March 14, 2006, Lead Plaintiffs voluntarily dismissed from the Delphi

Securities Action defendants J. Michael Losh, Harry J. Pearce, and John F. Smith, who were all

former directors of both General Motors Corporation and Delphi.

      F.     On April 11, 2005, a putative class action was filed in the United States District

Court for the Southern District of Florida against Delphi Trust I, J.T. Battenberg III, Robert H.

Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Bernd Gottschalk, Shoichiro Irimajiri,

Oscar de Paula Bernardes Neto, John D. Opie, Roger S. Penske, Donald S. Runkle, John D.

Sheehan, Patricia C. Sueltz, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley

& Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC, under the caption

4

*Bernstein v. Delphi Trust I, et al.*, No. 9:05-CV-80307 (KLR) (the "Bernstein Action"). The
complaint alleged violations of Sections 11 and 15 of the Securities Act in connection with the sale
of securities of Delphi Trust I. On July 20, 2005, upon unopposed motion, the Southern District of
Florida appointed plaintiff Sidney Bernstein as lead plaintiff in the Bernstein Action and appointed
his selection of counsel as co-lead counsel in the Bernstein Action (the "Bernstein Order"). On
August 29, 2005, the Southern District of Florida stayed the Bernstein Action pending transfer of
all related actions by the multidistrict litigation panel. On October 16, 2006, this Court granted
Lead Plaintiffs' motion to vacate the Bernstein Order and affirmed the Lead Plaintiff Appointment
Order. The obligations incurred and releases set forth in this Stipulation as part of the Settlement
are in full and final disposition of the Bernstein Action in addition to that of the Delphi Securities
Action.

G.      Settling Defendants in the Delphi Securities Action deny any wrongdoing
whatsoever, and this Stipulation shall in no event be construed or deemed to be evidence of or an
admission or concession on the part of any Settling Defendant with respect to any claim of any
fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the
Settling Defendants have asserted or would assert.

H.      The parties to this Stipulation recognize that the Delphi Securities Action has been
filed by the Lead Plaintiffs and defended by the Settling Defendants in good faith, that the Delphi
Securities Action is being voluntarily settled upon advice of counsel, and that the terms of the
Settlement are fair, reasonable and adequate. This Stipulation shall not be construed or deemed to
be a concession by Lead Plaintiffs or any Class Member of any infirmity in the claims asserted in
the Delphi Securities Action or any other action.

I.       Co-Lead Counsel have conducted investigations relating to the claims and the underlying events and transactions alleged in the Delphi Securities Action.  Co-Lead Counsel have analyzed the evidence adduced during the pretrial discovery conducted thus far and have researched the applicable law with respect to the claims of the Lead Plaintiffs and the Class against the Settling Defendants and the potential defenses thereto.

J.       The parties recognize that the claims asserted in the Delphi Securities Action, if proved by the Lead Plaintiffs, could have exposed Settling Defendants to a substantial damage award.  Accordingly, the parties considered that a resolution of the Delphi Securities Action was advisable from the point of view of all parties.

K.       With the assistance of the Honorable Layn R. Phillips, former United States District Judge, acting as a special master for settlement purposes, Lead Plaintiffs in the Delphi Securities Action, by their counsel, have conducted independent discussions and arm's-length negotiations with Settling Defendants' counsel with respect to a compromise and settlement of the Delphi Securities Action and with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class in the Delphi Securities Action.

L.       Based upon their investigation and pretrial discovery as set forth above, Lead Plaintiffs and their counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiffs and the Class, and are in their best interests, and Lead Plaintiffs have agreed to settle the claims raised in the Delphi Securities Action pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that the members of the Class will receive from settlement of the Delphi Securities Action, (b) the attendant risks of litigation, (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation, and (d) the sources available to fund any potential

6

judgment in the litigation as a result of the fact that Delphi filed for protection under chapter 11 of the Bankruptcy Code on October 8, 2005.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any lack of merit of the Delphi Securities Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Settling Defendants, it is hereby STIPULATED AND AGREED, by and between the parties to this Stipulation, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties hereto from the Settlement herein set forth, that all Settled Claims (as defined herein), as against the Released Parties (as defined herein), and all Settled Defendants' Claims (as defined herein) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## DEFINITIONS

1.      As used in this Stipulation, the following terms shall have the following meanings:

(a)      "Allowed Opt-out Claim" means a claim in the Bankruptcy Case by or on behalf of a person who would be a Class Member but for that person's submission of a valid and timely request for exclusion from the Class and the settlement contemplated in this Stipulation, based on any Settled Claim, and which claim has become an allowed claim in the Bankruptcy Case within the meaning in Delphi's plan of reorganization in the Bankruptcy Case (the "Delphi Plan of Reorganization") pursuant to a Final Order of the Bankruptcy Court, any applicable provisions of the Bankruptcy Code and/or Bankruptcy Rules, or any other relevant order entered in the Bankruptcy Case; provided further that any such Allowed Opt-Out Claims shall be classified under the Delphi Plan of Reorganization in the same separate debt and/or equity classes in which

7

the Section 510(b) Claim is classified, and shall be satisfied using Delphi Plan Currency in the same form, ratio, and treatment applicable to general unsecured creditors as provided in the Delphi Plan of Reorganization.

(b)    "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator.

(c)    "Bankruptcy Case" means the chapter 11 cases of Delphi and certain of its affiliates, jointly administered by the Bankruptcy Court as Case No. 05-44481 (RDD).

(d)    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

(e)    "Bankruptcy Effective Date" means the business day determined by Dephi in its sole discretion on which all conditions to the consummation of the Delphi Plan of Reorganization have been either satisfied or waived and is the day upon which such plan is substantially consummated, such date being the same as the "Effective Date" as defined in the Delphi Plan of Reorganization.

(f)    "Bar Order" shall have the meaning set forth in ¶¶ 5-6 hereof.

(g)    "Barred Claims" shall have the meaning set forth in ¶ 5 hereof.

(h)    "Barred Persons" shall have the meaning set forth in ¶ 5 hereof.

(i)    "Claims Administrator" means The Garden City Group, Inc. ("GCG"), which shall administer the Settlement.

(j)    "Class" means, for the purposes of this Settlement only, all persons and entities who purchased or otherwise acquired Delphi Securities during the Class Period, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who

acquired debt securities of Delphi in the secondary market or pursuant to a registration statement.

Excluded from the Class are (i) any Defendant; (ii) any member of the family of any of the Delphi

Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest;

(iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal

representatives, heirs, successors and assigns of any such excluded party. Also excluded from the

Class are any putative members of the Class who exclude themselves by timely requesting

exclusion in accordance with the requirements set forth in the Notice.

   (k) "Class Distribution Order" has the meaning defined in ¶ 14 hereof.

   (l) "Class Member" means a member of the Class.

   (m) "Class Period" means, for the purposes of this Settlement only, the period

of time between March 7, 2000 and March 3, 2005, inclusive.

   (n) "Co-Lead Counsel" means the law firms of Bernstein Litowitz Berger &

Grossmann LLP, Nix, Patterson & Roach, L.L.P., Grant & Eisenhofer, P.A., and Schiffrin &

Barroway Topaz & Kessler, LLP.

   (o) "Court" means the United States District Court for the Eastern District of

Michigan.

   (p) "Defendants" means Delphi, Delphi Trust I, Delphi Trust II, the Delphi

Officer and Director Defendants, the Underwriter Defendants, the Non-Settling Defendants,

Thomas H. Wyman, and Shoichiro Irimajiri.

   (q) "Delphi" means Delphi Corporation.

   (r) "Delphi Consideration" means that amount of Delphi Plan Currency in the

same form, ratio, and treatment provided to general unsecured creditors in the Delphi Plan of

Reorganization that would be distributed pursuant to this Stipulation to satisfy the Section 510(b)

Claim granted to the Lead Plaintiffs as representatives of the Class pursuant to this Stipulation, but for reduction, if any, for Allowed Opt-Out Claims.

(s)    "Delphi Plan Currency" means the form of consideration to be provided to general unsecured creditors as provided in the Delphi Plan of Reorganization, which could include cash, common stock, debt securities, other securities, or any other kind of consideration.

(t)    "Delphi's Counsel" means the law firm of Shearman & Sterling LLP.

(u)    "Delphi ERISA Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER), Case Nos. 05-CV-70882, 05-CV-70940, 05-CV-71030, 05-CV-71200, 05-CV-71249, 05-CV-71291, 05-CV-71339, 05-CV-71396, 05-CV-71397, 05-CV-71398, 05-CV-71437, 05-CV-71508, 05-CV-71620, 05-CV-71897, and 05-CV-72198.

(v)    "Delphi Net Consideration" means the Delphi Consideration, reduced by the amount, if any, of Delphi Plan Currency to be distributed to the holders of Allowed Opt-out Claims;  provided further that the distribution of the Delphi Net Consideration shall be in full satisfaction of the Section 510(b) Claim granted to the Lead Plaintiffs as representatives of the Class pursuant to this Stipulation, and in full and final resolution of the Settled Claims of the Class against Delphi.

(w)    "Delphi Securities" means publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II.

(x)    "Delphi Securities Action" means *In re: Delphi Corp. Securities, Derivative & "ERISA" Litigation*, Master File No. 05-md-1725 (GER), and relating to *In Re: Delphi Corp. Securities Litigation*, No. 06-10026, and Case Nos. 06-10027, 06-10028, 06-10029,

06-10030, 06-10031, and 06-10032, and *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) (formerly No. 9:05-CV-80307 (KLR) (S.D. Fla.)).

(y)    "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in ¶ 29 hereof.

(z)    "Escrow Agent" means Mellon Bank, or such other institution as the parties may agree, pursuant to an Escrow Agreement to be executed in connection with this Settlement.

(aa)    "Final" or "Finality," with respect to any Judgment or Alternative Judgment (both defined herein), means: (a) if no appeal is filed, the expiration date of the time provided for under the corresponding rules of the applicable court or legislation for filing or noticing of any appeal from the Judgment; or (b) if there is an appeal from the Judgment, the date of (i) final dismissal of any appeal from the Judgment, or the final dismissal of any proceeding on certiorari or otherwise to review the Judgment; or (ii) the date of final affirmance on an appeal of the Judgment, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review of the Judgment, and, if certiorari or other form of review is granted, the date of final affirmance of the Judgment following review pursuant to that grant.  Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or (ii) the plan of allocation, shall not in any way delay or preclude the Judgment from becoming Final.

(bb)    "Gross Settlement Fund" means (A) the cash amounts to be paid to the Escrow Agent pursuant to ¶ 7 hereof, which consists of (i) the Insurance Payment, including the Contingent Payment; and (ii) One Million, Five Hundred Thousand United States Dollars (U.S. $1,500,000) that the Underwriter Defendants, excepting Bear, Stearns & Co. Incorporated and

Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), shall pay to the Escrow Agent (the "Underwriter Defendants' Payment"); (B) the Delphi Net Consideration; (C) 76.3% of any remaining cash from the National Union Fire Insurance Company of Pittsburg, Pa. Policy No. 931-88-56 after payment of all defense costs incurred as of the entry by the Court of the Order for Notice and Hearing in all material respects ("Insurance Remainder Payment") and (D) any interest on or other income or gains in respect of these amounts or distributions earned while such amounts or distributions are held by the Escrow Agent.

(cc)    "Insurance Payment" means Eighty Eight Million, Six Hundred Thousand United States Dollars (U.S. $88,600,000) that certain insurance carriers shall pay to the Escrow Agent in the amounts set forth in the Insurance Agreement within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement. Of the Eighty Eight Million, Six Hundred Thousand United States Dollars (U.S. $88,600,000) that those certain insurance carriers shall pay to the Escrow Agent, Ten Million United States Dollars (U.S. $10,000,000) (the "Contingent Payment") shall be separately maintained in an Escrow Account subject to the provisions set forth in Exhibit C hereto.

(dd)    "Judgment" means (i) the proposed judgment or order by the Court approving the Settlement in the form attached hereto as Exhibit B, and (ii) any of the judgments and orders to be entered by the Bankruptcy Court approving the Settlement.

(ee)    "Lead Plaintiffs" means Teachers' Retirement System of Oklahoma, Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H., and Stichting Pensioenfonds ABP.

(ff)    "Net Settlement Fund" has the meaning defined in ¶ 8 hereof.

(gg)    "Non-Settling Defendants" means Deloitte, BBK, SETECH, and JPMorgan Chase.

(hh)    "Notice" means the Notice of Proposed Settlement With Certain Defendants, Motions for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Tab 1 to Exhibit A.

(ii)    "Order for Notice and Hearing" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit A.

(jj)    "Plaintiffs' Counsel" means Co-Lead Counsel and any other counsel representing Class Members.

(kk)    "Proof of Claim" means the proof of claim form substantially in the form attached as Tab 2 to Exhibit A hereto.

(ll)    "Publication Notice" means the summary notice of proposed Settlement and hearing for publication substantially in the form attached as Tab 3 to Exhibit A.

(mm)   "Released Parties" means (i) any and all of the Settling Defendants, Thomas Wyman, and Shoichiro Irimajiri, their past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters (including but not limited to Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital

13

Markets, LLC), insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi and its affiliates in the Bankruptcy Case; and (ii) General Motors Corporation, its past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which General Motors Corporation has a controlling interest or which is related to or affiliated with General Motors Corporation, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, or assigns of General Motors Corporation.  Notwithstanding the foregoing, the definition of Released Parties shall not include any of the Non-Settling Defendants and Electronic Data Systems Corporation ("EDS").  In addition, the inclusion of General Motors as a Released Party shall not be construed to release any claims asserted in *Deka Investment GmbH, et al. v. General Motors Corporation, et al.*, No. 2:06-cv-12258 (GER) (E.D. Mich.).

(nn)    "Section 510(b) Claim" means the claim against Delphi granted and approved by the Bankruptcy Court in its order approving this Settlement to the Lead Plaintiffs, as representatives of the Class, pursuant to this Stipulation, which shall be an allowed claim in the aggregate face amount of Two Hundred Four Million United States Dollars (U.S. $204,000,000),

with no additional provision to be made for accrued interest, and which shall be a claim classified

under the Delphi Plan of Reorganization in separate debt and equity classes based on the plan of

allocation approved by the Court, representative of the claims of the Class against Delphi arising

out of or relating to any and all claims or causes of action in the Delphi Securities Action.

(oo)    "Settled Claims" means any and all claims, debts, demands, rights or

causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to,

any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs,

expenses or liability whatsoever), whether based on federal, state, local, statutory or common law

or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated

or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature,

including both known claims and Unknown Claims (as defined herein), (i) that have been asserted

in the Delphi Securities Action against any of the Released Parties, or (ii) that could have been

asserted in any forum by the Class Members or any of them or the successors and assigns of any of

them against any of the Released Parties which arise out of, are based upon, or relate to the

allegations, transactions, facts, matters or occurrences, representations or omissions involved, set

forth, or referred to in the Delphi Securities Action and related to the purchase, acquisition, or

holding of Delphi Securities.

(pp)    "Settled Defendants' Claims" means any and all claims, rights or causes of

action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or

any other law, rule or regulation, including both known claims and Unknown Claims, that have

been or could have been asserted in the Delphi Securities Action or any forum by the Settling

Defendants or any of them or the successors and assigns of any of them against any of the Lead

Plaintiffs, any Class Member or their attorneys, which arise out of or relate in any way to the

institution, prosecution, or settlement of the Delphi Securities Action (except Settled Defendants'

Claims does not include all claims, rights or causes of action or liabilities whatsoever related to the

enforcement of the Settlement, including, without limitation, any of the terms of this Stipulation or

orders or judgments issued by the courts in connection with the Settlement or confidentiality

obligations).

      (qq)    "Settling Defendants' Opt-out Threshold" has the meaning set forth in ¶28

hereof and in the Supplemental Agreement.

      (rr)    "Settled Underwriter Defendants' Claims" means any and all claims, rights

or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or

common law or any other law, rule or regulation, including both known claims and Unknown

Claims, that have been or could have been asserted in the Delphi Securities Action, the Bankruptcy

Court, or any forum by the Underwriter Defendants or any of them or the successors and assigns of

any of them against the Released Parties, which arise out of or relate in any way to the institution,

prosecution, or settlement of the Delphi Securities Action, including any claim for indemnification;

provided, however, that the Settled Underwriter Defendants' Claims shall not include claims

arising from that certain Underwriters' Indemnification Agreement dated as of even date herewith

among Delphi and the Underwriter Defendants.

      (ss)    "Settlement" means the settlement of the Delphi Securities Action

contemplated by this Stipulation.

      (tt)    "Settlement Amount" means (i) the Delphi Net Consideration, (ii) the

Insurance Payment, (iii) the Insurance Remainder Payment, and (iv) the Underwriter Defendants'

Payment.

(uu)    "Settling Defendants" means Delphi, Delphi Trust I, Delphi Trust II, the

Delphi Officer and Directors Defendants, and the Underwriter Defendants.

(vv)    "Stipulation" means this Stipulation and Agreement of Settlement With

Certain Defendants.

(ww)    "Taxes" means (i) any and all applicable taxes, duties and similar charges

imposed by a government authority (including any estimated taxes, interest or penalties) arising in

any jurisdiction, if any (A) with respect to the income or gains earned by or in respect of the Gross

Settlement Fund, including, without limitation, any taxes that may be imposed upon Settling

Defendants or their counsel with respect to any income or gains earned by or in respect of the

Gross Settlement Fund for any period while it is held by the Escrow Agent during which the Gross

Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax

purposes; or (B) by way of withholding as required by applicable law on any distribution by the

Escrow Agent or the Claims Administrator of any portion of the Gross Settlement Fund to

Authorized Claimants and other persons entitled hereto pursuant to this Stipulation; and (ii) any

and all expenses, liabilities and costs incurred in connection with the taxation of the Gross

Settlement Fund (including without limitation, expenses of tax attorneys and accountants). For the

purposes of paragraph (A) hereof, taxes imposed on Settling Defendants shall include amounts

equivalent to taxes that would be payable by Settling Defendants but for the existence of relief

from taxes by virtue of loss carryforwards or other tax attributes, determined by Settling

Defendants, acting reasonably, and accepted by the Escrow Agent, acting reasonably.

(xx)    "Underwriter Defendants' Payment" means One Million, Five Hundred

Thousand United States Dollars (U.S. $1,500,000) that certain of the Underwriter Defendants,

excepting Bear, Stearns & Co. Incorporated and Credit Suisse Securities (USA) LLC (f/k/a Credit

Suisse First Boston Corporation), shall pay to the Escrow Agent within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement.

(yy)    "Unknown Claims" means any and all Settled Claims which any of the Lead Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Delphi Securities Action as part of the Settlement and any and all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims.

3.     (a)    Upon the Effective Date of the Settlement, Lead Plaintiffs and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any Released Party or any other person who may claim any form of contribution or indemnity from any Released Party in respect of any Settled Claim or any matter related thereto, at any time on or after the Effective Date.

(b)    Upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Lead Plaintiffs, all Class Members and their respective counsel.

(c)    Upon the Effective Date of the Settlement, the Underwriter Defendants on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Underwriter Defendants' Claim, release and forever discharge, and are forever enjoined from prosecuting, any Settled Underwriter Defendants' Claims against the Released Parties, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against the Released Parties or any other person who may claim any form of contribution or

19

indemnity from the Released Parties in respect of any Settled Underwriter Defendants' Claim or

any matter related thereto, at any time on or after the Effective Date, provided, however, that the

Settled Underwriter Defendants' Claims shall not include claims arising from that certain

Underwriters' Indemnification Agreement dated as of even date herewith among Delphi and the

Underwriter Defendants.

### THE BAR ORDER

4.      The Court shall include the Bar Order in ¶¶ 5-6 in its final Judgment approving

the Settlement.  The Bar Order shall be approved by the Court as fair to all persons or entities,

including but not limited to (a) the Defendants; (b) the Class; and (c) to the Non-Settling

Defendants.

5.      The Bar Order shall provide that:

(a)      In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for

contribution arising out of the claims or allegations of the Delphi Securities Action or any Settled

Claim (i) by any person or entity against any of the Released Parties, and (ii) by any of the

Released Parties against any person or entity other than a person or entity whose liability has been

extinguished by the settlement of the Released Party, are hereby permanently barred, extinguished,

discharged, satisfied, and unenforceable.  In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final

verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against

any person or entity for loss for which such person or entity and any Released Party are found to be

jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of

responsibility of any such Released Party(s) for common damages or (ii) the amount paid to the

Class by or on behalf of each such Released Party for common damages.

