TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger (NB-3599)
Richard K. Milin (RM-7755)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                   :

                          :      Chapter 11

DELPHI CORPORATION, et al.,   :      Case No. 05-44481 [RDD]

                          :

          Debtors.    :      Jointly Administered

                          :

                          :      DECLARATION OF

                          :      JANE S. THOMPSON

------------------------------------------------------------x

JANE S. THOMPSON hereby declares as follows:

        1.      I am a Purchasing Supervisor at Delphi Automotive Holdings Group ("Delphi"), where I have worked since 1987. I am familiar with the basic facts of Delphi's dispute with Siemens VDO Automotive S.A.S. ("VDO") arising out of VDO's contract with Delphi concerning production of electronic control units ("ECUs"). I submit this Declaration based on personal knowledge and my review of the files in support of the Motion of Delphi Corporation and certain of its subsidiaries and affiliates (collectively, the "Debtors") for a summary judgment expunging VDO's claim no. 2247 (the "Claim").

2.     On or about April 6, 2000, Brigette Colter and I sent a "Request for Quotation" ("RFQ") to Mike Tramutolo of Siemens VDO Automotive S.A.S. ("VDO"). The RFQ stated that the Debtors would be "evaluating a select group of suppliers" to manufacture electronic control units to be used in the 2004 and later model years.

3.     To keep the parties' motion papers to a minimum, I will refer to exhibits annexed to the Declaration of VDO's Michel Poulet dated October 9, 2007 ("VDO Decl.") rather than attach duplicate copies. The RFQ is annexed to Mr. Poulet's Declaration as Exh. A.

4.     In the RFQ, we stated, among other things, that, "[t]he Supplier bears the cost of development. Cost recovery can occur only from within the production piece price, production tooling and/or the Development/Alpha/Beta/Prototype piece price and tooling." (RFQ at 2.)

5.     The RFQ referred to and included copies of the Debtors' Long Term Contract ("LTC") and Delphi Automotive Systems General Terms and Conditions ("T&C").

6.     On June 8, 2000, VDO's Mike Tramutolo emailed to request changes in the LTC. Mr. Tramutolo's email complained that the LTC allowed the Debtors to "resource" with a new supplier "as early as 31-Jul-05. We would only be 2 years into production and would not have recovered our amortized costs." The email continued, "Can you accommodate us for this issue? Either, Delphi could change the verbiage or we could add a noted exception." A copy of Mr. Tramutolo's email is annexed hereto as Exhibit 1.

7.     The Debtors refused Mr. Tramutolo's request in an email dated June 12, 2000. The email, which was written by Darrell Lewis, stated: "These are our standard terms. You need to accept our standard terms in total, without change....I

2

hope you can get Siemens to agree to the standard terms, as any deviation will weight heavily in our selection." A copy of Darrell Lewis's email is included in Exhibit 1.

8.      VDO responded to the RFQ in a letter from Mike Tramutolo and Michel Poulet dated July 20, 2000. VDO later sent a signed copy of the LTC.

9.      On or about October 31, 2000, the Debtors signed the copy of the LTC that had been signed by VDO. (*See* VDO Decl., Exh. D.)

10.      More than two years after the LTC was signed, on or about December 13, 2002, VDO sent the Debtors a letter that was similar in form to their letter of July 20, 2000. (*See* VDO Decl., Exh. E.)

11.      The Debtors responded to VDO's letter of December 13, 2002 in an email from Mike Shields stating, among other things, that, "I think we are real close to getting all the details behind us, updating the Long Term Contract and issuing the additional tooling purchase orders …" (*See* VDO Decl., Exh. F.)

12.      However, the Debtors did not sign an updated or revised LTC with VDO at any time after signing the original LTC in October 2000.

13.      In December 2003, the Debtors paid VDO $618,000 to purchase production tooling for the ECUs covered by the LTC. I attach a copy of documents recording the payment as Exhibit 2. The purchase was made pursuant to a purchase order that expressly incorporated the T&C. The purchase order also reprinted the T&C in full on its reverse side. (*See* Exhibit 2.)

14.      The Debtors have purchased ECUs for the GMX 245 and 295 programs – in quantities that VDO admits have exceeded 24,000 units – pursuant to purchase orders that expressly incorporate the T&C. Copies of some of these purchase orders are annexed as Exhibit 3.

3

15.    Except when the purchase orders called for specific quantities of

ECUs, they stated that the parties' contract was for "100%" of the Debtors' requirements

and that the LTC controlled the parties' transaction: "This agreement reflects the latest

part numbers, pricing and timing for Suspension ECUs described in the existing Long

Term Contract (LTC) executed by buyer and seller as of June 16, 2000. All other Terms

and Conditions of June 16, 2000 LTC remain in effect." (*See* Exhibit 3.) The purchase

orders containing this language covered the GMT 800 or 900 program ECUs as well as

the GMX 245 and 295 program ECUs. Some purchase orders omit "2000" in the final

sentence of the quoted text. (*See id.*)

16.    The Debtors could not use VDO's ECU for the GMT 800 program

because the ECU did not meet GM's requirements at key validation approval dates in

the product's development.

17.    The Debtors were able to use substantially the same ECUs that

VDO had offered to manufacture for the GMT 800 program, with different connectors,

for the GMT 900 program.

18.    From July 8, 2005 through October 27, 2007, the Debtors purchased

approximately 400,000 ECUs from VDO for the GMT 900 program – under the LTC – at

prices between $52.30 and $56.26 each.

19.    On or about January 24, 2006, VDO filed Proof of Claim No. 2247

(the "Claim") against Delphi Automotive Systems LLC. The Claim states that it seeks

more than $9.3 million. A copy of Proof of Claim 2247 is annexed as Exhibit 4.

20.    In VDO's February 2007 "Supplemental Response" to the Debtors'

objection to its Claim, VDO provided a one-page itemization of the Claim's compo-

nents. A copy of the Supplemental Response and its Exhibit D is annexed as Exhibit 5.

4

21.    Despite the Debtors' requests, made through counsel, VDO has provided no further detail concerning the calculation of its Claim after it filed its "Supplemental Response."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed in _Dayton_, Ohio on October _30_, 2007.

/s/ Jane S. Thompson
Jane S. Thompson