# Exhibit 2

DELPHI
Automotive Systems

DELPHI CHASSIS SYSTEMS
P.O. BOX 1042
DAYTON OH
45401 US

SHIP TO: SEE BELOW
US

# PURCHASE ORDER: DCS94056

PAGE

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips an Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 26-591-6502

TO: SIEMENS VDO AUTOMOTIVE
1 AVENUE PAUL OURLIAC
BOITE POSTAL 1149
TOULOUSE CEDEX FR
31036
FRANCE

INVOICE TO: NO INVOICES REQUIRED TO ACCTS PAYABLE UNLESS OTHERWISE STATED ON PO OR RELEASE.
US

FILE COPY

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | 12/10/02 |
|---|---|
| ALTERATION ISSUE DATE | |
| ALTERATION EFFECTIVE DATE | |

PHONE: 937-455-737
M SHIELDS
VZ Buyer
PURCHASING AGENT

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SPCOL | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME / DESCRIPTION / RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT MEAS |
|---|---|---|---|---|---|---|---|---|
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY<br>EUR EUROPEAN CURRENCY UNIT<br><br>PLEASE MAIL TWO (2) COPIES OF YOUR INVOICE TO:<br>DELPHI ENERGY & CHASSIS SYSTEMS<br>ATTN: JOAN PHILPOT, MAIL STOP 1-08<br>P. O. BOX 1042<br>DAYTON, OH 45401<br>ANY QUESTIONS CONCERNING THIS RELEASE, PLEASE CALL<br>MIKE SHIELDS, PH: 937-455-7374, FAX: 937-455-9133.<br><br>TOOLING LOCATION:<br>SIEMENS VDO AUTOMOTIVE<br>1 AVENUE PAUL OURLIAC<br>BOITE POSTAL 1149<br>TOULOUSE CEDEX<br>FRANCE<br>31036 | | | | | |
| 00001 | 1 | PR677240 001 | T22212835, T22212839, T22197737 ECU -<br>SUSPENSION - MRRTD - BSRTD<br>COMPONENT PART AND ECU ASSEMBLY TOOLING FOR<br>PRODUCTION OF MRRTD AND BSRTD GEN 2 SCR. DRAD<br>CONTROLLERS. GMX245 22212835,<br>GMX295 22212839, GMT800 22197737 | 12/10/02 | C 0.00% | 500000.0000 | | |

A003230 USER JANE T WILLIAMS

CONTINUE PAGE 2

DELPHI
Automotive Systems

# PURCHASE ORDER: DCS94056

PAGE

DELPHI CHASSIS SYSTEMS
P.O. BOX 1042
DAYTON OH
45401 US

SHIP TO: SEE BELOW
US

INVOICE TO: NO INVOICES REQUIRED TO ACCTS PAYABLE UNLESS OTHERWISE STATED ON PO OR RELEASE.
US

VENDOR NUMBER 26-591-6502

TO: SIEMENS VDO AUTOMOTIVE
1 AVENUE PAUL OURLIAC
BOITE POSTAL 1149
TOULOUSE CEDEX FR
31036
FRANCE

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips an Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Goverment Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | PHONE: 937-455-737 |
| --- | --- |
| 12/10/02 | M SHIELDS |
| ALTERATION ISSUE DATE | VZ Buyer |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
| --- | --- | --- |
| NET 2ND DAY OF 2ND MONTH | SPCOL | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME DESCRIPTION RFQ NUMBER DATE REQUIRED TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT MEAS |
| --- | --- | --- | --- | --- | --- | --- |
| | | | REV. LEVEL R9866A, R9875A, AND R9798A<br>WHO ORDERED: MIKE SHIELDS | | | |

THE SUPPLIER IS RESPONSIBLE FOR MAINTAINING TOOLS TO PRODUCE 100% PARTS TO SPECIFICATIONS FOR THE LIFE OF THE PART. PPAP SUBMISSION AT NO CHARGE. YOUR PACKING SLIP SHOULD BE MARKED ACCORDINGLY AND ALSO MUST INCLUDE PART AND PURCHASE ORDER NUMBER.

*FORCED LABOR*
SELLER REPRESENTS THAT GOODS PURCHASED UNDER THIS ORDER WERE NOT PRODUCED WITH FORCED LABOR (AS DEFINED IN 19 USC 1307) EITHER BY SELLER OR SELLER'S SUPPLIERS. SELLER SHALL INDEMNIFY BUYER AGAINST ANY LIABILITY BUYER MAY INCUR IF THIS REPRESENTATION IS INCORRECT.

