# EXHIBIT J

# EQUIPMENT LEASE AGREEMENT

THIS AGREEMENT by and between ABX LEasing,Ltd 2229 W Hill Road,Flint,MI(hereinafter referred to as "Lessor"), and NU-TECH PLASTIC ENGINEERING, INC of 8018 Embury Road,Grand Blanc,Mi 48439 (hereinafter referred to as "Lessee") made the 15th day of December, 1997(hereinafter referred to as "Commencement Date").

WITNESSETH: NU-TECH PLASTIC ENGINEERING,INC  8018 Embury Road,Grand Blanc,Michigan 48439

WHEREAS, Lessee desires to lease from Lessor certain equipment; and ABX Leasing,Ltd 2229 W Hill Rd,Flint,Mi 48507

WHEREAS, Lessor agrees to lease to Lessee upon the terms and conditions hereinafter set forth, for use at Lessee's plant at 8018 Embury Road,Grand Blanc,Michigan 48439

the following described machinery; hereinafter known as "Equipment":

| Equipment | Model | Serial # | Price |
|---|---|---|---|
| (1) Cincinnati Milacron Elektra E550-6 | | | $432,690.00 |
| (1) Tilt Table(accessorie ) | | | 1,894.00 |
| Customer's Order No. #6806 | (1) MFCH-300 | | 4,790.00 |
| | (1) GT-8 LOADER | | 2,835.00 |
| | Freight VIA Hoover | | 2,459.00 |
| | | Taxes $ | 26,532.54 |
| | | | 471,200.54 |
| | | Total | $471,200.54 |

NOW, THEREFORE, for and in consideration of the premises and mutual promises herein contained, the parties hereto agree as follows:

TERM. This Lease shall be effective for the period commencing Dec.15th,97 through November 15th, 2002

RENTAL PAYMENTS. Lessee agrees to pay to Lessor the aggregate amount of $471,200.54 Includes **** applicable sales and use taxes, said amount to be paid as follows: Freight cost included also.

(a) First rental payment of $7,853.34 includes plus applicable sales and use taxes; & Freight. Security agreement for int-rate being charge over 60 mos of lease. (b) Sixty consecutive monthly/yearly rental payments of $10,484.21 Includes applicable sales and use taxes, each beginning on December 15th,1997 which are payable on the same day of each month/quarter. late Penalty Fee after 10 days $1,650.00

(c) Explanation of Rental payments, take Total principal cost which is $471,200.54 and charge 12% interest for 60 months on Total package, payments for 60 month rental is $10,484.21. Renewable Lease @ the ending of 60 month rental. subject to renegotiation.

3. OPTIONS. At the expiration of the lease term, if Lessee is not in default in the performance of any of its obligations hereunder, Lessee shall (check applicable box):

(a) [XX] renew the Lease as stated in Paragraph 19.

(b) [ ] purchase the Equipment at the Fair Market Value.

(c) [ ] purchase the Equipment for $ _____

(d) [ ] return the Equipment to the Lessor.

All provisions of this lease shall apply during any extended period, except as provided herein or as may be modified by any subsequent agreement of the parties.

4. LEASE/COMMENCEMENT/LOCATION OF EQUIPMENT. Lessor leases to Lessee and Lessee rents from Lessor the Equipment listed above. The Equipment will be located at the above address and will not be moved to a new location without written permission first given by Lessor. This Lease shall commence on the ship date per Paragraph 7 and Lessee shall make its next Rental Payment hereunder on the first day of the second month following the Commencement Date.

5. NON-CANCELABLE/NO WARRANTY/LIMITATION OF LIABILITY. THIS IS A NON-CANCELABLE LEASE FOR THE ENTIRE TERM INDICATED ABOVE. If the Equipment does not operate as represented or warranted or is unsatisfactory for any reason, Lessee shall make a claim on account thereof and in any such event shall make all payments of rent hereunder to Lessor without offset, deduction or abatement for any reason. LESSOR MAKES NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER WITH RESPECT TO THE EQUIPMENT OTHER THAN THAT CONTAINED IN LESSOR'S STANDARD TERMS AND CONDITIONS OF SALE DOMESTIC FORM JN89/72, NOR SHALL LESSOR BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES IN ANY WAY ARISING (INCLUDING STRICT OR ABSOLUTE LIABILITY IN TORT).

