**Hearing Date: November 8, 2007 at 10:00 a.m.**
**Objection Deadline: November 6, 2007 at 4:00 p.m.**

Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: 212.859.8000
Facsimile: 212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
  Delphi Corporation, et al.,                           :    Case No.  05-44481 (RDD)
                                                        :    (Jointly Administered)
                        Debtors.                        :
                                                        :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS OF DELPHI CORPORATION TO ADJOURN THE HEARING ON, AND
FIX A NEW TIME TO OBJECT TO, (A) THE DEBTORS' MOTION FOR ORDER
APPROVING (I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING
DEADLINE, AND PROCEDURES FOR TEMPORARY ALLOWANCE OF CERTAIN
CLAIMS, (III) HEARING DATE TO CONSIDER CONFIRMATION OF PLAN, (IV)
PROCEDURES FOR FILING OBJECTIONS TO PLAN, (V) SOLICITATION
PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM PROCEDURES, (VII)
PROCEDURES FOR RESOLVING DISPUTES RELATING TO POST-PETITION
INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES AND (B) THE
DEBTORS' EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(A), 363(B),
503(B), AND 507(A) AUTHORIZING AND APPROVING AMENDMENT TO DELPHI-
APPALOOSA EQUITY PURCHASE AND COMMITMENT AGREEMENT**

TO:    THE HONORABLE ROBERT D. DRAIN
       UNITED STATES BANKRUPTCY JUDGE

        The Official Committee of Equity Security Holders (the "Equity Committee") of Delphi

Corporation ("Delphi" and, collectively with the above-captioned debtors and debtors-in-

possession, the "Debtors"), by and through its undersigned counsel, hereby submits this

emergency motion (the "Motion") to adjourn the hearing on, and fix a new time to object to, (A)

the Debtors' Motion for Order Approving (I) Disclosure Statement, (II) Record Date, Voting

Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to

Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation

Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving

Disputes Relating to Post-Petition Interest, and (VIII) Reclamation Claim Procedures (the

"Disclosure Statement Motion") and (B) the Debtors' Expedited Motion for Order Under 11

U.S.C. §§ 105(a), 363(b), 503(b), and 507(a) Authorizing and Approving Amendment to Delphi-

Appaloosa Equity Purchase and Commitment Agreement (the "EPCA Motion").  In support of

this Motion, the Equity Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On October 29, 2007, under the guise of filing "amendments," the Debtors

jettisoned the September 6, 2007 Joint Plan of Reorganization of Delphi Corporation and Certain

Affiliates, Debtors and Debtors-In-Possession (the "September Plan") and the Disclosure

Statement with respect to the September Plan (the "September Disclosure Statement").  Thus the

new October plan and October disclosure statement materially modify, among other things, (i)

Debtors' total enterprise value by approximately $900 million; (ii) the total enterprise value on

which the purchase price for the plan investors (the "Plan Investors") is based by $1.0 billion;

(iii) the ownership structure of reorganized Delphi; (iv) the capital structure of reorganized

Delphi; (v) the nature and amount of distributions to each major stakeholder class (other than,

notably, the parties with claims pursuant to the MDL settlements); and (vi) the rights offering

and warrants described in the September Plan and September Disclosure Statement.  The

magnitude of the changes in recoveries and structure results in a new chapter 11 plan that (i)

eschews the EPCA approved by the Court on August 2, 2007; (ii) is not consensual; (iii) amounts

to a massive shift in value being distributed to stakeholders; and (iv) changes the financial

underpinnings of the September Plan. Thus, whether viewed in form or substance the magnitude

of the changes are enormous. There are approximately 340 pages of changed and new

disclosure. Significant substantive changes are illustrated on the chart annexed hereto as Exhibit

A.

       2.      In asking the Court on September 27, 2007, and again on October 3, 2007, to

continue the hearing on the September Disclosure Statement, the Debtors represented to the

Court that only "laser-like" changes to the September Plan would be forthcoming; however, the

changes the Debtors propose are far from "laser-like." The changes drastically modify

stakeholder recoveries and the structure of distributions under the September Plan, as well as

give rise to numerous disclosure and confirmation objections. Such changes require an

adjournment of the hearing on the Disclosure Statement (the "Disclosure Statement Hearing")

and the establishment of a new objection deadline so that the hearing may be renoticed in order

to comply with the twenty-five day period required by Rules 2002(b) and 3017(a) of the Federal

Rules of Bankruptcy Procedure. Furthermore, the adjournment of the Disclosure Statement

Hearing and extension of the time for filing objections are also necessary to give <u>all</u> <u>parties</u> in

<u>interest</u> appropriate notice and opportunity to be heard as required by sections 1125(b) and

102(1) of the Bankruptcy Code.

