| | |
|---|---|
| GOODWIN PROCTER LLP<br>599 Lexington Avenue<br>New York, New York  10022<br>(212) 813-8800<br>Allan S. Brilliant (AB 8455)<br>Craig P. Druehl (CD 2657)<br>Meagan E. Costello (MC 0962) | Hearing Date: November 8, 2007 at 10:00 a.m.<br>Objection Deadline: November 2, 2007 at 4:00 p.m. |

- and -

GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts  02109
(617) 570-1000
Gina Lynn Martin (GM 1324)

Attorneys for Caspian Capital Advisors, LLC;
Castlerigg Master Investments Ltd.;
Davidson Kempner Capital Management LLC;
Elliott Associates, L.P.; Gradient Partners, L.P.;
Sailfish Capital Partners, LLC; and Whitebox Advisors, LLC


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                              :
                                                    :     Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :     Case No. 05-44481 (RDD)
                                                    :
                    Debtors.                        :     (Jointly Administered)
                                                    :
-----------------------------------------------------------------x

**OBJECTION BY CASPIAN CAPITAL ADVISORS, LLC; CASTLERIGG MASTER INVESTMENTS LTD.; DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC; ELLIOTT ASSOCIATES, L.P.; GRADIENT PARTNERS, L.P.; SAILFISH CAPITAL PARTNERS, LLC; AND WHITEBOX ADVISORS, LLC TO EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§105(a), 363(b), 503(b) and 507(a) AUTHORIZING AND APPROVING AMENDMENT TO DELPHI-APPALOOSA EQUITY PURCHASE <u>AND COMMITMENT AGREEMENT</u>**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Gradient Partners, L.P.; Sailfish Capital Partners, LLC; and Whitebox Advisors, LLC or their respective affiliates (each, a "Creditor"), holders of Senior Notes,[1] each in their individual capacity as a creditor of Delphi Corporation (together with certain of its debtor affiliates and subsidiaries, collectively the "Debtors"), by and through their counsel, Goodwin Procter LLP, as and for this objection (this "Objection") to the expedited motion dated October 29, 2007, of the above-captioned debtors and debtors in possession (the "Debtors") for an order under 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) authorizing and approving amendment to Delphi-Appaloosa Equity Purchase and Commitment Agreement (Docket No. 10760) (the "Amended EPCA Motion").  In support of the Objection, each Creditor respectfully states as follows:

## PRELIMINARY STATEMENT

The relief sought under the Amended EPCA Motion cannot be approved by this Court for numerous reasons.  As set forth herein, pursuant to the Delphi-Appaloosa EPCA[2] and Amendment (collectively, the "Amendment"), the Plan Investors are using their status as potential equity investors to dictate the terms of a plan of reorganization to enhance the recovery on the Debtors' existing subordinated debt that they own[3] at the expense of senior creditors.

---

[1] Simultaneously with the filing hereof, Goodwin Procter has filed the Verified Statement of Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd.; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Gradient Partners, L.P.; Sailfish Capital Partners, LLC; SPCP Group, LLC; and Whitebox Advisors, LLC disclosing information regarding the claims and interests in the Debtors held by such creditors.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Amended EPCA Motion.

[3] According to the Verified Supplemental Statement of White & Case LLP Pursuant to Fed. R. Bankr. P., 2019, filed with this court on June 6, 2006, Appaloosa Management L.P. and certain of its affiliates, Harbinger Capital Partners LLC and certain of its affiliates, Marathon Asset Management LLC and/or on behalf of certain

2

The Plan Investors are allegedly substantial holders of the TOPrS, which are contractually subordinated to the Senior Notes. Upon information and belief, in negotiating the terms of the Amendment, the Plan Investors improperly dictated relative distributions to holders of Senior Notes, General Unsecured Claims and TOPrS and required that the Debtors propose a plan that places all such unsecured claims in the same class. In so doing, the Plan Investors exceeded the appropriate bounds for third party investors and impermissibly exploited their position to "pick the pockets" of the Senior Noteholders and Trade Creditors to enhance their recoveries on their TOPrS.

