**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022-4802
(212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
         mitchell.seider@lw.com
         mark.broude@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION., et al | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' MOTION FOR ORDER APPROVING
(I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING DEADLINE,
AND PROCEDURES FOR TEMPORARY ALLOWANCE OF CERTAIN CLAIMS,
(III) HEARING DATE TO CONSIDER CONFIRMATION OF PLAN,
(IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN, (V) SOLICITATION
PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM PROCEDURES,
(VII) PROCEDURES FOR RESOLVING DISPUTES RELATING TO POSTPETITION
INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 cases of Delphi Corporation ("Delphi") and certain of its affiliates (collectively, the

"Debtors"), by and through its undersigned counsel, hereby submits this Objection to the

Debtors' *Motion for Order Approving (I) Disclosure Statement, (II) Record Date, Voting*

*Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to*

*Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures* (the "Motion"). In support of this Objection, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1. The First Amended Plan (the "Plan") filed by the Debtors incorporates agreements reached after lengthy negotiations among several parties in interest in these chapter 11 cases, including the Committee and General Motors Corporation. Notwithstanding the significant achievements that facilitated the formulation and presentment of the Plan, the Plan does not properly reflect the entire deal the Committee struck with the Debtors and other parties in two important respects. First, the Plan currently provides for the accrual of post-petition interest to General Unsecured Claims (as defined in the Plan) other than TOPrS (also as defined in the Plan) only until December 31, 2007. In other words, post-petition interest to General Unsecured Claims (other than TOPrS, who are to receive no post-petition interest) would cease on December 31, 2007, even though the Plan will not be confirmed by that date. *See* Plan, § 1.154(b). The Committee bargained for post-petition interest to accrue until the date the Plan is confirmed.

2. Second, the Equity Purchase and Commitment Agreement (as amended by the First Amendment thereto, the "EPCA") provides that the obligations of the Investors (as defined in the EPCA) to consummate the transactions contemplated thereby are subject to certain conditions. One such condition is that the aggregate amount of all Trade and Other Unsecured Claims (as defined in the Plan) that are allowed or estimated for distribution purposes must be no more than $1.45 billion, excluding allowed post-petition interest thereon (the "Claims

2

NY\1341744.3

Condition"). *See* EPCA, § 9(a)(xxii). Section 7.31 of the Plan (which, despite the many months of plan negotiations among all parties, the Debtors inserted into the Plan for the first time early this week), provides that if the Debtors fail to satisfy the Claims Condition, A-D Acquisition Holdings, LLC (an affiliate of Appaloosa Management L.P.) can waive the Claims Condition. Furthermore, if that condition is waived, then to the extent the Debtors issue any shares of new common stock under the Plan as a result of Trade and Other Unsecured Claims aggregating more than $1.45 billion, the Debtors must (a) issue to the Investors additional Direct Subscription Shares (as defined in the EPCA) and (b) adjust the conversion price of the Series A and Series B preferred shares, each in accordance with section 9(a)(xxii) of the EPCA. *See* Plan, § 7.31. If the Debtors' obligation under section 7.31 of the Plan is triggered, then section 9(a)(xxii) of the EPCA would require the Debtors to issue additional Direct Subscription Shares to the Investors *without the payment by the Investors of any additional consideration therefor*, in an amount that is sufficient to maintain the Investors' proportionate ownership of outstanding common stock. The issuance of the additional shares would result in a reduction in the conversion price of the preferred shares. *See* EPCA, § 9(a)(xxii). Section 7.31 of the Plan could have a materially adverse effect on the value of the distributions to General Unsecured Creditors because it could dramatically dilute the value of the common stock issued to them.

   3. Sections 1.154(b) and 7.31 of the Plan are contrary to the business deal that the Committee struck with the Debtors, General Motors Corporation and Appaloosa. The Committee and the Debtors are continuing to discuss potential resolutions to these two issues. However, absent acceptable resolution, the Committee will not support the Plan. The disclosure statement that the Debtors are asking this Court to approve (the "Disclosure Statement") now states that the Committee supports the Plan, but fails to disclose that the Committee does not and

will not support the Plan as currently drafted. Accordingly, the Committee is filing this Objection to the adequacy of the Disclosure Statement.

## BACKGROUND

4. On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"). On October 14, 2005, the three remaining Debtors similarly filed voluntary petitions.

5. The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker.

6. On September 6, 2007, the Debtors filed their initial versions of the Plan and the Disclosure Statement. On September 7, 2007, the Debtors filed the Motion seeking, among other things, entry of an order approving the Disclosure Statement.

7. On September 7, 2007, the Debtors also filed their *Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Estimating and Setting Maximum Cap on Certain Contingent or Unliquidated Claims and (B) Approving Expedited Claims Estimation Procedures* (the "Claims Estimation Motion"), seeking entry of an order (a) estimating and setting a maximum cap on certain contingent or unliquidated claims and (b) approving expedited claims estimation

---

[1] The current members of the Committee are: (a) Capital Research and Management Company; (b) Freescale Semiconductor, Inc.; (c) IUE-CWA; (d) Wilmington Trust Company, as Indenture Trustee; (e) Tyco Electronics Corporation and (f) SABIC Innovative Plastics US LLC. The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

4

NY\1341744.3

procedures. On September 20, 2007, the Committee filed a Statement in response to the Claims Estimation Motion.

