**Hearing Date and Time: November 16, 2007 at 1:00 a.m.**
**Supplemental Response Date and Time: November 14, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DEBTORS' SUPPLEMENTAL REPLY TO THE RESPONSE OF AZIMUTH NORTH
AMERICA LLC & RELATED ENTITIES TO THE DEBTORS' ELEVENTH OMNIBUS
OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(B) AND FED. R. BANKR.
P. 3007 TO CERTAIN (A) INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT
REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C) UNTIMELY CLAIMS, AND (D)
<u>CLAIMS SUBJECT TO MODIFICATION</u>

("DEBTORS' SUPPLEMENTAL REPLY- AZIMUTH NORTH AMERICA LLC
& RELATED ENTITIES ")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submits its Supplemental Reply (the "Supplemental Reply") To The Response Of Azimuth North America LLC & Related Entities To The Debtors' Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification, and respectfully represent as follows:

Preliminary Statement

1.  Azimuth North America LLC ("Azimuth") is a corporate strategy, research, technology, communications, and services consulting firm. See Attachment to Proof of Claim Number 15630 (the "Proof of Claim") at 1. In late 2000, Delphi's Facilities Services Group ("FSG") contacted Azimuth to provide consulting services to assist FSG.

2.  On or about July 20, 2001, DAS LLC issued purchase order no. LPS 49835 (the "Purchase Order") to Azimuth in an amount not to exceed $80,000.00 for certain consulting services performed for Delphi's Facilities Services Group ("FSG") as described more particularly in the Purchase Order. In December 2001, DAS LLC paid Azimuth $60,500.00 for such consulting work as of that date.

3.  On or about September 2002, Azimuth requested payment from DAS LLC in the amount of $169,500.00 for work that Robert Mothershead, the Chief Executive Officer of Azimuth, claimed Azimuth had performed for FSG but for which Azimuth had not been paid. Azimuth asserted that $19,500.00 was due under the Purchase Order and $150,000.00 was due in connection with additional consulting services rendered to FSG without the issuance of a

2

purchase order. However, because DAS LLC never hired Azimuth for the additional consulting services and could not find any basis for making a payment, DAS LLC refused to pay Azimuth for such services.

    4.  Notwithstanding DAS LLC's belief that there was no basis for Azimuth's request for payment, on or about October 17, 2002, Mr. Mothershead and Azimuth entered into a Settlement and Release Agreement (the "Settlement Agreement") with DAS LLC[1] to settle the dispute. Pursuant to the Settlement Agreement, DAS LLC agreed to pay Azimuth $19,500.00,[2] the amount remaining unpaid under the Purchase Order. In exchange, Azimuth and Mr. Mothershead agreed to fully release DAS LLC and that such payment would be in full satisfaction of any obligations of DAS LLC of any kind owed to Azimuth or Mr. Mothershead under the Purchase Order or in connection with any other services performed through the date of the Settlement Agreement.

    5.  For almost four years after the consummation of the Settlement Agreement, DAS LLC had no contact with Azimuth. Then, on or about July 31, 2006, and notwithstanding the clear and unambiguous terms of the Settlement Agreement, Mr. Mothershead filed proof of claim number 15630 (the "Proof of Claim") on behalf of Azimuth against DAS LLC asserting an unsecured non-priority claim in the amount of $284,487.00, of which $150,000.00 was for services allegedly performed and $134,487.00 was for interest accrued as of July 31, 2006 at a rate of 14.9% (the "Claim").

---

[1] A executed copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>.

[2] Azimuth and Mr. Mothershead mistakenly assert, without any supporting evidence, that the settlement amount was for only $19,000.00, rather than the $19,500.00 evidenced in the Settlement Agreement itself and the copy of check no. 900340869 sent by DAS LLC to Azimuth.

3

6. On March, 16, 2007 the Debtors objected to the Claim pursuant to the Debtors' Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Insufficiently Documented Claims, (b) Claims Not Reflected On Debtors' Books And Records, (c) Untimely Claims, And (d) Claims Subject To Modification (the "Eleventh Omnibus Claims Objection") (Docket No. 7301).

7. On April 13, 2007, Azimuth filed the Creditor's Request To Hold Matter In Abeyance, In Response To Debtors' Eleventh Omnibus Claims Objection (the "Response") (Docket No. 7665).

