## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (this "Agreement") is entered into as of October 17, 2002 (the "Effective Date"), by and among Delphi Automotive Systems LLC ("Delphi"), Azimuth North America LLC ("Azimuth"), and Robert Mothershead ("Mothershead").

### RECITALS

A.  Pursuant to Purchase Order No. LPS 49835 dated July 20, 2001 issued by Delphi in favor of Azimuth and accepted by Azimuth (the "Purchase Order"), Azimuth and Mothershead, on Azimuth's behalf, provided certain consulting services to Delphi.

B.  Azimuth and Mothershead have requested payment from Delphi in the amount of $169,500, $19,500 of which those parties claim are due under the Purchase Order and the remaining $150,000 of which those parties claim are due in connection with additional consulting services rendered without the issuance of a Delphi purchase order.

C.  Delphi has been unable to establish a basis for any obligation of Delphi to pay Azimuth such requested amounts.

D.  Delphi, Azimuth and Mothershead believe it to be in their mutual best interests to resolve their disagreement with respect to the amounts due, if any, from Delphi to Azimuth.

WHEREFORE, based upon the foregoing recitals and for good and valuable consideration, the receipt and adequacy of which is acknowledged, the parties agree as follows:

1.  Azimuth and Mothershead shall each, by their execution of this Agreement, grant the release set forth in Section 3 below (the "Release").

2.  In consideration of the Release, Delphi agrees to pay Azimuth Nineteen Thousand Five Hundred Dollars ($19,500) (the "Settlement Amount"). Azimuth and Mothershead each agree to accept the Settlement Amount as full payment and satisfaction of any obligations of Delphi to Azimuth or Mothershead of any kind arising out of or in connection with any facts, circumstances or transactions in existence or occurring at any time prior to the Effective Date, including, without limitation, any obligations arising out of or in connection with the Purchase Order or any services Azimuth or Mothershead have performed, or allege to have performed, prior to the Effective Date.

3.  In consideration of the Settlement Amount, Azimuth and Mothershead, on behalf of themselves and their respective affiliates, subsidiaries, divisions, partners, members, shareholders, representatives, attorneys, officers, directors, employees, successors, assigns and any and all other persons or entities acting or purporting to act on any of their behalf, do hereby fully and forever release, acquit and discharge Delphi, together with its affiliates, subsidiaries, divisions, partners, members, shareholders, representatives, attorneys, officers, directors, employees, successors, assigns and all other persons or entities acting or purporting to act on any of their behalf (collectively, the "Delphi Parties"), from any and all claims, damages, expenses, liabilities, costs, actions, demands, allegations, obligations and lawsuits (collectively, "Claims") relating in any way to any facts, circumstances or transactions in existence or occurring at any time prior to the

Effective Date, including, without limitation, any Claims arising out of or in connection with the Purchase Order or any services Azimuth or Mothershead have performed, or allege to have performed, prior to the Effective Date. Azimuth and Mothershead each covenant that he or it will not commence any action or suit, or prosecute any pending action or suit, in law or in equity, against Delphi or any of the other Delphi Parties on account of any action or cause of action relating to those Claims released by Azimuth and Mothershead under this Agreement.

4. Each party represents that it has full power and authority to enter into and perform this Agreement and that the person signing this Agreement on behalf of such party has been properly authorized and empowered to enter into this Agreement. Azimuth and Mothershead each represent and warrant that they have never assigned or transferred to any person or entity any right or interest arising in their favor pursuant to the Purchase Order or in connection with any services Azimuth or Mothershead have performed, or allege to have performed, at the request of Delphi or any of the other Delphi Parties.

5. Each party affirms that: (i) it has fully read this entire Agreement, (ii) it has had the opportunity to consult with its attorneys regarding the terms of this Agreement, (iii) it signs this Agreement as its own free and voluntary act, and (iv) this Agreement constitutes the full and complete understanding among the parties, and merges and integrates any and all previous negotiations, representations, covenants, promises, conditions and understandings, concerning the settlement and release of any Claims Azimuth or Mothershead may have against any of the Delphi Parties. The parties further acknowledge that in entering into this Agreement, they are not relying, nor have they relied upon, any covenants, promises, conditions or understandings, either oral or written, other than those contained and set forth in the terms of this Agreement.

6. The parties acknowledge that they have read this Agreement, and that they are equally responsible for the wording of the terms of this Agreement as a result of drafting specific terms, negotiating specific terms or approving the wording selected by others to state specific terms. Consequently, the parties agree and acknowledge that in interpreting this Agreement, the rule of contractual interpretation and construction under which ambiguities in the provisions of an agreement are construed against the party drafting such provisions does not apply to the interpretation or construction of the terms of this Agreement. The parties further represent that they understand the contents of this Agreement and that they are signing this Agreement as their free act and deed, without any persuasion or coercion on the part of anyone.

7. This Agreement shall be binding upon the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns, as the case may be.

8. Each party agrees to fully cooperate with the other parties and to take all additional actions that may be necessary to give full force and effect to this Agreement.

9. No term or provision of this Agreement may be waived, altered, modified or amended except by a written instrument, duly executed by the parties to this Agreement.

10. This Agreement may be executed in any number of counterparts and by each party hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which together shall constitute one and the same instrument. For purposes of this Agreement, facsimile signatures shall also constitute originals.

11. This Agreement is made in the State of Michigan and shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without regard to conflicts of law principles.

12. Azimuth and Mothershead agree that they shall keep confidential and shall not disclose to any person or entity other than their attorneys who agree to be bound by the confidentiality provisions of this Agreement (i) the existence of this Agreement and all of its terms and (ii) any information regarding Delphi or any of the other Delphi Parties that was disclosed to or discovered by Azimuth or Mothershead in connection with the services under the Purchase Order or any other work or activity that Azimuth or Mothershead performed concerning Delphi or any of the other Delphi Parties prior to the Effective Date.. Notwithstanding the foregoing, Azimuth and Mothershead shall have the right to disclose the terms of this Agreement (a) with Delphi's permission (which may be granted or withheld in Delphi's sole discretion) and (b) in any action to enforce the terms of this Agreement against Delphi or where compelled to do so by the order of a court of competent jurisdiction

**DELPHI AUTOMOTIVE SYSTEMS LLC**

BY: _____
NAME: JOHN A. TAFFURS
ITS: EXECUTIVE DIRECTOR
FACILITIES SERVICES GROUP

**AZIMUTH NORTH AMERICA LLC**

BY: _____
Robert Mothershead
ITS: Chief Executive Officer

_____
ROBERT MOTHERSHEAD,
In His Individual Capacity

3