UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :    Case No. 05-44481(RDD)
                                                            :
                            Debtors.                        :    (Jointly Administered)
------------------------------------------------------------x

Counsel:

Law Offices of Brad A. Chalker LLC, by Brad A. Chalker, Esq., for Joseph Reno

Skadden, Arps, Slate, Meagher & Flom LLP, by Albert L. Hogan III, Esq. and John K. Lyons, Esq., for Delphi Corporation, et al.

MEMORANDUM OF DECISION AND ORDER ESTABLISHING AMOUNT
OF JOSPEPH RENO'S ALLOWED CLAIM (NUMBER 9956)

ROBERT D. DRAIN, United States Bankruptcy Judge

After a March 21, 2007 evidentiary hearing, the Court partially allowed and otherwise disallowed the claim of Joseph Reno, a former employee of Delphi Corporation ("Delphi"). Specifically, by order dated March 30, 2007, the Court allowed Mr. Reno's claims arising under the Employee Retirement Income Security Act of 1974 (the "ERISA Claim") and the Consolidated Omnibus Reconciliation Act, 29 U.S.C. §§ 1161-1168 (the "COBRA Claim;" with the ERISA Claim, the "Allowed Claim"), and disallowed Mr. Reno's claims pertaining to his allegation that Delphi wrongfully terminated his employment.[1] Familiarity with the Court's modified bench ruling, attached as Exhibit A to the March 30, 2007 order (the "Bench Ruling"), is presumed.

---

[1] Mr. Reno asserted claims for retaliatory discharge under Ohio's whistleblower statute, for wrongful discharge, for lost wages, for defamation, and for violation of the Fair Credit Reporting Act.

At the March 21, 2007 hearing, the parties did not submit evidence on Mr. Reno's damages.  Thereafter, they were not able to agree on the entire amount of the Allowed Claim in light of the Bench Ruling, and they have submitted briefs and exhibits on the remaining open issues.  Based on those submissions and the record of the March 21, 2007 hearing, the Court has determined the amount of Mr. Reno's Allowed Claim as set forth below.

Discussion

A.  The ERISA Claim.  The parties agree that the amount of the ERISA Claim, without regard to Mr. Reno's claim for attorney's fees,[2] is $5,433.52, and Delphi does not dispute that Mr. Reno is entitled to pre-judgment interest on that amount from April 12, 2004, the date that it failed to pay Mr. Reno's ERISA benefit, to the date of this Memorandum of Decision and Order.  See Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 334 (W.D.N.Y. 2006) (discussing factors informing court's discretion whether to award pre-judgment interest on ERISA benefit claims).

Mr. Reno's submission on damages did not propose a pre-judgment interest rate, requesting merely that interest be paid at the "statutory rate" from April 12, 2004 to the present.  In the absence of a pre-judgment rate in ERISA itself, the Court agrees with Delphi that 28 U.S.C. § 1961 should serve as the basis for the pre-judgment rate for the ERISA Claim.  See Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998); Klimbach v. Spherion Corp., 467 F. Supp. 2d at 334.  Thus, following the methodology set forth in Klimbach, the rate of pre-judgment interest on the ERISA Claim shall be the average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System on its website www.federalreserve.gov, for the

---

[2] Mr. Reno's claim for attorney's fees related to his ERISA Claim is discussed separately below.

2

period April 12, 2004 to the date of this Memorandum Decision and Order.  28 U.S.C. § 1961(a).  That average rate is 3.85 percent.

    B.  <u>The COBRA Claim.</u>[3]  COBRA is a limited "legislative response to the growing number of Americans without health insurance and the reluctance of hospitals to treat the uninsured."  <u>Phillips v. Saratoga Harness Racing, Inc.</u>, 240 F.3d 174, 179 (2d Cir. 2001).  Under COBRA, a group health plan such as Delphi's must provide each beneficiary who would lose coverage under the plan as a result of a "qualifying event" with the right to elect, within the election period, to purchase, at a cost of not more than 102 percent of the sponsor's cost, up to eighteen months of continued coverage.  29 U.S.C. §§ 1161(a), 1162(2)(A), 1162(5), 1162(3).  Termination of employment is a "qualifying event" if the termination was not due to the former employee's "gross misconduct."  29 U.S.C. § 1163(2).

    Under COBRA, the employer must notify the plan administrator of a "qualifying event" within thirty days, 29 U.S.C. § 1166(a)(2), and the plan administrator must notify the former employee of such beneficiary's rights under COBRA within fourteen days of the employer's notice -- that is, the administrator must notify the outgoing employee of his or her right to purchase continuation coverage.  29 U.S.C. § 1166(a)(4)(A), (c).  Here, Delphi was both Mr. Reno's employer and the plan's administrator; under such circumstances, the plan administrator's notice to Mr. Reno would be due within forty-four days of his termination.  <u>Villanueva v. Warner Lambert</u>, 339 F. Supp. 2d 351, 358-59 (D. P.R. 2004); <u>Cooper v. Harbour Inns of Baltimore, Inc.</u>, 2000 WL 351373, at *5 (D. Md. Mar. 20, 2000); <u>Roberts v. National Health Corp.</u>, 963

---

[3] Once again, this discussion does not cover Mr. Reno's claim for attorney's fees related to the COBRA Claim, which is separately discussed below.

3

F. Supp. 512, 515 (D. S.C. 1997); Disabatino v. Disabatino Bros., Inc., 894 F. Supp. 810, 817 (D. Del. 1995). Cf. Anderson v. Royal Crest Dairy Inc., 281 F. Supp. 2d 1242 (D. Colo. 2003).

It is Delphi's failure to provide the notice required by 29 U.S.C. § 1166(a)(4) that gives rise to Mr. Reno's COBRA Claim.  See De Nicola v. Adelphi Acad., 2006 WL 2844384, at *3 (E.D.N.Y. Sept. 29, 2006) (COBRA does not require the employer to continue to pay premiums for terminated qualified employees, only that the outgoing beneficiary be timely notified of his or her right to purchase continued coverage).

The sanction for failing to give such a notice is set forth in 29 U.S.C. § 1132(c):

> Any administrator (A) who fails to meet the requirements of . . . 29 U.S.C.S. § 1166(a)(1) or (4) . . . with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100[4] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to a single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1).  Consistent with the plain terms of section 1132(c)(1), it is generally agreed that in exercising its discretion the court need not award the maximum prescribed monetary penalty for a violation of section 1166(a)(4).  De Nicola v. Adelphi Acad., 2006 WL 2844384, at *7; O'Shea v. Childtime Childcare, Inc., 2002 WL

---

[4] The maximum penalty was increased to $110 per day pursuant to the Federal Civil Penalties Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996.  See 29 C.F.R. § 2575.502c-1.

4

31738936, at *7 (N.D.N.Y. Dec. 2, 2002); Cooper v. Harbour Inns of Baltimore, Inc., 2000 WL 351373, at *6.

The courts disagree, however, whether a sanction should be imposed at all if the plaintiff has not suffered any prejudice from the violation, such as where the plaintiff has not shown that he or she required health care during the eighteen months of potential continuation coverage, if the employee eventually obtained coverage either under the policy or at comparable cost under another policy before incurring any health care expenses, or even where the cost of obtaining continuation coverage exceeded the amount of the former employee's health care expenses during the applicable period. Compare De Nicoloa v. Adelphi Acad., 2006 WL 2844384, at *7-*10 (collecting cases and concluding not to award statutory damages in the absence of actual prejudice); with Disabatino v. Disabatino Bros., Inc., 894 F. Supp. at 816-17; Cooper v. Harbour Inns of Baltimore, Inc., 2000 WL 351373 at *6 (concluding that because the award is both a form of compensation and a deterrent, a showing of prejudice is not a prerequisite).

Whether the absence of actual prejudice should bar an award under 29 U.S.C. §§ 1132(c)(1) and 1166(a)(4) is a real question here because Mr. Reno has not alleged that he or his family suffered any actual loss, such as the incurrence of unreimbursed health care expenses or the cost of a replacement benefit policy, stemming from Delphi's failure to notify him of his right to elect continuation coverage.

Although the question is a close one (particularly given that it appears that most of the courts addressing the issue in the Second Circuit have declined to award any sanction under 29 U.S.C. § 1132(c) absent actual prejudice (see De Nicola v. Adelphi Acad., 2006 WL 2844384, at **7**-*10; Kascewicz v. Citibank, N.A., 837 F. Supp. 1312,

5

1322-23 (S.D.N.Y. 1993) (collecting cases)), the deterrent purpose of the statute argues against a per se rule. Kascewicz, 837 F. Supp. at 1322-23. See also Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76 (2d Cir. 2001), which, while not deciding either in favor of or against a per se rule requiring actual prejudice, noted, "In assessing a claim for penalties, courts have considered various factors, including 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary,'" and instructed the district court to evaluate the claim in light of such factors. Id. at 90 (citation omitted; emphasis added).

As the Second Circuit made clear in Devlin, however, the absence of any actual prejudice may, at a minimum, properly be taken into account, along with whether Delphi acted in good faith, when determining the penalty under 11 U.S.C. § 1132(c)(1). Id.; see also Kerkhof v. MCI Worldcom, Inc., 282 F.3d 44, 56 (1st Cir. 2002) ("although a district court need not find bad faith or prejudice to impose penalties, it may give weight -- even dispositive weight -- to either of these factors in the exercise of its discretion"); Kascewicz v. Citibank, N.A., 837 F. Supp. at 1322-23.

Delphi objected to Mr. Reno's COBRA Claim solely on the basis that he was terminated for "gross misconduct" as such term is defined for purposes of 29 U.S.C. § 1163(2). At the March 21, 2007 hearing, however, Delphi failed to meet its burden to show that Mr. Reno's conduct was sufficiently reprehensible to constitute "gross misconduct" that would render him ineligible under COBRA. Bench Ruling at 20-21. This evidentiary failure was based, though, almost entirely on Delphi's choice not to engage in a contested hearing (preceded by discovery) to establish that Mr. Reno's

6

conduct sank to such a level.  Instead, Delphi chose to focus on defending against Mr. Reno's potentially much larger wrongful termination claims, which it succeeded in doing primarily by establishing that it had sufficient cause to fire him, including based on his apparently knowing violation of Delphi's established practices and procedures and generally accepted workplace standards.  Bench Ruling at 9-14.  In other words, although Delphi failed to show that it fired Mr. Reno for "gross misconduct," its position that Mr. Reno had acted improperly was not without merit.  See Mlsna v. Unitel Commc'ns. Inc., 41 F.3d 1124, 1130 (7th Cir. 1994) (the court should take into account, in addition to actual prejudice, the presence or absence of the employer's good faith in asserting the gross misconduct defense).[5]  See also Mlsna v. Unitel Commc'ns. Inc., 91 F.3d 876, 879-80 (7th Cir. 1994) ("Mlsna II") (affirming ruling on remand that employer lacked a good faith basis for asserting gross misconduct defense, justifying a higher sanction); Nero v. Univ. Hosps. Mgmt. Servs. Org., 2006 WL 2933957, at *3-*5 (N.D. Ohio, Oct. 12, 2006) (court awarded $15 per day penalty under section 1132(c) where (a) former employee actually incurred unreimbursed health care costs, (b) no notice was sent, and (c) the employer "has not offered any evidence to suggest that [the former employee] engaged in any intentional, wanton, willful of deliberate misconduct").

> Unlike in Nero, moreover, on April 5, 2004 Delphi actually sent Mr. Reno a "Notice of Ineligibility for COBRA Continuation Coverage" that was arguably consistent with its position that he was not entitled to coverage because of his alleged "gross misconduct," although he would have needed to dig some to confirm that:  the

---

[5] This is not to say that a COBRA claim may be defeated by the employer's "honest belief" that the former employee had engaged in gross misconduct, only that the employer's objective good faith in raising the defense should have a bearing on the amount of the penalty.  See Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997).

7

Notice informed him merely that he was ineligible "[d]ue to your employment status code." See Exhibit 3 to Delphi's July 20, 2007 Response to Damages Brief of Joseph Reno with Respect to Proof of Claim Number 9956 ("Delphi Response"). [6] (The April 5, 2004 Notice also informed Mr. Reno, however, of his right to appeal that decision and how to go about making such an appeal.)

Weighing all of the foregoing, it is clear that it would be within the Court's discretion not to award any sanction under 29 U.S.C. § 1132(c). However, given the statute's deterrent purpose, Delphi's size and sophistication, and the fairly cryptic nature of the two communications that Delphi sent to Mr. Reno, the Court will award Mr. Reno $10 a day under 29 U.S.C. § 1132(c), for 504 days. See Disabatino v. Disabatino Bros. Inc., 894 F. Supp. at 816-17 (D. Del. 1995); Cooper v. Harbour Inns of Baltimore, 2000 WL 351373, at *6; Paris v. F. Korbel & Bros. Inc., 751 F. Supp. 835, 840 (N.D. Cal. 1990) (each imposing a $10 per day penalty in analogous circumstances). As discussed in greater detail below, this award is made in part in light of the Court's conclusion not to allow Mr. Reno a separate claim for attorney's fees related his COBRA Claim.

C.  Attorney's Fees.  Mr Reno also seeks an award of attorney's fees in connection with the successful prosecution of the Allowed Claims, under 29 U.S.C. § 1132(g)(1), which provides,

> In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

---

[6] A May 24, 2004 response by Delphi's National Benefit Center, apparently to Mr. Reno's inquiry about his "employment status code," failed to shed more light on why Mr. Reno was declared ineligible for continuation coverage under COBRA. It, too, did not state that Delphi was relying on Mr. Reno's alleged gross misconduct, merely stating that his "2A status is defined as 'a release or discharge, which does not offer COBRA enrollment.'" Delphi Response, Ex. 4.

8

29 U.S.C. § 1132(g)(1). [7]

The party seeking attorney's fees has the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999). To determine whether a claimant has satisfied that burden, courts consider the following five factors:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

Salovaara v. Eckert, 222 F.3d 19, 27-28 (2d Cir. 2000). "Each of these factors must be weighed, but it is not necessary for a party to prevail on each in order for an award to be granted." Klimbach v. Spherion Corp., 467 F. Supp. 2d at 329.

In addition, the court must determine the number of hours reasonably expended multiplied by a reasonable hourly rate, id. at 330, and "exclude all hours that were excessive, redundant, or otherwise unnecessary." Id. at 331. This is particularly important if the claimant has prevailed, as here, on only certain of his or her causes of action, because, although "a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised," Déjà vu v. Metro. Gov't of Nashville & Davidson County, Tenn., 421 F.3d 417, 423 (6th Cir. 2005), "the court should exclude any hours dedicated to severable, unsuccessful claims," unless such claims were "inextricably intertwined and involve a core of common facts" with the successful claims. Quaratino

---

[7] This section has been applied to both ERISA and COBRA claims. Klimbach v. Spherion Corp., 467 F. Supp. 2d at 328-29 (ERISA claims); De Nicola v. Adelphi Acad., 2006 WL 2844384, at *10 (COBRA claims).

9

v. Tiffany & Co., 129 F.3d 702, 705 (2d Cir. 1997); Klimbach v. Spherion Corp., 467 F. Supp. 2d at 331; see also Nero v. Univ. Hosps. Mgmt. Servs. Org., 2006 WL 2933957, at *6 (awarding attorney's fees only in connection with COBRA claim, not discrimination claim).

Here, Delphi does not dispute that Mr. Reno's counsel's hourly rate was reasonable, but it strongly disputes liability for the entire amount of Mr. Reno's legal bills ($85,334.09), for which he seeks reimbursement. The time records attached to Mr. Reno's supplemental submission on damages corroborates that Delphi's objection is well taken: almost all of the claimed attorney's fees were incurred in prosecuting Mr. Reno's disallowed claims. Moreover, as the Court previously found, whereas those disallowed claims "all stem from the same common facts" (the circumstances surrounding Mr. Reno's dismissal, including his conduct at the time), the ERISA Claim and the COBRA Claim do not derive from those facts. Bench Ruling at 1. They arose from Delphi's acknowledged failure to pay Mr. Reno's full ERISA benefit and Delphi's failure to provide him with the required COBRA notice.[8] Thus, if attorney's fees for the Allowed Claims are warranted, they would be payable only for those services specifically rendered in connection with such claims. Nero v. Univ. Hosps. Mgmt. Servs. Org., 2006 WL 2933957, at *6; Klimbach v. Spherion Corp., 467 F. Supp. 2d at 331.

Review of the time records confirms the Court's conclusion, based on the extremely sparse amount of Mr. Reno's counsel's pre-hearing submissions and argument

---

[8] Delphi's "gross misconduct" defense to the COBRA claim, on the other hand, pertained, like the wrongful discharge claims, to Mr. Reno's conduct; however, as noted above, Mr. Reno prevailed on this point primarily because Delphi mistakenly assumed it could establish gross misconduct for COBRA eligibility purposes simply by relying on the showing that it made in defense of Mr. Reno's wrongful discharge claims. But the different standards involved meant that Delphi did not carry its burden of proof. As born out by the time records, moreover, not only did Mr. Reno's counsel consequently have to do nothing to defeat Delphi's "gross misconduct" defense, he also in fact did next to nothing on the "gross misconduct" issue.

devoted to the Allowed Claims, that only a small fraction of the requested attorney's fees were incurred in connection with the Allowed Claims. At most, time entries aggregating $3,135 refer to pre-bankruptcy work related to one or both of the Allowed Claims, and $3,937.50 of time entries cover pre-hearing submissions that arguably could have included work on the Allowed Claims. However, where the time records mention work on the Allowed Claims, counsel did not distinguish time spent solely on such claims from time spent on the disallowed claims, and the entries describing work on pre-hearing submissions do not even mention the Allowed Claims (although the pre-hearing submissions included a cursory reference to them). Given the extremely disproportionate amount of time devoted to the disallowed claims, and the fact that Mr. Reno has the burden of proof, therefore, the foregoing amounts should be heavily discounted to reflect the actual time counsel likely spent on the Allowed Claims. Klimbach, 467 F. Supp. 2d at 332. The maximum fee that could be awarded under 29 U.S.C. § 1132(g)(1) in connection with the Allowed Claims, therefore, is $2,500.

Then, applying the five factors listed in Salovaara v. Eckert, 222 F.3d at 27-28, it is conceded that Delphi had no defense to the ERISA Claim, that Delphi has the ability to pay the attorney's fees incurred in connection with that claim (when it will make a distribution on account of the Allowed Claim under a chapter 11 plan), and that payment of the fees would have somewhat of a deterrent effect on Delphi's failure to pay such claims in the future. Consequently, Mr. Reno's claim for attorney's fees in connection with the ERISA Claim will be allowed in the amount of $1,500. A roughly proportionate amount of expenses that could be attributable to this work (none having been specifically tied by counsel to the ERISA Claim services) is $300. On the other

11

hand, as noted above, Delphi did not act in bad faith in connection with the COBRA Claim; indeed, whether to award any sanction for that claim was a close question. Any deterrent effect was already taken into account, moreover, in awarding the sanction under 29 U.S.C. § 1132(c). And, as with the ERISA Claim, Mr. Reno was acting only for himself; he did not confer a benefit on a larger group of plan participants. Therefore, Mr. Reno's allowed COBRA Claim will not include any amount for attorney's fees under 29 U.S.C. § 1132(g)(1). See Kascewicz v. Citibank, N.A., 837 F. Supp. at 1324 (declining to award attorney's fees under 29 U.S.C. § 1132(g)(1) for COBRA violation in light of court's conclusion that a penalty under 29 U.S.C. § 1132(c) was sufficient).

## Conclusion

For the foregoing reasons, the amount of the Allowed Claim is $12,273.52, plus pre-judgment interest on the $5,433.52 ERISA Claim at the simple, non-compound rate of 3.85 percent per annum from April 12, 2004 through November 7, 2007.

It is SO ORDERED. The claims agent, Kurtzman Carson Consultants, LLC, is directed to serve this Memorandum Decision and Order in accordance with the Claim Objection Procedures Order and to reflect Mr. Reno's Allowed Claim in the amount stated herein in the claims registry.

Dated: November 7, 2007
      New York, New York

                              /s/ Robert D. Drain
                            UNITED STATES BANKRUPTCY JUDGE