TOGUT, SEGAL & SEGAL LLP  
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,  
Debtors and Debtors in Possession  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000  
Albert Togut (AT-9759)  
Neil Berger (NB-3599)  
Lara Sheikh (LS-0879)

Hearing Date: November 29, 2007  
At: 10:00 a.m.

Delphi Legal Information Hotline:  
Toll Free: (800) 718-5305  
International: (248) 813-2698

Delphi Legal Information Website:  
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------x  
In re:                                            :    Chapter 11  
                                                  :    Case No. 05-44481 [RDD]  
DELPHI CORPORATION, et al.,                       :  
                                                  :    Jointly Administered  
                               Debtors.           :  
                                                  :  
---------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION OF VERIZON  
SERVICES CORP. FOR PAYMENT OF ADMINISTRATIVE  
EXPENSE CLAIM PURSUANT TO MOBILEARIA SALE ORDER**

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the Motion of Verizon Services Corp. ("Verizon") for Payment of Administrative Expense Claim Pursuant to Mobilearia Sale Order (the "Motion") and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.  Verizon seeks immediate payment of $497,532.61 on account of alleged damages incurred by Verizon relating to wireless service for certain GPS units (the "GPS Units") that Debtor Mobilearia, Inc. ("Mobilearia") sold to Verizon pursuant to that certain Agreement for GPS System and Services dated May 15, 2005

(the "GPS Agreement," attached to the Motion as Exhibit "A"). The GPS Agreement was assumed and assigned by Mobilearia pursuant to an Order of the Court dated July 21, 2006.

2. Verizon mistakenly alleges that Mobilearia was responsible for selecting and arranging wireless service for the GPS Units and is therefore liable for damages associated with certain overage, misactivation and overactivation charges (the "Wireless Service Damages Claim").

3. Verizon has never provided the Debtors with any evidence to support its allegations that the Debtors were responsible for arranging for the wireless service with Verizon's sister company, Verizon Wireless Corp. ("Verizon Wireless"). Moreover, Verizon has failed to identify any contractual or legal basis that could give rise to the Wireless Service Damages Claim; and it cannot do so.

4. In fact, as demonstrated below and in the attached Declaration of John Absmeier, Mobilearia's former Director, Program Management (the "Absmeier Decl."), Verizon was solely responsible for selecting the wireless service plans that were activated for the GPS Units and the activation schedule therefore; such responsibility is confirmed by the GPS Agreement and the parties' actions. In sum, the Wireless Service Damages Claim is based on the false premise that Mobilearia has any contractual or legal liability for such claim, which it clearly does not.

5. Even if there were a legal basis for the Wireless Service Damages Claim, the amount of any such Claim is highly disputed. Mobilearia has repeatedly requested that Verizon provide an explanation and/or support for the amounts asserted. Verizon has been unable or unwilling to provide such explanations or support. In the event that the Court determines that there is a legal basis for the

2

Claim, Mobilearia reserves it right to seek discovery with respect to the amounts asserted.

6. Based on the foregoing and as more fully set forth below, Mobilearia is not liable to Verizon for any amount on account of the Wireless Service Damages Claim and the Motion should be denied.

## DEBTOR'S STATEMENT AND OBJECTION

7. The Wireless Service Damages Claim is comprised of three categories of damages: Overage Charges, Misactivation Charges and Overactivation Charges, all defined, as follows, and addressed in detail hereinbelow.

8. The "Overage Charges" of $678,573.09 are alleged Verizon Wireless charges to Verizon for data usage in excess of the base usage allowance under the applicable data usage plan selected by Verizon for the GPS Units. Mobilearia does not owe Verizon any amounts on account of the alleged Overage Charges.

9. The "Misactivation Charges" of $164,672.32 are additional data usage charges that allegedly resulted from certain GPS Units being activated with a data usage plan other than that specified by Verizon. Mobilearia has already paid $86,017.82 on account of Misactivation Charges, which represents an overpayment by Mobilearia of $43,303.56.

10. The "Overactivation Charges" of $133,945.20 are alleged additional expenses resulting from GPS Units that were allegedly activated but never installed. Mobilearia does not owe Verizon any amounts on account of Overactivation Charges, but it paid Verizon $39,300 as a customer courtesy to resolve the issue.

3

**I.      Overage Charges**

    A.    <u>Verizon was Solely Responsible for Selecting Wireless Service Plans for the GPS Units</u>

    11.    The majority of the Wireless Service Damages Claim is comprised of the Overage Charges. However, the GPS Agreement provides that Verizon alone – and not Mobilearia – was responsible for arranging wireless service for the GPS Units. The GPS Agreement expressly provides that Verizon was responsible "[p]rior to installation, . . . [to] contact Wireless Carrier and arrange for auto-provisioning for the [GPS] units." <u>See</u>, Motion, Exh. A, Attachment B-3. Verizon negotiated a wireless service agreement with its affiliate, Verizon Wireless, without Mobilearia's participation or input. Absmeier Decl. ¶ 6.

    12.    While Verizon Wireless offers many plans to choose from, Verizon selected and contracted with Verizon Wireless for two wireless plans to be activated upon installation of the GPS Units: an unlimited usage plan and a plan limited to 2 Mb of data usage per month.

    13.    Mobilearia was not a party to and had no input regarding Verizon's negotiations with Verizon Wireless. Absmeier Decl. ¶ 7. Mobilearia did recommend to Verizon that it select a limited 6 Mb plan for the GPS Units to be activated with a limited usage plan. Absmeier Decl. ¶ 8. Verizon did not follow Mobilearia's recommendation and selected the limited 2 Mb plan rather than a limited 6 Mb plan. Absmeier Decl. ¶ 8. Verizon now improperly seeks to hold the Debtors liable for Verizon's improvident decision.

    B.    <u>Mobilearia Only Facilitated Activation of Wireless Service Pursuant to Verizon's Instructions</u>

    14.    As a customer courtesy, and without any contractual obligation to do so, Mobilearia facilitated activation of the GPS Units in accordance with

Verizon's instructions as part of the process of deployment and installation of the GPS Units. Absmeier Decl. ¶ 9.

15. Specifically, Verizon completed a Sales Order Activation Form ("SOAF") for each GPS Unit which identified the wireless plan that would be activated for the unit. Mobilearia then forwarded the data from the SOAFs with instructions to activate the GPS Units, as set forth in the SOAF, and associated hardware identification information for the installation to Verizon Wireless. Absmeier Decl. ¶ 10. Mobilearia also monitored and communicated with Verizon Wireless to ensure that the activation process was error-free. Absmeier Decl. ¶ 10.

16. Mobilearia did not receive any compensation for its role in facilitating activation of wireless service for the GPS Units and viewed the service as a ministerial customer courtesy. Absmeier Decl. ¶ 11.

C. <u>Mobilearia Was Not Responsible For and Did Not Control GPS Unit Data Usage</u>

17. Contrary to Verizon's assertions, Mobilearia was not responsible for, and it did not control, the amount of data transmitted to and from each GPS Unit. In fact, the Overage Charges were the result of several issues, which were outside of Mobilearia's responsibility and control. Absmeier Decl. ¶ 12.

a. Verizon Wireless did not provide any filters for unsolicited network traffic such as advertisement or SPAM and did not block a user's wireless account on the GPS Units from text messaging. Absmeier Decl. ¶ 12. This is an issue that could have been addressed by Verizon and Verizon Wireless as part of their negotiations concerning the wireless plan selected. Mobilearia had no part in these negotiations. Absmeier Decl. ¶ 12.

b. Mobilearia did not have access to Verizon's bills for wireless service or information related to its data usage under the wireless plans and, as a result, could not monitor or detect that usage. Absmeier Decl. ¶ 12. In

5

addition, the proactive monitoring of data usage was not included in the definition of Products and Services under the terms of Exhibit B to the GPS Agreement. GPS Agreement, Ex. B. The agreement for wireless service and data usage for the GPS Unit was between Verizon and Verizon Wireless, and Mobilearia was not a party to that agreement. Absmeier Decl. ¶ 12.

        c.    Verizon was provided GPS Units for testing but, upon information and belief, Verizon failed to test any units with the limited 2Mb plan notwithstanding Mobilearia's recommendation that it select a limited 6Mb plan. Absmeier Decl. ¶ 12.

    18.    Consequently, Mobilearia cannot in any way be responsible for these alleged causes of Overage Charges.

    D.    <u>Verizon's Comparisons of the GPS Units to the Former Supplier's Product Are Misplaced and Irrelevant</u>

    19.    Verizon's comparisons of the GPS Units to those provided by its former supplier, @Road, are not relevant. Consistent with Verizon's request and specifications, the Mobilearia GPS Unit operated on an entirely different (and superior) system than the @Road unit and it used different technology. Absmeier Decl. ¶ 13. Specifically, the GPS Units were designed at Verizon's specific request to communicate through the internet rather than by a dedicated line. Absmeier Decl. ¶ 14.

    20.    The encryption technology that was utilized in connection with the internet or "public" based communication line was part of Verizon's specifications for the GPS Unit and by nature, required a greater capacity of data usage. Absmeier Decl. ¶ 15. These features were not, as mistakenly alleged by Verizon, utilized by Mobilearia "to save itself money," but instead to comply with the requirements and specifications for the GPS Units that were approved and agreed to by Verizon. Verizon knew that the GPS Units would require a larger

6

capacity for data usage, but it elected a 2 Mb limited plan notwithstanding Mobilearia's recommendation for use of a 6 Mb plan. Absmeier Decl. ¶ 16. Verizon set requirements for the GPS Unit for approximately 36.2% more messages to be communicated than they had with the @Road unit. Absmeier Decl. ¶ 16.

21.    The possibility of having dedicated lines to the Mobilearia server was discussed initially but, following its negotiations with Verizon Wireless, Verizon elected not to implement this option and, after testing, still has not implemented this method. Absmeier Decl. ¶ 17-20.

22.    At Verizon's request and after Verizon realized that the GPS Units were exceeding the 2 Mb data usage limit under the limited wireless plan, as a customer courtesy and without receiving any payment, Mobilearia enhanced the Verizon tested and approved software design and encryption method to reduce the data usage. Absmeier Decl. ¶ 21. However, Mobilearia never assumed responsibility or control over the amount of data that was being transmitted under the limited wireless service plan. Absmeier Decl. ¶ 21.

E.    <u>Mobilearia Has Not Acknowledged Any Liability or Paid any Amounts for Overage Charges</u>

23.    Mobilearia has repeatedly requested that Verizon provide an explanation and support for the Overage Charges but Verizon has been unable or unwilling to provide such explanations or support. See, Absmeier Decl. ¶ 22.

24.    Verizon incorrectly states that Mobilearia paid Verizon $86,017.82 on account of and in acknowledgement of the Overage Charges. Motion ¶ 18. In fact, Mobilearia did pay Verizon $86,017.80, but that payment was made on account of alleged Misactivation Charges, which are addressed below.

25.    Mobilearia recommended to Verizon that it select a wireless plan with greater capacity but Verizon chose to ignore Mobilearia's recommendation and cannot now deny responsibility for its election. Verizon selected an

inappropriate wireless plan for the GPS Units and Mobilearia is not responsible for any damages caused by Verizon's selection.

## II.   Misactivation Charges

26.   Verizon's claim for Misactivation Charges in the amount of $164,672.32 is grossly overstated. With few exceptions, Mobilearia activated wireless service for the GPS Units consistent with Verizon's instructions in the SOAFs that were completed by Verizon. Approximately 2% of lines were activated on an erroneous price plan. Absmeier Decl. ¶ 23. To the extent that an account was activated with the erroneous service plan, Mobilearia already accepted responsibility for the error and compensated Verizon.

27.   Mobilearia paid Verizon $86,017.82 on account of alleged Misactivation Charges before it had an opportunity to analyze the data regarding the alleged errors. Absmeier Decl. ¶ 24. After making that payment, Mobilearia analyzed data that was provided by Verizon, and that analysis revealed that only $42,714.26 in Misactivation Charges related to accounts that Mobilearia erroneously activated with the wrong plan. Absmeier Decl. ¶ 24. Mobilearia has repeatedly asked Verizon to provide a report substantiating its calculation of $86,017.82 in Misactivation Charges but Verizon has not complied. Absmeier Decl. ¶ 24.

28.   Accordingly, Mobilearia overpaid Verizon $43,303.56 on account of Misactivation Charges and Mobilearia reserves all of its rights to seek recovery of such overpayment.

## III.   Overactivation Charges

29.   Mobilearia does not owe Verizon any amounts on account of the Overactivation Charges. These charges are the result of GPS Units that were activated but either never installed or installation was delayed. For the following reasons, Mobilearia is not liable to Verizon for the Overactivation Charges.

8

30.     The majority of the Overactivation Charges were the result of 954 missed installations during the initial roll-out, 664 of which were caused by Verizon.  Absmeier Decl. ¶ 25.  As reflected by the terms of the GPS Agreement, installations were scheduled in advance and on a strict schedule set by Verizon.  In accordance with Verizon's strict roll-out schedule, Mobilearia committed to activate and install approximately 1,000 GPS Units per week during the deployment period. Absmeier Decl. ¶ 25.  Activations were submitted to Verizon Wireless by Mobilearia pursuant to Verizon's instructions and according to the roll-out schedule that Verizon dictated.  Absmeier Decl. ¶ 25.

31.     Exhibit B to the GPS Agreement provides that "Customer [Verizon] shall provide access to the vehicle(s) on specific date and time as specified in roll-out schedule.  Any supplemental installation visits resulting from non-availability of Customer vehicles will generate an additional charge to Customer."  GPS Agreement, Ex. B.  Mobilearia suffered damages in connection with Verizon's failure to make the vehicles available on the scheduled dates, including, without limitation, the costs of multiple installation dates at geographically diverse sites that should have been completed in one day.  Absmeier Decl. ¶ 26.  Mobilearia has not yet charged Verizon for those damages, and expressly reserves the right to do so.  Absmeier Decl. ¶ 26.

32.     GPS Units were activated based on an installation schedule dictated by Verizon and agreed to by Mobilearia.  Absmeier Decl. ¶ 27.  Activation requests were submitted to Verizon Wireless approximately 48 hours in advance of the scheduled installation date in order for the installers to be able to set up and provision the GPS Units upon installation.  Absmeier Decl. ¶ 27.  When Verizon's trucks were not available on the agreed installation date, units remained activated until the installation could be rescheduled.  Absmeier Decl. ¶ 27.  Because

9

deployment was spread out across the United States, and in order to adhere to the deployment schedule, it could take several weeks to a few months for an installment to be rescheduled and actually occur. Absmeier Decl. ¶ 27. This caused many GPS Units to be activated but not used for several months. In some cases, GPS Units were never used if Verizon's truck was never available and the installation never occurred. Absmeier Decl. ¶ 27.

33. In addition, based upon an analysis of data provided by Verizon, $33,972.33 in alleged Overactivation Charges were actually on account of lines with data usage. Absmeier Decl. ¶ 28. A GPS Unit cannot reflect data usage unless it is both installed and powered on. Absmeier Decl. ¶ 28. Consequently, many of the GPS Units that Verizon included in this group could not have caused Overactivation Charges.

34. Notwithstanding Verizon's apparent responsibility for the bulk of the Overactivation Charges and the resulting damages suffered by Mobilearia, as a customer courtesy, Mobilearia paid Verizon $39,300 on account of a total of 1,309 spare and activated GPS Units that were not deactivated. Absmeier Decl. ¶ 29. Mobilearia does not have any liability to Verizon on account of Overactivation Charges.

## CONCLUSION AND RESERVATION OF RIGHTS

35. Based upon the foregoing facts, the Wireless Service Damages Claim is unsubstantiated and unrecoverable. Verizon was responsible for arranging for wireless service pursuant to the terms of the GPS Agreement. Mobilearia never assumed responsibility or control over the type of wireless plan selected for the GPS Units and it is not responsible for any damages that may have been incurred by Verizon in connection with the wireless service. Mobilearia has overpaid Verizon for certain "Misactivation Charges," and as an accommodation, paid Verizon for

certain "Overactivation Charges." There is no basis whatsoever to award Verizon any additional amounts on account of the Wireless Service Damages Claim and the Motion should be denied.

36. The Debtors' submission of this Objection is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expunction, reduction, or reclassification of the Wireless Service Damages Claim; (b) the Debtors' right to later identify additional documentation supporting the disallowance, expunction, reduction, or reclassification of the Wireless Services Damages Claim; and (c) the Debtors' right to seek reimbursement for overpayment of Misactivation Charges or other damages suffered by the Debtors on account of the GPS Agreement.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) denying the Wireless Service Damages Claim, and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
November 9, 2007

DELPHI CORPORATION, *et al.*
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000