TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Lara Sheikh (LS-0879)

Hearing Date: November 29, 2007
At: 10:00 a.m.

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      :   Chapter 11
                                                            :   Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*,                               :
                                                            :   Jointly Administered
                                         Debtors.           :
                                                            :
------------------------------------------------------------x

**DECLARATION OF JOHN ABSMEIER IN SUPPORT OF DEBTORS'
OBJECTION TO MOTION OF VERIZON SERVICES CORP. FOR
PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO
<u>MOBILEARIA SALE ORDER</u>**

JOHN ABSMEIER, hereby declares pursuant to section 1746 of title 28 of the United States Code:

       1.    I am the former Director, Program Management for Mobilearia, Inc. ("Mobilearia"), one of the debtors and debtors in possession in the above-captioned cases (collectively the "Debtors").

       2.    I am authorized to submit this Declaration on behalf of the Debtors.

       3.    Except as otherwise set forth herein, all statements in this Declaration are based on my personal knowledge, my familiarity with the Debtors' books and records, my review of relevant documents and discussion with the Debtors'

counsel. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

  4. I submit this Declaration in support of the Debtors' objection (the "Objection") to the motion (the "Motion") by Verizon Services Corp. ("Verizon") for Payment of Administrative Expense Claim Pursuant to Mobilearia Sale Order scheduled for November 29, 2007,

  5. I have read the Motion and the Objection and am fully familiar with the facts, circumstances and status of matters set forth therein.[1]

  6. Verizon negotiated a wireless service agreement for the GPS Units with its affiliate, Verizon Wireless, without Mobilearia's participation or input.

  7. Mobilearia was not a party to and had no input regarding Verizon's negotiations with Verizon Wireless.

  8. Mobilearia recommended to Verizon that it select a limited 6 Mb plan for the GPS Units to be activated with a limited usage plan. Verizon did not follow Mobilearia's recommendation and selected the limited 2 Mb plan rather than a limited 6 Mb plan.

  9. As a customer courtesy, and without any contractual obligation to do so, Mobilearia facilitated activation of the GPS Units in accordance with Verizon's instructions as part of the process of deployment and installation of the GPS Units.

  10. Specifically, Verizon completed a Sales Order Activation Form ("SOAF") for each GPS Unit which identified the wireless plan that would be activated for the unit. Mobilearia then forwarded the data from the SOAFs with instructions to activate the GPS Units, as set forth in the SOAF, and associated hardware identification

---

[1] Terms used but not otherwise defined herein shall have the meaning ascribed to such terms by the Motion.

2

information for the installation to Verizon Wireless. Mobiliaria also monitored and communicated with Verizon Wireless to ensure that the activation process was error-free.

11.  Mobilearia did not receive any compensation for its role in facilitating activation of wireless service for the GPS Units and viewed the service as a ministerial customer courtesy.

## I. The Overage Charges

12.  The Overage Charges were the result of several issues, which were outside of Mobilearia's responsibility and control.

a.  <u>First</u>, Verizon Wireless did not provide any filters for unsolicited network traffic such as advertisement or SPAM and did not block a user's wireless account on the GPS Units from text messaging. This is an issue that could have been addressed by Verizon and Verizon Wireless as part of their negotiations concerning the wireless plan selected. Mobilearia had no part in these negotiations.

b.  <u>Second</u>, Mobilearia did not have access to Verizon's bills for wireless service or information related to its data usage under the wireless plans and, as a result, could not detect overage, use and charges. The agreement for wireless service and data usage for the GPS Unit was between Verizon and Verizon Wireless, and Mobilearia was not a party to that agreement.

c.  <u>Third</u>, Verizon was provided GPS Units for testing but, upon information and belief, Verizon failed to test any units with the limited 2Mb plan notwithstanding Mobilearia's recommendation that it select a limited 6Mb plan.

13. Consistent with Verizon's request and specifications, the Mobilearia GPS Unit operated on an entirely different (and superior) system and used difference technology than the @Road unit previously utilized by Verizon.

14. Specifically, the GPS Units were designed at Verizon's specific request to communicate through the internet rather than by a dedicated line.

15. The encryption technology that was utilized in connection with the internet or "public" based communication line was part of Verizon's specifications for the GPS Unit and by nature, required a greater capacity of data usage.

16. Verizon knew that the GPS Units would require a larger capacity for data usage, but it elected a 2 Mb limited plan notwithstanding Mobilearia's recommendation for use of a 6 Mb plan. Verizon set requirements for the GPS Unit for approximately 36.2% more messages to be communicated than they had with the @Road unit. Mobilearia communicated to Verizon that based on the number of messages alone, data usage would be at least 55 messages x 2100 bytes/message x 25 days + (400 bytes x 31 days) = 2.9mb including DNS lookup. Notwithstanding the fact that only by removing the additional messages could Mobilearia's unit possibly be below the limit (2.9 Mb x 63.8% = 1.85 Mb), Verizon decided the additional messages were necessary.

17. The possibility of having dedicated lines to the Mobilearia server was discussed initially but, following its negotiations with Verizon Wireless, Verizon elected not to implement this option. Based on the current configuration and after a trial of this method, Verizon still has not implemented this method for reasons possibly including those described below.

18. <u>First</u>, dedicated lines to all the Verizon Wireless Roaming Partners would be required, which would require conversion from a dynamic IP to a static IP configuration. Verizon tested the GPS Unit with a dedicated line and determined that this method would result in a limited communication range. As a result, Verizon determined to use a dynamic IP over the internet.

19. <u>Second</u>, it would be a major undertaking for Verizon Wireless to change the configurations of more than 10,000 GPS Units and could have resulted in billing issues, such as corrupted or changed account settings and configurations while trying to implement such a large and untested change.

20. <u>Lastly</u>, because the Verizon approved specifications and requirements for the GPS Units did not provide for dedicated lines, it was unknown how the Units would respond to this change.

21. At Verizon's request and after Verizon realized that the GPS Units were exceeding the 2 Mb data usage limit under the limited wireless plan, as a customer courtesy and without receiving any payment, Mobilearia enhanced the Verizon tested and approved software design and encryption method to reduce the data usage. However, Mobilearia never assumed responsibility or control over the amount of data that was being transmitted under the limited wireless service plan.

22. Mobilearia has repeatedly requested that Verizon provide an explanation and support for the Overage Charges but Verizon has been unable or unwilling to provide such explanations or support.

**II.    Misactivation Charges**

23. Verizon's claim for Misactivation Charges in the amount of $164,672.32 is grossly overstated. With few exceptions, Mobilearia activated wireless

5

service for the GPS Units consistent with Verizon's instructions in the SOAFs that were completed by Verizon. Approximately 2% of lines were activated on an erroneous price plan.

24. Mobilearia paid Verizon $86,017.82 on account of alleged Misactivation Charges before it had an opportunity to analyze the data regarding the alleged errors. After making that payment, Mobilearia analyzed data that was provided by Verizon, and that analysis revealed that only $42,714.26 in Misactivation Charges related to accounts that Mobilearia erroneously activated with the wrong plan. Mobilearia has repeatedly asked Verizon to provide a report substantiating its calculation of $86,017.82 in Misactivation Charges but Verizon has not complied.

### III.    Overactivation Charges

25. The majority of the Overactivation Charges were the result of 954 missed installations during the initial roll-out, 664 of which were caused by Verizon. In accordance with Verizon's strict roll-out schedule, Mobilearia committed to activate and install approximately 1,000 GPS Units per week during the deployment period. Activations were submitted to Verizon Wireless by Mobilearia pursuant to Verizon's instructions and according to the roll-out schedule that Verizon dictated.

26. Mobilearia suffered damages in connection with Verizon's failure to make the vehicles available on the scheduled dates, including, without limitation, costs of multiple installation dates at geographically diverse sites that should have been completed in one day. Mobilearia has not yet charged Verizon for those damages.

27. GPS Units were activated based on an installation schedule dictated by Verizon and agreed to by Mobilearia. Activation requests were submitted to Verizon Wireless approximately 48 hours in advance of the scheduled installation date in order

for the installers to be able to set up and provision the GPS Units upon installation. When Verizon's trucks were not available on the agreed installation date, units remained activated until the installation could be rescheduled. Because deployment was spread out across the United States, and in order to adhere to Verizon's deployment schedule, it could take several weeks to a few months for an installment to be rescheduled and actually occur. This caused many GPS Units to be activated but not used for several months. In some cases, GPS Units were never used if Verizon's truck was never available and the installation never occurred.

28. In addition, based upon an analysis of data provided by Verizon, $33,972.33 in alleged Overactivation Charges were actually on account of lines with data usage. A GPS Unit cannot reflect data usage unless it is both installed and powered on. Consequently, many of the GPS Units that Verizon included in this group could not have caused Overactivation Charges. Mobilearia deployed several resources at great time and expense including the Vice President of Engineering to conduct an analysis of the Overactivation Charges, which analysis resulted in the above conclusions.

29. Notwithstanding Verizon's apparent responsibility for the bulk of the Overactivation Charges and the resulting damages suffered by Mobilearia, as a customer courtesy, Mobilearia paid Verizon $39,300 on account of a total of 1,309 spare and activated GPS Units that were not deactivated.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 9, 2007

                /s/ John Absmeier
                John Absmeier