TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Sean McGrath (SM-4676)
Tally Wiener (TW-0215)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                            :
In re:                                                      :
                                                            :   Chapter 11
DELPHI CORPORATION, et al.,                                 :   Case No. 05-44481 [RDD]
                                                            :
                       Debtors.                             :   Jointly Administered
                                                            :
---------------------------------------------------------------x

# DEBTORS' STATEMENT OF DISPUTED ISSUES
# REGARDING PROOF OF CLAIM NUMBER 8391
# (MOTOROLA, INC./ TEMIC AUTOMOTIVE OF NORTH AMERICA, INC.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Statement of Disputed Issues Regarding Proof of Claim Number 8391 (the "Statement of Disputed Issues") filed by Motorola, Inc. ("Motorola") and subsequently transferred to Temic Automotive of North America, Inc. ("Temic"), and respectfully represent as follows:

**Motorola Proof of Claim 8391**

1. On or about June 23, 2006, Motorola filed proof of claim number 8391 and asserted an unsecured nonpriority claim in the amount of $8,385,154 against DAS LLC (the "Claim").

2. The Claim is based on the Debtors' purported cancellation of a pre-petition requirements contract between Motorola and the Debtors pursuant to which Motorola was to provide 100% of the Debtors' production and service requirements for certain components for incorporation in the Delphi Quadrasteer System for use in the GMT 900 Program (the "Component Parts"). The Claim seeks cancellation damages totaling not less than $8,385,154, comprised of: (i) engineering costs of $4,152,864; (b) capital costs of $708,088; and (c) lost profits of $3,524,201. The Claim does not provide any related or explanative calculations.

3. On August 4, 2006, Motorola and Temic (jointly, the "Claimants") filed a Notice of Transfer of Claim Pursuant to Bankruptcy Rule 3001(e)(2) and disclosed that Motorola had transferred "all of its right, title, interest, claims and causes of action in and to, or arising under or in connection with" certain claims filed against the Debtors, including the Claim, to Temic (Docket No. 4858).

4. On June 15, 2007, the Debtors objected to the Claim pursuant to the Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) Insurance Claim Not Reflected on Debtors' Books and Records, (D) Untimely Claims and Untimely Tax Claims, and (E) Claims Subject to Modification, Tax Claims Subject to Modification, and Modified

Claims Asserting Reclamation (Docket No. 8270) (the "Seventeenth Omnibus Claims Objection").

5. On July 6, 2007, Temic filed its Response to the Seventeenth Omnibus Claims Objection (Docket No. 8483) (the "Response"). In its Response, Temic asserted that the Debtors had not presented enough evidence to overcome the presumed validity and amount of the Claim, but Temic did not provide any additional information to support the Claim.

6. On November 2, 2007, the Debtors filed a Notice of Claims Objection Hearing with Respect to Debtors' Objection to Proof of Claim 8391 (Motorola, Inc./Temic Automotive of North America, Inc.), which scheduled an evidentiary hearing on the merits of the Claim for January 8, 2007, at 10 a.m. (Docket No. 10801).

## Disputed Issues

**A.  The Debtors Did Not Cancel
Their Requirements Contract With Motorola**

7. On or about November 1, 2002, the Debtors entered into a requirements contract with Motorola pursuant to which they agreed to purchase from Motorola 100 percent of their production and service requirements for the Component Parts for incorporation into the Quadrasteer system to be supplied by the Debtors to General Motors for the GMT 900 program. See Claim, Exhibit 1, Additional Purchase Order Provisions Long Term Contract (the "Requirements Contract"), annexed hereto as Exhibit "1".

8. General Motors delayed the commencement of the GMT 900 Program from 2006 to 2007.

3

9.     The Debtors pursued Quadrasteer programs with other automotive manufacturers, including Nissan, that would utilize the same Motorola Component Parts subject to the Requirements Contract.  The Debtors sought to work with Motorola for the Nissan Quadrasteer program.

10.     In September 2004, Motorola informed the Debtors that the Nissan Quadrasteer program did not meet its financial requirements and that supporting the program was inconsistent with Motorola's direction because it would entail revisions to existing processes.

11.     The commercial codes of both Illinois and Michigan[1] recognize that "[a] term which measures the quantity by the output of the seller or the requirements of the buyer means such **actual** output or **requirements as may occur in good faith** . . . ." Mich. Comp. Laws §440.2306(1) (2007);  Ill. Comp. Stat. 5/2-306(1) (2007) (emphasis added).

12.     The Debtors proceeded in good faith at all times.  The delay in the GMT 900 Program was directed solely by General Motors and was not the result of any action or inaction by the Debtors.  In response to such delay, the Debtors immediately sought to utilize the Motorola Component Parts contemplated by the Requirements Contract for the GMT 900 Program for the Nissan Quadrasteer program.

13.     As a result, the Debtors did not breach the Requirements Contract and there is no basis for a cancellation claim.  See, e.g., Tigg Corp. v. Dow Corning Corp., 962 F.2d 1119, 1126 (3d Cir. 1992) ("under the U.C.C., a requirements buyer may have a

---

[1]     As discussed below, the Debtors dispute the Claimants' assertion that the Requirements Contract is governed by Motorola's terms and conditions, which include an Illinois choice of law.  Rather, the Debtors' terms and conditions apply and they include a Michigan choice of law.

4

good faith reason for demanding no goods from the seller. In such a case, the buyer does not breach by ordering no goods").

**B. The Cancellation Damages Are Not Available Under the Requirements Contract**

14. The Debtors never agreed to pay the engineering costs, capital costs and lost profits that Claimants seek as damages for the purported cancellation of the Requirements Contract.

15. Paragraph 12 of the Requirements Contract, which is the last paragraph of the version of the Requirements Contract that was transmitted by the Debtors to Motorola for execution provides, in pertinent part:

> Buyer's General Terms and Condition[s] that have been agreed upon by both parties, and a copy of which is attached, are hereby incorporated into this Contract by reference. Any amendment to, or revision of, such General Terms and Conditions shall also become a part of this Contract, provided that both parties execute the revised General Terms and Conditions.

Ex. 1, ¶ 12. However, Motorola inserted a typed, but unnumbered paragraph following Paragraph 12 before executing the document:

> Motorola objects to Delphi's Terms and Conditions and will supply product on the terms and conditions set forth in Motorola's enclosed Terms of Sale. <u>It is expressly made conditional on assent to those terms and conditions, whether assent is in writing or by conduct. Acceptance of this Response or payment for products shall constitute such assent.</u>

Ex. 1, Unnumbered paragraph following ¶ 12 (underscoring added).

5

16. The Debtors deleted Motorola's underscored language, hand-wrote in "Delphi does not agree to Motorola's terms + conditions" and executed the Requirements Contract, and then returned the Requirements Contract to Motorola.

17. Temic attempts to invoke paragraph 4(c) of Motorola Integrated Electronics Systems Sector Automotive Communications and Electronic Systems Group, which is annexed to the Claim, which provides, in pertinent part: "If Motorola terminates this Agreement for default, or if Buyer terminates this Agreement for convenience, Buyer will pay to Motorola a cancellation charge consisting of Motorola's incurred costs, committed costs and a reasonable contract profit." However, the Debtors expressly rejected this term and Motorola proceeded without responding to the Debtors' rejection of Motorola's terms and conditions.

18. The Debtors' rejection of Motorola's proposed additional term was effective regardless of whether Motorola's choice of Illinois law governs or whether the Debtors' choice of Michigan law governs construction of the Requirements Contract; the commercial codes of both Illinois and Michigan provide:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (a) the offer expressly limits acceptance to the terms of the offer;

> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Mich. Comp. Laws § 440.2207;  Ill. Comp. Stat. 5/2-207 ("Section 2-207").

19. Motorola's acceptance of the Requirements Contract was "expressly made conditional on assent to the additional or different terms" within the meaning of Section 2-207(1) because Motorola inserted into the Requirements Contract:  "It is expressly made conditional on assent to those terms and conditions, whether assent is in writing or by conduct."

20. Motorola's Terms of Sale were not, however, accepted by the Debtors. Section 2-207(2)(c) provides that additional terms are to be construed as proposals for additions to the contract, but do not become part of the contract where "notification of objection to them has already been given or is given within a reasonable time after notice of them is received."  Section 2-207(2)(c).  The Debtors timely notified Motorola that they objected to the Requirements Contract being governed by Motorola's Terms of Sale by prominently noting in the Requirements Contract, before signing it that: "Delphi does not agree to Motorola's terms + conditions[.]"  The Requirements Contract, with Delphi's notation, was returned to Motorola;  Motorola made no further changes to the Requirements Contract.  Therefore, Motorola's Terms of Sale were not

made part of the Requirements Contract and the Claimants are not entitled to cancellation damages.

21. Notwithstanding, the Debtors and Motorola entered into a contract because Section 2-207(3) recognizes that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." The contract then "consists of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act [i.e. the Uniform Commercial Code as adopted by the relevant state]." Section 2-207(3).

22. The Debtors have performed under the Requirements Contract in good faith and have not breached or cancelled.

23. Based upon the foregoing, there is no contractual or legal basis for the damages sought by Claimants.

**Reservation of Rights**

24. This Statement of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objections Procedures Order"). Consistent with the provisions of the Claims Objections Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to

later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order disallowing and expunging the Claim and granting the Debtors such other and further relief as is just.

| | |
|---|---|
| Dated: New York, New York<br>November 12, 2007 | DELPHI CORPORATION, *et al.*<br>By their attorneys,<br>TOGUT, SEGAL & SEGAL LLP<br>By:<br>/s/ Neil Berger<br>NEIL BERGER (NB-3599)<br>A Member of the Firm<br>One Penn Plaza<br>New York, New York 10119<br>(212) 594-5000 |