IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :
    In re                    :    Chapter 11
                        :
DELPHI CORPORATION, <u>et al.</u>,    :    Case No. 05-44481 (RDD)
                        :
           Debtors.    :    (Jointly Administered)
                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

       I, Elizabeth Adam, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

       On October 29, 2007, I caused to be served the documents listed below (i) upon the parties listed on <u>Exhibit A</u> hereto via overnight delivery, (ii) upon the parties listed on <u>Exhibit B</u> hereto via electronic notification and (iii) upon the parties listed on <u>Exhibit C</u> hereto via postage pre-paid U.S. mail:

1) Expedited Motion for Orders Under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date and (B) Authorizing and Approving (I) Sale of Certain of Debtors' Assets Comprising Substantially All of the Assets Primarily Used in Debtors' Cockpits and Interior Systems and Integrated Closure Systems Business Free and Clear of Liens, Claims, Encumbrances, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Assumption of Certain Liabilities ("Interiors and Closures Business Sale Motion") [a copy of which is attached hereto as <u>Exhibit D</u>]

2) Order Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date in Connection with Sale of Interiors and Closures Business ("Interiors and Closures Business Bidding Procedures Order") (Docket No. 10732)

Dated: November 12, 2007

_____*/s/ Elizabeth Adam*_____
Elizabeth Adam

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 12th day of November, 2007, by
Elizabeth Adam, personally known to me or proved to me on the basis of satisfactory
evidence to be the person who appeared before me.

Signature: _____*/s/ Leanne V. Rehder*_____

Commission Expires:___*3/2/08*_____

# EXHIBIT A

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

11/1/2007 10:57 AM
Master Service List Overnight Mail

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

11/1/2007 10:57 AM
Master Service List Overnight Mail

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein  Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092  212-450-4213 | 212-450-3092  212-450-3213 | donald.bernstein@dpw.com  brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com  karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler  Bonnie Steingart  Vivek Melwani  Jennifer L Rodburg  Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com  sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

11/1/2007 10:57 AM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason A. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

11/1/2007 10:57 AM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

11/1/2007 10:57 AM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | 202-887-4288 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | 590 Madison Ave | | New York | NY | 10022-2524 | | 212-872-1000 | 212-872-1002 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Compay, Ltd., and Furukawa Electric North America APD, Inc. |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | 205-226-8799 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Michael A Trentadue Carina M de la Torre | 2700 First Indiana Plz | 135 N Pennsylvania St | Indianapolis | IN | 46204 | | 317-684-5000 | 317-684-5173 | mtrentadue@boselaw.com cdelatorre@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605 529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st  Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Company |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Internet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Garvey Schubert Barer | Roberto Carrillo | 100 Wall St 20th Fl | | New York | NY | 10005 | | 212-965-4511 | 212-334-1278 | rcarrillo@gsblaw.com | Attorney's for Tecnomec S.r.l. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-849-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Texas |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.om | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein. | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | 614-752-2441 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | Rfeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin K. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | 724-981-1398 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadrangegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | 608-294-4920 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | | 973-621-3200 | 973-621-3199 | rnorton@reedsmith.com | Counsel to Jason Incorporated, Sackner Products Division |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | 502-779-8274 502-587-6391 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Counsel to The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

11/1/2007 11:12 AM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | 440-930-8098 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

11/1/2007 11:12 AM
Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Ccoompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Brendan G Best Esq | 39577 Woodward Ave Ste 300 | | Bloomfield Hills | MI | 48304 | 248-203-0523 | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

11/1/2007 11:12 AM
First Class

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | (302) 552-4200 | Counsel to Entergy |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | UCC Professional |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | 212-935-3000 | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | 202-339-8400 | Counsel to Westwood Associates, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423 | | |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

11/1/2007 11:12 AM
First Class

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Gentral Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

11/1/2007 11:12 AM
First Class

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| 1664560 Ontario Inc | Carter Group | 2125 Wyecroft Rd | | Markham | ON | L6L 5L7 | Canada |
| 2088343 Ontario Limited | Carter Group | 2125 Wyecroft Rd | | Oakville Ontario | ON | L6L 5L7 | Canada |
| A I Technologies Llc | | 640 S Vermont St | | Palatine | IL | 60067 | |
| A Raymond Gmbh & Co Kg | Raymond | Postfach Postfach 2 | | Loerrach | | 79511 | Germany |
| A Raymond Inc | | 3091 Research Dr | | Rochester Hills | MI | 48309-3581 | |
| A Schulman Inc | Attn President | 3550 West Market St | | Akron | OH | 44333 | |
| A Schulman Inc | | 3550 W Market St | | Akron | OH | 44333-2658 | |
| Access Electronics Inc | | 4190 Grove Ave | | Gurnee | IL | 60031 | |
| Accord Inc | Concorde | 2711 Product Dr | | Rochester Hills | MI | 48309-3810 | |
| Accurate Threaded Fasteners Inc | Atf | 25625 Southfield Rd Ste 206 | | Southfield | MI | 48075 | |
| Acord Inc | Concorde | 2711 Product Dr | | Rochester Hills | MI | 48309-3810 | |
| Acoustiseal Corp | | 1405 Combermere Dr | | Troy | MI | 48083 | |
| Adell Plastics Inc | | 4530 Annapolis Rd | | Baltimore | MD | 21227-4815 | |
| Adrian Rack Company | | 795 Division St | | Adrian | MI | 49221-3933 | |
| Advanced Composites Inc | Sidney Plant | 1062 S 4th Ave | | Sidney | OH | 45365-8977 | |
| Advanced Composites Inc | | 3607 Trousdale Dr | | Nashville | TN | 37204 | |
| Afx Industries Llc | | 522 Michigan St | | Port Huron | MI | 48060 | |
| Agri Electronics Systems Inc | | 12601 Eckel Rd | | Perrysburg | OH | 43551-1205 | |
| Aksys Usa Inc | | 1909 Kyle Court | | Gastonia | NC | 28052 | |
| Akzo Nobel Coatings Inc | | PO Box 669 | | Bloomfield Hills | MI | 48303-0699 | |
| Akzo Nobel Industrial Coatings Mexico | Anillo Paefiferico Monterrey 205 | Col Fracc Ant Has San Jose | | Garza Garcia | | 66000 | Mexico |
| Al Genesee Llc | | 4400 Matthew Dr | | Flint | MI | 48507-3152 | |
| Al Ko Automotive Corp | | PO Box 2874 | | Elkhart | IN | 46515 | |
| Alcoa Inc | Huck Fasteners | 36555 Corporate Dr Ste 185 Md2w | | Farmington Hills | MI | 48331-8331 | |
| Alegre Inc | | 3101 W Tech Rd | | Miamisburg | OH | 45342 | |
| Allied Baltic Rubber Inc | | PO Box 168 | | Strasburg | OH | 44680-0168 | |
| Almont Screw Products Inc | | 3989 Burnsline Rd | | Brown City | MI | 48416 | |
| Alphabet Inc | | 8640 E Market | | Warren | OH | 44484-2346 | |
| Alphabet Portland | | 700 Industrial Dr | | Portland | IN | 47371 | |
| Alpine Electronics Of America Inc | | 240 Boroline Rd | | Allendale | NJ | 07401 | |
| Alpine Electronics Of America Inc | | 240 Boroline Rd Ste 3 | | Allendale | NJ | 07401 | |
| Alps Electric Inc | Alps Automotive | 1500 Atlantic Blvd | | Auburn Hills | MI | 48236-1500 | |
| Am Pro Moldings Llc | | 318 Pappy Dunn Blvd | | Anniston | AL | 36205-6205 | |
| American Coating Specialist Inc | Ipc Ohio | 204 Republic St | | Norwalk | OH | 44857-1185 | |
| American Coil Spring Co | | PO Box 388 | | Muskegon | MI | 49443 | |
| American Metal & Plastics Inc | | 450 32nd St Sw | | Grand Rapids | MI | 49548-1021 | |
| American Rubber Products Corp | | PO Box 190 | | La Porte | IN | 46350 | |
| Americhem Inc | | 155 E Steels Corners Rd | | Cuyahoga Falls | OH | 44224 | |
| Americhem Inc | | 225 Broadway E | | Cuyahoga Falls | OH | 44221-3309 | |
| Ampex Metal Products Co | | PO Box 42157 | | Cleveland | OH | 44142-0157 | |
| Amsea Dayton Llc | | 1546 Stanley Ave | | Dayton | OH | 45404 | |
| Amsea Llc | | 2460 Snapps Ferry Rd | | Greeneville | TN | 37745 | |
| Amtech Industries Llc | | 666 S Vermont St | | Palatine | IL | 60067 | |
| Android Industries Doraville | | 50777 Varsity Court | | Wixom | MI | 48393 | |
| Android Industries Genesee | | 50777 Varsity Court | | Wixom | MI | 48393 | |
| Android Industries Whitmore Lake Inc | Containment Services | 50777 Varsity Court | | Wixom | MI | 48393 | |
| Angel Alejandro Sierra Ramirez | Publipak Sendero Nacional | Sendero Nacional Km 49 S/n | | Matamoros | | 87560 | Mexico |
| Angell Demmel North America Inc | | 1516 Stanley Ave | | Dayton | OH | 45404 | |
| Angell Manufacturing Co | | 1516 Stanley Ave | | Dayton | OH | 45404 | |
| Aphase Ii Inc | | 6120 Ctr Dr | | Sterling Heights | MI | 48312 | |
| Aramark Uniform & Career Apparel Inc | Aramark | 5120 Advantage Dr | | Toledo | OH | 43612-3876 | |
| Argent International Inc | Argent International | 41016 Concept Dr | | Plymouth | MI | 48170 | |
| Arkay Industries Inc | | 220 American Way | | Monroe | OH | 45050-1202 | |
| Arkay Industries Inc | | 2200 American Way | | Monroe | OH | 45050-1202 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)    Page 1 of 13    11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Armada Rubber Manufacturing Co | | PO Box 579 | | Armada | MI | 48005-0579 | |
| Arrow Electronics Inc | Power & Signal Group | 5440 Naiman Pkwy | | Solon | OH | 44139 | |
| Ashland Inc | Ashland Distibution Co | PO Box 2219 | | Columbus | OH | 43216-2219 | |
| Associated Sales & Bag Co Inc | Associated Bag Co | PO Box 3036 | | Milwaukee | WI | 53201 | |
| Atf Inc | | 3550 W Pratt Blvd | | Lincolnwood | IL | 60712-3798 | |
| Atlas Welding Supply Company Inc | | 3530 Greensboro Ave | | Tuscaloosa | AL | 35401-7002 | |
| Austro Mold Inc | | 3 Rutter St | | Rochester | NY | 14606-1890 | |
| Auto Anodics Inc | | 2407 16th St | | Port Huron | MI | 48060 | |
| Avdel Cherry Textron Inc | | PO Box 486 | | Stanfield | NC | 28163-0486 | |
| Avery Dennison Performance Films | Division Inc | 650 W 67th Pl | | Schererville | IN | 46375 | |
| Avery Dennison Performance Films | | 650 W 67th Ave | | Schererville | IN | 46375 | |
| Bae Industries Inc | | 24400 Sherwood Ave | | Center Line | MI | 48015-2023 | |
| Baileys Pro Team | Baileys Cleaning | 643 70th St | | Tuscaloosa | AL | 35406 | |
| Baja Tape & Supply | | 12773 Grand River Dr | | El Paso | TX | 79928-5755 | |
| Barloworld Handling Lp | | 3930 Pinson Valley Pkwy | | Birmingham | AL | 35217-1856 | |
| Barnes Group Inc | Associated Apring | 15150 Cleat St | | Plymouth | MI | 48170 | |
| Barnes Group Inc | Associated Spring | 15150 Cleat St | | Plymouth | MI | 48170 | |
| Barsse Navarro Kuis | Maquinados Y Componetes Industrial | Insurgentes 5902 3 | | Cd Juarez | | 32340 | Mexico |
| Bas Components Inc | | 1100 N Meridan Rd | | Youngstown | OH | 44509 | |
| Basell Usa Inc | | PO Box 15439 | | Wilmington | MD | 19850-5439 | |
| Basf Corp | Basf Colors & Colorants | 1609 Biddle Ave | | Wyandotte | MI | 48192-3729 | |
| Bauer Industries | | PO Box 347 | | Heldebran | NC | 28637 | |
| Bayer Corp | | 1111 Oneil Dr Se | Newark Industrial Pk | Hebron | OH | 43025-9660 | |
| Bayer Corp | | PO Box 500 | | New Martinsville | WV | 26155 | |
| Bayer Material Science Llc | | 2401 E Walton Blvd | | Auburn Hills | MI | 48326-1967 | |
| Bayer Material Science Llc | | 1111 Oneil Dr Se | Newark Industrial Pk | Hebron | OH | 43025-9660 | |
| Behr Hella Thermocontrol Gmbh | Behr Hella | Hansastr 40 | | Lippstadt | | 59557 | Germany |
| Behr Hella Thermocontrol Inc | | 43811 Plymouth Oaks Blvd | | Plymouth | MI | 48170 | |
| Behr Industries Corp | | PO Box 368 | | Comstock Pk | MI | 49321 | |
| Benecke Kaliko Ag | | Postfach Postfach 7 | | Hannover | | 30419 | Germany |
| Best Foam Fabricators Inc | C/o National Marketing & Sales | 17515 W 9 Mile Rd Ste 720 | | Southfield | MI | 48075 | |
| Best Form Fabricators Inc | C/o National Marketing & Sales | 17515 W 9 Mile Rd Ste 720 | | Southfield | MI | 48075 | |
| Bing Metals Group Inc | Stamp & Assembly Division | 1200 Woodland Ave | | Detroit | MI | 48211 | |
| Bing Metals Group Inc | Steel Processing Division | 1500 E Euclid | | Detroit | MI | 48211-1860 | |
| Black & Decker Corp The | | PO Box 859 | | Shelton | CT | 06484 | |
| Blackhawk Automotive Plastics Inc | Worthington Custom Plastics | 500 N Warpole St | | Upper Sandusky | OH | 43351-9344 | |
| Blackhawk Automotive Plastics Inc | | 1111 W Long Lake Rd Ste 102 | | Troy | MI | 48098 | |
| Blossman Gas Inc | Blossman Gas Inc 301 | PO Box 399 | | Alexandria | AL | 36250 | |
| Bohl Equipment Co | | 534 Laskey Rd | | Toledo | OH | 43612-3207 | |
| Borg Instruments Ag | | Wilferdingen Benzstr 6 | | Remchingen | | 75196 | Germany |
| Brechbuhler Scales Inc | | 4070 Perimeter Dr | | Columbus | OH | 43228 | |
| Brix Group Inc The | Pana Pacific Oem Divisionb | 80 Van Ness Ave | | Fresno | CA | 93721 | |
| Bulldog Fabricating Corp | | PO Box 106 | | Dexter | MI | 48130 | |
| Bunzl Plastics | Alliance Plastics | 2614 Mcclelland Ae | | Erie | PA | 16510 | |
| Burnsides & Nauman Medical Associates | | 1231 Leicester Pl | | Columbus | OH | 43235-2181 | |
| Butterworth Industries Inc | | PO Box 107 | | Gas City | IN | 46933 | |
| Bytec Inc | | 44801 Centre Court E | | Clinton Township | MI | 48038 | |
| Bytec Inc | | 44801 Centre Ct E | | Clinton Township | MI | 48038 | |
| C & P Equipment Repair | | 5290 Watermelon Rd | | Northport | AL | 35473-7673 | |
| Cable Bergen De Mexico Sa De Cv | | Calle Pimentos 5435 | Col Sector Aeropuerto | Cd Juarez | | 32698 | Mexico |
| Cadillac Products Inc | | 5800 Crooks Rd Ste 100 | | Troy | MI | 48098 | |
| Cadon Plating & Coatings Llc | | 3715 11th St | | Wyandotte | MI | 48192-6435 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 13

11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Cadwalader Wickersham & Taft LLP | Michael C Ryan Esq | One World Financial Center | | New York | NY | 10281 | |
| Caldwell Industries Inc | Dci Division | 2351 New Millennium Dr | | Louisville | KY | 40216-5161 | |
| Calsonic Kansei North America Inc | | 27000 Hills Tech Ct | | Farmington Hills | MI | 48331 | |
| Camcar Llc | Wytheville Operations | 345 E Marshall St | | Wytheville | VA | 24382-3917 | |
| Camcar Llc | | 826 E Madison St | | Belvidere | IL | 61008-2364 | |
| Cami Automotive Inc | | PO Box 1005 | 300 Ingersoll St | Ingersoll | ON | N5C 4A6 | Canada |
| Capro Hungary Alkatreszgyarto Kft | | Bajcsy Zsilinszky Utca 201/d | | Siofok | | 08600 | Hungary |
| Cardinal Pest Control | | 306 S Maurice Ave | | Jackson | MI | 49203-5955 | |
| Cascade Die Casting Group Inc | Cascade Die Casting/mid State | 7750 S Division Ave | | Grand Rapids | MI | 49548 | |
| Casco Products Corp | | 39810 Grand River Ave Ste 200 | | Novi | MI | 48375 | |
| Casco Schoeller Gmbh | | Zuericher Str 3 | | Frankfurt | | 60437 | Germany |
| Cei Co Ltd | | 755 Bill Jones Industrial Dr | | Springfield | TN | 37172-5014 | |
| Chain Industries Inc | Almetals Co | 51035 Grand River Ave | | Wixom | MI | 48393-3329 | |
| Chem Plate Industries Inc | | 1250 Morse Ave | | Elk Grove Village | IL | 60007 | |
| Cherry Corp The | Cherry Electrical Products Division | PO Box 581913 | | Pleasant Prairie | WI | 53158 | |
| Cherry Gmbh | | Cherry Str 1 | | Auerbach | | 91275 | Germany |
| Chicago Rivet & Machine Co Inc | | PO Box 3061 | | Naperville | IL | 60566-7061 | |
| Circle Environmental | | PO Box 9446 | | Columbia | SC | 29290 | |
| Circle Plastics Products Inc | | PO Box 111 | | Circleville | OH | 43113-0111 | |
| Cleanlites Recycling Inc | | PO Box 212 | | Mason | MI | 48854 | |
| Colepak Inc | | PO Box 650 | | Urbana | OH | 43078 | |
| Collins & Aikman Corp | Cavel | PO Box 643 | | Roxboro | NC | 27573 | |
| Collins & Aikman Corp | | PO Box 7054 | | Troy | MI | 48007 | |
| Collins & Aikman Corp | | PO Box 518 | | Farmington | NH | 03835 | |
| Collins & Aikman Corporation | | 250 Stephenson Hwy Ste 100 | | Troy | MI | 48083 | |
| Collins & Aikman Corporation | | 601 W 7th St | | Evart | MI | 49631-9408 | |
| Collins & Aikman Corporation | | 4000 Waco Rd | | Columbia | MO | 65202-2715 | |
| Collins & Aikman Products Co | Auto Trim Division | PO Box 559 | | Morristown | IN | 46161-0559 | |
| Columbia Industrial Sales Corp | Columbia Engineered Rubber | 2501 Thunderhawk | | Dayton | OH | 45414-3466 | |
| Columbia Industrial Sales Corp | Columbia Engineered Rubber | 2501 Thunderhawk Court | | Dayton | OH | 45414-3466 | |
| Commodity Management Services | C/o Gbs Printed Products & Systems | PO Box 2340 | | Canton | OH | 44720 | |
| Concorde Group Sa De Cv | | Periferico Ecologico 17 | San Lorenzo Almecatla | Cuautlancingo | | 72008 | Mexico |
| Concours Mold Alabama Inc | | 651 24th St | | Cullman | AL | 35055 | |
| Connor Corp | Acro Custom Rubber Division | 2701 Dwenger Ave | | Fort Wayne | IN | 46803 | |
| Consolidated Industrial Corp | St Clair Plastics Division | 30855 Teton Pl | | Chesterfield | MI | 48047 | |
| Consolidated Metco | | 171 Great Oak Dr | | Canton | NC | 28716-8715 | |
| Consolidated Metco Inc | | PO Box 83201 | | Portland | OR | 97283 | |
| Consumers Power Co | | 212 West Michigan Avenue | | Jackson | MI | 49201 | |
| Continental Midland Llc | | 24000 S Western Ave | | Park Forest | IL | 60466 | |
| Controls Crew Inc | | 23701 John R | | Hazel Pk | MI | 48030 | |
| Cooper Standard Automotive | Reid Division | 2130 W 110th St | | Cleveland | OH | 44102 | |
| Cooper Standard Automotive | | PO Box 217009 | | Auburn Hills | MI | 48321-7009 | |
| Country Boy Products Inc | | 5706 W Us Hwy 10 | | Ludington | MI | 49431-2452 | |
| Creative Engineered Polymer Products | | PO Box 127 | | Middlefield | OH | 44062-0127 | |
| Creative Engineered Polymer Products Cep Products | | 985 Falls Creek Dr | | Vandalia | OH | 45377 | |
| Creative Extruded Products Inc | | 850 Stephenson Hwy Ste 215 | | Troy | MI | 48083 | |
| Creative Foam Corporation | Alloy Division | 300 N Alloy Dr | | Fenton | MI | 48430-2648 | |
| Creative Foam Corporation | Alloy Division | 310 N Alloy Dr | | Fenton | MI | 48430-2648 | |
| Crown Group Inc The | | 133 Davis St | | Portland | TN | 37148-2031 | |
| D & N Bending Corp | | 101 E Pond Dr | | Romeo | MI | 48065-7600 | |
| D H Pace Company Inc | Overhead Door Company Kansas City | 611 E 13th Ave | | Kansas City | MO | 64116-4039 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)    Page 3 of 13    11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| D&m Custon Injection Moldings | D&m Plastics | PO Box 158 | | Burlington | IL | 60109 | |
| D&r Technology Llc | | 450 Windy Point Dr | | Glendale Heights | IL | 60139 | |
| D&r Technology Llc | | 450 D Windy Point Dr | | Glendale Heights | IL | 60139 | |
| Dae Yong Industry Co | | 1280 2 Chungweng Dong | | Shiheung Shi Kyungki Do | | 429-450 | South Korea |
| Daimlerchrysler | | Cims 484 03 20 | 800 Chrysler Dr | Auburn Hills | MI | 48326-2757 | |
| Daniel Sandoval Ballesteros | Viva La Madera | Esq Lauro Villar | Jose Arnese No 70 Int 107 | Matamoros | | 87360 | Mexico |
| Daniel Sandoval Ballesterosl | | Viv La Madera | Esq Lauro Villar | Matamoros | | 87360 | Mexico |
| Darling William Company Inc | | 615 Rome Hilliard Rd | | Columbus | OH | 43228 | |
| Darrells Hoff Oil Co Inc | | 2982 W Beecher Rd | | Adrian | MI | 49221-9769 | |
| Das Draexlmaier Automotivsysteme | Das Draexlmaier | Postfach Postfach 1 | | Vilsburg | | 84132 | Germany |
| Dayton Nut & Bolt Company | | 4528 Gateway Circle | | Dayton | OH | 45440 | |
| Dbg Canada Ltd | | 1555 Enterprise Rd | | Mississauga Ontario | ON | L4W 4L4 | Canada |
| Dbm Technologies Llc | | 539 Belvedere Dr N | | Gallatin | TN | 37066 | |
| De La Plaza Int Inc | | 11502 James Grant Dr | | El Paco | TX | 79936 | |
| De La Plaza Int Inc | | 11520 James Grant Dr | | El Paso | TX | 79936 | |
| Dean Roy Products Co | Engineered Custom Lubricants | 45800 Mast St | | Plymouth | MI | 48170-6056 | |
| Decatur Plastic Products Inc | | PO Box 1079 | | North Vernon | IN | 47265 | |
| Decatur Plastics Products Inc | | PO Box 1079 | | North Vernon | IN | 47265 | |
| Decc Co The | | 1266 Walden Ave Sw | | Grand Rapids | MI | 49507-1529 | |
| Decker Manufacturing Corp | | PO Box 360 | | Albion | MI | 49224-0360 | |
| Dekalb Metal Finishing | | PO Box 70 | | Auburn | IN | 46706 | |
| Derby Fabricating Inc | | 4500 Produce Rd | | Louisville | KY | 40218-3058 | |
| Derby Fabricating Inc | | 5800 Fern Valley Rd Ste 4 | | Louisville | KY | 40228 | |
| Derby Fabricating Inc | | 5800 Fern Valley Rd Ste 4 | | Louisville | KY | 40218-3058 | |
| Derby Fabricating Llc | | 4500 Produce Rd | | Louisville | KY | 40218-3058 | |
| Detroit Tubular Rivet Inc | | PO Box 279 | | Wyandotte | MI | 48192-0279 | |
| Direct Sourcing Solutions Inc | Dssi | 26261 Evergreen Rd Ste 250 | | Southfield | MI | 48034 | |
| Dr Schneider Automotive Systems Inc | | 5775 Brighton Pines Court | | Howell | MI | 48843 | |
| Dr Schneider Kunststoffwerke Gmbh | | Postfach Postfach 4 | | Kronach | | 96313 | Germany |
| Driv Lok Inc | | 1140 Pk Ave | | Sycamore | IL | 60178-2927 | |
| Duluth Environmental Services | | 7301 Pkwy Dr | | Hanover | MD | 21076-1159 | |
| Dura Automotive Systems Inc | | 2791 Research Dr | | Rochester Hills | MI | 48309 | |
| Dura Chrome Ltd | | 64 Garnet St | | Wallaceburg Ontario | ON | N8A 5E6 | Canada |
| Dura Convertible Systems Inc | | 300 E Long Lake Rd Ste 180 | | Bloomfield Hills | MI | 48304 | |
| Dynacast Canada Inc | | 330 Rue Avro | | Pointe Claire Dorval | PQ | H9R 5W5 | Canada |
| Eagle Steel Products Inc | | 5150 Loop Rd | | Jeffersonville | IN | 47130 | |
| Efd Inc | | 977 Waterman Ave | | East Providence | RI | 02914-1313 | |
| Efp Corp | C/o Mccarthy Sales | 27236 Southfield Rd | | Lathrup Village | MI | 48076 | |
| Ehd Technologies Llc | | 3505 Adkisson Dr Ste 151 | | Cleveland | TN | 37312 | |
| Eissmann Automotive North America | | 599 Ed Gardner Dr | | Pell City | AL | 35125-2701 | |
| Eissmann Gmbh | | 599 Ed Gardner Dr | | Pell City | AL | 35125-5145 | |
| Ejot Gmbh & Co Kg | Ejot Verbindungstechnik | Postfach Postfach 5 | | Bad Laasphe | | 57334 | Germany |
| Elco Textron Inc | Textron Fastening Systems | 1111 Samuelson Rd | | Rockford | IL | 61109 | |
| Elliott Tape Inc | Elliott Group International | 1882 Pond Run | | Auburn Hills | MI | 48326-2768 | |
| Elrae Industries Inc | | 11035 Walden Ave | | Alden | NY | 14004-9616 | |
| Emhart Teknologies Inc | Emhart Bamal Division | 23240 Industrial Pk Dr | | Farmington Hills | MI | 48335-2850 | |
| Emhart Teknologies Inc | | 1915 Pembroke Rd | | Hopkinsville | KY | 42240-4490 | |
| Emhart Teknologies Inc | | 1915 Pembrooke Rd | | Hopkinsville | KY | 42240-4490 | |
| Emhart Teknologies Llc | | 49201 Gratiot Ave | | Chesterfield | MI | 48051 | |
| Empaques Y Tarimas Industriales Sa | | Nortes 3 Esq Poniente 2 | | Colonia Cd Matamoros | | 87420 | Mexico |
| Enersys Inc | | 3121 Pinson Valley Pkwy | | Birmingham | AL | 35217-1811 | |
| Enplas Usa Inc | | 1901 W Oak Cir | | Marietta | GA | 30062 | |
| Eskay Screw Corp | Lake Erie Products | 321 Foster Ave | | Wood Dale | IL | 60191-1432 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 4 of 13

11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Etna Products Inc | | PO Box 630 | | Chagrin Fall | OH | 44022-0630 | |
| Euromotive Gmbh & Co Kg Filiale | | Schlosstrasse 26 | | Braunau Am Inn Ranshofen | | 05280 | Austria |
| F & G Multi Slide Inc | | PO Box 39 | | Franklin | OH | 45005-0039 | |
| Fabri Steel Products Inc | | 7845 Middlebelt Rd | | Romulus | MI | 48174-2132 | |
| Fairway Spring Co Inc | | PO Box 69 | | Horseheads | NY | 14845-0069 | |
| Fbf Inc | | 1145 Industrial Blvd | | Southampton | PA | 18966-4008 | |
| Feintool Cincinnati Inc | | 11280 Cornell Pk Dr | | Cincinnati | OH | 45242-1812 | |
| Feintool Ny Inc | | 1 Holland Ave | | White Plains | NY | 10603 | |
| Ficosa North America Corp | Ficosa Cables | 30870 Stephenson Hwy | | Madison Heights | MI | 48071 | |
| Ficosa North America Sa De Cv/fico | C/o L&m Forwarding Inc | PO Box 1473 | | Laredo | TX | 78042 | |
| Findlay Industries Inc | Molded Products Division | PO Box 842 | | Findlay | OH | 45839 | |
| Findlay Industries Inc | Plant 1 | PO Box 1087 | | Findlay | OH | 45839-1087 | |
| Findlay Industries Inc | Service Products Division | 5500 Fostoria Rd | | Findlay | OH | 45840 | |
| Findlay Industries Inc | | 1957 Crooks | | Troy | MI | 48084 | |
| First Industrial Lp | 311 South Wacker Dr | Ste 4000 | | Chicago | IL | 60606 | |
| Fischer America Inc | Fischer Automotive Systems | 1084 Doris Rd | | Auburn Hills | MI | 48326 | |
| Fisher Gauge Ltd | Fishercast | PO Box 837 | | Watertown | NY | 13601-0837 | |
| Fishercast Global Corp | | PO Box 179 Stn M | | Peterborough | ON | K9J 6Y9 | Canada |
| Florida Production Engineering | Fpe | 1855 State Rte 121 N | | New Madison | OH | 45346 | |
| Foamex Lp | | 28700 Cabot Dr Ste 500 | | Novi | MI | 48377 | |
| Ford Motor Company | C/o John A Galbraith Body & Exterior Commodity | Vpo Room 3w144 Mail Drop | 5500 Autoclub Dr | Dearborn | MI | 48126 | |
| Ford Motor Company Of Canada Limited | C/o John A Galbraith Body & Exterior Commodity | Vpo Room 3w144 Mail Drop | 5500 Autoclub Dr | Dearborn | MI | 48126 | |
| Foreman Tool & Mold Corporation | | 3850 Swenson Ave | | Saint Charles | IL | 60174 | |
| Formed Fibre Technologies Inc | | PO Box 1300 | | Auburn | ME | 04211-1300 | |
| Foster Electric Usa Inc | | 1000 E State Pkwy Ste G | | Schaumburg | IL | 60173 | |
| Fountain Construction Co Inc | | 5655 Hwy 18 W | | Jackson | MS | 39209-9654 | |
| Fpe Inc | | 30627 Orr Rd | | Circleville | OH | 43113 | |
| Freightliner Llc | | 4747 North Channel Rd | | Portland | OR | 97217 | |
| Fte Automotive Usa Inc | | 4000 Pinnacle Court | | Auburn Hills | MI | 48326 | |
| Fujikura America Inc | | 280 Interstate N Cir Se Ste 530 | | Atlanta | GA | 30339 | |
| Futaba Corporation Of America | | 711 E State Pkwy | | Schaumburg | IL | 60173 | |
| Future Products Tool Corporation | | 885 N Rochester Rd | | Clawson | MI | 48017-1731 | |
| Gdx Automotive | | 1 General St | | Wabash | IN | 46992-2615 | |
| Gdx Automotive | | PO Box 507 | | Wabash | IN | 46992-0507 | |
| Gdx Automotive Inc | Gdx Vehicle Sealing Division | 200 General St | | Batesville | AR | 72501-9479 | |
| Gdx Automotive Inc | | 36600 Corporate Dr | | Farmington Hills | MI | 48331 | |
| Ge Betz Inc | Betz Laboratories | 4636 Somerton Rd | | Trevose | PA | 19053 | |
| Ge Polymerland Inc | | One Plastics Ave | | Pittsfield | MA | 01201 | |
| Gecom Corp | | 1025 Barachel Ln | | Greensburg | IN | 47240-1269 | |
| General Motors Corporation | Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | Warren | MI | 48090 | |
| General Motors Of Canada Limited | Service Parts Operations | General Motors Du Canada Limitee | 1908 Colonel Sam Dr | Oshawa | ON | L1H8P7 | |
| General Motors Of Canada Limited Service Parts Operations | | 6200 Grande Pointe Dr | | Grand Blanc | MI | 48439 | |
| General Motors Of Canda Limited Service Parts Operations | | 1908 Colonel Sam Dr | | Oshawa | ON | | Canada |
| General Motors Service Parts Operations | | 6200 Grande Pointe Dr | | Grand Blanc | MI | 48439 | |
| Gesipa Fasteners Usa Inc | Olympic Fastening Division | PO Box 752 | | Vivian | LA | 71082 | |
| Ghsp Inc | | 1250 S Beechtree St | | Grand Haven | MI | 49417 | |
| Gill Industries Inc | Gill Manufacturing | 5271 Plainfield | | Grand Rapids | MI | 49505-1046 | |
| Gkn Sinter Metals Saint Marys | | 104 Fairview Rd | | Kersey | PA | 15846 | |
| Global Point Design Inc | | 2861 Sherwood Heights Dr | Unit 27 | Oakville Ontario | ON | L6J 7K1 | Canada |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 5 of 13                                    11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Gm De Mexico S De Rl De Cv | Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | Warren | MI | 48090 | |
| Gm Do Brasil Ltda | Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | Warren | MI | 48090 | |
| Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | | Warren | MI | 48090 | |
| Gm Of Canada Ltd | Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | Warren | MI | 48090 | |
| Gobar Systems Inc | | 3320 E 14th St | | Brownsville | TX | 78521 | |
| Graber Rogg Inc | C/o Gr Technical Service Inc | 240 Sheffield St | | Mountainside | NJ | 07092 | |
| Graber Rogg Inc | | 22 Jackson Dr | | Cranford | NJ | 07016-3609 | |
| Grand Rapids Controls Inc | | PO Box 360 | | Rockford | MI | 49341-0360 | |
| Grant Industries Inc | | 33415 Groesbeck Hwy | | Fraser | MI | 48026-4203 | |
| Grenada Manufacturing Llc | | 635 Hwy 332 E | | Grenada | MS | 38901 | |
| Gulf Systems Inc | | 11519 Elk Mountain | | San Antonio | TX | 78245 | |
| H & L Tool Company Inc | | 32701 Dequindre Rd | | Madison Heights | MI | 48071-5002 | |
| Haartz Corp The | | 40950 Woodward Ave Ste 150 | | Bloomfield Hills | MI | 48304 | |
| Hamlin Electronics Limited Partnership | | 612 East Lake St | | Lake Mills | WI | 53551 | |
| Hansen International Inc | | 130 Zenker Rd | | Lexington | SC | 29072 | |
| Harman Becker Automotive Systems Inc | Harmon Kardon | 1201 S Ohio St | | Martinsville | IN | 46151-2914 | |
| Heilman Holding Co Inc | Aaa Uniform & Linen Supply | 4120 Truman Rd | | Kansas City | MO | 64127 | |
| Hella Fahrzeugkomponenten Gmbh | | Dortmunder Str 5 | | Bremen | | 28199 | Germany |
| Hella Innenleuchten Systemegmbh | | His Hella Innenleuchten Systeme Gmbh | | Wembach | | 79677 | Germany |
| Hella Kg Hueck & Co | | Beckumer Str130 | | Lippstadt | | 59555 | Germany |
| Hella Kgaa Hueck & Co | | Rixbecker Str 75 | | Lippstadt | | 59552 | Germany |
| Hellermanntyton Corp | | PO Box 245017 | | Milwaukee | WI | 53224 | |
| Hertz Equipment Rental Corp | Hertz | 212 Lime Quarry Rd | | Madison | AL | 35758-8961 | |
| Hirschmann Automotive Gmbh | | Oberer Paspelsweg 6 8 | | Rankweil Vorarlberg | | 06830 | Austria |
| Hoffman Manufacturing Inc | | PO Box 217 | | Concord | MI | 49237-0217 | |
| Hot Melt Technologies Inc | Hmt | 1723 W Hamlin Rd | | Rochester Hills | MI | 48309 | |
| Hr Technologies Inc | | 6570 19 Mile Rd | | Sterling Heights | MI | 48314 | |
| Huber & Suhner Inc | | 19 Thompson Dr | | Essex Junction | VT | 05452-3408 | |
| Ice Master Inc | | 6218 Melrose Ln | | Shawnee Mission | KS | 66203 | |
| Illinois Tool Works Inc | Itw Cip Sales Distibution | 12150 Merriman Rd | | Livonia | MI | 48150 | |
| Illinois Tool Works Inc | Itw Cip Sales Division | 12150 Merriman Rd | | Livonia | MI | 48150 | |
| Illinois Tool Works Inc | Itw Cip/anchor Stampings Division | 850 Stephenson Hwy Ste 500 | | Troy | MI | 48083 | |
| Illinois Tool Works Inc | Itw Deltar Engineered Fasteners | 1700 1st Ave | | Chippewa Falls | WI | 54729 | |
| Illinois Tool Works Inc | Itw Deltar Tekfast Fasteners | 850 Stevenson Hwy Ste 110 | | Troy | MI | 48083-1122 | |
| Illinois Tool Works Inc | Itw Engineered Components | 8451 183rd Pl | | Tinley Pk | IL | 60477 | |
| Illinois Tool Works Inc | Itw Medalist | 2700 York Rd | | Elk Grove Village | IL | 60007 | |
| Illinois Tool Works Inc | Itw Shakerproof/anchor/medalist Div | 850 Stephenson Hwy Ste 500 | | Troy | MI | 48083 | |
| Illinois Tool Works Inc | Itw Shakerproof | PO Box 12345 | | Milwaukee | WI | 53212 | |
| Illinois Tool Works Inc | Itw Shakerproof/anchor/medalist Division | 850 Stephenson Hwy Ste 500 | | Troy | MI | 48083 | |
| Importadora Y Exportadora De Madera | | Sendero Nacional Km 2 50 | | Matamoros | | 87314 | Mexico |
| Ims Gear | | 1234 Palmour Dr Ste B | | Gainesville | GA | 30501 | |
| Industrial Distribution Group Inc | Idg | PO Box 843 | | Dayton | OH | 45401 | |
| Industrial Paint & Strip Inc | | 47063 Black Walnut Pkwy | | Woodfield | OH | 43793 | |
| Industrial Powder Coatings Inc | | 202 Republic St | | Norwalk | OH | 44857-1184 | |
| Industrial Power Sales Inc | | 8461 Garvey Dr | | Raleigh | NC | 27604 | |
| Industrial Steel Treating Co | | PO Box 98 | | Jackson | MI | 49204-0098 | |
| Injex Industries Inc | | 30559 San Antonio St | | Hayward | CA | 94544-7101 | |
| Inprax Performance Resources Llc | Inprax Sqd | 3460 Needmore Rd | | Dayton | OH | 45414 | |
| Intec Group Inc The | | 1301 E Michigan Ave | | Morocco | IN | 47963-8179 | |
| Intec Mexico Llc | | 640 S Vermont St | | Palatine | IL | 60067 | |
| International Spring Co | Warnock Spring & Mfg | 7901 N Nagle Ave | | Morton Grove | IL | 60053-2714 | |
| International Truck And Engine Corp | Central Purchasing | 4201 Winfield Rd PO Box 1488 | | Warrenville | IL | 60555 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 6 of 13                    11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| International Union Of Electronic Electrical Machine | And Furniture Workers Afl Cio Local 711 | 4605 Airport Rd | | Gadsden | AL | 35904 | |
| International Union United Automobile Aerospace And | Agricultural Implement Workers Of America Local Union 2083 | C/o Delphi Ahg Attn Garry Gilliam | 11005 Ed Stevens Rd | Cottondale | AL | 35453 | |
| Iron Mountain Info Management Inc | | 24300 Wahl Court | | Warren | MI | 48089 | |
| Iron Mountain Information Mgmt Inc | | 8273 Green Meadows Dr N | | Lewis Ctr | OH | 43035-8660 | |
| Iso Trude Inc | | 1705 Eaton Dr | | Grand Haven | MI | 49417-2824 | |
| Iue Cwa | James D Clark President | Iue Cwa Headquarters | 501 3rd Nw | Washington | DC | 20001 | |
| Ivs Inc | | 34400 Industrial Dr | | Livonia | MI | 48150-4307 | |
| J & B Enterprises | John Jansen | 503 Tecumseh Rd | | Clinton | MI | 49236-9588 | |
| Jabil Circuit De Chihuahua | | S De R L De C V | Alejandro Dumas 11341 | Chiuahua | | 31109 | Mexico |
| Jacobson Mfg Llc | | 941 955 Lake Rd | | Medina | OH | 44256 | |
| Jada Precision Plastics Co Inc | | 1667 Emerson | | Rochester | NY | 14606 | |
| Jason Inc | Janesville Products Division | 3190 Rochester Rd Ste 101 | | Troy | MI | 48083 | |
| Jason Inc | Sackner Products Division | 7125 Orchard Lake Ste 304 | | West Bloomfield | MI | 48322 | |
| Jasper Rubber Products Inc | | 1010 1st Ave | | Jasper | IN | 47546-3201 | |
| Jay Industries Inc | | 150 E Longview Ave | | Mansfield | OH | 44903-4206 | |
| Jenoptik Laser Technologies Usa | | 8020 Kensington Court | | Brighton | MI | 48116 | |
| Jideco Of Bardstown Inc | | 901 Withrow Ct | | Bardstown | KY | 40004 | |
| Jms Plastics Inc | | 52275 State Rd 933 N | | South Bend | IN | 46637 | |
| Jns Manufacturing | | 555 E Huron Ave | | Vassar | MI | 48768 | |
| Johnson Controls Gmbh & Co Kg | | Postfach 1440 | | Espelkamp | | 32328 | Germany |
| Johnson Controls Gmbh & Co Kg | | Postfach Postfach 1 | | Espelkamp | | 32328 | Germany |
| Johnson Controls Interiors Llc | Automotive Systems Group | 915 E 32nd St | | Holland | MI | 49423 | |
| Johnson Electric North America Inc | | 10 Progress Dr | | Sheldon | CT | 06484 | |
| Jsp International | | 1443 E 12 Mile Rd | | Madison Heights | MI | 48071 | |
| Junkerwerk Linder & Co | Junkerwek Linder | Postfach Postfach 1 | | Solingen | | 42666 | Germany |
| K&r Distributors Inc | Aqua Pure Bottled Water | PO Box 98 | | Enon | OH | 45323-0098 | |
| Kds Controls Inc | | 307 Robbins Dr | | Troy | MI | 48083-4561 | |
| Keats Manufacturing Co | | 350 Holbrook Dr | | Wheeling | IL | 60090-5812 | |
| Keats Manufacturing Co Inc | | PO Box 526 | | Wheeling | IL | 60090-0526 | |
| Kendrion Backhaus Gmbh | | Postfach Postfach 1 | | Kierspe | | 58555 | Germany |
| Kent Manufacturing Co | | 1840 Oak Industrial Dr Ne | | Grand Rapids | MI | 49505-6008 | |
| Kent Tool & Die Inc | | 50605 Richard W Blvd | | Chesterfield | MI | 48051 | |
| Key Plastics Llc | York I | 3390 Farm Trail Rd | | York | PA | 17402 | |
| Key Plastics Llc | | 21700 Haggerty Rd Ste 100n | | Northville | MI | 48167 | |
| Keyang Electric Machinery Co Ltd | | 10/f Haenam Bldg 21 | | Seoul | | 100080 | South Korea |
| Kickhaefer Manufacturing Co | Kmc Stampings | PO Box 348 | | Port Washington | WI | 53074-0348 | |
| King & Spalding LLP | Barry N Seidel | 1185 Sixth Avenue | | New York | NY | 10036 | |
| Kirk Welding Supply Inc | Kirk Welding Supply Co | 1608 Holmes | | Kansas City | MO | 64108 | |
| Knipping Verbindungstechnik Gmbh | | Postfach Postfach 1 | | Kierspe | | 58557 | Germany |
| Kostal Mexicana Sa De Cv | | Acceso Ii 36 Fracc | Apartado Apartado P | Queretaro | | 76120 | Mexico |
| Kostal Mexicana Sa De Cv | | 10400 Technology Dr | | Cottondale | AL | 35453 | |
| Kostal Of America Inc | | 25325 Regency Court | | Novi | MI | 48375-2159 | |
| Kuttawa Plastics Llc | | PO Box 490 | | Kuttawa | KY | 42055 | |
| L&w Inc | L & W Engineering Co | 6771 Haggerty Rd | | Belleville | MI | 48111-5101 | |
| L&w Inc | L&w Engineering Co | 6301 Haggerty Rd | | Belleville | MI | 48111-1157 | |
| Lacks Industries Inc | Lacks Trim Systems | 4090 Barden Dr | | Kentwood | MI | 49512 | |
| Lake Erie Products Inc | | 321 Foster Ave | | Wood Dale | IL | 60191-1432 | |
| Lakeside Plastics Ltd | | 3786 N Talbot Rd Plant 1 | | Old Castle Ontario | ON | N0R 1L0 | Canada |
| Lane Punch Corp | | 4985 Belleville Ln | | Canton | OH | 48188 | |
| Lankfer Diversified Industries Inc | Ldi Inc | 4311 Patterson Ave Se | | Grand Rapids | MI | 49512 | |
| Lanxess Corp | | 356 Three Rivers Pkwy | | Addysyton | OH | 45001 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 7 of 13                    11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Laser Equipment Inc | | 9301 W 53rd St | | Merriam | KS | 66203 | |
| Lavelle Industries Inc | | 665 Mchenry St | | Burlington | WI | 53105 | |
| Ldm Technologies | C/o Alphatech | 1777 E Lincoln Rd | | Kokomo | IN | 46903 | |
| Ldm Technologies Inc | C/o Alphatech | 17777 E Lincoln Rd | | Kokomo | IN | 46902 | |
| Ldm Technologies Inc | | 2500 Executive Hills Dr | | Auburn Hills | MI | 48326 | |
| Lear Corp | Edinburgh Molding Plant | 600 S Kyle St | | Edinburgh | IN | 46124 | |
| Lear Corp | Interior Systems Grp Fling | 5500b Enterprise Dr | | Warren | MI | 48092 | |
| Lear Corporation | Automotive Industries Division | 400 S Stone St | | Fremont | OH | 43420-2658 | |
| Lear Corporation | | 5100 W Waters Ave | | Tampa | FL | 33634 | |
| Lear Corporation | | 21557 Telegraph Rd | | Southfield | MI | 48034 | |
| Lem Industries Inc | | 4852 Frusta Dr | | Obetz | OH | 43207-4503 | |
| Lewis Spring & Manufacturing Co Inc | | 7500 N Natchez | | Niles | IL | 60714-3804 | |
| Liberty Industries Inc | | 840 Mcclurg Rd | | Youngstown | OH | 44512 | |
| Libralter Plastics Inc | | 3175 Martin Rd | | Walled Lake | MI | 48390 | |
| Ligon Brothers Mfg Co | | 3776 Van Dyke | | Almont | MI | 48003 | |
| Linde Gas Llc | | 30551 Stephenson Hwy | | Madison Heights | MI | 48071 | |
| Linden Industries Inc | | 137 Ascot Pkwy | | Cuyahoga Falls | OH | 44223 | |
| Llinois Tool Works Inc | Itw Shakeproof | PO Box 12345 | | Milwaukee | WI | 53212 | |
| Lorentson Manufacturing Co | | PO Box 932 | | Kokomo | IN | 46903 | |
| Lunt Manufacturiing Co Inc | | 816 E 4th St | | Royal Oak | MI | 48067 | |
| Lunt Manufacturing Co Inc | | 816 E 4th St | | Royal Oak | MI | 48067 | |
| M&m Knopf Auto Parts Inc | M&m Flint | 2750 Lippincott Blvd | | Flint | MI | 48507 | |
| Mac Arthur Corp | | PO Box 10 | | Grand Blanc | MI | 48239-0010 | |
| Mac Arthur Corp | | PO Box 10 | | Grand Blanc | MI | 48439-0010 | |
| Macdonalds Industrial Products | C/o Mccarthy Sales Co | 27236 Southfield Rd | | Lathrup Village | MI | 48076 | |
| Mack & Schneider Gmbh | Mack & Schneider | Schulstr 33 35 | | Filderstadt | | 70794 | Germany |
| Mag Usa | | 105 Matthew Warren Dr | | Clinton | TN | 37716 | |
| Magna International Inc | | | | | | | |
| | Atoma Closure & Electronic Systems | 19892 Haggerty Rd | | Livonia | MI | 48152 | |
| Magnetic Springs Water Company | | 1917 Joyce Ave | | Columbus | OH | 43219-1029 | |
| Marquardt Gmbh | | Schloss Strasse 16 | | Rietheim Weilheim | | 78604 | Germany |
| Marquardt Switches Inc | | 2265 Livernois Ste 710 | | Troy | MI | 48084 | |
| Martinrea International Inc | Stamp A Tron | 60 Travail Rd | | Markham Ontario | ON | L3S 3J1 | Canada |
| May & Scofield Inc | C/o Jp Sales Company Inc | 3700 W Liberty | | Ann Arbor | MICHIGAN | 48103 | |
| Mc Master Carr Supply Co | | PO Box 740100 | | Atlanta | GA | 30374 | |
| Mc Master Carr Supply Co | | PO Box 94930 | | Aurora | OH | 44101-4930 | |
| Mechanical & Industrial Fasteners | C/o Oldford & Associates | 3555 Walnut St | | Port Huron | MI | 48060 | |
| Mechanical Galv Plating Corp | | PO Box 56 | | Sidney | OH | 45365-0056 | |
| Mercedes Benz Ag | | Hp X477 Pmc 32 | | Sindelfingen | | 71063 | Germany |
| Mercedes Benz Us International Inc | | PO Box 100 | | Tuscaloosa | AL | 35403-0100 | |
| Meridan Automotive Systems | Grabill Operations | PO Box 888787 | | Grand Rapids | MI | 49588 | |
| Meridian Technologies Inc | Meridan Sales Plymouth | 352 N Main St Ste 1 | | Plymouth | MI | 48170 | |
| Meridian Technologies Inc | Meridian Sales Plymouth | 352 N Main St Ste 1 | | Plymouth | MI | 48170 | |
| Metal Component Engineering Shanghai | | No 750 Riyin Rd N | Waigaoqiao Free Trade Zone | Shanghai | | 200131 | China |
| Metalforming Technologies Inc | Mti Saline | 905 Woodland Dr | | Saline | MI | 48176 | |
| Metro Trailer Leasing Inc | Metro Mini Storage | 100 Metro Pkwy | | Pelham | AL | 35124-1711 | |
| Michigan Spring & Stamp | | 41850 W 11 Mile Rd Ste 105 | | Novi | MI | 48374 | |
| Micro Craft Inc | | 15656 Hwy 84 Country Rd 242 | | Quitman | GA | 31643 | |
| Micro Industries Inc | | PO Box 400 | | Rock Falls | IL | 61071 | |
| Mid America Plastics | | 4221 James P Cole Blvd | | Flint | MI | 48505 | |
| Mid Ohio Packaging Co Inc | Mopac | PO Box 854 | | Marion | OH | 43301 | |
| Mid South Electronics Inc | | 2620 E Meighan Blvd | | Gadsden | AL | 35903 | |
| Mid States Rubber Products | | PO Box 370 | | Princeton | IN | 47670 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 13

11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Midwest Waterblasting Corp | | PO Box 118 | | Tecumseh | MI | 49286 | |
| Milliken & Co | Cotton Blossom Distributing | PO Box 4396 | | Spartanburg | SC | 29303 | |
| Milliken Sommer | | PO Box 9 | | Simpsonville | SC | 29681 | |
| Millwood Inc | Millwood Pallet | 986 Tibbetts Wick Rd | | Girard | OH | 44420-1120 | |
| Mivrag Cold Forming Technologies Lt | | 43902 Woodward Ave Ste 280 | | Bloomfield Hills | MI | 48302 | |
| Mnp Corp | | PO Box 189002 | | Utica | MI | 48138 | |
| Mold Master Co | | 1455 Imlay City Rd | | Lapeer | MI | 48446 | |
| Motorola De Nogales | Prolg Ruiz Cortinez Calle San | Patricio Lote 6 Parq Ind | | San Carlo | | | Mexico |
| Motorola De Nogales | | Prolg Ruiz Cortinez Calle San | Patricio Lote 6 Parq Ind San Carlo | Nogales Sonora | | 84090 | Mexico |
| Motorola De Nogales Servicios Sa De Cv | | Patricio Lote 6 Parq Ind San Carlo | | Nogales | | 84090 | Mexico |
| Motorola De Nogales Servicios Sa De Cv | | Prolg Ruiz Cortinez Calle San | Patricio Lote 6 Parq Ind San Carlo | Nogales Sonora | | 84090 | Mexico |
| Motorola Inc | Motorola Automotive & Indstrl Elect | 3740 N Austin St | | Seguin | TX | 78155 | |
| Moutside | Mopac | 2135 Innovation Dr | | Marion | OH | 43302 | |
| Mpi International Inc | | 1617 Industrial Rd | | Greeneville | TN | 37745 | |
| Mrc Industrial Group Inc | | 13201 Stephens Rd | | Warren | MI | 48089-2092 | |
| Mrc Polymers Inc | | 3307 S Lawndale Ave | | Chicago | IL | 60623 | |
| Ms 2 Llc | | PO Box 980 | | Gadsden | AL | 35902 | |
| Msx International Inc | | 1950 Concept Dr | | Warren | MI | 48091-1385 | |
| Multimatic Inc | Inmet | 35 W Wilmot St | | Richmond Hill Ontario | ON | L4B 1L7 | Canada |
| Multmatic Inc | | 19790 Haggerty | | Livonia | MI | 48152 | |
| Mytex Polymers Gp | | 1403 Port Rd | | Jeffersonville | IN | 47130 | |
| National Material Lp | | PO Box 1587 | | Mansfield | OH | 44901 | |
| National Molding Corp | | 5 Dubon Court | | Farmingdale | NY | 11735-1007 | |
| National Paper & Packaging Co | | 26401 Richmond Rd | | Bedford Heights | OH | 44146-1443 | |
| Nedschroef Fraulautern Gmbh | | Klosterstr 13 Fraulautern | | Saarlouis | | 66740 | Germany |
| New United Motor Manufacturing | | 45500 Fremont Blvd | | Fremont | CA | 94538 | |
| Newark Electro Plating Inc | | 30 32 E Harrison St | | Newark | OH | 43055 | |
| Newco Inc | | 40 Corporate Dr | | Auburn Hills | MI | 48326 | |
| Nicholas Plastics Inc | C/o J S Chamberlain Assoc | 3221 W Big Beaver Rd Ste 115 | | Troy | MI | 48084 | |
| Northtown Business Center Llc | | 104 Armour Rd | | North Kansas City | MO | 64116 | |
| Nova Chemicals Inc | Nova Chemicals Canada Ltd | 1550 Coraopolis Heights Rd | | Coraopolis | PA | 15108 | |
| Novem Car Interiors Design Inc | | 7610 Market St | | Canton | MI | 48187 | |
| Nri Industries Inc | | 35 Cawthra Ave | | Toronto | ON | M6N 3C2 | Canada |
| Nsk Corp | Oem Business Unit | PO Box 134007 | | Ann Arbor | MI | 48113-4007 | |
| Nyloncraft Inc | C/o Kovath Ej & Associates | 10327 E Grand River Ste 407 | | Brighton | MI | 48116 | |
| Nyx Inc | Nyx Cherryhill Division | 1000 Manufacturers Dr | | Westland | MI | 48186-4064 | |
| Nyx Inc | Nyx Rebmann | 24555 Capitol St | | Redford | MI | 48239 | |
| Oem Erie Inc | | 1810 W 20th St | | Erie | PA | 16502-2001 | |
| Olson International Ltd | Olson International | 50 W North Ave | | Lombard | IL | 60148 | |
| Olson International Sa De Cv | | Parque Industrial Del Lagos Ap 371 | Carretera A La Playa Km 75 | Matamoros | | 87490 | Mexico |
| Omron Automotive Electronics Inc | | 29185 Cabot Dr | | Novi | MI | 48377 | |
| Omron Dualtec Automotive Electronic Switch/ecu Div | | 2291 Winston Pk Dr | | Oakville Ontario | ON | L6H 6R7 | Canada |
| Optek Technology Inc | C/o Electronbnic Sales & Engineering | 1905 Cloverdale Dr | | Rochester | MI | 48307 | |
| Optek Technology Inc | | 1645 Wallace Dr Ste 130 | | Carrollton | TX | 75006 | |
| Osram Sylvania Inc | | 275 W Main | | Hillsboro | NH | 03244 | |
| Osullivan Films Inc | | 1944 Valley Ave | | Winchester | VA | 22601-6306 | |
| Otis Elevator Company | | 2231 Westbrooke Dr Bldg M | | Columbus | OH | 43228-9605 | |
| Otto Bock Polyurethane Tech Inc | | 3 Penn Ctr W Ste 406 | | Pittsburgh | PA | 15276 | |
| Owens Corning Inc | Owens Corning | 46500 Humboldt Dr | | Novi | MI | 48377 | |
| Panasonic Automotive Systems | | No300 Honggang Rd | | Dalian | | 16033 | China |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 13

11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Panasonic Automotive Systems Dalian | | No15 East St Daxinzhaizi | | Dalian | | 116033 | China |
| Par Foam Products | C/o Automotive Sales Group Inc | 550 Stephenson Hwy Ste 401 | | Troy | MI | 48083 | |
| Par Form Products | C/o Automotive Sales Group Inc | 550 Stephenson Hwy Ste 401 | | Troy | MI | 48083 | |
| Parker Hannifin Corp | Parker Thermo Plastics Division | 985 Falls Creek Dr | | Vandalia | OH | 45377 | |
| Peiker Acustic Gmbh & Co Kg | | Max Planch Str 30 32 | | Friedrichsdorf | | 61381 | Germany |
| Pelzer Hp Automotive Systems Inc | Manufacturing Plant | 2415 Dove St | | Port Huron | MI | 48060 | |
| Penn Aluminum International Inc | | PO Box 490 | | Murphysboro | IL | 62966 | |
| Penn Engineering Automotive Fastener | | 50625 Design Ln | | Utica | MI | 48315-3128 | |
| Penn Metal Stamping Inc | | PO Box 221 | | Saint Marys | PA | 15857 | |
| Pepro Enterprises Inc | Gemini Plastics | 4385 Garfield St | | Ubly | MI | 48475 | |
| Perkinelmer Optoelectronics | | 13720 Shoreline Court E | | Earth City | MO | 63045 | |
| Permacel Kansas City Inc | Permacel Missouri | 8485 Prospect Ave | | Kansas City | MO | 64132 | |
| Pesa Labeling Systems | | 275 Kings Hwy Ste 104 | | Brownsville | TX | 78521 | |
| Pilkington North America Inc | | 140 Dixie Hwy | | Rossford | OH | 43460-1215 | |
| Pilkington North America Inc | | 4370 Alum Creek Dr | | Columbus | OH | 43207-4519 | |
| Pinnace Molded Plastics Corp | | 2170 Traversfield Dr | | Traverse City | MI | 49686-9278 | |
| Pintura Estampado Y Montaje Sa De Cv | | Carr Celaya Salamanca Km 5 | Celaya Gto Ap 494 | | | | Mexico |
| Pintura Estampado Y Montajes Sa De Cv | | Carr Celaya Salamanca Km 5 | Celaya Gto Cp 38020 | | | | Mexico |
| Piolax Corp | | 139 Etowah Industrial Court | | Canton | GA | 30114 | |
| Plabell Rubber Products | | 300 324 S St Clair St | | Toledo | OH | 43602-1846 | |
| Plas Tech Engineered Products Inc | | 1111 S Colling Rd | | Caro | MI | 48723 | |
| Plascar Indde Comm Plasticos Ltda | | Al Do Café 450 Indl | | Varginha | | 37026--400 | Brazil |
| Plastech Engineered Products Inc | Plastech | 539 Belevedere Dr N | | Gallatin | TN | 37066-5409 | |
| Plastech Engineered Products Inc | Plastech | 539 Belvedere Dr N | | Gallatin | TN | 37066-5409 | |
| Plastech Engineered Products Inc | | 22000 Garrison St | | Dearborn | MI | 48124 | |
| Plastic Trim Inc | Plant 4 | 258 Hopeland Ave | | Dayton | OH | 45408 | |
| Plastomer Corp | | 37819 Schoolcraft Rd | | Livonia | MI | 48150-1096 | |
| Poeppelmann Kunststoff Technik Gmbh | | Postfach Postfach 1 | | Lohne | | 49378 | Germany |
| Polioles Sa De Cv | | Km525 Carretera Mexico Toluca | | Lerma | | 52000 | Mexico |
| Polymerica Ltd | Global Enterprises | 50450 E Russell Schmidt Blvd | | Chesterfield | MI | 48051 | |
| Polyone Corp | | 33587 Walker Rd | | Avon Lake | OH | 44012 | |
| Polyone Corp | | 733 E Water St | | North Baltimore | OH | 45872 | |
| Polyone Corp | | PO Box 807 | | Dyersburg | TN | 38025 | |
| Polyone Engineered Films Group | | 6915 Rochester Rd Ste 100 | | Troy | MI | 48098 | |
| Port City Die Cast Inc | | 1985 E Laketon Ave | | Muskegon | MI | 49442-6127 | |
| Porter Group Llc | | 28700 Cabot Dr Ste 800 | | Novi | MI | 48377 | |
| Powermotion Inc | | 90 Robert Jemison Rd | | Birmingham | AL | 35209-3607 | |
| Ppg Industries Inc | C/o Dura Automotive | PO Box 746 | | Lawrenceburg | TN | 38464 | |
| Ppg Industries Inc | Coatings & Resins Group | 961 Division St | | Adrian | MI | 49221 | |
| Precision Products Group Inc | Michigan Spring & Stamping Div | PO Box 720 | | Muskegon | MI | 49443 | |
| Precision Southeast Inc | | PO Box 50610 | | Myrtle Beach | SC | 29579 | |
| Predictive Maintenance Services Inc | | 515 Morris St | | Uhrichsville | OH | 44683-1141 | |
| Premiere Mold & Die Co Inc | | 4140 Helton Dr | | Florence | AL | 35630-6208 | |
| Pridgeon & Clay Inc | | 50 Cottage Grove Sw | | Grand Rapids | MI | 49507-1622 | |
| Professional Grounds Keeper | | 643 70th St | | Tuscaloosa | AL | 35405-3991 | |
| Progressive Marketing Inc | Progressive Marketing Products | 1950 Crooks Rd | | Troy | MI | 48084 | |
| Progressive Marketing Inc | Progressive Moulded Products | 1950 Crooks Rd | | Troy | MI | 48084 | |
| Progressive Marketing Inc | Progressive Moulded Products Inc | 1849 Pond Run Dr Ste 100 | | Auburn Hills | MI | 48326 | |
| Progressive Marketing Inc | Progressive Moulded Products Ltd | 1849 Pond Run Dr Ste 100 | | Auburn Hills | MI | 48326 | |
| Progressive Moulded Products Ltd | Progressive Tools Division | 9024 Keele St | | Concord Ontario | ON | L4K 2N2 | Canada |
| Proveedora Industrial Matamoros Sa | | Repulica Del Salvador 8 | Col Modelo | Matamoros | | 87360 | Mexico |
| Pullman Industries Inc | | 820 Kirts Blvd Ste 400 | | Troy | MI | 48084 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 13

11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Qhg Of Gadsden | Gadsden Regional Medical Ctr | PO Box 2098 | | Gadsden | AL | 35903 | |
| Qis Inc | Quality Industrial Services | PO Box 673192 | | Detroit | MI | 48267 | |
| Raches Ch Inc | | 1100 N Opdyke Rd Ste 200 | | Auburn Hills | MI | 48326 | |
| Radolid Thiel Gmbh | | Loesenbacher Lanstr 166 | | Luedenscheid | | 58487 | Germany |
| Rawac Plating Co | | 1107 W North St | | Springfield | OH | 45504 | |
| Rb&w Corp Of Canada | | 5190 Bradco Blvd | | Mississauga Ontario | ON | L4V 1G7 | Canada |
| Recticel Interiors North America Inc | | 1420 Industrial Pk Dr | | Tuscaloosa | AL | 35401-0427 | |
| Red Spot Westland Inc | | 9030 General Dr | | Plymouth | MI | 48170 | |
| Reilly Plating Co | | PO Box 3213 | | Melvindale | MI | 48122-0213 | |
| Reliable Spring & Wire Forms The | | PO Box 58 | | Elyria | OH | 44036-0058 | |
| Reum Corp | | 3600 Sunset Ave | | Waukegan | IL | 60087 | |
| Reum Gmbh & Co Betriebs Kg | Reum | Industriestr 9 | | Hardheim | | 74736 | Germany |
| Rhe Tech Inc | | 1500 E North Territorial Rd | | Whitmore Lake | MI | 48189 | |
| Richard Lektzian | | 439 Whitney | | Rochester Hills | MI | 48307 | |
| Robin Industries Inc | Fredericksburg Facility | PO Box 242 | | Fredericksburg | OH | 44627 | |
| Russells Technical Products Inc | | 1145 S Washington Ave | | Holland | MI | 49423-5296 | |
| Saargummi Americas Inc | | 4330 Varsity Dr | | Ann Arbor | MI | 48108 | |
| Saia Burgess Automotive Actuators Inc | | 755 Bill Jones Industrial Dr | | Springfield | TN | 37172-5014 | |
| Saia Burgess Inc | Ledex & Dormeyer | PO Box 427 | | Vandalia | OH | 45377 | |
| Samlip America | | 312 Frank Diggs Dr | | Clinton | TN | 37716 | |
| Sandusky Ltd Llc | | 27950 Orchard Lake Rd Ste 101 | | Farmington Hills | MI | 48334 | |
| Saturn Corporation | Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | Warren | MI | 48090 | |
| Saturn Electronics & Engineering | Saturn Engineering | 255 Rex Blvd | | Auburn Hills | MI | 48326-2954 | |
| Schulman A Inc | | PO Box 1710 | | Akron | OH | 44309-1710 | |
| Sealed Air Corp | | 2550 Commerce Blvd | | Sharonville | OH | 45241-1504 | |
| Security Plastics Division/nmc Llc | | 14427 Nw 60th Ave | | Miami Lakes | FL | 33014 | |
| Security Plastics Division/nmc Llc | | 14427 Nw 60th Ave | | Hialeah | FL | 33014 | |
| Select Industries Corp Plant 1 | | PO Box 887 | | Dayton | OH | 45401 | |
| Select Industries Corp Plant 3 | | 220 Janney Rd | | Dayton | OH | 45404 | |
| Select Industries Corp Plant 3 | | PO Box 887 | | Dayton | OH | 45401 | |
| Semblex Corp | | 199 W Diversey | | Elmhurst | IL | 60126-1162 | |
| Senco Products Inc | Senco Fasteners Systems | 8485 Broadwell Rd | | Cincinnati | OH | 45244-1611 | |
| Sethka Of Georgia Inc | Terminix | 7415 Gadsden Hwy | | Trussville | AL | 35173-1658 | |
| Shamrock Technologies Inc | | PO Box 117 | | Dayton | NJ | 08810 | |
| Shanghai General Motors Corporation Limited | Gm Global Purchasing | C/o Leigh Dushane | | Warren | MI | 48090 | |
| Shanghai Gm Shenyang Norsum Motor Company Limited | Gm Global Purchasing | C/o Leigh Dushane | 30009 Van Dyke | Warren | MI | 48090 | |
| Shanghai Volkswagen | Volkswagen Ag Zh Herrn F Garcia Sanz | Konzernvorstand Beschaffung | Brieffach / Letter Box 1600 | Wolfsburg | | D-38436 | Deutschland Germany |
| Sidler Gmbh & Co Kg | Sidler | Bismarkstr 72 | | Tuebingen | | 72072 | Germany |
| Siemens Electric Ltd | Siemens Automotive | 1020 Adeline St S | | London Ontario | ON | N6E 1R6 | Canada |
| Siemens Vdo Automotive Ag | | Postfach Postfach 1 | | Regensburg | | 93055 | Germany |
| Siemens Vdo Automotive Inc | Siemans Automotive | 1020adeline St S | | London Ontario | ON | N6E 1R6 | Canada |
| Siemens Vdo Sa De Cv | | Crs Airbags & Restraints Systems | Camino A La Tijera 3 Km 35 | Tiajomulco De Zuniga | | 45640 | Mexico |
| Societe En Commandite Ifastgroupe | Infasco Nut Division | 3990 Nashua Dr | | Mississauga Ontario | ON | L4V 1P8 | Canada |
| Societe En Sommandite Ifastgroupe | Infasco Nut Division | 3990 Nashua Dr | | Mississauga Ontario | ON | L4V 1P8 | Canada |
| Sofanou Inc | C/o Peter Andries | 7 W Square Lake Rd | | Bloomfield Hills | MI | 48302 | |
| Sofanou Inc | | 632 Timberline Dr | | Rochester Hills | MI | 48309 | |
| Solar Spring & Wire Forms | | 345 Criss Circle Dr | | Elk Grove Village | IL | 60007-1291 | |
| Spartech Corp | Spartech Polycom | 470 Johnson Rd | | Washington | PA | 15301 | |
| Spencer Products Co Inc | | 1859 Summit Commerce Pk | | Twinsburg | OH | 44087 | |
| Spring Dynamics Inc | | 7378 Research Dr | | Almont | MI | 48003 | |
| Stanhope Products Co | | PO Box 6003 | | Brookville | OH | 45309-6003 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 13

11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Stanley Bostitch Inc | | 9901 Kincaid Dr Ste 200 | | Fishers | IN | 46038 | |
| Starbrook Industries Inc | | 2000 Industrial Court | | Covington | OH | 45318 | |
| Steel Technologies Inc | | PO Box 43339 | | Louisville | KY | 40253-0339 | |
| Sternplastik Hellstern Gmbh & Co Kg | | Hegaustr 9 | | Villingen Schwenningen | | 78054 | Germany |
| Stocker Hinge Mfg Co | | PO Box 149 | | Brookfield | IL | 60513-0149 | |
| Stoneridge Inc | Alphabet Mcd Division | 6 Butterfield Trail | | El Paso | TX | 79906 | |
| Stoneridge Inc | Pollak Engineered Product Group Division | 28001 Cabot Dr Ste 100 | | Novi | MI | 48377 | |
| Strattec Security Corp | | 3333 W Good Hope Rd | | Milwaukee | WI | 53209 | |
| Summit Polymers Inc | Syntech Plant | 1211 Progress St | | Sturgis | MI | 49091 | |
| Summit Polymers Inc | | 15101 N Commerce Dr | | Dearborn | MI | 48120 | |
| Sur Flo Plastic & Engineering Inc | | 24358 Groesbeck Hwy | | Warren | MI | 48089-4718 | |
| Taigene Electric Machine Co | C/o Mco Sales | 6001 N Adams Rd Ste 125 | | Bloomfield Hills | MI | 48304 | |
| Taigene Electric Machinery Co | C/o Mco Sales | 6001 N Adams Rd Ste124 | | Bloomfield Hills | MI | 48304 | |
| Taigene Electric Machinery Co | C/o Mco Sales | 61001 N Adams Rd Ste 125 | | Bloomfield Hills | MI | 48304 | |
| Taigene Electric Machinery Co Ltd | | 138 Fu Yuan Rd | | Lungtan Hsiang Taoyuan H | | 32553 | Taiwan |
| Tariq A Siddiqi Md Pc | | 231 N Main St | | Adrian | MI | 49221 | |
| Tata Autocomp Systems Ltd | | 2792 Alisop Pl Ste 207 | | Troy | MI | 48084 | |
| Techform Products Ltd | C/o Connelly Co | 36155 Mound Rd | | Sterling Heights | MI | 48310 | |
| Techform Products Ltd | C/o Connelly Co | 8424 12 Mile Rd | | Warren | MI | 48093 | |
| Techform Products Ltd | C/o Connelly Co | 8424 E 12 Mile | | Warren | MI | 48093 | |
| Techmetals Inc | | PO Box 1266 | | Dayton | OH | 45401-1266 | |
| Tefco Inc | | 10102 W Flamingo Rd Ste 4 204 | | Las Vegas | NV | 89147-8385 | |
| Tella Tool & Mfg Co | Tella Technology Division | 1015 N Ridge Ave | | Lombard | IL | 60148-1210 | |
| Termax Corp | | 920 930 Remington Rd | | Schaumburg | IL | 60173 | |
| Tesa Tape Inc | | 5825 Carnegie Blvd | | Charlotte | NC | 28209-4633 | |
| Textileather Corp | | 20500 Civic Ctr Dr Ste 2800 | | Southfield | MI | 48076 | |
| Textron Fastening Systems | Camcar Division | 1302 Kerr Dr | | Decorah | IA | 52101 | |
| Textron Fastening Systems | | 826 E Madison | | Belvidere | IL | 61008-2364 | |
| Textron Fastening Systems Inc | | 345 E Marshall St | | Wytheville | VA | 24382-3917 | |
| Textron Inc | Camcar Textron Drill Screw Division | PO Box 90 | | Decorah | IA | 52102 | |
| Textron Inc | Textron Fastening Systems | 29201 Telegraph Rd Ste 606 | | Southfield | MI | 48034 | |
| Tfs Fastening Systems Llc | Decorah Operations | 1302 Kerr Dr | | Decorah | IA | 52101 | |
| Tg Technical Center Usa Corp | | 1095 Crooks Rd | | Troy | MI | 48084 | |
| The Intec Group Inc | | 1301 E Michigan Ave | | Morocco | IN | 0479--8179 | |
| Tinnerman Palnut Engineered Products | | 152 Glen | | Mountainside | NJ | 07092-0214 | |
| Tinnerman Palnut Engineered Products | | 152 Glen Rd | | Mountainside | NJ | 07092-0214 | |
| Tinnerman Palnut Engineered Products | | 240 6th St Nw | | Massillon | OH | 44646 | |
| Tinnerman Palnut Engineered Products | | PO Box 10 | | Brunswick | OH | 44212-0010 | |
| Topcraft Precision Molders Inc | | 301 Ivyland Rd | | Warminster | PA | 18974 | |
| Totoku Electric Co Ltd | | 1 3 21 Okubo | Shinjuku Ku | Tokyo | | 0169--0072 | Japan |
| Tower Automotive | | 27175 Haggerty Rd | | Novi | MI | 48375 | |
| Toyota Motor Manufacturing North America Inc | | 25 Atlantic Ave | | Erlanger | KY | 41018 | |
| Tropic Tool & Mold Inc | | 1420 Wagner Dr | | Albertville | AL | 35950-8549 | |
| Trueform Manufacturing | | 3002 Lee Hwy | | Athens | TN | 37303 | |
| Trw Automotive Electronics & Components | | Postfach Postfach 1 | | Radolfzell | | 78315 | Germany |
| Trw Automotive Us Llc | Trw Westminister | PO Box 890 | | Westminster | MA | 01473 | |
| Trw Inc | Trw Automotive Electronics | 23855 Research Dr | | Farmington Hills | MI | 48335 | |
| Trw Vehicle Safety Systems Inc | Trw Vssi | 4505 W 26 Mile Rd | | Washington | MI | 48094 | |
| Twin Corp | | 10456 N Holly Rd | | Holly | MI | 48442 | |
| Tyco Electronics Corp | | 301 Robey | | Franklin | KY | 42134 | |
| Tyco Electronics Corporation | | PO Box 3608 | | Harrisburg | PA | 17105 | |
| Tyz All Plastics Inc | | 120 Express St | | Plainview | NY | 11803 | |

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Uaw International | Solidarity House | 8000 East Jefferson | | Detroit | MI | 48214 | |
| Uaw Local 2031 | | 5075 Belmere Dr | | Manitou Beach | MI | 49253 | |
| Ultra Form Industries Inc | | 143 E Pond Dr | | Romeo | MI | 48065-4903 | |
| Unique Fabricating Inc | Plant 1 | 800 Standard Pkwy | | Auburn Hills | MI | 48326 | |
| Unique Fabricating Inc Plant L | | 800 Standard Pkwy | | Auburn Hills | MI | 48326 | |
| Unique Tool & Gauge Inc | | 1505 Moro Dr Rr1 | | Windsor Ontario | ON | N9A 6J3 | Canada |
| United Paint & Chemical Corp | Unitd Paint Co | 24671 Telegraph Rd | | Southfield | MI | 48034-3035 | |
| Universal Polmer & Rubber Inc | | PO Box 767 | | Middlefield | OH | 44062-0767 | |
| Universal Polymer & Rubber Inc | | PO Box 767 | | Middlefield | OH | 44062-0767 | |
| Valeo Climate Control Corp | | 3620 Symmes Rd | | Hamilton | OH | 45015 | |
| Valley Commercial Latino Americana | | Calle 20 1112 | | Matamoros | | 87350 | Mexico |
| Van Dyne Crotty Inc | | 150 Arco Dr | | Toledo | OH | 43607-2900 | |
| Van Rob Inc | | 1000 University Ave W | | Windsor Ontario | ON | N9A 5S4 | Canada |
| Vehicle Security Systems Limited | Mr J P Chevalier | 28 32 Wellington Rd | | London | | NW8 9SP | Uk |
| Venture Plastics Inc | | PO Box 249 | | Newton Falls | OH | 44444-0249 | |
| Victory Packaging De Mexico S De RI | | Brecha 102 Carretera A Matamoros | | Reynosa | | 88780 | Mexico |
| Victory Packaging Inc | | 6250 Brook Hollow Pkwy | | Norcross | GA | 30071 | |
| Victory Packaging Inc | | 800 Junction | | Plymouth | MI | 48170 | |
| Victory Packaging Inc | | 1597 Westbelt Dr | | Columbus | OH | 43228-3839 | |
| Victory Packaging Inc | | PO Box 579 | | Donna | TX | 78537 | |
| Viking Plastics Inc | | 1 Viking St | | Corry | PA | 16407 | |
| Virginia Industries Inc | Hartford Technologies Division | 1022 Elm St | | Rocky Hill | CT | 06067-1809 | |
| Volkswagen Ag | | | Brieffach / Letter Box 1600 | | | | |
| | Zh Herrn F Garcia Sanz | Konzernvorstand Beschaffung | | Wolfsburg | | D-38436 | Deutschland Germany |
| Vorwerk Autotec Gmbh & Co Kg | | Obere Lichtenplatzer Str 336 | | Wuppertal | | 42287 | Germany |
| Wagner E R Manufacturing Co | | 4611 N 32nd St | | Milwaukee | WI | 53209-6023 | |
| Walco Corp | | PO Box 9 | | Glenshaw | PA | 15116-0009 | |
| Weastec Inc | | 1600 N High St | | Hillsboro | OH | 45133-9495 | |
| Wesco Distribution Inc | Englewood Electrical Supply Div | PO Box 487 | | Adrian | MI | 49221 | |
| Wirco Products Inc | | 2550 20th St | | Port Huron | MI | 48060-6449 | |
| Wirco Products Ltd | | 1011 Adelaide St S | | London Ontario | ON | N6E 1R4 | Canada |
| Wire Products Co Inc | | 14601 Industrial Pkwy | | Cleveland | OH | 44135-4545 | |
| Wolverine Products Inc | | 35220 Groesbeck | | Clinton Township | MI | 48035 | |
| Woodbridge Foam Corp | Morval Division | PO Box 878 Sta C | | Kitchener | ON | N2G 40 | Canada |
| Woodbridge Sales & Engineering Inc | Woodbridge Group | 2500 Meijer Dr | | Troy | MI | 48084 | |
| Worthington Industries Inc | | 200 Old Wilson Bridge | | Columbus | OH | 43085-4769 | |
| Wren Industries Inc | | PO Box 24009 | | Dayton | OH | 45424 | |
| Yuhshin Usa Ltd | Ortech | 2806 Industrial Dr | | Kirksville | MO | 63501-4832 | |
| Yuhshin Usa Ltd | Ortech | 2806 Industrial Rd | | Kirksville | MO | 63501-4832 | |
| Zenith Cutter Co | | 5200 Zenith Pkwy | | Loves Pk | IL | 61111-2726 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 13 of 13                    11/1/2007 12:35 PM
Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Alabama Great Southern Railroad Company | | Three Commercial Place | | Norfolk | VA | 23510-9241 | |
| American Industrial Acquisition Corporation | Rich Dupuis | 1465 E Putnam Ave | Ste 229 | Greenwich | CT | 06870 | |
| Automotive Acquisition Corporation Rudy Wilson | | 401 South Old Woodward | Ste 450 | | | | |
| Berkshire Partners Llc | Jeanine Neumann | 1 Boston Pl | Ste 3300 | Boston | MA | 02108 | |
| Blue Wolf Capital Management Llc | Josh Wolf Powers | 1 Liberty Plaza | 23rd Fl | New York | NY | 01006 | |
| Brose North America Inc | Jan Kowal | 3933 Automotion Ave | | Auburn Hills | MI | 48326 | |
| Cadence Innovation Llc | Russell Chick | 977 East 14 Mile | | Troy | MI | 48083 | |
| Cadwalader Wickersham & Taft LLP | Michael C Ryan Esq | One World Financial Center | Counsel to Inteva Products LLC | New York | NY | 10281 | |
| Carlyle Investment Management | Llc Bulent Kozlu | 1001 Pennsylvania Ave | Nw | Washington | DC | 20004-2505 | |
| Castle Harlan | Inc Howard Weiss | 150 East 58th St 37th Fl | | New York | NY | 10155 | |
| Cerberus Capital Management | Lp Dev Kapadia | 299 Pk Ave | | New York | NY | 10171 | |
| Cj Exports | Christopher Pung | 8369 N Seymour Rd | | Flushing | MI | 48433 | |
| Clayton | Dubilier & Rice Inc Stephen Shapiro | 375 Pk Ave | Fl 18 | New York | NY | 10152 | |
| Clear Bid | Inc Cat Harshman | 295 Madison Ave | | New York | NY | 10017 | |
| Consolidated Metco | Inc Ed Oeltjen | 13940 North Rivergate Blvd | | Portland | OR | 97203 | |
| Doshi Group Llc | Shailesh Doshi | 1607 E Big Beaver Rd | Ste 200 | Troy | MI | 48083 | |
| Ewing Management Group Acquisition | Llc Steve Johnson | 712 5th Ave | | New York | NY | 10019 | |
| Fenway Partners | Mac Lafollette | 152 W 57th St | 59th Fl | New York | NY | 10019 | |
| Graham Partners | Inc Joshua Wilson | 3811 Est Chester Pike | Bldg 2 Ste 200 | Newton Square | PA | 19073 | |
| Hig Capital Management | Inc John Bolduc | 1001 Brickell Bay Dr | 27th Fl | Miami | FL | 33131 | |
| Industrial Opportunity Partners | Llc Robert M Vedra | 203 North Lasalle | Ste 1350 | Chicago | IL | 60601 | |
| James A Rohde Company | Jim Rohde | 2711 East Jefferson Ave | | Detroit | MI | 48207 | |
| Jms Plastics Inc | David Martinez | 3535 Route 66 | Building 4 | Neptune | NJ | 07753-2625 | |
| Keykert Usa Inc | Mike Hietbrink | 46941 Liberty Dr | | Wixom | MI | 48393 | |
| King & Spalding LLP | Barry N Seidel | 1185 Sixth Avenue | Counsel to Inteva Products LLC | New York | NY | 10036 | |
| Klesch & Company Limited | Geoffrey Geiger | 105 Wigmore St | | London | | W1U 1QY | Uk |
| Kohlberg & Company | Llc Prescott Romeyn | 111 Radio Cir | | Mt Kisco | NY | 10549 | |
| Kps Special Situations Funds | Ilya Koffman | 200 Pk Ave | 58th Fl | New York | NY | 10166 | |
| Ldi Incorporated | Steve Lankfer | 4311 Patterson Se | | Grand Rapids | MI | 49512 | |
| Lear Corporation | Jay Nowak | 21557 Telegraph Rd | PO Box 5008 | Southfield | MI | 48086 | |
| Magneti Marelli Holding Spa | James Rosseau | 37484 Interchange Dr | | Farmington Hills | MI | 48335 | |
| Manufacturers Industrial Group | André Gist | 450 Mig Dr | | Lexington | TN | 38351 | |
| Marathon Private Equity Fund I | Llc Wray Thorn | 461 5th Ave | 10th Fl | New York | NY | 10017 | |
| Marlin Equity Partners | Llc Peter Spasov | 2121 Rosecrans Ave | Ste 2370 | El Segundo | CA | 90245 | |
| Mgi Coutier Sa Andre Coutier | | 975 Route Des Burgondes | 33 4 50 56 95 33 | Champfromier | | 01410 | Fance |
| Minda Huf Ltd | Gagan Vermani 43 B | Vinit Bansal D 6 11 Sector 59 | Noida | Uttar Pradesh | | 201301 | India |
| Moser Baer India Limited | | Phase 3 | Okhla Industrial Estate | New Delhi | | 110020 | India |
| Norfolk Southern Corporation | | Three Commercial Place | | Norfolk | VA | 23510-9241 | |
| Oak Hill Advisors | Lp Bhavin Shah | 65 E 55th St | 32nd Fl | New York | NY | 10022 | |
| Performance Holdings Group | Jim Bardia | 71 North Greenwich St | | Armonke | NY | 10504 | |
| Plastech Engineered Products | Inc Rich Miller | 835 Mason Ave | | Dearborn | MI | 48124 | |
| Polytec Group | Friedrich Huemer | Linzer Strasse 50 | Hoersching | | | 04063 | Austria |
| Siemens Vdo Automotive Corporation | David J Royce | 2400 Executive Hills Blvd | | Auburn Hills | MI | 48326 | |
| Sumitomo Corporation Europe Ltd | | Kimihiko Sato Vintners Place | 68 Upper Thames St | London | | EC4V 3BJ 44 | UK |
| Sun Capital Partners Group Iv | Inc Gary M Talarico | 375 Pk Ave | Ste 1302 | New York | NY | 10152 | |
| Supplier Development Systems | Jeannie Thrower | 138 Mtn Brook Dr Ste 2 | | Springville | AL | 35146 | |
| Tata Motors Ltd Mp Chugh Bombay House | | 24 Homi Mody St | Mumbai | Maharashtra | | 400001 | India |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

11/1/2007 2:21 PM
New Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Texas Pacific Group | Marshall Haines | 301 Commerce St | Ste 3300 | Fort Worth | TX | 76102 | |
| The Intec Group | Inc Steve Perlman | 666 South Vermont St | | Palatine | IL | 60067 | |
| Thomas H Lee Partners | Lp Tony Dinovi | 100 Federal St 35th Fl | Ste 3500 | Boston | MA | 02110 | |
| Tmb Industries | Tim Masek | 980 N Michigan Ave | Ste 1900 | Chicago | IL | 60611 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

11/1/2007 2:21 PM
New Integrated Closures special parties

Delphi Corporation
Special Parties

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| General Electric Capital Corporation | | 3000 Lakeside Dr Ste 200n | Bannockburn | IL | 60015 | |
| Jpmorgan Chase Bank Na As Administrative Agent | Lien Perfection Unit | PO Box 2558 | Houston | TX | 77252 | |
| Lakeside Plastics Limited | | 3786 N Talbot Rd Plt 1 Rr1 | Old Castle | ON | N0R1L0 | Canada |
| Mercedes Benz Us International Inc | | 1 Mercedes Dr | Vance | AL | 35490 | |
| Oec Usa Inc | | 5450 North Cumberland | Chicago | IL | 06056 | |
| Omega Tool Corporation | | 2045 Solar Crescent | Tecumseh | ON | N0R1L0 | Canada |
| Plastic Plate Inc | | 3500 Raleigh Se | Kentwood | MI | 49512 | |
| Trutron Corporation | | 274 Executive Dr | Troy | MI | 48083 | |
| Unique Tool & Gauge Inc | | 1505 Moro Rr 1 | Windsor | ON | N9A 6J3 | Canada |
| Valiant Tool & Mold Inc | | 6775 Hawthorne Dr | Windsor | ON | N8T3Q9 | Canada |
| Windsor Mold Inc | | 444 Hanna | Windsor | ON | N8X 2N4 | Canada |
| Wittmann Inc | | One Technology Pk | Torrington | CT | 06790 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

11/1/2007 2:04 PM
Notification list for liens 071023

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 |
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 |
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 |
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 |
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 |

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 |
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 |
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 |
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 |
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 |
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 |
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 |
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 |
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn Michigan | | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 |
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 |
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 |
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 |
| City Of Laredo Tx | City O Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 |
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 |
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 |
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 |
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterbury | CT | 06723 |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 |
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 |

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 |
| Colorado Department Of Revenue | | | | Denver | CO | 80261-0006 |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 |
| Comal Co Tx | Comal Co Tax Assessor / Collector | 311445 | | New Braunfels | TX | 78131 |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 |
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 |
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 |
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 |
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 |
| Dc Office Of Tax & Revenue | Corporation Estimated Franchise Tax | PO Box 96019 | | Washington | DC | 20090-6019 |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 |
| Dearborn Countyin | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 |
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 |
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 |
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 |
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 |
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 |
| Essexville City Of Bay | | | | Essexville | MI | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 |
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 |
| Forsyth Twp Marquette | | | | Gwinn | MI | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 |
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 |
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 |
| Greenwood Co Sc | Greenwood Co Tax Treasurer | 528 Monument St | R 101 | Greenwood | SC | 29646 |
| Guilford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 |
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | Room 210 | Chattanooga | TN | 37402 |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Harnett Co Nc | Harnett Co Tax Collector | Po 58509 | | Charlotte | NC | 28258 |
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 |
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | PO Box 4290 | Edinburg | TX | 78540 |

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 |
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 |
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 |
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64039 |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 |
| Johnson County In | Johnson County Treasurer | Courthuse Annex | 86 W Court St | Franklin | IN | 46131 |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olather | KS | 66061 |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 |
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 |
| Kentucky Department Of Revenue | | | | Frankfurt | KY | 40619-0007 |
| Kentucky Revenue Cabinet | | | | Frankfurt | KY | 40602 |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 |
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 |

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 |
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 |
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 |
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 |
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 95808 |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 |
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 |
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 |
| Manager Of Finance | Jackson County Manager Of Finance | Bankruptcy 415 E 12th St | | Kansas City | MO | 64106 |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 |
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 |
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 |
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 |
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Monroe County In | Monroe County Treasurer | Courthouse Room 204 | | Bloomington | IN | 47404 |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 |
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 |
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 |
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha Rd | PO Box 233 | Seneca | KS | 66538 |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 |
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 |
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 |
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 |
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 |
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 |
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 |
| Pima County Treasurer Pima County Assessor | | | | | | |
| Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 |
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 |
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 |
| Riverside County Collector | | P O 12005 | | Riverside | CA | 92502 |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 |
| Rochester Hills City Of Oakland | | Drawer 7783 | | Detroit | MI | 48279 |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 |
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 |
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 |
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 |
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 |
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 17

11/1/2007 2:07 PM
Taxing Authorities

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 |
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarie | NC | 28001 |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 |
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 |
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 |
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 |
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 |
| Sumner Co Tn | Sumner County Treasurer | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 |
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 |

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Tax Colle | PO Box 7100 | Milton | FL | 32572 |
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 |
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 444 | | Dawson | GA | 31742 |
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 |
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 |
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 |
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 |
| Trey Grayson | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 |
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 |

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 |
| Utah State Tax Commission | | 210 North 1950 West | | Salt Lake City | UT | 84134-0180 |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 |
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 |
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 |
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 |
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 |
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 |
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Blgd | Richmond | IN | 47374 |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 |

Delphi Corporation
Special Parties

| Name | Notice Name | Address1 | Address2 | City | State | Zip |
|------|-------------|----------|----------|------|-------|-----|
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 |
| Wv Secretary Of State | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | | Charleston | WV | 225305 |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 |
| York Co Sc | York Co Tax Treasurer | PO Box 116 | | York | SC | 29745 |
| York County Tax Collector | | 1070 Heckle Beva Box 14 | | Rock Hill | SC | 29732-2863 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 17

11/1/2007 2:07 PM
Taxing Authorities

# EXHIBIT D

**Bidding Procedures Hearing Date And Time:  October 25, 2007 at 10:00 a.m.**
**Bidding Procedures Objection Deadline:  October 22, 2007 at 4:00 p.m.**
**Sale Hearing Date And Time:  December 20, 2007 at 10:00 a.m.**
**Sale Hearing Objection Deadline:  December 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x
                                                        :
        In re                                           :    Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                        :
                                                        :    (Jointly Administered)
                        Debtors.                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

EXPEDITED MOTION FOR ORDERS UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P.
2002, 6004, 6006, AND 9014 (A) (I) APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN
BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING
SALE HEARING DATE AND (B) AUTHORIZING AND APPROVING (I) SALE OF CERTAIN
OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS PRIMARILY USED IN
DEBTORS' COCKPITS AND INTERIOR SYSTEMS AND INTEGRATED CLOSURE SYSTEMS
BUSINESSES FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES,
(II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

("INTERIORS AND CLOSURES BUSINESSES SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this expedited motion (the "Motion") for orders under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding procedures set forth herein and attached hereto as <u>Exhibit A</u> (the "Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and manner of sale notices (the "Notice Procedures"), and (iv) setting a date for the sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of the Selling Debtor Entities' (defined below) assets (the "Purchased Assets") comprising substantially all the assets primarily used in the Selling Debtor Entities' cockpits and interior systems business (the "Interiors Business") and integrated closure systems business (the "Closures Business," and together with the Interiors Business, the "Interiors and Closures Businesses") to the Buyers or the Successful Bidder (both as hereinafter defined) submitting a higher or otherwise better bid, as the case may be, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed U.S. Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Post-Petition Contracts," and collectively with the Assumed U.S. Contracts, the "Assigned Contracts") to the Buyers or the Successful Bidder, as the case may be, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Buyers or the Successful Bidder, as the case may be.  In support of this Motion, the Selling Debtor Entities (as defined below) respectfully represent as follows:

2

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee," and together with the Creditors' Committee, the "Statutory Committees").

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) (the "Plan") and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264) (the "Disclosure Statement").  No order approving the Disclosure Statement or confirming the Plan has yet been entered by this Court.

4.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5.    The statutory predicates for the relief requested herein are sections 363, 365, and 1146 of the Bankruptcy Code and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3

B.     Current Business Operations Of The Debtors

6.     Delphi and its subsidiaries and affiliates (collectively, the "Company")
as of December 31, 2006 had global net sales of $26.4 billion and global assets of
approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth
largest public company business reorganization in terms of revenues and the thirteenth largest
public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are
not chapter 11 debtors and continue their business operations without supervision from this
Court.[2]

7.     The Company is a leading global technology innovator with significant
engineering resources and technical competencies in a variety of disciplines, and is one of the
largest global suppliers of vehicle electronics, transportation components, integrated systems
and modules, and other electronic technology.  The Company supplies products to nearly every
major global automotive original equipment manufacturer ("OEM").

8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned
subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted
the Company's business through various divisions and subsidiaries.  Effective January 1, 1999,
the assets and liabilities of these divisions and subsidiaries were transferred to the Company in
accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
2007.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its
Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the
funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan
on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its
manufacturing footprint and to lower its overall cost structure.

4

connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

9.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

10.     The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

---

[3]   Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

5

11.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

12.     On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations.  The Debtors stated that they needed to focus on five key areas:[4] first, modifying the Company's labor agreements to create a competitive arena in which to conduct business;[5]

---

[4]     In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with certain investors and a plan framework support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and commitment agreement and related plan framework support agreement.  On July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate of Pardus Capital Management, L.P. (collectively, the "New Plan Investors").  Under the Delphi-Appaloosa EPCA, the New Plan Investors agreed to invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's transformation plan and plan of reorganization.  This Court approved the Delphi-Appaloosa EPCA on August 2, 2007.

[5]     As of August 29, 2007, this Court has entered the following orders approving settlements between Delphi and each of its U.S. labor unions:
  • International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") (Docket No. 8693);
  • International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America (the "IUE-CWA") (Docket No. 9106);
  • International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
  • United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW Local 87L (Docket No. 9169).
On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's motion for order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

second, concluding their negotiations with GM to finalize GM's financial support for the

Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[6]

third, streamlining their product portfolio to capitalize on their world-class technology and

market strengths and make the necessary manufacturing alignment with their new focus;[7]

fourth, transforming their salaried workforce to ensure that the Company's organizational and

cost structure is competitive and aligned with its product portfolio and manufacturing

footprint;[8] and devising a workable solution to their current pension situation.[9]

---

[6]    On September 6, 2007, Delphi announced that it entered into agreements with GM consisting of a Global
Settlement Agreement and a Master Restructuring Agreement, both of which are subject to this Court's
approval as part of the plan confirmation process. Delphi's comprehensive settlement with GM resolves all
outstanding disputes between Delphi and GM. The Global Settlement Agreement and Master Restructuring
Agreement were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively. See Docket No. 9263.

[7]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and
"non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to
maximize the value of their estates for stakeholders. During the 2006 and 2007 calendar years, for example,
the Debtors sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, and their
brake hose and catalyst businesses. The Debtors also obtained court approval for the sale of substantially all
of the assets of their Saltillo, Mexico brake plant business. In addition, as announced publicly, the Debtors
anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures
businesses.

[8]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its
product portfolio on core technologies for which the Company believes it has significant competitive and
technological advantages. The Company's revised operating structure consists of its four core business
segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic
Architecture. The Company also has two additional segments, Steering and Automotive Holdings Group,
which will be transitioned as part of the Company's transformation plan. To ensure that their organizational
and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R.
Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007
(Docket No. 7773) (the "Finance Outsourcing Order"). The Finance Outsourcing Order authorized the
Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and
expense reporting, general ledger, and contract administration processes and significantly reduce SG&A
expenses as part of their transformation plan.

[9]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms
of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on
May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for
Salaried Employees (collectively, the "Pension Plans"). On July 13, 2007, the IRS modified the conditional
funding waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is
required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29,
2008, respectively. On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi
Hourly-Rate Employees Plan for the September 30, 2007 pension plan year. The Debtors' motion for
authority to perform under the terms of that waiver is scheduled for an October 25, 2007 hearing. On October

E.    The Debtors' Plan Of Reorganization

13.    By filing the Plan and related Disclosure Statement on September 6, 2007, the Debtors reached another key milestone in their chapter 11 cases.  The Plan is based upon a series of global settlements and compromises that involve every major constituency in the Debtors' reorganization cases.  A hearing on the Debtors' solicitation procedures and Disclosure Statement commenced on October 3, 2007 and is scheduled to continue on October 25, 2007.  If this Court authorizes the Debtors to solicit acceptances or rejections of the Plan (as such Plan may be modified) by October 31, 2007, the Debtors expect to confirm their Plan and commence the rights offering contemplated by the Plan in December 2007 and emerge from chapter 11 as soon as practicable thereafter.  Currently, the Debtors expect to emerge from these chapter 11 cases by January 2008.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.    By this Motion, Delphi and the selling Debtor entities described in the agreement (the "Selling Debtor Entities")[10] seek approval for the sale of the Interiors and

---

4, 2007, the IRS, at Delphi's request, further modified the conditions to the initial waivers so that they are generally consistent with the conditions to the most recent waiver.

[10]    Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC ("DAS LLC"), Delphi Automotive Systems (Holdings) Inc., and Delphi Technologies, Inc.  Certain assets would be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."  For the purpose of convenience, references to the "Sellers" herein (including in all exhibits)

8

Closures Businesses to Inteva Products, LLC ("Inteva") and certain of its affiliates (the "Buyers"),[11] subject to additional competitive bidding pursuant to the proposed Bidding Procedures.  To effect the sale, the Selling Debtor Entities seek two types of relief.  First, at the omnibus hearing to be held on October 25, 2007, the Selling Debtor Entities will seek entry of an order substantially in the form attached hereto as <u>Exhibit B</u> (the "Bidding Procedures Order") approving the Bidding Procedures, Notice Procedures, and certain bid protections to be provided to the Buyers pursuant to the Agreement and as described more fully herein.  Second, subject to the terms of the Bidding Procedures Order, at the omnibus hearing to be held on _____, the Selling Debtor Entities will seek entry of an order substantially in the form attached hereto as <u>Exhibit C</u> (the "Sale Approval Order") authorizing and approving the Sale to the Buyers or the Successful Bidder, as the case may be, including, without limitation, the assumption and assignment of the Assumed U.S. Contracts to the Buyers, and the assumption by the Buyers of the Assumed Liabilities.

<u>Basis For Relief</u>

16.    The Company has stated that to achieve the necessary cost savings and operational effectiveness envisioned in its transformation plan, it must streamline its product portfolio to capitalize on its world-class technology and market strengths and make the necessary manufacturing realignment consistent with its new focus.  As part of the Company's transformation plan, the Company identified the Interiors and Closure Systems Businesses as non-core businesses subject to disposition.

---

means, as the context requires, (i) the Selling Debtor Entities to the extent such reference implicates assets of the Selling Debtor Entities or (ii) non-Debtor affiliates to the extent such reference implicates assets of the non-Debtor affiliates.  Moreover, for convenience, use of the term "Selling Debtor Entities" means as the context requires, the specific Debtor entity undertaking the transaction(s) referenced to the extent such transaction affects the assets of such entity.

[11]    This Motion will refer to Inteva Products LLC., together with any affiliates it identifies in Schedule 1 of the Agreement, as the "Buyers," or to any of them individually as a "Buyer."

17.    Accordingly, following extensive marketing efforts, on October 15,

2007, the Sellers and the Buyers entered into a Master Sale and Purchase Agreement, a copy of

which is attached hereto as Exhibit D (the "Agreement").  The Agreement contemplates a

global divestiture of the Company's Company's Interiors and Closures Businesses and Closures

Businesses to the Buyers for the Purchase Price of $106 million, which is comprised of the

preliminary purchase price of approximately $80 million, subject to certain adjustments (the

"Preliminary Purchase Price"), and the Post-Closing Payments of approximately $26 million.[12]

The divestiture, as memorialized in the Agreement, contemplates that certain of the assets will

be sold by Delphi non-Debtor affiliates.  The transactions to be undertaken by the Delphi non-

Debtor affiliates, although memorialized in the Agreement and the attachments thereto, are

generally not the subject of this Motion because those entities are not under the supervision of

this Court.  The discussion in this Motion is generally (but not exclusively) limited to

transactions to be undertaken by the Selling Debtor Entities, which require Court approval.

F.    The Interiors And Closures Businesses

18.    Collectively, the Interiors and Closures Businesses serve a number of

vehicle manufacturers ("VMs") through a global footprint that includes manufacturing

operations in the U.S., Mexico, Austria, Germany, China, and South Korea.  The Interiors and

Closures Businesses generate annual revenue of approximately $1.3 billion.

19.    The Interiors Business is a leading provider of instrument panels,

consoles, and cockpits to VMs in North America.  The Interiors Business has grown from a

---

[12]    In addition to the Preliminary Purchase Price, on each of the first, second, third, fourth, and fifth anniversaries
of the closing date, Inteva would pay $1 million to DAS LLC.  On the first business day following the earliest
of: (i) the business day immediately following the fifth anniversary of the closing date and (ii) the date Buyers
sell substantially all of the ownership interests in the Interiors and Closures Businesses and the joint ventures
being sold under the Agreement (a sale to an unrelated third party of 80% or more of the equity of Inteva
would be deemed to be a sale of such assets), Inteva would pay $21 million to DAS LLC (the "Post-Closing
Payment").

10

captive GM supplier to the estimated third-largest cockpit and interior systems manufacturer in

North America with a diverse customer base. The Interiors Business succeeds based on its

expertise in design and development of interiors and cockpit technologies, its excellence in

manufacturing and logistics, and its experienced, focused management team.

         20.     The Interiors Business comprises two product lines – instrument panels

("IPs") and consoles (the "IP Product Line") and cockpits (the "Cockpits Product Line").

Capable of design, development, test, validation, and design integration engineering services,

the IP Product Line currently has the capacity to produce more than 3.3 million IPs and more

than 700,000 consoles per year. The IP Product Line operates in four manufacturing plants

(Vandalia, Ohio; Adrian, Michigan; Gadsden, Alabama; and Matamoros, Mexico).

         21.     The Cockpits Product Line provides engineering design integration

services and assembles finished cockpits that are delivered sequenced to VM final assembly

plants. Production of cockpits involves the integration and assembly of components including

instrument panels, floor consoles, instrumentation, steering wheels, IP structure, heating,

ventilation, and air-conditioning ("HVAC") systems, occupant protection systems, audio

components, and electrical wiring. The Cockpits Product Line currently has the capacity to

produce more than 500,000 cockpits and consoles per year. The Cockpits Product Line

operates in three manufacturing plants (Cottondale, Alabama; North Kansas City, Missouri;

and Orion, Michigan).

         22.     The Closures Business is a leading provider of vehicle latches (the

"Latch Product Line") and door modules (the "Door Module Product Line") to VMs

worldwide. Similar to the Interiors Business, the Closures Business has grown from a captive

GM supplier to a global, diverse business that is the second-largest latch manufacturer both in

11

North America and globally and a leading producer of integrated door module systems. The

Closures Business has successfully produced more than 29 million individual door systems.

Central to the Closures Business' success is its expertise in design and development of latching

and door module technologies, its excellence in competitive manufacturing and logistics, and

its experienced, focused management team. The Closures Business is one of the few

businesses capable of supporting VMs in all aspects of production, from initial conception and

design development through validation and program launch.

        23.      The Latch Product Line manufactures and produces passenger and

commercial vehicle latching systems, including systems for vehicle doors, rear compartments,

and tailgates. The Latch Product Line has produced more than one billion latches and

currently manufactures more than 22 million latches per year. Currently, the Latch Product

Line operates in four manufacturing plants (Columbus, Ohio; Matamoros, Mexico; Shanghai,

China; and Kyungsan, South Korea) and three technical centers (Troy, Michigan; Juarez,

Mexico; and Wuppertal, Germany).

        24.      The Door Module Product Line produces highly integrated door

modules that combine latching, window lift systems, audio, occupant protection, and other

components. Such products can be assembled directly into vehicles in final assembly plants.

The Door Module Product Line provides a range of products to global VMs, from simple

window controls to complete door modules. The product line currently produces more than two

million door modules per year. The Door Module Product Line operates in five

manufacturing plants (Columbus, Ohio; Vandalia, Ohio; Grosspetersdorf, Austria; Woerth,

Germany; and Shanghai, China) and is supported by two technical centers (Troy, Michigan and

Wuppertal, Germany).

G.    Factors Leading To The Sale

25.    Although the Company believes that the Interiors and Closures Businesses are fundamentally strong, neither business fits within the Company's anticipated product portfolio under its transformation plan.  In particular, the Company has determined, after an intensive product portfolio review, that the Interiors and Closures Businesses are outside the primary focus of the Company's growth and long-term strategic goals.

26.    The Company believes, however, that as standalone businesses, the Interiors and Closures Businesses could become more profitable and competitive.  The Company has therefore determined that the value of the Interiors and Closures Businesses would be maximized through their divestiture.  To achieve that goal, while balancing the needs of its customers, the Company is seeking to sell the Interiors and Closures Businesses to a buyer.  The Company, including its Selling Debtor Entities, will carefully manage the transition of the Interiors and Closures Businesses and the Sale will be completed in coordination with the Company's customers, employees, unions, and other stakeholders.

27.    The Company has actively marketed the Interiors and Closures Businesses for over one year.  As part of this process, the Company identified several potential purchasers for the Interiors Business, the Closures Business, or both, and provided those parties with access to information about the Interiors and/or Closures Businesses.

28.    The Sellers evaluated the terms and benefits of the proposals, as well as the benefits of other alternatives to divesting the Interiors and Closures Businesses.  In their business judgment the Sellers concluded that the proposal from the Buyers, which formed the basis of the Agreement, offered the most advantageous terms and the greatest economic benefit.  This decision was based in part on the Sellers' ability to maximize the value of the

13

business line as a going concern and their belief that the Buyers would continue to provide

quality products to the Company's customers, many of whom buy other products from Delphi.

Inteva is a wholly owned subsidiary of The Renco Group, Inc. ("Renco").  Renco is a private

diversified investment holdings company with a broad portfolio of operating companies and

financial investments.  Renco holds interests in a number of companies in the mining,

automotive, magnesium, steel, metals fabrication, and material handlings industries.  Operating

companies in which Renco holds an interest include AM General, US Magnesium, Doe Run

Resources, Unarco Material Handling, and Baron Drawn Steel.  Renco affiliates generate in

excess of $3.5 billion in revenue.

H.    <u>The Agreement</u>

29.    Pursuant to the Agreement, (a) the Selling Debtor Entities would (i) sell

the Purchased Assets owned by the Selling Debtor Entities free and clear of any Interests

and/or Claims,[13] except for Permitted Encumbrances as defined in the Agreement, in

consideration for their allocated share of the Purchase Price of $106 million, subject to

adjustments and other consideration, and (ii) assume (if applicable) and assign the Assigned

Contracts to the Buyers and (b) the Buyers will assume the Assumed Liabilities.

---

[13]    "Interests and/or Claims" means any and all liens, claims, interests, and encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Buyer's interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Interiors and Closures Businesses prior to the Closing Date, including the transfer of the Purchased Assets to the Buyers.

30.    The significant terms of the Agreement are as follows:[14]

(a)    General Terms.  The Buyers would acquire the Purchased Assets, which comprise substantially all of the assets primarily used by the Interiors and Closures Businesses through an asset sale (other than the certain assets expected to be excluded), including real property, personal property, inventory, contracts, administrative assets, permits, certain intellectual property, licensed intellectual property, and certain documented technical information, and software pertaining to the design or manufacture of the Interiors and Closures Businesses' products.

(b)    Bankruptcy Court Approval.  The Sale of the Purchased Assets would be subject to approval by this Court and competitive bidding pursuant to the Bidding Procedures.

(c)    Documentation.  The Sale would be effected pursuant to the Agreement and related documentation.[15]  At the closing,[16] certain of the Sellers and certain of the Buyers would enter into, among others, the following ancillary agreements (collectively, the "Ancillary Agreements"):[17] (i) the Patent Assignment; (ii) the Trademark Assignment, (iii) the Mexico Asset Sale Agreement, (iv) the China Share Transfer Agreement, (v) the Korea Share Transfer Agreement, (vi) the Austria Asset Sale Agreement, (vii) the Germany Asset Sale Agreement, (viii) the Transition Services Agreement, (ix) the Bills of Sale (or mutually agreed invoices), (x) the Assignment and Assumption Agreements, (xi) the Vandalia Manufacturing Services Agreement, (xii) the Grosspetersdorf Manufacturing Services Agreement, (xiii) the Columbus Manufacturing Services Agreement, (xiv) the Adrian HVAC Excluded Product Manufacturing Services Agreement, (xv) the Vandalia Lease, (xvi) the Troy Technical Center Sublease, (xvii) the Mexico Shared Substation Services Agreements, and (xviii) the Mexico Shared Wastewater Treatment Plant Services Agreement.  The Ancillary Agreements would be delivered to Sellers on terms reasonably satisfactory to Sellers on or before the closing and would be performed in all material respects.

(d)    Purchase Price.  The Purchase Price to be paid by the Buyers to the Sellers would be $106 million, which would be comprised of the Preliminary Purchase Price of $80 million, subject to adjustments, and the Post-Closing Payment of $26 million.

(e)    Deposit Escrow.  Immediately upon the Buyers' receipt of notice from the Sellers of Board Approval (defined below), the Buyers would deliver to the escrow agent $2 million that would be held as an earnest money deposit (such amount, together with the

---

[14]    In the event of any discrepancy between the Agreement and this summary, the provisions of the Agreement control.  Although the terms and conditions are generally the same for all the Sellers, the summaries in this Motion refer generally to the Selling Debtor Entities and not the non-Debtor Sellers.

[15]    Copies of the schedules to the Agreement and the Ancillary Agreements (as defined above) are available upon request to parties-in-interest who execute a confidentiality agreement acceptable to the Debtors and who show that they would be affected by the relief requested in this Motion.

[16]    The Selling Debtor Entities anticipate that the sale would close in the first half of 2008.

[17]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement.

15

interest accrued thereon prior to closing, the "Deposit Amount").  Upon closing, the Sellers would be entitled to apply the Deposit Amount to the Preliminary Purchase Price.  Upon any material breach by the Buyers that the Buyers fail to remedy in accordance with the terms of the Agreement or the Bidding Procedures (defined below) and that results in termination of the Agreement, the Sellers would be entitled to retain the Deposit Amount.  In the event that the Agreement is terminated for a reason other than a material breach by the Buyers, then, on: (i) the date which would be ten days after such termination or (ii) in the event that an Alternative Transaction (defined below) is completed, the Return Date (defined below) (whichever would be earlier), the Sellers' and the Buyers' representatives would jointly instruct the agent holding the Deposit Amount in escrow to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Buyers' representative in the Deposit Escrow Agreement, to be retained by Buyers.

   (f) <u>Representations And Warranties</u>.  Pursuant to the Agreement, the Selling Debtor Entities would provide representations and warranties relating to the Sale and the Purchased Assets and the Buyers would provide representations and warranties generally standard in a transaction of this type.  The representations and warranties of the Selling Debtor Entities would not survive the closing.  The representations and warranties of the Buyers would survive for a period of eighteen months following the closing.

   (g) <u>Covenants</u>.  Except as otherwise disclosed in the Agreement, between the date of signing the Agreement and the closing, the Selling Debtor Entities would be required to refrain from doing any of the following, among other things, without prior written consent of the Buyers (which consent would not be unreasonably withheld): (i) purchase or sell any capital stock or other equity interests of either Shanghai Delphi Automotive Door Systems, Co., Limited or KDS Company, Ltd. (the "JV Companies") or grant or make any option, subscription, warrant, call, commitment or agreement of any character in respect of any such capital stock or other equity interests, or permit any JV Company to incur any debt obligations or make any loan outside the ordinary course of business, except that this would not limit the ability of any JV Company to pay cash dividends or distributions of Net Cash to the Sellers between the date of the Agreement and the closing as long as a JV Company complies with all applicable laws (including liquidity requirements), (ii) sell or otherwise dispose of Acquired Assets, excluding sales of tooling to customers, sales of inventory and sales of receivables to financial institutions or credit collection agencies, in each case in the ordinary course of business, (iii) incur, assume, or guarantee any debt obligation that would become an Assumed Liability, (iv) incur any encumbrance on any material Acquired Assets, in each case other than the Permitted Encumbrances as defined in the Agreement, (iv) except as required by any written contract in effect on the date of the Agreement or as required by law, with respect to any U.S. employee or non-U.S. employee of the Interiors and Closures Businesses:  (A) adopt or, except to comply with applicable law, amend any Seller employee benefit plan, (B) increase in any manner (including the acceleration of vesting or payment of a payment or benefit) the compensation, employee benefits, or fringe benefits of any U.S. employees or non-U.S. employees, or (C) enter into any new, or amend any existing, collective bargaining agreement or similar agreement with respect to any U.S. employees or non-U.S. employees, (v) make any material change in the accounting methods or practices followed by the Interiors and Closures Businesses (other than such changes that are required by law or GAAP), (vi) make any election relating to taxes, enter into any closing agreement

16

relating to taxes, settle any claim or assessment relating to taxes or consent to any claim or assessment relating to taxes or any waiver of the statute of limitations for any such claim or assessment that could affect the Buyers or the Interiors and Closures Businesses, or could give rise to or increase the Assumed Liabilities or the excluded liabilities as set forth in the Agreement, (vii) terminate or make any material amendment to a material contract, or waive any material right thereunder, (viii) amend any organizational document of any JV Company if the Seller selling the securities has a right to veto any such amendment, (ix) fail to maintain insurance in a manner consistent with Sellers' past practice, (x) disclose any secret or confidential intellectual property (except by way of issuance of a patent or in the ordinary course of business (A) under customer purchase order terms that do not accept supplier information as confidential or (B) under confidentiality agreements entered into on customary terms with other third parties or allow any patent  or trademark registration to lapse or become abandoned (except in the ordinary course of business), (xi) allow any permit relating to the Interiors and Closures Businesses to lapse or fail to renew any such permit, (xii) agree or commit to do any of the foregoing, or (xiii) take any action that causes any JV Company to take any action or to fail to take any action as is proscribed under section 6.1 of the Agreement with respect to the business, assets, or liabilities of such JV Company, as applicable.  For a period of five years after the closing, the Selling Debtor Entities would be required not to take certain actions which would compete with the Interiors and Closures Businesses.

(h)     Indemnity.  Under the Agreement, certain of the Sellers would be obligated to indemnify the Buyers on account of any claims asserted against the Buyers as a result of, or arising out of, (i) certain retained liabilities, (ii) the breach of any representation or warranty of the Sellers contained in the Agreement, subject to certain exceptions, or (iii) the breach of any covenant or agreement of the Sellers contained in the Agreement.  The Sellers agree that they would not seek to estimate these indemnity claims.

(i)     Closing Conditions. In addition to certain other customary closing conditions relating to bankruptcy court approvals and regulatory matters (including certain competition filings), the obligation of the Buyers to close the Sale would be subject to the satisfaction of the following conditions: (i) the Sellers' receipt of any required consent and waiver of any right of first refusal from the partner in each JV Company to the Sellers' sale of certain sale securities pertaining to the JV Companies, (ii) the substantial completion of certain separation activities, (iii) the Buyers' entering into a supply agreement with GM (the "GM Agreement"), (iv) the Buyers' entering into an agreement with the UAW (the "UAW Agreement"), (v) the Buyer's entering into an agreement with the IUE-CWA (the "IUE-CWA Agreement"), and (vi) Delphi's approval of the Sale by its Board of Directors on or before October 17, 2007 (the "Board Approval").

(j)     Termination.  The Agreement could be terminated in the following circumstances by a party which is not in breach of the Agreement: (i) upon mutual written consent of Delphi on behalf of the Sellers and Inteva on behalf of the Buyers, (ii) by either the Sellers or the Buyers if consummation of the Sale would violate any final non-appealable order of any regulatory governmental entity (other than this Court), (iii) by either party, if the Sellers consummate an Alternative Transaction (defined below), (iv) by either party, if this Court has not entered a Sale Approval Order on or before 120 days after the date of the

17

Agreement, or if such Sale Approval Order, as of the date that is 120 days after the date of the Agreement, is subject to a stay or injunction, (v) by either party if closing does not occur within 120 days after entry of the Sale Approval Order for any reason other than failure to obtain regulatory approvals, (vi) by the Buyers upon a material breach of the Agreement by Sellers that cannot be cured within 30 days of receiving notice of such breach or the occurrence of an event that results in a material adverse effect to the Interiors and Closures Businesses,[18] (vii) by the Sellers upon a material breach of the Agreement by Buyers that cannot be cured within 30 days of receiving notice of such breach, or (viii) by either party if the Board Approval is not received.

(k)    Break-up Fee.  Subject to Court approval and certain exceptions, in the event that the Sellers sell, transfer, lease, or otherwise dispose of all or a material portion of the Interiors and Closures Businesses or the Acquired Assets in a transaction or a series of related transactions with a party other than the Buyers (an "Alternative Transaction") within 12 months after termination of the Agreement, then in any such event, the Sellers (on a pro rata basis, based on the allocation of the purchase price paid in the Alternative Transaction) would, upon consummation of the Alternative Transaction, pay the Buyers an amount equal to the lesser of (i) $2.4 million or (ii) three percent of the post-termination Alternative Transaction purchase price (the "Post-Termination Alternative Transaction Purchase Price"). The Post-Termination Alternative Transaction Purchase Price means the purchase price received upon consummation of a Sale with another purchaser within 12 months following termination of the Agreement in any circumstance where Expense Reimbursement (as defined below) is payable to the Buyers and the purchase price received upon consummation of such Alternative Transaction is equal to or greater than 80% of the Preliminary Purchase Price set forth in the Agreement (collectively with paragraph 28(k)(i) above, the "Break-Up Fee").  If the Break-Up Fee is paid under paragraph 28(k)(ii) above, the Sellers would also be entitled to receive the Expense Reimbursement.  The Break-Up Fee, however, would not be paid if (y) the Buyers are in material breach of the Agreement or the Bidding Procedures or (z) the Agreement was terminable because the Sale would violate any final non-appealable order of any regulatory governmental entity. Buyers would not be entitled to the Break-Up Fee if the closing does not occur because of the Buyer's failure to enter into the GM Agreement, the UAW Agreement, or the IUE-CWA Agreement.

(l)    Expense Reimbursement.  Subject to Court approval and certain exceptions, the Sellers would be required to reimburse the Buyers' reasonable, actual out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the Agreement in an amount not to exceed $250,000, which is approximately 0.2% of the Purchase Price  (the "Expense Reimbursement"), generally upon termination of the Agreement unrelated to an Alternative Transaction, other than in a circumstance (i) in which the Buyers are in breach of the Agreement for which the Sellers had previously notified the Buyers or (ii) in the case of regulatory approvals, in which the event giving rise to termination would not relate solely to the status, actions, or conduct of the Sellers.

---

[18]    For purposes of this provision, the Selling Debtor Entities' will obtain waivers by the UAW and the IUE-CWA of any "no sale" provisions contained in any of the Selling Debtor Entities' collective bargaining agreements.

(m)    Transfer Taxes.  The Selling Debtor Entities and the Buyers would use commercially reasonable efforts and cooperate in good faith to exempt the Sale from any sales taxes, documentary and stamp taxes, transfer, documentary, sales, use, registration, recording, stamp, use, gross receipts, excise, value-added, and other such taxes and related fees ("Transfer Taxes") as may be payable in connection with the Sale.  In the event that an exemption(s) is unavailable, the Buyers would be liable for and pay all Transfer Taxes arising out of or incurred in connection with the Agreement.

I.    Allocation Of Purchase Price

31.    As noted above, some of the Purchased Assets are being sold by certain non-Debtor affiliates.  The allocation of the Purchase Price among the Selling Debtor Entities and the non-Debtor Sellers is set forth in the chart attached to the Agreement.

J.    Workforce Provisions

32.    Pursuant to the Agreement, the Buyers generally would offer employment to all but five of the Selling Debtor Entities' salaried employees (excluding inactive salaried employees) who primarily support the Interiors and Closures Businesses, including (i) all salaried employees at the facilities in Adrian, Michigan, Gadsden, Alabama, and Cottondale, Alabama and (ii) salaried employees who primarily support the Interiors and Closures Businesses at the facilities in Vandalia, Ohio and Troy Michigan.  The Buyers' offer of employment would include salary and benefits packages that are substantially comparable in the aggregate to those in place immediately prior to closing.  For such salaried employees of the Selling Debtor Entities, the Buyers would maintain the requisite level of compensation and benefits for a minimum of 12 months following the closing (unless such employee's term is otherwise governed by an employee contract).

33.    For all of the Selling Debtor Entities' hourly employees, the Buyers' offer of employment would be on the same terms and at the same level of compensation and

19

benefits as were in effect immediately prior to closing.[19]  Along those lines, the Buyers would

assume the terms and conditions of the domestic collective bargaining agreements, as they may

be modified by mutual agreement of the Buyers and the respective union, applicable at the

Cottondale, Alabama; Adrian, Michigan; and Gadsden, Alabama facilities.  However, the

Buyers would not assume any obligation or liabilities under the Seller employee benefit plans

referred to in such collective bargaining agreements but rather will establish Buyer-sponsored

employee benefit plans which comply with the terms and conditions of the domestic collective

bargaining agreements.  The Buyers would recognize the seniority status of the transferred

hourly employees who are employed in accordance with a domestic collective bargaining

agreement for all purposes of continued employment with the Buyers.

34.     The Selling Debtor Entities would retain responsibility for all workers'

compensation liability related to injuries or illness incurred prior to closing by domestic

employees transferred to the Buyers, provided that such claims are filed within 12 months of

closing.  Regardless of the vesting date, the Sellers would be responsible for vacation pay,

profit sharing, and incentive compensation for any employees transferred to the Buyers due for

the calendar year in which the closing occurs on a pro-rata basis.

35.     The Buyers would offer participation and eligibility for benefits under

the Buyers' benefit plans to transferred employees as of the closing.  The Buyers would

recognize the pre-closing credited service for the transferred salaried employees of the Selling

Debtor Entities for eligibility and vesting purposes but not benefit accrual purposes, provided

---

[19]   Potential bidders should note that certain benefit treatment in the Agreement is intended to effect assumption
of the CBAs and, to the extent subject to assumption, these issues remain subject to the parties' rights and
obligations related to bargaining with the UAW.

that such recognition does not cause a duplication of compensation or benefits as between the

Selling Debtor Entities and the Buyers.

36.    The Buyers would not provide the Selling Debtor Entities' salaried

employees with a defined benefit plan, but would provide a defined contribution plan.  The

Selling Debtor Entities would retain all assets and liabilities under their defined benefit pension

plan for the benefits accrued prior to closing for any of their transferred salaried employees.

37.    The Buyers would be responsible for all obligations and liabilities

relating to any claims for services, termination, redundancy, change in control agreements, or

other payments or benefits by the transferred employees of the Selling Debtor Entities arising

from the transactions contemplated by the Agreement and based on the Buyers' actions

following the closing.

K.    Bidding Procedures

38.    The Sale of the Interiors and Closures Businesses would be subject to

higher or otherwise better offers pursuant to the Bidding Procedures.  The Selling Debtor

Entities believe that the proposed structure of the Bidding Procedures is the one most likely to

maximize the realizable value of the Interiors and Closures Businesses for the benefit of the

Sellers, including the Selling Debtor Entities and their estates, their stakeholders, and other

interested parties.  Accordingly, the Selling Debtor Entities seek approval of the Bidding

Procedures for the Sale of the Interiors and Closures Businesses.

39.    The Bidding Procedures describe, among other things, the assets

available for sale, the manner in which bidders and bids become "qualified," the coordination

of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of

any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s),

and this Court's approval thereof (collectively, the "Bidding Process").

21

40.    The proposed Bidding Procedures attached hereto as <u>Exhibit A</u> provide,

in relevant part, as follows:[20]

(a)    <u>Participation Requirements</u>:  To ensure that only bidders with financial ability and a serious interest in the purchase of the Purchased Assets participate in the Bidding Process, the Bidding Procedures provide for certain requirements for a potential bidder to become a "Qualified Bidder":  (i) executing a confidentiality agreement in form and substance satisfactory to the Sellers, (ii) providing the Sellers with certain financial assurances, including current audited financial statements or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Sellers and their financial advisors as to such bidder's ability to close, and (iii) submitting a preliminary proposal reflecting (A) the purchase price range, (B) any Purchased Assets expected to be excluded, (C) the structure and financing of the transaction, (D) any anticipated regulatory approvals, (E) the anticipated time frame and any anticipated impediments to obtaining such approvals, (F) any additional conditions to closing the qualified bidder may wish to impose, and (G) the nature and extent of any due diligence the qualified bidder may wish to conduct and the date by which such due diligence would be completed.

(b)    <u>Due Diligence</u>:  All Qualified Bidders would be afforded an opportunity to participate in the diligence process.  The Sellers would coordinate the diligence process and provide due diligence access and additional information as reasonably requested by any Qualified Bidders.  Except as otherwise stated in the Agreement, due diligence would not continue after the Bid Deadline (defined below).

(c)    <u>Bid Deadline</u>:  All bids would have to be received not later than 11:00 a.m. (prevailing Eastern time) by November 26, 2007 (the "Bid Deadline").  The Sellers could extend the Bid Deadline once or successively, but would not be obligated to do so.

(d)    <u>Bid Requirements</u>:  All bids would be required to include the following documents: (i) a letter stating that the bidder's offer would be irrevocable for the period set forth in the Bidding Procedures, (ii) an executed copy of the Agreement, together with all schedules, marked to show amendments and modifications to the agreement, purchase price, and proposed schedules, (iii) a good faith deposit in an amount equal to 2.6% of the Preliminary Purchase Price, but which would in no event be less than the Deposit Amount, and (iv) satisfactory written evidence of a commitment for financing or other ability to consummate the proposed transaction.

(e)    <u>Qualified Bids</u>: To be deemed a "Qualified Bid," a bid would be required to be received by the Bid Deadline and, among other things, would be required to (i) be on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more

---

[20]    In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Bidding Procedures.

22

burdensome or conditional to the Sellers than, those contained in the Agreement, (ii) have a value greater than the purchase price reflected in the Agreement, plus the amount of the Break-Up Fee, plus $1,000,000, (iii) not be contingent on obtaining financing or the outcome of unperformed due diligence, (iv) not be conditioned on (A) bid protections, other than the bidding increments contemplated in the Bidding Procedures or (B) such bid being deemed the Successful Bid (as defined below) by the Sellers, (v) contain acknowledgements and representations that the bidder (A) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, (B) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its bid, and (C) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the marked agreement, and (vi) include a commitment to consummate the purchase or the Purchased Assets immediately upon completion of all closing conditions within Sellers' reasonable control, which may as early as 15 days after entry of the Sale Approval Order, or in the case of any governmental approvals, 60 days after entry of such order.  The Sellers would retain the sole right to deem a bid a Qualified Bid even if such bid does not conform to one or more of the bid requirements described herein.  Notwithstanding the foregoing, the Buyers would be deemed a Qualified Bidder, and the Agreement would be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale.  A Qualified Bid would be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than the Agreement would be referred to as a "Subsequent Bid."

(f)    <u>Conduct Of Auction</u>: If the Sellers receive at least one Qualified Bid in addition to that of the Buyers, they would conduct an auction (the "Auction") of the Purchased Assets at 10:00 a.m. (prevailing Eastern time) on December 6, 2007 or such later time as the Sellers notify all Qualified Bidders who have submitted Qualified Bids in accordance with the procedures outlined in the Bidding Procedures, which include: (i) attendance at the Auction would be limited to specified parties as outlined in the Bidding Procedures, (ii) at least two Business Days prior to the Auction, each Qualified Bidder with a Qualified Bid would inform the Sellers whether it intends to participate in the Auction and at least one Business Day prior to the Auction, the Sellers would provide such bidders and the UAW with copies of the Qualified Bid which the Sellers then believe would be the highest or otherwise best offer for the Purchased Assets, (iii) all Qualified Bidders would be entitled to be present for all Subsequent Bids, and (iv) bidding at the Auction would begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $1,000,000, and conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids.

(g)    <u>Selection Of Successful Bid</u>:  As soon as practicable after the conclusion of the Auction, the Sellers, in consultation with their advisors, would review each Qualified Bid and identify the highest or otherwise best offer for the Purchased Assets (the "Successful Bid") and the bidder making such bid (the "Successful Bidder").  The Sellers would sell the Purchased Assets for the highest or otherwise best Qualified Bid to the

Successful Bidder upon the approval of such Qualified Bid by this Court after the Sale Hearing.

(h)    Sale Hearing: The Selling Debtor Entities request that the Sale Hearing be scheduled for _____ at 10:00 a.m. (prevailing Eastern time) and that the Sale Hearing could be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing.[21]  If no Qualified Bid other than that of the Buyers is received, the Sellers would proceed with the sale of the Purchased Assets to the Buyers, pursuant to the terms of the Agreement, as it may be modified by the Sale Approval Order, following entry of such order.  If the Sellers receive additional Qualified Bids, then at the Sale Hearing, the Selling Debtor Entities could seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder").  A bid would not be deemed accepted by the Sellers unless and until approved by this Court.  Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Sellers would be permitted to effectuate a sale to the Alternate Bidder without further order of this Court.

(i)    Return Of Good Faith Deposits:  Good faith deposits of all Qualified Bidders (except for the Successful Bidder) would be held in an interest-bearing escrow account and all Qualified Bids would remain open until two business days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the good faith deposit submitted by the Successful Bidder, together with interest thereon, would be applied against the payment of the purchase price upon closing of the Sale to the Successful Bidder. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder would forfeit its good faith deposit, and such good faith deposit would irrevocably become the property of the Sellers.  On the Return Date, the Sellers would return the good faith deposits of all other Qualified Bidders, together with the accrued interest thereon.

(j)    Reservation Of Rights:  The Sellers, after consultation with the agents for its secured lenders' and the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time, any bid (other than the Buyers' initial bid) that is:  (A) inadequate or insufficient, (B) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (C contrary to the best interests of the Sellers, including the Selling Debtor Entities, their estates, and their stakeholders as determined by the Selling Debtor Entities in their sole discretion.

L.    Bid Protections

41.    At various times over the course of the last year, the Buyers have

expended, and likely would continue to expend, considerable time, money, and energy

---

[21]    The Sale Hearing would be set for a date at least six business days after the Auction.  The Selling Debtor Entities will notify parties-in-interest of the Sale Hearing Date under the Notice Procedures described herein.

24

pursuing the purchase of the Interiors and Closures Businesses.  Moreover, the Buyers have

engaged in extended arm's length and good faith negotiations regarding a possible sale.  The

Buyers are not "insiders" of any of the Debtors as that term is defined in section 101(31) of the

Bankruptcy Code.  The Agreement is the culmination of these efforts.

42.    In recognition of this expenditure of time, energy, and resources, the

Selling Debtor Entities have agreed to provide certain bid protections to the Buyers (the "Bid

Protections").  Specifically, the Agreement provides for, and the Selling Debtor Entities

respectfully request that this Court approve, a Break-Up Fee payable by the Sellers to the

Buyers in the amount not to exceed $2.4 million, which is approximately 3% of the

Preliminary Purchase Price and 2.3% of the Purchase Price (includes Post-Closing Payments),

if the Sellers, with certain exceptions, consummate an Alternative Transaction.

43.    In addition, the Selling Debtor Entities respectfully request this Court's

approval of the term in the Agreement providing for reimbursement of the Buyers' reasonable,

actual out-of-pocket fees and expenses incurred in connection with the transactions

contemplated by the Agreement, in an amount not to exceed $250,000, which is 0.2% of the

Purchase Price under certain circumstances.

44.    If the Buyers become entitled to receive any Break-Up Fee or Expense

Reimbursement, then such Break-Up Fee or Expense Reimbursement would be the sole and

exclusive remedy of the Buyers, whether at law or in equity, for any breach by Delphi or any

of its affiliates of the terms and conditions of the Agreement or the Deposit Escrow

Agreement.

45.    The Bid Protections were a material inducement for, and a condition of,

the Buyers' entry into the Agreement.  The Sellers believe that the Bid Protections are fair and

25

reasonable in view of (a) the intensive analysis, due diligence investigation, and negotiation

undertaken by the Buyers in connection with the Sale and (b) the fact that the Buyers' efforts

have increased the chances that the Sellers would receive the highest or otherwise best offer for

the Purchased Assets.

46.    The Buyers are unwilling to commit to hold open their offer to purchase

the Purchased Assets under the terms of the Agreement without the approval of the Bid

Protections and the Bidding Procedures Order.  Thus, absent entry of the Bidding Procedures

Order and approval of the Bid Protections, the Sellers would lose the opportunity to obtain

what they believe to be the highest and best offer for the Purchased Assets.

47.    Moreover, payment of the Break-Up Fee would not diminish the Selling

Debtor Entities' estates.  The Sellers would not expect to pay the Break-Up Fee unless they do

so to accept an alternative Successful Bid, which must exceed the price offered by the Buyers

by an amount sufficient to pay the Break-Up Fee.  The Expense Reimbursement is a necessary

cost of obtaining a binding commitment from the Buyers for the sale of the Interiors and

Closures Businesses.  The Selling Debtor Entities thus request that this Court authorize

payment of the Bid Protections pursuant to the terms and conditions of the Agreement.

M.    Assumption And Assignment Of Contracts

48.    The Selling Debtor Entities seek authority under section 365 of the

Bankruptcy Code to assume and assign the Assumed U.S. Contracts to the Buyers or the

Successful Bidder, as the case may be.  The approximate cost to cure the Assumed U.S.

Contracts related to (i) the Interiors Business is $3,023,017 and (ii) the Closures Business is

$8,111,724.  With respect to the Assumed U.S. Contracts, at least 20 days prior to the Sale

Hearing, the Selling Debtor Entities propose to file with this Court and serve on each non-

Debtor party to an Assumed U.S. Contract a cure notice substantially in the form attached

26

hereto as <u>Exhibit E</u> (the "Cure Notice").  The Cure Notice would state, with respect to the

Assumed U.S. Contracts, the cure amount that the Selling Debtor Entities believe is necessary

to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure

Amount") and would notify each party that such party's lease or contract would be assumed

and assigned to the Buyers to be identified at the conclusion of the Auction.  In addition, such

Cure Amounts would be listed on a schedule to the Sale Approval Order.  In connection with

the proposed Sale, the Selling Debtor Entities also seek authority under section 363 of the

Bankruptcy Code to assign the Post-Petition Contracts to the Buyers or the Successful Bidder,

as the case may be.  There are no past due obligations under the Post-Petition Contracts.

49.     The Debtors propose that any objection to the Cure Amount would be

required to be filed within ten days of the date of the Cure Notice and served as set forth in the

Cure Notice.  Any objection to the Cure Amount would be required to state with specificity

what cure amount the party to the Assumed U.S. Contract believes is required, including

appropriate documentation thereof.  If no objection is timely received, the Cure Amount set

forth in the Cure Notice would be controlling notwithstanding anything to the contrary in any

Assumed U.S. Contract or other document, and the non-Debtor party to the Assumed U.S.

Contract would be forever barred from asserting any other claims against the Selling Debtor

Entities, the Buyers, or the Successful Bidder (as appropriate) or the property of any of them,

as to such Assumed U.S. Contract.

50.     In addition, at least 20 days prior to the Sale Hearing, the Selling Debtor

Entities propose to file with this Court and serve on each non-Debtor party to an Assigned

Contract a notice substantially in the form attached hereto as <u>Exhibit F</u> (the "Purchaser

Assumption/Assignment Notice").  The Purchaser Assumption/Assignment Notice would

27

identify the Buyers as the party that would be assigned all of the Selling Debtor Entities' right, title, and interest in the Assigned Contracts, subject to completion of the bidding process provided under the Bidding Procedures.[22]  Non-Debtor parties to any Assumed U.S. Contract would be required to file an objection to the assumption and/or assignment of the Assumed U.S. Contract within ten days of service of the Purchaser Assumption/Assignment Notice, and such parties would be required to state, with specificity, the legal and factual basis of their objection, unless otherwise ordered by this Court.

51.    At least 20 days prior to the Sale Hearing or on the business day following the Bid Deadline, whichever is later, the Selling Debtor Entities propose to send a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form attached hereto as Exhibit G, to each non-Debtor party to an Assigned Contract identifying any Qualified Bidders as potential parties to which the Assigned Contracts would be assigned.  The Qualified Bidder Assumption/Assignment Notice would give the Selling Debtor Entities the ability to address promptly any adequate assurance issues that contract parties may have with any of the Qualified Bidders.  Non-Debtor counterparties to any Assumed U.S. Contract would be required to file an objection to the assumption and/or assignment of the Assumed U.S. Contract within ten days from the service of the Qualified Bidder Assumption/Assignment Notice, and such parties would be required to state, with specificity, the legal and factual basis of its objection, unless otherwise ordered by this Court.

---

[22]    The Selling Debtor Entities propose to serve the Purchaser Assumption/Assignment Notice and the Qualified Bidder Assumption/Assignment Notice (as defined below) upon each non-Debtor counterparty to the Post-Petition Contracts as a means of fulfilling any requirement under the applicable contract to provide notice of assignment.

N.    Notice Of Sale Hearing

52.    Within five days after entry of the Bidding Procedures Order (the

"Mailing Date"), the Selling Debtor Entities (or their agent) propose to serve the Motion, the

Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the

Bidding Procedures Order by first-class mail, postage prepaid, upon (i) the U.S. Trustee, (ii)

counsel for the Buyers, (iii) counsel for the Creditors' Committee, (iv) counsel for the Equity

Committee, (v) all entities known to have expressed an interest in a transaction with respect to

the Purchased Assets during the past six months, [23] (vi) all entities known to have asserted any

lien, claim, interest, or encumbrance in or upon the Purchased Assets, (vii) all federal, state,

and local regulatory or taxing authorities or recording offices, including but not limited to

environmental regulatory authorities, which have a reasonably known interest in the relief

requested by the Motion, (viii) all parties to Assigned Contracts, (ix) the United States

Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange

Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as

defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice,

Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental

Case Management Order")), and (xiv) such other entities as are required to be served with

notices under the Supplemental Case Management Order.

O.    Publication Notice

53.    The Selling Debtor Entities also propose, pursuant to Fed. R. Bankr. P.

2002(l) and 2002(d), that publication of a notice of the Sale in a form substantially similar to

---

[23]    All such entities would be served by electronic mail, in addition to overnight mail, to the extent the Debtors
have electronic mail addresses for such parties.

the form annexed hereto as <u>Exhibit H</u> in the <u>Wall Street Journal</u>, the <u>New York Times</u>, the <u>Dayton Daily News</u>, and the <u>Detroit Free Press</u> by the Mailing Date or as soon as practicable thereafter, be deemed proper notice to any other interested parties whose identities are unknown to the Sellers.

P.      <u>The Troy Technical Center</u>

      54.     In connection with the Sale, the Sellers would be subleasing a portion of a technical center in Troy, Michigan to the Buyers.  This is reflected in the Troy Technical Center Sublease, an agreement ancillary to the Agreement.  On September 28, 2007, DAS LLC entered into a sixth amendment of lease with 1401 Troy Associates Limited Partnership (the "Landlord") covering certain premises located at 1401 Crooks Road, Troy Michigan (the "Sixth Amendment").  A copy of the Sixth Amendment is attached hereto as <u>Exhibit I</u>.  The technical center in Troy is part of the premises covered under the Sixth Amendment.  Under the Sixth Amendment, the Landlord grants DAS LLC certain termination rights.  Without these termination rights, DAS LLC would have had to consider rejecting the lease, because such lease relates, in part, to businesses it is seeking to sell or wind down.  As a result of the Sixth Amendment, the Selling Debtor Entities could now provide the Buyers necessary access to the technical center in Troy immediately upon closing of the Sale.

      55.     DAS LLC believes that it is authorized to enter into and perform under the Sixth Amendment in the ordinary course of business under section 363(c) of the Bankruptcy Code, without this Court's approval.  But, at the request, and upon the insistence, of the Landlord, the Selling Debtor Entities are seeking this Court's approval of the Sixth Amendment.

30

Applicable Authority

Q.    Approval Of Bidding Procedures

56.    Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it.  See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-179 (D. Del. 1991).

57.    The Second Circuit has held that, although the bankruptcy court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors and the estate." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993).  This Court's consideration of a debtor's section 363(b) motion is a "summary proceeding," intended merely as a means "to efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." Id. at 1098-99.

58.    Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res.), 147 B.R. 650, 656 (S.D.N.Y. 1992)(citations omitted).  Thereafter, "[p]arties

31

opposing the proposed exercise of a debtor's business judgment have the burden of rebutting

the presumption of validity." Id.   To satisfy its burden, it is not enough for an objector simply

to raise and argue an objection. Rather, an objector "is required to produce some evidence

respecting its objections." Lionel Corp., 722 F.2d at 1071.

59.    As a rule, the debtor's business judgment "should be approved by the

court unless it is shown to be "so manifestly unreasonable that it could not be based upon

sound business judgment, but only on bad faith, or whim or caprice." In re Aerovox, Inc., 269

B.R. 74, 80 (Bankr. D. Mass. 2001) (citations omitted).

60.    As set forth above, the Sellers have sound business justifications for

pursuing a sale process at this time.  Although the Sellers believe that the Interiors and

Closures Businesses are fundamentally strong, the Interiors and Closures Businesses do not fit

the Debtors' anticipated product portfolio under their transformation plan.  Thus, the Selling

Debtor Entities have determined that the Interiors and Closure Businesses' value would be

maximized through their divestiture.  Moreover, delaying the sale of the Purchased Assets may

result in the erosion of the Interiors and Closures Businesses' value. Accordingly, there is a

sound business purpose for pursuing the sale process promptly and in accordance with the

Bidding Procedures.

61.    Moreover, a prospective purchaser of assets from a chapter 11 debtor

may be reluctant to make an offer because it knows that even if it reaches agreement with the

debtor, its offer will be subject to a higher bid by another party.  Pre-approved bidding

procedures address these concerns by assuring initial bidders that any auction procedure would

be reasonable.  Thus, the Selling Debtor Entities submit that the use of the Bidding Procedures

also reflects sound business judgment.

32

R.    Approval Of The Bid Protections

62.    Bidding incentives encourage potential bidders to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.  See, e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).  Bankruptcy courts often approve bidding incentives under the business judgment rule.  See In re Global Crossing Ltd., 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) ("[N]o litigant has seriously argued the inapplicability of the business judgment test, and if any such argument had been made, the Court would be compelled . . . to reject it.");  United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), No. 02 Civ. 2854, 2003 WL 21738964, at *8 n.13 (S.D.N.Y. July 28, 2003) (the court should approve agreements providing bidding incentives "unless they are unreasonable or appear more likely to chill the bidding process than to enhance it").  One court, explaining the force of the business judgment rule in this context, stated "the business judgment rule does not become inapplicable simply because a court decides a break-up fee is too large." Integrated Resources, 147 B.R. at 660.

63.    This district has established a three part test for determining when to permit bidding incentives.  Id. at 657-58.  The three questions for a court to consider when assessing a break-up fee are: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; and (3) is the amount of the fee unreasonable relative to the proposed purchase price." Id. at 657.

33

64.      Here, the Selling Debtor Entities seek authority to utilize the Bidding

Process and Bid Protections in the event that the Buyers are not ultimately the Successful

Bidder or must increase the Buyers' bid price to become the Successful Bidder.  The Bid

Protections are fair and reasonable in amount, particularly in view of the efforts previously

made and to be made by the Buyers and the risk to the Buyers of being used as a stalking

horse.  Moreover, the maximum payment under the proposed Bid Protections – the $2.4

million Break-Up Fee (approximately 3% of the Preliminary Purchase Price and 2.3% of the

Purchase Price) – not only constitutes a fair and reasonable percentage of a proposed purchase

price, but is within the range that is customary for similar transactions of this type in the

bankruptcy context.  See, e.g., In re Allegiance Telecom, Inc., Case No. 03-13057 (RDD)

(Bankr. S.D.N.Y. 2004) (allowing 2.8% break-up fee and expense reimbursement provision in

asset sale agreement); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2004)

(approving 3% break-up fee if debtor closed superior transaction); In re Genuity Inc., Case No.

02-43558 (PCB)(Bankr. S.D.N.Y. 2002) (allowing 4.13% break-up fee if court approved

alternative transaction); In re PSINet, Inc., Case No. 01-13213 (REG) (Bankr. S.D.N.Y. 2001)

(permitting 4.28% break-up fee in the event that seller consummated transaction with

alternative bidder); In re Teligent, Inc., Case No. 01-12974 (SMB) (Bankr. S.D.N.Y. 2001)

(allowing break up fee ranging from 1.3% to 4.25% depending on value of alternative

transaction).  In addition, the payment of the Break-Up Fee or the Expense Reimbursement, as

the case may be, is reasonable in light of the significant investment in time and resources that

the Buyers would have contributed as the stalking horse bidder.

65.      The Selling Debtor Entities submit that the Bidding Procedures and the

Bid Protections have encouraged competitive bidding because the Buyers would not have

34

entered into the Agreement without such provisions. The Bidding Procedures and the Bid

Protections have thus induced a bid that otherwise would not have been made. Finally, the

mere existence of the Bidding Procedures and Bid Protections permits the Sellers to insist that

competing bids be materially higher or otherwise better than the Agreement, which would

produce a clear benefit to the Selling Debtor Entities, their estates, and their stakeholders.

S.      Sale Of The Purchased Assets Free And
        Clear Of Liens, Claims, Encumbrances, And Interests

66.     Under section 363(f) of the Bankruptcy Code, a debtor-in-possession

may sell property free and clear of any lien, claim, or interest in such property if, among other

things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such
>     interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the
>     aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a
>     money satisfaction of such interest.

11 U.S.C. § 363(f).

67.     Here, section 363(f) of the Bankruptcy Code permits the Selling Debtor

Entities to sell the Purchased Assets free and clear of all liens, claims, and encumbrances, other

than the Permitted Encumbrances.[24] Excluding Permitted Encumbrances, each lien, claim, or

encumbrance that is not the result of an assumed liability satisfies at least one of the five

conditions of section 363(f), and the Selling Debtor Entities submit that any such lien, claim, or

---

[24]   As a result of intense negotiations, certain liabilities will be assumed by the Buyers or the Successful Bidder,
       as the case may be.

35

encumbrance would be adequately protected by attachment to the net proceeds of the Sale,

subject to any claims and defenses that the Selling Debtor Entities may possess with respect

thereto.  Accordingly, except for the liens resulting from the Assumed Liabilities or the

Permitted Encumbrances, the Selling Debtor Entities request that the Purchased Assets be

transferred to the Successful Bidder(s) free and clear of all liens, claims, and encumbrances,

with such liens, claims, and encumbrances to attach to the proceeds of the Sale of the

Purchased Assets.

T.      The Buyers Are Good Faith Purchasers Pursuant To
        Section 363(m) Of The Bankruptcy Code And The Transaction
        Contemplated By The Agreement Should Carry The
        Protections Of Section 363(n) Of The Bankruptcy Code

        68.     Section 363(m) of the Bankruptcy Code provides:

        The reversal or modification on appeal of an authorization under subsection (b)
        or (c) of this section of a sale or lease of property does not affect the validity of
        a sale or lease under such authorization to an entity that purchased or leased
        such property in good faith, whether or not such entity knew of the pendency of
        the appeal, unless such authorization and such sale or lease were stayed pending
        appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second

Circuit Court of Appeals in In re Gucci has held that the:

        good faith of a purchaser is shown by the integrity of his conduct during the
        course of the sale proceedings; where there is a lack of such integrity, a good
        faith finding may not be made.  A purchaser's good faith is lost by "fraud,
        collusion between the purchaser and other bidders or the trustee, or an attempt
        to take grossly unfair advantage of other bidders."

Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d. Cir. 1997) (quoting In

re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting former

Bankruptcy Rule 805, the precursor of section 363(m))); see also Evergreen Int'l Airlines Inc.

v. Pan Am Corp. (In re Pan Am Corp.), No. 91 Civ. 8319, 1992 WL 154200, at *4 (S.D.N.Y.

June 18, 1992); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988).

36

69.    Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

11 U.S.C. § 363(n).

70.    The Selling Debtor Entities submit, and will present evidence at the Sale Hearing, that the Agreement reflects an intensely negotiated, arm's length transaction. Indeed, these negotiations have continued, on and off, for approximately one year. Throughout the negotiations, the Purchaser has at all times acted in good faith. Moreover, to the extent that the assets are sold to a Successful Bidder, it will be because of a well planned competitive process and intense negotiations at arm's length to be conducted at an Auction. As a result of the foregoing, the Selling Debtor Entities request that the court make a finding that the Purchaser Price to be paid by the Purchaser constitutes reasonably equivalent value and fair consideration under any applicable law.

71.    Throughout the negotiations, the Buyers have at all times acted in good faith. Moreover, to the extent that the assets are sold to a Successful Bidder, it would be because of a well planned competitive process and intense negotiations at arm's length to be conducted at the Auction. The Selling Debtor Entities, therefore, request that this Court make a finding that the Buyers or the Successful Bidder, as the case may be, have purchased the Purchased Assets and assumed the Assigned Contracts and Assumed Liabilities in good faith within the meaning of section 363(m) of the Bankruptcy Code. Because a key element of a good faith finding is that the Buyers' successful bid is not the product of fraud or collusion

37

between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair

advantage of other bidders, the Selling Debtor Entities further request that this Court make a

finding that the transactions contemplated by the Agreement are not avoidable under section

363(n) of the Bankruptcy Code.

U.      Relief From Transfer Taxes Under Section 1146(c) Of the Bankruptcy Code

        72.     Bankruptcy Code section 1146(c) provides that "[t]he issuance, transfer,

or exchange of a security, or the making or delivery of an instrument of transfer under a plan

confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp

tax or similar tax."  11 U.S.C. § 1146(c).  This language has been construed to include transfers

pursuant to a sale outside of, but in furtherance of effectuating, a reorganization plan.  See City

of New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.), 758 F.2d 840, 842 (2d Cir.

1985) (holding that when transfer is necessary to consummation of plan, transfer is "under a

plan" within meaning of section 1146(c)); In re United Press Int'l, Inc., No. 91 B 13955, 1992

Bankr. LEXIS 842, at *4 (Bankr. S.D.N.Y. May 18, 1992) (holding that section 1146(c)

exemption applied to section 363 sale in instance in which it found "the value of the Debtor's

assets . . . likely to deteriorate [during] time necessary to . . . confirm a plan"); In re Beulah

Church of God In Christ Jesus, Inc., 316 B.R. 41, 50-51 (Bankr. S.D.N.Y 2004) (stating that

determination of applicability of section 1146(c) exemption depends on whether transfers are

in view of, and integral to, a Chapter 11 plan that is subsequently confirmed); City of New

York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.), 54 B.R. 950, 951 (E.D.N.Y. 1985)

(stating that section 1146(c) was designed to reach transfer of assets, on which "plan hinged

and which the court had to approve prior to the confirmation").

        73.     As set forth above, as part of their transformation plan, the Selling

Debtor Entities have identified non-core product lines, including the Interiors and Closures

38

Businesses, that do not fit into the company's future strategic framework, and have planned to

sell or wind-down these product lines.  As mentioned above, on September 6, 2007, the

Debtors filed the Plan.  Section 7.30 of the Plan contemplates the Debtors selling assets outside

the Plan, but obtaining relief as if such divestitures were part of the Plan.  Thus, this sale

process may continue after a plan has already been filed, which would squarely satisfy <u>Beaulah</u>

<u>Church</u>.  <u>See</u> <u>Beulah Church</u>, 316 B.R. at 50-51.  In light of the foregoing, the Selling Debtor

Entities submit that the Sale should be exempt under section 1146(c) of the Bankruptcy Code

from any stamp, transfer, sales, recording, or similar taxes.

V.      <u>The Assumption And Assignment Of The Assumed U.S. Contracts</u>

      74.      Section 365(f)(2) of the Bankruptcy Code provides that:

> The trustee may assign an executory contract or unexpired lease of the debtor
> only if –
>
> (A)      the trustee assumes such contract or lease in accordance with the
> provisions of this section; and
>
> (B)      adequate assurance of future performance by the assignee of such
> contract or lease is provided, whether or not there has been a default in such
> contract or lease.

11 U.S.C. § 365(f)(2).

      75.      Under section 365(a) of the Bankruptcy Code a debtor, "subject to the

court's approval, may assume or reject any executory contract or unexpired lease of the

debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the

requirements for assuming an unexpired lease or executory contract of a debtor.  It provides:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of
> the debtor, the trustee may not assume such contract or lease unless, at the time
> of the assumption of such contract or lease, the trustee –
>
>     (A)      cures, or provides adequate assurance that the trustee will
> promptly cure, such default;

39

(B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

76.    Courts give the phrase "adequate assurance of future performance" a "practical, pragmatic construction." EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d Cir. 1993) (presence of adequate assurance should be "determined under the facts of each particular case"); see also In re Fifth Ave. Originals, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983) (holding that adequate assurance was furnished on two separate grounds). Courts have consistently held that the phrase does not require total assurances. See In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) ("[I]t does not mean absolute insurance that the debtor will thrive and make a profit."); In re Prime Motor Inns, Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) (although no single solution will satisfy every case, the required assurance will fall "considerably short of an absolute guaranty of performance"). In fact, adequate assurance has been provided by demonstrating the Buyers' financial health and experience in managing the type of enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance existed when prospective assignee of lease from debtor had financial resources and had expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

77.    To the extent that any defaults exist under any prepetition executory contract or unexpired lease that is to be assumed and assigned in connection with the sale of the Purchased Assets or any portion thereof, the Selling Debtor Entities would cure any such

40

default.  As set forth above, Renco affiliates generate revenue in excess of $3.5 billion annually.  The Buyers have the financial resources to perform under the Assumed U.S. Contracts.  Moreover, if necessary, the Selling Debtor Entities will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the Buyers or the Successful Bidder, as the case may be, their experience in the industry, and their willingness and ability to perform under the contracts to be assumed and assigned to them.

78.     The Sale Hearing therefore will provide this Court and other parties-in-interest ample opportunity to evaluate and, if necessary, challenge the ability of the Buyers or the Successful Bidder(s) to provide adequate assurance of future performance under the contracts to be assumed.  This Court therefore should have a sufficient basis to authorize the Selling Debtor Entities to assume and assign the Assumed U.S. Contracts as set forth in the Agreement.

W.     Conclusion

79.     The Selling Debtor Entities submit that the granting of the Bidding Procedures, Bid Protections, and Notice Procedures, the setting of a Sale Hearing, and the entry of an order approving the Sale of the Purchased Assets free and clear of liens, claims, and encumbrances, the assumption and assignment of the Assigned Contracts, and the assumption of the Assumed Liabilities by the Buyers or the Successful Bidder (as the case may be) are in the best interests of the Selling Debtor Entities' estates and will maximize value for all stakeholders.

## Notice

80.     Notice of this Motion has been provided in accordance with the

Supplemental Case Management Order and the Amended Eighth Supplemental Order Under

11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered October 26, 2006 (Docket No. 5418).  Specifically, the

Selling Debtor Entities have provided notice of this Motion on the Master Service List (as

defined in the Supplemental Case Management Order), each party who filed a notice of

appearance or request for documents in accordance with Bankruptcy Rule 2002, and all entities

known to have expressed an interest in a transaction with respect to the Purchased Assets

during the past 14 months.  Further, after entry of the Bidding Procedures Order, notice with

respect to the Motion and Sale would be provided in accordance with the Notice Procedures

described herein.  In addition, the Debtors have complied with the Supplemental Case

Management Order with respect to the filing of this Motion and the need for expedited relief.[25]

In light of the nature of the relief requested, the Debtors submit that no other or further notice

is necessary.

## Memorandum Of Law

81.     Because the legal points and authorities upon which this Motion relies

are incorporated herein, the Selling Debtor Entities respectfully request that the requirement of

the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

---

[25]     The Debtors have noticed this Motion for the omnibus hearing on October 25, 2007.  In compliance with the
terms of the Supplemental Case Management Order, the Debtors have consulted with counsel to the
Creditors' Committee regarding the relief sought in this Motion as well as the timing of its filing.  The
Debtors have been informed that the Creditors' Committee has consented to this Motion being heard on
October 25, 2007.  Because this Motion is being filed on less than 20 days' notice, parties-in-interest will have
until October 22, 2007 to file an objection to entry of the Bidding Procedures Order.

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of

New York be deemed satisfied.

WHEREFORE the Selling Debtor Entities respectfully request that this Court

enter an order (a) (i) approving the Bidding Procedures, (ii) granting the Bid Protections, (iii)

approving the Notice Procedures, and (iv) setting the Sale Hearing, (b) approving (i) the Sale

of the Purchased Assets free and clear of liens, claims, and encumbrances to the Buyers or to

the Successful Bidder, (ii) the assumption and assignment of the Assigned Contracts to the

Buyers or the Successful Bidder, and (iii) the assumption of the Assumed Liabilities by the

Buyers or the Successful Bidder, and (c) granting them such other and further relief as is just.

Dated:          New York, New York
                October 15, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By:    /s/ John Wm. Butler, Jr.
                                     John Wm. Butler, Jr. (JB 4711)
                                     John K. Lyons (JL 4951)
                                     Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606
                              (312) 407-0700

                                          - and -

                              By:    Kayalyn A. Marafioti
                                     Kayalyn A. Marafioti (KM 9632)
                                     Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                Debtors and Debtors-in-Possession

43

**<u>Exhibit C</u>**

**Sale Approval Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
      In re                     :      Chapter 11
                                        :
DELPHI CORPORATION, <u>et al.</u>,        :      Case No. 05-44481 (RDD)
                                        :
                Debtors.        :      (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004,
6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF
DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL THE ASSETS OF THE
COCKPITS AND INTERIOR SYSTEMS AND INTEGRATED CLOSURE SYSTEMS
BUSINESSES FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II)
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND
<u>(III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("INTERIORS AND CLOSURES BUSINESSES SALE APPROVAL ORDER")

                Upon the motion, dated October 15, 2007 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing date (the "Sale Hearing") and (b) authorizing and

approving (i) the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets")

comprising substantially all the assets that comprise the Cockpits and Interior Systems and

Integrated Closure Systems Businesses (the "Interiors and Closures Businesses"), free and clear

of liens, claims, and encumbrances, to Inteva Products, LLC. and certain of its affiliates (the

"Buyers") pursuant to the Master Sale and Purchase Agreement, dated October 15, 2007 (the

"Agreement," a copy of which is attached hereto as Exhibit A), by and between Delphi and

certain of its affiliates, including certain affiliated Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] and the Buyers or to the party submitting the highest or otherwise

best bid (the "Successful Bidder"), (ii) the assumption and assignment of certain prepetition

executory contracts and unexpired leases (the "Assumed U.S. Contracts") and the assignment of

certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and

collectively with the Assumed U.S. Contracts, the "Assigned Contracts") to the Buyers or the

Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by

the Buyers or the Successful Bidder; and the Court having entered an order on October [●], 2007

(the "Bidding Procedures Order")(Docket No. _____) (a) approving bidding procedures, (b)

granting certain bid protections, (c) approving the form and manner of sale notices, and (d)

setting the Sale Hearing; and the Sale Hearing having been held on [_____], at

which time all interested parties were offered an opportunity to be heard with respect to the

Motion; and the Court having reviewed and considered  the Motion and the arguments of counsel

made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief

requested in the Motion is in the best interests of the Selling Debtor Entities, their estates, their

stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient

cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

---

[1]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi Automotive Systems (Holdings) Inc., and Delphi Technologies, Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2

A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assumed U.S. Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed U.S. Contracts or assignment of the Postpetition Contracts is necessary.

D.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale process in compliance with the Bidding Procedures Order.

E.    The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other applicable documents contemplated thereby, and the transfer and conveyance of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and

3

authority necessary to consummate the transactions contemplated by the Agreement, and (iii)

have taken all action necessary to authorize and approve the Agreement and to consummate the

transactions contemplated thereby, and no consents or approvals, other than those expressly

provided for in the Agreement, are required for the Selling Debtor Entities to consummate such

transactions.

F.    The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purposes and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Purchased Assets and determined that (a) the terms and

conditions set forth in the Agreement, (b) the transfer to Buyers of the Purchased Assets pursuant

thereto, and (c) the Purchase Price agreed to as reflected in the Agreement  are all fair and

reasonable and together constitute the highest or otherwise best value obtainable for the

Purchased Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to, and outside of, a plan of reorganization exist because, among other things, absent

the Sale the value of the Purchased Assets will be substantially diminished.

G.    A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors

appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security

holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest

in a transaction with respect to the Purchased Assets during the past six months, (vi) all entities

known to have asserted any Interests and/or Claims (as defined below) in or upon the Purchased

4

Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices,

including but not limited to environmental regulatory authorities, which have a reasonably

known interest in the relief requested by the Motion, (viii) all parties to Assigned Contracts, (ix)

the United States Attorney's office, (x) the United States Department of Justice, (xi) the

Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all entities on the

Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105

And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates

And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the

"Supplemental Case Management Order")), and (xiv) such other entities as are required to be

served with notices under the Supplemental Case Management Order.

H.      The Buyers are not "insiders" of any of the Debtors as that term is defined

in 11 U.S.C. § 101(31).

I.      The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Purchaser without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Buyers have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

J.      The Buyers are good faith purchasers under 11 U.S.C. § 363(m) and, as

such, are entitled to all of the protections afforded thereby.  The Buyers will be acting in good

faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Agreement at all times after the entry of this order.

K.      The consideration provided by the Buyers for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

stakeholders than would be provided by any other practical available alternative, and (iv)

constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States, any state, territory, or possession thereof, or the District of

Columbia.

L.      The Sale must be approved and consummated promptly to preserve the

viability of the Interiors and Closures Businesses as a going concern. The Sale is in

contemplation of, and a necessary condition precedent to, a reorganization plan for the Debtors

and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

M.      The transfer of the Purchased Assets to the Buyers will be a legal, valid,

and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the

Selling Debtor Entities, shall vest the Buyers with all right, title, and interest of the Selling

Debtor Entities to the Purchased Assets free and clear of any and all liens, claims, interests, and

encumbrances of any type whatsoever (whether known or unknown, choate or inchoate, filed or

unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated,

matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to

or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement,

understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of

successor liability), including but not limited to those (i) that purport to give to any party a right

or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling

Debtor Entities' or the Purchaser's interest in the Purchased Assets, or any similar rights, and (ii)

relating to taxes arising under or out of, in connection with, or in any way relating to the

6

operation of the Interiors and Closures Businesses prior to the Closing Date, including the

transfer of the Purchased Assets to the Buyers (collectively, the "Interests and/or Claims").

N.      If the Sale of the Purchased Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this order, or if the Buyers would, or in the future could, be liable for any of the Interests and/or

Claims as set forth in the Agreement and this order, the Buyers would not have entered into the

Agreement and would not consummate the Sale or the transactions contemplated by the

Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their

stakeholders.

O.      The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Interests

and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to

the cash proceeds of the Sale ultimately attributable to the property against or in which they

claim an Interest or Claim with the same priority, validity, force, and effect as they attached to

such property immediately before the closing of the Sale.

P.      Except as expressly provided in the Agreement, the (i) transfer of the

Purchased Assets to the Buyers and (ii) assumption and/or assignment to the Buyers of the

Assigned Contracts and Assumed Liabilities will not subject the Buyers to any liability

whatsoever with respect to the operation of the Interiors and Closures Businesses prior to the

7

Closing of the Sale, or by reason of such transfer under the laws of the United States, any state,

territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or

indirectly, on any theory of law or equity including, without limitation, any theory of equitable

law, antitrust, or successor or transferee liability.

Q.      The Selling Debtor Entities have demonstrated that it is an exercise of

their sound business judgment to assume and/or assign the Assigned Contracts as applicable to

the Buyers in connection with the consummation of the Sale, and the assumption and/or

assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their

estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being

assumed by, the Buyers are an integral part of the Purchased Assets being purchased by the

Buyers and, accordingly, such assumption and/or assignment of Assigned Contracts and

liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

R.      The Selling Debtor Entities have (i) cured, or have provided adequate

assurance of cure of, any default existing prior to the Closing of the Sale under any of the

Assumed U.S. Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the

amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Assumed U.S. Contracts, within the meaning of 11

U.S.C. § 365(b)(1)(B).  The Buyers have provided adequate assurance of their future

performance of and under the Assumed U.S. Contracts, within the meaning of 11 U.S.C. §§

365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed U.S. Contracts to

be assumed and assigned under the Agreement shall be assigned and transferred to, and remain

in full force and effect for the benefit of, the Buyers notwithstanding any provision in the

contracts or other restrictions prohibiting their assignment or transfer.

       S.      Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assigned Contracts at this time are in the best interests

of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

       NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

## General Provisions

       1.      The Motion is GRANTED.

## Approval Of The Agreement

       2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

       3.      Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized,

but not directed, to perform their obligations under the Agreement and comply with the terms

thereof and consummate the Sale in accordance with and subject to the terms and conditions of

the Agreement.

       4.      Each of the signatories to the Agreement is authorized, but not directed, to

take all actions necessary or appropriate to effectuate the terms of this order.

       5.      The Selling Debtor Entities are authorized, but not directed, to execute and

deliver, and empowered to perform under, consummate, and implement, the Agreement, together

with all additional instruments and documents as may be reasonably necessary or desirable to

implement the Agreement, and to take all further actions as may be requested by the Buyers for

the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or

reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary

or appropriate to the performance of the obligations as contemplated by the Agreement.

6.    This order and the Agreement shall be binding in all respects upon all

stakeholders (whether known or unknown) of the Debtors, the Buyers, all successors and assigns

of the Buyers and the Selling Debtor Entities, all affiliates and subsidiaries of the Buyers and the

Selling Debtor Entities, and any subsequent trustees appointed in the Debtors' chapter 11 cases or

upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.

To the extent that any provision of this order is inconsistent with the terms of the Agreement, this

order shall govern.

7.    The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court; provided that any such modification,

amendment, or supplement is not material.

### Sale And Transfer Of The Purchased Assets

8.    Except as expressly permitted or otherwise specifically provided for in the

Agreement or this order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of

the Agreement, the Selling Debtor Entities' right, title, and interest in the Purchased Assets shall

be transferred to the Buyers free and clear of all Interests and/or Claims, with all such Interests

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

10

same validity, force, and effect which they had as against the Purchased Assets immediately

before such transfer, subject to any claims and defenses the Selling Debtor Entities may possess

with respect thereto.

9.      The transfer of the Purchased Assets to the Buyers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall

vest the Buyers with all right, title, and interest of the Selling Debtor Entities in and to the

Purchased Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets shall not have delivered to the Selling Debtor Entities

prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of all Interests and/or Claims that the

person or entity has with respect to the Purchased Assets, or otherwise, then (a) the Selling

Debtor Entities are hereby authorized to execute and file such statements, instruments, releases,

and other documents on behalf of the person or entity with respect to the Purchased Assets and

(b) the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this

order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature

whatsoever.

11.      This order (a) shall be effective as a determination that, upon the Closing

of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling

Debtor Entities or the Purchased Assets being sold by the Selling Debtor Entities prior to the

11

Closing of the Sale have been unconditionally released, discharged, and terminated (other than

any surviving obligations), and that the conveyances described herein have been effected and (b)

shall be binding upon and shall govern the acts of all entities including, without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register, or otherwise

record or release any documents or instruments, or who may be required to report or insure any

title or state of title in or to any of the Purchased Assets.

     12.  All persons and entities, including, but not limited to, all debt security

holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade

creditors, and other stakeholders, holding Interests and/or Claims of any kind or nature

whatsoever against or in the Selling Debtor Entities or the Purchased Assets being sold by the

Selling Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Interiors and Closures Businesses, the Purchased Assets being sold

by the Selling Debtor Entities, the operation of the Interiors and Closures Businesses by the

Selling Debtor Entities prior to the Closing of the Sale, or the transfer of the Purchased Assets to

the Buyers, hereby are forever barred, estopped, and permanently enjoined from asserting against

the Buyers, their successors or assigns, their property, or the Purchased Assets, such persons' or

entities' Interests and/or Claims.  Nothing in this order or the Agreement releases or nullifies any

Liability to a governmental agency under any environmental laws and regulations that any entity

would be subject to as owner or operator of any Purchased Assets after the date of entry of this

12

order.  Nothing in this order or the Agreement bars, estops, or enjoins any governmental agency

from asserting or enforcing, outside the Court, any Liability described in the preceding sentence.

Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to

obtain penalties from the Buyers for days violation of environmental laws and regulations prior

to Closing.

<u>Assumption And Assignment To The Purchaser Of The Assumed U.S. Contracts</u>

13.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Buyers, and the Buyers' assumption on the terms set forth in the Agreement, of the Assumed U.S.

Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with

respect thereto are hereby deemed satisfied.

14.    The Selling Debtor Entities are hereby authorized in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Buyers, effective upon the

Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any

kind or nature whatsoever and (b) execute and deliver to the Buyers such documents or other

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Buyers.

15.    The Assumed U.S. Contracts shall be transferred to, and remain in full

force and effect for the benefit of, the Buyers in accordance with their respective terms,

notwithstanding any provision in any such Assumed U.S. Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor

13

Entities shall be relieved from any further liability with respect to the Assumed U.S. Contracts after such assignment to and assumption of such contracts by the Buyers.

16.    All defaults or other obligations of the Selling Debtor Entities under the Assumed U.S. Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms of the Agreement, and the Buyers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-debtor party to any Assumed U.S. Contracts shall be deemed to have consented to the assumption and assignment of the Assumed U.S. Contracts to the Buyers and shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entities or the Buyers, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing or any purported written or oral modification to the Assumed U.S. Contracts.  The failure of the Debtors or the Buyers to enforce prior to the Closing of the Sale one or more terms or conditions of any Assumed U.S. Contracts shall not be a waiver of such terms or conditions or of the Debtors' or Buyers' rights to enforce every term and condition of any such Assumed U.S. Contracts.

## Additional Provisions

17.    The transactions contemplated by the Agreement, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

14

18.     The consideration provided by the Buyers for the Purchased Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

19.     Upon the Closing of the Sale, this order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and the Assigned Contracts or a bill of sale transferring good and marketable title in such Purchased Assets and Assigned Contracts to the Buyers pursuant to the terms of the Agreement.

20.     Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as such Interests and/or Claims may have been recorded or may otherwise exist.

21.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

22.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Buyers upon the Closing of the Sale.

15

23.     All persons holding Interests and/or Claims against or in the Selling

Debtor Entities or the Purchased Assets of any kind or nature whatsoever shall be, and hereby

are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise

pursuing such Interests and/or Claims of any kind or nature whatsoever against the Buyers, their

property, their successors and assigns, or the Purchased Assets with respect to any Interest or

Claim of any kind or nature whatsoever which such person or entity had, has, or may have

against or in the Selling Debtor Entities, their estates, their officers, their directors, their

shareholders, or the Purchased Assets.  Following the Closing of the Sale, no holder of an

Interest in or Claim against the Selling Debtor Entities shall interfere with the Buyers' title to or

use and enjoyment of the Purchased Assets based on or related to such Interest or Claim or any

actions that the Selling Debtor Entities may take, or have taken, in their chapter 11 cases.

24.     The transactions contemplated by the Agreement are undertaken by the

Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and

accordingly, the reversal or modification on appeal of the authorization provided herein to

consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the

Buyers, unless such authorization is duly stayed pending such appeal.  The Buyers are purchasers

in good faith of the Purchased Assets, and are entitled to all of the protections afforded by

section 363(m) of the Bankruptcy Code.

25.     The consideration provided by the Buyers for the Purchased Assets under

the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of

the Bankruptcy Code.

16

26.     The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this order.

27.     The terms and provisions of the Agreement and this order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their estates, and their stakeholders, the Buyers and their affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest or Claim against or in the Purchased Assets to be sold to the Buyers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

28.     The Selling Debtor Entities shall not propose, support, or seek confirmation of a plan of reorganization that is inconsistent with or derogate from the terms of the Agreement.

29.     Notwithstanding anything contained herein to the contrary, the term "Purchased Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates, such as funds that are trust funds under any applicable state lien laws.

30.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the

17

Purchased Assets sold, transferred, or conveyed to the Buyers on account of the filing or

pendency of these chapter 11 cases or the consummation of the Sale.

31.    The failure specifically to include or to reference any particular provision

of the Agreement in this order shall not diminish or impair the effectiveness of such provision, it

being the intent of the Court that the Agreement be authorized and approved in its entirety.

32.    The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court, <u>provided</u> that any such modification,

amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'

estates.

33.    Nothing in this order shall alter or amend the Agreement and the

obligations of the Sellers and the Buyers thereunder.

34.    This Court retains exclusive jurisdiction to interpret, construe, enforce,

and implement the terms and provisions of this order, the Agreement, all amendments thereto,

any waivers and consents thereunder, and of each of the agreements executed in connection

therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel

delivery of the Purchased Assets to the Buyers, (b) compel delivery of the purchase price or

performance of other obligations owed to the Selling Debtor Entities pursuant to the Agreement,

(c) resolve any disputes arising under or related to the Agreement, except as otherwise provided

therein, (d) interpret, implement, and enforce the provisions of this order, (e) protect the Buyers

against any Interests and/or Claims against or in the Selling Debtor Entities or the Purchased

Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (f) determine

18

all disputes among the Selling Debtor Entities, the Buyers, and any non-Debtor parties to any

Assigned Contracts concerning, <u>inter alia</u>, the Selling Debtor Entities' assumption and/or

assignment of any Assigned Contract to the Purchaser under the Agreement.

35.     The purchase price shall be and hereby is allocated between the Selling

Debtor Entities and the non-Debtor Sellers as set forth on <u>Schedule 2</u>.

36.     The Selling Debtor Entities are authorized, but not directed, to enter into

and perform under the sixth amendment of lease, dated September 28, 2007, by and between

DAS LLC and 1401 Troy Associates Limited Partnership, covering certain premises located at

1401 Crooks Road, Troy, Michigan.

37.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
          [_____]

_____
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit D**

**Sale And Purchase Agreement**

**MASTER SALE AND PURCHASE AGREEMENT**

**AMONG**

**DELPHI CORPORATION**

**AND**

**INTEVA PRODUCTS, LLC**

**DATED AS OF**

**October 15, 2007**

## TABLE OF CONTENTS

PAGE NO.

1.   **DEFINITIONS** ...........................................................................................................1
     1.1   Certain Defined Terms .................................................................................1
     1.2   Other Interpretive Provisions .....................................................................19
2.   **PURCHASE AND SALE**..................................................................................19
     2.1   Transfers by Sellers and their Affiliates....................................................19
     2.2   Assumption of Liabilities Regarding Acquired Assets ...............................21
     2.3   Retained Liabilities ....................................................................................22
     2.4   Deferred Items ...........................................................................................23
3.   **PURCHASE PRICE; ADJUSTMENT; ALLOCATION**...................................25
     3.1   Deposit Amount .........................................................................................25
     3.2   Preliminary Purchase Price .......................................................................25
     3.3   Preparation of Closing Inventory Statement.............................................26
     3.4   Preliminary Purchase Price Adjustments ..................................................27
     3.5   Allocation of Purchase Price .....................................................................30
4.   **REPRESENTATIONS AND WARRANTIES OF SELLERS**............................30
     4.1   Organization ..............................................................................................30
     4.2   Authorization; Enforceability.....................................................................30
     4.3   JV Companies ............................................................................................31
     4.4   Financial Statements .................................................................................33
     4.5   No Conflicts or Approvals .........................................................................34
     4.6   Sufficiency of Acquired Assets .................................................................34
     4.7   Compliance with Law; Permits ..................................................................35
     4.8   Proceedings ...............................................................................................35
     4.9   Absence of Certain Changes.....................................................................35
     4.10  Tax Matters ...............................................................................................35
     4.11  Employee Benefits .....................................................................................35
     4.12  Intellectual Property...................................................................................36
     4.13  Contracts ...................................................................................................37
     4.14  Environmental Matters ..............................................................................38
     4.15  Insurance....................................................................................................40
     4.16  Personal Property Assets, Inventory ........................................................40
     4.17  Real Property .............................................................................................41
     4.18  No Brokers' Fees........................................................................................42
     4.19  No Other Representations or Warranties ...................................................42
     4.20  Fair Disclosure ..........................................................................................42
5.   **REPRESENTATIONS AND WARRANTIES OF BUYERS**...........................42
     5.1   Organization ..............................................................................................42
     5.2   Authorization; Enforceability.....................................................................42
     5.3   No Conflicts or Approvals .........................................................................43
     5.4   Proceedings ...............................................................................................43
     5.5   Solvency.....................................................................................................43
     5.6   Anti-Money Laundering ..............................................................................43
     5.7   Investment Representations.......................................................................44
     5.8   No Inducement or Reliance; Independent Assessment ..............................44
     5.9   Financial Ability .........................................................................................45
     5.10  Adequate Assurance of Future Performance .............................................45
     5.11  No Brokers' Fees........................................................................................45
     5.12  Compliance with Laws................................................................................45
6.   **COVENANTS AND AGREEMENTS** ............................................................45
     6.1   Conduct of Business between Signing and Closing....................................45
     6.2   Bankruptcy Actions....................................................................................47
     6.3   Assumed U.S. Contracts; Cure Amounts ..................................................47

i

|        | 6.4   | Non-Competition | 48 |
|        | 6.5   | Tax Matters; Cooperation; Preparation of Returns; Tax Elections | 49 |
|        | 6.6   | Employees Matters | 51 |
|        | 6.7   | Contact with Customers and Suppliers | 58 |
|        | 6.8   | Technical Documentation | 58 |
|        | 6.9   | Books and Records and Litigation Assistance From and After Closing | 59 |
|        | 6.10  | Corporate Names | 60 |
|        | 6.11  | Intellectual Property Licenses | 61 |
|        | 6.12  | Intentionally Omitted | 62 |
|        | 6.13  | Competition Clearance | 63 |
|        | 6.14  | Further Actions | 64 |
|        | 6.15  | Further Assurances | 64 |
|        | 6.16  | Shared Items Transferred to Buyers; Transfer Pricing | 64 |
|        | 6.17  | Buyer's Financing Activities | 64 |
|        | 6.18  | Agency Designation | 65 |
|        | 6.19  | Customs Duties | 65 |
|        | 6.20  | Intracompany Transfers | 65 |
|        | 6.21  | Environmental Due Diligence | 65 |
|        | 6.22  | Transfer of Environmental Permits | 66 |
|        | 6.23  | Removal of Personal Property from Certain Locations | 66 |
|        | 6.24  | Mexican Newco | 66 |
|        | 6.25  | Certain Confidentiality Agreements | 67 |
|        | 6.26  | JV Companies Post-Closing Payments | 67 |
|        | 6.27  | Names Selected by Business for Post-Closing Usage | 67 |
|        | 6.28  | Troy Technical Center Landlord Estoppel and Nondisturbance | 68 |
|        | 6.29  | Certain Acquired Assets Located in Mexico | 68 |
| **7.** |       | **CONDITIONS TO CLOSING** | **68** |
|        | 7.1   | Conditions to Obligations of Seller and Buyer | 68 |
|        | 7.2   | Conditions to Obligations of Buyer | 69 |
|        | 7.3   | Conditions to Obligations of Sellers | 70 |
| **8.** |       | **CLOSING** | **70** |
|        | 8.1   | Closing Time and Date | 70 |
|        | 8.2   | Ancillary Agreements | 70 |
|        | 8.3   | Seller's Deliveries at Closing | 72 |
|        | 8.4   | Buyer's Deliveries at Closing | 72 |
| **9.** |       | **TERMINATION** | **73** |
|        | 9.1   | Termination | 73 |
|        | 9.2   | Break-Up Fee; Expense Reimbursement | 74 |
|        | 9.3   | Procedure and Effect of Termination | 76 |
| **10.**|       | **BIDDING PROCEDURES** | **76** |
|        | 10.1  | Delphi Initial Bankruptcy Actions | 76 |
|        | 10.2  | Qualified Bidder | 76 |
|        | 10.3  | Bid Deadline | 77 |
|        | 10.4  | Due Diligence | 78 |
|        | 10.5  | Bid Requirements | 78 |
|        | 10.6  | Qualified Bids | 78 |
|        | 10.7  | Bid Protection | 79 |
|        | 10.8  | Auction, Bidding Increments and Bids Remaining Open | 80 |
|        | 10.9  | Acceptance of Qualified Bids | 81 |
|        | 10.10 | Sale Hearing | 81 |
|        | 10.11 | Return of Good Faith Deposit | 81 |
|        | 10.12 | Reservation of Rights | 82 |
| **11.**|       | **LIABILITY, INDEMNIFICATION** | **82** |
|        | 11.1  | Limitations of Liability | 82 |
|        | 11.2  | Survival | 82 |

|         |                                    |     |
|---------|------------------------------------|-----|
| 11.3    | Indemnification ................................................................... | 82 |
| 11.4    | Environmental Matters ........................................................ | 84 |
| 11.5    | Indemnification Procedures ................................................ | 88 |
| 11.6    | Mitigation ........................................................................... | 89 |
| 11.8    | Dispute Resolution ............................................................. | 90 |
| **12.** | **MISCELLANEOUS** ........................................................... | **90** |
| 12.1    | Fees and Expenses ............................................................ | 90 |
| 12.2    | Bulk Sales Laws ................................................................. | 90 |
| 12.3    | Payments in Dollars ........................................................... | 90 |
| 12.4    | Amendment ........................................................................ | 90 |
| 12.5    | Assignment ........................................................................ | 90 |
| 12.6    | Waiver ................................................................................ | 91 |
| 12.7    | Notices .............................................................................. | 91 |
| 12.8    | Entire Agreement ............................................................... | 92 |
| 12.9    | Counterparts ...................................................................... | 92 |
| 12.10   | Publicity ............................................................................. | 92 |
| 12.11   | Headings ............................................................................ | 92 |
| 12.12   | Severability ........................................................................ | 92 |
| 12.13   | Third Parties ...................................................................... | 92 |
| 12.14   | Governing Law ................................................................... | 93 |
| 12.15   | Venue and Retention of Jurisdiction .................................. | 93 |
| 12.16   | Risk of Loss ....................................................................... | 93 |
| 12.17   | Enforcement of Agreement ................................................ | 93 |

<u>**MASTER SALE AND PURCHASE AGREEMENT**</u>

**THIS MASTER SALE AND PURCHASE AGREEMENT**, dated as of October 15**, 2007** between **DELPHI CORPORATION,** a Delaware corporation ("**Delphi**") on behalf of itself and the other entities set forth on <u>Schedule 1</u>, and **INTEVA PRODUCTS, LLC**, a Delaware limited liability company, on behalf of itself and the other buyers set forth on <u>Schedule 1</u> (each a "**Buyer**" and, collectively, the "**Buyers**"):

**WHEREAS,** Delphi, through its Affiliates referred to in this Agreement, is engaged in the Business (as hereinafter defined);

**WHEREAS,** the Securities Sellers (as hereinafter defined) own, directly or indirectly, the Sale Securities (as hereinafter defined);

**WHEREAS,** the Asset Sellers (as hereinafter defined) own the Acquired Assets (as hereinafter defined);

**WHEREAS,** on October 8, 2005 (the "**Petition Date**"), the Filing Affiliates (as hereinafter defined) filed voluntary petitions for relief (the "**Bankruptcy Cases**") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq. (as then amended) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"); and

**WHEREAS,** as contemplated by Sections 363, 365 and 1146 of the Bankruptcy Code, the Securities Sellers and the Asset Sellers desire to sell to the Buyers all of their right, title and interest in and to the Purchased Assets (as hereinafter defined), and Buyers desire to make such purchase, subject to and in accordance with the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the premises and the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, and intending to be legally bound, the Parties agree:

1.    <u>**DEFINITIONS:**</u>

   **1.1    <u>Certain Defined Terms</u>.**  As used in this Agreement, the following terms have the meanings set forth below or in the sections referred to below:

   "**Accounts Payable**" means all trade accounts payable and other obligations to pay suppliers and third parties to the extent arising from the conduct of the Business or relating to the Acquired Assets, including intercompany payables and all trade accounts payable  to the extent not settled prior to the Closing Date.

   "**Accounts Receivable**" means all trade accounts receivable and other rights to payment from customers to the extent arising from the conduct of the Business or relating to the Acquired Assets, including Intercompany Receivables and all other accounts or notes receivable, including customer payments owed to a Seller in connection with tools acquired on behalf of a customer, and the full benefit of all security for such accounts or notes, to the extent not paid prior to the Closing Date.

   "**Acquired Assets**" – Section 2.1.2.

1

"**Administrative Assets**" mean books, records and other administrative assets primarily used or held for use in the Business, including advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, photographs, production data, sales materials and records, purchasing materials and records, personnel records of employees, billing records, accounting records, other financial records and sale order files; provided, however, that Administrative Assets does not include Intellectual Property or Technical Documentation.

"**Affiliate**" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person.  For purposes of this definition, "control" means the possession, directly or indirectly or as trustee, personal representative or executor, of the power to direct or cause the direction of the affairs or management policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"**Agreement**" means this Master Sale and Purchase Agreement (including the Schedules and Exhibits referred to herein, each of which is incorporated herein by reference), as amended, modified or supplemented from time to time.

"**Allocation**" – Section 3.5.1.

"**Alternate Bid(s)**" – Section 10.10.

"**Alternate Bidder(s)**" – Section 10.10.

"**Alternative Transaction**" – Section 9.2.1.

"**Ancillary Agreement(s)**" means the Transfer Agreements and other agreements referred to in Section 8.2.

"**Asset Buyer(s)**" means the Buyers set forth on Schedule 1, with respect to the assets related to the manufacturing facilities, technical centers, technology and warehouses set forth opposite their names.

"**Asset Seller(s)**" means the Sellers set forth on Schedule 1, with respect to the assets related to the Manufacturing Facilities, technical centers, technology and warehouses set forth opposite their names.

"**Assumed Liabilities**" – Section 2.2.

"**Assumed U.S. Contracts**" – Section 6.3.

"**Auction**" – Section 10.8.

"**Bankruptcy Cases**" – Recitals.

"**Bankruptcy Code**" – Recitals.

"**Bankruptcy Court**" – Recitals.

"**Bankruptcy Rules**" mean the U.S. Federal Rules of Bankruptcy Procedure.

"**Benchmark Inventory Amount**" means the amount set forth in the statement of Inventory of the Business as of December 31, 2006, attached as <u>Schedule 3.3.1</u>.

"**Benefit Guarantee Term Sheet**" – Section 6.6.1.H

"**Bid Deadline**" – Section 10.3.

"**Bidder Confidentiality Agreements**" – Section 6.25.

"**Bidding Procedures**" – Section 10.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures and certain provisions of this Agreement, including, but not limited to, Buyers' right, under the terms and conditions set forth hereafter, to a Break-Up Fee or Expense Reimbursement.

"**Bidding Process**" – Section 10.1.

"**Break-Up Fee**" – Section 9.2.1.B.

"**Business**" means the design, testing, manufacture, development, marketing and sale of the Products by the Asset Sellers at the Manufacturing Facilities and Technical Centers and Sales Offices, except for the Excluded Assets and the JV Companies.

"**Business Day**" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by law to be closed in the City of New York.

"**Buyer(s)**" – Recitals.

"**Buyer Indemnified Parties**" – Section 11.3.2.

"**Buyers' Representative**" – Section 6.18.

"**Cap Amount**" **-** Section 11.3.2.B.

"**Cash**" means the sum of cash, cash equivalents and liquid investments plus all deposited but uncleared bank deposits and less all outstanding checks and electronic payments of the Business.

"**Cash Contribution**" means the tax effected at a rate of thirty-eight percent (38%), per unit cash flow, where cash flow equals per unit revenue less per unit: material cost, labor cost and plant burden cost (excluding depreciation and amortization).  In the case where the low cost country site is an existing facility of the Business, plant burden cost refers only to the Incremental Plant Burden required to support the Columbus products at that site.

"**Claims**" mean all Losses, Liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

3

"**Closing**" – Section 8.1.

"**Closing Date**" – Section 8.1.

"**Closing Inventory**" -  Section 3.4.1.A.

"**Closing Inventory Statement**" means the statement of Inventory of the Business (as adjusted in accordance with this Agreement) as of 11:59 P.M. (Eastern Standard Time) on the Closing Date, which statement will be prepared and delivered in accordance with Section 3.3.

"**Code**" means the United States Internal Revenue Code of 1986, as amended.

"**Collective Bargaining Agreements**" mean all collective bargaining agreements with any labor union, works council or other representative of Transferred Employees (including local agreements, amendments, supplements, letters and memoranda of understanding of any kind).

"**Columbus Latch Operations**" – Section 3.4.3.A.

"**Columbus Manufacturing Services Agreement**" means a manufacturing services agreement pursuant to which Delphi or its Affiliate will manufacture Buyers' requirements for those Products currently manufactured or contemplated to be manufactured at Delphi's Columbus, Ohio Manufacturing Facility, using machinery, equipment and tooling to be owned by Buyers.

"**Combined Business**" means the Business and Sellers' ownership interests in the JV Companies.

"**Commitment Letter**" – Section 5.9.

"**Committee**" – Section 10.3.

"**Competent Authority**" means a person, agency, department or subdivision thereof having governmental authority under an applicable Environmental Law, and/or a court or tribunal of competent jurisdiction.

"**Competition/Investment Law**" means any Law that is designed or intended to prohibit, restrict or regulate: (i) foreign investment; or (ii) antitrust, monopolization, restraint of trade or competition.

"**Competitive Business**" – Section 6.4.1.

"**Compliance Matter**" means an event, condition, activity, practice, action or omission at any Manufacturing Facility (other than the Grosspetersdorf, Austria, Vandalia, Ohio and Columbus, Ohio facilities) which gives rise to a breach or violation of an Environmental Law, but which excludes Environmental Contamination.

"**Confidential Information Memorandum**" means the Confidential Information Memoranda dated August 2006, relating to the Business.

"**Confidentiality Agreement**" means the confidentiality agreements between The Renco Group, Inc. and Delphi relating to the Sale, dated September 5, 2006 and September 6, 2006.

4

"**Consent**" means any consent, approval, authorization, waiver, permit, agreement, license, certificate, exemption, order, registration, declaration, filing or notice of, with or to any Person, or the expiration or termination of the waiting period under any Competition/Investment Law, in each case required to permit the consummation of any of the transactions contemplated by this Agreement.

"**Contracts**" mean purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, Software licenses, leases, product warranty or service agreements and other binding commitments, agreements, arrangements and undertakings of any nature.

"**Controlled Group Liability**" means any and all liabilities (i) under Title IV of ERISA, (ii) under Section 302 of ERISA, (iii) under Sections 412 and 4971 of the Code, (iv) as a result of a failure to comply with the continuation coverage requirements of Section 601 et seq. of ERISA and Section 4980B of the Code, and (v) under corresponding or similar provisions of foreign laws or regulations.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registrations, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein provided by international treaties or conventions; (ii) moral rights (including, without limitation, rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) semiconductor chip mask work registrations and applications therefore; and (v) rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Corporate Trademark Rights**" means Trademark Rights used both in the Business and in other businesses conducted directly or indirectly by Delphi.

"**CPA Firm**" – Section 3.3.3.

"**CRFMs**" means condenser radiator fan modules included in Seller's HVAC operations.

"**Cure Amounts**" mean all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Filing Affiliates and assignment to Buyers of the Assumed U.S. Contracts under the Sale Approval Order.

"**Data Room**" means the data room(s) in which the documents and information related to the Business, the Acquired Assets and JV Companies were disclosed to Buyers' representatives and counsel.

"**Debt Obligations**" mean obligations for borrowed money as evidenced by bonds, debentures, notes, financing or capital (as opposed to operating) leases and other similar instruments, letters of credit, performance bonds, bid bonds and other sureties of any kind or nature, and all guaranties of any of the foregoing.

"**Deductible Amount**" - Section 11.3.2.B.

"**Defending Party**"  - Section 11.7.

"**Deferred Items**" – Section 2.4.1.

"**Delphi**" – Recitals.

"**Demanding Party**" – Section 11.7.

"**Deposit Amount**" – Section 3.1.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement referred to in Section 8.2.5, dated as of the date hereof, executed by and among Buyers' Representative, Delphi and Escrow Agent concurrently with this Agreement.

"**EBITDA**" – Section 3.4.3.

"**EC Merger Regulation**" means Council Regulation (EEC) 4064/89 of the European Community, as amended.

"**Effects MOU**" – Section 6.6.2.

"**Employee Benefit Plan**" means any pension, savings, profit sharing, retirement, bonus, incentive, health, dental, death, accident, disability, stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, severance, vacation, sick leave, fringe or welfare benefits, any employment or consulting Contracts, collective bargaining agreements, "employee benefit plans" (as defined in Section 3(3) of ERISA), employee manuals, and written or binding oral statements of policies, practices or understandings relating to employment; provided, however, that for purposes of Section 4.11.2 and the first sentence of Section 4.11.3, "**Employee Benefit Plan**" shall not include oral statements of policies, practices or understandings.

"**Encumbrance**" means: (i) with respect to the Sale Securities or the equity interests in Mexican Newco, any voting trust, shareholder agreement, proxy or other similar restriction; and (ii) with respect to any property or asset (including the Sale Securities or any other shares of capital stock owned by Sellers, Buyers or their respective Affiliates) any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or a similar law relating to security interests in and over personal property).

"**Environment**" means the following media (whether individually or commingled): air, water, surface water, groundwater (whether an aquifer or water below the surface of the ground), and ground (whether at the surface or below the surface) and all organisms, ecosystems, flora, and natural resources.

"**Environmental Claim**" means a Proceeding by any Person alleging Liability arising from: (i) the existence of, exposure to or a Release of Hazardous Materials; (ii) noncompliance with any Environmental Law; or (iii) Environmental Contamination.  The term "**Environmental Claim**" shall include any claim by any Governmental Authority for enforcement, cleanup, removal, response, remedial or other actions or damages pursuant to any applicable Environmental Law, and any claim by any third party seeking damages, contribution, indemnification, cost recovery, compensation or injunctive relief resulting from the presence of

Hazardous Materials  or arising from alleged injury or threat of injury to health or the Environment, but shall not include claims by employees or other persons pursuant to any occupational safety and health act or regulation.

"**Environmental Contamination**" means the presence of a Hazardous Material at, in, under, on or about the Environment above applicable regulatory criteria or in violation of applicable Environmental Laws.

"**Environmental Damages**" means Losses arising under or pursuant to any Environmental Law or Environmental Claim, but in all cases excluding Losses deemed consequential or loss of profit.

"**Environmental Law**" means all Laws applicable to the conduct and the operation of the Business, or to any current or prior activity conducted on the Real Property, in force on or prior to the Closing Date, and relating to: (i) pollution; (ii) the management, handling, generation, treatment, storage, disposal or release of, or exposure to, Hazardous Materials; or (iii) the protection of the Environment, public health or natural resources.  Without limiting the generality of the foregoing, Environmental Laws include the federal Comprehensive Environmental Response, Compensation and Liability Act, the federal Resource Conservation and Recovery Act and the Michigan Natural Resources and Environmental Protection Act, all as amended, but shall not include claims by employees or other persons pursuant to any occupational safety and health act or regulation.

"**Environmental Permits**" mean any licenses, permits, authorizations and approvals issued by any Governmental Authority and required to be obtained or maintained by the Business in respect of the Acquired Assets under Environmental Laws material to the conduct and the operation of the Business.

"**Equityholders' Committee**" – Section 10.3.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

"**Escrow Agent**" means the escrow agent under the Deposit Escrow Agreement.

"**Excluded Assets**" – Section 2.1.3.

"**Excluded Products**" – Section 2.1.3.M.

"**Excluded Software**" means the Software identified on Schedule 2.1.3.O(iii).

"**Expense Reimbursement**" – Section 9.2.2.

"**Filing Affiliates**" mean Delphi and the following Affiliates of Delphi, each of which are included in the Bankruptcy Cases and operate certain portions of the Business or are Asset Sellers and/or Securities Sellers: Delphi Automotive Systems LLC, Delphi Automotive Systems (Holding), Inc. and Delphi Technologies, Inc.

"**Final Inventory Statement**" – Section 3.3.3.

"**Financial Statements**" – Section 4.4.

7

"**Foreign Operations**" mean the operations of the Business other than by any of the Filing Affiliates.

"**Future Unaudited Financial Statements**" – Section 4.4

"**GAAP**" means United States generally accepted accounting principles and practices as in effect from time to time.

"**Good Faith Deposit**" – Section 10.5.3.

"**Governmental Approval**" means any Consent of, with or to any Governmental Authority.

"**Governmental Authority**" means any United States or foreign federal, state, provincial or local government or other political subdivision thereof, any entity, authority or body exercising executive, legislative, judicial, regulatory or administrative functions of any such government or political subdivision, and any supranational organization of sovereign states exercising such functions for such sovereign states.

"**Governmental Order**" means, with respect to any Person, any judgment, order, writ, injunction, decree, stipulation, agreement, determination or award entered or issued by or with any Governmental Authority and binding on such Person.

"**Grievances**" - Section 6.6.7.

"**Grosspetersdorf Manufacturing Services Agreement**" means a manufacturing services agreement pursuant to which Delphi or its Affiliate will manufacture Buyers' requirements for those Products currently manufactured at Delphi's Grosspetersdorf, Austria Manufacturing Facility, using machinery, equipment and tooling to be owned by Buyers.

"**Hazardous Materials**" means any substance, element, mixture, chemical, constituent, waste, pollutant, contaminant, or material which is regulated or can give rise to Liabilities or Losses under an Environmental Law or an Environmental Permit, including asbestos, petroleum or petroleum-based or petroleum-derived compounds, polychlorinated biphenyls, and noxious, radioactive, flammable, ignitable, toxic, corrosive, reactive or caustic compounds or materials (whether solid, liquid or gaseous).

"**HSR Act**" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

"**HVAC**" means heating, ventilation and air conditioning.

"**Hybrid CrossCar Beam**" means an element of an automobile structure that provides the structural support for the vehicle cockpit incorporating additional features/functions through over-molded plastic content resulting in decreased mass and/or size of the ultimate cockpit.

"**Inactive Employees**" – Section 6.6.3.A

"**Income Statements**" – Section 4.4.

8

"**Incremental Plant Burden**" means additional expenses: (i) directly incurred by Buyer or its subsidiaries in connection with the low cost country site to which Columbus Products are relocated in order to manufacture Columbus Products at such site; and (ii) not included in the Financial Statements.

"**Indemnifiable Losses**" – Section 11.3.1

"**Indemnification Claim**" **-** Section 11.5.4.A

"**Individual Claim Amount**" **-** Section 11.3.2.B.

"**Intellectual Property**" means Patent Rights, Trademark Rights, Copyrights, Software, Trade Secrets and Know-How.

"**Intercompany Receivables**" mean the right of any Seller or its Affiliates to payment and performance of any Liabilities of the Business.

"**Inventory**" means finished goods, raw materials, work-in-process, packaging, stores, stock, supplies and other inventory, primarily used or held for use in the Business wherever located.

"**IUE-CWA**" means the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers AFL-CIO, the Industrial Division of the Communications Workers of America and its Local Union Number 711 (Gadsden).

"**JV Audited Financial Statements**" – Section 4.3.5.

"**JV Company(ies)**" means the following joint ventures which are engaged in the manufacture, development and sale of Products: Shanghai Delphi Automotive Door Systems, Co., Limited and KDS Company, Ltd.

"**JV Financial Statements**" – Section 4.3.5.

"**JV Licensed Intellectual Property**" – Section 4.3.11.

"**JV Material Contracts**" – Section 4.3.12.

"**JV Owned Intellectual Property**" – Section 4.3.11.

"**JV Partner Consent**" means any required consent and waiver of any right of first refusal from the partner in each JV Company to Delphi's sale of the Sale Securities.

"**Know-How**" means proprietary technical and business knowledge and information, regardless of whether recorded and, if recorded, regardless of the media in which it is recorded, such knowledge and information including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

9

"**Knowledge of Buyers**" or "**Buyers' Knowledge**" (or a similar phrase) means the actual knowledge, after reasonable inquiry of the individuals listed on Schedule 1.1.A, without imputation of the knowledge of any other Person.

"**Knowledge of Sellers**" or "**Sellers' Knowledge**" (or a similar phrase) means the actual knowledge, after reasonable inquiry of the individuals listed on Schedule 1.1.B, without imputation of the knowledge of any other Person; provided, however, that: (i) for purposes of Section 4.14 (Environmental Matters), "**Knowledge of Sellers**" or "**Sellers' Knowledge**" means the actual knowledge of: (a) the Divisional Environmental Manager, after reasonable inquiry of those individuals who, in the ordinary course of their employment with Delphi, would be expected to have knowledge of the matters addressed in Section 4.14 hereof,  as listed on Schedule 1.1B; and (b) such listed individuals, in any case, without imputation of the knowledge of any other Person; and (ii) for purposes of Section 4.3 (JV Companies), "**Knowledge of Sellers**" or "**Sellers' Knowledge**" means the actual knowledge of the business line executive of the Combined Business and the chief financial officers of the JV Companies, without imputation of the knowledge of any other Person.

"**Law**" means any and all applicable laws, rules, regulations, directives, decrees, treaties, statutes, provisions of any constitution and principles (including principles of the common law) of any Governmental Authority, as well as any applicable Governmental Order.

"**Leased U.S. Hourly Employees**" – Section 6.6.1.H

"**Leased Real Property**" – Section 4.17.1.

"**Liabilities**" mean any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on- or off- balance sheet, including those arising under any Law, Claim, Governmental Order, Contract or otherwise.

"**Licensed Intellectual Property**" means Sellers' rights with respect to Intellectual Property (exclusive of Software) licensed or sublicensed to Sellers from a third party, and that is used in, or conceived for use in, the Business, including Licensed Intellectual Property listed in Schedule 4.13.1, but excluding Sublicensed Intellectual Property.

"**Losses**" mean any and all claims, Liabilities, losses, damages, fines, penalties and costs (in each case including reasonable out-of-pocket expenses (including reasonable attorneys', accountants', technical consultants', engineers' and experts' fees and expenses)).

"**Management Presentations**" mean the presentations, expert meetings, site visits and question and answer sessions, provided by Delphi and Sellers (and their advisers and counsel) to the Buyers (and their advisers and counsel), with respect to the Business, the Acquired Assets and the JV Companies in view of the transactions contemplated herein.

"**Manufacturing Facilities**" means the Business' manufacturing facilities located at Matamoros, Mexico; Columbus, Ohio; Vandalia, Ohio; Woerth, Germany; Grosspetersdorf, Austria; Adrian, Michigan; Gadsden, Alabama; Cottondale, Alabama; North Kansas City, Missouri; and Orion, Michigan, each of which is singly referred to as a "**Manufacturing Facility**".

10

"**Marked Agreement**" – Section 10.5.2.

"**Material Adverse Effect**" means any change, occurrence or development that has, or is reasonably likely to have, a material adverse effect on the business, assets, Liabilities (except to the extent assumed or retained by Sellers' hereunder), results of operations, financial condition or prospects of the Combined Business, taken as a whole, but excludes any effect: (i) resulting from general economic or business conditions not disproportionately affecting the Combined Business; (ii) resulting from any changes in any Law, or in GAAP or any foreign generally accepted accounting principles; (iii) that is cured by the Sellers before the date of any termination of this Agreement by Buyers' Representative pursuant to Section 9.1 hereof; (iv) resulting from the negotiation, announcement or performance of this Agreement or the transactions contemplated hereby, including by reason of the identity of any Buyer or communication by any Buyer or its Affiliates of its plans or intentions regarding operation of the Business; (v) resulting from any act or omission of any Seller taken with the prior consent of any Buyer; (vi) resulting from the regulatory status of any Buyer; (vii) resulting from any act of God or other *force majeure* type event not disproportionately affecting the Combined Business relative to the competitors of the Combined Business; or (viii) resulting from acts of war or terrorism, whether or not directed at the Combined Business or Buyer.

"**Material Contracts**" – Section 4.13.1.

"**Mexican Newco**" – Section 6.24.

"**MDEQ**" – Section 6.21.

"**Net Benefit**" – Section 3.4.3.C(ii).

"**Net Cash**" means, for each JV Company, Cash less Debt Obligations (pro-rated based on Sellers' percentage ownership interest). In the event that the Debt Obligations of a JV Company exceed its Cash, the net amount of such Debt Obligations will be referred to as "**Net Debt**".

"**Net Relocation Investment**" – Section 3.4.3.C(iv).

"**NKC Manufacturing Services Agreement**" means a Manufacturing Services Agreement pursuant to which the Buyer of the North Kansas City, Missouri Manufacturing Facility will manufacture CRFMs currently manufactured at such facility for Delphi and/or its Affiliates.

"**Notice**" - Section 11.7.

"**NRB Payment Formula**" – Section 3.4.3.C(i).

"**NRB Statement**" – Section 3.4.3.B(i).

"**NRBA**" – Section 3.2.2.

"**Non-U.S. Employees**" means the employees (salaried and hourly) who are employed by Sellers primarily in the Business in a country other than the United States immediately prior to the Closing and identified on <u>Schedule 4.11.1</u>.[1]

"**Objection**" – Section 3.3.2.

"**OEM**" means automotive original equipment manufacturer.

"**OFAC**" – Section 5.6.

"**Ordinary Course of Business**" means, in all material respects, the usual, regular and ordinary course of a business consistent with the past practice thereof.

"**Organizational Document**" means, as to any Person, its certificate or articles of incorporation, its regulations or by-laws or any equivalent documents under the law of such Person's jurisdiction of incorporation or organization.

"**Owned Intellectual Property**" means Intellectual Property in and to which Sellers or any of their respective Affiliates hold, or have a right to hold, in whole or in part, any right, title and interest.

"**Owned Real Property**" – Section 4.17.2.

"**Partial Assignment Purpose**" – Section 6.25.

"**Party(ies)**" means Delphi and/or Buyers' Representative.

"**Patent Rights**" mean: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including, without limitation, any invention disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention and design registrations, patents and patent applications (including provisionals, substitutions, reissues, divisions, continuations, continuations-in-part, extensions and reexaminations) and all rights therein provided by international treaties or conventions; and (iv) rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Permits**" – Section 4.7.

"**Permitted Encumbrance**" means: (i) security interests relating to vendor tooling arising in the Ordinary Course of Business; (ii) Encumbrances in favor of any Sellers' pre-Petition Date secured lenders and post-Petition Date secured lenders which, upon Closing, will attach to the proceeds of the Sale attributable to the sale of the assets of the Filing Affiliates in the same order and priority that the Encumbrances attached to the assets of the Filing Affiliates, subject to

---

[1]    All hourly and salaried employees of the manufacturing facilities (other than Vandalia, Grosspetersdorf and Columbus), including those on leave status, will be included in the Sale, except that with respect to employees at the technical centers in Wuppertal and Juarez, only those employees of the Business will be transferred.

all existing defenses and other objections; (iii) any Encumbrance that may be created by or on behalf of Buyers, including in the case of Mexican Newco, mutually agreed Encumbrances; (iv) in relation to Real Property: (a) Encumbrances relating to any current real estate or ad valorem taxes or assessments not yet delinquent or being contested in good faith by appropriate Proceedings; (b) mechanic's, materialmen's, laborer's and carrier's liens and other similar liens arising by operation of law or statute in the Ordinary Course of Business for obligations which are not delinquent and which will be paid or discharged prior to Closing in the Ordinary Course of Business; (c) matters which an ALTA survey, or a similar survey in any other country, would disclose; (d) rights of the public and adjoining property owners in streets and highways abutting and adjacent to the Real Property; (e) easements, covenants, restrictions and other encumbrances of public record (except that encumbrances set forth on Schedule 4.17.2 would be removed at Closing); and (f) such other Encumbrances, the existence of which, in the aggregate, would not materially interfere with or materially affect the use of the respective underlying asset to which such Encumbrances relate as used on the Closing Date; and (vi) in the case of Sale Securities of the JV Companies, restrictions contained in the joint venture agreement, shareholders agreement or related agreements affecting such Sale Securities.

"**Person**" means any individual, partnership, firm, corporation, association, trust, unincorporated organization, joint venture, limited liability company, Governmental Authority or other entity.

"**Personal Property**" means tangible personal property primarily used or held for use in the Business, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other information technology assets, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Real Property, at the place of business of a vendor or elsewhere; provided, however, that the Personal Property does not include Intellectual Property or Technical Documentation.

"**Petition Date**" – Recitals.

"**Post-Closing Compliance Matter**" means a Compliance Matter occurring after the Closing Date.

"**Post-Closing Environmental Contamination**" means Environmental Contamination that results from an act, omission or event that occurs after the Closing Date.

"**Post-Closing Tax Period**" means any taxable period (or portion thereof) beginning after the close of business on the Closing Date.

"**Post-Petition Contracts**" mean the Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates on or after the Petition Date.

"**Post-Termination Alternative Transaction Purchase Price**" – Section 9.2.1.B.

"**Potential Bidder**" – Section 10.2.

"**Pre-Closing Compliance Matter**" means a Compliance Matter occurring on or prior to the Closing Date.

"**Pre-Closing Environmental Contamination**" means Environmental Contamination that: (i) results from an act, omission or event that occurs on or prior to the Closing Date; or (ii) is a result of the presence of Hazardous Materials that were generated or used in the operation of the Business prior to the Closing Date.

"**Post-Closing Payments**" – Section 3.4.4.

"**Pre-Closing Tax Period**" means any taxable period (or portion thereof) ending on or before the close of business on the Closing Date.

"**Pre-Closing Wastes**" – Section 11.4.1.B.

"**Pre-Petition Contracts**" mean the Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates before the Petition Date.

"**Preliminary Purchase Price**" – Section 3.2.1.

"**Price Adjustment**" – Section 3.2.2.

"**Proceeding**" means any action, claim, demand, suit, proceeding, citation, summons, subpoena, inquiry or investigation of any nature, civil, criminal, regulatory or otherwise, in law or in equity, by or before any Governmental Authority.

"**Product(s)**" means latches and door modules, Transferred Cinching Products, and instrument panels and cockpit modules of the Business, other than Excluded Products.

"**Product Warranty Claims**" – Section 2.2.2.

"**Productive Inventory**" means Inventory consisting of finished Products, as well as work-in-process or raw materials incorporated into Products.

"**Property Taxes**" – Section 6.5.3.

"**Purchase Price**" – Section 3.4.4.

"**Purchased Assets**" means the Acquired Assets and the Sale Securities.

"**Purchased Intellectual Property**" means Sellers' right, title and interest in Owned Intellectual Property, other than Shared Intellectual Property, that is used in, or conceived for use in, the Business, including the Intellectual Property listed in Schedule 4.12.1.A and Schedule 4.12.1.B.

"**Qualified Bid**" – Section 10.6.6.

"**Qualified Bidder**" – Section 10.2.

"**Real Property**" means the Owned Real Property and the Leased Real Property.

"**Release**" means any spill, emission, leaking, leaching, dumping, seeping, escape, disposal, placement, burial or discharge of any Hazardous Materials at, in, onto, under or through the Environment.

14

"**Relevant Items**" – Section 3.3.2.

"**Relocation Net Cash Flow Benefit**" – Section 3.4.3.c(iii).

"**Remedial Works**" means the works, designs, investigations and activities carried out by a Party in relation to Environmental Contamination or Compliance Matters, but excluding expenses of investigating information for the purposes of making a claim for indemnification under this Agreement.

"**Remediation Standards**" means standards which are: (i) the minimum criteria or standards under Environmental Laws, including use of risk assessment methodologies where permitted, in existence as of the time of completion of any Remedial Works to which such standards apply; and (ii) applicable to the industrial use and operations at the Real Property as carried out at the Closing Date.

"**Remedy**" - Section 11.4.3.A.

"**Required Bid Documents**" – Section 10.5.

"**Restricted Parties**" – Section 6.6.10.

"**Restricted Period**" – Section 6.4.1.

"**Retained Cinching Products**" - Section 6.11.3.B.

"**Retained Cinching Products Intellectual Property**" - Section 6.11.3.B.

"**Retained Liabilities**" – Section 2.3.

"**Return Date**" – Section 10.11.

"**Sale**" means the sale, assignment and transfer of the Purchased Assets from Sellers to Buyers in accordance with this Agreement and the relevant Transfer Agreements.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court entered pursuant to Sections 363 and 365 of the Bankruptcy Code, the form and substance of which is reasonably satisfactory to Buyer, authorizing and approving, among other things, the Sale free and clear of all Encumbrances on Purchased Assets sold by a Filing Affiliate, other than Permitted Encumbrances.

"**Sale Hearing**" – Section 10.9.

"**Sale Motion**" means the motion filed by Delphi with the Bankruptcy Court for entry of the Sale Approval Order.

"**Sale Securities**" mean the shares of the JV Companies, as set forth on <u>Schedule 4.3.2</u> to this Agreement.

"**SDN List**" – Section 5.6.

15

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"**Securities Buyer(s)**" means the Buyers set forth on <u>Schedule 1</u>, with respect to the Sale Securities of the JV Company set forth opposite their names.

"**Securities Seller(s)**" means the Sellers set forth on <u>Schedule 1</u>, with respect to the Sale Securities of the JV Company set forth opposite their names.

"**Seller(s)**" means Delphi and/or the relevant Asset Sellers or Securities Sellers (including Filing Affiliates and non-Filing Affiliates that are Sellers) with respect to the relevant Acquired Assets or Sale Securities, as appropriate with respect to the portion of the Business and the context in which such term is used.

"**Seller Tax Liabilities**" means all Taxes relating to Acquired Assets, the operations, employees, assets or income of the Asset Sellers for the Pre-Closing Tax Period and the portion of the Straddle Period allocated to Seller under Section 6.5.3.

"**Shared Intellectual Property**" means Owned Intellectual Property (other than Corporate Trademark Rights and Excluded Software) that is used in, or conceived for use in, the Business and in one or more other businesses conducted directly or indirectly by Delphi or an Affiliate but is not used or conceived for use primarily in the Business.

"**Significant Customer(s)**" – Section 4.13.3.

"**Software**" means computer software and programs, including source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**SOP**" – Section 3.4.3.A

"**Straddle Period**" – Section 6.5.3.

"**Sublicensed Intellectual Property**" means Sellers' rights with respect to the Intellectual Property listed in <u>Schedule 6.11.1</u> and any other Intellectual Property (exclusive of Software) licensed or sublicensed to Sellers from a third party, and that is used in, or conceived for use in, the Business but is not primarily used or held for use in the Business.

"**Subsequent Bid**" – Section 10.6.6.

"**Successful Bid(s)**" – Section 10.8.6.

"**Successful Bidder(s)**" – Section 10.8.6.

"**Tax**" or "**Taxes**" means any federal, state, local or foreign taxes of any kind, including but not limited to those measured on, measured by or referred to as, income, alternative or add-on minimum, gross receipts, escheat, capital, capital gains, capital stock, sales, use, *ad valorem*, franchise, profits, license, privilege, transfer, withholding, payroll, employment, withholding on amounts paid to or by the taxpayer, unemployment, disability, social security, social, excise, severance, stamp, occupation, premium, goods and services, value added,

property, environmental or windfall profits taxes, customs, duties or similar fees, assessments or charges of any kind whatsoever,  together with any interest and any penalties, additions to tax or additional amounts imposed by any Governmental Authority.

"**Tax Claim**" means any Claim related to Tax or Taxes.

"**Tax Return**" means any return (including estimated returns), report, declaration, form, election letter, statement, claim for refund or other information required to be filed with any Governmental Authority with respect to Taxes, including any schedule or attachment thereto or amendment thereof.

"**Taxing Authority**" means, with respect to any Tax, the Governmental Authority thereof that imposes such Tax and the agency, court or other body (if any) charged with the interpretation, administration or collection of such Tax for such Governmental Authority.

"**Technical Centers and Sales Offices**" means the technical and customer support centers located at Troy, Michigan; Vandalia, Ohio; Juarez, Mexico; Stuttgart, Germany; Wuppertal, Germany; and Wolfsburg, Germany.

"**Technical Documentation**" means all documented technical information owned by Sellers that is currently in the files of the Business or primarily used in the Business, in each case pertaining to the design or manufacture of the Products.

"**Third Party**" or "**third party**" means any person not a Party, Buyer, Seller or a Competent Authority.

"**Trade Secrets**" mean: (i) all forms and types of financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and regardless of whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and (ii) confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or un-patentable and whether or not reduced to practice); and (iii) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" mean: (i) trademarks, trade names and service marks; (ii) the goodwill associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; and (iv) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Transfer Agreement(s)**" – Section 8.2.2.

"**Transfer Regulation**" means any Law pursuant to which the employment of any employee of an Asset Seller (or any employee of any other Affiliate of Delphi, except for the JV Companies, who is dedicated to the Business) will transfer to a Buyer in connection with the transactions contemplated by this Agreement, including pursuant to Directive 77/187/EC of the

European Parliament and council and any Law adopted pursuant thereto, and any Law, works council or union agreement otherwise relating to the delivery of information to or consultation with employees or their representatives in connection with the transactions contemplated by this Agreement.

"**Transfer Taxes**" – Section 6.5.5.

"**Transferred Cinching Products**" - Section 6.11.3.A.

"**Transferred Employees**" means all U.S. Employees and Non-U.S. Employees who accept a Buyer's offer of employment or otherwise transfer to Buyers pursuant to Transfer Regulations or Sections 6.6.1.A or 6.6.1.B, but excluding in all cases employees of either of the JV Companies other than seconded employees of any Delphi Affiliate referred to in Section 6.6.1.A.

"**Transferred Non-U.S. Employees**" means all Transferred Employees who are Non-U.S. Employees.

"**Transferred U.S. Employees**" means all Transferred Employees who are either U.S. Hourly Employees or U.S. Salaried Employees.

"**Transition Services Agreement**" – Exhibit 8.2.3.

"**Troy Technical Center Sublease**" – Exhibit 8.2.11.

"**UAW**" means the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 2083 (Cottondale) and 2031 (Adrian).

"**Union Consents**" means waiver by the Unions of any "no sale" provisions contained in any of the Seller U.S. Collective Bargaining Agreements.

"**Union(s)**" means the UAW and IUE-CWA.

"**U.S. Employees**" means U.S. Hourly Employees and U.S. Salaried Employees.

"**U.S. Hourly Employees**" means the hourly employees represented by the UAW, and IUE-CWA of the Adrian, Michigan; Gadsden, Alabama; or Cottondale, Alabama Manufacturing Facilities who are employed by Sellers primarily in the Business (in the case of Adrian, Michigan, including HVAC employees) in the United States immediately prior to the Closing and identified on Schedule 4.11.1.

"**U.S. Salaried Employees**" means the salaried employees and hourly non-union employees who are employed by Sellers primarily in the Business in the United States immediately prior to the Closing and identified on Schedule 4.11.1.

"**USA Patriot Act**" – Section 5.6.

"**Vandalia Lease**" means a lease substantially in the form of Exhibit 8.2.10 hereto.

"**Vandalia Manufacturing Services Agreement**" means a Manufacturing Services Agreement pursuant to which Delphi or its Affiliate will manufacture Buyers' requirements for

18

those Products currently manufactured at Delphi's Vandalia, Ohio Manufacturing Facility, using machinery, equipment and tooling to be owned by Buyers.

**1.2    Other Interpretive Provisions.**  The words "**hereof**", "**herein**" and "**hereunder**" and words of similar import when used in this Agreement refer to this Agreement as a whole (including any Schedules hereto) and not to any particular provision of this Agreement, and all Article, Section, Schedule and Exhibit references are to this Agreement unless otherwise specified.  The words "**include**", "**includes**" and "**including**" are deemed to be followed by the phrase "without limitation."  The meanings given to terms defined herein are equally applicable to both the singular and plural forms of such terms.  Whenever the context may require, any pronoun includes the corresponding masculine, feminine and neuter forms.  Except as otherwise expressly provided herein, all references to "**dollars**" or "**$**" are deemed references to the lawful money of the United States of America, and all references to "**euros**" or "**€**" are deemed references to the lawful money of the European Economic and Monetary Union.  References to undertakings by the "**Buyer(s)**" or the "**Seller(s)**" are understood to be undertakings by the relevant Buyer to perform, and by the relevant Seller to perform, as the case may be.

**2.    PURCHASE AND SALE:**

**2.1    Transfers by Sellers and their Affiliates:**

**2.1.1    Purchase and Sale of the Sale Securities.**  Upon the terms and subject to the conditions set forth in this Agreement as modified or supplemented by any applicable Transfer Agreement, on the Closing Date, the Securities Sellers will sell, transfer, assign, convey and deliver to the Securities Buyers, and the Securities Buyers will purchase, accept and acquire, the Sale Securities free and clear of all Encumbrances except Permitted Encumbrances.

**2.1.2    Purchase and Sale of the Acquired Assets.**  Upon the terms and subject to the conditions set forth in this Agreement as modified or supplemented by any applicable Transfer Agreement, on the Closing Date, the Asset Sellers will sell, transfer, assign, convey and deliver to the Asset Buyers, and the Asset Buyers will purchase, accept and acquire from the Asset Sellers, free and clear of all Encumbrances except Permitted Encumbrances, all of the assets and properties described in the next sentence (collectively, the "**Acquired Assets**"), subject in each case to Section 2.1.3.  The Acquired Assets consist of all of Asset Sellers' right, title and interest in and to the non-cash assets primarily used or held for use in the Business (other than the Excluded Assets), including:  Real Property, Personal Property, Inventory, Contracts, Administrative Assets, Permits, Purchased Intellectual Property, Licensed Intellectual Property, Technical Documentation and Software that is specifically listed as "included" on Schedule 2.1.3.O(iii), in each case primarily used or held for use in the Business; provided that, with respect to the Technical Centers and Sales Offices, the Acquired Assets will consist only of the assets specifically set forth in Schedule 2.1.2.  Except for the Acquired Assets, the Asset Sellers will retain all other assets, properties, rights and interests owned, used or held by the Asset Sellers.

**2.1.3    Excluded Assets.**  Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreements, the following properties and assets will not be included in the Acquired Assets (the "**Excluded Assets**"):

**A.** **Third Party Assets.** Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by an OEM or any other third party, including third party bailed assets, in each case as set forth in Schedule 2.1.3.A or, in the case of tooling, as will be set forth on Schedule 2.1.3.A at least fifteen (15) days before Closing (such tooling Schedule to be reasonably satisfactory to Buyers' Representative); provided however, that any Contracts or other rights the Asset Sellers have pertaining to such bailed assets will be transferred as part of the Acquired Assets.

**B.** **Intellectual Property.** Corporate Trademark Rights, Shared Intellectual Property and Sublicensed Intellectual Property (except for the limited rights granted to the Buyers pursuant to Sections 6.10 and 6.11).

**C.** **Financial Assets.** All Cash and Accounts Receivable of the Business as of Closing.

**D.** **Insurance.** Insurance coverage and insurance policies relating to the operations of the Business, including any and all claims and rights thereunder and the proceeds thereof and all prepaid insurance premiums.

**E.** **Claims.** All claims, defenses, causes of action or claims of any kind relating to either Excluded Assets or Retained Liabilities.

**F.** **Tax Refunds, Returns.** All tax refunds, credits, prepayments or deferred tax assets, and Tax Returns and work papers relating thereto for time periods prior to Closing.

**G.** **Bankruptcy Rights.** All of the rights and claims of the Filing Affiliates available to Filing Affiliates under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing.

**H.** **Personnel Records.** All work histories, personnel and medical records of employees and former employees of any Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws, the appropriate Buyer(s) will be provided the originals of all personnel and medical records of all Transferred Employees after posted written notice or other appropriate notice to such Transferred Employees if legally required or if Sellers so elects. All such personnel and medical records of Transferred Employees are books and records governed by Section 6.9 of this Agreement. Upon written request of Sellers (or an Affiliate of Sellers), Buyer will promptly return or cause to be returned any and all of these records to Sellers (or an Affiliate of Sellers as directed) at which time Sellers, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws, will provide the appropriate Buyer(s) with copies of the personnel and medical records of such employees. If an employee objects to provision of personnel or medical records to any Buyer, the records will not be

provided, except to the extent Sellers determine that provision of the records to such Buyer over the objections by the employee is permitted by the applicable local law without adverse consequences to Sellers or to any Affiliate of Sellers.

I.    **Privileged Information and Materials**.  Information and materials protected by the attorney-client privilege (or its equivalent in jurisdictions outside the United States), or that, in the case of environmental-related documents, Sellers consider to be proprietary information.

J.    **Technical Centers and Sales Offices**.    All real property (including any improvements located thereon) and Personal Property located at the Technical Centers and Sales Offices, other than those assets which are specifically set forth on Schedule 2.1.2.

K.    **Certain Real Property and Personal Property**.  (i) Real Property at Columbus, Ohio; and (ii) Real Property and Personal Property at Vandalia, Ohio and Grosspetersdorf, Austria other than Personal Property used primarily in the Business.

L.    **Additional Excluded Personal Property**.  All assets, business lines, rights, Contracts and claims, wherever located, whether tangible or intangible, relating primarily to HVAC products, including machinery, equipment, Inventory and tooling of the HVAC assembly line located at Adrian, Michigan; and the CRFM operations located at North Kansas City, Missouri.

M.    **Excluded Products**.  All assets, business lines, rights, Contracts and claims, wherever located, whether tangible or intangible, real or personal relating primarily to power products, Retained Cinching Products or HVAC products and related assets (collectively, "**Excluded Products**").

N.    **Common Delphi Services**.    Subject to the provisions of the Transition Services Agreement, common Delphi services, if any, including legal, insurance, accounting, finance, tax and information technology and support.

O.    **Inventory and Other Assets**.  (i) All Inventory, products, rights, properties, assets and businesses of the Business which will have been transferred or disposed of by Sellers prior to Closing in the Ordinary Course of Business; (ii) any document, information, Permit, Contract, Intellectual Property or other asset the transfer of which is prohibited by any Law and in each case which is listed on Schedule 2.1.3.O(ii); (iii) all computer hardware, equipment, Software and other assets, in each case as are listed on Schedule 2.1.3.O(iii);and (iv) Vehicles assigned to Transferred Employees under Seller's company vehicle program and pooled vehicles.

**2.1.4**    **Post-Closing Asset Deliveries**.    Should Sellers, in their reasonable discretion, determine after the Closing that books, records or other materials constituting Acquired Assets are still in the possession of Sellers or any of its Affiliates, Sellers will or will cause such Affiliates to promptly deliver them to Buyers at no cost to Buyers. Should Sellers or Buyers, in their reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to Buyers, Buyers will promptly return them to Sellers at no cost to Sellers.

**2.2**    **Assumption of Liabilities Regarding Acquired Assets.**    The Buyers will assume, and will thereafter pay, perform and discharge as and when due, and will be liable with respect to only the following Liabilities of the Asset Sellers specifically referred to in this Section 2.2 (collectively, the "**Assumed Liabilities**"):

**2.2.1**    All Liabilities of the Asset Sellers arising under any Contracts, licenses, permits, leases and other agreements included in the Acquired Assets and assigned or otherwise transferred to Buyers or any relevant Buyer Affiliate pursuant to the terms of this Agreement or the Transfer Agreements and other obligations relating to any Buyer's ownership or use of the Acquired Assets, in each case arising on or after the Closing Date;

**2.2.2**    Recognizing that Seller will assign its rights against third party manufacturers, all Liabilities arising out of, resulting from or relating to product warranty or product return with respect to Products sold on, before or after Closing, including all Liabilities arising from, caused by or related to any obligation to implement any replacement, field fix, retrofit, modification or recall campaign with respect to any Product (collectively, "**Product Warranty Claims**") made, designed, manufactured, assembled, installed, sold, leased or licensed (whether or not any such Products are manufactured or shipped before or after Closing) by Sellers or any of its predecessors except that with respect to Products shipped before Closing, Buyer would be responsible only for: (i) Product Warranty Claims made after thirty-six (36) months following the Closing; and (ii) providing replacement Products at cost (without mark-up) for Product Warranty Claims that are Seller's responsibility under this Agreement, provided that Buyer has the ability to manufacture and capacity is available (including current orders and new business awards) for no more than six (6) months in the aggregate per defect type – otherwise Buyer may charge such costs plus ten percent (10%) profit;

**2.2.3**    All Liabilities in the nature of general, automobile and product liability, arising on or after Closing, including any Liability for Claims made for injury to persons and/or property arising from, in each case caused by or arising out of the design, manufacture or assembly of any Product shipped on or after Closing, and any Liability arising from, caused by or arising out of any defective or insufficient warnings, labeling or instructions contained on or provided in connection with any such Products;

**2.2.4**    Any and all Environmental Claims or Environmental Damages relating to: (i) Post-Closing Environmental Contamination; (ii) Post-Closing Compliance Matters; or (iii) the operation of the Business after the Closing Date in violation of any Environmental Laws or any Environmental Permit, whether in effect prior to or after the Closing Date;

**2.2.5**    Any and all Tax Claims, to the extent that they arise out of or relate to the period after Closing;

**2.2.6**    Liabilities with respect to Transferred Employees as set forth in Section 6.6; and

**2.2.7**    All Liabilities that any Buyer assumes or agrees to pay for or be responsible for pursuant to the terms of any Ancillary Agreement or as required by Law due to the transfer of the Business to the Buyers.

**2.3      Retained Liabilities.**  Except as referred to in Section 2.2, Buyer will not assume or be deemed to have assumed, and will have no Liability with respect to, any other Liabilities of any Asset Seller, and any such Asset Seller will continue to be responsible for such Liabilities, including, without limitation, the following Liabilities (collectively, "**Retained Liabilities**"):

**2.3.1**   Accounts Payable of the Business as of Closing;

**2.3.2**   All Liabilities of the Asset Sellers arising under any Contracts, licenses, permits, leases and other agreements included in the Acquired Assets and assigned or otherwise transferred to Buyers or any relevant Buyer Affiliate pursuant to the terms of this Agreement or the Transfer Agreements and other obligations relating to any Buyer's ownership or use of the Acquired Assets, in each case arising prior to the Closing Date;

**2.3.3**   Product Warranty Claims made against the Business within thirty-six (36) months following the Closing with respect to Products shipped before the Closing;

**2.3.4**   All Liabilities in the nature of general, automobile and product liability arising before Closing, including any Liability for Claims made for injury to persons and/or property, arising from, caused by or arising out of the manufacture or assembly of any Product shipped before Closing, and any Liability arising from, caused by or arising out of any defective or insufficient warnings, labeling or instructions contained on or provided in connection with any such Products;

**2.3.5**   Any and all Environmental Claims or Environmental Damages relating to: (i) Pre-Closing Environmental Contamination; (ii) Pre-Closing Compliance Matters; or (iii) compliance with or failure to comply with any Environmental Laws or any Environmental Permit related to the operation of the Business prior to the Closing Date, including the liabilities referred to in Schedule 4.14.

**2.3.6**   Liabilities in respect of employment performed prior to the Closing (except as otherwise provided in Section 6.6), Controlled Group Liabilities and Liabilities under Seller Employee Benefit Plans;

**2.3.7**   Seller Tax Liabilities;

**2.3.8**   Any Liability of Sellers arising prior to the Closing Date for administrative fees and expenses that are "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code;

**2.3.9**   Liabilities related to the Excluded Assets; and

**2.3.10**  Except as expressly provided in Section 2.2, any Liability of the Asset Sellers arising out of, relating to, or incurred in connection with the businesses retained by the Asset Sellers and which are not arising out of, relating to or incurred in connection with the Business.

**2.4      Deferred Items:**

**2.4.1      Non-Assignability.**  To the extent that any Contract or Permit included in the Acquired Assets is not capable of being assigned (whether pursuant to Section 365 of the Bankruptcy Code or, if inapplicable, then pursuant to the terms of such Contract or

other applicable law) to Buyer at the Closing without the Consent of the issuer thereof or the other party thereto or any third party (or a Governmental Authority), or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law ("**Deferred Item(s)**"), this Agreement will not constitute an assignment thereof, or an attempted assignment, unless any such Consent is obtained.

**2.4.2    Efforts to Obtain Necessary Consents.**    At Buyer's request, the applicable Seller will, at its expense, use commercially reasonable efforts, and the applicable Buyer will, at its expense, cooperate with Sellers, to obtain the necessary Consents and to resolve the impracticalities of assignment referred to in Section 2.4.1 before or after the Closing.

**2.4.3    If Consents Cannot be Obtained.**    To the extent that the Consents referred to in Section 2.4.1 are not obtained by the applicable Seller, or until the impracticalities of assignment referred to therein are resolved, Sellers' sole responsibility with respect to such matters, notwithstanding Section 2.1.2, will be to use, during the twelve (12) month period commencing with the Closing, commercially reasonable efforts, at no transfer, assignment or similar cost to Sellers, to: (i) provide to Buyer the benefits of any Deferred Item; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Buyer, without incurring any financial obligation to Buyer; and (iii) enforce for the account of Buyer and at the cost of Buyer any rights of Sellers arising from any Deferred Item referred to in Section 2.4.1 against such issuer thereof or other party or parties thereto.

**2.4.4    Obligation of Buyer to Perform.**    To the extent that Buyer is provided the benefits pursuant to Section 2.4.3 of any Deferred Item, Buyer will perform, on behalf of Sellers, for the benefit of the issuer thereof or the other party or parties thereto (including payment obligations) the obligations of Sellers thereunder or in connection therewith and if Buyer will fail to perform to the extent required herein, Sellers, without waiving any rights or remedies that they may have under this Agreement or applicable Laws, may suspend their performance under Section 2.4.3 in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or Sellers may perform at Buyer's sole cost and expense, in which case Buyer will reimburse Sellers' costs of such performance immediately upon receipt of an invoice therefore. Buyers will reimburse Sellers and will hold Sellers harmless from and against all Liabilities, incurred or asserted as a result of Sellers' post-Closing direct or indirect ownership, management or operation of the Deferred Items on behalf of Buyers.

**2.4.5    Standard of Care.**    Sellers will have no Liability to any Buyer arising out of the provision of the benefits of the Deferred Items other than for gross negligence or willful misconduct and will have no Liability for actions taken in accordance with the request or direction of Buyer Parent or its Affiliates. Buyers will reimburse Sellers and will hold Sellers harmless from and against all Liabilities, incurred or asserted as a result of Sellers' post-Closing direct or indirect ownership, management or operation of the Deferred Items.

**2.5    JV Company Liabilities.**    Notwithstanding anything to the contrary herein, no Liabilities of the JV Companies will be affected by this Agreement.  The Liabilities of the JV Companies will remain the Liabilities of the JV Companies and neither Sellers nor Buyers will have any obligation for such Liabilities or otherwise with respect to the JV Companies.

3.      **PURCHASE PRICE; ADJUSTMENT; ALLOCATION**:

**3.1      Deposit Amount.**  Immediately upon receipt of notice that the condition referred to in Section 7.1.6 has been received, Buyers' Representative will deliver to the Escrow Agent pursuant to the terms of the Deposit Escrow Agreement Two Million Dollars ($2,000,000.00) in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), to be held by the Escrow Agent in an interest bearing account reasonably acceptable to Buyers' Representative to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures (which procedures will be set forth in the Deposit Escrow Agreement):

**3.1.1**   Delphi and Buyers' Representative will jointly instruct the Escrow Agent to deliver the Deposit Amount on the Closing Date, by wire transfer of immediately available funds, to an account designated by Delphi in the Deposit Escrow Agreement;

**3.1.2**   Upon any material breach by a Buyer of this Agreement or the Bidding Procedures which results in termination of this Agreement, Delphi and Buyers' Representative will jointly instruct the Escrow Agent to deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Delphi in the Deposit Escrow Agreement, to be retained by Delphi; or

**3.1.3**   Upon termination of this Agreement in accordance with the termination provisions set forth in Article 9 for any reason other than a Buyer breach, then, on: (i) the date which is ten (10) days after such termination; or (ii) in the event that an Alternative Transaction is completed, the Return Date (which ever is earlier) Delphi and Buyers' Representative will jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Buyer's Representative in the Deposit Escrow Agreement, to be retained by Buyers.

**3.2      Preliminary Purchase Price:**

**3.2.1**   On the Closing Date and subject to the terms and conditions of this Agreement, in consideration of the Sale, Buyers' Representative, on behalf of Buyers, will pay to Delphi or the Sellers designated by Delphi an amount equal to Seventy Eight Million Dollars ($78,000,000.00) (such amount plus the Deposit Amount, the "**Preliminary Purchase Price**").  The Parties understand and agree that the amount of the Purchase Price allocated to the Sales Securities identified in the China Share Transfer Agreement must be paid in local currency to the account designated by the applicable Seller.

**3.2.2**   The Preliminary Purchase Price will be subject to a "**Price Adjustment**" for certain defined items, as more specifically described in Section 3.4.    Price Adjustment consists of only: (i) as of Closing, changes in Inventory balance between the date of the Benchmark Inventory Amount and Closing (taking into account the amounts relating to the Productive Inventory to be bought back from Buyers pursuant to Section 3.4.1.B); and (ii) the Net Relocation Benefit Amounts ("**NRBA**"), if any, that may be paid under the mechanism described in Section 3.4.3 below.

**3.3**    <u>Preparation of Closing Inventory Statement</u>:

**3.3.1**    Within sixty (60) days after the Closing Date, Delphi will prepare and deliver to Buyers' Representative a Closing Inventory Statement.  The Closing Inventory Statement will be based on a physical inventory of the Inventory of the Business, and utilizing a methodology, and accounting therefor, in accordance with GAAP consistent with the methodology used in determining the Benchmark Inventory Amount (attached as <u>Schedule 3.3.1</u>), to be taken jointly by the Parties within thirty (30) Business Days after the Closing Date, consistent with past practice, except that, with respect to Productive Inventory, any such Inventory reasonably expected not to be used within one (1) year after Closing will be deemed to have no value.  Each Party's out-of-pocket costs associated with such physical inventory count will be borne separately by such Party. Buyers will, after Closing and pending agreement or final determination of the Closing Inventory Statement, allow Delphi and its Affiliates and their accountants, agents and advisers such access to the Business, all relevant employees and all relevant records, information and other documentation (and will, upon request, provide copies thereof) as is reasonably necessary to enable Sellers to prepare the Closing Inventory Statement and to settle the Final Inventory Statement, including access to and the services of key personnel.

**3.3.2**    Buyers' Representative will, within thirty (30) days after the delivery by Delphi of the Closing Inventory Statement, complete its review of such statement.   If Buyers' Representative disagree with the Closing Inventory Statement, Buyers' Representative will, on or before the last day of such thirty (30) day period, inform Delphi in writing (the "**Objection**") of disagreements which in the aggregate exceed $100,000 (collectively, "**Relevant Items**").  Any Objection will specify in reasonable detail the nature of any disagreement so asserted, and include all supporting schedules, analyses, working papers and other documentation.  If: (i) no such Objection has been timely provided to Seller; or (ii) the sum of all Relevant Items fails to exceed $100,000, then: (a) the Closing Inventory Statement will be deemed to be the Final Inventory Statement; and (b) Sellers' calculations will be final and binding on the Parties of all items therein.

**3.3.3**    Delphi will then have thirty (30) days following the date it receives the Objection to review and respond to the Objection.  If Delphi and Buyers' Representative are unable to resolve all of their disagreements with respect to the determination of the foregoing items by the fifteenth (15th) day following Delphi's response thereto, after having used their good faith efforts to reach a resolution, they will refer their remaining differences to Grant Thornton    (the "**CPA Firm**"), who will, acting as experts in accounting and not as arbitrators, determine on a basis consistent with the requirements of Section 3.3, and only with respect to the specific Relevant Items remaining disputed, whether and to what extent, if any, the Closing Inventory Statement requires adjustment. Delphi and Buyers' Representative will request the CPA Firm to use its commercially reasonable efforts to render its determination within thirty (30) days.  In resolving any disputed item, the CPA Firm: (i) will be bound by the principles set forth in this Section 3.3 and <u>Schedule 3.3.3</u>; (ii) will limit its review to matters specifically set forth in the Objection that remain disputed; and (iii) will not assign a value to any item greater than the greatest value for such item claimed by either Party or less than the smallest value for such item claimed by either Party.  The CPA Firm's determination will be conclusive and binding upon Delphi and Buyers.  Delphi and Buyers will make reasonably available to the CPA Firm all relevant books and records, any work papers (including those of the Parties' respective accountants subject to any conditions such

26

accountants may impose) and supporting documentation relating to the Closing Inventory Statement, and all other items reasonably requested by the CPA Firm. The "**Final Inventory Statement**" will be: (i) the Closing Inventory Statement if the Parties so agree or if so determined in accordance with Section 3.3.2; or (ii) if an Objection is made under Section 3.3.2, the Closing Inventory Statement, as adjusted pursuant to the agreement of the Parties, or as adjusted by the CPA Firm. The fees, costs and expenses of the CPA Firm under this Section 3.3.3: (i) will be borne by Buyers' Representative in the proportion that the aggregate dollar amount of such disputed items so submitted that are unsuccessfully disputed by Buyers' Representative (as finally determined by the CPA Firm) bears to the aggregate dollar amount of such items so submitted; and (ii) will be borne by Delphi in the proportion that the aggregate dollar amount of such disputed items so submitted that are successfully disputed by Buyers' Representative (as finally determined by the CPA Firm) bears to the aggregate dollar amount of such items so submitted. Whether any dispute is resolved by agreement among the Parties or by the CPA Firm, changes to the Closing Inventory Statement may be made only for items as to which Buyers' Representative have taken exception in the Objection. Each Party will bear its own expenses incurred in this dispute resolution process, including fees of its accountants, attorneys and other agents.

**3.4**     **Preliminary Purchase Price Adjustments:**

**3.4.1**     **Inventory Adjustment:**

**A.**     If the amount of Inventory reflected in the final Closing Inventory Statement is less than the Benchmark Inventory Amount, Delphi will pay to Buyers' Representative an amount equal to such deficiency. If the amount of Inventory reflected in the Final Inventory Statement ("**Closing Inventory**") is greater than the Benchmark Inventory Amount, Buyers' Representative will pay to Delphi an amount equal to such excess. Such deficiency or excess payment will be paid in immediately available funds within three (3) Business Days after the ultimate determination of the Final Inventory Statement as provided in this Section 3.4.

**B.**     The relevant Sellers of Closing Inventory at the Columbus, Ohio; Vandalia, Ohio; and Grosspetersdorf, Austria Manufacturing Facilities will immediately buy back from the relevant Buyers all Productive Inventory included in the Closing Inventory for such sites, for use in the appropriate Manufacturing Services Agreement. The amounts required to be paid by Buyers under Section 3.4.1.A above will be reduced by the Closing Inventory amount attributable to Productive Inventory bought back by Sellers under this Section 3.4.1.B, as payment in full by Sellers for such Productive Inventory.

**3.4.2**     **Intentionally Omitted.**

**3.4.3**     **NRBA:**

**A.**     **Generally.**     Upon the relocation of latch products currently produced in Columbus, Ohio ("**Columbus Latch Operations**") to a lower labor cost region / country within twenty-four (24) months of Closing; and (ii) the Business has achieved a minimum Earnings before Interest, Taxes, Depreciation and Amortization ("**EBITDA**") of $37.5 Million for the year in which a NRBA is

being determined, then Buyer will pay to Seller the amount calculated in accordance with the NRB Payment Formula and this Section 3.4.3.

To the extent that there is a NRBA under the NRB Payment Formula, payment will be made annually for four (4) years within ninety (90) days of the first (1st) anniversary date of the start of production ("**SOP**") at such new low labor cost location and within ninety (90) days of each subsequent anniversary date through the fourth (4th) anniversary date of SOP.

## B.    Preparation of NRBA Statements:

(i)    Within one hundred (100) days after the end of each calendar year for five (5) years following the date of SOP of the Columbus Latch Operations, Buyers' Representative will prepare and deliver to Delphi a statement of the NRB Payment Formula ("**NRB Statement**") with respect to the year just completed (pro-rated in the first (1st) year for the period beginning with SOP, and in the fifth (5th) year for the period ending on the fourth (4th) anniversary date of SOP, together with a review report of the NRB Statement prepared by Buyers' Representative' independent auditors. Buyers will, pending agreement or final determination of the NRB Statement, allow Delphi's independent auditors such access to Buyers' independent auditors and to the work papers of Buyer's independent auditors as is reasonably necessary to enable Delphi to confirm each NRB Statement.

(ii)    Delphi will, within thirty (30) days after the delivery by Buyers' Representative of a NRB Statement, complete its review of such statement. If Delphi disagrees with a NRB Statement, Delphi will, on or before the last day of such thirty (30) day period, inform Buyers' Representative of any Objections specifying in reasonable detail the nature of any disagreement so asserted.    If: (i) no such Objection has been timely provided to Buyers' Representative, then: (a) the relevant NRB Statement will be deemed to be the final; and (b) Buyers' calculations will be final and binding on the Parties of all items therein.

(iii)    If Delphi files an Objection to a NRB Statement, then the Parties will resolve any issues raised in such Objection in the manner set forth in Section 3.3.3 with respect to the Closing Inventory Statement.

## C.    Definitions:

(i)    "**NRB Payment Formula**" is an amount equal to fifty percent (50%) of the Net Benefit for the period.    An illustrative calculation of NRB Payment Formula is attached to this Agreement as <u>Schedule 3.4.3.C</u>.

(ii)    "**Net Benefit**" is the amount equal to the excess of: (i) the Relocation Net Cash Flow Benefit in any year in which it is positive number; less (ii) one hundred percent (100%) of the then outstanding Net Relocation Investment, and less (iii) the effects of achieving a 12.5% compounded annual rate of return on the then outstanding Net Relocation Investment; with any negative number resulting from this calculation being used as the "then outstanding Net Relocation Investment" for purposes of the following

28

year in which a determination is made (i.e., once applied to this determination, the amount of Net Relocation Investment so applied shall reduce the amount of Net Relocation Investment applicable in a subsequent year) until one hundred percent (100%) of the aggregate Net Relocation Investment has been applied, and the Net Relocation Investment has achieved a 12.5% compounded annual rate of return, following which the Relocation Net Cash Flow Benefit shall be deemed to be equal to the Net Benefit. In no event will Seller owe Buyer any amounts with respect to NRBA.

(iii)    "**Relocation Net Cash Flow Benefit**" means: (i) the differential between: (a) the Columbus per unit Cash Contribution multiplied by the volume of units assumed in the Business' plan projections provided to Buyers on or about August 9, 2007; and (b) the low labor cost location per unit Cash Contribution multiplied by the actual volume of units produced at the low labor cost location for part numbers previously produced in Columbus and now being produced in a low labor cost location. The Columbus per unit Cash Contribution(s) by product type prepared prior to executing this Agreement (which are defined in Schedule 3.4.3.C(iii) hereto), will be used for the purposes of calculating Relocation Net Cash Flow Benefit. In calculating new low cost facility latch Cash Contribution, only Cash Contribution relating to the existing Columbus book of business (limited to part numbers in production as of the Closing Date and subsequent part numbers of such Products pursuant to routine engineering work orders; i.e., excluding engineering changes involving a subsequent customer's request-for-quotation process) being relocated will be taken into account.

(iv)    "**Net Relocation Investment**" means the total cash cost incurred by Buyers relating to relocation of the Columbus Latch Operations including but not limited to: (i) Columbus equipment relocation cost; (ii) new, low cost facility and equipment cost; and (iii) additional low cost facility latch inventory above Columbus inventory. Net Relocation Investment does not include any costs related to plant closure (except as per (i) above). Net Relocation Investment also excludes any costs related to the relocation of Door Module production from the Vandalia facility.

    3.4.4    <u>**Post-Closing Payments**</u>. On each of the first, second, third, fourth and fifth anniversaries of the Closing Date, Inteva Products, LLC shall pay to Delphi Automotive Systems LLC the amount of One Million Dollars ($1,000,000.00). On the first Business Day following the earlier of: (i) the Business Day immediately following the fifth (5th) anniversary of the Closing Date; and (ii) the date Buyers sell substantially all of the assets of the Combined Business (a sale to an unrelated third party of eighty percent (80%) or more of the equity of Inteva Products, LLC will be deemed to be a sale of such assets), Inteva Products, LLC shall pay to Delphi Automotive Systems LLC the amount of Twenty-One Million Dollars ($21,000,000.00). The amounts payable to Delphi Automotive Systems LLC by Buyer pursuant to this Section 3.4.3 are referred to as the "**Post-Closing Payments**".

29

**3.4.5    Purchase Price.**  The Preliminary Purchase Price plus the Post-Closing Payments and plus or minus the adjustments referred to in Sections 3.4.1 through 3.4.3 is referred to as the "**Purchase Price**".

**3.5    Allocation of Purchase Price:**

**3.5.1**   The Parties agree to allocate the Purchase Price (i.e., both the Preliminary Purchase Price and any adjustments thereto, plus the Post-Closing Payments) among the Business and the agreements provided herein for transfer of the Business to Buyers and their Affiliates, for all purposes (including indemnification by the Asset Sellers hereunder and for accounting and tax purposes) (the "**Allocation**") in a manner consistent with the Allocation Schedule attached as <u>Schedule 3.5.1</u>.

**3.5.2**   Buyers and Asset Sellers and Securities Sellers will each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Internal Revenue Code (or any successor form or successor provision of any future tax law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable law.  Delphi will provide Buyers' Representative and Buyers' Representative will provide Delphi with a copy of any information required to be furnished to the Secretary of the Treasury under Internal Revenue Code Section 1060.

**4.    REPRESENTATIONS AND WARRANTIES OF SELLERS:**

Each Seller represents and warrants, as of the date hereof, severally, to Buyers with respect to the Acquired Assets or Sale Securities being sold by such Seller and the Shared Intellectual Property and Sublicensed Intellectual Property being licensed or sublicensed by such Seller (except that the Filing Affiliates represent and warrant, jointly and severally, with respect to the Acquired Assets and the Sale Securities of the Filing Affiliates and the Shared Intellectual Property and Sublicensed Intellectual Property being licensed or sublicensed by such Filing Affiliate), as follows:

**4.1    Organization.**  Each Seller is a legal entity duly incorporated or organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization.   Each Seller has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted, and is duly qualified or licensed to do business and in good standing in the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Sellers to consummate the transactions contemplated by this Agreement.

**4.2    Authorization; Enforceability.**  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, as applicable, each Seller has the requisite corporate or other organizational power and authority to: (i) execute and deliver this Agreement and the Ancillary Agreements to which such Seller is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the applicable Ancillary Agreements.  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, if applicable, the execution and delivery

of this Agreement and the Ancillary Agreements by Delphi and each Seller that is a party to any of such agreements, and the performance by each of them of their respective obligations under any of such agreements, in the case of Delphi have been, and in the case of the other Sellers, prior to the Closing Date will be, duly authorized by all necessary corporate action on the part of such Seller.  This Agreement has been duly executed and delivered by Delphi, and the Ancillary Agreements will be duly executed and delivered by Delphi and each Seller, as applicable, and, assuming due authorization, execution and delivery by Buyers, constitutes, or will constitute, a valid and binding agreement of Delphi and each Seller, as applicable, enforceable against each of them in accordance with their respective terms, except that: (a) enforceability of Section 9.2 of this Agreement is subject to entry and approval of the Bidding Procedures Order; and (b) enforceability of all other provisions of this Agreement is subject to entry and effectiveness of the Sale Approval Order.

**4.3**     **JV Companies:**

**4.3.1**   Each JV Company: (i) is a legal entity duly incorporated or organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization; (ii) has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted; and (iii) is duly qualified or licensed to do business and in good standing in the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Sellers to consummate the transactions contemplated by this Agreement.

**4.3.2**   Except as set forth on Schedule 4.3.2: (i) Seller's equity in each of the JV Companies is owned of record and beneficially by the relevant Securities Seller as set forth on Schedule 1 to the Agreement; (ii) the Sale Securities are duly authorized, validly issued, fully paid up and non-assessable and are not subject to any preemptive rights; and (iii) there are no voting trust agreements or other contracts, agreements or arrangements, to which any Securities Seller is a party, restricting voting or dividend rights or transferability with respect to the Sale Securities.

**4.3.3**   Except as set forth on Schedule 4.3.3, there is no outstanding security, right, subscription, warrant, option, privilege or other agreement, commitment or contract, preemptive, contractual or otherwise that gives the right to: (i) purchase or otherwise receive or be issued any share capital of a JV Company or any security of any kind convertible into or exchangeable or exercisable for any share capital of a JV Company; or (ii) receive or exercise any benefits or rights similar to any rights enjoyed by or accruing to a holder of share capital of a JV Company, including any rights to participate in the equity or income of a JV Company, or to participate in or direct the election of any directors of a JV Company or the manner in which any share capital of a JV Company are voted.

**4.3.4**   No Seller has entered into any guarantee, performance bond, letter of credit or similar obligation on behalf of a JV Company.

**4.3.5**   Schedule 4.3.5 sets forth: (i) the audited balance sheet of each of the JV Companies as of December 31, 2005 and December 31, 2006, and the related audited statements of income for the years ended as of December 31, 2005 and December 31,

2006 (the foregoing balance sheets and income statements of the JV Companies, and accompanying notes, are referred to as the "**JV Audited Financial Statements**"); and (ii) the unaudited balance sheet of each of the JV Companies as of June 30, 2007 and the related statement of income of each of the JV Companies for the six (6) month period ended as of June 30, 2007 (the foregoing statements of income together with the JV Audited Financial Statements are referred to as the "**JV Financial Statements**"). To the Knowledge of Sellers, except as set forth on Schedule 4.3.5, the JV Financial Statements: (i) are true in all material respects with respect to the purpose for which they were prepared; and (ii) present fairly in all material respects in accordance with the prevailing accounting standards in their respective jurisdictions the assets, liabilities, financial position and results of operations of the JV Companies.

**4.3.6**    Except as set forth on Schedule 4.3.6, the execution, delivery and performance of this Agreement and of the Ancillary Agreements by Delphi and each Seller that is a party to do not: (i) violate or result in a breach of any Governmental Order or Law applicable to any of the JV Companies or any of their respective properties or assets; or (ii) require any Governmental Approval.

**4.3.7**    To the Knowledge of Sellers, each JV Company has all of the assets necessary to carry on its respective business in all material respects as it is now being conducted.

**4.3.8**    To the Knowledge of Sellers, except as set forth on Schedule 4.3.8, each JV Company currently conducts its respective business in compliance in all material respects with all Laws and the JV Companies possess all material Permits necessary to own, lease and operate their respective businesses.

**4.3.9**    To the Knowledge of Sellers, except for items set forth in Schedule 4.3.9, there are no material Proceedings pending or threatened against the JV Companies.

**4.3.10**    To the Knowledge of Sellers, except as set forth in Schedule 4.3.10, or as otherwise expressly permitted by this Agreement, since December 31, 2006: (i) the businesses of the JV Companies have been conducted only in the Ordinary Course of Business; (ii) no JV Company has incurred any Debt Obligations for the purpose of paying a cash dividend or made any loans; and (iii) there has not been any event, circumstance, occurrence, change or development in or affecting the JV Company businesses that has had a Material Adverse Effect.

**4.3.11**    To the Knowledge of Sellers, Schedule 4.3.11 list all patents and patent applications and all trademark registrations and applications therefore owned by the JV Companies (the "**JV Owned Intellectual Property**") or licensed to the JV Companies (the "**JV Licensed Intellectual Property**").    To the Knowledge of Sellers, each JV Company owns the entire right, title and interest in the JV Owned Intellectual Property, free and clear of all Encumbrances, and has a valid and enforceable right to the use of all JV Licensed Intellectual Property.

**4.3.12**    To the Knowledge of Sellers, Schedule 4.3.12.1 sets forth a list as of the dates set forth therein of each of the following Contracts to which each of the JV Companies is party or by which either of them is bound as of the date of this Agreement, other than JV Employee Benefit Plans (collectively, the  "**JV Material Contracts**"):

     **A.**     Partnership, joint venture agreements or other agreements involving a sharing of profits or expenses by the relevant JV Company;

     **B.**     Indentures, mortgages, loan agreements, capital leases, security agreements or other agreements for the incurrence of Debt Obligations, including letters of credit and overdrafts, and any guarantees of any of the foregoing;

     **C.**     Contracts under which any JV Company has licensed material JV Owned Intellectual Property to, or material JV Licensed Intellectual Property from, any other Person;

     **D.**     Each Contract to which either JV Company is a party that limits the freedom of the JV Company to compete in any line of business or with any Person or in any area and which would so limit the freedom of such JV Company after the Closing; and

     **E.**     All employment Contracts with respect to any employees of either JV Company involving aggregate compensation (inclusive of bonuses and other incentive payments) in excess of $100,000.

To the Knowledge of Sellers, except as set forth in <u>Schedule 4.3.12.2</u>: (i) no event has occurred that constitutes (or with notice or lapse of time would constitute) a material default by: (a) any JV Company under any JV Material Contract; or (b) any other party to any JV Material Contract; (ii) there are no material unresolved disputes under any of the JV Material Contracts; and (iii) the sale of the Sale Securities pursuant to this Agreement will not result in termination of, or result in a right of termination under, any such JV Material Contract, or bring into operation any other provision thereof.

     **4.3.13**  To the Knowledge of Sellers, except as disclosed in <u>Schedule 4.3.13</u>:

     **A.**     Each JV Company is in material compliance with Environmental Laws and with Environmental Permits applicable to the JV Company;

     **B.**     Neither JV Company has received, within all applicable limitation periods, any written notice from a Governmental Authority alleging that the operations or assets of the JV Company: (i) violates, or does not comply with; (ii) has violated or has not complied with; or (iii) is potentially liable under; in each case, any Environmental Laws or Environmental Permits; and

     **C.**     Neither JV Company has received notice of the existence of any material Environmental Claim or Compliance Matter and no Seller has Knowledge of any basis for a material Environmental Claim or Compliance Matter.

     **4.4**     **<u>Financial Statements.</u>**  <u>Schedule 4.4.1</u> sets forth the unaudited combined balance sheet of the Business as of December 31, 2005 and December 31, 2006, the related unaudited statements of income for the years ended as of December 31, 2005 and December 31, 2006, the unaudited combined balance sheet of the Business as of August 31, 2007 (the December 31, 2006 Balance Sheet is referred to as the "**Reference Balance Sheet**") and the related unaudited statement of income for the eight (8) month period ended as of August 31, 2007 **(**the foregoing balance sheets and income statements of the Business are

referred to as the "**Financial Statements**"). Except as set forth on Schedule 4.4.2, the Financial Statements: (i) are true in all material respects with respect to the purpose for which they were prepared; (ii) were prepared from statements prepared and used by Seller in the ordinary course of managing the Business; and (iii) present fairly in all material respects in accordance with GAAP the assets, liabilities, financial position and results of operations of the Business on a pro-forma basis, recognizing that the Acquired Assets comprising the Business have not been operated as separate "stand alone" entities within Delphi, as of the dates and for the respective periods covered, and, as a result, the Business has been allocated certain charges and credits as discussed in the notes accompanying the Financial Statements and as otherwise described in Schedule 4.4.2.

Until the Closing Date, Seller agrees to furnish the unaudited combined balance sheet and the related unaudited statement of income of the U.S. operations of the Business for the most recent available month end period within forty-five (45) days after the end of each such period, as prepared by management (collectively the "**Future Unaudited Financial Statements**"). Each Seller that is a Filing Affiliate will be deemed to represent and warrant as of Closing in accordance with this Article 4 and the other terms of this Agreement, including the limitations of Article 11, that the Future Unaudited Financial Statements: (i) are true in all material respects with respect to the purpose for which they were prepared; (ii) were prepared from statements prepared and used by Seller in the ordinary course of managing the Business; and (iii) fairly present, in all material respects in accordance with the notes and other disclosures set forth in Schedule 4.4.1 and Schedule 4.4.2, the assets, liabilities, financial position and results of operations of the Business on a pro-forma basis, recognizing that the Acquired Assets comprising the Business have not been operated as separate "stand alone" entities within Delphi, as of the dates and for the respective periods covered, and, as a result, the Business has been allocated certain charges and credits as discussed in the notes accompanying the Financial Statements and as otherwise described in an amendment to Schedule 4.4.2. The foregoing representation and warranty as to the Future Unaudited Financial Statements will be based on data received from Transferred Employees managing the Business and will be subject to the accuracy of such data.

**4.5    No Conflicts or Approvals.** Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, except as set forth on Schedule 4.5, the execution, delivery and performance of this Agreement and of the Ancillary Agreements by Delphi and each Seller that is a party do not: (i) violate, conflict with or result in a breach of any of Delphi or Sellers of the Organizational Documents of any of Delphi or Sellers; (ii) violate or result in a breach of any Governmental Order or Law applicable to any of Delphi or Sellers or any of their respective properties or assets; (iii) require any Governmental Approval; or (iv) result in any breach of, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or result in any, or give any rights of termination, cancellation or acceleration of any Encumbrance on any of the Acquired Assets pursuant to, any agreement, note, bond, contract, permit, lease, mortgage, indenture, license, franchise or other instrument included in the Acquired Assets or to which any of the Sellers is a party, in each case except as set forth in this Agreement and except as are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

**4.6    Sufficiency of Acquired Assets.** The Acquired Assets and the Sale Securities, together with the Shared Intellectual Property and the Sublicensed Intellectual Property, comprise all of the assets necessary for Buyer to carry on the Business in all material respects as it is now being conducted, except for: (i) Excluded Assets, and (ii) assets used to produce

the services described in this Agreement or in any Ancillary Agreement, including services of the type outlined in the Transition Services Agreement that are currently provided by Sellers to the Business.

**4.7    Compliance with Law; Permits.**  Except as set forth on Schedule 4.7, to the Knowledge of Sellers, the Business is currently in compliance in all material respects with all Laws.  The Asset Sellers possess, and Schedule 4.7 lists, all material licenses, consents, approvals, permits and other Governmental Approvals ("**Permits**") necessary to own, lease and operate the Acquired Assets.  The representations and warranties relating to Environmental Laws and with Environmental Permits are exclusively set forth in Section 4.14.

**4.8    Proceedings.**  Except for claims raised in connection with the pendency of the Bankruptcy Cases, and for the Claims and other items set forth in Schedule 4.8 (and except with respect to compliance with Environmental Laws, which is covered by Section 4.14), there are no material Proceedings pending or, to the Knowledge of Sellers, threatened against the Securities Sellers or the Asset Sellers and relating to the Business or any of the Acquired Assets.

**4.9    Absence of Certain Changes.**  Except as set forth in Schedule 4.9, or as otherwise expressly permitted by this Agreement, since December 31, 2006: (i) the Business has been conducted only in the Ordinary Course of Business; and (ii) there has not been any event, circumstance, occurrence, change or development in or affecting the Business that has had, or would have, a Material Adverse Effect.

**4.10    Tax Matters.**  The Asset Sellers have withheld and paid all Taxes required to have been withheld and paid in connection with amounts paid or owing to any Transferred Employee other than Taxes that are immaterial with respect to the Transferred Employees.

**4.11    Employee Benefits.**  Regarding the Business:

**4.11.1** Schedule 4.11.1 contains a true, correct and complete list of all U.S. Employees and Non-U.S. Employees, including: (i) each such person's title or job/position/job code; (ii) each such person's job designation (i.e., salaried or hourly); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed or not actively at work (due to, e.g., illness, short-term disability, sick leave, authorized leave or absence, etc.)); (v) each such person's current annual or hourly base rate of compensation; (vi) each person's date of hire; and, if applicable; and (vii) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, separation pay agreement, etc.) to the extent permitted to be disclosed under applicable Law (including local privacy laws).[2]

**4.11.2** Schedule 4.11.2 sets forth a true, correct and complete list of each Seller Employee Benefit Plan.

**4.11.3** Copies of the following materials have been delivered or made available to Buyers' Representative with respect to each Seller Employee Benefit Plan: (i) current

---

[2]    **May be delivered to Buyer separately, rather than appended to the Agreement given the type of data included on it.**

plan documents; and (ii) current agreements and other documents relating to the funding or payment of benefits. Each Seller Employee Benefit Plan has been maintained in compliance with applicable Laws in all material respects.

**4.11.4** Except as: (i) set forth in <u>Schedule 4.11.4</u>; and (ii) routine claims for benefits by participants and beneficiaries, there are no material pending or, to the Knowledge of Sellers, threatened Proceedings with respect to any Seller Employee Benefit Plans. Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will (either alone or in conjunction with any other event) result in, cause the accelerated vesting, funding or delivery of, or increase the amount or value of, any payment or benefit to any Transferred Employees. There does not now exist, nor do any circumstances exist that could result in, any Controlled Group Liability that would be a Liability of Buyer or its Affiliates following the Closing. All Seller Employee Benefit Plans subject to the Laws of any jurisdiction outside the United States (x) have been maintained in accordance with all applicable requirements, (y) if they are intended to qualify for special tax treatment, meet all requirements for such treatment and (z) if they are intended to be funded and/or book-reserved, are fully funded and/or book reserved, as appropriate, based upon reasonable actuarial assumptions.

**4.11.5 <u>Collective Bargaining Agreements</u>.** <u>Schedule 4.11.5</u> contains a true, correct and complete list of all Collective Bargaining Agreements. Seller has given access or delivered to Buyer true, correct and complete copies of each of the Collective Bargaining Agreements. Except as disclosed on <u>Schedule 4.11.5</u>, Seller is in material compliance with each Collective Bargaining Agreement and all applicable Laws respecting employment and employment practices, terms and conditions of employment, wages and hours and occupational safety and health.

**4.11.6 <u>Grievance, Labor Negotiations</u>.** Except as disclosed on <u>Schedule 4.11.6</u>, with respect to the Business: (i) there is no labor strike, dispute, slowdown or stoppage actually pending or, to Sellers' Knowledge, threatened against or involving Sellers; (ii) no Seller has in the past three (3) years experienced any work stoppage or other labor difficulty or organizational activity relating to any of its employees; and (iii) no labor grievance relating to any employee of Sellers is pending. Except as set forth on <u>Schedule 4.11.6</u>, there are no material pending claims against Sellers whether under applicable Laws, employment agreements or otherwise asserted by any present employee or former employee of any other Person as relates to the Business, including claims on account of or for: (a) overtime pay, other than overtime pay for work done during the current payroll period; (b) wages or salary for any period other than the current payroll period; (c) any amount of vacation pay or pay in lieu of vacation or time off; or (d) any violation of any statute, ordinance or regulation relating to minimum wages or maximum hours at work, and, to Sellers' Knowledge, there are no such claims which have yet to be asserted.

**4.12** <u>**Intellectual Property**</u>:

**4.12.1** <u>Schedule 4.12.1.A</u> and <u>Schedule 4.12.1.B</u>, respectively, list all patents and patent applications and all trademark registrations and applications therefore included in the Purchased Intellectual Property. Except: (i) as set forth in <u>Schedule 4.12.1.A</u>; (ii) instances in which such patents or patent applications are jointly owned with a third party identified in <u>Schedule 4.12.1.A</u>; or (iii) rights retained by employee-

inventors pursuant to the Law: (x) Sellers own the entire right, title and interest in the Purchased Intellectual Property, free and clear of all Encumbrances, and have the right to transfer Sellers' right, title and interest therein as set forth in this Agreement; (y) have a valid and enforceable right to the use of the Licensed Intellectual Property and have the right to transfer and/or assign Sellers' right and interest therein as set forth in this Agreement, in each case, such right and interest being subject to the terms of the Material Contracts.

**4.12.2** Sellers have a valid and enforceable right to the use of the Shared Intellectual Property and Sublicensed Intellectual Property and have the right to license the Shared Intellectual Property and sublicense the Sublicensed Intellectual Property as set forth in this Agreement, such license and sublicense being subject to the terms of the Contracts listed in Schedule 4.13.1 and Schedule 6.11.1.

**4.12.3** Except as set forth in Schedule 4.12.3, Sellers have not received notice of any allegation by any third party of Intellectual Property infringement or misappropriation resulting from the operation of the Business or relating to the Purchased Intellectual Property, the Licensed Intellectual Property, the Shared Intellectual Property or the Sublicensed Intellectual Property and Sellers have no Knowledge of any such infringement or misappropriation.

**4.12.4** Except as set forth in Schedule 4.12.4, Sellers have no Knowledge of any infringement or misappropriation by a third party of the Purchased Intellectual Property, the Licensed Intellectual Property, the Shared Intellectual Property or the Sublicensed Intellectual Property.

**4.12.5** Except as set forth in Schedules 4.12.4 (infringement by a third party), 4.11.4 (disputes with respect to employee-inventor compensation), 4.12.1.A (joint owners and licensees), 4.12.3 (allegations of infringement by Delphi), 4.13.1 (licenses) and 6.11.1 (sublicensed Contracts), Sellers have no Knowledge of any Claims by a third party (including present or former employees) that is adverse to the right, title or interest of Sellers in the Purchased Intellectual Property, Licensed Intellectual Property, Shared Intellectual Property or Sublicensed Intellectual Property.

**4.13**    **Contracts:**

**4.13.1** Schedule 4.13.1 sets forth a list as of the dates set forth therein of each of the following Contracts to which any of the Asset Sellers with respect to the Business, is party or by which any of them is bound as of the date of this Agreement and that are included in the Acquired Assets, other than Seller Employee Benefit Plans (collectively, the "**Material Contracts**"):

    **A.**    Partnership, joint venture agreements or other agreements involving a sharing of profits or expenses by the relevant Asset Seller party thereto with respect to the Business;

    **B.**    Indentures, mortgages, loan agreements, capital leases, security agreements or other agreements for the incurrence of Debt Obligations, including letters of credit and overdrafts;

37

**C.**     Guarantees of the obligations of other Persons involving the potential expenditure by the Asset Sellers in respect of the Business after the date of this Agreement;

**D.**     Contracts, other than Contracts under standard purchase order terms with prospective suppliers or customers relating to the development of Products, under which any Seller has licensed Purchased Intellectual Property to, or Licensed Intellectual Property from, any other Person;

**E.**     Contracts involving the expenditure by the Asset Sellers in respect of the Business of more than $500,000 in any instance for the purchase of materials, supplies, equipment or services;

**F.**     Contracts providing that an Asset Seller in respect of the Business will receive future payments aggregating more than $500,000 per annum or $2,000,000 in the aggregate prior to the expiration of such Contract;

**G.**     Each material agency, dealer, sales representative, marketing, advertising, consulting or other similar Contract to which any of the Sellers is a party;

**H.**     Each Contract to which any of the Sellers is a party that limits the freedom of the Business to compete in any line of business or with any Person or in any area and which would so limit the freedom of the Sellers after the Closing;

**I.**     Each Contract with any Governmental Authority to which any of the Sellers is a party;

**J.**     All employment Contracts with respect to any employees of any of the Sellers relating to the Business involving aggregate compensation (inclusive of bonuses and other incentive payments) in excess of $75,000;

**K.**     All capital or operating leases relating to any of the Acquired Assets;

**L.**     Collective Bargaining Agreements and Contracts with U.S. Employees or Non-U.S. Employees that are not cancelable without penalty or further payment and without more than thirty (30) days' notice;

**M.**     All prepaid customer contracts (showing the amount received thereunder as of the date hereof); and

**N.**     All other Contracts, whether or not made in the Ordinary Course of Business, which are material to the Business, or the absence of which would have a Material Adverse Effect.

**4.13.2** Except as set forth in <u>Schedule 4.13.2</u>: (i) no event has occurred that constitutes (or with notice or lapse of time would constitute) a material default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Sellers to assume and assign such Material Contracts to Buyer, if applicable) by: (a) any Asset Seller under any Material Contract; or (b) to the Knowledge of Sellers,

any other party to any Material Contract; (ii) there are no material unresolved disputes under any of the Material Contracts; and (iii) the assignment of any material contract pursuant to this Agreement will not result in termination of, or result in a right of termination under, any such Material Contract, or bring into operation any other provision thereof.

**4.13.3** Set forth on <u>Schedule 4.13.3</u> is a list of the top five (5) customers ("**Significant Customers**") of the Business as of December 31, 2006 setting forth for each the amount of gross revenue received in 2006.  Except as set forth on <u>Schedule 4.13.3</u>, Seller has received no written notice, and has no Knowledge, that any Significant Customer will cease to do business with the Business or substantially reduce either the purchase of products from the Business or the pricing thereof.  Buyers acknowledge that the foregoing shall not be deemed a guarantee of customer volumes.

**4.14    Environmental Matters.**  To the Knowledge of Seller, except as disclosed in <u>Schedule 4.14</u>:

**4.14.1**  The Business is in material compliance with Environmental Laws and with Environmental Permits applicable to the Business and the Real Property, and all Compliance Matters have been fully resolved with no further Liabilities accruing to the Business or any of the Acquired Assets;

**4.14.2**  None of the Asset Sellers has received, within all applicable limitation periods, any written notice from a Governmental Authority alleging that the Business or the Real Property: (i) violates, or does not comply with; (ii) has violated or has not complied with; or (iii) is potentially liable under; in each case, any Environmental Laws or Environmental Permits;

**4.14.3**  None of the Asset Sellers has received notice of, and there does not exist, any material Environmental Claim or Compliance Matter with respect to the Real Property or otherwise in connection with the Business;

**4.14.4**  There has been: (i) no Release of any Hazardous Material on, at or under any Real Property or elsewhere that was generated or used in connection with the operation of the Business, in each case in concentrations or quantities exceeding Remediation Standards or migrating from any Real Property in concentrations likely to give rise to Environmental Damages; and (ii) no notice from any Governmental Authority of any Release of any Hazardous Material that was generated or used by the Business into the Environment.

**4.14.5**  Environmental Contamination is not present at, in or under, or emanating from, the Real Property.

**4.14.6**  No underground storage tanks are present at the Real Property.

**4.14.7**  Seller has made available to Buyer copies of any and all non attorney-client privileged documents in Seller's possession, ownership or control constituting, regarding or referring to environmental assessments, investigations and compliance audits and all related materials, documents, data, due care plans and correspondence, including all submittals to, and correspondence to or from, any Governmental Authority, regarding or referring to the environmental condition of the Real Property (or

Environmental Contamination thereon or therefrom) or Seller's compliance with Environmental Laws, including Section 7a of Part 201 of the Michigan Natural Resources and Environmental Protection Act, MCL 324.20107a, and the regulations thereunder.

**4.14.8** Schedule 4.14 contains a complete and correct list of all Environmental Permits held by or for Seller in relation to any activity or operation conducted at the Property and/or pursuant to or in furtherance of the Business, including for each such Environmental Permit the title, permit number, issuing agency and effective and expiration dates. Except as disclosed in Schedule 4.14, Seller possesses, and has listed in Schedule 4.14, all Environmental Permits required for the lawful conduct of the Business.

**4.14.9** To the extent that the Real Property continues to be utilized for industrial purposes similar to those conducted on the date of execution of this Agreement, no further remediation of the existing radiological contamination at the Real Property will be required.

**4.15   Insurance.** Schedule 4.15 contains a complete and correct list, in all material respects, of all material policies of insurance relating to the Business or covering any of the assets primarily used in or relating to the Business, other than Excluded Assets, indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder. All such policies are outstanding and in full force and effect.

**4.16   Personal Property Assets, Inventory:**

**4.16.1** Except as set forth on Schedule 4.16.1, the Asset Sellers have good title to, or hold by valid and existing lease or license with respect to, all Personal Property included in the Acquired Assets, including all Personal Property reflected as assets on the Reference Balance Sheet or acquired thereafter, except with respect to assets disposed of in the Ordinary Course of Business since such date.

**4.16.2** The Asset Sellers, with respect to the Acquired Assets, will own, or have valid leasehold interests in, all Personal Property being transferred to Buyers under this Agreement, and all transferred Personal Property used by the Business are in such condition (considering age and purpose for which they are used) as to enable the Business to be conducted as currently conducted without material disruption.

**4.16.3** Except to the extent identified in Schedule 4.16.3, the Inventory included in the Acquired Assets will, as of the Closing, be located at the Real Property. All Productive Inventory included in the Acquired Assets is saleable and usable in the ordinary course, except for such Inventory as to which an adjustment is made in the Closing Inventory Statement.

**4.16.4** Schedule 4.16.4 sets forth a list of substantially all machinery, equipment and capitalized tools with a book value greater than $100,000 included in the Acquired Assets.

**4.16.5** The valuation of the Inventory reflected in the Benchmark Inventory Amount reflects the historical Inventory valuation policy of the Asset Sellers.

4.17    **Real Property:**

4.17.1 **Leased Properties.**    Schedule 4.17.1 lists all real property leased or subleased and constituting Acquired Assets (the "**Leased Real Property**").    Delphi has made available to Buyers' Representative true and complete copies of the leases and subleases covering the Leased Real Property (as amended to the date of this Agreement).    With respect to each lease and sublease and except as otherwise specified on Schedule 4.17.1:

>    **A.**    Such lease or sublease is, to the Knowledge of Sellers, in all material respects, enforceable in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting creditors' rights generally and general equitable principles (whether considered in a Proceeding in equity or at law);

>    **B.**    (i) None of the Asset Sellers is in material breach under any such lease or sublease, and, to the Knowledge of Sellers, no event has occurred which, with the passage of time or expiration of any grace period would constitute a material breach of any Asset Seller's obligations under such lease or sublease (except with respect to breaches that need not be cured under Section 365 of the Bankruptcy Code for the Filing Affiliates to assume and assign such leases or subleases to Buyer, if applicable); and (ii) none of the Asset Sellers has received a notice of material breach with respect to such lease or sublease; and

4.17.2 **Owned Properties.**    Schedule 4.17.2 lists all real property owned which constitutes Acquired Assets (the "**Owned Real Property**").    With respect to each such parcel of the Owned Real Property and except as otherwise specified on Schedule 4.17.2 and the identified owner has good and marketable fee simple title, or equivalent title rights in non-U.S. jurisdictions, in all material respects to the parcel of the Owned Real Property, free and clear of any Encumbrances, except for Permitted Encumbrances.    For clarity, Permitted Encumbrances at Closing will not include the Encumbrances set forth on Schedule 4.17.2.

4.17.3 **All Real Properties.**

>    **A.**    Each parcel of Real Property, whether a Leased Real Property or an Owned Real Property, has such access as is necessary for the conduct of the business on such parcel as presently conducted: (i) to public streets or roads directly or by valid and subsisting easements; and (ii) to water, storm and sanitary sewer, telephone, gas, electric and other utilities directly from public streets or roads or by valid and subsisting easements.

>    **B.**    Delphi has made available true and complete copies of available title insurance commitments for the U.S. Owned Real Property and available surveys with respect to each parcel of the Owned Real Property.

>    **C.**    None of the material plants, buildings or other structures located on any Owned Real Property encroaches in a material respect upon any real property owned by another person or upon any easement burdening and affecting such Owned Real Property which would have a Material Adverse Effect

or materially interfere with the use of such Owned Real Property as presently conducted thereon. No structure on any real property owned by another Person encroaches in a material respect upon any Owned Real Property which would have a Material Adverse Effect or materially interfere with the use of such Owned Real Property as presently conducted thereon.

**4.18    No Brokers' Fees.**  Sellers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Buyers would be liable.

**4.19    No Other Representations or Warranties.**  Except for the representations and warranties contained in this Article 4, the Sellers make no other express or implied representation or warranty to Buyers, and in particular but without limitation, no Seller is making any representations with respect to any plan(s) of Buyers for the future conduct of the Business, or any implied warranties of merchantability or fitness for a particular purpose. For the avoidance of doubt, except for such matters as are covered by the representations and warranties contained in this Article 4, no warranty or representation is given on the contents of the documents provided in due diligence or with respect to the information contained in the Confidential Information Memorandum, Data Room, Management Presentations, reports or any financial forecasts or projections or other information furnished by Delphi or any Seller or their officers, directors, employees, agents or representatives or in any other documents or other information not contained in this Agreement or the Ancillary Agreements.

**4.20    Fair Disclosure.**  Any matter disclosed in any Schedule to this Agreement will be deemed an exception for all other representations and warranties contained in this Agreement whether or not such other representations, warranties or Schedules contain a reference to such Schedule, so long as it is reasonably apparent that such matter also applies to such other representations and warranties.

**5.    REPRESENTATIONS AND WARRANTIES OF BUYERS:**

The Buyers hereby represent and warrant to Sellers, as of the date hereof and of the Closing Date, as follows:

**5.1    Organization.**  Each Buyer is a legal entity duly incorporated or organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization.  Each Buyer has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted and is duly qualified or licensed to do business and is in good standing in the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Buyers to consummate the transactions contemplated by this Agreement.

**5.2    Authorization; Enforceability.**  Each Buyer has the requisite corporate or other organizational power and authority to: (i) execute and deliver this Agreement and the Ancillary Agreements to which such Buyer is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the applicable Ancillary Agreements.  The execution and delivery of this Agreement and the Ancillary Agreements by each Buyer that is a party to any of such agreements, and the performance by each of them of their respective obligations under any such agreements have

42

been duly authorized by all necessary corporate action on the part of such Buyer. This Agreement has been duly executed and delivered by Buyers, and the Ancillary Agreements will be duly executed and delivered by the applicable Buyers and, assuming due authorization, execution and delivery by Sellers, constitutes, or will constitute, a valid and binding agreement of the applicable Buyers, enforceable against each of them in accordance with their respective terms, except as may be limited by applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting creditors' rights generally and general equitable principles (whether considered in a proceeding in equity or at law).

       **5.3**    <u>**No Conflicts or Approvals**</u>.  The execution, delivery and performance by Buyers of this Agreement and the Ancillary Agreements by each Buyer that is a party thereto and the consummation by Buyers of the transactions contemplated hereby and thereby do not and will not: (i) violate, conflict with or result in a breach by any Buyer of the Organizational Documents of any Buyer; (ii) violate, conflict with or result in a breach of, or constitute a default by any Buyer (or create an event which, with notice or lapse of time or both, would constitute a default) or give rise to any right of termination, cancellation or acceleration under, any note, bond, mortgage, indenture, deed of trust, license, franchise, permit, lease, contract, agreement or other instrument to which any Buyer or any of their properties or assets may be bound; (iii) violate or result in a breach of any Governmental Order or Law applicable to any Buyer or any of their respective properties or assets; or (iv) except for applicable requirements of the HSR Act, the EC Merger Regulation and other applicable Competition/Investment Law, require any Governmental Approval, except, with respect to the foregoing clauses (ii), (iii) and (iv) above, as would not, individually or in the aggregate, have a material adverse effect on the ability of Buyers to consummate the transactions contemplated by this Agreement.

       **5.4**    <u>**Proceedings**</u>.  There are no Proceedings pending or, to the Knowledge of Buyers, threatened against any of the Buyers that could reasonably be expected to restrain, delay or inhibit the ability of Buyers to consummate the transactions contemplated by this Agreement. None of the Buyers is subject to any Governmental Order that could reasonably be expected to restrain, delay or otherwise inhibit the ability of Buyers to consummate the transactions contemplated by this Agreement.

       **5.5**    <u>**Solvency**</u>.  Upon the consummation of the transactions contemplated by this Agreement: (i) none of the Buyers will be insolvent; (ii) none of the Buyers or the other legal entities constituting the Business will be left with unreasonably small capital; (iii) none of the Buyers or the Business will have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of Buyers and the other legal entities constituting the Business will not be impaired; and (v) immediately following Closing, Buyers individually and in the aggregate will have sufficient capital to continue the Business as a going concern.

       **5.6**    <u>**Anti-Money Laundering**</u>.  Buyers are in compliance with: (i) all applicable provisions of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which any Buyer

operates or does business.  Neither any Buyer nor any of its directors, officers or affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and no Buyer is affiliated in any way with, or providing financial or material support to, any such persons or entities.  Buyers agree that should any of them, or any of their directors, officers or affiliates be named at any time in the future on the SDN List, or any other similar list maintained by the U.S. Government, Buyers will inform Delphi in writing immediately.

5.7    **Investment Representations**:

5.7.1    Each Buyer who is acquiring Sale Securities is acquiring such Sale Securities for its own account solely for investment and not with a view to, or for sale in connection with, any distribution thereof in violation of the Securities Act or the applicable securities Laws of any other jurisdiction.  Each Buyer agrees that it will not transfer any of the Sale Securities, except in compliance with the Securities Act and with the applicable securities Laws of any other jurisdiction.

5.7.2    Buyer Parents are "accredited investors" as defined in Rule 501(a) promulgated under the Securities Act.

5.7.3    Buyers understand that the acquisition of the Sale Securities to be acquired by it pursuant to the terms of this Agreement involves substantial risk.  Buyers and their officers have experience as investors in securities and equity interests of companies such as the ones being transferred pursuant to this Agreement and acknowledges that they can bear the economic risk of their investment and have such knowledge and experience in financial or business matters that Buyers are capable of evaluating the merits and risks of their investment in the Sale Securities to be acquired by them pursuant to the transactions contemplated hereby.

5.7.4    Each Buyer further understands and acknowledges that the Sale Securities have not been registered under the Securities Act or under the applicable securities Laws of any other jurisdiction and agrees that the Sale Securities may not be transferred unless such transfer is pursuant to an effective registration statement under the Securities Act or under the applicable securities Laws of any other jurisdiction, or, in each case, an applicable exemption therefrom.

5.7.5    Buyers acknowledge that the offer and sale of the Sale Securities has not been accomplished by the publication of any advertisement.

5.8    **No Inducement or Reliance; Independent Assessment**:

5.8.1    With respect to the Sale Securities, the Acquired Assets, the Business or any other rights or obligations to be transferred hereunder or under the Transfer Agreements or pursuant hereto or thereto, Buyers have not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Delphi, any of its Affiliates, or any agent, employee, attorney or other representative of Delphi representing or purporting to represent Delphi or any Seller that are not expressly set forth herein or in the Transfer Agreements (including the Schedules and Exhibits hereto and thereto), whether or not any such representations, warranties or statements were made in writing or orally, and none of Delphi, any Affiliate

of Delphi, or any agent, employee, attorney, other representative of Delphi or other Person will have or be subject to any Liability to any Buyer or any other Person resulting from the distribution to Buyers, or Buyers' use of, any such information, including the Confidential Information Memorandum and any information, documents or material made available in the Data Room or any Management Presentations or in any other form in expectation of the transactions contemplated by this Agreement.

**5.8.2**   Buyers acknowledge that they have made their own assessment of the present condition and the future prospects of the Business and are sufficiently experienced to make an informed judgment with respect thereto.  Buyers acknowledge that neither Delphi nor any of its Affiliates has made any warranty, express or implied, as to the prospects of the Business or its profitability for Buyers, or with respect to any forecasts, projections or business plans prepared by or on behalf of Delphi and delivered to Buyers in connection with Buyers' review of the Business and the negotiation and the execution of this Agreement.

**5.9**   **Financial Ability.**   Buyers have the financial ability and will have available at Closing sufficient Cash in immediately available funds to pay the Preliminary Purchase Price and thereafter to pay the Purchase Price if greater than the Preliminary Purchase Price, and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement.  In particular, Buyers have provided to Sellers evidence of their financial ability to consummate this Agreement and the transactions contemplated hereby as evidenced by the commitment letter attached hereto as Schedule 5.9 ("**Commitment Letter**").

**5.10**   **Adequate Assurance of Future Performance.**   Buyer has provided or will be able to provide, at or prior to Closing, adequate assurance of its future performance under each Assumed U.S. Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance will be necessary thereunder with respect to any Assumed U.S. Contract.

**5.11**   **No Brokers' Fees.**   Buyers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Sellers would be liable.

**5.12**   **Compliance with Laws.**   Buyers are in compliance with all Laws applicable to Buyers, except with respect to those violations that could not reasonably be expected to result in the issuance of an order restraining, enjoining or otherwise prohibiting Buyer from consummating the transactions contemplated by this Agreement.

**6.**   **COVENANTS AND AGREEMENTS:**

**6.1**   **Conduct of Business between Signing and Closing:**

**6.1.1**   Except as: (i) contemplated by this Agreement; (ii) disclosed on Schedule 6.1.1; (iii) permitted under orders already issued in the Bankruptcy Cases and not otherwise prohibited under this Section 6.1.1; (iv) required by or resulting from any changes of applicable Laws; or (v) set forth in this Agreement or the transactions contemplated hereby, from and after the date of this Agreement and until the Closing, Delphi will cause the Asset Sellers to conduct the operations of the Business in the Ordinary Course of Business and use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business

relationships with the Business.  Except: as contemplated by this Agreement or as disclosed on Schedule 6.1.1, from and after the date of this Agreement and until the Closing, Delphi will cause the Asset Sellers with respect to the Business and the Securities Sellers with respect to Sections 6.1.1.A and 6.1.1.I below to refrain from doing any of the following without the prior written consent of Buyers' Representative (which consent will not be unreasonably withheld or delayed):

**A.** Purchase or sell any capital stock or other equity interests of any JV Company or grant or make any option, subscription, warrant, call, commitment or agreement of any character in respect of any such capital stock or other equity interests, or permit any JV Company to incur any Debt Obligations or make any loan outside the Ordinary Course of Business; provided, however, that this will not limit the ability of any JV Company to pay cash dividends or distributions of Net Cash to Delphi or any of its Affiliates between the date hereof and the Closing Date as long as a JV Company complies with all applicable Laws (including liquidity requirements) ;

**B.** Sell or otherwise dispose of Acquired Assets, excluding sales of tooling to customers, sales of Inventory and sales of receivables to financial institutions or credit collection agencies, in each case in the Ordinary Course of Business;

**C.** Incur, assume or guarantee any Debt Obligation that would become an Assumed Liability;

**D.** Incur any Encumbrance on any material Acquired Assets, in each case, other than Permitted Encumbrances;

**E.** Except as required by any written Contract as in effect on the date hereof or as required by Law, with respect to any U.S. Employee or non-U.S. Employee:  (i) adopt or, except to comply with applicable Law, amend any Seller Employee Benefit Plan, (ii) increase in any manner (including the acceleration of vesting or payment of a payment or benefit) the compensation, employee benefits or fringe benefits of any U.S. Employees or Non-U.S. Employees or (iii) enter into any new, or amend any existing, Collective Bargaining Agreement or similar agreement with respect to any U.S. Employees or Non-U.S. Employees;

**F.** Make any material change in the accounting methods or practices followed by the Business (other than such changes that are required by Law or GAAP;

**G.** Make any election relating to Taxes, enter into any closing agreement relating to Taxes, settle any claim or assessment relating to Taxes or consent to any claim or assessment relating to Taxes or any waiver of the statute of limitations for any such claim or assessment that could affect the Buyer or the Business, or could give rise to or increase an Assumed or Excluded Liability;

**H.** Terminate or make any material amendment to a Material Contract, or waive any material right thereunder;

46

**I.**     Amend any Organizational Document of any JV Company if Securities Seller has a right to veto any such amendment;

**J.**     Fail to maintain insurance in a manner consistent with Sellers' past practice;

**K.**     Disclose any secret or confidential Intellectual Property relating to the Business (except by way of applying for a patent or in the Ordinary Course of Business: (i) under customer purchase order terms that do not accept supplier information as confidential; or (ii) under confidentiality agreements entered into on customary terms with other third parties) or allow any patent or trademark registration or application to lapse or become abandoned (except in the Ordinary Course of Business);

**L.**     Allow any Permit relating to the Business to lapse or fail to renew any such Permit; or

**M.**     Agree or commit to do any of the foregoing.

**N.**     Knowingly take any action that causes any JV Company to take any action or to fail to take any action as is proscribed under this Section 6.1 with respect to the business, assets or liabilities of such JV Company, as applicable.

**6.2**   <u>**Bankruptcy Actions**</u>:

**6.2.1**   As soon as practicable after the execution of this Agreement, Delphi will, and will cause the other Sellers that are Filing Affiliates to, file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking approval of the Bidding Procedures Order and entry of a Sale Approval Order.

**6.2.2**   Delphi will use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the sale of the Purchased Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Motion, the Sale Hearing (as hereinafter defined) and the objection deadline in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (as modified by orders of the Bankruptcy Court), the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**6.3**   <u>**Assumed U.S. Contracts; Cure Amounts**</u>.   No later than as soon as practicable after the Auction, Delphi will, pursuant to a motion (which motion may be incorporated into the Sale Motion), move to assume and assign to Buyers the Pre-Petition Contracts listed on <u>Schedule 6.3</u> (collectively, the "**Assumed U.S. Contracts**") and will provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court. Seller will pay Cure Amounts as agreed to by Delphi and each party to an Assumed U.S. Contract or, absent such agreement, by order of Bankruptcy Court in the time and manner specified by the Sale Approval Order.

47

6.4    **Non-Competition:**

    **6.4.1**    Delphi and each Seller undertake and agree with Buyers that for a period of five (5) years after the Closing Date (the "**Restricted Period**"), except with the consent of Buyers' Representative, neither Delphi nor any Seller will not, and will procure that each Affiliate thereof will not, either on its own account or in conjunction with or on behalf of any person, firm or company, whether by sales, marketing or other activities, carry on or be engaged, whether as a shareholder, director, employee, partner or agent in carrying on any business which is engaged in the design, development, manufacture, remanufacture or sale of Products as carried on by the Business currently or at the Closing Date (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 6.4.1 will not prohibit, in any way, (i) the acquisition by Delphi or any of its Affiliated companies, directly or indirectly, of a non-controlling ownership interest in any Person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen (15%) percent or less of the sales or fifteen (15%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater), but in no event having greater than $25 million in gross sales of products of the Competing Business; (ii)  the acquisition by Delphi or any of its Affiliated companies, directly or indirectly, of less than five (5%) percent of the publicly traded stock of any Person engaged in a Competitive Business; (iii) consistent with Delphi's troubled supplier practices relating to assuring supply of its Products to Delphi's OE customers so as to prevent a production interruption at such customers, any direct or indirect activities of Delphi or any Delphi Affiliate to advise, operate, manage or finance a troubled supplier of Delphi or its Affiliates, provided that Seller would use all commercially reasonable efforts to re-source the affected products as soon as practicable (within ninety (90) days unless Buyer consents to a longer period) and provide Purchaser with an opportunity to bid on such re-sourced products that are competitive with the Product; or (iv) the design, development, manufacture, remanufacture or sale of cinching latches and strikers, CRFMs and other HVAC products and the Excluded Products.

    **6.4.2**    As a separate and independent covenant, Delphi and each Seller undertake and agree with Buyers that for the Restricted Period, except with the consent of Buyers' Representative, neither Delphi nor any Seller will, and Delphi will procure that each Affiliate thereof will not, either for its own account or in conjunction with or on behalf of any person, firm or company, for the purpose of carrying on any Competitive Business, call upon, solicit, advise or otherwise do, or attempt to do, business with any customers of the Business.

    **6.4.3**    In the event that the covenants contained in Section 6.4.1 or Section 6.4.2 are more restrictive than permitted by Law, the Parties agree that the covenants contained in Section 6.4.1 or Section 6.4.2 will be enforceable and enforced to the extent permitted by Law.

    **6.4.4**    The Restricted Period shall be extended by the length of any period during which Delphi or any Seller is determined by a Court of competent jurisdiction, to be in breach of the terms of this Section 6.4.

    **6.4.5**    Delphi acknowledges that the covenants set forth in this Section 6.4 are an essential element of this Agreement and that, but for the agreement of Delphi to comply with these covenants and agreement of Delphi to ensure that all of its Affiliates

comply with these covenants, the Buyers would not have entered into this Agreement. Delphi acknowledges that: (i) this Section 6.4 constitutes an independent covenant that shall not be affected by performance or nonperformance of any other provision of this Agreement by the Buyers other than payment of the entire Purchase Price; (ii) $10 million of the Purchase Price shall be consideration allocable to such independent covenant (without limiting Buyers' rights for indemnification purposes hereunder to be allocated among the Sellers on a pro rata basis consistent with the Allocation); (iii) if any covenant of Delphi set forth in this Section 6.4 were not performed in accordance with its specific terms or were otherwise breached, irreparable damage would occur, no adequate remedy at law would exist and damages would be difficult to determine, and that the Buyers shall be entitled to specific performance of the terms of this Section 6.4, in addition to any other remedy at law or equity; and (iv) Delphi has independently consulted with their counsel and after such consultation agree that the covenants set forth in this Section 6.4 are reasonable and proper.

**6.5      Tax Matters; Cooperation; Preparation of Returns; Tax Elections:**

    **6.5.1**    Seller will be responsible for the preparation and filing of all Tax Returns for the JV Company(ies) that are due on or prior to the Closing Date, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds.    JV Company(ies) will make any payments required to be made with these returns.  Buyer will be responsible for the preparation and filing of all Tax Returns for the JV Company(ies) that are due after the Closing Date, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds. JV Company(ies) will make any payments required to be made with these returns.

    **6.5.2**    Seller will be responsible for the preparation and filing of all Tax Returns relating to the Acquired Assets for all periods ending on or prior to the Closing Date, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds.  Seller will make any payments required to be made with these returns.

    **6.5.3**    Buyer shall prepare and file all Tax Returns relating to all real property Taxes, personal property Taxes or similar ad valorem obligations (collectively, "**Property Taxes**") levied with respect to the Acquired Assets for any taxable period that begins before the Closing Date and ends after the Closing Date (each such taxable period, a "**Straddle Period**"), whether imposed or assessed before or after the Closing Date, other than Straddle Period Tax Returns that Seller is required to file by applicable law. Seller shall be liable for and shall indemnify Buyer, its Affiliates and each of their respective officers, directors, employees, stockholders, agents and representatives against all liability for the entire amount of Property Taxes levied for the Straddle Period multiplied by a fraction the numerator of which is the number of days in the Tax period ending on the Closing Date and the denominator of which is the number of days in the entire Tax period.  Buyer shall be liable for and shall indemnify Seller, its Affiliates and each of their respective officers, directors, employees, stockholders, agents and representatives against all liability for the entire amount of Property Taxes levied for the Straddle Period multiplied by a fraction the numerator of which is the number of days in the Tax period beginning on the day following the Closing Date and the denominator of which is the number of days in the entire Tax period.  Any credits relating to a Straddle Period shall be taken into account as though the relevant Straddle Period ended on the Closing Date.  All determinations necessary to give effect to the foregoing allocations

49

shall be made in a manner that does not accelerate deductions or defer income. With respect to any such Straddle Period returns or filings, the non-filing party shall pay to the filing party, not later than five (5) Business Days before the due date for payment of such Property Taxes levied for the Straddle Period, provided that the non-filing Party has received notice of the allocation at least ten (10) Business Days prior to the due date for payment under this Section 6.5.3, an amount equal to the portion of such Property Taxes levied for the Straddle Period for which the non-filing party is liable under this Section 6.5.3, and the filing party shall, promptly following the filing thereof, provide the non-filing party with a copy of such return or other filing and a copy of a receipt showing payment of any such Property Taxes levied for the Straddle Period. If notice of the allocation is not provided to the non-filing party at least fifteen (15) Business Days prior to the due date for payment under this Section 6.5.3, the non-filing party shall pay fifteen (15) days after receipt of notice, but shall have no liability if the payment is not made at least five (5) Business Days before the due date for payment of such Property Taxes levied for the Straddle Period. For any Property Tax Returns for the Straddle Period which the Seller was required by law to file prior to the Closing Date, the Seller shall provide an allocation between Seller and Buyer of the Property Taxes reflected on such returns, applying this Section 6.5.3 and taking into account all payments made as of the Closing Date, as soon as practicable following Closing. The Party with a net liability to the other Party shall make a payment in settlement of the net liability within fifteen (15) days following the date on which the allocation is provided. Any payments under this Section 6.5.3 shall be treated as purchase price adjustments under Article 3.

     **6.5.4**   Buyers will be responsible for the preparation and filing of all Tax Returns relating to the Acquired Assets for all periods beginning after the Closing. Buyers or Buyers will make all payments required with respect to any such Tax Return.

     **6.5.5**   Sellers and Buyers will use commercially reasonable efforts and cooperate in good faith to exempt the sale, conveyance, assignments, transfers, and deliveries to be made to the Buyers hereunder from any federal, state, county, local, foreign and other transfer, documentary, sales, use, registration, recording, stamp, value-added and other such taxes (including all applicable real estate transfer taxes, but excluding any taxes based on or attributable to income or gains) and related fees (including notarial fees as well as any penalties, interest and additions to tax) ("**Transfer Taxes**") payable in connection with such sale, conveyance, assignments, transfers and, deliveries, to the extent provided in the Sale Approval Order, in accordance with Section 1146(c) of the Bankruptcy Code. If Bankruptcy Court approval is granted for such exemption, then any instrument transferring the acquired assets to the Buyers will contain the following endorsement:

     Because the transactions contemplated by this Agreement have been authorized pursuant to Order of the United States Bankruptcy Court for the Southern District of New York relating to a chapter 11 plan of [Seller], they are exempt from transfer taxes, stamp taxes, or any other similar taxes pursuant to 11 U.S.C. § 1146(c).

To the extent not exempt under Section 1146 of the Bankruptcy Code and approved in the Sale Approval Order, such Transfer Taxes arising out of or incurred in connection with this Agreement will be borne solely by Buyers. The party that is legally required to file a Tax Return relating to Transfer Taxes will be responsible for preparing and timely filing such Tax Return. Delphi will prepare the Transfer Tax returns for which Delphi is

responsible as soon as is practicable and provide the Buyers with a copy to review. Buyers agree to provide Delphi with comments and the amount of transfer tax to be paid in sufficient time to enable Delphi to timely file the return and pay the Transfer Tax.

      **6.5.6**    Buyers and Sellers will cooperate, or cause their Affiliates to cooperate, in connection with: (i) the preparation and filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or the prosecution or defense of any claim, suit or other proceeding in respect of Taxes related to the Business or the Acquired Assets. Buyer and Seller agree to furnish or cause their Affiliates to furnish to each other upon request, as promptly as practicable, such information and assistance relating to the Acquired Assets, the JV Companies, or the Business (including access to books and records) as is reasonably necessary to so cooperate. Buyer and Seller or their Affiliates shall each execute and deliver such other documents as are necessary to carry out the intent of this Section 6.5. Buyer and Seller shall provide, or cause their Affiliates to provide, timely notice to each other in writing of any pending or threatened Tax audits, assessments or litigation with respect to the Acquired Assets or the Business for any taxable period for which the other party may have liability under this Agreement. Buyer and Seller shall furnish, or cause their respective Affiliates to furnish, to each other copies of all correspondence received from any Taxing Authority in connection with any Tax Audit or information request with respect to any taxable period for which the other party or its Affiliates may have liability under this Agreement.

      **6.5.7**    Buyers will not make any election under Internal Revenue Code Section 338 for any JV Company.

**6.6**    <u>**Employee Matters**</u>:

      **6.6.1**    <u>**Transferred Employees**</u>.  Sellers will update <u>Schedule 4.11.1</u> as of the day prior to Closing:

      **A.**    Subject to Section 6.6.1.B, Section 6.6.1.H, and Section 6.6.3, effective as of the Closing, the relevant Buyer will offer employment to all U.S. Employees, other than Inactive Employees, and Non-U.S. Employees with such new employment to commence (if accepted, whether by reporting to work or otherwise) with effect from the Closing; provided, however, that, the relevant Buyer will assume the employment Contracts listed on <u>Schedule 6.6.1</u> of any Non-U.S. Employees in accordance with applicable Transfer Regulations. In addition, the relevant Buyer will: (i) employ the employees of Sellers or Sellers' Affiliates (for the purpose of this Section 6.6.1.A, Seller's Affiliates will include Korea Delphi Automotive Systems Corporation) currently seconded to either of the JV Companies, in accordance with applicable terms of employment; or (ii) elect to retain such employees through an employment contract company (e.g., FESCO); in any case, in accordance with applicable Laws and Transfer Regulations. Buyers will comply with all requirements of the Transfer Regulations, including assuming and recognizing the seniority status of such employees for all purposes of the continued employment with the relevant Buyer.

      **B.**    Subject to the next sentence, Buyer will offer employment to all but up to five (5) active U.S. Salaried Employees, other than Inactive Employees who will transfer in accordance with Section 6.6.3, who primarily support the

Business, including: (i) all salaried employees at the Adrian, Michigan; Gadsden, Alabama; and Cottondale, Alabama Manufacturing Facilities; and (ii) salaried employees who primarily support the Business in the case of the Vandalia, Ohio technical center, and the Troy, Michigan technical center and corporate offices. The foregoing obligation would not apply to employees ineligible for employment by Buyer based on "cause" as previously identified in Buyer's due diligence and mutually agreed by the parties which will not be unreasonably withheld.  For all U.S. Salaried Employees, except as otherwise provided herein, Buyers' offer of employment will include salary and benefits packages that are substantially comparable in the aggregate to those in place immediately prior to Closing.  Prior to tendering such offers, Buyers will provide Sellers with information sufficient to satisfy Sellers (not to be unreasonably withheld) that such offers meet the "substantially comparable in the aggregate" requirement.  Sellers' satisfaction that Buyers' offers meet this requirement will not be unreasonably withheld.  For all such U.S. Salaried Employees, Buyers will maintain the requisite level of compensation and benefits for a minimum of twelve (12) months following the Closing Date; provided, however, that, where the level of compensation and benefits of any such employees is governed by a Contract containing a different duration provision and referred to in Schedule 6.6.1, Buyers will abide by the terms of such Contract.

C.    For all U.S. Hourly Employees or Non-U.S. Employees, Buyer's offer of employment (or assumption of employment Contract as applicable for any Non-U.S. Employees) will be on the same terms, at the same level of compensation and with the same benefits in effect immediately prior to Closing. The specific terms governing the offer of employment to any Non-U.S. Employee will be as set forth in the applicable Transfer Agreement and in compliance with applicable Transfer Regulations.

D.    Sellers will retain responsibility for all Liabilities for workers' compensation benefits related to injuries or illnesses incurred by Transferred U.S. Employees prior to the Closing, provided that claims for such Liabilities are filed within twelve (12) months of the Closing.  All other such Liabilities will be the responsibility of Buyer.

E.    Regardless of the vesting date, Sellers will be responsible for the amount of all accrued and unutilized vacation pay and any profit sharing or incentive compensation of Transferred U.S. Employees due for the calendar year in which the Closing occurs on a pro-rata basis using the number of days worked by the Transferred U.S. Employees for Seller or other Seller-Affiliated employer.

F.    Buyers will assume all accrued pension and vacation pay liabilities for all Transferred Non-U.S. Employees, as set forth in the Transfer Agreements.

G.    Seller will remain responsible for all employment rights of Transferred U.S. Employees incurred or vesting prior to the Closing, except as otherwise provided in this Section 6.6, and will retain all assets relating thereto, including training funds in connection with Seller U.S. Collective Bargaining Agreements.

**H.**    Schedule 6.6.1.H lists the U.S. Hourly Employees who, as of the Closing Date, are or may become eligible for traditional pension benefits under the Delphi Hourly-Rate Employees Pension Plan ("**Delphi HRP**") (i.e., pension benefits other than cash balance benefits provided in accordance with the Individual Retirement Plan provisions of the Delphi HRP) and their union affiliation (i.e., UAW or IUE-CWA).   Seller will continue to employ the U.S. Hourly Employees listed on Schedule 6.6.1.H and will lease such U.S. Hourly Employees (hereinafter "**Leased U.S. Hourly Employees**") to Buyer until such time as benefit accruals under the Delphi HRP are frozen in accordance with the "**Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee**" (i.e., Attachment B of the 2007 UAW-Delphi-GM Memorandum of Understanding – Delphi Restructuring dated June 22, 2007 or Attachment B of the IUE-CWA-Delphi-GM Memorandum of Understanding – Delphi Restructuring dated August 5, 2007, as applicable) (hereinafter the "**Benefit Guarantee Term Sheet**"), but in no event for a period longer than nine (9) months following Closing unless Buyer agrees otherwise (which agreement Buyer may withhold in its sole discretion).   Subject to the preceding sentence, once the Delphi HRP is frozen in accordance with the Benefit Guarantee Term Sheet, Buyer will offer employment to the Leased U.S. Hourly Employees and, if accepted, such Leased U.S. Hourly Employees will become Transferred  Employees.  For and in relation to the lease period, Buyer will reimburse Seller for all of Seller's employment-related costs, including wages and benefits, associated with the Leased U.S. Hourly Employees at the rate of $34.67 per hour worked for production employees and $59.40 for skilled trades employees.

**6.6.2    Collective Bargaining Agreements.**  Buyers will assume the terms and conditions of all Collective Bargaining Agreements referred to in Schedule 6.6.1 that relate to Non-U.S. Employees, in accordance with applicable Transfer Regulations. Buyers will assume the terms and conditions of the Collective Bargaining Agreements applicable at the Cottondale, Alabama; Adrian, Michigan; and Gadsden, Alabama Manufacturing Facilities as such terms and conditions may be modified by mutual agreement of the Buyer and the respective unions prior to Closing and subject to a Memorandum of Understanding between Seller and the respective Union regarding the effects of the sale upon the bargaining unit members (the "**Effects MOU**"); provided, however, that Buyer will not assume any obligation or liabilities under the Effects MOUs or under Seller Employee Benefit Plans referred to in such Collective Bargaining Agreements but rather will establish Buyer-sponsored employee benefit plans which are consistent with the terms and conditions of such Collective Bargaining Agreements; and, provided, further, that the assumed Collective Bargaining Agreements will  apply only to U.S. Hourly Employees who become Transferred Employees, and other individuals hired by Buyer after Closing.  Buyers will recognize the seniority status of all Transferred Employees who are employed in accordance with a Collective Bargaining Agreement for all purposes of continued employment with Buyers.

**6.6.3    Inactive Employees:**

**A.**    U.S. Employees who are not active employees as of the Closing ("**Inactive Employees**") due to disability, family medical leave or other approved leave of absence will remain Sellers' responsibility until such employee is ready

53

to return to active employment in accordance with Sellers' leave policies and Section 6.6.3.B below.

**B.**     When an Inactive Employee is ready to return to active status in accordance with Sellers' leave policies, Buyers will offer employment to such individual in accordance with Section 6.6.1 and, provided such individual accepts Buyers' offer of employment, such individual will be considered a Transferred Employee as of the date such individual reports to work with Buyers for active duty.  In the event that an employee is seeking to return to active employment from a medical-based leave, such individual's fitness for active employment must be approved by both Sellers and Buyers; provided that such process does not violate any applicable Collective Bargaining Agreement or Law.

**C.**     If Sellers and Buyers do not agree as to an individual's fitness for active employment, the issue will be submitted to an independent medical evaluator, whose determination will be final and binding on the Parties.  The cost of such independent medical evaluation will be shared equally by the Parties.

**6.6.4   Employee Benefit Plans:**

**A.**     Buyers will assume all accrued pension liabilities for all Transferred Non-U.S. Employees, in accordance with the applicable Transfer Regulations and as set forth in this Agreement or the Transfer Agreements.

**B.**     Subject to Section 6.6.4.E below, Transferred U.S. Employees' and their dependents' and beneficiaries' participation in and eligibility for benefits under the Seller Employee Benefit Plans (other than vested pension benefits) will cease as of the Closing.  Notwithstanding the preceding sentence, the Seller Employee Benefit Plans which are welfare plans as defined under ERISA will retain liability for all claims incurred by the Transferred U.S. Employees and their dependents and beneficiaries prior to the Closing, including claims which are not submitted until after the Closing.  A claim will be deemed incurred, as applicable:

(i)     On the date of the occurrence of death or dismemberment in the case of claims under life insurance and accidental death and dismemberment Seller Employee Benefit Plans;

(ii)     On the date on which the service or treatment is provided in the case of claims under medical, hospital, dental and similar Seller Employee Benefit Plans; or

(iii)     On the date immediately following a Transferred U.S. Employee's last day worked on which a physician legally licensed to practice medicine certifies to total disability under the applicable disability Seller Employee Benefit Plans.

**C.**     Transferred U.S. Employees' and their dependents' and beneficiaries' participation in and eligibility for benefits under the Buyers' Employee Benefit Plans will commence as of the Closing.  Buyers will not assume any Seller Employee Benefit Plans applicable to Transferred U.S. Employees or any Assets or Liabilities relating to:

54

(i)     Any Employee Benefit Plan which Sellers or any of their subsidiaries maintain, contribute to or have any obligation to contribute to;

(ii)     Any Employee Benefit Plan to which Sellers or any of their subsidiaries have incurred or expect to incur liability, direct or indirect, contingent or otherwise, under Title IV of ERISA with respect to the termination of, or withdrawal from, any Employee Benefit Plan;

(iii)     Any accumulated funding deficiency (as defined in Section 302 of ERISA) that has occurred, exists or is reasonably expected to occur with respect to any Employee Benefit Plan subject to Title IV of ERISA with respect to which Sellers or any of their Affiliates have or may have any Liability, direct or indirect, contingent or otherwise; or

(iv)     Claims of the U.S. employees of Sellers or their Affiliates (or a dependent thereof who becomes a "qualified beneficiary" within the meaning of Section 4980B(g)(1) of the Internal Revenue Code) related to compliance with the requirements of continuation coverage under Section 4980B of the Internal Revenue Code or Section 601 of ERISA or as a result of any "qualifying event" within the meaning of Section 4980B(f)(3) of the Internal Revenue Code which occurs prior to the Closing.

**D.**     Buyers will recognize a Transferred U.S. Salaried Employee's pre-Closing credited service with Seller for eligibility and vesting purposes but not benefit accrual purposes with respect to any Employee Benefit Plans of any Buyer.  However, in no case will credited service be recognized under this provision if such recognition will cause a duplication of compensation or benefits as between Sellers and Buyers.

**E.**     Buyer will not provide transferred U.S. Salaried Employees with a defined benefit plan, but will provide a defined contribution plan.  Seller will retain all assets and liabilities under Seller's defined benefit pension plan for the benefits accrued prior to Closing for any transferred U.S. Salaried Employees. Subject to Seller obtaining the requisite government approvals to do so, Seller's defined benefit plan will continue to recognize service at Buyer for purposes of vesting and eligibility (but not benefit accrual) provided that Buyer will reimburse Seller quarterly solely for the service cost of Seller's pension supplement as set forth in Part A, Article I, Section 2 of the Delphi Retirement Program for Salaried Employees.  The annual service cost Buyer pays Seller will be based upon the Seller's SFAS 87 assumptions in Seller's then most-recent annual report subject to it being reasonably acceptable to Buyer's actuary.  Other than reimbursement for the service cost relating to the pension supplement, Buyer will have no obligation relating to Seller's defined benefit plan.

**F.**     Buyer will not provide retiree welfare benefits (including retiree medical benefits and life insurance) to Transferred U.S. Salaried Employees. Sellers will retain all liability and responsibility for retiree welfare benefits for Transferred U.S. Salaried Employees who are eligible to retire from Sellers as of the Closing.  With regard to transferred U.S. Salaried Employees who are not eligible to retire as of the Closing but who are eligible for retiree welfare benefits:

(i)    Buyer will pay to Delphi the annual service cost of the Delphi retiree medical benefits being earned by such Transferred U.S. Salaried Employees for the years employed by Buyer up to the date such employees' eligibility requirements have been fulfilled; and

(ii)    Buyer will pay to Delphi the annual service cost of the Delphi retiree life insurance being earned by such Transferred U.S. Salaried Employees for the years employed by Buyer up to the date such employees actually retire from Buyer.

On an annual basis, Buyer will pay to Delphi the above annual service costs under Delphi's benefit plans associated with retiree welfare benefits for the Transferred U.S. Salaried Employees.  If a Transferred U.S. Salaried Employee leaves the employ of Buyers prior to his being eligible to retire with retiree welfare benefits in accordance with Seller's applicable retiree welfare benefit plans, the service cost previously paid by Buyers for such employee will be deducted from any future contribution by Buyer.  Seller will provide such retiree welfare benefits in accordance with the Seller retiree welfare benefit plans in effect on or after the date such Transferred U.S. Salaried Employee actually retires.  The annual service cost Buyer pays Delphi will be based upon the Seller's SFAS 106 assumptions in Seller's then most-recent annual report, subject to it being reasonably acceptable to Buyer's actuary.

**G.**    Pension and retiree welfare benefits received from Seller (contingent on Buyers' reimbursements for pension and retiree medical service costs under Section 6.6.4.E and 6.6.4.F) shall be included in determining Buyers' satisfaction of the "substantially comparable in the aggregate" requirement in Section 6.6.1.B.

**H.**    **Severance.**    Buyers will be responsible for all obligations and liabilities relating to any claims for severance, termination (actual or constructive), redundancy, change in control agreements or other payments or benefits by Transferred U.S. Employees arising from the transactions contemplated under this Agreement and based on Buyer's actions following the Closing; provided, however, that Seller will be responsible for reimbursing all severance amounts incurred by Buyer for the number of U.S. Hourly Employees who at the Closing Date are manufacturing HVAC products under the Adrian Manufacturing Services Agreement, within ten (10) Business Days after receipt of an invoice reasonably detailing all such severance amounts actually incurred by Buyer for hourly Transferred Employees upon  termination of the Adrian Manufacturing Services Agreement.

**I.**    **Employee Benefits of U.S. Hourly Employees.**    On or before Closing the Parties will agree as to the mechanics of the "our watch, your watch" details of this Section 6.6.4, as relates to U.S. Hourly Employees who become Transferred Employees.

**6.6.5    COBRA.**    Seller will retain responsibility for all liabilities, obligations, commitments, costs and expenses for claims of the Transferred U.S. Employees (or a dependent thereof who becomes a "qualified beneficiary" within the meaning of

56

Section 4980B(g)(1) of the Internal Revenue Code) related to compliance with the requirements of continuation coverage under Section 4980B of the Internal Revenue Code or Section 601 of ERISA or as the result of any "qualifying event" within the meaning of Section 4980B(f)(3) of the Internal Revenue Code which occurs at or prior to the Closing.

6.6.6    **WARN Act.**  Buyers will assume all post-Closing obligations and liabilities relating to WARN Act or other similar notice Laws, if any, by Transferred Employees arising from the transactions contemplated under this Agreement.

6.6.7    **Grievances.**  Seller will retain responsibility to administer and all liability for labor union grievances and arbitration proceedings (collectively the "**Grievances**") involving claims of Transferred U.S. Hourly Employees incurred prior to the Closing, but only if Buyer notifies Seller within one (1) year after Closing of any Grievances filed after the Closing which relate to claims incurred prior to the Closing.  Buyer will be responsible to administer and bear all liability for Grievances involving claims incurred after the Closing and Grievances involving claims incurred prior to the Closing to the extent that Seller was not provided notice of any such Grievances within one (1) year of Closing.  To the extent the administration or resolution of any Grievances requires both the Buyers' and Sellers' participation, the following apply:

**A.**    Buyers and Sellers will cooperate in the defense of the Grievances.

**B.**    Buyers will not settle any Grievance without Sellers' consent if such settlement will result in Liability for Seller.  Such consent will not be unreasonably withheld.

**C.**    Sellers will not settle any Grievance without Buyers' consent if such settlement will result in Liability for Buyers.  Such consent will not be unreasonably withheld.

**D.**    If the seniority of an employee is reinstated as a result of the disposition of a Grievance or Governmental Order, Buyer will reinstate the employee as if such employee had been a Transferred U.S. Hourly Employee as of the Closing.

**E.**    For Transferred U.S. Hourly Employees who have been continuously employed, back pay Liability to the extent relating to an event, occurrence or cause of action arising prior to the Closing will be allocated to Seller.  Liability relating to an event, occurrence or cause of action arising subsequent to the Closing will be allocated to Buyer.

**F.**    For employees who become Transferred U.S. Hourly Employees because they are reinstated through the grievance procedure, back pay Liability relating to periods prior to the Closing will be allocated to Seller.  Liability relating to periods subsequent to the Closing will be allocated to Buyer.

**G.**    The Parties will discuss treatment of Grievances involving unusual circumstances or events that continue before and after the Closing.

57

**H.**    If either party withholds consent to a settlement or processing of a Grievance recommended by the other party or elects to continue to defend the Grievance, then such party will be liable for the portion of the Liabilities resulting from the ultimate disposition of such Grievance (or subsequent settlement) which is in excess of the liability that would have resulted from the settlement recommended and rejected.

**6.6.8    Cooperation.**    Sellers and Buyers will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Section 6.6.

**6.6.9    Union and Works Council Notifications.**    Sellers and Buyers will reasonably cooperate in connection with any notification required by Law to, or any required consultation with, or the provision of documents and information to, the employees, employee representatives, work councils, unions, labor boards and relevant government agencies and governmental officials concerning the transactions contemplated by this Agreement.

**6.6.10    Non-Solicitation.**    Delphi and each Seller, in each case on behalf of itself and its Affiliates (collectively, "**Restricted Parties**"), agree, for a period of five (5) years following Closing: (i) not to offer to employ any of the salaried Transferred Employees of the Business; and (ii) not to employ or offer to employ any of the individuals listed on Schedule 6.6.10 hereto; in each case without Buyer's prior consent (not to be unreasonably withheld).    Notwithstanding the foregoing, the Restricted Parties may employ any individuals referred to in clause (i) above who either: (a) respond to a general advertisement that is not targeted specifically at the salaried Transferred Employees; or (b) have been terminated by Buyer prior to commencement of employment discussions with a Restricted Party.

**6.6.11    Amendment of Buyer Plans**.    Subject to Buyers' compliance with its obligations under Section 6.6.1.B (twelve (12) month requirement) and Section 11.3.1, nothing in this Section 6.6 shall prevent the amendment or termination of any Employee Benefit Plan of any Buyer or limit the right of Buyer or any of its Affiliates to terminate the employment of any Transferred Employee at any time.    Without limiting the generality of Section 12.13, nothing in this Section 6.6, express or implied, is intended to or shall confer upon any Transferred Employee any right, benefit or remedy of any nature whatsoever against Buyers or their Affiliates.

**6.7    Contact with Customers and Suppliers.**    Prior to the Closing, except in the ordinary course as a supplier to certain customers and without discussing the Sale, Buyers and their Affiliates and their respective representatives will contact and communicate with the Transferred Employees, customers, suppliers and licensors of the Business in connection with the transactions contemplated by this Agreement only with the prior consent of Delphi, which consent shall not be unreasonably withheld and, except with respect to General Motors, may be conditioned upon a designee of Delphi being present at any such meeting or conference.

**6.8    Technical Documentation.**    Sellers have delivered, or will deliver on or before the Closing, to the Buyer, a copy of all Technical Documentation included in the Acquired Assets.    For a period of not less than ten (10) years commencing at the Closing, Buyers will use reasonable efforts to maintain all Technical Documentation applicable to Product design, test, release and validation at a location at which it will be reasonably accessible to Delphi upon

Seller's request where such access is reasonably necessary in connection with the defense of litigation or Claims brought against Seller by a third party, an investigation or inquiry by a Governmental Authority, or third party subpoenas.  During such ten (10) year period, Buyers will not destroy or give up possession of the final copy of such Technical Documentation without offering Delphi the opportunity to obtain a copy of such documentation at Delphi's expense but without any payment to Buyers.

**6.9**    **Books and Records and Litigation Assistance From and After Closing:**

       **6.9.1**    Buyers will preserve and keep all books, records, computer files, software programs and any data processing files delivered to Buyer by Seller and its Affiliates pursuant to the provisions of this Agreement for a period of not less than five (5) years from the Closing Date, or for any longer period as may be required by any Law, Governmental Entity Order or in connection with any ongoing litigation, audit or appeal of Taxes, or Tax examination, at Buyer's sole cost and expense.  During such period, Buyer will: (i) provide Seller with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of each facility included within the Business; and (ii) make such books and records available to Seller and its Affiliates as may be reasonably required by Seller and its Affiliates in connection with any legal proceedings against or governmental investigations of Seller and its Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Seller and its Affiliates, the Business or the Acquired Assets.  Seller or its Affiliates will reimburse Buyer for the reasonable out-of-pocket expenses incurred in connection with any request by Seller to make available records pursuant to the foregoing sentence.  In the event Buyer wishes to destroy or dispose of such books and records after five (5) years from the Closing Date, it will first give not less than ninety (90) days' prior written notice to Seller, and Seller will have the right, at its option, upon prior written notice given to Buyer within sixty (60) days of receipt of Buyer's notice, to take possession of said records within ninety (90) days after the date of Buyer's notice to Seller hereunder.

       **6.9.2**    Buyers will, from time to time, at the reasonable request of Sellers, cooperate fully with Sellers in providing Sellers and their Affiliates (as appropriate) (to the extent possible through Transferred Employees) with technical assistance and information in respect to any claims brought against Sellers and their Affiliates involving the conduct of the Business prior to Closing, including consultation and/or the appearance(s) of such persons on a reasonable basis as expert or fact witnesses in trials or administrative proceedings.  Sellers will reimburse Buyers and their Affiliates for their reasonable, actual direct out-of-pocket costs (travel, employee time (other than for clerical services), hotels, etc.) of providing such services.  In particular, Buyers, for themselves and on behalf of their Affiliates, agree to: (i) retain all documents required to be maintained by Law and all documents that may be reasonably required to establish due care or to otherwise assist Sellers and their Affiliates in pursuing, contesting or defending such claims; (ii) make available their documents and records in connection with any pursuit, contest or defense, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Buyers and their Affiliates must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Buyers must notify Sellers of the existence of such privileged documents); and (b) Sellers and their Affiliates will agree to keep confidential documents and records that are confidential or are subject to trade secret protection); (iii) promptly respond to discovery requests in connection with such claim,

understanding and acknowledging that the requirements of discovery in connection with litigation require timely responses to interrogatories, requests to produce and depositions and also understanding and acknowledging that any delays in connection with responses to discovery may result in sanctions; (iv) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to interfere materially with Buyers' business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Sellers and their Affiliates in connection with such claim, including investigation into claims and occurrences described in this section and preparing for and giving factual and expert testimony at depositions, court proceedings, inquiries, hearings and trial; and (v) make available facilities and exemplar parts for the sole and limited use of assisting Sellers and their Affiliates in the contest or defense.

**6.10    Corporate Names:**

**6.10.1** Buyers will have the right (including the right to authorize their relevant Affiliates) to continue to sell or dispose of any existing inventories or service materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of Delphi or any Affiliate of Delphi for a period of no more than ninety (90) days after the Closing Date (one hundred eighty (180) days for engineering drawings) in a manner consistent with past practice of the Business and the name and reputation associated therewith, provided that Buyers and their Affiliates will clearly indicate to recipients of such written materials that the Business is owned by Buyers and their Affiliates and is no longer affiliated with, and Buyer and its Affiliates do not represent, the Sellers or any Affiliate of Seller.

**6.10.2** After the expiration of the applicable period set forth in Section 6.10.1, Buyers will not use, and will use commercially reasonable efforts to cause the JV Companies not to use, the name "Delphi" and any trademarks, trade names, brandmarks, brand names, trade dress or logos relating or confusingly similar (including on any signs, billboards, advertising materials, telephone listings, web sites, labels, stationery, office forms, packaging or other materials) in connection with the Business or otherwise.  No later than forty-five (45) days before the Closing Date, Buyer shall submit a company name change request to Seller for review.  Upon the agreement by the Parties on such name change, Seller will be responsible for registering such new name with the relevant government authority, provided that Buyer shall provide all necessary assistance and documents required to achieve that effect.

**6.10.3** If not completed prior to Closing, consistent with the terms of applicable JV Company Contracts included in the Acquired Assets, Buyers will use all commercially reasonable efforts to cause each of the JV Companies to amend its certificate of incorporation, partnership agreement, limited liability company agreement and other applicable documents, in order to change the names of such companies to a name not containing the word "Delphi", with such changes to take effect pursuant to the terms of the respective transfer deed governing the sale of each JV Company.

**6.10.4** Each of the Parties acknowledges and agrees that the remedy at Law for any breach of the requirements of this Section 6.10 would be inadequate, and agrees and consents that without intending to limit any additional remedies that may be available, temporary and permanent injunctive and other equitable relief may be granted

60

without proof of actual damage or inadequacy of legal remedy in any Proceeding which may be brought to enforce any of the provisions of this Section 6.10.

**6.10.5** Notwithstanding the foregoing, nothing in this Section 6.10 shall prevent Buyers from selling all existing inventory for Chevrolet Malibu door module service parts and Fiat Stilo latch service parts until all such inventory has been sold, provided that such service parts are packaged in a manner to indicate that the Business is owned by Buyers and their Affiliates and is no longer affiliated with, and Buyer and its Affiliates do not represent, the Sellers or any Affiliate of Seller.

**6.11**    **Intellectual Property Licenses**:

**6.11.1** **License to Buyers**.  Delphi, on behalf of itself and its Affiliates, hereby grants to Buyers, as of the Closing Date, a worldwide, perpetual, paid-up, royalty free license to use the Shared Intellectual Property to develop, manufacture, use, import, export, offer to sell and sell Products and to reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith, subject to any restrictions arising from rights granted to third parties prior to the Closing Date; such license will be exclusive for a period of five (5) years after the Closing Date and nonexclusive after such period.  Further, Delphi, on behalf of itself and its Affiliates, hereby grants to Buyers, as of the Closing Date, a sublicense for all Sublicensed Intellectual Property, said sublicense being subject to the terms of the applicable Contracts listed in Schedule 6.11.1, to develop, manufacture, import, export, offer to sell and sell Products, and to reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith; effective upon and for a period of five (5) years after the Closing Date, neither Delphi nor its Affiliates will further sublicense the Sublicensed Intellectual Property to develop, manufacture, import, export, offer to sell or sell Products.  The license granted to Buyer under this Section 6.11.1 does not extend to the Excluded Products and is not assignable in whole or in part except to a purchaser of all or substantially all of the portion of the Business to which the license pertains.

**6.11.2** **License to Sellers**.  Buyers, on behalf of themselves and their Affiliates, hereby grant to Seller as of the Closing Date, a worldwide, perpetual, paid-up, royalty free, non-exclusive license to develop, manufacture, use, import, export, offer to sell and sell products and services of the type provided by Sellers and their Affiliates as of the Closing Date (other than the Products, but including Hybrid CrossCar Beams), and to reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith, using any Purchased Intellectual Property, subject to any restrictions arising from rights granted to third parties prior to the Closing Date.  The license granted to Seller under this Section 6.11.2 also extends to the Hybrid CrossCar Beam.

**6.11.3** **Further Understandings**.  The licenses granted above in this Section 6.11: (i) include the right for the licensed party to sublicense to any of its Affiliates, to its and their successors, and to suppliers, customers and others in connection with the conduct of the businesses contemplated by this Agreement; and (ii) do not include any right to use any Trademark Rights.  In addition, Sections 6.11.3.A-6.11.3.F detail certain rights concerning cinching latches and cinching strikers:

**A.**      The remote cinching latch, power pulldown units and the Lincoln power cinching striker (the "**Transferred Cinching Products**") are Products and will be transferred with the Business.  Owned Intellectual Property that is used primarily for Transferred Cinching Products is Purchased Intellectual Property and will be transferred with the Business.

**B.**      The integral cinching latch, the advanced development power cinching striker and the advanced development power cinching latch (the "**Retained Cinching Products**") are Excluded Products and will not be transferred with the Business.  Owned Intellectual Property that is used primarily for Retained Cinching Products ("**Retained Cinching Products Intellectual Property**") is not Purchased Intellectual Property but will be licensed as set forth in Section 6.11.3.C.

**C.**      Buyers' license under Section 6.11.1 also includes the right to use Retained Cinching Products Intellectual Property to develop, manufacture, use, import, export, offer to sell and sell cinching and non-cinching latches and strikers and to reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith.

**D.**      Delphi's license under Section 6.11.2 also includes the limited right to use Purchased Intellectual Property that is included in the Retained Cinching Products as of the Closing Date, to develop, manufacture, use, import, export, offer to sell and sell cinching latches and strikers for use with power closure drive systems sold by Delphi and its Affiliates and the successors to Delphi's power closure drive systems business, and for sale to Shanghai Delphi Automotive Door Systems Co., Ltd. and its successors, and to reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith.

**E.**      The non-competition provisions of Section 6.4.1 do not prohibit development, manufacture, use, import, export, offer to sell and sale of cinching latches and strikers for use with power closure drive systems sold by Sellers and their Affiliates.

**F.**      The non-competition provisions of Section 6.4.1 do not prohibit development, manufacture, use, import, export, offer to sell and sale of cinching and non-cinching latches and strikers by the successors to Delphi's power closure drive systems business.  However, this Agreement does not provide a right for such successors to use Purchased Intellectual Property except as set forth in Section 6.11.3.D.

**6.11.4  Post-Closing Intellectual Property.**  This Agreement does not grant Sellers any rights under any Intellectual Property created by Buyers after the Closing Date, and does not grant Buyers any rights under any Intellectual Property created by Sellers after the Closing Date.

**6.12    Intentionally Omitted.**

62

6.13    **Competition Clearance**:

    **6.13.1**  Subject to the terms hereof, Buyers and Delphi agree to cooperate and to use commercially reasonable efforts to obtain, as promptly as practicable following the date hereof, any Governmental Approvals required for the Closing under the HSR Act, EC Merger Regulation and any other applicable Competition/Investment Law, to respond to any government requests for information thereunder, to contest and resist in good faith any action thereunder, and to have lifted or overturned any Governmental Order that restricts, prevents or prohibits the consummation of the transactions contemplated by this Agreement.  The Parties will use commercially reasonable efforts to complete, no later than five (5) days after the Bid Deadline, Schedule 6.13.1, which includes a list of all countries in which competition filings may be required or appropriate.   In this respect, Buyers will make (or continue to prosecute, if made previously) all the competition filings set forth in Schedule 6.13.1 no more than five (5) Business Days after the date such Schedule has been completed, and Buyers' Representative will: (i) promptly inform Delphi of all oral and written communications with any Governmental Authority in respect of any required Governmental Approval; (ii) give Delphi the opportunity to comment on all filings and any response prepared by Buyers prior to Buyers' submitting such response to the relevant Governmental Authority; and (iii) afford Delphi or any Seller designated by Delphi the opportunity to attend any meetings, telephone conferences or video conferences organized with the Governmental Authorities in relation to any required Governmental Approval.  Notwithstanding the foregoing, the Parties agree that neither of them will make any voluntary filing under applicable foreign antitrust laws or regulations unless advised by legal counsel in such jurisdiction that the failure to make a filing could result in a Material Adverse Effect or otherwise be in violation of applicable Law.    Each party hereto will promptly inform the other of any oral or other communication from any Governmental Authority regarding any of the transactions contemplated by this Agreement and the Ancillary Agreements.  If the competition authority in any such country: (i) imposes conditions upon its approval of the transactions contemplated by this Agreement; or (ii) files a Proceeding before a Governmental Agency seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement, the Parties will take commercially reasonable steps to negotiate with the competition authority regarding, and comply with, any conditions or modifications requested by such competition authority, consistent with the general intention of this Agreement (that ownership of the Business will be vested in the Buyers). Subject to Section 9.2.2, each Party will bear its own costs and expenses incurred in negotiating and agreeing to the required conditions or modifications with the competition authorities.

    **6.13.2**  Buyers will not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Authority necessary to consummate the transactions contemplated by this Agreement or the Transfer Agreements or the expiration or termination of any applicable waiting period; (ii) increase the risk of any Governmental Authority entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Transfer

Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) delay or prevent the consummation of the transactions contemplated by this Agreement or the Transfer Agreements.

**6.14    Further Actions:**

6.14.1 Within three (3) Business Days after the entry of an unstayed Sale Approval Order by the Bankruptcy Court, the Parties will use commercially reasonable efforts to take all actions and to do all things necessary, proper or advisable under Law to consummate the transactions contemplated hereby and by the Transfer Agreements. In furtherance of the foregoing, the Parties will consult and cooperate with one another, and consider in good faith the views of one another, in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any party hereto in connection with the transactions contemplated by this Agreement.

6.14.2 At all times prior to the Closing: (i) Delphi will notify Buyers' Representative in writing of any fact, condition, event or occurrence that will result in the failure of any of the conditions contained in Article 7 to be satisfied, promptly upon any of them becoming aware of the same; and (ii) Buyers' Representative will notify Delphi in writing of any fact, condition, event or occurrence that will result in the failure of any of the conditions contained in Article 7 to be satisfied, promptly upon any of them becoming aware of the same.

**6.15    Further Assurances.**  If at any time after the Closing Date any further action is necessary or desirable to carry out the purposes of this Agreement, the parties hereto shall take or cause to be taken all such necessary action, including, without limitation, the execution and delivery of such further instruments and documents as may be reasonably requested by the other party for such purposes or otherwise to consummate and make effective the transactions contemplated hereby; provided that, to the extent not indemnified or required hereunder the cost of such action or of such instruments and documents related thereto shall be borne by the party requesting them.   The foregoing covenant will survive the Closing of the transactions contemplated herein.

**6.16    Shared Items Transferred to Buyers; Transfer Pricing.** With respect to any contracts for goods or services included in the Acquired Assets and that are used by both the Business and other operations of Delphi or its Affiliates that are set forth on Schedule 6.16, and that will be transferred to Buyers at Closing, Buyers will provide Sellers with the benefits of such contracts in substantially the same manner described in Section 2.4 above regarding Deferred Items, and Delphi will cause Sellers to reimburse Buyers for such benefits in substantially the manner described in Section 2.4, until the earlier of such time as separate contracts for such goods or services have been agreed between the applicable Seller and the other Party or Parties to such contract or contracts, or until the termination of such contract or contracts.-

**6.17    Buyer's Financing Activities:**

6.17.1 Buyers acknowledge and agree that: (i) Sellers and their Affiliates have no responsibility for any financing that Buyers may raise in connection with the transactions contemplated hereby including with respect to any offering materials and other documents prepared by or on behalf of or utilized by Buyers or their Affiliates, or Buyers' financing sources, in connection with Buyers' financing activities in connection

with the transactions contemplated hereby which include any information provided by Sellers or any of their Affiliates; and (ii) Buyers' obligations to consummate and to cause to be consummated the transactions contemplated by this Agreement and the Transfer Agreements are not subject to any condition or contingency with respect to the financing.

6.17.2  Buyers will take, or cause to be taken, all actions and will do, or cause to be done, all things necessary, proper or advisable to: (i) maintain in effect the Commitment Letter; (ii) enter into definitive financing agreements with respect to the financing, so that such agreements are in effect as promptly as practicable but in any event no later than the Closing Date; and (iii) consummate the financing at or prior to Closing.  In the period between the date hereof and the Closing Date, upon request of Buyers' Representative, Sellers will, and will use commercially reasonable efforts to cause its Affiliates and representatives to, reasonably cooperate with Buyers in connection with the financing.  If, notwithstanding the use of commercially reasonable efforts by Buyers to satisfy their obligations under this Section 6.17.2, any of the financing or the Commitment Letter (or any definitive financing agreement entered with respect thereto) expire or are terminated prior to the Closing, in whole or in part, for any reason, Buyers' Representative will promptly notify Delphi of such expiration or termination and the reasons therefor.

6.18  **Agency Designation.**  Each of the Buyers designates and appoints as its agent and attorney-in-fact Inteva Products, LLC ("**Buyers' Representative**") with full power and authority to act in such Buyer's name, place and stead in any way which such Buyer could do with respect to matters requiring notice to, or consent by, such Buyer with respect to any and all matters set forth in this Agreement, including execution of any and all agreements, deeds, documents, instruments and other papers proper or desirable to effectuate the purposes of this Agreement.  Except as may be otherwise set forth in a local Transfer Agreement or agreed by the Parties, the power designated in the preceding sentence may not be terminated by any Buyer until the date that is eighteen (18) months after the Closing Date.

6.19  **Customs Duties.**  The Buyers expressly agree to reimburse Sellers for all customs-related duties, fees and associated costs incurred by Sellers on behalf of Buyers following the Closing, including all such duties, fees and costs incurred in connection with co-loaded containers that clear customs intentionally or unintentionally under Sellers' importer/exporter identification numbers and bonds/guarantees post-Closing.

6.20  **Intracompany Transfers.**  At Closing, Buyers will enter into purchase orders with Delphi, its applicable Affiliates and Sellers pursuant to which all current intracompany transfers to the Business from Delphi, its Affiliates and Sellers will continue at customer directed pricing if the relevant component being sold to the Business is a customer directed buy component, or at current transfer pricing included in Contracts set forth in Schedule 4.13.1.

6.21  **Environmental Due Diligence.**  With respect to this Agreement dated October 15, 2007 only, this Section 6.21 governs over any conflicting language in Section 10.4 of this Agreement, but only to the date of the Bid Deadlines.  Prior to the Closing, Buyer shall have the right to conduct, at its expense: (i) an environmental assessment of the Real Property in one or more phases, including the procurement and analysis of samples of soil, groundwater, indoor air or any other environmental medium, and any building component or other material located at, on, in or under the Real Property; and (ii) an assessment or evaluation of the compliance status of the Business and/or the Real Property in relation to applicable Environmental Law.  Seller shall provide access and information to, and otherwise cooperate

with, Buyer in any environmental assessment or environmental compliance assessment or audit conducted pursuant to this Section 6.21.  Without limiting the generality of the foregoing, Buyer shall have the right to review Seller's non attorney-client privileged records regarding, and to interview employees or representatives of Seller who may have knowledge of conditions and events relevant to, the operating history, compliance history and environmental condition of the Real Property.  In carrying out its environmental assessment activities pursuant to this Section 6.21, Buyer shall exercise reasonable efforts to avoid interference with Seller's operations at the Real Property.  If the Real Property is shown, through Buyer's environmental assessment activities or otherwise, to be a "facility" within the meaning of Part 201 of the Michigan Natural Resources and Environmental Protection Act, MCL 324.20101 et seq., Buyer may, at its expense, prepare and submit to the Michigan Department of Environmental Quality ("**MDEQ**") a "baseline environmental assessment", or "BEA", pursuant to MCL 324.20126.  Buyer may also, at its expense, prepare a plan to meet due care obligations at the Real Property imposed under MCL 324.20107a.  Buyer may, at its option and expense, request from MDEQ a determination of the adequacy of the BEA and due care plan pursuant to MCL 324.20129a.  Buyer shall provide Seller with copies of any and all site assessment reports, including any and all BEAs, and all data contained or referred to therein, generated pursuant to or in connection with Buyer's activities conducted pursuant to this Section.  Notwithstanding anything in this Section 6.21 to the contrary, Buyer shall not be permitted to exercise any of its rights in this section after the Bid Deadline.

       **6.22**    **Transfer of Environmental Permits**.  Seller shall provide such assistance and cooperation, and shall execute such documents, as reasonably requested by Buyer to facilitate the proper and timely transfer of all Environmental Permits to Buyer.  Without limiting the generality of the foregoing, Seller consents to Buyer's disclosure of the impending transfer of Environmental Permits to all appropriate Governmental Authorities.

       **6.23**    **Removal of Personal Property from Certain Locations**.    Schedule 7.1.5 contemplates Buyers' removal on the Closing Date of all Personal Property included in the Acquired Assets that is located at the Juarez, Mexico or Wuppertal, Germany Technical Centers and Sales Offices.  Subject to Section 3.4.2, Buyers will be solely responsible for all costs relating to disconnecting, dismantling, packaging, preparing for shipment, loading such Personal Property onto the truck(s) of a carrier selected by Buyer to transport such items on the Closing Date, freight charges and returning such Technical Centers and Sales Offices to a clean and safe condition (plating over or barricading all pits, trenches or other openings in the floor and removing all conduits, pipes and ducts, and removing machine wastes), all in a good and workman-like manner that does not interfere with or adversely effect Seller's operation on the site and in accordance with applicable Law.  In addition, Buyers' employees or agents must comply with Seller's rules, regulations and policies applicable to third party contractors on Seller's site.

       **6.24**    **Mexican Newco**.  No later than thirty (30) days prior to the Closing Date, Delphi shall transfer and assign or cause to be transferred and assigned to Buyer all of the issued and outstanding stock of **Closures Interiors, S. de R.L. de C.V.** ("**Mexican Newco**"), free and clear of all Encumbrances, other than Permitted Encumbrances, in exchange for a purchase price equal to the aggregate out-of-pocket costs incurred by Sellers in establishing Mexican Newco and obtaining necessary Permits, such purchase price not to exceed $25,000 USD unless agreed by Buyer (not to be unreasonably withheld).  The payment will be made in immediately available funds as of the date of transfer.  As of the date of such transfer, Mexican Newco shall: (i) be duly incorporated, validly existing and in good standing under the Laws of Mexico;, (ii) not own, lease or otherwise have the right to use any assets other than Permits necessary or

desirable for the conduct of the Business in Mexico and/or to acquire the Permits; and (iii) not have any other Liabilities or employees.

**6.25    Certain Confidentiality Agreements.**    Although not included in the Acquired Assets, Seller will: (i) provide to Buyer, at Buyer's sole cost and expense (including reimbursement of out-of-pocket costs incurred by Sellers in providing such benefits as well as internal costs but solely where such internal costs relate to enforcement of a Bidder Confidentiality Agreement), the benefits of certain clauses of the type indicated on Schedule 6.25.A and contained in confidentiality agreements entered into between Delphi and any Qualified Bidder or other Person that is a competitor of the Business in connection with a potential sale of the Business or any product line included in the Business as will be listed on Schedule 6.25.B at Closing (collectively, the "**Bidder Confidentiality Agreements**"), as such clauses may be modified in a particular Bidder Confidentiality Agreement, but only to the extent relating to the Business or Transferred Employees (the "**Partial Assignment Purpose**"); and (ii) cooperate in any reasonable and lawful arrangement designed to provide benefits to Buyer for the Partial Assignment Purpose, without any Seller incurring any financial obligation to Buyer or any third party of whatsoever kind or nature including enforcing for the account of Buyer and at the sole cost of Buyer any rights of Sellers arising from any Bidder Confidentiality Agreement with respect to the Partial Assignment Purpose, against the other party or parties thereto.    The relevant portions of the Bidder Confidentiality Agreements relating to the Partial Assignment Purpose shall be deemed to be partially assigned to Buyers to the extent necessary to effect the Partial Assignment Purpose as described in the preceding sentence.    Sellers will: (a) have no Liability to any Buyer arising out of this Section 6.25; and (b) will be reimbursed and held harmless by Buyers from and against all Liabilities, incurred or asserted as a result of Buyers' post-Closing enforcement of the Bidder Confidentiality Agreements in connection with the Partial Assignment Purpose, in the case of each of the foregoing clauses (a) and (b) other than as a result of Seller's: (1) failure to perform its obligations under this Section 6.25 or to follow Buyer's reasonable instructions in connection therewith; or (2) gross negligence or willful misconduct.

**6.26    JV Companies Post-Closing Payments.**    The relevant Buyers agree to use their reasonable best efforts as a partial equity owner to cause each of the JV Companies, as soon as practicable after Closing and in accordance with applicable Laws (including liquidity requirements), financing documents, third party consents (if any) and the relevant Articles of Association, to: (i) distribute the maximum amount of cash resulting from earnings in 2007 as are legally permitted to be distributed, including one hundred percent (100%) of all dividends that may have been declared but not paid on or before close of business on the Closing Date; and (ii) promptly remit one hundred percent (100%) of the relevant pro rata portion of such distributions to the US Filing Affiliates.    In the event that the relevant Buyer incurs any income, withholding or other Taxes, bank charges, currency conversion charges or other costs in connection with such distribution, Buyer will remit the amount of such distribution net of all such costs.

**6.27    Names Selected by Business for Post-Closing Usage.**    If Buyer is not the Successful Bidder, then Buyer will assign all rights to the name and mark "Inteva", which is the name and mark selected by the Business for post-Closing usage: (i) in the case of a termination as to which the Break-Up Fee is payable, for no additional consideration; and (ii) in the case of a termination in which Buyer is entitled to Expense Reimbursement, Buyer's reasonable, out-of-pocket costs directly and solely related to obtaining legal opinions as to the availability of such name and mark, establishing of the Buyer entity utilizing such name, recording the use of such

name with Governmental Authority, and applying for registration of trademark rights in such mark may be included in the determination of Expense Reimbursement.

**6.28    Troy Technical Center Landlord Estoppel and Nondisturbance.**  Seller shall use commercially reasonable efforts to obtain and deliver to Buyer prior to Closing, in form and substance reasonably satisfactory to Buyer, the written agreement of the landlord of the Troy Technical Center confirming the truth and accuracy of Delphi Automotive Systems LLC's representation and warranty set forth in the first sentence of Section 4.01.D of the Troy Technical Center Sublease, and an agreement of such landlord to honor such sublease and not disturb Buyer's use and enjoyment of the leased premises so long as Buyer timely complies with the terms and conditions of such sublease.

**6.29    Certain Acquired Assets Located in Mexico.**  The Acquired Assets that are located in Mexico and subject to a temporary importation customs regime shall be transferred by Sellers to Buyers in full compliance with any legal and/or administrative provision that may apply in order to, when applicable, preserve the relevant Acquired Assets' temporary importation customs status. Specifically, Sellers shall transfer temporary imported Acquired Assets through the so-called "virtual export pedimentos" and Buyers shall prepare and effectuate the so-called "virtual import pedimentos" as permitted under Mexican law and regulation. Buyers and Sellers shall exercise reasonable commercial efforts and shall cooperate to effectuate these "virtual export/import" transactions.

**7.    CONDITIONS TO CLOSING:**

**7.1    Conditions to Obligations of Seller and Buyer.**  The respective obligations of each Party to effect the transactions contemplated by this Agreement will be subject to the satisfaction or waiver by both Parties at or prior to the Closing Date of the following conditions precedent:

**7.1.1    Sale Approval Order and Bidding Procedures Order.** The Sale Approval Order and Bidding Procedures Order will be entered by the Bankruptcy Court and will not be subject to a stay or injunction.

**7.1.2    No Law, Judgments, etc.**  No provisions of any applicable Law or Governmental Order that restrains, prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement will be in effect (each Party taking any and all steps required by Sections 6.13 and 6.14 of this Agreement).

**7.1.3    Governmental Approvals.**  All required Governmental Approvals (including approvals under any Competition/Investment Law, as identified on Schedule 6.13.1) regarding the Sale will have been granted in writing by the appropriate Governmental Authorities or the waiting period with respect to any such filings will have expired or been terminated.

**7.1.4    Receipt of JV Partner Consent.**  Delphi's receipt of any necessary JV Partner Consent.

**7.1.5    Day 1 Readiness.**  The separation activities set forth in Schedule 7.1.5 will have been substantially completed.

**7.1.6** **Board Approval.**  The Board of Directors of Delphi Corporation must have approved the Sale on or before October 17, 2007.

**7.2** **Conditions to Obligations of Buyer.**  The obligation of Buyers to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Buyer):

**7.2.1** **Accuracy of Warranties.**  Except as otherwise permitted by this Agreement or a Transfer Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Sellers contained in Article 4 of this Agreement that are qualified by materiality, Material Adverse Effect or words of similar import will be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time), and the representations and warranties of Sellers contained in Article 4 of this Agreement that are not qualified by materiality, Material Adverse Effect or words of similar import will be true and correct in all material respects (except for representations and warranties that speak as of a specific date or time, which will be true and correct in all material respects only as of such date or time).

**7.2.2** **Performance of Covenants.**  Sellers will have performed and complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it at or prior to the Closing.

**7.2.3** **Delivery of Ancillary Agreements.**  Sellers will have delivered duly executed copies of each of the Ancillary Agreements.

**7.2.4** **Customer Contracts.**  All material Contracts with customers of the Business, including, without limitation, the Contracts set forth on Schedule 7.2.4 shall have been assigned to the Buyers or otherwise be consistent with the status set forth on Schedule 7.2.4.

**7.2.5** **Permit Transfers.**  All Permits, Environmental Permits and other authorizations necessary for the lawful conduct of the Business shall have been transferred or reissued, as applicable, to Buyer if legally required to enable Buyer to continue the permitted activity, unless the same may be transferred or reissued, as applicable, under applicable Law after the Closing.

**7.2.6** **No Material Adverse Effect.**  Since the date of this Agreement, no Material Adverse Effect shall have occurred and be continuing at Closing.

**7.2.7** **Insurance Certificates**.  Delphi shall have added the relevant Buyer(s) as additional insured(s) on the applicable current and historic general liability and excess liability policies and shall have delivered certificates to Buyer confirming the same.

**7.2.8** **General Motors Contract**.  Buyer shall have entered into a Supply Agreement with General Motors Corporation in form and substance as shall be reasonably satisfactory to Buyer, including prices no less favorable to Buyer in the aggregate than those previously negotiated by Seller's representatives with GM in connection with the transactions contemplated by this Agreement, as previously provided to Renco on or about October 12, 2007.

       **7.2.9    UAW Agreement.**  Agreement between Buyers' Representative and the UAW substantially in the form of <u>Schedule 7.2.9</u> shall have been signed with such changes as may be agreed between the UAW and Buyer.

       **7.2.10 IUE Agreement.**  Agreement between Buyer and the IUE substantially in the form of <u>Schedule 7.2.10</u>, as may be modified by the Buyer and the IUE, shall have been executed.

     **7.3**     **Conditions to Obligations of Sellers.**  Except as otherwise permitted by this Agreement or a Transfer Agreement, the obligation of Sellers to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Sellers):

       **7.3.1    Accuracy of Warranties.**  The representations and warranties of Buyer contained in Article 5 of this Agreement that are not qualified by materiality or words of similar import will be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time), and the representations and warranties of Buyer contained in Article 5 of this Agreement that are qualified by materiality or words of similar import shall be true and correct in all material respects as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct in all material respects only as of such date or time).

       **7.3.2    Performance of Covenants.**  Buyer and its Affiliates will have performed and complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it at or prior to the Closing.

       **7.3.3    Delivery of Ancillary Agreements.**  Buyers will have delivered duly executed copies of each of the Ancillary Agreements.

       **7.3.4    Seller U.S. Collective Bargaining Agreements.**  Consistent with Section 6.6.2, Buyer's assumption of all Collective Bargaining Agreements applicable to the Adrian, Michigan, Cottondale, Alabama and Gadsden, Alabama Manufacturing Facilities as may be modified prior to Closing by Buyer and the respective union(s).

**8.**    **CLOSING:**

     **8.1**     **Closing Time and Date.**  Subject to the terms and conditions of this Agreement, the closing (the "**Closing**") of the transactions contemplated by this Agreement will take place at the offices of Delphi at 10:00 a.m. on the second Business Day after the conditions set forth in Article 7 will have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree (the "**Closing Date**").  For tax and accounting purposes, the effective time of the transaction will be 11:59 p.m. Eastern time on the Closing Date.  The Closing of the Transfer Agreements will take place simultaneously with the Closing or on a later date if mutually agreed by the relevant Seller and relevant Buyer.

     **8.2**     **Ancillary Agreements.**  At or prior to the Closing, the Sellers will duly execute and deliver to the Buyers, and the Buyers will duly execute and deliver to Sellers, each of the

following agreements (each, an "**Ancillary Agreement**" and collectively, "**Ancillary Agreements**") to which they are to be a party:

**8.2.1**    A Patent Assignment substantially in the form of <u>Exhibit 8.2.1.A</u> and a Trademark Assignment substantially in the form of <u>Exhibit 8.2.1.B</u>, as well as any other instruments necessary to transfer the Purchased Intellectual Property.

**8.2.2**    The following Transfer Agreements (collectively, the "**Transfer Agreements**"):

    **A.**    Mexico Asset Sale Agreements, substantially in the forms set forth in <u>Exhibit 8.2.2.A.1</u> and <u>Exhibit 8.2.2.A.2</u>.

    **B.**    China Share Transfer Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.B</u>.

    **C.**    Korea Share Transfer Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.C</u>.

    **D.**    Austria Asset Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.D</u>.

    **E.**    Germany Asset Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.E</u>.

**8.2.3**    The Transition Services Agreement, substantially in the form set forth in <u>Exhibit 8.2.3</u>.

**8.2.4**    The Bills of Sale, substantially in the form set forth in <u>Exhibit 8.2.4</u> or mutually agreed invoices.

**8.2.5**    The Assignment and Assumption Agreements, substantially in the form set forth in <u>Exhibit 8.2.5</u>.

**8.2.6**    The Vandalia Manufacturing Services Agreement, substantially in the form set forth in <u>Exhibit 8.2.6</u>.

**8.2.7**    The Grosspetersdorf Manufacturing Services Agreement, substantially in the form set forth in <u>Exhibit 8.2.7</u>.

**8.2.8**    The Columbus Manufacturing Services Agreement, substantially in the form set forth in <u>Exhibit 8.2.8</u>.

**8.2.9**    The Adrian HVAC Excluded Product Manufacturing Services Agreement, substantially in the form set forth in <u>Exhibit 8.2.9</u>.

**8.2.10**    The Vandalia Lease, substantially in the form set forth in <u>Exhibit 8.2.10</u>.

**8.2.11**    The Troy Technical Center Sublease, substantially in the form set forth in <u>Exhibit 8.2.11</u>.

**8.2.12**  The Mexico Shared Substation Services Agreements, substantially in the form of Exhibit 8.2.12..

**8.2.13**  The Mexico Shared Wastewater Treatment Plant Services Agreement, substantially in the form of Exhibit 8.2.13.

**8.3**    **Seller's Deliveries at Closing.**  At or prior to the Closing, the appropriate Sellers will deliver or cause to be delivered to the relevant Buyer:

**8.3.1**    To the extent that equity interests of the JV Companies are represented by stock certificates, original certificates evidencing the Sale Securities (to the extent applicable in the respective jurisdiction), which certificates will be duly endorsed for transfer or accompanied by duly executed stock transfer powers or other appropriate instruments of assignment and transfer in favor of the relevant Buyer or its permitted assigns;

**8.3.2**    Quit claim deeds (or non U.S. equivalent) for the Owned Real Property, substantially in the form of Exhibit 8.3.2 or such other form of conveyance in substance equivalent to such form of deed;

**8.3.3**    Where required by applicable Law in the jurisdiction concerned, copies of the resolutions (or local equivalent) of the boards of directors of each Seller and, where required, the stockholders/owners of each Seller, authorizing and approving this Agreement, Ancillary Agreements and the transactions contemplated hereby and thereby;

**8.3.4**    Certified copies of all orders of the Bankruptcy Court pertaining to the transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order; and

**8.3.5**    An officer's certificate, dated as of the Closing Date, executed on behalf of Sellers, certifying that the conditions specified in Section 7.2 have been fulfilled.

**8.3.6**    Resignations of all Seller representatives who are directors (or equivalent) or officers of the JV Companies, except as otherwise requested by Buyers' Representative no less than ten (10) Business Days prior to the Closing Date.

**8.3.7**    Unconditional releases by each Seller in favor of each of the JV Companies with respect to any Liabilities of such JV Company to such Seller other than payments owed to any Seller for goods or services purchased in the Ordinary Course of Business.

**8.3.8**    All other documents and papers reasonably requested by Buyer to transfer title to the Acquired Assets or Sale Securities in accordance with this Agreement or to otherwise effect the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.4**    **Buyer's Deliveries at Closing.** At or prior to the Closing, Buyer will deliver or cause to be delivered to Delphi and each Seller designated by Delphi the following:

72

**8.4.1**    The balance of the Preliminary Purchase Price by wire transfer of immediately available funds to an account or accounts designated by Delphi not less than two (2) Business Days prior to the Closing;

**8.4.2**    Where required by applicable Law in the jurisdiction concerned, copies of the resolutions (or local equivalent) of the boards of directors of each Buyer and, where required, the stockholders/owners of each Buyer, authorizing and approving this Agreement, the Ancillary Agreements and the transactions contemplated hereby and thereby;

**8.4.3**    An officer's certificate, dated as of the Closing Date, executed on behalf of Buyers, certifying that the conditions specified in Section 7.3 have been fulfilled.

## 9.    <u>TERMINATION</u>:

**9.1**    <u>Termination.</u>    This Agreement may be terminated at any time prior to the Closing:

**9.1.1**    By the mutual written consent of Delphi and Buyers' Representative.

**9.1.2**    By either Delphi or Buyers' Representative:

**A.**    Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Closing will not have occurred within one hundred twenty (120) days after entry of the Sale Approval Order for any reason other than a failure of the conditions set forth in Sections 7.1.2 or 7.1.3.

**B.**    If Seller consummates an Alternative Transaction.

**C.**    Provided the terminating Party is not in material breach of its obligations under this Agreement, if any Governmental Authority of competent jurisdiction (other than the Bankruptcy Court) has issued a Governmental Order or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplated hereby and such Governmental Order or other action has become final and nonappealable.

**D.**    Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Bankruptcy Court has not entered the Sale Approval Order, on or before the date that is one hundred twenty (120) days after the date of this Agreement, or if such Sale Approval Order, as of the date that is one hundred twenty (120) days after the date of this Agreement, is subject to a stay or injunction on such date.

**E.**    If the Delphi Corporation Board Approval is not received by 11:59 p.m. EST on October 17, 2007.

**9.1.3**    By Buyers' Representative, upon written notice to Delphi and provided that Buyers are not then in material breach of any representation, warranty, covenant or other agreement contained in this Agreement, if Delphi has materially breached or failed to perform in any material respect any of its representations, warranties, covenants or other agreements contained in this Agreement, provided that such breach or failure to

perform: (y) is not cured within thirty (30) days after written notice thereof or, in the case where the date or period of time specified for performance has lapsed, promptly following written notice thereof from Buyers' Representative; or (z) is incapable of being cured by Delphi;

**9.1.4**    Provided none of the Buyers is in material breach of its obligations under this Agreement, at any time prior to Closing, if a Material Adverse Effect has occurred, Buyers' Representative may terminate within ten (10) Business Days after becoming aware of such event so long as such event is continuing at the time of any such termination and not reasonably capable of being cured within ninety (90) days after entry of the Sale Approval Order or the date of this Agreement, whichever is later.    For purposes of this Section 9.1.4, failure to obtain the necessary Union Consents or the necessary JV Partner Consents prior to Closing will be deemed to be a Material Adverse Effect.

**9.1.5**    By Delphi, upon written notice to Buyers' Representative and provided that Delphi is not then in material breach of any representation, warranty, covenant or other agreement contained in this Agreement, if any Buyer has breached or failed to perform in any material respect any of its obligations or covenants contained in this Agreement, and such breach or failure to perform: (i) is not cured within thirty (30) days after written notice thereof or, in the case where the date or period of time specified for performance has lapsed, promptly following written notice thereof from the non-breaching party; or (ii) is incapable of being cured by any Buyer.

**9.2**    **Break-Up Fee; Expense Reimbursement:**

**9.2.1**    Subject to the last two (2) sentences of Section 9.2.3, in the event that Delphi sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, of all or a material portion ("material portion" refers to the latches product line) of the Business  or the Acquired Assets in a transaction or a series of related transactions with one or more Parties other than any Buyer (such event being an "**Alternative Transaction**") within twelve (12) months after termination of this Agreement, either: (i) in accordance with the Bidding Procedures and this Agreement is terminated pursuant to Section 9.1.2.B; or (ii) as referred to in Section 9.2.1.B below; then in any such event, Sellers (on a pro rata basis, based on the allocation of the purchase price paid in the Alternative Transaction) will, upon the consummation of the Alternative Transaction(s), pay to Buyers' Representative an amount equal to the lesser of:

**A.**    Two Million Four Hundred Thousand Dollars ($2,400,000); or

**B.**    Three percent (3%) of the post-termination Alternative Transaction purchase price (the "**Post-Termination Alternative Transaction Purchase Price**").    The Post-Termination Alternative Transaction Purchase Price means the purchase price received upon consummation of a Sale with another purchaser within twelve (12) months following termination of this Agreement in any circumstance where Expense Reimbursement is payable to Buyer and the purchase price received upon consummation of such Alternative Transaction is equal to or greater than eighty percent (80%) of the Preliminary Purchase Price set forth in this Agreement (collectively with Section 9.2.1.A above, the "**Break-Up Fee**").    In any circumstance in which the Break-Up Fee is payable pursuant to

74

this Section 9.2.1.B, Buyer shall also be entitled to receive the Expense Reimbursement provided for in Section 9.2.2.

Notwithstanding the foregoing, Buyer shall not be entitled to the Break-Up Fee if: (i) Buyer is in material breach of this Agreement or the Bidding Procedures and has received written notice of such breach from Delphi; or (ii) this Agreement is terminable under Section 9.1.2.C.

**9.2.2**    Subject to Section 9.2.3, in the event this Agreement is terminated pursuant to Sections 9.1.2.A, 9.1.2.B, 9.1.2.D, 9.1.3 or 9.1.4, and provided that Buyers are not then in breach of this Agreement or the Bidding Procedures, and, in the case of Section 9.1.2.A, the failure or occurrence of the event giving rise to any such termination results solely from the status of Delphi or any action or conduct of Delphi and not from the status of Buyers or their Affiliates or any action or conduct or market position of Buyers or any of their Affiliates, then Sellers (on a pro rata basis, based on the allocation of the purchase price paid in the Alternative Transaction) will be obligated to pay Buyers' Representative an amount equal to Buyers' Representative's reasonable, actual out-of-pocket fees and expenses (including, without limitation, reasonable attorneys' fees, expenses of their financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement (the "**Expense Reimbursement**") up to a maximum of $250,000.    Any Expense Reimbursement payable upon termination of this Agreement will be immediately earned upon such termination and payable by Delphi to Buyers' Representative promptly upon the delivery of an invoice related to such Expense Reimbursement to Delphi by Buyers' Representative to be delivered to Delphi within ten (10) Business Days of termination of this Agreement; provided, however, that if Delphi believes, in good faith, that the amount of the Expense Reimbursement sought by Buyers' Representative is not reasonable, then Delphi will have the right to seek Bankruptcy Court review thereof prior to paying such amount.

**9.2.3**    Buyers acknowledge and agree that, except as otherwise expressly set forth in Section 9.2.1 of this Agreement, in the event that Buyers' Representative terminates this Agreement or Delphi terminates this Agreement and Buyers become entitled to receive or receive any Expense Reimbursement, Buyers will not be entitled to receive nor will they receive the Break-Up Fee or any portion thereof, and, conversely, in the event that Buyers become entitled to receive or receives any Break-Up Fee, none of them will be entitled to receive nor will they receive the Expense Reimbursement or any portion thereof.    If Buyers become entitled to receive any Break-Up Fee and/or Expense Reimbursement, then such Break-Up Fee and/or Expense Reimbursement will be the sole and exclusive remedy of Buyers, whether at law or in equity, for any breach by Delphi or any of its Affiliates of the terms and conditions of this Agreement or the Deposit Escrow Agreement.    Notwithstanding anything to the contrary in this Agreement, if the Closing does not occur for a reason referred to in Section 7.2.8 (GM Contract), Section 7.2.9 (UAW Agreement) or 7.2.10 (IUE Agreement), in no event will Buyers be entitled to any Break-Up Fee, recognizing that Expense Reimbursement may be payable to Buyers if Buyers are otherwise entitled to such reimbursement under the terms of this Agreement.

**9.2.4**    As between Sellers and Buyers, the Sellers shall be jointly and severally liable for the obligation to pay to Buyers' Representative any amounts payable thereto

pursuant to this Section 9.2.  As among Sellers, such amounts will be allocated in accordance with Section 11.5.4.B.

**9.3    Procedure and Effect of Termination.**  In the event of the termination of this Agreement and the abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof will forthwith be given to all other Parties.  If this Agreement is terminated and the transactions contemplated by this Agreement are abandoned as provided herein:

**9.3.1**  Buyers will redeliver to Sellers all documents, work papers and other material of any of Sellers relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof;

**9.3.2**  The provisions of the Confidentiality Agreement will continue in full force and effect; and

**9.3.3**  The following sections of this Agreement will survive any termination of this Agreement and remain in full force and effect: (i) Article 9 (Termination); and (ii) Sections 3.1 (Deposit Amount), 12.1 (Fees and Expenses), 12.5 (Assignment), 12.6 (Waiver), 12.7 (Notices), 12.8 (Entire Agreement), 12.10 (Publicity), 12.14 (Governing Law) and 12.15 (Venue and Retention of Jurisdiction).

**9.3.4**  No party to this Agreement will have any Liability under this Agreement to any other except: (i) that nothing herein will relieve any party from any Liability for any breach of any of the representations, warranties, covenants and agreements set forth in this Agreement occurring before such termination, and, except as provided by Section 9.2.3 above, no Party waives any Claim with respect thereto; and (ii) as contemplated by Section 9.3.3 above.

## 10.    BIDDING PROCEDURES:

**10.1    Delphi Initial Bankruptcy Actions.**    This Article 10 sets forth the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the Agreement and the Sale of the Purchased Assets.  The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order.  The following overbid provisions and related bid protections are designed to compensate Buyers for their efforts and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Purchased Assets for the benefit of Sellers' and their Affiliates' creditors, shareholders and bankruptcy estate.

**10.2    Qualified Bidder.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Sellers, in order to participate in the bidding process, each person (a "**Potential Bidder**"), other than Buyers, must deliver (unless previously delivered) to Delphi, its counsel, its in-house counsel, and its financial advisors at the addresses provided in Section 10.3:

**10.2.1** An executed Confidentiality Agreement in form and substance satisfactory to Delphi.

**10.2.2** Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets

and the Business, current audited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Delphi and its financial advisors; and

       **10.2.3**  A preliminary (non-binding) written proposal regarding: (i) the purchase price range; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale and perform post-Closing, if selected as a successful bidder, and that Delphi determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement will be deemed a "**Qualified Bidder**".  As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Delphi will determine, and will notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder.  At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi will allow the Qualified Bidder to begin to conduct due diligence with respect to the Purchased Assets and the Business as provided in Section 10.4 below.  Collectively, Buyers will be deemed a Qualified Bidder for purposes of the Bidding Process.

       **10.3**  **Bid Deadline.**  A Qualified Bidder that desires to make a bid will deliver written copies of its bid to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Director of Mergers & Acquisitions for Delphi Automotive Holdings Group, with copies to: (i) Delphi's counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Brian M. Fern; (ii) Delphi's in-house counsel, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Attn: Deputy General Counsel – Transactional & Restructuring; (iii) Delphi's financial advisor, Rothschild, Inc., 1251 Avenue of the Americas, New York, NY 10020, Attention: William Cannon; (iv) counsel to the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "**Committee**"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, in each case so as to be received not later than 11:00 A.M. (EST), on a date to be determined by Delphi that is at least five (5) Business Days before date of Sale Hearing (the "**Bid Deadline**").  Delphi may extend the Bid Deadline once or successively, but is not obligated to do so.  If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the Official Committee of Equity Security Holders (the "**Equityholders' Committee**").  The Sellers also will provide the UAW with notice of all Qualified Bidders and their contact information.  Qualified Bidders should note that certain benefit treatments of the Agreement are intended to effect

assumption of the UAW Collective Bargaining Agreement and, to the extent subject to assumption, these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

**10.4    Due Diligence.**  Delphi will afford each Qualified Bidder due diligence access to the Purchased Assets and the Business.  Due diligence access may include Management Presentations as may be scheduled by Delphi, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Delphi, in its sole discretion, may agree.  Delphi will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Subject to Section 6.21, any additional due diligence will not continue after the Bid Deadline.  Delphi may, in its discretion, coordinate due diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at Management Presentations or site inspections.  Neither Delphi nor any of its Affiliates (nor any of their respective representatives) will be obligated to furnish any information relating to Purchased Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

**10.5    Bid Requirements.**    All bids must include the following documents (the "**Required Bid Documents**"):

**10.5.1**  A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the Closing of the Sale of the Purchased Assets.

**10.5.2**  An executed copy of this Agreement, together with all Schedules and Exhibits (a "**Marked Agreement**"), marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the Purchase Price (as defined in this Agreement).

**10.5.3**  A good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as Delphi may determine) in an amount equal to two and six tenths percent (2.6%) of the Preliminary Purchase Price, but which shall in no event be less than the Deposit Amount.

**10.5.4**  Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Delphi and its advisors.

**10.6    Qualified Bids.**  A bid will be considered only if the bid:

**10.6.1**  Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**10.6.2**  Proposes a transaction on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that Delphi determines, in its sole discretion, are similar to, and are not materially more burdensome or conditional than the terms of the Agreement and that has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee, plus$1,000,000.

**10.6.3**  Is not conditioned upon: (i) any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment; or (ii) such bid being deemed the Successful Bid by the Sellers.

**10.6.4**  Includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**10.6.5**  Includes a commitment to consummate the purchase of the Purchased Assets (including the receipt of any required Governmental Approvals) immediately upon completion of all closing conditions within Sellers' reasonable control, which may as early as  fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, or in the case of any Governmental Approvals, sixty (60) days after entry of such order.

**10.6.6**  Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "**Qualified Bid**" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that Delphi will have the right, in its sole discretion, to entertain bids for the Purchased Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, Buyers collectively will be deemed Qualified Bidders, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of Buyers is referred to as a "**Subsequent Bid**".  If Delphi does not receive any Qualified Bids other than the Agreement received from Buyers, Delphi will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of this Agreement.

**10.7**  **Bid Protection.**    Recognizing Buyers' expenditure of time, energy and resources, Delphi has agreed to provide certain bidding protections to Buyers.  Specifically, Delphi has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor that all other Potential Bids must exceed.  As a result, Delphi has agreed that if Delphi does not close with Buyers because Delphi consummates an Alternative Transaction and Buyers are not in material breach of the Agreement or the Bidding Procedures, Delphi will pay to Buyers' Representative the Break-Up Fee to the extent required under Section 9.2.1 hereof. In the event the Agreement is terminated pursuant to Sections 9.1.2.A, 9.1.2.B., 9.1.2.D, 9.1.3 or  9.1.4 hereof, then in certain circumstances Delphi will be obligated to pay Buyers' Representative's Expense Reimbursement to the extent required under Section 9.2.2 hereof. The payment of the Break-Up Fee and/or the Expense Reimbursement (as applicable) will be governed by the provisions of the Agreement, including Section 9.2.3, and the order of the Bankruptcy Court approving the Bidding Procedures.

**10.8    Auction, Bidding Increments and Bids Remaining Open.**  If Delphi receives at least one (1) Qualified Bid in addition to the Agreement, Delphi will conduct an auction (the "**Auction**") of the Purchased Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. EST on or about December 6, 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285 or Four Times Square, New York, New York 10036 (at Delphi's election) or such later time or other place as Delphi will notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

**10.8.1** Only Delphi, Buyers' Representative, any representative of the Committee and the Equityholders' Committee, any representative of Delphi's secured lenders (and the legal and financial advisers to each of the foregoing), any representative of the UAW, and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only Buyers' Representative and the other Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

**10.8.2** At least two (2)  Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least one (1)[3] Business Day prior to the Auction, Delphi will provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction and the UAW.

**10.8.3** All bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

**10.8.4** Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

**10.8.5** Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $1,000,000 higher than the previous bid or bids. The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Buyers' Representative), Delphi may give effect to any Break-Up Fee that may be

---

[3]    Five (5) days is chilling.  Bid Deadline could be less than five (5) Business Days prior to auction. If that is the case, it makes no sense to have a bidder tell us if it is attending the auction before submitting a bid.

payable to Buyers' Representative under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

**10.8.6** At the conclusion of the Auction, or as soon thereafter as practicable, Sellers, in consultation with its financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "**Successful Bid(s)**" the bidder(s) making such bid, the "**Successful Bidder(s)**").

**10.9** <u>**Acceptance of Qualified Bids.**</u>  Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid, as determined by Delphi, upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "**Sale Hearing**").  If, after an Auction in which Buyers' Representative: (i) will have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it will, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee.  Delphi's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Delphi's acceptance of the bid.  Delphi will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**10.10** <u>**Sale Hearing.**</u>  The Sale Hearing will be held before the Honorable Judge Robert Drain on _____, 2007 at _____ (prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court Approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing.  If Delphi does not receive any Qualified Bids (other than the Qualified Bid of Buyers), Delphi will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to Buyers following entry of the Sale Order.  If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "**Alternate Bid(s)**" and such bidder(s), the "**Alternate Bidder(s)**").  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Delphi may, subject to satisfaction of all applicable conditions to closing, effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

**10.11** <u>**Return of Good Faith Deposit.**</u>  The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the Closing of the Sale (the "**Return Date**").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon Closing of the Sale to the Successful Bidder(s).  If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such

Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of Delphi.  On the Return Date, Delphi will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**10.12   Reservation of Rights.**  Delphi, after consultation with the agents for its secured lenders and the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than Buyers' initial bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of  the Sale; or (c) contrary to the best interests of Sellers, its estate and creditors as determined by Delphi in its sole discretion.

## 11.    LIABILITY, INDEMNIFICATION:

**11.1    LIMITATIONS OF LIABILITY.** EXCEPT AS OTHERWISE PROVIDED HEREIN, NEITHER DELPHI NOR ANY OF THE OTHER SELLERS UNDERTAKES ANY LIABILITY FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, INDIRECT OR PUNITIVE DAMAGES EXCEPT AS MAY BE ASSESSED AGAINST A BUYER INDEMNIFIED PARTY BY A COURT OF COMPETENT JURISDICTION; SUBJECT TO ANY PROVISION OF THIS AGREEMENT TO THE CONTRARY, DELPHI WILL NOT BE LIABLE FOR ANY, AND BUYERS ASSUME LIABILITY FOR ALL, PERSONAL INJURY AND PROPERTY DAMAGE RESULTING FROM BUYERS' INVESTIGATION AND EXAMINATION OF THE ACQUIRED ASSETS AND THE JV COMPANIES, THE HANDLING, TRANSPORTATION, POSSESSION, PROCESSING, FURTHER MANUFACTURE OR OTHER USE OR RESALE OF ANY OF THE ACQUIRED ASSETS AFTER THE CLOSING DATE, WHETHER SUCH ACQUIRED ASSETS ARE USED OR RESOLD ALONE OR IN COMBINATION WITH OTHER ASSETS OR MATERIALS; AND, SUBJECT TO THE RETAINED LIABILITIES, THE REPRESENTATIONS AND WARRANTIES OF THE SELLERS EXPRESSLY CONTAINED IN ARTICLE 4 AND THE INDEMNIFICATION PROVIDED IN THIS ARTICLE 11, BUYERS ACKNOWLEDGE THAT THE ACQUIRED ASSETS AND SALE SECURITIES ARE BEING SOLD IN THEIR PRESENT STATE AND CONDITION, "AS IS, WHERE IS," WITH ALL FAULTS, AND BUYERS' ARE PURCHASING AND ACQUIRING SUCH ACQUIRED ASSETS AND SALE SECURITIES ON THAT BASIS PURSUANT TO BUYERS' OWN INVESTIGATION AND EXAMINATION AFTER HAVING BEEN PROVIDED WITH AN ADEQUATE OPPORTUNITY AND ACCESS TO SUCH ACQUIRED ASSETS TO COMPLETE SUCH INVESTIGATION OR EXAMINATION.

**11.2    Survival.**  The representations and warranties of the Filing Affiliates set forth in Article 4 will not survive Closing.  The representations and warranties of all other Sellers set forth in Article 4 will survive for a period of eighteen (18) months after the Closing Date, except that the representations and warranties of such other Sellers set forth in Sections 4.3.5 through 4.3.13 will not survive Closing and provided that the representations and warranties of such other Sellers set forth in Section 4.14 (*Environmental Matters*) will survive for a period of five (5) years after the Closing Date.  The representations and warranties of the Buyers set forth in Article 5 will survive for a period of eighteen (18) months following the Closing Date.  The covenants and agreements of the parties in this Agreement will survive the Closing in accordance with their terms.

**11.3    Indemnification.**  Except as may be expressly set forth in this Agreement or in an Ancillary Agreement, no Seller or Buyer will be required to indemnify any other party to any of such agreements.

**11.3.1  Buyers' Indemnification of Delphi.**  Subject to the limitations set forth in this Article 11, from and after the Closing, Buyers will, severally and not jointly indemnify, defend and hold harmless Sellers and their Affiliates and their respective directors, officers, employees, advisors, representatives and agents from and against all Losses actually incurred by Sellers and their Affiliates and their respective directors, officers, employees, advisors, representatives and agents, including in connection with any actions, suits, demands, assessments, judgments and settlements, in any such case reduced by the amount of insurance proceeds actually recovered from any Person or entity with respect thereto ("**Indemnifiable Losses**") relating to, resulting from or arising out of (i) any Assumed Liability, (ii) the breach of any representation and warranty of Buyers contained in this Agreement, provided that Sellers shall have provided to Buyers written notice of a claim for indemnification with respect to a breach of a representation and warranty prior to the expiration of the survival period of such representation and warranty as provided in Section 11.2, or (iii) the breach of any covenant or agreement of any Buyer contained in this Agreement.

**11.3.2  Sellers' Indemnification of Buyers.**  Subject to the limitations set forth in this Article 11, from and after the Closing: (i) the Filing Affiliates will, jointly and severally with respect to Retained Liabilities, and any related covenants or agreements, of the U.S. operations of the Business; and (ii) each Seller of Acquired Assets will, solely with respect to the Acquired Assets sold by such Seller, the related Retained Liabilities and any related covenants or agreements contained in this Agreement, severally and not jointly, indemnify, defend and hold harmless Buyers and their Affiliates and their respective directors, officers, employees, partners, advisors, representatives and agents (collectively, the "**Buyer Indemnified Parties**") from and against all Indemnifiable Losses relating to, resulting from or arising out of: (i) any Retained Liability (including any Liabilities associated with Excluded Assets) other than Assumed Liabilities and Retained Liabilities referred to in Section 11.4 (*Environmental Matters*), for which Section 11.4 shall provide the exclusive basis for indemnification; (ii) the breach of any representation and warranty of Sellers contained in this Agreement, provided that the Filing Affiliates' obligation under this Section 11.3.2.(ii) shall expire at the Closing, and further provided that there shall be no indemnification with respect to the breach of any representation or warranty contained in Sections 4.3.5 through 4.3.13; or (iii) the breach of any covenant or agreement of the Sellers contained in this Agreement:

**A.**  Delphi's and each Seller's obligation to indemnify for Indemnifiable Losses shall apply only to those Claims which are notified to Delphi or such Seller on or before the date that is eighteen (18) months after the Closing Date with the exception of: (i) any claims for indemnification made pursuant to Section 4.14 or Section 11.4 (*Environmental Matters*), which shall be notified to Delphi or such Seller on or before the fifth (5th) anniversary of the Closing Date; and (ii) any claims for indemnification made with respect to the Retained Liabilities specified in Section 2.3.2, which shall be notified to Delphi or such Seller on or before ten (10) Business Days following the date that is thirty-six (36) months after the Closing Date.

**B.**  Neither Delphi or any Seller shall be liable for Indemnifiable Losses pursuant to this Section 11.3.2 until: (i) an individual claim or occurrence (together with any related claims or occurrences) is greater than Twenty Five Thousand Dollars ($25,000.00) ("**Individual Claim Amount**"); and (ii) the amount of all Indemnifiable Losses (which exceeds the Individual Claim Amount)

in the aggregate exceeds Four Hundred Thousand Dollars ($400,000.00) ("**Deductible Amount**"), after which point Delphi and/or the applicable Seller will be obligated to indemnify the Buyer Indemnified Parties from and against Indemnifiable Losses exceeding the Individual Claim Amounts that are in excess of the Deductible Amount until the aggregate amount of Indemnifiable Losses indemnified by Delphi and the combined Sellers reaches an amount equal to twenty percent (20%) of the Purchase Price, after which point Delphi and Sellers will have no further obligation with respect to Indemnifiable Losses under this Agreement; provided, however, that no individual Seller shall be obligated to indemnify the Buyer Indemnified Parties from and against Indemnifiable Losses in excess of one hundred percent (100%) of the Purchase Price for the Acquired Assets sold by such Seller.  The term "**Cap Amount**" refers to the maximum amount payable by Delphi, a Seller or all Sellers as the case may be.  Buyers agree that, subject to Section 6.4.5, from and after the Closing, the indemnification provided in this Section 11.3.2 is the exclusive remedy for a breach by Delphi or any Seller of any agreement or covenant contained in this Agreement that, by its terms, is intended to be performed by Seller after the Closing Date or against Delphi or such Seller for any applicable Retained Liabilities or Excluded Assets.

      **C.**    In calculating amounts payable hereunder, the amount of any Indemnifiable Losses shall be determined without duplication of any other Losses for which a Claim has been made by Buyers or could be made under any other representation, warranty, covenant or agreement included herein, i.e., an indemnified party may not recover more than once for a particular Indemnifiable Loss.

**11.4**    <u>**Environmental Matters**</u>:

**11.4.1**    <u>**Indemnification of Seller and Buyer**</u>:

      **A.**    Delphi and Sellers agree to indemnify, defend and hold harmless the Buyer Indemnified Parties from and against any Environmental Damages arising from or relating to: (i) the existence of Pre-Closing Environmental Contamination or a Release at any location of any Hazardous Materials that were generated or used prior to the Closing at the Real Property (including, without limitation, the migration or leaching of Hazardous Materials released at or from the Real Property prior to the Closing), or in connection with or as a result of the operation of any portion of the Business or the Manufacturing Facilities before the Closing; (ii) any failure to comply with any Environmental Law or any Environmental Permit related to the operation of the Business prior to the Closing; or (iii) any Pre-Closing Compliance Matter, including, without limitation, the liabilities referred to in <u>Schedule 4.14</u>.  Delphi's and Sellers' obligation to indemnify, defend and hold harmless includes, without limitation, any Environmental Damages: (a) relating to response actions required to comply with Environmental Laws; (b) asserted by any third party for personal injury, property damage or natural resources damages caused by any Hazardous Material; or (c) arising from: (1) the shipment prior to the Closing of any Hazardous Material from any of the Manufacturing Facilities; (2) the arrangement prior to the Closing Date for the treatment or off-site disposal of any Hazardous Material owned by or generated at the Manufacturing Facilities or by the Business; or (3) the shipment

or arrangement for treatment or disposal of any wastes generated or used in connection with the operation of the Business prior to the Closing.

**B.**      Prior to the Closing, Delphi, Sellers and Buyers' Representative shall jointly inventory and list the Pre-Closing Wastes present at the Manufacturing Facilities. The "**Pre-Closing Wastes**" shall include those hazardous and non-hazardous wastes generated in connection with the facility operations which have been containerized for and prior to disposal. To the extent that such Pre-Closing Waste has not been removed from the Manufacturing Facilities prior to Closing, Delphi and Sellers shall arrange for proper shipment, treatment and disposal of such Pre-Closing Wastes within ninety (90) days following the Closing Date (unless Sellers are precluded from such action by applicable Law, in which case Sellers shall arrange for proper shipment, treatment and disposal of such wastes as soon as practicable).  If Delphi and Sellers fail or are unable to take such action, Delphi and Sellers shall reimburse Buyers for any costs incurred by Buyers in arranging for the shipment, treatment and disposal of such Pre-Closing Wastes at a facility acceptable to Delphi and Sellers, and Delphi and Sellers shall indemnify Buyers pursuant to Section 11.4.1.A for any Claims relating to such Pre-Closing Wastes.

**C.**      Subject to the provisions of this Agreement, and solely with respect to the Manufacturing Facilities, Buyers shall indemnify Delphi and Sellers for Environmental Damages arising from and against any Environmental Damages arising from or relating to: (i) the existence of Post-Closing Environmental Contamination or a Release at any location of any Hazardous Materials that were generated or used subsequent to the Closing at the Real Property (including, without limitation, the migration or leaching of Hazardous Materials released at or from the Real Property subsequent to the Closing), or in connection with or as a result of the operation of any portion of the Business or the Manufacturing Facilities after the Closing; (ii) any failure to comply with any Environmental Law or any Environmental Permit related to the operation of the Business subsequent to the Closing; or (iii) any Post-Closing Compliance Matter. Buyers' obligation to indemnify, defend and hold harmless includes, without limitation, any Environmental Damages: (a) relating to response actions required to comply with Environmental Laws; (b) asserted by any third party for personal injury, property damage or natural resources damages caused by any Hazardous Material; or (c) arising from: (1) the shipment subsequent to the Closing of any Hazardous Material from any of the Manufacturing Facilities; (2) the arrangement subsequent to the Closing Date for the treatment or off-site disposal of any Hazardous Material owned by or generated at the Manufacturing Facilities or by the Business; or (3) the shipment or arrangement for treatment or disposal of any wastes generated or used in connection with the operation of the Business subsequent to the Closing.

**D.**      Subject to the provisions of this Agreement, including, without limitation, the next sentence, for those Environmental Damages arising from circumstances that may be considered both: (i) Pre-Closing Environmental Contamination and Post-Closing Environmental Contamination; or (ii) Pre-Closing Compliance Matters and Post-Closing Compliance Matters, such Environmental Damages shall be allocated between the Parties in proportion to the extent that such Environmental Damages are the result of Pre-Closing

85

Environmental Contamination or Post-Closing Environmental Contamination, or Pre-Closing Compliance Matters or Post-Closing Compliance Matters, and each Party shall indemnify the other for its share as determined by such allocation.

**11.4.2** **Limitations on Liability.** Claims relating to environmental matters are subject to the limitations of this Section 11.4.2 and to the Deductible Amounts and Cap Amounts of Sections 11.3.2. Neither Party shall be liable under this Agreement for Environmental Damages:

**A.** In the case of Environmental Claims arising from Pre-Closing Compliance Matters or Post-Closing Compliance Matters (as the case may be), unless written notice of such claim has been served on the non-claiming Party on or before five (5) years following the Closing Date.

**B.** In the case of Environmental Claims arising from a Pre-Closing Environmental Contamination or Post-Closing Environmental Contamination (as the case may be), unless written notice of such claim has been served on the non-claiming Party on or before five (5) years following the Closing Date.

**C.** Where such Environmental Damages are the result of the indemnified party using the Manufacturing Facility for a use other than or more sensitive than the industrial use in effect at the Closing, or as a result of changing the zoning or land use classification of the Manufacturing Facility to a classification more sensitive than the industrial classification in effect at Closing;

**D.** To the extent the claiming Party did not take reasonable steps to avoid or mitigate any Environmental Damages, acting in a reasonable and cost-effective manner; in the case of an emergency, where a Party takes any action to avoid or mitigate any Environmental Damages: (i) it shall for the avoidance of doubt not be in breach of this Agreement and shall not be precluded from recovering its Environmental Damages provided that the claiming Party notifies the other Party of such circumstances as soon as reasonably practicable and provided that such actions or steps are reasonably necessary to avert the emergency; and (ii) the reasonable costs and expenses of all steps taken pursuant to the duty to mitigate contained in this Section 11.4.2.D shall be deemed to be Environmental Damages.

**E.** Following the Closing and for a period of five (5) years thereafter, the Buyers shall not conduct any investigation of the environmental condition of the soil, groundwater, surface water or other environmental medium at any Manufacturing Facility without a specific legal obligation for doing so. Buyers shall not disclose the results of any prior investigations of the environmental condition of any Manufacturing Facility or any subsequent investigation of any Manufacturing Facility to any third party (other than to lenders providing financing to Buyers in connection with the transactions contemplated by this Agreement) unless:

(i) The disclosure is required by any law (including any Environmental Law);

86

(ii)     The Buyers are advised in writing by counsel that the disclosure is otherwise necessary or appropriate pursuant to any law (statutory or decisional), rule and/or regulation and such writing is provided to Seller at least ten (10) days prior to such disclosure, if practicable;

(iii)     The information is clearly in the public domain through no fault of the claiming Party; or

(iv)     Seller has given prior written approval to the disclosure.

provided, however, that if following Closing the Buyers, acting reasonably in the ordinary course of operations or other business activities (including expansion or transfer of a facility) discover or are made aware of substances not previously identified by Sellers' disclosures or through Buyer's due diligence activities prior to Closing, individually or in combination with other substances known to be present at the Manufacturing Facilities at the time of the Closing, that may be Hazardous Materials, the Buyers shall have the right to have samples taken and analyzed and, if the analyses show the presence of Hazardous Materials, the right to determine the extent of the contamination.

**11.4.3  Remediation of Environmental Damage:**

**A.**     Where an Environmental Damage arises out of Environmental Contamination, the non-claiming Party shall be responsible for Remedial Works or the redressing of a Compliance Matter ("**Remedy**") to no less but no more than the Remediation Standards allowed by applicable Environmental Laws; such Remedial Works may be determined, in compliance with applicable Environmental Laws, using risk assessment and related risk evaluation methods. Remedial Works shall be conducted using the most cost effective methods of investigation, corrective measures, remediation and/or containment (including the use of institutional controls or deed restrictions for use of the property for industrial purposes only), and in accordance with the requirements of subparagraph C below.

**B.**     The non-claiming Party shall, where a Remedy is required pursuant to this Agreement, have the right to conduct such Remedy.

**C.**     The conduct of a Remedy shall be as follows:

(i)     The non-claiming Party shall prepare appropriate work plans or scopes of work to satisfactorily undertake and complete the Remedy under this Agreement; such Party will provide the other Party with an opportunity to review and comment on such work plans or scopes of work. The non-claiming Party shall, in good faith, reasonably consider such comments, but is not required to adopt them;

(ii)     When requested, the claiming Party shall cooperate with the non-claiming Party in any communications with the appropriate Competent Authority;

(iii)     Where Delphi or any Seller is the non-claiming Party, Delphi and Sellers will take all reasonable steps to avoid interfering with Buyers'

operation or use of the Manufacturing Facility, and Buyers will reasonably cooperate with Seller including providing access to the Manufacturing Facility and the use of utilities (at Delphi and Sellers' expense) in the conduct of the Remedy;

(iv)    Where applicable the non-claiming Party shall provide copies of all relevant correspondence sent to and received from a Competent Authority, and keep the claiming Party reasonably apprised of the progress of the conduct of the Remedy; and

(v)    The conduct of the Remedy shall be deemed complete when:

(1)    The non-claiming Party has fully implemented the Remedy pursuant to and in accordance with a written plan of remedial or corrective action, approved in writing by an applicable Competent Authority, which plan contains or incorporates objective, Remediation Standards, and has demonstrated compliance with such Remediation Standards in accordance with such written plan and Environmental Law; or

(2)    Where approval or other oversight by a Competent Authority is not required by Environmental Law, and subject to Section 11.4.3.A of this Agreement, the non-claiming Party's implementation of the Remedy results in attainment of the objective, Remediation Standards which are allowed by applicable Environmental Laws.

**11.5    Indemnification Procedure.**    The obligations of any indemnifying party to indemnify any indemnified party under Sections 11.3.1 or 11.3.2 with respect to Indemnifiable Losses  resulting from the assertion of liability by third parties (including Governmental Entities) (an "**Indemnification Claim**"), shall be subject to the following terms and conditions:

**11.5.1**  Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of this Section 11.5.1), and the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party.  Failure to give prompt written notice of a Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this Article 11, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice. Any written notice delivered by the indemnified party to the indemnifying party seeking indemnification pursuant to this Agreement with respect to Indemnifiable Losses shall set forth, with as much specificity as is reasonably practicable, the basis of the claim for Indemnifiable Losses, the sections of this Agreement which form the basis for the claim, copies of all material written materials relating to such claim and, to the extent reasonably practicable, a reasonable estimate of the amount of the Losses that have been or may be sustained by the indemnified party.  The indemnified party shall, and shall cause its employees and representatives to, cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning

88

such Indemnification Claim. If the indemnifying party, within fifteen (15) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party, subject to the right of the indemnifying party to assume the defense of such Indemnification Claim at any time prior to settlement, compromise or final determination thereof upon written notice to the indemnified party.

11.5.2 Anything in this Section 11.5 to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne by the indemnifying party, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

11.5.3 **Indemnification Payments.**  All payments under this Article 11 shall be treated as adjustments to the Purchase Price.

11.5.4 **No Estimation:**

A.    Each of the Sellers acknowledges and agrees that any claim that may exist or hereafter arise in favor of Buyers under this Article 11 is a contingent, unliquidated administrative claim against Sellers (an "**Indemnification Claim**").  Each of the Sellers further agrees that: (i) it shall not seek, and hereby waives its right, to have any Indemnification Claim estimated under §502(c) of the Bankruptcy Code or otherwise for any purpose including, without limitation, for allowance, distribution, feasibility of any plan of reorganization or establishment of any reserves for, or on account of, any Indemnification Claim; (ii) any Indemnification Claim shall not be discharged or otherwise affected by the confirmation of any plan which may be confirmed in the Sellers' bankruptcy case; and (iii) Buyer shall be relieved from any obligation it has or may have to file a proof of claim to preserve Buyer's right to assert any Indemnification Claim.

B.    Without limiting Buyers' rights hereunder, allocation of any Indemnification Claim among the Sellers will be made in accordance with the Allocation; provided, however, if a Seller or Sellers are responsible for the act or event giving rise to the Indemnification Claim then such Seller or Sellers will be responsible for all of the Indemnification Claim in proportion to their responsibility. Nothing in this Section 11.5.4.B shall in any way limit, reduce or otherwise adversely affect Buyers' rights to indemnification under this Article 11.

11.6    **Mitigation.**    Notwithstanding any other provision of this Agreement, in no event shall a Party be entitled to indemnification pursuant to this Agreement to the extent any Losses were attributable to such Party's own gross negligence or willful misconduct.

89

**11.7    Dispute Resolution.**    Sellers, on the one hand, and Buyers, on the other hand, will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement by good faith negotiations by senior management of each party.  If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute.  Within fifteen (15) Business Days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response.  The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties.  Within fifteen (15) Business Days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute.  All reasonable requests for information made by one party to the other will be honored promptly.  All negotiations pursuant to this Section 11.7 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

## 12.    MISCELLANEOUS:

**12.1    Fees and Expenses.**  Except as set forth in Section 9.2.2 and except as otherwise provided in the Ancillary Agreements, Delphi, on behalf of Sellers, on the one hand, and Buyers, on the other hand, will each bear their own expenses and the expenses of their Affiliates in connection with the preparation and negotiation of this Agreement and the consummation of the transactions contemplated hereby, including their respective brokers' or funders' fees and all fees and expenses of their respective counsel, auditors, consultants and other representatives.  Buyers will be solely responsible for: (i) all expenses in connection with their due diligence review of the Business, including, without limitation, surveys, title work, title inspections, title searches, environmental testing or inspections, building inspections, UCC lien and other searches; and (ii) any cost in connection with notarization, registration or recording of this Agreement or an Ancillary Agreement required by applicable Law.

**12.2    Bulk Sales Laws.**  Buyers waive compliance by Delphi and Sellers with any applicable bulk sales Law.

**12.3    Payments in Dollars.**  Except as otherwise provided in this Agreement or an Ancillary Agreement, all payments pursuant hereto will be made by wire transfer in U.S. Dollars in same day or immediately available funds.

**12.4    Amendment.** This Agreement may not be amended, modified or supplemented except upon the execution and delivery of a written agreement executed by the duly authorized representative or officer of the Parties.

**12.5    Assignment.** This Agreement will be binding on and inure to the benefit of the successors and assigns of each Party, <u>provided</u>, that no assignment of any rights or obligations hereunder will be made by any Seller or Buyer without the written consent of the other Party, except the assignment of this Agreement by a Filing Affiliate to a succeeding entity following such Filing Affiliate's emergence from Chapter 11 (which assignment will not require the other Party's consent).  Notwithstanding the foregoing, Buyers may assign their rights and obligations under this Agreement to any lender providing financing in connection with the transactions

contemplated by this Agreement upon a material default by Buyers under such lender financing agreement; <u>provided</u> that such lender agrees to be bound by the terms of this Agreement; <u>provided</u>, <u>however</u>, that nothing in this Section 12.5 shall prevent Buyers from granting a security interest in this Agreement to any such lender.

**12.6   Waiver.**  Any waiver by Sellers or Buyers of any breach or of a failure to comply with any provision of this Agreement: (i) will be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) will not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement.  At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties; (b) waive any inaccuracies in the representations and warranties contained in this Agreement or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein.  Except as otherwise expressly provided in this Agreement, any agreement on the part of a Party to any such extension or waiver will be valid only if set forth in an instrument in writing signed on behalf of such Party.

**12.7   Notices.**  Unless additional means are expressly provided herein, any notice, request, consent or other communication required or permitted to be given under this Agreement will be in writing and will be deemed to have been sufficiently given or served for all purposes: (i) when personally delivered; (ii) on the first (1st) Business Day after sent by a nationally or internationally recognized overnight courier service with signature to the recipient at the address below indicated; (iii) on the third (3rd) Business Day after sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) when sent if sent by facsimile with confirmation of receipt:

<u>If to any Buyer</u>:   **INTEVA PRODUCTS, LLC**
1401 Crooks Road
Troy, Michigan 48098
Attn:  President
Fax:  248-655-8906

<u>With a copy to</u>:   **CADWALADER, WICKERSHAM & TAFT LLP**
One World Financial Center
New York, New York 10281
Attn:   Michael C. Ryan, Esq.
Fax:   212-504-6666

<u>And With a Copy to</u>: **THE RENCO GROUP, INC.**
30 Rockefeller Plaza
New York, NY  10112
Attn:   Roger Fay
Fax:   212-541-6197

<u>If to Delphi</u>:   **DELPHI CORPORATION**
5725 Delphi Drive
Troy, Michigan 48098
Attn:  Vice President and Treasurer
Fax No.:  248-813-2648

**With a copy to:**     **DELPHI CORPORATION**
                        5725 Delphi Drive
                        Troy, Michigan 48098
                        Attn:   Deputy General Counsel -
                                Transactional & Restructuring
                        Fax No.:  248-813-2491

provided, however, if either Party will have designated a different addressee by notice, then to the last addressee so designated.

**12.8    Entire Agreement.**  This Agreement, together with the Ancillary Agreements and the Confidentiality Agreement contain the entire agreement and understanding of the Parties with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof and thereof.

**12.9    Counterparts.**  This Agreement may be executed in two or more counterparts, each of which will be deemed an original, and all of which will constitute one and the same Agreement.  Facsimile signatures will be treated as originals.

**12.10   Publicity.**  Except as required by Law (and then only after prior consultation with the other Party) or in connection with the Bankruptcy Cases, neither Party (nor any of the other Buyers and Sellers) will issue any press release or make any public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party (not to be unreasonably withheld, delayed or conditioned).  Any press release will take into account the obligation to provide prior information to Seller's European works council and its works councils in Germany and Austria, as well as union representatives in the United States and Mexico, in accordance with applicable law and past practice of Seller.

**12.11   Headings.**  The headings contained in this Agreement are for convenience only, do not constitute a part of this Agreement and will not be deemed to limit or affect any of the provisions hereof.

**12.12   Severability.**  The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof.  If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable: (i) a suitable and equitable provision will be substituted therefore in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision; and (ii) the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected by such invalidity or unenforceability, nor will such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

**12.13   Third Parties.**  Nothing expressed or implied in this Agreement is intended or will be construed to confer upon or give to any Person, other than the Parties, their Affiliates and their respective permitted successors or assigns, any Claims, rights or remedies under or by reason of this Agreement.

**12.14  Governing Law.** This Agreement will in all respects be governed by and construed in accordance with the laws of the State of New York, and to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**12.15  Venue and Retention of Jurisdiction.**  The Parties irrevocably and unconditionally submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court).

**12.16  Risk of Loss.** Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business will be borne exclusively by Sellers.

**12.17  Enforcement of Agreement.**  The Parties agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties will be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**


By:_____/s/_____
Name:  **Fred J. Bellar III**
Title:    Executive Director of M&A, AHG


**INTEVA PRODUCTS, LLC**


By:_____/s/_____
Name:  **Roger Fay**
Title:    Vice President

The following U.S. Persons sign this Agreement with respect to the Acquired Assets or Sale Securities being bought or sold by such Person and their joint and several obligations only with respect to indemnification obligations relating to the portion of the Business transferred by any one of them under this Agreement.

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By:_____/s/_____
Name: **Fred J. Bellar III**
Title:   Vice President

**DELPHI AUTOMOTIVE SYSTEMS (HOLDINGS) INC.**

By:_____/s/_____
Name: **Fred J. Bellar III**
Title:   Executive Director of M&A, AHG

**DELPHI TECHNOLOGIES, INC.**

By:_____/s/_____
Name: **Fred J. Bellar III**
Title:   Executive Director of M&A, AHG

## **SCHEDULES**

| | |
|---|---|
| Schedule 1 | Detail of Sellers and Buyers |
| Schedule 1.1.A | Buyers Knowledge |
| Schedule 1.1.B | Sellers Knowledge |
| Schedule 2.1.2. | Acquired Assets of Technical Centers and Sales Offices |
| Schedule 2.1.3.A | Third Party Bailed Assets |
| Schedule 2.1.3.O(ii) | Asset Transfers Prohibited by Law |
| Schedule 2.1.3.O(iii) | Excluded Computer Hardware, Equipment, Software and Other Assets |
| Schedule 3.3.1 | Benchmark Inventory Amount |
| Schedule 3.3.3 | Principles Regarding Inventory Values |
| Schedule 3.4.3.C(i) | NRB Payment Formula Illustration |
| Schedule 3.4.3.C(iii) | Columbus Cash Contribution(s) |
| Schedule 3.5.1 | Allocation |
| Schedule 4.3.2 | JV Companies |
| Schedule 4.3.3 | JV Capital Stock |
| Schedule 4.3.5 | JV Financial Statements |
| Schedule 4.3.6 | JV Transfers Prohibited by Law/Government Approvals |
| Schedule 4.3.8 | JV Non-Compliance with Law/Permits |
| Schedule 4.3.9 | Proceedings Against JV Companies |
| Schedule 4.3.10 | JV Ordinary Course of Business |
| Schedule 4.3.11 | JV Owned or Licensed Intellectual Property |
| Schedule 4.3.12.1 | JV Material Contracts |
| Schedule 4.3.12.2 | JV Material Defaults |
| Schedule 4.3.13 | JV Environmental |
| Schedule 4.4.1 | Financial Statements |
| Schedule 4.4.2 | Exceptions to GAAP |
| Schedule 4.5 | No Conflicts or Approvals |
| Schedule 4.7 | Non-Compliance with Law |
| Schedule 4.8 | Proceedings against Sellers |
| Schedule 4.9 | Absence of Certain Changes |
| Schedule 4.11.1 | Transferred Employees |
| Schedule 4.11.2 | Employee Benefit Plans |
| Schedule 4.11.4 | Proceedings Relating to Seller Employee Benefit Plans |
| Schedule 4.11.5 | Collective Bargaining Agreements |
| Schedule 4.11.6 | Labor Relations |
| Schedule 4.12.1.A | Patents |
| Schedule 4.12.1.B | Trademarks |
| Schedule 4.12.3 | Allegations of Third Party of Intellectual Property |
| Schedule 4.12.4 | Infringement of the Purchased Intellectual Property |
| Schedule 4.13.1 | Material Contracts |
| Schedule 4.13.2 | Contract Issues Post-Petition Contracts |
| Schedule 4.13.3 | Significant Customers |
| Schedule 4.14 | Environmental Matters |
| Schedule 4.15 | Insurance |
| Schedule 4.16.1 | Defects in Title for Personal Property Assets |
| Schedule 4.16.3 | Other Inventory Locations |
| Schedule 4.16.4 | Machinery, Equipment and Capitalized Tools |
| Schedule 4.17.1 | Leased Real Property |
| Schedule 4.17.2 | Owned Real Property |
| Schedule 5.9 | Commitment Letter |

1

| | |
|---|---|
| Schedule 6.1.1 | Exceptions to Covenants Regarding Conduct of Business prior to the Closing |
| Schedule 6.25.A | Template of Confidential Agreement Clauses |
| Schedule 6.25.B | Strategic Bidders |
| Schedule 6.3 | Assumed U.S. Contracts |
| Schedule 6.6.1 | Employment Agreements to be Assumed by Buyer |
| Schedule 6.6.1.H | Leased Hourly Employees |
| Schedule 6.6.10 | Restricted Parties |
| Schedule 6.11.1 | Sub-Licensed Intellectual Property Contracts |
| Schedule 6.12 | Post-Closing Obligations |
| Schedule 6.13.1 | Competition Filings |
| Schedule 6.16 | Shared Items Transferred to Buyer |
| Schedule 7.1.5 | Day 1 Readiness |
| Schedule 7.2.4 | Material Contracts Assigned to Buyer |
| Schedule 7.2.9 | UAW Agreement |
| Schedule 7.2.10 | IUE Agreement |

## EXHIBITS

| | |
|---|---|
| Exhibit 8.2.1.A | Patent Assignment |
| Exhibit 8.2.1.B | Trademark Assignment |
| Exhibit 8.2.2.A.1 | Mexico Asset Sale Agreement |
| Exhibit 8.2.2.A.2 | Mexico Asset Sale Agreement – Mexican entity |
| Exhibit 8.2.2.B | China Share Transfer Agreement |
| Exhibit 8.2.2.C | Korea Share Transfer Agreement |
| Exhibit 8.2.2.D | Austria Asset Sale Agreement |
| Exhibit 8.2.2.E | Germany Asset Sale Agreement |
| Exhibit 8.2.3 | Transition Services Agreement |
| Exhibit 8.2.4 | Bills of Sale |
| Exhibit 8.2.5 | Assignment and Assumption Agreements |
| Exhibit 8.2.6 | Vandalia Manufacturing Services Agreement |
| Exhibit 8.2.7 | Grosspetersdorf Manufacturing Services Agreement |
| Exhibit 8.2.8 | Columbus Manufacturing Services Agreement |
| Exhibit 8.2.9 | Adrian HVAC Excluded Product Manufacturing Services Agreement |
| Exhibit 8.2.10 | Vandalia Lease |
| Exhibit 8.2.11 | Troy Technical Center Sublease |
| Exhibit 8.2.12 | Mexico Shared Substation Services Agreement |
| Exhibit 8.2.13 | Mexico Shared Wastewater Treatment Plant Services Agreement |
| Exhibit 8.3.2 | Deed for Owned Real Property |

## SCHEDULE 1

## DETAILS OF SELLERS AND BUYERS

| | ASSET/ STOCK | SELLER | BUYER |
|---|---|---|---|
| **MANUFACTURING FACILITY:**[4] | | | |
| Vandalia, Ohio **[DM, IP]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Columbus, Ohio **[DM, L]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Cottondale, Alabama **[C]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| N. Kansas City, Missouri **[C]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Orion, Michigan **[C]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Adrian, Michigan **[IP]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Gadsden, Alabama **[IP]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Grosspetersdorf, Austria **[DM]** | Asset | Delphi Packard Austria GmbH | Austrian or German Newco |
| Woerth, Germany **[DM]** | Asset | Delphi Deutschland, GmbH | KG Newco |
| CMMI Matamoros, Mexico **[L, IP]** | Asset | Delphi Automotive Systems LLC and Delphi Interior Systems de Mexico, S.A. de C.V. | Inteva Products, LLC and Closures Interiors, S. de R.L. de C.V. |
| Shanghai, China **[DM, L]** | Stock of Shanghai Delphi Automotive Door Systems, Co., Limited | 60% - Delphi Automotive Systems (China) Holding Company Limited | Inteva Products, LLC |
| Kyungsan, Korea **[L]** | Stock of KDS Company Ltd. | 50% - Delphi Automotive Systems (Holdings) Inc. | Inteva Products, LLC |
| | | | |
| **TECHNICAL CENTERS:** | | | |
| Troy, Michigan **[DM, L, C, IP]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| Wuppertal, Germany **[DM, C, IP]** | Asset | Delphi Deutschland, GmbH | GmbH Newco |
| Juarez, Mexico **[L]** | Asset | Delphi Automotive Systems S.A. de C.V. | Closures Interiors, S. de R.L. de C.V. |
| Vandalia, Ohio **[DM, IP]** | Asset | Delphi Automotive Systems LLC | Inteva Products, LLC |
| | | | |
| **TECHNOLOGY:** | | | |

---

[4]     DM = Door Modules; L = Latches; C = Cockpits; and IP = Instrument Panels.

| Troy, Michigan **[DM, L, C, IP]** | Asset | Delphi Technologies, Inc. | Inteva Products, LLC |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
| **WAREHOUSES:** |  |  |  |
| Ventana, Italy[5] **[KDS L]** | Asset | N/A |  |

---

[5]    Of several warehouses used by the Business, the Ventana, Italy warehouse is listed because it is legally required that KDS products be repackaged in this leased warehouse in order for Korean products to be sold in Italy.

**SCHEDULE 3.5.1**

**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price and Post-Closing Payments shall be allocated as follows

|  |  | **Purchase Price Allocation**<br>**$ USD MM** |
|---|---|---|
| 1. | All Acquired Assets of Filing Affiliates.<br><br>Note: Includes 100% of the $26 Million Post-Closing Payments under section 3.4.4 | 70.9 |
| 2. | Shares KDS Company Ltd. (Korea) Sale of Shares | 10.4 |
| 3. | Shares Shanghai - Delphi Automotive Door Systems Co. Ltd. (China) Sale of Shares | 13.3 |
| 4. | Delphi Interiors Systems de Mexico,  S.A. de C.V Sale of  Assets | 8.0 |
| 5. | Delphi Automotive Systems SA de CV. Sale of Assets | 0.5 |
| 6. | Delphi Automotive Systems Deutschland, GmbH Sale of Assets. | 2.2 |
| 7. | Delphi Packard Austria GmbH. Sale of  Assets | 0.7 |
|  | **Total** | 106.0 |

Imputed interest on Post-Closing Payments will be calculated pursuant to applicable Internal Revenue Code provisions.  The Parties agree to allocate the Purchase Price with respect to each asset as specified by the Buyer in its reasonable discretion consistent with and within the categories in the chart above.

6