# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

.......................................................................... x

**Scott Darryl Reese,**                                     :
**Claimant**                                                :
                                                            :
     **v.**                          :
                                                            :
**IN RE:**                                                  :        **Honorable Robert Drain**
                                                            :
**DELPHI CORPORATION, et. al.,**                            :        **Case No. 05-44481**
**DELPHI - DEBTOR IN POSSESSION**                           :
**DELPHI CHASSIS SYSTEMS**                                  :        **Bankruptcy Trustee**
       **Debtor,**          :
                                                            :        **(Jointly Administered)**
                                                            :
...................................................................X

COUNSEL FOR THE DEBTORS.

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

   -and-

Kayalyn A. Marafioti
Thomas J. Matz
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Delphi Legal Information Hotline: Toll Free: (800) 718-5305; International: (248) 813-2698

---

Scott Darryl Reese
c/o 329 Basket Branch
Oxford, Michigan state
[48371-6359]
Creditor - (248) 969-4055

_____/

# BRIEF IN SUPPORT

In this matter, Scott Darryl Reese moves before this court on his motion for reconsideration of the order of the court dated October 26, 2007. In his *Motion* he has brought to the attention of the court, by and through his motion for reconsideration, several errors of the court in the proceedings dated October 26, 2007.

To further his reliance defense of the errors that he has pointed out in his motion for reconsideration, and through this brief in support he now moves before this court, stating these errors of the court and rests his argument of these errors under *Federal Rules of Bankruptcy Procedure* and *Federal Rules of Civil Procedure*, and says as follows to the court and this honorable judge presiding over this motion for reconsideration.

Firstly, Claimant advised the court he did not receive the *Debtors' Objection to Scott Darryl Reese's Motion for leave to File Late Claim.* Pursuant to *F. R. of Bankruptcy Procedure Rule 3007 - - - Objections to Claims*: An objection to allowance of a claim shall be in writing and filed. A copy as the objections with notice of hearing thereon shall be mailed or otherwise delivered to the Claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind in **Rule 7001**, it becomes an Adversary Proceeding. See *F. R. of Civil Procedure Rule 52.* Also see *F. R. of Bankruptcy Procedure Rule 7012 - - - Defenses and Objections — When and How Presented — By Pleading or Motion — Motion for Judgment on the Pleadings*, in relationship to debtor's motion (*Objection to Scott Darryl Reese's Motion for Leave to File late Claim*) as a motion to dismiss.

**Argument:**  the Claimant alleges the court in error allowing Debtor's objections in violation of *F. R. of Bankruptcy Procedure Rule 3007 - - - Objections to Claims.*

Secondly, Claimant advised the court he did not receive a copy of the bar date by the Clerk of the court as a requirement pursuant to *F. R. of Bankruptcy Procedure Rule 3002 - - - Notice to Creditors.* Pursuant to *F. R. of Bankruptcy Procedure Rule 2002,* notice of bar date comes from clerk's office. Debtor *Delphi et. al.* failed to counter-claim Claimant's claim of no notice for the record or file as an exhibit of the debtor, such notice coming from the clerk of the court. See *Re Cortes 1991, ED Pa.) 125 BR 418.*

**Argument:**  Claimant alleges that the court is in error for granting such relief in violation of the *F. R. of Bankruptcy Procedure*, the *Federal Rules of Civil Procedure* and the Fifth

Amendment of the Constitution of the United States, a violation of Due Process and Equal Protection of the law in an Article III court of the United States. See ***Rule 7012 (b) – Applicability of Rule 12 (b)-(h) F.R.Civ.P.*** Rule 12 (b)-(h) F.R.Civ.P. applies in Adversary Proceedings. A responsive pleading as debtor's motion (*Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*) claims to be as a motion to dismiss, shall admit or deny an allegation that the proceeding is **core or non-core.**

The court is in error in granting debtor *Delphi et. al.* relief to dismiss Claimants's late filing (more properly a *Post Petition Claim*, as corrected by the court), Proof of Claim and discharge of lien on the property described in the lien. Claimant states the court is in error, said court drawing a presumptive conclusion by code in conflict with the positive law(s) of the Constitution of the United States and the *Statutes at Large* as the Supreme Law of the Land.

In orders dismissing complaint (Claimant's *Proof of Claim* that incorporated the ***Federal Rules of Civil Procedure, particularly Rule 9***), when the bankruptcy judge dismisses Claimant's cause of action without leave to amend, it is reviewed **de-novo** by the Bankruptcy Court as a ***Motion for Rehearing*** on the alleged error of the bankruptcy judge within the United States Bankruptcy Court, Southern District of New York, to correct the alleged errors. NO NOTICE WAS GIVEN to Claimant that the debtor's motion *(Objection to Scott Darryl Reese's Motion for Leave to File Late Claim)* would be treated as a motion to dismiss.

Claimant, Scott Darryl Reese, reserves the right for third party joinder. ***Pursuant to F. R. of Bankruptcy Procedure Rule 7019 - - - Joinder of Persons Needed for Just Determination*** and the ***Federal Rules of Civil Procedure Rule 19 - - - Joinder of Persons Needed for Just Adjudication*** in this Adversary Proceeding, Claimant, Scott Darryl Reese has the right to call and cross examine the I.R.S. agent responsible for filing the "Notice of Levy" (ostensibly, a "Denise Bradley," if the signature is any indication) that was introduced by the attorneys for debtor *Delphi et. al.* in the filing of debtor's motion (*Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*) as a motion to dismiss.

Claimant has the right to cross examination of the person(s) filing and associated with the "Notice of Levy" (again, probably a "Denise Bradley," if the signature is any indication) and "Notice of Lien" **(starting with the County Recorder for Oakland County, and inclusive of the payroll department worker(s) for debtor *Delphi et. al.* [Jeanine DeLuca?] transmitting fraudulent**

*Form W-3s* and *Form 1096*s to the Internal Revenue Service, and also inclusive of "Debra K. Hurst" ... "whose signature appears on the lien" ...; as well as the Secretary of the Treasury, Henry M. Paulson, Jr., and the IRS Commissioner Mark Everson, Kevin Brown (Acting Commissioner)) that is, and are, the instrument used by debtor *Delphi et. al.* to take Claimant's private property money due Claimant, and to inquire if the "Notice of Levy" and "Notice of Lien" is, and are, a valid claim against Citizen Scott Darryl Reese. See *F. R. of Bankruptcy Procedure Rule 7019.*

**Argument:** The attorneys for debtor *Delphi et. al.* are in error in filing debtor's motion (*Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*) as a motion to dismiss, and non-compliance with the Court Rules as cited. If the response is that the proceeding is *non-core,* it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In *non-core proceedings* final orders and judgments shall not be entered on the bankruptcy judge's order except with the expressed consent of the parties. Claimant, Scott Darryl Reese, did not consent to the bankruptcy judge's order. The order of the bankruptcy judge is contested by and through the *Motion for Rehearing De-Novo* proceeding under the expressed *F. R. of Bankruptcy Procedure*, the *Federal Rules of Civil Procedure* cited and *Pleading Special Matters.*

**Argument**: Claimant alleges the court is in error by granting relief to Debtor *Delphi et. al.* denying Claimant his *Motion for Late Filing* [properly a *Motion for Post Petition Claim*].

Thirdly, Claimant advised the court of extraordinary circumstances in filing his Proof of Claim and the associated motions filed with the court. The court was advised by and through the attached exhibits verification(s) of his private sector work schedule and the consideration of the traveling to and from work to his private domicile. See Affidavit with attached map.

**Argument**: Claimant alleges that the court is in error by granting relief to debtor *Delphi et. al.* denying Claimant his *Motion for Late Filing* (more properly a *Motion for Post Petition Claim*) of extraordinary circumstances that were, and are, beyond his reasonable control, such as working to provide a living for his family, or loss of his job at *Delphi* in the private sector as a private sector worker.

Fourthly, Claimant advised the court of his basis of claim by filing a Common-Law lien to protect his claim against *Delphi et. al.* for the unauthorized taking of his private property. A lien for a private debt is superior to a claim for taxes, its status is preserved by § 67d (as it was before 1910) if the lien was given or accepted in good faith and not in fraud of the act, and for a present consideration before the court is a valid lien, which claims priority under § 64a, Bankruptcy Act. Further, Claimant alleges that he was "stripped down" of his lien without a judicial determination, which cannot be classified as "not an allowed secured claim" for purposes of the lien-voiding provision of § 506(d). Additionally, the IRS "Notice of Lien" so heavily relied upon by the attorneys for debtor *Delphi et. al.* and this court in its opinion of October 26, 2007, is nothing more than an imperfected piece of paper, not worth the ink that it's printed on. These IRS "Notice of Lien(s)" are NOT perfected. They *are NOT* liens. They are "NOTICES OF". They are, at most, a bill stating, "We think you owe this." It would serve the attorneys for debtor *Delphi et. al.*, and the court, if they comprehended the distinction. It would also serve to comprehend what evidence Claimant has entered on record in this regard, in the manner of a *Freedom of Information Act* request as **"Exhibit H"** of the *Proof of Claim in Delphi Bankruptcy Proceedings - Reese* (referenced as "Proof of Claim", *supra* and *infra*), and the response to it by the Internal Revenue Service, as **"Exhibit P"** of the *Proof of Claim in Delphi Bankruptcy Proceedings - Reese* stating, contrary to the court's opinion of October 26, 2007, that "If you wish to have a copy of the original document filed, that copy can be obtained from the county clerk's office where the lien was filed." It should escape no one's attention that the IRS says that there exists a lien that was filed; however, only a "Notice of Lien" has been put on the record. It's not up to Claimant to prove a negative, or that which doesn't exist. It is up to the opposition to prove the positive, or that which does exist. The Internal Revenue Service has been very secretive and discreet about what they respond to, and there is a reason.

The guidelines for what constitutes an actual lien are very specific. Under the *Federal Tax Lien Registration Act*, the requirements for an actual lien:

A.  Positive identification of the lien claimant.

    (1)  Photo of IRS Lien Claimant on file with the county.

    (2)  Fingerprint of IRS Lien Claimant on file with the county.

    (3)  Written Proof of Delegation of Authority to Lien Claimant from

Secretary of the Treasury of the United States.

(4) Proof of Certification as required by MCL. Proper Certification consists of an *Affidavit of Obligation* hand-signed by IRS Lien Claimant in front of the county notary, and under penalty of perjury, as true, correct, and complete, the same IRS requirement as on *Form 1040* form.

(5) Full disclosure as required by the *Uniform Commercial Code* (UCC).

(6) Any Lien, if lawfully constructed, must contain a sworn affidavit assessment as part of the full disclosure requirement.

Any competent person will notice the requirement of point (6) directly above, with the requirement of "a sworn affidavit assessment as part of the full disclosure requirement." Claimant requested, via a *Freedom of Information Act* request as **"Exhibit G"** of the *Proof of Claim in Delphi Bankruptcy Proceedings - Reese*, for exactly this. The response to it by the Internal Revenue Service, as **"Exhibit O"** of the *Proof of Claim in Delphi Bankruptcy Proceedings - Reese*, was: "There are no SRAs [*Summary Record of Assessment] on file which identify you or any other taxpayer by name."

- The IRS is trying to be circumspect in its response in several respects, while still admitting it has no assessment. It even sent an unrequested IMF file, which amounts to nothing more than computer printouts. "It is well established that a lien is lost if the steps required to perfect it are not taken in the same manner and within the time prescribed by law." *Strickland v. General Building and Masonry Contractors, Inc.*, 22 N.C. App. 729, 207 S.E.2d 399 (1974).

The document from the Internal Revenue Service is a "Notice of Lien" and not an actual Lien, that when introduced by the attorneys for debtor *Delphi et. al.* into the record of the court may be in violation of *11 U.S.C. § 506(d)* as an unsecured Lien. What seems to be happening is the *Notice of Federal Tax Lien* is taken to the County Recorder, the recorder stamps it, and puts it into a *Lien Index* – thereby committing **Securities Fraud**. King County (Seattle, Washington) and San Bernardino County (largest county in California, with 31 towns and settlements), as well as other counties, have both corrected their errors of filing "Notices of Liens" as actual "Liens" .... "Federal Tax Lien" to "Federal Tax Lien, Notice Of". Every county in the fifty united States is also under direction to correct its system of filing, either voluntarily or through lawsuits. County Recorders stamping a "Notice Of Federal Tax Lien" as a "negotiable instrument" and a "security" are committing a *Seals violation* – Any stamped document that does not provide Due Process is a *Seals*

*violation*. See ***Chapter 47, Fraud and False Statements, Title 18 §1017 – Government seals
wrongfully used and instruments wrongfully sealed***.

While the circumstances creating the "Notice of Lien" have been alluded to, the conditions
and context of how and why it was able to be created are now indicated. Claimant requested, via a
*Freedom of Information Act* request as **"Exhibit I"** of the *Proof of Claim in Delphi Bankruptcy
Proceedings - Reese*, copies of *Form W-3*, with a sworn statement as to their accuracy of 3401(a) and
3121(a) "wages", and copies of *Form 1096*, with a sworn statement as to their accuracy of
involvement in a "trade or business", as reproduced below.

**(4)** Send me true, certified, and complete copy(s) of all Information Returns, in conjunction with
(1)(a) through (1)(o), specifically *Form W-3*, with a sworn statement as to their accuracy of 3401(a)
and 3121(a) "wages", signed or otherwise, which, if applicable, state that I'm an employee, earning
wages while working for an employer.

**(5)** Send me true, certified, and complete copy(s) of all Information Returns, in conjunction with
(1)(a) through (1)(o), specifically *Form 1096*, with a sworn statement as to their accuracy of
involvement in a "trade or business", signed or otherwise, which, if applicable, state that I'm an
employee, earning wages while working for an employer.

Claimant also requested copies of these from *Delphi et. al.* at various times. See *Notice to
General Motors/Delphi Automotive Payroll Services* (**Exhibit 1A**, page 3); *Delphi - Letter to
General Motors-Delphi Automotive Payroll Services 04-02-07* (**Exhibit W**, actually dated April 3,
2007, but saved in my files as "04-02-07"), *Delphi - Letter to Delphi Corporation Tax Staff 04-30-07*
(**Exhibit Z**, more correctly, ***Notice to Delphi Corporation Tax Staff 05-09-07***, page 2, points five
(5) through ten (10), for the present immediate relevancy); and *Delphi - Letter to General
Motors-Delphi Automotive Payroll Services 08-21-07* (**Exhibit AA**). All Exhibits are those that
were filed with the original Proof of Claim.

Claimant pled **Special Matters** to conform to ***F. R. of Bankruptcy Procedure Rule 7009*** in
the term "defalcation" under ***11 U.S.C.S. § 523 (a)(4)*** without citing Bankruptcy Rule, however;
Claimant did plead **Special Matters** under the ***F.R. Civ. Procedure Rule 9***.

Claimant alleged that the debtor did a fraud in the taking of money under the I.R.S. "Notice
of Levy", which is not a Levy without a judicial order.

*Motion for Rehearing De-novo in Delphi Bankruptcy Proceedings - Reese*          Page 6 of 19

However, Claimant, without citing *11 U.S.C.S. § 523 (a)(4)*, did comply by *pleading special matters with particularity* in order to survive motion to dismiss, where, as in this matter, the court treated the debtor's motion (*Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*) as a motion to dismiss. See *Re Baker* (1986, BC DC Nev.) 66 BR 652. Also see *Re Hallmark Builders, Inc.*, (1986, BC MD Fla.) 67 BR 63. **F. R. of Civil Procedure Rule 9 (g)** make applicable by **Bankruptcy Rule 7009** an action for breach of contract.

**Argument**: Claimant alleges that the court is in error granting relief to debtor *Delphi et. al.*, which denied justice to the Claimant by deeming the *Claim of Lien* void.

Fifthly, Claimant alleges that he was stripped of his equitable relief without due-process and equal protection of the law. The determination of the court was by code. The court relied on an erroneous reading of Title 26 of the Internal Revenue Code, protecting the debtor under the Bankruptcy Code without a judicial determination of the positive *Statutes at Large*.

Therefore, Claimant moves this court for reconsideration, and rehearing De-Novo of the relief granted to Debtor Delphi. ----------

Claimant advised the court he did not receive the *Debtors' Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*. **Pursuant to F. R. of Bankruptcy Procedure Rule 3007 - - - Objections to Claims**: An objection to allowance of a claim shall be in writing and filed. A copy of the objections with notice of hearing thereon shall be mailed or otherwise delivered to the Claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind in Rule 7001, it becomes an *Adversary Proceeding*. See **F. R. of Civil Procedure Rule 52**. Intervention is permitted under **F. R. of Civ. Procedure Rule 24**.

Notwithstanding Claimant's failure to file for third party in his *Proof of Claim* and *Motion for Leave to File Late Claim*, Claimant was not properly advised the debtor *Delphi et. al.* would rely on the Internal Revenue Code as a reliance defense in their motion (*Debtors' Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*) as a motion to dismiss. The bankruptcy court has power pursuant to former **Bankruptcy Rule 719 (a)** to order the appropriate person(s) be made a party to this cause of action before this United States Bankruptcy Court, Southern District of New York. Also see *11 U.S.C.S. § 546 (c)* to lift stay under *11 U.S.C.S. § 362* as a necessary party *John Doe-Jane Doe unknown*.

This action by debtor *Delphi et. al.* is not a voluntary surrender of private property, money due Claimant, Scott Darryl Reese, which involved his property rights under the laws and the Constitution of the United States, and the property should be considered a secured interest and makes just adjudication fall within the meaning of *F. R. of Bankruptcy Procedure Rule 7019*. See. *Re Central States Press* (1985, BC WD Mo.) 57 BR 418. See *Bankruptcy Rule 7020 - - - Permissive Joinder of Parties*, and the admissible evidence by the attorneys for debtor *Delphi et. al.*, Claimant's accretions are made within 60 day limit for joinder of parties. See Exhibits A, B, and C of *Debtors' Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*. The above is pursuant to *F. R. of Bankruptcy Procedure Rule 7028, F. R. Civ. Procedure Rule 28*, which applies in Adversary Proceedings to Persons Before Whom Depositions May Be Taken, and is joined with *F. R. of Bankruptcy Procedure Rule 7027 - - - 7027 Depositions Before Adversary Proceeding or Pending*, with *Rule 27 F.R. Civ. P*.

The court in *City of Richmond v. Bird,* 249 U.S. 174 (1919), held:"Section 64a of the Bankruptcy Act, in directing payment of taxes before dividends to creditors, means general creditor; when by the local law a lien for a private debt is superior to a claim for taxes, its status is preserved by § 67d (as it was before 1910) if the lien was given or accepted in good faith and not in fraud of the act, for a present consideration." Id.

240 F. 45 affirmed.

"November 4, 1909, the Chancery Court at Richmond, upon petition filed the preceding day, appointed a receiver for the Ainslie Carriage Company; February 3, 1910, the company was adjudged bankrupt in involuntary proceedings instituted November 6, 1909.  At time of receiver's appointment, taxes assessed upon the bankrupt's personal property for the years 1907, 1908, and 1909 were due the City of Richmond for which it had not distrained, although having authority so to do. Respondents, landlords of the bankrupt, under express statutory authority, levied a distress warrant November 1, 1909, upon its goods and chattels on account of rent due for the period since April 1, 1908. The question is whether their claim is entitled to priority of payment over the taxes. The circuit court of appeals answered in the affirmative. 240 F. 545."

"The city, while not disputing that levy of the distress warrant gave respondents a valid lien, claims priority under § 64a, Bankruptcy Act."

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United

States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court."

**Argument:** This, *supra*, presents Federal question jurisdiction before the Article III United States Bankruptcy Court, Southern District of New York.

**Argument:** The Claim of Lien filed by Scott Darryl Reese was filed under the laws of the state of Michigan and recorded under the laws of the state of Michigan. All parties were served a true copy of the lien as notice of filing of the claim of lien in good faith, with evidence to support Mr. Reese's Claim of Lien.

"It is not denied that respondents obtained a present valid lien upon the bankrupt's goods and chattels distrained November 1, 1909, nor is it now claimed this was annulled by adjudication of bankruptcy. That the **[249 U.S. 176]** City of Richmond had no lien for past-due taxes upon these goods and chattels when the chancery court receiver took possession, we think must be regarded as settled by *Jackson Coal Co. v. Phillips Line*, 114 Va. 40 (1912), and this notwithstanding differences between its charter, and that of Petersburg. The Supreme Court of Virginia there said (pp. 49-50):

**Argument:** The "Notice of Levy" by the Internal Revenue Service is without judicial determination of judgment, that Scott Darryl Reese owes the alleged taxes as alleged in the "Notice of Levy." A "Notice of Levy" is not a Levy and should not be treated as a Levy.

Re: "*New Jersey v. Anderson*, 203 U.S. 483, is not decisive of any point here contested; it only adjudged that New Jersey's claim was for a tax within the meaning of **§ 64a,** and entitled to be treated accordingly." See *New Jersey v. Lovell*, 179 F. 321. See *Dewsnup v. Timm*, 502 U.S. 410 (1992), *United States v. Speers*, 382 U.S. 266 (1965), *Simonson v. Granquist*, 369 U.S. 38 (1962), *Goggin v. California Labor Div.*, 336 U.S. 118 (1949), *Lewis v. Fidelity & Deposit Co.*, 292 U.S. 559 (1934), *Oliver v. United States*, 268 U.S. 1 (1925), *Taubel-Scott-Kitzmiller Co., Inc. v. Fox*, 264 U.S. 426 (1924), *Marshall v. New York*, 254 U.S. 380 (1920).

See **Section 506 provides in full:**

(a) "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount

subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined [in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." See *Dewsnup v. Timm*, 502 U.S. 410 (1992). See - - - **Section 67(d) of the 1898 Act, 30 Stat. 544, 564**, made this explicit:

> "Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this Act." at **Dewsnup v. Timm**.

> See - - - **Section 67(d)** . . . declares that liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, shall not be affected by it. *City of Richmond v. Bird*, 249 U.S. 174, 177 (1919).

"This precise statutory language did not appear in a reorganization of the section in the **Chandler Act of 1938, 52 Stat. 840**. A respected bankruptcy authority convincingly explained that this was done not to remove the rule of validity, but because "the draftsmen of the 1938 Act desired generally to specify only what should be invalid." **4B Collier on Bankruptcy ¶ 70.70, p. 771 (14th ed.1979) (emphasis in original)**. The alteration had no substantive effect. *Oppenheimer v. Oldham*, 178 F.2d 386, 389 (CA2 1949)." regarding **Dewsnup v. Timm**.

**Argument:**  This brings into question whether the "Notice of Levy" by the Internal Revenue Service, Department of Treasury, was in good faith and also whether debtor *Delphi et. al.* acted in good faith and that the "Notice of Lien" was filed in good faith, under the laws of the state of Michigan and the law of the United States. See **11 U.S.C. § 1129(a)(7)(B)**. In other words, the present value of such payments [**to the § 1111(b)(2) elector**] need only equal the value of the secured creditor's interest in its collateral. ***Collier on Bankruptcy ¶ 1111.02, pp. 1111-25 - 1111-26, n. 23 (15th ed.1990)***.

The court held in *Re Nutri\* Bevco, Inc.*, 117 BR 771 (1990, BC SD NY): Claimants received notice of claims of bar date sufficient to satisfy Fifth Amendment due-process. See ***F. R. of Bankruptcy Procedure Rule 3003***.

**Argument:**  Further the I.R.S. claim was not filed in the Bankruptcy Court within the bar

date as required by *F. R. of Bankruptcy Procedure Rule 3003 (c)(2)* to have standing in court as a governmental unit.

Claimant alleges *abuse of discretion standard* governs review of Bankruptcy Court's refusal to allow Creditor, Scott Darryl Reese, to file late Proof of Claim under *Bankruptcy Rules 3003 (c)(3) and 9006 (b)(1)*. See *Re Vertientes, Ltd.*, 845 F2d 57, 17 BCD 1038, CCH Bankr L. Rptr 72283, (1988, CA3 NJ.). Also see *Re Standards Metals Corp.* (1985, DC Colo) 48 BR 778, CCH Bankr. L. Rptr. When Claimant alleges that his Constitutional Rights have been violated as Citizen Scott Darryl Reese has alleged, grounds for challenging the judge's order are created, when judge's order violates *F. R. of Bankruptcy Procedure*.

Further, debtor *Delphi et. al.* did not allege prejudice as a defense of pleading of unreasonable delay if the court was to grant Claimant's late filing of his *Proof of Claim*, and *Motion for Late Filing* (more properly a *Motion for Post Petition Claim*). See *Re. Jartan, Inc., (1987, BC ND ILL.) 76 BR 123*, late proceedings.

**Argument:** Claimant has met the Burden of Proof in Objecting to Discharge, **F. R. of Bankruptcy Procedure Rule 4005**, with the Claimant showing a prima facie case, both at law and equity of going forward with the evidence that remains undisputed, and shifts to debtor to explain, and rebut. The debtor may have violated the spirit of bankruptcy laws and should therefore be denied privilege of eliminating legal obligations of Claimant's Proof of Claim and claim of actual personal injury, with the taking of private property as alleged in Claimant's Proof of Claim and objections that the I.R.S. "Notice of Lien" is not a lien, and also may be in violation of the Bankruptcy Rules. See *Re Cohen* (1985, BC SD Fla.) 47 BR 871, 12 BCD 1210.

Further, Scott Darryl Reese, in reviewing Delphi's case, cited *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot.*, 474 U.S. 494 (1986), reviewing *United States v. Ron Pair Enterprises*, 489 U.S. 235 (1989). This is a Michigan tax case and tax liens.

The court points out several issues first — "After respondent filed a petition under Chapter 11 of the Bankruptcy Code of 1978 (Code), the Government filed proof of a prepetition claim for unpaid withholding and social security taxes, penalties, and prepetition interest. The claim was perfected through a tax lien on property owned by respondent. Respondent's ensuing reorganization plan provided for full payment of the claim, but did not provide for post-petition interest. The Government objected, contending that § 506(b) of the Code -- which allows the holder of an

oversecured claim to recover, in addition to the prepetition amount of the claim, "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose" -- allowed recovery of post-petition interest, since the property securing its claim had a value greater than the amount of the principal debt. The Bankruptcy Court overruled this objection, but the District Court reversed. The Court of Appeals reversed the District Court, holding that § 506(b) codified the pre-Code standard that allowed post-petition interest on an oversecured claim only where the lien on the claim was consensual in nature."

Held: "Section 506(b) entitles a creditor to receive post-petition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding." Pp. 238-249.

"(a) The natural reading of the phrase in § 506(b) that there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose entitles the holder of an oversecured claim to post-petition interest and, in addition, the holder of a secured claim pursuant to an agreement the right to the specified fees, costs, and charges. Recovery of post-petition interest is unqualified, whereas recovery of those fees, costs, and charges is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, post-petition interest is the only added recovery available. This reading of **§ 506(b)** is also mandated by its grammatical structure. Since the phrase "interest on such claim" is set aside by commas, and separated from the reference to fees, costs, and charges by the conjunctive words "and any," that phrase stands independent of the language that follows." Pp. 241-242. [**489 U.S. 236**]

(c) "There is no significant reason why Congress would have intended, or any policy reason would compel, that consensual and nonconsensual liens be treated differently in allowing post-petition interest. Section 506(b)'s language clearly directs that post-petition interest be paid on all oversecured claims. *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, and *Kelly v. Robinson*, 479 U.S. 36, distinguished." Pp. 243-246.

"Respondent *Ron Pair Enterprises, Inc.*, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on May 1, 1984, in the United States Bankruptcy Court for the Eastern District of Michigan. The Government filed timely proof of a prepetition claim of $52,277.93, comprised of assessments for unpaid withholding and Social Security taxes, penalties, and prepetition interest."

"Section 506, enacted as part of the extensive 1978 revision of the bankruptcy laws, governs the definition and treatment [**489 U.S. 239**] of secured claims, i.e., claims by creditors against the estate that are secured by a lien on property in which the estate has an interest. Subsection (a) of § 606 provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured. Subsection (b) is concerned specifically with oversecured claims, that is, any claim that is for an amount less than the value of the property securing it. Thus, if a $50,000 claim were secured by a lien on property having a value of $75,000, the claim would be oversecured, provided the trustee's costs of preserving or disposing of the property were less than $25,000. Section 506(b) allows a [489 U.S. 240] holder of an oversecured claim to recover, in addition to the prepetition amount of the claim, "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

**Argument:**  It should be noted that Mr. Reese's action involves the taking of private property pursuant to an alleged filing of a "Notice of Levy" by an agent, officer and/or employee of the Internal Revenue Service in the collection of alleged taxes.

"The question before us today arises because there are two types of secured claims:  (1) voluntary (or consensual) secured claims, each created by agreement between the debtor and the creditor and called a "security interest" by the Code, **11 U.S.C. § 101(45) (1982 ed., Supp. IV)**, and (2) involuntary secured claims, such as a judicial or statutory lien, see **11 U.S.C. §§ 101(32) and (47) (1982 ed., Supp. IV)**, which are fixed by operation of law and do not require the consent of the debtor.  The claim against respondent's estate was of this latter kind.  Prior to the passage of the 1978 Code, some Courts of Appeals drew a distinction between the two types for purposes of determining post-petition interest.  The question we must answer is whether the 1978 Code recognizes and enforces this distinction, or whether Congress intended that all oversecured claims be treated the same way for purposes of post-petition interest."

**Argument:**  The questions before this court are the same questions that were raised in the matter of *United States v. Ron Pair Enterprises*, 489 U.S. 235 (1989). This (*Ron Pair Ent.*) is a Michigan tax case and tax liens, and the Right of Mr. Reese to lien the Debtor's property and receive post-petition interest and damages is preserved.

"Initially, it is worth recalling that Congress worked on the formulation of the Code for nearly a decade.  It was intended to modernize the bankruptcy laws, see **H.R.Rep. No. 95-595, p. 3 (1977)**

(Report), and as a result made significant changes in both the substantive and procedural laws of bankruptcy. See *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52-53 (1982) (plurality opinion). In particular, Congress intended "significant changes from current law in . . . the treatment of secured creditors and secured claims." **Report, at 180.** In such a substantial overhaul of the system, it is not appropriate or realistic to expect Congress to have explained with particularity each step it took. Rather, as long as the statutory scheme is coherent and consistent, there generally is no [**489 U.S. 241**] need for a court to inquire beyond the plain language of the statute."

"The task of resolving the dispute over the meaning of **§ 506(b)** begins where all such inquiries must begin: with the language of the statute itself. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). In this case, it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). The language before us expresses Congress' intent -- that post-petition interest be available -- with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary."

**Argument:** The language of the meaning of **§506(b)** speaks for itself – **with the language of the statute itself** – the sole function of the court is to enforce it according to its terms. See *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

"The relevant phrase in § 506(b) is: [T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

"Such claim" refers to an oversecured claim. The natural reading of the phrase entitles the holder of an oversecured claim to post-petition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of post-petition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, post-petition interest is the only added recovery available."

Note — this claim by Mr. Reese arose under agreement by debtor *Delphi et. al.* to honor his *In Lieu of Form W-4* (**Exhibit B**), and *PH - W-4 Qualifying Declaration*

**(Exhibit C)** exceptions to State and Federal, as well as local, taxes that under the I.R.S. Internal Revenue Code shall not be altered or disallowed.

The court: "We disagree. In *Midlantic*, we held that § 554(a) of the Code, 11 U.S.C. § 554(a), which provides that "the trustee may abandon any property of the estate that is burdensome to the estate," does not give a trustee the authority to violate state health and safety laws by abandoning property containing hazardous wastes. **474 U.S. at 507.** In reaching that conclusion, we noted that, according to pre-Code doctrine, the trustee's authority **[489 U.S. 244]** to dispose of property could be limited in order "to protect legitimate state or federal interests." **Id. at 500.** But we did not rest solely, or even primarily, on a presumption of continuity with pre-Code practice. Rather, we concluded that a contrary result would render abandonment doctrine inconsistent with other provisions of the Code itself, which embody the principle that "the trustee is not to have carte blanche to ignore nonbankruptcy law." **Id. at 502.** We also recognized that the outcome sought would be not only a departure from pre-Code practice, but also "an extraordinary exemption from nonbankruptcy law," **id. at 501**, requiring some clearer expression of congressional intent. We relied as well on Congress' repeated emphasis in environmental legislation "on its 'goal of protecting the environment against toxic pollution.'" **Id. at 505**, quoting *Chemical Manufacturers Assn. v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 143 (1985). To put it simply, we looked to pre-Code practice for interpretive assistance, because it appeared that a literal application of the statute would be "demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. at 571.

**Argument:** The Claimant, Scott Darryl Reese argues the that the trustee (note the trustee to the best of Mr. Resse's knowledge did not appear in court, and the attorneys for debtor *Delphi et. al.* acted without the trustee) lacked the authority to abandon the property of Mr. Reese. The debtor had full first hand knowledge of the disputed "Notice of Levy" and the property of Mr. Reese that debtor *Delphi et. al.* has taken.

Further, Mr. Reese, after reviewing the bankruptcy rules finds no rules to allow joinder of administration of the debtor *Delphi et. al.* proceedings without being federal officials of the United States Bankruptcy Court. Further, Mr. Reese finds that the debtor *Delphi et. al.* did not file with the Bankruptcy Trustee a bond for twice the amount in controversy before this United States Bankruptcy Court, Southern District of New York. **See attached Addendum - A - of FEDERAL RULES OF**

**BANKRUPTCY PROCEDURE that he has expectation that the court, the trustee, and the attorneys for debtor *Delphi et. al.* would follow.** Failure to follow these Rules would severely jeopardize Mr. Reese's Rights, Privileges and Immunities under the laws and the Constitution of the united States.

"The trustee is not to have carte blanche to ignore nonbankruptcy law." **Id. at 502.** "**Id. at 49.** In Kelly, as in Midlantic, pre-Code practice was significant because it reflected policy considerations of great longevity and importance."

"*Kelly* and *Midlantic* make clear that, in an appropriate case, a court must determine whether Congress has expressed an intent to change the interpretation of a judicially created concept in enacting the Code. But Midlantic and Kelly suggest that there are limits to what may constitute an appropriate case. Both decisions concerned statutory language which, at least to some degree, was open to interpretation. Each involved a situation where bankruptcy law, under the proposed interpretation, was in clear conflict with state or federal laws of great importance. In the present case, in contrast, the language in question is clearer than the language at issue in **Midlantic and Kelly: as written it directs that post-petition interest be paid on all oversecured claims.** In addition, this natural interpretation of the statutory language does not conflict with any significant state or federal interest, nor with any other aspect of the Code. Although the payment of post-petition interest is arguably somewhat in tension with the desirability of paying all creditors as uniformly **[489 U.S. 246]** as practicable, Congress expressly chose to create that alleged tension. There is no reason to suspect that Congress did not mean what the language of the statute says."

"The fact that this Court never clearly has acknowledged or relied upon this limitation on the oversecured claim exception counsels against concluding that the limitation was well-recognized. Also arguing against considering this limitation a clear rule is the fact that all the cases that limited the third exception were tax lien cases. Each gave weight to *City of New York v. Saper*, supra, where this Court had ruled that post-petition interest was not available on unsecured tax claims, and reasoned that the broad language of that case denied it for all tax claims. See *United States v. Harrington*, 269 F.2d at 721-722; *United States v. Bass*, 271 F.2d at 132; *In re Kerber Packing Co.*, 276 F.2d at 247. The rule **[489 U.S. 248]** articulated in these cases never was extended to other forms of nonconsensual liens. Obviously, there is no way to read **§ 506(b)** as allowing post-petition interest on all **oversecured claims except claims based on unpaid taxes.** For this reason, the

statute Congress wrote is simply not subject to a reading that would harmonize it with the supposed pre-Code rule."

**Argument:** The Internal Revenue Service, and the Department of Treasury failed to secure a tax lien through the Bankruptcy court through the debtor *Delphi et. al.* — to collect the alleged taxes due the I.R.S. as a secured lien holder, because Debtor in Possession of the private property of Scott Darryl Reese has a claim in the Bankruptcy court. It should also be noted the debtor *Delphi et. al.* — Debtor in Possession was in Bankruptcy court when the private property of Mr. Reese was taken and continues to be taken.

"More importantly, this "rule," in the few cases where it was recognized, was only a guide to the trustee's exercise of his powers in the particular circumstances of the case. We have noted that the touchstone of each decision on allowance of interest in bankruptcy . . . has been a balance of equities between creditor and creditor or between creditors and the debtor. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. at 165. All the exceptions to the denial of post-petition interest are not rigid doctrinal categories. Rather, they are flexible guidelines which have been developed by the courts in the exercise of their equitable powers in insolvency proceedings."

"In *re Boston and Maine Corp.*, 719 F.2d at 496: None of the cases cited by the Court of Appeals states that the doctrine does anything more than provide a bankruptcy court with guidance in the exercise of its equitable powers. As such, there is no reason to think that Congress, in enacting a contrary standard, would have felt the need expressly to repudiate it. The contrary view, which is the view we adopt today, is more consistent with Congress' stated intent, in enacting the Code, to codif[y] creditors' rights more clearly than the case law . . . [by] defin[ing] the protections to which a secured creditor is entitled, and the means through which the court may grant that protection. Report at 4-5 (emphasis added). Whether or [**489 U.S. 249**] not Congress took notice of the pre-Code standard, it acted with sufficient clarity in enacting the statute."

**"The judgment of the Court of Appeals is reversed."**

## Summary

Briefly, Claimant and Creditor Scott Darryl Reese summarizes his conclusions, pointing out to this honorable court and this honorable judge the several reversible errors of the court in the October 26, 2007 hearing, and incorporates pages 1 through 19 in his summary so as not to be

repetitious in his pleadings.

The Claimant has filed with the court Affidavits and documents to show that he was not served a cut off date by the court under the *F. R. of Bankruptcy Procedure Rule 3002*.

Claimant's claim or "Post Petition Claim" was timely.

Claimant's *claim to intervene* was timely with Claimant's *Proof of Claim* and/or *Post Petition Claim*, and therefore is not "moot" by the *F. R. of Civil Procedure Rule 24*.

Claimant's claim for Leave of relief from Automatic Stay was proper and timely to file his *Proof of Claim* and/or *Post Petition Claim*, and was his request for equitable relief in the equity proceeding before the court.

Claimant's claim that his Lien against debtor *Delphi et. al.* is a valid claim of lien was also timely and proper to secure his private property — an equitable action in equity.

Claimant's claim that debtor *Delphi et. al.* objection to Scott Darryl Reese's *Motion for Leave to File Late Claim* is in violation of ***F. R. of Bankruptcy Procedure Rule 7028, F. R. Civ. Procedure Rule 28***, and;

The attorneys for debtor in error failed to timely serve Mr. Reese thirty (30) days prior to the hearing, and;

The attorneys for debtor in error failed to advise the court and Mr. Reese that theirs was a motion to dismiss:  See Mr. Reese's arguments, and;

The attorneys for debtor in error failed to include in their pleading that the pleading is core or non-core, as argued in Mr. Reese's *Motion for Reconsideration* and *Brief in Support*, and;

Claimant's claim points out to this honorable Article III court and the honorable judge overseeing this proceeding that the errors are reversible, and;

Claimant was denied his day in court, and;

Claimant was denied his Due Process to a meaningful hearing at law for a conclusion at law on the issues raised by claimant, and;

Claimant was denied his Due Process and Equal Protection of the law under the laws and the Constitution of the united States, specifically the Fifth Amendment.

## Request for Relief

Wherefore, Scott Darryl Reese, Citizen of the fifty united States, requests that this honorable Article III court and the honorable judge presiding over this *Motion for Reconsideration* find the following:

Claimant was not timely served a bar date by the clerk of the court pursuant to *F. R. of Bankruptcy Procedure Rule 3002.*

Declare that Claimant's Petition to File Late Claim is not moot.

Declare that Claimant's *Proof of Claim* and/or *Post Petition Claim* was/were timely.

Declare that the extenuating circumstances beyond his control justifies his filing of his actions timely, pursuant to *F. R. of Bankruptcy Procedure Rules 3002; 2002.* (See *Cortes* case.)

Declare that Claimant has a valid lien against the property of debtor *Delphi et. al.*, who are still in possession of his property.

Declare that the court and the honorable Robert D. Drain is in error, reversing the order dated October 26, 2007, on the four (4) points of dismissing Claimant's claim, that the first two are "moot," the automatic stay is denied, and the Claimant's Lien against debtor *Delphi et. al.* is dismissed without an Adversary Hearing and without proper motion by debtor *Delphi et. al.* in accordance with *F. R. of Bankruptcy Procedure* as argued in Claimant's *Motion for Reconsideration* as incorporated in this proceeding as a Reliance Defense.

Wherefore, Scott Darryl Reese, prays for this relief pursuant to the *F. R. of Bankruptcy Procedure* as cited, and the *F. R. of Civil Procedure* also cited, and the laws and the Constitution of the united States, specifically violation of Due Process and Equal Protection of the law, Fifth Amendment..

Date: _November 5_ , 2007

_Scott Darryl Reese_

Scott Darryl Reese;
SCOTT DARRYL REESE;
SCOTT D. REESE

Prepared by:
Scott Darryl Reese
c/o 329 Basket Branch
Oxford, Michigan state   [48371]

c/o 329 Basket Branch
Oxford, Michigan state
[48371-6359]

**ADDENDUM - A -**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**§ 157. Procedures [Caution: see Explanatory and Other provisions notes to this section]**

(a) Each district court may provide that any or all cases under title 11 [11 USCS §§ 101 et seq.] and any or all proceedings arising under title 11 [11 USCS §§ 101 et seq.] or arising in or related to a case under title 11 [11 USCS §§ 101 et seq.] shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 [11 USCS §§ 101 et seq.] and all core proceedings arising under title 11 [11 USCS §§ 101 et seq.], or arising in a case under title 11 [11 USCS §§ 101 et seq.], referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title [28 USCS § 158].

(2) Core proceedings include, but are not limited to--
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 [11 USCS §§ 1101 et seq., 1201 et seq. or 1301 et seq.] but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11 [11 USCS §§ 101 et seq.];
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding

SCOPE                                                                          Rule 1001
FEDERAL RULES OF BANKRUPTCY PROCEDURE

**Rule 1001.** Scope of Rules and Forms; Short Title
The Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States
Code. The rules shall be cited as the Federal Rules of Bankruptcy Procedure and the forms as
the Official Bankruptcy Forms.  These rules shall be construed to secure the just, speedy, and
inexpensive determination of every case and proceeding.
(Amended Aug. 1, 1987; Aug. 1, 1991.)

28 U.S.C. § 151 establishes a United States Bankruptcy Court in each district as an adjunct to
the district court. This provision does not, however, become effective until April 1, 1984.
Public Law 95-598, § 402(b). From October 1, 1979 through March 31, 1984, the courts of
bankruptcy as defined in § 1(10) of the Bankruptcy Act, and created in § 2a of that Act continue
to be the courts of bankruptcy. Public Law 95-598, § 404(a). From their effective date these
rules and forms are to be applicable in cases filed under chapters 7, 9, 11 and 13 of title
11regardless of whether the court is established by the Bankruptcy Act or by 28 U.S.C. § 151.
Rule 9001 contains a broad and general definition of "bankruptcy court," "court" and "United
States Bankruptcy Court"for this purpose.

Effect upon substantive bankruptcy rights.

Since 28 USCS § 2075 provides that procedural rules of bankruptcy procedure "shall not
abridge, enlarge, or modify any substantive right," promulgation of rules will not affect
continuation of bankruptcy courts' equitable jurisprudence. Re Mobile Steel Co. (1977, CA5
Ala) 563 F2d 692, 3 BCD 1170, 15 CBC 1, CCH Bankr L Rptr ¶ 66632.

**Rule 1002.** Commencement of Case
(b) Transmission to United States Trustee
**Argument:** This Rule provides an interesting argument as to whether the attorneys
for debtor *Delphi et. al.* can act without the United States Trustee, because debtor *Delphi et. al.*
acquiesced to the jurisdiction of the United States Bankruptcy Court, Southern District of New
York.
**Argument:**  After reviewing the *F. R. of Bankruptcy Procedure Rule 1015 - - -*
Consolidation or Joint Administration of Cases Pending in the Same Court:
(b) relates to husband and wife

**Rule 1014. Dismissal and Change of Venue**

**(a) Dismissal and transfer of cases.**  (1) *Cases filed in proper district.*  If a petition is filed in
a proper district, on timely motion of a party in interest, and after hearing on notice to the
petitioners, the United States trustee, and other entities as directed by the court, the case may
be transferred to any other district if the court determines that the transfer is in the interest of
justice or for the convenience of the parties.

**Rule 1015. Consolidation or Joint Administration of Cases Pending in the Same Court**
Joint administration of case under Bankruptcy Rule 1015 is not identical to substantive
consolidation whether or not case is jointly administered.  It has nothing to do with rights
creditors have against each estate, nor rights and liabilities of one estate to other; substantive
consolidation means that assets and liabilities of 2 estates are combined creating in effect one

debtor.  Re N.S. Garrott & Sons (1986, BC ED Ark) 63 BR 189.

### Rule 1019. Conversion of Chapter 11 Reorganization Case, Chapter 12 Family Farmer's Debt Adjustment Case, or Chapter 13 Individual's Debt Adjustment Case to Chapter 7 Liquidation Case

When a chapter 11, chapter 12, or chapter 13 case has been converted or reconverted to a chapter 7 case:

(6) *Filing of postpetition claims; notice.*  On the filing of the schedule of unpaid debts, the clerk, or some other person as the court may direct, shall give notice to those entities, including the United States, any state, or any subdivision thereof, that their claims may be filed pursuant to Rules 3001(a)-(d) and 3002. Unless a notice of insufficient assets to pay a dividend is mailed pursuant to Rule 2002(e), the court shall fix the time for filing claims arising from the rejection of executory contracts or unexpired leases under §§ 348(c) and 365(d) of the Code.

### Rule 2001. Appointment of Interim Trustee Before Order for Relief in a Chapter 7 Liquidation Case

(a) **Appointment.** At any time following the commencement of an involuntary liquidation case and before an order for relief, the court on written motion of a party in interest may order the appointment of an interim trustee under § 303(g) of the Code.  The motion shall set forth the necessity for the appointment and may be granted only after hearing on notice to the debtor, the petitioning creditors, the United States trustee, and other parties in interest as the court may designate.

(b) **Bond of movant.**  An interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under § 303(i) of the Code.

### Rule 2002. Notices to Creditors, Equity Security Holders, United States, and United States Trustee

(a) **Twenty-day notices to parties in interest.**  Except as provided in subdivisions (h), (i) and (1) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of (1) the meeting of creditors pursuant to § 341 of the Code.

See **5. Constitutional due process**

Creditor's claim can be barred for untimeliness only upon showing that it received reasonable notice pursuant to Bankruptcy Rules 2002 and 3003, hence, whether notice to creditor is adequate depends upon facts and circumstances of given case; in general, due process requires that reasonable notice is that which is reasonably calculated to reach all interested parties, reasonably conveys all of required information, and permits reasonable amount of time for response.  Re Robintech, Inc., (1989, CA5 Tex) 863 F2d 393, 19 BCD 93, 21 CBC2d 790, CCH Bankr L Rptr ¶ 72608, cert den (1989) 493 US 811, 107 L Ed 2d 24, 110 S Ct 55.

Fifth Amendment requires that all creditors holding claims against bankruptcy estate must be given reasonable notice of plan's confirmation hearing before their claims are barred, and, consistent with constitutional mandate, Bankruptcy Rule 2002 provides for 20-day notice to all creditors. Re Republic Trust & Sav. Co. (1990, CA10 Okla) 897 F2d 1041, 20 BCD 454, 22 CBC2d 824, CCH Bankr L Rptr ¶ 73281, 18 FR Serv 3d 481, cert den (1990) 498 US 896, 112 L Ed 2d 204, 111 S Ct 245.

**Rule 2007.1. Appointment of Trustee or Examiner in a Chapter 11 Reorganization Case**
(a) **Order to appoint trustee or examiner.** In a chapter 11 reorganization case, a motion for an order to appoint a trustee or an examiner pursuant to § 1104(a) or § 1104(b) of the Code shall be made in accordance with Rule 9014.

(b) **Approval of appointment.** An order approving the appointment of a trustee or examiner pursuant to § 1104(c) of the Code shall be made only on application of the United States trustee, stating the name of the person appointed, the names of the parties in interest with whom the United States trustee consulted regarding the appointment, and, to the best of the applicant's knowledge, all the person's connections with the debtor, creditors, any other parties in interest, their respective attorneys and accountants, the United States trustee, and persons employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person appointed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, and any person employed in the office of the
United States trustee.
(Added Aug. 1, 1991.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES
**Other provisions:**
**Notes of Advisory Committee on Rules.** This rule is added to implement the 1986 amendments to § 1104 of the Code regarding the appointment of a trustee or examiner in a chapter 11 case. A motion for an order to appoint a trustee or examiner is a contested matter. Although the court decides whether the appointment is warranted under the particular facts of the case, it is the United States trustee who makes the appointment pursuant to § 1104(c) of the Code. The appointment is subject to approval of the court, however, which may be obtained by application of the United States trustee. Section 1104(c) of the Code requires that the appointment be made after consultation with parties in interest and that the person appointed be disinterested.

The requirement that connections with the United States trustee or persons employed in the United States trustee's office be revealed is not intended to enlarge the definition of "disinterested person" in § 101(13) of the Code, to supersede executive regulations or other laws relating to appointments by United States trustees, or to otherwise restrict the United States trustee's discretion in making appointments. This information is required, however, in the interest of full disclosure and confidence in the appointment process and to give the court all information that may be relevant to the exercise of judicial discretion in approving the appointment of a trustee or examiner in a chapter 11 case.

## Rule 2010. Qualification by Trustee; Proceeding on Bond
(a) **Blanket bond.** The United States trustee may authorize a blanket bond in favor of the United States conditioned on the faithful performance of official duties by the trustee or trustees to cover (1) a person who qualifies as trustee in a number of cases, and (2) a number of trustees each of whom qualifies in a different case.
(b) **Proceeding on bond.** A proceeding on the trustee's bond may be brought by any party in interest in the name of the United States for the use of the entity injured by the breach of the condition. (Amended Aug. 1, 1987; Aug. 1, 1991.)

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

······································································· x

Scott Darryl Reese,                                  :
Claimant                                             :
                                                     :
                                                     :
        v.                                           :
                                                     :
IN RE:                                               :            Honorable Robert Drain
                                                     :
DELPHI CORPORATION, et. al.,                         :            Case No. 05-44481
DELPHI - DEBTOR IN POSSESSION                        :
DELPHI CHASSIS SYSTEMS                               :            Bankruptcy Trustee
        Debtor,                                      :
                                                     :            (Jointly Administered)
                                                     :
······································································· x

## Claimant's Affidavit Regarding October 26, 2007 Proceedings

I, Scott Darryl Reese, state as follows:

1.      I did not, as possibly incorrectly stated at the October 26, 2007 hearing before the
        Honorable Judge Robert D. Drain, receive from the attorneys for debtor *Delphi et. al.* any
        of the Exhibits used in support of the *Debtors' Objection to Scott Darryl Reese's Motion
        for Leave to File Late Claim*, either via regular mail or private courier service, such as
        *Federal Express*, on or before the date of said hearing.

2.      I was not able to, as possibly incorrectly stated at the October 26, 2007 hearing before the
        Honorable Judge Robert D. Drain, able to open from the attorneys for debtor *Delphi et.
        al.* any of the Exhibits used in support of the *Debtors' Objection to Scott Darryl Reese's
        Motion for Leave to File Late Claim*, although Claimant did receive an e-mail from Sarah
        Platt, with attachments, nor did Claimant open said attachments, on or before the date of
        said hearing, due to Claimant's work schedule.

3.      The package that was delivered to the house via *Federal Express* was incorrectly
        presumed to contain the Exhibits used in support of the *Debtors' Objection to Scott
        Darryl Reese's Motion for Leave to File Late Claim*, as well as the motion of the
        *Debtors' Objection to Scott Darryl Reese's Motion for Leave to File Late Claim*.

4.       The package that was delivered to the house via *Federal Express* contained <u>PROPOSED</u> <u>FOURTEENTH CLAIMS HEARING AGENDA</u>, from the attorneys for debtor *Delphi et. al.*. This package was left on the doorstep, and was not signed for, on or about the 23RD or 24TH of October, 2007.

5.       I did not receive affidavit of Jeanine DeLuca (DECLARATION OF JEANINE DELUCA IN SUPPORT OF OBJECTION TO SCOTT DARRYL REESE'S MOTION FOR LEAVE TO FILE LATE CLAIM) either by e-mail, regular mail, or private courier service, such as *Federal Express*, on or before the date of said hearing, as Claimant had left by 5:30, 5:45 P.M., October 24, 2007, for New York City, New York, to be in court the following morning at 10:00 A.M. Claimant did open e-mail with attachment on or about October 28, 2007 after returning from New York.

I do hereby certify that, to the best of my knowledge and belief, the foregoing information is true and correct.

_November 5, 2007_
Date

~~Scott Darryl Reese~~ (signature)
Scott Darryl Reese
c/o 329 Basket Branch
Oxford, Michigan state      [48371]

Subscribed to and sworn before me this 5th day of _November_, 200_7_.

(signature)

Notary Public, _OAKLAND_ County, Michigan.
My Commission Expires: _Dec 6, 2013_

NINO DEL GRECO
NOTARY PUBLIC – MICHIGAN
MACOMB COUNTY
ACTING IN THE COUNTY OF *OAKLAND*
MY COMMISSION EXPIRES DEC. 6, 2013

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

······································································· x

**Scott Darryl Reese,**                                    :
**Claimant**                                               :
                                                           :
      v.                       :
                                                           :
**IN RE:**                                                 :    **Honorable Robert Drain**
                                                           :
**DELPHI CORPORATION, et. al.,**                           :    **Case No. 05-44481**
**DELPHI - DEBTOR IN POSSESSION**                          :
**DELPHI CHASSIS SYSTEMS**                                 :    **Bankruptcy Trustee**
      **Debtor,**             :
                                                           :    **(Jointly Administered)**

······································································· x

## Claimant's Declaration of Extraordinary Circumstances

I, Scott Darryl Reese, state as follows:

I cannot proceed for a *Motion for Rehearing* without an order of the court, and without a certified copy of the transcripts.

This is an action in equity for equitable relief, and therefore the extension of the deadline should be granted pursuant to Bankruptcy Rule 3002(c).

Claimant has demonstrated extraordinary circumstances that are beyond his reasonable control for filing a timely Proof of Claim.  See Claimant's ***Delphi Copy of Paycheck Stubs WITHOUT Deductions of "FEDERAL TAX"*** (Exhibit D) and ***Delphi Copy of Paycheck Stubs WITH Deductions of "FEDERAL TAX"*** (Exhibit E) as attached to original "Proof of Claim in Delphi Bankruptcy Proceedings - Reese" (*Proof of Claim*), which are actual proofs that Claimant worked 2,157.45 Hours as of the date of filing of the original *Proof of Claim*.  Total Hours worked thus far for the year are 2,305.45, pay ending period of October 28, 2007.  Total Mileage

*Delphi - Claimant's Declaration of Extraordinary Circumstances - Reese*          **Page 1 of 2**

traveled to and from work amounts to a total of 35,343.56 miles, for the same previous pay period.

I do hereby certify that, to the best of my knowledge and belief, the foregoing information is true and correct.

_November 5, 2007_
Date

_Scott Darryl Reese_
Scott Darryl Reese
c/o 329 Basket Branch
Oxford, Michigan state      [48371]

---

Subscribed to and sworn before me this _5th_ day of _November_____, 200_7_ .

_Nino Del Greco_

Notary Public, _OAKLAND_____ County, Michigan.

My Commission Expires: _Dec 6, 2013_____

NINO DEL GRECO
NOTARY PUBLIC – MICHIGAN
MACOMB COUNTY
ACTING IN THE COUNTY OF OAKLAND
MY COMMISSION EXPIRES DEC. 6, 2013



**Start:** **329 Basket Br**
Oxford, MI 48371-6359, US

**End:** **Delphi Energy & Chassis:**
989-757-5000
2328 E Genesee Ave, Saginaw,
MI 48601, US



**Notes:**

Only text visible within note field will print.

| Directions | Distance |
|---|---|

**Total Est. Time:** 1 hour, 16 minutes    **Total Est. Distance:** 72.31 miles

| | | |
|---|---|---|
| **START** | **1:** Start out going NORTHWEST on BASKET BR toward LAUREL LEAH. | <0.1 miles |
| | **2:** Turn RIGHT onto LAUREL LEAH. | 0.2 miles |
| | **3:** Turn RIGHT onto CHINKAPIN RILL. | 0.3 miles |
| | **4:** Turn LEFT onto E LAKEVILLE RD. | 1.7 miles |
| | **5:** E LAKEVILLE RD becomes E BURDICK ST. | 0.2 miles |
| NORTH 24 | **6:** Turn RIGHT onto N WASHINGTON ST / MI-24. Continue to follow MI-24 N. | 14.4 miles |
| WEST 69 | **7:** Merge onto I-69 W toward FLINT. | 18.5 miles |
| NORTH 475 | **8:** Merge onto I-475 N / UAW FWY via EXIT 137 toward SAGINAW. | 10.2 miles |
| NORTH 75 | **9:** Merge onto I-75 N / US-23 N toward SAGINAW. | 24.0 miles |
| 149B EXIT | **10:** Take the HOLLAND AVE / M-46 W exit- EXIT 149B. | 0.2 miles |
| WEST 46 | **11:** Merge onto MI-46 W. | 1.6 miles |
| | **12:** Turn LEFT onto E GENESEE AVE. | 0.4 miles |
| **END** | **13:** End at **Delphi Energy & Chassis:** 2328 E Genesee Ave, Saginaw, MI 48601, US | |