# EXHIBIT B

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF DELPHI CORPORATION ET AL.

November 13, 2007

Members of the Board of Directors of Delphi Corporation
c/o Mr. Steve Miller
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098

Re:   Delphi: Latest Chapter 11 Plan Proposal

Ladies and Gentlemen:

As the chairman of the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation ("Delphi") and certain of its affiliates (the "Debtors"), I write to express the Committee's position regarding the proposed terms of a revised plan of reorganization that the Committee received from Delphi's management and advisors on November 12 (the "Plan Proposal"). For the reasons discussed in this letter, the Committee *strongly opposes* the Plan Proposal and, if the Debtors intend to pursue confirmation of a chapter 11 plan incorporating the terms of the Plan Proposal (the "New Plan"), will recommend that all general unsecured creditors vote against it. I believe that unsecured creditors will reject the New Plan. Because that rejection would render the New Plan unconfirmable, the Committee urges the Board to exercise its fiduciary duties and instruct management (a) to abandon the Plan Proposal and (b) to take the steps necessary to terminate the Equity Purchase and Commitment Agreement with Appaloosa Management, L.P. and the other purported "plan investors."

In sum, the Plan Proposal represents a massive shift of value from general unsecured creditors to the plan investors, who have on several occasions demanded a lower buy-in valuation for their investment, each time insisting on acquiring more and more of the reorganized equity for the same purchase price. Each time, Delphi has moved to accommodate the plan investors' demands at the expense of unsecured creditors. Using the current state of the credit markets as a rationale for insisting on this latest re-trade, the plan investors have now insisted on a proposal that permits them to invest in the reorganized Debtors at a far steeper discount to plan value than the Committee has ever found acceptable. In fact, the blended total enterprise value at which the plan investors have agreed to invest is now only $10.45 billion. This equity valuation is 15% below the buy-in valuation agreed to by the plan investors a mere two weeks ago and far

NY\1346240.2

below the lowest end of the valuation range set by Rothschild, the Debtors' own investment banker, at that time. Moreover, 82% of their planned investment is in the form of preferred stock that has considerable value in terms of preferential status, dividends, and governance rights.

The intrinsic value of the Debtors' businesses has not deteriorated in any significant degree. Thus, the only conceivable reason that the plan investors are demanding this latest re-trade is to guarantee even more outsized returns on their investment. Nevertheless, Delphi's management has given in to the plan investors' demands yet again.

Effectively, the sole purpose of raising external capital is to fund cash and debt distributions to GM. While the Committee has been more than willing to support cash and debt distributions for GM's account if Delphi was able to raise external capital at a reasonable and fair valuation, we have never taken the position that we would support cash and debt distributions to GM *irrespective of the cost of raising that external capital.* We would hope that Delphi's Board shares our view that raising capital is a responsible action only so long as it is done at a fair and reasonable level. If it is GM's insistence on cash and debt distributions that is driving Delphi to seek to raise external capital at an absurdly low valuation, then we would suggest a different plan structure where it is GM, and not Delphi's creditors, who bear the economic cost of obtaining this liquidity.

Under the terms of the Plan Proposal, if unsecured creditors receive the recovery being touted in the Plan Proposal, the plan investors will make an immediate profit well in excess of 55% on their $975 million investment. However, it is extremely unlikely that that value will be achieved, as it would require the enterprise value of the reorganized Debtors to be significantly higher than the mid-point of Rothschild's range of valuations. This is the result of the plan investors' insistence that they be allowed to purchase equity at lower and lower enterprise values. As that buy-in price drops, the enterprise value that the Debtors must achieve (the so-called "plan value") for unsecured creditors to receive a full recovery goes up. The plan value in this Plan Proposal has far exceeded the Committee's tolerance.

Viewed another way, because little has happened that would cause the Debtors' enterprise value to go down, the reduction in the buy-in price represents a transfer of value to the plan investors. If enterprise value is static, the additional value transferred to the investors must be taken from another constituency. Delphi's management and advisors have asked the unsecured creditors to bear the vast majority of the cost of raising this capital. GM is not being asked to sacrifice in any meaningful way, and the Multi-District Litigation plaintiffs (despite that their claims are legally subordinated to unsecured claims) still stand to receive a recovery on par with unsecured creditors. As fiduciaries for unsecured creditors, the Committee simply cannot agree to, or recommend, the terms of this Plan Proposal, which guts the value of distributions to unsecured creditors while GM suffers virtually no reduction in its distribution and the Multi-District Litigation plaintiffs and current equity holders retain significant value. Consistent with its fiduciary duties, the Board cannot countenance this massive shift of value away from creditors to "plan investors" who have yet to make good on their commitments and to other parties whose claims or interests are subordinated to the claims of unsecured creditors. Simply put, enough is enough.

The Committee will urge that unsecured creditors reject any chapter 11 plan embodying the Plan Proposal. Based upon positions taken publicly by a group of substantial holders of bonds as well as conversations I and other Committee members have had with various bondholders and other unsecured creditors, I believe that a large majority of unsecured creditors (and not just the one-third in amount necessary to block class acceptance) will vote against such a plan. As I am sure your advisers have explained to you, any plan providing for distributions to junior classes cannot, as a matter of law, be confirmed over the rejection by the class of general unsecured claims. The New Plan, by providing distributions to holders of subordinated debt, the MDL Plaintiffs, existing equity and, potentially, even GM (whose claim is subject to equitable subordination), therefore cannot be confirmed in the face of a rejection by the class of unsecured creditors. While a plan can be confirmed over the rejection by the class of equity security holders, a plan that violates the absolute priority rule cannot be confirmed over the rejection by the class of general unsecured creditors. Pursuing the New Plan will be a futile exercise that will only keep the Debtors in chapter 11 for a longer period of time, consuming valuable estate assets and risking value deterioration. Therefore, I urge the Board to exercise its fiduciary duties to unsecured creditors and other stakeholders by instructing Delphi's management and advisors (a) not to pursue confirmation of any plan embodying the Plan Proposal and (b) to terminate the EPCA with the plan investors.

In the past, the Committee has demonstrated on many occasions that it was willing and able to work with the Debtors and other parties in interest to reach a consensual deal that is fair to unsecured creditors. Personally, I have devoted more time to this case than to any other matter in my career, and I am sure that is true for others around the table as well. The Committee remains willing to continue to work with all parties toward a consensual plan framework, including a framework that does not include the participation of the plan investors. However, the plan investors' latest demands, and Delphi's unwillingness or inability to resist them, finally have pushed the Committee too far. If the Debtors intend to pursue confirmation of a plan incorporating the terms of the Plan Proposal, the Committee will aggressively fight to defeat it

The Delphi cases are now at a crossroads. Through tremendous effort, the Debtor has achieved all that it can from the restructuring of its business, the negotiation of new labor arrangements, and the re-alignment of its relationship with GM. I urge the Board not to waste all of that good work by embarking on a path of confrontation with the Committee and the constituency that it represents. If the Board would like to meet with the Committee (or its representatives) to hear these views in person, the Committee stands ready to do so.

Very truly yours,

*[signature]* 11/13/07

David A. Daigle
Capital Research and Management Company

Creditors' Committee Chairman

cc.  Robert J. Rosenberg
John Wm. Butler
David Resnick
Brad Eric Scheler
Thomas E. Lauria
Jeffrey L. Tanenbaum
Members of the Creditors' Committee