1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION ET AL.,


      Debtor.


- - - - - - - - - - - - - - - - - - - -x

           United States Bankruptcy Court

           One Bowling Green

           New York, New York


           October 26, 2007

           10:32 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1

2    **HEARING re Third Omnibus Objection Matter**

3

4    **HEARING re Ninth Omnibus Objection Matter**

5

6    **HEARING re Fifteenth Omnibus Objection Matter**

7

8    **HEARING re Nineteenth Omnibus Objection Matter**

9

10   **HEARING re Twentieth Omnibus Objection Matter**

11

12   **HEARING re Motion of Scott Darryl Reese to Allow Payment of**

13   **Claim and Other Relief**

14

15   **HEARING re Motion to Reconsider FRCP 60 or FRBP 3008**

16

17

18

19

20

21

22

23

24   **Transcribed by:  Penina Wolicki**

25

3

1

2    A P P E A R A N C E S :

3    CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN

4         Attorneys for Specialty Coatings Inc.

5         5 Becker Farm Road

6         Roseland, NJ 07068

7

8    BY:   JEFFREY A. COOPER, ESQ.

9          MARC D. MICELI, ESQ.

10

11

12   SCOTT DARRYL REESE

13         329 Basket Br.

14         Oxford, MI 48371

15

16   BY:   SCOTT D. REESE, PRO SE

17

18

19   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

20         Attorneys for Delphi Corporation

21         4 Times Square

22         New York, NY 10036

23

24   BY:   THOMAS J. MATZ, ESQ.

25

4

**SKADDEN ARPS SLATE MEAGHER & FLOM, LLP**

    **Attorneys for Delphi Corporation**

    **333 West Wacker Drive**

    **Chicago, IL 60606**

**BY:   JOHN LYONS, ESQ.**

    **JOSEPH WHARTON, ESQ.**

    **LISA DIAZ, ESQ.**

5

P R O C E E D I N G S

1             

2      THE CLERK:  All rise.  Please be seated

3      THE COURT:  Okay.  Good morning.  Delphi Corporation.

4      MR. LYONS:  Good morning, Your Honor.  John Lyons on

5 behalf of the debtors.  I have in Court here today, Tom Matz,

6 Joe Wharton and Lisa Diaz from Skadden, and then Karen Kraft

7 and Janine Deluca from Delphi.  And, Your Honor, as typical,

8 I'd like to go through the agenda.

9      THE COURT:  Okay.  First instance.

10      MR. LYONS:  Your Honor, we have twenty-seven

11 uncontested stipulations.  And then there are two contested

12 matters.

13      THE COURT:  All right.

14      MR. LYONS:  So I will quickly run through the settled

15 matters.  I think we are making -- continue to make very good

16 progress.  There are some larger claims in this batch.

17      THE COURT:  Okay.

18      MR. LYONS:  First item on the agenda is the claim of

19 ATEL Leasing.  Your Honor, the claim had asserted an unsecured

20 nonpriority claim for 3,306,000 dollars and change, and a

21 secured claim in the amount of 582,000 dollars and change, and

22 a priority claim in the amount of 251,000 dollars and change,

23 against DAS LLC and Delphi Corporation.  The parties have

24 agreed to settle the claim for an allowed general unsecured

25 nonpriority claim in the amount of 191,000 dollars, 55 dollars

6

1    and 40 cents against DAS LLC.  Part of the explanation for the

2    reduction, Your Honor, is they had a protected claim for

3    potential rejection damages.  So they, of course, reserve their

4    right to file a rejection claim, in the event that the leases

5    that ATEL are, indeed, rejected.

6            THE COURT:  Okay.

7            MR. LYONS:  Next item on the agenda is the claim of

8    Gary Whitney.  Now, Your Honor, this was in active litigation.

9    It was an unliquidated claim, and we're pleased to report that

10   we were able to reach a settlement for 153,900 dollars against

11   Delphi Corporation.  And we have a stipulation to that effect.

12           THE COURT:  Okay.

13           MR. LYONS:  Item number 3 is the claim -- relates to

14   the claim of Doosan Infracore America Corp.  This claim had

15   filed four proofs of claim.  The first to the amount of 93,000

16   dollars and change against Delphi Corporation.  The next proof

17   of claim 16443 was filed in the amount of 100,000 dollars and

18   change against Delphi Corporation.  The third claim, 15426, was

19   filed in the amount of 88,000 dollars and change against DAS

20   LLC.  And proof of claim 16443 -- proof of claim 16443 will be

21   disallowed and expunged in its entirety.  And the others will

22   be allowed.  Oh, okay.  Ms. Diaz clarified that proof of claim

23   15426 is going to be allowed the amount of 88,400 dollars and

24   79 cents, and proof of claim 16443 is going to be disallowed

25   and expunged in its entirety.  So that's the stipulation that

7

1      relates to that claim.

2               THE COURT:  Okay.

3               MR. LYONS:  Agenda item number 4 is a claim of

4      Longacre Masterfund Limited as assignee of Calvary Design Team.

5      Calvary Design Team filed proof of claim number 4298 in the

6      amount of 108,000 dollars and change, against DAS LLC.  And

7      that claim will be allowed.  Other two proofs of claim, number

8      16266 and 16378 will be disallowed and expunged.  Actually,

9      Your Honor, this claim is one of the claims we noticed up under

10     the late claims bar date notice.  They were served the late

11     claims notice and decided to just drop the late claims.

12              THE COURT:  Okay.

13              MR. LYONS:  And in exchange, we're going to allow the

14     timely one.

15              THE COURT:  Okay.

16              MR. LYONS:  Similarly, agenda item number 5 is the

17     claim of Contrarian Funds LLC, as assignee at ETCO.  They filed

18     a timely claim 10381, in the amount of 165,122 dollars and 92

19     cents, and also asserted claim of 1,072 and 80 cents priority

20     claim.  The late claim, proof of claim 16374 will be disallowed

21     and expunged in its entirety, and proof of claim 10381 will be

22     allowed.

23              THE COURT:  Okay.

24              MR. LYONS:  The next matter, item number 6 on the

25     agenda, this again was subject to this late claims notice.  We

8

1    have actually -- we had thought they filed their motion late,

2    but we have since confirmed that, indeed they may have filed it

3    timely.  So that will be kicked automatically to November 16th.

4              THE COURT:  Okay.  So that's being adjourned?

5              MR. LYONS:  Yes.

6              THE COURT:  All right.

7              MR. LYONS:  Item agenda number 7 relates to the claim

8    filed by Hoover Precision Products, Inc.  The claim originally

9    asserted an unsecured nonpriority claim in the amount of

10   1,298,000 dollars and change against Delphi Corporation.  The

11   parties have agreed to settle it for -- and give an allowed

12   claim in the amount of 1,278,381 dollars and 52 cents against

13   DAS LLC.  The claimant has also agreed to withdraw the

14   reclamation demand previously asserted.  And that is all

15   reflected in the stipulation.

16             THE COURT:  Okay.

17             MR. LYONS:  Agenda item number 8, the claim filed by

18   Solectron.  Solectron initially asserted a claim in the amount

19   of 10,382,000 dollars against DAS LLC.  The parties have agreed

20   to settle the claim to give an allowed general unsecured claim

21   in the amount of 8,090,000 dollars against DAS LLC.  We're also

22   making it clear that the ownership of that claim is broken up

23   between three entities, TBG Credit Opportunities Fund LP in the

24   amount of 5,652,000 dollars and change; TBG Credit

25   Opportunities Investors, in the amount of 2,198,000 dollars and

9

1   change; and Solectron, in the amount of 239,000 dollars and

2   change.  And the precise numbers, of course, are going to be in

3   the stipulation.

4           THE COURT:  Okay.

5           MR. LYONS:  Okay, Your Honor.  And then we are also

6   going to have another few -- let's see -- eighteen claims

7   relate to various asbestos litigants.  And those are agenda

8   items 9 through 26.  Basically -- eighteen different claimants

9   who each asserted a claim in the amount of 30,000 dollars based

10  upon alleged liability for asbestos exposure.  The debtors have

11  agreed to settle each claim for 5,000 dollars.  And that will

12  all be handed up in separate stipulations.

13          THE COURT:  Okay.

14          MR. LYONS:  Agenda item 27 is -- relates to the claim

15  filed by the State of Wisconsin, Department of Revenue.  The

16  claimant filed proof of claim number 8233 asserting an

17  unsecured priority claim in the amount of 8,556,000 dollars and

18  change against DAS LLC.  The parties have agreed to settle this

19  claim for 1,650,000 dollars against DAS LLC.  So it obviously

20  is quite a dramatic improvement from the number they filed,

21  which consists of 1,150,000 dollars of prepetition taxes and

22  500,000 of interest accrued -- of accrued interest, which

23  interest will be in full and final satisfaction of any

24  interest, whether it's pre or post.  I mean, it's fixed based

25  upon prepetition interest, but in cutting this deal, they're

10

1    waiving all interest, including any interest that may be

2    payable under a plan of reorganization.

3           THE COURT:  Okay.

4           MR. LYONS:  And next, Your Honor -- that does it for

5    the uncontested matters.  And now the next item on the agenda

6    is the motion filed by Scott Darryl Reese.  So I'll turn the

7    podium over to Mr. Reese.

8           THE COURT:  Okay.

9           MR. REESE:  Good morning, Your Honor.

10          THE COURT:  Good morning.  You should assume I've

11   gone through the papers you filed as well as the debtors'

12   papers.

13          MR. REESE:  Okay.

14          THE COURT:  But if you have anything else to say,

15   please feel free to do that.

16          MR. REESE:  I would like to request time -- more time

17   to answer the attorneys for Delphi's latest response, right

18   now.  I received --

19          THE COURT:  Sure, go ahead.

20          MR. LYONS:  -- my wife signed for it last Friday.  I

21   haven't had a chance to go through it yet.

22          THE COURT:  Well, it's -- it is an affidavit that

23   supports the statement that was already in the response that

24   said that you had not renewed the exemption W4 withholding form

25   for 2007.

1        MR. REESE:  Right.  That's a -- that's a legal --

2  that's another matter, so.  I stand on my motions.  I guess,

3  any questions from the Court, so.

4        THE COURT:  Okay.

5        MR. REESE:  Maybe I can clarify.

6        THE COURT:  Have you -- have you dealt with the IRS

7  or with any court contending that the IRS didn't have the right

8  to do this?

9        MR. REESE:  There's other actions -- class actions

10  pending, indirectly related to this, is about the best way I

11  can put it.

12        THE COURT:  Okay.  And those are against the IRS?

13        MR. REESE:  They -- when we do more discovery,

14  they'll probably be against the individuals -- named

15  individuals in the IRS.

16        THE COURT:  Okay.  All right.  If you could summarize

17  it in a nutshell, because your pleadings are quite lengthy.

18  What is the basis for your claim?

19        MR. REESE:  Right now?  For this claim here?

20        THE COURT:  Yes.

21        MR. REESE:  Okay.

22        THE COURT:  Not the one -- not the class action.

23        MR. REESE:  Okay.  This claim right here, Delphi is

24  acting as a second party withholding agent, or alleged

25  withholding agent, if you will.  Minus, in my opinion, any

12

1   statutory authority to do so.  I filed in lieu of form W4s and

2   other paperwork, and they honored -- they honored it insofar as

3   federal taxes, per se, the category of federal taxes were

4   concerned.  They still deducted and withheld FICA and Social

5   Security, even though they had no legal authority to do that.

6   That was for the end of 2006 and continuing through into 2007

7   to the present.  The beginning of 2007, and this is only a

8   guess, because I still haven't received anything from the IRS

9   or from Delphi concerning or regarding this, supposedly a lien

10  and levy action were filed by the IRS, saying that I owed X

11  amount of dollars and had a debt, I guess.  And Delphi took it

12  upon themselves to honor any, again I'm guessing here, unsigned

13  presentments from the IRS, and as a second party, turned it

14  over to a third party, money that was lawfully owed to me.

15              THE COURT:  Okay.

16              MR. REESE:  They haven't claim -- they haven't cited

17  any statutory or legal authority to do so.

18              THE COURT:  Okay.  Well, you -- did you receive the

19  debtors' objection?

20              MR. REESE:  Debtors' objection filed last Friday?  Or

21  filed this week?

22              THE COURT:  Well, October 18th.  Well, it's dated

23  October 18th.

24              MR. REESE:  Dated October -- like I said, my wife --

25  I was -- I'd been in contact with Sarah Platt from Skadden

13

1   Arps.  She e-mailed me a copy Thursday.  I pulled it up by

2   about 3:00, 3 a.m. Friday morning -- a week ago Friday morning.

3   And I left for work an hour and a half later.  I printed it

4   out.  I have not had a chance to read any of the -- she had

5   three or four exhibits attached to that too.  I looked at the

6   exhibits that she wanted to use in court.  And I read the first

7   page of the objection.  And that's as far as I got.  I had a

8   wedding in Niagara Falls last week.  I had -- or Buffalo, New

9   York, I had to go to last week.

10            THE COURT:  Okay.  All right.

11            MR. REESE:  So I have not had a chance to look it

12   over or respond to it.

13            THE COURT:  Okay.  Okay.  Anything --

14            MR. REESE:  I can't -- until such time as my Freedom

15   of Information Act requests are answered, and not just replied

16   to, but answered, I can't -- and the letter to Delphi and

17   Delphi's payroll department, I guess in Arizona, Texas or

18   Jamaica, wherever they are, I feel that I can't proceed

19   without -- my hands are tied as far as discovery goes.

20            THE COURT:  Okay.

21            MR. REESE:  Any other questions?

22            THE COURT:  No, I don't think so.  Okay.  Why don't I

23   hear from the debtors.

24            MR. REESE:  I can -- if you'd like me to, I can read

25   the jurisdiction to this Court, where, in fact, I should

14

1    probably read this into the proceedings here.  Per 28, Your

2    Honor, United States Code Service.  Bankruptcy Courts, Section

3    157 Proceedings.

4              THE COURT:  Oh, I'm familiar with -- there's no issue

5    that --

6              MR. REESE:  Okay.

7              THE COURT:  -- I have jurisdiction over your claim.

8              MR. REESE:  Okay.  I just -- I'm going to quote the

9    rule here, if you like.

10             THE COURT:  You don't need to.  I know it.

11             MR. REESE:  Okay.

12             THE COURT:  And it's not in dispute that I have

13   jurisdiction over your claim.

14             MR. REESE:  Okay.

15             MR. REESE:  But it's for the proceedings as far as if

16   there's a, I suppose a lien in controversy that -- that's the

17   jurisdiction -- jurisdiction issue.

18             THE COURT:  Well, I don't have jurisdiction over a

19   dispute between you and the IRS.  I do have jurisdiction over

20   your claim against Delphi.

21             MR. REESE:  Okay.

22             THE COURT:  Okay.  Anything else?

23             MR. REESE:  That should be it.

24             THE COURT:  All right.  So I'll hear from the debtors

25   then.

15

1        MR. LYONS:  Your Honor, I'll be brief.  We did file

2    the objection and the Internal Revenue Code provisions are

3    cited therein, 6332(a), 6332(d), and 6332(e).  You know,

4    basically we're a third party here.  We received a notice of

5    levy, and under the terms of the notice of levy, which is

6    attached as Exhibit A to our objection, it states that:  the

7    levy requires you to turn over to us this taxpayer's wages and

8    salary that have been earned but not yet paid as well as wages

9    and salary earned in the future until this levy is released and

10   this taxpayer's other income that you now have or for which you

11   are obligated.  I mean, again, here we know nothing of the

12   merits of the dispute between Mr. Reese and the IRS, but under

13   the law we're required to turn this over or else face liability

14   in our own right.  And moreover 332(e) relieves us of any

15   liability if we do turn the money over to the IRS.  And that's

16   in our objection, Your Honor.

17             THE COURT:  Okay.

18             MR. LYONS:  Our response.

19             THE COURT:  Okay.  Anything else?

20             MR. REESE:  I would like to comment on the

21   attorney --

22             MR. LYONS:  Yeah.

23             MR. REESE:  -- are you from Skadden Arps?

24             MR. LYONS:  Yeah.  John Lyons.  Yes.

25             MR. REESE:  The gentleman right there that made the

16

1    statement.  I think some of the confusion is here, and don't

2    know why this is, Congress has gone to a lot of trouble to

3    define wages, employee, employer and everything else.  I don't

4    know why they're unable to read the statutes at large as things

5    are defined.  Taxpayer and all that -- taxpayer, wages,

6    employee, employer, all legally defined terms in the United

7    States Code and the statutes at large.  I don't know why their

8    insistence, contrary to the definitions are still relied upon,

9    I guess, by the attorneys for Delphi.  In other words, I could

10   randomly pull any book off of my shelf, any legal book with

11   statutes for horse thieving or prostitution.  That doesn't mean

12   that it necessarily would apply in the instant case.  There

13   would be certain legal qualifications to have to be met in

14   order for that to apply -- for the statutes and for the legal

15   terms to apply.  Like I said, the Freedom of Information Act

16   requests that have not been answered, they've been responded to

17   but only certain portions, what the IRS has chosen to pick and

18   choose, would allow this to be a lot more clarified -- this

19   issue to be more clarified.

20          Also if Delphi themselves could provide me with forms

21   that I've requested regard -- with my name on it, anything with

22   my name that they've sent to the IRS, that would clarify.  Like

23   I said, my hands are tied.  I'm guessing at what they have and

24   what the IRS has. I haven't been served with anything.

25          THE COURT:  Well, do you dispute that Delphi was in

17

1   possession of the money that has been withheld from you?

2          MR. REESE:  They --

3          THE COURT:  I mean, it's --

4          MR. REESE:  They've been in possession of my pay --

5   yeah, my earnings --

6          THE COURT:  I mean that's -- but it's your pay,

7   right?  It's --

8          MR. REESE:  My private pay.  Correct.

9          THE COURT:  All right.  And is there -- do you

10  contend that that pay is subject to a prior judicial attachment

11  or execution or --

12         MR. REESE:  I contend that it is not subject -- minus

13  any statutory authority or judicial order otherwise, it's not.

14         THE COURT:  Okay.

15         MR. REESE:  They'd have to produce the legal --

16         THE COURT:  No.  I'm not talking about the IRS.

17         MR. REESE:  No.  I'm not either.  I'm talking about

18  Delphi.

19         THE COURT:  Anything else?  Any other lien?  Is that

20  subject to any other lien you contend?

21         MR. REESE:  It's -- that -- exactly.  That's why I

22  wanted to read the jurisdiction to the Court.  One of the

23  things in that is to determine if there is a valid lien or if

24  there is a valid notice of levy -- notice of lien or valid

25  notice of levy, or lien or levy that goes along with that.

18

1        THE COURT:  Okay.

2        MR. REESE:  Like I said, the responses by the IRS,

3   just a little bit of responses I've received back from the

4   Internal Revenue Service, we have nothing on file.  How can

5   they have nothing on file forty-five days after the fact of

6   sending -- of notifying Delphi?  Or I'm guessing that they

7   notified Delphi.

8        THE COURT:  Okay.

9        MR. REESE:  Like I said, they don't want to notify

10  me.  Nobody wants to notify me.

11       THE COURT:  Okay.  Okay.  I have before me a motion

12  by Mr. Reese that seeks three forms of relief, two of which are

13  moot.

14       MR. REESE:  Your Honor, if I might?  If I can clarify

15  one issue?  I wanted entered into the record my tax returns,

16  but I forgot them.  I have received letters from the Internal

17  Revenue Service regarding -- from the last, probably four to

18  six months, where they seem to be catching up with my tax

19  returns as they've been filed, and saying okay, we've entered

20  them into the record now, and we agree with you, and we're

21  applying your overpayments, which is a legal definition --

22  we've applied your overpayments that we owe you against other

23  debts.  And they keep put -- they're kind of moving everything

24  forward from 1997 on up, and their last -- the only letter

25  that's -- the only year that's in contention right now is 2004,

19

1  my 2004 tax return.  And that's the year -- by coincidence or

2  not, is the year that I had worked for Delphi, almost entirely

3  the whole year.  I worked two, maybe three days for another

4  contractor, electrical contractor.

5              THE COURT:  Okay.

6              MR. REESE:  So that's -- I don't know if that's

7  coincidence.

8              THE COURT:  All right.  As I was saying, I have a

9  motion in front of me by Mr. Reese that, reading between the

10 lines, requests three forms of relief.  The first two are moot

11 or irrelevant, namely Mr. Reese seeks leave to file a late

12 claim as well as seeks leave to have relief from the automatic

13 stay, and I guess relatedly, to intervene.  Those requests for

14 relief are moot or irrelevant for the following reasons.  If

15 Mr. Reese had a claim against Delphi, it would be a post-

16 petition claim, as is his claim -- as asserted his one arising

17 allegedly from a wrongful agreement to withhold or accept the

18 levy upon his pay, which allegedly occurred post-petition.

19 Therefore the claim is not late, it's not subject to the bar

20 date which applies to prepetition claims.  There is also

21 nothing for -- no applicability of the automatic stay to Mr.

22 Reese's claim against the estate, and no proceeding pursuant to

23 which the stay would apply to which I have jurisdiction -- over

24 which I have jurisdiction for him to intervene in.

25              What is relevant and before me is Mr. Reese's claim

20

1   as set forth in voluminous filing with the Court, that the

2   debtor is liable to him for wrongfully withholding his salary

3   in response to an IRS notice of levy.  The debtors have

4   responded to that claim and objected to it.  And based on my

5   review of their response, including the exhibit attached

6   thereto, consisting of the IRS notice of levy, as well as my

7   review of the applicable statute and case law, I conclude that

8   pursuant to 26 U.S.C. Section 6332(e), Delphi is discharged

9   from any liability to Mr. Reese for honoring the IRS's levy,

10  which is expressly provided for in that section.  It has been

11  long recognized, including in the Second Circuit, that only two

12  circumstances justify noncompliance with a levy.  Either the

13  person levied upon is not in possession of the property or the

14  property is subject to a prior judicial attachment or

15  execution.  Mr. Reese acknowledges that neither of those

16  circumstances apply here.

17          Consequently, in light of the requirements of

18  26 U.S.C. 6332(a) to comply with the levy, and indeed the

19  potential penalty in addition to potential liability for

20  refusal to comply with the levy of fifty percent of the amount

21  recoverable, and that's found in 26 U.S.C. Section 6332(d)(1)

22  and (2), the debtor was obligated to comply with the levy.  See

23  generally as to that obligation as well as the applicability of

24  the exoneration or discharge provision of 26 U.S.C. Section

25  6332(e):  Schiff, S-C-H-I-F-F versus Simon and Schuster Inc.,

21

1   780F 2d 210, Second Circuit, 1985, Melton versus Teachers'

2   Insurance and Annuity Association of American 114F 3rd 557,

3   Fifth Circuit 1997; and Sheppard versus IRS 2006, District

4   Lexus 69029, Northern District of New York, September 26, 2006.

5           I should note further, although it's not clear to me

6   that this is contested by Mr. Reese, that it's long been held

7   that 26 U.S.C. 6332(a) applies to individuals such as himself

8   and does so without the requirement of a hearing in advance of

9   the levy.  The presumption being that the levy is correct as

10  set forth in the Melton case that I cited earlier, as well as

11  U.S. versus Montchanin Mills, M-O-N-T-C-H-A-N-I-N Mills, Inc.

12  512 F1192, District of Delaware, 1981; and Watts versus IRS 925

13  F271, District Court of New Jersey, 1996.  And so, I agree that

14  under the statute and the case law, Delphi is a third party

15  stakeholder, the recipient of, on its face, a valid notice of

16  levy, pursuant to which it was required to -- with which it was

17  required to comply, and that it is required to comply with,

18  going forward, pending resolution of any dispute between Mr.

19  Reese and the IRS, and notice of the resolution of that dispute

20  that would release the levy, and that it is expressly

21  discharged from liability for complying with the levy under

22  26 U.S.C. Section 6332(e).  So the objection to the claim is

23  well taken and the claim will be disallowed.  This is obviously

24  without prejudice to any of Mr. Reese's rights versus the IRS,

25  but as I noted before, with regard to that dispute, I don't

22

1  have jurisdiction, and that needs to be taken up elsewhere.  So

2  Mr. Lyons, you should submit an order to that effect.

3          MR. LYONS:  I will do, Your Honor.

4          THE COURT:  Okay.  Let me also note, Mr. Reese began

5  the hearing by saying that he had not had the time to review

6  the debtors' objection in full.  He acknowledged, however, that

7  he received it last week and, in fact, that counsel directed

8  him to the exhibits that include IRS notices of levy.  So I

9  conclude that there was proper service of the objection and

10 that in light of the clear case law and statute on this issue

11 there's no purpose served in further adjourning this matter.

12 Okay.

13         MR. REESE:  I'd still like to read this into the

14 record, if I might.

15         THE COURT:  No.  I've already ruled, sir.

16         MR. REESE:  All right.

17         THE COURT:  Okay.  Thank you.  Okay.  Let me hear the

18 Specialty Coatings matter, then.

19         MR. LYONS:  Your Honor, I believe they may be out in

20 the hallway.  Could we take a very short adjournment then?

21         THE COURT:  That's fine.  I'll just stay here, but --

22         MR. LYONS:  Let me run out --

23         THE COURT:  -- if you need some more time, beyond

24 just getting them and spending a couple minutes with them, let

25 me know and I'll give you more time.

23

1            MR. LYONS:  Okay.  Very good.

2            (Pause in proceedings).

3            MR. LYONS:  Your Honor, could we have a ten minute

4     adjournment?

5            THE COURT:  Yeah, that's fine.

6            MR. LYONS:  Thank you.

7            THE COURT:  I'll be back at about twenty after.

8            MR. LYONS:  Thank you.

9            (Short recess:  11:07 a.m. to 11:24 a.m.)

10           THE COURT:  Okay.  We're back on the record in Delphi

11    Corporation on the Specialty Coatings claim objection.

12           MR. LYONS:  Yes, Your Honor.  Specialty Coatings,

13    I've had discussions with counsel for specialty coatings, and

14    we have both agreed to continue the matter to November 30th,

15    but so we don't have to bring any witnesses back, both parties

16    are going to waive cross-examination on the declarations.

17           THE COURT:  Okay.  Is that right, sir?

18           MR. COOPER:  That's true, Judge.  Jeffrey Cooper of

19    Carella Byrne for the Cookson Companies.  That's correct, Your

20    Honor.

21           THE COURT:  Okay.  I may have a question, if we

22    actually have a hearing on this.  And my hope is you'll be able

23    to reconcile the numbers.  But Delphi's claims people are

24    always here so, I can ask them.  It really goes to what is --

25    what is the underlying dispute with regard to this particular

24

1    claim?  My impression is it may be just a dispute over what

2    should be credited against claims generally by these two

3    different companies or three different companies as opposed to

4    a dispute over the particular amount owing to Specialty.  But

5    that would be the nature of my question, so just to give you

6    some fair warning of that.

7              MR. COOPER:  Thank you, Judge.

8              THE COURT:  Okay.

9              MR. LYONS:  Thank you, Your Honor.

10             MR. COOPER:  Thank you, Your Honor.

11             THE COURT:  So it will be adjourned, then, to the

12    next date.

13             MR. COOPER:  To the 30th, would that be at 10 o'clock

14    as well?

15             THE COURT:  Yes.

16             MR. COOPER:  Thank you, Judge.

17             THE COURT:  Okay.

18             MR. LYONS:  Thank you, Judge.  That's all we have,

19    Your Honor.

20             THE COURT:  Okay.  Very well, thank you.

21             MR. LYONS:  Thank you.  Hold it, Your Honor.  We do

22    have a chart that need to --

23             THE COURT:  Oh great, why don't you hand that up to

24    me.

25         (Proceedings concluded: 11:27 a.m.)

25

**I N D E X**

RULINGS

Page      Line

Delphi is Discharged from 20        8

any Liability to Mr.

Reese

26

1

2                              **C E R T I F I C A T I O N**

3

4        I Penina Wolicki, court approved transcriber(s), certify that

5        the foregoing is a correct transcript from the official

6        electronic sound recording of the proceedings in the above-

7        entitled matter.

8

9        _____  __October 29, 2007_____

10       Signature of Transcriber              Date

11

12       _____PENINA WOLICKI_____

13       typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25