UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND
9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND
MANNER OF SALE NOTICES, AND (IV) SETTING SALE HEARING
DATE IN CONNECTION WITH SALE OF
SAGINAW CHASSIS EQUIPMENT AND OTHER ASSETS

("SAGINAW CHASSIS ASSET
BIDDING PROCEDURES ORDER")

Upon the expedited motion, dated September 17, 2007 (the "Motion"), of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for

orders pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, and 9014 (i)

approving the bidding procedures set forth herein and attached hereto as Exhibit 1 (the

"Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and

manner of sale notices, and (iv) setting a sale hearing date (the "Sale Hearing") in

connection with the sale (the "Sale") of certain assets of Delphi Automotive Systems

LLC ("DAS LLC") and Delphi Technologies, Inc. (together with DAS LLC, the "Selling

Debtor Entities")‡    primarily used and located at DAS LLC's chassis facility in Saginaw,

---

[1]    ~~The Selling Debtor Entities and Delphi Canada, Inc., a non-Debtor affiliate, shall be collectively~~
~~referred to as the "Sellers."~~

Michigan (the "Saginaw Chassis Business") and in other locations in North America,

including the manufacturing equipment, test and development equipment, inventory,

assigned permits, and other personal property to TRW Integrated Chassis Systems LLC

(the "Purchaser") pursuant to the Asset Purchase Agreement, dated September 17, 2007

(the "Agreement"), by and between the Selling Debtor Entities and the Purchaser or to

the party submitting the highest or otherwise best bid (the "Successful Bidder"); and

upon the record of the Hearing on the Motion; and after due deliberation thereon, and

sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[21]

A.    The Court has jurisdiction over this matter and over the property of

the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and

1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N),

and (O).

C.    The relief requested in the Motion is in the best interests of the

Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

D.    The notice given by the Selling Debtor Entities of the Motion and

the Hearing constitutes due and sufficient notice thereof.

E.    The Selling Debtor Entities have articulated good and sufficient

reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid

protections as provided in the Agreement and in this order, (iii) approve the manner of

notice of the Motion and the Sale Hearing, (iv) approve the form of notice of the Motion

---

[21]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

2    DeltaView comparison of pcdocs://nycsr06a/623222/10 and pcdocs://nycsr06a/623222/15. Performed on 11/15/2007.

and the Sale Hearing to be distributed to stakeholders and other parties-in-interest,

including prospective bidders, and (v) set the Sale Hearing.

      F.    The Selling Debtor Entities' payment to the Purchaser (as set forth

in the Agreement) of the Break-Up Fee[32] (i) is an actual and necessary cost and expense

of preserving their estates, within the meaning of sections 503 and 507(b) of the

Bankruptcy Code, (ii) is of substantial benefit to their estates, (iii) is reasonable and

appropriate, including in light of the size and nature of the Sale and the efforts that have

been and will be expended by the Purchaser notwithstanding that the proposed Sale is

subject to higher or better offers for the Acquired Assets, (iv) was negotiated by the

parties at arm's length and in good faith, and (v) is necessary to ensure that the Purchaser

will continue to pursue its proposed acquisition of the Acquired Assets.  The Break-Up

Fee was a material inducement for, and condition of, the Purchaser's entry into the

Agreement.  The Purchaser is unwilling to commit to hold open its offer to purchase the

Acquired Assets under the terms of the Agreement unless it is assured of payment of the

Break-Up Fee. Thus, assurance to the Purchaser of payment of the Break-Up Fee has

promoted more competitive bidding by inducing the Purchaser to hold its bid open.

Without the Break-Up Fee, other bidding would have been limited.  Further, because the

Break-Up Fee induced the Purchaser to submit a bid that will serve as a minimum or

floor bid on which other bidders can rely, the Purchaser has provided a benefit to the

Selling Debtor Entities' estates by increasing the likelihood that the price at which the

Acquired Assets are sold will reflect their true worth.  Finally, absent authorization of the

Break-Up Fee, the Debtors may lose the opportunity to obtain the highest or otherwise

---

[32]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

3    DeltaView comparison of pcdocs://nycsr06a/623222/10 and pcdocs://nycsr06a/623222/15. Performed on 11/15/2007.

best available offer for the Acquired Assets.

       G.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets ~~and certain assets located at a facility in Oshawa, Ontario, Canada (the "Canadian Assets")~~.

       THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

<u>Bidding Procedures</u>

       1.    The Bidding Procedures, as set forth on <u>Exhibit 1</u> attached hereto and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern all proceedings relating to the Agreement and any subsequent bids for the Acquired Assets ~~and the Canadian Assets~~.

       2.    The ~~Sellers~~<u>Selling Debtor Entities</u> may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of any official committee or significant constituency in connection with the Bidding Procedures, and (c) reject at any time, before entry of an order of the Court approving a Qualified Bid, any bid (other than the Purchaser's bid) which, in the ~~Sellers~~<u>Selling Debtor Entities</u>' sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Selling Debtor Entities, their estates, and their stakeholders.  The ~~Sellers~~<u>Selling Debtor Entities</u> are authorized (x) to terminate the Bidding Process or the Auction at any time if they determine, in their business judgment, that the Bidding Process will not maximize the value of the Acquired

Assets to be realized by the Selling Debtor Entities' estates and (y) seek Bankruptcy

Court approval of the Agreement with Purchaser.

Sale Hearing

3.      The If the Debtors do not receive any Qualified Bids by the

November 27, 2007 Bid Deadline, then the Court shall hold a Sale Hearing on October

25, November 29, 2007 at 10:00 a.m. (prevailing Eastern time) in the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room

610, New York, New York 10004, at which time the Court shall consider the sale aspect

of the Motion, approve the Successful Bidder, and confirm the results of the Auction, if

any. Objections. Except as provided in paragraph 5 of this order, objections to the

Motion, if any, shall be filed and served no later than 4:00 p.m. (prevailing Eastern time)

on October 18, November 26, 2007 (the "Objection Deadline").

4.      If the Debtors receive at least one Qualified Bid by the Bid

Deadline, then the Court shall hold a Sale Hearing on **December 20, 2007 at 10:00 a.m.**

(prevailing Eastern time) in the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, Room 610, New York, New York 10004, at which

time the Court shall consider the sale aspect of the Motion, approve the Successful

Bidder, and confirm the results of the Auction.

5.      Objections related solely to either the conduct of the Auction or the

selection of a Successful Bidder other than the Purchaser, if any, shall be filed and served

so as to be received no later than 4:00 p.m. (prevailing Eastern time) on December 13,

2007 (the "Supplemental Objection Deadline") by (i) Delphi Automotive Systems LLC,

5725 Delphi Drive, Troy, Michigan, 48098, Attention: Karen J. Craft, Managing Restructuring Counsel; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Brian M. Fern; (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (iv) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (v) counsel for the Debtors' postpetition credit facility, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald Bernstein and Brian Resnick.

6.    4. The failure of any objecting person or entity to timely file its objection by the Objection Deadline or the Supplemental Objection Deadline (if applicable) shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, the Auction, or the Selling Debtor Entities' consummation and performance of the Agreement (including the transfer of the Acquired Assets free and clear of liens), if authorized by the Court.

7.    5. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

Break-Up Fee

8. ~~6.~~ The Break-Up Fee, as more fully described in the Motion and the

Agreement, is hereby approved.  The Selling Debtor Entities shall be authorized to pay

the Break-Up Fee to the Purchaser in accordance with the terms of the Agreement

without further order of the Court.

<u>Notice</u>

9. ~~7.~~ Notice of the Motion and the Sale Hearing shall be good and

sufficient, and no other or further notice shall be required, if given as follows:

(a) <u>Notice Of Sale Hearing</u>.  Within ~~five days~~<u>one business day</u>
after entry of this order ~~(the "Mailing Date")~~, the Selling Debtor Entities (or their agent)
shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding
Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage
prepaid, upon (i) all entities known to have expressed an interest in a transaction with
respect to the Acquired Assets during the past six months, (ii) all entities known to have
asserted any lien in or upon the Acquired Assets, (iii) all federal, state, and local
regulatory or taxing authorities or recording offices which have a reasonably known
interest in the relief requested by the Motion, (iv) the United States Attorney's office, (v)
the United States Department of Justice, (vi) the Securities and Exchange Commission,
(vii) the Internal Revenue Service, (viii) all entities which filed a notice of appearance or
request for notice in these cases, and (ix) counsel to the official committee of unsecured
creditors and the official committee of equity security holders appointed in these cases.

(b) <u>Publication Notice</u>.  ~~On or before the Mailing Date~~<u>Within
three days after entry of this order</u>, or as soon thereafter as is practicable, the Debtors
shall cause notice substantially in the form of the notice attached hereto as <u>Exhibit 2</u> to be
published in the <u>Wall Street Journal</u> (International Edition), the <u>New York Times</u>, the
<u>Saginaw News</u>, and the <u>Bay City Times</u>.

10. ~~8.~~ This Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this order.

11. ~~9.~~ The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the

Motion.

Dated:    New York, New York
~~September~~November __,
2007

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

**DELPHI AUTOMOTIVE SYSTEMS LLC AND DELPHI TECHNOLOGIES, INC.**
**SAGINAW CHASSIS ASSET BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of a significant portion of the assets primarily used and located in the chassis facility in Saginaw, Michigan[1] (the "Saginaw Chassis Business") of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Technologies, Inc. (together with DAS LLC, the "Selling Debtor Entities" or "Sellers").  On September 17, 2007, the Selling Debtor Entities executed that certain Asset Purchase Agreement (together with any amendments thereto, the "Agreement") with TRW Integrated Chassis Systems LLC (the "Purchaser").  ~~Delphi Canada, Inc., a non-Debtor affiliate ("Delphi Canada" and together with the Selling Debtor Entities, the "Sellers"), is also selling certain manufacturing equipment and other personal property located at a facility in Oshawa, Ontario, Canada (the "Canadian Assets") pursuant to an Asset Purchase Agreement dated September 17, 2007 by and between Delphi Canada and the Purchaser (the "Canadian Agreement"), which is an agreement ancillary to the Agreement.~~  The transactions contemplated by the ~~Agreement and the Canadian~~ Agreement are subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On September 17, 2007, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed a Motion For Orders Under 11 U.S.C. §363 And Fed. R. Bankr. P. 2002, 6004, And 9014 (a) (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (b) Authorizing And Approving Sale by Delphi Automotive System LLC and Delphi Technologies, Inc. Of Certain Equipment And Other Assets Primarily Used In The Debtors' Saginaw Chassis Business Free And Clear Of Liens (the "Sale Motion").  On ~~September~~November __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Saginaw Chassis Equipment And Other Assets (the "Bidding Procedures Order").  ~~The~~

Pursuant to the Bidding Procedures Order ~~set October 25, 2007 as the date when~~, the Bankruptcy Court will conduct a hearing  (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into and perform under the Agreement on (i) November 29, 2007, if the Debtors do not receive any Qualified Bids by the Bid Deadline (as defined below), or (ii) December 20, 2007, if the Debtors receive at least one Qualified Bid by the Bid Deadline.

All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

---

[1]      In addition to the assets located at the chassis facility located in Saginaw, Michigan, the Sellers are also selling assets located at facilities in Spring Hill, Tennessee, Dayton, Ohio, and ~~Saltillo, Mexico~~Oshawa, Ontario, Canada.

1      DeltaView comparison of pcdocs://nycsr06a/623660/11 and pcdocs://nycsr06a/623660/16. Performed on 11/15/2007.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").  The Selling Debtor Entities intend to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process. In the event that the Selling Debtor Entities and any other party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Saginaw Chassis Business, including manufacturing equipment, test and development equipment, inventory, assigned permits and other personal property of the Selling Debtor Entities (the "Acquired Assets"), and the Canadian Assets.

## Free Of Any And All Liens

Except to the extent otherwise set forth in the Agreement or the relevant purchase agreement of a Successful Bidder, as applicable, all of the Sellers' right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option, or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) (the "Liens") and any monetary amounts which are secured by any Lien.

## Participation Requirements

Unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi, to participate in the bidding process, each person (a "Potential Bidder"), other than the Purchaser, must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below:

(a) An executed confidentiality agreement in form and substance acceptable to the  Selling Debtor Entities;

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Canadian Assets, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Sellers and their financial advisors; and

(c)  A preliminary (non-binding) written proposal regarding (i) the purchase price, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) ~~and the purchase price for the Canadian Assets~~ and the requisite financial assurances), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a "Qualified Bidder."  As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin to commence due diligence with respect to the Acquired Assets ~~and the Canadian Assets~~ as provided below. Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder for purposes of the Bidding Process.

## Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Acquired Assets ~~and the Canadian Assets~~.  Due diligence access may include such management presentations as may be scheduled by the Sellers, access to data rooms, on-site inspections, and such other matters as a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree.  The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence may not continue after the Bid Deadline.  The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets ~~and the Canadian Assets~~ to any person other than to Qualified Bidders which make an acceptable preliminary proposal.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets ~~and the Canadian Assets~~ prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets ~~and the Canadian Assets~~ in making its bid, and that it did not rely upon any written or oral statements,

representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, ~~the Canadian Assets,~~ or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction (as defined herein), except as expressly stated in the definitive agreement with the Successful Bidder approved by the Bankruptcy Court.

## Bid Deadline

A Qualified Bidder, other than the Purchasers, which desires to make a bid must deliver written copies of its bid to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098, Attention: Director, Mergers & Acquisitions, with copies to:  (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: Karen J. Craft, Managing Restructuring Counsel; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Brian M. Fern; (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (iv) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (v) counsel for the Debtors' postpetition credit facility, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on ~~October 16,~~November 27, 2007 (the "Bid Deadline").  The Sellers may extend the Bid Deadline once or successively, but are not obligated to do so.  If the Sellers extend the Bid Deadline, they must promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers must deliver complete copies of all items and information enumerated in the section below entitled bid requirements to counsel for the official committee of equity security holders (the "Equity Committee").  The Sellers also will provide the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (the "UAW") with notice of all Qualified Bidders and their contact information.

Qualified Bidders should note that Sections 4.2.E(i)-(vii) and 4.2.H of the Agreement are intended to effect assumption of the Collective Bargaining Agreements and, to the extent subject to assumption, these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a) A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Acquired Assets.

(b) An executed copy of the Agreement and related agreements, including the Lease Agreement, the Transition Services Agreement, and the Contract Manufacturing Agreement~~, and the Canada Agreement~~ (the "Ancillary Agreements"), together with all schedules, marked to show those amendments and modifications to such agreement that

the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement) ~~and the purchase price in the Canada Agreement~~ (a "Marked Agreement").

(c)  A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Sellers in their sole discretion) payable to the order of the Sellers (or such other party as the Debtors may determine) in an amount equal to $2,000,000.

(d)  Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transactions that is satisfactory to the Sellers and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

(e)  is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than, those contained in the Agreement;

(f)  is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder;

(g)  proposes a transaction that the Sellers determine, in their sole discretion, has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price, ~~the purchase price for the Canadian Assets,~~ and the amount of the Break-Up Fee, plus (i) in the case of the initial Qualified Bid, $500,000, and (ii) in the case of any subsequent Qualified Bids, $250,000 over the immediately-preceding highest Qualified Bid;

(h)  is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment;

(i)  an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets ~~and the Canadian Assets~~ prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets ~~and the Canadian Assets~~, the completeness of any information provided in connection therewith, or the Auction, except as expressly stated in the Agreement or the Marked Agreement;

(j)  includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental or regulatory approvals) ~~and the Canadian Assets~~ within not more than fifteen days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within ten days after entry of such order; and

(k) is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that the Sellers will have the right, in their sole discretion, to entertain bids for the Acquired ~~Assets and the Canadian~~ Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Purchaser is referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Purchaser, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

## Bid Protection

Recognizing the Purchaser's expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Purchaser.  Specifically, the Selling Debtor Entities have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other potential bids must exceed.  As a result, the Selling Debtor Entities have agreed that if the Selling Debtor Entities terminate the Agreement to close an alternative transaction and sell the Acquired ~~Assets and the Canadian~~ Assets to a Successful Bidder other than the Purchaser, the Selling Debtor Entities will, in certain circumstances, be obligated to pay the Purchaser a Break-Up Fee.  The payment of the Break-Up Fee will be governed by the provisions of the Agreement and the Bidding Procedures Order.

## Auction

If the Sellers receive at least one Qualified Bid in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Acquired Assets ~~and the Canadian Assets~~ upon notice to all Qualified Bidders which have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on or before ~~October 23,~~December 6, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or Four Times Square, New York, New York 10036 (at Delphi's election), or such later time or other place as the Sellers will notify all Qualified Bidders which have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing) in accordance with the following procedures:

(l) Only the Sellers, the Purchaser, any representative of the Creditors' Committee, any representative of the Equity Committee, any representative of the Debtors' postpetition credit facility (and the legal and financial advisers to each of the foregoing), any representative of the UAW, and any Qualified Bidder which has timely submitted a

Qualified Bid will be entitled to attend the Auction, and only the Purchaser and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(m) At least two Business Days prior to the Auction**,** each Qualified Bidder which has timely submitted a Qualified Bid must inform the Sellers whether it intends to participate in the Auction, and at least one Business Day prior to the Auction, the Sellers must provide all Qualified Bidders which have informed the Sellers of their intent to participate in the Auction and the UAW with copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe comprise the highest or otherwise best offer.  Should an Auction take place, the Purchaser will have the right, but not the obligation, to participate in the Auction.  The Purchaser's election not to participate in an Auction will in no way impair its entitlement to receive the Break-Up Fee.

(n) All bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(o) The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(p) Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of $250,000 higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), the Sellers will give effect to any Break-Up Fee as well as any assets to be retained by the Sellers.

## Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Canadian Assets received at the Auction (the "Successful Bid" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Sellers will sell the Acquired Assets and the Canadian Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing Sale Hearing.  If, after an Auction in which the Purchaser:  (i) has bid an amount in excess of the consideration currently provided for in the

---

7 DeltaView comparison of pcdocs://nycsr06a/623660/11 and pcdocs://nycsr06a/623660/16. Performed on 11/15/2007.

Agreement with respect to the transactions contemplated under the Agreement and (ii) is the Successful Bidder, it must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to:  (a) the amount of the Successful Bid less (b) the Break-Up Fee.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid.  The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## **The Sale Hearing**

The ~~Sale Hearing is currently scheduled to~~Bankruptcy Court will conduct a Sale Hearing on (i) November 29, 2007 at 10:00 a.m. (prevailing Eastern time), if the Debtors do not receive any Qualified Bids by the Bid Deadline or (ii) December 20, 2007 at 10:00 a.m. (prevailing Eastern time), if the Debtors receive at least one Qualified Bid by the Bid Deadline.

The Sale Hearing will take place before the Honorable Robert D. Drain, United States Bankruptcy Judge~~, on October 25, 2007 at 10:00 a.m. (prevailing Eastern time)~~ in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.  The Sale Hearing may be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing.

If the Selling Debtor Entities do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Sellers will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets ~~and the Canadian Assets~~ to the Purchaser following entry of the Sale Approval Order.  If the Selling Debtor Entities do receive additional Qualified Bids, then at the Sale Hearing the Sellers will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  The Selling Debtor Entities' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either or any such bid(s), which acceptance will occur only upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either the Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Sellers will be permitted to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

## **Return Of Good Faith Deposits**

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit,

if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s). If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Sellers.  On the Return Date, the Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### Reservations Of Rights

The Sellers, after consultation with the agents for their secured lenders and the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Purchaser's bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Selling Debtor Entities, their estates, and their stakeholders as determined by the Selling Debtor Entities in their sole discretion.

# Exhibit 2

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -    x
                                                         :
     In re                      :    Chapter 11
                                                         :
   DELPHI CORPORATION, et al.,              :    Case No. 05-44481 (RDD)
                                                         :
           Debtor.    :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - -    x

<u>NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION</u>

PLEASE TAKE NOTICE THAT:

     1.    Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Saginaw Chassis Equipment And Other Assets (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on ~~September~~November __, 2007, Delphi Automotive Systems LLC and Delphi Technologies, Inc. (collectively, the "Selling Debtor Entities") have entered into an Asset Purchase Agreement (<u>together with any amendments thereto,</u> the "Agreement") with TRW Integrated Chassis Systems LLC (the "Purchaser") for the purchase of a significant portion of the assets, including manufacturing equipment, test and development equipment, inventory, assigned permits, and other personal property primarily used and located at the facility in Saginaw, Michigan (the "Acquired Assets"). ~~Delphi Canada, Inc., a non-Debtor affiliate ("Delphi Canada" and together with the Selling Debtor Entities, the "Sellers"), is also selling certain manufacturing equipment and personal property located at a facility in Oshawa, Ontario, Canada (the "Canadian Assets") pursuant to an Asset Purchase Agreement by and between Delphi Canada and the Purchaser, which is an agreement ancillary to the Agreement.~~

     2.    All interested parties are invited to make an offer to purchase the Acquired ~~Assets and the Canadian~~ Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures") so as to be received by (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: Karen J. Craft, Managing Restructuring Counsel; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Brian M. Fern; (iii) counsel to the official committee of unsecured creditors (the "Creditors' Committee"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (iv) the Creditors' Committee's

financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (v) counsel for the Debtors' postpetition credit facility, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald Bernstein and Brian Resnick, so as to be received not later than **11:00 a.m.** (prevailing Eastern time) on ~~October 16,~~**November 27** 2007.  Pursuant to the Bidding Procedures, the ~~Sellers~~**Selling Debtor Entities** may conduct an auction for the Acquired ~~Assets and the Canadian~~ Assets (the "Auction") beginning at **10:00 a.m.** (prevailing Eastern time) on ~~October 23,~~**December 6,** 2007 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606.

3.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting the undersigned counsel to the Selling Debtor Entities or by accessing Delphi's Legal Information Website, www.delphidocket.com.

4.      The Bankruptcy Court will conduct a hearing to approve the sale of the Acquired Assets on (i) **November 29, 2007** at **10:00 a.m.** (prevailing Eastern time) if the Debtors do not receive any Qualified Bids by the Bid Deadline or (ii) **December 20, 2007** at **10:00 a.m.** (prevailing Eastern time), if the Debtors receive at least one Qualified Bid by the Bid Deadline.

5.      ~~4. A hearing to approve the Sale of the Acquired Assets and the Canadian Assets to the highest and best bidder will be held on~~ ~~**October 25, 2007** at **10:00 a.m.** (prevailing Eastern time) at the Bankruptcy Court, One Bowling Green, Room 610, New York, New York 10004.~~The Sale Hearing will take place before the Honorable Robert D. Drain, United States Bankruptcy Judge~~—~~ in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. Such hearing may be adjourned without notice other than an adjournment in open court.

6.      ~~5.~~Objections, if any, to the proposed Sale must be filed and served in accordance with the Bidding Procedures Order, and **actually received** no later than **4:00 p.m.** (prevailing Eastern time) on ~~October 18,~~**November 26,** 2007.

7.      Objections related **solely** to either the conduct of the Auction or the selection of a Successful Bidder other than the Purchaser, if any, shall be filed and served in accordance with the Bidding Procedures Order, and **actually received** no later than **4:00 p.m.** (prevailing Eastern time) on **December 13, 2007** by the parties set forth in paragraph 2 above.

8.      ~~6.~~This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: New York, New York
        ~~September~~November __, 2007

                                BY ORDER OF THE COURT

                                John Wm. Butler, Jr. (JB 4711)
                                John K. Lyons (JL 4951)
                                Ron E. Meisler (RM 3026)

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession