**OBJECTIONS TO THE EXIT FINANCING MOTION**
**ORGANIZED BY NATURE OF OBJECTION**[1]

| | OBJECTION DOCKET NO. | OBJECTION ASSERTED | RESPONSE |
|---|---|---|---|
| 1. | 10903, 10905, 10933 | The Exit Financing Arrangements envisaged by the Engagement Letter supported a specific plan structure outlined in the now-terminated EPCA Amendment. Given the termination of the EPCA Amendment, Debtors no longer have any "good business reason" for seeking the relief requested in the Motion. Thus, the motion should be denied. | The terms and conditions of the Engagement Letter do not depend upon or require the inclusion of any particular provisions in the EPCA or any amendment thereto. The actual language of the Engagement Letter (see second paragraph) reflects a degree of flexibility and sensitivity to the ongoing negotiations over the Plan and related agreements that the objections do not acknowledge. Moreover, the Engagement Parties have now acknowledged that the proposed amendments to the Plan and the EPCA filed by the Debtors on November 14, 2007 are consistent with the relevant provisions of the Engagement Letter.<br><br>The Debtors have articulated a detailed and cogent explanation for seeking the relief requested in the Exit Financing Motion expeditiously. The objectors have not challenged the material terms of the Engagement Letter, nor have they offered any critical analysis of the exercise of the Debtors' business judgment in connection with their determination to enter into the Engagement Letter. |
| 2. | 10933 | By disregarding the absolute priority rule, the new plan proposal of the Debtors will be unconfirmable if the unsecured creditors reject it. The UCC believes that it is "almost certain" that the new plan structure will be rejected by the unsecured creditors. Thus, pursuing the new plan proposal is futile, consuming valuable estate assets and risking value deterioration. | The objection represents an attempt to shoehorn objections to the Plan or the EPCA, neither of which is before the Court, into pleadings ostensibly focused on exit financing. The likelihood of plan confirmation should only affect the Court's consideration of the Exit Financing Motion to the extent that the Court concludes the outcome bears directly on the Debtors' business judgment in entering into the Engagement Letter. The objections draw connections between the Exit Financing Motion and the fate of the proposed Plan that are speculative at best. Ultimately, the objections do not explain why the Debtors' determination to enter into the Engagement Letter should not be protected by the business judgment rule under applicable standards. |

---

[1]   This chart reflects all objections entered on the docket as of 6:00 p.m. (prevailing Eastern time) on November 14, 2007.

1

| | OBJECTION DOCKET NO. | OBJECTION ASSERTED | RESPONSE |
|---|---|---|---|
| 4. | 10933 | It is not in the best interests of the estates to enter into the Engagement Letter without a viable plan structure in place because this will harm the estates by incurring an obligation to pay up to $500,000 in expenses while providing no benefit to the estates. | Under the circumstances, committing to pay $500,000 of the expenses of the Engagement Parties is neither an abuse of the Debtors' discretion nor a waste of estate resources. The Debtors' determination to enter into the Engagement Letter is a classic business decision to be evaluated under the business judgment rule. The objectors have failed to carry their burden to demonstrate that the Debtors' actions in this context should not be protected by the business judgment rule. |
| 5. | 10933 | Entering into the engagement letter is premature, even on a non-binding and "best efforts" basis because it is a "positional and reputational commitment."<br><br>• If the Engagement Parties are successful, it will be hard for the Debtors to seek alternative financing should a different structure develop.<br><br>• There is a real risk that through the syndication effort the Engagement Parities will seek to lock up potential syndicate party participants thereby disadvantaging the Debtors in subsequent exit financing negotiations should the structure of the final plan change.<br><br>It is not clear that Engagement Parties have seen or approved the new plan proposal. | When the Engagement Parties signed the Engagement Letter and consented to the filing of the Exit Financing Motion, they were fully cognizant that negotiations with the Plan Investors and other parties were continuing and that an outcome had not been settled. Moreover, the Engagement Parties have now acknowledged that the proposed amendments to the Plan and the EPCA filed by the Debtors on November 14, 2007 are consistent with the relevant provisions of the Engagement Letter.<br><br>The potential risks identified by the objectors amount to little more than speculation and in any event merely reflect a difference in views over the appropriate strategy to employ in obtaining exit financing. Given the laborious process the Debtors undertook to reach their determination to enter into the Engagement Letter, their decision to do so was hardly arbitrary. Moreover, "[t]he difference as to appropriate strategy here does not mean that the [Debtors'] particular strategic choices…fail to meet the standard for the exercise of the business judgment rule." In re Adelphia Commc'ns Corp., 2004 WL 1634538 at * 4 (Bankr. S.D.N.Y. June 22, 2004). The objectors have not argued otherwise. |

| DOCKET # | OBJECTING PARTY |
|---|---|
| 10903 | Ad Hoc Bondholders' Group - Caspian Capital Advisors, LLC, Castlerigg Master Investments Ltd., Davidson Kempner Capital Management LLC, Elliot Associates, L.P., Nomura Corporate Research & Asset Management, Inc., Sailfish Capital Partners, LLC, and Whitebox Advisors, LLC |
| 10905 | Wilmington Trust |
| 10933 | Creditors' Committee |

2