# DELPHI AUTOMOTIVE SYSTEMS LLC AND DELPHI TECHNOLOGIES, INC. SAGINAW CHASSIS ASSET BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of a significant portion of the assets primarily used and located in the chassis facility in Saginaw, Michigan[1] (the "Saginaw Chassis Business") of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Technologies, Inc. (together with DAS LLC, the "Selling Debtor Entities" or "Sellers").  On September 17, 2007, the Selling Debtor Entities executed that certain Asset Purchase Agreement (together with any amendments thereto, the "Agreement") with TRW Integrated Chassis Systems LLC (the "Purchaser").  The transactions contemplated by the Agreement are subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On September 17, 2007, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed a Motion For Orders Under 11 U.S.C. §363 And Fed. R. Bankr. P. 2002, 6004, And 9014 (a) (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing Date And (b) Authorizing And Approving Sale by Delphi Automotive System LLC and Delphi Technologies, Inc. Of Certain Equipment And Other Assets Primarily Used In The Debtors' Saginaw Chassis Business Free And Clear Of Liens (the "Sale Motion").  On November __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Saginaw Chassis Equipment And Other Assets (the "Bidding Procedures Order").

Pursuant to the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into and perform under the Agreement on (i) November 29, 2007, if the Debtors do _not_ receive any Qualified Bids by the Bid Deadline (as defined below), or (ii) December 20, 2007, if the Debtors receive at least one Qualified Bid by the Bid Deadline.

All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").  The Selling Debtor Entities intend to consult with, among others, the official

---

[1] In addition to the assets located at the chassis facility located in Saginaw, Michigan, the Sellers are also selling assets located at facilities in Spring Hill, Tennessee, Dayton, Ohio, and Oshawa, Ontario, Canada.

1

committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process. In the event that the Selling Debtor Entities and any other party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Saginaw Chassis Business, including manufacturing equipment, test and development equipment, inventory, assigned permits and other personal property of the Selling Debtor Entities (the "Acquired Assets").

### Free Of Any And All Liens

Except to the extent otherwise set forth in the Agreement or the relevant purchase agreement of a Successful Bidder, as applicable, all of the Sellers' right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option, or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) (the "Liens") and any monetary amounts which are secured by any Lien.

### Participation Requirements

Unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi, to participate in the bidding process, each person (a "Potential Bidder"), other than the Purchaser, must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below:

(a) An executed confidentiality agreement in form and substance acceptable to the Selling Debtor Entities;

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Sellers and their financial advisors; and

(c) A preliminary (non-binding) written proposal regarding (i) the purchase price, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite financial assurances), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and

(vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a "Qualified Bidder."  As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin to commence due diligence with respect to the Acquired Assets as provided below.  Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder for purposes of the Bidding Process.

### Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Acquired Assets. Due diligence access may include such management presentations as may be scheduled by the Sellers, access to data rooms, on-site inspections, and such other matters as a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree.  The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence may not continue after the Bid Deadline.  The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets to any person other than to Qualified Bidders which make an acceptable preliminary proposal.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction (as defined herein), except as expressly stated in the definitive agreement with the Successful Bidder approved by the Bankruptcy Court.

### Bid Deadline

A Qualified Bidder, other than the Purchasers, which desires to make a bid must deliver written copies of its bid to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098, Attention: Director, Mergers & Acquisitions**,** with copies to:  (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: Karen J. Craft,

Managing Restructuring Counsel; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Brian M. Fern; (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (iv) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; and (v) counsel for the Debtors' postpetition credit facility, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on November 27, 2007 (the "Bid Deadline"). The Sellers may extend the Bid Deadline once or successively, but are not obligated to do so. If the Sellers extend the Bid Deadline, they must promptly notify all Qualified Bidders of such extension. As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers must deliver complete copies of all items and information enumerated in the section below entitled bid requirements to counsel for the official committee of equity security holders (the "Equity Committee"). The Sellers also will provide the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (the "UAW") with notice of all Qualified Bidders and their contact information.

Qualified Bidders should note that Sections 4.2.E(i)-(vii) and 4.2.H of the Agreement are intended to effect assumption of the Collective Bargaining Agreements and, to the extent subject to assumption, these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a) A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Acquired Assets.

(b) An executed copy of the Agreement and related agreements, including the Lease Agreement, the Transition Services Agreement, and the Contract Manufacturing Agreement (the "Ancillary Agreements"), together with all schedules, marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement) (a "Marked Agreement").

(c) A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Sellers in their sole discretion) payable to the order of the Sellers (or such other party as the Debtors may determine) in an amount equal to $2,000,000.

(d) Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transactions that is satisfactory to the Sellers and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

4

(a) is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than, those contained in the Agreement;

(b) is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder;

(c) proposes a transaction that the Sellers determine, in their sole discretion, has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price and the amount of the Break-Up Fee, plus (i) in the case of the initial Qualified Bid, $500,000, and (ii) in the case of any subsequent Qualified Bids, $250,000 over the immediately-preceding highest Qualified Bid;

(d) is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment;

(e) an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, the completeness of any information provided in connection therewith, or the Auction, except as expressly stated in the Agreement or the Marked Agreement;

(f) includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental or regulatory approvals) within not more than fifteen days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any governmental or regulatory approvals which must be obtained within ten days after entry of such order; and

(g) is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that the Sellers will have the right, in their sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of the Purchaser is referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Purchaser, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

**Bid Protection**

Recognizing the Purchaser's expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Purchaser.  Specifically, the Selling Debtor Entities have determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other potential bids must exceed.  As a result, the Selling Debtor Entities have agreed that if the Selling Debtor Entities terminate the Agreement to close an alternative transaction and sell the Acquired Assets to a Successful Bidder other than the Purchaser, the Selling Debtor Entities will, in certain circumstances, be obligated to pay the Purchaser a Break-Up Fee.  The payment of the Break-Up Fee will be governed by the provisions of the Agreement and the Bidding Procedures Order.

**Auction**

If the Sellers receive at least one Qualified Bid in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Acquired Assets upon notice to all Qualified Bidders which have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on or before December 6, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or Four Times Square, New York, New York 10036 (at Delphi's election), or such later time or other place as the Sellers will notify all Qualified Bidders which have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing) in accordance with the following procedures:

(a) Only the Sellers, the Purchaser, any representative of the Creditors' Committee, any representative of the Equity Committee, any representative of the Debtors' postpetition credit facility (and the legal and financial advisers to each of the foregoing), any representative of the UAW, and any Qualified Bidder which has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Purchaser and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b) At least two Business Days prior to the Auction, each Qualified Bidder which has timely submitted a Qualified Bid must inform the Sellers whether it intends to participate in the Auction, and at least one Business Day prior to the Auction, the Sellers must provide all Qualified Bidders which have informed the Sellers of their intent to participate in the Auction and the UAW with copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe comprise the highest or otherwise best offer.  Should an Auction take place, the Purchaser will have the right, but not the obligation, to participate in the Auction.  The Purchaser's election not to participate in an Auction will in no way impair its entitlement to receive the Break-Up Fee.

(c) All bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d) The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these

6

Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e) Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of $250,000 higher than the previous bid or bids. The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), the Sellers will give effect to any Break-Up Fee as well as any assets to be retained by the Sellers.

### Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets received at the Auction (the "Successful Bid" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Sellers will sell the Acquired Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. If, after an Auction in which the Purchaser: (i) has bid an amount in excess of the consideration currently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) is the Successful Bidder, it must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Break-Up Fee.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid. The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

### The Sale Hearing

The Bankruptcy Court will conduct a Sale Hearing on (i) November 29, 2007 at 10:00 a.m. (prevailing Eastern time), if the Debtors do not receive any Qualified Bids by the Bid Deadline or (ii) December 20, 2007 at 10:00 a.m. (prevailing Eastern time), if the Debtors receive at least one Qualified Bid by the Bid Deadline.

The Sale Hearing will take place before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Sale Hearing may be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing.

If the Selling Debtor Entities do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Sellers will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Purchaser following entry of the Sale Approval Order.  If the Selling Debtor Entities do receive additional Qualified Bids, then at the Sale Hearing the Sellers will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  The Selling Debtor Entities' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either or any such bid(s), which acceptance will occur only upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either the Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Sellers will be permitted to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

## **Return Of Good Faith Deposits**

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Sellers.  On the Return Date, the Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

## **Reservations Of Rights**

The Sellers, after consultation with the agents for their secured lenders and the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Purchaser's bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Selling Debtor Entities, their estates, and their stakeholders as determined by the Selling Debtor Entities in their sole discretion.