**Hearing Date: January 10, 2007**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan, III (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

DEBTORS' AMENDED STATEMENT OF DISPUTED ISSUES WITH
RESPECT TO PROOF OF CLAIM NUMBER 16573 (TOWER AUTOMOTIVE, INC.)

("AMENDED STATEMENT OF DISPUTED ISSUES – TOWER AUTOMOTIVE")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Amended Statement Of Disputed Issues (the "Statement Of Disputed Issues") With Respect To Proof Of Claim Number 16573 filed by Tower Automotive, Inc. ("Tower") and respectfully represent as follows:

Background

1. On July 31, 2006, Tower filed Proof of Claim No. 15221 against DAS LLC, which asserts an unsecured non-priority claim in an unliquidated amount.

2. On March 14, 2007, Tower filed Proof of Claim No. 16573 (the "Claim") against DAS LLC, which amends Proof of Claim No. 15221.  Tower asserts an unsecured non-priority claim of $14,540,878.50 and an unliquidated secured claim related to Tower's alleged rights to recover preferential transfers pursuant to 11 U.S.C. § 547.

3. On August 24, 2007, the Debtors objected to the Claim pursuant to the Debtors' Twentieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Insufficiently Documented Claims, (C) Claims Not Reflected On Debtors' Books And Records, (D) Untimely Claim, And (E) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Consensually Modified And Reduced Tort Claims, And Lift Stay Procedures Claims Subject To Modification (Docket No. 9151) (the "Twentieth Omnibus Claims Objection").

4. On September 24, 2007, the TAI Unsecured Creditors Liquidating Trust, as the estate representative of Tower, filed the Response Of The TAI Unsecured Creditors

Liquidating Trust To The Debtors' Twentieth Omnibus Claims Objection (Docket No. 9559) (the "Response").

Disputed Issues

5.    Even assuming Tower can establish the elements of a claim under section 547(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Claim should nevertheless be disallowed and expunged in its entirety. The entire amount that Tower seeks to recover as avoidable transfers is subject to the defenses provided for in section 547(c) of the Bankruptcy Code. The majority of the payments (the "Allegedly Avoidable Transfers") that Tower made to Delphi in the 90 days before Tower filed its chapter 11 petition (the "Preference Period") were made in the ordinary course of business under section 547(c)(2) of the Bankruptcy Code. The remainder of the Allegedly Avoidable Transfers were offset by new value that DAS LLC provided to Tower under section 547(c)(4) of the Bankruptcy Code. Accordingly, Tower cannot avoid any of the Allegedly Avoidable Transfers.

A.    <u>Payments That Tower Made In The Ordinary Course Of Business May Not Be Avoided</u>

6.    Section 547(c)(2) of the Bankruptcy Code provides that a debtor cannot avoid payments made in the ordinary course for debts incurred in the ordinary course of business. Specifically, section 547(c)(2) in effect as of the filing of the Debtors' voluntary petitions in these cases states that a transfer may not be avoided to the extent that such transfer was: (i) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (ii) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (iii) made according to ordinary business terms. The majority

3

of the payments that Tower seeks to recover satisfy these elements and thus were made in the ordinary course of business.

       7.      To determine whether the Allegedly Avoidable Transfers were made in the ordinary course of business, the Debtors examined Tower's payment history for the twelve month period immediately preceding the Preference Period.  In that year, the average number of days outstanding between the ship date and the payment date was 61.7 days, the weighted average was 57.5, and the median was 57 days (see <u>Exhibit A</u>).  During the Preference Period, the average number of days outstanding between the ship date and the payment date was 58.4, the weighted average 57.5, and the median was 58.  Because the variance among these numbers within each period is very small, there is a normal distribution pattern for each period.  After both normal distributions are plotted, the same pattern of payments is observable and the majority of observations cluster around the 40 to 75 day range (see <u>Exhibit A</u>).  Accordingly, an ordinary course payment period range of 40 to 75 days outstanding was used.  When these ordinary course payments are subtracted from the amount of the Allegedly Avoidable Transfers, the remainder of the claim before considering the Debtors' new value defense is $2,157,155.19.[1]

---

[1] Attached hereto as <u>Exhibit B</u> is a chart prepared by the Debtors reflecting the amount of payments outside the historical normal distribution pattern of 40 to 75 days. Even if the ordinary course payment period is viewed more narrowly, using the central range representing the middle fifty percent of observations (48 to 69 days), the remainder of the Allegedly Avoidable Transfers minus ordinary course payments would be $5,678,246.13 (see <u>Exhibit B</u>). These figures are based on the Debtors' preliminary analysis and thus are subject to change as appropriate upon further investigation and after discovery in this matter.

B.  **The Allegedly Avoidable Transfers Must Be Offset By New Value That Delphi Gave To Tower**

8.  DAS LLC continued to ship goods to Tower during the Preference Period, as evidenced by invoices provided to Tower during the Preference Period. Section 547(c)(4) of the Bankruptcy Code provides that a transfer may not be avoided if, after such transfer, the creditor gave new value to or for the benefit of the debtor (the "New Value Exception"). New value is defined as money or money's worth in goods, services, or credit.

9.  Those goods provided during the Preference Period constitute new value. The amount of Tower payments remaining after ordinary course payments are subtracted from the Allegedly Avoidable Transfers ($2,157,155.19) is fully offset by DAS LLC's provision to Tower of new value during the preference period.[2]

10. Because all of the Allegedly Avoidable Transfers fall under either the the ordinary course defense or New Value Exception provided in section 547(c) of the Bankruptcy Code, the Claim should be disallowed and expunged in its entirety.

C.  **The Payments In Question Each Related To A Shipment Of Goods Constituting An Equivalent Exchange Of Value**

11. The payments in question all related to invoices for the prior shipment of goods by DAS LLC to Tower. Although Tower alleges in the Claim that these payments are potentially avoidable as fraudulent transfers pursuant to section 548(a)(1)(B) of the Bankruptcy

---

[2] Attached hereto as Exhibit C is a chart prepared by the Debtors reflecting the amount of possible avoidable preference payments after subtracting the ordinary course payments made within 40 to 75 days of the ship date as well as subsequent new value that DAS LLC provided to Tower. The chart reflects that all of the Allegedly Avoidable Transfers fall under either the Debtors' ordinary course defense or the New Value Exception. Even if the ordinary course payment period is viewed more narrowly, using the central range representing the middle fifty percent of observations (48 to 69 days), the result does not change (see Exhibit C). Indeed, by itself, the New Value Exception would reduce the Allegedly Avoidable Transfers to $2,797,731.99 (see Exhibit C).

5

Code, these payments were each made in relation to an equivalent exchange of value. Section 548(a)(1)(B) only applies where the transferor received "less than a reasonably equivalent value in exchange for such transfer." Here, Tower's payments were all in exchange for goods provided by the Debtors and thus cannot be recovered.

Reservation Of Rights

12.  This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"). Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim in its entirety and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       November 19, 2007

                                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                      By:   */s/ John Wm. Butler, Jr.*
                                          John Wm. Butler, Jr. (JB 4711)
                                          Albert L. Hogan, III (AH 8807)
                                          John K. Lyons (JL 4951)
                                          Ron E. Meisler (RM 3026)
                                      333 West Wacker Drive, Suite 2100
                                      Chicago, Illinois  60606
                                      (312) 407-0700

                                      - and -

                                      By:   */s/ Kayalyn A. Marafioti*
                                          Kayalyn A. Marafioti (KM 9632)
                                          Thomas J. Matz (TM 5986)
                                      Four Times Square
                                      New York, New York  10036
                                      (212) 735-3000

                                      Attorneys for Delphi Corporation, et al.,
                                        Debtors and Debtors-in-Possession