REED SMITH LLP
By: Elena Lazarou (EL 5681)
599 Lexington Avenue, 29th Floor
New York, NY 10022
(212) 521-5400

and

Randall D. Lehner (IL # 6237535)
Max A. Stein (IL #6275993)
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
(312) 207-1000
(admitted *pro hac vice*)

Attorneys for Claimant
Siemens VDO Automotive SAS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et al.*, | ) | Jointly Administered |
| Debtors. | ) | |

**CLAIMANT SIEMENS VDO AUTOMOTIVE SAS'S RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEBTORS' MOTION FOR A SUMMARY JUDGMENT EXPUNGING CLAIM NUMBER 2247 ASSERTED BY SIEMENS VDO AUTOMOTIVE S.A.S.**

Claimant Siemens VDO Automotive SAS ("VDO"), by their attorneys Reed Smith LLP, respectfully submits, pursuant to Local Bankruptcy Rule 7056-1, this response to the statement of undisputed material facts filed by Debtor Delphi Corporation ("Delphi"). This response supplements the facts set forth in the background section of VDO's Initial Memorandum in Support of Claim Number 2247. In response, VDO states as follows:

1. On or about April 6, 2000, the Debtors' Jane Thompson and Brigette Colter sent a "Request for Quotation" ("RFQ") to Mike Tramutolo of Siemens VDO Automotive S.A.S. ("VDO"). The RFQ stated that the Debtors would be "evaluating a select group of suppliers" to manufacture electronic control units ("ECUs") to be used in the 2004 and later model years. (RFQ at 1, annexed to the Declaration of VDO's Senior Business Manager Michel Poulet dated October 9, 2007 ("VDO Decl."), Exh. A.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

2. The number of ECUs the Debtors would need, the RFQ stated, was "subject to some variation" because the RFQ's numbers were "projections." The RFQ also stated that its dates were "generic" for "planning purposes only." (RFQ at 1-2.)

**VDO RESPONSE:** VDO does not contest the facts stated in the first sentence. VDO states that the second sentence mischaracterizes the RFQ, which refers to a specifically identified timetable as "generic" and which should be used "for planning purposes only." (RFQ at 2.) VDO contests that the RFQ states that all dates listed in the RFQ are "generic" or for "planning purposes only."

3. The RFQ stated that, "[t]he Supplier bears the cost of development. Cost recovery can occur only from within the production piece price, production tooling and / or the Development/Alpha/Beta/Prototype piece price and tooling." (RFQ at 2.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. VDO further states that it specifically sought and obtained provisions entitled "Program Cancellation" and "Unit Prices and Annual Volumes" that would enable VDO to recover its costs of development, as well as other costs incurred to support these Delphi parts programs, in the event that Delphi failed to order a sufficient number of parts to enable VDO to recover these costs through per-part-pricing. (Poulet Decl. ¶ 10.)

4. The RFQ stated that the Debtors would pay "tooling costs." (RFQ at 5.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

5. The RFQ referred to and included the Debtors' Long Term Contract ("LTC") and Delphi Automotive Systems General Terms and Conditions ("T&C"), which the LTC expressly incorporated. (*See* VDO Decl., 913; *id*., Exh. D at ¶ 5.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

6. On June 8, 2000, VDO's Mike Tramutolo emailed to request changes in the LTC. Mr. Tramutolo stated that the LTC allowed the Debtors to "resource" with a new supplier "as early as 31-Jul-05. We would only be 2 years into production and would not have recovered our amortized costs." (Email, annexed to the Declaration of Jane S. Thompson dated October 30, 2007 ("Thompson Decl.") as Exhibit 1.) Tramutolo's email continued, "Can you accommodate us for this issue? Either, Delphi could change the verbiage or we could add a noted exception." (*Id*.)

**VDO RESPONSE:** VDO does not contest that Mike Tramutolo sent an email that, in part, contained the quotations included in this paragraph. Mr. Tramutolo's email began, however, by stating that VDO had "one concern with the LTC Section-4." (Thompson Decl. Ex. 1.) That section, entitled "Right to Purchase from Others," granted Delphi the right to purchase from other suppliers the parts for which it was contracting to purchase its requirements from VDO. (LTC at 2, Ex. A.) Thus, Mr. Tramutolo's email communicated VDO's objection to Delphi's attempt to reserve for itself the right to purchase from other suppliers the parts it was potentially contracting to purchase only from VDO.

7. The Debtors refused Tramutolo's request in an email from Darrell Lewis dated June 12, 2000. The email stated: "These are our standard terms. You need to accept our standard terms in total, without change....I hope you can get Siemens to agree to the standard terms, as any deviation will weight heavily in our selection." (Thompson Decl., Ex. 1.)

**VDO RESPONSE:** VDO does not contest that Mr. Lewis sent an email that, in part, contained the quotation included in this paragraph. The fact that Mr. Lewis sent such an email, however, does not indicate that VDO agreed to the standard terms that Mr. Lewis was seeking. To the contrary, as facts set forth below demonstrate, VDO did not agree to those terms and instead proposed modifications to them. Further, notwithstanding Mr. Lewis's statement that VDO's deviation from Delphi's terms would weigh heavily in its selection, Delphi nonetheless selected VDO as its supplier.

8. VDO responded to the RFQ in a letter from Mike Tramutolo and Michel Poulet dated July 20, 2000. (*See* VDO Decl., ¶ 5; *id*., Exh. B.) VDO refers to this letter as the "Offer."

**VDO RESPONSE:** VDO disputes the facts stated in this paragraph. VDO did send a letter in response to Delphi's RFQ on July 20, 2000, providing Delphi with the quote requested from VDO. (Poulet Decl. ¶ 5.) That letter, however, contained only a portion of VDO's Offer; the complete terms of VDO's Offer are set forth in (a) the July 20, 2000 letter, (b) Delphi's Long Term Contract, and (c) Delphi's Terms and Conditions. (Poulet Decl., ¶¶ 5-7.)

9. The "Offer" proposed prices for ECUs and discussed a number of technical issues. The "Offer" also stated that, "Siemens reserves the right to submit to Delphi revised pricing in instances where the actual annual volume purchased is below the quoted volume by 20% or more" and that, "[i]n the event that the program covered in this letter is cancelled prior to production, without fault by Siemens, an equitable cancellation charge will be negotiated to cover the appropriate costs incurred by Siemens in supporting this program." (VDO Decl., Exh. B.)

**VDO RESPONSE:** VDO does not contest that its Offer included the quotation set forth in this paragraph.

10. In his Declaration dated October 9, 2007, VDO's Michel Poulet states, "[a]fter VDO submitted its quote, Delphi informed VDO that it required VDO to include a signed version of Delphi's Long Term Contract as part of its submission before Delphi would consider the quotation. In response to this request, VDO, as instructed, forwarded a version of Delphi's Long Term Contract signed only by it." (VDO Decl., ¶ 6.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. VDO further states that Delphi required VDO to sign the Long Term Contract as part of its submission prior to Delphi selecting VDO, or any other company, as its supplier.

11. In a letter headed "Nomination Letter" and dated August 2, 2000, the Debtors stated that they had selected VDO to supply the ECUs for model years 2004 through 2008. (*See* VDO Decl., Exh. C.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. VDO further notes that, in informing VDO of its decision, Delphi told VDO: "This decision was based, in part, on your final quote and pricing matrix and your technical presentations." (Poulet Decl. Ex. C.)

12. The Debtors' "Nomination Letter" stated that the Debtors "continue to disagree" with VDO concerning an aspect of VDO's pricing for ECUs. (*See* VDO Decl., Exh. C.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. Specifically, Delphi stated its continued disagreement with VDO's flash pricing quotation. VDO further notes that Delphi also stated that its nomination of VDO was "contingent upon" VDO accepting Delphi's position regarding service part pricing. These were the only two aspects of

VDO's Offer to which Delphi noted any disagreement. Delphi neither objected to any other aspect of VDO's Offer nor made the nomination contingent upon VDO's acceptance of Delphi's position on any other term where the terms set forth in VDO's Offer differed from Delphi's RFQ, Long Term Contract, or Terms and Conditions. (Poulet Decl. Ex. C.)

13. The Debtors' Nomination Letter stated: "Provided that ... your company is able to meet or exceed the agreed upon terms for service, quality, technology, price, investment/tooling and timing, we intend to execute (sign) the Long Term Contract already agreed to with Siemens on these programs." (VDO Decl., Exh. C.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. VDO does contest, however, the existence of a Long Term Contract agreed to between Delphi and VDO prior to Delphi's Nomination Letter communicating its acceptance of VDO's Offer.

14. Despite the Nomination Letter's insistence on the terms of the LTC, Michel Poulet's Declaration dated October 8, 2007 describes the Letter as "accepting VDO's offer." (*See* VDO Decl., ¶ 11.)

**VDO RESPONSE:** VDO disputes the facts stated in this paragraph. Delphi's Nomination Letter includes no "insistence on the terms of the LTC." To the contrary, as stated in VDO Response to Paragraph 13, Delphi's Nomination Letter raised only two issues regarding VDO's Offer. First, Delphi objected to one pricing aspect; that pricing aspect—flash pricing—appears in neither Delphi's Long Term Contract nor the Terms and Conditions Delphi incorporated into it. (Exs. A, C.) Second, Delphi made its nomination of VDO contingent upon VDO's agreement regarding service part pricing. (Id.) Delphi did not insist on any other terms of the Long Term Contract. (Ex. C.)

15. On or about October 31, 2000, the Debtors signed the copy of the LTC that had been signed by VDO. (*See* VDO Decl., ¶ 13; *id*., Exh. D.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. To the extent that Delphi argues that this act modified the terms of the agreement between the parties

formed by Delphi's acceptance of VDO's Offer, VDO disputes that any modification occurred at this time, including, but not limited to, the revival of terms rejected by VDO in its Offer.

16. By signing the LTC, the Debtors agreed to purchase "approximately 100 percent (100%) of [their] production and service requirements" for the ECUs specified in the LTC from VDO. (*See* VDO Decl., ¶ 13; *id*., Exh. D.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of the Long Term Contract.

17. The LTC provided that "[a]ll Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders ... issued by Buyer from time to time." (VDO Decl., Exh. D at ¶ 5.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of the Long Term Contract.

18. As stated in the RFQ with which the LTC had originally been sent, the LTC made VDO responsible for its own development costs. (*See* LTC; RFQ.)

**VDO RESPONSE:** VDO does not contest that Delphi's RFQ states that "[t]he Supplier bears the cost of development." VDO disputes that this statement ever became part of the parties' Contract because VDO rejected this proposal in its Offer. (Poulet Decl. ¶¶ 9-10.) Moreover, VDO notes that, according to Delphi's own argument, any statements in the RFQ were superseded by the Long Term Contract that Delphi now argues sets forth the entirety of the parties' agreement.

19. The LTC did not state that the Debtors were required to pay a "cancellation charge" or to compensate VDO if GM needed fewer controllers. (*See* LTC.)

**VDO RESPONSE:** VDO does not contest that the Long Term Contract, drafted entirely by Delphi, does not include a provision requiring Delphi to pay a cancellation charge or compensate VDO if GM needed fewer controllers. VDO further states, however, that the parties' Contract contains a provision requiring Delphi to negotiate a cancellation charge in the

event of cancellation of a program provided for under that Contract. (Poulet Decl. Ex. B (under the headings of "Unit Prices and Annual Volumes" and "Program Cancellation").)

20. The LTC stated that the Debtors would not be liable for any increases in the Seller's costs or "failure to achieve any expected cost savings." (*See* LTC, ¶ 3.)

**VDO RESPONSE:** VDO does not contest that the Long Term Contract, drafted entirely by Delphi, states that Delphi would not be liable for any increases in VDO's costs or "failure to achieve any expected cost savings." VDO further states that it rejected this proposed term, meaning it never became part of the parties' contract. The parties' Contract contains a provision allowing VDO to recover these costs where Delphi's actual annual volume purchased is below its quoted volume by 20% or more. (Poulet Decl. Ex. B (under the heading of "Unit Prices and Annual Volumes").)

21. The T&C stated that they were incorporated into "each purchase order, release, requisition, work order, shipping instruction, specification and other document ... relating to the goods and/or services to be provided" pursuant to the parties' contract. (T&C, ¶ 1.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions. VDO further notes that the quoted provision states that "such documents are collectively referred to as this 'Contract'." Therefore, any other document that relates to the goods and services provided by VDO under the parties' agreement is part of the Contract. (Poulet Decl. Ex. A, T&C at ¶ 1.)

22. The T&C provided that, once a supplier had accepted the Debtors' contract or had begun work, it accepted the T&C "in their entirety without modification." (T&C, ¶ 1.)

**VDO RESPONSE:** VDO contests that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions. The provision states that if VDO, as the Seller, "accepts this **Contract** in writing or commences any of the work or services which are the subject of this **Contract**, Seller will be deemed to have accepted this Contract and these General Terms and Conditions in their entirety without modification." (T&C ¶ 1 (emphasis added).) As

it uses the term “Contract,” and Delphi defined that term to include the terms VDO proposed in its Offer, this provision means that VDO agreed to be bound by that “Contract.”

To the extent Delphi contends VDO accepted Delphi’s Terms and Conditions in their entirety and without modification, VDO contests this paragraph. VDO states that, rather than accepting Delphi’s Long Term Contract and its Terms and Conditions without modification, VDO’s Offer rejected and modified portions of those terms. Delphi agreed that those modified terms would be part of the parties’ Contract by accepting VDO’s Offer through its Nomination Letter, including VDO’s modification to the terms in Delphi’s Long Term Contract and Terms and Conditions.

23. The T&C provided that, “[a]ny additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.” (T&C, ¶ 1.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one provision in Delphi’s Terms and Conditions.

24. The LTC restricted the Debtors’ rights to buy from other suppliers. (LTC, ¶¶ 4-5.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. Both Delphi’s Long Term Contract and the parties’ actual agreement restricted, but did not eliminate, Delphi’s ability to purchase from other suppliers the same parts it contracted to buy from VDO. The terms of those restrictions are set forth in Paragraph 4 of the Long Term Contract, titled “Right to Purchase from Others,” in which Delphi described how the parties’ Contract did not make VDO Delphi’s exclusive provider for the parts VDO was to supply under that Contract. (Poulet Decl. Ex. D, ¶ 4.)

25. The T&C stated that, if the Debtors determine “that the requirements of Buyers’ customers or market, economic or other conditions require changes in delivery schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled

shipments without entitling Seller to a price adjustment or other modification of this Contract." (T&C, ¶ 2.3.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions. The parties' Contract, however, demonstrated VDO's rejection of the portion of the provision that denied VDO a price adjustment, an offer by VDO that included the right to a price adjustment, and Delphi's acceptance of that offer. (Poulet Decl. ¶¶ 9-10, Exs. B (under the heading of "Unit Prices and Annual Volumes") and D.)

26. The T&C stated that the Debtors had the right "at any time [to] require Seller to implement changes to the specifications or design" of the ECUs, and to determine the amount of "any equitable adjustment in price," subject only to "work[ing] to resolve [any] disagreement in good faith." (T&C, ¶ 3.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions.

27. The T&C provided that the Debtors had the right to substitute goods or terminate the LTC if "Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract." (T&C, ¶ 6.)

**VDO RESPONSE:** VDO contests that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions. Paragraph 6 of the Terms and Conditions is entitled "Force Majeure" and requires that the Buyer's (Delphi's) inability to accept delivery, buy or use the goods covered by the Contract must be without Delphi's "fault or negligence" and must be beyond Delphi's "reasonable control." (T&C ¶ 6.)

28. The T&C required VDO to warrant that its ECUs would be "fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer." (T&C, ¶ 7.1.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions.

29. Although the T&C gave the Debtors a right to "terminate all or any part of this Contract, at any time and for any reason" (T&C, Q 11), the LTC limited this provision: "the

Buyer's right to 'terminate for convenience' under the General Terms and Conditions will be inapplicable to this Contract until the end 2004 model year." (LTC, ¶ 5.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one provision in Delphi's Terms and Conditions. To the extent that Delphi construes this provision to mean that it was contractually obligated to purchase the parts covered by the parties' Contract exclusively from VDO, VDO disputes this. To the contrary, Delphi's own language, set forth in a provision it entitled "Right to Purchase from Others," demonstrates that Delphi was not contractually bound to purchase these parts exclusively from VDO. (Poulet Decl. Ex. D, ¶ 4.)

30. After the parties signed the LTC, they continued to discuss issues relating to production of the ECUs. (*See* VDO Mem. at 6.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

31. More than two years after the LTC was signed, on or about December 13, 2002, VDO sent the Debtors a letter (the "updated quote") modeled on their "Offer" of July 20, 2000. (*See* VDO Decl., Exh. E.)

**VDO RESPONSE:** VDO does not dispute that it provided Delphi with a letter setting forth its Updated Quote as shown in Exhibit E to the Poulet Declaration. VDO further states that, as it states on its face, the Updated Quote accounted for information Delphi provided to VDO during the parties' discussions in Toulouse, France on November 18, 2002. (Poulet Decl., Ex. E at p. 1.)

32. The "updated quote" contained terms even more favorable to VDO than those in its July 20, 2000 "Offer." For example, VDO now reserved the right to submit revised pricing if "annual volume is above or below the quoted volume by 10% or more," whereas two years earlier, the figure had been 20%. (*See* "updated quote" at 1, VDO Decl., Exh. E; "Offer," VDO Decl., Exh. B.)

**VDO RESPONSE:** VDO does not dispute that it proposed the terms set forth in this paragraph as a modification to the parties' Contract. (Poulet Decl. Ex. E at 1.) VDO further states that this proposed modification sought to change the 20% volume shortfall threshold,

previously agreed to by the parties in their Contract, to the 10% threshold proposed in the Updated Quote. (*Compare* Poulet Decl. Ex. B (under the heading of "Unit Prices and Annual Volumes") *with* Poulet Decl. Ex. 5 (under the same heading.))

33. VDO's "updated quote" requested an "equitable cancellation charge" in the event of "Program Cancellation." ("Updated quote" at 3.)

**VDO RESPONSE:** VDO denies that it requested an "equitable cancellation charge" in the Updated Quote. VDO instead states that its Updated Quote reaffirmed the equitable cancellation charge that the parties' agreed to include in their Contract. (Poulet Decl. Exs. B (under the heading of "Program Cancellation") and E at p. 3.)

34. The "updated quote" stated: "In the event that the program covered in this letter is cancelled prior to the launch of the production tooling at Siemens VDO Automotive S.A.S., without fault by Siemens VDO Automotive S.A., then equitable cancellation charge, including [VDO] R&D cost, will be negotiated to cover the appropriate costs incurred by [VDO] in supporting this program." ("Updated quote" at 3.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

35. The "updated quote" does not state whether "the program" meant all types of ECU identified in the letter, what "cancellation" meant, how an "equitable" charge would be determined, what "appropriate costs" were, or what the Debtors' obligations would be if negotiation concerning "appropriate costs" did not yield agreement. (*Id*.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. To the extent that Delphi argues that there exists or existed some obligation to include these terms in the Updated Quote, VDO disputes any such argument.

36. VDO's "updated quote" stated that "[t]otal development cost" for the ECUs was $3,625,000 and proposed that it be amortized over model years 2005 and 2006. (VDO Decl., Exh. E at 2.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of the quoted provision of the Updated Quote. VDO further notes that the Updated Quote also indicates that the parties agreed to amortize those development costs. (Poulet Decl. Ex. E at p. 2.) Delphi did not dispute that the parties reached such an agreement, either then,

(Poulet Decl. Ex. F), or now. (Delphi's Statement of Uncontested Facts ¶¶ 36-37.) VDO also never stated that this amount represented all of the costs it incurred for the various programs described in the Updated Quote.

37. The Debtors' emailed response to VDO's "updated quote" stated: "I think we are real close to getting all the details behind us, updating the Long Term Contract and issuing the additional tooling purchase orders ..." (*See* Email, VDO Decl., Exh. F.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of one sentence in an e-mail from Delphi's Mike Shields. The remainder of that sentence further clarified that the additional tooling purchase orders were "for some of the minor tooling changes and the bracket tooling." (Poulet Decl. Ex. F.)

38. The parties did not sign an updated or revised LTC at any time after the Debtors signed the original LTC in October 2000. (Thompson Decl., ¶ 12.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

39. In December 2003, the Debtors paid VDO $618,000 for production tooling. (Thompson Decl., ¶¶ 13; *id*., Exh. 2.)

**VDO RESPONSE:** VDO does not contest that Delphi paid an amount somewhere between $500,000 and $618,375 towards production tooling. (Thompson Decl. Ex. 2 (Delphi Purchase Order DCS94056 showing base unit price of $500,000; VDO Invoice No. 59060092816 totaling $598,000; and printout showing amount of $618,375 related to PO # DCS94056.) That amount, however, did not cover the full costs of production tooling. As VDO communicated to Delphi in a December 6, 2002 email, the total for production tooling was $1,164,400. Thus, Delphi's payment of an amount between $500,000 and $618,375 left an unpaid balance of between $546,025 and $664,400 and for production tooling. (*Compare* Thompson Decl. Ex. 2 *with* Poulet Supp. Decl. Ex. K.)

40. To effectuate the purchase, the Debtors sent VDO a purchase order for the tooling which expressly incorporated, and reprinted in full, the T&C. (*Id*.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph. VDO does, however, contest that Delphi's attachment of its Terms and Conditions to this purchase order somehow modified the terms of the parties' agreement. VDO further states that because the parties' prior agreement reflected VDO's rejection of numerous portions of Delphi's Terms and Conditions, Delphi's incorporation of its Terms and Conditions into later documents cannot restore those portions already rejected by VDO.

41. Assuming VDO's numbers, the Debtors purchased 8,208 ECUs from VDO for the GMX 245 program and 16,325 ECUs for the GMX 295 program by the date of VDO's Claim. (VDO Decl., ¶ 27.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

42. The Debtors purchased the ECUs that they purchased for the GMX 245 and 295 programs pursuant to purchase orders. All of the purchase orders expressly incorporated the Debtors' T&C. (Thompson Decl., ¶ 14; *id*., Exh. 3.)

**VDO RESPONSE:** VDO does not contest that purchase orders, including purchase orders for the GMX 245 and GMX 295 programs, are attached as Exhibit 3 to the Thompson Declaration. VDO does dispute, however, that these are all of the purchase orders issued for the GMX 245 and GMX 295 programs. VDO further disputes that Delphi's attachment of its Terms and Conditions to these purchase orders somehow modified the terms of the parties' prior agreement. VDO further states that because the parties' prior agreement reflected VDO's rejection of numerous portions of Delphi's Terms and Conditions, Delphi's incorporation of its Terms and Conditions into later documents cannot restore those portions already rejected by VDO.

43. Except when the purchase orders called for specific quantities of ECUs, they stated that the parties' contract was for "100%" of the Debtors' requirements and that the LTC controlled the parties' transaction. These purchase orders further stated (except that some omitted "2000" in the final sentence): "This agreement reflects the latest part numbers, pricing and timing for Suspension ECUs described in the existing Long Term Contract (LTC) executed by buyer and seller as of June 16, 2000. All other Terms and Conditions of June 16, 2000 LTC remain in effect." (*See* Thompson Decl., ¶ 15; *id*., Exh. 3.)

**VDO RESPONSE:** VDO does not contest that certain of Delphi's purchase orders state: "This Requirement Contract is for 100% unless otherwise specified." VDO disputes that there exists a "Long Term Contract (LTC) executed by buyer and seller as of June 16, 2000." As of June 16, 2000, VDO had not even submitted a response to Delphi's RFQ, let alone executed a contract with Delphi. (Poulet Decl. Ex. B.) Further, even Delphi itself admits in this Statement that it did not execute the LTC until October 31, 2000. (¶ 15.) VDO further disputes Delphi's contention that all of the terms of the June 16, 2000 LTC, even if it is deemed to refer to Delphi's Long Term Contract, were in effect. The terms and conditions of the Long Term Contract are only in effect to the extent they were not rejected by VDO in its Offer, which was accepted by Delphi.

44. The Debtors also issued what VDO calls "a blanket purchase order for the GMT 800 program" on July 30, 2004. (*See* VDO Decl., ¶ 30; *id.*, Exh. J.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

45. The Debtors' "blanket purchase order," like the purchase orders the Debtors issued for the GMX 245 and 295 ECUs, provided that "[t]his Requirement Contract is for 100% unless otherwise specified" and that "the Terms and Conditions of June 16, 2000 LTC remain in effect." (*See id.*; Thompson Decl., Exh. 3.)

**VDO RESPONSE:** VDO does not contest that the blanket purchase order states: "This Requirement Contract is for 100% unless otherwise specified." VDO disputes that there exists a "Long Term Contract (LTC) executed by buyer and seller as of June 16, 2000." As of June 16, 2000, VDO had not even submitted a response to Delphi's RFQ, let alone executed a contract with Delphi. (Poulet Decl. Ex. B.) Further, even Delphi itself admits in this Statement that it did not execute the LTC until October 31, 2000. (¶ 15.) VDO further disputes Delphi's contention that all of the terms of the June 16, 2000 LTC, even if it is deemed to refer to Delphi's Long Term Contract, were in effect. The terms and conditions of the Long Term Contract are only in effect to the extent they were not rejected by VDO in its Offer, which was accepted by Delphi.

46. The "blanket purchase order" stated that, "[a]ny additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions) which Seller proposes will be deemed rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing." (*See* VDO Decl., Exh. J.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph, but does contest the relevance of these facts to the disputed issues.

47. Because of GM's requirements, the Debtors could not use VDO's ECU for the GMT 800 program. (*See* Thompson Decl., ¶ 16.)

**VDO RESPONSE:** VDO disputes the facts stated in this paragraph. VDO states that these facts are premature and contests the relevance of the alleged facts to the issues to be briefed pursuant to the parties' October 10, 2007 Stipulation. VDO reserves the right to provide further evidence and contest the facts set forth in this paragraph during the Court's subsequent consideration of VDO's claim pursuant to the Court's Claim Procedures Objection Order.

48. The Debtors were able to use substantially the same ECUs that VDO had offered to manufacture for the GMT 800 program, with different connectors, for the GMT 900 program. (*See* Thompson Decl., ¶ 17.)

**VDO RESPONSE:** Although VDO does not contest the facts stated in this paragraph, VDO states that these facts are premature and contests the relevance of the alleged facts to the issues to be briefed pursuant to the parties' October 10, 2007 Stipulation. Further, without waiving VDO's objection to the relevance of these facts, VDO states that Delphi requested a separate quotation for the GMT 900 program. VDO provided that quotation on March 30, 2004 and Delphi accepted it, through a nomination letter, on July 1, 2004. (Poulet Supp. Decl., ¶ 6, 9; Exs. L and M.)

49. From July 8, 2005 through October 27, 2007, the Debtors purchased approximately 400,000 ECUs from VDO for the GMT 900 program - under the LTC - at prices between $52.30 and $56.26 each. (*See* Thompson Decl., ¶ 18; *id*., Exh. 3.)

**VDO RESPONSE:** VDO states that these allegations are premature and contests the relevance of the alleged facts to the issues to be briefed pursuant to the parties' October 10, 2007

Stipulation. VDO further disputes that the purchase orders attached as Exhibit 3 to the Thompson Declaration provide any information regarding the number of ECUs purchased. VDO reserves the right to provide further evidence and contest the facts set forth in this paragraph during the Court's subsequent consideration of VDO's Claim pursuant to the Court's Claim Procedures Objection Order.

50. On or about January 24, 2006, VDO filed Proof of Claim No. 2247 (the "Claim") against Delphi Automotive Systems LLC. The Claim states that it seeks more than $9.3 million. (*See* Thompson Decl., Exh. 4.)

**VDO RESPONSE:** VDO does not contest the facts stated in this paragraph.

51. The Claim states that it seeks $7,763,230 for "Non amortized R&D costs due to [VDO] ... following cancellation of GMT 800 application and volume shortfall of GMX 245 and GMX 295 applications." (*See* Thompson Decl., Exh. 4.)

**VDO RESPONSE:** VDO does not contest that this paragraph accurately quotes a portion of VDO's Claim.

52. The Claim states that it seeks approximately $1.5 million in trade payables. (*See* Thompson Decl., Exh. 4.)

**VDO RESPONSE:** Although VDO does not contest that this paragraph accurately quotes a portion of VDO's Claim, VDO does contest that the facts stated in this paragraph have any relevance to the issues to be briefed pursuant to the parties' October 10, 2007 Stipulation.

53. VDO sold the trade payables portion of its Claim to Goldman Sachs Credit Partners L.P. in or about May 2006. Although the Debtors repeatedly requested that VDO reduce the amount of its Claim to account for the sale, VDO initially refused to do so. VDO eventually agreed to reduce the Claim to account for its sale of the Trade Payables portion of its Claim in a stipulation executed on October 24, 2007.

**VDO RESPONSE:** Although VDO does not contest that it sold a portion of its claim to Goldman Sachs Credit Partners L.P. or that the parties agreed to a stipulation reducing VDO's Claim by the portion sold to Goldman Sachs Credit Partners L.P., VDO does contest that the facts stated in this paragraph have any relevance to the issues to be briefed pursuant to the

parties' October 10, 2007 Stipulation. Moreover, any implication that VDO was not cooperative in resolving disputes concerning the portion of the Claim sold to Goldman Sachs Credit Partners L.P., which was allowed almost in its entirety pursuant to the stipulation executed on October 24, 2007, is unsupported in this Statement of Facts and contrary to the parties' dealings.

54. In VDO's February 2007 "Supplemental Response" to the Debtors' objection to its Claim, VDO provided a one-page itemization of the Claim's components. (See Thompson Decl, Exh. 5.) The itemization shows that more than $1.2 million of VDO's Claim does not represent reimbursement of development costs, but rather "missing" profit. (*See id.*)

**VDO RESPONSE:** Although VDO does not contest the facts set forth in this paragraph, VDO states that these facts are premature and contests that the facts stated in this paragraph have any relevance to the issues to be briefed pursuant to the parties' October 10, 2007 Stipulation.

55. Despite the Debtors' requests, VDO has provided no further detail concerning the calculation of its Claim since it filed its "Supplemental Response."

**VDO RESPONSE:** VDO contests the facts set forth in this paragraph. VDO states that these allegations are premature and contests that the allegations stated in this paragraph have any relevance to the issues to be briefed pursuant to the parties' October 10, 2007 Stipulation. VDO reserves the right to provide further evidence and contest the facts set forth in this paragraph during the Court's subsequent consideration of VDO's claim pursuant to the Court's Claim Procedures Objection Order.

Dated: November 19, 2007

Respectfully submitted,

**REED SMITH LLP**

By: /s/ Elena P. Lazarou
Elena P. Lazarou (EL 5681)
599 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 521-5400

and

Randall D. Lehner (IL # 6237535)
Max A. Stein (IL #6275993)
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
(312) 207-1000
(admitted *pro hac vice*)

Attorneys for Claimant Siemens VDO Automotive SAS