**Hearing Date And Time: December 20, 2007 at 10:00 a.m.**
**Response Date And Time: December 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                            :
      In re                       :     Chapter 11
                            :
DELPHI CORPORATION, et al.,   :     Case No. 05-44481 (RDD)
                            :
                            :     (Jointly Administered)
              Debtors.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

DEBTORS' TWENTY-THIRD OMNIBUS OBJECTION PURSUANT TO 11 U.S.C. § 502(b) AND
FED. R. BANKR. P. 3007 TO (A) DUPLICATE CLAIM, (B) CERTAIN EQUITY CLAIMS, (C)
INSUFFICIENTLY DOCUMENTED CLAIM, (D) CERTAIN CLAIMS NOT REFLECTED ON
DEBTORS' BOOKS AND RECORDS, AND (E) CERTAIN CLAIMS SUBJECT TO MODIFICATION,
MODIFIED CLAIMS ASSERTING RECLAMATION, CLAIM SUBJECT TO MODIFICATION THAT
IS SUBJECT TO PRIOR ORDER, AND MODIFIED CLAIM ASSERTING RECLAMATION THAT
<u>IS SUBJECT TO PRIOR ORDER</u>

("TWENTY-THIRD OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Twenty-Third Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To (A) Duplicate Claim, (B) Certain Equity Claims, (C) Insufficiently

Documented Claim, (D) Certain Claims Not Reflected On Debtors' Books And Records, And (E)

Certain Claims Subject To Modification, Modified Claims Asserting Reclamation, Claim Subject

To Modification That Is Subject To Prior Order, And Modified Claim Asserting Reclamation

That Is Subject To Prior Order (the "Twenty-Third Omnibus Claims Objection"), and

respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S.

Trustee appointed an official committee of equity holders (the "Equity Committee," and together

with the Creditors' Committee, the "Statutory Committees").

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) (the "Plan") and the Disclosure Statement With Respect To Joint Plan Of Reorganization

2

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264) (the "Disclosure Statement"). The Court commenced the hearing on the Disclosure Statement and related solicitation procedures motion on October 3, 2007 and has entered two orders with respect thereto on October 9, 2007 (Docket No. 10497) and October 19, 2007 (Docket No. 10662). On October 29, 2007, the Debtors filed a notice of potential amendments to the Disclosure Statement (Docket No. 10759), including pages marked to show changes from the September 6 version. On November 14, 2007 the Debtors filed a notice of further proposed amendments to certain appendices of the Disclosure Statement (Docket No. 10932), which included, among other things, certain pages of the Plan marked to show changes from the October 29, 2007 version. In addition, on November 16, 2007, the Debtors filed a notice of further proposed amendments to the Disclosure Statement (Docket No. 10964), which included certain pages marked to show changes from the October 29, 2007 version. No order approving the Disclosure Statement or confirming the Plan has yet been entered by this Court.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested herein are sections 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

6. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

3

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and continue their business operations without supervision from the Court.[2]

       7.     The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer ("OEM").

       8.     Delphi was incorporated in Delaware in 1998 as a wholly owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
2007.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso
receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of
which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31,
2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing
footprint and to lower its overall cost structure.

single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

10.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

11.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas:[4] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[5] second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors and a plan framework
support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally
terminated the equity purchase and commitment agreement and related plan framework support agreement.  On
July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment
agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan
investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill
Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate
of Pardus Capital Management, L.P. (collectively, the "New Plan Investors").  Under the Delphi-Appaloosa
EPCA, the New Plan Investors agreed to invest up to $2.55 billion in preferred and common equity in the
reorganized Delphi to support the Company's transformation plan and plan of reorganization.  This Court
approved the Delphi-Appaloosa EPCA on August 2, 2007.  On October 29, 2007, the Debtors filed a motion
requesting this Court's approval of certain proposed amendments to the Delphi-Appaloosa EPCA (Docket No.
10760).  In addition, on November 14, 2007 the Debtors filed certain additional proposed amendments to the
Delphi-Appaloosa EPCA.  A hearing on the motion and the additional proposed amendments is expected to
occur later this month.

[5]    As of August 29, 2007, this Court has entered the following orders approving settlements between Delphi and
each of its U.S. labor unions:
• International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America
(Docket No. 8693);
• International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication
Workers of America (Docket No. 9106);
• International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die
Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals
832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
• United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers
International Union and USW Local 87L (Docket No. 9169).
On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's
motion for order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of collective
bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

and labor costs and to ascertain GM's business commitment to the Company;[6] third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus;[7] fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint;[8] and fifth, devising a

workable solution to their current pension situation.[9]

---

[6]    On September 6, 2007, Delphi announced that it entered into agreements with GM consisting of a Global
Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA"). Delphi's
comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM. The GSA and
MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively. See Docket No. 9263. On October
29 and November 14, 2007, the Debtors filed certain proposed amendments to the GSA and MRA. The
approval of such amendments will be considered in connection with the confirmation of the Plan.

[7]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and
"non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to
maximize the value of their estates for stakeholders. During the 2006 and 2007 calendar years, for example, the
Debtors sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, and their brake
hose and catalyst businesses. The Debtors also obtained court approval for the sale of substantially all of the
assets of their Saltillo, Mexico brake plant business and of bid procedures related to the upcoming sale of
substantially all assets used in their interiors and closures businesses, and the manufacturing equipment and test
development equipment at the chassis facility in Saginaw, Michigan. In addition, as announced publicly, the
Debtors anticipate selling additional non-core assets, including, without limitation, their steering business.

[8]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
portfolio on core technologies for which the Company believes it has significant competitive and technological
advantages. The Company's revised operating structure consists of its four core business segments: Electronics
and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also
has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
Company's transformation plan. To ensure that their organizational and cost structure is competitive, the
Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter
Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").
The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable,
accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration
processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms
of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on
May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried
Employees (collectively, the "Pension Plans"). On July 13, 2007, the IRS modified the conditional funding
waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a
plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively.
On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees
Plan for the September 30, 2007 pension plan year. On October 25, 2007, this Court granted the Debtors'
motion for authority to perform under the terms of that waiver. On October 4, 2007, the IRS, at Delphi's

*(cont'd)*

E.    The Debtors' Plan Of Reorganization

13.    By filing the Plan and related Disclosure Statement, the Debtors reached

another key milestone in their chapter 11 cases.  The Plan is based upon a series of global

settlements and compromises that involve nearly every major constituency in the Debtors'

reorganization cases, including GM.  Attached as exhibits to the Plan are two agreements, the

GSA and the MRA, which provide for a comprehensive settlement with GM.  Both agreements

are subject to this Court's approval as part of the confirmation process.

14.    A hearing on the Debtors' solicitation procedures and Disclosure

Statement is expected to resume later this month.  Currently, the Debtors continue to expect that

they will emerge from chapter 11 during the first quarter of 2008.

15.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

16.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

_____

*(cont'd from previous page)*
    request, further modified the conditions to the initial waivers so that they are generally consistent with the
    conditions to the most recent waiver.

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

18.    In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News,

and the <u>Vindicator</u>, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

19.    Approximately 16,700 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 22 omnibus Claims[10] objections,

pursuant to which this Court has disallowed and expunged 9,300 Claims and modified

approximately 3,100 Claims.  In addition, the hearings with respect to approximately 860 Claims

have been adjourned to future claims hearings pursuant to the Claims Objection Procedures

Order (as defined below).

20.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

21.    In this Twenty-Third Omnibus Claims Objection, the Debtors are

objecting to 63 Proofs of Claim.

---

[10]    The Debtors filed objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451
and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585),
February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27,
2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos.
8270 and 8271), and July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151),
September 21, 2007 (Docket No. 9535), and October 26, 2007 (Docket No. 10738).

<u>Relief Requested</u>

22.     By this Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) the Claim set forth on <u>Exhibit A</u> hereto as a "Claim To Be Expunged" because it is duplicative of another Claim, (b) those Claims set forth on <u>Exhibit B-1</u> hereto because they were filed by holders of Delphi common stock solely on account of their stock holdings, (c) the Claim set forth on <u>Exhibit B-2</u> hereto because it was filed by a holder of Delphi common stock solely on account of its stock holdings and was untimely filed pursuant to the Bar Date Order, (d) the Claim set forth on <u>Exhibit C</u> hereto because it contains insufficient documentation in support of the Claim asserted, (d) those Claims set forth on <u>Exhibit D-1</u> hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records, and (e) the Claim set forth on <u>Exhibit D-2</u> hereto because it asserts a liability and dollar amount that is not reflected on the Debtors' books and records and was modified pursuant to a prior order.

23.     In addition, by this Twenty-Third Omnibus Claims Objection the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 (a) revising the asserted amount or classification, and/or changing the identity of the alleged Debtor with respect to the Claims set forth on <u>Exhibit E-1</u> hereto, (b) revising the asserted amount and/or classification, and/or changing the identity of the alleged Debtor with respect to the Claims set forth on <u>Exhibit E-2</u> hereto, some of which are subject to a letter agreement pursuant to which the Debtors and the Claimant agreed upon the valid amount of such Claimant's reclamation demand, subject to certain reserved defenses, and others of which are held by Claimants who are deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand, subject to certain reserved defenses, (c) the asserted amount

11

of the Claim set forth on Exhibit E-3 hereto, which has been modified pursuant to a prior order,

and (e) the identity of the Debtor against which the Claim set forth on Exhibit E-4 hereto was

asserted, which had been modified pursuant to a prior order, and is subject to a letter agreement

pursuant to which the Debtors and the Claimant agreed upon the valid amount of such Claimant's

reclamation demand, subject to certain reserved defenses.

Objections To Claims

G.    Duplicate Claim

24.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that a certain Proof of Claim is a duplicate (the "Duplicate Claim") of another Proof of Claim

filed with this Court.  To eliminate the Duplicate Claim, the Debtors reviewed the two Proofs of

Claim, the supporting documentation provided with each such Proof of Claim, and the Debtors'

Schedules and Statements to determine which duplicate Claim should be the surviving Claim.  It

is axiomatic that creditors are not entitled to multiple recoveries for a single liability against a

debtor.  Accordingly, the Debtors wish to eliminate the Duplicate Claim.

25.    Set forth on Exhibit A hereto are the Claims that the Debtors have

identified as the Duplicate Claim and the surviving Claim.  Exhibit A classifies each of the

Proofs of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a "Surviving

Claim" (the "Surviving Claim").  The Surviving Claim reflects the classifications of the liabilities

as reflected on the Debtors' Schedules and Statements.[11]  The Debtors request that the Claim

---

[11]    As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors'
Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records
for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General
Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the
"Catalyst Entities")] are maintained in this manner.  The financial information for these entities has

*(cont'd)*

marked as the Expunged Claim on <u>Exhibit A</u> be disallowed and expunged.  With respect to the

Claim on <u>Exhibit A</u> marked as the Surviving Claim, the Debtors do not seek any relief at this

time.  The inclusion of the Surviving Claim on <u>Exhibit A</u>, however, does not reflect any view by

the Debtors as to the ultimate validity of such Claim.  The Debtors therefore expressly reserve all

of their rights to further object to the Surviving Claim at a later date on any basis whatsoever,

except as expressly provided in paragraph 65 below.

26.    Accordingly, the Debtors (a) object to the Duplicate Claim and (b) seek

entry of an order disallowing and expunging the Duplicate Claim in its entirety.

H.    <u>Equity Claims</u>

27.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain Proofs of Claim filed against the Debtors in fact represent proofs of interest that were

filed by or on behalf of a person or entities holding Delphi common stock (the "Equity Claims").

The Debtors caused the Claims Agent to serve notice of the Bar Date on holders of Delphi

common stock to ensure that holders of stock who wished to assert claims against any of the

Debtors that were not based solely upon their ownership of Delphi common stock would be

afforded the opportunity to file claims in these chapter 11 cases.

28.    The ownership of Delphi common stock constitutes an equity interest in

Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section

101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was

_____

*(cont'd from previous page)*
been consolidated for purposes of the Schedules and Statements and such consolidated financial
information has been included in the Schedules and Statements of each of [the Catalyst Entities].

Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or
more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the
Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of
the books and records of the Catalyst Entities, claimants should not retain more than one Claim for a single
liability.  Nonetheless, the Debtors expressly reserve all of their rights to re-classify these obligations as
obligations of another Debtor entity at a later date.

approved by this Court, creditors and equity holders were notified that they were not required to file proofs of claim based exclusively on ownership interests in Delphi common stock.[12]

        29.     One of the Equity Claims was received by the Debtors after the Bar Date (the "Untimely Equity Claim").  With respect to that Untimely Equity Claim, the Debtors also object to such Claim on the basis that it was not timely filed pursuant to the Bar Date Order.[13]

        30.     Set forth on Exhibit B-1 is a list of Equity Claims that the Debtors have identified as representing solely proofs of interest.  The Debtors therefore seek to have these claims reclassified from Claims to interests and be disallowed and expunged.  To the extent that the entities and individuals that filed the Equity Claims listed on Exhibit B-1 hold valid equity interests in Delphi as of the applicable record date, the requested reclassification of the Proof of

---

[12]   The Bar Date Order provides, in relevant part:

Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:

\*    \*    \*

(h)  Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or rescission based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

Bar Date Order ¶5 (emphasis added).

[13]   The Bar Date Order provides in part:

Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set form in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

Bar Date Order ¶ 11.

Claim and disallowance of the Claim will not impair any entitlements the Claimants may

ultimately have under a plan of reorganization with respect to such holders' equity interests.

31.    In addition, set forth on Exhibit B-2 is the Untimely Equity Claim that the

Debtors have identified as representing solely a proof of interest and that was not timely filed

pursuant to the Bar Date Order.[14]  The Debtors therefore seek to have this claim reclassified from

a Claim to an interest and be disallowed and expunged as untimely.  To the extent that the

individual that filed the Untimely Equity Claim listed on Exhibit B-2 holds a valid equity interest

in Delphi as of the applicable record date, the requested reclassification of the Proof of Claim

and disallowance of the Claim will not impair any entitlements that the Claimant may ultimately

have under a plan of reorganization with respect to such holders' equity interest.

32.    Accordingly, the Debtors (a) object to the Equity Claims and Untimely

Equity Claim and (b) seek entry of an order disallowing and expunging the Equity Claims and

Untimely Equity Claim in their entirety.

I.    Insufficiently Documented Claim

33.    During their Claims review, the Debtors discovered that a certain Proof of

Claim does not include sufficient documentation to support the claim asserted (the

"Insufficiently Documented Claim").  This deficiency in documentation has made it impossible

for the Debtors to meaningfully review the asserted Claim.

34.    The burden of proof to establish a claim against an estate rests on the

claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re

---

[14]    The Untimely Equity Claim listed on Exhibit B-2 hereto was not included as part of the Motion For Order
Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated
September 29, 2006 (Docket No. 5238).

<u>WorldCom, Inc.</u>, No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); <u>see also</u> <u>In re Allegheny Intern., Inc.</u>, 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); <u>In re Chiro Plus, Inc.</u> 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); <u>In re</u>

<u>Armstrong Finishing, L.L.C.</u>, No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered <u>prima</u> <u>facie</u> valid); <u>In re United Cos. Fin. Corp.</u>, 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make <u>prima</u> <u>facie</u> case).  As a result of the failure of the Claimant identified

on <u>Exhibit C</u> to provide sufficient documentation to permit an understanding of the basis for their

Claim, the Claim does not make out a <u>prima</u> <u>facie</u> case against the Debtors.

      35.     The Insufficiently Documented Claim (a) fails to assert a Claim, (b) fails

to assert a monetary amount for the Claim, and (c) contains no documentation in support of the

Claim or provides no evidence of the Debtors' liability for the Claim.

      36.     Identified on <u>Exhibit C</u> hereto is the Insufficiently Documented Claim

which the Debtors have identified as a Claim that does not contain sufficient documentation to

permit an understanding of the basis for the Claim.[15]  Accordingly, the Debtors (a) object to the

Insufficiently Documented Claim and (b) seek entry of an order disallowing and expunging the

Insufficiently Documented Claim in its entirety.  If this Court does not disallow and expunge this

---

[15]   Certain of the Claims on <u>Exhibits A</u>, <u>B-1</u>, <u>B-2</u>, <u>C</u>, <u>D-1</u>, <u>D-2</u>, <u>E-1</u>, <u>E-2</u>, <u>E-3</u>, and <u>E-4</u> may be listed as having an
unliquidated amount, which is noted as "UNL."  This reflects the fact that the Claim amounts asserted by the
Claimants in those instances is unliquidated.

Claim in full, the Debtors expressly reserve all of their rights to further object to the Insufficiently Documented Claim at a later date on any basis whatsoever.

J.    Claims Not Reflected On The Debtors' Books And Records

37.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books And Records Claims").  The Debtors have also determined that certain Proofs of Claim, which were modified pursuant to prior orders, assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books And Records Claims That Are Subject To Prior Orders").  The Debtors believe that the parties asserting the Books And Records Claims, and the Books And Records Claims That Are Subject To Prior Orders, are not creditors of the Debtors.

38.    The basis for determining that the Debtors are not liable for the asserted Claim is the Debtors' books and records reflect that the asserted Claim was properly paid prior to the commencement of the Debtors' cases.

39.    A claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

40.    Attached hereto as Exhibit D-1 is a list of the Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Identified on Exhibit D-2 is a list of the Books And Records Claims That Are Subject To Prior Orders that the Debtors have identified as Claims for which the Debtors are not liable.  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to

17

further object to any or all of the Books And Records Claims and the Books And Records Claims

That Are Subject To Prior Orders at a later date on any basis whatsoever.

41.    Accordingly, the Debtors (a) object to the Books And Records Claims and

the Books And Records Claims That Are Subject To Prior Orders and (b) seek entry of an order

disallowing and expunging the Books And Records Claims and the Books And Records Claims

That Are Subject To Prior Orders in their entirety.

K.    Claims Subject To Modification

42.    During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims (a) state the incorrect amount or are overstated, including as a

result of the assertion of invalid unliquidated claims, and/or (b) were filed and docketed against

the wrong Debtors, and/or (c) incorrectly assert secured or priority status (collectively, the

"Claims Subject To Modification").

43.    Although in this Twenty-Third Omnibus Claims Objection the Debtors do

not seek to disallow and expunge the Claims Subject To Modification, based on an initial review,

the Debtors have determined that their liability with respect to each such Claim does not exceed

the dollar amount set forth on Exhibit E-1 hereto.  Moreover, in some cases, the Debtors have

determined that such Claims should be reclassified in the manner set forth on Exhibit E-1 hereto.

Finally, in some cases, the Debtors have determined that such Claims should be asserted against

a different Debtor entity, as indicated on Exhibit E-1 hereto by a change in the applicable case

number.  The bases for placing a Claim in the Claims Subject To Modification category of

objection include, but are not limited to, the following: the asserted Claim (a) does not account

for amounts that may have been paid or credited against such Claim prior to the commencement

of these cases, (b) may include postpetition liabilities, (c) does not account for amounts that may

have been paid or credited against such Claim following the commencement of these cases, (d)

18

was docketed and filed against the wrong Debtor entity, and/or (e) is misclassified as a priority

or secured claim.  Thus, the Debtors seek to (i) convert the amount of each Claim Subject To

Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors'

books and records and/or the liquidated amount requested by the Claimant (thus eliminating the

unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the

Claim is asserted, and/or (iii) appropriately reclassify the Claim.

44.    As stated above, a Claimant's Proof of Claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims,

the Debtors' books and records refute that the claims asserted in each Claims Subject To

Modification are actually owed by any of the Debtors in the amount asserted.

45.    Set forth on Exhibit E-1 hereto is a list of Claims Subject To Modification

that the Debtors believe should be modified solely to assert a properly classified, fully liquidated

claim amount against a different Debtor than the one identified by the Claimant.  For each Claim

Subject To Modification, Exhibit E-1 reflects the amount, classification, and Debtor asserted in

the Claimant's Proof of Claim in a column titled "Claim As Docketed"[16] and the proposed

modified dollar amount and classification for the Claim and the Debtor against which the Claim

should be asserted in a column titled "Claim As Modified."

46.    The Debtors object to the amount, classification, and/or identity of the

Debtor for each Claim Subject To Modification listed on Exhibit E-1 and request that each such

Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

---

[16]    The Asserted Claim Amount on Exhibits E-1, E-2, E-3, and E-4 reflects only asserted liquidated claims.

Modified" column of Exhibit E-1.  Thus, no Claimant listed on Exhibit E-1 would be entitled to

(a) recover for any Claim Subject To Modification in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on Exhibit E-1, (b) assert a classification that is

inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against

a Debtor other than that whose case number is listed in the "Claim As Modified" column on

Exhibit E-1, subject to the Debtors' right to further object to each such Claim Subject To

Modification.  For clarity, Exhibit E-1 refers to the Debtor entities by case number and Exhibit F

displays the formal name of four Debtor entities and their associated bankruptcy case numbers

referenced in Exhibit E-1.

      47.    The inclusion of the Claims Subject To Modification on Exhibit E-1,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims

Subject To Modification at a later date on any basis whatsoever.

      48.    Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or identity of the Debtor for each Claim Subject To Modification and (b) seek an order

modifying the Claims Subject To Modification to reflect the Modified Total, classification for

the Claim, and/or the Debtor against which such Claim should be asserted, as set forth on Exhibit

E-1.

L.    Modified Claims Asserting Reclamation

      49.    In addition, the Debtors have also determined that certain Claims (the

"Modified Claims Asserting Reclamation") (a)(i) state the incorrect amount or are overstated,

including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and

docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b)

assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter

agreement whereby the Debtors and the Claimant agreed upon the valid amount of the

reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors'

determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each,

a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and

notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation

Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses")

with respect to the reclamation demand are valid.

50.    Set forth on Exhibit E-2 hereto is a list of Modified Claims Asserting

Reclamation that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim

Asserting Reclamation, Exhibit E-2 reflects the amount, classification, and Debtor asserted in the

Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar

amount and classification for the Modified Claim Asserting Reclamation, and the Debtor against

which such Claim should be asserted, in a column titled "Claim As Modified."

51.    The Debtors object to the amount, classification, and/or identity of the

Debtor for each Modified Claim Asserting Reclamation listed on Exhibit E-2 and request that

each such Claim be revised to reflect the amount, classification, and Debtor identity listed in the

"Claim As Modified" column of Exhibit E-2.  Thus, no Claimant listed on Exhibit E-2 would be

entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount exceeding

the dollar value listed as the "Modified Total" for such Claim on Exhibit E-2, unless the Debtors

obtain an order of this Court providing that any Reserved Defense is valid and denying priority

status to such Claimant's reclamation demand, or (b) assert a classification that is inconsistent

with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose

case number is not listed in the "Claim As Modified" column on <u>Exhibit E-2</u>, subject to the

Debtors' right to further object to each such Modified Claim Asserting Reclamation.  For clarity,

<u>Exhibit E-2</u> refers to the Debtor entities by case number and <u>Exhibit F</u> displays the formal name

of four Debtor entities and their associated bankruptcy case numbers referenced in <u>Exhibit E-2</u>.

52.     Accordingly, the Debtors (a) object to the amount, classification, and/or

identity of the Debtor for the Modified Claims Asserting Reclamation and (b) seek an order

modifying the Modified Claims Asserting Reclamation to reflect the Modified Total,

classification, and/or identity of the Debtor against which such Claim should be asserted, as set

forth on <u>Exhibit E-2</u>.

M.     <u>Claim Subject To Modification That Is Subject To Prior Order</u>

53.     During the Debtors' review of the Proofs of Claim, the Debtors have

determined that a certain Claim, which was modified pursuant to a prior order, states the

incorrect amount (the "Claim Subject To Modification That Is Subject To Prior Order").

54.     Although in this Twenty-Third Omnibus Claims Objection the Debtors do

not seek to disallow and expunge the Claim Subject To Modification That Is Subject To Prior

Order, based on an initial review, the Debtors have determined that their liability with respect to

such Claim does not exceed the dollar amount set forth on <u>Exhibit E-3</u> hereto.  The bases for

placing a Claim in the Claim Subject To Modification That Is Subject To Prior Order category of

objection include, but are not limited to, the following: the asserted Claim (a) does not account

for amounts that may have been paid or credited against such Claim prior to the commencement

of these cases, (b) may include postpetition liabilities, and (c) does not account for amounts that

may have been paid or credited against such Claim following the commencement of these cases.

Thus, the Debtors seek to convert the amount of such Claim Subject To Modification And

22

Subject To Prior Order to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors' books and records.

55.     As stated above, a Claimant's Proof of Claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'" WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims, the Debtors' books and records refute that the Claim asserted in such Claim Subject To Modification That Is Subject To Prior Order is owed by any of the Debtors in the amount asserted.

56.     Set forth on Exhibit E-3 hereto is the Claim Subject To Modification That Is Subject To Prior Order that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount different from the amount asserted by the Claimant.  For such Claim Subject To Modification That Is Subject To Prior Order, Exhibit E-3 reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed," and the proposed modified dollar amount and classification for the Claim and the Debtor against which the Claim should be asserted, in a column titled "Claim As Modified."

57.     The Debtors object to the amount of such Claim Subject To Modification And Subject To Prior Order listed on Exhibit E-3 and request that such Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As Modified" column of Exhibit E-3.  Thus, the Claimant listed on Exhibit E-3 would be not be entitled to (a) recover for any Claim Subject To Modification That Is Subject To Prior Order in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit E-3, (b) assert a

23

classification that is inconsistent with that listed in the "Claim As Modified" column, and/or (c)

assert a Claim against a Debtor other than that whose case number is listed in the "Claim As

Modified" column on Exhibit E-3, subject to the Debtors' right to further object to such Claim

Subject To Modification That Is Subject To Prior Order.  For clarity, Exhibit E-3 refers to the

Debtor entities by case number and Exhibit F displays the formal name of four Debtor entities

and their associated bankruptcy case numbers referenced in Exhibit E-3.

58.    The inclusion of the Claim Subject To Modification And Subject To Prior

Order on Exhibit E-3, however, does not reflect the Debtors' view as to the ultimate validity of

any such Claim.  The Debtors therefore expressly reserve all of their rights to further object to

the Claim Subject To Modification That Is Subject To Prior Order at a later date on any basis

whatsoever.

59.    Accordingly, the Debtors (a) object to the asserted amount of the Debtor

for such Claim Subject To Modification That Is Subject To Prior Order and (b) seek an order

modifying the Claim Subject To Modification That Is Subject To Prior Order to reflect the

Modified Total as set forth on Exhibit E-3.

N.    Modified Claims Asserting Reclamation That Is Subject To Prior Order

60.    In addition, the Debtors have also determined that a certain Claim that was

modified pursuant to a prior order (the "Modified Claim Asserting Reclamation That Is Subject

To Prior Order") (a) was filed and docketed against the wrong Debtor and (b) asserts a

reclamation demand with respect to which the Debtors and the Claimant have entered into a

Reclamation Agreement that establishes the valid amount of the reclamation demand, subject to

the Debtors' right to seek, at any time and notwithstanding the Claimant's agreement to the

amount pursuant to the Reclamation Agreement, a judicial determination that certain reserved

defenses with respect to the reclamation demand are valid.

24

61.    Set forth on Exhibit E-4 hereto is the Modified Claim Asserting Reclamation That Is Subject To Prior Order that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For such Modified Claim Asserting Reclamation That Is Subject To Prior Order, Exhibit E-4 reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and classification for the Modified Claim Asserting Reclamation That Is Subject To Prior Order, and the Debtor against which the Claim should be asserted, in a column titled "Claim As Modified."

62.    The Debtors object to the identity of the Debtor for such Modified Claim Asserting Reclamation That Is Subject To Prior Order listed on Exhibit E-4 and request that the Claim be revised to reflect the amount, classification, and Debtor identity listed in the "Claim As Modified" column of Exhibit E-4.  Thus, the Claimant listed on Exhibit E-4 would not be entitled to (a) recover for any Modified Claim Asserting Reclamation That Is Subject To Prior Order in an amount exceeding the dollar value listed as the "Modified Total" for the Claim on Exhibit E-4, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to the Claimant's reclamation demand, or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit E-4, subject to the Debtors' right to further object to such Modified Claim Asserting Reclamation That Is Subject To Prior Order.  For clarity, Exhibit E-4 refers to the Debtor entities by case number and Exhibit F displays the formal name of four Debtor entities and their associated bankruptcy case numbers referenced in Exhibit E-4.

63.    Accordingly, the Debtors (a) object to the identity of the Debtor for the Modified Claim Asserting Reclamation That Is Subject To Prior Order and (b) seek an order modifying the Modified Claim Asserting Reclamation That Is Subject To Prior Order to reflect the identity of the Debtor against which the Claim should be asserted, as set forth on Exhibit E-4.

## Separate Contested Matters

64.    Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Twenty-Third Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Twenty-Third Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Twenty-Third Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

## Reservation Of Rights

65.    The Debtors expressly reserve the right to amend, modify, or supplement this Twenty-Third Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twenty-Third Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

26

<u>Responses To Objections</u>

66.    Responses to the Twenty-Third Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

O.    <u>Filing And Service Of Responses</u>

67.    To contest an objection, responses (each, a "Response"), if any, to the Twenty-Third Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00 p.m. (prevailing Eastern time) on December 13, 2007.**

P.    <u>Contents Of Responses</u>

68.    Every Response to this Twenty-Third Omnibus Claims Objection must contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should not be disallowed and expunged, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Claimant must disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

Q.    Timely Response Required

69.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on December 20, 2007 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Twenty-Third Omnibus Claims Objection.

70.    Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Twenty-Third Omnibus Claims Objection and who is served with the Twenty-Third Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures

28

Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Twenty-Third Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

71.      To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

Replies To Responses

72.      Replies to any Responses will be governed by the Claims Objection Procedures Order.

29

Service Of Twenty-Third Omnibus Claims Objection Order

73.    Service of any order with regard to this Twenty-Third Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

74.    Questions about this Twenty-Third Omnibus Claims Objection or requests

for additional information about the proposed disposition of Claims hereunder should be directed

to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

75.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, and 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered October 19, 2007 (Docket No. 10661), and the Order

Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain

Notices And Procedures Governing Objections To Claims (Docket No. 6089).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

76.    Pursuant to the Claims Objection Procedures Order, the Debtors will provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twenty-Third Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A, B-1, B-2, C, D-1, and D-2, is attached hereto as Exhibit G.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits E-1, E-2, E-3, and E-4 is attached hereto as Exhibit H. Claimants will receive a copy of this Twenty-Third Omnibus Claims Objection without Exhibits A through H hereto.  Claimants will nonetheless be able to review Exhibits A through H hereto free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

77.    Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        November 19, 2007

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
        John Wm. Butler, Jr. (JB 4711)
        John K. Lyons (JL 9331)
        Ron E. Meisler (RM 3026)
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois 60606

        - and -

By:   /s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
    Four Times Square
    New York, New York 10036

    Attorneys for Delphi Corporation, et al.,
        Debtors and Debtors-in-Possession