# EXHIBIT "B"



**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6108
direct fax 404 541 3388
DFliman@KilpatrickStockton.com

December 21, 2005

**VIA EMAIL AND FACSIMILE**

Mr. Dana F. Fidler
Director-Financial Processes & Services
Delphi World Headquarters & Customer Center
5725 Delphi Drive
Troy, MI 48098-2815

Re: Delphi/Morgan Advanced Ceramics, Inc. Recoupment Claim

Dear Mr. Fidler:

As you are aware, this firm represents Morgan Advanced Ceramics, Inc. ("Morgan") in connection with its recoupment claim against Delphi. We are in receipt of your letter dated December 20, 2005, a copy of which is enclosed for your reference. In your letter you state that you received our "request seeking to exercise setoff rights pursuant to the Final DIP Financing Order, entered on October 28, 2005." We assume this refers to our November 29, 2005, letter to Delphi's bankruptcy counsel (the "November 29 Letter"), a copy of which is also enclosed.

As an initial matter, your letter mischaracterizes Morgan's demand. In the November 29 Letter, we informed Delphi's bankruptcy counsel that Morgan asserts a right of recoupment, not setoff, against Delphi; while Morgan may also be entitled to setoff rights, our November 29 Letter only asserted Morgan's recoupment rights. Furthermore, your letter states, inaccurately, that Morgan made its offset request under the DIP Order. The November 29 Letter makes clear, however, that Morgan's recoupment demand is <u>not</u> made pursuant to the DIP Order, but rather under Morgan's state common law rights.

Nonetheless, in the interest of reaching an amicable resolution of these issues, and without waiving our position as set forth above, Morgan has agreed to provide the information requested in your letter. Accordingly, enclosed is a reconciliation in support of Morgan's claim against Delphi (a copy of which was previously provided to Delphi's bankruptcy counsel on December 13, 2005.) With respect to your request for contact information, if you have any questions regarding the enclosed spreadsheet, please contact

Mr. Dana F. Fidler
December 21, 2005
Page 2

Mr. Paul Eder at Morgan at 610-573-5022 (direct dial). If you have any questions regarding any other issue relating to Morgan's recoupment claim, you can contact me directly; however, before I can discuss this matter with you, we require confirmation that Delphi's bankruptcy (or in house) counsel consents to my communicating directly with you. By copy of this letter, we are informing Delphi's bankruptcy counsel of this communication.

Very truly yours,

Daniel A. Fliman

DAF/ld
Enclosures
cc:    Mr. Rich Hobbs (via email)
       Sina Toussi, Esq. (via email and facsimile)

9082266.2



Delphi World Headquarters & Customer Center
5725 Delphi Drive
Troy, MI 48098-2815
Telephone: (248) 813-3247
Fax: (248) 813-3381
Dana.f.fidler@Delphi.com

December 20, 2005

Morgan Advanced Ceramics, Inc.
Paul M. Rosenblatt
C/O Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree St.
Atlanta, GA 30308-4530

Dear Paul,

We are in receipt of your request seeking to exercise setoff rights pursuant to the Final DIP Financing Order, entered on October 28, 2005. This letter is written acknowledgement of your request by Delphi Corporation and its subsidiaries and affiliates, debtors in the above referenced bankruptcy cases (collectively, the "Debtors").

Please note that although the Debtors will seek to resolve your setoff claim as quickly as possible, we may need additional time beyond the ten day period specified in the Final DIP Financing Order due to the large number of transactions included in the request that need to be reconciled with our records. In order to get the reconciliation process initiated I ask that you provide to me in electronic form (excel file) a listing of your requested setoff items, with related details, in order for Delphi to start the reconciliation process. A contact name with related contact information will also be helpful in expediting this process. Please provide this information to Barry Turner (barry.turner@delphi.com  or 248-813-5043) who will be coordinating the reconciliation for Delphi.

We thank you in advance for your understanding and will contact you upon completing our analysis of your setoff claim.

Sincerely,

Dana F. Fidler
Director-Financial Processes & Services
Controller's Staff

World Headquarters & Customer Center
5725 Delphi Drive, Troy, MI  48098-2815  USA



**KILPATRICK STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

direct dial 404 815 6321
direct fax 404 541 3373
PRosenblatt@KilpatrickStockton.com

November 29, 2005

<u>VIA FACSIMILE AND EMAIL</u>

John Wm. Butler, Jr., Esq.
Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606-1285

Kayalyn A. Marafioti, Esq.
Thomas J. Matz, Esq.
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522

      Re:    <u>In re Delphi Corporation et. al.</u>, Chapter 11, Case No. 05-44481
            *Morgan Advanced Ceramics, Inc. – Proposed Resolution for*
            *Assumption and Recoupment Issues*

Dear Counsel:

      This firm represents Morgan Advanced Ceramics, Inc. ("Morgan"). We are writing to propose a resolution of executory contract assumption issues and recoupment issues between Morgan and the debtors in the above-referenced Chapter 11 bankruptcy proceeding (the "Debtors"). In the event we are unable to reach a resolution satisfactory to Morgan, Morgan will effectuate its state law recoupment rights on or after December 14, 2005. As set forth below, this demand is <u>not</u> made pursuant to the DIP Order (defined below), but rather, pursuant to applicable bankruptcy and non-bankruptcy law.

<u>Background</u>

      Morgan interacts with the Debtors by purchasing a certain engine valve from the Debtors, coating the valve with a special product, and reselling the coated valve to the Debtors[1]. Both prior to October 8, 2005 (the "Petition Date") and after, the Debtors transacted, and continue to transact, business with Morgan.

---

[1] The Debtors refer to these valves as material number "25365391 valve asm-coated".
9043562.6

John Wm. Butler, Jr., Esq.
Kayalyn A. Marafioti, Esq.
Thomas J. Matz, Esq.
November 29, 2005
Page 2

As a result of this business arrangement, as of the Petition Date, Morgan asserts a claim in the amount of $550,544.77 against the Debtors for sales of coated valves to the Debtors (the "Morgan Claim"). It is our understanding that the Debtors assert a claim in the amount of $342,045.32 against Morgan for valves purchased by Morgan from the Debtors prior to the Petition Date (the "Morgan Pre-Petition Debt"). It is our further understanding that the Debtors will assert a claim in the amount of $208,499.45 against Morgan for valves purchased from the Debtors on or after the Petition Date through mid-December 2005 (the "Morgan Post-Petition Debt"; the Morgan Pre-Petition Debt and the Morgan Post-Petition Debt are collectively referred to herein as the "Morgan Debts").[2]

The Morgan Claim arises under a "Requirements Contract" (the "Contract") between Morgan and Delphi Energy & Cassis Systems. Under the Contract, the Debtors are entitled to purchase, and Morgan is obligated to sell, specific coated valves. Morgan purchases valves from the Debtors for the sole and exclusive purpose of coating those valves for the Debtors and reselling the coated valves to the Debtors. The Debtors only sell to Morgan the number of valves they need coated. Absent this arrangement, the Debtors would not sell the valves to Morgan and Morgan would not coat the valves for the Debtors.

Recently, Morgan was contacted by Mr. Rick DeVilbiss, an employee of Delphi. Mr. DeVilbiss indicated the Debtors' desire to alter the business relationship between Morgan and the Debtors. Specifically, the Debtors proposed altering the Contract so that the Debtors would ship uncoated valves to Morgan, Morgan would coat the valves, and the Debtors would pay Morgan only for the coating services. Morgan is unwilling to modify the Contract at this time absent resolution of the issues raised herein.

Proposed Resolution

Morgan proposes a resolution mutually beneficial to both parties. As set forth below, Morgan has valid recoupment rights to recoup the entire Morgan Claim against the Morgan Debts. This is the same result that would occur should the Debtors choose to assume the Contract. Although assumption of the Contract will require cure of the Morgan Claim,

---

[2] Nothing contained herein shall be construed as an admission regarding the amount or validity of the Morgan Pre-Petition Debt or the Morgan Post-Petition Debt. Morgan reserves all rights to challenge the amount and validity of any portion of the Morgan Debts.

9043562.6

John Wm. Butler, Jr., Esq.
Kayalyn A. Marafioti, Esq.
Thomas J. Matz, Esq.
November 29, 2005
Page 3


because of Morgan's recoupment rights, the cure will be zero.  Upon assumption, Morgan is willing to agree to Delphi's requested modifications to the Contract.

Recoupment Rights

    As set forth above, Morgan has recoupment rights equal in value to the Morgan Claim.  It is well established that a debtor-in-possession takes property of the estate subject to rights of recoupment.[3]  Recoupment is an issue of state law and bankruptcy courts look to applicable state law to determine the validity and extent of a recoupment right asserted against property of the estate.[4]  Pursuant to section 26.1 of the Contract, the terms and conditions of the Contract are governed by the laws of Michigan.

    The doctrine of recoupment is recognized under Michigan common law.[5]  To assert recoupment under Michigan common law, Morgan must show that (a) Morgan has a claim against the Debtors; (b) that the Debtors assert a claim against Morgan; (c) that Morgan's claim and Morgan's debts arose out of the same "subject matter"; and (d) that Morgan's claim and Morgan's debts are susceptible of adjustment in one action.[6]  All these elements are met in this situation.  First, the Debtors assert a claim against Morgan.  Second, Morgan asserts a claim against the Debtors.  Third, the Morgan Claim and the Morgan Debts arise out of the same "subject matter".[7]  Last, it is clear that the Morgan Claim and the Morgan Debts

---

[3] See In re 105 East Second Street Associates, 207 B.R. 64, 69 (Bankr. S.D.N.Y. 1997) (citing In the Matter of Holford, 896 F.2d 176 (5th Cir. 1990)); see also In re Flagstaff Realty Associates t/a F.R.A., 60 F.3d 1031, 1035 (3rd Cir. 1995) ("The 'trustee of a bankruptcy estate takes the property subject to rights of recoupment.' ") (quoting In re Matter of Holford, 896 F.2d 176 (5th Cir.1990)).

[4] In re Malinowski, 156 F.3d 131, 133 (2nd Cir. 1998); In re McMahon, 129 F.3d 93, 96 (2nd Cir. 1997) ("Recoupment and setoff rights are determined by non-bankruptcy law, which ordinarily is state law.").

[5] See generally, Ward v. Fellers et al., 1854 WL 3486 (Mich. 1854); see also Ward v. Alpine Township, 171 N.W. 446, 450 (Mich. 1919); In re Thompson Boat Co., 230 B.R. 815, 824, n.11 (Bankr. E.D. Mich. 1995).

[6] See Ward v. Alpine Township, 171 N.W at 450; In re Thompson Boat Co., 230 B.R. at 824, n.11.

[7] See Ward, 171 N.W. 446 (where plaintiff sought to recover valve of construction supplies used in erecting a bridge that was deemed unacceptable, and township counterclaimed for the cost incurred in taking down the unacceptable bridge, the Michigan Supreme Court held that "[r]recoupment is not strictly limited to the exact provisions of the contract involved, or sued upon" but rather "[i]t is sufficient that the counterclaims arise out of the same subject-matter and that they are susceptible of adjustment in one action" and found that the township's costs were "distinctly an item of damages resulting to defendant from [the contractor's] nonperformance of his contract" and that "[c]learly, the counterclaims of the parties arose of the same subject-matter, or transaction, and were susceptible of adjustment in one action."); see also, In re Thompson Boat Co., 230 B.R. at 824, n.11 (quoting Ward v. Alpine Township, 171 N.W. 446).

9043562.6

John Wm. Butler, Jr., Esq.
Kayalyn A. Marafioti, Esq.
Thomas J. Matz, Esq.
November 29, 2005
Page 4

are susceptible of adjustment in one action because both demands could be raised in the same action (whether within or outside the bankruptcy context).

## The DIP Order

As stated above, this demand is <u>not</u> made pursuant to the October 28, 2005 final order approving Debtors' use of cash collateral and debtor-in-possession financing (the "DIP Order"). Although, paragraph 18 of the DIP Order ("Paragraph 18") contains procedures under which parties can exercise recoupment or setoff rights, Paragraph 18 is not mandatory and permits parties to opt out and to exercise recoupment rights as in any other Chapter 11 bankruptcy case.

Paragraph 18 provides that the automatic stay provision does not stay the exercise of recoupment rights for parties following the procedures in Paragraph 18. However, as set forth below, the automatic stay (regardless of Paragraph 18) does not stay Morgan's recoupment rights against the Debtors' bankruptcy estates.

## The Automatic Stay

The Second Circuit recognizes that recoupment of pre-petition debts with pre-petition claims is not subject to the automatic stay.[8]  Nor does the automatic stay prevent the recoupment of post-petition debts from pre-petition claims.[9]  While the Second Circuit has not addressed the issue, this concept has been recognized by courts within the Second Circuit,[10] and by other Circuit level courts as set forth in footnote 9 herein.

---

[8] See In re Malinowski, 156 F.3d at 133 ("The automatic stay is inapplicable, because funds subject to recoupment are not the debtor's property…[A] debtor has, in a sense, no right to funds subject to recoupment") (internal citations omitted); In re McMahon, 129 F.3d at 98 (holding that a utility's post-petition application of a pre-petition utility deposit to a debtor's pre-petition utility obligation is a recoupment not subject to the automatic stay).

[9] See In re Flagstaff Realty Associates t/a F.R.A., 60 F.3d 1031, 1035 (3rd Cir. 1995) ("postpetition funds owing to the [debtor] may be recouped against prepetition claims owed by the [debtor] despite the usually inflexible automatic stay provision of the Code."); In the Matter of Holdford, 896 F.2d 176 (5th Cir. 1990) (allowing a tenant to recoup a pre-petition fraud claim against the debtor-landlord by withholding post-petition rent payments).

[10] See e.g. In re 105 East Second Street Associates, 207 B.R. 64 (holding that rent stabilized tenant's pre-petition Division of Housing and Community Renewal award of rent refunds and penalties could be recouped from post-petition rents paid to Chapter 7 trustee); Mercy Hospital of Watertown, d/b/a Mercy Center for Health Services, v. New York State Dept. of Social Services, 171 B.R. 490, 494 (N.D.N.Y. 1994) ("As such, recoupment operates as an exception to the requirement that debts arising post-petition may not be satisfied without obtaining relief from the automatic stay.")

9043562.6

John Wm. Butler, Jr., Esq.
Kayalyn A. Marafioti, Esq.
Thomas J. Matz, Esq.
November 29, 2005
Page 5


Conclusion

As set forth above, Morgan has a right to recoup the Morgan Claim against the Morgan Debts. The result of such recoupment would be the same if the Contract is assumed by the Debtors. As such, the Debtors may want to examine assumption of the Contract at this time given the identical result that would ensue under recoupment or assumption. In conjunction with assumption, Morgan is willing to agree to the Debtors' requested modifications to the Contract.

Nevertheless, in the event the parties are unable to reach a resolution satisfactory to Morgan, Morgan will effectuate its state law recoupment rights on or after December 14, 2005, and recoup the full Morgan Claim against the Morgan Debts. We are available to discuss this matter at your convenience.

Very truly yours,

Paul M. Rosenblatt

cc.    Mr. Rich Hobbs
       Rich Cicchillo, Esq.

9043562.6

Delphi Automotive

| Invoice # | Inv Date | Original Amount | Qty | |
|---|---|---|---|---|
| 91666 | 7/29/2005 | 7,911.60 | 5205 | |
| 91668 | 8/1/2005 | 13,172.32 | 8666 | |
| 91676 | 8/2/2005 | 10,544.24 | 6937 | |
| 91680 | 8/3/2005 | 5,266.80 | 3465 | |
| 91685 | 8/3/2005 | 5,280.00 | 4 | NRE |
| 91686 | 8/4/2005 | 10,545.76 | 6938 | |
| 91689 | 8/5/2005 | 10,401.36 | 6843 | |
| 91694 | 8/8/2005 | 13,173.84 | 8667 | |
| 91699 | 8/9/2005 | 10,542.72 | 6936 | |
| 91705 | 8/10/2005 | 10,550.32 | 6941 | |
| 91711 | 8/12/2005 | 7,907.04 | 5202 | |
| 91714 | 8/15/2005 | 10,539.68 | 6934 | |
| 91721 | 8/16/2005 | 9,892.16 | 6508 | |
| 91726 | 8/17/2005 | 6,595.28 | 4339 | |
| 91727 | 8/18/2005 | 6,580.08 | 4329 | |
| 91731 | 8/19/2005 | 7,885.76 | 5188 | |
| 91738 | 8/22/2005 | 7,911.60 | 5205 | |
| 91742 | 8/23/2005 | 7,896.40 | 5195 | |
| 91746 | 8/24/2005 | 13,097.84 | 8617 | |
| 91748 | 8/25/2005 | 8,543.92 | 5621 | |
| 91757 | 8/26/2005 | 9,229.44 | 6072 | |
| 91763 | 8/29/2005 | 19,110.96 | 12573 | |
| 91767 | 8/30/2005 | 7,908.56 | 5203 | |
| 91772 | 8/31/2005 | 10,550.32 | 6941 | |
| 91778 | 9/1/2005 | 10,545.76 | 6938 | |
| 91784 | 9/2/2005 | 10,544.24 | 6937 | |
| 91790 | 9/6/2005 | 26,379.60 | 17355 | |
| 91793 | 9/7/2005 | 10,553.36 | 6943 | |
| 91796 | 9/8/2005 | 10,550.32 | 6941 | |
| 91803 | 9/9/2005 | 10,551.84 | 6942 | |
| 91809 | 9/13/2005 | 19,127.68 | 12584 | |
| 91814 | 9/14/2005 | 11,868.16 | 7808 | |
| 91817 | 9/15/2005 | 10,554.88 | 6944 | |
| 91822 | 9/16/2005 | 10,547.28 | 6939 | |
| 91829 | 9/19/2005 | 21,096.08 | 13879 | |
| 91834 | 9/20/2005 | 10,553.36 | 6943 | |
| 91838 | 9/21/2005 | 10,550.32 | 6941 | |
| 91841 | 9/22/2005 | 13,155.60 | 8655 | |
| 91848 | 9/23/2005 | 10,553.36 | 6943 | |
| 91860 | 9/26/2005 | 21,096.08 | 13879 | |
| 91864 | 9/27/2005 | 10,553.36 | 6943 | |
| 91871 | 9/28/2005 | 13,184.48 | 8674 | |
| 91873 | 9/29/2005 | 10,553.36 | 6943 | |
| 91877 | 9/30/2005 | 13,182.96 | 8673 | |
| 91885 | 10/3/2005 | 18,445.20 | 12135 | |
| 91892 | 10/4/2005 | 13,186.00 | 8675 | |
| 91901 | 10/5/2005 | 10,544.24 | 6937 | |
| 91910 | 10/6/2005 | 11,632.29 | 7809 | |

**Total Pre-Petition**       **550,547.81**