FORM B10 (Official Form 10) (12/03)

| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | | **PROOF OF CLAIM** |

**# 12136**

| Name of Debtor: **Delphi Automotive Systems LLC** | Case Number: **05-44640** |
|---|---|

This Space Is For Court Use Only

**Received**
**AUG 05 2006**
**Kurtzman Carson**

Claim #12136
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Peugeot Japy Industries S.A.**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

Name and address where notices should be sent:
**Patrick Cicchini**
**Apico, Inc.**
**30600 Telegraph Rd., Suite 2183**
**Bingham Farms, MI 48025**

Telephone number: **(248) 540-1611**

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Account or other number by which creditor identifies debtor:

Check here if this claim  ☐ replaces  ☐ amends  a previously filed claim, dated: _____

**1. Basis for Claim**
- ☒ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

☐ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)          (date)

**2. Date debt was incurred:** December 3, 2001

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**  $~~$~~**$933,276**  $       $       $
                                                (unsecured)    (secured) (priority) (total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other
Value of Collateral: $
Amount of arrearage and other charges at time case filed included in secured claim, if any: $

**6. Unsecured Nonpriority Claim $**
☐ Check this box if a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property security it, or if c) non or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
- ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)( ___ ).

*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
JUL 28 2006
CLAIMS PROCESSING CENTER
USBC, SDNY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 07/17/2006 | Pascal ARRIGONI (Sales Director) |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or impriso*


0544640060728000000000087

Summary of Claim of Peugeot Japy Industries S.A. Against
*Delphi Automotive Systems LLC, Case No. 05-44640*

Peugeot Japy Industries S.A.'s ("Peugeot") claim against Delphi Automotive Systems LLC ("Delphi") arises from the Long Term Contract between Peugeot and Delphi (the "Contract," a copy of which is attached hereto), executed by Peugeot and Delphi as of December 3, 2001. Pursuant to the Contract, Peugeot agreed to supply, and Delphi agreed to purchase, approximately 100% of Delphi's production and service requirements for certain steering racks (the "Parts") produced by Peugeot. Peugeot has a pre-petition claim against Delphi in the amount of $933,276.00.

Delphi owes Peugeot:

- $850,616.00 for Parts delivered by Peugeot, but not paid for by Delphi, under the Contract;

- $35,310.00 for finished Parts that Peugeot is currently storing for Delphi;

- $37,600 for Parts that are "in-process"; and

- $9,750 in raw material costs for steel which cannot be used for other production because the steel grade and bar diameter are unique to Delphi.



# DELPHI
Automotive Systems

## DELPHI AUTOMOTIVE SYSTEMS

## LONG TERM CONTRACT

1. **Purchase of Product**

   Peugeot Japy Industries SA agrees to sell, and Delphi Automotive Systems LLC acting through its Saginaw Steering Systems ("Buyer") agrees to purchase, approximately 100 percent (100%) of Buyer's production and service requirements for the following products (each referred to as a "Product" and collectively referred to as the "Products"):

   | Part Number | Description | Per Unit Price | Annual Tooled Capacity 20 hr days, 240 days/year |
   |---|---|---|---|
   | 26080664/ 26097322 | Steering Rack | $12.85 | 80,100 |

2. **Term**

   With respect to each Product, the term of this Contract is from **Calendar year 2002** through **Calendar year 2005**.

   Buyer agrees to purchase a minimum sum of 250,000 units over the duration of the term. Should Buyer not be able to fulfill this requirement for any reason, Buyer will have the option to use commercially reasonable efforts to find an alternate product to utilize Sellers tools, extend the term, or pay a cancellation charge. The cancellation charge would be $4.00 multiplied by the difference of 238,000 and the total number of racks purchased. If the term is not extended, the claim would be paid at the end of the term.

   Following the date that Buyer has received an aggregate of 250,000 units (based on aggregate purchases of all types of Products), the per unit price of each Product ordered will be $11.39 per unit.

# DELPHI
Automotive Systems

3. **Prices**

The per unit price of each Product for Calendar Date is F.O.B. Allen Park, MI. Pricing for each subsequent Calendar Date is subject to the following minimum annual percentage reductions from the prior Calendar Date's pricing:

| | | |
|---|---|---|
| June 27, 2001 | initial price – Piece Price $12.85 | |
| January 1, 2003 | three percent (3 %) Piece Price $12.48 ea. | |
| January 1, 2004 | three percent (3%) Price Price $12.12 ea. | |
| January 1, 2005 | three percent (3%) Piece Price $11.77 ea. | |

Buyer and Seller will use their best efforts to implement cost savings and productivity improvements in order to reduce Seller's costs of supplying each Product. Buyer and Seller agree that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to fifty percent (50%) of any net cost savings achieved by Seller with respect to such Product (i.e., savings after recovery by Seller of a pro rata portion, based on the remaining term of this Contract, of the reasonable and documented costs to achieve such cost savings), provided, however, that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any savings resulting from reduction on the content of the such Product.

No price increases (including any decrease of the scheduled price reductions) will be made on account of (i) Seller's failure to achieve any expected cost savings or productivity improvements or (ii) any increases in Seller's labor, materials, overhead and other costs. In the event that Buyer agrees to any price increases (or a decrease of any scheduled price reductions) with respect to any Product, then, notwithstanding anything to the contrary set forth in this Contract, the pricing of each Products will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any subsequent net cost savings achieved by Seller with respect to such Product until aggregate price reductions on account of Seller's cost savings equal any price increases previously agreed to by Buyer.

4. **Right to Purchase from Others**

During the entire term of this Contract, Seller will assure that each Product remains competitive in terms of technology, design, service and quality with any similar product available to Buyer. If, in the reasonable opinion of Buyer, a Product does not remain competitive, Buyer, to the extent it is free to do so, will advise Seller in writing of the area(s) in which a similar product is more competitive. If, within ninety (90) days, Seller does not agree to immediately sell



**DELPHI**
Automotive Systems

any Product with comparable technology, design, or quality, Buyer may elect to purchase any similar products available to Buyer without any liability to Seller under this Contract.

5. **Purchase Orders**

All Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders (including related delivery releases and shipping instructions) issued by Buyer from time to time during the term of this Contract. Buyer's General Terms and Conditions, a copy of which is attached, are hereby incorporated into this Contract by reference, provided, however, that Buyer's right to "terminate for convenience" under the General Terms and Conditions will be inapplicable to this Contract until the end December 31, 2005. Any amendment to, or revision of, such General Terms and Conditions shall also become a part of this Contract, provided that (i) Buyer provides Seller with a copy of such revised Terms and Conditions and (ii) Seller does not object to such revised Terms and Conditions in writing within thirty (30) days after receipt. The Terms and Conditions (together with any revision made a part of this Contract) shall be construed, to the extent possible, as consistent with the terms and conditions set forth in this Contract and as cumulative, provided, however, that if such construction is unreasonable, the terms and conditions set forth in this Contract shall control.

EXECUTED by Buyer and Seller as of December 3, 2001.

| Buyer: | Seller: |
|---|---|
| Delphi Automotive Systems LLC acting through its Saginaw Steering Systems | Peugeot Japy |
| By: _Duane A Bolye_ <br> Name: Duane A. Bobyca <br> Title: Director of Purchasing | By: _____ <br> Name: Denis Cassard <br> Title: C.E.O |

Peugeot Japy LTC (2).doc
12/07/01

Uncontrolled Copy

Fax émis par : +33 3 81 30 34 36    PEUGEOT JAPY SECRET    07/18/05    16:04    Pg: 3/3



# Peugeot Japy
industries mécaniques

| INVOICE Nr FM0510032 of Oct. 07.2005 |
|---|
| Our ref. : |
| Your Ref.           Date : |

| DELIVERY TO | INVOICE TO |
|---|---|
|  | DELPHI SAGINAW STEERING SYSTEMS |
|  | DELPHI AUTOMOTIVE SYSTEMS |
|  | 3900 Holland ROAD |
|  | SAGINAW, Michigan 48601 - 9494 |
|  | U.S.A. |

**DELIVERY**

Date :

Delivery note number :                    Dimension of one Box :
Number of boxes :                         Gross weight :
Number of palets                          Net weight :
Terms of delivery :       Through

| Description | Quantity | Unit price | Amount |
|---|---|---|---|
| BALANCE due under the terms of our agreement of December 03.2001 | | | 850 616 $ |

N° TVA INTRACOMMUNAUTAIRE : FR94.383.936.762



Peugeot Japy Industries SA
Usine Sous-Roches – BP 27050
25052 AUDINCOURT CEDEX
Tél. 03 81 30 41 00 - Fax 03 81 30 34 36
e-mail : mail@peugeot-japy.com

Peugeot Japy



### Peugeot Japy
industries mécaniques

| INVOICE Nr FM0510033 of Oct. 07.2005 |
|---|
| Our ref. : |
| Your Ref.         Date : |

| DELIVERY TO | INVOICE TO |
|---|---|
|  | DELPHI SAGINAW STEERING SYSTEMS |
|  | DELPHI AUTOMOTIVE SYSTEMS |
|  | 3900 Holland ROAD |
|  | SAGINAW, Michigan 48601 - 9494 |
|  | U.S.A. |

**DELIVERY**

Date :

Delivery note number :              Dimension of one Box :
Number of boxes :                   Gross weight :
Number of palets :                  Net weight :
Terms of delivery :   Through

| Description | Quantity | Unit price | Amount |
|---|---|---|---|
| Finished parts : |  |  | 35310 $ |
| In - Process racks : |  |  | 37600 $ |
| Raw Material : cost for grinding operation |  |  | 9750 $ |
| Total Amount $ : |  |  | 82660 $ |

N° TVA INTRACOMMUNAUTAIRE : FR94.383.936 762



Peugeot Japy Industries SA
...
25402 ...COURT Cedex
...

Peugeot Japy