IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
    In re                          :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
               Debtors.    :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

      I, Elizabeth Adam, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

      On November 16, 2007, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery and (ii) upon the parties listed on Exhibit B hereto via electronic notification:

1)   Expedited Motion for Orders Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date and (B) Authorizing and Approving Sale by Delphi Automotive Systems LLC and Delphi Technologies, Inc. of Certain Equipment and Other Assets Primarily Used in Debtors' Saginaw Chassis Business Free and Clear of Liens ("Saginaw Chasses Asset Sale Motion") [a copy of which is attached hereto as Exhibit C]

2)   Third Amendment to Asset Purchase Agreement [a copy of which is attached hereto as Exhibit D]

3)   Asset Purchase Agreement Among TRW Integrated Chassis Systems LLC, Delphi Automotive Systems LLC, and Delphi Technologies, Inc. Dated: September 17, 2007 [a copy of which is attached hereto as Exhibit E]

4)   [Proposed] Order Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, and 9014 Authorizing and Approving Sale by Delphi Automotive Systems LLC and Delphi Technologies, Inc. of Certain Equipment and Other Assets Primarily Used in Debtors' Saginaw Chassis Business Free and Clear of Liens ("Saginaw Chassis Asset Sale Approval Order") [a copy of which is attached hereto as Exhibit F]

5) Order Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002 and 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date in Connection with Sale of Saginaw Chassis Equipment and Other Assets ("Saginaw Chassis Asset Bidding Procedures Order") (Docket No. 10958)


Dated: November 20, 2007

_____*/s/ Elizabeth Adam*_____
Elizabeth Adam


State of California
County of Los Angeles


Subscribed and sworn to (or affirmed) before me on this 20th day of November, 2007, by Elizabeth Adam, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.


Signature: _____*/s/ Leanne V. Rehder*_____

Commission Expires:__*3/2/08*_____

# EXHIBIT A

In re Delphi Corporation, et al.
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivir@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

11/20/2007 1:16 PM
Master Service List Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

11/20/2007 1:16 PM
Master Service List Overnight Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Brendan G Best Esq | 39577 Woodward Ave Ste 300 | | Bloomfield Hills | MI | 48304 | 248-203-0523 | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 4

11/20/2007 1:43 PM
Overnight

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | (302) 552-4200 | Counsel to Entergy |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | UCC Professional |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | 410-385-3418 | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | 212-935-3000 | Counsel of Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 4

11/20/2007 1:43 PM
Overnight

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|------------------|
| Paul, Weiss, Rifkin, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423 | | |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | 973-621-3200 | Counsel to Jason Incorporated, Sackner Products Division |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Gentral Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | David Jury, Esq. | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 4

11/20/2007 1:43 PM
Overnight

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 4

11/20/2007 1:43 PM
Overnight

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 | |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 | |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 | |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 | |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 | |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 | |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 | |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 | |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 | |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 | |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 | |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 | |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 | |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 | |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 | |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 | |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 | |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 | |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 | |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 | |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 | |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 | |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 | |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 | |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 | |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 | |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 | |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 | |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 | |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 | |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 | |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 | |
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 | |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 | |
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 | |
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 | |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 | |
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 | |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 | |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 | |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 | |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 | |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 | |
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 | |
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 | |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 | |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 | |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 | |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 | |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 | |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 | |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 | |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 | |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 | |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 | |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 | |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 | |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 | |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 | |
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 | |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 | |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

2 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 | |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 | |
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 | |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 | |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 | |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 | |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 | |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 | |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 | |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 | |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 | |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 | |
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 | |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 | |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 | |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 | |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 | |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 | |
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 | |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 | |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 | |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 | |
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 | |
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 | |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 | |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 | |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 | |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 | |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 | |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 | |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn Michigan | | | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 | |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 | |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 | |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

3 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 | |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 | |
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 | |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 | |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 | |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 | |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 | |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 | |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 | |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 | |
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 | |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 | |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 | |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 | |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 | |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 | |
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 | |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 | |
| City Of Laredo Tx | City Of Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 | |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 | |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 | |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 | |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 | |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 | |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 | |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 | |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 | |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 | |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 | |
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 | |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 | |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 | |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 | |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 | |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 | |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 | |
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 | |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 | |
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 | |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 | |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 | |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 | |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 | |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 | |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 | |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterburry | CT | 06723 | |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 | |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 | |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 | |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 | |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 | |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 | |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 | |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 | |
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 | |
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 | |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 | |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 | |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 | |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 | |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 | |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 | |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 | |
| Colorado Department Of Revenue | | | | Denver | CO | 80261-0006 | |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 | |
| Comal Co Tx | Comal Co Tax Assessor / Collector | 311445 | | New Braunfels | TX | 78131 | |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 | |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 | |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 | |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 | |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 | |
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 | |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 | |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 | |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 | |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 | |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 | |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 | |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 | |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 | |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 | |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 | |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 | |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 | |
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 | |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 | |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 | |
| Dc Office Of Tax & Revenue | Corporation Estimated Franchise Tax | PO Box 96019 | | Washington | DC | 20090-6019 | |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 | |
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 | |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 | |
| Dearborn Countyin | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 | |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 | |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 | |
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 | |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 | |
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 | |
| Department of Justice | Michael Garcia | 1 St. Andrews Plaza | | New York | NY | 10007 | |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 | |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 | |
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 | |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 | |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 | |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 | |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 | |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 | |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 | |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 | |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 | |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 | |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 | |
| Eagle Pitcher Corporate Headquarters | | 2424 John Daly Rd | | Inkster | MI | 48141 | |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 | |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 | |
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 | |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 | |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 | |
| Essexville City Of Bay | | | | Essexville | MI | | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 | |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 | |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 | |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 | |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 | |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 | |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 | |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 | |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 | |
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 | |
| Forsyth Twp Marquette | | | | Gwinn | MI | | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 | |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 | |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 | |
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 | |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 | |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 | |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 | |
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 | |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 | |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 | |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 | |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 | |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 | |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 | |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 | |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 | |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 | |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 | |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 | |
| Greenwood Co Sc | Greenwood Co Tax Treasurer | 528 Monument St | R 101 | Greenwood | SC | 29646 | |
| Guilford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 | |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 | |
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 | |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | Room 210 | Chattanooga | TN | 37402 | |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 | |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 | |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 | |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Harnett Co Nc | Harnett Co Tax Collector | Po 58509 | | Charlotte | NC | 28258 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

8 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 | |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 | |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 | |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 | |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 | |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 | |
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 | |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 | |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | PO Box 4290 | Edinburg | TX | 78540 | |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 | |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 | |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 | |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 | |
| Hitachi Chemical Co Ltd | Mr Kiyoshi Togawa Vice President and Executive Officer | Shibuya Square Bldg | 9 25 Shibaura 4 chome | Minato ku Tokyo | | 108-0023 | Japan |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 | |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 | |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 | |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 | |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 | |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 | |
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 | |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 | |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 | |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 | |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 | |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 | |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 | |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 | |
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 | |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 | |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 | |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 | |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

9 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 | |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 | |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64093 | |
| Johnson County In | Johnson County Treasurer | Courthuse Annex | 86 W Court St | Franklin | IN | 46131 | |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olather | KS | 66061 | |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 | |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 | |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 | |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 | |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 | |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 | |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 | |
| KDAC | KC Jee | 580 1 Buk Ri | Nongong Eup | Dalseong Gun | Daigu | 711 712 | Korea |
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 | |
| Kentucky Department Of Revenue | | | | Frankfort | KY | 40619-0007 | |
| Kentucky Revenue Cabinet | | | | Frankfort | KY | 40620 | |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 | |
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 | |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 | |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 | |
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 | |
| Kohler Power Systems | | 444 Highland Dr | | Kohler | WI | 53044 | |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 | |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 | |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 | |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 | |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 | |
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 | |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 | |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 | |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 | |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 | |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 | |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 | |
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 | |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 | |
| Linamar | Brian H Ahlborn Vice President Corporate Development | 124 Rock Haven Ln | | Pittsburgh | PA | 15228 | |
| Linamar | Russ Pollack Director of Sales Chassis Group | 25300 Telegraph Rd Ste 450 | | Southfield | MI | 48034 | |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 | |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 | |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 | |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 | |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 | |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 | |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 | |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 | |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 | |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 | |
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 | |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 | |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 | |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 | |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 | |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 | |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 | |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 35801 | |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 | |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 | |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 | |
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 | |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 | |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 | |

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 | |
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 | |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 | |
| Manager Of Finance | Jackson County Manager Of Finance | Bankruptcy 415 E 12th St | | Kansas City | MO | 64106 | |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 | |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 | |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 | |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 | |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 | |
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 | |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 | |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 | |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 | |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 | |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 | |
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 | |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 | |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 | |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 | |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 | |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 | |
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 | |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 | |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 | |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 | |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 | |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 | |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 | |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 | |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 | |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 | |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 | |

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 | |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 | |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 | |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 | |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 | |
| Monroe County In | Monroe County Treasurer | Courthuse Room 204 | | Bloomington | IN | 47404 | |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 | |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 | |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 | |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 | |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 | |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 | |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 | |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 | |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 | |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 | |
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 | |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 | |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 | |
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 | |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 | |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 | |
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha St | PO Box 233 | Seneca | KS | 66538 | |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 | |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 | |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 | |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 | |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

13 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 | |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 | |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 | |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 | |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 | |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 | |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 | |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 | |
| Norstar | Charlie Zhou Elina Fung Comptroller Alex Fan Financial Advisor | 16 F Tower II Admirmalty Ctr | 18 Harcourt Rd | Hong Kong | | | China |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 | |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 | |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 | |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 | |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 | |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 | |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 | |
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 | |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 | |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 | |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 | |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 | |
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 | |
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 | |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 | |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 | |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 | |

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 | |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 | |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 | |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 | |
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 | |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 | |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 | |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 | |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 | |
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 | |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 | |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 | |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 | |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 | |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 | |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 | |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 | |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 | |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 | |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 | |
| Pima County Treasurer Pima County Assessor Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 | |
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 | |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 | |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 | |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 | |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 | |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 | |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 | |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 | |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 | |
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 | |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 | |
| Riverside County Collector | | P O 12005 | | Riverside | CA | 92502 | |
| Robert Bosch Corp | Devesh Sharma Senior Vice President Mergers and Acq | 38000 Hills Tech Dr | | Farmington Hills | MI | 48331 | |
| Robert Bosch Corp | Keven O Keefe VP Sales Automotive Full Brakes Division | 38000 Hills Tech Dr | | Farmington Hills | MI | 48331 | |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 | |
| Rochester Hills City Of Oakland | Drawer 7783 | PO Box 79001 | | Detroit | MI | 48279 | |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 | |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 | |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 | |
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 | |
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 | |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 | |
| SAIC | Phil Murtaugh Wang Qingyu | No 489 Weihai Rd | | Shanghai | | 200041 | China |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 | |
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 | |
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 | |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 | |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 | |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 | |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 | |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 | |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 | |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 | |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 | |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 | |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 | |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 | |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 | |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 | |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 | |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 | |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 | |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 | |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 | |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 | |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 | |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 | |
| SMW Automotive | Safi Hamid Director Business Development | 3221 W Big Beaver Rd Ste 110 | | Troy | MI | 48084 | |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 | |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 | |
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 | |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 | |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 | |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 | |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 | |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 | |
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 | |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarie | NC | 28001 | |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 | |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 | |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 | |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 | |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 | |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 | |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

17 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 | |
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 | |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 | |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 | |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 | |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 | |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 | |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 | |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 | |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 | |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 | |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 | |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 | |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 | |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 | |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 | |
| Sumner Co Tn | Sumner County Trustee | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 | |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 | |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 | |
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 | |
| Taft, Stettinius & Hollister LLP | W. Timothy Miller Paige Leigh Ellerman | 425 Walnut Street, Suite 1800 | | Cincinnati | OH | 45202 | |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 | |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 | |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 | |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 | |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 | |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Tax Colle | PO Box 7100 | Milton | FL | 32572 | |

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 | |
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 | |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 | |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 | |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 | |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 | |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 484 | | Dawson | GA | 31742 | |
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 | |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 | |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 | |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 | |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 | |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 | |
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 | |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 | |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 | |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 | |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 | |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 | |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 | |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 | |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 | |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 | |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 | |
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 | |
| Trey Grayson | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 | |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

19 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 | |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 | |
| TRW Counsel | c/o Donald F Baty Jr | Honigman Miller Schwartz and Cohn LLP | 2290 First National Bldg 660 Woodward | Detroit | MI | 48226 | |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 | |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 | |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 | |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 | |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 | |
| US Attorneys Office | Michael Garcia | 1 St. Andrews Plaza | | New York | NY | 10007 | |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 | |
| Utah State Tax Commission | | 210 North 1950 West | | Salt Lake City | UT | 84134-0180 | |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 | |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 | |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 | |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 | |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 | |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 | |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 | |
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 | |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 | |
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 | |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 | |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 | |
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 | |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 | |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

20 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

Delphi Corporation
Pg 31 of 168
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 | |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 | |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 | |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 | |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 | |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 | |
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Blgd | Richmond | IN | 47374 | |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 | |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 | |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 | |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 | |
| Westbrook Mfg Inc | Bradley Kirkpatrick Business Development and Program Manager | 600 N Irwin St | | Dayton | OH | 45403 | |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 | |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 | |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 | |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 | |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 | |
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 | |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 | |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 | |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 | |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 | |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 | |
| Wv Secretary Of State | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | | Charleston | WV | 25305 | |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 | |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 | |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 | |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 | |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 | |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

21 of 21

11/20/2007 2:02 PM
For AOS - All TRW Special Parties

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

11/20/2007 1:16 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

11/20/2007 1:16 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

11/20/2007 1:16 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | 202-887-4288 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | 590 Madison Ave | | New York | NY | 10022-2524 | | 212-872-1000 | 212-872-1002 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Company, Ltd., and Furukawa Electric North America APD, Inc. |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | 205-226-8799 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering Co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Michael A Trentadue Carina M de la Torre | 2700 First Indiana Plz | 135 N Pennsylvania St | Indianapolis | IN | 46204 | | 317-684-5000 | 317-684-5173 | mtrentadue@boselaw.com cdelatorre@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Internet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | 500 Woodward Ave Suite 2700 | One Detroit Center | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Garvey Schubert Barer | Roberto Carrillo | 100 Wall St 20th Fl | | New York | NY | 10005 | | 212-965-4511 | 212-334-1278 | rcarrillo@gsblaw.com | Attorney's for Tecnomec S.r.l. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes & Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation; Co counsel for Yazaki North America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 60 E 42nd St 37th Fl | | New York | NY | 10165-0150 | | 212-661-3535 | 212-972-1677 | sgross@hodgsonruss.com | Co-Counsel for Yazaki North America, Inc. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Williams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Williams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to  Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Inc. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@morritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | 614-752-2441 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | RFeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin K. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p. A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p. A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | 724-981-1398 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com  mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | 608-294-4920 | rfp@quarles.com | Counsel for Flambeau Inc. |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. Counsel for Pamela Gellar |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher P. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang, Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | 502-779-8274 502-587-6391 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Counsel to The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Company |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

11/20/2007 1:35 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | 440-930-8098 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

11/20/2007 1:35 PM
Email

# EXHIBIT C

**Bidding Procedures Hearing Date And Time:  November 16, 2007 at 10:00 a.m.**
**Bidding Procedures Objection Deadline:  September 24, 2007 at 4:00 p.m.**
**Sale Hearing Date And Time:        November 29, 2007 at 10:00 a.m. (If <u>No</u> Qualified**
                          **Bids Are Received By Bid Deadline)**
**Sale Hearing Objection Deadline: November 26, 2007 at 4:00 p.m.**
**Sale Hearing Date And Time:        December 20, 2007 at 10:00 a.m. (If At Least One**
                          **Qualified Bid Is Received By Bid Deadline)**
**Supplemental Objection Deadline:  December 13, 2007 at 4:00 p.m. (If Applicable)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, <u>et al.</u>,
      Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
      In re                               :        Chapter 11
                                          :
DELPHI CORPORATION, <u>et al.</u>,              :        Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EXPEDITED MOTION FOR ORDERS UNDER 11 U.S.C. §363 AND FED. R. BANKR. P. 2002,
6004, AND 9014 (A) (I) APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN BID
PROTECTIONS, (III) APPROVING FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING SALE
HEARING DATE AND (B) AUTHORIZING AND APPROVING SALE BY DELPHI AUTOMOTIVE
SYSTEMS LLC AND DELPHI TECHNOLOGIES, INC. OF CERTAIN EQUIPMENT AND OTHER ASSETS
<u>PRIMARILY USED IN DEBTORS' SAGINAW CHASSIS BUSINESS FREE AND CLEAR OF LIENS</u>

("SAGINAW CHASSIS ASSET SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this expedited motion (the "Motion") for orders under 11 U.S.C. § 363 and Fed.

R. Bankr. P. 2002, 6004, and 9014 (a)(i) approving the bidding procedures set forth herein and

attached hereto as Exhibit A (the "Bidding Procedures"), (ii) granting certain bid protections, (iii)

approving the form and manner of sale notices (the "Notice Procedures"), and (iv) setting a date

for the sale hearing (the "Sale Hearing") and (b) authorizing and approving the sale (the "Sale")

of certain assets of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Technologies,

Inc. (together with DAS LLC, the "Selling Debtor Entities") comprising a significant portion of

the assets (the "Acquired Assets"), including, without limitation, manufacturing equipment and

test and development equipment primarily used and located at DAS LLC's chassis facility in

Saginaw, Michigan[1] (the "Saginaw Chassis Business") for approximately $26.4 million and other

consideration, including Inventory Value (as defined below) and the Saltillo Expense

Reimbursement (as defined below).  The Acquired Assets are being sold free and clear of liens

pursuant to the Asset Purchase Agreement (the "Agreement")[2] dated September 17, 2007 by and

among the Selling Debtor Entities and TRW Integrated Chassis Systems LLC (the "Purchaser")

or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid.

Delphi Canada (together with the Selling Debtor Entities, the "Sellers") also will be selling

certain manufacturing equipment and personal property (the "Canadian Assets") for $1.2 million

---

[1]    In addition to the assets located at the chassis facility located in Saginaw, Michigan, the Selling Debtor Entities
are also selling assets located at facilities in Spring Hill, Tennessee, Dayton, Ohio, and Saltillo, Mexico.  Delphi
Canada, Inc. ("Delphi Canada"), a non-Debtor affiliate, is also selling assets located at a facility in Oshawa,
Ontario, Canada pursuant to an Asset Purchase Agreement dated September 17, 2007 by and between Delphi
Canada and the Purchaser (the "Canadian Agreement"), which is an agreement ancillary to the Agreement and
is attached hereto as Exhibit B.  The Canadian Assets (defined below) are being sold as part of the competitive
bidding process described herein.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to in the Agreement.

to the Purchaser or to the Successful Bidder submitting a higher or otherwise better bid.  In

support of this Motion, the Selling Debtor Entities respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S.

Trustee appointed an official committee of equity holders (the "Equity Committee," and together

with the Creditors' Committee, the "Statutory Committees").

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 363 of

the Bankruptcy Code and rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

3

$15.4 billion.[3]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Court. [4]

6.     The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

7.     Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

---

[3]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[4]     On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

4

C.       Events Leading To The Chapter 11 Filing

8.       In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[5] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

9.       The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

10.       In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

---

[5]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

5

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas:[6] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[7]

second, concluding their negotiations with GM to finalize GM's financial support for the

Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[8]

third, streamlining their product portfolio to capitalize on their world-class technology and

---

[6]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors and a plan framework
support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally
terminated the equity purchase and commitment agreement and related plan framework support agreement but
that it expected to enter into new framework agreements with plan investors presently.  Subsequently, on July
18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment
agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan
investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill
Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate
of Pardus Capital Management, L.P. (collectively, the "New Plan Investors").  Under the Delphi-Appaloosa
EPCA, the New Plan Investors agreed to invest up to $2.55 billion in preferred and common equity in the
reorganized Delphi to support the Company's transformation plan and plan of reorganization.  This Court
approved the Delphi-Appaloosa EPCA on August 2, 2007.

[7]    Among the progress made to date, on June 22, 2007, Delphi reached an agreement with the International Union,
United Automobile, Aerospace, and Agricultural Implement Workers of America (the "UAW") and GM that (a)
modifies, extends, or terminates provisions of the existing collective bargaining agreements among Delphi, the
UAW, and its various locals, (b) provides that GM will undertake certain financial obligations to Delphi's
UAW-represented employees and retirees to facilitate these modifications, and (c) modifies retiree welfare
benefits for certain UAW-represented retirees of the Debtors.  This agreement, which was approved by this
Court on July 19, 2007, should permit the Debtors to continue to implement their transformation plan and to
develop, prosecute, confirm, and consummate a plan of reorganization.  On August 6, 2007, similar agreements
were reached with the International Association of Machinists and Aerospace Workers and its District 10 and
Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663,
International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication
Workers of America and its local unions, and Locals 832S, 18S, and 101S of the International Union of
Operating Engineers.  Such agreements were approved by this Court on August 16, 2007.  On August 16, 2007,
Delphi also reached a similar agreement with the United Steel, Paper and Forestry, Rubber, Manufacturing,
Energy, Allied Industrial and Service Workers International Union and USW Local 87L, which was approved
by this Court on August 29, 2007.

[8]    On September 6, 2007, Delphi announced that it has entered into comprehensive settlement agreements with
GM consisting of a Global Settlement Agreement and a Master Restructuring Agreement, both of which are
subject to this Court's approval as part of the plan confirmation process.  Delphi's comprehensive settlement
with GM resolves all outstanding disputes between Delphi and GM.

market strengths and make the necessary manufacturing alignment with their new focus;[9] fourth,

transforming their salaried workforce to ensure that the Company's organizational and cost

structure is competitive and aligned with its product portfolio and manufacturing footprint;[10] and

devising a workable solution to their current pension situation.[11]

E.    The Debtors' Plan Of Reorganization

12.    On September 6, 2007, the Debtors reached another key milestone in their

chapter 11 cases by filing their Joint Plan Of Reorganization Of Delphi Corporation And Certain

Affiliates, Debtors And Debtors-In-Possession (the "Plan").  The Plan is based upon a series of

global settlements and compromises that involve every major constituency in the Debtors'

reorganization cases.  Indeed, the Debtors, the Debtors' principal U.S. labor unions, GM, the

Statutory Committees, and the lead plaintiffs in certain securities actions (on behalf of holders of

various claims based on alleged violations of federal securities laws and the Employee

Retirement Income Security Act of 1974, as amended) all have contributed to global settlements

---

[9]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants.  The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders.  During the 2006 and 2007 calendar years, for example, the Debtors sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, and obtained court approval for the sale of substantially all of the assets of their brake hose, catalyst, and Saltillo, Mexico brake plant businesses.  In addition, as announced publicly, the Debtors anticipate selling additional non-core assets, including, without limitation, their steering, interior, and closures businesses.

[10]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.  To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[11]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 plan year funding waivers, which were approved by the IRS, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 28, 2008, respectively.

7

and compromises that provide for a recovery through a plan distribution amounting to the principal amount of the claim plus accrued interest at a negotiated plan value for general unsecured creditors, and agreed upon distributions to other classes of creditors and interests.  The Plan is supported by the Creditors' Committee on behalf of unsecured creditors, the Equity Committee on behalf of holders of Delphi's common stock, and GM.  A hearing will be held on October 3, 2007 to approve the Debtors' solicitation procedures and disclosure statement with respect to the Plan.  The Debtors will seek to have a hearing on confirmation of the Plan on November 19, 2007.  The Debtors expect to emerge from these chapter 11 cases on December 31, 2007.

13.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

14.    By this Motion, the Selling Debtor Entities seek approval for the sale of the Acquired Assets to the Purchaser, which is subject to additional competitive bidding pursuant to the proposed Bidding Procedures.  To effect the sale, the Selling Debtor Entities seek entry of two types of relief.  First, at the omnibus hearing to be held on September 27, 2007, the Selling Debtor Entities will seek entry of an order substantially in the form attached hereto as <u>Exhibit C</u> (the "Bidding Procedures Order") approving the Bidding Procedures, Notice Procedures, and certain bid protections to be provided to the Purchaser pursuant to the Agreement and as described more fully herein.  Second, subject to the terms of the Bidding Procedures Order, at

8

the omnibus hearing to be held on October 25, 2007, the Selling Debtor Entities will seek entry

of an order substantially in the form attached hereto as Exhibit D (the "Sale Approval Order")

authorizing and approving the Sale to the Purchaser or to the Successful Bidder, as the case may

be.

15.     As more fully set forth below, after a comprehensive strategic review, the

Selling Debtor Entities believe that the Sale is their best opportunity under the circumstances to

maximize the underlying core value of the Acquired Assets.  Therefore, the Sale is in the best

interests of their estates and their stakeholders.

Basis For Relief

F.     The Saginaw Chassis Equipment

16.     The Sellers operate certain manufacturing and subassembly facilities in

Saginaw, Michigan, Oshawa, Ontario, Canada, and Spring Hill, Tennessee.  These facilities

provide a variety of brake corner assemblies, components (rotors, knuckles, and brake drums),

and axle modules to GM and other customers for both truck and passenger car applications.  In

2006, the net revenues of the Saginaw Chassis Business were approximately $925 million.  The

facility in Saginaw (the "Saginaw Facility") currently employs approximately 700 active hourly

employees represented by the International Union of Automobile, Aerospace and Agricultural

Workers of America, Local Union No. 467 (the "Local UAW") and approximately 78 salaried

employees.

G.     Factors Leading To The Sale

17.     On March 31, 2006, the Debtors announced the five key tenets of their

transformation plan, one of which was to streamline their product portfolio by identifying non-

core product lines that do not fit into their future strategic framework.  Indeed, the brake business

was identified as a non-core product line.  Since the Saginaw Chassis Business, which is a subset

9

of the Debtors' brake business, does not fit within the Debtors' anticipated product portfolio, the Sellers have determined to divest the Acquired Assets and have worked with GM to develop a resourcing plan.

18.     In 2006, GM began to resource certain brake corner module and rear axle businesses from the Sellers to the Purchaser and other suppliers via the normal purchasing quoting process and GM requested that the Sellers work with these suppliers to transfer manufacturing capability.  The Acquired Assets have been used by the Selling Debtor Entities to produce these products for GM prior to and during this transition period.  The Selling Debtor Entities, therefore, determined that the value of the Acquired Assets would be maximized through a divestiture and maintenance of production at the current site.  Absent a divestiture at this time, it is likely that the Acquired Assets would be liquidated at auction, yielding far less value to the Selling Debtor Entities.

19.     Because GM resourced the procurement of brake corner modules and rear axles from the Sellers to the Purchaser, for the past nine months, the Sellers and the Purchaser have been negotiating agreements related to the Sale of the Acquired Assets and the Canadian Assets.  The parties have been coordinating the transition of designated programs and determining which machinery and equipment, related supplies, tools, and inventory is required to effect a smooth transition.  Both parties determined that maintaining the manufacturing at the Saginaw Facility was the best alternative that minimizes transition risk, and therefore, as part of the Agreement, the Sellers decided to lease the Saginaw Facility and the Purchaser decided to consolidate and transfer certain machinery and other assets located in Oshawa, Ontario, Canada, Spring Hill, Tennessee and Saltillo, Mexico into the Saginaw Facility.  Because the Debtors manufacture other parts for customers from the Saginaw Facility, the Debtors requested and the Purchaser has agreed to manufacture some brake programs on behalf of the Sellers as a contract

10

manufacturer pursuant to the terms of the Contract Manufacturing Agreement (as defined

below), until such customer programs expire in July 2008. The Contract Manufacturing

Agreement obviates the need for the Sellers to transfer production and incur unnecessary costs

and risks. Both parties have also agreed on a Transition Services Agreement (defined below)

providing needed services to ensure a smooth transition.

20.    The Selling Debtor Entities, in their business judgment, concluded that the

proposal from the Purchaser, which formed the basis of the Agreement attached hereto as Exhibit

E, offered the most advantageous terms and the greatest economic benefit to the Selling Debtor

Entities. The Purchaser's offer is currently the highest and best offer, providing the highest

amount of consideration for the Acquired Assets.

H.    The Agreement

21.    Pursuant to the Agreement, the Sellers would sell the Acquired Assets to

the Purchaser for approximately $26.4 million and other consideration, including the cost of

useable and merchantable inventory existing as of the closing date (the "Inventory Value") and

out of pocket costs and expenses incurred in relocating manufacturing equipment and related

tooling from Saltillo, Mexico[12] and installing and requalifying such manufacturing equipment

and tooling at the Leased Premises (as defined below) (the "Saltillo Expense Reimbursement").[13]

The Acquired Assets of the Selling Debtor Entities would be sold free and clear of all liens

(including tax liens and any statutory or common law liens, possessory or otherwise), charges,

pledges, security interests, conditional sale agreements or other title retention agreements, leases,

mortgages, security interests, options, or other encumbrances (including the filing of, or

---

[12]    The assets being relocated from Saltillo, Mexico are not related to the assets being sold under this Court's order
approving the sale of DAS LLC's Mexico Brake Plant assets, dated July 19, 2007 (Docket No. 8705).

[13]    Unless otherwise agreed in writing by the Purchaser, the Saltillo Expense Reimbursement is capped at
$400,000.

11

agreement to give, any financing statement under the Uniform Commercial Code of any

jurisdiction) and any monetary amounts which are secured by any lien (collectively, the "Liens").

      22.    The significant terms of the Agreement are as follows:[14]

      (a)    <u>General Terms</u>.  The Purchaser would acquire the Acquired Assets, which comprise substantially all of the assets[15] primarily used by the Saginaw Chassis Business, through an asset sale.[16]

      (b)    <u>Bankruptcy Court Approval</u>.  The Sale of the Acquired Assets would be subject to approval by this Court and competitive bidding pursuant to the Bidding Procedures.

      (c)    <u>Documentation</u>.  The Sale would be effected pursuant to the Agreement and related documentation.  At the Closing, the Selling Debtor Entities and the Purchaser would enter into, among others, the following agreements: (i) a lease agreement (the "Lease Agreement") granting the Purchaser certain rights in the Saginaw Facility located at 2328 East Genesee Avenue, Saginaw, Michigan (the "Leased Premises"), (ii) a transition services agreement providing the Purchaser certain transition services (the "Transition Services Agreement"), and (iii) a contract manufacturing agreement describing the products to be manufactured by the Purchaser on Selling Debtor Entities' behalf until July 2008 (the "Contract Manufacturing Agreement," and together with the Lease Agreement, the Transition Services Agreement and the Canadian Agreement, the "Ancillary Agreements").

      (d)    <u>Purchase Price</u>.  The purchase price to be paid by the Purchaser would be approximately $26.4 million for the Acquired Assets plus the Inventory Value and the Saltillo Expense Reimbursement (the "Purchase Price").[17]

      (e)    <u>Deposit Escrow</u>.  Upon execution of the Agreement, the Purchaser placed $2,000,000 of the Purchase Price into an escrow account.  Upon Closing, or if the Agreement is terminated prior to Closing because of certain actions of the Purchaser, the Selling Debtor Entities would be entitled to the funds in the escrow account.  Any such payment would

---

[14]    In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of the Agreement are controlling.

[15]    Delphi Canada is also selling the Canadian Assets pursuant to the Canadian Agreement.

[16]    Copies of the (i) schedules to the Agreement and (ii) the above-referenced contract manufacturing, transition services, and lease agreements are available upon request to parties-in-interest who can show that they would be affected by the relief requested by this Motion and who execute a confidentiality agreement acceptable to the Debtors.

[17]    The purchase price to be paid by the Purchaser for the Canadian Assets under the Canadian Agreement would be $1.2 million, and combined with the Purchase Price of approximately $26.4 million and assumed Inventory Value of approximately $15 million, the cumulative purchase price paid by the Purchaser would be approximately $42.6 million.

constitute the Selling Debtor Entities' sole recourse in the event that the Purchaser terminates the Agreement prior to the date of the Auction (as defined below).  Upon any breach by the Purchaser on or after the Auction date, the Selling Debtor Entities would be entitled to all available remedies in law or equity.

(f)     Representations And Warranties.  Pursuant to the Agreement, the Selling Debtor Entities would provide certain standard representations and warranties relating to the Sale of the Acquired Assets and the Purchaser would provide representations and warranties generally standard in a transaction of this type.  The representations and warranties of the parties would survive closing of the Sale and expire on the later of the second anniversary of the closing date or 90 days after the applicable party discovers the indemnifiable claim.

(g)     Covenants.  The Ancillary Agreements would be executed and delivered by the Sellers to the Purchaser, and all other agreements and transactions contemplated under the Agreement or any Ancillary Agreement to be performed by the Sellers on or before the Closing would be performed in all material respects.  The Sellers would also be required to, among other things: (i) use and operate the Acquired Assets in the ordinary course of business and supply products to its customers and maintain and repair the Leased Premises and all tangible Acquired Assets as previously done in the ordinary course of business, (ii) use commercially reasonable efforts to comply with all requirements under the Bankruptcy Code and the Bankruptcy Rules in connection with obtaining approval of the sale of the Acquired Assets, and (iii) use commercially reasonable efforts to take all actions necessary, proper, or advisable to effectuate the Sale in accordance with the Agreement or Ancillary Agreements.  For a period of five years after the Closing, the Sellers would be required not to take certain actions which would place it in competition with the Purchaser with respect to the Saginaw Chassis Business.  Simultaneously with the execution of the Agreement, the Purchaser's indirect parent, Kelsey-Hayes Company, has executed a guaranty related to the Purchaser's obligations under the Agreement.

(h)     Additional Assets. Should the Selling Debtor Entities or the Purchaser determine, in their reasonable discretion, that any machinery or equipment (i) used by the Selling Debtor Entities exclusively in the production of the products or operation of the Leased Premises and (ii) necessary to enable the Purchaser to manufacture the products or operate the Leased Premises was not included in the Acquired Assets (the "Additional Assets"), the Selling Debtor Entities would transfer, sell, and assign such Additional Assets to the Purchaser, but only to the extent that (x) the Selling Debtor Entities still own such Additional Assets (and have not entered into a binding agreement to sell same), (y) the gross book value on the Selling Debtor Entities' balance sheet (the "GBV") of each such Additional Asset is less than $250,000 (the "Individual Threshold Value"), and (z) the total GBV of such Additional Assets and any other Additional Assets previously transferred under the Agreement is, in the aggregate, less than $750,000 (the "Aggregate Threshold Value").  For any Additional Asset with a GBV that exceeds the Individual Threshold Value, such Additional Asset would be available for sale to the Purchaser for a purchase price that is equal to 22% of the GBV of the applicable Additional Asset.  Once the Aggregate Threshold Value is reached, including by transfer of a particular Additional Asset that exceeds the Aggregate Threshold Value, any remaining Additional Assets would also be available for sale to the Purchaser for a purchase price that is equal to 22% of the GBV of the applicable Additional Asset.  For the avoidance of doubt, any assets other than the Additional

13

Assets, including without limitation assets related to the GMT295 program or manufacture of calipers for the GMX211 program, that the Purchaser desires to purchase from the Selling Debtor Entities would be available only for sale to the Purchaser at the Selling Debtor Entities' sole discretion and on terms acceptable to the Selling Debtor Entities in their sole discretion.

    (i) <u>Indemnification</u>.  The Selling Debtor Entities have agreed to indemnify the Purchaser for damages incurred by Purchaser as a result of or arising out of: (i) the liabilities retained by the Selling Debtor Entities and excluded assets, (ii) a breach of any representation or covenant of the Selling Debtor Entities contained in the Agreement, or (iii) a breach of any covenant to be performed by the Selling Debtor Entities under the Agreement.

    (j) <u>Closing Conditions</u>.  In addition to certain other customary closing conditions relating to the Court's approvals and regulatory matters, the obligation of the parties to close the Sale would be subject to the satisfaction of the following conditions: (i) the performance in all respects by the Selling Debtor Entities and the Purchaser of their covenants under the Agreement and (ii) the accuracy of the Selling Debtor Entities' and Purchaser's representations and warranties in all material respects.  Furthermore, the obligation of the Purchaser and the Selling Debtor Entities to close the Sale would be subject to (a) the Purchaser's assumption of all of the collective bargaining agreements applicable to the hourly employees identified in the Agreement according to the terms set forth in the Agreement and (b) the Selling Debtor Entities' license to GM of certain licensed intellectual property.[18]  The Selling Debtor Entities' obligation to consummate the Sale would be conditioned on GM's entering into an agreement reasonably acceptable to the Selling Debtor Entities releasing the Selling Debtor Entities of their obligations to manufacture and deliver products to GM upon the Purchaser's assuming responsibility to manufacture and deliver such products to GM.  In addition, the Purchaser would enter into a supply agreement with GM on terms and conditions fully satisfactory to the Purchaser by September 26, 2007.  Also, by no later than September 24, 2007, the Purchaser would complete its due diligence review of certain collectively bargained documents.  If the Purchaser is willing to assume the obligations imposed by such documents, then the Purchaser would so advise the Selling Debtor Entities in writing no later than 5:00 p.m. (prevailing Eastern time) on September 24, 2007, whereupon this condition to Closing would be satisfied in full.  If the Purchaser is unwilling to assume the obligations imposed by such documents, and therefore there would be no hearing on the Motion and the Agreement would be terminated, the Purchaser would so advise the Selling Debtor Entities in writing no later than 5:00 p.m. (prevailing Eastern time) on September 24, 2007.  Lastly, if the Term Sheet—Delphi Pension Freeze and Cessation of OPEB and GM Consensual Triggering of Benefit Guarantee (the "Term Sheet") will not be in effect on the date identified by the parties as the date of the Closing, the parties, in conjunction with the UAW and GM, as applicable, would use reasonable efforts to reach a satisfactory resolution of the benefit issues relative to the Term Sheet.  Such condition to Closing would be deemed satisfied once the parties reach a satisfactory resolution of these issues.

---

[18] At the September 27, 2007 omnibus hearing, by separate motion, the Debtors will also seek authority to enter into and perform under a license agreement with GM, which agreement, subject to this Court's approval, would satisfy the above intellectual property condition to closing.

(k)    <u>Termination</u>.  The Agreement could be terminated in the following circumstances (but not by a party which is in breach of the Agreement) by either the Sellers or the Purchaser: (i) upon mutual written consent of the Sellers and the Purchaser, (ii) if the Sellers consummate an Alternative Transaction (as defined below), (iii) provided that the terminating party is not in breach of its obligations under the Agreement, if a Sale Approval Order is not entered by December 15, 2007, and such Sale Approval Order, as of December 15, 2007, is not subject to a stay or injunction, (iv) provided that the terminating party is not in breach of its obligations under the Agreement, if the Closing has not occurred for any reason prior to January 10, 2008, (v) if a Material Adverse Effect occurs, but only by a party that is not in breach of the Agreement, and (vi) if at any time prior to the Closing if the Purchaser fails to perform any of its covenants or obligations under the Agreement or materially breaches any representation or warranty under the Agreement.

(l)    <u>Certain Supplier Contracts.</u>  Prior to the closing date, the Purchaser would provide the Sellers with written notice identifying any suppliers of goods or services necessary for the manufacture of the products or operation of the Leased Premises who currently supply or process raw materials or sub-components to the Sellers or who provide services to the Selling Debtor Entities pursuant to a supplier contract and who refuse to do business with Purchaser on terms reasonably acceptable to the Purchaser.  At the Purchaser's option, the Selling Debtor Entities would make available to the Purchaser the goods or services provided by such suppliers under the relevant supplier contracts in accordance with the terms of the Transition Services Agreement.

I.    <u>Workforce Provisions</u>

23.    The Agreement does not provide for the transfer of any of the Selling Debtor Entities' salaried employees.  The Purchaser, however, has interviewed many salaried employees regularly assigned to work at the Leased Premises and certain other salaried employees located at other locations (Troy, Michigan, Dayton, Ohio, and Brighton, Michigan) who spend a majority of their time supporting the design, development, material purchasing, and product launch for the production or assembly of products at the Leased Premises, Spring Hill, Tennessee, or Oshawa, Ontario, Canada.  After completing the interviews for the purpose of determining to which salaried employees the Purchaser would make an offer, the Purchaser would provide the Sellers two lists. One list would identify the salaried employees to whom the Purchaser wishes to extend an offer of employment.  The other list would identify salaried employees to whom the Purchaser does not wish to extend an offer of employment (the

15

"Excluded Employees").  The lists would be provided to the Selling Debtor Entities as soon as practicable, but no later than 30 days from the date of the Agreement.

24.     Under the terms of the Agreement, for each salaried employee offered a position by the Purchaser, the Purchaser would provide the Selling Debtor Entities with the terms of each individual offer of employment.  In the event that the Selling Debtor Entities determine that each offer provides wages and benefits that are substantially comparable in the aggregate to wages and benefits that the Selling Debtor Entities provide the salaried employee as of the offer date, they would advise Purchaser and the employee of such determination.  In the event that the Selling Debtor Entities determine that the terms are not substantially similar in the aggregate, the Purchaser may, in its sole discretion, cure any deficiency so as to meet this standard.

25.     If after consultation with the Purchaser, the Selling Debtor Entities determine that the terms of employment offered by the Purchaser are not substantially comparable in the aggregate to the current terms of employment, the Sellers would promptly so inform the affected employee and provide such employee the option of (a) receiving severance benefits from the Selling Debtor Entities in accordance with the Delphi Corporation Separation Allowance Plan for U.S. Employees or (b) accepting the Purchaser's offer of employment and waiving eligibility for any severance benefits from the Selling Debtor Entities.  In no event, however, would the Purchaser bear any responsibility or liability relating to any severance benefits the Selling Debtor Entities provide to: (i) any of the salaried employees who receive severance benefits from the Selling Debtor Entities in accordance with the Delphi Corporation Separation Allowance Plan for U.S. Employees as the result of the Purchaser's failure to meet the "substantially comparable in the aggregate" standard or (ii) the Excluded Employees.  In addition, for a period of five years after the Closing, the Selling Debtor Entities and their

affiliates would not offer to employ or employ any salaried employees hired by the Purchaser

under the terms of the Agreement.

      26.    With respect to the Selling Debtor Entities' active hourly employees, the

Purchaser would commence employment for all such hourly employees effective at Closing.

Unless the Purchaser is otherwise able to negotiate and execute mutual collective bargaining

agreements with the respective unions prior to Closing, the Purchaser would assume all of the

obligations under the collective bargaining agreements applicable to the transferred hourly

employees.  The Purchaser also agrees to assume and recognize the seniority status of each of the

hourly employees who transfer to the Purchaser for all purposes.

      27.    If the Purchaser is unable to negotiate and execute mutual collective

bargaining agreement prior to Closing and thereby assumes the obligations under the collective

bargaining agreements applicable to the hourly employees identified in the Agreement, then the

following would apply:

      (a)    <u>Pension Plan</u>:  As of the Closing and as provided for in the Agreement, the Purchaser would establish a cash balance pension plan for the benefit of the transferring hourly employees.  Such plan would contain provisions that mirror the provisions of the Selling Debtor Entities' cash balance plan for hourly employees on the close of business on the day immediately preceding the Closing under the terms of the applicable collective bargaining agreements.  With respect to the Purchaser's case balance pension plan, the Purchaser would recognize the pre-closing credited service under the Selling Debtor Entities' cash balance plan of each of the transferring hourly employees for eligibility and vesting purposes, but not benefit accrual purpose.  The Purchaser would recognize post-closing credited service of each of the hourly employees for vesting, eligibility, and benefit accrual purposes subject to the terms of the Purchaser's cash balance plan and the terms of the Agreement.

      (b)    <u>Active Health And Welfare Benefits</u>:  As of the Closing and as provided for in the Agreement, the Purchaser would establish medical, dental, vision, disability, life insurance, and health care spending account plans for the benefit of the transferring hourly employees.  Such plans would contain provisions that mirror the provisions of the Selling Debtor Entities' medical, dental, vision, disability, life insurance, and health care spending account plans that were applicable to the hourly employees on

17

the close of business on the day immediately preceding the Closing under the terms of the applicable collective bargaining agreements.

(c)     Retiree Medical Benefits: As of the Closing and as provided for in the Agreement, the Purchaser would establish a notional post-retirement health care account for the benefit of eligible hourly employees who retire from the Purchaser with an opening balance equal to the individual account balances of such hourly employees under the Selling Debtor Entities' notional post-retirement health care account as of the day immediately prior to Closing.  Such account would contain provisions that mirror the provisions of the Selling Debtor Entities' post-retirement health care account that were applicable to the hourly employees on the close of business on the day immediately preceding the Closing under the terms of the applicable collective bargaining agreements.  The Purchaser would recognize the pre-Closing credited service under the Selling Debtor Entities' post-retirement health care account for each of the transferred hourly employees for eligibility purposes.

(d)     401(k) Plan: As of the Closing and as provided for in the Agreement, the Purchaser would establish a 401(k) plan for the benefit of the transferred hourly employees (or otherwise amend an existing 401(k) plan of Purchaser to include provisions specific to the hourly employees) (the "Purchaser's 401(k) Plan").  The Purchaser's 401(k) Plan would contain provisions that mirror the provisions of the Delphi Personal Savings Plan that were applicable to the hourly employees on the close of business on the day immediately preceding the Closing under the terms of the applicable collective bargaining agreements.

(e)     Supplemental Unemployment Benefit Plan: As of the Closing and as provided for in the Agreement, the Purchaser would establish a supplemental unemployment benefit plan for the benefit of the transferring hourly employees.  Such benefit plan would contain provisions that mirror the provisions of Delphi Supplemental Unemployment Benefit Plan that were applicable to the hourly employees on the close of business on the day immediately preceding the Closing under the term of the applicable collective bargaining agreements.

(f)     Notwithstanding anything to the contrary herein, any transferring hourly employee who is considered a "Covered Employee" under the Term Sheet is not eligible either to participate in the cash balance pension plan or retiree medical plan established by the Purchaser or to receive matching contributions under the Purchaser's 401(k) Plan for the period of time such employee is eligible for benefits through GM in accordance with the Term Sheet.

18

J.    Bidding Procedures

28.    The Sale of the Acquired Assets and the Canadian Assets would be subject

to higher or otherwise better offers pursuant to the Bidding Procedures.  The Selling Debtor

Entities believe that the proposed structure of the Bidding Procedures is the one most likely to

maximize the realizable value of the Acquired Assets for the benefit of the Selling Debtor

Entities' estates, their stakeholders, and other interested parties.  Accordingly, the Selling Debtor

Entities seek approval of the Bidding Procedures for the Sale of the Acquired Assets.

29.    The Bidding Procedures describe, among other things, the assets available

for sale, the manner in which bidders and bids become "qualified," the coordination of diligence

efforts among bidders, the receipt and negotiation of bids received, the conduct of any

subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s), and

this Court's approval thereof (collectively, the "Bidding Process").

30.    The proposed Bidding Procedures attached hereto as Exhibit A are as

follows:[19]

(a)    Assets To Be Sold:  The assets proposed to be sold are the Acquired
Assets and the Canadian Assets.

(b)    Free Of Any And All Liens: The Selling Debtor Entities' Acquired
Assets are to be sold free and clear of any Liens.

(c)    Participation Requirements:  To ensure that only bidders with a
serious interest in the purchase of the Acquired Assets and the Canadian Assets participate in the
Bidding Process, the Bidding Procedures provide for minimal requirements for a potential bidder
to become a "Qualified Bidder":  (i) executing a confidentiality agreement in form and substance
satisfactory to the Sellers, (ii) providing the Sellers with certain financial assurances as to such
bidder's ability to close a transaction, (iii) submitting a preliminary proposal reflecting the
purchase price range, any Acquired Assets or Canadian Assets expected to be excluded, the
structure and financing of the transaction, any anticipated regulatory approvals, the anticipated
time frame and any anticipated impediments to obtaining such approvals, any additional
conditions to closing that the qualified bidder may wish to impose, and the nature and extent of

---

[19]    In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the
provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary
have the meanings ascribed to them in the Bidding Procedures.

any due diligence it may wish to conduct and the date by which such due diligence would be completed, and (iv) delivering a good faith deposit in the amount of $2,000,000 (the "Good Faith Deposit").

(d)    Due Diligence:  All Qualified Bidders would be afforded an opportunity to participate in the diligence process.  The Sellers would coordinate the diligence process and provide due diligence access and additional information as reasonably requested by any Qualified Bidders.

(e)    Bid Deadline:  A bid deadline of 11:00 a.m. (prevailing Eastern time) on October 16, 2007 (the "Bid Deadline") would be established.  The Selling Debtor Entities may extend the Bid Deadline once or successively, but are not obligated to do so.  If the Selling Debtor Entities extend the Bid Deadline, they would promptly notify all Qualified Bidders of such extension.

(f)    Break-up Fee:  Only in the event that the Selling Debtor Entities terminate the Agreement to consummate an Alternative Transaction (as defined below) and sell, transfer, or otherwise dispose of all or substantially all or a material portion of the Acquired Assets in a transaction or a series of related transactions with one or more parties other than the Purchaser in accordance with the Bidding Procedures (the "Alternative Transaction"), the Sellers would pay the Purchaser an amount equal to $1,500,000 (the "Break-Up Fee").  Notwithstanding the foregoing, the Purchaser would not be entitled to a Break-Up Fee if the Purchaser would be in material breach of the Agreement or the Bidding Procedures.

(g)    Bid Requirements:  All bids would be required to include the following documents: (i) a letter stating that the bidder's offer would be irrevocable until two business days after the Closing, (ii) an executed copy of the Agreement, together with all schedules, marked to show amendments and modifications to the agreement, purchase price, and proposed schedules, (iii) a Good Faith Deposit, and (iv) satisfactory written evidence of a commitment for financing or other ability to consummate the proposed transaction.

(h)    Qualified Bids:  To be deemed a "Qualified Bid," a bid would be required to be received by the Bid Deadline and, among other things, would be required to (i) be on terms and conditions that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than those contained in the Agreement, (ii) not be contingent on obtaining financing or the outcome of unperformed due diligence, (iii) have a value greater than the purchase price reflected in the Agreement, the purchase price reflected in the Canadian Agreement, and the amount of the Break-Up Fee, plus $500,000 initially, and in increments of $250,000 for any subsequent bid, (iv) not be conditioned on any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment, (v) contain acknowledgements and representations as set forth in the Bidding Procedures, and (vi) include a commitment to consummate the purchase of the Acquired Assets and the Canadian Assets within not more than fifteen days after entry of the Court's order approving such purchase.

(i)    Conduct Of Auction:  If the Sellers receive at least one Qualified Bid in addition to that of the Purchaser, they would conduct an auction (the "Auction") of the Acquired Assets and the Canadian Assets at 10:00 a.m. (prevailing Eastern time) on or before October 23, 2007, or such later time as the Sellers notify all Qualified Bidders who have submitted Qualified Bids, in accordance with the procedures outlined in the Bidding Procedures,

20

which include: (i) attendance at the Auction would be limited to specified parties as outlined in the Bidding Procedures, (ii) at least two Business Days prior to the Auction, each Qualified Bidder with a Qualified Bid would be required to inform the Sellers whether it intends to participate in the Auction and at least one Business Day prior to the Auction, the Sellers would be required to provide such bidders attending the auction with copies of the Qualified Bid or combination of Qualified Bids which the Sellers then believe is the highest or otherwise best offer for the Acquired Assets and the Canadian Assets, (iii) all Qualified Bidders would be entitled to be present for all subsequent bids, and (iv) bidding at the Auction would begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $250,000 and conclude after each participating bidder has had the opportunity to submit one or more additional subsequent bids.

(j)    Selection Of Successful Bid:  As soon as practicable after the conclusion of the Auction, the Sellers would review each Qualified Bid and identify the highest or otherwise best offer(s) for the Acquired Assets and the Canadian Assets (the "Successful Bid") and the bidder(s) making such bid(s) (the "Successful Bidder(s)"). The Sellers would sell the Acquired Assets and the Canadian Assets for the highest or otherwise best Qualified Bid or combination of Qualified Bids and the transaction would be consummated as soon as reasonably practicable following the approval of such Qualified Bid by the Court.

(k)    Sale Hearing:  The Selling Debtor Entities request that the Sale Hearing be scheduled for October 25, 2007 at 10:00 a.m. (prevailing Eastern time) and that the Sale Hearing could be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing.  If no Qualified Bids other than that of the Purchaser are received, the Sellers would proceed with the sale of the Acquired Assets and the Canadian Assets to the Purchaser following entry of such order.  If the Sellers receive additional Qualified Bids, then at the Sale Hearing, then the Sellers would seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder"). A bid would not be deemed accepted by the Sellers unless and until approved by the Court.  Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Sellers would be permitted to effectuate a sale to the Alternate Bidder without further order of the Court.

(l)    Return Of Good Faith Deposits:  The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) would be held in an interest-bearing escrow account and all Qualified Bids would remain open until two business days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit submitted by the Successful Bidder, together with interest thereon, would be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder.  If a Successful Bidder fails to consummate an approved sale, the Sellers would not have any obligation to return such Good Faith Deposit and such deposit would irrevocably become property of the Sellers.  On the Return Date, the Sellers would return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

(m)    Reservation Of Rights:  The Sellers, after consultation with the agents for its secured lenders and the Creditors' Committee: (i) could determine which Qualified Bid, if any, would be the highest or otherwise best offer and (ii) could reject, at any time, any bid

21

(other than the Purchaser's bid) that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, including the Selling Debtor Entities and their estates and their stakeholders, and as determined by the Selling Debtor Entities in their sole discretion.

K.    Break-Up Fee

31.    The Purchaser has expended, and likely will continue to expend, considerable time, money, and energy pursuing the Sale and has engaged in extended arm's-length and good faith negotiations regarding a possible sale.  The Agreement is the culmination of these efforts.

32.    In recognition of this expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bid protections to the Purchaser. Specifically, the Agreement provides for, and the Selling Debtor Entities respectfully request that the Bidding Procedures Order approve, a break-up fee payable by the Selling Debtor Entities to the Purchaser in the amount of $1,500,000, which is 3.6% of the cumulative purchase price,[20] if the Selling Debtor Entities terminate the Agreement to close an Alternative Transaction and the Selling Debtor Entities consummate an Alternative Transaction.  The Selling Debtor Entities recognize that a 3.6% Break-Up Fee is at the higher end of the range of traditional bid protections approved in asset sales pursuant to section 363 of the Bankruptcy Code. Nonetheless, the Break-Up Fee was a material inducement for, and a condition of, the Purchaser's entry into the Agreement.

33.    The Selling Debtor Entities believe that the proposed Break-Up Fee is fair and reasonable in view of (a) the intensive analysis, due diligence investigation, and negotiation undertaken by the Purchaser in connection with the Sale and (b) the fact that the Purchaser's efforts would maximize the value of the Acquired Assets for the benefit of all stakeholders

---

[20]    Assumes an Inventory Value of approximately $15 million based on current inventory levels and includes the value of the Canadian Assets.

whether as a result of consummating the divestiture pursuant to the Agreement or making the

highest or otherwise best offer to be submitted at any Auction.

        34.    The Purchaser is unwilling to keep open its offer to purchase the Acquired

Assets under the terms of the Agreement unless this Court authorizes payment of the Break-Up

Fee.  Thus, absent entry of the Bidding Procedures Order and approval of the Break-Up Fee, the

Selling Debtor Entities may lose the opportunity to obtain what they believe to be the highest and

best offer for the Acquired Assets.

        35.    Moreover, payment of the Break-Up Fee will not diminish the Selling

Debtor Entities' estates.  The Selling Debtor Entities would not expect to pay the Break-Up Fee

unless and they do so to accept an alternative Successful Bid, which would result in even greater

value to the Selling Debtor Entities' estates and their stakeholders.  The Selling Debtor Entities

thus request that this Court authorize payment of the Break-Up Fee pursuant to the terms and

conditions of the Agreement.

L.      Notice Of Sale Hearing

        36.    Within five days after entry of the Bidding Procedures Order (the "Mailing

Date"), the Selling Debtor Entities (or their agent) propose to serve the Motion, the Agreement,

the proposed Sale Approval Order, the Bidding Procedures, and a copy of the Bidding

Procedures Order by first-class mail, postage prepaid, upon (i) the U.S. Trustee, (ii) counsel for

the Purchaser, (iii) counsel for the Creditors' Committee, (iv) counsel for the Equity Committee,

(v) all entities known to have expressed an interest in a transaction with respect to the Acquired

Assets during the past six months, (vi) all entities known to have asserted any Lien, claim,

interest, or encumbrance in or upon the Acquired Assets, (vii) all federal, state, and local

regulatory or taxing authorities or recording offices, including but not limited to environmental

regulatory authorities, which have a reasonably known interest in the relief requested by the

23

Motion, (viii) the United States Attorney's office, (ix) the United States Department of Justice,

(x) the Securities and Exchange Commission, (xi) the Internal Revenue Service, (xii) all entities

on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1)

And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No.

2883) (the "Supplemental Case Management Order")), and (xiii) such other entities as are

required to be served with notices under the Supplemental Case Management Order.

37.     The Selling Debtor Entities also propose pursuant to Fed. R. Bankr. P.

2002(l) and 2002(d) to publish a notice of the Sale in a form substantially similar to the form

annexed hereto as Exhibit F in the Wall Street Journal (International Edition), the New York

Times, the Saginaw News, and the Bay City Times within five days of entry of the Bidding

Procedures Order or as soon as practicable thereafter, and the Sellers request that such

publication notice be deemed proper notice to any other interested parties whose identities are

unknown to the Sellers.

## Applicable Authority

M.     Approval Of Bidding Procedures

38.     Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use

property of the estate "other than in the ordinary course of business" after notice and a hearing.

11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be

authorized if the debtor demonstrates a sound business justification for it.  See Comm. Of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business

judgment rule requires finding that good business reason exists to grant debtor's application

under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-179 (D.

Del. 1991).

39.    The Second Circuit has held that, although the bankruptcy court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors and the estate." <u>Orion Pictures Corp. v. Showtime Network, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993). The Court's consideration of a debtor's section 363(b) motion is a summary proceeding, intended merely as a means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." <u>Id.</u> at 1098-99.

40.    Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." <u>Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc.</u> (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." <u>Id.</u> To satisfy its burden, it is not enough for an objector simply to raise and argue an objection. Rather, an objector "is required to produce some evidence respecting its objections." <u>Lionel</u>, 722 F.2d at 1071.

41.    As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" <u>In re Aerovox, Inc.</u>, 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting <u>In re Interco, Inc.</u>, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)). As set forth above, the Selling Debtor Entities have sound business justifications for pursuing a sale process at this time. Because GM has resourced the majority of the Saginaw

25

Chassis Business to the Purchaser, the sale of the Acquired Assets and the Canadian Assets from the Sellers to the Purchaser will ensure a seamless transition of operations and minimize interruption to the Saginaw Chassis Business.  In addition, the sale of the Acquired Assets as a whole will generate value substantially higher than if the Selling Debtor Entities wound down the Saginaw Chassis Business.

42.     The Selling Debtor Entities submit that the Bidding Procedures would encourage competitive bidding because the Purchaser would not have entered into the Agreement without such provisions.  The Bidding Procedures have thus induced a bid that otherwise would not have been made.  Finally, the mere existence of the Bidding Procedures permits the Selling Debtor Entities to insist that competing bids be materially higher or otherwise better than the Agreement, which will produce a clear benefit to the Selling Debtor Entities, their estates, their stakeholders, and all other parties-in-interest.

43.     A prospective purchaser of assets from a chapter 11 debtor may be reluctant to make an offer because it knows that even if it reaches agreement with the debtor, its offer will be subject to a higher bid by another party.  Pre-approved bidding procedures address these concerns by assuring initial bidders that any auction procedure will be predictable and reasonable.  Thus, the Selling Debtor Entities submit that the use of the Bidding Procedures also reflects sound business judgment.

N.      Sale Of The Acquired Assets Free And Clear Of Liens

44.     Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;

26

(3) such interest is a lien and the price at which such property is sold is great that the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

45.    Therefore, section 363(f) permits the Selling Debtor Entities to sell the Acquired Assets free and clear of Liens.  Each Lien that is not the result of an assumed liability satisfies at least one of the five conditions of 11 U.S.C. § 363(f), and the Selling Debtor Entities submit that any such Lien will be adequately protected by attachment to the net proceeds of the Sale, subject to any claims and defenses the Selling Debtor Entities may possess with respect thereto.  Accordingly, the Selling Debtor Entities request that the Acquired Assets be transferred to the Purchaser or the Successful Bidder(s), as the case may be, free and clear of all Liens.

O.    The Purchaser Is A Good Faith Purchaser Pursuant To
       Section 363(m) Of The Bankruptcy Code And The Transaction
       Contemplated By The Agreement Should Carry The
       Protections Of Section 363(n) Of The Bankruptcy Code

46.    Section 363(m) of the Bankruptcy Code provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second Circuit Court of Appeals in In re Gucci held that the

good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made.  A purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'

27

126 F.3d at 390 (quoting In re Rock Industries Machinery Corp., 572 F.2d 1195, 1198 (7th Cir.

1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m))); see also Evergreen

Int'l Airlines Inc. v. Pan Am Corp. (In re Pam Am Corp.), Case Nos. 91 Civ. 8319 (LMM) to 91

Civ. 8324 (LMM), 1992 WL 154200 at *4 (S.D.N.Y. June 18, 1992); In re Sasson Jeans, Inc., 90

B.R. 608, 610 (S.D.N.Y. 1988).

47.    Section 363(n) of the Bankruptcy Code further provides, in relevant part,

that:

> The trustee may avoid a sale under this section if the sale price was
> controlled by an agreement among potential bidders at such sale, or may
> recover from a party to such agreement any amount by which the value of
> the property sold exceeds the price at which such sale was consummated,
> and may recover any costs, attorneys' fees, or expenses incurred in
> avoiding such sale or recovering such amount.

48.    The Selling Debtor Entities submit, and will present evidence at the Sale

Hearing, that the Agreement reflects an intensely negotiated, arm's-length transaction.

Throughout the negotiations, the Purchaser has at all times acted in good faith.  Moreover, to the

extent that the assets are sold to a Successful Bidder, it will be because of a well-planned

competitive process and intense negotiations at arm's length to be conducted at an Auction.  As a

result of the foregoing, the Selling Debtor Entities request that the Court make a finding that the

Purchase Price to be paid by the Purchaser constitutes reasonably equivalent value and fair

consideration under any applicable law.

49.    The Selling Debtor Entities, therefore, request that this Court make a

finding that the Purchaser has purchased the Acquired Assets in good faith within the meaning of

section 363(m) of the Bankruptcy Code.  Further, the Selling Debtor Entities request that this

Court make a finding that the asset purchase agreement reached as a result of the Bidding

Procedures necessarily will comprise an arm's-length, intensely-negotiated transaction entitled to

the protections of section 363(m) of the Bankruptcy Code.  Because the Selling Debtor Entities

28

have shown that the Purchaser's successful bid is not the product of fraud or collusion between

the Purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of

other bidders, the Selling Debtor Entities further request that this Court make a finding that the

transactions contemplated by the Agreement are not avoidable under section 363(n) of the

Bankruptcy Code.

P.    Approval Of The Break-Up Fee

50.    Bidding incentives encourage potential bidders to invest the requisite time,

money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to

the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11

process.  See, e.g., In re 995 Fifth Ave. Associates, L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992)

(bidding incentives may "be legitimately necessary to convince a white knight to enter the

bidding by providing some form of compensation for the risks it is undertaking") (citation

omitted).  Bankruptcy courts often approve bidding incentives under the business judgment rule.

In re Global Crossing Ltd., 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) ("[N]o litigant has

seriously argued the inapplicability of the business judgment test, and if any such argument had

been made, the Court would be compelled . . . to reject it."); In re Bethlehem Steel Corp., Case

No. 02 Civ. 2854 (MBM), 2003 WL 21738964 at *8 n.13 (S.D.N.Y. July 28, 2003) (the court

should approve agreements providing bidding incentives "unless they are unreasonable or appear

more likely to chill the bidding process than to enhance it").  One court, explaining the force of

the business judgment rule in this context, stated "the business judgment rule does not become

inapplicable simply because a court decides a break-up fee is too large."  In re Integrated

Resources, 147 B.R. at 660.

51.    In this district, courts have established a three part-test for determining

when to permit bidding incentives.  The three factors are: "whether (i) the relationship of parties

29

who negotiated breakup fee is tainted by self-dealing or manipulation, (ii) the fee hampers, rather than encourages, bidding, and (iii) the amount of the fee is unreasonable relative to purchase price." Id.

      52.    Here, the Selling Debtor Entities seek authority to utilize the Bidding Process and the Break-Up Fee in the event that the Purchaser is not ultimately the Successful Bidder or must increase the Purchaser's bid price to become the Successful Bidder.  As the stalking horse bidder, the Purchaser has contributed a significant investment in time and resources.  Although the proposed $1,500,000 Break-Up Fee is 3.6% of the cumulative purchase price,[21] the Selling Debtor Entities believe that in these circumstances the Break-Up Fee is nonetheless fair and reasonable in amount.  Moreover, the Purchaser is not entitled to an expense reimbursement under the Agreement.  See, e.g., In re Allegiance Telecom, Inc., Case No. 03-13057 (RDD) (Bankr. S.D.N.Y. 2004) (allowing 2.8% break-up fee and expense reimbursement provision in asset sale agreement); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2004) (approving 3% break-up fee if debtor closes superior transaction); In re Loral Space & Communications Ltd., Case Nos. 03-41710 and 03-41709 (RDD) (Bankr. S.D.N.Y. 2003) (allowing 2% for break-up fee and .8% for expense reimbursement only if court enters order approving alternative transaction); In re Genuity Inc., Case No. 02-43558 (PCB)(Bankr. S.D.N.Y. 2002) (allowing 4.13% break-up fee if court approved alternative transaction); In re PSINet, Inc., Case No. 01-13213 (REG) (Bankr. S.D.N.Y. 2001) (permitting 4.28% break-up fee in event that seller consummated transaction with alternative bidder); In re Teligent, Inc., Case No. 01-12974 (SMB) (Bankr. S.D.N.Y. 2001) (allowing break up fee ranging from 1.3% to 4.25% depending on value of alternative transaction).

---

[21]   Assumes an Inventory Value of approximately $15 million based on current inventory levels and includes the value of the Canadian Assets.

Q.    Conclusion

53.    The Selling Debtor Entities submit that the relief requested in this Motion,

including the Bidding Procedures, bid protections, and Notice Procedures are in the best interests

of the Selling Debtor Entities' estates and will maximize value for all stakeholders.  The Selling

Debtor Entities will further show at the Sale Hearing that the entry approving the Sale of the

Acquired Assets of the Selling Debtor Entities free and clear of Liens to the Purchaser or to the

Successful Bidder by the Purchaser or the Successful Bidder, as the case may be, are likewise in

the best interests of the Selling Debtor Entities' estates and will maximize value for all

stakeholders.

Notice

54.     Notice of this Motion has been provided in accordance with the

Supplemental Case Management Order, and the Amended Eighth Supplemental Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing

Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative

Procedures, entered October 26, 2006 (Docket No. 5418).  Further notice with respect to the Sale

will be provided in accordance with the Notice Procedures described herein.  In addition, the

Debtors have complied with the Supplemental Case Management Order with respect to the filing

of this Motion and the need for expedited relief.[22]  In light of the nature of the relief requested,

the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

55.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Selling Debtor Entities respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

be deemed satisfied.

---

[22]    The Debtors have noticed this Motion for the omnibus hearing on September 27, 2007.  In compliance with the
terms of the Supplemental Case Management Order, the Debtors have consulted with counsel to the Creditors'
Committee regarding the relief sought in this Motion as well as the timing of its filing.  The Debtors have been
informed that the Creditors' Committee has consented to this Motion being heard on September 27, 2007.
Because this Motion is being filed on less than 20 days' notice, parties-in-interest will have until September 24,
2007 to file an objection to entry of the Bidding Procedures Order.

WHEREFORE the Selling Debtor Entities respectfully request that this Court enter an order (a)(i) approving the Bidding Procedures, (ii) granting certain bid protections, (iii) approving the Notice Procedures, and (iv) setting the Sale Hearing, (b) approving the Sale of the Acquired Assets by the Sellers free and clear of Liens to the Purchaser or to the Successful Bidder, and (c) granting them such other and further relief as is just.

Dated:  New York, New York
       September 17, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:  /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

# EXHIBIT D

## THIRD AMENDMENT TO ASSET PURCHASE AGREEMENT

TRW Integrated Chassis Systems LLC, a Delaware limited liability company ("Purchaser"), Delphi Automotive Systems LLC, a Delaware limited liability company ("Delphi") and Delphi Technologies, Inc., a Delaware corporation ("DTI") enter into this Third Amendment to Asset Purchase Agreement on November ___, 2007 (this "Amendment").

## BACKGROUND

A.    Purchaser, Delphi and DTI are parties to an Asset Purchase Agreement dated September 17, 2007 (as amended from time-to-time, the "APA"). Capitalized terms not defined in this Amendment have the meanings given in the APA and references to "Sections" in this Amendment are intended to refer to sections of the APA.

B.    The Parties have agreed to amend the APA as set forth in this Amendment.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, and covenants contained in this Amendment and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

## TERMS AND CONDITIONS

1.    Definitions.

A.    The indicated definitions in the APA are amended to read as follows:

"**Canadian Agreement**" means that certain Asset Purchase Agreement dated September 17, 2007 between Delphi Canada and Purchaser, which Canadian Agreement has been terminated by Purchaser.    Certain Schedules to the Canadian Agreement are incorporated into the APA as provided in this Amendment.

"**Canadian Assets**" means the Acquired Assets as that term is defined in the Canadian Agreement. For certainty, as used in this Agreement, the term Acquired Assets includes the Canadian Assets and certain Schedules to the APA are amended to include the Canadian Assets as provided in this Amendment.

"**Other Product Facilities**" means Delphi's facility located in Spring Hill, Tennessee where certain Non-Saginaw Assets (as defined in Section 1.3.A below) are currently located.

B.    The following definitions are added to the APA:

"**Leased Hourly Employees**" has the meaning set forth in <u>Section 4.2</u>.

"**Oshawa Expense Reimbursement Amount**" means an amount equal to Delphi's documented out of pocket costs and expenses incurred in relocating the portion of the Canadian Assets identified on <u>Schedule OO</u> and related Tooling from Oshawa, Ontario Canada and installing and re-qualifying such assets and Tooling at the Leased Premises pursuant to a budget approved in writing by Purchaser. Unless otherwise agreed in writing by Purchaser, the maximum Oshawa Expense Reimbursement Amount is $517,000.00.

2.      <u>Deletions</u>.    <u>Sections 9.1.E, 9.1.F, 9.1.G and 11.7</u> are deleted.

3.      <u>Schedule Amendments</u>.

A.      <u>Schedule M</u> to the APA is amended to add the Canadian Assets and such Amended <u>Schedule M</u> is attached hereto.

B.      <u>Schedule P-1</u> to the APA is amended to add the Products described on <u>Schedule P-1</u> to the Canadian Agreement and such amended <u>Schedule P-1</u> is attached hereto.

C.      <u>Schedule 1.3.A</u> to the APA (Schedule of Removal of Non-Saginaw Assets) is replaced by <u>Schedule 1.3.A</u> to this Amendment.

D.      <u>Schedule 3.4</u> to the APA (Purchase Price Allocation) is replaced by <u>Schedule 3.4</u> to this Amendment.

E.      <u>Schedule 8.1</u> to the APA (certain persons with Knowledge) is replaced by <u>Schedule 8.1</u> to this Amendment.

4.      <u>New Schedules</u>.

A.      <u>Schedule OO</u> to this Amendment is added as a new <u>Schedule OO</u> to the APA.

B.      <u>Schedule 4.2.N</u> to this Amendment is added as a new <u>Schedule 4.2.N</u> to the APA.

C.      <u>Schedule 4.2.N-1</u> to this Amendment is added as a new <u>Schedule 4.2.N-1</u> to the APA.

D.      <u>Schedule 4.2.N-2</u> to this Amendment is added as a new <u>Schedule 4.2.N-2</u> to the APA.

5.      <u>Acquired Assets Transaction</u>.    <u>Section 1.1</u> is amended in its entirety to read as follows:

"Upon the terms and subject to the conditions set forth in this Agreement at Closing (unless otherwise expressly provided in this Agreement or the Ancillary Agreements) Delphi will sell, transfer, assign, convey and deliver to the Purchaser, and the Purchaser will purchase, accept and acquire from the Delphi, the Acquired Assets free and clear of all Liens, except for liens that are referenced in Section 8.1(C)."

6.   <u>New Section.</u> The following is added as <u>Section 1.10</u> of the APA:

"Prior to the Closing Date, Delphi will acquire the Canadian Assets identified on <u>Schedule OO</u> from Delphi Canada, relocate and install, and re-qualify the Canadian Assets at the Leased Premises.  Purchaser shall have the right to monitor all removal, installation and re-qualification activities related to such Canadian Assets.  With respect to the Canadian Assets not identified on <u>Schedule OO</u>, Delphi will remove such Canadian Assets from the Delphi's facility in Oshawa, Ontario Canada and deliver them to Purchaser at the Leased Premises on such dates and at such times as are mutually agreeable to the Parties but in any event on or before March 31, 2008.  Delphi will acquire the Canadian Assets not identified on <u>Schedule OO</u> prior to their delivery to Purchaser and title to and risk of loss in respect of such Canadian Assets will remain in Delphi Canada or Delphi until such delivery.  Purchaser shall have the right to monitor all removal activities related to such Canadian Assets."

7.   <u>No Compete Agreement</u>.

A.   Subsection 2.2.A(i)(z) is amended in its entirety to read as follows:

"(z) prohibit Delphi or its Affiliates from selling finished goods or work-in-process inventory existing as of the Closing Date or other inventory in connection with winding down in an orderly fashion operations at Other Product Facilities, Delphi Canada's facility in Oshawa, Ontario Canada, Delphi's facility located at Needmore Road in Dayton, Ohio, or any related supplier locations as reasonably determined by Delphi; or"

B.   The following is added as Subsection 2.2.A(i)(zz):

"(zz) prohibit Delphi or its Affiliates from selling (1) Products to its Customers to the extent that such Products are manufactured at Delphi Canada's facility in Oshawa, Ontario Canada using the Canadian Assets not identified on <u>Schedule OO</u> prior to the delivery of such Canadian Assets to Purchaser, or (2) finished goods or work in process inventory existing as of the date the Canadian Assets not identified on <u>Schedule OO</u> are delivered to Purchaser."

8.   <u>Purchase Price Amendments</u>.

A.   <u>Section 3.1</u> is amended in its entirety to read as follows:

3

"Subject to the terms and conditions of this Agreement, the aggregate purchase price for the Acquired Assets will be the following amount (the "Purchase Price"): (i) Twenty-Seven Million Six Hundred Thousand Dollars ($27,600,000.00); plus (ii) the Inventory Value as of the Closing Date; plus (iii) the Saltillo Expense Reimbursement Amount; plus (iv) the Oshawa Expense Reimbursement Amount."

B.       Section 3.2.B is amended in its entirety to read as follows:

"The following portion of the Purchase Price will be paid by Purchaser to Delphi on the Closing Date in cash by wire transfer to an account designated in writing by Delphi: (u) Twenty–Seven Million Six Hundred Thousand Dollars ($27,600,000) plus (v) the Saltillo Expense Reimbursement Amount plus (w) the Oshawa Expense Reimbursement Amount plus (x) 80% of the Parties' good faith estimate of the Inventory Value as of the Closing Date based on Schedule 3.2, which reflects Inventory Value as of the last day of June 2007 (the "Inventory Partial Payment") minus (y) the Deposit minus (z) the sum of all Pre-Closing Agreement Payments."

9.       The first sentence of Section 4.2.B is amended in its entirety to read as follows:

"Effective at Closing and subject to the terms of Section 4.2.N below, Purchaser will commence the employment of all of the active hourly employees identified on Schedule 4.2.

10.      New Section. The following is added as Section 4.2.N of the APA:

"(i)   Schedule 4.2.N lists the active Hourly Employees who, as of the Closing Date, are or may become eligible for traditional pension benefits under the Delphi HRP (i.e., pension benefits other than cash balance benefits provided in accordance with the Individual Retirement Plan provisions of the Delphi HRP) and their union affiliation. Notwithstanding anything to the contrary in Section 4.2 of the APA, Delphi will continue to employ the Hourly Employees listed on Schedule 4.2.N and will lease such Hourly Employees (hereinafter, the "Leased Hourly Employees") to Purchaser pursuant to the terms hereof until such time as benefit accruals under the Delphi HRP are frozen in accordance with the "Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee" (i.e., Attachment B of the 2007 UAW-Delphi-GM Memorandum of Understanding – Delphi Restructuring dated June 22, 2007) ("Benefit Guarantee Term Sheet"), or such later date as shall be mutually agreed to by Delphi and Purchaser, but in no event later than forty-five days following the Freeze Date (as such term is defined in the Benefit Guarantee Term Sheet) unless the Parties mutually agree otherwise (the "Lease Period"). As soon as practicable following the Freeze Date, the Leased Hourly Employees shall commence employment with Purchaser in accordance with the terms of Section 4.2 of the APA. Nothing contained herein shall cause any inactive Leased Hourly Employee to become employed by

4

Purchaser prior to the date that such Leased Hourly Employee is ready to return to active employment in accordance with Delphi's leave policies and applicable collective bargaining agreement provisions, as provided by Section 4.2 of the APA.

(ii)    In the event that an Hourly Employee that is covered by the Benefit Guarantee Term Sheet is erroneously excluded from Schedule 4.2.N, such Hourly Employee shall be added to Schedule 4.2.N at the time such error is discovered and shall be subject to the terms of this Section 4.2.N.  Similarly, in the event that an Hourly Employee has been erroneously included on Schedule 4.2.N but such Hourly Employee is not covered by the Benefit Guaranty Term Sheet, is an inactive Hourly Employee or otherwise, such Hourly Employee shall be removed from Schedule 4.2.N at the time that such error is discovered and shall not be subject to the terms of this Section 4.2.N. Schedule 4.2.N will be updated as of the Business Day immediately preceding the Closing."

(iii)    The Leased Hourly Employees will be leased by Delphi to Purchaser in accordance with the following terms:

(1)  The Leased Hourly Employees will remain exclusively the employees of Delphi but will perform services for and as directed by Purchaser.  Purchaser will provide supervision, e.g. assign work, monitor quality, maintain discipline for the Leased Hourly Employees at Purchaser's sole cost. Delphi will maintain all appropriate employment records, pay the wages and benefits and, subject to Section 4.2.N(iii)(3), otherwise maintain responsibility as the employer for each Leased Hourly Employee in accordance with the applicable collective bargaining agreements and applicable law.

(2)    Purchaser acknowledges that the Leased Hourly Employees are employed in accordance with the applicable UAW-Delphi collective bargaining agreements.  As such, Purchaser agrees to recognize seniority rights and perform its supervisory duties in accordance with the terms of the applicable UAW-Delphi collective bargaining agreements.  In the event that a Leased Hourly Employee violates any shop rule or engages in conduct adverse to Purchaser's management or control of the Business, Purchaser may take appropriate disciplinary action consistent with the applicable collective bargaining agreements.  Purchaser will report such situations to Delphi in writing as soon as practicable.  Purchaser will administer the grievance procedure.  The costs associated with administering the grievance procedure and resolving any grievance arising from Purchaser's actions, supervision, management and control of the Leased Hourly employees or otherwise arising out of or in connection with Purchaser's operation of the Business will be paid by Purchaser.

(3)  During the Lease Period, Delphi will maintain, administer, and pay the wages and benefits of the Leased Hourly Employees in accordance with the applicable UAW-Delphi collective bargaining agreements and applicable law.  Purchaser will reimburse Delphi for the following costs relating to the Leased Hourly Employees: all actual payroll costs and an agreed allocation for other costs as required by the collective bargaining agreements and in accordance with Schedule 4.2.N-1 attached hereto.  Delphi shall invoice Purchaser for such charges weekly or monthly, as

5

determined by Delphi, using the Leased Hourly Employee Invoice in the form attached hereto as Schedule 4.2.N-2. Payment terms shall be MNS-2 from receipt of invoice. In the case of any questions or dispute regarding the amount of any invoice, Delphi agrees to retain and to provide to Purchaser the requisite back-up data for each of the charges on the invoice in question including employment, payroll, accounting and other records supporting such charges. Upon request, Delphi shall make available such back-up information to Purchaser who may audit any such information to confirm the amount of any disputed invoice. In the event that the Parties agree that the invoiced amounts are not correct, the Parties agree to adjust any previously submitted invoice to properly reflect the correct charges and the Party owing the other Party funds for such adjustment shall promptly pay or refund such amounts.

Purchaser will be responsible for all other liabilities resulting from Purchaser's supervision, management and control of the Leased Hourly Employees during the Lease Period or arising out of or in connection with Purchaser's subsequent employment of Leased Hourly Employees.

(4)    Purchaser will operate the Business during the Lease Period such that the facility, equipment, processes, and procedures associated with the Leased Hourly Employees will continue to comply with all applicable government safety standards, rules, and regulations that were complied with immediately prior to Closing. This includes standards imposed under the collective bargaining agreements as applicable. In the event Delphi is notified of concerns regarding Purchaser's compliance with these standards, Delphi will promptly so advise Purchaser; Delphi may then review and audit Purchaser's compliance with such standards, rules and regulations to the same extent that such standards, rules and regulations were complied with immediately before Closing.

(5)    If a workers' compensation claim is filed by a Leased Hourly Employee relating to an incident occurring during the Lease Period, Delphi will administer the claim and retain liability, if any. The Parties will provide reasonable notice to the other of the pendency of any such claim.

(6)    If an intentional tort claim is filed by a Leased Hourly Employee relating to Purchaser's supervision, management or control of such Leased Hourly Employee, Purchaser will defend the claim and, except to the extent that the Leased Hourly Employee is entitled to Workers' Compensation benefits, Purchaser will hold Delphi harmless; provided, however, that this provision will not apply to the extent such claims arise as a result of any act or omission by Delphi or Delphi's employees (other than Leased Hourly Employees). The Parties will provide reasonable notice to the other of the pendency of any such claim.

(7)    Delphi will not be required to replace any Leased Hourly Employee who permanently ceases to provide services to Delphi for any reason.

(8)    Purchaser will defend, indemnify, and hold harmless Delphi, its past and present employees, agents, representatives, shareholders, directors, officers,

affiliates and assigns and successors, from and against all claims, actions, damages, liabilities, causes of action, losses, costs and expenses (including attorney's fees and defense costs) relating to claims of any Leased Hourly Employee relating to the act or omission of Purchaser with respect to Purchaser's supervision, management or control of such Leased Hourly Employee and the acts or omission of the Leased Hourly Employee as such acts or omissions relate to or arise in connection with Purchaser's supervision, management or control of the Leased Hourly Employee or operation of the Business after Closing.

(9)    Delphi will defend, indemnify, and hold harmless Purchaser, its past and present employees, agents, representatives, shareholders, directors, officers, affiliates and assigns and successors, from and against all claims, actions, damages, liabilities, causes of action, losses, costs and expenses (including attorney's fees and defense costs) relating to claims of any Leased Hourly Employee relating to the act or omission of Delphi; provided however that this obligation will not alter or in any way limit Purchaser's obligation to reimburse Delphi in accordance with this Section 4.2N.

11.    <u>Warranties of Delphi</u>.  Section 8.1.C is amended in its entirety to read as follows:

"Delphi warrants that, as of the date of delivery of the Acquired Assets, Delphi will have good and marketable title to the Acquired Assets and the Acquired Assets will be sold, assigned, transferred or delivered, as the case may be, free and clear of any Lien, as permitted under Section 363(f) of the Bankruptcy Code, except for liens asserted by the Pension Benefit Guaranty Corporation (the "PBGC") against the Canadian Assets, which to Delphi's Knowledge, are not perfected (provided that any such lien against the Canadian Assets will be subject to the terms of <u>Section 11.5.A</u> of the APA)."

12.    <u>Closing Date</u>.  The reference to January 2, 2007 (sic.) in <u>Section 10.1</u> is amended to read January 2, 2008.

13.    <u>Indemnification</u>.    The following is added as subpart (iii) to <u>Section 11.5.A</u> and existing subpart (iii) is renumbered as subpart (iv):

"(iii) any Claims asserted against Purchaser or the Acquired Assets (including any of the Canadian Assets) as a result of or in respect of the liens asserted against the Canadian Assets by the PBGC;"

14.    <u>Bankruptcy Actions</u>.

A.    The reference to the Canadian Agreement in <u>Section 12.2.A</u> is deleted.

B.    The reference to October 16, 2007 in <u>Section 12.2.C</u> (the Bid Deadline) is amended to read November 27, 2007.

C.    The reference to October 23, 2007 in <u>Section 12.2.H</u> (the Auction date) is amended to read December 6, 2007.

D.    The first sentence of <u>Section 12.2.J</u> is replaced with the following: "If  (x) Delphi does not receive at least one (1) Qualified Bid in addition to this Agreement, the Sale Hearing will be held before the Honorable Judge Robert Drain on November 29, 2007 at 10:00 A.M. (prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York (the "<u>Bankruptcy Court</u>"), and (y) Delphi receives at least one (1) Qualified Bid in addition to this Agreement, the Sale Hearing will be held before the Honorable Judge Robert Drain on December 20, 2007 at 10:00 A.M. (prevailing Eastern Time) at the Bankruptcy Court; but the foregoing Sale Hearings may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the applicable Sale Hearing.  Likewise, if Delphi receives at least one (1) Qualified Bid in addition to this Agreement, the objection deadline regarding the approval of the Successful Bidder will be December 13, 2007."

E.    The references to December 15, 2007 in <u>Section 13.2.C</u> (deadline for entry of Sale Approval Order) are amended to read December 30, 2007.

15.    <u>General Terms</u>.

A.    Except as amended hereby, all terms and conditions of the APA remain in full force and effect.

B.    More than one counterpart of this Amendment may be executed by the Parties, and each fully executed counterpart will be deemed and original.

**TRW INTEGRATED CHASSIS SYSTEMS LLC**
By:_____

Print Name: _____

Its:_____

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By:_____

Print Name:  _____

Its:_____


**DELPHI TECHNOLOGIES, INC.**

By:_____

Print Name:  _____

Its:_____

# EXHIBIT E

**EXECUTION DRAFT**

**ASSET PURCHASE AGREEMENT**

**AMONG**

**TRW INTEGRATED CHASSIS SYSTEMS LLC,**

**DELPHI AUTOMOTIVE SYSTEMS LLC,**

**AND**

**DELPHI TECHNOLOGIES, INC.**

**DATED:  SEPTEMBER 17, 2007**

## ASSET PURCHASE AGREEMENT

TRW Integrated Chassis Systems LLC, a Delaware limited liability company ("Purchaser") and Delphi Automotive Systems LLC, a Delaware limited liability company ("Delphi") and Delphi Technologies, Inc., a Delaware corporation ("DTI") enter into this Asset Purchase Agreement on September 17, 2007.

## RECITALS:

A.    On October 8, 2005 (the "Petition Date"), Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief (the "Bankruptcy Cases") under Chapter 11 of Title 11, U.S.C. §§101 et seq. (as amended) (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

B.    Delphi, along with certain affiliated companies, continues to operate as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

C.    The Sellers desire to sell to Purchaser all of their respective right, title and interest in and to the Acquired Assets (as defined below), and Purchaser desires to make such purchases subject to the terms and conditions set forth in this Agreement and as authorized under Sections 105 and 363 of the Bankruptcy Code.

**NOW, THEREFORE,** in consideration of the premises, mutual promises, representations, warranties and covenants contained in this Agreement and other good and valuable consideration, and intending to be legally bound hereby, the Parties agree:

## DEFINITIONS

The following terms, as used in this Agreement, have the following meanings whether used in the singular or plural (other terms are defined in Sections or Schedules to which they pertain):

"**Acquired Assets**" means all of Seller's right, title and interest in and to the following:

    A.   Manufacturing Equipment;

    B.   Test and Development Equipment;

    C.   Inventory;

    D.   Assigned Permits; and

    E.   Other Personal Property.

"**Affiliate**" means with respect to any Party any business or other entity directly or indirectly controlling, controlled by or under common control with such specified entity. For purposes of this definition, control means ownership of at least fifty percent (50%) of the shares or other equity interest having power to elect directors or persons performing a similar function. For certainty, Delphi Canada is an Affiliate of Delphi and DTI.

"**Agreement**" means this Asset Purchase Agreement, including all Schedules and Exhibits.

2

"**Ancillary Agreements**" means the Lease Agreement, the Transition Services Agreement and the Contract Manufacturing Agreement.

"**Assumed Liabilities**" has the meaning given in <u>Section 1.8</u>.

"**Assigned Permits**" means Seller's QSO/ISO certifications for the Leased Premises to the extent such permits and certifications are assignable by Seller.

"**Bankruptcy Rules**" means the U.S. Federal Rules of Bankruptcy Procedure.

"**Bidding Procedures**" has the meaning given in <u>Section 12.2</u>.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures.

"**Business Day**" means any day other than a Saturday, a Sunday or a day on which banks in Detroit, Michigan are authorized or obligated by law or executive order to close.

"**Canadian Agreement**" means that certain Asset Purchase Agreement of approximate even date between Delphi Canada and Purchaser.

"**Canadian Assets**" means the manufacturing equipment and other related assets used by Delphi Canada to manufacture certain Products to be sold by Delphi Canada to Purchaser pursuant to the Canadian Agreement.

"**Claim**" or "**Claims**" means "claim" as defined in Section 101(5)(a) of the Bankruptcy Code.

"**Closing**" has the meaning set forth in <u>Section 10.1</u>.

"**Closing Date**" means the date of Closing.

"**Collective Bargaining Agreements**" has the meaning given in Section 4.2.C.

"**Computer Assets**" means all of the following that are in use at the Leased Premises but excluding any such assets that are leased by Delphi: computers, servers, printers, scanners, network equipment, uninterrupted power supplies, and related computing environment infrastructure.

"**Contract Manufacturing Agreement**" has the meaning set forth in <u>Section 5.4</u>.

"**Contract Manufacturing Equipment**" means all of the machinery and equipment described on <u>Schedule C-1</u> and <u>Schedule C-2</u>. The Contract Manufacturing Equipment described on <u>Schedule C-1</u> is part of the Acquired Assets being purchased by Purchaser and is sometimes referred to as the "<u>TRW Contract Manufacturing Equipment</u>." The Contract Manufacturing Equipment described on <u>Schedule C-2</u> is <u>not</u> part of the Acquired Assets and is sometimes referred to as the "<u>Delphi Contract Manufacturing Equipment</u>."

"**Customers**" mean GM, AZ Automotive Corp., Modatek Systems, Chassis Corporation, Metalsa S. de RL, Triad Services Group, Inc. and PBR Columbia LLC, and the term "**Customer**" means any one of the Customers.

"**Delphi Canada**" means  Delphi Canada, Inc., a corporation organized under the laws of the Province of Ontario, Canada.

"**Deposit Escrow Agent**" means J.P. Morgan Trust Company, National Association.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement entered into among Seller, Purchaser and the Deposit Escrow Agent as of the date of this Agreement in the form attached hereto as Exhibit 1.

"**Excluded Assets**" means assets not included in the Acquired Assets, including as set forth in Section 1.5.

"**Governmental Entity**" means any United States federal, state or local, tribunal, legislative, executive, governmental, quasi-governmental or regulatory authority, self-regulatory authority, agency, department, commission, instrumentality or body having governmental authority with respect to the transactions contemplated hereby, under applicable law.

"**GM**" means General Motors Corporation and its subsidiaries and Affiliates.

"**Inventory**" means all of Delphi's (a) raw materials and purchased component parts related to the Products manufactured at the Leased Premises which are in Delphi's possession or control as of the Closing Date, (b) rotors which are in the possession or control of March Coatings, Inc. as of the Closing Date, and (c) any work in process inventory that the parties agree in writing to include in the definition of "Inventory" (for example, work in process manufactured by Delphi pursuant to Section 5.3 below). For certainty, Inventory does not include Supplies or Spare Parts and Crib Items.

"**Inventory Value**" means Delphi's cost for "useable" and "merchantable" Inventory existing as of the Closing Date. For purposes of determining the Inventory Value: (a) "useable" means not obsolete and reasonably usable by Purchaser in manufacturing Products in quantities not to exceed the applicable Customers' outstanding unsatisfied releases as of the Closing Date, and (b) "merchantable" means merchantable as that term is defined in U.C.C. § 2-314, in conformance with applicable customer purchase order or supply contract specifications, reasonably applied, and not rusted, damaged or deteriorated such that it cannot reasonably be used in the ordinary course of business without processing or preparation not normally done in the ordinary course of business. To determine the Inventory Value, a physical inventory will be jointly completed by Delphi and Purchaser as of the Closing Date and in respect of Inventory at March Coatings, Inc. as of the Closing Date, Inventory Value will be adjusted as appropriate to take into account any payments that have been made or need to be made to March Coatings, Inc. for any processing done to such Inventory.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Internally Supplied Parts**" has the meaning set forth in Section 5.1.

"**Knowledge**" with respect to any Seller means the actual, conscious knowledge of the individuals listed on Schedule 8.1.  "**Knowledge**" with respect to Purchaser means the actual, conscious knowledge of the individuals listed on Schedule 8.2.

"**Licensed Applications**" means application Software listed on Schedule S which is currently used at the Leased Premises by Delphi and/or EDS in the daily operations of the business conducted therein. For certainty, as part of the sale contemplated hereby, Purchaser will have a non-exclusive, paid-up license and right to use the Licensed but in all events the

4

licenses of the Licensed Applications are subject to the specific terms and conditions set forth in the agreements pursuant to which such Licensed Applications have been licensed to Delphi and Purchaser will be responsible for all license and maintenance fees coming due after the Closing Date.

"**Laws**" means laws, ordinances, codes, standards, administrative rulings or regulations of any applicable federal, state, local or foreign governmental authority.

"**Lease Agreement**" has the meaning set forth in <u>Section 6.1</u>.

"**Leased Premises**" means that portion of Delphi's facility located at 2328 East Genesee Avenue, Saginaw, Michigan that is to be leased to Purchaser pursuant to the terms of the Lease Agreement.

"**Liabilities**" means any liability or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due), including without limitation Claims for employment and other employment related relief and/or obligation of any type (including all Claims by, against or on behalf of and/or in connection with all former or existing employees and others providing services to Seller in respect of actions occurring or alleged to have occurred on or before the Closing Date), intellectual property, product performance and all other product liability matters.

"**Licensed Intellectual Property**" means intellectual property that as of the date of this Agreement (a) is owned by Seller or any Seller Affiliates, or that Seller or any Seller Affiliates otherwise have the right to sublicense, and (b) relates to Products and/or is necessary or desirable for the design, manufacture, assembly, testing and tuning of Products.

"**Lien**" means any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) and any monetary amounts which are secured by any Lien.

"**Manufacturing Equipment**" means the machinery and equipment described on <u>Schedule M</u>, attachments and accessories to such items, together with the Tooling and Tooling Claims (but only to the extent such Tooling Claims are assignable under otherwise applicable law).

"**Material Adverse Effect**" means any change or event that has a material adverse effect on (a) the Acquired Assets taken as a whole, or (b) the Leased Premises, <u>except</u> any change or event resulting from, relating to or arising out of: (i) any act or omission of Seller taken with the prior written consent of the Purchaser; (ii) any action taken by Seller or Purchaser or any of their respective representatives required by the terms of this Agreement; (iii) general business or economic conditions; (iv) conditions affecting the industry and markets in which Purchaser and Seller generally operate; (iv) increases in energy, electricity, natural gas, raw materials or other operating costs; (v) changes resulting from any action required by the Bankruptcy Court; (vi) national or international political or social conditions, including the engagement by the United States in hostilities whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon such country, or any of its territories, possessions or diplomatic or consular offices or upon any military installation, equipment or personnel of any such countries; (vii) financial, banking or securities markets (including any disruption thereof and any decline in the price of any security

5

or any market index); (viii) changes in generally accepted accounting principles in the United States; (ix) changes in any Law; (x) any existing event, occurrence or circumstance listed in any Schedule provided under Article 8 of this Agreement as of the date hereof; or (xi) any adverse change in or effect on the Acquired Assets or the Leased Premises that is cured, in its entirety, by Seller, before the earlier of (1) the Closing Date, and (2) the date on which this Agreement is terminated pursuant to <u>Section 13</u>.

"**Nondisclosure Agreement**" means the nondisclosure and confidentiality letter agreement dated August 10, 2006 executed by Purchaser and Delphi.

"**Ordinary Course of Business**" means, with respect to (a) the use and operation of the Acquired Assets, consistent with custom and practice of Seller prior to the Petition Date or to the extent consistent with orders issued in the Bankruptcy Cases, and (b) with respect to determining Inventory Value, in the ordinary course of business by non-bankrupt manufacturers and suppliers of goods similar to the Products.  For purposes of this Agreement, reduction of inventory levels at the Other Product Facilities in conjunction with the removal of the Acquired Assets and the Contract Manufacturing Equipment from such Other Product Facilities shall be deemed to be in the Ordinary Course of Business.

"**Organizational Documents**" means: (a) the articles of incorporation and the bylaws of a corporation; (b) the partnership agreement and any statement of partnership of a general partnership; (c) the limited partnership agreement and the certificate of limited partnership of a limited partnership; (d) the articles or certificate of organization and the operating agreement or other document intended to govern the structure and/or internal affairs of a limited liability company; (e) any charter, agreement, indenture, or similar document adopted or filed in connection with the creation, formation, or organization of a Person; and (f) any amendment to the foregoing.

"**Other Personal Property**" means all of the following owned by Seller which are used or associated with the manufacture or shipment of the Products or the use or operation of the Leased Premises or the other Acquired Assets: the Software; Spare Parts and Crib Items; disposable and non-disposable dunnage (including in-plant racking and containers and all shipping containers and dunnage at the Leased Premises, in the possession of customers or outside processors or located at the Other Product Facilities, to the extent such items are used primarily in the manufacture, processing or shipment of the Products); Supplies located at the Leased Premises; Computer Assets; any warranties given by the manufacturers or suppliers of any Acquired Assets (but only to the extent such warranties are assignable under otherwise applicable law without assumption under Section 365 of the Bankruptcy Code); the assets described on <u>Schedule O</u>; and office furniture and office equipment located at the Leased Premises, in each case, to the extent that they exist on the Closing Date.  For certainty, Other Personal Property does not include any Excluded Assets or any assets that are within the description of any other assets included in categories "A" through "E" of the definition of Acquired Assets.

"**Other Product Facilities**" means Seller's facilities located in Spring Hill, Tennessee and Saltillo, Mexico where the Non-Saginaw Assets (as defined in <u>Section 1.3.A</u> below) are currently located.

"**Past Model Service Parts**" means the Products identified on <u>Schedule P-2</u> (as such <u>Schedule P-2</u> may be modified from time to time in writing based on the mutual agreement of Purchaser and Seller).

"**Party**" or "**Parties**" means Purchaser, and Seller.

6

"**Person**" means an individual, a corporation, a partnership, a limited liability company, an association, a trust or other entity or organization.

"**Pre-Closing Agreement Payments**" means all payments made by TRW Automotive Inc. to Delphi under that certain Pre-Closing Agreement dated February 15, 2007, as amended.

"**Products**" means the products identified on Schedule P-1 and Schedule P-2 (as such Schedule P-2 may be modified from time-to-time in writing based on the mutual agreement of Purchaser and Seller).

"**Purchase Price**" has the meaning given in Section 3.1.

"**Purchaser**" means TRW Integrated Chassis Systems LLC, a Delaware limited liability company.

"**Retained Liabilities**" means Seller's Liabilities other than the Assumed Liabilities.

"**Saginaw Supplied Parts**" has the meaning set forth in Section 5.5.

"**Sale**" means the sale, transfer and assignment of the Acquired Assets from Seller to Purchaser in accordance with this Agreement.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court approving the Sale issued pursuant to Sections 363 of the Bankruptcy Code in form and substance reasonably satisfactory to Purchaser, authorizing and approving, among other things, the sale, transfer and assignment of the Acquired Assets, and the lease of the Leased Premises all in accordance with the terms and conditions of this Agreement and the Ancillary Agreements.

"**Sale Motion**" means the motion filed by Delphi and DTI with the Bankruptcy Court for approval of the Sale Approval Order.

"**Saltillo Expense Reimbursement Amount**" means an amount equal to Delphi's documented out of pocket costs and expenses incurred in relocating Manufacturing Equipment and related Tooling from Saltillo, Mexico and installing and requalifying such Manufacturing Equipment and Tooling at the Leased Premises pursuant to a budget previously approved in writing by Purchaser. Unless otherwise agreed in writing by Purchaser, the maximum Saltillo Reimbursement Amount is $400,000.

"**Seller**" means Delphi and/or DTI, as the context requires, to the extent of their actual interests in the subject matter of the sentence or clause in which the term is used.

"**Software**" means the software (and licenses to use Licensed Applications) described on Schedule S.

"**Spare Parts and Crib Items**" means (a) all spare parts for Manufacturing Equipment and perishable Tooling used in the manufacture of the Products (including spare perishable Tooling), in each case existing on the Closing Date as to items to be delivered to Purchaser on the Closing Date, or in the case of Manufacturing Equipment delivered after the Closing Date, such items existing on the date(s) such other Manufacturing Equipment is delivered to Purchaser, and (b) spare parts for the Leased Premises infrastructure equipment, personal protection equipment (including gloves, safety glasses, safety vests and hearing protection), and all other spare or maintenance items used in the manufacture of the Products, in shipping

and receiving, or in the operation of the Leased Premises in each case to the extent on hand at the Leased Premises on the Closing Date.

"**Supplier Contracts**" mean all written Seller purchase orders and supply agreements for goods or services necessary for the manufacture of the Products or operation of the Leased Premises and product warranty or service agreements related to such purchase orders and supply agreements outstanding on the Closing Date.

"**Supplies**" means all maintenance, shop and manufacturing supplies, cleaning supplies, lubricants, packaging and shipping materials, labels, and other supplies used in the manufacture or shipping and receiving the Products or Inventory or in the operation of the Leased Premises in each case to the extent on hand at the Leased Premises on the Closing Date.

"**Tax(es)**" means any tax or similar governmental charge, impost or levy whatsoever (including, without limitation, income, franchise, transfer taxes, use, gross receipts, goods and services value added, employment, excise, ad valorem, property, withholding, payroll, social contribution, customs duty, minimum or windfall profit taxes or transfer fees), together with any related penalties, fines, additions to tax or interest, imposed by the United States or any state, county, local or foreign government or subdivision or agency thereof.

"**Test and Development Equipment**" means the test/laboratory equipment and the manufacturing development equipment described on <u>Schedule T.</u>

"**Third Party Assets**" has the meaning set forth in <u>Section 1.5.</u>

"**Tooling**" means all tooling, gauges, dies, fixtures, test and assembly fixtures, patterns, casting patterns, cavities, molds, prototype tooling, engineering product testing tooling and fixtures and similar items (a) utilized exclusively in connection with the Manufacturing Equipment or the manufacture or processing of Products, where ever located; (b) all such items for Past Model Service Parts; and (c) such items owned by Seller and used by suppliers or outside processors exclusively for the manufacture of sub-components for the Products, where ever located.

"**Tooling Claims**" means all claims, rights, and causes of action, if any, Seller has or may have against any vendors who are in possession of Seller-owned or GM-owned Tooling related to such vendors' failure to properly and timely maintain, repair or refurbish such Tooling.

"**Transition Services Agreement**" has the meaning set forth in <u>Section 7</u>.

"**UAW**" means the International Union, United Automotive, Aerospace and Agricultural Workers of America and its Local Union Number 467.

## 1.   <u>CONVEYANCE OF THE ACQUIRED ASSETS.</u>

1.1   **Acquired Assets Transaction**.

Upon the terms and subject to the conditions set forth in this Agreement at Closing (unless otherwise expressly provided in this Agreement or the Ancillary Agreements) Seller will sell, transfer, assign, convey and deliver to the Purchaser, and Purchaser will purchase, accept and acquire from the Seller, the Acquired Assets, free and clear of all Liens.

1.2   **Acquired Assets in Possession of Third Parties**.

Subject to <u>Section 1.3</u> and <u>Section 1.5</u> below, Purchaser will take ownership of all Acquired Assets wherever the same are located.

1.3    **Purchaser's Removal of Certain Acquired Assets Not Located at or About the Leased Premises**.

A.    Purchaser will remove at its cost and expense any Acquired Assets located at the Other Product Facilities (the "<u>Non-Saginaw Assets</u>") with such removal to be according to the schedule set forth on <u>Schedule 1.3.A</u> or on such dates and at such times as are otherwise mutually agreeable to the Parties but in any event to be completed by May 31, 2008. Seller shall have the right to monitor all removal activities related to the Non-Saginaw Assets. Until the Non-Saginaw Assets are removed by Purchaser, title to and risk of loss in respect to such Acquired Assets will remain in Seller. In connection with Purchaser's removal of the Non-Saginaw Assets, Purchaser shall not unreasonably interfere with any ongoing production by Delphi.

B.    To the extent any agreements between Seller and any unions representing workers at the Other Product Facilities require that the dismantling and removal of the Non-Saginaw Assets be completed by union employees, Purchaser shall use such employees to remove the Non-Saginaw Assets or, subject to the consent of the applicable union, reimburse Seller for any amounts Seller must pay the employees in lieu of using them to dismantle and remove such Non-Saginaw Assets.

C.    Purchaser will use due care in the removal of the Non-Saginaw Assets so as to not damage Seller's premises. Purchaser will be responsible for and reimburse Seller for any damage to Seller's premises as a result of Purchaser's removal activities, but will not be required to reimburse Seller for any costs and expenses of the Decommissioning Activities or costs and expenses incurred to restore the premises (e.g. filling press pits, sealing off ducts, rewiring etc.) to the extent such restoration would be required upon removal of the Non-Saginaw Assets by any party. For purposes of this Agreement, "Decommissioning Activities" shall have the meaning ascribed to it in Attachment 2, Schedule 1 of the Lease.

D.    Upon mutual agreement of the Parties, (i) certain Non-Saginaw Assets, including Tooling, may be removed from the Other Product Facilities by Seller prior to Closing, and (ii) certain capital expenditures may be made by Seller to increase capacity at the Leased Premises or otherwise facilitate transition of production of the Products from the Other Product Facilities to the Leased Premises prior to Closing. In each such case, Purchaser will reimburse Seller for all reasonable costs associated with (i) the removal of the Non-Saginaw Assets from the Other Product Facilities and installation of such Non-Saginaw Assets at the Leased Premises, and (ii) the capital expenditures made by Seller to increase capacity at the Leased Premises or otherwise facilitate transition of production of the Products to the Leased Premises. For certainty, Purchaser will have no obligation to reimburse Seller under this <u>Subsection 1.3.D.</u> for any expenditures or expenses unless agreed to by Purchaser in writing in advance.

1.4    **TRW Contract Manufacturing Assets and Certain Other Acquired Assets**.

Purchaser will use due care in the removal of the TRW Contract Manufacturing Assets and other Acquired Assets located in Buildings 2 and 4 of the Leased Premises so as to not damage the premises. Purchaser will be responsible for any damage to the Leased Premises as a result of Purchaser's removal activities, but will not be required to reimburse Seller for any

9

costs and expenses of Decommissioning Activities or costs and expenses incurred to restore the premises to the extent such restoration would be required upon removal of the TRW Contract Manufacturing by any party (e.g. filling press pits, sealing off ducts, rewiring etc.). Seller shall have the right to monitor all removal activities.

1.5    **Certain Excluded Assets**.

Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreements, the following properties and assets of Seller will not be included in the Acquired Assets:

A.    Any Tooling, dunnage or containers owned by a Customer or any third party, and the other items owned by any third party, including those items set forth on Schedule 1.5.A ("Third Party Assets"); provided, that to the extent any Tooling, dunnage or containers are owned by a customer, Purchaser shall, subject to the rights of the owner thereof, have any right to use such items in the manufacture and shipping of Products that Seller has as of the Closing Date.

B.    The assets listed on Schedule 1.5.B.

C.    All Supplier Contracts.

D.    The Delphi Contract Manufacturing Equipment.

E.    Information and materials protected by the attorney-client privilege or that Seller considers to be proprietary information.

F.    All work histories, personnel and medical records of employees of Delphi who are not being hired by Buyer.

1.6    **Post-Closing Asset Deliveries**.

Subject to Section 1.3 above, should Seller or Purchaser, in its reasonable discretion, determine after the Closing that any Acquired Assets (including books, records or other materials) are still in the possession of Seller, Seller will promptly deliver them to Purchaser at no cost to Purchaser. Should Seller or Purchaser, in its reasonable discretion, determine after the Closing that books, records or other materials not included in the Acquired Assets or otherwise constituting Excluded Assets were delivered to Purchaser, Purchaser will promptly return them to Seller at no cost to Seller.

1.7    **Certain Supplier Contracts**.

As soon as possible, but in all events at least 10 business days prior to the Closing Date, Purchaser will provide Seller with written notice identifying any suppliers of goods or services necessary for the manufacture of the Products or operation of the Leased Premises who currently supply or process raw materials or sub-components to Seller or who provide services to Seller, in each case, pursuant to a Supplier Contract and who refuse to do business with Purchaser on terms reasonably acceptable to Purchaser ("Dissident Vendors").  At Purchaser's option and subject to any express prohibitions in the Supplier Contracts, Seller will make available to Purchaser the goods or services provided by the Dissident Vendors under the relevant Supplier Contracts in accordance with the terms of the Transition Services Agreement (as defined in Section 7.1).

10

1.8    **No Assumption of Retained Liabilities by Purchaser**.

Purchaser will not assume or have any responsibility for the Retained Liabilities. Purchaser will assume and have responsibility for the Assumed Liabilities. For purposes of this Agreement, the term "Assumed Liabilities" means (a) liabilities specifically created or assumed by Purchaser under this Agreement, the Ancillary Agreements or the Sale Approval Order, (b) certain obligations and liabilities arising under the Collective Bargaining Agreements as provided in Section 4.2, and (c) obligations arising post-Closing under the Assigned Delphi Contracts (as defined in Section 5.2).

1.9    **Past Model Service Parts.**

Purchaser will have the option, exercisable in writing on or before January 10, 2008 (or such later date as may be agreed to in writing by Purchaser and Delphi), to purchase any Past Model Service Parts that Delphi has not previously sold or liquidated (or entered into a binding agreement to sell or liquidate). The Past Model Service Parts will be sold pursuant to the terms of a separate purchase order on terms acceptable to Delphi and Purchaser. The purchase price for the Past Model Service Parts will be Delphi's inventory cost or, if such information is not available, a price mutually acceptable to Purchaser and Delphi.   The purchase price for any Past Model Service Parts that Purchaser elects to purchase will be paid within 30 days of the date Purchaser takes possession or control of such inventory.

2.    **DELIVERY OF CERTAIN DOCUMENTATION AND NO COMPETE AGREEMENT.**

2.1    Delivery of Certain Documentation.

A.    As soon as reasonably practicable following execution of this Agreement, but in any event within five (5) business days following execution of this Agreement, Seller will deliver to Purchaser, unless specifically provided below in whatever form currently exists, the following items listed on Schedule O (the "Process Documents"): all quality plans, process flow charts and process control plans (PPAP file), operator instructions, gauge tracking, routing sequences and calibration records.   The foregoing Process Documents will include documents that are related to sub-components supplied to Delphi or Delphi Canada by third parties or supplied to Delphi or Delphi Canada by other Delphi plants or Affiliates, in each case only to the extent that (i) such sub-components are incorporated into the Products, and (ii) such sub-component documents are included in the PPAP files delivered to Purchaser pursuant to this Section 2.1.A.   To the extent that agreements preclude the disclosure of documents or other information to Purchaser, Seller shall use commercially reasonable efforts to obtain consent for Seller to release the documents or to persuade the necessary third party to release the documents directly to Purchaser. Notwithstanding the foregoing, Seller is only obligated to deliver the Process Documents to the extent that such Process Documents exist at the Leased Premises or at the Other Product Facilities or at Delphi Canada's facility in Oshawa, Ontario, Canada or are otherwise in the possession or control of Seller or Delphi Canada.  For purposes of this Section 2.1.A only, "deliver" shall mean that Seller has (i) collected the Process Documents that are located at the Leased Premises or at any other location other than the Other Product Facilities and made them available to Purchaser in the office of the quality manager for the Leased Premises or at the work station at which such Process Documents are utilized, as appropriate; and (ii) collected the Process Documents that are located at the Other Product Facilities and made them available to Purchaser in the office of the quality manager for the applicable Other

Product Facility or at the work station at which such Process Documents are utilized, as appropriate, provided, however, that Purchaser shall not remove any Process Documents from the Other Product Facilities until such time as the Non-Saginaw Assets to which such Process Documents apply are removed in accordance with this Agreement (but Purchaser shall have the right to make and remove copies of Process Documents located at the Other Product Facilities).

B.    As soon as reasonably practicable following execution of this Agreement and receipt of written direction from GM, but in any event within five (5) business days following execution of this Agreement and receipt of written direction from GM, Seller will deliver to Purchaser the following information for all components of the Products (in no event to include any next generation Products), in electronic format (i.e., on a CD): (1) the latest released drawing for all components of the Products    (the "Drawings") and (2) the engineered Bill of Material (BOM) for the Products (items 1-2 collectively referred to as "Pre-License Product Documents").  Prior to Seller's license to GM of the Licensed IP, Purchaser agrees that it will not use the Pre-License Product Documents for any purpose other than quoting potential suppliers of sub-components for the Products for sourcing contingent upon Purchaser acquiring the Acquired Assets. Furthermore, as soon as reasonably practicable following Seller's license to GM of the Licensed Intellectual Property and to the extent required, final approval of such license by the Bankruptcy Court and receipt of written direction from GM, but in any event within five (5) business days following such events, Seller will deliver to Purchaser, in electronic format (i.e., on a CD), the following items (the "Post-License Product Documents"): engineering specifications for the Products, open manufacturing or design change requests for the Products and all materials and sub-components used in the manufacture of the Products.  Notwithstanding the foregoing, Seller is only obligated to deliver those Post-License Product Documents that (i) GM directs Seller in writing to deliver to TRW, and (ii) those Post-License Product Documents that exist and are in Seller's or Delphi Canada's possession or control. For purposes of this Section 2.1.B only, "deliver" shall mean that Seller has (i) collected the Product Documents and made them available to Purchaser in the office of the quality manager for the Leased Premises.

C.    Any and all Process Documents and Product Documents provided by Seller or Seller's representatives to Purchaser pursuant to this Section 2.1 shall be subject to the terms of the Non-Disclosure Agreement as modified at Closing pursuant to Section 2.3 of this Agreement.  Furthermore, other than to the extent that such rights are transferred by Seller to Purchaser at Closing pursuant to the terms of this Agreement or licensed by GM to TRW, the delivery of the Process Documents and/or the Product Documents pursuant to this Section 2.1 shall not be construed as granting or conferring any license or other right to Purchaser under any patent or similar intellectual property right of Seller.

2.2    **No Compete Agreement.**

A.    For a period of five (5) years from the Closing Date, except with the written consent of Purchaser, Seller will not and will cause its Affiliates not to, either on its or their own account or in conjunction with or on behalf of any person, firm or company design, manufacture or assemble (including quoting or offering to design, manufacture or sell) any brake corner modules, rear suspension modules, knuckles, or rotors in the United States or Canada for the customer programs set forth on Schedules P-1 and P-2 and their respective next-generation programs ("Competitive Activity"). For certainty the foregoing:

(i)    will not: (v) prohibit Seller or its Affiliates from continuing to sell to Customers components for past model service parts; or (w) prohibit Seller or its Affiliates from selling Contract Manufacturing Parts to third parties, which are manufactured by Purchaser during the term of the Contract Manufacturing Agreement, or service parts related thereto during or after the term of the Contract Manufacturing Agreement; or (x) prohibit Seller or any of its Affiliates from licensing any IP related to the Products to GM; or (y) apply to Delphi's Affiliates Korea Delphi Automotive Company ("KDAC") or PBR Knoxville LLC; or (z) prohibit Seller or its Affiliates from selling finished goods or work in process inventory existing as of the Closing Date or other inventory in connection with winding down in an orderly fashion operations at the Other Product Facilities, Delphi's facility located at Needmore Road in Dayton, Ohio, or any related supplier locations as reasonably determined by Seller.

(ii)    will not prohibit in any way:  (v) the acquisition of a controlling interest or merger with any person, or any division or business unit thereof, which is not primarily engaged in a Competitive Activity, acquired by or merged, directly or indirectly, into Seller or any of its Affiliates after the Closing Date, (w) the acquisition by Seller or any of its Affiliates, directly or indirectly, of a non-controlling ownership interest in any person, or any division or business unit thereof, or any other entity engaged in a Competitive Activity, if the Competitive Activity accounts for fifteen percent (15%) or less of the sales or fifteen percent (15%) or less of the value of the acquired business at the date of such acquisition (whichever is greater) and the Competitive Activity is not anticipated to become greater than twenty percent (20%) of such acquired business's sales or value; (x) the acquisition by Seller or any of its Affiliates, directly or indirectly, of less than five percent (5%) of the publicly traded stock of any person engaged in a Competitive Activity; (y) excluding such activities in connection with the Products or next-generation programs related thereto, the provision of consulting services to, the license of any technology that Seller or any of its Affiliates owns or has license to use, or the financing (on its own behalf or on behalf of any other Person) of any person for the purpose of designing or manufacturing on behalf of Seller or any of its Affiliates or selling to Seller or any of its Affiliate components and parts for automotive applications; and (z) consistent with Seller's troubled supplier practices, any direct or indirect activities of Seller or any of its Affiliates to advise, operate, manage or finance a troubled supplier of Seller or any of its Affiliates.

(iii)    excluding any license to GM, will prohibit Seller and its Affiliates from licensing the Licensed Intellectual Property for use in any Competitive Activity.

13

B.    While the restrictions contained in this Section 2.2 are considered by the Parties to be reasonable in all the circumstances, it is recognized that restrictions of the nature in question may fail for technical reasons and, accordingly, it is hereby agreed and declared that if any of such restrictions will be adjudged to be void as going beyond what is reasonable in all the circumstances for the protection of the interests of Purchaser but would be valid if part of the wording thereof were deleted or the periods thereof reduced or the range of activities or area dealt with thereby reduced in scope the said restriction will apply with such modifications as may be necessary to make it valid and effective.

2.3    **Nondisclosure Agreement.**

Effective as of the Closing, Purchaser will be deemed to be released of its obligations arising under the Nondisclosure Agreement; provided however, from and after the Closing: (i) paragraph 8 of the Nondisclosure Agreement shall remain in full force and effect with respect to any persons not transferred to or hired by Purchaser pursuant to the terms of this Agreement; and (ii) the foregoing release shall only apply to Product Documents and Licensed Intellectual Property to the extent that Purchaser's use of such Product Documents and Licensed Intellectual Property is within the scope of any sublicense from GM to Purchaser.

**3.    PURCHASE PRICE.**

3.1    **Purchase Price for Acquired Assets**.    Subject to the terms and conditions of this Agreement, the aggregate purchase price for the Acquired Assets will be the following amount (the "Purchase Price"): (i) Twenty-Six Million Three Hundred Sixty Thousand Seven Hundred Sixty Dollars ($26,360,760); plus (ii) the Inventory Value as of the Closing Date; plus (iii) the Saltillo Expense Reimbursement Amount.

3.2    **Payment of Purchase Price**.

A.    The Pre-Closing Agreement Payments will be credited against the Purchase Price on the Closing Date.

B.    The following portion of the Purchase Price will be paid by Purchaser to Seller on the Closing Date in cash by wire transfer to an account designated in writing by Seller: (v) Twenty–Six Million Three Hundred Sixty Thousand Seven Hundred Sixty Dollars ($26,360,760) plus (w) the Saltillo Expense Reimbursement Amount plus (x) 80% of the Parties' good faith estimate of the Inventory Value as of the Closing Date based on Schedule 3.2, which reflects Inventory Value as of the last day of June 2007 (the "Inventory Partial Payment") minus (y) the Deposit minus (z) the sum of all Pre-Closing Agreement Payments.

C.    Within 30 days of the Closing Date, the Inventory Value will be jointly determined by Purchaser and Delphi and if the Inventory Value exceeds the amount of the Inventory Partial Payment, Purchaser will promptly pay Delphi the difference in cash by wire transfer to an account designated in writing by Delphi.  Likewise, if the Inventory Value is less than the amount of the Inventory Partial Payment, Delphi will promptly pay Purchaser the difference in cash by wire transfer to an account designated in writing by Purchaser.  If any dispute arises between Purchaser and Delphi related to Inventory Value, which dispute the Parties are unable to resolve within ten (10) days, each of Purchaser and Delphi shall select an independent accountant (whose fees and costs shall be paid by the respective Party who retained each accountant) and those independent accountants shall jointly determine the

Inventory Value.  If the two independent accountants cannot agree on the Inventory Value, disputes will be subject to the dispute resolution procedures set forth in <u>Section 14.18</u>.

3.3   **Deposit Amount.**

A.   Upon execution of this Agreement, Purchaser shall pay Two Million Dollars ($2,000,000) in immediately available funds to the Deposit Escrow Agent pursuant to the terms of the Deposit Escrow Agreement (such amount, together with the interest accrued thereon prior to the Closing, the "<u>Deposit</u>") to be held by the Deposit Escrow Agent in an interest bearing account reasonably acceptable to Purchaser to serve as a Good Faith Deposit under this Agreement, and, subject to Article 12 hereof, to be released in accordance with the following procedures:

(i)   <u>Deposit Instructions</u>.  At Closing, Seller and Purchaser shall jointly instruct the Deposit Escrow Agent to deliver the Deposit, by wire transfer of immediately available funds, to an account designated by Seller in the Deposit Escrow Agreement (and such amount shall be applied towards the payment of the Purchase Price).  The costs and expenses of the Deposit Escrow Agent will be paid from and borne solely by the Deposit;

(ii)   <u>Termination of Agreement</u>.  Upon any failure by Purchaser to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by Article 10 hereof, the Deposit Escrow Agent shall deliver the Deposit, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Seller in the Deposit Escrow Agreement, to be retained by Seller.  Any such payment shall constitute Seller's sole recourse in the event Purchaser notifies Seller, prior to the Auction date, of Purchaser's intent to terminate this Agreement.  Upon any breach by Purchaser on or after the Auction date, Seller will be entitled to all available remedies in law or equity.

(iii)   <u>Other Reason</u>.  Upon termination of this Agreement for any other reason or upon the failure by Seller to consummate the transactions contemplated hereby pursuant to this Agreement if and as required by <u>Section 10</u> (provided that Purchaser is not in breach of this Agreement, in which case <u>Section 3.3.A(ii)</u> shall apply), Seller and Purchaser shall jointly instruct the Deposit Escrow Agent to deliver the Deposit, by wire transfer of immediately available funds, to an account designated by Purchaser in the Deposit Escrow Agreement, to be retained by Purchaser.

3.4   **Purchase Price Allocation**.

A.   The Purchase Price for the Acquired Assets (other than any amounts paid for Past Model Service Parts and including any adjustments) will be allocated by the Parties among the Acquired Assets according to <u>Schedule 3.4</u> (the "<u>Allocation</u>").

B.   Purchaser and Seller will each report the federal, state and local income Tax consequences of the Sale in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the Internal Revenue Code (or any successor form or successor provision of any future Tax law) with their respective federal income Tax returns for the taxable year that includes the Closing Date, and none of the Parties will take any position inconsistent with the

15

Allocation unless required under applicable law. Seller will provide Purchaser and Purchaser will provide Seller with a copy of any information required to be furnished to the Secretary of Treasury under Internal Revenue Code Section 1060.

4.    **EMPLOYEE MATTERS.**

4.1    Salaried Employees.

A.    Prior to executing this Agreement, Purchaser has interviewed: 1) salaried employees regularly assigned to work at the Saginaw facility; and 2) salaried employees located in Troy, Dayton and Brighton who spend a majority of their time supporting the design, development, material purchasing, and product launch for the production or assembly of Products at Saginaw, Spring Hill or Oshawa for the purpose of determining to which salaried employees Purchaser wishes to offer employment.

B.    With respect to the salaried employees interviewed, Delphi has provided Purchaser the following information:

(i)    Name

(ii)    Current job title, dates in position, and position description

(iii)    Prior two job titles and dates in positions

(iv)    Date of hire

(v)    Current salary and two-year salary history

(vi)    Bonus target and three-year bonus payout history

(vii)    Long term (cash and equity) incentive target(s) and three-year history

(viii)    Three most recent performance reviews

(ix)    Documented disciplinary and corrective actions

C.    After completing the interviews referenced in Section 4.1.A, Purchaser will provide Delphi with two lists. One list will identify the salaried employees to whom Purchaser wishes to extend an offer of employment. This list may be attached to this Agreement as Schedule 4.1. The other list will identify salaried employees to whom Purchaser does not wish to extend an offer of employment (hereinafter referred to as the "Excluded Employees"). The lists will be provided to Delphi as soon as practical but no later than thirty (30) days from the date of this Agreement.

D.    From the date of this Agreement through the Closing Date, except for "for-cause" terminations, Delphi will not terminate or redeploy any of the salaried employees identified on Schedule 4.1.

E.    From the date of this Agreement through the Closing Date, Delphi will not make available alternative positions to, or otherwise seek to delay the commencement of employment with Purchaser by, any salaried employee identified on Schedule 4.1, except

16

employees to whom Delphi provided retention guarantees prior to their being assigned to the positions identified in Section 4.1.A above.

F.      For a period of five years after the Closing Date, Delphi and its affiliates will not offer to employ or employ any employees hired by Purchaser under the provisions of this Section 4.  For a period of five years after the Closing Date, Purchaser and its affiliates will not offer to employ or employ:  1) any of the salaried employees identified on Schedule 4.1 who receive severance benefits from Delphi in accordance with the Delphi Corporation Separation Allowance Plan for U.S. Employees as the result of Purchaser's failure to meet the "substantially comparable in the aggregate" standard described in Section 4.1.G; or 2) the Excluded Employees.

G.      With respect to the salaried employees identified on Schedule 4.1, prior to Closing, Purchaser will provide Delphi with the terms of each individual offer of employment Purchaser wishes to extend.  Within ten business days of Delphi receiving such terms of each offer, Delphi, in its sole discretion, will determine whether each offer provides wages and benefits that are substantially comparable in the aggregate to wages and benefits Delphi provides the salaried employee as of the offer date and advise Purchaser and the employee of its determination.  In the event Delphi determines that the terms are not substantially similar in the aggregate, Purchaser may, in its sole discretion, cure any deficiency so as to meet this standard.   However, if after consultation with Purchaser, Delphi, in its sole discretion, determines that Purchaser has still not met this standard, the affected employee will be so advised and given the option of:  1) receiving severance benefits from Delphi in accordance with the Delphi Corporation Separation Allowance Plan for U.S. Employees (and thus barred from employment by Purchaser for five years in accordance with Section 4.1.F); or 2) accepting Purchaser's offer of employment and waiving eligibility for any severance benefits from Delphi.  In no event, however, will Purchaser bear any responsibility or liability relating to any severance benefits Delphi provides to: 1) any of the salaried employees identified on Schedule 4.1 who receive severance benefits from Delphi in accordance with the Delphi Corporation Separation Allowance Plan for U.S. Employees as the result of Purchaser's failure to meet the "substantially comparable in the aggregate" standard; or 2) the Excluded Employees.

H.      Unless provided otherwise in this Agreement, Purchaser will be solely responsible for and will bear all Liabilities arising from acts or events relating to employment occurring on or after the Closing Date with respect to the salaried employees identified on Schedule 4.1 whom Purchaser hires.  Unless provided otherwise in this Agreement, Delphi will be solely responsible for and will bear all liabilities arising from acts or events relating to employment occurring prior to the Closing Date with respect to the salaried employees identified on Schedule 4.1 whom Purchaser hires.

4.2      Hourly Employees.

A.      No later than ten (10) days following the execution of this Agreement, Delphi will provide Purchaser with a list of the hourly employees regularly assigned to work at the Leased Premises.  The list will identify the hourly employees on active and inactive status as of the day the list is issued. For all inactive hourly employees, Delphi will identify each employee's specific inactive status and, if other than due to a layoff, the expected return to work date, if any.  For all hourly employees on layoff, Delphi will place the employees in seniority order and identify their seniority date as defined under the collective bargaining agreements identified in Section 4.2(C).  Such list will be attached

17

to this Agreement as <u>Schedule 4.2</u> and updated as of the business day immediately preceding the Closing.

B.    Effective at Closing, Purchaser will commence employment of all of the active hourly employees identified on <u>Schedule 4.2</u>.

(i)    Inactive hourly employees identified on <u>Schedule 4.2</u> due to disability, family medical leave, or other approved leave of absence will remain Delphi's responsibility until any such hourly employee is ready to return to active employment in accordance with Delphi's leave policies and applicable collective bargaining agreement provisions.  As soon as possible, but no later than three business days after Delphi's receipt of notice of such employee's expected return to work date, Delphi will notify  Purchaser of the expected return to work date.

(ii)    In the event that an hourly employee identified on <u>Schedule 4.2</u> is seeking to return to active employment from a medical-based leave, such individual's fitness for active employment must be approved by both Delphi and Purchaser provided such does not violate any applicable Purchaser or Delphi collective bargaining agreement.  If Delphi and Purchaser do not agree as to such individual's fitness for active employment, the issue will be submitted to an independent medical evaluator, whose determination will be final and binding on the parties.  The cost of such independent medical evaluation will be shared equally by the parties.

(iii)    Hourly employees identified on <u>Schedule 4.2</u> who are not actively at work as of the Closing due to layoff ("<u>Laid Off Employees</u>") will remain Delphi's responsibility until any such Laid Off Employee is transferred to Purchaser.  Laid Off Employees will be placed on a recall list according to their seniority as defined by the collective bargaining agreements identified in Section 4.2(C).  Laid Off Employees will be transferred to Purchaser from the recall list as Purchaser has need for additional bargaining unit personnel.

C.    Unless Purchaser negotiates and executes Purchaser-UAW collective bargaining agreement(s) prior to Closing, Purchaser will assume all of the collective bargaining agreements to the extent applicable to the hourly employees identified on <u>Schedule 4.2</u> at the Leased Premises ("<u>Collective Bargaining Agreements</u>"), including but not limited to:

(i)    the UAW-Delphi Supplemental Agreement dated April 29, 2004 as amended (the "Supplemental Agreement);

(ii)    the 2003-2007 UAW-Delphi National Agreement, including the supplemental agreements attached thereto, as amended and  extended through September 14, 2011 (the "National Agreement");

(iii)    the UAW-Delphi-GM Memorandum of Understanding – Delphi Restructuring dated June 22, 2007, including the Attachments thereto, and all agreements referenced therein (the "Restructuring Agreement");

(iv)    the agreements contained in the booklet captioned "Local Agreements BETWEEN Delphi Energy & Chassis Systems Saginaw Operations AND Local 467, UAW, 2003", as amended; and

(v) any Memorandum of Understanding between Delphi, Purchaser and the UAW regarding the effects of the sale upon bargaining unit members ("the Effects MOU").Delphi and Purchaser agree that, to the maximum extent possible, this Agreement will be interpreted in a manner consistent with the Effects MOU. However, if any provision of the Effects MOU is inconsistent with any provisions of this Agreement, the provisions of the Effects MOU will govern.

Delphi and Purchaser acknowledge that the Collective Bargaining Agreements assumed by Purchaser apply only to the bargaining unit members at the Leased Premises.

D.     Purchaser will recognize the seniority of each of the hourly employees who transfers to Purchaser for all purposes in accordance with the Collective Bargaining Agreements.

E.     If Purchaser is unable to negotiate and execute Purchaser-UAW collective bargaining agreement(s) prior to Closing and thereby assumes the Collective Bargaining Agreements referenced above, the following shall apply in respect of the employee benefit provisions of such agreements:

(i)     Pension Plan.  Effective as of the Closing and subject to the following, Purchaser will establish a defined benefit pension (cash balance) plan for the benefit of the hourly employees identified on Schedule 4.2. who commence employment with Purchaser (the "Hourly Employees").  Such cash balance pension plan will contain provisions that mirror the Individual Retirement Plan provisions of the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP") (and only such other provisions of the Delphi HRP necessary to implement the Purchaser cash balance plan) that were applicable to the Hourly Employees on the close of business on the day immediately preceding the Closing under the terms of the Collective Bargaining Agreements.  In no event shall Purchaser be required to establish or otherwise provide benefits in connection with the Delphi HRP, other than the Individual Retirement Plan provisions, as provided under the National Agreement or otherwise, which benefits shall be considered Retained Liabilities of Seller for purposes of the indemnification provisions of Section 11.5 hereof.  In establishing such cash balance pension plan, the following shall apply:

(a)     Purchaser will recognize the pre-Closing credited service under the Delphi HRP, as in effect immediately prior to the Closing, of each of the Hourly Employees for eligibility and vesting purposes only but not benefit accrual purposes. Purchaser will recognize post-Closing credited service of each of the Hourly Employees for vesting, eligibility, and benefit accrual purposes subject to the terms of the Purchaser cash balance plan.

(c)     Except as otherwise provided herein, Hourly Employees will continue to be eligible for pension benefits from Delphi in accordance with the terms of the Delphi HRP, including but not limited to any benefits accrued under the Individual Retirement Plan provisions of the Delphi HRP, based on their pre-Closing credited service with Delphi and, to the extent permitted under applicable law, their post-Closing credited service with Purchaser for eligibility and vesting purposes which benefits shall be

19

considered Retained Liabilities of Seller for purposes of the indemnification provisions of Section 11.5 hereof.

(e)    For purposes hereof, any employee identified on Schedule 4.2 who is on leave or layoff and commences active employment with Purchaser after the Closing, shall not be eligible to participate in or receive any service credits under the cash balance plan established by Purchaser until such time as the employee becomes an active employee of Purchaser and any obligation for benefits shall remain with Delphi until such time.

(f)    Notwithstanding anything to the contrary herein, any Hourly Employee who is considered a "Covered Employee" under the Term Sheet—Delphi Pension Freeze and Cessation of OPEB and GM Consensual Triggering of Benefit Guarantee (the "Term Sheet"), is not eligible to participate in the cash balance pension plan established by Purchaser for the period of time such employee is eligible to accrue credited service in the General Motors pension plan in accordance with the Term Sheet and only service and wages earned with Purchaser after such period of time shall be taken into account for benefit accrual purposes.   In this regard, effective at Closing, Purchaser will assume any and all obligations to pay GM for this benefit avoidance in accordance with Section 2.02(d)(ii) of the Global Settlement Agreement Between GM and Delphi dated September 6, 2007 that, but for Purchaser's purchase of the Acquired Assets, would have been Delphi's obligations.

(ii)    Active Health and Welfare Benefits.  Effective as of the Closing and subject to the following, Purchaser will establish medical, dental, vision, disability, life insurance and health care spending account plans for the benefit of the Hourly Employees.   Such plans will contain provisions that mirror the provisions of the Delphi medical, dental, vision, disability, life insurance and health care spending account plans that were applicable to the Hourly Employees on the close of business on the day immediately preceding the Closing under the terms of the Collective Bargaining Agreements.  In establishing such plans, the following shall apply:

(a)    All limitations as to pre-existing conditions, exclusions, service conditions and waiting periods shall be inapplicable to the Hourly Employees, except limitations or waiting periods that were in effect with respect to such employees as of the Closing under the Delphi medical, dental, vision, disability, life insurance and health care spending account plans.

(b)    Notwithstanding the foregoing, if the Closing occurs on a day other than the last day of the calendar year, those Hourly Employees who become active employees of Purchaser after the Closing shall continue to participate in Delphi's medical, dental, vision, and health care spending account plan for a period of 90 days from the Closing (or such longer or shorter period of time as is mutually agreed to by the parties, but in no event after the date on which Purchaser has established such plans in accordance with this subsection) and Purchaser shall pay Delphi the COBRA premium rates associated with participation by the Hourly

20

Employees under such Delphi plans during this period. For purposes hereof, any employee identified on Schedule 4.2 who is on leave or layoff and commences active employment with Purchaser after the Closing, shall not be eligible to participate in Purchaser's medical, dental, vision, disability, life insurance and health care spending account plans until such time as the employee becomes an active employee of Purchaser and any obligation for benefits shall remain with Delphi until such time.

(c)    To the extent permissible under the Collective Bargaining Agreement(s), Purchaser reserves the right to designate the carriers or administrators of the medical, dental, vision, disability, life insurance and health care spending account plans it establishes for the benefit of the Hourly Employees.

(d)    Purchaser shall have no responsibility for any claims relating to any of Delphi's medical, dental, vision, disability, life insurance and health care spending account plans to the extent incurred prior to the Closing, regardless of whether such claims are filed or reported before, on or after the Closing.  Such claims shall be dealt with under the terms of such Delphi medical, dental, vision, disability, life insurance and health care spending account plans.

(iii)    Retiree Medical Benefits.  Effective as of the Closing and subject to the following, Purchaser will establish a notional post-retirement health care account for the benefit of eligible Hourly Employees who retire from Purchaser. Such account will contain provisions that mirror the provisions of the Delphi post-retirement health care account that were applicable to the Hourly Employees on the close of business on the day immediately preceding the Closing under the terms of the Collective Bargaining Agreements. In no event shall Purchaser be required to establish or otherwise provide any other type or form of retiree medical benefits, as provided under the Collective Bargaining Agreements or otherwise.  In establishing such account, the following shall apply:

(a)    Effective as of the Closing, Purchaser will establish an opening balance under its post-retirement health care account for each eligible Hourly Employee equal to the individual account balances of such Hourly Employees under Delphi's notional post-retirement health care account as of the day immediately prior to Closing, increased for any accrued but un-credited or unpaid interest and contributions as of the Closing.  In consideration thereof, the purchase price will be adjusted as of the Closing by the sum of the individual account balances of Hourly Employees as of the Closing under Delphi's notional post-retirement health care account, which will be increased for any accrued but un-credited or unpaid interest and contributions as of the Closing and reduced to reflect the actuarial economic present value of such balances as determined by Watson Wyatt Worldwide assuming Delphi's actuarial assumptions as of the prior measurement date and using a 7.375% discount rate.

(b)    Purchaser will recognize the pre-Closing credited service with Delphi under the terms of the Delphi post-retirement health care account, as in effect immediately prior to the Closing, of each of the

21

Hourly Employees for purposes of eligibility for the post-retirement health care account established by Purchaser.

(c)     As of the Closing, Hourly Employees will no longer be eligible for any post-retirement health care account from Delphi.

(d)     For purposes hereof, any employee identified on <u>Schedule 4.2</u> who is on leave or layoff and commences active employment with Purchaser after the Closing, shall not be eligible to participate in or receive any service credits under the post-retirement health care account established by Purchaser until such time as the employee becomes an active employee of Purchaser and any obligation for benefits shall remain with Delphi until such time.

(e)     Notwithstanding anything to the contrary herein, Hourly Employees who are considered "Covered Employees" under the Term Sheet, and are able to attain eligibility for retiree medical benefits through GM under the Term Sheet are not eligible to receive credits to the post-retirement health care account established by Purchaser.  Hourly Employees who are considered "Covered Employees" under the Term Sheet but cannot attain eligibility to receive retiree medical benefits through GM under the Term Sheet are eligible to receive credits to the post-retirement health care account established by Purchaser only for service earned after the Closing.

(iv)     <u>401(k) Plan</u>.  Effective as of the Closing and subject to the following, Purchaser will establish a 401(k) plan for the benefit of the Hourly Employees (or otherwise amend an existing 401(k) plan of Purchaser to include provisions specific to the Hourly Employees) ("Purchaser's 401(k) Plan"). Purchaser's 401(k) Plan will contain provisions that mirror the provisions of the Delphi Personal Savings Plan ("Delphi PSP") that were applicable to the Hourly Employees on the close of business on the day immediately preceding the Closing under the terms of the Collective Bargaining Agreements.  In establishing such plan, the following shall apply:

(a)     Purchaser will recognize the pre-Closing credited service under the terms of the Delphi PSP, as in effect immediately prior to the Closing, of each of the Hourly Employees for eligibility and vesting purposes only.

(b)     Matching contributions to Purchaser's 401(k) Plan will be made in shares of TRW Stock.

(c)     Hourly Employees shall be required to enroll in Purchaser's 401(k) plan, in accordance with the enrollment procedures identified by Purchaser prior to Closing.

(d)     Hourly Employees shall have a range of investment options in which to invest their accounts under Purchaser's 401(k) Plan, as designated by the TRW Automotive North American Investment Committee.

(e)     To the extent allowed under applicable law, Hourly Employees who transfer to Purchaser and become eligible for a distribution of their account balances in the Delphi PSP will be permitted,

22

at their discretion, to rollover such account balances to Purchaser's 401(k) Plan in a form acceptable to Purchaser. Prior to accepting such rollovers, Purchaser may request reasonable proof, including a current IRS Determination Letter, that the Delphi PSP is qualified under Section 401(a) of the Internal Revenue Code.

(f)    Notwithstanding anything to the contrary herein, Hourly Employees who are considered "Covered Employees" under the Term Sheet, are not eligible to receive any company matching contributions under the Purchaser's 401(k) Plan for the period of time they are eligible to accrue credited service in the General Motors pension plan in accordance with the Term Sheet.

(v)    <u>Supplemental Unemployment Benefit Plan</u>.  Effective as of the Closing, Purchaser will establish a Supplemental Unemployment Benefit Plan for the benefit of the Hourly Employees, which will contain provisions that mirror the provisions of the Delphi Supplemental Unemployment Benefit Plan that were applicable to the Hourly Employees on the close of business on the day immediately preceding the Closing under the terms of the Collective Bargaining Agreements.

(vi)    Nothing contained herein is intended to adversely affect the Purchaser's ability to receive any benefits of the Term Sheet or any obligations associated with such Purchaser's receiving such benefits, and this Section 4.2 shall be construed and interpreted accordingly.

(vii)    Immediately following the Closing, Delphi and Purchaser shall issue a joint notice to the Hourly Employees and the International Union, UAW, advising of the benefit provisions described herein, including, if applicable, details as to the Hourly Employees' continued entitlement to benefits from Delphi based on their service and wages prior to Closing.

F.    To the extent Purchaser is able to negotiate and execute Purchaser-UAW collective bargaining agreement(s) prior to Closing, the terms of such Purchaser-UAW collective bargaining agreement(s) shall, subject to any applicable Effects MOU provisions referenced in Section 4.2.C.(v), control in respect of the employee benefit plans and provisions for the hourly employees identified on <u>Schedule 4.2</u>. who commence active employment with Purchaser and Section 4.2.E. shall, to the extent inconsistent with any such Purchaser-UAW collective bargaining agreement(s), be inapplicable.

G.    Purchaser and Delphi shall, and shall cause each of their respective subsidiaries and/or third party administrators and consultants (to the extent reasonably practicable), to provide to the other all such information as the other may reasonably request to enable the requesting party to adopt, establish and administer the employee benefit plans and programs under this Agreement and the Collective Bargaining Agreements.  Such information shall, to the extent reasonably practicable, be provided in the format and at the times and places requested, but in no event shall the party providing such information be obligated to incur any out-of-pocket expense not reimbursed by the party making such request, nor to make such Information available outside its normal business hours and premises.  Any information shared or exchanged pursuant to this Agreement shall at all times be kept confidential.  At a minimum, and in no event later than ten business days following the execution of this Agreement, Delphi

shall provide to Purchaser copies of all legally required plan documents applicable to the Individual Retirement Plan provisions of the Delphi Hourly-Rate Employees Pension Plan, the active health and welfare benefits, the post-retirement health care account, the Delphi Personal Savings Plan, and the Delphi Supplemental Unemployment Benefit Plan, including formal plan documents and summary plan descriptions meeting the requirements of the Internal Revenue Code of 1986, as amended, and the Employee Retirement Income Security Act of 1974, as amended, described in Section 4.2.E above.

H.    Delphi will retain responsibility to administer and all liability for labor grievances and arbitration proceedings (collectively "the Grievances") arising from alleged violations of the Collective Bargaining Agreements occurring prior to the Closing; provided, however, that such grievances are filed within ninety (90) days of the Closing. For a period of ninety (90) days following the Closing, Purchaser will notify Delphi of any Grievances filed after the Closing which relate to alleged violations of the collective bargaining agreements occurring prior to the Closing.  Purchaser will be responsible to administer and bear all liability for Grievances arising from alleged violations of the Collective Bargaining Agreements occurring after the Closing..  To the extent the administration or resolution of any Grievances requires both the Purchaser's and Delphi's participation, the following apply:

(i)    Purchaser and Delphi will cooperate in the defense of the Grievances.

(ii)    Purchaser will not settle any Grievance without Delphi's consent if such settlement will result in liability or obligation for Delphi.  Such consent will not be unreasonably withheld.

(iii)    Delphi will not settle any Grievance without Purchaser's consent if such settlement will result in liability for Purchaser.  Such consent will not be unreasonably withheld.

(iv)    If the seniority of an hourly employee who transfers to Purchaser is reinstated as a result of the disposition of a Grievance or a court or administrative order, Purchaser will reinstate the employee as if he/she had been an employee of Purchaser as of the Closing subject to the terms of the Grievance disposition, court or administrative order.

(v)    For hourly employees who transfer to Purchaser and who have been continuously employed, back pay liability to the extent relating to an event, occurrence or cause of action arising prior to the Closing will be allocated to Delphi.  Liability relating to an event, occurrence or cause of action arising subsequent to the Closing will be allocated to Purchaser.

(vi)    For hourly employees who transfer to Purchaser because they are reinstated through the grievance procedure, back pay liability relating to periods prior to the Closing will be allocated to Delphi.  Liability relating to periods subsequent to the Closing will be allocated to Purchaser.

(vii)    The parties will discuss treatment of Grievances involving unusual circumstances or events that continue before and after the Closing.

(viii)    If either party unreasonably withholds consent to a settlement or processing of a Grievance recommended by the other party or elects to continue

24

to defend the Grievance, then such party will be liable for the portion of the back pay or other liability resulting from the ultimate disposition of such Grievance (or subsequent settlement) which is in excess of the liability that would have resulted from the settlement recommended and rejected.

I.      Liabilities, obligations, commitments, costs and expenses for workers' compensation benefits related to injuries or illnesses which are incurred or first diagnosed on or after the Closing by hourly employees who transfer to Purchaser will be the responsibility of Purchaser.

J.      Liabilities, obligations, commitments, costs and expenses for claims for severance, termination (actual or constructive), WARN Act, or other payments or benefits by hourly employees who transfer to Purchaser deriving from Purchaser's acquisition under this Agreement will be the responsibility of Purchaser.

K.      Subject to Purchaser's obligations under paragraph 4.2.C to assume the Collective Bargaining Agreements (and thereby duplicate the applicable employee benefit plans), Purchaser will not assume any of Delphi's employee benefit plans.

L.      Buyer will assume responsibility for all liabilities, obligations, commitments, costs and expenses for claims of the hourly employees who transfer to Purchaser (or any dependent thereof who becomes a "qualified beneficiary" within the meaning of Section 4980B(g)(1) of the Internal Revenue Code) related to compliance with the requirements of continuation coverage under Section 4980B of the Internal Revenue Code or Section 601 of ERISA or as the result of any "qualifying event" within the meaning of Section 4980B(f)(3) of the Internal Revenue Code which occurs on or after the Closing.

M.      Unless provided otherwise in this Agreement, Purchaser will be solely responsible for and will bear all Liabilities arising from acts or events relating to employment of the Hourly Employees occurring on or after the date on which each respective Hourly Employee commences employment with Purchaser.  Unless provided otherwise in this Agreement, Delphi will be solely responsible for and will bear all Liabilities arising from acts or events relating to employment of the Hourly Employees occurring prior to the date on which each respective Hourly Employee commences employment with Purchaser.

4.3      Due Diligence.

A.      No later than ten business days following the execution of this Agreement, Delphi shall provide Purchaser:

(i)      A description of all pending Grievances involving the hourly employees listed on Schedule 4.2.

(ii)      A description of all pending employment-related litigation by or against employees identified on Schedule 4.1 and Schedule 4.2.

(iii)      A description of all pending administrative agency complaints, charges, unfair labor practice charges, or investigations by or against employees listed on Schedule 4.1 or Schedule 4.2.

(iv)    A description of any consent orders or orders by any court or administrative agency applicable to employees listed on <u>Schedule 4.1</u> or <u>Schedule 4.2</u>.

(v)    All documents constituting the Collective Bargaining Agreements between Delphi and the UAW applicable to the hourly employees listed on <u>Schedule 4.2</u>, including but not limited to any side letters, memoranda of understanding or agreement, and Grievance or arbitration settlements.

(vi)    With respect to hourly employees listed on <u>Schedule 4.2</u>:

a.    Name;

b.    Job classification/title;

c.    Date of hire;

d.    Rate of pay;

e.    Identification of whether the employee has "flowback rights" and, if so, the date by which the employee must exercise such rights;

f.    Attendance history for the past three years; and

g.    Documented disciplinary and corrective actions.

(vii)    The plan documents referenced in Section 4.2.G.


**5.    CONTINUED SUPPLY BY PURCHASER AND SELLER.**

5.1    **GM Directed Buy Parts**.

For component parts listed on <u>Schedule 5.1</u> which are produced by Delphi or its Affiliates and used in the manufacture of the Products (the "<u>Internally Supplied Parts</u>"), Delphi agrees to sell and supply such parts to Purchaser at the pricing set forth in those certain GM "Directed Buy" letters for the life of the underlying programs (and without regard to the "Duration/Until" reference on <u>Schedule 5.1</u>) or such earlier date as GM directs that Purchaser use alternative sources for the Internally Supplied Parts. The sale of the Internally Supplied Parts will be pursuant to purchase orders issued by Purchaser to Delphi after the Closing with terms consistent with this Section 5.1 and the GM "Directed Buy" letters but will be governed by the GM purchase order general terms and conditions in effect as of the date the purchase orders for the Internally Supplied Parts are accepted by Delphi.

5.2    **Non-GM Directed Buy Parts**.

For any component parts listed on <u>Schedule 5.2</u> which are produced by Delphi or its Affiliates and used in the manufacture of the Products (the "<u>Non-GM Directed Buy Parts</u>"), Delphi agrees to sell and supply (or cause its Affiliates to sell and supply) such parts to Purchaser on the same terms and conditions on which Delphi supplied such parts to itself or such Affiliates supplied the parts to Delphi, with such sales being pursuant to (i) an assignment to Purchaser of any internal Delphi purchase orders (the "<u>Assigned Delphi Contracts</u>"), or (ii)

according to the pricing and for the term set forth on Schedule 5.2 and in accordance with the GM purchase order general terms and conditions in effect as of the date of this Agreement. Purchaser shall have no obligation to cure any defaults that may exist under the Assigned Delphi Contracts as of the Closing Date.  Nothing herein shall be construed to obligate Delphi or its Affiliates to sell or supply Non-GM Directed Buy Parts to Purchaser for longer than the periods set forth on Schedule 5.2 other than on terms acceptable to Purchaser and the Delphi unit or Affiliate involved.

    5.3    **Parts Banks.**

At Purchaser's option, and provided Delphi is reimbursed for all reasonable incremental costs and expenses (i.e., in addition to the applicable purchase price and the cost of working capital funds) of producing and maintaining such parts banks (and such parts banks are paid for according to payment terms now in effect between the applicable customer and Delphi) and subject to capacity constraints, Delphi will produce any reasonably required parts banks of the Products to meet the customers' production needs (a) for a period of 21 days after the Closing Date for Products manufactured at the Leased Premises, (b) for the period mutually agreed by Purchaser and Seller for Products now manufactured by Delphi at the Other Product Facilities.

    5.4    **Contract Manufacturing.**

During the period from the Closing Date through July 31, 2008 (or thereafter as extended on a month-to-month basis by mutual agreement of the Parties), Purchaser will manufacture the component parts listed on Schedule 5.4 (the "Contract Manufacturing Parts") as a contract manufacturer in accordance with the terms of a Contract Manufacturing Agreement substantially in the form of Exhibit 5.4 (for convenience, such manufacturing is referred to as the "Contract Manufacturing"):

    5.5    **Saginaw Supplied Parts.**

For component parts listed on Schedule 5.5 which are produced by Delphi at the Leased Premises and used in the manufacture of the Products at the Other Product Facilities (the "Saginaw Supplied Parts"), Purchaser agrees to sell and supply such parts to Seller at the pricing set forth on Schedule 5.5 until such time as the applicable Non Saginaw Assets are removed from the Other Product Facilities and Seller has no further requirements for the Saginaw Supplied Parts, with such sales being pursuant to a standard Delphi purchase order issued by Seller and accepted by Purchaser.

**6.**    **LEASED PREMISES.**

    6.1    **Lease Agreement**.

At the Closing, Delphi and Purchaser will enter into a lease (the "Lease Agreement") in the form attached as Exhibit 6.1.

    6.2    **[Intentionally omitted]**.

    6.3    **Removal of Delphi Contract Manufacturing Equipment.**

Delphi agrees that it will remove at its cost and expense all Delphi Contract Manufacturing Equipment from the Leased Premises on a program-by-program basis after the applicable assets are no longer being used for Contract Manufacturing in accordance with the Contract Manufacturing Removal Plan attached hereto as Exhibit 6.3.  Delphi will pay for all

Decommissioning Activities in respect of the Delphi Contract Manufacturing Equipment, together with the costs of repairing any material damage caused to the Leased Premises during the removal of the Delphi Contract Manufacturing Equipment or the Decommissioning Activities related thereto. To the extent any agreements between Purchaser and any unions representing workers at the Leased Premises require that the dismantling and removal of the Delphi Contract Manufacturing Equipment be completed by union employees, Delphi shall use such employees to remove the Delphi Contract Manufacturing Equipment or, subject to the consent of the applicable union, reimburse Purchaser for any amounts Purchaser must pay the employees in lieu of using them to dismantle and remove such assets. In connection with the removal of the Delphi Contract Manufacturing Equipment, Delphi shall not unreasonably interfere with any ongoing production by Purchaser.   Purchaser shall have the right to monitor all removal activities.

7.    **CERTAIN TRANSITION MATTERS.**

7.1    **Transition Services Agreement**.   Delphi and Purchaser will enter into a transition services agreement in the form attached hereto as <u>Exhibit 7.1</u> (the "<u>Transition Services Agreement</u>")pursuant to which Delphi will provide certain transition services to Purchaser and Purchaser will provide certain transition services to Seller, in each case at the providing party's cost, as set forth in the Transition Services Agreement.

7.2    **Equipment Leases**.

Although Purchaser recognizes that Delphi is not able to assume and assign the leases of any equipment used at the Leased Premises given that such assets are leased under agreements that include assets at other Delphi locations, Delphi agrees to work in good faith with Purchaser and the applicable lessor(s) on a consensual buy-out of any such assets not subject to redeployment within Delphi or otherwise necessary for the continued operation of Delphi's business that Purchaser may elect to acquire at Purchaser's cost and expense.   In no event will Delphi be obligated to incur any liability or cost in connection with Purchaser's acquisition of any equipment currently leased by Delphi.

7.3    **Purchasing Activities.**

A.    Within three (3) business days following the execution of this Agreement, Seller or Delphi Canada, as applicable, will deliver a letter to all vendors who supply goods or services to Seller or Delphi Canada in connection with the manufacture of the Products or the operation of the Leased Premises pursuant to a Supplier Contract (collectively, "<u>Existing Vendors</u>") advising them that subject to Bankruptcy Court approval, Seller intends to sell the Acquired Assets and Delphi Canada intends to sell certain of its assets to Purchaser and that the Existing Vendors are authorized to provide quotes to Purchaser for the applicable goods or services and otherwise engage in negotiations with Purchaser regarding supplying Purchaser after Bankruptcy Court approval and the Closing occurs.   Purchaser acknowledges that Seller's and Delphi Canada's letters to the Existing Vendors will advise such Existing Vendors of their continued obligations to supply Seller's and Delphi Canada's requirements for the applicable goods and services in accordance with the Supplier Contracts despite any negotiations or agreements with Purchaser.

B.    Within five (5) business days following the execution of this Agreement and subject to any confidentiality obligations to the Existing Vendors or other third parties, Seller will:

(i)        provide to Purchaser, to the extent the same exist, details of all pending pricing or other commercial disputes with Existing Vendors, copies of all direct supply letters and related agreements in respect of the goods or services provided by the Existing Vendors, and all other data and documentation reasonably requested by Purchaser for purposes of Purchaser quoting the Existing Vendors and entering into agreements and purchase orders that are contingent upon Purchaser acquiring the Acquired Assets.  Other than provided for in this Section 7.3.B. for purposes of quoting the Existing Vendors and entering into agreements and purchase orders that are contingent upon Purchaser acquiring the Acquired Assets, any and all information provided by Seller or Seller's representatives to Purchaser shall be subject to the terms of the Non-Disclosure Agreement as modified by Section 2.3 of this Agreement; and

(ii)        afford Purchaser reasonable access to a designated Seller's representative of Global Supply Management staff knowledgeable about the goods and services Seller purchases from the Existing Vendors to assist Purchaser in understanding background information necessary to purchase the subject goods and services.

C.    Upon execution of this Agreement, Purchaser shall have the same right that Seller has to inspect all Tooling and customer owned Tooling in the possession of the Existing Vendors and Seller will cooperate with Purchaser in giving any reasonably necessary consents, authorizations or directions to the Existing Vendors to allow Purchaser to inspect such items (at Purchaser's cost and expense).

## 8.    REPRESENTATIONS AND WARRANTIES.

### 8.1    **Warranties of Seller**.

Delphi (and DTI as to Subparagraph L below) represents and warrants, as of the date hereof, severally, to Purchaser with respect to the Acquired Assets being sold by such Seller as follows:

A.    Corporate Authority.  Subject to the entry and effectiveness of the Bidding Procedures Order and Sale Approval Order (collectively, the "Orders"), Seller has the requisite corporate authority to execute and perform in accordance with this Agreement, and, upon full satisfaction of the terms and conditions of the Orders, this Agreement shall constitute a valid and binding obligation of Seller.

B.    No Conflict.  The execution and performance by Seller of this Agreement does not violate, conflict with or result in a breach by Seller of its certificate or articles of incorporation or bylaws or of any other agreement to which Seller is a party or by which it is bound, except for those violations that are excused by or are unenforceable as a result of the Bankruptcy Code.

C.    Title to Acquired Assets.  Seller warrants that, as of the date of delivery of the Acquired Assets, Seller will have good and marketable title to the Acquired Assets and the Acquired Assets will be sold, assigned, transferred or delivered, as the case may be, free and clear of any Lien, as permitted under Section 363(f) of the Bankruptcy Code.

D.    Litigation.   Except for the pendency of the Bankruptcy Cases or as otherwise set forth on Schedule 8.1.D., there is no litigation - equitable or legal,

29

administrative, arbitrative or other proceedings - pending against Seller with respect to the Acquired Assets, and Seller has no Knowledge of any written notice of violation of any applicable law, rule or regulation, or any written notice of threatened litigation or Claims, with respect to the Acquired Assets.

E.    Sufficiency of Assets.    To Seller's Knowledge the Acquired Assets together with the Canadian Assets and the assets described in Section 1.5 comprise all of the tangible assets reasonably necessary to manufacture the Products and operate the Leased Premises in all material respects as the Products were manufactured and as the Leased Premises was operated by Sellers.    Purchaser acknowledges and agrees that its exclusive remedy in respect of any claim arising out of this Section 8.1(E) will be as provided in Section 11.2 of this Agreement.

F.    Condition of Personal Property.    With respect to all Acquired Assets, Seller has performed maintenance consistent with applicable maintenance policies and procedures and will continue to perform such maintenance in the Ordinary Course of Business through the Closing Date.

G.    Third Party Assets. To Seller's Knowledge, the items set forth on Schedule 1.5.A and any customer-owned tooling or dunnage are the only Third Party Assets used by Seller in the manufacture or shipment of the Products or the operation of the Leased Premises.

H.    Maintenance of Spare Parts and Crib Items. Through the Closing, Seller will manage its on-hand supply of Spare Parts and Crib Items in the Ordinary Course of Business and will not deplete such supply.

I.    Compliance with Laws.    To Seller's Knowledge, the production, distribution and export/import operations with respect to the Products are in compliance with all applicable Laws, except where the failure to be in compliance would not have a Material Adverse Effect.

J.    Brokers.    Seller has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Purchaser would be liable.

K.    Absence of Other Representations or Warranties.    Except for the warranties expressly set forth in this Agreement and the Ancillary Agreements, Seller makes no representations or warranties, express or implied, with respect to the Acquired Assets.  For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence, on any other documents or other information not contained in this Agreement or the Ancillary Agreements, all which were produced only for information purposes.

L.    Licensed Intellectual Property. In respect of the Licensed Intellectual Property:

(i)    The Licensed Intellectual Property includes all intellectual property of Sellers' and related rights necessary or desirable for the design, manufacture, assembly, testing and tuning of the Products;

(ii)    GM has or will have the right to grant Purchaser and its affiliates a North American, perpetual, irrevocable, paid-up, royalty-free right and license to

develop, make, have made, use, import, export, sell and offer to sell any Products using the Licensed Intellectual Property, all without further royalty payment by Purchaser or its affiliates to Seller for use of Licensed Intellectual Property (other than as required by the Transition Services Agreement);

(iii)    Seller has the right to license the Licensed Intellectual Property to GM and that there are no outstanding licenses that are inconsistent with those rights; and

(iv)    Other than as set forth on <u>Schedule 8.1.L</u>, Seller has not received any written notice of infringement, and otherwise has no Knowledge regarding any infringement, with respect to the Licensed Intellectual Property.

M.    <u>Collective Bargaining Agreements</u>.    All    of    the    material    collective bargaining agreements applicable to the Leased Premises are set forth in, referenced in, or attached to the documents specifically listed in section 4.2.C(i) through (v).

8.2    **<u>Warranties of Purchaser</u>**.

Purchaser warrants and represents to Seller as follows:

A.    <u>Corporate Authority</u>.    Purchaser has the requisite corporate authority to execute and perform in accordance with this Agreement, and this Agreement constitutes a valid and binding obligation of Purchaser.

B.    <u>No Conflicts</u>.    The execution and performance by Purchaser of this Agreement does not violate, conflict with or result in a breach of Purchaser's certificate or articles of incorporation, or by-laws, or of any other agreement to which Purchaser is a party of by which it is bound.

C.    <u>Consents and Approvals</u>.    No consent, approval, or authorization of any non-governmental third party and no consent, approval, authorization or declaration of or filing or registration with any foreign, federal, state or local governmental or regulatory authority is required to be made or obtained by Purchaser in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby.

D.    <u>Litigation.</u>    There is no litigation, equitable or legal, administrative, arbitrative, or other proceedings pending, or to the Knowledge of Purchaser, threatened against or affecting Purchaser which could reasonably be expected to result in the issuance of an order restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

E.    <u>Brokers.</u>    Purchaser has employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Seller would be liable.

F.    <u>Solvency.</u>  Upon the consummation of the transactions contemplated by this Agreement:  (i) Purchaser will not be insolvent; (ii) Purchaser will not be left with unreasonably small capital; (iii) Purchaser will not have incurred debts beyond its ability to pay such debts as they mature; and (iv) the capital of Purchaser will not be impaired.

31

G. <u>Availability of Funds.</u>  Purchaser has or will have available, at or prior to Closing, sufficient cash in immediately available funds to pay the Purchase Price and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.

H. <u>Compliance with Laws.</u>  To Purchaser's Knowledge, Purchaser is in compliance with all Laws applicable to it, except with respect to those violations that could not reasonably be expected to result in the issuance of an order outstanding restraining, enjoining or otherwise prohibiting Purchaser from consummating the transactions contemplated by this Agreement.

I. <u>Anti-Money Laundering.</u>  To Purchaser's Knowledge, Purchaser is in compliance with: (i) all applicable provisions of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("<u>USA Patriot Act</u>"), as amended, and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, Effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which Purchaser operates or does business.  Neither the Purchaser nor any of its directors, officers or Affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("<u>OFAC</u>") list of "<u>Specially Designated Nationals and Blocked Persons</u>" (the "<u>SDN List</u>") or otherwise the target of an economic sanctions program administered by OFAC, and Purchaser is not affiliated in any way with, or providing financial or material support to, any such persons or entities.  Purchaser agrees that should it, or any of its directors, officers or Affiliates be named at any time in the future on the SDN List, or any other similar list maintained by the U.S. Government, Purchaser shall inform the Seller in writing immediately.

8.3     **Survival of Representations and Warranties.**

The representations and warranties made by the Seller in <u>Section 8.1</u> and by the Purchaser in <u>Section 8.2</u> will survive the Closing and will expire on the second anniversary of the Closing Date (the "<u>Expiration Date</u>").

8.4     **Fair Disclosure.**  Any matter fairly disclosed in any Schedule to this Agreement will be deemed an exception for all other representations and warranties contained in this Agreement whether or not such other representations or warranties contain a reference to such Schedule.

9.     **CONDITIONS TO CLOSING.**

9.1     **Conditions to Obligations of Seller and Purchaser**.The respective obligations of each Party to effect the transactions contemplated by this Agreement will be subject to the satisfaction or waiver at or prior to the Closing Date  (or such earlier time as is indicated below) of the following conditions precedent:

A. <u>Sale Approval Order</u>. The Sale Approval Order will be entered by the Bankruptcy Court and will not be subject to a stay or injunction.

B.  <u>No Law, Judgments, Etc</u>.  No provisions of any applicable Law and no judgment, injunction (preliminary or permanent), order or decree that prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement will be in effect.

C.  <u>Collective Bargaining Agreements</u>.  Purchaser will assume all UAW-Delphi Collective Bargaining Agreements, including all agreements amendatory and supplemental thereto in accordance with <u>Section 4.2.C</u> of this Agreement.

D.  <u>Licensed Intellectual Property</u>.  Seller licenses to GM all of the Licensed Intellectual Property and to the extent required, such license is finally approved by the Bankruptcy Court.

E.  <u>GM Agreement</u>.  By the close of business on September 26, 2007, Purchaser enters into a supply agreement with GM on terms and conditions fully satisfactory to Purchaser.

F.  <u>Benefit Guarantee Issue</u>. The Term Sheet—Delphi Pension Freeze and Cessation of OPEB and GM Consensual Triggering of Benefit Guarantee (the "Term Sheet") shall take effect in accordance with paragraph (2) thereof.  However, if the Term Sheet will not be in effect on the date identified by the parties as the date of Closing, the parties, in conjunction with the UAW and GM, as applicable, shall use reasonable efforts to reach a satisfactory resolution of the benefit issues relative to the Term Sheet.  Such condition to Closing shall be deemed satisfied once the parties reach a satisfactory resolution of these issues.

G.  <u>Labor Documents</u>.  Purchaser shall have completed its review of the collectively bargained "Unpublished Letters & Documents – 2003 National Agreement," "Unpublished Letters & Documents - 1999 National Agreement," and "Unpublished Letters and Documents - 1996 National Agreement," listed on pages 8 through 12 of Attachment E of the Restructuring Agreement no later than September 24, 2007. If Purchaser is willing to assume the obligations imposed by such documents, it will so advise Seller in writing no later than 5:00 p.m. on September 24, 2007, whereupon this condition to closing will be satisfied in full. If Purchaser is unwilling to assume the obligations imposed by such documents and therefore there will not be a court hearing on the sale of the transaction and the Agreement will be terminated, Purchaser will so advise Seller in writing no later than 5:00 p.m. on September 24, 2007.

9.2  **Conditions to Obligations of Purchaser**.

The obligation of Purchaser to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Purchaser):

A.  <u>Accuracy of Warranties</u>.  Except as otherwise permitted by this Agreement, and after giving effect to the Sale Approval Order, the representations and warranties of Seller contained in this Agreement will be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a Material Adverse Effect on Seller's ability to consummate the transactions contemplated by this Agreement.

B. <u>Performance of Covenants</u>. Each of the Ancillary Agreements to which Seller is a party will have been executed and delivered by Seller to Purchaser, and all other agreements and transactions contemplated hereby or in this Agreement or any Ancillary Agreement to be performed by Seller on or before the Closing will have been performed in all material respects.

9.3    **Conditions to Obligations of Seller**.

Except as otherwise permitted by this Agreement, the obligation of Seller to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Seller):

A. <u>Accuracy of Warranties</u>. The representations and warranties of Purchaser contained in this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein), will be true and correct as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a Material Adverse Effect on Purchaser's ability to consummate the transactions contemplated by this Agreement.

B. <u>Performance of Covenants</u>. Each of the Ancillary Agreements to which Purchaser is a party will have been executed and delivered by such Party to Seller, and all other agreements and transactions contemplated hereby or in any Ancillary Agreement to be performed by Purchaser on or before the Closing will have been performed in all material respects.

C. <u>GM Agreement</u>. GM enters into an agreement reasonably acceptable to Seller releasing Seller of its obligations to manufacture and deliver Products to GM upon Purchaser assuming responsibility to manufacture and deliver such Products to GM.

D. <u>Payment of Purchase Price</u>. Purchaser shall have paid the Purchase Price called for by <u>Section 3.2.B.</u>

10.    **CLOSING.**

10.1    **Closing Date**.

Subject to the satisfaction of the conditions set forth in this Agreement, the closing (the "<u>Closing</u>") of the transactions contemplated hereby will take place at the offices of Purchaser's counsel on January 2, 2007 or the first day thereafter that the conditions set forth in Article 9 have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree.

10.2    **Ancillary Agreements.**

At the Closing, the Parties will execute and deliver or, where appropriate, cause their respective Affiliates to execute and deliver each of the Ancillary Agreements.

10.3    **Seller's Deliveries**.

At the Closing, Seller will deliver to Purchaser the following, in proper form for recording where appropriate:

A.    Executed assignments for the Assigned Delphi Contracts.

B.    An officer's certificate, dated as of the Closing Date, executed on behalf of Seller, certifying that the conditions specified in <u>Section 9</u> have been fulfilled.

C.    A certificate, dated as of the Closing Date, executed on behalf of Seller by a Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Seller's Organizational Documents; and (ii) a true and correct copy of the resolutions of the appropriate Seller management group authorizing the execution, delivery and performance of this Agreement and any Ancillary Agreement to which Seller is a party and the consummation of the transactions contemplated hereby and thereby.

D.    Copies of all orders of the Bankruptcy Court pertaining to the contemplated transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

E.    Appropriate receipts.

F.    Duly executed Bill of Sale for all Acquired Assets to be transferred at Closing.

10.4    **Purchaser's Deliveries**.    At the Closing, Purchaser will deliver to Seller, in proper form for recording where appropriate:

A.    The Purchase Price to be paid at Closing as set forth in Section 3.2.B.

B.    An officer's certificate, dated as of the Closing Date, executed on behalf of Purchaser, certifying that the conditions specified in <u>Section 9</u> have been fulfilled.

C.    A certificate, dated as of the Closing Date, executed on behalf of the Purchaser by its Secretary or an Assistant Secretary, certifying: (i) a true and correct copy of Purchaser's Organizational Documents; and (ii) a true and correct copy of the resolutions of the Purchaser's board authorizing the execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby.

11.    <u>**CERTAIN ADDITIONAL COVENANTS.**</u>

11.1    **Continued Operations**.

Except: (i) as otherwise provided in this Agreement; (ii) required by or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court; (iii) for any changes that may be required under applicable Laws; or (iv) as set forth in the following sentence, until the Closing, Seller will continue to use and operate the Acquired Assets in the Ordinary Course of Business and supply Products to its customers and maintain and repair the Leased Premises and all tangible Acquired Assets as previously done in the Ordinary Course of Business.

11.2    **Additional Assets.**

35

Should Seller or Purchaser determine, in its reasonable discretion, that any machinery or equipment (i) used by Seller exclusively in the production of the Products or operation of the Leased Premises, and (ii) necessary to enable the Purchaser to manufacture the Products or operate the Leased Premises was not included in the Acquired Assets (the "Additional Assets"), Seller will transfer, sell and assign such Additional Assets to Purchaser, but only to the extent that (i) Seller still owns such Additional Assets (and has not entered into a binding agreement to sell), (ii) the gross book value on Seller's balance sheet (the "GBV") of each such Additional Asset is less than $250,000 (the "Individual Threshold Value"), and (iii) the total GBV of such Additional Assets and any other Additional Assets previously transferred under this Section 11.3 is less than $750,000 (the "Aggregate Threshold Value").  For any Additional Asset with a GBV that exceeds the Individual Threshold Value, such Additional Asset will be available for sale to Purchaser for a purchase price that is equal to 22% of the GBV of the applicable Additional Asset.  Once the Aggregate Threshold Value is reached, including by transfer of a particular Additional Asset that will exceed the Aggregate Threshold Value, any remaining Additional Assets will also be available for sale to Purchaser for a purchase price that is equal to 22% of the GBV of the applicable Additional Asset.  For the avoidance of doubt, any assets other than the Additional Assets, including without limitation, assets related to the GMX295 program or manufacture of calipers for the GMX211 program, which Purchaser desires to purchase from Seller will only be available for sale to Purchaser at Seller's sole discretion and on terms acceptable to Seller in its sole discretion.

11.3    **Registrations, Filings and Consents; Further Actions.**

Upon the terms and subject to the conditions of this Agreement, each of the Parties will use commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement and the Ancillary Agreements as promptly as practicable including, without limitation, using their reasonable best efforts to cause the satisfaction of all conditions to Closing.

11.4    **Further Assurances.**

If at any time after the Closing any further action is necessary or desirable to carry out the purposes of this Agreement, each of the Parties will take such further action (including the execution and delivery of such further instructions and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party (unless the requesting Party is entitled to indemnification therefor under this Agreement).

11.5    **Indemnification.**

A.    Seller's Agreement to Indemnify.  If the Closing occurs and Purchaser makes a written claim for indemnification against Seller in accordance with the procedures set forth in this Section 11.5, then, from and after the Closing, Seller agrees to indemnify and hold harmless Purchaser from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable professional fees and expenses) (collectively, the "Purchaser Damages") incurred by Purchaser as a result of or arising out of: (i) the Retained Liabilities and Excluded Assets; (ii) a breach of any representation or covenant of Seller contained in this Agreement; or (iii) a breach of any covenant to be performed by Seller under this Agreement.

36

B.    Purchaser's Agreement to Indemnify.    If the Closing occurs and Seller makes a written claim for indemnification against Purchaser in accordance with the procedures set forth in this Section 11.5, then, from and after the Closing, Purchaser shall indemnify and hold harmless Seller from and against all out-of-pocket liabilities, claims, assessments, losses, judgments, settlements, damages, costs and expenses (including, without limitation, reasonable professional fees and expenses) (collectively, the "Seller Damages") incurred by Seller as a result of or arising out of: (i) a breach of any representation or warranty of Purchaser contained in this Agreement; (ii) a breach of any covenant to be performed by Purchaser under this Agreement; (iii) the use, operation or ownership of any of the Acquired Assets after the Closing unless such matters are of a nature also subject to indemnification pursuant to Section A above; or (iv) any warranty, product liability (other than to the extent arising from Seller's or its Affiliates design of the Products) or other claims related to or arising from Purchaser's manufacture or sale of the Products after the Closing Date other than the Contract Manufacturing Parts, which will be governed by the terms of the Contract Manufacturing Agreement.

C.    Limitations on Agreements to Indemnify. The obligations of the Parties to indemnify the other pursuant to this Section 11.5 are subject to the following limitations:

(i)    Each Party agrees that, from and after the Closing, the indemnification provided in this Section 11.5 is the exclusive remedy for a breach by the other Party of any representation, warranty, agreement or covenant contained in this Agreement, and that there shall be no other remedy for any breach by a party in respect of any claim for monetary damages arising out of or under this Agreement.

(ii)    In calculating amounts payable to an indemnified party, the amount of any indemnified Purchaser Damages or Seller Damages, as the case may be, shall be determined without duplication of any other damages for which a claim has been made or could be made under any other representation, warranty or covenant included herein.

(iii)    Any written notice delivered by an indemnified party to an indemnifying party seeking indemnification pursuant to this Agreement shall set forth, with as much specificity as is reasonably practicable, the basis of the claim, the sections of this Agreement which form the basis for the claim, and, to the extent reasonably practicable, a reasonable estimate of the amount of the Purchaser Damages or Seller Damages, as the case may be, that have been or may be sustained by such indemnified party.

(iv)    Notwithstanding any other provision of this Agreement, in no event shall an indemnified party be entitled to indemnification pursuant to this Agreement to the extent any Purchaser Damages or Seller Damages, as the case may be, were attributable solely to the indemnified party's own gross negligence or willful misconduct.

(v)    No indemnifying party shall be liable to an indemnified party until the amount of all indemnifiable damages of such indemnified party in the aggregate exceeds $100,000, after which point the indemnifying party will be

obligated to the indemnified party for all damages (and not just the amount in excess of such amount).

(vi) The obligation of any Party to indemnify the other pursuant to the terms of this <u>Section 11.5</u> shall apply only to the extent the Party seeking indemnification notifies the other Party of such damages in writing on or before the later of (a) two years after the Closing Date, or (b) 90 days after the applicable Party first learns about the claim for which indemnification is sought under this <u>Section 11.5</u>.

(vii) To the extent an indemnifying party makes any indemnification payment pursuant this <u>Section 11.5</u> for which the indemnified party has a right to recover against a third party (including an insurance company but specifically excluding situations that are self insured, including through any captive insurance company), the indemnifying party shall be subrogated to the right of the indemnified party to seek and obtain recovery from such third party.

D. <u>Third Party Indemnification</u>. The obligations of any indemnifying party to indemnify any indemnified party under <u>Section 11.5</u> with respect to Purchaser Damages or Seller Damages, as the case may be, resulting from the assertion of liability by third parties (including Governmental Entities) (an "<u>Indemnification Claim</u>"), shall be subject to the following terms and conditions:

(i) Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of <u>Section 14.1</u>), and to the extent such matter involves a third party claim, the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party. Failure to give prompt written notice of an Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this <u>Section 11.5</u>, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice. The indemnified party, at the indemnifying party's expense, shall, and shall cause its employees and representatives to, reasonably cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning such Indemnification Claim. If the indemnifying party, within thirty (30) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party.

(ii) Anything in this <u>Section 11.5</u> to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne exclusively by the indemnifying party, without the prior

written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

(iii)    Nothing in this Agreement, the Sale Approval Order or any Ancillary Agreements including, without limitation, any right to indemnification in favor of Purchaser, shall alter or otherwise vitiate the legal effect of the bar date order and discharge injunction under a confirmation on any third party claim against Seller that would otherwise be barred or discharged thereunder. Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreement, upon receipt of any such third party claim, Seller, in its sole discretion, may elect to defend against such claim and settle or otherwise resolve such claim without Purchaser's consent.

E.    Not Exclusive Indemnifications.  The indemnifications in this Section 11.5 are the exclusive indemnifications to be given by the Parties, except for the indemnifications provided for in the Ancillary Agreements, which shall govern and control any indemnifications given under each applicable Ancillary Agreement.

11.6    **Intellectual Property Covenant.**    Sellers covenant not to sue Purchaser on account of Purchaser's use of any Licensed Intellectual Property that is licensed by Sellers to GM and in turn sublicensed to Purchaser, and Sellers agree that they will not seek additional compensation for Purchaser's use of any Licensed Intellectual Property, provided that such use is within the scope of the sublicense granted to Purchaser by GM.

11.7    **Canadian Agreement.**    Purchaser acknowledges that the Canadian Assets will be included in the Transaction (as defined in Section 12.2) subject to competitive bidding as set forth in Article 12 of this Agreement.  In the event that Purchaser is not the Successful Bidder and Sellers notify Purchaser of their intent to terminate this Agreement under Section 13.2.B, then Purchaser agrees that it will terminate the Canadian Agreement under Section 8.4 thereof within three (3) Business Days of such notice.  Furthermore, once the conditions set forth in Article 9 of this Agreement have been satisfied or waived, Purchaser agrees that it will not exercise its right to terminate the Canadian Agreement under Section 8.4 thereof.

11.8    **Parent Guaranty.**    Simultaneous with execution of this Agreement, Purchaser's indirect parent, Kelsey-Hayes Company, is executing a guaranty in the form attached as Exhibit 11.8.

## 12.    **BANKRUPTCY ACTIONS**

12.1    **Orders**.

As soon as reasonably practicable after the execution of this Agreement, Delphi will file a motion with the Bankruptcy Court seeking approval of the Bidding Procedures Order (and related notices) and the Sale Approval Order.  Delphi shall use commercially reasonable efforts to comply (or, to the extent not already obtained, obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Bankruptcy Rules in connection with obtaining approval of the sale of the Acquired Assets under this Agreement, and the other transactions contemplated by the other Ancillary Agreements, including serving on all required persons in the Bankruptcy Cases, notice of the Sale Motion, the Sale Hearing and the objection deadline in accordance with Bankruptcy Rules 2002, 6004, 6006 and 9014, the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

12.2   **Bidding Procedures**.

A.   Delphi Initial Bankruptcy Actions.   This Section 12.2 sets forth the bidding procedures (the "Bidding Procedures") to be employed with respect to the Agreement and the Sale of the Acquired Assets, including the Canadian Assets, and the other transactions contemplated by this Agreement and the Ancillary Agreements, including the Canadian Agreement (collectively, the "Transaction").   The Transaction is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order.   The following overbid provisions and related bid protections are designed to compensate Purchaser for its efforts and agreements to date and to facilitate a full and fair process (the "Bidding Process") designed to maximize the value of the Acquired Assets and the Canadian Assets for the benefit of Delphi's creditors, shareholders and bankruptcy estate.

B.   Qualified Bidder.   Unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi, in order to participate in the bidding process, each person (a "Potential Bidder"), other than Purchaser, must deliver (unless previously delivered) to Delphi:

(i)   an executed confidentiality agreement in form and substance satisfactory to Delphi;

(ii)   current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Canadian Assets, current audited financial statements of the equity holders of the Potential Bidder who shall guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Delphi and its financial advisors;

(iii)   a preliminary (non-binding) written proposal regarding:   (a) the purchase price range; (b) any assets expected to be excluded; (c) the financing of the Transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (d) any anticipated regulatory approvals required to close the Transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (d) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (f) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed; and

(iv)   the Good Faith Deposit.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Transaction, if selected as a successful bidder, and that Delphi determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Transaction within the time frame provided by this Agreement shall be deemed a "Qualified Bidder."   As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Delphi shall determine, and shall notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder.   At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi shall allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets provided in Section 12.2.D below.   Notwithstanding the foregoing, Purchaser shall be deemed a Qualified Bidder for purposes of the Bidding Process.

C.    <u>Bid Deadline</u>.  A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to:

| | |
|---|---|
| Delphi Automotive Systems LLC: | Delphi Automotive Systems LLC<br>5725 Delphi Drive<br>Troy, MI  48098<br>Attn:    Director, Mergers & Acquisitions |
| With copies to, Delphi's outside counsel: | Skadden, Arps, Slate Meagher & Flom LLP<br>333 West Wacker Drive<br>Chicago, IL  60606-1285<br>Attn:    Ron Meisler |
| Delphi's Legal Staff: | Delphi Legal Staff<br>MC 480-410-268<br>5825 Delphi Drive<br>Troy, MI  48098<br>Attn:    Karen J. Craft |
| Counsel to the Official Committee of unsecured creditors appointed in the Bankruptcy Cases (the "Creditors' Committee"): | Latham & Watkins LLP<br>885 Third Avenue<br>New York, NY  10022<br>Attn:    Mark A. Broude |
| The Creditors' Committee's financial advisor: | Mesirow Financial Consulting LLC<br>21st Floor<br>666 Third Avenue<br>New York, NY  10017<br>Attn:    Ben Pickering |
| Counsel to the debtors' secured lenders: | Davis, Polk & Wardwell<br>450 Lexington Avenue<br>New York, NY  10017<br>Attn:    Donald Bernstein and Brian Resnick |

so as to be received not later than 11:00 A.M. (EST), on October 16, 2007 (the "<u>Bid Deadline</u>").  Delphi may extend the Bid Deadline once or successively, but is not obligated to do so.  If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, Delphi shall deliver complete copies of all items and information enumerated in the section below entitled "<u>Bid Requirements</u>" to counsel for the official committee of equity security holders (the "<u>Equityholders' Committee</u>").

D.    <u>Due Diligence</u>.  Delphi shall afford each Qualified Bidder due diligence access to the Acquired Assets and the Canadian Assets.  Due diligence access may include access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Delphi, in its sole discretion, may agree to.  Delphi shall designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any and all due diligence shall cease after the Bid Deadline.

Delphi may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at site inspections. Delphi (or any of its representatives) shall not be obligated to furnish any information relating to Acquired Assets and the Canadian Assets to any person other than to Qualified Bidders who make an acceptable preliminary proposal.

      E.  <u>Bid Requirements</u>. All bids must include the following documents (the "<u>Required Bid Documents</u>"):

      (i)  A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the closing of the Transaction.

      (ii)  An executed copy of the Agreement and the Ancillary Agreements (the "<u>Marked Agreements</u>") to show those amendments and modifications to such agreements that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

      (iii)  A good faith deposit (the "<u>Good Faith Deposit</u>") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as Delphi may determine) in an amount equal to $2 million dollars.

      (iv)  Written evidence of a commitment for financing or other evidence of ability to consummate the Transaction satisfactory to Delphi and its advisors.

      F.  <u>Qualified Bids</u>. A bid will be considered only if the bid:

      (i)  Is on terms and conditions (other than the amount of the consideration) that are substantially similar to, and are not, in Delphi's sole discretion, materially more burdensome or conditional to Delphi than, those contained in the Agreement.

      (ii)  Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

      (iii)  Proposes a transaction on terms that Delphi determines, in its sole discretion, has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the purchase price for the Canadian Assets plus the amount of the Break-Up Fee, plus: (x) in the case of the initial Qualified Bid, $500,000 dollars; and (y) $250,000 in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

      (iv)  Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

      (v)  Includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets and the Canadian Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets and the Canadian Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations,

promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets and the Canadian Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreements.

(vi)     Includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required governmental approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase and license, subject to the receipt of any governmental approvals which must be obtained within 10 days after entry of such order.

(vii)    Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "<u>Qualified Bid</u>" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that Delphi shall have the right, in its sole discretion, to entertain bids for the Acquired Assets and the Canadian Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, Purchaser shall be deemed a Qualified Bidder, and the Agreement shall be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Transaction.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such Transaction.  Each Qualified Bid other than that of Purchaser is referred to as a "<u>Subsequent Bid</u>".  If Delphi does not receive any Qualified Bids other than the Agreement received from Purchaser, Delphi will report the same to the Bankruptcy Court and will proceed with the Transaction pursuant to the terms of the Agreement.

G.    <u>Bid Protection</u>.  Recognizing Purchaser's expenditure of time, energy and resources, Delphi has agreed to provide certain bidding protections to Purchaser.  Specifically, Delphi has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor that all other Potential Bids must exceed.  As a result, Delphi has agreed that if Purchaser is not the Successful Bidder, Delphi shall, in certain circumstances, pay to Purchaser the Break-Up Fee.  The payment of the Break-Up Fee shall be governed by the provisions of the Agreement and the Order of the Bankruptcy Court approving the Bidding Procedures.

H.    <u>Auction, Bidding Increments and Bids Remaining Open</u>.  If Delphi receives at least one (1) Qualified Bid in addition to the Agreement, Delphi will conduct an auction (the "<u>Auction</u>") of the Acquired Assets upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. EST on or before October 23, 2007, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606-1285 or Four Times Square, New York, New York 10036 (at Delphi's election) or such later time or other place as Delphi shall notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

(i)     Only Delphi, Purchaser, any representative of the Creditors' Committee and the Equityholders' Committee, the agent under Delphi's post-petition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid

shall be entitled to attend the Auction, and only Purchaser and the other Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(ii)    At least two (2) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least one (1) Business Day prior to the Auction, Delphi shall provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction.

(iii)    All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(iv)    Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

(v)    Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $250,000 higher than the previous bid or bids. The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchaser), Delphi may give effect to any Break-Up Fee that may be payable to Purchaser under the Agreement as well as any assets to be retained by Delphi.

(vi)    At the conclusion of the Auction, or as soon thereafter as practicable, Delphi, in consultation with its financial advisors, shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Transaction; and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Canadian Assets received at the Auction (the "Successful Bid(s)" the bidder(s) making such bid, the "Successful Bidder(s)").

I.    Acceptance of Qualified Bids.  Delphi shall sell the Acquired Assets and the Canadian Assets for the highest or otherwise best Qualified Bid (or combination of Qualified Bids) upon the approval of such Qualified Bid(s) by the Bankruptcy Court after the hearing (the "Sale Hearing").  If, after an Auction in which Purchaser: (i) shall have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it shall, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the

Successful Bid; less (b) the Break-Up Fee. Delphi's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Delphi's acceptance of the bid. Delphi will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

J.    Sale Hearing.  The Sale Hearing will be held before the Honorable Judge Robert Drain on October 25, 2007 at 10:00 A.M. (prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.  If Delphi does not receive any Qualified Bids (other than the Qualified Bid of Purchaser), Delphi will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets and the Canadian Assets to Purchaser following entry of the Sale Approval Order.  If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi shall seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "Alternate Bid(s)" and such bidder(s), the "Alternate Bidder(s)").  Delphi's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) shall not constitute Delphi's acceptance of either or any such bid(s), which acceptance shall only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) shall be deemed to be the Successful Bid(s) and Delphi shall effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

K.    Return of Good Faith Deposit.  The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) shall be held in an interest-bearing escrow account and all Qualified Bids shall remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the closing of the Transaction (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, shall be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of Delphi.  On the Return Date, Delphi shall return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

L.    Reservation of Rights.  Delphi, after consultation with the agents for its secured lenders and the Creditors' Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than Purchaser's initial bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Transaction; or (c) contrary to the best interests of Delphi, its estate and creditors as determined by Delphi in its sole discretion.

12.3   **Break-up Fee**.

In the event Seller terminates this Agreement under <u>Section 13.2.B.</u> and sells, transfers or otherwise disposes of all or substantially all or a material portion of the Acquired Assets in a transaction or a series of related transactions with one or more parties other than Purchaser in accordance with the Bidding Procedures (such event being an "<u>Alternative Transaction</u>"), Seller shall, within five (5) Business Days after the consummation of the Alternative Transaction(s), pay to Purchaser an amount equal to $1,500,000 (the "<u>Break-Up Fee</u>").   Notwithstanding the foregoing, Purchaser shall not be entitled to a Break-Up Fee if Purchaser is in material breach of this Agreement or the Bidding Procedures.

## 13.    <u>TERMINATION.</u>

13.1    If, after the date of this Agreement and prior to the passage of title and risk of loss, (x) any Manufacturing Equipment or Test and Development Equipment, is lost, severely damaged or destroyed by any cause whatsoever (excluding ordinary wear and tear and damage caused by the acts or omissions of Purchaser or its agents or employees), and (y) such loss, damage or destruction does not constitute a Material Adverse Effect, this Agreement shall terminate with respect to the affected Acquired Asset, and an adjustment in the amount of 22% of the GBV of the affected Acquired Asset will be made to the Purchase Price by the Parties. Likewise, if after the date of this Agreement and prior to the passage of title and risk of loss, (a) any Manufacturing Equipment or Test or Development Equipment, is lost, severely damaged or destroyed by any cause whatsoever (excluding ordinary wear and tear and damage caused by the acts or omissions of Seller or its agents or employees), and (b) Seller, at its option, repairs or replaces such Acquired Asset with an asset that, when compared to the original Acquired Asset results in an improvement that can be capitalized under U.S. GAAP, then an adjustment in an amount equal to the net book value of the improvement will be made to the Purchase Price by the Parties; <u>provided</u>, <u>however</u>, (i) there will be no adjustment to the Purchase Price under subparts (a) and (b) of this paragraph to the extent the casualty to the asset is fully covered by insurance (i.e., no out-of-pocket costs incurred by Seller), and (ii) Purchaser shall have the right to terminate this Agreement under Section 13.2.E if the Purchase Price adjustment under subparts (a) and (b) of this paragraph is more than $1,000,000.

13.2    This Agreement may be terminated at any time prior to the Closing by either Party:

A.    by mutual written consent; or

B.    if Delphi consummates an Alternative Transaction according to the terms of this Agreement;

C.    provided that the terminating Party is not in breach of its obligations under this Agreement, if the Bankruptcy Court has not entered a Sale Approval Order, on or before December 15, 2007 and such Sale Approval Order, as of December 15, 2007, is not subject to a stay or injunction;

D.    provided that the terminating Party is not in breach of its obligations under this Agreement, if the Closing shall not have occurred for any reason prior to January 10, 2008; and

E.    if a Material Adverse Effect occurs, but only by a Party that is not in breach of this Agreement.

13.3    This Agreement may be terminated at any time prior to the Closing by Seller if Purchaser materially fails to perform any of its covenants or obligations under this Agreement or materially breaches any representation or warranty under this Agreement.

13.4    In the event of termination of this Agreement as provided in <u>Section 13.2.B.</u> hereof, this Agreement shall forthwith become void and there shall be no liability or obligation on the part of the Parties, except (i) as set forth in <u>Section 12.3</u>, as well as <u>Article14</u> to the extent applicable to such surviving sections each of which, to the extent applicable, shall survive termination of this Agreement, and (ii) that nothing herein shall relieve any Party from liability for any willful or intentional breach of any provision hereof prior to termination.  No termination of this Agreement shall affect the obligations of the parties contained in the Nondisclosure Agreement, all of which obligations shall survive termination of this Agreement in accordance with their terms.

## 14.    **MISCELLANEOUS.**

14.1    **Notices**.

All notices, requests, consents or other communications permitted or required under this Agreement will be in writing and will be deemed to have been given when personally delivered, or when sent if sent via facsimile (with receipt confirmed), or on the first business day after sent by reputable overnight carrier, or on the third business day after sent by registered or certified first class mail (with receipt confirmed), to the following:

| | |
|---|---|
| If to Seller: | **DELPHI AUTOMOTIVE SYSTEMS LLC**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:    AHG - Manager, Mergers & Acquisitions -<br>           Saginaw Brake Transaction<br>Fax No.:  248-813-2410 |
| With a copy to: | **DELPHI AUTOMOTIVE SYSTEMS LLC**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn:    Deputy General Counsel - Transactional<br>           and Restructuring<br>Fax No.:  248-813-2491 |
| If to Purchaser: | **TRW INTEGRATED CHASSIS SYSTEMS LLC**<br>12025 Tech Center Drive<br>Livonia, Michigan 48150<br>Attn:    Assistant General Counsel<br>Fax No.:  734-855-3250 |
| With a copy to: | **KELSEY-HAYES COMPANY**<br>Vice President<br>North American Braking<br>12025 Tech Center Drive<br>Livonia, MI 48150<br>Fax No.:  734-855-3006 |

With a copy to:        Honigman Miller Schwartz and Cohn LLP
                       660 Woodward Avenue
                       2290 First National Building
                       Detroit, Michigan  48226-3506
                       Attn:      Donald F. Baty, Jr.
                       Fax No.:  317-465-7315

provided, however, if a Party will have designated a different addressee by notice, then to the last addressee so designated.

14.2    **Bulk Sales Laws**.

Seller and Purchaser hereby waive compliance by Seller with the provisions of the bulk sales law of any state or foreign jurisdiction.

14.3    **Assignment.**

This Agreement will be binding and inure to the benefit of the successors and assigns of each of the Parties and their Affiliates, but no rights, obligations, duties or liabilities of any Party may be assigned without the prior written consent of the others, which will not be unreasonably withheld; provided, however, Purchaser may assign this Agreement to any wholly owned subsidiary, but such assignment will not relieve Purchaser of any of its obligations under this Agreement or the Ancillary Agreements.

14.4    **Entire Agreement.**

This Agreement, together with the Ancillary Agreements, Bidding Procedures Order and Sale Approval Order represents the entire agreement and understanding between the Parties with respect to the transactions contemplated herein. This Agreement supersedes all prior agreements, understandings, arrangements, covenants, representations or warranties, written or oral, by any officer, employee or representative of either Party dealing with the subject matter hereof.

14.5    **Waiver.**

Any waiver by Seller or Purchaser of any breach or of a failure to comply with any provision of this Agreement: (i) will be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) will not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement. At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties hereto; (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein. Except as otherwise expressly provided herein, any agreement on the part of a Party to any such extension or waiver will be valid only if set forth in an instrument in writing signed on behalf of such Party.

14.6    **Severability.**

Should any provision, or any portion thereof, of this Agreement for any reason be held invalid or unenforceable, such decision will not affect the validity or enforceability of any of the other provisions, or portions thereof, of this Agreement, which other provisions, and portions, will remain in full force and effect, and the application of such invalid or unenforceable provision,

or portion thereof, to persons or circumstances other than those as to which it is held invalid or unenforceable will be valid and be enforced to the fullest extent permitted by Law.

### 14.7 **Amendment.**

This Agreement may only be amended only in writing by duly authorized representatives or officers of the Parties

### 14.8 **Expenses.**

Except for the Break-Up Fee or as provided in any Ancillary Agreement, each Party will be responsible for its own expenses incurred in connection with the preparation of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby.

### 14.9 **Third Parties.**

Nothing contained in this Agreement, express or implied, is intended to or will be construed to confer upon or give to any person, firm, corporation, association, labor union or trust (other than the Parties, their Affiliates and their respective permitted successors and assigns), any claims, rights or remedies under or by reason of this Agreement.

### 14.10 **Headings.**

The headings contained in this Agreement are inserted for convenience only and will not be deemed to constitute a part of this Agreement.

### 14.11 **Counterparts.**

More than one counterpart of this Agreement may be executed by the Parties, and each fully executed counterpart will be deemed an original.

### 14.12 **Governing Law.**

This Agreement will be construed and enforced in accordance with the laws of the State of Michigan and, to the extent applicable, the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

### 14.13 **Public Announcements**.

Seller may inform its employees, customers, suppliers and/or any of the constituents in the Bankruptcy Cases (including, without limitation, the UAW, the unsecured creditors committee, the equity committee, ad hoc committees and the plan investors and other stakeholders and General Motors) of the substance of this Agreement. Seller and Purchaser will consult with each other before issuing any press releases with respect to this Agreement or the transactions contemplated hereby, and will not issue any press release without mutual consent, except as may be required by Law and then only with such prior consultation.  Notwithstanding the foregoing, Seller or Purchaser may make any public filing contemplated in this Agreement without the need for prior consultation; provided, however, to the extent practicable, Seller or Purchaser will provide a copy of such public filing to the other Party prior to its filing.

### 14.14 **Taxes**.

All Taxes (other than income taxes or taxes payable in respect of gains on the sale of assets) or similar charges and all charges for filing and recording documents in connection with the transfer of the Acquired Assets (including recording fees) will be paid by Purchaser.

14.15 **Venue and Retention of Jurisdiction.**

The Purchaser and Seller irrevocably and unconditionally consent to submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated hereby, including the Ancillary Agreements (and agree not to commence any litigation relating thereto except in the Bankruptcy Court.

14.16 **Risk of Loss.**

Unless otherwise provided in this Agreement (including in Sections 1.3 and 1.4 above), all risk of loss, damage or destruction to all or any part of the Acquired Assets will be borne exclusively by the Seller through the Closing.

14.17 **Enforcement of Agreement.**

The Parties hereto agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties will be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

14.18 **Dispute Resolution**.

Seller and Purchaser will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement or any Ancillary Agreement by good faith negotiations by senior management of each party. If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for such negotiation by either party to the other, either party may make a written demand (the "Demanding Party") for formal dispute resolution (the "Notice") and specify therein in reasonable detail the nature of the dispute. Within fifteen (15) business days after receipt of the Notice, the receiving party (the "Defending Party") will submit to the other a written response. The Notice and the response will include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties. Within fifteen (15) business days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored promptly. All negotiations pursuant to this Section 14.17 are confidential and will be treated as compromise and settlement negotiations for purposes of applicable rules of evidence. In any case, the Parties agree not to commence any litigation actions until the expiration of ninety (90) days after the date of the Notice, and all such actions are subject to Section 14.15 above.

14.19 **Dollar Amounts.**

All amounts referenced in this Agreement are in US dollars.

14.20 **Survival.**

Except as otherwise explicitly set forth herein, no terms in this Agreement survive termination or Closing, as the case may be.

14.21  **Bankruptcy Court Approval.**

Notwithstanding anything to the contrary herein, Sellers' obligations under <u>Section 12.3</u> are expressly subject to the entry of the Bidding Procedures Order.  All other obligations of Sellers hereunder are subject to the entry of the Sale Approval Order.

14.22  **Jury Trial Waiver.**

**THE PARTIES HERETO ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THIS RIGHT MAY BE WAIVED.  THE PARTIES EACH HEREBY KNOWINGLY, VOLUNTARILY AND WITHOUT COERCION, WAIVE ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES ARISING OUT OF OR IN RELATION TO THIS AGREEMENT OR ANY OF THE ANCILLARY AGREEMENTS. NO PARTY SHALL BE DEEMED TO HAVE RELINQUISHED THE BENEFIT OF THIS WAIVER OF JURY TRIAL UNLESS SUCH RELINQUISHMENT IS IN A WRITTEN INSTRUMENT SIGNED BY THE PARTY TO WHICH SUCH RELINQUISHMENT WILL BE CHARGED.**

**IN WITNESS WHEREOF**, the Parties have caused this Asset Purchase Agreement to be executed by their duly authorized officers.

**TRW INTEGRATED CHASSIS SYSTEMS LLC**
By:_____

Print Name:_____

Its:_____


**DELPHI AUTOMOTIVE SYSTEMS LLC**

By:_____

Print Name:_____

Its:_____


**DELPHI TECHNOLOGIES, INC.**

By:_____

Print Name:_____

Its:_____

## LIST OF SCHEDULES AND EXHIBITS

| **Designation** | **Description** |
|---|---|
| Schedule C-1 | TRW Contract Manufacturing Equipment |
| Schedule C-2 | Delphi Contract Manufacturing Equipment |
| Schedule M | Manufacturing Equipment |
| Schedule O | Certain Other Personal Property |
| Schedule P-1 | Production Products |
| Schedule P-2 | Past Model Service Parts |
| Schedule S | Software and software licenses to be transferred |
| Schedule T | Test and Development Equipment |
| Schedule 1.3.A | Schedule for removal of Non-Saginaw Assets |
| Schedule 1.5.A | Third Party Assets (assets not owned by Delphi but used in the manufacturing Products or operating the Leased Premises) |
| Schedule 1.5.B | Certain Excluded Assets |
| Schedule 3.2 | Inventory Value |
| Schedule 3.4 | Purchase Price allocation |
| Schedule 4.1 | Certain salaried employees (to be completed by parties within 30 days) |
| Schedule 4.2 | Hourly Employees |
| Schedule 5.1 | GM Directed Buy Parts (parts to be supplied by Delphi to Purchaser) |
| Schedule 5.2 | Non GM Directed Buy Parts |
| Schedule 5.4 | Contract Manufacturing Parts |
| Schedule 5.5 | Saginaw Supplied Parts (parts to be supplied by Purchaser to Delphi) |
| Schedule 8.1 | Knowledge of Seller |
| Schedule 8.1.D | Litigation |
| Schedule 8.1.L | Infringement |
| Schedule 8.2 | Knowledge of Purchaser |
| Exhibit 1 | Deposit Escrow Agreement |
| Exhibit 5.4 | Contract Manufacturing Agreement |
| Exhibit 6.1 | Lease Agreement |
| Exhibit 6.3 | Contract Manufacturing Removal Plan |
| Exhibit 7.1 | Transition Services Agreement |
| Exhibit 11.8 | Parent Guaranty |

DETROIT.2786665.7

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
      In re                           :        Chapter 11
                                          :
DELPHI CORPORATION, <u>et al.</u>,               :        Case No. 05-44481 (RDD)
                                          :
               Debtors.         :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002, 6004, AND 9014
AUTHORIZING AND APPROVING SALE BY DELPHI AUTOMOTIVE SYSTEMS LLC
AND DELPHI TECHNOLOGIES, INC. OF CERTAIN EQUIPMENT AND OTHER
ASSETS PRIMARILY USED IN DEBTORS' SAGINAW CHASSIS
<u>BUSINESS FREE AND CLEAR OF LIENS</u>

("SAGINAW CHASSIS ASSET SALE APPROVAL ORDER")

          Upon the expedited motion, dated September 17, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11

U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, and 9014 (i) approving bidding procedures, (ii)

granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv)

setting a sale hearing date (the "Sale Hearing") in connection with the sale (the "Sale") of certain

assets of Delphi Automotive Systems LLC ("DAS LLC") and Delphi Technologies, Inc.

(together with DAS LLC, the "Selling Debtor Entities")[1] primarily used and located at DAS

LLC's chassis facility in Saginaw, Michigan (the "Saginaw Chassis Business"), and in other

locations in North America, including the manufacturing equipment, test and development

---

[1]    The Selling Debtor Entities and Delphi Canada, Inc., a non-Debtor affiliate, shall be collectively referred to as
the "Sellers."

equipment, inventory, assigned permits, and other personal property (the "Acquired Assets")

pursuant to the Asset Purchase Agreement, dated September 17, 2007 (the "Agreement," a copy

of which is attached hereto as Exhibit A), by and between the Selling Debtor Entities and TRW

Integrated Chassis Systems LLC (the "Purchaser")[2] or to the party submitting the highest or

otherwise best bid (the "Successful Bidder"); and the Court having entered an order on October

___, 2007 (the "Bidding Procedures Order") (Docket No.____) (a) approving bidding procedures,

(b) granting certain bid protections, (c) approving the form and manner of sale notices, and (d)

setting the Sale Hearing; and the Sale Hearing having been held on November 29, 2007, at which

time all interested parties were offered an opportunity to be heard with respect to the Motion; and

the Court having reviewed and considered the Motion and the arguments of counsel made, and

the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested

in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other

parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

> IT IS HEREBY FOUND AND DETERMINED THAT:[3]

> A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

B.     The statutory predicates for the relief sought in the Motion are section 363 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, and 9014.

C.     As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the Sale has been provided in accordance with 11 U.S.C. §§ 102(l) and 363 and Fed. R. Bankr. P. 2002, 6004, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Sale is necessary.

D.     As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Sellers have marketed the Acquired Assets and certain assets located at a facility in Oshawa, Ontario, Canada (the "Canadian Assets") and conducted the sale process in compliance with the Bidding Procedures Order.

E.     The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other applicable documents contemplated thereby, and the transfer and conveyance of the Acquired Assets by the Selling Debtor Entities have been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Selling Debtor Entities to consummate such transactions.

3

F.    The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purpose and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Acquired Assets and determined that (a) the terms and

conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Acquired Assets

pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair

and reasonable and together constitute the highest or otherwise best value obtainable for the

Acquired Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to, and outside of, a plan of reorganization exist because, among other things, absent

the Sale the value of the Acquired Assets will be substantially diminished.

G.    A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchaser, (iii) counsel for the official committee of unsecured

creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity

security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an

interest in a transaction with respect to the Acquired Assets and the Canadian Assets during the

past six months, (vi) all entities known to have asserted any Liens (as defined below) in or upon

the Acquired Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording

offices which have a reasonably known interest in the relief requested by the Motion, (viii) the

United States Attorney's office, (ix) the United States Department of Justice, (x) the Securities

and Exchange Commission, (xi) the Internal Revenue Service, (xii) all entities on the Master

Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And

4

Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And

Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the

"Supplemental Case Management Order")), and (xiii) such other entities as are required to be

served with notices under the Supplemental Case Management Order.

   H. The Purchaser is not an "insider" of any of the Debtors as that term is

defined in 11 U.S.C. § 101(31).

   I. The Agreement was negotiated, proposed, and entered into by the Sellers

and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

Neither the Sellers nor the Purchaser has engaged in any conduct that would cause or permit the

Sale to be avoidable under 11 U.S.C. § 363(n).

   J. The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as

such, is entitled to all of the protections afforded thereby.  The Purchaser will be acting in good

faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Agreement at all times after the entry of this Sale Approval Order.

   K. The consideration provided by the Purchaser for the Acquired Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Acquired Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

stakeholders than would be provided by any other practical available alternative, and (iv)

constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States, any state, territory, or possession thereof, or the District of

Columbia.

L.      The transfer of the Acquired Assets to the Purchaser is a legal, valid, and

effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title, and

interest of the Selling Debtor Entities to the Acquired Assets free and clear of any and all liens of

any type whatsoever (including tax liens and any statutory or common law liens, possessory or

otherwise), charges, pledges, security interests, conditional sale agreements or other title

retention agreements, leases, mortgages, security interests, options, or other encumbrances

(including the filing of, or agreement to give, any financing statements under the Uniform

Commercial Code of any jurisdiction) and any monetary amounts which are secured by any lien,

including, but not limited to those (i) that purport to give to any party a right or option to effect

any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities or

the Purchaser's interest in the Acquired Assets, or any similar rights, and (ii) relating to taxes

arising under or out of, in connection with, or in any way relating to the operation of the Saginaw

Chassis Business prior to the transfer of the Acquired Assets to the Purchaser (collectively, the

"Liens").

M.      If the Sale of the Acquired Assets by the Selling Debtor Entities were not

free and clear of any Liens as set forth in the Agreement and this Sale Approval Order, or if the

Purchaser would, or in the future could, be liable for any of the Liens as set forth in the

Agreement and this Sale Approval Order, the Purchaser would not have entered into the

Agreement and would not consummate the Sale or the transactions contemplated by the

Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their

stakeholders.

N.      The Selling Debtor Entities may sell their interests in the Acquired Assets

free and clear of all Liens because, in each case, one or more of the standards set forth in 11

6

U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object, or withdrew

their objections to the Sale, are deemed to have consented to the Sale pursuant to 11 U.S.C.

§ 363(f)(2).  Those holders of Liens who did object fall within one or more of the other

subsections of 11 U.S.C. § 363(f), and all holders of Liens are adequately protected by having

their Liens, if any, attach to the cash proceeds of the Sale ultimately attributable to the property

against or in which they claim an interest with the same priority, validity, force, and effect as

they attached to such property immediately before the closing of the Sale.

O.      The transfer of the Acquired Assets to the Purchaser will not subject the

Purchaser to any liability whatsoever with respect to the operation of the Saginaw Chassis

Business prior to the Closing of the Sale or by reason of such transfer under the laws of the

United States, any state, territory, or possession thereof, or the District of Columbia based, in

whole or in part, directly or indirectly, on any theory of law or equity, including, without

limitation, any theory of equitable law, including, without limitation, any theory of antitrust or

successor or transferee liability.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

## General Provisions

1.      The Motion is GRANTED.

## Approval Of The Agreement

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

7

3.       Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized, but not directed, to perform their obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.       Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.       The Selling Debtor Entities are authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.       This Sale Approval Order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Selling Debtor Entities, the Purchaser, all successors and assigns of the Purchaser and the Selling Debtor Entities, all affiliates and subsidiaries of the Purchaser and the Selling Debtor Entities, and any subsequent trustees appointed in the Selling Debtor Entities' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

8

7.      The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment, or supplement is not material.

<u>Sale And Transfer Of The Acquired Assets</u>

8.      Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Selling Debtor Entities' right, title, and interest in the Acquired Assets shall be transferred to the Purchaser free and clear of all Liens, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Acquired Assets immediately before such transfer, subject to any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.      The transfer of the Acquired Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title, and interest of the Selling Debtor Entities in and to the Acquired Assets free and clear of all Liens of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages, mechanic's liens, <u>lis pendens</u>, or other documents or agreements evidencing Liens against or in the Acquired Assets shall not have delivered to the Selling Debtor Entities prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Acquired Assets, or otherwise, then (a) the Selling Debtor Entities are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the

9

person or entity with respect to the Acquired Assets and (b) the Purchaser is hereby authorized to

file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed,

registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens

in the Acquired Assets of any kind or nature whatsoever.

11.    This Sale Approval Order (a) shall be effective as a determination that,

upon the Closing of the Sale, all Liens of any kind or nature whatsoever existing as to the Selling

Debtor Entities or the Acquired Assets being sold by the Selling Debtor Entities prior to the

Closing of the Sale have been unconditionally released, discharged, and terminated (other than

any surviving obligations), and that the conveyances described herein have been effected and (b)

shall be binding upon and shall govern the acts of all entities including, without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register, or otherwise

record or release any documents or instruments, or who may be required to report or insure any

title or state of title in or to any of the Acquired Assets.

12.    All persons and entities, including, but not limited to, all debt security

holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade

stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or

in the Selling Debtor Entities or the Acquired Assets (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising

under or out of, in connection with, or in any way relating to, the Saginaw Chassis Business, the

Acquired Assets, the operation of the Saginaw Chassis Business prior to the Closing of the Sale,

10

or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and

permanently enjoined from asserting against the Purchaser, its successors or assigns, its property,

or the Acquired Assets, such persons' or entities' Liens.  Nothing in this Sale Approval Order or

the Agreement releases or nullifies any Liability to a governmental agency under any

environmental laws and regulations that any entity would be subject to as owner or operator of

any Acquired Assets after the date of entry of this Sale Approval Order.  Nothing in this Sale

Approval Order or the Agreement bars, estops, or enjoins any governmental agency from

asserting or enforcing, outside the Court, any Liability described in the preceding sentence.

Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to

obtain penalties from the Purchaser for days of violation of environmental laws and regulations

prior to Closing.

<u>Additional Provisions</u>

13.     The consideration provided by the Purchaser for the Acquired Assets

under the Agreement is hereby deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or

possession thereof, or the District of Columbia.

14.     Upon the Closing of the Sale, this Sale Approval Order shall be construed

as and shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring good and

marketable title in the Acquired Assets to the Purchaser pursuant to the terms of the Agreement.

11

15.     Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release its respective Liens against the Acquired Assets, if any, as such Leins may have been recorded or may otherwise exist.

16.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

17.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser upon the Closing of the Sale.

18.     All persons holding Liens against or in the Selling Debtor Entities or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Lien against the Purchaser, its property, its successors and assigns, or the Acquired Assets with respect to any Lien of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers, their directors, their shareholders, or the Acquired Assets.  Following the Closing of the Sale, no holder of a Lien in the Selling Debtor Entities shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Interest or any actions that the Debtors may take, or have taken, in their chapter 11 cases.

12

19.    The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Acquired Assets shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.  The Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

20.    The consideration provided by the Purchaser for the Acquired Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

21.    The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this Sale Approval Order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Approval Order.

22.    The terms and provisions of the Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their estates, and their stakeholders, the Purchaser, and its affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting a Lien in the Acquired Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the

13

Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

23.      Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates, such as funds that are trust funds under any applicable state lien laws.

24.      To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

25.      The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

26.      The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, _provided_ that any such modification, amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities' estates.

27.      Nothing in this Sale Approval Order shall alter or amend the Agreement and the obligations of the Sellers and the Purchaser thereunder.

14

28.     This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Sellers pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Sale Approval Order, and (e) protect the Purchaser against any Lien against the Selling Debtor Entities or the Acquired Assets, of any kind or nature whatsoever, which Liens, valid and timely perfected, shall attach to the proceeds of the Sale.

29.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:  New York, New York
        November __, 2007


        _____
        UNITED STATES BANKRUPTCY JUDGE

15