Thomas M. Kennedy (TK-0993)                         Return Date: November 29, 2007
Susan Jennik (SJ-4607)
KENNEDY, JENNIK & MURRAY, P.C.
113 University Place
New York, NY 10003
(212) 358-1500

Attorneys for International Union of Electronic,
Electrical, Salaried, Machine and Furniture Workers,
Communications Workers of America ("IUE-CWA")

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | )  **Chapter 11** |
| In re DELPHI CORPORATION, et al., | ) |
| | )  **05-44481 (RDD)** |
| Debtors. | ) |
| | ) |

**OBJECTION OF THE IUE-CWA TO THE EXPEDITED MOTION FOR ORDER
UNDER 11 U.S.C. §§ 105(a), 363(b), 503(b) AND 507(a) AUTHORIZING AND
APPROVING AMENDMENT TO DELPHI-APPALOOSA EQUITY
PURCHASE AND COMMITMENT AGREEMENT**

The IUE-CWA, by and through its counsel, hereby files this Objection to the Motion for

Order Authorizing Amendment to Delphi- Appaloosa Equity Purchase and Committment

Agreement (the "Motion").In support of this Objection, the IUE-CWA respectfully states as

follows:

**PRELIMINARY STATEMENT**

1.      The Plan that is the subject of the Amended Disclosure Statement represents the

fourth effort by the Debtors to structure a plan with Appaloosa Management L.P. ("Appaloosa");

Harbinger Capital Partners Master Fund I, Ltd.; Merrill Lynch, Pierce, Fenner & Smith Inc.;

UBS; Goldman Sachs & Co.; and Pardus Capital Management L.P. (collectively, the "Plan

Investors"). Each version has reduced recovery for the claims of General Unsecured Claims such as the IUE-CWA while the anticipated payoff for the Plan Investors has improved. The various prior plans have been adequately described in other filings before the Court and will not be repeated here. What is significant from the IUE-CWA's perspective is that the value of the $126 million dollar claim it negotiated in August, 2007 with Delphi and General Motors in exchange for the job losses and savage cuts in wages and benefits to be borne by its members is being progressively reduced.

2.      The Proposed Plan of Reorganization pending at the time of the August 2007 IUE-CWA / Delphi/ General Motors agreement provided for a full par plus accrued recovery for unsecured creditors with accepted claims receiving 20% of the value in cash and 80% of the value in equity. The November 14, 2007 version of the Plan provides creditors with only 75.5% of their recovery in new equity with the remaining value allegedly in the form of rights to purchase new equity. While the rights to purchase this new equity are transferable, this latest Plan is highly disadvantageous to the IUE-CWA which does not have the financial ability to exercise these rights of purchase. The enormous market risk associated with the sale of these rights of purchase reduces the value of these rights significantly. Unsecured creditors like the IUE-CWA who do not have the ability to purchase new equity will in fact receive only a substantially reduced recovery, not the promised par plus accrued.

3.      It also appears that the most recent Amended Plan leaves recovery intact for the MDL Plaintiffs, the old equity and General Motors. The unsecured creditors are being asked to carry the full burden of the additional value being transferred to the Plan Investors.

4.      The much amended EPCA now on the table is not necessarily reflective of the market to participate in Delphi's Chapter 11 emergence since the non Appaloosa Plan Investors

are bound to lock up agreements with Appaloosa that preclude their participating in alternative

plans while the EPCA remains in effect. It appears that the Debtor's tortured efforts to

continually amend the currently unperformable EPCA (rather than terminate and begin anew

with a viable EPCA) is intended to maintain the Investor's lock up monopoly. For those reasons,

the IUE-CWA urges the Court to deny the proposed Orders in support of a Plan that is

unconfirmable as stated and deprives the members of the IUE-CWA of the benefits of the

bargain they so laboriously reached only 5 months ago.

5.     The IUE-CWA did not object to the Plan as originally filed but, given the

magnitude of the current amendments and the possibility of yet additional changes to the ultimate

Plan, requests permission to file this objection.

### STATEMENT OF RELEVANT FACTS

6.     The Debtor's original EPCA was approved by this Court on January 12, 2007, and

was thereafter terminated on July 7, 2007 after the Debtors were unable to convert the original

EPCA into a plan of reorganization. On July 18, 2007, the Debtors filed an expedited motion for

an order approving a new equity purchase and commitment agreement (the " New EPCA"). The

New EPCA outlined the terms of the investment and the expected treatment of the Debtors'

stakeholders in the anticipated plan of reorganization and provided a framework for other

aspects of the Debtors' reorganization. On August 2, 2007, this Court granted the motion and

approved the New EPCA.

7.     On September 7, 2007, the Debtors filed a motion seeking entry of an order

approving the disclosure statement. On October 29, 2007, the Debtors filed their first amended

disclosure statement (the "Disclosure Statement") and accompanying proposed first amended

plan of reorganization. On October 29, 2007, the Debtors also filed a Motion for Order

"Authorizing and Approving Amendment" to the New EPCA.  On November 14, 2007 the

Debtors filed their Notice of Further Proposed Amendments to the EPCA.

       8.     It appears that on July 18, 2007 Appaloosa and the other Plan Investors executed a

Co-Investor Agreement that effectively locks up Harbringer, Merrill Lynch, UBS, Pardus and

Goldman Sachs into the EPCA through December 31, 2007.  On July 23, 2007, a further

Additional Investor Agreement was executed that reinforces the lock up terms and extends them

by providing that the lock up continues not only while the EPCA or any successor is pending but

also for a further ten (10) day period to allow Appaloosa to offer yet another version of an EPCA.

## ARGUMENT

       9.     Debtors are presumably accepting the increasingly onerous terms being demanded

by the Plan Investors because they believe that the current Plan Investors are the only source of

the cash necessary to fund a plan and exit Chapter 11.  The market analysis necessary to prove or

disprove that assertion is impossible to carry out based on the existence of the Appaloosa lock up

agreements on the members of its Plan Investor group.

       10.    The Union members who made great sacrifices to enable Delphi to reorganize, did

so in part because of the assurance that their claims would generate sufficient cash to enable the

Union to provide programs and benefits that would alleviate some of the now unmet active and

retiree health, training and other benefit programs.  The projected decrease in effective recovery

for unsecured creditors will reduce those recoveries and limit the ability of the IUE-CWA to

meet the needs of its active and retired members.

       11.    Section 105(a) of the Bankruptcy Code gives the court equitable power to issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title.  See e.g., Calpine Corp., 356 B.R. 585 (S.D.N.Y.,2007).  In this case, an Order relieving the

non Appaloosa Plan Investors of their obligations under the lock up agreements could permit the

emergence of an alternative Plan that is fairer to unsecured creditors and, in particular, the Union

unsecured creditors that bargained for a result that is now being denied to them.

10.     Section 1125(b) of the Bankruptcy Code requires that before acceptances of a

proposed plan may be solicited, the plan proponent must transmit to all holders of claims and

interests "a written disclosure statement approved, after notice and a hearing, by the court as

containing adequate information." See 11 U.S.C. § 1125(b).  Section 1125(a) of the Bankruptcy

Code, as applicable to the Debtors' chapter 11 cases, defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records, that
> would enable a hypothetical reasonable investor typical of holders
> of claims or interests of the relevant class to make an informed
> judgment about the plan, but adequate information need not
> include such information about any other possible or proposed
> plan[.]

11 U.S.C. § 1125(a)(1).

11.     Under section 1125 of the Bankruptcy Code, a disclosure statement must contain

adequate information such that a hypothetical reasonable investor may make an informed

judgment about acceptance or rejection of a plan.  *See* 11 U.S.C. § 1125(a).

12.     Neither the Creditors not any potential investors can make a reasoned judgment

concerning the viability of the current amended EPCA while a significant number of investors

who might be able to offer a more attractive investment alternative are precluded from

partipating in any alternative plans.  The Court is urged to utilize its extensive powers under

Section 105(a) of the Bankruptcy Code to invalidate the current amended EPCA, declare null and

void the lock up provisions in the Investment Agreements and Additional Investment

Agreements, and direct the parties to present a Plan that returns to the impacted union members

the full value of the claims that they accepted as partial recompense for the sacrifices they have

made to allow Delphi to successfully reorganize.

Dated: New York, New York
      November 20, 2007

                    Respectfully submitted,

                    KENNEDY, JENNIK & MURRAY, P.C.
                    Counsel for IUE-CWA

By: _____

                    Thomas M. Kennedy (TK 0993)
                    Susan M. Jennik (SJ 4607)
                    113 University Place
                    New York, NY  10003
                    (212) 358-1500