Objection Deadline: November 21, 2007 at 4 p.m.
Hearing Date: November 29, 2007 at 10 a.m.

**BROWN RUDNICK BERLACK ISRAELS LLP**
Seven Times Square
New York, NY 10036
(212) 209-4800
Robert J. Stark (RS-3575)
Daniel J. Saval (DS-2437)

*Counsel to Law Debenture Trust Company of New York, as successor Indenture Trustee for the 8.25% Junior Subordinated Notes due 2033 and the Adjustable Rate Junior Subordinated Notes due 2033*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
In re:                                            :    Chapter 11
                                                  :
DELPHI CORPORATION, et al.,                       :    Case No. 05-44481 (RDD)
                                                  :
                                                  :    Jointly Administered
                      Debtors.                    :
                                                  :
---------------------------------------------------------x

**OBJECTION OF LAW DEBENTURE TRUST COMPANY OF
NEW YORK TO DEBTORS' MOTION FOR ORDER APPROVING
(I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING DEADLINE,
AND PROCEDURES FOR TEMPORARY ALLOWANCE OF CERTAIN
CLAIMS, (III) HEARING DATE TO CONSIDER CONFIRMATION OF PLAN,
(IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN, (V) SOLICITATION
PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM PROCEDURES,
(VII) PROCEDURES FOR RESOLVING DISPUTES RELATING TO
POSTPETITION INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES**

Law Debenture Trust Company of New York ("Law Debenture"), as successor Indenture Trustee for the (i) 8.25% Junior Subordinated Notes due 2033 and (ii) Adjustable Rate Junior Subordinated Notes due 2033 (collectively, the "Subordinated Notes") issued by Delphi Corporation ("Delphi" and, together with its Chapter 11 debtor affiliates, the "Debtors"), by and through its undersigned counsel, hereby submits this Objection to the Debtors' *Motion for Order Approving (i) Disclosure Statement, (ii) Record Date, Voting Deadline, and Procedures for*

*Temporary Allowance of Certain Claims, (iii) Hearing Date to Consider Confirmation of Plan, (iv) Procedures for Filing Objections to Plan, (v) Solicitation Procedures for Voting on Plan, (vi) Cure Claim Procedures, (vii) Procedures for Resolving Disputes Relating to Postpetition Interest, and (viii) Reclamation Claim Procedures*, dated September 6, 2007 (the "Motion"). In support of its Objection, Law Debenture respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Law Debenture, as successor Indenture Trustee, is a fiduciary representative for holders of the Subordinated Notes. The Subordinated Noteholders' claims are referred to in the First Amended Plan (defined below) as "TOPrS Claims". The TOPrS Claims break down into two components: (1) principal and interest due on the Subordinated Notes (exceeding $420 million plus post-petition interest, to the extent legally sustainable); and (2) Law Debenture's post-petition fees and expenses, including attorneys' fees, earned and incurred representing the interests of the Subordinated Noteholders in these Chapter 11 cases. The former component of the TOPrS Claims is arguably subordinate to "Senior Indebtedness," as defined in Subordinated Notes Indenture. The latter component is <u>not</u> subordinated debt and, therefore, is entitled to the same treatment as the Debtors' other general unsecured indebtedness.

2. On September 6, 2007, the Debtors filed their original joint plan of reorganization (the "Original Plan"). The Original Plan contemplated full satisfaction of the TOPrS Claims, including post-petition interest on the Subordinated Notes and payment of all of Law Debenture's fees and expenses. Accordingly, Law Debenture did not have reason to interpose an objection to the Original Plan or its proposed disclosure statement.

3. On both October 29, 2007 and November 14, 2007, the Debtors filed proposed amendments to the Original Plan (as amended, the "First Amended Plan") and

2

attendant proposed disclosure statement (the "Amended Disclosure Statement").  The TOPrS Claims receive markedly worse treatment under the First Amended Plan than what was contemplated under the Original Plan.  Under the First Amended Plan: (1) the Subordinated Noteholders will be distributed stock and rights to purchase additional stock, collectively deemed to be a package of a value equivalent to principal and pre-petition interest (but not post-petition interest, as is afforded to general unsecured creditors); and (2) Law Debenture is not reserved any entitlement to the payment of its post-petition fees and expenses, unless the Court sustains a "substantial contribution" application under Bankruptcy Code Section 503(b).

4. The proposed revised treatment for the TOPrS Claims presents significant issues for the Subordinated Noteholders.  Among other things, the Subordinated Noteholders may find objectionable the fact that: (1) the TOPrS Claims are classified, for voting purposes, with holders of general unsecured claims, which classification scheme may substantially dilute their vote on the First Amended Plan; (2) they are receiving a distribution package deemed to equal the value of their Subordinated Notes TOPrS Claims, which valuation they may find artificial or contrived; (3) unlike all other creditors included in the same class, the TOPrS Claims do not receive post-petition interest, which would appear to violate Bankruptcy Code Section 1123(a)(4); (4) holders of claims and interests in classes subordinate to the TOPrS Claims receive substantial estate value, notwithstanding the fact that the Subordinated Noteholders do not receive post-petition interest, which (if the class votes against the First Amended Plan) would appear to violate Bankruptcy Code Section 1129(b); and (5) if Law Debenture's fees and expenses are not satisfied under the Plan, it will be required to assert its "charging lien" against distributions reserved for Subordinated Noteholders and, in turn, compelled to hold (for perhaps an extended period of time) and ultimately liquidate a sizeable portion of their distribution of

3

reorganized Delphi stock (in perhaps an unfriendly market) to satisfy those outstanding fees and expenses.

    5.  The Amended Disclosure Statement does not describe these issues and, as a consequence, does not adequately inform Subordinated Noteholders that they may be inadvertently compromising their due legal entitlements should they vote in favor of the First Amended Plan and/or fail to interpose an objection to its confirmation. Moreover, even if separate classification is ultimately afforded to the Subordinated Noteholders, certain important confirmation objections arguably would be waived if that class votes to accept the First Amended Plan. The presumed multitude of small and "mom and pop" holders should be made well aware of this fact.[1]

    6.  Accordingly, Law Debenture respectfully requests that this Court deny approval of the Amended Disclosure Statement unless it is made crystal clear to all holders of TOPrS Claims the potentially adverse implications of their assent to the First Amended Plan. Law Debenture otherwise reserves all rights to interpose its own objection to confirmation of the First Amended Plan, including on the grounds discussed herein.

---

[1] As discussed herein, Law Debenture has been informed that certain institutions, already at the bargaining table, may collectively hold a significant amount of the Subordinated Notes and, notwithstanding the various objection points, may be supportive of the First Amended Plan. Nevertheless, even if such institutions hold more than two-thirds in amount of the Subordinated Notes, the class will not carry unless more than half of those voting cast their ballot in favor of the First Amended Plan. See 11 U.S.C. 1126(c).

4

**BACKGROUND**

7.  **General Case Background.**  On October 8, 2005 (the "Petition Date"), each of the Debtors filed with this Court voluntary petitions for Chapter 11 relief.  The Debtors have continued to manage and operate their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

8.  On October 17, 2005, the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Official Creditors' Committee").  Subsequently, the U.S. Trustee appointed an Official Committee of Equity Security Holders (the "Official Equity Committee").

9.  **The TOPrS Claims.**  The Subordinated Notes were originally issued to two Delaware statutory trusts: Delphi Trust I and Delphi Trust II (together, the "Statutory Trusts").  The Statutory Trusts, in turn, issued publicly-held trust preferred securities (the "TOPrS") backed by the Subordinated Notes.  The trust agreements establishing the respective Statutory Trusts (the "Trust Agreements") provided that the commencement of Delphi's Chapter 11 case triggered the termination of the Statutory Trusts.  As a consequence, the Statutory Trusts were terminated post-petition and the TOPrS were cancelled.  In exchange, interests in the Subordinated Notes were issued on a pro rata basis to holders of the TOPrS.

10.  On or about April 12, 2006, Law Debenture, on behalf of the Subordinated Noteholders and itself, filed a proof of claim against the Debtors in the amount of $420,083,457, representing the outstanding principal amount of the Subordinated Notes and accrued interest as of the Petition Date.  This is the first component of the TOPrS Claims, as discussed above.

11.  In its proof of claim, Law Debenture also asserted "the right to recover post-petition interest, fees, costs, counsel fees and charges," noting that "[t]hese amounts are

5

currently unliquidated and continue to accrue." Law Debenture's entitlement to the payment of post-petition fees and the reimbursement of expenses is the second component of the TOPrS Claims, and is based on an independent right to such payments as provided for in the Subordinated Notes Indenture. See Subordinated Notes Indenture § 7.06 ("The obligations of [Delphi] under this Section to compensate the Trustee and to pay or reimburse the Trustee for reasonable expenses, disbursements and advances shall constitute additional indebtedness hereunder.").

12.   The Subordinated Noteholders' entitlement to value from Delphi's Chapter 11 estate arguably is contractually subordinated to "Senior Indebtedness," as defined in the Subordinated Notes Indenture. Law Debenture's entitlement to payment of post-petition fees and reimbursement of its expenses is <u>not</u> contractually subordinated to any other Delphi indebtedness. See Subordinated Notes Indenture § 17.01 ("[T]he indebtedness evidenced *by the Debt Securities* [defined in a manner excluding Law Debenture's rights under Section 7.06] of each series or any Coupons appurtenant thereto is subordinate and junior in right of payment to all Senior Debt to the extent provided herein." (emphasis added)).[2]

13.   **Development Of The Original Plan And The First Amended Plan Without Any Input From Law Debenture Or Subordinated Noteholders.**   On information and belief, there is not a single party at the plan bargaining table representing the interests of Subordinated Noteholders.   On information and belief, only one member of the Official

---

[2]   To the extent Law Debenture's fees and expenses are not paid by the Debtors, Law Debenture will be required to exercise its "charging lien" against Subordinated Noteholder distributions, meaning that Law Debenture will hold and ultimately liquidate their distributions of reorganized Delphi stock under the First Amended Plan to satisfy outstanding invoices. See Subordinated Notes Indenture § 6.03 (distributions to Subordinated Noteholders first liquidated to satisfy amounts due to the Indenture Trustee).

6

Creditors' Committee (Capital Research and Management Company) owns Subordinated Notes, and that institution also invested in a substantial amount of other unsecured indebtedness. Members of the Official Equity Committee and/or Appaloosa Management LP also purportedly own Subordinated Notes, but their positions in these cases are obviously directed more towards their equity investments.

14.    Law Debenture requested appointment to the Official Creditors' Committee, but the U.S. Trustee did not grant Law Debenture's request.  Law Debenture subsequently moved this Court for an Order compelling its appointment to the Official Creditors' Committee, which motion was denied.  While Law Debenture has had informative meetings with the Debtors and their professionals at various points in time, it has been excluded from all negotiations leading to the Original Plan, the First Amended Plan and, frankly, all other material developments in the cases.

15.    **Treatment of TOPrS Claims Under The Original Plan.**  The Original Plan included TOPrS Claims in "Class C – General Unsecured Claims".  Pursuant to Section 5.3 of the Original Plan, each holder of an allowed TOPrS Claim was to receive a distribution in the form of common stock in reorganized Delphi (valued at $45 per share) equal to 100% of the amount of the claim plus accrued pre-petition and post-petition interest.  The Original Plan also provided for payment of Law Debenture's post-petition fees and expenses as an allowed administrative expense claim.  See Original Plan § 10.4.

16.    **Treatment of TOPrS Claims Under The First Amended Plan.**  The First Amended Plan continues to classify TOPrS Claims as "Class C – General Unsecured Claims".  Pursuant to Section 5.3 of the First Amended Plan, each holder of an allowed TOPrS Claim will receive the following distribution: (a) common stock in reorganized Delphi (valued at

$41.58 per share) equal to 75.5% of the amount of the claim; and (b) a right to purchase additional common stock on a pro rata basis at a price of $38.39 per share (which right shall be deemed to satisfy the remaining amount of the claim). TOPrS Claims are not entitled to post-petition interest, see First Amended Plan §§ 1.156 and 5.3, notwithstanding the fact that (i) all other claimants classified in the same Class C will receive post-petition interest on their claims, see id. § 5.3, and (ii) junior classes of claims and interests will receive distributions in the form of cash, warrants, and the right to purchase reorganized Delphi common stock. See id. at §§ 5.7 (distributions for holders of "Existing Common Stock"), 5.8 (distributions for holders of "Section 510(b) Equity Claims"), 5.9 (distributions for "Section 510(b) ERISA Claims"). Moreover, the First Original Plan no longer provides for payment of Law Debenture's post-petition fees and expenses as an allowed administrative expense claim. See id. at § 10.4.

## LEGAL ARGUMENT

### I.    Law Debenture Should Be Heard To Interpose This Objection To The Motion.

17.    Law Debenture is aware that, on November 7, 2007, the Court entered its *Second Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures For Motion to Amend Investment Agreement* (the "Procedures Order"), which references the rights of certain "Potential Objectors" to file further objections to the Motion on November 21, 2007. Law Debenture is not included in the list of "Potential Objectors," apparently because it did not file an objection to the Motion prior to the initial hearing on October 3, 2007 (more than a month prior to the filing of the First Amended Plan).

8

Thus, the Debtors or other parties supportive of the First Amended Plan might argue that Law Debenture should not be heard to interpose this Objection.

18.  Any such argument must be rejected out of hand.  Again, Law Debenture did not object to the Original Plan or its proposed disclosure statement because it provided for full satisfaction of the TOPrS Claims.  The First Amended Plan provides for markedly worse treatment.  The Court entered the Procedures Order (thereby arguably limiting the list of parties that may object to the Amended Disclosure Statement) only six business days after the first amended draft was filed and seven days <u>before</u> the last amended draft was filed.

19.  Thus, depriving Law Debenture of an opportunity to interpose this Objection would be inconsistent with the most fundamental notions of due process and fairness. <u>See</u> <u>In re Boomgarden</u>, 780 F.2d 657, 660-61 (7th Cir. 1985)("In bankruptcy proceedings, both debtors and creditors have a constitutional right to be heard on their claims, and 'the denial of that right to them [is] the denial of due process which is never harmless error.'" (citations omitted));  <u>Peachtree Lane Assocs., Ltd. v. Granader (In re Peachtree Lane Assocs., Ltd.)</u>, 188 B.R. 815, 827 (N.D. Ill. 1995)("This Court believes that fundamental fairness requires that those who have a practical stake in the proceedings be afforded an opportunity to be heard on the issues that affect them.").

II.  **The Amended Disclosure Statement Should Not Be Approved Because It Fails To Provide Adequate Information To Holders Of The Subordinated Notes Regarding Their Proposed Treatment Under The First Amended Plan.**

20.  The purpose of a disclosure statement is to provide "adequate information" to parties in interest about the terms of a proposed plan, allowing for both an informed vote and knowledgeable participation in the confirmation process.  <u>See</u> 11 U.S.C. § 1125(a)(1); <u>Kunica v. St. Jean Fin., Inc.</u>, 233 B.R. 46, 54 (S.D.N.Y. 1999); <u>Ridge at Hiwan,</u>

Ltd. v. Thompson (In re Thompson), 231 B.R. 802, 807 (D. Colo. 1999).  A plan proponent must provide full and fair disclosure, with sufficient information to allow a "hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."  See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994).

21.     Stated differently, a proposed disclosure statement is evaluated in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests.  In re BSL Operating Corp., 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986); see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996)("These disclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of *full and honest* disclosure cannot be overstated.").

22.     The Amended Disclosure Statement does not provide adequate information for holders of Subordinated Notes to effectively and intelligently evaluate their proposed treatment under or to determine whether they should vote for or against the First Amended Plan.  Specifically, the Amended Disclosure Statement fails to inform holders of Subordinated Notes that:

- The First Amended Plan's classification scheme, which groups TOPrS Claims with holders of general unsecured claims, may substantially dilute their vote and, therefore, may be inconsistent with the requirements of Bankruptcy Code Section 1123(a)(4). See John Hancock Mut. Life Ins. v. Route 37 Bus. Park, 987 F.2d 154, 159 (3d Cir. 1993) (holding that separate classification is justified when each class represents a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed); FGH Realty Credit v. Newark Airport/Hotel, Ltd., 155 B.R. 93, 100 (D.N.J. 1993) (same).

- Notwithstanding the affirmative vote of a few large holders of Subordinated Notes, a separate class of such claimants will not carry if more than half of those voting do not accept the First Amended Plan. See 11 U.S.C. 1126(c). In other words, it should be expressly disclosed that the vote of smaller and "mom and pop" holders of the Subordinated Notes are meaningful to the confirmation process.

- They are receiving a distribution package that is "deemed" by the Debtors to have equivalent value of their Subordinated Notes TOPrS Claims, but which valuation might not be sustained if challenged before the Court. As such, the proposed treatment may not satisfy the "best interests" test of Bankruptcy Code Section 1129(a)(7)(ii). The "best interests" test may also not be satisfied because the First Amended Plan fails to distribute on account of TOPrS Claims post-petition interest in contravention of Bankruptcy Code Section 726(a)(5) (requiring the payment of post-petition interest to creditors prior to any distribution to equity holders).

- The disparate treatment of TOPrS Claims from all other claims in the same class (depriving TOPrS Claims of post-petition interest) appears to constitute unfair discrimination in violation of Bankruptcy Code Section 1129(b). See In re Stratford Assocs. Ltd. P'ship, 145 B.R. 689, 700-701 (Bankr. D. Kan. 1992) (plan under which first mortgagee was not entitled to receive post-petition interest, but which provided second mortgagee with post-petition interest, resulted in unfair discrimination, precluding confirmation); see also In re WorldCom, Inc., 2003 WL 23861928, *59 (Bankr. S.D.N.Y. Oct. 31, 2003)(a plan unfairly discriminates against a class if similar claims "are treated differently without a reasonable basis for the disparate treatment"); In re Granada Wines, Inc. 748 F.2d 42, 46 (1st Cir. 1984) (stating that pension fund claims and other general unsecured claims must be treated alike); In re Pine Lake Village Apartment Co., 19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982) (finding that mortgage deficiency claim and trade claims must be treated alike).

- If the class votes against the First Amended Plan, it cannot be confirmed because Subordinated Noteholders do not receive post-petition interest and, at the same time, junior classes of claims and interests are allocated distributions of estate value in contravention of the "fair and equitable" requirement of Bankruptcy Code Section 1129(b). See In re Dow Corning Corp., 456 F.3d 668, 678 (6th Cir. 2006) ("Courts have held that where an estate is solvent, in order for a plan to be fair and equitable, unsecured and undersecured creditors' claims must be paid in full, including postpetition interest, before equity holders may participate in any recovery." (quoting 140 Cong. Rec. H10, 752-01, H10,768 (1994)).

11

- If holders of Subordinated Notes vote in favor of the First Amended Plan, they may compromise their ability to interpose a confirmation objection based on the fact that they are not allocated post-petition interest. See In re United Marine, Inc., 197 B.R. 944, 947-48 (Bankr. S.D. Fla. 1996) (dissenting creditor in an accepting class cannot raise confirmation objections based on Section 1129(b)); In re Winters, 99 B.R. 658, 663 (Bankr. W.D. Pa. 1989) ("the absolute priority rule is applicable only when the proponent of the plan seeks to cramdown the plan under 1129(b) on a class that is impaired and has rejected the plan").

- Because the First Amended Plan does not provide for payment of Law Debenture's post-petition fees and expenses, it will be required to assert its "charging lien" against distributions reserved for Subordinated Noteholders and, in turn, compelled to hold (for perhaps an extended period of time) and ultimately liquidate a sizeable portion of their distribution of reorganized Delphi stock (in perhaps an unfriendly market) to satisfy those outstanding fees and expenses.

23. Each of these matters should be fully disclosed in the Amended Disclosure Statement. Otherwise, the Court should not grant the relief requested in the Motion.

**RESERVATION OF RIGHTS**

24. Law Debenture hereby expressly reserves its right to object to confirmation of the First Amended Plan on any grounds, including those discussed herein.

**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]**

## **CONCLUSION**

**WHEREFORE,** Law Debenture respectfully requests that this Court: (a) deny the relief requested in the Motion; and (b) grant Law Debenture such other and further relief as is just and proper.

Date:  November 21, 2007
       New York, New York

    **BROWN RUDNICK BERLACK ISRAELS LLP**

    **By:  /s/ Robert J. Stark**
        **Robert J. Stark (RS-3575)**
        **Daniel J. Saval (DS-2437)**

    **Seven Times Square**
    **New York, New York**
    **(212) 209-4800**

    *Counsel to Law Debenture Trust Company of New York, as successor Indenture Trustee for the 8.25% Junior Subordinated Notes due 2033 and the Adjustable Rate Junior Subordinated Notes due 2033*