Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Delphi Corporation, et al., | : | Case No.  05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

**SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS TO DEBTORS' MOTION FOR ORDER
APPROVING (I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING
DEADLINE, AND PROCEDURES FOR TEMPORARY ALLOWANCE OF
CERTAIN CLAIMS, (III) HEARING DATE TO CONSIDER CONFIRMATION
OF PLAN, (IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN, (V)
SOLICITATION PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM
PROCEDURES, (VII) PROCEDURES FOR RESOLVING DISPUTES
RELATING TO POST-PETITION INTEREST, AND (VIII) RECLAMATION
CLAIM PROCEDURES**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN
         UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Equity Security Holders (the "Equity Committee") of Delphi

Corporation ("Delphi") and the other above-captioned debtors (collectively, the "Debtors") by

and through its counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, files this supplemental

objection (the "Supplemental Objection") to the Debtors' motion (the "Disclosure Statement

Motion") for an order approving the Debtors' (i) disclosure statement, (ii) record date, voting deadline, and procedures for temporary allowance of certain claims, (iii) hearing date to consider confirmation of plan, (iv) procedures for filing objections to plan, (v) solicitation procedures for voting on plan, (vi) cure claim procedures, (vii) procedures for resolving disputes relating to post-petition interest, and (viii) reclamation claim procedures.[1]  In support of this Supplemental Objection, the Equity Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      It is clear, based upon recent events and the Debtors' latest revised plan and disclosure statement, that the Debtors' restructuring, and the terms of the Debtors' plan of reorganization, are now being dictated by the Plan Investors, who are reneging on the Court approved EPCA and exploiting the Debtors' desire to emerge from chapter 11 as quickly as possible to the detriment of Delphi's equity holders.  Even though the Plan Investors are still bound to the investment terms of the Court approved EPCA (the "Current EPCA"), under the Debtors' latest proposed plan filed with the Court on November 14, 2007 (the "November Proposed Plan"), the Plan Investors would *double* their immediate return on their minimum investment of $975 million (from 27.5% under the terms of the Current EPCA) to 54.8% under the November 14, 2007 proposed EPCA amendment (the "November Proposed EPCA Amendment") and would nearly *triple* their immediate return on their maximum investment of $2.55 billion (from 20.8% to 58.5%).  This extraordinary increase in the Plan Investors' immediate return on investment flows from their insistence on  an additional $1 billion reduction in their buy-in price for the reorganized Debtors' equity, allowing them to acquire a higher

---

[1] Terms used herein that are otherwise undefined shall have the same meaning ascribed to them in the Equity Committee's original objection to the Disclosure Statement Motion (the "Objection"), which was filed with this Court on November 2, 2007.

2

proportion of the reorganized company's equity for the same purchase price.

2. However, the latest proposed revision of the Debtors' Disclosure Statement, filed on November 16, 2007 (the "November Proposed Disclosure Statement"), is devoid of any legitimate rationale for the grant of such an extraordinary windfall to the Plan Investors. Despite making additional material changes to the Plan filed on September 6, 2007 (the "Original Plan"), the November Proposed Disclosure Statement contains only superficial changes concerning valuation and pricing, as if the newly proposed terms were a mere tweak of the Plan rather than a wholesale revision of the fundamental economics underlying the Debtors' reorganization. The revisions to the November Proposed Disclosure Statement do not cure any of the fatal defects the Equity Committee previously raised in the Objection. Thus, for the reasons set forth in the Objection, including, most especially, the complete lack of a reasonable justification for the Debtors' deviation from the terms of the Current EPCA, and for the additional reasons set forth herein, the November Proposed Disclosure Statement does not contain adequate information and should not be approved. In addition, as set forth in the Objection, the November Proposed Plan, continues to be unconfirmable as a matter of law such that the November Proposed Disclosure Statement should not be approved.

## ADDITIONAL BACKGROUND

3. On November 2, 2007, the Equity Committee filed its Objection to the Disclosure Statement Motion. The background and arguments set forth in the Objection are incorporated herein by reference.

4. On November 8, 2007, Appaloosa filed a Schedule 13D/A with the Securities and Exchange Commission (the "SEC") and announced that "as a result of certain of the conditions

set forth [in the October amendment to the EPCA (the "October Proposed EPCA Amendment") not being satisfied, the [October Proposed EPCA Amendment] terminated in accordance with its terms" on November 6, 2007. A copy of Appaloosa's Schedule 13D/A is attached hereto as Exhibit A.

5. On November 7, 2007, the Court entered the Second Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures or Disclosure Statement and Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures for Motion to Amend Investment Agreement [Docket No. 10864] which, among other things, adjourned the hearing on the Disclosure Statement Motion until November 29, 2007 with an objection deadline of November 21, 2007, provided that the Debtors filed a notice of any further proposed amendment to the Plan and Disclosure Statement on or before November 16, 2007. The Second Supplemental Order also set forth a schedule for discovery related to the Disclosure Statement Motion. [2]

6. On November 9, 2007, the Debtors filed a Form 8K with the SEC stating that "the conditions to the effectiveness of the [October Proposed EPCA Amendment] were not satisfied prior to the hearing scheduled for November 8, 2007. As a result, the Delphi Plan Investors are no longer obligated to execute the amendment, although the underlying Investment Agreement remains effective in accordance with its terms as approved by the Court in August 2007." A copy of the Debtors' Form 8K is attached hereto as Exhibit B.

7. On November 14, 2007, the Debtors filed the Notice of Further Proposed

---

[2] Discovery related to the Disclosure Statement Motion in ongoing. The Equity Committee reserves the right to further supplement the Objection and this Supplemental Objection based on the results of such discovery and in response to any documents filed by the Debtors related to the Disclosure Statement Motion.

4

Amendments to Certain Appendices to Debtors' Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession [Docket No. 10932]. With this filing, the Debtors filed proposed changes to the Plan filed on October 29, 2007 (the "October Proposed Plan", and as modified, the November Proposed Plan) and the November Proposed EPCA Amendment.

8. On November 16, 2007, the Debtors filed the Notice of Further Proposed Amendments to Debtors' Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession [Docket No. 10964]. With this filing, the Debtors filed proposed changes to the Disclosure Statement filed on October 29, 2007 (the "October Proposed Disclosure Statement", and as modified by these changes, the November Proposed Disclosure Statement).

**SUPPLEMENTAL OBJECTION**

9. Despite having been well aware prior to the filing of the Plan and Disclosure Statement of the tightening of the credit markets, the Plan Investors began a campaign to improve their economics within days, if not hours, of the September 6 filing. Between September 6th and October 29th, the Plan Investors extorted additional discounts for the purchase of equity securities contemplated by the Current EPCA, using the credit crunch minor adjustments to the Debtors' projections for GMNA production volume during 2008 as a pretext. Not surprisingly, the Creditors' Committee refused to consent to these new terms for the Plan Investors unless their constituents were likewise provided an enhanced recovery, effectively increasing the recoveries to unsecured creditors to an amount in excess of par plus accrued. To provide the Plan Investors' additional discounts, and the further reductions in plan value demanded by the Creditors' Committee, the extremely modest recoveries for existing equity

5

holders provided by the Current EPCA – recoveries that were far, far below the losses suffered by existing equity holders as a result of GM's long pattern of dominating and exploiting the Debtors for its own benefit – were virtually gutted. The revised Disclosure Statement, filed with a revised Plan and proposed EPCA amendments on October 29, 2007, made incomplete and inaccurate disclosure concerning the proposed changes, attributing them to changes in the credit markets of which the parties had long been aware, and minor changes to the Debtors' business plan that left the business plan untouched over the life of the plan.

10.    Notably, the October Proposed Disclosure Statement was utterly silent as to whether the Plan Investors had invoked any contractual right to demand modifications in their economics, let alone whether such a right existed under the Current EPCA. But in declarations filed in support of the October 29 amendments, Steve Miller, the Debtors' Chairman, John Sheehan, the Debtors' Chief Restructuring Officer, and David Resnick, the Debtors' principal financial advisor, acknowledged that the Debtors yielded to the demands of the Plan Investors because the Plan Investors were no longer willing to abide by the terms of the Current EPCA, and had granted the concessions sought by the Creditors' Committee as the price of its consent to the additional discounts provided to the Plan Investors. *See* Sheehan Nov. 2 Decl. ¶43; Resnick Nov. 2 Decl. ¶12; Miller Nov. 2 Decl. ¶15. The combined effect of these concessions constituted a massive shift of value away from existing equity holders to Plan Investors who were already being handsomely compensated for their investment, and to unsecured creditors who were already receiving a par plus accrued recovery.

11.    Now, less than three weeks after seeking Court approval of the Plan Investors' first attempt to re-trade the deal, the Debtors have once again proposed highly material revisions to the Plan that improve the Plan Investors' economics at the expense of existing equity holders,

despite the fact that no one is contending that there has been any deterioration in the intrinsic value of the Debtors during that short period of time.  Significantly, the November Proposed Disclosure Statement is devoid of information adequate to provide existing equity holders and other stakeholders with sufficient information to make an informed decision about the most recently proposed iteration of the Plan, which is designed to further enrich the Plan Investors at the expense of existing equity holders.  The Debtors' non-disclosure and misleading disclosure make a mockery of the law and public policy underlying the Court's consideration of the November Proposed Disclosure Statement.

12. As explained at length in the Objection, in the proposed revisions to the Disclosure Statement filed on October, 29, 2007, the Debtors relied on vague references to downturns in the credit markets and minor modifications to their 2008 projections to justify the enhanced Plan Investor economics and reduced existing equity holders' recoveries under the October Proposed Plan.  In the November Proposed Disclosure Statement, the Debtors' attempt to explain the steeper Plan Investor discounts consists of even vaguer references to "current market conditions" and "macroeconomic and industry conditions and uncertainties."  November DS Blackline at DS-xii.[3]  These "disclosures" ring especially hollow given that

- no one — neither the Debtors nor the Plan Investors — have asserted that market conditions or the Debtors' forecasts have deteriorated since October 29, 2007;
- the Debtors have acknowledged that the Current EPCA remains in full force and has not been terminated; and
- the Current EPCA expressly excludes from the definition of "Material Adverse Affect"

---

[3] On November 16, 2007, the Debtors filed only blacklined pages of the November Proposed Disclosure Statement to reflect the changes made from the October Proposed Disclosure Statement.  The blacklined pages are referred to herein as the "November DS Blackline".

any change in the Debtors' businesses due to general market conditions. *See* Current EPCA §3(a).

13.     Thus, while Mr. Sheehan's latest declaration asserts that, by terminating the October Proposed EPCA Amendments, the Plan Investors have reverted to the approval rights granted to them under the Current EPCA, Sheehan Nov. 18 Decl. ¶22, those approval rights do *not* include the right to renegotiate the financial underpinnings of the Plan with every fluctuation in the market, nor does it entitle them to impose new conditions on their obligation to close in the guise of being made "reasonably satisfied" with the form of various plan documents. *See* Current EPCA § 9(a)(xxviii)(B).

14.     Furthermore, in the November Proposed Disclosure Statement and in the various pleadings filed by the Debtors since the now-defunct proposed EPCA amendments were filed on October 29, 2007, the Debtors have acknowledged that the credit markets have been *improving* since the "late summer." *See e.g.,* Debtors' Omnibus Reply – Exit Financing Motion [Docket No. 10950] ¶21. (in discussing their decision to act expeditiously to enter into agreements for exit financing, Debtors take note of the "the more recent period of relatively favorable conditions" in the capital markets); November DS Blackline at DS-125 (explaining expedited schedule for the Exit Financing Motion so that "the Engagement Parties could take advantage of slightly improved conditions for borrowing.").

15.     In addition to failing to address the myriad of disclosure issues raised in the Objection, in the November Proposed Plan and November Proposed Disclosure Statement, the Debtors have also failed to address the confirmation issues set forth in the Objection that render the November Proposed Plan unconfirmble. As such, the confirmation objections set forth in the Objection remain applicable to the November Proposed Plan, and the November Proposed

8

Disclosure Statement should not be approved as a result.

16.     The Debtors have also added a provision to the November Proposed Plan and November Proposed Disclosure Statement with regard to substantive consolidation that is unworkable as a practical matter and does not comply with the Bankruptcy Code. The Debtors have the burden to show that substantive consolidation, a doctrine used sparingly by courts, is appropriate. However, as raised in the Objection, the October Proposed Plan and October Proposed Disclosure Statement present substantive consolidation as a foregone conclusion, without providing disclosure as to whether substantive consolidation in this case is appropriate, and whether the October Proposed Plan, which is explicitly premised on substantive consolidation, is confirmable under the Bankruptcy Code. In the November Proposed Plan, the Debtors have not rectified this disclosure infirmity. Instead, the Debtors have added a provision to the November Proposed Plan creating an affirmative obligation on parties in interest to object to substantive consolidation prior to the voting deadline, with a hearing on objections to be held on substantive consolidation during the confirmation hearing. *See* November DS Blackline at 167. This does nothing to satisfy the Debtors' burden. The terms of this provision (which only applies to creditors) appears to reflect the Debtors incorrect belief that they do not have to satisfy the same burden with respect to substantive consolidation for equity holders as creditors.[4] The Debtors must show that no stakeholder, including equity holders, would receive less in a non-

---

[4]     Substantive consolidation has no express statutory basis but is a product of judicial gloss based in courts' general equitable powers as set forth in 11. U.S.C. § 105. *See In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515 (1988). Although most cases regarding substantive consolidation refer to the equitable treatment of creditors, these equitable policies and powers clearly extend to equity holders. In fact, the "best interest of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code is equally applicable to equity holders, and substantive consolidation could adversely affect the rights of equity holders as well as creditors with respect to the application of 1129(a)(7). As such, there is no basis to make the assumption that rdd Debtors appear to be making.

9

consolidated scenario.[5]  Depending on the individual assets and liabilities of each of the Debtor entities, it is possible that equity holders of Delphi would receive more in a non-consolidated scenario.

## CONCLUSION

WHEREFORE, for the foregoing reasons and for the reasons set forth in the Objection, the Equity Committee respectfully requests that the Court deny the Disclosure Statement Motion and grant such other and further relief as is appropriate.

Dated:  November 21, 2007
          New York, New York

                    FRIED, FRANK, HARRIS, SHRIVER
                       & JACOBSON LLP

                    By   /s/ Bonnie Steingart
                       Bonnie Steingart (BS-8004)
                       Debra M. Torres (DT-9093)

                    One New York Plaza
                    New York, New York 10004
                    Telephone:  212.859.8000
                    Facsimile:  212.859.4000

                    *Counsel for the Official Committee of Equity
                    Security Holders*

603174

---

[5] Substantive consolidation can inappropriately effect equity holders in many ways.  For example, liabilities could be at entities with little or no asset value that could result in increased equity value in a non-consolidated scenario.