Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: 212.859.8000
Facsimile: 212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
|   Delphi Corporation, et al., | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
|                     Debtors. | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SUPPLEMENTAL OBJECTION TO DEBTORS' EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a) 363(b), 503(b), AND 507(a) AUTHORIZING AND APPROVING AMENDMENT TO DELPHI-APPALOOSA EQUITY PURCHASE AND COMMITMENT AGREEMENT**

The Official Committee of Equity Security Holders (the "Equity Committee") of Delphi Corporation ("Delphi") and the other above-captioned debtors (collectively, the "Debtors") by and through its counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, files this supplemental objection (the "Supplemental Objection") to the Debtors' Expedited Motion for Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a) Authorizing and Approving Amendment to Delphi Appaloosa Equity Purchase and Commitment Agreement (the "Motion"). In support of this Supplemental Objection, the Equity Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      On November 2, 2007, the Equity Committee filed an objection to the Debtors' motion to authorize and approve an amendment to the Delphi-Appaloosa Equity Purchase and Commitment Agreement (the "October Proposal") because, for among other reasons, the amendment resulted in a completely new deal that provided unconscionable windfalls to the plan investors (the "Plan Investors"), even though the Plan Investors remained bound by the EPCA approved by this Court on August 2, 2007 (the "Current EPCA").  There was and remains no justifiable rationale for abandoning the terms of the Current EPCA and allowing the Plan Investors to negotiate new economic terms.

2.      Just over two weeks after filing the October Proposal, and without even attempting justification, the Debtors filed papers seeking approval of further changes that accomplish very little more than exponentially increasing the windfall to the Plan Investors. This time, the Debtors do not seek to hide behind the pretense of falling markets and revised financial expectations.  In fact, the Debtors admit that the capital markets have improved and are favorable.  Ironically, even as the Debtors were announcing the demise of the October Proposal they publicly proclaimed the continued vitality of the Current EPCA.  See Form 8-K filed on November 9, 2007.  While the Debtors state that they have nothing left to accomplish in chapter 11 and therefore they should exit as quickly as possible, this mantra cannot result in the Debtors sacrificing the recovery to equity in order to provide further windfalls to the Plan Investors. Thus, the proposed sweetening of the Plan Investors' recovery under the October Proposal was unjustified and unsupportable.  This latest round of additional Plan Investor windfalls is absurd.

3.      As discussed more fully below, to the extent the Plan Investors are attempting to renege on the Current EPCA, the Debtors should be seeking this Court's assistance in enforcing

2

that agreement. The Plan Investors have not asserted a Material Adverse Effect (as defined under Section 3(a) of the Current EPCA) or delivered a notice of deficiency of any kind. The Debtors' business plan, labor agreements and General Motors Corporation ("GM") settlement agreements the Plan Investors signed off on in the October Proposal are virtually the same as those filed with the Debtors' Joint Plan of Reorganization (the "September Plan") and Disclosure Statement with respect to the September Plan (the "September Disclosure Statement") filed on September 6, 2007. Any other changes necessitated by the reduction in exit financing and form of currency being provided to GM and unsecured creditors do not have a material impact on the Plan Investors. In fact, the reduced levels of debt would result in the value received by the Plan Investors increasing significantly. Hardly a "material impact" to the Plan Investors that would permit them to avoid their commitments under §9(a)(xxviii)(B) of the Current EPCA.

4. For the reason set forth herein and as articulated in the Equity Committee's objection filed on November 2, 2007, which is incorporated herein by reference, the Motion should be denied in all respects.

**ADDITIONAL BACKGROUND**

5. On November 2, 2007, the Equity Committee filed an objection to the Motion (the "Objection"). The background set forth in the Objection is incorporated herein by reference.

6. On November 7, 2007, the Court entered the Second Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures for

3

Motion to Amend Investment Agreement [Docket No. 10864] which, among other things, adjourned the hearing on the Motion until November 29, 2007 with an objection deadline of November 21, 2007, provided that the Debtors filed a notice of any further proposed amendment to the Plan and Disclosure Statement including changes to the Investment Agreement on or before November 16, 2007. The Second Supplemental Order also set forth a schedule for discovery related to the Motion.[1]

7. On November 8, 2007, Appaloosa Management L.P. ("Appaloosa") filed a Schedule 13D/A with the Securities and Exchange Commission (the "SEC") which announced that "as a result of certain of the conditions set forth [in the October Proposal] not being satisfied, the [October Proposal] terminated in accordance with its terms" on November 6, 2007.

8. On November 9, 2007, the Debtors filed a Form 8-K with the SEC stating that "the conditions to the effectiveness of the [October Proposal] were not satisfied prior to the hearing scheduled for November 8, 2007. As a result, the Delphi Plan Investors are no longer obligated to execute the amendment, although the underlying Investment Agreement remains effective in accordance with its terms as approved by the Court in August 2007."

9. On November 14, 2007, the Debtors filed the Notice of Further Proposed Amendments to Certain Appendices to Debtors' Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession [Docket No. 10932] (the "First Further Amendments Notice"). The First Further Amendments Notice included the Restated First Amendment to the Equity Purchase and

---

[1] Discovery related to the Motion in ongoing. The Equity Committee reserves the right to further supplement the Objection and this Supplemental Objection based on the results of such discovery and in response to any documents filed by the Debtors related to the Motion or the EPCA.

4

Commitment Agreement (the "November EPCA").

10.  On November 16, 2007, an omnibus hearing was held on, among other things, the Debtors' Expedited Motion for Order Under 11 U.S.C. §363 and Fed. R. Bankr. P. 2002, 6004, 9006, and 9007 Authorizing the Debtors' Entry Into Exit Facility and Fee Letters and Performance Thereunder, at which the Court addressed the proposed changes to the EPCA and Plan (the "November 16 Hearing").

11.  On November 16, 2007, the Debtors filed the Notice of Further Proposed Amendments to Debtors' Disclosure Statement With Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession. With this filing, the Debtors filed proposed changes to the Disclosure Statement filed on October 29, 2007 (as modified by these changes, the "November Disclosure Statement").

## SUPPLEMENTAL OBJECTION

12.  As set forth in the Objection, and as subsequently acknowledged in the Debtors' Form 8-K dated November 9, 2007, the Current EPCA has not been terminated and remains enforceable. The now-defunct October Proposal would have provided an additional windfall to the Plan Investors over and above the exceedingly generous compensation and return provided to them by the Current EPCA. As explained in the Objection, the October Proposal would have granted the Plan Investors a $1 billion reduction in the total enterprise value upon which the Plan Investors' purchase price was based, which combined with the proposed capital structure granted the Plan Investors an immediate return of $130 million *more* than they were due to receive under the terms of the Current EPCA (assuming a $13.8 billion TEV). As such, the October Proposal constituted an unwarranted attempt to divert estate assets from the Debtors'

5

equity holders to the Plan Investors.

13.    Unchastened by the termination of the October Proposal, the Plan Investors reacted immediately by demanding even greater economic concessions from the Debtors. Incredibly, the total enterprise value upon which the Plan Investors' purchase price is based pursuant to the November EPCA would result in a reduction of $2 billion from the price in the EPCA approved by the Court in August — with $1 billion dollars of that reduction coming a mere two weeks after the filing of the October Proposal. This $2 billion reduction has occurred despite the fact that the valuation provided by the Debtors' financial advisors remains virtually the same as it was in the September Plan and September Disclosure Statement and the Debtors' revised business plan shows better cash flows, reduced debt and a greater implied value for the equity being distributed.

14.    Abandoning any pretense of providing a rationale for this further giveaway of value to the Plan Investors, the Debtors acknowledge that conditions in the capital markets have *improved,*[2] and do not claim that there have been adverse developments in connection with their exit financing or their business plan. Instead, as Mr. Sheehan, the Debtors' Chief Restructuring Officer, explains in his latest declaration, the Plan Investors have once again indicated that they will not proceed with their investment in the reorganized Debtors unless they are granted additional economic concessions. See John D. Sheehan Decl. dated November 18, 2007 at ¶11. Specifically, under the November EPCA, the Plan Investors would receive discounts on their

---

[2]    In the November Disclosure Statement, in the discussion of their efforts to seek Court approval of their exit facility engagement and fee letters (the "Exit Financing Motion"), the Debtors state they sought a hearing on the Exit Financing Motion on an expedited basis so that "the Engagement Parties could take advantage of slightly improved conditions for borrowing." November DS Blackline at DS-125. See also Debtors' Omnibus Reply – Exit Financing Motion [Docket No. 10950] at p. 13 (in discussing their decision to act expeditiously to enter into agreements for exit financing, Debtors take note of the "the more recent period of relatively favorable conditions" in the capital markets).

6

direct investments in series A preferred stock, series B preferred stock and New Common Stock, respectively, of 37.8%, 31.6% and 37.8% from the plan value at which new equity will be distributed to or purchased by other stakeholders.

15.     Put another way, the Plan Investors' discounts result from basing their investments on a total enterprise value for the Debtors of between $2.5 and $3 billion less than the plan value assumed for other stakeholders, and $450 million to $950 million below the *lowest* point on the valuation range of between $11.2 billion and $14.1 billion estimated by the Debtors' financial advisors.  As a result, the Plan Investors would reap a windfall of $200 million more than they would have received under the October Proposal, and over $340 million more than they would under the Current EPCA's already generous return of over $250 million (assuming a constant $13.8 billion TEV).  Furthermore, the Plan Investors' windfall increases even more if the discount rights offering to be made to the unsecured creditors under the November EPCA is not fully subscribed.

16.     As a result of their continued campaign to retrade their commitment to achieve greater profit — a campaign that commenced within *days* of the filing of the Plan and Disclosure Statement on September 6, 2007 — the Plan Investors have not only succeeded in delaying the Debtors' timetable for emergence, but also have exploited this delay to build additional pressure on the Debtors to grant them further economic concessions.  The harm caused by this endless series of re-trades has been exacerbated by the fact that the Debtors did not, and were threatened by the Plan Investors that they could not, explore alternatives to the Plan Investors.  Adding insult to injury, the Plan Investors have, in connection with the syndication of their participations, locked up all of the major financial institutions that have the ability to underwrite potential alternative transactions, thereby not only chilling bidding but

7

freezing it.[3]  While these restrictive agreements were offensive in connection with the Current EPCA, they are unconscionable in the environment we have now where the Plan Investors are demanding continually escalating changes, while proclaiming the validity of the Current EPCA and thereby shutting out all possible competition.[4]

17.     While the Debtors have acknowledged that the Current EPCA remains in full force and effect, they also must acknowledge that the Plan Investors are obligated to perform under the terms of the Current EPCA.  Any argument that there are conditions to the Current EPCA that the Debtors cannot meet is unfounded.  The Plan Investors' approval rights with respect to the Plan and Material Investment Documents (as defined in the Current EPCA), which include the Disclosure Statement, GM settlement agreements, business plan, and labor agreements, all contain a materiality threshold.  The Plan Investors may only withhold performance under the Current EPCA to the extent the terms of such documents would have a material impact on their proposed investment in the Debtors.  See Current EPCA §9(a)(xxviii)(B).  First and foremost, the Plan Investors never sent any notification to the Debtors before or after the September Plan and September Disclosure Statement were filed that the documents over which the Plan Investors had approval rights did not satisfy the conditions set forth in the Current EPCA in light of the materiality standard.  There is even less basis to do

---

[3]  The Plan Investors (with the Debtors' acquiescence) have broadly syndicated portions of their deal to a range of leading financial institutions by adding them as "Ultimate Purchasers" (as defined in the Current EPCA) as permitted by the Current EPCA.  Based on information and belief, these parties have been required to sign agreements to keep them from potentially competing in any way with the Plan Investors, including from proposing or participating in a transaction in the event that the Plan Investors' agreement is terminated.

[4]  The Debtors have also permitted alternative competition to be limited by allowing and facilitating the combination of potential investors.  Back in the fall of 2006, Appaloosa, the current lead Plan Investor, was competing with Cerberus Capital Management, L.P. ("Cerberus").  The Debtors, at the urging of GM, permitted and actually encouraged Appaloosa and Cerberus to unite instead of compete.  More recently a former member of the Equity Committee withdrew from the committee in order to attempt to form a group of investors for a potential alternative to Appaloosa.  Much to the Equity Committee's disappointment, this entity ultimately also (with the Debtors' acquiescence) joined the Plan Investor group.

so now in light of the fact that with the diminished debt the Debtors will have upon exiting chapter 11, the implied value of the Debtors' equity has increased significantly and the improved cash flows have strengthened the Debtors' financial outlook.  In fact, in connection with seeking amendments to the Current EPCA, the Plan Investors have agreed to waive their approval rights with respect to the Debtors' Plan and Disclosure Statement, the disclosure letter, the GM settlement agreements, the business plan and labor agreements that have already been delivered.  See Sheehan Decl. dated November 2, 2007 at ¶39; October Disclosure Statement at DS-127; November Disclosure Statement at DS-121.  Since the Plan Investors have agreed to waive their approval rights in connection with the proposed amendments to the Current EPCA, they obviously have no reason to rely upon them to avoid their obligations.  It is disingenuous to rely on approval rights that the Plan Investors do not have the ability to call upon to justify a deviation from the Current EPCA.

18.    It would be similarly disingenuous to cite to changes in the financing being sought by the Debtors to provide the Plan Investors with an excuse for failing to perform under the Current EPCA.  The Debtors are required to obtain financing on prevailing market terms that must otherwise be on terms acceptable to the Plan Investors, but the Plan Investors may not unreasonably withhold their acceptance.  See Current EPCA §5(t).  The amount of financing raised need only be sufficient, together with the rights offering and investment by the Plan Investors, to fund the transactions contemplated by the Current EPCA, the terms of the term sheet for the Plan Investors' preferred stock, the Plan and the Plan Terms ("Exhibit B") and the GM settlement to the extent the Debtors so fund.  See Current EPCA §9(a)(xix).  The Equity Committee does acknowledge that the amount of financing the Debtors are seeking to raise is less than what was contemplated in the Debtors' Plan and as a result of the reduced level of

9

financing there have been changes made to the distributions contemplated by Exhibit B to the Current EPCA. However, these changes do not negatively impact the Plan Investors and, in fact, result in a more favorable investment opportunity. To compensate for the reduced financing the form of currency being provided to GM and unsecured creditors has changed. In fact, the reduced debt level increases the value of the Debtors' equity and results in higher cash flows.

19. While purporting to reduce conditionality by removing closing conditions that have already been satisfied under the Current EPCA, at the same time under the November EPCA the Debtors would seek to *add* new conditions that were not contemplated in the Current EPCA. For instance, the November EPCA would add conditions to (i) set a limit on the amount of interest expense the Debtors may incur in 2008, (ii) require the Debtors to have undrawn availability under their asset backed revolving loan facility of no less than $1.4 billion taking into account open letters of credit and reductions in availability due to shortfalls in collateral, (iii) require Trade and Other Unsecured Claims to be not more than $1.45 billion (an anti-dilution mechanism may apply if the Plan Investors waive this condition), (iv) require the Plan to provide for releases and exculpation of the Plan Investors, and (v) require that Appaloosa be reasonably satisfied that the PBGC has agreed to withdraw statutory liens. As such, while entering into an agreement that extracts greater values as a price for the Plan Investors' approval of documents that have not changed since September 6 (business plan, GM settlement documents, labor agreements) and those that have changed but have not changed in a manner that materially impacts the Plan Investors, the Debtors are once again providing a platform for the Plan Investors to walk away from their supposed new commitments.

20. The Debtors' desire to emerge from chapter 11 has obscured their judgment.

10

They have stated their belief that there are no further benefits to chapter 11.  See John D. Sheehan Decl. dated November 2, 2007 at p. 15 (stating that "the Debtors have achieved all they can achieve through the chapter 11 process…Thus, there is no benefit to remaining under chapter 11 protection and erosion of value would be likely."); Robert S. Miller Decl. dated November 2, 2007 at pp. 9-10.  Instead of preserving value and protecting their constituents by fostering competition or at the very least seeking the Court's assistance in requiring the Plan Investors to perform under the Current EPCA after paying tens of millions of dollars to them, the Debtors are giving money away every time the Plan Investors ask in an ill conceived attempt to emerge from chapter 11 as quickly as possible.  Contrary to their statements to this Court, the Debtors have continued to let the Plan Investors "renegotiate the deal" and "go back to the drawing board."  See September 27, 2007 Transcript pp. 46:25-47:7.  More importantly, while the Debtors have repeatedly raised the spectre of "degradation of value" it is the Plan Investors' retrades and increasing discount to the value at which they would invest that has already caused profound erosion to the perceived value of the Debtors.

21.    As discussed in detail in the Objection, the Debtors' motion to approve the EPCA amendments filed on October 29, 2007 did not provide this Court with any legitimate basis for approving those amendments.  See also Court statements at November 16 Hearing Transcript pp. 22:19-23:10.  Now, the Debtors do not even attempt to justify the additional changes embodied in the November EPCA Amendments.

22.    The Debtors were and remain bound by the deal they made in the Current EPCA. They have been paid over $28 million in fees and enjoyed the protection of an $82.5 million break up fee if the Debtors did not hold up their end of the bargain.  The Current EPCA, which was approved by this Court, remains binding.  This Court must require the Plan Investors to

11

honor that commitment, since the Debtors refuse to do so. The additional windfalls that the November EPCA provides are unjustified, unsupportable, and unreasonable and cannot be allowed.

23.     Additionally, there is no basis for the waiver of the ten day stay under Bankruptcy Rule 6004(g) requested in the Motion. Given the shortened time period within which the Debtors have sought approval and the objections by the Equity Committee, Creditors' Committee and others, the procedural and substantive protections provided by the Bankruptcy Rules should not be compromised or limited.

24.     The Motion should be denied.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons and the reasons set forth in the Objection, the Equity Committee respectfully requests that the Court (i) deny the Motion, (ii) find that the Plan Investors are bound by the Current EPCA and the conditions to the Current EPCA have been satisfied by the Debtors, and (iii) grant such other and further relief as is appropriate.

[remainder of page intentionally left blank]

Dated: November 21, 2007
New York, New York

        FRIED, FRANK, HARRIS, SHRIVER
          & JACOBSON LLP

        /s/ Bonnie Steingart
        Bonnie Steingart (BS-8004)
        Debra Torres (DT-9093)
        One New York Plaza
        New York, New York 10004
        Phone: (212) 859-8000
        Fax:   (212) 859-4000

*Counsel for the Official Committee of Equity Security Holders*

603439