**REDACTED**

GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
(212) 813-8800
Allan S. Brilliant (AB 8455)
Craig P. Druehl (CD 2657)
Meagan E. Costello (MC 0962)

- and -

GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
(617) 570-1330
Gina Lynn Martin (GM 1324)

Attorneys for Caspian Capital Advisors, LLC;
Castlerigg Master Investments Ltd.;
CR Intrinsic Investors, LLC; Davidson
Kempner Capital Management LLC; Elliott
Associates, L.P.; Nomura Corporate Research
& Asset Management, Inc; Sailfish Capital Partners,
LLC; and Whitebox Advisors, LLC

Hearing Date: November 29, 2007 at 10:00 a.m.
Objection Deadline: November 21, 2007 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------x
                                                 :   Chapter 11
In re:                                           :
                                                 :   Case No. 05-44481 (RDD)
DELPHI CORPORATION, et al.,                      :
                                                 :   (Jointly Administered)
                              Debtors.           :
------------------------------------------------x
```

**SUPPLEMENTAL AND RESTATED OBJECTION OF CASPIAN CAPITAL
ADVISORS, LLC; CASTLERIGG MASTER INVESTMENTS LTD.; CR INTRINSIC
INVESTORS, LLC; DAVIDSON KEMPNER CAPITAL MANAGEMENT LLC;
ELLIOTT ASSOCIATES, L.P.; NOMURA CORPORATE RESEARCH & ASSET
MANAGEMENT, INC.; SAILFISH CAPITAL PARTNERS, LLC; AND WHITEBOX
ADVISORS, LLC TO EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§105(a),
363(b), 503(b) and 507(a) AUTHORIZING AND APPROVING AMENDMENT TO
DELPHI-APPALOOSA EQUITY PURCHASE AND COMMITMENT AGREEMENT**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd.; CR Intrinsic

Investors, LLC; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Nomura

Corporate Research & Asset Management, Inc; Sailfish Capital Partners, LLC; and Whitebox

Advisors, LLC or any respective affiliates thereof or funds and accounts directly managed by

each of the foregoing (each, a "Creditor"), each in their individual capacity as a creditor of

Delphi Corporation (together with certain of its debtor affiliates and subsidiaries, collectively the

"Debtors"), by and through their counsel, Goodwin Procter LLP, as and for this objection (this

"Supplemental Objection") to the expedited motion, of the above-captioned debtors and debtors

in possession (the "Debtors") for an order under 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a)

authorizing and approving amendment to Delphi-Appaloosa Equity Purchase and Commitment

Agreement (Docket No. 10760) (the "Amended EPCA Motion"). In support of the

Supplemental Objection, each Creditor respectfully states as follows:

## PRELIMINARY STATEMENT

For the reasons set forth herein, the Delphi-Appaloosa EPCA[1] and Restated First

Amendment to Delphi-Appaloosa EPCA (collectively, the "Restated Amendment") cannot be

approved by this Court. The Restated Amendment contemplates such a massive shift in value

from the Debtors' creditors to the proposed Plan Investors that it fails to satisfy even the

perfunctory standard of being within the Debtors' "business judgment." The Debtors agreement

to this value transfer makes it abundantly clear that the Debtors have totally abdicated any sound

business judgment regarding the Amended EPCA Motion in favor of getting out of bankruptcy

---

[1]   Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Amended EPCA
      Motion.

**REDACTED**

To add insult to injury, on top of gaining hundreds of millions of dollars on account of their proposed preferred stock investments pursuant to the Restated Amendment, the Plan Investors are also using their status as potential equity investors to dictate the terms of a plan of reorganization to enhance the recovery on the Debtors' existing subordinated debt that they own -- at the further expense of senior creditors.

The Plan Investors are substantial holders of the TOPrS, which are contractually subordinated to the Senior Notes.  In negotiating the terms of the Restated Amendment, the Plan

---

2

**REDACTED**

Investors improperly dictated relative distributions to holders of Senior Notes, General Unsecured Claims and TOPrS and required that the Debtors propose a plan that places all such unsecured claims in the same class. In so doing, the Plan Investors exceeded the appropriate bounds for third party investors and impermissibly exploited their position to "pick the pockets" of the Senior Noteholders and Trade Creditors to enhance their recoveries on their TOPrS.[3]

In addition, the Restated Amendment requires the Debtors to propose a plan that violates the Bankruptcy Code by requiring that dissimilar claims be classified in the same class and that subordinated creditors be paid regardless of whether senior creditors are paid in full. If approved, the Restated Amendment will place the Debtors in an intolerable *Catch-22* – they will be locked into a deal with the Plan Investors that is very expensive to break but that requires the Debtors to pursue a plan that can not be confirmed. Moreover, if the Debtors seek to modify the Restated Amendment or any provision of the Plan without the Plan Investors' consent, the Plan Investors may have the right to walk from the deal and potentially collect $129,875,500 in fees. Such overreaching should not be countenanced by the Court.

For the reasons set forth herein, the relief sought in the Amended EPCA Motion and with respect to the Restated Amendment must be denied.

## RELEVANT BACKGROUND

1.    On October 8 and 14, 2005, each of the Debtors commenced these cases (the "Cases") under chapter 11 of title 11, United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). The Cases have been consolidated for administrative purposes only, but have not been substantively consolidated.

---

[3]

**REDACTED**

2.    On July 18, 2007, the Debtors filed their Motion for Order Authorizing and Approving Delphi-Appaloosa Investment Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C. §§105(a), 363(b), 503(b), and 507(a), dated July 18, 2007 [Docket No. 8673] (the "Delphi-Appaloosa EPCA").

3.    The Delphi-Appaloosa EPCA contained an Exhibit B referred to as "Plan Framework and Special Statutory Committee Provisions/Framework Provisions" (hereinafter the "Plan Term Sheet"). Pursuant to Section 1.3 of the Plan Term Sheet, "Trade and Other Unsecured Claims and unsecured funded debt claims shall be placed in a single class."

4.    On August 2, 2007, the Delphi-Appaloosa EPCA Motion was approved by this Court (the "Original EPCA Order").

5.    On September 6, 2007, the Debtors filed (A) the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession [Docket No. 9263] (the "Plan"); (B) the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession [Docket No. 9264] (the "Disclosure Statement"); and (C) the Motion for Order Approving (I) Disclosure Statement, (II) Record Date, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures [Docket No. 9266].

6.    On September 27, 2007, the Debtors indicated that they were unable to obtain the $7.1 billion of exit financing due to the state of the capital markets and that they would need to make "laser-like" amendments to the Plan and related documents. See Transcript of September 27, 2007 Hearing, pp. 45-48.

7. On October 29, 2007, the Debtors filed the Notice of Potential Amendments To Debtors' Disclosure Statement With Respect To Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession and Certain Appendices and Exhibits Related Thereto [Docket No. 10759] (the "DS Notice"). Attached thereto as various exhibits were, inter alia, proposed changed pages and amendments to (i) the Disclosure Statement (the "Amended Disclosure Statement"); (ii) the Plan (the "Amended Plan"); and (iii) the Rothschild Valuation (Exhibit E).

8. On October 30, 2007, the Debtors filed the Expedited Motion For Order Under 11 U.S.C. Sections 105(a), 363(b), 503(b), And 507(a) Authorizing And Approving Amendment To Delphi-Appaloosa Equity Purchase And Commitment Agreement [Docket No. 10760] (the "Amended EPCA Motion").

9. On November 2, 2007, the Creditors filed an objection to the EPCA Motion [Docket No. 10800] (the "Initial EPCA Objection") as well as an objection to the Disclosure Statement. Other parties in interest also filed various objections to the Disclosure Statement and the Amended EPCA Motion.

10. On November 6, 2007, the Debtors filed the Expedited Motion under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, 9006, and 9007 For Order Authorizing Debtors Entry Into Exit Facility Engagement and Fee Letters and Performance Thereunder [Docket No. 10854] (the "Exit Facility Motion"), seeking approval of the Engagement Letter pursuant to which the Lead Arrangers are to use commercially reasonable best efforts to syndicate the Exit Financing Arrangements.

11. On November 7, 2007, this Court entered the Second Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and

Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures for Motion to Amend Investment Agreement [Docket No. 10864], pursuant to which the Debtors were to use commercially reasonable efforts to file notice of further amendments to, among other things, the Plan, the Disclosure Statement, and the Delphi-Appaloosa EPCA, on November 16, 2007.

12.    On November 8, 2007, Appaloosa Management, L.P. and several of its affiliates filed a Schedule 13D/A (the "Appaloosa 13-D") with the Securities and Exchange Commission (the "SEC") stating that the EPCA Amendment had terminated pursuant to its terms on November 6, 2007, because several conditions had not been satisfied.

13.    On November 14, 2007, the Debtors filed the Notice of Further Amendments To Debtors' Disclosure Statement With Respect To Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession and Certain Appendices and Exhibits Related Thereto. Attached thereto as an exhibit was the Restated Amendment. As of the date hereof, the Debtors have not filed a revised or supplemental Amended EPCA Motion.

14.    As set forth in the Second Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures for Motion to Amend Investment Agreement, the Court set a deadline for supplemental objections regarding this matter of November 21, 2007 by 4:00 p.m. prevailing Eastern time.

15.    On November 19, 2007, a deposition of Mr. John Sheehan, the Debtors' Chief Restructuring Officer, was conducted.

16.    On November 21, 2007, the Creditors filed the Supplemental Objection of Capital Advisors, LLC; Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Nomura Corporate Research &

Asset Management, Inc;  Sailfish Capital Partners, LLC; and Whitebox Advisors, LLC to Motion to Approve (A) Proposed Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, and (B) Motion for Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures (the "Supplemental Disclosure Statement Objection"), which is incorporated herein by reference.

## OBJECTION

**I.    The Debtors Have Failed To Satisfy Their Burden That Restated Amendment Represents Sound Business Judgment**

17.    While they have filed no motion regarding the Restated Amendment, the relief sought requires the Debtors to satisfy section 363(b) of the Bankruptcy Code with respect to the Restated Amendment.  Approval thus requires that the Debtors prove that there is a good business reason for the transaction.  See, e.g., Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (denying approval of transaction under section 363 where justification was that creditors' committee had insisted on it).  As the Second Circuit stated in Lionel, "there must be some articulated business justification, *other than appeasement of major creditors*, for using, selling or leasing property out of the ordinary course of business before a court may order such disposition."  Id. at 1070 (emphasis added). Bankruptcy courts are not given *carte blanche* authority to approve the use sale or lease of property of the estate outside of the ordinary course of a debtor's business under section 363.

7

See id. at 1069.  Rather, a court must make an express finding that a "good business reason"

exists to grant the application:

> In fashioning its findings, a *bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups*; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the *likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization*, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

Id. at 1070 (emphasis added).

18.     Moreover, to satisfy section 363(b) of the Bankruptcy Code, the proposed

transaction must be in the best interests of the estate and its creditors.  See, e.g., In re G.S. Dist'n,

Inc., 331 B.R. 552, 560 (Bankr. S.D.N.Y. 2005) (debtor must show how sale is in best interests

of estate, particularly where opposed by estate's largest creditor); In re Angelika Films 57th, Inc.,

1997 U.S. Dist. LEXIS 7463 (Dist. Ct. S.D.N.Y. 1997) ("The Debtor's decision to accept such a

low offer was made despite the fact that it could result in economic harm to the estate.  Thus, the

court finds that under the circumstances of the case, the Debtor did not exercise its business

judgment in a manner consistent with the estate's best interest.").

19.     The decision by the Debtors to accept such a low offer is inconsistent with sound

business judgment and their duty to act in a manner consistent with the estate's best interest.

Many, if not all, of the Lionel factors weigh against approval of the Restated Amendment.  For

these reasons alone the Restated Amendment should not be approved.

20.    Less than one month ago, the Debtors filed the Amended EPCA Motion stating that as a consequence of GMNA demand projections, adverse conditions in the financial markets and continuing progress of Debtors' restructuring, the Debtors and Plan Investors determined the EPCA should be amended. See Amended EPCA Motion at ¶¶ 21-27. The Amended EPCA revised the Delphi-Appaloosa EPCA to, among other things, grant the Plan Investors a further discount at which the Plan Investors would purchase equity in the reorganized Debtors. See Amended Disclosure Statement at p. xiv.

21.    On November 14, 2007, without any further filing containing an explanation or justification, the Debtors filed the Restated Amendment as an exhibit to the Disclosure Statement. The Restated Amendment grants the Plan Investors an even greater discount, representing a significant departure from the EPCA Amendment that the Debtors sought approval of just over three weeks ago. )

**REDACTED**

22.    As the Court has noted, although the Debtors previously ascribed the need to amend the Delphi-Appaloosa EPCA to "adverse financial markets" the dramatic reduction in enterprise value at which the Plan Investors are now willing to invest in the Debtors is simply another re-trade by the Plan Investors for which there can be no sound justification. As a result, the Court must see the Restated Amendment for what it is – a classic bait and switch. See Transcript of Exit Facility Motion at p. 23 (Court noting that it had a "hard time seeing" how the asserted basis for the change affects the Plan Investors).

23.                    **REDACTED**


<u>Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390

U.S. 414, 450 (1968).

24.    As a result of the absence of any factors that could satisfactorily justify the

significant departure from the original terms of the Delphi-Appaloosa EPCA, the Debtors have

simply decided to remain silent, choosing not to file a further amended motion.  That silence,

however, must be viewed as an admission that the Restated EPCA does not, and can not, satisfy

the requirement that a sound business purpose exists for entering into such an agreement.  <u>See</u> <u>In

re Encore Healthcare Assocs.</u>, 312 B.R.52 (Bankr. E.D. Pa. 2004) (sale of asset disapproved in

the absence of any business justification).[4]  The Debtors have made limited disclosure of the

relief sought and sought the relief on shortened time, with no process for competing bids.  As set

forth herein, the Restated Amendment would have an adverse effect on the prospects of

confirming a plan of reorganization, further weighing strongly against approval.


                    **REDACTED**


---

[4]    Moreover, even if the Debtors are able to cobble together some other justification for the Restated Amendment,
the cost for the Plan Investors to make an investment in the reorganized Debtors has, quite simply, gotten too
steep.  <u>See</u> <u>Transcript of Exit Facility Motion</u> at p. 23 (Court characterizing Restated Amendment as "sucking
out hundreds of millions of dollars" from the Debtors' estates).

**REDACTED**

See, e.g., Bank of America Nat'l Trust and Sav. Ass'n v. 203 N. LaSalle Street P'ship, 119 S. Ct. 1411, 1424 (1999) (requiring competition or market test to assess adequacy of equity distribution).

26.    Accordingly, the Debtors have not shown and cannot show any sound business justification for the Restated Amendment.  Moreover, the Restated Amendment is not in the best interests of the Debtors' estates and creditors.

**II.    The Court Should Not Allow Prospective Plan Investors To Use Their Position As Potential Investors To Improve Their Recoveries As Subordinated Creditors Under the Debtors' Plan at the Expense of Senior Creditors**

   A.    Restated Amendment Constitutes an Improper Sub Rosa Plan

27.    The Restated Amendment requires the Debtors to pursue confirmation of a specific plan of reorganization, providing for a specific distribution scheme to holders of both senior and subordinated claims that is unrelated to legitimate concerns of any unconflicted third-party equity investor.  Such requirements, which amount to a sub rosa plan, are inappropriate and should not be approved.  See Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935, 940 (5th Cir. 1983) (debtor should not be able to short circuit the requirements of Chapter 11 for confirmation by establishing the terms of the plan sub rosa).

---

5

**REDACTED**

28.    Such terms are properly imposed on creditors only through the chapter 11 plan, not an investment agreement that has the practical effect of dictating all of the terms of the Plan and purports to control in the event of any conflict between the Plan, Confirmation Order and Amendment.[6] See Contrarian Funds, LLC. V. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.), 333 B.R. 30, 52 (S.D.N.Y. 2005) (holding that order authorizing imposition of distribution, claim satisfaction and lien elimination was not authorized by Bankruptcy Code without confirmation of plan); see also Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) ("When a proposed transaction specifies terms for adopting a reorganization plan, the parties and district court must scale the hurdles erected in chapter 11.").

29.    Although the statement by this Court that the Delphi-Appaloosa EPCA was "not a sub rosa plan", see Transcript of Hearing on August 5, 2007 to Consider the Delphi-Appaloosa EPCA at p.18, may have been accurate at the time, the Restated Amendment can no longer be characterized as an "important step towards reorganization," see id. Rather, the Restated Amendment is an investment contract that impermissibly dictates the terms of the Plan and all distributions thereunder, and purports to control nearly every other document that may be issued in connection with the Debtors' Plan, including any Confirmation Order that this Court may enter. See Restated Amendment, Section 1(hhh).

---

[6]    The Amendment requires that the Debtors pursue the Plan in its current form. It also contains a provision that: "Notwithstanding anything to the contrary in the Plan (including any amendments, supplements or modifications thereto) or the Confirmation Order (and any amendments, supplements or modifications thereto) or an affirmative vote to accept the Plan submitted by any Investor, nothing contained in the Plan (including any amendments, supplements or modifications thereto) or Confirmation Order (including any amendments, supplements or modifications thereto) shall alter, amend or modify the rights of the Investors under this Agreement unless such alteration, amendment or modification has been agreed to in writing by each Investor." See Restated Amendment, Section 1(hhh).

30.    A court may not approve any agreement that is effectively a *"sub rosa"* plan that dictates the terms of the debtors' plan of reorganization prior to the confirmation process. Official Comm. of Unsecured Creditors of Tower Auto v. Debtors (In re Tower Auto., Inc.), 241 F.R.D. 162, 168 (S.D.N.Y. 2006) ("Tower II") (citing Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935, 940 (5th Cir. 1983)).  Likewise courts have refused to approve an agreement that encroaches upon any right afforded to creditors or equity holders in the chapter 11 plan process. See, In re Tower Auto., Inc., 342 B.R. 158, 163-164 (Bankr. S.D.N.Y. 2006) (citing In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990)) (An agreement may not (i) dispose of all of the debtor's assets, (ii) restrict creditors' rights to vote on a plan of reorganization, or (iii) dictate the terms of a plan of reorganization.).

31.    In considering whether a transaction dictates the terms of a future reorganization plan, a court should ask "whether the proposed transaction might improperly and indirectly lock the estate into any particular plan mode prematurely, and without the protection afforded by the procedures surrounding a disclosure statement and confirmation hearing, in a plan of reorganization." In re Public Serv. Co., 90 B.R. 575, 582 (Bankr. D.N.H. 1988) (any settlement agreement that would effect a "lock-up" of the terms of a plan of reorganization is *per se* invalid and cannot be approved); Crowthers, 114 B.R. at 885; see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 983 (Bankr. N.D.N.Y. 1998) (proposed lease agreement "short-circuit[ed]" chapter 11 process and could not be approved).  Here, the answer to that question must be a resounding yes.  As a result, the Restated Amendment cannot be approved.

B.    The Restated Amendment Undermines the Bankruptcy Code
and Applicable Law

32.    Approval of the Restated Amendment will result in the requirement that the
Debtors propose a plan that violates the provisions of the Bankruptcy Code. [7] As such, this
Court should not approve it.  See, e.g., In re Dalen, 259 B.R. 586, 609 (Bankr. W.D. Mich. 2001)
("In the context of a bankruptcy proceeding, determining whether a settlement is illegal or not
would necessarily require consideration of the Bankruptcy Code.  For example, a pre-plan
settlement between the debtor-in-possession and one of its creditors would be illegal, and
therefore not appropriate for court approval, if the settlement would substantially impair
creditors' rights under the absolute priority rule in an ensuing plan of reorganization.").

33.    Moreover, the Restated Amendment is so tainted with provisions unrelated to the
Plan Investors' investment in the reorganized Debtors that it should not be referred to as an
investment agreement.  In reality, the Restated Amendment is a vehicle for the Plan Investors to
implement a plan of reorganization guaranteed to be more favorable to the Plan Investors, in
their capacity as holders of subordinated debt, than all other interested parties.


**REDACTED**

---

[7]    Pursuant to the Restated Amendment, the Debtors must seek confirmation of a Plan that can not be confirmed
under applicable bankruptcy law (as more fully set forth in the Creditors' Disclosure Statement Objection).  The
Restated Amendment requires that the Debtors place all trade and other unsecured claims and unsecured funded
debts claims in a single class.  This is impermissible under the Bankruptcy Code.  It is axiomatic that a debtor's
plan of reorganization can only classify substantially similar claims together.  11. U.S.C. §1122(a).  The
opposite is also true – dissimilar claims may not be classified together.  Yet, that is exactly what the Plan
Investors have demanded the Debtors do – ignore the seniority and unique characteristics of the Creditors by
lumping all general unsecured creditors together.

Investors. See, e.g., In re Louise's Inc., 211 B.R. 798 (D. Del 1977) (settlement agreement

between debtor and creditors' committee could not be approved because agreement purported to

transfer *de facto* control over the debtor).

34.    Approval of the Restated Amendment improperly restricts the Debtors' fiduciary

duties to their creditors and to act in the best interests of the estates.  That is, the approval of the

Restated Amendment will only further limit the Debtors ability to pursue competing offers that

are better than the Restated Amendment.  Indeed, to even consider modifications to the Plan that

are (or should be) wholly irrelevant to the Plan Investors, the Debtors must seek the Plan

Investors' consent.  See Restated Amendment, Section 1(hhh).

REDACTED

Accordingly, the Debtors are, in effect, delegating their

fiduciary duty under the Bankruptcy Code to maximize their estates for the benefit of creditors to

the Plan Investors who have no obligation to any of the Debtors' stakeholders

### III.    The Restated Amendment Should Not Be Approved Because It Raises Questions As to the Good Faith/Arm's Length Nature of the Transaction

35.    After reviewing the Restated Amendment (as with the prior amendments),

together with the Plan, there can be only one conclusion: the Plan Investors are impermissibly

using their leverage as potential plan investors to insist on a Plan that enhances the distributions

on account of the TOPrS – of which the Plan Investors are allegedly large holders.

REDACTED

Under the Bankruptcy Code, the Plan Investors are

not permitted to gain favored treatment of prepetition claims by utilizing leverage post-petition

15

against the estate.  See, e.g., Massachusetts v. Dartmouth House Nursing Home, Inc. (In re Darmouth House Nursing Home, Inc.) 24 Bankr. 256, 261 (Bankr. D. Mass 1982) appeal dismissed, 30 Bankr. 56 (B.A.P. 1st Cir. 1983) (creditor of estate may not require payment of pre-petition debt as condition of providing post-petition services, to do so would be in contravention of Bankruptcy Code's distribution scheme); see generally, Charles J. Tabb, A Critical Reappraisal of Cross-Collaterization in Bankruptcy, 60 S. Cal. L. Rev. 109 (1986).

36.    The Plan Investors are large holders of TOPrS and have insisted on these provisions to impermissibly increase their recoveries.

**REDACTED**

Such actions by the Plan Investors are antithetical to the requirement of good faith that pervades bankruptcy law.  Yet, pursuant to the proposed Order approving the Amended EPCA Motion, the Debtors and Plan Investors seek a finding that the "Amendment was negotiated at arms' length and in good faith." See Proposed Order, finding (M).

37.    In considering whether the Restated Amendment should be approved, a court must be assured that the "agreement was the product of arms' length negotiation rather than collusion and that all interests have been effectively represented." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (S.D.N.Y. 1998).  If the integrity of the process is not preserved, then the presumption of fairness will not attach. See id. at 46.

38.

**REDACTED**

**IV. The Restated Amendment is Opposed by Debtors' Material Stakeholders and Should Not Be Approved By This Court.**

39.      Assuming, arguendo, that the Debtors are able to overcome these seemingly insurmountable hurdles, this Court should still deny the relief as a result of the vociferous objections filed by major stakeholders of the Debtors.  With the possible exception of GM and the MDL claimants, the Debtors have proposed the Restated Amendment without the support of any major stakeholder and thus, even if the Disclosure Statement is approved in its current form, the Restated Amendment and underlying plan are certainly "dead on arrival." Objection Of The Official Committee Of Unsecured Creditors To Debtors' Expedited Motion Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002, 6004, 9006, And 9007 For Order Authorizing Debtors' Entry Into Exit Facility Engagement And Fee Letters And Performance Thereunder (Unredacted) at ¶13 [Docket No. 10933].

40.      At this juncture, it is inconceivable that approval of the Restated Amendment will lead to a confirmable plan.  This Court needs to consider the overwhelming lack of creditor support in determining whether to approve the Restated Amendment. See Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.), 68 F.3d 914, 918 (5th Cir. 1995) (vacating settlement agreement between Chapter 11 debtor and its parent corporation in part because of nearly unanimous opposition by all creditors in interest); Reiss v. Hagmann, 881 F.2d 890, 892-93 (10th Cir. 1989) (bankruptcy court may not ignore creditors' overwhelming opposition to a settlement); Comm. of Unsecured Creditors v. Interstate Distrib., Inc. (In re Interstate Cigar Co., Inc.), 240 B.R. 816, 825 (Bankr. E.D.N.Y. 1999) ("the Court is mindful that it must consider the paramount interests of the creditors and give proper deference to their reasonable views").

41.      The widespread dissent of creditors and equity holders cannot be ignored.

17

## CONCLUSION

41.    For all of the reasons stated herein, the Creditors urge this Court to not approve the Restated Amendment, as it is <u>not</u> in the best interest of the Debtors' creditors and estates and lacks any sound business justification.

## RESERVATION OF RIGHTS

42.    The Creditors hereby expressly reserve all of their rights to raise any and all objections concerning the Restated Amendment, whether or not raised herein including, but not limited to the right to supplement this Supplemental Objection, at or before any other date on which objections relating to the Amended EPCA Motion and the Restated Amendment will be heard.

## WAIVER OF MEMORANDUM OF LAW

43.    Because this Supplemental Objection presents no novel issues of law and the authorities relied upon are set forth herein, each Creditor respectfully requests that the Court waive the requirement of filing a separate memorandum of law in support of this Objection pursuant to L.B.R. 9013-1(b).

WHEREFORE, each Creditor respectfully requests that this Court (a) deny approval of the Amended EPCA Motion and Restated Amendment and (b) grant such other relief as the Court deems just and proper.

Dated: New York, New York
      November 21, 2007

GOODWIN PROCTER LLP

By:  /s/  Allan S. Brilliant
Allan S. Brilliant (AB 8455)
Craig P. Druehl (CD 2657)
Meagan E. Costello (MC 0962)
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

- and -

GOODWIN PROCTER LLP
Gina Lynn Martin (GM 1324)
Exchange Place
Boston, Massachusetts 02109
(617) 570-1330

Attorneys for Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd.; CR Intrinsic Investors; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Nomura Corporate Research & Asset Management, Inc; Sailfish Capital Partners, LLC; and Whitebox Advisors, LLC