| | |
|---|---|
| KIRKPATRICK & LOCKHART<br>PRESTON GATES ELLIS LLP<br>Edward M. Fox, Esq. (EF1619)<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone (212) 536-3900 | Hearing Date: November 29, 2007<br>10:00 A.M. |

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                         :     Chapter 11
                                                                 :     Case No. 05-44481 (RDD)
DELPHI CORPORATON, *et al.*,          :     (Jointly Administered)
                                                                 :
            Debtors.                                     :
---------------------------------------------------------X

**SUPPLEMENTAL OBJECTION OF WILMINGTON TRUST COMPANY, AS
INDENTURE TRUSTEE, TO MOTION FOR ORDER APPROVING (I) DISCLOSURE
STATEMENT, (II) RECORD DATE, VOTING DEADLINE, AND
PROCEDURES FOR TEMPORARY ALLOWANCE OF CERTAIN CLAIMS,
(III) HEARING DATE TO CONSIDER CONFIRMATION OF PLAN,
(IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN,
(V) SOLICITATION PROCEDURES FOR VOTING ON PLAN,
(VI) CURE CLAIM PROCEDURES, (VII) PROCEDURES FOR
RESOLVING DISPUTES RELATING TO POSTPETITION
<u>INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES</u>**

Wilmington Trust Company ("WTC"), as indenture trustee for the senior notes

and debentures (the "Senior Debt") in the aggregate principal amount of $2 billion issued by

Delphi Corporation ("Delphi"), by and through its attorneys, Kirkpatrick & Lockhart Preston

Gates Ellis LLP, hereby objects to the Motion for Order Approving (i) Disclosure Statement, (ii)

Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (iii)

Hearing Date to Consider Confirmation of Plan, (iv) Procedures for Filing Objections to Plan, (v)

Solicitation Procedures for Voting on Plan, (vi) Cure Claim Procedures, (vii) Procedures for

Resolving Disputes Relating to Postpetition Interest, and (viii) Reclamation Claim Procedures

NY-568804 v1

05-44481-rdd    Doc 11048    Filed 11/21/07    Entered 11/21/07 21:02:00    Main Document
Pg 2 of 9

(the "Motion")[1] filed by Delphi and its debtor subsidiaries and affiliates (collectively, the "Debtors"), insofar as it relates to the First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Amended Disclosure Statement"), changed pages of which were filed with the Court on November 14, 2007, stating as follows:

## FACTUAL BACKGROUND

1.  On October 8, 2005 (the "Petition Date"), Delphi Corporation and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued to operate their businesses and remained in possession of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.  On August 6, 2007, the Court entered an Order Scheduling Non-Omnibus Hearing on Debtors' Motion to Approve Solicitation Procedures and Disclosure Statement (the "Scheduling Order"), which provided, among other things, that if the Debtors were to file a disclosure statement (the "Disclosure Statement") on or prior to September 6, 2007, the Court would hold a hearing on approval of the same on October 3, 2007.

3.  In accordance with the Scheduling Order, on September 6, 2007, the Debtors filed their Disclosure Statement, together with the Motion, which sought entry of an order: (i) approving the Disclosure Statement pursuant to 11 U.S.C. § 1125; and (ii) establishing various solicitation procedures and filing deadlines prior to an anticipated hearing on confirmation of the Debtors' proposed plan on November 19, 2007.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.B of the Debtors' proposed plan as amended by amendments filed November 14, 2007 (the "Plan").

- 2 -

4. Subsequently, during an omnibus hearing held on September 27, 2007, the Debtors announced that while they intended to commence a hearing with respect to the Disclosure Statement on October 3, 2007, they did not expect to request approval of the Disclosure Statement on that date. Instead, the Debtors indicated that, due to conditions in the capital markets and continuing negotiations with their various creditor constituencies, the Disclosure Statement would not be finalized and ready for approval until sometime later in October 2007.

5. On October 19, 2007, the Court entered a Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures for Potential Motions Amending Investment Agreement and Approving Certain Exit Financing Agreements, which, among other things, established November 8, 2007 as the date for a continued hearing on approval of the Debtors' Disclosure Statement.

6. On October 29, 2007, the Debtors filed their Notice of Potential Amendments to Debtors' Disclosure Statement With Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-In-Possession and Certain Appendices and Exhibits Related Thereto.

7. Pursuant to the Second Supplemental Order (a) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (b) Setting Hearing Date and Related Procedures for Motion to Amend Investment Agreement dated November 7, 2007, on November 16, 2007, the Debtors filed their Notice of Further Proposed Amendments to Debtors' Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession.

**THE AMENDED DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION**

8. The Amended Disclosure Statement may only be approved if it is found to contain "adequate information" regarding the Debtor's Plan. "Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and of the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan….

11 U.S.C. § 1125(a)(1) (2004). Thus, the Amended Disclosure Statement may not be approved unless and until it contains information sufficient to permit the Debtors' creditors to "make an intelligent and informed decision as to whether to accept or reject the plan." In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); In re Ferretti, 128 B.R. 16, 19 (Bankr. D. N.H. 1991) ("[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

9. The Amended Disclosure Statement should also provide creditors with meaningful information regarding "the consequences of the proposed plan on their claims and the possible Code alternatives so that they can intelligently accept or reject the Plan." In re Copy Crafters Quickprint, Inc., 92 B.R. at 981.

10. As explained below, the Debtors' Amended Disclosure Statement lacks adequate information regarding a number of issues that are critical to creditors' ability to make an intelligent and informed evaluation of the Plan. The Motion must therefore be denied.

11. WTC repeats and reiterates the objections set forth in its Objection of Wilmington Trust Company, as Indenture Trustee, to Motion for Order Approving (i) Disclosure Statement, (ii) Record Date, Voting Deadline, and Procedures for Temporary Allowance of

- 4 -

Certain Claims, (iii) Hearing Date to Consider Confirmation of Plan, (iv) Procedures for Filing Objections to Plan, (v) Solicitation Procedures for Voting on Plan, (vi) Cure Claim Procedures, (vii) Procedures for Resolving Disputes Relating to Postpetition Interest, and (viii) Reclamation Claim Procedures dated November 2, 2007 (the "Initial Objection").  None of the issues raised in the Initial Objection have been addressed in the Amended Disclosure Statement and the objections raised in the Initial Objection apply with equal force to the Amended Disclosure Statement.

12.   Moreover, because of the many objections to the Debtor's proposed Plan, the Debtors have made changes in the Amended Disclosure Statement which (i) make the proposed Plan appear to be the product of a collaborative effort when that is not the case and (ii) attempt to frighten creditors into voting for the Plan by setting forth an alleged parade of horribles which will occur if the Debtors' proposed plan is not confirmed immediately.

13.   The chart of proposed changes to the Plan on pages DS-xiii through DS-xiv of the Disclosure Statement fails to indicate what the actual value, as opposed to the "plan value," is for the value of the stock and rights distributions unsecured creditors are to receive under the Plan.  Moreover, the paragraph on page DS-xiv after the chart states that "the Plan continues to provide for full recoveries for unsecured creditors at Plan value . . . ."  This and similar statements throughout the Amended Disclosure Statement are misleading because they fail to set forth the actual value of the recovery and because creditors will not receive a par plus accrued recovery under the Plan.

14.   In an effort to frighten creditors into voting for a plan which the Creditors Committee has now indicated it will not support, the Debtors have included a chart entitled "Events Impacting Reorganization Timeline" at pages DS-xv to DS-xvi of the Amended

Disclosure Statement setting forth a list of supposed "event risks" if the Debtors' proposed plan is not confirmed on the timeline specified by the Debtors. Many of the listed events are either relevant or overblown:

- Exclusivity. The Debtors' loss of the exclusive right to file a plan of reorganization absent court approval of an extension is only an "event risk" for the Debtors. It is irrelevant to, and may even enhance, creditor recoveries. This item should be deleted.

- IRS Pension Funding Waivers. The Debtor includes three separate items concerning the same pension funding waivers  At least two of them should be deleted. Moreover, the Debtors should indicate that they have previously obtained funding waivers and may obtain additional waivers in the future.

- EPCA termination events are referred to under both the March 31, 2008 and June 30, 2008 headings. These items should be deleted. Rather than being disadvantageous to unsecured creditors, however, the termination of the EPCA at this point in time, given the continuing outsized demands of the Plan Investors, would, in fact, be helpful, rather than harmful, to the unsecured creditors.

15. On page DS-xvii of the Amended Disclosure Statement, Section G, Summary of the First Amended Plan of Reorganization, refers to the Debtors' settlements with certain "critical stakeholders." Included among these critical stakeholders are the lead plaintiffs in certain securities actions. The Debtors fail to explain why the lead plaintiffs are critical stakeholders given the fact that their claims should be subordinated to the claims of unsecured creditors.

16. Also on page DS-xvii of the Amended Disclosure Statement, the Debtors indicate that the recovery for holders of general unsecured claims will consist of "the principal amount of such holders' claims plus accrued post-petition interest at negotiated Plan value, a 'par plus accrued recovery at Plan value.'" As indicated above and in the Initial Objection, use of euphemisms such as "Plan Value" are inappropriate and misleading. Moreover, the Debtors fail to indicate with whom this value has supposedly been negotiated, which is an important fact given that all creditor constituencies now oppose the Debtors' proposed Plan.

17. The chart describing creditor recoveries beginning on page DS-xx of the Amended Disclosure Statement should be revised to include actual dollar values of creditor recoveries based on the midpoint valuation determined by the Debtors' financial advisors. In particular, on page DS-xxv of the Amended Disclosure Statement, the chart describing the treatment of general unsecured claims under the Plan lists the estimated percentage recovery as 100% of principal and applicable accrued post-petition interest based on a distribution of new common stock at Plan Equity Value plus full participation in the Discount Rights Offering." This Description is misleading, as it fails to indicate the actual value, as opposed to "Plan Equity Value," of unsecured creditors' recoveries. This section should set forth the actual value of recoveries based on the mid-point range of valuation as determined by the Debtors' financial advisors.

18. On page DS-126 of the Amended Disclosure Statement, the Debtors refer to Court approval of their Exit Financing Motion, which was approved on November 16, 2007. The Debtors fail to indicate, however, that despite the alleged urgency of their situation as described at the hearing on November 16, 2007, the Debtors have not begun the process of seeking to syndicate their financing and do not plan to do so until approval of the amended

- 7 -

agreement with the Plan Investors which is currently scheduled to be heard on November 29, 2007.

19.     On page DS-167 the Amended Disclosure Statement indicates that "if no objection to substantive consolidation of certain of the Debtors' Estates, is timely filed and served by <u>any holder of an impaired Claim</u> affected by the Plan . . . the Confirmation Order will serve as the order approving the substantive consolidation of the Debtors' Estates. . . ." This statement is erroneous and should be changed because parties in interest, such as Wilmington Trust Company, as indenture trustee, are entitled to object to substantive consolidation.

20.     Page DS-173, the Amended Disclosure Statement states that "Holders of Allowed General Unsecured Claims will receive New Common Stock and Discount Rights equal to the <u>value</u> of 100% of such holders' Allowed General Unsecured Claims plus applicable Postpetition interest, in the ratio described below." Although this language conforms to the amended Section 5.3 of the Debtors' proposed Plan, this language is incorrect as a matter of law and should be changed. Creditors are entitled to recoveries based on the allowed amount of their claims, not on the "value" of such claims, which may vary in the marketplace at any given moment. Moreover, later in the same paragraph, as well as in the next paragraph, the Disclosure Statement indicates that recoveries will be paid at "Plan Equity Value" rather than based on the value of the claims.

## **THE PROPOSED RECORD DATE FOR THE RIGHTS OFFERING**

21.     The Plan and Amended Disclosure Statement should provide that the Discount Rights Offering record date for holders of Senior Debt should be the date of entry of the order confirming the Plan. Any earlier date, such as the date of commencement of the confirmation hearing, as the Debtor proposes, is likely to lead to confusion and adversely affect the trading of the Senior Debt and the exercise of the rights.

- 8 -

WHEREFORE, WTC respectfully requests the Court to enter an order: (i) denying the Motion to approve the Debtors' Amended Disclosure Statement unless and until it is supplemented with adequate information of the kind discussed herein; (ii) directing the Debtors to reclassify the Senior Debt and the TOPrS Claims in different classes; and (iii) granting such other and further relief as this Court deems just.

Dated: New York, New York
November 21, 2007

                KIRKPATRICK & LOCKHART
                PRESTON GATES ELLIS LLP

                By: */s/ Edward M. Fox*
                    Edward M. Fox (EF1619)
                    A Member of the Firm
                Attorneys for Wilmington Trust Company,
                as Indenture Trustee
                599 Lexington Avenue
                New York, NY 10022
                (212) 536-3900