| | |
|---|---|
| MICHAEL J. GARCIA<br>United States Attorney for the<br>Southern District of New York<br>By: MATTHEW L. SCHWARTZ<br>Assistant United States Attorney<br>86 Chambers Street<br>New York, New York 10007<br>Tel.: (212) 637-1945<br>Fax: (212) 637-2750 | HEARING DATE: November 29, 2007<br>TIME:  10:00 AM |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE: | Chapter 11 |
| DELPHI CORPORATION, *et al.*, | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**UNITED STATES OF AMERICA'S RESPONSE TO**
**DEBTOR'S OBJECTION TO THE CLAIM OF THE**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

The United States of America (the "Government"), by its attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submits this response to Debtor's Twenty-Second Omnibus Objection, dated October 26, 2007 (the "Objection"), to the extent that the Debtors object to the claims of the Equal Employment Opportunity Commission (EEOC), listed on the Objection's Exhibit E-1 as claim numbers 16727 and 16728 (the "EEOC Claims").

The Debtors object to the EEOC Claims because they were filed after the July 31, 2006 Bar Date.  While it is true that the EEOC Claims were filed after the Bar Date, they are not untimely under the Bankruptcy Code.  One of the EEOC Claims is actually an administrative claim for Debtors' post-petition liabilities to

the EEOC (which the claims agent appears to have mis-categorized), and so not subject to the Bar Date. The other EEOC Claim, meanwhile, only accrued after the Bar Date and therefore satisfies the multi-factor test for "excusable neglect" that courts apply to claims filed after the bar date. The Court should therefore allow the EEOC Claims.

## BACKGROUND

1.  On October 8 and 14, 2005 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 1101 *et seq.*, as amended (the "Bankruptcy Code").

2.  The Bar Date in these jointly-administered cases was July 31, 2006.

3.  On or about October 18, 2007, the EEOC filed two claims with the Debtors' claims agent. Claim number 16727 asserts an unliquidated priority claim; a copy is attached as Exhibit A. Claim number 16728 asserts an unliquidated priority administrative expense claim; a copy is attached as Exhibit B.

4.  Both EEOC Claims arise out of a putative class action lawsuit filed by the EEOC against the Delphi Corporation ("Delphi") on September 28, 2007, in United States District Court for the Western District of New York. According to the complaint in that action, attached as Exhibit C (the "EEOC Complaint"), Delphi maintains a policy that requires employees to sign a complete release to access their medical records in order to verify claims of sick leave — a policy that violates the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

5.  As set forth at length in the EEOC Complaint, Delphi's unlawful

2

practice was brought to the attention of the EEOC by a former employee, Stanley Straughter (the "Charging Party"), who had been employed by Delphi since May 22, 2006, as a laborer. After calling in sick on August 14 and 15, 2006, the Charging Party returned to work on August 16, 2006, with a note from his doctor. Delphi informed the Charging Party that he needed to complete a release so that Delphi could obtain more information about his medical condition from his personal physician. The Charging Party initially refused to sign, but was told that Delphi would not accept the excuse for his absence without the release. The Charging Party then signed the release, but modified it to permit Delphi only to verify that he was unable to work on August 14th and 15th, but not to discuss his actual medical condition. Delphi did not accept this modified release, and when Charging Party explained that he believed Delphi's policy was unlawful, he was immediately fired for being an "unsatisfactory temporary employee."

6.  The Charging Party first filed a complaint of discrimination with the EEOC on September 22, 2006. Given Delphi's clear policy requiring employees to provide releases for their medical records, on or about September 28, 2006, the EEOC filed the EEOC Complaint on behalf of the Charging Party, as well as a class of similarly-situated Delphi employees.

7.  The EEOC Complaint seeks, *inter alia*, injunctive relief, as well as a monetary relief to make the victims of Delphi's policy whole, including back-pay as well as non-pecuniary losses (*i.e.*, pain and suffering, emotional distress, and the like). The EEOC Complaint also seeks punitive damages.

8.      The EEOC Claims in this bankruptcy are comprised of the monetary component of damages requested in the EEOC Complaint.  Because the class may include employees who worked at Delphi prior to the Petition Date, the EEOC filed both a proof of claim (for the pre-petition portion of its damages) and an administrative claim (for its post-petition damages).  The Charging Party, however, worked for Delphi exclusive after the Petition Date, and he was terminated and brought Delphi's practices to the EEOC's attention after the Bar Date.

## ARGUMENT

## THE EEOC CLAIMS ARE NOT UNTIMELY

9.      Delphi objects to the EEOC Claims because they were filed after the Bar Date.  While that is true, the EEOC Claims are not untimely under the Bankruptcy Code.

10.     As an initial matter, Claim number 16728 is an administrative claim for Debtor's post-petition liabilities, and so is not subject to the Bar Date at all.  *See* Bar Date Order ¶ 5(c) ("Proofs of claim are not required, at this time, to be filed by any Person or Entity . . . which asserts a Claim allowable . . . as an administrative expense of the Debtors' chapter 11 cases.").  Debtors' objection to claim number 16728 should therefore be summarily rejected.  *See generally In re Pro Set, Inc.*, 193 B.R. 812, 815-16 (Bankr. N.D. Tex. 1996) ("Because administrative expense claimants . . . do not file proofs of claim, the deadlines set for filing a proof of claim do not apply to them.") (citing WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2d § 42:14 (1994)).

11.     Claim number 16727, on the other hand, *is* a pre-petition proof of claim that might ordinary be subject to the Bar Date. In these circumstances, however, it is not.

12.     Section 502 of the Bankruptcy Code provides that a proof of claim is not timely filed unless it is permitted under specified conditions in Chapter 7 or under the Federal Rules of Bankruptcy Procedure. *See* 11 U.S.C. § 502(b)(9). In Chapter 11 cases, a proof of claim is filed pursuant to Bankruptcy Rule 3003(c), which provides in relevant part:

> (2) Who Must File. Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.
>
> (3) Time For Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Not withstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

Fed. R. Bankr. P. 3003(c).

13.     Bankruptcy Rule 3003(c) is read in conjunction with Bankruptcy Rule 9006(b)(1), which provides an exception to the requirement under Rule 3003(c) that a proof of claim should be filed before the claims bar date:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

5

Fed. R. Bankr. P. 9006(b)(1).

14.   The Supreme Court defined the term "excusable neglect" in *Pioneer Investment Services v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). In *Pioneer*, a Chapter 11 case, a creditor sought an extension of the claims bar date under Rule 9006(b)(1) after the bar date had lapsed. The Court held that Congress intended Rule 9006(b)(1) to be a "flexible" rule, and defined neglect broadly, permitting courts "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388. After determining that "neglect" is not limited to situations where the failure to timely file was beyond the control of the filer, the majority held that an equitable evaluation must be made to determine whether the neglect was "excusable." *Id.* at 394-95. The Court then determined that the following non-exhaustive list of factors should be considered in each case to determine whether the neglect is "excusable":

> i.   the reason for the delay, including whether it was within the reasonable control of the movant;
> ii.  the danger of prejudice to the debtor;
> iii. the length of the delay and its potential impact on judicial proceedings; and
> iv.  whether the movant acted in good faith.

*Id.* Courts in this circuit also typically consider whether the claimant received notice of the bar date, and the quality of that notice. *See, e.g., Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co., Inc.)*, 166 B.R. 799, 801 (S.D.N.Y. 1994) (listing notice of the bar date as a fifth *Pioneer* factor).

6

15.    Applying these standards, courts in this district routinely permit late-filed claims that accrued after the claims bar date, or in situations where the claimant was unaware that its claim had accrued until after the bar date. For example, in the Enron bankruptcy, Judge Gonzales permitted a multi-million dollar claim filed five months after the bar date, noting that the claimant "was not even aware that it had a claim until after the bar date, and that 'the facts here are sufficiently unique that . . . allowing [the claimant]'s late proofs of claim against the Debtors would [not] create "floodgate" concerns.'" *In re Enron Corp.*, 419 F.3d 115, 132 (2d Cir. 2005) (quoting *In re Enron Corp.*, No. 01-16034 (AJG), order at 12-14 (Bankr. S.D.N.Y. Sept. 23, 2003)).

16.    In this case, the facts giving rise to the EEOC Claims did not occur until after the July 2006 bar date had passed. The Charging Party was fired by Delphi in August 2006. He then reported Delphi's unlawful policy to the EEOC on September 22nd, and the EEOC then promptly opened an investigation. Finding the Charging Party's allegations to have merit, the EEOC initiated an enforcement proceeding on behalf of a class of employees in the Western District of New York on September 28, 2006.

17.    As the EEOC was not aware of Delphi's illegal policy until the bar date had passed, its failure to file a "timely" claim is excusable. With particular respect to the *Pioneer* factors, (i) the delay is not attributable to the EEOC, which did not learn about the claim until after the Bar Date had passed; (ii) Debtors will not be prejudiced by allowing the EEOC claim, as they are still in the midst of processing

7

the timely-filed claims against them; (iii) for the same reason, the less than three-month delay in filing the EEOC's claim (*i.e.*, the time between the July 31st bar date and October 18, 2006, when the claims agent processed the EEOC Claims) will not delay judicial proceedings; and (iv) the EEOC acted in good faith by filing its claim within three months of the Bar Date, and approximately two weeks after filing the enforcement action in the Western District. Each of the *Pioneer* factors, therefore, weighs in favor of permitting the EEOC's claim.

18. *Lone Star Industries v. Rankin County, Mississippi Board of Supervisors (In re New York Trap Rock Corp.)*, 153 B.R. 642 (Bankr. S.D.N.Y. 1993) is directly on point. In that case, the debtor sought to enjoin the Rankin County (Mississippi) Board of Supervisors from prosecuting a lawsuit brought under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq.*, because the County did not file its proof of claim — which, as here, was the monetary damage component of its enforcement action — until after the claims bar date had passed. The CERCLA action in that case concerned sludge oil contamination on debtor's property in Mississippi, and related clean-up costs. Even though the contamination had occurred pre-petition, Judge Schwartzberg concluded that the County's technically untimely claim should be allowed under *Pioneer* because neither the debtor nor the County were aware of the potential CERCLA claim prior to the bar date. *See Lone Star Indus.*, 153 B.R. at 647.

8

19.     The facts are even stronger in this case, where Delphi was obviously aware of its policy of requiring employees to provide medical releases to justify sick leave, and knew or should have known that such a policy was a violation of the Americans with Disabilities Act.  *See* 42 U.S.C. § 12112(d)(4)(A) ("A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."); *Conroy v. New York State Dep't of Correctional Services*, 333 F.3d 88, 95-96 (2d Cir. 2003) (holding that policy of requiring employees to submit diagnoses to justify sick leave violates ADA, and remanding to develop factual record concerning whether policy was consistent with business necessity).  Thus, Delphi's failure to provide notice of the Bar Date directly to the EEOC under these circumstances is an independent reason to reject the objection.  *See In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 898031, at *4 (Bankr. S.D.N.Y. Mar. 29, 2006) ("A debtor must send actual notice of the bar date to any known creditor"); *see also Tulsa Prof'l. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) (publication notice suffices only for creditors whose identities are not "reasonably ascertainable").

**CONCLUSION**

For the foregoing reasons, the Debtor's objection to the EEOC Claims should be denied.

Dated:   November 26, 2007
         New York, New York

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the United States of America


                    By:    /s/ Matthew L. Schwartz
                           MATTHEW L. SCHWARTZ (MS-8159)
                           Assistant United States Attorney
                           86 Chambers Street
                           New York, New York 10007
                           Tel.: (212) 637-1945
                           Fax: (212) 637-2750