## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **DELPHI CORPORATION, _et al._** | § | Case No. 05-44481 (RDD) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF
## JP MORGAN CHASE BANK, N.A. AND BRAZEWAY INC. FOR
## RELIEF FROM AND RECONSIDERATION OF ORDER MODIFYING
## CLAIMS ASSERTING RECLAMATION IDENTIFIED IN DEBTOR'S
## TWENTY-FIRST OMNIBUS CLAIMS OBJECTION

### FACTS

On or about December 29, 2005, Brazeway, Inc. ("Brazeway") sold and assigned to JP Morgan Chase Bank, N.A. ("JP Morgan") its general unsecured claim against Delphi Automotive Systems, LLC, one of the Debtors in the above-captioned cause ("Debtor") in the amount of approximately $1,308,600 (the "Unsecured Claim") as well as a reclamation claim in the amount of approximately $572,700 (the "Reclamation Claim"). Debtor was notified of the Reclamation Claim on or about October 11, 2005 and it is listed by Debtor as Claim No. 122. Proofs of the Unsecured Claim and the Reclamation Claim were timely filed by representatives of JP Morgan on January 6, 2006 (Claim No. 14052). A copy of the Proof of Claim is attached as **Exhibit 1.** Following the assignment, counsel for Brazeway continued to monitor the proceedings and to deal with representatives of Debtor regarding the status of the Reclamation Claim, including negotiations regarding the amount and priority of such claim. Copies of email correspondence and documents related thereto (the "Reclamation Correspondence") are attached hereto as **Exhibit 2** and to the Affidavit of Bruce N. Elliott filed herewith (the "Elliott Affidavit"). As indicated in the Reclamation Correspondence, there is a dispute regarding the amount of the Reclamation Claim; Debtor apparently believes the amount of the Reclamation

Claim is verifiable only up to approximately $102,300 while Brazeway believes the amount of the claim is and should be in the amount filed with the Proof of Claim, that is approximately $572,700. Brazeway's counsel received no response to his July 24, 2007 email (included in the Reclamation Correspondence) or further communication from Debtor regarding the Reclamation Claim. Nevertheless, Brazeway and JP Morgan strongly believe the amount of the Reclamation Claim is true and correct and the Debtor has failed to accurately determine such amount. See Affidavit of Terence Sheehan, CFO of Brazeway, filed herewith and in support of the Motion (the "Sheehan Affidavit").

On September 7, 2007, an email was received from Kurtzman Carson Consultants LLC ("Kurtzman") and reviewed by counsel for Brazeway indicating Debtor's filing of a motion to amend and restate Debtor's then current proposal for treating reclamation claims ("Motion to Amend Reclamation Procedures", Docket No. 9295), apparently requesting, *inter alia*, that all issues related to all remaining reclamation claims (including the Reclamation Claim) would be addressed <u>after</u> a vote upon and presumed confirmation of the Debtor's plan of reorganization then scheduled for as early as November 19, 2007. There was no mention in the said Motion seeking or attempting to seek any other modification or amendment to any of the reclamation claims prior to that time. At that time, as in all other prior instances of notices from the Debtor concerning matters which might affect the Reclamation Claim or the Unsecured Claim, a hard copy of the said motion and the notice was received by both counsel for Brazeway and representatives of JP Morgan in addition to the foregoing electronic notice.

On October 2, 2007, the Second Amended and Restated Final Order Establishing Procedures for Treatment of Reclamation Claims (the "Amended Reclamation Procedures Order") was entered by the court (Docket No. 10409) essentially granting the relief requested in Debtor's Motion to Amend Reclamation Procedures. Following receipt of the Debtor's Motion

to Amend Reclamation Procedures, the Amended Reclamation Procedures Order and subsequent filings related to reclamation claims, neither counsel for Brazeway nor representatives from JP Morgan had any reason to believe that there would be any further objections or modifications to the Reclamation Claim or the Unsecured Claim. Nevertheless, on or about September 27, 2007 an electronic notice was sent to Brazeway's counsel which included the Debtor's Twenty-first Omnibus Objection to various claims (the "Modification Motion", Docket No. 9535). The Certificate of Service from Kurtzman also indicates that aside from the foregoing electronic notice, notice by U.S. mail was sent to JP Morgan to the attention of Mr. Stanley Lim (see Docket No. 10549). However, according to the Affidavits of Howard J. Grossman and Neelima Velavolu (the "JP Morgan Affidavits") filed herewith and in support of the Joint Motion For Relief From and Reconsideration, there is no record that JP Morgan actually received or was aware of such notice. Included in the Modification Motion affecting more than 200 claims, was a request by Debtor to modify the Reclamation Claim reducing it from $572,707.98 to $101,905.91 with the difference being shifted to and made a part of the Unsecured Claim. No other reclamation claim included in the Modification Motion was so drastically affected.

As for Brazeway's counsel, notice of the Modification Motion was received along with several dozen other notices from this case as well as other bankruptcy proceedings all within the space of a few days and was inadvertently deleted (see Elliott Affidavit). Furthermore, on all prior occasions where the Reclamation Claim or the Unsecured Claim may have been affected, counsel for Brazeway also received a hard copy of the motion, proposed order or any relevant notice. That was not the case with the Modification Motion (see Elliott Affidavit).

Similarly, as indicated in the JP Morgan Affidavits there is no indication that actual notice of the Modification Motion was received by JP Morgan. Mr. Stanley Lim, the named recipient and the addressee identified in the Certificate of Service (Docket No. 10549) was no

3

longer working at JP Morgan at the time. Furthermore, at about the time of service, the office of the operations group where such notice was sent was in the process of being relocated (see Velavolu Affidavit). On October 26, 2007, an Order was entered granting, among relief relating to other claims, the Debtor's requested modification of the Reclamation Claim (the "Modification Order", Docket No. 10728). Although it appears JP Morgan may have discovered the possibility of the entry of the Modification Order as early as November 2, 2007, notice of entry of that Order was not sent electronically by Kurtzman until November 7, 2007.

Brazeway and JP Morgan (collectively the "Movants") have together filed a Joint Motion for Relief From and Reconsideration of the entry of the Modification Order as to the Reclamation Claim under B.R.P. 9024, 3008 and other applicable Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.

## LEGAL STANDARD

Bankruptcy Rule 9024 provides that, except in the situations set forth in the rule, "Rule 60 F.R.Civ. P. applies in cases under the Code..." Rule 60(b)(1) of the Federal Rules of Civil Procedure provides that a motion for relief from a judgment or order can be made for "mistake, inadvertence, surprise, or excusable neglect" if such motion is made "not more than one year after the judgment, order, or proceeding was entered or taken." A motion for relief from an order or judgment is within the discretion of the court. *Fed. R. Civ. P. 60(b)*. Bankruptcy Rule 9024 contains an exception to the one year requirement set forth in Rule 60(b) of the Federal Rules of Civil Procedure, which provides that motions for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest can be brought after the one year limitation of Rule 60(b) of the Federal Rules of Civil Procedure. *Fed. R. Bankr. P. 9024(1)*. In any event this Motion is timely brought by the Movants and as quickly as possible under the circumstances.

4

Bankruptcy Rule 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." *Fed. R. Bankr. P. 3008*. Likewise, 11 U.S.C. §502(j) provides that "[a] claim that has been disallowed may be reconsidered for cause." "While the determination of whether 'cause', within the meaning of Section 502(j), is present, 'falls within the equitable judgment of the court and is within the sound discretion of the court', courts generally rely upon the language and interpretations of Federal Rule of Civil Procedure 60(b)." *In re Johansmeyer*, 231 B.R. 467, 470-471 (E.D.N.Y. 1999), quoting *In re Flagstaff Foodserve Corp.*, 56 B.R. 910, 913 (S.D.N.Y. 1986), citing *S.E.C. v. S.J. Salmon & Company, Inc.*, 375 F.Supp. 867, 869 (S.D.N.Y. 1974), and citing *In re Cleanmaster Industries, Inc.*, 106 B.R. 628, 630 (9th Cir. 1989) and *In re Resources Reclamation Corp. of America*, 34 B.R. 771 (9th Cir. 1983). If reconsideration is granted, the court may readjust the claim "according to the equities of the case." *11 U.S.C. §502(j)*.

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), the Supreme Court addressed the concept of "excusable neglect". The Supreme Court held that whether excusable neglect is present is an equitable determination and depends on "all relevant circumstances surrounding the party's omission," including the following factors:

- the danger of prejudice to the debtor
- the length of the delay and its potential impact on judicial proceedings
- the reason for the delay, including whether it was within the reasonable control of the movant
- whether the movant acted in good faith

*Pioneer*, 507 U.S. at 395. "Neglect", according to the *Pioneer* Court, is not limited to situations beyond the control of the movant, and although it does not usually include "inadvertence, ignorance of the rules, or mistakes construing the rules," it does include an inadvertent failure to file a proof of claim prior to the bar date, inattention, or carelessness. *Pioneer*, 507 U.S. at 388.

5

Therefore, even when late filings are caused by inadvertence, mistake or carelessness, the *Pioneer* factors may, in appropriate situations, allow a court to accept such late filings.

Although the "excusable neglect" standard under Bankruptcy Rule 9006(b) in the context of a late-filed claim was at issue in *Pioneer*, the Supreme Court's holding has been applied to what constitutes "excusable neglect" for purposes of Rule 60(b)(1) of the Federal Rules of Civil Procedure and Bankruptcy Rule 9024. *In re Johansmeyer*, 231 B.R. at 471; *Weiner v. Passeretti (In re Eeleaseco, Inc.)*, 219 B.R. 649, 652 (N.D.N.Y. 1998). Indeed, the Second Circuit has broadly applied the *Pioneer* factors to all instances of "excusable neglect" within both the Federal Rules of Civil Procedure and the Bankruptcy Rules. See, for example, *U.S. v. Hooper*, 9 F.3d 257, 259 (2nd Cir. 1993)(applying the *Pioneer* "excusable neglect" standard to Fed. R. App. P. 4(b) "[b]ecause nothing in *Pioneer* limits its interpretation to the Bankruptcy Rules").

However, another test for determining "excusable neglect" under Rule 60(b) motions also appears to have been adopted by bankruptcy courts within the Second Circuit. In *American Alliance Ins. Co., Ltd. v. Eagles Ins. Co.*, 92 F.3d 57 (2nd Cir. 1996), the Second Circuit outlined three factors to determine excusable neglect:

- whether the default was willfull
- whether the movant has a meritorious defense
- the level of prejudice that may occur to the non-defaulting party if relief is granted

*American Alliance*, 92 F.3d at 59, citing *Davis v. Musler*, 713 F.2d 907, 915 (2nd Cir. 1983). Although *American Alliance* was a non-bankruptcy case, other courts have adopted its test when an order or judgment has been entered by default, i.e., without any contest by the opposing party. See *In re Enron, Inc.*, 325 B.R. 114, 118 (S.D.N.Y. 2005).

Because, for the reasons stated below, excusable neglect exists under either the *Pioneer* standard or the *American Alliance* standard for the Movants' failure to timely respond to Delphi's objection to the Reclamation Claim, the Movants hereby request that this Court

reconsider the Modification Order to the extent it disallows and modifies the Reclamation Claim as a reclamation claim and allows it as an unsecured claim.

## APPLICATION

**A.      Excusable Neglect Exists Under the *Pioneer* Standard.**

      *1.      Danger of Prejudice to the Debtor.*

The first *Pioneer* factor is the danger of prejudice to the debtor. The relevant inquiry as to this factor is the potential prejudice Debtor could suffer as a result of the delay. *In re Eeleaseco, Inc.*, 219 B.R. at 652, quoting *Riedel v. Marine Midland Bank*, 1997 WL 176306 at *2 (N.D.N.Y. 1997). The potential loss of estate monies does not, *ipso facto*, result in prejudice to Debtor for purposes of the *Pioneer* factors. *In re Eelecseco*, 219 B.R. at 652; see also *In re R.H. Macy & Co.*, 166 B.R. 799, 802 (S.D.N.Y. 1994) (the prejudice factor, "is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. Were it otherwise, virtually all late filings would be condemned by this factor; they seek to share, with timely filed claims, in the bankrupt's limited resources.")

*In re Johansmeyer*, the debtor moved to have a creditor's claim expunged. The motion was denied, and rather than appealing, the debtor moved the court for reconsideration under Rule 9024. In examining the prejudice to debtor, the *In re Johanesmeyer* court found that it was necessary to examine the merits of the debtor's claim. Because the court found that the debtor's claim lacked merit, it found that no danger of prejudice to the debtor existed. To the contrary, in this case, as indicated in the Reclamation Correspondence and the Elliott Affidavit, the Debtor is aware of and has been provided evidence of the merit of the Reclamation Claim. (See also the Sheehan Affidavit). However, rather than deal with the merits of that claim in the manner seemingly proposed through the Motion and Order Amending Reclamation Procedures, the Debtor attempted to do an "end run" by modifying the Reclamation Claim before confirmation.

The effect on the Reclamation Claim is, of course, devastating; it has been reduced by more than 80% which is highly prejudicial to the Movants. Additional discussion regarding the merit of the Reclamation Claim is set forth in Section B.2. on page 12 below.

2. ***Length of Delay.***

Here, the motion for reconsideration has been brought within thirty (30) days after Movants' actual knowledge of entry of the Modification Order. Courts, when considering motions to extend the time for filing an appeal under Bankruptcy Rule 8002(c) – which motions must be brought within twenty (20) days after the ten (10) day appeal period has expired – have held that such similar delay "will rarely if ever have an impact on judicial proceedings." *In re Enron*, 364 B.R. at 487, citing *Xuchang Rihetai Human Hair Goods, Co. v. Sun and Xie (In re Hongjun Sun)*, 323 B.R. 561, 565 (E.D.N.Y. 2005). Given that the same period is at issue and that no action has been subsequently taken by Delphi bankruptcy estate on the Claim in reliance on the Order, the less than thirty (30) days delay in bringing this Motion will have no substantive impact on the bankruptcy proceedings.

3. ***Reason for Delay.***

Courts have held that the reason for delay weighs against party where he failed to check the docket for weeks (*In re Wechsler*, 246 B.R. at 495) or where the party knew "an order was likely to be forthcoming" (*Crysen/Montenay Energy Co. v. Belcher Co. of N.Y.*, 1993 U.S. Dist. LEXIS 12858, 1993 WL 362360 at *3 (S.D.N.Y. Sept. 17, 1993). These holdings are consistent with Bankruptcy Rule 9022(a) that provides that failure to receive notice of entry of an order "does not relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002."

However, in the courts that have found the reason for delay unacceptable when based on failure to receive an order, in the majority (if not all) of them, the movant creditor had received

sufficient notice of the motion on which the order was entered, and in some, had even appeared at the hearing on the motion. See *In re Wechsler*, 246 B.R. at 494, 495, *Crysen/Montenay*, supra. In considering whether cause for the delay is present, examination of the acts of other parties may be essential to the determination of excusable neglect. *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116 (3rd Cir. 1999). In this case, neither of the Movants had actual notice of the Modification Motion much less any notice of hearing thereon. There was simply no expectation of the entry of any order disallowing, modifying or amending the Reclamation Claim.

Furthermore, even when the cause for the delay is completely within the control of the movant, "excusable neglect" may still exist if the other *Pioneer* factors weigh in favor of the movant. In *Bli Farms v. Greenstone Farm Credit Services (In re Bli Farms)*, 294 B.R. 703 (E.D. Mich. 2003), the movant creditor's only excuse was that its attorney was too busy to know about the order or to file an appeal within the ten (10) day period. This excuse has been given little weight by courts in terms of constituting a credible reason for delay. However, given that the prejudice to the movant creditor outweighed any prejudice to the debtor[1], the length of delay is short, and a minimal impact on the judicial proceedings would occur, the court held that the "reason for delay" factor did not outweigh the other factors and found that excusable neglect was present. *In re Bli Farms*, 294 B.R. at 707. In so holding, the court found that it was clear that the Supreme Court in *Pioneer* did not intend "to exclude reliance on, or consideration of, or [accord] appropriate weight to, the other factors the Court articulated as also, and properly, bearing on the ultimate result." *Id.* Indeed, in agreeing with the Court of Appeals, the *Pioneer* Court found "the lack of any prejudice to the debtor or to the interest of efficient judicial

---

[1] The debtor was the plaintiff in the adversary proceeding for which the order sought to be appealed was entered.

9

administration, combined with the good faith of [the movant] and [its] counsel, weigh strongly in favor of permitting the tardy claim." *Pioneer*, 507 U.S. at 397-398.

The holding in *In re Bli Farms* is not inconsistent with other decisions of this Court. For example, in *In re Enron Corp.*, 298 B.R. 513, 525 (S.D.N.Y. 2003), citing *In re Keene Corp.*, 188 B.R. 903, 909 (S.D.N.Y. 1995), this Court held that "[t]he relative weight...to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party." It went on to quote *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (W.D. Tex. 1998), which concluded that with respect to the *Pioneer* factors "[n]o single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other. *In re Enron Corp.*, 298 B.R. at 525.

In addition, the policies underlying Chapter 11 bankruptcies are to provide for reorganization of the debtor and avoiding forfeitures by creditors. *Pioneer*, 507 U.S. at 389, citing *U.S. v Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983).

### 4. *Good Faith.*

The courts have recognized that the good faith element under the *Pioneer* standard is satisfied as long as the movant did not purposely or intentionally evade any time restraints. As evidenced in the JP Morgan Affidavits and the Elliott Affidavit, the Movants did not knowingly and willfully ignore the deadline established in the Modification Motion; they simply had no actual knowledge of same. Neither Brazeway nor JP Morgan were ignoring the proceedings. To the contrary, counsel for Brazeway and representatives of JP Morgan regularly monitored the bankruptcy proceedings and any filings which might affect the Reclamation Claim or the Unsecured Claim (see Elliott Affidavit and Velavolu Affidavit).

**B.    Excusable Neglect Exists Under the *American Alliance* Standard.**

10

### 1.    *Willful Factor.*

The first factor under *American Alliance* is whether the movant's default (i.e., failure to respond) was willful.

In *In re Enron*, 325 B.R. 114, the creditor received adequate and sufficient notice of the debtor's objection. However, even though the creditor knew its claim was being disputed by the debtor, "it did not believe that [its claim] would be the subject of any objection by the [d]ebtors", and therefore purposefully chose not to read the debtor's objection. *In re Enron*, 325 B.R. at 119. The court found the circumstances different from that in *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631 (2nd Cir. 1998), where the court refused to vacate the default, and held that the relevant inquiry should be on "what the creditor actually knew, and not what, as a legal matter, it could be held to have known based upon the notice it received." *Id.*

> [The creditor] did not make an intentional decision to allow the Court to enter an order expunging the [c]laim inasmuch as it did not know, for purposes of determining whether the act was deliberate, that an objection to the [c]laim was pending. Further,[the creditor]'s actions, once it received notice of the [o]rder, are inconsistent with any argument that its default was a deliberate act. Rather, it shows that had [the creditor] been aware of the pendency of the [o]bjection to its [c]laim, it would have responded to the [o]bjection rather than allow the [c]ourt to enter an order expunging its [c]laim without opposition. In addition, there is no evidence, or even an assertion, that [the creditor] was attempting to delay the claims process or that entry of the [o]rder was intended as part of some strategy or plan to advance its interests.

*In re Enron*, 325 B.R. at 119-120.

The Movants had no actual notice that the Debtors intended to modify the Reclamation Claim. Their actions after discovering that an order affecting the Reclamation Claim are inconsistent with any assertions that it knew about the Debtors' objection prior to the October 26, 2007 hearing, and that the Movants were attempting to delay the claims process or allowed entry

of the order to somehow advance its interest. The Modification Order was not entered as a result of the Movants' willful actions.

### 2. *Meritorious Defense.*

To satisfy the meritorious defense factor, "the defense need not be ultimately persuasive at this stage." *American Alliance*, 92 F.3d at 61. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Id.*, quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988). A claim filed in a bankruptcy proceeding is prima facie valid if the claim alleges facts sufficient to support the claim. *In re Woodmere Investors Limited Partnership*, 178 B.R. 346, 354-355 (S.D.N.Y.1995). Once the creditor has established its prima facie case, the burden of going forward then shifts to the debtor to produce evidence sufficient to negate the prima facie validity of the filed claim. *Id.* See also *In re Galloway*, 220 B.R. 236, 243 (E.D.P.A.1998) ("Upon filing an objection, the Debtor bears the burden of going forward and presenting evidence to rebut, or cast doubt upon, the creditor's proof of claim."). To satisfy this burden, "the objector must produce evidence equal in force to the prima facie case ...which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny International, Inc.*, 954 F.2d 167, 173-174 (3rd Cir.1992) (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991)).

Here, if the Movants would have responded to the Debtor's objection to the Reclamation Claim, the Debtor would have had to affirmatively produce evidence that rebutted the creditor's claim. See *In re Woodmere Investors*, 178 B.R. at 354-355 (debtor's mere assertions deemed insufficient as evidence to refute creditor's prima facie evidence of claim). However, in this case, the order was entered without any response from Movants, and the Debtor never had to satisfy its burden of negating the Reclamation Claim.

12

As the Reclamation Correspondence and the Sheehan Affidavit indicate, the Debtor has been provided evidence of the merit of the Reclamation Claim. The disagreement between Debtor and the Movants with respect to the amount of the Reclamation Claim and the Debtor's painfully flawed method of calculation was highlighted in the correspondence of July 24, 2007 (see Reclamation Correspondence). The Debtor made no response thereto and indeed until the filing of the Modification Motion, made no indication that any proposed modification would be forthcoming. The Debtor's actions have, however, effectively precluded the Movants from having the opportunity to contest the Debtor's position and support the Reclamation Claim in a fair and equitable manner before the Court. Indeed, but for the Debtor's refusal to permit Brazeway to complete Brazeway's inventory audit at the Lockport, New York facility, Brazeway would have additional indisputable evidence supporting the amount of the Reclamation Claim as filed. Furthermore, as indicated in the Sheehan Affidavit, the Debtor has inexplicably failed to sufficiently consider inventory shipped by Brazeway to the Debtor's Texas/Mexico facility. In light of the foregoing, the meritorious defense factor of the *American Alliance* test is unquestionably satisfied.

### 3. *Prejudice to Debtor.*

As with the *Pioneer* standard, mere delay is generally not sufficient to demonstrate a sufficient level of prejudice to warrant the denial of a motion for reconsideration. *In re* Enron, 325 B.R. at 120, citing *Davis v. Musler*, 713 F.2d 907, 916 (2nd Cir. 1983). A strong preference exists that courts resolve disputes on their merits. *In re* Enron, 325 B.R. at 118, citing *Brien v. Kullman Industries, Inc.*, 71 F.3d 1073, 1077 (2nd Cir. 1995). In the bankruptcy context, courts have expanded this same principle and held that "claimants have the right to have their claims determined with finality." *In re* Enron, 325 B.R. at 120, quoting *In re JWP Information Services, Inc.*, 231 B.R. 209, 213 (S.D.N.Y. 1999). In order to achieve the desire to resolve disputes on

13

the merits, "courts resolve any doubts in favor of the movant in order to increase the likelihood that disputes will be resolved on their merits." *In re Enron*, 325 B.R. at 118, citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2nd Cir. 2001).

Because there is no evidence of any prejudice to the Debtor, and the favored result is to allow the Movants' Reclamation Claim to be resolved on its merits, the Movants' request for reconsideration should be granted.

## REQUEST FOR RELIEF

WHEREFORE, the Movants respectfully request this court to enter an order:

(a)     Granting the Motion for Relief and Reconsideration; and

(b)     Vacating and setting aside the Modification Order as to the Reclamation Claim; and

(c)     Reinstating the Reclamation Claim in the amount set forth in the JP Morgan Proof of Claim; and

(d)     Permit the disposition of the Reclamation Claim to be made pursuant to and consistent with the provisions of the Order to Amend Reclamation Procedures; and

(e)     Granting such other and further relief as is just and proper.

Dated:  November 26, 2007

_____ /s/ Bruce N. Elliott_____
Bruce N. Elliott
Attorney for Brazeway, Inc./JP Morgan Chase
     Bank, N.A.
350 South Main Street, Suite 400
Ann Arbor, MI   48104
(734) 761-9000
elliott@cmplaw.com
(P28770)

H:\CLM\Brazeway\Delphi\Memorandum of Law 11.26.07.doc

14