**Hearing Date And Time: November 29, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
     In re                                : Chapter 11
                                          :
DELPHI CORPORATION, et al.,               : Case No. 05-44481 (RDD)
                                          :
                    Debtor.               : (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO INTERMET CORPORATION'S MOTION
FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby object (the "Objection") to Intermet Corporation's Motion For Payment Of Administrative Expense Claim Pursuant To 11 U.S.C. §§ 503(a), 503(b), And 507(a)(2) (Docket No. 10874) (the "Motion") and respectfully represent as follows:

### Preliminary Statement

1. The Motion has no merit.  Intermet Corporation ("Intermet") asserts the right to a payment of an administrative expense claim, but fails to address the legal standard for payment of such a claim in the Second Circuit: a claim arising out of a postpetition transaction between the creditor and the debtor, which is allowable only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's estate in the operation of its business.  On the contrary, a claim based on a liability that was contemplated prepetition and memorialized in a prepetition contract cannot be treated as an administrative expense.

2. Intermet's alleged claim does not arise from a transaction entered into with a debtor-in-possession.  Instead, a prepetition agreement between Intermet and DAS LLC expressly contemplated the refund that Intermet seeks to recover as an administrative expense here.  Moreover, Intermet, in previous public filings as its own debtor-in-possession, refuted the position it is currently advocating here with respect to the right of a prepetition contract counterparty to receive an administrative expense claim for damages contemplated prepetition.

3. Because the contractual relationship between the parties arose prepetition and the consideration given by Intermet under the agreement was provided to DAS LLC prepetition, Intermet is not entitled to an administrative expense claim, and the Motion must be

2

denied. Intermet's claim is nothing more than a prepetition contingent claim, which, as described below, has been waived and released by Intermet and is otherwise barred.

## Background

4.  On December 12, 2003, DAS LLC and Intermet entered into a letter agreement (the "Agreement") under which Intermet agreed to provide an advance rebate of $600,000 to DAS LLC in consideration for future sales of the GMT-900 front steering knuckles. See Motion, Exhibit A. DAS LLC agreed under the Agreement to purchase a minimum of 750,000 sets of steering knuckles per year for five years or 100% of DAS LLC's sourced volume, whichever was greater. Contemplating that DAS LLC might not satisfy the minimum purchase requirement, the Agreement provides that if DAS LLC did not purchase the minimum amount, DAS LLC would refund the advance rebate proportionally to the shortfall based on the minimum quantity (the "Refund").

5.  Over the life of the Agreement, including prepetition years, DAS LLC did not meet the minimum purchase amount. DAS LLC, however, has not provided any formal notice that the Agreement has been terminated.[1] Although Intermet asserts that the Agreement has been terminated by virtue of the Expedited Motion for Orders Under 11 U.S.C. §363 and Fed. R. Bankr. P. 2002, 6004, and 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date and (B) Authorizing and Approving Sale by Delphi Automotive Systems LLC and Delphi Technologies, Inc. of Certain Equipment and Other Assets Primarily Used in Debtors' Saginaw Chassis Business Free and Clear of Liens ("Saginaw Chassis Asset Sale Motion"), that

---

[1]  The annual shortfall on which Intermet relies in the Motion as the basis for the refund first occurred in 2004. See Motion, Exhibit C. Intermet's argument for administrative expense priority is predicated not on when the Agreement was made, or even when the shortfall occurred, but when Intermet decided to send a letter demanding payment.

3

proposed sale includes equipment only. DAS LLC does not intend to assign contracts as a part of that proposed sale and the rights and obligations of DAS LLC and Intermet under the Agreement will remain unaltered.[2] Intermet now seeks to recover $417,200.00 of the $600,000.00 advance rebate paid in 2003 due to DAS LLC's failure to meet the minimum purchase requirement over the life of the Agreement. Despite having no contractual right to make such a demand, Intermet in a letter dated October 19, 2007 demanded payment of the Refund within ten days.[3] By the Motion, Intermet asks the court to allow an administrative claim in the amount of $417,200.00, which represents the proportional shortfall contemplated under the prepetition Agreement between DAS LLC and Intermet.

Argument

A. <u>Intermet Is Not Entitled To An Administrative Expense Claim Under Section 503 Of The Bankruptcy Code</u>

6. Intermet's claim for the Refund does not qualify under section 503(b)(1)(A) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), for administrative expense priority. Section 503(b)(1)(A) provides:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –
> (1)(A) the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. § 503(b)(1)(A). This Court has recognized that for a claim to receive administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code, the claim must "(1) arise

---

[2] Intermet alleges that the cessation of DAS LLC's orders constitutes termination. A shortfall does not constitute termination under the Agreement, as evidenced by the fact that the shortfall was the largest in 2004, and the parties continued to perform under the Agreement. According to Exhibit C to the Motion, DAS LLC ordered a significant number of parts in 2007, and DAS LLC's obligations under the contract continue regardless of the proposed sale of assets at the Saginaw facility.

[3] Although Intermet asserts that the Debtors failed to respond to its October 19, 2007 demand for payment, counsel for the Debtors contacted counsel for Intermet by telephone shortly after its receipt and rejected Intermet's demand for payment of the Refund as an administrative expense claim.

4

out of a postpetition transaction between the creditor and the . . . debtor . . . and (2) be allowable only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's estate in the operation of its business." In re A.C.E. Elevator Co., Inc., 347 B.R. 473, 480 (Bankr. S.D.N.Y. 2006) (Drain, B.J.). This Court has noted that "the claim will have a first priority only if the transaction giving rise to it occurred postpetition." Id. at 480 (quoting Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.3d 98, 101 (2d Cir. 1986)).

       7. When a liability is contemplated by the parties upon the signing of an agreement, even if a future occurrence is required to trigger that liability, the Second Circuit and lower courts in this circuit have found that resulting claims arise at the time of contract formation. See In re Manville Forest Products Corp., 209 F.3d 125, 129 (2d Cir. 2000); Pearl-Phil GMT (Far East) Ltd. v. The Caldor Corp., 266 B.R. 575 (S.D.N.Y. 2001) ("clear weight of case law in this Circuit . . . recognizes that contract-based bankruptcy claims arise at the time the contract is executed"); Cohen v. Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 696 (Bankr. S.D.N.Y. 1992) ("Where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as a prepetition liability where the contract was executed prepetition."); In re Chateaugay, 102 B.R. 335, 351 (Bankr. S.D.N.Y. 1989) ("All claims against the debtor whether or not contingent or unliquidated, will be dealt with in the bankruptcy case."). The first requirement of section 503(b)(1)(A), therefore, cannot be met when a claim is based on a prepetition contract.

       8. The second requirement for a claim to receive administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code focuses on the consideration given under a contract. This Court has found that "administrative priority is not based simply on an obligation's due date, but, rather, depends on the date of the consideration underlying the claim."

5

A.C.E. Elevator Co. Inc., 347 B.R. at 481 (citing McFarlin's, 789 F.3d. at 101). To qualify for administrative expense priority, the consideration must be given to the debtors or trustee. Id. at 479. Consideration provided prepetition, therefore, cannot form the basis for an administrative expense claim.

        9.      Here, the Agreement was signed almost two years prior to the filing of these chapter 11 cases. Additionally, Intermet's consideration, the advance rebate, was given at that same time 2003. Intermet cannot, therefore, establish either of the requirements for an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code. Although the parties continued to operate under the Agreement postpetition, the only postpetition consideration provided by Intermet, i.e., the goods supplied, was paid for by DAS LLC in its ordinary course of business.[4] Intermet's claim for the Refund cannot be given administrative priority simply because DAS LLC's shortfall continued postpetition.

        10.      Intermet itself does not believe the position it is advocating. Indeed, Intermet filed for chapter 11 protection on September 29, 2004 and remained a debtor-in-possession. During its chapter 11 case, Intermet objected to various claimants' demands for administrative expense claims. In one such objection, a copy of which is attached hereto as Exhibit A, Intermet acknowledged that "[f]or decades, courts have held that commission or termination payments are not entitled to priority when the consideration given for those payments occurred prior to the bankruptcy filing." See Exhibit A at 10.[5] Thus, following

---

[4]    According to the figures provided on Exhibit C of the Motion, 29% of the shortfall arose in 2004, which was prepetition, and another 28% of the shortfall arose in 2005, nine months of which was prepetition. So even if Intermet's argument were supported by the law, which it is not, that argument, that it is the Debtors' business activities that give rise to the claim of a Refund, is not supported by the facts, because a significant portion of the shortfall arose prepetition.

[5]    In its Omnibus Objection Of Intermet Corporation And Tool Products, Inc. To Applications For Allowance And Payment Of Administrative Expenses Filed By: (A) Sullivan Precision Components, Inc., And (B) Engineered

*(cont'd)*

6

Intermet's own argument, even if DAS LLC had expressly terminated the Agreement postpetition, the damages arising from such termination, which were contemplated prepetition, would not be entitled to priority. Additionally, despite having cited Second Circuit and other case law in its own chapter 11 case for the proposition that prepetition consideration cannot form the basis for an administrative expense claim, Intermet fails to cite any Second Circuit or Southern District of New York law in the Motion. Instead, the cases that Intermet cites in the Motion fail to address the crux of the issue, i.e., when a claim arises. Conveniently, the Motion focuses on "damages that arise from a debtor's postpetition action" without acknowledging that the law in the Second Circuit is that contingent contract claims expressly contemplated in such agreement arise at the time of contract formation, which in this case was prepetition. See Motion at 4. Moreover, Intermet does not dispute that the consideration underlying its alleged claim was provided prepetition to DAS LLC. Thus, the Motion should be denied.

B.  Intermet's Claim For The Refund Is A Prepetition Contingent Claim

11.  Because Intermet's claim for the Refund arises from a prepetition contract, it should be considered a prepetition claim. The Second Circuit has noted that the definition of a "claim" under the Bankruptcy Code is a broad one that includes contingent and unliquidated debts. See 11 U.S.C. § 101(5)(A); In re Manville, 209 F.3d at 128. The Second Circuit has "said that contingent claims refer to obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the

---

*(cont'd from previous page)*
Precision Components, Inc. (Bankr. E.D. Mich., Case No. 04-67597), Intermet cited one Second Circuit case and two cases from the Bankruptcy Court for the Southern District of New York. Intermet noted in that objection that the Second Circuit has held that "[e]ven though the debtor filled the orders and received payment from its customers after the petition date, . . . the representative's claim was not a debt incurred (or a benefit provided) after the petition date and was therefore not entitled to priority." Id. at 11, citing Denton & Anderson Co. v. Induction Heating Corp., 178 F.2d 841, 843-44 (2d Cir. 1949).

original relationship between the parties was created." In re Manville, 209 F.3d at 128-29, (citing United States v. LTV Corp. (In re Chateaugay Corp.), 944 F.2d 997, 1003 (2d Cir. 1991)).

   12. The broad definition of a claim under the Bankruptcy Code "makes perfect sense in light of the Code's design to provide for a comprehensive discharge of liabilities so that the debtor may reorganize effectively." Pearl-Phil GMT, 266 B.R. at 581. The Southern District of New York has noted that "[i]f bankruptcy claims did not arise until breach, the debtor could be faced with lingering liabilities well after reorganization." Id.

   13. Here, the Agreement was executed on December 12, 2003. This agreement defined the terms of the relationship between Delphi and Intermet, and it expressly contemplated Delphi's potential failure to meet minimum quantity commitments. Although the right to payment may not have been fully enforceable until after the Petition Date, Intermet had a contingent claim that arose at the time it entered into the Agreement. Just as in Pearl-Phil GMT (Far East) Ltd. v. The Caldor Corp., this "postpetition breach of a prepetition contract gives rise only to a prepetition claim." 266 B.R. at 582.

C. <u>Intermet Waived And Is Barred From Asserting A Claim For The Refund</u>

   14. Intermet has expressly released all prepetition claims against the Debtors as a part of the settlement of its proofs of claim numbers 14107, 14489, and 15770 (the "Settlement Agreement"). The Settlement Agreement states that Intermet:

> Release[s] and waive[s] any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Claim and which the Releasing Parties have, ever had, or hereafter shall have against the Debtors based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission occurring before the Petition Date.

Settlement Agreement, a copy of which is attached hereto as <u>Exhibit B</u>, at ¶ 1.

8

15. Even if Intermet had not waived its right to assert a prepetition claim for the Refund, Intermet failed to file a proof of claim for its contingent claim related to the Refund prior to the July 31, 2006 bar date in these cases. Because Intermet did not file a proof of claim asserting its contingent claim for the Refund, it is now barred from doing so by the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) and Fed. R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order"). Thus, Intermet is precluded, both by the Settlement Agreement and the Bar Date Order, from asserting a prepetition claim for the Refund.

## Conclusion

16. Intermet's contingent claim for the Refund arose at the time the parties entered into the Agreement, and Intermet gave DAS LLC consideration in the form of the advance rebate. DAS LLC's failure to meet minimum purchase obligations was clearly contemplated under the prepetition Agreement. The Refund, therefore, cannot form the basis of an administrative expense claim. Accordingly, the Motion should be denied.

## Memorandum Of Law

17. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) denying the Motion and (b) granting them such other and further relief as is just.

Dated: New York, New York
       November 26, 2007

                    SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and –

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession