**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (ID-9980)
590 Madison Avenue
New York, New York 10022-2524
Telephone: 212-872-1000
Facsimile: 212-872-1002

-and-

David M. Dunn (DD-3220)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202-887-4000
Facsimile: 202-887-4288

Counsel for the TAI Unsecured Creditors Liquidating Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                                           :
In re:                                                     :
                                                           :      Chapter 11
DELPHI CORPORATION, *et al.*,                              :      Case No. 05-44481 (RDD)
                                                           :
                          Debtors.                         :      (Jointly Administered)
                                                           :
---------------------------------------------------------- x

### SUPPLEMENTAL RESPONSE OF THE TAI UNSECURED CREDITORS LIQUIDATING TRUST TO DEBTORS' TWENTIETH OMNIBUS OBJECTION

The TAI Unsecured Creditors Liquidating Trust (the "Trust"), as the estate representative

of Tower Automotive, Inc. and certain of its subsidiaries and affiliates (collectively, "Tower")

for purposes of the claims asserted against the above-captioned debtors and debtors-in-

possession (collectively, the "Debtors" or "Delphi"), respectfully submits the following

supplemental response (the "Supplemental Response") to (i) the Debtors' Twentieth Omnibus

Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate

And Amended Claims, (B) Insufficiently Documented Claims, (C) Claims Not Reflected On

Debtors' Books And Records, (D) Untimely Claims, And (E) Claims Subject To Modification,
Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Consensually
Modified And Reduced Tort Claims, And Lift Stay Procedures Claim Subject To Modification
(the "Twentieth Omnibus Objection") and (ii) the Debtors' Amended Statement of Disputed
Issues with Respect to Proof of Claim Number 16573 (Tower Automotive Inc.) (the "Amended
Statement of Disputed Issues").

### Preliminary Statement

1.      In the Amended Statement of Disputed Issues, the Debtors do not dispute that
Tower has established a *prima facie* preference claim, as provided for in Bankruptcy Code
section 547.  Instead, the Debtors assert two affirmative statutory defenses – the subsequent new
value and ordinary course of business defenses – but fail to meet their burden to establish either
of these defenses by a preponderance of the evidence.  In fact, in their <u>second</u> attempt at a
statement of disputed issues, other than attaching summary spreadsheets for preference period
payments, the Debtors offer no documentary evidence, expert evidence, or affidavits in support
of either of their affirmative defenses in contravention of the requirements of the Claims
Objection Procedures Order.  Notably, the Debtors fail to cite to even one case in support of the
methodology used to support their claimed defenses.

2.      Additionally, although the Debtors concede that they must establish that the
payments at issue were both ordinary between the parties and ordinary in the industry, Debtors
present no shred of evidence and no discussion whatsoever with regard to whether the subject
payments were ordinary in the industry.  Instead, the Debtors base their entire ordinary course
defense solely on the so-called "subjective test," and only provide a limited historical analysis of
the relationship between the parties which self-servingly covers a period of time in 2004 when
Tower was already experiencing financial distress.  Basing the subjective ordinary course

2

analysis on this period of time is insufficient to provide a baseline for an ordinary course of business analysis.

3.        Even using the Debtors' assumptions, the Trust's preliminary analysis shows that the Trust still has, at a minimum, a significant preference claim against the Debtors in excess of $ 1.3 million.  *See* Trust's Analysis of Delphi's Ordinary Course and New Value Claims, attached hereto as Exhibit E.  Moreover, the Trust has not had the benefit of documentary evidence, Debtors' expert report in support, or any discovery which may provide the Trust with additional claim amounts.

4.        Although a defendant in a preference action must prove its statutory defenses by a preponderance of the evidence, including, for instance, by providing an expert report in support of their defenses, the Debtors have refused to modify the Claim Objection Procedures Order to create a fair and efficient process for adjudicating the Amended Tower Claim.  Instead, the Debtors have insisted that the Trust provide an expert declaration at this juncture, even though such an expert for a preference plaintiff would always be used in rebuttal of a defendant's expert. The Trust has reluctantly complied with this demand, but reserves the right to supplement and/or modify all exhibits and affidavits as necessary once discovery has commenced and the Debtors have complied with their burden of proof.

5.        With respect to Tower's fraudulent transfer claim pursuant to Bankruptcy Code section 548, the Debtors concede Tower's insolvency in the Amended Statement of Disputed Issues, but baldly assert that Tower received reasonably equivalent value for the transfers at issue.  Without discovery on the totality of the circumstances with respect to the transactions between Tower and the Debtors, the Trust cannot address whether the Debtors' statement has any merit.  Accordingly, the Trust reserves the right to supplement its response on this issue.

3

6.      In sum, the Debtors have failed to meet their burden of proof with regard to asserted defenses.  Without discovery, it is premature to assess whether additional facts and circumstances related to the Debtors' new value or ordinary course of business defenses either (i) changes the defense analysis and/or (ii) precludes the Debtors from maintaining such defenses altogether.

### Background Relevant to Tower's Claims

7.      On February 5, 2005, Tower filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Tower Petition Date").  Tower's bankruptcy proceedings were jointly administered under Case No. 05-10578 (ALG).  The First Amended Plan of Tower Automotive, Inc., and its Debtor Subsidiaries under Chapter 11 of the Bankruptcy Code with Technical Modifications (the "Plan") was confirmed on July 11, 2007, and went effective on July 31, 2007 (the "Effective Date").  Pursuant to Article IX of the Plan, the Trust was established on the Effective Date.

8.      In Article IX of the Plan, the Trust was appointed as the estate representative, within the meaning of section 1123(b) of the Bankruptcy Code, for a number of purposes, including pursuing certain claims against entities to which Tower made avoidable transfers prior to the commencement of its cases.  The Trust was given the right to pursue claims against the Debtors for the benefit of the Trust's beneficiaries.

9.      On October 8 and 14, 2005, the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Title 11 of the United States Code.  The Debtors' bankruptcy proceedings are being jointly administered under Case No. 05-44481 (RDD).

10.     On July 31, 2006, Tower timely filed Tower Claim No. 15221 (the "Tower

Claim"), listing the claimed amount as "unliquidated," but in the attachment thereto explaining

that the Tower Claim was premised upon the right to recover certain avoidable transfers.  A true

copy of the Tower Claim is annexed hereto as Exhibit A.

11.     On October 31, 2006, the Debtors filed the Debtors' (I) Third Omnibus Objection

(Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Claims

With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records

And (C) Claims Subject To Modification And (II) Motion To Estimate Contingent And

Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (the "Third Omnibus Objection").  In the

Third Omnibus Objection, the Debtors objected to the Tower Claim as "unsubstantiated."

12.     On November 22, 2006, Tower filed a timely response (the "Response") to the

Debtors' Third Omnibus Objection.  In the Response, Tower reiterated that the Tower Claim

sought recovery of certain avoidable transfers to the Debtors, including those recoverable under

section 547(b) of the Bankruptcy Code.  The Debtors subsequently adjourned the hearing on the

Third Omnibus Objection and, to date, the objection remains outstanding.

13.     On December 6, 2006, this Court entered an Order Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bank. P. 2002(m), 3007, 7016, 7026, 9006, 9007 And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (the "Claims Objection Procedures Order").  Among other

things, the Claims Objection Procedures Order contains a schedule for briefing and eventually

adjudicating the Debtors' claims objections.

14.     On January 22, 2007, Tower filed a Motion for Relief from Stay (the "Stay

Motion") with this Court seeking, among other things, leave to timely initiate an adversary

5

proceeding against the Debtors to recover the transfers set forth in the Tower Claim, and to do so

prior to the expiration of the applicable limitations period under section 546(a) of the Bankruptcy

Code.

15.     On February 2, 2007, Tower and the Debtors entered into a stipulation resolving

the Stay Motion (the "Stipulation"), an executed copy of which is annexed hereto as Exhibit B.

In the Stipulation, the parties agreed that the Tower Claim was timely submitted, that it sought

the recovery of avoidable transfers, and that it would be resolved through the claims

reconciliation process in the Debtors' chapter 11 cases (as outlined by the Claims Objection

Procedures Order), rather than through an adversary proceeding in Tower's chapter 11

proceedings.  The Stipulation also provided that the Tower Claim could be amended in any

manner permitted by applicable law.

16.     On March 19, 2007, Tower timely filed Amended Claim No. 16573 (amending

Claim No. 15221) in the amount of $14,540,878.50 (the "Amended Tower Claim").  Consistent

with the basis for the Tower Claim, the Amended Tower Claim contains an itemized list of all

the avoidable transfers made by Tower to the Debtors, which transfers total $14,540,878.50 in

the aggregate.  A true copy of the Amended Tower Claim is annexed hereto as Exhibit C.

17.     On August 24, 2007, the Debtors filed the Twentieth Omnibus Objection.

Through the Twentieth Omnibus Objection, the Debtors sought an order from this Court

permitting the disallowance and expungement of certain claims filed against the Debtors' estates

on procedural grounds.  In Exhibit C-2 to the Twentieth Omnibus Objection, the Debtors sought

to disallow and expunge the Amended Tower Claim on the basis that it was an "untimely books

and record claim."

6

18.     As a result of discussions between counsel, on September 24, 2007, the Trust filed its response to the Twentieth Omnibus Objection (the "Response") wherein the Trust explained that the Debtors had agreed not to pursue their technical objections to (1) the timeliness of the Amended Tower Claim, or (2) the absence of the asserted liability underlying the Amended Tower Claim from the Debtors' books and records.  A true copy of the Response is annexed hereto as Exhibit D.  Instead, the Response noted that the Twentieth Omnibus Objection would be adjourned as to the Amended Tower Claim and the parties would proceed with an adjudication on the merits of the Amended Tower Claim in accordance with the Claims Objection Procedures Order.  In an abundance of caution, however, the Trust reserved the right to respond to the subsequent assertion by the Debtors of any non-merits based objection(s) to the Amended Tower Claim.

19.     On October 2, 2007, the Debtors filed the Notice Of Claims Objection Hearing With Respect To Debtors' Objection To Proof Of Claim No. 16573 (Tower Automotive, Inc.)  The notice scheduled an evidentiary hearing on the merits of the Amended Tower Claim for December 6, 2007.

20.     On October 10, 2007, the Debtors filed a Statement Of Disputed Issues With Respect To Proof Of Claim Number 16573 (Tower Automotive, Inc.) (the "Initial Statement of Disputed Issues").

21.     On October 12, 2007, the Trust and Debtors conducted the meet and confer required by the Claims Objection Procedures Order.

22.     Subsequent to the meet and confer and before the Trust filed its Supplemental Response, Debtors represented to the Trust that they did not intend to rely on the October 10,

2007 filing, and would replace the Initial Statement of Disputed Issues.  Debtors also adjourned

the evidentiary hearing set for this claim objection, which is now scheduled for January 10, 2008.

23.    On November 20, 2007, the Debtors filed the Amended Statement Of Disputed

Issues.

24.    This Supplemental Response is timely filed pursuant to the one day extension to

file granted by the Debtors.

## Supplemental Response

### I.    The Debtors' Amended Statement of Disputed Issues Fails to Satisfy the Requirements of the Claims Objection Procedures Order

25.    The Debtors were the authors and primary proponents of the process contained

within the Claims Objection Procedures Order.  Despite this fact, they have disregarded the

provisions of the order by filing an Amended Statement of Disputed Issues that is inadequate.

With respect to such a statement, the Claims Objection Procedures Order provides that the

Debtors must "set[] forth the primary reasons why the claim should be disallowed … including,

but not limited to the material factual and legal bases upon which the Debtors will rely in

prosecuting the claims objection … [and] the Statement of Disputed Issues *shall also include*

*documentation supporting the disallowance* …."  Claims Objection Procedures Order, p. 8

(emphasis added).

26.    Contrary to the direction of the Claims Objection Procedures Order, the Amended

Statement of Disputed Issues does not contain a sufficient factual basis for disallowance of the

Trust's claim.  The Debtors have merely attached a summary graph and spreadsheets, without

providing sufficient documentary evidence, such as the historical data upon which they rely,

invoices, checks, an expert affidavit or witness affidavit with regard to the veracity of the

information contained in the summary spreadsheets.

8

27.     Moreover, the Bankruptcy Code clearly states that "the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."  11 U.S.C. § 547(g).  A creditor must prove its affirmative defenses by a preponderance of the evidence.  *See In re 360Networks (USA) Inc.*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005) (finding that "[t]he burden is on the preference defendant to prove each element of § 547(c)(2) by a preponderance of the evidence") (*citing* section 547(g) and *In re Roblin Indus., Inc.*, 78 F.3d 30, 39 (2d Cir. 1996)); *In re Teligent, Inc.,* 315 B.R. 308, 315 (Bankr. S.D.N.Y. 2004) (holding that creditor defendant had burden of proof by a preponderance of the evidence to establish a new value defense).  As set forth in more detail below, Debtors have failed to meet their burden to establish an affirmative defense to any of the Trust's preference claims.[1]

28.     To the extent the Debtors seek to further amend their Amended Statement of Disputed Issues and/or submit a new exhibit, the Trust hereby reserves the right to amend this Supplemental Response accordingly.

## II.    The Debtors Have Not Satisfied Their Burden of Proof as to Either Affirmative Statutory Defense to Tower's Preference Claims

29.     In the Amended Statement of Disputed Issues, the Debtors do not dispute that the Amended Tower Claim asserts a *prima facie* case under Bankruptcy Code section 547.  Thus, the Debtors do not dispute that (1) they received $14,540,878.50 in transfers from Tower during the applicable preference period; (2) the payments were to or for the benefit of a creditor; (3) the

---

[1] In pursuing the Bankruptcy section 547 and 548 claims against the Debtors, the Trust is a liquidating trust without control over access to all pertinent documents that may be at issue in analyzing the substance of the relationship between Tower and the Debtors.  Moreover, no substantive discovery has been conducted with regard to Tower's claims against the Debtors.  Counsel for the Trust received an initial (limited) production of documents from the Debtors on November 27, 2007, one day prior to the date of this filing.  Once discovery commences, the Trust may uncover additional evidence that may obviate Debtors' claimed defenses.  The Trust specifically reserves its right to assert additional objections to Debtors' claimed defenses based on relevant evidence uncovered in the discovery process.

payments were for or on account of an antecedent debt; (4) Tower was insolvent during the 90-
day period prior to its Chapter 11 filings; and (5) the Debtors received more than they would
have (a) under a hypothetical Chapter 7 scenario, (b) if the Tower Transfers had not been made,
and (c) the Debtors' received payment of such debt to the extent provided by the provisions of
the Bankruptcy Code.  The Amended Statement of Disputed Issues instead focuses on the two
affirmative statutory defenses provide by Bankruptcy Code sections 547(c)(4) and 547(c)(2),
commonly referred to as the new value and ordinary course of business defenses, respectively.

> **A.    The Debtors' Ordinary Course of Business Defense is Factually and Legally
> Deficient**

30.    Tower commenced its Chapter 11 cases before the effective date of the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8

("BAPCPA").  As the Debtors concede in the Amended Statement of Disputed Issues, Tower is

asserting a pre-BAPCPA claim, so the Debtors have the burden of proving each of the elements

of their affirmative ordinary course of business defense.  *See* Amended Statement of Disputed

Issues, ¶6.  Despite this concession, however, the Debtors' only make the assertion that "[t]he

majority of the payments that Tower seeks to recover satisfy these elements and thus were made

in the ordinary course of business," without discussing how they satisfy each of the elements of

the ordinary course defense.  *Id*.

31.    The Amended Statement of Disputed Issues focuses solely on the whether the

payments were ordinary between Tower and the Debtors - the so-called "subjective test" - based

on the purported consistency in timing of payments between the debtor and creditor both before

and during the 90 days prior to the commencement of Tower's Chapter 11 cases.  *See, e.g., In re
Enron Creditors Recovery Corp.*, 376 B.R. 442, 459-60 (Bankr. S.D.N.Y. 2007) (explaining the

subjective test).

32.     The basis for Debtors' analysis of the ordinary course of business between Tower

and the Debtors is a small slice of the historical payments between the parties.  Ordinarily, a

defendant should provide evidence of the entire course of history between the parties.  *In re*

*Furr's Supermarkets, Inc.*, 373 B.R. 691, 706 (10th Cir. BAP 2007).  Without explanation,

Debtors purportedly base their analysis of Tower and the Debtors' payment relationship on the

12 month period preceding the preference period, despite the fact that the relationship between

Tower and the Debtors extends back at least four (4) years prior to the Tower Petition Date.

However, "the entire length of the relationship, or at least a material segment of it, should be

examined to determine the 'baseline' course of dealings."  *In re Hancock-Nelson Mercantile Co.,*

*Inc.,* 122 B.R. 1006, 1013 (Bankr. D.Minn.1991).

33.     Moreover, an historical analysis based solely on the 12-month period before the

preference period is inadequate because Tower began to experience significant financial

difficulties during this time period.  *See* Tower's Disclosure Statement for the Joint Plan, dated

May 1, 2007, describing the Plan, p. 14 (detailing Tower's financial difficulties in 2004).  The

historical period examined should "extend back into the time before the debtor became

financially distressed ... [when] the debtor's dealings were 'ordinary' in the layman's sense of the

word."  *In re Hancock-Nelson Mercantile Co., Inc.,* 122 B.R. at 1013.  Accordingly, in order to

accurately assess the ordinary payment pattern between Tower and the Debtors, one must review

data extending back to before Tower started its slide into bankruptcy, when Tower was more

financially healthy.  In this case, a review of payment patterns only one year before Tower's

bankruptcy is unlikely to provide an accurate or adequate historical perspective with regard to

ordinary payments between Tower and the Debtors.

34.    The Debtors' Amended Statement of Disputed Issues relies on a scatter graph that purports to demonstrate the pattern of payments in the 12-month pre-preference period as compared to the preference period.  *See* Exhibit A to Amended Statement of Disputed Issues. The Debtors do not, however, provide any documentary evidence, or even a summary spreadsheet, that lays out the facts and data upon which such a graph is based.  Without such explanation, it is impossible to know whether the Debtors' data is accurate even for the limited time period it purports to represent.

35.    Based on the data presented in the scatter graph, Debtors make several critical assertions with regard to proving an ordinary course defense.  First, Debtors assert that the weighted average number of days between invoice and payment in the 12-month pre-preference period is 57.5 days.  Because no historical data is provided to support this assertion, the Trust cannot verify the veracity of the assertion.  Second, building on the data purportedly set forth in the scatter graph, and on the weighted average, Debtors create several ordinary course of business ranges which allegedly demonstrate that the preference period payments at issue are unavoidable.

36.    The first range used is 40 to 75 days, which Debtors refer to as the "Normal Distribution Pattern."  Debtors maintain that the historical data plotted on the scatter graph demonstrates that "the majority of observations cluster around the 40 to 75 day range." Amended Statement of Disputed Issues, ¶ 7.  Again, it is impossible to tell from "observing" the scatter graph whether or not this is an accurate statement.  A 40 to 75 day range represents a +/- 17.5 day range from the 57.5 day asserted weighted average.  The second range the Debtors consider is 48 to 69 days, referred to as the "Central Range."  *Id.*  The Debtors assert that the

12

Central Range represents the "middle fifty percent of observations." *Id*. at n.1. This fact is also unascertainable by the Trust without the historical data upon which Debtors rely.

37.       The historical course of business between the parties is a critical component of Debtors' ordinary course defense, as this average is the baseline by which the preference period is examined. By analyzing a limited historical period of 12 months before the preference period, and failing to provide the historical data on which they rely, Debtors have failed to prove a material aspect of their defense.

38.       In addition to the limited historical range used to analyze ordinary course and the insufficiently supported ordinary course ranges, the Debtors' analysis fails to account for all of the factors a court considers when reviewing the subjective prong of an ordinary course defense, such as "(i) the prior course of dealing between the parties, (ii) the amount of payment, (iii) the timing of payments, (iv) circumstances surrounding the payments, (v) the existence of any unusual debt collection practices, and (vi) changes in the means of payment." *In re 360Networks (USA) Inc.*, 338 B.R. at 210. The Amended Statement of Disputed Issues provides no analysis or insight as to any of these factors.

39.       Without the benefit of discovery the Trust is currently unable to address the merits of all of these additional factors that may be relevant to the Debtors' satisfaction of their ordinary course of business burden, but reserves the right to do so after discovery has commenced. For example, the limited historical payment data that the Trust received from Tower evidences that the aggregate $14,540,878.50 paid during the three-month preference period significantly exceeds the aggregate payments made during any previous three month period from February 13, 2004 to November 3, 2004, by $3.5 to $5 million each period. Accordingly, discovery may reveal that payments during the Preference Period were not made in

the ordinary course, *inter alia*, "payments made as a consequence of economic pressure and debt collection practices not common within the industry [that] are not in the ordinary course of business." *In re 360Networks (USA) Inc.*, 338 B.R. at 210 (citing *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11th Cir. 1986)).

40.    Critically, the Amended Statement of Disputed Issues utterly fails to address two additional required elements to prove their ordinary course defense:  (1) that the payments were ordinary in the relevant industry, and (2) that the payments were made pursuant to ordinary business terms.  Debtors have failed to establish a *prima facie* ordinary course defense based on these omissions alone.  *In re Roblin Indus., Inc.*, 78 F.3d 30, 42-43 (2d Cir. 1996) (holding ordinary course of business exception did not apply where defendant failed to meet its burden to produce evidence regarding industry terms); *see also In re H.L. Hansen Lumber Company Of Galesburg, Inc.*, 270 B.R. 273, 280-81 (Bankr. C.D. Ill. 2001) (holding that defendant failed to prove its ordinary course defense because it relied solely on the relationship between the parties and offered no evidence with regard to the industry standard); *In re Toy King Distributors, Inc.*, 256 B.R. 1, 126 (Bankr. M.D. Fla. 2000) (same).

41.    In sum, by failing to (i) attach sufficient documentary evidence, (ii) provide sufficient historical data, and (iii) address each of the required elements of their asserted ordinary course of business defense, Debtors have failed to meet their burden of proof for establishing defenses to any of the transfers cited in the Amended Tower Claim.[2]

---

[2]    The Debtors also claim that they provided Tower over $12,000,000 in unavoidable subsequent new value pursuant to section 547(c)(4) during the Preference Period.  Amended Statement of Disputed Issues, Exhibit C. However, the methodology by which the Debtors have calculated their alleged new value is unstated and there is no way to determine if such calculations comport with the case law in this District.  As this Court has recently held, "[t]he elements necessary to meet the [section 547(c)(4)] defense are that (i) the debtor received new value after the transfer, and (ii) such new value remained unpaid."  *In re Pameco Corp.*, 356 B.R. 327, 341 (Bankr. S.D.N.Y. 2006) (emphasis added); *see also In re Enron Corp.*, 357 B.R. 32, 49 n.21 (Bankr. S.D.N.Y. 2006) (finding that new value exception only applies to unpaid invoices); *In re Teligent, Inc.*, 315 B.R. at 315 (same).  *But see In re Maxwell Newspapers, Inc.*, 192 B.R. 633, 639-40 (Bankr. S.D.N.Y. 1996).

42.     The Trust's preliminary and pre-discovery analysis of preference payments, which the Trust reserves the right to modify and/or amend consistent with discovery, shows that Tower's claims against the Debtors are, at a minimum, in excess of $1.3 million even if the Debtors' assumptions are used.  The Trust's preliminary analysis is currently based on (i) the preference payment data received from Tower, (ii) giving the Debtor new value credit for both paid and unpaid invoices that occurred after each transfer during the preference period (even though there is case law in this district to the contrary), and (iii) using the Debtors' own 57.5 purported historical average number of days between invoice and the Debtors' receipt of payment, demonstrates that the total value of the preference claim against the Debtors remains in excess of $1.3 million.  *See* Exhibit E; *see also* Declaration of Howard Brod Brownstein, attached hereto as Exhibit F, at 13.  The ordinary course of business exception is narrowly construed by bankruptcy courts.[3]  Accordingly, the Trust's analysis uses an ordinary course of business range of 53 to 62 days, a +/- 4.5 day range around the Debtors' claimed 57.5 day weighted historical average.

**B.     The Trust Cannot Address the Debtors' Section 548 Response Without Discovery**

43.     The Amended Tower Claim asserts that certain transfers made by Tower to the Debtors are avoidable as fraudulent transfers under Bankruptcy Code section 548(a)(1)(B).  In the Amended Statement of Disputed Issues, the Debtors do not dispute that Tower was insolvent when the subject transfers were made.  Instead, the Debtors make the unsupported statement that

---

[3] *See In re CIS Corp,* 195 B.R. 251, 257 (Bankr. S.D.N.Y.1996) ("Because of the important policies served by preference law, courts have repeatedly held that the exceptions contained in Code § 547(c), including the ordinary course exception, 'should be narrowly construed.'" (internal citations omitted)); *In re Fonda Group, Inc.,* 108 B.R. 956, 960-61 (Bankr. D.N.J. 1989) (where travel agency accounts were usually paid within 30 days of invoice date, transfers by Chapter 11 debtor to travel agent more than 30 days after the invoice date were not in "ordinary course of business" so as to preclude avoidance of the transfers as preferences).

"these payments were each made in relation to an equivalent exchange of value." Amended
Statement of Disputed Issues, ¶ 11.

44.    The Debtors' statement apparently refers to the "reasonably equivalent value"
prong of section 548. *See* 11 U.S.C. § 548(a)(1)(B)(i).  Without discovery, however, the Trust
cannot address whether the Debtors' statement has any merit.  The standard for determining
reasonably equivalent value has been described as a measurement test by which a court compares
what was given with what was received.  In determining whether reasonably equivalent value
has been given, neither "mathematical precision" nor a "penny-for-penny" exchange is
necessary. *Rubin v. Manufacturers Hanover Trust Co*., 661 F.2d 979, 994 (2d Cir. 1981).
Rather, the issue is determined on a case-by-case basis taking into account the totality of the
circumstances surrounding the transaction.  Accordingly, the Trust hereby reserves the right to
supplement its response on this issue after discovery on the totality of the circumstances with
respect to the transactions between Tower and the Debtors.

**III.    Technical Objections to the Amended Tower Claim Should not be Permitted**

45.    As noted in the Response, the Debtors objected to the Amended Tower Claim on
an "untimely books and records" basis, but agreed not to pursue that or any other technical
objections as *quid pro quo* for the Trust's agreement to have the Twentieth Omnibus Objection
deemed an objection on the merits of the Amended Tower Claim and to proceed in accordance
with the process outlined in the Claims Objection Order.  Notwithstanding the foregoing, the
Debtors have included within the Amended Statement of Disputed Issues a broad reservation
with respect to "the Debtors' right to later identify and assert additional legal and factual bases
for disallowance, expungement, reduction, or reclassification of the Claim ...."  Amended
Statement of Disputed Issues, p. 12.  The Debtors should not be permitted to re-trade the deal
they made by renewing or asserting any new technical objections to the Amended Tower Claim.

16

If such objections are permitted, however, they are easily disposed of and the Trust reserves the

right to respond accordingly.

## IV.    Identification of Witnesses

46.    Pursuant to the requirements of the Claims Objection Procedures Order, the Trust

identifies the following potential witnesses:

a.    **Howard Brod Brownstein**, CTP, a Principal at Nachman Hays

Brownstein, Inc., may provide a rebuttal expert testimony with regard to whether

the Debtors have met their burden of proof in establishing either the new value or

ordinary courses defenses pursuant to Bankruptcy Code sections 547(c)(4) and

547(c)(2) respectively.  Mr. Brownstein may also provide, if necessary, expert

testimony with regard to Tower's satisfaction of the elements of claims arising out

of Bankruptcy Code sections 547 and 548.

b.    **Delphi John Does 1 and 2** – As part of the discovery process, Tower may

seek to depose one or more persons employed by the Debtors with knowledge of

the Tower Transfers and relationship between the parties, including the

relationship with General Motors.

c.    **Tower John Does 1 and 2** – As part of the discovery process, Tower may

seek to depose or provide a declaration from employees of Tower, who are not

under the control of the Trust.

d.    **Debtors' Expert** – As part of the discovery process, Tower may seek to

depose any expert employed by the Debtors in this matter.

## V.    Reservation of Rights

47.    The Trust reserves the right to amend this Supplemental Response and the Proof

of Claim, and to supplement the evidentiary record with (1) information gathered from

discovery, including depositions, (2) expert testimony and/or declaration(s), (3) non-expert

witness declaration(s), and (4) any other relevant factual information or legal argument to the

extent not set forth herein.

Dated:  New York, New York                 Respectfully submitted,
         November 28, 2007                 TAI Unsecured Creditors Liquidating Trust
                                         By its Counsel,

                                       **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                       By:

                                          */s/ Ira S. Dizengoff*
                                          Ira S. Dizengoff (ID-9980)
                                          590 Madison Avenue
                                          New York, New York 10022-2524
                                          Telephone: 212-872-1000
                                          Facsimile: 212-872-1002

                                       -and-

                                         David M. Dunn (DD-3220)
                                       1333 New Hampshire Avenue, N.W.
                                       Washington D.C. 20036
                                       Telephone: 202-887-4000
                                       Facsimile: 202-887-4288