1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DELPHI CORPORATION, ET AL,

9

10        Debtor.

11

12  - - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            November 16, 2007

19            10:09 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2    A P P E A R A N C E S :

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4         Attorneys for Delphi Corporation

5         333 West Wacker Drive

6         Chicago, IL 60606

7

8    BY:   JOHN WM. BUTLER, JR., ESQ.

9          JOHN K. LYONS, ESQ.

10         RON E. MEISLER, ESQ.

11         ALBERT L. HOGAN, III, ESQ.

12         LISA B. DIAZ, ESQ.

13

14

15   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16         Attorneys for Delphi Corporation

17         Four Times Square

18         New York, NY 10036

19

20   BY:   KAYALYN A. MARAFIOTI

21         THOMAS J. MATZ

22

23

24

25

3

1    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP

2         Attorneys for Official Committee of Equity Holders

3         One New York Plaza

4         New York, NY 10004

5

6    BY:   BONNIE K. STEINGART, LLP

7

8    UNITED STATES DEPARTMENT OF JUSTICE

9    OFFICE OF THE UNITED STATES TRUSTEE

10        33 Whitehall Street

11        21st Floor

12        New York, NY 10004

13

14   BY:   ANDREW VELEZ-RIVERA, ESQ.

15

16

17   KIRKPATRICK & LOCKHART, PRESTON GATES ELLIS, LLP

18        Attorneys for Wilmington Trust Company,

19           Indentured Trustee

20        599 Lexington Avenue

21        New York, NY 10022

22

23   BY:   EDWARD M. FOX, ESQ.

24

25

4

1    WHITE & CASE LLP

2         Attorneys for Appaloosa and Harbingers Plan Investors

3         1155 Avenue of the Americas

4         New York, NY  10036

5

6    BY:   GERARD UZZI, ESQ.

7

8

9    LATHAM & WATKINS LLP

10         Attorneys for the Creditors' Committee

11         885 Third Avenue

12         Suite 1000

13         New York, NY 10022

14

15    BY:   MARK A. BROUDE, ESQ.

16

17

18    SIMPSON THACHER & BARTLETT, LLP

19         Attorneys for JP Morgan

20         425 Lexington Avenue

21         New York, NY 10017

22

23    BY:   KENNETH S. ZIMAN, ESQ.

24

25

5

GOODWIN PROCTOR LLP

    Attorneys for Caspian Capital,

       CastleRigg Master Investment,

       Davidson Kempner Capital Management,

       Elliott Associates,

       Numeric Corporate Research and Asset Advisors,

       Sailfish Capital Partners and White Box Advisors

    599 Lexington Avenue

    New York, NY 10022

BY:   ALLAN S. BRILLIAN, ESQ.

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP

    Attorneys for Trade Committee

    1633 Broadway

    New York, NY 10019

BY:   ADAM L. SHIFF, ESQ.

6

1    MAYER BROWN LLP

2        Attorneys for Bank of America

3        1675 Broadway

4        New York, NY 10019

5

6    BY:   JEFFREY G. TOUGAS, ESQ.

7

8

9    BROWN RUDNICK BERLACK ISRAELS

10        Attorneys for Goldman Sachs

11        7 Times Square

12        New York, NY 10036

13

14    BY:   GWENDOLEN D. LONG, ESQ.

15

16

17    TOGUT, SEGAL & SEGAL LLP

18        One Penn Plaza

19        New York, NY 10119

20

21    BY:   TALLY WIENER, ESQ.

22

23    ALSO PRESENT:

24        ROBERT MOTHERSHEAD, Pro Se

25        (TELEPHONICALLY)

7

1                     P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay.

3   Delphi Corporation.

4              MR. BUTLER:  Your Honor, good morning.  Jack Butler,

5   Kayalyn Marafioti and Al Hogan from the Skadden firm on behalf

6   of the debtors for the twenty-fourth omnibus hearing, the first

7   of two in November.

8              Your Honor, we have filed a proposed agenda.  There

9   are five matters on it.  With Your Honor's permission we would

10  take the adjourned and the presentment first and then move on

11  to the other matters.

12             THE COURT:  Okay.

13             MR. BUTLER:  Your Honor, matter number one on the

14  agenda is the Technology Properties 3018 motion at docket

15  number 10425.  We've filed an objection at docket number 10650

16  and we've agreed with Technology properties, now, to move this

17  to the December 20th omnibus hearing.  This will ultimately,

18  Your Honor, be dealt with, I believe, in the 3018 docket.

19             THE COURT:  Okay.

20             MR. BUTLER:  Matter number five on the agenda, Your

21  Honor, which is the presentment, is the application of the

22  equity security holders for authorization of retention of

23  Gregory P. Joseph Law Firms, LLC, as conflicts counsel at

24  docket number 10906.  Just one comment, Your Honor, from the

25  debtors.  Ms. Steingart did contact us as soon as the need for

8

1    this additional counsel arose and consulted with the debtors.

2    The debtors have no objection to the relief requested.

3            THE COURT:  Okay.

4            MS. STEINGART:  Good morning, Your Honor.

5    Bonnie Steingart from Fried Frank on behalf of the Official

6    Committee of Equity Holders.  We filed this emergency motion

7    just several days ago when the issue of a conflict first arose.

8    I don't think that we need to go into great detail about it

9    unless the Court would like us to.

10            THE COURT:  No, I've read it.  You're seeking interim

11   retention at this point?

12            MS. STEINGART:  Yes, because Ms. Leonhard --

13            THE COURT:  Interim approval of the retention?

14            MS. STEINGART:  Right.  Because Ms. Leonhard's away

15   and we thought that we would put it on for final on the 29th so

16   that she would have an opportunity to look at all the papers.

17            THE COURT:  Okay.  Obviously the counsel is getting

18   to work right away.  So it makes sense to seek the relief now.

19            MS. STEINGART:  Yes.

20            THE COURT:  Any -- any other comments or statements?

21            MR. VELEZ RIVERA:  Andrew Velez-Rivera for the

22   United States Trustee.  Mr. Steingart got it all, Your Honor.

23   Thank you.

24            THE COURT:  Okay.  So I will enter that order today.

25            MS. STEINGART:  All right.  I have a black line that

9

1    has some adjustments that Mr. Leonhard has made.  If I might

2    hand up both the clean and the black line.

3              THE COURT:  Okay.  That's fine.

4              MS. STEINGART:  Thank you.

5              MR. BUTLER:  Your Honor, the next matter on the

6    agenda, matter number two, is the DIP extension motion at

7    docket number 10787.  This matter is uncontested.  There is a

8    record, Your Honor, we'd like to make, regarding the extension

9    we have made available.  There are seventeen exhibits we'd like

10   moved into evidence.  Briefly, to summarize them Your Honor,

11   Exhibit 1 is the declaration of John D. Sheehan, our chief

12   restructuring officer.  Exhibits 2 through 8 are the credit

13   agreement documents.  Exhibit 9 through 16 are the various

14   court documents applicable to this matter and Exhibit 17 is the

15   affidavit of service.

16             Your Honor, we'd like to move Exhibit 1 through 17

17   in --

18             THE COURT:  When you say the credit documents,

19   they're as revised as detailed in the -- in the supplement?

20             MR. BUTLER:  That's correct, Your Honor.

21             THE COURT:  Okay.

22             MR. BUTLER:  And I would note that that Exhibits 5

23   through 7 have been marked highly confidential.

24             THE COURT:  Okay.

25             MR. BUTLER:  And they're for professional eyes only.

10

1          THE COURT:  Fine.

2          MR. BUTLER:  The others -- the others are in the

3    public record and I'd like to move admission of Exhibits 1

4    through 17 into evidence.

5          THE COURT:  All right.  Does anyone have any

6    objection to that?  All right.  They're admitted.

7    (Declaration of John D. Sheehan was hereby received as Debtor's

8    Exhibit 1 for identification, as of this date.)

9    (Credit Agreement Documents was hereby received as Debtor's

10   Exhibit 2-8 for identification, as of this date.)

11   (Court Documents was hereby received as Debtor's Exhibit 9-16

12   for identification, as of this date.)

13   (Affidavit of Service was hereby received as Debtor's Exhibit

14   17 for identification, as of this date.)

15         MR. BUTLER:  Your Honor, I'd also like to present

16   Mr. Sheehan, he is present in the courtroom today, for any

17   cross examination with respect to his testimony.

18         THE COURT:  Okay.  Does anyone want to cross examine

19   Mr. Sheehan on his declaration?  Okay.  Fine.

20         MR. BUTLER:  All right.  Your Honor, from the

21   debtor's perspective we would rely on the record, I think the

22   question -- the need for extended DIP financing here, I think,

23   is not questioned by any party in the case and we believe the

24   form of proposed order, as it's been amended and black line

25   presented to Your Honor is appropriate.

11

1          THE COURT:  Okay.  I've reviewed the supplement,

2     including his description of the relatively minor changes to

3     the proposed extension of financing.  I note that you've

4     clarified further the treatment of the PBGC and I just want to

5     make sure I'm clear on this; in a couple of places you've added

6     the word "replacement."  So PBGC's replacement liens, as I

7     understand it, that goes both ways, particularly given the

8     reference to the DASHI inter-company transfer order: PBGC only

9     has a lien to the extent it -- it only has a replacement lien

10    to the extent that it had a lien to begin with.

11          MR. BUTLER:  That's correct, Your Honor.

12          THE COURT:  All right.  So this isn't conferring any

13    additional lien on the PBGC?

14          MR. BUTLER:  That's correct, Your Honor.

15          THE COURT:  Okay.  All right.  Anyone have any

16    comments on this motion?  All right.  I will grant it as

17    modified by the supplement.

18          MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

19    next matter on the agenda is matter number three, this is the

20    Saginaw Chasse Asset Sale Motion at docket number 9368.  There

21    were two objections -- three objections, actually, filed to

22    this matter.  The first was the UAW's limited objection at

23    docket number 9584, you may remember from earlier hearings that

24    matter has been resolved consensually.  Then there were

25    objections that were filed by Joe J. Debtor, T-E-D-D-O-R --

12

1          THE COURT:  Looking for a new client?

2          MR. BUTLER:  -- at docket number 9644 and also by

3    U.S. Aeroteam Inc. at docket number 10652.  Both of those

4    objections have now been withdrawn on the docket and the

5    matter, therefore, goes -- proceeds this morning on an

6    uncontested basis.

7          There are just a couple of items, Your Honor, that I

8    would like to bring to the Court's attention.  First, I'd like

9    to make the evidentiary record regarding the sale of the Chasse

10   business.  There are, in connection with this transaction,

11   fifteen documents to be entered into evidence.  They include,

12   at Exhibit 1, the declaration of Mr. Sheehan in support of

13   this.  Exhibit 2 and 3 include the agreement -- including the

14   third amendment to the agreement.  Exhibits 4 through 12 are

15   the Court documents associated with this transaction.  Exhibits

16   13 and 14 are the UAW agreements and Exhibit 15 is the

17   Affidavit of Service.

18          Your Honor, I'd like to move Exhibits 1 through 15

19   into the evidentiary record.

20          THE COURT:  Okay.  Are there any objections to that?

21   All right, they're admitted.

22   (Declaration of Mr. Sheehan was hereby received as Chasse

23   Business's Exhibit 1 for identification, as of this date.)

24   (Agreement was hereby received as Chasse Business's Exhibit 2 &

25   3 for identification, as of this date.)

13

1   (Court Documents for Chasse was hereby received as

2   Chasse Business's Exhibit 4-12 for identification, as of this

3   date.)

4   (UAW Agreements was hereby received as Chasse Business's

5   Exhibit 13 & 14 for identification, as of this date.)

6   (Affidavit of Service was hereby received as Chasse Business's

7   Exhibit 15 for identification, as of this date.)

8           MR. BUTLER:  And similarly, Your Honor, I'd like to

9   present Mr. Sheehan for any cross examination the parties may

10  have with respect to his declaration.

11          THE COURT:  Okay.  Does anyone want to cross examine

12  Mr. Sheehan on his declaration?  Very well.  One point -- I

13  just want -- I believe I know the answer to this but as set

14  forth in the supplement, the Canadian assets are being treated

15  slightly differently.  The purchase price for those assets,

16  though, hasn't changed has it?

17          MR. BUTLER:  No, Your Honor.  What's happening now

18  is, as a technical matter, the -- the purchase agreement that

19  was associated with the Canadian assets terminated.  And the

20  way that transaction's now been resolved is the overall, what

21  I'll call the master agreement, has been increased by -- by the

22  1. -- I think its 1.2 million, if I recall.

23          THE COURT:  Right.

24          MR. BUTLER:  And DASS is acquiring those assets from

25  the -- on an inter-company basis from the Canadian entity.

14

1      THE COURT:  Economically, it's basically the same

2 thing.

3      MR. BUTLER:  It's -- if everything goes as we're

4 planning, Your Honor, it should be a wash.

5      THE COURT:  Okay.

6      MR. BUTLER:  Your Honor, I would point out that this

7 particular transaction for the Saginaw Chasse divestiture, the

8 purchaser is TRW Integrated Chasse Systems LLC.  The purchase

9 price is approximately 42.6 million dollars.  There is a

10 purchase protection here, in terms of a breakup fee, of 1.5

11 million dollars.  And there is the potential for expense

12 reimbursement as well.

13      I should also point out, Your Honor, that DASS LLC is

14 entitled to expense reimbursement from TRW because on the

15 Canadian assets we've agreed to move them to Saginaw and

16 they've -- and TRW's agreed to pay up to 400,000 dollars for

17 the cost of moving those items from Mexico to Saginaw and then

18 another 500 -- it's actually -- the Canadian one is 517,000 to

19 move the assets from Canada to Saginaw.  So there's some

20 additional expense reimbursement running to the debtors favor

21 in connection with this transaction as well.

22      The only item -- other item, I think, I'd like to

23 point out to Your Honor, I think Your Honor is aware that this

24 had been -- this matter had been carried so that General Motors

25 and the purchaser could reach their agreements, that's occurred

15

1    now.  And as is always the case, it took some time for the

2    supply agreement and all the UAW matters to be put in order.

3    Now that it's put in order everybody wants this transaction

4    completed promptly.  And in order to do that, what we propose

5    to do is to change the two-step sale process slightly by still

6    going out and giving notice -- sale notice within one business

7    day of the entry of this order, if Your Honor enters it, and

8    publication notice within three days or as soon as practical

9    after that.  But our proposal would be, Your Honor, if we don't

10   receive any alternative bids by 11 AM prevailing eastern time

11   on November 27th to bring this to the Court for the sale

12   approval at the November 29th omnibus hearing.  If, in fact,

13   there is -- there are qualified bids that are received by the

14   bid deadline, then we would conduct an auction of the assets at

15   10 AM prevailing eastern time on or about December 6, 2007,

16   using minimum bid increments of 250,000 dollars.  And then we

17   would come to the December -- I believe it's 20th, omnibus

18   hearing for the sale hearing at that time.  So it's a bit

19   different then we have used in the past but it is still a two-

20   step process.

21          Today, we're asking you simply to approve the bid

22   procedures and the bid protections that are in place and to

23   determine the -- the sale -- the approval of the sale on either

24   the 29th of November or December 20th, depending upon whether

25   there's going to be an auction.

16

1          THE COURT:  Okay.  Does anyone want to address this

2     motion?  All right.  I obviously reviewed it, as well as the

3     supplement, and in particular reviewed the changes to the

4     bidding procedures, as far as the timing is concerned.  Given

5     that this motion was filed a long time ago and that any

6     competitive bidder has certainly been on notice since then, if

7     not well before then, I'm comfortable with the changes on the

8     timing.  So, I'll approve it as modified.

9          MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

10    next matter, and the last matter on the agenda, is the

11    company's exit financing motion at docket number 10854.  This

12    matter is contested.  There have been timely objections filed

13    by the ad hoc bondholder group at docket number 10903 by

14    Wilmington Trust Company at docket number 10905 and by the

15    Committee of Unsecured Creditors at docket number 10930 and

16    later -- that was redacted later after an announcement from a

17    company they filed their unredacted objection with which we had

18    no objection at docket number 10933, in terms of the filing of

19    the unredacted objection.

20          There have been, Your Honor, two joinders filed

21    overnight that we don't think are particularly timely.  In

22    fact, we don't think they are timely under the case management

23    order but we're not going to press the timeliness issue at this

24    hearing.

25          Your Honor, with respect to first the evidentiary

17

1    record, what I'd like to do is describe the exhibits that are

2    being considered for this hearing, there are twenty-one of

3    them.  The first is the -- Mr. Sheehan's declaration at

4    Exhibit 21.  The exit financing documents are Exhibits 2-7.  I

5    would point out that Exhibits 2-6 are highly confidential.

6    The -- there are presentations that were made with respect to

7    these matters to the joint statutory committees and to the

8    board of directors, those are Exhibit 8 and 10.  As we --

9    they're

10   both -- they're all three marked highly confidential.  And as

11   Mr. Brody and I have talked about in the past, these are being

12   offered not for the truth of the matters asserted there but in

13   fact that these are the presentations made to those -- to the

14   stakeholders and the board of directors at those dates and

15   times.

16          Exhibit 11 is a news release issued by the company on

17   November 14th.  Exhibit 12 through 19 are the related court

18   documents.  Exhibit 20 is the summary objection chart and

19   Exhibit 21 is the affidavit of service.

20          Your Honor, I'd like to move the admissions of

21   Exhibit 1 through 21 into evidence.

22          THE COURT:  Okay.  Are there any objections to those

23   admissions for the purposes for which they're being admitted?

24          MR. FOX:  Your Honor, Edward Fox from Kirkpatrick and

25   Lockhart on behalf of Wilmington Trust Company as indenture

18

1   trustee.  With respect to Mr. Sheehan's declaration the

2   ultimate sentence in paragraph 15 is hearsay and we would like

3   that not admitted, certainly not of the truth of the matter

4   asserted.

5              THE COURT:  Well, when you say "the debtors," Mr.

6   Sheehan, do you mean yourself?  Have you yourself been advised

7   of this?

8              MR. BUTLER:  Which sentence -- can we read the

9   sentence into the record, just so --

10             THE COURT:  The sentence says, "The debtors have been

11  advised that they should seek to commence syndication efforts

12  as early as practicable."  And my question to Mr. Sheehan is,

13  is that something you've been told or is that something you

14  know from your own personal knowledge?

15             MR. SHEEHAN:  It was something I was told,

16  Your Honor.

17             THE COURT:  Okay.  All right.

18             MR. SHEEHAN:  I'm sorry, can I just clarify that a

19  little bit more.

20             THE COURT:  Well, were you told it by the person who

21  was making the advice or were you told that someone made the

22  advice to someone else?

23             MR. SHEEHAN:  What I would say to you, Your Honor, is

24  that through my experience as the chief restructuring officer

25  of Delphi, and with knowledge of what's happening in the

19

1    capital markets right at the moment, I believe that sentence to

2    be my own personal opinion.  It has also been the statements

3    that have been made to me by the banks that we're working with,

4    with respect to the exit financing.  That is the basis for that

5    sentence.

6              THE COURT:  All right.  I -- I will admit that

7    sentence to the extent that he's been told that by the banks

8    that are working on it but not that it's necessarily true.

9              MR. FOX:  That's fine, Your Honor.  So long as it's

10   not admitted for the truth of the matter asserted.

11             THE COURT:  Right.  Okay.  All right.  So those

12   exhibits will be admitted on that basis.

13   (Declaration of Mr. Sheehan was hereby received as Financing

14   Motion's Exhibit 21 for identification, as of this date.)

15   (Financing Documents was hereby received as Financing Motion's

16   Exhibit 2-7 for identification, as of this date.)

17   (Presentations was hereby received as Financing Motion's

18   Exhibit 8-10 for identification, as of this date.)

19   (Related Court Documents was hereby received as Financing

20   Motion's Exhibit 12-19 for identification, as of this date.)

21   (Summary Objection Chart was hereby received as Financing

22   Motion's Exhibit 20 for identification, as of this date.)

23             MR. BUTLER:  Your Honor, I -- thank you very much.

24   I'd then like to present Mr. Sheehan for any cross examination

25   by the parties.

20

1      THE COURT:  I'd like to put that off for a minute.

2      MR. BUTLER:  Okay.

3      THE COURT:  Since it seems to me that the basis for

4  the committee's objection and the chime-ins by the other

5  unsecured creditor groups really goes to a specific issue,

6  which is the direction of this case.  And on that point I'd

7  first like to know which of the investors has decided that it's

8  still in this case and which has decided it's out?  There was a

9  singularly unresponsive public disclosure filed in the 13(d)

10  statement that one was out.  Is it still out and which one was

11  it?

12      MR. UZZI:  Your Honor, Gerard Uzzi for -- from

13  White and Case on behalf of Appaloosa and Harbingers, Plan

14  Investors.  Your Honor, just so that the record's clear, there

15  was a prior attempt, about two weeks ago, to amend the EPCA.

16      THE COURT:  We'll get to that.

17      MR. UZZI:  Pardon me?

18      THE COURT:  We'll get to that, but continue.

19      MR. UZZI:  In that attempt, all of the plan investors

20  other than Goldman Sachs, signed commitments.

21      THE COURT:  So Goldman Sachs was the unidentified

22  investor?

23      MR. UZZI:  Goldman Sachs was the unidentified

24  investor, Your Honor.

25      THE COURT:  Did they give a reason?  Did they run out

21

1    of money?

2            MR. UZZI:  Well, Your Honor, I don't -- I don't

3    represent Goldman Sachs.

4            THE COURT:  Is anyone here who represents Goldman

5    Sachs?  I suspected as much.  They will not be able to slink

6    away in this case.  If they think they can avoid the

7    reputational and legal issues they are sadly mistaken.  You can

8    continue.

9            MR. UZZI:  With respect to the amendments that were

10    filed two days ago, Your Honor, all of the plan investors have

11    signed commitments with respect to those.

12            THE COURT:  They've come back on board?

13            MR. UZZI:  Goldman Sachs, along with all the other

14    plan investors, have signed commitments.

15            THE COURT:  Deciding that more than doubling the

16    discount that had previously been negotiated and approved in

17    August of this year was sufficient for their purposes?

18            MR. UZZI:  Well, again Your Honor, I do not represent

19    Goldman Sachs.

20            THE COURT:  I understand.  And they're not here

21    because they thought that they could do this all in secret.

22    All right.  You could tell that I believe that there have been

23    extremely improvident developments in this case.  And I will

24    summarize them, as far as I'm concerned, briefly.  But because

25    the debtor's response indicates that those developments are not

22

1    final, I'm going to speak to the parties in private about the

2    next week or so.

3              You may recall that there was competition for the

4    plan investment opportunity.  And I ruled, both times,

5    including in August of this year -- and as we can all read

6    Mr. Sheehan's affidavit, at that time the turmoil in the credit

7    markets was known, that's paragraph 9 of his affidavit -- and I

8    ruled in favor of this investor group not just because they

9    were the highest bid, because they weren't, but because they

10   were the best bid, because they had done their due diligence,

11   because they were represented to me, and I believed it, that

12   two of the nation's biggest investment banks, including Goldman

13   Sachs, and large hedge funds that had also their own

14   reputational interests, would stick by this debtor and their

15   fundamental economic commitments, unlike the competitive -- the

16   competitor investor who had not done due diligence originally,

17   when this was first negotiated, and had futzed around about the

18   due diligence thereafter.

19             I also approved the August amendment to the EPGA

20   because it curtailed the number of "outs" that the investors

21   had.  And in particular, it curtailed the financing out and the

22   market condition out in the material adverse effect provision.

23   I am very distressed, at least based upon what I have seen as

24   the basis for the changes to the EPCA, which is financing

25   conditions that were well known to the parties in August and

23

1   which they said would not constitute a material adverse effect

2   being asserted, as well as a minor change, generally, as to

3   GM's requirements in the business, which, frankly, also appears

4   to me to have been excluded from the material adverse effect

5   provision of the agreement.

6          Now, you may say that the plan has changed because

7   you can't provide as much cash to cash-out creditors.  I have a

8   hard time seeing how that affects the equity investors,

9   particularly given GMs responsible agreements here to take less

10  cash, as a customer and as part of its settlement.

11         The premise of the negotiations that this company has

12  been undertaking over the past several months, and upon which

13  thousands of workers have made enormous personal sacrifices was

14  the framework of these agreements.  And I am very distressed

15  that they have changed, sucking out hundreds of millions of

16  dollars over these apparent excuses.  I appreciate that this is

17  a big case and a big operating business.  It's sort of like an

18  ocean liner, and it's hard to change an ocean liner in mid-

19  stream.  But what I have seen suggests to me that maybe, if the

20  parties don't come to their senses and appreciate that as a

21  sponsor of this company they have to stand by the company --

22  because otherwise why have a sponsor, why not give the equity

23  to those who are in the debt already and in the equity already

24  -- that we're going to change course.  And that's what I want

25  to talk to you about now.

24

1    I want to see the two official committees, the

2    debtor, whatever plan sponsors deign to be here today and the

3    other two objectors.

4        MR. UZZI:  Your Honor, may GM attend?

5        THE COURT:  Oh, yes.  This way.

6    (Recess from 10:32 till 11:31 AM)

7        THE COURT:  Okay.  We're back on the record in

8    Delphi.

9        MR. BUTLER:  Thank you, Your Honor.  Your Honor,

10   continuing with matter number 4 on the record, the exit

11   financing motion.  Your Honor, the company would like to

12   proceed with the motion.  We've obviously received guidance

13   from chambers and understand the concerns expressed by the

14   Court both on the record and in chambers regarding the

15   potential EPCA amendment, which is on the hearing for

16   November 29th, as I think we had -- the company had stated in

17   their filings, the company is committed to continue to

18   negotiate with our statutory committees between now and the

19   29th regarding both the disclosure statement and the plan

20   amendments and related documents and we will continue to do

21   that.  Under Your Honor's prior order, entered in the Court,

22   the company has until the afternoon of November 28th to file

23   changed pages with respect to those matters.  And I think we've

24   been pretty clear, both in our public announcements and our

25   filing with respect to this hearing, about the company's

25

1    commitment to continue to try to bring consensus to this

2    transaction if we can.

3              The company, also, is certainly guided by the

4    concerns expressed about parties in the case negotiating around

5    the edges for their particular pecuniary interest and the

6    company recognizes that for this company to go forward and

7    emerge from Chapter 11 in the short term, which is what we

8    think is absolutely required now that we, from a company

9    perspective have completed all that needs to be done in

10   Chapter 11 and need now to emerge, that we need to get on with

11   the business of financing the case and emerging and we need,

12   obviously, the support of our stakeholders in that regard.

13             Having said that, the company, and Mr. Sheehan's -- I

14   think where we were in this hearing was with Mr. Sheehan's

15   declaration offering Mr. Sheehan for cross examination in his

16   declaration; it's clear, Your Honor, and the company believes

17   that given the capital markets and given the need to raise exit

18   financing on a best efforts basis, and given the fact that we

19   don't believe that the objectors have any particular issue with

20   the structure of the exit financing, putting aside the EPCA and

21   emergence financing, the exit financing.  The process we've

22   used to select the proposed agent, the cost associated with

23   them moving forward on this, the ultimate purposes of this and

24   I would point out Your Honor, both that the acknowledgement

25   letter signed by the lead arrangers, as well as the underlying

26

1    agreements that Your Honor's aware of, provide that the lead

2    arrangers have the opportunity to consider and approve any

3    equity plan that's brought to them by the company and recognize

4    that no equity plan has yet been approved by the Court in terms

5    of the November 29th hearing.  They understand that and we

6    understand it.

7         But the company does believe that it's in the best

8    interest of stakeholders and the company to proceed along these

9    lines.  And therefore, Your Honor, we would present

10   Mr. Sheehan, with the Court's permission -- we'd present

11   Mr. Sheehan for cross examination by the parties.

12        THE COURT:  Okay.  Does anyone want to cross examine

13   Mr. Sheehan?  All right.  Well, Mr. Sheehan, if anything was

14   accomplished by the last hour, at least one thing is clear, you

15   don't have to testify.

16        MR. BUTLER:  And Your Honor, I think, from the

17   company's perspective with the record in place, the matter is

18   now admitted into evidence and the record in place, we think

19   the company has demonstrated, under section 363 of the

20   Bankruptcy Code that we've exercised reasonable business

21   judgment that ought to be confirmed by this Court for purposes

22   of moving forward with the exit financing on the terms and

23   conditions set forth in the exhibits that have now been

24   admitted into evidence.  And of course, subject to the guidance

25   we received from chambers and have discussed with the

27

1    objectors, in moving forward to implement those arrangements.

2    Our hope is that we will be in a position, moving forward, to

3    be able to obtain the commitments and move to the -- a

4    confirmed syndication subsequent to the November 29th hearing

5    in the December timeframe.  That's our goal.  We believe we

6    have the support of our lead arrangers for moving along that

7    timeline.  And we would appreciate Your Honor's consideration

8    of this motion.

9            THE COURT:  Okay.  Does anyone have anything further

10   to say on this matter?

11           MR. BROUDE:  Good morning, Your Honor, Mark Broude,

12   Latham & Watkins on behalf of the creditors' committee.  Quite

13   simply, Your Honor, and I'll be very brief.  We still think

14   this should be adjourned to November 29th.  Signing up this

15   agreement adds yet another party whose consent is required if

16   we're going to change the plan of reorganization.  We share the

17   debtor's hope that we'll be able to negotiate a fully

18   consensual resolution between now and the 29th.  But if we do

19   so, the plan is going to change.  And locking in lead

20   arrangers, now, to a particular plan that may or may not be

21   what ultimately comes before Your Honor on the 29th is not

22   necessarily productive.

23           What do we get by that, three business days.  If work

24   is going to start right after Thanksgiving, it can start on

25   Friday rather than on Monday.  There's not a lot of loss of

28

1    time there.  Whereas, you're locking in another party whose

2    consent we're going to have to get if the plan changes.  We

3    just don't see that there's a benefit to be gained whereas we

4    don't -- whereas if we just push it off to the 29th we can have

5    the lead arrangers on board with a plan that we hope will have

6    everyone's support.

7             THE COURT:  Okay.

8        MR. BRILLIANT:  Good morning, Your Honor, Allan Brilliant

9    on behalf of Caspian Capital, CastleRigg Master Investment,

10   Davidson Kempner Capital Management, Elliott Associates,

11   Numeric Corporate Research and Asset Advisors,

12   Sailfish Capital Partners and White Box Advisors.  Your Honor,

13   we have also filed an objection and enjoinder in the Official

14   Creditors' Committee's objection to this motion.

15       We also believe that it's premature for this to be

16   approved at this point.  As we say in our papers, we believe

17   the debtors are putting, you know, the cart before the horse.

18   They're going out to seek to get financing for a plan that

19   doesn't have the support of four of the creditor constituencies

20   and at this point in time is not confirmable.  We're very

21   concerned that it will create confusion in the marketplace if -

22   - when this plan, you know, will change.  And undoubtedly, you

23   know, will change again.  The cash needs of the debtors are

24   modified or the equity investments are significantly changed.

25   We also don't see the benefit of having this go out -- be

29

1   approved today given the holiday next week and the fact that

2   there's going to be a hearing on the 29th when things are going

3   to be much more definitive.

4        As Your Honor knows this plan has changed, you know,

5   three times in the last six or eight weeks.  Our expectation is

6   it's going to change again.  The debtor's own papers, in their

7   argument today, is that they're going to be having discussions

8   with parties and would hope to resolve these things.  So even

9   they acknowledge it's going to change again in the future.  And

10  consequently, we just think that it's premature at this point.

11       And then under section 363 standards, although it is a

12  business judgment rule, it would be an abuse of discretion of

13  the board to seek to get financing for a plan that doesn't have

14  the support for any significant creditor body.

15       THE COURT:  But as I under -- as I read the

16  engagement letter, it's not financing for a particular plan.

17  And I'll make it perfectly clear in my ruling that that's the

18  case.  And I think there's also no doubt that all the parties

19  in interest believe that there are serious adverse consequences

20  to them if the debtor does not emerge in the timeframe they're

21  seeking to emerge in, and exit financing is necessary for that,

22  whether or not the particular plan on the table is -- is that

23  plan.  So,

24  I -- I think as long as I'm comfortable that those who would

25  be starting to work today, if I approve this motion, understand

30

1  that they're raising money based on the fundamentals of the

2  company and not necessarily a particular investment in the

3  company by the plan sponsors, as recently outlined in the press

4  release, then I'm -- I'm reasonably comfortable that what

5  they're doing is in the best interest of the debtor.

6          MR. BRILLIANT:  Your Honor, I understand your point.

7  Unfortunately the agreement with the proposed lead arrangers

8  would provide, as Mr. Broude, you know, has said that they

9  would have to approve any changes.  So they would be asked to

10  go out and seek financing, again, that they would have the

11  right to veto if they didn't like the way the plan was

12  modified.

13          THE COURT:  Well, it's being considered and

14  ultimately would be approved by me, today, on a pretty clear

15  premise, which is that, as I see it, that approval right is

16  something they should be able to assert if the change in the

17  plan jeopardizes their financing.  Frankly, that's how I viewed

18  the EPCA when I approved it in August.  That the economics of

19  that EPCA, the value of it, was what was to be preserved in the

20  condition saying that the plan will be approved "consistent

21  with" the EPCA.  So I would not want to be in the shoes of a --

22  well, of these lead arrangers if they came back to me and said

23  we're vetoing this plan for some reason other than it

24  jeopardizes their financing.

25          MR. BRILLIANT:  All right.  I have nothing further,

31

1    Your Honor.

2         THE COURT:  Okay.

3         MR. FOX:  Your Honor, Edward Fox from Kirkpatrick and

4    Lockhart on behalf of Wilmington Trust Company as Indenture

5    Trustee, I would just join in Mr. Broude's comments with

6    respect to the committee.  I certain appreciate what you just

7    said and that's, I think, very helpful to us.  The documents

8    are not structured in that fashion, as it stands, in what, you

9    know, was initially in the motion for the Court to approve.  So

10   that certainly would be very helpful if that's changed.

11   Because one of the concerns I have is that we wind up with

12   another club being put in the hand of somebody to beat the

13   creditors with if they don't want to go along with what's being

14   put on the table.

15        THE COURT:  Well, these people -- these arrangers are

16   JP Morgan and CitiCorp, in their capacity as lenders, exit

17   lenders.  They're not going to be able to beat on the creditors

18   because they may hold debt in the company and want some sort

19   of, you know, advantage out of that.  As anyone who enters into

20   a contract with a debtor in possession, they have to deal in

21   good faith, and I'm confident they will.  And that's how I view

22   this motion.  At the same time, I don't view the debtor or the

23   creditors as having some sort of leverage over them.  You know,

24   all they have to do is do their job and raise the financing.  I

25   think we all know the type of plan that would jeopardize that

32

1    financing.

2           MR. ZIMAN:  Your Honor, Ken Ziman from

3    Simpson, Thacher and Bartlett on behalf of JP Morgan in its

4    capacity as a proposed lead arranger here.  I appreciate Your

5    Honor's comments, I understand.  I'll communicate that back to

6    my client.  I obviously haven't spoken to them.  I don't think

7    what Your Honor is contemplating is a problem.  I just would

8    note the one comment I would make on the record is that

9    obviously we care who we lend to, at some level.  So if there's

10   a radical change to the identity of the sponsorship here, that

11   will be something we'd have to take into account.

12          THE COURT:  I understand.  And I think people should

13   take away from my remarks this morning that the identity of the

14   sponsor is very important and how they live up to their

15   responsibilities is very important.  And sometimes a sponsor's

16   reputation, unfortunately, may change during the course of a

17   deal.

18          MR. ZIMAN:  Thank you, Your Honor.

19          THE COURT:  And then they can also clean it up during

20   the course of a deal.

21          MR. SHIFF:  Your Honor, if I may, Adam Shiff of

22   Kasowitz, Benson, Torres and Friedman on behalf of the Trade

23   Committee.  And I don't want to belabor the record.  I know

24   it's late here.  We concur with the remarks made by those on

25   this side and would also request that the Court adjourn it to

33

1    November 29.  However, we don't want to belabor the record by

2    repeating what's already been said.  I just want it to be

3    clear, thank you.

4             THE COURT:  Okay.  All right.  Based upon the record

5    of this hearing, I won't adjourn this motion but will, rather,

6    approve it.  It is clear to me, as a result of this hearing,

7    that the only objection to the financing, and it's a legitimate

8    objection until clarified, is that the financing would be too

9    tied to the present proposal for an investment, by the plan

10   sponsors, in the debtor.

11            However, it's been clarified on the record that that

12   is not the case.  And it's my view that while, ultimately, the

13   financing will depend upon the terms of a plan, certainly for

14   the next several days, if not for longer, the lead lenders'

15   efforts will be based upon the fundamental economic condition

16   of the debtor.  And on that basis, recognizing that there's

17   been no objection to the limited amount of fees or relatively

18   limited amount of fees that would be incurred based on my

19   approval today - and, more importantly, no objection to the

20   fundamental proposition that the debtors, as they have been

21   saying throughout the last several months, are correct in

22   urging that this process continue to move forward promptly --

23   I believe that it's in the best interest of the debtors to take

24   this next step now.  So I'll approve the financing.  And I've

25   reviewed the order and the order is consistent with the record

34

1   and I have no changes in it.  Not "the financing" -- I approve

2   the entry into the agreement with the lead lenders.

3           MR. BUTLER:  Thank you very much, Your Honor.  Your

4   Honor, that's the last matter on today's omnibus agenda.  There

5   is a claims hearing that we filed that will be starting this

6   afternoon --

7           THE COURT:  It's at 1.

8           MR. BUTLER:  -- at 1 o'clock.

9           THE COURT:  Right.  Let me say, and this somewhat

10  reiterates what I said in private, I think the parties, as they

11  have in this case generally, need to work very hard over the

12  next two weeks.  To that end, my view is that if you have a

13  choice between a deposition and a meeting, you should have the

14  meeting and that you should focus on the issues that I've

15  identified as to the direction of the plan.

16          Mr. Butler was correct that I'm of the view that no

17  party in this case should use the need of the debtors, and all

18  of the debtors' constituents, to emerge promptly from Chapter

19  11 now that the debtors have done all of the things that they

20  have done to stabilize their business.  And that includes the

21  agreements with the unions and with GM.  Having set that

22  fundamental basis for their business valuation, and knowing

23  that this is probably one of the most due diligenced companies

24  on the planet, I would hope that with that direction the

25  parties will negotiate, based on value, and not based on some

35

1    perceived leverage that they have deriving from the debtors'

2    desire to emerge from Chapter 11 promptly.  If they don't do

3    that, then I will turn to parties who do take that approach.

4    That is an approach based on fundamental values and not short-

5    term leverage.

6            Okay.  So I'll see whoever's waiting at 1.

7            MR. BUTLER:  Thank you, Your Honor.

8        (Proceedings Concluded at 11:49)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

**I N D E X**

**E X H I B I T S**

| DEBTOR'S | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Declaration of John D. Sheehan | 10 |
| 2-8 | Credit Agreement Documents | 10 |
| 9-16 | Court Documents | 10 |
| 17 | Affidavit of Service | 10 |
| 1 | Declaration of Mr. Sheehan | 12 |
| 2 & 3 | Agreement | 12 |
| 4-12 | Court Documents for Chasse | 13 |
| 13 & 14 | UAW Agreements | 13 |
| 15 | Affidavit of Service | 13 |
| 21 | Declaration of Mr. Sheehan | 19 |
| 2-7 | Financing | 19 |

```
 1                        Documents

 2    8-10              Presentations         19

 3                       E X H I B I T S (Cont.)

 4

 5    DEBTOR'S          DESCRIPTION          PAGE

 6    12-19             Related Court        19

 7                      Documents

 8    20                Summary Objection    19

 9                      Chart

10

11                         RULINGS

12                      Page      Line

13    Order Seeking Interim     8        17

14    Retention Granted

15    Extension of DIP as       11       16

16    Modified By Supplement

17    Granted

18    Approval of Bidding and   16       1

19    Sale Procedures as Modified

20    Approval of Entry into    33       24

21    Sale Procedures with Lead

22    Lenders

23

24

25
```

38

1

2

3

4                          C E R T I F I C A T I O N

5

6      I, Pnina Eilberg, court approved transcriber, certify that the

7      foregoing is a correct transcript from the official electronic

8      sound recording of the proceedings in the above-entitled

9      matter.

10

11     _____ November 19, 2007

12     Signature of Transcriber          Date

13

14     Pnina Eilberg

15     typed or printed name

16

17

18

19

20

21

22

23

24

25