**Hearing Date and Time: February 26, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: 212.859.8000
Facsimile: 212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |
|---|---|
| In re: | Chapter 11 |
| Delphi Corporation, et al., | Case No. 05-44481 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FIFTH INTERIM FEE APPLICATION OF FRIED, FRANK,
HARRIS, SHRIVER & JACOBSON LLP, COUNSEL FOR THE
OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,
FOR COMPENSATION FOR PROFESSIONAL SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES
INCURRED AND POSTED DURING THE PERIOD FROM
JUNE 1, 2007 THROUGH SEPTEMBER 30, 2007**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), attorneys for the

Official Committee of Equity Security Holders (the "Equity Committee ") of Delphi Corporation

("Delphi," and together with the other above-captioned debtors, the "Debtors") in the above-

captioned cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code"), hereby submits this fifth interim fee application (the "Fee

Application") for (i) payment of compensation in the amount of $1,162,531.50, for the

reasonable and necessary legal services rendered by Fried Frank on behalf of the Equity

Committee (the "Fees") during the period from June 1, 2007 through September 30, 2007 (the

"Fee Period"), and (ii) reimbursement in the amount of $33,495.14, for the actual and necessary

expenses incurred and posted (the "Expenses") during the Fee Period.  Fried Frank submits this

Fee Application pursuant to sections 330 and 331 of the Bankruptcy Code and in accordance

with the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation and

Reimbursement of Expenses of Professionals, entered November 4, 2005 (Docket No. 869) (as

supplemented by Docket Nos. 2747, 2986, 3630, 4545, 5310, and 6145, the "Interim

Compensation Order"), the Amended Guidelines for Fees and Disbursements of Professionals in

the Southern District of New York Bankruptcy Cases, adopted by this Court on April 19, 1995

(the "Amended Guidelines"), and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330,

adopted on January 30, 1996 (the "UST Guidelines").  In support of this Fee Application, Fried

Frank respectfully states as follows:

PRELIMINARY STATEMENT

1.      The Equity Committee retained Fried Frank on May 8, 2006, subject to

Bankruptcy Court approval, which was subsequently obtained on June 19, 2006.  In assisting

the Equity Committee during the Fee Period, Fried Frank devoted and, through the present

date, Fried Frank continues to devote, a significant amount of professional effort to reviewing

the pressing transformational and plan structure issues in the Chapter 11 Cases, including issues

relating to the Debtors' chapter 11 plan and related disclosure statement, the Equity Purchase

and Commitment Agreement and General Motors Corporation ("GM").  In addition, Fried

Frank is working with the Equity Committee in its attempt to effectuate a resolution of the

Chapter 11 Cases in a manner that maximizes value for all of the Debtors' constituencies.

2.      The Interim Compensation Order provides that, no later than the last calendar day of the second month following each four-month fee application period, professionals may request court approval of the compensation and reimbursement of expenses requested.  In accordance with the Interim Compensation Order, Fried Frank now submits its fifth interim fee application.

BACKGROUND

3.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their properties as debtors-in-possession.  This Court entered orders directing the joint administration of the Chapter 11 Cases.

4.      On October 17, 2005, the Office of the United States Trustee (the "UST") appointed the official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

5.      On March 30, 2006, the Court entered an order (the "Equity Committee Order") directing the UST to appoint a committee of equity security holders pursuant to section 1102 of the Bankruptcy Code.

6.      On April 28, 2006, the UST appointed the Equity Committee.  On May 8, 2006, the Equity Committee determined, subject to Court approval, to retain Fried Frank as its counsel.  The retention of Fried Frank *nunc pro tunc* to May 8, 2006 was approved by this

3

Court by order dated June 19, 2006 (the "Retention Order").[1]

7.      On May 5, 2006, the Court entered an order establishing a Joint Fee Review Committee, among other things.

8.      On July 31, 2006, Fried Frank filed its first interim fee application for the period from May 8, 2006 through May 31, 2006 (the "First Interim Fee Application"). The First Interim Fee Application sought the allowance of (i) fees in the amount of $598,265.00 and (ii) expenses in the amount of $5,451.63. After discussions with the Joint Fee Review Committee, Fried Frank agreed to reduce its fees sought in the First Interim Fee Application by $10,700.00. In accordance with the omnibus order granting second interim applications for the February 1, 2006 through May 31, 2006 period, Fried Frank was awarded $587,565.00 in professional fees and $5,451.63 in expenses. Fried Frank has received payment of these fees and expenses.

9.      On November 30, 2006, Fried Frank filed its second interim fee application for the period from June 1, 2006 through September 30, 2006 (the "Second Interim Fee Application"). The Second Interim Fee Application sought the allowance of (i) fees in the amount of $2,637,791.00 and (ii) expenses in the amount of $162,011.61. After discussions with the Joint Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Second Interim Fee Application by $40,000.00. In accordance with the omnibus order granting third interim applications for the June 1, 2006 through September 30, 2006 period, on February 15, 2007, Fried Frank was awarded $2,633,791.00 in professional fees and $162,011.61 in expenses. Fried Frank has received payment of these fees and expenses.

---

[1]      A copy of the Retention Order is attached hereto as **Exhibit A**.

4

10.     On March 29, 2007, Fried Frank filed its third interim fee application for the period from October 1, 2006 through January 31, 2007 (the "Third Interim Fee Application"). The Third Interim Fee Application sought the allowance of (i) fees in the amount of $2,701,363.00 and (ii) expenses in the amount of $133,271.20.  After discussions with the Joint Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Third Interim Fee Application by $38,800.00.  In accordance with the omnibus order granting fourth interim applications for the October 1, 2006 through January 31, 2007 period, on June 27, 2007, Fried Frank was awarded $2,677,963.00 in professional fees and $117,871.20 in expenses.  Fried Frank has received payment of these fees and expenses.

11.     On July 31, 2007, Fried Frank filed its fourth interim fee application for the period from February 1, 2007 through May 31, 2007 (the "Fourth Interim Fee Application"). The Fourth Interim Fee Application sought the allowance of (i) fees in the amount of $1,126,528.00 and (ii) expenses in the amount of $55,322.84.  After discussions with the Joint Fee Review Committee, Fried Frank agreed to reduce its fees sought in the Fourth Interim Fee Application by $24,800.00.  In accordance with the omnibus order granting fifth interim applications for the February 1, 2007 through May 31, 2007 period, on October 29, 2007, Fried Frank was awarded $1,103,528.00 in professional fees and $53,522.84 in expenses.  To date, Fried Frank has received payment equal to 80% of these fees and 100% of these expenses.

12.     During the Fee Period, Fried Frank submitted monthly fee statements in accordance with the Interim Compensation Order for the periods June 1, 2007 through June 30, 2007 (the "June Fee Period"), July 1, 2007 through July 31, 2007 (the "July Fee Period"), August 1, 2007 through August 31, 2007 (the "August Fee Period"), and September 1, 2007

5

through September 30, 2007 (the "September Fee Period").  To date, Fried Frank has received

payment equal to 80% of fees and 100% of expenses incurred during the June Fee Period, the

July Fee Period, and the August Fee Period, and 70% of fees and 100% of expenses incurred

during the September Fee Period.

### JURISDICTION AND VENUE

13.     This Court has jurisdiction over the Fee Application pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before

this Court pursuant to 28 U.S.C. § 1409.

### COMPLIANCE WITH APPLICABLE ORDERS AND GUIDELINES

14.     This Fee Application has been prepared in compliance with the Interim

Compensation Order, the Amended Guidelines, and the UST Guidelines.  Pursuant to the

Amended Guidelines, a certification regarding compliance is attached hereto as **Exhibit B**.

### SUMMARY OF APPLICATION

15.     Since its retention in the Chapter 11 Cases, Fried Frank has acted as counsel to the

Equity Committee and advised the Equity Committee with respect to the numerous issues that

confront the Debtors and the Debtors' equity security holders, consistent with the Equity

Committee Order.  As more fully described below, the professional services rendered by Fried

Frank have included, among others:

(i)     assisting, advising and representing the Equity Committee in its meetings
with the Debtors, the Creditors' Committee, equity holders and potential
investors;

(ii)    assisting, advising and representing the Equity Committee in evaluating
and analyzing the various labor issues involving the Debtors, their unions,
and their workforce, including issues related to the memoranda of

understanding among Delphi, GM and Delphi's labor unions and the
Debtors' attrition programs.

(iii)    assisting, advising and representing the Equity Committee in its evaluation
of various claims by and against GM and in connection with the Global
Settlement Agreement and the Master Restructuring Agreement with GM.

(iv)    assisting, advising and representing the Equity Committee in its evaluation
and negotiation of various framework restructuring proposals and
numerous versions of such proposals put forth by certain potential plan
investors;

(v)    assisting the Equity Committee in evaluating the various term sheets,
restructuring proposals and drafts developed by various parties-in-interest
in the Chapter 11 Cases, including agreements with plan investors, and in
reviewing and responding to the Debtors' motions for approval of the
Equity Purchase and Commitment Agreement;

(vi)    assisting, advising and representing the Equity Committee in reviewing
evaluating and analyzing the Debtors' Joint Plan of Reorganization of
Delphi Corporation Certain Affiliates, Debtors and Debtors-in-Possession
(the "Plan") and the disclosure statement with respect to the Plan (the
"Disclosure Statement"), and amendments and revisions thereto and in
reviewing and responding to the Debtors' Motion for Order Approving the
Disclosure Statement (the "Disclosure Statement Motion") and
amendments and revisions thereto.

(vii)    assisting, advising and representing the Equity Committee in the
performance of its duties and powers under the Bankruptcy Code and the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and
assisting the Equity Committee in becoming fully versed in issues of the
Chapter 11 Cases.

(viii)    assisting, advising and representing the Equity Committee in reviewing
and determining the Equity Committee's rights and obligations;

16.    During the Fee Period, partners, counsel and associates of Fried Frank have

devoted many hours to the Chapter 11 Cases, and have addressed, and continue to address, the

issues and concerns of the Equity Committee in an effort to assist with the reorganization of the

Debtors' business.

17.    During the Fee Period, the partners, counsel, associates and paraprofessionals of

7

Fried Frank devoted approximately 1,843.3 hours in the rendition of professional services on behalf of the Equity Committee. A schedule setting forth the number of hours expended by each of the partners, counsel, associates and paraprofessionals of Fried Frank accompanies this Fee Application as **Exhibit C**.

18.    In addition, Fried Frank is requesting reimbursement of disbursements in the amount of $33,495.14 for expenses incurred and posted during the Fee Period. With respect to the disbursements incurred and posted, Fried Frank has eliminated a number of disbursements that are non-compensable. A schedule setting forth the categories of expenses for which Fried Frank is seeking reimbursement and the total amount for each expense category is attached hereto as **Exhibit D**.

19.    Pursuant to section II.D. of the UST Guidelines, a schedule setting forth a description of the project categories utilized by Fried Frank in the Chapter 11 Cases, the number of hours expended by the partners, counsel, associates, and paraprofessionals of Fried Frank by project category, and the aggregate fees associated with each project category is attached hereto as **Exhibit E**.

20.    There does not exist any agreement or understanding between Fried Frank and any other entity for the sharing of compensation to be received for services rendered in or in connection with the Chapter 11 Cases.

<u>REASONABLE AND NECESSARY SERVICES RENDERED BY FRIED FRANK</u>

21.    Set forth below is a description of the services rendered during the Fee Period. The attorneys and paraprofessionals of Fried Frank maintained daily detailed records of their time concurrently with the rendition of professional services. To the extent possible, the details

8

of each and every conference, telephone conversation, negotiating session, letter, memorandum, factual investigation, drafting activity and research project that occupied the time of a Fried Frank professional were set forth in such time records.  Accompanying this Fee Application as **Exhibit F** are compilations of the contemporaneous daily time entries recorded by Fried Frank's attorneys and paraprofessionals during the Fee Period.  Those entries describe in detail the services rendered by each attorney and paraprofessional, as corrected to reflect errors that were found in Fried Frank's review.  Accordingly, the following is intended to serve as a summary description of the principal professional services Fried Frank rendered, and to highlight the benefits that were thereby conferred upon the Equity Committee.

General Committee Matters

22.    Fried Frank rendered a total of 270.6 hours and $161,661.50 in services falling within the category of "General Committee Matters."  This category includes time spent on various matters that did not expressly fall into other categories, including participating in various meetings and telephone conferences with the Debtors, the Creditors' Committee and other key parties in the Chapter 11 Cases.  In addition, Fried Frank spent numerous hours (i) researching and discussing general issues related to the Debtors' restructuring and (ii) preparing and revising memoranda necessary to understand those issues that do not fall into the more specific categories set forth in this Fee Application.  For example, during the Fee Period, Fried Frank reviewed, analyzed and commented on correspondence in connection with proposals from potential equity investors, performed research under the Bankruptcy Code and drafted correspondence.  Moreover, Fried Frank lawyers also attended to the general management of the Equity Committee and its members.

Plan and Disclosure Statement

23.      Fried Frank rendered a total of 279.7 hours and $174,411.00 in services falling

within the category of "Plan and Disclosure Statement."  This category includes time Fried

Frank attorneys spent reviewing, analyzing and commenting on drafts of and documents related

to the Plan and Disclosure Statement filed with the Court on September 6, 2007 including

exhibits related to the Plan and Disclosure Statement.  Fried Frank also addressed and analyzed

issues with respect to the solicitation package and Disclosure Statement Motion, and composed

a letter to existing shareholders to be included in solicitation materials.

Meetings and Communications with Equity Holders

24.      Fried Frank rendered a total of 348.4 hours and $240,585.50 in services falling

within the category of "Meetings and Communications with Equity Holders."  This category

includes time Fried Frank spent preparing for and attending meetings with the Equity

Committee, including the Equity Committee regularly-scheduled weekly calls, and related

communications with the Equity Committee.  The weekly meetings served to keep the Equity

Committee updated on all developments and issues facing the Debtors and equity holders.  This

category also includes time Fried Frank spent attending joint statutory committee meetings with

members of the Equity Committee hosted by the Debtors and communicating with equity

holders who are not members of the Equity Committee.

Hearings

25.      Fried Frank rendered a total of 27.6 hours and $16,336.50 in services falling

within the category of "Hearings."  This category includes time Fried Frank attorneys spent

attending omnibus hearings on June 26, 2007, July 19, 2007, August 16, 2007, and September

27, 2007.  In addition, this category includes time Fried Frank attorneys spent attending and

participating in chambers conferences, claims hearings and status conferences.

Miscellaneous Litigation and Motions

26.     Fried Frank rendered a total of 316.6 hours and $195,489.00 in services falling

within the category of "Miscellaneous Litigation and Motions."  This category includes time

Fried Frank spent analyzing, researching and preparing memoranda, statements and objections

addressing issues related to various pleadings filed during the Fee Period.  For example, this

category includes time spent by Fried Frank reviewing, analyzing and addressing (i) the multi-

district securities litigations pending against Delphi, (ii) the pleadings filed in connection with

the GM and labor union settlements and (iii) the Debtors' Expedited Motion for Order

Authorizing and Approving the Delphi-Appaloosa Equity Purchase and Commitment

Agreement and related pleadings.  It also includes time spent preparing for each of the omnibus

hearings and status conferences that were held throughout the Fee Period.

Tax

27.     Fried Frank rendered a total of 51.5 hours and $30,523.00 in services falling

within the category of "Tax."  Fried Frank devoted time to reviewing, analyzing and

commenting on tax issues in connection with the Debtors' Plan and Disclosure Statement.  This

category included addressing issues related to (i) net operating losses, (ii) the tax structure of

various investment proposals and (iii) the tax disclosures in the Debtors' Plan and Disclosure

Statement.

Pension

28.     Fried Frank rendered a total of 2.7 hours and $1,651.50 in services falling within

the category of "Pension."  This category includes time Fried Frank spent addressing issues

related to excise tax impositions in bankruptcy and pension funding requirements.

<u>1113/1114 Issues</u>

29.    Fried Frank rendered a total of 12.0 hours and $8,669.50 in services falling within the category of "1113/1114 Issues."  This category includes time Fried Frank spent reviewing and analyzing documents in connection with the settlement agreements between the Debtors and various labor unions.

<u>Other Labor Matters</u>

30.    Fried Frank rendered a total of 22.0 hours and $13,852.50 in services falling within the category of "Other Labor Matters."  This category includes time Fried Frank spent reviewing and analyzing memoranda of understanding between the Debtors and various labor unions.

<u>Relationship with Primary Customer</u>

31.    Fried Frank rendered a total of 20.40 hours and $15,089.50 in services falling within the category of "Relationship with Primary Customer."  This category includes time Fried Frank spent reviewing and analyzing the relationship between the Debtors and GM, including GM's proof of claim and claims against GM.

<u>Fee Applications and Retention</u>

32.    Fried Frank rendered a total of 100.6 hours and $36,386.50 in services falling within the category of "Fee Applications and Retention."  This category includes time Fried Frank spent preparing, reviewing and revising the Fourth Interim Fee Application and Fried Frank's monthly fee statements that were served during the Fee Period in accordance with the Interim Compensation Order.

12

Settlement and Restructuring

33.     Fried Frank rendered a total of 391.2 hours and $267,875.50 in services falling within the category of "Settlement and Restructuring."  Fried Frank devoted time analyzing and discussing term sheets, proposals and drafts in connection with the EPCA, the Debtors' settlement agreements with GM and the labor unions and the Debtors' Plan and Disclosure Statement.  Fried Frank also researched, prepared and reviewed potential alternate proposals and discussed such proposals with the members of the Equity Committee.  In connection with these proposals, Fried Frank worked with Houlihan Lokey Howard & Zukin, the Equity Committee's financial advisor, and the Equity Committee to evaluate various structures and terms, including terms of certain securities to be distributed to equity holders.  Additionally, Fried Frank assisted the Equity Committee in considering and pursuing alternative framework options.

34.     During the fee period Fried Frank also spent time attending meetings and conferences with the Debtors, Creditors' Committee, Plan Investors and other potential investors, and communicating with the Equity Committee with respect to restructuring proposals and responding to questions posed by various members of the Equity Committee. Fried Frank also spent substantial time reviewing, researching, analyzing and drafting memoranda regarding the treatment of equity holders.

## FRIED FRANK'S FEES AND EXPENSES ARE FAIR AND REASONABLE

35.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, Fried Frank believes that the total fees and expenses for the Fee Period are fair and reasonable in view of the time spent, the complexity and intricacy of the proceedings, and the problems and issues encountered.  Fried Frank and the Equity Committee worked diligently throughout

13

the Fee Period to address key issues in the Chapter 11 Cases as expeditiously as possible.

Therefore, in accordance with the factors enumerated in 11 U.S.C. §330(a)(3), Fried Frank

believes that the compensation sought herein should be approved.

<u>APPLICABLE AUTHORITY</u>

36.     In awarding compensation pursuant to section 328 of the Bankruptcy Code to

counsel for an official equity committee, this Court must take into account the reasonableness

of the terms and conditions of employment.  Section 328(a) of the Bankruptcy Code provides in

pertinent part:

> (a)     The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

37.     In awarding compensation to professionals pursuant to section 330 of the

Bankruptcy Code, this Court must take into account the cost of comparable non-bankruptcy

services, among other factors.  Section 330(a) of the Bankruptcy Code provides in pertinent

part:

> (1)    . . . [T]he court may award to a trustee, an examiner, a professional person employed under section 327 or 1103 -
>
> (A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person,

14

or attorney and by any paraprofessional person employed by any such person; and

      (B)    reimbursement for actual, necessary expenses.

*   *   *

    (3)   (A)   In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

      (A)    the time spent on such services;

      (B)    the rates charged for such services;

      (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

      (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

      (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

    38.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, Fried Frank respectfully submits that the fees and expenses incurred in the course of rendering professional services are actual, necessary and reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in non-bankruptcy cases, so as to best serve the needs of the Equity Committee and the Debtors' estates.  Fried Frank submits further that the legal services performed herein among partners, associates and paraprofessionals have been executed in accordance with the principles outlined above and, moreover, in a manner consistent with the overall goal of Fried Frank to provide the highest quality of legal representation at a reasonable cost.  Fried Frank has demonstrated by

15

this Fee Application that the work it has done on behalf of the Equity Committee was

necessary, reasonable and beneficial to the Debtors' equity security holders, unsecured

creditors and the Debtors' estates.

39.      This Fee Application clearly reflects (i) the number of hours of recorded time

Fried Frank has devoted to the performance of legal services; (ii) the number of hours worked

by each of Fried Frank's professionals and paraprofessionals and the hourly rate customarily

charged by such persons; (iii) a detailed description of the services provided by Fried Frank's

professionals and paraprofessionals during each of those hours; and (iv) the quality and nature

of the services provided by each of Fried Frank's professionals and paraprofessionals.  Fried

Frank submits that its fees and expenses were actual, necessary, reasonable and justified and

should, therefore, be allowed in full.

<u>COMPENSATION REQUESTED</u>

40.      Given the circumstances of the Chapter 11 Cases, the professional services

rendered by Fried Frank require an expenditure of a great deal of time and effort.  During the

Fee Period, 1,843.3 recorded hours were expended by Fried Frank's partners, counsel,

associates and paraprofessionals in the rendition of Fried Frank's professional services.

41.      Fried Frank believes that its services were rendered in a highly efficient manner,

by attorneys with high levels of skill in the areas for which they rendered services.  The core

group of attorneys working on this matter has expended considerable time in connection with

the Equity Committee's general legal needs and in furtherance of the Equity Committee's goal

of furthering the interests of all equity security holders.  This experienced group of attorneys

makes every effort to ensure that the Chapter 11 Cases progress in the most efficient and

16

expeditious manner and result in the successful reorganization of the Debtors.

42.    For all the foregoing reasons, Fried Frank respectfully requests approval and allowance of its compensation in the amount of $1,162,531.50, with an authorization for, and direction to, the Debtors to disburse such amounts to Fried Frank.  This Fee Application is Fried Frank's fifth interim fee application for allowance of fees and disbursements incurred by Fried Frank as counsel to the Equity Committee.  An allowance of compensation in the amount sought in this Fee Application would result in a blended aggregate average billing rate of approximately $646.85 per hour (excluding paraprofessionals) and a blended rate of approximately $630.68 per hour (based on recorded hours).

<u>EXPENSES</u>

43.    As noted above, Fried Frank incurred and posted disbursements in the amount of $33,495.14 for actual and necessary expenses incurred and recorded during the Fee Period. These disbursements are itemized in **Exhibit D**.

44.    Fried Frank's billing rates do not include components for duplicating, word processing, and other extraordinary charges that may be incurred by particular clients because of the exigencies of time and volume of demand.  Fried Frank's billing method, whereby only the clients who use copying, word processing and other office services are charged for such services, maximizes fairness to all clients.  Fried Frank commenced a comprehensive study and review to determine its actual costs per page for duplicating.  Such study and review determined that, at the present time, Fried Frank's actual duplicating cost is 12¢ per page.  In November 2006, Fried Frank became aware that the Fee Committee was taking the position that reimbursement for photocopies should be limited to 10¢ per page.  Fried Frank believes

17

that, pursuant to the Local Guidelines, photocopies should be reimbursed at Fried Frank's 12¢ per page actual cost.  However, upon learning of the Fee Committee's position, Fried Frank immediately and voluntarily adjusted its charges from that point forward to 10¢ per page.

45.    Fried Frank's billing rates do not include a component for word processing as part of overhead.  Some time ago, Fried Frank analyzed its method of charging clients for word processing services and, specifically, whether it was appropriate to charge clients for word processing as part of overhead or based on the extent to which word processing was used. After such analysis, Fried Frank elected to keep its charges for word processing as a disbursement.  Fried Frank concluded that it was fairer to its clients not to increase its billing rates to account for word processing services that might or might not be used by the client.  In this way, only clients who used such services would be charged for services.

46.    The time constraints imposed by the time-sensitive circumstances of these Chapter 11 Cases and by the size and complexity of these Chapter 11 Cases required Fried Frank's attorneys and other employees to devote substantial amounts of time during the evenings and on weekends to the performance of legal services on behalf of the Equity Committee.  As a consequence, Fried Frank was required to incur overtime secretarial charges to discharge its professional responsibilities.

47.    Fried Frank attempted to reduce overtime secretarial charges and to limit them to instances where such were necessary, by encouraging its attorneys to use a secretarial pool.  If a secretary was not needed at the attorney's desk for the entire evening, the attorney was required to bring his or her work to the firm's secretarial pool.  The client was then only charged for the word processing charges associated with the document, rather than charging the client for a

18

secretary spending an entire evening at a desk whether or not the attorney actually used the secretary for the entire time.

48.     Fried Frank incurred expenses for delivery of documents.  Furthermore, Fried Frank's attorneys and other employees who worked overtime and late into the evenings were reimbursed for their reasonable meal costs and their transportation costs home.  Such transportation costs are necessary expenses because it is a Fried Frank policy to ensure safe transportation for its attorneys and staff after the hours when public transportation cannot be deemed safe.  Fried Frank's regular practice is to charge its clients for these and other out-of-pocket disbursements incurred during the regular course of the rendition of services.

49.     Fried Frank made every effort to minimize its disbursements in providing its legal services to the Equity Committee.  The expenses incurred in the rendition of professional services were necessary, reasonable and justified under the circumstances to serve the needs of the Equity Committee and were billed at rates and in accordance with practices customarily employed by Fried Frank and generally accepted by Fried Frank's clients.

## WAIVER OF MEMORANDUM OF LAW

50.     Pursuant to Local Rule 9013-1(b), Fried Frank respectfully requests that the Court waive the requirement that Fried Frank file a memorandum of law in support of this Fee Application, since this Fee Application raises no novel issues of law.

## NOTICE

51.     In compliance with the Interim Compensation Order, notice of the filing of this Fee Application has been provided to all parties who have filed a notice of appearance with the Clerk of this Court and requested notice of pleadings in these Chapter 11 Cases.  In addition,

the Fee Application in its entirety has been served on the following parties: (i) Delphi

Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Att'n: David Sherbin, Esq., (ii)

counsel to the Debtors, Skadden, Arps, Slate & Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606, Attn.: John Wm. Butler Jr., (iii) the Office of the

United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100,

New York, New York 10004, Att'n: Alicia M. Leonhard, Esq., (iv) counsel for the Official

Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York,

New York 10022-4802, Att'n: Robert J. Rosenberg, Esq., (v) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017, Att'n: Marissa Wesley, Esq., (vi) counsel for the agent under the

Debtors' postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017, Att'n: Donald Bernstein, Esq. and Brian Resnick, Esq., (vii) the

members of the Fee Review Committee, and (viii) Legal Cost Control Inc., 255 Kings Highway

East, Haddonfield, NJ 08033, Att'n: Susan Trevejo.  In light of the nature of the relief

requested, the Equity Committee submits that no other or further notice is necessary.

<u>CONCLUSION</u>

52.    Although every effort has been made to include all Fees and Expenses incurred in

the Fee Period in this Fee Application, some Fees and Expenses might not be included in this

Fee Application due to delays caused by accounting processing procedures.  Fried Frank

reserves the right to make further application to this Court for allowance of such Fees and

Expenses not included herein.  Subsequent fee applications will be filed in accordance with the

Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules, and the Interim

Compensation Order.

53.      For the reasons set forth above, Fried Frank respectfully submits that the
professional services rendered and disbursements incurred and posted on behalf of the Equity
Committee were of substantial benefit to the Equity Committee, other equity holders, creditors
and the Debtors.  Fried Frank submits further that it provided such services in an economical
and efficient manner.  Accordingly, Fried Frank respectfully requests that the relief requested
in this Fee Application be granted in full.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, Fried Frank requests that it be allowed and paid interim compensation for its Fees and Expenses in the total amount of $1,196,026.64 consisting of (a) $1,162,531.50 for reasonable and necessary professional services rendered by Fried Frank, and (b) $33,495.14 for actual and necessary Expenses incurred on behalf of the Equity Committee.  Fried Frank further requests that the total amount of $1,196,026.64 be paid as an administrative expense of the Debtors' estates.

Dated:  New York, New York
        November 30, 2007

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By: /s/ Bonnie Steingart
    Bonnie Steingart (BS-8004)
    Debra M. Torres (DT-9093)

One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

602956

22