Hearing Date: December 20, 2007 @ 10:00 a.m.
Objection Deadline: December 13, 2007 @ 4:00 p.m.

McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York 10167
Eduardo J. Glas (EG-7027)
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
Attorneys for Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc.,
and Automodular Assemblies (Ohio) Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: <br><br> DELPHI CORPORATION INC., et al. <br><br> Debtors. | Chapter 11 <br><br> Case Nos. 05-44481 (RDD) <br> (Jointly Administered) |

**MOTION OF AUTOMODULAR ASSEMBLIES INC., TEC-MAR DISTRIBUTION SERVICES, INC., AND AUTOMODULAR ASSEMBLIES (OHIO) INC. TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND MOTION TO ALLOW AND DIRECT PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Automodular Assemblies Inc. and its wholly-owned subsidiaries Tec-Mar Distribution Services, Inc., and Automodular Assemblies (Ohio) Inc. (collectively, "Automodular" or "Movant") hereby move (the "Motion") to compel assumption or rejection of executory contracts and in support thereof assert as follows:

## BACKGROUND

1. On October 8, 2005, Delphi and certain of its subsidiaries and affiliates filed for bankruptcy protection pursuant to Chapter 11 of Title 11 of the Bankruptcy Code.

Page 1

A.  **The U.S. Contract**

2.  In or about March 2004, Automodular Assemblies (Ohio) Inc. and Delphi Automotive Systems LLC ("Delphi" or "Debtor") entered into a contract (hereinafter the "U.S. Contract") whereby Automodular agreed to provide services to Delphi as specified amongst other items, in purchase orders and work orders. A copy of the U.S. Contract is attached as Exhibit A to the Affidavit in Support.[1]

3.  As of the Petition Date, no less than $147,306.27 was owed by the Debtors under the U.S. Contract. Automodular timely filed a Proof of Claim (the "Claim") and the Debtors objected to the Claim. The objection remains unresolved to date.

4.  Pursuant to the U.S. Contract, Delphi was to pay Automodular for work performed at the Lordstown assembly plant, which produces the GMX001 Chevrolet Cobalt and GMX001 Pontiac Pursuit/G4/G5. Per the U.S. Contract, Delphi could order certain changes in the amount or extent of the work provided. Effective July 17, 2006, the following changes were made by Delphi under the scope of production: (1) shifts were reduced from 3 shifts to 2 shifts; and (2) there was an increase line rate from 54 net jobs per hour to 63 net jobs per hour. On July 19, 2006, Automodular provided Delphi with documentation of the changes. Pursuant to the U.S. Contract, Automodular also provided the per unit cost of production to sub-assemble and sequence compressor radiator fan modules for Delphi for installation on the vehicles and requested an equitable price adjustment. Despite numerous efforts by Automodular to meet and confer over the price adjustments as required by the U.S. Contract, Delphi has refused to

---

[1] Tec-Mar Distribution Services, Inc. also had a contract with Delphi for the provision of services (the "Tec-Mar Contract"). The Tec-Mar Contract has been terminated. However, as of the petition date, a total of $79,722.35 was owed under the Tec-Mar Contract.

**Page 2**

negotiate price adjustments necessitated by Delphi's changes in the scope of production. This was a breach of Delphi's obligations under the U.S. Contract.

5.   As a result, of the change in scope, among other things, required by the Debtor, additional amounts have accrued that remain unpaid. As of September 30, 2007, no less than $625,132.73 was due and owing from the Debtor for post-petition goods and services provided by Automodular under the U.S. Contract. The price adjustments made by Automodular reflect the fair market value for the services and goods provided and are representative of the parties' business relationship for similar work. Additional costs for goods and services continue to accrue on a daily basis. An Affidavit in support is attached hereto.

**B.   The Ontario Contract**

6.   In addition to the U.S. Contract, Automodular Assemblies Inc. contracted with Delphi under a Long Term Contract, as recently amended in June 2005 (the "Ontario Contract" and collectively with the U.S. Contract, the "Contracts"). A copy of the Ontario Contract is attached as Exhibit C to the Affidavit in Support. Pursuant to the Ontario Contract, Delphi would contract with General Motors of Canada ("GM") for the supply and installation of various car parts. In turn, Delphi contracted with Automodular for Automodular's sub-assembly and sequencing services of condensers, radiators and fan modules, which were ultimately installed in GM vehicles.

7.   The Ontario Contract provided a schedule setting out estimated yearly volumes required by Delphi for installations and related prices. Automodular agreed to these prices only with respect to the volumes set out in the schedule attached to the contract.

8. Delphi has failed to perform under the Ontario Contract in several ways, including without limitation, failing to comply with (a) a foreign exchange adjustment clause; (b) to negotiate in good faith for price adjustments contemplated in the contract to changes in the scope of work; and (c) requirements for payment of termination costs for discontinued programs. By way of example, pursuant to the general terms and conditions incorporated into the Ontario Contract, Delphi could require Automodular to implement changes to the specifications of the goods or the scope of any work covered by the Contract, i.e., order a "change in scope." Delphi was obligated to equitably determine any adjustment in price or delivery schedules relating from such changes. If a disagreement arose, Delphi and Automodular were obligated to work to resolve the disagreement in good faith.

9. Beginning in January 2006 and continuing through November of 2006, Delphi issued notices of change in scope. Automodular provided Delphi with documentation of the changes in per unit cost of production and requested an equitable price adjustment to account for the change in volume based on the new per unit cost.

10. Despite its contractual obligation to equitably address price changes as a result of the change in scope of work and to work in good faith to resolve the pricing disagreement, Delphi unilaterally refused to comply with any price adjustment. Automodular has continued to perform the work in accordance with its obligations.

11. As of the Petition Date, no less than $322,249.11 was owed by the Debtors under the Ontario Contract. Automodular timely filed a Proof of Claim (the "Ontario Claim") to which the Debtors have objected. To date, the objection remains unresolved.

ME1 6879403v.1
ME1 6938054v.1
ME1 6952306v.1

12.     As a result of the ongoing dispute, additional amounts have accrued that remain unpaid. As of September 30, 2007, no less than $1,042,756.83 is due and owing from the Debtor for post-petition goods and services provided by Automodular under the Ontario Contract. The price adjustments made by Automodular reflect the fair market value for the services and goods provided and are representative of the parties' business relationship for similar work. Additional costs for goods and services continue to accrue on a daily basis.

## ARGUMENT

### A.    The Contracts Must be Immediately Assumed or Rejected

13.     A debtor-in-possession may generally elect to assume or reject an executory agreement "at any time before the confirmation of a plan[.]" 11 U.S.C. §365(d)(2). A non-debtor party to an executory contract, however, may request an order fixing a specified period of time within which the trustee or debtor-in-possession must elect whether to assume or reject the Contracts. See 11 U.S.C. §365(d)(2).

14.     A debtor has only a reasonable amount of time under the facts and circumstances of the case in which to make the decision either to assume or reject a contract. In the Matter of Holly's, Inc., 140 B.R. 643, 682 (Bankr. W.D. Mich. 1992). What is a reasonable time period in a given case is left to the discretion of the bankruptcy court. In the matter of Dunes Casino Hotel, 63 B.R. 939, 949 (D.N.J. 1986) (citing, Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105 (2d Cir. 1982)). In determining what is a "reasonable time," the Court should consider the following four factors: "[t]he nature of the interests at stake, the balance of the harm to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary."

Page 5

Id. (quoting, In re GHR Energy Corp., 41 B.R. 668, 676 (Bankr. D. Mass. 1984)). (citations omitted).

15.     With regard to the above referenced factors, Movants respectfully submit that the balance weighs in favor of compelling Debtors to immediately assume or reject the Contracts. Debtors incurred substantial pre and post-petition expenses for services provided pursuant to the Contracts. As a result, Automodular has sustained large economic losses due to Debtors' failure to pay for the services provided. Congress did not intend for debtors, such as Delphi, to continue to incur debts at a substantial rate without compensation to the creditor for its loss. As such, the Debtors should be compelled to immediately assume or reject the Automodular Contracts.

**B.      Even if the Contracts are Rejected, the Debtors are Required to Make Payment to Automodular**

16.     Until the Debtors have elected to assume or reject the contracts, the debtor-in-possession must continue perform its post-petition obligations under the contract. *See, e.g.,* Philadelphia Co. v. Dipple, 312 U.S. 168, 174, 61 S.Ct. 538, 85 L. Ed.2d 651 (1941). Automodular continues to provide ongoing services to Debtors in accordance with the Contracts. As of the petition date, Debtors owed Automodular approximately $549,277.73 for pre-petition services rendered. Debtors continue to accrue monthly charges for services rendered post-petition and as of the date of this Motion, an additional $1,667,889.56 is owed for post-petition services. As Delphi receives the benefit of those services, it is required to promptly pay for the services which are continuously being provided to Debtors on an ongoing basis.

17.     The post-petition amounts owed should be paid in full and in cash. Section 503(b) of Title 11 of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall

Page 6

be allowed administrative expenses, ... including -- the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. §503(b)(1)(A). While the Bankruptcy Code does not itself elaborate on what constitutes an actual, necessary cost or expense of preserving a debtor's estate, "[i]f the debtor in possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor in possession is obligated to pay for the reasonable value of those services which, depending on the circumstances of a particular contract, may be what is specified in the contract." NLRB v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984) (internal citations omitted).

18. The fair market value for the services and goods provided as also represented by the parties' business relationship for similar work is the presumed reasonable value of the services to the debtor in possession. In the absence of evidence to the contrary, Automodular is entitled to the usage amount as the reasonable benefit to the Debtors of the use of the services. The Debtors should not be permitted to reap the benefit of the use of these services without compensating Automodular for such use. Thus, Automodular is entitled to immediate payment of an administrative expense claim for the full value of the services rendered and which continue to accrue post-petition, under the Contracts. In addition, administrative expenses which arise under 11 U.S.C. §503(b) are entitled to first priority pursuant to 11 U.S.C. §507(a)(1). The Court has the discretion to order the Debtors to immediately pay an allowed administrative expense claim. See In re Continental Airlines, Inc., 146 B.R. 520, 531 (Bankr. D. Del. 1992). As such, Movants request that the Court enter an Order compelling the Debtors to make immediate payment to Automodular in the amount of any accrued post-petition payments as an administrative expense claim as and when they become due.

## NOTICE OF MOTION

19.  Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 19, 2007 (Docket No. 10661). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## WAIVER OF MEMORANDUM OF LAW

20.  Because this Motion presents no novel issues of law, Movant respectfully requests that the Court waive the requirement for the filing of a separate memorandum of law in support of this Motion pursuant to L.B.R. 9013-1(b).

ME1 6879403v.1
ME1 6938054v.1
ME1 6952306v.1

WHEREFORE, Automodular respectfully request that this Court grant the relief requested in the above motion by (1) compelling the Debtors to immediately assume or reject the Contracts; (2) compelling Debtors to cure all defaults under the assumed Contracts; and (3) granting such other and further relief as deemed just and proper.

Dated: November 30, 2007
New York, New York

        Respectfully submitted,

        **MCCARTER & ENGLISH, LLP**

        By: /s/ Eduardo J. Glas
           245 Park Avenue, 27th Floor
           New York, New York  10167
           (212) 609-6800 - Telephone
           (212) 609-6921 - Facsimile

        Attorneys for Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc., and Automodular Assemblies (Ohio) Inc.