**Hearing Date And Time:  December 20, 2007 at 10:00 a.m.**
**Objection Deadline:  December 13, 2007 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :
     In re                       :    Chapter 11
                                   :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                   :
               Debtors.    :    (Jointly Administered)
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION UNDER NEW BANKRUPTCY RULE 3007(c) AND 11 U.S.C. § 105(a) FOR ORDER
AUTHORIZING DEBTORS TO CONTINUE CLAIMS OBJECTION PROCEDURES UNDER ORDER
DATED DECEMBER 7, 2006 PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 2002(m),
3007, 7016, 7026, 9006, 9007, AND 9014 ESTABLISHING (I) DATES FOR HEARINGS
REGARDING OBJECTIONS TO CLAIMS AND (II) CERTAIN NOTICES AND PROCEDURES
<u>GOVERNING OBJECTIONS TO CLAIMS</u>

("MOTION FOR AUTHORITY TO CONTINUE CLAIMS OBJECTION PROCEDURES")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") under rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as amended effective December 1, 2007, and 11 U.S.C. § 105(a) for an order authorizing the Debtors to continue to implement the claims objection procedures set forth under the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims, entered December 7, 2006 (Docket No. 6089) ("Claim Objection Procedures Order") notwithstanding the recent amendments to Bankruptcy Rule 3007, effective December 1, 2007.  In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee," and together with the Creditors' Committee, the "Statutory Committees").

2

3.      On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) (the "Plan") and the Disclosure Statement With Respect To Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9264) (the "Disclosure Statement").  The Court commenced the hearing on the Disclosure

Statement and related solicitation procedures motion on October 3, 2007 and has scheduled the

hearing to continue on December 6, 2007.  Three orders with respect thereto were entered by this

Court on October 9, 2007 (Docket No. 10497), October 19, 2007 (Docket No. 10662), and

November 7, 2007 (Docket No. 10864).  The Debtors filed notices of potential amendments to

the Disclosure Statement and/or certain appendices thereto on October 29, 2007 (Docket No.

10759), November 14, 2007 (Docket No. 10932), and November 16, 2007 (Docket No. 10964).

No order approving the Disclosure Statement or confirming the Plan has yet been entered by this

Court.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested herein are section 105(a)

of the Bankruptcy Code and Bankruptcy Rule 3007(c).

B.      Current Business Operations Of The Debtors

6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and continue their business operations without supervision from the Court.[2]

       7.     The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer ("OEM").

       8.     Delphi was incorporated in Delaware in 1998 as a wholly owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

10.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

11.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

with its major stakeholders had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas:[4] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[5]

second, concluding their negotiations with GM to finalize GM's financial support for the

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with certain investors and a plan framework support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and commitment agreement and related plan framework support agreement.  On July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate of Pardus Capital Management, L.P.  Under the Delphi-Appaloosa EPCA, the new plan investors agreed to invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's transformation plan and plan of reorganization.  This Court approved the Delphi-Appaloosa EPCA on August 2, 2007.  On October 29, 2007, the Debtors filed a motion requesting this Court's approval of certain proposed amendments to the Delphi-Appaloosa EPCA (Docket No. 10760).  In addition, on November 14, 2007, the Debtors filed certain additional proposed amendments to the Delphi-Appaloosa EPCA.  A hearing on the motion and the additional proposed amendments is scheduled for December 6, 2007.

[5]    As of August 29, 2007, this Court has entered the following orders approving settlements between Delphi and each of its U.S. labor unions:
 • International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (Docket No. 8693);
 • International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America (Docket No. 9106);
 • International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
 • United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW Local 87L (Docket No. 9169).
On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's motion for order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[6]

third, streamlining their product portfolio to capitalize on their world-class technology and

market strengths and make the necessary manufacturing alignment with their new focus;[7] fourth,

transforming their salaried workforce to ensure that the Company's organizational and cost

structure is competitive and aligned with its product portfolio and manufacturing footprint;[8] and

fifth, devising a workable solution to their current pension situation.[9]

---

[6]     On September 6, 2007, Delphi announced that it entered into agreements with GM consisting of a Global
Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA").  Delphi's
comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM.  The GSA and
MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively.  See Docket No. 9263.  On October
29 and November 14, 2007, the Debtors filed certain proposed amendments to the GSA and MRA.  The
approval of such amendments will be considered in connection with the confirmation of the Plan.

[7]     In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and
"non-core" product lines and plants.  The Debtors have been working to divest non-core assets so as to
maximize the value of their estates for stakeholders.  During the 2006 and 2007 calendar years, for example, the
Debtors sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, and their brake
hose and catalyst businesses.  The Debtors also obtained court approval for the sale of substantially all of the
assets of their Saltillo, Mexico brake plant business and the manufacturing equipment and test development
equipment at the chassis facility in Saginaw, Michigan, and of bid procedures related to the upcoming sale of
substantially all assets used in their interiors and closures businesses.  In addition, as announced publicly, the
Debtors anticipate selling additional non-core assets, including, without limitation, their steering business.

[8]     As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product
portfolio on core technologies for which the Company believes it has significant competitive and technological
advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics
and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also
has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the
Company's transformation plan.  To ensure that their organizational and cost structure is competitive, the
Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter
Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").
The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable,
accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration
processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]     To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms
of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on
May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried
Employees (collectively, the "Pension Plans").  On July 13, 2007, the IRS modified the conditional funding
waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a
plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively.
On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees
Plan for the September 30, 2007 pension plan year.  On October 25, 2007, this Court granted the Debtors'
motion for authority to perform under the terms of that waiver.  On October 4, 2007, the IRS, at Delphi's
request, further modified the conditions to the initial waivers so that they are generally consistent with the
conditions to the most recent waiver.

E.       The Debtors' Plan Of Reorganization

13.       By filing the Plan and related Disclosure Statement, the Debtors reached

another key milestone in their chapter 11 cases.  The Plan is based upon a series of global

settlements and compromises that involve nearly every major constituency in the Debtors'

reorganization cases, including GM.  Attached as exhibits to the Plan are two agreements, the

GSA and the MRA, which provide for a comprehensive settlement with GM.  Both agreements

are subject to this Court's approval as part of the confirmation process.

14.       The hearing on the Debtors' solicitation procedures and Disclosure

Statement is anticipated to resume on December 6, 2007.  Currently, the Debtors continue to

expect that they will emerge from chapter 11 during the first quarter of 2008.

15.       Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.       Bar Date, Proofs Of Claim, And Omnibus Claims Objections

16.       On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§

107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

8

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

17.     On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and Statements") and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

18.     In addition, the Debtors published the Bar Date Notice in the <u>New York Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions), <u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>, <u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the <u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>, the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester Democrat and Chronicle</u>, the <u>Saginaw News</u>, the <u>Sandusky</u>, the <u>Tribune Chronicle</u>, the <u>Tulsa World</u>, the <u>Tuscaloosa News</u>,

and the <u>Vindicator</u>, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

Relief Requested

19.    By this Motion, the Debtors request entry of an order under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 3007 authorizing the Debtors to continue the current practices and procedures for filing and serving notice of omnibus Claims objections pursuant to the Claims Objection Procedures Order previously entered by this Court.

Basis For Relief

20.    Approximately, 2,200 Claims remain subject to objection by the Debtors, including approximately 200 that require further reconciliation and approximately 2,000 Claims that qualify for particularized treatment under the Debtors' proposed Plan and may be subject to omnibus Claims objections after the effective date of the Debtors' proposed Plan.  Accordingly, the Debtors anticipate filing additional omnibus Claims objections to resolve these remaining Claims.  By this Motion, the Debtors seek this Court's authority to continue the Debtors' current practices and procedures notwithstanding the recent amendments to Bankruptcy Rule 3007, effective December 1, 2007 ("Amended Rule 3007"), that might arguably impose certain additional requirements upon the Debtors in the prosecution of Claims objections.  Because the current requirements set forth in the Claims Objection Procedures Order meet or exceed the due process requirements under Amended Rule 3007, the Debtors submit that the Court's re-affirmation of the practices and procedures in the Claims Objection Procedures Order will not prejudice the rights of any Claimants with respect to objections to their Proofs of Claim.

<u>Applicable Authority</u>

G.  The Current Omnibus Claims Objections Procedures Have Allowed The Debtors To
    <u>Resolve A Significant Portion Of Claims Filed In These Cases</u>

    21.    As of November 19, 2007, approximately 16,700 proofs of claim have been filed against the Debtors, of which approximately 900 were filed after the Bar Date.  In the aggregate, total proofs of claim and scheduled liabilities assert approximately $37 billion in liquidated amounts, including approximately $900 million in intercompany claims, and additional unliquidated amounts.

    22.    The Debtors have sought to resolve the Claims filed in their chapter 11 cases on an expedited and cost effective basis.  With $37 billion in liquidated amounts plus certain unliquidated amounts asserted against the Debtors in more than 16,700 proofs of claim, the Debtors faced a challenging task.  To reduce the costs of reconciling and reducing these claims, the Debtors sought entry of, and on December 7, 2006, this Court entered, the Claims Objection Procedures Order, which established, among other things, certain procedures for the service of omnibus Claims objections.

    23.    As of November 30, 2007, the Debtors have filed 23 omnibus Claims objections seeking disallowance of approximately 9,800 proofs of claim with approximately $9.6 billion in asserted liquidated amounts plus unliquidated amounts, and modification of approximately 3,700 proofs of claim with approximately $758 million in asserted liquidated amounts.  As of November 30, 2007, this Court has entered orders in respect of 22 of the 23 omnibus Claims objections expunging 9,367 proofs of claim, which reduced the amount of asserted Claims by approximately $9.3 billion.  In addition, the asserted claim amount of 3,063 Claims has been reduced by approximately $33 million pursuant to orders granted by this Court in respect of 22 of the 23 omnibus Claims objections.

11

H.    This Court Should Re-Affirm The Debtors' Current Omnibus Claims Objection
Procedures Under Amended Rule 3007

24.    Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "'Section 105 is an omnibus provision phrased in general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case.'" In re Elmendorf, 345 B.R. 786, 502 (Bankr. S.D.N.Y. 2006) (quoting In re Flores, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003)). Accordingly, section 105 of the Bankruptcy Code authorizes this Court to re-affirm the time-tested practices and procedures under the Claims Objection Procedures Order to the extent they are inconsistent with the technical requirements of Amended Rule 3007.

25.    In addition, Amended Rule 3007 itself allows the Court to implement procedures that might otherwise deviate from certain of the technical requirements of that rule. Specifically, Amended Rule 3007(c) provides that "unless otherwise ordered by the court or permitted by subdivision (d), objections to more than one claim shall not be joined in a single objection." Amended Fed. R. Bankr. P. 3007(c) (emphasis added). Because the Debtors' current omnibus claims objection practices which were approved by this Court meet or exceed the procedural requirements under Amended Rule 3007, this Court should expressly authorize the Debtors to continue the current practice of combining objections to multiple Claims in a single omnibus Claims objection even if technically inconsistent with Amended Rule 3007, including objections to more than 100 Claims.

I.      The Debtors' Omnibus Claims Objection Procedures Already Comply With
        Amended Rule 3007

26.     Amended Rule 3007 provides for the filing of omnibus objections to

Claims, but places certain limitations on such filings.  Subdivision (d) of Amended Rule 3007

provides:

> [O]bjections to claims may be joined in an omnibus objection if all of the claims
> were filed by the same entity or the objections are based on solely on the grounds
> that the claims should be disallowed, in whole or in part, because:
>
> > (1) they duplicate other claims;
> >
> > (2) they have been filed in the wrong case;
> >
> > (3) they have been amended by subsequently filed proofs of claim;
> >
> > (4) they were not timely filed;
> >
> > (5) they have been satisfied or released during the case in
> > accordance with the Code, applicable rules, or a court order;
> >
> > (6) they were presented in a form that does not comply with
> > applicable rules, and the objection states that the objector is unable
> > to determine the validity of the claim because of the
> > noncompliance;
> >
> > (7) they are interest, rather than claims; or
> >
> > (8) they assert priority in an amount that exceeds the maximum
> > amount under § 507 of the Code.

Amended Fed. R. Bankr. P. 3007(d).  Thus, to the extent the Debtors prosecute omnibus Claims

objections on the grounds listed in Amended Rule 3007(d), there is no question that the Debtors

will be in technical compliance with Amended Rule 3007 and need no further relief from this

Court with respect to such objections.

27.     The Debtors have frequently objected, however, to multiple Claims in an

omnibus objection that go beyond the grounds enumerated in Amended Rule 3007.  Specifically,

the Debtors have filed omnibus Claims objections objecting to Claims because such claims (a) assert liabilities that are not reflected on the Debtors' books and records or state the incorrect amounts or (b) incorrectly assert secured or priority status.  The Debtors request authority to continue this practice to the extent that Amended Rule 3007 might dictate otherwise.

28.      In addition, as this Court is aware, the current Claims Objection Procedures Order requires the Debtors to serve personalized notices (the "Personalized Notices") upon each affected Claimant specifically enumerating the basis of the individual objection and notifying the Claimant of steps that must be taken to contest the objection.  Because the Personalized Notices apprise each Claimant of the individual objection contained in the omnibus Claims objection, the requirement of a separate Claim objection under Amended Bankruptcy Rule 3007 (to the extent that no exception is otherwise available under Amended Rule 3007) is not necessary and, if required, would result in the filing of costly multiple pleadings that would clog the Court's docket and potentially confuse Claimants.

29.      As this Court has acknowledged by granting the Claims Objection Procedures Order as well as orders on 22 omnibus Claims objections, the Debtors' current procedures and practices for filing and serving omnibus Claims objections are appropriate in light of the size and complexity of the Debtors' chapter 11 cases.  The Debtors, along with their professionals, have established an efficient and comprehensive strategy for objecting to Proofs of Claim and notifying such Claimants of the Debtors' objection to their Claims.  To continue the Debtors' efficient claims objection process and maintain the uniformity of the omnibus Claims objections for the balance of these cases, the Debtors respectfully request this Court to expressly re-affirm the existing claims objection procedures under the Claims Objection Procedures Order.

<u>Notice</u>

30.     Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered October 19, 2007 (Docket No. 10661).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

31.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) authorizing the Debtors to continue the current omnibus claims objection practices and procedures under Claims Objection Procedures Orders and (b) granting the Debtors such other and further relief as is just.

Dated:       New York, New York
             November 30, 2007

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP


By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

                        - and -


By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession