Hearing Date and Time: February 26, 2008 at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: February 19, 2008 at 4:00 p.m. (prevailing Eastern Time)

**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
                                        :
In re:                                  :   Chapter 11
                                        :
DELPHI CORPORATION, et al               :   Case No. 05-44481 (RDD)
                                        :
            Debtors.                    :   (Jointly Administered)
------------------------------------------------------------- x
```

## SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

### SIXTH INTERIM FEE APPLICATION

| NAME OF APPLICANT: | KPMG LLP |
|---|---|
| | |
| PERIOD FOR WHICH COMPENSATION IS SOUGHT: | June 1, 2007 through and including September 30, 2007 |
| | |
| ROLE IN THE CASE: | Tax and Transaction Services Advisors and Advisory and Valuation Services Advisors for the Debtors |
| | |
| DATE OF ORIGINAL RETENTION ORDER: | March 3, 2006 |
| DATE OF FIRST SUPPLEMENTAL RETENTION ORDER: | May 2, 2006 |
| DATE OF SECOND SUPPLEMENTAL RETENTION ORDER: | December 6, 2006 |
| DATE OF THIRD SUPPLEMENTAL RETENTION ORDER: | March 30, 2007 |
| | |
| AMOUNT OF COMPENSATION SOUGHT : | $4,327,419.31 |
| | |
| AMOUNT OF REIMBURSEMENT SOUGHT: | $ 875,878.51 |
| | |
| TOTAL AMOUNT SOUGHT: | $5,203,297.82 |

**KING & SPALDING LLP**
**1185 Avenue of the Americas**
**New York, New York 10036**
**Telephone: (212) 556-2100**
**Facsimile: (212) 556-2222**
**H. Slayton Dabney, Jr., Esq. (HD - 4311)**

**Attorneys for KPMG LLP**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                          :
In re:                                    :        **Chapter 11**
                                          :
**DELPHI CORPORATION, et al**             :        **Case No. 05-44481 (RDD)**
                                          :
                    Debtors.              :        **(Jointly Administered)**
                                          :
------------------------------------------------------------- x

**SIXTH APPLICATION OF KPMG LLP, AS TAX AND TRANSACTION**
**SERVICES ADVISORS AND ADVISORY AND VALUATION SERVICES**
**ADVISORS FOR THE DEBTORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM JUNE 1, 2007 THROUGH SEPTEMBER 30, 2007**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

KPMG LLP ("KPMG"), a professional services firm, serves as tax and

transaction services advisors and advisory and valuation services advisors to Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession

in the above-captioned cases (collectively, the "Debtors"). KPMG submits its sixth

application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code") and rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for interim allowance of reasonable

compensation for professional services performed by KPMG in the aggregate amount of $4,327,419.31 for the period commencing June 1, 2007 through and including September 30, 2007 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses in the aggregate amount of $875,878.51 incurred during the Compensation Period, for a total of $5,203,297.82 and respectfully represents:

## **Background**

1.      On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, commenced their respective cases under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      This Court entered orders directing the joint administration of the Debtors' chapter 11 cases under Bankruptcy Rule 1015(b) (Docket Nos. 28 and 404).

3.      On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.  On May 11, 2006, the US Trustee appointed the committee of equity security holders (the "Equity Committee").

## **Jurisdiction**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5.      The statutory predicate for the relief requested herein are sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

### KPMG LLP Retention

6.      On February 14, 2006, the Debtors filed an application pursuant to sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code and Bankruptcy Rule 2014, for authorization to retain KPMG as Tax and Transaction Services Advisors to the Debtors, effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Application"), pursuant to the terms of the engagement letters as described therein (the "Engagement Letters").  On March 3, 2006, the Court entered an order approving the KPMG Retention Application pursuant to the terms and conditions of such order, effective nunc pro tunc to October 8, 2005 (the "KPMG Retention Order").

7.      On April 20, 2006, the Debtors filed a supplemental application (the "KPMG Supplemental Retention Application") for authorization to retain KPMG as Advisory and Valuation Services Advisors to the Debtors effective nunc pro tunc to February 16, 2006, and for authorization to expand the retention of the scope of KPMG to include the matters set forth in certain additional engagement letters, by and between the Debtors and KPMG, each as described therein (the "First Supplemental Engagement Letters").  On May 2, 2006, this Court entered an order approving the KPMG Supplemental Retention Application pursuant to the terms of such order, effective nunc pro tunc to (i) February 16, 2006 for the employment and retention of KPMG as Advisory and Valuation Services Advisors to the Debtors, (ii) January 1, 2006 for the continued retention of KPMG as Tax Advisors to the Debtors, and (iii) January 18, 2006 for the additional International Executive Tax Services effective nunc pro tunc to

3

January 18, 2006 to be rendered by KPMG to the Debtors (the "KPMG Supplemental Retention Order").

8.      On November 10, 2006, the Debtors filed a supplemental application (the "KPMG Second Supplemental Application") for authorization to retain KPMG to provide the Debtors with (i) certain improvements to the International Tax Reporting Package and Process effective nunc pro tunc to August 1, 2006, (ii) certain Internal Reporting Initiatives effective nunc pro tunc to July 10, 2006, (iii) a certain Special Investigation, (iv) certain Transfer Pricing Services effective nunc pro tunc to May 19, 2006, (v) certain improvements to the Financial Close, Consolidation, and Management Reporting Processes, and (vi) certain Additional Services, each as described therein (the "Second Supplemental Engagement Letters").  On December 6, 2006, this Court entered an order approving the KPMG Second Supplemental Retention Application pursuant to the terms of such order (the "KPMG Second Supplemental Retention Order").

9.      On March 16, 2007, the Debtors filed a supplemental application (the "KPMG Third Supplemental Retention Application") for authorization to employ and retain KPMG to (i) enter into the Master Professional Services Agreement (the "Master Agreement") and the applicable Statements of Work ("SOWs") with the Debtors effective nunc pro tunc to February 9, 2007, (ii) provide the Debtors with certain Global Mobility Services related to international assignees effective nunc pro tunc to February 9, 2007, (iii) continue to provide the Debtors with certain Tax Consulting Services effective nunc pro tunc to February 9, 2007, (iv) continue to provide the Debtors with certain International Assignment Services related to the Debtors' international assignees effective nunc pro tunc to January 31, 2007, (v) provide the Debtors with certain Fresh

4

Start Services effective <u>nunc</u> <u>pro</u> <u>tunc</u> to November 16, 2006, and (vi) provide the

Debtors with certain Additional Services (including the renewal and extension of

existing services, additional phase services under existing engagements, and additional

services under future SOWs between the Debtors and KPMG in accordance with the

Master Agreement).    On March 30, 2007, this Court entered an order approving the

KPMG Third Supplemental Retention Application pursuant to the terms of such order

(the "KPMG Third Supplemental Retention Order").

### Procedures and Monthly Fee Statements

10.    The Application has been prepared in accordance with (i) the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New

York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local

Guidelines"), (ii) the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted

on January 30, 1996 (the "UST Guidelines") and (iii) the (A) Order Under 11 U.S.C. §

331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses

of Professionals, dated November 4, 2005 (the "Interim Compensation Order"), (B) the

Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006

(the "Supplemental Interim Compensation Order"), (C) the Second Supplemental Order

Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second

Supplemental Interim Compensation Order), (D) the Third Supplemental Order Under

11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement

of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order"), (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order"), and (G) the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (the "Sixth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders", and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").   Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as Exhibit "A."

11.    On April 28, 2006, KPMG filed its first interim fee application (the "First Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 5, 2005 through January 31, 2006 (the "First Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the First Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the First Interim Fee Period in the aggregate amount of $1,439,122.50 and for reimbursement of expenses incurred in connection with these services in the amount of $17,631.00.

12.    On August 6, 2006, KPMG filed its second interim fee application (the "Second Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing February 1, 2006 through May 31, 2006 (the "Second Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Second Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the Second Interim Fee Period in the aggregate amount of $7,383,043.00 and for reimbursement of expenses incurred in connection with these services in the amount of $430,790.04.

13.    On November 30, 2006, KPMG filed its third interim fee application (the "Third Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing June 1, 2006 through September 30, 2006 (the "Third Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Third Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the Third Interim Fee Period in the aggregate amount of $1,969,703.80 and for reimbursement of expenses incurred in connection with these services in the amount of $176,339.61.

14.    After taking a voluntary reduction of $275,000.00 in fees, KPMG has been paid $10,701,373.30 in compensation for professional services rendered and $624,760.63 for reimbursement of expenses for the First, Second and Third Interim Fee Periods.

15.    On April 2, 2007, KPMG filed its fourth interim fee application (the "Fourth Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing October 1, 2006 through

January 31, 2007 (the "Fourth Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Fourth Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the Fourth Interim Fee Period in the aggregate amount of $2,994,667.15 and for reimbursement of expenses incurred in connection with these services in the amount of $265,285.42.  After taking a voluntary reduction of $56,103.00 in fees, KPMG has been paid $2,397,735.72 in compensation for professional services rendered and $265,285.42 for reimbursement of expenses during the Fourth Interim Fee Period.

16.    On, 2007, KPMG filed its fifth interim fee application (the "Fifth Interim Fee Application") for the allowance of compensation for professional services performed by KPMG for the period commencing February 1, 2007 through May 31, 2007 (the "Fifth Interim Fee Period") and for reimbursement of its actual and necessary expenses incurred during the Fifth Interim Fee Period.  KPMG sought allowance of fees for services to the Debtors during the Fifth Interim Fee Period in the aggregate amount of $13,751,307.25 and for reimbursement of expenses incurred in connection with these services in the amount of $1,023,285.08.   After taking a voluntary reduction of $150,000.00 in fees and $6,800.00 in expenses, KPMG has been paid $13,601,307.25 in compensation for professional services rendered and $1,016,485.08 for reimbursement of expenses during the Fifth Interim Fee Period.

17.    On or about July 31, 2007, KPMG served its June 2007 Monthly Fee Statement seeking an award of compensation in the amount of $1,322,695.75 for professional services rendered and reimbursement of $292,829.18 in expenses actually and necessarily incurred by KPMG during the period from June 1, 2007 through June

30, 2007. The Debtors paid KPMG $1,058,156.60 in compensation for professional services rendered and $292,829.18 for reimbursement of expenses during the period from June 1, 2007 through June 30, 2007.

18.    On or about August 31, 2007, KPMG served its July 2007 Monthly Fee Statement seeking an award of compensation in the amount of $920,716.50 for professional services rendered and reimbursement of $283,244.40 in expenses actually and necessarily incurred by KPMG during the period from July 1, 2007 through July 31, 2007. On September 28, 2007, the Debtors paid KPMG $736,573.20 in compensation for professional services rendered and $283,244.40 for reimbursement of expenses during the period from July 1, 2007 through July 31, 2007.

19.    On or about September 28, 2007, KPMG served its August 2007 Monthly Fee Statement seeking an award of compensation in the amount of $1,213,448.75 for professional services rendered and reimbursement of $206,022.94 in expenses actually and necessarily incurred by KPMG during the period from August 1, 2007 through August 31, 2007. On November 16, 2007, the Debtors paid KPMG $970,759.00 in compensation for professional services rendered and $206,022.94 for reimbursement of expenses during the period from August 1, 2007 through August 31, 2007.

20.    On or about October 31, 2007, KPMG served its September 2007 Monthly Fee Statement seeking an award of compensation in the amount of $870,558.31 for professional services rendered and reimbursement of $93,781.99 in expenses actually and necessarily incurred by KPMG during the period from September 1, 2007 through September 30, 2007.

**Requested Fees and Reimbursement of Expenses**

21.    By its Application, KPMG respectfully requests (i) an interim allowance for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $ 4,327,419.31, (ii)  an interim allowance for expenses incurred in connection with the rendering of such services in the aggregate amount of $875,878.51, and (iii) payment to KPMG in the total amount of $5,203,297.82 of outstanding fees and expenses in connection with KPMG's representation of the Debtors during the Compensation Period.    During the Compensation Period, KPMG professionals expended a total of 13,835.9 hours for which compensation is requested.   KPMG's request for compensation is broken down as follows:

| Billing Period | Hours Billed | Fees | Expenses | Monthly Total | Fees Paid | Expenses Paid | Balance Due |
|---|---|---|---|---|---|---|---|
| June 1 through June 30, 2007 | 4,368.4 | $1,322,695.75 | $ 292,829.18 | $1,615,524.93 | $1,058,156.60 | $292,829.18 | $264,539.15 |
| July 1 through July 31, 2007 | 3,026.5 | $  920,716.50 | $ 283,244.40 | $1,203,960.90 | $736,573.20 | $ 283,244.40 | $184,143.30 |
| August 1 through August 31, 2007 | 3,739.4 | $1,213,448.75 | $ 206,022.94 | $1,419,471.69 | $970,759.00 | $ 206,022.94 | $242,689.75 |
| September 1 through September 30, 2007 | 2,701.6 | $  870,558.31 | $  93,781.99 | $  964,340.30 | $0.00 | $0.00 | $964,340.30 |
| **Total** | 13,835.9 | $4,327,419.31 | $ 875,878.51 | $5,203,297.82 | $2,765,488.80 | $782,096.52 | $1,655,712.50 |

22.    KPMG is the United States member firm of KPMG International.  The KPMG global network encompasses independent professional services practices conducted by separate legal entities throughout the world.  KPMG International, a Swiss cooperative, serves as a coordinating entity for a network of member firms operating under the KPMG name.   KPMG International is a member-based entity with no

shareholders and no permanent capital.    Each of the member firms of KPMG International ("KPMG Member Firms") is separate and legally distinct.

23.    Prior to the Petition Date, KPMG subcontracted with certain other KPMG Member Firms to provide services to the Debtors as set forth in the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and applicable SOWs).    Pursuant to the KPMG Retention Order, the KPMG Supplemental Retention Order, the KPMG Second Supplemental Order, and the KPMG Third Supplemental Retention Order, during the Compensation Period, KPMG Member Firms have continued to assist KPMG in the provision of services under the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement    Letters, the Third Supplemental Engagement Letters (including the Master Agreement and the applicable SOWs).

24.    KPMG charges its fees in these cases in accordance with billing rates and procedures in effect during the Compensation Period.    The rates KPMG charges for the services rendered by its professionals in these chapter 11 cases are the same rates KPMG charges for professional services rendered in comparable non-bankruptcy related matters.    Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases.

25.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit "B"</u> is a schedule setting forth all KPMG professionals who have performed services in these chapter 11 cases during the Compensation Period, the capacities in which each such individual is employed by KPMG, the hourly billing rate charged by KPMG for services

performed by such individual, aggregate number of hours expended in this matter and fees billed therefore.

26.     Annexed hereto as <u>Exhibit "C"</u> is a schedule specifying the categories of expenses for which KPMG is seeking reimbursement and the total amount for each such expense category.

27.     Pursuant to section II.D of the UST Guidelines, annexed hereto as <u>Exhibit "D"</u> is a summary of KPMG's time records billed during the Compensation Period, including the utilization of project categories as described below.

28.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of the Application, KPMG reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

### Summary of Services

29.     In accordance with the Engagement Letters, the First Supplemental Engagement Letters, the Second Supplemental Engagement Letters, and the Third Supplemental Engagement Letters (including the Master Agreement and the applicable SOWs), KPMG has provided such services as KPMG and the Debtors deemed appropriate and feasible in order to advise the Debtors and their subsidiaries and affiliates in the course of these chapter 11 cases, including, but not limited to, the following:

    i.   International Tax Package Improvement;

    ii.  Fee Statements and Fee Applications;

    iii.  Non-Working Travel Time;

    iv.  Transaction Advisory & Other Services;

    v.  Tax Consulting Services;

    vi.  Financial Close, Consolidation and Management;

    vii.  Transaction Services – Project Rhodes/Evergreen III;

    viii.  Transaction Services - Project KDAC Steering;

    ix.  Fresh Start Services;

    x.  Project Shark "Target";

    xi.  Project Rhodes - Discontinued Operations;

    xii.  Electronics & Safety - PBU – Product Line Performance
        Reporting;

    xiii.  Impairment Services – Q02 2007; and

    xiv.  Delphi Steering Division – Budget and Forecasting.

30.    The services provided by KPMG to the Debtors are not unnecessarily duplicative of those provided by any other of the Debtors' professionals, and KPMG has coordinated any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors, accountants, and counsel, as appropriate, to avoid duplication of efforts.

31.    The following is a summary of certain of the significant professional services rendered by KPMG during the Compensation Period, as well as the compensation sought for such services:

| Category | Hours | Total Compensation |
|---|---|---|
| International Tax Package Improvement | 212.0 | $55,538.00 |
| Fee Statements and Fee Applications | 1,035.1 | $65,267.31 |
| Non-Working Travel Time | 386.9 | $64,983.50 |
| Transaction Advisory & Other Services | 36.7 | $11,511.50 |
| Tax Consulting Services | 12.5 | $6,000.00 |
| Financial Close, Consolidation and Management | 4,245.3 | $1,671,822.00 |
| Transaction Services - Project Rhodes/Evergreen III | 273.9 | $81,760.00 |
| Fresh Start Services | 4,568.8 | $1,461,474.00 |
| Project Shark "Target" | 84.6 | $29,460.50 |
| Project Rhodes - Discontinued Operations | 1,014.8 | $255,697.50 |
| Electronics & Safety - PBU - Product Line Performance Reporting | 135.2 | $49,942.50 |
| Impairment Services Q02 2007 | 452.5 | $151,485.50 |
| Delphi Steering Division - Budget and Forecasting | 1,377.6 | $422,477.00 |
| **Total hours and fees** | **13,835.9** | **$4,327,419.31** |

## Description of Services Provided

32.     The following is a more detailed description of the significant professional services rendered by KPMG during the Compensation Period.

### (a)     International Tax Process Improvement

i.      collaborating with Delphi to identify improvements to the international tax reporting package and process;

ii.     assisting with the development, implementation, and testing of improvements to the international tax reporting package and processes;

iii.    assisting with the development of training materials for the improved international tax reporting package and processes;

iv.     assisting with training of Delphi personnel on the new international tax reporting package and process;

v.      assisting Delphi with reviewing the implementation of the international tax reporting package and processes; and

14

      vi.     providing other services related to the development and implementation of the improved international tax reporting package and processes as appropriate.

**(b)**     **Fee Statements and Fee Applications**

      i.     preparing monthly fee statements and quarterly fee applications.

**(c)**     **Non-Working Travel Time**

      i.     time incurred for necessary non-working travel time.

**(d)**     **Transaction Advisory & Other Services**

      i.     providing sell-side due diligence services associated with the potential sale of certain businesses or assets of the Debtors;

      ii.     providing buy-side due diligence services associated with the potential acquisition of certain businesses or assets by the Debtors;

      iii.     providing accounting advice and assistance provided in conjunction with the preparation of financial information for business operations within the Debtors, as specified by the Debtors; and

      iv.     providing other such functions as requested by the Debtors or its counsel to assist the Debtors in their businesses and reorganization.

**(e)**     **Tax Consulting Services**

      i.     providing advice and assistance to the Debtors regarding various tax issues.

**(f)**     **Financial Close, Consolidation and Management**

      i.     preparing detailed work stream statements of work for the next phase;

      ii.     reviewing statements of work with the Delphi work stream stakeholders;

      iii.     establishing PMO infrastructure for the next phase;

iv.     identifying and securing resources (Delphi and KPMG) for the next phase;

v.     conducting weekly meeting with KPMG work stream leads to review and share project activities, issues, challenges across KPMG work stream teams;

vi.     collecting and aggregate weekly work stream status/activity/deliverables for presentation to Chief Accounting Office (CAO) and Controller on a weekly basis;

vii.     preparing for and attending monthly status meetings with the Delphi Chief Financial Officer (CFO);

viii.     presenting Record to Report framework and plans to CEO;

ix.     monitoring individual work stream and overall project status against initial work plan and related deliverables;

x.     attending and facilitating weekly project status updates with the CAO and Controller and his staff;

xi.     preparing for and attending monthly Finance Task Team (FTT) monthly Audit Committee, quarterly Delphi Operations Meeting (DOM), and monthly Controllers Roundtable meetings based on requests from the CAO and Controller;

xii.     preparing initial draft of Delphi Controllership architecture based on results of workshop for management approval;

xiii.     working with Divisional CFO's, populate the Division organization structure developed as part of the Phase II design activities;

xiv.     conducting interviews and workshops to design a regional controllership function and organization structure;

xv.     developing and scheduling with Controllership organization a pilot testing and implementation program;

xvi.         assisting in development of business case for purchase of Hyperion as a solution to Delphi budget and forecasting;

xvii.        assisting in development of business requirements for Delphi's new consolidation software solutions;

xviii.       drafting Region and Division Controllership organization charts;

xix.         assisting in establishment of pre-close and post-close meetings as part of close procedure;

xx.         identifying and drafting recommended roles and responsibilities of Delphi A;

xxi.         drafting close tracking and Key Performance Indicator metrics;

xxii.        reviewing existing process and control documentation for the monthly tax provision process;

xxiii.       identifying business requirements for recording monthly tax provision with the goal of minimizing the manual efforts;

xxiv.       identifying requirements to be incorporated into the General Ledger (G/L) and Hyperion systems to facilitate the automation of tax provision schedules;

xxv.        developing SOPA remediation tracking;

xxvi.       developing templates and tools for use by accounting staff;

xxvii.      preparing global close calendar and tracking process;

xxviii.     identifying training requirements for process changes and assist in delivery of up to 3 training classes;

xxix.       identifying areas of current SOX documentation that may need to be updated;

xxx.       providing assessment and gap analysis to leading practices for enterprise wide consolidation process including:

a. identifying existing month-end consolidation activities that need to be transferred to the divisions as part of divisional consolidation process;

b. updating close tasks and activities, related to the enterprise wide consolidation process, to be included in the global close calendar; and

c. documenting roles and responsibilities/job descriptions of Corporate Consolidation team related to the new enterprise wide consolidation;

xxxi. preparing revisions to Consolidation Process Manual related to changes in Enterprise-wide consolidation process and "Service Center" consolidation process;

xxxii. developing Corporate "Service Center" model of consolidating smaller divisions (AHG, DPSS, Steering, Delphi A) utilizing the E&S Division consolidation manual;

xxxiii. preparing and conducting monthly All Hands meeting to communicate strategy of Pilot program;

xxxiv. developing current state process flow for Tax assessment such as US provision, Non-US provision, WW provision and FIN 48 process flow;

xxxv. developing future state process flow for Tax assessment such as US provision, Non-US provision, WW provision and FIN 48 process flow;

xxxvi. preparing Gap Analysis as part of Tax provision assessment;

xxxvii. identifying alternatives and recommendation as part of Tax provision assessment;

xxxviii. identifying accounts used by tax provision;

xxxix. developing training documents for Hyperion consolidation activities;

xl. preparing documentation of divisional sub consolidation pilot results;

18

xli.     drafting document detailing critical success factors necessary to launch close and sub-consolidation module at divisions;

xlii.    drafting proposed monthly divisional closing and consolidation calendar;

xliii.   drafting list of SAP close process enhancements and reports;

xliv.    drafting recommended organization structure as part of Divisional Consolidation Mechanics work stream;

xlv.     identifying Divisional Task list detailing key activities and responsible parties for management approval;

xlvi.    conducting risk assessment of fixed assets and general accounting by analysis of individual trial balances;

xlvii.   preparing analysis for Investor Relations detailing earnings guidance trends, timing of SEC filings and marketplace considerations;

xlviii.  conducting workshop as part of Sub Consolidation Pilot;

xlix.    developing GAP analysis of current Delphi SAP 4.6 intercompany implementation design to functionality inherent with SAP 4.6;

l.       identifying benefits of activating SAP 4.6 intercompany functionality;

li.      developing document detailing classification of divisional out of balances such as MIT, EXP and Re-class;

lii.     identifying, and where possible, implement improvement opportunities to intercompany re-bills and cross charges;;

liii.    identifying out of balance "trends";

liv.     developing current state process flow and narrative for the External Reporting function;

lv.           coordinating meetings and focus groups between Delphi and other companies to discuss External Reporting leading practices;

lvi.          drafting intercompany policy and procedures;

lvii.         preparing and conducting intercompany network workshop;

lviii.        identifying Hyperion HFM design opportunities for automation of data requirements for the external reporting function; and

lix.          identifying business process improvement opportunities for the External Reporting process.

**(g)     Transaction Services – Project Rhodes/Evergreen III**

i.           assisting in the identification and collection of financial information related to the 2006 carve-out of the DS businesses from Delphi Corporation ("Delphi");

ii.          assisting with the project coordination with DS, Delphi and other advisors;

iii.         assisting with the identification of potential transaction issues relating to the 2006 financials (e.g., carve-out issues, allocation issues, redundant/stranded costs), if any;

iv.         assisting in the organization and management of 2006 financial information and workpapers used to support DS's stand-alone business line financial statements;

v.           inquiring and challenging information provided by management relating to the carve-out of DS business lines from Delphi for 2006 financials;

vi.         assisting in the organization and management of 2006 financial information and workpapers in the data room; and

vii.        researching disclosure requirements and drafting example disclosures commonly required for SEC registrants that are

relevant to the financial statements to enable Delphi to populate those disclosures with DS-specific amounts.

**(h)     Fresh Start Services**

    i.    assisting management with planning an approach, consideration of alternatives, research, analysis, implementation assistance and assistance with preparing documentation related to Delphi's accounting and reporting the emergence from Bankruptcy and adopting Fresh Start reporting;

    ii.    holding discussions with certain Delphi officers, employees and outside consultants;

    iii.    assisting with gathering data, analyzing data and provide advice related to Delphi's analyses;

    iv.    assisting Delphi in developing accounting and financial reporting and tax planning and reporting;

    v.    allocating to Delphi's assets and liabilities the reorganization value of Delphi in accordance with the procedures specified in Statement of Financial Accounting Standards No. 141 ("FAS141");

    vi.    providing data services to assist in planning for embedding the "fresh start" adjustments into the financial reporting processes of Delphi; and

    vii.    providing project management services to Delphi senior management and its fresh start project manager, this service is designed to advise Delphi regarding project timelines, milestones, deliverables, interdependencies, risks and resources.

**(i)     Project Shark "Target"**

    i.    commenting on physical inventory count provided by Target; and

ii.    updating initial potential value for each intangible assets regarding purchase accounting, as well as potential implications of FAS 141 in the opening balance sheet including commenting on estimates to arrive at the Fair Market Value of the opening balance sheet for each of the specific balance sheet accounts.

**(j)    Project Rhodes - Discontinued Operations**

i.    finalizing detailed work plan with Delphi DSD and Delphi Corporate;

ii.    building and populating the discontinued operations templates with the historical allocations identified;

iii.    documenting the allocations and assumptions in the template in a manner that facilitates the audit process;

iv.    interviewing DSD and corporate personnel regarding historical allocations and corporate journal vouchers recorded;

v.    conducting interviews with specific groups and individuals to collect historical information and document methodologies;

vi.    assisting with the assessment of allocations and corporate journal vouchers relative to the requirements of discontinued operations reporting and disclosure;

vii.    assisting with the preparation of a carve out balance sheet, profit and loss, and cash flow statement for the periods to be presented; and

viii.    assisting with Delphi's technical accounting memorandum on the application of discontinued operations accounting for the Steering Division and support in the audit process.

**(k)**      **Electronics & Safety Product Business Units' Product Line Performance Reporting**

  i.       validating Delphi E&S PBUs/DEG Product Line Performance Reporting (PLPR) report dimensions and attributes;

  ii.      completing prototype business requirements document for Delphi E&S PBUs/DEG prototype PLPR solution;

  iii.     completing division pre-workshop communication package for workshop held on 6/26/07;

  iv.      completing PLPR report inventory depicting required data elements, sample views by customer and opportunity to identify KPI's;

  v.       completing PLPR report layout examples outlining report dimensions and attributes;

  vi.      completing a high level technical landscape document to illustrate the transformation from Access to a data warehouse environment;

  vii.     completing next steps plan for prototype build out and evaluation;

  viii.    conducting multi-division workshop on 6/26/07 to gather cross division business requirements; and

  ix.      incorporating outcome of division workshop into final business requirements document for Delphi E&S PBUs/DEG prototype PLPR solution.

**(l)**      **Impairment Services – Q02 2007**

  i.       analyzing potential impairment charges as of the quarter ended March 31, 2007 under SFAS 144 including assessment under Step 1 of SFAS 144 for those plants identified by Delphi management to be included in our studies;

23

ii.  assisting in evaluation of undiscounted cash flows compared with the carrying value of the underlying asset groups under the guidance of SFAS 144;

iii. performing the valuation studies necessary to determine fair values of assets within the asset groups for plants failing Step 1 of SFAS 144;

iv. researching and documenting memoranda, discussions with Ernst & Young as required, etc. to support the accounting and reporting conclusions; and

v.  identifying tax related issues with regard to the procedures and assisting Delphi with quantifying the related impact.

**(m)    Delphi Steering Division – Budget and Forecasting**

i.  Work stream A

a.  conducting scoping interviews with Joe Perkins (Delphi Project Sponsor) and Tari Geary (Delphi Process Owner);

b.  collecting and analyzing background information for PBU Forecasting Process;

c.  conducting workshop and interviews to validate current state PBU Forecasting process;

d.  documenting current state PBU Forecasting process and identified process weaknesses and limitations;

e.  gathering and analyzing driver & allocation data for existing Activity Base Costing model;

f.  identifying and recommending short-term and long term opportunities to improve the PBU forecasting process including action plans for short-term opportunities;

      g.   recommending new drivers & allocation methods for Activity Base Costing model; and

      h.   developing a summary report of findings, observations and recommendations for overall PBU forecasting process.

  ii.   Work stream B

      a.   assisting with business requirement identification;

      b.   preparing a "Future state design, considerations, requirement gathering, SIPOC matrix";

      c.   analyzing and making recommendations for data flow simplification/redesign; and

      d.   assisting with the design and development of new PBU forecasting technology enabler.

  iii.   Work stream C

      a.   identifying and documenting long term process improvement opportunities based on better practices; and

      b.   preparing summary report on long term process improvement opportunities for the PBU forecast.

  iv.   Work stream D

      a.   conducting interviews/workshops with internal customer, stakeholders, process owners;

      b.   analyzing &  comparing Key Performance Indicators data with better practices data;

      c.   developing recommendations for new Key Performance Indicators; and

      d.   preparing a summary report of Key Performance Indicator findings and recommendations.

33.     The foregoing professional services performed by KPMG were necessary and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by KPMG were in the best interests of the Debtors and other parties-in-interest. Compensation for the foregoing services, as requested, is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. The professional services were performed expediently and in an efficient manner.

34.     The professional services performed by KPMG on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 13,835.9 recorded hours by KPMG's professionals. Of the aggregate time expended, 13,177.9 recorded hours were expended by partners and associates of KPMG.

35.     During the Compensation Period, KPMG billed the Debtors for time expended by professionals based on hourly rates ranging from $71 to $525 per hour. Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $339.44 (based on 13,177.9 recorded hours for professionals at KPMG's billing rates in effect at the time of the performance of services). As noted above, annexed hereto as Exhibit B is a schedule listing each KPMG professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by KPMG for services performed by each such individual and the aggregate number of hours and charges by each such individual.

**Actual and Necessary Disbursements of KPMG LLP**

36.     As set forth in Exhibit "C", KPMG has disbursed $875,878.51 for expenses incurred in providing professional services during the Compensation Period. The actual expenses incurred in providing professional services were necessary, reasonable, and justified to serve the needs of the Debtors, their estates, and creditors and KPMG has made every effort to minimize its disbursements in these cases.

**The Requested Compensation Should Be Allowed**

37.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation.   11 U.S.C. § 331.   Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  *Id*. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration of, or beneficial to, at the time at which the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a    reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id*. § 330(a)(3).

38.    The services for which KPMG seeks compensation and the expenditures for which KPMG seeks reimbursement in this Application were necessary for and beneficial to the orderly administration of the Debtors' estates and their rehabilitation and reorganization effort.    KPMG worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 processes.    These services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors.    Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

39.    In sum, the services rendered by KPMG were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, and approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## Conclusion

WHEREFORE, KPMG respectfully requests that the Court enter an order: (i) allowing KPMG interim compensation for actual and necessary professional services

28

rendered during the Compensation Period in the aggregate amount of $4,327,419.31; (ii)

allowing KPMG interim reimbursement for actual and necessary expenses incurred

during the Compensation Period in the aggregate amount of $875,878.51; (iii) directing

the Debtors to pay KPMG the total amount of $5,203,297.82 of outstanding fees and

expenses in connection with KPMG's representation of the Debtors during the

Compensation Period; (iv) holding that the allowance of such interim compensation for

professional services rendered and reimbursement of actual and necessary expenses

incurred be without prejudice to KPMG's right to seek additional compensation for

services performed and expenses incurred during the Compensation Period which were

not processed at the time of the Application; and (v) granting KPMG such other and

further relief as is just.


Dated: November 30, 2007
New York, New York

KING & SPALDING LLP


By: /s/ H. Slayton Dabney, Jr.
      H. Slayton Dabney, Jr., Esq.


1185 Avenue of the Americas
New York, NY  10036-4003
Tel:  (212) 556-2100
Fax:  (212) 556-2222

Attorneys for KPMG LLP

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**


----------------------------------------------------------------- x
                                                                  :
**In re:**                                                        :
                                                                  :        **Chapter 11**
**DELPHI CORPORATION, et al**                                     :        **Case No. 05-44481 (RDD)**
                                                                  :
                                                                  :        **(Jointly Administered)**
                                                                  :
                    **Debtors.**                                  :
----------------------------------------------------------------- X


### CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF SIXTH APPLICATION OF KPMG LLP FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Gary A. Silberg, hereby certify that:

1.      I am a partner with the applicant firm, KPMG LLP ("KPMG"), with responsibility for the chapter 11 cases of Delphi Corporation and its above-captioned affiliated debtors (collectively, the "Debtors"), in respect of compliance with (i) the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), (ii) the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") and (iii) the (A) Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated November 4, 2005 (the "Interim Compensation Order"), (B) the Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 8, 2006 (the "Supplemental Interim Compensation Order"), (C) the Second Supplemental

Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated March 28, 2006 (the "Second Supplemental Interim Compensation Order"), (D) the Third Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated May 5, 2006 (the "Third Supplemental Interim Compensation Order"), (E) the Fourth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 12, 2006 (the "Fourth Supplemental Interim Compensation Order," (F) the Fifth Supplemental Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals dated October 13, 2006 (the "Fifth Supplemental Interim Compensation Order"), and (G) the Sixth Supplemental Order Under 11 U.S.C. § 331 Establishing procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated December 12, 2006 (the "Sixth Supplemental Interim Compensation Order," collectively, the foregoing orders and supplemental orders, hereinafter known as the "Administrative Orders", and collectively with the Amended Local Guidelines and UST Guidelines, the "Guidelines").

2.      This certification is made in respect of KPMG's Sixth Application, dated November 30, 2007 (the "Application"), for interim allowance of reasonable compensation for actual and necessary services performed by KPMG and for reimbursement of actual and necessary expenses incurred for the period commencing June 1, 2007 through and including September 30, 2007 (the "Compensation Period"), in accordance with the Guidelines.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

a.      I have read the Application;

b.      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

c.      the fees and disbursements sought are billed at rates in accordance with those customarily charged by KPMG and generally accepted by KPMG's clients; and

d.      in providing the reimbursable services reflected in the Application, KPMG did not make a profit on those services, whether performed by KPMG in-house or through a third party.

4.      In respect of section B.2 of the Local Guidelines and as required by the Administrative Orders, I certify that KPMG has complied with these provisions requiring it to provide (i) the United States Trustee for the Southern District of New York, (ii) the Debtors, (iii) the attorneys for the Debtors, (iv) the attorneys for the statutory committee of unsecured creditors appointed in these cases, (v) counsel for the agent under Debtors' prepetition facility, (vi) counsel for the agent under the Debtor's postpetition credit facility, (vii) the Fee Committee, and (viii) the Fee Examiner with a monthly fee statement, following each month for which compensation is sought, with a statement of KPMG's fees and disbursements accrued during the previous month.   As required by the Interim Compensation Order, each such monthly fee statement contains a list of professionals and paraprofessionals providing services, their respective billing rates, the aggregate hours spent by each professional and paraprofessional, a reasonably detailed breakdown of the disbursements incurred and contemporaneously maintained time entries for each individual in increments of tenths of an hour.

5.      In respect of section B.3 of the Local Guidelines, I certify that the United States Trustee for the Southern District of New York, the Debtors, the attorneys for the Debtors and the attorneys for the statutory committee of unsecured creditors appointed in these cases are each being provided with a copy of the Application.

Dated: Chicago, Illinois
          November 30, 2007

_____

Gary A. Silberg
KPMG LLP
303 East Wacker Drive
Chicago, IL 60601
Telephone: (312) 665-1916

**EXHIBIT B**

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
June 1, 2007 through September 30, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | | Total Compensation |
|---|---|---|---|---|---|
| Heckler, Brian | Partner | $525 | 6.1 | (1) | $ 3,202.50 |
| Khan, Adil | Partner | $525 | 8.0 | (1) | $ 4,200.00 |
| Forsythe, Duncan | Partner | $500 | 11.3 | | $ 5,650.00 |
| Gary, Daniel | Partner | $500 | 90.6 | | $ 45,300.00 |
| Heckler, Brian | Partner | $500 | 40.8 | | $ 20,400.00 |
| Kempke, Darin | Partner | $500 | 0.6 | (1) | $ 300.00 |
| Musur, Robert | Partner | $500 | 65.2 | | $ 32,600.00 |
| Smith, Andrew W. | Partner | $500 | 25.0 | | $ 12,500.00 |
| Wong , Jeff | Partner - China | $494 | 1.0 | (1) | $ 494.21 |
| Orlando, Joe | Partner | $480 | 153.5 | | $ 73,680.00 |
| Stoffregen, Phil | Partner | $480 | 12.5 | | $ 6,000.00 |
| Chang, Vincent | Partner - Taiwan | $475 | 2.0 | (1) | $ 950.00 |
| Fisch, Ricardo | Partner - Argentina | $470 | 2.0 | (1) | $ 940.00 |
| Chen, F. | Partner - Malaysia | $470 | 4.5 | (1) | $ 2,115.00 |
| Leonard, Patrick | Partner - Romania | $470 | 6.0 | (1) | $ 2,820.00 |
| Kullakattimas, Benjamas | Partner - Thailand | $470 | 5.0 | (1) | $ 2,350.00 |
| Sosna, Marek | Partner - Poland | $435 | 2.5 | (1) | $ 1,087.50 |
| Voigt, Kevin | Managing Director | $525 | 11.7 | | $ 6,142.50 |
| Harmening, Thomas | Managing Director | $500 | 107.2 | | $ 53,600.00 |
| Laures, Paul | Managing Director | $500 | 174.4 | | $ 87,200.00 |
| Voigt, Kevin | Managing Director | $500 | 207.4 | | $ 103,700.00 |
| Canter, Ralph | Managing Director | $480 | 34.6 | | $ 16,608.00 |
| Dailey, Bill | Managing Director | $465 | 246.0 | | $ 114,390.00 |
| Gorski, Tom | Managing Director | $465 | 227.1 | | $ 105,601.50 |
| Chan, David | Director | $465 | 19.2 | | $ 8,928.00 |
| Hogan, Brian J | Director | $465 | 36.7 | | $ 17,065.50 |
| McNamara, Neal | Director | $465 | 0.5 | (1) | $ 232.50 |
| Wells, Nathan | Director | $465 | 8.1 | | $ 3,766.50 |
| Allen, Lester | Director | $440 | 136.7 | | $ 60,148.00 |
| Hogan, Brian J | Director | $440 | 207.7 | | $ 91,388.00 |
| McNamara, Neal | Director | $440 | 426.7 | | $ 187,748.00 |
| Champion, Jon | Director | $435 | 330.5 | | $ 143,767.50 |
| Hori, David | Sr. Manager | $465 | 115.2 | | $ 53,568.00 |
| Schroeder, Christopher | Sr. Manager | $465 | 12.0 | | $ 5,580.00 |
| Bradford, Davis | Sr. Manager | $450 | 236.0 | | $ 106,200.00 |
| Mulligan, Michael | Sr. Manager | $450 | 10.4 | | $ 4,680.00 |
| Amador, Lina | Sr. Manager | $440 | 1.5 | (1) | $ 660.00 |
| Hori, David | Sr. Manager | $440 | 12.7 | | $ 5,588.00 |
| Loy, Jason | Sr. Manager | $440 | 286.3 | | $ 125,972.00 |
| Mulligan, Michael | Sr. Manager | $440 | 151.5 | | $ 66,660.00 |
| Ryan, Daniel | Sr. Manager | $440 | 9.5 | | $ 4,180.00 |
| Schroeder, Christopher | Sr. Manager | $440 | 259.7 | | $ 114,268.00 |
| Leal, Rosario | Sr. Manager - Argentina | $375 | 10.5 | | $ 3,937.50 |
| Modicom, Helene | Sr. Manager - Morocco | $375 | 1.8 | (1) | $ 675.00 |
| Strusevici, Daniela | Sr. Manager - Romania | $375 | 10.8 | | $ 4,050.00 |
| Kulpiński, Jacek | Sr. Manager - Poland | $345 | 9.2 | | $ 3,174.00 |
| Lee, Ming | Sr. Manager - China | $220 | 3.0 | (1) | $ 658.83 |
| Duffy, Kevin | Manager | $435 | 406.0 | | $ 176,610.00 |
| McStravick, Mark | Manager | $435 | 346.0 | | $ 150,510.00 |
| Miller, Vivian | Manager | $435 | 72.5 | | $ 31,537.50 |
| Muldoon, Charles | Manager | $435 | 336.1 | | $ 146,203.50 |
| Mullaney, Jim | Manager | $435 | 24.0 | | $ 10,440.00 |
| Novoa, Chris | Manager | $435 | 163.5 | | $ 71,122.50 |
| Ricafort, Michael | Manager | $435 | 426.0 | | $ 185,310.00 |

## EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
June 1, 2007 through September 30, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Siewert, J. Mitch | Manager | $435 | 69.5 | $ 30,232.50 |
| Tetrault, Paul | Manager | $435 | 288.0 | $ 125,280.00 |
| Siewert, J. Mitch | Manager | $405 | 128.3 | $ 51,961.50 |
| Yeager, Brian | Manager | $405 | 427.8 | $ 173,259.00 |
| Baumgartner, John | Manager | $400 | 50.7 | $ 20,280.00 |
| Klacking, Don | Manager | $400 | 104.2 | $ 41,680.00 |
| Jacobson, Scott | Manager | $360 | 74.4 | $ 26,784.00 |
| Kaestner, Martin | Manager | $360 | 15.0 | $ 5,400.00 |
| Pittman, John | Manager | $360 | 313.5 | $ 112,860.00 |
| Waibel, Kirk | Manager | $360 | 8.0 (1) | $ 2,880.00 |
| Fan, Rui | Manager | $300 | 38.4 | $ 11,520.00 |
| Pasecki, Sergiusz | Manager - Poland | $290 | 25.0 | $ 7,250.00 |
| Chang, W. | Manager - Malaysia | $265 | 10.5 | $ 2,782.50 |
| Sudumpun, Narumon | Manager - Thailand | $265 | 13.0 | $ 3,445.00 |
| Gardiner, Collin | Sr. Associate | $300 | 34.0 | $ 10,200.00 |
| Green, Diana | Sr. Associate | $300 | 375.6 | $ 112,680.00 |
| Jhaveri, Jigar | Sr. Associate | $300 | 74.5 | $ 22,350.00 |
| Kolodziej, Amy | Sr. Associate | $300 | 14.0 | $ 4,200.00 |
| Laaker, John | Sr. Associate | $300 | 225.0 | $ 67,500.00 |
| Sellers, Monica | Sr. Associate | $300 | 295.1 | $ 88,530.00 |
| Mordini, Richard | Sr. Associate | $300 | 5.9 | $ 1,770.00 |
| Shariff, Tanya | Sr. Associate | $300 | 327.1 | $ 98,130.00 |
| Wilson, Bill | Sr. Associate | $300 | 89.8 | $ 26,940.00 |
| Bergman, Beth | Sr. Associate | $250 | 1.0 (1) | $ 250.00 |
| Bunnell, Brian | Sr. Associate | $250 | 23.5 | $ 5,875.00 |
| Caffrey, Ryan | Sr. Associate | $250 | 157.3 | $ 39,325.00 |
| Cepkauskaite, Lina | Sr. Associate | $250 | 36.5 | $ 9,125.00 |
| Dellaloglu, Defne | Sr. Associate | $250 | 45.5 | $ 11,375.00 |
| Elder, Michael D. | Sr. Associate | $250 | 246.7 | $ 61,675.00 |
| Kielkucki, Cynthia | Sr. Associate | $250 | 45.0 | $ 11,250.00 |
| Markos, Abedi | Sr. Associate | $250 | 22.0 | $ 5,500.00 |
| Mordini, Richard | Sr. Associate | $250 | 321.6 | $ 80,400.00 |
| Nemitz, Haydn | Sr. Associate | $250 | 6.0 (1) | $ 1,500.00 |
| Nizhnikov, Alexander | Sr. Associate | $250 | 238.3 | $ 59,575.00 |
| Sassen, Timm | Sr. Associate | $250 | 36.5 | $ 9,125.00 |
| Wall, Lucas | Sr. Associate | $250 | 22.5 | $ 5,625.00 |
| Chillet, L. | Senior Associate - Morocco | $210 | 15.5 | $ 3,255.00 |
| Liew, C. | Sr. Associate - Malaysia | $210 | 16.5 | $ 3,465.00 |
| Petre, Mihai | Assistant Manager - Romania | $265 | 24.8 | $ 6,572.00 |
| Mordini, Richard | Associate | $300 | 7.8 | $ 2,340.00 |
| Gwinn, Cameron | Associate | $200 | 401.3 | $ 80,260.00 |
| Howell, Barbara | Associate | $200 | 19.0 | $ 3,800.00 |
| Reid, Carol | Associate | $200 | 82.2 | $ 16,440.00 |
| Rush, Jennifer | Associate | $200 | 24.5 | $ 4,900.00 |
| Tatum, Pamela | Associate | $200 | 213.5 | $ 42,700.00 |
| Yacu, Christopher | Associate | $200 | 165.4 | $ 33,080.00 |
| Akal, Saadiq | Associate | $195 | 89.7 | $ 17,491.50 |
| Wachter, Ryan | Associate | $195 | 570.4 | $ 111,228.00 |
| Wong, Wei | Associate | $195 | 296.0 | $ 57,720.00 |
| Wang, Jason | Associate - Taiwan | $175 | 10.0 | $ 1,750.00 |
| Guth, Anthony D. | Associate | $165 | 162.1 | $ 26,746.50 |
| Lane, Robert | Associate | $165 | 48.8 | $ 8,052.00 |
| Mutemba, Muposeni K. | Associate | $165 | 375.5 | $ 61,957.50 |
| Sadagopan, Ragu | Associate | $165 | 302.1 | $ 49,846.50 |

## EXHIBIT B

Delphi Corporation, et al.
Summary of Hours and Standard Fees Incurred By Professional
June 1, 2007 through September 30, 2007

| Name of Professional Person | Position | Hourly Billing Rate | Total Billed Hours | | Total Compensation |
|---|---|---|---|---|---|
| Sawica, Patrick | Associate | $165 | 132.0 | $ | 21,780.00 |
| Shah, Nasrin | Associate | $165 | 14.7 | $ | 2,425.50 |
| Siebert, Thomas A | Associate | $165 | 238.2 | $ | 39,303.00 |
| Sona, Edward | Associate | $165 | 2.0 (1) | $ | 330.00 |
| Whipple, Sara | Associate | $165 | 133.4 | $ | 22,011.00 |
| Wilson Gnanamuthu, Diana | Associate | $165 | 3.5 (1) | $ | 577.50 |
| Windholtz, Marianne | Associate | $165 | 0.9 (1) | $ | 148.50 |
| Fu , Kevin | Associate - China | $71 | 12.0 | $ | 846.96 |
| Man, Adina | Staff - Romania | $210 | 35.1 | $ | 7,371.00 |
| Claudio, Caserta | Supervisor - Argentina | $210 | 5.5 (1) | $ | 1,155.00 |
| Cristiani, Alejandro | Supervisor - Argentina | $210 | 50.5 | $ | 10,605.00 |
| Casady, Stephen | Paraprofessional | $100 | 33.8 | $ | 3,380.00 |
| Frame, Juanita | Paraprofessional | $100 | 348.0 | $ | 34,800.00 |
| Henke, Ryan | Paraprofessional | $100 | 23.6 | $ | 2,360.00 |
| Ng, Ashley | Paraprofessional | $100 | 37.0 | $ | 3,700.00 |
| Ostrega, Matt | Paraprofessional | $100 | 105.6 | $ | 10,560.00 |
| Paykin, Michael | Paraprofessional | $100 | 110.0 | $ | 11,000.00 |
| Total Hours and Fees | | | **13,835.9** | $ | 4,538,932.00 |

| | | |
|---|---|---|
| Voluntary Reduction in Fee Statement and Non-Working Travel Time | $ | (211,512.69) |
| Total Fees | $ | 4,327,419.31 |
| Out of Pocket Expenses | $ | 875,878.51 |
| Subtotal of Fees and Out of Pocket Expenses | $ | 5,203,297.82 |
| Holdback Adjustment ($4,327,419.31 x 20%) | $ | (865,483.86) |
| **Net Requested Fees & Out of Pocket Expenses** | **$** | **4,337,813.96** |

KPMG's standard practice is to treat certain time and expenses as having been incurred when such obligations are recorded and reflected as payable in KPMG's accounting. Moreover, KPMG may not bill certain expenses until all supporting documentation is received. Accordingly, KPMG may seek reimbursement of fees and disbursements relating to this month in subsequent statements and/or applications.

Notes:

**(1)** - **Although these timekeepers billed eight hours or less during any one month period, they are not Transitory Timekeepers because of (i) the nature of the services that they provided, (ii) the timing of the services they provided relative to the time of the month, or (iii) their supervisory role dictated a limited but valuable participation in the project.**

**EXHIBIT C**

Delphi Corporation, et al.
Summary of Out-of-Pocket Expenses
June 1, 2007 through September 30, 2007

| Category | Amount |
|---|---|
| Airfare | $    331,950.11 |
| Ground Transportation | $    153,787.22 |
| Lodging | $    278,987.74 |
| Meals | $      24,694.80 |
| Other | $      86,458.64 |
| | |
| Total expenses | $    875,878.51 |

## EXHIBIT D

Delphi Corporation et al.
Compensation by Project Category
June 1, 2007 through September 30, 2007

| Category | Hours | Total Compensation |
|---|---|---|
| Tax - International Tax Package Improvement | 212.0 | $55,538.00 |
| Fee Statements and Fee Applications | 1,035.1 | $65,267.31 |
| Non Working Travel Time | 386.9 | $64,983.50 |
| Transaction Services - Project Rhodes | 36.7 | $11,511.50 |
| Tax Consulting Services | 12.5 | $6,000.00 |
| Financial Close, Consolidation and Management | 4,245.3 | $1,671,822.00 |
| Transaction Services - Project Rhodes/Evergreen III | 273.9 | $81,760.00 |
| Fresh Start Services | 4,568.8 | $1,461,474.00 |
| Project Shark "Target" | 84.6 | $29,460.50 |
| Project Rhodes - Discontinued Operations | 1,014.8 | $255,697.50 |
| Electronics & Safety - PBU - Product Line Performance Reporting | 135.2 | $49,942.50 |
| Impairment Services Q02 2007 | 452.5 | $151,485.50 |
| Delphi Steering Division - Budget and Forecasting | 1,377.6 | $422,477.00 |
| **Total hours and fees** | **13,835.9** | **$4,327,419.31** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x
                                    :
In re:                              :          **Chapter 11**
                                    :
**DELPHI CORPORATION, et al.,**     :          **Case No. 05-44481 (RDD)**
                                    :
                    **Debtors.**    :          **(Jointly Administered)**
                                    :
                                    :
----------------------------------------------------------------- x

**ORDER APPROVING SIXTH APPLICATION OF KPMG LLP,**
**AS TAX AND TRANSACTION SERVICES ADVISORS AND ADVISORY AND**
**VALUATION SERVICES ADVISORS FOR THE DEBTORS, FOR INTERIM**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM JUNE 1, 2007 THROUGH SEPTEMBER 30, 2007**

This matter comes before the Court upon the Sixth Application (the "Application") of

KPMG LLP ("KPMG"), as Tax and Transaction Services Advisors and Advisory and Valuation

Services Advisors for the Debtors, for Interim Compensation for Professional Services Rendered

and for Reimbursement of Actual and Necessary Expenses for the Period from June 1, 2007

through September 30, 2007 (the "Compensation Period").

This Court having reviewed the Application; and no objections or comments to the

Application having been filed; and this Court having determined that the legal and factual bases

set forth in the Application establish just cause for the relief granted herein,

THIS COURT HEREBY FINDS THAT:

(1)     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue of this Chapter 11

case and Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the Local

Bankruptcy Rules.

(2)     KPMG is a duly appointed professional in the above-captioned Debtors' chapter 11 cases.

(3)     KPMG served the Application with all exhibits by overnight mail to all Notice Parties referenced at Paragraph 2.a of the Order establishing compensation procedures (Docket No. #869).  KPMG served a Notice of filing and objection/hearing dates by electronic mail (or by fax when no email address provided) upon all persons on the Master Service List and the 2002 List.

(4)     No objections were filed.

(5)     Based upon this Court's review of the Application and the schedules attached thereto, the fees and expenses are reasonable, actual and necessary.

IT IS, THEREFORE, ORDERED, that:

1.     The Application is APPROVED AND GRANTED.

2.     The fees and reimbursable expenses for the Compensation Period are approved and allowed in the following amounts, and Debtors may pay KPMG such amounts to the extent not already paid:

| | |
|---|---|
| Fees (100%) | $   4,327,419.31 |
| Expenses (100%) | $      875,878.51 |
| Subtotal | $   5,203,297.82 |
| Payments Received | $  (3,547,585.32) |
| Total Balance Due | $   1,655,712.50 |

Dated: New York, New York
_____, 2008

_____
United States Bankruptcy Judge