**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| DELPHI CORPORATION., | : Case No. 05-44481 (RDD) |
| et al., | : |
| | : Jointly Administered |
| Debtors. | : |

-------------------------------------------------------------- x

## SIXTH INTERIM APPLICATION OF ROTHSCHILD INC. FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Name of Applicant:                                      Rothschild Inc.

Authorized to Provide Professional Services             DELPHI CORPORATION, et al.
to:

Date of Retention:                                      As of October 8, 2005

Period for which compensation and
reimbursement are sought:                               June 1, 2007 – September 30, 2007

Amount of compensation sought as actual,
reasonable, and necessary:                              $1,000,000.00

Amount of expense reimbursement sought as
actual, reasonable, and necessary:                      $82,960.93

This is a(n):         _____ Monthly    X    Interim    _____ Final Application

If this is not the first application filed, disclose the following for prior application:

| Date Filed | Period Covered | Requested Fees | Requested Expenses[1] | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| May 1, 2006 | 10/08/05 – 1/31/06 | $943,548.39 | $84,007.54 | $943,548.39 | $84,007.54 |
| July 31, 2006 | 2/1/06 – 5/31/06 | $1,000,000.00 | $60,862.23 | $1,000,000.00 | $60,862.23 |
| Nov 30, 2006 | 6/1/06 – 9/30/06 | $1,000,000.00 | $224,982.46 | $1,000,000.00 | $224,982.46 |
| Mar 29, 2007 | 10/1/06 – 1/31/07 | $1,000,000.00 | $207,456.79 | $1,000,000.00 | $203,956.79 |
| July 31, 2007 | 2/1/07 – 5/31/07 | $1,000,000.00 | $145,973.29 | $1,000,000.00 | $145,973.29 |
| Nov 30, 2007 | 6/1/07 – 9/30/07 | $1,000,000.00 | $82,960.93 | | |

---

[1] Rothschild has voluntarily agreed to reduce its expenses for the first three interim fee periods by a total of $13,016.19, which was allocated equally among the first three periods, for the fourth interim fee period by $3,500.00, and for the fifth interim period by $2,000.00

318576

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re                                             :    Chapter 11
                                                  :
DELPHI CORPORATION,                               :    Case No. 05-44481 (RDD)
    et al.,                                       :
                                                  :    Jointly Administered
                                  Debtors.        :
------------------------------------------------------------ x


## SIXTH INTERIM APPLICATION OF ROTHSCHILD INC. FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES


Rothschild Inc. ("Rothschild"), financial advisor and investment banker for Delphi

Corporation ("Delphi" or the "Company"), together its affiliated debtors and debtors-in-

possession (collectively, the "Debtors" or the "Company"), makes this sixth interim application

for compensation and reimbursement of expenses, and in support thereof respectfully represents:

1.  This application is made pursuant to (i) Sections 330 and 331 of Title 11 of the United

States Code (the "Bankruptcy Code"), (ii) Rules 2014 and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Administrative Order M-150, Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases (the "Amended Guidelines"), (iv) the Order of this Court, dated November 4,

2005 (together with each supplemental order, the "Fee Order"), Establishing Procedures for

Monthly Compensation and Reimbursement of Expenses of Chapter 11 Professionals, (v) the

Order of this Court, dated October 14, 2005 (the "Interim Retention Order"), Authorizing

Retention of Rothschild Inc. as Investment Banker and Financial Advisor for the Debtors, nunc

pro tunc to October 8, 2005, the commencement of the Debtors' cases, (vi) the Order of this

Court, dated November 30, 2005 (the "Final Retention Order"), and together with the Interim

318576

Retention Order, the "Retention Orders"), Authorizing Retention of Rothschild Inc. as

Investment Banker and Financial Advisor for the Debtors, and (vii) Order of this Court, dated

December 18, 2006, Authorizing Amendment of Fee Structure for Merger and Acquisition

Transaction Services Involving Debtors' Steering and Interiors Division (the "Supplemental

Retention Order").  Copies of the Retention Orders and the Supplemental Retention Order are

attached hereto as Exhibit A.

## BACKGROUND

2.  On October 8, 2005 (the "Filing Date"), 39 of 42 Debtors, and on October 14, 2005,

the remaining Debtors, filed voluntary petitions in this Court under Chapter 11 of the

Bankruptcy Code.  The Debtors are authorized to operate their business and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.

3.  With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately

$17.1billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms

of revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not Chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the Chapter 11

requirements of the U.S. Bankruptcy Code.

4.  Over the past century, the operations which are now owned by Delphi have become a

leading global technology innovator with significant engineering resources and technical

competencies in a variety of disciplines. Today, the Company is arguably the single largest

---

[2] The aggregated financial data used in this Application generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

global supplier of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology. The Company's technologies and products are present

in more than 75 million vehicles on the road worldwide. The Company supplies products to

nearly every major global automotive original equipment manufacturer ("OEM") with 2004 sales

to its former parent, General Motors Corporation ("GM"), equaling approximately $15.4 billion

and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor

Company, Ltd., and Volkswagen Group exceeding $850 million.

5.   As part of its growth strategy, Delphi has established an expansive global presence

with a network of manufacturing sites, technical centers, sales offices, and joint ventures located

in every major region of the world. In the U.S., the Debtors employ approximately 50,600

people. Those employees work in approximately 44 manufacturing sites and 13 technical centers

across the country, and in Delphi's worldwide headquarters and customer center located in Troy,

Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are

represented by approximately 49 different international and local unions. Outside the United

States, the Company's foreign entities employ more than 134,000 people, supporting 120

manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

6.   In the first two years following Delphi's separation from GM, the Company generated

more than $2 billion in net income. Every year thereafter, however, with the exception of 2002,

the Company has suffered losses. In calendar year 2004, the Company reported a net operating

loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace,

Delphi's financial condition has deteriorated further in the first six months of 2005. The

Company experienced net operating losses of $608 million for the first six months of calendar

year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales

than during the same time period in calendar year 2004.[3]

7.    The Debtors believe that three significant issues have largely contributed to the

deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy

liabilities and operational restrictions driven by collectively bargained agreements, including

restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of

which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle

production environment for domestic OEMs resulting in the reduced number of motor vehicles

that GM produces annually in the United States and related pricing pressures, and (c) increasing

commodity prices.

8.    In light of these factors, the Company determined that it would be imprudent and

irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,

operational issues, and forward looking revenue requirements. Having concluded that pre-filing

discussions with its unions and GM were not leading to the implementation of a plan sufficient

to address the Debtors' issues on a timely basis, the Company determined to commence these

Chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value.

## RETENTION OF ROTHSCHILD

9.    By letter agreement dated May 1, 2005 and amended as of October 8, 2005 (and as

may be further amended, modified or supplemented from time to time, including by the

Retention Orders, the "Engagement Letter"), the Debtors retained Rothschild to assist the

Debtors with a possible restructuring.  A copy of the Engagement Letter is attached hereto as

---

[3] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related
to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

318576

Exhibit B.  Pursuant to the terms of the Engagement Letter, by letter agreement dated May 17,

2006, the Debtors confirmed their earlier oral instructions requesting that Rothschild serve as the

Company's primary financial advisor and investment banker in connection with the Company's

proposed sales of its Steering and Interior businesses, and by letter agreement dated July 19,

2006, the Debtors agreed to amend the Engagement Letter for the fee structures of such

transactions.

10.    Rothschild understands the Debtors chose to retain Rothschild due to Rothschild's

reputation as a leading investment banking firm and financial advisor and its substantial

experience advising debtors, creditors' committees and other parties in interest in connection

with all aspects of the financial restructuring and Chapter 11 cases, including financial advice

regarding mergers, acquisitions, divestitures, public and private financings and spin-offs and

evaluation of assets and liabilities, formulation and negotiation of plans of reorganization and the

restructuring of indebtedness.

11.    Rothschild respectfully refers this Court to the Engagement Letter for a full

recitation of its terms.  In summary, Rothschild was retained by the Debtors to:

      (a)    the extent deemed desirable by the Debtors, identify and/or initiate
potential Transactions (as defined in the Engagement Letter) or other transactions;

      (b)    the extent Rothschild deems necessary, appropriate and feasible, or as the
Debtors may request, review and analyze the Debtors' assets and the operating and
financial strategies of the Debtors;

      (c)    assist the Company in developing and evaluating strategic alternatives
with respect to the Company's legacy liabilities;

      (d)    review and analyze the business plans and financial projections prepared
by the Debtors including, but not limited to, testing assumptions and comparing those
assumptions to historical Company and industry trends;

      (e)    evaluate the Debtors' debt capacity in light of their projected cash flows
and assist in the determination of an appropriate capital structure for the Debtors;

      (f)    assist the Debtors and their other professionals in reviewing the terms of

318576

any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction or other transaction, whether in connection with a Plan (as defined in the Engagement Letter) or otherwise;

(g)    determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction or other transaction;

(h)    advise the Debtors on the risks and benefits of considering a Transaction or other transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors, whether pursuant to a Plan or otherwise;

(i)    review and analyze any proposals the Debtors receive from third parties in connection with a Transaction or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(j)    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction or other transaction;

(k)    advise and attend meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(l)    participate in hearings before the Bankruptcy Court (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described in the Engagement Letter and issues arising in connection with any proposed Plan;

(m)    assist the Debtors' internal and external counsel to enable such counsel to provide legal advice to the Debtors; and

(n)    render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Debtors in connection with any of the foregoing.

## COMPENSATION

12.    Pursuant to the Engagement Letter, in consideration for the services provided to the

Debtors, the Debtors have agreed to pay Rothschild the following amounts, pursuant to Section

328 of the Bankruptcy Code, and subject to the final approval of the Bankruptcy Court:

(a)    A retainer (the "Retainer") in an amount equal to the Monthly Fee (as defined below), to be applied against the fees and expenses of Rothschild under the Rothschild Agreement.

(b)    Commencing as of the date of the Engagement Letter, and whether or not a Transaction is proposed or consummated, a cash advisory fee (the "Monthly Fee") of

$250,000 per month. The Monthly Fee shall be payable by the Company in advance on the first day of each month.

(c)  a fee (the "Completion Fee") of $15,000,000, due and payable in cash upon the earlier of (i) the confirmation and effectiveness of a Plan or (ii) the closing of another Transaction; provided, that Rothschild shall credit against the Completion Fee: (X) 50% of the M&A Fee (as defined below); (Y) 50% of the New Capital Fees (as defined below) and (Z) to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of the Rothschild Agreement, the Retainer; provided that the sum of such credits shall not exceed the Completion Fee.

(d)  In the case of any M&A Transaction for which Rothschild is designated by the Company as the Company's primary advisor and investment banker, and which does not arise out of a Transaction for which a Completion Fee is due, a fee (the "M&A Fee") (as defined in the Engagement Letter).

(e)  A new capital fee (the "New Capital Fee") equal to (i) 1.0% of any senior secured debt raised; (ii) 3.0% of the face amount of any junior secured or senior or subordinated unsecured debt (including any convertible debt) raised and (iii) 5.0% of any equity or hybrid capital raised (each a "New Capital Raise"), in each case, in which Rothschild is designated by the Company as the Company's primary advisor and investment banker.  The New Capital Fee shall be due and payable in cash at the closing of any New Capital Raise; provided, that no New Capital Fee shall become payable in respect of any new capital raised (x) with respect to any debtor-in-possession financing arrangements; (y) from an entity not otherwise participating in or having expressed an interest in participating in a Transaction; or (z) from an Acquirer or an entity having expressed an interest in becoming an Acquirer in connection with the consummation of a Transaction which is intended to occur simultaneously with or within a reasonable period after the closing of such New Capital Raise.

(f)  To the extent the Company requests Rothschild to perform additional services not contemplated by the Rothschild Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

13.  Pursuant to the Engagement Letter and the Final Retention Order, the Debtors will reimburse Rothschild for reasonable out-of-pocket expenses incurred in connection with the provision of services under the Engagement Letter, including without limitation, the reasonable fees, disbursements and other charges of Rothschild's outside counsel.  Out-of-pocket expenses

shall also include, but not be limited to, reasonable expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.[4]

14.    Pursuant to the terms of the Final Retention Order and the Fee Order, Rothschild has submitted monthly statements of fees and disbursements to (<u>i</u>) the Debtors, (<u>ii</u>) counsel to the Debtors, (<u>iii</u>) counsel for the official committee of unsecured creditors, (<u>iv</u>) counsel for the official committee of equity holders (<u>v</u>) the Office of the United States Trustee, (<u>vi</u>) counsel for the agent under the Debtors' prepetition credit facility, (<u>vii</u>) counsel for the agent under the Debtors' post-petition credit facility and (<u>viii</u>) the members of any Committee appointed in these cases for the purpose of reviewing fees and expenses.  Pursuant to the Fee Order, Rothschild has been paid, or anticipates that it will be paid, 80% of the fees and 100% of the expenses identified in each monthly statement to which no objection has been served.  The monthly fee statements delivered by Rothschild, and amounts received in respect thereof, are summarized in the following table:

| Statement Period | Statement Amount | | Payments Received | |
|---|---|---|---|---|
| | **Fees** | **Expenses** | **Fees** | **Expenses** |
| Oct. 2005[5] | $193,548.39 | $13,888.45 | $193,548.39 | $872.26[6] |
| Nov. 2005[5] | $250,000.00 | $13,888.45 | $250 ,000.00 | $13,888.45 |
| Dec. 2005 | $250,000.00 | $20,261.81 | $250,000.00 | $20,261.81 |
| Jan. 2006 | $250,000.00 | $40,307.56 | $250,000.00 | $40,307.56 |

---

[4]  As of the Petition Date, Rothschild had accrued unpaid expenses of $40,307.56 which was offset against the Retainer.

[5]  October and November monthly fee statements were filed together pursuant to the Fee Order, thus for illustrative purposes in this table expenses were evenly distributed

[6]  Rothschild voluntarily agreed to reduce its expenses by $13,016.19 for the first three interim fee periods.  For illustrative purposes in this table, $13,016.19 has been deducted from October 2005 expenses reimbursement.

| Feb. 2006 | $250,000.00 | $17,107.09 | $250,000.00 | $17,107.09 |
|---|---|---|---|---|
| March 2006 | $250,000.00 | $14,329.55 | $250,000.00 | $14,329.55 |
| April 2006 | $250,000.00 | $23,202.39 | $250,000.00 | $23,202.39 |
| May 2006 | $250,000.00 | $10,561.93 | $250,000.00 | $10,561.93 |
| June 2006 | $250,000.00 | $52,607.43 | $250,000.00 | $52,607.43 |
| July 2006 | $250,000.00 | $44,100.79 | $250,000.00 | $44,100.79 |
| August 2006 | $250,000.00 | $87,794.72 | $250,000.00 | $87,794.72 |
| September 2006 | $250,000.00 | $44,818.25 | $250,000.00 | $44,818.25 |
| October 2006 | $250,000.00 | $66,183.88 | $250,000.00 | $66,183.88 |
| November 2006 | $250,000.00 | $17,585.02 | $250,000.00 | $17,585.02 |
| December 2006 | $250,000.00 | $78,537.46 | $250,000.00 | $78,537.46 |
| January 2007 | $250,000.00 | $45,150.43 | $250,000.00 | $41,650.43[7] |
| February 2007 | $250,000.00 | $26,193.33 | $250,000.00 | $26,193.33 |
| March 2007 | $250,000.00 | $107,212.16 | $250,000.00 | $107,212.16 |
| April 2007 | $250,000.00 | $8,776.76 | $250,000.00 | $8,776.76 |
| May 2007 | $250,000.00 | $5,791.04 | $250,000.00 | $3,791.04 [8] |
| June 2007 | $250,000.00 | $9,624.03 | $200,000.00 | $9,624.03 |
| July 2007 | $250,000.00 | $17,152.10 | $200,000.00 | $17,152.10 |
| August 2007 | $250,000.00 | $35,283.95 | $200,000.00 | $35,283.95 |
| September 2007 | $250,000.00 | $20,900.85 | $200,000.00 | $20,900.85 |

---

[7] Rothschild voluntarily agreed to reduce its expenses by $3,500.00 for the fourth interim period. For illustrative purposes in this table, $3,500.00 has been deducted from January 2007 expense reimbursement.

[8] Rothschild voluntarily agreed to reduce its expenses by $2,000.00 for the fifth interim period. For illustrative purposes in this table, $2,000.00 has been deducted from May 2007 expense reimbursement.

## RELIEF REQUESTED

15.  By this Application, Rothschild seeks an Order (i) granting interim allowance and approval of compensation for services rendered during the period June 1, 2007 through and including September 30, 2007 (the "Relevant Period"), consisting of $1,000,000.00 of fees plus the reimbursement of reasonable and necessary expenses incurred by Rothschild during the Relevant Period in the amount of $82,960.93, for a total of $1,082,960.93; (ii) authorizing and directing the Debtors to make payment in respect of 100% of such fees, to the extent not yet received by Rothschild for the Relevant Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order; and (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by Rothschild for the Relevant Period.

16.  All services for which compensation is sought were performed for and on behalf of the Debtors.  Rothschild has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases

17.  Annexed hereto as Exhibit C are invoices for the total compensation and expenses sought by Rothschild for the Relevant Period and a breakdown of Rothschild's expenses incurred during the Relevant Period.  Attached hereto as Exhibit D are daily time logs detailing the activities and services performed by Rothschild on behalf of the Debtors during the Relevant Period.  The resumes of key professionals of Rothschild providing services to the Debtors are attached as Exhibit E.

## LEGAL BASIS FOR REQUESTED COMPENSATION

18.  Rothschild is entitled to receive the fees it has requested in accordance with the express terms of the Engagement Letter and the provisions of Section 328(a) of the Bankruptcy

Code. Section 330 of the Bankruptcy Code provides for the award of compensation to

professionals. *See* 11 U.S.C. § 330. Section 330, by its terms, is "subject to" the provisions of

Section 328 of the Bankruptcy Code. *Id.* Section 328(a) permits a debtor, with the Court's

approval, to employ a professional person "on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, or on a contingent fee basis."

*See* 11 U.S.C. § 328(a).

19. Section 328 represents a departure from the practice that prevailed prior to the

enactment of the Bankruptcy Code in 1978. The purpose of Section 328 was to permit the pre-

approval of compensation arrangements as a method of insuring that the most competent

professionals would be available to provide services in bankruptcy cases. *See In re Westbrooks*,

202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the

Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum");

*In re Olympia Holding Corp.*, 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994).

20. Once the terms of a professional's retention have been approved under Section

328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have

been improvident in light of developments not capable of being anticipated at the time of the

fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also In re Reimers*, 972 F.2d 1127,

1128 (9th Cir. 1992) (compensation agreement approved under Section 328(a) must be enforced

in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review

under Section 330); *In the Matter of National Gypsum Company*, 123 F.3d 861 (5th Cir. 1997)

(same); *In re Olympia Holding Corp.*, 176 B.R. at 964 (same). As the Court explained in

*National Gypsum*:

> If the most competent professionals are to be available for
> complicated capital restructuring and the development of
> successful corporate reorganization, they must know what they

will receive for their expertise and commitment.  Courts must
protect those agreements and expectations, once found to be
acceptable.

21.  Pursuant to the Final Retention Order, this Court approved the retention of

Rothschild under the terms of the Engagement Letter, subject to the standard of review provided

under Section 328(a).  *See* Final Retention Order at pages 2-3.

22.  The compensation for services rendered during the Relevant Period has been earned

and is due and payable in full under the terms of the Engagement Letter.  Rothschild submits that

there have been no developments since the entry of the Final Retention Order that were "not

capable of being anticipated" and that would justify any modification to the terms of

Rothschild's retention.  Accordingly, Rothschild submits that the fees and expense

reimbursements sought herein should be allowed and approved by this Court pursuant to

Sections 328(a) and 330 of the Bankruptcy Code.

23.  Senior level professionals with extensive experience in the area of investment

banking and bankruptcy services have directed Rothschild's team.  The investment banking

services set forth above were performed primarily by David L. Resnick, Managing Director;

William R. Shaw, Director; Slava Brin, Vice President; Rebwar Berzinji, Associate; Michael J.

Stein, Analyst; William Wang, Analyst; and Marc Frenkel, Analyst as well as other professionals

and paraprofessionals, as needed.  Rothschild's general staffing policy is to assign senior

bankers, experienced junior bankers and financial analysts to each restructuring assignment.  The

senior banker, in this case David L. Resnick, has overall responsibility for the case.  He is

primarily responsible for developing strategy with respect to the case, directing negotiations and

interfacing with the other senior professionals involved with the case.  The additional senior

bankers, in this case William Shaw and Slava Brin, are responsible for day-to-day coordination

of the case and the review of all financial analyses.  The experienced junior banker, in this case

318576

Rebwar Berzinji, assists in the day-to-day coordination of the case and performs with the

financial analysts, Michael Stein, William Wang and Marc Frenkel, extensive financial analyses.

The senior bankers, the experienced junior banker and the financial analysts coordinate their

actions so as not to duplicate efforts.  Given that the senior bankers, the experienced junior

banker and the financial analysts have different roles in the case but have overlapping

responsibilities, there are often times in which it is appropriate for two or more bankers to be

present at a meeting.  In addition to the bankers noted above, Rothschild also has two separate

teams of bankers responsible for the Steering and Interiors sale processes.  The Steering sale

process is being performed by Christopher Lawrence, Vice Chairman; Nigel Bell, Director;

William R. Shaw, Director; Irene Fayn, Associate; Elana Caplan, Analyst; and Jason Hahn,

Analyst.  The Interiors sale process is being performed by Christopher Lawrence, Vice

Chairman; William D. Cannon, Vice President; Alexander Ridings, Associate; and Ryan

Chorazy, Analyst.

24.  The amount of fees and expenses sought in this application and Rothschild's billing

processes are consistent with market practices for investment banking firms both in and out of a

bankruptcy context.  Rothschild's policy for all engagements, in or out of bankruptcy, is to

dedicate the appropriate number of professionals to the assignment to complete the work as

efficiently as possible.

25.  Rothschild does not bill its clients based on the number of hours expended by its

professionals.  It bills clients on a retainer basis (generally monthly), plus a transaction fee or

fees based upon completion.  Accordingly, Rothschild does not have hourly rates for its

professionals and Rothschild's professionals generally do not maintain time records for the work

performed for its clients.  Consistent with the terms of the Final Retention Order, however,

Rothschild has maintained a daily time log detailing the activities and services performed by

Rothschild on behalf of the Debtors, in half-hour increments, during the Relevant Period. A copy of these records is attached hereto as <u>Exhibit D</u>.

26.   Given the size and complexity of this case, the complicated corporate and financial structure of the Debtors, the degree of activity during the Relevant Period and the high level of services rendered by Rothschild to the Debtors, Rothschild believes that the compensation sought is fair and reasonable.

## <u>SUMMARY OF SERVICES RENDERED</u>

27.   All services rendered by Rothschild during the Relevant Period were performed at the request or direction of the Debtors or legal professionals of Skadden, Arps, Slate, Meagher & Flom LLP ("<u>Skadden</u>") or O'Melveny & Myers LLP ("<u>O'Melveny</u>").   Rothschild has provided a broad range of necessary financial advisory services.   Major areas of effort performed during the Relevant Period can be summarized into the following general categories:

A.      <u>2007 – 2011 Final Budget Business Plan Financial Diligence</u>

28.   Rothschild has worked closely with the Company to conduct financial due diligence as it completed its 2007 – 2011 Final Budget Business Plan ("<u>2007 Final BBP</u>"), which was presented on August 21, 2007 and subsequently updated on October 19, 2007.   Delphi's 2007 Final BBP included revisions to the 2007 – 2011 Preliminary Business Plan for the final GM and union agreements and other operational updates.   Rothschild reviewed the 2007 Final BBP with key corporate management and the strategic planning group to understand these revisions.

29.   Delphi prepared a presentation of the 2007 Final BBP for review with senior management, the board of directors and Delphi's various stakeholders.   Rothschild provided comments to the presentation and participated with Delphi in meetings to review the materials

with these parties.  Rothschild also coordinated and participated in the diligence review of the

2007 Final BBP by Delphi's various stakeholders.

30.  In the normal course of its business, Delphi prepared a "5+7 Budget", which

incorporated actual results for the first five months and an updated outlook for 2007.  Rothschild

reviewed the 5+7 Budget with Delphi management as it assessed potential impact to the 2007

Final BBP.  Rothschild participated with Delphi management in its review of the 5+7 Budget

with its various stakeholders.

B.      Recapitalization Model

31.  Rothschild has utilized its consolidated detailed recapitalization model (the "Recap

Model") to analyze the 2007 Preliminary BBP and 2007 Final BBP and transformation scenarios

under various capital structures.  Rothschild modified and updated the Recap Model in order to

evaluate Delphi's 2007 Final BBP.  As the 2007 Final BBP was being completed by Delphi,

Rothschild worked closely with FTI to ensure seamless synchronization between Delphi's

Enterprise BBP Model and the Recap Model.

32.  Using the Recap Model, Rothschild performed various financial analyses and

assessed numerous scenarios during the ongoing plan of reorganization framework negotiations

among Delphi, GM, the statutory committees, the unions, and potential investors.  Rothschild

utilized its Recap Model to assess illustrative framework scenarios, which were instrumental in

advancing the framework negotiations with Delphi's stakeholders.  Rothschild held numerous

meetings and calls with the various stakeholders to review the scenarios and underlying

assumptions.  These analyses were used as a common baseline as stakeholders engaged in

negotiations over framework structure.  Major variables included, but not limited to, the form

and amount of stakeholder recoveries, the timing and amount of pension and 414(l)

318576

contributions, emergence capital structures, and potential investment amounts and financing structures.

C.    Valuation Analysis

33.    Rothschild developed valuation approaches and key assumptions including appropriate industry comparables for each division.  Rothschild performed and updated preliminary research and detailed analysis on valuation and operating metrics of these industry comparables.  Rothschild utilized these metrics to benchmark Delphi's operating performance against that of selected competitors.  Rothschild also developed an analysis of historical precedent industry transactions to assess the associated valuation multiple statistics.

34.    Rothschild completed a detailed valuation analysis on a going-concern basis based on the Company's 2007 Final BBP.  In preparing its analysis, Rothschild (i) prepared discounted cash flow analyses based on the 2007 Final BBP, utilizing various discount rates, and separately valued and accounted for the Debtors' NOLs; (ii) considered the market value of certain publicly-traded companies in businesses reasonably comparable to the operating businesses of the Debtors; (iii) considered the value assigned to certain precedent change-in-control transactions for businesses similar to the Debtors; (iv) separately valued and accounted for the minority interests of third parties in consolidated joint ventures of the Debtors; (v) separately reviewed and accounted for the values estimated for Delphi's ownership interests in unconsolidated joint ventures prepared for the Debtors' fresh start accounting; (vi) separately valued and accounted for the warrants being issued utilizing the standard Black-Scholes methodology; and (xii) conducted such other analyses as Rothschild deemed necessary under the circumstances.  Rothschild presented its detailed valuation analysis to the Delphi Board on

September 5, 2007 based on the 2007 Final BBP and on October 24, 2007 based on the updated
2007 Final BBP.

D.      GM Analysis / Negotiations

35.   Rothschild worked extensively with the Company in its negotiations with GM over
financial support and potential consensual resolution of both US labor costs and GM claims.
This work encompassed numerous regularly scheduled conference calls and in-person meetings
in Detroit and New York on these matters.  Rothschild has interfaced regularly with GM senior
management as well as GM's financial advisors, Bear, Stearns & Co. Inc. ("Bear, Stearns")
regarding negotiations and detailed due diligence review of the 2007 Preliminary BBP.

36.   Rothschild has utilized its Recap Model to assess the financial impact of various
scenarios involving potential support from GM.  Rothschild prepared with Delphi presentations
and various analyses of GM contributions and the quantification of the negotiating positions.
These materials were utilized to facilitate consensual resolution between the parties on key
economic issues.

E.      EPCA and Plan of Reorganization Negotiations

37.   Following this Court's approval of the Equity Purchase and Commitment Agreement
("EPCA") and the Plan Framework Support Agreement ("PSA") on January 11, 2007, Delphi
announced publicly on April 19, 2007 that it anticipated negotiating changes to the EPCA and
PSA, and that it expected Cerberus Capital Management, L.P. would likely not continue to
participate as a plan investor.  Delphi subsequently filed in July 2007, and received this Court's
approval of, an amended EPCA led by Appaloosa.  Rothschild assisted the Debtors and Skadden
in reviewing and negotiating the EPCA documents with the plan investors, GM and statutory
committees.

318576

38.   During the Relevant Period, Rothschild participated in extensive plan of reorganization framework negotiations with each of the statutory committees, GM and potential plan investors regarding, among other items, GM participation, stakeholder consideration and recoveries under a plan of reorganization, and potential plan sponsor structures.   The negotiations entailed a number of meetings and calls with constituency principals and their advisors as well as with potential plan sponsors and their respective advisors.

39.   During the negotiations, Rothschild participated in numerous meetings and calls with the Debtors and its advisors to review the status of negotiations and develop strategy.   In addition to the EPCA plan sponsors, Highland Capital Management expressed potential interest in becoming an alternative plan sponsor and submitted competing proposals.   Rothschild participated in meetings and calls with these parties and their advisors and assisted Delphi in facilitating extensive due diligence.   Rothschild also assisted the Debtors in reviewing and analyzing potential structures received from Appaloosa and Highland Capital.   Rothschild prepared side-by-side analyses to compare both the economic and non-economic terms of the structures, evaluated the recoveries to the constituencies and stakeholders, and assessed the impact on the Debtors' financial projections.   These analyses were presented to Delphi's senior management and Board of Directors.

40.   Rothschild developed an analysis to evaluate the economics to each of the respective stakeholders in the framework negotiations, including but not limited to GM, Plan Investors, Unsecured Creditors and Equity Committee (the "Economic Analysis").   The Economic Analysis was utilized in conjunction with the Recap Model to assess during the course of the negotiations the potential ranges of value, ownership and recoveries of the various stakeholders.

F.       Creditor Committee / Equity Committee / UAW Due Diligence Processes

41.  Rothschild assisted the Company in coordinating the extensive due diligence process

("Creditor Diligence Process") of Jefferies and Co. ("Jefferies"), as advisor to the Official

Committee of Unsecured Creditors, Lazard Ltd. ("Lazard"), as advisor to the UAW and

Compass Advisers LLP ("Compass"), as advisor to the PBGC.  Similarly, Rothschild assisted

the Company in coordinating the due diligence process of the Official Committee of Equity

Security Holders ("Equity Committee Diligence Process").

42.  Rothschild coordinated and facilitated Company responses to numerous due

diligence requests of each Jefferies, Lazard, Compass, and the Equity Committee regarding

operations, financial results, projections, labor cost structure, court motions, and other topics.

Throughout the period, Rothschild has had numerous discussions to answer questions, clarify

requests, and coordinate the process.  Additionally, Rothschild professionals coordinated and

participated with the Debtors in due diligence conference calls requested separately by Jefferies,

Lazard, Compass or the Equity Committee throughout the Creditor / Equity Committee

Diligence Process regarding such topics as the framework discussions and the 2007 Final BBP.

G.    Plan Investor Due Diligence

43.  During the Relevant Period, Rothschild assisted Delphi in establishing and

coordinating the due diligence process of the EPCA plan investors and the potential alternative

plan investors.  This due diligence included, among other things, sessions with the potential

investors and their advisors to review, among other topics, the Debtors' operations, historical

performance, the 2007 Preliminary BBP and 2007 Final BBP, including the various underlying

sales, costs, balance sheet and cash flow assumptions, and preliminary transformation

projections.

H.    Exit Financing Process

44.   Rothschild has assisted the Company in structuring and managing an extensive and competitive process to raise exit financing to allow the Company to finance its emergence from Chapter 11 and fund operations post-emergence ("Exit Financing Process").  Rothschild has held numerous calls and meetings with Delphi to review the process and feedback received from lenders.  Specifically, Rothschild has assisted the Company in coordinating the process, assessing potential exit financing structures, identifying participants, preparing due diligence materials and engaging in discussions and due diligence with such lenders.  Rothschild has participated in a numerous meetings and calls with potential lenders.

45.   Rothschild has also assisted the Debtors in reviewing and analyzing the various preliminary proposals received from lenders. In light of the changing dynamics and dislocations in the capital markets, the Company and Rothschild explored several alternative structures and levels of financing with the lenders.  Rothschild assisted the Company in its preparation of side-by-side analyses to compare the proposed terms and utilized its Recap Model to analyze the impact of the proposed Exit Financing structures on the 2007 Final BBP. Throughout the process the Debtors and Rothschild reviewed the proposals with, and sought feedback from, the statutory committees, the EPCA plan investors, GM and their respective advisors, and assisted Delphi in preparing presentations for their review.

I.     Plan of Reorganization Preparation

46.   Rothschild assisted the Debtors and Skadden in preparing the plan of reorganization and disclosure statement documents.  This included providing mark-ups and participating in numerous Delphi meetings and worksessions to review documentation.  Rothschild also participated in numerous meetings and calls with the plan investors, statutory committees and GM to negotiate the plan and disclosure statement documentation and resolve outstanding issues.

318576

J.    Court Hearings

47.  Rothschild participated in the hearing to approve the Amended EPCA.  In connection

with this hearing, David Resnick prepared a declaration and provided a deposition in support of

the motion.

K.    Board Meetings & Discussions

48.  Rothschild, along with Company management and Skadden, has met regularly with

the Board to keep its members informed of all relevant developments in the Company's

bankruptcy proceedings.  Rothschild has participated in frequent conference calls and meetings

with the Board and sought its members' input, direction and approval on all relevant matters.

L.    Creditor / Equity Meetings & Discussions

49.  Rothschild participated in regularly scheduled meetings/calls with the Official

Committee of Unsecured Creditors and the Official Committee of Equity Security Holders and

their respective advisors to report on and respond to questions concerning the financial

implications of current operating results, current liquidity, the Debtors' 2007 Final BBP, status

of discussions with potential plan investors, the unions and General Motors, the due diligence

process and other matters concerning the Chapter 11 cases.  Rothschild assisted in preparing

detailed presentations and discussion materials.

M.    M&A Activity

50.  During the Relevant Period, Rothschild's two M&A teams assisted the Debtors in

marketing the Company's Steering and Interiors businesses.  Rothschild assisted the Debtors in

finalizing the agreement to sell the Interiors business to Renco and in preparing for the section

363 auction process.  With respect to the Steering process, Rothschild assisted the Debtors in

running a focused remarketing effort.  As part of this process, Rothschild held discussions with potential buyers, participated in Management Presentations, coordinated extensive due diligence and worked with the Debtors to develop key criteria to assess bids.  Rothschild assisted the Company in assessing bids based on a number of considerations including, but not limited to, valuation, structure, financing, further diligence and UAW and GM considerations.  Rothschild has also participated in discussions with Delphi and GM regarding potential GM support for the businesses and transactions.

51.  Rothschild has participated in numerous calls and meetings to review process status with Company management and next steps, including presentations prepared by Rothschild.

52.  As part of the diligence processes for the Creditors, Equity Committee and Plan Investors, Rothschild, along with Delphi management, has prepared presentations and hosted meetings and calls providing updates on the progression of the Steering and Interiors sales.  Topics covered have included sales process timeline, potential buyers, proposal status, and selection criteria.

N.    <u>Miscellaneous</u>

53.  During the Relevant Period, Rothschild has advised the Debtors on a number of miscellaneous matters.  Rothschild participates in regular conference calls and meetings with the Debtors at the Company's headquarters to discuss the Debtors' Chapter 11 cases, financial situation and various related issues.

54.  Rothschild coordinated and participated in weekly conference calls with officers of the Debtors and other advisors to the Debtors to discuss current strategic and other issues relating to the Chapter 11 process.

318576

55. Rothschild respectfully submits that the compensation requested for the Relevant Period for services rendered by Rothschild to the Debtors is fully justified and reasonable based on the following: (a) the degree of activity during the Relevant Period and the high level of services rendered by Rothschild to the Debtors, (b) the complexity of the issues presented, (c) the skills necessary to perform the investment banking services properly, (d) the preclusion of other employment, (e) customary fees charged in non-bankruptcy situations for similar services rendered, (f) time constraints required by the exigencies of the case and (g) the experience, reputation and ability of the professionals rendering services.

56. Rothschild respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interest of the Debtors and their estates and have furthered the goals of all parties in interest. Such services were substantial, highly professional and instrumental to the Debtors' reorganization. They were reasonable and necessary to the Debtors' performance of their duties.

## EXPENSES INCURRED DURING THE RELEVANT PERIOD

57. Rothschild incurred reasonable and necessary out-of-pocket expenses aggregating $82,960.93 during the Relevant Period. Details of the expenses incurred during the Relevant Period are also provided in Exhibit C. Rothschild submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred.

58. Rothschild's charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by Rothschild are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Rothschild does not factor general overhead expenses into disbursements charged to clients in connection with Chapter 11 cases.

318576

Rothschild has followed its general internal policies with respect to out-of-pocket expenses

billed to the Debtors as set forth below, with any exceptions fully explained:

(a)  Rothschild's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints.  Rothschild's employees are permitted to order meals in the office if Rothschild's employee is required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays.  Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost.

(b)  Messengers and couriers are used by Rothschild to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise, Rothschild uses the regular postal system.  Any charges for either messengers or couriers are billed to the client at cost.

(c)  All airfare and other transportation charges incurred by Rothschild's employees directly in connection with services to the client are billed to client at cost.

(d)  The research/database category consists of the cost of using databases (e.g., Securities Data Corporation, Thomson Financial, Factiva, etc.) to which Rothschild subscribes to search for and obtain information used in Rothschild's financial analyses. Rothschild pays the vendor's standard rate for such database services.  In certain instances, Rothschild has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis.  Such annual or monthly services are allocated to clients based on such clients' use of each service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by Rothschild.

(e)  Rothschild bills photocopying charges at the rate of $.10 per page for black and white copies and $1.00 per page for color copies.

(f)  With respect to local travel, Rothschild's general policy enables employees to travel by taxi or, in certain circumstances, by private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged.  This policy is based on Rothschild's determination that travel by taxi or private car service is the most efficient use of a professional's time.  Rothschild's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 8:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters.

(g)  Telephone expenses are charged based on Rothschild's actual cost of telephone charges with respect to client matters.  Cellular phone charges are based on vendor's actual invoices.

(h)  Word processing charges represent actual costs incurred by Rothschild's in-

318576

house vendor and actual cost of overtime secretarial support in connection with client matters

## **<u>CONCLUSION</u>**

59.  The services summarized by this application and rendered by Rothschild to the Debtors during the Relevant Period were substantial, highly professional and instrumental to Debtors in furtherance of their restructuring efforts.  Rothschild respectfully submits that the compensation requested by this application is reasonable in light of the nature and value of such services.

\* \* \*

WHEREFORE, Rothschild respectfully requests that this Court enter an order (i) granting interim allowance and approval of compensation for services rendered during the Relevant Period, consisting of $1,000,000.00 of fees plus the reimbursement of reasonable and necessary expenses incurred by Rothschild during the Relevant Period in the amount of $82,960.93 for a total of $1,082,960.93 (ii) authorizing and directing the Debtors to make payment in respect of 100% of such fees, to the extent not yet received by Rothschild for the Relevant Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order; (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by Rothschild for the Relevant Period, and (iv) granting such other and further relief as this court deems just and proper.

Dated: New York, New York
      November 30, 2007

ROTHSCHILD INC.

By: _____

William R. Shaw, Director

318576

## CERTIFICATION

WILLIAM R. SHAW, under penalty of perjury, certifies and says:

1.  I am a Director with the applicant firm, Rothschild Inc. ("Rothschild"), which firm maintains offices for providing financial advisory and investment banking services at 1251 Avenue of the Americas, New York, NY 10020. Rothschild has acted as financial advisor and investment banker to and rendered professional services on behalf of Delphi Corporation and its affiliated debtors and debtors in possession (the "Debtors").

2.  This certification is submitted in support of Rothschild's Sixth Interim Application for Compensation and Reimbursement of Expenses (the "Application"), pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure and Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Amended Guidelines").

3.  I hereby certify that:

(a)  I have read the Application.

(b)  To the best of my knowledge, information and belief formed after a reasonable inquiry, and except as specifically noted in this Certification and in the Application, the fees and disbursements sought in the Application fall within the Amended Guidelines and the guidelines promulgated by the Office of the United States Trustee applicable to the Application (the "UST Guidelines"), as modified by the order authorizing the retention of Rothschild in these cases and any other applicable administrative orders entered herein.

(c)  The fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Rothschild and generally accepted by Rothschild's clients.

(d)  In providing a reimbursable service, Rothschild does not make a profit on that service, whether the service is performed by Rothschild in-house or through a third party.

318576

4.  Subject to the terms of applicable procedural orders of this Court and any order or

orders of this Court approving the retention of Rothschild, this Application is being served upon

this Court, the U.S. Trustee, the Debtor and counsel to the Creditors' Committee appointed in the

Debtor's Chapter 11 case.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       November 30, 2007

                           William R. Shaw

318576

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re                                        :    **Chapter 11**
                                             :
**DELPHI CORPORATION,**                      :    **Case No. 05-44481 (RDD)**
        <u>et</u> <u>al</u>.,                :
                                             :    **Jointly Administered**
                        **Debtors.**         :
------------------------------------------------------------- x

### ORDER GRANTING SIXTH INTERIM APPLICATION OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS <u>FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>

Upon consideration of the sixth Interim Application (the "<u>Application</u>") of Rothschild Inc. for Compensation and Reimbursement of Expenses, for the period from June 1, 2007 through and including September 30, 2007, filed by Rothschild Inc. ("<u>Rothschild</u>"); and due and adequate notice of the Application having been given under the circumstances; and capitalized terms used but not defined herein being used with their defined meanings as set forth in the Application; and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

ORDERED, that the Application be, and it hereby is, granted in its entirety; and it is further

ORDERED, that there shall be allowed to Rothschild, on an interim basis, (<u>i</u>) compensation for its professional services rendered during the Relevant Period as investment banker and financial advisor to the Debtors in the amount of $1,000,000.00 and (<u>ii</u>) reimbursement of actual, reasonable and necessary expenses incurred during the Relevant Period in the amount of $82,960.93 and it is further

ORDERED that any and all payments heretofore made to Rothschild pursuant to the procedures set forth in the Fee Order in respect of Rothschild's fees and expense reimbursements

318576

accrued during the Relevant Period are hereby ratified and confirmed on an interim basis; and it is further

ORDERED that the Debtors are authorized and directed to pay to Rothschild fees in the amount of $200,000.00, representing the fees held back pursuant to the terms of the Fee Order and representing the amount of fees and expenses allowed under this Order and not yet paid to Rothschild; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
        _____, 2007

_____
Hon. Robert D. Drain
United States Bankruptcy Judge

318576