# DOWNER & COMPANY

60 STATE STREET · BOSTON, MASSACHUSETTS 02109
TEL 617-482-6200 · FAX 617-482-6201

October 26, 2007

Strictly Private & Confidential

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098-2815

Attention: Mr. Narinder K. Sahai, Manager – Mergers & Acquisitions

**Reference: Delphi Power Products**

Ladies and Gentlemen:

This letter agreement, by and among Delphi Corporation (the "**Company**") and Downer & Company ("**Downer**"), shall confirm the terms and conditions of the retention of Downer as financial advisor and investment banker to the Company in connection with a possible Transaction (as defined below), effective as of August 27, 2007.

1. **Downer's Role**

1.1 In connection with the formulation, analysis, negotiation and implementation of the divestiture or other strategic alternatives relating to the Company's Power Products business involving the engineering, manufacturing or selling of power sliding doors, power lift gates or power deck lids anywhere in the world (excluding cinching latches and strikers being sold as part of the Company's latches and door modules product line, the "**Business**"), whether pursuant to a Transaction or combination of Transactions, Downer will perform the following services, and, in connection therewith advise the Company, as requested by the Company (collectively, the "**Services**"):

(a) assist in the review and analysis of the assets and the operating and financial strategies of the Business;

(b) assist in the definition of objectives related to value and terms of the divestiture;

(c) assist in the examination of the market for potential purchasers and identification of a universe of parties who should be contacted in relation to the proposed Transaction;

(d) at the Company's direction, contact a priority list of these parties agreed in common with the Company as part of a pre-marketing strategy;

(e) assist in the collection and analysis of information relevant to the market and the proposed Transaction;

(f) prepare and review with the Company the valuation of the Business;

32 bis, boulevard Haussmann • 75009 Paris, France
Tel (33 1) 48 00 27 00 • Fax (33 1) 48 00 27 10
www.downer.com

Delphi Corporation                                                                        Downer & Company
October 26, 2007                                                                                    Page 2

    (g) prepare an information memorandum (the "**Information Memorandum**") relating to the Business and the proposed Transaction;

    (h) define procedures concerning the divestiture process at its different stages, and implementing them with the potential purchasers at Company's direction and on its behalf;

    (i) to the extent deemed desirable by the Company, coordinate any vendor due diligence exercise;

    (j) prepare and distribute confidentiality agreements and appropriate descriptive selling materials (to include Information Memorandum, management presentations, and other documentation as may be required or appropriate);

    (k) assist in the organization and coordination of dataroom(s), management presentations and due diligence sessions;

    (l) review, analyze, and advise on the value and terms of the offers received and on appropriate negotiating strategies in relation to the various potential purchasers in connection with a Transaction or other transactions;

    (m) assist in the negotiation of binding contractual documentation in conjunction with the Company's legal advisers;

    (n) advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company deems to be necessary or desirable;

    (o) if requested by the Company, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") or such district or other bankruptcy courts as the court may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed Plan (as defined below);

    (p) assist the Company's internal and external counsel as requested by the Company, in connection with the divestiture of the Business; and

    (q) render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

1.2    Downer's advice will be confined to that normally given by a financial advisor and will be given with due skill, care and diligence. Downer will not be responsible for giving or obtaining commercial advice or special advice or service in areas which are outside its expertise, such as that normally provided or carried out by a legal, accountancy, tax or environmental adviser, or where the Company will (or customarily would) have other advisors involved.

1.3    Any advice which Downer provides to the Company will be confidential to the Company and solely for the Company's benefit and is not to be relied on by any other person. The fact of Downer's engagement hereunder may be disclosed to potential purchasers and to the Bankruptcy Court, but no reference to Downer, its role or its advice will otherwise be publicly made nor will its advice be disclosed to any other person (other than to the professional advisors retained by the Company who are

Delphi Corporation  
October 26, 2007

Downer & Company  
Page 3

instructed by the Company to advise on the Transaction) without Downer's prior written consent, except where the Company and/or Downer are required by law, regulation or bankruptcy process to disclose the role of Downer and its advice to any governmental or regulatory authorities or agencies, and in such circumstances the Company will (if practicable) on a timely basis give Downer prior written notice of the requirement to make such disclosure.

1.4   In providing the Services, Downer may assume that all directors and other officers and employees of the Company having responsibility for the Transaction from whom Downer receives instructions, or who execute or approve any documents on the Company's behalf, are duly authorized to give any such instructions or to execute or approve any such documents, and may do anything which is reasonable or necessary either to perform the Services (including to act as the Company's agent) or to comply with any applicable laws, rules, regulations, authorizations, consents or practices as may be reasonable or appropriate and to act through agents, if their appointment has been previously approved by the Company.

2.   **Application for Retention of Downer**

2.1   Downer and the Company hereby acknowledge that the Company will apply promptly to the Bankruptcy Court pursuant to sections 327(a), and 328 of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of this letter agreement and Downer's retention by the Company under the terms of this letter agreement, *nunc pro tunc* to August 27, 2007, the effective date of this letter agreement ("**Retention Order**"). The Company shall continue to use its best efforts to obtain Bankruptcy Court approval and authorization of this letter agreement, subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in section 330 of the Bankruptcy Code, except as otherwise provided in the Retention Order. Downer shall not have any obligation to provide any Services under this letter agreement unless its retention under the terms of this letter agreement is approved by entry of a final Retention Order by the Bankruptcy Court.

2.2   Downer acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 2, payment of Downer's fees and expenses hereunder shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and the Retention Order. In the event that Downer's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses hereunder as promptly as practicable in accordance with the terms hereof and the Retention Order. In so seeking Downer's retention under section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Downer's general professional experience and expertise, its knowledge of the industry in which the Company and the Business operate and the capital markets and its mergers and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Downer's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Transaction Fees and

Delphi Corporation                                                                                  Downer & Company
October 26, 2007                                                                                              Page 4

the indemnification provisions provided herein are reasonable regardless of the number of hours to be expended by Downer's professionals in performance of the services to be provided hereunder.

3.  **Fees**

3.1  Non-refundable work fees are due and payable to Downer as follows: $25,000 upon execution of this letter agreement, $25,000 upon completion and delivery of the pre-marketing report, $25,000 upon receipt of the first round offers, and $25,000 upon receipt of the final offers in the form of a marked-up term sheet.

3.2  The contingent portion of the Company's obligation under this letter agreement is the Transaction Fee which will become payable in full by the Company upon consummation of any divestiture, merger, consolidation, joint venture, acquisition, sale of the Business's capital stock, and sale of the Company's other assets and/or capital stock in which the gross revenues of the Business constitute greater than 50% of the gross revenues of such sale, license arrangement, reorganization, recapitalization or other transaction or series of related transactions pursuant to which the Business is acquired by or combined with any company(s), management group(s) or other party(s) that Downer contacts on behalf of the Company or any company(s), management group(s) or other party(s) that may have established contact with either Downer or the Company concerning the Business prior to the termination of this letter agreement (any one of which is defined as a "**Downer Prospect**") (each of the foregoing transactions is hereinafter referred to as a "**Transaction**"). Notwithstanding the foregoing, a Transaction does not include a transaction involving the acquisition of all or substantially all of the Company's existing business, whether pursuant to the acquisition of stock or assets under a plan of reorganization or sale of substantially all of the Company's assets under Section 363 of the Bankruptcy Code under which the Business remains with the reorganized Company and/or acquired business regardless of whether the equity of the reorganized Company is owned by the existing shareholders, its employees and/or pre-petition creditors.

3.3  The "**Transaction Fee**" obligation is determined by computation of a Gross Transaction Fee from which are deducted the credits referred to in this Section 3 to arrive at the Net Transaction Fee, which is payable to Downer as detailed below.

3.4  A "**Gross Transaction Fee**" shall be earned upon the consummation of one or more Transactions involving the Business and a Downer Prospect and is equal to the aggregate of:
- A base fee of $600,000 (first Transaction only), plus;
- 2.5% of the Transaction Value between $35 million and $45 million, plus;
- 3.25% of the Transaction Value in excess of $45 million.

(*Please note that "**Transaction Value**" is defined in paragraph 3.5.)

3.5  For the purpose of this letter agreement, the term "**Transaction Value**" means (i) the total amount of consideration paid, directly or indirectly, for the Business (including, without limitation, the total amount of cash deposited in escrow under the terms of any

| | |
|---|---|
| Delphi Corporation | Downer & Company |
| October 26, 2007 | Page 5 |

agreement relating to the Transaction, purchase money financing offsets, credits and non-cash consideration); plus (ii) the net book value at closing of accounts receivable minus accounts payable of the Business estimated to be retained by the Company; plus (iii) the value of any long-term liabilities of the Business or the Company that are assumed in connection with the Transaction(s) other than liabilities that are legally required to be assumed by the buyer; plus (iv) the aggregate proceeds received from any sales, transfers or other dispositions of assets of the Business, through a securitization program or otherwise (other than sales of inventory and idle equipment in the ordinary course of business).

3.6  If, and only if, the work fee arrangement in paragraph 3.1 above is continued through the closing of any Transaction(s) for which there is a Gross Transaction Fee obligation to Downer as defined in paragraphs 3.2 through 3.5 of this letter agreement, Downer agrees to credit against the value of the resulting Gross Transaction Fee the total amount of all work fees (not previously credited back against Gross Transaction Fees for earlier Transactions). The resulting amount after any applicable credits is the "**Net Transaction Fee**".

3.7  All payments made pursuant to this letter agreement must be made in conformity with the orders from the Bankruptcy Court including the order under 11 U.S.C. Section 331 establishing procedures for interim compensation and reimbursement of expenses of professionals (the "**Interim Compensation Order**") (Docket No. 869). Downer will timely file the appropriate interim and final applications for allowance of compensation and reimbursement of expenses pursuant to the Retention Order and Interim Compensation Order.

3.8  Subject to the Retention Order and Interim Compensation Order, the Company agrees to reimburse Downer periodically, upon request, and upon consummation of the Transaction or transactions contemplated hereby, for any reasonable out-of-pocket expenses incurred in connection with the performance of its duties under this letter agreement, including but not limited to expenses incurred in connection with transportation, telephone (minutes used only), lodging, meals, research, postage, courier services, and interest fees. Consistent with and subject to final approval by the Bankruptcy Court and subject to the provisions of the Retention Order, the Company shall promptly reimburse Downer for such expenses upon presentation of an invoice or other similar documentation with reasonable detail. The Company has advised Downer regarding its expense reimbursement guidelines, and Downer agrees to comply with such guidelines in the understanding that the Company shall only be obligated to make reimbursements for expenses consistent with such guidelines.

3.9  Any fees incurred by accountants, lawyers or other professional advisors engaged by Delphi in connection with the Transaction or transactions contemplated hereby will be for the Company's own account.

3.10  Time of payment: The Net Transaction Fee is payable in cash within 3 days after the closing of a Transaction, based on the Transaction Value at closing. If the payment of all or part of a Net Transaction Fee is delayed for any reason, interest will accrue on the unpaid balance at the Citibank prime rate from the day of closing until Downer's receipt of payment. Delphi agrees to provide Downer with a copy of the closing documents,

Delphi Corporation  
October 26, 2007

Downer & Company  
Page 6

including the Contract of Purchase and Sale, prior to closing and to notify Downer at least one week in advance as to the time and place of closing.

3.11  If, within 12 months of the effective date of termination of this letter agreement, the Company enters into an agreement to effect (wholly or substantially) the Transaction(s) contemplated hereby, any Transaction(s) relating thereto or substituted therefor or any other Transaction(s) having broadly similar effect, Downer will be entitled to a Net Transaction Fee, save where termination is caused by breach of this letter by Downer or if this letter agreement has been terminated by Downer without cause. Other than the foregoing, upon termination of this letter agreement, the Company's only obligation to Downer will be for reasonable out-of-pocket expenses incurred and fees earned up to the time of termination.

4.  **Information and Confidentiality, and Other Downer Interests**

4.1  Until this letter agreement is terminated, the Company will provide Downer with, or procure the provision to Downer of, (i) all information reasonably requested by Downer related to the Business, (ii) all information which might reasonably be expected to be relevant in enabling Downer to fulfill its responsibilities in carrying out the Services under this letter of agreement, and (iii) all inquiries from potential buyers of the Business ("**Information**") as and when it becomes available to the Company.

The Company acknowledges that Downer will, and will be entitled to, rely upon all Information provided to it, will not be responsible for the accuracy or verification of any Information and that the Services will be provided only on the basis of the Information disclosed to it.

4.2  The Company has retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**") to provide legal advice to the Company in connection with the legal aspects of the chapter 11 reorganization cases, including Transactions that may occur. The Company also employs inside counsel to advise the Company on those same matters. The Company anticipates that from time to time privileged communications may need to be shared with Downer in order to permit Downer to provide the most comprehensive advice to the Company and to counsel to the Company in order to support such counsel's provision of legal advice to the Company. The Company intends that any such sharing of privileged information occur without waiver of the attorney-client privilege or of any other privileges that may apply.

4.3  Except as required by law or the rules of any regulatory authority with which Downer or its relevant Associates are required to comply or for the purpose of representing Downer in respect of any action brought by any party pursuant to this letter agreement, and/or any non-party in connection with Downer's engagement by the Company, Downer will not disclose, and Downer will use its best efforts to procure that its Associates and professional advisers to whom Information is disclosed by Downer will not disclose, to any person any Information which remains confidential and which is provided to Downer solely for the purpose of facilitating Downer's provision of Services pursuant to this letter agreement and in recognition that Downer and the Company share a common interest for that purpose. Downer may disclose Information to any of its professional advisers and Associates, but only on a "need to know"

Delphi Corporation											Downer & Company
October 26, 2007											Page 7

confidential basis. "**Associate**" for the purposes of this letter agreement means in relation to a person, that person and each of that person's parent undertakings and each of their respective subsidiary undertakings and each of their respective directors, officers, attorneys, accountants, controlling persons, employees, and if the Company requests Downer to use consultants and agents that have similar regulatory obligation.

5. **Limitation of Liability**

5.1  Downer's liability in respect of the Services provided under the terms of this letter agreement is limited to liability for losses directly suffered or incurred by the Company by reason of negligence or willful default by Downer or any of its Associates. The provisions of this paragraph 5.1 shall survive expiration or termination of this letter agreement.

5.2  The Company agrees that any liability Downer or any of its Associates may have to the Company for any damage or loss suffered by the Company arising out of or in connection with Services provided under the terms of this letter agreement shall explicitly exclude any liability for damage or loss suffered by the Company for breach of the representations, warrantees and indemnifications made to a buyer or any other party as a part of a Transaction or transactions contemplated hereby.

6. **Indemnification**

6.1  The Company agrees to indemnify Downer and hold it harmless in connection with the performance of its responsibilities under this letter agreement against any losses, claims, damages, expenses, or liabilities (including legal fees and other expenses reasonably incurred by Downer in defending same) to which Downer, any of its directors, partners, shareholders, officers, agents, or employees or any person acting on its behalf may become subject arising out of or based on: (1) any act taken or omitted by the Company or any person of entity at the Company's request or with the Company's consent pursuant to this letter agreement, or (2) any allegations of any of the foregoing. It is understood, however, that neither Downer nor any of its directors, partners, officers, agents or employees or any person acting at its discretion shall be indemnified if it is judicially determined that such person acted in bad faith or was guilty of negligence or willful misconduct or materially breached a term of condition of this letter agreement.

7. **Termination**

7.1  This letter agreement may be terminated at any time, with or without cause, by either side's providing the other with ten days prior written notice of its intent to do so.

7.2  Any termination of this letter agreement howsoever caused will not affect any rights or liabilities which have accrued to, or been incurred by, either the Company or Downer or any of its Associates, and notwithstanding any such termination, the provisions of Section 3 (Fees), Section 4 (Information and Confidentiality, and other Downer Interests), Section 5 (Limitation of Liability), and Section 6 (Indemnification) of this letter agreement shall survive such termination and remain in full force and effect.

Delphi Corporation  
October 26, 2007

Downer & Company  
Page 8

8. **Publicity and Announcements**

8.1 In the event of consummation of any Transactions(s), Downer shall have the right to disclose its participation in such Transaction(s), including, without limitation, the placement of "tombstone" advertisements in financial and other newspapers and journals, provided, that Downer shall submit a copy of any such advertisements to the Company for its approval, which approval shall not be unreasonably withheld or delayed and such approval shall, in any event, be deemed to have been given by the Company if no written objection to the proposed advertisement is provided to Downer within 30 days of the Company's receipt of the proposed advertisement. Any use of the names and logos of Delphi and/or Power Products requires the Company's prior consent. All public announcements or disclosures in connection with this letter agreement may be made only if agreed upon by both Downer and the Company, save as required by any law or the requirement of any relevant regulatory authority.

9. **Other**

9.1 The only duties or obligations Downer owes the Company are those set out expressly in this letter agreement; Downer does not owe the Company any other or further duties or obligations (whether arising from the fact that Downer is acting as the Company's advisor or otherwise) in relation to the Services to be provided under the terms of this letter agreement.

9.2 This letter is governed by and is to be construed in accordance with the laws of New York, USA. Both the Company and Downer agree to submit to the jurisdiction of New York courts as regards any claim, dispute, difference or matter arising out of or in connection with this letter.

Delphi Corporation   Downer & Company
October 26, 2007   Page 9

Yours faithfully,

*[signature]*

R. Wade Aust

For and on behalf of Downer & Company, LLC

DELPHI CORPORATION

Accepted and agreed:

*[signature]*

Name: Narinder K. Sahai

Title: Manager, Mergers & Acquisitions, Delphi Corporation