UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                    :

DELPHI CORPORATION, et al,

                                 Debtors.  :

-------------------------------------------------------------x

Chapter 11

Case No. 05-45448 1 (RDD)

(Jointly Administered)

DECLARATION AND STATEMENT OF ARTHUR G. GOTTLIEB
UNDER FED. R. BANKR. P. 2014 AND 2016 IN SUPPORT OF
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a)
AND 328 AUTHORIZING EMPLOYMENT AND RETENTION
OF DOWNER & COMPANY, LLC AS FINANCIAL ADVISOR AND
INVESTMENT BANKER TO DEBTORS

Arthur G. Gottlieb, under penalty of perjury, declares and says:

1.      I am a Managing Director at the financial advisory and investment

banking firm of Downer & Company, LLC ("Downer"), which maintains its principal

office at 60 State Street, Boston, Massachusetts, 02109.  I am authorized to execute this

declaration and disclosure statement (this "Declaration") on behalf of Downer.  I submit

this Declaration under sections 327 (a) and 328 of title 11 of the United States Code, 11

U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rules 2014 and 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the

Application For Order (the "Order") Under 11 U.S.C. §§ 327 (a) and 328 Authorizing

Employment And Retention of Downer As Financial Advisor and Investment Banker To

Debtors Nunc Pro Tunc To August 27, 2007 (the "Application"), filed contemporaneously

herewith by Delphi Corporation ("Delphi") and certain of its direct and indirect

subsidiaries, as debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors" or "Company"). Except as otherwise indicated, I have personal

knowledge of the matters set forth herein and if called as a witness, would testify

competently thereto.[1]

## Qualifications Of Professionals

2.        Founded in 1975, Downer is a leading independent middle market

advisory firm with offices in the United States and Europe.  Between 2004 and

September 30, 2007, Downer completed approximately 57 divestiture and acquisition

transactions valued in the aggregate at over $3.5 billion.  Downer serves both public and

private clients and specializes in transaction sizes from $25 million to $500 million.

Downer assists clients with all aspects of the transaction process, from valuation and

marketing through contract negotiations and closing.

## Services To Be Rendered

3.        If the Application is approved, Downer will render financial

advisory and investment banking services to the Debtors as needed throughout the course

of these chapter 11 cases, as contemplated by, and in accordance with the terms of, the

Engagement Letter attached hereto as Exhibit 1.  Such services will include:

> (a)    Assisting the Debtors and their other professionals in the review
> and analysis of the assets and the operating and financial strategies
> of the Power Products business (the "Business");
>
> (b)    Assisting in the definition of objectives related to value and terms
> of the divestiture;

---

[1]    Certain of the disclosures herein relate to matters within the knowledge of other professionals at
Downer and are based on information provided by them.  Capitalized terms used but not defined herein
have the meanings given to such terms in the Engagement Letter referenced in the Application.

(c)    Assisting in the examination of the market for potential purchasers and identification of parties who should be contacted in relation to the proposed Transaction;

(d)    At the Company's direction, contacting a priority list of these parties agreed in common with the Company as part of a pre-marketing strategy;

(e)    Assisting in the collection and analysis of information relevant to the market and the proposed Transaction;

(f)    Preparing and reviewing with the Company the valuation of the Business;

(g)    Preparing an information memorandum (the "Information Memorandum") relating to the Business and the proposed Transaction;

(h)    Defining procedures concerning the divestiture process at its different stages, and implementing them with the potential purchasers at Company's direction and on its behalf;

(i)    To the extent deemed desirable by the Company, coordinating any vendor due diligence exercise;

(j)    Preparing and distributing confidentiality agreements and appropriate descriptive selling materials (to include Information Memorandum, management presentations, and other documentation as may be required or appropriate);

(k)    Assisting in the organization and coordination of dataroom(s), management presentations and due diligence sessions;

(l)    Reviewing, analyzing, and advising on the value and terms of the offers received and on appropriate negotiating strategies in relation to the various potential purchasers in connection with a Transaction or other transactions;

(m)    Assisting in the negotiation of binding contractual documentation in conjunction with the Company's legal advisers;

(n)    Advising and attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company deems to be necessary or desirable;

(o)    If requested by the Company, participating in hearings before the United States Bankruptcy Court for the Southern District of New

3

York (the "Bankruptcy Court") or such district or other bankruptcy courts as the court may request and providing relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed Plan (as defined below);

(p)    Assisting the Company's internal and external counsel as requested by the Company, in connection with the divestiture of the Business; and

(q)    Rendering such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing

## Professional Compensation

4.    Downer respectfully refers interested parties to the Engagement Letter for a full recitation of the proposed terms of Downer's compensation. In summary, if the Application is approved, Downer will be entitled to receive the following fees in cash:

(a)    Non-refundable work fees equal to $25,000 upon approval of this Application, $25,000 upon completion and delivery of the pre-marketing report, $25,000 upon receipt of the first round offers, and $25,000 upon receipt of the final offers in the form of a marked-up term sheet.

(b)    A "Transaction Fee" equal to $600,000 plus 2.5% of the Transaction Value (as defined in the Engagement Letter) between $35 million and $45 million plus 3.25% of the Transaction Value in excess of $45 million.

(c)    The Transaction Fee may be reduced by the total amount of work fees paid if certain conditions are met as defined in the Engagement Letter.

(d)    Subject to the Retention Order and Interim Compensation Order, the Company agrees to reimburse Downer periodically, upon request, and upon consummation of the Transaction or transactions contemplated hereby, for any reasonable out-of-pocket expenses incurred in connection with the performance of its duties under the Engagement Letter, including but not limited to expenses incurred

4

in connection with transportation, telephone (minutes used only), lodging, meals, research, postage, courier services, and interest fees. Consistent with and subject to final approval by the Bankruptcy Court and subject to the provisions of the Retention Order, the Company shall promptly reimburse Downer for such expenses upon presentation of an invoice or other similar documentation with reasonable detail.

5.      The Debtors and Downer acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Debtors of the work performed, in each case, in connection with this engagement may be variable, and the Debtors and Downer have taken such factors into account in setting the fees under the Engagement Letter: provided, however, that with respect to the hours worked, Downer shall devote whatever resources may be required to fulfill the purposes of the engagement on a timely basis.

6.      In the event that this Court approves the retention of Downer by the Debtors, (a) Downer's fees and expenses shall be subject to (i) the jurisdiction and approval of the Court under section 328(a) of the Bankruptcy Code and the Order, (ii) any applicable fee and expense guideline orders, and (iii) any requirements governing interim and final fee applications and (b) the Debtors shall pay all fees and expenses of Downer under the Engagement Letter as promptly as practicable in accordance with the terms thereof and the orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

7.      Downer intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules, as those procedures may be modified or supplemented by order of this Court.

Consistent with its ordinary practice and the practice of financial advisors in other

chapter 11 cases whose fee arrangements are typically not hours based, Downer

ordinarily does not maintain contemporaneous time records in one-tenth hour increments

or provide a schedule of hourly rates for its professionals. Therefore, Downer requests

that it be excused from compliance with such requirements and that it be required only to

maintain such time records in one-hour increments.

Disinterestedness

8.      In connection with the preparation of this Declaration, Downer has

reviewed a list of parties-in-interest in these cases (the "Interested Parties") that was

provided to Downer by the Debtors.

9.      Currently and at various times in the past, Downer has represented

numerous entities in the course of providing acquisitions and divestitures advisory and

other investment banking services. Many of those entities may be Interested Parties in

these cases. To the best of my knowledge, and except as otherwise set forth below,

Downer has not represented any Interested Party in these cases in connection with

matters relating to the Debtors, their estates, assets, or businesses and will not represent

other entities which are creditors of, or have other relationships with, the Debtors in

matters relating to the Debtors, their estates, assets, or businesses. Moreover, neither

Downer, I, nor any other employee of Downer who will work on this engagement has any

connection with or holds any other relationship with the Debtors or their estates, or any

interest adverse to the Debtors, their estates, or the Interested Parties in the matters on

which Downer is proposed to be retained or otherwise, except as set forth below:

(a)     As part of its practice, Downer advises on numerous engagements involving many different professionals, some of whom may represent claimants and parties-in-interest in the Debtors' chapter 11 cases, and has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to this case. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which Downer is to be engaged. In addition, various professionals employed by Downer have numerous other business, professional and social relationships wholly unrelated to the Debtors and the chapter 11 cases with multiple professional persons involved in the Debtors' cases, including professional persons engaged on behalf of the Debtors and professional persons engaged on behalf of other parties-in-interest, and may have such relationships with various employees of the Debtors. To the best of my knowledge and information, none of these relationships represents an interest materially adverse to the Debtors herein in matters upon which Downer is to be engaged.

(b)     Downer is an investment banking firm with a long history and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, Downer's services to these parties were and are wholly unrelated to the Debtors, their estates, and these chapter 11 cases.

10.     To the best of my knowledge, Downer has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases. If Downer's proposed retention by the Debtors is approved by this Court, Downer will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases. Downer will, however, continue to provide professional services to entities or persons that may be creditors, equity security holders, or parties-in-interest of the Debtors in these chapter 11 cases, as set forth herein, provided, however, that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

11.    Based on the results of the conflicts search conducted to date and described more fully herein, and except as otherwise set forth herein, to the best of my knowledge, neither I, Downer, nor any officer or employee thereof who will work on this engagement, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties-in-interest (as reasonably known to Downer), their respective attorneys, the Office of the United States Trustee for the Southern District of New York, or any person employed by such office with respect to the matters upon which Downer is to be engaged, and Downer does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates, or any class of creditors or equity interest holders.

12.    To the best of my knowledge, Downer is a "disinterested person" pursuant to sections 101(14) and 327(a) of the Bankruptcy Code.

13.    No promises have been received by Downer, or any employee thereof, as to compensation or payment in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules. Further, Downer has no agreement with any other entity to share with such entity any compensation received by Downer in connection with these chapter 11 cases, except as permitted under section 504 of the Bankruptcy Code.

14.    If any new relevant facts or relationships are discovered or arise during the pendency of these chapter 11 cases, Downer will use reasonable efforts to identify such further developments and will, if appropriate, promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

Pursuant to section 1746 of title 28 of the United States Code, I declare

under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 26th day of October, 2007, at Boston, Massachusetts.


Arthur G. Gottlieb
Managing Director