TOGUT, SEGAL & SEGAL LLP                                    **HEARING DATE: 12/11/2007**
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,            **AT: 10:00 a.m.**
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger (NB-3599)
Richard K. Milin (RM-7755)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                              :
In re:                                        :
                                              :        Chapter 11
DELPHI CORPORATION, et al.,                   :        Case No. 05-44481 [RDD]
                                              :
                              Debtors.        :        Jointly Administered
                                              :
-------------------------------------------------------------x

**DEBTORS' REPLY MEMORANDUM IN FURTHER SUPPORT
OF THEIR MOTION FOR A SUMMARY JUDGMENT EXPUNGING
CLAIM NUMBER 2247 ASSERTED BY SIEMENS VDO AUTOMOTIVE S.A.S.**

# TABLE OF CONTENTS

                                                                      Page(s)

**TABLE OF CONTENTS** ................................................................  i

**TABLE OF AUTHORITIES** ..........................................................  ii

**PRELIMINARY STATEMENT** .....................................................  1

**STATEMENT OF FACTS** ............................................................  5

**ARGUMENT**: THE UNDISPUTED FACTS SHOW THAT VDO'S
            CLAIM IS BASELESS AND SHOULD BE EXPUNGED ............  5

**POINT I**:    VDO'S CLAIM HAS NO CONTRACTUAL BASIS .......................  5

    A.    The Debtors Accepted the Signed LTC, Not
            the Proposed Terms in VDO's "Offer" Letter .................................  6

    B.    The Debtors' Standard Terms and
            Conditions Did Not Subordinate
            the LTC to VDO's "Offer" Letter ........................................................  12

    C.    The "Offer" Letter, Even If Accepted, Would
            Not Make the Debtors Liable for VDO's Claim .............................  16

**POINT II**:   VDO'S CLAIM HAS NO BASIS
            IN "PROMISSORY ESTOPPEL" ........................................................  18

**CONCLUSION** ...............................................................................................  20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Babcock & Wilcox Co. v. Hitachi America, Ltd.*,
406 F.Supp.2d 819 (N.D. Ohio 2005)........................................................... 7, 9

*Central Realty Co. v. Clutter*, 406 N.E.2d 515 (Ohio 1980) ......................................... 11

*Cline v. Rose*, 645 N.E.2d 806 (Ohio App. 3d Dist. 1994) .......................................... 18

*Leaseway Distrib. Centers, Inc., v. Dep't of Admin. Services*,
500 N.E.2d 995 (Ohio Ct. App. 1988)........................................................... 8

*Mead Corporation v. McNally-Pittsburgh Manufacturing Corporation*,
654 F.2d 1197 (6th Cir. 1981) ......................................................... 10, 11

*McJunkin Corp. v. Mechanicals, Inc.*, 888 F.2d 481 (6th Cir. 1989).............................. 7

*Schoenbaum v. Firstbrook*, 268 F.Supp. 385 (S.D.N.Y. 1967),
*rev'd in part on other grounds*, 405 F.2d 215 (1968) ...................................... 19

*State ex. rel. Savarese v. Buckeye Local School Dist.*, 660 N.E.2d 463 (Ohio 1996) ...... 7

*Trinova Corp. v. Pilkington Bros., P.L.C.*, 638 N.E.2d 572 (Ohio 1994) ...................... 16


Statutes and Rules

Fed. R. Bankr. P. 7056................................................................................. 1

Fed. R. Civ. P. 56..................................................................................... 1, 19

Ohio R.C. § 1302.05 ................................................................................. 12

S.D.N.Y. Local Bankr. Rule 7056-1(e) ...................................................... 5, 19


Other Authorities

81 Ohio Jur.3d, *Sales* § 32 (2007) .............................................................. 7, 10

**DEBTORS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
THEIR MOTION FOR A SUMMARY JUDGMENT EXPUNGING
CLAIM NUMBER 2247 ASSERTED BY SIEMENS VDO AUTOMOTIVE S.A.S.**

Debtor Delphi Corporation and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debt-

ors"), by their attorneys Togut, Segal & Segal LLP, respectfully submit this reply memo-

randum of law in further support of their Motion for a summary judgment under

Federal Rule of Civil Procedure 56, made applicable here by Federal Rule of Bankruptcy

Procedure 7056, expunging the claim for approximately $8 million (the "Claim") that

Siemens VDO Automotive S.A.S. ("VDO") asserts against the Debtors for sums in con-

nection with VDO's development of an automotive "electronic control unit" ("ECU").[1]

## PRELIMINARY STATEMENT

The facts are clear and, in relevant part, undisputed:  the Debtors never

agreed to compensate VDO for ordering fewer ECUs than the parties originally antici-

pated.  VDO's entire argument is an attempt to elevate pre-contractual proposals from

VDO's quotation letter into contractual obligations – proposals that the Debtors rejected

both before and after the letter was sent.  Even if VDO's proposals were valid contractu-

al obligations, moreover – and they are not – they are too indefinite to require the Debt-

ors to pay VDO's Claim.  VDO's Claim is therefore baseless, and should be expunged.

The key events that determined the Debtors' contractual obligations, in

view of VDO's response to the Debtors' Motion, can now be limited to the following:

1.  ***On July 20, 2000, VDO sent the Debtors its "Offer" letter in response to***

***the Debtors' request for quotation ("RFQ").***  VDO's "Offer" letter asked for compensa-

---

[1] Defined terms, unless defined herein, have the meaning ascribed to them in Debtors' initial
memorandum in support of their Motion for summary judgment ("Debtors' Initial Mem.").

tion if the Debtors ordered fewer ECUs than the RFQ projected even though the Debtors had already rejected an emailed request from VDO to the same effect.  (*See* Email, annexed to the Declaration of Jane S. Thompson dated October 30, 2007 ("Thompson Decl.") as Exh. 1; "Offer" letter, annexed to the Declaration of Michel Poulet dated October 9, 2007 ("VDO Decl.") as Exh. B.)  Further, because the RFQ proposed a requirements contract, the Debtors normally could order fewer ECUs from VDO only if they themselves sold fewer parts incorporating the ECUs.  Consequently, VDO's proposal would merely have shifted development costs from VDO to the Debtors, who had no ready means of recouping them and, unlike VDO, could not control their amount.  (*See* Supplemental Declaration of Jane S. Thompson dated November 30, 2007 ("Thompson Supp. Decl."), ¶ 4.)

2.  *The Debtors responded to VDO's "Offer" letter by insisting that VDO sign the Debtors' "Long Term Contract" (the "LTC") and VDO did so.*  VDO admits: "After VDO submitted its quote, Delphi informed VDO that it required VDO to include a signed version of Delphi's Long Term Contract as part of its submission before Delphi would consider the quotation….In response to this request, VDO, as instructed, forwarded a version of Delphi's Long Term Contract signed only by it."  (VDO Decl. ¶ 6.) VDO asserts that sending the LTC "included" it in VDO's offer, but does not argue that it informed the Debtors that its agreement to the LTC was contingent on other terms.

3.  *The LTC gave VDO no right to compensation if the Debtors ordered fewer ECUs than the RFQ projected and was otherwise inconsistent with VDO's "Offer" letter.*  VDO concedes that the LTC "do[es] not include a contractual right allowing VDO to recover on its Claim."  (VDO Reply at 10.)  VDO also admits, as it must, that other terms of VDO's "Offer" letter are inconsistent with the LTC.  (*See* VDO Decl. at ¶ 10; VDO Mem. in Response (the "Response") at 8-9, 13.)

2

     ***4. The Debtors "nominated" VDO as their supplier in an August 2, 2000
"Nomination Letter," but did so "contingent upon Siemens' acceptance of service part
pricing," "[p]rovided that Siemens participation in all future pre-production programs
is satisfactory," and subject to the terms of the LTC***.  (*See* Letter, VDO Decl., Exh. C.)  If
the Debtors' various conditions were met, the Nomination Letter stated, "we intend to
execute (sign) the long term contract already agreed to with Siemens on these pro-
grams."  (*Id.*)  Further, although VDO specifically asked the Debtors to accept develop-
ment costs for unrealized programs in the Nomination Letter less than one week before
the Letter was sent, the Debtors declined.  *(Compare* Nomination Letter *with* Email,
Thompson Supp. Decl., at Exh. 1 ("We will accept a Nomination Letter to kick-off this
program.  Please include that Delphi accepts the full costs of all development work,
tooling, etc … in the event the program is not realized.").)

     ***5.  On October 31, 2000, the Debtors signed the LTC, and thereby entered
into a binding requirements contract with VDO that superseded any prior agreements***.
(*See* Thompson Supp. Decl., ¶¶ 5-6.)  The LTC incorporated the Debtors' Standard
Terms and Conditions ("T&C"), which stated that, "This Contract, together with the
attachments, exhibits, supplements or other terms of Buyer [Delphi] specifically refer-
enced in this Contract, constitutes ***the entire agreement between Seller and Buyer*** with
respect to the matters contained in this Contract and ***supersedes all prior oral and writ-
ten representations and agreements***."  (VDO Decl. Exh. A, ¶ 29 (emphasis added).)

     Faced with these dispositive facts, VDO asks the Court to join it in a game
of "let's pretend."  Let's pretend, VDO begins, that VDO sent the Debtors a signed LTC
merely to "correct" an "oversight" rather than, as VDO's Michel Poulet admits, because
the Debtors "required" a signed LTC after they received VDO's "Offer" letter as a con-
dition of considering VDO's quotation.  (*See* VDO Response at 6 n.3; VDO Decl., ¶ 6.)

3

Let's pretend, VDO next suggests, that the Debtors' Nomination Letter "accepted" all of the proposals in VDO's "Offer" even though the Debtors expressly conditioned VDO's nomination on its future performance, refused VDO's request that the Letter make the Debtors responsible for development costs, and rejected any terms contrary to the LTC by specifying the offer that the Debtors would be willing to accept: "the long term contract already agreed to with Siemens." (Nomination Letter, VDO Decl. Exh. C; *see* VDO Reply at 4-9.)

Let's pretend, VDO continues, that VDO did not agree to the LTC, but **only to the terms it liked**:  VDO makes the extraordinary assertion that, "VDO's signature on the Long Term Contract did not represent its agreement to the Long Term Contract."  (VDO Response at 8.)  Rather, VDO argues, it agreed only to "the terms of the Long Term Contract that VDO did not reject" – and the purported rejection was in an **earlier** document.  (*See id.* at 3-4.)  Similarly, VDO asks the Court to reinterpret the "integration clause" of the Debtors' Standard Terms and Conditions, which states that the LTC "supersedes" all prior agreements, to **subordinate** the LTC (and by implication, all of the Debtors' other Long Term Contracts) to prior agreements.  (*See* VDO Response at 10-15; Point I.B below.)

Finally, VDO asks the Court to pretend that VDO's "Offer" letter requires the Debtors to pay their Claim even though the letter's terms do not actually do so.  VDO is not entitled to an "equitable cancellation charge" because the Bi-state / Magne-ride ECU program that the LTC describes was not cancelled – it indisputably went into production pursuant to the LTC with the GMT 900 program.  (*See* Thompson Decl. ¶¶ 17-18; VDO Response to Debtors' Statement of Undisputed Material Facts ("SUMF") Nos. 48-49.)  Also, VDO is not entitled to compensation for the Debtors' inability to order more ECUs because VDO's "Offer" letter merely stated, **"Siemens reserves the**

4

right *to submit to Delphi revised pricing* in instances where the actual annual volume

purchased is below the quoted volume by 20% or more."  (VDO Decl., Exh. B (emphasis

added).)  The letter does *not* require the Debtors actually to *pay* revised pricing and, of

course, the Debtors did not agree to do so.

For the foregoing reasons, this Court should reject VDO's invitation to

pretend in favor of the real, undeniable and undisputed *facts*.  VDO's claim is baseless,

and Debtors' Motion for a summary judgment expunging that claim should be granted.

## STATEMENT OF FACTS

The relevant facts are summarized above and stated in detail in the Decla-

ration and Supplemental Declaration of Jane S. Thompson, in the Debtors' Statement of

Undisputed Material Facts Pursuant to Local Bankruptcy Rule 7056-1, and in the Debt-

ors' initial memorandum ("Debtors' Mem.").

## ARGUMENT
## THE UNDISPUTED FACTS SHOW THAT
## VDO'S CLAIM  IS BASELESS AND SHOULD BE EXPUNGED

### POINT I
### VDO'S CLAIM HAS NO CONTRACTUAL BASIS

As discussed above, VDO concedes that the LTC does not entitle it to com-

pensation and instead attempts to elevate the proposals in its "Offer" letter into binding

contractual obligations.  VDO does not argue that the Debtors expressly agreed to its

proposals – they did not.  Instead, VDO argues that the Debtors *should be deemed to*

*have agreed* to its proposals because the Debtors purportedly:  (1) "accepted the terms

of VDO's Offer through Delphi's Nomination Letter" (VDO Response at 1-2; *see id.* at 3-

9), and (2) defined "contract" in their Standard Terms and Conditions so as to make the

LTC (and consequently all of the Debtors' other Long Term Contracts) subordinate to

any prior agreements.  (*See id.* at 10-15.)  Both of VDO's arguments lack merit and, based on the undisputed facts, summary judgment should be granted.

A.    The Debtors Accepted the Signed LTC, Not
the Proposed Terms in VDO's "Offer" Letter

VDO's argument that "Delphi's Nomination Letter accepted VDO's Offer" (VDO Response at 4; *see id.* at 4-9) is contrary to the undisputed facts.  The plain words of the Nomination Letter show that it did not accept **anything**.  Rather, the Nomination Letter states that "Siemens has been selected as the supplier for the … Controlled Suspension business" only "contingent upon Siemens' acceptance of service part pricing for three years," "[p]rovided that Siemens participation in all future pre-production programs is satisfactory," and if other conditions were met.  (Letter, VDO Decl., Exh. C.) *If* those conditions were met, the Nomination Letter continued, "we intend to execute (sign) the long term contract already agreed to with Siemens on these programs."  (*Id.*) That is exactly what the Debtors did three months later.  (*See* VDO Decl., Exh. D.)

Thus the actual words of the Nomination Letter show that the Debtors were willing to work with VDO to try to reach agreement, but that the Debtors were not ready to enter into an agreement at that time.  Indeed, before a contract could be signed, the Nomination Letter states, VDO had to convince the Debtors that VDO could really make the ECUs on schedule, at an acceptable price, and with the quality that would enable the Debtors to sell the ECUs to their customer.  (*See* Nomination Letter, VDO Decl., Exh. C (Debtors would sign the LTC if VDO could "meet or exceed" the Debtors' standards for, among other things, quality, price and timing).)

The true agreement between the parties, therefore, was stated in the only offer that the Debtors actually accepted:  The LTC that VDO signed, that the Nomination Letter stated the Debtors would sign if their conditions were met, and that the

Debtors subsequently did sign on October 31, 2000. *See also McJunkin Corp. v. Mechan-icals, Inc.*, 888 F.2d 481, 488 (6th Cir. 1989) ("conditional acceptance…could not operate as an acceptance"); *State ex rel. Savarese v. Buckeye Local School Dist.*, 660 N.E.2d 463, 466 (Ohio 1996) ("a conditional acceptance is not an acceptance"); *Babcock & Wilcox Co. v. Hitachi America, Ltd.*, 406 F.Supp.2d 819, 828-30 (N.D. Ohio 2005) (communication that called for further negotiation and indicated that issues remained open was not an offer capable of being accepted); 81 Ohio Jur.3d, *Sales* § 32 (2007) ("the proposal in an accept-ance to an offer of new or additional terms does not constitute a legal acceptance, but is, instead, a counteroffer, at least where the new terms are material…."). For this reason, VDO's claim lacks any contractual basis, and should be expunged as a matter of law.

VDO's Response offers three arguments in an effort to escape the forego-ing facts and show that the Debtors should be deemed to accept their "Offer" Letter, but all three lack merit. First, VDO engages in a lengthy, convoluted and incorrect analysis of "offer, acceptance, and consideration." (*See* VDO Response at 4-9.) This analysis fails to show that the Debtors accepted VDO's "Offer" letter because, among other things, it is based on materially inaccurate premises. These premises include VDO's statements that, "[u]nder Delphi's argument, its RFQ ... would have to be the offer," that, "Delphi would need to show that its Nomination Letter rejected VDO's Offer" to prove that the LTC was VDO's offer, and that the LTC cannot be the parties' entire agreement because, "[i]f the Nomination Letter is Delphi's rejection/counteroffer, then VDO would have signed the Long Term Contract before Delphi ever made its counteroffer, and could not represent acceptance of a counteroffer not yet made." (VDO Response at 5-7.) Each of these statements is based on faulty logic and is completely unsupported.

VDO's argument also fails because mere legal analysis cannot change the *facts* as set forth above. The **words** of the Nomination Letter show that the Letter did

not accept any contract that differed from the LTC: "we intend to execute (sign) the long term contract already agreed to with Siemens." (Nomination Letter, VDO Decl., Exh. C.) The facts similarly show that the Nomination Letter rejected VDO's specific request for compensation if the Debtors ordered fewer ECUs than the RFQ projected, because VDO asked the Debtors to promise compensation in the Nomination Letter (*see* Thompson Supp. Decl., Exh. 1), and the Debtors refused. No legal analysis of "offer" and "acceptance" can change the Debtors' rejection into an acceptance.

Moreover, VDO's analysis of "offer" and "acceptance" is incorrect. It is not hard to identify the "offer" and "acceptance" here: when VDO signed and returned the LTC, VDO made its offer, and when the Debtors signed the LTC three months later, the Debtors accepted. VDO submits no evidence – and the Debtors are aware of none – that VDO expressly conditioned its acceptance of the LTC on the Debtors' agreement to its "Offer" letter or other terms. There is similarly no evidence that VDO ever objected to the Debtors' statement in the Nomination Letter that the Debtors would enter into a contract with VDO by signing, unchanged, the "long term contract already agreed to with Siemens on these programs." There is therefore no need to analyze whether there was a "counteroffer" or "acceptance by performance" here – this is a perfectly ordinary case in which the parties offered and accepted the identical contract.

The fact that the LTC was both VDO's offer and the contract the Debtors accepted is fully consistent with case law, including the case law VDO itself cites: VDO's signed LTC was a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." (VDO Response at 5 (quoting *Leaseway Distrib. Centers, Inc., v. Dep't of Admin. Services*, 550 N.E.2d 955, 961 (Ohio Ct. App. 1988).)

8

Case law also shows that the Nomination Letter **could not** operate as an acceptance of VDO's "Offer" letter.  Under Ohio law, a legally sufficient offer cannot call for further negotiations and leave issues unresolved.  *See, e.g., Babcock & Wilcox Co. v. Hitachi America, Ltd.*, 406 F.Supp.2d 819, 828-30 (N.D. Ohio 2005).  Yet VDO's "Offer" letter invited discussion of several issues and began by saying, "[f]ollowing is our response to your requests for technical and commercial feedback.  Please contact us with any further questions."  (*See* VDO Decl., Exh. B.)  Thus VDO's "Offer" letter was not a legally sufficient "offer" that the Debtors' Nomination Letter could accept – or even **part** of such an offer – and VDO's extended analysis of "offer" and "acceptance" provides no support for its Claim.

VDO's second argument is an attempt to show that the Debtors accepted "**all of the relevant terms of VDO's Offer**" which, purportedly, "undisputedly included the terms proposed by VDO and the terms of the Long Term Contract that VDO did not reject."  (VDO Response at 4 (emphasis added); *id.* at 3 ("VDO incorporated into its Offer those terms of the LTC that VDO had not already rejected in response to the RFQ").)

This argument fails because – like VDO's first argument – it has no basis in fact.  The Debtors had no reason to think that, by signing the LTC, they were agreeing to VDO's earlier "Offer" letter.  VDO **now** says that it did not really mean to agree to the **whole** LTC, but VDO does not even argue that it communicated its unwillingness to abide by the LTC in the months after it sent its "Offer" letter on July 20, 2000; in response to the Debtors' August 2000 Nomination Letter; in October 2000 when the Debtors gave VDO a counter-signed copy of the LTC;[2] or in response to Purchase Orders that have reaffirmed the LTC's applicability over the course of the past several years.

---

[2] *See* Thompson Supp. Decl. ¶ 5.

9

(*See* VDO Decl., Exh. J; Thompson Decl., Exh. 3.)  Indeed, when VDO's Michel Poulet

states that VDO disagreed with the LTC, he relies exclusively on the text of the "Offer"

letter, which of course ***preceded*** VDO's signing of the LTC.  (*See* VDO Decl. at ¶¶ 7-10.)

        In addition, VDO does not and cannot identify any communication from

the Debtors in which the Debtors actually accepted "all of the relevant terms of VDO's

Offer" (VDO Response at 4, heading "B") as VDO defines that "Offer."  The Nomina-

tion Letter does not endorse any contractual terms other than the LTC,[3] and VDO does

not identify any later acceptance.  In fact, as shown above, the Debtors refused VDO's

request to compensate unrecovered development costs both before and after the LTC

became binding – and over and over again.  Accordingly, the Debtors accepted only

what they said they would accept:  the terms of the LTC.

        VDO's argument also fails as a matter of law.  Even if VDO's argument

could be reconciled with the facts, VDO would have to show that, in purportedly

accepting "all of the relevant terms of VDO's Offer," the Debtors actually accepted only

the terms that VDO now relies on as "relevant terms":  the terms in its "Offer" letter

plus "the terms of the Long Term Contract that VDO did not reject," or more accurately,

***pre-reject***, in its "Offer" letter.  (*See* VDO Response at 3-4.)

        VDO's "Offer" as VDO defines it, however, was self-contradictory.  For

example, VDO states that its "Offer included the 'Program Cancellation' and the 'Unit

---

[3] For this reason, even if the Nomination Letter could reasonably be construed as an "acceptance" –
and it cannot – then it could only be construed as an acceptance conditioned on the terms of the LTC, and
consequently as a "counteroffer."  *See, e.g.*, 81 Ohio Jur.3d, *Sales* § 32 (2007) ("In Ohio, the proposal in an
acceptance to an offer of new or additional terms does not constitute a legal acceptance, but is, instead, a
counteroffer, at least where the new terms are material to the contract.").  Also, because VDO does not
claim that it sent the Debtors any contractual documents after the date of the Nomination Letter – and
even if the Debtors' execution of the LTC is ignored – VDO would be deemed to have accepted that
counteroffer by its performance.  *See, e.g.*, *Mead Corp. v. McNally-Pittsburgh Mfg. Corp.*, 654 F.2d 1197, 1204
(6th Cir. 1981).  Accordingly, even in VDO's "let's pretend" world, the terms of the parties' contract, speci-
fied in the Debtors' Nomination Letter counteroffer which incorporated the LTC, and accepted by VDO's
performance, would again be the terms of the LTC.

Prices and Annual Volumes' provisions" from its "Offer" letter (VDO Response at 4), as well as the LTC, which insulated the Debtors from liability, allowed the Debtors to terminate for convenience and, as VDO admits, "d[id] not include a contractual right allowing VDO to recover on its Claim."  (VDO Response at 10.)

The Debtors obviously could not have accepted all of VDO's contradictory terms without resolving their contradictions.  The Court cannot, of course, rely on parol evidence of the parties' intent to resolve the contradictions, because the Debtors did not intend to accept VDO's "Offer" letter in the first place.  The contradictions can be resolved, however – and properly are resolved – by applying a rule that VDO itself has urged:  ambiguities in VDO's "Offer," if the "Offer" includes its July 20, 2000 "Offer" letter as well as the LTC, must be construed against VDO as the letter's drafter.  (*See* VDO Response at 10 (to the extent contract language is ambiguous, "it must be construed against … its drafter") (citing *Central Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio 1980).)  Inconsistencies between the LTC and the "Offer" letter, therefore, must be construed against VDO and in favor of the Debtors and the LTC.  Inescapably, and justly, the resulting terms are only the terms of the LTC that both parties signed.

VDO's final argument is that *Mead Corporation v. McNally-Pittsburgh Manufacturing Corporation*, 654 F.2d 1197 (6th Cir. 1981), "confirms that Delphi's acceptance of VDO's Offer resulted in an agreement on terms consistent with VDO's Offer."  (VDO Response at 8-9.)  *Mead* provides no support to VDO, however, because it turns on a crucial fact:  Mead Corporation expressly accepted *opposing party* McNally's terms and conditions in its purchase order:  "Mead sent McNally a purchase order, incorporating the terms and conditions of McNally's proposal W-2394…."  654 F.2d at 1204.  Here, of course, the Debtors did not incorporate *VDO*'s terms into its purchase order, but only *the Debtors' own*, and did not otherwise accept VDO's "Offer" – just the LTC.

11

The real significance of *Mead*, the Debtors respectfully suggest, is its recognition that a contracting party cannot be permitted to take advantage of others by speaking out of both sides of its mouth.  Mead Corporation's purchase order purported to accept the opposing party's terms on its front side, but tried to override those terms with its own less conspicuous terms on the reverse.  That, of course, is precisely what VDO is trying to do here – except that VDO's self-serving terms were in a different document sent some time before they accepted the LTC.  Business cannot be conducted in such a misleading way.  VDO's Claim should be expunged, and the Debtors' Motion for summary judgment should be granted.

B.    The Debtors' Standard Terms and
Conditions Did Not Subordinate
the LTC to VDO's "Offer" Letter

Absent a specific contractual provision to the contrary, the LTC signed by both parties would supersede any prior inconsistent agreement between them concerning the ECUs at issue, including any agreement that the Debtors allegedly accepted in their Nomination Letter.  *See, e.g.,* Ohio R.C. § 1302.05 (terms "which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement….").

As is common in commercial contracts, however, the Debtors included an express "integration clause" in their Standard Terms and Conditions applicable to substantially all of Delphi's purchases from its suppliers.  (*See* Thompson Supp. Decl., ¶ 7.) The integration clause is intended to make clear that the Debtors' "long-term contracts" alone, and any terms to which the parties later agree, will govern the parties' relationship.  (*See id.* ¶ 6.)  The integration clause, in a paragraph headed "Entire Agreement," reads: "This Contract, together with the attachments, exhibits, supplements or other

12

terms of Buyer [Delphi] specifically referenced in this Contract, constitutes *the entire agreement between Seller and Buyer* with respect to the matters contained in this Contract and *supersedes all prior oral and written representations and agreements*." (T&C, VDO Decl., Exh. A (emphasis added).)  The paragraph also states that, "[t]his Contract may only be modified by a written contract amendment issued by Buyer."  (*Id.*)

If the word "Contract" were not capitalized in the integration clause, the clause indisputably would preclude reliance on any alleged agreement entered into prior to the LTC.  The LTC, as the "entire agreement of the parties," would "supersede" any earlier agreement, including the purported agreement VDO attempts to forge out of its "Offer" and the Debtors' Nomination Letter.  (*Id.*)

The word "Contract" *is* capitalized in the integration clause, however, which makes it a defined term – and VDO tries to use its definition in the T&C to turn the integration clause on its head.  The definition reads:  "this contract and each purchase order, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract")."  (T&C, VDO Decl., Exh. A, ¶ 1.)

According to VDO, because of this definition of "Contract," even "documents drafted *before the existence of the agreement*…'relating to' the goods and services being provided *are part of the 'Contract.'*"  (VDO Response at 12 (emphasis added).)  More specifically, VDO argues that the T&C definition of "Contract" integrates VDO's "Offer" letter into the parties' contract here:  "VDO's Offer is a document 'relating to the goods and services provided' pursuant to the Contract ... Accordingly, the Offer is part of the parties' 'Contract.'"  (*Id.* at 10.)  VDO further argues that the integration clause does not preclude VDO from relying on its "Offer" Letter because VDO's "Offer"

13

letter is part of the capital-C "Contract" that "constitutes the entire agreement between

Seller and Buyer." (VDO Response at 9-15.) VDO's erroneous conclusion: the LTC is

subordinate to, and does not supersede, earlier VDO's "Offer" letter. (*See id.* at 9.)

   VDO's argument is a reversal of ordinary commercial expectations – and

one that would undermine substantially all of the Debtors' Long Term Contracts. It is

also an attempt to manufacture an ambiguity, and is wrong. There can be no doubt

concerning the plain meaning of the integration clause – it makes the LTC, with its

integrated T&C, into the "entire agreement of the parties" which supersedes any prior

agreements. Similarly, the plain meaning of the T&C definition of "Contract" is to

include post-contractual agreements, and exclude pre-contractual ones, from the

parties' "Contract" subject to the T&C.

   The plain meaning of the definition and integration clause is reinforced,

moreover, by the fact that the T&C lists six specific types of documents in its definition

of "Contract," and all six are normally prepared *after* a contract has been entered into.

VDO disputes this fact, identifying two – shipping instructions and "specifications" –

that it claims could be prepared in advance. (VDO Response at 11.)

   Shipping instructions and specifications do not, however, disprove the

Debtors' point. Shipping instructions cannot be issued before the LTC is entered into

because the LTC specifies that "[a]ll products will be ordered … in accordance with

written purchase orders (including related delivery releases and shipping instructions)

issued by Buyer from time to time during the term of this contract." (LTC, VDO Decl.

Exh. A, ¶ 5.) Thus, all products must be ordered "during the term of this contract" and

"in accord with purchase orders" that include post-LTC "shipping instructions." Any

earlier shipping instructions, of necessity, would be superseded.

Also, because only buyers such as the Debtors can issue "specifications," the inclusion of "specifications" in the T&C definition of "Contract" cannot make pre-LTC specifications part of the parties' "Contract" absent the Debtors' consent. Thus the list of documents in the T&C definition of "Contract," despite VDO's arguments to the contrary (VDO Response at 11-12), includes only *post-contractual* documents.

In addition, and crucially, VDO fails to rebut the Debtors' dispositive point that VDO's interpretation would render the integration clause nonsensical. It would do so because, by integrating all earlier documents "relating to the goods and/or services to be provided by Seller" into the term "Contract," the interpretation would leave no "prior … written representations and agreements" for the "Contract" to supersede. The interpretation also renders the integration clause nonsensical because, if VDO's definition "this contract and all prior written agreements" is substituted for the term "Contract," the clause becomes circular: "[this contract and all prior written agreements] … supersede[] all prior … written … agreements." Thus, although VDO is correct that its interpretation would only make "documents" and not oral agreements part of the term "Contract" (see VDO Response at 13), the integration clause would become nonsensical nonetheless.

VDO further tries to show that its interpretation is justifiable by asserting that, "if the parties previously had entered into a written agreement that all payments generally between them would be made in Canadian dollars, that written agreement would be superseded by their agreement in the contract to make all payments in U.S. dollars." (VDO Response at 13.) Yet the integration clause as VDO interprets it does *not* make the later agreement supersede, because the earlier agreement "relates" to the goods and services to be provided.

15

To avoid the problems with its interpretation of "Contract," VDO offers the additional argument that, if the definition of "Contract" is ambiguous, it "must be construed against Delphi as its drafter." (VDO Response at 10.) The law is clear, however, that the Court would be required to examine parol evidence before doing so. *Cline v. Rose*, 645 N.E.2d 806, 809 (Ohio App. 3d Dist. 1994) (when parol evidence makes the parties' intent clear, contracts are not construed against the drafters). There can be no doubt that neither party interpreted "Contract" with the ingenuity of VDO's lawyers.

Even if VDO were to succeed in making its "Offer" letter part of the parties' contract, moreover, VDO would face an insuperable hurdle:  As a matter of law, if conflicting agreements are both part of a contract, the later agreement trumps. *See Trinova Corp. v. Pilkington Bros., P.L.C.*, 638 N.E.2d 572, 575 (Ohio 1994) ("where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement").  Accordingly, the LTC would trump here.

For the foregoing reasons, VDO's interpretation of "Contract" in the integration clause must be rejected – the LTC *supersedes*, and is not *superseded by* – VDO's earlier "Offer" letter.  The Debtors are entitled to summary judgment whether or not the integration clause makes the LTC supersede, moreover – the Court need only find that the T&C definition of "Contract" does not elevate VDO's "Offer" letter into a contractual provision.  It plainly does not do so.  The Debtors' Motion should be granted.

C.    The "Offer" Letter, Even If Accepted,
      Would Not Make the Debtors Liable
      for VDO's Claim

As discussed in the Preliminary Statement, even if VDO could show that its "Offer" letter was contractually binding, VDO's Claim should still be expunged as a matter of law.  VDO relies on two provisions of its letter:  the "Program Cancellation"

provision and, apparently, the "Unit Prices and Annual Volumes" provision. (*See* VDO Mem. at 7, 14-16.)  The undisputed facts establish, however, that VDO is not entitled to compensation under either.

The Program Cancellation provision does not entitle VDO to compensation because the "program" referred to in the "Offer" letter was not cancelled.  The provision states, "In the event that the program covered in this letter is cancelled prior to production, without fault by Siemens, an equitable cancellation charge will be negotiated to cover the appropriate costs incurred by Siemens in supporting this program." (VDO Decl., Exh. B.)  The "program covered in this letter" cannot be the GMT 800 program on which VDO bases its claim, however, because the letter never mentions it. Rather, the letter's use of the term "program" makes clear that it can refer only to the ECU program, or to one of its "scenarios," as a whole.

VDO does not and cannot deny that the Debtors have been purchasing ECUs from VDO for the GMX 245, GMX 295 and GMT 900 programs pursuant to the LTC.  VDO does not dispute that "[t]he Debtors were able to use substantially the same ECUs that VDO had offered to manufacture for the GMT 800 program, with different connectors, for the GMT 900 program."  (*See* VDO Response to SUMF ¶ 48.)  VDO also appears to concede in relevant part – and certainly fails to cite the evidence necessary under Local Bankruptcy Rule 7056-1(e) to dispute – the Debtors' contention that they purchased approximately 400,000 ECUs from VDO for the GMT 900 program pursuant to the LTC at prices between $52.30 and $56.26.  (VDO Response to SUMF ¶ 49.)

At a minimum, and even though VDO's Michel Poulet has submitted a Supplemental Declaration, VDO does not dispute the authenticity of the purchase orders for GMX 245, GMX 295 and GMT 900 ECUs that the Debtors' Jane Thompson has submitted to Court and that specifically reference the LTC. (*See* Thompson Decl. ¶¶ 14-

17

18 & Exh. 3.)  Based on these facts, there can be no genuine dispute that the "program covered in [VDO's] letter" was never cancelled, and that VDO therefore is not entitled to an "equitable cancellation charge."

The Unit Prices provision similarly fails to support VDO's Claim.  That provision states, in relevant part, that "Siemens reserves the right to submit to Delphi revised pricing in instances where the actual annual volume purchased is below the quoted volume by 20% or more."  (VDO Decl., Exh. B.)  The provision does not require the Debtors to *pay* the revised pricing, however, and they accordingly are not required to do so.  VDO's Claim, which depends entirely on the Unit Prices provision because the Program Cancellation provision does not apply, must therefore be expunged.

For the foregoing reasons, this Court should grant the Debtors' Motion expunging VDO's Claim in all respects.[4]

## POINT II
## VDO'S CLAIM HAS NO BASIS IN "PROMISSORY ESTOPPEL"

VDO's response concludes with a brief argument concerning promissory estoppel.  VDO asserts, first, that the LTC is invalid because no "promise of exclusivity … explicit or implicit, exists in this case."  (VDO Response at 16.)  In fact, as the Debtors' initial memorandum pointed out, the LTC promises to purchase "approximately 100%" of the Debtors' needs, the Debtors' purchase orders promise to purchase a full "100%" of the Debtors' needs (*see* Thompson Decl., Exh. 3), and the Debtors' right to purchase

---

[4] In paragraph 4 of VDO's Supplemental Declaration, Mr. Poulet suggests that there was an oral agreement between VDO and the Debtors concerning payment for tooling.  Neither Mr. Poulet nor VDO's Response assert that this agreement provides an independent basis to require the Debtors to pay an unpaid balance included in VDO's Claim, however, and the Debtors believe that VDO has been fully compensated for its tooling through the per-part pricing for parts – not limited to the GMT 900 program – that the tooling has been used to make.  (*See* Thompson Supp. Decl. at ¶ 9.)  In addition, the parties' Court-ordered stipulation required VDO to state any contractual basis for all or part of its claim in VDO's initial memorandum (*see id.*, Exh. 2, ¶ 8), which did not mention an oral agreement.  Accordingly, Mr. Poulet's statement concerning an oral agreement provides no reason to deny summary judgment.

from sellers other than VDO is strictly circumscribed, both in the paragraph of the LTC that VDO identifies (*see* VDO Response at 16) and elsewhere.  (*See* Debtors Mem. at 17.)

Also, although VDO argues that the Debtors' purchase orders could not "supply a missing term for a contract that does not exist" (VDO Response at 16), it cites only an irrelevant Ohio U.C.C. provision concerning when an ***acceptance*** must be sent. (*Id.* at 17.)  In fact, although the LTC had already sufficiently promised exclusivity, the purchase orders adequately remedied any ambiguity.  *See Puritan Systems, Inc. v. M.G. Industries*, 1997 WL 775681, at *4 (Ohio App. 9th Dist. ) (purchase orders subsequent to a requirements contract sufficiently supplied quantity term).  The parties' agreement was therefore both sufficiently definite and supported by consideration – VDO, at a minimum, cites no relevant authority to the contrary.  VDO has also received millions of dollars in payments pursuant to the LTC, and should be estopped from denying its validity.

VDO's final argument asserts that, notwithstanding the Debtors' denials, the Debtors ***did*** make a definite promise of compensation upon which VDO relied to its detriment.  (VDO Response at 17.)  The only problem is, VDO fails to identify when and where that promise was made, who made it, or what exactly was promised except that "VDO would be able to recoup its costs."  (*Id.*)

VDO's Memorandum in Support asserted that the Debtors' supposed promise was made at an unspecified location in one of four documents annexed to the VDO Declaration (*see* VDO Init. Mem. at 18).  VDO now provides even less information despite its submission of a Supplemental Declaration.  A party cannot survive summary judgment based merely on unsupported statements in a brief.  *See, e.g., Schoenbaum v. Firstbrook*, 268 F.Supp. 385, 390 (S.D.N.Y. 1967) ("statements in briefs are not considered as evidence on a summary judgment motion and do not controvert evidence submitted

by the movants"), *rev'd in part on other grounds*, 405 F.2d 215 (2d Cir. 1968); Fed. R. Civ.

P. 56(e).  VDO has also failed to comply with its undertaking in the parties' Court-

ordered stipulation:  "If VDO maintains that it is legally entitled to payment of all or

part of its claim based on any theory in law or in equity other than breach of contract …

VDO's Memorandum in Support shall state that theory; shall identify any statements,

promises or actions which VDO maintains support its claim; and shall describe the cir-

cumstances of VDO's reliance."  (Thompson Supp. Decl., Exh. 2, ¶ 8.)  A summary judg-

ment expunging VDO's Claim insofar as it is based on promissory estoppel – as well as

insofar as it is based on any purported contractual obligation – should therefore be

granted.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Debtors' Motion for a summary

judgment expunging VDO's Claim should be granted.

Dated:    New York, New York
          December 3, 2007                    DELPHI CORPORATION, *et al.*,
                                              By their Bankruptcy Conflicts Counsel,
                                              TOGUT, SEGAL & SEGAL LLP
                                              By:

                                              /s/ Neil Berger
                                              NEIL BERGER (NB-3599)
                                              RICHARD K. MILIN (RM-7755)
                                              One Penn Plaza, Suite 3335
                                              New York, New York 10119
                                              (212) 594-5000