## SUBSTATION LEASE AGREEMENT

This Substation Lease Agreement (this "Agreement"), is executed by and between Ohio Edison Company, an Ohio corporation with its principal place of business at 76 South Main Street, Akron, Ohio, 44308 ("Lessor"), and Delphi Corporation, a Delaware corporation, its successors and assigns, with its chief executive office at 5725 Delphi Drive, Troy, Michigan 48098 ("Lessee").

### WITNESSETH

WHEREAS, Lessor owns, operates, and maintains an electric utility system and is a regulated electric utility company under the laws of the State of Ohio, and

WHEREAS, on October 8, 2005 (the "Petition Date"), Lessee and certain of its U.S. subsidiaries filed voluntary petitions for reorganization (the "Cases") under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). Lessee continues to operate its business as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court, and

WHEREAS, Lessee owns and operates a business facility within Lessor's service area with electric service requirements such that service from Lessor's transmission system through an electrical substation is possible and practicable, and

WHEREAS, Lessee desires to continue to lease said substation facilities from Lessor for the purpose of obtaining retail electric service from Lessor, and

WHEREAS, Lessee further agrees that Lessor will operate and maintain such electrical substation facilities in accordance with Lessor's standard practices and procedures.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and intending to be legally bound thereby, Lessor hereby leases to Lessee the following described electrical substation facilities, subject to the terms and conditions hereinafter set forth:

### ARTICLE 1 - ELECTRICAL SUBSTATION DESCRIPTION

1.1.    Lessor will operate and maintain one electrical distribution substation situated at 209 Hayes Avenue, Sandusky, Ohio, and more fully described on the attached one line drawing (the "Substation"), marked as Attachment A, which shall be used for the sole purpose of Lessee obtaining retail electric service from Lessor pursuant to that certain Contract for Electric Service, dated January 26, 2006, as the same may from time to time be amended or otherwise modified (the "Electric Service Contract"); failure of Lessee to do so during any term of this Agreement shall constitute an event of default, and shall be governed by Section 2.2 hereof.

## ARTICLE 2 - TERM

2.1.    The effective date of this Agreement shall be March 1, 2005 (the "Effective Date"). The term under this Agreement shall commence upon the Effective Date and shall expire on September 30, 2008 (the "Basic Lease Term") unless such Basic Lease Term is terminated pursuant to Section 2.3 hereof. Upon the expiration of the Basic Lease Term, this Agreement shall automatically renew on a month to month basis under similar terms and conditions (each month representing one "Renewal Term") until that certain date in which a new contract is executed and delivered, or the date set forth in a written notification sent by either party (the "Termination Notice") to the other party expressing its intent to terminate this Agreement in thirty (30) days (the "Termination Date"). The Termination Date shall be a date at least thirty (30) days after the date in which the Termination Notice is sent.

2.2.    In the event that Lessee fails to obtain retail electric service from Lessor pursuant to the Electric Service Contract during any term of this Agreement, the Monthly Rental Payment(s) (as defined in Section 6.2 hereof) remaining in such term shall become automatically and immediately due and payable.

2.3    In the event that Lessor in Lessor's sole discretion determines that the Substation requires maintenance, repair or replacement to major Substation equipment, which includes but is not limited to the Substation's power transformers, circuit breakers and voltage regulators ("Significant Expenditure") and such Significant Expenditure exceeds the Negotiated Value of this Agreement, Lessor will provide Lessee written notice that such a Significant Expenditure is required. Upon such notice, the Lessee will have fourteen (14) days ("Amendment Period") to either to negotiate a new substation agreement with Lessor with an adjusted monthly rental payment that reflects certain costs associated with the Significant Expenditure or to terminate the Agreement. If the Agreement is terminated, Lessor shall have the rights upon termination set forth in Section 3.2 hereof. Lessee agrees that as long as Lessee continues to receive any electric utility service from the Substation during the Amendment Period, Lessee shall pay an amount equivalent to the Monthly Rental Payment (as defined in Section 6.2 hereof). If the Agreement is terminated and no substation lease exists, then the current tariff rate shall apply.

## ARTICLE 3 - DESIGN AND CONSTRUCTION OF SUBSTATION

3.1.    Lessee shall provide to Lessor, at no cost to Lessor, a suitable site of sufficient size and nature to site the Substation, as determined by Lessor, and otherwise fulfill Lessor's obligations under this Agreement, including but not limited to, all necessary exclusive and non-exclusive real estate easements and rights of way for the Substation site and the transmission and distribution lines connected to the Substation, as well as suitable driveways providing ready access to the Substation, transmission, and distribution facilities by Lessor and Lessor's mechanized equipment necessary to construct, operate, repair, and maintain these facilities. Lessor agrees that Lessee shall meet its obligations herein by continuing to permit Lessor to occupy and use the property that Lessor has historically used and occupied since the installation of the Substation and not unreasonably withholding consent to such future use and occupancy

2

modifications as Lessor may reasonably request for the purpose of meeting electricity service needs. The easement agreement will be in substantially the same form as Attachment B of this Agreement.

3.2.    Upon termination of this Agreement, the concrete foundations, and all subsurface equipment and facilities, including the ground grid, shall become the sole property of Lessee. Lessor shall retain ownership and exclusive control over all above-ground Substation structures, equipment, related components, and the security fence, notwithstanding the physical attachment of all or any part thereof to Lessee's real estate and shall have the right to enter the property and remove the same, but shall be under no obligation to remove any foundations or subsurface structures or equipment. In addition, Lessor shall have the right to take such actions necessary to reroute and reconnect the transmission and distribution lines connected to the Substation to insure adequate and proper operation and reliability to meet the electric utility system needs, provided such actions do not interfere with Lessee's use and enjoyment of its property, damage Lessee's property or unreasonably expose Lessee, its agents or suppliers to the risk of injury to person or property. Lessor shall, within reason, provide Lessee with reasonable notice prior to taking any such actions and such notice shall describe the actions which Lessor intends to take to reroute and reconnect its lines.

ARTICLE 4 - SUBSTATION OPERATION AND MAINTENANCE

4.1.    Lessor agrees during its normal working hours to routinely inspect, test, calibrate, operate, maintain, and repair the Substation equipment, structure, and security fencing in accordance with the schedules and procedures generally used by Lessor for similar facilities. Lessee may request that such work be performed outside Lessor's normal working hours, provided that Lessee reimburse Lessor for the difference in costs incurred. Lessor shall, within reason, attempt to provide Lessee notice prior to engaging in the routine activities referenced in this Section 4.1. It is understood that no such notice is required prior to Lessor taking actions to respond to emergency conditions, to restore service or in such other circumstances when such notice is impractical.

4.2.    It is mutually understood and agreed that upon reasonable notice, Lessee shall provide any required electrical outage to Lessee's plant or business facility necessary to facilitate routine maintenance activities on electrical equipment that must be de-energized to safely perform the work. Lessor agrees to notify Lessee in advance of the necessity for an outage to perform routine maintenance activities and provide a tentative annual schedule for performing the work, except under emergency conditions.

4.3.    If Lessee's business operation cannot accept planned electric service interruptions to facilitate Substation maintenance activities, Lessor will use its best efforts to schedule emergency mobile substation capacity, if available, at Lessor's sole discretion, to temporarily replace the permanent Substation, and complete necessary maintenance functions while maintaining electric service to Lessee's plant or business facility. Lessee shall pay the total costs Lessor incurs for the installation, removal, transportation, and the daily rental charge of the

3

use of the mobile substation equipment utilized to effect routine maintenance activities in addition to Lessee's rental payment obligations otherwise set forth in this Agreement.

4.4.    Lessor agrees to stand ready to perform both routine and emergency switching operations, and make necessary repairs to the Substation, except as provided in Section 4.2, as required by Lessor's standard practices and procedures, in a timely manner. Lessor agrees to correct any condition on Lessor's electric utility system which materially impairs the operation or reliability of the Substation, or which may pose an immediate hazard to such facilities or the public. Emergency repairs required to be performed shall be prioritized, in Lessor's sole discretion, with other emergency work needed to be performed on Lessor's electric utility system. Lessor agrees to provide emergency replacement transformer capacity for the Substation, up to the Negotiated Value, at no additional cost to Lessee, to the extent such capacity is available from Lessor's spare equipment and emergency mobile substation equipment.

4.5.    Should Lessee's electrical demand requirements exceed such service capacity provided pursuant to the Electric Service Contract and Lessee is required to negotiate a revised electric service contract, Lessor may unilaterally replace components of the Substation with equipment of adequate capacity provided that such replacement shall be treated as a Significant Expenditure pursuant to Section 4.2 of this Agreement..

4.6.    Lessee shall maintain the driveways to and areas adjacent to, the Substation to permit suitable access at all times to the site by Lessor.

4.7.    Should Lessee request changes, modifications, replacements to, or relocation of, the Substation for its convenience, Lessee shall pay for such changes, modifications, replacements, or relocation and provide additional land if required at Lessor's then current standard charges for such work. Lessor agrees to schedule the work as soon as reasonably practicable.

## ARTICLE 5 - INGRESS AND EGRESS

The right of ingress or egress to Lessee's property is hereby granted to Lessor, its contractors and agents, at any and all times, for the purpose of performing construction, inspection, operation, maintenance, and removal activities at the Substation, and for the purpose of allowing Lessor to perform switching, operating, maintenance and all other functions necessary to maintain the integrity of both Lessee's and Lessor's electrical systems. Nothing herein shall be interpreted or applied to relieve Lessor of responsibility for any damage or injury caused by the negligence of Lessor, its contractors and agents, while representatives of same are entering on, exiting from, or residing on Lessee's property. Rights and responsibilities of both Lessor and Lessee are detailed in the Easement attached hereto as Exhibit A.

## ARTICLE 6 - RENTAL AND OTHER PAYMENTS

6.1.    Lessee hereby agrees to pay Lessor a total of One Hundred Eighty-One Thousand Seven Hundred and no/100 Dollars ($181,700.00) in two equal payments for the use of the Substation from the Petition Date to the Execution Date. The first payment of Ninety Thousand

Eight Hundred Fifty and no/100 Dollars ($90,850.00) shall be paid no later than on February 1, 2007 (the "Execution Date"). The remaining payment of Ninety Thousand Eight Hundred Fifty and no/100 Dollars ($90,850.00) shall be paid no later than April 1, 2007. In consideration of the Lessee's obligations under this Agreement, Lessor hereby expressly waives any and all claims it has or may have against Lessee arising prior to the Petition Date which relate to the Substation or Lessee's use of the Substation, not including the charges incurred for electric service.

6.2.    Lessee hereby agrees to pay Lessor a rental payment for the use of the Substation in the amount of Seven Thousand Nine Hundred and no/100 Dollars ($ 7,900.00) per month on the first of each month (the "Due Date") with the first payment due on February 1, 2007 ("Monthly Rental Payment") and the last payment due on September 1, 2008.

6.3.    Lessor shall be responsible for the installation and monthly costs associated with a direct telephone line or other communication facilities required between the Substation and Lessor's service area dispatching office as specified by Lessor and as Lessor deems necessary for adequate operation of the Substation.

6.4.    Lessor shall invoice Lessee for the Monthly Rental Payment on or about twenty-five (25) days prior to the rental payment Due Date. If payment is not received within thirty (30) calendar days after the rental payment Due Date, a late payment fee of one and one-half (1-1/2) percent of the outstanding balance will become due and payable by Lessee in addition to the outstanding balance. Payments should be sent to Ohio Edison Company, PO Box 3687, Akron, Ohio, 44309-3687 and should include the remittance stub provided on the invoice.

6.5.    Lessor shall separately, until otherwise notified in writing by Lessee, invoice Lessee for: (A) the total costs, including overhead, installation, removal, transportation, and a daily rental charge for mobile substation facilities utilized at the written request of Lessee to facilitate routine maintenance activities in the Substation to avoid requiring an electrical outage to the facility; and (B) work done at the request of Lessee for the convenience of the Lessee.

ARTICLE 7 - TAXES

7.1.    Lessor shall only be responsible for the filing of the property tax returns and paying the property taxes associated with the Substation unless one or both of these is prohibited by law. Lessee shall pay all real and personal property taxes on such property as it existed prior to the construction of the Substation. Generally, each Party shall be responsible for its own property taxes.

ARTICLE 8 - INDEMNIFICATION

8.1.    <u>Indemnity.</u>    Each Party, for itself, its successors, assigns, subcontractors and employees, agree to , indemnify, defend, and hold harmless the other Party its successors and assigns, from and against any and all court costs and litigation expenses, including legal fees, incurred or related to the defense of any action asserted by any person or persons for bodily

5

injuries, personal injury, death, or property damage, to the extent of the indemnifying party's negligence.

8.2. <u>Waiver of Immunity</u>. Each Party, for itself, its successors, assigns and subcontractors, does hereby waive the immunity provided by the applicable Worker's Compensation laws only to the extent necessary to enforce Section 8.1.

## ARTICLE 9 - LIMITATION OF LIABILITY

9.1.    Neither Party, its affiliated companies, its subcontractors, nor its employees shall be liable to the other Party, whether arising out of contract, tort (including negligence), strict liability, or any other cause or form of action whatsoever, for loss of anticipated profits, loss by reason of plant or other facility shutdown, non-operation or increased expense of operation, service interruption, claims of either Party's customers, subcontractors, vendors or suppliers, cost of money, loss of use of capital or revenue, fines or penalties assessed or levied against said Party by any governmental agency or arising out of the Party's construction, operation or maintenance of service or out of or in connection with the Party's use, or inability to use, the Substation, or for any special, incidental or consequential loss or damage of any nature, whether similar to those enumerated above, arising at any time or from any cause whatsoever.

9.2.    The total liability of Lessor, its affiliated companies, its subcontractors and employees, whether arising out of contract, tort (including negligence), strict liability, or any other cause or form of action, shall not exceed the amount of rental payments for one year under this Agreement. The total liability of Lessee, its affiliated companies, its subcontractors and employees, whether arising out of contract, tort (including negligence), strict liability, or any other cause or form of action, shall not exceed the amount of rental payments due and payable for one year under this Agreement.

## ARTICLE 10 - WARRANTIES AND DISCLAIMERS

10.1.    Lessor will provide a Substation and will use reasonable efforts to operate, and maintain said Substation in accordance with Lessor's standard practices and procedures. However, the Substation as furnished and the operation and maintenance practices followed do not imply any warranty on the part of Lessor.

10.2.    LESSOR DOES NOT WARRANT AGAINST NOR DOES IT ASSUME ANY LIABILITY WITH RESPECT TO: (A) THE FAILURE OF EQUIPMENT PURCHASED FROM THIRD PARTIES; (B) THE IMPROPER USE OF, OR FOR DAMAGES RESULTING FROM THE IMPROPER USE OF, ANY ELECTRICAL EQUIPMENT, OR ANY ASSOCIATED OPERATION OR MAINTENANCE PRACTICE, LEASED UNDER THIS AGREEMENT, (C) REPAIRS OR OTHER WORK PERFORMED BY THIRD PARTIES NOT AUTHORIZED BY LESSOR, OR (D) DAMAGES ARISING FROM ACTS OF GOD OR OTHER EVENTS BEYOND THE REASONABLE CONTROL OF LESSOR.

## ARTICLE 11- FORCE MAJEURE

11.1.    Lessor shall not be liable for loss or damage resulting from (a) any electrical equipment failure or (b) failure to perform its contractual obligations in whole or in part, insofar as such delay or nonperformance is caused by Force Majeure as defined in Section 11.2 below, provided that Lessor provides written notice as promptly as reasonably possible of the Force Majeure event to Lessee of the circumstances giving rise to such delay or nonperformance.

11.2.    "Force Majeure" means the occurrence of an unforeseen event beyond reasonable control of Lessor which disrupts, hinders, or otherwise delays the performance of its contractual obligations, including but not limited to the following: acts of God, war, act of public enemy, acts of civil or military authorities, riots, civil commotion, sabotage, strikes, floods, fires or other violent natural disasters, epidemics, quarantine restrictions, embargoes, unavoidable delays in procuring necessary materials, labor, equipment, services or facilities, act(s) by any government, governmental body or instrumentality, or regulatory agency (including delay or failure to act in the issuance of approvals, permits or licenses), and acts, including delays or failure to act, of Lessee.

11.3.    In the event of a delay in performance caused by Force Majeure, the time for performance shall be extended by such length of time as may be reasonably necessary to compensate for any such delay.  Lessor will make every reasonable effort to keep delays in performance to a minimum, except that settlements of labor disputes shall be within its sole discretion.

## ARTICLE 12 - INSURANCE

12.1.    Lessor shall maintain comprehensive property and casualty insurance coverage for its equipment, materials and/or other property placed at or near the Substation site at Lessee's facility.

## ARTICLE 13 - NOTICES AND CORRESPONDENCE

13.1.    Notices to Lessor:

All notices under this Agreement, but not rental payments, shall be sent to:

Customer Support                    Legal Department
Ohio Edison Company                 FirstEnergy Corp.
2508 West Perkins Avenue            76 South Main Street
Sandusky, OH 44870                  Akron, Ohio  44308

and shall be effective upon receipt.

13.2.   Notices to Lessee:

All notices under this Agreement shall be sent to Lessee at the following addresses:

David Munson                         Donald S. Poole
Delphi Corporation                   Delphi Corporation
2509 Hayes Avenue                    M/C 3-09, P.O. Box 1042
Sandusky, OH 44870                   2000 Forrer Blvd.
(419) 627-7169                       Dayton, OH 45401-1042
(419) 627-7105 (fax)                 (937) 455-9633
Email: david.a.munson@delphi.com     (937) 455-7686 (fax)
                                     Email: donald.s.poole@delphi.com

and shall be effective upon receipt.

13.3.   Each party shall notify the other party in writing of any address changes.


ARTICLE 14 - MISCELLANEOUS

14.1.   On January 6, 2006, the Bankruptcy Court entered an Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures To Enter Into Or Renew Real Property Leases Without Further Court Approval (the "Order") (Docket #1777).  The Order authorized Lessee to enter into real property leases and deliver notice to the Notice Parties (as defined in the Order) without further Court approval.  This Lease shall not be effective until: (i) Lessee obtains approval by the Bankruptcy Court or (ii) the terms of the Order are meet allowing Lessee to enter into this Agreement.

14.2.   This Agreement shall be constructed in accordance with, and its performance shall be governed by, applicable laws in effect in the State of Ohio.  Any cause of action arising hereunder shall be brought in an appropriate forum within Summit County in the State of Ohio.  Notwithstanding the foregoing, Lessor and Lessee shall be subject to the jurisdiction of the Bankruptcy Court.

14.3.   This Agreement constitutes the entire Agreement of the parties with respect to the subject matter hereof and supersedes all prior or collateral representations, negotiations, writings, memoranda and agreements.  Any prior or collateral representation, warranty, promise or condition relating hereto but not incorporated in this Agreement will not be binding on either party.

14.4.   This Agreement and all of its provisions shall inure to and be binding upon the respective parties hereto, their successors and assigns; provided, that neither party hereto may assign this Agreement or any part hereof without the prior written consent of the other party hereto which shall not be unreasonably withheld, but this provision shall not prohibit Lessor and Lessee from utilizing the services of or making assignments to their respective affiliated companies, or, in Lessor's case, specifically assigning the rental stream arising from this Agreement to third parties.

8

14.5.    All amendments to this Agreement shall be in writing and shall be executed by an authorized agent of each part, except for address changes pursuant to Sections 13.1 and 13.2. No waiver, alteration, or modification of any of the provisions of this Agreement shall be binding unless such is written and signed by a duly authorized agent of each party.

14.6.    The failure of either party to insist upon strict performance of any provision of this Agreement or to exercise any right under or pursuant to the Agreement shall not be construed as a waiver of such provision or relinquishment of such right included in this Agreement.

14.7.    If any term or condition of this Agreement is determined by a court of competent jurisdiction to be violative of law or otherwise unenforceable, the remainder of the Agreement shall remain in full force and effect as though the stricken clause was not present. The parties acknowledge that this Agreement is not being filed with the Public Utilities Commission of Ohio. If it is subsequently determined that such filing is required, the parties agree that such requirement will not affect the validity of this Agreement, and that they will cooperate to make such filing and obtain all necessary approvals.

IN WITNESS WHEREOF, the parties hereto, by and through their authorized agents, have executed this Agreement effective as of the day and year first written above.

OHIO EDISON COMPANY (Lessor)          DELPHI CORPORATION (Lessee)

By: _Steven E Strah_                  By: _Donald S Poole_

Name: _STEVEN E. STRAH_               Name: _DONALD S. POOLE_

Title: _PRESIDENT_                    Title: _MGR.- UTILITIES SUPPLY_

## FORM OF
## EASEMENT

**KNOW ALL MEN BY THESE PRESENTS,** That DELPHI CORPORATION, a Delaware corporation (the "Grantor"), claiming title by virtue of instruments recorded in Volume \_\_\_, Page \_\_\_\_\_ of the _____ County Deed Records, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, does hereby grant unto OHIO EDISON COMPANY, an Ohio corporation, its successors and assigns (the "Grantee"), an exclusive easement and right of way with the rights and privileges hereinafter set forth, for a substation and for the transmission and distribution of electric current, including communication facilities, upon, over, under, across and within the following described premises:

Situated in the Township of Perkins, County of Erie, State of Ohio, and being a part of Section 3, Mitchell 1369 Acre Tract.

Crossing No. 1

The center line of right of way is described as follows:

The center line enters Grantor's premises from the land of Grantee at a point on Grantor's upper northwesterly property line approximately 104 feet northeasterly from Grantor's upper southwest corner, said corner being common with the southeast corner of Grantee's Greenfield Substation property; thence from this point in a general easterly direction across Grantor's premises a distance of approximately 1,266 feet to a point on Grantor's substation structure where the center line herein described terminates.

Crossing 2

The center line of right of way is described as follows:

The center line enters Grantor's premises from the land of Grantee at a point on Grantor's upper northwesterly property line approximately 94 feet northeasterly from Grantor's upper southwest corner, said corner being common with the southeast corner of Grantee's Greenfield Substation property; thence from this point in a general southeasterly direction across Grantor's premises a distance of approximately 1,281 feet to a point on Grantor's substation structure where the center line herein described terminates.

Grantor further agrees that, except for the substation structure, no building or structure will be located or constructed within 30 feet of either of the above-described center lines.

The easement and right of way described above shall be in accordance with Ohio Edison Company Drawing No. TZ-1342-E, by reference made a part hereof, copies of which are on file with the Grantor and Grantee herein.

The easement and rights herein granted shall include the right to construct, erect, install, inspect, replace, patrol, relocate, operate, maintain, secure and repair upon, over, under, along and within the above described premises all necessary structures, apparatus, fixtures and appurtenances of whatever kind or description used for or in connection with the operation of an electric substation, and the right of reasonable ingress and egress upon, over and across Grantor's land adjoining the herein above described premises.

The easement herein granted shall include the right to trim, cut, remove or control by any other means at any and all times such trees, limbs, roots, underbrush or other obstructions which may in the judgment of the Grantee interfere with, limit access to or endanger said structures, wires, or appurtenances or their operation.

The Grantee will repair or replace all fences, gates, lanes, driveways, tiles, drains and ditches damaged or destroyed by it on said premises or pay Grantor for all damages to fences, gates, lanes, driveways, tiles, drains and ditches on said premises caused by the construction or maintenance of said lines. Nothing herein shall be interpreted or applied to relieve Grantee of responsibility for any damage or injury caused by the negligence of Grantee, its contractors and agents, while representatives of same are entering on, exiting from, or residing on Grantor's property. The Grantor reserves for itself and for any successor fee owner of the within described premises, the right to grant an easement to the Grantee in substitution of the rights herein granted, in which event this instrument shall terminate and be of no further force or effect; provided however that (i) any substitute easement premises shall be adequate so as to permit the substitute premises to be used for the same purposes as the Grantee had used the within described premises prior to such substitution and (ii) the party providing the substitute premises shall reimburse the Grantee for its reasonable expenses associated with such substitution and relocation.

This easement shall be in effect so long as the Substation Lease Agreement is effective or successor lease agreement shall be in effect between the parties. It is understood that the termination of this easement shall not operate to interfere with Grantee's ability to render service from or through such facilities as may be located on or in Grantor's property.

TO HAVE AND TO HOLD such easement, rights and right of way and its appurtenances unto said Grantee, its successors and assigns, and the Grantor represents that it is the owner of the above-mentioned premises herein described. IN WITNESS WHEREOF, Delphi Corporation has executed this easement by its duly authorized officers and has caused its corporate seal to be affixed this _____12TH_____ day of _MARCH_____, 2007.

Signed and acknowledged
in the presence of:

_Marcia Jordan_

_Michael E Hall_

Signed and acknowledged
in the presence of:

_Elizabeth Scott_

_Debra J Knowles_

DELPHI CORPORATION

By: _Donald S Poale_

Title: _MGR. - UTILITIES SUPPLY_

OHIO EDISON COMPANY

By: _Stan E Stroh_

Title: _PRESIDENT_

(This Space Intentionally Left Blank)

STATE OF _OHIO_        )
COUNTY OF _MONTGOMERY_ )
                       )        SS:

The foregoing instrument was acknowledged before me this day _12th_ of
_MARCH_ , 2007 by _Donald Poole_ , _Mgr.-Utilities Supply and_
_____ of Delphi Corporation, a
Delaware corporation, on behalf of the corporation.

**SEAL**

_Marcia Jordan_
Notary Public

_Commission Expires: 1-2-08_

STATE OF OHIO        )
COUNTY OF _MONTGOMERY_ )
                      )        SS:

The foregoing instrument was acknowledged before me, this _2_ day of
_March_ , 2007 by _Steve Strah_ , _President_ of Ohio
Edison Company, an Ohio corporation, on behalf of the corporation.

**SEAL**

Notary Public

_Debra J Knowles_

**Debra J. Knowles**
**Notary Public, State of Ohio**
**My Commission Expires August 19, 2008**

This instrument was prepared by
Ohio Edison Company
76 South Main Street
Akron, Ohio 44308