1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


              United States Bankruptcy Court

              One Bowling Green

              New York, New York


              August 5, 2007

              10:05 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1    HEARING re Expedited motion for order authorizing and approving

2    Delphi-Appaloosa equity purchase and commitment agreement

3    pursuant to 11 U.S.C. 105(a), 353(b) and 503(b) and 507(a)

4    (Docket No. 8673).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   A P P E A R A N C E S :

2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

3        Attorneys for Debtor

4        333 West Wacker Drive

5        Chicago, IL 60606

6

7   BY:   JOHN BUTLER, JR., ESQ.

8         ALBERT L. HOGAN, III, ESQ.

9

10

11  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

12        Attorneys for Debtor

13        Four Times Square

14        New York, NY 10036

15

16  BY:   KAYALYN A. MARAFIOTI, ESQ.

17

18

19  LOWENSTEIN, SANDLER, P.C.

20        Attorneys for Lead Plaintiffs

21        63 Livingston Avenue

22        Roseland, NJ 07068

23

24  BY:   MICHAEL S. ETKIN, ESQ.

25        S. JASON TEELE, ESQ.

4

1    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP

2         Attorneys for Equity Committee

3         One New York Plaza

4         New York, NY 10004

5

6    BY:   BONNIE STEINGART, ESQ.

7

8

9    WEIL, GOTSHAL AND MANGES, LLP

10        Attorneys for General Motors

11        767 Fifth Avenue

12        New York, NY 10153

13

14   BY:   MICHAEL P. KESSLER, ESQ.

15

16

17   TOGUT, SEGAL & SEGAL, LLP

18        Attorneys for Conflicts Counsel to Debtor

19        One Penn Plaza

20        New York, NY 10110

21

22   BY:   LARA R. SHEIKH, ESQ.

23

24

25

5

1   **LATHAM & WATKINS, LLP**

2       **Attorneys for Unsecured Creditors Committee**

3       **885 Third Avenue**

4       **New York, NY 10022**

5

6   **BY:  MARK A. BROUDE, ESQ.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1               P R O C E E D I N G S

2          THE COURT:  Please be seated.  Okay.  Delphi

3     Corporation.

4          MR. BUTLER:  Your Honor, good morning.  Jack Butler,

5     Kayalyn Marafioti and Al Hogan on behalf of -- from Skadden

6     Arps on behalf of Delphi Corporation for this omnibus hearing

7     to consider the proposed Delphi/Appaloosa investment agreement.

8     This was filed -- the motion was filed at docket number 8673

9     and we're here before the Court in an order to show cause

10    entered by the Court on July 19, 2007 at docket number 8694.

11         Your Honor, the only response that's been filed to

12    this motion that could be construed as an objection was filed

13    by Highland Capital Management, LP at docket number 8642 and

14    again at 8754.  Judith Elkin is here on behalf of Highland

15    Capital and at -- prior to the commencement of the hearing this

16    morning she confirmed, on behalf of Highland, to me that

17    Highland does not consider that filing to constitute an

18    objection nor, from their perspective, for this to be a

19    contested hearing.  I'd like Ms. Elkin to confirm that on the

20    record.

21         MS. ELKIN:  That's correct, Your Honor.

22         THE COURT:  Okay.  Thank you.

23         MR. BUTLER:  Your Honor, what I'd like to do, briefly

24    if I can, to put in the evidentiary record, and there are a

25    number of stakeholders, including both the statutory committees

7

1    and General Motors who would like to be heard briefly on the

2    motion today.

3            THE COURT:  Okay.

4            MR. BUTLER:  What I'd first like to do, Your Honor,

5    is begin with -- in the evidentiary record, is begin with the

6    exhibits.  We have prepared a joint index of exhibits.  There

7    were -- there are ninety-nine of them.  Essentially, the

8    exhibits include the declarations of Mr. Sheehan, Mr. Reznick

9    and Mr. Miller who have provided testimony in support of the

10   motion.  Exhibits number 4 through 11 are the actual

11   transaction documents for Delphi and Appaloosa and we have --

12   for the Appaloosa transaction we have, I'll just point out to

13   Your Honor, put black lines in at Exhibits 12 and 13.  That

14   black-line this against earlier EPGAs received from Appaloosa,

15   particularly number 13 is the black-line against the original

16   EPGA.  We have also, then, at Exhibits 14 through 20, put in

17   the Highland Capital final proposal documents.  We've also

18   black-lined those documents against two earlier EPGAs received

19   from Highland, one on July 1st and one back on January 9th of

20   this year.

21           Documents -- Exhibits number 21 through 44 are a

22   series of exhibits that involve communications and

23   presentations between Highland and Delphi.  And then Exhibits

24   45 through 47 black line and compare the investment proposal,

25   the EPGA, the equity commitment letters and the proposal

8

1    letters between Appaloosa and Highland.  Those black lines were

2    -- the contents of those black lines were reviewed by the board

3    of directors at the July 17th evening meeting and again on July

4    18th with the transaction committee.

5         Documents 48 through 51 are the exhibits that are the

6    presentations by Rothschild, Inc., Delphi's investment banker

7    and strategic financial advisor that were presented to the

8    board of directors on July 16th and 17th of this year.

9         We have included at Exhibits 52 through 58, excerpts

10   from the joint meeting of our Delphi statutory committees

11   dating all the way back to February 7th that outline the

12   evolution of the plan, framework and investment discussions

13   leading up to the board's approval of the current EPGA that's

14   before the Court.

15        Exhibits 59 through 76 are the meetings, some fifteen

16   meetings, of the board of directors that have occurred since we

17   were last before Your Honor on an EPGA during the first six

18   months of this year.

19        Exhibits 77 through 82 are the press releases issued

20   by the company with respect to these matters.  And then just

21   rounding it out, Exhibits 83 through 90 are court documents

22   concerning the original EPGA and the PSA, the planned support

23   agreement.  Just a note here, Your Honor, there is no plan

24   framework support agreement with this EPGA; instead those

25   provisions that were relevant to the plan framework are now

9

1    attached as Exhibit B to this EPGA.  And then finally, at

2    Exhibit 91 through 96 are court documents relating to the

3    current EPGA before the Court and there's some demonstrative

4    exhibits at 97 to 99.

5           We did hold a meet and confer, as requires by the

6    order to show cause, on Monday that was participated in by the

7    statutory committees and by Highland, among others.  And we did

8    serve these exhibits as required by the order to show cause and

9    we have confirmed that there are no parties, that at least

10   we're aware of, that participated in the meet and confer that

11   have any objections to the admission of these matters into

12   evidence.  And therefore, Your Honor, I move the admission of

13   Exhibits 1 through 99.

14          THE COURT:  Okay. Let me just confirm that.  Does

15   anyone object to the admission of these documents into evidence

16   for purposes of this hearing?  Okay.  I will admit them in.

17   (Declarations of Mr. Sheehan, Reznick and Miller were hereby

18   received as joint Exhibits 1-4 for identification, as of this

19   date.)

20   (Transaction Documents was hereby received as joint Exhibits 4-

21   11 for identification, as of this date.)

22   (Black Lined Copies against earlier EPGA were hereby received

23   as joint Exhibits 12-13 for identification, as of this date.)

24   (Highland Capital Proposal Documents were hereby received as

25   joint Exhibits 14-20 for identification, as of this date.)

10

1   (Communications and Presentations between Highland and Delphi

2   were hereby received as joint Exhibits 21-44 for

3   identification, as of this date.)

4   (Black line Investment Proposal were hereby received as joint

5   Exhibits 45-47 for identification, as of this date.)

6   (Presentations by Rothschild, Inc. were hereby received as

7   joint Exhibits 48-51 for identification, as of this date.)

8   (Excerpts from Joint Meeting of Delphi Statutory Committees

9   were hereby received as joint Exhibits 52-58 for

10  identification, as of this date.)

11  (Meetings of Board of Directors were hereby received as joint

12  Exhibits 59-76 for identification, as of this date.)

13  (Press Releases were hereby received as joint Exhibits 77-82

14  for identification, as of this date.)

15  (Court Documents regarding EPGA and PSA were hereby received as

16  joint Exhibits 83-90 for identification, as of this date.)

17  (Court Documents Relating to Current EPGA were hereby received

18  as joint Exhibits 91-96 for identification, as of this date.)

19  (Demonstrative Exhibits were hereby received as joint Exhibits

20  97-99 for identification, as of this date.)

21          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

22  turning to the declarations, and just to briefly run through

23  them, the first declaration that we would have is the

24  declaration of John D. Sheehan, our chief restructuring officer

25  in support of the EPGA.  That -- I've just moved that into

11

1    evidence subject to cross examination.  Mr. Sheehan is in the

2    courtroom, Your Honor, and I would present him to the Court for

3    any questions or for cross examination by any party.

4              THE COURT:  Okay.  I've reviewed the declaration;

5    does anyone wish to cross examine Mr. Sheehan?  Okay, then I'll

6    admit the declaration as a proffer of his testimony.

7              MR. BUTLER:  Thank you, Your Honor.  Your Honor,

8    we've sought to admit, as Exhibit number 2, the declaration of

9    David L. Reznick, from Rothschild, Inc., the company's senior

10   investment banker and I would like to present now, Mr. Reznick,

11   to the Court for any questions from the Court or for cross

12   examination from any party.

13             THE COURT:  Okay.  I've -- I've read Mr. Reznick's

14   declaration and the exhibits that were attached.  Does anyone

15   wish to cross examine him?  All right, then I'll admit that

16   into evidence as well, as his testimony.

17             MR. BUTLER:  And finally, Your Honor, we have in

18   court today the executive chairman of Delphi Corporation, Steve

19   Miller, whose declaration is Exhibit 3 which we've sought to

20   admit into evidence.  And now present him for any questions

21   from the Court or cross examination from any party.

22             THE COURT:  Okay.  And again, I've read Mr. Miller's

23   declaration.  Does anyone wish to cross examine him on it?  All

24   right, then I will, again, admit his declaration as his

25   testimony.

12

1          MR. BUTLER:  Your Honor, that -- the admission of the

2      99 exhibits including the three declarations from the party

3      witnesses are the -- constitute the evidentiary record in

4      support of the EPGA.  We have, in our motion and in our

5      response, detailed along in the declarations -- detailed at

6      some length the basis and the process the company used to go

7      forward and come to the point where the company thought it was

8      appropriate in the best interest of the estate to approve this

9      EPGA and bring it to this Court for approval.  In the -- given

10     that this has done so with the broad support of our statutory

11     committees and General Motors and it has been reviewed with

12     other parties who have had input, including the MDL plaintiffs

13     among others, who are also represented in the courtroom today,

14     Your Honor, I'm going to rely on the papers that we've

15     submitted rather than to make any kind of extended argument

16     today.  I would like, however, to cede the podium to

17     representatives of each of the statutory committees and to

18     General Motors who I know want to make statements.  And then to

19     any other party who wants to make a statement, Your Honor.

20          THE COURT:  Okay.

21          MR. BROUDE:  Good morning, Your Honor.  Mark Broude,

22     Latham and Watkins, LLP on behalf of the Official Committee of

23     Unsecured Creditors.

24          As Mr. Butler has indicated, the creditors committee

25     supports the relief being sought today.  It supports the

13

1    Appaloosa/Delphi investment agreement.  It's the product of

2    long and occasionally difficult negotiations.  And while the

3    parties have not always agreed that they've all worked together

4    cooperatively and in good faith towards what we think is a deal

5    worth pursuing.  And as I said, the committee supports them

6    wholeheartedly.

7            Just one side item, and that is we just -- the

8    members of the committee just want to make clear something

9    which is in the documents but takes some reading to get

10   through.  And that is, what is referred to as the par rights

11   offering in Exhibit B will be conducted on the same time frame

12   as the capital R rights offerings, so they'll both close by the

13   effective date.  But with that clarification, Your Honor, the

14   committee does wholeheartedly support the relief being sought.

15           THE COURT:  Okay.  And actually I have a question for

16   both you and Ms. Steingart that was raised by the -- I guess

17   the revised plan framework that came in the other night.  It

18   contemplates an ability by shareholders to; in essence,

19   purchase the stock that would be otherwise going to the

20   unsecured creditors and GM.

21           MR. BROUDE:  And the UAW, Your Honor.

22           THE COURT:  And the UAW.  Is there going to be -- is

23   there also some -- some election process contemplated for --

24   under the plan for the unsecured creditors to indicate whether

25   they're willing to take cash instead of stock?

14

1          MR. BROUDE:  I think, Your Honor, the way it's set up

2     is that for the roughly 522,000,000 dollars at plan value stock

3     that goes into the par rights offering, that's not an

4     affirmative election by the unsecured creditors.  That's

5     therefore the equity they can either take it or not as they

6     choose.  And so it's more -- it's more their option rather than

7     hours.

8          THE COURT:  All right.  But -- but it would be cash

9     in full.

10         MR. BROUDE:  Yeah, if -- you know, to the extent that

11    it's exercised it will be cash at the plan value, forty-five

12    dollars per share.

13         THE COURT:  And so it would be pro rata cash?

14         MR. BROUDE:  Yes.

15         THE COURT:  Okay.  All right.  That's fine.

16         MS. STEINGART:  Well, it certainly is -- well, good

17    morning, Your Honor.  Bonnie Steingart from Fried Frank on

18    behalf of the equity committee.

19         It certainly is a pleasure to appear before the Court

20    this morning and to be united, both with the other statutory

21    committee and the debtor in seeking the Court's approval of

22    these agreements.  The process has been one where the debtors

23    facilitated the inclusion of the equity committee, facilitated

24    our participation in these negotiations.  As you've heard,

25    those negotiations at some times were lengthy and sometimes

15

1  acrimonious, but they did result in a good faith negotiation

2  and arms length agreement.  And we support that agreement in

3  all its particulars.  Thank you, Your Honor.

4          THE COURT:  Okay.  Thank you.

5          MR. KESSLER:  Good morning, Your Honor.  Michael

6  Kessler, Weil, Gotshal and Manges for General Motors

7  Corporation.

8              General Motors also is supportive of the EPGA and the

9  approval of the motion.  And we're also optimistic that the

10  ultimate confirmation of a plan that would be undertaken by the

11  EPGA will finally come to light.  To be sure, Your Honor, there

12  remains several agreements that are continued under negotiation

13  between General Motors and Delphi that are integral to the

14  overall transaction.  We continue to negotiate those.  We're

15  optimistic that they will be completed within the near future.

16  And indeed we are negotiating sometimes even around the clock

17  to complete those negotiations.

18          THE COURT:  And that's pursuant to the process that

19  was outlined at the last chambers' conference?  That's still

20  the process that's been going on for those negotiations?

21          MR. KESSLER:  I was not at the chambers' conference

22  but I believe you're correct, Your Honor.

23          THE COURT:  Okay.  All right.  Thanks.

24          MR. BUTLER:  Your Honor, we -- in the omnibus reply

25  that we filed yesterday on behalf of the debtors; we filed a

16

1   black-line order that had several changes in it.  I just wanted

2   to briefly summarize them again, on the record, and answer any

3   questions the Court may have.

4          First, there was a finding in the order based on Your

5   Honor's prior -- the prior record and what we believe to be the

6   case, which is this EPGA is not a sub rosa plan and we believe

7   that that finding is supported by the record now, the

8   evidentiary record that's before the Court.

9          In paragraph 3 of the order, we also wanted to make

10  it very clear, that the debtors and plan investors have an

11  amendment right.  That amendment right is -- part of that

12  amendment right is already in the EPGA that underlies the --

13  the approval order.  But that we would have the right to make

14  amendments that aren't material to the investment agreements or

15  such other amendments that haven't been objected to by the

16  creditors or equity committee, assuming they have -- they get

17  five business days prior notice or agree to a shorter period of

18  time.

19          THE COURT:  On that point, are you going to give them

20  the committees notice of -- of all the amendments?

21          MR. BUTLER:  Yes, Your Honor.

22          THE COURT:  Okay.

23          MR. BUTLER:  We'll be -- we'll provide them -- we're

24  working pretty closely with the committees and they'll be

25  advised of all the changes.  But the -- we either consent only

17

1    if the -- there's not objection only if it's a material change.

2         THE COURT:  Right.

3         MR. BUTLER:  And I should just say, Your Honor, and I

4    think it's clear from the record here that has been made.  But

5    Exhibit B to the EPGA and the EPGA itself has a number of -- a

6    lot of numbers in it that relate to share allocations and so

7    forth.  Those numbers, ultimately, are going to change as we

8    get the final business plan in place and we sort out the actual

9    number of shares to be issued that were relative -- sharing

10   arrangements, if you will, that have been negotiated, or the

11   absolute dollar amounts are not going to change.  But the --

12   there are going to be changes to the numbers throughout the

13   document, for example, as we get the mechanics worked out on

14   how to fully implement this.

15        The other change we made, which is the -- the two

16   other changes we made, is clearly if -- if this is not a sub

17   rosa plan, as the debtors maintain that it is not and I don't

18   think it clearly is not, then the flip side of that coin is

19   that no one -- nothing in the order should limit the rights of

20   any party in interest to object or present evidence and so

21   forth at a confirmation hearing with respect to other legally

22   cognizable objections to confirmation.  We're asked to make

23   that clear in the order and so we added a paragraph to do that,

24   a paragraph 7.

25        And then finally, in our original motion we had asked

18

1   for relief under rule 6004(g), nobody objected to that and so

2   we've added that sentence to the order of that provision, if

3   Your Honor doesn't have a problem with it.  Those are the only

4   changes to the order that was originally filed, Your Honor.

5          THE COURT:  Okay.  All right.  Does anyone else have

6   anything to -- to say?  All right.  I will approve the debtor's

7   entry into the EPGA and the pursuit of all the related

8   transactions.  The order, as revised, is fine with me.  Clearly

9   this is not a sub rosa plan but rather is an extremely

10  important step that would enable the debtors to confirm a plan

11  if such a plan met all the confirmation requirements of the

12  code.

13         For the same reason, I'm comfortable in ordering that

14  the ten day period, under Rule 6004(g) is waived accordingly.

15  First, because of the consensual nature of this motion and

16  second because it's clear that one of the benefits of this

17  transaction and one of the reasons it's wholly consensual is

18  that the debtor now intends to move expeditiously to get a plan

19  confirmed and to take all the related steps, including

20  preparing and filing registration statements and the like, and

21  there's no reason, given the consensual nature of this relief,

22  to slow down that process.  So that order will get entered

23  today.

24         MR. BUTLER:  Your Honor, thank you very much.  That

25  concludes the matters on today's agenda.

19

1        THE COURT:  Okay.  Thank you very much.

2     (Proceedings concluded at 10:23 AM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20

1              **I N D E X**

2             **E X H I B I T S**

3   OTHER'S              DESCRIPTION          PAGE

4   1-4                  Declarations of Mr.  9

5                        Sheehan, Mr. Reznick

6                        and Mr. Miller

7   77-82                Press Releases       10

8   83-90                Court Documents      10

9                        regarding EPGA and

10                       PSA

11  91-96                Court Documents      10

12                       Relating to

13                       Current EPGA

14  97-99                Demonstrative        10

15                       Exhibits

16  4-11                 Transaction          9

17                       Documents

18  12-13                Black Lined Copies   9

19                       Against earlier

20                       EPGA

21  14-20                Highland Capital     9

22                       Proposal Documents

23

24

25

21

1    **Exhibits (cont.)**

2

3    **21-44**              Communications and   10

4                          Presentations

5                          between Highland

6                          and Delphi

7    **45-47**              Black line           10

8                          Investment

9                          Proposal

10   **48-51**              Presentations by     10

11                         Rothschild, Inc.

12   **52-58**              Excerpts from        10

13                         Joint Meeting of

14                         Delphi Statutory

15                         Committees

16   **59-76**              Meetings of Board    10

17                         of Directors

18

19                              RULINGS

20                         Page     Line

21   **Approval of Debtor's**     18      7

22   **Entry into EPGA**

23   **Ten day Period**          18      14

24   **Under 6004(g) Is Waived**

25

22

**C E R T I F I C A T I O N**

I, Pnina Eilberg, court approved transcriber, certify that the

foregoing is a correct transcript from the official electronic

sound recording of the proceedings in the above-entitled

matter.


_____  August 5, 2007

Signature of Transcriber                   Date


Pnina Eilberg

typed or printed name