KIRKPATRICK & LOCKHART　　　　　　　　　　　　Hearing Date: December 6, 2007
PRESTON GATES ELLIS LLP　　　　　　　　　　　　　　　　　　　　10:00 A.M.
Edward M. Fox, Esq. (EF1619)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:　　　　　　　　　　　　　　　　:　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　:　　　　Case No. 05-44481 (RDD)
DELPHI CORPORATON, *et al.*,　　　　　:　　　　(Jointly Administered)
　　　　　　　　　　　　　　　　　　　:
　　　Debtors.　　　　　　　　　　　　:
--------------------------------------------------------X

**SECOND SUPPLEMENTAL OBJECTION OF WILMINGTON TRUST COMPANY, AS
INDENTURE TRUSTEE, TO MOTION FOR ORDER APPROVING (I) DISCLOSURE
STATEMENT, (II) RECORD DATE, VOTING DEADLINE, AND PROCEDURES FOR
TEMPORARY ALLOWANCE OF CERTAIN CLAIMS, (III) HEARING DATE TO
CONSIDER CONFIRMATION OF PLAN, (IV) PROCEDURES FOR FILING
OBJECTIONS TO PLAN, (V) SOLICITATION PROCEDURES FOR VOTING ON
PLAN, (VI) CURE CLAIM PROCEDURES, (VII) PROCEDURES FOR
RESOLVING DISPUTES RELATING TO POSTPETITION
INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES**

　　　　Wilmington Trust Company ("WTC"), as indenture trustee for the senior notes

and debentures (the "Senior Debt") in the aggregate principal amount of $2 billion issued by

Delphi Corporation ("Delphi"), by and through its attorneys, Kirkpatrick & Lockhart Preston

Gates Ellis LLP, hereby files this second supplemental objection to the Motion for Order

Approving (i) Disclosure Statement, (ii) Record Date, Voting Deadline, and Procedures for

Temporary Allowance of Certain Claims, (iii) Hearing Date to Consider Confirmation of Plan,

(iv) Procedures for Filing Objections to Plan, (v) Solicitation Procedures for Voting on Plan, (vi)

Cure Claim Procedures, (vii) Procedures for Resolving Disputes Relating to Postpetition Interest,

NY-570978 v1

and (viii) Reclamation Claim Procedures (the "Motion")[1] filed by Delphi and its debtor subsidiaries and affiliates (collectively, the "Debtors"), insofar as it relates to the First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Amended Disclosure Statement"), changed pages of which were filed with the Court most recently on December 3, 2007, stating as follows:

## PRELIMINARY STATEMENT

1.    The Debtors' Amended Disclosure Statement continues to lack "adequate information" within the meaning of 11 U.S.C. § 1125(a) for the reasons set forth in WTC's previously-filed objections to the Motion (collectively, the "Prior Objections"),[2] which remain unresolved and outstanding, and for all of the additional reasons set forth below.

2.    Consequently, the Motion should be denied.

## FACTUAL BACKGROUND

3.    On October 8, 2005 (the "Petition Date"), Delphi Corporation and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code"). Since the Petition Date,

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.B of the Debtors' proposed plan as amended by amendments filed November 14, 2007 (the "Plan").

[2] See Objection of Wilmington Trust Company, as Indenture Trustee to Motion for Order (I) Approving Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to the Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures **(Docket No. 10810)** and Supplemental Objection of Wilmington Trust Company, as Indenture Trustee to Motion for Order (I) Approving Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to the Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures **(Docket No. 11048)**.

the Debtors have continued to operate their businesses and remained in possession of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankrupcty Code.

4. On August 6, 2007, the Court entered an Order Scheduling Non-Omnibus Hearing on Debtors' Motion to Approve Solicitation Procedures and Disclosure Statement (the "Scheduling Order"), which provided, among other things, that if the Debtors were to file a disclosure statement (the "Disclosure Statement") on or prior to September 6, 2007, the Court would hold a hearing on approval of the same on October 3, 2007.

5. In accordance with the Scheduling Order, on September 6, 2007, the Debtors filed their Disclosure Statement, together with the Motion, which sought entry of an order: (i) approving the Disclosure Statement pursuant to 11 U.S.C. § 1125; and (ii) establishing various solicitation procedures and filing deadlines prior to an anticipated hearing on confirmation of the Debtors' proposed plan on November 19, 2007.

6. Subsequently, during an omnibus hearing held on September 27, 2007, the Debtors announced that while they intended to commence a hearing with respect to the Disclosure Statement on October 3, 2007, they did not expect to request approval of the Disclosure Statement on that date. Instead, the Debtors indicated that, due to conditions in the capital markets and continuing negotiations with their various creditor constituencies, the Disclosure Statement would not be finalized and ready for approval until sometime later in October 2007.

7. On October 19, 2007, the Court entered a Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (B) Setting Hearing Date and Related Procedures for Potential Motions Amending Investment Agreement and Approving Certain Exit Financing

Agreements, which, among other things, established November 8, 2007 as the date for a continued hearing on approval of the Debtors' Disclosure Statement.

8.  On October 29, 2007, the Debtors filed their Notice of Potential Amendments to Debtors' Disclosure Statement With Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors, and Debtors-In-Possession and Certain Appendices and Exhibits Related Thereto.

9.  On November 2, 2007, WTC filed its Objection to Motion for Order (I) Approving Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to the Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Cliam Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures.

10.  On November 16, 2007, pursuant to the Second Supplemental Order (a) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (b) Setting Hearing Date and Related Procedures for Motion to Amend Investment Agreement dated November 7, 2007, the Debtors filed a Notice of Further Proposed Amendments to Debtors' Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession.

11.  On November 21, 2007, WTC filed its Supplemental Objection to Motion for Order (I) Approving Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to the Plan, (V) Solicitation

Procedures for Voting on Plan, (VI) Cure Cliam Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures.

12.  On December 3, 2007, pursuant to the Third Supplemental Order (a) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitation Procedures Motion and (b) Setting Hearing Date and Related Procedures for Motion to Amend Investment Agreement dated November 30, 2007, the Debtors filed a second Notice of Further Proposed Amendments to Debtors' Disclosure Statement with Respect to Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession.

**THE AMENDED DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION**

13.  The Amended Disclosure Statement may only be approved if it is found to contain "adequate information" regarding the Debtor's Plan. "Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and of the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan….

11 U.S.C. § 1125(a)(1) (2004).  Thus, the Amended Disclosure Statement may not be approved unless and until it contains information sufficient to permit the Debtors' creditors to "make an intelligent and informed decision as to whether to accept or reject the plan."  In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); In re Ferretti, 128 B.R. 16, 19 (Bankr. D. N.H. 1991) ("[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

14.  The Amended Disclosure Statement should also provide creditors with meaningful information regarding "the consequences of the proposed plan on their claims and

the possible Code alternatives so that they can intelligently accept or reject the Plan." In re Copy Crafters Quickprint, Inc., 92 B.R. at 981.

15. As explained below, the Debtors' Amended Disclosure Statement lacks adequate information regarding a number of issues that are critical to creditors' ability to make an intelligent and informed evaluation of the Plan. The Motion must therefore be denied.

16. WTC repeats and reiterates the objections set forth in its Prior Objections since the issues raised in the Prior Objections have not been addressed adequately in the Amended Disclosure Statement and the objections raised in the Prior Objections apply with equal force to the Amended Disclosure Statement.

17. In addition to the issues raised by the Prior Objections, WTC has identified a number of specific objections to the language of the Amended Disclosure Statement, which are set forth below, together with proposed corrective language to the extent practicable.

**SPECIFIC ADDITIONAL OBJECTIONS AND PROPOSED LANGUAGE CHANGES TO THE AMENDED DISCLOSURE STATEMENT[3]**

18. Page DS-xii, G, Events Impacting Reorganization:

- The Debtors state that they believe that "the recoveries afforded to all stakeholders under the Plan are the best recoveries available." Given the possibility that particular creditor constituencies, including the Senior Debt, could recover more under other scenarios or in the event the credit markets ease, the phrase "at this time" should be added at the end of the first sentence after "recoveries available" and before the period.

- The Debtors' statement that "the Plan continues to provide for full recoveries for unsecured creditors at Plan value" is misleading. The concept of "Plan value" is never clearly explained and could lead creditors to believe that they are being paid in full when, based on Rothschild's midpoint valuation, they will receive only an 89.2% recovery. In order to avoid any confusion on this issue, the Debtors should add after "for unsecured creditors at Plan Value" the following:

---

[3] WTC provided these proposed language changes to counsel for the Debtors by email on December 4, 2007, but has not, as of yet, received any assurances from the Debtors that its requests will be honored.

- 6 -

> **", a negotiated enterprise value of $13.3 billion ("Plan Value")
> for the Debtors, which is $600 million higher than the $12.7
> billion midpoint valuation (the Midpoint Valuation") of the
> Debtors' enterprise value as determined by the Debtors'
> financial advisors, and which may not be equivalent to the
> Debtors' actual enterprise value.  At the Midpoint Valuation,
> unsecured creditors will receive a recovery equal to 89.2% of
> their allowed claims. The Plan also provides. . . ."**

19.     Page DS – xiv:  In the penultimate line, "will" should be changed to "may" because the so-called "event risks" are not certain to occur, and should not be used to overstate the urgency of a prompt resolution of this Chapter 11 case.

20.     Page DS – xv:  The chart of "event risks," which begins on this page and carries over to page DS – xvi, is misleading and inaccurate in several respects, and should be amended as follows:

> **December 31, 2007:**
>
> <u>UAW MOU Event:</u> This item should be deleted.  If the Disclosure Statement is approved and solicitation commences before December 31, 2007, the Benefits Guarantee is automatically extended to March 31, 2008.  Consequently, by definition, this event risk either cannot occur after the Disclosure Statement is delivered to creditors or will already have occurred before the Disclosure Statement is delivered to creditors.
>
> <u>Exclusivity:</u> This item should be deleted.  The Debtor has already filed a plan and now has additional time to solicit acceptances.  Moreover, by definition, this event risk can not occur after the Disclosure Statement has been delivered to creditors and solicitation has begun because, at that point, the Debtors have additional time to solicit acceptances and no party other than the Debtor can file a

plan during that additional period of time. In addition, the expiration of exclusivity has no impact on enterprise value.

<u>First IRS Pension Funding Waiver Term:</u> This item should be deleted. The Debtor has already filed a plan so the condition has already been satisfied. Moreover, by definition, this event risk cannot occur after the Disclosure Statement has been delivered to creditors and solicitation has begun because, at that point, the Debtors will have satisfied the condition to file a Plan and will be soliciting acceptances.

**January 31, 2008:**

<u>EPCA Termination Event:</u> This item should be deleted. The Debtor has already filed a Disclosure Statement so the condition has already been satisfied. Moreover, by definition, this event risk cannot occur after the Disclosure Statement has been delivered to creditors and solicitation has begun because, at that point, the Debtors will have satisfied the condition to file a Disclosure Statement and will be soliciting acceptances.

**February 29, 2008:**

<u>First IRS Pension Funding Waiver Term:</u> This item should be deleted. It has been superseded by the Second Funding Waiver.

<u>Second IRS Pension Funding Waiver Term:</u> At the end of this item, the Debtors should add the following:

"The Debtors have already been able to obtain two funding
waivers. The Debtors have not yet requested a third funding waiver
but have no reason to believe that a third funding waiver would not
be granted."

March 31, 2008:

- 8 -

> UAW MOU Event.
>
> UAW MOU Potential Right to Strike.

These two items should be combined because a UAW MOU Event, which is simply the expiration of the Benefits Guarantee, in and of itself, does not harm the Debtors' estates absent a reduction in benefits which could trigger a strike. Moreover, the following should be added after the combined section: "Delphi has not asked GM or the UAW to agree to an extension of the Benefits Guarantee beyond March 31, 2008 but is not aware of any reason why they would not agree to such an extension. Moreover, because the UAW holds an allowed claim in the amount of $140 million and GM has an interest in avoiding a strike against itself or Delphi, it would be in both the UAW's and GM's interests to agree to such an extension."

> EPCA and GSA Termination Events
>
> GSA Termination Events
>
> April 30, 2008 and June 30, 2008 events

The following statement should be added after each of these event risks: "The Debtors have not requested an extension of the date of this event but are not aware of any reason why such a request would not be granted."

21.   Page DS – xvii:  The second full paragraph, second sentence:

- the Debtors' unqualified statement that creditors "will receive 100% of the value of their claims (and applicable postpetition interest through the earlier of January 31, 2008 and the Confirmation Date)" is misleading.  Following the quoted language, the Debtors should add the words "at Plan Value," and should also add the following additional language to clarify the likely value of the consideration being provided: "At Midpoint Valuation, the recovery to Unsecured Creditors will be 89.2% of the value of their claims."

- At the end of the second full paragraph, the Debtors should add the following language to explain the ramification of the fact that the Plan deems the subordination provisions of the TOPrS Indenture to be satisfied:

    "Under the Plan, holders of General Unsecured Claims will not be permitted to recover from the distribution to holders of TOPrS the 10.8% of their claim which will remain unpaid at Midpoint Valuation."

22.  Page DS – xviii:  The last sentence of the first full paragraph, which presently begins "The resolution of this litigation . . ." is misleading and should be deleted. To the extent it is not deleted, it should be revised to read as follows:

    "The failure of the Debtors to resolve this litigation would have no affect on the recoveries of General Unsecured Creditors because any recoveries in the class action litigation would be equitably subordinated under the provisions of the Bankruptcy Code to the recoveries of the General Unsecured Creditors. The failure of the Debtors to resolve this litigation could have an effect on the recoveries of holders of TOPrS and of Equity Interests, however."

23.  Page DS – xix:  At the end of the first full paragraph, the Debtors should add the words "and due to the fact that, at Midpoint Valuation, the recovery to General Unsecured Creditors is only 89.2% of par plus accrued."

24.  Page DS – xx:

- The Debtors should amend the projected recoveries chart to indicate whether the valuations are fully diluted after taking account of (1) emergence bonus costs, (2) the 10% of equity to be set aside for the management compensation plan and (3) potential additional allowed claims of up to $1.45 billion. In addition, the "Implied Percent of Par Plus Accrued Recovery For Holders of General Unsecured Claims" in the last row of the chart fails to indicate the amount of General Unsecured Claims used for the calculations. Because General Unsecured Claims range from $3.26 billion to $3.69 billion (presumably not including the potential additional $1.45 billion of additional allowed claims) plus an additional $397 million in interest, the percentage recoveries in each column must show a range of recoveries based on the range of allowed claims.

- In the first sentence of the first full paragraph on page DS-xx, the Debtors should add the phrase "or the agreed-upon value" after the phrase "intrinsic value" in the third line.

- 10 -

25. Page DS – xxi: The Debtors should add the following language to the beginning of the second sentence of the first full paragraph : "The Midpoint Valuation of $12.7 billion is $600 million lower than the Plan Value of $13.3 billion on which recoveries under the Plan are based and . . ."

26. Page DS—xxi: The "Rights Offering"

- This section should begin with the following in large type and bold letters:

    **UNDER THE PLAN, 22.7% OF THE RECOVERY TO GENERAL UNSECURED CREDITORS IS IN THE FORM OF DISCOUNT RIGHTS TO PURCHASE ADDITIONAL STOCK OF THE DEBTORS AT A DISCOUNT. THESE DISCOUNT RIGHTS MUST BE EXERCISED, OR SOLD TO SOMEONE ELSE AND EXERCISED BY THE PURCHASER, ON OR BEFORE _____, 2008 OR THEY WILL EXPIRE AND BE WORTHLESS. CREDITORS SHOULD BE PREPARED TO EITHER EXERCISE, OR SELL, THEIR DISCOUNT RIGHTS IMMEDIATELY UPON RECEIPT THEREOF.**

- This same language should also be placed on the first page of the Disclosure Statement or on the first page of the Executive Summary.

- The first full paragraph in the Rights Offering section should also explain that General Unsecured Creditors who sell their Discount Rights will not receive full value for their rights unless they are able to sell them to a purchaser who believes the Debtors' enterprise value exceeds Plan Value of $13.3 billion.

27. Page DS – xxviii: The chart describing the treatment of general unsecured claims should be amended. The third sentence in the "Treatment Under Plan" column should be deleted as it contradicts the information that should be provided concerning the treatment of the General Unsecured Claims. The bold-faced description of the Estimated Percentage Recovery should show recovery percentages based on the Low End, Midpoint, Plan Value and High End percentages set forth in the chart on page DS - xx. Each recovery percentage should also be a range based on the low and high estimate of allowed claims, taking into account the issues raised in paragraph 24 above with respect to the chart on Page DS - xx.

- 11 -

28. Page DS – 179: The First Sentence of the third full paragraph should be amended to read in its entirety: "Holders of Allowed General Unsecured Claims will receive New Common Stock and Discount Rights equal to 100% at Plan Value and 89.2% at Midpoint Valuation of such holders' Allowed General Unsecured Claims . . . ."

29. Page DS – 180: In the last full paragraph, the first sentence should be revised to read as follows: "Although at Midpoint Valuation Senior Debt will receive a recovery of 89.2% of par plus accrued postpetition interest, Senior Debt is deemed under the Plan to be paid in full at Plan Value and the subordination provisions of the TOPrS Indenture are, therefore, deemed satisfied under the Plan."

30. In the absence of these clarifying changes, WTC respectfully submits that the Amended Disclosure Statement lacks adequate information, and cannot be approved.

WHEREFORE, WTC respectfully requests the Court to enter an order: (i) denying the Motion to approve the Debtors' Amended Disclosure Statement unless and until it is supplemented with adequate information of the kind discussed herein and in WTC's Prior Objections; (ii) directing the Debtors to reclassify the Senior Debt and the TOPrS Claims in, and to vote in, different classes; and (iii) granting such other and further relief as this Court deems just.

Dated: New York, New York
December 5, 2007

Respectfully submitted,

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP

By: _/s/ Edward M. Fox_
    Edward M. Fox (EF1619)
    A Member of the Firm
Attorneys for Wilmington Trust Company, as
Indenture Trustee and Agent for Indenture Trustee
599 Lexington Avenue
New York, NY 10022
(212) 536-3900