Hearing Date & Time:  December 6, 2007 at 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
George N. Panagakis (GP 0770)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
        In re                                 :        Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :        Case No. 05-44481 (RDD)
                                              :
                        Debtors.              :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' (1) OMNIBUS REPLY TO OBJECTIONS TO DELPHI-APPALOOSA
INVESTMENT AGREEMENT AMENDMENT MOTION AND (2) RESPONSE
TO EQUITY COMMITTEE'S EMERGENCY MOTION TO ADJOURN HEARING

Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this omnibus response (the "Reply") to (1) respond to the objections timely filed to the Debtors' Expedited Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), And 507(a) Authorizing And Approving Amendment To Delphi-Appaloosa Equity Purchase And Commitment Agreement (Docket No. 10760), dated October 29, 2007 (the "EPCA Amendment Motion" or "Motion") and (2) oppose the Equity Committee's motion to adjourn the hearing on the EPCA Amendment Motion (the "Adjournment Motion").  Pursuant to paragraph 2 of the Third Supplemental Disclosure Statement And Investment Agreement Procedures Order dated November 7, 2007 (the "Third Supplemental Procedures Order") (Docket No. 11198), the hearings on the EPCA Amendment Motion and the Adjournment Motion were adjourned from November 29, 2007 to December 6, 2007 at 10:00 a.m.

The Statutory Committees now support the Motion but have not formally withdrawn their objections.  Including the Statutory Committees, there are six objectors (the "Objectors") to the EPCA Amendment Motion.[1]

(a)    The Official Committee of Unsecured Creditors (the "Creditors' Committee" or "UCC") now supports the Motion but has not formally withdrawn its (1) Objection To The Expedited Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) And 507(a) Authorizing And Approving Amendment To Delphi-Appaloosa Equity Purchase And Commitment Agreement (Docket No. 10805), filed on November 2, 2007, or (2) Objection To The Expedited Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b)

---

[1]    In addition, "Lead Plaintiffs" – Teachers' Retirement System Of Oklahoma, Public Employees' Retirement System Of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting Pensioenfonds ABP, the court-appointed lead plaintiffs in the consolidated securities class action entitled In re Delphi Securities Litigation, Master Case No. 05-md-1725 (GER) (E.D. Mich.) – also filed on November 2, 2007 their Limited Objection To Debtors' Motion For Order, Inter Alia, Approving And Authorizing The Entry Into The Equity Purchase And Commitment Agreement Amendment (Docket No. 10796).  Lead Plaintiffs did not file a supplemental objection to the EPCA Amendment Motion on November 21, 2007, and the Debtors believe they have resolved Lead Plaintiffs' Limited Objection.

And 507(a) Authorizing And Approving Amendment To Del-
phi-Appaloosa Equity Purchase And Commitment Agreement Filed On
November 14, 2007 (Docket No. 11037), filed on November 21, 2007.[2]

(b)     The Official Committee of Equity Security Holders (the "Equity Commit-
tee") now supports the Motion but has not formally withdrawn its (1) Ob-
jection To Debtors' Expedited Motion For Order Under 11 U.S.C. §§ 105(a),
363(b), 503(b) And 507(a) Authorizing And Approving Amendment To
Delphi-Appaloosa Equity Purchase And Commitment Agreement (Docket
No. 10799), filed on November 2, 2007, or (2) Supplemental Objection To
Debtors' Expedited Motion For Order Under 11 U.S.C. §§ 105(a), 363(b),
503(b) And 507(a) Authorizing And Approving Amendment To Del-
phi-Appaloosa Equity Purchase And Commitment Agreement (Docket No.
11032), filed on November 21, 2007.

(c)     An ad hoc committee of bondholders represented by Goodwin Proctor LLP
(the "Bondholders"), currently comprised of Caspian Capital Advisors,
LLC; Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC;
Davidson Kempner Capital Management LLC; Elliott Associates, L.P.;
Nomura Corporate Research & Asset Management, Inc.; Sailfish Capital
Partners, LLC; and Whitebox Advisors, LLC, filed (1) on November 2,
2007, its Objection To Expedited Motion For Order Under 11 U.S.C. §§
105(a), 363(b), 503(b) And 507(a) Authorizing And Approving Amend-
ment To Delphi-Appaloosa Equity Purchase And Commitment Agreement
(Docket No. 10800) and (2) on November 21, 2007, its Supplemental And
Restated Objection To Expedited Motion For Order Under 11 U.S.C. §§
105(a), 363(b), 503(b) And 507(a) Authorizing And Approving Amend-
ment To Delphi-Appaloosa Equity Purchase And Commitment Agreement
(Docket No. 11036).[3]

(d)     Wilmington Trust Company, as indenture trustee ("Wilmington Trust"),
filed on November 21, 2007 its Objection To Expedited Motion For Order
Under 11 U.S.C. §§ 105(a), 363(b), 503(b) And 507(a) Authorizing And
Approving Amendment To Delphi-Appaloosa Equity Purchase And Com-
mitment Agreement (Docket No. 11040).

---

[2]     As set forth by the Debtors in the December 3, 2007 Further Proposed Disclosure Statement Amend-
ments Notice, "the Creditors Committee has reserved the right to pursue its objection at the approval
hearing on December 6, 2007 with respect to Plan Exhibit 7.11 as it relates to the amount of the cash
interest rate cap established in Section 9(a)(xx) thereof."  (Docket No. 11220 ¶ 6.)

[3]     Gradient Partners, L.P. previously joined the Bondholders' Objection but does not join the current
supplemental and restated Objection.  CR Intrinsic Investors, LLC and Nomura Corporate Research &
Asset Management, Inc. join the supplemental and restated Objection but did not join the prior Ob-
jection dated November 2, 2007.

(e)     The Committee of Delphi Trade Claim Holders (the "Ad Hoc Trade Com-
mittee") filed on November 21, 2007 its Objection To The Debtors' Expe-
dited Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) And
507(a) Authorizing And Approving Amendment To Delphi-Appaloosa
Equity Purchase And Commitment Agreement (Docket No. 11042).

(f)     The International Union of Electronic, Electrical, Salaried, Machine and
Furniture Workers, Communications Workers of America ("IUE-CWA")
filed on November 21, 2007 its Objection To The Expedited Motion For
Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) And 507(a) Authorizing
And Approving Amendment To Delphi-Appaloosa Equity Purchase And
Commitment Agreement (Docket No. 11013).[4]

A chart summarizing the above referenced objections (the "Objections") on the basis of the issue

raised and the Debtors' corresponding response is attached hereto as Exhibit A.

In addition, the following documents were filed in support of the Adjournment

Motion:

(a)     The Equity Committee filed on November 2, 2007 its Emergency Motion
To Adjourn The Hearing On, And Fix A New Time To Object To, (A) The
Debtors' Motion For Order Approving (I) Disclosure Statement, (II) Record
Date, Voting Deadline, And Procedures For Temporary Allowance Of
Certain Claims, (III) Hearing Date To Consider Confirmation Of Plan, (IV)
Procedures For Filing Objections To Plan, (V) Solicitation Procedures For
Voting On Plan, (VI) Cure Claim Procedures, (VII) Procedures For Re-
solving Disputes Relating To Post-Petition Interest, (VIII) Reclamation
Claims Procedures And (B) The Debtors' Expedited Motion For Order
Under 11 U.S.C. §§ 105(a), 363(b), 503(b), And 507(a) Authorizing And
Approving Amendment To Delphi-Appaloosa Equity Purchase And
Commitment Agreement (Docket No. 10795).

(b)     Brandes Investment Partners, L.P. filed on November 2, 2007 its Statement
In Support Of Emergency Motion Filed By The Official Committee Of
Equity Security Holders (Docket No. 10807).

Although the Debtors do not expect the Equity Committee to prosecute the Adjournment Motion

in light of its decision to support the Motion, the Court's prior adjournment to November 29, 2007

---

[4]     Wilmington Trust, the Ad Hoc Trade Committee, and the IUE-CWA did not file objections to the
EPCA Amendment Motion on November 2, 2007.  Rather, they first objected to the Motion on No-
vember 21, 2007.

of the hearing on the Adjournment Motion was expressly "without prejudice to the rights of the

Equity Committee to supplement the Adjournment Motion, or the rights of any party-in-interest to

seek a further adjournment" on or before the November 21, 2007 objection deadline.  (See Docket

No. 10864 ¶ 2 n.5.)  No party-in-interest filed further documents in support of the Adjournment

Motion under this reservation of rights.[5]  The Third Supplemental Procedures Order further pro-

vides that the Court will entertain a request to adjourn the December 6, 2007 hearings if the

Debtors do not satisfy the filing deadlines specified therein.  (See Docket No. 11198 ¶ 7.)  With the

filing of this Reply, the Debtors have met all of the applicable deadlines in the Third Supplemental

Procedures Order.

<u>Preliminary Statement</u>

1.    The Debtors were frustrated and disappointed that they had to accept a steep

increase in the cost of the Plan Investors' investment in connection with the Restated First

Amendment to the Delphi-Appaloosa EPCA (the "November 14 EPCA Amendment").  They were

also mindful of the parties' discussion with the Court at the November 16, 2007 hearing in con-

nection with the Debtors' exit financing regarding the progress of this case and the November 14

EPCA Amendment.  Thereafter, the parties engaged in a new round of negotiations that led to the

filing on December 3, 2007 of the Second Restated First Amendment to the Delphi-Appaloosa

EPCA (the "December 3 EPCA Amendment") that now forms the basis for the Motion.  Because it

specifies higher buy-in prices for the Plan Investors' investments and additional give backs from

GM and other constituents, the December 3 EPCA Amendment provides the Debtors' estates su-

perior economic terms as compared to those specified in the November 14 EPCA Amendment.

---

[5]    Law Debenture Trust Company of New York ("Law Debenture") is not an Objector to the Motion but
did file an untimely "Joinder" to the Adjournment Motion on November 29, 2007, presumably in
connection with its objection to the Disclosure Statement.  (See Docket No. 11161.)

Furthermore, the parties largely rebuilt the consensus that they previously achieved in connection with the Delphi-Appaloosa EPCA, as the Creditors' Committee and the Equity Committee support the December 3 EPCA Amendment.

> 2.    Notwithstanding these improvements, however, the economic terms of the December 3 EPCA Amendment remain less favorable to the Debtors than the those contained in the Delphi-Appaloosa EPCA this Court approved on August 2, 2007, and certain Objectors who did not oppose the Delphi-Appaloosa EPCA remain opposed to the December 3 EPCA Amendment.  For these reasons, it is important to focus on the factors affecting the complexity and the impact of the business judgment being made here.  The Debtors believe that the following facts relevant to that judgment either are undisputed by the parties or cannot reasonably be disputed.

- When the Debtors filed their Disclosure Statement and Plan of Reorganization on September 6, 2007, the Plan Investors reserved their rights with respect to approval of Material Investment Documents. Thus, the Plan Investors maintain their approval rights (albeit generally qualified by a materiality standard) over the Disclosure Statement, the Plan, the GM settlement, and the Disclosure Letter, among other things.

- The September 6 Plan is premised on the Debtors' obtaining $7.1 billion in exit financing, but the Debtors currently are unable to secure such financing.  Instead, the Debtors are working to obtain $5.2 billion in exit financing, comprised of a $3.7 billion first lien exit financing facility and a $1.5 billion second lien exit financing facility (up to $750 million of which will be issued to GM). Therefore, there is a serious question whether the Debtors can satisfy the financing condition contained in Section 9(a)(xix) of the Delphi-Appaloosa EPCA.

- Even if the Debtors could meet all of the conditions to the Plan Investors' obligations, the Delphi-Appaloosa EPCA expressly caps the Plan Investors' liability for breach thereof at $100 million prior to approval of the Disclosure Statement, and there is no specific performance provision.  Thus, an attempt to "enforce" the Delphi-Appaloosa EPCA against the wishes of the Plan Investors, even

if successful, would yield a maximum recovery of $100 million to the estates. [6]

- The credit markets are at their most difficult in a decade and, equally important, equity investors are also abandoning large numbers of previously-negotiated deals based on the credit market dislocations.[7]

- Especially given the state of the credit markets, the Debtors need a plan investor to emerge from chapter 11 and protect the value of the estates that has been achieved through the Debtors' transformation plan.

- No Objector asserts that that the Debtors have done anything other than an exemplary job in formulating their transformation plan and accomplishing its major goals, without which the value in these estates would not approach its current level.  (See, e.g., Letter from D. Daigle to Delphi Board of Directors dated Nov. 13, 2007 (Docket No. 10933 at Ex. B, p. 3) ("Through tremendous effort, the Debtor has achieved all that it can from the restructuring of its business, the negotiation of new labor arrangements, and the re-alignment of its relationship with GM."))

- The Plan Investors contemplate making up to a $2.55 billion equity investment, and GM contemplates contributing value to Delphi's reorganization, net of recoveries, in the range of $7 billion.  (See GM Form 10-Q dated Nov. 8, 2007 at pp. 21, 87.)  In order to realize the benefits from the accomplishments in these chapter 11 cases, the Debtors need the substantial support GM and the Plan Investors are prepared to provide.

3.      In the context of the significant value that has been created through implementation of the transformation plan, the risks to that value that will be caused by delay, and the continuing dislocations in the credit markets, the Debtors have determined in their business

---

[6]   Section 11(b)(w) of the Delphi-Appaloosa EPCA expressly provides that "the aggregate liability of all of the Investors under this Agreement for any reason (under any legal theory), including for any willful breach, for any act or omission occurring on or prior to the Disclosure Statement Approval Date shall not exceed $100 million."  This provision is essentially a carryover from the Original EPCA that was negotiated by Cerberus.  In its recently announced decision not to close the United Rentals deal, a Cerberus affiliate relied on a similar clause to claim a right to pay a $100 million reverse break up fee and walk away from the transaction.  (See Letter from RAM Holdings, Inc. to United Rentals, Inc. dated Nov. 14, 2007 (attached as Ex. 2 to United Rentals Inc. From 8-K dated Nov. 14, 2007).)

[7]   A chart displaying selected transactions that have failed to close according to public reports is attached hereto as Exhibit B.

judgment that the benefits of moving forward with the Plan Investors and the Debtors' current timeline for emergence far outweigh the negative changes to the economic terms of the Delphi-Appaloosa EPCA that are proposed in the December 3 EPCA Amendment.

<u>Background</u>

4.      In August 2006, GM and the Creditors' Committee left the negotiating table following a handshake agreement on a par plus accrued recovery for creditors at a negotiated plan value.  The September 6, 2007 Plan was the culmination of the Debtors' pursuit of that path.  The September 6, 2007 Plan was premised on agreement among the Creditors' Committee, the Equity Committee, and GM on a structure in which (a) GM would receive $2.7 billion in cash; (b) the Creditors' Committee would deem creditors to be paid par plus accrued based upon a recovery of 20% cash and 80% equity in reorganized Delphi at an assumed total enterprise value of $13.9 billion (even understanding that this plan value exceeded the midpoint of Rothschild's range, which was $12.9 billion at that time); (c) the MDL plaintiffs and the TOPrS claimants would be part of the unsecured creditor classes; and (d) existing equity would receive a recovery valued at approximately $400 million.  The Plan Investors did not approve the Plan on September 6, 2007, but rather expressly reserved their rights.

5.      Although the September 6, 2007 Plan represented broad consensus and the Debtors believed it would ultimately have been confirmed, it carried execution risks that were well known at the time it was filed.  For example, all parties knew that the capital markets had essentially been closed for six weeks.  Because the September 6, 2007 Plan was premised on a capital structure that contemplated $7.1 billion in exit financing, the turmoil in the credit markets presented a serious execution risk.

6.       Shortly after the September 6, 2007 Plan was filed the Debtors determined that it was highly unlikely they would be able to obtain such financing.  The Debtors now hope to obtain $5.2 billion in exit financing (including up to $750 million to be placed with GM) based on the "best efforts" financing letter approved by this Court on November 16, 2007 (Docket No. 10960).  The Debtors have tried to preserve the Plan and the Delphi-Appaloosa EPCA with a minimum amount of change.  Nevertheless, some change is required to accommodate removing $1.9 billion in available cash from the Plan.[8]

7.       During negotiations resulting from the Debtors' inability to secure the amount of exit financing contemplated in the September 6, 2007 Plan, the Creditors' Committee and the Plan Investors expressed the view that the Debtors' total enterprise value had declined as a result of changes in the credit markets and reductions in projected volumes for GM's North American operations.  The Creditors' Committee negotiated a reduction of approximately $700 million in the assumed total enterprise value at which it deemed creditors to be paid in full (from $13.9 billion to $13.0 billion, but excluding the effect of the Debtors' simultaneous reduction in the unsecured claims reserve of more than $200 million).  The Plan Investors also negotiated a re-duction in the total enterprise value applicable to their investment that was roughly equivalent to the reduction in Plan total enterprise value negotiated by the Creditors' Committee.

8.       As a result of these negotiations, the Creditors' Committee, the Plan In-vestors, and GM reached consensus on the terms of the First Amendment to the Delphi-Appaloosa EPCA (the "October 29 EPCA Amendment").[9]  For its part, GM agreed to take its $2.7 billion

---

[8]   Attached hereto as <u>Exhibit C</u> is a summary of the sources and uses of cash in the Plan as currently amended versus the September 6, 2007 Plan.

[9]   Notwithstanding the objection it ultimately filed, the Creditors' Committee had voted to support the October 29 EPCA Amendment.

recovery in a mix of cash, debt, and stock rather than in 100% cash as provided in the September 6

Plan.  The recovery from the rights offering also shifted from existing equity to unsecured credi-

tors.  The Creditors' Committee, however, voted not to provide additional consideration to existing

equity.  As a result, the Equity Committee strongly opposed the October 29 EPCA Amendment.

9.      The Debtors determined to move forward with the October 29 EPCA

Amendment because it represented the only amendments that GM and the Plan Investors would

agree to at that time.  Because the Plan is premised on substantial funding from GM and the Plan

Investors, their support was critical to the Debtors' business judgment to proceed with the October

29 EPCA Amendment.  The Debtors also believed that all of the Plan Investors would execute the

October 29 EPCA Amendment and, in the context of the lower investment prices specified therein,

effectively approve the Material Investment Documents.  Although the Debtors learned during the

day on October 29, 2007 that Goldman was not then prepared to execute the October 29 EPCA

Amendment, the Debtors nevertheless filed it based on Goldman's representative's statement that

he was "highly confident" that Goldman would execute the October 29 EPCA Amendment after

syndicating its investment.

10.      Nevertheless, the October 29 EPCA Amendment expired by its terms on

November 6, 2007, and did not become effective, because Goldman ultimately declined to execute

it.  One problem the Debtors face is the divergence between Delphi's intrinsic bankruptcy value

and its short-term trading value – the latter being the focus of the various creditor constituencies

and the Plan Investors.[10]  Goldman apparently declined to consummate its "highly confident"

arrangement because there was a widening gap between Delphi's intrinsic value and short-term

---

[10]   Attached as Exhibit D is a chart displaying a comparison of the trading histories of Delphi stock and
bonds, as well as GM stock and the Dow Jones Industrial Average, since the Original EPCA was
executed in January 2007.

10

trading value.  That is, Goldman was being asked to sign an agreement that required it to backstop a rights offering based on an $11.8 billion total enterprise value at emergence, when the enterprise value at emergence implied by the prices of Delphi's bonds had fallen hundreds of millions of dollars below that level.  While the Debtors do not believe there had been a material degradation in Delphi's intrinsic value, there is no question that new investors focus on trading levels.

11.    As a result of the expiration of the October 29 EPCA Amendment, the Debtors were faced with a choice among (a) negotiating further amendments to secure the commitment of the Plan Investors, (b) attempting through legal action to force the Plan Investors to close on the existing terms of the Delphi-Appaloosa EPCA, (c) waiting until conditions improve or the Debtors can freely terminate the Delphi-Appaloosa EPCA on March 31, 2007, or (d) starting over with new plan investors or an internally funded plan (and risking the alternate transaction fee).  Because of the unacceptable levels of uncertainty and delay inherent in each of the other options, the Debtors elected to go forward with the Plan Investors and filed the November 14 EPCA Amendment.  Among other things, the November 14 EPCA Amendment (a) further reduced the buy-in prices applicable to the Plan Investors' investments, (b) shifted more of the creditors' recovery from a direct stock grant to a discount rights offering, (c) increased the discount applicable to the rights in the rights offering, and (d) provided that such rights are transferable.

12.    Between the filing of the November 14 EPCA Amendment and the hearings then scheduled for November 29, 2007, the Debtors continued to negotiate with the Plan Investors and their stakeholders to improve the proposed amendments to the EPCA and achieve a higher level of consensus.  On November 28, 2007, based on significant progress in negotiations, the Debtors sought and this Court granted an adjournment of the November 29 hearings to December 6, 2007 to allow more time to complete negotiations.

13.    The December 3 EPCA Amendment is the product of these further nego-
tiations.  Among other things, the December 3 EPCA Amendment (a) increases the per-share price
applicable to Appaloosa's $400 million investment in Series A Preferred Stock from $38.39 per
share to $42.20 per share, (b) increases the per-share price applicable to the Plan Investors' $400
million investment in Series B Preferred Stock from $42.20 per share to $42.58 per share, (c)
reduces GM's overall recovery by almost $100 million through a reduction in the equity portion of
GM's recovery, and (d) reduces the recovery of TOPrS claims to 90% of par plus pre-petition
interest only.[11]

Argument[12]

I.    The Court Should Affirm The Debtors' Business Judgment

14.    The Debtors recognize that this Court will independently review the De-
cember 3 EPCA Amendment while also giving due deference to the Board's business judgment.
(See Jan. 12, 2007 Tr. (Docket No. 7118) at 113-16 (citing In re Orion Pictures Corp., 4 F.3d 1095
(2d Cir. 1993)).)  In connection with this Court's approval of the Original Framework Agreements
after a contested hearing, the Court recognized that Delphi's Board was independent and without
conflict and had acted carefully, responsibly, and in a manner responsive to the views of their

---

[11]    A chart comparing the economic terms of (a) the August 2 Delphi-Appaloosa EPCA and September 6
Plan, (b) the proposed November 14 EPCA Amendment and November 16 Plan, and (c) the proposed
December 3 EPCA Amendment and December 5 Plan, is attached hereto as Exhibit E.

[12]    Several Objectors object to the Motion on procedural grounds claiming the Debtors should be required
to file a new Motion or that the Debtors have not put forward any justification for the amendments.
Neither the Second Supplemental Procedures Order in effect at the November 21, 2007 objection
deadline (to which all parties agreed) nor the Third Supplemental Procedures Order required the
Debtors to file a separate motion, however, and the Debtors have complied with those orders.  The
Debtors' explanation in the Motion as to why it was necessary to amend the Delphi-Appaloosa EPCA
continues to apply.  Furthermore, the Debtors served supplemental declarations of Robert S. Miller,
John D. Sheehan, and David L. Resnick specifically addressing the Debtors' business judgment as to
the November 14 EPCA Amendment.  Because the December 3 EPCA Amendment represents only
improvements to other stakeholders that the Plan Investors and GM agreed to provide, the business
judgment supporting the Debtors' acceptance of these incremental changes is self evident.

constituencies.  (See id. at 116.)  None of the Objectors provides valid reasons for questioning the

integrity of the Board's business judgment here.  (See id. at 115 (Bankruptcy Court normally defers

to action properly considered by board not affected by a conflict of interest or other self-dealing,

absent contrary evidence).)

      A.     <u>The Debtors' Judgment To Proceed With The Plan Investors Is Sound</u>

          15.     As noted above, as a result of the expiration of the October 29 EPCA

Amendment, the Debtors were faced with a choice among (a) negotiating further amendments to

secure the commitment of the Plan Investors, (b) attempting through legal action to force the Plan

Investors to close on the existing terms of the Delphi-Appaloosa EPCA, (c) waiting until condi-

tions improved or until the Debtors could terminate the Delphi-Appaloosa EPCA on March 31,

2007, or (d) starting over with new plan investors or an "internally funded" plan (and risking the

alternate transaction fee).

          16.     The Board first determined that the Plan of reorganization continues to

require a third-party plan investor.  No one has put forward a viable internally-funded plan.

          17.     Second, the Board determined that it was in the best interests of the estates

to proceed with the Plan Investors rather than attempt to find an alternate source of equity funding

or wait for circumstances to change or the Delphi-Appaloosa EPCA to expire.

         a.   The Board determined that the Debtors have largely achieved all of their trans-

             formation goals, and recognized that remaining in chapter 11 is likely only to de-

             grade the value of the Debtors' estates because (a) the chapter 11 process is de-

             bilitating for management and expensive for the Company, (b) customer confi-

             dence and support has been strong based on the momentum in the case but can

             evaporate at any moment, and (c) the Debtors' transformation plan faces event risks

             if the Debtors fail to emerge on the current timeline.  Current pension funding

waivers expire at the end of February 2008.  Other events risks include those at the end of March 2007, when the UAW obtains certain strike rights and the settlement agreements with GM expire.

b.  Next, the Board considered the advice of its financial advisor regarding market conditions and the risk that the Debtors could not find a better suitor able to execute on an acceptable timeframe.  (See also Section I.C, infra, ¶ 26.)

c.  Finally, although unhappy with the additional consideration going to the Plan Investors, the Board was advised that the increased discounts were reasonable under the unique circumstances presented here, including the size of the investment, the deterioration in market conditions, and the likely preservation of a higher value in the Debtors' estates based on emergence from chapter 11 on the current timetable. (See also id. ¶ 25.)

18.    Having determined to proceed with the Plan Investors, the Board also considered the Debtors' legal rights and rejected as impractical a hypothetical legal action to force the Plan Investors to perform under the original economic terms of the Delphi-Appaloosa EPCA. (See Section I.B, below.)

19.    Based on all of the circumstances presented, the Board determined that the November 14 EPCA Amendment was the best transaction reasonably available at that time to maximize value and preserve the gains the Debtors have achieved in chapter 11 through their transformation plan.  The Board subsequently approved the December 3 EPCA Amendment, which is based on value that GM and the Plan Investors agreed to give back in negotiations subsequent to November 14, 2007, and which has achieved the support of the Statutory Committees.

14

B.    The Debtors Cannot Simply "Enforce" The Delphi-Appaloosa EPCA

20.    The Objectors seem to contend that the Debtors are not faced with these choices because they can compel the Plan Investors through litigation to make the investment contemplated by the Delphi-Appaloosa EPCA.  There are at least three reasons why this "litigation path" is impractical, however.

21.    First, Appaloosa retained approval rights over Material Investment Documents.  The Delphi-Appaloosa EPCA adopted a uniform "material impact" standard with respect to the general condition that Appaloosa must be reasonably satisfied with the terms of certain specified documents, including the plan and disclosure statement, confirmation order, business plan, certain constituent documents, and labor agreements.  (Delphi-Appaloosa EPCA § 9(a)(xxviii).)  The Delphi-Appaloosa EPCA also provides that Appaloosa is not required to accept the Debtors' Disclosure Letter unless it is reasonably satisfied that the Disclosure Letter does not contain information that was not previously disclosed and that would have a material impact on the Plan Investors' proposed investment in Delphi.  (Id. at §§ 5(s), 12(d)(ii).)  The Plan Investors expressly reserved their rights with respect to approval of the Material Investment Documents in connection with the Debtors' filing of their Plan and Disclosure Statement on September 6, 2007.  Although the October 29 EPCA Amendment contemplated the Plan Investors' delivery of these approvals, it did not become effective.  Appaloosa certainly contends that changes in circumstances from those contemplated in the Delphi-Appaloosa EPCA resulted in a material negative impact on the Plan Investors' proposed investment.  While the Debtors do not believe intrinsic value has degraded materially, resolving a dispute over this issue would be complex.

22.    Second, the Debtors' ability to secure exit financing is a condition to closing under the Delphi-Appaloosa EPCA.  (See Delphi-Appaloosa EPCA § 9(a)(xix).)  Section 9(a) provides that "the obligations of each of the [Plan] Investors hereunder to consummate the

transactions contemplated hereby shall be subject to the satisfaction prior to the Closing Date of

each of the following conditions."  One of the conditions specified is that:

> Section 9(a)(xix)  _Financing_.  The Company shall have received the pro-
> ceeds of the Debt Financings and the Rights Offering that, together with the
> proceeds of the sale of the Investor Shares, are sufficient to fund fully the
> transactions contemplated by this Agreement, the Preferred Term Sheet, the
> Plan Terms, the GM Settlement (to the extent the Company is to fund such
> transactions) and the Plan.

The term "Debt Financings" is defined within the covenant portion of the Delphi-Appaloosa

EPCA:

> The Company and its Subsidiaries shall obtain the debt financing from fi-
> nancing sources consistent with those previously discussed with ADAH
> and in amounts sufficient to consummate the transactions contemplated by
> this Agreement, the Preferred Term Sheet, the Plan Terms, the GM Set-
> tlement and the Plan, such financing to be on then-prevailing market terms
> with respect to the applicable interest rate, redemption provisions and fees,
> and otherwise to be on terms that are acceptable to ADAH not to be un-
> reasonably withheld (the "Debt Financing").

(See Delphi-Appaloosa EPCA § 5(t).)  The term "Plan Terms" is defined in the Recitals as refer-

ring to the plan terms set forth in Exhibit B to the Delphi-Appaloosa EPCA.  Therefore, the Del-

phi-Appaloosa EPCA calls for the Debtors to "obtain financing sufficient to consummate the

transactions contemplated by," among other things, the Plan Terms set forth in Exhibit B to the

Delphi-Appaloosa EPCA.  It is highly uncertain whether the Debtors can meet the Financing

condition.

        23.      Finally, as discussed above, prior to this Court's approval of the disclosure

statement the range of possible outcomes of a dispute concerning a breach of the Del-

phi-Appaloosa EPCA is limited by a mutual $100 million cap on liability contained in Section

11(b) of the Delphi-Appaloosa EPCA.  The Plan Investors expressly bargained for, and received,

this cap even for a "willful" breach of the Delphi-Appaloosa EPCA.  Furthermore, there is no

express specific performance provision in the Delphi-Appaloosa EPCA.[13]  For all of these reasons

the Board determined that the Debtors' ability to compel the Plan Investors' investment is highly

questionable and the "litigation path" would likely be prohibitively time consuming in any event.

        C.        <u>Objections To The Integrity Of The Board's Business Judgment Are Baseless</u>

        24.       The Objectors make a number of specific objections to the integrity of the

Board's judgment that should be rejected for the reasons discussed below.

        25.       <u>Increased Value To Plan Investors</u>.  Certain Objectors object that the mag-

nitude of the increase in the discount applicable to the Plan Investors' equity investment under the

November 14 EPCA Amendment calls into question the integrity of the Board's business judg-

ment.  It is true that under the November 14 EPCA Amendment the Plan Investors could have

received an aggregate discount of up to $534 million from Plan value, versus $269 million under

the October 29 EPCA Amendment.  Although the aggregate potential discount has been reduced

under the December 3 EPCA Amendment to approximately $422 million, the Debtors of course

would have preferred to avoid any increase in their cost of capital.  But, even prior to the latest

improvements, the Board was advised and agreed that the increased discounts were reasonable

under the unique circumstances presented here, including the size of the investment, the deterio-

ration in market conditions that has made investors less willing to take on risk, and the benefit all

stakeholders will share from avoiding the deterioration in the value of the estates that could be

caused by a delay and uncertainty regarding the Debtors' emergence from chapter 11.

---

[13]   Although the Debtors do not believe their termination of the Delphi-Appaloosa EPCA would benefit
their estates at this time, the Debtors also retain the right to make such a cost benefit analysis.  If the
Company takes action inconsistent with the Delphi-Appaloosa EPCA, it risks incurring the $82 million
alternate transaction fee.  Beyond this fee, the Company's aggregate liability under the EPCA is also
limited to $100 million prior to approval of the disclosure statement.  Nothing in this Reply shall be
deemed to be a Change of Recommendation under the Delphi-Appaloosa EPCA.

26.    <u>Market Testing</u>.  Certain Objectors also object that the reasonableness of the November 14 EPCA Amendment cannot be determined because it was not subject to a market test.  This Court has previously rejected the argument that the Debtors are required to engage in a formal auction process or otherwise engage in "active shopping," recognizing instead that it is often the disclosure of an investment agreement that attracts new bids.  (Jan. 12, 2007 Tr. (Docket No. 7118) at 117-18.)  Indeed, that is exactly what happened in connection with the Original EPCA and the Delphi-Appaloosa EPCA approved by this Court.  Tellingly, despite the widely publicized nature of this case, no rival bidder has come forward to express interest in an allegedly better deal since Delphi's announcement of the November 14 EPCA Amendment.[14]

27.    <u>The TOPrS Claims</u>.  Certain Objectors object that Appaloosa and/or the other Plan Investors own Delphi Trust Preferred Securities and have a conflict of interest between their roles as Plan Investors and their role as creditors of the estates.  The parties have long known that Appaloosa has TOPrS claims, and this ownership has never been the subject of an objection until now.  Indeed, Appaloosa owns Delphi's senior notes and equity as well.  No party has put forward any credible evidence of undue influence on the part of the Plan Investors in connection with TOPrS recoveries, which were reduced from par plus accrued at Plan value to par only in the October 29 EPCA Amendment, and further reduced to 90% of par in the December 3 EPCA Amendment.  Any objection to the treatment of TOPrS claims, moreover, is a premature objection to Plan confirmation.

---

[14]    On Friday, November 30, 2007, a representative of Lehman Brothers contacted Robert S. Miller regarding a possible future proposal by a group of bondholders including Highland Capital Management, based on a $2.65 billion rights offering of convertible preferred stock at an exercise price based on a discounted total enterprise value in the range of $9 billion.  The Board discussed this development at its December 3, 2007 meeting.

28.    <u>Conditionality</u>.  The November 14 EPCA Amendment, as discussed in the

Motion with respect to the October 29 EPCA Amendment, reflects the achievement of various

milestones in the Debtors' transformation plan since this Court approved the Delphi-Appaloosa

EPCA.  (<u>See</u> Docket No. 10760 ¶ 35.)  While the Debtors anticipate that the Equity Committee's

objections will be resolved based on its decision to support the Motion, the Equity Committee's

supplemental objection asserts that new conditions in the November 14 EPCA Amendment

"provid[e] a platform for the Plan Investors to walk away from their supposed new commitments."

(Docket No. 11032 ¶ 19.)  The new conditions identified by the Equity Committee address issues

that have arisen since the Delphi-Appaloosa EPCA was approved and were negotiated as part of a

package.  They present reasonable risks when compared with the benefits of resolving key con-

ditions with respect to the Plan Investors' approval rights.

29.    <u>Lockups Agreements</u>.  Certain Objectors object that the existence of the

Side Letter entered into among the Plan Investors on July 18, 2007, and the Additional Investor

Agreements, call into question the Debtors' ability to exercise sound business judgment.  The

Debtors believe that arguments about the lockups are disingenuous. The Delphi-Appaloosa EPCA,

like the Original EPCA, expressly permits the Plan Investors to syndicate their investment to up to

35 qualified investors.  (<u>See</u> Delphi-Appaloosa EPCA § 2(a) ("the total number of Investors, Re-

lated Purchasers, and Ultimate Purchasers shall not exceed . . . 35 . . . .").)  The Delphi-Appaloosa

EPCA also contains the Company's acknowledgement that the Plan Investors would enter into

separate agreements with these entities.  (<u>See</u> <u>id.</u> at § 2(k).)  Appaloosa publicly filed the Side

Letter on July 20, 2007, and publicly filed a form of the Additional Investor Agreement on July 25,

2007.  These were negotiated in the ordinary course in furtherance of the syndication provisions of

the Court-approved Delphi-Appaloosa EPCA.[15]  Market participants who wanted to take part in

the investment transaction then entered into the Additional Investor Agreements.  These agree-

ments are not a new development and have never been secret.

   30. <u>Management Compensation</u>.  In its November 2, 2007 Objection, the Eq-

uity Committee objected that "it appears that management was negotiating its compensation and

incentive plans with the Plan Investors at the same time they were allowing the Plan Investors to

drastically renegotiate the terms of the EPCA."  To the extent that this objection is not withdrawn,

the testimony and documents produced in discovery demonstrate that the Plan Investors agreed to

Delphi's management compensation plans at the end of August 2007, prior to the Debtors' filing of

their Plan on September 6, 2007.

II. <u>The Motion Does Not Seek The Court's Approval Of Any Plan Terms</u>

   31. The Bondholders incorrectly assert that the November 14 EPCA Amend-

ment is a sub rosa plan of reorganization because it "requires the Debtors to pursue confirmation of

a specific plan of reorganization" and "has the practical effect of dictating all of the terms of the

Plan."  (Docket No. 11036 ¶¶ 26-27.)  A transaction cannot be construed as a sub rosa plan when it

does not "dispose of all claims against" the debtor, "restrict creditors' rights to vote as they deem fit

on a proposed reorganization plan," or "dispose of virtually all of [the debtor's] assets, leaving little

prospect or occasion for further reorganization."  <u>Official Committee of Unsecured Creditors v.</u>

<u>Cajun Elec. Power Coop., Inc.</u> (In re Cajun Electric Power Cooperative, Inc.), 119 F.3d 349, 355

(5th Cir. 1997); <u>accord</u> <u>Official Committee of Unsecured Creditors v. Tower Automotive, Inc.</u> (In

re Tower Automotive, Inc.), 241 F.R.D. 162, 169 (S.D.N.Y. 2006) (quoting <u>Cajun</u> and ruling that

transaction that "did not dispose of all of [the debtor's assets]" was not a sub rosa plan).

---

[15] The Debtors make these observations subject to a reservation of rights regarding any argument for
extension of the lockups beyond the termination of the Delphi-Appaloosa EPCA.

32.    The Motion does not seek this Court's approval of any plan terms.  Indeed, the proposed amendments make clear that the Delphi-Appaloosa EPCA is dependent upon the Plan, not the other way around.  The Bondholders' view of the relationship is simply wrong.  Section 9(a)(vii) of the November 14 EPCA Amendment (unchanged on December 3), for example, provides that the Plan Investors' obligations are subject to this Court's entry of a final confirmation order approving the Plan, among other conditions.  Similarly, Section 9(c)(vii) provides that Delphi's obligation to issue and sell the common and preferred stock referenced in the Delphi-Appaloosa EPCA is subject to the same condition.  These express conditions alone defeat the Bondholders' sub rosa plan argument.  See In re Delta Air Lines, Inc., 370 B.R. 537, 551 (Bankr. S.D.N.Y. 2007) (holding that settlement was not a sub rosa plan because of a "provision in the [settlement] making the [settlement] expressly conditioned on confirmation" of the debtor's plan).

33.    This Court has addressed this issue at least twice in this case, and in rulings equally applicable to the current Motion has clearly explained the distinction between agreements with plan investors, on one hand, and a sub rosa plan, on the other.  In January 2007, this Court overruled a similar objection put forward by the Equity Committee in opposition to this Court's approval of the Original Framework Agreements, finding that the Court was not approving any elements of the plan of reorganization by approving the Original EPCA.  (Docket No. 7118 at 123-24 ("Nothing from this estate is being distributed . . . other than the fees, which are being dealt with on a standalone basis.")  Similarly, the August 2, 2007 order approving the Delphi-Appaloosa EPCA expressly stated that this Court "determined that its approval . . . would not constitute approval of a sub rosa or de facto reorganization plan."  (Docket No. 8856 at 1-2.)

34.    The current proposed amendments are even further removed from a sub rosa plan than the Original Framework Agreements and the Delphi-Appaloosa EPCA.  The

21

amendments the Debtors have proposed since October 29, 2007, have eliminated the plan frame-

work provisions that were in Exhibit B to the Delphi-Appaloosa EPCA and replaced Exhibit B

with the actual Plan that was filed with the Court.  Nothing in the December 3 EPCA Amendment

will prevent the Bondholders or any other creditors from exercising their voting rights on the Plan

or any other rights with respect to confirmation of the Plan.[16]

        35.     In addition to the Bondholders' contention that the Motion seeks approval of

a sub rosa plan of reorganization, all of the creditor constituencies object that the Plan is uncon-

firmable, and the Trade Committee and Wilmington Trust put forward specific objections to the

terms of the Plan.  (See Docket No. 11042 ¶36; Docket No. 11040 ¶24.)  As discussed above,

however, the Motion does not seek the Court's approval of any of the terms of the Plan and these

are not proper objections to the December 3 EPCA Amendment.

        36.     Furthermore, the Objectors' contention that the Plan is unconfirmable be-

cause it allegedly runs afoul of the absolute priority rule is incorrect.  The Objectors lose sight of

the fact that the Company has never withdrawn or qualified its December 2005 statement that it is

"hopelessly insolvent."  (See Delphi Corp. Form 8-K dated Dec. 20, 2005.)  Indeed, the Company

remains insolvent absent the transformation plan – including value to be provided by GM in

support of the Debtors' reorganization.  GM agreed to provide that value only in the context of a

Plan that GM approves.  Clearly, then, the Plan embodies a settlement and not an absolute priority

---

[16]   The Bondholders previously argued that Section 1(hhh) of the October 29 EPCA Amendment supports
its argument because it provided that "if any of the terms of the Plan . . . conflict with any of the terms of
this Agreement, the terms of this Agreement shall govern."  (Docket No. 10800 ¶¶ 11 n.4, 12.)  Section
1(hhh) of the November 14 EPCA Amendment clarified the language to provide that "nothing con-
tained in the Plan  . . . shall alter, amend or modify the rights of the Investors under this Agreement
unless such alteration, amendment or modification has been agreed to in writing by each Investor."  The
Bondholders acknowledge the amended language but continue to maintain the same objection.  (Docket
No. 11036 ¶ 27 n.6.)

distribution.  Value passing to junior classes, such as equity, is passing from GM to those classes outside the absolute priority rule.

37.      The IUE-CWA objects that the plan currency for payment of unsecured claims in the November 14 EPCA Amendment is less advantageous to it than the plan currency under the Delphi-Appaloosa EPCA.  First, this is not a valid objection at this stage.  Like the UAW, Lead Plaintiffs, and other settling parties, the IUE-CWA agreed to receive its recovery in Plan currency, the form of which was not cast in stone.  The IUE-CWA was fully aware of this when it settled its labor contract disputes with the Debtors.  It should also be aware of this fact as a voting member of the Creditors' Committee.  Moreover, the rights in the discount rights offering are fully transferable under the December 3 EPCA Amendment.  This transferability, first inserted in the November 14 EPCA Amendment, belies the IUE-CWA's concern that it "does not have the financial ability to exercise" the rights.  Indeed, the October 29 EPCA Amendment – to which the IUE-CWA did not object – contemplated a rights offering with non-transferable rights.[17]

III.      The Court Should Waive The Ten-Day Stay

38.      In the Motion, the Debtors request waiver of the ten-day stay provided under Federal Rule of Bankruptcy Procedure 6004(g).  The Equity Committee filed the only ob-jection to waiver of the ten-day stay and now supports the Motion.  (See Docket No. 11032 ¶ 23.) None of the other Objectors separately objects to waiver of the ten-day stay.  This Court waived the stay in connection with the Delphi-Appaloosa EPCA in August 2007.  Doing so here will better allow the Debtors and their stakeholders to pursue consummation of these chapter 11 cases.  In

---

[17]      Although the Debtors do not agree with the premise of the IUE-CWA's Objection, the fact the IUE-CWA is concerned is a meaningful reminder that Delphi's restructuring is based on sacrifices made by thousands of workers.

addition, the Debtors also need as much certainty and finality as possible as they move forward

with their solicitation efforts.

IV.    The Court Should Deny The Adjournment Motion

39.    The Adjournment Motion was filed on November 2, 2007, and sought to

adjourn the hearings then scheduled for November 8, 2007.  The Adjournment Motion primarily

sought to adjourn the hearing on approval of the Disclosure Statement (and require a new 25-day

notice period), but also sought to require the Debtors to re-notice the EPCA Amendment Motion

on not less than 20 days' notice.  (Docket No. 10795 ¶ 21 and p. 22.)  Although the Equity

Committee has not formally withdrawn the Adjournment Motion, the Debtors do not expect the

Equity Committee to prosecute the Adjournment Motion in light of its decision to support ap-

proval of the December 3 EPCA Amendment.  Moreover, it is not clear whether the Adjournment

Motion remains viable in light of the Debtors' compliance with the deadlines specified in the Third

Supplemental Procedures Order.  (See Docket No. 11198 ¶ 7 (Court will entertain request to ad-

journ if Debtors do not satisfy deadlines specified in order.))

40.    In any event, section 363(b)(1) of the Bankruptcy Code permits a chapter 11

debtor to use property of the estate, other than in the ordinary course of business, "after notice and

a hearing."  11 U.S.C. § 363(b)(1).  The statute provides that the phrase "after notice and a hearing"

shall be construed to mean "after such notice as is appropriate in the particular circumstances, and

such opportunity for a hearing as is appropriate in the particular circumstances."  11 U.S.C.

§ 102(1)(A).

41.    This flexibility in the construction of the notice and hearing requirement in

section 363(b)(1) is reflected in the Bankruptcy Rules.  Bankruptcy Rule 2002(a)(2) provides that

a party-in-interest shall receive twenty days' notice of a proposed use or sale of estate property

24

other than in the ordinary course "unless the court for cause shown shortens the time."  Fed. R.

Bankr. P. 2002(a)(2).  Bankruptcy Rule 9006 similarly provides:

> Except as provided in paragraph (2) of this subdivision, when an act is required or
> allowed to be done at or within a specified time by these rules or by a notice given
> thereunder or by order of court, the court for cause shown may in its discretion with
> or without motion or notice order the period reduced.

Fed. R. Bankr. P. 9006(c)(1); see also Fed. R. Bankr. P. 9006(c)(2) (in Bankruptcy Rule 2002(a),

only subsection (a)(7) regarding the period for filing proofs of claims under Bankruptcy Rule

3003(c) is not subject to discretionary judicial reduction).  The Equity Committee does not dispute

the Court's authority to shorten time periods with respect to notice.  (Docket No. 10795 ¶¶ 20 n.4,

21 n.6).

      42.    In addition, one of the primary bases of the Adjournment Motion at the time

that it was filed was that the schedule did not allow enough time for discovery.  Since that time,

however, the Debtors have (a) produced in excess of 50,000 pages of documents to the Objectors,

(b) provided declarations and supplemental declarations from Robert S. Miller, John D. Sheehan,

and David L. Resnick, (c) and produced Messrs. Miller, Sheehan, and Resnick for depositions

lasting in excess of 20 hours.  The Objectors also had the opportunity to take discovery from

Appaloosa and to depose David Tepper, the President of Appaloosa Partners, Inc.

      43.    Finally, controlling authority in this circuit makes clear that in setting a

pre-hearing notice period, the court may consider the possibility that "an advantageous [transac-

tion] would be lost" or that estate assets "would substantially diminish in value during the notice

period."  In re General Insecticide Co., 403 F.2d 629, 630 (2d Cir. 1968); see also In re Frontier

Airlines, Inc., 117 B.R. 585, 588 (D. Colo. 1990) (affirming bankruptcy court's reduction of

pre-hearing notice period and expedited hearing as appropriate means to "protect[] Frontier's few

assets, generat[e] revenue, and keep[] people employed").  As discussed above, the Debtors have

provided evidence that there are significant risks associated with further delay of the Debtors'

emergence from chapter 11.

44.    In conclusion, there is no reasonable basis to grant the Adjournment Mo-

tion.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

overruling the Objections, (b) denying the Adjournment Motion, (c) granting the EPCA Amend-

ment Motion, and (d) granting them such other and further relief as is just.

Dated: New York, New York
       December 5, 2007

SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP

By:  /s/  John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       George N. Panagakis (GP 0770)
       Albert L. Hogan, III (AH 8807)
       Ron E. Meisler (RM 3026)
   333 West Wacker Drive, Suite 2100
   Chicago, Illinois  60606
   (312) 407-0700

- and -

By:   /s/  Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
   Four Times Square
   New York, New York 10036
   (212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession