**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
　　　　mitchell.seider@lw.com
　　　　mark.broude@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**LIMITED SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE EXPEDITED MOTION FOR ORDER UNDER
11 U.S.C. §§ 105(a), 363(b), 503(b) AND 507(a) AUTHORIZING AND
APPROVING AMENDMENT TO DELPHI-APPALOOSA EQUITY
PURCHASE AND COMMITMENT AGREEMENT FILED ON NOVEMBER 14, 2007**

　　　　The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation, *et al.* (collectively, the "Debtors"), by and through its counsel, hereby files this limited supplemental objection (the "Limited Objection") to the *Expedited Motion for Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) Authorizing and Approving Amendment to Delphi-Appaloosa Equity Purchase and Commitment Agreement* (the "Motion"), as it relates to the Restated First Amendment to the Equity Purchase and Commitment Agreement (the "Restated EPCA Amendment") that the Debtors filed with this

NY\1353693.5

Court on December 3, 2007.  In support of this Limited Objection, the Committee respectfully states as follows:

## BACKGROUND

### A.    General Background

1.    On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On October 14, 2005, the three remaining Debtors also filed voluntary petitions.

2.    The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1]  Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker.

### B.    The History of the EPCA

3.    In early 2007, the Debtors entered into the original Equity Purchase and Commitment Agreement (the "Original EPCA") among Delphi Corp.; A-D Acquisition Holdings, LLC (an affiliate of Appaloosa Management L.P. "Appaloosa"); Dolce Investments LLC (an affiliate of Cerberus Capital Management, L.P.); Harbinger Del-Auto Investment Company, Ltd. (an affiliate of Harbinger Capital Partners Master Fund I, Ltd.); Merrill Lynch, Pierce, Fenner & Smith Inc.; and UBS Securities LLC.  By order dated January 12, 2007, this Court approved the Original EPCA.  However, because of various disagreements among the parties thereto, the Original EPCA was terminated in the early summer of 2007.

---

[1]    The current members of the Committee are: (a) Capital Research and Management Company; (b) Freescale Semiconductor, Inc.; (c) IUE-CWA; (d) Wilmington Trust Company, as Indenture Trustee; (e) Tyco Electronics Corporation and (f) SABIC Innovative Plastics US LLC.  The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

2

NY\1353693.5

4.  On July 18, 2007, the Debtors filed a motion for authority to enter into a new Equity Purchase and Commitment Agreement (the "August EPCA") with A-D Acquisition Holdings, LLC; Harbinger Del-Auto Investment Company, Ltd.; Merrill Lynch, Pierce, Fenner & Smith Inc.; UBS; Goldman Sachs & Co.; and Pardus DPH Holding LLC (an affiliate of Pardus Capital Management L.P.) (collectively, the "Plan Investors"). The Committee did not object to that motion, and on August 2, 2007, this Court approved the August EPCA. The August EPCA formed the basis of the Debtors' first plan of reorganization that was filed on September 6, 2007.

5.  The Debtors filed a motion to approve an amendment to the August EPCA on October 30, 2007 (docket number 10760), and the Committee filed an objection to that motion on November 2, 2007. The Court did not rule on that motion. The October amendment to the August EPCA was later terminated, but the August EPCA remained in place.

6.  Subsequently, the August EPCA was amended by the Restated EPCA Amendment (the "First Restated EPCA Amendment"), which the Debtors filed with this Court on November 14, 2007. On November 21, 2007, the Committee filed an objection to the Motion.

7.  On November 16, 2007, this Court entered an order authorizing the Debtors to enter into a "best efforts" engagement letter (the "Exit Engagement Letter") with JPMorgan Securities Inc., JPMorgan Chase Bank, N.A., and Citigroup Global Markets Inc. (the "Exit Engagement Parties"), pursuant to which the Exit Engagement Parties are required to use commercially reasonable best efforts to arrange a syndicate of lenders to provide exit financing arrangements (the "Exit Financing Arrangements").

8.  On December 3, 2007, the Debtors filed their *Notice of Further Proposed Amendments to Debtors' Disclosure Statement and Certain Appendices With Respect to Joint*

3

*Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession* (the "December 3rd Notice"). Exhibit C to the December 3rd Notice contained a revised amendment to the August EPCA (the "Second Restated EPCA Amendment").

9. The Second Restated EPCA Amendment would modify various provisions of the August EPCA. Importantly, the Second Restated EPCA Amendment would add a new condition precedent to the Plan Investors' obligations to make investments in support of the Debtors' proposed plan of reorganization (the "Plan"). Specifically, the Second Restated EPCA Amendment provides that a condition to the Plan Investors' obligations is that "[t]he Company shall have demonstrated … that the pro forma interest expense (cash or noncash) for the Company during 2008 on the Company's Indebtedness will not exceed $585 million" (the "Interest Expense Condition"). *See* Second Restated EPCA Amendment, § 1(ww). In other words, if the Debtors' projected interest expense for 2008 exceeds $585 million, the Plan Investors would not have an obligation to consummate the August EPCA.

10. If the Second Restated EPCA Amendment is approved by this Court, under the August EPCA as so amended (the "Amended EPCA"), upon approval of the Debtors' Disclosure Statement (which presumably would happen simultaneously with the approval of the Second Restated EPCA Amendment), the Debtors would be obligated to pay the Plan Investors a total of $28,687,500 in commitment and related fees (the "Approval Fees"). *See id.*, Section 2(h) (as amended by §1(j) of the First Restated EPCA Amendment).

## **LIMITED OBJECTION**

11. The Committee is in general agreement with the transaction outlined in the December 3rd Notice, subject to final documentation thereof. However, the Committee is very concerned that the $585 million threshold in the Interest Expense Condition is too low given the

4

volatility in the credit markets, creating a real risk that the Plan Investors will be able to walk away from the transaction or demand further concessions as the price for their continued support.

12. The Committee objects to the Interest Expense Condition in the Amended EPCA. The Committee believes that $625 million would be a more appropriate cap on the Debtors' interest expense. As noted herein, the Exit Engagement Letter is not a commitment letter but rather requires the Exit Engagement Parties to use commercially reasonable best efforts to arrange a syndicate of lenders to provide exit financing. Under the Exit Engagement Letter, the indicative interest rate for the proposed first and second lien exit financing is LIBOR plus 3.75% and 6.25%, respectively. Based on LIBOR as it exists today, those indicative interest rates would result in total interest expense for 2008 of approximately $537 million.[2] If either (i) LIBOR increases 1.00 percentage point, or (ii) the interest rates actually obtained are higher than those indicative rates by only 1.13 percentage points, then the Debtors may fail to satisfy the Interest Expense Condition. In light of current market conditions (the volatility of which both the Debtors and the Plan Investors have acknowledged), this 8.94% cushion is simply insufficient, thus creating an undue risk that the Plan Investors will not be obligated to consummate the Amended EPCA.

13. The Committee believes that a cap of $625 million on projected interest expense for 2008 appropriately balances the Plan Investors' concerns over the Debtors' liquidity and the Committee's concern over certainty of closing the Amended EPCA. Such a cap would increase the cushion described above to 16.39%, thereby permitting either an increase in current LIBOR of up to 1.80 percentage points or an increase in the applicable LIBOR margin of 2.03

---

[2] This figure assumes the current debtor-in-possession facility remains in place through the end of February 2008 and the exit financing arrangements become effective in March 2008, remaining in place through the end of 2008.

NY\1353693.5

percentage points before the Interest Expense Condition is violated. A cap of $585 million is simply not sufficiently flexible in light of the Debtors' current projections for 2008 and the terms of the Exit Engagement Letter. For the foregoing reasons, the Committee believes that this Court should deny the Motion unless the Interest Expense Condition cap is increased to a more appropriate and flexible level of $625 million. In the alternative, given the level of risk that the Debtors face in being unable to satisfy the Interest Expense Condition, this Court should provide in any order approving the Motion that the Plan Investors are not entitled to, and may not receive, the Approval Fees until the Interest Expense Condition is either satisfied or waived.

**WHEREFORE,** the Committee respectfully requests that this Court (a) either (i) deny the Motion unless the infirmity described herein is remediated or (ii) provide in any order approving the Motion that the Plan Investors are not entitled to, and may not receive, the Approval Fees until the Interest Expense Condition is either satisfied or waived, and (b) grant it such other relief as is just and proper.

Dated: December 5, 2007
      New York, New York

                  **LATHAM & WATKINS LLP**

                  By: /s/ Robert J. Rosenberg
                      Robert J. Rosenberg (RR-9585)
                      Mitchell A. Seider (MS-4321)
                      Mark A. Broude (MB-1902)
                      885 Third Avenue, Suite 1000
                      New York, New York 10022
                      Telephone: (212) 906-1200

                  Counsel for the Official Committee
                  of Unsecured Creditors

NY\1353693.5