EXHIBIT C

Objections To The Disclosure Statement Of Delphi Corporation And The Affiliate Debtors
Organized By Objector

**Exhibit C**

*Objections To The Disclosure Statement Of Delphi Corporation And The Affiliate Debtors Organized By Objector*

*Objections Filed On Or Before November 2,2007*

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 1. | 10792 | Sheryl Carter | Letter from Sheryl Carter to the Bankruptcy Court, dated October 23, 2007, objecting to Delphi filing for bankruptcy. | A similar objection lodged by the objector prior to the September 28 disclosure statement objection deadline was overruled by the Bankruptcy Court at the October 3, 2007 hearing on the Disclosure Statement. |
| 2. | 10794 | Lead Plaintiffs | Lead Plaintiffs reserve their rights to raise objections to the Disclosure Statement at the hearing on the Disclosure Statement if certain of the Lead Plaintiffs' concerns are not resolved prior to the hearing regarding, among other things, third party releases and certain conditions to the effectiveness of the Plan. | |
| 3. | 10795 | Official Committee of Equity Security Holders | Equity Committee Emergency Motion requesting: | |
| | | | (a) The Disclosure Statement Hearing be adjourned and the Debtors required to provide twenty-five days notice of a new hearing date to comply with Bankruptcy Code sections 1125(b) and 102(1) as required under Bankruptcy Rules 2002(b) and 3017(a). | The Disclosure Statement and EPCA hearings were continued to November 29, 2007.  The Notice of the ongoing hearing was sufficient and the Bankruptcy Rules do not require any further notices. |
| | | | (b) The EPCA Hearing be adjourned and the Debtors required to provide twenty days notice of a new hearing date to comply with Bankruptcy Code sections 363(b) and 102(1) as required under Bankruptcy Rule 2002(a). | See above. |
| | | | (c) New deadlines be fixed for objections to the Disclosure Statement and the EPCA Motion. | See above. |

1

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 4. | 10802 | Official Committee of Equity Security Holders | **The Disclosure Statement does not contain adequate information under Section 1125 of the Bankruptcy Code.** | |
| | | | (a) The Disclosure Statement does not contain adequate information concerning the changes in the Debtors' valuation and the structure of shareholder recoveries as changed by the Plan and EPCA amendments. | The Disclosure Statement clearly states the basis for the valuation of the New Common Stock, on which recoveries to stakeholders are based.  Moreover, the Disclosure Statement contains a risk factor entitled "Value Of, And Market For, New Common Stock," which addresses the concerns raised by the objectors.  The Disclosure Statement is not required to guarantee a certain value, and can only caution investors or voters to consider potential variation to the value ascribed to the New Common Stock.  This caution is achieved not only through inclusion of a specifically targeted risk factor, but also through inclusion of Rothschild's range of potential values for the shares of New Common Stock.  Based on the detailed concerns raised by the objectors, they were apparently able to comprehend this uncertainty.  To the extent that the objectors disagree with the Debtors' asserted valuation, such concerns must be addressed in the context of confirmation, and not prior to this Court's approval of the Disclosure Statement.  If such attacks were permitted, every Disclosure Statement hearing could potentially devolve into a valuation dispute that is inappropriate at such a preliminary stage.  The Debtors revised and expanded the Disclosure Statement's Executive Summary to more fully describe, among other things, the range of values attributable to the New Common Stock and the resulting impact on recoveries to creditors.  See, e.g., DS-xix-xxii.[1] |
| | | | (b) The Disclosure Statement does not contain adequate information concerning the renegotiation of the terms of the Plan Investors' acquisition of the Debtors and the reasons why the Debtors allowed the Plan Investors to renegotiate the EPCA. | The Disclosure Statement contains an extensive discussion of the events leading up to the initial Investment Agreement in January 2007, the second Investment Agreement in August of 2007, and the later proposed amendments to that agreement.  The Debtors believe that the discussion contained in the Disclosure Statement is adequate. |

---

[1]    Page references are to the Cumulative Disclosure Statement blackline, attached as Exhibit G to the Debtors' Reply.

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (c) The Disclosure Statement does not contain adequate information concerning the process by which the terms of the plan changes were negotiated and the good faith and arms-length nature thereof. | Although the Debtors believe the recoveries are described in adequate detail and that the current description of events provides stakeholders with enough information to cast a vote regarding the Plan, in further resolution of this objection, the Debtors have added disclosure detailing the negotiation of the amendment to the Investment Agreement.  The Debtors dispute, however, the allegations of lack of good faith in negotiations.  There is not a scintilla of evidence that the Investment Agreement amendments, and the corresponding Plan changes, were not negotiated in good faith.  Delphi's board of directors was guided by the investments that GM and the Plan Investors were willing to make in the Debtors to fund the Plan.  GM and Appaloosa are contributing billions of dollars to the Debtors' reorganization, and because of their investments GM and the Plan Investors are requiring that certain terms of the Plan and Investment Agreement be acceptable to them. See, e.g., DS-129-32. |
| | | | (d) The Disclosure Statement provides inadequate disclosure about the value of the potential GM claims and the GM settlement. | The Disclosure Statement contains more than 30 pages of discussion of the GM claims and settlement (approximately 10% of the Disclosure Statement).  Moreover, the GM agreements are appended to the Plan as exhibits.  The Liquidation Analysis attached as Exhibit E to the Disclosure Statement presents the Debtors' reasonable view that the return from any litigation against GM (including claims based in RICO) would be highly speculative.  The Debtors, in their business judgment, decided that the value of the Debtors' businesses would be higher based on a settlement with GM, rather than converting the Debtors' estates into a litigation trust for resolution of the GM claims.  Nonetheless, the Debtors have added disclosure to the Disclosure Statement explaining that payment of par plus accrued to unsecured creditors has consistently been a bedrock principle in negotiations with GM and the Creditors' Committee.  See, e.g., DS-42. |

| | Docket No. | Objector | Summary of Objection | Resolution, Response, or Proposal |
|---|---|---|---|---|
| | | | (e)    The Disclosure Statement lacks adequate information regarding vital aspects of the MDL proceedings and related settlement. | The Disclosure Statement contains adequate discussion of the MDL proceedings, the causes of action asserted by the MDL plaintiffs, and the settlement between the MDL plaintiffs and the defendants in the MDL action.  In addition, the MDL Settlements which were mediated by a former federal judge and preliminarily approved by the United States District Court in the Eastern District of Michigan, are attached to the Plan as an exhibit. |
| | | | (f)    The Disclosure Statement fails to demonstrate the basis for providing unsecured creditors with postpetition interest. | The payment of a "par plus accrued" recovery to holders of General Unsecured Claims was a fundamental principle of the framework agreements negotiated by GM and the Creditors' Committee, and the Debtors in the second half of 2006, and has been incorporated into the Plan that has been approved of and supported by GM and the Plan Investors.  In addition, the Debtors believe that this objection ignores case law holding that junior classes cannot complain when senior classes receive postpetition interest on their claims.  See In re Coram Healthcare Corp., 315 B.R. 321, 344-45 (Bankr. D. Del. 2004) (plan's payment of postpetition interest on claims is fair and equitable under section 1129(b)(2)).  Nonetheless, the Debtors have added disclosure to the Disclosure Statement explaining that payment of par plus accrued to unsecured creditors has consistently been a bedrock principle in negotiations with GM and the Creditors' Committee.  See, e.g., DS-42. |
| | | | (g)    The Disclosure Statement does not provide adequate information to support its assertion that the Debtors may be substantively consolidated under the Plan. | The Debtors have reserved their rights with respect to substantive consolidation.  The Disclosure Statement is not required to set forth all possible bases for substantive consolidation.  The Disclosure Statement adequately explains the nature of the substantive consolidation the Debtors will seek if they elect to pursue substantive consolidation.  A stakeholders' standing in these cases to be heard on certain Plan related confirmation  issues will be determined by the Bankruptcy Court if and when appropriate.  It is the Debtors' position, however, that an unimpaired claim or interest holder would have no basis on which to object to substantive consolidation.  The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation.  See, e.g., DS-xxiv, DS-245. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (h)    The Disclosure Statement fails to disclose the basis for providing third party releases in the now non-consensual plan. | The Disclosure Statement describes the third party releases to be provided by the Plan, and is not required to set forth an explanation with respect to the releases.  If parties object to the proposed releases, those parties can vote against the plan and object to such releases in the context of the Confirmation Hearing.  The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to the third party releases granted under the Plan.  See, e.g., DS-xxiv, DS-245. |
| | | | **The Disclosure Statement must not be approved because the Plan is unconfirmable.** | |
| | | | (a)    The Plan impermissibly provides Senior Unsecured Creditors with more than par-plus-accrued recovery. | This is a confirmation objection related to the Debtors' valuation.  The Plan value of the New Common Stock in reorganized Delphi is $59.61 per share, although the Debtors' valuation contained in Appendix D to the Disclosure Statement provides for a range of recoveries based on the per share price of equity. |
| | | | (b)    The GM Settlement is not reasonable or appropriate. | The standard for approving a settlement as part of a Plan of reorganization is whether the proposed settlement is fair and equitable, reasonable, and in the best interests of the Debtors' estates.  The Debtors believe that the settlement with GM is well within the range of reasonableness and should be approved by the Bankruptcy Court as part of the Plan. |
| | | | (c)    The Plan impermissibly provides for postpetition interest on Creditors claims. | A fundamental concept of the Plan is that unsecured creditors will receive a "par plus accrued recovery at Plan value."  The Equity Committee's objection  ignores case law holding that junior classes cannot complain when senior classes receive postpetition interest on their claims.  See In re Coram Healthcare Corp., 315 B.R. 321, 344-45 (Bankr. D. Del. 2004) (plan's payment of postpetition interest on claims is fair and equitable under section 1129(b)(2)).  The Plan provides for the payment of postpetition interest through the earlier of January 31, 2008 or the Confirmation Date.  Disputed claims will only be precluded from receiving post-confirmation interest during such time as the claim is disputed. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (d) The treatment of the Section 510(b) Equity Claims under the Plan violates the Bankruptcy Code. | This is a confirmation objection. The Debtors will seek final approval of the MDL settlements at the time of the confirmation hearing. Moreover, if the Court finds that General Unsecured Claims are paid par plus accrued at Plan value, this objection will be rendered moot at the confirmation hearing. Even if the Court does not so find, a substantial portion of the consideration provided to section 510(b) equity claims is derived from the GM settlement and therefore not subject to the absolute priority rule. |
| | | | (e) There is no basis for substantive consolidation of the Debtors under the Plan. | The Disclosure Statement discusses the Debtors' bases for substantive consolidation. The Debtors are not required to fully brief the legal standards for substantive consolidation in the Disclosure Statement, but will do so in their brief in support of confirmation of the Plan. The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation. See, e.g., DS-xxiv, DS-245. |
| | | | (f) The third party releases violate prevailing law in the Second Circuit. | The releases granted to third parties are appropriate for this case and are reasonable under the standards established in Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 141 (2d Cir. 2005). |
| 5. | 10803 | Ad Hoc Bondholders[2] | **The Disclosure Statement must not be approved because the Plan is unconfirmable.** | |

---

[2] The members of the Ad Hoc Bondholders include Caspian Capital Advisors, LLC, Castlerigg Master Investments Ltd., Davidson Kempner Capital Management LLC, Elliott Associates, L.P., Gradient Partners, L.P., Sailfish Capital Partners, LLC, And Whitebox Advisors, LLC.

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (a) The Plan impermissibly classifies Senior Notes with the TOPrS. | This is a confirmation objection.  However, contractually subordinated unsecured claims may be placed in the same class of senior and other unsecured claims.  Courts have noted that under section 1122(a) the "similarity of claims is not judged by comparing creditor claims inter se.  Rather, the question is whether the claims in a class have the same or similar legal status in relation to assets of the debtor." In re Frascella Enterps., Inc., 360 B.R. 435, 443 (Bankr. E.D. Pa. 2007) (citing In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995)); see also In re Union Financial Svcs. Group, 325 B.R. 816, 821 n.3 (Bankr. E.D. Mo. 2004) ("The fact that [creditor's] [c]laim is subordinated to other class members does not change the fact that as between [creditor] and [debtor] the claim is unsecured priority"); In re Eagle Bus Manufacturing, Inc., 134 B.R. 584, 595 (Bankr. S.D. Tex. 1991) ("The Plan's classification of the 11% Junior Subordinated Note Claim, the 12½% Senior Subordinated Note Claims and the 13% Senior Note Claims in GLI Class 7 with all other Unsecured Claims is appropriate and proper under all relevant provisions of the Bankruptcy Code."). |
| | | | (b) The Plan's proposed substantive consolidation for voting and distribution purposes is impermissible and the resulting classification scheme is based on an attempt to gerrymander the vote on the Plan. | The Disclosure Statement discusses the Debtors' bases for substantive consolidation.  The Debtors are not required to fully brief the legal standards for substantive consolidation in the Disclosure Statement, but will do so in their brief in support of confirmation of the Plan.  The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation.  See, e.g., DS-xxiv, DS-245. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (c)  The Plan impermissibly treats creditors in Class 1C differently. | This is a confirmation objection. The Plan's proposed treatment of the subordinated TOPrS and other general unsecured claims is also consistent with section 1123(a)(4), which requires all members of a class to receive the same treatment. Here, the Plan provides that all general unsecured creditors, including holders of TOPrS, will receive New Common Stock and Discount Rights valued at the full amount of their claims. The amount of the claims of unsecured creditors, excluding TOPrS, will include postpetition interest. Section 1123(a)(4) permits a plan to give senior and subordinated creditors disparate distributions when based on an allocation of distributions otherwise payable to the junior creditors to the senior creditors. See In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995) (allocation of subordinated creditors' distributions to senior creditors in same class did not violate section 1123(a)(4)). Here, the Plan has allocated the postpetition interest that the Debtors could fairly and equitably pay to subordinated TOPrS (see "Absolute Priority And Other Fair And Equitable Issues" above) to the senior creditors in that same class. This treatment is consistent with section 1123(a)(4). |
| | | | (d)  The Plan impermissibly seeks "deemed consolidation," not true substantive consolidation. | This is a confirmation objection. The Disclosure Statement discusses the Debtors' bases for substantive consolidation. The Debtors are not required to fully brief the legal standards for substantive consolidation in the Disclosure Statement, but will do so in their brief in support of confirmation of the Plan. The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation. See, e.g., DS-xxiv, DS-245. |
| | | | **The Disclosure Statement does not contain adequate information under Section 1125 of the Bankruptcy Code.** | |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (e)  The Disclosure Statement does not contain adequate information regarding the value of the New Common Stock and the recoveries to holders of unsecured claims. | The Disclosure Statement clearly states the basis for the valuation of the New Common Stock, on which recoveries to stakeholders are based.  Moreover, the Disclosure Statement contains a risk factor entitled "Value Of, And Market For, New Common Stock," which addresses the concerns raised by the objectors.  The Disclosure Statement is not required to guarantee a certain value, and can only caution investors or voters to consider potential variation to the value ascribed to the New Common Stock.  This caution is achieved not only through inclusion of a specifically targeted risk factor, but also through inclusion of Rothschild's range of potential values for the shares of New Common Stock.  Based on the detailed concerns raised by the objectors, they were apparently able to comprehend this uncertainty.  To the extent that the objectors disagree with the Debtors' asserted valuation, such concerns must be addressed in the context of confirmation, and not prior to this Court's approval of the Disclosure Statement.  If such attacks were permitted, every Disclosure Statement hearing could potentially devolve into a valuation dispute that is inappropriate at such a preliminary stage.  The Debtors revised and expanded the Disclosure Statement's Executive Summary to more fully describe, among other things, the range of values attributable to the New Common Stock and the resulting impact on recoveries to creditors.  See, e.g., DS-xix-xxii. |
| | | | (f)  Appendix D to the Disclosure Statement contains insufficient information regarding the valuation methodologies used by Rothschild. | The Disclosure Statement contains adequate information describing the Debtors' valuation and the process used for reaching the deemed Plan value of the New Common Stock.  The valuation contained in Appendix D to the Disclosure Statement includes Rothschild's standard form of valuation analysis, and is the form typically used in most chapter 11 cases of this nature.  In addition, the Debtors have added additional disclosure describing the range of potential recoveries to stakeholders, clarifying the differences between Plan Equity Value and total enterprise value, as well as the differences between market value and intrinsic value.  See, e.g., DS-xix-xxii. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (g)  The Disclosure Statement does not adequately disclose the allegedly conflicting interests of Appaloosa and GM. | The Debtors have included additional disclosure regarding the involvement of GM and Appaloosa in Delphi's reorganization. Although the Disclosure Statement explains at great length the interconnected relationship of Delphi and GM and the role of Appaloosa in the Debtors' reorganization, the Debtors do not agree with the assertion that GM and Appaloosa have any conflicting interests.  To the contrary, GM and the Plan Investors will together contribute billions in value to the Debtors' reorganization.  As a result of these contributions and their agreements with the Debtors, GM and the Plan Investors obtained the right to approve the Plan, and the Plan proposed by the Debtors has been approved by GM and the Plan Investors.  See, e.g., DS-42, DS-60. |
| | | | (h)  The Disclosure Statement does not adequately disclose the treatment of intercreditor rights. | Agreed.  The Debtors have included additional disclosure regarding the operation of the Subordinated Indenture subordination provision, however, the Debtors believe this objection is without merit based on the payment of Senior Notes in full (including postpetition interest that has accrued during the pendency of these chapter 11 cases). See, e.g., DS-190-91. |
| | | | (i)  The Disclosure Statement does not contain an adequate discussion of the Debtors' exit financing. | The Disclosure Statement thoroughly sets out the exit financing planned by the Debtors on emergence, and the effect of this financing on the Debtors' post-emergence capital structure.  The Debtors filed a motion seeking approval of exit financing arrangements prior to the hearing on the Disclosure Statement, the Bankruptcy Court approved those arrangements on November 16, and the Debtors have incorporated that information into the Disclosure Statement. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (j)  The Disclosure Statement does not contain an adequate discussion of substantive consolidation. | The Debtors have reserved their rights with respect to substantive consolidation.  The Disclosure Statement is not required to set forth all possible bases for substantive consolidation.  The Disclosure Statement adequately explains the nature of the substantive consolidation the Debtors will seek if they elect to pursue substantive consolidation.  A stakeholders' standing in these cases to be heard on certain Plan related confirmation  issues will be determined by the Bankruptcy Court if and when appropriate.  It is the Debtors' position, however, that an unimpaired claim or interest holder would have no basis on which to object to substantive consolidation.  The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation.  See, e.g., DS-xxiv, DS-245. |
| | | | (k)  The Disclosure Statement does not adequately disclose the value of the Debtors' claim against GM. | The Disclosure Statement contains more than 30 pages of discussion of the GM claims and settlement (approximately 10% of the Disclosure Statement).  Moreover, the GM agreements are appended to the Plan as exhibits.  The Liquidation Analysis attached as Exhibit E to the Disclosure Statement presents the Debtors' reasonable view that the return from any litigation against GM (including claims based in RICO) would be highly speculative.  The Debtors, in their business judgment, decided that the value of the Debtors' businesses would be higher based on a settlement with GM, rather than converting the Debtors' estates into a litigation trust for resolution of the GM claims.  In addition, the Debtors have added disclosure regarding GM's estimate of the amount of its claim.  See, e.g., DS-60. |
| | | | (l)  The Disclosure Statement does not contain an adequate discussion of the releases granted under the Plan and the causes of action that may be released. | The Disclosure Statement describes the third party releases to be provided by the Plan, and is not required to set forth an explanation with respect to the releases.  If parties object to the proposed releases, those parties can vote against the plan and object to such releases in the context of the Confirmation Hearing.  The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to the third party releases granted under the Plan.  See, e.g., DS-xxi, DS-245. |

| | Docket No. | Objector | | Summary of Objection | Resolution, Response, or Proposal |
|---|---|---|---|---|---|
| | | | (m) | The Disclosure Statement does not adequately describe the impact of the MDL settlements on the Senior Notes. | The Disclosure Statement contains adequate discussion of the MDL proceedings, the causes of action asserted by the MDL plaintiffs, and the settlement between the MDL plaintiffs and the defendants in the MDL action.  In addition, the MDL Settlements which were mediated by a former federal judge and preliminarily approved by the United States District Court in the Eastern District of Michigan, are attached to the Plan as an exhibit. |
| 6. | 10804 | Official Committee of Unsecured Creditors | (a) | The Disclosure Statement fails to provide adequate information because section 1.154(b) of the current Plan would cease the accrual of postpetition interest to General Unsecured Claims other than TOPrS on January 31, 2007, even though the Plan will not have been confirmed by that date. | Agreement on this date was reached between the Debtors and stakeholders in connection with the restated Investment Agreement. |
| | | | (b) | The Disclosure Statement fails to provide adequate information because section 7.31 could dilute the value of the common stock distributed under the Plan to holders of General Unsecured Claims and provide for the Plan Investors to receive additional stock without consideration. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Distribution Of New Common Stock With Respect To Trade And Other Unsecured Claims In Excess Of $1.45 Billion," which the Debtors believe is sufficient to describe such a potential risk. |
| | | | (c) | The Disclosure Statement states that the Creditors' Committee supports the Plan.  If the foregoing Plan issues are not resolved, the Disclosure Statement needs to be revised to remove all statements regarding Creditors' Committee support of the Plan and insert statements disclosing that Creditors' Committee will oppose the Plan until section 1.154(b) is modified to the Creditors' Committee's satisfaction and section 7.31 is deleted. | The Debtors believe that the Creditors' Committee supports the Plan. |
| 7. | 10807 | Brandes Investment Partners, LP | | Statement of Brandes Investment Partners, L.P. In Support of Emergency Motion Filed by the Official Committee of Equity Security Holders | See Response in row 3 above. |

| | DOCKET NO. | OBJECTOR | | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|---|
| 8. | 10810 | Wilmington Trust | (a) | Valuations set forth in the Disclosure statement should be set forth in terms of the Rothschild valuation using actual per share valuations and actual valuations of the recoveries Unsecured Creditors can expect to receive on a fully diluted basis. | The Disclosure Statement makes clear that, for purposes of making distributions under the Plan, the equity value of the Reorganized Debtors to be distributed is equal to the Debtors' total enterprise value of $13.4 billion, less net debt and warrant value of approximately $5.3 billion, which results in a distributable equity value of $8.1 billion, or $61.72 per share of New Common Stock based on 131,266,410 shares (assuming full conversion of the New Preferred Stock) issued and outstanding as of the Effective Date. This valuation procedure, which captures the actual intrinsic value of the Reorganized Debtors, is more appropriate for determining and describing distributions than valuation based on short-term trading prices.  See, e.g., DS-xvi-xxii, DS-132-33. |
| | | | (b) | When calculating actual distribution values, in the Disclosure Statement the Debtors should take into account the dilution which can be expected as a result of the management compensation plan and any potential allowance of trade and unsecured claims in excess of $1.45 billion. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Distribution Of New Common Stock With Respect To Trade And Other Unsecured Claims In Excess Of $1.45 Billion," which the Debtors believe is sufficient to describe such a potential risk.  The Disclosure Statement also contains a risk factor entitled "Potential Dilution Caused By Options Or Warrants" that specifically identifies such potential dilution. |
| | | | (c) | The tables in the Executive Summary of the Disclosure Statement should indicate what creditor recoveries might otherwise be if the MDL settlement is not approved and the contractual subordination rights provided for in the Subordinated Notes Indenture is fully effectuated without the limitations set forth in Section 11.10 of the Plan. | The Disclosure Statement is not required to describe any potential Plan scenario, it is merely required to accurately describe the proposed transaction being offered to creditors. |
| | | | (d) | In the discussion beginning on DS-95, the Disclosure Statement should indicate in the management compensation section the cost, both initially and over time, of the incentive plan, as well as indicate the dilution in value of the recovery to unsecured creditors that is expected to be caused as a result of this incentive plan.  The recoveries to unsecured creditors should be stated on a fully diluted basis. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Options Or Warrants," which is sufficient to describe such a potential risk. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (e)  On pages DS-199 to DS-120, in the discussion concerning the Discount Rights Offering to holders of General Unsecured Claims, the Disclosure Statement should indicate how the Debtors determined the value of the rights. | Agreed.  The Debtors have added disclosure explaining that the value of the rights being offered in the Discount Rights Offering were negotiated among the Plan Investors, GM, and the Debtors. The Discount Rights exercise price was set at a market-clearing price to ensure that the Discount Rights Offering would provide value to participating creditors.  In addition, the discount for the rights offering is within the range of discounts recently used in other bankruptcy cases utilizing discount rights offerings.  See, e.g., DS-132-33. |
| | | | (f)  In the discussion regarding substantive consolidation beginning on DS-157, the Disclosure statement should provide the actual facts on which the Debtors' determination regarding the appropriateness of substantive consolidation was made. | The Debtors have reserved their rights with respect to substantive consolidation.  The Disclosure Statement is not required to set forth all possible bases for substantive consolidation.  The Disclosure Statement adequately explains the nature of the substantive consolidation the Debtors will seek if they elect to pursue substantive consolidation.  A stakeholders' standing in these cases to be heard on certain Plan related confirmation  issues will be determined by the Bankruptcy Court if and when appropriate.  It is the Debtors' position, however, that an unimpaired claim or interest holder would have no basis on which to object to substantive consolidation. |
| | | | (g)  The Disclosure Statement should explain why substantive consolidation of the Debtors' assets and liabilities is necessary and appropriate while consolidation of the 42 Debtor entities is not. | The Debtors have reserved their rights with respect to substantive consolidation.  The Disclosure Statement is not required to set forth all possible bases for substantive consolidation.  The Disclosure Statement adequately explains the nature of the substantive consolidation the Debtors will seek if they elect to pursue substantive consolidation.  A stakeholders' standing in these cases to be heard on certain Plan related confirmation  issues will be determined by the Bankruptcy Court if and when appropriate.  It is the Debtors' position, however, that an unimpaired claim or interest holder would have no basis on which to object to substantive consolidation.  The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation.  See, e.g., DS-xxiv, DS-245. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (h) On page DS-205, the Disclosure Statement should indicate the amount of additional recovery that holders of Senior Debt could otherwise recover on account of the subordination provision of the Subordinated Notes Indenture but for section 11.10 of the Plan purporting to satisfy the contractual subordination provisions of the Subordinated Notes Indenture. | This is a confirmation objection that is based on the valuation of the Debtors. Because the Debtors' Plan provides for payment in full of the Senior creditors, this objection will be moot. |
| | | | (i) To the extent the waiver of the subordination provision will provide a benefit to the Plan Investors in their capacity as holders of TOPrS claims, the Disclosure Statement should set forth the amount of such claims held by the Plan Investors, the amount of additional recovery the Plan Investors are expected to receive on their TOPrS claims as a result of the effect of section 11.10, and a discussion of any negotiations the Debtors have had with the Plan Investors concerning section 11.10. | The Debtors added language to the Disclosure Statement providing the holdings of certain Plan Investors as publicly disclosed under Rule 2019 of the Bankruptcy Code and Form 13-D. No further disclosure is required or appropriate. See, e.g., DS-129. |
| | | | (j) On DS-221 and in the Executive Summary, the Disclosure Statement should set forth the dollar amount of potential dilution expected to be caused by options or warrants. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Options Or Warrants" that specifically identifies such potential dilution. The Debtors believe the level of disclosure is appropriate. |
| | | | (k) On DS-221 and in the Executive Summary, the Disclosure Statement should set forth the dollar amount of potential dilution expected to be caused by the distribution of New Common Stock with respect to Trade And Other Unsecured Claims in excess of $1.45 billion, the likelihood such additional claims may exist and be allowed, and the effect of the dilution on recoveries of holders of Unsecured Claims as a result of the allowance of such additional claims. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Distribution Of New Common Stock With Respect To Trade And Other Unsecured Claims In Excess Of $1.45 Billion," which the Debtors believe is sufficient to describe such a potential risk. |
| | | | (l) On DS-240, the Disclosure Statement should indicate the basis on which the Plan can be crammed down over the objection of holders of Unsecured Claims given the recoveries provided in the Plan to MDL plaintiffs and the proposed subordination waiver by the holders of Senior Debt for the benefit of holders of TOPrS claims. | The Disclosure Statement contains a section entitled "Confirmation Without Acceptance Of All Impaired Classes: The 'Cramdown' Alternative" that thoroughly discusses the requirements for cramdown under section 1129(b) of the Bankruptcy Code. The Debtors are not required to assess the potential of for any particular cramdown scenario as part of the Disclosure Statement. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (m) On DS-241, notwithstanding the description of the limited circumstances in which the Debtors may amend the proposed Plan, the Disclosure Statement fails to indicate the circumstances under which 11 U.S.C. § 1127 would permit the Debtors to modify the Plan either before or after confirmation. | The Debtors have explicitly reserved the right to modify the Plan prior to the Effective Date, and such modifications are governed by Section 1127 of the Bankruptcy Code and require no further discussion in the Disclosure Statement. |
| | | | (n) On DS-244, the Disclosure Statement should set forth the facts which would indicate an inability for the Debtors to survive as a going concern in a protracted chapter 11 case while an amended plan is negotiation or litigated, given that the Debtors' businesses have been substantially stabilized. | Agreed.  The Debtors have added a discussion of Event Risks to the Executive Summary of the Disclosure Statement.  See DS-xvii-xviii. |
| | | | (o) The Plan impermissibly places Senior Debt and subordinated debt in the same class in violation of 11 U.S.C. § 1122, which could cause the votes of Senior Debt holders to be artificially diluted by the votes of holders of TOPrS claims. | This is a confirmation objection.  However, contractually subordinated unsecured claims may be placed in the same class of senior and other unsecured claims.  Courts have noted that under section 1122(a) the "similarity of claims is not judged by comparing creditor claims inter se.  Rather, the question is whether the claims in a class have the same or similar legal status in relation to assets of the debtor." In re Frascella Enterps., Inc., 360 B.R. 435, 443 (Bankr. E.D. Pa. 2007) (citing In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995)); see also In re Union Financial Svcs. Group, 325 B.R. 816, 821 n.3 (Bankr. E.D. Mo. 2004) ("The fact that [creditor's] [c]laim is subordinated to other class members does not change the fact that as between [creditor] and [debtor] the claim is unsecured priority"); In re Eagle Bus Manufacturing, Inc., 134 B.R. 584, 595 (Bankr. S.D. Tex. 1991) ("The Plan's classification of the 11% Junior Subordinated Note Claim, the 12½% Senior Subordinated Note Claims and the 13% Senior Note Claims in GLI Class 7 with all other Unsecured Claims is appropriate and proper under all relevant provisions of the Bankruptcy Code."). |
| | | | (p) The Voting Record Date should not be fixed at September 28, 2007 as requested in the Solicitation Motion, but at the date of the order approving the Disclosure Statement. | The revised proposed order attached as an exhibit to the Debtors' omnibus reply proposes a new Voting Record Date of November 26, 2007. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (q) The Disclosure Statement should indicate that the distribution record date for holders of Senior Debt shall be as of the commencement of distribution, as provided under Fed. R. Bankr. P. 3021. | The Plan defines the Distribution Date as "the date, selected by the Reorganized Debtors, upon which distributions to holders of Allowed Claims and Allowed Interests entitled to receive distributions under this Plan shall commence; provided, however, that the Distribution Date shall occur as soon as reasonably practicable after the Effective Date, but in any event no later than 30 days after the Effective Date." The Distribution Date will accordingly be between the Effective Date and 30 days after the Effective Date. |

*Objections To The Disclosure Statement Of Delphi Corporation And The Affiliate Debtors Organized By Objector* [3]

*Objections Filed On November 21, 2007*

| | DOCKET NO. | OBJECTOR | | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|---|
| 9. | 11017 | Law Debenture Trust Company | (a) | The Plan does not contain a provision for payment of its postpetition fees and expenses. | The Plan provides for the payment of substantial contribution claims in Article 10.4. |
| | | | (b) | The Debtors should be required to place other General Unsecured claims and the TOPrS claims in different classes to ensure that the votes of TOPrS holders are not artificially diluted by the votes of holders of other General Unsecured claims. | This is a confirmation objection. However, contractually subordinated unsecured claims may be placed in the same class of senior and other unsecured claims. Courts have noted that under section 1122(a) the "similarity of claims is not judged by comparing creditor claims inter se. Rather, the question is whether the claims in a class have the same or similar legal status in relation to assets of the debtor." In re Frascella Enterps., Inc., 360 B.R. 435, 443 (Bankr. E.D. Pa. 2007) (citing In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995)); see also In re Union Financial Svcs. Group, 325 B.R. 816, 821 n.3 (Bankr. E.D. Mo. 2004) ("The fact that [creditor's] [c]laim is subordinated to other class members does not change the fact that as between [creditor] and [debtor] the claim is unsecured priority"); In re Eagle Bus Manufacturing, Inc., 134 B.R. 584, 595 (Bankr. S.D. Tex. 1991) ("The Plan's classification of the 11% Junior Subordinated Note Claim, the 12½% Senior Subordinated Note Claims and the 13% Senior Note Claims in GLI Class 7 with all other Unsecured Claims is appropriate and proper under all relevant provisions of the Bankruptcy Code."). |

---

[3]    This chart reflects all objections received as of 10:00 p.m. (Eastern Standard Time) on November 21, 2007.

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (c)  The TOPrS Claims are being unfairly discriminated against because they do not receive postpetition interest like other claims in the General Unsecured class of claims. | This is a confirmation objection.  The Plan's proposed treatment of the subordinated TOPrS and other general unsecured claims is also consistent with section 1123(a)(4), which requires all members of a class to receive the same treatment.  Here, the Plan provides that all general unsecured creditors, including holders of TOPrS, will receive New Common Stock and Discount Rights valued at the full amount of their claims.  The amount of the claims of unsecured creditors, excluding TOPrS, will include postpetition interest.  Section 1123(a)(4) permits a plan to give senior and subordinated creditors disparate distributions when based on an allocation of distributions otherwise payable to the junior creditors to the senior creditors.  See In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995) (allocation of subordinated creditors' distributions to senior creditors in same class did not violate section 1123(a)(4)).  Here, the Plan has allocated the postpetition interest that the Debtors could fairly and equitably pay to subordinated TOPrS (see "Absolute Priority And Other Fair And Equitable Issues" above) to the senior creditors in that same class.  This treatment is consistent with section 1123(a)(4). |
| | | | (d)  The Disclosure Statement should expressly state that the votes of all TOPrS Claim holders are meaningful to the confirmation process. | The Disclosure Statement includes instructions on voting and encourages all parties entitled to vote to vote on the Plan by returning ballots that will be provided. |
| | | | (e)  The Plan cannot be confirmed if class 1C votes against the Plan because junior classes receive distributions while TOPrS do not receive postpetition interest. | This is a confirmation objection, based on the valuation of the Debtors.  The Disclosure Statement clearly states the basis for the valuation of the New Common Stock, on which recoveries to stakeholders are based.  To the extent that the Ad Hoc Trade committee disagrees with the Debtors' asserted valuation, such concerns must be addressed in the context of confirmation, and not prior to this Court's approval of the Disclosure Statement.  If such attacks were permitted, every Disclosure Statement hearing could potentially devolve into a valuation dispute that is inappropriate at such a preliminary stage.  Moreover, if the Court finds that General Unsecured Claims are paid par plus accrued at Plan value, this objection will be rendered moot at the confirmation hearing. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 10. | 11022 | Lead Plaintiffs | Lead Plaintiffs reserve their rights to raise objections to the Disclosure Statement at the hearing on the Disclosure Statement if certain of the Lead Plaintiffs' concerns are not resolved prior to the hearing regarding, among other things, third party releases and certain conditions to the effectiveness of the Plan. | |
| 11. | 11028 | Equity Committee | (a) The Disclosure Statement does not provide legitimate rationale for the increase in the Plan Investors' return on investment. | The Disclosure Statement contains an extensive discussion of the events leading up to the initial Investment Agreement in January 2007, the second Investment Agreement in August of 2007, and the later proposed amendments to that agreement.  The Debtors believe that the discussion contained in the Disclosure Statement is adequate. |
| | | | (b) The Equity Committee generally reasserts the arguments related to the inability to confirm the Plan as contained in its November 2, 2007 objection. | See responses to November 2 objection. |
| 12. | 11034 | Official Committee of Unsecured Creditors | (a) The Disclosure Statement must be revised to reflect the Creditors' Committee's opposition to the Plan. | The Debtors believe that the Creditors' Committee supports the Plan. |
| | | | (b) The Disclosure Statement must be revised to reflect the Creditors' Committee's belief that the Plan cannot be confirmed without the support of the class of General Unsecured Claims. | The Debtors believe that the Creditors' Committee supports the Plan. |
| | | | (c) The current Plan provides too much value to the Plan Investors, taking value from holders of General Unsecured Claims. | This is an objection to the amendment to the EPCA, and is inappropriate as an objection to the Disclosure Statement. |
| | | | (d) The Disclosure Statement should include a letter from the Creditors' Committee inside the front cover of the Disclosure Statement in each Solicitation Package reflecting the Committee's opposition to the Plan, the reasons for such opposition, the Creditors' Committee's recommendation that unsecured creditors vote to reject the Plan, and the Creditors' Committee's belief that the class of General Unsecured Claims will reject the Plan, rendering the Plan uncomfirmable. | The Debtors believe that the Creditors' Committee supports the Plan. |

|  | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
|  |  |  | (e) The Plan provides for distributions in complete disregard to the absolute priority rule (for example, providing distributions to contractually and statutorily subordinated creditors and equity without regard to whether senior creditors have been paid in full) and thus the new plan proposal will be unconfirmable if the unsecured creditors reject it. | This is a Plan objection raised by the Creditors' Committee. Moreover, if the Court finds that General Unsecured Claims are paid par plus accrued at Plan value, this objection will be rendered moot at the confirmation hearing.  Even if the Court does not so find, a substantial portion of the consideration provided to unsecured creditors is derived solely from the GM settlement and is therefore not subject to the absolute priority rule. |
| 13. | 11045 | Ad Hoc Bondholders[4] | **The Disclosure Statement must not be approved because the Plan is unconfirmable.** |  |
|  |  |  | (a) The claims in class 1C are not "substantially similar" because senior and subordinated claims cannot be classified in the same class | See Response to November 2 objection in row 5(a) above. |
|  |  |  | (b) The claims in class 1C are not "substantially similar" because claims against different debtors have different rights to the Debtors' assets and cannot be classified together and the Plan's classification scheme is based on an attempt to gerrymander the vote on the Plan. | See Response to November 2 objection in row 5(b) above. |
|  |  |  | (c) The Plan is unconfirmable because claims classified together receive unequal treatment | See Response to November 2 objection in row 5(c) above. |
|  |  |  | (d) The Plan is unconfirmable because it does not enforce the subordination agreement | This is a confirmation objection.  Under the Plan, senior debt will be paid in full, and because of the payment in full,  the subordination agreement is being deemed satisfied.  The Senior Notes are being paid principal plus accrued postpetition interest under the terms of the Plan.  In compliance with the subordination agreement, Senior Notes and other general unsecured claims are being paid par plus accrued, while the TOPrS will receive the residual distributions available in the General Unsecured Claims class after these distributions are made. |
|  |  |  | (e) The Plan impermissibly seeks "deemed consolidation," not true substantive consolidation. | See Response to November 2 objection in row 5(d) above. |

---

[4]  The members of the Ad Hoc Bondholders include Caspian Capital Advisors, LLC, Castlerigg Master Investments Ltd., **CR Intrinsic Investors, LLC** (not a party to November 2 objection), Davidson Kempner Capital Management LLC, Elliott Associates, L.P., **Nomura Corporate Research and Asset Management, Inc.**(not a party to November 2 objection), , Sailfish Capital Partners, LLC, And Whitebox Advisors, LLC.  Gradient Partners, L.P. was a party to the November 2 objection, but is not a party to November 21 objection.

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | **The Disclosure Statement does not contain adequate information under Section 1125 of the Bankruptcy Code.** | |
| | | | (f) The Disclosure Statement does not contain adequate information regarding the value of the New Common Stock and the range of recoveries to holders of unsecured claims. | See Response to November 2 objection in row 5(e) above. |
| | | | (g) Appendix D to the Disclosure Statement contains insufficient information regarding the valuation methodologies used by Rothschild. | See Response to November 2 objection in row 5(f) above. |
| | | | (h) The Disclosure Statement does not adequately disclose the allegedly conflicting interests of Appaloosa and GM. | See Response to November 2 objection in row 5(g) above. |
| | | | (i) The Disclosure Statement does not adequately disclose the treatment of intercreditor rights. | See Response to November 2 objection in row 5(h) above. |
| | | | (j) The Disclosure Statement does not contain an adequate discussion of the Debtors' exit financing. | See Response to November 2 objection in row 5(i) above. |
| | | | (k) The Disclosure Statement does not contain an adequate discussion of substantive consolidation. | See Response to November 2 objection in row 5(j) above. |
| | | | (l) The Disclosure Statement does not adequately disclose the value of the Debtors' claim against GM. | See Response to November 2 objection in row 5(k) above. |
| | | | (m) The Disclosure Statement does not contain an adequate discussion of the releases granted under the Plan and the causes of action that may be released. | See Response to November 2 objection in row 5(l) above. |
| | | | (n) The Disclosure Statement does not adequately describe the impact of the MDL settlements on the Senior Notes. | See Response to November 2 objection in row 5(m) above. |
| 14. | 11048 | Wilmington Trust Company | (a) Wilmington Trust Company reasserts the arguments raised in its prior objection filed November 2, 2007. | |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (b) The Disclosure Statement fails to indicate what the actual value, as opposed to the plan value, is for the value of the stock and rights distributions unsecured creditors are to receive under the Plan and accordingly misleads creditors by stating that recoveries are par plus accrued. | The Disclosure Statement makes clear that, for purposes of making distributions under the Plan, the equity value of the Reorganized Debtors to be distributed is equal to the Debtors' total enterprise value of $13.4 billion, less net debt and warrant value of approximately $5.3 billion, which results in a distributable equity value of $8.1 billion, or $61.72 per share of New Common Stock based on 131,266,410 shares (assuming full conversion of the New Preferred Stock) issued and outstanding as of the Effective Date. This valuation procedure, which captures the actual intrinsic value of the Reorganized Debtors, is more appropriate for determining and describing distributions than valuation based on short-term trading prices.  See, e.g., DS-xvi-xxii, DS-132-33. |
| | | | (c) Aspects of the Event Risk description at pages DS xv-DS xvi should be deleted because Wilmington Trust Company does not view certain of these events worthy of disclosure or detrimental to creditors. | The Event Risks set forth in the Disclosure Statement are those that may impact creditor recoveries negatively if the Debtors cannot emerge from chapter 11 in a timely manner.  The Debtors are unwilling to reduce the level of disclosure. |
| | | | (d) The Disclosure Statement should explain why the lead plaintiffs are critical stakeholders given the fact that their claims should be subordinated to the claims of unsecured creditors. | The Disclosure Statement contains adequate discussion of the MDL proceedings, the causes of action asserted by the MDL plaintiffs, and the settlement between the MDL plaintiffs and the defendants in the MDL action.  In addition, the MDL Settlements which were mediated by a former federal judge and preliminarily approved by the United States District Court in the Eastern District of Michigan, are attached to the Plan as an exhibit. |
| | | | (e) The Disclosure Statement should indicate with whom the "negotiated Plan value" has been negotiated. | Agreed.  The Disclosure Statement has been amended to make clear that the Plan value of distributions was originally negotiated by the Creditors' Committee and GM during the framework discussion that took place during the summer of 2006 (before the selection of any plan investor), and later iterations have followed from these initial negotiations.  See, e.g., DS-42. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (f)  The chart describing creditor recoveries beginning on page DS-xx of the Amended Disclosure Statement should be revised to include actual dollar values of creditor recoveries based on the midpoint valuation determined by the Debtors financial advisors. | The Disclosure Statement clearly states the basis for the valuation of the New Common Stock, on which recoveries to stakeholders are based.  Moreover, the Disclosure Statement contains a risk factor entitled "Value Of, And Market For, New Common Stock," which addresses the concerns raised by the objectors.  The Disclosure Statement is not required to guarantee a certain value, and can only caution investors or voters to consider potential variation to the value ascribed to the New Common Stock.  This caution is achieved not only through inclusion of a specifically targeted risk factor, but also through inclusion of Rothschild's range of potential values for the shares of New Common Stock.  Based on the detailed concerns raised by the objectors, they were apparently able to comprehend this uncertainty.  To the extent that the objectors disagree with the Debtors' asserted valuation, such concerns must be addressed in the context of confirmation, and not prior to this Court's approval of the Disclosure Statement.  If such attacks were permitted, every Disclosure Statement hearing could potentially devolve into a valuation dispute that is inappropriate at such a preliminary stage. The Debtors revised and expanded the Disclosure Statement's Executive Summary to more fully describe, among other things, the range of values attributable to the New Common Stock and the resulting impact on recoveries to creditors.  See, e.g., DS-xix-xxii. |
| | | | (g)  The Disclosure Statement should state that the Debtors have not begun the process of seeking to syndicate their exit financing and do not plan to do so until approval of the amended agreement with the Plan Investors. | The Disclosure Statement thoroughly sets out the exit financing planned by the Debtors on emergence, and the effect of this financing on the Debtors' post-emergence capital structure.  The Debtors filed a motion seeking approval of exit financing arrangements prior to the hearing on the Disclosure Statement, the Bankruptcy Court approved those arrangements on November 16, and the Debtors have incorporated that information into the Disclosure Statement. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (h)  The Disclosure Statement should state that all parties-in-interest (such as Wilmington Trust Company) have a right to object to substantive consolidation of the Debtors, not just those parties holding claims that are impaired. | The Debtors have reserved their rights with respect to substantive consolidation. The Disclosure Statement is not required to set forth all possible bases for substantive consolidation. The Disclosure Statement adequately explains the nature of the substantive consolidation the Debtors will seek if they elect to pursue substantive consolidation. A stakeholders' standing in these cases to be heard on certain Plan related confirmation issues will be determined by the Bankruptcy Court if and when appropriate. It is the Debtors' position, however, that an unimpaired claim or interest holder would have no basis on which to object to substantive consolidation. The Debtors have added language to the Disclosure Statement describing the relevant objectors' position with respect to substantive consolidation. See, e.g., DS-xxiv, DS-245. |
| | | | (i)  The Disclosure Statement should state that creditors are entitled to recoveries based on the allowed <u>amount</u> of their claims, not on the <u>value</u> of such claims, which may vary in the marketplace at any given moment. | Agreed. The Debtors have revised the language in the Disclosure Statement to make clear that recoveries to creditors are based on the allowed amount of their claims. See, e.g., DS-189. |
| | | | (j)  The Plan and Amended Disclosure Statement should provide that the Discount Rights Offering record date for holders of Senior Debt should be the date of entry of the order confirming the Plan. | The revised proposed order attached as an exhibit to the Debtors' omnibus reply proposes a new Voting Record Date of November 26, 2007. The Plan defines the Distribution Date as "the date, selected by the Reorganized Debtors, upon which distributions to holders of Allowed Claims and Allowed Interests entitled to receive distributions under this Plan shall commence; <u>provided</u>, <u>however</u>, that the Distribution Date shall occur as soon as reasonably practicable after the Effective Date, but in any event no later than 30 days after the Effective Date." The Distribution Date will accordingly be between the Effective Date and 30 days after the Effective Date.<br><br>Wilmington Trust Company provides no basis for this objection, and instead baldly states that the current record date "is likely to lead to confusion and adversely affect the trading of the Senior Debt and the exercise of the rights." If Wilmington Trust Company has a valid reason for such a change, it should make that reason clear so that the Debtors can meaningfully respond. |

|  | **DOCKET NO.** | **OBJECTOR** | **SUMMARY OF OBJECTION** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|---|---|
| 15. | 11049 | Ad Hoc Trade Committee | (a)  The Disclosure Statement fails to disclose the basis for classifying the TOPrS Claims with other general unsecured claims and renders the Plan unconfirmable. | This is a confirmation objection.  The Plan's proposed treatment of the subordinated TOPrS and other general unsecured claims is also consistent with section 1123(a)(4), which requires all members of a class to receive the same treatment.  Here, the Plan provides that all general unsecured creditors, including holders of TOPrS, will receive New Common Stock and Discount Rights valued at the full amount of their claims.  The amount of the claims of unsecured creditors, excluding TOPrS, will include postpetition interest.  Section 1123(a)(4) permits a plan to give senior and subordinated creditors disparate distributions when based on an allocation of distributions otherwise payable to the junior creditors to the senior creditors.  See In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995) (allocation of subordinated creditors' distributions to senior creditors in same class did not violate section 1123(a)(4)).  Here, the Plan has allocated the postpetition interest that the Debtors could fairly and equitably pay to subordinated TOPrS (see "Absolute Priority And Other Fair And Equitable Issues" above) to the senior creditors in that same class.  This treatment is consistent with section 1123(a)(4). |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (b)  The Disclosure Statement falsely states that General Unsecured Claims will be paid in full with postpetition interest and fails to disclose that the Plan provides for the distribution of improperly valued stock. | The Disclosure Statement clearly states the basis for the valuation of the New Common Stock, on which recoveries to stakeholders are based.  Moreover, the Disclosure Statement contains a risk factor entitled "Value Of, And Market For, New Common Stock," which addresses the concerns raised by the objectors.  The Disclosure Statement is not required to guarantee a certain value, and can only caution investors or voters to consider potential variation to the value ascribed to the New Common Stock.  This caution is achieved not only through inclusion of a specifically targeted risk factor, but also through inclusion of Rothschild's range of potential values for the shares of New Common Stock.  Based on the detailed concerns raised by the objectors, they were apparently able to comprehend this uncertainty.  To the extent that the objectors disagree with the Debtors' asserted valuation, such concerns must be addressed in the context of confirmation, and not prior to this Court's approval of the Disclosure Statement.  If such attacks were permitted, every Disclosure Statement hearing could potentially devolve into a valuation dispute that is inappropriate at such a preliminary stage.  The Debtors revised and expanded the Disclosure Statement's Executive Summary to more fully describe, among other things, the range of values attributable to the New Common Stock and the resulting impact on recoveries to creditors.  See, e.g., DS-xix-xxii. |
| | | | (c)  The Disclosure Statement should disclose the method by which value is allocated to the Plan Investors, including a description of how such value has changed over time. | The Disclosure Statement contains an extensive discussion of the events leading up to the initial Investment Agreement in January 2007, the second Investment Agreement in August of 2007, and the later proposed amendments to that agreement.  The Debtors believe that the discussion contained in the Disclosure Statement is adequate. |

| | DOCKET No. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (d) The Disclosure Statement fails to adequately describe additional dilution risk if the $1.45 billion claims cap is exceeded. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Distribution Of New Common Stock With Respect To Trade And Other Unsecured Claims In Excess Of $1.45 Billion," which the Debtors believe is sufficient to describe such a potential risk.  The Ad Hoc Trade Committee's calculations regarding the amount of general unsecured claims confuses the definitions of "Trade And Other Unsecured Claims" and "General Unsecured Claims."  Trade And Other Unsecured Claims is defined to include, among other things, Cure claims and the MDL Claims, which the Ad Hoc Trade Committee did not include in their calculation. |
| | | | (e) The Plan incorrectly assumes that unsecured claims will only total $1 billion instead of $1.45 billion, which will result in further dilution to holders of allowed unsecured claims. | The Disclosure Statement contains a risk factor entitled "Potential Dilution Caused By Distribution Of New Common Stock With Respect To Trade And Other Unsecured Claims In Excess Of $1.45 Billion," which the Debtors believe is sufficient to describe such a potential risk.  The Ad Hoc Trade Committee's calculations regarding the amount of general unsecured claims confuses the definitions of "Trade And Other Unsecured Claims" and "General Unsecured Claims."  Trade And Other Unsecured Claims is defined to include, among other things, Cure claims and the MDL Claims, which the Ad Hoc Trade Committee did not include in their calculation. |
| | | | (f) The Disclosure Statement should disclose the claims held by the Plan Investors and which Plan provisions were inserted for the Plan Investors' benefit as claimholders. | The Debtors added language to the Disclosure Statement providing the holdings of certain Plan Investors as publicly disclosed under Rule 2019 of the Bankruptcy Code and Form 13-D.  No further disclosure is required or appropriate.  See, e.g., DS-129. |
| | | | (g) The Disclosure Statement must describe the changes to the EPCA. | The Disclosure Statement contains an extensive discussion of the events leading up to the initial Investment Agreement in January 2007, the second Investment Agreement in August of 2007, and the later proposed amendments to that agreement.  The Debtors believe that the discussion contained in the Disclosure Statement is adequate. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (h)  The Disclosure Statement does not contain adequate description of the current status of claims resolution. | The Disclosure Statement provides an adequate and appropriate discussion of the claims resolution process.  The Disclosure Statement provides that the aggregate asserted amount of all Trade And Other Unsecured Claims was $1.55 billion as of November 25, 2007, and provides that the Debtors estimate that the maximum potential allowed Trade And Other Unsecured Claims will be reduced to no more than $1.45 billion by the Effective Date.  See DS-256. |
| | | | (i)  The Plan may be unconfirmable because claims in the same class are treated differently, where disputed claims would not receive postpetition interest. | This is a confirmation objection.  The Plan's proposed treatment of the subordinated TOPrS and other general unsecured claims is also consistent with section 1123(a)(4), which requires all members of a class to receive the same treatment.  Here, the Plan provides that all general unsecured creditors, including holders of TOPrS, will receive New Common Stock and Discount Rights valued at the full amount of their claims.  The amount of the claims of unsecured creditors, excluding TOPrS, will include postpetition interest.  Section 1123(a)(4) permits a plan to give senior and subordinated creditors disparate distributions when based on an allocation of distributions otherwise payable to the junior creditors to the senior creditors.  See In re Piece Goods Shops Co., L.P., 188 B.R. 778, 788 (Bankr. M.D.N.C. 1995) (allocation of subordinated creditors' distributions to senior creditors in same class did not violate section 1123(a)(4)).  Here, the Plan has allocated the postpetition interest that the Debtors could fairly and equitably pay to subordinated TOPrS (see "Absolute Priority And Other Fair And Equitable Issues" above) to the senior creditors in that same class.  This treatment is consistent with section 1123(a)(4). |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | (j) The Plan may be unconfirmable because claims in junior classes receive distributions even though General Unsecured Claims may not be paid in full. | This is a confirmation objection, based on the valuation of the Debtors.  The Disclosure Statement clearly states the basis for the valuation of the New Common Stock, on which recoveries to stakeholders are based.  To the extent that the Ad Hoc Trade committee disagrees with the Debtors' asserted valuation, such concerns must be addressed in the context of confirmation, and not prior to this Court's approval of the Disclosure Statement.  If such attacks were permitted, every Disclosure Statement hearing could potentially devolve into a valuation dispute that is inappropriate at such a preliminary stage.  Moreover, if the Court finds that General Unsecured Claims are paid par plus accrued at Plan value, this objection will be rendered moot at the confirmation hearing. |
| | | | (k) The Plan may be unconfirmable if it has not been proposed in good faith. | The Debtors believe that the Plan represents the best recoveries available for all stakeholders.  The Debtors dispute the allegations regarding lack of good faith. |
| 16. | 11161 | Law Debenture Trust Company | Joinder of Law Debenture Trust Company to Emergency Motion Filed by the Official Committee of Equity Security Holders (Filed on November 29, 2007) | See Response in row 3 above. |