(b)      Complete Bar Order:  Any person or entity receiving notice of the Notice,

or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that

would cause such person to be charged with constructive notice of the Notice (such persons, the "Barred Persons") is permanently barred, enjoined, and restrained from commencing, prosecuting, continuing, or asserting any claim against the Released Parties arising under federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise, where the claim or the alleged injury of such Barred Person is or arises from or relates to that Barred Person's or entity's alleged liability to the Class or any Class Member ("Barred Claims"); provided, however, that if: (a) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Act of 1933 ("Securities Act") for which such Barred Person and any Released Party is found to be jointly and severally liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Securities Act; or (ii) an amount that corresponds to the percentage of responsibility of any Released Party that constitute "covered persons" pursuant to 15 U.S.C. § 78u-4(f)(10)(C) for common damages pursuant to the Securities Act ; and/or (b) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Exchange Act of 1934 ("Exchange Act") for which such Barred Person and any Released Party is found to be jointly liable, that Barred Person shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Exchange Act or (ii) an amount that corresponds to the percentage of responsibility of any Released Party for common damages pursuant to the Exchange Act.

6.      The Bar Order shall provide that a Settling Defendant shall not be enjoined from bringing Barred Claims against a Barred Person if for any reason such Barred Person asserts, or is legally not barred by the Bar Order from bringing, Barred Claims against such Settling Defendant.

## SETTLEMENT CONSIDERATION

7.      In consideration for the release and discharge provided for in ¶ 3(a) hereof, Settling Defendants shall distribute or pay or cause to be paid the Settlement Amount, as prescribed below.

(a)      The certain insurance carriers party to the Insurance Agreement shall pay to the Escrow Agent, on behalf of the Delphi Officer and Director Defendants, the Insurance Payment and the Insurance Remainder Payment, within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement.

(b)      The Underwriter Defendants, with the exception of Bear Stearns & Co. Incorporated and Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), shall pay to the Escrow Agent the Underwriter Defendants' Payment, in the aggregate, within ten (10) business days after entry by the Court of an order preliminarily approving the Settlement.

(c)      Delphi shall distribute pursuant to the Escrow Agreement the Delphi Net Consideration as soon as practicable after the later of (i) the satisfaction of each of the conditions in ¶ 29(a)–(g), or (ii) the Bankruptcy Effective Date.

8.      (a)      The Gross Settlement Fund shall be used to pay (i) the Notice, Publication Notice, and administration costs referred to in ¶ 10 hereof, (ii) the attorneys' fee and expense award referred to in ¶ 13 hereof, and (iii) the remaining administration expenses referred to in ¶ 14 hereof. The balance of the Gross Settlement Fund after the above payments and the payment of any Taxes

22

(as defined herein) shall be the Net Settlement Fund. At a time following the Effective Date, the Net

Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶ 15-17 hereof, subject

to additional funds received, if any, from the Insurance Remainder Payment and/or the Contingent

Payment as provided in Exhibit C hereto. Any sums required to be held in escrow hereunder shall be

held by the Escrow Agent. All funds held by the Escrow Agent shall be deemed to be in the custody

of the Court until such time as the funds shall be distributed to Authorized Claimants or paid to the

persons paying the same pursuant to this Stipulation and/or further order of the Court. The Escrow

Agent shall invest any funds in excess of U.S. $100,000 in short term United States Agency or

Treasury Securities (or a mutual fund invested solely in such instruments), and shall collect and

reinvest all interest accrued thereon. Any funds held in escrow in an amount of less than U.S.

$100,000 may be held in a bank account insured by the Federal Deposit Insurance Corporation

("FDIC"). The parties hereto agree that the Gross Settlement Fund is intended to be a Qualified

Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and that the Escrow Agent

as administrator of the Gross Settlement Fund within the meaning of Treasury Regulation §

I.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect

of the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with

respect to the Gross Settlement Fund. The parties hereto agree that the Gross Settlement Fund shall

be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any

relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund

from the earliest date possible. Delphi agrees to provide promptly to the Escrow Agent the statement

described in Treasury Regulation § I.468B-3(e).

      (a)      All Taxes (as defined herein) shall be paid out of the Gross Settlement Fund,

shall be considered to be a cost of administration of the Settlement and shall be timely paid by the

Escrow Agent without prior Order of the Court. The Gross Settlement Fund or the Escrow Agent

shall, to the extent required by law, be obligated to withhold from any distributions to Authorized

Claimants and other persons entitled thereto pursuant to this Stipulation any funds necessary to

pay Taxes including the establishment of adequate reserves for Taxes as well as any amount that

may be required to be withheld under Treasury Reg. 1.468B-(1)(2) or otherwise under applicable

law in respect of such distributions. Further, the Gross Settlement Fund shall indemnify and hold

harmless the Settling Defendants and their counsel for Taxes (including, without limitation, taxes

payable by reason of any such indemnification payments).

      (b)    None of the Settling Defendants, the Released Parties or their respective

counsel shall have any responsibility for or liability whatsoever with respect to (i) any act,

omission or determination of Co-Lead Counsel, the Escrow Agent or the Claims Administrator, or

any of their respective designees or agents, in connection with the administration of the Settlement

or otherwise; (ii) the management, investment or distribution of the Gross Settlement Fund; (iii)

the Plan of Allocation; (iv) the determination, administration, calculation or payment of any claims

asserted against the Gross Settlement Fund; (v) any losses suffered by, or fluctuations in the value

of, the Gross Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses and/or

costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any

returns.

      (c)    Authorized Claimants shall provide any and all such information that the

Claims Administrator may reasonably require and is required by applicable law in respect of Taxes

and filings and reporting for Taxes, before any distributions are made to Authorized Claimants as

contemplated hereby, and the Claims Administrator may, without liability to the Authorized

Claimants, delay such distributions unless and until such information is provided in the form required by the Claims Administrator.

## ADMINISTRATION

9.      The Claims Administrator shall administer the Settlement subject to the jurisdiction of the Court for all members of the Class. To the extent reasonably necessary to effectuate the terms of the Settlement, Delphi shall provide to the Claims Administrator, without charge, all information from Delphi's transfer records concerning the identity of Class Members and their transactions. Such transfer information shall be in electronically readable form where available in such form.

10.      (a)    The Escrow Agent, acting solely in its capacity as escrow agent, shall be subject to the jurisdiction of the Court.

(b)    The Escrow Agent may pay from the Gross Settlement Fund, without further approval from Settling Defendants, all reasonable costs and expenses up to the amount of U.S. $500,000 associated with identifying and notifying the Class Members and effecting mailing of the Notice and Proof of Claim and publication of the Publication Notice to the Class, and the administration of the Settlement, including without limitation, the actual costs of printing and mailing the Notice and Proof of Claim, publication of the Publication Notice, reimbursements to nominee owners for forwarding the Notice and Proof of Claim to their beneficial owners, the reasonable administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims, and all reasonable fees and expenses of the Escrow Agent authorized by the Escrow Agreement. In the event that the Settlement is terminated, as provided for herein, notice and administration costs paid or incurred in connection with this paragraph shall not be returned to the persons who paid the Settlement Amounts.

(c)    The Escrow Agent may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this Stipulation, and shall not be liable for (and will be indemnified from the Gross Settlement Fund and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the Escrow Agent for any action taken or omitted by it, consistent with the terms hereof and those of any separate escrow agreements concerning the Gross Settlement Amount, in connection with the performance by it of its duties pursuant to the provisions of this Stipulation or order of the courts, except for its gross negligence or willful misconduct. If the Escrow Agent is uncertain as to its duties hereunder, the Escrow Agent may request that Lead Plaintiffs (and, prior to the Effective Date, Delphi) sign a document which states the action or non-action to be taken by the Escrow Agent. In the event the Settlement is terminated, as provided for herein, indemnified amounts and expenses incurred by the Escrow Agent in connection with this paragraph shall not be returned to the persons who paid the Settlement Amounts.

## BANKRUPTCY CASE ADMINISTRATION

11.    (a)    Delphi will make a motion, and will use reasonable efforts to cause such motion to be returnable at the September 2007 omnibus hearing date in the Bankruptcy Case, requesting an order from the Bankruptcy Court (i) certifying the Class under Bankruptcy Rule 7023 for purposes of this Settlement only, (ii) approving this Settlement, the settlement of the Delphi ERISA Action, and the Insurance Agreement, (iii) allowing the Section 510(b) Claim in the Bankruptcy Case; (iv) directing the Lead Plaintiffs and any other "named plaintiffs" to vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy

Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities

Action in favor of the Delphi Plan of Reorganization incorporating and consistent with this

Settlement; and (v) lifting the automatic stay as to those documents previously provided to Lead

Plaintiffs pursuant to that certain Agreed Order dated April 16, 2007 (Docket No. 7718 in the

Bankruptcy Case), which lifting shall be effective on the latter of the Court's preliminary approval

of this Settlement or the date the Bankruptcy Court enters an order approving this Settlement.

      (b)      Upon the Bankruptcy Court's entry of an order approving this Settlement,

and certifying the Class for purposes of this Settlement only as set forth in ¶11(a) above, Lead

Plaintiffs will withdraw, without prejudice, that certain proof of claim in the Bankruptcy Case,

number 14092 and dated July 31, 2006, and all other proofs of claim filed by Lead Plaintiffs on

behalf of the Class in the Bankruptcy Case, which proofs of claim shall be withdrawn with

prejudice on the Effective Date.

      (c)      Upon the Bankruptcy Court's entry of an order approving this Settlement,

and certifying the Class for purposes of this Settlement only as set forth in ¶11(a) above, any

individual proof of claim filed in the Bankruptcy Case by Lead Plaintiffs and any other named

plaintiff in the Delphi Securities Action, or on their behalf, in any capacity other than as

representatives of the Class and relating to the allegations asserted in the Delphi Securities Action

(including but not limited to the proofs of claim identified in Exhibit D hereto) shall be deemed to

be estimated, only for purposes of voting with respect to the Delphi Plan of Reorganization, in the

amount of One United States dollar (U.S. $1), and shall be classified pursuant to the Delphi Plan of

Reorganization in the separate debt or equity classes applicable to the Section 510(b) Claim

according to the type of security or securities on which such proof of claim is based, as disclosed

by Lead Plaintiffs in prior filings in the Delphi Securities Action, it being understood that such

proofs of claim shall be entitled to vote in more than one class as appropriate.

(d)    Nothing in this Stipulation shall limit, reduce or impact in any way any

individual, non-class claim asserted against Delphi in the Bankruptcy Case by Lead Plaintiffs or

any Class Member that is not based on or related to the Settled Claims, including but not limited to

claims based on any such Lead Plaintiff's or Class Member's status as a holder of any Delphi

Securities, which are not classified as a Section 510(b) Claim.

(e)    Provided that the Delphi Plan of Reorganization is consistent with and

incorporates the Settlement as reflected in this Stipulation, Lead Plaintiffs shall cast any and all

votes concerning the Delphi Plan of Reorganization under their control by virtue of a claim filed

by them or on their behalf or granted to them in the Bankruptcy Case, in either their individual or

representative capacity, including without limitation the Section 510(b) Claim in favor of and in

acceptance of the Delphi Plan of Reorganization; provided, however, that nothing herein shall

constitute an offer with respect to any securities or solicitation of acceptance of a chapter 11 plan.

Such Offer or solicitation only shall be made in compliance with all applicable securities laws

and/or provisions of the Bankruptcy Code.

(f)    Upon the Bankruptcy Court's entry of an order approving this Settlement,

the Underwriter Defendants shall withdraw, and shall be deemed to have withdrawn, all proofs of

claim filed in the Bankruptcy Case concerning any claims to indemnification, contribution or other

reimbursement from Delphi on account of or relating to the Delphi Securities Action, including but

not limited to the proofs of claim set forth in Exhibit E hereto; provided, however, that in the event

this Settlement is terminated, the Underwriter Defendants' proofs of claim in the Bankruptcy Case

that were withdrawn and deemed withdrawn pursuant to this Stipulation shall be reinstated and all

28

parties shall revert to their respective status concerning such claims as of immediately prior to execution of this Stipulation.

12.     Upon the Effective Date, other than the Section 510(b) Claim, the Lead Plaintiffs and any other "named plaintiff" in the Delphi Securities Action will withdraw with prejudice and will be deemed to have withdrawn any proof of claim relating to the allegations asserted in the Delphi Securities Action and filed in the Bankruptcy Court by them or on their behalf in either their individual or representative capacity (including but not limited to the proofs of claim identified in Exhibit D hereto).

## ATTORNEYS' FEES AND EXPENSES

13.     Co-Lead Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses payable from the Gross Settlement Fund. All Plaintiffs' Counsel shall further provide to the Court, as part of the motion for approval of the Settlement, all necessary information required by the Court concerning the total award of attorneys' fees and reimbursement of expenses to be payable from the Gross Settlement Fund. Such amounts as are awarded by the Court to Co-Lead Counsel from the Gross Settlement Fund shall be payable immediately upon award (and, in the case of the Delphi Net Consideration, upon Delphi's distribution to the Escrow Agent pursuant to this Stipulation), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligations to make appropriate refunds or repayments to the Gross Settlement Fund plus accrued interest at the same rate as is earned by the Gross Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed or for whatever reason the Settlement is terminated pursuant to ¶ 30 hereof. Settling Defendants shall have no obligations whatsoever with

respect to any attorneys' fees or expenses incurred by Plaintiffs' Counsel beyond those awarded by

the Court to Plaintiffs' Counsel, which shall be payable solely from the Gross Settlement Fund.

### CLASS DISTRIBUTION ORDER/ADMINISTRATION EXPENSES

14.    Co-Lead Counsel will apply to the Court for an order (the "Class Distribution

Order") approving the Claims Administrator's administrative determinations concerning the

acceptance and rejection of the claims submitted herein, and approving any fees and expenses not

previously applied for relating to the administration of the Settlement, including the fees and

expenses of the Claims Administrator, and, only if the Effective Date and Bankruptcy Effective

Date have both occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

### DISTRIBUTION TO AUTHORIZED CLAIMANTS

15.    The Claims Administrator shall determine each Authorized Claimant's pro rata

share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as

defined in the plan of allocation described in the Notice annexed hereto as Tab 1 to Exhibit A (the

"Plan of Allocation")).

16.    It is understood and agreed by the parties that the proposed Plan of Allocation,

including, but not limited to, any adjustments to any Authorized Claimant's claim set forth herein,

is not part of the Stipulation and is to be considered by the Court separately from the Court's

consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or

proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation

or affect the Finality of the Court's Judgment approving the Stipulation and the Settlement set

forth herein, or any other orders entered pursuant to the Stipulation.

17.    Each Authorized Claimant shall be allocated a pro rata share of the Net Settlement

Fund based on his, her or its recognized claim compared to the total recognized claims of all

Authorized Claimants. This is not a claims-made settlement. Delphi, the certain insurers party to

the Insurance Agreement, and the Underwriter Defendants shall not be entitled to receive any of

the Gross Settlement Fund following the later of the Effective Date and Bankruptcy Effective Date.

The Settling Defendants shall have no involvement in reviewing or challenging claims filed with

the Claims Administrator in this Settlement.

## ADMINISTRATION OF THE SETTLEMENT

18.    Any Class Member who does not submit a valid Proof of Claim will not be entitled

to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound by all of

the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered

in the Delphi Securities Action and the releases provided for herein, and will be barred from

bringing any action against the Released Parties concerning the Settled Claims.

19.    The Claims Administrator shall process the Proofs of Claim and, after the

Bankruptcy Effective Date and entry of the Class Distribution Order, shall distribute the Net

Settlement Fund to Authorized Claimants.  Except for the obligation of Delphi, the certain insurers

party to the Insurance Agreement, and the Underwriter Defendants to pay or distribute or cause to

be paid the Settlement Amounts to the Escrow Agent in accordance with ¶ 7(a) and (b) hereof, and

for Delphi to (i) cooperate in the production of information with respect to the identification of

Class Members from its shareholder transfer records, as provided herein and (ii) comply with ¶37,

the Released Parties shall have no liability, obligation or responsibility for the administration of

the Settlement or disbursement of the Net Settlement Fund.  Co-Lead Counsel shall have the right,

but not the obligation, to advise the Claims Administrator to waive what Co-Lead Counsel deem to

be formal or technical defects in any Proofs of Claim submitted in the interests of achieving

substantial justice.

20.    For purposes of determining the extent, if any, to which a Class Member shall be

entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each Class Member shall be required to submit a Proof of Claim (see attached Tab 2 to Exhibit A), supported by such documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable;

(b)    All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by Order of the Court.  Any Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to the Settlement (unless, by court Order, a later submitted Proof of Claim by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in the Delphi Securities Action, and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Settled Claims.  Provided that it is received before the first motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, which shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)    Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the claimant in order to attempt to remedy the curable deficiencies in the Proof of Claim submitted.

The Claims Administrator shall notify, in a timely fashion and in writing, each claimant whose

Proof of Claim they propose to reject in whole or in part, setting forth the reasons therefor, and

shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review

by the Court if the claimant so desires and complies with the requirements of subparagraph (e)

below; and

   (e) If any claimant whose claim has been rejected in whole or in part desires to

contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the

notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and

statement of reasons indicating the claimant's grounds for contesting the rejection along with any

supporting documentation, and requesting a final review thereof by the Court.  If a dispute

concerning a claim cannot be otherwise resolved, Co-Lead Counsel shall thereafter present the

request for review to the Court.

  21. The administrative determinations of the Claims Administrator accepting and

rejecting claims shall be presented to the Court, for approval in the Class Distribution Order.

  22. Each claimant shall be deemed to have submitted to the jurisdiction of the Court,

and the claim will be subject to investigation and discovery under the Federal Rules of Civil

Procedure, provided that such investigation and discovery shall be limited to that claimant's status

as a Class Member and the validity and amount of such claimant's claim.  No discovery shall be

allowed on the merits of the Delphi Securities Action or the Settlement in connection with

processing of the Proofs of Claim.

  23. Payment pursuant to the Settlement shall be deemed final and conclusive against all

Class Members.  All Class Members whose claims are not approved pursuant to the Class

Distribution Order shall be barred from participating in distributions from the Net Settlement Fund,

but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including

the terms of the Judgment to be entered in the Delphi Securities Action, and the releases provided

for herein, and will be barred from bringing any action against the Released Parties concerning the

Settled Claims.

24.     All proceedings with respect to the administration, processing and determination of

claims described by ¶ 20 hereof, and the determination of all controversies relating thereto,

including disputed questions of law and fact with respect to the validity of claims, shall be subject

to the jurisdiction of the Court.

25.     The Net Settlement Fund shall be distributed to Authorized Claimants by the

Claims Administrator, only after the later of the Effective Date and Bankruptcy Effective Date and

after all Claims have been processed, and all claimants whose Claims have been rejected or

disallowed, in whole or in part, have been notified and provided the opportunity to contest with the

Claims Administrator such rejection or disallowance.

## TERMS OF ORDER FOR NOTICE AND HEARING

26.     (a)     Promptly after this Stipulation has been fully executed, Co-Lead Counsel

shall apply to the Court for entry of an Order for Notice and Hearing, substantially in the form

annexed hereto as Exhibit A, which Order shall, among other provisions, certify the Class for

settlement purposes only, and direct the Lead Plaintiffs and any other "named plaintiffs" to vote all

chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy

Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities

Action in favor of the Delphi Plan of Reorganization consistent with and incorporating this

Settlement.

(b)     The mailing of the Notice and publication of the Publication Notice shall

not occur until the Order for Notice and Hearing been entered.

## TERMS OF ORDER AND FINAL JUDGMENT

27.    If the Settlement contemplated by this Stipulation is approved by the Court,

Co-Lead Counsel and Settling Defendants' Counsel shall request that a Judgment be entered in the

form annexed hereto as Exhibit B.

## SUPPLEMENTAL AGREEMENT

28.    Simultaneously herewith, Lead Plaintiffs' Counsel and Settling Defendants'

counsel are executing a "Supplemental Agreement." Unless otherwise directed by the Court, the

Supplemental Agreement will not be filed with the Court. Pursuant to the Supplemental

Agreement, a Settling Defendant may terminate this Settlement if potential Class Members who

purchased in the aggregate in excess of a certain amount of Delphi Securities during the Class

Period (the "Opt-out Threshold") elect to opt out of the Settlement. The Opt-out Threshold may be

disclosed to the Court for purposes of the approval of the Settlement, as may be required by the

Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the

practices of the Court so as to maintain the Opt-out Threshold as confidential. In the event of a

termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation shall

become null and void and of no further force and effect, with the exception of the provisions of ¶

32 which shall continue to apply.   The Supplemental Agreement also sets forth Delphi's

agreement with respect to the handling of proofs of claim of putative Class Members that opt out

of the Class, and the discovery obligations of Delphi and the Underwriter Defendants.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

29.    The "Effective Date" of the Settlement shall be the date when all the following

conditions of settlement shall have occurred:

(a)    payment of Insurance Payment and the Underwriter Defendants' Payment;

(b)    approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(c)    entry by the Court of a Judgment, in all material respects in the form set forth in Exhibit B annexed hereto, and the expiration of any time for appeal or review of such Judgment, or, if any appeal is filed, after such Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari, or, in the event that the Court enters a Judgment in a form other than that provided above ("Alternative Judgment") and none of the parties hereto elect to terminate this Settlement, the date that such Alternative Judgment becomes Final;

(d)    approval by the Court of the settlement in the Delphi ERISA Action becoming Final;

(e)    entry by the Bankruptcy Court of an order(s) approving the Settlement, and the settlement in the Delphi ERISA Action, and such order(s) becoming Final;

(f)    approval by the Bankruptcy Court of the Insurance Agreement becoming Final;

(g)    approval by the Court of the Bar Order provisions in the Judgment approving the Settlement becoming Final;

(h)    distribution of the Delphi Net Consideration, pursuant to this Stipulation;

(i)    expiration of the time to exercise the termination rights provided in ¶ 30 hereof.

30.    Lead Plaintiffs and Settling Defendants shall each have the right to terminate the Settlement and thereby this Stipulation by providing written notice of their election to do so ("Termination Notice") to one another hereto within thirty (30) days of any of the following:  (a)

the Court declining to enter the Order for Notice and Hearing in any material respect; (b) the

Court refusing to approve this Settlement as set forth in this Stipulation; (c) the Court declining

to enter the Judgment in any material respect or entering an Alternative Judgment; (d) the Court

declining to enter in any material respect the Bar Order provisions in the Court's Judgment or

order approving the Settlement; (e) the Bankruptcy Court refusing to approve this Settlement or

the Insurance Agreement; (f) the date upon which a Judgment is modified or reversed in any

material respect by any level of appellate court; (g) the date upon which an Alternative Judgment

is modified or reversed in any material respect by any level of appellate court; (h) the date upon

which the settlement in the Delphi ERISA Action is terminated; or (i) the failure of the Insurance

Payment, the Insurance Remainder Payment, or Underwriter Defendants' Payment to be made

pursuant to this Stipulation; provided, however, that all termination rights provided under this

Stipulation shall expire upon Delphi's distribution of the Delphi Net Consideration pursuant to

this Stipulation.

31.    Notwithstanding anything else in this Stipulation, any Settling Defendants may, in

accordance with the terms set forth in the Supplemental Agreement, and in his, her or its sole and

unfettered discretion, elect in writing to terminate the Settlement and this Stipulation if the Settling

Defendants' Opt-out Threshold is exceeded or as otherwise provided in the Supplemental

Agreement.

32.    Except as otherwise provided herein, in the event the Settlement is terminated, the

parties to this Stipulation shall be deemed to have reverted to their respective status in the Delphi

Securities Action and, with respect to each other, in the Bankruptcy Case, immediately prior to the

execution of this Stipulation and, except as otherwise expressly provided, the parties shall proceed

in all respects as if this Stipulation and any related orders had not been entered.  Furthermore,

37

within ten (10) business days following any termination of this Settlement, the Escrow Agent shall

pay an amount equal to the Settlement Amounts previously paid by Delphi, the Underwriter

Defendants, and/or the certain insurers party to the Insurance Agreement, as the case may be, to

Delphi, the Underwriter Defendants, and/or the certain insurers party to the Insurance Agreement,

as the case may be, together with any interest or other income earned thereon or in respect thereof,

less any Taxes paid or due with respect to such income, less any amounts required to be paid to the

Escrow Agent pursuant to the relevant escrow agreement, and less any reasonable costs of

administration and notice actually incurred and paid or payable from the Settlement Amount (as

described in ¶ 10 hereof), less any applicable withholding taxes.

## NO ADMISSION OF WRONGDOING

33.    This Stipulation, whether or not consummated, and any proceedings taken pursuant

to it:

(a)    shall not be offered or received against any of the Settling Defendants as

evidence of or construed as or deemed to be evidence of any presumption, concession, or

admission by any of those Settling Defendants with respect to the truth of any fact alleged by any

of the plaintiffs or the validity of any claim that has been or could have been asserted in the Delphi

Securities Action or in any litigation, or the deficiency of any defense that has been or could have

been asserted in the Delphi Securities Action or in any litigation, or of any liability, negligence,

fault, or wrongdoing of the Settling Defendants;

(b)    shall not be offered or received against the Settling Defendants as evidence

of a presumption, concession or admission of any fault, misrepresentation or omission with respect

to any statement or written document approved or made by any of the Settling Defendants;

(c)    shall not be offered or received against the Settling Defendants as evidence

of a presumption, concession or admission with respect to any liability, negligence, fault or

wrongdoing, or in any way referred to for any other reason as against any of the Settling

Defendants, in any other civil, criminal or administrative action or proceeding, other than such

proceedings as may be necessary to effectuate the provisions of this Stipulation; provided,

however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to

effectuate the liability protection granted them hereunder;

        (d)    shall not be construed against any of the Settling Defendants as an

admission or concession that the consideration to be given hereunder represents the amount that

could be or would have been recovered after trial; and

        (e)    shall not be construed as or received in evidence as an admission,

concession or presumption against Lead Plaintiffs or any of the Class Members that any of their

claims are without merit, or that any defenses asserted by the Settling Defendants have any merit,

or that damages recoverable under the Delphi Securities Action would not have exceeded the

Gross Settlement Fund.

## MISCELLANEOUS PROVISIONS

34.    All of the exhibits attached hereto are hereby incorporated by reference as though

fully set forth herein.

35.    In the event that the Lead Plaintiffs determine to compromise and settle any claim

against any party other than a Non-Settling Defendant or EDS arising from or relating to the

Delphi Securities Action, Lead Plaintiffs shall cause any such settlement to bar that party from

making any claims for indemnification and/or contribution against any of the Released Parties or

otherwise seeking indemnification and/or contribution from any of the Released Parties.

36.    Delphi, to the best of its knowledge, represents that it has disclosed to Lead

Plaintiffs, all claims that Delphi has identified as timely filed proofs of claim in the Bankruptcy

Case filed by or on behalf of persons asserting claims in the Bankruptcy Case based on Settled Claims.

37.    If Lead Plaintiffs determine that it is appropriate to distribute Delphi Plan Currency, other than cash, to the Authorized Claimants, Delphi will cooperate by communicating and providing directives, as appropriate, to its transfer agent. If Delphi undertakes any obligation pursuant to this paragraph that results in a payment obligation to the transfer agent, or otherwise, such payment obligation will be satisfied from the Gross Settlement Fund.

38.    The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Lead Plaintiffs and Settling Defendants agree not to assert in any forum that the Delphi Securities Action was brought by the plaintiffs or defended by Settling Defendants in those actions in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Delphi Securities Action. The parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

39.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all parties hereto or their successors-in-interest.

40.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

41.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and that Court shall retain jurisdiction for the

purpose of entering orders providing for awards of attorneys' fees and expenses to Co-Lead Counsel and enforcing the terms of this Stipulation.

42.    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

43.    This Stipulation and its exhibits, the Supplemental Agreement, and any related escrow agreements constitute the entire agreement concerning the Settlement of the Delphi Securities Action, and no representations, warranties, or inducements have been made by or on behalf of any party hereto concerning this Stipulation, its exhibits, and the Supplemental Agreement other than those contained and memorialized in such documents.

44.    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

45.    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

46.    The construction and interpretation of this Stipulation and the Supplemental Agreement shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law governs.

47.    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Stipulation.

48.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority

to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

49.    Lead Plaintiffs and Settling Defendants agree to cooperate fully with one another in seeking (i) Court approval of the Order for Notice and Hearing, the Stipulation and the Settlement, and (ii) confirmation by the Bankruptcy Court of the Delphi Plan of Reorganization (assuming the Delphi Plan of Reorganization is consistent with the terms of this Stipulation) and any request made to the Bankruptcy Court to approve this Settlement and the Insurance Agreement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement, confirmation by the Bankruptcy Court of the Delphi Plan of Reorganization (again assuming the Delphi Plan of Reorganization is consistent with the terms of this Stipulation), and final approval of any request made to the Bankruptcy Court to approve this Settlement.

DATED:  August 31, 2007

> **BERNSTEIN LITOWITZ BERGER &
> GROSSMANN LLP**
>
> By: _Hank Green_
>     Max W. Berger
>     John P. Coffey
>     Jeffrey N. Leibell
>     Hannah E. Greenwald
> 1285 Avenue of the Americas
> New York, New York 10019
> Telephone:  (212) 554-1400
> Facsimile:  (212) 554-1444
>
> **Co-Lead Counsel for Lead Plaintiffs**

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**

By: _____

    Michael K. Yarnoff
    Sean M. Handler
    Kay E. Sickles
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7056
Facsimile: (610) 667-7706

**Co-Lead Counsel for Lead Plaintiffs**


**NIX PATTERSON & ROACH, L.L.P.**

By: _____

    Bradley E. Beckworth
    Jeffrey J. Angelovich
    Susan Whatley
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415

**Co-Lead Counsel for Lead Plaintiffs**


**GRANT & EISENHOFER P.A.**

By: _____

    Stuart M. Grant
    James J. Sabella
    Sharan Nirmul
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500

**Co-Lead Counsel for Lead Plaintiffs**

SHEARMAN & STERLING LLP

By: _____
    Stuart J. Baskin
    Brian H. Polovoy
    Marc D. Ashley
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

**Counsel for Delphi Corporation,
Delphi Trust I, Delphi Trust II, Robert H. Brust,
Virgis W. Colbert, David N. Farr, Bernd
Gottschalk, Susan A. McLaughlin,
Oscar de Paula Bernardes Neto, Cynthia A.
Niekamp, John D. Opie, Roger S. Penske, Donald
L. Runkle, John D. Sheehan, and Patricia C.
Sueltz**

**BAKER BOTTS L.L.P.**

By: _____  (w/consent
    William H. Jeffress, Jr.                MPA on
    Bridget M. Moore                        8/31/07)
    Michael G. Pattillo, Jr.
    Joe R. Caldwell, Jr.
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7788
Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg III**

**O'MELVENY & MYERS LLP**
                                        per consent
By: _____  (MPA 8/31/07)
    Robert N. Eccles
    Robert M. Stern
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone: (202) 383-5315
Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

44

**PEPPER HAMILTON LLP**

By: _____
        Matthew J. Lund
100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

**Counsel for Paul R. Free**


**MILLER, CANFIELD, PADDOCK and STONE, PLC**

By: _____
        Thomas W. Cranmer
        Matthew P. Allen
150 W. Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420

**Counsel for John G. Blahnik**


**SIDLEY AUSTIN LLP**

By: _____
        A. Robert Pietrzak
        Andrew W. Stern
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5397
Facsimile: (212) 839-5599

**Counsel for Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC**

45

# EXHIBIT A

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

---------------------------------------------------------x
                                                         :
                                                         :
IN RE: DELPHI CORPORATION              :    MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"       :    Master Case No. 05-md-1725
LITIGATION                             :    Hon. Gerald E. Rosen
                                                         :
                                                         :    This Document Relates to:
                                                         :    In Re: Delphi Corp. Securities Litig.
                                                         :    No. 06-10026, and Case Nos.
                                                         :    06-10025, 06-10027, 06-10028,
                                                         :    06-10029, 06-10030, 06-10031, and
                                                         :    06-10032
                                                         :    -------------------------------------------
                                                         :
---------------------------------------------------------x

### [PROPOSED] ORDER FOR NOTICE AND HEARING

Presented to the Court for preliminary approval pursuant to Rule 23 of the Federal Rules

of Civil Procedure is the Settlement of the above-captioned actions (the "Delphi Securities

Action") by and between Teachers' Retirement System of Oklahoma, Public Employees'

Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting

Pensioenfonds ABP (collectively, "Lead Plaintiffs"), individually and on behalf of the Class, and

the following defendants in the Delphi Securities Action: (i) Delphi Corporation ("Delphi"), (ii)

Delphi Trust I and Delphi Trust II; (iii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust,

Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A.

McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S.

Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively, these

individuals will be referred to herein as the "Delphi Officer and Director Defendants"), and (iv)

**EXHIBIT A**

Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated,

Citigroup Global Markets Inc. ,, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First

Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley &

Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the

"Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and

Director Defendants and the Underwriter Defendants are collectively referred to as the "Settling

Defendants");

WHEREAS the terms of the Settlement are set forth in a Stipulation and Agreement of

Settlement With Certain Defendants, that was executed by the Settling Parties on August 31,

2007 (the "Stipulation").    The Settlement was reached after extensive arm's-length and

protracted negotiations that included multiple mediation conferences before a Court-appointed

special master.    Approval of the Settlement would result in dismissal of the Delphi Securities

Action with prejudice with respect to the Settling Defendants.    The Delphi Securities Action

shall continue with respect to defendants Deloitte & Touche LLP, JP Morgan Chase & Co. (as

the successor to Bank One Corporation), SETECH, Inc. and BBK (collectively, the "Non-

Settling Defendants");

NOW, upon consent of the Settling Parties, after review and consideration of the

Stipulation filed with the Court and the exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED that:

1.    The Court, for purposes of this Order for Notice and Hearing (the "Preliminary

Approval Order"), adopts all defined terms as set forth in the Stipulation.

2.    The Court hereby preliminarily certifies, for purposes of effectuating this

Settlement, a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) consisting of all persons and

entities who purchased or otherwise acquired publicly traded securities of Delphi, including

securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities") between March 7,

2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and

entities who acquired shares of Delphi common stock and preferred stock in the secondary

market and all persons or entities who acquired debt securities of Delphi in the secondary market

or pursuant to a registration statement (the "Class" or "Class Members"). Excluded from the

Class are: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and

Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any

officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal

representatives, heirs, successors and assigns of any such excluded party. Also excluded from

the Class are any putative members of the Class who exclude themselves by timely requesting

exclusion in accordance with the requirements set forth in the Notice of Proposed Settlement

With Certain Defendants, Motion for Attorneys' Fees and Reimbursement of Expenses and

Fairness Hearing ("Notice") to be sent to the Class.

3.      For purposes of settlement only, the Lead Plaintiffs, on behalf of all Class

Members, are appointed as Class Representatives. The law firms of Bernstein Litowitz Berger &

Grossmann LLP; Nix, Patterson & Roach, L.L.P.; Grant & Eisenhofer, P.A.; and Schiffrin

Barroway Topaz & Kessler, LLP, are jointly appointed as Class counsel ("Co-Lead Counsel").

4.      With respect to the Class, this Court preliminarily finds and concludes that the

requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied as: (a) the members of the Class

are so numerous that joinder of all Class Members is impracticable; (b) there are questions of law

and fact common to the Class which predominate over any individual questions; (c) the claims of

the Lead Plaintiffs are typical of the claims of the Class; (d) the Lead Plaintiffs and Co-Lead

Counsel have fairly and adequately represented and protected the interests of all of the Class

Members; and (e) a class action is superior to other available methods for the fair and efficient

3

adjudication of the controversy, considering: (i) the interests of the members of the Class in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class, (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the class action.

5.    Co-Lead Counsel are authorized to act on behalf of the Class with respect to all acts required by, or which may be undertaken pursuant to, the Stipulation or such other acts that are reasonably necessary to consummate the proposed Settlement set forth in the Stipulation.

6.    The action captioned *Bernstein v. Delphi Trust I, et al.*, No. 2:06-CV-10025 (GER) (formerly No. 9:05-CV-80307 (KLR) (S.D. Fla.)) (the "Bernstein Action), is hereby consolidated in the Delphi Securities Action.

7.    The Court appoints The Garden City Group, Inc. as Claims Administrator to supervise and administer the notice and claims procedures as set forth in the Stipulation. The Settling Parties and their counsel shall not be liable for any act or omission of the Claims Administrator.

8.    The Escrow Agent is authorized and directed to prepare any tax returns and any other tax reporting for or in respect of the Gross Settlement Fund and paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof as contemplated by the Stipulation, without further order of the Court.

9.    The Court hereby dismisses without prejudice the Complaint as against Thomas Wyman and Shoichiro Irimajiri. Unless opposed by Lead Plaintiffs, the dismissal of the Complaint against these two Defendants shall be converted to a dismissal with prejudice pursuant to the Order and Final Judgment upon the Effective Date of the Settlement.

10.     Lead Plaintiffs and any other "named plaintiffs" shall vote all chapter 11 ballots provided to them pursuant to the solicitation procedures order in the Bankruptcy Case by virtue of the Section 510(b) Claim or any proof of claim related to the Delphi Securities Action in favor of the Delphi Plan of Reorganization consistent with and incorporating this Settlement.

11.     The Court preliminarily approves:   (1) the Settlement of the Delphi Securities Action with respect to the Settling Parties as set forth in the Stipulation; and (2) the proposed Plan of Allocation described in the Notice, subject to the right of any Class Member to challenge the fairness, reasonableness, and adequacy of the Stipulation or the proposed Plan of Allocation, and to show cause, if any exists, why a final judgment dismissing the Delphi Securities Action against the Settling Defendants only based on the Stipulation should not be ordered herein after due and adequate notice to the Class has been given in conformity with this Order.

12.     Pursuant to Fed.R.Civ.P. Rule 23(e), a hearing (the "Fairness Hearing") shall be held on November 13, 2007, at _____ ___.m., in the United States District Court for the Eastern District of Michigan, Southern Division, the Honorable Gerald E. Rosen presiding, to:

a.      determine whether the Settlement should be approved by the Court as fair, reasonable, adequate, and in the best interests of the Class;

b.      determine whether the Plan of Allocation for the proceeds of the Settlement should be approved by the Court as fair and reasonable;

c.      determine whether the Judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing the Delphi Securities Action against the Settling Defendants with prejudice and extinguishing and releasing all Settled Claims and barring all Barred Claims (as defined in the Stipulation);

d.      determine whether the Class should be finally certified for settlement purposes pursuant to Fed.R.Civ.P. Rules 23(a) and (b);

5

    e.  rule on Co-Lead Counsel's application for an award of attorneys' fees and

the reimbursement of litigation expenses; and

    f.  rule on such other matters as the Court may deem appropriate.

  13.  The Court reserves the right to adjourn the Fairness Hearing or any adjournment

thereof, including the consideration of the application for attorneys' fees and reimbursement of

litigation expenses, without further notice of any kind to Class Members.

  14.  The Court reserves the right to approve the Settlement at or after the Fairness

Hearing with such modification as may be consented to by the Settling Parties and without

further notice to the Class.

  15.  The Claims Administrator shall make reasonable efforts to identify all persons

who are members of the Class, including beneficial owners whose Delphi Securities are held by

banks, brokerage firms, or other nominees. Delphi, or such other agent authorized to do so, shall

produce or will cause to be produced within five (5) calendar days of the Court's entry of this

Order the information from transfer or other records required by the Claims Administrator to

send Notice to the persons who can be identified through those same records (the "Notice

Information"). The Notice Information should, if practicable, be provided in an MS Excel

version 10 or 11 (preferred) or in ASCII fixed length field text files. Control characters such as

Carriage Return/Line Feed should be appended to each line in the text files. Delphi shall bear all

costs or expenses associated with providing the Claims Administrator with the above-described

Notice Information from Delphi and its transfer agent's records. The Claims Administrator shall

send the Notice and the Proof of Claim, substantially in the forms of Exhibits A-1 and A-2, by

United States mail, postage pre-paid, to all reasonably ascertainable members of the Class, at

their last known address appearing in the Notice Information. Such mailing shall occur no later

than the "Notice Date," which shall be no later than ten (10) calendar days after the Claims Administrator receives the Notice Information.

16.    Pursuant to the Notice, each nominee who receives the Notice shall either: (1) send the Notice and Proof of Claim to Class Members for which they act as nominee by first class mail within seven (7) calendar days after the nominee receives the Notice; or (2) send a list of the names and addresses of such beneficial owners to the Claims Administrator within seven (7) calendar days after the nominee receives the Notice and, in the event of the latter, the Claims Administrator shall send by first class mail the Notice and Proof of Claim to all Class Members who are on the list received from the nominee.  The Claims Administrator shall, if requested, reimburse banks, brokerage houses, or other nominees for their reasonable out-of-pocket expenses incurred in providing notice to beneficial owners who are Class Members, which expenses would not have been incurred except for the sending of such notice, subject to further order of this Court with respect to any dispute concerning such compensation.  Co-Lead Counsel shall file with the Court and serve upon Settling Defendants' counsel no later than seven (7) days prior to the Fairness Hearing an affidavit or declaration describing the efforts taken to comply with this order and stating that the mailings have been completed in accordance with the terms of this order.

17.    Within two (2) calendar days of the Notice Date, Co-Lead Counsel shall cause to be published a Publication Notice, substantially in the form of Exhibit A-3 to the Stipulation, once in the national edition of *The Wall Street Journal,* once in *Investor's Business Daily,* once in *The Detroit Free Press* and once over the *PR Newswire.*  Co-Lead Counsel shall file with the Court and serve upon Settling Defendants' Counsel no later than seven (7) days prior to the Fairness Hearing an affidavit or declaration stating that the Publication Notice has been published in accordance with the terms of this order.

7

18.    The form and content of the Notice, the Proof of Claim, and the Publication

Notice, annexed hereto as Exhibits A-1, A-2 and A-3, respectively, and the method set forth

herein of notifying the Class of the Settlement and its terms and conditions, meet the

requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the

Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78u-4(a)(7), including by the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), and due process, constitute the best

notice practicable under the circumstances, and shall constitute due and sufficient notice to all

persons and entities entitled thereto.

19.    Any member of the Class who timely and properly objects to the Settlement, the

Plan of Allocation, and/or the application for attorneys' fees and reimbursement of expenses, or

who otherwise wishes to be heard, may appear in person or by his, her, or its attorney, at his, her,

or its own expense, at the Fairness Hearing and present evidence or argument that may be proper

or relevant; *provided, however,* that no person other than the parties and their counsel shall be

heard, and no papers, briefs, pleadings, or other documents submitted by any person shall be

considered by the Court unless on or before fourteen (14) days before the Fairness Hearing, such

person files with the Court and serves upon counsel listed below:   (1) a statement of such

person's objections to any matters before the Court concerning this Settlement; (2) the grounds

therefor or the reasons that such person desires to appear and be heard, as well as all documents

or writings such person desires the Court to consider; (3) whether that person intends to present

any witnesses; and (4) the person's purchases and sales of Delphi Securities made during the

Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or

received per Delphi Security for each such purchase or sale, and whether such person continues

to hold such Delphi Securities at the time the statement of objection is served.   Such filings shall

be served upon the Court and the following counsel:

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Sean Handler
280 King of Prussia Road
Radnor, PA 19087

**NIX, PATTERSON & ROACH, L.L.P.**
Bradley E. Beckworth
Jeffrey J. Angelovich
205 Linda Drive
Daingerfield, Texas 75638

**GRANT & EISENHOFER P.A.**
Stuart M. Grant
James J. Sabella
485 Lexington Avenue
New York, New York 10017

**BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP**
Max Berger
John P. Coffey
1285 Avenue of the Americas
New York, New York 10019

*Co-Lead Counsel for Lead Plaintiffs*

**SHEARMAN & STERLING LLP**
Stuart J. Baskin
Brian H. Polovoy
599 Lexington Ave.
New York, New York 10022-6069

*Counsel for Delphi, Delphi Trust I and Delphi Trust II, and certain Delphi Officer and Director Defendants*

SIDLEY AUSTIN LLP
Andrew W. Stern
787 Seventh Avenue
New York, New York 10019

*Counsel for the Underwriter Defendants*

**MILLER, CANFIELD, PADDOCK and STONE, PLC**
Thomas W. Cranmer, Esq.
Matthew P. Allen, Esq.
150 W. Jefferson, Suite 2500
Detroit, MI 48226

*Counsel for certain of the Delphi Officer and Director Defendants*

20.    Any Class Member who does not object to the Settlement, the Bar Order, and/or the Plan of Allocation in the manner prescribed in the Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement or the Order and Final Judgment to be entered approving the Settlement, the Bar Order, and the Plan of Allocation.

21.    Any person falling within the definition of the Class may, upon request, be excluded from the Class. Any such person must submit to the Claims Administrator a request for exclusion ("Request for Exclusion") so that it is received by the Claims Administrator on or before fourteen (14) days before the Fairness Hearing. A Request for Exclusion must state: (1) the name, address, and telephone number of the person requesting exclusion; (2) the person's purchases and sales of Delphi Securities made during the Class Period, including the dates, the number of securities purchased or sold, the price(s) paid or received per Delphi Security for each such purchase or sale, and whether such person continues to hold such Delphi Securities at the time the statement of objection is served; (3) the amount or number of Delphi Securities held as of the beginning of the Class Period on March 7, 2000; and (4) that the person wishes to be

10

excluded from the Class. All persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph and the Notice shall have no rights under the Stipulation and shall not share in the distribution of the Net Settlement Fund.

22.    Any Class Member who wishes to participate in the Net Settlement Fund must submit a valid Proof of Claim to the Claims Administrator, at the address indicated in the Notice, postmarked not later than January 15, 2008. Such deadline may be further extended by Court order. Proofs of Claim shall be deemed to have been submitted when postmarked, if mailed by first class, or registered or certified mail, postage prepaid, addressed in accordance with the instructions given in the Proof of Claim. All other Proofs of Claim shall be deemed to have been submitted at the time they are actually received by the Claims Administrator. To be valid, a Proof of Claim must: (1) be completed in a manner that permits the Claims Administrator to determine the eligibility of the claim as set forth in the Proof of Claim; (2) include the release by the Claimant of all Released Parties as set forth in the Stipulation; and (3) be signed with an affirmation that the information is true and correct. All Class Members who do not submit valid and timely Proofs of Claim shall be forever barred from receiving any payments from the Net Settlement Fund, but will in all other respects be subject to and bound by the provisions of the Stipulation and the Order and Final Judgment, if entered.

23.    If this Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement (including any modification thereof) made with the consent of the parties as provided for in the Stipulation, any class certification herein, and any actions taken or to be taken in connection therewith (including this Order and any judgment entered herein), shall be terminated and shall become void and of no further force and effect except as set forth in the Stipulation.

11

24.    Pending final determination of whether the Settlement should be approved, all proceedings in the Delphi Securities Action against the Released Parties, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court. Pending final determination whether the Settlement should be approved, Lead Plaintiffs and all members of the Class are barred and enjoined from commencing, prosecuting, continuing, or asserting any action asserting any claims against the Released Parties that are or relate in any way to the Settled Claims as defined in the Stipulation.

25.    The contents of the Gross Settlement Fund held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the contents of those funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

26.    Neither the Stipulation nor any provisions contained in the Stipulation, nor any negotiations, statements, or proceedings in connection therewith, nor any action undertaken pursuant thereto shall be construed as, or deemed to be evidence of, an admission or concession on the part of any Settling Defendant or any other person of any liability or wrongdoing by them, or any of them, and shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature, and shall not be construed as, or deemed to be evidence of, an admission or concession that Lead Plaintiffs, any member of the Class, or any other person, has or has not suffered any damage.

27.    Any party making submissions to the Court in support of approval of the Settlement or the Plan of Allocation, or in support of Co-Lead Counsel's application for an

12

award of attorneys' fees and reimbursement of litigation expenses, shall do so by seven (7) calendar days before the date scheduled for the Fairness Hearing.

28.    The Court authorizes payment out of the Gross Settlement Fund of notice and administration expenses in accordance with the Stipulation.

29.    The passage of title and ownership of the Gross Settlement Fund to the Escrow Agent in accordance with the terms of the Stipulation is approved. No person that is not a Class Member or Co-Lead Counsel shall have any right to any portion of, or in the distribution of, the Net Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

13

30.    The Court may, for good cause, extend any of the deadlines set forth in this order without further notice to Class Members.

SIGNED this _____ day of September 2007.


_____
**GERALD E. ROSEN**
**UNITED STATES DISTRICT JUDGE**

14

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

```
-----------------------------------------------------------------x
                                                                 :
                                                                 :
IN RE: DELPHI CORPORATION                                        :     MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"                                 :     Master Case No. 05-md-1725
LITIGATION                                                       :     Hon. Gerald E. Rosen
                                                                 :
                                                                 :
                                                                 :     This Document Relates to:
                                                                 :     In Re: Delphi Corp. Securities Litig.
                                                                 :     No. 06-10026, and Case Nos.
                                                                 :     06-10025, 06-10027, 06-10028,
                                                                 :     06-10029, 06-10030, 06-10031, and
                                                                 :     06-10032
                                                                 :     ----------------------------------------------------
-----------------------------------------------------------------x
```

<u>**NOTICE OF PROPOSED SETTLEMENT WITH CERTAIN DEFENDANTS, MOTION FOR ATTORNEYS'
FEES AND REIMBURSEMENT HEARING
(THE "NOTICE")**</u>

**This Notice provides you with important information concerning the settlement with certain defendants (the "Settlement") in the above-captioned action (the "Delphi Securities Action"), which has been brought against Delphi Corporation ("Delphi") and other persons and entities (identified below) relating to publicly traded securities issued by Delphi during the period described below. Your rights may be affected by this Notice. If you wish to participate in the Settlement you must act by _____, 2008. You should read this Notice carefully.**

TO:    **The "Class," consisting of all persons and entities who purchased or otherwise acquired publicly traded securities of Delphi Corporation, including securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities"), during the period between March 7, 2000 and March 3, 2005, inclusive (the "Class Period"), and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The Settlement resolves in part class action litigation brought by the Teachers' Retirement System of Oklahoma ("Oklahoma"), Public Employees' Retirement System of Mississippi ("Mississippi"), Raiffeisen Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen") and Stichting Pensioenfonds ABP ("ABP") (collectively, "Lead Plaintiffs"), on behalf of the Class concerning misrepresentations and omissions allegedly made by the Defendants throughout the Class Period regarding the financial condition of Delphi, an entity currently the subject of a pending Chapter 11 proceeding (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") before the Honorable Robert D. Drain.

- The Settling Defendants are: (i) Delphi; Delphi Trust I, and Delphi Trust II; (ii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively, the "Delphi Officer and Director Defendants"); and (iii) Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets Inc.,

**EXHIBIT A-1**

Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the "Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II,, the Delphi Officer and Director Defendants, and the Underwriter Defendants shall be referred to herein as the "Settling Defendants" and, along with the Lead Plaintiffs, as the "Settling Parties").

- This Settlement does not resolve the allegations against the remaining defendants: JPMorgan Chase & Co. (as successor in interest to Bank One Corporation), SETECH, Inc., BBK Ltd. and Deloitte & Touche LLP (the "Non-Settling Defendants"). The Delphi Securities Action is continuing against the Non-Settling Defendants.

- The Settlement provides for a recovery with a potential value of $295,100,000, comprised of the following payments made by or on behalf of the Settling Defendants: i) A claim that will be paid in Delphi Plan Currency with a potential value of $204,000,000 ("Delphi Consideration"); ii) $78,600,000 in cash on behalf of the Delphi Officer and Director Defendants; iii) $1,500,000 in cash by or on behalf of certain of the Underwriter Defendants; and iv) contingent payments of a maximum of $11,000,000, also to be paid on behalf of the Delphi Officer and Director Defendants (collectively, the "Settling Defendants").

- As Delphi is currently a debtor and debtor in possession in the Delphi Bankruptcy Case, the Settlement is also contingent upon the approval by the Bankruptcy Court of Delphi's plan of reorganization (the "Delphi Plan of Reorganization"), which is currently scheduled to be heard by the Bankruptcy Court on November 19, 2007. If the Bankruptcy Court approves the Delphi Plan of Reorganization, which will be consistent with and incorporate the Settlement, the Settling Parties can proceed with the Settlement. If the Bankruptcy Court does not approve the Delphi Plan of Reorganization, the Settling Parties will revert to their litigation positions as of August 15, 2007. The Delphi Consideration will be paid by Delphi upon its emergence from the Delphi Bankruptcy Case in accordance with the Delphi Plan of Reorganization. At this time, Co-Lead Counsel believe that the Delphi Plan Currency will be comprised of common stock in the reorganized Delphi ("Delphi Settlement Shares") and cash. However, the allocation between cash and stock, and any other form of consideration, and the actual value of the Delphi Plan Currency, will not be confirmed until the Bankruptcy Court approves the Delphi Plan of Reorganization. (See Response to Question ___, below for more information).

- The Class will also receive interest on the cash payments described herein ("Cash Settlement Amount"). The Cash Settlement Amount plus interest, plus the Delphi Consideration are referred to herein as the Gross Settlement Fund. The Gross Settlement Fund, less any award of attorneys' fees, reimbursement of litigation expenses and other Court-approved costs (the "Net Settlement Fund"), will be distributed solely to Class Members who timely submit acceptable Proofs of Claim (see Response to Question ___ below).

- The Delphi Consideration is subject to a possible Reserve ("Reserve"). (See Response to Question ___ below.)

- A separate consolidated action brought under the Employee Retirement Income Securities Act (the "ERISA Action"), which is also pending in the Court and is coordinated with the Delphi Securities Action, is being settled contemporaneously herewith. The Settling Parties are seeking to gain approval of this Settlement and a settlement in the ERISA Action contemporaneously; it is a condition of this Settlement that the Court grant final approval of the ERISA settlement.

- In exchange for the payments set forth above, the Class shall release any and all claims against the Settling Defendants and the Released Parties (defined below).

- The Settling Parties disagree with Lead Plaintiffs on the amount of damages, if any, that could have been recovered if the Class prevailed on each claim at trial. Lead Plaintiffs estimate that if all Class Members make a claim against the Gross Settlement Fund, the average payment to Class Members will be $0.42 per share of Delphi common stock, based upon an estimate of 562 million outstanding Delphi shares as of the last day of the Class Period and after taking into consideration the relative average payment that would be paid to Authorized Claimants who purchased Delphi Notes during the Class Period (limited to 18.3% of the Net Settlement Fund pursuant to the plan of allocation set forth in Question 9 below). **Please note that these amounts are only estimates.**

- Co-Lead Counsel intend to seek an award of attorneys' fees of up to 18%, in the same percentages of cash and stock, or other consideration paid as part of the Delphi consideration, of the Settlement Fund, plus interest earned at the same rate earned by the Class on the cash portion of the Settlement Fund. Co-Lead Counsel have been litigating this case without any payment whatsoever. In addition, at the final hearing, Co-Lead Counsel will seek reimbursement of the litigation expenses they have incurred in connection with the prosecution of this Delphi Securities Action, which will not exceed $1,300,000. If the Court approves Co-Lead Counsel's fee and expense application, the average reduction to the recovery per share of Delphi common stock will be approximately $0.11.

- In reaching the Settlement, Lead Plaintiffs and the Settling Defendants have avoided the cost and time of a trial and Lead Plaintiffs have agreed to the Settlement to avoid the risk of the dismissal of some or all of the claims of the Class against the Settling Defendants. The Settling Defendants do not believe that they violated the federal securities laws, deny all allegations of wrongdoing asserted against them, and deny that any of Delphi's public statements were materially false or misleading. They have also asserted affirmative defenses to the claims alleged in this case. Accordingly, the Settling Defendants assert that they are not liable to the Class for any amount of damages.

| YOUR LEGAL RIGHTS AND OPTIONS: | |
|---|---|
| **SUBMIT A CLAIM FORM (January 15, 2008)** | This is the only way to receive a payment in the Settlement. A copy of the Proof of Claim form is enclosed, and is also available at www.delphiclasssettlement.com. See Question 7 below. |
| **EXCLUDE YOURSELF (October 29, 2007)** | You will not receive any payment in connection with this Settlement. This is the only option that allows you ever to be part of any other lawsuit against the Settling Defendants and/or the Released Parties concerning the legal claims being released in the Settlement. However, as further explained below, if you exclude yourself, you still may not be able to pursue a lawsuit arising out of the Settled Claims against at least some of the Settling Defendants or the Released Parties as a result of the approval of the Delphi Plan of Reorganization. *See* Response to Question __, below. |
| **OBJECT (October 29, 2007)** | File with the Clerk of Court your written concerns or objections to the Settlement, the Bar Order, the Plan of Allocation, or the requested attorneys' fees and reimbursement of litigation expenses. *See* Response to Question 13 below. |
| **ATTEND A HEARING (November 13, 2007)** | Ask to speak in Court about the fairness of the Settlement, the Bar Order, or the Plan of Allocation or the requested attorneys' fees and reimbursement of expenses. *See* Response to Question 15 below. |
| **DO NOTHING** | If you are a Class Member and you do not either submit a Proof of Claim form or request exclusion, you will be bound by the release of the Settling Defendants and Released Parties, you will receive no payment, and you will not be able to bring or pursue any Settled Claims in any other lawsuit or arbitration against the Released Parties. |

- These rights and options **– and the deadlines to exercise them** – are explained in this Notice. Please note the date of the Fairness Hearing – currently scheduled for November 13, 2007 – is subject to change without further notice. If you plan to attend the hearing, you should check the website, www.delphiclasssettlement.com, or with Co-Lead Counsel as set forth herein to be sure that no change to the date and time of the hearing has been made.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made to Class Members only if certain conditions set forth in the Stipulation are satisfied, including the Court approving the Settlement and that approval being upheld in appeals that are filed, if any.

- Further information regarding the Settlement may be obtained by contacting Co-Lead Counsel: Nix, Patterson & Roach, LLP, Bradley E. Beckworth, 205 Linda Drive, Daingerfield, Texas 75638, (903) 645-7333; Bernstein Litowitz Berger & Grossmann LLP, Jeffrey N. Leibell, 1285 Avenue of the Americas, New York, New York 10019, 212-554-1400; Schiffrin Barroway Topaz & Kessler, LLP, Michael K. Yarnoff, 280 King of Prussia Road, Radnor, PA 19087, 610-667-7600; and Grant & Eisenhoffer P.A., Stuart M. Grant, 485 Lexington Avenue, 29th Floor, New York, New York 10017, (646) 722-8500.

**[END OF COVER PAGE]**

| WHAT THIS NOTICE CONTAINS |
|---|

1.  Why did I receive this notice package? .................................................................................................
2.  What is this lawsuit about? ................................................................................................................
3.  Why is this Delphi Securities Action a class action? ...........................................................................
4.  Why is there a Settlement? ................................................................................................................
5.  How do I know if I am included in the Settlement? ..............................................................................
6.  What if I am still not sure whether I am included as a Class Member? ................................................
7.  What does the Settlement provide? ....................................................................................................
8.  Payment pursuant to the Settlement ..................................................................................................
9.  How can I receive a payment in the Settlement? ................................................................................
10. When will I receive my payment in the Settlement? ............................................................................
11. What am I giving up to receive a payment in the Settlement? .............................................................
12. What is the effect of the Bar Order in this Delphi Securities Action? ..................................................
13. How do I exclude myself from the Settlement? ...................................................................................
14. Do I have a lawyer in the Delphi Securities Action? ...........................................................................
15. How will the lawyers for the Class in the Settlement be paid? ............................................................
16. How do I notify the Court if I am opposed to any part of the Settlement or the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses in the Settlement? .........................
17. When and where will the Court decide these matters? .......................................................................
18. Am I required to appear at the final hearing and may I speak? ..........................................................
19. What will happen if I am a Class Member in the Delphi Securities Action and I do nothing at all? ....................

**BASIC INFORMATION**

# BASIC INFORMATION

| 1. Why did I receive this notice package? |
|---|

You or someone in your family may have purchased or otherwise acquired Delphi Securities between March 7, 2000 and March 3, 2005, inclusive. If the description above applies to you, you may be part of the Class and may have a right to know about the proposed Settlement of the Delphi Securities Action and about all of your options.

## 2. What is this lawsuit about?

The Delphi Securities Action was initially filed on March 7, 2005 in the United States District Court for the Southern District of New York. The Court subsequently appointed the Lead Plaintiffs to represent the Class, and approved Lead Plaintiffs' selection of Co-Lead Counsel.

On September 30, 2005, following an extensive investigation of their claims, including numerous interviews of former Delphi employees and current and former employees of entities with which Delphi engaged in transactions during the Class Period, Lead Plaintiffs filed the 257-page Consolidated Class Action Complaint ("Complaint"). The Complaint was filed more than one year before the Securities and Exchange Commission ("SEC") filed its complaint, which was not filed until October 30, 2006.

The Complaint asserts claims against Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and Director Defendants, the Underwriter Defendants and the Non-Settling Defendants, and sets forth in detail the manner in which Defendants carried out the alleged scheme to inflate the price of Delphi Securities. More specifically, in the Complaint, Lead Plaintiffs assert claims for alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The Complaint alleges that Defendants issued false and misleading statements and made material omissions regarding Delphi's revenue, inventory, expenses and earnings (among other financial disclosures) and its financial condition during the Class Period. The Complaint alleges that, as a result of the false and misleading statements, the value of Delphi Securities was inflated, and that members of the Class who purchased or acquired those securities were damaged when the truth about Delphi's ongoing revenue stream and financial condition was revealed and the value of its securities dropped.

Shortly after Lead Plaintiffs filed the Complaint, on October 8, 2005 and October 14, 2005, Delphi and certain of its subsidiaries sought bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. The Delphi Bankruptcy Case is pending before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York.

Delphi's filing for bankruptcy created complications in the prosecution of Lead Plaintiffs' claims, and, due to the fact that a bankruptcy estate has limited funds available to finance a settlement, it also created a possible hurdle to recovery as well. However, Co-Lead Counsel took immediate and effective action to ensure that the Class would receive full representation in the Bankruptcy Court, including the retention of one of the foremost bankruptcy experts in this field. Thereafter, Co-Lead Counsel followed closely the Chapter 11 proceedings and pursued two significant matters through motion practice, depositions, and summary trials before the Bankruptcy Court. As set forth herein, these efforts paid off, as Co-Lead Counsel demonstrated through their perseverance that the interests of Lead Plaintiffs and the Class would not be subjugated to the interests of Delphi's other stakeholders. As a result, this Settlement is being funded in large part by the Company. Such payments by a bankruptcy estate are extremely rare in securities class action settlements generally.

The Delphi Plan of Reorganization is currently scheduled for a hearing on its confirmation by the Bankruptcy Court on November 19, 2007. If the Bankruptcy Court approves the Delphi Plan of Reorganization, which incorporates and is consistent with the Settlement, the reorganized Delphi could emerge from the Delphi Bankruptcy Case prior to the end of 2007.

On December 12, 2005, the Judicial Panel on Multidistrict Litigation transferred the consolidated action pending before Judge Buchwald in the Southern District of New York to the Honorable Gerald E. Rosen in the United States District Court for the Eastern District of Michigan. On March 10, 2006, the Defendants moved to dismiss the Complaint. Lead Plaintiffs opposed those motions on May 12, 2006. At the time this Settlement was reached, these motions were still pending.

5

On April 11, 2005, a putative class action was filed in the United States District Court for the Southern District of Florida against certain of the Defendants under the caption Bernstein v. Delphi Trust I, et al., No. 9:05-CV-80307 (KLR) (the "Bernstein Action"). On July 20, 2005, the court appointed plaintiff Sidney Bernstein as lead plaintiff in the Bernstein Action and appointed his selection of counsel as co-lead counsel in the Bernstein Action (the "Bernstein Order"). On August 29, 2005, the Southern District of Florida stayed the Bernstein Action pending transfer of all related actions by the multidistrict litigation panel. On October 16, 2006, the Court granted Lead Plaintiffs' motion to vacate the Bernstein Order and affirmed the Lead Plaintiff Appointment Order. As a condition of this Settlement, the Bernstein Action will be finally consolidated with the Delphi Securities Action and dismissed on the Settlement Effective Date.

In addition, in early 2007, Lead Plaintiffs moved for and won a partial modification of the PSLRA's automatic discovery stay, and were able to request documents from Delphi, Deloitte, Bank One, BBK, SETECH, Inc., Mr. Battenberg, Mr. Blahnik, Mr. Dawes, Mr. Free, and third parties General Motors Corporation and Electronic Data Services Corporation. These Defendants (and General Motors) have thus far produced approximately one million pages of documents to Lead Plaintiffs.

Based upon Lead Plaintiffs' independent investigation and the significant volume of documents and information Lead Plaintiffs received in discovery, Lead Plaintiffs and Co-Lead Counsel believe that the Settlement, which provides for one of the largest recovery from a bankrupt entity ever obtained for a class of securities plaintiffs, is an excellent recovery for Class Members under these circumstances. Delphi is the subject of a Chapter 11 proceeding, and the insurance proceeds that are available to either fund a settlement or satisfy a verdict are only a small percentage of the damages alleged to have been suffered by the Class. As stated, a significant sum is being contributed to this Settlement by Delphi. In addition, Co-Lead Counsel believe that the existence of indemnification rights running between Delphi and certain of the Delphi Officer and Director Defendants would have foreclosed the possibility of settling the Delphi Securities Action with Delphi without Delphi being able to obtain a global compromise of all potential claims in the Delphi Securities Action that otherwise could have required Delphi to pay additional funds to resolve the Delphi Securities Action. Based on their evaluation, Lead Plaintiffs and Co-Lead Counsel have determined that the settlement set forth in this Stipulation is fair, reasonable and adequate and in the best interests of the Class.

The Settling Defendants, while affirmatively denying wrongdoing, fault and liability, consider it desirable and in their best interests that the Delphi Securities Action be dismissed against them according to the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation, and to enable Delphi to emerge from bankruptcy protection.

### 3. Why is the Delphi Securities Action a Class Action?

In a Class Action, one or more people or entities called a lead plaintiff or a representative plaintiff, sue on behalf of other investors who have similar claims based upon their transactions in a given security. All of those people and/or entities are referred to collectively as a "Class," or individually as a "Class Member." One court resolves the issues for all Class Members, except for those persons or entities who exclude themselves from the Class (as explained below).

### 4. Why is there a Settlement?

The Court did not decide in favor of either the Lead Plaintiffs or the Settling Defendants in this Delphi Securities Action. Instead, Lead Plaintiffs and the Settling Defendants agreed to settle before obtaining final rulings from the Court or a jury in the Delphi Securities Action. As explained above, the Lead Plaintiffs and Co-Lead Counsel believe the Settlement is beneficial for all Class Members. The Settling Defendants consider it desirable and in their best interests that the Delphi Securities Action be dismissed against them under the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation and to enable Delphi to emerge from bankruptcy protection.

**5. How do I know if I am included in the Settlement?**

You are a Class Member only if you purchased or acquired Delphi Securities during the Class Period. The Class was certified by the Court, for settlement purposes only, as follows:

> *All persons and entities who purchased or otherwise acquired publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities"), between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement*

You are not a Class Member if you are one of the following: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal representatives, heirs, successors or assigns of any such excluded party.

Also excluded from the Class are Persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in this Notice as described in Question __ below.

If one of your mutual funds purchased or owns Delphi Securities that alone does not make you a Class Member. Contact your broker to see whether you purchased Delphi Securities during the Class Period.

**6. What if I still am not sure whether I am included?**

If you are still not sure whether you are included, you can ask for free help. You can call 1-800-918-0998 or visit www.delphiclasssettlement.com for more information. Or you can fill out and return the claim form described on page __, in Question ___, to see if you qualify.

**7. What does the Settlement Provide?**

The Settlement Recovery: The Settlement provides for a recovery with a potential value of $295,100,000, comprised of the following payments made by or on behalf of the Settling Defendants: i) A claim that will be paid in Delphi Plan Currency with a potential value of $204,000,000 ("Delphi Consideration"); ii) $78,600,000 in cash on behalf of the Delphi Officer and Director Defendants; iii) $1,500,000 in cash by or on behalf of certain of the Underwriter Defendants; and iv) contingent payments of a maximum of $11,000,000, also to be paid on behalf of the Delphi Officer and Director Defendants (collectively, the "Settling Defendants").

At this time, Lead Plaintiffs expect that the Delphi Consideration will consist of cash and shares of common stock in the reorganized Delphi. However, the Delphi Plan Currency must be paid to the Class by Delphi in accordance with the Delphi Plan of Reorganization, which may provide for payment to general unsecured creditors in forms other than cash and stock, namely forms of debt securities such as notes or warrants. The value and allocation of the Delphi Consideration will not be confirmed until the Bankruptcy Court approves the Delphi Plan of Reorganization. (See Response to Question ___, below for more information). The value of the Delphi Consideration also may be reduced if certain claims filed in the Bankruptcy Case by or on behalf of a Class Member who has opted-out of the Settlement becomes an Allowed Claim in the Bankruptcy Case pursuant to certain criteria. Whether any of those claims will be an Allowed Claim, and the amount of any such Allowed Claims ("Reserve"), will be determined by the Bankruptcy Court.

Contingent Payment: Also pursuant to the Stipulation, the Class will have the opportunity to receive up to an additional $11,000,000 ("Contingent Payment"). More specifically, certain of the Settling Defendants' insurers will set aside $10,000,000 into a fund to pay for potential costs and fees in the event any of the non-indemnified officers and directors incur any costs or attorneys' fees in connection with any federal criminal proceedings following an indictment. Those funds have already been set aside, and, if no indictment(s) occurs by January 1, 2009, the full amount of this fund, plus interest from the initial funding date, may revert to the Settlement Fund for the benefit of the Class, except upon a showing of good cause by such officers and directors to delay such payment pending potential federal action. If any of the $10,000,000 is spent, the remaining funds, plus interest, shall be paid into the Gross Settlement Fund.

In addition, the Class may also receive a cash payment consisting of a percentage of the cash remaining on one of the insurance policies after payment of all outstanding legal bills ("Residual Amount"). The Residual Amount will be shared with the Plaintiffs in the ERISA action ("ERISA Plaintiffs") in a ratio of 76.3 to the Class and 23.7 to the ERISA Plaintiffs. Co-Lead Counsel estimates that the Residual Amount could enhance the Settlement Fund by no more than $1 million. **While Lead Plaintiffs expect that the Contingent Payment will result in additional recoveries to be added to the Gross Settlement Fund, no guarantees can be offered in this regard.**

The cash amounts received, plus interest, plus the other forms of Delphi Consideration, is referred to herein as the Gross Settlement Fund. Net Settlement Fund will be distributed solely to Class Members who submit acceptable Proofs of Claim (see Response to Question ___ below).

The Settlement, if approved, will result in the dismissal of the Complaint against the Settling Defendants and the release by all Class Members of all Settled Claims against the Released Parties, as defined below in the Response to Question ___. However, the Settlement is contingent upon the approval by the Bankruptcy Court of the Delphi Plan of Reorganization, which incorporates and is consistent with the Settlement, which will be heard by the Bankruptcy Court on November 19, 2007. If the Bankruptcy Court approves the Delphi Plan of Reorganization, the Settling Parties will proceed with the Settlement. If the Bankruptcy Court does not approve the Delphi Plan of Reorganization, the Settling Parties will revert to their litigation positions as of August 15, 2007.

As stated above, Co-Lead Counsel estimates that the average recovery under the Settlement will be $0.42 per share of Delphi common stock, taking into account that a maximum of 18.3% of the Net Settlement Fund may be paid to Authorized Claimants that purchased Notes, and before the aforementioned deductions. The actual recovery of any particular Class Member will depend on the following: (1) the number of claims filed; (2) when a Class Member purchased or acquired Delphi Securities during the Class Period; (3) whether a Class Member sold or retained their Delphi Securities during the Class Period and if sold, when that transaction took place; (4) taxes and administrative costs, including the costs of this Notice; and (5) the amount awarded by the Court for attorneys' fees and expenses. Distributions to Class Members will be made based on the Plan of Allocation described below in Response to Question ___, or as otherwise approved by the Court.

The Settling Parties do not agree with Lead Plaintiffs as to the maximum amount that the Class could have recovered had Lead Plaintiffs prevailed at trial and on appeal. In this regard, the Settling Parties disagree with Lead Plaintiffs regarding the following issues in connection with liability and damages: (1) whether the Settling Defendants made any false and misleading statements or whether such statements could be attributed to them; (2) whether the Settling Defendants engaged in any deceptive or manipulative conduct; (3) whether the Settling Defendants' conduct or statements were actionable under any law, including the federal securities laws; (4) whether the Settling Defendants made the statements or engaged in the conduct with the requisite knowledge to constitute fraud; (5) the appropriate economic model for determining the amount by which Delphi Securities were allegedly artificially inflated (if at all) during the Class Period; (6) the extent to which the various matters that Lead Plaintiffs allege were materially false or misleading (if at all) influenced and artificially inflated (if at all) the trading price of Delphi Securities at various times during the Class Period; and (7) the extent to which external factors, such as general market conditions, influenced the trading price of Delphi Securities at various times during the Class Period.

The Net Settlement Fund will be divided among all Class Members who submit valid proof of claim forms before the deadline for submission.

**6. Payment pursuant to the Settlement**

The proposed Plan of Allocation provides for distribution of the Net Settlement Fund to Authorized Claimants as follows:

Each Person claiming to be a claimant entitled to share in the Net Settlement Fund ("Authorized Claimant") shall be required to submit a separate Proof of Claim signed under penalty of perjury and supported by such documents as specified in the Proof of Claim as are reasonably available to the Authorized Claimant.

All Proof of Claim forms must be postmarked or received by January 15, 2008, addressed as follows:

**In re Delphi Corporation Securities Litigation Settlement**
**c/o The Garden City Group, Inc.**
**Claims Administrator**
**P.O. Box 9185**
**Dublin, OH  43017-4185**

Unless otherwise ordered by the Court, any Class Member who fails to submit a properly completed and signed Proof of Claim within such period as may be ordered by the Court shall be forever barred from receiving any payments pursuant to the Stipulation, but will in all other respects be subject to the provisions of the Stipulation and the final judgment entered by the Court.

The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants").

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionally allocated to the Authorized Claimants.

The Plan of Allocation generally measures the amount of loss that a Class Member can claim under the Settlement for the purpose of making *pro rata* allocations of the cash in the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim. The Plan of Allocation is not a formal damage analysis. The following proposed Plan of Allocation reflects plaintiffs' allegations that the price of Delphi common stock was artificially inflated during the Class Period (March 7, 2000 – March 3, 2005) due to misrepresentations and/or omissions regarding Delphi's earnings. The plaintiffs allege that corrective disclosures on July 17, 2002, June 13, 2003, March 4, 2005 and March 7, 2005 removed artificial inflation from the price of Delphi common stock.

The Plan of Allocation covers the following Delphi securities:  (i) common stock; (ii) 6.55% Unsecured Notes due June 15, 2006; (iii) 6.5% Unsecured Notes due August 15, 2013; (iv) 8.25% Delphi Trust I Preferred Securities due October 15, 2033; and (v) Adjustable Rate Delphi Trust II Preferred Securities due November 15, 2033 (collectively, the "Delphi Securities").

9

A Delphi Security must be held past a corrective disclosure in order to be eligible for a recovery in the Settlement; that is, a Delphi Security purchased or otherwise acquired during the Class Period from March 7, 2000 through July 16, 2002 must be held until or beyond July 17, 2002, the first trading day after the first corrective disclosure. Similarly, a Delphi Security purchased or otherwise acquired on or after July 17, 2002 must be held until June 13, 2003, the day of the second corrective disclosure, and Delphi Securities purchased or otherwise acquired on or after June 13, 2003 must be held until March 4, 2005, the last day of the Class Period. If you did not hold the Delphi Security through the dates indicated, the Recognized Loss per share is $0. The Recognized Loss for these transactions will be calculated as zero because it has been determined that the artificial inflation between the each disclosure and arising from the circumstances underlying the allegations of Lead Plaintiffs' Complaint was constant.

Recognized Claims will be calculated for the purposes of the Settlement as follows:

**To the extent a Claimant had a gain from his, her or its overall transactions in the Delphi Securities during the Class Period, the value of the Recognized Claim will be zero. Such claimants will in any event be bound by the Settlement. You may wish to consider this when deciding whether to opt out.**

## Common Stock Purchases:

1. For shares of Delphi common stock purchased between March 7, 2000 and July 16, 2002, inclusive, and:
   a. Sold on or before the close of trading on July 16, 2002, an Authorized Claimant's Recognized Claim is zero.
   b. Sold at a loss between July 17, 2002, and June 12, 2003, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus the sales price; or (ii) $0.84 per share.
   c. Sold at a loss between June 13, 2003, and March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus the sales price; or (ii) $1.55 per share.
   d. Held as of the close of business on March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus $5.15; or (ii) $2.73 per share.

2. For shares of Delphi common stock purchased between July 17, 2002 and June 12, 2003, inclusive, and:
   a. Sold on or before the close of trading on June 12, 2003, an Authorized Claimant's Recognized Claim is zero.
   b. Sold at a loss between June 13, 2003, and March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus the sales price; or (ii) $0.71 per share.
   c. Held as of the close of business on March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus $5.15; or (ii) $1.89 per share.

3. For shares of Delphi common stock purchased between June 13, 2003 and March 3, 2005, inclusive, and:
   a. Sold on or before the close of trading on March 3, 2005, an Authorized Claimant's Recognized Claim is zero.
   b. Held as of the close of business on March 3, 2005, an Authorized Claimant's Recognized Claim is the lesser of: (i) the purchase price minus $5.15; or (ii) $1.18 per share.

## Note and Preferred Security Purchases:

**Recoveries Pursuant to the Delphi Plan of Reorganization: The Recognized Claims set forth below for Note and Preferred Security Purchases shall be reduced dollar-for-dollar by any recoveries obtained through the Delphi Plan of Reorganization as a holder of such Notes and Preferred Securities (as such claims are classified in the Delphi Plan of Reorganization) where such Notes and Preferred Securities were purchased or otherwise acquired during the Class Period. Please provide this information where indicated on your Proof of Claim.**

1. For Delphi 6.55% Unsecured Notes due June 15, 2006 ($1,000 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
   a. Sold at a loss on or before the close of trading on September 30, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $998.75 per $1,000 Note and (b) the purchase price; less (ii) the sale price.
   b. Sold at a loss between October 1, 2005 and October 16, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $998.75 per $1,000 Note and (b) the purchase price; less (ii) the greater of (a) $735.00 per $1,000 Note and (b) the sale price.
   c. Held as of the close of business on October 16, 2006, an Authorized Claimant's Recognized Claim is zero.

2. For Delphi 6.5% Unsecured Notes due August 15, 2013 ($1,000 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
   a. Sold at a loss on or before the close of trading on September 30, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $988.06 per $1,000 Note and (b) the purchase price; less (ii) the sale price.
   b. Sold at a loss between October 1, 2005 and November 6, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $988.06 per $1,000 Note and (b) the purchase price; less (ii) the greater of (a) $670.00 per $1,000 Note and (b) the sale price.
   c. Held as of the close of business on November 6, 2006, an Authorized Claimant's Recognized Claim is zero.

3. For Delphi 8.25% Trust I Preferred Securities due October 15, 2033 ($25 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
   a. Sold at a loss on or before the close of trading on April 11, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $25 per $25 Preferred Security and (b) the purchase price; less (ii) the sale price.
   b. Sold at a loss between April 12, 2005 and November 13, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $25 per $25 Preferred Security and (b) the purchase price; less (ii) the greater of (a) $16.85 per $25 Preferred Security and (b) the sale price.
   c. Held as of the close of business on November 13, 2006, an Authorized Claimant's Recognized Claim is zero.

4. For Delphi Adjustable Rate Trust II Preferred Securities due November 15, 2033 ($1,000 par value) purchased between the Offering Date and March 3, 2005, inclusive, and:
   a. Sold at a loss on or before the close of trading on September 30, 2005, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $1,000 per $1,000 Preferred Security and (b) the purchase price; less (ii) the sale price.
   b. Sold at a loss between October 1, 2005 and December 6, 2006, an Authorized Claimant's Recognized Claim is: (i) the lesser of (a) the offering price of $1,000 per $1,000 Preferred Security and (b) the purchase price; less (ii) the greater of (a) $300.00 per $1,000 Preferred Security and (b) the sale price.
   c. Held as of the close of business on December 6, 2006, an Authorized Claimant's Recognized Claim is zero.

In the event a Class Member has more than one purchase or sale of the Delphi Securities, all purchases and sales of each type of security shall be matched on a First-In-First-Out ("FIFO") basis by type, Class Period sales will be matched first against any Delphi Securities held at the beginning of the Class Period, and then against purchases in chronological order, beginning with the earliest purchase made during the Class Period. Purchases and sales of Delphi Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, devise or operation of law of Delphi Securities during the Class Period shall not be deemed a purchase or sale of these Delphi Securities for the calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase of such Delphi Securities unless specifically provided in the instrument of gift or assignment.

Each Authorized Claimant shall be allocated *pro rata* shares of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants. Each Authorized Claimant shall be paid an amount determined by multiplying the total in the Net Settlement Fund by a fraction the numerator of which shall be his, her or its Recognized Claim and denominator of which shall be the Total Recognized Claims of all Authorized Claimants. This computation weighs each Class Member's claim against every other Class Member's claim. Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund based on his, her or its Recognized Claim.

The amount of a Class Member's Recognized Claim as computed above is not intended to be an estimate of what a Class Member might have been able to recover at trial, and it is not an estimate of the amount that will be paid pursuant to this Settlement. Instead, this computation is only a method to weight Class Members' claims against one another. Each Authorized Claimant will receive *pro rata* shares of the Net Settlement Fund based on his, her or its Recognized Claim.

To the extent a Claimant had a gain from his, her or its overall transactions in the Delphi Securities during the Class Period, the value of the Recognized Claim will be zero. Such Claimants will in any event be bound by the Settlement. To the extent a Claimant suffered an overall loss on his, her or its overall transactions in the Delphi Securities during the Class Period, but that loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual loss.

For purposes of determining whether a Claimant had a gain from his, her or its overall transactions in Delphi securities during the Class Period or suffered a loss, the Claims Administrator shall: (i) total the amount the Claimant paid for all Delphi Securities purchased during the Class Period (the "Total Purchase Amount"); (ii) match any sales of Delphi Securities during the Class Period first against the Claimant's opening position in the Delphi Securities (the proceeds of those sales will not be considered for purposes of calculating gains or losses); (iii) total the amount received for sales of the remaining Delphi Securities during the Class Period (the "Sales Proceeds"), and (iv) ascribe holding prices for Delphi Securities purchased during the Class Period and still held at the end of the Class Period, with such holding prices being $5.15 per share of common stock, $880.84 per $1,000 6.5% Unsecured Note due August 15, 2003, $19.05 per $25 8.25% Delphi Trust I Preferred Security due October 15, 2003, and $750.38 per $1,000 Adjustable Rate Delphi Trust II Preferred Security due November 15, 2033 (the "Holding Value"). The difference between (x) the Total Purchase Amount ((i) above) and (y) the sum of the Sales Proceeds ((iii) above) and the Holding Value ((iv) above) will be deemed a Claimant's gain or loss on his, her or its overall transactions in the Delphi Securities during the Class Period.

Class Members who do not submit acceptable Proofs of Claim will not share in the settlement proceeds. Class Members who either do not submit a request for exclusion or do not submit an acceptable Proof of Claim will nevertheless be bound by the Settlement and the Judgment of the Court dismissing the Delphi Securities Action.

Distributions will be made to Authorized Claimants only after the Court has finally approved the Settlement, the Effective Date has occurred and after all claims have been processed. If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution. If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit organizations designated by Co-Lead Counsel after notice to the Courts and subject to direction, if any, by the Courts.

Lead Plaintiffs, the Settling Defendants, their respective counsel, and all other Released Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

**Composition of and Distributions from the Net Settlement Fund**

As set forth above, the Net Settlement Fund is comprised of recoveries from or on behalf of the Settling Defendants for claims asserted by Class Members for purchasers of all Delphi Securities. Lead Plaintiffs and Lead Counsel, in consultation with Lead Plaintiffs' damages expert, have divided the Net Settlement Fund into the following component parts (each, a "Component Net Settlement Fund") to fairly and reasonably reflect the relevant risks to recovery, and estimated recoverable damages, from the Settling Defendants:

| | |
|---|---|
| Common Stock | 81.71% |
| 6.55% Unsecured Notes due June 15, 2006 | 2.46% |
| 6.5% Unsecured Notes due August 15, 2013 | 4.95% |
| 8.25% Trust I Preferred Securities due October 15, 2033 | 7.61% |
| Adjustable Rate Trust II Preferred Securities due November 15, 2033 | 3.27% |

To the extent that the funds available in any Component Net Settlement Fund attributable to Notes and Preferred Securities exceeds the aggregate amount of Recognized Claims for that fund, such excess shall be allocated among the other Component Net Settlement Funds based upon the percentages set forth above.

## OTHER PROVISIONS OF THE PLAN

To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's recognized claim, as defined below. If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's recognized claim bears to the total of the claims of all Authorized Claimants. If payment calculates to less than $10, than such payment shall be equal to $10. Payment in this manner shall be deemed conclusive against all Authorized Claimants.

The date of purchase, acquisition or sale is the "contract" or "trade" date as distinguished from the "settlement" date. The determination of the price paid and the price received shall be exclusive of all commissions, taxes, fees and charges. Therefore, you need to list all purchases, acquisitions, and sales of Delphi Securities during the relevant time period. Brokerage commissions and transfer taxes paid by you in connection with your purchase, acquisition and sale of Delphi Securities should be included in the "total purchase price" and net of the "total proceeds."

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any Class Member on equitable grounds. No person shall have any claim against the Lead Plaintiffs or their counsel or any claims administrator or other agent designated by the Lead Plaintiffs or their counsel, or against Settling Defendants or Settling Defendants' counsel, based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court. All Class Members who fail to complete and file a valid and timely Proof of Claim shall be barred from participating in distributions from the Settlement Fund (unless otherwise ordered by the Court), but

otherwise shall be bound by all of the terms of the Stipulation, including the terms of any judgment(s) entered and the releases given.

The Settlement Fund, less any deductions for fees and costs allowed by the Court, taxes due and other deductions pursuant to the terms of the Stipulation, shall be maintained by the Escrow Agent for the benefit of the Class, as provided in the Stipulation.

Under no circumstances will a Recognized Loss exceed the out-of-pocket loss, not including commissions, taxes or other fees.

### 9. How can I receive a payment in the Settlement?

To qualify for payment, you must submit a Proof of Claim form. A Proof of Claim form is enclosed with this Notice. You may also obtain a Proof of Claim form on the Internet at www.delphiclasssettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than January 15, 2008.

### 10. When will I receive my payment in the Settlement?

The Court will hold a hearing on November 13, 2007, at _____ a.m./p.m. to decide whether to approve the Settlement. Even if the Court approves the Settlement, it could take more than a year before the Net Settlement Fund is distributed to the Class Members because the Claims Administrator must process all of the Proof of Claim forms, audit the results and follow up to cure any deficient claims. As a result, the processing of claims is a complicated process which can take many months to complete. In addition, the Net Settlement Fund cannot be distributed until the Delphi Plan of Reorganization has been approved by the Bankruptcy Court and any appeals in the Bankruptcy Court have been resolved.

### 11. What am I giving up to receive my payment in the Settlement?

Unless you exclude yourself, you are agreeing to remain in the Class and that means that if the Settlement is approved you will release all "Settled Claims" against the "Released Parties" (as defined below and in the Stipulation which is available on the internet at www.delphiclasssettlement.com or through the mail upon request, and in the Proof of Claim Form). This means that you no longer have the right to pursue these claims in a court of law against the Settling Defendants or any of the Released Parties. If you remain a member of the Class all of the Court's orders will apply to you and legally bind you.

"Settled Claims" means any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted in the Delphi Securities Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them or the successors and assigns of any of them against any of the Released Parties which arise out of, are based upon, or relate to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action and related to the purchase, acquisition, or holding of Delphi Securities.

"Released Parties" means (i) any and all of the Settling Defendants, Thomas Wyman, and Shoichiro Irimajiri, their past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees,

attorneys, advisors, investment advisors, investment bankers, underwriters (including but not limited to Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC), insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi and its affiliates in the Bankruptcy Case; and (ii) General Motors Corporation, its past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which General Motors Corporation has a controlling interest or which is related to or affiliated with General Motors Corporation, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, or assigns of General Motors Corporation. Notwithstanding the foregoing, the definition of Released Parties shall not include any of the Non-Settling Defendants and Electronic Data Systems Corporation ("EDS"). In addition, the inclusion of General Motors as a Released Party shall not be construed to release any claims asserted in *Deka Investment GmbH, et al. v. General Motors Corporation, et al.*, No. 2:06-cv-12258 (GER) (E.D. Mich.).

"Unknown Claims" means any and all Settled Claims which any of the Lead Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

## 12. What is the effect of the Bar Order?

The Settling Parties have agreed to "bar" all claims for contribution and indemnification, among other claims, that arise out of or are related to the Settled Claims (as defined above) against any of the Released Parties (the "Bar Order"). This Bar Order includes a provision modeled after a mandatory provision in the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(f)(7)(A) The practical effect of this Bar Order is that no person or entity receiving notice of this Bar Order may file or prosecute any lawsuit for contribution or indemnification against any of the Released Parties that is (i) related to or arises out of the Settled Claims or this lawsuit, or (ii) arises from or relates to any person's or entity's alleged liability to the Class or any Class Member. The Bar Order also contains a provision for the reduction of any judgment that Lead Plaintiffs may obtain against any person or entity that is deemed to

arise out of or relate to the Settled Claims. In such a case, the judgment shall be reduced by an amount calculated pursuant to a formula on which the Settling Parties have agreed. The full Bar Order provision set forth in the Stipulation is set out below and may be easily accessed at www.delphiclasssettlement.com.

In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of the claims or allegations of the Delphi Securities Action or any Settled Claim (i) by any person or entity against any of the Released Parties, and (ii) by any of the Released Parties against any person or entity other than a person or entity whose liability has been extinguished by the settlement of the Released Party, are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable. In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a Class Member against any person or entity for loss for which such person or entity and any Released Party are found to be jointly liable shall be reduced by the greater of (i) an amount that corresponds to the percentage of responsibility of any such Released Party(s) for common damages or (ii) the amount paid to the Class by or on behalf of each such Released Party for common damages.

Complete Bar Order: Any person or entity receiving notice of the Notice, or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that would cause such person to be charged with constructive notice of the Notice (such persons, the "Barred Persons") is permanently barred, enjoined, and restrained from commencing, prosecuting, continuing, or asserting any claim against the Released Parties arising under federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise, where the claim or the alleged injury of such Barred Person is or arises from or relates to that Barred Person's or entity's alleged liability to the Class or any Class Member ("Barred Claims"); provided, however, that if: (a) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Act of 1933 ("Securities Act") for which such Barred Person and any Released Party is found to be jointly and severally liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Securities Act; or (ii) an amount that corresponds to the percentage of responsibility of any Released Party that constitute "covered persons" pursuant to 15 U.S.C. § 78u-4(f)(10)(C) for common damages pursuant to the Securities Act ; and/or (b) the Class or any Class Member obtains any judgment against any such Barred Person based upon, arising out of, or relating to any Settled Claim arising under the Securities Exchange Act of 1934 ("Exchange Act") for which such Barred Person and any Released Party is found to be jointly liable, that Barred Person shall be entitled to a judgment credit equal to an amount that is the greater of (i) the amount paid to the Class by or on behalf of each Released Party for common damages pursuant to the Exchange Act or (ii) an amount that corresponds to the percentage of responsibility of any Released Party for common damages pursuant to the Exchange Act.

**13. How do I exclude myself from the Settlement?**

To exclude yourself from the Settlement, you must send a letter by mail to the Claims Administrator saying that you want to be excluded from *In re Delphi Securities, Derivative and ERISA Litigation*, MDL No. 1725, Case No. 05-md-1725. If you wish to exclude yourself from the Class, be sure to include your name, address, telephone number, and signature, and mail your exclusion request postmarked no later than October 29, 2007 to:

In re Delphi Corporation Securities Litigation Settlement
c/o The Garden City Group, Inc.
Exclusions
Claims Administrator
P.O. Box 9185
Dublin, OH 43017-4185

Requests for exclusion must also list the amount and type of all Delphi Securities purchased, acquired, or sold during the Class Period, the prices paid or received, the date of each transaction and the amount or number of Delphi Securities held as of the beginning of the Class Period on March 7, 2000 and at the end of the Class Period on March 3, 2007.

You cannot exclude yourself on the website, by telephone or by e-mail. **If you do not follow these procedures – including meeting the date for exclusion set out above – you will not be excluded from the Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement.** You must exclude yourself even if you already have a pending case against any of the Released Parties based upon any Settled Claims.

It is very important to understand that under the circumstances of the Delphi Bankruptcy Case and Delphi's Plan of Reorganization, submitting a request for exclusion from the Settlement will not necessarily entitle you to pursue any Settled Claim against any Released Party. If your desire is to pursue your own litigation against any of the Released Parties, you should consult with your counsel prior to excluding yourself.

If you ask to be excluded, you will not receive a Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. You will also not participate in any recovery resulting from the Contingent Payment.

### 14. Do I have a lawyer in the case?

The Court approved Co-Lead Counsel to represent you and the other Class Members in the Settlement. If you need to reach an attorney at one of these firms to discuss any aspect of the Settlement, please address your inquiries to the attorneys named in Response to Question 15 below.

If you want to be represented by your own lawyer, you may hire one at your own expense.

### 15. How will the lawyers for the Class in the Settlement be paid?

Co-Lead Counsel have litigated the Delphi Securities Action on an entirely contingent basis, and have advanced the expenses of litigation with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation. Co-Lead Counsel intend to apply for a fee out of the Settlement Fund of up to 18.3% of the Settlement Fund, in the same percentages of cash and stock as received by the Class, plus interest earned on the cash portion of the award at the same rate as the Class. Co-Lead Counsel are also seeking reimbursement of the costs and expenses they advanced in connection with the Delphi Securities Action, in an amount that will not exceed $1,300,000.00, plus interest earned at the same rate as the Class.

### 16. How do I notify the Court if I am opposed to any part of the Settlement or the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses in the Settlement?

If you are a Class Member you may object to any aspect of the Settlement if you do not like any part of it, including the Bar Order, the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses.

To object, you must send a letter stating that you are a Class Member, that you object to the Settlement in *In re Delphi Securities, Derivative and ERISA Litigation*, MDL No. 1725, Case No. 05-md-1725, and the reasons why you object. .

In your objection, you must include your name, address, telephone number, and your signature. You must also include information concerning your transactions in Delphi Securities during the Class Period, including the dates, prices paid or received and amounts purchased, acquired or sold and held at the end of the Class Period, so that the Court may determine that you are part of the Class and have an economic interest in any aspect of the Settlement. If you intend to present any witnesses at the Settlement Fairness Hearing, you must also so state. Your objection must be filed with the Court by October 29, 2007, and received no later than October 29, 2007, by counsel listed below:

| **Co-Lead Counsel for Plaintiffs** | **Settling Defendants' Counsel** |
|---|---|
| Bradley E. Beckworth, Esq.<br>Nix, Patterson & Roach, LLP<br>205 Linda Drive<br>Daingerfield, Texas 75638 | Stuart J. Baskin, Esq.<br>Brian H. Polovoy, Esq.<br>Shearman & Sterling LLP<br>599 Lexington Ave.<br>New York, NY 10022-6069 |
| Jeffrey N. Leibell, Esq.<br>Bernstein Litowitz Berger & Grossmann LLP<br>1285 Avenue of the Americas<br>New York, New York 10019 | Andrew W. Stern, Esq.<br>Sidley & Austin LLP<br>787 Seventh Ave<br>New York, NY 10019 |
| Sean Handler, Esq.<br>Schiffrin Barroway Topaz & Kessler, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | Thomas W. Cranmer, Esq.<br>Matthew P. Allen, Esq.<br>Miller, Canfield, Paddock and<br>Stone, PLC<br>150 W. Jefferson, Suite 2500<br>Detroit, MI 4822 |
| Stuart Grant, Esq.<br>Grant & Eisenhoffer P.A.<br>485 Lexington Avenue, 29th Floor<br>New York, New York 10017 | |

**17. When and where will the Court decide these matters?**

The Fairness Hearing for the Settlement will be held at _____ __.m. on November 13, 2007, at the United States District Court for the Eastern District of Michigan, Theodore Levin Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226, in Courtroom _____. At this hearing the Court will consider whether (i) the Settlement is fair, reasonable and adequate (ii) whether the claims against the Settling Defendants should be dismissed with prejudice as set forth in the Stipulation; (iii) whether the Bar Order is fair; (iv) whether the Plan of Allocation is fair and reasonable; and (v) whether the application by Co-Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved. The Court may decide to adjourn the Settlement Fairness Hearing without further notice to the Class. The Court may also decide whether to approve the Plan of Allocation and how much to award Co-Lead Counsel for attorneys' fees and reimbursement of litigation expenses.

**18. Am I required to appear at the final hearing and may I speak?**

You do not need to attend the hearing. However, if you have filed an objection to any aspect of the Settlement as provided above, you may ask the Court for permission to speak at the Fairness Hearing for the Settlement. To do so, you must include with your objection the statement, "I hereby give notice that I intend to appear at the Fairness Hearing in *In re Delphi Securities, Derivative and ERISA Litigation*, MDL No. 1725, Case No. 05-md-1725" (the "Notice of Intention to Appear"). Be sure to include your name,

address and telephone number, identify all relevant data concerning your Delphi Securities, including the dates, prices paid or received and amounts purchased, acquired or sold, and held as of the end of the Class Period, and sign the letter. If you intend to have any witnesses testify or to introduce any evidence at the Fairness Hearing, you must list the witnesses and evidence in your objection. Your Notice of Intention to Appear must be postmarked no later than October 29, 2007, and be sent to the Clerk of the Court and the counsel listed above in the answer to Question 15. You cannot speak at the hearing if you exclude yourself.

**19. What will happen if I am a Class Member in the Delphi Securities Action and I do nothing at all?**

If you do not exclude yourself from the Class, and you fail to timely file a Proof of Claim, you will receive no recovery from the Net Settlement Fund. Unless you exclude yourself from the Class, you will not be able to start a lawsuit, continue to litigate a pending lawsuit, or be part of any other lawsuit against the Settling Defendants or the Released Parties for the claims released by the Settlement, ever again. However, as explained in response to Question ___ above, requesting exclusion will not ensure that you will be able to pursue a Settled Claim against any Settling Defendant or Released Party.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

The Court has ordered that if you purchased or acquired Delphi Securities during the Class Period as nominee for a beneficial owner, then within seven (7) calendar days after you receive this Notice, you must either: (a) send a copy of this Notice and the accompanying Proof of Claim by first class mail to all such beneficial owners; or (b) provide a list of the names and addresses of such beneficial owners to the Claims Administrator at the following address so that the Claims Administrator can provide them with a copy of this Notice and a Proof of Claim form.

*In re Delphi Corporation Securities Litigation Settlement*
**c/o The Garden City Group, Inc.**
**Claims Administrator**
**P.O. Box 9185**
**Dublin, OH  43017-4185**

You are entitled to reimbursement of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid upon request and submission of appropriate supporting documentation.

## GETTING MORE INFORMATION

This Notice summarizes the proposed Settlement. More details are contained in the Stipulation for the Delphi Securities Action which is available at www.delphiclasssettlement.com. If you have questions regarding how to obtain copies of documents related to this Settlement, completing your Proof of Claim form, correspondence you have received from the Claims Administrator, or the calculation of your Recognized Claim, you may write to The Garden City Group at the address listed above or call it toll free at 1-800-918-0998 or.

**PLEASE DO NOT CONTACT THE COURT**

# EXHIBIT 2

**Must be Postmarked
No Later Than**
_____

**In re Delphi Corporation Securities Litigation Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9185
Dublin, OH 43017-4185
1 (800) 918-0998**



<u>**CLAIMANT IDENTIFICATION**</u>:

Claim Number:                    Control Number:

# PROOF OF CLAIM

**YOU MUST COMPLETE THIS CLAIM FORM BY _____ TO BE ELIGIBLE TO SHARE IN THE
$_____ MILLION SETTLEMENT.**

<u>**TABLE OF CONTENTS**</u>                                                          <u>**PAGE NO.**</u>

**SECTION A - CLAIMANT INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**SECTION B - DELPHI COMMON STOCK** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**SECTION C - DELPHI 6.55% NOTES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

**SECTION D - DELPHI 6.5% NOTES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

**SECTION E - DELPHI 8.25% TRUST I PREFERRED SECURITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**SECTION F - DELPHI ADJUSTABLE RATE TRUST II PREFERRED SECURITIES** . . . . . . . . . . . . . . . . .7

**SECTION G - RELEASE AND SIGNATURE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

---

<u>**IMPORTANT**</u>: Before Completing This Proof of Claim, Please Carefully
Read the Enclosed Yellow Instruction Sheet.



## SECTION A - CLAIMANT INFORMATION

**Claimant Name(s)** (as you would like the name(s) to appear on the check, if eligible for payment):

**Last 4 digits of Claimant Social Security Number/Taxpayer ID Number:**

**Name of the Person you would like the Claims Administrator to Contact Regarding This Claim** (if different from the Claimant Name(s) listed above):

**Claimant or Representative Contact Information:**
The Claims Administrator will use this information for all communications relevant to this Claim (including the check, if eligible for payment). If this information changes, you <u>MUST</u> notify the Claims Administrator in writing at the address above.

**Street Address:**

**City:**

**State and Zip Code:**

**Country (Other than U.S.):**

**Daytime Telephone Number:** (    )    -    **Evening Telephone Number:** (    )    -

**Email Address:**

*(Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)*

IF YOU FAIL TO SUBMIT A <u>COMPLETE</u> CLAIM BY _____ YOUR CLAIM IS SUBJECT TO REJECTION OR YOUR PAYMENT MAY BE DELAYED.



---

### SECTION B - SCHEDULE OF TRANSACTIONS IN DELPHI COMMON STOCK

1. **BEGINNING HOLDINGS:** Number of shares of Delphi common stock held at the close of business on **March 6, 2000**. *(If none, write 0), (Must be documented)*:

2. **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi common stock during the period of **March 7, 2000** through and including **March 4, 2005**. *(Must be documented)*:

| Date(s) of Purchase or Acquisition (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Purchase/Acquisition Price Per Share | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) |
|---|---|---|---|
| / / | | $       . | $       . |
| / / | | $       . | $       . |
| / / | | $       . | $       . |
| / / | | $       . | $       . |

3. **SALES:** Sales of Delphi common stock during the period from **March 7, 2000** through and including **March 4, 2005**. *(Must be documented)*:

| Sale Date(s) (List Chronologically) (Month/Day/Year) | Number of Shares of Common Stock Sold | Sale Price Per Share | Total Sale Price (after commissions, transfer taxes, or other fees) |
|---|---|---|---|
| / / | | $       . | $       . |
| / / | | $       . | $       . |
| / / | | $       . | $       . |
| / / | | $       . | $       . |

4. **UNSOLD HOLDINGS:** Number of shares of Delphi common stock held at the close of business on **March 4, 2005**. *(If none, write 0), (Must be documented)*:

---

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU <u>MUST</u> PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑ IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

| SECTION C - SCHEDULE OF TRANSACTIONS IN DELPHI 6.55% NOTES DUE 2006 |
|---|

1.    **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi 6.55% Notes during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $1,000 face amount) | | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

2.    **SALES:** Sales of Delphi 6.55% Notes during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $1,000 face amount) | | Total Sale Price (after commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

3.    **UNSOLD HOLDINGS:** Face amount of Delphi 6.55% Notes held as of the close of business on **March 4, 2005**. *(If none, write 0), (Must be documented)*:

4.    **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.

$

---

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU <u>MUST</u> PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑**
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

## SECTION D - SCHEDULE OF TRANSACTIONS IN DELPHI 6.5% NOTES DUE 2013

1. **BEGINNING HOLDINGS:** Face amount of Delphi 6.5% Notes held at the close of business on **March 6, 2000.** *(If none, write 0), (Must be documented)*:

2. **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi 6.5% Notes during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $1,000 face amount) | | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

3. **SALES:** Sales of Delphi 6.5% Notes during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $1,000 face amount) | | Total Sale Price (after commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

4. **UNSOLD HOLDINGS:** Face amount of Delphi 6.5% Notes held as of the close of business on **March 4, 2005.** *(If none, write 0), (Must be documented)*:

5. **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.

$

---

### IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑
### IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED

## SECTION E - SCHEDULE OF TRANSACTIONS IN DELPHI 8.25% TRUST I PREFERRED SECURITIES DUE 2033

1.  **BEGINNING HOLDINGS:** Face amount of Delphi 8.25% Trust I Preferred Securities held at the close of business on **March 6, 2000**. *(If none, write 0), (Must be documented)*:

2.  **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi 8.25% Trust I Preferred Securities during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $25 face amount) | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) |
|---|---|---|---|
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |

3.  **SALES:** Sales of Delphi 8.25% Trust I Preferred Securities during the period from **March 7, 2000** through and including **March 4, 2005**. *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $25 face amount) | Total Sale Price (after commissions, taxes, or other fees) |
|---|---|---|---|
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |
| /    / | | $         . | $         . |

4.  **UNSOLD HOLDINGS:** Face amount of Delphi 8.25% Trust I Preferred Securities held as of the close of business on **March 4, 2005**. *(If none, write 0), (Must be documented)*:

5.  **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.    $

### IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU <u>MUST</u> PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑
### IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED

## SECTION F - SCHEDULE OF TRANSACTIONS IN DELPHI ADJUSTABLE RATE TRUST II PREFERRED SECURITIES DUE 2033

1.  **BEGINNING HOLDINGS:** Face amount of Delphi Trust II Securities held at the close of business on **March 6, 2000.** *(If none, write 0), (Must be documented)*:

2.  **PURCHASES/ACQUISITIONS:** Purchases/Acquisitions of Delphi Trust II Securities during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Purchase/Acquisition Price (per $1,000 face amount) | | Total Purchase/ Acquisition Price (including commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| /    / | | $ | . | $ | . |
| /    / | | $ | . | $ | . |
| /    / | | $ | . | $ | . |
| /    / | | $ | . | $ | . |

3.  **SALES:** Sales of Delphi Trust II Securities during the period from **March 7, 2000** through and including **March 4, 2005.** *(If none, write 0), (Must be documented)*:

| Trade Date(s) (List Chronologically) (Month/Day/Year) | Face Amount | Sale Price (per $1,000 face amount) | | Total Sale Price (after commissions, taxes, or other fees) | |
|---|---|---|---|---|---|
| /    / | | $ | . | $ | . |
| /    / | | $ | . | $ | . |
| /    / | | $ | . | $ | . |
| /    / | | $ | . | $ | . |

4.  **UNSOLD HOLDINGS:** Face amount of Delphi Trust II Securities held as of the close of business on **March 4, 2005.** *(If none, write 0), (Must be documented)*:

5.  **RECOVERY FROM BANKRUPTCY:** Please list the dollar amount that you received from the bankruptcy proceeding for this security.    $

---

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑
IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED**



# SECTION G - RELEASE AND SIGNATURE

### I.  SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I submit this Proof of Claim under the terms of the Stipulation and Agreement of Settlement with Certain Defendants dated as of September 1, 2007, ("Stipulation") described in the Notice. I also submit to the jurisdiction of the United States District Court for the Eastern District of Michigan, with respect to my claim as a Class Member (as defined in the Notice) and for purposes of enforcing the release set forth herein. I further acknowledge that I am bound by and subject to the terms of any judgment that may be entered in the Delphi Securities Action. I agree to furnish additional information to Co-Lead Counsel to support this claim if required to do so. I have not submitted any other claim covering the same purchases or acquisitions of Delphi Securities during the Class Period and know of no other Person having done so on my behalf.

### II.  RELEASE

I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release, relinquish and discharge, all of the Settled Claims against each and all of the Defendants and the Released Parties, defined below.

"Released Parties" means (i) any and all of the Settling Defendants, Thomas Wyman, and Shoichiro Irimajiri, their past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment advisors, investment bankers, underwriters (including but not limited to Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets, Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC), insurers, co-insurers, re-insurers, consultants, administrators, estates, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or affiliated with any of the Settling Defendants, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, assigns, or bankruptcy estates of Delphi and its affiliates in the Bankruptcy Case; and (ii) General Motors Corporation, its past or present subsidiaries, parents, principals, affiliates, general or limited partners or partnerships, successors and predecessors, heirs, assigns, officers, directors, agents, employees, attorneys, advisors, investment advisors, investment bankers, underwriters, insurers, co-insurers, re-insurers, accountants, auditors, consultants, administrators, executors, trustees, personal representatives, immediate family members and any person, firm, trust, partnership, corporation, officer, director or other individual or entity in which General Motors Corporation has a controlling interest or which is related to or affiliated with General Motors Corporation, and the legal representatives, heirs, executors, administrators, trustees, successors in interest, or assigns of General Motors Corporation. Notwithstanding the foregoing, the definition of Released Parties shall not include any of the Non-Settling Defendants and Electronic Data Systems Corporation ("EDS"). In addition, the inclusion of General Motors as a Released Party shall not be construed to release any claims asserted in Deka Investment GmbH, et al. v. General Motors Corporation, et al., No. 2:06-cv-12258 (GER) (E.D. Mich.).

"Settled Claims" means any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims (as defined herein), (i) that have been asserted in the Delphi Securities Action against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them or the successors and assigns of any of them against any of the Released Parties which arise out of, are based upon, or relate to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Delphi Securities Action and related to the purchase, acquisition, or holding of Delphi Securities.

"Unknown Claims" means any and all Settled Claims which any of the Lead Plaintiffs or Class Members does not know or suspect to exist in his, her or its favor as of the Effective Date and any Settled Defendants' Claims which any Settling Defendant does not know or suspect to exist in his, her or its favor as of the Effective Date, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgments shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.



I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this_____day of_____, in_____,_____.

                     (Month/Year)           (City)            (State/Country)

_____
(Sign your name here)

_____
(Type your name here)

_____
Capacity of Person(s) Signing, e.g.,
Beneficial Purchaser, Executor
or Administrator

9



## ACCURATE CLAIM PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.

### REMINDER CHECKLIST

1.   Please sign the Certification section of the Proof of Claim form.

2.   If this claim is made on behalf of joint claimants, then both must sign.

3.   Please remember to attach supporting documents.

4.   DO NOT SEND ORIGINALS OF ANY SUPPORTING DOCUMENTS.

5.   Keep a copy of your Proof of Claim form and all documentation submitted for your records.

6.   The Claims Administrator will acknowledge receipt of your Proof of Claim by mail, within 30 days. Your claim is not deemed filed until you receive an acknowledgment postcard. If you do not receive an acknowledgment postcard within 30 days, please call the Claims Administrator toll free at 1 (800) 918-0998.

7.   If you move, please send us your new address.

8.   **Do not use highlighter on the Proof of Claim form or supporting documentation.**

THIS PROOF OF CLAIM MUST BE POSTMARKED NO LATER THAN
_____, 200\_ AND MUST BE MAILED TO:

In re Delphi Corporation Securities Litigation Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9185
Dublin, OH 43017-4185
1 (800) 918-0998

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

```
---------------------------------------------------------x
                                              :
                                              :
                                              :
IN RE: DELPHI CORPORATION                     :    MDL No. 1725
SECURITIES, DERIVATIVE & "ERISA"              :    Master Case No. 05-md-1725
LITIGATION                                    :    Hon. Gerald E. Rosen
                                              :
                                              :    This Document Relates to:
                                    ·         :    In Re: Delphi Corp. Securities Litig.
                                              :    No. 06-10026, and Case Nos.
                                              :    06-10025, 06-10027, 06-10028,
                                              :    06-10029, 06-10030, 06-10031, and
                                              :    06-10032
                                              :    -------------------------------------------
                                              :
---------------------------------------------------------x
```

## SUMMARY NOTICE OF PENDENCY OF CLASS ACTION AND SETTLEMENT WITH CERTAIN DEFENDANTS

YOU ARE HEREBY NOTIFIED that the Court in the above-captioned actions (the "Delphi Securities Action") has preliminarily certified a Class consisting of all persons and entities who purchased or otherwise acquired publicly traded securities of Delphi Corporation, including securities issued by Delphi Trust I and Delphi Trust II ("Delphi Securities") between March 7, 2000 and March 3, 2005, inclusive (the "Class Period"), and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement. The Court also preliminarily approved a settlement providing for a recovery with a potential value of $295,100,000, comprised of the following payments to be made by or on behalf of the Settling Defendants

**EXHIBIT A-3**

(defined below): i) a claim in the Delphi Bankruptcy Case with a potential value of $204,000,000 in Delphi Plan Currency; ii) $78,600,000 in cash on behalf of the Delphi Officer and Director Defendants; iii) $1,500,000 in cash by or on behalf of certain of the "Underwriter Defendants"; and iv) contingent payments of a maximum of $11,000,000, also to be paid on behalf of the Delphi Officer and Director Defendants (collectively, the "Settling Defendants").

As Delphi is currently a debtor and debtor-in-possession in a Chapter 11 bankruptcy proceeding, this Settlement is wholly contingent upon approval by United States Bankruptcy Judge Robert D. Drain, for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Delphi's Plan of Reorganization, which was filed on September __, 2007, and incorporates the Settlement. If the Settlement and Delphi's Plan of Reorganization are approved, the Settlement will resolve all of Lead Plaintiffs' claims in this litigation against the Settling Defendants. The Delphi Plan Currency will be paid by Delphi following its emergence from the Delphi Bankruptcy Case in accordance with the Delphi Plan of Reorganization.  The Class will also receive interest on the cash payments described herein ("Cash Settlement Amount").   At this time, Co-Lead Counsel estimate that the Delphi Plan Currency will be comprised of common stock in the reorganized Delphi and cash.  However, the form of the Delphi Plan Currency could change and, even if not, the allocation between cash and stock will not be identified until the Bankruptcy Court confirms the Delphi Plan of Reorganization.   In addition, the precise dollar value of the Delphi Plan Currency will not be known until Delphi emerges from its Bankruptcy Proceedings and pays the Delphi Plan Currency.  A more detailed description of the settlement consideration is provided in the full printed Notice of Proposed Settlement With Certain Defendants, Motion for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing (the "Notice").

2

A hearing will be held before the Honorable Gerald E. Rosen in the United States District Court for the Eastern District of Michigan, Southern Division, Theodore Levin Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226 in Courtroom _____, at ____:_____ __.m., on November 13, 2007 to determine whether: (1) the proposed settlement should be approved by the Court as fair, reasonable and adequate; (2) the proposed plan of allocation should be approved by the Court as fair and reasonable; (3) Co-Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved; (4) the claims against the Settling Defendants should be dismissed with prejudice; and (5) such other matters as the Court deems appropriate to rule upon.

The litigation does not resolve Lead Plaintiffs' claims against Non-Settling Defendants JP Morgan Chase & Co. (as successor in interest to Bank One Corporation), SETECH Inc., BBK Ltd. and Deloitte & Touche LLP, as further described in the Notice.   Therefore, Lead Plaintiffs will continue to prosecute their claims against the Non-Settling Defendants.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE NET SETTLEMENT FUND.  If you have not yet received the full printed Notice and Proof of Claim and Release form ("Proof of Claim") you may obtain copies of these documents by downloading them from the website www.delphiclasssettlement.com or by contacting:

Delphi Securities Litigation Settlement
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9185
Dublin, OH  43017-4185

Inquiries, other than requests for the forms of Notice and Proof of Claim, may be made to Co-Lead Counsel:

3

Bradley E. Beckworth, Esq.
Nix, Patterson & Roach, L.L.P.
205 Linda Drive
Daingerfield, Texas 75638

Sean Handler, Esq.
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087

Jeffrey N. Leibell, Esq.
Bernstein Litowitz Berger &
Grossmann, LLP
1285 Avenue of the Americas
New York, New York 10019

Stuart Grant, Esq.
Grant & Eisenhofer P.A.
Chase Manhattan Centre,
Suite 2100
1201 N. Market St.
Wilmington, DE 19801

To participate in the Settlement, you must submit a Proof of Claim no later than January 15, 2008. The deadline for filing objections and the receipt of requests for exclusions is October 29, 2007.

Further information may also be obtained by directing your inquiry in writing to the Claims Administrator, The Garden City Group, Inc., at the address listed above. You may also call 1-800-918-0998, toll free for more information.

By Order of The Court

# EXHIBIT B

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

---------------------------------------------------------x
                    :

| | |
|---|---|
| IN RE: DELPHI CORPORATION<br>SECURITIES, DERIVATIVE & "ERISA"<br>LITIGATION | MDL No. 1725<br>Master Case No. 05-md-1725<br>Hon. Gerald E. Rosen<br><br>This Document Relates to:<br>In Re: Delphi Corp. Securities Litig.<br>No. 06-10026, and Case Nos.<br>06-10025, 06-10027, 06-10028,<br>06-10029, 06-10030, 06-10031, and<br>06-10032 |

---------------------------------------------------------x

## [PROPOSED] ORDER AND FINAL JUDGMENT

WHEREAS, on August 31, 2007, Lead Plaintiffs, on behalf of themselves and the Class, on the one hand, and Defendants (i) Delphi Corporation ("Delphi"), (ii) Delphi Trust I and Delphi Trust II; (iii) J.T. Battenberg III, John G. Blahnik, Robert H. Brust, Virgis W. Colbert, Alan S. Dawes, David N. Farr, Paul R. Free, Bernd Gottschalk, Susan A. McLaughlin, Oscar de Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, Roger S. Penske, Donald L. Runkle, John D. Sheehan, and Patricia C. Sueltz (collectively, these individuals will be referred to herein as the "Delphi Officer and Director Defendants"), and (iv) Banc of America Securities LLC, Barclays Capital Inc., Bear, Stearns & Co. Incorporated, Citigroup Global Markets Inc. [no "Inc." in Stip], Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston Corporation), Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated, UBS Securities LLC, and Wachovia Capital Markets, LLC (collectively, the

**EXHIBIT B**

"Underwriter Defendants") (Delphi, Delphi Trust I, Delphi Trust II, the Delphi Officer and

Director Defendants and the Underwriter Defendants are collectively referred to as the "Settling

Defendants") on the other hand, executed a Stipulation and Agreement of Settlement with

Certain Defendants (the "Stipulation") that would resolve the above-captioned action (the

"Delphi Securities Action") with respect to the Settling Defendants;

WHEREAS, this Court preliminarily approved the Settlement by Order of the Court

dated September __, 2007;

AND NOW, after a hearing before this Court on the _____ day of November, 2007, to

(i) determine whether the Settlement should be approved by the Court as fair, reasonable,

adequate, and in the best interests of the Class; (ii) determine whether the Plan of Allocation for

the proceeds of the Settlement should be approved by the Court as fair and reasonable; (iii)

determine whether judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing

the Delphi Securities Action against the Settling Defendants with prejudice and extinguishing

and releasing all Settled Claims (as defined therein), and barring the Barred Claims ; (iv)

determine whether the Class should be finally certified for settlement purposes pursuant to

Fed.R.Civ.P. Rules 23(a) and (b); (v) rule on Co-Lead Counsel's application for an award of

attorneys' fees and the reimbursement of litigation expenses; and (vi) rule on such other matters

as the Court may deem appropriate.

The Court having considered all matters submitted to it at the hearing and otherwise; and

it appearing that a notice of the hearing substantially in the form approved by the Court was

provided to all reasonably identifiable persons and entities who purchased or otherwise acquired

publicly traded securities of Delphi, including securities issued by Delphi Trust I and Delphi

Trust II ("Delphi Securities"), between March 7, 2000 and March 3, 2005, inclusive, who were

damaged thereby, (i) by mailing the Notice to such persons and entities at the respective

addresses set forth in Delphi's records or by forwarding the Notice to beneficial owners of such

Delphi Securities as identified by brokers and other nominee record owners, and (ii) by

publishing the Publication Notice pursuant to the specifications of the Court as required by the

Order for Notice and Hearing dated September __, 2007; and the Court having considered and

approved the Plan of Allocation as a fair and reasonable method to allocate the Net Settlement

Fund among the members of the Class; and the Court having considered and determined the

fairness and reasonableness of the award of attorneys' fees and expenses requested; and all

capitalized terms used herein having the meanings as set forth and defined in the Stipulation;

       NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

       1.     The Court has jurisdiction over the subject matter of the Delphi Securities

Action and the settling parties, including all Class Members.

       2.     The Court finds that the prerequisites for a class action under Federal

Rules of Civil Procedure 23(a) and (b)(3) have been satisfied in that: (a) the number of Class

Members is so numerous that joinder of all Class Members is impracticable; (b) there are

questions of law and fact common to the Class; (c) the claims of Lead Plaintiffs are typical of the

claims of the Class they seek to represent; (d) the Lead Plaintiffs have and will fairly and

adequately represent the interests of the Class; and (e) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of

the Class Members in individually controlling the prosecution of the separate actions, (ii) the

extent and nature of any litigation concerning the controversy already commenced by members

of the Class, (iii) the desirability or undesirability of continuing the litigation of these claims in

this particular forum, and (iv) the difficulties likely to be encountered in the management of the class action.

       3.      Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Class shall consist of all persons and entities who purchased or otherwise acquired Delphi Securities between March 7, 2000 and March 3, 2005, inclusive, and who suffered damages thereby, including all persons and entities who acquired shares of Delphi common stock and preferred stock in the secondary market and all persons or entities who acquired debt securities of Delphi in the secondary market or pursuant to a registration statement. Excluded from the Class are: (i) any Defendant; (ii) any member of the family of any of the Delphi Officer and Director Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) any officer, director or partner of any Defendant or their subsidiary or affiliate; or (v) the legal representatives, heirs, successors and assigns of any such excluded party. Also excluded from the Class are any putative members of the Class who exclude themselves by timely requesting exclusion in accordance with the requirements set forth in the Notice as listed on Exhibit A attached hereto; such putative members of the Class shall not participate in the Net Settlement Fund.

       4.      The Notice, the Publication Notice and the notice methodology implemented pursuant to the Stipulation and the Court's orders (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Delphi Securities Action, of the effect of the Stipulation, including releases, of their right to object to the proposed Settlement, of their right to exclude themselves from the Class, and of their right to appear at the Fairness Hearing, (iii) were reasonable and constituted due, adequate and sufficient notice to all persons or entities entitled to

receive notice and (iv) met all applicable requirements of the Federal Rules of Civil Procedure,

the United States Constitution (including the Due Process Clause), Section 21D(a)(7) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended, including by the Private

Securities Litigation Reform Act of 1995 (the "PSLRA"), the Rules of the Court and any other

applicable law.

        5.      The Settlement is finally approved as fair, reasonable and adequate.

Subject to the terms and provisions of the Stipulation, the settling parties are directed to

consummate the Settlement.

        6.      The Delphi Securities Action and the Complaint, which the Court finds

was filed against the Settling Defendants on a good faith basis in accordance with the PSLRA

and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available

information, is hereby dismissed in its entirety with prejudice and without costs, except as

provided in the Stipulation, as against the Settling Defendants.  The Delphi Securities Action

shall continue against the Non-Settling Defendants.

        7.      Upon the Effective Date of the Settlement, Lead Plaintiffs and all Class

Members on behalf of themselves, their personal representatives, heirs, executors,

administrators, trustees, successors and assigns, with respect to each and every Settled Claim,

release and forever discharge, and are forever enjoined from prosecuting, any Settled Claim

against any of the Released Parties, and shall not institute, continue, maintain or assert, either

directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf

of any class or any other person, any action, suit, cause of action, claim or demand against any

Released Party or any other person who may claim any form of contribution or indemnity from

any Released Party in respect of any Settled Claim or any matter related thereto, at any time on or after the Effective Date.

8.    On the Effective Date of the Settlement, Lead Plaintiffs and all Class Members on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every Settled Claim, release and forever discharge, and are forever enjoined from prosecuting all claims against Co-Lead Counsel or any or all of the Lead Plaintiffs, the Settling Defendants, or Released Parties and/or their respective counsel, that relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with or directly or indirectly relating to the prosecution, defense or settlement of the Delphi Securities Action as against the Settling Defendants or in connection with or directly or indirectly relating to the Stipulation, or to attorneys' fees, costs or disbursements incurred by Co-Lead Counsel or other counsel representing Lead Plaintiffs or the Class Members in the Delphi Securities Action.

9.    Upon the Effective Date of the Settlement, the Settling Defendants, on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, release and forever discharge each and every one of the Settled Defendants' Claims, and are forever enjoined from prosecuting the Settled Defendants' Claims against Lead Plaintiffs, all Class Members and their respective counsel (except Settled Defendants' Claims does not include all claims, rights or causes of action or liabilities whatsoever related to the enforcement of the Settlement, including, without limitation, any of the terms of the Stipulation or orders or judgments issued by the courts in connection with the Settlement or confidentiality obligations).

6

10.    Notwithstanding paragraphs 7 through 9 above, nothing in this Order and Final Judgment shall bar any action or claim by any of the Settling Parties or their Released Parties to enforce or effectuate the terms of the Stipulation or this Order and Final Judgment.

11.    The Plan of Allocation is approved as fair and reasonable, and Co-Lead Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions. Any appeal or any challenge relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the Finality of the other provisions of this Order and Final Judgment.

12.    No Class Member shall have any claim against Co-Lead Counsel, the Claims Administrator or other agent designated by Co-Lead Counsel based on the distributions made substantially in accordance with the Settlement and Plan of Allocation as approved by the Court and further orders of the Court. No Class Member shall have any claim against the Settling Defendants, any of the Released Parties or their counsel with respect to the investment or distribution of the Net Settlement Fund, the determination, administration, calculation or payment of claims, the administration of the Escrow Accounts, or any losses incurred in connection therewith, the Plan of Allocation, or the giving of notice to Class Members.

13.    In accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all claims for contribution arising out of the claims or allegations of the Delphi Securities Action or any Settled Claim (i) by any person or entity against any of the Released Parties, and (ii) by any of the Released Parties against any person or entity other than a person or entity whose liability has been extinguished by the settlement of the Released Party, are hereby permanently barred, extinguished, discharged, satisfied, and unenforceable. In accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be obtained by or on behalf of the Class or a

7

Class Member against any person or entity for loss for which such person or entity and any

Released Party are found to be jointly liable shall be reduced by the greater of (i) an amount that

corresponds to the percentage of responsibility of any such Released Party(s) for common

damages or (ii) the amount paid to the Class by or on behalf of each such Released Party for

common damages.

        14.    <u>Complete Bar Order</u>: Any person or entity receiving notice of the Notice,

or having actual knowledge of the Notice, or having actual knowledge of sufficient facts that

would cause such person to be charged with constructive notice of the Notice (such persons, the

"Barred Persons") is permanently barred, enjoined, and restrained from commencing,

prosecuting, continuing or asserting any claim against the Released Parties arising under federal,

state, or foreign statutory or common-law rule, however styled, whether for indemnification or

contribution or otherwise, where the claim or the alleged injury of such Barred Person is or arises

from or relates to that Barred Person's or entity's alleged liability to the Class or any Class

Member ("Barred Claims"); provided, however, that if: (a) the Class or any Class Member

obtains any judgment against any such Barred Person based upon, arising out of, or relating to

any Settled Claim arising under the Securities Act of 1933 ("Securities Act") for which such

Barred Person and any Released Party is found to be jointly and severally liable, that person or

entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) the

amount paid to the Class by or on behalf of each Released Party for common damages pursuant

to the Securities Act; or (ii) an amount that corresponds to the percentage of responsibility of any

Released Party that constitute "covered persons" pursuant to 15 U.S.C. § 78u-4(f)(10)(C) for

common damages pursuant to the Securities Act; and/or (b) the Class or any Class Member

obtains any judgment against any such Barred Person based upon, arising out of, or relating to

any Settled Claim arising under the Securities Exchange Act of 1934 ("Exchange Act") for

which such Barred Person and any Released Party is found to be jointly liable, that Barred

Person shall be entitled to a judgment credit equal to an amount that is the greater of (i) the

amount paid to the Class by or on behalf of each Released Party for common damages pursuant

to the Exchange Act or (ii) an amount that corresponds to the percentage of responsibility of any

Released Party for common damages pursuant to the Exchange Act.

15.    The Court finds that the Bar Order is fair to all persons and entities,

including but not limited to (a) the Defendants; (b) the Class; and (c) to the Non-Settling

Defendants.

16.    The Settling Defendants shall not be enjoined from bringing Barred

Claims against a Barred Person if for any reason such Barred Person asserts, or is legally not

barred by the Bar Order from bringing, Barred Claims against such Settling Defendant.

17.    This Order and Final Judgment, the Stipulation, whether or not

consummated, and any proceedings taken pursuant to it:

a.    shall not be offered or received against any of the Settling

Defendants as evidence of or construed as or deemed to be evidence of any presumption,

concession, or admission by any of those Settling Defendants with respect to the truth of any fact

alleged by any of the plaintiffs or the validity of any claim that has been or could have been

asserted in the Delphi Securities Action or in any litigation, or the deficiency of any defense that

has been or could have been asserted in the Delphi Securities Action or in any litigation, or of

any liability, negligence, fault, or wrongdoing of any Settling Defendant;

b.    shall not be offered or received against the Settling Defendants as

evidence of a presumption, concession or admission of any fault, misrepresentation or omission

9

with respect to any statement or written document approved or made by any of the Settling Defendants;

            c.      shall not be offered or received against the Settling Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Settling Defendants in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation and this Order and Final Judgment; provided, however, that if the Stipulation is approved by the Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

            d.      shall not be construed against any of the Settling Defendants as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; or

            e.      shall not be construed as or received in evidence as an admission, concession or presumption against the Lead Plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by any Settling Defendant have any merit, or that damages recoverable under the Delphi Securities Action would not have exceeded the Gross Settlement Fund.

        18.      The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

        19.      The administration and consummation of the Settlement as embodied in the Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Co-Lead Counsel and enforcing the terms of the Stipulation.

20.    In the event that the Settlement does not become Effective in accordance

with the terms of the Stipulation, this Order and Final Judgment shall be rendered null and void

to the extent provided by and in accordance with the Stipulation, and this Order and Final

Judgment shall be vacated, and in such event all orders entered in accordance with the

Stipulation shall be vacated.

21.    Without further order of the Court, the parties may agree to reasonable

extensions of time to carry out any of the provisions of the Stipulation.

22.    The Delphi Securities Action has been pending since the first of the

constituent actions were filed in 2005. The Stipulation resolves all of the claims asserted by the

Class against the Settling Defendants. The claims asserted against the Settling Defendants,

which are now settled, raise issues that are separable from the remaining claims of the Lead

Plaintiffs and the Class against the Non-Settling Defendants. Permitting that immediate appeal,

if taken, of this Order and Final Judgment would not result in any duplication of review by an

appellate court, because if an appellate court were to vacate the Order and Final Judgment, then

the parties may reasonably continue their prosecution or defense of the claims while this Court

continues to preside over other related claims, without a waste of time or judicial resources. If

this Order and Final Judgment were not immediately appealable, once an appeal were ripe after

the conclusion of the entire coordinated litigation, and if the appellate court vacated this Order

and Final Judgment, then this Court would face re-trying the entire litigation as to the Settling

Defendants, thereby wasting judicial resources.

23.    There is no just reason for delay in the entry of this Order and Final

Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule

54(b) of the Federal Rules of Civil Procedure. The Delphi Securities Action is not dismissed with respect to claims against the Non-Settling Defendants.

24.    The Court having determined that there is no just reason for delay, hereby enters FINAL JUDGMENT with respect to the Settling Defendants, and in accordance with Federal Rule of Civil Procedure 54(b) this _____ day of November, 2007:


_____
GERALD E. ROSEN
United States District Judge

# EXHIBIT C

## EXHIBIT C TO STIPULATION AND AGREEMENT OF SETTLEMENT
## WITH CERTAIN DEFENDANTS:
## RESERVE FUND FOR ADDITIONAL DEFENSE COSTS

A.       Within 3 days after the Insurance Payment is deposited with the Escrow Agent,

Co-Lead Counsel shall transfer therefrom the sum of Ten Million United States Dollars (U.S.

$10,000,000) (the "Contingent Payment") into a separate Defense Cost Reserve Escrow

Account, as required under the Stipulation of Settlement.  The Defense Cost Reserve Escrow

Account shall be created as an interest-bearing money market account or the proceeds invested in

a similar vehicle with the same risk of loss of principal.  Excepting the limitations provided for

below, this Defense Cost Reserve Escrow Account shall exist for the sole benefit of J.T.

Battenberg III, Milan Belans, John G. Blahnik, Alan S. Dawes, Paul R. Free, Judith Kudla,

Catherine Rozanski and Peter H. Janak (the "Former Delphi Officers and Employees"), and the

Ten Million United States Dollars (U.S. $10,000,000) in proceeds deposited therein shall only be

accessible by counsel for the Former Delphi Officers and Employees in the event that there is

any indictment of any Former Delphi Officer or Employee in connection with their work at

Delphi.

B.       In the event that one or more of the Former Delphi Officers and Employees are

indicted by the Department of Justice, the United States Attorney for the Southern District of

New York or any other governmental agency in connection with their work at Delphi, they shall

provide notice to Lead Plaintiffs.  Within 10 days of such notice, counsel for any indicted Former

Delphi Officer(s) or Employee(s) shall be permitted to access funds from the Defense Cost

Reserve Escrow Account as an additional source of defense costs in amounts and pursuant to

such terms as will be agreed upon by all counsel for the Former Delphi Officers and Employees

in advance and memorialized in writing.  Counsel for the Former Delphi Officers and Employees

agree to use their best efforts to ensure that any and all ongoing criminal investigations are

resolved favorably with no indictments as soon as practicable. The reasonableness of any fees

incurred or any dispute regarding access as between counsel for the Former Officers and

Employees pursuant to this Section shall be determined by Honorable Layn R. Phillips, former

United States District Judge, of Irell Manella (hereinafter "Judge Phillips"), whose determination

will be final and binding.

C.    In the event that no indictment of any Former Delphi Officer or Employee occurs

by January 31, 2009, the Defense Cost Reserve Escrow Account shall be closed and the proceeds

existing in the account as well as any interest accrued thereon shall be disbursed at the direction

of Co-Lead Counsel unless any counsel for a Former Delphi Officer or Employee makes a

showing to Judge Phillips that good cause exists to maintain the Defense Cost Reserve Escrow

Account. Judge Phillips shall, in his sole discretion, determine whether good cause exists to

maintain the proceeds in the Defense Cost Reserve Escrow Account for the benefit of the Former

Delphi Officers and Employees.

D.    Upon a showing that there no longer remains any threat that any of the Former

Delphi Officers and Employees face criminal exposure and/or potential indictment Lead

Plaintiffs may request, prior to January 31, 2009, that Judge Phillips release some portion or all

of the proceeds in the Defense Cost Reserve Escrow Account. In any event, Lead Plaintiffs shall

have the right on or after January 31, 2009, to request that Judge Phillips release some portion or

all of the proceeds in the Defense Cost Reserve Escrow Account. Judge Phillips shall, in his sole

discretion, determine whether good cause exists to distribute some or all of the Defense Cost

Reserve Escrow Account to the Gross Settlement Fund.

E.      Any request made by any party as provided in section C or D, above, shall be subject to the right of counsel for any opposing party to notice and an opportunity to respond and to rebut the request.

F.      In no event shall the proceeds remain in the Defense Cost Reserve Escrow Account if no Former Delphi Officer or Employee has been indicted and no proceeds have been withdrawn by December 31, 2010; *provided, however*, that in the event that one or more of the Former Delphi Officers or Employees has been indicted, any funds remaining in the Defense Cost Reserve Escrow Account on December 31, 2010 shall not be released to Co-Lead Counsel unless and until the indicted Former Delphi Officer(s) or Employee(s)'s criminal proceeding has been resolved.

G.      Any interest that accrues on the proceeds contained in the Defense Cost Reserve Escrow Account shall be allocated and released in the same proportion as the principal in the Defense Cost Reserve Escrow Account.

H.      Any funds, including principal and interest, remaining in the Defense Cost Reserve Escrow Account following the conclusion of any criminal proceedings involving any Former Delphi Officer or Employee will become part of the Gross Settlement Fund.

I.      Any taxes owing on interest accrued in the Defense Cost Reserve Escrow Account shall be withdrawn from such interest, and shall be remitted to the appropriate taxing authorities by the account holder(s).  The only administrative fees assessed against the Defense Cost Reserve Escrow Account shall be the reasonable cost incurred in preparation of necessary tax returns and the cost customarily charged by Mellon Bank in serving as an escrow agent.

DATED:  August 30, 2007

C:\Revisions to BLBG Draft.doc
8/29/07 04:11 PM

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**

By: _____

    Max W. Berger
    John P. Coffey
    Jeffrey N. Leibell
    Hannah E. Greenwald
    1285 Avenue of the Americas
    New York, New York 10019
    Telephone:  (212) 554-1400
    Facsimile:  (212) 554-1444

**Co-Lead Counsel for Lead Plaintiffs**

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**

By: _____

    Michael K. Yarnoff
    Sean M. Handler
    Kay E. Sickles
    280 King of Prussia Road
    Radnor, PA 19087
    Telephone: (610) 667-7056
    Facsimile: (610) 667-7706

**Co-Lead Counsel for Lead Plaintiffs**

**NIX PATTERSON & ROACH, L.L.P.**

By: _____

    Bradley E. Beckworth
    Jeffrey J. Angelovich
    Susan Whatley
    205 Linda Drive
    Daingerfield, TX 75638
    Telephone:  (903) 645-7333
    Facsimile:  (903) 645-4415

**Co-Lead Counsel for Lead Plaintiffs**

**GRANT & EISENHOFER P.A.**

By: _Jim Sabella_
     Stuart M. Grant
     James J. Sabella
     Sharan Nirmul
     485 Lexington Avenue, 29th Floor
     New York, NY 10017
     Telephone: (646) 722-8500

**Co-Lead Counsel for Lead Plaintiffs**

**BAKER BOTTS L.L.P.**

By: _____  (WITH CONSENT 8/30/07 EAM)
     William R. Jeffress, Jr.
     Bridget M. Moore
     Michael G. Pattillo, Jr.
     Joe R. Caldwell, Jr.
     1299 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2400
     Telephone: (202) 639-7788
     Facsimile: (202) 639-7980

**Counsel for J.T. Battenberg III**

**O'MELVENY & MYERS LLP**

By: _Robert N. Stern_ (with consent 8/30/07 MJG)
     Robert N. Eccles
     Robert M. Stern
     1625 Eye Street, NW
     Washington, DC 20006-4001
     Telephone: (202) 383-5315
     Facsimile: (202) 383-5414

**Counsel for Alan S. Dawes**

**PEPPER HAMILTON LLP**

By: _____

Matthew J. Lund
100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
Telephone: (313) 259-7110

**Counsel for Paul R. Free**


**MILLER, CANFIELD, PADDOCK and
STONE, PLC**

By: _____
     Thomas W. Cranmer
     Matthew P. Allen
     150 W. Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 963-6420

**Counsel for John G. Blahnik and Peter H. Janak**


**CLARK HILL PLC**

By: _____
     Martin E. Crandall
     Charles E. Murphy
     500 Woodward Avenue
     Suite 3500
     Detroit, Michigan  48226
     Telephone: (313) 965-8413

**Counsel for Milan Belans**


**BUTZEL LONG PC**

By: _____   (w/consent)
     David Dumouchel                   (Matt Allen)
     Laurie J. Michelson
     150 W. Jefferson Avenue
     Suite 100
     Telephone: (313) 225-7004

**Counsel for Cathy Rozanski**

**SARETSKY HART MICHAELS & GOULD PC**

By: _____
    Eric A. Michaels
    995 South Eton
    Birmingham, Michigan 48009
    Telephone: (248) 502-3300

**Counsel for Judith Kudla**

DELIB:2887195.2\127581-00001

# EXHIBIT D

## EXHIBIT D TO THE STIPULATION AND AGREEMENT
## OF SETTLEMENT WITH CERTAIN DEFENDANTS

1.    Proof of claim number 14093, filed by Oklahoma Law Enforcement Retirement System, dated July 28, 2006

2.    Proof of claim number 14094, filed by Public Employees Retirement System of Mississippi, dated July 28, 2006

3.    Proof of claim number 14095, filed by Raiffeisen Kapitalanlage-Gesellschaft m.b.H., dated July 28, 2006

4.    Proof of claim number 14096, filed by Stichting Pensioenfonds ABP, dated July 28, 2006

5.    Proof of claim number 14097, filed by Teachers Retirement System of Oklahoma, dated July 28, 2006

# EXHIBIT E

## EXHIBIT E TO THE STIPULATION AND AGREEMENT
## OF SETTLEMENT WITH CERTAIN DEFENDANTS

1.     Proof of claim number 10731, filed by Citigroup Global Markets, Inc., dated July 17, 2006

2.     Proof of claim number 10732, filed by Bear, Stearns & Co. Inc., dated July 20, 2006

3.     Proof of claim number 10758, filed by Banc of America Securities LLC, dated July 17, 2006

4.     Proof of claim number 10759, filed by UBS Securities LLC, dated July 20, 2006

5.     Proof of claim number 10760, filed by Wachovia Capital Markets, LLC, dated July 20, 2006

6.     Proof of claim number 10761, filed by Merrill Lynch, Pierce, Fenner & Smith Incorporated, dated July 14, 2006

7.     Proof of claim number 10762, filed by Morgan Stanley & Co. Incorporated, dated July 20, 2006

8.     Proof of claim number 10763, filed by Credit Suisse Securities (USA) LLC, dated July 20, 2006

9.     Proof of claim number 11658, filed by Barclays Capital Inc., dated July 24, 2006

10.    Proof of claim number 13771, filed by Barclays Bank PLC, dated July 31, 2006