SELLER AGREES TO PROVIDE ALL INFORMATION NECESSARY FOR BUYER TO COMPLY WITH ALL APPLICABLE LAWS, REGULATIONS AND RELATED LEGAL REPORTING OBLIGATIONS IN THE COUNTRY(IES) OF DESTINATION. SELLER AGREES TO PROVIDE ALL DOCUMENTATION AND/OR ELECTRONIC TRANSACTION RECORDS TO ALLOW BUYER TO MEET CUSTOMS RELATED OBLIGATIONS, ANY LOCAL CONTENT/ORIGIN REQUIREMENTS, AND TO OBTAIN ALL TARIFF AND TRADE PROGRAM DUTY AVOIDANCE(S) AND/OR REFUND BENEFITS,



DELPHI
Automotive Systems

DELPHI CHASSIS SYSTEMS
P.O. BOX 1042
DAYTON OH
45401 US

SHIP TO: SEE BELOW
. .
. US

INVOICE TO: NO INVOICES REQUIRED TO ACCTS PAYABLE UNLESS OTHERWISE STATED ON PO OR RELEASE.
. .
. US

**PURCHASE ORDER:** DCS94056 PAGE

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

TO:
VENDOR NUMBER 26-591-6502
SIEMENS VDO AUTOMOTIVE
1 AVENUE PAUL OURLIAC
BOITE POSTAL 1149
TOULOUSE CEDEX FR
31036
FRANCE

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Goverment Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | |
|---|---|
| 12/10/02 | PHONE: 937-455-737 M SHIELDS |
| ALTERATION ISSUE DATE | VZ — Buyer |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SPCOL | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT MEAS |
|---|---|---|---|---|---|---|
| | | | WHERE APPLICABLE.<br><br>SELLER AGREES TO COMPLY WITH THE AUTOMOTIVE INDUSTRY ACTION GROUP'S (AIAG) DOCUMENT AND EDI PROTOCOL AND STANDARDS IN THEIR SUPPLIER INFORMATION KIT FOR U.S., CANADA, AND MEXICO IMPORTS.<br><br>SELLER AGREES TO ASSUME, AND TO INDEMNIFY BUYER AGAINST, ANY AND ALL FINANCIAL RESPONSIBILITY ARISING FROM SELLER'S FAILURE TO COMPLY WITH THESE REQUIREMENTS AND/OR TO SUPPLY BUYER WITH THE INFORMATION REQUIRED TO MEET LEGAL REPORTING OBLIGATIONS, INCLUDING, WITHOUT LIMITATION, ANY FINES, PENALTIES, FORFEITURES, OR COUNSEL FEES INCURRED OR IMPOSED AS A RESULT OF ACTIONS TAKEN BY THE IMPORTING COUNTRY'S GOVERNMENT.<br><br>THIS ORDER COVERS NECESSARY TOOLS FOR THE PRODUCTION ITEM LISTED ON THIS PURCHASE ORDER. TOOLS TO BE CONSTRUCTED TO HAVE A NET CAPACITY OF 8,000 PIECES/WEEK (6 DAYS).<br>DELPHI SUPPLIER TOOLING AGREEMENT APPLIES. PPAP MUST BE SUBMITTED BY 9/15/02. SUBMISSION MUST BE APPROVED BEFORE PAYMENT FOR TOOLING AND BEFORE SHIPMENT OF PRODUCTIVE PARTS. | | | |

A003230 USER JANE T WILLIAMS

DELPHI
Automotive Systems

DELPHI CHASSIS SYSTEMS
P.O. BOX 1042
DAYTON OH
45401 US

SHIP TO: SEE BELOW
US

INVOICE TO: NO INVOICES REQUIRED TO ACCTS PAYABLE UNLESS OTHERWISE STATED ON PO OR RELEASE.
US

TO: VENDOR NUMBER 26-591-6502
SIEMENS VDO AUTOMOTIVE
1 AVENUE PAUL OURLIAC
BOITE POSTAL 1149
TOULOUSE CEDEX FR
31036
FRANCE

# PURCHASE ORDER: DCS94056

PAGE

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | 12/10/02 |
|---|---|
| ALTERATION ISSUE DATE | |
| ALTERATION EFFECTIVE DATE | |

PHONE: 937-455-737
M SHIELDS
VZ Buyer
PURCHASING AGENT

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SPCOL | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT MEAS |
|---|---|---|---|---|---|---|
| | | | THE PAYMENT DATE SHALL BE THE DATE ESTABLISHED BY BUYER'S MULTILATERAL NETTING SYSTEM (MNS-2), OR WHICH PROVIDES ON AVERAGE, THAT PAYMENT SHALL BE ISSUED ON THE SECOND DAY OF THE SECOND MONTH FOLLOWING RECEIPT OF GOODS.<br><br>BUYER, AT ITS EXPENSE, HAS THE RIGHT TO AUDIT AND REVIEW ALL RELEVANT BOOKS, RECORDS, PAYROLL DATA, RECEIPTS AND OTHER DOCUMENTS, INCLUDING SELLER'S ADMINISTRATIVE AND ACCOUNTING POLICIES, GUIDELINES, PRACTICES AND PROCEDURES, IN ORDER TO SUBSTANTIATE ANY CHARGES AND OTHER MATTERS UNDER THIS CONTRACT. SELLER WILL MAINTAIN AND PRESERVE ALL SUCH DOCUMENTS FOR A PERIOD OF FOUR (4) YEARS FOLLOWING FINAL PAYMENT UNDER THIS CONTRACT. IN ADDITION, BUYER HAS THE RIGHT TO INSPECT ALL INVENTORIES, WORK-IN-PROCESS, MATERIALS, MACHINERY, EQUIPMENT, TOOLING, FIXTURES, GAUGES, AND OTHER ITEMS RELATED TO SELLER'S PERFORMANCE OF THIS CONTRACT. SELLER WILL PROVIDE BUYER WITH REASONABLE ACCESS TO ITS FACILITIES AND OTHERWISE COOPERATE AND FACILITATE ANY SUCH AUDITS OR INSPECTIONS BY BUYER.<br><br>PPAP SAMPLE SUBMISSION INSTRUCTIONS:<br>THE ENCLOSED LABEL (FORM GM #1387) MUST BE USED REGARDLESS OF THE METHOD OF SHIPMENT. THIS ASSURES | | | |

DELPHI
Automotive Systems

DELPHI CHASSIS SYSTEMS
P.O. BOX 1042
DAYTON OH
45401 US

# PURCHASE ORDER: DCS94056

PAGE

SHIP TO: SEE BELOW
US

INVOICE TO: NO INVOICES REQUIRED TO ACCTS PAYABLE UNLESS OTHERWISE STATED ON PO OR RELEASE.
US

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 26-591-6502

TO:
SIEMENS VDO AUTOMOTIVE
1 AVENUE PAUL OURLIAC
BOITE POSTAL 1149
TOULOUSE CEDEX FR
31036
FRANCE

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order.
This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Goverment Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | PHONE: 937-455-737 |
|---|---|
| 12/10/02 | M SHIELDS |
| ALTERATION ISSUE DATE | VZ — Buyer |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SPCOL | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT MEAS |
|---|---|---|---|---|---|---|
| | | | SPECIAL HANDLING OF THE SAMPLE PARTS WHEN THEY ARRIVE AT DELPHI ENERGY & CHASSIS SYSTEMS. SAMPLE PARTS AND DOCUMENTATION FOR YOUR PPAP SHOULD BE SENT TO: DELPHI ENERGY & CHASSIS SYSTEMS, KETTERING OPERATIONS, ATTN: METROLOGY LAB - DOCK 11, WOODMAN DRIVE - GATE #4, KETTERING, OHIO 45420 | | | |
| | | | TERMS AND CONDITIONS JANUARY 2001, APPLY OF WHICH SUPPLIER HAS RECEIVED A COPY. | | | |

A003230 USER JANE T WILLIAMS

LAST PAGE



Automotive Systems

DELPHI CHASSIS SYSTEMS
P.O. BOX 1042
DAYTON OH US
45401

SHIP TO: SEE BELOW US

INVOICE TO: NO INVOICES REQUIRED TO ACCTS PAYABLE UNLESS OTHERWISE STATED ON PO OR RELEASE. US

# PURCHASE ORDER: DCS94056

PAGE 1

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment.
Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do not Declare Valuation of Express Shipments or Insure Parcel Post.

TO: VENDOR NUMBER 26-591-6502
SIEMENS VDO AUTOMOTIVE
1 AVENUE PAUL OURLIAC
BOITE POSTAL 1149
TOULOUSE CEDEX FR
31036
FRANCE

If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | PHONE: 937-455-7374 |
|---|---|
| 12/10/02 | M SHIELDS |
| ALTERATION ISSUE DATE | VZ — Buyer |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SPCOL | SEE BELOW |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NO. | NOUN NAME / DESCRIPTION / RFQ NUMBER | DATE REQUIRED | TAX CODE/ % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY EUR EUROPEAN CURRENCY UNIT | | | | | |
| | | | PLEASE MAIL TWO (2) COPIES OF YOUR INVOICE TO: DELPHI ENERGY & CHASSIS SYSTEMS ATTN: JOAN PHILPOT, MAIL STOP 1-08 P. O. BOX 1042 DAYTON, OH 45401 ANY QUESTIONS CONCERNING THIS RELEASE, PLEASE CALL MIKE SHIELDS, PH: 937-455-7374, FAX: 937-455-9133. | | | | | |
| | | | TOOLING LOCATION: SIEMENS VDO AUTOMOTIVE 1 AVENUE PAUL OURLIAC BOITE POSTAL 1149 TOULOUSE CEDEX FRANCE 31036 | | | | | |
| 0001 | 1 | PR677240 001 | T22212835, T22212839, T22197737 ECU - SUSPENSION - MRRTD - BSRTD COMPONENT PART AND ECU ASSEMBLY TOOLING FOR PRODUCTION OF MRRTD AND BSRTD GEN 2 SCR. DRAD CONTROLLERS. GMX245 22212835, GMX295 22212839, GMT800 22197737 | 12/10/02 | C 0.00% | 500000.0000 | | LOT |

Michel POULET
: 1 DEC.2003
AT SE SC2

P.05

SIEMENS VDO
Automotive
Siemens VDO Automotive S.A.S.
1, avenue Paul Ourliac – B.P. 1149
31036 Toulouse cedex 1 – France
Tel. ++33 (0)5 61 19 88 88
Fax ++33 (0)5 61 19 25 25
S.A.S with capital of 70 000 000 Euros - Registered in Toulouse 314 722 026 - VAT number FR 03 314 722 026 - SIRET 314 722 026 00031

INVOICE
Date 11.12.2003 N° 5906009281[illegible]

Your contact in accounting dpt : 33-561 19 85 68
Vendor code :
Deliv. Note Shipping date :

Others References :
Activity : 9 - Engineering

Bill to N°: 12105162
DELPHI CHASSIS SYSTEMS
To : JOAN PHILPOT /accounts payable

MAIL STOP 1-08 PO Box 1042
45401 DAYTON, OH
USA

Transportation Details
Carrier :
Broker :

Loading Location :
Unloading Location :
Transportation Mode :
Total Net Weight : 0
Total Gross Weight : 0,000

Payment Terms
Make remittance to :

Currency EUR
L/C n° :
Your payment by Bank remittance the 31.01.2004
Bank remittance 30 days end of month
Incoterms :

| Cust. Order N° / SIEMENS Ref. N° / Customer Ref. N° | Description | Shipped | Unit Price | Unit | Extension |
|---|---|---|---|---|---|
| DCS94056<br>SECS35-27 | tooling for production of DRAD<br>SESC 35<br>ATTN: Joan PHILPOT | 1 | 500.000,00 | 1UN | 500.000,00 |

Michael M Still
12-18-03

#730939
12/18/03
MT

VAT :
1. Output Tax 19,600 % 98.000,00

| | |
|---|---|
| Sub Total | 500.000,00 |
| Total | 500.000,00 |
| VAT | 98.000,00 |
| Total amount (EUR) | 598.000,00 |

CUSTOMER

Folio : 1/1

```
NPT42030                    MULTIPLE ITEM RECEIPT                    LOC : DC
DC/JZR9WP  /E     RECEIPT TYPE: RECEIPT                              DATE: 12/18/03
                                                                     TIME: 15:44:22
A/C:    SB./RELEASE #: DCS94056 BEG SEQ:        RECEIPT #: 730939 RSC #:
PACKING SLIP #: 0092816615  CARGO: TOOLING                VERS: 000  VER COMP: Y
DOCK: S99  CARRIER: TT   DATE REC'D:       DATE SHIP'D: 111003  B.P.I. IND:
VENDOR1: SIEMENS VDO AUTOMOTIVE          CMT:                          ID: JZR9WP
VENDOR2:                                 CMT:
A/C SEQ#  QTY REC'D S  U/M ITEM ID/PR#    NOUN NAME/PR DESC   CHEMCL    QTY OPEN
   00001       1.00 A LOT  PR677240 001   T22212835, T2221283                0.00

E01751-ROUTING SLIP CANNOT PRINT - TERMINAL ID VA2T1E1D NOT FOUND ON NPT02000

PF01: HELP          PF04: BLANK SCREEN  PF07: SB/RL REC INQ PF10: VERSION COMP
PF02: GO TO         PF05: RECEIPT HDR   PF08: ITEM BUY HIST PF11: SCROLL FWRD
PF03: PREVIOUS MENU PF06: ROUTING SLIP  PF09: ORD STAT INQ  PASSWORD:
```

| Doc Date | Process # | PO # | Part/C Type | Amount |
| --- | --- | --- | --- | --- |
| 11/10/2003 | '9000024948729 | DCS94056 | | ($618,375.00) |
| 11/10/2003 | '9000024948729 | DCS94056 | 'PR677240001 | $618,375.00 |

| Account | W/O | Supplier Na | DUNS # | Event Code | Event Date | Aft Inv | BOL | Document |
|---|---|---|---|---|---|---|---|---|
| 'H24412000000000000DIS0000 | | SIEMENS | 'RD265916502 | 12 | 12/24/2003 | N | '0092816615 | 'H202037309390001 |
| 'H332700000060004000000000 | 'H3663630 | SIEMENS | 'RD265916502 | 12 | 12/24/2003 | N | '0092816615 | 'H202037309390001 |

# DELPHI AUTOMOTIVE SYSTEMS GENERAL TERMS AND CONDITIONS

*elphi Automotive Systems seeks to exceed its customers' expectations. Delphi's suppliers are integral to achieving this objective, and Delphi hopes that its suppliers will recognize Delphi as their preferred customer. Delphi will establish high performance expectations for itself and its suppliers, measure erformance and reward superior performance.*

## . ACCEPTANCE

eller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a art of, this contract and each purchase order, release, requisition, work order, shipping instruction, pecification and other document, whether expressed in written form or by electronic data interchange, elating to the goods and/or services to be provided by Seller pursuant to this contract (such documents e collectively referred to as this "Contract"). Seller acknowledges and agrees that it has read and nderstands these General Terms and Conditions. If Seller accepts this Contract in writing or ommences any of the work or services which are the subject of this Contract, Seller will be deemed to ave accepted this Contract and these General Terms and Conditions in their entirety without odification. Any additions to, changes in, modifications of, or revisions of this Contract (including ese General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer xcept to the extent that Buyer expressly agrees to accept any such proposals in writing

## . SHIPPING AND BILLING

1 Shipping. Seller will (a) properly pack, mark and ship goods as instructed by Buyer or any carriers nd in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) ol charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, es, etc.) unless otherwise expressly stated in this Contract, (d) provide packing slips with each hipment that identify Buyer's contract and/or release number and the date of the shipment, and (e) omptly forward the original bill of lading or other shipping receipt with respect to each shipment as uyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification entification of the goods shipped as Buyer or the carrier requires. The marks on each package and entification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily entify the goods.

2 Billing. Seller will (a) accept payment based upon Buyer's Evaluated Receipt Record/Self-Billed voice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by ectronic funds transfer. If the payment due date is not otherwise specified in this Contract, the ayment due date will be the due date established by the Multilateral Netting System (MNS-2) used by uyer, which provides, on average, that payment will be due on the second day of the second month llowing the date Buyer receives the goods or services. Buyer may withhold payment for any goods or ervices until Buyer receives evidence, in such form and detail as Buyer requires, of the absence of any ns, encumbrances and claims on such goods or services

3 Delivery Schedules. Deliveries will be made in the quantities, on the dates, and at the times pecified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this ontract. Time is of the essence with respect to all delivery schedules Buyer establishes. Buyer will not e required to pay for any goods that exceed the quantities specified in Buyer's delivery schedules or to ccept goods that are delivered in advance of the delivery date specified in Buyer's delivery schedules. eller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyer's elivery schedules. If Buyer determines that the requirements of Buyer's customers or market, conomic or other conditions require changes in delivery schedules, Buyer may change the rate of cheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to price adjustment or other modification of this Contract

4 Premium Shipments. If Seller fails to have goods ready for shipment in time to meet Buyer's elivery schedules using the method of transportation originally specified by Buyer and, as a result, uyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, eller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire ost of such premium shipment, unless Buyer's actions caused Seller to fail to meet Buyer's delivery chedules, in which case Buyer will pay any costs for premium shipment

## . SPECIFICATION, DESIGN AND SCOPE CHANGES

uyer may at any time require Seller to implement changes to the specifications or design of the goods to the scope of any services or work covered by this Contract, including work related to inspection, sting or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as actical, Seller will promptly implement such changes. Buyer will equitably determine any adjustment in ice or delivery schedules resulting from such changes, including Buyer's payment of reasonable costs modifications to Seller's Equipment and Facilities (as defined in Article 16) necessary to implement ch changes. In order to assist in the determination of any equitable adjustment in price or delivery hedules, Seller will, as requested, provide information to Buyer, including documentation of changes Seller's cost of production and the time to implement such changes. In the event of any disagreement ising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, ovided, however, that Seller will continue performing under this Contract, including prompt plementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising it of such changes

## . QUALITY AND INSPECTION

eller will participate in Buyer's supplier quality and development program(s) and comply with all quality quirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its presentatives and consultants to (i) inspect Seller's books and records in order to monitor Seller's mpliance with this Contract and Seller's financial condition and (ii) enter Seller's facilities at asonable times to inspect such facilities and any goods, materials and property that relate to this ontract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or ished goods.

## . NON-CONFORMING GOODS

uyer is not required to perform incoming inspections of any goods, and Seller waives any right to quire Buyer to conduct any such inspections. Seller will not substitute any goods for the goods vered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as n-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or ) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the anner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours notice of Buyer's rejection of non-conforming goods (or such shorter period as is reasonable under e circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to eller, provided, however, that in any event Buyer may elect to arrange for the shipment of any n-conforming goods back to Seller at Seller's expense. Seller will bear all risk of loss with respect to l non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store dispose any non-conforming goods. Buyer's payment for any non-conforming goods will not nstitute acceptance by Buyer, limit or impair Buyer's right to exercise any rights or remedies, or relieve eller of responsibility for the non-conforming goods.

## . FORCE MAJEURE

Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is able to accept delivery, buy or use any goods or services covered by this Contract, as a result of an ent or occurrence beyond the reasonable control of the affected party and without such party's fault or gligence, then any delay or failure to perform under this Contract that results from such event or ccurrence will be excused for so long as such event or occurrence continues, provided, however, that e affected party gives written notice of such delay (including the anticipated duration of the delay) to e other party as soon as possible after the event or occurrence (but in no event more than three (3) ys thereafter). Such events and occurrences may include, by way of example and not limitation, tural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor oblems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. uring any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other ailable sources, in which case the quantities under this Contract will be reduced by the quantities of ch substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the bstitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide bstitute goods from other available sources in quantities and at times Buyer requests and at the prices t forth in this Contract. If Seller fails to provide adequate assurances that any delay will not exceed irty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without ibility. Before any of Seller's labor contracts expire and as soon as Seller anticipates or learns of any pending strike, labor dispute, work stoppage or other disruption at Seller's facilities that might affect e delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any ch disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to uyer for at least thirty (30) days after such disruption commences.

## . WARRANTY

1 General. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the ods and services covered by this Contract will (a) conform to all applicable specifications, drawings, mples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, ) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular urposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a parate agreement for the administration or processing of warranty chargebacks for nonconforming ods.

2 Date and Time Processing. Seller warrants and guarantees to Buyer and its customers that any oducts (including computer hardware, software, firmware, machinery and equipment) covered by this ontract must at all times accurately process, handle, calculate, compare and sequence date and time ta from, into, within and between the 20th and 21st centuries, including leap year calculations

3 Warranty Period. The period for each of the foregoing warranties will be that provided by applicable w, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period ll apply to the goods covered by this Contract

## . INGREDIENTS AND HAZARDOUS MATERIALS

Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs, (a) a list all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any anges in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller ll furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on e goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the ods, together with all special handling instructions, safety measures and precautions as may be cessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

## 9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees

## 10. TERMINATION FOR BREACH

Buyer may terminate all or any part of this Contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Seller's warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract, or (c) fails to assure timely and proper completion of services or delivery of goods

## 11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may, at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests

## 12. TECHNICAL INFORMATION

12.1 Exchange of Information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyer's drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract

12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyer's customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may hereafter disclose in connection with the goods or services covered by this Contract

12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyer's customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, micro code, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing this Contract (separately or as part of any goods and components) are "works made for hire" and the sole property of Buyer. To the extent that such works of authorship do not qualify under applicable law as works made for hire, Seller agrees to assign and assigns to Buyer all right, title and interest in any intellectual property rights in such works of authorship.

## 13. INDEMNIFICATION

13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that any such infringement arose out of compliance with Buyer's specifications.

13.2 Activities on Buyer's Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyer's or Buyer's customer's premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyer's customer

13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyer's specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than Seller.

## 14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyer's request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from or relating to Seller's noncompliance with this Article.

## 15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or as reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Seller's obligations or liabilities under this Contract.

## 16. SELLER'S EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract ("Seller's Equipment"). Seller will insure Seller's Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Seller's Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Seller's Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Seller's Equipment. This option will not apply to the extent that Seller's Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Buyer's right to exercise this option is not conditioned on Seller's breach or Buyer's termination of this Contract or upon payment of any other amounts due under this Contract

## 17. BUYER'S PROPERTY

17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part ("Buyer's Property"), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyer's Property (such as tooling), Seller will purchase and pay for such Buyer's Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyer's Property (such as tooling) without separate or additional payment or reimbursement by Seller, Seller acknowledges and agrees that Buyer's issuance of this Contract is good and sufficient consideration for such Buyer's Property and that title to such Buyer's Property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyer's Property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyer's Property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyer's ownership of Buyer's Property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment to or incorporation into Buyer's Property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyer's Property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyer's Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyer's Property for work performed on such property or otherwise. Goods manufactured based on Buyer's drawings and/or specifications may not be used for Seller's own use or sold to third parties without Buyer's express written authorization

17.2 Seller's Duties with Respect to Buyer's Property. While Buyer's Property is in Seller's possession and until Seller delivers Buyer's Property back to Buyer, Seller bears the risk of loss and damage to Buyer's Property. Seller will be responsible for the cost of repairing or replacing Buyer's Property if it is damaged or destroyed regardless of cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyer's Property at Seller's own expense, (b) use Buyer's Property only for the performance of this Contract, (c) deem Buyer's Property to be personal property, (d) conspicuously mark Buyer's Property as the property of Buyer and maintain such markings, (e) not commingle Buyer's Property with the property of Seller or with that of a third person, (f) not move Buyer's Property from Seller's premises without Buyer's written approval, and (g) use Buyer's Property in compliance with Buyer's or the manufacturer's instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Seller's premises at all reasonable times to inspect Buyer's Property and Seller's records with respect thereto.

17.3 Return of Buyer's Property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyer's Property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Seller's premises and take possession of any and all of Buyer's Property. Upon Buyer's request and in accordance with Buyer's instructions, Buyer's Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Seller's plant property packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyer's Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyer's Property to the location Buyer designates. If Seller does not release and deliver any Buyer's Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Seller's premises, with or without legal process, and take immediate possession of Buyer's Property

17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyer's Property nor the manufacturer's agent nor a dealer therein, (ii) Buyer is bailing Buyer's Property to Seller for Seller's benefit, (iii) Seller is satisfied that Buyer's Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYER'S PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyer's Property, including, without limitation, the use of maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits or any other indirect, special or consequential damages

17.5 Development, Engineering And Consulting Services. Engineering, consulting or development services ("Development Services") funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know how or other intellectual property ("IP") shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services ("Developed IP") to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance

## 18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyer's service and replacement parts requirements to Buyer's customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyer's and its customers' service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the "Post-Production Period"), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyer's service activities

## 19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity

## 20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive those benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import

## 21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, Buyer may (i) setoff such obligations against any sums owing to Seller or Seller's affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Seller's affiliates by Buyer or Buyer's affiliates

## 22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials unless Buyer consents in writing

## 23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Seller's obligations under this Contract

## 24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Seller's prior written consent. Seller may not assign or delegate its rights or obligations under this Contract without Buyer's prior written consent

## 25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party

## 26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued

## 27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Contract will remain in full force and effect.

## 28. RIGHT TO AUDIT AND INSPECT

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Seller's administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Buyer has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Seller's performance of this Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer

## 29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of Buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyer's claims, rights, or remedies.

Revised 6-24-99

Subject to state sales or use tax, including local tax where applicable. Add Tax as separate item on your invoice
Refer to tax notes on proposal
Subject to Federal Excise Tax
Do not bill sales or use tax, we will pay tax direct to State based on actual usage

SALES & USE TAX

E Not subject to state or local sales or use tax. Purchases covered by this order are for resale.
F Not subject to state or local sales or use tax. Purchases covered by this order are for use or consumption in industrial processing
G Not subject to state or local sales or use tax. Purchases covered by this order are for other reasons
H Not subject to state or local sales or use tax. Purchases covered by this order are for other reasons

## DELPHI AUTOMOTIVE SYSTEMS GENERAL TERMS AND CONDITIONS

*Delphi Automotive Systems seeks to exceed its customers' expectations. Delphi's suppliers are integral to achieving this objective, and Delphi hopes that its suppliers will recognize Delphi as their preferred customer. Delphi will establish high performance expectations for itself and its suppliers, measure performance and reward superior performance.*

### 1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). Seller acknowledges and agrees that it has read and understands these General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and these General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

### 2. SHIPPING AND BILLING

2.1 Shipping. Seller will (a) properly pack, mark and ship goods as instructed by Buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) not charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, fees, etc.) unless otherwise expressly stated in this Contract, (d) provide packing slips with each shipment that identify Buyer's contract and/or release number and the date of the shipment, and (e) promptly forward the original bill of lading or other shipping receipt with respect to each shipment as Buyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires. The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods.

2.2 Billing. Seller will (a) accept payment based upon Buyer's Evaluated Receipt Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer. If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the Multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services. Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the absence of any liens, encumbrances and claims on such goods or services.

2.3 Delivery Schedules. Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract. Time is of the essence with respect to all delivery schedules Buyer establishes. Buyer will not be required to pay for any goods that exceed the quantities specified in Buyer's delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyer's delivery schedules. Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyer's delivery schedules. If Buyer determines that the requirements of Buyer's customers or market, economic or other conditions require changes in delivery schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other modification of this Contract.

2.4 Premium Shipments. If Seller fails to have goods ready for shipment in time to meet Buyer's delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyer's actions caused Seller to fail to meet Buyer's delivery schedules, in which case Buyer will pay any costs for premium shipment.

### 3. SPECIFICATION, DESIGN AND SCOPE CHANGES

Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes. Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyer's payment of reasonable costs of modifications to Seller's Equipment and Facilities (as defined in Article 18) necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes to Seller's cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

### 4. QUALITY AND INSPECTION

Seller will participate in Buyer's supplier quality and development program(s) and comply with all quality requirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its representatives and consultants to (i) inspect Seller's books and records in order to monitor Seller's

requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

### 9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees

### 10. TERMINATION FOR BREACH

Buyer may terminate all or any part of this Contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Seller's warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract, or (c) fails to assure timely and proper completion of services or delivery of goods.

### 11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may, at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

### 12. TECHNICAL INFORMATION

12.1 Exchange of Information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyer's drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyer's customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may hereafter disclose in connection with the goods or services covered by this Contract

12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyer's customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, micro code, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing this Contract (separately or as part of any goods and components) are "works made for hire" and the sole property of Buyer. To the extent that such works of authorship do not qualify under applicable law as works made for hire, Seller agrees to assign and assigns to Buyer all right, title and interest in any intellectual property rights in such works of authorship.

### 13. INDEMNIFICATION

cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyer's Property at Seller's own expense, (b) use Buyer's Property only for the performance of this Contract, (c) deem Buyer's Property to be personal property, (d) conspicuously mark Buyer's Property as the property of Buyer and maintain such markings, (e) not commingle Buyer's Property with the property of Seller or with that of a third person, (f) not move Buyer's Property from Seller's premises without Buyer's written approval, and (g) use Buyer's Property in compliance with Buyer's or the manufacturer's instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Seller's premises at all reasonable times to inspect Buyer's Property and Seller's records with respect thereto.

17.3 Return of Buyer's Property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyer's Property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Seller's premises and take possession of any and all of Buyer's Property. Upon Buyer's request and in accordance with Buyer's instructions, Buyer's Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Seller's plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyer's Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyer's Property to the location Buyer designates. If Seller does not release and deliver any Buyer's Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Seller's premises, with or without legal process, and take immediate possession of Buyer's Property

17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyer's Property nor the manufacturer's agent nor a dealer therein, (ii) Buyer is bailing Buyer's Property to Seller for Seller's benefit, (iii) Seller is satisfied that Buyer's Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYER'S PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyer's Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits or any other indirect, special or consequential damages

17.5 Development, Engineering And Consulting Services. Engineering, consulting or development services ("Development Services") funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know how or other intellectual property ("IP") shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services ("Developed IP") to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance

### 18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyer's service and replacement parts requirements to Buyer's customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by this Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyer's and its customers' service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the "Post-Production Period"), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyer's service activities

### 19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity

### 20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import

### 21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, Buyer may (i) setoff such obligations against any sums owing to Seller or Seller's affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Seller's affiliates by Buyer or Buyer's affiliates

### 22. NO ADVERTISING

compliance with this Contract and Seller's financial condition and (ii) enter Seller's facilities at reasonable times to inspect such facilities and any goods, materials and property that relate to this Contract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

## 5. NON-CONFORMING GOODS

Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections. Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyer's rejection of non-conforming goods (or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to arrange for the shipment of any non-conforming goods back to Seller at Seller's expense. Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods. Buyer's payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyer's right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

## 6. FORCE MAJEURE

If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such party's fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided, however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. During any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other available sources, in which case the quantities under this Contract will be reduced by the quantities of such substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the substitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide substitute goods from other available sources in quantities and at times Buyer requests and at the prices set forth in this Contract. If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without liability. Before any of Seller's labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Seller's facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

## 7. WARRANTY

7.1 General. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this Contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for nonconforming goods.

7.2 Date and Time Processing. Seller warrants and guarantees to Buyer and its customers that any products (including computer hardware, software, firmware, machinery and equipment) covered by this Contract must at all times accurately process, handle, calculate, compare and sequence date and time data from, into, within and between the 20th and 21st centuries, including leap year calculations.

7.3 Warranty Period. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract.

## 8. INGREDIENTS AND HAZARDOUS MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs, (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal

13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that any such infringement arose out of compliance with Buyer's specifications.

13.2 Activities on Buyer's Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyer's or Buyer's customer's premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or wilful misconduct of Buyer or Buyer's customer.

13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyer's specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than Seller.

## 14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyer's request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from or relating to Seller's noncompliance with this Article.

## 15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or as reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Seller's obligations or liabilities under this Contract.

## 16. SELLER'S EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract ("Seller's Equipment"). Seller will insure Seller's Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Seller's Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Seller's Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Seller's Equipment. This option will not apply to the extent that Seller's Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Buyer's right to exercise this option is not conditioned on Seller's breach or Buyer's termination of this Contract or upon payment of any other amounts due under this Contract.

## 17. BUYER'S PROPERTY

17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part ("Buyer's Property"), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyer's Property (such as tooling), Seller will purchase and pay for such Buyer's Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyer's Property (such as tooling) without separate or additional payment or reimbursement by Seller, Seller acknowledges and agrees that Buyer's issuance of this Contract is good and sufficient consideration for such Buyer's Property and that title to such Buyer's Property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyer's Property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyer's Property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyer's ownership of Buyer's Property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment to or incorporation into Buyer's Property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyer's Property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyer's Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyer's Property for work performed on such property or otherwise. Goods manufactured based on Buyer's drawings and/or specifications may not be used for Seller's own use or sold to third parties without Buyer's express written authorization.

17.2 Seller's Duties with Respect to Buyer's Property. While Buyer's Property is in Seller's possession and until Seller delivers Buyer's Property back to Buyer, Seller bears the risk of loss and damage to Buyer's Property. Seller will be responsible for the cost of repairing or replacing Buyer's Property if it is damaged or destroyed regardless of

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Seller's advertising or promotional materials unless Buyer consents in writing.

## 23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Seller's obligations under this Contract.

## 24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Seller's prior written consent. Seller may not assign or delegate its rights or obligations under this Contract without Buyer's prior written consent.

## 25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

## 26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in the court(s) having jurisdiction over Buyer's location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

## 27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule, and the remaining provisions of this Contract will remain in full force and effect.

## 28. RIGHT TO AUDIT AND INSPECT

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Seller's administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Buyer has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Seller's performance of this Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

## 29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of Buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyer's claims, rights, or remedies.

Revised 6-24/99

SALES & USE TAX

A. Subject to state sales or use tax, including local tax where applicable. Add Tax as separate item on your invoice
B. Refer to tax rules on proposal
C. Subject to Federal Excise Tax.
D. Do not bill sales or use tax, we will pay tax direct to State based on actual usage
Permit Nos - Alabama 605, New York DP 3487, Ohio 98-002667
E. Not subject to state or local sales or use tax. Purchases covered by this order are for resale.
F. Not subject to state or local sales or use tax. Purchases covered by this order are for use or consumption in industrial processing
G. Not subject to state or local sales or use tax. Purchases covered by this order are for other reasons
H. Not subject to state or local sales or use tax. Purchases covered by this order are for other reasons