6. TRUE LEASE/SECURITY INTEREST. The parties hereto intend this transaction to be a "true lease" and not a lease intended as security under the Uniform Commercial Code. In the unlikely event that this Lease is determined to be a lease intended as security, the Lessee hereby grants Lessor a security interest in the Equipment described in this Lease to secure the performance and payment of all obligations and indebtedness of whatever kind and whenever created of Lessee to Lessor, including but not limited to Lessee's obligations under this Lease.

7. AUTHORIZATION TO INSERT DATE. LESSEE AUTHORIZED LESSOR TO INSERT A COMMENCEMENT DATE ON THIS LEASE AGREEMENT. SUCH DATE SHALL BE THE SAME DATE

AS SET FORTH AS THE "SHIP DATE" ON INVOICE NUMBER 301-U-102. LESSOR IS ALSO AUTHORIZED TO INSERT THE PAYMENT DUE DATES ON SAID DOCUMENTS.

8. PAYMENT/ELECTRONIC DEBIT. Lessee promises and agrees to pay, without demand, all specified Rental Payments (unless otherwise agreed to by Lessor) beginning on the first day of the second month (the "First Full Lease Month") after the Commencement Date.

Lessee hereby authorizes Lessor to initiate electronic debit entries to the following account for the purpose of payments due Lessor under this Lease Agreement.

Financial Institution: _____

Address: _____

City: _____

State: _____ Zip: _____

Routing Number: _____

Checking Account Number: _____

This authorization is to remain in full force and effect until all scheduled lease payments have been paid. For as long as payments are made pursuant to this authorization, the lease payments as stated in Paragraph 2 shall be reduced to $_____. Electronic debit shall commence on the first date that a lease payment hereunder is due.

If for any reason, payment is not made to Lessor pursuant to this authorization, such payment and all remaining payments shall revert to that amount as originally indicated in this Lease Agreement.

In the event said account, number and/or institution be changed, it is agreed that this authorization may be used by Lessor to effect a transfer of this electronic debit to any new or different account, number and/or institution without need for re-execution of a new authorization in substitution hereof; provided that if electronic debit payments are interrupted or delayed to any extent by such change, all remaining payments shall be as originally stated in this Lease Agreement and electronic debits shall thereafter cease. Lessee shall immediately advise Lessor of any such change affecting the above account information.

In the event electronic debit is not utilized, payment shall be in the amount first stated in Paragraph 2 above and shall be made at the office of Lessor, or to such other person and/or at such other place as Lessor may from time to time designate in writing.

9. ASSIGNMENT. Lessor may, without notice to Lessee, assign this Lease and all of Lessor's rights, remedies and title to this Lease, the Rental Payments and the Equipment, and the same shall be free from all defenses, setoffs or counterclaims of any kind which Lessee may be entitled to assert against Lessor. Lessee hereby waiving the same as against such assignee. Any assignee of Lessor does not assume any obligations of the Lessor herein named.

10. REPRESENTATIONS AND WARRANTIES. Lessee represents and warrants that if Lessee is a corporation (i) it is duly organized, validly existing and in good standing in the state of its incorporation and is qualified to do business wherever such qualification is required; (ii) it has the lawful corporate power and authority to conduct its business, own its assets and to execute, deliver and comply with the provisions of this Lease Agreement; (iii) the execution and delivery of this Lease Agreement and compliance by Lessee with the provision hereof have been duly authorized by all necessary corporate action; (iv) the individual executing this Lease Agreement on behalf of Lessee has full authority to do so; (v) all financial information submitted by or on behalf of Lessee is accurate and Lessee has good, valid and marketable title to all the properties and assets reflected as being owned by it on any balance sheets submitted to Lessor; and (vi) the Equipment will be used for business purposes only by qualified and competent personnel.

If Lessee is an individual or a partnership, Lessee represents and warrants that Lessee has the legal capacity to enter into this Lease Agreement. Lessee represents and warrants that the execution, delivery and compliance with the provisions of the Lease Agreement do not and will not violate the provisions of any applicable law or government regulation.

11. PERSONAL PROPERTY/FILINGS. The Equipment shall always be deemed personal property even if attached to realty. All replacements, accessories or capital improvements made to or placed in or upon the Equipment shall become a component part thereof and title thereto shall be immediately vested in Lessor and shall be subject to the terms hereof. LESSEE AGREES THAT LESSOR IS AUTHORIZED, AT ITS OPTION (1) to file counterparts or photocopies of leases marked "non-negotiable for Filing Purposes only" in lieu of financing statements, (2) to file financing statements(s) or amendment(s) thereto without the signature of Lessee with respect to any of the Equipment, or (3) if a signature is required by law, then Lessee acknowledges and agrees that Secured Party may, on Lessee's behalf as agent, sign any financing statements(s) or amendment thereto relating to the Equipment, and file same in the appropriate recording office(s).

12. TITLE/RETURN OF EQUIPMENT. Lessor may inspect the Equipment at any time and Lessee agrees to keep it in first class condition and repair at Lessee's expense and to house same in suitable shelter and not mortgage, pledge, assign, sell, sublet or otherwise encumber or dispose of its interest therein or in any equipment or accessories attached thereto without the prior written consent of Lessor. No title or right in the Equipment shall pass to Lessee except as expressly granted. Plates or other markings may be affixed to or placed on the Equipment by Lessor or at Lessor's request by Lessee at Lessee's expense indicating that Lessor is the owner thereof and Lessee will not remove the same. Upon termination of this Lease, Lessee will immediately crate, insure and ship the Equipment together with instructional and other brochures or manuals relating to such Equipment to whatever destination Lessor shall direct, all at Lessee's expense, in as good condition as received less normal wear and tear.

13. RISK OF LOSS/STIPULATED VALUE/INSURANCE. Lessee shall bear all risk of loss, theft or destruction to the Equipment from any cause whatsoever. No such loss or damage shall relieve Lessee from any obligations under this Lease, all of which continue in full force and effect. In the event of any such loss, Lessee, at Lessor's option shall (a) place the affected

Lessee Initials _____

2

Equipment in good repair, condition and working order or replace the same with like equipment in good repair, condition and working order, or (c) pay the Lessor the Stipulated Loss Value, as such term is defined below, within sixty days of notification by Lessor that Lessor has elected to receive the Stipulated Loss Value. "Stipulated Loss Value" shall be an amount equal to (i) the total of all rent and any other amounts (including late charges), if any, due with respect to the affected Equipment as of the date of payment of the Stipulated Loss Value, plus (ii) all future Rental Payments with respect to such Equipment, discounted to present value at the rate of five percent (5%) per annum simple interest from the date each such future Rental Payment would have been made to the date of payment of the Stipulated Loss Value, plus (iii) depending upon the purchase option selected above, either the anticipated fair market value of the Equipment at the expiration of the Lease term, or if a dollar amount is selected as the purchase option, that dollar amount, discounted to present value at the rate of five (5%) per annum simple interest from the date of the last scheduled rental payment on the Equipment to the date of payment of the Stipulated Loss Value.

During the lease term of the Equipment, Lessee shall at its expense, keep in effect an "All Risk" Property Insurance policy covering the Equipment in an amount not less than the current replacement cost of the Equipment. Lessee shall also carry a Public Liability Insurance policy (Comprehensive General Liability or other similar form of third party liability coverage acceptable to Lessor). Such policies shall be in form and amount and with insurers acceptable to Lessor. The All Risk Property Insurance policy shall name the Lessor or its assigns as Loss Payee and the Public Liability Insurance policy shall name the Lessor or its assignee as an additional insured. Each policy shall provide (i) for no less than thirty (30) days prior written notice of cancellation or non-renewal to Lessor, and (ii) that such policy shall not be invalidated as against Lessor or its assigns for violation of any term of the policy or Lessee's application therefor. Lessee hereby appoints Lessor as its attorney-in-fact with full power and authority to do all things, including but not limited to requesting required insurance coverages, making claims, receiving payments and executing and endorsing all documents, checks, drafts or other instruments necessary or advisable to secure payments due under any policy contemplated hereby. The foregoing appointment shall not relieve Lessee from its obligation to procure the insurance policies required herein, to make timely insurance claims and to otherwise cooperate with insurance carriers and Lessor in seeking insurance coverage and recoveries in connection with the Equipment subject to this Lease. Proceeds from any Public Liability policy shall be made payable first on behalf of the Lessor to the extent of its liability, if any. All policies of insurance carried by Lessee, whether primary or excess, shall be primary as to any policies maintained by Lessor.

14. INDEMNITY. Lessee agrees to indemnify, defend and hold Lessor and any third party acting for or on behalf of Lessor free and harmless against all claims, loss, liability and expense (including attorney's fees) of whatever kind arising directly or indirectly out of the use, condition, ownership, operation or leasing of the Equipment or any part thereof, regardless of where, how and by whom operated or any failure on the part of Lessor to perform or comply with any of its obligations under this Lease. This Indemnity shall survive the expiration or other termination of this Lease.

USE/TAXES. Lessee agrees to use, operate and maintain the Equipment in accordance with all laws; to pay as and when due and indemnify and hold Lessor harmless from and against all taxes, assessments, fees penalties and other governmental charges which may be levied or assessed upon or in respect of the Equipment of its use or operation, or upon the earnings arising therefrom; and to file all required tax returns and furnish copies of same to Lessor upon request. Upon Lessor's request, Lessee agrees to pay to Lessor a monthly fee based on a percentage of the total Equipment price (a "Property Tax Fee") in lieu of paying actual property taxes on said Equipment. The amount of the Property Tax Fee shall be based on the average property tax rate effective in the state in which the Equipment is located and on estimation of the amount necessary to pay actual property taxes on said Equipment. The Property Tax Fee shall accrue monthly but shall be due and payable together with each Rental Payment, whether on a monthly, quarterly or other basis. If the Property Tax Fee is not sufficient to pay all property taxes actually levied or assessed against and/or paid by the Lessor, then Lessee shall instead be billed for such actual property taxes.

16. ADDITIONAL RENT/LATE CHARGE. If Lessee shall fail to make any payment or perform any act or obligation required hereunder, Lessor may (but need not) perform such act or obligation at the expense of Lessee, and such payment or performance shall not constitute a waiver or cure of any Lessee default. Any expense so incurred by Lessor shall constitute additional rent due hereunder and shall be payable by Lessee to Lessor upon demand. Any rent, additional rent or other sum due under this Lease shall accrue interest from the due date thereof at the lower of (a) one and one-half percent (1.5%) per month or (b) the highest rate permitted by applicable law. All payments made hereunder shall be applied first to any charges or other expenses due hereunder and the remaining balance, if any, to rent then due.

17. DEFAULT. The occurrence of any of the following shall, at the option of Lessor and without any notice other than as provided herein, constitute an Event of Default under this Lease: (a) Lessee fails to pay any rent or other sums due hereunder and such failure shall continue for ten (10) days; (b) Lessee fails to perform any other covenant herein and such failure continues for ten (10) days after written notice by Lessor to Lessee; (c) Lessee shall cease to do business as a going concern; (d) a petition is filed by or against Lessee under the Bankruptcy Act or any amendment thereto (including a petition for reorganization or arrangement); (e) a substantial change in Lessee's ownership, or control, or a material adverse change in Lessee's financial condition or credit rating; or (f) any of the events described in clauses (c) or (d) above occurs with respect to any other party obligated or responsible for Lessee's obligations hereunder or if any such party claims that it is no longer so obligated or responsible. Any default on the terms of any other agreement executed between the parties (including any entity controlled by, controlling, or under common control with Lessee) may be declared by Lessor to be a default under the terms of this Lease or under the terms of any other agreement between Lessee and Lessor. Any default under the terms of this Lease may be declared by Lessor to be a default under the terms of any other agreement between Lessee and Lessor.

18. REMEDIES. Upon the occurrence of any Event of Default, or at any time thereafter, Lessor at its sole option may exercise one or more of the following remedies: (i) declare all accrued

Lessee Initials _____                                    3

and unpaid rent immediately due and payable; (ii) terminate this Lease as to any or all Items of Equipment upon written notice to Lessee, without prejudice to any other remedies hereunder; (iii) enter at any time any premises where the Equipment may be, with or without legal process, and take possession thereof without such action constituting a termination of this Lease, unless Lessor notifies Lessee in writing to such effect; (iv) proceed by appropriate action, either at law or in equity, to enforce performance by Lessee of the applicable covenants of this Lease or to recover damages for breach thereof; and (v) exercise any and all rights accruing to Lessor under applicable law upon a Lessee default. Lessor, upon default hereunder, shall be entitled to recover, as liquidated damages for the loss of the bargain and not as a penalty, an amount equal to the Stipulated Loss Value of the Equipment, as defined in Paragraph 13, as of the date of default. After repossessing the Equipment, Lessor shall attempt to mitigate Lessee's damages by attempting to sell or release the Equipment in a private transaction before which Lessor may place an offer to purchase the Equipment. If notice thereof is required by law, any notice in writing not less than ten (10) days prior to the date of transfer shall constitute reasonable notice thereof to Lessee. The proceeds of such sale or lease, if any, shall be applied first to Lessor's costs, charges and expenses incurred in taking, removing, holding, repairing and selling or leasing the Equipment; then to the extent not previously paid by Lessee, to pay Lessor any damages then remaining unpaid hereunder; then to reimburse Lessee any such sums previously paid by Lessee as damages hereunder. Lessee shall pay Lessor any deficiency within ten (10) days of written request for same. These remedies shall be in addition to any and all other remedies available to Lessor, at law, in equity or under statute. Lessor's remedies may be exercised concurrently or separately, and the exercise of one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure or delay on the part of Lessor in exercising any right or remedy shall operate as a waiver thereof. Waiver of default shall not be a waiver of any other or subsequent default. Lessee waives demand of performance and notice of sale or lease and manner and place of any advertising. If after default this Lease is placed in the hands of any attorney for collection or enforcement of any other right or remedy of Lessor, Lessee shall pay all costs, expenses and reasonable attorney's fees incurred in connection therewith.

19. PURCHASE OPTION/LEASE EXTENSION. So long as no Event of Default has occurred and is then continuing, on the date of expiration of the lease term (the "Termination Date"), Lessee shall have the option to do one of the following, so long as Lessee has given Lessor the proper written notice specified below: (a) if a purchase option is indicated, to purchase all, but not less than all of the Equipment by payment of (i) the purchase price specified if block (c) of Paragraph 3 is checked or (ii) the Fair Market Value if block (b) of Paragraph 3 is checked, together with all other amounts then due and unpaid, including sales and use tax on the purchase price, hereunder, (b) return the Equipment to Lessor in accordance with the terms of Paragraph 12 hereof, or (c) renew the Lease with respect to all, but not less than all of the Equipment for additional renewal terms at a renewal rent based upon the then current fair market value of the Equipment and as agreed upon by Lessee and Lessor. In the event that Lessee fails to give Lessor proper written notice as specified below, this Lease shall be automatically extended and continued at the same rent in effect for the last Rental Payment until 180 days after Lessor receives such notice in writing from Lessee. Proper written notice by Lessee shall consist of 30 days prior written notice of its intention to exercise any purchase option other than a fair market value option or the renewal option (which shall each require 60 days prior written notice). In the case of renewal or purchase, "fair market value" shall mean the rental amount or purchase price that would be obtained in an arms-length transaction between an informed and willing lessee and lessor under no compulsion to lease or an informed and willing buyer and seller under no compulsion to buy or sell (as the case might be) and shall be determined by mutual agreement of Lessee and Lessor or, if no such agreement can be reached 45 days prior to the Termination Date, by an independent appraiser acceptable to Lessor whose determination shall be given 30 days prior to the Termination Date and shall be binding and conclusive upon Lessee and Lessor. All costs and expenses of any such appraisal shall be borne by Lessee. Any sale of the Equipment pursuant to Lessee's exercise of its purchase option shall be on an "AS-IS, WHERE-IS BASIS" without representation or warranty of any kind from Lessor.

20. ORDER OF PRECEDENCE. To the extent that they conflict, the terms and conditions of the Lease shall supersede and take precedence over the terms and conditions of any other agreement between Lessee and Lessor.

21. WAIVER. Failure of Lessor to exercise a right hereunder on one occasion shall not be deemed a waiver of that or any other right hereunder and shall not preclude exercise of that or another right on another occasion.

22. MERGER/GOVERNING LAW. This Lease Agreement entirely supercedes any prior oral representation, correspondence, proposal, quotation, or agreement between the parties concerning this subject matter. This writing constitutes the final and total expression of such agreement between the parties and it may be altered only by a written modification designating itself as such which is signed by an authorized representative of both parties. This agreement shall be governed by the laws of the state of Ohio.

LESSOR: ABX Leasing, Ltd

BY: _____
John G Cooper/ President
2229 W Hill Road, Flint, Michigan 48507
(Type/Print name of person signing for Lessor)

LESSEE: NU-TECH PLASTIC ENGINEERING, INC

BY: _____
John W Merley /President
8018 Embury Road, Grand Blanc, Michigan 4843'
(Type/Print name of person signing for Lessee)

4