       3.      Although the Debtors were required by the Court's scheduling order to file their

amendments to the September Plan (the "New Plan") and their amendments to the September

Disclosure Statement (the "New Disclosure Statement") by no later than October 29, 2007 in

order to have objections due on November 2, 2007 and the Disclosure Statement Hearing on

November 8, 2007, the Debtors failed to file such documents until 11:54 p.m. on October 29th.

3

Given the already meager notice, it is not credible to suggest that anyone understood October 29 to mean six minutes before October 30. The scrambling to file by 11:54 p.m. is itself dispositive proof that the changes in both form and substance were so massive that the term "amendment" is an utter misnomer. In any event, the Debtors should not be permitted to circumvent the notice and hearing requirements of the Bankruptcy Code and Bankruptcy Rules under the guise of making a "laser-like" change, and then seek Court approval of a completely different plan without affording all interested parties the due process required by the Bankruptcy Code and the Bankruptcy Rules. The New Plan will be vigorously contested, and therefore now more than ever the time periods mandated by the Bankruptcy Code and Bankruptcy Rules are needed to evaluate the New Disclosure Statement and New Plan.

4.      The Court's scheduling order also required the Debtors to file the EPCA Motion by October 29, 2007 in order to be heard on November 8, 2007. The EPCA Motion was not filed until 1:25 a.m. (New York time) on October 30th.[1] Therefore, as a threshold matter, because the Debtors did not comply with the scheduling order, the EPCA Motion should not be heard on November 8th. Additionally, the arguments and conclusory statements in the EPCA Motion were filed without a scintilla of factual support in the form of affidavits or otherwise. As such, the EPCA Motion was not only late but it was also incomplete.

5.      The meager notice and late filing of the EPCA Motion is especially unacceptable since this motion cannot be gerrymandered into a "continuance" and, other than Plan Investors' patently insulting and self-serving letter setting meaningless deadlines, there is not a single justification for making a motion concerning the sale of all of the Debtors' assets on four days

---

[1]      The Debtors' position is that the EPCA Motion was timely filed because they are relying on California time. As neither the Court, the Debtors, nor counsel for any of the principal parties are based in California, this position is most kindly described as "a bit of a stretch."

4

notice.  Even if it was not late and incomplete, the EPCA Motion constitutes a new sale of the

Debtors on materially different terms that profoundly impacts the recovery of every stakeholder

of the Debtors, and there is simply no basis or justification for dealing with a transaction of this

type on shortened notice.  As set forth in the EPCA Motion, the proposed amendments to the

Equity Purchase and Commitment Agreement that was approved by this Court on August 2,

2007 materially change the terms of the Plan Investors' commitments by, among other things,

significantly reducing the valuation upon which the Plan Investors' investment is based.  Like

with the New Plan, these are not simple or immaterial changes that can be done on shortened

notice.  Parties in interest must have appropriate time to evaluate fully the numerous and

significant issues regarding the proposed amendments including: why the Debtors are allowing

the Plan Investors to renegotiate their commitment even though they remain bound by the old

EPCA, whether the Plan Investors are entitled to keep the fees and expenses they have received

to date, whether the facts and circumstances of the renegotiation preclude a good faith finding

and importantly whether the Plan Investors' transaction with its significantly reduced valuation

(which is lower than other bids received by the Debtors) continues to be the highest offer and

best transaction available to the Debtors.  As such, sufficient time is needed to give parties

appropriate notice of the EPCA Motion and an opportunity to be heard and to allow parties to

evaluate and investigate the modifications proposed in the EPCA Motion (the "New EPCA") as

required by sections 363(b) and 102(1) of the Bankruptcy Code and Rule 2002(a)(2) of the

Federal Rules of Bankruptcy Procedure.

## BACKGROUND

6.      On August 2, 2007, this Court approved the Equity Purchase and Commitment

Agreement (the "Current EPCA"), which formed the basis for the September Plan and the

September Disclosure Statement.

7.    On September 6, 2007, the Debtors filed the September Plan [Docket No. 9263] and the September Disclosure Statement [Docket No. 9264].  The Debtors also filed the Disclosure Statement Motion [Docket No. 9266].

8.    The Disclosure Statement Motion was scheduled to be heard on October 3, 2007, and the objection deadline was set on September 28, 2007.

9.    On September 27, 2007, the Debtors informed the Court that the changes they intended to make to the September Plan would:

> "be laser-like."  That is to say, Delphi does not view this as an opportunity to renegotiate the deal, either on behalf of Delphi's part or on behalf of any other major stakeholder. And we have told our major stakeholders that Delphi is not entertaining a "let's just go back to the drawing board" approach, and nor frankly do I think that any of our stakeholders are pushing that kind of agenda.

September 27, 2007 Transcript pp. 46:25–47:7.[2]  The Court responded:

> I have the understanding that Delphi's own business has not changed; . . . And it seems to me that, if the markets themselves have changed, the value of the company has not, and that should be the basis of your negotiations.  This isn't the type of company that one can deal with based on short-term swings in the marketplace, generally, and you have to base it on the fundamentals of the company.  So I would strongly encourage, as you've represented that they are doing, the parties to take that approach in responding to the liquidity changes in the marketplace.  The value is there, and I assume that those with information know it's there.

September Transcript, pp. 49:15–50:8.

10.    The Disclosure Statement Hearing commenced on October 3, 2007.  After certain objections were heard and adjudicated and the Debtors moved certain evidence into the record,

---

[2]  On October 3, 2007, the Debtors reiterated: "we do anticipate that there may be, as I said before, several [laser]-like, focused amendments to the Plan, which will necessitate some additional disclosure."  October Transcript p. 13:15–17.

the Debtors sought and received a continuance for the completion of the Disclosure Statement

Hearing.  On October 9. 2007, the Court entered the Order (A) Disposing of Certain Objections

to Debtors' Disclosure Statement and Solicitation Procedures Motion and (B) Setting Further

Non-Omnibus Hearing Date and Related Procedures (the "Disclosure Statement Order") which,

among other things, continued the Disclosure Statement Hearing until October 25, 2007.  The

Disclosure Statement Order established a schedule for the Disclosure Statement Hearing that was

"subject to the filing of and the Court's consideration of the Potential Amendments" to the

September Plan and September Disclosure Statement.  Disclosure Statement Order at ¶1.

11.     On October 19, 2007, the Court entered the Supplemental Order (A) Establishing

Revised Hearing Date And Related Procedures On Disclosure Statement And Solicitations

Procedure Motion And (B) Setting Hearing Date And Related Procedures For Potential Motions

Amending Investment Agreement And Approving Certain Exit Financing Agreements [Docket

No. 10661] (the "Supplemental Disclosure Statement Order"), which among other things, further

continued the Disclosure Statement Hearing until November 8, 2007 and scheduled the hearing

on the EPCA Motion (the "EPCA Hearing") for November 8, 2007 if the Debtors filed the

EPCA Motion by October 29, 2007.  The Equity Committee and certain other parties were

granted an extension of the time to file an objection to the Disclosure Statement Motion until

November 2, 2007.  It is the Debtor's stated view that all other interested parties are barred from

objecting by the passage of the original objection deadline of September 28, 2007.  The

Supplemental Disclosure Statement Order further provided that the objection deadline for all

parties with respect to the New EPCA would be November 2, 2007.

12.     On October 25, 2007, the Debtors provided the Equity Committee with blackline

versions of their draft first amended Plan and Disclosure Statement.  The documents were

marked "Highly Confidential."[3]  The Debtors noted that the blackline versions remained subject to further review and comments in all respects.  On October 27, 2007, the Debtors provided the Equity Committee with another set of blackline versions of their draft first amended Plan and Disclosure Statement that were marked to show additional changes.

13.    At 11:54 p.m. on October 29, 2007, the Debtors filed a notice of proposed amendments to the September Disclosure Statement and September Plan.  At 1:25 a.m. on October 30, 2007, the Debtors also filed the EPCA Motion.  The Debtors' filings failed to comply with the terms of the Supplemental Disclosure Statement Order which required that the EPCA Motion and the proposed amendments to the plan and disclosure statement be filed by October 29, 2007.  The Debtors did not file the EPCA Motion until the early morning hours of October 30, 2007 and they filed the proposed amendments to the plan and disclosure statement at 11:54 p.m.  It is hard to imagine that at the time the Supplemental Disclosure Statement Order was proffered by the Debtors and signed by the Court anyone in good faith would have understood the October 29 deadline to mean 11:54 p.m. that night or 1:25 a.m. the next day.

14.    The Equity Committee expected that in light of the magnitude of the changes to the September Disclosure Statement and September Plan, the Debtors would on their own advise the Court that they were renoticing the Disclosure Statement Hearing and setting a new objection deadline consistent therewith.  Likewise, with respect to the EPCA Motion, it is inappropriate for the Debtors to pursue a strategy that seeks to effectuate a sale of the Debtors' estates without affording all stakeholders an opportunity to examine in detail the basis for relieving the Plan Investors of their obligations, the reasonableness of the revised terms and the enhanced benefits

---

[3]    Pursuant to the protocols established by the Debtors, the "Highly Confidential" designation prevented the Equity Committee's professionals from distributing the documents to the actual members of  the Equity Committee.

8

to the Plan Investors, and the legitimacy of the process by which those more favorable terms were provided to the Plan Investors.  To the Equity Committee's dismay, however, the Debtors and the Plan Investors appear to be intent on using the current schedule as a litigation tactic to systematically deprive stakeholders of the opportunity to evaluate the New Disclosure Statement and the New EPCA and to shield the process that led to those agreements from any examination. The Court should not allow the Debtors to circumvent the rights of parties in interest to the notice and opportunity to object mandated by the Bankruptcy Code and necessitated by the current circumstances.

### EMERGENCY RELIEF REQUIRED

15.     The nature of the relief requested herein requires a hearing on an emergency basis because the Disclosure Statement Hearing is scheduled to resume on November 8, 2007, and the EPCA Hearing is also scheduled to commence on that date.  The Equity Committee has complied with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures entered by this Court on March 17, 2006 [Docket No. 2883] (the "Case Management Order") in seeking relief on an emergency basis.  At a Chamber's conference held telephonically on October 29, 2007 at the request of the Equity Committee, the Court determined that this Motion would be heard on November 8, 2007.

16.     By this Motion, the Equity Committee seeks to adjourn the Disclosure Statement Hearing and to extend the time to file an objection to the New Disclosure Statement so that it may be renoticed to afford creditors and interest holders the statutorily mandated twenty-five days to reflect on and consider the adequacy of the New Disclosure Statement as required by Bankruptcy Rules 2002(b)(2) and 3017(a), and to comply with sections 1125(b) and 102(1) of

the Bankruptcy Code.  The Equity Committee also seeks to adjourn the EPCA Hearing and to

extend the time to file an objection to the EPCA Motion so that it may be renoticed to allow

creditors and interest holders the statutorily mandated twenty days to conduct a meaningful

investigation into and evaluation of the New EPCA as required by Bankruptcy Rule 2002(a)(2),

and to comply with sections 363(b) and 102(1) of the Bankruptcy Code.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief sought

in this Motion is sections 1125(b), 363(b) and 102(1) of title 11 of the United States Code (the

"Bankruptcy Code") and Rules 2002(a), 2002(b), 3017(a) and 9006(b) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  Venue is proper before this Court pursuant to

28 U.S.C. § 1409.

## APPLICABLE AUTHORITY

18.     A fundamental principle of the Bankruptcy Code is the notion that courts should

not impact the rights of stakeholders to adequate notice and the opportunity to be heard in

advance of court-sanctioned actions affecting their rights.  In fact, courts have noted that "[t]he

notice requirement is the fulcrum [courts] use to balance a debtor's title 11 protections against

the Fifth Amendment guarantee that creditors will not be deprived of 'life, liberty or property'

without 'due process of law.'"  In re F.A. Potts & Co., Inc., 86 B.R. 853, 861 (E.D. Pa. 1988);

See also New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293 (1953)

(finding in a bankruptcy context that a reasonable opportunity to be heard must precede judicial

denial of a party's claimed rights—i.e., creditor city was not barred from filing a proof of claim

10

where it had not received notice thereof even where it had constructive notice of bar date through

newspaper publications).  So fundamental is the concept of notice and related procedures, that

the term appears in the Bankruptcy Code more than 130 times.  <u>F.A. Potts</u>, 86 B.R. at 860-61.

Thus, any attempt to erode the notice requirement is also an erosion of the legitimacy of the

bankruptcy court system.  To ensure parties' due process rights are not compromised, the

Debtors must comply with the Bankruptcy Code and the Bankruptcy Rules.

19.    Section 1125(b) of the Bankruptcy Code requires that a disclosure statement be

approved "after notice and a hearing." 11 U.S.C. §1125(b).  Additionally, section 363(b) of the

Bankruptcy Code requires that a debtor "may use, sell, or lease, other than in the ordinary course

of business, property of the estate" only "after notice and a hearing."  11 U.S.C. § 363(b)(1).

Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" as "after such notice

as is appropriate in the particular circumstances, and such opportunity for a hearing as is

appropriate in the particular circumstances…." 11 U.S.C. §102(1).  In that regard, "[t]he

determination of what is 'appropriate' in the circumstances may be aided by reference to the

Federal Rules of Bankruptcy Procedure . . . ." <u>2 Collier on Bankruptcy</u> ¶102.02[1] (Resnick,

Alan N. & Sommer, Henry J. eds., 15th ed. rev. 2005).

20.    Bankruptcy Rule 2002(b) requires that parties in interest be given twenty-five

days notice of "the time fixed for filing objections and the hearing to consider approval of a

disclosure statement . . . ." Fed. R. Bankr. P. 2002(b)(2).  Bankruptcy Rule 3017(a) further states

that:

> [A]fter a disclosure statement is filed in accordance with Rule 3016(b), the court
> shall hold a hearing on at least 25 days notice to the debtor, creditors, equity
> security holders and other parties in interest as provided in Rule 2002 to consider
> the disclosure statement and any objections or modifications thereto.

11

Fed. R. Bankr. P. 3017(a).[4]  The Debtors commenced the Disclosure Statement Hearing on

October 3, 2007 with full knowledge that they would not, and in fact could not, conclude the

hearing at that time.  Their stated intention was to start the hearing but then have it continued so

that it would not need to be renoticed under Bankruptcy Rules 2002(b) and 3017(a).

      21.     Similarly, with respect to the New EPCA, Bankruptcy Rule 2002(a)(2) requires

that parties in interest be given twenty days notice of "a proposed use, sale, or lease of property

of the estate other than in the ordinary course of business…"[5]  Fed. R. Bankr. P. 2002(a)(2).

While Bankruptcy Rule 9006(c) states that courts may reduce the twenty-day notice period for

cause shown, the Debtors have not shown cause for reducing that time period.[6]  The Plan

Investors' letter attached to the EPCA Motion requiring the Debtors to file the EPCA Motion by

---

[4]  The Equity Committee is aware that Bankruptcy Courts have exercised discretion under Bankruptcy Rule 9006(c)(1) to reduce, for cause, the time period for notice of a hearing to approve a disclosure statement. See Fed. R. Bankr. P. 9006(c)(1); see also In re Landmark Park Plaza Ltd. P'ship., 167 B.R. 752, 757–58 (D. Conn. 1994) (shortening time for hearings on rival disclosure statement and plan so confirmation of rival plan could be heard on date previously set for debtor's plan); In re Holland, 85 B.R. 735, 736–38 (Bankr. W.D. Tex. 1988) (allowing fifteen days notice of hearing to consider approval of a disclosure statement at same time as pending motion to dismiss the case where disclosure statement was filed over eight months prior thereto, and clerical error resulted in failure to send notice and set hearing).  However, when considering a reduction of time with respect to notice, "courts should balance possible prejudice to other parties against the reasons advanced for reducing the time." 10 Collier on Bankruptcy, ¶ 9006.09[1] (Resnick, Alan N. & Sommer, Henry J. eds., 15th ed. rev. 2005) (citing In re Grant Broadcasting of Philadelphia, Inc. 71 B.R. 390 (Bankr. E.D. Pa. 1987)).  As discussed in detail herein, if the Disclosure Statement Hearing is not adjourned and required to be renoticed for twenty-five days, the prejudice to stakeholders will be extreme.  The Debtors have changed the entire plan from a consensual scenario to a new structure that greatly modifies stakeholder recoveries and will be highly contested.  The desire to steamroll and use scheduling as a litigation tactic is not "cause" and cannot be justification for reducing the twenty-five days required by Bankruptcy Rules 2002(b) and 3017(a).

[5]  The Debtors are seeking approval of the New EPCA under, among other things, section 363(b) of the Bankruptcy Code as it involves the use, sale or lease of property of the estate outside of the ordinary course of business.

[6]  Courts allow for a shortened notice period when doing otherwise would have dire consequences.  See In re Zinke, 97 B.R. 155, 158 (E.D.N.Y. 1989)  (holding that in light of the stock market crash in 1987, the debtor showed cause for shortened notice period because any delay would not result in an equally good offer); Apex Oil Co. v. Vanguard Oil & Service Co. (In re Vanguard Oil & Service Co.), 88 B.R. 576, 580 (E.D.N.Y. 1988) (approving the sale of the debtor's property despite improper notice because the value of the debtor's assets would decrease immediately due to the seasonal nature of the debtor's business).

October 29 and have it heard by November 8 is farcical and an indication of the lengths that the

Debtors, in collusion with the Plan Investors, will go to shield the amendments from the light of

any inquiry or examination.  Cause cannot be shown by the Debtors' reliance on self-created,

non-binding deadlines.  Providing the proper, twenty day notice of the EPCA Motion would not

appreciably harm the Debtors' estates, and therefore the Debtors' requested relief is unfounded.

See In re General Insecticide Co., 403 F.2d 629, 630 (2d Cir. 1968) (finding objection to sale

moot on appeal but holding that the notice requirements under the former Bankruptcy Act with

respect to the sale of a debtor's assets should not be dispensed with unless the asset sold or the

bankruptcy estate "would be appreciably reduced in value by the administrative costs entailed in

giving notice or if an advantageous sale would be lost or if the property to be sold would

substantially depreciate in value during the notice period").  The purpose of the "after notice and

a hearing" requirement under section 363 is "'to give creditors who have a vital interest in

maximizing realization from the assets of the estate, an opportunity to review the terms of the

proposed sale, and to object thereto, if they deem the terms and conditions not to be in there best

interests.'"  In re Caldor, Inc., 193 B.R. 182, 186 (Bankr. S.D.N.Y. 1996) (quoting In re Sapolin

Paints, Inc., 11 B.R. 930, 936 (Bankr. E.D.N.Y. 1981)); see also In re McLean Indus., Inc., 96

B.R. 440, 444 (Bankr. S.D.N.Y. 1989) (holding that the purpose of section 363(b)(1) of the

Bankruptcy Code "is to protect creditors and interest holders").  As such, parties in interest must

be given the twenty days provided by the Bankruptcy Rules to evaluate the EPCA Motion.

        22.        Furthermore, Bankruptcy Rule 9006(b)(1) gives the Court the discretion, for

cause shown, to extend the time to perform an act, such as the time to file an objection to a

disclosure statement.  For the reasons discussed herein, the Equity Committee has shown cause

for the Court to extend the time to file objections to the New Disclosure Statement and the EPCA

13

Motion. See Fed. R. Bankr. P. 9006(b)(1).

## BASIS FOR RELIEF REQUESTED

23.    The Debtors represented to the Court that they would be making changes to the

Plan that would:

> "be laser-like."  That is to say, *Delphi does not view this as an opportunity to renegotiate the deal, either on behalf of Delphi's part or on behalf of any other major stakeholder.* And we have told our major stakeholders that Delphi is not entertaining a "let's just go back to the drawing board" approach, and nor frankly do I think that any of our stakeholders are pushing that kind of agenda.

September Transcript pp. 46:25– 47:7 (emphasis added).  The Court acquiesced to the

continuation of the hearing and the expiration of the objection deadline for all but a chosen few

on that basis.

24.    The Debtors subsequently reiterated at the October 3, 2007 hearing that they were

engaged in productive discussions with stakeholders in an effort to reach an agreement on

"[laser]-like … focused amendments" to the Plan. See October Transcript, p. 13:16.  Debtors'

counsel added that the Debtors intended to file blackline changes to the September Disclosure

Statement with their omnibus reply to the September Disclosure Statement objections.  While the

Court acknowledged that "Disclosure Statements and sometimes Plans often change as a result

of a Disclosure Statement Hearing . . . ." (October Transcript, p. 21:17–23), it provided in the

Disclosure Statement Order that the schedule established therein would be "subject to the filing

of and the Court's consideration of the Potential Amendments" (Disclosure Statement Order,

paragraph 1 (emphasis added)).  In that regard, although the Supplemental Disclosure Statement

Order provides that if the Debtors file notice of their amendments to the September Disclosure

Statement and September Plan on October 29, 2007, parties would have until November 2, 2007

to object, at the time the order was signed, the Court was unaware of the nature and extent of the

changes to the September Disclosure Statement and September Plan.[7]

25.     Because the Debtors filed a new, rather than an amended plan and disclosure

statement, Bankruptcy Rule 9006(b)(1), consistent with the time periods provided under

Bankruptcy Rules 2002(b) and 3017(a), requires a further extension, thereby rendering the

Debtors' proposed schedule inappropriate under the circumstances and therefore in violation of

Bankruptcy Code sections 1125(b) and 102(1).

26.     Since October 3, 2007, what the Debtors stated in Court would be laser-like

amendments has erupted into a full-fledged revision of the September Plan.  The Debtors have

met with their stakeholders on several occasions since the adjournment of the October 3rd

Disclosure Statement Hearing to discuss a renegotiated deal.  During these meetings and

discussions, many of which the Equity Committee was excluded from participating in,

apparently the Debtors completely abandoned the consensual deal and yielded to pressure

exerted by the ad hoc committee of bondholders, the Official Committee of Unsecured Creditors

(the "UCC") and the Plan Investors.  During this period the Equity Committee received draft

term sheets which reflected continuing diminution of recoveries for equity.  The end result has

been changes to recoveries that are so profound they can only be described as a new chapter 11

plan.  The recovery to equity holders as a practical matter has been eviscerated.

27.     Specifically, the distribution of primary equity has been eliminated, the warrants

have changed from a five-year to a six-month duration, and equity's participation in the discount

rights offering (a significant source of recovery to equity holders) has been eliminated and the

---

[7]  Similarly, when the Court approved the MDL settlement under Bankruptcy Rule 9019 as to certain parties who had not objected by the objection deadline and were not designated as Potential Objectors by the Debtors, the Court was unaware of the extent and nature of the modifications that were to be made to the September Plan.

entire participation is now given to unsecured creditors.  To add insult to injury, the New Plan

also incorporates a "death trap" provision with respect to the proposed meager recovery to equity

holders.  In addition, certain unsecured creditors are receiving a recovery that is greater than the

amount of their claims, which is disguised by a manipulation of the Debtors' total enterprise

value (such manipulation is evidenced by, among other things, the fact that the New Plan

purports to give equity to different constituencies at different enterprise values in order to

manipulate the numbers and consequent recoveries).[8]

28.    Moreover, the Plan Investors have renegotiated their deal and are now receiving

significantly more for their investment under the New EPCA than what was agreed to in the

Current EPCA.  This is true even though the Plan Investors, who received significant fees to date

for their "commitment," remain bound by the Current EPCA, which is still in place and has not

been terminated.   Furthermore, there is a total lack of transparency as to why the Debtors have

sought to alter drastically the consensual deal.

29.    This renegotiation of the publicly announced, consensual deal has occurred

despite the Debtors' representation that such a result would not occur and the Court's clear

admonition that market conditions should not be the basis of renegotiations.  See supra, ¶ 9.

30.    There are also very significant issues and concerns regarding the facts,

circumstances and good faith nature of the process surrounding the renegotiation of the Plan and

the EPCA.  In that regard, it is important to note that it appears that management was negotiating

its compensation and incentive plans with the Plan Investors and the UCC at the same time they

---

[8] Under the New Plan, GM's $2.7 billion recovery is based on a total enterprise value of $45 per share yet unsecured creditors' $3.9 billion recovery is based on a total enterprise value of $41.58 per share.  In addition, the New Disclosure Statement notes that Delphi will use a $45 per share value for fresh start accounting.  If the recoveries to unsecured creditors were based on the same $45 per share value applied for both fresh start accounting purposes and to GM, the recoveries to unsecured creditors would be 111.5% of a par plus accrued recovery.

were allowing the Plan Investors and the UCC to drastically renegotiate the terms of the Plan and

the EPCA.  Specifically, the Plan Investors had to sign off on all compensation arrangements and

the UCC had consultation rights with respect thereto (rights that the Equity Committee

specifically requested at the time of the September Plan but that the Debtors adamantly refused

to provide).  The breadth of the management compensation is evidenced by the more than fifteen

pages of disclosure in the New Disclosure Statement describing these plans and programs, which

include, the Salaried Employee Compensation Program, the Competitively Benchmarked

Salaried Employee Compensation Program, the new Executive Employment Agreements, the

Short Term Incentive Plan, the Long Term Incentive Plan, the Chapter 11 Effective Date

Executive Payments Program, the Supplemental Executive Retirement Program, the Salaried

Retirement Equalization Savings Program, and the new Change of Control Agreements.  At a

time when they were allowing the Plan Investors and the UCC to eviscerate recoveries to equity

holders, the Debtors negotiated compensation schemes in which the emergence bonuses for

executives alone are far in excess of the recoveries now proposed for equity.  It is also vastly

inappropriate to make additional disclosures of compensation plans of the magnitude reflected in

the New Disclosure Statement after the objection deadline for all but a chosen few parties has

passed.

            31.     In any event, due process mandates that parties be provided at least twenty-five

days to evaluate the New Disclosure Statement.  As much as the Debtors may desire, they are not

entitled to require creditors and equity holders to analyze and evaluate the New Disclosure

Statement and formulate appropriate objections in four days.  Thus, to protect the integrity of the

chapter 11 process, the Court must require the Debtors to comply with the notice and hearing

requirements of sections 1125 and 102(1) of the Bankruptcy Code and Bankruptcy Rules

17

2002(b) and 3017(a).  This will ensure that all parties in interest have ample opportunity to

evaluate the implications of the New Plan and the adequacy of the disclosures in the New

Disclosure Statement with respect to the new structure.

32.    Similarly, the EPCA Motion must be adjourned to allow the Equity Committee

and other parties in interest to understand the significance of the changes and the facts that justify

the Plan Investors' ability to renegotiate their commitment under the Current EPCA.

Additionally, and very importantly, all parties, including the Equity Committee, need to

understand how the Debtors have determined that the New EPCA is still the best deal available.

Although the Debtors have known that changes to the Current EPCA were forthcoming for

weeks now, these changes have been shrouded in secrecy.  While the Debtors have at least

indicated (albeit in a most understated manner) that the September Plan may change, the Debtors

have made every effort to keep the changes to the Current EPCA confidential.  The Debtors are

seeking to ram approval of the New EPCA and the New Disclosure Statement through this Court

on an unnecessarily expedited basis.  The Debtors must ensure that alternatives to the New

EPCA do not exist before seeking Court approval.  At the very least, the market must be given

adequate notice of the proposed changes to allow potential bidders to propose alternatives to the

New EPCA.  Alternatives were available when the Current EPCA was selected in July, and it is

possible that more attractive alternatives still exist.  The Plan Investors cannot be shielded from

competition, especially at a time when they are significantly renegotiating (for the second time)

the terms they agreed to.

33.    The Equity Committee shares in the Debtors' desire to move the Debtors'

reorganization forward and exit chapter 11 as quickly as possible.  The desire to emerge,

however, cannot be the basis to sanction a process where good faith and arms-length dealing are

18

compromised and instead replaced by forfeiture of value to equity holders or windfall recoveries

to others. The Equity Committee would also note that unlike other instances, there is no

impending event that creates the need for expediency (e.g., expiration of an exit financing

commitment) but rather just a general desire to emerge sooner than later. The Debtors will

almost certainly argue that Delphi must emerge in the next few months or value will diminish

and a parade of horribles will occur. The Equity Committee firmly believes that these are self-

created and artificial deadlines being used for litigation posture (and even if true do not allow the

elimination of due process).

34.      The Equity Committee also understands that amendments to disclosure statements

frequently occur, even after approval, to address unforeseen circumstances and account for new

developments. At this point, however, it is obvious that the changes are not laser-like. The

wholesale changes and shift of value encroach upon the most important aspect of the New Plan

for stakeholders to consider – the recovery they will receive. As noted above there are also

significant issues relating to the process and the good faith of the parties involved.

Consequently, interested parties must be allowed the mandated twenty-five days to understand

and to evaluate the adequacy of the information in the New Disclosure Statement in that regard.

See In re Cramer, Inc., 100 B.R. 63, 67 (Bankr. D. Kan. 1989) (noting that changes in the

distribution to claimants in the debtor's second amended plan and disclosure statement that

might have a detrimental effect on the treatment of certain classes is a material change that

requires resubmission of the disclosure statement and re-solicitation). It is also imperative that

stakeholders and the public have an opportunity to investigate the basis of the New EPCA, the

reasonableness of its provisions and the process that led to its existence.

35.      The limited period of time the Debtors are providing with respect to the New

19

Disclosure Statement and New EPCA is even more egregious because the Debtors apparently have known for some time that they would seek changes to the Current EPCA and September Plan. During this time, however, the market has continued to rely on the Current EPCA and the deal embodied in the September Plan. The Debtors have not even disclosed that material changes might be forthcoming. Instead, the Debtors' public filings and statements have indicated that business is as usual.

36.    With respect to the September Disclosure Statement, while the Equity Committee and other interested parties may have accepted certain disclosures as adequate in relation to the September 6, 2007 version of the Plan – a plan predicated on fully consensual deals across all interests – the changed recoveries necessitate viewing the disclosure from an entirely different perspective. What may have been acceptable then under a consensual plan is not adequate now. As such, even provisions in the New Disclosure Statement and New Plan that have not changed may now raise issues. For instance, the MDL claims, many of which are pari passu with equity, have stayed the same or improved while the recovery to equity has been eviscerated. The provisions for substantive consolidation are unsupported and unsupportable by the requisite facts. The liquidation analysis is flawed in many respects, including the failure to treble recoveries from GM on account of well-founded RICO claims. Additionally, the New Plan provides for unlawful third-party releases including releases by equity security holders that may have been acceptable in a fully consensual deal but are now without consideration and are otherwise highly suspect in a contested context. The New Plan also raises issues about the form of ballot and the need to provide stakeholders the ability to "opt out" of the third-party releases. There are many unsophisticated equity holders in these chapter 11 cases and the Debtors must not be allowed to use bait and switch tactics and an expedited timeline to obtain releases for third

20

parties that violate applicable law.

37.    The Debtors no longer have a fully consensual deal, but instead are faced with a highly contested process.  The Court should not allow the Debtors to use prior scheduling and self-created "time-is-of-the-essence" arguments to eliminate the notice periods to which parties are entitled as a matter of due process and applicable law.  It is imperative that the Disclosure Statement Hearing and the EPCA Hearing be adjourned.

## NOTICE

38.    Notice of this Motion has been provided in accordance with the Case Management Order.  In light of the nature of the relief requested, the Equity Committee submits that no other or further notice is necessary.

## MEMORANDUM OF LAW

39.    Because the points and authorities upon which this Motion relies are set forth in the Motion itself, the Equity Committee respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied and waived.

## NO PRIOR REQUEST

40.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, for the foregoing reasons, the Equity Committee respectfully requests that (i) the Disclosure Statement Hearing be adjourned and the Debtors required to provide twenty-five days notice of a new hearing date to comply with Bankruptcy Code sections 1125(b)

21

and 102(1) as required under Bankruptcy Rules 2002(b) and 3017(a), (ii) the EPCA Hearing be

adjourned and the Debtors required to provide twenty days notice of a new hearing date to

comply with Bankruptcy Code sections 363(b) and 102(1) as required under Bankruptcy Rule

2002(a) and (iii) new deadlines be fixed for objections to the Disclosure Statement and the

EPCA Motion.


Dated: New York, New York              Respectfully submitted,
November 2, 2007

                                       FRIED, FRANK, HARRIS, SHRIVER
                                       & JACOBSON LLP

                                       /s/ Bonnie Steingart
                                       Bonnie Steingart (BS-8004)
                                       Debra M. Torres (DT-9093)
                                       One New York Plaza
                                       New York, New York 10004
                                       Phone: (212) 859-8000
                                       Fax:    (212) 859-4000

                                       *Counsel for the Official Committee*
                                       *of Equity Security Holders*


601620