In addition, the Amendment requires the Debtors to propose a plan that violates the Bankruptcy Code by requiring that dissimilar claims be classified in the same class and that subordinated creditors be treated <u>pari passu</u> with senior creditors. If approved, the Amendment will place the Debtors in an intolerable *Catch-22* – they will be locked into a deal with the Plan Investors that is very expensive to break but that requires the Debtors to pursue a plan that can not be confirmed. Moreover, if the Debtors seek to modify the Amendment or any provision of the Plan without the Plan Investors' consent, the Plan Investors may have the right to walk from the deal and potentially collect $129,875,500 in fees. Such overreaching should not be countenanced by the Court.

Simply stated, the Creditors object to the Amendment because it is a <u>sub rosa</u> plan which impermissibly enhances the recoveries of subordinated creditors and forces the Debtor to pursue confirmation of a plan that is patently unconfirmable. However, if the Amendment did not constrain the Debtors to prosecute the current plan but left them free to propose a plan of

---

of its affiliates hold individual claims that, in the aggregate, exceed $285.43 million on account of their respective ownership of debt securities issued by the Debtors. Upon information and belief, a substantial amount of the debt securities held by these parties are the TOPrS.

3

reorganization that appropriately treated the Senior Notes and was otherwise confirmable (but did not adversely affect the Plan Investors' proposed new investment), the Creditors would have no objection to the approval of the Amended EPCA Motion. Without granting this flexibility to the Debtors, however, for the reasons set forth herein, this Court must deny the relief sought in the Amended EPCA Motion.

## RELEVANT BACKGROUND

1. On October 8 and 14, 2005, the Debtors commenced these cases under chapter 11 of Title 11, United States Code 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2. On September 6, 2007, the Debtors filed their Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors And Debtors-In-Possession together with the disclosure statement relating to thereto (the "Disclosure Statement").

3. On July 18, 2007, the Debtors filed their Motion for Order Authorizing and Approving Delphi-Appaloosa Investment Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C. §§105(a), 363(b), 503(b), and 507(a), dated July 18, 2007 (Docket No. 8673) (the "Delphi-Appaloosa EPCA").

4. The Delphi-Appaloosa EPCA contained an Exhibit B referred to as "Plan Framework and Special Statutory Committee Provisions/Framework Provisions" (hereinafter the "Plan Term Sheet"). Pursuant to Section 1.3 of the Plan Term Sheet, "Trade and Other Unsecured Claims and unsecured funded debt claims shall be placed in a single class."

5. On August 2, 2007, the Delphi-Appaloosa EPCA Motion was approved by this Court (the "Original EPCA Order").

4

6. On October 29, 2007, the Debtors filed the First Amendment to the Equity Purchase and Commitment Agreement (the "Amendment"). Pursuant to the Amendment, the Plan Term Sheet was replaced by the Plan.

7. Pursuant to Section 1.86 of the Plan, all unsecured debt of the Debtors is classified as a single class. (See Section 1.86 "General Unsecured Claim" means any claim, including a Senior Note claim, a TOPrS Claim, or a SERP Claim, that is not otherwise an Administrative Claim, Priority Tax Claim, Secured Claim, Flow-Through Claim, GM Claim, Section 510(b) Note Claim, Section 510(b) Equity Claim, Section 510(b) ERISA Claim, Section 510(b) Opt Out Claim, or Intercompany Claim.)

8. Based on the valuation of Rothschild, the Debtors' financial advisor, the implied range of recovery for holders of General Unsecured Claims is between 70%-119%, with a mid-point recovery of 93%.

9. On November 2, 2007, the Creditors filed the Objection of Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd.; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Gradient Partners, L.P.; Sailfish Capital Partners, LLC; and Whitebox Advisors, LLC to Motion to Approve (A) Proposed Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, and (B) Motion for Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation

5

Claim Procedures (the "Disclosure Statement Objection"), which is incorporated herein by reference.

**OBJECTION**

**A. COURT SHOULD NOT ALLOW PROSPECTIVE PLAN INVESTORS TO USE THEIR POSITION AS POTENTIAL INVESTORS TO IMPROVE THEIR RECOVERIES AS SUBORDINATED CREDITORS UNDER THE DEBTORS' PLAN AT THE EXPENSE OF SENIOR CREDITORS THROUGH A SUB ROSA PLAN**

10.     The Amendment requires the Debtors to pursue confirmation of a specific plan of reorganization, providing for a specific distribution scheme to holders of both senior and subordinated claims that is unrelated to legitimate concerns of any un-conflicted third party equity investor. Such requirements, which amount to a sub rosa plan, are inappropriate and should not be approved. See Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935, 940 (5th Cir. 1983) (debtor should not be able to short circuit the requirements of Chapter 11 for confirmation by establishing the terms of the plan sub rosa).

11.     Such terms are properly imposed on creditors only through the chapter 11 plan, not an investment agreement that has the practical effect of dictating all of the terms of the Plan and purports to control in the event of any conflict between the Plan, Confirmation Order and Amendment.[4] See Contrarian Funds, LLC. V. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.), 333 B.R. 30, 52 (S.D.N.Y. 2005) (holding that order authorizing imposition of distribution, claim satisfaction and lien elimination was not authorized by Bankruptcy Code without

---

[4]     The Amendment requires that the Debtors pursue the Plan in its current form. It also contains a provision that "[n]otwithstanding anything to the contrary in the Plan (including any amendments, supplements or modifications thereto) or the Confirmation Order (and any amendments, supplements or modifications thereto), if any of the terms of the Plan (including any amendments, supplements or modifications thereto) or Confirmation Order (including any amendments, supplements or modifications thereto) conflict with any of the terms of this [Amendment], the terms of this [Amendment] control." See Amendment, Section 1(hhh).

6

confirmation of plan); see also Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) ("When a proposed transaction specifies terms for adopting a reorganization plan, the parties and district court must scale the hurdles erected in chapter 11.").

12. Although the statement by this Court that the Delphi-Appaloosa EPCA was "not a sub rosa plan", see p. 18 of Transcript of Hearing on August 5, 2007 to consider the Delphi-Appaloosa EPCA, may have been accurate at the time, the Amendment can no longer be characterized as an "important step towards reorganization," see id. Rather, the Court must see the Amendment for what it is – an investment contract that impermissibly dictates the terms of the Plan and all distributions thereunder, and purports to control nearly every other document that may be issued in connection with the Debtors' Plan, including any Confirmation Order that this Court may enter. See Amendment, Section 1(hhh). After reviewing the Amendment, together with the Plan, there can be only one conclusion: the Plan Investors are impermissibly using their leverage as potential plan investors to insist on a Plan that enhances the distributions on account of the TOPrS – of which the Plan Investors are allegedly large holders. Under the Bankruptcy Code, the Plan Investors are not permitted to gain favored treatment of prepetition claims by utilizing leverage post-petition against the estate. See, e.g., Massachusetts v. Dartmouth House Nursing Home, Inc. (In re Darmouth House Nursing Home, Inc.) 24 Bankr. 256, 261 (Bankr. D. Mass 1982) appeal dismissed, 30 Bankr. 56 (Bankr. A.P. 1st Cir. 1983) (creditor of estate may not require payment of pre-petition debt as condition of providing post-petition services, to do so would be in contravention of Bankruptcy Code's distribution scheme); see generally, Charles J. Tabb, A Critical Reappraisal of Cross-Collaterization in Bankruptcy, 60 S. Cal. L. Rev. 109 (1986).

13.     If the Plan Investors are large holders of TOPrS and have insisted on these provisions to impermissibly increase their recoveries, such actions by the Plan Investors are antithetical to the requirement of good faith that pervades bankruptcy law. Yet, pursuant to the proposed Order approving the Amended EPCA Motion, the Debtors and Plan Investors seek a finding that the "Amendment was negotiated at arms' length and in good faith." (see finding (M) of Proposed Order). Unfortunately, given the circumstances of the Amendment, the overreaching provisions regarding the terms of the Plan, as well as the overriding nature of the Amendment in the event of a conflict with the Plan, the Court should carefully scrutinize whether the Plan Investors have negotiated the terms of the Amendment in good faith. See, e.g., New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.), 901 F.2d 1359, 1366 (6th Cir. 1990) (good faith should not be presumed).

14.     The Court should not approve an investment agreement when the Plan Investors are seeking to dictate terms of a Plan that are irrelevant to the legitimate interests of third-party, arm's length investors and jeopardize the Debtors ability to propose a confirmable plan in good faith.

**B.    THE AMENDMENT SHOULD NOT BE APPROVED BECAUSE IT REQUIRES THE DEBTORS TO SEEK TO CONFIRM A PATENTLY UNCONFIRMABLE PLAN**

15.     Pursuant to the Amendment, the Debtors must seek confirmation of a Plan that can not be confirmed under applicable bankruptcy law (as more fully set forth in the Creditors' Disclosure Statement Objection). The Amendment requires the Debtors place all trade and other unsecured claims and unsecured funded debts claims in a single class. This is impermissible under the Bankruptcy Code. It is axiomatic that a debtor's plan of reorganization must classify substantially similar claims together. 11. U.S.C. §1122(a). The opposite is also true – dissimilar claims may not be classified together. Yet, that is exactly what the Plan Investors have

8

demanded the Debtors do – ignore the seniority and unique characteristics of the Creditors by lumping all general unsecured creditors together.

16. By lumping all unsecured creditors together, the agreement by the TOPrS to be contractually subordinated to the Senior Notes will not be respected. As a result, in the event that the value of the New Common Stock is less than $41.58 and therefore the Senior Notes are not paid in full,[5] holders of TOPrS (including the Plan Investors as allegedly large holders) attempt to arrogate for themselves nearly the same distribution as the holders of the Senior Notes – notwithstanding that, pursuant to the terms of their subordination agreement, the TOPrS are not entitled to any recovery until the Senior Noteholders have been paid in full.

17. This requirement of the Amendment not only unfairly increases the distribution of the TOPrS but dilutes the votes of the holders of the Senior Notes by such a large margin that any cries of foul may be drowned out by the fact that the class, as a whole, may accept the Plan. This Court should not countenance the blatant attempts by the Plan Investors to force the Debtors to gerrymander the votes so that the Plan Investors can enjoy an increased distribution in respect of their TOPrS claims. See In re Chateaugary Corp., 89 F.3d 942, 949 (2d Cir. 1996) (stating that a debtor may not classify claims "for the sole purpose of creating an impaired assenting class").

18. Because the Amendment requires that the Debtors pursue a plan that can never be confirmed, it should not be approved.

---

[5] Even at the midpoint of the Debtors' financial advisor's valuation, holders of Senior Notes would only be receiving a 93% distribution on their claims.

### C. THERE IS NO WAY TO DETERMINE WHETHER THE REVISED BID IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES WHEN IT HAS NOT BEEN MARKETED

19. Although there can be no doubt that the Amendment contains significant economic changes in favor of the Plan Investors, since the Amended EPCA Motion is being heard on shortened notice and the Debtors did not seek alternate bids, there is no way to determine whether the Amendment is in the best interest of the Debtors' estates. See In re Bank of Am. Nat'l Trust & Sav. Assoc. v. N. LaSalle St. P'ship, 526 U.S. 434, 457 (1999) (stating that the best way to determine value of debtor is exposure to market). Accordingly, it should not be approved without giving other parties an opportunity to perform due diligence and submit competing bids.

## CONCLUSION

20. The relief sought in the Amended EPCA Motion is an improper attempt by the Plan Investors to use their leverage as new equity investors to dictate a greater recovery for their alleged holdings of the subordinated TOPrS claims at the expense of the Senior Notes. The consequence is that the Debtors have been required to propose a plan that is patently unconfirmable. The Amendment also contains a revised bid that has not been tested by the market. For all of these reasons, the Amended EPCA Motion must be denied.

## RESERVATION OF RIGHTS

21. The Creditors hereby expressly reserve all of their rights to raise any and all objections concerning the Amended EPCA Motion, whether or not raised herein including, but not limited to the right to supplement this Objection, at or before any other date on which objections relating to the Amended EPCA Motion will be heard.

10

## **WAIVER OF MEMORANDUM OF LAW**

22. Because this Objection presents no novel issues of law and the authorities relied upon are set forth herein, each Creditor respectfully (i) requests that the Court waive the requirement of filing a separate memorandum of law in support of this Objection pursuant to L.B.R. 9013-1(b), and (ii) reserves the right to file a brief in reply to any response to this Objection.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, each Creditor respectfully requests that this Court deny approval of the Amended EPCA Motion and grant such other relief as is just.

Dated: New York, New York
November 2, 2007

GOODWIN PROCTER LLP

By: /s/ Allan S. Brilliant
Allan S. Brilliant (AB 8455)
Craig P. Druehl (CD 2657)
Meagan E. Costello (MC 0962)
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

- and -

GOODWIN PROCTER LLP
Gina Lynn Martin (GM 1324)
Exchange Place
Boston, Massachusetts 02109
(617) 570-1000

Attorneys for Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd.; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Gradient Partners, L.P.; Sailfish Capital Partners, LLC; and Whitebox Advisors, LLC