8.      The hearing on the Motion commenced on October 3, 2007. During the hearing, several potential objectors (including the Committee) were granted additional time to evaluate the Motion and the Disclosure Statement. Several objections to the adequacy of the Disclosure Statement were resolved or overruled on October 3, 2007 and the hearing on the Motion was continued to October 25, 2007. Pursuant to this Court's October 19, 2007 *Supplemental Disclosure Statement, Investment Agreement, and Exit Financing Procedures Order*, the hearing on the Motion was further continued to November 8, 2007 and the Committee's deadline to object to the Motion was extended to November 2, 2007.

## OBJECTION TO THE DISCLOSURE STATEMENT

9.      Section 1125(b) of the Bankruptcy Code requires that before acceptances of a proposed plan may be solicited, the plan proponent must transmit to all holders of claims and interests "a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." *See* 11 U.S.C. § 1125(b). Section 1125(a) of the Bankruptcy Code, as applicable to the Debtors' chapter 11 cases, defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan[.]

11 U.S.C. § 1125(a)(1) (pre-BAPCPA).[2]

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective as of October 17, 2005 and does not affect these chapter 11 cases, which were filed on October 8, 2005.

5

NY\1341744.3

10. Under section 1125 of the Bankruptcy Code, a disclosure statement must contain adequate information such that a hypothetical reasonable investor may make an informed judgment about acceptance or rejection of a plan. *See* 11 U.S.C. § 1125(a); *see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that section 1125 of the Bankruptcy Code "seeks to guarantee a minimum amount of information to the creditor asked for its vote."). Sufficient financial information must be provided so that a creditor can make an informed judgment whether to accept or reject the plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (noting that "substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan").

11. Although the type and amount of information required to be contained in a disclosure statement varies from case to case, section 1125 of the Bankruptcy Code is biased toward more disclosure than less. *See, e.g.*, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (stating that "[b]ecause creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated"); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3rd Cir. 1988) (stating that the fact that creditors and courts heavily rely on disclosure statements increases a debtor's obligation to provide necessary, adequate information upon which such parties can make informed decisions regarding proposed plan). It is not only the quantity, but also the quality, of the disclosed information that matters. Frequently, courts have found that a disclosure statement that

NY\1341744.3

does not provide sufficient factual support for its position cannot be approved. *See, e.g.*, *In re Egan*, 33 B.R. 672, 675-76 (Bankr. N.D. Ill. 1983) (noting that a disclosure statement is "intended to be a source of factual information upon which one can make an informed judgment about a reorganization plan.").

12. Here, the Debtors' Disclosure Statement fails to provide adequate information concerning matters that are important to the Debtors' creditors in their evaluation of whether to vote for or against the Plan. As noted above, section 1.154(b) of the current Plan would cease the accrual of post-petition interest to General Unsecured Claims other than TOPrS on December 31, 2007, even though the Plan will not have been confirmed by that date. In addition, section 7.31 could dilute the value of the common stock distributed under the Plan to holders of General Unsecured Claims and provide for the Investors to receive additional stock without any consideration whatsoever in return. These are results with which the Committee never agreed and with which it does not agree now. The Committee thus believes that section 1.154(b) of the Plan must be modified so that post-petition interest to General Unsecured Claims other than TOPrS would accrue until the date the Plan is confirmed, and that section 7.31 must be deleted in its entirety.

13. The Committee has communicated this position to the Debtors on a number of occasions, and continues to discuss these issues with the Debtors. Absent resolving those open items, it is not true (as the Disclosure Statement provides) that the Committee supports the Plan, and the Disclosure Statement needs to be revised to (a) remove all statements regarding Committee support[3] and (b) insert statements disclosing that the Committee currently opposes

---

[3] For example, the Disclosure Statement states that "[t]he Plan is supported by the Creditors' Committee on behalf of unsecured creditors…". *See* Disclosure Statement at xii (October 29, 2007 blackline filed with this Court).

7

NY\1341744.3

the Plan and will oppose the Plan until such time as the Debtors modify section 1.154(b) to the Committee's satisfaction and delete section 7.31 in its entirety.

14.     The Committee has provided certain comments to the Debtors which the Committee believes are non-substantive clarifications to the Plan, and the Committee may provide additional such clarifications to the Debtors prior to the approval of the Disclosure Statement. Even if the Debtors make the modifications requested herein, the Committee reserves the right to withdraw its support of the Plan to the extent that any of the Committee's clarification comments subsequently reveals a substantive difference of position between the Debtors and the Committee. In such event, the Disclosure Statement would need to be modified to reflect the Committee's non-support of the Plan.

**WHEREFORE,** the Committee respectfully requests that this Court (a) reject the Disclosure Statement unless the infirmities described herein are remediated and (b) grant the Committee such other relief that it deems just and proper under the circumstances.

Dated:  November 2, 2007
       New York, New York

                              **LATHAM & WATKINS LLP**

                              By: /s/ Robert J. Rosenberg
                                  Robert J. Rosenberg (RR-9585)
                                  Mitchell A. Seider (MS-4321)
                                  Mark A. Broude (MB-1902)
                                  885 Third Avenue, Suite 1000
                                  New York, New York 10022
                                  Telephone:  (212) 906-1200

                              Attorneys for the Official Committee
                              of Unsecured Creditors