8. On April 13, 2007, Mr. Mothershead filed a complaint (the "OSHA Complaint") against Delphi with the U.S. Department of Labor, Occupational Safety & Health Administration ("OSHA") and on May 31, 2007, Delphi filed a formal position statement in response to the OSHA Complaint. On July 13, 2007, OSHA issued its findings for the OSHA Complaint and found that there is no reasonable cause to believe that Delphi violated the Sarbanes-Oxley Act of 2002, 18 U.S.C. 1514A.[3]

9. On or about April 16, 2007, Mr. Mothershead filed a complaint (the "SEC Complaint") with the United States Securities and Exchange Commission (the "SEC"), making many of the same allegations he had made in early 2007. An internal investigation found that the

---

[3] In its ruling, OSHA noted that the Sarbanes-Oxley Act requires a complaint under the statute must be filed with the Secretary of Labor no later than 90 days after the date on which a person has been discharged or allegedly discriminated against and stated that its investigation revealed that the OSHA Complaint dated April 13, 2007 was filed more than 90 days after the alleged employment action identified in the Complaint. On August 24, 2007, Mr. Mothershead filed an objection to this finding with the U.S. Department of Labor, Office of Administrative Law Judges (the "OALJ") and on November 1, 2007, Delphi filed with the OALJ a motion for summary decision in opposition to Mr. Mothershead's appeal of OSHA's July 13, 2007 ruling.

4

allegations had no merit. The SEC also investigated Azimuth's allegations of fraud and, on September 11, 2007, issued a finding that enforcement action was unnecessary.[4]

---

[4] At the hearing before this Court, the Debtors will make copies of the OSHA and the SEC findings available to this Court and to Azimuth.

Argument

A.    The Terms Of The Settlement Agreement Should Be Enforced

10.    Azimuth and Mr. Mothershead entered into a duly executed, unambiguous Settlement Agreement that has been fully performed. Consequently and notwithstanding any of Mr. Mothershead's allegations of fraud, Azimuth and Mr. Mothershead cannot avoid the legal effect of the executed releases and DAS LLC does not owe Azimuth the amount asserted in its Claim. The Michigan Supreme Court has repeatedly emphasized that "a fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." Rory v. Continental Insurance Company, 473 Mich. 457, 468, 703 N.W. 2d 23 (2005) (emphasis in original) (citations omitted). An unambiguous contract provision "is reflective of the parties' intent as a matter of law." Id. (quoting Quality Products And Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 375, 666 N.W. 2d 251 (2003)).

11.    The Settlement Agreement unambiguously bars Azimuth from recovering its Claim and bars Mr. Mothershead from making a claim based on the Purchase Order or any services preformed prior to October 17, 2002. By executing the Settlement Agreement, Azimuth and Mr. Mothershead accepted $19,500.00 as full payment and satisfaction of any obligation of DAS LLC to Azimuth or Mr. Mothershead. Specifically, the Settlement Agreement provides:

> In consideration of the Release, Delphi [DAS LLC] agrees to pay Azimuth Nineteen Thousand Five Hundred Dollars ($19,500) (the "Settlement Amount"). <u>Azimuth and Mothershead each agree to accept the Settlement Amount as full payment and satisfaction of any obligations of Delphi to Azimuth or Mothershead of any kind arising out of or in connection with any facts, circumstances or transactions in existence or occurring at any time prior to the Effective Date [October 17, 2002]</u>, including, without limitation, any obligations arising out of or in connection with the Purchase

6

> Order or any services Azimuth or Mothershead have performed, or allege to have performed, prior to the Effective Date.

See Settlement Agreement at ¶ 2 (emphasis added).

12.     The Settlement Agreement clearly addresses and releases the matters comprising the Claim, services allegedly performed by Azimuth prior to October 17, 2002. Michigan courts have held it may not be necessary to look beyond the unambiguous language of a release in order to conclude that a party has been released from liability. See Romska v. Opper, 234 Mich. App. 512, 515, 594 N.W. 2d 853 (1999) (finding that the plain, explicit, and unambiguous language of the release in question made it possible to conclude that the defendant had been released from liability). Pursuant to paragraph 3 of the Settlement Agreement, Azimuth and Mr. Mothershead released DAS LLC and any related entities or persons from "all claims" existing or occurring prior to October 17, 2002. There "cannot be any broader classification than the word 'all,' and 'all' leaves room for no exceptions." Id. at 515-16 (quoting Calladine v. Hyster Co., 155 Mich. App. 175, 182, 399 N.W. 2d 404 (1986). By executing the Settlement Agreement, both Azimuth and Mr. Mothershead agreed not to commence or prosecute action against DAS LLC related to the transactions identified in the Settlement Agreement.

> In consideration of the Settlement Amount, Azimuth and Mothershead, on behalf of themselves and their respective affiliates, subsidiaries, divisions, partners, members, shareholders, representatives, attorneys, officers, directors, employees, successors, assigns and any and all other persons or entities acting or purporting to act on any of their behalf, do hereby fully and forever release, acquit and discharge Delphi [DAS LLC], together with its affiliates, subsidiaries, divisions, partners, members, shareholders, representatives, attorneys, officers, directors employees, successors, assigns and all other person or entities acting or purporting to act on any of their behalf (collectively, the "Delphi Parties"), from any and all

7

> claims, damages, expenses, liabilities, costs, actions, demands, allegations, obligations and lawsuits (collectively, "Claims") relating in any way to any facts, circumstances or transactions in existence or occurring at any time prior to the Effective Date [October 17, 2002], including, without limitation, any Claims arising out or in connection with the Purchase Order [purchase order no. LPS 49835] or any services Azimuth or Mothershead have performed, or allege to have preformed, prior to the Effective Date. **Azimuth and Mothershead each covenant that he or it will not commence any actions, suit, or prosecute any pending action or suit, in law or in equity, against Delphi or any of the other Delphi Parties on account of any action or cause of action relating to those Claims released by Azimuth and Mothershead under the Agreement.**

See Settlement Agreement at ¶ 3 (emphasis added).

13. Azimuth and Mr. Mothershead may not now unilaterally waive or modify the above provision to pursue its Claim. "The principle of freedom of contract does not permit a party _unilaterally_ to alter the original contract." Quality Products And Concepts Co., 469 Mich. at 364 (emphasis in original). Moreover, the Settlement Agreement itself contains a written modification/anti-waiver clause. Paragraph 9 of the Settlement Agreement provides that:

> No term or provision of this Agreement may be waived, altered, modified or amended except by a written instrument, duly executed by the parties to this Agreement.

See ¶ 9 of the Settlement Agreement.

B. **Azimuth's And Mr. Mothershead's Asserted Defenses To Enforcement Of The Settlement Agreement Are Without Merit**

14. Now, almost five years after executing the Settlement Agreement and accepting payment of $19,500.00 from DAS LLC, Azimuth attempts to justify its Claim with assertions that the Settlement Agreement is voidable or unenforceable because (a) Delphi allegedly coerced Mr. Mothershead into signing the Settlement Agreement and (b) the Settlement Agreement was allegedly designed to conceal fraudulent accounting activity. First, Mr. Mothershead has not pleaded legally sufficient facts that he was defrauded or coerced into

8

executing the Settlement Agreement. Second, Mr. Mothershead's attempt to resurrect the alleged liability that he released in October 2002 by raising whistleblower allegations in February 2007 are barred as a matter of law. Mr. Mothershead's allegations of fraud were not made at the time the Settlement Agreement was being negotiated. Instead, he made those allegations to the SEC and OSHA four and a half years after the Settlement Agreement was executed and less than one month after the Debtors filed an objection seeking to expunge Azimuth's Proof of Claim.[5] These assertions, made over four years after execution of the fully integrated Settlement Agreement, are legally insufficient to invalidate the Settlement Agreement. Furthermore, the allegations are utterly without merit.

        (a)    Azimuth's And Mr. Mothershead's Allegations Of Fraud And Misrepresentation Are Insufficient and Unsubstantiated

15.    In order to state a legally sufficient fraud claim under Michigan law, courts have held that "fraud and misrepresentation are similar and require proof that (1) defendants made a material representation; (2) it was false; (3) when defendants made it, defendants knew that it was false or made recklessly without knowledge of its truth or falsity; (4) defendants made it with the intent that plaintiffs would act upon it; (5) plaintiffs acted in reliance upon it; and (6) plaintiffs suffered damage". Mitchell v. Dahlberg, 215 Mich. App. 718, 723 (quoting Arim v. General Motors Corp., 206 Mich. App. 178,195, 520 N.W. 2d 695 (1994)).

16.    Mr. Mothershead attempts to meet this standard by alleging that "there were certain material facts that Delphi was aware of, but I was not" before he entered into the Settlement Agreement. See Response at ¶ 8. However, Mr. Mothershead fails to identify what specific material facts Delphi hid from him, and how these facts would have changed his

---

[5] In addition, on or about March 29, 2007, Mr. Mothershead sent a demand letter to DAS LLC seeking approximately $470,000.00 from DAS LLC in consideration for his agreement to drop his claims and whistleblower complaint against DAS LLC.

9

decision to enter into the Settlement Agreement. This is a fatal pleading defect. Bender v. Southland Corp., 749 F. 2d 1205, 1215 (6th Cir. 1984) (noting that Fed. R. Civ. P. 9(b) requires that fraud be pleaded with particularity); see also Choate v. National R.R. Passenger Corp., Slip opinion, 2007 WL 2868027, *6 (E.D. Mich.).

    17. Mr. Mothershead next alleges that Delphi "fraudulently misrepresented itself during the negotiations [over the Settlement Agreement] in order to extract additional unpaid work from me and to convince me that there was no basis to my 2002 suspicions and allegations, and there was no basis for Delphi to pay me the fees I was owed." See Response at ¶ 6(c). Similar to the first argument, Mr. Mothershead fails to specific any particular statement, much less when and by whom the statement was made, nor how Mr. Mothershead could have possibly relied upon such statements to enter into the Settlement Agreement. Bender, 749 F. 2d at 1215 (finding that "Fed. R. Civ. P. 9(b) requires that fraud be pleaded with particularity and to satisfy Fed. R. Civ. P. 9(B), a plaintiff must at minimum allege the time, place and contents of the misrepresentation(s) upon which he relied"). If Mr. Mothershead truly believed there were ongoing fraudulent practices and was willing to suffer retaliation as a result,[6] then it makes no logical sense that he relied on Delphi's supposed statements that there was no fraud in entering into the Settlement Agreement. Either Mr. Motherhead believed there was fraud or he did not.

    18. Additionally, the integration clause in paragraph 3 of the Settlement Agreement forecloses any argument that Mr. Mothershead relied on extra-contractual representations including the supposed misrepresentations alleged by Mr. Mothershead. See UAW-GM Human Resource Center, 228 Mich. App. 486, 504 (1998) ("Here, the merger clause

---

[6] Mr. Mothershead alleges that "one of the reasons Delphi refused to pay me was because I had uncovered potentially damaging information about another area of accounting fraud, involving Delphi's floor-space reporting formulas." See Response at ¶ 9.

made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement.").

19. Finally, Mr. Mothershead fails to explain how the supposed ongoing fraud damaged him. Azimuth asserted a breach of contract claim against Delphi for Delphi's alleged failure to pay for extra-contractual additional consulting services. As stated above, the Settlement Agreement unambiguously resolves those claims. Mr. Mothershead fails to advance a coherent rationale explaining how the alleged accounting fraud directly damaged him or his company.

(b) Azimuth's And Mr. Mothershead's Allegations Of Duress And Coercion Are Without Merit

20. Mr. Mothershead's asserted defenses of coercion and duress are likewise without merit. Under established Michigan law, "[f]ear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully." Whirlpool Corp. v. Grigoleit Co., 2006 WL 1997402, *3 (W.D. Mich.). The Michigan Supreme Court has not retreated from the definition of duress laid out in 1881, namely that "[d]uress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which would deprive him of the exercise of free will." Hackley v. Headley, 45 Mich. 569, 574 (1881); see Stefanac v. Cranbrook Educ. Cmty., 458 N.W. 2d 56, n.40 (Mich. 1990); see also Rory, 473 Mich. at 470.

21. Mr. Mothershead's duress claim based on the fact that he was on the verge of defaulting on his home mortgage is inadequate as a matter of law. See Whirlpool, 2006 WL 197402, at *4 (noting fear alone of financial ruin is insufficient to establish economic duress). His assertion that Delphi coerced him "through the weight of its undue economic influence over

11

me" fails for the same reason. <u>See</u> Azimuth's Response at ¶ 8. By entering into the Settlement Agreement, Mr. Mothershead made the following representation:

> The parties further represent that they understand the contents of this Agreement and that they are signing this Agreement as their free act and deed, without any persuasion or coercion on the part of anyone.

<u>See</u> Settlement Agreement at ¶ 6. Mr. Mothershead also affirmed that he had fully read the entire Settlement Agreement, had the opportunity to consult with attorneys regarding the terms of the Settlement Agreement, and signed the Settlement Agreement as his own free and voluntary act. <u>See</u> Settlement Agreement at ¶ 5. The Court should not relieve Mr. Mothershead, a sophisticated businessman, of the clear and unambiguous language of the Settlement Agreement he signed over four years ago.

22.    For all the reasons discussed above, the Debtors are not liable to Azimuth and the Claim should be disallowed and expunged in its entirety.

### Memorandum of Law

23.    Because the legal points and authorities upon which this Supplemental Reply relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
            November 6, 2007

                                            SKADDEN, ARPS, SLATE, MEAGHER
                                               & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 9331)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

     - and -

By:   Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession